**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 11-02573 (CGM) |
| Plaintiff, | |
| v. | |
| THE SUMITOMO TRUST AND BANKING CO., LTD., | |
| Defendant. | |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Chapter 7 Estate of Bernard L. Madoff*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF FACTS ..............................................................................3

I.     THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS............................3

II.    FAIRFIELD SENTRY....................................................................................4

III.   SUMITOMO AND ITS INVESTMENT IN FAIRFIELD SENTRY ................4

ARGUMENT ..................................................................................................4

I.     THE COMPLAINT STATES A PLAUSIBLE CAUSE OF ACTION FOR
       RECOVERY OF BLMIS CUSTOMER PROPERTY UNDER SECTION 550(a) ...........4

       A.    The Trustee's Pleading Must Be Reviewed Under a Liberal Standard ..................5

       B.    At the Pleading Stage, the Trustee Is Not Required to Detail What Portion
             of Each Subsequent Transfer Comprises Customer Property................................7

             1.    Defendant's Reliance on *Shapiro* Is Unavailing..........................................7

             2.    The Trustee's Allegations Are Plausible Against Sumitomo .....................9

       C.    The Trustee, as an Outsider, Should Be Permitted to Obtain Discovery..............13

II.    THE TRUSTEE'S ALLEGATIONS ARE WELL PLEADED UNDER THE
       FEDERAL RULES OF CIVIL PROCEDURE ...............................................14

       A.    The Complaint Provides Fair Notice of the Claim Under Fed. R. Civ. P.
             8(a) ..............................................................................................16

       B.    The Trustee's Incorporation by Reference Is Proper Under Fed. R. Civ. P.
             10(c) .............................................................................................17

             1.    The Court Can Take Judicial Notice of Its Decision Holding That
                   the Fairfield Amended Complaint Pleaded Actual Knowledge................19

             2.    At a Minimum, the Trustee Should Be Afforded the Opportunity to
                   Replead ........................................................................20

       C.    The Trustee Has Pleaded His Allegations with the Requisite Particularity
             Under Fed. R. Civ. P. 9(b) ....................................................................20

III.   THE TRUSTEE'S CLAIM IS NOT BARRED UNDER 11 U.S.C. § 546(e)...................22

i

A.    The Complaint Plausibly Alleges That Initial Transfers Were Made Within the Two-Year Period and So Are Outside the Safe Harbor of Section 546(e) ........................................................................................23

B.    Fairfield Sentry's Actual Knowledge of Madoff's Fraud Bars Application of Section 546(e) to Initial Transfers Beyond the Two-Year Period ....................24

C.    Sumitomo Is Precluded from Relitigating the Actual Knowledge Exception Established in *Cohmad* ........................................................................24

D.    Sumitomo Is Precluded from Arguing That Section 546(e) Applies Independently to Recovery Actions ......................................................................26

CONCLUSION ........................................................................................................30

## **TABLE OF AUTHORITIES**

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
   599 B.R. 730 (Bankr. S.D.N.Y. 2019) .................................................................6, 7, 9

*Am. Casein Co. v. Geiger (In re Geiger)*,
   446 B.R. 670 (Bankr. E.D. Pa. 2010) ..............................................................18, 20

*Angell v. Ber Care, Inc. (In re Caremerica, Inc.)*,
   409 B.R. 737 (Bankr. E.D.N.C. 2009) ...................................................................8, 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................5, 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................5, 9

*In re Bernard L. Madoff Inv. Sec. LLC*,
   No. 1:21-CV-02334-CM, 2022 WL 493734 (S.D.N.Y. Feb. 17, 2022) .................................21

*Cargo Partner AG v. Albatrans, Inc.*,
   352 F.3d 41 (2d Cir. 2003)......................................................................................5

*CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*,
   393 B.R. 306 (Bankr. W.D.N.Y. 2008) ..................................................................12

*Dahar v. Jackson (In re Jackson)*,
   318 B.R. 5 (Bankr. D.N.H. 2004) .........................................................................10

*DeMasi v. Benefico*,
   567 F. Supp. 2d 449 (S.D.N.Y. 2008)...................................................................20

*Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.)*,
   343 B.R. 75 (Bankr. S.D.N.Y. 2006), *rev'd on other grounds*, 388 B.R. 489
   (S.D.N.Y. 2008) ..................................................................................................29

*Enron Corp. v. Mass Mut. Life Ins. Co. (In re Enron Corp.)*,
   Nos. M-47 (GBD), 01-6034(AJG), 03-92677(AJG), 03-92682(AJG), 2007
   WL 120458 (S.D.N.Y. Jan. 17, 2007) ..................................................................13

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
   651 F.3d 329 (2d Cir. 2011)..................................................................................28

*Ferrari v. Cnty. of Suffolk*,
   790 F. Supp. 2d 34 (E.D.N.Y. 2011) .....................................................................20

*Foman v. Davis*,
    371 U.S. 178 (1962)..................................................................................................20

*Gowan v. The Patriot Grp., LLC (In re Dreier LLP)*,
    452 B.R. 391 (Bankr. S.D.N.Y. 2011) ...................................................................21

*Helms v. Metro. Life Ins. Co. (In re O'Malley)*,
    601 B.R. 629 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021)...........................12

*Henry v. Rizzolo*,
    No. 08-cv-00635-PMP-GWF, 2012 WL 4092604 (D. Nev. Sept. 17, 2012),
    *order clarified*, 2012 WL 4867725 (D. Nev. Oct. 12, 2012)...................................10

*Howell, III v. Fulford (In re S. Home & Ranch Supply, Inc.)*,
    No. 11-12755-WHD, Adv. No. 13-1043, 2013 WL 7393247 (Bankr. N.D. Ga.
    2013) ........................................................................................................................9

*In re J.P. Jeanneret Assoc., Inc.*,
    769 F. Supp. 2d 340 (S.D.N.Y. 2011)....................................................................5

*Jalbert v. Zurich Am. Ins. Co. (In re Payton Constr. Corp.)*,
    399 B.R. 352 (Bankr. D. Mass. 2009) ...................................................................13

*Kelley v. Westford Special Situations Master Fund, L.P.*,
    No. 19-cv-1073, 2020 WL 3077151 (D. Minn. June 10, 2020) ........................10, 11

*Kirschner v. Fitzsimons (In re Tribune Co. Fraudulent Conveyance Litig.)*,
    No. 11-md-2296 (RJS), 2017 WL 82391 (S.D.N.Y. Jan. 6, 2017)........................22

*McHale v. Boulder Cap. LLC (In re 1031 Tax Grp., LLC)*,
    439 B.R. 78 (Bankr. S.D.N.Y. 2010) .....................................................................11

*Morrison v. Off. of the U.S. Tr. (In re Morrison)*,
    375 B.R. 179 (Bankr. W.D. Pa. 2007) ...................................................................18

*In re Motors Liquidation Co.*,
    590 B.R. 39 (S.D.N.Y. 2018)..................................................................................19

*Nordberg v. Societe Generale (In re Chase & Sanborn Corp.)*,
    848 F.2d 1196 (11th Cir. 1988) ..............................................................................12

*Picard v. Avellino (In re Bernard L. Madoff Inv. Sec. LLC)*,
    557 B.R. 89 (Bankr. S.D.N.Y. 2016)......................................................................25

*Picard v. BNP Paribas S.A. (In re Bernard L. Madoff)*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018).........................................................26, 28, 29

*Picard v. Ceretti (In re Bernard L. Madoff Inv. Sec. LLC)*,
   Adv. Pro. No. 09-01161 (SMB), 2015 WL 4734749 (Bankr. S.D.N.Y. Aug.
   11, 2015) ..................................................................................................................25

*Picard v. Charles Ellerin Revocable Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   Adv. Pro. Nos. 10-04398 (BRL), 10-05219 (BRL), 2012 WL 892514 (Bankr.
   S.D.N.Y. Mar. 14, 2012)..................................................................................6, 7, 10, 11

*Picard v. Citibank, N.A. (In re Bernard L Madoff Inv. Sec. LLC)*,
   12 F.4th 171 (2d Cir. 2021) ......................................................................................3, 14, 18

*Picard v. Cohen*,
   Adv. Pro. No. 10-04311, 2016 WL 1695296 (Bankr. S.D.N.Y. Apr. 25, 2016)....................26

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   454 B.R. 317 (Bankr. S.D.N.Y. 2011) ...............................................................................13, 21

*Picard v. Est. of Stanley Chais (In re Bernard L. Madoff Inv. Sec. LLC)*,
   445 B.R. 206 (Bankr. S.D.N.Y. 2014)...........................................................................6, 14, 17

*Picard v. Fairfield Inv. Fund Ltd. (In re Bernard L. Madoff)*,
   No. 08-01789 (CGM), Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479
   (Bankr. S.D.N.Y. Aug. 6, 2021) ......................................................................... *passim*

*Picard v. Ida Fishman Recoverable Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   773 F.3d 411 (2d Cir. 2014).........................................................................................25, 26, 28

*Picard v. JABA Assocs. LP (In re Bernard L. Madoff)*,
   528 F. Supp. 3d 219 (S.D.N.Y. 2021)...................................................................................22

*Picard v. Legacy Cap. Ltd. (In re Bernard L. Madoff)*,
   603 B.R. 682 (Bankr. S.D.N.Y. 2019) ..................................................................................21

