**FOR PUBLICATION**

| | |
|---|---|
| Securities Investor Protection Corporation, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| Bernard L. Madoff Investment Securities LLC | |
| Defendant. | |
| In re: | |
| Bernard L. Madoff | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 10-05169 (CGM) |
| v. | |
| Fairfield Pagma Associates, LP; Fairfox LLC; Seyfair, LLC; Estate of Marjorie Kleinman; Bonnie J. Kansler, as Executor of estate of Marjorie Kleinman; Seymour Kleinman | |
| Defendants. | |

**MEMORANDUM DECISION GRANTING SUMMARY JUDGMENT IN FAVOR OF THE TRUSTEE**

**A P P E A R A N C E S:**

MAXIMILLIAN S. SHIFRIN (via Zoom)
Baker & Hostetler LLP
45 Rockefeller Plaza,
New York, NY 10111
Attorneys for the Trustee, Irving Picard

BARRY R. LAX (via Zoom)

Lax & Neville LLP
1412 Broadway
Suite 1407
New York, NY 10018
Attorneys for the Defendants

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

## Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference dated July 10, 1984, and the Amended Standing Order of Reference dated January 31, 2012. In addition, the District Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this Court has jurisdiction under the latter provision. The Court has authority to enter a final order in these cases.[1] To the extent that it does not, the Court asks the District Court to construe this decision as proposed findings of fact and conclusions of law, pursuant to the Amended Standing Order of Reference dated January 31, 2012.

## Background

For background of these SIPA cases and the Bernard L. Madoff Investment Securities LLC ("BLMIS") Ponzi scheme, please refer to the findings of fact in *Picard v. Nelson* (*In re BLMIS*), 610 B.R. 197, 206–14 (Bankr. S.D.N.Y. 2019).

---

[1] Defendants have implicitly consented to the entry of a final order by this Court by failing to raise the issue. *In re Bernard L. Madoff Inv. Sec. LLC*, No. 1:21-CV-02334-CM, 2022 WL 493734, at *10 (S.D.N.Y. Feb. 17, 2022).

Undisputed Facts

Fairfield Pagma Associates ("Fairfield Pagma") was a New York limited partnership that opened an account with BLMIS on January 22, 1993. Trustee's Stmt. ¶ 128, ECF No. 96.[2] Marjorie Kleinman ("Marjorie") and Seymour Kleinman ("Seymour") were the initial general partners of Fairfield Pagma at the time of its formation. *Id.* ¶ 110. Defendant Seyfair, LLC ("Seyfair") and defendant Fairfox, LLC ("Fairfox") were limited liability companies formed on December 13, 2004. Def's Stmt. ¶ 2, ECF No. 111. Following the death of Marjorie, the Court signed a stipulation on April 7, 2015, ordering the substitution of Estate of Marjorie Kleinman a/k/a Marjorie Helene Kleinman and Bonnie Joyce Kansler ("Bonnie Kansler") as executor of Marjorie's Estate in place of Marjorie. ECF No. 43.[3] The Trustee has moved for summary judgment under count one of the complaint against Fairfield Pagma, Bonnie Kansler, Seymour, Seyfair, and Fairfox ("Defendants").[4]

Defendants do not dispute the Trustee's statement of material fact ("Statement of Material Fact") in paragraphs numbered 1–107 and 113–134. Def's Stmt. at 2, ECF No. 111. It is undisputed that BLMIS operated a Ponzi scheme, the plea allocutions of Bernie Madoff and other defendants are admitted, BLMIS records are admitted, the Trustee's experts' reports are admitted, and it is not disputed that BLMIS made the transfers at issue to Fairfield Pagma.

---

[2] Unless otherwise specified, references to this Court's electronic docket ("ECF") are to the docket of adversary proceeding, 10-05169-cgm.

