# EXHIBIT 1

29276762.1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 08-99000-cgm

4   Adv. Case No. 08-01789-cgm

5   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6   In the Matter of:

7

8   BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,

9

10          Debtor.

11  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12  Securities Investor Protection Corporation,

13              Plaintiff,

14          v.

15  Bernard L. Madoff Investment Securities, LLC, et al.,

16              Defendants.

17  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

18  Adv. Case No. 10-03622-cgm

19  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

20  Fairfield Sentry Limited (In Liquidation), et al.,

21              Plaintiffs,

22          v.

23  Citibank NA London, et al.,

24              Defendants.

25  - - - - - - - - - - - - - - - - - - - - - - - - - - - x



Page 2

1   Adv. Case No. 10-04468-cgm

2   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

3   Irving H. Picard, Trustee for the Liquidation of Bernard L.

4   Madoff Investment Securities, LLC,

5                    Plaintiff,

6            v.

7   Ken-Wen Family Limited Partnership, et al.,

8                    Defendants.

9   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10   Adv. Case No. 10-04468-cgm

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12   Irving H. Picard, Trustee for the Liquidation of Bernard L.

13   Madoff Investment Securities, LLC,

14                    Plaintiff,

15            v.

16   Fairfield Pagma Associates, LP, a

17   New York limited,

18                    Defendant.

19   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

20                    United States Bankruptcy Court

21                    One Bowling Green

22                    New York, NY  10004

23

24                    February 16, 2022

25                    10:00 AM

**Page 3**

1    B E F O R E :

2    HON CHIEF JUDGE CECELIA G. MORRIS

3    U.S. BANKRUPTCY JUDGE

4

5    ECRO:   UNKNOWN

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   HEARING re 10-05169-cgm Doc# 94 Motion for Summary Judgment

2   /Notice of Trustees Motion for Summary Judgment filed by

3   David J. Sheehan on behalf of Irving H. Picard, Trustee for

4   the Liquidation of Bernard L. Madoff Investment Securities

5   LLC, and Bernard L. Madoff with hearing to be held on

6   12/15/2021 at 10:00 AM at Videoconference (ZoomGov) (CGM).

7

8   HEARING re 10-05169-cgm Doc# 120 Notice of Adjournment of

9   Hearing RE: Memorandum of Law in Opposition to Motion for

10  Summary Judgement(related document(s)94) filed by Barry R.

11  Lax on behalf of Bonnie Joyce Kansler; hearing held and

12  adjourned to 2/16/2022 at 10:00 AM at Videoconference

13  (ZoomGov) (CGM).

14

15  HEARING re 10-05169-cgm Doc# 121 Notice of Adjournment of

16  Hearing RE: Opposition Counterstatement of Undisputed Fact

17  (related document(s)94)filed by Barry R. Lax on behalf of

18  Bonnie Joyce Kansler; hearing held and adjourned to

19  2/16/2022 at 10:00 AM at Videoconference (ZoomGov) (CGM).

20

21  HEARING re 10-05169-cgm Doc# 122 Notice of Adjournment of

22  Hearing RE: 112 Opposition Declaration of Adam Kansler

23  (related document(s)94) filed by Barry R. Lax on behalf of

24  Bonnie Joyce Kansler; hearing held and adjourned to

25  2/16/2022 at 10:00 AM at Videoconference (ZoomGov) (CGM).

Page 5

1    HEARING re 10-05169-cgm Doc# 123 Notice of Adjournment of

2    Hearing RE: Opposition Declaration of Bonne Joyce Kansler

3    (related document(s)94)filed by Barry R. Lax on behalf of

4    Bonnie Joyce Kansler; hearing held and adjourned to

5    2/16/2022 at 10:00 AM at Videoconference (ZoomGov) (CGM).

6

7    HEARING re 10-05169-cgm Doc# 124 Notice of Adjournment of

8    Hearing RE: Opposition Declaration of Brian Neville (related

9    document(s)94) filed by Barry R. Lax on behalf of Bonnie

10   Joyce Kansler; hearing held and adjourned to 2/16/2022 at

11   10:00 AM at Videoconference (ZoomGov) (CGM).

12

13   HEARING re 10-05169-cgm Doc# 126 Notice of Adjournment of

14   Hearing RE: Memorandum of Law/Trustees Reply Memorandum of

15   Law in FurtherSupport of Motion for Summary Judgment filed

16   by Nicholas Cremona on behalf of Irving H. Picard, Trustee

17   for the Liquidation of Bernard L. Madoff Investment

18   Securities LLC, and Bernard L. Madoff; hearing held and

19   adjourned to 2/16/2022 at 10:00 AM at Videoconference

20   (ZoomGov) (CGM).

21

22

23

24

25

Page 6

1    HEARING re 10-05169-cgm Doc# 117 Statement/Trustee's

2    Responses and Objections to Defendants' Statement of

3    Additional Material Facts (related document(s)116) filed by

4    Nicholas Cremona on behalf of Irving H. Picard, Trustee for

5    the Liquidation of Bernard L. Madoff Investment Securities

6    LLC, and Bernard L. Madoff

7

8    HEARING re 10-04468-cgm Doc# 194 Notice Of An Adjourned

9    Hearing Re: Doc# 185 Notice of Hearing Regardng Notice of

10    (I) Opposition to Defendant Kenneth W. Browns Motion for

11    Summary Judgment, (II) Cross Motion for Summary Judgment as

12    to Defendant Kenneth W. Brown, and (III) Motion for Summary

13    Judgment as to Defendant Ken-Wen Family Limited Partnership

14    (related document(s)178) filed by Matthew B. Lunn on behalf

15    of Irving H. Picard, Trustee for the Liquidation of Bernard

16    L. Madoff Investment Securities LLC, and Bernard L. Madoff

17    with hearing to be held on 02/16/2022 at 09:00 AM at

18    Videoconference (ZoomGov) (CGM)

19

20    HEARING re 10-04468-cgm Doc. #178 Motion for Summary

21    Judgment // Notice of (I) Opposition to Defendant Kenneth W.

22    Browns Motion for Summary Judgment, (II) Cross Motion for

23    Summary Judgment as to Defendant Kenneth W. Brown, and (III)

24    Motion for Summary Judgment as to Defendant Ken-Wen Family

25    Limited Partnership (related document(s)174) filed by

1    Matthew B. Lunn on behalf of Irving H. Picard, Trustee for

2    the Liquidation of Bernard L. Madoff Investment Securities

3    LLC, and Bernard L. Madoff.  Doc. #178 Motion for Summary

4    Judgment // Notice of (I) Opposition to Defendant Kenneth W.

5    Brown's Motion for Summary Judgment, (II) Cross Motion for

6    Summary Judgment as to Defendant Kenneth W. Brown, and (III)

7    Motion for Summary Judgment as to Defendant Ken-Wen Family

8    Limited Partnership (related document(s)174) filed by

9    Matthew B. Lunn on behalf of Irving H. Picard, Trustee for

10   the Liquidation of Bernard L. Madoff Investment Securities

11   LLC, and Bernard L. Madoff. (Lunn, Matthew)

12

13   HEARING re 10-04468-cgm Doc# 195 Notice of An Adjourned

14   Hearing Re: Doc# 178 Motion for Summary Judgment // Notice

15   of (I) Opposition to Defendant Kenneth W. Browns Motion for

16   Summary Judgment, (II) Cross Motion for Summary Judgment as

17   to Defendant Kenneth W. Brown, and (III) Motion for Summary

18   Judgment as to Defendant Ken-Wen Family Limited Partnership

19   (related document(s)174) filed by Matthew B. Lunn on behalf

20   of Irving H. Picard, Trustee for the Liquidation of Bernard

21   L. Madoff Investment Securities LLC, and Bernard L. Madoff.

22   (related document(s)178) with hearing to be held on

23   2/16/2022 at 09:00 AM at Videoconference (ZoomGov) (CGM).

24

25

Page 8

 1    HEARING re 10-04468-cgm Doc# 197 Notice of An Adjourned

 2    Hearing Re: Doc# 174 Motion for Summary Judgment filed by

 3    Mark S. Roher on behalf of Kenneth W. Brown, in his capacity

 4    as a General Partner of the Ken Wen Family Limited

 5    Partnership. with hearing to be held on 02/16/2022 at 09:00

 6    AM at(related document(s)174)at Videoconference (ZoomGov)

 7    (CGM) .

 8

 9    HEARING re 10-04468-cgm Doc# 203 Reply to Motion and

10    Response in Opposition to Cross Motion for Summary Judgment

11    (related document(s)178) filed by Mark S. Roher on behalf of

12    Kenneth W. Brown, in his capacity as a General Partner of

13    the Ken Wen Family Limited Partnership.

14

15    HEARING re 10-04468-cgm Doc# 204 Reply to Motion Notice of

16    Filing Exhibits 7 through 11 to Reply [DE 203] filed by Mark

17    S. Roher on behalf of Kenneth W. Brown, in his capacity as a

18    General Partner of the Ken Wen Family Limited Partnership.

19

20    HEARING re 10-04468-cgm Doc# 205 Reply Memorandum of Law in

21    Further Support of Cross-Motion for Summary Judgment as to

22    Defendant Kenneth W. Brown (related document(s)174, 178)

23    filed by Matthew B. Lunn on behalf of Irving H. Picard,

24    Trustee for the Liquidation of Bernard L. Madoff Investment

25    Securities LLC, and Bernard L. Madoff.

Page 9

1   A P P E A R A N C E S :

2

3   BAKER HOSTETLER, LLP

4        Attorneys for the Irving H. Picard, Trustee

5        45 Rockefeller Plaza

6        New York, NY 10111

7

8   BY:  NICHOLAS CREMONA (TELEPHONICALLY)

9        MAXIMILLIAN S. SHIFRIN (TELEPHONICALLY)

10

11  LAX & NEVILLE, LLP

12       Attorneys for Individual Defendants Marjorie and

13       Seymour Kleinman and Bonny Kansler

14       350 5th Avenue, #4640

15       New York, NY 10118

16

17  BY:  BARRY LAX (TELEPHONICALLY)

18

19  THE LAW OFFICES OF MARK S. ROHER

20       Attorneys for Kenneth W. Brown

21       1806 N. Flamingo Road, Suite 300

22       Pembroke Pines, FL 33028

23

24  BY:  MARK S. ROHER (TELEPHONICALLY)

25

Page 10

1    YOUNG, CONAWAY, STARGATT, TAYLOR, LLP

2         Attorneys for Irving H. Picard, Trustee

3         Rockefeller Center

4         1270 Avenue of the Americas, Suite 2210

5         New York, NY 10020

6

7    BY:  CHRISTOPHER C. LAMBE (TELEPHONICALLY)

8         MICHAEL S. NEIBURG (TELEPHONICALLY)

9

10   ALSO PRESENT TELEPHONICALLY:

11   KENNETH W. BROWN

12   JEFF E. BUTLER

13   JEFFREY C. FOURMAUX

14   DIELAI YANG

15   CARMINE BOCCUZZI

16   MARC J. GOTTRIDGE

17   KEVIN C. KELLY

18   MARCELLA OLIVER

19   UDAY GORREPATI

20   NATHAN RICHARDSON

21   JUSTIN DUDA

22   ROXANNE M. EASTES

23   JD COLAVECCHIO

24   JOHN CRAIG

25   JOSEPH M. KAY

1    BIANCA LIN

2    RACHEL POLAN

3    DAVID SHAIMAN

4    ELIZABETH VICENS

5    JOHN ZULACK

6    LAUREN PINCUS

7    ROBERT J. LACK

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2            THE COURT:  Good morning, everyone.  Let me move

 3    some things around right here.  This is Adversary Number 10-

 4    05169.  I'm going to call them separately.  And this is

 5    Irving Picard, Trustee for liquidation of BMLIS v. Fairfield

 6    Pagma Associates, Fairfox LLC, Seyfair LLC, Marjorie

 7    Kleinman, estate of Marjorie Kleinman, Bonnie Kansler,

 8    estate of Marjorie Kleinman, and Seymour Kleinman.  And it

 9    is in the matter of 0899000.  State your name and

10    affiliation.

11            MR. CREMONA:  Good morning, Your Honor.  Nicholas

12    Cremona of Baker and Hostetler, appearing on behalf of

13    Irving Picard as  Trustee.

14            MR. SHIFRIN:  Good morning, Your Honor.  Max

15    Shifrin of Baker and Hostetler as well, appearing on behalf

16    of the Trustee.

17            MR. LAX:  Good morning, Your Honor.  This is Barry

18    Lax from Lax from Lax & Neville, appearing on behalf of the

19    individual defendants, Marjorie and Seymour Kleinman and

20    Bonnie Kansler as the executor of Marjorie Kleinman's

21    estate.

22            THE COURT:  Very good.  Very good.  It is a motion

23    for summary judgment and a response.

