**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 10-04762 (CGM) |
| ESTATE OF JAMES M. GOODMAN; and AUDREY GOODMAN, in her capacity as Personal Representative of the Estate of James M. Goodman, | |
| Defendants. | |

**TRUSTEE'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

<u>PRELIMINARY STATEMENT</u> ......................................................................................1

<u>ARGUMENT</u>...............................................................................................................2

I.      DEFENDANTS FAIL TO RESPOND TO THE TRUSTEE'S STATEMENT OF
FACTS AND WAIVE ALL OTHER DEFENSES ............................................2

II.     PRIOR RULINGS IN THIS LIQUIDATION PROPERLY GUIDE THIS COURT
AND ARE LAW OF THE CASE......................................................................3

III.    THE TRANSFERS WERE AN INTEREST OF THE DEBTOR IN PROPERTY............4

      A.     Madoff's Sleights of Hand Do Not Create a Genuine Dispute That
BLMIS, including the IA Business, Was Transferred to the LLC..........................5

      B.     The Expert Opinions Are Relevant to the Bank Account Ownership
Question ......................................................................................9

      C.     The Trustee's Motion Rests On Admissible Evidence ..........................................10

      D.     *Avellino* Is Wrong ...................................................................................12

IV.    BLMIS MADE EVERY TWO-YEAR TRANSFER WITH ACTUAL
FRAUDULENT INTENT AND IN FURTHERANCE OF THE FRAUD ......................15

      A.     The Ponzi Presumption is a Valid Indicator of Fraudulent Intent .........................15

      B.     The IA Business was a Ponzi Scheme and a Fraud, and the Trustee has
Demonstrated BLMIS's Fraudulent Intent Under Any Relevant Standard ..........17

      C.     Any Conjecture Regarding the T-Bills Does Not Create a Disputed Issue
of Material Fact.......................................................................................18

V.     THE TRUSTEE IS ENTITLED TO PREJUDGMENT INTEREST ................................19

<u>CONCLUSION</u>............................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 1031 Tax Grp.*,
    439 B.R. 84 (Bankr. S.D.N.Y. 2010) ....................................................................19

*In re Adelphia Commc'ns Corp.*,
    No. 02-41729 (REG), 2006 WL 346418 (Bankr. S.D.N.Y. Feb. 6, 2006) ............................12

*Alexander v. Compton*,
    229 F.3d 750 (9th Cir. 2000) .........................................................................14

*Aramony v. United Way of Am.*,
    254 F.3d 403 (2d Cir. 2001).............................................................................4

*Banner v. Kassow*,
    104 F.3d 352 (2d Cir 1996).............................................................................18

*Bear, Stearns Sec. Corp v. Gredd (In re Manhattan Inv. Fund Ltd.)*,
    397 B.R. 1 (S.D.N.Y. 2007)............................................................................16

*In re Bernard L. Madoff*,
    522 B.R. 41 (Bankr. S.D.N.Y. 2014) .................................................................14

*In re Bernard L. Madoff*,
    592 B.R. 513 (Bankr. S.D.N.Y. 2018)................................................................12

*Blecker v. Picard*,
    830 F. App'x 669 (2d Cir. 2020) ..................................................................4, 12

*In re BLMIS*,
    No. 1:21-cv-02334-CM, 2022 WL 493734 (S.D.N.Y. Feb. 17, 2021)........................... *passim*

*Bourdeau Bros., Inc. v. Montagne (In re Montagne)*,
    Adv. Pro. No. 08-1024, 2010 WL 271347 (Bankr. S.D.N.Y. Jan. 22, 2010) ...........................4

*Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC*,
    439 B.R.284 (S.D.N.Y. 2010)..........................................................................16

*Cosmopolitan Shipping Co., v. Cont'l Ins. Co.*,
    514 F. Supp. 3d 614 (S.D.N.Y. 2021)................................................................11

*Donell v. Kowell*,
    533 F.3d 762 (9th Cir. 2008) .........................................................................15

*In re Dreier LLP*,
  452 B.R. 391 (Bankr. S.D.N.Y. 2011) ..................................................................16

*In re Enron Creditors Recovery Corp.*,
  376 B.R. 442 (Bankr. S.D.N.Y. 2007) ..................................................................12

*Gubitosi v. Kapica*,
  154 F.3d 30 (2d Cir. 1998) ....................................................................................3

*Harkabi v. SanDisk Corp.*,
  No. 08 Civ. 8203 (WHP), 2012 WL 2574717 (S.D.N.Y. June 7, 2012) ..................9

*Janvey v. Brown*,
  767 F.3d 430 (5th Cir. 2014) ................................................................................15

*Janvey v. Dem. Senatorial Campaign Comm., Inc.*,
  712 F.3d 185 (5th Cir. 2013) ................................................................................16

*Klein v. Cornelius*,
  786 F.3d 1310 (10th Cir. 2015) .......................................................................15, 16

*In re Mark Benskin & Co., Inc.*,
  59 F.3d 170 (6th Cir. 1995) ..................................................................................15

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
  164 F. Supp. 3d 568 (S.D.N.Y. 2016) ..................................................................11

*Palmieri v. Lynch*,
  392 F.3d 73 (2d Cir. 2004) ....................................................................................3

*Perkins v. Haines*,
  661 F.3d 623 (11th Cir. 2011) ..............................................................................15

*Picard v. Avellino*,
  557 B.R. 89 (Bankr. S.D.N.Y. 2016) ...............................................................12, 13

*Picard v. BAM L.P.*,
  624 B.R. 55 (Bankr. S.D.N.Y. 2020) ............................................................ *passim*

*Picard v. Citibank, N.A.*,
  12 F.4th 171 (2d Cir. 2021) ..........................................................................2, 15, 17

*Picard v. Fairfield Pagma Assocs., LP*,
  Adv. Pro. No. 10-05169, 2022 WL 1110560 (Bankr. S.D.N.Y. Apr. 13, 2022) ..................3, 4

*Picard v. The Gerald & Barbara Keller Fam. Tr.*,
  634 B.R. 39 (Bankr. S.D.N.Y. 2021) ...................................................3, 4, 10, 13

iii

*Picard v. Gettinger (In re Bernard L. Madoff Inv. Sec.)*,
    976 F.3d 184 (2d Cir. 2020)..............................................................16, 17

*Picard v. JABA Assocs. LP*,
    528 F. Supp. 3d 219 (S.D.N.Y. 2021) ................................................ *passim*

*Picard v. Ken-Wen Fam. Ltd. P'ship*,
    Adv. Pro. No. 10-04468, 2022 WL 709768 (Bankr. S.D.N.Y. Mar. 9, 2022)...............3, 4, 10

*Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    603 B.R. 682 (Bankr. S.D.N.Y. 2019) ........................................................17

*Picard v. Lisa Beth Nissenbaum Tr.*,
    No. 20 cv. 3140, 2021 WL 1141638 (S.D.N.Y. Mar. 24, 2021) ................................... *passim*

*Picard v. Miller*,
    631 B.R. 1 (Bankr. S.D.N.Y. 2021) ................................................................. *passim*

*Picard v. Nelson*,
    610 B.R. 197 (Bankr. S.D.N.Y. 2019) ...........................................10, 12, 14, 17

*Picard v. RAR Entrepreneurial Fund, Ltd.*,
    No. 20-cv-01029, 2021 WL 827195 (S.D.N.Y. Mar. 3, 2021)...............3, 14, 17, 18

*Scholes v. Lehmann*,
    56 F.3d 750 (7th Cir. 1995) ......................................................................15

*Sharp Int'l Corp. v. State Street Bank & Tr. Co.*,
    403 F.3d 43 (2d Cir. 2005)........................................................................16

*Silverstein v. Smith Barney, Inc.*,
    No. 96 Civ. 8892(JSM), 2002 WL 1343748 (S.D.N.Y. June 18, 2002)................................11

*SIPC v. BLMIS*,
    499 B.R. 416 (S.D.N.Y. 2013)....................................................................17

*Thompson v. Doane Pet Care Co.*,
    470 F.3d 1201 (6th Cir. 2006) .....................................................................9

*Vann v. Kreindler, Relkin & Goldberg*,
    434 N.Y.S.2d 365 (N.Y. App. Div. 1980), *aff'd*, 54 N.Y.2d 936 (N.Y. 1981) ........................8

*Walsh v. Chez*,
    583 F.3d 990 (7th Cir. 2009) .......................................................................9

*Wareham v. Complex Media, Inc.*,
    No. 20 Civ. 152 (ER), 2022 WL 523597 (S.D.N.Y. Feb. 22, 2022) .......................................11

*Whalen v. CSX Transp. Inc.*,
  No. 13 Civ. 3784 (LGS) (HBP), 2016 WL 5660381 (S.D.N.Y. Sept. 29, 2016) ....................9

*Wien & Malkin LLP v. Helmsley-Spear, Inc*.,
  846 N.E.2d 1201 (N.Y. 2006) .................................................................................................8

**Statutes**

11 U.S.C. § 546(a)(1)(A) ...........................................................................................................18

11 U.S.C. § 548(a)(1)(A) ...........................................................................................................15

11 U.S.C. § 548(c) .....................................................................................................................17

**Rules**

Fed. R. Bankr. P. 7056-1.......................................................................................................2, 20

Fed. R. Bankr. P. 7056-1(c) ...................................................................................................1, 2

Fed. R. Bankr. P. 7056-1(d) ...................................................................................................1, 3

Fed. R. Civ. P. 26 .......................................................................................................................9

Fed. R. Evid. 201(b) .................................................................................................................11

Fed. R. Evid. 807 .....................................................................................................................11

Fed. R. Evid. 807(a) .................................................................................................................11

## PRELIMINARY STATEMENT

Defendants' opposition[1] in this case is a one-page letter stating that Defendants join the

opposition filed by defendants represented by the same counsel in *Picard v. Jacob M. Dick Rev*

*Living Trust Dtd 4/6/01*, Adv. Pro. No. 10-04570 (Bankr. S.D.N.Y.).[2]  Defendants fail to respond

to the Trustee's Statement of Material Facts and fail to provide their own statement of facts, as

required by Local Rule 7056-1(c).  Failure to do so renders the Trustee's statements "deemed

admitted for purposes of the motion," and without any facts in dispute, Defendants cannot raise a

genuine issue of material fact.  Local Rule 7056-1(d).  On this basis alone, this Court should

grant summary judgment entitling the Trustee to recover $350,000 of fictitious profits received

by Defendants in the Two-Year Period.

If the Court considers the arguments in the Jacob M. Dick Opposition as being properly

raised in this adversary proceeding, the Opposition raises no genuine issue of material fact and

merely regurgitates arguments that the Bankruptcy Court, the District Court, and the Second

Circuit have all repeatedly rejected.  In the Jacob M. Dick Opposition, defendants argued that

those courts incorrectly relied upon the Amended Form BD and other BLMIS books and records

to reach their decisions.  Defendants insisted that the Amended Form BD and BLMIS's

Operating Agreement are inadmissible and the Trustee should not be allowed to rely upon them

to prove his *prima facie* case.  However, defendants had no problem relying on the same

Amended Form BD and other BLMIS books and records when it suited them: asserting certain

records relied upon by the Trustee should not be admitted, while using the same records to

---

[1] *See* Opp. to Trustee's Mot. for Summ. Judgment, *Picard v. Est. of James M. Goodman*, Adv. Pro. No. 10-04762 (Bankr. S.D.N.Y. Apr. 11, 2022), ECF No. 115.

[2] *See* Defs.' Memo. of Law in Opp. to Trustee's Mot. for Summ. Judgment, *Picard v. Jacob M. Dick Rev Living Trust Dtd 4/6/01*, Adv. Pro. No. 10-04570 (Bankr. S.D.N.Y. Mar. 18, 2022), ECF No. 113 (the "Jacob M. Dick Opposition").

advance their defenses. The Amended Form BD, BLMIS books and records, and other third-party records are admissible and dispositive of Madoff's intent to transfer *all* assets and liabilities of the sole proprietorship to the LLC in 2001.

In the Jacob M. Dick Opposition, defendants also argued that the Trustee cannot rely on the Ponzi presumption based on a concurrence in *Picard v. Citibank, N.A.*, 12 F.4th 171, 200–03 (2d Cir. 2021). But the Ponzi presumption has long been relied upon by courts unwinding Ponzi schemes. Further, the concurrence's underpinnings are not relevant here: the transfers in *Citibank* were repayments of loans and recovery of principal, whereas Defendants here received fictitious profits from the Ponzi scheme for which value cannot be given.

Finally, prejudgment interest is appropriate to compensate the estate for the loss of the use of the funds that Defendants continue to withhold. This is consistent with the multiple other decisions that have awarded prejudgment interest in nearly identical cases in this liquidation.

Accordingly, as there are no material facts in dispute, summary judgment should be granted in favor of the Trustee on Count One in his Complaint.

