**PROSKAUER ROSE LLP**
Ehud Barak, Esq.
Russell T. Gorkin, Esq.
Elliot R. Stevens, Esq.
Eleven Times Square
New York, NY 10036-8299
Telephone:  212-969-3000
Facsimile:  212-969-2900
Email:  ebarak@proskauer.com
          rgorkin@proskauer.com
          estevens@proskauer.com
*Attorneys for Grosvenor Defendants*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>              Plaintiff-Applicant,<br><br>      v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br>              Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF<br><br>              Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>              Plaintiff,<br><br>      v.<br><br>GROSVENOR INVESTMENT MANAGEMENT LTD., GROSVENOR PRIVATE RESERVE FUND LIMITED (in liquidation), GROSVENOR BALANCED GROWTH FUND LIMITED (in liquidation) AND GROSVENOR AGGRESSIVE GROWTH FUND LIMITED (in liquidation),<br><br>              Defendants. | Adv. Pro. No. 12-01021 (BRL) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANTS' MOTION TO DISMISS THE COMPLAINT</u>**

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ..................................................................................1

BACKGROUND ........................................................................................................5

ARGUMENT .............................................................................................................9

I.     THE GROSVENOR COMPLAINT MUST BE DISMISSED
PURSUANT TO RULE 12(b)(2) FOR LACK OF PERSONAL
JURISDICTION .............................................................................................9

     A.     The Trustee's Claim Does Not Arise Out of or Relate to Any
Purposeful Availment of United States Law by the Grosvenor
Defendants .........................................................................................10

          1.     Alleged Foreseeability or Knowledge of Sentry's
Connections to the United States and BLMIS Do Not
Constitute Purposeful Availment by the Grosvenor
Defendants ...............................................................................10

          2.     The Subscription Agreements with Fairfield Sentry Are
Not Relevant to the Jurisdictional Analysis...................................15

          3.     The Allegation That the Grosvenor Defendants Sent Copies
of the Subscription Agreements to FGG's New York Office
Does Not Establish Personal Jurisdiction .....................................15

          4.     The Allegation the Grosvenor Defendants Wired Funds to
Fairfield Sentry Through a New York Bank Is Both
Misleading and Insufficient to Establish Personal
Jurisdiction...............................................................................17

     B.     The Exercise of Personal Jurisdiction Over the Grosvenor
Defendants Would Be Unreasonable .......................................................20

II.     THE GROSVENOR COMPLAINT MUST BE DISMISSED
PURSUANT TO RULE 12(b)(6) FOR FAILURE TO PLEAD
AVOIDABILITY AND PURSUANT TO RULES 8(a) AND 10(c) FOR
IMPROPER INCORPORATION ..........................................................................23

III.     THE TRUSTEE'S CLAIMS ARE BARRED BY BANKRUPTCY CODE
§ 546(e) .......................................................................................................26

     A.     The Alleged Transfers Were Both Made by and Made to or for the
Benefit of Entities Listed in Section 546(e)...............................................28

                      1.      The Transfer Was Made by a Stockbroker ....................................28

                      2.      The Transfers Were Also Made to or for the Benefit of a
Financial Institution ........................................................................29

       B.     The Transfers Were Both Settlement Payments and Were Made in
Connection with a Securities Contract...........................................31

                      1.      The Transfers Were Settlement Payments....................................31

                      2.      The Transfers Were Made in Connection with Securities
Contracts ......................................................................................32

IV.    THE GROSVENOR COMPLAINT MUST BE DISMISSED BECAUSE
IT FAILS TO PLAUSIBLY ALLEGE THE GROSVENOR
DEFENDANTS RECEIVED BLMIS PROPERTY ..............................................34

       A.     The Trustee Has Not Adequately Identified the Customer Property
Contained Within the Alleged Subsequent Transfers...............................34

       B.     The Trustee's Complaint Seeks to Recover Transfers Made by
Sentry at Times When the Trustee Alleges Sentry Possessed No
BLMIS Funds.............................................................................................36

CONCLUSION....................................................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*5-Star Mgmt., Inc. v. Rogers*,
   940 F. Supp. 512 (E.D.N.Y. 1996) ......................................................................30

*Achtman v. Kirby McInerney & Squire, LLP*,
   464 F.3d 328 (2d Cir. 2006)...............................................................................11

*Am. Casein Co. v. Geiger (In re Geiger)*,
   446 B.R. 670 (Bankr. E.D. Pa. 2010) ................................................................25

*Asahi Metal Indus. Co. v. Superior Ct. of Cal.*,
   480 U.S. 102 (1987).................................................................................20, 21, 22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................23, 34

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985).........................................................................10, 14, 16

*Charles Schwab Corp. v. Bank of Am. Corp.*,
   883 F.3d 68 (2d Cir. 2018)..................................................................................14

*City of Long Beach v. Total Gas & Power N. Am. Inc.*,
   465 F. Supp. 3d 416 (S.D.N.Y. 2020)................................................................13

*Cooper v. Parsky*,
   1997 WL 242534 (S.D.N.Y. Jan. 8, 1997), *aff'd in relevant part*, *vacated in*
   *part on other grounds*, 140 F.3d 433 (2d Cir. 1998) ........................................13, 14

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)...........................................................................................9

*Davis v. Bifani*,
   2007 WL 1216518 (D. Colo. Apr. 27, 2007).....................................................24

*Deutsche Bank Tr. Co. Ams. v. Large Private Ben. Owners (In re Tribune Co.*
   *Fraudulent Conveyance Litig.)*,
   946 F.3d 66 (2d Cir. 2019), *cert. denied*, 141 S. Ct. 2552 (2021) ...............28, 29, 30

*Ellicott Mach. Corp. v. John Holland Party, Ltd.*,
   995 F.2d 474 (4th Cir. 1993) ............................................................................22

*Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*,
    323 B.R. 857 (Bankr. S.D.N.Y. 2005) ..................................................................29

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
    651 F.3d 329 (2d Cir. 2011) ..............................................................................31

*Fairfield Sentry Ltd. (In Liquidation) v. Migani*,
    [2014] ...............................................................................................................12, 15

*Fairfield Sentry Ltd. (In Liquidation) v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
    2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) .........................................12, 15

*Fairfield Sentry Ltd. v. Citco Global Custody NV*, Adv. Pro. No. 19-01122
    (Bankr. S.D.N.Y.) ...............................................................................................36

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
    2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020)...............................29, 30, 31

*Fairfield Sigma Limited, and Fairfield Lambda Limited, Picard v. Fairfield Sentry Fund Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y.) .................................8

*Ferrante Equip. Co. v. Lasker-Goldman Corp.*,
    26 N.Y.2d 280 (1970) .........................................................................................13

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir.1994)...................................................................................11

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
    141 S.Ct. 1017 (2021).........................................................................................20

*Freeland v. Enodis Corp.*,
    540 F.3d 721 (7th Cir. 2008) ..............................................................................39

*Giuliano v. Barch*,
    2017 WL 1234042 (S.D.N.Y. Mar. 31, 2017) .....................................................14

*Hanson v. Denckla*,
    357 U.S. 235 (1958)............................................................................................10

*Harris v. N.Y. State Dep't of Health*,
    202 F. Supp. 2d 143 (S.D.N.Y. 2002).................................................................30

*Hau Yin To v. HSBC Holdings PLC*,
    2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir.
    2017) ...................................................................................................................19

*Hau Yin To v. HSBC Holdings PLC*,
2017 WL 916136 (S.D.N.Y. Mar. 1, 2017) ............................................16

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984)...........................................................................10, 13

*Hinton v. Trans Union, LLC*,
654 F. Supp. 2d 440 (E.D. Va. 2009) ...................................................25

*In re Bernard L. Madoff Inv. Sec. LLC*,
12 F.4th 171 (2d Cir. 2021) (Menashi, J., concurring) .........................27

*In re Bernard L. Madoff Inv. Sec.*
LLC, 515 B.R. 117 (Bankr. S.D.N.Y. 2014) .........................................36

*In re Mexican Gov't Bonds Antitrust Litig.*,
2020 WL 7046837 (S.D.N.Y. Nov. 30, 2020).......................................15

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
917 F.3d 85 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 2824 (2020)............8

*J. McIntyre Mach., Ltd v. Nicastro*,
564 U.S. 873 (2011) (plurality opinion) ...............................................15

*Jackson v. Broadcast Music, Inc.*,
2006 WL 250524 (S.D.N.Y. Feb. 1, 2006).............................................30

*Jonas v. Estate of Leven*,
116 F. Supp. 3d 314 (S.D.N.Y. 2015).....................................................14

*Kimco Exch. Place Corp. v. Thomas Benz, Inc.*,
34 A.D.3d 433 (2d Dep't 2006) .............................................................16

*Kirschner v. Large Shareholders (In re Tribune Co. Fraudulent Conveyance*
*Litigation)*, 10 F.4th 147, 176 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1128
(Feb. 22, 2022)........................................................................................30

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
191 F.3d 229 (2d Cir. 1999)....................................................................39

*LaMonica v. CEVA Grp., PLC (In re CIL Ltd.)*,
582 B.R. 46 (Bankr. S.D.N.Y. 2018)......................................................20

*Letom Mgmt. Inc. v. Centaur Gaming, LLC*,
2017 WL 4877426 (S.D.N.Y. Oct. 27, 2017) .........................................19

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
732 F.3d 161 (2d Cir. 2013).....................................................................18

*Licci v. Lebanese Can. Bank, SAL*,
   20 N.Y.3d 327 (2012) ........................................................................................18

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996).............................................................................9, 21

*Muhammad v. Bethel-Muhammad*,
   2012 WL 1854315 (S.D. Ala. May 21, 2012) ..........................................23

*Nastasi & Assocs. v. Bloomberg, L.P.*,
   2021 WL 3541153 (S.D.N.Y. Aug. 11, 2021) ..........................................30

*New Hampshire v. Maine*,
   532 U.S. 742 (2001)..........................................................................................31

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
   2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010) ..........................................24

*Official Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
   549 B.R. 56 (S.D.N.Y. 2016).........................................................................18

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013)...........................................................................40

*Picard v. ABN Amro Bank (Ireland Ltd.) (f/k/a Fortis Prime Fund Solutions Bank
   (Ireland) Ltd.) (n/k/a ABN Amro Retained Custodial Services (Ireland)
   Limited)*,
   No. 20 Civ. 1898 (2d Cir. Oct. 1, 2021) ECF No. 50 .............................27

*Picard v. Fairfield Inv. Fund Ltd. (SIPC v. Bernard L. Madoff Inv. Sec. LLC)*,
   2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) (Morris, C.J.) .......28

*Picard v. Fairfield Sentry Ltd., et al.*, Adv. Pro. No. 09-01239 (BRL) (Bankr.
   S.D.N.Y.) ..............................................................................................................6

*Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*,
   773 F.3d 411 (2d Cir. 2014)........................................................................ passim

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*,
   542 B.R. 100 (Bankr. S.D.N.Y. 2015).....................................................34, 35, 36

*Porina v. Marward Shipping Co.*,
   2006 WL 2465819 (S.D.N.Y. Aug. 24, 2006), *aff'd*, 521 F.3d 122 (2d Cir.
   2008) .....................................................................................................................20

*Rocky Mountain Chocolate Factory v. Arellano*,
   2017 WL 4697503 (D. Colo. Oct. 19, 2017) ............................................21

*Roper Starch Worldwide, Inc. v. Reymer & Assocs.*,
  2 F. Supp. 2d 470 (S.D.N.Y. 1998) .................................................................14

*Rothman v. Gregor*,
  220 F.3d 81 (2d Cir. 2000).............................................................................30

*Rushaid v. Pictet & Cie*,
  28 N.Y.3d 316 (2016) ....................................................................................18

*Salahuddin v. Cuomo*,
  861 F.2d 40 (2d Cir.1988)..............................................................................24

*Sapia v. Home Box Off., Inc.*,
  2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018) ...............................................40

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  454 B.R. 285 (Bankr. S.D.N.Y. 2011), *aff'd sub nom. In re Aozora Bank Ltd.
  v. Sec. Inv. Prot. Corp.*, 480 B.R. 117 (S.D.N.Y. 2012), *aff'd sub nom. In re
  Bernard L. Madoff Inv. Sec. LLC*, 708 F.3d 422 (2d Cir. 2013)...................11

*Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec.*
  LLC, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ................................23, 32, 33

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*,
  460 B.R. 106 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012) ..........9

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
  549 U.S. 422 (2007).........................................................................................9

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*,
  476 B.R. 715 (S.D.N.Y. 2012), *aff'd sub nom. Picard v. Ida Fishman
  Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411 (2d
  Cir. 2014) .......................................................................................................28

*Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*,
  277 F. Supp. 3d 521 (S.D.N.Y. 2017)............................................................17

