# Exhibit 10

No. _____

---

**NOT FOR USE OR DISTRIBUTION IN THE
UNITED STATES OF AMERICA**

---

### PROSPECTUS

**Relating to an offering of shares of a
par value of US$0.01 each of**

# GROSVENOR BALANCED GROWTH FUND LIMITED

**<u>Revised February 2010</u>**

Investment Manager:
Grosvenor International Asset Management Limited
Kingston Chambers
P.O. Box 173
Road Town, Tortola
British Virgin Islands

## CONFIDENTIAL PROSPECTUS

# GROSVENOR BALANCED GROWTH FUND LIMITED

c/o Grosvenor Fund Administration Limited
Mercury House, 101 Front Street
Hamilton, HM 12
Bermuda

Grosvenor Balanced Growth Fund Limited (the "**Company**") is an open-ended mutual fund company of unlimited duration incorporated on 26 September, 2000 under the laws of Bermuda. While capital growth is the primary investment objective, the Company will seek to control overall levels of risk in all market environments. The business and investment strategy carried on by the Company is a continuation of the investment business previously carried on by Grosvenor Balanced Growth Fund L.P., a Bermuda exempted limited partnership (the "**Partnership**") formed on October 1, 1994. The Company is offering its participating shares (the "**Shares**") at a price based on their net asset value. The minimum initial investment per investor is US$250,000. Subsequent subscriptions are not subject to a minimum provided that the shareholder holds, at the time of subscription, a number of Shares with an aggregate Net Asset Value of not less than US$250,000.

If you are in any doubt about the contents of this document you should consult your stockbroker, bank manager, lawyer, accountant or other professional adviser. The distribution of this prospectus and the offering of Shares in certain jurisdictions may be restricted and accordingly persons into whose possession this document comes are required by the Company to inform themselves about and to observe such restrictions. This document does not constitute an offer or solicitation to anyone in any jurisdiction in which such offer is not authorized or to any person to whom it is unlawful to make such offer or solicitation.

The Shares are offered on the basis of the information and representations contained in this prospectus. Any information given or representations made by any person may not be relied upon as having been authorized by the Company or its directors unless contained in this prospectus. Under no circumstances shall the delivery of this document or the allotment or issue of Shares create any implication that there has been no change in the affairs of the Company since the date hereof.

The Company is an "investment fund" within the meaning of the Investment Funds Act 2006 of Bermuda, as amended (the "**IFA**"). The Company has been authorized by the Bermuda Monetary Authority (the "**BMA**") as an institutional fund pursuant to the provisions of the IFA. The permission of the BMA under the Exchange Control Act 1972 of Bermuda, as amended, and the regulations made thereunder has also been obtained for the issue of up to 10,800,000 Shares.

The Company has been granted an exemption from the BMA from the requirement to utilize a custodian on the basis that appropriate alternative arrangements are in place to safeguard the assets of the Company.

Authorisation by the BMA does not constitute a guarantee by the BMA as to the performance of the Company or its creditworthiness. Furthermore, in authorizing the Company, the BMA shall not be liable for the performance of the Company or for the default of its operators or service providers, nor for the correctness of any opinions or statements expressed in this prospectus. The Company has been classified as an Institutional Fund. As such, the Company may not be supervised to the same degree as other funds which are authorized and regulated by the BMA. Therefore, the Company should be viewed as an investment suitable only for participants who can fully evaluate and bear the risks involved.

The Company is not registered or licensed, and has no present intention of seeking to become registered or licensed, in any jurisdiction or with any supervisory or regulatory authority outside Bermuda. The Company is not listed, and has no present intention of seeking a listing, on any stock exchange.

In addition, a copy of this document has been delivered to the Registrar of Companies in Bermuda for filing pursuant to the Companies Act 1981 of Bermuda, as amended. In accepting this document for filing, the Registrar of Companies in Bermuda accepts no responsibility for the financial soundness of any proposal or for the correctness of any of the statements made or opinions expressed with regard to them.

The Shares have not been registered under any United States ("US") securities laws and, except in a transaction which does not violate US securities laws, may not be directly or indirectly offered or sold in the US, or any of its territories or possessions or areas subject to its jurisdiction, or to or for the benefit of a US person.

The Company is not a recognized collective investment scheme under any United Kingdom financial services laws and, as such, Shares may not be offered or sold in the United Kingdom by means of this document except to persons authorized to carry on investment business under such laws, persons whose ordinary business involves the acquisition or disposal of investments similar to those of the Company and persons otherwise permitted to receive this document under such laws.

To the best of the knowledge and belief of the directors of the Company (who have taken all reasonable care to ensure that such is the case), this document does not contain any untrue statement, or omit anything which would make any statement untrue.

ii

## GROSVENOR BALANCED GROWTH FUND LIMITED

### SUMMARY OF TERMS

The following is a summary of certain information set forth more fully elsewhere in this prospectus. This summary should be read in conjunction with such detailed information.

THE COMPANY:

The Company is a company incorporated in Bermuda on September 26, 2000 with limited liability and unlimited duration under the provisions of the Companies Act 1981 of Bermuda, as amended. The business and investment strategy carried on by the Company is a continuation of the investment business previously carried on by Grosvenor Balanced Growth Fund L.P., a Bermuda exempted limited partnership (the "**Partnership**") formed on October 1, 1994. The Company has been authorized by the Bermuda Monetary Authority as an institutional fund pursuant to the provisions of the Investment Funds Act 2006, as amended.

INVESTMENT OBJECTIVE:

While capital appreciation is the primary investment objective, the Company will seek to control overall levels of risk in all market environments.

INVESTMENT STRATEGY:

Research

The Investment Manager has extensive experience of analyzing markets and of researching and evaluating specialist investment managers and investment styles. The Investment Manager's research is both quantitative and qualitative. While the quantitative aspects of evaluation are important in relation to third-party managers, significant emphasis is placed upon the qualitative aspects, including an evaluation of management style. The Investment Manager does not rely solely upon historic measures to determine an investment manager's risk, but makes an assessment of the potential risk, given the manager's style and implementation of the investment strategy.

Selection of Sub-Managers

The Company may seek to achieve its investment objective by allocating some, or all, of its assets to one or more Sub-Managers (the "**Sub-Managers**") selected by the Investment Manager. The Sub-Managers selected for the Company may adopt a wide range of investment strategies.

Sub-Managers may employ an extensive range of financial instruments to achieve attractive returns and also to control risk in all sectors of the international capital markets. The Sub-Managers may use leverage to enhance returns.

### Direct Management

The Investment Manager may undertake direct investments on behalf of the Company. These direct investments may include, but are not limited to, exchange traded equities, exchange traded funds, currencies and fixed income securities and bonds.

### On-Going Management of the Company

The Investment Manager will monitor the portfolio and all of its investments on an on-going basis. The Investment Manager will base overall asset allocation, in part, upon their view of the prevailing market environment and may adjust portfolio allocations based upon their view of potential risks and opportunities.

OFFERING OF SHARES:    Shares will be offered for sale on the first Business Day of each month (the "**Dealing Day**") or at such other times as the directors may determine. A Business Day is any day on which banks in Bermuda are open for business (a "**Business Day**"). Shares will be sold at a purchase price per Share equal to the Net Asset Value per Share as at the close of business on the Business Day preceding the Dealing Day (the "**Valuation Day**").

