**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 12-01207 (CGM) |
| Plaintiff, | |
| v. | |
| LLOYDS TSB BANK PLC, | |
| Defendant. | |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS THE COMPLAINT**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ........................................................................................3

I.     THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS..............................................3

II.    LLOYDS AND ITS INVESTMENTS IN THE FAIRFIELD FUNDS............................4

ARGUMENT ........................................................................................................5

I.     LEGAL STANDARD.......................................................................................5

II.    THE COMPLAINT SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE
     FAIRFIELD FUND INITIAL TRANSFERS .......................................................6

     A.    The Incorporated Material Complies With Rules 8 and 10 .....................................6

          1.    All Adversary Proceedings Are Part of the Main Case for Purposes
               of Rule 10(c) .....................................................................................6

          2.    Incorporation is Permitted Under Rule 10(c)...............................................8

          3.    The Trustee's Allegations Are Sufficient under Rule 8............................10

     B.    The Court Can Take Judicial Notice of the Fairfield Decision ............................11

     C.    At a Minimum, the Trustee Should Be Afforded the Opportunity to Replead
         ....................................................................................................11

III.   SECTION 546(E) DOES NOT BAR RECOVERY FROM LLOYDS ............................12

     A.    The Fairfield Funds' Actual Knowledge of Madoff's Fraud Bars
         Application of Section 546(e)................................................................12

     B.    Lloyds Is Precluded From Relitigating the Actual Knowledge Exception
         Established in *Cohmad* .......................................................................13

     C.    Lloyds Is Precluded From Arguing That Section 546(e) Applies
         Independently to Recovery Actions.........................................................14

     D.    The Trustee is Not Bound by the Court's Holding in *Fairfield III*......................18

IV.   THE COMPLAINT ADEQUATELY ALLEGES THAT LLOYDS RECEIVED
     BLMIS CUSTOMER PROPERTY UNDER SECTION 550(A)...................................19

A.      Lloyds Misstates the Trustee's Pleading Burden...................................................21

B.      Lloyds' Tracing Arguments Fail at the Pleading Stage.........................................23

C.      Lloyds' Claims of Double Recovery Are Premature.............................................28

CONCLUSION.........................................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
   599 B.R. 730 (Bankr. S.D.N.Y. 2019) ........................................................................ 20, 21, 27

*Am. Casein Co. v. Geiger* (*In re Geiger*),
   446 B.R. 670 (Bankr. E.D. Pa. 2010) ................................................................................ 7, 11

*Angell v. Ber Care, Inc. (In re Caremerica, Inc.)*,
   409 B.R. 737 (Bankr. E.D.N.C. 2009) .................................................................................... 23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................................. 5

*Ball v. A.O. Smith Corp.*,
   451 F.3d 66 (2d Cir. 2006) ...................................................................................................... 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................................. 5

*Bermudez v. City of New York*,
   783 F. Supp. 2d 560 (S.D.N.Y. 2011) .................................................................................... 21

*In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Recoverable Trust)*,
   773 F.3d 411 (2d Cir. 2014) ............................................................................................... 14, 16

*Cargo Partner AG v Albatrons, Inc.*,
   352 F.3d 41 (2d Cir. 2003) ........................................................................................................ 5

*CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*,
   393 B.R. 306 (Bankr. W.D.N.Y. 2008) .................................................................................. 29

*Dahar v. Jackson (In re Jackson)*,
   318 B.R. 5 (Bankr. D.N.H. 2004) ........................................................................................... 25

*Davis v. Bifani*,
   2007 WL 1216518 (D. Colo. Apr. 24, 2007) ............................................................................ 7

*DeMasi v. Benefico*,
   567 F. Supp. 2d 449 (S.D.N.Y. 2008) .................................................................................... 11

*Dery v. United States (In re Bridge)*,
   90 B.R. 839 (E.D. Mich. 1988) ............................................................................................... 28

*Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.)*,
    343 B.R. 75 (Bankr. S.D.N.Y. 2006), *rev'd on other grounds*, 388 B.R. 489
    (S.D.N.Y. 2008) ................................................................................................................17

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
    651 F.3d 329 (2d Cir. 2011) ...........................................................................................16

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
    Adv. Pro. No. 10-03496 (SMB), 2020 WL 7345988 (Bankr. S.D.N.Y. Dec.
    14, 2020) ....................................................................................................................18, 19

*Ferrari v. Cnty of Suffolk*,
    790 F. Supp. 2d 34 (E.D.N.Y. 2011) ...............................................................................11

*Foman v. Davis*,
    371 U.S. 178 (1962) .........................................................................................................12

*Fowler v. Caliber Home Loans, Inc.*,
    277 F. Supp. 3d 1324 (S.D. Fla. 2016) ............................................................................26

*Garfinkle v. Conference on Jewish Material Claims Against Germany, Inc.*,
    2020 WL 6323462 (S.D.N.Y. Oct. 28, 2020) ..................................................................24

*Ghazzaoui v. Anne Arundel Cnty.*,
    2014 WL 3973037 (D. Md. Aug. 11, 2014) ...................................................................7, 9

*Gowan v. Amaranth Advisors, LLC (In re Dreier LLP)*,
    Adv. Pro. Nos. 10-03493 & 10-05447 (SMB), 2014 WL 47774 (Bankr.
    S.D.N.Y. Jan. 3, 2014) .....................................................................................................27

*Helms v. Metropolitan Life Ins. Co. (In re O'Malley)*,
    601 B.R. 629 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021) ..................29

*Henry v. Rizzolo*,
    No. 08-cv-00635, 2012 WL 4092604 (D. Nev. Sept. 17, 2012), *order
    clarified*, 2012 WL 4867725 (D. Nev. Oct. 12, 2012) .....................................................24

*Hinton v. Trans Union, LLC*,
    654 F. Supp. 2d 440 (E.D. Va. 2009), *aff'd*, 382 F. App'x 256 (4th Cir. 2010) ...............9

*IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*,
    408 F.3d 689 (11th Cir. 2005) .........................................................................................28

*In re J.P. Jeanneret Assoc., Inc.*,
    2011 WL 335594 (S.D.N.Y. Jan. 31, 2011) ......................................................................5

iv

*Kelley v. Westford Special Situations Master Fund, L.P.*,
   No. 19-cv-1073 (ECT) (KMM), 2020 WL 3077151 (D. Minn. June 10,
   2020) ................................................................................................................24, 25, 27, 28

*Kulak v. City of New York*,
   88 F.3d 63 (2d Cir. 1996)..................................................................................................18

*Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC*,
   843 F. Supp. 2d 191. (D. Mass. 2012) ................................................................................8

*Morrison v. Office of the U.S. Tr. (In re Morrison)*,
   375 B.R. 179 (Bankr. W.D. Pa. 2007) ................................................................................6

*In re Motors Liquidation Co.*,
   590 B.R. 39 (S.D.N.Y. 2018)..............................................................................................8

*Muhammad v. Bethel-Muhammad*,
   2012 WL 1854676 (S.D. Ala. May 21, 2012) ..................................................................7, 9

*Muth v. Dechert, Price & Rhoads*,
   391 F. Supp. 935 (E.D. Pa. 1975) ....................................................................................7, 9

*NCUA Bd. v. Morgan Stanley & Co.*,
   2014 WL 1673351 (S.D.N.Y. Apr. 28, 2014)......................................................................7

*Nycomed US, Inc. v. Glenmark Generics, Ltd.*,
   2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010)......................................................................9

*Picard v. Avellino (In re Bernard L. Madoff Inv. Sec. LLC)*,
   557 B.R. 89 (Bankr. S.D.N.Y. 2016) ................................................................................13

*Picard v. BNP Paribas S.A. (In re Bernard L. Madoff)*,
   594 B.R. 167 (Bankr. S.D.N.Y. 2018)..................................................................15, 16, 17

*Picard v. Ceretti, et al. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   No. 09-01161 (SMB), 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015).........................13

*Picard v. Charles Ellerin Revocable Trust (In re Bernard L. Madoff Inv. Sec.
   LLC)*,
   Adv. Pro. Nos. 10-04398 (BRL), 10-05219 (BRL), 2012 WL 892514 (Bankr.
   S.D.N.Y. Mar. 14, 2012)................................................................................. *passim*

*Picard. v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   12 F.4th 171 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*,
   142 S. Ct. 1209 (2022)....................................................................................................4, 9

*Picard v. Cohen*,
   Adv. Pro. No. 10-04311, 2016 WL 1695296 (Bankr. S.D.N.Y. Apr. 25, 2016)...................14

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    454 B.R. 317 (Bankr. S.D.N.Y. 2011) ...................................................................28

*Picard v. Est. of Stanley Chais (In re Bernard L. Madoff Inv. Sec. LLC)*,
    445 B.R. 206 (Bankr. S.D.N.Y. 2014) ...................................................................20

*Picard v. Fairfield Inv. Fund Ltd (In re Bernard L. Madoff)*,
    Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6,
    2021) ......................................................................................................... *passim*

*Picard v. Lowrey (In re Bernard L. Madoff)*,
    596 B.R. 451 (S.D.N.Y. 2019), *aff'd sub nom. Picard v. Gettinger*, 976 F.3d
    184 (2d Cir. 2020) ...............................................................................................8, 14

*Picard v. Magnify, Inc. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    583 B.R. 829 (Bankr. S.D.N.Y. 2018) ...................................................................13

