**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Chapter 7 Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (CGM) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and the Chapter 7 Estate of Bernard L. Madoff, <br><br> Plaintiff, <br><br> v. <br><br> BORDIER & CIE, <br><br> Defendant. | Adv. Pro. No. 12-01695 (CGM) |

## TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT BORDIER & CIE'S MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS .......................................................................................................3

I.     THE BLMIS PONZI SCHEME.........................................................................................3

II.    BORDIER AND ITS INVESTMENTS IN SENTRY.......................................................4

ARGUMENT ..........................................................................................................................4

I.     THE COMPLAINT PLEADS THAT BORDIER RECEIVED BLMIS
CUSTOMER PROPERTY UNDER SECTION 550(A) ....................................................5

     A.    Bordier Misstates the Trustee's Pleading Burden...................................................6

     B.    Bordier's Tracing Arguments Fail on a Motion to Dismiss ...................................8

     C.    Bordier's Claims of Double Recovery Are Premature ..........................................12

II.    SECTION 546(E) DOES NOT BAR RECOVERY FROM BORDIER ...........................13

     A.    Sentry's Actual Knowledge of Madoff's Fraud Bars Application of
Section 546(e) .....................................................................................................14

     B.    Bordier Is Precluded from Relitigating the Actual Knowledge Exception............15

     C.    Bordier Is Precluded from Arguing that Section 546(e) Applies
Independently to Recovery Actions......................................................................16

III.   THE COMPLAINT SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE
SENTRY INITIAL TRANSFERS..................................................................................20

CONCLUSION.....................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
   599 B.R. 730 (Bankr. S.D.N.Y. 2019) ...........................................................................5, 6, 10

*Am. Casein Co. v. Geiger (In re Geiger)*,
   446 B.R. 670 (Bankr. E.D. Pa. 2010) ......................................................................................20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)....................................................................................................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................................................5

*Cargo Partner AG v Albatrons, Inc.*,
   352 F.3d 41 (2d Cir. 2003)..........................................................................................................4

*CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*,
   393 B.R. 306 (Bankr. W.D.N.Y. 2008) ....................................................................................12

*DeMasi v. Benefico*,
   567 F. Supp. 2d 449 (S.D.N.Y. 2008)......................................................................................21

*Dery v. United States (In re Bridge)*,
   90 B.R. 839 (Bankr. E.D. Mich. 1988) ....................................................................................13

*Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.)*,
   343 B.R. 75 (Bankr. S.D.N.Y. 2006), *rev'd on other grounds*, 388 B.R. 489
   (S.D.N.Y. 2008) .......................................................................................................................20

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
   651 F.3d 329 (2d Cir. 2011)......................................................................................................18

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
   Adv. Pro. No. 10-13164 (SMB), 2020 WL 7345988 (Bankr. S.D.N.Y. Dec.
   14, 2020) ..................................................................................................................................16

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
   596 B.R. 275 (Bankr. S.D.N.Y. 2018) .....................................................................................16

*Ferrari v. Cnty. of Suffolk*,
   790 F. Supp. 2d 34 (E.D.N.Y. 2011) ........................................................................................21

*Fowler v. Caliber Home Loans, Inc.*,
   277 F. Supp. 3d 1324 (S.D. Fla. 2016) ..................................................................9

*Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*,
   Adv. Pro. Nos. 10-03493 (SMB), 10-05447 (SMB), 2014 WL 47774 (Bankr.
   S.D.N.Y. Jan. 3, 2014) ...........................................................................................11

*Helms v. Metro. Life Ins. Co. (In re O'Malley)*,
   601 B.R. 629 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021) ...........12

*IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*,
   408 F.3d 689 (11th Cir. 2005) ...............................................................................13

*In re J.P. Jeanneret Assoc., Inc.*,
   769 F. Supp. 2d 340 (S.D.N.Y. 2011).......................................................................4

*Kelley v. Westford Special Situations Master Fund, L.P.*,
   No. 19-cv-1073, 2020 WL 3077151 (D. Minn. June 10, 2020) ...................8, 10, 11

*Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*,
   No. 07-MD-1902 (JSR), 2013 WL 12191844 (S.D.N.Y. Mar. 25, 2013) ...............14

*Picard v. Avellino (In re BLMIS)*,
   557 B.R. 89 (Bankr. S.D.N.Y. 2016) ......................................................................15

*Picard v. BNP Paribas S.A. (In re BLMIS)*,
   594 B.R. 167 (Bankr. S.D.N.Y. 2018) ......................................................17, 18, 19

*Picard v. Ceretti (In re BLMIS)*,
   Adv. Pro. No. 09-01161 (SMB), 2015 WL 4734749 (Bankr. S.D.N.Y. Aug.
   11, 2015) ................................................................................................................15

*Picard v. Charles Ellerin Revocable Tr. (In re BLMIS)*,
   Adv. Pro. Nos. 10-04398 (BRL), 10-05219 (BRL), 2012 WL 892514 (Bankr.
   S.D.N.Y. Mar. 14, 2012)................................................................................ *passim*

*Picard v. Citibank, N.A. (In re BLMIS)*,
   12 4th 171, 179 (2d. Cir. 2021)................................................................................3

*Picard v. Cohen*,
   Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296 (Bankr. S.D.N.Y. Apr.
   25, 2016) ................................................................................................................16

*Picard v. Cohmad Sec. Corp. (In re BLMIS)*,
   454 B.R. 317 (Bankr. S.D.N.Y. 2011)......................................................................11

*Picard v. Fairfield Investment Fund Ltd. (In re BLMIS)*,
  Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6,
  2021) ................................................................................................................... *passim*

*Picard v. Ida Fishman Revocable Trust (In re BLMIS)*,
  773 F.3d 411 (2d Cir. 2014)................................................................................16, 18

*Picard v. Lowrey (In re BLMIS)*,
  596 B.R. 451 (S.D.N.Y. 2019), *aff'd sub nom. Picard v. Gettinger (In re
  BLMIS)*, 976 F.3d 184 (2d Cir. 2020)................................................................15, 21

*Picard v. Magnify, Inc. (In re BLMIS)*,
  583 B.R. 829 (Bankr. S.D.N.Y. 2018) ........................................................................15

*Picard v. Mayer (In re BLMIS)*,
  Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435 (Bankr. S.D.N.Y. Oct.
  27, 2021) .......................................................................................................................6

