RECEIVED

APR 1 9 2022

U.S. BANKRUPTCY COURT
POUGHKEEPSIE, NY

# DEFENDANT'S KENNETH W. BROWN REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR A HEARING TO REOPEN, AMEND, 0R ALTER A JUDGMENT THAT NO LONGER SERVES THE TRUSTEE'S ORIGINAL PURPOSE OF FAIRNESS AND EQUITY, AND, (I) RESPOND TO TRUSTEE'S OBJECTIONS, RESPONSES, AND COUNTERSTATEMENT OF MATERIAL FACTS, (II) OPPOSITION TO MATERIAL FACTS MISREPRESENTED IN TRUSTEE'S CROSS-MOTION TO GRANT SUMMARY JUDGMENT

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

In re:

SECURITIES INVESTOR PROTECTION
CORPORATION, Adv. Pro. No. 08-01789 (SMB.)
Plaintiff-Applicant, SIPA Liquidation

vs.

(Substantively Consolidated)
BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,
Defendant

_____/

BERNARD L. MADOFF,
Debtor.

_____/

IRVING H. PICARD, Trustee for the   Adv. Pro. No. 10-04468 (SMB.)
Liquidation of Bernard L. Madoff,
Investment Securities, LLC.
Plaintiff,

vs.

KEN-WEN FAMILY LIMITED PARTNERSHIP;
KENNETH W. BROWN, in his capacity as a
General Partner of the Ken-Wen Family Limited
Partnership; WENDY BROWN, a/k/a WENDY WERNER
Defendants.

_____/

RECEIVED

APR 1 9 '22

U.S. BANKRUPTCY COURT
POUGHKEEPSIE, NY

**DEFENDANT'S KENNETH W. BROWN REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR A HEARING TO REOPEN, AMEND, 0R ALTER A JUDGMENT THAT NO LONGER SERVES THE TRUSTEE'S ORIGINAL PURPOSE OF FAIRNESS AND EQUITY, AND, (I) RESPOND TO TRUSTEE'S OBJECTIONS, RESPONSES, AND COUNTERSTATEMENT OF MATERIAL FACTS, (II) OPPOSITION TO MATERIAL FACTS MISREPRESENTED IN TRUSTEE'S CROSS-MOTION TO GRANT SUMMARY JUDGMENT**

Defendant Kenneth W. Brown ("Defendant Brown"), pro se, in the alleged

capacity of the general partner of the dissolved Ken-Wen Family Limited

1

Partnership (FLP), respectfully submits this reply motion to support Defendant's motion for a hearing to oppose Trustee's Memorandum of law, Counterstatements to materials facts, and to address the Court granting the Trustee's motion for summary judgment to order a judgment against "Defendant Brown." Defendant pursuant to Fed. R. Civ. P. 59(e) and Fed. R. Civ. P. 60(b)(6) moves for the Court for a Hearing to alter, amend, or reopen the Judgment on March 15, 2022, against Defendant Brown. There are genuine issues of disputed material fact and unimpeachable evidence in the record. 1) The Judgment was granted by a **manifest judicial error of law**. To grant a MSJ, the Court requires "no triable issue as to any material fact." And *"no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law."*[1] Defendant Brown attests to genuine disputes of material fact[2]; 2) Defendant Brown is entitled to a trial and a jury on the triable issues of fact and evidence. Defendant Brown has the right to defend Count I and all counts alleged against him Plaintiff's First Amended Complaint. as a matter of law.[3] (the "Complaint" or the "FAC" [DE 82]); 3) Judgment denies Defendant Brown his Constitutional rights to due process for subject matter jurisdiction to validate a just Judgment. Defendant Brown was not an initial, subsequent, or ultimate transferee of the four transfers of clawback monies sought in recovery by Trustee Picard's Judgment. Defendant Brown was

---

[1] Catrett v. Celotex Corp., 826 F2d 23(D.C. Cir. 1987) Fed. R. Civ. P. 56(a); Cal. Civ. P. Code 437c(c)

[2] *Anderson v. Liberty Lobby, Inc.* , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A fact is material only if it affects the result of the proceeding and a fact is in dispute only when the opposing party submits evidence such that a trial would be required to resolve the differences." *In re CIS Corp.* , 214 B.R. 108, 118 (Bankr. S.D.N.Y. 1997).

[3] Fed. R. Civ. P. 56(c)(1),(2)

not a *de facto*[4] general partner to the clawback period allowed to Trustee Picard's Judgment. Defendant Brown was sworn under oath by Affidavit[5] that a) he was not a *de facto* General Partner after early 2006, disrupted when his spouse of 30 years filed for divorce.[6] b) Defendant Brown was not an initial, subsequent, or ultimate transferee to recover four transfers to the Ken-Wen FLP assets. The Trustee Judgment claims avoidable recoverable money or property (withdrawn) in the four transfers token-Wen FLP; Monies distributed from the dissolution of Ken-Wen FLP to Wendy Brown, the sole general partner. This avoidance Judgment misapprehends Rule 550(b)(1), 551.[7] c) On February 29, 2008, Defendant Brown affirmed his resignation for a different legal reason. Defendant Brown was to receive no distributions from Ken-Wen FLP after dissociation.[8] d) Wendy Brown dissolved Ken-Wen FLP on June 30, 2010, and received 100% of the assets upon dissolution.

Defendant Brown submits this reply in support of Defendant's motion and opposition to Plaintiff's objections and Counterstatement stated in DE 229 as follows:

DEFENDANT'S REPLY TO TRUSTEE'S RESPONSE TO "UNDISPUTED FACTS"

---

[4] DeCristofaro v. Nest Seekers E. End, LLC, No. 35876–11, 2017 WL 350803, at *6 (N.Y. Sup Ct. January 11, 2017) (same); Hammond v. Smith, No. 2008/02441, 2016 WL 1708522, at *3 (N.Y. Sup. Ct. April 22, 2016) *Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 563 (Bankr. S.D.N.Y. 2021) ("*Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372 (S.D.N.Y. 2010) (citing *Kidz Cloz, Inc. v. Officially for Kids. Inc*., 320 F. Supp. 2d 164, 171 (S.D.N.Y.2004) )")

[5] Fed. R. Civ. P. 56)c)(4) Id., Celotex Corp. v. Catrett, 447 U.S. 317 (1986).
[6] Florida Statute 620.1603(1), (4)(b), (5)(c) "Dissociation as general partner"
[7] *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890, 893 (7th Cir. 1988)
[8] Florida Statute 620.1505 "No distribution on account of dissociation"

