

TERRITORY OF THE VIRGIN ISLANDS

THE MUTUAL FUNDS ACT, 1996
("the Act")

CERTIFICATE OF RECOGNITION AS A PROFESSIONAL
MUTUAL FUND
[Sections 20(1), 21 and 27]

In the power granted by section 20(1) of the Act, and in accordance with the provisions of sections 21 and 27 of the Act, the Financial Services Commission hereby grants to

**Groupement Financier Ltd.**

a certificate of recognition as a professional mutual fund.

This certificate remains in force unless it is cancelled in accordance with the provisions of sections 29 and 30 of the Act or suspended or revoked in accordance with section 38 of the Financial Services Commission Act, 2001.

Given under the seal of the          )

Commission hereto affixed          )

by Ha[...]ord Malone          )

a duly authorised officer of the          )

Commission this 16 day of          )

[...]          )

Financial Services Commission

Certificate No. RC/PIPO/07/413

[This] certificate [is property of the] British Virgin Islands Financial Services Commission and should be surrendered to the Commission's office upon demand. A current list of licensees may be viewed on the Commission's website at www.bvifsc.vg.

VIRGIN

Virtual Integrated Registry Regulatory General Information Netwo

**BRITISH VIRGIN ISLANDS**
**FINANCIAL SERVICES COMMISSION**

*Vigilance   Integrity   Accountability*

| Review & Approval | Reports | Master Maintenance | Security |
|---|---|---|---|

COOLjsMenu

## Company Profile

BVI Company No.:          534377     Company Name:          Groupement Financier Ltd.

## List of Filings & Attachment

| S.No | Transaction Description | Status Description | Date of Filing | Eform: |
|---|---|---|---|---|
| 1 | Annual Fee Submission (BC) | Approved | 30/05/2007 | Annual |
| 2 | Annual Fee Submission (BC) | Approved | 29/02/2008 | Annual |



# TERRITORY OF THE BRITISH VIRGIN ISLANDS

## THE INTERNATIONAL BUSINESS COMPANIES ACT
### (CAP. 291)

### CERTIFICATE OF INCORPORATION

(SECTIONS 14 AND 15)

No. 534377

The Registrar of Companies of the British Virgin Islands HEREBY CERTIFIES pursuant to the International Business Companies Act, Cap. 291 that all the requirements of the Act in respect of incorporation having been satisfied,

Groupement Financier Ltd.

is incorporated in the British Virgin Islands as an International Business Company this 19th day of February, 2003.

Given under my hand and seal at Road Town, in the Territory of the British Virgin Islands

REGISTRAR OF COMPANIES

CRTI0017





**IBC No.**  534377

British Virgin Islands

The International Business Companies Ordinance
(Cap. 291)

Memorandum and Articles of Association
of

Groupement Financier Ltd.

Incorporated the  19th  day of ,  February  20 $^{03}$

# S·H·R&M
## FINANCIAL SERVICES LIMITED ·
Kingston Chambers
P.O. Box 173
Road Town, Tortola
British Virgin Islands



# TERRITORY OF THE BRITISH VIRGIN ISLANDS

## INTERNATIONAL BUSINESS COMPANIES ACT, 1984

### MEMORANDUM OF ASSOCIATION

#### OF

#### Groupement Financier Ltd.

### NAME

1.  The name of the Company is Groupement Financier Ltd.

### REGISTERED OFFICE

2.  The registered office of the Company will be situated at Kingston Chambers, P. O. Box 173, Road Town, Tortola, British Virgin Islands.

### REGISTERED AGENT

3.  The Registered Agent of the Company in the British Virgin Islands is S-HR&M Financial Services Limited, whose address is Kingston Chambers, P.O. Box 173, Road Town, Tortola, British Virgin Islands.

### GENERAL OBJECTS AND POWERS

4.  The objects of the Company are to engage in any act or activity that is not prohibited under any law for the time being in force in the British Virgin Islands, and without limiting the generality thereof the objects of the Company are:

    (a)  to hold, invest and re-invest its assets, and in connection therewith, to hold part or all of its assets in cash, and to purchase or otherwise acquire or sell, assign, negotiate, transfer, exchange or otherwise dispose of or turn to account or realise upon and trade in, upon margin or otherwise, all forms of securities and other financial instruments of U.S. and non-U.S. issuers and commodities, including but not limited to shares, stocks, depository receipts, interests in investment companies and mutual funds of all types, currencies, interest rates, stock market indices, pre-organisation certificates and subscriptions, warrants, bonds, notes, debentures, whether subordinated, convertible or otherwise, commercial paper, certificates of deposit, bankers acceptances, trade acceptances, trust receipts and other securities of whatever kind or nature of any

1

person, corporation, government or entity whatsoever, all futures and option contracts traded on any exchange or contract market, all cash spot and forward transactions in any commodities, all over-the-counter options, swaps (equity and commodity) and other derivative instruments now existing or hereafter developed, whether relating to or based on any securities, currencies, rates, indices, any other item referred to above, or any other intangible right or interest, and in rights and options relating thereto, including put and call options relating thereto, (all such items being called a "Security" or "Securities"), and to sell Securities short and cover such sales, to write options thereon, and to exercise as owner or holder of Securities, all rights, powers and privileges in respect thereof; and to do any and all acts and things for the preservation, protection, improvement and enhancement in value of any and all Securities;

**(b)**    to acquire a long position or a short position with respect to any Security and to make purchases or sales increasing, decreasing or liquidating such position or changing from a long position to a short position or from a short position to a long position, without any limitation as to the frequency of the fluctuation in such positions or as to the frequency of the changes in the nature of such positions;

**(c)**    to purchase Securities and hold them for investment;

**(d)**    to purchase, receive, take (by grant, gift, devise bequest or otherwise), lease, license or otherwise acquire, own, hold, improve, employ, use and otherwise deal in and with real or personal property or any interest therein or rights thereto, situated anywhere in the world other than in the British Virgin Islands (except as provided for in Clause 5 (a) (ii) below);

**(e)**    to sell, convey, lease, license, exchange, transfer or otherwise dispose of or mortgage or pledge, or create a security interest in, all or any of its property or any interest therein;

**(f)**    to lend funds or properties of the Company, either with or without security, to lend securities of the Company, on terms customary to the securities industry, provided that collateral at least equal in value to the market of the loaned securities is deposited by the borrower with the Company, to borrow or raise monies, enter into repurchase and reverse repurchase agreements and, from time to time without limitation as to amount or manner and time of repayment, to issue, accept, endorse and execute promissory notes,

drafts, bills of exchange, warrants, bonds, debentures and other negotiable and non-negotiable evidences of indebtedness, and to secure the payment of such or other obligations of the Company by mortgage loan, or pledge or hypothecation of, all or part of the property of the Company whether at the time owned or thereafter acquired;

(g)   to acquire, hold, develop, sell, convey and exploit grants, options, concessions and other exclusive and non-exclusive rights in and to real property or any estate or interest therein or rights thereto and to grant options, concessions or other rights in respect thereof;

(h)   to engage, either by itself or through others, whether as principal, factor, trustee, nominee, broker, agent or representative, general or special, or in any other capacity whatsoever, in any investment, financial, management, trusteeship, advisory or consultancy, processing or trading business or activity or any other business or businesses whatsoever, or in any other act or activity; and

(i)   to do any and all acts, to carry on any business or businesses whatsoever and to engage in any activities which may conveniently be carried on with or be conducive to the attainment of the Company's objects or purposes, including, without limitation, the power to enter into any contract or undertaking whether directly or indirectly for the benefit or profit of the Company and the power, whether for the protection of the assets of the Company or otherwise, to transfer any or all of the Company's assets in trust to one or more trustees, to any company, association, partnership, foundation or similar entity, and with respect to such transfer, the directors may provide that the Company, its creditors, its Members or any person having a direct or indirect interest in the Company, or any of them, may be the beneficiaries, creditors, Members, certificate holders, partners or holders of any other similar interest.

