*Actionnariat à la constitution*
*Inchangé jusqu'au décès de M. De la Villehuchet 12/08*



## ACCESS PARTNERS S.A.
Société Anonyme
Registered office: 49, boulevard du Prince Henri, L – 1724 Luxembourg
Constitution de société du 5 février 2007
Numéro 434/07

In the year two thousand and seven, on the fifth of February.
Before Us, Maître Henri Hellinckx, notary residing in Luxembourg, Grand Duchy of Luxembourg.

There appeared:

1) Mr Thierry Magon de la Villehuchet, President and CEO, Access International Advisors, LLC, residing professionally at 509 Madison Avenue – 22nd floor, New York, NY 10 022 USA.
here represented by Mr Yannick Deschamps, lawyer, residing professionally in Luxembourg, by virtue of a proxy given under private seal.

2) Mr Patrick Littaye, Partner Manager, Access International Advisors, LLC, residing at 524, avenue Louise, B-1050 Bruxelles.
here represented by Mr Yannick Deschamps, lawyer, residing in Luxembourg, by virtue of a proxy given under private seal.

3) Banque Degroof Luxembourg S.A. with its registered office at 12, rue Eugène Ruppert, L-2453 Luxembourg.
here represented by Mr Yannick Deschamps, lawyer, residing in Luxembourg, by virtue of a proxy given under private seal.

The proxies given, signed ne varietur by all the appearing parties and the undersigned notary, shall remain annexed to this document to be filed with the registration authorities.

Such appearing parties, in the capacity in which they act, have requested the notary to state as follows the Articles of Incorporation of a société anonyme, which they form between themselves:

**Art. 1.** There exists among the subscribers and all those who may become owners of the shares hereafter issued, a corporation in the form of a société anonyme under the name of **Access Partners S.A.** (the "Company").

**Art. 2.** The Company is established for an unlimited duration. The Company may be dissolved at any moment by a resolution of the shareholders adopted in the manner required for amendment of these Articles of Incorporation, as prescribed in Article twenty-two hereof.

**Art. 3.** The object of the Company consists of providing Brokers and Financial Advisors services in the broadest sense of the law of 5th of April 1993 relating to the financial sector in Luxembourg as amended (article 26). It consists of investment advice and economical advice on financial operations with the objective



to optimize economically and financially the patrimonial situation and the component of the financial assets of individuals or institutions with private or public interest, whether they are national, foreign, under states controlled, semipublic, or international, family, family offices, UCITS or other funds, established in the European Union or outside the European Union, as well as any activity, introducing services or otherwise that may be directly link to the profession of economic advisor, financial advisor, UCI advisor, or organisational advisor.

The Company may also carry out any operation, within the territory of the Grand Duchy of Luxembourg or abroad, which is directly or indirectly related, in whole or in part, to its corporate object.

**Art. 4.**   The registered office of the Company is established in Luxembourg City, in the Grand Duchy of Luxembourg. Branches or other offices may be established either in Luxembourg or abroad by resolution of the Board of Directors. In the event that the Board of Directors determines that extraordinary political, economic, social or military developments have occurred or are imminent that would interfere with the normal activities of the Company at its registered office, or with the ease of communication between such office and persons abroad, the registered office may be temporarily transferred abroad until the complete cessation of these abnormal circumstances; such temporary measures shall have no effect on the nationality of the Company which, notwithstanding the temporary transfer of its registered office, will remain a Luxembourg company. Such declaration of the transfer of the registered office shall be made and brought to the attention of third parties by one of the executive organs of the Company which has powers to commit the Company for acts of daily and ordinary management.

**Art. 5.**   The subscribed capital is set at three hundred and seventy thousand EUR (EUR 370.000,-) represented by three thousand seven hundred (3.700) shares with a nominal value of one hundred EUR (EUR 100,-) each.

The subscribed capital of the Company may be increased or reduced by a resolution of the shareholders adopted in the manner required for amendment of these Articles of Incorporation.

**Art. 6.**   The shares shall be and remain in registered form and shall be registered in the register of shareholders. A register of shareholders shall be kept at the registered office of the Company. Such register shall set forth the name of each shareholder, his residence or elected domicile, the number of shares held by him, the amounts paid in on each such share, and the transfers of shares and the dates of such transfers.

Subject to the approval of the Board of Directors, transfer of a share shall be effected by a written declaration of transfer registered on the register of shareholders, such declaration to be dated and signed by the transferor and the transferee or by persons holding suitable powers of attorney to act therefore. The Company may also accept as evidence of transfer other instruments of transfer satisfactory to the Company.

The Company can proceed to the repurchase of its own shares within the bounds laid down by the law.



**Art. 7.**   Any regularly constituted meeting of the shareholders of the Company shall represent the entire body of shareholders of the Company. It shall have the broadest powers to order, carry out or ratify acts relating to the operations of the Company.

