# INVESTMENT ADVISORY AGREEMENT

THIS AGREEMENT is made as of August 15, 2007
Between

(1) **GROUPEMENT FINANCIER LIMITED** a Company incorporated in the British Virgin Islands whose registered office is at Kingston Chambers, P.O. Box 173, Road Town, Tortola, British Virgin Islands (the "Company");

(2) **ACCESS PARTNERS S.A.** a Company incorporated in Luxembourg whose registered office is 49, boulevard Prince Henri, L-1724 Luxembourg (the "Investment Adviser").

WHEREAS :

(A) The Investment Adviser is registered under the law of Luxembourg as Broker and Financial Advisor pursuant to article 26 of the Luxembourg law of 5th of April 1993 relating to the financial sector in Luxembourg as amended.

(B) The Company has selected the Investment Adviser to serve as its investment adviser and the Investment Adviser is ready and willing to serve as such, subject to and in accordance with the provisions hereinafter set forth.

Y J B D

NOW IT IS HEREBY AGREED:

**Article I: Defined Terms**

Terms defined in the present agreement and not otherwise defined herein shall have the same meanings as provided in the Prospectus and Articles of Incorporation.

**Article II: Appointment of the Investment Adviser**

The Company hereby appoints, on the terms and subject to the provisions of this Agreement, the Investment Adviser as investment adviser, and the Investment Adviser accepts such appointment and agrees to provide advisory services with respect to the assets of the Company and to assume the obligations set forth herein.

**Article III: Duties**

During its appointment, the Investment Adviser shall assist and perform services to the Company in relation with the investment of the cash and assets of the Company.

The Investment Adviser shall:

1. give recommendations to the Company for the manner in which the cash raised by the Company might be invested;
2. give recommendations to the Company for the manner in which any cash required for the redemption of shares or other purposes of the Company should be realised;
3. advise the Company concerning all actions which it appears to the Investment Adviser the Company should consider to carry into effect the purchase and sale programmes;
4. assist the Company in obtaining necessary information to determine the net asset value of the Company;
5. recommend when any suspension of the net asset value of the Company should be declared pursuant to the Articles of Association and when any such suspension should be terminated;
6. advise whether and in what manner all rights conferred by the investments of the Company shall be exercised;
7. provide regularly to the Company information and documentation, together with a detailed analysis thereof relating to the markets contemplated by the investment policy of the Company;
8. prepare material for insertion in the annual and other reports of the Company;
9. recommend to the Company the brokers and dealers through which the Company trade.

The Investment Adviser and the Company undertake to keep each other informed of the relevant developments affecting the investments of the Company.
The Company shall without any delay inform the Investment Adviser of any amendments to the Company's policy.

**ARTICLE IV: Investment Restrictions**

In carrying out its duties, the Investment Adviser shall regard to:

1. the investment policy and objectives determined by the Company;
2. any restrictions for the time being contained in the Articles of Incorporation and the Confidential Memorandum with regard to investment and borrowing;
3. the entitlement of the shareholders of the Company to require redemption of the shares;
4. the terms of any exchange control consent and any other present or future governmental consents;
5. any directions from the Board of Directors;
6. any other matter to which a prudent investment to a manager should reasonably pay regard in the proper discharge of its duties.

The Investment Adviser shall not have any power to enter into any transaction on behalf of or in any way to bind the Company.

**ARTICLE V: Instructions**

In carrying out its duties, the Investment Adviser shall comply with all proper instructions of the Company or its investment manager in connection therewith.

Whenever used in this Agreement, the term "proper instructions" shall be deemed to mean any written instruction, computer transmission, telex or facsimile transmission signed by any Director of the investment manager of the Company or the Company or purporting to be signed by a Director or (unless the Investment Adviser is notified by the Directors otherwise) by one or more authorised officer(s) or designated agents of any other person or persons designated in writing for this purpose by the investment manager of the Company or the Company. The authorised signature is valid as long as the Investment Adviser has not received a contrary statement.

The investment manager of the Company and the Company shall deposit with the Investment Adviser, in its capacity as investment adviser under the present Agreement the signature(s) of its statutory representative(s) or authorised signatories. The Investment Adviser may solely rely on such specimen, irrespective of any entries in commercial registries or other official publications. A certified copy of a resolution of the investment manager of the Company and the Company's Board of Directors may be received by the Investment Adviser as conclusive evidence of the authority of any person to give proper instruction.

