41905

# MEMORIAL
Journal Officiel
du Grand-Duché de
Luxembourg



# MEMORIAL
Amtsblatt
des Großherzogtums
Luxemburg

## RECUEIL DES SOCIETES ET ASSOCIATIONS

Le présent recueil contient les publications prévues par la loi modifiée du 10 août 1915 concernant les sociétés commerciales et par loi modifiée du 21 avril 1928 sur les associations et les fondations sans but lucratif.

C — N° 874                                                                                   27 août 2003

## SOMMAIRE

Abbey Holdings S.A., Moutfort................. 41952
ACM Global Investments ...................... 41906
Access International Advisors (Luxembourg) S.A.,
  Luxembourg................................ 41919
Aerotrading S.A., Luxembourg ................ 41946
Artmarkt Holding S.A., Luxembourg ........... 41948
Axor Holding S.A., Luxembourg ............... 41948
B.C. Invest Holding S.A., Diekirch ............. 41929
B.C. Invest Holding S.A., Diekirch ............. 41929
B.C. Invest Holding S.A., Diekirch ............. 41930
B.C. Invest Holding S.A., Diekirch ............. 41930
B.C. Invest Holding S.A., Diekirch ............. 41930
B.C. Invest Holding S.A., Diekirch ............. 41930
BCILux Conseil S.A.H., Luxembourg............ 41942
Boch & Sons Asset Management, S.à r.l., Flax-
  weiler .................................... 41926
Bottega Veneta International, S.à r.l., Luxem-
  bourg..................................... 41928
CODILUX, S.à r.l., Comptoir de Distribution
  Luxembourgeois, Hobscheid ................ 41946
Doneck Euroflex S.A., Grevenmacher........... 41951
Dreyfus America Fund, Sicav, Luxembourg ...... 41941
Emerging Markets Debt and Currency Fund, Sicav,
  Luxembourg............................... 41944
European Diversified Bond Fund, Sicav, Luxem-
  bourg..................................... 41945
Eurotime S.A.H., Luxembourg................. 41950
Expotex S.A., Luxembourg.................... 41952
Fabricola S.A., Luxembourg................... 41938
Fidev S.A.H., Luxembourg .................... 41949
Finagra S.A.H., Luxembourg .................. 41950
Fortuna Select Fund, Sicav, Luxembourg........ 41949
Franklin Templeton Management Luxembourg
  S.A., Luxembourg ......................... 41947
G-Equity Fix, Sicav, Luxembourg............... 41906
G-Equity Fix, Sicav, Luxembourg............... 41906
Gabri S.A., Luxembourg ...................... 41930

GÖHRINGER-Fondspicking Aktiv ............. 41916
Groupe Cofilux (Compagnie Financière Luxem-
  bourgeoise) S.A., Mondorf-les-Bains .......... 41945
Guardian DBC, S.à r.l., Dudelange ............. 41910
Hilltech S.A., Luxembourg .................... 41951
HSBC International Select Fund, Sicav, Luxem-
  bourg..................................... 41941
Immo-Croissance Conseil S.A., Luxembourg .... 41944
Immoint S.A., Luxembourg.................... 41944
Invecolux A.G., Luxembourg................... 41951
Landex S.A., Luxembourg..................... 41933
LaSalle Asia Recovery International I, S.à r.l.,
  Luxembourg............................... 41918
LaSalle Asia Recovery International II, S.à r.l.,
  Luxembourg............................... 41945
Luxembourg Global Asset Management S.A., Lu-
  xembourg ................................ 41935
MeesPierson-Strategy, Sicav, Luxembourg...... 41916
Metallbau Holding S.A., Weiswampach......... 41918
Methusala S.A.H., Luxembourg ............... 41948
MTHR S.A., Luxembourg ..................... 41950
Noigel Holding S.A., Mersch .................. 41936
Obransson Holding S.A., Luxembourg.......... 41951
Ogoue Holding S.A., Luxembourg ............. 41949
Radiant Europe, S.à r.l. ...................... 41942
Radiant Europe, S.à r.l. ...................... 41943
Radiant Europe, S.à r.l. ...................... 41943
Radiant Europe, S.à r.l. ...................... 41943
Radiant Europe, S.à r.l. ...................... 41943
Restaurant-Pizzeria La Toscana, S.à r.l., Foetz... 41916
Restaurant-Pizzeria La Toscana, S.à r.l., Foetz... 41917
Sodefi S.A.H., Luxembourg.................... 41948
Standard Fund Management (Luxembourg) Um-
  brella Fund, Sicav, Luxembourg.............. 41947
Surinvest S.A., Luxembourg ................... 41945
Ultracalor Commercial S.A., Niederanven ...... 41947
Xaro S.A.H., Luxembourg..................... 41952

41919

Le bilan au 31 décembre 2001, enregistré à Luxembourg, le 21 juillet 2003, réf. LSO-AG06025, a été déposé au registre de commerce et des sociétés de Luxembourg, le 31 juillet 2003.

Pour mention aux fins de la publication au Mémorial, Recueil des Sociétés et Associations.

Luxembourg, le 31 juillet 2003.                                                                 Signature.

(044533.3//10) Déposé au registre de commerce et des sociétés de Luxembourg, le 31 juillet 2003.

**ACCESS INTERNATIONAL ADVISORS (LUXEMBOURG) S.A., Société Anonyme.**
Registered office: L-1840 Luxembourg, 7, boulevard Joseph II.
R. C. Luxembourg B 94.564.
—

STATUTES

In the year two thousand three, on the third day of July.
Before Us, Maître Henri Hellinckx, notary residing in Mersch, (Grand Duchy of Luxembourg).

