DATED FEBRUARY 5, 2004

UBS (LUXEMBOURG) S.A.

and

ACCESS INTERNATIONAL ADVISORS (LUXEMBOURG) S.A.

*PORTFOLIO ADVISORY AGREEMENT*

**THIS AGREEMENT** is dated on February 5, 2004.

**BETWEEN**

(1) UBS (LUXEMBOURG) S.A., incorporated in the form of a "*société anonyme*" under the laws of the Grand Duchy of Luxembourg, having its registered office at 36–38, Grand-Rue, L-1660 Luxembourg (hereinafter called the "Portfolio Manager");

**AND**

(2) ACCESS INTERNATIONAL ADVISORS (LUXEMBOURG) S.A., incorporated in the form of a "*société anonyme*" under the laws of the Grand Duchy of Luxembourg, having its registered office 12, rue Eugène Ruppert L-2453 Luxembourg (hereinafter called the "Portfolio Advisor");

**WHEREAS**

(A) The Portfolio Manager has been appointed as Portfolio Manager of Luxalpha Sicav (hereinafter designated as the "Fund") and its Sub-Funds following a portfolio management agreement dated February 5, 2004.

(B) The Portfolio Manager desires to avail itself of the experience, advice and assistance of the Portfolio Advisor, as described hereunder.

(C) The Portfolio Advisor is willing to furnish such advice and other services in accordance with terms hereof.

**WHEREBY IT IS AGREED AND DECLARED** as follows:

1. INTERPRETATION

   Unless the context otherwise requires, words and expressions contained in this Agreement shall bear the same meaning as in the articles of incorporation and in the prospectus of the Fund (hereinafter designated as the "Prospectus") PROVIDED THAT any alteration or amendment of the above mentioned articles or Prospectus shall not be effective for the purposes of this Agreement unless the party hereto affected (to the extent that its rights or duties hereunder are affected by such alteration or amendment) shall, by endorsement hereon or otherwise, have consented thereto.

2. APPOINTMENT OF THE PORTFOLIO ADVISOR

   The Portfolio Manager hereby appoints the Portfolio Advisor as the Portfolio Advisor to provide portfolio advisory services with respect to the assets of the Sub-Funds of the Fund (herein collectively referred to as the "Investment Assets"). The Portfolio Advisor shall act in accordance with the Applicable Laws and the Prospectus of the Fund until its appointment shall be terminated as hereinafter provided. The Portfolio Advisor hereby accepts such appointment and agrees to assume the obligations set forth herein, subject to the actual notice of any changes in the Applicable Laws, the Prospectus and the investment policy of the Fund.

3. FUNCTIONS, POWERS AND OBLIGATIONS OF THE PORTFOLIO ADVISOR

   (A) Functions

   The Portfolio Advisor will advise the Portfolio Manager with respect to the asset allocation of the Investment Assets in accordance with the investment objectives and policies of the Sub-Funds set forth in the Prospectus with reference to the Sub-Funds, including the transactions in the instruments described in the Prospectus (collectively referred to herein as the "Instruments"). This duty specifically includes the recommendations with respect to the manner in which the assets of the Fund might be traded, cleared and invested, the monitoring of the performance, of the trading, clearing and investment as well as the limited power and authority to act as attorney-in-fact for and on behalf of the Portfolio Manager necessary to carry out the intent and purposes of this Agreement.

   In performing the above functions, the Portfolio Advisor shall more precisely strictly comply with the investment restrictions and limits applicable to the Sub-Funds as set forth in the Prospectus, in the Luxembourg law of December 20, 2002 as amended relating to Undertakings for Collective Investment.

   (B) Obligations of the Portfolio Advisor

During the continuance of its appointment, the Portfolio Advisor shall, within the limits of the investment objectives, strategies, policies and restrictions provided in the Prospectus:

(a) advise on the ongoing asset allocation activities of the Fund;

(b) keep the Investment Assets and the Instruments of the Sub-Funds under surveillance and constant review; carry out reviews and controls of the Investment Assets and Instruments, whenever the Portfolio Advisor shall deem necessary or the Portfolio Manager shall reasonably require including submitting periodical reports to the Portfolio Manager;

(c) advise the Portfolio Manager concerning all actions which appear to the Portfolio Advisor to be, or which would be, advantageous to the Portfolio Manager in implementing the investment objectives, strategies and policies of the Sub-Funds;

(d) provide such advice to the Portfolio Manager on matters related to Investment Assets and the Instruments as the Portfolio Manager may reasonably require;

(e) if required by the Portfolio Manager, prepare material for inclusion in reports of the Fund;

(f) provide such information and assistance as may be required by the Portfolio Manager in connection with the administration of the Investment Assets and Instruments;

4. **FEES AND EXPENSES OF THE PORTFOLIO ADVISOR**

The fees of the Portfolio Advisor shall be provided in an appendix to this Agreement and be agreed from time to time between the parties hereto.

All expenses incurred in connection with the Portfolio Advisor's exercise of its duties hereunder shall be paid by the Portfolio Advisor.

