INVESTMENT ADVISORY AGREEMENT

by and between

# GROUPEMENT FINANCIER LTD

AND

# ACCESS INTERNATIONAL ADVISORS (LUXEMBOURG) S.A.

## INVESTMENT ADVISORY AGREEMENT

AGREEMENT dated as of _____ (the "Investment Advisory Agreement") between:

**GROUPEMENT FINANCIER LTD**, an investment company incorporated in the British Virgin Islands with limited liability (hereinafter called the "Company"), and

**ACCESS INTERNATIONAL ADVISORS (Luxembourg) S.A.** having its registered office at 12, rue Eugène Ruppert, L-2453 Luxembourg (the "Investment Adviser" or "AIA LUX")

WHEREAS, the Company desires to appoint the Investment Adviser as investment adviser to perform certain investment advisory services for the Company pursuant to this Investment Advisory Agreement and the Investment Adviser is willing to perform such services for the Company; and

NOW THEREFORE, in consideration of the mutual promises herein contained, the parties therefore agree as follows:

Section 1. Appointment of the Investment Adviser.

Effective from the date of this Investment Advisory Agreement, the Company hereby appoints the Investment Adviser as the investment adviser with respect to the assets and liabilities of the Company hereby approves such appointment.

1. The Investment Adviser shall have authority to manage the portfolio of securities and other investments (including cash), instruments and contracts belonging to the Company, including the purchase, retention and disposition thereof and the exercise of all rights (including voting and consent or similar rights) apparent thereto and the execution of agreements relating thereto, in accordance with Investment Guidelines subject to the overall supervision of the Board of Directors which shall at all times be solely responsible for determining the investment objectives, strategies and policies of the Company. In addition, this discretionary authority specifically includes the power to delegate certain of the Investment Adviser's duties hereunder to a portfolio adviser; provided, however, that the Investment Adviser shall have the duty to supervise the management activities which shall be carried out by such portfolio adviser. Subject to the foregoing, the authority granted hereby to the Investment Adviser includes, but is not limited to, the power to:

    (i)  (A) continuously supervise the investment program of the Company and the composition of its investment portfolio including, without limitation, determining from time to time what investments will be purchased, retained or sold, what contracts will be entered into by the Company and what portion of its assets will be retained as cash; (B) have discretion to cause the Company to purchase or sell any asset; and (C) undertake to do anything incidental to the foregoing to facilitate the performance of its obligations hereunder.
    The above in full compliance with Investment Guidelines;

    (ii)  invest in investment vehicles, including, without limitation, investment companies organized anywhere in the world, limited partnerships, limited

2

INVESTMENT ADVISORY AGREEMENT

liability companies, investment trusts, and separate accounts managed by third party investment advisers (collectively, "Portfolio Funds").
The above in full compliance with Investment Guidelines;

(iii) on behalf of the Company and with the prior approval of the Directors, exercise all rights, powers, privileges and other incidents of ownership or possession with respect to the Portfolio Funds and other property and funds held or owned by the Company, including without limitation the right to possess, lend, transfer, mortgage, pledge or otherwise deal in, and to secure the payment of obligations of the Company by mortgage upon, or hypothecation or pledge of, all or part of the property of the Company, whether at the time owned or thereafter acquired, and to participate in arrangements with creditors, institute and settle or compromise suits and administrative proceedings and other similar matters;

2. The Investment Adviser shall not effect any transactions for the account of the Company which are inconsistent with the Investment Guidelines.

3. The Investment Adviser hereby agrees to evaluate and periodically review and monitor the Portfolio Funds.

4. The Investment Adviser will: (i) collect up-to-date performance information on a monthly basis with respect to the Portfolio Funds; (ii) contact principals of each of the Portfolio Funds from time to time to discuss the consistency of each Portfolio Fund's stated investment policies, objectives, limitations and philosophies; and (iii) meet with, or conduct telephone conferences with personnel of the Company from time to time to discuss general investment trends, economic trends and the performance of the Portfolio Funds. In performing its investment advisory services to the Company hereunder, the Investment Adviser will provide the Company with ongoing investment guidance.

