KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, New York 10020
(212) 940-8800

*Attorneys for Defendants*
*Access International Advisors LLC,*
*Access International Advisors Ltd.,*
*Access Management Luxembourg SA,*
*Access Partners SA, Patrick Littaye,*
*Claudine Magon de la Villehuchet, and*
*Groupement Financier Ltd.*

**Hearing Date:** September 14, 2022
at 10:00 a.m. (ET)
**Opposition Date:** June 17, 2022
**Reply Date:** July 29, 2022

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br>          Plaintiff-Applicant, <br> v. <br> BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, <br>          Defendant. | **Adv. Pro. No. 08-1789 (CGM)** <br><br> **SIPA Liquidation** <br> **(Substantively Consolidated)** |
| In re: <br><br> BERNARD L. MADOFF, <br><br>          Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br>          Plaintiff, <br><br> v. <br><br> UBS AG, UBS EUROPE SE (f/k/a UBS (LUXEMBOURG) SA), UBS FUND SERVICES (LUXEMBOURG) SA, UBS THIRD PARTY MANAGEMENT COMPANY SA, ACCESS INTERNATIONAL ADVISORS LLC, ACCESS INTERNATIONAL ADVISORS LTD., ACCESS MANAGEMENT LUXEMBOURG SA (f/k/a ACCESS INTERNATIONAL ADVISORS | **Adv. Pro. No. 10-04285 (CGM)** |

(LUXEMBOURG) SA) as represented by )
its Liquidator MAÎTRE FERNAND )
ENTRINGER, ACCESS PARTNERS SA )
as represented by its Liquidator MAÎTRE )
FERNAND ENTRINGER, PATRICK )
LITTAYE, CLAUDINE MAGON DE LA )
VILLEHUCHET (a/k/a CLAUDINE DE )
LA VILLEHUCHET) in her capacity as )
Executrix under the Will of THIERRY )
MAGON DE LA VILLEHUCHET (a/k/a )
RENE THIERRY DE LA )
VILLEHUCHET), CLAUDINE MAGON )
DE LA VILLEHUCHET (a/k/a )
CLAUDINE DE LA VILLEHUCHET) )
individually as the sole beneficiary under )
the Will of THIERRY MAGON DE LA )
VILLEHUCHET (a/k/a RENE THIERRY )
DE LA VILLEHUCHET), PIERRE )
DELANDMETER, THEODORE )
DUMBAULD, LUXALPHA SICAV as )
represented by its Liquidators MAÎTRE )
ALAIN RUKAVINA and PAUL )
LAPLUME, MAÎTRE ALAIN )
RUKAVINA AND PAUL LAPLUME, in )
their capacities as liquidators and )
representatives of LUXALPHA, )
GROUPEMENT FINANCIER LTD., )
)
            Defendants. )
)

**MEMORANDUM OF LAW IN SUPPORT OF**
**THE ACCESS DEFENDANTS' AND GROUPEMENT'S**
**MOTION TO DISMISS THE TRUSTEE'S SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page(s)

TABLE OF CONTENTS......................................................................................I

TABLE OF AUTHORITIES..........................................................................IV

PRELIMINARY STATEMENT ......................................................................1

ARGUMENT .....................................................................................................3

POINT I THE TRUSTEE FAILS TO ESTABLISH PERSONAL JURISDICTION OVER THE ACCESS JURISDICTIONAL MOVING DEFENDANTS .................................................3

    A.    Legal Standards .......................................................................................3

    B.    The Trustee's Conclusory and Group-Plead Allegations Fail to Establish Jurisdiction over the Jurisdictional Moving Defendants ......................................4

        1.    The Trustee's Conclusory Allegations Do Not Establish Jurisdiction ..................................................................................4

        2.    The Trustee's Improper Group Pleading Does Not Establish Jurisdiction ......................................................................6

    C.    The Trustee Fails to Establish General Jurisdiction Over the JMDs....................7

    D.    The Trustee Fails to Establish Specific Jurisdiction Over the JMDs ...................7

        1.    The Alleged Contacts Between Each of the JMDs and the United States Are Insufficient to Establish Jurisdiction.....................................10

            (i)    As to Access Ltd.: .......................................................10

            (ii)    As to AML/AIA (Lux):..............................................10

            (iii)    As to AP (Lux):..........................................................11

            (iv)    As to Patrick Littaye:.................................................12

                (a)    Littaye's Ownership Interest in Some of the Access Entities Is Insufficient to Establish Personal Jurisdiction ..................................................12

                (b)    Littaye's Status as Corporate Officer or Director Is Insufficient to Establish Personal Jurisdiction..................13

2.      The JMD's Alleged Receipt of Subsequent Transfers Does Not Establish Jurisdiction ........................................................................15

3.      The Trustee Cannot Ignore Corporate Forms to Establish Jurisdiction ........................................................................................16

(i)      The JMDs Were Not Alter Egos of Access LLC or AIA Inc. ...............................................................................18

(a)      The JMDs and Access LLC/AIC Inc. Do Not Share Sufficient Common Ownership ........................................18

(b)      The Trustee Fails to Meet Any of the Remaining Three Criteria to Establish Alter Ego ...............................20

(i)      The JMD Entities were not financially dependent on other JMD Entities, Access LLC, or AIA Inc. ..................................................20

(ii)      The Trustee failed to establish that Access LLC or AIA Inc. interfered in the assignment of the JMD Entities' key personnel or that there was a failure to observe corporate formalities ..........................................................22

(iii)      Neither Access LLC nor AIA Inc. Controlled the JMD Entities' Marketing or Operational Policies ...............................................................24

POINT II IT IS NOT REASONABLE TO SUBJECT THE JMDS TO JURISDICTION IN THE UNITED STATES .........................................................................24

POINT III THE TRUSTEE DOES NOT PLAUSIBLY ALLEGE THAT ACCESS DEFENDANTS RECEIVED BLMIS CUSTOMER PROPERTY ...........................................26

A.      The Alleged Subsequent Transfers to Access Defendants Cannot be Traced Back to BLMIS Funds ............................................................26

POINT IV SECTION 546(E) BARS THE TRUSTEE'S CLAIM AGAINST THE ACCESS DEFENDANTS AND GROUPEMENT TO THE EXTENT THAT IT IS BASED ON INITIAL TRANSFERS MORE THAN TWO YEARS BEFORE THE PETITION DATE ...............................................................................30

A.      Section 546(e) Bars the Trustee From Avoiding Initial Transfers From BLMIS to Luxalpha or Groupement Made More Than Two Years Before the Petition Date .........................................................................31

B.     The Trustee Has Not Plausibly Alleged that Access Defendants and Groupement Had "Actual Knowledge" of Madoff's Fraud .................................32

C.     The Trust Fails to Plead the Actual Fraud With The Required Particularity ........35

POINT V THE SECTION 546(E) SAFE HARBOR SHIELDS ALL OF THE REMAINING ALLEGED INITIAL TRANSFERS ..................................................................37

CONCLUSION .......................................................................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
  529 F. Supp. 3d 111 (S.D.N.Y. 2021) ...................................................................6

*Afloat in France, Inc. v. Bancroft Cruises Ltd.*,
  No. 03-CV-917, 2003 WL 22400213 (S.D.N.Y. Oct. 21, 2003) .........................24

*Asahi Metal Indus. Co. v. Super. Ct. Cal.*,
  480 U.S. 102 (1987)............................................................................................25

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................25, 26, 27

*In re AstraZeneca Sec. Litig.*,
  559 F. Supp. 2d 453 (S.D.N.Y. 2008) ................................................................13

*Bank of Am. v. Apollo Enter. Solutions, LLC*,
  No. 10-CV-5707, 2010 WL 4323273 (S.D.N.Y. Nov. 1, 2010) .........................17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................25, 26, 27

*Bellomo v. Penn Life Co.*,
  488 F. Supp. 744 (S.D.N.Y. 1980) .....................................................................24

*Berdeaux v. OneCoin Ltd.*,
  No. 10-CV-4074, 2021 WL 4267693 (S.D.N.Y. Sept. 20, 2021) ................. 6, 8, 14

*Bermudez v. City of New York*,
  783 F. Supp. 2d 560 (S.D.N.Y. 2011) ................................................................28

*In re Caremerica, Inc.*,
  409 B.R. 737 (Bankr. E.D.N.C. 2009) ...........................................................27, 28

*Charas v. Sand Tech. Sys. Int'l, Inc.*,
  No. 90-CV-5638, 1992 WL 296406 (S.D.N.Y. Oct. 7, 1992) .............................13

*Charles Schwab Corp. v. Bank of Am. Corp.*,
  883 F.3d 68 (2d Cir. 2018) .............................................................................14, 15

*Chew v. Dietrich*,
  143 F.3d 24 (2d Cir. 1998) ...................................................................................8

*City of Long Beach v. Total Gas & Power N. Am. Inc.*,
   465 F. Supp. 3d 416 (S.D.N.Y. 2020) ...............................................................14

*CutCo Indus., Inc. v. Naughton*,
   806 F.2d 361 (2d Cir. 1986) .............................................................................7

*Daimler AG v Bauman*,
   571 U.S. 117 (2014)...........................................................................................7

*DiStefano v. Carozzi N. Am., Inc.*,
   286 F.3d 81 (2d Cir. 2001) ................................................................................3

*Doe v. Del. State Police*,
   939 F. Supp. 2d 313 (S.D.N.Y. 2013) ...............................................................4

*Dorfman v. Marriott Int'l Hotels, Inc.*,
   No. 99-CV-10496 (CSH), 2002 WL 14363 (S.D.N.Y. Jan. 3, 2002) ...................20

*Duravest, Inc. v. Viscardi, A.G.*,
   581 F. Supp. 2d 628 (S.D.N.Y. 2008) ...............................................................13

*Enron Corp. v. Arora*,
   316 B.R. 434 (Bankr. S.D.N.Y. 2004)................................................................4

*ESI, Inc. v. Coastal Corp.*,
   61 F. Supp. 2d 35 (S.D.N.Y. 1999) .............................................................. 19, 22

*Fagan v. Republic of Austria*,
   No. 08-CV-6715, 2011 WL 1197677 (S.D.N.Y. Mar. 25, 2011) .........5, 16, 17, 20

*Ferrante Equip. Co. v. Lasker-Goldman Corp.*,
   26 N.Y.2d 280 (1970) .......................................................................................12

*Gallelli v.Crown Imports, LLC*,
   701 F. Supp. 2d 263 (E.D.N.Y. 2010) ...................................................19, 20, 24

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011).........................................................................................7

*Grow Grp., Inc. v. Jandernoa*,
   No. 94-CV-5679, 1996 WL 31848 (S.D.N.Y. Jan. 26, 1996) ............................6

*Hau Yin To v. HSBC Holdings PLC*,
   No. 15-CV-3590-LTS-SN, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), aff'd,
   700 F. App'x 66 (2d Cir. 2017) ........................................................................9

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945).........................................................................................24

*J. McIntyre Machinery, Ltd. v. Nicastro*,
    564 U.S. 873 (2011)...............................................................................24

