AKERMAN LLP
David W. Parham (admitted pro hac vice)
Bryce Benson (admitted pro hac vice)
2001 Ross Avenue, Suite 3600
Dallas, TX 75201
Telephone:(214) 720-4300
Facsimile:(214) 981-9339
david.parham@akerman.com
Brycebenson@akerman.com
*Counsel for Cathay Life Insurance Co., Ltd Adv. Pro. No.  11-02568-CGM*

**Hearing Date and Time: August 10, 2022 at 10:00 a.m.**
**Opposition Date and Time: June 24, 2022 at 4:00 p.m.**
**Reply Date and Time July 24, 2022 at 4:00 p.m.**

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>       Plaintiff-Applicant,<br><br>-v-<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>       Defendant. | **Adv. Pro. No. 08-01789-CGM**<br><br><br>**SIPA Liquidation**<br><br><br>**(Substantively Consolidated)** |
| In re:<br><br>BERNARD L. MADOFF,<br><br>       Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>       Plaintiff,<br><br>-v-<br><br>CATHAY LIFE INSURANCE CO. LTD.,<br><br>       Defendant. | **Adv. Pro. No.  11-02568-CGM** |

## CATHAY'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

## TABLE OF CONTENTS

..........................................................................................................................................**Page**

PRELIMINARY STATEMENT .................................................................. 1

PROCEDURAL AND FACTUAL BACKGROUND .................................... 2

     A.    Background regarding Cathay and Lack of Contacts with the United States ......... 2

          1.    Fairfield's Role ............................................................ 2

     B.    The Fairfield Action ................................................................ 3

     C.    The Fairfield Liquidators' Actions Against Redeeming Shareholders .................. 4

     D.    Complaint Against Cathay ......................................................... 5

     E.    Incorporation of the First Fairfield Amended Complaint ...................... 6

     F.    The Trustee Has Not Alleged That The Cathay Defendant Had Knowledge of the Madoff/BLMIS Fraud .......................................... 7

     G.    The Trustee's Other Fairfield Subsequent Transfer Actions—and the $2 Billion in Excess Alleged Subsequent Transfers .................................. 7

ARGUMENT ........................................................................................ 8

CONCLUSION .................................................................................... 40


PRELIMINARY STATEMENT .................................................................. 1

PROCEDURAL AND FACTUAL BACKGROUND .................................... 2

     A.    Background regarding Cathay and Lack of Contacts with the United States ......... 2

          1.    Fairfield's Role ............................................................ 2

     B.    The Fairfield Action ................................................................ 3

     C.    The Fairfield Liquidators' Actions Against Redeeming Shareholders .................. 4

     D.    Complaint Against Cathay ......................................................... 5

     E.    Incorporation of the First Fairfield Amended Complaint ...................... 6

     F.    The Trustee Has Not Alleged That The Cathay Defendant Had Knowledge of the Madoff/BLMIS Fraud .......................................... 7

     G.    The Trustee's Other Fairfield Subsequent Transfer Actions—and the $2 Billion in Excess Alleged Subsequent Transfers .................................. 7

ARGUMENT ........................................................................................ 8

I.    THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER CATHAY .............................................................................. 8

     A.    The Trustee Has Not Alleged that this Court Has General Jurisdiction .................. 9

     B.    Cathay Has Not Consented to This Court's Jurisdiction ....................... 10

C.     The Trustee Has Not Established that this Court Has Specific Jurisdiction........... 10

    1.     Knowledge of Sentry's Purported Investment with BLMIS Does Not Satisfy the Minimum Contacts Requirements .................................... 11

    2.     Alleged Transfers of Funds to or from Sentry's Bank Account Do Not Satisfy the Minimum Contacts Requirement..................................... 14

D.     The Exercise of Personal Jurisdiction Over Cathay Would Be Unreasonable ....... 17

II.     THE TRUSTEE'S CLAIMS ARE BARRED BY SECTION 546(e) ............................. 19

A.     Introduction.................................................................................................... 19

B.     The Alleged Initial Transfers Are Covered by Section 546(e).............................. 22

    1.     The Fairfield Sentry Initial Transfers Were Made in Connection With the BLMIS-Fairfield Sentry Account Agreements, Which Are "Securities Contracts"........................................................................ 22

    2.     The Fairfield Sentry Initial Transfers Were "Settlement Payments"........ 23

    3.     The Fairfield Sentry Initial Transfers Were Made in Connection with the Fairfield Sentry Articles of Association, Which Is a Separate "Securities Contract".................................................................. 23

C.     The Alleged Initial Transfers Were Made by, to and for the Benefit of Entities Covered by Section 546(e) ...................................................................... 26

    1.     The Alleged Initial Transfers Were Made by a Stockbroker.................... 26

    2.     The Alleged Initial Transfers Were Made to a Financial Institution........ 26

    3.     The Alleged Initial Transfers Were Allegedly Made for the Benefit of a Financial Participant .......................................................................... 28

D.     The Trustee Has Not Alleged that Cathay Had Actual Knowledge of the Madoff/BLMIS Fraud.......................................................................................... 29

E.     The Section 546(e) Safe Harbor Shields All of the Alleged Initial Transfers ........ 32

    1.     The Trustee Has Failed to Allege Actual Fraudulent Intent as Required by Section 548(a)(1)(A) and Rule 9(b) ..................................... 32

    2.     The Trustee Should Not Be Allowed to Rely on the "Ponzi Scheme Presumption" to Avoid His Pleading Burden ........................................... 33

III.     THE TRUSTEE HAS FAILED TO PLEAD THE AVOIDABILITY OF THE ALLEGED INITIAL TRANSFERS AND HIS ATTEMPTED WHOLESALE INCORPORATION OF THE FAIRFIELD AMENDED COMPLAINT IS IMPROPER........................................................................................................... 35

IV.     THE TRUSTEE'S CLAIMS MUST BE DISMISSED FOR FAILURE TO ADEQUATELY PLEAD THAT CATHAY IS A SUBSEQUENT TRANSFEREE OF CUSTOMER PROPERTY ............................................................. 37

A.     The Trustee's Own Pleadings Establish the Implausibility of His Conclusory Allegations...................................................................................... 37

1.    The Trustee Has Failed to Carry His Pleading Burden............................ 37

2.    It Is Implausible that Alleged Initial Transfers to Fairfield Sentry
      of $3 Billion Resulted in Alleged Subsequent Transfers of $5
      Billion ................................................................................................. 39

CONCLUSION................................................................................................................ 40

61123503;8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AP Servs., LLP v. Silva*,
  483 B.R. 63 (S.D.N.Y. 2012)...................................................................................22

*Arista Records, LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2012)....................................................................................17

*Arizona v. California*,
  460 U.S. 605 (1983)...................................................................................................6

*Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*,
  480 U.S. 102 (1987)...................................................................................13, 17, 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................8

*Benton v. Cameco Corp.*,
  375 F.3d 1070 (10th Cir. 2004) ..............................................................................19

*Calder v. Jones*,
  465 U.S. 783 (1984).................................................................................................18

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)....................................................................................11

*Citizens United v. Schneiderman*,
  882 F.3d 374 (2d Cir. 2018)....................................................................................17

*Cortec Indus., Inc. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991).........................................................................................3

*Creditors Recovery Corp. v. Alfa S.A.B de C.V.*,
  651 F.3d 329 (2d Cir. 2011)....................................................................................26

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014).................................................................................................10

*David v. Bifani*,
  No. 07-cv-00122-MEH-BNB, 2007 WL 1216518 (D. Colo. Apr. 24, 2007)...........8

*Distefano v. Carazoo N. Am., Inc.*,
  286 F.3d 81 (2d Cir. 2001).........................................................................................9

61123503;8

*Fairfield Sentry Ltd. (In Liquidation) v. Citibank NA London*,
No. 1:19-cv-03911-VSB (S.D.N.Y.) ...................................................................5, 6

*Fairfield Sentry Ltd. v. Migani*
[2014] .................................................................................................................11, 24

*Finn v. Alliance Bank*,
860 N.W.2d 638 (Minn. 2015) (construing Minnesota UFTA provision that is virtually
identical to Section 548(a)(1)(A))...........................................................................6

*Gater Assets Ltd. v. AO Moldovagaz*,
2 F.4th 42 (2d Cir. 2021) ........................................................................................9

*Hau Yin To v. HSBC Holdings, PLC*,
No. 15CV3590, 2017 U.S. Dist. LEXIS 28931 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x
66 (2d Cir. 2017)....................................................................................................14

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984)................................................................................................12

*Hinton v. Trans Union, LLC*,
654 F. Supp. 2d 440 (E.D. Va. 2009) .....................................................................10

*Holliday v. K Rd. Power Mgmt., LLC (In re Boston Generating LLC)*,
617 B.R. 442 (Bankr. S.D.N.Y. 2020), *aff'd*, 2021 WL 4150523 (S.D.N.Y. Sept. 13, 2021),
*app. pending*, No. 21-2543 (2d Cir. 2021).........................................................22, 26

*In re Bernard L. Madoff Inv. Sec. LLC*,
654 F.3d 229 (2d Cir. 2011)....................................................................................19

*In re Bernard L. Madoff Inv. Secs. LLC (Picard v. Ida Fishman Recoverable Trust)*,
773 F.3d 411 (2d Cir. 2014)........................................................................... passim

*In re Caremerica, Inc.*,
409 B.R. 737 (Bankr. E.D.N.C. 2009) ....................................................................11

*In re Fairfield Sentry Ltd.*,
596 B.R. 275 (Bankr. S.D.N.Y. 2018) .................................................................5, 25

*In re Fairfield Sentry Ltd.*,
No. 10-13164, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018)....................5, 24

*In re Fairfield Sentry Ltd.*,
No. 10-13164, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ............. passim

*In re Nine West LBO Securities Litig.*,
482 F. Supp. 3d 187 (S.D.N.Y. 2020).....................................................................22

*In re Terrorist Attacks on Sept. 11, 2001*,
  714 F.3d 659 (2d Cir. 2013)......................................................................................9

*In re Tribune Co. Fraudulent Conveyance Litig.*,
  946 F.3d 66 (2d Cir. 2019).........................................................................21, 25, 27

*In re Tribune Co. Fraudulent Conveyance Litig.*,
  No. 12-cv-2652 (DLC) 2019 WL 1771786 (S.D.N.Y. Apr. 23, 2019), *aff'd*, 10 F.4th 147 (2d
  Cir. 2021), *cert. denied sub nom. Kirschner v. FitzSimons*, No. 21-1006, 2022 WL 516021
  (U.S. Feb. 22, 2022)................................................................................................25

*In re Unified Com. Cap., Inc.*,
  260 B.R. 343 (Bankr. W.D.N.Y. 2001) ...................................................................7

*Jesner v. Arab Bank, PLC*,
  138 S. Ct. 1386 (2018).............................................................................................15

*LaMonica v. CEVA Grp. PLC (In re CIL Ltd.)*,
  582 B.R. 46 (Bankr. S.D.N.Y. 2018), *amended on reconsideration on other grounds*, No. 13-
  11272, 2018 Bankr. LEXIS 1770 (Bankr. S.D.N.Y. June 15, 2018)..................6, 20

*Lowden v. William M. Mercer, Inc.*,
  903 F. Supp. 212 (D. Mass. 1995) ...........................................................................9

*Manko Window Sys., Inc. v. Prestik*,
  No. 16-2818, 2017 U.S. Dist. LEXIS 162162 (D. Kan. Sept. 29, 2017)...............20

*Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*,
  12 N.E.3d 456 (N.Y. 2014).....................................................................................15

*Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*,
  138 S. Ct. 883 (2018).............................................................................................20, 4

*Merrill v. Abbott (In re Independent Clearing House Co.)*,
  77 B.R. 843 (D. Utah 1987) (en banc) .....................................................................7

*Metro Life Ins. Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996).................................................................................18, 20

*Morana v. Park Hotels & Resorts, Inc.*,
  No. 20-CV-2797, 2021 U.S. Dist. LEXIS 58340 (S.D.N.Y. Mar. 26, 2021) ..........17

*Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*,
  714 F.3d 127 (2d Cir. 2013)............................................................................3, 5, 11

*Muhammad v. Bethel-Muhammad*,
  No. 11-0690-WS-B, 2012 WL 1854315 (S.D. Ala. May 21, 2012)..........................9

*Nastasi v. Bloomberg, L.P.*,
No. 18-CV-12361 (JMF), 2021 WL 3541153 (S.D.N.Y. Aug. 11, 2021)................................3

*NCUA Bd. v. Morgan Stanley & Co.*,
No. 13 Civ. 6705 (DLC), 2014 WL 1673351 (S.D.N.Y. Apr. 28, 2014) ................................8

*New Hampshire v. Maine*,
532 U.S. 742 (2001)..................................................................................................................1

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010)....................8

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
549 B.R. 56 (S.D.N.Y. 2016)....................................................................................................9

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
322 F.3d 147 (2d Cir. 2003)....................................................................................................24

*Official Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp. (In re Verestar, Inc.)*,
343 B.R. 444 (Bankr. S.D.N.Y. 2006) ......................................................................................5

