**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Chapter 7 Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff, | Adv. Pro. No. 11-02569 (CGM) |
| Plaintiff, | |
| v. | |
| BARCLAYS BANK (SUISSE) S.A., CAIXABANK S.A., as successor in interest to Barclays Bank S.A., and ZEDRA TRUST COMPANY (JERSEY) LIMITED (f/k/a Barclays Private Bank & Trust Limited), | **TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT** |
| Defendants. | |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS .........................................................................................3

    I.      THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS..............................3

    II.    THE FAIRFIELD FUNDS ...............................................................4

    III.   THE DEFENDANTS..................................................................5

ARGUMENT .......................................................................................5

    I.      SECTION 546(e) DOES NOT BAR RECOVERY FROM DEFENDANTS ........5

          A.     Fairfield Sentry Had Actual Knowledge of Madoff's Fraud .......................5

          B.     Defendants Are Bound by the Actual Knowledge Exception
                Established in *Cohmad* ...............................................................6

          C.     Defendants Are Also Precluded From Arguing That Section 546(e)
                Applies Independently to Recovery Actions ...............................................7

    II.    THE TRUSTEE HAS ADEQUATELY ALLEGED ACTUAL
          FRAUDULENT INTENT UNDER SECTION 548(a)(1)(A) OF THE
          BANKRUPTCY CODE..................................................................12

    III.   THE TRUSTEE SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE
          INITIAL TRANSFERS ................................................................16

          A.     The Incorporated Material Complies With Rules 10 and 8 .......................16

                1.     All adversary proceedings are part of the main case for purposes
                      of Rule 10(c) .....................................................................16

                2.     Incorporation is permitted where it achieves the purpose of Rule
                      10(c) .............................................................................18

                3.     The Trustee's allegations are sufficient under Rule 8 ...................20

          B.     The Court Can Take Judicial Notice of the *Fairfield Inv. Fund* Decision
                 .......................................................................................21

          C.     At the Very Least, the Trustee Should Be Afforded the Opportunity to
                 Replead ................................................................................21

IV.    THE  COMPLAINT  STATES  A  VALID  CAUSE  OF  ACTION  FOR
RECOVERY  OF  BLMIS  CUSTOMER  PROPERTY  UNDER  SECTION
550(a) ...........................................................................................................22

CONCLUSION................................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
    599 B.R. 730 (Bankr. S.D.N.Y. 2019).......................................................................22, 23, 24

*Am. Casein Co. v. Geiger (In re Geiger)*,
    446 B.R. 670 (Bankr. E.D. Pa. 2010) ...................................................................................17

*Angell v. Ber Care, Inc. (In re Caremerica, Inc.)*,
    409 B.R. 737 (Bankr. E.D.N.C. 2009)............................................................................24, 25

*Armstrong v. Collins*,
    No. 01-cv-2437, 2010 WL 1141158 (S.D.N.Y. Mar. 24, 2010).............................................13

*In re Bayou Grp., LLC*, 439 B.R. 284 (S.D.N.Y. 2010) ...............................................................13

*Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*,
    397 B.R. 1 (S.D.N.Y. 2007).......................................................................................13, 14, 15

*Bernard L. Madoff Inv. Sec. LLC*, No. 1:21-cv-02334-CM, 2022 WL 493734
    (S.D.N.Y. Feb. 17, 2022).........................................................................................................12

*CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*,
    393 B.R. 306 (Bankr. W.D.N.Y. 2008) .................................................................................28

*Cohen v. UBS Fin. Servs., Inc.*,
    No. 12-CV-02147, 2014 WL 240324 (S.D.N.Y. Jan. 22, 2014) ............................................14

*Davis v. Bifani*,
    No. 07-cv-00122-MEH-BNB, 2007 WL 1216518 (D. Colo. Apr. 24, 2007)........................18

*DeMasi v. Benefico*,
    567 F. Supp. 2d 449 (S.D.N.Y. 2008)....................................................................................21

*In re Dreier LLP*, 452 B.R. 391 (Bankr. S.D.N.Y. 2011)......................................................13, 15

*Drenis v. Haligiannis*,
    452 F. Supp. 2d 418 (S.D.N.Y. 2006)....................................................................................13

*Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.)*,
    343 B.R. 75 (Bankr. S.D.N.Y. 2006)......................................................................................10

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
    651 F.3d 329 (2d Cir. 2011).......................................................................................................9

*Ferrari v. Cnty. of Suffolk*,
  790 F. Supp. 2d 34 (E.D.N.Y. 2011) ...................................................................21

*Finn v. All. Bank*,
  860 N.W.2d 638 (Minn. 2015)..............................................................................14

*Foman v. Davis*,
  371 U.S. 178 (1962)..............................................................................................22

*Fowler v. Caliber Home Loans, Inc.*,
  277 F. Supp. 3d 1324 (S.D. Fla. 2016) ................................................................25

*Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*,
  Adv. Pro. No. 10-03493 (SMB), 2014 WL 47774 (Bankr. S.D.N.Y. Jan. 3,
  2014) .....................................................................................................................28

*Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller*,
  957 F.2d 1575 (11th Cir. 1992) ............................................................................14

*Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.)*,
  310 B.R. 500 (Bankr. S.D.N.Y. 2002)..................................................................13

*Helms v. Metropolitan Life Ins. Co. (In re O'Malley)*,
  601 B.R. 629 (Bankr. N.D. Ill. 2019) ...................................................................28

*Johnson v. Holder*,
  564 F.3d 95 (2d Cir. 2009)....................................................................................14

*Kelley v. Safe Harbor Managed Acct. 101, Ltd.*,
  No. 20-3330, 2022 WL 1177748 (8th Cir. Apr. 21, 2022) ...........................7, 8, 10

*Kelley v. Westford Special Situations Master Fund, L.P.*,
  No. 19-cv-1073, 2020 WL 3077151 (D. Minn. June 10, 2020) .................25, 26, 27

*Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*,
  No. 07-MD-1902 (JSR), 2013 WL 12191844 (S.D.N.Y. Mar. 25, 2013) ...............6

*Lowden v. William M. Mercer, Inc.*,
  903 F. Supp. 212 (D. Mass. 1995) ........................................................................19

*Lustig v. Weisz & Assocs., Inc. (In re Unified Com. Cap., Inc.)*,
  260 B.R. 343 (Bankr. W.D.N.Y. 2001) .................................................................14

*Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC*,
  843 F. Supp. 2d 191 (D. Mass. 2012) ...................................................................18

*Merrill v. Abbott (In re Indep. Clearing House Co.)*,
  77 B.R. 843 (D. Utah 1987)...................................................................................15

*Morrison v. Off. of the U.S. Tr. (In re Morrison)*,
　375 B.R. 179 (Bankr. W.D. Pa. 2007) ...........................................................................16, 17

*Muhammad v. Bethel-Muhammad*,
　No. CIV.A. 11-0690-WS-B, 2012 WL 1854315 (S.D. Ala. May 21, 2012) .........................19

*Nappier v. Pricewaterhouse Coopers LLP*,
　227 F. Supp. 2d 263 (D.N.J. 2002) ...................................................................................25

*Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*,
　No. 13 CIV. 6705 (DLC), 2014 WL 1673351 (S.D.N.Y. Apr. 28, 2014) ..............................19

*New Hampshire v. Maine*,
　532 U.S. 742 (2001) ...........................................................................................................6

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
　No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010) ..............18, 19

*In re Picard,* 917 F.3d 85 (2d Cir. 2019) .......................................................................................8

*Picard v. Avellino*,
　557 B.R. 89 (Bankr. S.D.N.Y. 2016) ....................................................................................6

*Picard v. BNP Paribas S.A. (In re BLMIS)*,
　594 B.R. 167 (Bankr. S.D.N.Y. 2018) ...................................................................... *passim*

*Picard v. Ceretti*,
　No. 09-01161 (SMB), 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015) ..........................6

*Picard v. Charles Ellerin Revocable Trust (In re BLMIS)*,
　Adv. Pro. No. 10-04398, 2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012) ..........22, 25, 26

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
　12 F.4th 171 (2d Cir. 2021) ..................................................................................... *passim*

*Picard v. Estate (Succession) of Igoin (In re BLMIS)*,
　525 B.R. 871 (Bankr. S.D.N.Y. 2015) .................................................................................12

*Picard v. Fairfield Inv. Fund (In re BLMIS)*,
　Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6,
　2021) ............................................................................................................... *passim*

*Picard v. Fairfield Pagma Assocs., LP*,
　Adv. Pro. No. 10-05169, 2022 WL 1110560 (Bankr. S.D.N.Y. Apr. 13, 2022) ....................12

*Picard v. Gerald & Barbara Keller Fam. Trust*,
　634 B.R. 39 (Bankr. S.D.N.Y. 2021) ..................................................................................12

*Picard v. Gettinger*, 976 F.3d 184 (2d Cir. 2020) .......................................................................13

v

*Picard v. Ida Fishman Revocable Trust (In re BLMIS)*,
    773 F.3d 411 (2d Cir. 2014)..............................................................................9