*Picard v. Lisa Beth Nissenbaum Tr. (In re Bernard L. Madoff)*
   No. 20 cv. 3140, 2021 WL 1141638 (S.D.N.Y. Mar. 24, 2021) ...........................................21

*Picard v. Lowrey (In re Bernard L. Madoff)*,
   596 B.R. 451 (S.D.N.Y. 2019), *aff'd sub nom. Picard v. Gettinger*, 976 F.3d
   184 (2d Cir. 2020)..................................................................................................................25

*Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*,
   458 B.R. 87 (Bankr. S.D.N.Y. 2011)...................................................................................21

*Picard v. Magnify, Inc. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   583 B.R. 829 (Bankr. S.D.N.Y. 2018)...................................................................................25

*Picard v. Mendelow (In re Bernard L. Madoff Inv. Sec. LLC)*,
   560 B.R. 208 (Bankr. S.D.N.Y. 2016) ..................................................................................25

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
    440 B.R. 243 (Bankr. S.D.N.Y. 2010) .................................................................6, 14

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
    515 B.R. 117 (Bankr. S.D.N.Y. 2014) ........................................................... *passim*

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
    581 B.R. 370 (Bankr. S.D.N.Y 2017) ....................................................................11

*Picard v. Nelson (In re Bernard L. Madoff)*,
    610 B.R. 197 (Bankr. S.D.N.Y. 2019) ............................................................21, 22

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*,
    542 B.R. 100 (Bankr. S.D.N.Y. 2015) ...........................................................7, 8, 25

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
    917 F.3d 85 (2d Cir. 2019) ....................................................................................27

*Porat v. Lincoln Towers Cmty. Ass'n*,
    464 F.3d 274 (2d Cir. 2006) ..................................................................................20

*In re Refco Inc. Sec. Litig.*,
    No. 07-MD-1902 (JSR), 2013 WL 12191844 (S.D.N.Y. Mar. 25, 2013) ...............24

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir. 2007) ....................................................................................5

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000) ....................................................................................19

*Salomon v. Kaiser (In re Kaiser)*,
    722 F.2d 1574 (2d Cir. 1983) ................................................................................22

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    12 MC 0115, 2012 WL 12539777 (S.D.N.Y. May 16, 2012) ................................27

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    531 B.R. 439 (Bankr. S.D.N.Y. 2015) ..................................................................25

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
    501 B.R. 26 (S.D.N.Y. 2013) ....................................................................18, 19, 27

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    No. 12-MC-115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ........... *passim*

*Sec. Inv. Prot. Corp. v. Stratton Oakmont*,
    234 B.R. 293 (Bankr. S.D.N.Y. 1999) ..................................................................13

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs. Inc.)*,
    379 B.R. 5 (Bankr. E.D.N.Y. 2007)...................................................................6, 7, 8, 17

*Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*,
    239 F.3d 365, 2000 WL 1741550 (5th Cir. 2000), *as amended on reh'g* (Dec.
    11, 2000) .................................................................................................................12

*Stiles v. Vaden (In re Bechtold)*,
    No. 10-30013, Adv. No. 13-03046, 2014 WL 585304 (Bankr. W.D.N.C. Feb.
    14, 2014) .................................................................................................................12

*SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*,
    620 B.R. 505 (Bankr. S.D.N.Y. 2020)......................................................................28

*Taylor v. Sturgell*,
    553 U.S. 880 (2008).................................................................................................24

*Tousa Homes, Inc. v. Palm Beach Newspapers, Inc. (In re TOUSA, Inc.)*,
    442 B.R. 852 (Bankr. S.D. Fla. 2010)........................................................................9

*United States v. Henshaw*,
    388 F.3d 738 (10th Cir. 2004) .................................................................................11

*United States v. Int'l Longshoremen's Ass'n*,
    518 F. Supp. 2d 422 (E.D.N.Y. 2007) ......................................................................20

*Off. Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp., Bear,
    Stearns & Co., Inc. (In re Verestar, Inc.)*,
    343 B.R. 444 (S.D.N.Y. 2006).................................................................................21

*Zucker v. Oconee Reg'l Healthcare Found., Inc. (In re Oconee Reg'l Health Sys.,
    Inc.)*,
    621 B.R. 64 (Bankr. M.D. Ga. 2020)..........................................................................8

## Statutes

11 U.S.C. § 546(e) .......................................................................................... *passim*

11 U.S.C. § 548(a) .......................................................................................... *passim*

11 U.S.C § 550(a) ........................................................................................... *passim*

11 U.S.C. § 550(d) ..................................................................................11, 12, 13

11 U.S.C. § 551...................................................................................................1

## Rules

Fed. R. Bankr. P. 7008(a)(2)..........................................................................9

Fed. R. Bankr. P. 7010 ...................................................................................................18

Fed. R. Bankr. P. 7012 .....................................................................................................5

Fed. R. Bankr. P. 7015 ...................................................................................................20

Fed. R. Civ. P. 8 .............................................................................................2, 15, 17, 18

Fed. R. Civ. P. 8(a) .................................................................................................. *passim*

Fed. R. Civ. P. 8(a)(2) ......................................................................................................5

Fed. R. Civ. P. 9 ...............................................................................................................2

Fed. R. Civ. P. 9(b) ................................................................................................. *passim*

Fed. R. Civ. P. 10 .............................................................................................................2

Fed. R. Civ. P. 10(c) .......................................................................................14, 15, 17, 18

Fed. R. Civ. P. 12(b)(6) ............................................................................................5, 9, 20

Fed. R. Civ. P. 15(a) .......................................................................................................20

**Other Authorities**

5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure 3d §
  1326 (4th ed. 2007) ...................................................................................................18

Collier on Bankruptcy ¶ 548.02[5] at 548–34 to 38 (L. King 15th ed. 1983) ...............................22

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor

Protection Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff

("Madoff"), respectfully submits this memorandum of law in opposition to the motion to dismiss

(the "Motion") filed by Defendant The Sumitomo Trust and Banking Co., Ltd. ("Defendant" or

"Sumitomo") in the above-captioned action.

## PRELIMINARY STATEMENT

As part of the Trustee's continuing efforts to recover BLMIS customer property that was

stolen as part of Madoff's Ponzi scheme, this action seeks to recover more than $54 million of

customer property that Sumitomo received in a single subsequent transfer from Fairfield Sentry

Limited ("Fairfield Sentry" or "Fairfield").  In an attempt to have the Trustee's amended

complaint ("Complaint" or "Compl.") dismissed on inapplicable grounds, Sumitomo's Motion

ignores the Federal Rules of Civil Procedure, prior rulings in this liquidation, and well-

established principles of bankruptcy law.  The Trustee's Complaint is sufficiently pleaded under

the Federal Rules of Civil Procedure and adequately alleges facts showing the transfer to

Sumitomo was comprised of BLMIS customer property.[1]

Sumitomo moves to dismiss the Trustee's Complaint on several grounds.  The gravamen

of Sumitomo's argument for dismissal is the contention that the Complaint does not tie

Sumitomo's subsequent transfer to a particular initial transfer from BLMIS to Fairfield Sentry.

First, Sumitomo contends that the Complaint does not meet the requirements of Fed. R. Civ. P.

---

[1] On September 1, 2011, the Trustee initiated this lawsuit against Sumitomo, one of the largest Japanese trust banks, to recover a subsequent transfer of BLMIS customer property under 11 U.S.C. §§ 550, 551.  *See* Complaint, *Picard v. Sumitomo Mitsui Tr. Holdings, Inc. f/k/a Sumitomo Tr. and Banking, Ltd.*, Adv. Pro. No. 11-02573 (Bankr. S.D.N.Y. Sept. 1, 2011), ECF No. 1.  The Trustee amended his complaint on December 20, 2011.  *See* Amended Complaint, *Picard v. Sumitomo Mitsui Tr. Holdings, Inc. f/k/a Sumitomo Tr. and Banking, Ltd.*, Adv. Pro. No. 11-02573 (Bankr. S.D.N.Y. Dec. 20, 2011), ECF No. 8.

8(a) because it does not provide certain details of the transfer to be avoided. Mot. at 11-14.

Second, and for similar reasons, it argues that the allegations may violate Fed. R. Civ. P. 9(b).

Mot. at 14-15. Third, Sumitomo attempts to argue that the Trustee has failed to state a claim

because the Complaint incorporates the Fairfield Sentry amended complaint by reference.[2] Mot.

at 14 n.9. Fourth, Sumitomo erroneously asserts that the subsequent transfer at issue here is

protected by the safe harbor provision in 11 U.S.C. § 546(e). Mot. at 16-21. And fifth,

Sumitomo claims dismissal is appropriate in the alternative because the Trustee is seeking to

recover more from subsequent transferee defendants like Sumitomo in the aggregate than was

initially transferred from BLMIS to Fairfield Sentry. Mot. at 28-31.