[3] An action for or against the estate must be made by or against the executor in his representative capacity. *Wilmington Tr., Nat'l Ass'n v. Estate of McClendon*, 287 F. Supp. 3d 353, 373 (S.D.N.Y. 2018) (cleaned up). In this case, the Trustee has sued Bonnie Kansler in her representative capacity as the executor of Marjorie's estate. Marjorie is no longer a named defendant.

[4] Count One alleges that each of the transfers made during the Two-Year Period "constitutes a fraudulent transfer avoidable by the [SIPA] Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from Defendants pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA." Compl., ECF No. 1.

Fairfield Pagma was a customer of BLMIS's investment advisory business ("IA Business") and held Account No. 1ZA994. Def's Stmt. ¶ 111. It is undisputed that within the two-year period prior to December 11, 2008, Fairfield Pagma withdrew $1,247,929 in fictitious profits. SIPA Trustee Stmt., ¶ 134, ECF No. 96. The issue this Court must resolve is whether Seymour and Marjorie[5] are liable as general partners for Fairfield Pagma's debts.

Fairfield Pagma dissolved following the collapse of BLMIS. Def's Stmt. ¶ 108. There is a dispute as to whether Seyfair and Fairfox replaced Seymour and Marjorie as general partners of Fairfield Pagma. *Id.* ¶ 3. This is the heart of Seymour and Marjorie's opposition. They argue that they ceased being general partners of Fairfield Pagma and that only Seyfair and Fairfox—as replacement general partners—should be liable for Fairfield Pagma's debts. The Defendants' opposition to summary judgment also states that Seymour died in 2015. Def's Opp'n. at 6, ECF No. 110. The Defendants argue that the motion for summary judgment should be denied against Seymour as no representative has been substituted in place of Seymour.

## Discussion

Under Rule 56(a) of the Federal Rules of Civil Procedure, as applied by Rule 7056(c) of the Federal Rules of Bankruptcy Procedure: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The materiality of facts must be determined with reference to the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material only if it affects the result of the proceeding and a fact is in dispute only when the

---

[5] The Court reemphasizes that in this adversary proceeding Marjorie was replaced by her executor, Bonnie Kansler. Because Kansler is also a witness in this case, for ease of readability, the Court will refer to Marjorie when discussing the liability of Marjorie's estate.

Page **4** of **17**

opposing party submits evidence such that a trial would be required to resolve the differences." *In re CIS Corp.*, 214 B.R. 108, 118 (Bankr. S.D.N.Y. 1997).

A movant has the initial burden of establishing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. *Gallo v. Prudential Residential Servs. Ltd. P'ship*, 22 F.3d 1219, 1223–24 (2d Cir. 1994). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997). The nonmoving party should oppose the motion for summary judgment with evidence that is admissible at trial. *See* Fed. R. Civ. P. 56(e)(1); *Crawford v. Dep't of Investigation*, 324 F. App'x 139, 143 (2d Cir. 2009) (affirming award of summary judgment in favor of defendant, where plaintiff presented testimony from uncorroborated source, as well as "speculation, hearsay and other inadmissible rumor, and conclusory allegations").

At oral argument, counsel for Fairfield Pagma, Seyfair, and Fairfox consented to have summary judgment entered against them. Tr. at 12:8–13, ECF No. 135. The Court will briefly examine Fairfield Pagma's liability as it relates to Seymour and Marjorie's liability.

I. The Trustee Satisfies 11 U.S.C. § 548(a)(1)(A)

The Trustee seeks to avoid and recover transfers of fictitious profits to Fairfield Pagma under 11 U.S.C. § 548(a)(1)(A). The elements of this claim are: (i) a transfer of an interest of the debtor in property (ii) made within two years of the petition date (iii) with "actual intent to hinder, delay, or defraud" a creditor. *Adelphia Recovery Tr. v. Bank of Am., N.A.*, 2011 WL 141967, at *2 (S.D.N.Y. Apr. 7, 2011), *aff'd* 748 F.3d 110 (2d Cir. 2014). SIPA § 78fff-2(c)(3) allows the SIPA Trustee to "invoke the fraudulent transfer provisions in the Bankruptcy Code to

recover customer property." *Picard v. Gettinger* (*In re BLMIS*), 976 F.3d 184, 199 (2d Cir. 2020).