24            Excuse me.  Let me ask you, Mr. Lax, so you also

25    represent the LLC?
```

1          MR. LAX:  Well, the general partners, Your Honor.

2     There is the Fairfield Pagma.  They dissolved over a decade

3     ago.  And there's the LLC general partners.  For the

4     purposes of this motion, we don't contest their liability

5     and we don't represent them per se, even though we did

6     appear for them in the initial action, we've never formally

7     withdrawn.

8          THE COURT:  Let me -- so you're saying to me that

9     judgement can be entered then against Fairfield Pagma and

10    Seyfair and Fairfox LLCs?

11         MR. LAX:  Yes, Your Honor.

12         THE COURT:  Very good.  Submit an order on those.

13    Okay.

14         MR. LAX:  Your Honor, you're saying the Plaintiffs

15    to submit an order on that.  Is that correct?

16         THE COURT:  Correct.

17         MR. LAX:  Okay, thank you.

18         THE COURT:  Now then, so now then we have the

19    other individuals in this case.  Who is going to be arguing

20    for the trustee?

21         MR. SHIFRIN:  Good morning again, Your Honor.  Max

22    Shifrin on behalf of the Trustee.

23         THE COURT:  So we are focusing on the general

24    partners now?

25         MR. SHIFRIN:  That's correct.  Although we do

Page 14

1    dispute some of the things Mr. Lax just said, we agree that

2    the issue here is whether the judgement that the Court has

3    already directed be entered should extend to the two general

4    partners.

5           THE COURT:  I understand that.  But right now,

6    that has been conceded, that's done, and we have that.

7    Okay.  So we're basically looking at, just so I'm clear,

8    Marjorie Kleinman, the Estate of Marjorie Kleinman, Bonnie

9    Kansler, Estate of Marjorie Kleinman, and Seymour Kleinman.

10          MR. SHIFRIN:  Correct.

11          THE COURT:  Okay.  Very good.  And this is your

12   summary judgment motion.

13          MR. SHIFRIN:  Correct.

14          THE COURT:  Okay.  Anything you wish to add to

15   your papers?

16          MR. SHIFRIN:  Yes, Your Honor.  What I'd like to

17   do here is amplify some of the things we actually say in our

18   reply brief if that's okay with The Court.  And we'll

19   address some of the things Mr. Lax just said.

20          The issue indeed is whether the judgement that

21   will be entered in favor of the initial transferee should

22   extend to the two individual general partners.  The

23   Defendants concede that these two individuals, Seymour and

24   Marjorie Kleinman, were in fact general partners of the

25   initial transferee when the account was opened.  However,

1   they contest liability here because they argue that those

2   two individual general partners ceased being general

3   partners at some point prior to the two-year period.  This

4   argument fails for multiple reasons.  But first and most

5   fundamentally, Your Honor, there are multiple discovery

6   improprieties here that preclude Defendants from asserting

7   this argument or offering evidence in support of it.

8         Defendants did not respond to any of the Trustee's

9   discovery requests.  They didn't respond to the document

10  demands, they didn't respond to the interrogatories, they

11  didn't respond to the request for admission.  Their failure

12  to respond to the RFAs is alone dispositive here because the

13  Trustee requested the partnership to admit that Seymour and

14  Marjorie were its general partners during the two-year

15  period and those requests were deemed admitted to the

16  Defendant's failure to serve any written responses.

17        Now, Defendants devote virtually their entire

18  brief in opposition disputing that these admissions are

19  deemed admitted and try to frame the Trustee's motion as

20  somehow hinging on these admissions alone.  But the reality

21  is that Defendants would fare no better without these

22  admissions.  And that's because the BLMIS books and records,

23  which the Trustee attached to his motion papers, established

24  that Seymour and Marjorie were general partners of Fairfield

25  Pagma.  And if Defendants assert as a defense to summary

1    judgment that Marjorie and Seymour ceased being general

2    partners at some point during the life of the account, it is

3    Defendant's burden on summary judgment to point to record

4    evidence, admissible evidence that demonstrates there is no

5    genuine factual dispute for trial on this point.

6            But here Defendants rely on a series of documents

7    of witnesses that they never disclosed in their initial

8    disclosures and they never produced in response to a

9    standing document demand under Rule 34.  So Defendants are

10   precluded from using these documents to oppose the Trustee's

11   motion under Rule 37(c) which provides if a party fails to

12   provide information or identify a witness as required by

13   Rule 26(a) or (e), the party is not allowed to use that

14   information or witness to supply evidence on a motion at a

15   hearing or at a trial unless that failure was substantially

16   justified or harmless.

17           Defendants, Your Honor, have not even attempted to

18   make any showing that their failure to disclose and produce

19   this evidence was substantially justified or harmless.  In

20   fact, the record is clear that Defendants applied a

21   deliberate strategy of ignoring their obligations on this

22   case, including responding to the Trustee's discovery

23   requests.  When the Trustee reached out to opposing counsel

24   on the discovery that I just described, opposing counsel

25   admitted that his client screamed at him to stop doing work

1    on this case when he discussed the discovery with her.  That

2    is, quite frankly, Your Honor, sanctionable conduct.  And

3    while we don't seek sanctions here, Defendants at the very

4    least should be precluded from using this newly-disclosed

5    evidence for the first time on summary judgment.  This is a

6    mandatory consequence under Rule 37.

7         So just to be precise, Your Honor, on what exactly

8    should be precluded here, Defendants cannot rely on the

9    declarations of Adam Kansler and Ronnie Leo, who they did

10   not disclose, or the various exhibits that they didn't

11   disclose or produce in response to the Trustee's discovery

12   requests.  That includes the articles of organization for

13   Seyfair and Fairfox, the LLC agreements for Seyfair and

14   Fairfox, and the Schedule K-1s for Seyfair, Fairfox, Seymour

15   Kleinman, and Marjorie Kleinman.

16        All of that said, Your Honor, even if the Court

17   were to for whatever reason ignore these discovery failures

18   and consider this undisclosed and unproduced evidence on

19   this motion, the documents simply do not show what

20   Defendants say they show.

21        First, the articles of organization for Seyfair

22   and Fairfox are --

23        THE COURT:  Let me just interrupt you, because I

24   have one question while you're talking about the disclosure.

25        MR. SHIFRIN:  Sure, Your Honor.

Page 18

1          THE COURT:  Were the documents attached to Bonnie

2     Kansler's declaration ever provided to you?

3          MR. SHIFRIN:  No.

4          THE COURT:  Okay.

5          MR. SHIFRIN:  Well, whatever was discussed and

6     communicated, I'll be careful here, in the context of

7     mandatory mediation after discovery was closed, a separate

8     issue.  But in discovery five years ago, none of this stuff

9     was disclosed, none of this stuff was produced,

10    notwithstanding standing discovery requests requesting these

11    materials.

12         The only thing that was disclosed in the

13    Defendant's written initial disclosures were Fairfield

14    Pagma's tax returns.  So if the Defendants want to rely on

15    that, I don't think they are precluded from relying on it by

16    virtue of them not failing to disclose it, but by the fact

17    that they failed to produce it once we requested it under

18    Rule 34 document demand.  There are consequences for that,

19    too.

20         But in any event, Your Honor, what I was about to

21    say was that these documents don't show what Defendants say

22    they show.  The articles of organization for Seyfair and

23    Fairfox are irrelevant to the issue of whether Seymour and

24    Marjorie were general partners of Fairfield Pagma and

25    nothing in those documents shows that they ceased being

1  general partners.  Fairfield Pagma's tax returns similarly

2  do not identify its general partners and are also irrelevant

3  for the same reason.  The Seyfair and Fairfox K-1s

4  demonstrate that the LLCs were general partners of Fairfield

5  Pagma, but they do not demonstrate that Seymour and Marjorie

6  were not its general partners.

7         THE COURT:  Okay.  You have a Shifrin declaration.

8         MR. SHIFRIN:  That's correct, Your Honor.

9         THE COURT:  In Exhibit 2.  It's an alleged list of

10  Fairfield Pagma Limited Partners.  And Seymour and

11  Marjorie's names are crossed out, and there's a list of at

12  least 40 other partners.  How do you know that this list

13  references the limited partners?  It only titles partners'

14  names.

15         MR. SHIFRIN:  Well, our interpretation of this

16  document is at the top -- doesn't it say that these are

17  limited partners, Your Honor?  Isn't it a list of --

18         THE COURT:  I thought the title only states

19  partners' names.

20         MR. SHIFRIN:  Okay.  Well, putting aside honestly,

21  Your Honor, that document, we can debate what it says and

22  what it doesn't say.  The core document that we attached to

23  our moving papers were the BLMIS records, the account

24  opening documents.  And those documents were clear that when

25  the account was opened, Marjorie and Seymore were general

1   partners.  So we have met our prima facie burden of showing

2   that Seymour and Marjorie were general partners of Fairfield

3   Pagma when the account was opened.  And again, the

4   Defendants do not even dispute this.  They concede that they

5   were the general partners.  They're simply making an

6   argument that they were somehow substituted later on in the

7   life of the account.  But that is their burden to show.

8   We've discharged our prima facie burden by showing that the

9   -- that Marjorie and Seymour were general partners when the

10   account was opened and it's their burden to provide some

11   evidence creating a genuine issue of fact as to whether they

12   were general partners during the two-year period.  And

13   because they haven't disclosed any of the -- I should say

14   the vast majority of the documents that they're attempting

15   to rely on and the witnesses that they are attempting to

16   rely on, this evidence is precluded.  And thus, they can't

17   carry that burden and judgement should be entered in favor

18   of the Trustee against both of the individual general

19   partners.

20         The other document, Your Honor, I should say that

21   they rely on are unsigned and undated LLC agreements for

22   Seyfair and Fairfox, excuse me, which by virtue of them

23   being unsigned is itself a basis to refuse their

24   consideration on this motion pursuant to the caselaw that we

25   cite in our brief.  And those documents, similarly, merely

Page 21

1    reference some other transaction that took place in the

2    whereas clauses.  But the LLC agreements themselves do not

3    demonstrate that this transaction took place or otherwise

4    provide insight into the partnership structure itself.

5            So Defendants, Your Honor, failed to attach the

6    one document that would conclusively establish the general

7    partners of Fairfield Pagma, and that's the partnership

8    agreement.  They also failed to attach a written notice of

9    withdrawal for Seymour and Marjorie which would be necessary

10   to effectuate a partnership withdrawal pursuant to New York

11   Partnership Law, Section 121-602, which says that a general

12   partner may withdraw from a limited partnership at any time

13   by giving written notice to the other partners.  No such

14   written notice has been produced.  We haven't seen it, and

15   therefore there is no evidence at this point before this

16   Court, even if a Court were to consider the evidence that

17   should be precluded, there is no evidence here creating a

18   genuine issue of fact for trial on this issue.

19           I will conclude very briefly, Your Honor, by

20   discussing prejudgment interests.

21           As this Court has concluded in the Epstein summary

22   judgment decision, absent the sound discretion to deny

23   prejudgment interests, such interest should be awarded.

24   Defendants have done nothing to distinguish themselves from

25   the defendants in other good faith cases who were ordered to

1    pay prejudgment interest.  And in fact, their discovery

2    improprieties as well as their attempt on this motion I

3    think to ignore the preclusive consequences of those

4    improprieties further support prejudgment interest at a rate

5    consistent with the law of this liquidation.  Thank you,

6    Your Honor.

7            THE COURT:  Very good.  Let me ask you a couple of

8    questions.  I'm sorry, I've lost your name for a second.

9    Let me get it back.

10           MR. SHIFRIN:  Max Shifrin, Your Honor.

11           THE COURT:  Yes.  Mr. Lax, you've already conceded

12   about the LLCs.  I have a question about why wasn't Adam

13   Kansler disclosed to the Trustee and whey didn't you provide

14   his name in the documents that you attached to the

15   declaration to the Trustee sooner?  I mean, we have the

16   Rules of Civil Procedure.  Why were they not followed?

17           MR. LAX:  Your Honor, if you look -- and let's go

18   back a little bit who we represented.  We represented

19   Fairfield Pagma that at the time in 2010, they became a

20   defunct entity.  We represented the general partners, who

21   were Seyfair and Fairfax.  And then, Your Honor, in 2015 and

22   2014, both the managing members of the general partners

23   died.  It was a very unusual fact set and fact

24   circumstances.  But who we did disclose in the 26(a)

25   disclosure was Bonnie Kansler, Your Honor.

Page 23

1          So in the reply, there is no response to Ms.

2     Kansler's affidavit.  She put in affidavit in, she put in

3     the tax returns of 2007 and 2008.  And remember, Your Honor,

4     it is the Trustee's burden to prove that there are no

5     material facts in dispute.

6          There is one fact here, Your Honor.  And it is in

7     dispute as much as a dispute can be.  They've established no

8     evidence, Your Honor, no evidence whatsoever that Marjorie

9     and Seymour were the general partners in 2007 and 2008.

10    That's when the distributions occurred, the transfers.

11         So a document that proves that Marjorie and

12    Seymour were the general partners in 1993 does not mean that

13    it proves that they were partners in 2007 and in 2008.

14         And, Your Honor, you asked Plaintiff's counsel a

15    very good question; do they have these documents.  And you

16    heard Mr. Shifrin's response.  It was, well, let me be

17    clear.  We might have them, but we got them in the purposes

18    of the mediation.  That's irrelevant, Your Honor.  They have

19    the documents in their possession.  And Mr. Shifrin just

20    spent time talking about the partnership agreement.  He's

21    got that document, too.  But that partnership agreement

22    establishes that both Seyfair and Fairfax were the general

23    partners.  That's why they didn't put it in their reply.

24    They had possession of all of these documents, Your Honor.

25    They had possession of Ronnie Leo's affidavit back in 2016

1   which disclosed most of these facts, disclosed the operating

2   agreement --

3              THE COURT:  Stop for a minute.  Under the Rules of

4   Civil Procedure, both Kansler and Leo should have been

5   disclosed almost immediately after the adversary proceeding

6   was filed.  Is that not so?

7              MR. LAX:  Ms. Kansler was disclosed.

8              THE COURT:  I heard you twice.  I heard you three

9   times.  I'm talking about Adam Kansler and Ronnie Leo.

10              MR. LAX:  Ronnie Leo was disclosed in the

11   Trustee's 26(a) disclosure.

12              THE COURT:  When was that?

13              MR. LAX:  The Trustee's 26(a) disclosure was in

14   December of 2015.  So obviously at that point in time, they

15   knew that Ronnie Leo had facts that were relevant to either

16   the defenses or claims asserted.  They didn't tell you that

17   either, Your Honor.  They talked about --

18              THE COURT:  Well, this is a 2010 case.  So it

19   should have been disclosed at least by 2011.  And you're

20   saying it was disclosed in 2015.

21              MR. LAX:  Yes, Your Honor.  That's when both

22   parties exchanged their initial disclosures because there

23   was a motion to dismiss that was pending that took a

24   significant time period.  So the answers for the case were

25   not filed until 2015.  So obviously there's no delinquency

Page 25

1    on the Defendant's part by filing answers after the motions

2    to dismiss were -- part was denied, part was granted.  So

3    that's when the initial disclosures occurred, and that's

4    when the Plaintiff disclosed Ronnie Leo, we disclosed Bonnie

5    Kansler at that time.  But even at the time that the answer

6    was filed, Your Honor, Seymour and Marjorie both denied that

7    they were general partners in the answer to the complaint.

8    So that is their position.

9           And then, Your Honor, both of them -- around that

10   time, Ms. Kleinman had already passed away and Mr. Kleinman

11   had just I think -- was very sick, passed away I think in

12   January of 2016.  Actually, January of 2015.

13          THE COURT:  I'm a bit confused.  I'm a big

14   confused.

15          MR. LAX:  Yeah.

16          THE COURT:  And I'm going to turn back to

17   Trustee's attorney for just a moment.

18          MR. LAX:  And I'm sorry, Your Honor, just

19   correcting a fact.  Seymour died in September of 2015.  I

20   apologize.

21          THE COURT:  Were different documents disclosed --

22   and we're only talking about documents, not what was

23   disclosed -- in discovery and in the mediation?

24          MR. SHIFRIN:  You're asking me, Your Honor,

25   correct?

1          THE COURT:  Yes, I am.

2          MR. SHIFRIN:  Your Honor, there were zero

3    documents produced in litigation.  We mediated this case

4    just this past year, three or four years after discovery

5    closed.

6          THE COURT:  Okay, wait a minute.  So during the

7    mediation, some of these documents were disclosed at that

8    time.  I'm not asking the ins and outs, because that's

9    mediation.  But there were disclosures during the mediation.

10          MR. SHIFRIN:  Your Honor, there were some

11    documents.  And he said a partnership agreement.  That was

12    never disclosed.  That was never attached to their

13    opposition.  There were some documents provided to us of the

14    first time in connection with the mediation, in connection

15    with this argument that they were making for the first time.

16    And after fact discovery had been closed for years and

17    expert discovery had been closed for years.

18          THE COURT:  Okay.  I'm not asking you deadlines.

19    I'm just asking you --

20          MR. SHIFRIN:  Understood, Your Honor.  Understood.

21          THE COURT:  Okay.  All right.  Now then, Mr. Lax.

22          MR. LAX:  Yes.

23          THE COURT:  Continue with your rebuttal.

24          MR. LAX:  Thank you, Your Honor.  So what Mr.

25    Shifrin said maybe wasn't at Baker Hostetler in 2015 and

Page 27

1   2016.  But the reason why discovery did not continue as Your

2   Honor knows from the papers and from my partner's

3   affirmation -- declaration.  They state that discovery

4   requests were served, notices of admission were served.

5           And by the way, Your Honor, no document requests

6   were served on the Defendant, Seymour Kleinman.  Nothing.

7   No discovery vehicle whatsoever.  But that's besides the

8   point and I'll get back to that in a second.

9           But at that point in time, Mr. Cremona actually,

10  Trustee's lawyer, put a time out.  Said we're going to try

11  to settle the case.  And they're going to try to settle the

12  case with Mr. Kleinman's estate lawyer, because Seymour

13  Kleinman had passed away.  So they spent it looks like a

14  year-and-a-half trying to settle that case.  Through that

15  process, again, the Trustee received Ms. Leo's affidavit, an

16  affidavit from Ms. Leo attaching the 2005 tax returns,

17  attaching all of the documentation that was put in her

18  affidavit.  It's consistent with her affidavit.  So the

19  Trustee had all of those documents from the estate's

20  counsel.  They were trying to negotiate a deal.

21          It wasn't until they came back to us years later

22  and said let's go mediate the case.  So years later.  They

23  never served a motion to compel, they never did anything.

24  Because, Your Honor, they did not serve document requests on

25  Mr. Kleinman.  So we're not delinquent at all related to Mr.

1  Kleinman.  And why can't these affidavits be used to respond

2  to Mr. Kleinman's liability on this summary judgment motion?

3          But at the end of the day, Your Honor, all they're

4  trying to do is preclude the facts, which clearly establish

5  that Seymour and Marjorie were not the general partners at

6  the time.  They were not.  There's just no ands, ifs, and

7  buts about it.  They can't get out of Bonnie Kansler's

8  affidavit, they can't get out of the fact that they didn't

9  serve discovery requests on Seymour.  They can't get out of

10  the fact that the tax returns establish a fact in dispute.

11  They establish that Seymour and Marjorie were not the

12  general partners at the time of the distribution.

13          And Your Honor may be like, why are we doing this?

14  Why are we doing this?  Why isn't the Trustee happy with his

15  judgement against the three entities?  The reason, Your

16  Honor, is because the limited partners that actually

17  received the distributions are not defendants in the case.

18  They're not family members.  But what the Trustee is trying

19  to do is the Trustee is trying to extend this judgment to

20  the individuals so they can go back to the beneficiaries of

21  these estates six years later and try to claw back some of

22  that inheritance.  That's what this is about.  The Trustee

23  should take his judgement on liability against the three

24  entities, be entitled to chase those judgments down to the

25  people that actually received the fraudulent transfers in

Page 29

1    2007 and 2008.

2              Everything I just told you, Your Honor, is

3    undisputed.  None of the Defendants, none of the family

4    members received distributions in 2007 and 2008.  They're

5    simply trying to get the individuals liable as general

6    partners so that they can claw back from the estates that

7    were settled years ago.  That is the reason why they're

8    doing this.

9              And I envision, Your Honor, that if the motion is

10   denied, this case will probably be gone.  Because they've

11   got their judgement and they can go do what they need to do.

12             But, Your Honor, everything they are talking about

13   we can cure if the Court wants to get to the ultimate issue

14   of fact.  What the Trustee wants you to do is not look at

15   anything.  That's not the way courts work.  And I understand

16   there are discovery mechanisms.  But they never made a

17   motion to compel, Your Honor.  And we got an email that says

18   we'll give you a 15-day notice.  They never did that.  If