## **ARGUMENT**

## I.    **DEFENDANTS FAIL TO RESPOND TO THE TRUSTEE'S STATEMENT OF FACTS AND WAIVE ALL OTHER DEFENSES**

Local Rule 7056-1 requires:

Papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short, and concise statement of additional material facts as to which it is contended that there is a genuine issue to be tried.

Local Rule 7056-1(c). Defendants fail to submit a response to the Trustee's Statement of Material Facts, ECF No. 106, or submit their own statements of material facts identifying a genuine issue to be tried. Further, Defendants did not properly join in the Response to the

Trustee's Statement of Material Facts or Defendants' Rule 56.1 Counterstatement of Material

Facts filed by defendants in the *Jacob M. Dick* case.[3]  As such, all of the Trustee's facts

submitted in the Trustee's Statement are deemed admitted and thus, there are no facts in dispute.

*See* Local Rule 7056-1(d); *see also Gubitosi v. Kapica*, 154 F.3d 30, n.1 (2d Cir. 1998) (finding

"because plaintiff failed to respond to his Local Rule [7056-1] statement, the material facts

contained in [defendant's] statement are deemed to be admitted as a matter of law").

Defendants further waive all other defenses and arguments not raised in the Jacob M.

Dick Opposition.  *See Palmieri v. Lynch*, 392 F.3d 73, 87 (2d Cir. 2004) (finding party waived

argument when it failed to "raise this argument in opposition to summary judgement").

## II.    PRIOR RULINGS IN THIS LIQUIDATION PROPERLY GUIDE THIS COURT AND ARE LAW OF THE CASE

Defendants ignore that the arguments raised in the Jacob M. Dick Opposition have been

repeated and rejected *ten times* within this liquidation.[4]  *See Picard v. Fairfield Pagma Assocs.,*

*LP*, Adv. Pro. No. 10-05169, 2022 WL 1110560 (Bankr. S.D.N.Y. Apr. 13, 2022); *Picard v.*

*Ken-Wen Fam. Ltd. P'ship*, Adv. Pro. No. 10-04468, 2022 WL 709768 (Bankr. S.D.N.Y. Mar. 9,

2022); *In re BLMIS*, No. 1:21-cv-02334-CM, 2022 WL 493734, at *15 (S.D.N.Y. Feb. 17, 2021)

("*Epstein II*"); *Picard v. The Gerald & Barbara Keller Fam. Tr.*, 634 B.R. 39 (Bankr. S.D.N.Y.

2021); *Picard v. Miller*, 631 B.R. 1 (Bankr. S.D.N.Y. 2021); *Picard v. JABA Assocs. LP*, 528 F.

---

[3] *Picard v. Jacob M. Dick Rev Living Trust Dtd  4/6/01*, Adv. Pro. No. 10-04570 (Bankr. S.D.N.Y. Mar. 18, 2022), ECF Nos. 115–16.

[4] The only outlier had been a decision by Judge Furman who deemed a jury trial necessary on the bank account issue.  *Picard v. RAR Entrepreneurial Fund, Ltd.*, No. 20-cv-01029, 2021 WL 827195 (S.D.N.Y. Mar. 3, 2021). The jury trial recently culminated in a unanimous verdict for the Trustee.  *See RAR Entrepreneurial Fund, Ltd.*, No. 20-cv-01029 (S.D.N.Y. Mar. 7, 2022), ECF No. 132.  Judge Furman stated on the record that if the jury had not found for the Trustee, he would have granted the Trustee's Rule 50 motion because the evidence overwhelmingly favored the Trustee and "really uniformly pointed in the direction that supported the jury's verdict."  Decl. of Tara E. Turner, dated Apr. 15, 2022 ("Turner Decl."), Ex. 1 (Tr. at 389:4–16, *RAR Entrepreneurial Fund, Ltd.*, No. 20-cv-01029 (S.D.N.Y. Mar. 7, 2022), ECF No. 137).

Supp. 3d 219 (S.D.N.Y. 2021); *Picard v. Lisa Beth Nissenbaum Tr.*, No. 20 cv. 3140 (JGK),

2021 WL 1141638 (S.D.N.Y. Mar. 24, 2021); *Picard v. Est. of Seymour Epstein*, Adv. Pro. No.

10-04438 (CGM) (Bankr. S.D.N.Y. Jan. 27, 2021), ECF No. 155 ("*Epstein I*"). There is no

reason for this Court to deviate from these prior rulings.

Further, the doctrine of law of the case applies to legal issues already determined in other

cases in this liquidation. *Epstein II*, 2022 WL 493734, at *12. Law of the case was developed in

order to "maintain consistency and avoid reconsideration of matters once decided during the

course of a single continuing lawsuit." *Bourdeau Bros., Inc. v. Montagne (In re Montagne)*,

Adv. Pro. No. 08-1024, 2010 WL 271347, at *5 (Bankr. S.D.N.Y. Jan. 22, 2010) (citation

omitted). When "'prior decisions in an ongoing case either expressly resolved an issue or

necessarily resolved it by implication,' that 'rule of law . . . should continue to govern in

subsequent stages of the same case.'" *Epstein II*, 2022 WL 493734, at *12 (quoting *Aramony v.

United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001)). It is law of the case that the BLMIS

books and records are admissible, *Blecker v. Picard*, 830 F. App'x 669, 671 (2d Cir. 2020), and

that the Trustee is entitled to prejudgment interest. *See Fairfield Pagma*, 2022 WL 1110560, at

*7–8; *Ken-Wen Fam. Ltd.*, 2022 WL 709768, at *3–4; *Epstein II*, 2022 WL 493734, at *18–19;

*Keller Fam. Tr.*, 634 B.R. at 52–53; *Miller*, 631 B.R. at 17–18; *JABA*, 528 F. Supp. 3d at 246;

*Nissenbaum*, 2021 WL 1141638, at *18; *Epstein I* at 10; *BAM L.P.*, 624 B.R. at 63–66.

## III.    THE TRANSFERS WERE AN INTEREST OF THE DEBTOR IN PROPERTY

The admissible evidence before the Court demonstrates that the Trustee can recover the

fraudulent transfers to Defendants because the JPMorgan Accounts were transferred to the LLC

in 2001. But even if the accounts were not held by the LLC, the funds in those accounts

constitute customer property recoverable by the Trustee. Stmt. ¶¶ 9–11, ECF No. 106; s*ee also

Epstein II*, 2022 WL 493734, at *13 ("The evidence from the Trustee['] s experts shows that the

JPMorgan Accounts were transferred to the LLC in 2001, and the transfers made from those accounts were of BLMIS customer funds"); *Miller*, 631 B.R. at 8 ("The transfers the Trustee seeks to avoid are customer property."); *Epstein I* at 7 ("All monies transferred from the 509 Account or the 703 Account are 'customer property' for purposes of these SIPA cases.").