*Spencer Trask Ventures, Inc. v. Archos S.A.*,
  2002 WL 417192 (S.D.N.Y. Mar. 15, 2002) .................................................17

*Steinberg v. A Analyst Ltd.*,
  2009 WL 806780 (S.D. Fla. Mar. 26, 2009)..................................................18

*Stern v. Marshall*,
  564 U.S. 462 (2011)..........................................................................................1

*Sullivan v. Kodsi*,
  373 F. Supp. 2d 302 (S.D.N.Y. 2005)............................................................34

*SunLight Gen. Cap. LLC v. CJS Invs. Inc.*,
   114 A.D.3d 521 (1st Dep't 2014) ........................................................................14

*Taylor v. Sturgell*,
   553 U.S. 880 (2008)..............................................................................................31

*Ticketmaster-New York, Inc. v. Alioto*,
   26 F.3d 201 (1st Cir. 1994)..................................................................................21

*United States v. Int'l Longshoremen's Ass'n*,
   518 F. Supp. 2d 422 (E.D.N.Y.2007) .............................................................24, 25

*Vasquez v. Hong Kong & Shanghai Banking Corp.*,
   477 F. Supp. 3d 241 (S.D.N.Y. 2020), *appeal withdrawn*, 2021 WL 4190722
   (2d Cir. Apr. 14, 2021).........................................................................................19

*Walden v. Fiore*,
   571 U.S. 277 (2014)........................................................................................12, 13

*Waldman v. Palestine Liberation Org.*,
   835 F.3d 317 (2d Cir. 2016)...................................................................................9

*Walters v. Woodson*,
   1987 WL 19026 (S.D.N.Y. Oct. 14, 1987) ...........................................................16

*Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*,
   543 B.R. 127 (Bankr. S.D.N.Y. 2016)..................................................................13

*Wolfe v. Charter Forest Behavioral Health Systems, Inc.*,
   185 F.R.D. 225 (W.D. La. 1999) ..........................................................................24

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980)..............................................................................................20

*Wortham v. KarstadtQuelle AG (In re Nazi Era Cases Against German
   Defendants Litig.)*,
   320 F. Supp. 2d 204 (D.N.J. 2004), *aff'd*, 153 F. App'x 819 (3d Cir. 2005) ........21

*Zim Integrated Shipping Services Ltd. v. Bellwether Design Technologies LLC*,
   2020 WL 5503557 (S.D.N.Y. Sept. 10, 2020).......................................................10

**STATUTES & RULES**

11 U.S.C. § 101(22) ................................................................................................................29

11 U.S.C. § 101(22)(A) .........................................................................................................29

11 U.S.C. § 544 .......................................................................................................................7

11 U.S.C. § 546(e) ......................................................................................................... passim

11 U.S.C. § 548(a)(1)(A) ...........................................................................................26, 27, 28

11 U.S.C. § 550 .............................................................................................................1, 7, 34

11 U.S.C. § 550(a) ......................................................................................................... passim

11 U.S.C. § 550(d) .......................................................................................................4, 38, 39

11 U.S.C. § 551 .....................................................................................................................6, 7

11 U.S.C. § 741(7) .................................................................................................................32

11 U.S.C. § 741(8) .................................................................................................................31

15 U.S.C. § 78fff-2(c)(3) ..............................................................................................6, 7, 34

Fed. R. Bankr. P. 2002(a)(3) ....................................................................................................8

Fed. R. Bankr. P. 7004(f) ..........................................................................................................9

Fed. R. Bankr. P. 7012 .............................................................................................................1

Fed. R. Bankr. P. 9019(a) .........................................................................................................8

Fed. R. Civ. P. 8(a) ........................................................................................................ passim

Fed. R. Civ. P. 10(c) ...................................................................................................... passim

Fed. R. Civ. P. 12(b) .................................................................................................................1

Fed. R. Civ. P. 12(b)(2) ........................................................................................................2, 9

Fed. R. Civ. P. 12(b)(6) ...........................................................................................3, 4, 23, 26, 34

NYDCL §§ 273–79 ...................................................................................................................7

NYDCL § 278 ...........................................................................................................................7

## OTHER AUTHORITIES

*De Nederlandsche Bank, Information Detail: Citco Bank Nederland N.V.*,
    https://www.dnb.nl/en/public-register/information-
    detail/?registerCode=WFTDG&relationNumber=B0275 .......................................................29

Ireland, *Financial Service Provider Profile: Citco Bank Nederland NV Dublin
    Branch*,
    http://registers.centralbank.ie/FirmDataPage.aspx?firmReferenceNumber=C2
    7278.................................................................................................................................29

MINORITY STAFF OF THE PERMANENT SUBCOMMITTEE ON INVESTIGATIONS
    REPORT ON CORRESPONDENT BANKING:  A GATEWAY FOR MONEY
    LAUNDERING, at 11–12 (Feb. 5, 2001)...................................................................................18

Defendants Grosvenor Investment Management Ltd. ("Grosvenor Management"),

Grosvenor Private Reserve Fund Limited ("Grosvenor Reserve"), Grosvenor Balanced Growth

Fund Limited ("Grosvenor Balanced") and Grosvenor Aggressive Growth Fund Limited

("Grosvenor Aggressive") (together, the "Grosvenor Defendants"), by their undersigned counsel,

respectfully submit this memorandum of law and the accompanying declarations of Michael

Morrison dated April 14, 2022 (the "Morrison Decl.") and Ehud Barak, dated April 15, 2022 (the

"Barak Decl.") in support of their motion to dismiss with prejudice the complaint (ECF No. 1)

(the "Grosvenor Complaint" or " Compl.") filed by plaintiff Irving H. Picard (the "Trustee"), as

the Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") for

lack of personal jurisdiction, and failure to state a claim or provide a short and plain statement of

the allegations and claims against the Grosvenor Defendants pursuant to Rules 8(a), 10(c), and

12(b) of the Federal Rules of Civil Procedure, made applicable to this case by Rule 7012 of the

Federal Rules of Bankruptcy Procedure.[1]

## PRELIMINARY STATEMENT

The Trustee alleges the Grosvenor Defendants received property from Fairfield Sentry

Limited ("Sentry") that was allegedly transferred to Sentry by BLMIS within 6 years of BLMIS

filing its bankruptcy case, and seeks to recover that property or its value from the Grosvenor

Defendants under Section 550 of Title 11 of the United States Code (the "Bankruptcy Code").

The Grosvenor Complaint is but one of scores of similar complaints filed against hundreds of

other defendants asserting the trustee has a right to "recover" every single dollar allegedly

received by anyone with any connection to BLMIS, no matter how remote.  The Trustee has

been zealous in his recovery efforts—so zealous, in fact, that he is seeking to claw back two

---

[1] The Grosvenor Defendants do not consent to the Bankruptcy Court exercising jurisdiction over this case and/or
entering any final judgment on the merits of the claims against the Grosvenor Defendants.  The Grosvenor
Defendants reserve all rights to challenge the constitutional authority of this Bankruptcy Court to adjudicate this
action, including under *Stern v. Marshall*, 564 U.S. 462 (2011).

billion dollars more from Sentry transferees than he contends BLMIS ever transferred to Sentry in the first place. That incredible infirmity is just one of at least four separate pleading deficiencies, each of which independently warrants dismissal of the Grosvenor Complaint. Certain of these infirmities are common to other adversary proceedings litigated before this Court, but others are unique to this adversary proceeding.

*First*, the Grosvenor Complaint must be dismissed pursuant to Rule 12(b)(2) because it does not make out a *prima facie* case for personal jurisdiction. Indeed, the Grosvenor Complaint barely alleges any connection between the Grosvenor Defendants and the United States at all. It instead relying on indirect connections between third parties (such as Sentry) and the United States, and the Grosvenor Defendants' supposed knowledge of those connections. But binding precedent makes clear a third party's (here, Sentry's) connections to the forum state cannot be used to establish personal jurisdiction over another. The Grosvenor Complaint does not dispute the Grosvenor Defendants were incorporated, headquartered, and managed in Bermuda, never maintained any bank accounts in the United States or engaged in business in the United States, and invested in a British Virgin Islands ("BVI") company (Sentry) on behalf of non-U.S. investors by executing agreements in Bermuda and wiring money from Bermuda to Sentry's overseas bank accounts. The wholly conclusory allegations the Grosvenor Defendants may have sent an email or copies of a contract to a few individuals who happened to be located in the United States are, even if true, are only attenuated, ministerial contacts which the courts have held, time and time again, do *not* suffice to establish personal jurisdiction. Moreover, exercising jurisdiction would be unreasonable here because, among other reasons, the Grosvenor Defendants are undergoing their own liquidation in Bermuda and should not be required to litigate claims against them in the U.S. As a result, there is no basis for personal jurisdiction against the Grosvenor Defendants and the Grosvenor Complaint must be dismissed pursuant to Rule 12(b)(2).

*Second*, the Grosvenor Complaint must be dismissed because it fails to satisfy Rules 8(a) and 10(c).    Among other things, the Grosvenor Complaint does not contain *any* factual allegations supporting the conclusory assertion that the transfers made from BLMIS to Sentry are avoidable.    Instead, the Grosvenor Complaint seeks to incorporate by reference a 217-page complaint and more than 100 exhibits that were filed in another action, and which has since been substantially amended.    The attempted wholesale incorporation of a stale complaint containing hundreds of likely inapplicable allegations from an entirely separate proceeding forces the Grosvenor Defendants to either attempt to respond to hundreds of allegations that have no apparent connection to the Grosvenor Defendants or to guess—at the Grosvenor Defendants' risk—which allegations are or are not applicable to them.    This kitchen-sink approach to pleading is not permitted under Rule 10(c), and, even if it were, the Complaint fails to satisfy Rule 8(a)'s requirement the Grosvenor Complaint contain a "short and plain statement of the claim."    And given that this action has now been pending for *more than a decade*, and the Trustee has had access to all Sentry's documents for almost all that time, the time has long since passed for the Trustee to remedy such deficiencies.

*Third*, the Grosvenor Complaint must be dismissed under Rule 12(b)(6) for failure to state a claim because Bankruptcy Code Section 546(e) prevents the trustee from avoiding the alleged transfers.    Bankruptcy Code Section 546(e) prohibits the Trustee from avoiding transactions that were either made by certain specified entities (such as stockbrokers) or made to other entities (such as financial institutions) *and* that were either "settlement payments" or were made in "connection with a securities contract."    As discussed below in detail, it is indisputable that the alleged transfers from BLMIS to Sentry fall within Section 546(e)'s safe harbor, barring the Trustee from recovering from the Grosvenor Defendants on account of them.    Indeed, failing to apply Section 456(e) as written would undermine the very markets that Section 546(e) was designed to protect.

3

*Fourth*, the Grosvenor Complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim because the Trustee does not plausibly allege the Grosvenor Defendants received BLMIS property. The Grosvenor Complaint makes no attempt whatsoever to trace the amounts allegedly transferred to the Grosvenor Defendants to transfers first made from BLMIS to Sentry. That failure alone is enough to defeat the Grosvenor Complaint. Moreover, allegations made by the Trustee in other avoidance actions, in this case, completely undermine the plausibility of the allegations in this case against the Grosvenor Defendants. Specifically, the Trustee has alleged in other actions that Sentry already transferred all the property it had received from BLMIS to other defendants by the time it made certain transfers to the Grosvenor Defendants. As a matter of basic math and logic, if Sentry received $20 million from BLMIS one day and the next day transferred that entire $20 million to other defendants, and then later allegedly transferred money to the Grosvenor Defendants without yet receiving any additional money from BLMIS, the money received by the Grosvenor Defendants could not be BLMIS property. The mathematical impossibility of the Trustee's position, among other things, show the Trustee has failed to plausibly allege the alleged transfers he seek to claw back from the Grosvenor Defendants were funded by BLMIS property, as opposed to another source, the Grosvenor Complaint must be dismissed.[2]

In short, the Grosvenor Complaint violates constitutional due process, the pleading standards laid down by the Federal Rules of Civil Procedure, the requirements of the Bankruptcy Code, and even basic logic and arithmetic. For these reasons and as explained further below, the Grosvenor Defendants respectfully request that the Grosvenor Complaint be dismissed with prejudice.

---

[2] Moreover, the Trustee's recovery is barred by Bankruptcy Code Section 550(d), which prohibits the Trustee from obtaining double recovery from numerous parties on account of one transfer.