MINIMUM SUBSCRIPTION:    The minimum initial subscription for Shares is US$250,000. Subsequent subscriptions are not subject to a minimum provided that the shareholder holds, at the time of subscription, a number of Shares with an aggregate Net Asset Value of not less than US$250,000. The Directors may at their discretion accept subscriptions for lesser amounts.

DESIGNATED INVESTMENTS    The Directors may, in their sole discretion, classify certain of the Company's investments which are deemed by the Directors or the Investment Manager to be illiquid or the value of which is not readily or reliably ascertainable or which may have a relatively long-term investment horizon as "**Designated Investments**". Once so classified, Designated Investments shall be represented by a separate Class and/or

iv

Series of non-voting non-redeemable Shares (the **"Designated Shares"**) which, unless otherwise determined by the Directors, shall be allotted only to those shareholders who are holders of Shares at the time of such designation. The gains and losses attributable to Designated Investments shall be segregated and separately calculated and attributed amongst shareholders holding Designated Shares of the relevant Class or Series in such manner as the Directors, in their absolute discretion, consider fair and equitable. Designated Shares of any such separate Class and/or Series may be issued by way of bonus or by way of conversion or exchange of all or part of a shareholder's holding of Shares of another Class and/or Series.

Shares of a Designated Investment Class and/or Series may be converted or exchanged back into Shares of the original Class and/or Series upon the Directors making a determination that the relevant investment no longer qualifies as a Designated Investment. The power to convert or exchange Shares of one Class and/or Series into Shares of another Class and/or Series may be effected by the Directors in any manner permitted by the Companies Act 1981 of Bermuda, as amended, and the Bye-laws, including but not limited to the compulsory redemption of Designated Shares of one Class and/or Series and the application of the proceeds of redemption in subscribing for Shares of the other Class and/or Series or by re-designating a portion of the Shares of any existing Class and/or Series as thereafter belonging to a new Class and/or Series or providing a payment in cash to the relevant Shareholders of the proceeds of redemption.

REDEMPTION:

Generally, Shares other that Designated Shares may be redeemed on the first Business Day of each calendar quarter with 60 days prior written notice (subject to the directors waiving such notice) (the **"Redemption Date"**), or on such other days as the directors may designate as a Redemption Date. Shares will be redeemed at a price per Share equal to the Net Asset Value per Share as at the close of business on the Valuation Day. Payment of the redemption proceeds will be made as soon as practical after the relevant Redemption Date.

In the event that the aggregate redemption requests received with respect to any Redemption Date exceed 25% of the value of the net assets of the Company as of such date, the Directors may, in their sole discretion, (i) satisfy all such redemption requests, or (ii) reduce all redemption requests pro rata so that only 25% (or more in the discretion of the

Directors) of the value of the net assets of the Company are redeemed (the "**Redemption Gate**"). A redemption request that is not satisfied in full as of the intended Redemption

Date because of the foregoing Redemption Gate will be carried forward and satisfied at the next Redemption Date but will be subject to all restrictions pertaining to redemptions generally including any Redemption Gate that may be invoked with respect to that subsequent Redemption Date. Redemption requests which are carried forward shall be satisfied in full in preference to subsequently received redemption requests. The value of Shares not redeemed from the Company by virtue of the foregoing Redemption Gate restrictions will remain subject to fluctuations in the value of the investments until their effective Redemption Date.

If a request for partial redemption is less than US$50,000 or would result in the shareholder holding a number of Shares having an aggregate Net Asset Value of less than US$250,000, then the Company has the right to refuse to honour such request for partial redemption. In their sole discretion, and according to the circumstances outlined in the section entitled "Compulsory Redemptions" on page 10, the directors may at any time redeem some or all of the Shares of any shareholder.

Designated Shares shall not, unless the Directors otherwise determine, be redeemable at the option of the shareholders holding such Shares. The power to compulsory redeem Designated Shares of one Class and/or Series may be effected by the Directors in any manner permitted by the Companies Act 1981 of Bermuda, as amended, and the Bye-laws, and the application of the proceeds of redemption in subscribing for Shares of the other Class and/or Series or by re-designating a portion of the Shares of any existing Class and/or Series as thereafter belonging to a new Class and/or Series or providing a payment in cash to the relevant Shareholders of the proceeds of redemption.

SUBSCRIPTION PROCEDURE:    Persons interested in subscribing for Shares should complete the Company's application form and return the same to the Administrator at the address listed thereon. Payment for Shares must be made by wire transfer.

NET ASSET VALUE:    The Net Asset Value per Share will be determined in accordance with the Company's bye-laws. The net asset value ("**Net Asset Value**") is equivalent to the assets less the liabilities attributable to the Shares on any Valuation Day.

The Net Asset Value per Share is determined by dividing the Net Asset Value by the number of outstanding Shares.

| | |
|---|---|
| **MANAGEMENT FEE:** | The Company will pay the Investment Manager a management fee payable in arrear on the last Business Day of each month equal to 0.167% (2.0% on an annualized basis) on the Net Asset Value of the Company on the last Business Day of such month. |
| | The Company will pay fees indirectly to the Sub-Managers. These may include both management fees and/or performance fees. |
| **RISK CONSIDERATIONS:** | The specialized investment program of the Company involves significant risks (see "Risk Considerations"). |

**DIRECTORS:**

William Dolan          (President)
Mercury House
101 Front Street
Hamilton HM 12
Bermuda

Norman J. Holbrow          (Vice-President)
Mercury House
101 Front Street
Hamilton HM 12
Bermuda

Daniel Voth          (AML Compliance Officer)
Mercury House
101 Front Street
Hamilton HM 12
Bermuda

**REGISTERED OFFICE:**

Thistle House
4 Burnaby Street
Hamilton HM 11
Bermuda

**INVESTMENT MANAGER:**

Grosvenor International Asset Management Limited
Kingston Chambers
P.O. Box 173
Road Town, Tortola
British Virgin Islands

**AUDITORS:**

KPMG
Crown House
4 Par-la-Ville Road
Hamilton HM 08
Bermuda

ADMINISTRATOR:                    Grosvenor Fund Administration Limited
                                  Mercury House
                                  101 Front Street
                                  Hamilton HM 12
                                  Bermuda


CORPORATE SECRETARY              Quorum International Limited
                                  Thistle House
                                  4 Burnaby Street
                                  Hamilton HM 11
                                  Bermuda


LEGAL COUNSEL:                    Mello Jones & Martin
                                  Barristers and Attorneys
                                  Thistle House
                                  4 Burnaby Street
                                  Hamilton HM 11
                                  Bermuda

## GROSVENOR BALANCED GROWTH FUND LIMITED

## THE COMPANY

Grosvenor Balanced Growth Fund Limited (the "**Company**") is a company incorporated in Bermuda on 26 September, 2000 with limited liability and unlimited duration under the provisions of the Companies Act 1981 of Bermuda. The Company's registered office is located at Thistle House, 4 Burnaby Street, Hamilton HM 11, Bermuda. The business and investment strategy carried on by the Company is a continuation of the investment business previously carried on by Grosvenor Balanced Growth Fund L.P., a Bermuda exempted limited partnership (the "**Partnership**") formed on October 1, 1994. During the initial offering of Shares, which closed on November 1, 2000, the assets of the Partnership were transferred and invested in the Company in return for the issuance of shares to the limited partners of the Partnership on the basis of an initial offering price of US$100 per Share.