*Picard v. Mayer*,
    No. 20-01316 (CGM), 2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021) ........21

*Picard v. Mendelow et al. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    560 B.R. 208 (Bankr. S.D.N.Y. 2016) ...................................................................13

*Picard v. Merkin (In re: Bernard L. Madoff)*,
    581 B.R. 370 (Bankr. S.D.N.Y. 2017) ...................................................................25

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
    515 B.R. 117 (Bankr. S.D.N.Y. 2014) .......................................................... *passim*

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
    440 B.R. 243 (Bankr. S.D.N.Y. 2010) .....................................................................5

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*,
    542 B.R. 100 (Bankr. S.D.N.Y. 2015) ..............................................................13, 22

*In re Picard, Trustee for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
    917 F.3d 85 (2d Cir. 2019) ....................................................................................15

*Porat v. Lincoln Towers Cmty. Ass'n*,
    464 F.3d 274 (2d Cir. 2006) ..................................................................................11

*Prestige Pet Prod., Inc. v. Pingyang Huaxing Leather & Plastic Co.*,
    767 F. Supp. 2d 806 (E.D. Mich. 2011) ................................................................24

*In re Refco Inc. Sec. Litig.*,
    No. 07-MD-1902 (JSR), 2013 WL 12191844 (S.D.N.Y. Mar. 25, 2013) ..............19

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir. 2007)..................................................................................5

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000)...................................................................................2

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    531 B.R. 439 (Bankr. S.D.N.Y. 2015)................................................................13

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
    501 B.R. 26 (S.D.N.Y. 2013)..............................................................7, 8, 11, 15

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff
    Securities)*,
    No. 12-MC-115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) (Rakoff, J.) .................. *passim*

*Sherman v. A.J. Pegno Constr. Corp.*,
    528 F. Supp. 2d 320 (S.D.N.Y. 2007)...............................................................8, 9

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
    379 B.R. 5 (Bankr. E.D.N.Y. 2007)................................................................20, 22

*Solution Tr. v. 2100 Grand LLC (In re AWTR Liquidation Inc.)*,
    548 B.R. 300 (Bankr. C.D. Cal. 2016)...............................................................26

*Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*,
    239 F.3d 365, 2000 WL 1741550 (5th Cir. Dec. 11, 2000)................................28

*In re SunEdison, Inc.*,
    620 B.R. 505 (Bankr. S.D.N.Y. 2020) ..............................................................16

*Taylor v. Sturgell*,
    553 U.S. 880 (2008)......................................................................................18, 19

*Texas Water Supply Corp. v. R. F. C.*,
    204 F.2d 190 (5th Cir. 1953) ..............................................................................7

*Toberman v. Copas*,
    800 F. Supp. 1239 (M.D. Pa 1992) .....................................................................9

*Tousa Homes, Inc. v. Palm Beach Newspapers, Inc. (In re TOUSA, Inc., et al.)*,
    442 B.R. 852 (Bankr. S.D. Fla. 2010)................................................................23

*United States v. Henshaw*,
    388 F.3d 738 (10th Cir. 2004) .....................................................................26, 28

*United States v. Int'l Longshore Fisherman Ass'n*,
    518 F. Supp. 2d 422 (E.D.N.Y. 2007) .............................................................9, 11

*Universitas Educ., LLC v. Nova Grp., Inc.*,
  Nos. 11-1590 (LTS) (HBP) & 11-8726 (LTS) (HBP), 2013 WL 6123104
  (S.D.N.Y. Nov. 20, 2013) ...................................................................................................24

*In re Viropharma, Inc.*,
  No. CIV.A. 02-1627, 2003 WL 1824914 (E.D. Pa. Apr. 7, 2003) ........................................26

*Whitaker Sec., LLC v. Rosenfeld (In re Rosenfeld)*,
  543 B.R. 60 (Bankr. S.D.N.Y. 2015) .....................................................................................9

*Wolfe v. Charter Forest Behavioral Health Sys., Inc.*,
  185 F.R.D. 225 (W.D. La. 1999) ............................................................................................7

*Zucker v. Oconee Reg'l Healthcare Found., Inc. (In re Oconee Reg'l Health Sys.,
  Inc.)*,
  621 B.R. 64 (Bankr. M.D. Ga. 2020) .....................................................................................23

**Statutes**

11 U.S.C. § 546(e) ......................................................................................... *passim*

11 U.S.C. § 548(a) ................................................................................................9

11 U.S.C. § 548(a)(1) ...........................................................................................7

11 U.S.C.§ 548(a)(1)(A) ................................................................................12, 15

11 U.S.C. § 550 ........................................................................................6, 11, 14, 15

11 U.S.C. § 550(a) ......................................................................................... *passim*

11 U.S.C. § 550(a)(2) ......................................................................................19, 20

11 U.S.C. § 550(d) ........................................................................................28, 29

**Rules**

Fed. R. Bankr. P. 7008(a)(2) ...............................................................................23

Fed. R. Bankr. P. 7010 .........................................................................................6

Fed. R. Bankr. P. 7012 .........................................................................................5

Fed. R. Bankr. P. 7015 ........................................................................................11

Fed. R. Civ. P. 8 ..........................................................................................1, 2, 11

Fed. R. Civ. P. 8(a) .............................................................................................10

Fed. R. Civ. P. 8(a)(2) ................................................................................................5

Fed. R. Civ. P. 8(d)(1) ..............................................................................................10

Fed. R. Civ. P. 10(c) ........................................................................................2, 6, 7, 8

Fed. R. Civ. P. 12(b)(6) ...........................................................................5, 11, 23, 26

Fed. R. Civ. P. 15(a) ..................................................................................................11

**Other Authorities**

5A Alan Wright & Arthur R. Miller, Federal Practice & Procedure 3d (3d ed.
2007) ........................................................................................................6, 9, 10

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection

Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff, respectfully

submits this memorandum of law in opposition to Defendant Lloyds TSB Bank PLC's ("Lloyds")

Motion to Dismiss the Complaint ("Motion").[1]

## PRELIMINARY STATEMENT

As part of the Trustee's continuing efforts to recover stolen BLMIS customer property on

behalf of victims of Madoff's Ponzi scheme, this action seeks to recover over $11 million in

subsequent transfers of stolen BLMIS customer property that Lloyds received from Fairfield

Sentry Limited ("Sentry") and Fairfield Sigma Limited ("Sigma," and together with Sentry, the

"Fairfield Funds").  Lloyds invested in BLMIS through the Fairfield Funds, BLMIS feeder funds

created for the express purpose of funneling their investors' money to BLMIS in New York.

Lloyds moves to dismiss the Trustee's Complaint ("Complaint") arguing that (i) the Trustee does

not plead an avoidable transfer from BLMIS to Sentry, (ii) the safe harbor under Section 546(e)

bars recovery, and (iii) the Trustee does not plead that Lloyds received transfers of customer

property.  Lloyds' arguments conflict with prior rulings in this SIPA liquidation proceeding, lack

support from applicable precedent, and otherwise lack merit.

The Trustee's Complaint provides a "short and plain statement" showing that the Trustee

is entitled to relief.  Lloyds objects that the Trustee has violated Federal Rule of Civil Procedure

("Rule") 8 by incorporating by reference his Amended Complaint against the Fairfield Funds.

Amended Complaint, *Picard v. Fairfield Sentry Ltd., et al.*, Adv. Pro. No. 09-01239 (BRL), ECF

---

[1] Counsel for Lloyds filed a Notice of Hearing on its Motion for May 18, two days after the due date for Lloyds' Reply, without consulting the Trustee.  The Trustee submits that this proposed date does not provide the Court sufficient time and instead proposes the Motion be scheduled to be heard at the Court's omnibus hearing date of June 15, 2022.

No. 23 (July 20, 2010) ("Fairfield Amended Complaint"). Mot. at 4-10. This argument conflicts

with precedent from the District Court, which already has permitted incorporation by reference of

a complaint in this SIPA liquidation proceeding to establish the avoidability of the initial transfers

from BLMIS to Sentry. The Trustee's incorporation is straightforward, clear, and complies with

Rule 8 and Rule 10(c). Lloyds can respond to the incorporation by reference paragraph just as it

would any other paragraph in the Complaint. Regardless, this Court may take judicial notice of

the Second Amended Complaint[2] and this Court's ruling on it in *Picard v. Fairfield Inv. Fund Ltd*

*(In re Bernard L. Madoff)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y.

Aug. 6, 2021) (holding that Trustee plausibly alleged the Fairfield Funds' actual knowledge of

fraud) ("*Fairfield Inv. Fund*").

      The Trustee has also plausibly alleged the avoidability of the initial transfers based on the

Fairfield Funds' actual knowledge of fraud, and therefore the safe harbor for asserted settlement

payments pursuant to securities contracts under Section 546(e) is inapplicable and does not bar

recovery from Lloyds. Lloyds now seeks to relitigate the holding that the transferee's knowledge

defeats the safe harbor for a transferor. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec.*

*LLC (In re Madoff Securities)*, No. 12-MC-115, 2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15,

2013) (Rakoff, J.) ("*Cohmad*"). Lloyds argues that its knowledge as a subsequent transferee (and

not the Fairfield Funds' knowledge as initial transferees) should determine the avoidability of the

initial transfers from BLMIS. This argument conflicts with the plain language of the statute and

precedent in this SIPA liquidation proceeding establishing that Section 546(e) does not

---

[2] After the Trustee filed his Complaint against Lloyds, the Trustee filed a Second Amended Complaint against the Fairfield Greenwich Group ("FGG" or "Fairfield") defendants superseding the Fairfield Amended Complaint as the operative complaint in that proceeding. *See* Second Am. Comp., *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239, ECF No. 286 (Bankr. S.D.N.Y. Aug. 28, 2020) ("Fairfield Second Amended Complaint"). The Court may take judicial notice of the Fairfield Second Amended Complaint. *See Rothman v. Gregor*, 220 F.3d 81, 91-92 (2d Cir. 2000) (taking judicial notice of a later filed complaint in a related proceeding).

independently safe harbor the recovery of avoidable fraudulent transfers from a subsequent transferee.