*Picard v. Mendelow (In re BLMIS)*,
  560 B.R. 208 (Bankr. S.D.N.Y. 2016) ........................................................................15

*Picard v. Merkin (In re BLMIS)*,
  515 B.R. 117 (Bankr. S.D.N.Y. 2014) . No .................................................. *passim*

*Picard v. Merkin (In re BLMIS)*,
  581 B.R. 370 (Bankr. S.D.N.Y. 2017) ..................................................................9, 11

*Picard v. Shapiro (In re BLMIS)*,
  542 B.R. 100 (Bankr. S.D.N.Y. 2015) ..................................................................7, 15

*In re Picard*,
  917 F.3d 85 (2d Cir. 2019).........................................................................................17

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir. 2007)..........................................................................................4

*Rothman v. Gregor*,
  220 F.3d 81 (2d Cir. 2000).....................................................................................2, 21

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
  379 B.R. 5 (Bankr. E.D.N.Y. 2007)....................................................................6, 7, 8

*SIPC v. BLMIS (In re Bernard L. Madoff)*,
  531 B.R. 439 (Bankr. S.D.N.Y. 2015) ........................................................................15

*SIPC v. BLMIS (In re Madoff Sec.)*,
  501 B.R. 26 (S.D.N.Y. 2013)...........................................................................17, 20, 21

iv

*SIPC v. BLMIS (In re Madoff Sec.)*,
   No. 12-MC-115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15,
   2013) .....................................................................................................................13, 17, 18, 19

*Solution Tr. v. 2100 Grand LLC (In re AWTR Liquidation Inc.)*,
   548 B.R. 300 (Bankr. C.D. Cal. 2016).......................................................................................9

*Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*,
   239 F.3d 365, 2000 WL 1741550 (5th Cir. Dec. 11, 2000)......................................................13

*SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*,
   620 B.R. 505 (Bankr. S.D.N.Y. 2020) ......................................................................................18

*Taylor v. Sturgell*,
   553 U.S. 880 (2008)............................................................................................................14, 15

*United States v. Henshaw*,
   388 F.3d 738 (10th Cir. 2004) ..............................................................................................9, 13

*In re Viropharma, Inc.*,
   No. CIV.A. 02-1627, 2003 WL 1824914 (E.D. Pa. Apr. 7, 2003) ...........................................9

## Statutes

11 U.S.C. § 546(e) ............................................................................................................... *passim*

11 U.S.C. § 548(a)(1)(A) ...............................................................................................................13, 17

11 U.S.C. § 550.............................................................................................................................16, 17

11 U.S.C. § 550(a) ............................................................................................................... *passim*

11 U.S.C. § 550(a)(2)................................................................................................................................5

11 U.S.C § 550(d) ...............................................................................................................3, 12, 13

## Rules

Fed. R. Bankr. P. 7012 .................................................................................................................4

Fed. R. Civ. P. 8 ............................................................................................................................2

Fed. R. Civ. P. 8(a)(2) ...............................................................................................................5, 20

Fed. R. Civ. P. 10(c) ....................................................................................................................20

Fed. R. Civ. P. 12(b)(6)...........................................................................................................1, 4, 9

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff, respectfully submits this memorandum of law in opposition to the motion brought by defendant Bordier & Cie ("Bordier") to dismiss the Trustee's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion").

## PRELIMINARY STATEMENT

As part of the Trustee's continuing efforts to recover BLMIS customer property that was stolen as part of Madoff's Ponzi scheme, this action seeks to recover approximately $8 million of customer property that Bordier received from Fairfield Sentry Limited ("Sentry"). Bordier has moved to dismiss on three grounds, arguing that (i) Bordier did not receive any transfers of customer property, (ii) the safe harbor under Section 546(e) bars avoidance and recovery, and (iii) the Trustee has failed to provide sufficient notice of his claims. All of Bordier's arguments fail.

The Trustee has plausibly alleged that Bordier received customer property under Section 550(a) by outlining the relevant pathways through which customer property was transferred from BLMIS to Sentry and subsequently to Bordier. The Trustee has also alleged the necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer Bordier received. At this stage of the litigation, nothing more is required. Bordier nevertheless argues that the Trustee must show a dollar-for-dollar accounting at the pleading stage and argues that the Trustee's claims are implausible under a fact-based and undisclosed tracing methodology. Bordier's arguments are plainly inappropriate on a motion to dismiss and run contrary to well established case law in this SIPA liquidation proceeding.

The Trustee also has plausibly alleged the avoidability of the initial transfers from BLMIS based on Sentry's actual knowledge of fraud, and therefore the safe harbor under Section 546(e) is inapplicable and does not bar recovery from Bordier.  In its Motion, Bordier argues that there is no actual knowledge exception and, in the alternative, Bordier's knowledge as a subsequent transferee should determine the avoidability of the initial transfers from BLMIS.  These arguments conflict with the plain language of the statute and precedent in this liquidation establishing that Section 546(e) does not independently safe harbor the recovery of avoidable fraudulent transfers from a subsequent transferee.

Finally, the Trustee's Complaint provides a "short and plain statement" showing that the Trustee is entitled to relief.  Bordier objects that the Trustee has violated Federal Civil Procedure Rule 8 by incorporating by reference his complaint against Sentry and other related parties.[1]  Not only does this argument conflict with precedent from the District Court, this Court may take judicial notice of the Trustee's Second Amended Complaint and the Court's own opinion in *Picard v. Fairfield Investment Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021), in which the Court held that the Second Amended Complaint plausibly alleged Sentry's actual knowledge of fraud.

Because Bordier's arguments lack merit, the Trustee respectfully requests that the Court deny Bordier's Motion.

---

[1] After the Trustee filed his Complaint against Bordier, the Trustee filed a Second Amended Complaint against the Fairfield Greenwich Group ("Fairfield" or "FGG") defendants.  *See* Second Am. Compl., *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286.  This Court may take judicial notice of the Trustee's Second Amended Complaint.  *See Rothman v. Gregor*, 220 F.3d 81, 91–92 (2d Cir. 2000) (taking judicial notice of later filed complaint in related proceeding).

**STATEMENT OF FACTS**

I.    **THE BLMIS PONZI SCHEME**

Madoff founded and operated BLMIS from New York until its collapse in 2008.  Compl.