- Plaintiff falsely alleges (p 3 line 1) that Defendant Brown renounces general partner of Ken-Wen FLP by Affidavit in early 2006 that negates Count I of the FAC actionable claim according to Florida Statue 620.1404(1) that a general partner liable for all partnership debts. Defendant Brown's Affidavit (Exhibit 1 p2 lines 8 thru 13) filed hereto this pleading factually disputes and states Defendant Brown was a dissociated General Partner at all times material in early 2006 to nullify the cause of action claimed in Count 1 of the Complaint(s).

   a. In truth, Wendy Brown was the sole general partner and subsequent transferee with "unfettered dominion and control" in her capacity of the general partner for Ken-Wen FLP during the relevant two years of FAC DE 82.

   b. Defendant Brown again surrendered all "*de facto* partnership interests and resigned legally subject to Florida Statute 620.1603 and again by Affidavit February 29, 2008, to leave Wendy Brown, in the capacity of the sole general partner and mediate transferee under Rule 550(b)(1) (2), 551.

   c. The just cause was Ken-Wen FLP assets were legally Wendy Brown's inheritances prior to marriage when Wendy Brown filed for divorce on February 3, 2006, Case No: 502006Dr001321-SB. Defendant Brown moved from the family residence and dissociated from a general partner capacity to the assets of Ken-Wen FLP. Defendant Brown expressly resigned and dissociated any de facto capacity of the general partner in early February or March 2006.

   d. The Ken-Wen FLP partnership agreement was formed on June 14, 2000, governed by Florida Revised Uniform Limited Partnership Act of 1986. Article 2 Partners' Capital Contributions 2.1 p7 states that the **"Required**

> **Initial Capital Contributions: (a) On the effective date of this
> agreement or as soon thereafter as is practical Kenneth W. Brown,
> shall contribute real property, cash, securities, business interests,
> partnership interests to the Partnership in exchange for a one (1%)
> percent general partnership interest and a Forty-Nine (49%) percent
> limited partnership;"**

e.  Ken-Wen FLP, Madoff account was merely an "alter ego" Wendy Brown
    account retitled into the name of Ken-Wen FLP. Wendy Brown
    contributed 100% of the contributions to Ken-Wen FLP. The
    contributions originated from monies gifted and inherited from her
    parents and grandparents before marriage.

f.  The Ken-Wen FLP partnership was established for family and estate
    planning purposes that included other assets with the Madoff stock
    account but was explicitly for Wendy Brown.

g.  When there is no consideration, Black letter law is no valid contract.
    Consequentially, not having made the required Contribution mandated in
    Partnership Agreement 2.1, Defendant Brown did not contribute the
    necessary capital to exchange for a one (1%) percent general partnership
    interest.

h.  This divorce filing made it equitable to abdicate any general partner
    interest required by the partnership agreement. Rightfully to forego the
    capacity of a general partner after being no longer having a vested
    general partner interest in favor of supporting the duty of a cooperating
    husband to Wendy brown.

1.  It is disputed in part, undisputed.

    a.  After failing to file its Annual Report on September 28, 2012, Florida
        revoked Ken-Wen Limited Partnership's registration.

5

b. Undisputed "each of the four withdrawals ("four Fraudulent transfers") to Ken-Wen FLP sought to be avoided and recovered in this action took place on or before November 17, 2008."

c. Disputed "as Exhibit A is of **no moment**" is undoubtedly a critical moment to apply a judgment upon Defendant Brown.

d. Ken-Wen FLP Limited Partnership Agreement states the dissolution date is June 30, 2010, exceeding 120 days before Trustee's original Complaint DE 1 filing on November 30, 2010. Florida Statute 620.1508(4)(b)(1)(2) complies with "the distribution is authorized, if the distribution occurs within 120 days after that date, or (2) The payment is made, if the payment occurs more than 120 days after the distribution is authorized." There was no legal notice to the Trustee's claim before the complete dissolution of all Ken-Wen FLP assets distributed to Wendy Brown.

e. Ken-Wen FLP had more than $5,000,000 in assets, a sufficiency to satisfy the Trustee's claim fully, including the Madoff Ken-Wen FLP account during the two years from November 17, 2008, and November 30, 2010. This time-lapse precedes invoking Florida Statute 620.1508 Limitations on distributions.

f. Disputed is of the "MOMENT," Wendy Brown had purportedly dissolved Ken-Wen FLP and distributed 100% of all its assets to herself and or her assigns in compliance with the Partnership Agreement's dissolution date, Article 10.1 (a) June 30, 2010.

g. Ken-Wen FLP, a defunct entity, had no known preferential rights owed to the Trustee's unproven claim as of dissolution as a known creditor for liability claimed in this litigation.

h. According to the partnership agreement and Florida law, the liquidation complied to distribute the 100% Ken-Wen FLP assets to its sole General Partner, Wendy Brown.

i. The Trustee's original Complaint was filed post-date to the distributions subject to the partnership agreement and Chapter 620 of Florida Partnership law.

j. T distributions of June 30, 2010, to levy a valid judgment. Disputed the use of "MOMENT" is prejudicial. Since DE 1 was filed on November 30, 2010, there was no lien on the assets (property) of Ken-Wen FLP prior to dissolution. . The Trustee failed to follow the money. Thus The time gap of no notice was material. Defendant, who was not an actual general partner, had no opportunity to lien the Ken-Wen FLP assets before Wendy Brown's liquidation to herself.

k. Disputed the use of "MOMENT" is prejudicial and discriminatory. DE 162 becomes a bargaining chip, a discretionary act to dismiss liability on Wendy Brown from joint liability. The Trustee to dismiss the true general partner, Wendy Brown, nullifies the claim against this Defendant "i. On the Claim for Relief, pursuant to sections 548(a)(1)(A), 550(a) and 551 of the Bankruptcy Code, and sections 78fff(b) and 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Transfers, (b) directing that the Transfers be set aside, and (c) recovering the Transfers, or the value thereof, from the Defendants for the benefit of the estate of BLMIS;"[9] who received none of the transfers and has none of the property to avoid or recover from the relief ordered.

l. Trustee's discretion to settle for no consideration or Contribution with Wendy Brown, the wholly general partner of Ken-Wen FLP in this action

---

[9] First Amended Complaint (FAC) filed 12/19/2017, p13

satisfies and compensates the Trustee's claim from an offset settlement reached in other Trustee actions against Wendy Brown.[10]

m. DE 162, a release in fairness, dismisses this action against general partners of Ken-Wen FLP from the time of dissolution to the four withdrawals made to bank accounts under Wendy Brown's general partner dominion and control.