And it is hereby declared that the intention is that each of the objects specified in each paragraph of this Clause 4 shall, except where otherwise specifically expressed in such paragraph, be an independent main object and be in no way limited or restricted by reference to or inference from the terms of any other paragraph or the name of the Company.

The Company shall have all such powers as are permitted by law  time being in force in the British Virgin Islands which are necessary or conducive to the conduct, promotion or attainment of the objects of the Company.

5.    (a)    The Company may not:

        (i)    carry on business with persons resident in the British Virgin Islands;

        (ii)    own an interest in real property situated in the British Virgin Islands, other than a lease referred to in paragraph (v) of sub-clause (b);

        (iii)    carry on banking or trust business, unless it is licensed to do so under the Banks and Trust Companies Act, 1990;

        (iv)    carry on business as an insurance or re insurance company, insurance agent or insurance broker, unless it is licensed under an enactment authorising it to carry on that business;

        (v)    carry on the business of company management unless it is licensed under the Company Management Act, 1990; or

        (vi)    carry on the business of providing the registered office or the registered agent for companies incorporated in the British Virgin Islands.

    (b)    For the purposes of paragraph ( i) of sub-clause (a) the Company shall not be treated as carrying on business with persons resident in the British Virgin Islands if:

        (i)    it makes or maintains deposits with a person carrying on business within the British Virgin Islands;

        (ii)    it makes or maintains professional contact with solicitors, barristers, accountants, book-keepers, trust companies, administration companies, investment advisers or other similar persons carrying on business within the British Virgin Islands;

        (iii)    it prepares or maintains books and records within the British Virgin Islands;

        (iv)    it holds, within the British Virgin Islands, meetings of its directors or Members;

        (v)    it holds a lease of property for use as an office from which to communicate with Members or where books and records of the Company are prepared or maintained;

4



(vi)    it holds shares, debt obligations or other securities in a company incorporated under the International Business Companies Act or under the Companies Act; or

(vii)   shares, debt obligations or other securities in the Company are owned by any person resident in the British Virgin Islands or by any company incorporated under the International Business Companies Act or under the Companies Act.

(c)    The Company shall have all such powers as are permitted by law for the time being in force in the British Virgin Islands, irrespective of corporate benefit to perform all acts and engage in all activities necessary or conducive to the conduct, promotion or attainment of the objects of the Company.

(d)    The directors may by Resolution of Directors exercise all the powers of the Company to borrow money and to mortgage or charge its undertakings and property or any part thereof, to issue debenture stock and other securities whenever money is borrowed or as security for any debt, liability or obligation of the Company or of any third party.

(e)    The Company shall exist for an indefinite term or until removed from the Register.

**CURRENCY**

6.    Shares in the Company shall be issued in the currency of the United States of America and the European Union.

**AUTHORISED CAPITAL**

7.    The authorised capital of the Company is US$25,000.00 and EUR25,000.00

**CLASSES, NUMBER AND PAR VALUE OF SHARES**

8.    The authorised capital is made up of four classes of shares divided as follows:-

(i)     1,250,000 Class A Shares of US$ 0.01 par value each;
(ii)    1,250,000 Class B Shares of US$0.01 par value each;
(iii)   1,250,000 Class C Shares of EURO 0.01 par value each; and
(iv)    1,250,000 Class D Shares of EURO 0.01 par value each.

5



9.  Holders of the shares shall be entitled to notice of, attend and vote at
    meetings of the Members and such shares shall be redeemable by the
    Company at the election of the holder as per the Articles of Association
    and the holders shall be entitled to participate in the profits of the
    Company and in the surplus assets of the Company on a winding up or
    otherwise.

10. Subject to the provisions herein contained and in as much as more than
    one class or more than one series of shares may be authorised to be issued,
    the board of directors shall have the authority and the power to fix by a
    Resolution of Directors the designations, powers, preferences, rights,
    qualifications, limitations and restrictions, if any, appertaining to that class
    or series of shares.

### REGISTERED SHARES

11. The shares of the Company may only be issued as registered nominative
    shares and may not be exchanged for shares issued to bearer.

### RESTRICTIONS ON OWNERSHIP

12. The board of directors may restrict or prevent the direct or indirect
    ownership by any U.S. Person of shares, and for such purpose the
    Company may:

    (a) decline to issue any share and decline to register any transfer of a
        share, where it appears to it that such registration or transfer
        would or might result in beneficial ownership of such shares by a
        U.S. Person;

    (b) where it appears to it that any U.S. Person, either alone or in
        conjunction with any other person, is a beneficial owner of shares,
        purchase or redeem all shares owned by such U.S. Person. Any
        redemption of shares pursuant to this Regulation shall be deemed
        to take effect, at the option of the directors, either:

        (i)  on the Redemption Day immediately preceding the transfer
             of shares to such U.S. Person; or

        (ii) immediately following the close of business on the tenth day
             following the date notice is sent to the Member, which
             notice shall be given either in writing, by telex or by
             facsimile.

6



An amount equal to the aggregate Net Asset Value per share (as calculated on the Business Day with respect to which the notice is to apply) of the shares being redeemed, shall be sent to such Member by such means as the directors deem appropriate as soon as practicable after the date of the notice; and

(c)    decline to accept the vote of any U.S. Person at any meeting of Members of the Company;

**TRANSFER OF REGISTERED SHARES**

13.    Shares in the Company shall not be transferred without the prior approval of a Resolution of Directors of the Company, and the Company shall not be required to register any transfer of a share if said transfer has not been so approved. A transfer of a share may not be permitted if, as the result of such transfer:

(a)    the shares are held for the benefit of any U.S. Person and, in the opinion of the directors, such ownership could result in adverse tax or regulatory consequences to the Company or any of its Members; or

(b)    the ownership of the shares by the Member is unlawful or may be harmful or injurious to the business or reputation of the Company, its manager, or any investment advisor or its administrator.

14.    The membership of the Company shall be restricted to a maximum of fifty investors.

**AMENDMENT OF MEMORANDUM AND ARTICLES OF ASSOCIATION**

15.    The Memorandum and Articles of Association of the Company may be amended by either a Resolution of Members or a Resolution of Directors.

**DEFINITIONS**

16.    The meaning of words in this Memorandum of Association are as defined in the Articles of Association.



We, **S-HR&M FINANCIAL SERVICES LIMITED** of Kingston Chambers, P.O. Box 173, Road Town, Tortola, British Virgin Islands for the purpose of incorporating an International Business Company under the laws of the British Virgin Islands hereby subscribe our name to this Memorandum of Association this 19th day of, February 2003   in the presence of:

Witness                                                    Subscriber

**Deanna A. Trott-Rubaine**              **Authorised Signatory for**
**Road Town, Tortola**                      **S-HR&M Financial Services Limited**
**British Virgin Islands**

8

## THE INTERNATIONAL BUSINESS COMPANIES ACT, 1984

## ARTICLES OF ASSOCIATION

### OF

### Groupement Financier Ltd.

**PRELIMINARY**

1.   In these Articles, if not inconsistent with the subject or context, the words and expressions standing in the first column of the following table shall bear the meanings set opposite them respectively in the second column thereof.

| Words | Meaning |
|---|---|
| **Business Day** | Any day on which the Federal Reserve Bank of New York is open for business. |
| **Capital** | The sum of the aggregate par value of all outstanding shares with par value of the Company and shares with par value held by the Company as Treasury Shares plus; |
| | (a)   the aggregate of the amounts designated as capital of all outstanding shares without par value held by the Company as Treasury Shares, and |
| | (b)   the amounts as are from time to time transferred from surplus to capital by a Resolution of Directors. |
| **Dealing Day** | The first Business Day in each month in each year following the initial issuance of shares or such other days as may from time to time be determined by Resolution of Directors, for purposes of issuance of shares pursuant to these Regulations. |
| **Member** | A person who holds shares in the Company and "Members" shall be construed accordingly. |
| **Net Asset Value** | The Net Asset Value of the Company determined pursuant to these Articles. |

9



**Person**          An individual, a corporation, a trust, the estate of a
                    deceased    individual,    a    partnership,    an
                    unincorporated association of persons or any other
                    entity.