**Art. 8.**   The annual general meeting of shareholders shall be held, in accordance with Luxembourg law, in Luxembourg at the registered office of the Company, or at such other place in Luxembourg as may be specified in the notice of meeting, on the second Thursday in the month of April at 11.00 a.m.. If such day is not a bank business day, the annual general meeting shall be held on the next following bank business day. The annual general meeting may be held abroad if, in the absolute and final judgment of the Board of Directors, exceptional circumstances so require. Other meetings of shareholders may be held at such place and time as may be specified in the respective notices of meeting.

**Art. 9.**   The quorum and delays required by law shall govern the notice and conduct of the meetings of shareholders of the Company, unless otherwise provided herein. Each share is entitled to one vote. A shareholder may act at any meeting of shareholders by appointing another person as his proxy in writing or by cable or telegram or telefax or telex. A corporation may execute a form of proxy under the hand of a duly authorised officer. Except as otherwise required by law, resolutions at a meeting of shareholders duly convened will be passed by a simple majority of those present or represented and voting. The Board of Directors may determine all other conditions that must be fulfilled by shareholders for them to take part in any meeting of shareholders.

**Art. 10.**   Shareholders will meet upon call by the Board of Directors, pursuant to notice setting forth the agenda sent by registered mail at least eight days prior to the meeting to each shareholder at the shareholder's address in the register of shareholders, and publicized in accordance with the requirements of law.

If, however, all of the shareholders are present or represented at a meeting of shareholders, and if they state that they have been informed of the agenda of the meeting, the meeting may be held without prior notice or publication.

**Art. 11.**   The Company shall be managed by a Board of Directors composed of at least three members, who need not be shareholders of the Company. The directors shall be elected by the shareholders at their annual general meeting, for a term not exceeding six years and until their successors are elected and qualify, provided, however, that a director may be removed with or without cause and/or replaced at any time by resolution adopted by the shareholders. In the event of a vacancy in the office of director because of death, retirement or otherwise, the remaining directors may meet and may elect, by majority vote, a director to fill such vacancy until the next meeting of shareholders. In the event that in any meeting the number of votes for and against a resolution shall be equal, the chairman shall have a casting vote.

**Art. 12.**   The Board of Directors may choose from among its members a chairman, and may choose from among its members one or more vice-chairmen. It may also choose a secretary, who need not be a director, who shall be responsible

PAGE 3

for keeping the minutes of the meetings of the Board of Directors and of the shareholders. The Board of Directors shall meet upon call by the chairman, or two directors, at the place indicated in the notice of meeting. The chairman shall preside over all meetings of shareholders and the Board of Directors, but in his absence the shareholders or the Board of Directors may appoint another director, and in respect of shareholders' meetings any other person, as chairman pro tempore by vote of the majority present at any such meeting. The Board of Directors may from time to time appoint the officers of the Company, including a general manager and any assistant general managers or other officers considered necessary for the operation and management of the Company. Any such appointment may be revoked at any time by the Board of Directors. Officers need not be directors or shareholders of the Company. The officers appointed, unless otherwise stipulated in these Articles, shall have the powers and duties given them by the Board of Directors. Notice of any meeting of the Board of Directors shall be given to all directors at least twenty-four hours in advance of the hour set for such meeting, except in circumstances of emergency, in which case the nature of such circumstances shall be set forth in the notice of meeting. This notice may be waived by the consent in writing or by cable or telegram or telefax or telex of each director. Separate notice shall not be required for individual meetings held at times and places prescribed in a schedule previously adopted by resolution of the Board of Directors.

Any director may act at any meeting of the Board of Directors by appointing in writing or by cable or telegram or telefax or telex another director as his proxy. The Board of Directors can deliberate or act validly only if at least the majority of the directors are present or represented at a meeting of the Board of Directors (which may be held by way of a conference call).

Any manager may participate in any meeting of the board of managers by conference-call, videoconference or by other similar means of communication allowing all the persons taking part in the meeting to hear one another. The participation in a meeting by these means is equivalent to a participation in person at such meeting.

Decisions shall be taken by a majority of the votes of the directors present or represented at such meeting. Notwithstanding the foregoing, a resolution of the Board of Directors may also be passed in writing and may consist of one or several documents containing the resolutions and signed by each and every director. The date of such a resolution shall be the date of the latest signature.

**Art. 13.**     The minutes of any meeting of the Board of Directors shall be signed by the chairman or, in his absence, by the chairman pro tempore who presided over such meeting. Copies or extracts of such minutes which may be produced in judicial proceedings or otherwise shall be signed by the chairman, or by the secretary, or by two directors.