The Investment Adviser shall not be liable for accepting, and shall be fully protected in relying upon any instructions believed by it to be genuine and to have been properly executed by or on behalf of the investment manager of the Company and the Company.

**ARTICLE VI: Remuneration**

For the rendering of its services according to the present Agreement, the Company shall pay or cause to be paid to the Investment Adviser a remuneration including in the portfolio management fee as described in an appendix to this Agreement and be agreed from time to time between the parties hereto.

This remuneration may be revised at any time between the parties hereto.



The Investment Adviser shall render the services referred to in the present Agreement at its own expenses including, without limitation, wages of employees necessary for such services, cable, telex, mail and telecopier charges and other advisory and operating expenses, as well as any fees payable to its correspondents, associates or any other persons from which it receives services.

**ARTICLE VII: Liability**

The Investment Adviser shall not be liable for any loss or damage suffered by the Company arising directly or indirectly out of any error of judgment or oversight or mistake of the law on the part of the Investment Adviser made or committed in good faith in the performance of its duties and the Investment Adviser shall not in the absence of gross negligence or wilful misconduct or bad faith responsible for any loss or damage which the Investment Manager and/or the Company may sustain or suffer as the result of or in the course of the discharge of its duties. The Company shall indemnify and hold harmless the Investment Adviser against all claims and demands (including costs and expenses arising as a result) which may be made against the Investment Adviser in respect of any loss or damage sustained or suffered or alleged to have been sustained or suffered by any third party otherwise than by reason of the gross negligence or wilful misconduct or bad faith of the Investment Adviser.

The Investment Adviser shall send to the Investment Manager or the Company as soon as possible all notices of claims summons or writs which may receive arising from the performance of its duties and no liability of any sort shall be admitted and no undertakings given nor shall any offer promise or payment be made or legal expenses incurred by the Investment Adviser in relation to any claim summons or writs without the written consent of the Investment Manager or the Company who shall be entitled if it is so desires to take over and conduct the defence of any action or to prosecute any claim for indemnity or damages or otherwise against any third party.

**ARTICLE VIII: Conflict of Interest**

The Directors of the Investment Adviser and any affiliate thereof, its members and staff may engage in various activities other than the Company's and/or the Investment Adviser's business, including providing consulting and other services (including, without limitation, serving as Director) to a variety of partnerships, corporations and other entities, not excluding those in which the Company invests. However, the Investment Adviser and its members will devote the time and effort necessary and appropriate to the business of the Company.

The Directors of the Investment Adviser and any affiliates thereof, its members and staff may also invest and trade for their own accounts. Because the Directors of the Investment Adviser and any affiliate thereof, its members and staff can have other accounts managed by them, the interests of the Company and other accounts, in the selection, negotiation and administration of investments, may conflict.

The Investment Adviser and its members will attempt to resolve all such conflicts in a manner that it deemed equitable to all parties under the circumstances.

**ARTICLE IX: Termination**

This Agreement is entered into for an indefinite duration. It shall become effective on the date as of which it is made. Either party may terminate this Agreement upon written notice thereof delivered or dispatched by registered mail by the one to the other not less than 3 months prior to the date upon which such termination becomes effective. Cost of termination will be the ones conform to common practice in Luxembourg.



However, the Investment Adviser, the Company may terminate this Agreement forthwith and at any time upon written notice thereof delivered or dispatched by registered mail by the one to the other provided that there is a breach of any material clause contained in this Agreement or gross negligence which shall not have been remedied within 30 days of written notice thereof having been given by either party to the party in breach shall entitle the party giving such notice to terminate the Agreement with immediate effect.

This Agreement shall be terminated forthwith upon any party being declared bankrupt or becoming subject to a similar procedure of compulsory liquidation or administration.

**ARTICLE X: Duty of secrecy**

Notwithstanding any more constringent obligations of the Company under Luxembourg banking secrecy rules, neither of the parties hereto shall unless compelled or authorised to do so by law or by any court of competent jurisdiction or by the other party, disclose to any person information relating to the other party or to the affairs of such party. Each party shall use its best endeavours to prevent any disclosure as aforesaid, before or after the termination of this Agreement.