There appeared:

1) ACCESS INTERNATIONAL ADVISORS, INC with its registered office at 509 Madison Avenue - 22nd floor, New York, NY 10 022 USA.
here represented by Mr Pierre Delandmeter, Attorney at Law, residing in Luxembourg,
by virtue of a proxy given under private seal.

2) ACCESS INTERNATIONAL ADVISORS EUROPE LTD with its registered office at 5-11 Lavington Street, London SE1 ONZ, United Kingdom.
here represented by Mr Pierre Delandmeter, prenamed,
by virtue of a proxy given under private seal.

3) BANQUE DEGROOF LUXEMBOURG S.A. with its registered office at 7, boulevard Joseph II, L-1840 Luxembourg.
here represented by Ms Martine Vermeersch, Private Employee, residing professionally in Luxembourg,
by virtue of a proxy given under private seal.

The proxies given, signed ne varietur by all the appearing parties and the undersigned notary, shall remain annexed to this document to be filed with the registration authorities.

Such appearing parties, in the capacity in which they act, have requested the notary to state as follows the Articles of Incorporation of a société anonyme, which they form between themselves:

**Art. 1.** There exists among the subscribers and all those who may become owners of the shares hereafter issued, a corporation in the form of a société anonyme under the name of ACCESS INTERNATIONAL ADVISORS (LUXEMBOURG) S.A. (the «Company»).

**Art. 2.** The Company is established for an unlimited duration. The Company may be dissolved at any moment by a resolution of the shareholders adopted in the manner required for amendment of these Articles of Incorporation, as prescribed in Article twenty-two hereof.

**Art. 3.** The purposes of the Company are the creation, the administration and the management of investment funds as provided by Chapter 14 of the Luxembourg law of December 20, 2002 relating to undertakings for collective investment.

The Company may also carry out any operation, within the territory of the Grand Duchy of Luxembourg or abroad, which is directly or indirectly related, in whole or in part, to its corporate object.

**Art. 4.** The registered office of the Company is established in Luxembourg City, in the Grand Duchy of Luxembourg. Branches or other offices may be established either in Luxembourg or abroad by resolution of the Board of Directors. In the event that the Board of Directors determines that extraordinary political, economic, social or military developments have occurred or are imminent that would interfere with the normal activities of the Company at its registered office, or with the ease of communication between such office and persons abroad, the registered office may be temporarily transferred abroad until the complete cessation of these abnormal circumstances; such temporary measures shall have no effect on the nationality of the Company which, notwithstanding the temporary transfer of its registered office, will remain a Luxembourg company. Such declaration of the transfer of the registered office shall be made and brought to the attention of third parties by one of the executive organs of the Company which has powers to commit the Company for acts of daily and ordinary management.

**Art. 5.** The subscribed capital is set at one hundred twenty-five thousand euro (EUR 125,000.-) represented by one thousand two hundred and fifty (1,250) shares with a nominal value of one hundred euro (EUR 100.-) each.

The subscribed capital of the Company may be increased or reduced by a resolution of the shareholders adopted in the manner required for amendment of these Articles of Incorporation.

**Art. 6.** The shares shall be and remain in registered form and shall be registered in the register of shareholders. A register of shareholders shall be kept at the registered office of the Company. Such register shall set forth the name of each shareholder, his residence or elected domicile, the number of shares held by him, the amounts paid in on each such share, and the transfers of shares and the dates of such transfers.

Subject to the approval of the Board of Directors, transfer of a share shall be effected by a written declaration of transfer registered on the register of shareholders, such declaration to be dated and signed by the transferor and the

41920

transferee or by persons holding suitable powers of attorney to act therefore. The Company may also accept as evidence of transfer other instruments of transfer satisfactory to the Company.

The Company can proceed to the repurchase of its own shares within the bounds laid down by the law.

**Art. 7.** Any regularly constituted meeting of the shareholders of the Company shall represent the entire body of shareholders of the Company. It shall have the broadest powers to order, carry out or ratify acts relating to the operations of the Company.

**Art. 8.** The annual general meeting of shareholders shall be held, in accordance with Luxembourg law, in Luxembourg at the registered office of the Company, or at such other place in Luxembourg as may be specified in the notice of meeting, on the second Thursday in the month of April at 12.00 a.m. If such day is not a bank business day, the annual general meeting shall be held on the next following bank business day. The annual general meeting may be held abroad if, in the absolute and final judgment of the Board of Directors, exceptional circumstances so require. Other meetings of shareholders may be held at such place and time as may be specified in the respective notices of meeting.

**Art. 9.** The quorum and delays, required by law shall govern the notice and conduct of the meetings of shareholders of the Company, unless otherwise provided herein. Each share is entitled to one vote. A shareholder may act at any meeting of shareholders by appointing another person as his proxy in writing or by cable or telegram or telefax or telex. A corporation may execute a form of proxy under the hand of a duly authorised officer. Except as otherwise required by law, resolutions at a meeting of shareholders duly convened will be passed by a simple majority of those present or represented and voting. The Board of Directors may determine all other conditions that must be fulfilled by shareholders for them to take part in any meeting of shareholders.

**Art. 10.** Shareholders will meet upon call by the Board of Directors, pursuant to notice setting forth the agenda sent by registered mail at least eight days prior to the meeting to each shareholder at the shareholder's address in the register of shareholders, and publicized in accordance with the requirements of law.

If, however, all of the shareholders are present or represented at a meeting of shareholders, and if they state that they have been informed of the agenda of the meeting, the meeting may be held without prior notice or publication.