5. **ASSISTANCE**

The Portfolio Advisor is not entitled to sub-contract and/or delegate the performance of all or part of its duties hereunder to any person, firm or company, unless with the prior written approval of the Portfolio Manager.

The Portfolio Advisor may, under its responsibility, be assisted by professional service providers in the performance of its duties hereunder. The costs of such service providers shall be borne by the Portfolio Advisor, unless otherwise agreed upon by the Portfolio Manager.

6. LIABILITY AND INDEMNIFICATION

The Portfolio Advisor shall not be liable to the Portfolio Manager for any loss suffered directly or indirectly by the Portfolio Manager in connection with the subject matter of this Agreement howsoever any such loss may have occurred unless such loss arises from either recklessness, fraud, bad faith, wilful default or gross negligence on the part of the Portfolio Advisor in the performance or non-performance of its duties and obligations hereunder (together the "Portfolio Advisor's Default").

The Portfolio Advisor hereby undertakes to hold harmless and indemnify the Portfolio Manager, its members, shareholders, directors, employees, officers, or agents against all actions, proceedings, claims, costs, damages which may be brought against, suffered or incurred by reason of the Portfolio Advisor's Default.

7. NOTICES

All notices and other written communications specified herein shall be deemed duly given if transmitted by first class mail or faxed:

(a) to the Portfolio Manager, at UBS (Luxembourg) S.A., c/o Mr Christian Schön, 36–38, Grand-Rue, L-1660 Luxembourg; Tel:00.352.45.12.1.24.17

(b) to the Portfolio Advisor, at Access International Advisors (Luxembourg) S.A., , 12, rue Eugène Ruppert, L-2453 Luxembourg.
c/o Mr Patrick Littaye, Gérant, Access International Advisors Developpement, 25-27 rue d'Astorg, F-75008 Paris; Tel:00.33.1.53.43.05.50

8. CONFIDENTIALITY

Each of the parties hereto shall maintain in strict confidentiality any information or documentation it may obtain regarding any of the other parties including but not limited to their business activities or financial condition, with the exception of reports or disclosures required to be made, or other actions required to be taken, under applicable laws and regulations or the order of a court of competent jurisdiction and/or any other governmental authority or agency or by this Agreement.

The confidentiality provisions of this Section shall not apply to any information generally available to the public or which is otherwise acquired from some other source than a party hereto on a non-confidential basis. In the event that any party hereto becomes legally compelled to disclose any of the information that it would otherwise be required to maintain as confidential pursuant to the provisions of this Section 14 hereof, it may do so as long as it promptly notifies the other party hereto of such pending disclosure and consults with it prior

- 5 -

to such disclosure as to the advisability of seeking a protective order or other means of preserving the confidentiality of the confidential information.

9. APPLICABLE LAW

This Agreement shall be construed and enforced according to the laws of the Grand Duchy of Luxembourg.

10. TERMINATION

This Agreement shall continue to remain in force the same period as the Fund

1) This Agreement may however be terminated by a party giving 15 days written notice to the other party upon the occurrence of any of the following events :

a) the Portfolio Manager or the Portfolio Advisor going into liquidation (except a voluntary liquidation for the purposes of reconstruction or amalgamation upon terms previously approved in writing by the other party) or at any time being declared bankrupt or made subject to insolvency proceedings or a receiver being appointed of any material portion of the assets of any of the parties hereto;

b) any party committing any material breach of its obligations under this Agreement and (if such breach shall be capable of remedy) shall fail to remedy the breach within 30 days of receipt of notice requiring it to cure such breach.

2) Termination will not affect accrued rights, existing commitments or any contractual provision intended to survive termination and will be without penalty or other additional payment except that the Portfolio Manager will pay (i) the fees of the Portfolio Advisor pro rata to the date of termination and (ii) any additional expenses necessarily incurred by the Portfolio Advisor in terminating the Agreement which are mutually agreed to by the parties hereto.

3) In the event of termination of this Agreement, the Portfolio Advisor is entitled to request the Portfolio Manager to change the denomination of the Fund to a name not resembling to Luxalpha Sicav.

4) In the event of the termination of this Agreement, the fee shall be computed by treating the effective date of termination as if it were the last day of the applicable quarter or year, respectively.

11. SEVERABILITY

If any provision of this Agreement is determined by a court of competent jurisdiction to be invalid or unenforceable, such finding shall not affect the validity or enforceability of the remaining provisions of this Agreement.

12. AMENDMENT

- 6 -

No part of this Agreement may be amended, changed, modified or altered except by a written instrument signed by the parties hereto.

13. ASSIGNABILITY

No party to this Agreement may assign this Agreement without first obtaining the written consent of the other party hereto which shall not be unreasonably withheld.

14. COUNTERPARTS

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

IN WITNESS whereof this Agreement has been entered into the day and year first above written.

SIGNED by

UBS (Luxembourg) S.A.

name : ....................
title : Director

iviane De Angelis
Managing Director

name : ....................
title : Director

Serge Karp
Director

SIGNED by
ACCESS INTERNATIONAL ADVISORS (LUXEMBOURG) S.A.

name : Patrick LITTAYE
title : Chairman

name : ....................
title : ....................

- 7 -