5. The Investment Adviser and the Company shall determine the asset allocation parameters to be employed with respect to the Company. The Investment Adviser will evaluate specific Portfolio Funds in which to invest the Company's assets in accordance with such asset allocation parameters. If requested by the Company, within a reasonable period after making any investment in any Portfolio Fund, the Investment Adviser will provide the Company with a written report including each of the following: (i) a profile of each Portfolio Fund, its portfolio adviser, and its principals; (ii) a summary of the Portfolio Fund's performance history relative to other funds; (iii) a summary of the Portfolio Fund's investment objective and strategies, risk controls, hedging techniques, and leverage; (iv) a summary of the Portfolio Fund's policies relating to valuations and redemptions; and (v) any other data reasonably requested by the Company. The Investment Adviser may satisfy in part the information delivery obligation set forth in the preceding paragraph by providing to the Company relevant excerpts from the current offering documentation, marketing materials or other information provided by the Portfolio Funds Investment Advisory Agreement or their managers to the Investment Adviser in connection with its due diligence investigation of the Portfolio Funds. The Investment Adviser shall not be responsible for the truth or accuracy of the information contained in such excerpts except to the extent that such information is inconsistent with materials reviewed by the Investment Adviser in connection with its due diligence process. The Company reasonably will review each report.

## INVESTMENT ADVISORY AGREEMENT

6. Assistance

The Investment Adviser is entitled to sub-contract and/or delegate the performance of all or part of its duties hereunder to any person, firm or company, with the prior consent of the Company.

### Section 2. Compensation and expenses of the Investment Adviser.

The Investment Adviser shall be entitled to a part of management fee and performance fee calculated and paid in accordance with the terms set forth in the Prospectus and the Fee Schedule attached hereto as Schedule A.

The Investment Adviser shall at its own expense employ such staff as may be necessary for the proper performance of its duties in accordance with this Investment Advisory Agreement and shall bear the cost of all travelling and out-of-pocket expenses of whatsoever nature incurred by it or its staff in or in connection with the performance of its duties.

### Section 3. Custody

It is understood and acknowledged that the Investment Adviser shall not at any time take or accept physical possession of or become a custodian for any portion of any asset purchased or sold by the Investment Adviser on behalf of the Company, and that all the assets of the Sub-Fund shall be held by the custodian bank appointed by the Company.

### Section 4. Representations and Warranties.

The Investment Adviser represents and warrants to the Company that:

(a)   The Investment Adviser is a corporation duly organised, validly existing and in good standing under the laws of the Luxembourg and the Investment Adviser is qualified to conduct its business as a foreign corporation and is in good standing in every jurisdiction in which the nature or conduct of its business requires such qualification and failure to so qualify would have a material adverse effect on its ability to comply with, or perform its obligations under this Investment Advisory Agreement;

### Section 5. Valuations and Reports to the Company.

At the request of the Company :

(a)   On a monthly basis the Investment Adviser will collect and forward to the Company by electronic mail or other similar means as may be mutually agreed from time to time, at its own expense, the performance information made available by the Portfolio Funds. The Investment Adviser will not incur any individual liability or responsibility for any determination

4

INVESTMENT ADVISORY AGREEMENT

made, advice given, or other action taken or omitted by it in good faith with respect to the determination of the value of the assets of the Company; and

(b)  The Investment Adviser will promptly at the end of each year submit to the Company, at the Investment Adviser's expense, an annual report detailing each Portfolio Fund's performance, discussing general trends, analyzing the past year, summarizing the Investment Adviser's outlook for the next year, and containing such other information that the Investment Adviser believes is necessary, desirable or appropriate to include. The Company will promptly review such reports and, if appropriate, suggest revisions. Each such annual report may be forwarded by the Company with such other materials as it may desire to include to holders of interests in the Company.

Section 6.  Standard of Care of the Investment Adviser.