*J.L.B. Equities v. Ocwen Fin. Corp.*,
    131 F. Supp. 2d 544 (S.D.N.Y. 2001) ....................................................24

*Jazini v. Nissan Motor Co.*,
    148 F.3d 181 (2d Cir. 1998) ..................................................4, 5, 16, 17

*Kalin v. Xanboo, Inc.*,
    526 F. Supp. 2d 392 (S.D.N.Y. 2007) ....................................................16

*Law v. Siegel*,
    571 U.S. 415 (2014)........................................................................31, 34

*Letom Mgmt. Inc. v. Centaur Gaming, LLC*,
    No. 17-CV-3793, 2017 WL 4877426 (S.D.N.Y. Oct. 27, 2017) ...............8

*In re Levant Line, S.A.*,
    166 B.R. 221 (S.D.N.Y. 1994)........................................................17, 18

*Linde v. Arab Bank, PLC*,
    262 F.R.D. 136 (E.D.N.Y.2009) ............................................................24

*In re Lyman Good Dietary Supplements Litig.*,
    No. 17-CV-8047 (VEC), 2018 WL 3733949 (S.D.N.Y. Aug. 6, 2018) ...............13

*In re Lyondell Chem. Co.*,
    546 B.R. 127 (Bankr. S.D.N.Y. 2016)..............................................*passim*

*Magdalena v Lins*,
    123 A.D.3d 600 (N.Y. App. Div. 2014) ...................................................7

*Mayatextil v. Liztex U.S.A., Inc.*,
    No. 92-CV-4528, 1995 WL 131774 (S.D.N.Y. Mar. 23, 1995) ...............22

*Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*,
    138 S. Ct. 883 (2018) ...........................................................................34

*In re Merkin*,
    817 F. Supp. 2d 346 (S.D.N.Y. 2011), *vacated in part on other grounds*, 2015
    WL 10847318 (Aug. 24, 2015).............................................................33

*Murray v. Miner*,
    74 F.3d 402 (2d Cir. 1996) ...................................................................16

*Nationsbank, N.A. v. Macoil, Inc.*,
    233 B.R. 644 (Bankr. S.D.N.Y. 1999).....................................................4

*Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameries*,
    No. 03-CV-1681, 2004 WL 2199547 (S.D.N.Y. Sept. 29, 2004) .........................................18

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
    549 B.R. 56 (S.D.N.Y. 2016) ...........................................................................................7

*Off. Comm. of Unsecured Creditors v. Am. Tower Corp. (In re Verestar, Inc.)*,
    343 B.R. 444 (Bankr. S.D.N.Y. 2006)..............................................................................35

*Off. Comm. of Unsecured Creditors v. JP Morgan Chase Bank, N.A. (In re M.
    Fabrikant & Sons, Inc.)*,
    394 B.R. 721 *(Bankr. S.D.N.Y. 2008)*...........................................................................35, 36

*Ontel Prods., Inc. v. Project Strategies Co.*,
    899 F. Supp. 1144 (S.D.N.Y. 1995) .................................................................................12

*Papasan v. Allain*,
    478 U.S. 265 (1986)....................................................................................................5, 26

*Picard v. Fairfield Inv. Fund Ltd. (In re Madoff)*,
    No. 08-CV-1789, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) (Morris,
    C.J.) ......................................................................................................................32, 33

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
    515 B.R. 117 (Bankr. S.D.N.Y. 2014)........................................................................*passim*

*Picard v. Shapiro*,
    Adv. Proc. No. 10-5383 (Bankr. S.D.N.Y. July 8, 2014) ECF 33 ............................26, 27, 28

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Secs. LLC)*,
    542 B.R. 100 (Bankr. S.D.N.Y. 2015).........................................................................26, 27

*Pilates, Inc. v. Pilates Inst., Inc.*,
    891 F. Supp. 175 (S.D.N.Y. 1995) ...................................................................................13

*Rabinowitz v. Kaiser-Frazer Corp.*,
    198 Misc. 707, 96 N.Y.S.2d 642 (1950)...........................................................................22

*Reers v. Deutsche Bahn AG*,
    320 F. Supp. 2d 140 (S.D.N.Y. 2004) ....................................................................20, 22, 23

*Reich v Lopez*,
    858 F.3d 55 (2d Cir. 2017) ..............................................................................................7

*Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001) ..............................................................................26

*Roper Starch Worldwide, Inc. v. Reymer & Assocs.*,
  2 F. Supp. 2d 470 (S.D.N.Y. 1998) ....................................................................9

*Rosenblatt v. Coutts & Co. AG*,
  No. 07-CV-3528, 2017 WL 3493245 (S.D.N.Y. Aug. 14, 2017) ..........................9

*Rush v. Savchuk*,
  444 U.S. 320 (1980).............................................................................................6

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  594 B.R. 167 (Bankr. S.D.N.Y. 2018) (Bernstein, J.) ...........................3, 8, 15, 26

*Self Int'l Ltd. v. La Salle Nat'l Bank*,
  No. 01-CV-4291 (RCC), 2002 WL 500372 (S.D.N.Y. Mar. 29, 2002) ...............22

*Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*,
  403 F.3d 43 (2d Cir. 2005) ................................................................................35

*Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*,
  337 B.R. 791 (Bankr. S.D.N.Y. 2005)................................................................34

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
  No. 12-MC-115(JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) (Rakoff,
  J.)................................................................................................................31, 32

*SPV OSUS Ltd. v. UBS AG*,
  114 F. Supp. 3d 161 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018) ........3, 8

*SPV Osus Ltd. v. UBS AG*,
  882 F.3d 333 (2d Cir. 2018) ....................................................................3, 4, 8, 24

*Stolt Tankers B.V. v. Geonet Ethanol, LLC*,
  591 F. Supp. 2d 612 (S.D.N.Y. 2008) ................................................................24

*Stutts v. De Dietrich Grp.*,
  465 F. Supp. 2d 156 (E.D.N.Y. 2006) ................................................................24

*Sunward Elecs., Inc. v. McDonald*,
  362 F.3d 17 (2d Cir. 2004) ................................................................................14

*Taca Int'l Airlines S.A. v. Rolls-Royce of Eng., Ltd.*,
  15 N.Y.2d 97, 256 N.Y.S.2d 129 (1965)............................................................22

*Tamam v. Fransabank SAL*,
  677 F. Supp. 2d 720 (S.D.N.Y. 2010) .................................................................3

*In re Terrorist Attacks on September 11, 2001*,
  714 F.3d 659 (2d Cir. 2013) .........................................................................4, 24

*Tese-Milner v. De Beers Diamond Trading Co., Ltd.*,
    2010 U.S. Dist. LEXIS 143934, *27 (S.D.N.Y. May 14, 2010)...........................................19

*Toppel v. Marriott Int'l, Inc.*,
    No. 03-CV-3042, 2006 WL 2466247 (S.D.N.Y. Aug. 24, 2006) ...........................................4

*In re Tribune Company Fraudulent Conveyance Litigation*,
    946 F.3d 66, 90 (2d Cir. 2019) .............................................................................................35

*Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*,
    429 B.R. 73 (Bankr. S.D.N.Y. 2010) ...........................................................................35, 36

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*,
    216 F. Supp. 2d 198 (S.D.N.Y. 2002) ..........................................................................35, 36

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*,
    751 F.2d 117 (2d Cir. 1984) .......................................................................17, 18, 20, 22

*Walden v. Fiore*,
    571 U.S. 277 (2014).................................................................................................................7

*Wallert v. Atlan*,
    141 F. Supp. 3d 258 (S.D.N.Y. 2015) ...................................................................................4

**Statutes**

11 U.S.C. §§ 105(a) and 550(a) ....................................................................................................1

11 U.S.C. § 546(e)..............................................................................................................*passim*

11 U.S.C. § 741(7).......................................................................................................................34

11 U.S.C. § 741(8).......................................................................................................................34

**Rules**

CPLR § 301 ...................................................................................................................................6

CPLR § 302(a)(1)......................................................................................................................6, 7

Fed. R. Bankr. P. 7004(f) ..........................................................................................................6, 7

Fed. R. Bankr. P. 7009................................................................................................................35

Fed. R. Civ. P. 9(b)................................................................................................................35, 36

Fed. R. Civ. P. 12(b)(2) ...........................................................................................................3, 4

Fed. R. Civ. P. 12(b)(6) .............................................................................................................25

**Other Authorities**

Fifth Amendment ....................................................................................................................4

Defendants Access International Advisors, LLC ("Access LLC"), Access International Advisors, Ltd. ("Access Ltd."), Access Management (Luxembourg), S.A. ("AML") (f/k/a Access International Advisors (Luxembourg) S.A. ("AIA (Lux)")), Access Partners, S.A ("AP (Lux)"), Patrick Littaye ("Littaye") and Claudine Magon de la Villehuchet individually and in the capacities ascribed to her in the caption above ("CDLV," and together with Access LLC, Access Ltd., AML, AP (Lux) and Littaye, the "Access Defendants") and Groupement Financier Ltd. ("Groupement") respectfully submit this memorandum of law in support of their motion pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(6), and 9(b) to dismiss the claims asserted against them in the Second Amended Complaint (No. 10-4285 ECF No. 274) filed on February 28, 2022 (the "SAC") by plaintiff Irving H. Picard, Trustee (the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the Chapter 7 Estate of Bernard L. Madoff.[1]

## PRELIMINARY STATEMENT

While the parties are only now addressing defendants' motions to dismiss, this case is by no means new. This matter was originally brought by the Trustee on November 24, 2010 by the filing of a summons and the original complaint. Since that time, the Trustee has amended his complaint twice, culminating in the current operative SAC.

The Trustee has also received extensive discovery in connection with this action through the Rule 2004 process (and otherwise). He has taken the deposition of multiple individuals associated with the defendants, and sought, and received, massive document productions from defendants. Indeed, defendant Access LLC and non-party Access International Advisors Inc. ("AIA Inc.") alone have produced over **4.5 million** documents.

---

[1] Counts Two through Six are asserted against Groupement. Only Count Seven (seeking recovery of secondary transfers under 11 U.S.C. §§105(a) and 550(a)) is asserted against the Access Defendants.

Despite over a decade passing and three attempts to draft viable claims, and having access to a mountain of discovery, the SAC is notable for what it does not do.

- The SAC fails to acknowledge that the fund defendants, Groupement and Luxalpha SICAV, are actually victims of Madoff's Ponzi scheme, having lost nearly $1 billion collectively. The Trustee's allegations that the Funds, and their service providers, conspired in, had knowledge of, or benefited from Madoff's fraud is implausible on its face.

- The SAC does not provide any factual details regarding the purported subsequent transfers made to the subsequent transferee defendants. Indeed, none of these transfers is identified by date, amount, transferor or transferee, or in any way connected to the purported initial transfers from BLMIS.

- The SAC does not acknowledge or account for the fact that the Funds' operating documents provide for "holdback" reserves that were funded from investor contributions *before* investments were made in the Funds (or any investment by the Funds in BLMIS) that were used to pay the Funds' servicers. Tellingly, while the Trustee alleges that the *initial transfers* "were and continue to be customer property," he does not allege facts to show that the *subsequent transfers* to the Access Defendants consisted of customer property.