*Ottah v. Bracewell LLP*,
No. 21 Civ. 455, 2021 WL 5910065 (S.D.N.Y. Dec. 10, 2021)................................................2

*Picard v. BNP Paribas S.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
594 B.R. 167 (Bankr. S.D.N.Y. 2018) ......................................................................11, 13, 14

*Picard v. Citibank (In re Bernard L. Madoff Inv. Secs. LLC)*,
12 F.4th 171 (2d Cir. 2021) (Menashi, J., concurring) ........................................................6, 7

*Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*,
603 B.R. 682 (Bankr. S.D.N.Y. 2019) ......................................................................................7

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*,
542 B.R. 100 (Bankr. S.D.N.Y. 2015) ..................................................................7, 10, 11, 12

*Porina v. Marward Shipping Co.*,
No. 05 CIV. 5621, 2006 U.S. Dist. LEXIS 60535 (S.D.N.Y. Aug. 24, 2006) ........................18

*Rocky Mt. Chocolate Factory v. Arellano*,
No. 17-cv-0582, 2017 U.S. Dist. LEXIS 173159 (D. Colo. Oct. 19, 2017) ...........................19

*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000).....................................................................................................24

*Salahuddin v. Cuomo*,
861 F.2d 40 (2d Cir. 1988).................................................................................................9, 11

*Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*,
403 F.3d 43 (2d Cir. 2005)...................................................................5, 7

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Fairfield Inv. Fund Ltd.)*,
No. 08-1789, 2021 WL 347749 (Bankr. S.D.N.Y. Aug. 6, 2021)................................... passim

*SIPC v. Bernard L. Madoff Inv. Secs. LLC*,
476 B.R. 715 (S.D.N.Y. 2012), *aff'd sub nom. Fishman*........................................27

*SIPC v. Bernard L. Madoff Inv. Secs. LLC*,
No. 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013).......................................... passim

*SPV Osus Ltd. v. UBS AG*,
882 F.3d 333 (2d Cir. 2018)..............................................................11, 16

*State Bank & Tr. Co. v. Spaeth (In re Motorwerks, Inc.)*,
371 B.R. 281 (Bankr. S.D. Ohio 2007)......................................................11

*Tamam v. Fransabank Sal*,
677 F. Supp. 2d 720 (S.D.N.Y. 2010).......................................................15

*Taylor v. Sturgell*,
553 U.S. 880 (2008)........................................................................1

*United States v. International Longshoremen's Ass'n*,
518 F. Supp. 2d 422 (E.D.N.Y. 2007) ....................................................9, 10

*Universal Trading & Inv. Co. v. Tymoshenko*,
No. 11 Civ. 7877, 2012 U.S. Dist. LEXIS 176214 (S.D.N.Y. Dec. 12, 2012).......................15

*Walden v. Fiore*,
571 U.S. 277 (2014) ................................................................... passim

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
127 F. Supp. 3d 156 (S.D.N.Y. 2015)........................................................3

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980).......................................................................9, 19

**Statutes**

11 U.S.C § 101(22A) ...................................................................27, 1, 2

11 U.S.C. § 101(22A)(A)....................................................................1

11 U.S.C. § 101(53A)(B)...................................................................27

11 U.S.C. § 550(a)(1), (2) ................................................................20

11 U.S.C. § 741(7) ...........................................................................................................25

11 U.S.C. § 741(7)(A) .....................................................................................................23

11 U.S.C. § 741(7)(A)(i) ..................................................................................................25

Bankruptcy Code, Section 546(e) .............................................................................. passim

Bankruptcy Code, Section 548(a)(1)(A) ..................................................................... passim

Bankruptcy Code, Section 550(a)(2) ..................................................................6, 11, 7

Bankruptcy Code, Section 551 .................................................................................6, 20

RICO ...............................................................................................................................9

**Rules**

Bankruptcy Rule 7004(f) ....................................................................................................9

Fed. R. Bankr. P. 7009 .......................................................................................................5

Fed. R. Bankr. P. 7012(b) ..................................................................................................1

Fed. R. Evid. 201(b)(2) ......................................................................................................2

Fed. R. Evid. 201(c)(2) ......................................................................................................3

Fed. R. Civ. P. 8(a)(2) ..................................................................................................9, 10

Fed. R. Civ. P. 9(b) ....................................................................................................4, 5, 7

Fed. R. Civ. P. 10(c) ..........................................................................................................8

Fed. R. Civ. P. 12(b)(2) ...................................................................................................20

Fed. R. Civ. P. 12(b)(6) ...........................................................................................1, 3, 22

NY CPLR § 302 ................................................................................................................9

**Other Authorities**

Case No. 10-13164, Adv. No. 10-03496, 2020 Bankr. LEXIS 2324 (Bankr. S.D.N.Y. Aug. 6,
2018) ...........................................................................................................................11

Case No. 13-22050, Adv. No. 15-08207, 2016 Bankr. LEXIS 3791 (Bankr. S.D.N.Y. Oct. 21,
2016) ...........................................................................................................................16

61123503;8

Defendant, Cathay Life Insurance Co. Ltd. ("Cathay"), pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, made applicable by Rule 7012(b) of the Federal Rules of

Bankruptcy Procedure, hereby submits this Memorandum of Law and the accompanying

declaration of David W. Parham (the "Parham Decl.") in support of its Motion to Dismiss the

Complaint (the "Complaint" or "Compl.")[1] of plaintiff Irving H. Picard, Trustee (the "Trustee")

for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS").

## **PRELIMINARY STATEMENT**

The Complaint initiated against Cathay should be dismissed for four reasons. **First,** this

Court does not have personal jurisdiction over Cathay and the Trustee has not alleged Cathay has

sufficient minimum contacts with the United States ("U.S."). **Second**, the Trustee's claims are all

barred by Section 546(e) of the Code. Trustee's Complaint establishes that the alleged initial

transfers: (i) were qualifying transactions to qualifying entities within Section 546(e). Further,

Cathay may invoke Section 546(e) because the Trustee has not alleged that Cathay had actual

knowledge of the fraud committed by Madoff through BLMIS. The Trustee, moreover, has failed

to plead that the alleged initial transfers were made with the intent required by Section

548(a)(1)(A) of the Code. Accordingly, Section 546(e) requires dismissal of the entire Complaint.

**Third**, the Trustee has failed to plead the avoidability of the alleged initial transfers. The

Complaint lacks any factual allegations which, if proven, would establish that essential first

element of his cause of action. Although the Trustee has tried to plug this gap by incorporating

into the Complaint his entire 217-page, 798-paragraph long (and now superseded) pleading in

another action, the Federal Rules of Civil Procedure (the "Rules") disallow that gambit. **Fourth**,

and finally, the Trustee has also failed to plausibly allege that Cathay is a subsequent transferee of

---

[1]The Complaint was filed on September 1, 2011. ECF No. 1. Unless otherwise specified, all "ECF No. _" citations refer to Adv. Pro. No. 11-02568. (Parham Decl., Ex. 1)

61123503;8

BLMIS customer property. Through pleadings filed in this Court, the Trustee has sought to recover approximately *$5 billion* in subsequent transfers originating from Fairfield Sentry, even though the supposed underlying initial transfers to Fairfield Sentry total only *$3 billion*. There is no justification for his pleading failure, and his Complaint should be dismissed.

## PROCEDURAL AND FACTUAL BACKGROUND

### A.    Background regarding Cathay and Lack of Contacts with the United States

Cathay is a life insurance company based in Taipei, Taiwan. It was founded in 1962, and offers a wide range of life insurance products and related services, including investment-linked insurance.[2] Cathay manages the funds by investing in securities, real estate, oversea markets and granting loans. Cathay is Taiwan's largest insurance company.[3] The Subscription Agreement at issue was executed in Taiwan and, pursuant to the instructions in the Subscription Agreement, delivered to the Fairfield Sentry administrator in the Netherlands, with a copy to the Fund manager in Bermuda. Cathay accomplished the purchase of Fairfield Sentry shares by initiating wire transfers from its account in Taiwan to the Fund's account in Dublin, Ireland. Fairfield Sentry's administrator, registrar, and transfer agent accomplished the redemption payments by initiating wire transfers from the Netherlands to Cathay's account in Taiwan. Cathay invested in the Fund, a BVI entity that reached out to Cathay in Taiwan.

#### 1.    Fairfield's Role

Fairfield Sentry was an investment fund that sold shares directly to subscribing foreign investors (who paid in U.S. dollars), from the 1990s through BLMIS's collapse in December 2008.

---

[2] https://www.cathaylife.com.tw/cathaylife/webStatics/official/english/about_business_products.html.    Cathay's    website    is www.cathaylife.com. The website describes Cathay's purpose and provide numerous other facts about Cathay's history and business operations. The Court may take judicial notice of these facts. *See* Fed. R. Evid. 201(b)(2); *see also Ottah v. Bracewell LLP*, No. 21 Civ. 455, 2021 WL 5910065, at *5 (S.D.N.Y. Dec. 10, 2021) (taking judicial notice at motion to dismiss stage of defendant's "'About' page from its public-facing website").

[3]    https://www.cathaylife.com.tw/cathaylife/webStatics/official/english/about_company_profile.html.    The    website    describes Cathay's business operations. The Court may take judicial notice of these facts. *See* Fed. R. Evid. 201(b)(2).

*See* Parham Decl., Ex. 2 (First Am. Compl., *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y.) (the "Fairfield Action"), ECF No. 23, ¶¶ 23, 32–35 (the "First Fairfield Amended Complaint")).[4] This is one of 81 Fairfield Subsequent Transfer Actions, in which the Trustee has sought to recover, as alleged subsequent transfers of BLMIS customer property, payments that defendants received for redeeming their shares in a Fairfield Fund. *See* Parham Decl. Ex. 5 (Trustee's Twenty-Sixth Interim Report for the Period, Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y. Oct. 29, 2021), ECF No. 20821, ¶ 229 and Ex. D). The Trustee's claims in this action are best understood in the context of certain related proceedings—some initiated by the Trustee and others by the Fairfield Funds' BVI court-appointed liquidators (the "Fairfield Liquidators")[5] — that are briefly described below.

## B.    The Fairfield Action

On May 18, 2009, the Trustee commenced the Fairfield Action against Sentry and two affiliated feeder funds, seeking to recover approximately $3.55 billion in transfers from BLMIS to the defendant funds. The Trustee filed the Fairfield Amended Complaint on July 20, 2010 against Sentry and its insiders, affiliated funds and others (together the "FFG Defendants"). The Trustee sought to avoid and recover approximately $3 billion in withdrawals that Sentry made in the six-year period preceding BLMIS' bankruptcy filing. (Compl., ¶ 36.) On May 9, 2011, the Trustee

---

[4] As this Court has recognized, on a Rule 12(b)(6) motion, "courts must consider," in addition to "the complaint in its entirety," including exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Fairfield Inv. Fund Ltd.)*, No. 08-1789, 2021 WL 347749, at *2 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*") (quoting *Tellabs, Inc. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)). Among the matters subject to judicial notice on this motion are "statements or documents" that "are integral to the complaint," even if not attached to or incorporated by reference in it. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). Considering such material is appropriate because "plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint." *Id.* at 48. Courts also take judicial notice of admissions in the plaintiff's filings in separate actions, *see, e.g., Nastasi v. Bloomberg, L.P.*, No. 18-CV-12361 (JMF), 2021 WL 3541153, at *4-5 (S.D.N.Y. Aug. 11, 2021); *see also* infra at 23 n. 29, and "documents filed with government entities" and/or "retrieved from official government websites," *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015); *see also infra* at 23 no. 22. Cathay requests that the Court take judicial notice under Fed. R. Evid. 201(c)(2) of such materials. *See* Parham Decl. ¶ 46.
[5] The BVI High Court of Justice entered an order for the liquidation of the Fairfield Funds on July 21, 2009. *See Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 131 (2d Cir. 2013). *See also* Parham Decl., Ex. 4 (Settlement Agreement, Fairfield Action, ECF No. 69 (the "Fairfield Settlement Agreement"), ¶ G at 2).

61123503;8

filed a motion for approval of a settlement agreement (the "Fairfield Settlement Agreement") with

the Liquidators (collectively, the "Liquidators") of Sentry and two affiliated funds, Fairfield Sigma

Limited and Fairfield Lambda Limited (collectively with Sentry, the "Fairfield Funds").

On June 7, 2011, this Court approved the Fairfield Settlement Agreement.[6]  Pursuant to the

Fairfield Settlement Agreement, the Liquidators consented to a $3.054 billion judgment against

Sentry, and against Fairfield Sigma for $752.3 million, and against Fairfield Lambda for $52.9

million. *See* Parham Decl. as Ex. 3 (Consent Judgments) The Fairfield Settlement Agreement

stated expressly that Sentry did not admit liability for the claims asserted against it in the First

Fairfield Amended Complaint. (*Id.* ¶ 24.) The Fairfield Settlement Agreement also provided for

cooperation and information sharing between the Liquidators and the Trustee concerning, among

other subjects, claims against parties that redeemed their shares in the Fairfield Funds, claims

against the Fairfield Funds' insiders, and claims against the Fairfield Funds' custodians and

administrators. (*Id.* ¶ 14.) Thus, the Trustee had access to all of Sentry's books and records prior

to filing the Complaint against Cathay.