*Picard v. JABA Assocs. LP*,
    No. 20-CV-3836, 2021 WL 1112342 (S.D.N.Y. Mar. 24, 2021)...........................................15

*Picard v. Ken-Wen Fam. Ltd. P'ship*,
    Adv. Pro. No. 10-04468 (CGM), 2022 WL 709768 (Bankr. S.D.N.Y. Mar. 9,
    2022) ..............................................................................12

*Picard v. Lisa Beth Nissenbaum Trust*,
    No. 20 cv. 3140 (JGK), 2021 WL 1141638 (S.D.N.Y. Mar. 24, 2021) ......................12, 15, 16

*Picard v. Lowrey*,
    596 B.R. 451 (S.D.N.Y. 2019)............................................................6, 17

*Picard v. Magnify, Inc.*,
    583 B.R. 829 (Bankr. S.D.N.Y. 2018)..............................................................6

*Picard v. Mayer*,
    Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435 (Bankr. S.D.N.Y. Oct.
    27, 2021) ..............................................................................23

*Picard v. Mendelow*,
    560 B.R. 208 (Bankr. S.D.N.Y. 2016)..............................................................6

*Picard v. Merkin*,
    515 B.R. 117 (Bankr. S.D.N.Y. 2014)........................................................... *passim*

*Picard v. Merkin (In re BLMIS)*,
    581 B.R. 370 (Bankr. S.D.N.Y. 2017)..............................................................26, 27

*Picard v. Nelson*,
    610 B.R. 197 (Bankr. S.D.N.Y. 2019)......................................................12, 13, 15

*Picard v. Sage Realty*,
    No. 20-CV-10109, 2022 WL 1125643 (S.D.N.Y. Apr. 15, 2022) ....................................12, 14

*Picard v. Shapiro*,
    542 B.R. 100 (Bankr. S.D.N.Y. 2015)..............................................................6, 24

*Picard v. Square One Fund Ltd.*,
    Bench Ruling on Motion to Dismiss, Adv. Pro. No. 10-04330 (Bankr.
    S.D.N.Y. May 29, 2018)..............................................................6

*Porat v. Lincoln Towers Cmty. Ass'n*,
    464 F.3d 274 (2d Cir. 2006)..............................................................22

*Preterm-Cleveland v. McCloud*,
    994 F.3d 512 (6th Cir. 2021) ..............................................................................14

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000)..................................................................................21

*Sass v. Barclays Bank PLC (In re Am. Home Mortg., Holdings, Inc.)*,
    501 B.R. 44 (Bankr. D. Del. 2013) .....................................................................25

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    501 B.R. 26 (S.D.N.Y. 2013)................................................................8, 17, 20, 21

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    531 B.R. 439 (Bankr. S.D.N.Y. 2015)...................................................................6

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    No. 12-MC-115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013).................... *passim*

*Sharp International Corp. v. State Street Bank & Trust Co.*,
    403 F.3d 43 (2d Cir. 2005).................................................................................15

*Sherman v. A.J. Pegno Constr. Corp.*,
    528 F. Supp. 2d 320 (S.D.N.Y. 2007)..............................................................18, 20

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
    379 B.R. 5 (Bankr. E.D.N.Y. 2007)....................................................................24

*Solution Trust v. 2100 Grand LLC (In re AWTR Liquidation Inc.)*,
    548 B.R. 300 (Bankr. C.D. Cal. 2016).................................................................25

*In re SunEdison, Inc.*,
    620 B.R. 505 (Bankr. S.D.N.Y. 2020)...................................................................9

*Taylor v. Sturgell*,
    553 U.S. 880 (2008)...............................................................................................6

*United States v. Henshaw*,
    388 F.3d 738 (10th Cir. 2004) ...........................................................................26

*United States v. Int'l Longshoremen's Ass'n*,
    518 F. Supp. 2d 422 (E.D.N.Y. 2007) ............................................................18, 22

*United States v. Quintieri*,
    306 F.3d 1217 (2d Cir. 2002) .............................................................................14

*In re Viropharma, Inc. Sec. Litig.*,
    No. 02-Civ.-1627, 2003 WL 1824914 (E.D. Pa. Apr. 7, 2003)............................25

*Whitaker Sec., LLC v. Rosenfeld (In re Rosenfeld)*,
543 B.R. 60 (Bankr. S.D.N.Y. 2015) ..................................................................................19

**Statutes**

11 U.S.C. § 550(a) ....................................................................................... *passim*

11 U.S.C. § 550(d) ....................................................................................................28

11 U.S.C. § 546(e) ....................................................................................... *passim*

11 U.S.C. § 548(a)(1)(A) ............................................................................ *passim*

**Other Authorities**

5A Alan Wright & Arthur R. Miller, <u>Federal Practice & Procedure,</u> § 1326 (3d ed.
2007) ........................................................................................................17, 19, 20

Federal Rule of Bankruptcy Procedure 7010 ...............................................................16

Federal Rule of Civil Procedure Rule 8 ....................................................... *passim*

Federal Rule of Civil Procedure Rule 9(b) ...........................................................12, 15

Federal Rule of Civil Procedure Rule 10(c) ................................................. *passim*

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection

Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff, respectfully

submits this memorandum of law in opposition to the motion (the "Motion") to dismiss the SIPA

Trustee's Complaint pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP" or

the "Rules") filed by defendants Barclays Bank (Suisse) S.A. ("Barclays Suisse"), Caixabank S.A.,

as successor by merger to Barclays Bank S.A. ("Barclays Spain"), and Zedra Trust Company

(Jersey) Limited (f/k/a Barclays Private Bank & Trust Limited) ("Barclays Private Bank")

(together, "Defendants").[1]

## PRELIMINARY STATEMENT

This action in the SIPA liquidation proceeding seeks to recover approximately $65 million[2]

in subsequent transfers of stolen BLMIS customer property that Defendants received from

Fairfield Sentry Limited ("Fairfield Sentry") and Fairfield Sigma Limited ("Fairfield Sigma," and

together, the "Fairfield Funds").  Defendants move to dismiss the Trustee's Complaint, arguing

that (i) the safe harbor under Section 546(e) of the Bankruptcy Code bars recovery, (ii) the Trustee

has failed to plead actual intent under Section 548(a)(1)(A), (iii) the Trustee violates Rules 8 and

10 by incorporating by reference the Trustee's initial transfer complaint against the Fairfield Funds

(the "Fairfield Amended Complaint") to plead avoidability of the initial transfers, and (iv)

---

[1] As noted in the Motion, the Trustee's Complaint in this action [ECF No. 1] was amended by stipulations entered on December 16, 2021 and February 14, 2022, in order to substitute certain Defendants and dismiss certain transfers, respectively.  Accordingly, references herein to the "Complaint" shall mean the Complaint as updated by the foregoing stipulations, and references to activities of or transfers received by "Defendants" during the relevant time frame shall include defendants as named in the originally filed Complaint.

[2] The amount sought in the Complaint was $67,396,667.  In the February 14, 2022 Stipulation [ECF No. 122], the Trustee agreed not to pursue transfers in the amount of $2,733,843.

Defendants did not receive transfers of customer property. For the reasons set forth herein, Defendants' arguments fail.

First, the Trustee has plausibly alleged the Fairfield Funds' actual knowledge of fraud, and therefore under controlling law, the safe harbor for settlement payments or transfers in connection with securities contracts under Section 546(e) is inapplicable and does not bar recovery from Defendants. Defendants' primary argument—that the Trustee must plead *their* actual knowledge as opposed to that of initial transferee Fairfield Sentry—both misinterprets and directly conflicts with existing precedent in this case.

Second, existing precedent also defeats Defendants' argument that the Trustee has not adequately pled actual intent for purposes of avoiding and recovering the Two-Year Transfers[3] under Section 548(a)(1)(A). As Defendants themselves recognize, a long line of cases has found that BLMIS's transfers were made with actual intent for purposes of Section 548(a)(1)(A); Defendants' arguments to the contrary ask the Court to disregard these decisions.

Third, the Trustee's incorporation by reference of the Fairfield Amended Complaint is appropriate under Rule 10(c) and sufficient to satisfy Rule 8's "short and plain statement" requirement.[4] Such incorporation represents a practical method for the Trustee to plead avoidance of the relevant transfers, and Defendants can respond to the incorporation by reference paragraph just as they would any other paragraph in the Complaint. In any event, this Court may take judicial notice of the operative Second Amended Complaint and its opinion in *Picard v. Fairfield Investment Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr.

---

[3] The "Two-Year Transfers" here refer to the transfers made by BLMIS during the two years prior to the filing date of the SIPA liquidation, or December 11, 2006 to December 11, 2008.

[4] After the Trustee filed his Complaint against Defendants, the Trustee filed a Second Amended Complaint ("Second Amended Complaint") against the Fairfield Greenwich Group defendants (collectively, "Fairfield"). *See* Second Amended Complaint, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286.