      These arguments are fundamentally flawed and should be rejected. At this stage of the

litigation, the Trustee is not required to detail what portion of the subsequent transfer to

Sumitomo comprises customer property, or to tie it to a specific initial transfer from BLMIS to

Fairfield Sentry. Dismissal is also not warranted under Fed. R. Civ. P. 8, 9, or 10 because the

Trustee has met his pleading burden by alleging facts sufficient to state a claim against

Sumitomo for recovery under Section 550. The Trustee's incorporation by reference of another

complaint in this liquidation to establish the avoidability of the initial transfers from BLMIS to

Fairfield Sentry is also proper under the Federal Rules of Civil Procedure. Sumitomo is also not

entitled to the safe harbor protection of Section 546(e) because (1) Section 546(e) would not

apply to any initial transfers after December 11, 2006; and (2) for initial transfers prior to

December 11, 2006, this Court has already found that the Trustee has adequately pleaded

Fairfield Sentry's actual knowledge. Section 546(e) does not shield subsequent transferees

---

[2] Amended Complaint, *Picard v. Fairfield Sentry Ltd., et al.*, Adv. Pro. No. 09-01239 (BRL) (July 20, 2010), ECF No. 23 ("Fairfield Amended Complaint"), now superseded by the Second Amended Complaint. Second Amended Complaint, *Picard v. Fairfield Inv. Fund. Ltd.*, Adv. Pro. No. 09-01239 (SMB) (Aug. 28, 2020), ECF No. 286.

where the initial transferee, such as Fairfield Sentry, had actual knowledge of the fraud. Finally, Sumitomo's alternative ground for dismissal also fails because until the Trustee recovers the full amount of the $3,054,000,000 in fraudulent transfers received by Fairfield Sentry, he may simultaneously seek recovery from Sumitomo in this action and from defendants in other actions, even if the aggregate amount exceeds the initial transfers.

For these reasons, Sumitomo has failed to sufficiently challenge the allegations of the Trustee's Complaint and the Motion must be denied.

## STATEMENT OF FACTS

## I.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS

Madoff founded and operated BLMIS from New York until its collapse in 2008. Compl. ¶¶ 10, 22. BLMIS had three principal business units: (1) a proprietary trading business; (2) a market-making business; and (3) an investment advisory business (the "IA Business"). *Id*. ¶ 22. For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy (the "SSC Strategy"), which involved (a) investing in a basket of common stocks from the Standard & Poor's 100 Index, (b) buying put options and selling call options to hedge against price changes in the underlying basket of stocks, and (c) purchasing U.S. treasury bills when the money was out of the market. *Id*. ¶¶ 23-24. In reality, BLMIS operated a Ponzi scheme through its IA Business. *Id*. ¶ 25. On December 11, 2008, Madoff's fraud was publicly revealed, and he was arrested for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. *Id*. ¶ 10.

The extent of damage Madoff caused was made possible by BLMIS "feeder funds"— large investment funds created for the express purpose of funneling investors' funds into BLMIS. *See Picard v. Citibank, N.A. (In re Bernard L Madoff Inv. Sec. LLC)*, 12 F.4th 171, 179 (2d Cir. 2021). Sumitomo knowingly invested in one such feeder fund, Fairfield Sentry. Compl. ¶¶ 2, 6.

## II.      FAIRFIELD SENTRY

Fairfield Sentry was controlled by the Fairfield Greenwich Group, a de facto partnership

with its principal place of business in New York.  *See Picard v. Fairfield Inv. Fund Ltd. (In re*

*Bernard L. Madoff)*, No. 08-01789 (CGM), Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479,

at *9 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*"); *see also* Compl. ¶ 6.  Fairfield

Sentry was a U.S. dollar-denominated fund that invested 95% of its assets with BLMIS.  Compl.

¶ 2.  Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield

Sentry and related defendants to avoid and recover fraudulent transfers of customer property in

the amount of approximately $3 billion.  *Id*. ¶ 34.  In 2011, the Trustee settled with Fairfield

Sentry and others.  *Id*. ¶ 39.  As part of the settlement, Fairfield Sentry consented to a judgment

in the amount of $3.054 billion but repaid only $70 million to the BLMIS estate.  *Id*.  The

Trustee then commenced a number of adversary proceedings against defendants like Sumitomo

to recover the approximately $3 billion in missing customer property.

## III.     SUMITOMO AND ITS INVESTMENT IN FAIRFIELD SENTRY

Sumitomo is a Japanese trust bank maintaining its head office at 5-33 Kitahama 4-chome,

Chuo-ku, Osaka.  *Id*. ¶ 21.  Prior to BLMIS's collapse, Sumitomo received $54,253,642 in a

subsequent transfer of stolen customer property from Fairfield Sentry on October 16, 2007.

Compl. ¶¶ 2, 40, Ex. D.

## ARGUMENT

## I.      THE COMPLAINT STATES A PLAUSIBLE CAUSE OF ACTION FOR RECOVERY OF BLMIS CUSTOMER PROPERTY UNDER SECTION 550(a)

Sumitomo's Motion is premised on a faulty interpretation of the Trustee's pleading

burden.  When distilled to their essence, the bulk of Sumitomo's arguments is that the Complaint

must be dismissed because it does not identify the precise initial transfer from BLMIS to

Fairfield Sentry. Specifically, Sumitomo argues that (1) the Complaint violates Fed. R. Civ. P. 8(a) because it does not contain the "necessary vital statistics" of the transfers; (2) the Complaint violates Fed. R. Civ. P. 9(b) by failing to identify a particular initial transfer from among thousands listed in Exhibit C to the Complaint; (3) the Complaint fails under 11 U.S.C. § 546(e) to the extent that the initial transfer is voidable pursuant to a provision other than 11 U.S.C. § 548(a)(1)(A); (4) the Complaint fails to allege facts showing that the subsequent transfer Sumitomo received was comprised of stolen BLMIS customer property; and (5) dismissal is warranted because it is possible that the subsequent transfer could have been derived from a non-BLMIS Fairfield Sentry source. For the reasons discussed below, each of these arguments fail because Sumitomo misapprehends the Trustee's burden at the pleading stage.

### A.    The Trustee's Pleading Must Be Reviewed Under a Liberal Standard

When considering motions to dismiss under Fed. R. Civ. P. 12(b)(6), applicable to an adversary proceeding under Fed. R. Bankr. P. 7012, "the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences" in the Trustee's favor. *In re J.P. Jeanneret Assoc., Inc.*, 769 F. Supp. 2d 340, 353 (S.D.N.Y. 2011) (citing *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 44 (2d Cir. 2003); *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007)). To survive the motion to dismiss, the pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The allegations need only meet the "plausibility" standard, such that they "'nudge[] [the] claims' . . . 'across the line from conceivable to plausible.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citation omitted).

5

The Complaint here sets forth in full the elements of the Trustee's claims, pleading Defendant's receipt of a subsequent transfer of customer property, the grounds upon which the Trustee seeks to recover the transfer made to Defendant, and the grounds upon which the Trustee seeks to disallow a customer claim against the BLMIS estate.  Thus, dismissal of the Complaint at this juncture is inappropriate.  *See Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 440 B.R. 243, 254-71, 273 (Bankr. S.D.N.Y. 2010) ("*Merkin I*").

To plead a subsequent transfer claim under Section 550(a)(2), the Trustee must allege facts that support an inference "that the funds at issue originated with the debtor."  *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs. Inc.)*, 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007).  "[A] complaint 'need only allege sufficient facts to show the relevant pathways through which the funds were transferred.'"  *Picard v. Est. of Stanley Chais (In re Bernard L. Madoff Inv. Sec. LLC)*, 445 B.R. 206, 235 (Bankr. S.D.N.Y. 2014); *see also 45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019) (quoting *Picard v. Charles Ellerin Revocable Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*, Adv. Pro. Nos. 10-04398 (BRL), 10-05219 (BRL), 2012 WL 892514, at *2-3 (Bankr. S.D.N.Y. Mar. 14, 2012)).  "To hold otherwise would be to place an onerous and undue burden on plaintiffs asserting these kinds of claims." *45 John Lofts, LLC*, 599 B.R. at 747.

Here, he has done so by pleading "the 'necessary vital statistics—the who, when, and how much' of the purported transfers" that the defendant received.  *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC*), 515 B.R. 117, 150 (Bankr. S.D.N.Y. 2014) ("*Merkin II*"). The Complaint sets forth those vital statistics in paragraphs 33-41 and Exhibits C and D.

**B.      At the Pleading Stage, the Trustee Is Not Required to Detail What Portion of Each Subsequent Transfer Comprises Customer Property**

To satisfy his pleading burden, the Trustee needs to allege that at least part of the alleged transfer originated from BLMIS. *See 45 John Lofts, LLC*, 599 B.R. at 746-47 (rejecting defendant's argument "that Plaintiff generically, and without factual support, alleged that every transfer out of" the initial transferee's commingled account was made with debtor property; the plaintiff is not required, at the pleading stage, "to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss" (cleaned up)).  This means that the Trustee is not required to specify in his pleading what portion of the transfer at issue comprises customer property.  The pleading burden "is not so onerous as to require 'dollar-for-dollar accounting' of 'the exact funds' at issue." *See, e.g.*, *id*. (quoting *Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *3).  "[I]f dollar-for-dollar accounting is not required at the proof stage, then surely it is not required at the pleading stage either." *Silverman*, 379 B.R. at 30.  Similarly, the Trustee is not required to connect each subsequent transfer to an initial voidable transfer. *See Merkin II*, 515 B.R. at 150, 152-53 (declining to dismiss Trustee's subsequent transfer claims even though he was unable to connect each subsequent transfer with an initial voidable transfer from BLMIS, while noting "at least some of the subsequent transfers . . . may be recoverable").