   i.  Transfer of an Interest of the Debtor in Property

The Trustee must prove that the property he is seeking to recover was "customer property" prior to the transfer. All monies transferred from the 509 Account or the 703 Account[6] are "customer property" for purposes of these SIPA cases. *Picard v. BAM, L.P.* (*In re BLMIS*), 624 B.R. 55, 61 (Bankr. S.D.N.Y. 2020) ("When the Defendants invested their money into the IA Business, the deposits were placed into the Bank Accounts and commingled with all of the Ponzi scheme victims' deposits. The funds held in the Bank Accounts were meant to be invested legitimately through BLMIS but never were. Thus, they were 'customer property.'"); *see also Picard v. Nelson, (In re BLMIS)*, 610 B.R. 197, 233 (Bankr. S.D.N.Y. 2019) ("All of the transfers were made from the 509 Account held by BLMIS and consisted entirely of fictitious profits. Under SIPA, the customer deposits are deemed to have been BLMIS's property for the purposes of these adversary proceedings.").

In this case, it is undisputed that the Trustee seeks to recover customer property. Def's Opp'n at 1, ECF No. 110. "Fairfield Pagma received the transfers the Trustee is seeking to avoid and recover between March 2007 and July 2008." *Id.*; Def's Counter Stmt. at 2, ECF No. 111 ("Defendants do not dispute the Trustee's Statements of Material Fact Nos. 1–107 and 113–134.").

---

[6] BLMIS primarily used three bank accounts for the IA Business: JP Morgan Chase Bank, N.A. ("Chase") account #xxxxx1703 (the "703 Account"); Chase account #xxxxxxxxx1509 (the "509 Account"); and the Bankers Trust account #xx-xx0-599 (the "599 Account" or the "BT Account").

      ii.     Made Within Two Years of the Petition Date

The Trustee seeks to recover the fictitious profits that BLMIS transferred to Defendant within the two-year period between December 11, 2006 and December 11, 2008. The Trustee's expert, Michael Greenblatt, has provided evidence that shows that the Fairfield Pagma account consisted of $3,499,668 in principal and an additional $1,247,929 of fictitious profits. Trustee's Stmt. ¶¶ 131–134; Def's Counter Stmt. at 2, ECF No. 104 ("Defendants do not dispute the Trustee's Statements of Material Fact Nos. 1–107 and 113–134.").

      iii.    Actual Intent to Hinder, Delay, or Defraud

Intent to defraud is established as BLMIS operated a Ponzi scheme. *Picard v. Cohen*, Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296, at *5 (Bankr. S.D.N.Y. Apr. 25, 2016) (citing *SIPC v. BLMIS* (*In re BLMIS*), 531 B.R. 439, 471 (Bankr. S.D.N.Y. 2015)) ("[T]he Trustee is entitled to rely on the Ponzi scheme presumption pursuant to which all transfers are deemed to have been made with actual fraudulent intent."); *Picard v. Cohmad Sec. Corp.*, 454 B.R. 317, 330 (Bankr. S.D.N.Y. 2011) ("[T]he fraudulent intent on the part of the debtor/transferor . . . is established as a matter of law by virtue of the 'Ponzi scheme presumption' . . . ."). That BLMIS operated as a Ponzi scheme is well-established, and the Court relies on earlier findings of same and holds that the Trustee has met its burden of proof for summary judgment on this issue. *See Picard v. Legacy Capital Ltd.*, 603 B.R. 682, 688–93 (Bankr. S.D.N.Y. 2019) (discussing in detail that BLMIS was a Ponzi scheme and why the Trustee is permitted to rely on the Ponzi scheme presumption to prove intent as a matter of law); *see also Bear Stearns Secs. Corp. v. Gredd* (*In re Manhattan Inv. Fund Ltd.*), 397 B.R. 1, 11 (S.D.N.Y. 2007) ("[T]he Ponzi scheme presumption remains the law of this Circuit.").