19   they would have moved to compel, if they would have brought

20   all this stuff up at some point earlier, we might have been

21   able to deal with it.

22             And you know what, Your Honor?  We still could.

23   We could open up discovery for the limited purpose of this

24   general partner issue.  And I'm sure the Plaintiff doesn't

25   want to do that because they'll discover the facts that

1    we've already put in the record, that during 2007 and 2008,

2    that the individual defendants, Seymour and Marjorie were

3    not the general partners.  I mean, to say that the operating

4    agreement and to say that the documents attached to Ronnie

5    Leo -- we can just focus on the Ronnie Leo declaration

6    because they knew Ronnie Leo had information relevant to the

7    case.  That establishes in 2005 the tax returns.  And she

8    testifies firsthand, she was the accountant that did the tax

9    returns, establishes that the interests -- that the general

10   partnership interests were exchanged.  Got a K-1.  They

11   withdrew all their interests from Fairfield Pagma, both

12   Seymour and Marjorie in 2005.  And then Seyfair and Fairfax

13   get interest, the same exact amount of interest in the

14   Fairfield Pagma entity.

15          So the 2005 tax returns, which are part of our 26-

16   day disclosures, established that Seymour and Marjorie were

17   not the general partners and Seyfair and Fairfax were.

18          THE COURT:  Okay.

19          MR. LAX:  Do you have any other questions, Your

20   Honor?  Otherwise, we'll rely on the papers.  But in

21   response to the reply, I think it's very clear that all the

22   Trustee is trying to do is exclude our evidence.  They don't

23   have the basis to exclude our evidence.  And if they want,

24   we can open up discovery for the very limited purpose of

25   determining factually who is the -- who were the general

1   partners during the relevant time period.

2           THE COURT:  Any quick rebuttal?  Any quick

3   rebuttal?

4           Listen, we follow the Rules of Civil Procedure.

5   Quick rebuttal.

6           MR. LAX:  Right.  I understand, Your Honor.  And I

7   appreciate that.

8           THE COURT:  Okay.

9           MR. LAX:  But the problem is that a notice to

10   admit -- their biggest argument is that somehow because

11   Fairfield Pagma --

12           THE COURT:  I've heard you.

13           MR. LAX:  What?

14           THE COURT:  I've heard you.

15           MR. LAX:  I didn't talk about this one point.

16           THE COURT:  Okay, let's hear it then.

17           MR. LAX:  Thank you, Your Honor.  In response to

18   Fairfield Pagma's notices to admit, the general partners --

19   excuse me, Seymour and Marjorie already denied in their

20   answer -- so if you look at our case that we provided to

21   Your Honor, it's very clear that you can't use notices of

22   admit to essentially get an admission of the ultimate fact

23   in dispute.  It's to limit what's going to happen at trial.

24   That's the reason for notices to admit.

25           And in the case that we provided, it's very clear

1   that the Plaintiff was served -- the Plaintiff in that case

2   served notices to admit.  The Defendants had denied

3   liability, and then the Defendants were a little late and

4   the Plaintiffs tried to show that because they were late,

5   they admitted to the ultimate liability in the case.  And

6   the Court said that's not fair, that's not right, you

7   shouldn't do it that way.  Because they've already denied it

8   in the answer.

9           And also, the notice to admit, Your Honor, were

10  only to Fairfield Pagma.  They were not to any other of the

11  defendants.

12          THE COURT:  Okay, very good.

13          MR. LAX:  That's all, Your Honor.  Thank you very

14  much.

15          THE COURT:  Yes, sir.

16          MR. SHIFRIN:  Opposing counsel just said they were

17  a little late in that case.  It is now five years since we

18  served those RFAS.  They still haven't been responded to.

19  So I think we're outside the a little late standard to the

20  extent that is a standard governing the Rules of Civil

21  Procedure.

22          Your Honor, there's so much wrong with what I just

23  heard.  It was a lot of smoke and mirrors.  I think our

24  position in our reply brief adequately addresses the

25  arguments you just heard.  But there's nothing that you just

1    heard about documents being disclosed in the written

2    disclosures.  The documents that are attached to all those

3    affidavits, even if you assume that Mr. Lax is correct about

4    Ronnie Leo -- and I don't know anything about this.  But

5    even if in some way, shape, or form Ronnie Leo was somehow

6    disclosed to us in 2015 of 2016 through unofficial channels,

7    the documents attached to those affidavits have never been

8    disclosed, so they are precluded.  And if the documents are

9    precluded, what's left is a self-serving affidavit that

10   doesn't rely on any evidence and that doesn't get them

11   anywhere.  The other thing that Mr. Lax said in the

12   beginning of his presentation is that it is somehow our

13   burden to show -- to anticipate their defense.  We -- our

14   burden is to show a prima facie case or prima facie

15   entitlement to judgment against the two general partners.

16         We showed that by showing that the defendants when

17   they opened BLMIS accounts, the -- were general partners of

18   Fairfield Pagma.  If they're going to argue that they are

19   not, they were not general partners during the two-year

20   period, it's their burden, not the Trustee's burden, on

21   summary judgment to rebut the Trustee's prima facie case and

22   demonstrate to the Court that there's a genuine issue for

23   trial.  They have not shown that.  The reason they have not

24   shown that is for two reasons.  One, they're relying on

25   documents they didn't disclose and they didn't produce in

1    response to standing document demands, and two, even if

2    those documents got in, the documents themselves do not say

3    what they say for the reasons I already said.

4              Mr. Lax is trying to puff up these documents and

5    make them sound like they're dispositive and clearly say

6    that these two individuals were general partners.  Nowhere

7    in those documents does it say that.  Nowhere.

8              THE COURT:  Okay.

9              MR. LAX:  And Your Honor --

10             MR. SHIFRIN:  And the last thing (indiscernible)

11   Your Honor -- excuse me, there's one other point, Your

12   Honor.  He -- Mr. Lax seems to be hiding behind this

13   position that he does not represent the initial transferee,

14   Fairfield Pagma, that it's defunct and he's only here

15   appearing on this motion on behalf of the general partners.

16   Your Honor, this is a bogus position.  They're counsel of

17   record.  They've filed opposition papers to the Trustee's

18   motion on behalf of all defendants.  In 2015, they answered

19   the complaint on behalf of all defendants.

20             They served initial disclosures on behalf of all

21   defendants and then they say, oh, we served a document

22   demand on Fairfield Pagma and they don't have to answer it

23   because it's defunct, and now they appear on summary

24   judgment only on behalf of two general partners?  Give me a

25   break, Your Honor.  As you said, there are Federal Rules of

Page 35

1    Civil Procedure here that govern these issues.  Defense

2    counsel is absolutely disregarding them from top to bottom.

3    Thank you.

4             MR. LAX:  Your Honor, if I just may briefly

5    respond to one issue that was just raised.

6             THE COURT:  Very briefly.

7             MR. LAX:  I will be very brief, Your Honor.

8    Bonnie Kansler's declaration.  She was a disclosed

9    individual.  It was the Trustee that decided not to depose

10   her and a self-serving affidavit, I don't even understand

11   that that means.

12            THE COURT:  That's enough.  He said the word.

13   That's enough.  You said you didn't know what it means.  Say

14   something important to me.

15            MR. LAX:  Okay, what is important, Your Honor, is

16   that Bonnie Kansler and the tax returns that she -- that her

17   declaration and the attachment to her declaration, if you

18   just focus on that, she was disclosed in our 26(a); that

19   defeats their summary judgment motion --

20            THE COURT:  Okay.

21            MR. LAX:  -- by and of itself.

22            THE COURT:  All right.  Very good.  Thank you.

23            MR. LAX:  Thank you, Your Honor.  Thank you, Your

24   Honor.

25            THE COURT:  We'll take about a three-minute break.

1          MR. LAX:  Are we excused?  You're going to the

2     next case, right, Your Honor?

3          THE COURT:  I am.  You're excused, Mr. Lax.

4          MR. LAX:  Thank you very much, Your Honor.

5          THE COURT:  Thank you.

6          (Recess)

7          THE COURT:  We're back on the record.  Good

8     morning again.  We're at 10-04468, Irving Picard Trustee,

9     the Bernie Madoff Investment Securities and it's the Trustee

10    v. Ken-Wen Family Limited Partnership.  State your name and

11    affiliation.

12          MR. NEIBURG:  Morning, Your Honor.  Michael

13    Neiburg from Young Conaway Stargatt and Taylor on behalf of

14    the Trustee.

15          MR. LAMBE:  Good morning, Your Honor.  Christopher

16    Lambe, Young Conaway Stargatt and Taylor on behalf of the

17    Trustee.

18          MR. ROHER:  Good morning, judge. Mark Roher, R-O-

19    H-E-R, on behalf of defendant Kenneth William Brown and Mr.

20    Brown is also listening in, Your Honor.

21          THE COURT:  Excellent.  Thank you very much.

22          MR. BROWN:  Morning, Your Honor. This is Ken

23    Brown.

24          THE COURT:  Very good.  This is the Trustee's

25    motion represented today unusually by Young Conaway in front

1    of me, so I believe Mr. --

2              MR. ROHER:  Your Honor --

3              THE COURT:  Yes, sir, wait a minute.  I may have

4    this --

5              MR. ROHER:  I'm sorry.

6              THE COURT:  -- confused.  Mr. Roher is

7    representing the defendant, correct?

8              MR. ROHER:  Yes, Your Honor.

9              MR. LAMBE:  Correct, Your Honor.

10             THE COURT:  And there's a cross motion by the

11   Trustee.

12             MR. ROHER:  Correct.

13             MR. NEIBURG:  Your Honor, this is Michael Neiburg.

14   Just to set the table, I --

15             THE COURT:  Please.  Yeah.

16             MR. NEIBURG:  Yeah, sure.  So there's the motion

17   for summary judgment filed by defendant Kenneth Brown --

18             THE COURT:  Right.

19             MR. NEIBURG:  And then the Trustee filed a cross

20   motion for summary judgment as to Mr. Brown and also a

21   motion for summary judgment as to the other defendant, Ken-

22   Wen Family Limited Partnership.

23             THE COURT:  Very good and that's -- let me read

24   that entire title and that's what I did not do.  It's the

25   Ken-Wen Family Limited Partnership, Kenneth Brown in his

1   capacity as the general partner of Ken-Wen Family Limited

2   Partnership, and Wendy Brown --

3           MR. ROHER:  Yes, Judge.

4           THE COURT:  Very good.  And Mr. Roher, you're

5   representing all in that capacity?

6           MR. ROHER:  No, Judge.  I'm only representing

7   Kenneth Brown.

8           THE COURT:  And who represents the Ken-Wen Family

9   Limited Partnership?

10          MR. ROHER:  Go ahead, Mr. --

11          MR. NEIBURG:  I was just going to say, Your Honor,

12  it's the Bernfeld firm.  They have at one time represented

13  all defendants.  At some point several years ago, Mr. Roher

14  stepped in to defend and represent Mr. Brown.  Ken-Wen did

15  not respond to the summary judgment as to Ken-Wen.  Notice

16  was given and Mr. Bernfeld knew of the filings and Ken-Wen

17  did not file a response.

18          THE COURT:  Very good, and defendant Wendy was

19  dismissed from this with prejudice on -- early last year.

20          MR. NEIBURG:  Correct, Your Honor.

21          THE COURT:  January the 19th.  Okay.  So there is

22  a default to the Ken-Wen Family Limited Partnership?

23          MR. NEIBURG:  Well, they did not file a response

24  to the summary judgment motion.  As of right now, no

25  judgment has been entered, default or otherwise.

1            THE COURT:  Okay.  All right.  Then Mr. Lambe,

2     you're going to be making the argument?

3            MR. LAMBE:  Yes, Your Honor.

4            THE COURT:  Okay.  Let me hear from you, then.

5            MR. LAMBE:  Great.

6            MR. ROHER:  Your Honor, respectfully, I filed my

7     motion first and there's --

8            THE COURT:  Oh, you did?  Then thank you.  I'm

9     getting a little confused.

10           MR. ROHER:  It is a little confusing, Judge, and -

11     -

12           THE COURT:  So you filed the motion for --

13           MR. ROHER:  Summary judgment.

14           THE COURT:  Okay, you filed the first motion for

15     summary judgment.  Thank you, Mr. Roher, for straightening

16     me out.  And so I -- if you will please go first, then.

17           MR. ROHER:  Okay, thank you, Judge.  And I do want

18     to just, for the record, thank Mr. Lambe for all this

19     professionalism that he's shown when dealing with me.  I'm

20     not a regular practitioner before this Court.  I'm admitted

21     pro hac vice and as I said, Mr. Lambe has been very

22     accommodating to help me through some of the procedure, so I

23     do want to just note that.

24           But Your Honor, there's been a lot of filings and

25     I want to -- I think actually, really, I think I had an

Page 40

1    epiphany preparing for this hearing.  Can I share just the

2    relevant Florida statute or do you have that in front of

3    you?  It's Florida Statute 620.1607. If you let me share my

4    screen, I can pull it up.  It's up to you.

5              THE COURT:  Give me just a moment on that.  That's

6    the Florida Partnership Law that you're talking about?

7              MR. ROHER:  Yes, Your Honor, and both parties are

8    essentially relying on two different subsections of that

9    statute.

10             THE COURT:  Okay.  We are now communicating with

11   the people in control of the screen and we're going to let

12   you share the screen.

13             MR. ROHER:  Okay, thank you.  Just got to find it.

14             THE COURT:  Give us a moment to make that happen.

15             MR. ROHER:  Okay.

16             THE COURT:  There you have it, right there.  Can

17   everyone see that, now?

18             MR. ROHER:  Everyone except me.  Hold on.

19             THE COURT:  It is clear for me.

20             MR. ROHER:  Okay, I'm just --

21             THE COURT:  I'm looking at --

22             MR. ROHER:  -- have to expand my --

23             THE COURT:  -- Florida Statute -- I'm looking at

24   Florida Statute 620.1607 and it's current through 2021,

25   regular and first and second extraordinary sessions.  Is

1    that correct?

2              MR. ROHER:  Yes, that's correct.

3              THE COURT:  Okay.

4              MR. ROHER:  Okay.  I can't see it, but that's

5    okay.  Okay, Judge, so --

6              THE COURT:  Excuse me.  Can everyone else see it?

7              MR. LAMBE:  Yes, Your Honor.  I can see it.

8              THE COURT:  Okay.  Probably because you put it up,

9    you can't see it.  I don't know.

10             MR. ROHER:  Yeah, okay, maybe that's why, but --

11   oh I see it --

12             MAN 1:  I can see it, Your Honor.

13             THE COURT:  Very good.

14             MR. ROHER:  Okay.  Judge, I think really this is a

15   simple proposition and a simple argument, I hope, at least

16   from my perspective.  The -- if you've read the -- I'm sure

17   you've read the papers, so as I said, 620.1607 is the

18   operative statute.  Ken-Wen Family Limited Partnership was a

19   Florida limited partnership.  There's no dispute as to that.

20   My motion for summary judgment attaches Exhibit C and D.

21   well, it's really D where my client withdrew as a general

22   partner as of February 29th, 2008.  I think that's largely

23   undisputed, but I'm not going to speak for Mr. Lambe, but

24   the evidence that I put forth in my summary judgment motion

25   shows that Mr. Brown withdrew as a general partner as of

1    that date.

2              THE COURT:  State that date again for me.

3              MR. ROHER:  February 29th, 2008.

4              THE COURT:  Okay.

5              MR. ROHER:  And which I believe is the -- which

6    was after -- no, sorry.  I'm sorry.  The transfers at issue

7    here, Judge, occurred I believe before the -- or at least

8    three of them, I believe, occurred before the withdrawal and

9    one occurred after withdrawal, but I don't think -- the

10   before and after, I don't think is really relevant.  The

11   issue, Judge, is if you look at -- I'm relying on 620,

12   Subsection 1, Judge.

13             And it deals with the specific language being an

14   obligation and the Trustee is taking the position that upon

15   receipt of the transfers, the limited partnership, that

16   incurred an obligation on behalf of the limited partnership.

17   And my contention is that's not accurate, Judge.  The

18   receipt of a transfer -- at the time that the limited

19   partnership received the transfer, that's not an obligation.

20   That's not a liability.

21             That's a receipt of a transfer and those transfers

22   are just transfers, and frankly they're still -- it's still

23   not an obligation of the limited partnership because, as you

24   heard before, there's no judgment yet entered against the

25   limited partnership.  So the Trustee's position is that upon

Page 43

1    the receipt of a fraudulent transfer, that creates an

2    obligation on behalf of the transferee under the Florida

3    partnership -- limited partnership law, and that's not the

4    case, Judge.

5           So if you look at the language of Subsection 1, it

6    says, "A person's dissociation as a general partner does not

7    itself discharge the person's liability as a general partner

8    for an obligation of the limited partnership incurred before

9    dissociation."  So in this case, there's really no

10   obligation, Judge, and my client's dissociated.  And if you

11   -- and then you look at the -- it says, the exceptions are

12   Subsections 2 and 3.  Subsection 2, I don't -- is not

13   applicable and neither party is relying on Subsection 2.

14          But it's saying that if those exceptions aren't

15   met, the -- I'm reading the last part of Subsection 1 -- the

16   person is not liable for a limited partnership's obligation

17   incurred after dissociation, so my contention, Judge, is

18   there's still no obligation.  It's twofold.

19          Either there's no obligation yet of the general

20   partnership because there's no judgment against the limited

21   partnership so -- and my client has dissociated and frankly,

22   the general partnership has dissolved just -- I think in

23   2012 and that's one of my exhibits, Judge -- or if the

24   obligation incurred upon the receipt of the filing of the

25   lawsuit by the Trustee, if that created an obligation, that

Page 44

1    was after dissociation as well, because the lawsuit was

2    filed after my client dissociated.

3              And I've looked -- unfortunately, there's not a

4    lot of caselaw on this, Judge, but I'm just reading the

5    statute.  And what I did --

6              THE COURT:  You're reading -- excuse me.  You're

7    reading the Florida statute.

8              MR. ROHER:  Yes, Judge.  The -- what I put up.

9    I'm talking about --

10             THE COURT:  I understand.  I understand.

11             MR. ROHER:  Okay.

12             THE COURT:  And you're not reading three yet.

13             MR. ROHER:  I'm not -- yeah, I'm not at three yet.

14   I'm going to get there, judge.

15             THE COURT:  Okay.

16             MR. ROHER:  Thank you.  And what I did was, I

17   cited some caselaw from other -- well, it's actually from a

18   New York case and if you look really in Paragraph 14 of my

19   motion, which I was on Page 5 of my motion, Docket Entry

20   174, it's talking about limited partner -- the liability of

21   a limited -- of a general partner which regard to a limited

22   partnership liability to pay rent and that was frankly the

23   best case, the best type of cases I found on this issue,

24   Judge, and I looked everywhere.

25             But in that case and the case of Barbro Realty

Page 45

1    Company v. Newburger, 53 A.D.2d 34, (NY App. Div. 1976), in

2    that case the Court found that an obligation to pay rent

3    does not constitute a preexisting debt, so my argument is

4    similar to that type of logic, Judge.  The receipt of a

5    fraudulent transfer by a general partnership, that doesn't

6    create a debt or preexisting debt.  It's -- you know, the

7    obligation to pay rent is an obligation, but it doesn't

8    arise until there's a default.

9         In this case, Judge, the obligation to repay a

10   fraudulent transfer doesn't arise upon the receipt of the

11   fraudulent transfer.  It'll arise presumably or at least no

12   earlier than there's either a lawsuit filed by a Trustee or

13   maybe a demand letter, but in and of itself, the receipt of

14   a fraudulent transfer, especially in a case of a Ponzi

15   scheme where there's no evidence that the general

16   partnership knew that it was a -- that this was a Ponzi

17   scheme or a Ponzi scheme transfer, that doesn't create an

18   obligation.

19        And I cite it here, I highlighted.  "Thus Barbro

20   held that because the obligation of a lease does not arise

21   until rent becomes due, those who are partners in a

22   partnership at the time of default of a lease agreement are

23   personally liable."  Okay.  That's fine, Judge.  My

24   contention is, and I don't think it's disputed, that my

25   client was not a general -- my client's not a general

Page 46

1    partner anymore.  He wasn't a general partner at the time of

2    the lawsuit -- that this lawsuit was initiated.

3            And furthermore, in -- I cited 8182 Maryland

4    Associates v. Sheehan, 14 S.W.3d 576, 583 to 584 (Mo. 2000),

5    and that held that the Court determined that the obligation

6    of a lease is incurred -- I'm sorry.  Strike that, Judge.

7    In Paragraph 15, I argued at 586 that that Supreme Court of

8    Missouri held that the general partners were not personally

9    liable for rent arising subsequent to the time they were

10   partners of a partnership in possession of the leased

11   premises when the lease breach occurred subsequent to the

12   withdraw from the partnership and so that's the caselaw I

13   cited, Judge, in support of my position that Subsection 1

14   applies and, of course, now I have to deal with the language

15   of Subsection 3 which the Trustee is relying on.

16           Okay, and if you look at Subsection 3, it reads,

17   "A person that has dissociated as a general partner but

18   whose dissociation did not result in a dissolution and

19   winding up of the limited partnership activities" -- I

20   agree, Judge that that -- Mr. Brown's dissociation did not

21   result in the winding up -- "is liable on a transaction" --

22   they're using -- the word is transaction, not obligation --

23   "on a transaction entered into by the limited partnership

24   after the dissociation."

25           So in this case, Judge, my contention is the

1   transaction is the limited partnership's receipt of the

2   fraudulent transfers, but that was before dissociation, not

3   after dissociation.  So a plain reading of the statute,

4   Judge, shows that this exception, Subsection 3, does not

5   apply.  So that's essentially the simple, straightforward --