A.    **Madoff's Sleights of Hand Do Not Create a Genuine Dispute That BLMIS, including the IA Business, Was Transferred to the LLC**

When Madoff converted his business from a sole proprietorship to an LLC in 2001, he did not file a new application for SEC registration.  *See* Motion at 27.  Instead, he filed an Amended Form BD to reflect that change, retaining the same SEC registration number for the LLC that was assigned to the sole proprietorship in January 1960.  *Id.*  After the transfer, the sole proprietorship ceased to exist as a broker-dealer or in any other capacity.

In the Jacob M. Dick Opposition, defendants argued that Madoff's sole proprietorship continued to run the IA Business, while the other two business units operated under the newly-formed LLC.  *See* Jacob M. Dick Opp. at 5.  But the Amended Form BD explicitly stated the "predecessor" or the sole proprietorship, would transfer to its successor, the LLC, "*all* of predecessor's assets and liabilities related to predecessor's business," including the IA Business and the JPMorgan Accounts.  Cremona Decl., Ex. 3 (Amended Form BD at 10–11, *see also* Question 5) (emphasis added).  The Amended Form BD listed no assets or liabilities as "not assumed by the successor."  *Id.*  It also stated no "accounts, funds, or securities of customers of the applicant are held by or maintained by [any] other person, firm, or organization."  *Id.*; *see also Epstein II*, 2022 WL 493734, at *13; *JABA*, 528 F. Supp. 3d at 234 (citing *BAM*, 624 B.R. at 61 ("This Court finds that all of the assets and liabilities of the sole proprietorship, including the IA Business, were transferred to BLMIS via the 2001 SEC Amended Form BD.")).

In support of defendants' theory that the sole proprietorship continued its business after the LLC was formed, defendants offer speculation, unsupported by evidence. This argument has already been rejected by the courts in this Circuit as baseless. The filing of the form ADV by the LLC in August 2006 assuages any doubt that the LLC owned and operated the IA Business prior to the date of the transfers the Trustee seeks to recover. *Epstein II*, 2022 WL 493734, at *16 ("The failure to check a box is particularly meaningless, as the IA Business was not registered with the SEC until 2006; thus, the IA box did not need to be checked in 2001, when the assets and customer accounts (including [Defendants'] accounts) were transferred to BLMIS."); Cremona Decl., Ex. 4 (Form ADV) (providing "Bernard L. Madoff Investment Securities LLC" as the "Primary Business Name," "full legal name," and "Name under which you primarily conduct your advisory business").

In response, the Jacob M. Dick defendants argued that even after the LLC was registered as an investment advisor in 2006, this registration was somehow extinguished because its annual FOCUS reports showed no income from investment advisory services. But BLMIS's attempt to hide its fraud by reporting no income from its IA Business does not create a genuine dispute as to whether the transfers in this case were made by the LLC. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *JABA*, 528 F. Supp. 3d at 236 n.4

The Jacob M. Dick Opposition also claimed that the Amended Form BD was missing "Schedule D," which Madoff was required to complete if he intended for the LLC to succeed the IA Business. But all of the information required to be included in "Schedule D" appears in the Amended Form BD on pages 9 through 10. For example, the Amended Form BD requires the

applicant to include *Other Business Names* the firm uses to conduct business, (Question 1.C.(2)), and to list the name(s) of *Successors* (Question 5).[5]

Likewise, any argument that the JPMorgan Account statements did not list the word "LLC" after "Bernard L. Madoff Investment Securities" and the checks or Form 1099s Madoff sent to Defendants post-2001 listed "Bernard L. Madoff" rather than "Bernard L. Madoff Investment Securities LLC" on the top left corner is insufficient to make ownership of the IA Business a genuine factual dispute. *See* Jacob M. Dick Opp. at 8, 12, 17. The name on the JPMorgan Account statements changed after the LLC was formed, from "Bernard L. Madoff" to "Bernard L. Madoff Investment Securities". Stmt. ¶ 86 (citing Collura Decl., Attach. A (Collura Report) ¶¶ 20 n.7, 25 n. 9, ECF No. 108-1). BLMIS also sent letters to JPMorgan identifying the JPMorgan Accounts as held by the LLC. Cremona Decl., Ex. 6 (Letters to Financial Institutions). As both this Court and the District Court held, the inconsistent use of business names on bank accounts and checks are expected when exhuming a Ponzi scheme and are insufficient to raise a genuine issue of fact. *Epstein II*, 2022 WL 493734, at *16. *JABA*, 528 F. Supp. 3d at 234 (citing *BAM*, 624 B.R. at 60); *see also Nissenbaum*, 2021 WL 1141638, at *9.

Finally, the Jacob M. Dick Opposition argued that those defendants never consented to Madoff's "assignment" of their customer account to the LLC, and therefore any "assignment" to the LLC would violate New York contract law providing that a personal services contract may not be assigned without consent. But the pre-2001 customer agreements for both the Jacob M. Dick and the Goodman Accounts specifically included a section on "Successors" which stated:

---

[5] Just below the heading "BD Schedule C – Amendments to Schedules A&B" reads "BD – Other Business Names" which is followed by "No Information Filed." Cremona Decl. Ex. 3 (Amended Form BD at 9) (emphasis added). Later that page is a heading "BD – Successions" under which Madoff lists "Bernard L. Madoff" as the predecessor entity and states that "all of predecessor's assets and liabilities" are to be assumed by the successor. *Id.* at 9–10 (emphasis added). The remainder of the information to be included in Schedule D also appears on that same page. *See id.* at 9.

> Customer hereby agrees that this Agreement and all the terms thereof shall be binding upon Customer's heirs, executors, administrators, personal representatives and assigns. This agreement shall enure to the benefit of the Broker's present organization, and any successor organization, irrespective of any change or changes at any time in the personnel thereof, for any cause whatsoever.