4

## BACKGROUND

### The Grosvenor Defendants

The Grosvenor Defendants were all incorporated in Bermuda as private limited companies and have their registered offices in Bermuda. (Morrison Decl. ¶¶ 4–5, 7–8, 10–11, 13–14.) Grosvenor Aggressive, Grosvenor Balanced, and Grosvenor Reserve all operated as investment funds, accepting subscriptions solely from non-U.S. entities and persons. (*Id.* ¶ 19.) Grosvenor Management acted as manager of the funds. (Compl. ¶ 3.) The Grosvenor Defendants are currently in liquidation by order of the Supreme Court of Bermuda and are being wound up in Bermuda by Bermuda resident liquidators under Bermuda law. (Morrison Decl. ¶¶ 6, 9, 12, 15.)

None of the Grosvenor Defendants ever maintained any offices in the United States, had any employees or other agents based in the United States, or conducted any business in the United States. (*Id.* ¶ 16.) The Grosvenor Defendants never maintained any bank accounts in the United States; instead, they maintained bank accounts in Bermuda with two Bermuda-based banks, Bermuda Commercial Bank and Butterfield Bank, respectively. (*Id.* ¶¶ 20–21.)

The Grosvenor Defendants did not negotiate the terms of their subscription into Sentry. (*Id.* ¶ 22). They executed their subscription agreements in Bermuda, (*id.*), and then faxed them to the Netherlands. (*See id.* Ex. 12.) The Grosvenor Defendants did not interact with BLMIS or otherwise set foot in the United States in connection with their Sentry investments. (*Id.* ¶ 23.)

### The Complaint

On January 12, 2012, the Trustee commenced this action against the Grosvenor Defendants as one of 81 parallel cases in which the Trustee seeks to recover subsequent transfers that he alleges defendants received from Fairfield funds. (*See* Trustee's Twenty-Sixth Interim Report for the Period Apr. 21, 2021 through Sept. 30, 2021, *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC*, Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y. Oct.

5

29, 2021), ECF No. 20821 ¶ 229 & Ex. D (Barak Decl. Ex. 2).)  At issue here is approximately

$31,506,389 in subsequent transfers that Sentry allegedly made to the Grosvenor Defendants.[3]

Sentry is a British Virgin Islands ("BVI") company in liquidation in the BVI.  (Compl. ¶ 2.)  The

Trustee claims that he is entitled to recover the funds pursuant to 11 U.S.C. §§ 550(a) and 551

and SIPA, 15 U.S.C. § 78fff-2(c)(3).  (Compl. ¶ 46.)

     The Trustee does not allege the Grosvenor Defendants maintain offices in New York or

subscribed to BLMIS or any other fund located in New York.  Nor does the Trustee allege any

direct transfers or similar connection between the Grosvenor Defendants and BLMIS.  (*Id.* ¶¶

26–36.)

     The Trustee previously filed adversary proceedings against Fairfield Sentry in *Picard v.

Fairfield Sentry Ltd., et al.*, Adv. Pro. No. 09-01239 (BRL) (Bankr. S.D.N.Y.) (the

"Picard/Fairfield Action"), in which the Trustee alleged that he "sought to avoid and recover [the

alleged] initial transfers from BLMIS to Fairfield Sentry in the amount of approximately $3

billion."  (Compl. ¶ 38; *see Amended Complaint,* Picard/Fairfield Action, (Bankr. S.D.N.Y. July

20, 2010), ECF No. 23 (the "Fairfield Amended Complaint") (Barak Decl. Ex. 3).)  The Trustee

purports to incorporate the entire Fairfield Amended Complaint, which is 217-pages long and

asserts claims against more than forty defendants into the Grosvenor Complaint.  (Compl. ¶ 38.)

The Trustee does not specify which allegations set forth in the Fairfield Amended Complaint—in

which he asserts claims for (1) turnover and accounting, (2) unjust enrichment, (3) conversion,

(4) money had and received, (5) aiding and abetting fraud and breach of fiduciary duty, and (6)

objections to the allowance of claims against a variety of different parties—are relevant to the

claims against the Grosvenor Defendants.  On August 28, 2020, the Trustee filed a second

amended complaint in the Picard/Fairfield Action (the "Fairfield SAC") but did not seek to

---

[3]  The Complaint also sought to claw back transfers the Grosvenor Defendants allegedly received from Kingate
     Global Fund Ltd.  (Compl. ¶¶ 51–60, 66–70.)  The Trustee subsequently voluntarily dismissed with prejudice
     those allegations and Count II of the Complaint.  (ECF No. 105.)

amend the Grosvenor Complaint to incorporate the superseding Fairfield SAC in the Fairfield
Amended Complaint's stead.

The Trustee dedicates only three paragraphs to discussing the initial transfers from
BLMIS to Fairfield Sentry.  Specifically, he alleges "[d]uring the six years preceding the Filing
Date, BLMIS made transfers to Fairfield Sentry of approximately $3 billion" (*id.* ¶ 39), of which
$1.6 billion was allegedly transferred within two years of the Filing Date and $1.1 billion was
allegedly transferred during the 90 days preceding the Filing Date (the "Fairfield Sentry Initial
Transfers").  (*Id.* ¶¶ 40–41.)  The Trustee alleges all the Fairfield Sentry Initial Transfers are
customer property, and asserts they are "avoidable, and recoverable under sections 544, 550 and
551 of the Bankruptcy Code, §§ 273–79 of the NYDCL, and applicable provisions of SIPA,
particularly SIPA § 78fff-2(c)(3)."  (Compl. ¶ 39.)  The Trustee does not allege any additional
facts regarding the impropriety of the Fairfield Sentry Initial Transfers to support the conclusory
assertion that the Fairfield Sentry Initial Transfers are avoidable.

The Trustee further alleges Sentry subsequently transferred varying sums of the Fairfield
Sentry Initial Transfers to the Grosvenor Defendants—approximately $4,191,288 to Grosvenor
Aggressive, $13,000,000 to Grosvenor Balanced, and $14,315,101 to Grosvenor Private—and
those subsequent transfers are recoverable pursuant to section 550(a) of the Bankruptcy Code
and § 278 of the NYDCL.  (Compl. ¶¶ 44–50.)  The Trustee does not allege which specific
portions of the Fairfield Sentry Initial Transfers were subsequently transferred to the Grosvenor
Defendants or otherwise connect any portion of the $3 billion to the specific amounts the Trustee
alleges were transferred to the Grosvenor Defendants.

**The Trustee's Access to Fairfield Sentry Documents**

More than ten years ago, on June 7, 2011, this Court approved a settlement agreement
that the Trustee entered into with the Liquidators of Fairfield Sentry and two affiliated funds,
Fairfield Sigma Limited and Fairfield Lambda Limited.  (*See* Exhibit A to Motion for Entry of

7

Order Pursuant to Section 105(a) the Bankruptcy Code and Rules 2002(a)(3) and 9019(a) of the Federal Rules of Bankruptcy Procedure Approving an Agreement by and Between the Trustee and Kenneth Krys and Joanna Lau, Solely in Their Respective Capacities as the Foreign Representatives for and Joint Liquidators of Fairfield Sentry Limited, Picard/Fairfield Action, (Bankr. S.D.N.Y. May 9, 2011) ECF No. 69-2 (the "Fairfield Settlement Agreement") (Barak Decl. Ex. 6).)  Pursuant to the Fairfield Settlement Agreement, the Liquidators consented to a $3.054 billion judgment against Sentry.  (Fairfield Settlement Agreement ¶ 1.)

As part of the Fairfield Settlement Agreement, the Liquidators and the Trustee agreed to cooperate and "provide reasonable access to the other's documents, data, and other information" related to, among other subjects, claims against subsequent transferees of Fairfield funds. (Fairfield Settlement Agreement ¶ 14.)  Accordingly, the Trustee had access to Fairfield Sentry's books, records, and other relevant documents prior to filing the Grosvenor Complaint against the Grosvenor Defendants on January 12, 2012, and has maintained access to those materials ever since.

**Procedural History**

On March 3, 2017, the Bankruptcy Court dismissed the Grosvenor Complaint.  (*See* ECF No. 89.)  The Trustee appealed, and the Second Circuit reversed on February 25, 2019.  *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 2824 (2020).  Following the denial of certiorari in June 2020, the Second Circuit vacated the judgment and remanded the case (and approximately 80 other parallel cases) to this Court, which reopened it on October 21, 2020.  Upon remand, the Trustee did not prosecute the case—or do anything to move the case forward—until after this Court *sua sponte* held a scheduling conference on September 15, 2021.  (ECF No. 99.)  Thereafter, the parties met and conferred.  The Trustee informed the Grosvenor Defendants that he would not amend the Complaint, and the parties established a briefing schedule for this motion.  (ECF No. 107.)

## ARGUMENT

## I.    THE GROSVENOR COMPLAINT MUST BE DISMISSED PURSUANT TO RULE 12(b)(2) FOR LACK OF PERSONAL JURISDICTION

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over . . . the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007).  "On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).

The Trustee does not allege the Court has general jurisdiction over the Grosvenor Defendants—Bermuda-based entities that are not "at home" in the United States—and so the Trustee must plead facts supporting the exercise of specific jurisdiction.  *See Daimler AG v. Bauman*, 571 U.S. 117, 136–37 (2014).  Generally, to establish specific jurisdiction, a plaintiff must show (1) a statutory basis for specific jurisdiction and (2) the exercise of such jurisdiction comports with due process.  *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327–28 (2d Cir. 2016).  Because the Trustee alleges personal jurisdiction under Bankruptcy Rule 7004(f), which permits the exercise of personal jurisdiction over the Grosvenor Defendants if such "is consistent with the Constitution and laws of the United States," the statutory analysis collapses into the constitutional analysis.  *See, e.g., Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, 460 B.R. 106, 116 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012).

Under the constitutional analysis, the exercise of specific jurisdiction over a nonresident defendant will be consistent with due process only if (1) the defendant "purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); (2) the plaintiff's claim "arise[s] out of or relate[s] to the foreign corporation's activities in the forum State,"

9

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); and (3) the

exercise of jurisdiction is reasonable under the circumstances, *Burger King Corp. v. Rudzewicz*,

471 U.S. 462, 477–78 (1985).  The Trustee fails to plausibly allege facts that satisfy this test.

A.    **The Trustee's Claim Does Not Arise Out of or Relate to Any Purposeful Availment of United States Law by the Grosvenor Defendants**

The alleged contacts identified by the Trustee neither constitute purposeful availment nor

are they connected to the Trustee's claim.[4]

1.    **Alleged Foreseeability or Knowledge of Sentry's Connections to the United States and BLMIS Do Not Constitute Purposeful Availment by the Grosvenor Defendants**

The Trustee alleges this Court may assert *in personam* jurisdiction over the Grosvenor

Defendants because they "knowingly direct[ed] funds to be invested with New York-based

BLMIS through the Feeder Funds," "knowingly received subsequent transfers from BLMIS by

withdrawing money from the Feeder Funds" (Compl. ¶ 6), and "direct[ed] investments through

Fairfield Sentry, a Fairfield Greenwich ("FGG") managed Madoff feeder fund,"[5] so as to

"knowingly accept[] the rights, benefits, and privileges of conducting business and/or

transactions in the United States and New York."  (Compl. ¶7.)  Those conclusory allegations,

even if deemed true (which they are not), are insufficient to establish personal jurisdiction over

the Grosvenor Defendants.

*First*, those allegations are not well-pleaded and therefore are not entitled to any weight.

The Trustee does not allege any factual basis to support the allegations that the Grosvenor

Defendants "knowingly" obtained transfers of "Customer Property."  Indeed, as explained in

Section IV *infra*, the Trustee does not plausibly allege the Grosvenor Defendants received any

transfers of "Customer Property," let alone "knowingly."  To the contrary, the Trustee

---

[4]   "Courts may rely on materials outside the pleadings," such as affidavits filed by the parties, "in considering a motion to dismiss for lack of personal jurisdiction."  *Zim Integrated Shipping Services Ltd. v. Bellwether Design Techs. LLC*, 2020 WL 5503557, at *3 (S.D.N.Y. Sept. 10, 2020) (internal cites omitted).

[5]   Because this is a motion to dismiss, the Grosvenor Defendants do not contest well-pleaded allegations.

specifically alleges in the Fairfield Amended Complaint that Sentry was very secretive and rebuffed attempts to discover how it operated. (Fairfield Amended Complaint ¶¶ 342, 344, 346.) Those allegations contradict any suggestion the Grosvenor Defendants "knew" the source of any funds Sentry used to make redemption payments.

Similarly, the Grosvenor Complaint does not allege any basis for the legal conclusion, couched as a factual allegation, that the Grosvenor Defendants "knowingly accepted the rights, benefits, and privileges of conducting business and/or transactions in the United States and New York," (Compl. ¶ 7), nor that the Grosvenor Defendants actually obtained any such "rights, benefits [or] privileges." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir.1994) (citation omitted) (district courts shall not accept as true "conclusions of law or unwarranted deductions of fact"). To the contrary, this Court has held entities which invested in foreign feeder funds, rather than in BLMIS, do *not* have any rights in the U.S.-based SIPA proceedings.[6] Accordingly, the conclusory and implausible allegations upon which the Trustee relies are not well pleaded and do not establish a sufficient basis on which to exercise this Court's jurisdiction. *Achtman v. Kirby McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006).