The Company has an authorized capital of US$120,000 divided into 12,000,000 shares of $0.01 par value each of which 10,693,719.7187 shares are participating shares (referred to herein as "**Shares**") being offered pursuant to this Prospectus, 1,200,000 shares are organisational shares (referred to herein as "**Organisational Shares**") which have been subscribed to by the Investment Manager and 106,280.2813 shares are Designated Shares. The Company has the object of carrying on the business of a mutual fund. As such, it has the power to issue and redeem its Shares at a price based on Net Asset Value, as determined as set out herein.

In order to provide for the minimum share capital required on incorporation under Bermuda law at the time of incorporation, the Investment Manager has subscribed for the Organisational Shares. The holder of the Organisational Shares is not entitled to redeem the Organisational Shares, is not entitled to any dividends the directors may from time to time declare and has no voting rights (except where no Shares are in issue). Organisational Shares will not be taken into account in determining the Net Asset Value of the Shares of the Company.

## INVESTMENT OBJECTIVE AND STRATEGY

While capital growth is the primary investment objective, the Company will seek to control overall levels of risk in all market environments. The Investment Manager undertakes an analysis of key markets in order to determine the appropriate overall asset allocation and strategy for the Company. The overall asset allocation and the specific strategies adopted are important factors in determining the likely performance and volatility of investment returns.

Research

The Investment Manager has extensive experience of analyzing markets and researching and evaluating specialist investment managers and investment styles. The Investment Manager's approach to portfolio management is both quantitative and qualitative. While the quantitative aspects of evaluating the historic performance of potential Sub-Managers are important, significant emphasis is placed upon the qualitative aspects, including an evaluation of management style. The

1

Investment Manager does not rely solely upon historic measures to determine a Sub-Manager's risk, but makes an assessment of the potential risk, given the Sub-Manager's style and implementation of the investment strategy.

## Selection of Sub-Managers

The Company may seek to achieve its investment objective by allocating some, or all, of its assets to one or more Sub-Managers selected by the Investment Manager. The Sub-Managers selected for the Company may adopt a wide range of investment strategies. Some Sub-Managers may employ an extensive range of financial instruments to achieve attractive returns and also to control risk in all sectors of the international capital markets. The Sub-Managers, while staying within their stated investment strategy, may use leverage to enhance returns.

## Direct Management

The Investment Manager may undertake direct investments on behalf of the Company. These direct investments may include, but are not limited to, exchange traded equities, exchange traded funds, currencies and fixed income securities and bonds.

## On-Going Management of the Company

The Investment Manager will monitor the portfolio and all of its investments on an on-going basis. The Investment Manager will base overall asset allocation, in part, upon their view of the prevailing market environment and may adjust portfolio allocations based upon their view of potential risks and opportunities.

## Management of Risk:

The Investment Manager approaches the management of risk in a variety of ways. In addition to the standard industry measures of assessing risk, the Investment Manager has developed a number of proprietary approaches to assessing portfolio risk. An important aspect of the management of the portfolio is recognition that risk is not static but changes with the general investment environment. Overall asset allocation may change as these perceived risks change. Portfolio risks may be further controlled on an ongoing basis through diversification. Where a number of Sub-Managers are employed, risks may be reduced due to the blending of different investment management styles.

While the Investment Manager may directly manage a portion of the portfolio, it is expected that a substantial percentage, and possibly all of the assets of the Company will consist of shares or other ownership interests in the various Sub-Managers and cash. The Company intends to hold the shares of the Sub-Managers directly as opposed to holding the shares via an omnibus account maintained by a third party custodian. Accordingly, the Company will be reflected as the registered holder of the shares on the respective share registers maintained by each of the Sub-Managers. The Company is of

2

the view that this direct ownership of the shares of the Sub-Managers provides satisfactory protection to the Company in lieu of utilizing the services of a third party custodian. The Company has been granted an exemption from the BMA from the requirement to utilize a custodian on the basis that appropriate alternative arrangements are in place to safeguard the assets of the Company.

## RISK CONSIDERATIONS

The identification of attractive investment opportunities is difficult and involves a significant degree of uncertainty. Consequently, returns generated from the Company's investments may not adequately compensate Shareholders for the business and financial risks assumed. The Company is subject to those market risks common to entities investing in all types of securities, including market volatility. Also, certain trading techniques expected to be employed by the Sub-Managers such as leverage and hedging may increase the adverse impact to which the Company's investment portfolio may be subject. In addition, there are other potential, unspecified risks to which the Company's investments may be exposed. Prospective investors should carefully consider all potential risks and assess the following factors in determining whether an investment in the Company is a suitable investment:

**Sub-Manager Risk:**

The Company may invest a substantial percentage, or all, of its assets through Sub-Managers. Although, the Investment Manager will monitor the performance of each investment, the Company will rely upon the Sub-Managers for day to day trading and operations of those investments, and the Investment Manager may be unable to determine whether a Sub-Manager is following the investment program described in the Sub-Manager's offering documents. The strategies employed by the Sub-Managers may also involve risks under some market conditions that are not anticipated. Accordingly, the success of the Company depends upon the skill and ability of the Sub-Managers to effectively execute their individual investment strategies. A failure by any Sub-Manager to effectively execute its investment strategy may cause the assets of the Company invested with that Sub-Manager to significantly decline in value and could result in substantial losses to the Company.

The Sub-Managers selected by the Company may be managers of unregulated collective investment schemes. Consequently, the Company may invest in other collective investment schemes which may be established in jurisdictions where there is little or no regulation of financial services. The Sub-Managers selected by the Company may use options, futures or contracts for differences. The markets in which these instruments trade may be volatile. Sub-Managers may also invest in illiquid assets or assets which only trade infrequently. The Company may rely, in such circumstances, upon valuations of such assets effectively provided by the Sub-Manager or their Administrator as reflected in periodic NAV's.

3

**Independent Sub-Managers**

Where a number of Sub-Managers are employed by the Company, those Sub-Managers may invest wholly independently of one another and may at times hold economically offsetting positions. To the extent that the Sub-Managers do, in fact, hold such positions, the profitability of the Company would be reduced or negated.

**Currency Risk:**

The Sub-Managers may invest in assets and debt securities denominated in currencies other than US dollars. The Company will, however, value the total Company's assets in US dollars. The value of the Company's assets will fluctuate with US dollar exchange rates as well as with price changes of the Sub-Managers' investments in the various local markets and currencies. The Sub-Managers may decide to employ hedging instruments to preserve the value of their investments in US dollars, but this may or may not be effective in reducing the Company's overall exposure to currency fluctuations.

The Investment Manager may use currency hedging strategies which may not always achieve the anticipated objectives.

**Leverage Risk:**

Some Sub-Managers may utilize leverage in order to enhance returns which could result in increased volatility in the performance of those Sub-Managers and is likely to increase the adverse impact to the Company in the event of an unsuccessful investment by those Sub-Managers utilizing leverage.

**Market Risk:**

Should the Investment Manager directly manage a portion of the portfolio, those investments, like those of the Sub-Managers, will be exposed to potential market risks. In addition, the Investment Manager may invest in non-US domiciled assets and therefore expose the Company to potential currency risks in relation to its US Dollar valuation basis. The Investment Manager will undertake direct investments independently of any Sub-Managers. As a result, the Investment Manager may cause the Company to invest in economically offsetting positions. This may have some impact upon the portfolio's returns and volatility.