Lastly, the Trustee has plausibly alleged that Lloyds received customer property under Section 550(a) by outlining the relevant pathways through which customer property was transferred from BLMIS to the Fairfield Funds and subsequently to Lloyds. The Complaint includes the necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer Lloyds received. At this stage of the litigation, nothing more is required. In response, Lloyds misstates the pleading burden and argues that the Trustee's claims are implausible under a fact-based and undisclosed tracing methodology. Lloyds' arguments are plainly inappropriate on a motion to dismiss and run contrary to well-established case law in this SIPA liquidation proceeding.

The Trustee respectfully requests that the Court deny Lloyds' Motion.

## STATEMENT OF FACTS

## I.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS

Madoff founded and operated BLMIS from New York until its collapse in 2008. *See* Compl. ¶¶ 24, 32. BLMIS had three principal business units: (i) a proprietary trading business; (ii) a market-making business; and (iii) an investment advisory business (the "IA Business"). *Id.* ¶ 24. For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy, which involved (a) investing in a basket of common stocks from the Standard & Poor's 100 Index, (b) buying put options and selling call options to hedge against price changes in the underlying basket of stocks, and (c) purchasing U.S. treasury bills when the money was out of the market. *Id.* ¶¶ 25-26. In reality, BLMIS operated a Ponzi scheme through its IA Business. *Id.* ¶ 29. On December 11, 2008, Madoff's fraud was publicly revealed and he was arrested for

criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. *Id.* ¶ 12.

The extent of damage Madoff caused was made possible by BLMIS "feeder funds"—large investment funds created to funnel investors' funds into BLMIS. *See Picard. v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171, 179 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209 (2022) ("*Citibank*"). Lloyds knowingly invested in two such feeder funds – the Fairfield Funds (*i.e.*, Sentry and Sigma). Compl. ¶ 6.

## II.    LLOYDS AND ITS INVESTMENTS IN THE FAIRFIELD FUNDS

Lloyds is a public limited company organized under the laws of the United Kingdom. Compl. ¶ 23. Lloyds invested substantial sums with the Fairfield Funds. The Fairfield Funds invested nearly all of their funds with BLMIS. *Id.* at ¶ 2.

The Fairfield Funds were controlled by FGG, a *de facto* partnership with its principal place of business in New York. *See Fairfield Inv. Fund*, 2021 WL 3477479, at *9. Sentry was a U.S. dollar-denominated fund that invested 95% of its funds with BLMIS. Compl. ¶ 2. Sigma accepted subscriptions in Euros, converted the Euros into U.S. dollars, and invested all its funds in Sentry. *Id*.

Prior to BLMIS's collapse, Lloyds received approximately $11,183,410 in subsequent transfers of customer property from the Fairfield Funds. Compl. ¶ 48, Exs. C – E. Following the collapse, the Trustee filed an adversary proceeding against the Fairfield Funds and related defendants to avoid and recover fraudulent transfers of customer property in the amount of approximately $3 billion. Compl. ¶ 36. In 2011, the Trustee settled with the Fairfield Funds. As part of the settlement, Sentry consented to a judgment in the amount of $3.054 billion but repaid only $70 million to the BLMIS estate. *Id.* ¶ 41. The Trustee then commenced a number of

4

adversary proceedings against defendants such as Lloyds to recover the approximately $3 billion in missing customer property.

## ARGUMENT

### I.    LEGAL STANDARD

When considering motions to dismiss under Rule 12(b)(6), applicable to an adversary proceeding under Fed. R. Bankr. P. 7012, "the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences" in the Trustee's favor. *In re J.P. Jeanneret Assoc., Inc.*, 2011 WL 335594, at *8 (S.D.N.Y. Jan. 31, 2011) (citing *Cargo Partner AG v Albatrons, Inc.*, 352 F.3d 41, 44 (2d Cir. 2003); *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007)). To survive the motion to dismiss, the pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). The allegations need only meet the "plausibility" standard, such that they "'nudge[] [the] claims' . . . 'across the line from conceivable to plausible.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

The Trustee's Complaint sets forth in full the elements of the Trustee's claims, pleading Lloyds' receipt of subsequent transfers of customer property and the grounds upon which the Trustee seeks to recover such transfers made to Lloyds. Thus, dismissal of the Complaint at this juncture is inappropriate. *See Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 440 B.R. 243, 254-71, 273 (Bankr. S.D.N.Y. 2010).

## II.    THE COMPLAINT SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE FAIRFIELD FUND INITIAL TRANSFERS

Lloyds argues that the Trustee fails to state a claim under Section 550 because the Complaint's incorporation by reference of the Fairfield Amended Complaint is improper and "does not adequately plead an essential element of the claim to recover subsequent transfers—avoidability of the Fairfield Initial Transfers." *See* Mot. at 4-10.  This argument lacks merit.  The Trustee has properly pleaded avoidability of the initial transfers from BLMIS to Sentry[3] by virtue of incorporating by reference the Fairfield Amended Complaint.  In any event, the Court may take judicial notice of its own decision on the avoidability of the initial transfers, *Fairfield Inv. Fund*, 2021 WL 3477479, at *4, or allow the Trustee the opportunity to replead.

### A.    The Incorporated Material Complies With Rules 8 and 10

#### 1.    All Adversary Proceedings Are Part of the Main Case for Purposes of Rule 10(c)

Rule 10(c), made applicable by Bankruptcy Rule 7010, allows the incorporation of other pleadings by reference.  Rule 10(c) is intended to "facilitate pleadings that are 'short, concise, and free of unwarranted repetition,' as well as to promote 'convenience' in pleading."  *Morrison v. Office of the U.S. Tr. (In re Morrison)*, 375 B.R. 179, 193 (Bankr. W.D. Pa. 2007) (quoting 5A Alan Wright & Arthur R. Miller, Federal Practice & Procedure 3d ("Wright & Miller") at § 1326 (3d ed. 2007)).

Lloyds asserts that the Trustee is not permitted to incorporate the Fairfield Amended Complaint, which details the avoidability of the initial transfers made by BLMIS to Sentry.[4]  Mot.

---

[3] The Complaint alleges that the initial transfers to Sentry are avoidable, and a portion of those transfers was subsequently transferred to Sigma.

[4] In each of the Trustee's subsequent transfer actions, he alleges that Sentry received avoidable transfers of customer property from BLMIS, that portions of those initial transfers were then transferred to subsequent transferees, and that those amounts are now recoverable under 11 U.S.C. § 550(a).

at 4-10; *see* 11 U.S.C. § 548(a)(1). Lloyds' main support for this assertion is that courts in other contexts have declined to allow incorporation by reference of pleadings in a different action.[5] *See* Mot. at 6. In the bankruptcy context, however, all matters under the umbrella of one liquidation are considered to be one proceeding for purposes of Rule 10(c). *Am. Casein Co. v. Geiger* (*In re Geiger*), 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010). In *Geiger*, a bankruptcy court allowed incorporation by reference of the pleadings in a different adversary proceeding within the same liquidation because the pleadings "directly relate[d] to, materially affect[ed], and [were] filed in a single bankruptcy case." *Id.* This is so because the whole liquidation is "an umbrella under which all actions concerning [the] estate must be brought pursuant to the Bankruptcy Rules." *Id.*

Lloyds criticizes *Geiger*,[6] but Lloyds' argument conflicts with the District Court's prior decision in this SIPA liquidation proceeding on whether under Section 550(a) the Trustee must avoid an initial transfer or plead its avoidability in a subsequent transfer action. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 501 B.R. 26, 29, 36 (S.D.N.Y. 2013). Specifically, the District Court in this SIPA liquidation proceeding held that Section 550(a) only "requires that the Trustee show that the transfer he seeks to recover is avoidable in each recovery action," *id.* at 29, and found the Trustee's showing sufficient where he incorporated by reference the initial transferee complaint against Fairfield:

> [The] Trustee's complaint against Standard Chartered Financial
> Services incorporates by reference the complaints against Kingate

---

[5] Lloyds' inapposite authority includes multiple out-of-Circuit cases dating as far back as the 1950s. *See, e.g., Texas Water Supply Corp. v. R. F. C.*, 204 F.2d 190, 196 (5th Cir. 1953) (not a bankruptcy proceeding); *NCUA Bd. v. Morgan Stanley & Co.*, 2014 WL 1673351, at *9 (S.D.N.Y. Apr. 28, 2014) (same); *see also Davis v. Bifani*, 2007 WL 1216518, at *1 (D. Colo. Apr. 24, 2007) (same); *Muth v. Dechert, Price & Rhoads*, 391 F. Supp. 935, 938 (E.D. Pa. 1975) (same); *Wolfe v. Charter Forest Behavioral Health Sys., Inc.*, 185 F.R.D. 225, 229 (W.D. La. 1999) (same); *Muhammad v. Bethel-Muhammad*, 2012 WL 1854676, at *12 n.10 (S.D. Ala. May 21, 2012) (same); *Ghazzaoui v. Anne Arundel Cnty.*, 2014 WL 3973037, at *4-5 (D. Md. Aug. 11, 2014) (same).