¶ 23, ECF No. 1.[2]  BLMIS had three principal business units: (i) a proprietary trading business;

(ii) a market-making business; and (iii) an investment advisory business (the "IA Business").  *Id.*

For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy (the

"SSC Strategy"), which involved (a) investing in a basket of common stocks from the Standard &

Poor's 100 Index, (b) buying put options and selling call options to hedge against price changes in

the underlying basket of stocks, and (c) purchasing U.S. Treasury bills when the money was out

of the market.  *Id.* ¶¶ 24–25.  In reality, BLMIS operated a Ponzi scheme through its IA Business.

*Id.* ¶ 26.  On December 11, 2008, Madoff's fraud was publicly revealed, and he was arrested for

criminal violations of federal securities laws, including securities fraud, investment adviser fraud,

and mail and wire fraud.  *Id.* ¶ 11.

The extent of damage Madoff caused was made possible by BLMIS "feeder funds"—large

investment funds created for the express purpose of funneling their investors' funds into BLMIS.

*See Picard v. Citibank, N.A. (In re BLMIS)*, 12 4th 171, 179 (2d. Cir. 2021).  Bordier invested in

a number of these feeder funds, including Sentry, Kingate Global Fund, Ltd. ("Kingate Global"),

and Kingate Euro Fund, Ltd. ("Kingate Euro," and together with Kingate Global, the "Kingate

Funds").[3]  *Id.* ¶ 2.  Each of these feeder funds had customer accounts with BLMIS's IA Business

and invested more than 95% of their assets with BLMIS.  *Id.* ¶ 2.

---

[2] Unless otherwise indicated, all ECF references herein refer to the case captioned *Picard v. Bordier & Cie*, Adv. Pro. No. 12-01695 (CGM) (Bankr. S.D.N.Y.).

[3] The Trustee is not seeking to recover the subsequent transfers Bordier received from the Kingate Funds because of the single satisfaction rule under 11 U.S.C § 550(d).  *See Picard v. Ceretti (In re BLMIS)*, Adv. Pro. No. 09-01161 (SMB) (Bankr. S.D.N.Y. Aug. 6, 2019), ECF No. 417.

## II.    BORDIER AND ITS INVESTMENTS IN SENTRY

Bordier is a Swiss private bank located in Geneva, Switzerland. *Id.* ¶¶ 3, 22.  In his Complaint, the Trustee alleged that by investing in Sentry, Bordier knowingly accepted the rights, benefits, and privileges of transacting business in New York, *id.* ¶ 7, and in its Motion, Bordier has not challenged the Court's jurisdiction.  The Trustee also alleged that Bordier knowingly received subsequent transfers from BLMIS by withdrawing money from Sentry.  *Id.* ¶ 6.

Prior to BLMIS's collapse, Bordier received ten transfers from Sentry between June 2003 and May 2008 that totaled approximately $8 million.  *Id.* ¶ 41, Ex. C.  For each of the ten transfers, the Trustee's Complaint sets forth the subsequent transferor (Sentry), the subsequent transferee (Bordier), the date of the subsequent transfer, and the amount of the subsequent transfer.  *Id.*, Ex. C.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Sentry and related defendants to avoid and recover fraudulent transfers of customer property in the amount of approximately $3 billion.  *Id.* ¶ 35.  In 2011, the Trustee settled with Sentry and other parties.  Compl. ¶ 40.  As part of the settlement, Sentry consented to a judgment in the amount of $3.054 billion but repaid only $70 million to the BLMIS customer property estate.  *Id.*  The Trustee then commenced a number of adversary proceedings against defendants like Bordier to recover the approximately $3 billion in missing customer property.

## ARGUMENT

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), applicable under Federal Rule of Bankruptcy Procedure 7012, "the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences" in the Trustee's favor. *In re J.P. Jeanneret Assoc., Inc.*, 769 F. Supp. 2d 340, 353 (S.D.N.Y. 2011) (citing *Cargo Partner AG v Albatrons, Inc.*, 352 F.3d 41, 44 (2d Cir. 2003); *Roth*

*v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007)).  To survive the motion to dismiss, the pleading

must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2).  The allegations need only meet the "plausibility" standard, such that they

"'nudge[] [the] claims' . . . 'across the line from conceivable to plausible.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 680 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is

facially plausible where "the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (citation

omitted).

## I.    THE COMPLAINT PLEADS THAT BORDIER RECEIVED BLMIS CUSTOMER PROPERTY UNDER SECTION 550(A)

The Trustee's Complaint states a claim for recovery under Section 550(a)(2) by plausibly

alleging that Bordier received subsequent transfers of stolen BLMIS customer property.  To plead

a subsequent transfer claim, the Trustee must allege facts that support an inference "that the funds

at issue originated with the debtor."  *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149–50

(Bankr. S.D.N.Y. 2014) ("*Merkin I*").  No tracing analysis is required, as the pleading burden "is

not so onerous as to require 'dollar-for-dollar accounting' of 'the exact funds' at issue."  *Id.* at 150

(quoting *Picard v. Charles Ellerin Revocable Tr. (In re BLMIS)*, Adv. Pro. Nos. 10-04398 (BRL),

10-05219 (BRL), 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012)).  Rather, "the Trustee

need only allege sufficient facts to show the relevant pathways through which the funds were

transferred from BLMIS to [the subsequent transferee]."  *Charles Ellerin Revocable Tr.*, 2012 WL

892514, at *3; *see also 45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,

599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019).  In addition, the Trustee must allege "'the necessary

vital statistics—the who, when, and how much' of the purported transfers to establish an entity as

a subsequent transferee of the funds." *Merkin I*, 515 B.R. at 150 (quoting *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 32 (Bankr. E.D.N.Y. 2007)).

The Trustee's Complaint meets these requirements. The Complaint alleges that Bordier received transfers, identified by date and amount, from Sentry, and that Sentry invested substantially all of its funds with BLMIS. Compl. ¶¶ 2, 41, Ex. C. Thus, the Complaint plausibly alleges that Bordier received subsequent transfers of customer property by (a) outlining the relevant pathways through which customer property was transferred from BLMIS to Sentry and subsequently to Bordier and (b) providing the necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer. Nothing more is required. *See, e.g.*, *Picard v. Mayer (In re BLMIS)*, Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021) (rejecting argument that subsequent transfer claim was not pled "with enough specificity as to how and what [defendant] received" and holding complaint "contains sufficient information regarding which transfers the Trustee is seeking to recover").