2. Exhibit B, four withdrawals are not disputed. Disputed that Trustee's claim that withdrawals (four fraudulent transfers) are of no moment. Disputed as follows:

a. Defendant Brown was no longer a *de jure* general partner with no vested general partnership interest after February 2006.

b. He acted in cooperating spousal role to assist the Partnership under siege of a divorce.

c. The June 26, 2007 $150,000 request was not "which he signed as the general partner of Ken-Wen to wire $150,000 does not collaborate an authentic general partner capacity other than a clerical role to get something done taken from the instructions of Wendy Brown. And repeats, -"Okay. And did you sign this document? A. I did. 2 Q. And you signed it in your capacity as a 3 GP, correct? 4 A. Right. I don't see any date on it, though Q. What account number is that? 14 A. 1EM226-3- -- it looks like zero. 15 Q. And this is a request to wire 150,000 and 16 it looks like there was a request that it be sent 17 to Paradise Bank? 18 A. Yes. 19 Q. And that appears to be crossed out; is 20 that correct? 21 A. There's an X through it. Why, I don't 22 know. There's other writing here. It says, "spoke 23 to client, no wire." 24 Q. And what's the -- you see 6-21 written 25 after that? 58 1 A. Yeah, it's not in my handwriting. I don't  know what that is. Q. And here we have a check dated 6/26/2007 3 for $150,000 to Paradise Bank account. Suggests to me that the funds were sent by check

---

[10] Wendy Brown, a Co-Trustee in Picard Trustee v. Werner(s) Case No. 10-04361 ostensibly settled to offset this matter.

instead of 5 wire; does that sound like -- A. I have no reason to dispute that, sure. It looks like the money was sent by check, yes. Q. Do you know why the money would be sent by check as opposed to wire? A. No. Q. So when you spoke to someone at BLMIS in connections with this request that we marked as Exhibit 10, it says "spoke to client, no wire." Did they inform you that they would not be sending a wire? A. I don't know. I don't recall any of it, but, for whatever reason, the document speaks for itself. That's apparently what happened.[11] Thus this transcript citing is anything but a clerical collaboration not a real capacity of general partner. The depo only acknowledges that there was a check sent to Wendy Brown's address., not the Defendant's address.

d. Disputed Trustee states, "The second transfer took place on December 31, 2007, in the amount of $500,000...which he signed as general partner of Ken-Wen The depo states, "Q. Are you all right to continue, sir? A. I'm exhausted. I'm really tired. I really want to go home and go to sleep. Q. I hear you. A. Okay. Q. Do you recall requesting a $500,000 wire in December 2007? A. No, I don't, but I just generally recall that at the time of 2007, I wanted to be getting out of the stock market. I didn't like the market conditions. That's what my business was forecasting, so that was probably a liquidation effort to get out of the stock market. A. Or I would go to the house and review them from time to time, but the address was always 405. I wasn't trying to be ignorant of them, no. We just had no decision making over them, other than we could make withdrawals. That's the only decisions we could make. Q. So when you would have made a request in December 14, 2007, to withdraw $500,000 from the account, would you have conferred with Ms. Brown? A. Yes. Q. Would you need her consent to make that request? A. I think so. Yes, I think, because we were both general partners at the time. Certainly if there was a disagreement, then I think that there would have been a disagreement, but it didn't happen, so –" –This was fourteen years ago, for a man of seventy-three to randomly recall without the exculpatory awareness of the legal

---

[11] Doc 181-11 Transcript Depo Kenneth Brown (Neiburg Decl. ex 15 Deposition transcript 57:15 -58:22 60:14-62-7   Entered 12/01/21 15:54:08 Exhibit 11 Pg 10 of 40 Fort Lauderdale, Florida 954-755-6401 Daughters Reporting, Inc. 57 1

defenses available for *de facto* capacity of the elements partnership authority, dominion, and control combined with a mere conduit as the reality from the expressed renunciation of the role general partner after Wendy Brown filed for divorce in early 2006. .

e. Trustee states, "the third transfer took place on January 24, 2008, in the amount of $3,000,000...which he signed as the general partner The depo states, "Q. Now, I will turn to what was previously marked as Exhibit 13 that everyone should have. And this appears to be another fax request; is that correct? A. Yes, it is. Q. And is this your handwriting? Reporting, Inc. A. Yes, it is. Q. And to whom is the fax addressed? A. Frank at Madoff. Q. Do you see the reference number there? A. Yes. Q. What account is that? A. Ken-Wen Family Limited Partnership. Q. And the account number? A. 1EM226-3-0. Q. And then what does it say just beneath that? A. "Please liquidate $3 million from the account and wire transfer proceeds to Ken-Wen Family Limited Partnership, Paradise Bank." Q. Do you recall why you made a request to 16 liquidate the account? A. Yes. Q. Do you recall why you made a request to 16 liquidate the account? A. Yes. Q. Why? A. I was troubled by the stock market. I wanted to get liquidity as quickly as possible and at the time we decided we wanted to have greater control over our moneys, rather than have a discretionary account, which we had no control over, if we were looking at hard times coming in the marketplace, which eventually did". " called the financial crisis of 2008, 2009, 2010, 2 2011, 2012. That's why we got out of the 3 marketplace. Q. And you said you were troubled by the market. What caused you to be troubled? A. The policy at the fed and the misstated conditions of our banking system. Something called subprime loans. I can go on and on. Our disappointments over trade and the way we were not 10 being able to accomplish anything in Congress to do anything about stimulating growth. Q. So turning back to Page 47 of 63, now that we've established what it is. I'm looking at the middle of the page, entry on January 24, 2008. Do you see "fed wire debit via Paradise Bank AC Ken-Wen Family Limited Partnership transfer for ref Ken-Wen for $3 million"? A. Yes. Q. And is that consistent with the request that you made to liquidate the account that we just

discussed in Exhibit 13? A. Yes. Q. Okay. So it's accurate to say that the funds would have
been transferred from BLMIS to the Paradise Bank account? A. Yes."[12]

f.  No evidence writing a fax to request a withdrawal created the state of
    mind for a fraudulent transfer. A check request was merely perfunctory.
    There was no state of mind to apply the legal capacity of a general
    partner to use the legality of being responsible for the debts of Ken-Wen
    FLP. These check requests were to facilitate the distributions to Ken-
    Wen FLP for the resulting benefit to Wendy Brown.