**Redemption Day**  The first Business Day of each calendar month
                    following the initial issuance of shares, or such other
                    days as may from time to time be determined by
                    Resolution of Directors, for purposes of redemption
                    of shares pursuant to these Articles.

**Redemption Price** The price at which shares of the Company shall be
                    redeemed in accordance with these Articles.

**Resolution of
Directors**         (a)    a resolution approved at a duly convened and
                           constituted meeting of directors of the
                           Company or of a committee of directors of the
                           Company by the affirmative vote of a simple
                           majority of the directors present at the
                           meeting who voted and did not abstain; or

                    (b)    a resolution consented to in writing by all
                           directors or of all members of the committee,
                           as the case may be

                           except that where a director is given more
                           than one vote, he shall be counted by the
                           number of votes he casts for the purpose of
                           establishing a majority.

**Resolution of
Members**           (a)    a resolution approved at a duly convened and
                           constituted meeting of the Members of the
                           Company by the affirmative vote of;

                           (i)    a simple majority of the votes of the
                                  shares entitled to vote thereon which
                                  were present at the meeting and were
                                  voted and not abstained, or

                           (ii)   a simple majority of the votes of each
                                  class or series of shares which were
                                  present at the meeting and entitled to

10



vote thereon as a class or series and were voted and not abstained and of a simple majority of the votes of the remaining shares entitled to vote thereon which were present at the meeting and were voted and not abstained; or

**(b)** a resolution consented to in writing by

  **(i)** an absolute majority of the votes of shares entitled to vote thereon, or

  **(ii)** an absolute majority of the votes of each class or series of shares entitled to vote thereon, as a class or series and of an absolute majority of the votes of the remaining shares entitled to vote thereon;

**Surplus**   The excess, if any, at the time of determination of the total assets of the Company over the aggregate of its total liabilities, as shown in its books of account, plus the Company's Capital.

**The Act**   The International Business Companies Act (No. 8 of 1984) including any modification, extension, re-enactment renewal thereof and any regulations made thereunder.

**The Memorandum** The Memorandum of Association of the Company as originally framed or as from time to time amended.

**The Seal**   Any seal which has been duly adopted as the seal of the Company.

**These Articles** These Articles of Association as originally framed or as from time to time amended.

**Treasury Shares** Shares in the Company that were previously issued but were repurchased, redeemed or otherwise acquired by the Company and not cancelled.

11



| | |
|---|---|
| **United States** | The United States of America, each state therein, the Commonwealth of Puerto Rico and each territory and possession of the United States of America and place subject to its jurisdiction. |

**U.S. Person**

(a)   any United States citizen or a resident of the United States of America (as defined for purposes of the Federal income tax laws of the United States); or

(b)   any corporation, partnership, trust or other legal entity organized or created under the laws of any United States jurisdiction; or

(c)   any organisation or entity controlled, directly or indirectly, by a person or persons described in (a) or (b) or of which such person or persons described in (a) or (b) are known to be the owners, directly or indirectly, of a majority of the beneficial interests therein.

**Valuation Day**       The last Business Day in each month in each year or such other days as may from time to time be determined by Resolution of Directors

2.   "Written" or any term of like import includes words typewritten, printed, painted, engraved, lithographed, photographed or represented or reproduced by any mode of reproducing words in a visible form, including telex, facsimile, telegram, cable, or other form of writing produced by electronic communication.

3.   Save as aforesaid, any words or expressions defined in the Act shall bear the same meaning in these Articles.

4.   Whenever the singular or plural number, or the masculine, feminine or neuter gender is used in these Articles, it shall equally, where the context admits, include the others.

5.   A reference in these Articles to voting in relation to shares shall be construed as a reference to voting by Members holding the voting shares except that it is the votes allocated to the shares that shall be counted and not the number of Members who actually voted and a reference to shares being present at meeting shall be given a corresponding construction.



6.      A reference to money in these Articles is, unless otherwise stated, a reference to the currency in which the shares of the Company shall be issued according to the provisions of the Memorandum.

### SHARES

7.      Subject to the provisions of these Articles the unissued shares of the Company (whether forming part of the original or any increased authorised capital) shall be at the disposal of the directors who may without prejudice to any rights previously conferred on the holders of any existing shares or class or series of shares offer, allot, grant options over or otherwise dispose of shares to such persons at such times and upon such terms and conditions as the Company may by Resolution of Directors determine.

8.      The first shares of any class in the Company may be issued for such amount of consideration as the directors may from time to time by Resolution of Directors determine and the directors may prescribe a minimum initial subscription level.

9.      Following the initial issue of shares, shares of the same class shall be issued for a consideration equal to the Net Asset Value per share of that class at the Valuation Day immediately preceding the applicable Dealing Day, provided that in no case shall the amount of the consideration for any share be less than its par value. The consideration received by the Company in respect of the issue is conclusive unless a question of law is involved. The consideration in respect of the shares constitutes Capital to the extent of the par value and the excess constitutes Surplus.

10.     The Company may require each subscriber for its shares to certify as to such matters as may be required by the directors from time to time and in such form and manner as may be prescribed by the directors.

11.     No shares in a class shall be issued during any period when the determination of the Net Asset Value of shares in that class is suspended pursuant to Regulation 28 hereof.

12.     Treasury Shares may be disposed of by the Company on such terms and conditions (not otherwise inconsistent with these Articles) as the Company by Resolution of Directors determine.

13.     The Company may issue fractions of a share and a fractional share shall have the same corresponding fractional liabilities, limitations, preferences, privileges, qualifications, restrictions, rights and other attributes of a whole share of the same class or series of shares.

13



14.    The name and address of every person being the holder of registered nominative shares, their class or series and the date when they became or ceased to become a Member shall be entered in the share register.

15.    Upon the written request of any Member holding registered shares in the Company, the Company shall issue to such Member a certificate signed by a director or officer of the Company and under the Seal specifying the share or shares held by him; the signatures of the director or officer and the Seal may be facsimiles.

16.    Any Member receiving a share certificate shall indemnify and hold the Company and its officers harmless from any loss or liability which it or they may incur by reason of wrongful or fraudulent use or representation made by any person by virtue of the possession of such certificate. If a certificate is worn out or lost it may be renewed on production of the worn-out certificate, or on satisfactory proof of its loss together with such indemnity as the directors may require.

### SHARE CAPITAL AND VARIATION OF RIGHTS

17.    If at any time the authorised capital is divided into different classes or series of shares other than those provided for in the Memorandum of Association as initially executed, without prejudice to any special rights previously conferred on the holders of any existing shares or class of shares, any share in the Company may be issued with such preferred, deferred or other special rights or such restrictions, whether in regard to dividend, voting, return of capital or otherwise as the directors may from time to time determine.