**Art. 14.**     The Board of Directors possesses the widest powers to manage the business of the Company and to take all actions of disposal and administration which are in line with the objects of the Company, and anything which is not a matter for the general meeting in accordance with the present Articles or governed by law, comes within its competence.

The Board of Directors has in particular power to determine the corporate policy and the course of conduct of the management and business affairs of the Company.

PAGE 4



**Art. 15.** No contract or other transaction between the Company and any other corporation or firm shall be affected or invalidated by the fact that any one or more of the directors or officers of the Company is interested in, or is a director, associate, officer or employee of such other corporation or firm. Any director or officer of the Company who serves as a director, associate, officer or employee of any corporation or firm with which the Company shall contract or otherwise engage in business shall not, by reason of such affiliation with such other corporation or firm, be prevented from considering and voting or acting upon any matters with respect to such contract or other business. In the event that any director or officer of the Company may have any personal interest in any transaction of the Company, such director or officer shall make known to the Board of Directors such personal interest and shall not consider or vote upon any such transaction, and such transaction and such director's or officer's interest therein, shall be reported to the next succeeding meeting of shareholders. The term "personal interest", as used in the preceding sentence, shall not include any relationship with or interest in any matter, position or transaction involving the principal shareholder, the investment funds under assistance or any subsidiary or any affiliate thereof or such other corporation or entity as may from time to time be determined by the Board of Directors in its discretion.

The Company may indemnify any director or officer, and his heirs, executors and administrators, against expenses reasonably incurred by him in connection with any action, suit or proceeding to which he may be made a party by reason of his being or having been a director or officer of the Company, or, at its request, of any other corporation of which the Company is a shareholder or creditor and from which he is not entitled to be indemnified, except in relation to matters as to which he shall be finally adjudged in such action, suit or proceeding to be liable for gross negligence or misconduct; in the event of a settlement, indemnification shall be provided only in connection with such matters covered by the settlement as to which the Company is advised by counsel that the person to be indemnified did not commit such a breach of duty. The foregoing right of indemnification shall not exclude other rights to which he may be entitled.

**Art. 16.** The Board of Directors of the Company may delegate its powers to conduct the daily management and affairs of the Company (including the right to act as authorized signatory for the Company) and its powers to carry out acts in furtherance of the corporate policy and purpose to one or several physical persons or corporate entities, which need not be members of the Board of Directors, who shall have the powers determined by the Board of Directors and who may, if the Board of Directors so authorizes, sub-delegate their powers.

The Board of Directors may also confer special powers of attorney by notarial or private proxy.

**Art. 17.** The Company will be bound by the joint signatures of any two directors of the Company, or by the individual signature of the day-to-day manager designated pursuant to Article sixteen hereof, or by the individual signature of any person to whom such signatory authority has been delegated by the Board of Directors.

PAGE 5



**Art. 18.** The accounts of the Company shall be audited by an external auditor. The external auditor shall be appointed and removed by the Board of Directors who shall determine his office term and fees.

**Art. 19.** The accounting year of the Company shall begin on the first day of January each year and shall terminate on the last day of December of the same year.

**Art. 20.** From the annual net profit of the Company, five per cent (5%) shall be allocated to the reserve required by law. This allocation shall cease to be required as soon and as long as such reserve amounts to ten per cent (10%) of the capital of the Company as stated in Article five hereof or as increased or reduced from time to time as provided in the same Article.

Within the limits provided by law, the general meeting of shareholders shall, upon the proposal of the Board of Directors, determine how the annual results shall be disposed of.

The Board of Directors may decide to pay interim distributions in accordance with the law.

The payment of the distributions shall be made to the address indicated on the register of shareholders.

The Board of Directors may pay the distributions in such currency and at such time and place that it shall determine from time to time.

**Art. 21.** In the event of a dissolution of the Company, liquidation shall be carried out by one or several liquidators (who may be physical persons or legal entities) named by the meeting of shareholders effecting such dissolution and which shall determine their powers and their compensation.

**Art. 22.** These Articles may be amended from time to time by a meeting of shareholders, subject to the quorum and voting requirements provided by the laws of Luxembourg.

**Art. 23.** All matters not governed by these Articles of Incorporation shall be determined in accordance with the law of tenth August, nineteen hundred and fifteen on commercial companies and amendments thereto.

### Transitory Dispositions

The first accounting year begins on the date of incorporation and ends on the last day of December 2007.

The first ordinary general meeting shall be held in 2008.

### Subscription and Payment

The shares have been subscribed as follows:

PAGE 6



1.- 1.480 shares have been subscribed by Thierry Magon de la Villehuchet for EUR 148.000,-

2.- 1.480 shares have been subscribed by Patrick Littaye for EUR 148.000,-

3.- 740 shares have been subscribed by Banque Degroof Luxembourg S.A. for EUR 74.000,-

TOTAL : 3.700 shares for EUR 370.000 ,-

The shares have all been fully paid up in cash so that three hundred and seventy thousand EUR (EUR 370.000,-) are now available to the Company, evidence thereof having been given to the notary.