**ARTICLE XI: Assignment**

This Agreement shall not be assigned by any party save with the prior written consent of all other parties.

**ARTICLE XII: Notices**

Any notice given thereunder shall be given by sending the same by registered mail, or by telegram, cable, telex or facsimile confirmed in each case by a signed copy sent forthwith by registered mail or by delivering the same by hand; such notice shall be addressed, dispatched or delivered (as the case may be) to the following addresses:

| | |
|---|---|
| Notices to the Investment Adviser: | **ACCESS PARTNERS SA**<br>49, boulevard Prince Henri<br>L-1724 Luxembourg |
| Notice to the Company: | **GROUPEMENT FINANCIER LIMITED**<br>Kingston Chambers<br>P.O. Box 173, Road Town<br>Tortola<br>British Virgin Islands |

The above mentioned addresses may be changed by simple notice of such change from each party.

Any notice sent by post, by telegram, cable, telex, facsimile or by hand as provided in this clause shall be deemed to have been given upon receipt. Failure to receive any confirmation of any notice duly given by post, telegram, cable, telex or facsimile shall not invalidate such notice.

**ARTICLE XIII: Waiver, etc.**

Should one or several clauses of this agreement be or become invalid, ineffective or void, the remaining clauses would not be affected and should be interpreted or completed in a way as to maintain the economic aim as exactly as possible in a legally allowable way. This is also relevant for gaps that would need to be completed.

No provision of this Agreement may be changed, waived, discharged or discontinued, except by any instrument in writing signed by or on behalf of all parties hereto.

**ARTICLE XIV: Governing law**

This Agreement shall be governed by and construed in accordance with the laws of the Grand Duchy of Luxembourg.

**ARTICLE XV: Jurisdiction**

In relation to any legal action or proceedings arising out of or in connection with this Agreement, the parties hereto submit to the exclusive jurisdiction of the District Court of Luxembourg, ("Tribunal d'Arrondissement") Grand Duchy of Luxembourg.

---

IN WITNESS whereof the parties hereto have caused this Agreement to be executed as of the day and year first above written, in three counterparts, one such counterpart to be retained by each party.

SIGNED by
**GROUPEMENT FINANCIER LIMITED**

name : ....................
title : ......................

name : ....................
title : ......................

SIGNED by
**ACCESS PARTNERS SA**

name : ....................
title : ......................

name : ....................
title : ......................

# APPENDIX N° 1
## TO THE INVESTMENT ADVISORY AGREEMENT DATED AS OF August 15, 2007

**AN APPENDIX dated as of August 15, 2007**

Between

(1) **GROUPEMENT FINANCIER LIMITED** a Company incorporated in the British Virgin Islands whose registered office is at Kingston Chambers, P.O. Box 173, Road Town, Tortola, British Virgin Islands (the "Company");

**AND**

(2) **ACCESS PARTNERS S.A.** a Company incorporated in Luxembourg whose registered office is 49, boulevard Prince Henri, L-1724 Luxembourg (the "Investment Advisor").

**WHEREAS:**

- The Investment Advisor has been appointed as Investment Advisor of GROUPEMENT FINANCIER LIMITED (hereinafter designated as the "Company") following an Investment Advisory Agreement dated August 15, 2007;
- Section VI "Renumeration" states that "For the rendering of its services according to the present Agreement, the Company shall pay or cause to be paid to the Investment Adviser a remuneration including in the portfolio management fee as described in an appendix to this Agreement and be agreed from time to time between the parties hereto".



**IT HAS BEEN AGREED AS FOLLOWS:**

- The Company hereby assigns to pay to the Investment Advisor the following fees:
  - The Investment Advisor shall be paid an annual fee equal to USD 50,000, payable quarterly in arrears.

**IN WITNESS** whereof this Exhibit has been entered into the day and year first above written.

***This Appendix forms integral part of the captioned Agreement.***

SIGNED by
**GROUPEMENT FINANCIER LIMITED**

name : ....................
title : ......................

name : ....................
title : ......................

SIGNED by
**ACCESS PARTNERS SA**

name : ....................
title : ......................

name : ....................
title : ......................

JPD