**Art. 11.** The Company shall be managed by a Board of Directors composed of at least three members, who need not be shareholders of the Company. The directors shall be elected by the shareholders at their annual general meeting, for a term not exceeding six years and until their successors are elected and qualify, provided, however, that a director may be removed with or without cause and/or replaced at any time by resolution adopted by the shareholders. In the event of a vacancy in the office of director because of death, retirement or otherwise, the remaining directors may meet and may elect, by majority vote, a director to fill such vacancy until the next meeting of shareholders. In the event that in any meeting the number of votes for and against a resolution shall be equal, the chairman shall have a casting vote.

**Art. 12.** The Board of Directors may choose from among its members a chairman, and may choose from among its members one or more vice-chairmen. It may also choose a secretary, who need not be a director, who shall be responsible for keeping the minutes of the meetings of the Board of Directors and of the shareholders. The Board of Directors shall meet upon call by the chairman, or two directors, at the place indicated in the notice of meeting. The chairman shall preside over all meetings of shareholders and the Board of Directors, but in his absence the shareholders or the Board of Directors may appoint another director, and in respect of shareholders' meetings any other person, as chairman pro tempore by vote of the majority present or represented at any such meeting. The Board of Directors may from time to time appoint the officers of the Company, including a general manager and any assistant general managers or other officers considered necessary for the operation and management of the Company. Any such appointment may be revoked at any time by the Board of Directors. Officers need not be directors or shareholders of the Company. The officers appointed, unless otherwise stipulated in these Articles, shall have the powers and duties given them by the Board of Directors. Notice of any meeting of the Board of Directors shall be given to all directors at least twenty-four hours in advance of the hour set for such meeting, except in circumstances of emergency, in which case the nature of such circumstances shall be set forth in the notice of meeting. This notice may be waived by the consent in writing or by cable or telegram or telefax or telex of each director. Separate notice shall not be required for individual meetings held at times and places prescribed in a schedule previously adopted by resolution of the Board of Directors.

Any director may act at any meeting of the Board of Directors by appointing in writing or by cable or telegram or telefax or telex another director as his proxy. The Board of Directors can deliberate or act validly only if at least the majority of the directors are present or represented at a meeting of the Board of Directors (which may be held by way of a conference call).

Decisions shall be taken by a majority of the votes of the directors present or represented at such meeting. Notwithstanding the foregoing, a resolution of the Board of Directors may also be passed in writing and may consist of one or several documents containing the resolutions and signed by each and every director. The date of such a resolution shall be the date of the latest signature.

**Art. 13.** The minutes of any meeting of the Board of Directors shall be signed by the chairman or, in his absence, by the chairman pro tempore who presided over such meeting. Copies or extracts of such minutes which may be produced in judicial proceedings or otherwise shall be signed by the chairman, or by the secretary, or by two directors.

**Art. 14.** The Board of Directors possesses the widest powers to manage the business of the Company and to take all actions of disposal and administration which are in line with the objects of the Company, and anything which is not a matter for the general meeting in accordance with the present Articles or governed by law, comes within its competence.

41921

The Board of Directors has in particular power to determine the corporate policy and the course of conduct of the management and business affairs of the Company.

**Art. 15.** No contract or other transaction between the Company and any other corporation or firm shall be affected or invalidated by the fact that any one or more of the directors or officers of the Company is interested in, or is a director, associate, officer or employee of such other corporation or firm. Any director or officer of the Company who serves as a director, associate, officer or employee of any corporation or firm with which the Company shall contract or otherwise engage in business shall not, by reason of such affiliation with such other corporation or firm, be prevented from considering and voting or acting upon any matters with respect to such contract or other business. In the event that any director or officer of the Company may have any personal interest in any transaction of the Company, such director or officer shall make known to the Board of Directors such personal interest and shall not consider or vote upon any such transaction, and such transaction and such director's or officer's interest therein, shall be reported to the next succeeding meeting of shareholders. The term «personal interest», as used in the preceding sentence, shall not include any relationship with or interest in any matter, position or transaction involving the principal shareholder, the investment funds under assistance or any subsidiary or any affiliate thereof or such other corporation or entity as may from time to time be determined by the Board of Directors in its discretion.

The Company may indemnify any director or officer, and his heirs, executors and administrators, against expenses reasonably incurred by him in connection with any action, suit or proceeding to which he may be made a party by reason of his being or having been a director or officer of the Company, or, at its request, of any other corporation of which the Company is a shareholder or creditor and from which he is not entitled to be indemnified, except in relation to matters as to which he shall be finally adjudged in such action, suit or proceeding to be liable for gross negligence or misconduct; in the event of a settlement, indemnification shall be provided only in connection with such matters covered by the settlement as to which the Company is advised by counsel that the person to be indemnified did not commit such a breach of duty. The foregoing right of indemnification shall not exclude other rights to which he may be entitled.

**Art. 16.** The Board of Directors of the Company may delegate its powers to conduct the daily management and affairs of the Company (including the right to act as authorized signatory for the Company) and its powers to carry out acts in furtherance of the corporate policy and purpose to one or several physical persons or corporate entities, which need not be members of the Board of Directors, who shall have the powers determined by the Board of Directors and who may, if the Board of Directors so authorizes, sub-delegate their powers.

Delegation to a member of the Board of Directors shall be subject to the prior authorization of the general meeting. The Board of Directors may also confer special powers of attorney by notarial or private proxy.

**Art. 17.** The Company will be bound by the joint signatures of any two directors of the Company, or by the individual signature of the day-to-day manager designated pursuant to Article sixteen hereof, or by the individual signature of any person to whom such signatory authority has been delegated by the Board of Directors.

**Art. 18.** The accounts of the Company shall be audited by an external auditor. The external auditor shall be appointed and removed by the shareholders at the general meeting who shall determine his office term and fees.

**Art. 19.** The accounting year of the Company shall begin on the first day of January each year and shall terminate on the last day of December of the same year.