To the fullest extent permitted by law, no Indemnified Person (as defined below) will be liable to the Company, any subscribers to the Company or to any other person for any losses due to any act or omission of such Indemnified Person in connection with the conduct of the business of the Company that is determined in good faith by such Indemnified Person to be in or not opposed to the best interests of the Company, unless the act or omission arises by reason of such Indemnified Person's (i) willful misfeasance, (ii) bad faith, (iii) gross negligence or (iv) reckless disregard of the duties involved in the conduct of its duties. In addition, no Indemnified Person will be liable to the Company, any subscribers to the Company or to any other person for any losses due to the mistakes, negligence, misconduct or bad faith of any broker or other agent of the Company selected by such Indemnified Person with reasonable care; provided, however, the foregoing shall not be construed to relieve any person of any liability to the extent that such liability may not be waived, modified or limited under applicable law. An Indemnified Person may consult with legal counsel or accountants selected by it, and any act or omission by it on behalf of the Company or in furtherance of the business of the Company in good faith in reliance on and in accordance with the advice of such counsel or accountants will be full justification for the act or omission and such Indemnified Person will be fully protected in so omitting to act if the counsel or accountants were selected with reasonable care.

Section 7.  Indemnification.

(a)  The Company hereby agrees to indemnify, defend and hold harmless the Investment Adviser, its directors, managers, (herein collectively called the "Indemnified Persons"), from and against any loss, expense, judgment, settlement cost, fee and related expenses (including attorney's fees and expenses), costs or damages (i) suffered or sustained by reason of being or having been within the class of Indemnified Persons or (ii) arising out of or in connection with any act or failure to act on the part of such Indemnified Person unless such act or failure to act was the result of the willful misfeasance, bad faith, negligence or reckless disregard of the duties involved in the conduct of its duties of such Indemnified Person.

Expenses incurred by an Indemnified Person in defense or settlement of any claim that, upon the advice of counsel, may be subject to a right of indemnification hereunder may in the discretion of the Board of Directors of the Company, be advanced by the Company prior to the final disposition thereof upon receipt of an undertaking by or on behalf of the Indemnified Person to

5

INVESTMENT ADVISORY AGREEMENT

repay the amount advanced to the extent that it shall be finally judicially determined that the Indemnified Person is not entitled to such indemnification.

(b) The Investment Adviser hereby agrees to indemnify, defend and hold harmless the Company, its directors, members, shareholders, officers, partners, employees and agents and any member of any advisory board to the Company from and against any and all loss, expense, judgment, settlement cost, fee and related expenses (including attorneys' fees and expenses) costs or damages resulting from a demand, claim, lawsuit, action, arbitration or proceeding arising from or relating to: (i) any act or omission to act of the Investment Adviser in connection with this Investment Advisory Agreement if such act or omission to act constituted willful misfeasance, bad faith, gross negligence or reckless disregard of the conduct of its duties; (ii) any material failure of the Investment Adviser to fulfill any of its covenants or other obligations under this Investment Advisory Agreement; or (iii) any violation of applicable law by the Investment Adviser, which include violation of the Luxembourg laws and the investment restrictions provided in the Investment Guidelines

(c) The foregoing agreements of indemnity shall be in addition to, and shall in no respect limit or restrict, any other remedies which may be available to an indemnified party.

(d) The foregoing agreements of indemnity shall be established in accordance with Luxembourg laws which governed the Company.

Section 8. Allocation of Transactions.

It is understood that the Investment Adviser is in the business of performing investment advisory services for various clients other than the Company. The Company agrees that the Investment Adviser may take action in the performance of its duties with respect to any of its other clients which may differ from the time or nature of action taken with respect to the Company, so long as it is the Investment Adviser's policy to allocate investment opportunities to the Company and its other clients over a period of time in good faith on a fair and equitable basis. Where there is a limited supply of an investment opportunity (including, for this purpose, a limited ability to realize upon an investment under favorable circumstances), or where position limits restrict the number of positions the Investment Adviser may establish on behalf of its clients, the Investment Adviser will allocate or rotate investment opportunities among the Company and other clients of the Investment Adviser (or its affiliates) in a manner which is fair and reasonable.

However, the Investment Adviser shall at all times have due regard to its duties owed to the Company and where a conflict arises it will endeavour to ensure that it is resolved fairly.

Section 9. Other Activities of the Investment Adviser.

(a) The Company recognizes that the Investment Adviser, its affiliates, officers, directors, members, managers, partners, shareholders, employees or agents, or agents of any of them are on an ancillary basis in the business of performing investment advisory and advisory activities for others and may continue to do so subject to compliance with the terms of this Investment Advisory Agreement. Except as expressly provided herein and to the extent necessary to perform its obligations hereunder, nothing herein will be deemed to limit or restrict the right of the Investment Adviser or the right of its affiliates, officers, directors, members.