- The SAC fails to set forth any specific, non-conclusory allegations tying any of the alleged secondary transfers or the foreign Access Defendants themselves to New York or the United States. In reality, the foreign Access Defendants were all foreign entities and persons rendering services off shore, to offshore entities paid in funds located off shore.

- And the SAC fails to account for the Section 546(E) safe harbor.

Consequently, this motion seeks dismissal of the SAC for the following reasons. First, as to Access Ltd., AML (f/k/a AIA (Lux)), AP (Lux), and Patrick Littaye—all foreign entities or persons—seek dismissal for lack of personal jurisdiction. In addition, all of the Access Defendants alternatively seek dismissal because the Trustee fails to make plausible allegations that the alleged secondary transfers received by them consisted of avoidable customer property and otherwise lack the specificity required by well-established pleading standards. Finally, all of the moving defendants here seek dismissal pursuant to Section 546(e) safe harbor.

## ARGUMENT

### POINT I

### THE TRUSTEE FAILS TO ESTABLISH PERSONAL JURISDICTION OVER THE ACCESS JURISDICTIONAL MOVING DEFENDANTS

Access Ltd., AML (f/k/a AIA (Lux)), AP (Lux), and Patrick Littaye, (the jurisdictional moving defendants or "JMDs"), are, as the Trustee's pleading admits, foreign companies or persons. Despite that, the Trustee has failed to establish that the JMDs had the requisite minimum contacts with the United States, or that this Court has jurisdiction over the JMDs under New York's or the Bankruptcy Code's general or specific jurisdictional standards. Further, this Court's exercise of jurisdiction over the JMDs would be unreasonable. The Amended Complaint should accordingly be dismissed on these grounds as to the JMDs.

### A.    Legal Standards

The Trustee bears the burden of establishing jurisdiction as to each of the JMDs. *See DiStefano v. Carozzi N. Am., Inc.,* 286 F.3d 81, 84 (2d Cir. 2001). "To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Trustee 'must make a prima facie showing that jurisdiction exists.'" *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (Bernstein, J.) ("BNP Paribas") (quoting *SPV Osus Ltd. v. UBS AG,* 882 F.3d 333, 342 (2d Cir. 2018)). A *prima facie* showing requires more than "some evidence" that jurisdiction over the defendant is proper – the plaintiff must instead plead "facts which, if true, are sufficient in themselves to establish jurisdiction." *Tamam v. Fransabank SAL,* 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010) (citation omitted). Moreover, "conclusory non-fact-specific jurisdictional allegations or a legal conclusion couched as a factual allegation will not establish a prima facie showing of jurisdiction." *SPV*

*OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018) (quoting *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010)).

The court's exercise of personal jurisdiction over a party is further constrained by the Due Process Clause of the Fifth Amendment. *See SPV Osus*, 882 F.3d at 343; *Enron Corp. v. Arora*, 316 B.R. 434, 444 (Bankr. S.D.N.Y. 2004) (internal citations omitted); *Nationsbank, N.A. v. Macoil*, Inc., 233 B.R. 644, 653 (Bankr. S.D.N.Y. 1999).

**B.     The Trustee's Conclusory and Group-Plead Allegations Fail to Establish Jurisdiction over the Jurisdictional Moving Defendants**

**1.     The Trustee's Conclusory Allegations Do Not Establish Jurisdiction**

To satisfy its *prima facie* burden to demonstrate jurisdiction, a plaintiff cannot rely on "[c]onclusory non-fact-specific jurisdictional allegations," nor is the Court required to accept as true "legal conclusion couched as a factual allegation." *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998); *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013); *Wallert v. Atlan*, 141 F. Supp. 3d 258, 276 (S.D.N.Y. 2015) ("A party … may not rely on conclusory non-fact-specific jurisdictional allegations to overcome a [Rule 12(b)(2)] motion to dismiss.") (quoting *Doe v. Del. State Police*, 939 F. Supp. 2d 313, 321 (S.D.N.Y. 2013)). Instead, the plaintiff must plead or aver specific facts showing jurisdiction. *Toppel v. Marriott Int'l, Inc.*, No. 03-CV-3042, 2006 WL 2466247, at *2–4 (S.D.N.Y. Aug. 24, 2006).

Here, the Trustee's boilerplate, generalized and unsupported allegations throughout the SAC do not carry his burden to establish jurisdiction. By way of example, the Trustee makes a number of conclusory allegations in paragraph 22 of the SAC; the only paragraph in the SAC that specifically addresses jurisdiction. **First**, the Trustee alleges that the "Access Defendants,"[2]

---

[2] The Trustee's use of impermissible group pleading is addressed, *infra*.

among others, "delivered agreements or caused agreements to be delivered in New York relating to BLMIS;" yet there are no specific factual allegations anywhere in the SAC that any of the JMDs specifically took such actions. *Compare* SAC ¶ 17 *with*, *e.g.*, SAC ¶ 324 ("Each Feeder Fund Defendant executed, or caused to be executed, BLMIS Account Opening Agreements (as defined herein) for its account, and delivered, or caused those documents to be delivered to BLMIS at BLMIS's headquarters at 885 Third Avenue, New York, New York."). **Second**, the Trustee's allegation that the "Access Defendants communicated regularly with persons in New York regarding the Feeder Fund Defendants and/or BLMIS, and also sent and/or received funds to and/or from BLMIS in New York, utilizing New York banks" is manifestly inadequate when viewed in light of the remainder of the SAC. Once again, the Trustee makes no further factual allegations specific to the JMDs that would support such generalized contentions. **Third**, the Trustee makes further, similarly unsupported claims that "Access" or the "Access Defendants" had offices and employees in New York. *See, e.g.*, SAC ¶¶ 22, 80, 82, 199, 209, 335, 337. Critically, nowhere in the SAC does the Trustee make any allegations specifically against any of the individual JMDs that they had offices or employees in New York. They did not.

The Trustee's allegation lack any specific facts and are unarguably the type of "legal conclusion couched as a factual allegation" for which Courts routinely dismiss claims for lack of personal jurisdiction. *Jazini*, 148 F.3d at 185 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see, e.g., Fagan v. Republic of Austria*, 2011 WL 1197677, at *14 (S.D.N.Y. Mar. 25, 2011) (conclusory allegations that defendants had "offices and/or agents through which [they] advertise[d] and/or conduct[ed] business" and that they "market[ed] and promot[ed]" products and services in the forum did not support jurisdiction).

## 2.    The Trustee's Improper Group Pleading Does Not Establish Jurisdiction

Independently, the Trustee fails to establish jurisdiction over the JMDs because throughout the SAC, the Trustee routinely uses impermissible group pleading. For example, the Trustee directs its jurisdictional allegations to the "Defendants" and "Access Defendants," making it impossible to determine which of: (i) Defendant Access International Advisors LLC; (ii) the JMDs;[3] or (iii) the associated individuals named in the Amended Complaint the Trustee intended to refer. *See* SAC ¶ 22. The remainder of the SAC fares no better. Throughout the Trustee makes general and vague allegations as to the "Defendants" (*see, e.g.*, SAC ¶¶ 13–15, 22), "Access Defendants," (*see, e.g.*, SAC ¶¶ 15, 82, 209, 228, 315–16, 318, 320), "Access entities" (*see e.g.*, ¶¶ 77, 134), and "Access" (*see, e.g.*, ¶¶ 80–2, 97, 105, 109–12, 130, 135, 174–9, 199, 209, 233, 246–8) without any delineation or separateness.

Such group pleading is insufficient as a matter of law. *See In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021) (group pleading is not permitted as "plaintiff is required to establish personal jurisdiction separately over each defendant"); *Berdeaux v. OneCoin Ltd.*, No. 10-CV-4074, 2021 WL 4267693, at *6 (S.D.N.Y. Sept. 20, 2021) ("A plaintiff must carry his burden with respect to each defendant individually."); *Grow Grp., Inc. v. Jandernoa*, 1996 WL 31848, at *5 (S.D.N.Y. Jan. 26, 1996) (citing *Rush v. Savchuk*, 444 U.S. 320, 322 (1980)) ("Indeed considering the defending parties by group and aggregating their forum contacts in determining jurisdiction is plainly unconstitutional.").

---

[3] Further, the jurisdictional allegations simply do not apply to the JMDs, as they are contradicted or unsupported by factual averments elsewhere in the Second Amended Complaint.

## C.      The Trustee Fails to Establish General Jurisdiction Over the JMDs

With these conclusory and group-plead allegations in hand, the Trustee seeks to assert both

general and specific jurisdiction pursuant to CPLR §§ 301 and 302 as well as Bankruptcy Rule

7004. SAC ¶ 22. In New York, general jurisdiction may be established only if (1) the defendant

is domiciled, incorporated in or has its principal place of business in the forum state or (2) in

exceptional cases, the defendant's contacts with a forum are so extensive as to support general

jurisdiction notwithstanding domicile elsewhere. *Daimler AG v Bauman*, 571 U.S. 117, 137–38

(2014); *Reich v Lopez*, 858 F.3d 55, 63 (2d Cir. 2017); *Magdalena v Lins*, 123 A.D.3d 600, 601

(N.Y. App. Div. 2014). Minimum contacts necessary to establish general jurisdiction require that

foreign defendant's "affiliations with the State are so 'continuous and systematic' as to render [it]

essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (quoting

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Only in an

"exceptional case" can a corporation's operations in another forum be "so substantial and of such

a nature as to render the corporation at home in that State." *Id.*, at 159 n.19. As detailed below,

none of the JMDs have established New York as its home state. Nor has the Trustee alleged or

demonstrated that the JMDs have had a continuous, permanent or systematic contact with New

York or the United States to establish general jurisdiction.

## D.      The Trustee Fails to Establish Specific Jurisdiction Over the JMDs

For a court to exercise specific personal jurisdiction pursuant to CPLR § 302(a)(1)[4], New

York's "long arm" statute, there must be a showing that the foreign defendant transacts business

---

[4] The Trustee alleges specific personal jurisdiction based on New York's long-arm statute (CPLR.
§ 302(a)(1)) and Federal Rule of Bankruptcy Procedure 7004(f). SAC ¶ 22. Under Bankruptcy
Rule 7004(f), the Trustee can demonstrate personal jurisdiction by establishing that the defendant
had sufficient minimum contacts with the United States as a whole. *See, e.g.*, *In re Lyondell
Chemical Co.*, 543 B.R. 127, 138–9 (Bankr. S.D.N.Y. 2016). The analysis of personal jurisdiction
under Rule 7004(f) "closely resemble[s]" that of New York's long-arm statute and due process

within the state and that the claims at issue arise from and relate to that business. *See CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986). The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third-parties) and the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). "'The overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York.'" *Berdeaux*, 2021 WL 4267693, at *9. Analysis of specific jurisdiction also incorporates a causation requirement. In this Circuit, "[w]here the defendant has had only limited contacts with the [forum] it may be appropriate to say that he will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts." *BNP Paribas*, 594 B.R. at 190 (quoting *SPV Osus*, 882 F.3d at 334);[5] *see also SPV Osus*, 114 F. Supp. 3d at 170 (finding proximate causation was the appropriate standard where defendants were "foreign banks alleged to have provided services to foreign investment funds, acting entirely abroad and with only sporadic or indirect contacts with the United States" and, holding that "it is appropriate to require the [Trustee] to establish that his 'injury was proximately caused by those contacts'" (quoting *Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998)). Here, the JMDs' contacts with the United States are virtually nonexistent, and entirely unrelated to the alleged subsequent transfers made outside of the United States for services rendered to foreign entities by the JMDs abroad.