## C.    The Fairfield Liquidators' Actions Against Redeeming Shareholders

Commencing in or about April 2010, the Fairfield Liquidators filed actions in New York

against hundreds of Fairfield Funds shareholders, seeking to "claw back" redemption payments.

*See* Parham Decl., Ex. 8 (Ex. G to the Fairfield Settlement Agreement).   Among those was an

adversary proceeding in which the Fairfield Liquidators sued Cathay to recover substantially the

same transfers at issue in this action.[7]  In their actions, the Fairfield Liquidators brought BVI-law

---

[6] The Fairfield Settlement Agreement, the bench memorandum approving the settlement, the respective order, and the consent judgment against Sentry are filed at docket nos. 69-2, 92, 95, and 109, respectively, in the Fairfield Action. A copy of the Fairfield Settlement Agreement and the consent judgment against Sentry are annexed to the Parham Decl. as Ex. 3, respectively.

[7] *See* Second Am. Compl., *Fairfield Sentry Ltd. (In Liquidation), et al. v. Cathay Life Insurance Co. Ltd, et al.*, Adv. Pro. No. 11-01577 (Bankr. S.D.N.Y. Mar. 3, 2019), ECF No. 7. This Court should take judicial notice of pleadings from the Fairfield Liquidators' action to recover alleged BLMIS customer property, because the Fairfield Liquidators' action to recover alleged BLMIS customer property, because the Fairfield Liquidators and the Trustee are in privity with each another. *See infra* 33 n.27.

statutory avoidance, common law, and contract claims to recover payments received by defendants redeeming shares pursuant to the Fairfield Funds' Articles of Association. *See* Parham Decl., Ex. 9 (Fairfield Sentry's Articles of Association).[8]  After a series of decisions by this Court (now on appeal to the District Court),[9] all of the Fairfield Liquidators' claims have been dismissed except for constructive trust claims against a subset of defendants (the "Knowledge Defendants") that allegedly "knew when they redeemed their interests in the [Fairfield] Funds that the redemption prices were inflated because they were based on [Fairfield] Sentry's fictitious BLMIS account statements listing securities that did not exist."[10]  Cathay is not among the Knowledge Defendants. Accordingly, the Fairfield Liquidators' claims against Cathay have been dismissed.

**D.    Complaint Against Cathay**

On September 1, 2011, the Trustee filed a one-count Complaint against Cathay[11] to recover two transfers that Cathay received from Fairfield Sentry: (i) $2.225 million on August 19, 2005 (the "First Transfer") and (ii) $22.271 million on November 19, 2008 (the "Second Transfer"). (Compl., ¶ 42, Ex. D.)[12] The bulk of the Complaint focuses on Madoff's Ponzi scheme and transfers from BLMIS to Fairfield Sentry, which the Trustee alleges were fraudulent. (¶¶ 22–34.) The Trustee contends that funds Fairfield Sentry received from BLMIS were BLMIS customer property (¶¶ 33, 37) and that Cathay was a subsequent recipient of this property. (¶¶ 2–3, 42.)

---

[8] *See also In re Fairfield Sentry Ltd.*, No. 10-13164, 2018 WL 3756343, at *3 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*") ("The procedure for purchasing and redeeming [Fairfield] Fund shares was set forth in the Amended and Restated Articles of Association.").

[9] *Fairfield Sentry Ltd. (In Liquidation) v. Citibank NA London*, No. 1:19-cv-03911-VSB (S.D.N.Y.) (lead case in the administratively consolidated appeals).

[10] *In re Fairfield Sentry Ltd.*, No. 10-13164, 2020 WL 7345988, at *1, *9–*10 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*") (holding that the securities safe harbor of Section 546(e) barred the Liquidators' BVI law avoidance claims); *see also In re Fairfield Sentry Ltd.*, 596 B.R. 275, 282, 316 (Bankr. S.D.N.Y. 2018) ("*Fairfield II*").

[11] On August 8, 2012, the Trustee filed a Notice of Voluntary Dismissal Without Prejudice of Cathay United Bank Ltd., such that Cathay is the sole remaining defendant in this proceeding. ECF No. 33.

[12] The Complaint invokes section 551 of the Bankruptcy Code (Compl., ¶ 51), but that section "does not provide for an independent cause of action." *LaMonica v. CEVA Grp. PLC (In re CIL Ltd.)*, 582 B.R. 46, 97 (Bankr. S.D.N.Y. 2018), *amended on reconsideration on other grounds*, No. 13-11272, 2018 Bankr. LEXIS 1770 (Bankr. S.D.N.Y. June 15, 2018).

The only allegations regarding Cathay's receipt of the funds that the Trustee alleges constituted BLMIS customer property are: (1) "The Cathay Defendants received subsequent transfers from Fairfield Sentry, which maintained customer accounts with BLMIS." (¶ 35.); (2) "During the six years preceding the Filing Date, BLMIS made transfers to Fairfield Sentry of approximately $3 billion (the 'Fairfield Sentry Six Year Initial Transfers')." (¶ 37.) (3) "A portion of the Fairfield Sentry [Six Year] Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Cathay Insurance . . . . Based on the Trustee's investigation to date, approximately $24,496,799 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Cathay Insurance (the 'Fairfield Sentry-Cathay Insurance Subsequent Transfers')."(¶ 42.)   Based on these allegations, the Trustee is seeking to recover from Cathay as a subsequent transferee under Section 550(a)(2) of the Code.

**E.   Incorporation of the First Fairfield Amended Complaint**

The Trustee's allegation in the Complaint regarding the avoidability of the initial transfers from BLMIS to Fairfield Sentry – the alleged source of the funds for the Transfer – was largely pled by incorporating *all* of the allegations in the Trustee's First Amended Complaint in the Fairfield Action. Cathay is neither a party to nor mentioned in the First Fairfield Amended Complaint. The Complaint refers to the First Amended Complaint only generally and notes that the entire First Amended Complaint is incorporated into the Complaint. (Compl., ¶ 36.)

Regarding BLMIS, the First Amended Complaint alleges that BLMIS was operated under a shroud of secrecy and lack of transparency. (Fairfield First Am. Compl., ¶¶ 501, 520.) The First Amended Complaint further alleges that Fairfield Sentry's management "went to great lengths to keep their investors far away from Madoff" (*id*. ¶ 342), "misled investors" (*id.* ¶ 344), "remove[d] all references to BLMIS from their marketing materials" and offering memorandum in 2002 (*id.* ¶

346), "actively and repeatedly 'blocked' investors wishing to obtain more information" (*id.* ¶ 348),

"went to great lengths to cover up Madoff's actual role with the FGG funds" (*id.* ¶ 350), and "sold

the false assurance that they conducted superior due diligence" (*id.* ¶ 362). The First Amended

Complaint further alleges that the SEC in 2006 – a year after the first Transfer – investigated

BLMIS (*id.* ¶ 351) but did not uncover BLMIS' fraudulent scheme (*id.* ¶¶ 360–61).

Additionally, the First Amended Complaint alleges that "[m]uch of the money transferred

from BLMIS to the Feeder Funds was subsequently transferred by the Feeder Funds to the FGG

Affiliates, Management Defendants, and Sales Defendants." (*Id.* ¶ 543.). The First Fairfield

Amended Complaint alleges that Sentry withdrew funds from BLMIS "in order to pay" billions of

dollars to these entities. (*See, e.g.,* ¶¶ 53, 58, 63, 71, 76, 80, 85, 100, 104, 126–129, 139–141.) On

August 28, 2020, the Trustee filed a second amended complaint in the Fairfield Action. *See* Parham

Decl., Ex. 6  (the "Fairfield Second Amended Complaint"). The Trustee, however, did not amend

the Complaint to incorporate the Fairfield Second Amended Complaint.

**F.    The Trustee Has Not Alleged That The Cathay Defendant Had Knowledge of the Madoff/BLMIS Fraud**

In his Complaint, the Trustee did not allege that Cathay had actual knowledge of, the

Madoff/ BLMIS fraud.

**G.    The Trustee's Other Fairfield Subsequent Transfer Actions—and the $2 Billion in Excess Alleged Subsequent Transfers**

The Trustee has filed 81 Fairfield Subsequent Transfer Actions against defendants that

invested in Fairfield Funds.  *See supra* 3.  Based on his most recent pleadings, the Trustee is

seeking a total of approximately $3.238 billion in subsequent transfers that defendants allegedly

received directly from Fairfield Sentry.  *See* Parham Decl. Ex. 12 and ¶ 43.  Separately, in the

Fairfield Action, the Trustee has alleged that Fairfield Sentry made subsequent transfers to

Fairfield Sigma and Fairfield Lambda in the amounts of approximately $772 million and $52

million, respectively, for a total of more than $824 million.[13] *See* Parham Decl. Ex. 11 (Exs. 5 and 6 to Fairfield Second Am. Compl., Fairfield Action, ECF Nos. 286-5, 286-6). And the Trustee has also alleged in the Fairfield Action yet another $1.139 billion in subsequent transfers made directly by Fairfield Sentry to certain FGG Defendants. *See* Parham Decl. Ex. 7 (Exs. 8, 10, 12, 13, 14, and 21 to Fairfield Second Am. Compl., Fairfield Action, ECF Nos. 286-8, 286-10, 286-12, 286-13, 286-14, 286-21) & ¶ 44. In all, the Trustee alleges that Fairfield Sentry made approximately $5.201 billion in subsequent transfers of alleged BLMIS customer property, exceeding by approximately $2 billion the sum of all the alleged BLMIS customer property that the Trustee claims BLMIS transferred to Fairfield Sentry as initial transfers in the six years prior to the filing date. In none of his pleadings has the Trustee explained this discrepancy.

## **ARGUMENT**

The Complaint must be dismissed for four independent reasons. First, this Court does not have personal jurisdiction over Cathay because Cathay lacks sufficient minimum contacts with the United States and the exercise of jurisdiction over Cathay would be unreasonable. Second, the Complaint fails to state a subsequent transfer claim against Cathay because (i) section 546(e) of the Code bars the Trustee from avoiding the initial transfer from BLMIS to Fairfield Sentry, and (ii) the Trustee fails to tie the transfer that Cathay received from Fairfield Sentry to an initial transfer from BLMIS to Fairfield Sentry. Third, the Complaint against Cathay violates Rule 8(a) because it incorporates by reference the entirety of a lengthy and now-defunct complaint against third parties. Fourth, and finally, the Trustee has also failed to plausibly allege that Cathay received any transfers of BLMIS customer property, and is a subsequent transferee.

## **I.    THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER CATHAY**

---

[13] The Trustee has obtained Consent Judgments in similar amounts—*i.e.*, $752.3 million against Fairfield Sigma and $52.9 million against Fairfield Lambda. *See supra* at 4.

61123503;8

As a threshold matter, this Court lacks personal jurisdiction over Cathay and must dismiss the Complaint. *See Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 49 (2d Cir. 2021) ("A court must … have personal jurisdiction over a party in order to enter a binding judgment against it."). The Trustee bears the burden of establishing that this Court has jurisdiction over Cathay. *See Distefano v. Carazoo N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). While the Trustee attempts to base personal jurisdiction over Cathay on New York's long-arm statute (NY CPLR § 302) and Bankruptcy Rule 7004(f) (¶ 8),[14] he fails to meet his burden under both.

To exercise personal jurisdiction over a defendant, "due process requires a plaintiff to allege (1) that a defendant has 'certain minimum contacts' with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (citation omitted); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum . . . are such that he should reasonably anticipate being hauled  into court there."). The Complaint fails to allege facts that this Court has personal jurisdiction – general, specific, or consensual – over Cathay.

### A.    The Trustee Has Not Alleged that this Court Has General Jurisdiction

The Trustee does not, and cannot, allege that this Court has general jurisdiction over Cathay. General jurisdiction exists only when the defendant is "at home" in the forum, either by being incorporated under the laws of the forum or having its principal place of business there. *See*

---

[14] The federal jurisdictional analysis "closely resemble[s]" New York's long-arm statute and due process requirements, so the analyses are largely interchangeable. *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 68 (S.D.N.Y. 2016). Under CPLR § 302, the relevant forum for the defendant to have minimum contacts is New York; under Bankruptcy Rule 7004(f), the contacts are with the United States. As discussed herein, the Complaint includes allegations of New York-related contacts. Thus, under either CPLR § 302 or Bankruptcy Rule 7004(f), the analysis collapses into a constitutional one focused on whether the exercise of personal jurisdiction is consistent with due process.

*Daimler AG v. Bauman*, 571 U.S. 117, 136–37 (2014). It is undisputed that Cathay is "one of the largest financial institutions in Taiwan." (Compl., ¶ 3.)