S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*"), in which the Court held that the Trustee plausibly alleged the avoidability of the Fairfield Sentry transfers. The Court may also permit the Trustee to replead.

Fourth, the Trustee has plausibly alleged that Defendants received customer property under Section 550(a) by outlining the relevant pathways through which customer property was transferred from BLMIS to the Fairfield Funds and subsequently to Defendants. The Trustee has also alleged the necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer Defendants received. At this stage of the litigation, nothing more is required. Defendants' arguments that the Trustee must show a dollar-for-dollar accounting at the pleading stage or that the Trustee's claims are implausible under some fact-bound and undisclosed tracing methodology are inappropriate on a motion to dismiss.

The Trustee respectfully requests that the Court deny the Motion.

## STATEMENT OF FACTS

## I.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS

Madoff founded and operated BLMIS from New York until its collapse in 2008. *See* Complaint ("Compl.") ¶ 25. BLMIS had three principal business units: (i) a proprietary trading business; (ii) a market-making business; and (iii) an investment advisory business (the "IA Business"). *Id.* For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy (the "SSC Strategy"), which involved (a) investing in a basket of common stocks from the Standard & Poor's 100 Index, (b) buying put options and selling call options to hedge against price changes in the underlying basket of stocks, and (c) purchasing U.S. treasury bills when the money was out of the market. *Id.* ¶¶ 26-27. In reality, BLMIS operated a Ponzi scheme through its IA Business. *Id.* ¶¶ 16-17; 28-35. On December 11, 2008, Madoff's fraud was

publicly revealed, and he was arrested for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. *Id.* ¶ 11.

The extent of damage Madoff caused was made possible by BLMIS "feeder funds"—large investment funds created for the express purpose of funneling investors' funds into BLMIS. *See Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171, 179 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S.Ct. 1209 (2022) ("*Citibank*"). Defendants invested in the Fairfield Funds, which they knew were Madoff feeder funds. *See* Compl. ¶¶ 6, 36.

## II.    THE FAIRFIELD FUNDS

The Fairfield Funds were managed and controlled by the Fairfield Greenwich Group, a *de facto* partnership with its principal place of business in New York. *See* Compl. ¶ 6; *Fairfield Inv. Fund*, 2021 WL 3477479, at *9. Fairfield Sentry was a U.S. dollar-denominated fund that invested 95% of its assets with BLMIS. Compl. ¶ 2. Fairfield Sigma invested 100% of its assets in Fairfield Sentry. *See id.*

Following BLMIS's collapse, the Trustee filed an adversary proceeding in this SIPA liquidation proceeding against the Fairfield Funds and related defendants to avoid and recover fraudulent transfers of stolen customer property in the amount of approximately $3 billion. *Id.* ¶ 37. In 2011, the Trustee settled with Fairfield Sentry, Fairfield Sigma and others. *Id.* ¶ 42. As part of the settlement, Fairfield Sentry consented to a judgment in the amount of $3.054 billion but repaid only $70 million to the BLMIS estate. *Id.*[5] The Trustee then commenced a number of adversary proceedings to recover the approximately $3 billion in missing customer property, including the above-captioned matter against Defendants.

---

[5] Fairfield Sigma separately consented to a judgment in the amount of $752.3 million. *See Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. July 13, 2011), ECF No. 110.

III.    **THE DEFENDANTS**

Defendants invested in and received redemptions from the Fairfield Funds beginning in 2003, if not earlier.  Compl. ¶¶ 43-55.  At the time Defendants received subsequent transfers of BLMIS customer property, Defendants were part of Barclays PLC Group, a global financial services provider engaged in wealth management and retail, corporate, and investment banking. *Id*. ¶ 3.

## ARGUMENT

I.    **SECTION 546(e) DOES NOT BAR RECOVERY FROM DEFENDANTS**

In *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* No. 12-MC-115, 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) (Rakoff, J.) ("*Cohmad*"), the District Court held that a transferee's actual knowledge of Madoff's fraud precluded application of the Section 546(e) safe harbor, thereby allowing the Trustee to avoid transfers made by BLMIS prior to the two-year period referenced in Section 548(a)(1)(A).  As discussed below, Defendants' argument that Section 546(e) bars recovery from Defendants as to these non-two-year transfers must be rejected because Defendants misinterpret *Cohmad* and because law of the case dictates otherwise.

A.    **Fairfield Sentry Had Actual Knowledge of Madoff's Fraud**

To begin with, Defendants set forth at length the requirements of Section 546(e) and how they are presumably met in this case in multiple ways with respect to the initial transfers to Fairfield Sentry, as established by *Cohmad*.  *See* Motion at 16-17, 21.  None of this matters, however, because, as Defendants acknowledge, this Court has previously found that the Trustee has sufficiently pled that the initial transferee Fairfield Sentry had actual knowledge of Madoff's fraud and that such initial transfers are avoidable.  *See id.* at 25 (citing *Fairfield Inv. Fund*, 2021 WL 3477479, at *4-5).  As such, Section 546(e) does not bar recovery of those transfers from Defendants, regardless of whether the Fairfield Funds or Defendants qualify as financial

institutions, their agreements qualify as securities contracts, or their transfers qualify as settlement payments.[6]   The Trustee therefore focuses his response on Defendants' erroneous arguments regarding the actual knowledge exception and its application here.

**B.**    **Defendants Are Bound by the Actual Knowledge Exception Established in _Cohmad_**

In a footnote, Defendants preserve their right to argue on appeal that _Cohmad_ is wrong. Motion at 27 n.22.   _Cohmad_ was issued in connection with consolidated proceedings before the District Court as to the application of Section 546(e).   The District Court then remanded the relevant cases back to this Court, and this Court has since applied the actual knowledge "exception" on several occasions.[7]   Defendants participated in those District Court proceedings.[8] As such, Defendants are bound by _Cohmad_ and that decision is law of the case.   _See, e.g._, _Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC_, 531 B.R. 439, 466 (Bankr. S.D.N.Y. 2015) ("Those moving defendants that participated in the withdrawal of the reference of the antecedent debt/value issue have had their day in court and Judge Rakoff's decisions are law of the case."); _Picard v. Lowrey_, 596 B.R. 451, 463 (S.D.N.Y. 2019), _aff'd sub nom. Picard v. Gettinger_, 976

---

[6] Though not necessary to the Court's analysis, we note that Defendants' argument that the Trustee is in privity with the Fairfield liquidators and therefore bound by any rulings in the Fairfield liquidation is incorrect.   _See_ Motion at 23 n.20.   Defendants cite no relevant authority for this argument because none exists.   For example, _New Hampshire v. Maine_, 532 U.S. 742 (2001), does not even involve non-party preclusion.   And if _Taylor v. Sturgell_, 553 U.S. 880 (2008), "stands for anything, it is for the need to narrow and regularize the use of preclusion against nonparties." _Krys v. Sugrue (In re Refco Inc. Sec. Litig.)_, No. 07-MD-1902 (JSR), 2013 WL 12191844, at *11 (S.D.N.Y. Mar. 25, 2013).

[7] _See, e.g., Fairfield Inv. Fund_, 2021 WL 3477479, at *4 (applying actual knowledge exception); _Picard v. Square One Fund Ltd._, Bench Ruling on Motion to Dismiss, Adv. Pro. No. 10-04330 (Bankr. S.D.N.Y. May 29, 2018) (same); _Picard v. Magnify, Inc._, 583 B.R. 829, 841 (Bankr. S.D.N.Y. 2018) (same); _Picard v. Mendelow_, 560 B.R. 208, 225 (Bankr. S.D.N.Y. 2016) (same); _Picard v. Avellino_, 557 B.R. 89, 112 (Bankr. S.D.N.Y. 2016) (same); _Picard v. Shapiro_, 542 B.R. 100, 112 (Bankr. S.D.N.Y. 2015) (same); _Picard v. Ceretti_, No. 09-01161 (SMB), 2015 WL 4734749, at *13 (Bankr. S.D.N.Y. Aug. 11, 2015) (same); _Picard v. Merkin_, 515 B.R. 117, 140-41 (Bankr. S.D.N.Y. 2014) (same).

[8] _See Picard v. Barclays Bank (Suisse) S.A._, Adv. Pro. No. 11-02569, Memorandum of Law in Support of the Barclays Defendants' Motion to Withdraw the Reference to the Bankruptcy Court ("Motion to Withdraw the Reference"), ECF No. 12, at 9-10 (Bankr. S.D.N.Y. filed March 13, 2012) (raising Section 546(e) as a grounds for withdrawal, among other grounds).

F.3d 184 (2d Cir. 2020), *cert. denied sub nom. Gettinger v. Picard*, 141 S. Ct. 2603, 209 L. Ed. 2d

736 (2021) (law of the case doctrine foreclosed relitigation of issue where the district court

"considered and rejected the very arguments that defendants now make"). Defendants also did not

seek leave to appeal the *Cohmad* decision.