**1.      Defendant's Reliance on *Shapiro* Is Unavailing**

To support its argument that the Trustee has failed to allege facts showing that the subsequent transfer to Sumitomo was comprised of BLMIS customer property, Sumitomo erroneously relies on *Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R. 100 (Bankr. S.D.N.Y. 2015).  *See* Mot. at 26-28.  Sumitomo analogizes *Shapiro* to this case and contends that the Complaint "offers only *Shapiro*-like allegations" that are "generic" and "bare bones." *Id.*  This argument is unsupported and lacks merit.  In *Shapiro*, the Trustee alleged that

certain trusts and members of the Shapiro family received approximately $54 million in

fraudulent transfers from BLMIS, and "upon information and belief" these defendants

subsequently transferred this same amount to other defendants.  542 B.R. at 119.  The Court

dismissed the subsequent transfer claims because the complaint did not detail any of the

necessary vital statistics of the subsequent transfers.  *Id*.  There were no allegations regarding the

specific subsequent transferors, the specific subsequent transferees, or the dates or amounts of

the subsequent transfers.  *Id*.  In fact, the complaint in *Shapiro* failed to "plausibly imply that the

initial transferees even made subsequent transfers," alleging only that "a portion" was transferred

without any evidence of any subsequent transfers.  *Id*.  Consequently, this Court granted

defendants' motion to dismiss the subsequent transfer claim.  *Id*.  The Complaint in this action,

however, unlike in *Shapiro*, identifies the specific subsequent transfers from Fairfield Sentry to

Sumitomo.  As mentioned *supra*, it details the requisite "vital statistics" in paragraphs 33-41 and

Exhibits B and C.  *See Silverman*, 379 B.R. at 32.  Moreover, the Trustee alleges additional facts

regarding Sumitomo's status as an investor in Fairfield Sentry, including a subscription

agreement, redemption request, and communication with Fairfield Sentry regarding its

investment and redemption.  Compl. ¶ 6.  For this important reason, the facts alleged here are

distinguishably much more robust and detailed than in *Shapiro* and provide the details found

missing there.

Sumitomo's reliance on *Angell v. Ber Care, Inc. (In re Caremerica, Inc.)*, 409 B.R. 737

(Bankr. E.D.N.C. 2009) is also unpersuasive.  In addition to being disfavored in many

jurisdictions, the heightened pleading standard applied in the *Caremerica* decision is irrelevant to

the case at hand.  *See, e.g.*, *Zucker v. Oconee Reg'l Healthcare Found., Inc. (In re Oconee Reg'l

Health Sys., Inc.)*, 621 B.R. 64, 71-72 (Bankr. M.D. Ga. 2020) ("This heightened pleading

standard for preference claims, as adopted by *Caremerica* and its progeny, is inconsistent with

the liberal fair notice pleading standard of Federal Rule of Bankruptcy Procedure . . . 7008(a)(2),

as well as the Supreme Court's assertion that 'a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations.'" (footnote omitted)); *Howell, III v. Fulford

(In re S. Home & Ranch Supply, Inc.)*, No. 11-12755-WHD, Adv. No. 13-1043, 2013 WL

7393247, at *5 (Bankr. N.D. Ga. 2013) (referencing "*Caremerica* and its progeny, which has not

been followed in this Circuit"); *Tousa Homes, Inc. v. Palm Beach Newspapers, Inc. (In re

TOUSA, Inc.)*, 442 B.R. 852, 855-56 (Bankr. S.D. Fla. 2010) ("The pleading requirements of

*Caremerica* require more than the standard promulgated in *Twombly* and *Iqbal* and the liberal

pleading policy underlying the civil rules."). *Caremerica* involved preferential transfers from a

non-debtor bank account where the trustee failed to "rebut the alternative and reasonable

possibility that the funds . . . originated from sources other than the debtors." 409 B.R. at 751.

The Trustee has no such issue and has identified specific transfers from BLMIS to Fairfield

Sentry and from Fairfield Sentry to Sumitomo.

### 2.    The Trustee's Allegations Are Plausible Against Sumitomo

Sumitomo seemingly argues in the alternative that it is not plausible that any portion of

its redemption from Fairfield Sentry consisted of BLMIS customer property because Fairfield

Sentry may have sources of funds aside from BLMIS, the most obvious being subscription

monies received from other investors. Mot. at 9-10. Along these lines, it contends dismissal is

appropriate under Fed. R. Civ. P. 12(b)(6), which requires factual allegations to imply more than

a logical "possibility" that liability arises. Mot. at 28-31. Again, the Trustee is not required to

allege that the subsequent transfer at issue here consisted *solely* of BLMIS customer property.

*See 45 John Lofts, LLC*, 599 B.R. at 746-47. This is simply another iteration of the argument

that the Trustee must identify a specific initial voidable transfer as the definitive source of the

subsequent transfer, which is wrong and not an issue that can be raised at this stage of the litigation.

While the purported commingling of redemptions and subscriptions complicates the tracing of customer property from BLMIS, it is not fatal to the Trustee's subsequent transfer claims. *See Dahar v. Jackson (In re Jackson)*, 318 B.R. 5, 25 (Bankr. D.N.H. 2004) ("[T]he mere commingling of the Defendant's property with the proceeds of property fraudulently transferred by the Debtor is not sufficient to defeat tracing."); *Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *3 (finding that at the summary judgment stage, it is not necessary for the Trustee to specify what portion of the subsequent transfers, which were paid from commingled funds, were derived from BLMIS).  In fact, even "[w]here the assets fraudulently transferred no longer exist or cannot be found due to commingling, a money judgment may be entered in an amount up to the value of the fraudulently transferred assets against the parties who participated in the fraudulent transfer and are either transferees of the assets or beneficiaries of the conveyance." *Henry v. Rizzolo*, No. 08-cv-00635-PMP-GWF, 2012 WL 4092604, at *7 (D. Nev. Sept. 17, 2012), *order clarified*, 2012 WL 4867725 (D. Nev. Oct. 12, 2012).

The court addressed this point in *Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-cv-1073 (ECT/KMM), 2020 WL 3077151, at *4 (D. Minn. June 10, 2020).  There, the initial transferee's account, in addition to holding debtor property, also included funds from unrelated investments and cash infusions from investors in such unrelated investments.  Apart from paying the performance and management fees that were the subject of the subsequent transfer claims at issue, the funds in the commingled account were also applied to invest in other holdings, pay expenses, and credit redeeming investors.  *Id*. at *2.  The court nevertheless rejected defendant's summary judgment argument that the subsequent transfer claims be

dismissed merely because the initial transferee may have paid the performance and management fees with non-debtor funds in a commingled account. *Id.* at *4-5.

Because money is fungible, "the goal of tracing is not to trace anything at all in many cases, but rather [to] serve[] as an equitable substitute for the impossibility of specific identification." *Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *2 (quoting *United States v. Henshaw*, 388 F.3d 738, 741 (10th Cir. 2004)). "Courts have broad discretion to determine which monies of comingled funds derive from fraudulent sources." *Id.* at *3 n.7 ("There are several alternative methods, none of which is optimal for all commingling cases; courts exercise case-specific judgment to select the method best suited to achieve a fair and equitable result on the facts before them."); *see, e.g.*, *McHale v. Boulder Cap. LLC (In re 1031 Tax Grp., LLC)*, 439 B.R. 78, 81 (Bankr. S.D.N.Y. 2010) (concluding that a pro rata allocation of commingled fraudulent transfers was appropriate).[3]

Therefore, the Trustee's subsequent transfer claims are not rendered "implausible" at the pleading stage because the aggregate amount of the Trustee's subsequent transfer claims across his adversary proceedings may exceed the amount of the initial transfers to Fairfield Sentry due to its purported practice of comingling customer property with other funds. This Court has already addressed this precise issue in declaring that while Section 550(d) limits the Trustee's recovery to the amount avoided, "the aggregate subsequent transfer claim can greatly exceed the amount of the initial transfer." *Merkin II*, 515 B.R. at 149.

---

[3] The Bankruptcy Court has recognized several different tracing methodologies offered by the Trustee in this liquidation, including: (1) Last In, First Out (LIFO), (2) First In, First Out (FIFO), (3) Lowest Intermediation Balance Rule (LIBR), (4) Restated Tracing Rules (Restated LIBR), and (5) Proportionality. These "methodologies reflect legal rules or fictions designed to assist a Court in dealing with an improper transfer from a commingled fund." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 581 B.R. 370, 386 (Bankr. S.D.N.Y 2017).

Further, the "Trustee enjoys considerable discretion as to which transferee recovery is sought under § 550(a) [while] limited to a single satisfaction under § 550(d)." *Stiles v. Vaden (In re Bechtold)*, No. 10-30013, Adv. No. 13-03046, 2014 WL 585304, at *5 (Bankr. W.D.N.C. Feb. 14, 2014). This means "the [T]rustee can recover from *any combination* of [transferees]" up to the amount avoided. *Helms v. Metro. Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021) (emphasis added). And under Section 550(a), "a trustee may recover [an avoided] transfer from a subsequent transferee of those funds, *without the necessity for allocation among all the subsequent transferees*." *CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*, 393 B.R. 306, 333 (Bankr. W.D.N.Y. 2008) (emphasis added). Thus, until single satisfaction of the avoided initial transfer is attained, the Trustee is permitted to simultaneously seek recovery of subsequent transfers from Sumitomo in the instant proceeding and from defendants in other adversary proceedings in an aggregate amount that exceeds any associated initial transfers.