The Trustee has met his burden on every element of his prima facie case. Fairfield Pagma did not rebut any of the SIPA Trustee's experts' opinions, and the unrebutted reports are admissible. There is no genuine dispute regarding BLMIS's (i) interest in the transferred funds; (ii) payment of fictitious profits within the two-year period to or for the benefit of Fairfield Pagma; and (iii) actual intent to hinder, delay, or defraud its creditors. As Fairfield Pagma's liability has been determined, the only issue that remains is whether Seymour and Marjorie are liable as general partners for Fairfield Pagma's debts. For the reasons stated below, the Court holds that Seymour and Marjorie are liable for Fairfield Pagma's debts under New York Partnership law and that their defenses fail.

II.   Seymour and Marjorie are Liable for Fairfield Pagma's Debts

The Trustee argues that Seymour and Marjorie, as general partners of Fairfield Pagma, are liable for Fairfield Pagma's debts. Mot. Summ. J. 37, ECF No. 95; *Picard v. Jaba Associates L.P* (*In re BLMIS*), No. 120 CV. 3836, 2021 WL 1112342, at *7 (S.D.N.Y. Mar. 24, 2021) (holding that general partners are jointly liable for the obligations of the limited partnership); N.Y. P'ship L. § 26(a). Seymour and Marjorie argue that they cannot be liable for the transfers made between 2006 and 2008 because they withdrew their capital from Fairfield Pagma in 2005. Seymour and Marjorie argue that in 2005, Fairfox and Seyfair replaced them as general partners of Fairfield Pagma. Thus, they argue that during the relevant transfer period, they were not general partners of Fairfield Pagma and cannot be liable for its debts.

The Trustee contends that Seymour and Marjorie fail to provide any evidence that shows they ceased being general partners of Fairfield Pagma. The Trustee also argues that the recently submitted evidence provided by the Defendants in their Opposition to Summary Judgment should be precluded. The Trustee states that the witnesses and documents were never disclosed

nor produced in response to the Trustee's discovery requests. *See* Federal Rule of Civil Procedure 37(c) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."); *Elliot v. Google, Inc.*, 860 F.3d 1151 (9th Cir. 2017) (precluding new evidence offered at summary judgment as it was not disclosed during discovery and proponent of the evidence did not show that the delay was substantially justified or harmless); *Gibbs v. City of New York*, 87 F. Supp. 3d 482 (S.D.N.Y. 2015) (refusing to consider a statement from a witness when ruling on summary judgment because the witness had not been identified during discovery).

In opposition to summary judgment, the Defendants provide declarations from Adam Kansler (Adam Decl., ECF No. 112), Bonnie (Bonnie Decl., ECF No. 113), and Ronni Leo (Ronni Decl., ECF No. 115).

Adam Kansler

Adam Kansler ("Adam") is the son of Bonnie Kansler and a former partner at the law firm of Proskauer Rose, LLP. Adam Decl., ¶ 2, ECF No. 112. In 2003, Adam allegedly reviewed the limited partnership agreement of Fairfield Pagma and drafted the Articles of Organization and operating agreements for Seyfair and Fairfox. *Id.* at ¶ 4–5. Attached to Adam's Declaration are:

1)   Fairfox LLC's Articles of Organization;

2)   Seyfair LLC's Articles of Organization;

3)   FoxFair[7] LLC's Amended Articles of Organization; and

4)   Seyfair LLC's Amended Articles of Organization.

---

[7] It is unclear why Fairfox LLC's name changed to FoxFair LLC in the Amended Articles of Organization.