6   I hope it's straightforward -- argument as to why my client

7   who is a dissociated general partner should not be held

8   personally liable for the transfers made to the general

9   partnership.  If you're looking -- I'm asking you look at

10  the language of the statue so this is all I want to --

11              THE COURT:  I'm a bit confused by your argument,

12  because we also have the SIPA law, so, you know, four

13  transfers took place -- three transfers took place prior to

14  his dissolution -- his leaving the partnership, correct?

15              MR. ROHER:  Yes.

16              THE COURT:  And the final transfer from BLMIS to

17  Ken-Wen occurred on November the 17th, 2008 and he left the

18  partnership --

19              MR. ROHER:  February 2008.

20              THE COURT:  And the other three, yes, were prior

21  to that.

22              MR. ROHER:  Correct, Judge.

23              THE COURT:  Okay.  I want to focus on Subsection

24  3.

25              MR. ROHER:  Okay.  I'm sorry, do you want -- is

1    that a question, or do you want me to talk about it again?

2           THE COURT:  Well, I'm looking at it right now --

3           MR. ROHER:  I'm sorry.

4           THE COURT:  -- and you were mentioning it, so

5    again, expand on what you're thinking about three.

6           MR. ROHER:  Yes, and I apologize this wasn't in my

7    papers, Judge, but I really -- if I focus on the language of

8    the statute, but in Subsection 3, it talks about a

9    transaction that a general partnership would be liable on a

10   transaction and not an obligation, but a transaction.  Here,

11   they're talking -- here, the statute references a

12   transaction and what I believe would qualify as a

13   transaction would be the transfers by Madoff to the limited

14   partnership.

15          THE COURT:  Okay.

16          MR. ROHER:  All right?  But that was -- and

17   whether it was after dissociation.

18          THE COURT:  So there were at least three that were

19   pre-dissociation.

20          MR. ROHER:  Correct, and there was one after, yes.

21   And I don't believe A and B are applicable, 3(a) and (b).

22          THE COURT:  Okay.  All right.

23          MR. ROHER:  So I have arguments, Judge, in

24   opposition to the summary judgment motion.  I don't know if

25   you want to hear them now or if you just would like to deal

1    with my motion.  However you feel is appropriate.

2             THE COURT:  Well, I think it's appropriate that

3    they have rebuttal to your motion and then begin theirs and

4    then you answer theirs.

5             MR. ROHER:  I agree, Judge.

6             THE COURT:  Okay.  Very good.  Thank you.  If you

7    will take this down, please.

8             MR. ROHER:  Yes, Judge.  Stop share.

9             THE COURT:  Perfect.  Thank you very much.

10            MR. ROHER:  Thank you, Judge.

11            THE COURT:  Now, Mr. Lambe, first if you would

12   rebut what we just heard and then begin your summary

13   judgment.

14            MR. LAMBE:  Yes.  Thank you, Your Honor.  So as

15   Mr. Roher had just pointed out, he's relying on Section

16   6230.1607, Sub 1 of the Florida statutes.  The last sentence

17   of that subparagraph states that certain exceptions apply.

18   Those exceptions are listed, as we just discussed, in

19   Paragraph 3.  Now, I believe that Paragraph 3 is actually

20   important and all parts of that subparagraph are important

21   and it states that a person that dissociated as a general

22   partner but his dissociation did not result in a dissolution

23   and winding up of the limited partnership's activity is

24   liable on a transaction entered into by the limited

25   partnership after the dissociation if -- and all of these,

1    the following must all occur.

2              A general partner would be liable on the

3    transaction and then at the time that the other party enters

4    into the transaction less than two years have passed since

5    the purported dissociation and that the other party does not

6    have notice of the dissociation.  Your Honor, I can get more

7    into this on the Trustee's motion for summary judgment, but

8    I'll touch on it here.

9              THE COURT:  Okay.

10             MR. LAMBE:  This Court has held several times that

11   a general partner is liable for the debts of the

12   partnership.  That was held in the Merkin case under New

13   York law and then also in Avellino under Florida law.

14   Florida law is no different and states that a general

15   partner of a limited liability partnership remains liable

16   for the debts of the partnership.  This Court has also held

17   that a Trustee may recover from the general partnership as

18   initial transferee of fraudulent transfers or from the

19   general partner under applicable state law.  I believe that

20   we have that here in Section 1607 Sub 3.

21             3(a) is satisfied because, as I just stated, a

22   general partner would be liable under state law and -- for

23   the debts of the general partnership.  The issue with the

24   November 17th transfer which took place approximately -- I

25   believe that's eight, eight-and-a-half months or so after

Page 51

1    the purported dissociation on November 29th, 2008, which Mr.

2    Roher just stated that there is no dispute that the date in

3    which Mr. Brown had dissociated from Ken-Wen was, in fact,

4    in February of 2008.  That is less than two years, Your

5    Honor, and I would ask Your Honor to take notice of that

6    fact.  Furthermore --

7             THE COURT:  Let me just ask you something.  Just -

8    -

9             MR. LAMBE:  Of course.

10            THE COURT:  -- something that's sort of been

11   troubling me since I've heard the first of the arguments.

12   Was notice given to the records that you can find to the

13   Bernie Madoff Investment Securities of the dissolutionment

14   of that partnership?

15            MR. LAMBE:  That's exactly what my next point was

16   going to be, Your Honor.

17            THE COURT:  Okay, good.  All right.  All right.

18            MR. LAMBE:  -- evidence that would suggest that

19   Mr. Brown informed BLMIS of the dissociation.  And in fact,

20   if you look at the request that Mr. Brown submitted for that

21   November 17th, 2008 transaction, it almost mirrors the other

22   requests.  It's a handwritten note.  The only distinction is

23   that he signed as Kenneth Brown, FLP; whereas in the other

24   requests, he signed as Kenneth Brown, FLP GP, indicating

25   that he was in fact making those requests as a general

Page 52

1    partnership -- or as a general partner.

2            THE COURT:  That was really a question for the

3    other side, and I thought about it then, but I -- okay,

4    thank you.  Go ahead.

5            MR. LAMBE:  So Your Honor, just to close the loop

6    on that, I believe that 1607 Sub 3, the exception provided

7    in the Florida statute, is applicable here.  Mr. Roher's

8    comments regarding the first subsection kind of missed the

9    mark here in the fact that it doesn't contemplate Subsection

10   13.  Mr. Roher also touched on the issues of when a claim

11   arises for a fraudulent transfer.  In his papers and then

12   just recently before, he stated to Your Honor that he cited

13   to cases from the Missouri Supreme Court.

14           It's the Trustee's position, and we submit that

15   the Court finds the same, these cases that are cited are

16   wholly inapplicable to fraudulent transfer cases.  These

17   cases dealt with the timing of when the obligation to pay

18   rent on a commercial leases arises, so we would submit that

19   those cases are inapplicable.  In Goodman's -- I'm sorry, in

20   Grossman's in the Third Circuit, which has been applied in

21   this Court in the Southern District, a claim can arise at

22   the time that the conduct occurs, giving rise to the injury

23   and that a claim can also arise before the right to payment

24   occurs.

25           Here, these fraudulent transfers were made and

Page 53

1    those transfers, as the Court has held in other cases, those

2    transfers consisted entirely of fictitious profits.  They

3    were customer property and therefore the transfer of

4    customer property is what gives rise to the claim of the

5    fraudulent transfer under 548(a)(1)(A).  That is -- to the

6    extent Your Honor has any questions regarding this specific

7    statute, I'd be prepared to go into some of the other issues

8    that the Trustee noted with Mr. Brown's motion for summary

9    judgment and his response --

10           THE COURT:  And they -- and those, that's in your

11   papers already?

12           MR. LAMBE:  Yes, it is, Your Honor.

13           THE COURT:  Okay.  No, you can go ahead, then.

14           MR. LAMBE:  Okay.  Mr. Roher actually led off this

15   conversation that it's undisputed that Mr. Brown dissociated

16   on February 29th, 2008.  I'm not going to waste any more

17   time on this issue and, you know, we accept that, the fact

18   that there is no genuine dispute with regard to that date.

19   Further, the undisputed evidence establishes that Mr. Brown

20   was, in fact, a general partner of Ken-Wen in 2006, 2008,

21   and 2008.  He made these allegations -- he made the

22   allegations that he dissociated from Ken-Wen in February of

23   2008 in his motion to dismiss, his motion for summary

24   judgments, and even in the response for -- in his response

25   to the Trustee's cross motion for summary judgment.

1          He made the same allegations during his sworn

2     deposition testimony and, Your Honor, the documents that Mr.

3     Brown attaches to his filings also contradict any argument

4     that Mr. Brown dissociated at any other point other than

5     February 29th, 2008.  One thing that I did want to touch on,

6     Your Honor, is that in Mr. Brown's response, he seems to

7     allege that he never was a partner of Ken-Wen.  I believe

8     that this argument is moot, as Mr. Roher had stated earlier

9     that there's no genuine dispute that Mr. Brown was in fact a

10    general partner of Ken-Wen.

11         We already touched on 1607(3), so I won't belabor

12    the point on that issue, Your Honor.  As I stated earlier,

13    Mr. Brown is liable for the fraudulent transfers that were

14    sent from BLMIS to Ken-Wen as a partnership.  Ken-Wen is the

15    initial transferee here, Your Honor, and Mr. Brown as a

16    general partner of Ken-Wen is liable for the debts of the

17    partnership.

18         He also makes some procedural arguments which the

19    Trustee submits are waived, Your Honor, the first of which

20    is regarding insufficiency of service of process.  Former

21    counsel for Mr. Brown expressly accepted service of the

22    complaint and the summons and actually waived any and all

23    objections to the insufficiency of service of process.  Even

24    if we didn't have that stipulation, Mr. Brown waived this

25    objection by failing to include it in his motion to dismiss

1    which was filed at Docket No. 95.

2            Similarly, his arguments and objections regarding

3    personal jurisdiction and venue are also waived under Rule

4    12(h) of the Federal Rules of Civil Procedure, made

5    applicable through -- to the bankruptcy proceedings through

6    Rule 7012, so personal jurisdiction and venue as they were

7    not raised in his motion to dismiss are waived.

8    Nonetheless, this Court has held repeatedly that venue is

9    proper in the Southern District of New York and the Court

10   has also held that it has subject matter jurisdiction over

11   these cases under 28 U.S.C. 1334, Section 157 of the

12   Bankruptcy Code, and the amended standing order of

13   reference.

14           Some of the other arguments that Mr. Brown makes,

15   I'd like to address are his -- the mere conduit defense.

16   Your Honor, Ken-Wen had complete dominion and control over

17   the funds that were transferred in the fraudulent transfers

18   in this case.  The guidepost in measuring dominion and

19   control is not who actually used the funds, but who -- it's

20   who first had the right to use the funds.  Here, Ken-Wen had

21   the right and as I stated before, the Trustee may recover

22   from Ken-Wen as the initial transferee as it had dominion

23   and control over the funds.

24           Mr. Brown seems to conflate the party by which the

25   Court looks to establish fraudulent intent under

1    548(a)(1)(A).  It's not Mr. Brown's intent that the Court

2    looks to.  Rather, it's the Debtors' intent, the intend of

3    BLMIS.  When I transition to discuss more fully, Your Honor,

4    the Trustee's motion for summary judgment, I'll go through

5    the elements which I know you are already very well versed

6    in, so I won't belabor the point here as well.

7              Mr. Brown also suggests that he took for value.

8    This Court has held that fictitious profits from a Ponzi

9    scheme can never equal value as contemplated by the defenses

10   in 548(c).  Also, contrary to Mr. Brown's assertion, the

11   Trustee was not actually required to plead an actual

12   knowledge or willful blindness here.  The Trustee is not

13   seeking to recover the principal that Ken-Wen submitted to

14   BLMIS.  We're only seeking to recover the fictitious profits

15   above and beyond the principal that was invested.

16             Your Honor, that concludes the arguments that I

17   have in response and objection to Mr. Brown's motion.  There

18   are others that were scattered throughout Mr. Brown's

19   response and to the extent Your Honor has any questions

20   about them, I'd be happy to answer them.

21             THE COURT:  Well, I just want to make sure you

22   have addressed even the ones that he brought up in your

23   papers.

24             MR. LAMBE:  Yes, Your Honor.  So there are --

25             THE COURT:  Why don't you just touch on the ones

1    you think that were brought up that you probably need to

2    address?

3              MR. LAMBE:  Of course.  Thank you.  The first one

4    relates to the dominion and control element.  Mr. Brown

5    suggests that the funds that were transferred into the Ken-

6    Wen accounts at Paradise Bank and Bank of America were then

7    transferred to an offshore account in Southpac for the sole

8    purpose and benefit of Ms. Werner, who as Your Honor stated

9    earlier has been dismissed from this case.

10             In fact, Your Honor, those funds were actually

11   used to pay off a loan that Mr. Brown had taken out to pay

12   off a $6.2 million judgment that the SEC imposed upon Mr.

13   Brown in his own investment advisory business, so just going

14   back to the argument I made earlier, regardless of what

15   happens to the funds after the transfer, Ken-Wen received

16   the funds.  They had dominion and control and the Trustee

17   can recover from Ken-Wen as initial transferee and from --

18   or from Mr. Brown as the general partner.

19             Mr. Brown also discusses the intent of Congress in

20   passing SIPA in that it's used to protect customers from

21   failed broker deals such as this; however, as this Court has

22   already held, the real victims here are the net losers.

23   It's the folks that did not recover the principal that they

24   invested.  Here, Ken-Wen and Mr. Brown actually recovered

25   more than five times what their initial investment was.  So

Page 58

1    Your Honor, his argument regarding the intent of Congress

2    must fail here as well.

3              Similarly, Mr. Brown appears to make a 546(e)

4    argument; however, as this Court has held and as it plain on

5    the face of the statute,546(e) is not a defense to cases

6    asserting actual fraudulent intent under 548(a)(1)(A).

7    Those are the -- that is the balance of the arguments that

8    the Trustee took issue with, Your Honor, unless you'd like

9    me to continue on to the Trustee's main case and motion for

10   summary judgment.  I can do that now, or if you have other

11   further questions --

12             THE COURT:  Okay.

13             MR. LAMBE:  -- I'd be happy to answer them.

14             THE COURT:  There's one thing that you didn't

15   touch on, but that you touched on your papers, that you had

16   knowledge of the Defendant's bankruptcy in -- I believe it

17   was in October of 2015.

18             MR. LAMBE:  Yes, Your Honor.

19             THE COURT:  Now I have a question for the -- for

20   Mr. Roher on that, but do you have anything you wish to add

21   to that?

22             MR. LAMBE:  Just only with respect to the

23   bankruptcy discharge, Your Honor.  Florida state law or

24   Florida applying Bankruptcy Code states that unless a

25   creditor is provided with actual notice of the bar date,

Page 59

1    failure to provide that notice does not discharge a

2    creditor's claims against the party asserting bankruptcy.

3            To the extent that Mr. Brown does assert that

4    argument here, it's not -- it's -- the argument must fail.

5    And we see here that even -- and you know, Mr. Brown admits

6    the fact that the Trustee was not provided notice of the bar

7    date, I would point Your Honor to Exhibit C of the Trustee's

8    reply, which is a complaint filed in the -- I believe the

9    Southern District of Florida where Mr. Brown filed a -- an

10   action against his bankruptcy for ineffective representation

11   of counsel.  Specifically in Paragraph 67, he notes that his

12   bankruptcy counsel did not provide the Trustee with notice

13   of the individual or the personal Brown bankruptcy leaving

14   him open to dispute a potential $4 million judgment.

15           THE COURT:  And now -- and let me be clear on the

16   dates these -- the transfers occurred.  Do you have those in

17   front of you?

18           MR. LAMBE:  Yes, I do, Your Honor.

19           THE COURT:  And the amount too, please.

20           MR. LAMBE:  Yes.  So, the first transfer was on

21   June 24th of 2007 in the amount of --

22           THE COURT:  24th, not 26th.

23           MR. LAMBE:  Your Honor, just let me confirm.

24           MAN 1:  I believe it's the 26th.  I'm looking at

25   the exhibit, Judge.  Exhibit B to the amended complaint.

1              THE COURT:  I believe the next one might be

2     January the 24th, but -- not the next one, the third one,

3     but...

4              MR. LAMBE:  Yes, Your Honor.  My apologies.  It's

5     June 26th of 2007, and the amount is for $150,000.

6              THE COURT:  Okay.

7              MR. LAMBE:  The second transfer took place on

8     December 31st of 2007 in the amount of $500,000.  The next

9     transfer was January 24th of 2008 in the amount of $3

10    million.  And finally, the fourth transfer on November 17,

11    2008 in the amount of $200,000 for a total of $3.85 million.

12             THE COURT:  And then when -- what was the time of

13    the SIPA filing?

14             MR. LAMBE:  The original complaint was filed, Your

15    Honor, on November 12th of 2010.

16             THE COURT:  Okay.  All right.

17             MAN 1:  Your Honor, I'm sorry to interrupt.  When

18    you said the SIPA filing, do you mean like the actual filing

19    of the cases or this adversary?

20             THE COURT:  I think it's the actual -- I think I

21    need to know the actual filing of the cases.

22             MAN 1:  Yeah, it's December 11, 2008.  Sorry to

23    interrupt.

24             THE COURT:  December 11th, not November 12th.

25    Okay.

1            MAN 1:  Yeah, the November 12th of 2010 was the

2    date of this lawsuit.  But if you're looking at the SIPA and

3    the BLMIS proceedings, it was December 11, 2008.

4            THE COURT:  Okay.

5            MAN 1:  Sorry about that.

6            THE COURT:  Well, both of those are good I think

7    because we're talking -- I just am moving a bit to the --

8    when the liability arose is what I was looking at.  So,

9    either one of those are almost, okay, back together.

10            MAN 2:  Yeah, Your Honor.  I don't think there's

11    any dispute that the four transfers at issue occurred within

12    the two-year period prior to the petition date.

13            THE COURT:  Right.  Right.  Right.  One occurred

14    almost immediately before the petition date, a month.

15            MAN 2:  (indiscernible)

16            THE COURT:  The last one.

17            MR. LAMBE:  In the amount of $200,000, yes.

18            THE COURT:  That $200,000 one.  Okay.  And that's

19    the adversary.  Okay.  All right.  Very good.  Is that all

20    you wish to -- let me see -- let me -- I'm looking at my

21    information.  I wanted to see if I had any real questions

22    for you in all my maneuverings here.  I don't believe so.

23            MR. LAMBE:  Okay, Your Honor.  Would you like me

24    to present on the Trustee's Motion for Summary Judgment, or

25    would you --

Page 62

1            THE COURT:  Please.  Please.

2            MR. LAMBE:  Okay.

3            THE COURT:  Go right ahead.

4            MR. LAMBE:  Thank you.

5            MR. ROHER:  Judge --

6            THE COURT:  Because I'm going to -- oh, Mr. Roher,

7    do you want to speak first?

8            MR. ROHER:  I -- if I can just rebut some of the

9    --

10           THE COURT:  Okay.  Well, before you do that, then,

11   I have a question for you as you start to rebut it.

12           MR. ROHER:  Okay.

13           THE COURT:  Because I'm -- the bankruptcy I know

14   is going to come up probably in the other one.

15           MR. ROHER:  Okay.

16           THE COURT:  But did you have any proof that the

17   Florida bankruptcy was served on the Trustee in this case?

18           MR. ROHER:  No, Judge.

19           THE COURT:  Okay.  Now then you can go ahead.

20           MR. ROHER:  Yeah.  Just for the record, and I

21   wasn't the -- I wasn't Mr. Brown's bankruptcy counsel.

22           THE COURT:  Yeah, I understand that.

23           MR. ROHER:  I actually did sue his -- I did

24   represent Mr. Brown in his lawsuit against his former

25   bankruptcy counsel.  From what I understand, the lawsuit was

Page 63

1    listed in the Statement of Financial Affairs, I believe.

2    But -- and the -- at some point, the Trustee in 2015 did

3    have actual notice of the -- of Mr. Brown's pending

4    bankruptcy but did not do anything.  Did not file a claim or

5    ask to file a claim.  And I think that that was undisputed.

6    And Mr. Brown's bankruptcy case was still open in 2015.  And

7    my argument is the Trustee could've done something.  I argue

8    -- I don't know if technically the Trustee was obligated to

9    do that, but the Trustee certainly could have done that.

10            A few things, Judge.  The Grossman's case that was

11   cited by the Trustee, that doesn't respectfully stand for or

12   support the argument that's being made to state when a

13   fraudulent transfer claim arises.  The -- obviously, there's

14   a statute of limitations clawback, but in Grossman's, it's

15   talking about when claims arise in terms of when a creditor

16   has the right to file a proof of claim.  It doesn't discuss

17   anywhere that a -- when a fraudulent transfer claim arises,

18   when a Trustee's fraudulent transfer claim arises.

19            I think by virtue of Section 548 and 546 it's, you

20   know, the two years clawback.  But so that -- I think that's

21   an important, you know, distinction because I'm not going to

22   regurgitate my argument.  I think my -- I was hopefully

23   clear what my position is with regards to an obligation and

24   a transaction.

25            So, with regards to my -- to Mr. Brown's Motion

Page 64

1    for Summary Judgment and my obligation to be intellectually

2    honest with the Court, and stick with my argument, Judge, my

3    reading of the statute, especially Subsection 3, that at

4    most, Judge, that my client should be able to defeat the

5    first three transfers at issue here.  We just went through