Cremona Decl., Ex. 16 (Pre-2001 BLMIS Customer Agreement). Defendants accordingly consented to the transfer to the LLC when they signed their customer agreement. Defendants were also aware of the change in corporate form because they signed a new customer agreement on October 26, 2004 which listed the LLC in the top left corner. Cremona Decl., Ex. 17 (Post-2001 BLMIS Customer Agreement). Likewise, Defendants received BLMIS customer statements from the LLC after 2001. *Compare* Dubinsky Decl., Attach. A (Dubinsky Report) Figure 7 (Dec. 30, 2000 BLMIS Customer Statement) *with* Cremona Decl., Ex. 15 (April 30, 2008 BLMIS Customer Statement). Finally, Defendants changed the address in connection with the Goodman Account in 2007 and the LLC confirmed verification of the address change. Cremona Decl., Ex. 18 (Verification of Address Change). Even assuming their account opening agreement was a personal services contract, a change in corporate form does not constitute an assignment of that contract. *Wien & Malkin LLP v. Helmsley-Spear, Inc*., 846 N.E.2d 1201, 1207–09 (N.Y. 2006) (holding change in managing agent's corporate form was a "technical matter" that did not render the new entity an assignee; the entity was instead a successor in interest); *see also Vann v. Kreindler, Relkin & Goldberg*, 434 N.Y.S.2d 365, 368 (N.Y. App. Div. 1980), *aff'd*, 54 N.Y.2d 936 (N.Y. 1981) ("Although the [legal] entity changed, the relationship [among the parties] continued as before.").

Because the JPMorgan Accounts were transferred to the LLC in 2001 and those Accounts were used to make the transfers to Defendants during the Two-Year Period, the transfers are an "interest of the debtor in property," and the Trustee has met the first element of his claim.

### B. The Expert Opinions Are Relevant to the Bank Account Ownership Question

In the Jacob M. Dick Opposition, defendants further asserted that this Court should not consider the Trustee's expert reports because they are not relevant to the ownership of the JPMorgan Accounts. *See* Jacob M. Dick Opp. at 12. This argument is not supported by Fed. R. Civ. P. 26 or case law.

Rule 26 requires that an expert report "provide the substantive rationale in detail with respect to the basis and reasons for the proffered opinions." *Whalen v. CSX Transp. Inc.*, No. 13 Civ. 3784 (LGS) (HBP), 2016 WL 5660381, at *4 (S.D.N.Y. Sept. 29, 2016); *Thompson v. Doane Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir. 2006). The report's purpose is "to convey the substance of the expert's opinion . . . so that the opponent will be ready to rebut, to cross-examine, and to offer a competing expert if necessary." *Walsh v. Chez*, 583 F.3d 990, 994 (7th Cir. 2009); *accord Harkabi v. SanDisk Corp.*, No. 08 Civ. 8203 (WHP), 2012 WL 2574717, at *4 (S.D.N.Y. June 7, 2012). To that end, the Trustee made the experts available for deposition and their reports available for inspection but Defendants strategically chose not to depose them and even intentionally elected to forego proffering their own experts.

As part of Dubinsky's investigation, he analyzed the corporate structure and related bank accounts of BLMIS. Dubinsky confirmed that Madoff founded BLMIS as a sole proprietorship in 1960, that BLMIS operated three business units and that in 2001 BLMIS was reorganized as a single-member LLC with Madoff as the sole member. Dubinsky Decl., Attach. A (Dubinsky Report) ¶¶ 36, 38. He also confirmed that in August of 2006, BLMIS registered as an investment adviser with the SEC. *Id*. ¶ 39. He further analyzed the bank accounts as part of his solvency and proof of fraud analysis, finding that "the pervasive fraud in BLMIS was conducted through its main bank accounts," and determined that all three business units were part of the LLC when it failed in 2008. *Id*. ¶ 77. Dubinsky identified the JPMorgan Accounts as the main bank accounts

for the IA Business, and the Bank of New York '621 Account for the Proprietary Trading and Market Making businesses. *Id*. ¶ 78. Dubinsky further found that no monies were deposited in the JPMorgan Accounts from the sale of securities, or the receipt of dividends.

Likewise, Collura analyzed all available BLMIS bank records and "confirmed the accuracy and reliability of the cash transactions on the customer statements by reconciling those transactions reported on the BLMIS customer statements to available third-party bank records." *Nelson*, 610 B.R. at 220 (citation omitted). This analysis was the basis for Collura's opinion that the activity in the JPMorgan Accounts did not change after the transition to the LLC—receiving and distributing the deposits and withdrawals of the IA Business. *Id.*

Further, this Court and the District Court have held that both Dubinsky and Collura's expert reports are relevant to the issue of account ownership. *See, e.g.*, *Ken-Wen*, 2022 WL 709768, at *2–3; *Keller Fam. Tr.*, 634 B.R. at 46; *Miller*, 631 B.R. at 3–4; *Epstein II*, 2022 WL 493734, at *3; *JABA*, 528 F. Supp. 3d at 227, 235; *Nissenbaum*, 2021 WL 1141638, at *3, *9.

### C.    The Trustee's Motion Rests On Admissible Evidence

The Jacob M. Dick Opposition asserted that this Court should not follow the many prior decisions on the bank account issue because the courts improperly relied on the Amended Form BD. Jacob M. Dick Opp. at 8. But the Amended Form BD has been admitted three times at trial and both this Court and the District Court have found it admissible for purposes of summary judgment. *See* Turner Decl., Ex. 2 (Tr. at 77:25–78:9, 97:2–98:5; *RAR Entrepreneurial Fund, Ltd.*, No. 20 CV 1029 (JMF) (S.D.N.Y. Mar. 2, 2022), ECF No. 133); Tr. at 53:22–54:2, *BAM L.P.*, Adv. Pro. No. 10-04390 (CGM) (Bankr. S.D.N.Y. Sept. 14, 2020), ECF No. 225; *Nelson*, 610 B.R. at 206; *Epstein II*, 2022 WL 493734, at *3; *JABA*, 528 F. Supp. 3d at 227.

The Court may take judicial notice of the Amended Form BD as a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be

questioned." Fed. R. Evid. 201(b). An entity's filings with governmental agencies, including the SEC, fall within this rule. *See Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 574 n.1 (S.D.N.Y. 2016) ("All SEC filings discussed in this Opinion are . . . independently, public documents of which the Court may take judicial notice."). Indeed, the Amended Form BD can be admitted for the fact of the filing itself —amended Form BDs can only be used when a successor "is acquiring or assuming substantially all of the assets and liabilities of the predecessor's broker-dealer." Exch. Act Rel. No. 31,661, 53 SEC Dock. 296, 297–98 (1992).