*Second*, even if well-pleaded, the Trustee's claims do not arise from the Grosvenor Defendants' alleged contracts with the forum. Notably, both the Judicial Committee of the Privy Council and this Court have held that actions to recover redemption payments from Sentry investors do not arise from subscription agreements or any payments investors made *to* Sentry. *See* (*Fairfield Sentry Ltd. (In Liquidation) v. Migani*, [2014] UKPC 9 ("*Migani*") (Barak Decl. Ex. 7)); *Fairfield Sentry Ltd. (In Liquidation) v. Theodoor GGC Amsterdam (In re Fairfield*

---

[6] *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285, 290–91 (Bankr. S.D.N.Y. 2011), *aff'd sub nom. In re Aozora Bank Ltd. v. Sec. Inv. Prot. Corp.*, 480 B.R. 117 (S.D.N.Y. 2012), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 708 F.3d 422 (2d Cir. 2013). Again, the Trustee's conclusory assertion as to these purported "rights, benefits, and privileges," is not well pleaded and is not entitled to any weight. *Achtman*, 464 F.3d at 337.

11

*Sentry Ltd.)*, 2018 WL 3756343, *8–12 (Bankr. S.D.N.Y. Aug. 6, 2018) (fraudulent transfer actions against investors in Fairfield Sentry not predicated upon Subscription Agreements). Instead, the actions arise from the supposed *receipt* of funds *from* Sentry pursuant to the terms of a different instrument. *See infra* Section I.A.4. As a result, the Grosvenor Defendants' supposed "knowledge" their subscription payments to Sentry would be commingled with other subscription payments and then invested by Sentry with BLMIS cannot give rise to jurisdiction because the Trustee's claim does not arise from those alleged activities.

*Third,* even if those allegations could be considered relevant to the jurisdictional analysis, they all boil down to the contention that the Grosvenor Defendants knew another party with which the Grosvenor Defendants dealt—Sentry—had contacts with the United States. The law is clear, however, that a defendant's knowing contacts with a third party who is, in turn, connected with the forum state is never enough to establish personal jurisdiction. *See Walden v. Fiore*, 571 U.S. 277, 284, 291 (2014) (citation omitted) (the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State . . . '[U]nilateral activity' of a third party . . . 'cannot satisfy the requirement of contact with the forum State.'"). Rather, the Supreme Court has made clear specific jurisdiction must be established by "contacts that the 'defendant *himself*' creates with the forum State," *not* by "contacts between the plaintiff (or third parties) and the forum State," and not by "the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 284–85 (emphasis in original) (citations omitted). Therefore, in *Walden*, the Supreme Court held that it was unconstitutional for a Nevada court to exercise personal jurisdiction over a Georgia police officer who had seized the Nevada-based plaintiff's property in a Georgia airport, even though the police officer knew the plaintiff had connections to Nevada and that the seizure would delay return of plaintiff's property to Nevada, because to hold otherwise would "impermissibly allow[] a plaintiff's contacts with the defendant and forum

to drive the jurisdictional analysis" and "improperly attribute[] a plaintiff's forum connections to the defendant. . . ." *Id.* at 289; *see also Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 417 ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.").

*Walden* and the line of jurisprudence on which it is based are dispositive. The Grosvenor Complaint's conclusory allegations that the Grosvenor Defendants knew Sentry had connections to New York and it would take any money invested in Fairfield Sentry and further invest those funds with BLMIS in New York are merely allegations that the Grosvenor Defendants knew when it contracted with the BVI-based Sentry that Sentry had some contacts with New York. Those allegations focus entirely on "contacts between the plaintiff (or third parties) and the forum State" and/or Sentry's connections with New York based BLMIS—they do not show that the Grosvenor Defendants purposely availed *themselves* of the privilege of conducting activities in the forum state. *Walden*, 571 U.S. at 284–85.

This conclusion is further buttressed by federal and New York jurisprudence which respects the separate legal personalities of companies and their shareholders. *Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, 543 B.R. 127, 141 (Bankr. S.D.N.Y. 2016). As a result, a company's jurisdictional contacts will not be attributed to a shareholder unless the company was an alter ego of the shareholder or acted as its agent. *See City of Long Beach v. Total Gas & Power N. Am. Inc.*, 465 F. Supp. 3d 416, 437–39 (S.D.N.Y. 2020) (alter ego or agent); *Cooper v. Parsky*, 1997 WL 242534, at *14 (S.D.N.Y. Jan. 8, 1997) (alter ego), *aff'd in relevant part*, *vacated in part on other grounds*, 140 F.3d 433 (2d Cir. 1998); *Ferrante Equip. Co. v. Lasker-Goldman Corp.*, 26 N.Y.2d 280, 283 (1970) ("The mere fact that respondent is a controlling shareholder in . . . a corporation concededly doing business in New York . . . , will not subject respondent . . . to in personam jurisdiction . . . unless the record would justify our piercing the

13

corporate veil."). Here, the Trustee does not (and could not) allege that Sentry was an alter ego

of the Grosvenor Defendants, or that they had any control whatsoever over Sentry's investment

activities so as to show Sentry was acting as the Grosvenor Defendants' agent.[7] As such,

Sentry's connections with New York cannot be imputed to the Grosvenor Defendants.

Moreover, the Supreme Court has held even when a foreign defendant contracts *directly*

with a forum resident, that alone does not suffice to show purposeful availment. *Burger King*

*Corp.*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state

party *alone* can automatically establish sufficient minimum contacts in the other party's home

forum, we believe the answer clearly is that it cannot.").[8] Here, the Trustee does not allege the

Grosvenor Defendants contracted with a New York-based entity, but that it contracted with a

BVI-based entity (Sentry), supposedly knowing the BVI entity would go on to contract with a

New York entity. If the Supreme Court has held the former is not enough, then *a fortiori* the

latter is not enough either.

Similarly, the allegations the Grosvenor Defendants supposedly knew its money would

find its way from Sentry to BLMIS is nothing more than a variation on the "stream of

commerce" theory of personal jurisdiction that has been consistently rejected by the courts. *See*

*J. McIntyre Mach., Ltd v. Nicastro*, 564 U.S. 873, 882, 886 (2011) (plurality opinion) ("[I]t is not

---

[7]  *See Cooper*, 1997 WL 242534, at *14 (merely alleging investment in a New York-based company "does not justify piercing the corporate veil"); *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 85 (2d Cir. 2018) (agency finding requires the plaintiff to show that the corporation "acted in New York for the benefit of, with the knowledge and consent of, and under some control by" the defendant shareholder (emphasis added)).

[8]  New York courts also routinely refuse to find specific jurisdiction over a nonresident defendant based on allegations the defendant contracted with a New York plaintiff that was expected to perform in New York. *See, e.g., Giuliano v. Barch*, 2017 WL 1234042, at *9 (S.D.N.Y. Mar. 31, 2017) ("Plaintiff's contention that the Court has personal jurisdiction because Plaintiff performed *his* obligations under the Agreements in New York is also unavailing."); *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 327 (S.D.N.Y. 2015) (allegations plaintiff "built out an office in New York, hired personnel, and performed trades and analyses here is also unavailing" because "his unilateral activity in the forum state would be insufficient to establish jurisdiction"); *Roper Starch Worldwide, Inc. v. Reymer & Assocs.*, 2 F. Supp. 2d 470, 474 (S.D.N.Y. 1998) (defendant's "knowledge of, and acquiescence in," New York plaintiff's performance in New York of services under the parties' contract did not suffice to establish personal jurisdiction over nonresident corporation); *SunLight Gen. Cap. LLC v. CJS Invs. Inc.*, 114 A.D.3d 521, 522 (1st Dep't 2014) ("Plaintiff's actions within New York" in connection with contract . . . could not "be imputed to [defendant] for jurisdictional purposes").

enough that [a] defendant might have predicted that its goods will reach the forum," but rather the defendant must "engage[] in conduct purposefully directed at [the forum]."); *In re Mexican Gov't Bonds Antitrust Litig.*, 2020 WL 7046837, at *3–4 (S.D.N.Y. Nov. 30, 2020) (holding neither an attempt to profit from conduct underlying the claim nor foreseeability of a harm in forum were sufficient to establish jurisdiction in absence of a defendant's contact with forum). It cannot form the basis of personal jurisdiction over the Grosvenor Defendants here.

> ## 2. The Subscription Agreements with Fairfield Sentry Are Not Relevant to the Jurisdictional Analysis

The Grosvenor Complaint also alleges personal jurisdiction exists over the Grosvenor Defendants because they "entered into subscription agreements with [] Sentry under which they submitted to New York jurisdiction." (Compl. ¶ 7.) The subscription agreements are an insufficient basis on which to assert jurisdiction, however, because—as briefly discussed above—the Trustee's claims to claw back funds received by the Grosvenor Defendants do not arise from those agreements. In *Migani*, the UK Privy Council held that the Subscription Agreement does not govern redemptions from Sentry nor does it make New York law applicable to redemptions; instead, the redemptions are governed by Sentry's Articles of Association and BVI law. (*Migani*, ¶¶ 10, 17, 20.) Following *Migani*, this Court held that a suit by the Sentry Liquidators to recover a redemption payment is not a suit "with respect to [the Subscription] Agreement" and therefore not a basis to find personal jurisdiction. *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 2018 WL 3756343, at *11–12 (Bankr. S.D.N.Y. Aug. 6, 2018).

> ## 3. The Allegation That the Grosvenor Defendants Sent Copies of the Subscription Agreements to FGG's New York Office Does Not Establish Personal Jurisdiction

The Trustee alleges personal jurisdiction exists here because the Grosvenor Defendants "sent copies of the [subscription] agreement to FGG's New York City office." (Compl. ¶ 7.)

This does not even begin to show purposeful availment. Notably, the Grosvenor Defendants'

records show the Grosvenor Defendants' subscriptions into Sentry were all executed in Bermuda

and faxed to the Netherlands. (Morrison Decl. ¶ 22, Ex. 12.) The subscription agreements

required that correspondence be sent to the Netherlands, not New York. (*Id.* Ex. 12 at 8.)

Nonetheless, even if the Complaint's allegation that a copy was also sent to New York was true,

that isolated, ministerial and superfluous act is an inadequate basis on which to assert jurisdiction

over the Grosvenor Defendants because courts routinely hold that merely communicating with a

person located in the forum state is an insufficient basis on which to exert personal jurisdiction

over a foreign defendant. *See, e.g., Kimco Exch. Place Corp. v. Thomas Benz, Inc.,* 34 A.D.3d

433, 434 (2d Dep't 2006) ("The defendants' acts of faxing the executed contracts to New York . .

. do not qualify as purposeful acts constituting the transacting of business."); *Hau Yin To v.*

*HSBC Holdings PLC, 2017 WL 816136*, at *5 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66

(2d Cir. 2017) ("[C]ommunications with and payments to New York merely to ensure

compliance with contract terms negotiated and executed outside of New York do not 'project' a

defendant into the state sufficiently to confer personal jurisdiction . . . ."); *Walters v. Woodson*,

1987 WL 19026 at *2 (S.D.N.Y. Oct. 14, 1987) (calls to New York offices requesting

advancement of funds under contract insufficient to confer personal jurisdiction).

To the contrary, even if a contract had been faxed to FGG's New York office, such an act

would constitute nothing more than the type of "attenuated" contact courts routinely hold cannot

serve as the basis for personal jurisdiction. *See Burger King Corp.*, 471 U.S. at 475 ("This

'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction

solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts."); *Spencer Trask Ventures,*

*Inc. v. Archos S.A.*, 2002 WL 417192, at *3 (S.D.N.Y. Mar. 15, 2002) ("The existence of a

purposeful activity should be considered in the totality of the circumstances, and jurisdiction

should not be asserted against a defendant based upon 'random' or 'fortuitous' contacts.");

*Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 590

(S.D.N.Y. 2017) ("[T]he happenstance that the electronic communications of defendants acting

abroad were routed through a server in the United States cannot substantially contribute to a

finding of sufficient contacts with the United States. Such contacts would be merely random,

fortuitous, or attenuated contacts.").