**Operating History:**

The Shares commenced trading in November 2000. Historical performance results are available from the Company's Administrator on request. There can be no assurance that the Shares will achieve the performance that the Shares have achieved to date. Furthermore, the Company's investment program should be evaluated on the basis that there can be no assurance that the Investment Manager's assessment of markets and Sub-Managers in the future will prove accurate or that the Company will achieve its investment objective.

4

**Sophisticated Investors**

An investment in the Company is not intended as a complete investment program. It is designed only for experienced and sophisticated persons who are able to bear the risks associated with an investment in the Company. Investors should review closely the investment objective and investment strategy to be utilized by the Company as outlined in this Prospectus to familiarize themselves with the risks associated with an investment in the Company.

**Dependence Upon Key Individuals**

The success of the Company is significantly dependent upon the expertise of the Investment Manager and its principal, William Dolan. If Mr. Dolan was unable for any reason to provide services to the Investment Manager this would have a significant impact upon the ability of the Company to achieve its investment objective.

**Limited Liquidity**

An investment in the Company provides limited liquidity since the shares are not freely transferable and a shareholder may only redeem from the Company at the end of each calendar quarter upon providing 60 days prior written notice. In addition, redemptions may be subject to the Redemption Gate should aggregate redemption requests received with respect to any Redemption Date exceed 25% of the value of the net assets of the Company as of such date and may be suspended in situations where the Company is unable to liquidate its investments with the Sub-Managers or accurately price its investment portfolio. As such, an investment in the Company is suitable only for sophisticated investors who have no need for liquidity in their investment.

**Compensation Arrangements**

The Sub-Managers may receive compensation based partly on the performance of the investments held by the Company. Such compensation arrangements may create an incentive to make investments that are riskier or more speculative than would be the case if such arrangements were not in effect. Sub-Managers will be entitled to receive incentive compensation from the Company based solely upon the performance of the investment portfolio of that Sub-Manager. Therefore, it is possible that certain Sub-Managers may receive incentive compensation even though the Company, as a whole, does not experience positive performance.

**Multiple Levels of Expense**

The Sub-Managers will typically impose administrative costs, management fees and incentive fees in addition to the fees and expenses payable by the Company. This will result in greater expense to the Shareholders than if the Shareholders had invested directly in the Sub-Managers.

5

**Reliance on Sub-Manager Valuations**

In valuing the Company, the Administrator will rely upon the valuations received from each of the Sub-Managers. The Administrator will have no ability to assess the accuracy of the valuations received from the Sub-Managers. Furthermore, the net asset values received by the Administrator from the Sub-Managers may be subject to revision when the portfolio of each Sub-Manager undergoes its year end audit.

**Investment and Trading Risks in General:**

All securities investments risk the loss of capital. Investment in the various securities and other instruments of the Sub-Managers involves significant economic risks. Although the Company's investment program is expected to provide some protection from the risk of loss inherent in the ownership of such investments, there can be no assurance that these strategies will completely protect against this risk or that the Company's investment objectives will be obtained.

**Possible Effect of Redemptions:**

Should the Company receive substantial redemption requests from its Shareholders, it could require the Company to liquidate investments with Sub-Managers more rapidly than otherwise desirable in order to raise the necessary cash to fund the redemptions and to achieve an allocation of funds to the Sub-Managers to reflect a smaller equity base. This could adversely affect the value of the Shares. In addition, the Company's ability to pay redemptions to Shareholders is dependent upon receipt by the Company of redemption payments from the Sub-Managers. The Sub-Managers may invest in restricted or non-publicly traded securities or other investments which are illiquid. This could prevent Sub-Managers from liquidating positions promptly and impair their ability to pay redemption proceeds to the Company. This, in turn, may cause delays in the payment by the Company of redemption proceeds to Shareholders.

**No Equalization or Series Accounting**

The Company does not at present pay any performance fee in relation to this fund. Should this change the Company will not use specific accounting methodologies (e.g. equalization or series) to calculate the performance fee. Accordingly the performance fee will be levied at the end of the Company's financial year against the shareholders pro rata in accordance with their number of shares owned in the Company as opposed to being calculated on the appreciation in value achieved by each share purchased. This could result in inequalities in the assessment of the performance fee where shareholders have purchased shares at different times throughout the year and the performance attributable to each share has varied.

**The foregoing list of risk factors does not purport to be complete or to fully explain the risks involved in an investment in the Company.**

6

## INVESTMENT MANAGER

Grosvenor Asset Management Limited was originally incorporated in Bermuda on June 27, 1997 with limited liability under the provisions of the Companies Act 1981 of Bermuda. On November 17, 2003 that company was continued into the British Virgin Islands and became a B.V.I. company with the new name, Grosvenor International Asset Management Limited (the "**Investment Manager**"). This new company has been registered as an investment manager pursuant to the provisions of the B.V.I. *Mutual Funds Act, 1996*. The Investment Manager's registered office is located at Kingston Chambers, P.O. Box 173, Road Town, Tortola, B.V.I.. The directors of the Investment Manager are William Dolan, Norman J. Holbrow and Daniel Voth, all of whom are also directors of the Company. Reference is made to the sections entitled "Directors" for a description of William Dolan, Norman J. Holbrow and Daniel Voth.

William Dolan is primarily responsible for discharging the duties of the Investment Manager under the Investment Management Agreement.

The Investment Manager has entered into an investment management agreement with the Company dated November 1, 2000 as amended by the First Amendment to Investment Management Agreement dated December 19, 2000 and as amended by the Amended and Restated Investment Management Agreement dated November 17, 2003 (the "**Investment Management Agreement**"), whereby the Investment Manager will provide certain management and investment advisory services to the Company.

Under the Investment Management Agreement, the Company has agreed to indemnify the Investment Manager against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever imposed on the Investment Manager other than those resulting from negligence or willful default on the part of the Investment Manager. The Investment Management Agreement continues and remains in force and effect for a period of 3 years from the date of the agreement and thereafter unless and until terminated on not less than 3 months' notice by either party to the other, provided that if one party breaches its obligations under the agreement and fails to make good the breach within 30 days of written notice of the breach, or goes into liquidation, the other party may terminate the agreement forthwith.

## DIRECTORS

The following are the directors of the Company:

**William Dolan** is President and a director of Grosvenor Investment Management Limited and Grosvenor International Asset Management Limited. Mr. Dolan was managing director of Bermuda International Securities Limited, the investment banking subsidiary of The Bank of Bermuda Limited, where he worked from 1973 to 1993 and chairman of the Bermuda Stock Exchange for two

terms between 1987 and 1993. He is also a Member of the CFA Institute and serves on the board of various Bermuda incorporated companies.

**Norman Holbrow** is Vice - Chairman of Grosvenor Trust Company Limited and has been a director of Grosvenor Trust Company Limited since 1994. Mr. Holbrow was a managing director of Bermuda Trust Company Limited and an executive director of Bermuda Trust Company Limited, Bermuda Trust (Far East) Limited and Bermuda Trust Company (Guernsey) Limited. He served on the executive of The Bank of Bermuda Limited, and was with the bank for over twenty-five years.

**Daniel Voth** is Vice President for Grosvenor Fund Administration Limited and is responsible for fund administration operations. From the period of 1990 until he joined Grosvenor Fund Administration Limited in May of 1999, Mr. Voth was employed by Hemisphere Management Limited, an international fund administration firm. From 1986 to 1990, Mr. Voth was employed by Ernst and Young in both Canada and Bermuda. Mr. Voth is a member of the Canadian Institute of Chartered Accountants, The Institute of Chartered Accountants of Manitoba and the Institute of Chartered Accountants of Bermuda.