[6] Lloyds argues that the reasoning in *Geiger* is incorrect because the Court's "reading improperly confuses the terminology used in the Federal Rules of Civil Procedure . . . with different terminology used in the Federal Rules of Bankruptcy Procedure." Mot. at 6 n.4. Lloyds provides no case law to support this creative, yet erroneous argument.

> and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. *See* Standard Chartered Compl. 1143–46, 50–53. Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).

*Id* at 36.  This decision is now law of the case.  *See In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018) (holding that "law of the case doctrine," in which "a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages," also "applies to different adversary proceedings filed within the same main bankruptcy case"); *Picard v. Lowrey (In re Bernard L. Madoff)*, 596 B.R. 451, 463-64 (S.D.N.Y. 2019), *aff'd sub nom. Picard v. Gettinger*, 976 F.3d 184 (2d Cir. 2020) (law of the case doctrine foreclosed relitigation of issue where the District Court "considered and rejected the very arguments that defendants now make").

### 2.    Incorporation is Permitted Under Rule 10(c)

Even if the Court were to find that the adversary proceedings are not one action for purposes of Rule 10(c)*,* the Court still can permit incorporation by reference.  Lloyds contends that a party cannot incorporate pleadings from other actions, Mot. at 4-10, but Rule 10(c) contains no such limitation.  The Southern District and other federal courts permit wholesale incorporation by reference of pleadings in separate actions.  *See Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 323 n.5 (S.D.N.Y. 2007) (Rule 10(c)'s reference to "another pleading" not confined to another pleading in the same action); *Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC*, 843 F. Supp. 2d 191, 214 n.15. (D. Mass. 2012) (holding incorporation by reference of pleadings in separate cases appropriate where "the court [was] familiar with the filings in the other [] case[], which [were] substantially similar to [that] case, and the usual concerns about inferring arguments from other submissions have less force.").

Lloyds attempts to liken the Trustee's incorporation to authority where permitting incorporation would have made the allegations "impossible" to understand, "utterly incoherent," and "self contradictory," but these cases are inapposite.[7]  The Trustee references only one other document—the Fairfield Amended Complaint—and the incorporation is explicit and straightforward.  *See* Wright & Miller § 1326 ("If the incorporation is clear, less emphasis need be placed on the source of the incorporated material."); *Whitaker Sec., LLC v. Rosenfeld (In re Rosenfeld)*, 543 B.R. 60, 66 (Bankr. S.D.N.Y. 2015) (noting that some courts fear incorporation by reference will not provide adequate notice as to claims or factual allegations, but allowing incorporation because "there is no danger of prejudice").  The purpose of incorporating the complaint in *Fairfield Inv. Fund* is obvious:  making a *prima facie* showing of the common issue of avoidability of initial transfers under Section 548(a) as required for the Trustee to recover from Lloyds under Section 550(a).  *See Citibank, N.A.,* 12 F.4th at 196-97.  The incorporation simplifies and avoids repetition, goals whose value Lloyds also recognizes.  *See* Mot. at 5 ("[T]he common practice of adopting by reference . . . obviates the need to repeat general allegations").  The Complaint's incorporation by reference is "especially useful in [this] multiparty litigation [where] the presence of common questions [may] often result[] in the pleadings of the parties on the same side of the litigation being virtually identical."  *Sherman*, 528 F. Supp. 2d at 323 n.5 (citation

---

[7] *See* Mot. at 8 (citing *United States v. Int'l Longshore Fisherman Ass'n*, 518 F. Supp. 2d 422, 462, 462-64 (E.D.N.Y. 2007).  Other cases cited by Lloyds are inapposite in that allowing the incorporation in those contexts would have also led to confusion and/or a lack of notice.  *See, e.g., Muth*, 391 F. Supp. at 938; *Toberman v. Copas*, 800 F. Supp. 1239, 1243 (M.D. Pa 1992); *Nycomed US, Inc. v. Glenmark Generics, Ltd.*, 2010 WL 1257803, at *4 (E.D.N.Y. Mar. 26, 2010); *Ghazzaoui*, 2014 WL 3973037, at *5 (incorporation of prior pleadings unclear where plaintiff abandoned claims and parties); *Muhammad*, 2012 WL 1854676, at *6 n.10 (incorporation not permitted of prior complaints that had been ruled legally improper).  No such issue exists here.  Further, the court in *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47 (E.D. Va. 2009), *aff'd*, 382 F. App'x 256 (4th Cir. 2010) found that incorporation by reference was improper where it was unclear which portions of the incorporated pleadings were duplicative or added new material.  Unlike in *Hinton*, the Trustee's purpose of incorporating the Fairfield Amended Complaint is neither duplicative nor unclear.

omitted); Wright & Miller § 1326 n.1 ("Adoption by reference avoids overly long or complicated pleadings.").

### 3.    The Trustee's Allegations Are Sufficient under Rule 8

Through the cases it cites, Lloyds also suggests that the allegations that the initial transfers were avoidable may fail under Rule 8(a)(2)'s requirement that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief" and that "[e]ach allegation must be simple, concise, and direct" under Rule 8(d)(1). *See* Mot. at 6-7. Lloyds contends that allegations concerning defendants other than Sentry are not relevant to this proceeding and "Lloyds should not be required to address those claims," Mot. at 9, but Lloyds is misguided. This Court has already found that the Fairfield Second Amended Complaint as a whole, including allegations as to the FGG defendants, plausibly alleges the avoidability of the initial transfers. *Fairfield Inv. Fund*, 2021 WL 3477479, at *4. Lloyds attempts to put into issue the avoidability element of the Trustee's recovery claims against Lloyds, and then suggest that this Court ignore as irrelevant its own decision.

Notwithstanding Lloyds' protests, Lloyds should have no issues in responding to the entirety of the Complaint, which is simple, concise, and direct. The Trustee makes specific allegations regarding Lloyds' liability under Section 550(a) throughout the Complaint, and only incorporates the Fairfield Amended Complaint—as part of one paragraph—in pleading the avoidability of the initial transfers. These allegations place no undue burden on Lloyds in responding to the claims against it, as it can admit the substance of the avoidability of the initial transfers, deny it, or respond that Lloyds does not have sufficient information to admit or deny. Doing as Lloyds seems to suggest—repleading all initial transfer allegations—does nothing to provide a "short and plain statement" under Rule 8(a) and would unnecessarily add countless pages

to the Complaint. Such duplication is unnecessary in pleading recovery under Section 550, *see In re Madoff Sec.*, 501 B.R. at 36, and inconsistent with the purposes of Rule 8.

### B.    The Court Can Take Judicial Notice of the Fairfield Decision

Regardless of incorporation, this Court may take judicial notice of its holding that the Fairfield Second Amended Complaint sufficiently alleges the avoidability of the initial transfers. On a motion to dismiss, "a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*." *Ferrari v. Cnty of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011). "Included among such matters are decisions in prior lawsuits." *DeMasi v. Benefico*, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008). This Court's decision finding that the Trustee sufficiently pleaded the avoidability of the initial transfers from BLMIS to Sentry is thus subject to judicial notice. *See generally Fairfield Inv. Fund*, 2021 WL 3477479. This Court is permitted, and should, take judicial notice of this finding.

### C.    At a Minimum, the Trustee Should Be Afforded the Opportunity to Replead

Should the Court accept Lloyds' argument and not take judicial notice of the avoidability of the initial transfers at issue, the Trustee should be granted leave to replead. Rule 15(a), made applicable by Bankruptcy Rule 7015, provides that "[t]he court should freely give leave [to amend] when justice so requires." The Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)." *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006). As evidenced by the cases relied upon by Lloyds, leave to replead extends to complaints that were dismissed for improperly incorporating other pleadings or motions by reference. *See e.g.*, *Geiger*, 446 B.R. at 683; *Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d at 483. As the Supreme Court has noted, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his

claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Trustee should thus be afforded his chance to have his claims tested on the merits, and not on the basis of pleading technicalities—particularly where this Court has already found the avoidability of the Sentry transfers has been sufficiently pled.[8]

### III. SECTION 546(E) DOES NOT BAR RECOVERY FROM LLOYDS

Section 546(e) provides a safe harbor for the avoidance of certain initial transfers made outside the two-year period referenced in Section 548(a)(1)(A). *See* 11 U.S.C. § 546(e) ("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title.") (emphasis added). However, in *Cohmad*, the District Court held that an initial transferee's actual knowledge of Madoff's fraud precluded application of the safe harbor, thereby allowing the Trustee to avoid transfers made prior to the two-year period. 2013 WL 1609154, at *1. Lloyds now argues that Section 546(e) bars the Trustee's claims,[9] even though the Trustee has pleaded the initial transferee's actual knowledge. Mot. at 10-20. As discussed below, Lloyds' argument has already been rejected in other adversary proceedings and is based on a tortured misreading of Section 546(e) and *Cohmad*.