## A.    Bordier Misstates the Trustee's Pleading Burden

Unable to argue that the Trustee fails to meet the relevant pleading burden, Bordier argues for a new one, asserting that the Trustee must tie each subsequent transfer Bordier received to a specific initial transfer from BLMIS. Motion at 10. In *Merkin I*, however, the Court rejected this very argument, denying the defendants' motion to dismiss subsequent transfer claims even though the complaint did "not connect each of the subsequent transfers with an initial, voidable transfer emanating from BLMIS." 515 B.R. at 150, *see also In re 45 John Lofts, LLC*, 599 B.R. at 747 (finding no "requirement to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss"). And to the extent Bordier is arguing that the Trustee must allege more than the "who, when, and how much of the purported transfer," and instead must detail what portion of the subsequent transfer comprises customer property, this is also wrong. *See Charles*

6

*Ellerin Revocable Tr.*, 2012 WL 892514, at *3 (holding at summary judgment, "it is not necessary for the Trustee to specify what portion of the Subsequent Transfers to [defendant] was derived from BLMIS"); *see also In re Allou Distribs., Inc.*, 379 B.R. at 30 (finding "if dollar-for-dollar accounting is not required at the proof stage, then surely it is not required at the pleading stage either").

To support its argument that the Trustee has failed to allege facts showing that the subsequent transfers to Bordier were comprised of customer property, Bordier erroneously relies on *Picard v. Shapiro (In re BLMIS)*, 542 B.R. 100 (Bankr. S.D.N.Y. 2015). *See* Motion at 10. Bordier analogizes this case to *Shapiro* and contends "[a]s in *Shapiro*, the Trustee's Complaint fails to plead the 'necessary vital statistics.'" *Id.* at 10. This is factually and legally incorrect.

In *Shapiro*, the Trustee alleged that certain trusts and members of the Shapiro family received approximately $54 million in fraudulent transfers from BLMIS, and "upon information and belief" these defendants subsequently transferred a portion of this same amount to other defendants. 542 B.R. at 119. The Court dismissed the subsequent transfer claim because the complaint did not detail any of the necessary vital statistics of the subsequent transfers.[4] *Id.* There were no allegations regarding the specific initial transferees, the specific subsequent transferees, or the dates or amounts of the subsequent transfers. *Id.* In fact, the complaint in *Shapiro* failed to "plausibly imply that the initial transferees even made subsequent transfers," alleging only that "a portion" was transferred without any evidence of any subsequent transfers. *Id.* Consequently, this Court granted defendants' motion to dismiss the subsequent transfer claim. *Id.*

---

[4] In quoting from the *Shapiro* complaint, the Court noted that the Trustee only alleged: "'Based on the Trustee's investigation to date, the Initial Transferee Defendants subsequently transferred a portion of the $53,778,486 received from BLMIS' to the Subsequent Transferee Defendants." 542 B.R. at 119.

Unlike in *Shapiro*, the Complaint in this action identifies the specific subsequent transfers from Sentry to Bordier by detailing the "necessary vital statistics" for each transfer Bordier received. *See In re Allou Distribs., Inc.*, 379 B.R. at 32. Moreover, the Complaint alleges additional facts regarding Bordier's status as an investor in Sentry, including a subscription agreement, wire transfers, and communications with Sentry regarding its investment and redemption. *See* Compl. ¶ 7. For these important reasons, the facts alleged here are distinguishably much more robust and detailed than in *Shapiro* and provide the details found missing there.

### B.    Bordier's Tracing Arguments Fail on a Motion to Dismiss

Bordier's other fact-based tracing arguments fare no better and are inappropriate on a motion to dismiss. First, Bordier claims the transfers it received from Sentry are comprised of subscriptions from other investors. Motion at 11–12. In other words, Bordier argues that Sentry commingled customer property with other funds, and this commingling defeats the Trustee's ability to trace the transfer of customer property from BLMIS because the "money could not possibly have originated with BLMIS." *Id*. at 12. Again, Bordier is wrong. "The law does not place such a difficult burden on trustees. The commingling of legitimate funds with funds transferred from the debtor does not defeat tracing." *Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-cv-1073 (ECT/KMM), 2020 WL 3077151, at *4 (D. Minn. June 10, 2020) (citing *Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *3) (citation omitted).

Second, Bordier claims that Sentry paid other investors with the customer property it received from BLMIS prior to making any transfers to Bordier.[5]  Motion at 15.  However, Bordier does not disclose what tracing methodology or methodologies it relies upon to reach this conclusion.  And why not?  Because it is for this Court to decide—after fact and expert discovery— the appropriate tracing methodology under the circumstances of this case.[6]  *See Picard v. Merkin (In re BLMIS)*, 581 B.R. 370, 386 (Bankr. S.D.N.Y. 2017) ("*Merkin II*") ("[T]he Court's selection of an appropriate methodology is committed to the Court's discretion."); *Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *3, n.7 ("Courts have broad discretion to determine which monies of commingled funds derive from fraudulent sources." (citing *United States v. Henshaw*, 388 F.3d 738, 741 (10th Cir. 2004) (finding "courts exercise case-specific judgment to select the method best suited to achieve a fair and equitable result on the facts before them"))).

Third, Bordier's assertion that Sentry exhausted all BLMIS customer property on hand before Bordier redeemed relies on the factual assumption that every subsequent transfer that preceded Bordier's transfers was sourced solely by customer property.  *See* Motion at 15–16.  In

---

[5] The declaration of Bordier's counsel (Pincus Decl.), which attaches exhibits totaling almost nine hundred pages, includes several "calculations" of various transfers from BLMIS to Sentry and Sentry to its investors. *See* Pincus Decl. ¶¶ 9–11, ECF No. 86.  These calculations add and subtract transfers from over 90 proceedings, in amounts that have in some cases changed since the filing of the Trustee's complaints and with no explanation for the methodology behind the calculations.  Bordier's undefined tracing methodology, which it uses to contest the transfers in this proceeding, is nothing more than "an attempt to interject improper expert testimony into a Rule 12(b)(6) context." *Fowler v. Caliber Home Loans, Inc.*, 277 F. Supp. 3d 1324, 1331 (S.D. Fla. 2016) (declining to consider expert testimony in a motion to dismiss); *see also Solution Tr. v. 2100 Grand LLC (In re AWTR Liquidation Inc.)*, 548 B.R. 300, 334 (Bankr. C.D. Cal. 2016) (assessment of valuation that "almost certainly will require expert testimony" is inappropriate for a motion to dismiss); *In re Viropharma, Inc.*, No. CIV.A. 02-1627, 2003 WL 1824914, at *2 (E.D. Pa. Apr. 7, 2003) ("The [party's] submission of an expert report at [the motion to dismiss] stage is entirely improper.").