g.  The withdrawals were made to reduce stock market risk. The so-called
    transfers were sent to the bank accounts under the dominion and control
    of Wendy Brown.

h.  The Trustee had foreclosed any liability associated with Defendant
    Brown when the Trustee chose to settle with no clawback (DE 162) upon
    the sole general partner, Wendy Brown, for whose benefit the
    withdrawals were made.

i.  The Trustee states, "The fourth transfer on November 17, 2008, in the
    amount of $200,000, "which he signed Kenneth W. Brown FLP", This
    has no relationship to be declared a *de jure* general partner. p5 DE 180
    "Although Mr. Brown testified he was not a general partner of Ken-Wen
    at the time...Madoff sent check...in the amount of $200,000 made
    payable to Ken-Wen Family LP LTD, which was endorsed and deposited
    into the Bank of America Account." The Bank of America account was a
    Wendy Brown controlled account. Disputed hardly makes Defendant
    Brown liable for the money that went directly to the control of Wendy
    Brown's sole general partner.

---

[12] Id. Doc 181-11 Filed 12/01/21 Entered 12/01/21 15:54:08 Exhibit 11 Pg 22 of 40 Fort Lauderdale, Florida 954-
755-6401 Daughters

j. Trustee's claim is perverse and contradicts the psychology of why people invest "to make money" compared to losing money.

k. Trustee fails to account for the 65% stock market crash, the "financial crisis of 2008". The Trustee contradicts the motive, intent, and state of mind of why the withdrawals occurred. Had the withdrawals and sales of stock not been made, the account would have dropped 65% to $1,475,000 for a principal decline of over $2,400,000. No known source foretold about Madoff's frauds.

l. Madoff/BLMIS account statements stated insurance protection of $100,000,000.

m. No regulator or public announcement warned about Madoff's horrors. Defendant acting in the account's best interest, liquidated solely to avoid a possible stock market crash.

n. The right to buy or sell is Constitutionally protected. This litigation violates the American freedoms that my forefathers and family served their country to protect.

o. This Judgment is cut from the pages of Putin's Communist Russia. To punish investors for the Madoff 10(b)-5 frauds and securities frauds is ludicrous and unconstitutional, but somehow approved by the Supreme Court for Madoff's victims ratably seek parity between principal winners from principal losers. This Judgment is perverse and unjust. Defendant Brown was neither a net winner nor a net loser. Wendy Brown received the four transfers that had dominion and control of the money from the dissolution of Ken-Wen FLP.

p. The Dow Jones Industrial Average stood at 8660 on December 31, 2008, and now in 2021, over 35,000 for a 400% gain to potentially exceed $12,000,000. This Defendant Brown to suddenly incur a judgment

liability without the commensurate gain (potentially $12,000,000) that accrued to Wendy Brown's sole general partner is unjust and shocking to the judicial conscience. The Judgment sets a. Avoidable Transfers $3,850,000.00 b. Prejudgment interest on the Avoidable Transfers $2,040,500.00 at the rate of 4% from December 11, 2008, through March 14, 2022. $5,890,500.00[13]

3. Defendant Brown to have no use of the money to have a Judgment interest of $2,040,500 is shocking to the judicial conscience. 4% of aero is zero.

4. Defendant Brown was given no service process of the litigation to defend DE 1. Defendant Brown received no service for due process until DE 62, 63, 64, 65.

5. Trustee failed the Constitutional mandate of notice and due process.

6. Defendant Brown was negligently and fraudulently left absent from this litigation with defective service process Federal Rule of Civil Procedure Rule 4(a)(1), 4(c), 4(m), 5(a), 5(b) as applicable to Rule 7056. (see Affidavit)

7. Kenneth Brown Deposition BY MS. MARASCO: Q. Do you recognize this document? A. Yes. Q. What is it? A. This is the limited partnership agreement, as it says, for Ken-Wen Family Limited Partnership. Q. Do you see a date on that document? A. June 14, 2000. Q. If you'll turn to the last page. Do you see your signature on this document? A. Yes, that's my signature. Q. And in what capacity did you sign the document? A. General partner. Q. So it's accurate to say that you were a general partner of Ken-Wen? A. Yes. Q. And then on that same page to the right, do you see Wendy Brown's signature? A. I do. Q. Was Wendy also a general partner? A. Yes. Q. Was that a personal address or was that a business address? A. That was a family address. Q. When demands, notices or confirmations or reports or any of those things were sent to this 10 address, is it your testimony that you reviewed those documents? A. Well, I went -- at the time I received the notices and documents at the time I was living there, I may have reviewed them, but it wasn't anything other than just a cursory, casual review, because we had no decision making power over the account. Q. How long did you reside at the address 405

---

[13] DE 219 p. 5 line 4

**Southwest Atlantic Drive? A. I think I had left after a hurricane, 21 2005, maybe 2006. Q. Did you ever change your address with the BLMIS? A. No. 25 Q. Did you ever -- after leaving that address in 2005, did you subsequently obtain a different 2 address? A. I did. Q. And did you ask BLMIS to send communications to that new address? A. No, I did not. I had no reason to."**

8. A material fact stated clearly in this depo is that at times material, 405 SW Atlantic Drive Lantana, FL33462 was Wendy Brown's address and was the business address for Ken-Wen FLP for correspondence and process service. Uncategorically, this was not Defendant Brown's address.

9. Trustee and the Court had a wrong address until DE 62-65. There was "in personsam" jurisdiction. [Pennoyer v.Neff 95 U.S. 714 (1878)

10. There was no valid due process to this Defendant until November 2, 2015. [DE 62-65] An incorrect address is not excusable neglect.

11. The Court and the Trustee never applied a reasonable effort to adhere to the Constitutional requirement for due process to process serve a defendant.