18.    If at any time the authorised capital is divided into different classes or series of shares other than those provided for in the Memorandum of Association as initially executed, the rights attached to any existing class or series (unless otherwise provided by the terms of issue of the shares of that class or series) may, whether or not the Company is being wound up, be varied with the consent in writing of the Members holding interests aggregating to a majority of 75 per cent of the issued shares of that class or series of shares which may be affected by such variation. Where the rights of an existing class or series of shares are not changed, the directors may by resolution issue such new classes or series of shares and upon such terms and conditions as they may deem appropriate. The consent of any existing class of shareholders is not required in such circumstances.

19.    The rights conferred upon the holders of the shares of any class issued with preferred or other rights shall not, unless otherwise expressly

14



provided by the terms of issue of the shares of that class, be deemed to be varied by the creation or issue of further shares ranking pari passu therewith. The holders of the shares of any class shall not have any pre-emptive right to purchase or subscribe for any shares of the Company unless expressly provided by the terms of the issue of the shares of that class.

### TRANSFER OF SHARES

20. A transfer of shares will require approval by a Resolution of the Directors and shall take effect on registration of the transferee as holder of the shares in the share register.

21. Any attempted transfer of shares in violation of the provisions of Regulation 14 of the Memorandum shall be invalid. In the event that the Company determines by Resolution of Directors that a Member has violated the applicable restrictions on transfer or that any material matters set forth in the certifications required pursuant to Regulation 10 of these Articles were false, the Company may find a purchaser or purchasers for all the shares of that holder and cause the sale of those shares or may compulsorily redeem those shares. The purchase or redemption price, as the case may be, shall be the Net Asset Value as of the date of the invalid transfer.

22. The directors shall have power to close the share register for such period as they shall think fit, but for no longer than ninety (90) days in any calendar year.

### TRANSMISSION OF SHARES

23. (a) In the case of a share registered in the names of two or more holders, the survivor or survivors shall be the only persons recognised by the Company as having title to the shares. In the case of a deceased, incompetent or bankrupt sole holder of a share the executor or administrator of a deceased Member, the guardian of an incompetent Member or trustee of a bankrupt Member, as the case may be, shall be the only person recognised by the Company as having title to the Member's share but shall not be entitled to exercise any rights as a Member of the Company until he shall have proceeded as set forth in the following Articles.

(b) Subject to the limitations described in the Memorandum, any person becoming entitled by operation of law or otherwise to a share or shares in consequence of the death, incompetence or bankruptcy of any Member may be registered as a Member upon

15



such evidence being produced as may reasonably be required by the directors. An application by any such person to be registered as a Member for all purposes shall be deemed to be a transfer of shares of the deceased, incompetent or bankrupt Member and the directors shall treat it as such.

24.     Subject to the limitations described in the Memorandum, any person who has become entitled to a share or shares in consequence of the death, incompetence or bankruptcy of any Member may, instead of being registered himself, request in writing that some person to be named by him be registered as a transferee of such share or shares and such request shall likewise be treated as if it were a transfer.

**REDEMPTION OF SHARES**

25A.    Subject to the provisions of the Act, the Company may in accordance with these Articles, purchase, redeem or otherwise acquire any of its own shares for a price which shall not exceed the Net Asset Value at the date of such purchase, redemption or acquisition, as determined in accordance with Regulation 28, and either cancel or hold such shares as Treasury Shares. Any shares held as Treasury Shares may be disposed of by the Company on such terms and conditions as the Company by a Resolution of Directors may from time to time determine. Shares may be purchased or otherwise acquired by the Company in exchange for newly issued shares in the Company.

25B.    (i)     At the absolute discretion of the directors the Company may require any Member to redeem all or any part of its shareholding as of any Redemption Day by giving the Member at least (5) days prior written notice.

        (ii)    The Company may also, without prior written notice, require the redemption of a Member's entire shareholding as of any date in the event that in the opinion of the directors of the Company continued ownership by the Member could result in adverse tax or regulatory consequences for the Company or any of its Members or is unlawful or may be harmful or injurious to the business or reputation of the Company, its manager or any investment advisor or its administrator.

26.     (a)     Subject to the provisions of Regulation 28, a Member may redeem his shares as of each Redemption Day. A Member wishing to exercise his redemption privilege shall deliver to the Company at least five (5) Business Days prior to the proposed date of redemption a written redemption request indicating the number of



shares to be redeemed. The redemption request must be accompanied by the share certificate or certificates, if any, representing the shares to be redeemed.

(b)    The Company may, in its discretion, impose a redemption charge in any amount representing the estimated transaction costs and related expenses incurred by the processing of the redemption request.

(c)    90 % of the net proceeds will be paid out within 15 Business Days after the relevant Redemption Day, the final 10% will be paid 15 Business Days after final calculation of the Net Asset Value.

27.    Upon any redemption of a share by a Member, the Member shall cease to have any Member's rights with respect thereto (except the right to receive the net proceeds of the redemption and the right to receive dividends previously declared but not already paid, if any).

**DETERMINATION NET ASSET VALUE**

28.    (a)    The Net Asset Value per share of each class shall be calculated and determined by the Company on each Valuation Day by dividing the then net assets of the Company attributable to each class by the total number of outstanding shares in that class at the Valuation Day.

(b)    The Company may at any time and from time to time suspend the calculation of the Net Asset Value of any class and the purchase and redemption of its shares of any class from the holders thereof for the whole or any part of any period:

(i)    during which any stock exchange, board of trade or other interdealer market or contract market on which any of the Company's investments are quoted is closed other than for ordinary holidays, or in which dealings are restricted or suspended;

(ii)    during the existence of any state of affairs which, in the opinion of the Company, constitutes an emergency as a result of which disposition by the Company of investments owned by it is not reasonable or practicable, or would be seriously prejudicial, to the holders of shares or the Company;

17

(iii)     during any breakdown in the means of communication normally employed in determining the price or value of any of the Company's investments, or of current prices on any stock exchange as aforesaid, or when for any other reason the prices or values of any investment owned by the Company cannot reasonably be promptly and accurately ascertained; and

(iv)     during any period when the transfer of funds involved in the realisation or acquisition of any investments cannot, in the opinion of the board of directors, be effected at normal rates of exchange.

No issue or redemption of shares of a particular class will take place during any period when the calculation of the Net Asset Value of that class is suspended. Moreover, the Company reserves the right to withhold payment to persons whose shares have been redeemed (or to persons who have served a redemption notice) prior to such suspension until after the suspension is lifted. Such right will be exercised in circumstances where the director's believe that to make such payment during the period of suspension would materially and adversely affect and prejudice the interests of Members who have not redeemed or given notice to redeem. Any such suspension shall be published by the Company in such manner as it may deem appropriate to the persons likely to be affected thereby, and Members requesting the purchase or redemption of their shares by the Company shall be so notified at the time of the request.

(c)     For the purposes of this Regulation, the assets of the Company shall be deemed to include:

(i)     all cash on hand or on deposit, including any interest accrued thereon;

(ii)     all bills and demand notes and accounts receivable (including proceeds of securities sold but not delivered);

(iii)     all securities, options thereon, commodity contracts, futures contracts and options thereon, notes, warrants or other instruments representing rights to receive securities, property or assets, owned or contracted for by the Company, including any profit accrued on sales of securities not currently owned by the Company;

18

(iv)    all stock, stock dividends, cash dividends and cash
distributions receivable by the Company (provided that the
Company may make adjustments with regard to
fluctuations in the market value of securities caused by
trading ex-dividend, ex-rights, or by similar practices);

(v)    all interest accrued on any interest-bearing securities owned
by the Company except to the extent that the same is
included or reflected in the principal amount of such
security;

(vi)    the preliminary expenses of the Company insofar as the
same have not been written off; and

(vii)    all other assets of every kind and nature, including prepaid
expenses.