### Statement

The undersigned notary states that the conditions provided for in Article twenty-six of the law of tenth August, nineteen hundred and fifteen on commercial companies and amendments thereto have been observed.

### Expenses

The expenses, costs, remunerations or charges in any form whatsoever which shall be borne by the Company as a result of its formation are estimated at approximately EUR 6,500.-.

### General Meeting of Shareholders

The above-named persons, representing the entire subscribed capital and considering themselves as duly convoked, have immediately proceeded to an extraordinary general meeting. Having first verified that it was regularly constituted, the meeting took the following decisions:

**First resolution**

The meeting elected as Directors:

- Patrick LITTAYE,
  born on August 26, 1939, in Suresnes, France
  residing professionally, 524 rue Louise, B-1050 Bruxelles
  Partner Manager, Access International Advisors, LLC.

- Thierry Magon de la VILLEHUCHET,
  born on April 23, 1943, in Paris, France
  residing professionally, 509 Madison Avenue , 22nd Floor, New-York, NY 10 022, USA
  President and CEO, Access International Advisors, LLC.

- Alain LEONARD,
  born on March 18, 1968, in Ixelles, Belgium
  residing professionally, 12, rue Eugène Ruppert, L-2453 Luxembourg.
  Delegate Director, Banque Degroof Luxembourg S.A.

- Pierre DELANDMETER,
  born on March 26, 1959, in Uccle, Belgium
  residing professionally, 8-10, avenue Marie-Thérèse, L-2132 Luxembourg.
  Attorney at law, Luxembourg

The Directors shall remain in office until the close of the ordinary general meeting in 2008.

**Second resolution**
The registered office of the Company is fixed at 49, boulevard du Prince Henri, L-1724 Luxembourg.

The undersigned notary who understands and speaks English, states herewith that at the request of the above appearing parties, the present deed is worded in English followed by a French translation; at the request of the same appearing persons and in case of divergences between the English and the French texts, the English version will be prevailing.

Whereof the present notarial deed was drawn up in Luxembourg, on the day named at the beginning of this document.

The document having been read to the appearing persons, known to the notary by their names, surnames, civil status and residences, the said persons appearing signed together with us, the notary, the present original deed.

**Traduction française du texte qui précède:**

L'an deux mille sept, le cinq février.

Par-devant Nous, Maître Henri Hellinckx, notaire de résidence à Luxembourg, Grand-Duché de Luxembourg.

Ont comparu:

1) Monsieur Thierry Magon de la Villehuchet, Président et CEO, Access International Advisors, LLC, résidant professionnellement 509 Madison Avenue – 22nd floor, New York, NY 10 022 USA.
ici représentée par Monsieur Yannick Deschamps, juriste, résidant à Luxembourg, en vertu d'une procuration sous seing privé.

2) Monsieur Patrick Littaye, Partenaire Gérant, Access International Advisors, LLC, résidant 524, avenue Louise, B – 1050 Bruxelles.
ici représenté par Monsieur Yannick Deschamps, juriste, résidant à Luxembourg, en vertu d'une procuration sous seing privé.

3) Banque Degroof Luxembourg S.A. ayant son siège social 12, rue Eugène Ruppert, L-2453 Luxembourg,
ici représentée par Monsieur Yannick Deschamps, juriste, résidant à Luxembourg, en vertu d'une procuration sous seing privé.

Les procurations resteront, après avoir été paraphées ne varietur, annexées au présent acte pour être enregistrées avec lui.

Les parties comparantes, ès qualités en vertu desquelles elles agissent, ont demandé au notaire d'arrêter les statuts d'une société anonyme qu'elles forment entre elles:

**Art. 1er.** Il existe entre les souscripteurs et tous ceux qui deviendront propriétaires des actions ci-après émises, une société en la forme d'une société anonyme sous la dénomination de **Access Partners S.A.** (la 'Société').

**Art. 2.** La Société est établie pour une période indéterminée. Elle peut être dissoute à tout moment par décision de l'Assemblée Générale des actionnaires statuant comme en matière de modifications des statuts, ainsi qu'il est précisé à l'article vingt-deux ci-après.

**Art. 3.** La Société a pour objet social la fourniture de services de courtage et de conseil portant sur des opérations financières au sens le plus large autorisé par la loi luxembourgeoise du 5 avril 1993 relative au secteur financier, telle que modifiée (article 26). Il s'agit du conseil en investissement et du conseil économique en opérations financières visant à optimiser économiquement et financièrement la situation patrimoniale et la composition des actifs financiers de personnes physiques ou d'institutions d'intérêts privés ou publiques, qu'elles soit nationales, étrangères, étatiques, parastatales, ou internationales, de familles ou de groupements familiaux et d'organismes de placement collectifs en valeurs mobilières et d'organismes de placement collectifs, établis principalement sur le territoire de l'Union Européenne et accessoirement en dehors de ce territoire, ainsi que toutes activités, services d'introduction ou autre se rattachant directement à la profession de conseiller économique, de conseiller en opérations financières, de conseiller d'organismes de placement collectif ou encore à celle de conseiller en organisation.