**Art. 20.** From the annual net profit of the Company, five per cent (5%) shall be allocated to the reserve required by law. This allocation shall cease to be required as soon and as long as such reserve amounts to ten per cent (10%) of the capital of the Company as stated in Article five hereof or as increased or reduced from time to time as provided in the same Article.

Within the limits provided by law, the general meeting of shareholders shall, upon the proposal of the Board of Directors, determine how the annual results shall be disposed of.

The Board of Directors may decide to pay interim distributions in accordance with the law.

The payment of the distributions shall be made to the address indicated on the register of shareholders.

The Board of Directors may pay the distributions in such currency and at such time and place that it shall determine from time to time.

**Art. 21.** In the event of a dissolution of the Company, liquidation shall be carried out by one or several liquidators (who may be physical persons or legal entities) named by the meeting of shareholders effecting such dissolution and which shall determine their powers and their compensation.

**Art. 22.** These Articles may be amended from time to time by a meeting of shareholders, subject to the quorum and voting requirements provided by the laws of Luxembourg.

**Art. 23.** All matters not governed by these Articles of Incorporation shall be determined in accordance with the law of tenth August, nineteen hundred and fifteen on commercial companies and amendments thereto.

*Transitory Dispositions*

The first financial year begins on the date of incorporation of the company and shall end on December 31, 2003. The first annual general meeting shall be held in the year 2004.

*Subscription and Payment*

The shares have been subscribed as follows:
1.- 625 shares have been subscribed by ACCESS INTERNATIONAL ADVISORS, INC for EUR 62,500.-
2.- 375 shares have been subscribed by ACCESS INTERNATIONAL ADVISORS EUROPE LTD for EUR 37,500.-
3.- 250 shares have been subscribed by BANQUE DEGROOF LUXEMBOURG S.A. for EUR 25,000.-
Total: 1,250 shares for EUR 125,000.-

41922

The shares have all been fully paid up in cash so that one hundred and twenty-five thousand euro (EUR 125,000.-) are now available to the Company, evidence thereof having been given to the notary.

*Statement*

The undersigned notary states that the conditions provided for in Article twenty-six of the law of tenth August, nineteen hundred and fifteen on commercial companies and amendments thereto have been observed.

*Expenses*

The expenses, costs, remunerations or charges in any form whatsoever which shall be borne by the Company as a result of its formation are estimated at approximately four thousand Euro.

*General Meeting of Shareholders*

The above-named persons, representing the entire subscribed capital and considering themselves as duly convoked, have immediately proceeded to an extraordinary general meeting. Having first verified that it was regularly constituted, the meeting took the following decisions:

*First resolution*

The meeting elected as Directors:
- Mr Patrick Littaye, General Manager Palternative, Paris, born on August 26, 1939, in Suresnes, France, residing professionally, 7, rue Eugène Labiche, F-75016 Paris.
- Mr Thierry de la Villehuchet, Founding Chairman and CEO ACCESS INTERNATIONAL ADVISORS, LLC, New York, born on April 23, 1943, in Paris, France, residing professionally, 509 Madison Avenue, 22nd Floor, New-York, NY 10 022, USA
- Mr Jean-Michel Gelhay, Director, BANQUE DEGROOF LUXEMBOURG S.A., born on December 1, 1949, in Arlon, Belgium, residing professionally, 7, boulevard Joseph II, L-1840 Luxembourg.
- Mr Pierre Delandmeter, Attorney at law, born on March 26, 1959, in Uccle, Belgium, residing professionally, 7, rue du Saint Esprit, L-1475 Luxembourg.

The Directors shall remain in office until the close of the ordinary general meeting in 2004.

*Second resolution*

The meeting elected as external auditor:
KPMG AUDIT, L-2520 Luxembourg, 31, allée Scheffer.
The external auditor shall remain in office until the close of the ordinary general meeting in 2004.

*Third resolution*

The meeting authorised the Board of Directors to delegate its powers in accordance with Article sixteen to a member of the Board of Directors.

*Fourth resolution*

The registered office of the Company is fixed at 7, boulevard Joseph II, L-1840 Luxembourg.

The undersigned notary who understands and speaks English, states herewith that at the request of the above appearing parties, the present deed is worded in English followed by a French translation; at the request of the same appearing persons and in case of divergences between the English and the French texts, the English version will be prevailing.

Whereof the present notarial deed was drawn up in Luxembourg, on the day named at the beginning of this document.

The document having been read to the appearing persons, known to the notary by their names, surnames, civil status and residences, the said persons appearing signed together with us, the notary, the present original deed.

**Traduction française du procès-verbal qui précède:**

L'an deux mille trois, le trois juillet.
Par-devant Nous, Maître Henri Hellinckx, notaire de résidence à Mersch, (Grand-Duché de Luxembourg).

Ont comparu:

1) ACCESS INTERNATIONAL ADVISORS, INC ayant son siège social 509 Madison Avenue - 22nd floor, New York, NY 10 022 USA,
ici représentée par Monsieur Pierre Delandmeter, Avocat à la Cour, demeurant à Luxembourg,
en vertu d'une procuration sous seing privé.
2) ACCESS INTERNATIONAL ADVISORS EUROPE LTD ayant son siège social 5-11 Lavington Street, London SE1 0NZ, United Kingdom,
ici représentée par Monsieur Pierre Delandmeter, prénommé,
en vertu d'une procuration sous seing privé.
3) BANQUE DEGROOF LUXEMBOURG S.A. ayant son siège social 7, boulevard Joseph II, L-1840 Luxembourg,
ici représentée par Mademoiselle Martine Vermeersch, employée privée, demeurant professionnellement à Luxembourg, en vertu d'une procuration sous seing privé.