6

## INVESTMENT ADVISORY AGREEMENT

managers, partners, shareholders, employees or agents, or agents of any of them to engage directly or indirectly in any other business or to directly or indirectly purchase, sell or hold, whether directly or through investment partnerships, managed accounts, or other pooled investment vehicles, securities, options, separate accounts, investment contracts or any other asset and any interests therein for their own account of any other person, whether as investment adviser, dealer, broker or otherwise, or to serve as general partner, investment adviser, sub-adviser or advisory-board member to any other limited partnership. The Company also recognizes that in effecting transactions it may not always be possible, or consistent with the investment objectives of the Company and the various persons described above, to take or liquidate the same investment positions at the same time or at the same prices.

(b)  Each of the Company and the Investment Adviser recognize that the other party hereto may be subject to certain legal or regulatory requirements, and that compliance by a party in good faith with such legal or regulatory requirements will not constitute a material breach of this Investment Advisory Agreement.

However, the Investment Adviser shall at all times have due regard to its duties owed to the Company and where a conflict arises it will endeavour to ensure that it is resolved fairly.

Section 10. Term and Termination.

Unless earlier terminated in accordance with the provisions of this Section, this Investment Advisory Agreement will continue until the termination of the Company.

(a)  *Termination Without Cause by the Company*. The Company will have the right to terminate the Investment Adviser as investment adviser without cause at any time by providing 30 days' prior written notice to the Investment Adviser.

(b)  *Termination Without Cause by the Investment Adviser*. The Investment Adviser will have the right to terminate this Investment Advisory Agreement without cause, at any time upon at least six (6) months' prior written notice to the Company.
Termination with or without cause will not affect accrued rights, existing commitments or any contractual provision intended to survive termination which include Section 7 (b) and will be without penalty except that the Company as the case may be will pay the fees of the Investment Adviser pro rata to the date of termination.

Section 11. Assignment.

This Investment Advisory Agreement cannot be assigned by either of the parties hereto without the prior consent of the other parties hereto

Section 12. Amendments.

No provision of this Investment Advisory Agreement may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the parties against which enforcement of the change, waiver, discharge or termination is sought.

7

## INVESTMENT ADVISORY AGREEMENT

Section 13. Notices.

Any notice or other communication required or permitted to be given hereunder will be given in writing and faxed, emailed, or delivered by overnight courier to the other party at its address as follows:

If to the Company:

> GROUPEMENT FINANCIER LTD
> C/o Access International Advisors (Europe) Limited,
> 5-11 Lavington Street
> London SE1 0NZ United Kingdom
> Attention : _____
> Fax No: +44 (207) 945-6159

If to the Investment Adviser:

> ACCESS INTERNATIONAL
> ADVISORS (LUXEMBOURG) S.A.
> 12, rue Eugène Ruppert,
> L-2453 Luxembourg
> Attention : _____
> Fax No: _____

Any party may specify a different or additional address for notice by sending a written notice to the others at the address above, or at that or those last given hereunder.

Section 14. Governing Law.

This Investment Advisory Agreement shall be governed by and construed in accordance with the laws of the Grand-Duchy of Luxembourg.

Section 15. Merger and Integration.

Except as specifically stated otherwise herein, this Investment Advisory Agreement sets forth the entire understanding of the parties relating to the subject matter hereof, and all prior understandings, written or oral, are superseded by this Investment Advisory Agreement. This Investment Advisory Agreement may not be modified, amended, waived, or supplemented except as provided herein.

8

## INVESTMENT ADVISORY AGREEMENT

Section 16. Interpretation.

The headings contained in this Investment Advisory Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Investment Advisory Agreement.

IN WITNESS WHEREOF, being duly authorized, the parties hereto have executed this Investment Advisory Agreement as of the date first written above.

GROUPEMENT FINANCIER LTD

By: _____
Name:
Title:

ACCESS INTERNATIONAL ADVISORS (LUXEMBOURG) S.A.

By: _____
Name:
Title:

9