---

requirements, and the analyses are largely interchangeable. *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 68 (S.D.N.Y. 2016).

[5] The Supreme Court in *Ford Motor Co. v. Montana Eighth Judicial Court* held that a "strict causal relationship" was not necessary where a defendant, rather than having limited contacts with the forum as in *SPV Osus*, marketed the allegedly defective products at issue through "every means imaginable" and "systematically served a market" in the states through dozens of dealerships." 141 S. Ct. 1017, 1026–28 (2021). That is clearly not the situation here.

Courts in this district have dismissed Madoff-related suits against foreign defendants with connections to BLMIS on the basis of personal jurisdiction where, as here, the contacts were "too tenuous" to support jurisdiction. *SPV Osus*, 882 F.3d at 344–45 (affirming dismissal based on lack of personal jurisdiction over foreign defendant in connection with feeder fund where defendants' actions took place completely abroad and had limited contacts with the United States).[6] In *Hill v. HSBC Bank Plc*, the court found no specific jurisdiction over foreign defendant custodians and administrators for BLMIS feeder funds where "[n]one of the business activities allegedly conducted by the Foreign Defendants occurred in New York." 207 F. Supp. 3d 333, 339 (S.D.N.Y. 2016); *see also Hau Yin To v. HSBC Holdings PLC*, No. 15-CV-3590-LTS-SN, 2017 WL 816136, at *6 (S.D.N.Y. Mar. 1, 2017) (finding no personal jurisdiction over foreign defendant feeder-fund administrators, registrars, and service agents where "communications and payments were incidental consequences of fulfilling a foreign contract and are insufficient to 'project' the Foreign Defendants into New York") (internal citations omitted), aff'd, 700 F. App'x 66 (2d Cir. 2017). Here too, none of the JMDs transacted business within New York or the United States, nor do any of the JMD's alleged contacts with the forums give rise to the claims at issue in this case.

---

[6] This reasoning extends beyond Madoff-related cases. *See, e.g., Letom Mgmt. Inc. v. Centaur Gaming, LLC*, No. 17-CV-3793, 2017 WL 4877426, at *7 (S.D.N.Y. Oct. 27, 2017) (reasoning that the fact that a contract negotiated and executed outside New York required payments to New York bank account did not confer specific jurisdiction); *Rosenblatt v. Coutts & Co. AG*, No. 07-CV-3528, 2017 WL 3493245, at *4 (S.D.N.Y. Aug. 14, 2017) (finding that a foreign defendant sending payment to plaintiff's New York bank account pursuant to an agreement negotiated and executed outside the United States was not purposeful availment); *Roper Starch Worldwide, Inc. v. Reymer & Assocs.*, 2 F. Supp. 2d 470, 475–76 (S.D.N.Y. 1998) (finding that "merely sending payment to New York" pursuant to a contract negotiated and executed in Illinois or Michigan was not sufficient for personal jurisdiction).

1.    **The Alleged Contacts Between Each of the JMDs and the United States Are Insufficient to Establish Jurisdiction**

(i)    **As to Access Ltd.:**

The Trustee failed to make any allegations that Access Ltd. maintained a continuous, permanent, or systematic presence in the United States, or that it purposely directed its activities to New York or the United States, such that it invoked the benefits and protections of New York of the United States.

Access Ltd. has no New York contacts. As alleged, it is a Bahamas limited company with its registered office in the Bahamas. SAC ¶ 88; Littaye Decl. ¶ 44; Littaye Decl. Exs. 36, 37. All of the allegations of affirmative actions by Access Ltd. are on behalf of foreign entities and admitted to have been performed outside of the United States. SAC ¶¶ 89–90.

While the Trustee conclusorily alleges that Access Ltd. was a "shell entity that had no physical presence in any jurisdiction," SAC ¶ 91, in fact, Access Ltd. had its own office and lease in the Bahamas through the end of 2008. Littaye Decl. ¶ 47; Littaye Decl. Ex. 39. Access Ltd. further had its own contracts with service providers and paid its share of group insurance premiums from its own funds. *Id.* Access Ltd. never operated or conducted business in the United States and did not maintain an office, bank account, or phone listing in the United States. *Id.*, at ¶ 51. Access Ltd. never had a BLMIS account or otherwise invested money with Madoff. *Id.*, at ¶ 53.

As such, the Trustee failed to demonstrate that this Court has jurisdiction over Access Ltd.

(ii)    **As to AML/AIA (Lux):**

Similarly, the Trustee fails to establish that this Court has personal jurisdiction over AML/AIA (Lux). Again, there are no allegations that AML/AIA (Lux) maintained a continuous, permanent, or systematic presence in the United States, or that it purposely directed its activities

to New York or the United States, such that it invoked the benefits and protections of New York of the United States.

As alleged, AML is incorporated and organized as a société anonyme under the laws of Luxembourg, with its registered office there. SAC ¶ 92; Littaye Decl. ¶ 28; Littaye Decl. Exs. 13, 14. All allegations pertaining to conduct, contact, or contracts are alleged to have occurred exclusively outside of the United States. *See* SAC ¶ 93. Although the Trustee alleges that former entity *AIA (Lux)* was a "shell entity" with "[n]o regular employees" and "no full-time employees," SAC ¶ 94, defendant *AML* had its own office, employees, and lease in Luxembourg. Littaye Decl. ¶ 35. It further had its own contracts with service providers and paid for its share of group insurance premiums from its own funds. *Id.* AML neither operated nor conducted business in the United States and did not maintain an office, bank account, or phone listing in the United States. *Id.*, at 41. AML further did not have a BLMIS account or invest money with Madoff. *Id.*, at 42.

The Trustee has failed to allege that AML had minimum contacts with the United States sufficient to establish personal jurisdiction.

**(iii)    As to AP (Lux):**

Similarly, the Trustee fails to demonstrate that AP (Lux) had any ties to the United States, Madoff, or BLMIS, let alone the type of minimum contacts sufficient to establish personal jurisdiction.

As alleged, AP (Lux) is a société anonyme incorporated and organized under the laws of Luxembourg, with a registered office there. SAC ¶ 95; Littaye Decl. ¶ 17; Littaye Decl. Ex. 4. Once again, all allegations as to conduct, contact, or contracts are alleged to have occurred exclusively outside of the United States. *See* SAC ¶ 96. The Trustee's repeated (yet unsupported) allegations that AP (Lux) was a also "shell entity," SAC ¶ 97, are belied by the facts that AP (Lux) had its own office and lease in Luxembourg, its own contracts with services providers, and paid

11

for its share of group insurance premiums from its own funds. Littaye Decl. ¶ 20. AP (Lux) did

not operate or conduct business in the United States, had no contracts with United States brokers,

and did not maintain an office, bank account, or phone listing in the United States.

The Trustee has failed to establish personal jurisdiction over AP (Lux).

### (iv)    As to Patrick Littaye:

The Trustee fails to demonstrate personal jurisdiction as to Patrick Littaye, a French citizen.

SAC ¶ 101. Throughout the period relevant to this action, Littaye was a resident of either France

or Belgium. Littaye Decl. ¶ 4. Littaye worked almost exclusively in Europe and only visited the

United States three or four times a year to attend meetings of some of the Access entities. Littaye

Decl. ¶ 8. The Trustee fails to allege any connection between these meetings and Trustee's claims

against Littaye for recovery of unspecified secondary transfers made abroad. Those meetings did

not primarily focus on BLMIS or Madoff-related funds, and instead addressed the business of

Access globally. *Id*. As set forth in the following, the Trustee's other scattershot attempts to

justify its action against Littaye all miss the mark.

### (a)    Littaye's Ownership Interest in Some of the Access Entities Is Insufficient to Establish Personal Jurisdiction

Allegations that Littaye co-founded and co-owned Access LLC, Access Ltd.,

AML/AIA(Lux), AP (Lux) and non-party Access International Advisors Inc. ("AIA Inc.") are

insufficient to establish personal jurisdiction over Littaye. SAC ¶¶ 2, 76, 78, 317. *See Ferrante*

*Equip. Co. v. Lasker-Goldman Corp.*, 26 N.Y.2d 280, 283 (1970) ("The mere fact that respondent

is a controlling shareholder in . . . a corporation concededly doing business in New York . . . will

not subject respondent . . . to *in personam* jurisdiction . . . unless the record would justify our

piercing the corporate veil."). "In New York, the individual who owns a corporation is generally

not subject to personal jurisdiction as a result of the corporation's activities unless (1) the corporate

veil can be 'pierced' or (2) the corporation acted as an agent for the owner." *Ontel Prods., Inc. v. Project Strategies Co.*, 899 F. Supp. 1144, 1148 (S.D.N.Y. 1995). The Trustee's allegations about Littaye's ownership interests in certain of the Access entities and his conduct as an officer or director, as discussed below, fail to satisfy the jurisdictional burden here.[7]

### (b)    Littaye's Status as Corporate Officer or Director Is Insufficient to Establish Personal Jurisdiction

The Trustee alleges that Littaye and Villehuchet were "executives and directors of all of the Access Defendants." SAC ¶ 78. The Trustee further alleges that Littaye was the Director of Luxalpha from February 1, 2006, until liquidation SAC ¶ 101, sat on Luxalpha's Board of Directors SAC ¶ 227, and sat on Groupement Financier and Groupement Levered's board of directors. SAC ¶ 106. To the extent that this Court has personal jurisdiction over any of these entities, Littaye's status as corporate officer or director is insufficient to establish personal jurisdiction over Littaye as "[i]t is 'well established that individual officers and employees of a corporation are not automatically subject to personal jurisdiction ... simply because a court can exercise jurisdiction over the corporation.'" *In re Lyman Good Dietary Supplements Litig.*, No. 17-CV-8047 (VEC), 2018 WL 3733949, at *8 (S.D.N.Y. Aug. 6, 2018) (quoting *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 180–81 (S.D.N.Y. 1995)); *see also Charas v. Sand Tech. Sys. Int'l, Inc.*, No. 90-CV-5638, 1992 WL 296406, at *4 (S.D.N.Y. Oct. 7, 1992); *In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 467 (S.D.N.Y. 2008). Instead, an individual defendant may be subject to personal jurisdiction "based on his actions in his corporate capacity only where the plaintiff can show that the corporation was acting as agent of the officer (rather than vice versa, as

---

[7] As further discussed in Point I.D.3 below, to the extent the Trustee relies on allegations that Littaye and Villehuchet "coordinated, dominated, and controlled" what the Trustee refers to as the Access "enterprise," SAC ¶ 77, such allegations are vague, conclusory, and insufficient to pierce the corporate veil. These allegations thus fail to demonstrate personal jurisdiction.

would usually be the case)." *Duravest, Inc. v. Viscardi, A.G.*, 581 F. Supp. 2d 628, 634 (S.D.N.Y. 2008).