**B.      Cathay Has Not Consented to This Court's Jurisdiction**

The Trustee alleges, "[u]pon information and belief," that Cathay "entered into a subscription agreements with Fairfield Sentry under which it submitted to New York jurisdiction…" (Compl., ¶ 6.) Any theory of jurisdiction predicated on the subscription agreement is not applicable. The Trustee cannot invoke a forum selection clause in a contract to which he is a stranger, to establish this Court's jurisdiction over the subsequent transfer claim that he seeks to advance. *See Lavazza Premium Coffees Corp. v. Prime Line Distributors* Inc., No. 20 CIV. 9993, 2021 WL 5909976, at *7 (S.D.N.Y. Dec. 10, 2021) (rejecting enforcement of forum selection clause for a non-party plaintiff bringing claims outside the clause's scope)

Notably, in the Liquidators' proceeding, this Court concluded that the execution of certain subscription agreements, without more, did not subject defendants to personal jurisdiction. Specifically, this Court held that New York choice of forum provisions in the subscription agreement were not applicable to the disputes concerning subsequent transfers because the Liquidators' claim was solely based on redemptions and did not arise out of the subscription agreements. *See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam* (*In re Fairfield Sentry Ltd.*), Ch. 15 Case No. 10-13164, Adv. No. 10-03496, 2020 Bankr. LEXIS 2324, at *31 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*") (adhering to the holding in *Fairfield Sentry Ltd. v. Migani* [2014] UKPC 9[15] that the subscription agreement was irrelevant to actions to recover the redemption payments.).

**C.      The Trustee Has Not Established that this Court Has Specific Jurisdiction**

---

[15] A copy of the *Migani* decision is annexed to the Parham Decl. as Ex. 12, which is publicly available at https://www.jcpc.uk/cases/docs/jcpc-2012-0061-judgment.pdf.

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The Supreme Court set forth two related principles for specific jurisdiction. "First, the relationship must arise out of contacts that the '*defendant* himself' creates with the forum State." *Id.* at 284 (emphasis in original) (citation omitted). "Second, our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285 (emphasis added). The defendant's "suit-related conduct must create a substantial connection with the forum state." *Id.* at 284; *see also SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018). The Trustee's section 550(a)(2) claim against Cathay arises out of Cathay's receipt of the First Transfer and the Second Transfer. "Therefore, the jurisdictional analysis focuses on [Cathay's] U.S. contacts related to the receipt of the subsequent transfer[] at issue." *See Picard v. BNP Paribas S.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018).

### 1.    Knowledge of Sentry's Purported Investment with BLMIS Does Not Satisfy the Minimum Contacts Requirements

The Trustee asserts the Court has personal jurisdiction over Cathay based on allegations that Cathay knowingly directed and received funds from BLMIS through Cathay's investment with Fairfield Sentry. (Compl., ¶ 6.) These allegations do not establish personal jurisdiction in the U.S. The allegation that Cathay, which is indisputably based in Taiwan, made payments to Fairfield Sentry, a foreign entity, which invested with BLMIS, does not constitute a contact between Cathay and the U.S. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum . . . to justify an assertion of jurisdiction.") The relevant specific jurisdiction inquiry is on the "contacts that the

'defendant *himself*' creates with the forum." *Walden*, 571 U.S. at 284 (emphasis in original) (citation omitted). The Trustee has not alleged that Cathay initiated any investment or contact directly with BLMIS, but instead vaguely contends that Cathay "knowingly direct[ed] funds to be invested with New York-based BLMIS through Fairfield Sentry." (Compl., ¶ 6.)

Mere knowledge by Cathay that Fairfield Sentry would or could invest money with BLMIS in New York is not a requisite minimum contact supporting personal jurisdiction over Cathay in the U.S. The Supreme Court's opinion in *Walden* is instructive. In *Walden*, a Nevada-based plaintiff sued a Georgia defendant in a Nevada court for conduct that occurred in a Georgia airport. *See* 571 U.S. at 279–81. The defendant knew that the plaintiff had connections to Nevada and that his conduct would delay the return of the plaintiff's property to Nevada, but the Supreme Court nonetheless held it was unconstitutional to exercise personal jurisdiction over the defendant in Nevada. *Id*. at 289. As the Supreme Court explained, the foreseeability of the plaintiff's connection to the forum is irrelevant to whether there is jurisdiction in the forum state over the defendant; a contrary rule would "impermissibly allow[] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id*. The Supreme Court instead has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the *plaintiff (or third parties)* and the forum State." *Id*. at 284 (emphasis added); *see also Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 112 (1987) ("The substantial connection . . . between the defendant and the forum . . . necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State*." (quotation marks omitted) (emphasis in original)). The alleged conduct here – that Cathay invested with a foreign entity, which in turn invested with an entity in the U.S. entity

– is one step removed from the alleged conduct in *Walden*, where the defendant himself allegedly knowingly delayed the return of the plaintiff's property to the forum.

Moreover, the outcomes in *BLI* and *BNP Paribas* do not change the analysis or support a finding of minimum contacts based on Cathay's purported knowledge of Sentry's investment in New York-based BLMIS. The basis of this Court's finding that the defendant in *BLI* was subject to personal jurisdiction in the U.S. is no longer precedential authority after the Supreme Court's subsequent decision in *Walden*. In *BLI*, this Court held that a foreign defendant that invested with Fairfield Sentry was subject to the Court's personal jurisdiction. *See* 480 B.R. at 515–17. However, the Supreme Court in *Walden* established conclusively that the contacts with the forum that matter for jurisdictional purposes are those of the *defendant*, not contacts initiated by a third party like Fairfield Sentry. *See* 571 U.S. at 284. In BLI, the Court relied on the defendant's alleged knowledge of Fairfield Sentry's investments in BLMIS. *See* 480 B.R. at 517. But that is exactly the type of foreseeability argument the Supreme Court rejected in *Walden*. *See* 571 U.S. at 289. As the *Walden* Court explained, basing the exercise of personal jurisdiction on the defendant's knowledge of the plaintiffs' connections to the forum "combined with [the] conclusion that [the plaintiffs] suffered foreseeable harm in" the forum "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* Thus, Cathay's purported knowledge that Fairfield Sentry would invest with BLMIS is jurisdictionally irrelevant.

*BNP Paribas*, too, is easily distinguishable. There, the Court found that the complaint alleged the defendants had significant contacts in New York because the defendants' derivatives group, which offered customers access to BLMIS-related transactions and monitored Madoff-related transactions, "*operated* from New York, and the subsequent transfers were *largely the result of those New York activities*." 594 B.R. at 192 (emphasis added). The defendants also

invested in domestic feeder funds. *See id.* at 191. By contrast, there are no allegations that Cathay engaged in conduct in New York in connection with either its subscription or its redemption.

### 2.    Alleged Transfers of Funds to or from Sentry's Bank Account Do Not Satisfy the Minimum Contacts Requirement

The Trustee alleges, upon information and belief, that Cathay "wired funds to Fairfield Sentry through a bank in New York." (Compl., ¶ 6.) The Complaint does not allege that the transfers at issue were sent to a U.S. account in Cathay's name.

Transfers through Fairfield Sentry's correspondent bank account do not establish personal jurisdiction over Cathay. As a matter of law, the mere use of a correspondent account by a foreign entity to clear transfers under a foreign contract does not confer jurisdiction in the U.S. over the foreign entity. *See Hau Yin To v. HSBC Holdings, PLC*, No. 15CV3590, 2017 U.S. Dist. LEXIS 28931, at *6 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017) (rejecting personal jurisdiction over foreign defendants because their alleged connection to the forum was the transmission of information and funds "to and from BLMIS . . . [as an] incidental consequence[] of fulfilling a foreign contract"); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339–40 (S.D.N.Y. 2016) (finding transmission of information and funds to and from BLMIS to be "incidental consequences of fulfilling a foreign contract . . . insufficient to 'project' the Foreign Defendants into New York" and "not amount[ing] to 'purposeful availment' of the laws of" the forum); *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 726–27 (S.D.N.Y. 2010) ("[C]ourts in this district have routinely held that merely maintaining a New York correspondent bank account is insufficient to subject a foreign bank to personal jurisdiction." (citing cases)).[16]

---

[16] Thousands of foreign transactions totaling over $1.5 trillion are cleared in New York every day. *See Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1395 (2018) ("In New York each day, on average, about 440,000" Clearing House Interbank Payments System— the system for most large banking transactions—"transfers occur, in dollar amounts totaling about $1.5 trillion."). If the incidental use of United States-based accounts conferred personal jurisdiction over foreign entities, New York would become the global forum for nearly all foreign commercial disputes, contrary to federal and state policy, merely because foreign transactions in United States currency are often cleared in New York. *See Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*, 12 N.E.3d 456, 459–60 (N.Y. 2014) ("Our state's interest in the integrity of its banks . . . is not significantly threatened every time one foreign national,

61123503;8

The Trustee has not alleged that Cathay maintained a bank account in the U.S. The Complaint only alleges that Cathay, upon information and belief, "wired funds to Fairfield Sentry through a bank in New York" and "…derived significant revenue from New York…". (Compl., ¶ 6.) Cathay is not alleged to have chosen the "bank in New York" to which funds were wired to Fairfield Sentry or that it had any contact with such bank. This case is like *Spetner v. Palestine Investment Bank*, where the court declined to exercise personal jurisdiction over a foreign bank that "did not exercise control over [the] selection and use of . . . correspondent accounts in New York"; the defendant was "alleged at most to have provided payment instructions to an account holder making dollar-denominated wire transfers." 495 F. Supp. 3d 96, 116 (E.D.N.Y. 2020).[17] At most, Cathay is alleged merely to have wired funds to Fairfield Sentry, a foreign entity, through a New York bank under a foreign contract, and without any specific allegations concerning the First Transfer or the Second Transfer. These allegations are insufficient to confer jurisdiction.

The Trustee also tries to establish this Court's jurisdiction by alleging that "Cathay knowingly received transfers of customer property from BLMIS." (Compl., ¶ 6.) But the transfer of funds *from* a U.S. bank to Fairfield Sentry and then onto Cathay does not support the exercise of personal jurisdiction over Cathay. *See O'Toole v. MyPlace Dev. SP. Z O.O. (In re Sledziejowski)*, Ch. 7 Case No. 13-22050, Adv. No. 15-08207, 2016 Bankr. LEXIS 3791, at *23–24 (Bankr. S.D.N.Y. Oct. 21, 2016) (finding no specific jurisdiction over Polish entity that received funds originating from U.S.). In the context of specific jurisdiction, "the relationship must arise out of contacts that the 'defendant himself' creates with the forum." *Walden*, 571 U.S. at 284

---

effecting what is alleged to be a fraudulent transaction, moves dollars through a bank in New York."); *Universal Trading & Inv. Co. v. Tymoshenko*, No. 11 Civ. 7877, 2012 U.S. Dist. LEXIS 176214, at *11 (S.D.N.Y. Dec. 12, 2012) ("[C]ourts have long recognized that there are significant policy reasons which caution against the exercise of personal jurisdiction based only on a correspondent bank account." (quotation marks and citations omitted)).

[17] The court in *Spetner* analyzed whether there was personal jurisdiction under NY CPLR § 302(a)(1), which as noted above, *supra* note 14, closely resembles the constitutional due process analysis.

(emphasis in original) (citation omitted); *see also SPV Osus*, 882 F.3d at 344 ("'Where the defendant has had only limited contacts with the state it may be appropriate to say that he will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts.'" (citation omitted)). Thus, "the mere knowing receipt of funds in a bank account is insufficient to establish jurisdiction." *Sledziejowski*, 2016 Bankr. LEXIS 3791, at *24 (citing *Rushaid v. Pictet & Cie*, 2014 N.Y. Misc. LEXIS 3888, at *8 (N.Y. Sup. Ct. Aug. 26, 2014) ("Th[e] passive receipt of funds do not constitute 'volitional acts' by defendants and, as such, defendants did not avail themselves of the privilege of conducting activities within the forum State . . . ." (internal citations and quotations omitted))).

The Trustee also vaguely alleged that Cathay "maintained minimum contacts and/or general business contacts with the U.S. and New York in connection with the claims…" (Compl., ¶ 6.) This allegation is impermissibly conclusory and lacks a necessary factual foundation to make it plausible. A plaintiff may plead facts upon information and belief *only* "where the facts are peculiarly within the possession and control of the defendant" or "where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2012) (citations omitted); *see also Citizens United v. Schneiderman*, 882 F.3d 374, 384–85 (2d Cir. 2018) ("A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory.").

Here, the Trustee has not alleged facts concerning Cathay's purported contacts with Fairfield Sentry *peculiarly* within Cathay's possession and control. The Trustee's broad and unlimited access to the Fairfield Funds' documents, data, and other information gave him full opportunity to plead Cathay's alleged contacts with Fairfield Sentry. *See Morana v. Park Hotels & Resorts, Inc.*, No. 20-CV-2797, 2021 U.S. Dist. LEXIS 58340, at *12 (S.D.N.Y. Mar. 26, 2021)

(allegations based upon information and belief were insufficient where plaintiff was "evidently privy to" defendant's policy at issue). The Trustee has had a decade to amend the Complaint and plead facts about Cathay's supposed "regular contact" with Fairfield Sentry representatives in New York and failed to do so. Without alleging any facts, the Trustee's claim "does not rise 'above the speculative level.'" *Id*. at *5 (quoting *Arista Records*, 604 F.3d at 120). Because the Trustee did not allege that Cathay transacted business with BLMIS, the purported contacts on which the Trustee relies are solely derivative of Fairfield Sentry's contacts. Such allegations are insufficient to confer to this Court personal jurisdiction over Cathay.