C.    **Defendants Are Also Precluded From Arguing That Section 546(e) Applies Independently to Recovery Actions**

Defendants argue that this Court should disregard Fairfield Sentry's actual knowledge and

that the Trustee must instead allege the actual knowledge of Defendants themselves in order to

invoke the actual knowledge exception to Section 546(e). Specifically, Defendants argue that

under *Cohmad*, the Fairfield Sentry Articles of Association operate as the relevant "securities

contract" in lieu of BLMIS's account agreement with Fairfield Sentry, and as such, in these Section

550 recovery actions, the Court must look solely to the *subsequent transferee's* actual knowledge

to determine whether the initial transfer is avoidable. Motion at 17-20, 24-27. But *Cohmad* does

not stand for this proposition, and Defendants' argument is little more than a repackaging of the

previously rejected argument that the Section 546(e) safe harbor should independently apply to

recovery actions under Section 550.

Under its plain language, Section 546(e) applies to the avoidance of initial transfers, not

the recovery of subsequent transfers under Section 550. *See* 11 U.S.C. § 546(e) ("Notwithstanding

sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer*

. . . except under section 548(a)(1)(A) of this title.") (emphasis added); *Picard v. BNP Paribas S.A.

(In re BLMIS)*, 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) ("*BNP*") ("The Trustee does not . . .

'avoid' the subsequent transfer; he recovers the value of the avoided initial transfer from the

subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery

claims under section 550."); *Kelley v. Safe Harbor Managed Acct. 101, Ltd.*, No. 20-3330, 2022

WL 1177748, *3 n.5 (8th Cir. Apr. 21, 2022) ("*SHMA*") (citing *BNP*).

This limitation on the safe harbor to avoidance actions is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 501 B.R. 26, 30 (S.D.N.Y. 2013) (Rakoff, J.). It is also consistent with the understanding that the Bankruptcy Code's avoidance provisions protect against depletion of a debtor's estate, while Section 550 is merely a "utility provision," intended to help execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place." *See In re Picard,* 917 F.3d 85, 98 (2d Cir. 2019).

*Cohmad* confirmed that Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees. The District Court withdrew the reference on whether Section 546(e) barred recovery of a subsequent transfer pursuant to Section 550.[9] However, in its decision, the court specifically limited the safe harbor to avoidance claims based on the plain language of Section 546(e). *See Cohmad*, 2013 WL 1609154, at *4, *9 (applying the "plain terms" of Section 546(e)); at *7 (recognizing that subsequent transferees can raise initial transferees' defenses to *avoidance*); and at *10 ("[B]oth initial transferees and subsequent transferees are entitled to raise a defense based on the application of Section 546(e) to the *initial* transfer from Madoff Securities.") (emphasis added). And though the court hypothesized, in *dicta*, that a subsequent transferee's subscription agreements with the initial transferee feeder fund, and related agreements and transactions, might under certain circumstances constitute relevant "securities contracts," and that certain subsequent transferee defendants might qualify as "financial institutions" or "financial participants," the decision is clear that the focus of

---

[9] *See* Section 546(e) Briefing Order, *In re Madoff Sec.*, 12-MC-115 (S.D.N.Y. filed May 16, 2012), ECF No. 119 (withdrawing the reference on issue of "whether application of Section 546(e) to an initial or mediate Transfer bars recovery by the Trustee of any subsequent Transfer pursuant to Section 550").

the safe harbor is still on the *initial* transfers. *See id.* at \*9 ("[T]he question . . . is whether the Trustee has alleged that that *initial transfer* was made in connection with (*i.e.,* related to) a covered securities contract . . . .") (emphasis added).[10]

Consistent with *Cohmad*, this Court held in *BNP* that Section 546(e) is applicable only to avoidance and not recovery, and most notably that a subsequent transferee cannot assert the protections of Section 546(e) where the Trustee has adequately pled the initial transferee's actual knowledge. *See BNP*, 594 B.R. at 197; *see also In re SunEdison, Inc.*, 620 B.R. 505, 514 (Bankr. S.D.N.Y. 2020) ("the safe harbor defense only applies by its terms to the initial transfer"). In *BNP*, this Court explicitly rejected the argument being made here—that the "*only* way the Trustee can escape the application of Section 546(e) here is by pleading with particularity and plausibility that the [subsequent transferee defendants] actually knew of the Madoff Ponzi scheme." *BNP*, 594 B.R. 196-97 (emphasis in original). Like *Cohmad*, *BNP* is law of the case, and Defendants are bound by both decisions.

Defendants nevertheless seek to relitigate this point, arguing that to the extent this Court relies on the feeder fund agreements as the relevant "securities agreements" in accordance with *Cohmad*, it must then look only to the actual knowledge of the subsequent transferee. Motion at 25-27.[11] But as stated above, the District Court did not conclude this, nor did it state that the actual

---

[10] For this same reason, *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 339 (2d Cir. 2011) (Motion at 20), which the District Court cited in *Cohmad* solely to support its reading of what constitutes a "securities contract," does not change this outcome. The focus is still on the initial transfers, which for purposes of Section 546(e) are the transfers from BLMIS to its feeder funds. *See Picard v. Ida Fishman Revocable Trust (In re BLMIS)*, 773 F.3d 411, 422-23 (2d Cir. 2014).

[11] Defendants also contend that, by alleging that the subsequent transfers were customer property, the Trustee has conceded that the initial transfers were "in connection with" the Fairfield Sentry Articles of Association. Motion at 17-18. However, showing that the subsequent transfers can be traced through the "relevant pathways" to the initial transfers—which issue is analyzed *infra*—is entirely irrelevant to the issue of whether the initial transfers were "in connection with" any transaction or contract between the Fairfield Funds and Defendants for purposes of applying the securities safe harbor.

knowledge exception should be applied any differently even if the feeder fund agreements were to be used for Section 546(e). Indeed, such an interpretation would effectively eliminate the point of the actual knowledge exception—which is to restrict any transferee with actual knowledge from hiding behind the safe harbor. *See Cohmad*, 2013 WL 1609154, at *3 (explaining that defendants who knew BLMIS was a Ponzi scheme "must have known that the transfers they received directly or indirectly from Madoff Securities were not 'settlement payments'"). Specifically, adopting Defendants' position means the safe harbor would apply even where the initial transferee feeder fund knew there were no securities transactions in need of protection. It would moreover allow an initial transferee—who had knowledge of the fraud and was unable to satisfy a judgment (like Fairfield Sentry)—to place fraudulently transferred monies with a subsequent transferee and out of the reach of a trustee.

Expanding the safe harbor as Defendants propose would also result in subsequent transferees being afforded more protection as to avoidance than the initial transferee itself, which does not reflect Congress' intent. *See Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.)*, 343 B.R. 75, 82 (Bankr. S.D.N.Y. 2006), *rev'd on other grounds and remanded sub. nom In re Enron Creditors Recovery Corp.*, 388 B.R. 489 (S.D.N.Y. 2008) ("Upon consideration of the initial transferee's defenses and once the amount of its liability is established, that amount can be sought from any of the transferees, including subsequent transferees, subject to any of their additional defenses."). As the Eighth Circuit pointed out in *SHMA* while citing *BNP*, under Section 546(e), "a subsequent transferee is protected *indirectly* to the extent that the initial transfer is not avoidable because of the safe harbor." 2022 WL 1177748, at *3 n.5 (cleaned up; emphasis added). Conversely, providing subsequent transferees with the same defenses to avoidance of the initial transfers as are available to the initial transferee does not unfairly bias subsequent transferees.

*Cohmad*'s holding that subsequent transferees with actual knowledge are prohibited from using the safe harbor to protect themselves against recovery of transfers they received also does not support Defendants' position.  *See* Motion at 26.  That holding does not require a trustee to plead a subsequent transferee's actual knowledge.  Rather, it merely ensures that any defendant that *doe*s have actual knowledge, including a subsequent transferee, is prohibited from using the safe harbor, such that the purpose of the actual knowledge exception is achieved consistently.  *See Cohmad*, 2013 WL 1609154, at *1, *7 ("A defendant cannot be permitted to in effect launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of Section 546(e).").  A holding that subsequent transferees with actual knowledge are limited in their use of the safe harbor to the *same extent* as initial transferees does not justify affording subsequent transferees without actual knowledge expanded protections that are *greater than* those afforded initial transferees.

Finally, this Court's *Fairfield Inv. Fund* decision also does not demand a different result. As Defendants point out, in that case, this Court analyzed the actual knowledge of five different subsequent transferees, dismissing the individual claims against one of them.  Motion at 25-26. However, there, the subsequent transferees were administrators and partners of the Fairfield Greenwich Group, and their actual knowledge was being analyzed for purposes of imputing it to the initial transferee feeder funds.  *Fairfield Inv. Fund*, 2021 WL 3477479, at *4-7.  That case was also decided at a time when the burden of pleading lack of good faith was on the Trustee,[12] and the Court dismissed the individual claims against the relevant subsequent transferee (including two-year transfers not protected by Section 546(e)) after determining the Trustee's allegations as to both actual knowledge and willful blindness were insufficient.  *Id*. at *7-8, 15.  The "focus" of

---

[12] *See Citibank*, 12 F.4th at 195-200 (holding Trustee does not have burden of pleading lack of good faith).

the Section 546(e) argument in *Fairfield Inv. Fund* was on the initial transfer and whether the

Trustee had sufficiently pled the *initial transferee's* actual knowledge, and the Court did not

analyze the issue of whether a subsequent transferee's actual knowledge is separately required to

defeat the application of Section 546(e).