Ultimately, the Court's "task here is to 'look beyond the particular transfers in question to the entire circumstance of the transactions.'" *Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 239 F.3d 365, 2000 WL 1741550, at *5 (5th Cir. 2000), *as amended on reh'g* (Dec. 11, 2000) (quoting *Nordberg v. Societe Generale (In re Chase & Sanborn Corp.)*, 848 F.2d 1196, 1199 (11th Cir. 1988)). And notably, the Court has already held that this type of argument is inappropriate for a motion to dismiss. *See Merkin II*, 515 B.R. at 149-50 (crediting the Trustee's ability to seek recovery beyond the amount avoided until the avoided amount is fully satisfied, and noting that greater latitude should be afforded to the Trustee's pleading where the Trustee's lack of personal knowledge is compounded by complicated issues that extend over lengthy periods of time); *see also Fairfield Inv. Fund*, 2021 WL 3477479, at *12 (holding that

the defendant's arguments regarding "double recovery" and the Trustee's purported limitations under Section 550(d) are "to be determined at a later stage in the litigation").

### C.    The Trustee, as an Outsider, Should Be Permitted to Obtain Discovery

Moreover, dismissal is unwarranted before the Trustee, an outsider to the transactions, has had an opportunity to conduct a more thorough investigation through discovery.  "[I]n a case such as this one, where the Trustee's lack of personal knowledge is compounded with complicated issues and transactions that extend over lengthy periods of time, the trustee's handicap increases, and even greater latitude should be afforded" to him.  *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (quoting *Sec. Inv. Prot. Corp. v. Stratton Oakmont*, 234 B.R. 293, 310 (Bankr. S.D.N.Y. 1999)) (cleaned up).

Courts have routinely recognized the unique position of an outsider trustee.  In *Jalbert v. Zurich Am. Ins. Co. (In re Payton Constr. Corp.)*, the bankruptcy court opined that at the pleading stage, a trustee need only "give a time frame and specify the nature of the transfers" because "[h]e is an outsider to these transactions and will need discovery to identify the specific transactions by date, amount, and the manner in which they were effected."  399 B.R. 352, 365 (Bankr. D. Mass. 2009); *see also Enron Corp. v. Mass Mut. Life Ins. Co. (In re Enron Corp.)*, Nos. M-47 (GBD), 01-6034(AJG), 03-92677(AJG), 03-92682(AJG), 2007 WL 120458, at *7-8 (S.D.N.Y. Jan. 17, 2007) (affirming the bankruptcy court's denial of summary judgment *before discovery* because the "essential facts are within the control" of the defendant).

The Bankruptcy Court in this matter has ruled similarly in acknowledging the Trustee's need for discovery in BLMIS proceedings.  *See Merkin II*, 515 B.R. at 151 (denying dismissal even where the Trustee could not trace all subsequent transfers back to BLMIS, in part because subsequent transfers "must ultimately be proved through the books and records of the

defendants"); *Est. of Stanley Chais*, 445 B.R. at 236 (the question of whether defendants "received [s]ubsequent [t]ransfers of BLMIS funds from one another is a question to which they, and they alone, have the requisite information to respond"); *Merkin I*, 440 B.R. at 243 ("Defendants presumably have exclusive access to more detailed information regarding the proportion of their fees attributable to their BLMIS investments, and discovery of such information is warranted on the basis of the Trustee's allegations.").

The Trustee should be entitled to discovery before the Court considers dismissal of his subsequent transfer claim—a claim that may be proved through the books and records of Fairfield Sentry and Sumitomo. Contrary to Sumitomo's suggestion, the Trustee does not have all the records of Fairfield Sentry. Mot. at 4. As evidenced by the current posture of the Trustee's actions against the Fairfield management defendants, discovery is in its nascent stages and is expected to continue at least into 2023. *See, e.g.*, Stipulated Case Management Order, *Picard v. Fairfield Inv. Fund Ltd. (In re Bernard L. Madoff)*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Dec. 6, 2021), ECF No. 353 (setting November 2022 deadline for fact discovery and August 2023 deadline for expert discovery). Sumitomo also undoubtedly has records relevant to the transfers it received and upon which it mounts its tracing defense. Upon the prima facie case set forth in his Complaint, the Trustee is entitled to discovery of all relevant evidence.

## II.    THE TRUSTEE'S ALLEGATIONS ARE WELL PLEADED UNDER THE FEDERAL RULES OF CIVIL PROCEDURE

Sumitomo contends that the Complaint violates Fed. R. Civ. P. 8(a), 9(b), and 10(c). Sumitomo argues the Complaint fails to (1) provide sufficient information of the transfers so it can answer the Complaint; and (2) specify which allegations from the Fairfield Amended Complaint are incorporated so it can answer. *See* Mot. at 11-12. In addition to the reasons

discussed in Part I, *supra*, both arguments fail on the face of the pleading and under applicable law. Sumitomo further asserts that the Trustee's incorporation of the Fairfield Amended Complaint violates Fed. R. Civ. P. 8 and 10(c) because the Trustee failed to identify which portions of the Fairfield Amended Complaint he seeks to adopt. *See* Mot. at 14 n.9; Compl. ¶ 34. Finally, it argues that the allegations are insufficient to plead fraud with particularly under Fed. R. Civ. P. 9(b). Mot. at 14-15.

All of these arguments fail because as this Court previously held, the Trustee has properly alleged Fairfield Sentry's actual knowledge of the fraud at BLMIS and that the initial transfers from BLMIS to Fairfield Sentry are avoidable. *See Fairfield Inv. Fund*, 2021 WL 3477479, at *4. The Trustee has also alleged the amounts BLMIS transferred to Fairfield Sentry during the six years preceding the filing date, and the portion of that amount that was transferred within two years of the filing date. Compl. ¶¶ 35, 36. The allegations go on to detail the exact amount that Sumitomo received from Fairfield Sentry as a subsequent transfer. *Id*. ¶ 40. Additionally, the Complaint contains numerous allegations detailing the BLMIS Ponzi scheme, that Fairfield Sentry invested 95% of its assets with BLMIS, and relevant Bankruptcy Code provisions that form the basis of the Trustee's claims. *Id*. ¶¶ 17-20, 22-32.

This information sufficiently provides the necessary "who, when, and how much" of the subsequent transfers, and the Trustee has thus met his pleading burden under Section 550. Sumitomo has enough information about the claims to effectively evaluate its defenses and serve appropriate discovery requests. Further, the district court has already accepted the incorporation by reference of an initial transferee complaint in this liquidation and there is no reason to deviate from that practice here.

A.      **The Complaint Provides Fair Notice of the Claim Under Fed. R. Civ. P. 8(a)**

The Trustee's allegations have provided fair notice of the claims asserted against

Sumitomo.  Despite its protestations relying on Rule 8(a), Sumitomo is able to respond to the

Complaint, which is simple, concise, and direct.  The Trustee makes allegations regarding

Sumitomo's liability under Section 550(a) throughout the Complaint, and only incorporates the

Fairfield Amended Complaint—as part of one paragraph—in pleading the avoidability of the

initial transfers.  The Trustee alleges that he "seeks to recover approximately $54,253,642 in

subsequent transfers of Customer Property made to Defendant Sumitomo on October 16, 2007.

The subsequent transfers derived from investments with BLMIS made by Fairfield Sentry

Limited . . . ."  Compl. ¶ 2.  He further alleges that Fairfield Sentry maintained in excess of 95%

of its assets in its BLMIS customer accounts.  *Id.*

The Trustee incorporated by reference the amended complaint in an adversary proceeding

against Fairfield Sentry and other defendants in the Bankruptcy Court under the caption *Picard*

*v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (BRL).  There, the Trustee sought to avoid and

recover initial transfers of customer property from BLMIS to Fairfield Sentry in the amount of

approximately $3 billion.  *Id.* ¶ 34.  The Complaint's allegations specify that "[d]uring the six

years preceding the Filing Date, BLMIS made transfers to Fairfield Sentry of approximately $3

billion."  *Id.* ¶ 35.  These transfers "include[d] approximately $1.6 billion which BLMIS

transferred to Fairfield Sentry during the two years preceding the Filing Date."  *Id.* ¶ 36.  The

Trustee's allegations continue that a portion of the Fairfield Sentry Initial Transfers in the

amount of $54,253,642 was subsequently transferred to Sumitomo and is recoverable pursuant to

section 550 of the Bankruptcy Code.  *Id.* ¶ 40.

These allegations place no undue burden on Sumitomo in responding to the claims

against it, as it can either admit the substance of the avoidability of the initial transfers, deny

them, or respond that it does not have sufficient information to admit or deny.[4]  As these

allegations show, the Trustee has provided Sumitomo with the "necessary vital statistics" of the

subsequent transfer.  The Complaint makes clear that Sumitomo is liable to the Trustee for its

receipt of subsequent transfers of stolen customer property through its investment with Fairfield

Sentry.