Adam Decl., ECF No. 112. Adam's Declaration and exhibits are offered to show that Seyfair and Fairfox became general partners of Fairfield Pagma in place of Seymour and Marjorie. The Trustee states that Adam was not identified in Defendants' initial disclosures and that Defendants never supplemented these disclosures or otherwise disclosed Adam as a potential witness. Trustee's Reply at 6, ECF No. 116; Maximillian Shifrin Decl., ECF No. 118. The Trustee has provided this Court with the Defendants' initial disclosures. Shifrin Decl., Ex. 3, ECF No. 118. The only individual named as having discoverable information was Bonnie Kansler. *Id.* Adam is not listed. *Id.* The exhibits included with Adam's Declaration were also not provided to the Trustee and were not listed in the Defendants' initial disclosures. Trustee's Reply at 6, ECF No. 116; Maximillian Shifrin Decl., ECF No. 118. The Trustee argues that Adam's Declaration and exhibits should be precluded.

The Defendants argue that the Trustee never served Seymour, Fairfox, or Seyfair with any discovery requests and "they remain perfectly free to introduce evidence on this Motion and at Trial." Def's Opp'n at 15, ECF No. 110. The Court disagrees. That is not how the Federal Rules of Civil Procedure operate. Rule 26(a) of the Federal Rules of Civil Procedure, which is made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7027, requires a party to affirmatively provide initial disclosures. 10 Collier on Bankruptcy § 7026.02 (16th 2021). Federal Rule of Civil Procedure 26(a)(1)(A)(i) requires:

> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment

Fed. R. Civ. P. 26. The Defendants each had a duty to provide initial disclosures detailing any individuals likely to have discoverable information. Failure to disclose under Rule 26(a) may lead to preclusion of any new information or witnesses. *See* Fed. R. Civ. P. 37(c)(1). When

Page **10** of **17**

precluding evidence, the Court should consider "the party's explanation for the failure to comply with the [disclosure requirement]; (2) importance of the . . . precluded [evidence]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new [evidence] and (4) possibility of continuance." *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 331 F. Supp. 3d 221, 237 (S.D.N.Y. 2018) (quoting *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006)).

Defendants have not shown that their failure to disclose Adam was substantially justified or harmless. *See* Fed. R. Civ. P. 37(c) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."). Adam is a key family witness who should have been disclosed to the Trustee along with the relevant documents in his possession. The documents were at the Defendants' fingertips from the inception of this case. The Court will preclude the declarations provided by Adam and strike the exhibits provided in his declaration.

Ronni Leo

Ronni Leo is the son of defendant Seymour and a certified public accountant who prepared the tax returns of Fairfield Pagma from 2003–2005. Ronni Decl., ¶ 2–3. Attached to Ronni Leo's Declaration, are the Schedule K-1s of Fairfield Pagma from tax year 2005. The Schedule K-1s are offered to show that Seymour and Marjorie each withdrew their capital investments in Fairfield Pagma and ceased to be general partners. Ronni Decl., ¶ 7, ECF No. 115. The Schedule K-1s attached to Ronni Leo's Declaration were never disclosed to the Trustee. Trustee's Reply at 13, ECF No. 116.

At oral argument, the Defendants stated that the Trustee's own initial disclosures identified Ronni Leo. Thus, the Defendants argue that there is no unfair surprise to the Trustee as he was already aware of Ronni Leo. The Court has reviewed the Trustee's initial disclosures and Ronni is listed as potential witness with discoverable information. As Ronni Leo was a witness known to the Trustee, the Court believes that the Defendants' failure to disclose him is harmless and preclusion inappropriate. For purposes of summary judgment, the Court has also considered the Schedule K-1s attached to Ronni Leo's Declaration.

Bonnie Kansler[8]

Bonnie Kansler is a named defendant in this case as the executor of her mother Marjorie's estate. Bonnie Decl. ¶ 1, ECF No. 113. Bonnie Kansler is a certified public accountant who prepared the tax returns of Fairfield Pagma from tax years 2007 to 2008. *Id.* at ¶ 2. Attached to Bonnie Kansler's Declaration are Fairfield Pagma's tax returns from 2007 to 2008 and Schedule K-1s for Seyfair and Fairfox from 2007 to 2008. Bonnie Decl., Ex. A, ECF No 113. The Court agrees with the Trustee that Fairfield Pagma's tax returns do not show that Seymour and Marjorie ceased to be general partners of Fairfield Pagma. The Schedule K-1s are also not helpful. They only show that Seyfair and Fairfox were general partners of Fairfield Pagma during the two-year transfer period. Trustee's Reply at 14, ECF No. 116. They do not show that Seymour and Marjorie ceased being general partners.