6    them.  There's -- of the four transfers, Judge, there was

7    only one transfer that occurred after dissociation, and

8    that's for $200,000.

9            And for the record, Judge, my -- the -- we're

10   relying on in the -- in the Motion for Summary Judgment,

11   we're relying upon -- we relied upon the 2008 date.  You

12   know, my client has -- subsequent to that, my client

13   discussed with me, and he set forth in his affidavit that,

14   you know, in 2006 he, I guess for lack of a better word,

15   unofficially dissociated in terms of his role with the

16   general partnership.  So, I just wanted to point that out.

17   And I think that goes more towards the opposition to the

18   Trustee's Motion for Summary Judgment, but I'm not going to

19   raise that now.

20           But I think that's -- again, based on my reading,

21   and again, in terms of my Motion for Summary Judgment, I

22   think -- again, based on the language of 620.1607, I think

23   my -- or my client is entitled to summary judgment as to the

24   first three transfers; $150,000 on June 26, 2006; 500,000 on

25   December 31, 2007; and three million on December 31, 2007.

Page 65

1   So, and -- so that -- unless you have any other questions,

2   Judge, that's all I have to say in rebuttal.

3          THE COURT:  No, I do not.

4          MR. ROHER:  Okay.  Thank you.

5          THE COURT:  Now then to your summary judgment.

6          MR. LAMBE:  Thank you, Your Honor.  I -- and just

7   before I get into that, I just want to make one notation

8   regarding 620.1607 of the Florida Statute in Subparagraph 1.

9   It states that a dissociation does not in itself discharge

10  the person's liability as a general partner.  That occurred

11  before the dissociation.  I don't believe Mr. Roher's

12  arguments that he's -- that his client is not liable for the

13  three transfers before the dissociation is applicable here

14  or implicated by this Florida statute.

15         And then just briefly with respect to the

16  bankruptcy filing in Florida, Your Honor, the Trustee

17  attached as Exhibit B to his reply various affidavits of

18  service showing who the noticed parties were to the Brown

19  bankruptcy.  You'll see that the Trustee does not appear on

20  any of those affidavits of service.

21         And then more so, the confirmation order in the

22  Brown bankruptcy was entered on March 3rd of 2015.  I

23  believe Mr. Roher was referencing the Certificate of Default

24  Judgment that we filed at Docket Number 62.  That was filed

25  in October of 2015.  So, Your Honor, there's -- the plan had

Page 66

1    already been confirmed by the time the Trustee had knowledge

2    of this case.

3            But shifting gears to the Trustee's Motion for

4    Summary Judgment, Your Honor, as we've heard here today, I

5    don't think there are any genuine issues of material fact

6    with respect to the Trustee's claim that would prevent the

7    Court from entering summary judgment on behalf of the

8    Trustee and against Ken Brown and Mr. Brown.  Neither Ken

9    Wen nor Mr. Brown dispute that they received the fraudulent

10   transfers within the two-year period between December 11,

11   2006 and December 11, 2008.  They don't dispute that BLMIS

12   had an interest in the property that was conveyed in those

13   transfers, and they do not contest that BLMIS, in fact, was

14   a Ponzi scheme.

15           In connection with the fact that there are no

16   genuine issues in material fact in the Court's prior rulings

17   in these cases, we would ask that the Court submit judgment

18   or provide judgment in favor of the Trustee in stating that

19   the fraudulent transfers are avoidable under 548(a)(1)(A),

20   and that the Trustee may recover those fraudulent transfers

21   from Ken Wen as the initial transferee or Ken Brown as the

22   general partner of Ken Wen.

23           I'm going to move through the elements of the

24   Trustee's claim, Your Honor.  I'll try not to belabor the

25   point -- the points that have already been decided by this

Page 67

1   Court in several other proceedings.  As I stated earlier,

2   Mr. Brown admits that BLMIS was in fact a Ponzi scheme and

3   that there is no genuine dispute regarding BLMIS' actual

4   intent to hinder, delay, or defraud its creditors.

5           Mr. Brown admits that the Trustee's experts have

6   confirmed that BLMIS, in fact, was a Ponzi scheme; that they

7   did not purchase ample treasury securities; that they did

8   not implement the split strike conversion strategy; and that

9   they paid redemptions from co-mingled customer funds with

10  the actual intent to defraud.  Beyond that admission, Your

11  Honor, this Court has already held that the Trustee is

12  entitled to rely on the Ponzi scheme presumption.

13          It's the law of the case, and Mr. Brown has not

14  presented any sufficient justification to turn away from

15  this precedent.  Even if the Trustee was not entitled to

16  rely on the Ponzi scheme presumption, the Trustee's experts

17  confirmed that BLMIS was, in fact, a Ponzi scheme.  The

18  BLMIS employees substantiated these findings through their

19  criminal plea allocutions and their testimony.

20          Mr. Brown offers no evidence to rebut the

21  Trustee's expert's findings going as far as to state that it

22  is unnecessary to depose the Trustee's experts as their

23  expert reports are admissible.  Beyond that presumption,

24  Your Honor, the Trustee has also established liability

25  through a batches of fraud analysis.  The evidence produced

Page 68

1   by the Trustee in this case establishes that BLMIS concealed

2   facts from its Creditors, that the fictitious profits lacked

3   consideration, and that BLMIS was indeed insolvent.

4          BLMIS did not make any trades on behalf of its

5   customers.  It has no funds other than the customer

6   property, which was inadequate to cover its liabilities, and

7   the consideration consisted entirely of fictitious profits.

8   As the Court held in -- as the Second Circuit held in

9   Solomon, the existence of several batches of fraud can serve

10  as an independent basis for establishing liability for the

11  actual intent to defraud.

12         With respect to the second element, Your Honor,

13  there's no dispute that Ken Wen received the fraudulent

14  transfers in this two-year period.  We have it here on the

15  record today.  I won't belabor the point.

16         THE COURT:  Let me just interrupt you there, and

17  then you can come back.  Because you're saying to me that

18  the transfers dates are when the obligation was under the

19  Florida law, correct?  And then the Defendant is stating

20  it's the adversary date when the obligations arose.  Am I

21  hearing both of you correct?

22         MR. LAMBE:  Your Honor, I believe that the --

23  under the Bankruptcy Code, the right to a claim arises at

24  the time the injury occurs.

25         THE COURT:  Okay.  And so --

1          MR. LAMBE:  And then -- I'm sorry.  Go ahead, Your

2     Honor.

3          THE COURT:  No, no, go ahead.  Finish your

4     statement.

5          MR. LAMBE:  So, I apologize, Judge.  I might be --

6          THE COURT:  There's a Third Circuit case on this,

7     and it's -- the Plaintiff states that the transfer dates are

8     when the obligation arose under Florida law.  The Defendant

9     states that it's the adversary date when the obligations

10    arose.  If the Court thinks that the date of the SIPA filing

11    was when the liability arose under Florida law, if that's

12    uncorrect, how -- and if that's how the Court rules, how

13    would that affect your argument of the Florida law?

14         MR. LAMBE:  Well, Your Honor, it's -- I believe

15    that the liability arose at the time of the transfer.  So,

16    the three transfers that Mr. Brown requested as general

17    partner before its dissociation date are clear that it's --

18    you know, he'd be liable as a general partner of Ken Wen.

19    The fourth transfer, which is after the date, he would also

20    be held liable for under Subsection 3, Your Honor.  So, I

21    don't believe that it would affect the analysis.

22         THE COURT:  Okay.  All right.  Well, I -- okay.

23         MR. ROHER:  Would you like me to respond to that?

24    I don't want to --

25         THE COURT:  Not yet.  I'll get there in just a

Page 70

1    minute because I'm still struggling with what his answer

2    was.

3              MR. ROHER:  I'm -- yeah, I'm sorry, Judge.  I

4    didn't mean to interrupt.

5              THE COURT:  Because this is a fraudulent claim.

6    We're talking about a fraudulent transfer, correct, Mr.

7    Lambe?

8              MR. LAMBE:  Correct, Your Honor.

9              THE COURT:  So --

10             MR. LAMBE:  Under 548(a)(1)(A).

11             THE COURT:  Because we talked about Grossman, and

12   that was the Third Circuit.  The claim arose with the pre-

13   petition conduct, and that case was discussing a pre-

14   petition tort claim brought by an individual against the

15   Debtor and not a fraudulent transfer claim.

16             MR. LAMBE:  Correct.  And the Trustee acknowledges

17   that distinction, Your Honor.  We cite to Grossman's for the

18   proposition in trying to make the connection of when the

19   claim for a fraudulent transfer claim arises.  Which is, as

20   I stated earlier, we believe that it was -- you know, that a

21   claim for a fraudulent transfer arises at the time of the

22   conduct -- at the time of conduct giving rise to the injury.

23   And the injury here was the transfer of customer funds,

24   which in and of itself under the Ponzi scheme presumption is

25   a fraudulent transfer under 548(a)(1)(A).

Page 71

1          THE COURT:  Okay.  Very good.  Finish up with your

2     bullet points.

3          And I'll let you speak, Mr. Roher.

4          MR. LAMBE:  Thank you, Your Honor.  I'll be brief

5     with the remainder of my comments.

6          THE COURT:  Mm-hmm.

7          MR. LAMBE:  So, it's not in dispute that Ken Wen

8     received the fraudulent transfers within the two-year

9     period.  So again, I won't belabor that point, Your Honor.

10    The final element is BLMIS' interest in the property that

11    was conveyed.  This Court has repeatedly rejected the

12    arguments that the investment advisory business at BLMIS was

13    not actually part of BLMIS.

14         Upon review of BLMIS' Form EDs and the Articles of

15    Organization, this Court has held that BLMIS was the owner

16    of the JP Morgan accounts, which did indeed hold the

17    customer property.  And because Madoff transferred ownership

18    of all of the assets originally held by the sole

19    proprietorship to the onus upon the formation of the LLC,

20    that BLMIS does in fact have an interest in the property

21    that was conveyed.

22         The last point, Your Honor, that I'd like to

23    highlight for the Court is -- implicates Local Rule 7056.

24    Neither Mr. Brown nor Ken Wen controverted the Trustee's

25    Statement of Material Facts.  And pursuant to Local

Page 72

1   7056(f)(1)(D), the Trustee's Statement of Material Facts are

2   deemed admitted.

3           In addition, Mr. Brown failed to include citations

4   to admissible evidence in support of his motion for summary

5   judgment and in his opposition to the Trustee's cross-motion

6   for summary judgment, which is a violation of Local Rule

7   7056-1(e).  So, the Trustee respectfully requests that the

8   Court not consider those unsupported allegations in deciding

9   these motions.

10          With respect to the affidavit that Mr. Roher had

11  previously mentioned, and which was filed as Exhibit A to

12  Mr. Brown's reply, the affidavit generally is an unsupported

13  self-serving affidavit.  This Court and the Second Circuit

14  have held that unsupported inconclusory statements in a

15  declaration cannot overcome a properly pleaded and

16  sufficiently supported motion for summary judgment.  So,

17  unless Your Honor has any other questions with respect to

18  the Trustee's papers or arguments, I'd like to thank the

19  Court for giving me the opportunity to argue here today.

20  This was my first oral argument.

21          THE COURT:  Nice having you.

22          Mr. Roher?

23          MR. ROHER:  Yes.  Thank you.  Mr. Lambe did a good

24  job, and it definitely was much better than my first one.  I

25  can tell you that.  My --

1           THE COURT:  Mine too.

2           MR. ROHER:  -- first -- I remember my first court

3   appearance was to announce an agreed settlement, and I don't

4   think I got any coherent words out of my mouth.  Unopposed

5   agreement.

6           THE COURT:  I can also tell you all if we're doing

7   war stories, I remember my first trial.  And boy was it

8   horrible, so...

9           MR. ROHER:  Well, that's why it's called

10  practicing law, you know?

11          THE COURT:  Yeah.  Okay.  Go ahead.

12          MR. ROHER:  Yeah.

13          THE COURT:  We're hearing rebuttal.  Right.

14          MR. ROHER:  Thank you, Judge.  I'll be brief.

15  I'll try to be brief.  The important -- I think the Court's

16  touched on the central issues here, and that's the language

17  of Florida Statute 620.1607.  And Mr. Lambe's position is

18  that -- or the Trustee's position is that the obligation of

19  Ken Wen arose upon the receipt of the fraudulent transfers.

20  But I just don't see that.  I don't see any support for

21  that.

22          And again, my argument, just to reiterate, Judge,

23  is that there's no obligation right now.  There's no

24  judgment.  Or again, if there was any obligation, it would

25  be upon the filing of the complaint, the adversary

1   complaint.  Or even if you want to go a bit earlier upon the

2   initiation of the SIPA action, I'm not sure if I'm calling

3   it the right thing, but I think I'm -- hopefully you

4   understand what I'm saying, Judge.

5           And the thing also, Judge, is that what we have

6   here is the Trustee is suing Ken Wen as the initial

7   transferee, which it sounds like they're -- you know, no

8   one's defending it, and there's going to be a judgment

9   entered against Ken Wen.  I'm not -- I don't represent them.

10  I'm not defending it.  And frankly, you know, I don't see

11  why -- you know, I wouldn't be surprised if the Court enters

12  judgment against Ken Wen.  I think the Trustee's met his

13  burden to -- especially if there's no opposition, Judge.

14          But that's not the issue we're really here for

15  today, Judge, because they're -- the Trustee is trying to

16  impose personal liability on my client by virtue of the fact

17  that he was a general partner.  So, there's a distinction

18  here, Judge, that respectfully I think Trustee is kind of

19  glossing over and hoping the Court kind of glosses over that

20  fact.  That's a different case here, Judge.

21          If we're here on, you know, the action only

22  against the general partnership, you know, I think the

23  Trustee should win, and Trustee's probably going to win, get

24  a judgment.  But that's not the case here, Judge, because

25  again, it's a question of when the obligation arose.  And

1   frankly, there's no -- there's nothing to support -- there's

2   nothing given to -- that you've heard from the Trustee to

3   support Trustee's position that an obligation of a limited

4   partnership -- sorry, of a Florida limited partnership,

5   which I don't think really matters in Florida, but again,

6   it's a Florida limited partnership.  You haven't heard

7   anything to support the Trustee's position that an

8   obligation of a Florida limited partnership arises upon the

9   receipt of fraudulent transfers.

10          And again, I provided the Court with case law from

11  other -- there's a New York -- I mean, New York -- a New

12  York State case and a Supreme Court of Missouri case that

13  I'm not going to regurgitate, but that discusses -- and

14  which makes sense, Judge, that until there's a default under

15  a lease when there's actually, you know, a right to sue,

16  that's when an obligation arises.  It's just -- for

17  instance, if you sign a lease -- if the general partnership

18  signs a lease and keeps paying a lease, there's no defaults.

19          So, it's akin to this case, Judge, where an

20  obligation -- there needs to be an obligation.  There's no

21  evidence that this receipt of a fraudulent transfer was

22  listed as a liability on the limited partnership's books.

23  You haven't heard that, and it wasn't.  But how -- because

24  how could it be, Judge?  Using common sense, you receive

25  money -- the general partnership receives money in

Page 76

1    repayment, and it turns out, what, two years later or

2    however long, it turns out it's a fraudulent transfer.  This

3    was a big, massive Ponzi scheme.

4           So, there's no way that's an obligation.  You have

5    to look at it through the general partnership -- the general

6    partners' perspective and the limited partnership's

7    perspective with regards to, you know, imposing liability on

8    a general partnership.  Again, we're not a general partner.

9    We're not talking about liability of the initial transferee

10   because the initial transferee was not my client.  The

11   initial transferee was the limited partnership.  So

12   hopefully I've made my point, Judge.  I don't want to beat a

13   dead horse.

14          THE COURT:  Very good.

15          MR. ROHER:  Okay.  And with regards to -- as -- my

16   client -- we filed -- my client filed an affidavit, again,

17   that states that he I guess informally dissociated once the

18   -- his -- the divorce proceedings were initiated by Wendy

19   Brown.  And so that, I believe, creates an issue of material

20   fact in response to the Trustee's Motion for Summary

21   Judgment.

22          And two minor points, Judge, but I think they're

23   worth noting.  Again, and this is response -- in response.

24   In response to the Trustee's request for summary judgment

25   being entered, I have a pending Motion to Compel Discovery

Page 77

1    Docket Entry 173 against Wendy Brown because I served

2    discovery prior to the discovery cut off that was never

3    responded to.  And also, if you look at Docket Entry 209-2,

4    Judge, which is the deposition transcript of -- filed of

5    Wendy Brown, 209-2, Page 130, there was an agreement on the

6    record, Judge, at the conclusion of the Trustee's deposition

7    of Ms. Brown.

8              And I cross-noticed it, and I wanted to ask

9    questions, but I didn't want to ask questions without the

10   documents.  I didn't want to ask questions until I got the

11   documents.  So, there was an agreement on the record to

12   renotice the deposition once I got the documents.  I've

13   still never gotten the documents.  I didn't have the chance

14   to depose the co-Defendant and representative -- and the

15   representative of the limited partnership.

16             Between that deposition and today, because you're

17   -- this was in early 2020, between that and today, we -- the

18   parties engaged in substantial and very -- the most lengthy

19   settlement discussions I've ever had in any case, which took

20   place over a period of months.  So, I did not push the

21   matter because I was very hopeful we could settle.  And

22   also, that was intervening COVID.  So, I did file a Motion

23   to Compel the documents from -- that were promised to me by

24   Mr. Burnfeld on the record if you want to look at Page 130.

25             And strangely, the Trustee took issue with that

1    after agreeing to that -- after agreeing to let me ask

2    questions once I got documents, the Trustee filed a response

3    in opposition to that request.  So, in the interest of

4    fairness, Judge, I -- it's just -- there's outstanding

5    discovery that precludes the entry of summary judgment in

6    favor of the Trustee.  So that's really -- that's -- outside

7    of -- I don't want to -- you know, I don't want to

8    regurgitate it -- things in -- the matters in response.  I

9    know we've been arguing for a long time, so I'll stick by my

10   papers.  But again, I think at this point, summary judgment

11   is improper due to the discovery being outstanding.  And

12   there's -- there are genuine issues of material fact raised

13   in the affidavit.

14            THE COURT:  Mr. Lambe, anything you wish to add?

15            MR. LAMBE:  Yes, Your Honor.  Just a few brief

16   points.  When the customer property was transferred to Ken

17   Wen, the claim arises under SIPA Section 78fff(2)(c)(3),

18   which is -- renders this case a little bit different because

19   of the SIPA overlay.  Florida Law can't pre-empt or

20   supersede SIPA given its fundamental goals.

21            Also, the liability of Ken Wen was fixed as of the

22   petition date, which was December 11, 2008, which was within

23   two years of the dissociation, and BLMIS had no notice of

24   the dissociation as of the petition date.  There is no

25   evidence that suggests that.

Page 79

1           At the outset of this hearing, Your Honor, Mr.

2    Roher stated that there is no genuine dispute that Mr. Brown

3    dissociated from Ken Wen on February 29, 2008.  Now we're

4    hearing that there is somehow a dispute of genuine fact here

5    or a genuine dispute of material fact based on the

6    affidavit.  Your Honor, I would submit to the Court that

7    this is a, you know, a last-minute effort that was raised

8    only in summary judgment and only in response to the

9    Trustee's Cross-Motion for Summary Judgment.  He's signed

10   documents as general partner of Ken Wen.  He submitted

11   transfer requests to BLMIS as general partner of Ken Wen,

12   which are -- can be seen in the Neiburg declaration,

13   Exhibits 5, 17, and 19.

14           Even the documents that are attached to Mr.

15   Brown's reply contradict this.  In Exhibit C, which is the

16   Affidavit of Partnership submitted by Wendy Brown, it states

17   that the dissociation took place as of the effective date,

18   which was in February of 2008.  Similarly, in the Agreement

19   of Partners, which is attached as Exhibit D to Mr. Brown's

20   Motion for Summary Judgment, it states that Mr. Brown was

21   relinquishing his interest as a general partner in Ken Wen

22   as of February 29, 2008.  Any attempt to argue otherwise,

23   Your Honor, is disingenuous and is not supported by any

24   evidence whatsoever other than Mr. Brown's self-serving

25   affidavit.  And just --

1           THE COURT:  You said some -- go ahead, Mr. Lambe.

2           MR. LAMBE:  I'm sorry.  Go ahead, Your Honor.

3           THE COURT:  No, no.  Finish.

4           MR. LAMBE:  Okay.  And then just finally, Mr.

5     Roher had discussed outstanding discovery.  The only thing I

6     could say with regard to that, Your Honor, is on December

7     30th of 2019, Mr. Moore -- Mr. Roher -- excuse me, Mr. Brown

8     did move to extend the fact discovery deadlines.  However,

9     on February 5th of 2020, this Court denied that Motion to

10    Extend Fact Discovery.  We're well beyond the point here,

11    Your Honor, and you know, to the extent anything else is

12    required, the Trustee would rely on its papers.

13          THE COURT:  Okay.  I want to rehear you again on

14    78fff(2)(c)(3).  You just said something, and you began, and

15    it was you're moving to recover fraudulent transfers against

16    the Defendant.  And you're saying that -- tell me what you

17    said.

18          MR. LAMBE:  Sure, Your Honor.  Basically, just

19    that once the claim arises under SIPA, under that Section of

20    SIPA 78fff --

21          THE COURT:  And when does that claim arise under

22    SIPA?  That's what I wanted -- I thought you were going to

23    say.

24          MR. CREMONA:  Your Honor, if I may interject, this

25    is Nicholas Cremona of Baker and Hostetler also appearing on