The contents of the Amended Form BD are admissible under Fed. R. Evid. 807(a) which permits the admission of hearsay evidence if: (1) it is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating statement; and (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

The Amended Form BD as filed with, and attested to twice by the SEC displays "sufficient guarantees of trustworthiness under the totality of the circumstances" to be admissible under Rule 807. *Wareham v. Complex Media, Inc.*, No. 20 Civ. 152 (ER), 2022 WL 523597, at *5 (S.D.N.Y. Feb. 22, 2022) (admitting email under Fed. R. Evid. 807); *see also Silverstein v. Smith Barney, Inc.*, No. 96 Civ. 8892(JSM), 2002 WL 1343748, at *3 (S.D.N.Y. June 18, 2002). There is no dispute that the Form BD was filed by BLMIS with the SEC in 2001 and Defendants provide no reason to doubt the accuracy of the statements. *Cosmopolitan Shipping Co., v. Cont'l Ins. Co.*, 514 F. Supp. 3d 614, 624 (S.D.N.Y. 2021) (affirming trial court's admission of documents under residual exception).

The Jacob M. Dick Opposition also argued that the Operating Agreement and other BLMIS records are not reliable because of the fraud. But the Jacob M. Dick defendants rely on

these very records to support their claims, arguing the checks and Form 1099s received from

BLMIS, which listed "Bernard L. Madoff," are admissible and relevant to bank account

ownership.  This Court has previously found similar objections to be wholly "disingenuous."

*Miller*, 631 B.R. at 7 ("It appears the Defendant advocates for admissibility when it suits his

position, and inadmissibility when it does not."); *see also Nelson*, 610 B.R. at 223 (same).

Further, this Court, the District Court, and the Second Circuit have repeatedly recognized

the admissibility of BLMIS's books and records under the business records and residual hearsay

exceptions.  *See In re BLMIS*, 830 F. App'x 669, 671 (2d Cir. 2020); *Epstein II*, 2022 WL

493734, at *20; *Nelson*, 610 B.R. at 225–26 (admitted at trial); *In re Bernard L. Madoff*, 592

B.R. 513, 524–26 (Bankr. S.D.N.Y. 2018) (same); *JABA*, 528 F. Supp. 3d at 231–33 (admissible

for summary judgment); *Nissenbaum*, 2021 WL 1141638, at *7–8 (same).  These decisions are

law of the case.  *See Epstein II*, 2022 WL 493734, at *13 ("[T]he Second Circuit's conclusion

that BLMIS books and records are admissible as proof of profit withdrawals is a legal conclusion

(whether evidence is admissible or not being a question of law) is 'law of the case' in all

subsequent BLMIS adversary proceedings.").  Any argument that the records are inadmissible

because they are untrustworthy has been dismissed in this liquidation specifically and in other

frauds generally.  *See In re Enron Creditors Recovery Corp.*, 376 B.R. 442, 454–58 (Bankr.

S.D.N.Y. 2007) (admitting debtor's records under business records exception although Enron

was engaged in fraudulent activity); *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2006

WL 346418, at *1 (Bankr. S.D.N.Y. Feb. 6, 2006) (admitting debtors' books and records

although principals engaged in bank and securities fraud through debtor).

> **D.**   ***Avellino* Is Wrong**

The Jacob M. Dick Opposition relied heavily on an interlocutory decision in *Picard v.*

*Avellino*, in which the court dismissed the Trustee's claims to recover transfers made before

2001 to claim that if customer property was held in Madoff's name, rather than the LLC's, the

Trustee could not recover it, because such property cannot be property in which the LLC had an

interest. 557 B.R. 89 (Bankr. S.D.N.Y. 2016).[6]  Any reliance on *Avellino* is misplaced.

In *Avellino*, Judge Bernstein distinguished between the Trustee's avoidance of transfers

made by Madoff's sole proprietorship prior to 2001 and by the LLC after that time.  557 B.R. at

109–10.  Finding that the "SIPA debtor" in this liquidation was the LLC, not the sole

proprietorship, Judge Bernstein held that the SIPA Trustee was limited to recovering transfers of

customer property made after 2001.  *Id.*  Although Judge Bernstein acknowledged that the funds

deposited with the sole proprietorship were customer property and that the sole proprietorship

had been a member of SIPC since 1970, he found the SIPA Trustee could not recover

withdrawals by customers of the sole proprietorship.  *Id.*

But as this Court previously held, *Avellino* does not help Defendants here because the

Trustee is not seeking to recover transfers made by Madoff prior to 2001.  *See JABA*, 528 F.

Supp. 3d at 235; *Nissenbaum*, 2021 WL 1141638, at *9; *Keller Fam. Tr.*, 634 B.R. at 45–46;

*Epstein II*, 2022 WL 493734, at *11 ("The Court in *Avellino* held that the Trustee could not

recover transfers prior to 2001. . . . This case concerns Two Year Transfers made between 2006-

2008; thus, *Avellino* has no bearing on the Trustee's standing in this case.").  Nor does *Avellino*

determine when the IA Business became part of the LLC.  *Keller Fam. Tr.*, 634 B.R. at 45–46.

In any case, *Avellino* was wrongly decided.  First, because the sole proprietorship had

ceased to exist some eight years prior to the collapse, the only SIPC member that *could*

---

[6] The Trustee's action in *Avellino* is ongoing in this Court, and the Trustee will appeal the portion of the ruling
affecting pre-2001 transfers once a final judgment is entered in the case.

*been* named in the Protective Decree was the LLC.[7]

Second, the Trustee was appointed for the liquidation of the *business* of the broker-dealer. Madoff's business was a continued, uninterrupted one from 1960, funneling customer property in the same way through the same bank accounts. *In re Bernard L. Madoff*, 522 B.R. 41 (Bankr. S.D.N.Y. 2014). Where the same broker-dealer is continuously registered with the SEC under the same registrant number, its SIPC membership is also continuous. Whether a change in corporate form might change the "person" who was the debtor in an ordinary bankruptcy proceeding, the debtor in this SIPA Proceeding is "the member of SIPC" as to which the Protective Decree was brought. And since SIPA was enacted in 1970, the relevant member of SIPC here has been BLMIS, whether organized as a sole proprietorship or an LLC.

Third, the Consolidation Order supports, rather than undermines, the right of the Trustee to recover customer property transferred from any bank account held by BLMIS or Madoff. The Order preserves the respective avoidance powers of both the SIPA Trustee and the Chapter 7 Trustee, a provision included in light of caselaw holding that "[a]bsent express preservation of the trustee's avoidance power, an order of substantive consolidation would ordinarily eliminate that power." *Alexander v. Compton*, 229 F.3d 750, 768 (9th Cir. 2000). But the preservation of each trustee's respective powers is not a limit on those powers. The Consolidation Order does not state that the SIPA Trustee can only recover customer property when held by the LLC; to the contrary, the effect of the Order is that when the SIPA Trustee exercises that power, he does so on behalf of the consolidated estate and can recover any customer property held by Madoff *or* the LLC. *BAM*, 624 B.R. at 61 & n.4 (noting that because the Chapter 7 case was substantively

---

[7] The Jacob M. Dick Opposition also argued that, based on defendants' interpretation of the Consolidation Order, the Trustee lacks standing to recover the Two-Year Transfers. Each of the many courts to previously consider this issue has rejected it. *See Nelson*, 610 B.R. at 216; *JABA*, 528 F. Supp. 3d at 234–35; *RAR*, 2021 WL 827195, at *4.

consolidated with the SIPA proceeding, the SIPA Trustee should be able to recover fraudulent

transfers made by Madoff's sole proprietorship).