> **4.    The Allegation the Grosvenor Defendants Wired Funds to Fairfield Sentry Through a New York Bank Is Both Misleading and Insufficient to Establish Personal Jurisdiction**

The Trustee also alleges personal jurisdiction exists because the Grosvenor Defendants

purportedly "wired funds to [] Sentry through a bank in New York." (Compl. ¶ 7.) As detailed

in the Morrison Declaration, the Grosvenor Defendants never held any bank accounts in New

York or with an American bank. (Morrison Decl. ¶ 21.) Instead, the Grosvenor Defendants

only ever banked with Bermuda-based banks servicing residents of Bermuda. (*Id.* ¶ 20.) When

the Grosvenor Defendants were asked to wire funds to Sentry or otherwise wired money outside

of the U.S., they instructed those Bermudian banks to transfer the relevant funds to the

designated recipient account. (*Id.* ¶ 21.) The Trustee does not allege that the Grosvenor

Defendants themselves held an account in New York, nor could he. Rather, he alleges that the

Grosvenor Defendants' Bermudian banks, and Citco Bank, had correspondent accounts in New

York, which those banks used to effectuate the transfers.

Allegations that *other* parties maintained correspondent bank accounts which the

Grosvenor Defendants' funds allegedly happened to pass through on their way to another

overseas bank account does not suffice to establish jurisdiction over the Grosvenor Defendants.

The use of a New York-based correspondent bank account can be used to establish personal

jurisdiction over foreign defendants only in extremely limited circumstances, namely, when the

defendant holds the correspondent bank account or at least purposely directed the use of that

account, *and* such use is an essential element of the plaintiff's claim. *See, e.g., Licci ex rel. Licci*

17

*v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013); *Official Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56 (S.D.N.Y. 2016); *Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 327 (2016) (defendant foreign bank's use of correspondent account was "essential step in the money-laundering scheme"). The Grosvenor Defendants, however, did not maintain any form of bank account in the United States, nor did they instruct any entity to use any bank account in the United States, correspondent or otherwise. At most, the Trustee alleges transfers between the Grosvenor Defendants' Bermudian banks and Sentry's Dutch bank accounts passed through the New York correspondent bank accounts of non-defendants.[9] Unsurprisingly, courts have held that jurisdiction cannot be exerted over parties based on such adventitious contacts. *See, e.g., Steinberg v. A Analyst Ltd.*, 2009 WL 806780, at *6 (S.D. Fla. Mar. 26, 2009) (no personal jurisdiction over hedge fund on the basis that international transfers to and from hedge fund were routed through correspondent account of hedge fund's non-U.S. bank); *cf. Licci v. Lebanese Can. Bank, SAL*, 20 N.Y.3d 327, 338 (2012) (explaining personal jurisdiction does not lie where defendant's use of correspondent bank account in New York was not purposeful, but "essentially adventitious").

Indeed, it is well established that sending "payments to New York merely to ensure compliance with contract terms negotiated and executed outside of New York do not 'project' a

---

[9] The Trustee cannot establish purposeful availment by the Grosvenor Defendants on the basis that Citco Bank required that transfers made to it in U.S. dollars be made through its New York-based HSBC USA correspondent bank account. The fact non-defendant, foreign banks mandated that money transferred between two non-U.S. entities (the Grosvenor Defendants' and Sentry) to comply with a contract executed outside of the U.S. be sent through a New York correspondent bank accounts on its way to the Netherlands is adventitious as it relates to the Grosvenor Defendants. If the mere fact the Grosvenor Defendants' and Sentry's *banks* used New York correspondent accounts to route these transfers (and the Grosvenor Defendants knew about it) gave rise to jurisdiction over the Grosvenor Defendants, then there would be almost no end to New York courts' *in personam* jurisdiction, because thousands of foreign banks wire trillions of dollars through New York every day to facilitate international trade. *See, e.g.,* MINORITY STAFF OF THE PERMANENT SUBCOMMITTEE ON INVESTIGATIONS REPORT ON CORRESPONDENT BANKING: A GATEWAY FOR MONEY LAUNDERING, at 11–12 (Feb. 5, 2001), available at https://www.govinfo.gov/app/details/CPRT-107SPRT69919 (last accessed April 7, 2022) (noting the prevalence of correspondent banking and its use in international trade, as well as the fact that, as of 2001, some banks "process as much as $1 trillion in wire transfers each day" through their correspondent accounts). The Trustee's argument would mean that virtually all these foreign banks and all the customers of all of these foreign banks are subject to suit in New York for transactions having no other connection to the United States. That is not the law.

defendant into the state sufficiently to confer personal jurisdiction." *Letom Mgmt. Inc. v. Centaur Gaming, LLC*, 2017 WL 4877426, at *7 (S.D.N.Y. Oct. 27, 2017) (fact that contract required payments to New York bank account did not establish specific jurisdiction); *see also Hau Yin To*, 2017 WL 816136, at *5 (wiring hundreds of millions of dollars to and through New York under custodial and fund management agreements negotiated and executed with BLMIS outside of the United States were insufficient to justify finding personal jurisdiction existed).

Here, the Trustee does not allege the subscription agreements were negotiated or executed in New York—they were not.  (*See* Morrison Decl. ¶¶ 22–23.)  Nor does the Trustee allege any payments were sent "to" New York—they were not, only "through" New York correspondent bank accounts maintained by entities other than the Grosvenor Defendants. Because courts have held more significant contacts do not suffice to establish personal jurisdiction, the more attenuated contacts alleged here do not suffice either.

The Trustee's allegations about the flow of funds through New York banks also fail to establish specific jurisdiction for the independent reason his claim does not "arise out of or relate to" the fact that funds were allegedly transferred *through* New York bank accounts.  The Trustee's claim does not depend on the coincidence money flowed through New York—it could have instead been transferred through, for example, London banks, and the Trustee's claim would be exactly the same.[10]  In such circumstances, the happenstance New York banks were used cannot ground personal jurisdiction.  *Vasquez v. Hong Kong & Shanghai Banking Corp.*, 477 F. Supp. 3d 241, 262 (S.D.N.Y. 2020) (no specific jurisdiction over foreign bank defendant based on its use of correspondent bank account in New York for the transfers at issue, where use

---

[10] Indeed, the subscription documents in the Grosvenor Defendants' record show that, if the payment had been due in Swiss francs rather than U.S. dollars, the payment would have been routed through Swiss correspondent banks. (Morrison Decl. Ex. 12 at 8.)

of the account was not necessary to the Ponzi scheme), *appeal withdrawn*, 2021 WL 4190722

(2d Cir. Apr. 14, 2021).[11]

### B. The Exercise of Personal Jurisdiction Over the Grosvenor Defendants Would Be Unreasonable

As discussed above, the Grosvenor Defendants' alleged contacts with the United States

do not constitute purposeful availment, nor do the Trustee's claims arise from those contacts.

Thus, personal jurisdiction cannot be exercised here.  But jurisdiction also cannot be asserted

over the Grosvenor Defendants because doing so would not comport with constitutional due

process.  *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Personal

jurisdiction is not a game where, if you just step over the line, you're out—instead, jurisdiction

must be reasonable in all circumstances.  Courts apply a "sliding scale" in assessing whether

jurisdiction is consistent with due process: "the weaker the plaintiff's showing on minimum

contacts, the less a defendant needs to show in terms of unreasonableness to defeat jurisdiction."

*LaMonica v. CEVA Grp., PLC (In re CIL Ltd.)*, 582 B.R. 46, 79 (Bankr. S.D.N.Y. 2018)

(internal quotation marks and citation omitted); *see also Porina v. Marward Shipping Co.*, 2006

WL 2465819, at *6 (S.D.N.Y. Aug. 24, 2006) (same), *aff'd*, 521 F.3d 122 (2d Cir. 2008).  In

evaluating whether personal jurisdiction would be reasonable, "[a] court must consider the

burden on defendant, the interests of the forum State, and the plaintiff's interest in obtaining

relief."  *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 113 (1987).  This analysis

"'requires a more concerned focus' where the contacts with New York are not substantial and the

---

[11]  *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1026–30 (2021) is not to the contrary. While the Supreme Court recognized "that some relationships will support jurisdiction without a causal showing" between the defendant's in-state activity and the relevant litigation, *id.* at 1026, that ruling was made in the context of a case where the defendant (Ford Motor Company) had engaged in substantial and wide-reaching activities aimed at selling its products in the forum state for decades. *Id.* at 1027–30. The Supreme Court affirmed at the same time that the jurisdictional analysis "incorporates real limits." *Id.* at 1026. Here, the Grosvenor Defendants have never engaged in the kind of activities that the Supreme Court relied on to establish jurisdiction in *Ford Motor Co.*, and the happenstance that Sentry's foreign bank (Citco Bank) may have required that transactions ultimately destined for foreign bank accounts be sent through a United States correspondent account cannot be used to establish jurisdiction.

entire matter has a substantial connection with another country." *Wortham v. KarstadtQuelle AG (In re Nazi Era Cases Against German Defendants Litig.)*, 320 F. Supp. 2d 204, 228 (D.N.J. 2004) (citation omitted), *aff'd*, 153 F. App'x 819 (3d Cir. 2005).  As the Supreme Court has similarly cautioned:

> [T]he Federal Government's interest in its foreign relations policies[] will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State. Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.

*Asahi*, 480 U.S. at 115 (citation omitted).  Courts have held that defendants should be dismissed in circumstances like these, where defendants' alleged contacts with the forum "'barely satisf[y] the minimum contacts standard'"—and, to be clear, the Grosvenor Defendants' do not even do that—and "a majority of the reasonableness factors weigh against the exercise of jurisdiction." *Rocky Mountain Chocolate Factory v. Arellano*, 2017 WL 4697503, at *11 (D. Colo. Oct. 19, 2017) (citation omitted); *see also Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) ("depending upon the strength of the defendant's contacts with the forum state, the reasonableness component of the constitutional test may have a greater or lesser effect on the outcome of the due process inquiry"); *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994) ("We think . . . that the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing [on minimum contacts], the less a defendant need show in terms of unreasonableness.").

The Trustee here relies on the thinnest of reeds to hang personal jurisdiction, and therefore needs to make the strongest of showings that jurisdiction would be reasonable.  Each of the factors that the Court must assess in weighing reasonableness, however, weigh against jurisdiction.  The Grosvenor Defendants' costs litigating here are high: they are Bermuda-based

entities currently undergoing liquidation in Bermuda, they have never had any operations,

employees, investors or other strong connections to the United States, and are only before this

Court now because they invested in a BVI-based entity.  (*See generally* Morrison Decl.)  On the

other hand, neither the forum state nor the plaintiff have a strong interest in obtaining relief in

this Court—the Trustee can put forward no reason why New York is more reasonable than other

available forums, and the Trustee cannot have a strong interest in obtaining relief against the

Grosvenor Defendants when he is seeking to recover approximately two-thirds more money from

alleged subsequent transferees than he alleges was ever transferred by BLMIS to Sentry in the

first place.  *See infra*, Section IV.  Moreover, to the extent the Trustee has a valid claim and

wants to recover on such liability against the Grosvenor Defendants, it will need to file a claim in

the Bermuda insolvency proceeding and submit to Bermudan jurisdiction.  Because of the

liquidation proceedings, it is unreasonable for these issues to be litigated anywhere but Bermuda.

Courts in New York have no particular interest in litigating claims against defendants that

engaged in no activities in New York, and instead interacted only with a BVI-entity from

Bermuda.  *See Asahi*, 480 U.S. at 118–19 (minimal contacts with forum state should not be used

to justify jurisdiction in case creating "serious burdens" on foreign defendant); *Ellicott Mach.

Corp. v. John Holland Party, Ltd.*, 995 F.2d 474, 478–79 (4th Cir. 1993) (jurisdiction not

reasonable over Australian company given the fact most aspects of the relevant contract related

to Australia, defendant's interest in "not sending its employees to Australia for trial or hiring

foreign counsel," and nothing suggested Australian courts were incapable of granting relief).

Moreover, the fact that asserting jurisdiction over the Grosvenor Defendants on this record

would vastly expand the scope of U.S. courts' personal jurisdiction so as to make any person

with even indirect, attenuated contacts to the U.S. amenable to suit in a New York court further

tips the balance against exercising such power.  *Asahi*, 480 U.S. at 115 (citation omitted) ("Great

care and reserve should be exercised when extending our notions of personal jurisdiction into the

international field."). Because the alleged contacts are insignificant and all of the reasonableness

factors weigh against jurisdiction, the Court should dismiss the Grosvenor Complaint with

prejudice.