The remuneration of the directors will be determined by the Company in general meeting. The directors may also be paid, inter alia, for travelling, hotel and other expenses properly incurred by them in attending meetings of the directors or in connection with the business of the Company. Any director who devotes special attention to the business of the Company may be paid such extra remuneration as the directors may determine. This figure is unlikely to exceed US$5,000 in any calendar year.

There is no provision in the bye-laws of the Company requiring a director to retire by reason of any age limit and no share qualification for directors.

## POTENTIAL CONFLICTS OF INTEREST

The Investment Manager and the Sub-Managers may act as managers or advisers to other mutual funds or clients. They may also invest for their own accounts. As such, they could compete for the same trades or investments as the Company may otherwise make. When such an occasion arises, the allocation of investment opportunities between the Company and other clients is based on what such persons deem to be equitable. However, in some cases these allocation procedures may adversely affect the price paid or received by the Company or the size of the position obtained or disposed of by the Company.

Directors of the Company may also be directors of the Investment Manager, or directors of companies in which the Company's assets are or may be invested. As such, the directors may have a conflict between their obligation to act in the best interests of the Company and their interest in generating revenues or other benefits for other entities with persons with which they are affiliated.

A director may hold any other office or place of profit under the Company (other than the office of auditor) in conjunction with his office of director, or may act in a professional capacity to the

8

Company on such terms as the directors may determine. No director shall be disqualified from contracting with the Company in any capacity, nor shall any such contract or arrangement entered into by the Company in which any director is in any way interested be liable to be voided, nor shall any director so contracting or being so interested be liable to account to the Company for any profit realized by any such contract or arrangement by reason of such director holding that office if he shall declare the nature of his interest.

A director, notwithstanding his interest, may be counted in the quorum present at any meeting at which he or any other director is appointed to hold any such office or place of profit under the Company or at which the terms of any such appointment are arranged, and he may vote on any such appointment or arrangement other than his own appointment or the arrangement of terms thereof.

William Dolan, Norman J. Holbrow and Daniel Voth are all directors of the Company, the Investment Manager, and Grosvenor Fund Administration Limited (the "**Administrator**"). There are no existing or proposed service contracts between any of the directors and the Company but the directors may receive remuneration as provided in the bye-laws of the Company.

In the event a conflict of interest arises, the directors will endeavor to ensure that the conflict is resolved fairly.

## <u>INDEMNITIES</u>

The bye-laws of the Company provide that no director or officer of the Company shall be liable for the acts, receipts, neglects or defaults of any other director or officer, or for joining in any receipt or other act for conformity, or for any loss or expense happening to the Company through the insufficiency or deficiency of title to any property acquired by order of the directors for or on behalf of the Company, or for the insufficiency or deficiency of any security in or upon which any of the monies of the Company shall be invested, or for any loss or damage arising from the bankruptcy, insolvency, or tortious act of any person with whom any monies, securities or effects shall be deposited, or for any loss occasioned by any error of judgment, omission, default, or oversight on his part, or for any other loss, damage, or misfortune whatever which shall happen in relation to the execution of the duties of his office or in relation thereto, unless the same shall happen through his own fraud or dishonesty.

The bye-laws of the Company further provide that each director or officer of the Company shall be indemnified by the Company against, and it shall be the duty of the directors out of the funds of the Company to pay all costs, losses, and expenses which any director or officer may incur or become liable for by reason of any contract entered into, or act or thing done by him as such director or officer, or in any way in the discharge of his duties, and the amount for which such indemnity is provided shall immediately attach as a lien on the property of the Company, and have priority as between the shareholders over all other claims except as respects any such director or officer where any such cost, loss or expense shall happen through his own fraud or dishonesty.

## OFFERING OF SHARES

In the initial offering for Shares, which closed on November 1, 2000, the Company issued Shares to investors at a price of US$100 per Share. Thereafter, Shares were issued at a price based on their Net Asset Value on their respective Valuation Days.

Shares are currently being offered for sale on the first Business Day of each month or at such other times as the directors may determine (the **"Dealing Day"**). A Business Day is any day on which banks in Bermuda are open for business. Shares are being sold at a purchase price per Share equal to the Net Asset Value per Share as at the close of business on the Business Day preceding the Dealing Day (the **"Valuation Day"**).

Application should be made by completing and signing the Company's application form and sending the same to the Administrator at the address referred to on that form. Alternatively, applications may be made by fax to the Administrator at the fax number shown on the application form providing the details requested on the application form and by promptly mailing the application form duly completed and signed by or on behalf of the applicant to the Administrator. Subscription monies should be sent by wire transfer. When applying for Shares, applicants should apply for a minimum amount of US$250,000.

A contract note will be issued, as of the Dealing Day, to accepted applicants confirming acceptance and the number of Shares allotted. Once applications have been received and accepted by the Company, they will be irrevocable. The Company reserves the right, in its entire discretion, to reject and return any application and remittances. Shares will not be allotted or issued without an accepted application and receipt of cleared subscription monies. The Company will issue fractions of Shares up to 1,000th of a Share.

Share certificates will not be issued and Shares will be held in bookstock form only.

There are certain restrictions on the eligibility of investors to subscribe for Shares. (See "Compulsory Redemption" for details.) Shares may only be issued in the names of companies, partnerships or individuals. Further, Shares purchased for those under 21 years of age must be registered in the name of the parent or legal guardian. The Administrator is responsible for maintaining the share register of the Company and records all purchases, transfers and redemptions of shares in the share register.

Applicants subscribing for Shares are advised that the Shares are issued subject to the provisions of the Company's memorandum of association and its bye-laws.

## MONEY LAUNDERING PREVENTION

As part of the Company's responsibility to prevent money laundering and terrorist financing, under Bermuda's legislation of the Proceeds of Crime Act 1997, the Anti-Terrorism (Financial and Other

Measures) Act 2004, the Proceeds of Crime (Anti-Money Laundering and Anti-Terrorist Financing) Regulations 2008 and Proceeds of Crime Regulations (Supervision and Enforcement) Act 2008, the Company, the Administrator and the Investment Manager may require a detailed verification of a prospective investor's identity, any beneficial owner underlying the account and the source of the payment of the subscription monies.

Prospective Investors should deliver to the Administrator a signed copy of the "Anti-Money Laundering Supplement to Subscription Documents" together with the required verification documents set out in the checklist contained within that Document. In addition, prospective investors should ensure that their financial institution delivers to the Administrator the account information form attached as an appendix to the Application Form For Shares at the time that the subscription monies are wired to the Company.

The Company reserves the right to request such information as is necessary to verify the identity of a prospective investor and its underlying beneficial owners. In the event of delay or failure on the part of the investor in producing any information required for verification purposes, the Company may refuse to accept the application, in which case any funds received will be returned without interest to the account from which they originated.

The Company, by written notice, may also "freeze the account" of any investor, either by prohibiting additional subscriptions from the investor, declining any redemption requests and/or segregating the assets in the account, if the Company reasonably deems it necessary to do so to comply with the anti-money laundering procedures of the Company or applicable law. The Company, the Administrator and the Investment Manager, shall each be held harmless and will be indemnified against any loss arising as a result of a failure to process a subscription or redemption application by an investor if the investor has failed to provide information which has been requested by the Company or the Administrator in order to comply with the anti-money laundering procedures of the Company.