### A. The Fairfield Funds' Actual Knowledge of Madoff's Fraud Bars Application of Section 546(e)

Lloyds sets forth the requirements of Section 546(e) and how they are supposedly met in this case with respect to the initial transfers from BLMIS, specifically discussing whether the Fairfield Funds qualify as a financial institution, whether Sentry or Lloyds' agreements qualify as

---

[8] Should the Court determine that repleading is warranted here, the Complaint can be amended to address specific paragraphs of the Fairfield Second Amended Complaint as necessary.

[9] Lloyds must acknowledge that as to any initial transfers from BLMIS to Sentry made between December 11, 2006 and December 11, 2008, Section 546(e) does not apply. The Complaint plausibly alleges that $2,463,413 in subsequent transfers were made to Lloyds within the two-year period. Compl., Ex. C.

securities contracts, and whether Sentry's transfers to Lloyds qualify as settlement payments. Mot. at 13-20. None of this matters, however, because, as this Court has previously held, the Trustee has sufficiently pled Sentry's actual knowledge of fraud. Mot. at 17; *see also Fairfield Inv. Fund*, 2021 WL 3477479, at *4–5. Section 546(e) therefore does not bar the avoidance of Sentry's initial transfers, and those transfers may be recovered from Lloyds regardless of whether the Fairfield Funds or Lloyds qualify as financial institutions, their agreements qualify as securities contracts, or their transfers qualify as settlement payments.

### B. Lloyds Is Precluded From Relitigating the Actual Knowledge Exception Established in *Cohmad*

Lloyds is precluded from arguing that *Cohmad* was wrongly decided as to whether actual knowledge bars the application of Section 546(e). The District Court issued *Cohmad* following consolidated proceedings on the application of Section 546(e). As Lloyds acknowledges, *Cohmad* held that a transferee with actual knowledge of Madoff's fraud cannot claim the protections of Section 546(e). Mot. at 17, 20. The District Court then remanded to this Court, and this Court has since applied the actual knowledge "exception" on numerous occasions.[10]

Lloyds participated in the District Court proceedings[11] and is bound by *Cohmad* as it is law of the case. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 466

---

[10] *See e.g., Fairfield Inv. Fund*, 2021 WL 3477479, at *4 (applying actual knowledge exception); *Picard v. Square One Fund Ltd.*, (*In re Bernard L. Madoff Inv. Sec. LLC*), Bench Ruling on Motion to Dismiss, Adv. Pro. No. 10-04330 (Bankr. S.D.N.Y. May 29, 2019) (same); *Picard v. Magnify, Inc.*, (*In re Bernard L. Madoff Inv. Sec. LLC*), 583 B.R. 829, 841 (Bankr. S.D.N.Y. 2018) (same); *Picard v. Mendelow et al.*, (*In re Bernard L. Madoff Inv. Sec. LLC*), 560 B.R. 208 (Bankr. S.D.N.Y. 2016) (same); *Picard v. Avellino*, (*In re Bernard L. Madoff Inv. Sec. LLC*), 557 B.R. 89, 112 (Bankr. S.D.N.Y. 2016) (same); *Picard v. Shapiro*, (*In re Bernard L. Madoff Inv. Sec. LLC*), 542 B.R. 100 (Bankr. S.D.N.Y. 2015) (same); *Picard v. Ceretti, et al.*, (*In re Bernard L. Madoff Inv. Sec. LLC*), No. 09-01161 (SMB), 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015) (same); *Picard v. Merkin*, (*In re Bernard L. Madoff Inv. Sec. LLC*), 515 B.R. 117 (Bankr. S.D.N.Y. 2014) (same).

[11] *See* Motion to Withdraw the Reference, *Picard v. Lloyds TSB Bank PLC*, Adv. Pro. No. 12-01207, ECF No. 8 (Bankr. S.D.N.Y. filed June 12, 2012) (raising Section 546(e) as grounds for withdrawal); Consent Order, *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-cv-04722, ECF No. 6 (June 25, 2012) (Lloyds and Trustee agreed that "the Section 546(e) [Briefing] Order as entered shall apply to the Lloyds Action *nunc pro tunc* to May 16, 2012."); *id.*, Order, ECF No. 7 (July 11, 2012) (Lloyds referenced in Exhibit to the Order where Court held that the

13

(Bankr. S.D.N.Y. 2015) ("Those moving defendants that participated in the withdrawal of the reference . . . have had their day in court and Judge Rakoff's decisions are law of the case."); *Picard v. Lowrey (In re Bernard L. Madoff)*, 596 B.R. 451, 463-64 (S.D.N.Y. 2019), *aff'd sub nom. Picard v. Gettinger*, 976 F.3d 184 (2d Cir. 2020). Lloyds also did not seek leave to appeal the *Cohmad* decision.

In its Motion, Lloyds relies heavily on the Second Circuit's decision in *In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Recoverable Trust)*, 773 F.3d 411 (2d Cir. 2014) ("*Ida Fishman*"). Mot. at 11-13, 15-16. However, as this Court has recognized, *Ida Fishman* did not address the actual knowledge exception. *See Picard v. Cohen*, Adv. Pro. No. 10-04311, 2016 WL 1695296, at \*10 n.16 (Bankr. S.D.N.Y. Apr. 25, 2016) ("The [*Ida Fishman*] Court did not address the exception to the safe harbor regarding those investors who had actual knowledge that BLMIS was not trading securities.").

### C.    Lloyds Is Precluded From Arguing That Section 546(e) Applies Independently to Recovery Actions

Lloyds is also incorrect that the Trustee must allege that a subsequent transferee had actual knowledge to invoke the actual knowledge exception to Section 546(e). Specifically, Lloyds argues that under *Cohmad*, its subscription agreement with Sentry may act as the relevant "securities contract" in lieu of BLMIS's account agreement, and, in these Section 550 recovery actions, the Court must look solely to Lloyds' knowledge to determine whether the initial transfer is avoidable. Mot. at 16. But *Cohmad* does not stand for this proposition, and Lloyds' argument just repackages the previously rejected argument that the Section 546(e) safe harbor should independently apply to recovery actions under Section 550.

---

"resolution of the issues covered by the [546(e) Briefing Order] shall govern the motions to withdraw the reference pending in the Adversary Proceedings and no further action is required with respect to such motions.").

By its plain language, Section 546(e) applies to the avoidance of initial transfers, not the recovery of subsequent transfers under Section 550. *See* 11 U.S.C. § 546(e) ("[T]he trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title.") (emphasis added); *see also Picard v. BNP Paribas S.A. (In re Bernard L. Madoff)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) ("*BNP*") ("The Trustee does not . . . 'avoid' the subsequent transfer; he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550."). This limitation on the safe harbor to avoidance actions is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct." *In re Madoff Sec.*, 501 B.R. at 30. It is also consistent with the understanding that the Bankruptcy Code's avoidance provisions protect against depletion of a debtor's estate, while Section 550 is merely a "utility provision," intended to help execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place." *See In re Picard, Trustee for Liquidation of Bernard L. Madoff Inv. Sec. LLC,* 917 F.3d 85, 98 (2d Cir. 2019).

*Cohmad* confirmed that Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees. The District Court withdrew the reference on whether Section 546(e) barred recovery of a subsequent transfer pursuant to Section 550.[12] However, in its decision, the District Court specifically limited the safe harbor to avoidance claims based on the plain language of Section 546(e). *See Cohmad*, 2013 WL 1609154, at *4, *9 (applying the "plain terms" of Section 546(e)), *7 (recognizing that subsequent transferees can raise initial transferees' defenses to *avoidance*), *10 ("[B]oth initial transferees and

---

[12] *See* Section 546(e) Briefing Order, *In re Madoff Sec.*, 12-MC-115, ECF No. 119 (S.D.N.Y. filed May 16, 2012) (withdrawing the reference on issue of "whether application of Section 546(e) to an initial or mediate Transfer bars recovery by the Trustee of any subsequent Transfer pursuant to Section 550").

subsequent transferees are entitled to raise a defense based on the application of Section 546(e) to the *initial* transfer from Madoff Securities.") (emphasis added).    And though the court hypothesized, in *dicta*, that a subsequent transferee's subscription agreements with the initial transferee feeder fund, and related agreements and transactions, might under certain circumstances constitute relevant "securities contracts," and that certain subsequent transferee defendants might qualify as "financial institutions" or "financial participants," the decision is clear that the focus of the safe harbor is still on the *initial* transfers.[13]    *See id.* at *9 ("[T]he question . . . is whether the Trustee has alleged that that *initial transfer* was made in connection with (*i.e.,* related to) a covered securities contract . . . .") (emphasis added).

Based on *Cohmad*, this Court held in *BNP* that Section 546(e) applies only to avoidance, not recovery, and most notably that a subsequent transferee cannot assert the protections of Section 546(e) where the Trustee has adequately pled the initial transferee's actual knowledge.    *See BNP*, 594 B.R. at 197 ("[A] subsequent transferee is protected indirectly to the extent that the initial transfer is not avoidable because of the safe harbor."); *see also In re SunEdison, Inc.*, 620 B.R. 505, 514 (Bankr. S.D.N.Y. 2020) ("[T]he safe harbor defense only applies by its terms to the initial transfer.").    In *BNP*, the Court explicitly rejected the argument being made here—that the "*only* way the Trustee can escape the application of Section 546(e) here is by pleading with particularity and plausibility that the [subsequent transferee defendants] actually knew of the Madoff Ponzi scheme." *BNP*, 594 B.R. 196–97 (emphasis in original).    Based on *BNP*, Section 546(e) protects

---

[13] For this same reason, *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 339 (2d Cir. 2011), which the District Court cites in *Cohmad* solely to support its reading of what constitutes a "securities contract," does not change this outcome.  The focus is still on the initial transfers, which for purposes of Section 546(e), the Second Circuit has already determined, and it is now not debatable, are the transfers from BLMIS to its feeder funds.  *See Ida Fishman*, 773 F.3d at 422-23.

a subsequent transferee to the same extent it protects the initial transferee. *Id*. at 197. Like *Cohmad*, *BNP* is law of the case and Lloyds is bound by it.