[6] This Court has recognized different tracing methodologies offered by the Trustee in this liquidation to assist the trier of fact, including: (1) Last In, First Out (LIFO), (2) First In, First Out (FIFO), (3) Lowest Intermediation Balance Rule (LIBR), (4) Restated Tracing Rules (Restated LIBR), and (5) Proportionality. These "methodologies reflect legal rules or fictions designed to assist a Court in dealing with an improper transfer form a commingled fund." *Merkin II*, 581 B.R. at 386.

support, Bordier relies entirely on exhibits to pleadings from other adversary proceedings. *Id.* at 15; *see also* Pincus Decl., Exs. 4–6. Those exhibits, however, do not establish this fact. Furthermore, at this stage of the proceedings, the Trustee is not required to plead, much less establish, that an alleged subsequent transfer consisted entirely of customer property. *See Kelley*, 2020 WL 3077151, at *4 (holding where debtors' funds are commingled with "cash from new subscribing investors," a trustee is not required to establish that transfers "originated solely" with the debtor or even to account for "the exact funds at issue" on summary judgment); *In re 45 John Lofts, LLC*, 599 B.R. at 746–47 (rejecting argument "that Plaintiff generically, and without factual support, alleged that every transfer out of" the initial transferee's commingled account was made with debtor property because the plaintiff is not required "to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss" (internal quotation marks omitted)). Because the Trustee's exhibits do not establish that each alleged prior transfer was comprised solely of BLMIS customer property, and because the Trustee is not required to do so at this stage of the proceeding, there is nothing to support Bordier's factual contention that none of its ten transfers contained any customer property.

Fourth, Bordier argues that it could not have received any customer property because of the amount of time that elapsed between Sentry's receipt of certain initial transfers from BLMIS and Sentry's subsequent transfers to Bordier.[7] Motion at 15. This is a variation of Bordier's tracing argument that Sentry transferred BLMIS's customer property to other investors. Again, this argument is inappropriate on a motion to dismiss. And even if it may prove more difficult for the Trustee to trace all of the subsequent transfers sought here, this is not grounds for dismissal at

---

[7] To the extent the Court finds it relevant, Bordier conveniently ignores many of the alleged transfers in the Trustee's Complaint where the initial and subsequent transfers are close in time.

the pleading stage. *See Merkin I*, 515 B.R. at 152 (finding it "premature to cut off the Trustee's opportunity to satisfy his [tracing] burden on a motion to dismiss" merely because tracing may prove difficult); *Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*, Adv. Pro. Nos. 10-03493 (SMB), 10-05447 (SMB), 2014 WL 47774, at *15 (Bankr. S.D.N.Y. Jan. 3, 2014) ("[T]he [subsequent transferees'] speculation that tracing is 'not likely' to reveal a subsequent transfer . . . hardly justifies granting [their cross-motion for summary judgment].").

Finally, without discovery, Bordier's tracing arguments are entirely premature. The Trustee is a stranger to the transactions between Sentry and Bordier and is entitled to discovery on this issue. "[I]n a case such as this one, where 'the Trustee's lack of personal knowledge is compounded with complicated issues and transactions [that] extend over lengthy periods of time, the trustee's handicap increases,' and 'even greater latitude' should be afforded." *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (citation omitted). This is one reason why this Court in *Merkin I* denied the defendants' motion to dismiss, finding "[t]he subsequent transfer claim must ultimately be proved through the books and records of the defendants." 515 B.R. at 151. And even after fact discovery, expert opinion is necessary to determine what portion of the subsequent transfer stemmed from the initial transfer where the subsequent transfers originated from commingled accounts. *Merkin II*, 581 B.R. at 386; *see also Kelley*, 2020 WL 3077151, at *5 (denying summary judgment because trustee introduced expert report and associated documents from which a jury could infer that defendants received subsequent transfers of customer property).

Bordier attempts to distinguish this Court's decision denying the motion to dismiss in *Merkin I*, arguing that case required the defendants' records to address commingling among defendants and, here, "for over a decade, the Trustee has every piece of data he needs to determine"

which subsequent transfers contain customer property.  Motion at 13.  This is not persuasive.  The

commingling among the defendants in *Merkin I* is not substantively different from the purported

commingling at Sentry—each allegedly involved non-debtor property.  And contrary to Bordier's

unsupported assertion, the Trustee does not have all of Sentry's books and records, and discovery

in the Trustee's actions against the FGG defendants continues.  *See, e.g.*, Stipulated Case Mgmt.

Order, *Picard v. Fairfield Inv. Fund Ltd.*, Ad. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Dec.

6, 2021), ECF No. 353 (setting November 22, 2022 deadline for fact discovery and August 22,

2023 deadline for expert discovery).  There is no doubt that Bordier has records it can provide on

these same transactions.

### C.    Bordier's Claims of Double Recovery Are Premature

Bordier argues the Trustee's claims are "facially implausible" because the Trustee is

seeking more money from all of Sentry's subsequent transferees than the fund withdrew from

BLMIS.  Motion at 11.  There is no dispute that the Trustee is limited to "a single satisfaction"

under Section 550(a).   11 U.S.C. § 550(d).   However, the Trustee "can recover from any

combination of [transferees]" up to the amount avoided.  *Helms v. Metro. Life Ins. Co. (In re*

*O'Malley)*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021).  Under

Section 550(a), "a trustee may recover [an avoided] transfer from a subsequent transferee of those

funds, without the necessity for allocation among all [the] subsequent transferees."  *CNB Int'l Inc.*

*v. Kelleher (In re CNB Int'l, Inc.)*, 393 B.R. 306, 333 (Bankr. W.D.N.Y. 2008).  Thus, until the

Trustee recovers the full amount of the approximately $3 billion in fraudulent transfers received

by Sentry, the Trustee may simultaneously seek recovery from Bordier in this action and from

defendants in other actions, even in an aggregate amount that exceeds initial transfers.  Moreover,

the Court already has held that this type of argument is inappropriate on a motion to dismiss.  *See*

*Fairfield Inv. Fund*, 2021 WL 3477479, at *12 (holding defendant's "double recovery" arguments

and the Trustee's purported limitations under Section 550(d) are "to be determined at a later stage in the litigation").