12. And the Court and Trustee violated Florida Rule 1.070(a) insufficient service process of diligent search governed in Florida Rules of Civil Procedure.

   a. 2008 Amended Annual Report dated April 29, 2008, changed the Ken-Wen FLP address to Doris Shaw Associates address 270 S. County Road Palm Beach, FL, and lists Wendy Brown, general partner. Bias conflicts of interest, and obstruction provided a reckless disregard to process service.

   b. Process service to Bernfeld, DeMatteo & Bernfeld LLP., Wendy Brown, and Doris Shaw is not good Service. The no process service to Defendant Brown was fatal to fundamental due process that led to this unjust Judgment.

c. c.The Trustee Picard's pique use of "NO MOMENT" to dispute disappears factually with jurisprudence.To have a Lantana, FL address when at all times material Defendant Brown residence was 4020 S. Ocean Blvd Manalapan, FL is deficient.

d. Defendant Brown does not appear on Florida Annual Reports for Amended 2008, 2009, 2010, or 2011 or at any time material during 2006 to 2008 to underweight the Trustee's failure to have been unable to provide the mandated process service and notice.

e. Meanwhile, no perfected service process was done to notice Defendant Brown to be present in this litigation.

f. The state of mind to dissociate from general partner capacity of Ken-Wen FLP was expressed and became material after Wendy Brown filed a divorce petition on February 3, 2006.

g. Since 100% partnership contributions were contributed by Wendy Brown's from her inheritance monies prior to marriage, the Trustee Picard's general partner claim for liability is estopped against Defendant Brown.

h. Defendant Ken Brown did not make the required Contribution of Article 2.1 of the partnership agreement knowing that without Contribution, he lacked the vested capacity of general partner required to have a valid contract.

i. Once the divorce action was filed. Defendant Brown was ministerial and perfunctory in assisting partnership objectives. *(supra* Affidavit).

j. Florida Statute 620.1603(1)(2) dissociation as general partner constitutes ***"the person's express will to withdraw as a general partner."***

k.  Defendant Brown expressed the state of mind to forgo any vested interest as a general partner in Ken-Wen FLP attendant to the partnership agreement after February 2006.

13. Undisputed is a partnership affidavit executed by Defendant Wendy Brown on March 5, 2012, which affirmed she was the sole general partner. Disputed that the Trustee asserts "NO MOMENT" that each of four transfers to Ken-Wen FLP occurred before dissociation is factually untrue. The facts nullify the Trustee's general partner liability claim against Defendant Brown. The Trustee's Judgment in this litigation is a travesty to Fair play and Substantial justice.

a.  Trustee denies 40 months from last transfer and 48 months from purported dissociation of general Partner by Defendant Brown to have been denied notice of this matter is a not a disputed material fact.

b.  In the same 48 months, no notice was served upon Defendant Brown. Not until November 2, 2015 when Trustee entered for default, was the first notice given to Defendant Brown. [DE 62-65]

c.  The Trustee failed to deliver notice from 2010 thru 2015 in this litigation prejudiced this Defendant.

d.  Defendant Brown was given no opportunity to appear with adequate counsel.

e.  Trustee's MSJ [DE 179 and DE180] gave 30 days for Ken-Wen FLP to appear for the Trustee motion for summary judgment without Attorney Bernfeld notice of withdrawal from counsel to the Court or Defendant Brown

f.  Suddenly, Defendant Brown, who had not previously participated in any defense for Ken-Wen FLP throughout a decade of this litigation, was stuck with Ken-Wen FLP without counsel, which is prejudicial.

16

g. To defend Ken-Wen FLP when Bernfeld, DeMatteo & Bernfeld LLp was (is) counsel of record; albeit, Bernfeld, DeMatteo & Bernfeld LLP, confirms the conflict of interest by not appearing since DE 162 was entered.

h. Attorney Bernfeld fails to denote the Sixth Amendment inadequate representation given Defendant Brown throughout this litigation to frame general partner liability found in this unjust Judgment.

i. Wendy Brown's Attorney, Bernfeld, solely represented Ken-Wen FLP in favor of Wendy Brown over any actual meaningful defense for Defendant Brown is unjust.

j. This Bernfeld representation of counsel reflects a contested conflict of interest. This representation was based solely on the benefit of Wendy Brown. The concealment allegedly resulted in the frame-up of Defendant Brown for this fatal Judgment. Trustee granted a release to Wendy Brown to obtain a joint release from liability and Contribution from this litigation. DE 162

k. Notwithstanding, this litigation to Judgment was by ambush. The pleadings, documents, and Court docket entries "clearly and convincingly' attest (DE 1 to 61) and (DE 89 to 180) Bernfeld, DeMatteo & Bernfeld LLP provided all defense for Ken-Wen FLP.

l. Blessed with Trustee Picard's willful overlooking, the obvious this deception has prejudiced Defendant Brown diluting the ammunition for a defense in this matter.

m. FAC line 46: "Each transfer constitutes a "fraudulent transfer" avoidable by the Trustee pursuant to Section 548(a)(1)(A) 35. FAC Line 46.

n.  Each transfer constitutes a **fraudulent transfer** avoidable by
Trustee pursuant to section 548(a)(1)(A) and 550(a) of Bankruptcy
Code, and 78fff-2(c)(3) of SIPA. Plaintiff broadly states is
"recoverable from Defendants," when specifically, Co-Defendants
Ken-Wen FLP and Wendy Brown remain both initial and subsequent
transferees consistent to this litigation Rule 550(a) and 551. At all
times relevant to **Plaintiff's claims, Defendant Brown was a legal
stranger to this litigation for nearly nine years to be destroyed by
$5,890,500 Judgment.**

o.  Plaintiff's papers also fail to explain why Plaintiff was able to
determine when the original Complaint [DE 1] was filed to name only
Kenneth Brown as general partner of Ken-Wen.  Yet, the Trustee
could not (or at least did not) ascertain that Ms. Brown was not also
a general partner of Ken-Wen FLP.

p.  Attorney Bernfeld argued persuasively for Wendy Brown when he
stated: "The Proposed Amended Complaint now alleges. As the Court
is aware, the Trustee has broad investigative powers, including the
power to compel testimony and document production by subpoena
even before an adversary proceeding is commenced."DE 77

q.  Why, with that investigative subpoena power, did Trustee not utilize
during the period from the time the Trustee was appointed in
December 2008 to the time the Complaint was filed not verify Wendy
Brown's capacity as general partner.

r.  How did the Trustee not know that Wendy Brown was a general
partner of Ken-Wen FLP if the case was not irreparably prejudicial to
Defendant Brown?

s.   Rule 11 diligence calls upon the Plaintiff to dismiss and to leave
unexplained why not naming Wendy Brown, general partner was
missed throughout the first six years of this litigation to release from
Judgment.

t.   Plaintiff's Trustee Picard Rule 11 diligence is unsupported; a
contention that the Trustee acted with proper care in this matter is a
genuine concern.