(d)    The value of such assets shall be determined by the board of
directors as follows:

(i)    the value of any cash on hand or on deposit bills and
demand notes and accounts receivable, prepaid expenses,
cash dividends and interest declared or accrued as aforesaid
and not yet received shall be deemed to be the full amount
thereof, unless the same is unlikely to be paid in which case
the value thereof shall be arrived at after making such
discount as the Company may consider appropriate to
reflect the true value thereof.

(ii)    the value of securities which are listed on a securities
exchange (which term shall include any interdealer
quotation system which provides for reporting of last sale
price) shall be valued at their last sales price on the
Valuation Day on the largest securities exchange on which
such securities shall have traded on such date, or, if trading
in such securities on such exchange was reported on the
consolidated tape, the last sales price on the consolidated
tape (or, in the event that the Valuation Day is not a date
upon which a securities exchange on which such securities
are listed was open for trading, on the last prior date on
which such a securities exchange was so open). If no sales of
such securities occurred on either of such dates, such
securities shall be valued at the reported last "bid" price (in
the case of a security held long) and the last reported
"asked" price (in the case of a security sold short) on the

19



largest securities exchange on which such securities are
traded, on the Valuation Day. Securities which are not
listed shall be valued at their last "bid" prices on the
Valuation Day if held "long" by the Company and their last
"asked" prices on the Valuation Day if held "short" by the
Company, as determined from representative dealer's
quotations. Securities for which no "bid" and "asked" prices
are available shall be valued at such value as the Company
may determine.    Securities which are commodities or
commodity contracts shall be valued at their last prior sales
prices on the principal board of trade or other contracts
market in which dealings are made or by quotations from
the contraparty bank in the case of a forward contract. All
other securities and other assets of the Company (other than
goodwill, which shall not be taken into account) shall be
assigned such value as the Company may determine. If the
Company determines that the valuation of any security
pursuant to the foregoing does not fairly represent its
market value, the Company shall value such security as it
determines and shall set forth the basis of such valuation in
writing in the Company's records.

(iii)    The value of any shares of stock held by the Company in an
investment company shall be valued in accordance with the
manner in which such shares are valued by such investment
company; provided, however, that the Company may make
such adjustments in such valuation as the Company may
from time to time consider appropriate.

(iv)    The value of any investment or security as aforesaid or
other property for which no price quotations are available
as above provided shall be determined in such manner,
consistent with generally accepted accounting procedures,
as the Company may from time to time consider
appropriate.

(v)    Notwithstanding the foregoing, where on the Valuation Day
any cash or other asset of the Company has been realised or
contracted to be realised there shall be included in the assets
of the Company, in place of such cash or other asset, the
assets receivable by the Company is respect thereof,
provided that if the value of such assets is not then known
exactly then its value shall be as estimated by the Company.

20

(e)    For the purpose of this Regulation, the liabilities of the Company shall be deemed to include:

    (i)    all loans, bills and accounts payable;

    (ii)   all accrued or payable administrative expenses (including investment management fees, custodian fees, and corporate agents' and other fees);

    (iii)  all known liabilities, present and future, including all matured contractual obligations for payments of money or property, including the amount of any unpaid dividends declared by the Company where the Valuation Day falls on the record date for determination of the person entitled thereto or is subsequent thereto, and the amounts of any dividends declared but which have not been paid;

    (iv)   an appropriate provision for future taxes based on capital and income to the Valuation Day, as determined from time to time by the Company, and other reserves, if any, authorised and approved by a Resolution of Directors; and

    (v)    all other liabilities of the Company of whatsoever kind and nature but Capital and Surplus of the Company shall not constitute liabilities for this purpose.

In determining the amount of such liabilities the Company may calculate administrative and other expenses of a regular or recurring nature on an estimated figure for yearly or other periods in advance, and may accrue the same in equal proportion over any such period.

(f)    For the purposes of this Regulation:

    (i)    shares of the Company to be purchased and acquired pursuant to Regulation 26 shall not be treated as existing and taken into account until immediately after the close of business on the date of redemption referred to in Regulation 26, and from such time and until paid, the price therefore shall be deemed to be a liability of the Company;

    (ii)   shares of the Company subscribed for shall be deemed to be outstanding as of the time of acceptance of any subscription and the entry thereof on the book of the Company, and the



<div style="margin-left:30%">

funds retrieved therefor shall be deemed to be an asset of the Company; and

(iii)    all investments, cash balances and other assets of the Company the value of which is expressed in currency other than that of the United States of America shall be valued after taking into account the market rate or rates of exchange in force at the date and time for determination of the value of shares, where relevant.

</div>

### REDUCTION OR INCREASE IN AUTHORISED CAPITAL

29.    Subject to the provisions of the Act as to reduction of Capital, the Company may by a Resolution of Directors amend the Memorandum of Association to increase or reduce its authorised capital.

30.    Any Capital raised by the creation of new shares shall be considered as part of the original Capital, and shall be subject to the same provisions as if it had been part of the original Capital.

31.    The directors of the Company may amend the Memorandum without limitation to:

(a)    consolidate all or any of its shares into shares of larger amount than its existing shares;

(b)    cancel any shares which, at the date of the passing of the resolution, have not been taken or agreed to be taken by any person and diminish the amount of its authorised capital by the amount of the shares so cancelled; and

(c)    sub-divide its shares or any of them into shares of smaller amount than is fixed by the Memorandum and, subject to the provisions of Regulation 18, the resolution whereby any share is sub-divided may determine that as between the holders of the shares resulting from such sub-division one or more of the shares may have such preferred or other special rights over or may have such qualified or deferred rights or be subject to any such restrictions as compared with the other or others as the Company has power to attach to unissued or new shares.

32.    Where any difficulty arises in regard to any consolidation and division under these Articles, the Company by a Resolution of Directors may settle the same as the board of directors may determine.



## MEETINGS OF MEMBERS

33.  The directors shall convene meetings of the Members of the Company annually and at such time and in such manner and place outside the United States as the directors consider necessary or desirable.

34.  Upon the written request of Members holding more than 25 percent (25%) of the votes of the issued and outstanding voting shares in the Company the directors shall convene a meeting of Members.

35.  At least seven (7) days notice specifying the place, the day and the hour of the meeting and the general nature of the business to be conducted shall be given to such persons whose names on the date the notice is given appear as Members in the share register of the Company and who are entitled to vote.

36.  A meeting of the Members shall be deemed to have been validly called, notwithstanding that it is called in contravention of the requirement to give notice in Regulation 35 if Members holding:

    (a)  not less than a majority of the total number of shares entitled to vote on all matters to be considered at the meeting; or

    (b)  not less than a majority of the votes of each class or series of shares where Members are entitled to vote thereon as a class or series together with not less than a majority of the remaining votes

    waive notice of the meeting or agree to shorter notice. Presence at the meeting shall be deemed to constitute waiver.

37.  The inadvertent failure of the directors to give notice of a meeting to a Member or to their agent or attorney as the case may be, or the fact that a Member or such agent or attorney has not received the notice, does not invalidate the meeting.

38.  A Member may be represented at a meeting of Members by proxy who may speak and vote on behalf of the Member. The instrument appointing a proxy shall be in such form as the chairman of the meeting ('the Chairman') shall accept and shall contain the time for holding the meeting at which the person named in such instrument proposes to vote.