La Société pourra également effectuer toutes opérations commerciales, civiles, financières, mobilières et immobilières, au Grand-Duché de Luxembourg ou à l'étranger, liées directement ou indirectement, en tout ou partie, à son objet social.

**Art. 4.** Le siège social est établi à Luxembourg, Grand-Duché de Luxembourg. Il peut être créé, par simple décision du Conseil d'Administration, des succursales ou bureaux, tant au Grand-Duché de Luxembourg qu'à l'étranger. Au cas où des événements extraordinaires d'ordre politique, économique, sociale ou militaire, que le Conseil d'Administration apprécie, de nature à compromettre l'activité normale à son siège social, ou la communication aisée avec ce siège ou de ce siège avec l'étranger se sont produits ou sont imminents, le siège social pourra être transféré temporairement à l'étranger, jusqu'à cessation complète de ces circonstances anormales; cette mesure provisoire n'aura toutefois aucun effet sur la nationalité de la Société laquelle, nonobstant ce transfert provisoire du siège, restera luxembourgeoise. Cette déclaration de transfert de siège social devra être portée à la connaissance des tiers par un des membres du Conseil d'Administration de la Société qui a les pouvoirs d'engager la Société par des actes de gestion journalière.

**Art. 5.**     Le capital souscrit est fixé à trois cent soixante-dix mille EUR (EUR 370.000,-), représenté par trois mille sept cents (3.700) actions d'une valeur nominale de cent EUR (EUR 100,-) chacune.

Le capital souscrit de la Société peut être augmenté ou réduit par décision des actionnaires statuant comme en matière de modification des statuts.

**Art. 6.**     Les actions seront et resteront nominatives et seront inscrites au registre des actionnaires. Il sera tenu au siège social de la Société un registre des actionnaires.

Ce registre contiendra le nom de chaque actionnaire, sa résidence ou son domicile élu, le nombre des actions qu'il détient, le montant libéré de chaque action, les cessions d'actions et la date de ces cessions.

Les cessions d'actions seront soumises à l'approbation du Conseil d'Administration et réalisées par déclaration écrite de transfert inscrite sur le registre des actionnaires. Cette déclaration sera datée et signée par le cédant et le cessionnaire ou par les personnes détentrices des pouvoirs ad hoc. La Société peut également accepter comme preuve de cession d'autres documents de transfert satisfaisant la Société.

La Société peut procéder au rachat de ses propres actions dans les limites fixées par la loi.

**Art. 7.**     L'Assemblée des actionnaires de la Société régulièrement constituée représente tous les actionnaires de la Société. Elle a les pouvoirs les plus larges pour ordonner, faire ou ratifier tous les actes relatifs aux opérations de la Société.

**Art. 8.**     L'Assemblée Générale annuelle des actionnaires se tiendra conformément à la loi luxembourgeoise à Luxembourg au siège social de la Société ou à tout autre endroit à Luxembourg, qui sera fixé dans l'avis de convocation le second jeudi du mois d'avril à 11.00 heures. Si ce jour n'est pas un jour bancaire ouvrable à Luxembourg, l'Assemblée Générale annuelle se tiendra le premier jour bancaire ouvrable suivant. L'Assemblée Générale annuelle pourra se tenir à l'étranger si le Conseil d'Administration constate souverainement que des circonstances exceptionnelles le requièrent. Les autres assemblées générales des actionnaires pourront se tenir aux heure et lieu spécifiés dans les avis de convocation concernés.

**Art. 9.**     Les quorums et délais requis par la loi régleront les avis de convocation et la conduite des assemblées des actionnaires de la Société dans la mesure où il n'en est pas autrement disposé dans les présents statuts. Toute action donne droit à une voix. Tout actionnaire pourra prendre part aux assemblées des actionnaires en désignant par écrit, par télégramme, par télécopieur ou par télex, un mandataire. Un actionnaire personne morale pourra établir une procuration dans le chef d'une personne dûment autorisée. Dans la mesure où il n'en est pas autrement disposé par la loi, les décisions de l'Assemblée des actionnaires, dûment convoquée, sont prises à la majorité simple des actionnaires présents et votants.

Le Conseil d'Administration peut déterminer toutes autres conditions à remplir par les actionnaires pour prendre part à l'Assemblée Générale.