Les procurations resteront, après avoir été paraphées ne varietur, annexées au présent acte pour être enregistrées avec lui.

Les parties comparantes, ès qualités en vertu desquelles elles agissent, ont demandé au notaire d'arrêter comme suit les statuts d'une société anonyme qu'elles forment entre elles:

41923

**Art. 1er.** Il existe entre les souscripteurs et tous ceux qui deviendront propriétaires des actions ci-après émises, une société en la forme d'une société anonyme sous la dénomination de ACCESS INTERNATIONAL ADVISORS (LUXEMBOURG) S.A. (la «Société»).

**Art. 2.** La Société est établie pour une période indéterminée. Elle peut être dissoute à tout moment par décision de l'Assemblée Générale des actionnaires statuant comme en matière de modifications des présents statuts, ainsi qu'il est précisé à l'article vingt-deux ci-après.

**Art. 3.** L'objet de la Société est la création, l'administration et la gestion de fonds d'investissement tel que prévu au Chapitre 14 de la loi luxembourgeoise du 20 décembre 2002 concernant les organismes de placement collectif.

La Société pourra également effectuer toutes opérations, au Grand-Duché de Luxembourg ou à l'étranger, liées directement ou indirectement, en tout ou partie, à son objet social.

**Art. 4.** Le siège social de la Société est établi à Luxembourg, Grand-Duché de Luxembourg. Il peut être créé, par simple décision du Conseil d'Administration, des succursales ou bureaux, tant au Grand-Duché de Luxembourg qu'à l'étranger. Au cas où des événements extraordinaires d'ordre politique, économique, sociale ou militaire, que le Conseil d'Administration apprécie, de nature à compromettre l'activité normale de la Société à son siège social, ou la communication aisée avec ce siège ou de ce siège avec l'étranger se sont produits ou sont imminents, le siège social pourra être transféré temporairement à l'étranger, jusqu'à cessation complète de ces circonstances anormales; cette mesure provisoire n'aura toutefois aucun effet sur la nationalité de la Société laquelle, nonobstant ce transfert provisoire du siège, restera luxembourgeoise. Cette déclaration de transfert de siège social devra être portée à la connaissance des tiers par un des membres du Conseil d'Administration de la Société qui a les pouvoirs d'engager la Société par des actes de gestion journalière.

**Art. 5.** Le capital souscrit est fixé à cent vingt-cinq mille euros (EUR 125.000,-), représenté par mille deux cent cinquante (1.250) actions d'une valeur nominale de cent euros (EUR 100,-) chacune.

Le capital souscrit de la Société peut être augmenté ou réduit par décision des actionnaires statuant comme en matière de modification des présents statuts.

**Art. 6.** Les actions seront et resteront nominatives et seront inscrites au registre des actionnaires. Il sera tenu au siège social de la Société un registre des actionnaires.

Ce registre contiendra le nom de chaque actionnaire, sa résidence ou son domicile élu, le nombre des actions qu'il détient, le montant libéré de chaque action, les cessions d'actions et la date de ces cessions.

Les cessions d'actions seront soumises à l'approbation du Conseil d'Administration et réalisées par déclaration écrite de transfert inscrite sur le registre des actionnaires. Cette déclaration sera datée et signée par le cédant et le cessionnaire ou par les personnes détentrices des pouvoirs ad hoc. La Société peut également accepter comme preuve de cession d'autres documents de transfert satisfaisant la Société.

La Société peut procéder au rachat de ses propres actions dans les limites fixées par la loi.

**Art. 7.** L'Assemblée des actionnaires de la Société régulièrement constituée représente tous les actionnaires de la Société. Elle a les pouvoirs les plus larges pour ordonner, faire ou ratifier tous les actes relatifs aux opérations de la Société.

**Art. 8.** L'Assemblée Générale annuelle des actionnaires se tiendra conformément à la loi luxembourgeoise à Luxembourg au siège social de la Société ou à tout autre endroit à Luxembourg, qui sera fixé dans l'avis de convocation le second jeudi du mois d'avril à 12.00 heures. Si ce jour n'est pas un jour bancaire ouvrable à Luxembourg, l'Assemblée Générale annuelle se tiendra le premier jour bancaire ouvrable suivant. L'Assemblée Générale annuelle pourra se tenir à l'étranger si le Conseil d'Administration constate souverainement que des circonstances exceptionnelles le requièrent. Les autres assemblées générales des actionnaires pourront se tenir aux heure et lieu spécifiés dans les avis de convocation concernés.

**Art. 9.** Les quorums et délais requis par la loi régleront les avis de convocation et la conduite des assemblées des actionnaires de la Société dans la mesure où il n'en est pas autrement disposé dans les présents statuts. Toute action donne droit à une voix. Tout actionnaire pourra prendre part aux assemblées des actionnaires en désignant par écrit, par télégramme, par télécopieur ou par télex, un mandataire. Un actionnaire personne morale pourra établir une procuration dans le chef d'une personne dûment autorisée. Dans la mesure où il n'en est pas autrement disposé par la loi, les décisions de l'Assemblée des actionnaires, dûment convoquée, sont prises à la majorité simple des actionnaires présents ou représentés et votants.

Le Conseil d'Administration peut déterminer toutes autres conditions à remplir par les actionnaires pour prendre part à l'Assemblée Générale.

**Art. 10.** Les assemblées des actionnaires seront convoquées par le Conseil d'Administration, à la suite d'un avis énonçant l'ordre du jour, publié conformément à la loi et envoyé par lettre recommandée, au moins huit jours avant l'Assemblée Générale, à tout actionnaire à son adresse portée au registre des actionnaires.

Cependant, si tous les actionnaires sont présents ou représentés à une Assemblée Générale et s'ils affirment avoir été informés de l'ordre du jour de l'Assemblée, celle-ci pourra être tenue sans avis ou publication préalable.