Throughout the SAC, the Trustee relies on general allegations that Littaye "controlled" the various Access entities. *See, e.g.*, SAC ¶ 77 ("Littaye and Villehuchet coordinated, dominated, and controlled [the Access] enterprise."); *Id.* ¶ 317 ("Access operated under the direction and control of Littaye and Villehuchet at all times."). But, as described in Point I.D.3(i)(a), such conclusory allegations fail as each of these entities had distinct ownership structures, Littaye Decl. ¶¶ 21, 36, 48, and their own independent boards of directors. Littaye Decl. ¶¶ 22, 37, 49.

As to the Trustee's allegations that Littaye visited New York to attend meetings of various of the Access entities, or purportedly visited with Madoff in New York during such meetings, SAC ¶ 80, he did so in his capacity as officer and director of the Access entities, which, once again, does not establish jurisdiction. Additionally, such sporadic contacts fall short of the minimum contacts required to establish personal jurisdiction over Littaye. Establishing minimum contacts requires that a defendant "purposefully avails itself of the privilege of conducting activities in New York" and that the cause of action "arises from" the defendant's contacts. *Berdeaux*, 2021 WL 4267693, at *9. There are absolutely no allegations that the trips to New York related to a secondary transfer in the alleged form of payments of fees or compensation for services rendered outside of the US. *See* Point I.D.2, *infra*.

Similarly, during his infrequent visits with Madoff, Littaye and Madoff never discussed redemptions generally, and more specifically never addressed the alleged subsequent transfers made by the Foreign Access Defendants to Littaye that the Trustee is seeking to recover through this action. *Id.*

14

Accordingly, the instant claims do not "arise out of" the minimal contact Littaye had with the Forum.

## 2. The JMD's Alleged Receipt of Subsequent Transfers Does Not Establish Jurisdiction

The JMDs' alleged receipt of subsequent transfers does not establish jurisdiction.

**First**, it is well-established that "a plaintiff 'must establish the court's jurisdiction with respect to *each* claim asserted.'" *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 83 (2d Cir. 2018) (quoting *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) (emphasis added); *accord City of Long Beach v. Total Gas & Power N. Am. Inc.*, 465 F. Supp. 3d 416, 432 (S.D.N.Y. 2020). As applicable here, the Trustee must establish jurisdiction "with respect to each . . . of the [] subsequent transfers at issue," each of which must be treated "as separate and distinct" claim. *BNP Paribas S.A.*, 594 B.R. at 190 (citation omitted) (emphasis added).

The Trustee comes nowhere close to pleading jurisdiction as to each of the alleged subsequent transfers. Instead, the Trustee's allegations concerning subsequent transfers to the JMDs are impermissibly "lumped" together. For example, the Trustee alleges that "the Feeder Defendants subsequently transferred some of the Initial Transfers to the Access Defendants . . . as payment for their alleged service of the Feeder Fund Defendants," with no distinction between any of the "Access Defendants" or the individual transfers purportedly made to them. SAC ¶ 332. Such "lump" pleading of transfers does not establish jurisdiction "with respect to each of the claims asserted" as a matter of law. *Charles Schwab*, 883 F.3d at 83.

**Second**, fees received by service providers were not plausibly alleged to be a part of a BLMIS redemption and took place, if at all entirely outside of the United States. In reality, monies were set aside to pay management and provider fees at the time investors made investments into the Funds, and before any investment into, or redemption from, BLMIS. Littaye Decl. ¶¶ 56, 57;

*see* Littaye Decl. Exs. 44, 45. Both Groupement and Luxalpha's operating documents provided for "holdback" reserves maintained by UBSL and funded by investor contributions before investments were made in the Funds, which were allocated to cover "running costs," including "administrative fees." *Id.* These reserves never went to BLMIS and were not from redemptions made by BLMIS to any of the Funds. *Id.*, at 57.

**Third**, as discussed in Point III.A there are no plausible allegations that the alleged subsequent transfers to the JMDs, all foreign entities or persons, occurred in the United States, or came from entities located there. As such, the allegations of subsequent transfers do not warrant finding jurisdiction over the JMDs.

### 3.    The Trustee Cannot Ignore Corporate Forms to Establish Jurisdiction

Presumably acknowledging his insufficient jurisdiction allegations as to each of the JMDs, the Trustee attempts to disregard their separate corporate forms and treat all of the JMDs as "alter egos" or "mere departments" of the US based Access entities Access LLC and non-party AIA Inc. However, the Trustee's vague allusions that Access LLC, AIA Inc., Access Ltd., AML/AIA (Lux), and AP (Lux) "were, in reality, a single business enterprise or alter egos of each other" are insufficient to pierce the corporate veil, and thus do not support a finding of personal jurisdiction over the JMDs.  SAC ¶ 77.

"New York courts apply a presumption of separateness to corporations and are hesitant to disregard the corporate form." *Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392, 403 (S.D.N.Y. 2007) (citations omitted).  Indeed, the Second Circuit has stated that courts should permit veil-piercing only under "extraordinary circumstances." *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996). Moreover, the presence of a local corporation does not create jurisdiction over a related, but independently managed, foreign corporation. *See Jazini*, 148 F.3d at 184.  Only where the plaintiff has established that the entity subject to jurisdiction and the foreign entity are merely "alter egos,"

16

or that the local entity is a "mere department" of the foreign entity, will the court disregard the corporate form and find jurisdiction over the foreign entity. *See Fagan*, 2011 WL 1197677, at *17 (declining to find personal jurisdiction). The Trustee fails to overcome this presumption.

When analyzing whether one entity exercised complete domination over the other, whether for jurisdictional or liability purposes, New York courts have considered the same list of factors, including: (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence (*i.e.*, issuance of stock, election of directors, keeping of corporate records and the like); (2) inadequate capitalization; (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the amount of business discretion displayed by the allegedly dominated corporation; (7) whether the related corporations deal with the dominated corporation at arm's length; (8) whether the corporations are treated as independent profit centers; (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group; and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own. *See Bank of Am. v. Apollo Enter. Solutions, LLC*, No. 10-CV-5707, 2010 WL 4323273, at *4 (S.D.N.Y. Nov. 1, 2010) (listing factors determined in jurisdiction veil piercing analysis and finding the alter ego relationship not sufficiently pled).

The Trustee has failed to establish that disregarding corporate forms is appropriate in this case, and thus this provides no basis for finding personal jurisdiction.

(i)        **The JMDs Were Not Alter Egos of Access LLC or AIA Inc.**

To establish personal jurisdiction based on an alter-ego theory,[8] a plaintiff must allege

facts that demonstrate: (1) common ownership and the presence of an interlocking directorate and

executive staff; (2) the subsidiary's financial dependency on the parent; (3) the parent's

interference in the selection and assignment of the subsidiary's executive personnel and a failure

to observe corporate formalities; and (4) the parent's control of the subsidiary's marketing and

operational policies.   *See Fagan*, 2011 WL 1197677, at *17 (declining to find personal

jurisdiction); *Jazini*, 148 F.3d at 184–85 (citing *Volkswagenwerk Aktiengesellschaft v. Beech

Aircraft Corp.*, 751 F.2d 117, 120–22 (2d Cir. 1984)); *In re Lyondell Chem. Co.*, 546 B.R. 127,

143 (Bankr. S.D.N.Y. 2016).   The Trustee has failed to satisfy these requirements and thus failed

to establish personal jurisdiction over the JMDs on these grounds.

(a)        **The JMDs and Access LLC/AIC Inc. Do Not Share Sufficient
Common Ownership**

"'The first factor, common ownership, is essential to the assertion of jurisdiction over a

foreign related corporation, while the three other factors are important.'" *In re Lyondell*, 543 B.R.

at 144 (quoting *Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameries*, No. 03-

CV-1681, 2004 WL 2199547, at *9 (S.D.N.Y. Sept. 29, 2004) (citing *Beech*, 751 F.2d at 120–

22)).   "Although there is not a per se rule barring suits against a foreign entity which is not a wholly

owned subsidiary, nearly identical ownership interest must be found before one corporation can

be considered a mere department of another." *In re Levant Line, S.A.*, 166 B.R. 221, 232 (Bankr.

S.D.N.Y. 1994) (citing *Beech*, 751 F.2d at 120) (emphasis added).   Here, the ownership of AIA

---

[8] Courts apply the same four-factor analysis whether framed as an "alter-ego" or "mere department" theory. *See Fagan*, 2011 WL 1197677, at *17; *In re Levant Line, S.A.*, 166 B.R. 221, 231 (S.D.N.Y. 1994) (listing factors).

Inc. and Access LLC[9] on the one hand, and the ownership of each of the JMDs on the other, are neither "nearly identical" nor have the degree of commonality needed to satisfy showing.

The analysis of common ownership between AIA Inc., a New York corporation, or Access LLC a Delaware limited liability company, on the one hand, and Access Ltd. (a Bahamas limited company, SAC ¶ 88) clearly fails. Access Ltd. was owned at various times and in varying percentages by: (i) Access Group Ltd.; (ii) AIA Inc.; (iii) Pause Group Ltd.; (iv) Thierry de la Villehuchet; (v) Phillip Junot; and (vi) Patrick Littaye. *See* Littaye Decl. Exs. 40, 41. Accordingly, there is insufficient overlap between Access Ltd. on the one hand, and either Access LLC or AIA Inc. on the other, to establish that Access Ltd. was an alter-ego of the US based Access entities.

The analysis of common ownership between AIA Inc. or Access LLC on the one hand and either of AML/AIA (Lux) or AP (Lux) on the other, also fails to establish common ownership. At all times, Banque Degroof, a Luxembourg based entity, owned at least 20% AML/AIA (Lux) (and is not, and never was, an owner of either Access LLC or AIA Inc.), such that the overlap with AIA Inc. or Access LLC was at most, 80%. *See* Littaye Decl. Exs. 19, 20, 21, 22, 23. Similarly, because at all relevant times Banque Degroof owned 20% of AP (Lux), AP (Lux)'s overlap with AIA Inc. or Access LLC was, at most, 80%. *See id.*, at Exs. 4, 8. Courts, however, have consistently found showings up to 90% common ownership to be insufficient to meet the common ownership prong of the alter ego analysis. *See, e.g., Tese-Milner v. De Beers Diamond Trading Co., Ltd.*, No. 04 Civ. 05203, 2010 U.S. Dist. LEXIS 143934, *27 (S.D.N.Y. May 14, 2010) (74% common

---

[9] In opposition materials previously filed in this case, the Trustee alleged that as of 2003, AIA Inc. was owned by R. Thierry Magon de La Villehuchet (50%) and Earthstreet Limited (50%), No. 10-04285, ECF No. 128 (Pergament Decl. Exs. 136, 139); and as of 2005 it was owned by R. Thierry Magon de La Villehuchet (48%), Dalestrong Limited (48%), and Theodore Dumbauld (4%). No. 10-04285, ECF No. 128 (Pergament Decl. Exs. 136, 137). AIA Inc. was dissolved in July 2010. Access LLC is a wholly-owned subsidiary of AIA, Inc. No. 10-04285, ECF No. 128 (Pergament Decl. Ex. 136).

ownership insufficient); *Gallelli v. Crown Imports, LLC*, 701 F. Supp. 2d 263, 273 (E.D.N.Y. 2010) (76.25% common ownership insufficient); *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 52 (S.D.N.Y. 1999) (90% sufficient but a "close call"). As to AML/AIA (Lux) and AP (Lux), there simply is not enough ownership overlap to meet this essential factor.