### D.     The Exercise of Personal Jurisdiction Over Cathay Would Be Unreasonable

Even if the minimum contacts threshold were met – which it was not – the Court must next determine whether the exercise of personal jurisdiction is reasonable. *See Asahi*, 480 U.S. at 113. Courts apply a "sliding scale" to assess whether jurisdiction is consistent with due process: "'the weaker the plaintiff's showing on minimum contacts, the less a defendant needs to show in terms of unreasonableness to defeat jurisdiction.'" *Metro Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 570 (2d Cir. 1996) (quoting *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994)); *see also Porina v. Marward Shipping Co.*, No. 05 CIV. 5621, 2006 U.S. Dist. LEXIS 60535, at *17 (S.D.N.Y. Aug. 24, 2006). In evaluating the reasonableness of exercising personal jurisdiction, courts must consider: (1) "the burden on the defendant"; (2) "the interests of the forum" in adjudicating the case; (3) "the plaintiff's interest in obtaining relief"; (4) "'the interstate judicial system's interest in obtaining the most efficient resolution of controversies'"; and (5) "'the shared interest of the several [fora] in furthering substantive social policies.'" *Asahi*, 480 U.S. at 113 (quoting *World-Wide Volkswagen*, 444 U.S. at 292). Because the Trustee's scant and incidental minimum contacts allegations are minimal at best (as stated above Cathay believes fail to meet the minimum threshold to support a finding of jurisdiction), he must make a stronger

showing that the exercise of personal jurisdiction over Cathay would be reasonable. But the *Asahi* reasonableness factors weigh heavily against exercising jurisdiction.

First, defending this case would unduly burden Cathay, a Taiwanese company that has no "records, files, or witnesses with information about the litigation" in the U.S. *Metro Life Ins.*, 84 F.3d at 574. Second, the interest of the U.S. in tracing the flow of funds from BLMIS is not superior to the interests of Taiwan to protect the funds Cathay uses to pay insurance benefits and to invest in various endeavors. The U.S. has no greater interest in this case than Taiwan's interest in ensuring that its business entities are not subject to foreign litigation where there is no allegation that Cathay engaged in any wrongdoing. *Cf. Calder v. Jones*, 465 U.S. 783, 789 (1984) (personal jurisdiction exists where defendant allegedly committed an intentional tort "expressly aimed" at the forum state). The Complaint simply alleges that Cathay indirectly received funds from BLMIS without any allegation that Cathay was complicit in the Ponzi scheme or other Madoff-related fraudulent conduct in the U.S.  Third, while it may be convenient for the Trustee to litigate this case in New York, his convenience is not enough to overcome the weight of the factors against exercising jurisdiction. The Trustee cannot show that it would be more reasonable to litigate his claim against Cathay in New York than Taiwan, where Cathay is a company based in Taiwan and where Taiwanese courts could address the nation's interest in the use of its funds.

Finally, forcing Cathay to defend a lawsuit halfway around the world involving records nearly 20 years old and witnesses located in the Asia does not further the in interests of the American judicial system to obtain efficient resolution of controversies. Further, the U.S. has little interest in whether U.S. courts are the forum for the Trustee to recover funds from Cathay, a victim of Madoff's Ponzi scheme. *See generally In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229 (2d Cir. 2011) (adopting Trustee's Net Investment Method, pursuant to which customers that are "net

losers" are afforded priority over those that are "net winners"). Taiwan, on the other hand, has a strong interest in adjudicating issues concerning companies located within its jurisdiction.

In total, Cathay's alleged contacts with the U.S. arose from acts performed on foreign soil in the context of its relationship with Fairfield Sentry, a foreign entity. Cathay could not have reasonably anticipated being hauled into a U.S. court in connection with its *foreign* conduct related to its *foreign* investments. *See World-Wide Volkswagen*, 444 U.S. at 297. Courts have held that defendants should be dismissed in circumstances like this, where even assuming a defendant's "contacts with [the forum] only barely satisf[y] the minimum contacts standard, . . . a majority of the reasonableness factors weigh against the exercise of jurisdiction." *Rocky Mt. Chocolate Factory v. Arellano*, No. 17-cv-0582, 2017 U.S. Dist. LEXIS 173159, at *30–31 (D. Colo. Oct. 19, 2017) (citation and quotation marks omitted); *accord Benton v. Cameco Corp.*, 375 F.3d 1070, 1080 (10th Cir. 2004) (defendant's "contacts with [the forum] were quite limited, barely satisfying the minimum contacts standard. As a result, [defendant] need not make a particularly strong showing in order to defeat jurisdiction under this reasonableness inquiry." (citation omitted)); *Manko Window Sys., Inc. v. Prestik*, No. 16-2818, 2017 U.S. Dist. LEXIS 162162, at *23 (D. Kan. Sept. 29, 2017) (granting Rule 12(b)(2) motion where defendant's "contacts with [the forum] [we]re weak and because the reasonableness factors . . . counsel[ed] against the exercise of personal jurisdiction"). The same result is warranted here as exercising jurisdiction over Cathay would not "comport[] with 'traditional notions of fair play and substantial justice,'" *Metro Life Ins.*, 84 F.3d at 578, and the Complaint should be dismissed with prejudice.

## II.    THE TRUSTEE'S CLAIMS ARE BARRED BY SECTION 546(e)

### A.    Introduction

The Trustee's sole cause of action is asserted under Section 550(a), which provides that, to the extent a transfer is avoided under enumerated Code provisions, "the trustee may recover, for

the benefit of the estate, the property transferred," or its value, from "the initial transferee" or any subsequent "transferee of such initial transferee."  11 U.S.C. § 550(a)(1), (2).[18]  However, "[t]he Code sets out a number of limits on the exercise of these avoiding powers," including the "securities safe harbor" of Section 546(e).  *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 138 S. Ct. 883, 889 (2018) ("*Meri*").  Section 546(e) exemplifies how, "in enacting the Bankruptcy Code, Congress struck careful balances between the need for an equitable result for the debtor and its creditors, and the need for finality" and "[courts] are obliged to respect the balance struck among these complex competing considerations."  *In re Bernard L. Madoff Inv. Secs. LLC (Picard v. Ida Fishman Recoverable Trust),* 773 F.3d 411, 423 (2d Cir. 2014) ("*Fishman*").  In particular, "by enacting § 546(e), Congress provided that, for a very broad range of securities-related transfers, the interest in finality is sufficiently important that they cannot be avoided by a bankruptcy trustee at all, except as actual fraudulent transfers under § 548(a)(1)(A)."  *Id.*  "Unwinding settled securities transactions . . . would seriously undermine—a substantial understatement—markets in which certainty, speed, finality and stability are necessary to attract capital."  *See In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 90 (2d Cir. 2019) ("*Tribune I*").

Section 546(e) provides, as relevant here, that "[n]otwithstanding" certain Code provisions granting avoidance powers, "the trustee may not avoid a transfer that is a . . . settlement payment . . . made by or to (or for the benefit of) a . . .  stockbroker [or] financial institution [or] financial participant,  . . . or that is a transfer made by or to (or for the benefit of) a . . . stockbroker [or] financial institution [or] financial participant . . . in connection with a securities contract . . . except under section 548(a)(1)(A)."  "Where the initial transferee fails to raise a § 546(e) defense against

---

[18] The Trustee also invokes Section 551, *see* Compl. at 15,  but that section of the Code "does not provide for an independent cause of action."  *In re CIL Ltd.*, 582 B.R. 46, 97 (Bankr. S.D.N.Y. 2018), a*mended on reconsideration on other grounds*, No. 13-11272, 2018 WL 3031094 (Bankr. S.D.N.Y. June 15, 2018).

the Trustee's avoidance of certain transfers, as is the case here where the transferee settled with the Trustee, the subsequent transferee is nonetheless entitled to raise a § 546(e) defense against the recovery of those funds." *Fairfield Inv. Fund*, 2021 WL 3477479, at *3; *see also SIPC v. Bernard L. Madoff Inv. Secs. LLC*, No. 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*").

As explained below, Section 546(e) bars the Trustee's claims against Cathay because the alleged initial transfers purportedly underpinning those claims fall squarely within the statutory safe harbor. The initial transfers at issue here are covered transactions in two ways: they are both transfers "in connection with a securities contract" *and* "settlement payments," although either would suffice. The alleged initial transfers at issue, moreover, involved several covered entities— they were made by a "stockbroker" to a "financial institution" and for the benefit of a "financial participant" even though Section 546(e) only requires the involvement of one. The "application of Section 546(e) presents a straightforward question of statutory interpretation of the type that is appropriately resolved on the pleadings." *Fairfield III*, 2020 WL 7345988, at *5 (quoting *In re Tribune Co. Fraudulent Conveyance Litig.*, No. 12-cv-2652 (DLC) 2019 WL 1771786, at *7 (S.D.N.Y. Apr. 23, 2019), *aff'd*, 10 F.4th 147, 175–77 (2d Cir. 2021) ("*Tribune II*"), *cert. denied sub nom. Kirschner v. FitzSimons*, No. 21-1006, 2022 WL 516021 (U.S. Feb. 22, 2022)). Courts therefore do not hesitate to dismiss, under Rule 12(b)(6), claims that are barred by Section 546(e).[19] The Complaint here should likewise be dismissed.[20]

---

[19] *See, e.g., Fishman*, 773 F.3d at 414 (affirming dismissal); *In re Nine West LBO Securities Litig.*, 482 F. Supp. 3d 187 (S.D.N.Y. 2020) (dismissing claims on Rule 12(b)(6) motion)), *app. pending* (2d Cir. No. 20-3941); *Fairfield III*, 2020 WL 7345988, at *5–*9 (same), *app. pending* (S.D.N.Y. No. 1:19-cv-03911-VSB); *Holliday v. K Rd. Power Mgmt., LLC (In re Boston Generating LLC)*, 617 B.R. 442 (Bankr. S.D.N.Y. 2020) ("*Boston Generating*") (same), *aff'd*, 2021 WL 4150523 (S.D.N.Y. Sept. 13, 2021), *app. pending*, No. 21-2543 (2d Cir. 2021)); *AP Servs., LLP v. Silva*, 483 B.R. 63 (S.D.N.Y. 2012) (same).

[20] Section 546(e) on its face contains just one exception—*i.e.*, for avoidance under 11 U.S.C. § 548(a)(1)(A). As explained in Point II.E *infra*, the Trustee's attempt to plead the avoidability of a portion of the alleged initial transfers under that provision (which requires allegations that the challenged transfers were made "with actual intent to hinder, delay, or defraud") fails. But even if the Court sustained the Trustee's attempt to plead Section 548(a)(1)(A) claims in full, the only claims that would survive application of Section 546(e) would be those based on BLMIS-to-Fairfield Sentry transfers made within two years prior to the filing date. *See* 11 U.S.C. § 548(a)(1)(A) (limiting the avoidance powers to transfers made or obligations incurred "on or within 2 years before the date of the filing of the petition"). Claims based on earlier alleged initial transfers would still have to be dismissed under Rule 12(b)(6).

**B.**    **The Alleged Initial Transfers Are Covered by Section 546(e)**

Section 546(e) shields the alleged initial transfers from BLMIS to Fairfield Sentry from avoidance on two separate grounds, each of which was definitively settled by the Second Circuit in *Fishman*.  First, these transfers were made "in connection with securities contracts" *i.e.,* the BLMIS Fairfield Sentry account agreements.  Second, they were "settlement payments" made by BLMIS in response to Fairfield Sentry's requests for withdrawals under those agreements.  The Complaint, moreover, discloses an additional way in which those alleged initial transfers were made "in connection with a securities contract": they were also made "in connection" with the Fairfield Sentry Articles of Association, which is a separate "securities contract" (in addition to the transfer being "in connection" with the BLMIS-Fairfield Sentry securities contracts).[21]

**1.**    **The Fairfield Sentry Initial Transfers Were Made in Connection With the BLMIS-Fairfield Sentry Account Agreements, Which Are "Securities Contracts"**

In *Fishman*, the Second Circuit held that BLMIS's account agreements with customers "satisfy the broad definition of 'securities contracts'" in 11 U.S.C. § 741(7)(A), which applies to Section 546(e).  *Fishman*, 773 F.3d at 418.  The court easily dispatched a series of arguments made by the Trustee, "none" of which it found "persuasive."  *Id.* at 419; *see also id.* at 419-21.  The *Fishman* court then had "little difficulty concluding that the payments BLMIS made to its customers were made 'in connection with' the securities contracts identified above."  *Id.* at 421.

The Trustee has pleaded that Fairfield Sentry "maintained customer accounts with BLMIS," Compl., ¶ 36; *see also* Parham Decl., Ex. 2 (Fairfield Am. Compl.), ¶ 33 (listing such accounts), and entered into account agreements with BLMIS, *id*. & Ex. 1.  Just as in *Fishman*,

---

[21] "[A] transfer can be connected to, and be made in relation to, multiple documents or purposes simultaneously."  *Fishman*, 773 F.3d at 422.