## II.    THE TRUSTEE HAS ADEQUATELY ALLEGED ACTUAL FRAUDULENT INTENT UNDER SECTION 548(a)(1)(A) OF THE BANKRUPTCY CODE

Defendants next argue that the Two-Year Transfers are also not avoidable or recoverable,

because the Trustee has failed to adequately allege BLMIS's "actual intent to hinder, delay or

defraud" creditors under Section 548(a)(1)(A) of the Bankruptcy Code.  Defendants contend that

the Complaint lacks particularized allegations of BLMIS's actual fraudulent intent as required by

Rule 9(b), and that the Trustee instead improperly relies on the "Ponzi scheme presumption."

Motion at 28-30.  Under this presumption, "the existence of a Ponzi scheme demonstrates actual

intent as [a] matter of law because transfers made in the course of a Ponzi scheme could have been

made for no purpose other than to hinder, delay or defraud creditors."  *Citibank*, 12 F.4th at 181

(citing *Picard v. Estate (Succession) of Igoin (In re BLMIS)*, 525 B.R. 871, 892 n.21 (Bankr.

S.D.N.Y. 2015)).   Defendants' argument as to the Ponzi scheme presumption falls flat.  Actual

intent has already been repeatedly determined to exist in the Trustee's cases by virtue of the Ponzi

scheme presumption.[13]  And the Complaint alleges numerous facts supporting that BLMIS was a

---

[13] *See, e.g., Picard v. Sage Realty*, No. 20-CV-10109, 2022 WL 1125643, at \*27-28 (S.D.N.Y. Apr. 15, 2022) (JFK) (concluding Trustee has established actual intent to defraud pursuant to Ponzi scheme presumption); *Picard v. Fairfield Pagma Assocs., LP*, Adv. Pro. No. 10-05169, 2022 WL 1110560, at \*3 (Bankr. S.D.N.Y. Apr. 13, 2022) (finding actual "intent to defraud is established as BLMIS operated a Ponzi scheme," at summary judgment stage); *In re Bernard L. Madoff Inv. Sec. LLC*, No. 1:21-cv-02334-CM, 2022 WL 493734, at \*17-18 (S.D.N.Y. Feb. 17, 2022) (holding that "Trustee is entitled to the benefit of the Ponzi scheme presumption, and so can prove fraudulent intent as a matter of law"); *Picard v. Lisa Beth Nissenbaum Trust*, No. 20 cv. 3140 (JGK), 2021 WL 1141638, at \*11 (S.D.N.Y. Mar. 24, 2021) ("There is no genuine dispute of material fact that BLMIS operated a Ponzi scheme.  The breadth and notoriety of the Madoff Ponzi scheme leave no basis for disputing the application of the Ponzi scheme presumption to the facts of this case, particularly in light of Madoff's criminal admission.") (citations and quotation marks omitted); *Picard v. Ken-Wen Fam. Ltd. P'ship*, Adv. Pro. No. 10-04468 (CGM), 2022 WL 709768, at \*3 (Bankr. S.D.N.Y. Mar. 9, 2022) ("Intent to defraud is established as Madoff operated a Ponzi scheme."); *Picard v. Gerald & Barbara Keller Fam. Trust*, 634 B.R. 39, 47 (Bankr. S.D.N.Y. 2021) (same); *Picard v. Nelson*, 610 B.R.

Ponzi scheme, including that the money received from investors was used to pay off other investors—the *sine qua non* of a Ponzi scheme. Compl. ¶¶ 16-17, 25-35.

The Ponzi scheme presumption has moreover been embraced by federal courts generally in this jurisdiction. *See, e.g., In re Bayou Grp., LLC*, 439 B.R. 284, 307 (S.D.N.Y. 2010) (holding that the Ponzi scheme presumption was "fully applicable" to establish actual fraudulent intent); *Armstrong v. Collins*, No. 01-cv-2437, 2010 WL 1141158, at *20 (S.D.N.Y. Mar. 24, 2010) ("In considering claims of actual fraud, 'courts have widely found that Ponzi scheme operators necessarily act with actual intent to defraud creditors due to the very nature of their schemes.'") (citation omitted); *Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 11 (S.D.N.Y. 2007) ("the Ponzi scheme presumption remains law of this Circuit"); *Drenis v. Haligiannis*, 452 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2006) (complaint adequately alleged actual intent under New York state law equivalent of Section 548(a)(1)(A) where complaint alleged defendants perpetrated a Ponzi scheme); *In re Dreier LLP*, 452 B.R. 391, 425 (Bankr. S.D.N.Y. 2011) (noting that courts in this jurisdiction and elsewhere have "uniformly recognized" the Ponzi scheme presumption); *Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.)*, 310 B.R. 500, 506 (Bankr. S.D.N.Y. 2002) (citing cases holding that debtor operating a Ponzi scheme presumed to have made transfers with fraudulent intent). Defendants ask this Court to disregard all of the above decisions.

Defendants concede, as they must, that the Ponzi scheme presumption has been "repeatedly" applied by this Court and the District Court in the Trustee's actions and do not attempt to rebut that law of the case applies. Motion at 28-29. Nevertheless, Defendants urge this Court

---

197, 235 (Bankr. S.D.N.Y. 2019) ("[T]he Trustee has established that the Two-Year Transfers were made with actual intent to defraud under the Ponzi scheme presumption."); *see also Gettinger*, 976 F.3d at 188 (in which the Second Circuit noted that the case "arises out of the infamous Ponzi scheme perpetrated by Bernard L. Madoff" (footnote omitted)).

to disregard this settled principle in light of a singular statement by a Circuit Judge in a concurring opinion to the Second Circuit's *Citibank* decision, in which that Judge questioned the Ponzi scheme presumption as it applied to the facts in that case. *See Citibank*, 12 F.4th at 202 (Menashi, J., concurring). However, the District Court recently recognized that, "[n]otwithstanding Judge Menashi's concerns, 'the Ponzi scheme presumption remains law of this Circuit.'" *See Sage Realty*, 2022 WL 1125643, at *28 (citing *In re Manhattan Inv. Fund Ltd.*, 397 B.R. at 11). Moreover, *dicta* in a concurring opinion has no precedential effect, and it certainly does not constitute an intervening change of controlling law or provide any other "cogent" or "compelling" reasons to depart from the law. *See Johnson v. Holder*, 564 F.3d 95, 99-100 (2d Cir. 2009) ("We may depart from the law of the case for 'cogent' or 'compelling' reasons including an intervening change in law, availability of new evidence, or 'the need to correct a clear error or prevent manifest injustice.'") (citing *United States v. Quintieri*, 306 F.3d 1217, 1230 (2d Cir. 2002)); *Cohen v. UBS Fin. Servs., Inc.*, No. 12-CV-02147, 2014 WL 240324, at *4 (S.D.N.Y. Jan. 22, 2014) (preceding decision was not considered "intervening change in controlling law" when relevant finding was "mere dicta"); *Preterm-Cleveland v. McCloud*, 994 F.3d 512, 531 (6th Cir. 2021) (recognizing that concurring opinion, "being dicta, creates no controlling law"); *Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller,* 957 F.2d 1575, 1578 (11th Cir. 1992) (recognizing that dicta was "neither the law of the case nor binding precedent").

Defendants attempt to cast doubt on the presumption's validity by citing a handful of inapplicable cases. *Finn v. All. Bank*, 860 N.W.2d 638, 647 (Minn. 2015) concluded that the presumption did not apply purely as a matter of Minnesota state law. *Lustig v. Weisz & Assocs., Inc. (In re Unified Com. Cap., Inc.)*, 260 B.R. 343, 350-54 (Bankr. W.D.N.Y. 2001), addressed avoidance of a fraudulent conveyance under a *constructive fraud* theory in connection with a Ponzi

14

scheme, without even mentioning the presumption as it applies to an *actual fraud* theory. Neither of the foregoing cases rejects the presumption as it applies to Section 548(a)(1)(A) of the Bankruptcy Code. And though Defendants cite *Merrill v. Abbott (In re Indep. Clearing House Co.),* 77 B.R. 843, 860 (D. Utah 1987) to infer that the presumption applies only where the Ponzi scheme operator is looking to attract new investors (Motion at 29-30), the court there did not limit the inference to that situation.