The Trustee's allegations are distinguishable from those in the cases on which Sumitomo

relies, which generally describe the amounts a plaintiff seeks to recover by using inexact terms

such as "millions of dollars" or "every single dollar transferred."  *See, e.g., Silverman*, 379 B.R.

at 31.  Importantly, in accordance with the liberal pleading requirements of Fed. R. Civ. P. 8(a),

courts have found the rule to be satisfied in cases with allegations that include far less detail than

the Trustee's allegations do here.  *See, e.g., Est. of Stanley Chais*, 445 B.R. at 235-36 (Rule 8 and

Rule 9(b) requirements were satisfied where the complaint merely alleged that "some or all" of

the initial transfers "were subsequently transferred . . . to Defendant Chais and/or other

Defendants in the form of payment of commissions or fees, transfers from one account to

another, or other means").  In contrast, Exhibit C to the Complaint details the dates, amounts,

transferee name, and transferor name for the subsequent transfers.  Thus, Sumitomo's Rule 8

protestations are without merit.

### B.    The Trustee's Incorporation by Reference Is Proper Under Fed. R. Civ. P. 10(c)

Sumitomo's assertion that the Trustee may not incorporate the Fairfield Amended

Complaint by reference under Fed. R. Civ. P. 8 and 10(c) is also misguided.  Sumitomo ignores

the substance of the Complaint and the purpose of the incorporation: to make a *prima facie*

---

[4] To the extent that there are any specific factual allegations in the Fairfield Amended Complaint that Sumitomo
feels it is compelled to admit, the parties can stipulate to those facts.

showing that the initial transfers are avoidable under Section 548(a) so that the Trustee can

recover from Sumitomo under Section 550(a).  *See Citibank*, 12 F.4th at 196-97.  Doing as

Sumitomo seems to suggest—repleading all initial transfer allegations—does nothing to provide

a "short and plain statement" under Fed. R. Civ. P. 8(a) and would unnecessarily add countless

pages to the Complaint.  Such duplication is unnecessary in pleading recovery under Section

550, *see Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 501 B.R.

26, 36 (S.D.N.Y. 2013), and inconsistent with the purpose of Rule 8.

Rule 10(c), made applicable by Bankruptcy Rule 7010, allows the incorporation of other

pleadings by reference.  Rule 10(c) is intended to "facilitate pleadings that are 'short, concise,

and free of unwarranted repetition,' as well as to promote 'convenience' in pleading."  *Morrison

v. Off. of the U.S. Tr. (In re Morrison)*, 375 B.R. 179, 193 (Bankr. W.D. Pa. 2007) (quoting 5A

Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure 3d § 1326 (4th ed.

2007)).

In the bankruptcy context, all matters under the umbrella of one liquidation are

considered to be one proceeding for purposes of Rule 10(c).  *Am. Casein Co. v. Geiger* (*In re

Geiger*), 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010).  Tellingly, in *Geiger*, a bankruptcy court

allowed incorporation by reference of the pleadings in a different adversary proceeding within

the same liquidation because the pleadings "directly relate[d] to, materially affect[ed], and [were]

filed in a single bankruptcy case."  *Id*.  This is so because the whole liquidation is "an umbrella

under which all actions concerning [the] estate must be brought pursuant to the Bankruptcy

Rules."  *Id*.

18

Further, the District Court in this liquidation already has found the Trustee's

incorporation by reference of initial transferee complaints—including against Fairfield—

sufficiently pleaded in subsequent transfer actions.

> [The] Trustee's complaint against Standard Chartered Financial
> Services incorporates by reference the complaints against Kingate
> and Fairfield, including the allegations concerning the avoidability
> of the initial transfers, and further alleges the avoidability of these
> transfers outright. *See* Standard Chartered Compl. 1143–46, 50–53.
> Thus, the avoidability of the transfers from Madoff Securities to
> Kingate and Fairfield is sufficiently pleaded for purposes of section
> 550(a).

*In re Madoff Sec.*, 501 B.R. at 36. Sumitomo participated in the common briefing related to this

decision[5], and this decision is now law of the case as to it. *See In re Motors Liquidation Co.*, 590

B.R. 39, 62 (S.D.N.Y. 2018) (holding that the "law of the case doctrine," in which "a decision on

an issue of law made at one stage of a case becomes binding precedent to be followed in

subsequent stages," also "applies to different adversary proceedings filed within the same main

bankruptcy case").

### 1.    The Court Can Take Judicial Notice of Its Decision Holding That the Fairfield Amended Complaint Pleaded Actual Knowledge

Sumitomo's arguments about the Trustee's failure to sufficiently plead avoidability are

ultimately futile. Regardless of incorporation, this Court may take judicial notice of its holding

that the Fairfield Amended Complaint[6] sufficiently alleged the avoidability of the initial

transfers. *See generally Fairfield Inv. Fund*, 2021 WL 3477479, at *1. On a motion to dismiss,

"a court may take judicial notice of prior pleadings, orders, judgments, and other related

documents that appear in the court records of prior litigation and that relate to the case *sub*

---

[5] Order (Relates to consolidated proceedings on 11 U.S.C § 550(a)), *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLP (In re Madoff Sec.)*, Adv. Pro. No. 12-MC-115 (JSR) (Bankr. S.D.N.Y. Aug. 22, 2012), ECF No. 314.

[6] The Court may also take judicial notice of the Trustee's amended complaint in that action filed after the Complaint here. *See Rothman v. Gregor*, 220 F.3d 81, 91-92 (2d Cir. 2000).

*judice.*" *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011).  "Included

among such matters are decisions in prior lawsuits."  *DeMasi v. Benefico*, 567 F. Supp. 2d 449,

453 (S.D.N.Y. 2008).

**2.      At a Minimum, the Trustee Should Be Afforded the Opportunity to Replead**

Should the Court accept Sumitomo's argument and not take judicial notice of the

avoidability of the initial transfers at issue, the Trustee should be granted leave to replead.  Fed.

R. Civ. P. 15(a), made applicable by Bankruptcy Rule 7015, provides that "[t]he court should

freely give leave [to amend] when justice so requires."  The Second Circuit "strongly favors

liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)."

*Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006).  As evidenced by the

cases relied upon by Sumitomo, leave to replead extends to complaints that were dismissed for

improperly incorporating other pleadings or motions by reference.  *See, e.g.*, *Geiger*, 446 B.R. at

683; *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 483 (E.D.N.Y. 2007).

As the Supreme Court has noted, "[i]f the underlying facts or circumstances relied upon by a

plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim

on the merits."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The Trustee should thus be afforded

his chance to have his claims tested on the merits and not on the basis of pleading technicalities,

particularly where this Court has already found the avoidability of the Fairfield Sentry transfers

has been sufficiently pleaded.

**C.      The Trustee Has Pleaded His Allegations with the Requisite Particularity Under Fed. R. Civ. P. 9(b)**

Similar to its other repackaged tracing arguments, Sumitomo's argument that the

Complaint violates Fed. R. Civ. P. 9(b) misses the mark.  The assertion that the Complaint "fails

to identify a particular initial transfer from among the thousands listed in Exhibit C" is not

relevant to Fed. R. Civ. P. 9(b) but is addressed *supra* in Part I regarding the Trustee's pleading

burden. In addition, courts have established that with respect to subsequent transfer claims, Fed.

R. Civ. P. 9(b) governs the portion of a claim to avoid an initial intentional fraudulent transfer,

*Merkin II*, 515 B.R. at 149, and Rule 8(a) governs the portion of a claim to recover the

subsequent transfer. *Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87, 119

(Bankr. S.D.N.Y. 2011).

　　　In any case, the Trustee has satisfied his obligations under Rule 9(b) because he has

alleged that BLMIS was a Ponzi Scheme. Significantly, "[c]ourts have uniformly recognized a

presumption of actual intent to defraud on the part of the transferor in the context of a Ponzi

scheme. Known as the Ponzi scheme presumption, an actual intent to defraud is presumed

because the transfers made in the course of a Ponzi scheme could have been made for no purpose

other than to hinder, delay or defraud creditors." *Gowan v. The Patriot Grp., LLC (In re Dreier*

*LLP),* 452 B.R. 391, 424 (Bankr. S.D.N.Y. 2011) (cleaned up). This Court and the District Court

has held numerous times that the Ponzi scheme presumption applies in the Trustee's cases and

that BLMIS had actual intent to hinder, delay, or defraud its creditors. *See, e.g., In re Bernard L.*

*Madoff Inv. Sec. LLC*, No. 1:21-CV-02334-CM, 2022 WL 493734, at *7 (S.D.N.Y. Feb. 17,

2022); *Picard v. Legacy Cap. Ltd. (In re Bernard L. Madoff),* 603 B.R. 682, 693 (Bankr.

S.D.N.Y. 2019); *Cohmad Sec. Corp.*, 454 B.R. at 330; *Picard v. Lisa Beth Nissenbaum Tr. (In re*

*Bernard L. Madoff)* No. 20 cv. 3140 (JGK), 2021 WL 1141638, at *15 (S.D.N.Y. Mar. 24,

2021); *Picard v. Nelson (In re BLMIS)*, 610 B.R. 197, 235 (Bankr. S.D.N.Y. 2019).[7]

---

[7] Sumitomo cites to several cases to support its Fed. R. Civ. P. 9(b) argument. The cases are factually distinguishable and notably, none invoke the Ponzi scheme presumption that applies to this case. *See, e.g.*, *Off. Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp., Bear, Stearns & Co., Inc. (In re Verestar, Inc.)*, 343 B.R. 444, 468 (S.D.N.Y. 2006).