In support of his Motion, the Trustee provides the BLMIS partnership account agreement ("Partnership Agreement") with Fairfield Pagma. Cremona Decl., Ex. 16, ECF No 97. The Partnership Agreement lists Seymour and Marjorie as the general partners of Fairfield Pagma. *Id.* By signing the agreement, each general partner "confirm[ed] that such person has unlimited

---

[8] For purposes of this motion, the Court has considered all documents provided by Bonnie Kansler.

liability for the obligations of the Partnership and each and every General Partner shall have authority on behalf of the Partnership to establish and maintain one or more accounts with Bernard L. Madoff Investment Securities." *Id.* The Partnership Agreement states that it will remain in effect until BLMIS receives written notice. *Id.*

None of the parties have provided the Court with letters sent to BLMIS reflecting a change in the general partners, and the evidence shows otherwise. The Trustee has provided a letter from Seymour that states the following:

> May 27, 2008
> Bernard L. Madoff Investment Securities
> 885 Third Avenue
> New York, NY, 10022
> RE: A/C 1-AZ9943-0
> Dear Sirs:
>
> We would like to withdraw the sum of Fifty Thousand Dollars ($50,000).
>
> Sincerely,
> Signed, Seymour Kleinman

Collura Decl., Ex. 8, ECF No. 98. Thus, it appears that Seymour continued to hold himself out as a general partner of Fairfield Pagma well into 2008. The letter does not detail that Seymour was acting on behalf of Seyfair or Fairfox.

    i.    The New Evidence Does Not Create a Genuine Issue of Material Fact.

Even if this Court were to accept Adam's declaration and accompanying documents, they do not create a genuine issue of material fact. The articles of organization of Seyfair and Fairfox provided by Adam do not show that Marjorie and Seymour ceased being general partners of Fairfield Pagma. The same holds true for the Schedule K-1s of Fairfield Pagma provided by Ronni Leo. Only a written notice to other partners shows an effective withdrawal. *See* N.Y. P'ship Law § 121–602 ("A general partner may withdraw from a limited partnership at any time

by giving written notice to the other partners."). Defendants have not provided the written notice required under New York Partnership law. Rather, the Court has been presented with previously undisclosed documents purporting to show Marjorie and Seymour's withdrawal as general partners from Fairfield Pagma. As the Trustee noted in his reply, the undated and unsigned LCC agreements of Seyfair and Fairfox do not show the structure of the Fairfield Pagma partnership. These unsigned and undated documents do no more than raise "some metaphysical doubt" as to whether Seymour and Marjorie were general partners during the relevant time. *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (explaining that the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The lack of a written notice detailing Seymour and Marjorie's withdrawal from the limited partnership dooms their case.

      ii.     The Estate of Marjorie is Not a Proper Party

The Court, *sua sponte*, must address an important issue. The Estate of Marjorie was improperly substituted as a defendant in this case. Under Rule 17(b)(3) of the Federal Rules of Civil Procedure, the law of the state where the court is located governs whether the Estate of Marjorie can be sued. Under New York law, "[a]n estate is not a legal entity and any action for or against the estate must be by or against the executor or administrator in his or her representative capacity." *Wilmington Tr., Nat'l Ass'n v. Estate of McClendon*, 287 F. Supp. 3d 353, 373 (S.D.N.Y. 2018) (dismissing all claims against the estate). The Court dismisses the Estate of Marjorie as a defendant. Bonnie, as the executor of the Estate of Marjorie, is the proper defendant.

      iii.    Seymour Kleinman Will Not be Dismissed at This Time

The Defendants argue that the Trustee's motion for summary judgment should be denied as to Seymour, who allegedly died in 2015. The Defendants state that they notified the Trustee and that the Trustee did not amend the complaint within ninety days of this notice. The Trustee counters that the Defendants failed to formally notify him of Seymour's death by filing a suggestion of death on the docket and serving it on him.