1    behalf of the Trustee.  If I could just field this question

2    if that's acceptable to the Court?

3                    THE COURT:  Right.  Please.

4                    MR. CREMONA:  Your Honor, I think what my

5    colleague --

6                    THE COURT:  I think you're conflicted out of this,

7    though, aren't you?  No, you're not.

8                    MR. CREMONA:  Yeah.  Right.  I was just going to

9    explain.

10                   THE COURT:  Okay.

11                   MR. CREMONA:  We were previously.  There was an

12   issue, but we are not.

13                   THE COURT:  Okay.

14                   MR. CREMONA:  So, Your Honor, sorry to interject,

15   but I think the point is that as my colleague Mr. Lambe was

16   saying, this case is very different because of the SIPA

17   overlay.  SIPA Section 78fff(2)(c)(3) deals with the

18   transfer of customer property, which is very unique to our

19   case.  And at the moment that that customer property is

20   transferred out of the estate, it becomes recoverable

21   wherever it may lie by the Trustee.

22                   And that, I think, is what Mr. Lambe is saying.

23   That at that moment in time when those funds are transferred

24   from BLMIS to any other entity, that gives rise to the

25   liability because that is -- that money was stolen from

1    other customers in this case and transferred to someone

2    else.  And that's when the claim arises.  And there is no

3    way that a Florida statute could any way pre-empt the

4    application of that section of SIPA.

5                THE COURT:  Okay, but here's the -- here's where I

6    need clarification.  That's to Ken Wen.  What about the

7    partners of Ken Wen?  Remember -- let me just say right now,

8    you have a default on Ken Wen.  I expect you to file the

9    notice of default and then file the judgment of default

10   against Ken Wen.  So that's to Ken Wen.  What about to the

11   partners of Ken Wen?  And does Florida law -- and I know

12   Section 3 is what you all are arguing kick in then.  What I

13   heard him say was SIPA.  So, you have a --

14               MR. CREMONA:  I think -- I'm sorry to interrupt,

15   Your Honor, but I --

16               THE COURT:  Wait a minute.  They filed an answer.

17   Ken Wen filed an answer, so there is no default.  You've got

18   to file -- did they file a default -- an answer to the

19   summary judgment?  They filed an answer in the case, so we

20   have to move forward.

21               MR. NEIBURG:  Yeah, Your Honor.  I'm sorry.

22   Michael Neiburg on behalf of the Trustee.

23               THE COURT:  Yes, please.

24               MR. NEIBURG:  Ken Wen filed an answer to the

25   amended complaint.

1          THE COURT:  Right.

2          MR. NEIBURG:  Ken Wen did not respond to the

3     Trustee's Motion for Summary Judgment as to Ken Wen.

4          THE COURT:  Oh, say so I grant the summary

5     judgment motion because no response has been filed with

6     that.

7          MR. NEIBURG:  Correct.  And as set forth in the

8     paper and in prior cases, the Trustee has proved his prima

9     facie case against Ken Wen.

10          THE COURT:  Okay.

11          MR. NEIBURG:  And Your Honor two -- I was just --

12          THE COURT:  So, let me just --

13          MR. NEIBURG:  Sorry, Your Honor.

14          THE COURT:  I just want to clarify that up --

15     clarify that because I want that put to bed.  So there has

16     been no answer filed to the summary judgment, so I'm

17     granting the summary judgment against Ken Wen, and I expect

18     you to file an order to that.

19          MR. NEIBURG:  Thank you, Your Honor.

20          THE COURT:  Do I hear any opposition to that?

21     Having heard none, please do so.  Okay.  So that's put to

22     bed.  We now know that Ken Wen has a summary judgment

23     against him.  Now then, tell me what you're saying

24     otherwise.

25          MR. NEIBURG:  Your Honor, to answer your question,

Page 84

1  fundamentally, Mr. Brown is arguing that there was no debt

2  or obligation on the part of Ken Wen at the time of the time

3  of the transfers.  I think Mr. Cremona just argued that

4  under SIPA, because customer property was transferred on

5  those transfer dates, Ken Wen in fact had a debt or

6  obligation at the time of the transfers because it received

7  elicit customer property.  Florida law says a general

8  partner will be liable for the debts of a limited

9  partnership.

10         Since Mr. Brown, for the first three transfers

11  that we walked through, was a general partner at the time

12  Ken Wen received customer property, he is liable as a

13  general partner for the debts of Ken Wen on those dates.  As

14  to the fourth transfer that occurred after Mr. Brown's

15  alleged February 29, 2008 dissociation, the exception that's

16  put forth that Mr. Lambe walked through does not apply

17  because it's less than two years from dissociation, did not

18  result in the dissolution of Ken Wen, and BLMIS had no

19  notice.

20         THE COURT:  Okay.  Well, then let me just say

21  something to you.  It's the In re Nelson case, which is

22  Bankruptcy Eastern District of Pennsylvania basically.  The

23  claims could not have been asserted prior to the filing of

24  the SIPA case, and therefore the commencement of the SIPA

25  case is the date when the fraudulent transfer claims become

1    a liability of the partnership, and that's what's being

2    argued.

3              MR. NEIBURG:  Well, I think to that, Your Honor,

4    the fallback position of the Trustee would be, even assuming

5    that reasoning's correct that Ken Wen's liability did not

6    accrue until the petition date, the Florida statute that Mr.

7    Brown's counsel raised says -- and I think Mr. Lambe pointed

8    out the first section, the dissociation in and of itself

9    does not obviate liability on part of the general partner.

10             THE COURT:  Okay.

11             MR. NEIBURG:  And because the --

12             THE COURT:  Go ahead.

13             MR. NEIBURG:  I'm sorry.  I was just going to say

14   because the dissociation and the petition date were less

15   than two years, if somehow Your Honor rules that the

16   liability of Ken Wen did not accrue until the petition date,

17   which I think we said was December 11, 2008, because Mr.

18   Brown's dissociation occurred within that two-year period

19   and BLMS had no notice, he's still liable for the debts of

20   the --

21             THE COURT:  Okay.

22             MR. NEIBURG:  -- limited partnership.

23             THE COURT:  What I haven't had is -- I know you

24   all have argued Section 3 in Florida law of that 06 whatever

25   -- .06 whatever, but Mr. Cremona, you're saying -- and I

1    want to be clear on this, does SIPA have a section when the

2    customer property arises?  The customer property -- the --

3    when the fraudulent transfer occurred.

4              MR. CREMONA:  Well, Your Honor --

5              THE COURT:  And that's what you were saying,

6    correct?

7              MR. CREMONA:  Yes, Your Honor.  Nicholas Cremona

8    again on behalf of the Trustee.  The moment that the funds

9    are entrusted with the broker, they become customer property

10   within the meaning of SIPA.  I believe the Trustee has

11   standing to recover that customer property the moment that

12   it's transferred to a third party --

13             THE COURT:  And did you --

14             MR. CREMONA:  -- which is covered by Section

15   78fff(2)(c)(3).  And that -- my point is that at that moment

16   in time, the claim arises under that section.

17             THE COURT:  Okay.  What you've basically said is

18   it's under -- and I think is a quote from your papers --

19   Section 548(a)(1)(A), 550(a), 551 of the Code 78fff(1)(a)

20   and 78fff(2)(c)(3) of SIPA.  So, you're strictly with the

21   Code Section of either Bankruptcy or SIPA.  So, we didn't

22   have any -- you didn't file anything else in your papers

23   except that one section of when the -- that one statement of

24   when the customer property became part of the SIPA action.

25   Is that correct?

1           MR. CREMONA:  I think that's correct, Your Honor.

2    And for the reasons that Mr. Neiburg said, I think then what

3    flows from that is that the property is recoverable for the

4    reasons he said.

5           THE COURT:  You seem pretty adamant about what

6    SIPA says, and all we have simply is a Code section.

7           MR. CREMONA:  Yes, Your Honor.  I think the

8    section -- I think it speaks for itself.  I know it's quoted

9    in the papers.

10          THE COURT:  Okay.  All right.  Anything else

11   anyone wishes to add?

12          MR. ROHER:  Just --

13          THE COURT:  Yes, sir.

14          MR. ROHER:  -- again, I appreciate the three

15   attorneys ganging up on me.

16          THE COURT:  Yeah, I noticed that too, Mr. Roher.

17          MR. ROHER:  But I think Mr. Lambe was --

18          THE COURT:  What you did not add were highly

19   sophisticated attorneys.  Just so you...

20          MR. ROHER:  Oh, I'm sorry.  Highly sophisticated,

21   although I think Mr. Lambe was doing a fine job.  But again,

22   Judge, and again, I think they're not -- that it's clear

23   that the Trustee can't answer or make -- or justify or make

24   the distinction here.  Again, you just entered summary

25   judgment in favor of the Trustee against the limited

Page 88

1    partnership, but that's not the issue here, Judge.

2            The issue is they -- you can't just -- the issue

3    isn't SIPA.  The issue isn't -- the issue is when did that

4    obligation of the limited partnership occur.  I mean,

5    there's -- that's -- that -- with regards to my client,

6    that's the issue, Judge.  And just because SIPA says --

7    whatever SIPA says that upon the transfer, that's related

8    directly to the initial transferee, the general partnership

9    here.  My client was not the initial transferee, was not

10   even the subsequent transferee.

11           There -- the Trustee can't have their cake and eat

12   it too.  Trustee can't look to Florida law and -- but when

13   that doesn't make sense look to SIPA law and vice versa.

14   The Trustee can't talk out of six sides of their mouths.

15   So, Your Honor, again, I think you've picked up on the issue

16   here that this isn't your simple straightforward case of

17   avoiding a fraudulent transfer against an initial

18   transferee.

19           This -- you have to look to Florida law, and

20   there's no way you can read -- respectfully, I don't believe

21   there's any way you can read an obligation arising upon the

22   receipt of a fraudulent transfer.  And I've provided -- I

23   actually did provide case law, Judge, that supports my

24   position with regards to lease obligations, which I think

25   you can look to as justification for, you know, denying

Page 89

1   summary judgment -- denying Trustee's summary judgment.

2           Or again, Judge, there -- if not for that, there's

3   discovery that's outstanding.  And again, there was an

4   agreement on the record, and I know Mr. Lambe didn't agree,

5   but I had an agreement with Mr. Lambe's predecessor, and I

6   waived my right -- or I waived my right to -- or I agreed

7   not to go forward that day and waste everyone's time taking

8   Ms. Brown's deposition because I didn't get the document

9   requests.  And I still haven't gotten the document requests,

10  and I would've asked various questions that I believe

11  answers of which could be useful in defeating summary

12  judgment that I haven't had the opportunity.

13          THE COURT:  Very good.  Anybody else wish to add

14  anything else?  I will issue a written opinion.

15          MAN 3:  Am I allowed to speak?

16          MR. ROHER:  No, no.  No.

17          MAN 3:  Okay.

18          THE COURT:  Thank you.  Thank you.

19          MR. ROHER:  May I be excused, Judge?

20          THE COURT:  Yes, you may.

21          MR. ROHER:  Thank you, Your Honor.  Thank you so

22  much for all your time.  I really appreciate it.

23          THE COURT:  Very good.  Well, I appreciate it too.

24          MR. LAMBE:  Thank you, Your Honor.

25          THE COURT:  Very good.  Chambers.

Page 90

1           (Whereupon these proceedings were concluded at

2      12:08 PM)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 91

1                              I N D E X

2

3                              RULINGS

4                                                Page       Line

5

6    Motion for Summary Judgement Granted        83         17

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Page 92**

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  February 24, 2022

**&**

**&** 9:11 12:18

**0**

**02/16/2022** 6:17 8:5
**05169** 12:4
**06** 85:24,25
**08-01789** 1:4
**08-99000** 1:3
**0899000** 12:9

**1**

**1** 30:10 41:12 42:12 43:5,15 46:13 49:16 53:5 56:1 58:6 59:24 60:17,22 61:1,5 65:8 66:19 70:10 70:25 72:1 86:19 86:19
**10** 12:3
**10-03622** 1:18
**10-04468** 2:1,10 6:8,20 7:13 8:1,9 8:15,20 36:8
**10-05169** 4:1,8,15 4:21 5:1,7,13 6:1
**10004** 2:22
**10020** 10:5
**10111** 9:6
**10118** 9:15
**10:00** 2:25 4:6,12 4:19,25 5:5,11,19
**11** 8:16 60:22 61:3 66:10,11 78:22 85:17
**112** 4:22
**11501** 92:23
**116** 6:3
**117** 6:1
**11th** 60:24
**12** 55:4

**12/15/2021** 4:6
**120** 4:8
**121** 4:15
**121-602** 21:11
**12151** 92:6
**122** 4:21
**123** 5:1
**124** 5:7
**126** 5:13
**1270** 10:4
**12:08** 90:2
**12th** 60:15,24 61:1
**130** 77:5,24
**1334** 55:11
**14** 44:18 46:4
**15** 29:18 46:7
**150,000** 60:5 64:24
**157** 55:11
**16** 2:24
**1607** 50:20 52:6 54:11
**17** 60:10 79:13 91:6
**173** 77:1
**174** 6:25 7:8,19 8:2,6,22 44:20
**178** 6:14,20 7:3,14 7:22 8:11,22
**17th** 47:17 50:24 51:21
**1806** 9:21
**185** 6:9
**19** 79:13
**194** 6:8
**195** 7:13
**197** 8:1
**1976** 45:1
**1993** 23:12
**19th** 38:21
**1s** 17:14 19:3

**2**

**2** 19:9 43:12,12,13 61:10,15 78:17 80:14 81:17 86:15 86:20
**2/16/2022** 4:12,19 4:25 5:5,10,19 7:23
**200,000** 60:11 61:17,18 64:8
**2000** 46:4
**2005** 27:16 30:7 30:12,15
**2006** 53:20 64:14 64:24 66:11
**2007** 23:3,9,13 29:1,4 30:1 59:21 60:5,8 64:25,25
**2008** 23:3,9,13 29:1,4 30:1 41:22 42:3 47:17,19 51:1,4,21 53:16 53:20,21,23 54:5 60:9,11,22 61:3 64:11 66:11 78:22 79:3,18,22 84:15 85:17
**2010** 22:19 24:18 60:15 61:1
**2011** 24:19
**2012** 43:23
**2014** 22:22
**2015** 22:21 24:14 24:20,25 25:12,19 26:25 33:6 34:18 58:17 63:2,6 65:22,25
**2016** 23:25 25:12 27:1 33:6
**2019** 80:7
**2020** 77:17 80:9
**2021** 40:24

**2022** 2:24 92:25
**203** 8:9,16
**204** 8:15
**205** 8:20
**209-2** 77:3,5
**2210** 10:4
**24** 92:25
**24th** 59:21,22 60:2,9
**26** 16:13 22:24 24:11,13 30:15 35:18 64:24
**26th** 59:22,24 60:5
**28** 55:11
**29** 79:3,22 84:15
**29th** 41:22 42:3 51:1 53:16 54:5

**3**

**3** 43:12 46:15,16 47:4,24 48:8,21 49:19,19 50:20,21 52:6 54:11 60:9 64:3 69:20 78:17 80:14 81:17 82:12 85:24 86:15,20 89:15,17
**3.85** 60:11
**300** 9:21 92:22
**30th** 80:7
**31** 64:25,25
**31st** 60:8
**330** 92:21
**33028** 9:22
**34** 16:9 18:18 45:1
**350** 9:14
**37** 16:11 17:6
**3rd** 65:22

**4**

**4** 59:14
**40** 19:12
**45** 9:5

**4640**  9:14

**5**

**5**  44:19 79:13
**500,000**  60:8
  64:24
**53**  45:1
**546**  58:3,5 63:19
**548**  53:5 56:1,10
  58:6 63:19 66:19
  70:10,25 86:19
**550**  86:19
**551**  86:19
**576**  46:4
**583**  46:4
**584**  46:4
**586**  46:7
**5th**  9:14 80:9

**6**

**6.2**  57:12
**62**  65:24
**620**  42:11
**620.1607**  40:24
  41:17 64:22 65:8
**620.1607.**  40:3
  73:17
**6230.1607**  49:16
**67**  59:11

**7**

**7**  8:16
**7012**  55:6
**7056**  71:23 72:1
**7056-1**  72:7
**78fff**  78:17 80:14
  80:20 81:17 86:15
  86:19,20

**8**

**8182**  46:3
**83**  91:6

**9**

**94**  4:1,10,17,23
  5:3,9

**95**  55:1

**a**

**a.d.2d**  45:1
**able**  29:21 64:4
**absent**  21:22
**absolutely**  35:2
**accept**  53:17
**acceptable**  81:2
**accepted**  54:21
**accommodating**
  39:22
**account**  14:25
  16:2 19:23,25
  20:3,7,10 57:7
**accountant**  30:8
**accounts**  33:17
  57:6 71:16
**accrue**  85:6,16
**accurate**  42:17
  92:4
**acknowledges**
  70:16
**action**  13:6 59:10
  74:2,21 86:24
**activities**  46:19
**activity**  49:23
**actual**  56:11 58:6
  58:25 60:18,20,21
  63:3 67:3,10
  68:11
**adam**  4:22 17:9
  22:12 24:9
**adamant**  87:5
**add**  14:14 58:20
  78:14 87:11,18
  89:13
**addition**  72:3
**additional**  6:3
**address**  14:19
  55:15 57:2
**addressed**  56:22
**addresses**  32:24

**adequately**  32:24
**adjourned**  4:12
  4:18,24 5:4,10,19
  6:8 7:13 8:1
**adjournment**  4:8
  4:15,21 5:1,7,13
**admissible**  16:4
  67:23 72:4
**admission**  15:11
  27:4 31:22 67:10
**admissions**  15:18
  15:20,22
**admit**  15:13 31:10
  31:18,22,24 32:2
  32:9
**admits**  59:5 67:2
  67:5
**admitted**  15:15,19
  16:25 32:5 39:20
  72:2
**adv**  1:4,18 2:1,10
**adversary**  12:3
  24:5 60:19 61:19
  68:20 69:9 73:25
**advisory**  57:13
  71:12
**affairs**  63:1
**affect**  69:13,21
**affidavit**  23:2,2
  23:25 27:15,16,18
  27:18 28:8 33:9
  35:10 64:13 72:10
  72:12,13 76:16
  78:13 79:6,16,25
**affidavits**  28:1
  33:3,7 65:17,20
**affiliation**  12:10
  36:11
**affirmation**  27:3
**ago**  13:3 18:8 29:7
  38:13
**agree**  14:1 46:20
  49:5 89:4

**agreed**  73:3 89:6
**agreeing**  78:1,1
**agreement**  21:8
  23:20,21 24:2
  26:11 30:4 45:22
  73:5 77:5,11
  79:18 89:4,5
**agreements**  17:13
  20:21 21:2
**ahead**  38:10 52:4
  53:13 62:3,19
  69:1,3 73:11 80:1
  80:2 85:12
**akin**  75:19
**al**  1:15,20,23 2:7
**allegations**  53:21
  53:22 54:1 72:8
**allege**  54:7
**alleged**  19:9 84:15
**allocutions**  67:19
**allowed**  16:13
  89:15
**amended**  55:12
  59:25 82:25
**america**  57:6
**americas**  10:4
**amount**  30:13
  59:19,21 60:5,8,9
  60:11 61:17
**ample**  67:7
**amplify**  14:17
**analysis**  67:25
  69:21
**ands**  28:6
**announce**  73:3
**answer**  25:5,7
  31:20 32:8 34:22
  49:4 56:20 58:13
  70:1 82:16,17,18
  82:19,24 83:16,25
  87:23
**answered**  34:18

**answers**  24:24
  25:1 89:11
**anticipate**  33:13
**anybody**  89:13
**anymore**  46:1
**apologies**  60:4
**apologize**  25:20
  48:6 69:5
**app**  45:1
**appear**  13:6 34:23
  65:19
**appearance**  73:3
**appearing**  12:12
  12:15,18 34:15
  80:25
**appears**  58:3
**applicable**  43:13
  48:21 50:19 52:7
  55:5 65:13
**application**  82:4
**applied**  16:20
  52:20
**applies**  46:14
**apply**  47:5 49:17
  84:16
**applying**  58:24
**appreciate**  31:7
  87:14 89:22,23
**appropriate**  49:1
  49:2
**approximately**
  50:24
**argue**  15:1 33:18
  63:7 72:19 79:22
**argued**  46:7 84:3
  85:2,24
**arguing**  13:19
  78:9 82:12 84:1
**argument**  15:4,7
  20:6 26:15 31:10
  39:2 41:15 45:3
  47:6,11 54:3,8
  57:14 58:1,4 59:4

59:4 63:7,12,22
  64:2 69:13 72:20
  73:22
**arguments**  32:25
  48:23 51:11 54:18
  55:2,14 56:16
  58:7 65:12 71:12
  72:18
**arises**  52:11,18
  63:13,17,18 68:23
  70:19,21 75:8,16
  78:17 80:19 82:2
  86:2,16
**arising**  46:9 88:21
**arose**  61:8 68:20
  69:8,10,11,15
  70:12 73:19 74:25
**articles**  17:12,21
  18:22 71:14
**aside**  19:20
**asked**  23:14 89:10
**asking**  25:24 26:8
  26:18,19 47:9
**assert**  15:25 59:3
**asserted**  24:16
  84:23
**asserting**  15:6
  58:6 59:2
**assertion**  56:10
**assets**  71:18
**associates**  2:16
  12:6 46:4
**assume**  33:3
**assuming**  85:4
**attach**  21:5,8
**attached**  15:23
  18:1 19:22 22:14
  26:12 30:4 33:2,7
  65:17 79:14,19
**attaches**  41:20
  54:3
**attaching**  27:16
  27:17

**attachment**  35:17
**attempt**  22:2
  79:22
**attempted**  16:17
**attempting**  20:14
  20:15
**attorney**  25:17
**attorneys**  9:4,12
  9:20 10:2 87:15
  87:19
**avellino**  50:13
**avenue**  9:14 10:4
**avoidable**  66:19
**avoiding**  88:17
**awarded**  21:23

**b**

**b**  3:1 6:14 7:1,9
  7:19 8:23 48:21
  48:21 59:25 65:17
**back**  22:9,18
  23:25 25:16 27:8
  27:21 28:20,21
  29:6 36:7 57:14
  61:9 68:17
**baker**  9:3 12:12
  12:15 26:25 80:25
**balance**  58:7
**bank**  57:6,6
**bankruptcy**  1:1
  2:20 3:3 55:5,12
  58:16,23,24 59:2
  59:10,12,13 62:13
  62:17,21,25 63:4
  63:6 65:16,19,22
  68:23 84:22 86:21
**bar**  58:25 59:6
**barbro**  44:25
  45:19
**barry**  4:10,17,23
  5:3,9 9:17 12:17
**based**  64:20,22
  79:5

**basically**  14:7
  80:18 84:22 86:17
**basis**  20:23 30:23
  68:10
**batches**  67:25
  68:9
**beat**  76:12
**bed**  83:15,22
**began**  80:14
**beginning**  33:12
**behalf**  4:3,11,17
  4:23 5:3,9,16 6:4
  6:14 7:1,9,19 8:3
  8:11,17,23 12:12
  12:15,18 13:22
  34:15,18,19,20,24
  36:13,16,19 42:16
  43:2 66:7 68:4
  81:1 82:22 86:8
**belabor**  54:11
  56:6 66:24 68:15
  71:9
**believe**  37:1 42:5
  42:7,8 48:12,21
  49:19 50:19,25
  52:6 54:7 58:16
  59:8,24 60:1
  61:22 63:1 65:11
  65:23 68:22 69:14
  69:21 70:20 76:19
  86:10 88:20 89:10
**beneficiaries**
  28:20
**benefit**  57:8
**bernard**  1:8,15
  2:3,12 4:4,5 5:17
  5:18 6:5,6,15,16
  7:2,3,10,11,20,21
  8:24,25
**bernfeld**  38:12,16
**bernie**  36:9 51:13
**best**  44:23,23

**better** 15:21 64:14
72:24
**beyond** 56:15
67:10,23 80:10
**bianca** 11:1
**big** 25:13 76:3
**biggest** 31:10
**bit** 22:18 25:13
47:11 61:7 74:1
78:18
**blindness** 56:12
**blmis** 15:22 19:23
33:17 47:16 51:19
54:14 56:3,14
61:3 66:11,13
67:2,3,6,17,18
68:1,3,4 71:10,12
71:13,14,15,20
78:23 79:11 81:24
84:18
**blms** 85:19
**bmlis** 12:5
**boccuzzi** 10:15
**bogus** 34:16
**bonne** 5:2
**bonnie** 4:11,18,24
5:4,9 12:7,20 14:8
18:1 22:25 25:4
28:7 35:8,16
**bonny** 9:13
**books** 15:22 75:22
**bottom** 35:2
**bowling** 2:21
**boy** 73:7
**breach** 46:11
**break** 34:25 35:25
**brian** 5:8
**brief** 14:18 15:18
20:25 32:24 35:7
71:4 73:14,15
78:15
**briefly** 21:19 35:4
35:6 65:15

**broker** 57:21 86:9
**brought** 29:19
56:22 57:1 70:14
**brown** 6:12,23 7:6
7:17 8:3,12,17,22
9:20 10:11 36:19
36:20,22,23 37:17
37:20,25 38:2,7
38:14 41:25 51:3
51:19,20,23,24
53:15,19 54:3,4,9
54:13,15,21,24
55:14,24 56:7
57:4,11,13,18,19
57:24 58:3 59:3,5
59:9,13 62:24
65:18,22 66:8,8,9
66:21 67:2,5,13
67:20 69:16 71:24
72:3 76:19 77:1,5
77:7 79:2,16,20
80:7 84:1,10
**brown's** 7:5 46:20
53:8 54:6 56:1,10
56:17,18 62:21
63:3,6,25 72:12
79:15,19,24 84:14
85:7,18 89:8
**browns** 6:10,22
7:15
**bullet** 71:2
**burden** 16:3 20:1
20:7,8,10,17 23:4
33:13,14,20,20
74:13
**burnfeld** 77:24
**business** 57:13
71:12
**butler** 10:12
**buts** 28:7

**c**

**c** 9:1 10:7,13,17
12:1 16:11 41:20
56:10 59:7 78:17
79:15 80:14 81:17
86:15,20 92:1,1
**cake** 88:11
**call** 12:4
**called** 73:9
**calling** 74:2
**can't** 20:16 28:1,7
28:8,9 31:21
**capacity** 8:3,12,17
38:1,5
**careful** 18:6
**carmine** 10:15
**carry** 20:17
**case** 1:3,4,18 2:1
2:10 13:19 16:22
17:1 24:18,24
26:3 27:11,12,14
27:22 28:17 29:10
30:7 31:20,25
32:1,5,17 33:14
33:21 36:2 43:4,9
44:18,23,25,25
45:2,9,14 46:25
50:12 55:18 57:9
58:9 62:17 63:6
63:10 66:2 67:13
68:1 69:6 70:13
74:20,24 75:10,12
75:12,19 77:19
78:18 81:16,19
82:1,19 83:9
84:21,24,25 88:16
88:23
**caselaw** 20:24
44:4,17 46:12
**cases** 21:25 44:23
52:13,15,16,17,19
53:1 55:11 58:5
60:19,21 66:17

83:8
**ceased** 15:2 16:1
18:25
**cecelia** 3:2
**center** 10:3
**central** 73:16
**certain** 49:17
**certainly** 63:9
**certificate** 65:23
**certified** 92:3
**cgm** 1:3,4,18 2:1
2:10 4:1,6,8,13,15
4:19,21,25 5:1,5,7
5:11,13,20 6:1,8
6:18,20 7:13,23
8:1,7,9,15,20
**chambers** 89:25
**chance** 77:13
**channels** 33:6
**chase** 28:24
**chief** 3:2
**christopher** 10:7
36:15
**circuit** 52:20 68:8
69:6 70:12 72:13
**circumstances**
22:24
**citations** 72:3
**cite** 20:25 45:19
70:17
**cited** 44:17 46:3
46:13 52:12,15
63:11
**citibank** 1:23
**civil** 22:16 24:4
31:4 32:20 35:1
55:4
**claim** 52:10,21,23
53:4 63:4,5,13,16
63:17,18 66:6,24
68:23 70:5,12,14
70:15,19,19,21
78:17 80:19,21

[claim - court]                                                            Page 5

82:2 86:16
**claims** 24:16 59:2
  63:15 84:23,25
**clarification** 82:6
**clarify** 83:14,15
**clauses** 21:2
**claw** 28:21 29:6
**clawback** 63:14
  63:20
**clear** 14:7 16:20
  19:24 23:17 30:21
  31:21,25 40:19
  59:15 63:23 69:17
  86:1 87:22
**clearly** 28:4 34:5
**client** 16:25 41:21
  43:21 44:2 45:25
  47:6 64:4,12,12
  64:23 65:12 74:16