## IV.    BLMIS MADE EVERY TWO-YEAR TRANSFER WITH ACTUAL FRAUDULENT INTENT AND IN FURTHERANCE OF THE FRAUD

Each of the avoidable transfers at issue in this case were made with the actual intent to

hinder, delay, or defraud some or all of BLMIS's then existing and/or future creditors within the

meaning of section 548(a)(1)(A) of the Bankruptcy Code.  11 U.S.C. § 548(a)(1)(A).  The

Trustee is entitled to rely on the Ponzi presumption to demonstrate this fraudulent intent.

### A.    The Ponzi Presumption is a Valid Indicator of Fraudulent Intent

The intent to hinder, delay, or defraud creditors is presumed under the Ponzi presumption

if the Trustee can show that (1) the transferor operated a Ponzi scheme; and (2) the transfers

made to the transferee by the debtor were "in furtherance" of a fraudulent scheme.  *See Citibank*,

12 F.4th at 181 (citation omitted).

The Jacob M. Dick Opposition relied on a concurrence to a recent Second Circuit

decision to suggest that the Ponzi presumption is unsound.  *Id.* at 200–03.  But the Ponzi

presumption was in fact applied to the BLMIS fraud in *Citibank*; the Second Circuit had "no

occasion to assess" whether it "is well-founded" because it had not been challenged by the

parties.  *Id*. at n.7.  This was because the presumption has been embraced in this district and

other district courts, and multiple courts of appeals have considered and adopted the Ponzi

presumption.  *See Janvey v. Brown*, 767 F.3d 430, 438–39 (5th Cir. 2014); *In re Mark Benskin &*

*Co., Inc.*, 59 F.3d 170 (6th Cir. 1995); *Scholes v. Lehmann*, 56 F.3d 750, 757 (7th Cir. 1995);

*Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008); *Klein v. Cornelius*, 786 F.3d 1310, 1320

(10th Cir. 2015); *Perkins v. Haines*, 661 F.3d 623, 626 (11th Cir. 2011).

The Ponzi presumption is based on the nature of a Ponzi scheme which cannot work

forever:  inevitably, "the scheme will collapse and [] those still invested in the enterprise will

lose their money." *Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC*, 439

B.R.284, 294 n.19 (S.D.N.Y. 2010).  Courts adopting the presumption have repeatedly explained

that intent to defraud can be inferred from a debtor's decision to perpetrate a scheme that is

"insolvent by definition." *Klein*, 786 F.3d at 1320; *see also Janvey v. Dem. Senatorial

Campaign Comm., Inc.*, 712 F.3d 185, 196 (5th Cir. 2013) (same); *Bayou*, 439 B.R. at 294 n.19.

Multiple courts have rejected the suggestion that the Ponzi scheme presumption

contravenes the Second Circuit's decision in *Sharp International Corp. v. State Street Bank &

Trust Co.*, 403 F.3d 43 (2d Cir. 2005), because *Sharp* did not involve a Ponzi scheme or

implicate the presumption. *See, e.g.*, *In re Dreier LLP*, 452 B.R. 391, 425 (Bankr. S.D.N.Y.

2011); *Bear, Stearns Sec. Corp v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 10

(S.D.N.Y. 2007).  Moreover, the Second Circuit recently held that *Sharp*'s reasoning is

specifically inapplicable to Madoff-related cases brought by the Trustee under SIPA.  In

*Gettinger*, appellees urged the court "to equate the [BLMIS] transfers . . . to those in *Sharp* and

rule in their favor on that basis."  976 F.3d at 200.  "But there exists no equivalency," the court

held, "because Sharp involved a bankruptcy liquidation, not a SIPA liquidation." *Id.*  *Sharp* held

that "'the basic object of fraudulent conveyance law is to see that the debtor uses his limited

assets to satisfy some of his creditors; it normally does not try to choose between them.'" *Id.*

(quoting *Sharp*, 403 F.3d at 54).  In *Gettinger*, the Second Circuit explained that "Defendants'

reliance on *Sharp* is misplaced because the case at bar involves a SIPA liquidation in which we

*do* 'choose among' creditors." *Id.* at 200–01.  For that same reason, any distinction between

preferential and actual fraudulent transfers does not apply in a SIPA proceeding.

16

Finally, the value concerns raised in the *Citibank* concurrence are not present here. In his concurrence, Judge Menashi expressed concern that the Ponzi presumption assumes that creditors receiving debt repayments were not owed a valid antecedent debt. *Citibank*, 12 F.4th at 200–04 ("Under . . . normal principles, creditors such as Citibank and Legacy would be able to retain the repayments . . . ."). But the transfers at issue in *Citibank* implicated repayments of loans and recovery of principal; here, Defendants received fictitious profits from the Ponzi scheme. Allowing recipients of fictitious profits to assert a "value" defense under § 548(c) would be inconsistent with SIPA's prioritization of the customer property estate. *Gettinger*, 976 F. 3d at 199–200; *SIPC v. BLMIS*, 499 B.R. 416, 423–24, 426 (S.D.N.Y. 2013).

### B.    The IA Business was a Ponzi Scheme and a Fraud, and the Trustee has Demonstrated BLMIS's Fraudulent Intent Under Any Relevant Standard

The Jacob M. Dick Opposition made the remarkable assertion that the IA Business "conducted legitimate business and was not a Ponzi scheme." Jacob M. Dick Opp. at 31. This is false. As the Second Circuit has held, "BLMIS was a sham" and "Madoff operated his Ponzi scheme through his investment firm BLMIS, a securities broker-dealer." *Citibank*, 12 F.4th at 181; *JABA*, 528 F. Supp. 3d at 237 ("There is no genuine dispute of material fact that BLMIS operated a Ponzi scheme."); *see also Gettinger*, 976 F.3d at 188.