## II.    THE GROSVENOR COMPLAINT MUST BE DISMISSED PURSUANT TO RULE 12(b)(6) FOR FAILURE TO PLEAD AVOIDABILITY AND PURSUANT TO RULES 8(a) AND 10(c) FOR IMPROPER INCORPORATION

To recover from a mediate (subsequent) transferee, the trustee must plead and prove,

among other things, an initial transfer that is avoided or at least avoidable.  11 U.S.C. § 550(a);

*Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec*. LLC, 2013 WL 1609154, at *6–7

(S.D.N.Y. Apr. 15, 2013).  The Grosvenor Complaint does not meet this burden with respect to

any of the alleged BLMIS-to-Sentry transfers.  Instead, the Trustee puts forth only conclusory

allegations he "sought to avoid" the initial transfers and that the initial transfers "are avoidable

and recoverable" under the applicable provisions of the Bankruptcy Code, New York Debtor &

Creditor Laws, and SIPA.  (Compl. ¶¶ 38–41, 52–54.)  Without additional factual allegations

establishing the initial transfers are avoidable, these conclusory allegations are insufficient to

state a claim under Rule 12(b)(6).  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Rather than alleging sufficient facts in the Grosvenor Complaint, the Trustee attempts to

plead avoidability through the wholesale incorporation of the Fairfield Amended Complaint.

(Compl. ¶ 38.)  But Rule 10(c)—which provides "[a] *statement* in a pleading may be adopted by

reference elsewhere in the same pleading or in any other pleading or motion" (emphasis

added)—does not allow a plaintiff to incorporate entire pleadings wholesale (let alone 217-page

pleadings).  Indeed, "[c]ourts have routinely required that a pleading invoking incorporation by

reference 'must specifically identify which portions of the prior pleading are adopted therein.'"

*Muhammad v. Bethel-Muhammad*, 2012 WL 1854315, at *3 n.5 (S.D. Ala. May 21, 2012)

(quoting *Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212, 216 (D. Mass. 1995) (collecting

cases)); *see also United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 461

(E.D.N.Y. 2007) (citation omitted) (explaining that "although there is no prescribed procedure for referring to incorporated matter, the references to prior allegations must be direct and explicit, in order to enable the responding party to ascertain the nature and extent of the incorporation.").

Rule 10(c) is meant to "encourage pleadings that are short and free of unneeded repetition." *Wolfe v. Charter Forest Behavioral Health Sys., Inc.*, 185 F.R.D. 225, 230 (W.D. La. 1999). The Trustee's *en masse* incorporation of all 798 paragraphs from the 217-page Fairfield Amended Complaint makes a mockery of Rule 10(c), burdening both the Grosvenor Defendants and this Court with determining which allegations, issues, and claims are actually relevant to this litigation filed against *this* defendant. *See Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, 2010 WL 1257803, at \*4 (E.D.N.Y. Mar. 26, 2010) ("A Rule 10(c) adoption clause that does little more than make wholesale reference to the contents of a prior pleading exemplifies the kind of incorporation that fails to give the requisite 'guidance to the responding party.'").

Likewise, the Trustee's wholesale incorporation of the Fairfield Amended Complaint violates Rule 8(a), which requires that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The Second Circuit explained Rule 8(a)'s purpose is to provide "fair notice of the claim asserted so as to enable [defendant] to answer and prepare for trial," and to prevent "unnecessary prolixity in a pleading" that will "place[] an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988) (citation omitted). Accordingly, courts have consistently held that incorporating an entire pleading is a "blatant violation" of Rule 8(a). *Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d at 463; *see also Davis v. Bifani*, 2007 WL 1216518, at \*1 (D. Colo. Apr. 27, 2007) (plaintiff violated Rule 8(a) by his

24

wholesale incorporation of a complaint from a separate action, even though the separate action was between the same parties).

The Trustee's incorporation of the Fairfield Amended Complaint runs directly contrary to the purpose and plain language of Rule 8(a). The Grosvenor Defendants cannot, at their own risk, be expected to determine which allegations in the 217-page Fairfield Amended Complaint are relevant and warrant a response. The Grosvenor Defendants also should not be forced to answer all of the Fairfield Amended Complaint's allegations, including those wholly unrelated to the instant action. *See Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d at 463 (explaining that permitting the wholesale incorporation of other pleadings would force defendants to respond to "every paragraph of every attached pleading"). Such result is contrary to Rule 8(a)'s goal of reducing incongruous burdens on defendants and giving them fair notice of the claims against them.

Adding to the confusion, the Grosvenor Complaint incorporates a pleading that has been superseded by a further amended complaint. *See Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47 (E.D. Va. 2009) (granting motion to dismiss noting that "wholesale incorporations . . . that seek to incorporate superseded versions of a complaint, must be examined with special care"). The differences between the two pleadings are not insignificant, either—the Fairfield SAC completely overhauls and rewrites most of the Fairfield Amended Complaint purportedly incorporated here. (*Compare* Barak Decl. Ex. 3 *with* Barak Decl. Ex. 4; *see also* Barak Decl. Ex. 5.) To require the Grosvenor Defendants to respond to the allegations contained in the 217-page Fairfield Amended Complaint, when it is not even clear which allegations are still extant, is to require the Grosvenor Defendants to do exactly what Rules 8(a) and 10(c) were designed to prevent.

*American Casein Co. v. Geiger (In re Geiger)*—where the court held plaintiff's wholesale incorporation of a prior complaint violated Rule 8(a)—is on point. 446 B.R. 670

(Bankr. E.D. Pa. 2010). There, the plaintiff filed a "bare-bones" complaint alleging the elements of its claim in conclusory fashion and instead relied on the incorporated pleadings to meet the pleading standard. *Id.* at 679–80. Noting that the plaintiff did not even attempt to match the complaint's allegations with "the mass of information . . . incorporated by reference," the court held that the incorporation of the entire pleading violated Rule 8(a). *Id.*

So too, here. The Complaint is 18 pages long and alleges the avoidability of the Fairfield Sentry Initial Transfers in conclusory fashion. In an attempt to remedy this deficiency, the Trustee purports to incorporate the entire Fairfield Amended Complaint without matching the Grosvenor Complaint's "bare-bones" allegations to any specific portion of the 798-paragraph morass, a shortcoming exacerbated by the fact most of those allegations are no longer even extant. Under these circumstances, it is impossible for the Grosvenor Defendants to prepare defenses or otherwise respond. As the *Geiger* court put it: "[p]utting together the puzzle of matching the bare-bones allegations with the meat of the attached materials is the job of the Plaintiffs, not of the Debtor or the Court." *Id.* Accordingly, the Court should reject the Trustee's wholesale incorporation of the Fairfield Amended Complaint and dismiss the Grosvenor Complaint pursuant to Rules 8(a), 10(c) and 12(b)(6).

## III.    THE TRUSTEE'S CLAIMS ARE BARRED BY BANKRUPTCY CODE § 546(e)

The Trustee seeks to recover from the Grosvenor Defendants pursuant to Bankruptcy Code Section 550(a), which provides that, to the extent a transfer is avoided under certain sections of the Bankruptcy Code, a trustee may recover the property transferred, or its value, from the initial transferee or any subsequent transferee. The Grosvenor Complaint must be dismissed for failure to state a claim, though, because Bankruptcy Code Section 546(e) bars a trustee from avoiding a transfer (other than under Section 548(a)(1)(A))[12] if the transfer (1) was

---

[12] Notably, Bankruptcy Code § 548(a)(1)(A) would not avail the Trustee here, because among other things, it has only a two-year lookback period. All but one of the alleged transfers to the Grosvenor Defendants the Trustee seeks recovery on account of date from before the two-year lookback period. *See* Compl. Exs. C, D, E. The only

made by, to, or for the benefit of one of the entities listed in Section 546(e), such as a

stockbroker, financial institution, or financial participant; and (2) was either a settlement

payment or a transfer in connection with a securities contract.  Specifically, Section 546(e)

provides:

> Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b)
> of this title, the trustee may not avoid a transfer that is a margin
> payment, as defined in section 101, 741, or 761 of this title, or
> settlement payment, as defined in section 101 or 741 of this title,
> made by or to (or for the benefit of) a commodity broker, forward
> contract merchant, stockbroker, financial institution, financial
> participant, or securities clearing agency, or that is a transfer made
> by or to (or for the benefit of) a commodity broker, forward
> contract merchant, stockbroker, financial institution, financial
> participant, or securities clearing agency, in connection with a
> securities contract, as defined in section 741(7), commodity
> contract, as defined in section 761(4), or forward contract, that is
> made before the commencement of the case, except under section
> 548(a)(1)(A) of this title.

11 U.S.C. § 546(e).  The Second Circuit has explained that in enacting Section 546(e) Congress

chose to favor the interest of ensuring finality in securities transactions over the interest of

permitting a bankruptcy trustee to recover otherwise avoidable transfers.  *Picard v. Ida Fishman*

*Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411, 423 (2d Cir. 2014)

("[B]y enacting § 546(e), Congress provided that, for a very broad range of securities-related

transfers, the interest in finality is sufficiently important that they cannot be avoided by a

bankruptcy trustee at all, except as actual fraudulent transfers under § 548(a)(1)(A)."); *see also*

---

one that dates from after that lookback period is an alleged transfer from Sentry to Grosvenor Private on July 19, 2007.  The accounting records filed by the Trustee, however, demonstrate that BLMIS did not transfer any funds to Sentry between the cut-off date (December 11, 2006) and when this transfer was alleged to have been made by Sentry to Grosvenor Private.  *See* Compl. Ex. B.  As a result, the transfer could not have been a transfer of BLMIS property recoverable under § 548(a)(1)(A), and thus the Complaint would have to be dismissed in its entirety.  In any event, to the extent the Trustee attempts to argue that he can recover transfers to the Grosvenor Defendants based on § 548(a)(1)(A), the Grosvenor Defendants reserve the right to challenge the avoidability of any and all transfers under § 548(a)(1)(A), including the right to challenge the validity of the Ponzi scheme presumption, which Judge Menashi recently cast doubt on in a concurring opinion in the Second Circuit, *In re Bernard L. Madoff Inv. Sec. LLC*, 12 F.4th 171, 201–04 (2d Cir. 2021) (Menashi, J., concurring), and concerning which there is currently a petition for a direct appeal pending before the Second Circuit. *See Picard v. ABN Amro Bank (Ireland Ltd.) (f/k/a Fortis Prime Fund Solutions Bank (Ireland) Ltd.) (n/k/a ABN Amro Retained Custodial Services (Ireland) Limited)*, No. 20-1898 (2d Cir. Oct. 1, 2021), ECF No. 50..

*Deutsche Bank Tr. Co. Ams. v. Large Private Ben. Owners (In re Tribune Co. Fraudulent Conveyance Litig.)*, 946 F.3d 66, 90 (2d Cir. 2019) ("*Tribune I*") ("Unwinding settled securities transactions . . . would seriously undermine . . . markets in which certainty, speed, finality, and stability are necessary to attract capital."), *cert. denied*, 141 S. Ct. 2552 (2021). Specifically in relation to adversary actions filed against *direct* investors in BLMIS, the Second Circuit has cautioned that "[p]ermitting the clawback of millions, if not billions, of dollars from BLMIS clients—many of whom are institutional investors and feeder funds—would likely cause the very 'displacement' that Congress hoped to minimize in enacting § 546(e)." *Fishman*, 773 F.3d at 420. The concern expressed by the Second Circuit is only amplified in this case, where the defendants are even further removed from BLMIS's fraud. Here, it is evident from the pleadings that the transfers the Trustee seeks to avoid fall within the plain terms of Section 546(e) and thus the Grosvenor Complaint must be dismissed.[13]

## A.    The Alleged Transfers Were Both Made by and Made to or for the Benefit of Entities Listed in Section 546(e)

For two independent reasons, the alleged transfers satisfy Section 546(e)'s first because they were (1) were made by a stockbroker, and (2) the transfers were made to (and for the benefit of) a financial institution, both of which are entities protected by the statutory safe harbor.

### 1.    The Transfer Was Made by a Stockbroker

The District Court has already held BLMIS constitutes a "stockbroker" for the purposes of Section 546(e). *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 719 (S.D.N.Y. 2012), *aff'd sub nom. Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411 (2d Cir. 2014). This holding was not challenged by the Trustee when he appealed the relevant decision on appeal. *See Fishman*, 773 F.3d at 417 ("It is not disputed [by

---

[13] The Grosvenor Defendants, as alleged subsequent transferees, can raise Section 546(e) as a defense even though Fairfield Sentry did not raise it. *See Picard v. Fairfield Inv. Fund Ltd. (SIPC v. Bernard L. Madoff Inv. Sec. LLC)*, 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021) (Morris, C.J.) ("Where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers . . . the subsequent transferee is nonetheless entitled to raise a § 546(e) defense against recovery of those funds.").

the Trustee] that BLMIS was a 'stockbroker' for the purposes of § 546(e).").  As a result, the

transfer the Trustee seeks to avoid was made by a stockbroker, and the first prong of Section

546(e) has been satisfied.