If the Company, the Administrator or the Investment Manager has a suspicion that any transaction concerning the Company is connected with money laundering or terrorist financing the Company is required to report such a suspicion to the appropriate regulatory authorities. In reporting such a suspicion the Company will disclose to the regulatory authorities nonpublic personal information about the investor who is the subject of the suspicion and such report shall not be treated as a breach of any restriction upon the disclosure of information imposed by law or otherwise.

## REDEMPTION OF SHARES

Generally, Shares other than Designated Shares may be redeemed on the first business day of each calendar quarter or on such other days as the directors may designate (the **"Redemption Date"**) upon providing 60 days prior written notice, or such lesser notice that the directors may in their discretion allow. Shares will be redeemed at a price per Share equal to the Net Asset Value per Share as at the close of business on the preceding Valuation Day.

In the event that the aggregate redemption requests received with respect to any Redemption Date exceed 25% of the value of the net assets of the Company as of such date, the Directors may, in their

11

sole discretion, (i) satisfy all such redemption requests, or (ii) reduce all redemption requests pro rata so that only 25% (or more in the discretion of the Directors) of the value of the net assets of the Company are redeemed (the "**Redemption Gate**"). A redemption request that is not satisfied in full as of the intended Redemption Date because of the foregoing Redemption Gate will be carried forward and satisfied at the next Redemption Date but will be subject to all restrictions pertaining to redemptions generally including any Redemption Gate that may be invoked with respect to that subsequent Redemption Date. Redemption requests which are carried forward shall be satisfied in full in preference to subsequently received redemption requests. Shares not redeemed from the Company by virtue of the foregoing Redemption Gate restrictions will remain at the risk of the Company until their effective Redemption Date.

If a request for partial redemption is less than US$50,000 or would result in the shareholder holding a number of Shares having an aggregate Net Asset Value of US$250,000 or less, then the Company has the right to refuse to honour such request for partial redemption.

Shareholders should send written instructions to redeem the Shares to the Administrator. Redemption instructions not received 60 days prior to the relevant Redemption Date shall, unless the directors agree to waive such notice, be treated as a request for redemption on the next day Dealing Day. The Investment Manager may elect to purchase Shares offered for redemption at a price equal to the redemption price rather than requiring the Company to redeem them.

Redemption requests may be submitted by fax to the Administrator at (441) 292-2266 Attention: Sonya Darrell provided that:

(1) the original signed redemption request is received by the Administrator prior to the Redemption Date; and
(2) the investor receives written confirmation from the Administrator that the faxed redemption request has been received.

The Administrator will confirm in writing within 5 Business Days of receipt all faxed redemption requests which are received in good order. Investors failing to receive such written confirmation from the Administrator within 5 Business Days should contact Sonya Darrell at the Administrator at (441) 292-0022 to obtain the same.

**Failure to obtain such written confirmation will render faxed instructions void.**

The Directors may, in their discretion, waive strict compliance with any of the foregoing redemption requirements in any particular case where they consider it appropriate to do so.

Designated Shares shall not, unless the Directors otherwise determine, be redeemable at the option of the shareholders holding such Designated Shares.

## PAYMENT OF REDEMPTION PROCEEDS

The Company will pay 100% of the redemption proceeds due to the redeeming shareholder as soon as is reasonably practicable following the calculation of the Net Asset Value per Share (other than for Designated Shares). However in cases where the Company is unable to liquidate its holdings in one or more Sub-Managers, or one or more Sub-Managers withholds a portion of the redemption proceeds due to the Company, or in such other circumstances as the Administrator, after consulting with the Investment Manager, deems appropriate, the Company may withhold a portion of the redemption proceeds due to a shareholder. The Company will endeavour to pay the withheld amount as soon as reasonably practicable which may not be until after the completion of the audited financial statements of the Company for the fiscal year during which the redemption occurred.

In cases where the Company is unable to liquidate its holdings in one or more Sub-Managers the Company may satisfy a redemption request partly in cash and partly in kind. In kind payments will generally be equal to a shareholder's pro rata share of the assets being distributed in kind.

## TRANSFER OF SHARES

Shareholders are entitled to transfer their Shares by an instrument in writing in the usual and common form. Unless the Company otherwise determines, a shareholder is not entitled to transfer Shares if as a result of such transfer either he or the person to whom the Shares are to be transferred will hold Shares having a Net Asset Value of less than US$250,000. Shareholders are not authorized to transfer Shares to any person who would not be entitled to subscribe for Shares (see "Offering of Shares" and "Compulsory Redemption"). All Share transfers are restricted and require the prior approval of the Company which may be refused at the discretion of the Board of Directors of the Company.

## DETERMINATION OF NET ASSET VALUE

The bye-laws provide that the subscription price and redemption price of each Share will be determined by reference to the Net Asset Value per Share. The bye-laws of the Company provide that the Net Asset Value per Share of the Company will be determined as at the close of business in Bermuda on the last Business Day of each month and will be calculated by reference to the value of the net assets of the Company divided by the number of Shares then outstanding.

The Net Asset Value of the Company will be determined in accordance with, inter alia, the following provisions:-

(a) all investments with Sub-Managers shall be valued by reference to the net asset value of those investments as provided by the Sub-Managers provided always that the directors may, at their absolute discretion, permit some other method of valuation to be used if they consider that such valuation better reflects the true value;

(b) securities which are traded or quoted on a recognized exchange or quotation system, shall be valued at the last obtainable reported sale price on the valuation day on the principal market for those securities;

(c) if no prices of investments are available from the Sub-Managers, or if no price quotations are available as above provided, the value of an investment shall be determined from time to time in such manner as the directors shall determine as reflects the fair value; and

(d) any value (whether of a security or cash) otherwise than in US dollars shall be converted into US dollars at the rate (whether official or otherwise) which the directors shall in their absolute discretion deem appropriate to the circumstances having regard, inter alia, to any premium or discount which they consider may be relevant and to costs of exchange.

The bye-laws of the Company provide that any certificate as to the Net Asset Value per Share and/or the subscription price and/or redemption price per Share given in good faith by or on behalf of the directors is binding on all parties.

To the extent that the Administrator relies on information supplied by the Sub-Managers or any brokers, third party pricing services or other financial intermediaries utilized by the Company in connection with making any of the aforementioned calculations, the Administrator's liability for the accuracy of such calculations is limited to the accuracy of its own computations. The Administrator is not liable for the accuracy of the underlying data provided to it.

The Net Asset Value of the Company will be determined in accordance with generally accepted accounting principles in Bermuda and Canada.

## COMPULSORY REDEMPTIONS

The directors of the Company, at their sole discretion, have the power to redeem some or all of the Shares of any shareholder. The Board may, at its discretion, redeem either wholly or partially, by way of cash or by way of in kind distributions from the Company's assets at their then market or fair value. Such assets so distributed may not be readily marketable or saleable and may have to be held by shareholders for an indefinite period of time. At the Board's discretion, shareholders may be given the option to have Shares redeemed in cash or by way of an in kind distribution. Notwithstanding the exercise of the foregoing option, the Board retains the ultimate decision to redeem wholly or partially by way of an in kind distribution or cash.

In addition to the foregoing, the directors of the Company have the power to impose such restrictions on the issue of Shares as they may think necessary for the purpose of ensuring that no Shares are acquired or held by any person in breach of the law or requirements of any country or governmental authority, or any person or persons in circumstances (whether directly or indirectly affecting such person or persons and whether taken alone or in conjunction with any other persons, connected or not, or any other circumstances appearing to the directors to be relevant) which in the opinion of the

14

directors might result in the Company incurring any liability to taxation or suffering any other pecuniary disadvantage which the Company might not otherwise have incurred or suffered.