Lloyds nevertheless seeks to relitigate this point, arguing that to the extent the Sentry subscription agreements are the relevant "securities agreements" in accordance with *Cohmad*, this Court must look to Lloyds' actual knowledge. Mot. at 15-17. But as stated above, the District Court did not conclude this, nor did it state that the actual knowledge exception should be applied any differently even if the feeder fund agreements were to be used for Section 546(e). Indeed, adopting Lloyds' position means the safe harbor would apply even where the initial transferee feeder fund knew there were no securities transactions to protect. It would also allow an initial transferee—who had knowledge of the fraud and was unable to satisfy a judgment (like Sentry)— to place fraudulently transferred moneys with a subsequent transferee and out of the reach of a trustee. *See Cohmad*, 2013 WL 1609154, at *1, *7 ("A defendant cannot be permitted to in effect launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of Section 546(e)."). Such an interpretation would eliminate the point of the actual knowledge exception—which is to restrict any transferees with actual knowledge of fraud from hiding behind the safe harbor. *See Cohmad*, 2013 WL 1609154, at *3 (explaining that defendants who knew BLMIS was a Ponzi scheme "must have known that the transfers they received directly or indirectly from Madoff Securities were not 'settlement payments.'").

Expanding the safe harbor as Lloyds proposes also would give subsequent transferees more protection as to avoidance than the initial transferee itself, which does not reflect Congress' intent. *See Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.)*, 343 B.R. 75, 82 (Bankr. S.D.N.Y. 2006), *rev'd on other grounds*, 388 B.R. 489 (S.D.N.Y. 2008) ("Upon consideration of the initial

transferee's defenses and once the amount of its liability is established, that amount can be sought

from any of the transferees, including subsequent transferees, subject to any of their additional

defenses."). Conversely, providing subsequent transferees with the same defenses to avoidance as

available to the initial transferee does not unfairly bias subsequent transferees.

### D.    The Trustee is Not Bound by the Court's Holding in *Fairfield III*

Though not necessary for the Court to determine the matter at hand, we note that Lloyds

seeks to invoke issue preclusion to foreclose litigation of an issue Lloyds claim was previously

decided in *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Adv.

Pro. No. 10-03496 (SMB), 2020 WL 7345988, at *7 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield

III*") even though the Trustee was not a party to that lawsuit.[14]    Specifically, Lloyds incorrectly

asserts that the Trustee is in privity with the Fairfield Liquidators and the issue of whether Sentry

is a "financial institution" within the meaning of 11 U.S.C. § 546(e) was already decided, and as a

result, the Trustee is bound by the Court's holding in *Fairfield III*. Mot. at 13-14.

Issue preclusion does not apply here because Lloyds fails to show that the identical issue

was raised in *Fairfield III*. *Fairfield III* did not involve recovery of subsequent transfers under the

Bankruptcy Code, and the Court limited its "consideration to the avoidance provisions under the

BVI Insolvency Act." 2020 WL 7345988, at *8. Rather, the Court held that Section 546(e) barred

the Fairfield Liquidators' claims for unfair preference and undervalue transactions under the BVI

---

[14] Issue preclusion bars litigation of an issue when "(1) the identical issue was raised in a previous proceeding; (2) the
issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to
litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."
*Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (internal quotation marks omitted). The party seeking to
apply issue preclusion bears the initial "burden of showing that the issues are identical and were necessarily decided
in the prior action. *Kulak v. City of New York*, 88 F.3d 63, 72 (2d Cir. 1996); *Taylor v. Sturgell*, 553 U.S. 880, 907
(2008) ("it is incumbent on the defendant to plead and prove" the affirmative defense of issue preclusion).

Insolvency Act, which the Court analogized to avoidance provisions in the Bankruptcy Code.[15]

*Id.*

This should end the matter. Moreover, Lloyds' argument fails for the independent reason that Lloyds does not show that the Trustee had a full and fair opportunity to litigate the issue. Lloyds creatively asserts that the Trustee should be bound by *Fairfield III* because he was in privity with the Fairfield Liquidators. Lloyds mischaracterizes the Trustee's relationship with the Fairfield Liquidators as a "substantive legal relationship" in an effort to trigger nonparty issue preclusion as it pertains to Sentry's qualification as a "financial institution" within the meaning of Section 546(e). Mot. at 14 n.9. But merely sharing an interest in recovering BLMIS customer property hardly constitutes the sort of "substantive legal relationship" required under *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008), to establish nonparty issue preclusion. *See In re Refco Inc. Sec. Litig.*, No. 07-MD-1902 (JSR), 2013 WL 12191844, at *13 (S.D.N.Y. Mar. 25, 2013) (emphasizing "that preclusion of nonparties is an exceptional situation, contrary to the basic presumption that every party is entitled to its day in court").[16] *Fairfield III* does not control here and Lloyds' arguments fail.

## IV. THE COMPLAINT ADEQUATELY ALLEGES THAT LLOYDS RECEIVED BLMIS CUSTOMER PROPERTY UNDER SECTION 550(A)

The Complaint states a claim for recovery under Section 550(a)(2) by plausibly alleging that Lloyds received a subsequent transfer of BLMIS customer property. The Trustee has satisfied his pleading burden and Lloyds' argument must fail as a result.

---

[15] The *Fairfield III* decision is currently on appeal in the U.S. District Court. *See In re Fairfield Sentry Ltd.*, 19-CV-03911 (consolidated) (S.D.N.Y.) (Broderick, J.).

[16] Moreover, given that nonparty preclusion is an affirmative defense, raising it in this Motion is inappropriate. *See Taylor*, 553 U.S. at 907.

To plead a subsequent transfer claim under Section 550(a)(2), the Trustee must allege facts that support an inference "that the funds at issue originated with the debtor." *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117, 149 (Bankr. S.D.N.Y. 2014) (citation omitted). A complaint "need only allege sufficient facts to show the relevant pathways through which the funds were transferred from BLMIS to [the subsequent transferee]." *Charles Ellerin Revocable Trust*, 2012 WL 892514, at *3; *see also 45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019). The Trustee must allege "the necessary vital statistics—the who, when, and how much of the purported transfers to establish an entity as a subsequent transferee of the funds," *Merkin*, 515 B.R. at 150 (quoting *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 32 (Bankr. E.D.N.Y. 2007), but the pleading burden is not onerous and does not "require 'dollar-for-dollar accounting' of 'the exact funds' at issue." *Id.* (quoting *Picard v. Charles Ellerin Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, Adv. Pro. Nos. 10-04398 (BRL), 10-05219 (BRL), 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012)); *see also Picard v. Est. of Stanley Chais (In re Bernard L. Madoff Inv. Sec. LLC)*, 445 B.R. 206, 235-36 (Bankr. S.D.N.Y. 2014) (transfer allegations sufficient that "specif[ied] the dates upon which they took place, the method of transfer, the transferor, and the specific transferees" and "some . . . of the[se] Transfers were subsequently transferred . . . to Defendant").

The Trustee's Complaint meets these requirements. It alleges that Lloyds received transfers, identified by date and amount, from Sentry, and that Sentry invested substantially all of its funds with BLMIS. Compl. ¶¶ 2, 42, Ex. C. The Complaint likewise alleges that Lloyds received transfers, identified by date and amount, from Sigma, and that Sigma invested all of its funds with Sentry. Compl. ¶¶ 2, 44, Exs. D, E. Thus, the Complaint plausibly alleges that Lloyds

received subsequent transfers of BLMIS customer property by (a) outlining the relevant pathway

through which customer property was transferred from BLMIS to the Fairfield Funds and

subsequently to Lloyds, and (b) providing the necessary vital statistics (*i.e.*, the "who, when, and

how much") for each subsequent transfer. Nothing more is required. *See, e.g.*, *Picard v. Mayer*,

No. 20-01316 (CGM), 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021) (rejecting

argument that subsequent transfer "claim has not been plead with enough specificity as to how and

what [defendant] received" and holding complaint "contains sufficient information regarding

which transfers the Trustee is seeking to recover").