This is not a case where the Court should cut off at the pleading stage the Trustee's ability to trace the subsequent transfers. The circumstances of the transfers, including the purposes of the transfers and the parties' intent, are relevant to equitable principles applied to tracing. *See Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 239 F.3d 365, 2000 WL 1741550, at *5 (5th Cir. Dec. 11, 2000) (finding the court's "task here is to 'look beyond the particular transfers in question to the entire circumstance of the transactions'" (citation omitted)).

Because money is fungible, "[t]he goal of tracing is not to trace anything at all in many cases, but rather to serve as an equitable substitute for the impossibility of specific identification." *Henshaw*, 388 F.3d at 741 (citation omitted). "It is undeniable that equity will follow a fund through any number of transmutations, and preserve it for the owner as long as it can be identified." *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 709 (11th Cir. 2005) (quoting *Dery v. United States (In re Bridge)*, 90 B.R. 839, 848 (Bankr. E.D. Mich. 1988)). Under these circumstances, equity weighs against cutting the Trustee off at the pleading stage.

## II.    SECTION 546(E) DOES NOT BAR RECOVERY FROM BORDIER

Section 546(e) provides a safe harbor for the avoidance of certain initial transfers made outside the two-year period referenced in Section 548(a)(1)(A). *See* 11 U.S.C. § 546(e) ("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title." (emphasis added)). However, in *SIPC v. BLMIS (In re Madoff Securities)*, the District Court held that an initial transferee's actual knowledge of Madoff's fraud precludes application of the safe harbor, thereby allowing the Trustee to avoid transfers made by BLMIS prior to the two-year period. No. 12-MC-115 (JSR), 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*").

13

Bordier now argues that Section 546(e) bars all of the Trustee's claims to avoid or recover transfers made by BLMIS prior to the two-year period, even though the Trustee has pled Sentry's actual knowledge. This argument has already been rejected in other adversary proceedings and is based on a misreading of Section 546(e) and the District Court's decision in *Cohmad*.

### A. Sentry's Actual Knowledge of Madoff's Fraud Bars Application of Section 546(e)

In its Motion, Bordier sets forth at great length the requirements of Section 546(e) and how they are supposedly met in this case with respect to the initial transfers from BLMIS. None of this matters. As Bordier concedes, this Court has previously held that the Trustee has pled Sentry's actual knowledge of fraud.[8] *See* Motion at 22, n.15; *Fairfield Inv. Fund*, 2021 WL 3477479, at *4–5. As such, Section 546(e) does not bar the avoidance of initial transfers made to Sentry, and those transfers may be recovered from Bordier regardless of whether Sentry and Bordier qualify as financial institutions, whether their agreements qualify as securities contracts, or whether their transfers qualify as settlement payments.

Though not necessary for the Court to determine in deciding its Motion, Bordier nonetheless mischaracterizes the Trustee's relationship with the Fairfield Liquidators as a "substantive legal relationship" in an effort to trigger nonparty issue preclusion as it pertains to Sentry's qualification as a "financial institution" within the meaning of Section 546(e). Motion at 19 n.13. However, merely sharing an interest in recovering customer property hardly constitutes the sort of "substantive legal relationship" required under *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008), to establish nonparty issue preclusion. *See Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*,

---

[8] Although Bordier says it disagrees with this Court's opinion in *Fairfield Investment Fund*, Motion at 22, n.15, not even Bordier argues in its Motion that Sentry had good faith or that the Trustee has not plausibly alleged Sentry's actual knowledge of Madoff's fraud.

No. 07-MD-1902 (JSR), 2013 WL 12191844, at *13 (S.D.N.Y. Mar. 25, 2013) (emphasizing "preclusion of nonparties is an *exceptional* situation, contrary to the basic presumption that every party is entitled to its day in court"). Moreover, given that nonparty preclusion is an affirmative defense, raising it in this Motion is inappropriate. *See Taylor*, 553 U.S. at 907.

### B.    Bordier Is Precluded from Relitigating the Actual Knowledge Exception

Bordier is precluded from arguing that *Cohmad* was wrongly decided and from relitigating whether actual knowledge bars the application of Section 546(e). The District Court issued *Cohmad* following consolidated proceedings on the application of Section 546(e). As Bordier concedes, *Cohmad* held that a transferee with actual knowledge of Madoff's fraud cannot claim the protections of Section 546(e). Motion at 23–24. The District Court then remanded to this Court, and this Court has since applied the actual knowledge "exception" on numerous occasions.[9]

Bordier participated in the District Court proceedings. *See* Mot. to Withdraw the Reference, ECF No. 6 (raising Section 546(e) as grounds for withdrawal). Given its participation, Bordier is bound by *Cohmad*. *See SIPC v. BLMIS (In re Bernard L. Madoff)*, 531 B.R. 439, 466 (Bankr. S.D.N.Y. 2015) ("Those moving defendants that participated in the withdrawal of the reference of the antecedent debt/value issue have had their day in court and Judge Rakoff's decisions are law of the case."); *Picard v. Lowrey (In re BLMIS)*, 596 B.R. 451, 464 (S.D.N.Y. 2019) (law of the case doctrine foreclosed relitigating issue where the District Court "considered and rejected the very arguments that defendants now make"), *aff'd sub nom. Picard v. Gettinger*

---

[9] *See, e.g.*, *Fairfield Inv. Fund*, 2021 WL 3477479, at *4 (applying actual knowledge exception); Bench Ruling on Mot. to Dismiss, *Picard v. Square One Fund Ltd.*, Adv. Pro. No. 10-04330 (Bankr. S.D.N.Y. May 29, 2018), ECF No. 181 (same); *Picard v. Magnify, Inc. (In re BLMIS)*, 583 B.R. 829, 841 (Bankr. S.D.N.Y. 2018) (same); *Picard v. Mendelow (In re BLMIS)*, 560 B.R. 208 (Bankr. S.D.N.Y. 2016) (same); *Picard v. Avellino (In re BLMIS)*, 557 B.R. 89, 112 (Bankr. S.D.N.Y. 2016) (same); *Shapiro*, 542 B.R. at 100 (same); *Picard v. Ceretti (In re BLMIS)*, Adv. Pro. No. 09-01161 (SMB), 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015) (same); *Merkin I*, 515 B.R. at 117 (same).