u.   Attorney Bernfeld argues, "In any event, whatever the actual
explanation for the failure to investigate, it is fundamentally unfair
now to compel Ms. Brown to have to defend against a proposed new
claim and new factual allegations so many years after she was first
sued and well after she had been dismissed by the Court as a party to
the action. Under the circumstances set forth above, Plaintiff's
Motion for leave to serve an Amended Complaint on Mrs. Brown,
currently, a nonparty to the case should be denied on the law, on the
facts, and as a matter of fundamental fairness."[14] DE77 signed by
Bernfeld, Dematteo & Bernfeld Attorneys for nonparty Wendy Brown

v.   The above-quoted from DE 77 precisely applies to Defendant post-
FAC DE 172[15] demands a reply that the Plaintiff Trustee Picard failed
to use broad investigative powers to compel testimony and document
production by subpoena.

w. This display of omission and failure to ascertain Defendant's absence
and prejudice in this preceding is negligence and reckless disregard

---

[14] Exhibit 21 DE 77 Declaration in Opposition to Motion Attorneys Bernfeld, DeMatteo & Bernfeld LLP
[15] Defendant Brown Motion to compel responses to requests for Production filed and object to by trustee and
denied.

19

for due process. The argument by Bernfeld is clear and convincing that he was defense counsel for Wendy Brown and not Defendant Kenneth Brown. At a time, the Trustee turned a blind eye, and wistful disregard to Defendant Brown being a stranger and absent from this litigation.

x.  Examining the ultimate facts and the lack of diligence cannot waive the prejudicial misconduct breaches of Rule 11 by the Trustee and Berneld law firm.

y.  The judicial role of this Court is to administer fairness and substantial justice in equity.

z.  For nearly nine years, Defendant Brown had no Constitutionally mandated *"minimum contact and purposeful availment"* with this forum[16] due to Plaintiff's reckless disregard to diligence.

aa. Still, after eleven years, this Defendant has had the stress and dishevelment that an onerous judgment brings a crushing financial hardship unto this citizen of 73 years.

bb. Defendnat Brown unilaterally faced an adverse outcome by being the only alleged remaining general partner of Ken-Wen FLP.

cc. At times material, Defendant Brown lacked the opportunity to forward a viable defense. Since the time to file a reply for Ken-Wen FLP to the Trustee's Complaints, DE 1 and DE 82, the pleadings were done with a conflict of interest by Attorneys' Bernfeld, DeMatteo & Bernfeld, solely on behalf of Wendy Brown. Defendant Brown had been abandoned the opportunity to defend this matter from a defective due process to be served.

---

[16] International Shoe v Washington

14. Disputed by the Trustee, he states "even if Mr. Brown dissociated from Ken-Wen on February 29, 2008, it is undisputed that he requested three (3) of the four (4) fraudulent transfers as general partner of Ken-Wen." DE 180

15. Disputed material fact, Defendant Brown was not a subject matter jurisdiction for FAC final Judgment. He was not a *de facto* general partner as defined by statute and law.

16. He dissociated from the capacity of *de facto* general partner from early 2006 by Affidavit.

17. The Trustee's Judgment is disputed in material fact both by law and by evidence presented in the pleadings.

18. Furthermore, the Trustee misrepresents and exaggerates the facts and the law to divert and obfuscate the truth and defects unimpeachable in the record.

19. The Trustee violated Rule 11 to overlook the identity *de facto* partners, the misrepresentations in the pleadings, and the dissolution of the Ken-Wen FLP account to follow the money.

20. The Trustee submits the admission that the Ken-Wen Madoff account was entirely Wendy Brown's inheritance assets before marriage and recklessly ignores with scienter the initial, subsequent, and ultimate transferee of the four "transfers" upon distribution according Rule 550(b), 551 is wendy Brown as stated in: "2. As part of FTI's reconstruction of the books and records of BLMIS, chronological listings of all cash and principal transactions for every BLMIS customer account were compiled. These chronological listings provided the foundation to calculate every BLMIS account holder's principal balance on a daily basis for all dates from April 1, 1981 through December 11, 2008 (the "Principal Balance Calculation"). "The name on the Ken-Wen Family Account changed over the years it was maintained with BLMIS." However, the Trustee misleads to only footnote that Before April 2000, the account was under the

name of "VIOLET WERNER TRUSTEE WENDY E BROWN
IRREVOCABLE TST DTD 3/21/90." And ignores that the account was
retitled "From August 2000, the account then became the name "KEN-WEN
FAMILY LP LTD." (See AMF00282568, AMF00282570- AMF00282571,
MDPTPP02435552-MDPTPP02435562, and MDPTPP02435574-MDPTPP02435587.)" [17]

21.. Ken-Wen FLP was formed on June 11, 2000.

   a. Corroborates that Ken-Wen FLP was a retitle of previous Wendy Brown
      minor accounts entirely of Wendy Brown's inherited assets dating from
      1981 to 1993 to 2000.

   b. There was no contribution from Kenneth Brown to own a general partner
      interest in this Partnership legally

   c. Disputed that Mr. Brown executed a collateral assignment for an
      insurance policy on October 8. 2008, and again on April 2009, a
      modification agreement as a general partner when the signature was
      merely clerical for an entirely separate request post dissociation use of
      the title, not capacity.

   *d.* The material fact is that the 2008 Amended Annual Report, dated April
      29, 2008, is controlling. Florida Statute 620.1505 mandates *that "A
      person does not have a right to receive a distribution on account of
      dissociation."*

   e. Plaintiff's Insurance collateral assignment argument is not relevant or
      material to impute liability onto Defendant Brown and was done by
      request for clerical purposes.

   f. The material fact is that dominion and control rested with Wendy Brown,
      general partner *de jure.* Wendy Brown, sole general Partner, Defendant

---

[17] DE 184-10 Declaration of Matthew B. Greenblatt, CPA/CFF/CFE Exhibit 10 attachment

Brown is of no significance impute personal liability for a judgment based on disregarding other Florida Partnership Statutes controlling over 620.1404.

22. Trustee's FAC wrongfully insists 620.1404 is undisputed. However, Florida Statutes other than 620.404 are distinguishable and controlling to deny personal liability upon Defendant Brown for having the title, label, or figurehead of general partner. The Court's strict liability adjudges general partner liability by Fla. Stat. 1404 to go Judgment is misapprehended and done in error.

23. The Judgment imputes Florida Law 620.1404(1) to apply to Defendant Brown, as the sole general partner liable for four Ken-Wen Flp transfers (withdrawals) amounting to $3,850,000 without legal sufficiency given to Florida Statutes 620.1405(3), 620.1603(1),(5)(c), 620.1605(1)(a), 620.1607(1), 620.1807(4)(b)[18]

24. Wendy Brown, general partner, distributed and liquidated Ken-Wen FLP, having unfettered dominion and control as the sole general partner that Trustee gave a discretionary release.