## PROCEEDINGS AT MEETINGS OF MEMBERS

39.  No business shall be transacted at any meeting of Members unless a quorum of Members is present at the time when the meeting proceeds to



business. A quorum shall consist of one or more Members present in person or by proxy representing at least fifty percent (50%) of the votes of the shares or class or series of shares entitled to vote on resolutions of Members to be considered at the meeting.

**40.**     If within one hour from the time appointed for the meeting a quorum is not present, the meeting, if convened upon the request of Members, shall be dissolved; in any other case it shall stand adjourned to the next Business Day at the same time and place or to such other time and place as the directors may determine, and if at the adjourned meeting there are present within one hour from the time appointed for the meeting in person or by proxy not less than one-third of the votes of the shares or each class or series of shares entitled to vote on the resolutions to be considered by the meeting, those present shall constitute a quorum but otherwise the meeting shall be dissolved.

**41.**     The chairman, if any, of the board of directors or his designee or a director appointed by the directors shall preside as Chairman at every meeting of Members.

**42.**     If there is no chairman of the board of directors, or designee thereof or appointee, or if at any meeting he is not present at the time appointed for holding the meeting, the Members present shall choose someone of their number to be Chairman.

**43.**     The Chairman of the meeting may, with the consent of the meeting, adjourn any meeting from time to time, and from place to place, but no business shall be transacted at any adjourned meeting other than the business left unfinished at the meeting from which the adjournment took place.

**44.**     All shares vote as one class and each whole share has one vote. If two or more persons are jointly entitled to a registered nominative share and if more than one of such persons is desirous of voting at the meeting, whether in person or by proxy, the vote of that person whose name appears first among such voting joint holders on the share register alone shall be counted.

**45.**     A Member may be present at a meeting if he participates by telephone or other electronic means and all Members participating at the meeting are able to hear each other.

**46.**     At any meeting of the Members the Chairman shall be responsible for deciding in such manner as he shall consider appropriate whether any resolution has been carried or not and the result of his decision shall be

24



announced to the meeting and recorded in the minutes thereof. If the Chairman shall have any doubt as to the outcome of any resolution put to the vote, he shall cause a poll to be taken of all votes cast upon such resolution, but if the Chairman shall fail to take a poll then any Member present in person or by proxy who disputes the announcement by the Chairman of the result of any vote may immediately following such announcement demand that a poll be taken. If a poll is taken at any meeting, the result thereof shall be duly recorded in the minutes of that meeting by the Chairman.

47.   Unless a poll be so demanded, a declaration by the Chairman that a resolution has, on a show of hands, been carried, and an entry to that effect in the book containing the minutes of the proceedings of the Company, shall be sufficient evidence of the fact, without proof of the number or proportion of the votes recorded in favour of or against such resolution.

48.   If a poll is duly demanded it shall be taken in such manner as the Chairman directs, and the result of the poll shall be deemed to be the Resolution of Members at the meeting at which the poll was demanded. The demand for a poll may be withdrawn.

49.   A resolution which has been notified to all Members for the time being entitled to vote and which has been approved by a majority of the votes of those Members in the form of one or more documents in writing by telex, telegram, cable or other written electronic communication shall without the need for any notice, become effectual as at the dates thereof as a Resolution of Members.

50.   Any person other than an individual shall be regarded as one Member and subject to Regulation 51, the right of any individual to speak for or represent such Member shall be determined by the law of the jurisdiction where, and by the documents by which, the person is constituted or derives its existence. In case of doubt, the directors may in good faith seek legal advice from any qualified person and unless and until a court of competent jurisdiction shall otherwise rule, the directors may rely and act upon such advice without incurring any liability to any Member.

51.   Any person other than an individual which is a Member of the Company may by resolution of its directors or other governing body authorise such person as it thinks fit to act as its representative at any meeting of the Company or of any class of Members of the Company, and the person so authorised shall be entitled to exercise the same powers on behalf of the person which he represents as that person could exercise if it were an individual Member of the Company.

25



## DIRECTORS

52.   The first directors of the Company shall be appointed by the Subscribers to the Memorandum of Association and thereafter, the directors shall be elected by the Members holding voting shares for such term as such Members determine.   The first directors may elect any number of additional directors for such term as they may determine until such time as the Members holding voting shares shall elect or re-elect any one or more directors.

53.   The minimum number of directors shall be one and the maximum shall be seven.

54.   Each director holds office according to the terms, if any, of his appointment or until his successor takes office or until his earlier death, resignation or removal.

55.   A vacancy in the directors may be filled by the appointment of a new director pursuant to a resolution of a majority of the remaining directors or a Resolution of Members.

56.   A director shall not be required to be a Member, but nevertheless shall be entitled to attend and speak at any meeting of Members and at any separate meeting of the holders of any class of shares in the Company.

57.   The office of director shall be vacated if the director:

   (a)   is removed from office by a Resolution of Members;

   (b)   is removed from office for cause by a resolution of the remaining directors;

   (c)   becomes bankrupt or makes any arrangement or composition with his creditors generally;

   (d)   dies or becomes of unsound mind, or of such infirm health as to be incapable of managing his affairs, as determined by the remaining directors in their sole discretion; or

   (e)   resigns his office by notice in writing to the Company.

58.   A director may hold any other office or position of profit under the Company (except that of auditor) in conjunction with his office of director, and may act in a professional capacity to the Company on such terms as to remuneration and otherwise as the directors shall arrange.



59.   A director may be or become a director or other officer of, or otherwise interested in any company promoted by the Company, or in which the Company may be interested, as a Member or otherwise. The directors may also exercise the voting powers conferred by the shares in any other company held or owned by the Company in such manner in all respects as they think fit, including the exercise thereof in favour of any resolutions appointing them, or any of their number, directors or officers of such other company, or voting or providing for the payment of remuneration to the directors or officers of such other company. A director may vote in favour of the exercise of such voting rights in manner aforesaid, notwithstanding that he may be, or be about to become, a director or officer of such other company, and as such in any other manner is, or may be, interested in the exercise of such voting rights in manner aforesaid.

60.   No agreement or transactions between the Company and one or more of its directors or any person in which any director has a financial interest or to whom any director is related, including as a director of that other person, is void or voidable for this reason only or by reason only that the director is present at the meeting of directors that approved the agreement or transaction or that the vote or consent of the director is counted for that purpose if the material facts of the interest in or relationship to any other party to the agreement or transaction are disclosed in good faith or are known by the other directors.

61.   A director who has an interest in any particular business to be considered at a meeting of directors or Members may be counted for purposes of determining whether the meeting is duly constituted.

**POWERS OF DIRECTORS**

62.   The business and affairs of the Company shall be managed by the directors who may pay all expenses incurred preliminary to and in connection with the formation and registration of the Company, and may exercise all such powers of the Company as are not by the Act or by these Articles required to be exercised by the Members subject to any delegation of such powers as may be authorised by these Articles and to such requirements as may be prescribed by Resolution of Members; but no requirement made by Resolution of Members shall invalidate any prior act of the directors which would have been valid if such requirement had not been made.   Notwithstanding the generality of the foregoing the Company may by a Resolution of Directors exercise the several powers granted to it by Section 9 of the Act and by the Memorandum to inter alia transfer any of its assets in trust.

63.   Any director who is a body corporate may appoint any person its duly authorised representative for the purpose of representing it at board and committee meetings and of transacting any of the business of the directors.