**Art. 10.** Les assemblées des actionnaires seront convoquées par le Conseil d'Administration, à la suite d'un avis énonçant l'ordre du jour, publié conformément à la loi et envoyé par lettre recommandée, au moins huit jours avant l'Assemblée Générale, à tout actionnaire à son adresse portée au registre des actionnaires. Cependant, si tous les actionnaires sont présents ou représentés à une l'Assemblée Générale et s'ils affirment avoir été informés de l'ordre du jour de l'Assemblée, celle-ci pourra être tenue sans avis ou publication préalable.

**Art. 11.** La Société sera administrée par un Conseil d'Administration composé de trois membres au moins, lesquels n'auront pas besoin d'être actionnaires de la Société. Les administrateurs seront élus par l'Assemblée Générale annuelle pour une période ne dépassant pas 6 ans et jusqu'à ce que leurs successeurs aient été élus; toutefois, un administrateur peut être révoqué avec ou sans motif et/ou peut être remplacé à tout moment par décision des actionnaires. Au cas où le poste d'un administrateur deviendrait vacant à la suite de décès, de retraite, ou pour quelqu'autre cause, les administrateurs restants devront se réunir et élire à la majorité des voix un administrateur pour remplir provisoirement les fonctions attachées au poste devenu vacant, jusqu'à la prochaine Assemblée Générale des actionnaires. Au cas où, lors d'une réunion du Conseil d'Administration, il y a égalité de voix en faveur et/ou en défaveur d'une résolution, le président aura voix prépondérante.

**Art. 12.** Le Conseil d'Administration pourra choisir parmi ses membres un président et pourra élire en son sein un ou plusieurs vice-présidents. Il pourra également désigner un secrétaire qui n'a pas besoin d'être administrateur et qui devra dresser les procès-verbaux des réunions du Conseil d'Administration et des assemblées des actionnaires. Le Conseil d'Administration réunira sur la convocation du président ou de deux administrateurs, au lieu indiqué dans l'avis de convocation. Le président du Conseil d'Administration présidera les assemblées générales des actionnaires et les réunions du Conseil d'Administration, mais en son absence, les actionnaires ou le Conseil d'Administration pourront désigner, à la majorité des voix présentes, un autre administrateur, et pour les assemblées générales des actionnaires toute autre personne, pour assumer la présidence de ces assemblées et réunions. Le Conseil d'Administration, s'il y a lieu, nommera les directeurs de la Société dont un directeur général, un directeur général-adjoint ou d'autres directeurs considérés comme nécessaires pour gérer et mener à bien les affaires de la Société. Pareilles nominations peuvent être révoquées à tout moment par le Conseil d'Administration. Les directeurs n'ont pas besoin d'être administrateurs ou actionnaires de la Société. Pour autant que les statuts n'en décident pas autrement, les directeurs auront les pouvoirs et les obligations qui leur sont attribués par le Conseil d'Administration. Avis de toute réunion du Conseil d'Administration sera donné à tous les administrateurs au moins vingt-quatre heures avant l'heure prévue pour la réunion, sauf s'il y a urgence, auquel cas la nature de cette urgence sera mentionnée dans l'avis de convocation. On pourra passer outre à cette convocation par assentiment par écrit ou par câble, télégramme, télécopieur ou télex de chaque administrateur. Une convocation spéciale ne sera pas requise pour une réunion du Conseil d'Administration se tenant à une heure et à un endroit déterminés dans une résolution préalablement adoptée par le Conseil d'Administration.

PAGE 11

Tout administrateur pourra se faire représenter au Conseil d'Administration en désignant par écrit ou par câble, télégramme, télécopieur ou télex un autre administrateur comme son mandataire. Le Conseil d'Administration ne pourra délibérer et agir valablement que si au moins la majorité des administrateurs est présente ou représentée (qui peut être tenu par voie de conférence téléphonique).

Les décisions sont prises à la majorité des votes des administrateurs présents ou représentés. Nonobstant les dispositions précédentes, une décision du Conseil d'Administration peut également être prise par voie circulaire et résulter d'un seul ou de plusieurs documents contenant les résolutions et signé(s) par tous les membres du Conseil d'Administration sans exception. La date d'une telle décision sera la date de la dernière signature.

**Art. 13.** Les procès-verbaux des réunions du Conseil d'Administration seront signés par le président ou l'administrateur qui aura assumé la présidence en son absence. Les copies ou extraits des procès-verbaux destinés à servir en justice ou ailleurs seront signés par le président ou par le secrétaire ou par deux administrateurs.

**Art. 14.** Le Conseil d'Administration a les pouvoirs les plus larges pour mener à bien les affaires de la Société et prendre toutes les mesures de disposition et d'administration qui sont en relation avec l'objet de la Société..
Tous pouvoirs non expressément réservés à l'Assemblée Générale des actionnaires par la loi ou les présents statuts sont de la compétence du Conseil d'Administration

Le Conseil d'Administration a en particulier, le pouvoir de déterminer la politique de la Société ainsi que la conduite de la gestion et des affaires de la Société.