**Art. 11.** La Société sera administrée par un Conseil d'Administration composé de trois membres au moins, lesquels n'auront pas besoin d'être actionnaires de la Société. Les administrateurs seront élus par l'Assemblée Générale annuelle pour une période ne dépassant pas six (6) ans et jusqu'à ce que leurs successeurs aient été élus; toutefois, un administrateur peut être révoqué avec ou sans motif et/ou peut être remplacé à tout moment par décision des actionnaires. Au cas où le poste d'un administrateur deviendrait vacant à la suite de décès, de retraite, ou pour quelqu'autre cause,

41924

les administrateurs restants pourront se réunir et élire à la majorité des voix un administrateur pour remplir provisoirement les fonctions attachées au poste devenu vacant, jusqu'à la prochaine Assemblée Générale des actionnaires. Au cas où, lors d'une réunion du Conseil d'Administration, il y a égalité de voix en faveur et/ou en défaveur d'une résolution, le président aura voix prépondérante.

**Art. 12.** Le Conseil d'Administration pourra choisir parmi ses membres un président et pourra élire en son sein un ou plusieurs vice-présidents. Il pourra également désigner un secrétaire qui n'a pas besoin d'être administrateur et qui devra dresser les procès-verbaux des réunions du Conseil d'Administration et des assemblées des actionnaires. Le Conseil d'Administration se réunira sur la convocation du président ou de deux administrateurs, au lieu indiqué dans l'avis de convocation. Le président du Conseil d'Administration présidera les assemblées générales des actionnaires et les réunions du Conseil d'Administration, mais en son absence, les actionnaires ou le Conseil d'Administration pourront désigner, à la majorité des voix présentes ou représentées, un autre administrateur, et pour les assemblées générales des actionnaires toute autre personne, pour assumer la présidence de ces assemblées et réunions. Le Conseil d'Administration, s'il y a lieu, pourra nommer les directeurs de la Société dont un directeur général, un directeur général-adjoint ou d'autres directeurs considérés comme nécessaires pour gérer et mener à bien les affaires de la Société. Pareilles nominations peuvent être révoquées à tout moment par le Conseil d'Administration. Les directeurs n'ont pas besoin d'être administrateurs ou actionnaires de la Société. Pour autant que les statuts n'en décident pas autrement, les directeurs auront les pouvoirs et les obligations qui leur sont attribués par le Conseil d'Administration. Avis de toute réunion du Conseil d'Administration sera donné à tous les administrateurs au moins vingt-quatre heures avant l'heure prévue pour la réunion, sauf s'il y a urgence, auquel cas la nature de cette urgence sera mentionnée dans l'avis de convocation. On pourra passer outre à cette convocation par assentiment par écrit ou par câble, télégramme, télécopieur ou télex de chaque administrateur. Une convocation spéciale ne sera pas requise pour une réunion du Conseil d'Administration se tenant à une heure et à un endroit déterminés dans une résolution préalablement adoptée par le Conseil d'Administration.

Tout administrateur pourra se faire représenter au Conseil d'Administration en désignant par écrit ou par câble, télégramme, télécopieur ou télex un autre administrateur comme son mandataire. Le Conseil d'Administration ne pourra délibérer et agir valablement que si au moins la majorité des administrateurs est présente ou représentée à une réunion du Conseil d'Administration (qui peut être tenu par voie de conférence téléphonique).

Les décisions seront prises à la majorité des votes des administrateurs présents ou représentés. Nonobstant les dispositions précédentes, une décision du Conseil d'Administration peut également être prise par voie circulaire et résulter d'un seul ou de plusieurs documents contenant les résolutions et signé(s) par tous les membres du Conseil d'Administration sans exception. La date d'une telle décision sera la date de la dernière signature.

**Art. 13.** Les procès-verbaux des réunions du Conseil d'Administration seront signés par le président ou l'administrateur qui aura assumé la présidence en son absence. Les copies ou extraits des procès-verbaux destinés à servir en justice ou ailleurs seront signés par le président ou par le secrétaire ou par deux administrateurs.

**Art. 14.** Le Conseil d'Administration a les pouvoirs les plus larges pour mener à bien les affaires de la Société et prendre toutes les mesures de disposition et d'administration qui sont en relation avec l'objet de la Société.

Tous pouvoirs non expressément réservés à l'Assemblée Générale des actionnaires par la loi ou les présents statuts sont de la compétence du Conseil d'Administration.

Le Conseil d'Administration a en particulier, le pouvoir de déterminer la politique de la Société ainsi que la conduite de la gestion et des affaires de la Société.

**Art. 15.** Aucun contrat et aucune transaction que la Société pourra conclure avec d'autres sociétés ou firmes ne pourront être affectés ou viciés par le fait qu'un ou plusieurs administrateurs ou fondés de pouvoir de la Société auraient un intérêt quelconque dans telle autre société ou firme, ou par le fait qu'il en serait administrateur, associé, fondé de pouvoir ou employé. L'administrateur ou fondé de pouvoir qui est administrateur, associé, fondé de pouvoir ou employé d'une société ou firme avec laquelle la Société passe des contrats, ou avec laquelle elle est en relation d'affaires, ne sera pas par-là même privé du droit de délibérer, de voter et d'agir en ce qui concerne toute matière en relation avec ce contrat ou autre affaire. Au cas où un administrateur ou fondé de pouvoir aurait un intérêt personnel dans quelque affaire de la Société, cet administrateur ou fondé de pouvoir devra informer le Conseil d'Administration de son intérêt personnel et il ne délibérera ou ne prendra pas part au vote sur cette affaire; rapport devra être fait au sujet de cette affaire et de l'intérêt personnel de pareil administrateur ou fondé de pouvoir à la prochaine Assemblée Générale des actionnaires. Le terme «intérêt personnel», tel qu'il est utilisé dans la phrase qui précède, ne s'applique pas aux relations ou intérêts impliquant le principal actionnaire, les fonds d'investissement assistés ou ses filiales ou sociétés affiliées, ou encore en rapport avec toute autre société ou entité juridique que le Conseil d'Administration pourra déterminer souverainement.