### (b) The Trustee Fails to Meet Any of the Remaining Three Criteria to Establish Alter Ego

Even if the Court were to determine that the Trustee satisfied the required common ownership prong (and it should not), he fails to satisfy the other three factors. "[C]ourts in this circuit have found a *prima facie* showing of alter ego jurisdiction only where the plaintiff alleged (and in some instances provided evidence), *in addition* to common ownership and overlapping officers and directors, that the subsidiary was kept undercapitalized, that there was a failure to respect corporate formalities or permit autonomous decision-making, or both." *In re Lyondell*, 546 B.R. at 145. With respect to Access Ltd., AML/AIA (Lux), and AP (Lux), the Trustee addresses the three remaining factors with unsupported, conclusory allegations devoid of any meaningful detail. *See, e.g.*, SAC ¶ 88 (alleging that Littaye and Villehuchet "coordinated, dominated, and controlled" the distinct Access entities"). However, an alter ego finding is not warranted "unless factors beyond common ownership suggest that their separate corporate identities are a mere facade . . . Instead, there must be a finding of 'extraordinary control.'" *Fagan*, 2011 WL 1197677 at *17 (citing *Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140, 156 (S.D.N.Y. 2004)).

A review of the standard required to satisfy each of these factors further demonstrates the insufficiency of the Trustee's allegations.

### (i) The JMD Entities were not financially dependent on other JMD Entities, Access LLC, or AIA Inc.

In order to satisfy the "financial dependency" prong of the "alter ego" analysis, a Plaintiff must show that "the subsidiary would be unable to function without the *financial* support of the

parent." *Gallelli*, 701 F. Supp. 2d at 274 (finding no "mere department" where, among other things, plaintiff failed to show the financial dependence of the subsidiary on the parent) (emphasis added); *Reers*, 320 F. Supp. 2d at 157.

When assessing financial dependency, courts typically consider "whether the two companies' accounts have been intermingled, the parent has paid the subsidiary's expenses, the parent has loaned money to the subsidiary without interest, or the parent has guaranteed the subsidiary's obligations." *Dorfman v. Marriott Int'l Hotels, Inc.*, No. 99-CV-10496 (CSH), 2002 WL 14363, at *8 n.12 (S.D.N.Y. Jan. 3, 2002); *see also Beech*, 751 F.2d at 121 (finding that financial dependency factor was satisfied where subsidiary had received numerous loans from the parent, which were uncollected and without a payment date, and was "wholly dependent upon [the parent's] financial support to stay in business"). The Trustee has not demonstrated—or even alleged—that (1) any of the JMDs' accounts are intermingled with that of other JMDs, Access LLC, or AIA Inc.; (2) any JMD, Access LLC, or AIA Inc. paid the expenses of any of the JMD entities; (3) any JMD entities, Access LLC, or AIA Inc. loaned money to any of the JMD entities without interest; or (4) any JMD entities, Access LLC, or AIA Inc. guaranteed any of the JMD entity's loans. Put simply, the Trustee has failed to set forth any relevant allegations going to financial dependency.

The Trustee's inability to demonstrate the JMDs' financial dependence is not surprising because each of the JMDs was financially independent. Littaye Decl. at ¶¶ 27, 43, 54; *see, e.g.,* Littaye Decl. Exs. 5, 6, 7, 18, 34, 35, 43. Each of the JMDs created their own revenue and earned their own fees. *Id.* Bank accounts, financial books and records, leases, and contracts with service providers were each in the name of the respective JMD. *Id.*, at ¶¶ 20, 24, 35, 40, 47, 50. Each

21

bore its own share of the group insurance premiums, and each of the JMDs paid for its own expenses with its own funds. *Id.*, at ¶¶ 20, 35, 47.

The SAC fails to provide any allegation to support a finding of any JMDs' financial dependence on another JMD, or on Access LLC or AIA Inc.

> (ii)     **The Trustee failed to establish that Access LLC or AIA Inc. interfered in the assignment of the JMD Entities' key personnel or that there was a failure to observe corporate formalities**

This "interference" factor "looks at *both* the degree to which the parent corporation chooses the subsidiary's personnel *and* whether the entities failed to observe corporate formalities." *In re Lyondell*, 546 B.R. at 145 (noting that the Trustee in that case alleged "significant overlap" between the managers and officers and directors but that "the Complaint lacks any allegations with respect to the maintenance of (or failure to maintain) corporate formalities"). In examining whether there has been interference with the assignment of key personnel or failure to observe corporate formalities, courts look to, *inter alia*, overlap in officers, source of executives' salaries, and structure of board meetings. *ESI, Inc.*, 61 F. Supp. 2d at 51 (citing *Beech*, 751 F.2d at 121–22) (noting that parent appointed, controlled, and paid subsidiary's officers and the subsidiary held no independent board meetings); *Taca Int'l Airlines S.A. v. Rolls-Royce of Eng., Ltd.*, 15 N.Y.2d 97, 101, 256 N.Y.S.2d 129, 132 (1965) (finding that parent shifted employees among subsidiaries); *Rabinowitz v. Kaiser-Frazer Corp.*, 198 Misc. 707, 711, 96 N.Y.S.2d 642, 645 (1950) (finding that parent paid salaries of certain officers).

"[C]ourts have recognized that '[t]he existence of common directors and officer is a normal business practice of a multi-national corporation,' and that a showing of mere corporate ownership or common management will not be sufficient to justify veil piercing." *In re Lyondell*, 546 B.R. at 145 (quoting *Mayatextil v. Liztex U.S.A., Inc.*, No. 92-CV-4528, 1995 WL 131774,

\*4–5 (S.D.N.Y. Mar. 23, 1995)). Indeed, where courts have determined that this factor weighs in favor of finding that a subsidiary is a mere department of a parent, the Court has found that the degree of common officers and directors necessary be a "massive overlap," *ESI, Inc.*, 61 F. Supp. at 54–55, and required that the companies personnel be "substantially the same" or demonstrate "mirror image symmetry." *Reers*, 320 F. Supp. 2d at 157 (citing *Self Int'l Ltd. v. La Salle Nat'l Bank*, No. 01-CV-4291 (RCC), 2002 WL 500372, at \*3 (S.D.N.Y. Mar. 29, 2002) (collecting cases)).

Here, while there is some overlap in the directors of Access LLC and AIA Inc. on the one hand, and various of the JMDs on the other, such overlap is minor, and fails as a matter of law to demonstrate alter egos. Each of the JMD entities had directors that did not overlap with either AIA Inc. or Access LLC. These included, for **Access Ltd**.: (i) John O'Donnell; (ii) Philip Mark Croshaw, (iii) James William Grassick; (iv) Jesse Grant Hester; (v) David Thomas Cocksedge; (vi) Sian Wood; (vii) Matthew Charles Stokes; (viii) Marie McDonald; (ix) Pachridee Hanna; and (x) Shenek Taylor. Littaye Decl. ¶ 49, Littaye Decl. Exs. 40, 42. For **AML/AIA (Lux)**, these included: (i) Jean-Michael Gelhay; (ii) Alain Leonard; and (iii) Donald Villeneuve. Littaye Decl. ¶¶ 37, 39; Littaye Decl. Exs. 24, 25, 26, 27, 28, 29, 31, 32, 33. For **AP (Lux)**, these included: (i) Alain Leonard. Littaye Decl. ¶ 22, Littaye Decl. Exs. 8, 4, 9, 10.

The remaining two factors under this "interference" prong are equally unsupported by the Trustee's allegations. First, neither Access LLC nor AIA Inc. have ever paid the executives' salaries of any of the JMD entities, *see* Littaye Decl. at ¶¶ 27, 43, 54, nor has the Trustee alleged as much.

Second, the JMDs have observed corporate formalities. Indeed, the SAC acknowledges that the Access entities were "formally distinct and separately organized in their various

jurisdiction." SAC ¶ 77. Each JMD entity's board acted independently of the boards of any other JMD entities, Access LLC, or AIA Inc., and did not hold combined meetings with the boards of any other entity. Littaye Decl. ¶¶ 22, 37, 49.

>           (iii)    **Neither Access LLC nor AIA Inc. Controlled the JMD Entities' Marketing or Operational Policies**

Finally, in order to prove his "alter ego" theory, the Trustee must show that AIA controlled the marketing and operational policies of the JMD entities. Conclusory allegations that "Littaye and Villehuchet marketed and used the network of Access entities as a collective whole to service Luxalpha and Groupement Financier, among other BLMIS-feeder funds" are insufficient to satisfy this showing. SAC ¶ 77. Courts have long and consistently held that a marketing strategy in which a corporation decides not to present to its consumers the existence of a parent-subsidiary relationship is not the equivalent to a showing that the parent corporation exercises any control over its subsidiaries operational or marketing activities. *Reers*, 320 F. Supp. 2d at 157–158 (citing *J.L.B. Equities v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544, 550 (S.D.N.Y. 2001)); *see also Linde v. Arab Bank, PLC*, 262 F.R.D. 136, 144–45 (E.D.N.Y.2009); *Stutts v. De Dietrich Grp.*, 465 F. Supp. 2d 156, 167–68 (E.D.N.Y. 2006); *Gallelli*, 701 F. Supp. 2d at 274; *Bellomo v. Penn Life Co.*, 488 F. Supp. 744, 745 (S.D.N.Y. 1980).

Because Access LLC and AIA Inc. did not control the marketing or operational policies of the JMDs, they were not AIA's "alter egos," which precludes AIA's jurisdictional contacts from being imputed to them.

**POINT II**

**IT IS NOT REASONABLE TO SUBJECT THE JMDS TO JURISDICTION IN THE UNITED STATES**

"To establish personal jurisdiction over a defendant, due process requires a plaintiff to allege (1) that a defendant has certain minimum contacts with the relevant forum, and (2) that the

exercise of jurisdiction is reasonable in the circumstances." *SPV Osus*, 882 F.3d at 343, (quoting *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013)).

The JMDs' lack of contacts with New York or the United States makes this Court's exercise of jurisdiction unreasonable, as it would run afoul of the notions of "'fair play and substantial justice.'" *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Where, as here, a plaintiff makes a "weak showing of minimum contacts," the plaintiff must then provide a "stronger demonstration of reasonableness" in order to satisfy due process. *Stolt Tankers B.V. v. Geonet Ethanol, LLC*, 591 F. Supp. 2d 612, 616 (S.D.N.Y. 2008) (quoting *Afloat in France, Inc. v. Bancroft Cruises Ltd.,* No. 03-CV-917, 2003 WL 22400213, at *5 (S.D.N.Y. Oct. 21, 2003)). Under the circumstances of this case, no exercise of jurisdiction over the JMDs could be reasonable.