61123503;8

those agreements are "securities contracts," and the BLMIS-to-Fairfield Sentry transfers were made "in connection with" those contracts.

### 2.    The Fairfield Sentry Initial Transfers Were "Settlement Payments"

Although *Fishman's* holding that BLMIS-to-customer payments are transfers "in connection with securities contracts" suffices to "shield the transfers from avoidance," the Second Circuit identified in Section 546(e) yet "another basis" for protecting those transfers. *Fishman*, 773 F.3d at 421. Such transfers also constitute "settlement payments" under into Section 546(e). *Id*. at 421-22. Rejecting the Trustee's argument to the contrary, the Second Circuit held in *Fishman* that "each transfer in respect of" a customer's order or request to withdraw funds from BLMIS "constituted a settlement payment." *Id*. at 422. Here, the Trustee has alleged that Fairfield Sentry received approximately $3 billion in respect of such withdrawal orders or requests. Compl., ¶¶ 36-41; *see also* Parham Decl. Ex. 2 (Fairfield Am. Compl.), ¶ 33. Precisely as in *Fishman*, it is indisputable that those are all "settlement payments" for Section 546(e) purposes.

### 3.    The Fairfield Sentry Initial Transfers Were Made in Connection with the Fairfield Sentry Articles of Association, Which Is a Separate "Securities Contract"

The Trustee alleges in this action that "portion[s] of the Fairfield Sentry Initial Transfers w[ere] subsequently transferred, either directly or indirectly to, or for the benefit of" Cathay. Compl., ¶¶ 42, 44. The Trustee's theory is that the alleged initial transfers from BLMIS to Fairfield Sentry were made, in part, for the purpose of funding Cathay's redemption requests.[22] Those redemption requests, and the resulting payments which the Trustee now seeks to recover in this

---

[22] Cathay denies that it is a subsequent transferee of customer property, and indeed demonstrates in Point III, *infra*, that the Trustee's allegations in support of this theory are implausible and should be dismissed for that reason. Regardless, the Trustee's allegations are admissions that can be used to establish, on motion, that his claims fail to state a claim upon which relief can be granted. *See, e.g.*, *Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) ("[T]he allegations in the Second Amended Complaint are 'judicial admission[s]' by which [the plaintiff] was 'bound throughout the course of the proceeding.'" (quoting *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985) (affirming dismissal of claim because plaintiff was bound by assertion of facts in its complaint))). *Cf. Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000)(taking judicial notice of pleading filed by defendant in other actions and holding that those pleadings, taken together with plaintiffs' other allegations, "alleged sufficient facts" to support plaintiffs' claim").

action, were—as the UK Privy Council has held—governed by Fairfield Sentry's Articles of

Association.  *See* Parham Decl. Ex. 14 (*Fairfield Sentry Ltd. v. Migani*, [2014] UKPC 9, ¶ 10

(holding that "the terms of the subscriber's membership in the Fund, which govern the redemption

of its shares . . . are to be found in the Articles of Association of the Fund")); *see also Fairfield I*,

2018 WL 3756343, at *11 (explaining that the Privy Council "concluded that the terms of the

redemption of shares were found in the Articles").

It follows that the Fairfield Sentry Articles of Association is a "securities contract" for

Section 546(e) purposes. [23]  The definition of "securities contract" in 11 U.S.C. § 741(7) is "broad."

*Fishman*, 773 F.3d at 419.  It not only includes "a contract for the purchase, sale, or loan of a

security," 11 U.S.C. § 741(7)(A)(i), but also "any other agreement and transaction that similar to"

such a contract, *id*. § 741(7)(A)(vii).  *See Fishman*, 773 F.3d at 419 (noting that Congress intended

to "sweep broadly").  A contract providing for redemptions of securities, such as the Fairfield

Sentry Articles of Association, surely qualifies.  *See Cohmad*, 2013 WL 1609154, at *8 (noting

that the definition of "securities contract" is broad and "includes, *inter alia*, investment fund

subscription agreements and *redemption requests*") (emphasis added);  *Tribune I*, 946 F.3d at 80

("The term 'redemption,' in the securities context, means 'repurchase'").[24] The law, moreover,

does not  require "that the securities contract that the transfer is made 'in connection with' must

be a securities contract with the debtor."  *Cohmad*, 2013 WL 1609154, at *9.

"Section 546(e) sets a low bar for the required relationship between the securities contract

and the transfer sought to be avoided."  *Fishman*, 773 F.3d at 422.  The initial transfers, as alleged

---

[23] The Fairfield Sentry Articles of Association, (Parham Decl. Ex. 9) may be considered on this motion because, as the document governing the challenged redemptions, it is integral to the Complaint. *See, e.g., Tribune II*, 10 F.4th at 176.

[24] In the Fairfield Liquidators' BVI-law clawback actions, the Liquidators did not dispute, as Judge Bernstein concluded, that redemptions made pursuant to the Articles of Association "were Covered Transactions [under Section 546(e)] because they were settlement payments made in connection with securities contracts." *Fairfield II*, 596 B.R. at 314.

in the Trustee's pleadings, easily clear that bar, as he asserts that Fairfield Sentry withdrew those funds from BLMIS in order to fund its contractual obligations to alleged subsequent transferees making redemption requests—including Cathay.  *See, e.g.*, Parham Decl. Ex. 2 (Fairfield Am. Compl.), ¶¶ 53 ("[I]n order to pay these redemptions [to Sigma], Fairfield Sentry withdrew funds from its BLMIS accounts.").  As pleaded by the Trustee (*see supra* at 23 n. 22), such withdrawals from BLMIS are transfers "in connection with" the securities contract between the alleged initial and subsequent transferees.  Judge Rakoff described this very situation in *Cohmad*:

> Take, for example, a hypothetical situation in which the Trustee alleges that a withdrawal of funds by an investment fund from its [BLMIS] customer account occurred because an investor in that fund sought redemption of its investment under the terms of its investment contract. Assuming that either the investment fund or the investor qualifies as a financial institution or financial participant, and barring other circumstances that may appear on the facts of a given case, that situation appears to fit within the plain terms of Section 546(e): an initial transfer that was "made by or to (or for the benefit of) a … financial institution [or] financial participant … in connection with a securities contract."

*Cohmad*, 2013 WL 1609154, at *9 (footnote omitted); *see also In re Boston Generating LLC (Holliday v. K Rd. Power Mgt., LLC)*, 617 B.R. 442, 487 (Bankr. S.D.N.Y. 2020) (initial transfers that "funded" redemptions of securities "were made in connection with a securities contract"). In *Cohmad*, Judge Rakoff further explained that "[t]o the extent that, for example, an initial transfer from [BLMIS] to an investment fund customer and the subsequent transfer from the investment fund to its redeeming investors may together comprise a 'settlement payment' under *Enron* [*Creditors Recovery Corp. v. Alfa S.A.B de C.V.*, 651 F.3d 329 (2d Cir. 2011)], that transfer may fall within the purview of Section 546(e), assuming it meets the statue's other requirements," *Cohmad*, 2013 WL 1609154, at *9 n.5.  In sum, multiple paths lead to one conclusion:  the Trustee's own pleadings establish that the alleged Fairfield Sentry Initial Transfers were covered by Section 546(e).

### C.    The Alleged Initial Transfers Were Made by, to and for the Benefit of Entities Covered by Section 546(e)

The Trustee's pleadings also amply satisfy Section 546(e)'s "covered entity" requirement—*i.e.*, that *either* the debtor that made the alleged initial transfer was an entity covered by Section 546(e) *or* the debtor made the transfer "to (or for the benefit of)" a covered entity. Although the statute requires the involvement of only one "covered entity," here the requirement is satisfied in *three* ways—the alleged initial transfer was made (i) by BLMIS, a stockbroker; (ii) to Fairfield Sentry, a financial institution; and (iii) for the benefit of Cathay, a financial participant.

### 1.    The Alleged Initial Transfers Were Made by a Stockbroker

The Code defines "stockbroker" to include entities "engaged in the business of effecting transactions in securities." 11 U.S.C. § 101(53A)(B). It is far too late for the Trustee to deny that BLMIS falls within this definition. Judge Rakoff rejected that argument a decade ago in *SIPC v. Bernard L. Madoff Inv. Secs. LLC*, 476 B.R. 715, 719 (S.D.N.Y. 2012), *aff'd sub nom. Fishman*, explaining that BLMIS "was registered as a stockbroker with the SEC" and "clearly engaged in securities transactions." *Id*. at 719. On appeal, the Trustee did not dispute "that BLMIS was a 'stockbroker' for the purposes of § 546(e)." *Fishman*, 773 F.3d at 417. The Court can end its "covered entity" analysis here. The fact that the alleged initial transfer was made by a stockbroker satisfies that requirement. But, there are additional and independently sufficient routes to the same conclusion.

### 2.    The Alleged Initial Transfers Were Made to a Financial Institution

The alleged initial transferee Fairfield Sentry fits well within the relevant definition of a "financial institution," and is therefore an entity covered by Section 546(e). The Code defines "financial institution" to include not only "an entity that is a commercial or savings bank," or a "trust company," but also the customer of a bank "when [the bank] is acting as agent or custodian for a customer . . . in connection with a securities contract." 11 U.S.C. § 101(22)(A) (emphasis

added). *See Tribute I*, 946 F.3d at 78-79 (for purposes of Section 101(22)(A), "customer" must be given its ordinary meaning, including "someone who buys goods or services" and "a person…for whom a bank has agreed to collect items") (citations omitted).  In Fai*rfield III*, Judge Bernstein held that Fairfield Sentry and Fairfield Sigma were "financial institutions" because they were customers of Citco Bank Nederland N.V. Dublin Branch ("Citco Bank") (which was a "bank" because it was regulated as such by the Central Bank of the Netherlands and registered as such with the Central Bank of Ireland, *Fairfield III*, 2020 WL 7345988, at *6 & n.11), [25] and that Citco Bank acted as the Fairfield Funds' agent in connection with the securities contracts pursuant to which the redemption payments were made. *Id*. at *7.

The *Fairfield III* holding applies with equal force here.  The Trustee alleges that the Fairfield Sentry Initial Transfers were made from BLMIS accounts entitled "Citco Global Custody N.V. FBO Fairfield Sentry Ltd." (account numbers 1FN012 and 1FN045).  Compl., Ex. B.  In the exterritoriality proffer filed in this action in 2015, ECF No. 81, the Trustee acknowledged Citco Global Custody N.V.'s service as custodian for Fairfield Sentry and the related opening of bank accounts by Fairfield Sentry at Citco Bank, and alleged that FGG personnel "had final control of the Fairfield Sentry bank accounts and controlled all of Fairfield Sentry's relationships with the various Citco entities," and "controlled and approved all subscriptions into and redemptions from the fund."  *Id.* ¶¶ 33, 35.  These allegations confirm that, as this Court held in *Fairfield III*, Citco Bank (a "financial institution") was Fairfield Sentry's agent in connection with the redemptions at

---

[25]  *See* De Nederlandsche Bank, *Information Detail: Citco Bank Nederland N.V.*, https://www.dnb.nl/en/public-register/information-detail/?registerCode=WFTDG&relationNumber=B0275 (last visited March 27, 2022) (identifying Citco Bank Nederland N.V. as "[c]arrying on the business of a bank," including "[a]cceptance of deposits and other repayable funds"); Central Bank of Ireland, *Financial Service Provider Profile: Citco Bank Nederland NV Dublin Branch*, http://registers.centralbank.ie/FirmDataPage.aspx?firmReferenceNumber=C27278 (last visited March 27, 2022) (classifying Citco Bank as a "credit institution … whose business is to receive deposits or other repayable funds from the public and to grant credits for its own account").  As in *Fairfield III*, 2020 WL 7345988, at *6, the Court can and should take judicial notice of information from such public registries.  *See also supra* 6 n. 6.

issue, such that Fairfield Sentry itself is a "financial institution" within the meaning of Section 546(e). That holding is binding on the Trustee, because he is in privity with the Fairfield Liquidators.[26] The Alleged Initial Transfers Were Allegedly Made for the Benefit of a Financial Participant.

The Trustee's allegations establish yet a third, separate way in which Section 546(e)'s "covered entity" requirement is fulfilled: he has pleaded, *in haec verba*, that the alleged initial transfers were made "for the benefit of" a "financial participant"—*i.e.,* Cathay. The Complaint repeatedly pleads that "[a] portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of" Cathay. Compl., ¶¶ 42, 48 & 49 (emphasis added).