Defendants also cite to *Sharp International Corp. v. State Street Bank & Trust Co.*, 403 F.3d 43 (2d Cir. 2005), but multiple courts have also explained why the Ponzi scheme presumption does not contravene the Second Circuit's decision in that case. *See, e.g., Dreier*, 452 B.R. at 425 (rejecting argument that *Sharp* eliminated the Ponzi scheme presumption because "*Sharp* did not involve a Ponzi scheme and the Second Circuit did not discuss or refer to the Ponzi scheme presumption or Ponzi schemes in general"); *In re Manhattan Inv. Fund Ltd.*, 397 B.R. at 11 ("*Sharp* does not dispose of the Ponzi scheme presumption. At most, it simply means that courts must be sure that the transfers sought to be avoided are related to the scheme.").

Finally, even if this Court were to entertain Defendants' arguments as to the Ponzi scheme presumption, the Trustee has in any event satisfied Rule 9(b). Numerous courts have found that BLMIS's actual intent to defraud has been established independent of the presumption, based on the same "badges of fraud" as alleged in the Complaint, such as, among others, the concealment of facts by BLMIS, BLMIS's insolvency, and the lack of consideration provided for BLMIS's fictitious transfers to customers (Compl. ¶¶ 16-17, 25-35). *See Picard v. JABA Assocs. LP*, No. 20-CV-3836, 2021 WL 1112342, at *14-15 (S.D.N.Y. Mar. 24, 2021) ("[T]he existence of the badges of fraud supply a separate basis to conclude that the Two-Year Transfers were made with the actual intent to defraud.") (quoting *Nelson*, 610 B.R. at 235); *Lisa Beth Nissenbaum Trust*,

2021 WL 1141638, at *15 (same). In light of these and the other allegations detailing Madoff's

fraud, it is also particularly difficult to take seriously Defendants' suggestion that based on the

Complaint, the initial transfers could have been made by BLMIS to "merely honor[] its contractual

commitments to Fairfield Sentry." Motion at 28.

## III.    THE TRUSTEE SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE INITIAL TRANSFERS

Defendants next attack the Trustee's incorporation by reference of the allegations in the

Fairfield Amended Complaint as to the avoidability of the initial transfers. Motion at 30-33; *see*

*also* Fairfield Amended Complaint, *Picard v. Fairfield Inv. Fund*, 09-01239 (CGM) (Bankr.

S.D.N.Y. July 20, 2010), ECF No. 23. The Complaint alleges that "the Trustee incorporates by

reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein."

Compl. ¶ 37. Defendants argue that this incorporation by reference under Rule 10(c) places an

"unjustified burden" on Defendants to "decipher[] the basic elements" of the Trustee's avoidance

claim. *See* Motion at 32 n.27. They also profess that they have not had fair notice under Rule 8

that the Trustee is seeking to avoid the initial transfers. *Id.* at 32-33. However, there is no doubt

that the Trustee may incorporate by reference a complaint filed in a different adversary proceeding

within the same SIPA liquidation proceeding, and that he has done so properly here. In any event,

the Court may take judicial notice of its own decision on the avoidability of the initial transfers or

allow the Trustee the opportunity to replead.

### A.    The Incorporated Material Complies With Rules 10 and 8

#### 1.    *All adversary proceedings are part of the main case for purposes of Rule 10(c)*

Rule 10(c), made applicable by Federal Rule of Bankruptcy Procedure 7010, allows the

incorporation of other pleadings by reference. Rule 10(c) is intended to "facilitate pleadings that

are 'short, concise, and free of unwarranted repetition,' as well as to promote 'convenience' in

16

pleading." *Morrison v. Off. of the U.S. Tr. (In re Morrison)*, 375 B.R. 179, 193 (Bankr. W.D. Pa. 2007) (quoting 5A Alan Wright & Arthur R. Miller, Federal Practice & Procedure) ("Wright & Miller") at § 1326 (3d ed. 2007)).

In the bankruptcy context, all adversary proceedings filed under the umbrella of a single bankruptcy case are considered to be one action for purposes of Rule 10(c). *See Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010). In *Geiger*, a bankruptcy court allowed incorporation by reference of pleadings filed in a different adversary proceeding within the same Chapter 7 case because the pleadings "directly relate[d] to, materially affect[ed], and [were] filed in a single bankruptcy case." *Id.* This is so because the bankruptcy case is "an umbrella under which all actions concerning [the] estate must be brought pursuant to the Bankruptcy Rules." *Id.*

Indeed, the District Court has already found sufficient the Trustee's incorporation by reference of his initial transferee complaints—including the Fairfield Amended Complaint—in the Trustee's subsequent transfer actions:

> [The] Trustee's complaint against [the subsequent transfer defendant] incorporates by reference the complaints against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. . . . Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).

*In re Madoff Sec.*, 501 B.R. at 36. The District Court issued this decision as a result of a withdrawal of the reference on certain Section 550(a) issues, as sought by numerous subsequent transfer defendants, including Defendants. *See* Motion to Withdraw the Reference, ECF No. 12. This decision allowing for incorporation by reference is thus law of the case as to Defendants. *See Lowrey*, 596 B.R. at 463-64.

2.    *Incorporation is permitted where it achieves the purpose of Rule 10(c)*

Even if the Court were to find that the adversary proceedings are not one action for purposes of Rule 10(c), the Court still can permit incorporation by reference. Although Defendants suggest that a party cannot incorporate pleadings from other actions under any circumstances, Motion at 31, Rule 10(c) is not so limited. The Southern District of New York and other federal courts have permitted incorporation by reference of pleadings in separate actions in appropriate circumstances. *See Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 323 n.5 (S.D.N.Y. 2007) (citation omitted) (interpreting Rule 10(c)'s reference to "another pleading" as not being confined to another pleading in the same action, and permitting incorporation of entire pleadings in separate cases); *Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC*, 843 F. Supp. 2d 191, 214 n.15 (D. Mass. 2012) (holding incorporation by reference appropriate where "the court [was] familiar with the filings in the other [] case[], which [were] substantially similar to [that] case, and the usual concerns about inferring arguments from other submissions have less force.").

Cases cited by Defendants are inapposite because in those cases, unlike in this one, plaintiffs were incorporating pleadings in separate actions by reference in an attempt to add brand new claims. *See, e.g., United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 461-66 (E.D.N.Y. 2007) (holding that the government improperly incorporated by reference various pleadings from numerous prior civil and criminal actions in order to plead entirely new claims not otherwise alleged in complaint, and where complaint did not expressly incorporate the pleadings); *Davis v. Bifani*, No. 07-cv-00122-MEH-BNB, 2007 WL 1216518, at *1 (D. Colo. Apr. 24, 2007) (holding that plaintiff could not incorporate by reference additional claims in parallel state-court action that were not alleged in the federal-court complaint); *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803, at *4 (E.D.N.Y. Mar. 26, 2010) (incorporation by reference of "subject matter" of separate pleading "alluding to" evidence

of willful infringement was improperly incorporated by reference into complaint for purposes of stating new willful infringement claim).  As recognized by those courts, incorporation in those cases would have led to confusion or a lack of notice of the claims asserted via the incorporated complaints.  By contrast, the Trustee is not seeking to add additional claims, and as discussed *infra*, Defendants would be hard pressed to argue they lacked notice that the Trustee was seeking to avoid the initial transfers to Fairfield Sentry.[14]

Here, the Trustee references only one other pleading—the initial transfer Fairfield Amended Complaint—and the incorporation is direct and explicit, with its purpose obvious.  To be sure, the incorporation is in the section of the Complaint labeled "Initial Transfers From BLMIS to Fairfield Sentry" and follows allegations relating to the Trustee's avoidance claims in the Fairfield Amended Complaint.  *See* Compl. ¶ 37.  The purpose of this incorporation is thus clear. *See* Wright & Miller § 1326 ("If the incorporation is clear, less emphasis need be placed on the source of the incorporated material."); *Whitaker Sec., LLC v. Rosenfeld (In re Rosenfeld)*, 543 B.R. 60, 66 (Bankr. S.D.N.Y. 2015) (noting that some courts fear incorporation by reference will not provide adequate notice as to claims or factual allegations, but allowing incorporation because "there is no danger of prejudice").

Moreover, contrary to Defendants' "lack of fair notice" arguments, reference to the Fairfield Amended Complaint provides notice of avoidability of initial transfers in a manner that avoids repetition and over-complication.  Courts have noted that "[t]he ability to incorporate matters from other pleadings is especially useful in multiparty litigation when the presence of

---

[14] In the other cases cited by Defendants, the information plaintiffs sought to incorporate was even more irrelevant, such as affirmative defenses in answers filed by defendants in other actions (*Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*, No. 13 CIV. 6705 (DLC), 2014 WL 1673351, at *9 (S.D.N.Y. Apr. 28, 2014)), unidentified "evidence" submitted in another action separate and apart from any pleadings (*Muhammad v. Bethel-Muhammad*, No. CIV.A. 11-0690-WS-B, 2012 WL 1854315, at *3 n.5 (S.D. Ala. May 21, 2012)), and arguments in a previously filed motion to dismiss (*Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212, 215 (D. Mass. 1995)).

common questions often results in the pleadings of the parties on the same side of the litigation being virtually identical, which makes employing simple incorporations by reference highly desirable." *Sherman*, 528 F. Supp. 2d at 323 n.5 (citing Wright & Miller § 1326); Wright & Miller § 1326 n.1 ("Adoption by reference avoids overly long or complicated pleadings.").