Here, the allegations of Section VI of the Complaint, entitled "Ponzi Scheme," make clear that the Trustee's claim is based upon the BLMIS Ponzi scheme detailing the particulars of the fraud. Compl. ¶¶ 22-32. Therefore, in light of the Ponzi scheme presumption, Sumitomo's argument that the allegations do not satisfy the specificity requirements of Fed. R. Civ. P. 9(b) fails.[8]

## III.    THE TRUSTEE'S CLAIM IS NOT BARRED UNDER 11 U.S.C. § 546(e)

Sumitomo contends that the initial transfers from BLMIS to Fairfield Sentry are protected from avoidance and recovery by the 11 U.S.C. § 546(e) safe harbor provision. Mot. at 16. In addition to the reasons discussed above in Parts I and II, this argument fails because (1) it is irrelevant to the extent the avoidable initial transfers to Fairfield Sentry were made within the two-year period prior to December 11, 2008; (2) even if the initial transfers were made outside the two-year period, Section 546(e) does not protect the initial transfers from avoidance because Fairfield Sentry had knowledge of Madoff's fraud; and (3) Sumitomo is precluded from arguing

---

[8] Moreover, this Court has routinely found that the Trustee's allegations show actual intent to defraud, even without the Ponzi scheme presumption, based on evidence of "badges of fraud." *See, e.g., Picard v. Nelson (In re Bernard L. Madoff)*, 610 B.R. 197, 235 (Bankr. S.D.N.Y. 2019) (citing *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582-83 (2d Cir. 1983) (badges of fraud include (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; (6) the general chronology of the event and transactions under inquiry.). The "concealment of facts and false pretenses by the transferor" is also a badge of fraud. *Id.* at 1582 (quoting 4 Collier on Bankruptcy ¶ 548.02[5] at 548–34 to 38 (L. King 15th ed. 1983)). This Court has held that the existence of several badges can "constitute conclusive evidence of an actual intent to defraud . . . ." *Kirschner v. Fitzsimons (In re Tribune Co. Fraudulent Conveyance Litig.)*, No. 11-md-2296 (RJS), 2017 WL 82391, at *13 (S.D.N.Y. Jan. 6, 2017) (citation omitted).

In particular, the Trustee has alleged that BLMIS showed its customers it had invested approximately $65 billion, while it only actually had a fraction of that amount. Compl. ¶ 31. Among other allegations, the Trustee stated that customer accounts had not accrued any real profits because no investments were ever made, *id.,* and that BLMIS was insolvent. *Id.* ¶ 32. Accordingly, there is a separate basis to conclude that the subsequent transfer to Sumitomo was made with the actual intent to defraud based on (i) concealment of facts and false pretenses by the transferor; (ii) BLMIS's insolvency; and (iii) the lack of consideration for the fictitious transfers. *See Nelson,* 610 B.R. at 235 (finding actual intent to defraud based on these badges of fraud); *Picard v. JABA Assocs. LP (In re Bernard L. Madoff)*, 528 F. Supp. 3d 219, 240-41 (S.D.N.Y. 2021) (same).

that *Cohmad*'s actual knowledge exception is wrong or that the Trustee must allege Sumitomo's

actual knowledge to bar the application of Section 546(e).

Section 546(e) provides a safe harbor for the avoidance of certain initial transfers made

outside the two-year period referenced in Section 548(a)(1)(A).  *See* 11 U.S.C. § 546(e)

("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may

not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title." (emphasis added)).

However, the District Court held that a transferee's actual knowledge of Madoff's fraud

precluded application of the safe harbor, thereby allowing the Trustee to avoid and recover

transfers made prior to the two-year period.  *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv.*

*Sec. LLC*, No. 12-MC-115, 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) (Rakoff, J.)

("*Cohmad*").

### A. The Complaint Plausibly Alleges That Initial Transfers Were Made Within the Two-Year Period and So Are Outside the Safe Harbor of Section 546(e)

Sumitomo argues that because BLMIS was a stockbroker and Fairfield Sentry was a

financial institution, the initial transfers are therefore covered by Section 546(e).  Mot. at 17.

However, Sumitomo must acknowledge that as to any initial transfers from BLMIS to Fairfield

Sentry made between December 11, 2006, and December 11, 2008, Section 546(e) does not

apply.  The Complaint plausibly alleges that certain initial transfers were made within this two-

year period.

As argued *supra*, the Complaint only needs to outline the relevant pathways through

which customer property was transferred from BLMIS to Fairfield Sentry and then to Sumitomo

and does not need to "connect each of the subsequent transfers with an initial, voidable transfer

emanating from BLMIS."  *Merkin II*, 515 B.R. at 150.  Sumitomo concedes that one such

relevant pathway includes initial transfers from BLMIS to Fairfield Sentry of $65 million and

$95 million on September 6, 2007, and October 3, 2007, respectively.  *See* Mot. at 28.  Because

the Complaint plausibly alleges that at least one relevant pathway includes initial transfers that

are not subject to the safe harbor, Sumitomo's argument should be rejected.

**B.     Fairfield Sentry's Actual Knowledge of Madoff's Fraud Bars Application of Section 546(e) to Initial Transfers Beyond the Two-Year Period**

Even if the initial transfer occurred outside the two-year period, Section 546(e) would not

bar the Trustee's claims.  Sumitomo sets forth the requirements of Section 546(e) and how they

are supposedly met in this case, specifically discussing whether Fairfield Sentry qualifies as a

financial institution,[9] whether Fairfield Sentry or Sumitomo's agreements qualify as securities

contracts, and whether Fairfield Sentry's transfers to Sumitomo qualify as settlement payments.

Mot. at 16-26.  None of this matters, however, because, as this Court has previously held, the

Trustee has sufficiently pleaded Fairfield Sentry's actual knowledge of fraud.  *See Fairfield Inv.*

*Fund*, 2021 WL 3477479, at *4-5.  As such, Section 546(e) does not bar the avoidance of initial

transfers made to Fairfield Sentry, and those transfers may be recovered from Sumitomo

regardless of whether Fairfield Sentry or Sumitomo qualify as financial institutions, their

agreements qualify as securities contracts, or their transfers qualify as settlement payments.

**C.     Sumitomo Is Precluded from Relitigating the Actual Knowledge Exception Established in *Cohmad***

Sumitomo also argues that *Cohmad* is wrong and seeks to relitigate whether actual

knowledge bars the application of Section 546(e).  Sumitomo, however, is precluded from doing

---

[9] Defendant mischaracterizes the Trustee's relationship with the Fairfield Liquidators as a "substantive legal relationship" in an effort to trigger nonparty issue preclusion as it pertains to Fairfield Sentry's qualification as a "financial institution" within the meaning of Section 546(e). Mot. at 20 n.14.  But merely sharing an interest in recovering BLMIS customer property hardly constitutes the sort of "substantive legal relationship" required under *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008), to establish nonparty issue preclusion.  *See In re Refco Inc. Sec. Litig.*, No. 07-MD-1902 (JSR), 2013 WL 12191844, at *13 (S.D.N.Y. Mar. 25, 2013) (emphasizing "that preclusion of nonparties is an exceptional situation, contrary to the basic presumption that every party is entitled to its day in court").  Moreover, given that nonparty preclusion is an affirmative defense, raising it in this Motion is inappropriate.  *See Taylor*, 553 U.S. at 907.

so. The District Court issued *Cohmad* following consolidated proceedings on the application of

Section 546(e). Sumitomo participated in those proceedings[10] and concedes that *Cohmad* held

that a transferee with actual knowledge of Madoff's fraud cannot claim the protections of Section

546(e). Mot. at 24 (citing *Cohmad*, 2013 WL 1609154, at *9). The District Court then

remanded to this Court, and this Court has since applied the actual knowledge "exception" on

numerous occasions.[11]

 Given Sumitomo's participation in the withdrawal of the reference and the District

Court's review of this issue, it is bound by *Cohmad* as law of the case. *See Sec. Inv. Prot. Corp.*

*v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 466 (Bankr. S.D.N.Y. 2015) ("Those moving

defendants that participated in the withdrawal of the reference of the antecedent debt/value issue

have had their day in court and Judge Rakoff's decisions are law of the case."); *Picard v. Lowrey*

*(In re Bernard L. Madoff)*, 596 B.R. 451, 463 (S.D.N.Y. 2019), *aff'd sub nom. Picard v.*

*Gettinger*, 976 F.3d 184 (2d Cir. 2020) (law of the case doctrine foreclosed relitigation of issue

where the district court "considered and rejected the very arguments that defendants now

make"). Moreover, Sumitomo also did not seek leave to appeal the *Cohmad* decision.

 Nor does the Second Circuit's decision in *Ida Fishman* warrant reconsideration of

*Cohmad*'s actual knowledge exception. *Picard v. Ida Fishman Recoverable Tr. (In re Bernard*

*L. Madoff Inv. Sec. LLC)*, 773 F.3d 411 (2d Cir. 2014) ("*Ida Fishman*"). As this Court has

---

[10] Sumitomo's Memorandum of Law in Support of Its Motion for Withdrawal of the Reference, *Picard v. The Sumitomo Trust & Banking Co., Ltd.*, Adv. Pro. No. 11-02573 (Bankr. S.D.N.Y. Mar. 30, 2012), ECF No. 15 (raising Section 546(e) as a ground for withdrawal).