Rule 25(a)(1) of the Federal Rules of Civil procedure provides:

> If a party dies . . . the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Defendants have not filed a formal suggestion of death on the record, and the ninety-day window has not been triggered. *Picard v. Miller* (*In re BLMIS*), 634 B.R. 39, 48–49 (Bankr. S.D.N.Y. 2021) (requiring a formal suggestion of death upon the record to trigger the 90-day substitution period). The Court declines to dismiss Seymour at this time.

iv.     Prejudgment Interest is Warranted.

The Trustee has requested prejudgment interest from December 11, 2008 through the date of the entry of judgment at the rate of 4%. This Court has considered this issue on multiple occasions. *See, e.g.*, *Picard v. BAM L.P.* (*In re BLMIS*), 624 B.R. 55, 62–66 (Bankr. S.D.N.Y. 2020).

To determine whether prejudgment interest should be awarded, the Court must consider "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Wickham Contracting Co. v. Local Union No. 3, Int'l Brotherhood of Elec. Workers,*

*AFL-CIO*, 955 F.2d 831, 834 (2d Cir. 1992). The purpose of prejudgment interest is to make the Plaintiff whole rather than to punish Defendants or to provide Plaintiff with a windfall. *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 139 (2d Cir. 2000) (citations and quotations omitted). "Courts in the Second Circuit and in this district have recognized that the award of prejudgment interest is discretionary, and absent a sound reason to deny prejudgment interest, such interest should be awarded." *McHale v. Boulder Capital LLC* (*In re 1031 Tax Grp., LLC*), 439 B.R. 84, 87 (Bankr. S.D.N.Y. 2010) (citations omitted). "The court must, however, explain and articulate its reasons for any decision regarding prejudgment interest." *Henry v. Champlain Enter., Inc.*, 445 F.3d 610, 623 (2d Cir. 2006).

Prejudgment interest is "normally" awarded in avoided transfer cases "to compensate for the value over time of the amount recovered." *Geltzer v. Artists Mktg. Corp.* (*In re Cassandra Grp.*), 338 B.R. 583, 599 (S.D.N.Y. 2006) ("To fully and fairly compensate Cassandra's creditors for their loss—not only of $300,000 that was fraudulently conveyed to the Defendants, but of the use of that money since the date of the demand—the Trustee should be permitted to recover prejudgment interest."); *see also Messer v. McGee* (*In re FKF 3, LLC*), 2018 WL 5292131, at *13 (S.D.N.Y. Oct. 24, 2018) (awarding prejudgment interest to compensate for "loss of interest, the diminished value of the damages award due to the passage of time, and Plaintiff's lost opportunity to make use of the lost funds").

Prejudgment interest is warranted in this case. The Trustee is charged with collecting fictious profits from net winners so that net losers in BLMIS's Ponzi scheme can be adequately compensated for their losses. He has spent approximately ten years prosecuting this case and cannot be made whole without an award of prejudgment interest. Prejudgment interest is awarded at 4% from the SIPA filing date.

**Conclusion**

For the foregoing reasons, the Estate of Marjorie is dismissed as a defendant, and summary judgment is granted in favor of the Trustee as to Fairfield Pagma, Seyfair, Fairfox, Bonnie Joyce Kansler, as executor of Estate of Marjorie Kleinman, and Seymour. The Trustee shall submit proposed orders within fourteen days of the issuance of this decision, directly to chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



**Dated: April 13, 2022**
**Poughkeepsie, New York**

/s/ Cecelia G. Morris
_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**

Page **17** of **17**