  76:10,16,16 88:5
  88:9
**client's** 43:10
  45:25
**close** 52:5
**closed** 18:7 26:5
  26:16,17
**code** 55:12 58:24
  68:23 86:19,21
  87:6
**coherent** 73:4
**colavecchio** 10:23
**colleague** 81:5,15
**come** 62:14 68:17
**commencement**
  84:24
**comments** 52:8
  71:5
**commercial** 52:18
**common** 75:24
**communicated**
  18:6
**communicating**
  40:10

**company** 45:1
**compel** 27:23
  29:17,19 76:25
  77:23
**complaint** 25:7
  34:19 54:22 59:8
  59:25 60:14 73:25
  74:1 82:25
**complete** 55:16
**conaway** 10:1
  36:13,16,25
**concealed** 68:1
**concede** 14:23
  20:4
**conceded** 14:6
  22:11
**conclude** 21:19
**concluded** 21:21
  90:1
**concludes** 56:16
**conclusion** 77:6
**conclusively** 21:6
**conduct** 17:2
  52:22 70:13,22,22
**conduit** 55:15
**confirm** 59:23
**confirmation**
  65:21
**confirmed** 66:1
  67:6,17
**conflate** 55:24
**conflicted** 81:6
**confused** 25:13,14
  37:6 39:9 47:11
**confusing** 39:10
**congress** 57:19
  58:1
**connection** 26:14
  26:14 66:15 70:18
**consequence** 17:6
**consequences**
  18:18 22:3

**consider** 17:18
  21:16 72:8
**consideration**
  20:24 68:3,7
**consisted** 53:2
  68:7
**consistent** 22:5
  27:18
**constitute** 45:3
**contemplate** 52:9
**contemplated**
  56:9
**contention** 42:17
  43:17 45:24 46:25
**contest** 13:4 15:1
  66:13
**context** 18:6
**continue** 26:23
  27:1 58:9
**contradict** 54:3
  79:15
**contrary** 56:10
**control** 40:11
  55:16,19,23 57:4
  57:16
**controverted**
  71:24
**conversation**
  53:15
**conversion** 67:8
**conveyed** 66:12
  71:11,21
**core** 19:22
**corporation** 1:12
**correct** 13:15,16
  13:25 14:10,13
  19:8 25:25 33:3
  37:7,9,12 38:20
  41:1,2 47:14,22
  48:20 68:19,21
  70:6,8,16 83:7
  85:5 86:6,25 87:1

**correcting** 25:19
**could've** 63:7
**counsel** 16:23,24
  23:14 27:20 32:16
  34:16 35:2 54:21
  59:11,12 62:21,25
  85:7
**counterstatement**
  4:16
**country** 92:21
**couple** 22:7
**course** 46:14 51:9
  57:3
**court** 1:1 2:20
  12:2,22 13:8,12
  13:16,18,23 14:2
  14:5,11,14,18
  17:16,23 18:1,4
  19:7,9,18 21:16
  21:16,21 22:7,11
  24:3,8,12,18
  25:13,16,21 26:1
  26:6,18,21,23
  29:13 30:18 31:2
  31:8,12,14,16
  32:6,12,15 33:22
  34:8 35:6,12,20
  35:22,25 36:3,5,7
  36:21,24 37:3,6
  37:10,15,18,23
  38:4,8,18,21 39:1
  39:4,8,12,14,20
  40:5,10,14,16,19
  40:21,23 41:3,6,8
  41:13 42:2,4 44:6
  44:10,12,15 45:2
  46:5,7 47:11,16
  47:20,23 48:2,4
  48:15,18,22 49:2
  49:6,9,11 50:9,10
  50:16 51:7,10,17
  52:2,13,15,21
  53:1,10,13 55:8,9

55:25 56:1,8,21
56:25 57:21 58:4
58:12,14,19 59:15
59:19,22 60:1,6
60:12,16,20,24
61:4,6,13,16,18
62:1,3,6,10,13,16
62:19,22 64:2
65:3,5 66:7,17
67:1,11 68:8,16
68:25 69:3,6,10
69:12,22,25 70:5
70:9,11 71:1,6,11
71:15,23 72:8,13
72:19,21 73:1,2,6
73:11,13 74:11,19
75:10,12 76:14
78:14 79:6 80:1,3
80:9,13,21 81:2,3
81:6,10,13 82:5
82:16,23 83:1,4
83:10,12,14,20
84:20 85:10,12,21
85:23 86:5,13,17
87:5,10,13,16,18
89:13,18,20,23,25
court's  66:16
  73:15
courts  29:15
cover  68:6
covered  86:14
covid  77:22
craig  10:24
create  45:6,17
created  43:25
creates  43:1 76:19
creating  20:11
  21:17
creditor  58:25
  63:15
creditor's  59:2
creditors  67:4
  68:2

cremona  5:16 6:4
  9:8 12:11,12 27:9
  80:24,25 81:4,8
  81:11,14 82:14
  84:3 85:25 86:4,7
  86:7,14 87:1,7
criminal  67:19
cross  6:11,22 7:5
  7:16 8:10,21
  37:10,19 53:25
  72:5 77:8 79:9
crossed  19:11
cure  29:13
current  40:24
customer  53:3,4
  67:9 68:5 70:23
  71:17 78:16 81:18
  81:19 84:4,7,12
  86:2,2,9,11,24
customers  57:20
  68:5 82:1
cut  77:2

d

d  12:1 41:20,21
  72:1 79:19 91:1
date  42:1,2 51:2
  53:18 58:25 59:7
  61:2,12,14 64:11
  68:20 69:9,10,17
  69:19 78:22,24
  79:17 84:25 85:6
  85:14,16 92:25
dates  59:16 68:18
  69:7 84:5,13
david  4:3 11:3
day  28:3 29:18
  30:16 89:7
de  8:16
dead  76:13
deadlines  26:18
  80:8
deal  27:20 29:21
  46:14 48:25

dealing  39:19
deals  42:13 57:21
  81:17
dealt  52:17
debate  19:21
debt  45:3,6,6 84:1
  84:5
debtor  1:10 70:15
debtors  56:2
debts  50:11,16,23
  54:16 84:8,13
  85:19
decade  13:2
december  24:14
  60:8,22,24 61:3
  64:25,25 66:10,11
  78:22 80:6 85:17
decided  35:9
  66:25
deciding  72:8
decision  21:22
declaration  4:22
  5:2,8 18:2 19:7
  22:15 27:3 30:5
  35:8,17,17 72:15
  79:12
declarations  17:9
deemed  15:15,19
  72:2
default  38:22,25
  45:8,22 65:23
  75:14 82:8,9,9,17
  82:18
defaults  75:18
defeat  64:4
defeating  89:11
defeats  35:19
defend  38:14
defendant  2:18
  6:10,12,13,21,23
  6:24 7:4,6,7,15,17
  7:18 8:22 27:6
  36:19 37:7,17,21

38:18 68:19 69:8
  77:14 80:16
defendant's  58:16
defendants  1:16
  1:24 2:8 6:2 9:12
  12:19 14:23 15:6
  15:8,17,21,25
  16:6,9,17,20 17:3
  17:8,20 18:14,21
  20:4 21:5,24,25
  28:17 29:3 30:2
  32:2,3,11 33:16
  34:18,19,21 38:13
defendant's  15:16
  16:3 18:13 25:1
defending  74:8,10
defense  15:25
  33:13 35:1 55:15
  58:5
defenses  24:16
  56:9
definitely  72:24
defraud  67:4,10
  68:11
defunct  22:20
  34:14,23
delay  67:4
deliberate  16:21
delinquency
  24:25
delinquent  27:25
demand  16:9
  18:18 34:22 45:13
demands  15:10
  34:1
demonstrate  19:4
  19:5 21:3 33:22
demonstrates
  16:4
denied  25:2,6
  29:10 31:19 32:2
  32:7 80:9

[deny - eight]                                                                    Page 7

**deny** 21:22
**denying** 88:25
  89:1
**depose** 35:9 67:22
  77:14
**deposition** 54:2
  77:4,6,12,16 89:8
**described** 16:24
**determined** 46:5
**determining**
  30:25
**devote** 15:17
**didn't** 15:9,10,11
  17:10 22:13 23:23
  24:16 28:8 31:15
**died** 22:23 25:19
**dielai** 10:14
**different** 25:21
  40:8 50:14 74:20
  78:18 81:16
**directed** 14:3
**directly** 88:8
**discharge** 43:7
  58:23 59:1 65:9
**discharged** 20:8
**disclose** 16:18
  17:10,11 18:16
  22:24 33:25
**disclosed** 16:7
  17:4 18:9,12
  20:13 22:13 24:1
  24:1,5,7,10,19,20
  25:4,4,21,23 26:7
  26:12 33:1,6,8
  35:8,18
**disclosure** 17:24
  22:25 24:11,13
**disclosures** 16:8
  18:13 24:22 25:3
  26:9 30:16 33:2
  34:20
**discover** 29:25

**discovery** 15:5,9
  16:22,24 17:1,11
  17:17 18:7,8,10
  22:1 25:23 26:4
  26:16,17 27:1,3,7
  28:9 29:16,23
  30:24 76:25 77:2
  77:2 78:5,11 80:5
  80:8,10 89:3
**discretion** 21:22
**discuss** 56:3 63:16
**discussed** 17:1
  18:5 49:18 64:13
  80:5
**discusses** 57:19
  75:13
**discussing** 21:20
  70:13
**discussions** 77:19
**disingenuous**
  79:23
**dismiss** 24:23
  25:2 53:23 54:25
  55:7
**dismissed** 38:19
  57:9
**dispositive** 15:12
  34:5
**dispute** 14:1 16:5
  20:4 23:5,7,7
  28:10 31:23 41:19
  51:2 53:18 54:9
  59:14 61:11 66:9
  66:11 67:3 68:13
  71:7 79:2,4,5
**disputed** 45:24
**disputing** 15:18
**disregarding** 35:2
**dissociated** 43:10
  43:21 44:2 46:17
  47:7 49:21 51:3
  53:15,22 54:4
  64:15 76:17 79:3

**dissociation** 43:6
  43:9,17 44:1
  46:18,20,24 47:2
  47:3 48:17,19
  49:22,25 50:5,6
  51:1,19 64:7 65:9
  65:11,13 69:17
  78:23,24 79:17
  84:15,17 85:8,14
  85:18
**dissolution** 46:18
  47:14 49:22 84:18
**dissolutionment**
  51:13
**dissolved** 13:2
  43:22
**distinction** 51:22
  63:21 70:17 74:17
  87:24
**distinguish** 21:24
**distribution** 28:12
**distributions**
  23:10 28:17 29:4
**district** 1:2 52:21
  55:9 59:9 84:22
**div** 45:1
**divorce** 76:18
**doc** 4:1,8,15,21
  5:1,7,13 6:1,8,9
  6:20 7:3,13,14 8:1
  8:2,9,15,20
**docket** 44:19 55:1
  65:24 77:1,3
**document** 4:10,17
  4:23 5:3,9 6:3,14
  6:25 7:8,19,22 8:6
  8:11,22 15:9 16:9
  18:18 19:16,21,22
  20:20 21:6 23:11
  23:21 27:5,24
  34:1,21 89:8,9
**documentation**
  27:17

**documents** 16:6
  16:10 17:19 18:1
  18:21,25 19:24,24
  20:14,25 22:14
  23:15,19,24 25:21
  25:22 26:3,7,11
  26:13 27:19 30:4
  33:1,2,7,8,25 34:2
  34:2,4,7 54:2
  77:10,11,12,13,23
  78:2 79:10,14
**doesn't** 19:16,22
  29:24 33:10 88:13
**doing** 16:25 28:13
  28:14 29:8 73:6
  87:21
**dominion** 55:16
  55:18,22 57:4,16
**don't** 13:4,5 17:3
  18:15,21 30:22
  33:4 78:7
**duda** 10:21
**due** 45:21 78:11

---

                    **e**

**e** 3:1,1 9:1,1 10:12
  12:1,1 16:13
  36:19 58:3,5 72:7
  91:1 92:1
**earlier** 29:20
  45:12 54:8,12
  57:9,14 67:1
  70:20 74:1
**early** 38:19 77:17
**eastern** 84:22
**eastes** 10:22
**eat** 88:11
**ecro** 3:5
**eds** 71:14
**effective** 79:17
**effectuate** 21:10
**effort** 79:7
**eight** 50:25,25

**either** 24:15,17
43:19 45:12 61:9
86:21
**element** 57:4
68:12 71:10
**elements** 56:5
66:23
**elicit** 84:7
**elizabeth** 11:4
**email** 29:17
**employees** 67:18
**empt** 78:19 82:3
**engaged** 77:18
**entered** 13:9 14:3
14:21 20:17 38:25
42:24 46:23 49:24
65:22 74:9 76:25
87:24
**entering** 66:7
**enters** 50:3 74:11
**entire** 15:17 37:24
**entirely** 53:2 68:7
**entities** 28:15,24
**entitled** 28:24
64:23 67:12,15
**entitlement** 33:15
**entity** 22:20 30:14
81:24
**entrusted** 86:9
**entry** 44:19 77:1,3
78:5
**envision** 29:9
**epiphany** 40:1
**epstein** 21:21
**equal** 56:9
**especially** 45:14
64:3 74:13
**essentially** 31:22
40:8 47:5
**establish** 21:6
28:4,10,11 55:25
**established** 15:23
23:7 30:16 67:24

**establishes** 23:22
30:7,9 53:19 68:1
**establishing** 68:10
**estate** 12:7,8,21
14:8,9 27:12
81:20
**estates** 28:21 29:6
**estate's** 27:19
**et** 1:15,20,23 2:7
**event** 18:20
**everyone's** 89:7
**evidence** 15:7
16:4,4,14,19 17:5
17:18 20:11,16
21:15,16,17 23:8
23:8 30:22,23
33:10 41:24 45:15
51:18 53:19 67:20
67:25 72:4 75:21
78:25 79:24
**exact** 30:13
**exactly** 17:7 51:15
**excellent** 36:21
**exception** 47:4
52:6 84:15
**exceptions** 43:11
43:14 49:17,18
**exchanged** 24:22
30:10
**exclude** 30:22,23
**excuse** 12:24
20:22 31:19 34:11
41:6 44:6 80:7
**excused** 36:1,3
89:19
**executor** 12:20
**exhibit** 19:9 41:20
59:7,25,25 65:17
72:11 79:15,19
**exhibits** 8:16
17:10 43:23 79:13
**existence** 68:9

**expand** 40:22
48:5
**expect** 82:8 83:17
**expert** 26:17
67:23
**expert's** 67:21
**experts** 67:5,16
67:22
**explain** 81:9
**expressly** 54:21
**extend** 14:3,22
28:19 80:8,10
**extent** 32:20 53:6
56:19 59:3 80:11
**extraordinary**
40:25

**f**

**f** 3:1 72:1 92:1
**face** 58:5
**facie** 20:1,8 33:14
33:14,21 83:9
**fact** 4:16 14:24
16:20 18:16 20:11
21:18 22:1,23,23
23:6 25:19 26:16
28:8,10,10 29:14
31:22 51:3,6,19
51:25 52:9 53:17
53:20 54:9 57:10
59:6 66:5,13,15
66:16 67:2,6,17
71:20 74:16,20
76:20 78:12 79:4
79:5 80:8,10 84:5
**facts** 6:3 23:5 24:1
24:15 28:4 29:25
68:2 71:25 72:1
**factual** 16:5
**factually** 30:25
**fail** 58:2 59:4
**failed** 18:17 21:5
21:8 57:21 72:3

**failing** 18:16
54:25
**fails** 15:4 16:11
**failure** 15:11,16
16:15,18 59:1
**failures** 17:17
**fair** 32:6
**fairfax** 22:21
23:22 30:12,17
**fairfield** 1:20 2:16
12:5 13:2,9 15:24
18:13,24 19:1,4
19:10 20:2 21:7
22:19 30:11,14
31:11,18 32:10
33:18 34:14,22
**fairfox** 12:6 13:10
17:13,14,14,22
18:23 19:3 20:22
**fairness** 78:4
**faith** 21:25
**fallback** 85:4
**family** 2:7 6:13,24
7:7,18 8:4,13,18
28:18 29:3 36:10
37:22,25 38:1,8
38:22 41:18
**far** 67:21
**fare** 15:21
**favor** 14:21 20:17
66:18 78:6 87:25
**february** 2:24
41:22 42:3 47:19
51:4 53:16,22
54:5 79:3,18,22
80:9 84:15 92:25
**federal** 34:25 55:4
**feel** 49:1
**fictitious** 53:2
56:8,14 68:2,7
**field** 81:1
**file** 38:17,23 63:4
63:5,16 77:22

82:8,9,18,18
83:18 86:22
**filed** 4:2,10,17,23
5:3,9,15 6:3,14,25
7:8,19 8:2,11,16
8:23 24:6,25 25:6
34:17 37:17,19
39:6,12,14 44:2
45:12 55:1 59:8,9
60:14 65:24,24
72:11 76:16,16
77:4 78:2 82:16
82:17,19,24 83:5
83:16
**filing** 8:16 25:1
43:24 60:13,18,18
60:21 65:16 69:10
73:25 84:23
**filings** 38:16
39:24 54:3
**final** 47:16 71:10
**finally** 60:10 80:4
**financial** 63:1
**find** 40:13 51:12
**findings** 67:18,21
**finds** 52:15
**fine** 45:23 87:21
**finish** 69:3 71:1
80:3
**firm** 38:12
**first** 15:4 17:5,21
26:14,15 39:7,14
39:16 40:25 49:11
51:11 52:8 54:19
55:20 57:3 59:20
62:7 64:5,24
72:20,24 73:2,2,7
84:10 85:8
**firsthand** 30:8
**five** 18:8 32:17
57:25
**fixed** 78:21

**fl** 9:22
**flamingo** 9:21
**florida** 40:2,3,6
40:23,24 41:19
43:2 44:7 49:16
50:13,14 52:7
58:23,24 59:9
62:17 65:8,14,16
68:19 69:8,11,13
73:17 75:4,5,6,8
78:19 82:3,11
84:7 85:6,24
88:12,19
**flows** 87:3
**flp** 51:23,24
**focus** 30:5 35:18
47:23 48:7
**focusing** 13:23
**folks** 57:23
**follow** 31:4
**followed** 22:16
**following** 50:1
**foregoing** 92:3
**form** 33:5 71:14
**formally** 13:6
**formation** 71:19
**former** 54:20
62:24
**forth** 41:24 64:13
83:7 84:16
**forward** 82:20
89:7
**found** 44:23 45:2
**four** 26:4 47:12
61:11 64:6
**fourmaux** 10:13
**fourth** 60:10
69:19 84:14
**frame** 15:19
**frankly** 17:2
42:22 43:21 44:22
74:10 75:1

**fraud** 67:25 68:9
**fraudulent** 28:25
43:1 45:5,10,11
45:14 47:2 50:18
52:11,16,25 53:5
54:13 55:17,25
58:6 63:13,17,18
66:9,19,20 68:13
70:5,6,15,19,21
70:25 71:8 73:19
75:9,21 76:2
80:15 84:25 86:3
88:17,22
**front** 36:25 40:2
59:17
**fully** 56:3
**fundamental**
78:20
**fundamentally**
15:5 84:1
**funds** 55:17,19,20
55:23 57:5,10,15
57:16 67:9 68:5
70:23 81:23 86:8
**further** 8:21 22:4
53:19 58:11
**furthermore** 46:3
51:6
**furthersupport**
5:15

**g**

**g** 3:2 12:1
**ganging** 87:15
**gears** 66:3
**general** 8:4,12,18
13:1,3,23 14:3,22
14:24 15:2,2,14
15:24 16:1 18:24
19:1,2,4,6,25 20:2
20:5,9,12,18 21:6
21:11 22:20,22
23:9,12,22 25:7
28:5,12 29:5,24

30:3,9,17,25
31:18 33:15,17,19
34:6,15,24 38:1
41:21,25 43:6,7
43:19,22 44:21
45:5,15,25,25
46:1,8,17 47:7,8
48:9 49:21 50:2
50:11,14,17,19,22
50:23 51:25 52:1
53:20 54:10,16
57:18 64:16 65:10
66:22 69:16,18
74:17,22 75:17,25
76:5,5,8,8 79:10
79:11,21 84:7,11
84:13 85:9 88:8
**generally** 72:12
**genuine** 16:5
20:11 21:18 33:22
53:18 54:9 66:5
66:16 67:3 78:12
79:2,4,5
**getting** 39:9
**give** 29:18 34:24
40:5,14
**given** 38:16 51:12
75:2 78:20
**gives** 53:4 81:24
**giving** 21:13
52:22 70:22 72:19
**glosses** 74:19
**glossing** 74:19
**go** 22:17 27:22
28:20 29:11 38:10
39:16 52:4 53:7
53:13 56:4 62:3
62:19 69:1,3
73:11 74:1 80:1,2
85:12 89:7
**goals** 78:20
**goes** 64:17

**going** 12:4 13:19
25:16 27:10,11
31:23 33:18 36:1
38:11 39:2 40:11
41:23 44:14 51:16
53:16 57:13 62:6
62:14 63:21 64:18
66:23 67:21 74:8
74:23 75:13 80:22
81:8 85:13
**good** 12:2,11,14
12:17,22,22 13:12
13:21 14:11 21:25
22:7 23:15 32:12
35:22 36:7,15,18
36:24 37:23 38:4
38:18 41:13 49:6
51:17 61:6,19
71:1 72:23 76:14
89:13,23,25
**goodman's** 52:19
**gorrepati** 10:19
**gotten** 77:13 89:9
**gottridge** 10:16
**govern** 35:1
**governing** 32:20
**gp** 51:24
**grant** 83:4
**granted** 25:2 91:6
**granting** 83:17
**great** 39:5
**green** 2:21
**grossman** 70:11
**grossman's** 52:20
63:10,14 70:17
**guess** 64:14 76:17
**guidepost** 55:18

**h**

**h** 2:3,12 4:3 5:16
6:4,15 7:1,9,20
8:23 9:4 10:2
36:19 55:4

**hac** 39:21
**half** 27:14 50:25
**handwritten**
51:22
**happen** 31:23
40:14
**happens** 57:15
**happy** 28:14
56:20 58:13
**harmless** 16:16,19
**haven't** 20:13
21:14 32:18
**hear** 31:16 39:4
48:25 83:20
**heard** 23:16 24:8
24:8 31:12,14
32:23,25 33:1
42:24 49:12 51:11
66:4 75:2,6,23
82:13 83:21
**hearing** 4:1,5,8,9
4:11,15,16,18,21
4:22,24 5:1,2,4,7
5:8,10,13,14,18
6:1,8,9,9,17,20
7:13,14,22 8:1,2,5
8:9,15,20 16:15
40:1 68:21 73:13
79:1,4
**held** 4:5,11,18,24
5:4,10,18 6:17
7:22 8:5 45:20
46:5,8 47:7 50:10
50:12,16 53:1
55:8,10 56:8
57:22 58:4 67:11
68:8,8 69:20
71:15,18 72:14
**help** 39:22
**he's** 23:20
**hiding** 34:12
**highlight** 71:23

**highlighted** 45:19
**highly** 87:18,20
**hinder** 67:4
**hinging** 15:20
**hmm** 71:6
**hold** 40:18 71:16
**hon** 3:2
**honest** 64:2
**honestly** 19:20
**honor** 12:11,14,17
13:1,11,14,21
14:16 15:5 16:17
17:2,7,16,25
18:20 19:8,17,21
20:20 21:5,19
22:6,10,17,21,25
23:3,6,8,14,18,24
24:17,21 25:6,9
25:18,24 26:2,10
26:20,24 27:2,5
27:24 28:3,13,16
29:2,9,12,17,22
30:20 31:6,17,21
32:9,13,22 34:9
34:11,12,16,25
35:4,7,15,23,24
36:2,4,12,15,20
36:22 37:2,8,9,13
38:11,20 39:3,6
39:24 40:7 41:7
41:12 49:14 50:6
51:5,5,16 52:5,12
53:6,12 54:2,6,12
54:15,19 55:16
56:3,16,19,24
57:8,10 58:1,8,18
58:23 59:7,18,23
60:4,15,17 61:10
61:23 65:6,16,25
66:4,24 67:11,24
68:12,22 69:2,14
69:20 70:8,17
71:4,9,22 72:17

78:15 79:1,6,23
80:2,6,11,18,24
81:4,14 82:15,21
83:11,13,19,25
85:3,15 86:4,7
87:1,7 88:15
89:21,24
**hope** 41:15 47:6
**hopeful** 77:21
**hopefully** 63:22
74:3 76:12
**hoping** 74:19
**horrible** 73:8
**horse** 76:13
**hostetler** 9:3
12:12,15 26:25
80:25
**hyde** 92:3,8

**i**

**identify** 16:12
19:2
**ifs** 28:6
**ignore** 17:17 22:3
**ignoring** 16:21
**ii** 6:11,22 7:5,16
**iii** 6:12,23 7:6,17
**immediately** 24:5
61:14
**implement** 67:8
**implicated** 65:14
**implicates** 71:23
**important** 35:14
35:15 49:20,20
63:21 73:15
**impose** 74:16
**imposed** 57:12
**imposing** 76:7
**improper** 78:11
**improprieties**
15:6 22:2,4
**inadequate** 68:6
**inapplicable**
52:16,19

include 54:25
72:3
includes 17:12
including 16:22
inconclusory
72:14
incurred 42:16
43:8,17,24 46:6
independent
68:10
indicating 51:24
indiscernible
34:10 61:15
individual 9:12
12:19 14:22 15:2
20:18 30:2 35:9
59:13 70:14
individuals 13:19
14:23 28:20 29:5
34:6
ineffective 59:10
informally 76:17
information 16:12
16:14 30:6 61:21
informed 51:19
inheritance 28:22
initial 13:6 14:21
14:25 16:7 18:13
24:22 25:3 34:13
34:20 50:18 54:15
55:22 57:17,25
66:21 74:6 76:9
76:10,11 88:8,9
88:17
initiated 46:2
76:18
initiation 74:2
injury 52:22
68:24 70:22,23
ins 26:8
insight 21:4
insolvent 68:3

instance 75:17
insufficiency
54:20,23
intellectually 64:1
intend 56:2
intent 55:25 56:1
56:2 57:19 58:1,6
67:4,10 68:11
interest 21:23
22:1,4 30:13,13
66:12 71:10,20
78:3 79:21
interests 21:20,23
30:9,10,11
interject 80:24
81:14
interpretation
19:15
interrogatories
15:10
interrupt 17:23
60:17,23 68:16
70:4 82:14
intervening 77:22
invested 56:15
57:24
investment 1:8,15
2:4,13 4:4 5:17
6:5,16 7:2,10,21
8:24 36:9 51:13
57:13,25 71:12
investor 1:12
irrelevant 18:23
19:2 23:18
irving 2:3,12 4:3
5:16 6:4,15 7:1,9
7:20 8:23 9:4 10:2
12:5,13 36:8
isn't 19:17 28:14
issue 14:2,20 18:8
18:23 20:11 21:18
21:18 29:13,24
33:22 35:5 42:6

42:11 44:23 50:23
53:17 54:12 58:8
61:11 64:5 74:14
76:19 77:25 81:12
88:1,2,2,3,3,6,15
89:14
issues 35:1 52:10
53:7 66:5,16
73:16 78:12
it'll 45:11
it's 19:9 20:10
27:18 30:21 31:21
31:23,25
i'd 14:16
i'll 18:6 27:8
i'm 12:4 14:7 22:8
24:9 25:13,13,16
25:18 26:8,18,19
29:24
i've 22:8 31:12,14

j

j 4:3 10:16 11:7
january 25:12,12
38:21 60:2,9
jd 10:23
jeff 10:12
jeffrey 10:13
job 72:24 87:21
john 10:24 11:5
joseph 10:25
joyce 4:11,18,24
5:2,4,10
jp 71:16
judge 3:2,3 36:18
38:3,6 39:10,17
41:5,14 42:7,11
42:12,17 43:4,10
43:17,23 44:4,8
44:14,24 45:4,9
45:23 46:6,13,20
46:25 47:4,22
48:7,23 49:5,8,10
59:25 62:5,18

63:10 64:2,4,6,9
65:2 69:5 70:3
73:14,22 74:4,5
74:13,15,18,20,24
75:14,19,24 76:12
76:22 77:4,6 78:4
87:22 88:1,6,23
89:2,19
judgement 4:10
13:9 14:2,20
20:17 28:15,23
29:11 91:6
judgment 4:1,2
5:15 6:11,11,13
6:21,22,23,24 7:4
7:5,6,7,14,16,16
7:18 8:2,10,21
12:23 14:12 16:1
16:3 17:5 21:22
28:2,19 33:15,21
34:24 35:19 37:17
37:20,21 38:15,24
38:25 39:13,15
41:20,24 42:24
43:20 48:24 49:13
50:7 53:9,25 56:4
57:12 58:10 59:14
61:24 64:1,10,18
64:21,23 65:5,24
66:4,7,17,18 72:5
72:6,16 73:24
74:8,12,24 76:21
76:24 78:5,10
79:8,9,20 82:9,19
83:3,5,16,17,22
87:25 89:1,1,12
judgments 28:24
53:24
june 59:21 60:5
64:24
jurisdiction 55:3
55:6,10

**justification**
67:14 88:25
**justified** 16:16,19
**justify** 87:23
**justin** 10:21

**k**

**k** 17:14 19:3
30:10
**kansler** 4:11,18
4:22,24 5:2,4,10
9:13 12:7,20 14:9
17:9 22:13,25
24:4,7,9 25:5
35:16
**kansler's** 35:8
**kansler's** 18:2
23:2 28:7
**kay** 10:25
**keeps** 75:18
**kelly** 10:17
**ken** 2:7 6:13,24
7:7,18 8:4,13,18
36:10,22 37:21,25
38:1,8,14,15,16
38:22 41:18 47:17
51:3 53:20,22
54:7,10,14,14,16
55:16,20,22 56:13
57:5,15,17,24
66:8,8,21,21,22
68:13 69:18 71:7
71:24 73:19 74:6
74:9,12 78:16,21
79:3,10,11,21
82:6,7,8,10,10,11
82:17,24 83:2,3,9
83:17,22 84:2,5
84:12,13,18 85:5
85:16
**kenneth** 6:10,12
6:21,23 7:4,6,15
7:17 8:3,12,17,22
9:20 10:11 36:19

37:17,25 38:7
51:23,24
**kevin** 10:17
**kick** 82:12
**kind** 52:8 74:18
74:19
**kleinman** 9:13
12:7,7,8,8,19 14:8
14:8,9,9,24 17:15
17:15 25:10,10
27:6,13,25 28:1
**kleinman's** 12:20
27:12 28:2
**knew** 24:15 30:6
38:16 45:16
**know** 19:12 29:22
33:4 35:13 41:9
45:6 47:12 48:24
53:17 56:5 59:5
60:21 62:13 63:8
63:20,21 64:12,14
69:18 70:20 73:10
74:7,10,11,21,22
75:15 76:7 78:7,9
79:7 80:11 82:11
83:22 85:23 87:8
88:25 89:4
**knowledge** 56:12
58:16 66:1
**knows** 27:2

**l**

**l** 1:8,15 2:3,12 4:4
4:5 5:17,18 6:5,6
6:16,16 7:2,3,10
7:11,21,21 8:24
8:25
**l3** 52:10
**lack** 11:7 64:14
**lacked** 68:2
**lambe** 10:7 36:15
36:16 37:9 39:1,3
39:5,18,21 41:7
41:23 49:11,14

50:10 51:9,15,18
52:5 53:12,14
56:24 57:3 58:13
58:18,22 59:18,20
59:23 60:4,7,14
61:17,23 62:2,4
65:6 68:22 69:1,5
69:14 70:7,8,10
70:16 71:4,7
72:23 78:14,15
80:1,2,4,18 81:15
81:22 84:16 85:7
87:17,21 89:4,24
**lambe's** 73:17
89:5
**language** 42:13
43:5 46:14 47:10
48:7 64:22 73:16
**largely** 41:22
**late** 32:3,4,17,19
**lauren** 11:6
**law** 4:9 5:14,15
8:20 9:19 21:11
22:5 40:6 43:3
47:12 50:13,13,14
50:19,22 58:23
67:13 68:19 69:8
69:11,13 73:10
75:10 78:19 82:11
84:7 85:24 88:12
88:13,19,23
**lawsuit** 43:25 44:1
45:12 46:2,2 61:2
62:24,25
**lawyer** 27:10,12
**lax** 4:11,17,23 5:3
5:9 9:11,17 12:17
12:18,18,18,24
13:1,11,14,17
14:1,19 22:11,17
24:7,10,13,21
25:15,18 26:21,22
26:24 30:19 31:6

31:9,13,15,17
32:13 33:3,11
34:4,9,12 35:4,7
35:15,21,23 36:1
36:3,4
**lease** 45:20,22
46:6,11 75:15,17
75:18,18 88:24
**leased** 46:10
**leases** 52:18
**leaving** 47:14
59:13
**led** 53:14
**ledanski** 92:3,8
**left** 33:9 47:17
**legal** 92:20
**lengthy** 77:18
**leo** 17:9 24:4,9,10
24:15 25:4 27:16
30:5,5,6 33:4,5
**leo's** 23:25 27:15
**letter** 45:13
**let's** 22:17 27:22
31:16
**liabilities** 68:6
**liability** 13:4 15:1
28:2,23 32:3,5
42:20 43:7 44:20
44:22 50:15 61:8
65:10 67:24 68:10
69:11,15 74:16
75:22 76:7,9
78:21 81:25 85:1
85:5,9,16
**liable** 29:5 43:16
45:23 46:9,21
47:8 48:9 49:24
50:2,11,15,22
54:13,16 65:12
69:18,20 84:8,12
85:19
**lie** 81:21

life  16:2 20:7
limit  31:23
limitations  63:14
limited  1:20 2:7
  2:17 6:13,25 7:8
  7:18 8:4,13,18
  19:10,13,17 21:12
  28:16 29:23 30:24
  36:10 37:22,25
  38:1,9,22 41:18
  41:19 42:15,16,18
  42:23,25 43:3,8
  43:16,20 44:20,21
  44:21 46:19,23
  47:1 48:13 49:23
  49:24 50:15 75:3
  75:4,6,8,22 76:6
  76:11 77:15 84:8
  85:22 87:25 88:4
lin  11:1
line  91:4
liquidation  1:20
  2:3,12 4:4 5:17
  6:5,15 7:2,10,20
  8:24 12:5 22:5
list  19:9,11,12,17
listed  49:18 63:1
  75:22
listen  31:4
listening  36:20
litigation  26:3
little  22:18 32:3
  32:17,19 39:9,10
  78:18
llc  1:8,15 2:4,13
  4:5 5:18 6:6,16
  7:3,11,21 8:25
  12:6,6,25 13:3
  17:13 20:21 21:2
  71:19
llcs  13:10 19:4
  22:12

llp  9:3,11 10:1
loan  57:11
local  71:23,25
  72:6
logic  45:4
london  1:23
long  76:2 78:9
look  22:17 29:14
  31:20 42:11 43:5
  43:11 44:18 46:16
  47:9 51:20 76:5
  77:3,24 88:12,13
  88:19,25
looked  44:3,24
looking  14:7
  40:21,23 47:9
  48:2 59:24 61:2,8
  61:20
looks  27:13 55:25
  56:2
loop  52:5
losers  57:22
lost  22:8
lot  32:23 39:24
  44:4
lp  2:16
lunn  6:14 7:1,9,11
  7:19 8:23

m

m  10:22,25
madoff  1:8,15 2:4
  2:13 4:4,5 5:17,18
  6:5,6,16,16 7:2,3
  7:10,11,21,21
  8:24,25 36:9
  48:13 51:13 71:17
main  58:9
majority  20:14
making  20:5
  26:15 39:2 51:25
man  41:12 59:24
  60:17,22 61:1,5
  61:10,15 89:15,17

managing  22:22
mandatory  17:6
  18:7
maneuverings
  61:22
marc  10:16
marcella  10:18
march  65:22
marjorie  9:12
  12:6,7,8,19,20
  14:8,8,9,24 15:14
  15:24 16:1 17:15
  18:24 19:5,25
  20:2,9 21:9 23:8
  23:11 25:6 28:5
  28:11 30:2,12,16
  31:19
marjorie's  19:11
mark  8:3,11,16
  9:19,24 36:18
  52:9
maryland  46:3
massive  76:3
material  6:3 23:5
  66:5,16 71:25
  72:1 76:19 78:12
  79:5
materials  18:11
matter  1:6 12:9
  55:10 77:21
matters  75:5 78:8
matthew  6:14 7:1
  7:9,11,19 8:23
max  12:14 13:21
  22:10
maximillian  9:9
mean  22:15 23:12
  30:3 60:18 70:4
  75:11 88:4
meaning  86:10
means  35:11,13
measuring  55:18

mechanisms
  29:16
mediate  27:22
mediated  26:3
mediation  18:7
  23:18 25:23 26:7
  26:9,9,14
members  22:22
  28:18 29:4
memorandum  4:9
  5:14,14 8:20
mentioned  72:11
mentioning  48:4
mere  55:15
merely  20:25
merkin  50:12
met  20:1 43:15
  74:12
michael  10:8
  36:12 37:13 82:22
million  57:12
  59:14 60:10,11
  64:25
mine  73:1
mineola  92:23
mingled  67:9
minor  76:22
minute  24:3 26:6
  35:25 37:3 70:1
  79:7 82:16
mirrors  32:23
  51:21
missed  52:8
missouri  46:8
  52:13 75:12
mm  71:6
mo  46:4
moment  25:17
  40:5,14 81:19,23
  86:8,11,15
money  75:25,25
  81:25

**month**  61:14
**months**  50:25
  77:20
**moore**  80:7
**moot**  54:8
**morgan**  71:16
**morning**  12:2,11
  12:14,17 13:21