No avenue remains for Defendants to continue to challenge the Ponzi scheme. The evidence underlying the dispositive court decisions include the plea allocutions of Madoff and five other BLMIS employees, which themselves "establish *prima facie* that Madoff ran BLMIS as a Ponzi scheme." *JABA*, 528 F. Supp. 3d at 237 (citing *Legacy*, 603 B.R. at 691); *see also RAR*, 2021 WL 827195, at *8; *Nelson*, 610 B.R. at 210. It also includes the Trustee's unrebutted expert reports, which establish that BLMIS executed no securities trading on behalf of its customers, including Defendants, and that the funds in the JPMorgan Accounts consisted of

17

customer property that was used to pay redemptions to other customers.  Dubinsky Decl., Attach.

A (Dubinsky Report) ¶¶ 19–26, 36, 155–58, 330–37, 340 n.285, Figure 52, Section

V.A.(1)(c)(i)-(vi), A.(1)(e)(i)-(iv); Collura Decl., Attach. A (Collura Report) ¶¶ 17, 20–30, 32,

46–47; *see also Epstein II*, 2022 WL 493734, at *18; *JABA*, 528 F. Supp. 3d at 225–26.

Even if the Trustee were not entitled to rely on the Ponzi presumption, a trustee may

prove actual fraudulent intent under section 546(a)(1)(A) by showing certain "badges of fraud."

*Banner v. Kassow*, 104 F.3d 352, 352 (2d Cir 1996).  Courts in this liquidation have repeatedly

found the Trustee demonstrated sufficient "badges of fraud" to show BLMIS's fraudulent intent.

*See JABA*, 528 F. Supp. 3d at 240–41 (noting badges of fraud supplied a separate basis to

conclude the Two-Year Transfers were made with intent to defraud); *Nissenbaum*, 2021 WL

1141638, at *14–15 (same).

## C.    Any Conjecture Regarding the T-Bills Does Not Create a Disputed Issue of Material Fact

Against the undisputed evidence of the Ponzi scheme, the Jacob M. Dick Opposition

alleged, again with no evidentiary basis, that "Madoff purchased large amounts of T-Bills for

customers and held them throughout the time they were credited to the customers' accounts."

Jacob M. Dick Opp. at 31.  This argument has been rejected each time it has been raised.  *See*

*Epstein II*, 2022 WL 493734, at *17 ("[T]he uncontroverted evidence demonstrates that the T-

Bills listed on customer statements were fictitious."); *JABA*, 528 F. Supp. 3d at 238–39;

*Nissenbaum*, 2021 WL 1141638, at *12–13 (same); *RAR*, 2021 WL 827195, at *8–9.

The Trustee's unrebutted evidence firmly establishes that BLMIS did not purchase T-

Bills for customer accounts.  Dubinsky's analysis shows, and DiPascali's testimony confirms,

that none of the T-Bills purchased by the IA Business are the same T-Bills reported on customer

statements, including Defendants'.  Instead, BLMIS purchased T-Bills with customer funds for

cash management purposes, and not for particular customers. The T-Bills that appear in the

records of DTC, the clearing house for securities transactions, do not match the T-Bills that

appeared on customer statements. *JABA*, 528 F. Supp. 3d at 225–26; Dubinsky Decl., Attach. A

(Dubinsky Report) ¶ 226. The volume of T-bills that appeared on the customer statements

exceeded many times over the aggregate volume of T-Bills actually purchased and held by

BLMIS. Dubinsky Decl., Attach. A (Dubinsky Report) ¶ 227 & Table 5. And, DiPascali

testified in the criminal trial captioned *United States v. Bonventre*, No. 10-cr-228 (LTS)

(S.D.N.Y.) that the brokerage accounts were used to purchase T-Bills for BLMIS's cash

management purposes and not for IA business customers. Cremona Decl., Ex. 8 (DiPascali

Criminal Trial Tr.) at 4921:7–12, 4930:6–4931:5, 4931:12–4933:13, 4961:15–4962:22, 5344:24–

5346, 6950:25–6951:9; *see also Epstein II*, 2022 WL 493734, at \*14.

Based on the foregoing and because it is undisputed that the transfers were made in the

Two-Year Period, there can be no question that the Trustee has satisfied his *prima facie* case.

## V.    THE TRUSTEE IS ENTITLED TO PREJUDGMENT INTEREST

Prejudgment interest is appropriate here. As this Court previously stated regarding

similarly situated defendants: "Although it may be true that Defendants were not responsible for

BLMIS' fraud, the purpose of prejudgment interest is to make the Plaintiff whole rather than to

punish Defendants or to provide Plaintiff with a windfall." *BAM*, 624 B.R. at 63 (citation

omitted). This Court has discretion in granting prejudgment interest and setting the interest rate,

"and absent a sound reason to deny prejudgment interest, such interest should be awarded."

*Epstein I* at 10 (citing *In re 1031 Tax Grp.*, 439 B.R. 84, 87 (Bankr. S.D.N.Y. 2010)).

Defendants have done nothing to distinguish themselves from others whose cases have

come before them. *See Miller*, 631 B.R. at 18 (awarding prejudgment interest where defendant

"recovered his principal investment" from his IRA when "[o]ther victims have not been so

fortunate"); *JABA*, 528 F. Supp. 3d at 246 (awarding prejudgment interest to "compensate[] the Trustee for the loss of the use of the Two-Year Transfers for the years that this litigation has lasted, and [to] reduce[] the profits to the defendants from having withheld the funds); *Nissenbaum*, 2021 WL 1141638, at *18 (same); *Epstein I* at 10 (same); *BAM*, 624 B.R. at 63 (awarding prejudgment interest where defendants went to trial on an issue that was previously resolved by this Court in *Nelson*).

Indeed, Defendants did not even file their own opposition to the Trustee's Motion and they failed to comply with Local Rule 7056-1. Defendants "have wasted the Trustee's time and resources and the Court's as well." *Epstein II*, 2022 WL 493734, at *19. Defendants not only refuse to acknowledge this Court's prior decisions, but they strategically filed a motion to withdraw the reference in an attempt to subvert or, at minimum, delay this Court's review. *See* Motion, ECF No. 98. Defendants have retained and benefited from other customers' property for over a decade and it must be returned in addition to prejudgment interest.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court grant summary judgment on Count One of the Trustee's Complaint: (1) avoiding the fictitious profits that BLMIS transferred to Defendants within the Two-Year Period ($350,000); (2) awarding the Trustee prejudgment interest from the Filing Date through the date of the Court's decision at the rate of 4%; and (3) requiring Defendants to return such transfers or the value thereof to the Trustee.

Dated: April 15, 2022
      New York, New York

/s/ Nicholas J. Cremona
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee
for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment
Securities LLC and the Chapter 7 Estate of
Bernard L. Madoff*