### 2.  The Transfers Were Also Made to or for the Benefit of a Financial Institution

The first prong of the Section 546(e) analysis is also satisfied because the transfer was

made to or for the benefit of a financial institution.  Bankruptcy Code Section 101(22) defines

"financial institution" to include not only "an entity that is a commercial or savings bank," but

also the customer of such a bank "when [the bank] is acting as agent or custodian for a customer

. . . in connection with a securities contract."  11 U.S.C. § 101(22)(A).  In *Fairfield Sentry Ltd. v.*

*Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 2020 WL 7345988 (Bankr. S.D.N.Y.

Dec. 14, 2020) ("*Fairfield III*"), this Court held Sentry was a "financial institution[]" because it

was a customer of Citco Bank, which acted as their agent in connection with the securities

contracts pursuant to which the redemption payments were made.  *Id.* at *7.

That finding follows from facts alleged by the Trustee, as well.  Citco Bank is a bank

regulated by the Netherlands and registered with the Irish regulatory authority. *Fairfield III*,

2020 WL 7345988, at *6 & n.11.[14]  In a document filed with this Court, the Trustee alleged the

founders of FGG, which organized Sentry, "contracted Citco Global Custody N.V. . . . to

nominally serve as the custodian of the [] Sentry assets" and "opened bank accounts at Citco

Bank Nederland, N.V. Dublin Branch."  (*See* ECF No. 70 (the "Proffer") ¶ 35 (Barak Decl. Ex.

---

[14] *See De Nederlandsche Bank, Information Detail: Citco Bank Nederland N.V.*, https://www.dnb.nl/en/public-register/information-detail/?registerCode=WFTDG&relationNumber=B0275 (last visited Feb. 24, 2022) (identifying Citco Bank Nederland N.V. as "[c]arrying on the business of a bank," including "[a]cceptance of deposits and other repayable funds"); Central Bank of Ireland, *Financial Service Provider Profile: Citco Bank Nederland NV Dublin Branch*, http://registers.centralbank.ie/FirmDataPage.aspx?firmReferenceNumber=C27278 (last visited Feb. 24, 2022) (classifying Citco Bank as a "credit institution . . . whose business is to receive deposits or other repayable funds from the public and to grant credits for its own account").  This Court can take judicial notice of information from such public registries.  *See Tribune I*, 946 F.3d at 78; *Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*, 323 B.R. 857, 869 (Bankr. S.D.N.Y. 2005).

11).[15])  Moreover, the Trustee alleged FGG personnel "had final control of the [] Sentry bank accounts and controlled all of [] Sentry's relationships with the various Citco entities" (*id.* ¶ 41), and "controlled and approved all subscriptions into and redemptions from the fund."  (*Id.* ¶ 43.) Sentry was therefore a "customer" of Citco Bank such as to make it a "financial institution." *See Fairfield III*, 2020 WL 7345988, at *7; *see also Tribune I*, 946 F.3d at 78–79.

Here, the Trustee alleges the transfers from BLMIS to Sentry were made from BLMIS accounts designated as "Citco Global Custody N.V. FBO Fairfield Sentry Ltd.," with the account numbers 1FN012 and 1FN045.  (Compl. Exs. A, B.)  Those allegations, combined with the others the Trustee has made in related proceedings, are sufficient to establish that Citco Bank was acting as Sentry's agent in connection with the redemptions at issue.  To paraphrase the Second Circuit in *Kirschner v. Large Shareholders (In re Tribune Co. Fraudulent Conveyance Litigation)*, "[h]ere, [Sentry] entered into an agreement with [Citco Bank] whereby [Citco Bank] was hired to be a steward of [Sentry]'s money . . . . It was clearly acting on behalf of [Sentry], which is enough to satisfy § 546(e)."  10 F.4th 147, 176 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1128 (Feb. 22, 2022).

This Court came to the same conclusion in *Fairfield III*:

> [T]he [Fairfield] Liquidators' admission that redemptions were paid by Citco Bank establishes the necessary agency. It is implausible to infer that Citco Bank made the redemption payments to specific redeemers in specific amounts absent the [Fairfield] Funds' directions to do so. Moreover, Citco Bank accepted those directions by executing the redemption payments. Based on the foregoing, the Funds were customers of Citco Bank who acted as their agents in connection with the securities contracts pursuant to which the redemption payments were made,

---

[15] This Court may take judicial notice of admissions in documents in the public record filed by the Trustee, particularly where the Trustee does not dispute their accuracy.  *See Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000); *Nastasi & Assocs. v. Bloomberg, L.P.*, 2021 WL 3541153, at *4–5 (S.D.N.Y. Aug. 11, 2021); *Jackson v. Broadcast Music, Inc.*, 2006 WL 250524, at *7 (S.D.N.Y. Feb. 1, 2006), *aff'd*, 2007 WL 2914516 (2d Cir. Oct. 5, 2007); *Harris v. N.Y. State Dep't of Health*, 202 F. Supp. 2d 143, 173 n.13 (S.D.N.Y. 2002); *5-Star Mgmt., Inc. v. Rogers*, 940 F. Supp. 512, 518–19 (E.D.N.Y. 1996).

and the Funds were, therefore "financial institutions" within the
meaning of 11 U.S.C. § 546(e).

2020 WL 7345988, at *7 (footnote omitted).[16] *Fairfield III* is binding on the Trustee because he

was in privity with the Fairfield Liquidators, who were litigating the consolidated Fairfield

redeemer actions partly for the Trustee's benefit.[17]

### B.      The Transfers Were Both Settlement Payments and Were Made in Connection with a Securities Contract

The second requirement needed to establish the Section 546(e) safe-harbor applies is also

satisfied in two separate and independent ways; specifically, the relevant transfers from BLMIS

to Sentry were both (1) settlement payments and (2) made in connection a securities contract.

### 1.      The Transfers Were Settlement Payments

The Bankruptcy Code defines "settlement payment" as:

> a preliminary settlement payment, a partial settlement payment, an
> interim settlement payment, a settlement payment on account, a
> final settlement payment, or any other similar payment commonly
> used in the securities trade.

11 U.S.C. § 741(8).  The Second Circuit has held this statutory definition should be broadly

construed to apply to "the transfer of cash or securities made to complete [a] securities

transaction." *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 334 (2d Cir.

---

[16] The Grosvenor Defendants reserve the right to argue, at the appropriate juncture, that the alleged transfers to the Grosvenor Defendants were protected under Section 546(e) for additional reasons, including, without limitation, that the Grosvenor Defendants fell within the definition of "financial institutions."

[17] Pursuant to the Fairfield Settlement Agreement that was incorporated into the Consent Judgment on which the Trustee relies, (*see* Compl. ¶ 40), the Fairfield Liquidators will pay the Trustee 15% of their net recoveries from all claims the Liquidators assert against redeemers from the Fairfield funds (included in the definition of "Sharing Claims") until the Trustee has been paid $1.924 billion.  (Fairfield Settlement Agreement ¶¶ 1, 4, 11.)  The Fairfield Settlement Agreement states that "[t]he Trustee and the Liquidators agree and stipulate that a joint interest exists between them with respect to the Sharing Claims."  (*Id.* ¶ 14.)  The Trustee and the Liquidators' agreed joint interest in any such recovered BLMIS customer property constitutes a "preexisting 'substantive legal relationship,'" focused on a successive or concurrent interest in property of the kind recognized by the Supreme Court as giving rise to nonparty issue preclusion in *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008).  Because the Trustee is in privity with the Liquidators in actions to recover alleged BLMIS customer property, such as the actions at issue in *Fairfield III*, and because the issue of Sentry's "financial institution" status was "actually litigated" and "essential" to the final judgments dismissing numerous such actions on ground of the Section 546(e) safe harbor, this Court's finding in *Fairfield III* that Sentry was a "financial institution" is binding on the Trustee.  *See New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001) (stating requirements for issue preclusion).

2011).  And, indeed, the Second Circuit has already held in *Fishman* that transfers from BLMIS

to its direct account holders (such as Sentry) are "settlement payments," because "[t]hat is what

the BLMIS clients received."  773 F.3d at 422.  This, the Second Circuit held, was true even

though BLMIS did not actually execute any trades making the payments.  *Id.* ("The statutory

definition and *Enron* compel the conclusion that, for example, if I instruct my broker to sell my

shares of ABC Corporation and remit the cash, that payment is a 'settlement' even if the broker

may have failed to execute the trade and sent me cash stolen from another client.").

### 2.    The Transfers Were Made in Connection with Securities Contracts

The second requirement is also independently satisfied because the transfers at issue were

made "in connection with securities contracts."  At the outset, it is important to note that

Bankruptcy Code § 741(7) defines "securities contract" "with extraordinary breadth," to include

"contracts for the purchase or sale of securities, as well as any agreements that are *similar* or

*related to* contracts for the purchase or sale of securities."  *Fishman*, 773 F.3d at 417–18.  With

regard to the Section 546(e) safe harbor, "[t]his concept is broadened even farther because [it]

also protects a transfer that is 'in connection' with a securities contract."  *Id.*  And in *Fishman*,

the Second Circuit already held the various agreements with BLMIS pursuant to which the funds

the Trustee sought to clawback were transferred constituted "securities contracts" within the

ambit of Bankruptcy Code § 546(e).  *Id.* at 418–22.[18]  Similarly, the term "in connection with"

emphasizes the wide scope of Section 546(e).  *Id.*

The same reasoning and result apply here.  Implicit in the Trustee's subsequent transfer

claim is the allegation that the funds the Grosvenor Defendants allegedly received were

---

[18] Moreover, the Second Circuit rejected the Trustee's argument that because BLMIS did not actually engage in
securities transactions, the transfers fell outside the ambit of Bankruptcy Code § 546(e).  *Id.* at 419–20.  The
courts have also made clear the definition of "securities contract" includes "redemption requests."  *SIPC v.
Bernard L. Madoff Inv. Sec. LLC*, 2013 WL 1609154, at *8 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*") ("the
definition of a securities contract . . . includes . . . redemption requests.").

transferred from BLMIS to Sentry so that Sentry could then satisfy the Grosvenor Defendants' redemption request. And, indeed, the Trustee has made that plain in filings in other cases. (*See, e.g.,* Fairfield Amended Complaint ¶¶ 53, 58, 63, 67, 71, 76, 80, 85, 100, 104, 109, 114 (alleging Sentry withdrew funds from its BLMIS account "in order to" pay redemption payments).) Although as demonstrated in Section IV *supra*, this allegation is implausible, its assertion necessarily connects BLMIS's initial transfer to Sentry to the Grosvenor Defendants' alleged contract with Sentry that authorized the redemption. Thus, as in *Fishman*, the alleged transfers made by BLMIS to Sentry were both made "in connection with" the securities contracts Sentry had entered into with BLMIS, and made "in connection with" the allegedly related securities contract, *i.e.*, Sentry's Articles of Association, which governed the Grosvenor Defendants' alleged Sentry redemptions. (*See Migani* ¶ 10 ("the terms of the subscriber's membership of the Fund, which govern the redemption of its shares . . . are to be found in the Articles of Association of the Fund").) And as a result, the transfers from BLMIS to Sentry satisfy Section 546(e)'s second requirement because they were both (1) made in connection with a securities contract between BLMIS and Sentry, and (2) made in connection with a securities contract between Sentry and the Grosvenor Defendants. *See Fishman*, 773 F.3d at 422 ("Section 546(e) sets a low bar for the required relationship between the securities contract and the transfer sought to be avoided" and that "a transfer can be connected to, and can be made in relation to, multiple documents or purposes simultaneously"); *Cohmad*, 2013 WL 1609154, at *9 (transfer from a debtor to an initial transferee may qualify as having been made "in connection with a securities contract" between the initial transferee and a subsequent transferee for the purpose of Section 546(e)). Indeed, it would make no sense for the transfer between Sentry and the Grosvenor Defendants to be protected by Section 546(e) in any avoidance action filed by Sentry, yet allow the Trustee, who is further removed from that transfer, to nonetheless claw it back. Any attempt to do so should be rejected.

IV.    **THE GROSVENOR COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO PLAUSIBLY ALLEGE THE GROSVENOR DEFENDANTS RECEIVED BLMIS PROPERTY**

A.    **The Trustee Has Not Adequately Identified the Customer Property Contained Within the Alleged Subsequent Transfers**

The Grosvenor Complaint also must be dismissed under Rule 12(b)(6) because the Trustee fails to plausibly allege that the subsequent transfers from Sentry to Grosvenor BLMIS property.  In order to state a claim, the Trustee must plausibly allege that each redemption payment Grosvenor received was a subsequent transfer of BLMIS customer property fraudulently transferred from BLMIS to Sentry.  *See* 15 U.S.C. § 78fff-2(c)(3) ("the trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property if and to the extent that such transfer is voidable or void under the provisions of title 11"); *Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) ("*Shapiro*") (holding the Trustee must allege not just that the initial transfer is avoidable, but that "the initial transfer (or subsequent transfers of the initial transfer) was transferred to the subsequent transferee" to state a claim under Section 550); *Sullivan v. Kodsi*, 373 F. Supp. 2d 302, 309 (S.D.N.Y. 2005) (holding the same requirement applies to claims asserted under New York's Debtor and Creditor Law).