If it comes to the notice of the directors that any Shares are held by any such non-qualified person, the directors may give notice to such person requiring the redemption or transfer of such Shares in accordance with the provisions of the bye-laws of the Company. If a person becomes aware that he is holding or owning Shares in breach of any such restriction he is required either to deliver to the Company a written request for redemption of the Shares or to transfer the same to a person who is not such a non-qualified person.

The power to compulsory redeem Designated Shares of one Class and/or Series may be effected by the Directors in any manner permitted by the Companies Act 1981 of Bermuda, as amended, and the Bye-laws, and the application of the proceeds of redemption in subscribing for Shares of the other Class and/or Series or by re-designating a portion of the Shares of any existing Class and/or Series as thereafter belonging to a new Class and/or Series or providing a payment in cash to the relevant Shareholders of the proceeds of redemption.

## INVESTMENT RESTRICTIONS

The directors may exercise the Company's powers to borrow and to charge its assets.

The following restrictions on investments are included in the bye-laws of the Company:-

    (a)    the Company shall not invest in a security of any class in any company or body if directors and officers of the Company and the Investment Manager collectively own more than 5 per cent of those securities;

    (b)    the Company shall not invest directly in land or buildings (or any options, rights or interests in respect thereof);

    (c)    the Company shall not make a loan (except to the extent that an investment might constitute a loan) except with the consent of the custodian, should the Company choose to utilize the services of a custodian; and,

    (d)    the Company shall not directly invest in securities of a company for the purpose of the Company exercising legal or management control thereof.

## THE SHARES

**Shares:**

The capital of the Company is divided into 1,200,000 Organisational Shares, 10,693,719.7187 Shares and 106,280.2813 Designated Shares of a par value of US$0.01 each.  The holders of Shares are:

(a)     entitled to one vote per Share;

(b)     entitled to such dividends as the directors may from time to time declare;

(c)     in the event of a winding up or dissolution of the Company, whether voluntary or involuntary or for the reorganization or otherwise or upon distribution of capital, be entitled to share in the surplus assets of the Company.

The holders of Shares have the right to vote their Shares on all matters required to be approved by the Company in general meeting, including the election of directors, the appointment of auditors and the approving of audited financial statements.

**Organisational Shares:**

The holder of the Organisational Shares shall not be entitled to:

(a)     vote at General Meetings of the Company except where no other Shares are in issue;

(b)     to receive any dividend declared or paid by the Directors; or

(c)     to redeem its Organisational Shares.

**Designated Shares:**

The holders of Designated Shares are not entitled to vote but are:

(a)     entitled to such dividends as the directors may from time to time declare;

(b)     in the event of a winding up or dissolution of the Company, whether voluntary or involuntary or for the reorganization or otherwise or upon distribution of capital, be entitled to share in the surplus assets of the Company.

16

**Variation of Class Rights:**

Any rights attached to a class of shares of the Company may be varied (unless otherwise provided by the terms of issue of the shares of that class) by the Directors, if the Directors determine that such change is not materially adverse to the interests of the holders of such shares, and otherwise with the sanction of a resolution passed by a majority of three-fourths of the holders of such shares at a separate general meeting. The rights attached to any class of shares (unless otherwise expressly provided by the conditions of issue of such shares) are deemed not to be varied by the creation, allotment or issue of shares ranking pari passu therewith.

**Voting Rights:**

At any general meeting, every holder of Shares who is present in person or by proxy shall have one vote on a show of hands. On a poll, every such holder of Shares present in person or by proxy shall have one vote for every Share held. Shareholders' resolutions of the Company require a simple majority of the votes cast by the shareholders voting at the meeting at which the resolution is proposed in order to be passed, except that a majority of not less than 75% of the shareholders present in person or by proxy and voting is required in order to rescind, alter or amend the bye-laws of the Company. Further, the bye-laws may not be rescinded, altered or amended unless the same shall have been approved at a meeting of the directors.

The holder of the Organisational Shares shall not be entitled to vote at any general meeting of the Company except where no Shares are in issue.

## SUSPENSION OF DEALINGS

The directors may suspend the determination of the Net Asset Value per Share for the whole or any part of a period:

(a)     during which the calculation of net asset value of any significant portion of the investments of the Company has been suspended;

(b)     when circumstances exist as a result of which in the opinion of the directors it is not reasonably practicable for the Company to dispose of investments comprised in the Company or as a result of which any such disposal would be materially prejudicial to shareholders;

(c)     when a breakdown occurs in any of the means normally employed in ascertaining the value of investments or when for any other reason the value of any of the investments or other assets of the Company cannot reasonably or fairly be ascertained; or

17

(d)        during which the Company is unable to repatriate funds required for the purpose of making payments due on redemption of the Shares or during which any transfer of funds involved in the realization or acquisition of investments or payments due on redemptions of the Shares cannot in the opinion of the directors be effected at normal rates of exchange.

When the determination of the Net Asset Value of the Shares has been suspended, Shares may not be issued or redeemed.

## CUSTODIAN

It is expected that substantially all of the assets of the Company will consist of shares or other ownership interests of the various Sub-Managers and cash. The Company intends to hold the shares of the Sub-Managers directly as opposed to holding the shares via an omnibus account maintained by a third party custodian. Accordingly, the Company will be reflected as the registered holder of the shares on the respective share registers maintained by each of the Sub-Managers. The Company is of the view that this direct ownership of the shares of the Sub-Managers provides satisfactory protection to the Company in lieu of utilizing the services of a third party custodian. The Company has been granted an exemption from the BMA from the requirement to utilize a custodian on the basis that appropriate alternative arrangements are in place to safeguard the assets of the Company.

## ADMINISTRATOR

Grosvenor Fund Administration Limited (the **"Administrator"**), located in Hamilton, Bermuda, has been appointed as administrator of the Company pursuant to the terms of an administration agreement dated April 1, 2004 (the **"Administration Agreement"**). The Administrator provides administration, management and accounting services to an international portfolio of individual and institutional clients. The Administrator will calculate the net asset value of the Company, maintain the books of account for the Company at the registered office of the Company and act as registrar and transfer agent.

The Company has agreed to hold harmless and indemnify the Administrator and its directors, officers, employees, agents and representatives from any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever other than those resulting from willful negligence, willful default, fraud or dishonesty on the part of the Administrator or its directors, officers, employees, agents or representatives. The Administrator has agreed to indemnify and hold harmless the Company from and against certain losses of the Company resulting from any act of willful negligence, willful default, fraud or dishonesty on the part of the Administrator or its directors, officers, employees, agents, or representatives. The Administration Agreement is terminable by either party on three months' notice. Notwithstanding the foregoing, the Administration Agreement is terminable forthwith by either party in the event of the receivership or liquidation of the other party or a material breach of the agreement by the other party which the other party has failed to make good on 15 days' written

18

notice in the case of a payment obligation or on 30 days' written notice in the case of other obligations.

## EXPENSES

**Management Fee:**

The Company will pay the Investment Manager a management fee payable in arrear on the last Business Day of each month equal to 0.167% (2.0% on an annualised basis) on the Net Asset Value of the Company on the last Business Day of such month.