### A.    Lloyds Misstates the Trustee's Pleading Burden

Unable to argue that the Trustee fails to meet his pleading burden under governing law,

Lloyds asks the Court to impose a new burden on the Trustee that would require him to "tie all

subsequent transfers he seeks to recover [from Lloyds] to a [specific] initial transfer from

BLMIS."[17]  Mot. at 3, 20-22. This Court previously rejected this argument in *Merkin*, declining

to dismiss the Trustee's subsequent transfer claims even though he did "not connect each of the

subsequent transfers with an initial, voidable transfer emanating from BLMIS." 515 B.R. at 150;

*see also 45 John Lofts, LLC*, 599 B.R. at 747 (finding no "requirement to trace individual dollar

amounts from the transferor to the transferees to survive a motion to dismiss").  Likewise, this

Court has already rejected the argument that the Trustee must detail what portion of each

subsequent transfer comprises customer property. *Compare Merkin*, 515 B.R. 152–53 (refusing

---

[17] Lloyds argues that the Trustee's allegations are otherwise nothing more than a "flawed syllogism". Mot. at 25. But for the reasons discussed *infra*, the Trustee has no need to and does not rely on the faulty logic Lloyds suggests. Lloyds cites *Bermudez v. City of New York* for an example of a "false syllogism." 783 F. Supp. 2d 560, 582 (S.D.N.Y. 2011). In *Bermudez*, the plaintiff brought various claims alleging workplace discrimination and hostile work environment. Instead of alleging facts supporting the allegation that she suffered adverse employment action because of her race, plaintiff alleged that (1) she is a member of a protected class; (2) something negative happened to her at work; (3) therefore, it happened because she is a member of the protected class, which the Court found to constitute a false syllogism. The Trustee employs no such logic and pleaded the "vital statistics" of the transfers, as required and explained *infra*. *See Merkin*, 515 B.R. at 150.

to dismiss complaint where "at least some of the subsequent transfers . . . may be recoverable")
*with* Mot. at 25 ("Because . . . *some* of the subsequent transfers from Sentry to Lloyds cannot be
traced back to BLMIS, the Trustee's claims should be dismissed") (original emphasis); *see also In
re Allou Distribs., Inc.*, 379 B.R. at 30 (finding "if dollar-for-dollar accounting is not required at
the proof stage, then surely it is not required at the pleading stage either").

Lloyds' reliance on *Shapiro* is unavailing because *Shapiro* did not change the Trustee's
pleading burden under Section 550(a).  *See* Mot. at 21 (citing *Shapiro*, 542 B.R. at 119).  In
*Shapiro*, the Trustee alleged that certain trusts and members of the Shapiro family received
approximately $54 million in fraudulent transfers from BLMIS, and "upon information and belief"
these defendants subsequently transferred this same amount to other defendants.  *See Shapiro*, 542
B.R. at 104.  However, the Court dismissed the subsequent transfer claims because the complaint
did not detail *any* of the necessary vital statistics of the subsequent transfers.  *Id*. at 119.  There
were no allegations regarding the subsequent transferors, the subsequent transferees, or the dates
or amounts of the subsequent transfers, and consequently this Court granted defendants' motion
to dismiss the subsequent transfer claim.  *Id*.  In fact, the complaint in *Shapiro* failed to "plausibly
imply that the initial transferees even made subsequent transfers," alleging only that "a portion"
was transferred without any evidence of any subsequent transfers.  *Id*.  Consequently, this Court
granted defendants' motion to dismiss the subsequent transfer claim.  *Id*.  The Complaint in this
action, however, unlike in *Shapiro*, identifies the specific subsequent transfers from Sentry to
Lloyds.  As mentioned *supra*, it details the requisite "vital statistics" in paragraphs 2, 42, 44 and
Exhibits C, D and E.  *See Silverman*, 379 B.R. at 32.  For this important reason, the facts alleged
here are distinguishably much more robust and detailed than in *Shapiro* and provide the details
found missing there.

Lloyds' reliance on *Angell v. Ber Care, Inc. (In re Caremerica, Inc.)*, 409 B.R. 737, 750-751 (Bankr. E.D.N.C. 2009), likewise lacks merit.  *Caremerica* applied a heightened pleading standard that has been disfavored across jurisdictions, and, in all events, is irrelevant here.  *See, e.g.*, *Zucker v. Oconee Reg'l Healthcare Found., Inc. (In re Oconee Reg'l Health Sys., Inc.)*, 621 B.R. 64, 71-72 (Bankr. M.D. Ga. 2020) ("This heightened pleading standard for preference claims, as adopted by *Caremerica* and its progeny, is inconsistent with the liberal fair notice pleading standard of Federal Rule of Bankruptcy Procedure . . . 7008(a)(2), as well as the Supreme Court's assertion that a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."); *Tousa Homes, Inc. v. Palm Beach Newspapers, Inc. (In re TOUSA, Inc., et al.)*, 442 B.R. 852, 855-56 (Bankr. S.D. Fla. 2010) ("The pleading requirements of *Caremerica* require more than the standard promulgated in *Twombly* and *Iqbal* and the liberal pleading policy underlying the civil rules.").  *Caremerica* involved preferential transfers from a non-debtor bank account where the trustee failed to "rebut the alternative and reasonable possibility that the funds . . . originated from sources other than the debtors." *In re Caremerica, Inc.*, 409 B.R. at 751.  Here, where the Trustee has alleged the vital statistics of each transfer Lloyds received, including the transferor, the transferee, and the date and amount of the transfer, *Shapiro* and *Caremerica* support denying the motion to dismiss.

### B.    Lloyds' Tracing Arguments Fail at the Pleading Stage

Lloyds' other fact-based tracing arguments fare no better and are inappropriate for a motion to dismiss.  Lloyds argues that the subsequent transfers it received from the Fairfield Funds cannot plausibly have consisted of BLMIS customer property.  In support, it cites the Fairfield Liquidators' allegation that: "'From time to time, to make Redemption Payments,' it 'utilized subscription monies of other investors on hand that were directed for investment in BLMIS,' *i.e.*, not BLMIS funds." *See* Mot. at 24 (citation omitted).  Seizing on this selective quotation, Lloyds

asserts that "it is likely the money paid out to members like Lloyds was that of other Sentry investors, not BLMIS." Mot. at 24.

Putting aside that there is no basis to impute the Fairfield Liquidators' allegations to the Trustee, Lloyds' argument fails for four additional reasons. First, the Fairfield Liquidators only allege that it commingled customer property with subscription funds directed to BLMIS. But commingling does not defeat the Trustee's ability to trace transfers of customer property. *See Universitas Educ., LLC v. Nova Grp., Inc.*, Nos. 11-1590 (LTS) (HBP) & 11-8726 (LTS) (HBP), 2013 WL 6123104, at *12 (S.D.N.Y. Nov. 20, 2013) ("It is a basic principle of equity that 'the mere commingling of [other] property with the proceeds of property fraudulently transferred by the Debtor is not sufficient to defeat tracing.'") (citation omitted); *Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-cv-1073 (ECT) (KMM), 2020 WL 3077151, at *4 (D. Minn. June 10, 2020) ("The law does not place such a difficult burden on trustees. The commingling of legitimate funds with funds transferred from the debtor does not defeat tracing.").[18]

Lloyds attempts to argue that commingling of funds is an "alternative explanation" to the Trustee's plausible claims by relying on inapposite authority, Mot. at 24, yet neither of the two cases Lloyds cites deal with commingling or recovery proceedings in a SIPA liquidation proceeding. *See Garfinkle v. Conference on Jewish Material Claims Against Germany, Inc.*, 2020 WL 6323462, at *1, 4-5 (S.D.N.Y. Oct. 28, 2020) (plaintiff failed to show defendant's "sole purpose to harm" plaintiff, as required for tortious interference claim, where the court found an "obvious alternative explanation"); *Prestige Pet Prod., Inc. v. Pingyang Huaxing Leather &*

---

[18] Even "[w]here the assets fraudulently transferred no longer exist or cannot be found due to commingling, a money judgment may be entered in an amount up to the value of the fraudulently transferred assets against the parties who participated in the fraudulent transfer and are either transferees of the assets or beneficiaries of the conveyance." *Henry v. Rizzolo*, No. 08-cv-00635, 2012 WL 4092604, at *7 (D. Nev. Sept. 17, 2012), *order clarified*, 2012 WL 4867725 (D. Nev. Oct. 12, 2012).

*Plastic Co.*, 767 F. Supp. 2d 806, 809, 811-12 (E.D. Mich. 2011) (patent infringement claim). Here, commingling may add a layer of complication to the tracing of customer property from BLMIS, but it does not require dismissal of the Trustee's subsequent transfer claims.  *See Dahar v. Jackson (In re Jackson)*, 318 B.R. 5, 25 (Bankr. D.N.H. 2004) ("[T]he mere commingling of the Defendant's property with the proceeds of property fraudulently transferred by the Debtor is not sufficient to defeat tracing."); *Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *3 (finding that at the summary judgment stage, it is not necessary for the Trustee to specify what portion of the subsequent transfers, which were paid from commingled funds, were derived from BLMIS).  The Trustee also is a stranger to the transactions between Sentry and Lloyds and is entitled to discovery on this issue.  *See* Mot. at 3.  This is one reason why this Court in *Merkin* denied defendants' motion to dismiss, finding "[t]he subsequent transfer claim must ultimately be proved through the books and records of the defendants." 515 B.R. at 151.  Even after fact discovery, expert opinion is necessary to determine what portion of the subsequent transfer stemmed from the initial transfer where the subsequent transfers originated from commingled accounts.  *Picard v. Merkin (In re: Bernard L. Madoff)*, 581 B.R. 370, 386 (Bankr. S.D.N.Y. 2017); *see also Kelley*, 2020 WL 3077151, at *5 (denying summary judgment because trustee introduced expert report and associated documents from which a jury could infer that defendants received subsequent transfers of customer property).[19]

---

[19] This Court should reject Lloyds' assertion that "the Trustee has had the very records from Sentry and Sigma that would demonstrate which subsequent transfers contain money from BLMIS . . . ." Mot. at 3.  The Trustee does not have all of the Fairfield Funds' books and records, and discovery in the Trustee's actions against the Fairfield management defendants continues.  *See, e.g.,* Stipulated Case Management Order, *Picard v. Fairfield Inv. Fund (In re BLMIS)*, 09-01239 (CGM), ECF No. 353 (setting November 2022 for completion of fact discovery and August 2023 discovery deadline for expert discovery).  Lloyds also no doubt has records it can provide on these same transactions.  Discovery from the Fairfield Funds and Lloyds, among others, will enable the Trustee to prove his claims at later stages of this litigation.