*(In re BLMIS)*, 976 F.3d 184 (2d Cir. 2020). Bordier did not seek leave to appeal the *Cohmad* decision.

In its Motion, Bordier relies heavily on *Picard v. Ida Fishman Revocable Trust (In re BLMIS)*, 773 F.3d 411 (2d Cir. 2014). Motion at 2–3, 17, 21, 22, 23 n.17. However, as this Court has recognized, the Second Circuit's decision in *Ida Fishman* did not address the actual knowledge holding from *Cohmad*. *See Picard v. Cohen*, Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296, at *10 n.16 (Bankr. S.D.N.Y. Apr. 25, 2016) ("The Court [in *Ida Fishman*] did not address the exception to the safe harbor regarding those investors who had actual knowledge that BLMIS was not trading securities.").

## C. Bordier Is Precluded from Arguing that Section 546(e) Applies Independently to Recovery Actions

Bordier is also wrong that the Trustee must allege that a subsequent transferee had actual knowledge in order to invoke the actual knowledge exception to Section 546(e). Specifically, Bordier argues that under *Cohmad*, its subscription agreement with Sentry is the relevant "securities contract" (in lieu of BLMIS's customer agreement with Sentry), and as such, in a Section 550 recovery action against Bordier, the Court must look solely to Bordier's actual knowledge to determine whether the initial transfer is avoidable.[10] Motion at 22–23. But *Cohmad* does not stand for this proposition, and Bordier's argument just repackages the previously rejected

---

[10] This Court's *Amsterdam* decision in the Fairfield Chapter 15 liquidation proceedings does not support Bordier's position that its agreement with Sentry requires the Trustee to plead Bordier's actual knowledge in order to avoid the initial transfer from BLMIS. *See* Motion at 18-19 (citing *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Adv. Pro. No. 10-13164 (SMB), 2020 WL 7345988, at *6–7 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Amsterdam*"). That decision did not involve recovery of subsequent transfers under the Bankruptcy Code. Rather, the Court held that Section 546(e) barred the Fairfield liquidators' claims for unfair preference and undervalue transactions under the B.V.I. Insolvency Act, which the Court analogized to avoidance provisions in the Bankruptcy Code. *See Amsterdam*, 2020 WL 7345988, at *5 (citing *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 596 B.R. 275, 302, 314 (Bankr. S.D.N.Y. 2018)). The *Amsterdam* decision is currently on appeal in District Court. *See In re Fairfield Sentry Ltd.*, No. 19-CV-03911 (VSB) (consolidated) (S.D.N.Y.).

argument that the Section 546(e) safe harbor should independently apply to recovery actions under Section 550.

By its plain language, Section 546(e) applies to the avoidance of initial transfers, not the recovery of subsequent transfers under Section 550. *See* 11 U.S.C. § 546(e) ("[T]he trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title." (emphasis added)); *see also Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) ("The Trustee does not . . . 'avoid' the subsequent transfer; he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550."). The safe harbor's limitation to avoidance is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct." *SIPC v. BLMIS (In re Madoff Sec.)*, 501 B.R. 26, 30 (S.D.N.Y. 2013). It is also consistent with the understanding that the Code's avoidance provisions protect against depletion of a debtor's estate, while Section 550 is merely a "utility provision," intended to help execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place." *See In re Picard*, 917 F.3d 85, 98 (2d Cir. 2019).

*Cohmad* confirmed that Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees. The District Court withdrew the reference on whether Section 546(e) barred recovery of a subsequent transfer pursuant to Section 550.[11] However, in its decision, the District Court specifically limited the safe harbor to avoidance claims based on the plain language of Section 546(e). *See Cohmad*, 2013 WL 1609154, at *4, 9 (applying the "plain terms" of Section 546(e)); *id.* at *7 (recognizing that subsequent transferees

---

[11] *See* Section 546(e) Briefing Order, *In re Madoff Sec.*, No. 12-MC-115 (S.D.N.Y. May 16, 2012), ECF No. 119 (withdrawing the reference on issue of "whether application of Section 546(e) to an initial or mediate Transfer bars recovery by the Trustee of any subsequent Transfer pursuant to Section 550").

17

can raise initial transferees' defenses to *avoidance*); *id.* at \*10 ("[B]oth initial transferees and

subsequent transferees are entitled to raise a defense based on the application of Section 546(e) to

the *initial* transfer from Madoff Securities." (emphasis added)).  And though the District Court

hypothesized, in *dicta*, that a subsequent transferee's subscription agreements with the initial

transferee feeder fund, and related agreements and transactions, might under certain circumstances

constitute relevant "securities contracts," and that certain subsequent transferee defendants might

qualify as "financial institutions" or "financial participants," the District Court was clear that the

focus of the safe harbor is still on the *initial* transfers.[12]  *See id.* at \*9 ("[T]he question . . . is

whether the Trustee has alleged that that *initial transfer* was made in connection with (*i.e.,* related

to) a covered securities contract . . ." (emphasis added)).  For this same reason, *Enron Creditors*

*Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 339 (2d Cir. 2011), which the District Court

cites in *Cohmad* solely to support its reading of what constitutes a "securities contract," does not

change this outcome.  *See* Motion at 23, n.16.  The focus is still on the initial transfers, which for

purposes of Section 546(e) in this case are the transfers from BLMIS to its feeder funds.  *See Ida*

*Fishman*, 773 F.3d at 422–23.

　　　Based on *Cohmad*, this Court held in *BNP* that Section 546(e) applies only to avoidance,

not recovery, and that a subsequent transferee cannot extend the protections of Section 546(e)

where the Trustee has adequately pled the initial transferee's actual knowledge.  *See BNP*, 594

B.R. at 197; *see also SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*, 620 B.R.