25. The Trustee lacks subject matter jurisdiction. Defendant Brown cannot be held responsible for "transfers" after dissociation when Ken-Wen FLP had sufficient assets to liquidate the Trustee claim before dissociation and dissolution.

26. Disputed that Trustee lacks sufficiency for a summary judgment under Federal Rule Civil Procedure 56(c), FRCP 12(b)(d), Rule 4(a)(1), 4(c), 4(m), 5(a), 5(b), Rule 11, and Bankruptcy rule 4007, 7004, and 550(b)(1) among others including the Sixth, Seventh, and Fourteenth Amendments.

---

[18]

a. Disputed the Judgment overlooks other Florida Statutes and material facts to deny summary judgment. But Defendant Brown's Motion to alter, amend or reopen the Judgment is applicable to support the matter addressed in Defendant's memorandum of law and to stay the execution of the Judgment to sue Wendy Brown for Contribution in a cross-claim to satisfy the Judgment equitably as follows:

Florida Statutes

FRCP 1.070

FRCP 1.0510

620.1405(1)(2) Actions by and against Partnership and partners

620.1501 Form of Contribution

620.1502 (4) Liability for Contribution

620.1505 No Distribution on account of dissociation

620.1508 (2)(b) Limitations on distributions

620.1601 Dissociation as a limited partner does not have a right to dissociate before termination of the limited Partnership

620.1603(1)(2)(3) Dissociation as a general partner

620.1605(4) Effect of dissociation as a general partner does not discharge an obligation to the Partnership or other partners

620.1607(1)(3)(b)(1) Liability to other persons of person dissociated as general partner less than 2- years have passed since dissociation

620.1801(1)(a)(b) Nonjudicial dissolution of an event specified in the partnership agreement

620.1805(2)(a)(b) Liability after dissociation of general partner, to other general partners dissociated as general partner

60.1806(13) Known claims against dissolved limited Partnership…may not exceed the amount distributed to the person in dissolution

620.1807(4)(b) Unknown claims against dissolved limited Partnership...
transferee's pro rata shares of the claim or the limited partnership assets
distributed to such partner or transferee in liquidation whichever is less...
620.125(2) ...Liabilities of general partner...a general partner of a limited
partnership has the liabilities of a partner in a partnership...

b. DE 162 was entered January 19, 2021, Plaintiff filed a voluntary
dismissal of Defendant Wendy Brown. **Material fact disputed** is that
Plaintiff dismissed Wendy Brown. The latter is fully funded with the
assets of Ken-Wen FLP that exceeded $6,000,000 at the time of
dissolution. The distribution, dissolution, and the Trustee's claim were
withheld from knowledge or discretion to Defendant Brown to protect
Ken-Wen FLP assets to satisfy or mitigate a judgment or settlement for
relief of this litigation.

a. Before dissolution, Ken-Wen FLP owned two Life Insurance policies 1)
Equitable Life $5 million death benefit; 2) Nationwide Life $1.9 million
death benefits to Wendy Brown, the beneficiary. Violet Werner, insured,
died on February 1, 2019.

b. Judgment has erroneously commuted Ken-Wen FLP liability upon
Defendant Brown when 100% of the benefit of assets to recover for the
original purpose to equalize Madoff's frauds between net winners and net
losers. 100% of the four transfers went to Wendy Brown, the general
partner. The Court's Judgment is misplaced in fact and by law liability to
satisfy the Judgment upon Ken-Wen FLP.

c. Plaintiff's cause of action is misplaced amongst Defendants by its own
discretion to falsely prosecute Defendant Brown, a nonparty, as an
ultimate transferee to satisfy recovery of the Judgment.

27. The Trustee Counterstatement of material facts lack relevance, and subject matter jurisdiction. The material facts herein are distinguishable from those detailed in the Trustee's narrative of Madoff's mega frauds.

28. The stare decisis and res judicata of existing precedence are impressive that the Trustee collected nearly $15 billion out of $20 billion in adversary claims.

29. Undisputed is clear and convincing enough to state in this David v Goliath matter that Madoff operated a Ponzi scheme. The Trustee has the proven vigor, research, and infinite resources to support its findings defined by the headings;

30. I. Background and the Trustee p 9-40; II BLIMS operated a Ponzi scheme paragraph titled A, B, C, D, E; III. Thus, showing that Defendant has neither the details nor the resources or the ability to dispute or to deny Plaintiff's claims of Madoff's Ponzi scheme. Defendant agrees that mass frauds were committed by Madoff and BLMIS upon the public, upon its Clients, and upon Ken-Wen FLP. Defendant disputes any relevance to personal liability to the Trustee's claim.

   a. In the "Analysis of the Account" p40-44 of Ms. Collura and Matthew Greenblatt, Defendant disputes and partly denies lines 111, 132 where Mr. Greenblatt exaggerates the Ken-Wen FLP account period from April 1, 1981, through December 11, 2008, an approximately 27- year period. "Ken-Wen made eighteen (18) subsequent cash deposits between August 31, 1993, and February 26, 1998, totaling $938,000".

   b. The Trustee supersedes and misrepresents the material fact that Defendant Ken-Wen FLP incorporation was June 11, 2000.

   c. It's material that Ken-Wen FLP was funded entirely (100%) from previous accounts with Madoff. Wendy Brown's inherited assets were

26

transferred from previous retitled accounts and moved into a Ken-Wen FLP account in August 2000.

d.  Inherited assets are distinguishable from marital assets acquired during the marriage. The petition filed for divorce on February 3, 2006, is a material fact to nullify Defendant Brown's legal standing as a general partner.

e.  $3,850,000 was withdrawn within two years prior to December 11, 2008, from the Ken-Wen FLP account; however, they were not known as fraudulent transfers but instead considered routine withdrawals from an NYSE, NASD, and SEC-registered Broker dealer SIPC insured protected by an abundance of securities rules.

f.  Defendant Brown was not a *de jure* general partner of Ken-Wen FLP. Defendant Brown received no benefit. He was not the ultimate transferee for the Trustee to recover assets transferred from Madoff's frauds.

g.  **The Fourteenth Amendment establishes** Procedural due process, based on principles of "fundamental fairness," which addresses which legal procedures must be followed in state proceedings. This Defendant had been absent from all the pleadings from DE 1 to DE 64 because of the forum rank negligence, abuse, and oversight. Unfairly this Defendant faces irreversible error, prejudice, and irreparable harm, unable to mitigate, defend, or recover assets to pay a judgment of money damages from an adverse finding of general partner liability Florida Statute 620.1404.

h.  For this Court to enter a judgment binding the Defendant, the Plaintiff should have proof of or show reasonable efforts to process serve this Defendant the fundamental right to proper notice of the lawsuit.