64.   The board of directors may entrust to and confer upon any director or officer any of the powers exercisable by it upon such terms and conditions and with such restrictions as it thinks fit, and either collaterally with, or to the exclusion of, its own powers, and may from time to time revoke, withdraw, alter or vary all or any of such powers.

65.   A single director shall have no power to represent the Company unless there shall then be only one director or such power is conferred upon a director by the board of directors pursuant to Regulation 64.

66.   The Company may from time to time and at any time by a Resolution of Directors appoint any company, firm or person or body of persons, whether nominated directly or indirectly by Resolution of Directors, to be the attorney or attorneys of the Company for such purposes and with such powers, authorities and discretion (not exceeding those vested in or exercisable by the directors under these Articles) and for such period and subject to such conditions as they may think fit, and any such powers of attorney may contain such provisions for the protection and convenience of persons dealing with any such attorney as the directors may think fit and may also authorise any such attorney to delegate all or any of the powers, authorities and discretion vested in him.

67.   All cheques, promissory notes, drafts, bills of exchange and other negotiable instruments and all receipts for monies paid to the Company, shall be signed, drawn, accepted, endorsed or otherwise executed, as the case may be, in such manner as the Company shall from time to time by a Resolution of Directors determine.

68.   The directors may by a Resolution of Directors exercise all the powers of the Company to borrow money and to mortgage or charge its undertakings and property or any part thereof, to issue debentures, debenture stock and other securities whenever money is borrowed or as security for any debt, liability or obligation of the Company or of any third party.

69.   The continuing directors may act notwithstanding any vacancy in their body.



## PROCEEDINGS OF DIRECTORS

70.  The directors may meet together for the dispatch of business, adjourn and otherwise regulate their meetings as they think fit. Questions arising at any meeting shall be decided by a majority of votes; in case of an equality of votes the chairman shall have a second or casting vote. A director may at any time summon a meeting of directors. All meetings shall be held outside the United States.

71.  The quorum for a meeting of directors shall be one-third of the total number of directors unless there are only two directors, in which case the quorum shall be two (2).

72.  A minimum of three (3) days notice (exclusive of the day of the meeting) shall be given to all directors and alternate directors of any meeting of the board unless all the directors or their alternates on their behalf shall waive such notice for any particular meeting or any director shall waive his right to receive notice. Presence at the meeting shall be deemed to constitute waiver.

73.  At every meeting of the directors the chairman of the board of directors shall preside as chairman of the meeting. If the chairman of the board of directors is not present at the time appointed for a meeting of the directors, the directors present shall choose one of their number to be the chairman of such meeting.

74.  The directors may, subject to the Act, delegate any of their powers to committees consisting of such of their body as they think fit; any committee so formed shall, in the exercise of the powers so delegated conform to any regulations that may be imposed on it by the directors.

75.  A committee may elect a chairman of its meeting; if no such chairman is elected, or if he is not present at the time appointed for holding the meeting, the members of the committee present shall choose one of their number to be chairman of such meeting.

76.  A committee may meet and adjourn as it thinks proper. Questions arising at any meeting shall be determined by a majority of votes of its members present, and in case of an equality of votes, the chairman shall have a second casting vote.

77.  All acts done by any meeting of the directors, or of a committee of directors, or by any person acting as a director, notwithstanding that it be afterwards discovered that there was some defect in the appointment of any such directors or persons acting as aforesaid, or that they or any of

29



them were disqualified are hereby ratified and shall be as valid as if every such person had been duly appointed and was qualified to be a director.

78.   The directors shall cause the following corporate records to be kept:

    (a)   minutes of all meetings of directors, Members and committees appointed by them;

    (b)   copies of all resolutions consented to by the directors, Members and committees appointed by them; and

    (c)   such other books and records as may be necessary or desirable in their opinion to reflect the financial position of the Company.

79.   (a)   The directors may determine by resolution to keep a Register of Mortgages, Charges and other Encumbrances at its registered office in which there shall be entered the following particulars regarding each mortgage, charge and other encumbrance:

        (i)   the sum secured;

        (ii)   the asset secured;

        (iii)   the name and address of the Mortgagee, Chargee or other Encumbrancee;

        (iv)   the date of creation of the mortgage, charge or other encumbrance; and

        (v)   the date on which the particulars specified above in respect of the mortgage, charge or other encumbrance are entered in the Register.

    (b)   The directors may further determine by resolution to file a copy of the Register of Mortgages, Charges or other Encumbrances with the Registrar of Companies.

80.   The books, records and minutes of the Company shall be kept at the registered office of the Company, its principal place of business or at such other place outside the United States as the directors may determine.

81.   A resolution approved by all the directors or members of a committee for the time being entitled to receive notice of a meeting of the directors or of a committee of the directors and taking the form of one or more documents in writing or messages transmitted by teleprinter from a duly



authenticated source shall be as valid and effectual as if it had been passed at a meeting of the directors or such committee duly convened and held.

82. Any one or more members of the board of directors or any committee thereof may participate in a meeting of such board or committee by means of a conference telephone or similar communication equipment allowing all persons participating in the meeting to hear each other at the same time. Participating by such means shall constitute presence in person at a meeting.

## DEGREE OF CARE

83. Every director, officer, agent and liquidator of the Company, in performing his functions, shall act honestly and in good faith with a view to the best interests of the Company and exercise the care, diligence and skill that a reasonably prudent person would exercise in comparable circumstances.

## OFFICERS

84. The Company may by Resolution of Directors, appoint officers of the Company at such times as shall be considered necessary or expedient, and such officers may consist of a chairman of the board of directors, a president, one or more vice presidents, a secretary and a treasurer and such other officers as may from time to time be deemed desirable.

85. The officers shall perform such duties as shall be prescribed at the time of their appointment subject to any modification in such duties as may be prescribed by the directors thereafter, but in the absence of any specific allocation of duties it shall be the responsibility of the president to manage the day to day affairs of the Company, the vice-presidents to act in order of seniority in the absence of the president but otherwise to perform such duties as may be delegated to them by the president, the secretary to maintain the registers, minute books and records (other than financial records) of the Company and to ensure compliance with all procedural requirements imposed on the Company by applicable law, and the treasurer to be responsible for the financial affairs of the Company. Any person may hold more than one office and no officer need be a director or Member of the Company. The officers shall remain in office until removed from office by the directors whether or not a successor is appointed.

86. Any officer who is a body corporate may appoint any person its duly authorised representative for the purpose of representing it and transacting any of the business of the officers.



87.   The Registered Agent of the Company may from time to time certify to
      who it may concern the names and addresses of the directors and officers
      of the Company and terms of their incumbency.

**INDEMNIFICATION**

88.   Subject to Regulation 89, the Company may indemnify against all
      expenses, including legal fees, and against all judgments, fines and
      amounts paid in settlement and reasonably incurred in connection with
      legal, administrative or investigative proceeding, any person who:

      (a)   is or was a party or is threatened to be made a party to any
            threatened, pending or completed proceeding, whether civil,
            criminal, administrative or investigative, by reason of the fact that
            the person is or was a director, an officer including an investment
            advisor or an administrator or a liquidator; or

      (b)   is or was, at the request of the Company, serving as a director, an
            officer including an investment advisor or an administrator or
            liquidator of or, in any other capacity, is or was acting for another
            company or partnership, joint venture, trust or other enterprise.
            The Company may also, to the maximum extent permitted by the
            Act, advance to such persons the expenses of defending any such
            threatened or pending civil or criminal action, suit or proceeding.