**Art. 15.** Aucun contrat et aucune transaction que la Société pourra conclure avec d'autres sociétés ou firmes ne pourront être affectés ou viciés par le fait qu'un ou plusieurs administrateurs ou fondés de pouvoir de la Société auraient un intérêt quelconque dans telle autre société ou firme, ou par le fait qu'il en serait administrateur, associé, fondé de pouvoir ou employé. L'administrateur ou fondé de pouvoir qui est administrateur fondé de pouvoir ou employé d'une société ou firme avec laquelle la Société passe des contrats, ou avec laquelle elle est en relation d'affaires, ne sera pas par-là même privé du droit de délibérer, de voter et d'agir en ce qui concerne toute matière en relation avec ce contrat ou autre affaire. Au cas où un administrateur ou fondé de pouvoir aurait un intérêt personnel dans quelque affaire de la Société, cet administrateur ou fondé de pouvoir devra informer le Conseil d'Administration de son intérêt personnel et il ne délibérera ou ne prendra pas part au vote sur cette affaire; rapport devra être fait au sujet de cette affaire et de l'intérêt personnel de pareil administrateur fondé de pouvoir à la prochaine Assemblée Générale des actionnaires. Le terme "intérêt personnel", tel qu'il est utilisé dans la phrase qui précède, ne s'applique pas aux relations ou intérêt impliquant le principal actionnaire, le fonds d'investissement assisté ou ses filiales ou sociétés affiliées, ou encore en rapport avec toute autre société ou entité juridique que le Conseil d'Administration pourra déterminer souverainement.

La Société pourra indemniser tout administrateur ou fondé de pouvoir, ses héritiers, exécuteurs testamentaires et administrateurs, des dépenses raisonnablement occasionnées par toutes actions ou procès auxquels il aura été partie en sa qualité d'administrateur ou fondé de pouvoir de la Société ou pour avoir été, à la demande de la Société, administrateur ou directeur de toute autre société dont la Société est actionnaire ou créditrice par laquelle il ne serait pas indemnisé, sauf le cas où dans pareils actions ou procès il sera finalement condamné pour négligence grave ou mauvaise administration; en cas d'arrangement extrajudiciaire, une telle indemnité ne sera accordée que si la Société est informée par son avocat-conseil que la personne à indemniser n'a pas commis un tel manquement à ses devoirs. Le droit à indemnisation n'exclura pas d'autres droits dont il pourrait être titulaire.

**Art. 16.** Le Conseil d'Administration de la Société pourra déléguer ses pouvoirs relatifs à la gestion journalière et à la conduite des affaires de la Société (y compris le droit d'agir comme dû mandataire) et ses pouvoirs concernant la politique et les objectifs de la Société à une ou plusieurs personnes physiques ou sociétés qui n'ont pas besoin d'être membres du Conseil d'Administration, qui auront les pouvoirs déterminés par le Conseil d'Administration et qui, si le Conseil d'Administration l'autorise, pourront sous-déléguer leurs pouvoirs.

Le Conseil d'Administration peut aussi conférer des pouvoirs par acte notarié ou procuration sous seing privé.

**Art. 17.** La Société sera engagée par la signature conjointe de deux administrateurs de la Société, ou par la signature individuelle du directeur général délégué à la gestion journalière conformément à l'Article 16, ou par la signature individuelle de toute autre personne à qui des pouvoirs de signature auront été spécialement délégués par le Conseil d'Administration.

**Art. 18.** Les comptes de la Société seront vérifiés par un réviseur d'entreprise. Le réviseur d'entreprise sera nommé et révoqué par les actionnaires réunis en Assemblée Générale qui fixera ses émoluments ainsi que la durée de son mandat.

**Art. 19.** L'exercice social de la Société commencera le premier jour de janvier de chaque année et se terminera le dernier jour de décembre de l'année suivante.

**Art. 20.** Il sera prélevé sur le bénéfice net annuel de la Société cinq pour cent (5%) qui seront affectés à la réserve prévue par la loi. Ce prélèvement cessera d'être obligatoire lorsque la réserve aura atteint dix pour cent (10%) du capital social tel qu'il est prévu à l'article 5 des statuts ou tel que celui-ci aura été augmenté ou réduit, ainsi qu'il est dit dans le même article.

L'Assemblée Générale des actionnaires déterminera, dans les limites prévues par la loi, sur base d'une proposition du Conseil d'Administration, la répartition des résultats annuels.

Le Conseil d'Administration peut décider de payer des dividendes intermédiaires en conformité avec la loi.