La Société pourra indemniser tout administrateur ou fondé de pouvoir, ses héritiers, exécuteurs testamentaires et administrateurs, des dépenses raisonnablement occasionnées par toutes actions ou procès auxquels il aura été partie en sa qualité d'administrateur ou fondé de pouvoir de la Société ou pour avoir été, à la demande de la Société, administrateur ou directeur de toute autre société dont la Société est actionnaire ou créditrice et par laquelle il ne serait pas indemnisé, sauf le cas où dans pareils actions ou procès il sera finalement condamné pour négligence grave ou mauvaise administration; en cas d'arrangement extrajudiciaire, une telle indemnité ne sera accordée que si la Société est informée par son avocat-conseil que la personne à indemniser n'a pas commis un tel manquement à ses devoirs. Le droit à indemnisation n'exclura pas d'autres droits dont il pourrait être titulaire.

**Art. 16.** Le Conseil d'Administration de la Société pourra déléguer ses pouvoirs relatifs à la gestion journalière et à la conduite des affaires de la Societe (y compris le droit d'agir comme dû mandataire) et ses pouvoirs concernant la

41925

politique et les objectifs de la Société à une ou plusieurs personnes physiques ou sociétes qui n'ont pas besoin d'être membres du Conseil d'Administration, qui auront les pouvoirs déterminés par le Conseil d'Administration et qui, si le Conseil d'Administration l'autorise, pourront sous-déléguer leurs pouvoirs.

La délégation à un autre membre du Conseil d'Administration sera soumise à l'autorisation préalable de l'Assemblée Générale.

Le Conseil d'Administration peut aussi conférer des pouvoirs par acte notarié ou procuration sous seing privé.

**Art. 17.** La Société sera engagée par la signature conjointe de deux administrateurs de la Société, ou par la signature individuelle du directeur général délégué à la gestion journalière conformément à l'article seize des présents statuts, ou par la signature individuelle de toute autre personne à qui des pouvoirs de signature auront été spécialement délégués par le Conseil d'Administration.

**Art. 18.** Les comptes de la Société seront vérifiés par un auditeur externe. L'auditeur externe sera nommé et révoqué par les actionnaires réunis en Assemblée Générale qui fixera ses émoluments ainsi que la durée de son mandat.

**Art. 19.** L'exercice social de la Société commencera le premier jour de janvier de chaque année et se terminera le dernier jour de décembre de la même année.

**Art. 20.** Il sera prélevé sur le bénéfice net annuel de la Société cinq pour cent (5%) qui seront affectés à la réserve prévue par la loi. Ce prélèvement cessera d'être obligatoire dès que et aussi longtemps que la réserve aura atteint dix pour cent (10%) du capital social de la Société tel qu'il est prévu à l'article cinq des présents statuts ou tel que celui-ci aura été augmenté ou réduit, ainsi qu'il est dit dans le même article.

L'Assemblée Générale des actionnaires déterminera, dans les limites prévues par la loi, sur base d'une proposition du Conseil d'Administration, la répartition des résultats annuels.

Le Conseil d'Administration peut décider de payer des dividendes intérimaires en conformité avec la loi.

Le paiement de ces dividendes sera effectué à l'adresse indiquée sur le registre des actionnaires.

Le Conseil d'Administration pourra déterminer la monnaie dans laquelle il paiera les dividendes ainsi que l'heure et le lieu de paiement.

**Art. 21.** En cas de dissolution de la Société, il sera procédé à la liquidation par les soins d'un ou de plusieurs liquidateurs (qui peuvent être des personnes physiques ou morales) qui seront nommés par l'Assemblée Générale des actionnaires qui déterminera leurs pouvoirs et leur indemnisation.

**Art. 22.** Les présents statuts pourront être modifiés à tout moment par une assemblée générale des actionnaires soumise aux conditions de quorum et de vote requises par la loi luxembourgeoise.

**Art. 23.** Toutes les matières qui ne sont pas régies par les présents statuts, se réfèrent aux dispositions de la loi du dix août mil neuf cent quinze sur les sociétés commerciales telle que modifiée.

*Dispositions Transitoires*

Le premier exercice social commence le jour de la constitution de la société et se termine le 31 décembre 2003. La première assemblée générale annuelle se tiendra en 2004.

*Souscription et Libération*

Les statuts de la Société ayant été arrêtés, les comparants déclarent souscrire aux actions du capital social comme suit:

1.- 625 actions sont souscrites par la société ACCESS INTERNATIONAL ADVISORS, INC soit une valeur de EUR 62.500,-

2.- 375 actions sont souscrites par la société ACCESS INTERNATIONAL ADVISORS EUROPE LTD soit une valeur de EUR 37.500,-

3.- 250 actions sont souscrites par BANQUE DEGROOF LUXEMBOURG S.A. soit une valeur de EUR 25.000,-

Total: 1.250 actions d'une valeur de EUR 125.000,-

Toutes les actions ont été intégralement libérées par des versements en espèces, de sorte que la somme de cent vingt-cinq mille euros (EUR 125.000,-) se trouve dès à présent à la disposition de la Société, ainsi qu'il a été justifié au notaire.