In making the required reasonableness determination, courts consider, *inter alia*: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering social substantive policies. *Asahi Metal Indus. Co. v. Super. Ct. Cal.*, 480 U.S. 102, 113 (1987).

Here, it would be unjust to force the JMDs, who had limited to no contacts with, or otherwise availed themselves of the benefits of, New York or the United States, to address claims regarding their purportedly wrongful conduct (or alleged inactions) that took place entirely outside of the United States.

It would be fundamentally unfair to compel the JMDs to defend themselves here when they had limited to no contacts with this forum. Moreover, it would be a significant burden on the JMDs to have to defend themselves thousands of miles from home, where they have no presence. *See Asahi Metal*, 480 U.S. at 114.

## POINT III

## THE TRUSTEE DOES NOT PLAUSIBLY ALLEGE THAT ACCESS DEFENDANTS RECEIVED BLMIS CUSTOMER PROPERTY

The Court must dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Moreover, a claimant's allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A plausible claim pleads facts "that allow [ ] … the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. And while the Court must accept well-pleaded factual allegations as true, it need not accept assertions that are unsupported by factual allegations, *id.* at 678–79, nor "legal conclusion couched as a factual allegation[,]" *Papasan v. Allain*, 478 U.S. 265, 286 (1986), nor "conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely." *Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001).

A.    **The Alleged Subsequent Transfers to Access Defendants Cannot be Traced Back to BLMIS Funds**

To survive a motion to dismiss, *Iqbal* and *Twombly* require the Trustee to plead facts that create a plausible – not merely possible – inference that the subsequent transfers made to the Access Defendants for services rendered consisted of BLMIS customer property. As this Court

26

ruled, barebones allegations that customer funds were transferred to the subsequent transferee do not suffice to make a claim plausible, rather:

> The Trustee must allege facts that support the inference that the funds at issue originated with the BLMIS, and contain the "***necessary vital statistics***"—the "***who, when, and how much***" of the transfers to establish that an entity was a subsequent transferee of the funds. At the pleading stage, the Trustee is not required to provide a "dollar-for-dollar accounting" of the exact funds at issue. However, barebones allegations that the funds at issue were transferred to the Subsequent Transferees, without more detail, are insufficient.

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Secs. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (emphasis added); *See also, Picard v. BNP Paribas S.A. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 594 B.R. 167, 195, 150–51 (Bankr. S.D.N.Y. 2014) (same).

In *Shapiro*, the Trustee alleged generically that (i) BLMIS transferred funds to certain accounts and (ii) the "Initial Transferee Defendants subsequently transferred a portion of the $53,778,486 received from BLMIS" to defendants who held an account at BLMIS which was funded largely, if not completely, with subsequent transfers. *Picard v. Shapiro*, Adv. Proc. No. 10-5383 (Bankr. S.D.N.Y. July 8, 2014), ECF 33, ¶¶ 110, 43. The Court dismissed the complaint because it did not "tie any initial transfer to any subsequent transfer or Subsequent Transferee" and did "not plausibly imply that the initial transferees even made subsequent transfers to the Subsequent Transferees as opposed to third parties, or that they made the subsequent transfers rather than simply keep the initial transfers for themselves." *Shapiro*, 542 B.R. at 119; *accord In re Caremerica, Inc.*, 409 B.R. 737, 750–51 (Bankr. E.D.N.C. 2009) (court dismissed a preference claim under *Twombly* and *Iqbal* because the Trustee's factual allegations included allegations about transfers into and out of an account and amounts received by the supposed transferees, but nothing to tie them together).

In this case, the SAC's allegations fail to make the connections that the courts required in *Shapiro*, *Merkin*, and *Caremerica*. The SAC here alleges that the Fund Defendants invested approximately $2 billion into BLMIS through more than 150 separate transfers and "during the six years preceding the Filing Date and that BLMIS made transfers to or for the benefit of the Funds in the collective amount of at least $1.1 billion." SAC ¶¶ 326, 327. Indeed, the SAC's exhibits show the movements of the alleged initial transfers from BLMIS to the Funds. SAC Exs. B, C.

As to the alleged "Subsequent Transfers," however, the SAC merely alleges that the Funds subsequently transferred some of the Initial Transfers to the Access Defendants as payment for their alleged service of Groupement and Luxalpha. SAC ¶ 334. The facts relating to the alleged Subsequent Transfers made to the Access Defendants include only a lump sum amount made over many years. *Id.* There is not a single fact as to when any specific transfer was made by date, amount, nor any attempt to tie a Subsequent Transfer to a redemption by one of the Funds.[10]

The SAC's allegations of subsequent transfers of BLMIS property to the individual Access Defendants (Littaye and Villehuchet/CDVL), as well as individual co-defendants Delandmeter and Dumbauld, are especially lacking of the requisite "vital statistics". *Shapiro* at 119. *See* SAC ¶¶ 334, 335. For example, in the allegations against Littaye and Ms. Villehuchet, the Trustee alleges only, in the least specific of terms, "Littaye, Villehuchet, and Ms. Villehuchet received millions of dollars of Subsequent Transfers, in an amount to be proven at trial." SAC ¶ 335. They

---

[10] Although the Exhibits to the SAC contain pages and pages of tables in small type listing alleged transactions recorded in the Fund Defendants' respective accounts at BLMIS, SAC Exs. B, C, they fail to identify which, if any, of these transactions constituted initial transfers of BLMIS customer property that were allegedly subsequently transferred to the Access Defendants. Accordingly, the Trustee is effectively asking the Court to infer that because BLMIS transferred a large amount of money to the Fund Defendants over a long period of time, to the extent the Fund Defendants transferred money during that time to the Access Defendants, all of that money must come from BLMIS. There is no attempt to tie or connect these allegations to any initial transfer to either Groupement or Luxalpha.

are not provided with specific dates, accounts, nor amounts of subsequent transfers; instead, they are left with a vague narrative, totally insufficient to state a claim "upon which relief can be granted." *E.g., Bermudez v. City of New York*, 783 F. Supp. 2d 560, 582 (S.D.N.Y. 2011). *See* SAC ¶¶ 334, 335.

The SAC's implausibility and pleading deficiencies are particularly unacceptable here for a number of reasons. <u>First</u>, the timing of the alleged subsequent transfers makes clear that the Trustee's vague allegations of subsequent transfers could not have originated with BLMIS customer property. The Trustee alleges that between March 2004 and August 2008 there were only 8 withdrawals by Luxalpha. SAC Ex. B. Similarly, the Trustee alleges that between April 2003 and August 2008 there were only 10 withdrawals by Groupement. SAC Ex. C. Such infrequent and irregular withdrawals could not have been the source of the alleged routine and regular payments made the Access Defendants to support their management and administrative fees.

<u>Second</u>, the operative documents to which the Trustee has access, show that fees and payments made by Groupement or Luxalpha to any of the Access Defendants came from holdback reserves maintained by UBSL that were funded from investor contributions *before* investments were made in Groupement or Luxalpha as management fees. *See* Littaye Decl. ¶ 56; Littaye Decl. Exs. 44 at p. 20; 45 at p. 28. These holdbacks, which both Groupement and Luxalpha collected, never went to BLMIS, and, therefore, were not from redemptions made by the BLMIS to any of the Funds. *See* Littaye Decl. ¶ 57. Thus, it is both incorrect and implausible that the Access Defendants received, as subsequent transfers, fees and payments from funds that originated at BLMIS that were funneled through Groupement or Luxalpha. *See* Littaye Decl. ¶ 55.

_Third_, the Trustee's failure to tie the alleged secondary transfers to the Access Defendants to any particular transfer from BLMIS to the Fund Defendants cannot be excused on the ground that the Trustee lacks access to information.  Indeed, prior to filing this adversary proceeding nearly 12 years ago, the Trustee obtained voluminous Rule 2004 discovery from Access and UBS that should have enabled him to adequately allege details of the subsequent transfers, if such claims actually existed.  _See_ Littaye Decl. ¶¶ 59–62.  Indeed, the Trustee purports to know the total amounts paid the Access and UBS, the nature of the payments (_e.g._, as custodian, prime bank, administrator, or manager), and the time frames of such payments – yet he failed to allege specific dates or amounts for any Subsequent Transfers.[11]

## POINT IV

### SECTION 546(E) BARS THE TRUSTEE'S CLAIM AGAINST THE ACCESS DEFENDANTS AND GROUPEMENT TO THE EXTENT THAT IT IS BASED ON INITIAL TRANSFERS MORE THAN TWO YEARS BEFORE THE PETITION DATE

Section 546(e) of the Bankruptcy Code bars the Trustee from avoiding a transfer by, to, or for the benefit of a stockbroker or financial institution that was a settlement payment or that was a transfer made in connection with a securities contract, except for claims for intentional fraudulent conveyance under Section 548(a)(1)(A).  _See_ 11 U.S.C. § 546(e).  Claims under Section 548(a)(1)(A) are limited to transfers within the two-year period before the filing date.  Thus, if Section 546(e) applies, then even if a claim were adequately pled under Section 548(a)(1)(A), the Trustee cannot avoid initial transfers occurring more than two years before the filing date, and

---

[11] Thus, this case is unlike _Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)_, 515 B.R. 117 (Bankr. S.D.N.Y. 2014), where this Court allowed the Trustee "greater latitude" in pleading the required tie because the subsequent transfer claims there had to "be proved through the books and records of the defendants." _Id._ at 151 (internal quotation marks omitted).

therefore cannot recover property so transferred from a subsequent transferee under Section 550(a)(2).

Here, if the entire claim against the Access Defendants is not dismissed on the grounds discussed in Points I, II and III, then in the alternative, the Trustee's Section 550(a)(2) claim against them (and the Section 550(a)(1) claim against Groupement) should be dismissed to the extent that it seeks to recover any initial transfer from BLMIS to Luxalpha or Groupement Financier made more than two years before the filing date (*i.e.*, before December 11, 2006), because (A) Section 546(e) applies to the initial transfers alleged in the SAC, and (B) the Trustee has failed to plausibly allege that the Access Defendants or Groupement had "actual knowledge" that BLMIS was not trading securities so as to bar the Defendants from invoking Section 546(e) under the holding of *SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12-MC-115(JSR), 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) (Rakoff, J.) ("*Cohmad*").[12]

A.    **Section 546(e) Bars the Trustee from Avoiding Initial Transfers from BLMIS to Luxalpha or Groupement Made More Than Two Years before the Petition Date**

The Access Defendants and Groupement adopt and incorporate by reference herein Point III of the UBS Defendants' Memorandum of Law in Support of their Motion to Dismiss. As shown therein: Section 546(e) applies to the initial transfers alleged in the SAC because each involved both covered persons and covered transactions. The initial transfers involved persons covered by

---

[12] Although the Access Defendants and Groupement show below that the Trustee has not plausibly alleged his actual knowledge of Madoff's fraud, their knowledge is in fact irrelevant, because there is no exception in the text of Section 546(e) based on a transferee's knowledge and *Cohmad* was wrongly decided. When a statute creates an exemption or safe harbor, and specifies exceptions (as does Section 546(e)), courts are not free to create additional exceptions on policy or equitable grounds. *See Law v. Siegel*, 571 U.S. 415, 424-25 (2014). The Access Defendants, however, understand that the Bankruptcy Court is bound to follow *Cohmad* until it is reconsidered by the District Court or overturned by a higher court. The Access Defendants and Groupement are noting here their objection to *Cohmad*'s ruling to preserve the issue for appeal.