Cathay is a "financial participant." Financial participants are large market participants with substantial exposure to other participants through securities contracts, commodity contracts, swap agreements, repurchase agreements, or forward contracts (*i.e.*, one or more qualified financial contracts, or "QFCs"). *See* 11 U.S.C § 101(22A); H.R. Rep. No. 106-711, pt. 2, at 55 (2000). A financial participant, as defined by the Code, includes any entity that has more than a total gross dollar value of $1 billion in "notional or actual principal amount outstanding" in one or more securities contracts or other QFCs. 11 U.S.C. § 101(22A). The Code further specifies that an entity may satisfy such thresholds either: at the time it enters into a securities contract, on any day during

---

[26] In the Fairfield Settlement Agreement, the Trustee and the Fairfield Liquidators not only agreed to share recoveries on their respective "clawback" claims, including claims brought against Cathay, but also "agree[d] and stipulate[d] that a joint interest exists between them with respect to the Sharing Claims." *See* Parham Decl., Ex. 4 (Fairfield Settlement Agreement), ¶¶ 4, 7, 14. That joint interest in any such recovered BLMIS customer property constitutes a "preexisting 'substantive legal relationship,'" focused on a successive or concurrent interest in property, of the kind that gives rise to non-party issue preclusion. *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008). Because the Trustee and the Liquidators are in privity with respect to actions to recover alleged BLMIS customer property, such as those at issue in *Fairfield III*, and because the issue of Fairfield Sentry's "financial institution" status was "actually litigated" and "essential" to the final judgments dismissing many such actions—including those against Cathay—based on application of Section 546(e), the *Fairfield III* finding that Fairfield Sentry was a "financial institution" in connection with redemption payments to its investors binds the Trustee. *See New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001) (stating requirements for issue preclusion). Moreover, Fairfield Sentry is also a financial participant within the meaning of 546(e).

61123503;8

the 15-month period preceding the date of the filing of the petition, or, on the date of the petition. *Id*.

Cathay qualifies as a financial participant under this definition based on its securities contracts with its customers and contract counterparties. On December 11, 2008 and April 13, 2009, the dates the Securities Investor Protection complaint and Bernard L. Madoff's bankruptcy petition were filed (the "Relevant Dates"), the value of Cathay's qualified accounts, agreements, and transactions of the type covered by Section 561(a) (1-6) exceeded the $1 billion threshold for actual or notional outstanding principal. *See* Parham Decl., ¶16-39; 11 U.S.C. § 101(22A)(A). In relevant part, on December 11, 2008, Cathay held outstanding positions in swap agreements in the total contract amount of TWD 368,144,377 the equivalent of USD $12,992,609,521.53. Parham Decl., ¶39. Likewise, on April 13, 2009, Cathay held outstanding positions in swap agreements in the total contract amount of TWD 329,462,631 the equivalent of USD $13,629,489,659.52. Parham Decl., ¶39. Thus exceeding the $1 billion threshold requirement for actual or notional principal outstanding value required under Section 101(22A).

Accordingly, Cathay is a financial participant. This provides yet another reason for the transfers to be shielded from the Trustee's reach by the statutory safe harbor; thus, the Trustee's claims in this action should be dismissed.

### D. The Trustee Has Not Alleged that Cathay Had Actual Knowledge of the Madoff/BLMIS Fraud

The only possible ground upon group which the Section 546(e) safe harbor can be rendered inapplicable is the judicially created rule that a subsequent transferee "who had actual knowledge of Madoff Securities' fraud . . . cannot prevail on a motion to dismiss on the basis of Section 546(e)'s safe harbor." *Fairfield Inv. Fund*, 2021 WL 3477479, at *4 (quoting *Cohmad*, 2013 WL 1609154, at *7). Whatever effect that rule might have in other adversary proceedings where,

unlike here, the Trustee has pleaded such "actual knowledge," it poses no impediment to granting Cathay's motion to dismiss in this action.

Although Section 546(e) does not contain such an exception, the court in *Cohmad* concluded that "if the Trustee sufficiently alleges that the transferee from whom he seeks to recover a fraudulent transfer knew of [BLMIS's] fraud, that transferee cannot claim the protection of Section 546(e)'s safe harbor." 2013 WL 1609154, at *7. The rationale for that holding was based on the purpose of the statutory safe harbor—*i.e.*, assuring the finality of settlements of securities transactions and minimizing the securities market disruption caused by bankruptcy proceedings. *See supra* at 14. As Judge Rakoff noted in *Cohmad*, that purpose is "achieved by protecting the reasonable expectations of investors who believed they were signing a securities contract," but not by shielding the transactions of "a transferee who had actual knowledge of the Madoff 'Ponzi' scheme [and therefore] did not have any such expectations." 2013 WL 1609154, at *4. Here, the supposed transferee "from whom [the Trustee] seeks to recover"— Cathay —is not alleged to have had such actual knowledge. Section 546(e)'s purpose is therefore "achieved by protecting" their "reasonable expectations" and dismissing the Trustee's claims. For the same reason, there is no risk here of Cathay "launder[ing] what [it] knows to be fraudulently transferred funds through a nominal third party and still obtain[ing] the protections of § 546(e)." *Fairfield Inv. Fund*, 2021 WL 3477479, at *4.

It is immaterial to this analysis that in *Fairfield Investment Fund*, this Court held that, in a pleading which superseded the Fairfield Amended Complaint, the Trustee sufficiently alleged actual knowledge on the part of Fairfield Sentry, the ***initial*** transferee. *See id*. at *4. Fairfield Sentry's knowledge cannot be imputed to Cathay, which dealt with Fairfield Sentry at arm's length; the Trustee does not even advance any such theory. The sole question is whether the

Trustee has pleaded facts that, if proved, would establish Cathay's actual knowledge of the Madoff/BLMIS fraud. In *Fairfield Investment Fund*, this Court carefully differentiated five alleged subsequent transferees against whom the Trustee had sufficiently pleaded such facts from one alleged subsequent transferee against whom "the Trustee has failed to plead individualized factual allegations demonstrating . . . independent actual knowledge of the BLMIS fraud." 2021 WL 3477479, at *6; *see also id.* at *15 (dismissing the individual claims against the latter defendant). *A fortiori*, Cathay, against which the Trustee does not even attempt to plead actual knowledge, is entitled to rely on Section 546(e).

Cathay's position, moreover, is significantly stronger than that of all defendants in *Fairfield Investment Fund*. The "securities contract[s]" that Cathay "signed," *Cohmad*, 2013 WL 1609154, at *3—and which they have every reasonable expectation Section 546(e) will protect—were not BLMIS-Fairfield Sentry customer agreements, but rather separate contracts between Cathay and the Fairfield Funds. The *Cohmad* court recognized that Section 546(e) applies where, as the Trustee has pleaded here, the initial transferee allegedly withdrew funds from BLMIS in order to pay financial institutions to redeem their shares, pursuant to a separate securities contract between the initial and alleged subsequent transferees—here, the Fairfield Sentry Articles of Association. *See supra* at 28–31. Because Cathay "[c]laims protection under Section 546(e) under such a separate securities contract as a…financial institution," *Cohmad*, 2013 WL 1609154, at *10, it is not barred from relying on Section 546(e) absent allegations of *its* actual knowledge of the fraud. Because the Trustee has made no such allegation, Cathay is entitled to the protection that Section 546(e) affords.[27]

---

[27] Because the exception created in *Cohmad* to the reach of Section 546(e) is inapplicable to this adversary proceeding, there is no need for the Court to consider whether it is a correct statutory interpretation. In the event of an appeal, Cathay preserves the argument that the text of Section 546(e) does not permit courts to craft such a carve-out based on a transferee's alleged knowledge. *See, e.g., Merit*, 138 S. Ct. at 897 (emphasizing adherence to "the plain meaning of the language used in § 546(e)" in interpreting

**E.      The Section 546(e) Safe Harbor Shields All of the Alleged Initial Transfers**

**1.      The Trustee Has Failed to Allege Actual Fraudulent Intent as Required by Section 548(a)(1)(A) and Rule 9(b)**

The sole statutory exception to the Section 546(e) safe harbor is for transfers avoidable under Section 548(a)(1)(A), which has a two-year lookback period. "[W]here § 546(e) applies to the Trustee's claims, the Trustee may only proceed insofar as he seeks to recover those subsequent transfers under § 550(a) as to which he could have avoided the initial transfer under § 548(a)(1)(A)." *Fairfield Inv. Fund*, 2021 WL 3477479, at *4. The Trustee, however, has failed to plead the avoidability of any initial transfers under Section 548(a)(1)(A), and cannot salvage any part of his claims from the Section 546(e) bar.

Section 548(a)(1)(A) requires the Trustee to plead that BLMIS "made" each "transfer" challenged under that provision "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became" indebted "on or after the date that such transfer was made." Because "'actual intent to hinder, delay or defraud' constitutes fraud, it must be pled with specificity, as required by Fed. R. Civ. P. 9(b)." *Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.),* 403 F.3d 43, 56 (2d Cir. 2005) (citation omitted); *see also Official Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 459-60 (Bankr. S.D.N.Y. 2006).[28] Under Rule 9(b), "conclusory allegations that do not evidence fraudulent intent with respect to the specific transfers challenged do not suffice," even if "combined with… allegations [about] an "alleged overall pattern of inappropriate transfers." *Id.* at 468 (internal quotation marks omitted).

---

the provision); *Fishman*, 773 F.3d at 423 (courts are "obliged to respect the balance Congress struck" "between the need for an equitable result for the debtor and its creditors, and the need for finality").

[28] Rule 9(b) is made applicable to adversary proceedings by Fed. R. Bankr. P. 7009.

The Complaint is devoid of any allegations that which, if proved, would establish that in making any of the alleged Fairfield Sentry two year initial transfers, BLMIS acted with the requisite intent to "hinder, delay or defraud" creditors, as opposed to merely honoring its contractual commitments to Fairfield Sentry.[29]  The Trustee has, in fact, pleaded nothing at all about BLMIS's intent in making any (much less each) of the "specific transfers challenged" here. *Id*. The Trustee has therefore failed to plead avoidability based on actual intent to defraud at all, let alone with the particularity Rule 9(b) requires.

> **2.    The Trustee Should Not Be Allowed to Rely on the "Ponzi Scheme Presumption" to Avoid His Pleading Burden**

Rather than actually pleading facts stablishing the fraudulent intent behind each transfer, as required by Section 548(a)(1)(A), the Trustee apparently relies upon the presumption "that transfers from a debtor in furtherance of a Ponzi scheme are made with fraudulent intent rather than to satisfy an antecedent debt." *Picard v. Citibank (In re Bernard L. Madoff Inv. Secs. LLC)*, 12 F.4th 171, 201 (2d Cir. 2021) (Menashi, J., concurring) ("*Citibank*").  Although this Court and the District Court have, at times, accepted the "Ponzi scheme," presumption in actions commenced by the Trustee, Judge Menashi's recent thoughtful concurring opinion in *Citibank*, made clear that that the issue is not settled at the Circuit level,[30] and explained there are several cogent reasons why the "Ponzi scheme presumption" represents a "questionable" application of fraudulent transfer statues. *Id*. at 202.

---

[29] For example, transfers intended to return capital to Fairfield Sentry or to satisfy an antient debt it not have been made with the actual intent to hinder, delay or defraud" creditors. 11 U.S.C. §548(a)(1)(A). Merely alleging that BLMS paid money to Fairfield Sentry therefore is insufficient to establish an actually fraudulent transfer.

[30] Although the Second Circuit has on occasion applied the presumption "when its application was uncontested," *Citibank*, 12 F.4th at 202 n.7 (Menashi, J., concurring), it has not sanctioned use of the presumption in any case where the issue was litigated. Nor has the Supreme Court recognized the presumption. Although the Trustee may argue that the "Ponzi scheme presumption" is the "law of the case" because it has been applied in other adversary proceedings within the BLMIS liquidation, the "law of the case" doctrine does not create an absolute bar to reconsideration of the issue—particularly now that a Second Circuit judge has, for the first time, trenchantly questioned the viability of the "presumption." *See generally Arizona v. California*, 460 U.S. 605, 618 (1983) ("law of the case is an amorphous concept" which "does not limit the tribunal's power").

*First*, Section 548(a)(1)(A) does not mention Ponzi schemes, much less authorize courts to relax the Trustee's pleading burden in such cases. *Second*, fraudulent transfer cases warrant an "asset-by-asset and transfer-by-transfer" inquiry—one that requires proof of "the elements of a fraudulent transfer with respect to each transfer, rather than relying on a presumption related to the form or structure of the entity making the transfer"—because the statutory focus is "on individual transfers, rather than a pattern of transactions that are part of a greater 'scheme.'" *Finn v. Alliance Bank*, 860 N.W.2d 638, 647 (Minn. 2015) (construing Minnesota UFTA provision that is virtually identical to Section 548(a)(1)(A)); *see also Citibank*, 12 F.4th at 201 (Menashi, J., concurring). *Third*, the Ponzi scheme presumption is based on the hypothesis that *whenever* a Ponzi scheme operator "makes payments to present investors," it does so for the purpose of "attract[ing] new investors," *Merrill v. Abbott (In re Independent Clearing House Co.)*, 77 B.R. 843, 860 (D. Utah 1987) (en banc), but that premise may not hold, especially in the later stages of a long-running scheme like Madoff's, which began in the late 1980s or early 1990s, *see Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC),* 603 B.R. 682, 691 (Bankr. S.D.N.Y. 2019)." *Fourth*, the Ponzi scheme presumption, as Judge Menashi explained, has been rejected by courts "on the ground that it improperly treats preferences as fraudulent transfers," *Citibank*, 12 F.4th at 201, thereby "obscur[ing] the essential distinction between fraudulent transfers and preferences," *id*. at 202; *see also Lustig v. Weisz & Assocs., Inc. (In re Unified Com. Cap., Inc*., 260 B.R. 343, 350 (Bankr. W.D.N.Y. 2001) ("*Unified*"). *Finally*, the Ponzi scheme presumption conflicts with Rule 9(b), which requires particularity in pleading how each transfer was made with actual intent to defraud. *See, e.g.*, *Sharp*, 403 F.3d at 56. If such exceptions are to be created, Congress—not the courts—should create them. *See Unified*, 260 B.R. at 350 (cited approvingly in *Citibank*, 12 F.4th at 202 (Menashi, J., concurring)).