3. <u>*The Trustee's allegations are sufficient under Rule 8*</u>

Defendants also contend that incorporation of the Fairfield Amended Complaint fails under Rule 8(a)(2)'s requirement that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Motion at 32-33. Defendants, however, ignore the purpose of the incorporation in the Complaint: to make a *prima facie* showing that the initial transfers are avoidable under Section 548(a) so that the Trustee can recover from Defendants under Section 550(a). *See Citibank,* 12 F.4th at 196-97 (holding that "if a trustee establishes a *prima facie* case under the fraudulent transfer provisions, then he or she is entitled to recovery unless the transferee can establish an *affirmative defense*") (citation removed) (emphasis in original). Defendants fret that they "might have to respond, paragraph-by-paragraph, to the allegations in the Fairfield Amended Complaint" that are "extraneous" to the issues in this case. Motion at 32 n.27. Not so. In the Complaint, the Trustee makes specific allegations regarding Defendants' liability under Section 550(a) throughout, and only incorporates the Fairfield Amended Complaint—as part of one paragraph—in pleading the avoidability of the initial transfers. Defendants can admit the allegations of the avoidability of the initial transfers, deny them, or respond that they do not have sufficient information to admit or deny. This places no undue burden on Defendants in responding to the Trustee's claims against them.

Doing as Defendants seem to suggest—repleading all initial transfer allegations—does nothing to provide a "short and plain statement" and would unnecessarily add countless pages to the Complaint. Such duplication is unnecessary in pleading recovery under Section 550, *see In re*

*Madoff Sec.*, 501 B.R. at 36, and inconsistent with the purpose of Rule 8. In addition, until a motion to dismiss is filed, it is not clear whether a particular subsequent transferee defendant would even challenge avoidability of initial transfers, and therefore adding such allegations would instead create unwarranted repetition and length at the complaint stage.

### B.    The Court Can Take Judicial Notice of the *Fairfield Inv. Fund* Decision

Defendants' arguments about incorporation are really much ado about nothing. Regardless of incorporation, this Court may take judicial notice of the operative Second Amended Complaint against Fairfield and its recent decision holding that this complaint sufficiently alleged the avoidability of the initial transfers from BLMIS. *See Fairfield Inv. Fund*, 2021 WL 3477479 at *4. On a motion to dismiss, "a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*." *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011). "Included among such matters are decisions in prior lawsuits." *DeMasi v. Benefico*, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008). As Defendants themselves recognize, judicial notice of pleadings in other actions is appropriate to show that a complaint has "alleged sufficient facts" to support the plaintiff's claims. Motion at 18 n. 16 (citing *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000)). Finally, the fact that the noticed Second Amended Complaint was filed after this Complaint against Defendants is of no consequence. *See Rothman*, 220 F.3d at 91-92 (noticing later filed complaint in related proceeding).

### C.    At the Very Least, the Trustee Should Be Afforded the Opportunity to Replead

Should the Court accept Defendants' argument and not take judicial notice of the avoidability of the initial transfers, the Trustee respectfully requests an opportunity to replead. The cases Defendants rely upon make clear that leave to replead extends to complaints that were

dismissed for improperly incorporating other pleadings or motions by reference. *See e.g.*, *Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d at 483 (granting leave to replead). As the Supreme Court has noted, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In addition, the Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)." *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006). The Trustee should thus be afforded his chance to have his claims tested on the merits, and not on the basis of pleading technicalities, particularly where this Court has already found in this same SIPA liquidation proceeding that the avoidability of the Fairfield Sentry transfers has been sufficiently pled.[15]

## IV.    THE COMPLAINT STATES A VALID CAUSE OF ACTION FOR RECOVERY OF BLMIS CUSTOMER PROPERTY UNDER SECTION 550(a)

The Complaint plausibly alleges that Defendants received subsequent transfers of BLMIS customer property. To plead a subsequent transfer claim, the Trustee must allege facts that support an inference "that the funds at issue originated with the debtor." *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149-50 (Bankr. S.D.N.Y. 2014). No tracing analysis is required given that, as Defendants acknowledge (Motion at 33), the pleading burden "is not so onerous as to require 'dollar-for-dollar accounting' of 'the exact funds' at issue." *Id*. at 150 (quoting *Picard v. Charles Ellerin Revocable Trust (In re BLMIS)*, Adv. Pro. No. 10-04398, 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012)). Rather, "the Trustee need only allege sufficient facts to show the relevant pathways through which the funds were transferred from BLMIS to [the subsequent transferee]." *Charles Ellerin Revocable Trust*, 2012 WL 892514, at *3; *see also 45 John Lofts,*

---

[15] Should the Court determine that repleading is warranted here, the Complaint can be amended to address specific paragraphs of the Fairfield Second Amended Complaint as necessary.

*LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019). In addition, the Trustee must allege the "'necessary vital statistics—the who, when, and how much' of the purported transfers to establish an entity as a subsequent transferee of the funds." *Merkin*, 515 B.R. at 150 (quoting *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 32 (Bankr. E.D.N.Y. 2007)).

The Complaint meets these requirements. The Complaint alleges that Defendants received transfers, identified by date and amount, from Fairfield Sentry, and that Fairfield Sentry invested substantially all of its funds with BLMIS. *See* Compl. ¶¶ 2, 37-55; Exs. D, G, I. The Complaint likewise alleges that Defendants received transfers, identified by date and amount, from Fairfield Sigma, and that Fairfield Sigma invested all of its funds with Fairfield Sentry. *See* Compl. ¶¶ 2, 37-55; Ex. E, F. H. In sum, the Complaint plausibly alleges that Defendants received subsequent transfers of customer property by outlining the relevant pathways through which customer property was transferred from BLMIS to the Fairfield Funds and subsequently to Defendants, and provides the necessary vital statistics (*i.e.*, the "who, when, and how much") for each the subsequent transfer. Nothing more is required. *See, e.g.*, *Picard v. Mayer*, Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021) (rejecting argument that "claim has not been plead with enough specificity as to how and what [defendant] received" and holding complaint "contains sufficient information regarding which transfers the Trustee is seeking to recover").

Unable to argue that the Trustee fails to meet the relevant pleading burden, Defendants argue for a new one, asserting that the Trustee must tie each subsequent transfer Defendants received to a specific initial transfer from BLMIS. Motion at 33-34. However, in *Merkin*, this Court refused to dismiss subsequent transfer claims even though the complaint "d[id] not connect

each of the subsequent transfers with an initial, voidable transfer emanating from BLMIS." 515 B.R. at 150; *see also 45 John Lofts, LLC*, 599 B.R. at 747 (finding no "requirement to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss"). And to the extent Defendants are arguing that the Trustee must detail which and what portion of each subsequent transfer comprises customer property, this is also wrong. *See Merkin*, 515 B.R. at 152-53 (refusing to dismiss complaint where "at least some of the subsequent transfers . . . may be recoverable"); *see also Silverman*, 379 B.R. at 30 (finding "if dollar-for-dollar accounting is not required at the proof stage, then surely it is not required at the pleading stage either").

Defendants' reliance on this Court's decision in *Picard v. Shapiro* for its argument is unavailing because *Shapiro* did not change the Trustee's pleading burden. Motion at 33-34 (citing *Picard v. Shapiro (In re BLMIS)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015)). In *Shapiro*, the Trustee alleged that certain trusts and members of the Shapiro family received approximately $54 million in fraudulent transfers from BLMIS, and "upon information and belief," these defendants subsequently transferred this same amount to other defendants. *See Shapiro*, 542 B.R. at 119. However, that complaint *did not detail any* of the necessary vital statistics of the subsequent transfers. *Id*. at 119. There were no allegations regarding the subsequent transferors, the subsequent transferees, or the dates or amounts of the subsequent transfers, and consequently this Court granted defendants' motion to dismiss the subsequent transfer claim. *Id*. Here, where the Trustee has alleged the vital statistics of each transfer Defendants received and sets out the investment relationship between Defendants and the Fairfield Funds, *Shapiro* supports denying the motion to dismiss.

*Angell v. Ber Care, Inc. (In re Caremerica, Inc.)*, 409 B.R. 737 (Bankr. E.D.N.C. 2009), cited by Defendants, is also inapposite. *Caremerica* involved preferential transfers from a non-

debtor bank account where the trustee failed to "rebut the alternative and reasonable possibility that the funds . . . originated from sources other than the debtors." 409 B.R. at 751. The Trustee has no such issue and has identified specific transfers from BLMIS to the Fairfield Funds and from the Fairfield Funds to Defendants.