[11] *See, e.g., Fairfield Inv. Fund*, 2021 WL 3477479, at *4 (applying actual knowledge exception); *Picard v. Magnify, Inc. (In re Bernard L. Madoff Inv. Sec. LLC)*, 583 B.R. 829, 841 (Bankr. S.D.N.Y. 2018) (same); *Picard v. Mendelow (In re Bernard L. Madoff Inv. Sec. LLC)*, 560 B.R. 208, 225-26 (Bankr. S.D.N.Y. 2016) (same); *Picard v. Avellino (In re Bernard L. Madoff Inv. Sec. LLC)*, 557 B.R. 89, 112 (Bankr. S.D.N.Y. 2016) (same); *Shapiro*, 542 B.R. at 112 (same); *Picard v. Ceretti (In re Bernard L. Madoff Inv. Sec. LLC)*, Adv. Pro. No. 09-01161 (SMB), 2015 WL 4734749, at *12-13 (Bankr. S.D.N.Y. Aug. 11, 2015) (same); *Merkin II*, 515 B.R. at 140 (same).

recognized, *Ida Fishman* did not address the actual knowledge exception. *See Picard v. Cohen*,

Adv. Pro. No. 10-04311, 2016 WL 1695296, at *10 n.16 (Bankr. S.D.N.Y. Apr. 25, 2016) ("The

[*Ida Fishman*] Court did not address the exception to the safe harbor regarding those investors

who had actual knowledge that BLMIS was not trading securities.").

**D.     Sumitomo Is Precluded from Arguing That Section 546(e) Applies
          Independently to Recovery Actions**

Sumitomo is also wrong that the Trustee must allege that Sumitomo—as opposed to

Fairfield Sentry—had actual knowledge in order to invoke the actual knowledge exception to

Section 546(e).  Mot. at 23-26.  Specifically, Sumitomo argues that under *Cohmad*, its

subscription agreement with Fairfield Sentry may act as the relevant "securities contract" in lieu

of BLMIS's account agreement, and as such, in these Section 550 recovery actions, the Court

must look solely to Sumitomo's knowledge to determine whether the initial transfer is avoidable.

But *Cohmad* does not stand for this proposition, and Sumitomo's argument just attempts to

remanufacture the previously rejected argument that the Section 546(e) safe harbor should

independently apply to actions under Section 550.

By its plain language, Section 546(e) applies to the avoidance of initial transfers, not the

recovery of subsequent transfers under Section 550.  *See* 11 U.S.C. § 546(e) ("[T]he trustee may

not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title." (emphasis added)); *see

also Picard v. BNP Paribas S.A. (In re Bernard L. Madoff)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y.

2018) ("*BNP*") ("The Trustee does not . . . 'avoid' the subsequent transfer; he recovers the value

of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the

safe harbor does not refer to the recovery claims under section 550.").  This limitation on the safe

harbor to avoidance actions is consistent with the well-established principle that "the concepts of

avoidance and recovery are separate and distinct."  *In re Madoff Sec.*, 501 B.R. at 30.  It is also

consistent with the understanding that the Bankruptcy Code's avoidance provisions protect

against depletion of a debtor's estate, while Section 550 is merely a "utility provision," intended

to help execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place."

*See In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 98 (2d

Cir. 2019).

*Cohmad* confirmed that Section 546(e) does not provide an independent safe harbor for

Section 550 recovery actions against subsequent transferees. The District Court withdrew the

reference as to whether Section 546(e) barred recovery of a subsequent transfer pursuant to

Section 550.[12] However, in its decision, the District Court specifically limited the safe harbor to

avoidance claims based on the plain language of Section 546(e). *See Cohmad*, 2013 WL

1609154, at *4, *9 n.5 (applying the "plain terms" of Section 546(e)); *Id*. at *7 (recognizing that

subsequent transferees can raise initial transferees' defenses to *avoidance*); *Id*. at *10 ("[B]oth

initial transferees and subsequent transferees are entitled to raise a defense based on the

application of Section 546(e) to the *initial* transfer from Madoff Securities." (emphasis added)).

And though the court hypothesized, in *dicta*, that a subsequent transferee's subscription

agreements with the initial transferee feeder fund, and related agreements and transactions, might

under certain circumstances constitute relevant "securities contracts," and that certain subsequent

transferee defendants might qualify as "financial institutions" or "financial participants," the

decision is clear that the focus of the safe harbor is still on the *initial* transfers.[13] *See id*. at *9

---

[12] *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 12 MC 0115 (JSR), 2012 WL 12539777, at *3 (S.D.N.Y. May 16, 2012) (withdrawing the reference on issue of "whether application of Section 546(e) to an initial or mediate Transfer bars recovery by the Trustee of any subsequent Transfer pursuant to Section 550").

[13] For this same reason, *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 339 (2d Cir. 2011), which the District Court cites in *Cohmad* solely to support its reading of what constitutes a "securities contract," does not change this outcome. The focus is still on the initial transfers, which for purposes of Section 546(e) are the transfers from BLMIS to its feeder funds. *See Ida Fishman*, 773 F.3d at 422-23.

("[T]he question . . . is whether the Trustee has alleged that that *initial transfer* was made in connection with (*i.e.,* related to) a covered securities contract . . . ." (emphasis added)).[14]

Based on *Cohmad*, this Court held in *BNP* that Section 546(e) applies only to avoidance, not recovery, and that a subsequent transferee cannot assert the protections of Section 546(e) where the Trustee has adequately pleaded the initial transferee's actual knowledge. *See BNP*, 594 B.R. at 197; *see also SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*, 620 B.R. 505, 514 (Bankr. S.D.N.Y. 2020) ("[T]he safe harbor defense only applies by its terms to the initial transfer.").

Sumitomo tries to circumvent the foregoing limitations by arguing that in the Trustee's recovery actions, even for purposes of determining avoidance, the Court must look only to the expectations and knowledge of the subsequent transferee. Mot. at 24-25. But in *BNP*, this Court expressly rejected that argument, recognizing that it was a reiteration of the argument rejected in *Cohmad* that Section 546(e) should independently apply to recoveries. *See BNP*, 594 B.R. at 196-97 (rejecting the argument that the Trustee must plead Defendant's actual knowledge to escape the application of Section 546(e) because trustees "do [] not, however, 'avoid' the subsequent transfer"). Based on *BNP*, a subsequent transferee gets only "indirect" protection from Section 546(e) to the same extent it protects the initial transferee. *Id*. at 197. Like *Cohmad*, *BNP* is law of the case and Sumitomo is bound by both decisions.

Sumitomo nevertheless seeks to relitigate this point, arguing that to the extent this Court relies on Fairfield Sentry's agreements as the relevant "securities agreements" in accordance

---

[14] Sumitomo contends that, by alleging that the subsequent transfers were customer property, the Trustee has conceded that the initial transfers were "in connection with" Fairfield Sentry's agreements with Sumitomo. However, showing that the subsequent transfers can be traced through the "relevant pathways" is irrelevant to the issue of whether the initial transfers were "in connection with" any transaction or contract between Fairfield Sentry and Sumitomo for purposes of the securities safe harbor.

with *Cohmad*, this Court must look to Sumitomo's actual knowledge. Mot. at 24-25. But as stated above, the District Court did not conclude this, nor did it suggest that the actual knowledge exception should be applied any differently if the feeder fund agreements were to be used for Section 546(e). Indeed, such an interpretation would eliminate the point of the actual knowledge exception—which is to restrict transferees with actual knowledge from hiding behind the safe harbor. *See Cohmad*, 2013 WL 1609154, at *3 (explaining that defendants who knew BLMIS was a Ponzi scheme "must have known that the transfers they received directly or indirectly from Madoff Securities were not 'settlement payments'").

Further, adopting Sumitomo's position means the safe harbor would apply even where the initial transferee feeder fund knew there were no securities transactions to protect. It would also allow an initial transferee—who had knowledge of the fraud and was unable to satisfy a judgment (like Fairfield Sentry)—to place fraudulently transferred moneys with a subsequent transferee and out of the reach of a trustee. *Id. at* *7 ("A defendant cannot be permitted to in effect launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of Section 546(e)").

Expanding the safe harbor as Sumitomo proposes would also result in subsequent transferees being afforded more protection as to avoidance than the initial transferee itself, which does not reflect Congress's intent. *See Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.)*, 343 B.R. 75, 83 (Bankr. S.D.N.Y. 2006), *rev'd on other grounds*, 388 B.R. 489 (S.D.N.Y. 2008) ("Upon consideration of the initial transferee's defenses and once the amount of its liability is established, that amount can be sought from any of the transferees, including subsequent transferees, subject to any of their additional defenses."). Conversely, providing subsequent transferees with the same defenses to avoidance as available to the initial transferee does not

unfairly bias subsequent transferees.

## **CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests that the Court deny

Sumitomo's Motion.

Dated: April 12, 2022
New York, New York

*/s/ Brian W. Song*

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
dsheehan@bakerlaw.com
Brian W. Song
bsong@bakerlaw.com
Ganesh Krishna
gkrishna@bakerlaw.com
Ariana Dindiyal
adindiyal@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee
for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment
Securities LLC and the Chapter 7 Estate of
Bernard L. Madoff*