  36:8,12,15,18,22
**morris**  3:2
**motion**  4:1,2,9
  5:15 6:10,11,12
  6:20,22,22,24 7:3
  7:5,5,7,14,15,16
  7:17 8:2,9,10,15
  8:21 12:22 13:4
  14:12 15:19,23
  16:11,14 17:19
  20:24 22:2 24:23
  27:23 28:2 29:9
  29:17 34:15,18
  35:19 36:25 37:10
  37:16,20,21 38:24
  39:7,12,14 41:20
  41:24 44:19,19
  48:24 49:1,3 50:7
  53:8,23,23,25
  54:25 55:7 56:4
  56:17 58:9 61:24
  63:25 64:10,18,21
  66:3 72:4,5,16
  76:20,25 77:22
  79:9,20 80:9 83:3
  83:5 91:6
**motions**  25:1 72:9
**mouth**  73:4
**mouths**  88:14
**move**  12:2 66:23
  80:8 82:20
**moved**  29:19
**moving**  19:23
  61:7 80:15

**multiple**  15:4,5

**n**

**n**  9:1,21 12:1 91:1
  92:1
**name**  12:9 22:8,14
  36:10
**names**  19:11,14
  19:19
**nathan**  10:20
**necessary**  21:9
**need**  29:11 57:1
  60:21 82:6
**needs**  75:20
**negotiate**  27:20
**neiburg**  10:8
  36:12,13 37:13,13
  37:16,19 38:11,20
  38:23 79:12 82:21
  82:22,24 83:2,7
  83:11,13,19,25
  85:3,11,13,22
  87:2
**neither**  43:13 66:8
  71:24
**nelson**  84:21
**net**  57:22
**never**  13:6 16:7,8
  26:12,12 27:23,23
  29:16,18 33:7
  54:7 56:9 77:2,13
**neville**  5:8 9:11
  12:18
**new**  1:2 2:17,22
  9:6,15 10:5 21:10
  44:18 50:12 55:9
  75:11,11,11
**newburger**  45:1
**newly**  17:4
**nice**  72:21
**nicholas**  5:16 6:4
  9:8 12:11 80:25
  86:7

**notation**  65:7
**note**  39:23 51:22
**noted**  53:8
**notes**  59:11
**notice**  4:2,8,15,21
  5:1,7,13 6:8,9,9
  6:21 7:4,13,14 8:1
  8:15 21:8,13,14
  29:18 31:9 32:9
  38:15 50:6 51:5
  51:12 58:25 59:1
  59:6,12 63:3
  78:23 82:9 84:19
  85:19
**noticed**  65:18
  77:8 87:16
**notices**  27:4 31:18
  31:21,24 32:2
**noting**  76:23
**notwithstanding**
  18:10
**november**  47:17
  50:24 51:1,21
  60:10,15,24 61:1
**number**  12:3
  65:24
**ny**  2:22 9:6,15
  10:5 45:1 92:23

**o**

**o**  3:1 12:1 36:18
  92:1
**objection**  54:25
  56:17
**objections**  6:2
  54:23 55:2
**obligated**  63:8
**obligation**  42:14
  42:16,19,23 43:2
  43:8,10,16,18,19
  43:24,25 45:2,7,7
  45:9,18,20 46:5
  46:22 48:10 52:17
  63:23 64:1 68:18

69:8 73:18,23,24
  74:25 75:3,8,16
  75:20,20 76:4
  84:2,6 88:4,21
**obligations**  16:21
  68:20 69:9 88:24
**obviate**  85:9
**obviously**  24:14
  24:25 63:13
**occur**  50:1 88:4
**occurred**  23:10
  25:3 42:7,8,9
  46:11 47:17 59:16
  61:11,13 64:7
  65:10 84:14 85:18
  86:3
**occurs**  52:22,24
  68:24
**october**  58:17
  65:25
**offering**  15:7
**offers**  67:20
**offices**  9:19
**offshore**  57:7
**oh**  34:21 39:8
  41:11 62:6 83:7
  87:20
**okay**  13:13,17
  14:7,11,14,18
  18:4 19:7,20 26:6
  26:18,21 30:18
  31:8,16 32:12
  34:8 35:15,20
  38:21 39:1,4,14
  39:17 40:10,13,15
  40:20 41:3,4,5,5,8
  41:10,14 42:4
  44:11,15 45:23
  46:16 47:23,25
  48:15,22 49:6
  50:9 51:17 52:3
  53:13,14 58:12
  60:6,16,25 61:4,9

61:18,19,23 62:2
62:10,12,15,19
65:4 68:25 69:22
69:22 71:1 73:11
76:15 80:4,13
81:10,13 82:5
83:10,21 84:20
85:10,21 86:17
87:10 89:17
**old** 92:21
**oliver** 10:18
**once** 18:17 76:17
77:12 78:2 80:19
**one's** 74:8
**ones** 56:22,25
**onus** 71:19
**open** 29:23 30:24
59:14 63:6
**opened** 14:25
19:25 20:3,10
33:17
**opening** 19:24
**operating** 24:1
30:3
**operative** 41:18
**opinion** 89:14
**opportunity**
72:19 89:12
**oppose** 16:10
**opposing** 16:23,24
32:16
**opposition** 4:9,16
4:22 5:2,8 6:10,21
7:4,15 8:10 15:18
26:13 34:17 48:24
64:17 72:5 74:13
78:3 83:20
**oral** 72:20
**order** 13:12,15
55:12 65:21 83:18
**ordered** 21:25
**organization**
17:12,21 18:22

71:15
**original** 60:14
**originally** 71:18
**outs** 26:8
**outset** 79:1
**outside** 32:19 78:6
**outstanding** 78:4
78:11 80:5 89:3
**overcome** 72:15
**overlay** 78:19
81:17
**owner** 71:15
**ownership** 71:17

**p**

**p** 9:1,1 12:1
**page** 44:19 77:5
77:24 91:4
**pagma** 2:16 12:6
13:2,9 15:25
18:24 19:5,10
20:3 21:7 22:19
30:11,14 31:11
32:10 33:18 34:14
34:22
**pagma's** 18:14
19:1 31:18
**paid** 67:9
**paper** 83:8
**papers** 14:15
15:23 19:23 27:2
30:20 34:17 41:17
48:7 52:11 53:11
56:23 58:15 72:18
78:10 80:12 86:18
86:22 87:9
**paradise** 57:6
**paragraph** 44:18
46:7 49:19,19
59:11
**part** 25:1,2,2
30:15 43:15 71:13
84:2 85:9 86:24

**parties** 24:22 40:7
65:18 77:18
**partner** 8:4,12,18
21:12 29:24 38:1
41:22,25 43:6,7
44:20,21 46:1,1
46:17 47:7 49:22
50:2,11,15,19,22
52:1 53:20 54:7
54:10,16 57:18
65:10 66:22 69:17
69:18 74:17 76:8
79:10,11,21 84:8
84:11,13 85:9
**partners** 13:1,3
13:24 14:4,22,24
15:2,3,14,24 16:2
18:24 19:1,2,4,6
19:10,12,13,17
20:1,2,5,9,12,19
21:7,13 22:20,22
23:9,12,13,23
25:7 28:5,12,16
29:6 30:3,17 31:1
31:18 33:15,17,19
34:6,15,24 45:21
46:8,10 76:6
79:19 82:7,11
**partnership** 2:7
6:13,25 7:8,18 8:5
8:13,18 15:13
21:4,7,10,11,12
23:20,21 26:11
30:10 36:10 37:22
37:25 38:2,9,22
40:6 41:18,19
42:15,16,19,23,25
43:3,3,8,20,21,22
44:22 45:5,16,22
46:10,12,19,23
47:9,14,18 48:9
48:14 49:25 50:12
50:15,16,17,23

51:14 52:1 54:14
54:17 64:16 74:22
75:4,4,6,8,17,25
76:5,8,11 77:15
79:16 84:9 85:1
85:22 88:1,4,8
**partnership's**
43:16 47:1 49:23
75:22 76:6
**partners'** 19:13
19:19
**partner's** 27:2
**parts** 49:20
**party** 16:11,13
43:13 50:3,5
55:24 59:2 86:12
**passed** 25:10,11
27:13 50:4
**passing** 57:20
**pay** 22:1 44:22
45:2,7 52:17
57:11,11
**paying** 75:18
**payment** 52:23
**pembroke** 9:22
**pending** 24:23
63:3 76:25
**pennsylvania**
84:22
**people** 28:25
40:11
**perfect** 49:9
**period** 15:3,15
20:12 24:24 31:1
33:20 61:12 66:10
68:14 71:9 77:20
85:18
**person** 43:16
46:17 49:21
**person's** 43:6,7
65:10
**personal** 55:3,6
59:13 74:16

**personally** 45:23 46:8 47:8

**perspective** 41:16 76:6,7

**petition** 61:12,14 70:13,14 78:22,24 85:6,14,16

**picard** 2:3,12 4:3 5:16 6:4,15 7:1,9 7:20 8:23 9:4 10:2 12:5,13 36:8

**picked** 88:15

**pincus** 11:6

**pines** 9:22

**place** 21:1,3 47:13 47:13 50:24 60:7 77:20 79:17

**plain** 47:3 58:4

**plaintiff** 1:13 2:5 2:14 25:4 29:24 32:1,1 69:7

**plaintiffs** 1:21 13:14 32:4

**plaintiff's** 23:14

**plan** 65:25

**plaza** 9:5

**plea** 67:19

**plead** 56:11

**pleaded** 72:15

**please** 37:15 39:16 49:7 59:19 62:1,1 81:3 82:23 83:21

**pm** 90:2

**point** 15:3 16:2,3 16:5 21:15 24:14 27:8,9 29:20 31:15 34:11 38:13 51:15 54:4,12 56:6 59:7 63:2 64:16 66:25 68:15 71:9,22 76:12 78:10 80:10 81:15

**pointed** 86:15 49:15 85:7

**points** 66:25 71:2 76:22 78:16

**polan** 11:2

**ponzi** 45:14,16,17 56:8 66:14 67:2,6 67:12,16,17 70:24 76:3

**position** 25:8 32:24 34:13,16 42:14,25 46:13 52:14 63:23 73:17 73:18 75:3,7 85:4 88:24

**possession** 23:19 23:24,25 46:10

**potential** 59:14

**practicing** 73:10

**practitioner** 39:20

**pre** 48:19 70:12 70:13 78:19 82:3

**precedent** 67:15

**precise** 17:7

**preclude** 15:6 28:4

**precluded** 16:10 17:4,8 18:15 20:16 21:17 33:8 33:9

**precludes** 78:5

**preclusive** 22:3

**predecessor** 89:5

**preexisting** 45:3,6

**prejudgment** 21:20,23 22:1,4

**prejudice** 38:19

**premises** 46:11

**prepared** 53:7

**preparing** 40:1

**present** 10:10 61:24

**presentation** 33:12

**presented** 67:14

**presumably** 45:11

**presumption** 67:12,16,23 70:24

**pretty** 87:5

**prevent** 66:6

**previously** 72:11 81:11

**prima** 20:1,8 33:14,14,21 83:8

**principal** 56:13 56:15 57:23

**prior** 15:3 47:13 47:20 61:12 66:16 77:2 83:8 84:23

**pro** 39:21

**probably** 29:10 41:8 57:1 62:14 74:23

**problem** 31:9

**procedural** 54:18

**procedure** 22:16 24:4 31:4 32:21 35:1 39:22 55:4

**proceeding** 24:5

**proceedings** 55:5 61:3 67:1 76:18 90:1 92:4

**process** 27:15 54:20,23

**produce** 16:18 17:11 18:17 33:25

**produced** 16:8 18:9 21:14 26:3 67:25

**professionalism** 39:19

**profits** 53:2 56:8 56:14 68:2,7

**promised** 77:23

**proof** 62:16 63:16

**proper** 55:9

**properly** 72:15

**property** 53:3,4 66:12 68:6 71:10 71:17,20 78:16 81:18,19 84:4,7 84:12 86:2,2,9,11 86:24 87:3

**proposition** 41:15 70:18

**proprietorship** 71:19

**protect** 57:20

**protection** 1:12

**prove** 23:4

**proved** 83:8

**proves** 23:11,13

**provide** 16:12 20:10 21:4 22:13 59:1,12 66:18 88:23

**provided** 18:2 26:13 31:20,25 52:6 58:25 59:6 75:10 88:22

**provides** 16:11

**puff** 34:4

**pull** 40:4

**purchase** 67:7

**purported** 50:5 51:1

**purpose** 29:23 30:24 57:8

**purposes** 13:4 23:17

**pursuant** 20:24 21:10 71:25

**push** 77:20

**put** 23:2,2,23 27:10,17 30:1 41:8,24 44:8

83:15,21 84:16
putting   19:20

**q**

qualify   48:12
question   17:24
  22:12 23:15 48:1
  52:2 58:19 62:11
  74:25 81:1 83:25
questions   22:8
  30:19 53:6 56:19
  58:11 61:21 65:1
  72:17 77:9,9,10
  78:2 89:10
quick   31:2,2,5
quite   17:2
quote   86:18
quoted   87:8

**r**

r   3:1 4:10,17,23
  5:3,9 9:1 12:1
  36:18,19 92:1
rachel   11:2
raise   64:19
raised   35:5 55:7
  78:12 79:7 85:7
rate   22:4
reached   16:23
read   37:23 41:16
  41:17 88:20,21
reading   43:15
  44:4,6,7,12 47:3
  64:3,20
reads   46:16
real   57:22 61:21
reality   15:20
really   39:25 41:14
  41:21 42:10 43:9
  44:18 48:7 52:2
  74:14 75:5 78:6
  89:22
realty   44:25
reason   17:17 19:3
  27:1 28:15 29:7

31:24 33:23
reasoning's   85:5
reasons   15:4
  33:24 34:3 87:2,4
rebut   33:21 49:12
  62:8,11 67:20
rebuttal   26:23
  31:2,3,5 49:3 65:2
  73:13
receipt   42:15,18
  42:21 43:1,24
  45:4,10,13 47:1
  73:19 75:9,21
  88:22
receive   75:24
received   27:15
  28:17,25 29:4
  42:19 57:15 66:9
  68:13 71:8 84:6
  84:12
receives   75:25
recess   36:6
record   16:3,20
  30:1 34:17 36:7
  39:18 62:20 64:9
  68:15 77:6,11,24
  89:4 92:4
records   15:22
  19:23 51:12
recover   50:17
  55:21 56:13,14
  57:17,23 66:20
  80:15 86:11
recoverable   81:20
  87:3
recovered   57:24
redemptions   67:9
reference   21:1
  55:13
references   19:13
  48:11
referencing   65:23

refuse   20:23
regard   44:21
  53:18 80:6
regarding   52:8
  53:6 54:20 55:2
  58:1 65:8 67:3
regardless   57:14
regardng   6:9
regards   63:23,25
  76:7,15 88:5,24
regular   39:20
  40:25
regurgitate   63:22
  75:13 78:8
rehear   80:13
reiterate   73:22
rejected   71:11
related   4:10,17,23
  5:3,8 6:3,14,25
  7:8,19,22 8:6,11
  8:22 27:25 88:7
relates   57:4
relevant   24:15
  30:6 31:1 40:2
  42:10
relied   64:11
relinquishing
  79:21
rely   16:6 17:8
  18:14 20:15,16,21
  30:20 33:10 67:12
  67:16 80:12
relying   18:15
  33:24 40:8 42:11
  43:13 46:15 49:15
  64:10,11
remainder   71:5
remains   50:15
remember   23:3
  73:2,7 82:7
renders   78:18
renotice   77:12

rent   44:22 45:2,7
  45:21 46:9 52:18
repay   45:9
repayment   76:1
repeatedly   55:8
  71:11
reply   5:14 8:9,15
  8:16,20 14:18
  23:1,23 30:21
  32:24 59:8 65:17
  72:12 79:15
reports   67:23
represent   12:25
  13:5 34:13 38:14
  62:24 74:9
representation
  59:10
representative
  77:14,15
represented   22:18
  22:18,20 36:25
  38:12
representing   37:7
  38:5,6
represents   38:8
request   15:11
  51:20 76:24 78:3
requested   15:13
  18:17 69:16
requesting   18:10
requests   15:9,15
  16:23 17:12 18:10
  27:4,5,24 28:9
  51:22,24,25 72:7
  79:11 89:9,9
required   16:12
  56:11 80:12
respect   58:22
  65:15 66:6 68:12
  72:10,17
respectfully   39:6
  63:11 72:7 74:18
  88:20

**respond** 15:8,9,10
15:11,12 28:1
35:5 38:15 69:23
83:2
**responded** 32:18
77:3
**responding** 16:22
**response** 8:10
12:23 16:8 17:11
23:1,16 30:21
31:17 34:1 38:17
38:23 53:9,24,24
54:6 56:17,19
76:20,23,23,24
78:2,8 79:8 83:5
**responses** 6:2
15:16
**result** 46:18,21
49:22 84:18
**returns** 18:14
19:1 23:3 27:16
28:10 30:7,9,15
35:16
**review** 71:14
**rfas** 15:12 32:18
**richardson** 10:20
**right** 12:3 14:5
26:21 31:6 32:6
35:22 36:2 37:18
38:24 39:1 40:16
48:2,16,22 51:17
51:17 52:23 55:20
55:21 60:16 61:13
61:13,13,19 62:3
63:16 68:23 69:22
73:13,23 74:3
75:15 81:3,8 82:7
83:1 87:10 89:6,6
**rise** 52:22 53:4
70:22 81:24
**road** 9:21 92:21
**robert** 11:7

**rockefeller** 9:5
10:3
**roher** 8:3,11,17
9:19,24 36:18,18
37:2,5,6,8,12 38:3
38:4,6,10,13 39:6
39:10,13,15,17
40:7,13,15,18,20
40:22 41:2,4,10
41:14 42:3,5 44:8
44:11,13,16 47:15
47:19,22,25 48:3
48:6,16,20,23
49:5,8,10,15 51:2
52:10 53:14 54:8
58:20 62:5,6,8,12
62:15,18,20,23
65:4,23 69:23
70:3 71:3 72:10
72:22,23 73:2,9
73:12,14 76:15
79:2 80:5,7 87:12
87:14,16,17,20
89:16,19,21
**roher's** 52:7 65:11
**role** 64:15
**ronnie** 17:9 23:25
24:9,10,15 25:4
30:4,5,6 33:4,5
**roxanne** 10:22
**rule** 16:9,11,13
17:6 18:18 55:3,6
71:23 72:6
**rules** 22:16 24:3
31:4 32:20 34:25
55:4 69:12 85:15
**rulings** 66:16 91:3

**s**

**s** 4:10,17,23 5:3,9
6:3,14,25 7:8,19
7:22 8:3,6,11,11
8:17,22 9:1,9,19
9:24 10:8 12:1

**s.w.3d** 46:4
**sanctionable** 17:2
**sanctions** 17:3
**satisfied** 50:21
**saying** 13:8,14
24:20 43:14 68:17
74:4 80:16 81:16
81:22 83:23 85:25
86:5
**says** 19:21 21:11
29:17 43:6,11
84:7 85:7 87:6
88:6,7
**scattered** 56:18
**schedule** 17:14
**scheme** 45:15,17
45:17 56:9 66:14
67:2,6,12,16,17
70:24 76:3
**screamed** 16:25
**screen** 40:4,11,12
**se** 13:5
**sec** 57:12
**second** 22:8 27:8
40:25 60:7 68:8
68:12 72:13
**section** 21:11
49:15 50:20 55:11
63:19 78:17 80:19
81:17 82:4,12
85:8,24 86:1,14
86:16,19,21,23
87:6,8
**securities** 1:8,12
1:15 2:4,13 4:4
5:18 6:5,16 7:2,10
7:21 8:25 36:9
51:13 67:7
**see** 40:17 41:4,6,7
41:9,11,12 59:5
61:20,21 65:19
73:20,20 74:10

**seek** 17:3
**seeking** 56:13,14
**seen** 21:14 79:12
**self** 33:9 35:10
72:13 79:24
**sense** 75:14,24
88:13
**sent** 54:14
**sentence** 49:16
**sentry** 1:20
**separate** 18:7
**separately** 12:4
**september** 25:19
**series** 16:6
**serve** 15:16 27:24
28:9 68:9
**served** 27:4,4,6,23
32:1,2,18 34:20
34:21 62:17 77:1
**service** 54:20,21
54:23 65:18,20
**serving** 33:9
35:10 72:13 79:24
**sessions** 40:25
**set** 22:23 37:14
64:13 83:7
**settle** 27:11,11,14
77:21
**settled** 29:7
**settlement** 73:3
77:19
**seyfair** 12:6 13:10
17:13,13,14,21
18:22 19:3 20:22
22:21 23:22 30:12
30:17
**seymore** 19:25
**seymour** 9:13
12:8,19 14:9,23
15:13,24 16:1
17:14 18:23 19:5
19:10 20:2,9 21:9
23:9,12 25:6,19

27:6,12 28:5,9,11
30:2,12,16 31:19
**shaiman** 11:3
**shape** 33:5
**share** 40:1,3,12
49:8
**sheehan** 4:3 46:4
**shifrin** 9:9 12:14
12:15 13:21,22,25
14:10,13,16 17:25
18:3,5 19:7,8,15
19:20 22:10,10
23:19 25:24 26:2
26:10,20,25 32:16
34:10
**shifrin's** 23:16
**shifting** 66:3
**shouldn't** 32:7
**show** 17:19,20
18:21,22 20:7
32:4 33:13,14
**showed** 33:16
**showing** 16:18
20:1,8 33:16
65:18
**shown** 33:23,24
39:19
**shows** 18:25 41:25
47:4
**sick** 25:11
**side** 52:3
**sides** 88:14
**sign** 75:17
**signature** 92:6
**signed** 51:23,24
79:9
**significant** 24:24
**signs** 75:18
**similar** 45:4
**similarly** 19:1
20:25 55:2 58:3
79:18

**simple** 41:15,15
47:5 88:16
**simply** 17:19 20:5
29:5 87:6
**sipa** 47:12 57:20
60:13,18 61:2
69:10 74:2 78:17
78:19,20 80:19,20
80:22 81:16,17
82:4,13 84:4,24
84:24 86:1,10,20
86:21,24 87:6
88:3,6,7,13
**sir** 32:15 37:3
87:13
**six** 28:21 88:14
**smoke** 32:23
**sole** 57:7 71:18
**solomon** 68:9
**solutions** 92:20
**sonya** 92:3,8
**sooner** 22:15
**sophisticated**
87:19,20
**sorry** 22:8 25:18
37:5 42:6,6 46:6
47:25 48:3 52:19
60:17,22 61:5
69:1 70:3 75:4
80:2 81:14 82:14
82:21 83:13 85:13
87:20
**sort** 51:10
**sound** 21:22 34:5
**sounds** 74:7
**southern** 1:2
52:21 55:9 59:9
**southpac** 57:7
**speak** 41:23 62:7
71:3 89:15
**speaks** 87:8
**specific** 42:13
53:6

**specifically** 59:11
**spent** 23:20 27:13
**split** 67:8
**stand** 63:11
**standard** 32:19,20
**standing** 16:9
18:10 34:1 55:12
86:11
**stargatt** 10:1
36:13,16
**start** 62:11
**state** 12:9 27:3
36:10 42:2 50:19
50:22 58:23 63:12
67:21 75:12
**stated** 50:21 51:2
52:12 54:8,12
55:21 57:8 67:1
70:20 79:2
**statement** 6:1,2
63:1 69:4 71:25
72:1 86:23
**statements** 72:14
**states** 1:1 2:20
19:18 49:17,21
50:14 58:24 65:9
69:7,9 76:17
79:16,20
**stating** 66:18
68:19
**statue** 47:10
**statute** 40:2,3,9
40:23,24 41:18
44:5,7 47:3 48:8
48:11 52:7 53:7
58:5 63:14 64:3
65:8,14 73:17
82:3 85:6
**statutes** 49:16
**stepped** 38:14
**stick** 64:2 78:9
**stipulation** 54:24

**stolen** 81:25
**stop** 16:25 24:3
49:8
**stories** 73:7
**straightening**
39:15
**straightforward**
47:5,6 88:16
**strangely** 77:25
**strategy** 16:21
67:8
**strictly** 86:20
**strike** 46:6 67:8
**structure** 21:4
**struggling** 70:1
**stuff** 18:8,9 29:20
**sub** 49:16 50:20
52:6
**subject** 55:10
**submit** 13:12,15
52:14,18 66:17
79:6
**submits** 54:19
**submitted** 51:20
56:13 79:10,16
**subparagraph**
49:17,20 65:8
**subsection** 42:12
43:5,12,13,15
46:13,15,16 47:4
47:23 48:8 52:8,9
64:3 69:20
**subsections** 40:8
43:12
**subsequent** 46:9
46:11 64:12 88:10
**substantial** 77:18
**substantially**
16:15,19
**substantiated**
67:18
**substituted** 20:6

**sue** 62:23 75:15
**sufficient** 67:14
**sufficiently** 72:16
**suggest** 51:18
**suggests** 56:7 57:5
 78:25
**suing** 74:6
**suite** 9:21 10:4
 92:22
**summary** 4:1,2,10
 5:15 6:11,11,12
 6:20,22,23,24 7:3
 7:5,6,7,14,16,16
 7:17 8:2,10,21
 12:23 14:12 15:25
 16:3 17:5 21:21
 28:2 33:21 34:23
 35:19 37:17,20,21
 38:15,24 39:13,15
 41:20,24 48:24
 49:12 50:7 53:8
 53:23,25 56:4
 58:10 61:24 64:1
 64:10,18,21,23
 65:5 66:4,7 72:4,6
 72:16 76:20,24
 78:5,10 79:8,9,20
 82:19 83:3,4,16
 83:17,22 87:24
 89:1,1,11 91:6
**summons** 54:22
**supersede** 78:20
**supply** 16:14
**support** 8:21 15:7
 22:4 46:13 63:12
 72:4 73:20 75:1,3
 75:7
**supported** 72:16
 79:23
**supports** 88:23
**supreme** 46:7
 52:13 75:12

**sure** 17:25 29:24
 37:16 41:16 56:21
 74:2 80:18
**surprised** 74:11
**sworn** 54:1

**t**

**t** 92:1,1
**table** 37:14
**take** 28:23 35:25
 49:7 51:5
**taken** 57:11
**talk** 31:15 48:1
 88:14
**talked** 24:17
 70:11
**talking** 17:24
 23:20 24:9 25:22
 29:12 40:6 44:9
 44:20 48:11 61:7
 63:15 70:6 76:9
**talks** 48:8
**tax** 18:14 19:1
 23:3 27:16 28:10
 30:7,8,15 35:16
**taylor** 10:1 36:13
 36:16
**technically** 63:8
**telephonically** 9:8
 9:9,17,24 10:7,8
 10:10
**tell** 24:16 72:25
 73:6 80:16 83:23
**terms** 63:15 64:15
 64:21
**testifies** 30:8
**testimony** 54:2
 67:19
**thank** 13:17 22:5
 26:24 31:17 32:13
 35:3,22,23,23
 36:4,5,21 39:8,15
 39:17,18 40:13
 44:16 49:6,9,10

49:14 52:4 57:3
 62:4 65:4,6 71:4
 72:18,23 73:14
 83:19 89:18,18,21
 89:21,24
**that's** 13:25 14:6
 14:18 15:22 19:8
 21:7 23:10,18,23
 24:21 25:3,3 26:8
 27:7 28:22 29:15
 31:24 32:6,6,13
 75:16
**theirs** 49:3,4
**there's** 13:3 19:11
 24:25 28:6 32:22
 32:25
**they'll** 29:25
**they're** 20:5,14
 27:11 28:3,18
 29:4,7
**they've** 23:7
 29:10 32:7
**thing** 18:12 33:11
 34:10 54:5 58:14
 74:3,5 80:5
**things** 12:3 14:1
 14:17,19 63:10
 78:8
**think** 18:15 22:3
 25:11,11 30:21
 32:19,23 39:25,25
 41:14,22 42:9,10
 43:22 45:24 49:2
 57:1 60:20,20
 61:6,10 63:5,19
 63:20,22 64:17,20
 64:22,22 66:5
 73:4,15 74:3,12
 74:18,22 75:5
 76:22 78:10 81:4
 81:6,15,22 82:14
 84:3 85:3,7,17
 86:18 87:1,2,7,8

87:17,21,22 88:15
 88:24
**thinking** 48:5
**thinks** 69:10
**third** 52:20 60:2
 69:6 70:12 86:12
**thought** 19:18
 52:3 80:22
**three** 24:8 26:4
 28:15,23 35:25
 42:8 44:12,13
 47:13,20 48:5,18
 64:5,24,25 65:13
 69:16 84:10 87:14
**time** 17:5 21:12
 22:19 23:20 24:14
 24:24 25:5,5,10
 26:8,14,15 27:9
 27:10 28:6,12
 31:1 38:12 42:18
 45:22 46:1,9 50:3
 52:22 53:17 60:12
 66:1 68:24 69:15
 70:21,22 78:9
 81:23 84:2,2,6,11
 86:16 89:7,22
**times** 24:9 50:10
 57:25
**timing** 52:17
**title** 19:18 37:24
**titles** 19:13
**today** 36:25 66:4
 68:15 72:19 74:15
 77:16,17
**told** 29:2
**top** 19:16 35:2
**tort** 70:14
**total** 60:11
**touch** 50:8 54:5
 56:25 58:15
**touched** 52:10
 54:11 58:15 73:16

**trades** 68:4
**transaction** 21:1,3
  46:21,22,23 47:1
  48:9,10,10,12,13
  49:24 50:3,4
  51:21 63:24
**transcript** 77:4
  92:4
**transfer** 42:18,19
  42:21 43:1 45:5
  45:10,11,14,17
  47:16 50:24 52:11
  52:16 53:3,5
  57:15 59:20 60:7
  60:9,10 63:13,17
  63:18 64:7 69:7
  69:15,19 70:6,15
  70:19,21,23,25
  75:21 76:2 79:11
  81:18 84:5,14,25
  86:3 88:7,17,22
**transferee** 14:21
  14:25 34:13 43:2
  50:18 54:15 55:22
  57:17 66:21 74:7
  76:9,10,11 88:8,9
  88:10,18
**transferred** 55:17
  57:5,7 71:17
  78:16 81:20,23
  82:1 84:4 86:12
**transfers** 23:10
  28:25 42:6,15,21
  42:22 47:2,8,13
  47:13 48:13 50:18
  52:25 53:1,2
  54:13 55:17 59:16
  61:11 64:5,6,24
  65:13 66:10,13,19
  66:20 68:14,18
  69:16 71:8 73:19
  75:9 80:15 84:3,6
  84:10

**transition** 56:3
**treasury** 67:7
**trial** 16:5,15
  21:18 31:23 33:23
  73:7
**tried** 32:4
**troubling** 51:11
**true** 92:4
**trustee** 2:3,12 4:3
  5:16 6:4,15 7:1,9
  7:20 8:24 9:4 10:2
  12:5,13,16 13:20
  13:22 15:13,23
  16:23 20:18 22:13
  22:15 27:15,19
  28:14,18,19,22
  29:14 30:22 35:9
  36:8,9,14,17
  37:11,19 42:14
  43:25 45:12 46:15
  50:17 53:8 54:19
  55:21 56:11,12
  57:16 58:8 59:6
  59:12 62:17 63:2
  63:7,8,9,11 65:16
  65:19 66:1,8,18
  66:20 67:11,15,24
  68:1 70:16 72:7
  74:6,15,18,23
  75:2 77:25 78:2,6
  80:12 81:1,21
  82:22 83:8 85:4
  86:8,10 87:23,25
  88:11,12,14
**trustee's** 6:1
  33:20,21 34:17
  36:24 42:25 50:7
  52:14 53:25 56:4
  58:9 59:7 61:24
  63:18 64:18 66:3
  66:6,24 67:5,16
  67:21,22 71:24
  72:1,5,18 73:18

**trustees** 4:2 5:14
**trustee's** 15:8,19
  16:10,22 17:11
  23:4 24:11,13
  25:17 27:10
**try** 15:19 27:10,11
  28:21 66:24 73:15
**trying** 27:14,20
  28:4,18,19 29:5
  30:22 34:4 70:18
  74:15
**turn** 25:16 67:14
**turns** 76:1,2
**twice** 24:8
**two** 14:3,22,23
  15:2,3,14 20:12
  33:15,19,24 34:1
  34:6,24 40:8 50:4
  51:4 61:12 63:20
  66:10 68:14 71:8
  76:1,22 78:23
  83:11 84:17 85:15
  85:18
**twofold** 43:18
**type** 44:23 45:4

**u**

**u.s.** 3:3
**u.s.c.** 55:11
**uday** 10:19
**ultimate** 29:13
  31:22 32:5
**uncorrect** 69:12
**undated** 20:21
**understand** 14:5
  29:15 31:6 35:10
  44:10,10 62:22,25
  74:4
**understood** 26:20
  26:20

**undisclosed** 17:18
**undisputed** 4:16
  29:3 41:23 53:15
  53:19 63:5
**unfortunately**
  44:3
**unique** 81:18
**united** 1:1 2:20
**unknown** 3:5
**unnecessary**
  67:22
**unofficial** 33:6
**unofficially** 64:15
**unopposed** 73:4
**unproduced**
  17:18
**unsigned** 20:21,23
**unsupported** 72:8
  72:12,14
**unusual** 22:23
**unusually** 36:25
**use** 16:13 31:21
  55:20
**useful** 89:11

**v**

**v** 1:14,22 2:6,15
  12:5 36:10 45:1
  46:4
**value** 56:7,9
**various** 17:10
  65:17 89:10
**vast** 20:14
**vehicle** 27:7
**venue** 55:3,6,8
**veritext** 92:20
**versa** 88:13
**versed** 56:5
**vice** 39:21 88:13
**vicens** 11:4
**victims** 57:22
**videoconference**
  4:6,12,19,25 5:5
  5:11,19 6:18 7:23

8:6
**violation** 72:6
**virtually** 15:17
**virtue** 18:16 20:22
  63:19 74:16

**w**

**w** 6:10,12,21,23
  7:4,6,15,17 8:3,12
  8:17,22 9:20
  10:11
**wait** 26:6 37:3
  82:16
**waived** 54:19,22
  54:24 55:3,7 89:6
  89:6
**walked** 84:11,16
**want** 18:14 29:25
  30:23 39:17,23,25
  47:10,23,25 48:1
  48:25 54:5 56:21
  62:7 65:7 69:24
  74:1 76:12 77:9
  77:10,24 78:7,7
  80:13 83:14,15
  86:1
**wanted** 61:21
  64:16 77:8 80:22
**wants** 29:13,14
**war** 73:7
**wasn't** 22:12
  26:25 27:21
**waste** 53:16 89:7
**way** 27:5 29:15
  32:7 33:5 76:4
  82:3,3 88:20,21
**we've** 66:4 78:9
**wen** 2:7 6:13,24
  7:7,18 8:4,13,18
  36:10 37:22,25
  38:1,8,14,15,16
  38:22 41:18 47:17
  51:3 53:20,22
  54:7,10,14,14,16

55:16,20,22 56:13
57:6,15,17,24
66:9,21,22 68:13
69:18 71:7,24
73:19 74:6,9,12
78:17,21 79:3,10
79:11,21 82:6,7,8
82:10,10,11,17,24
83:2,3,9,17,22
84:2,5,12,13,18
85:16
**wen's** 85:5
**wendy** 38:2,18
  76:18 77:1,5
  79:16
**went** 64:5
**werner** 57:8
**we'll** 14:18 29:18
  30:20
**we're** 14:7 25:22
  27:10,25 32:19
**we've** 13:6 20:8
  30:1
**whatsoever** 23:8
  27:7 79:24
**what's** 31:23 33:9
**whey** 22:13
**wholly** 52:16
**willful** 56:12
**william** 36:19
**win** 74:23,23
**winding** 46:19,21
  49:23
**wish** 14:14 58:20
  61:20 78:14 89:13
**wishes** 87:11
**withdraw** 21:12
  46:12
**withdrawal** 21:9
  21:10 42:8,9
**withdrawn** 13:7
**withdrew** 30:11
  41:21,25

**witness** 16:12,14
**witnesses** 16:7
  20:15
**word** 35:12 46:22
  64:14
**words** 73:4
**work** 16:25 29:15
**worth** 76:23
**would've** 89:10
**written** 15:16
  18:13 21:8,13,14
  33:1 89:14
**wrong** 32:22

**x**

**x** 1:5,11,17,19,25
  2:2,9,11,19 91:1

**y**

**yang** 10:14
**yeah** 25:15 37:15
  37:16 41:10 44:13
  60:22 61:1,10
  62:20,22 70:3
  73:11,12 81:8
  82:21 87:16
**year** 15:3,14
  20:12 26:4 27:14
  33:19 38:19 61:12
  66:10 68:14 71:8
  85:18
**years** 18:8 26:4,16
  26:17 27:21,22
  28:21 29:7 32:17
  38:13 50:4 51:4
  63:20 76:1 78:23
  84:17 85:15
**york** 1:2 2:17,22
  9:6,15 10:5 21:10
  44:18 50:13 55:9
  75:11,11,12
**young** 10:1 36:13
  36:16,25
**you're** 13:8,14
  17:24 24:19 25:24

**you've** 22:11

**z**

**zero** 26:2
**zoomgov** 4:6,13
  4:19,25 5:5,11,20
  6:18 7:23 8:6
**zulack** 11:5