The avoidance claim must also be "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Barebones allegations of customer funds being transferred to a subsequent transferee fail to satisfy the plausibility requirement:

> The Trustee must allege facts that support the inference that the funds at issue originated with . . . BLMIS, and contain the "necessary vital statistics"—the "who, when, and how much" of the transfers to establish that an entity was a subsequent transferee of the funds.  At the pleading stage, the Trustee is not required to provide a "dollar-for-dollar accounting" of the exact funds at issue.  However, barebones allegations that the funds at issue were

34

transferred to the Subsequent Transferees, without more detail, are
insufficient.

*Shapiro*, 542 B.R. at 119.  In *Shapiro*, the Court dismissed a conclusory subsequent transferee

claim, because the complaint "[did] not tie any initial transfer to any subsequent transfer or

Subsequent Transferee." *Id.*

The same flaws present in *Shapiro* appear in the Grosvenor Complaint.  The Trustee

alleges that in the six years preceding the BLMIS petition date, BLMIS transferred

approximately $3 billion to Sentry.  (Compl. ¶ 39.)  In turn, the Complaint alleges "[a] portion of

[those transfers] was subsequently transferred either directly or indirectly to" one of Grosvenor's

entities.  (*Id.* ¶¶ 44, 46, 48.)  The Trustee attaches a 75-page exhibit listing thousands of

transactions recorded in Sentry's account at BLMIS.  (*Id.* Ex. B.)  However, the Trustee does not

identify which of those transactions, if any, constituted initial transfers of BLMIS customer

property that were subsequently transferred to Grosvenor.  The Trustee in essence asks the Court

to infer that because BLMIS transferred large sums of money to Sentry during the six-year

period, *all* of the money transferred from Sentry to Grosvenor during that time *must* be

recoverable customer property.  Those conclusory and general allegations lack the "vital

statistics necessary to support a subsequent transfer claim."  *Shapiro*, 542 B.R. at 119.

The Trustee's claims against other parties in similar actions move this Complaint from

the realm of conclusory and implausible into the impossible.  While the Trustee alleges that

BLMIS transferred approximately $3 billion to Sentry (Compl. ¶ 39), the Trustee seeks to

recover over $5 billion[19] of subsequent fraudulent transfers from dozens of defendants.  (*See*

Barak Decl. ¶ 14(w), Exs. 8, 9, 10.)  Given this, the Trustee's allegations that the various

avoidance action defendants received BLMIS property are not only implausible—for more than

---

[19]  As explained in the Barak Declaration, this figure was calculated by summing the amounts of the transfers the
Trustee is seeking to claw back from all of the Sentry subsequent transferees in each of the adversary proceedings
he has initiated in this case.  (Barak Decl. ¶ 14(w).)  Doing so required two items: copies of the adversary
proceedings and a calculator. No accounting methodology or expert financial analysis is required.

one third of the value the Trustee seeks to recover, such allegations are impossible. Indeed,

those allegations necessarily mean Sentry used funds *other than those from BLMIS* to make

redemption payments, something Sentry confirmed in another adversary proceeding, admitting

that "[f]rom time to time, to make Redemption Payments, Sentry . . . utilized subscription monies

of other investors on hand that were directed for investment in BLMIS." (*See* First Amended

Complaint, *Fairfield Sentry Ltd. v. Citco Global Custody NV*, Adv. Pro. No. 19-01122 (Bankr.

S.D.N.Y. Nov. 26, 2019), ECF No. 19 ¶ 63 (Barak Decl. Ex. 12).)

Despite these problems, the Trustee makes conclusory allegations that essentially every

single transfer made by Sentry in the six-year look back period, including the alleged transfers to

the Grosvenor Defendants, contained BLMIS property. He has not provided any particularized

allegations to explain how or why certain payments made by Sentry to subsequent transferees

actually originated with BLMIS rather than elsewhere. Such "barebones" generalized pleadings

fail to provide the "vital statistics" needed to support the inference that the monies the Trustee

seeks to claw back from the Grosvenor Defendants are actually BLMIS customer property.

*Shapiro*, 542 B.R. at 119.[20]

### B.    The Trustee's Complaint Seeks to Recover Transfers Made by Sentry at Times When the Trustee Alleges Sentry Possessed No BLMIS Funds

The Trustee seeks to recover transfers made when, according to the Trustee's own

allegations, it is mathematically impossible for any recoverable BLMIS funds to have been

located in Sentry's accounts. For these transfers either (1) no BLMIS funds had yet been

transferred to Sentry in the six-year look back period; or (2) the amounts allegedly paid out to

other parties before the alleged transfers were made to the Grosvenor Defendants vastly

exceeded the amount BLMIS had transferred into Sentry, meaning the BLMIS funds had been

---

[20] No "greater latitude" is due to the Trustee given that he has had access to all of Sentry's relevant accounting information for over a decade. *Cf. In re Bernard L. Madoff Inv. Sec.* LLC, 515 B.R. 117, 151 (Bankr. S.D.N.Y. 2014) ("*Merkin*") (granting "greater latitude" because the subsequent transfer claim "must ultimately be proved through the books and records of the defendants").

exhausted before any transfers were made to the Grosvenor Defendants and those alleged transfers must have been made with non-BLMIS funds.

Mathematical impossibility defeats a number of the Trustee's claims against the Grosvenor Defendants.  First, the Complaint identifies and seeks to recover two alleged transfers totaling in $6,691,288 made by Sentry to the Grosvenor Defendants on April 14, 2003.  (Compl. Exs. C, E.)  However, no recoverable BLMIS funds were transferred to Sentry between the six-year cut-off date (December 11, 2002) and April 14, 2003.  (Compl. Ex. B at 19.)  Rather, Sentry did not receive potentially recoverable funds from BLMIS until May 9, 2003.  (*Id.*)  It is therefore impossible that the transfers made on April 14, 2003 contained recoverable customer property.

The Trustee also seeks to recover an $8 million transfer made to Grosvenor on March 15, 2005.  (*Id.* Ex. D.)  Between May 9, 2003 and July 22, 2003, the Trustee alleges BLMIS made three separate transfers to Sentry which combined totaled $120 million.  (*See id.* Ex. B at 19–20; Barak Decl. ¶ 14(h).)  Between July 22, 2003 and March 15, 2005, Sentry did not receive any other funds from BLMIS.  (*See* Compl. Ex. B. at 20–23, 51–54, 66, 72.)  In complaints filed against other parties, however, the Trustee alleges that Sentry transferred more than $230 million of BLMIS property to other subsequent transfers between May 9, 2003 and December 30, 2003—$110 million more than Sentry received from BLMIS.  (Barak Decl. ¶ 14(h).) Additionally, between January 1, 2004 and the alleged March 15, 2005 transfer to the Grosvenor Defendants, the Trustee alleges Sentry made $350 million transfers to other defendants.  (Barak Decl. ¶ 14(j).)  If Sentry gave out over $100 million more than BLMIS put in by the end of 2003, and no BLMIS funds were transferred in the interim while an additional $350 million was transferred out of Sentry to other recipients, then the alleged March 15, 2005 transfer to the Grosvenor Defendants could not have included any BLMIS property.

The same discrepancy between the amount of BLMIS money transferred into Sentry and the amount allegedly transferred to other parties prevents recovery on the $5 million transfer allegedly made to Grosvenor Private on July 19, 2007. (Compl. Ex. E.) According to the Trustee's allegations, however, by that date the amount of subsequent transfers to other entities exceeded the amount of available BLMIS funds in Sentry accounts by approximately $400 million, and Sentry received no new BLMIS funds until August 18, 2007. (Barak Decl. 14(u).) The Trustee thus seeks to recover on transfers that, assuming the other allegations are true, could only have been made using non-BLMIS funds.[21] Adding these together, it is mathematically impossible for $19,691,288 of the $31,506,389 the Trustee seeks to claw back from the Grosvenor Defendants as alleged subsequent transfers to have been recoverable BLMIS customer property. (Barak Decl. ¶ 14(v).)

The mathematical impossibility of certain claims against the Grosvenor Defendants speaks to the implausibility of the Complaint in its entirety. As explained above, the Trustee generally seeks to recover as subsequent transfers $2 billion more than BLMIS initially transferred into Sentry, and is pursuing claims against the Grosvenor Defendants the majority of which, according to the Trustee's own allegations, are simply impossible. Given the Trustee's failure to account for these disparities, as well as the complete absence of any allegations tying any of the alleged transfers received by the Grosvenor Defendants to BLMIS, the Trustee cannot be said to have plausibly alleged that any transfers contained customer property.

The Trustee's claims also fail the "single-satisfaction" rule contained in the Bankruptcy Code Section 550(d). While Section 550(a) provides a mechanism to recover from either the

---

[21] The Trustee seeks to recover two transfers made on December 19, 2005 amounting in $11,312,804 in total. (Compl. Exs. D, E.) Trustee also seeks to recover a $2,298 transfer made on March 17, 2006. (*Id.* Ex. E.) These two dates mark rare instances where the alleged BLMIS funds in Sentry accounts exceeded the alleged transfers to other parties before those dates. The Complaint, however, still fails to allege anything that would suggest these transfers were BLMIS property instead of other funds, and thus the claims with respect to these transfers still merit dismissal.

initial or subsequent transferees property that has been avoidably transferred, Section 550(d) provides that "[t]he trustee is entitled to only a single satisfaction under [section 550(a)]."  11 U.S.C. § 550(d).  This "single-satisfaction rule" is designed to "prevent a single plaintiff from recovering its damages several times over from multiple defendants."  *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 241 (2d Cir. 1999); *see also Freeland v. Enodis Corp.*, 540 F.3d 721, 740 (7th Cir. 2008) (stating that "the trustee can recover from any combination of the entities mentioned [in section 550(a)] subject to the limitation of a single satisfaction"); Collier on Bankruptcy ¶ 550.01 (16th ed. 2019) (the trustee is generally prevented by section 550(d) from "obtaining a windfall for the estate by recovering from multiple transferees so that the total recovery is in excess of the value of the property transferred").  The Trustee has already received some recovery on his claims against Sentry pursuant to the Fairfield Settlement Agreement, and his attempt to recover two-thirds more money from subsequent transferees of Sentry than BLMIS ever transferred to Sentry in the first place will result in exactly the kind of windfall Section 550(d) prohibits.

The Trustee cannot justify his "sue-everyone-and-figure-it-out-later approach" by claiming that he does not have access to the records needed to satisfy this pleading requirement or that he needs more time to sort through them, either.  He has had access to all of Sentry's records for more than a decade.  As part of the Fairfield Settlement Agreement, the Trustee and Sentry's Liquidators agreed to "provide reasonable access to the other's documents, data, and other information relating to, or beneficial to the pursuit of" actions such as this Grosvenor Complaint.  (Fairfield Settlement Agreement ¶ 14.)  Moreover, the Liquidators agreed to "provide reasonable cooperation and assistance" to the Trustee "in connection with the prosecution of" such claims.  (*Id.*)  The fact the Trustee has let these avoidance actions remain pending for a decade without even trying to fix the mathematical impossibilities underlying his claims, despite having access to all the needed records, only further demonstrates the Grosvenor

39

Complaint should be dismissed. *See Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 709, 723 (2d Cir. 2013) (affirming dismissal and finding that "such imprecise pleading is particularly inappropriate here, where the plaintiffs necessarily have access, without discovery, to plan documents and reports that provide specific information from which to fashion a suitable complaint"); *Sapia v. Home Box Off., Inc.*, 2018 WL 6985223, at *8 (S.D.N.Y. Dec. 17, 2018) (dismissing claim where plaintiffs failed to precisely plead facts that were "uniquely in [p]laintiffs' possession").

## CONCLUSION

For the foregoing reasons, the Grosvenor Defendants respectfully request that the Court enter an order dismissing the Complaint with prejudice.

Dated: New York, New York
      April 15, 2022

Respectfully submitted,

PROSKAUER ROSE LLP

By:  s/ *Ehud Barak*
Ehud Barak
Russell T. Gorkin
Elliot R. Stevens
Eleven Times Square
New York, New York 10036
Telephone:    212-969-3000
Facsimile:    212-969-2900
Email:  *ebarak@proskauer.com*
        *rgorkin@proskauer.com*
        *estevens@proskauer.com*

*Attorneys for Grosvenor Defendants*

40