**Sub-Managers Fee:**

The Company will be responsible to pay fees indirectly to any Sub-Managers which will not exceed the fees stated within the Sub-Managers' fund prospectuses where applicable. The directors anticipate that most management fees paid to Sub-Managers by the Company will be between 1% and 2%, plus any applicable performance fee.

**Other Fees and Expenses:**

The Company will pay the Administrator an annual fee equal to the greater of U.S. $40,000 or an asset based fee ranging from 5 basis points at the lowest tier to 4 basis points at the highest tier depending upon the net assets of the Company. The Administration Fee is payable monthly in arrear subject to review and adjustment on the agreement of the Company and the Administrator. In addition, the Administrator is entitled to receive reasonable out of pocket expenses.

The Company pays the Corporate Secretary an annual fee of U.S. $4,500 for serving as company secretary and providing corporate secretarial services to the Company.

The Company pays the Administrator an annual fee ranging from U.S. $10,000 to U.S. $25,000 depending upon the number of shareholders in the Company for providing an anti-money laundering compliance officer for the Company and for providing compliance and anti-money laundering services under Bermuda's Proceeds of Crime Act 1997, Anti-Terrorism (Financial and Other Measures) Act 2004, Proceeds of Crime (Anti Money Laundering, Anti-Terrorist Financing) Regulations 2008 and Proceeds of Crime Regulations (Supervision and Enforcement) Act 2008 and PATRIOT Act compliance services, to the Company.

The Company bears the cost of all brokerage commissions on trading transactions, interest on borrowing and fees in respect thereof, the Bermuda annual company registration fee, the fees and expenses of the auditors of and legal advisers to the Company, the cost of printing and distributing the periodic and annual reports and statements and other operating expenses.

## TAX

The following comments which are of a general nature are based on advice received by the directors regarding current law and practice in Bermuda. Investors should appreciate that the taxation consequences for investors may be otherwise than as stated below. Investors should consult their professional advisers on the possible tax consequences of their subscribing for, purchasing, holding, selling or redeeming Shares under the laws of their countries of citizenship, residence, ordinary residence or domicile.

**Bermuda:**

At the date of this Prospectus, there is no Bermuda income, corporation, or profits tax, withholding tax, capital gains tax, capital transfer tax, estate duty or inheritance tax payable by the Company or its shareholders, other than shareholders ordinarily resident in Bermuda. The Company is not subject to stamp duty on the issue, transfer or redemption of its Shares.

The Company has received from the Minister of Finance of Bermuda under the Exempted Undertakings Tax Protection Act 1966 an assurance that, in the event of there being enacted in Bermuda any legislation imposing tax computed on profits or income, or computed on any capital assets, gain or appreciation or any tax in the nature of estate duty or inheritance tax, such tax shall not until March 28, 2016 be applicable to the Company or to any of its operations, or to the Shares, debentures or other obligations of the Company except in so far as such tax applies to persons ordinarily resident in Bermuda and holding such Shares, debentures or other obligations of the Company or any land leased or let to the Company.

As an exempted company, the Company is liable to pay in Bermuda an annual registration fee based upon its authorized share capital, which is currently $4,070.

## MATERIAL CONTRACTS

The following contracts (not being contracts in the ordinary course of business) have been entered into by the Company and are, or may be, material:

(a)     the Investment Management Agreement between the Company and the Investment Manager dated as of November 1, 2000 as amended by the First Amendment to Investment Management Agreement dated as of December 19, 2000 and as amended by the Amended and Restated Investment Management Agreement dated as of November 17, 2003, pursuant to which the Investment Manager has been appointed manager of the Company;

(b)     the Administration Agreement between the Company and the Administrator dated April 1, 2004 pursuant to which the Administrator has been appointed administrator (including secretarial and registrar services) of the Company;

(c)     the AML Services Agreement dated March 1, 2004 (as extended by the AML Services Agreement dated March 1, 2007) between the Company and the Administrator pursuant to which the Administrator supplies an anti-money laundering compliance officer for the Company and provides provides compliance and anti-money laundering services under Bermuda's Proceeds of Crime Act 1997, Anti-Terrorism (Financial and Other Measures) Act 2004, Proceeds of Crime (Anti Money Laundering, Anti-Terrorist Financing) Regulations 2008and Proceeds of Crime Regulations (Supervision and Enforcement) Act 2008 and includes PATRIOT Act compliance services, to the Company; and

(d)     the Corporate Services Agreement dated January 15, 2008 between the Administrator and the Company pursuant to which the Administrator serves as secretary to the Company and provides corporate secretarial services to the Company.

## MISCELLANEOUS

**Distributions:**

The Company has no current intention to declare regular dividends or to make regular distributions of profits. The directors of the Company however reserve the right from time to time to make distributions of net income by way of dividends or distributions, in cash or in kind.

**Bermuda Disclosure:**

The Company has been classified as non-resident for Bermuda Exchange Control purposes by the Bermuda Monetary Authority whose permission for the issue of Shares has been obtained. The issue, redemption and transfer of Shares to, by and between persons regarded as non-resident in Bermuda for exchange control purposes may be effected without specific consent under the Exchange Control Act 1972 of Bermuda and regulations made thereunder.  The Company, by virtue of being non-resident of Bermuda for exchange control purposes, is free to acquire, hold and sell any foreign currency and securities without restriction.

**Commissions:**

Save as disclosed in this prospectus, no commissions, discounts, brokerages or other special terms have been granted by the Company in connection with the issue or sale of any Shares.  No person has, or is entitled to be given, an option to subscribe for any Shares or loan capital of the Company.

**Auditors:**

The Auditors have confirmed their acceptance of the appointment as auditor of the Company and have given and have not withdrawn their written consent to the issue of this prospectus with the references to them in the form and context in which they are included.

21

**Financial Year End:**

The financial year end of the Company is October 31 in each year.

**Financial Information:**

Audited financial statements and any other financial information will be sent to shareholders as soon as reasonably practicable following the year-end. Audited financial statements will be prepared in accordance with generally accepted accounting principles in Bermuda and Canada.

**Officer Shareholdings:**

As at December 31, 2009 Norman Holbrow was a joint beneficiary under a trust which holds 2,764.9891 Shares and 551.0769 Designated Shares in the Company. No other officer has any shareholding in the Company.

**Annual General Meetings:**

Annual general meetings will usually be held in Bermuda. Notices convening each annual general meeting will be sent to shareholders together with the annual accounts and reports not later than twenty-one days before the date fixed for the meeting.

**Litigation:**

The Company is not engaged in any litigation or arbitration proceedings and is not aware of any litigation or claim pending against it.

**Borrowings:**

As of the date hereof, the Company has no loan capital (including term loans).

**Availability of Documents:**

Copies of the following documents may be inspected and obtained by appointment at the office of the Administrator:

        (a)       the Companies Act 1981 (as amended) of Bermuda;

        (b)       the memorandum of association and bye-laws of the Company;

        (c)       the material contracts referred to above;

        (d)       the report of audited accounts prepared by the auditors;

22

(e)        the written consent of the auditors referred to above; and

(f)        any other annual or periodic reports issued by the Company.

Notwithstanding section 24 of the Investment Funds Act 2006, the entire share register of the Company shall not be available at any time for inspection by shareholders; however each shareholder shall be entitled to inspect the entries on the share register pertaining to their investment in the Company at all times during ordinary office hours of the Administrator.

_____

Signed by William Dolan, Director
on behalf of all of the Directors of the Company

23