Lloyds also argues that for certain periods of time selected by Lloyds, Sentry paid out more money than it received from BLMIS, creating a "budgetary shortfall" where some subsequent transfers to Lloyds "*must* have come from somewhere other than BLMIS."[20]   Mot. at 23-24. Lloyds does not disclose the tracing methodology on which it bases this conclusion.   There is a good reason for that: because it is for this Court to decide—after fact and expert discovery—the appropriate tracing methodology under the circumstances.   *See Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *3 n.7 ("Courts have broad discretion to determine which monies of comingled funds derive from fraudulent sources.") (citing *United States v. Henshaw*, 388 F.3d 738, 741 (10th Cir. 2004) ("There are several alternative methods, none of which is optimal for all commingling cases; courts exercise case-specific judgment to select the method best suited to achieve a fair and equitable result on the facts before them.")).

Lloyds' assertion that Sentry exhausted all BLMIS customer property on hand before satisfying Lloyds redemption request relies on the speculative factual assumption that every subsequent transfer that preceded the one to Lloyds was sourced solely by customer property.  Mot. at 22-24. In support, Lloyds relies entirely on exhibits the Trustee submitted in this and other adversary proceedings.  *Id.*; Compl., Ex. C; Paccione Decl., Exs. E, F, G.  Those exhibits, however, do not establish this fact.  At this stage of the proceedings, the Trustee is not required to plead,

---

[20] The declaration of Lloyds' counsel, Anthony Paccione, Esq., includes four "calculations" of various transfers from BLMIS to Sentry and Sentry to its investors.  *See* Paccione Decl. ¶¶ 9 (a) – (d), *Picard v. Lloyds TSB Bank PLC,* Adv. Pro. No. 12-01207 (CGM), ECF No. 87.  These calculations subtract transfers made by Sentry from transfers received by Sentry for the period July 22, 2003 to May 13, 2005 to conclude that transfers from Sentry to Lloyds could not consist of customer property, with no explanation for the methodology behind the calculation.  Lloyds' undefined tracing methodology, which it uses to contest the transfers in this proceeding, serves as nothing more than "an attempt to interject improper expert testimony into a Rule 12(b)(6) context."  *Fowler v. Caliber Home Loans, Inc.*, 277 F. Supp. 3d 1324, 1331 (S.D. Fla. 2016) (declining to consider expert testimony in a motion to dismiss); *see also Solution Tr. v. 2100 Grand LLC* (*In re AWTR Liquidation Inc.*), 548 B.R. 300, 334 (Bankr. C.D. Cal. 2016) (assessment of valuation that "almost certainly will require expert testimony" is inappropriate for a motion to dismiss); *In re Viropharma, Inc.*, No. CIV.A. 02-1627, 2003 WL 1824914, at *2 (E.D. Pa. Apr. 7, 2003) ("The [party's] submission of an expert report at [the motion to dismiss] stage is entirely improper.").

much less establish, that an alleged subsequent transfer is comprised solely of customer property. *See Kelley*, 2020 WL 3077151, at *4 (holding that where debtors' funds are commingled with "cash from new subscribing investors," a trustee is not required to establish that the transfers "originated solely" with the debtor or even to account for "the exact funds at issue" on summary judgment); *45 John Lofts, LLC*, 599 B.R. at 746–47 (rejecting defendant's argument "that Plaintiff generically, and without factual support, alleged that every transfer out of" the initial transferee's commingled account was made with debtor property because the plaintiff is not required "to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss") (cleaned up).  Because the Trustee's transfer exhibits do not establish that each alleged transfer was comprised solely of BLMIS customer property, there is nothing to support Lloyds' contention that its subsequent transfer did not contain customer property.[21]

Finally, Lloyds' tracing arguments are not only wrong, they are premature.  Courts in this District and in this SIPA liquidation proceeding have denied summary judgment where only an undetermined or small portion of the subsequent transfer was conceivably traceable to the estate. *See Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *3 (holding that even at summary judgment, "it is not necessary for the Trustee to specify what portion of the Subsequent Transfers to [the subsequent transferee] was derived from BLMIS"); *see also Gowan v. Amaranth Advisors, LLC (In re Dreier LLP)*, Adv. Pro. Nos. 10-03493 & 10-05447 (SMB), 2014 WL 47774, at *14–16 (Bankr. S.D.N.Y. Jan. 3, 2014) (allowing the trustee to proceed to trial where at most 3.5% of the transfers at issue could be traced to the debtor's Ponzi scheme).  And where, as here, the Trustee

---

[21] To the extent Lloyds is arguing that the subsequent transfer is too far removed in time from the initial transfers, this is just another version of Lloyds' tracing argument that should be rejected.

"has not been afforded the opportunity to conduct discovery," courts only dismiss such claims "in the rarest of cases."[22] *Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *2.

This is not a case where the Court should prematurely cut off the Trustee's ability to trace the subsequent transfer at the pleading stage. The circumstances of the transfers, including the purposes of the transfers and the parties' intent, are relevant to equitable principles applied to tracing. *See Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 239 F.3d 365, 2000 WL 1741550, at *5 (5th Cir. Dec. 11, 2000) (the court's "task here is to look beyond the particular transfers in question to the entire circumstance of the transactions") (cleaned up).

Because money is fungible, "[t]he goal of tracing is not to trace anything at all in many cases, but rather to serve as an equitable substitute for the impossibility of specific identification." *Henshaw*, 388 F.3d at 741 (cleaned up). And "[i]t is undeniable that equity will follow a fund through any number of transmutations, and preserve it for the owner as long as it can be identified." *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 709 (11th Cir. 2005) (quoting *Dery v. United States (In re Bridge)*, 90 B.R. 839, 848 (E.D. Mich. 1988)). Under these circumstances, equity weighs against cutting the Trustee off at the pleading stage.

### C.    Lloyds' Claims of Double Recovery Are Premature

Lloyds also argues the Trustee's claims must be dismissed because the Trustee is seeking more money from all of Sentry's subsequent transferees than the fund withdrew from BLMIS. Mot. at 22-23. This Court has already addressed this issue, finding that while Section 550(d) limits the Trustee's recovery to the amount avoided, "the aggregate subsequent transfer claim can greatly

---

[22] "[I]n a case such as this one, where the Trustee's lack of personal knowledge is compounded with complicated issues and transactions [that] extend over lengthy periods of time, the trustee's handicap increases, and even greater latitude should be afforded" to him. *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up). And even after fact and expert discovery, there may still be fact disputes that require a trial. *See Kelley*, 2020 WL 3077151, at *5 (denying summary judgment because of a fact dispute after the trustee introduced an expert report and associated documents from which a jury could infer the defendants received subsequent transfers of property from the Petters Ponzi scheme).

exceed the amount of the initial transfer." *Merkin*, 515 B.R. at 149. There is no dispute that the

Trustee is limited to "a single satisfaction" under Section 550(a), 11 U.S.C. § 550(d), but the

Trustee "can recover from any combination of [transferees]" up to the amount avoided, *Helms v.*

*Metropolitan Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019), *aff'd*, 633

B.R. 332 (N.D. Ill. 2021), and under Section 550(a), "a trustee may recover [an avoided] transfer

from a subsequent transferee of those funds, without the necessity for allocation among all the

subsequent transferees," *CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*, 393 B.R. 306, 333

(Bankr. W.D.N.Y. 2008). Thus, until the Trustee recovers the full amount of the approximately

$3 billion in fraudulent transfers received by Sentry, he may simultaneously seek recovery from

Lloyds in this action and from defendants in other actions, even an aggregate amount that exceeds

the initial transfers. *Fairfield Inv. Fund*, 2021 WL 3477479, at *12 (holding the defendant's

arguments regarding "double recovery" and the Trustee's purported limitations under Section

550(d) are "to be determined at a later stage of the litigation").

## CONCLUSION

For all the foregoing reasons, the Trustee respectfully requests that the Court deny Lloyds'

Motion in its entirety.

Dated:   April 15, 2022                     /s/ Nicholas J. Cremona
         New York, New York                 Baker & Hostetler LLP
                                            45 Rockefeller Plaza
                                            New York, New York 10111
                                            Telephone: (212) 589-4200
                                            Facsimile: (212) 589-4201
                                            David J. Sheehan
                                            Email: dsheehan@bakerlaw.com
                                            Nicholas J. Cremona
                                            Email: ncremona@bakerlaw.com
                                            Marshall J. Mattera
                                            Email:  mmattera@bakerlaw.com
                                            Alexa T. Bordner
                                            Email:  abordner@bakerlaw.com
                                            Jessica A. Huse
                                            Email:  jhuse@bakerlaw.com

                                            *Attorneys for Irving H. Picard, Trustee for the
                                            Substantively Consolidated SIPA Liquidation
                                            of Bernard L. Madoff Investment Securities
                                            LLC and the Chapter 7 Estate of Bernard L.
                                            Madoff*