505, 514 (Bankr. S.D.N.Y. 2020) ("[T]he safe harbor defense only applies by its terms to the initial

---

[12] Bordier contends that, by alleging that the subsequent transfers were customer property, the Trustee has
conceded that the initial transfers were "in connection with" Sentry's agreements with Bordier.  Motion at
17–19.  However, showing that the subsequent transfers can be traced through the "relevant pathways" is
irrelevant to the issue of whether the initial transfers were "in connection with" any transaction or contract
between Sentry and Bordier for purposes of the securities safe harbor.

transfer."). In *BNP*, the Court explicitly rejected the argument that the "*only* way the Trustee can escape the application of Section 546(e) here is by pleading with particularity and plausibility that the [subsequent transferee defendants] actually knew of the Madoff Ponzi scheme." *BNP*, 594 B.R. 196–97.

Bordier seeks to relitigate this point, arguing that to the extent this Court relies on Bordier's agreements with Sentry as the relevant "securities agreements," this Court must look to Bordier's actual knowledge. Motion at 23. But the District Court did not conclude this, nor did it state that the actual knowledge exception should be applied any differently if the feeder fund agreements were to be used for Section 546(e). Based on *BNP*, a subsequent transferee is protected to the same extent as the initial transferee, that is, only when the initial transferee did not have actual knowledge of Madoff's fraud. *Id*. at 197.

Bordier's interpretation would eliminate the point of the actual knowledge exception— which is to restrict transferees with actual knowledge from hiding behind the safe harbor. *See Cohmad*, 2013 WL 1609154, at *3 (explaining defendants who knew BLMIS was a Ponzi scheme "must have known that the transfers they received directly or indirectly from Madoff Securities were not 'settlement payments'"). Adopting Bordier's position means the safe harbor would apply even where the initial transferee *knew* there were no securities transactions to protect. It would also allow an initial transferee—who had knowledge of the fraud and was unable to satisfy a judgment (like Sentry)—to place fraudulently transferred moneys with a subsequent transferee and out of the reach of a trustee. *See Cohmad*, 2013 WL 1609154, at *1, 7 ("A defendant cannot be permitted to in effect launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of Section 546(e).").

Expanding the safe harbor as Bordier proposes would also result in subsequent transferees

being afforded more protection as to avoidance than the initial transferee, which does not reflect

Congress' intent. *See Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.)*, 343 B.R. 75, 83 (Bankr.

S.D.N.Y. 2006), *rev'd on other grounds*, 388 B.R. 489 (S.D.N.Y. 2008) ("Upon consideration of

the initial transferee's defenses and once the amount of its liability is established, that amount can

be sought from any of the transferees, including subsequent transferees, subject to any of their

additional defenses."). Conversely, providing subsequent transferees with the same defenses to

avoidance as available to the initial transferee does not unfairly bias subsequent transferees.

## III.    THE COMPLAINT SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE SENTRY INITIAL TRANSFERS

Bordier argues that the Trustee's incorporation of his then-operative complaint against

Sentry violates Rule 8(a)(2)'s requirement to include a "short and plain statement" showing the

Trustee is entitled to relief.  Motion at 24–25.  However, there is no doubt that the Trustee may

incorporate the Fairfield complaint under Rule 10(c) to demonstrate the avoidability of the initial

transfers from BLMIS. *See Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670, 679 (Bankr.

E.D. Pa. 2010) (allowing incorporation by reference under Rule 10(c) of pleadings in different

adversary proceeding within the same liquidation).

Bordier's argument also conflicts with the District Court's prior opinion in this liquidation

on whether under Section 550(a) the Trustee must avoid an initial transfer or plead its avoidability

in a subsequent transfer action. *In re Madoff Sec.*, 501 B.R. at 26.  Specifically, the District Court

held that Section 550(a) only "requires that the Trustee show that the transfer he seeks to recover

is avoidable in each recovery action," *id*. at 29, and found sufficient the Trustee's incorporation by

reference of the then-operative Fairfield complaint:

> [T]he Trustee's complaint against [the defendant] incorporates by
> reference the complaints against Kingate and Fairfield, including the

20

> allegations concerning the avoidability of the initial transfers, and
> further alleges the avoidability of these transfers outright. . . . Thus,
> the avoidability of the transfers from Madoff Securities to Kingate
> and Fairfield is sufficiently pleaded for purposes of section 550(a).

*Id*. at 36. Bordier withdrew on the Section 550(a) issue. *See* Mot. to Withdraw the Reference,

ECF No. 6. And this decision—allowing for incorporation by reference—is law of the case. *See*

*Lowrey*, 596 B.R. at 464.

In any event, Bordier's argument is much ado about nothing, because this Court may take

judicial notice of the operative Second Amended Complaint and its prior decision holding that this

complaint sufficiently alleges the avoidability of the initial transfers from BLMIS. *See Fairfield*

*Inv. Fund*, 2021 WL 3477479. On a motion to dismiss, "a court may take judicial notice of prior

pleadings, orders, judgments, and other related documents that appear in the court records of prior

litigation and that relate to the case *sub judice*." *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34,

38 n.4 (E.D.N.Y. 2011). "Included among such matters are decisions in prior lawsuits." *DeMasi*

*v. Benefico*, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008). Finally, the fact that the noticed Fairfield

Second Amended Complaint was filed after this Complaint against Bordier is of no consequence.

*See Rothman*, 220 F.3d at 91–92 (noticing later filed complaint in related proceeding).

The Trustee has complied with the Federal Rules in pleading the avoidability of the initial

transfers, and regardless, this Court may take judicial notice of its opinion in *Fairfield Investment*

*Fund*. If this Court holds otherwise, the Trustee respectfully requests the opportunity to replead.

## **CONCLUSION**

The Trustee respectfully requests that the Court deny Bordier's Motion.

21

Dated: April 15, 2022
New York, New York

*/s/ David J. Sheehan*

Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Torello H. Calvani
Email: tcalvani@bakerlaw.com
Joanna F. Wasick
Email: jwasick@bakerlaw.com
Heather R. Wlodek
Email: hwlodek@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the Chapter 7 Estate of*
*Bernard L. Madoff*