Ordinarily sufficient notice, as is the case in Florida Statutes, is given by *service process* – the summons to appear before the Court and the Complaint against the Defendant in accord with pertinent rules or statutes on Service. This Defendant neither consented expressly, implied, nor made an appearance presents the inconvertible question was Defendant personally served within this forum to be heard?

i. Service of process in Florida requires in-person process service of a summons or a subpoena delivered upon Defendant of the Complaint to a proper address of home or office. An address is formally set for the exchange of the pleadings be filed. Nothing was sent, forward, or received by Defendant until DE 64 November 2, 2016; a pleading of the default judgment via first-class mail was sent to Defendant's new address. **To obtain personal jurisdiction for the Judgment to be valid, the Constitutional requirement of "Due Process" must occur.** *Kulko v. California superior Court, 436U.S. 84, 91 (1978). R.M.R. Corp. v. Clare Bros., L.T.D. (In re R.M.R. Corp.), 133 BR 759, 764 Bankr. D. Md. 1991).*

j. **Florida Statutes on the Rules of Civil Procedure specifies that due process must be done.** • **due process – Florida Rules of Civil Procedure** www.floridacivpro.com › reporter ›

k. Rule 1.540(b)(4) provides that the Court may relieve a party from a void judgment. "A **judgment** is void if, in the **proceedings** leading up to the **judgment,** there is '[a] violation of the due process guarantee of **notice** and an opportunity to be heard." Dismissal is warranted after **notice** was continuously sent to the wrong address. This is a **due process** violation.

l. **Florida Rules of Civil Procedure** SECTION 9.   Due process.—No person shall be deprived of life, liberty, or property without due process of law, or be twice put in jeopardy for the same offense, or be compelled in any criminal matter to be a witness against oneself.

m. **Florida Rule 1.070. Process**

**1)** Summons; Issuance. Upon the commencement of the action, summons or other process authorized by law shall be issued forthwith by the Clerk or judge under the Clerk's or the judge's signature and the seal of the Court and delivered for Service without praecipe.

**2)** Service; By Whom Made. Service of process may be made by an officer authorized by law to serve process, but the Court may appoint any competent person not interested in the action to serve the process. When appointed, the person serving process shall promptly make proof of Service by Affidavit and, in any event within the time during which the person served, must respond to the process. Failure to produce proof of Service shall not affect the validity of the Service. When any process is returned, not executed, or returned improperly executed for any defendant, the party causing its issuance shall be entitled to such additional process against the unserved party required to effect Service.


**3)** Defendant Brown reserves all rights to appeal Judgment on additional outside the four corners of the Complaint on the grounds of judicial error, including but limited to (a) Constitutional due process;(b) personal and subject matter jurisdiction; (c) lack of any personal benefit from alleged transfers; (d) Unauthorized prior purported

29

representation in the matter by Mr. Bernfeld; (e) improper actions by Co-Defendant and sole general partner Wendy Brown; and (f) indemnification from Co-Defendant and sole general partner Wendy Brown for her harmful acts according to Florida Partnership Act.

**WHEREFORE,** Plaintiff has not met the duty to produce evidence of undisputed material facts to grant a motion for Judgment against Defendant Brown. Defendant Brown has offered sufficient affirmative evidence of material facts in dispute by Affidavit and the pleadings. The proof is in the record. This evidence negates the essential elements to grant Plaintiff's motion for summary judgment. Plaintiff Attorneys' for the Trustee issued and signed pleadings that never reached Defendant Brown because they went to the wrong address. Otherwise, the pleadings were sent to attorney Bernfeld who had Rule 11 conflict of interest violations. He ignored "informed consent" to represent Defendant without his knowledge or contact. The Court's papers went to Wendy Brown and registered agent Doris Shaw who had an adverse interest deny due process. Trustee Picard made no effort to provide due process. Trustee Picard made no simple inquiry with the Defense Counsels or made a reasonable inquiry of the forum to verify the accuracy of the contact information for Defendant Kenneth W. Brown to properly process serve.

This Defendant pleads to the Court to consider the statements made herein to use the Court's leave to adjudicate not to ignore the perversity of the recklessness of the Trustee's oversight of a failed due process. And, then the consequences of improper notice had an irreversible prejudice that harmed this Defendant.

Fair Play and substantial justice use the experience of judicial discretion for the Court to determine the reasonableness to consider other factors outside the pleadings of the Complaint. After a decade of stale litigation, this Litigant's legal

30

rights were a party "incidental" of interest, all while a stranger in the proceeding rather than a noticed party.

Therefore, due process violations invalidate a judgment binding upon a party without an opportunity to be heard. *Parklane Hosiery Co. v. Shore, 439 US 322, 327 n.7 (11979), citing Blonde-Tongue Laboratories, Inc. University of Illinois, 402 US 313, 329 (1971).* The facts are undisputed; this Defendant had no preparation, no privy to notice, and no representation or full opportunity to be heard until the undersigned *Attorney applied as pro hac vice Admission on February 16, 2018,* eight years into the litigation.DE 86

Defendant Brown has provided herein genuine disputes to a material fact that Defendant Disputes Plaintiff's claim in opposition to his capacity of a general partner from December 2006 to December 2008. Defendant Brown responds in support for the Court to alter, amend, or reopen the Judgment to show the legal sufficiency of no subject matter liability for damages upon Defendant Brown.

Respectfully submitted,

Kenneth W. Brown, pro se

Defendant

561-542-6669 kenwbrown@comcast.net

5975 S. Highway A1AMelbourne Beach, FL 32951

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18 th day of April, 2022, a true and correct copy of the foregoing was served by CM/ECF on all parties listed below.

/s/ Kenneth W. Brown

Matthew B. Lunn, Esq. Michael S. Neiburg, Esq. Justin P. Duda, Esq. Young Conaway Stargatt & Taylor, LLP 1270 Avenue of the Americas Suite 2210 New York, NY 10020 212-332-8840 Fax : 212-332-8855 Email: mlunn@ycst.com; mneiburg@ycst.com; jduda@ycst.com