89.   The Company shall be required, to the maximum extent permitted by the
      Act, to indemnify its directors according to the terms of Regulation 88. The
      Company may indemnify such other persons described in Regulation 88
      as the directors may by resolution provide. Regulation 88 applies only to a
      person referred to in that Regulation if that person did not act with willful
      misconduct or reckless disregard of his duties or as otherwise prohibited
      by law.

90.   The termination of any proceedings by any judgment, order, settlement,
      conviction or the entering of a "nolle prosequi" does not, by itself, create a
      presumption that the person acted with willful misconduct or reckless
      disregard of his duties or as otherwise prohibited by law.

91.   If a person referred to in Regulation 89 has been successful in defence of
      any proceedings referred to in Regulation 90, the person is entitled to be
      indemnified against all expenses, including legal fees, and against all
      judgments, fines and amounts paid in settlement and reasonably incurred
      by the person in connection with the proceedings.



92.  The Company may purchase and maintain insurance in relation to any person who is or was a director, an officer or a liquidator of the Company, or who, at the request of the Company, is or was serving as a director, an officer or a liquidator of, or in any other capacity is or was acting for, another company or a partnership, joint venture, trust or other enterprise, against any liability asserted against the person and incurred in that capacity, whether or not the Company has or would have had the power to indemnify the person against the liability as provided in these Articles.

## SEAL

93.  The directors shall provide for the safe custody of the Seal, and every instrument by which the Seal shall be affixed shall be signed by one or more persons so authorised from time to time by the directors. If so authorised by a Resolution of Directors, a facsimile of the Seal and of the signatures of any authorised signatory as is herein provided may be reproduced by printing or other means on any instrument and shall have the same force and validity as if the Seal had been affixed to such instrument and the same had been signed as hereinbefore described.

## DIVIDENDS AND RESERVES

94.  The directors may from time to time declare and pay a dividend whether interim or final and whether in money or in specie, but no dividend shall be declared and paid:

(a)  except out of Surplus;

(b)  unless the directors determine that immediately after payment of the dividend:

(i)  the Company will be able to satisfy its liabilities as they become due in the ordinary course of its business, and

(ii)  the realisable value of the assets of the Company will not be less than the sum of its total liabilities (other than deferred taxes) as shown in the books of account and of its Capital.

95.  The directors may, before declaring any dividend, set aside out of the profits of the Company such sum as they think proper as a reserve fund for whatever purpose, and may invest the sum so set apart as a reserve fund upon such securities as they may select.

96.  The directors may deduct from the dividends payable to any Members all such sums of money as may be due from him to the Company.



97.   Notice of any dividend that may have been declared shall be given to each
      Member in the manner hereinafter mentioned and all dividends
      unclaimed for three years after having been declared may be forfeited by
      the directors for the benefit of the Company.

98.   No dividends shall bear interest as against the Company.

99.   Any one of the joint holders of a share may give a valid receipt to the
      Company for the dividends paid thereon.

### ACCOUNTS

100.  The books of account shall be kept at the registered office of the Company,
      or at such other place or places outside the United States as the directors
      from time to time determine.

101.  The directors shall, unless such requirement be waived by Resolution of
      Members, cause to be made out and shall serve on the Members or lay
      before a meeting of Members at some date not later than eighteen months
      after incorporation of the Company and subsequently once at least in
      every calendar year, a profit and loss account for the period covering the
      past financial period of twelve months of the Company, as well as a
      balance sheet as at the date to which the profit and loss account is made
      up. Such profit and loss account and balance sheet shall fairly represent
      the affairs of the Company for that period.

### AUDIT

102.  The Company may by Resolution of Members call for the accounts to be
      examined by auditors.

103.  The auditors shall be appointed by Resolution of Directors.

104.  The remuneration of the auditors of the Company shall be fixed by
      Resolution of Directors.

105.  The auditors shall prepare their report in accordance with generally
      accepted auditing standards and such report shall be annexed to the
      accounts laid before the meeting of the Members of the Company.

### CAPITALISATION OF PROFITS AND BONUS SHARES

106.  The Company may by resolution capitalise any part of the amount
      standing to the credit of the Company's surplus account or otherwise

34



available for distribution as a dividend and accordingly that such sum be set free for distribution amongst the Members who would have been entitled thereto if distributed by way of dividend and in the same proportions on condition that the same be not paid in cash but applied either in or towards paying up in full unissued shares and debentures of the Company to be allotted, distributed and credited as fully paid to and amongst such Members.

107.  A share issued as a dividend by the Company shall be treated for all purposes as having been issued for money equal to the surplus that is transferred from Surplus to Capital upon the issue of the share.

108.  In the case of a dividend of authorised but unissued shares with par value, an amount equal to the aggregate par value of the shares shall be transferred from Surplus to Capital at the time of the distribution.

109.  The allotment of bonus shares shall for the purposes of the Act be treated as a dividend of shares.

110.  The directors shall make all appropriations and applications of the Surplus thereby resolved to be capitalised and all allotments and issues of fully-paid shares or debentures if any, and generally shall do all acts and things required to give effect thereto, with full power to the directors to ignore fractions altogether or to determine that payment be made in cash or otherwise as they think fit in the case of shares or debentures becoming distributable in fractions, and also to authorise any person to enter on behalf of all the Members entitled thereto into an agreement with the Company providing for the allotment to them respectively, credited as fully paid, of any further shares or debentures to which they may be entitled upon such capitalisation, and any agreement made under such authority shall be effective and binding on all such Members. The directors may appoint any person to sign on behalf of the person entitled to participate in the distribution any contract necessary or desirable for giving effect thereto and such appointment shall be effective and binding upon the Members.

**NOTICES**

111.  A notice may be served by the Company, from a location outside the United States, upon any Member either personally or by posting it by airmail service in a prepaid letter addressed to him at his address as shown in the share register or by cable or by telex should the directors think it appropriate.



112. All notices directed to be given to the Members shall, with respect to any share to which persons are jointly entitled, be given to whichever of such persons is named first in the share register, and notice so given shall be sufficient notice to all the holders of such share.

113. Any notice, if served by post, shall be deemed to have been served within ten (10) days of posting and in proving such service, it shall be sufficient to prove that the letter containing the notice was properly addressed and put into the post office. Notices by cable or by telex shall be deemed to have been served twenty four (24) hours after dispatch.

114. Notice may be served on the Company by posting it by prepaid service addressed to the Company at its registered office or to its Registered Agent.

## VOLUNTARY WINDING UP AND DISSOLUTION

115. The Company may commence winding up and dissolve by a Resolution of Members save that if the Company has never issued shares, by Resolution of Directors. The Company and its liquidator shall wind up the affairs of the Company pursuant to the provisions of the Act.

## AMENDMENT TO ARTICLES

116. The Company may by a Resolution of Directors or by a Resolution of Members alter or modify these Articles as originally drafted or as amended from time to time.

## CONTINUATION UNDER FOREIGN LAW

117. The Company may by a Resolution of Directors or a Resolution of Members continue as a company incorporated under the laws of another jurisdiction other than the United States which may permit such continuation and in the manner provided by those laws and may by a Resolution of Directors or a Resolution of Members amend its Memorandum and Articles to be consistent therewith.

We, **S-HR&M FINANCIAL SERVICES LIMITED** of Kingston Chambers, P.O. Box 173, Road Town, Tortola, British Virgin Islands for the purposes of incorporating an International Business Company under the laws of the British Virgin Islands hereby subscribe our name to these Articles of Association this 19th day of February, 2003   in the presence of:


Witness                                                Subscriber



**Deanna A. Trott-Rubaine**               **Authorised Signatory for**
**Road Town, Tortola**                      **S-HR&M Financial Services Limited**
**British Virgin Islands**


37