PAGE 13



Le paiement de ces dividendes sera effectué à l'adresse indiquée sur le registre des actionnaires.

Le Conseil d'administration déterminera la monnaie dans laquelle il paiera les dividendes ainsi que l'heure et le lieu de paiement.

**Art. 21.** En cas de dissolution de la Société, il sera procédé à la liquidation par les soins d'un ou de plusieurs liquidateurs (qui peuvent être des personnes physiques ou morales) qui seront nommés par l'Assemblée Générale des actionnaires qui déterminera leurs pouvoirs et leur indemnisation.

**Art. 22.** Les présents statuts pourront être modifiés le cas échéant par une assemblée générale des actionnaires soumise aux conditions de quorum et de vote requises par la loi luxembourgeoise.

**Art. 23.** Toutes les matières qui ne sont pas régies par les présents statuts, se réfèrent aux dispositions de la loi du dix août mil neuf cent quinze sur les sociétés commerciales telle que modifiée.

**Dispositions transitoires**

Le premier exercice social commencera le jour de la constitution de la Société et se terminera le dernier jour de décembre 2007.

La première assemblée générale ordinaire se tiendra en 2008.

**Souscription et Libération**

Les statuts de la Société ayant été arrêtés, les comparants déclarent souscrire aux actions du capital social comme suit:

1.-    1.480 actions sont souscrites par Thierry Magon de la Villehuchet soit une valeur de EUR 148.000,-

2.-    1.480 actions sont souscrites par Patrick Littaye soit une valeur de EUR 148.000,-

3.-    740 actions sont souscrites par Banque Degroof Luxembourg S.A. soit une valeur de EUR 74.000,-

TOTAL :    3.700 actions d'une valeur de EUR 370.000,-

Toutes les actions ont été intégralement libérées par des versements en espèces, de sorte que la somme de trois cent soixante-dix mille EUR (EUR 370.000,-) se trouve dès à présent à la disposition de la Société, ainsi qu'il a été justifié au notaire.

PAGE 14

### Constatation

Le notaire soussigné constate que les conditions exigées par l'article vingt-six de la loi du dix août mil neuf cent quinze sur les sociétés commerciales ont été observées.

### Dépenses

Les dépenses, frais, rémunérations et charges de toutes espèces qui incombent à la Société à la suite de sa constitution, s'élèvent approximativement à EUR 6.500.-.

### Assemblée générale des actionnaires

Les personnes sus-indiquées, représentant le capital souscrit en entier et se considérant comme régulièrement convoquées, ont immédiatement procédé à une assemblée générale extraordinaire. Après avoir vérifié qu'elle était régulièrement constituée, elles ont adopté les résolutions suivantes:

### Première résolution

Sont nommés administrateurs :

-Patrick LITTAYE,
Né le 26 août 1939 à Suresnes, France
résidant 524, avenue Louise, B-1050 Bruxelles
Partenaire Gérant, Access International Advisors, LLC.

-Thierry Magon de la VILLEHUCHET,
Né le 23 avril 1943 à Paris, France
résidant professionnellement 509 Madison Avenue , 22nd Floor, New-York, NY 10 022, USA
Président et CEO, Access International Advisors, LLC.

-Alain LEONARD,
Né le 18 mars 1968 à Ixelles, Belgique
résidant professionnellement 12, rue Eugène Ruppert, L-2453 Luxembourg.
Directeur, Banque Degroof Luxembourg S.A.

-Pierre DELANDMETER,
Né le 26 mars 1959 à Uccle, Belgique
résidant professionnellement 8-10, avenue Marie-Thérèse, L-2132 Luxembourg
Avocat à la Cour, Luxembourg

Les administrateurs resteront en fonction jusqu'à l'issue de l'Assemblée Générale Ordinaire de 2008.

### Deuxième résolution

Le siège social de la Société est établi 49, boulevard du Prince Henri, L–1724 Luxembourg.

PAGE 15

Le notaire soussigné qui comprend et parle la langue anglaise déclare qu'à la demande des parties comparantes, le présent acte de société est rédigé en langue anglaise, suivi d'une version française; à la requête des mêmes comparants et en cas de divergence entre les textes anglais et français, le texte anglais fera foi.

Dont acte, fait et passé à Luxembourg, date qu'en tête des présentes.

Et après lecture faite aux comparants, connus du notaire par leurs noms, prénoms usuels, états et demeures, les comparants ont signé avec Nous, notaire, la présente minute.

signé : Y. DESCHAMPS et H. HELLINCKX.

Enregistré à Luxembourg A.C., le 14 février 2007.
Volume 157s folio 92 case 6
Reçu trois mille sept cents euros
(3.700.- EUR)

Le Receveur, (s) J. MULLER



- POUR EXPEDITION CONFORME --
Délivrée à la société sur demande.

Mersch, le 28 février 2007.