*Constatation*

Le notaire soussigné constate que les conditions exigées par l'article vingt-six de la loi du dix août mil neuf cent quinze sur les sociétés commerciales telle que modifiée ont été observées.

*Dépenses*

Les dépenses, frais, rémunérations et charges de toutes espèces qui incombent à la Société à la suite de sa constitution, s'élèvent approximativement à quatre mille Euros.

*Assemblée générale des actionnaires*

Les personnes sus-indiquées, représentant le capital souscrit en entier et se considérant comme régulièrement convoquées, ont immédiatement procédé à une assemblée générale extraordinaire. Après avoir vérifié qu'elle était régulièrement constituée, elles ont adopté les résolutions suivantes:

*Première résolution*

Sont nommés administrateurs

- Monsieur Patrick Littaye, Directeur Général Palternative, Paris, né le 26 août 1939 à Suresnes, France, demeurant professionnellement au 7, rue Eugène Labiche, F-75016 Paris.

41926

- Monsieur Thierry de la Villehuchet, Président fondateur et CEO ACCESS INTERNATIONAL ADVISORS, LLC, New York, né le 23 avril 1943 à Paris, France, demeurant professionnellement 509 Madison Avenue, 22nd Floor, New-York, NY 10 022, USA.
- Monsieur Jean-Michel Gelhay, Directeur, BANQUE DEGROOF LUXEMBOURG S.A., né le 1er décembre 1949 à Arlon, Belgique, demeurant professionnellement au 7, boulevard Joseph II, L-1840 Luxembourg.
- Monsieur Pierre Delandmeter, Avocat à la Cour, né le 26 mars 1959 à Uccle, Belgique, demeurant professionnellement au 7, rue du Saint Esprit, L-1475 Luxembourg.

Les administrateurs resteront en fonction jusqu'à l'issue de l'Assemblée Générale Ordinaire de 2004.

*Deuxième résolution*

L'Assemblée Générale a élu comme auditeur externe:
- KPMG AUDIT, L-2520 Luxembourg, 31, allée Scheffer.
L'auditeur externe restera en fonction jusqu'à l'issue de l'Assemblée Générale Ordinaire de 2004.

*Troisième résolution*

L'Assemblée Générale a autorisé le Conseil d'Administration à déléguer ses pouvoirs à un membre du Conseil en conformité avec l'Article 16.

*Quatrième résolution*

Le siège social de la Société est établi au 7, boulevard Joseph II, L-1840 Luxembourg.

Le notaire soussigné qui comprend et parle la langue anglaise déclare qu'à la demande des parties comparantes, le présent acte de société est rédigé en langue anglaise, suivi d'une version française; à la requête des mêmes comparants et en cas de divergence entre les textes anglais et français, le texte anglais fera foi.

Dont acte, fait et passé à Luxembourg, date qu'en tête des présentes.

Et après lecture faite aux comparants, connus du notaire par leurs nom, prénom usuel, état et demeure, les comparants ont signé avec Nous, notaire, la présente minute.

Signé: P. Delandmeter, M. Vermeersch, H. Hellinckx.

Enregistré à Mersch, le 10 juillet 2003, vol. 424, fol. 91, case 12. – Reçu 1.250 euros.

*Le Receveur* (signé): A. Muller.

Pour expédition conforme, délivrée aux fins de la publication au Mémorial, Recueil des Sociétés et Associations.

Mersch, le 17 juillet 2003.

H. Hellinckx.

(041809.3/242/456) Déposé au registre de commerce et des sociétés de Luxembourg, le 24 juillet 2003.

**BOCH & SONS ASSET MANAGEMENT, Société à responsabilité limitée.**
Siège social: L-6925 Flaxweiler, 19, rue Gehschelt.
R. C. Luxembourg B 94.541.

—

STATUTS

L'an deux mille trois, le deux juillet.
Par-devant Maître Paul Bettingen, notaire de résidence à Niederanven.

Ont comparu:

1) La société PARC DE GERLACHE S.A., ayant son siège social à Differdange, 11-15, rue Michel Rodange,
ici représentée par son administrateur-délégué Monsieur René R. Cillien, administrateur de sociétés, né le 11.05.1951 à Esch, demeurant à Flaxweiler, 19, rue Gehschelt.

2) Madame Denise Becker (épouse Cillien), née le 15 juillet 1969 à Dudelange, demeurant à Flaxweiler, 19, rue Gehschelt.

Lesquels comparants, ont arrêté ainsi qu'il suit les statuts d'une société à responsabilité limitée à constituer.

**Art. 1er.** Il est formé par les présentes une société à responsabilité limitée sous la dénomination de BOCH & SONS ASSET MANAGEMENT.

**Art. 2.** Le siège social est établi dans la commune de Flaxweiler.
Il pourra être transféré en tout autre endroit dans le Grand-Duché de Luxembourg par simple décision des associés.

**Art. 3.** La durée de la société est illimitée.

**Art. 4.** La société a pour objet la prise d'intérêts sous quelque forme que ce soit dans d'autres entreprises luxembourgeoises ou étrangères, et toutes autres formes de placement, l'acquisition par achat, souscription et toute autre manière ainsi que l'aliénation par vente, échange ou toute autre manière de toutes valeurs mobilières et de toutes espèces, l'administration, la supervision et le développement de ces intérêts. La société pourra prendre part à l'établissement et au développement de toute entreprise industrielle ou commerciale et pourra prêter son assistance à pareille entreprise au moyen de prêts, de garanties ou autrement. Elle pourra prêter ou emprunter, émettre des obligations et autres reconnaissances de dettes.

La société pourra avoir des licences et accorder des sous-licences de marque.

La société peut réaliser toutes opérations mobilières, immobilières, financières ou industrielles, commerciales ou civiles, liées directement ou indirectement à son objet social.