Section 546(e) both because they were made "by" a "stockbroker" (BLMIS) and because they were made "to" "financial institutions" (Luxalpha and Groupement). The initial transfers were covered transactions both because they were "settlement payments" and because they were "transfers made … in connection with a securities contract" (namely, the Articles of Association of Luxalpha and Groupement, which governed redemptions made by shareholders of those funds). Accordingly, the Trustee cannot avoid any of the initial transfers alleged in this adversary proceeding that are outside the two-year limitations period for Section's 546(e)'s exception for claims under Section 548(a)(1)(A) — *i.e.*, the Trustee cannot avoid any of the Initial Transfers made before December 11, 2006.

**B.    The Trustee Has Not Plausibly Alleged that Access Defendants and Groupement Had "Actual Knowledge" of Madoff's Fraud**

The Trustee may argue that Section 546(e) does not apply because he has alleged that "Defendants" had actual knowledge of Madoff's fraud. Section 546(e), however, contains no transferee "knowledge" exception and, even if it did, the SAC fails to plead individualized factual allegations demonstrating that the Access Defendants and Groupement had "actual knowledge" that BLMIS was not trading securities. *See Picard v. Fairfield Inv. Fund Ltd. (In re Madoff)*, No. 08-CV-1789, 2021 WL 3477479, at *6, 15 (Bankr. S.D.N.Y. Aug. 6, 2021) (Morris, C.J.) (dismissing subsequent transferee claim against Corine Noel Piedrahita where "Trustee failed to plead individualized factual allegations that [she] had independent actual knowledge of the BLMIS fraud," Trustee had adequately pled the initial transferee Fairfield Funds' actual knowledge).

"Actual knowledge" requires more than "constructive knowledge" or even "willful blindness." *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117, 139 (Bankr. S.D.N.Y. 2014) (citations omitted). "'[A]ctual knowledge' implies a high level of certainty and absence of any substantial doubt regarding the existence of a fact." *Id*. In *Cohmad*, Judge Rakoff

held that "actual knowledge" of Madoff's fraud was adequately pled where the defendant was a partnership that included Madoff himself, shared office space and a computer network with BLMIS, was privy to a database maintained by BLMIS that monitored the actual cash value of each BLMIS account without regard to fictitious profits, and directed Madoff to back date trades to create fictitious gains and losses. 2013 WL 1609154, at *5–6. And in *Fairfield Investment Fund*, this Court held "actual knowledge" was adequately pled against individual defendants, who were not only personally aware of the "red flags" alleged here and in most of the Trustee's complaints, but who also affirmatively lied in response to questions by the SEC and investors about Madoff's practices. 2021 WL 3477479, at *5–6. In contrast, allegations that an individual was warned Madoff could be a Ponzi scheme, half-joked about BLMIS appearing to be a Ponzi scheme, indicated to others that there was some probability in his mind that Madoff could be a fraud, and was aware that the options markets lacked the volume necessary to sustain BLMIS's options trading, have been held to rise only to the level of willful blindness, and not to the level of actual knowledge. *Merkin*, 515 B.R. 140–41.

While the Trustee alleges that the Funds and Access Defendants *should have known* of BLMIS's fraud, he fails to allege that the Defendants *actually* knew of the fraud. *See* SAC ¶¶ 123–213. For example, the SAC alleges that Luxalpha and Groupement were established "despite overwhelming evidence of fraud at BLMIS," *id.* ¶ 28, and "despite knowing of . . . concerns . . . and despite many other persistent warnings of fraud at BLMIS," *id.* ¶ 130, allegations that merely point to risks involved with investing in BLMIS, not to *actual knowledge* that BLMIS was conducting a multi-billion dollar Ponzi scheme. Similarly, allegations about faulty due diligence are not indicative of actual knowledge of BLMIS's fraud. *Id.* ¶¶ 172–176. *See, e.g.*, *In re Merkin*, 817 F. Supp. 2d 346, 357 (S.D.N.Y. 2011) (holding that "allegations of Madoff-related red flags

do not adequately plead scienter"), *vacated in part on other grounds*, 2015 WL 10847318 (Aug. 24, 2015). And while the Trustee alleges that Access violated its own internal policies, *id.* ¶¶ 172–79, and applicable Luxembourg and French law, *id.* ¶¶ 180–213, in its dealings with BLMIS, even accepting such baseless allegations as true for purposes of this motion, a violation of internal policy or applicable law does not equate to actual knowledge of the BLMIS scheme either.

The Trustee alleges that Access complied with Madoff's demand for secrecy by omitting Madoff's name from certain documents and reports. SAC ¶¶ 276–79. However, according to the Trustee's own allegations, this practice was done at Madoff's insistence: "Madoff insisted that his name not appear in any official offering document," and "Madoff's name was not allowed to appear as the custodian, primary broker, or manager for any fund." *Id.* ¶¶ 276–77. The SAC further explains that Madoff justified his insistence on secrecy by explaining that "if he meets with one client he would be obligated, perhaps even from a regulatory standpoint . . . , to meet with all of them, and he would literally be forced to build an infrastructure to support meetings and devote a huge amount of time to it." *Id.* ¶ 154. These allegations likewise fail to show that any Defendant had actual knowledge of the Madoff fraud.

Further, the Trustee alleges that Defendants were aware of certain market impossibilities with BLMIS's purported trades, and that a number of "unusual" practices and "other indicia of fraud" should have revealed the fraud to the Defendants. SAC ¶¶ 219–314. Again, alleging that there were purported "red flags" that supposedly should have alerted Defendants to BLMIS's fraud falls far short of alleging that Defendants had *actual knowledge* of Madoff's scheme such that they knew there were no bona fide "securities contracts" for purposes of 546(e).

Moreover, nothing in section 546(e) turns on the knowledge of the transferee. The only exception to section 546(e) is a claim under section 548(a)(1)(A), which involves actual fraudulent

intent by the *transferor*. *See Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005) (under § 548(a)(1)(A) "it is the intent of the transferor and not the transferee that is relevant") (citations omitted). Nor does knowledge play any role in the definitions of "settlement payment" or "securities contract." 11 U.S.C. § 741(7), (8). Where the Bankruptcy Code creates an exemption or safe harbor and specifies exceptions, a court is not free to create additional exceptions, even when doing so is motivated by a party's alleged wrongdoing. *See Law v. Siegel*, 571 U.S. 415, 424–25 (2014). Courts must adhere to the statute's "plain meaning." *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 138 S. Ct. 883, 897 (2018). Permitting transferee knowledge to defeat the safe harbor would be inconsistent with the language and purpose of section 546(e), which reflects a balancing of interests by Congress to avoid "undermin[ing] . . . markets" by "[u]nwinding settled securities transactions." *In re Tribune Company Fraudulent Conveyance Litigation*, 946 F.3d 66, 90 (2d Cir. 2019).

Accordingly, the Trustee has failed to allege facts that would preclude the Access Defendants and Groupement from invoking the safe harbor of Section 546(e). The Trustee's Section 550(a) initial transferee claims against Groupement, and subsequent transferee claim against the Access Defendants should, in the alternative, be dismissed to the extent that its seeks recovery of any initial transfer made before December 11, 2006.

## C.   The Trust Fails to Plead the Actual Fraud With The Required Particularity

Section 548(a)(1)(A) requires the Trustee to plead that BLMIS "made" each "transfer" challenged under that provision "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became" indebted "on or after the date that such transfer was made." Because "'actual intent to hinder, delay or defraud' constitutes fraud, it must be pled with specificity, as required by Fed. R. Civ. P. 9(b)." *Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005) (citation omitted). Allegations of fraud must be pleaded

with particularity. Fed. R. Civ. P. 9(b); Fed. R. Bankr. P. 7009. This requirement applies to claims to avoid and recover actual, as opposed to constructive, fraudulent transfers. *Sharp* at 56; *Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*, 429 B.R. 73, 91-92 (Bankr. S.D.N.Y. 2010); *Off. Comm. of Unsecured Creditors v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*, 394 B.R. 721, 733 *(Bankr. S.D.N.Y. 2008); Off. Comm. of Unsecured Creditors v. Am. Tower Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 459-60 (Bankr. S.D.N.Y. 2006).

To satisfy the particularity requirement the plaintiff must "specify the 'particulars' of the alleged fraud – including, for example, the time, place, particular individuals involved, and specific conduct at issue." *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 221 (S.D.N.Y. 2002). For claims to avoid and recover actual fraudulent transfers, the plaintiff must "specify the property that was allegedly conveyed, the timing and frequency of those allegedly fraudulent conveyances, [and] the consideration paid." *Tronox*, 429 B.R. at 92 (quoting *M. Fabrikant*, 394 B.R. at 733 (quoting, in turn, *United Feature Syndicate*, 216 F. Supp. 2d at 221)).

To the extent that the Trustee alleges that the Access Defendants' subsequent transfers are based on an initial transfer that was actually fraudulent, the SAC does not satisfy this requirement. It fails to identify a particular initial transfer from among those listed in Exhibit B or C, as well as the timing or frequency of those alleged fraudulent conveyances to any of the Access Defendants. *See* SAC ¶¶ 334, 335. The Trustee has therefore failed to plead avoidability based on actual intent to defraud with the particularity Rule 9(b) requires. Therefore, Rule 9(b) would require dismissal.

## POINT V

## THE SECTION 546(E) SAFE HARBOR SHIELDS ALL OF THE REMAINING ALLEGED INITIAL TRANSFERS

While section 546(e) bars the Trustee from avoiding all transfers other than actual fraudulent transfers under section 548(a)(1)(A) made within the two-year lookback period, the Trustee has failed to allege actual fraudulent intent, and the so-called "Ponzi scheme presumption" does not cure the pleading deficiencies. Groupement and the Access Defendants incorporate and adopt the legal authorities and arguments set forth in the UBS Memorandum at Point IV thereof in support hereof.

## CONCLUSION

For the reasons stated herein, the Access Defendants and Groupement respectfully request that the Court dismiss the Trustee's SAC in its entirety with prejudice and for such other relief as may be deemed just and proper.

Dated: April 22, 2022
        New York, New York

/s/ Anthony Paccione

**KATTEN MUCHIN ROSENMAN LLP**
50 Rockefeller Plaza
New York, NY  10020
Telephone: (212) 940-8800
Facsimile: (212) 940-8776
Anthony L. Paccione
Email:  anthony.paccione@katten.com
Brian L. Muldrew
Email:  brian.muldrew@katten.com

*Access International Advisors LLC,*
*Access International Advisors Ltd.,*
*Access Management Luxembourg SA,*
*Access Partners SA, Patrick Littaye,*
*Claudine Magon de la Villehuchet (in her*
*capacities set forth in the caption above), and*
*Groupement Financier Ltd.*