Without the "Ponzi scheme presumption," the Complaint alleges nothing whatsoever about BLMIS's intent in making the specific "Two-Year Fairfield Initial Transfers," and certainly not that they were made with the requisite actual fraudulent intent. The Trustee has therefore not adequately pleaded such intent, and his Section 548(a)(1) claim must fail.

## III.   THE TRUSTEE HAS FAILED TO PLEAD THE AVOIDABILITY OF THE ALLEGED INITIAL TRANSFERS AND HIS ATTEMPTED WHOLESALE INCORPORATION OF THE FAIRFIELD AMENDED COMPLAINT IS IMPROPER

To plead a subsequent transfer claim under Section 550(a)(2), the Trustee must allege "that the initial transfer is avoidable." *Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (citation omitted). The Complaint fails to do so with respect to any of the alleged initial BLMIS-to-Fairfield Sentry transfers, instead relying on conclusory statements that all such transfers in a six-year period are avoidable, without alleging any supporting facts. Compl., ¶¶ 36-43. That is insufficient, because a claim only "has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The Trustee's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.

The Trustee has attempted to fill the massive void at the heart of his Complaint by "incorporat[ing] by reference" the entirety of his 217-page (plus 111 exhibits), 798-paragraph Fairfield Amended Complaint. Compl., ¶ 36. But the Rules do not authorize that pleading stratagem. Although "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading," Fed. R. Civ. P. 10(c), a pleader may not indiscriminately adopt whole pleadings from a different action. *See NCUA Bd. v. Morgan Stanley & Co.*, No. 13 Civ. 6705 (DLC), 2014 WL 1673351, at *9 (S.D.N.Y. Apr. 28, 2014) (striking defense where

defendant attempted to "incorporate the affirmative defenses in answers filed by defendants *in other* actions into its answer" (emphasis in original)); *David v. Bifani*, No. 07-cv-00122-MEH-BNB, 2007 WL 1216518, at *1 (D. Colo. Apr. 24, 2007) (striking attempt "to incorporate by reference wholesale the allegations in a complaint in a completely separate action"). Courts police the line drawn by Rule 10(c), which authorizes only adopting particular "statement[s] in a pleading," not an entire pleading. *See, e.g., Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803, at *4 (E.D.N.Y. Mar. 26, 2010) ("Rule 10(c) adoption clause that does little more than make wholesale reference to the contents of a prior pleading exemplifies the kind of incorporation that fails to give the requisite guidance to the responding party." (internal quotation marks omitted)).[31]

The Trustee's failed attempt to incorporate the entire Fairfield Amended Complaint violates Rule 8(a)(2), which requires a complaint to "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2) serves two important purposes— "to give the adverse party fair notice of the claim asserted so as to enable [it] to answer and prepare for trial" and to avoid "[u]nnecessary prolixity in a pleading [that] places an unjustified burden on the court and the party who must respond to it because they are forced to select the material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (internal citations and quotations omitted). In *United States v. International Longshoremen's Ass'n*, 518 F. Supp. 2d 422 (E.D.N.Y. 2007), Judge Glasser rejected the attempted incorporation, in a civil RICO complaint, of pleadings from several previous proceedings, holding that the complaint "must be dismissed for failure to comply with Rule 8(a)." *Id*. at 467. The court explained that "[t]he Government's failure

---

[31] *See also Muhammad v. Bethel-Muhammad*, No. 11-0690-WS-B, 2012 WL 1854315, at *3 n.5 (S.D. Ala. May 21, 2012) (condemning "sweeping reference to . . . 100-page complaint"); *Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212, 216 (D. Mass. 1995) (pleading "must specifically identify which portions of the prior pleadings are adopted").

to specifically identify which portions of the hundreds of pages of exhibits it intends to incorporate by reference into the Amended Complaint makes it impossible for the Court or the defendants to ascertain the nature and extent of the incorporation," *id.* at 462, and that wholesale incorporation of prior pleadings was "a blatant violation of Rule 8(a)(2)'s direction that a civil plaintiff provide a 'short and plain statement of the claim,'" *id.* at 463.

The same is true here.  Apart from its sheer length, the "incorporated" Fairfield Amended Complaint is brimming with allegations and claims that are asserted against parties other than Fairfield Sentry and are extraneous to the issues in this case, which was commenced with an 18-page, 60-paragraph single-count Complaint.[32]  Moreover, the Fairfield Amended Complaint has itself been superseded by a further amended pleading. *See Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47 (E.D. Va. 2009) (granting motion to dismiss; "wholesale incorporations . . . that seek to incorporate superseded versions of a complaint, must be examined with special care"). The Trustee has had a decade in which to amend the Complaint, yet has not remedied his improper incorporation.  The Complaint fails to provide fair notice of the facts upon which the Trustee relies to establish an essential element of his claims: the avoidability of the alleged initial transfers. The Complaint should now be dismissed.

## IV.    THE TRUSTEE'S CLAIMS MUST BE DISMISSED FOR FAILURE TO ADEQUATELY PLEAD THAT CATHAY IS A SUBSEQUENT TRANSFEREE OF CUSTOMER PROPERTY

### A.    The Trustee's Own Pleadings Establish the Implausibility of His Conclusory Allegations

#### 1.    The Trustee Has Failed to Carry His Pleading Burden

---

[32]  If the Court were to deny the motion to dismiss and uphold the Trustee's pleading tactic, Cathay might have to respond, paragraph-by-paragraph, to the allegations in the Fairfield Amended Complaint as well as those in the Complaint in this adversary proceeding.  In *International Longshoremen's Ass'n*, the court explained that defendants should not be put to the burden of "decipher[ing] the basic elements of the Government's claim in this action" from "incorporated" material, and "rejected" that maneuver as inconsistent with Rule 8(a)(2). 518F. Supp. 2d at 464.

61123503;8

To state a claim against an alleged subsequent transferee, the Trustee "must allege facts that support the inference that the funds at issue originated with" BLMIS.  He  must "allege facts that support the inference that the funds at issue originated with the [sic] BLMIS, and contain the 'necessary vital statistics'—the 'who, when and how much' of the transfers to establish that an entity was a subsequent transferee of the funds."  *Id. Shapiro*, 542 B.R. at 119 (citation omitted). While the Trustee may not be "required to provide a 'dollar-for-dollar accounting' of the exact funds at issue," "barebones allegations that the funds at issue were transferred to the subsequent transferees, without more detail, are insufficient."  *Id*.

In *Shapiro*, this Court dismissed subsequent transfer claims which used the same style of bare bones pleading present in the Complaint. *Id.*; *accord In re Caremerica, Inc.*, 409 B.R. 737, 750–51 (Bankr. E.D.N.C. 2009).The *Shapiro* court found that the operative complaint therein "lack[ed] the vital statistics necessary to support a subsequent transfer claim" and failed to "tie any initial transfer to any subsequent transfer or Subsequent Transferee. Moreover, it [did] not plausibly imply that the initial transferees even made subsequent transfers to the Subsequent Transferees as opposed to third parties, or that they made the subsequent transfers rather than simply keep the initial transfers for themselves." *Id*. The allegations rejected in Shapiro bear striking resemblance to the Trustee's allegations in the Complaint, as seen below:

| Allegations in *Shapiro* | Allegations in the Complaint |
|---|---|
| "Based on the Trustee's investigation to date, the Initial Transferee Defendants subsequently transferred a portion of the $53,778,486 received from BLMIS' to the Subsequent Transferee Defendants." *Shapiro*, 542 B.R. at 119. | Based on the Trustee's investigation to date, approximately $24,496,799 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Cathay Insurance (the "Fairfield Sentry-Cathay Insurance Subsequent Transfers"). (Compl. ¶ 42.) |
| "Subsequent Transfers were transferred by the Initial Transferee Defendants to the Subsequent Transferee Defendants." 542 B.R. at 119. | "The Cathay Defendants received subsequent transfers from Fairfield Sentry, which maintained customer accounts with BLMIS." (Compl. ¶ 35.) |

| "[E]ach Subsequent Transfer 'was made directly or indirectly to one or more of the Subsequent Transferee Defendants.'" *Shapiro*, 542 B.R. at 119. | "Each of the Fairfield Sentry Subsequent Transfers was made directly or indirectly to, or for the benefit of, Defendant Cathay Insurance or Defendant Cathay Bank." (Compl. ¶ 49.) |
|---|---|
| "'Subsequent Transferee Defendants are immediate or mediate transferees from the Initial Transferee Defendants.'" *Shapiro*, 542 B.R. at 119. | "Defendant Cathay Insurance and Defendant Cathay Bank are immediate or mediate transferees of the Fairfield Sentry Initial Transfers." (Compl. ¶ 50.) |

Moreover, as discussed in Point II, *supra*, a complaint "must give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin*, 861 F.2d at 42; accord *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002). "In determining whether a transfer is adequately identified, a good test 'is to ask whether the defendant could respond to [the claim for relief] with an appropriate affirmative defense.'" *State Bank & Tr. Co. v. Spaeth (In re Motorwerks, Inc.)*, 371 B.R. 281, 293 (Bankr. S.D. Ohio 2007) (citation omitted).The Complaint fails these basic requirements. The Trustee's Complaint attaches exhibits listing purported BLMIS-to-Fairfield Sentry initial transfers and payments from Fairfield Sentry to Cathay, but nothing in the Complaint or its exhibits "tie[s] any initial transfer to any subsequent transfer or Subsequent Transferee." *Shapiro*, 542 B.R. at 119.  As a result, the Trustee has failed to give Cathay fair notice of his claim, so that Cathay cannot properly answer the Complaint, prepare affirmative defenses, or prepare for discovery and trial.

### 2. It Is Implausible that Alleged Initial Transfers to Fairfield Sentry of $3 Billion Resulted in Alleged Subsequent Transfers of $5 Billion

Instead of alleging "enough facts to state a claim that is plausible on its face," *Twombly*, 550 U.S. at 570, the Trustee has filed pleadings that render his subsequent transfer claim *implausible* under basic principles of arithmetic: BLMIS's alleged initial transfers of *approximately $3 billion to* Fairfield Sentry cannot have produced *over $5 billion* in subsequent transfers *from Fairfield Sentry*, as the Trustee contends—*i.e.*, the sum of: (a) $3.238 billion paid by Fairfield Sentry directly to defendants in the Fairfield Subsequent Transfer Actions; (b) $824

million in alleged Fairfield Sentry payments to Fairfield Sigma and Fairfield Lambda; and (c) $1.139 billion which the Trustee seeks from FGG Defendants. *See supra* at 11-12.

The Trustee's pleadings hint at (but fail to forthrightly acknowledge) the obvious—that transfers from BLMIS were not the exclusive source of funds that Fairfield Sentry could use to satisfy redemption requests and make other payments. The alleged subsequent transferees subscribed for Fairfield Sentry shares over many years and therefore "wired funds to Fairfield Sentry." *See, e.g.*, Compl. ¶ 6. In a related proceeding in this Court, Fairfield Sentry necessarily confirmed that it paid redeeming investors with funds that originated from subscribing investors, not from BLMIS. *See Fairfield Sentry Ltd. v. Citco Global Custody NV*, Adv. Pro. 19-01122 (Bankr. S.D.N.Y. Nov. 26, 2019), ECF No. 19, ¶ 6 ("From time to time, to make Redemption Payments, Sentry (and Sigma and Lambda through Sentry) made withdrawals from Sentry's BLMIS accounts (or utilized subscription monies of other investors on hand that were directed for investment in BLMIS)"). The Trustee has stubbornly failed to recognize this fact, instead choosing to avoid pleading how (and to what extent) any alleged subsequent transfers are linked to funds originating with BLMIS, rather than from subscriptions or other sources. The implausibility of the premise underlying his inadequate, conclusory pleading—that every cent paid by Fairfield Sentry to redeeming investors constituted BLMIS customer property—is further reason to dismiss the Complaint.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the Complaint in its entirety.

Dated: Dallas, Texas

April 25, 2022

Respectfully submitted,

AKERMAN LLP

By: */s/ David W. Parham*

David W. Parham (admitted pro hac vice)
Bryce Benson (admitted pro hac vice)
2001 Ross Avenue, Suite 3600
Dallas, TX 75201
Telephone: (214) 720-4300
Facsimile:(214) 981-9339
E-mail: david.parham@akerman.com
E-mail: bryce.benson@akerman.com

*Counsel for Defendant Cathay Life Insurance Co.,*
*Ltd.*

41

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of April, 2022, a true and correct PDF copy of

the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system,

which will send a notice of electronic filing to all counsel of record:


_/s/David R. Parham_
David R. Parham

61123503;8