Defendants' other fact-based tracing arguments fare no better and are inappropriate for a motion to dismiss. First, Defendants claim the transfers they received from the Fairfield Funds comprise subscriptions from other investors. Motion at 34-35. In other words, Defendants argue that Fairfield Sentry commingled customer property with other funds, and this commingling will defeat the Trustee's ability to trace the transfers of customer property from BLMIS. Again, Defendants are wrong. "The law does not place such a difficult burden on trustees. The commingling of legitimate funds with funds transferred from the debtor does not defeat tracing." *Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-cv-1073, 2020 WL 3077151, at *4 (D. Minn. June 10, 2020) (citing *Charles Ellerin Revocable Trust*, 2012 WL 892514, at *2).

Second, Defendants claim that based on their analysis, Fairfield Sentry paid other investors with the customer property it received from BLMIS prior to making any transfers to Defendants. Motion at 35.[16] However, in order to reach this conclusion, Defendants are in effect applying some undisclosed tracing methodology or methodologies of their choosing. But it is for this Court to

---

[16] The declaration of Defendants' counsel (Gottridge Decl.), which applies some undefined tracing methodology to contest the subsequent transfers in this proceeding, serves as nothing more than "an attempt to interject improper expert testimony into a Rule 12(b)(6) context." *Fowler v. Caliber Home Loans, Inc.*, 277 F. Supp. 3d 1324, 1331 (S.D. Fla. 2016) (declining to consider expert testimony in a motion to dismiss). *See also Sass v. Barclays Bank PLC (In re Am. Home Mortg., Holdings, Inc.)*, 501 B.R. 44, 64 (Bankr. D. Del. 2013) (matters subject to factual and expert evidence are "inappropriate to decide on a motion to dismiss"); *Solution Trust v. 2100 Grand LLC (In re AWTR Liquidation Inc.)*, 548 B.R. 300, 334 (Bankr. C.D. Cal. 2016) (assessment of valuation that "almost certainly will require expert testimony" is inappropriate for a motion to dismiss); *In re Viropharma, Inc. Sec. Litig.*, No. 02-Civ.-1627, 2003 WL 1824914, at *2 (E.D. Pa. Apr. 7, 2003) ("The [party's] submission of an expert report at [the motion to dismiss] stage is entirely improper."); *Nappier v. Pricewaterhouse Coopers LLP*, 227 F. Supp. 2d 263, 276 (D.N.J. 2002) (question regarding most applicable accounting practices is "a question of fact best addressed through expert testimony and thus inappropriate for resolution on a motion to dismiss").

decide—after fact and expert discovery—on the appropriate tracing methodology to apply to this case under the circumstances. *See Picard v. Merkin (In re BLMIS)*, 581 B.R. 370, 386 (Bankr. S.D.N.Y. 2017) ("the Court's selection of an appropriate methodology is committed to the Court's discretion"); *Charles Ellerin Revocable Trust*, 2012 WL 892514, at *3, n.7 ("Courts have broad discretion to determine which monies of commingled funds derive from fraudulent sources.") (citing *United States v. Henshaw*, 388 F.3d 738, 741 (10th Cir. 2004) (finding "courts exercise case-specific judgment to select the method best suited to achieve a fair and equitable result on the facts before them")).[17] This argument is also flawed to the extent it relies on the factual assumption that every subsequent transfer that preceded the ones to Defendants was sourced solely by customer property. Neither the Complaint nor its exhibits establish this, and at this stage of the proceedings, the Trustee is not required to plead, much less establish, that an alleged subsequent transfer is comprised solely of customer property. *See Kelley*, 2020 WL 3077151, at *4 (holding that where debtors' funds are commingled with "cash from new subscribing investors," a trustee is not required to establish that the transfers "originated solely" with the debtor or even to account for "the exact funds at issue" on summary judgment).

Moreover, the Trustee is a stranger to the transactions between the Fairfield Funds and Defendants and is entitled to discovery on this issue. "[I]n a case such as this one, where the Trustee's lack of personal knowledge is compounded with complicated issues and transactions [that] extend over lengthy periods of time, the trustee's handicap increases, and even greater latitude should be afforded." *Cohmad*, 454 B.R. at 329 (cleaned up). This is one reason why this Court in *Merkin* denied defendants' motion to dismiss, finding "[t]he subsequent transfer claim

---

[17] The different tracing methodologies include: (1) Last In, First Out (LIFO), (2) First In, First Out (FIFO), (3) Lowest Intermediate Balance Rule (LIBR), (4) Restated Tracing Rules (Restated LIBR), and (5) Proportionality, and these "methodologies reflect legal rules or fictions designed to assist a Court in dealing with an improper transfer from a commingled fund." *Merkin*, 581 B.R. at 386.

must ultimately be proved through the books and records of the defendants." 515 B.R. at 151.[18]
And even after fact and expert discovery, there may be fact disputes that require a trial. For
example, in *Merkin*, this Court denied defendants' motion in limine to exclude the Trustee's
accounting expert, finding expert testimony at trial "may assist the Court in making its own
determination as to the proper methodology." 581 B.R. at 386; *see also Kelley*, 2020 WL 3077151,
at *5 (denying summary judgment because of fact dispute after trustee introduced expert report
and associated documents from which a jury may infer defendants received subsequent transfers
of property from the Petters Ponzi scheme).[19]

Third, Defendants argue that in certain cases they could not have received customer
property because of the amount of time that elapsed between Fairfield Sentry's receipt of certain
initial transfers from BLMIS and Fairfield Sentry's subsequent transfers to Defendants. Motion
at 35-36.[20] This is a variation of Defendants' tracing argument, addressed *supra*, that the Fairfield
Funds transferred BLMIS's customer property to other investors before getting to Defendants. For
the reasons stated above, tracing arguments are inappropriate on a motion to dismiss. And even if
it may prove difficult for the Trustee to trace these transfers, this is not grounds for dismissal at
the pleading stage. *See Merkin*, 515 B.R. at 152 (finding it "premature to cut off the Trustee's
opportunity to satisfy his [tracing] burden on a motion to dismiss" merely because the tracing may

---

[18] Defendants argue that this case is unlike *Merkin* in that the Trustee has had access to the Fairfield books and records "for over a decade." Motion at 37-38. This is untrue. The Trustee does not have all of the Fairfield Funds' books and records, and discovery in the Trustee's actions against the Fairfield management defendants is continuing. *See, e.g.*, Stipulated Case Mgmt. Order, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Dec. 6, 2021), ECF No. 353 (setting November 22, 2022 deadline for fact discovery and August 22, 2023 deadline for expert discovery). Defendants also no doubt have records they can provide on these same transactions.

[19] For similar reasons, Defendants' argument that the Trustee has not given them fair notice to prepare their affirmative defenses or for discovery or trial (Motion at 34) by not tying the initial and subsequent transfers together is misguided. Tracing is a factual issue to be developed during the course of litigation.

[20] To the extent the Court finds it relevant, Defendants conveniently ignore many of the alleged transfers in the Trustee's Complaint where the initial and subsequent transfers are close in time.

prove difficult); *Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*, Adv. Pro. No. 10-03493 (SMB), 2014 WL 47774, at *15 (Bankr. S.D.N.Y. Jan. 3, 2014) ("[T]he [subsequent transferees'] speculation that tracing is 'not likely' to reveal a subsequent transfer . . . hardly justifies granting [their cross-motion for summary judgment].").

Finally, Defendants argue the Trustee's claims are "implausible" because the Trustee is seeking more money from all subsequent transferees of Fairfield Sentry than the fund withdrew from BLMIS. Motion at 34-35. There is no dispute that the Trustee is limited to "a single satisfaction" under Section 550(a). 11 U.S.C. § 550(d). However, the Trustee "can recover from any combination of [transferees]" up to the amount avoided. *Helms v. Metropolitan Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021). And under Section 550(a), "a trustee may recover [an avoided] transfer from a subsequent transferee of those funds, without the necessity for allocation among all the subsequent transferees." *CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*, 393 B.R. 306, 333 (Bankr. W.D.N.Y. 2008). Thus, until the Trustee recovers the full amount of the approximately $3 billion in fraudulent transfers received by Fairfield Sentry, the Trustee may simultaneously seek recovery from Defendants in this action and from defendants in other actions, even in an aggregate amount that exceeds associated initial transfers. *See Fairfield Inv. Fund*, 2021 WL 3477479, at *12 (holding the defendant's arguments regarding "double recovery" and the Trustee's purported limitations under Section 550(d) are "to be determined at a later stage in the litigation").

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Motion.

Dated:    April 26, 2022
       New York, New York

/s/  David J. Sheehan
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
dsheehan@bakerlaw.com
Keith R. Murphy
kmurphy@bakerlaw.com
Ferve E. Khan
fkhan@bakerlaw.com

*Attorneys for Irving H. Picard,*
*Trustee for the Substantively Consolidated*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and the Chapter 7*
*Estate of Bernard L. Madoff*

**Windels Marx Lane & Mittendorf, LLP**
156 West 56th Street
New York, New York 10019
Telephone: (212) 237-1000
Facsimile: (212) 262-1215
Kim M. Longo
Email: klongo@windelsmarx.com

*Special Counsel for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the Chapter 7 Estate of*
*Bernard L. Madoff*