**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 12-01002 (CGM) |
| v. | |
| THE PUBLIC INSTITUTION FOR SOCIAL SECURITY, | |
| Defendant. | |

## TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Chapter 7 Estate of Bernard L. Madoff*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ........................................................................................2

I.     THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS............................2

II.    SENTRY .........................................................................................................3

III.   PIFSS AND ITS INVESTMENT IN SENTRY .................................................5

ARGUMENT ..........................................................................................................6

I.     THE COURT HAS SUBJECT MATTER JURISDICTION OVER THE CASE..............6

    A.    FSIA Immunity Does Not Apply Under the Third Clause of the
         Commercial Activity Exception .................................................................7

         1.    PIFSS's Acts Occurred Outside of the United States .................................8

         2.    PIFSS's Subscription Into and Redemption From Sentry Constitute
             "Commercial Activity"...........................................................................8

         3.    PIFSS's Acts Caused a Direct Effect in the United States .........................9

         4.    OBB Personenverkehr Did Not Overturn BLI...........................................11

    B.    FSIA Immunity Also Does Not Apply Based on the First or Second
         Clauses of the Commercial Activity Exception....................................................13

II.    THE COURT HAS SPECIFIC PERSONAL JURISDICTION OVER PIFSS .................14

    A.    PIFSS's Use of U.S. Bank Accounts to Make Its Sentry Investments Is
         Sufficient to Establish Jurisdiction .......................................................17

    B.    PIFSS Purposely Availed Itself of the Benefits and Privileges of an
         Investment in the Forum ......................................................................20

    C.    The Forum Selection and Choice of Law Clauses in the Subscription
         Agreement(s) Are Strong Jurisdictional Contacts ..................................23

    D.    The Exercise of Personal Jurisdiction Over PIFSS Is Reasonable ........................25

    E.    At Minimum, the Trustee Is Entitled to Jurisdictional Discovery .........................26

i

III.    THE TRUSTEE'S ALLEGATIONS ARE SUFFICIENTLY PLEADED UNDER
        THE FEDERAL RULES OF CIVIL PROCEDURE.........................................................27

        A.      The Trustee's Complaint Provides Fair Notice of the Claim Asserted .................27

                1.      At Minimum, the Trustee Should Be Afforded the Opportunity to
                        Replead ........................................................................................................29

IV.     THE TRUSTEE'S CLAIM IS NOT BARRED UNDER 11 U.S.C. § 546(e)...................30

        A.      Sentry's Actual Knowledge of Madoff's Fraud Bars Application of
                Section 546(e) ......................................................................................................30

        B.      PIFSS Is Precluded From Relitigating the Actual Knowledge Exception
                Established in *Cohmad* ........................................................................................31

        C.      PIFSS Is Also Precluded From Arguing That Section 546(e) Applies
                Independently to Recovery Actions.......................................................................32

V.      THE TRUSTEE ADEQUATELY ALLEGES FACTS SHOWING THE
        TRANSFER TO PIFSS WAS COMPRISED OF BLMIS CUSTOMER
        PROPERTY .......................................................................................................................34

        A.      The Trustee Has Met the Pleading Standard Under Section 550(a)(2) .................35

        B.      At the Pleading Stage, the Trustee Is Not Required to Detail What Portion
                of Each Subsequent Transfer Comprises Customer Property...............................36

        C.      The Trustee, as an Outsider, Should Be Permitted to Obtain Discovery...............38

CONCLUSION.............................................................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
    599 B.R. 730 (Bankr. S.D.N.Y. 2019) .................................................................34, 35

*Am. Casein Co. v. Geiger (In re Geiger)*,
    446 B.R. 670 (Bankr. E.D. Pa. 2010) ...............................................................27, 29

*Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cty.*,
    480 U.S. 102 (1987).................................................................................................25

*Aurelius Cap. Partners, LP v. The Republic of Argentina*,
    No. 07 CIV 2715 (TPG), 2009 WL 755231 (S.D.N.Y. Mar. 12, 2009), *rev'd
    and vacated*, 584 F.3d 120 (2d Cir. 2009) ...............................................................8

*Ayyash v. Bank Al-Madina*,
    No. 04 Civ. 9201(GEL), 2006 WL 587342 (S.D.N.Y. Mar. 9, 2006) ....................26

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
    902 F.2d 194 (2d Cir. 1990)...................................................................................14

*Bissonnette v. Podlaski*,
    138 F.Supp.3d 616 (S.D.N.Y. 2015).......................................................................14

*In re BLMIS*,
    654 F.3d 229 (2d Cir. 2011)...................................................................................26

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985).................................................................................15, 16, 23, 25

*Chase Manhattan Bank v. Banque Generale Du Commerce*,
    No. 96 CIV. 5184(KMW), 1997 WL 266968 (S.D.N.Y. May 20, 1997)................23

*Chloé v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010)..............................................................................15, 25

*CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*,
    393 B.R. 306 (Bankr. W.D.N.Y. 2008) ..................................................................38

*Cromer Fin. Ltd. v. Berger*,
    137 F.Supp.2d 452 (S.D.N.Y. 2001).......................................................................15

*Dahar v. Jackson (In re Jackson)*,
    318 B.R. 5 (Bankr. D.N.H. 2004) ...........................................................................37

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)...................................................................................................15

*Dandong v. Pinnacle Performance Ltd.*,
    966 F.Supp.2d 374 (S.D.N.Y. 2013)...................................................................17

*DeMasi v. Benefico*,
    567 F.Supp.2d 449 (S.D.N.Y. 2008)...................................................................29

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
    722 F.3d 81 (2d Cir. 2013)...................................................................................14

*Eldesouky v. Aziz*,
    No. 11-CV-6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014)..................17

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
    651 F.3d 329 (2d Cir. 2011)...............................................................................33

*Fairfield Sentry Ltd. v. Migani*
    [2014] UKPC 9....................................................................................................24

*Fairfield Sentry Ltd. v. Theodore GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
    Ch. 15 Case No. 10-13164, Adv No. 10-03496, 2018 WL 3756343 (Bankr.
    S.D.N.Y. Aug. 6, 2018) ......................................................................................24

*Ferrari v. Cnty. of Suffolk*,
    790 F.Supp.2d 34 (E.D.N.Y. 2011) ...................................................................29

*Filetech S.A. v. France Telecom, S.A.*,
    212 F.Supp.2d 183 (S.D.N.Y. 2001)...................................................................10

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021)...........................................................................15, 21, 23

*Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*,
    Adv. Pro. Nos. 10-03493 (SMB), 10-05447 (SMB), 2014 WL 47774 (Bankr.
    S.D.N.Y. Jan. 3, 2014) .......................................................................................36

*Hanil Bank v. PT. Bank Negara Indonesia (Persero)*,
    148 F.3d 127 (2d Cir. 1998)..................................................................................9

*Hau Yin To v. HSBC Holdings PLC*,
    No. 15-CV-3590 (LTS)(SN), 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017),
    *aff'd*, 700 F. App'x 66 (2d Cir. 2017)...................................................................18

*Helms v. Metro. Life Ins. Co. (In re O'Malley)*,
    601 B.R. 629 (Bankr. N.D. Ill. 2019), aff'd, 633 B.R. 332 (N.D. Ill. 2021) .........38

*Hill v. HSBC Bank plc*,
    207 F.Supp.3d 333 (S.D.N.Y. 2016)......................................................................18

*HSH Nordbank AG N.Y. Branch v. Street*,
    No. 11 Civ. 9405(DLC), 2012 WL 2921875 (S.D.N.Y. July 18, 2012)..................17

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)...........................................................................................15

*In re Irving H. Picard, Trustee for the Liquidation of BLMIS*,
    917 F.3d 85 (2d Cir. 2019)............................................................................ *passim*

*Kiobel v. Royal Dutch Petroleum Co.*,
    No. 02 Civ. 7618(KMW)(HBP), 2009 WL 3817590 (S.D.N.Y. Nov. 16, 2009)..................26

*Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*,
    No. 07-MD-1902 (JSR), 2013 WL 12191844 (S.D.N.Y. Mar. 25, 2013)..............30

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013)................................................................................23

*Licci v. Lebanese Canadian Bank, SAL*,
    984 N.E.2d 893 (N.Y. 2012)..........................................................................17, 23

*McGee v. Int'l Life Ins. Co.*,
    355 U.S. 220 (1957).........................................................................................15

*McHale v. Boulder Cap. LLC (In re 1031 Tax Grp., LLC)*,
    439 B.R. 78 (Bankr. S.D.N.Y. 2010).................................................................37

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996)..................................................................................16

*Milliken v. Meyer*,
    311 U.S. 457 (1940)...........................................................................................15

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
    863 F.3d 96 (2d Cir. 2017)...................................................................................6

*Morrison v. Off. of the U.S. Tr. (In re Morrison)*,
    375 B.R. 179 (Bankr. W.D. Pa. 2007)...............................................................27

*In re Motors Liquidation Co.*,
    590 B.R. 39 (S.D.N.Y. 2018)..............................................................................28

*Motors Liquidation Co. Avoidance Action Tr. v. JPMorgan Chase Bank, N.A. (In
re Motors Liquidation Co.)*,
    565 B.R. 275 (Bankr. S.D.N.Y. 2017)...............................................................24

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ........................................................................................... 30

*New York Bay Co. Ltd. v. State Bank of Patiala*,
    No. 93 Civ. 6075 (WK), 1994 WL 369406 (S.D.N.Y. July 12, 1994) ................................... 13

*NML Cap., Ltd. v. Republic of Argentina*,
    680 F.3d 254 (2d Cir. 2012) .................................................................................. 8

*Nordberg v. Societe Generale (In re Chase & Sanborn Corp.)*,
    848 F.2d 1196 (11th Cir. 1988) ............................................................................ 38

*O'Toole v. MyPlace Dev. SP. Z O.O. (In re Sledziejowski)*,
    Ch. 7 Case No. 13-22050, Adv. No. 15-08207, 2016 WL 6155929 (Bankr.
    S.D.N.Y. Oct. 21, 2016) ..................................................................................... 18

*OBB Personenverkehr AG v. Sachs*,
    577 U.S. 27 (2015) ..................................................................................... 11, 12

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
    549 B.R. 56 (S.D.N.Y. 2016) ................................................................................ 18

*Picard v. Avellino (In re BLMIS)*,
    557 B.R. 89 (Bankr. S.D.N.Y. 2016) ...................................................................... 31

*Picard v. BNP Paribas S.A. (In re Bernard L. Madoff)*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018) .......................................................... *passim*

*Picard v. Bureau of Labor Ins. (In re Bernard L. Madoff)*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) .......................................................... *passim*

*Picard v. Ceretti (In re BLMIS)*,
    Adv. Pro. No. 09-01161 (SMB), 2015 WL 4734749 (Bankr. S.D.N.Y. Aug.
    11, 2015) ..................................................................................................... 31

*Picard v. Charles Ellerin Revocable Tr. (In re BLMIS)*,
    No. 08-01789 (BRL), Adv. Pro. Nos. 10-04398 (BRL), 10-05219 (BRL),
    2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012) ............................................... 35, 37

*Picard v. Citibank, N.A. (In re BLMIS)*,
    12 F.4th 171 (2d Cir. 2021) ................................................................................. 3

*Picard v. Cohen*,
    Adv. Pro. No. 10-04311, 2016 WL 1695296 (Bankr. S.D.N.Y. Apr. 25, 2016). .................. 31

*Picard v. Cohmad Sec. Corp. (In re BLMIS)*,
    454 B.R. 317 (Bankr. S.D.N.Y. 2011) ..................................................................... 38

*Picard v. Est. of Stanley Chais (In re BLMIS)*,
  445 B.R. 206 (Bankr. S.D.N.Y. 2011) ............................................................34, 39

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*,
  627 B.R. 546 (Bankr. S.D.N.Y. 2021) ............................................................15, 16

*Picard v. Fairfield Inv. Fund Ltd. (In re BLMIS)*,
  Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6,
  2021) ...................................................................................................3, 29, 30, 31

*Picard v. Ida Fishman Recoverable Trust (In re BLMIS)*,
  773 F.3d 411 (2d Cir. 2014) ..........................................................................31, 33

*Picard v. JPMorgan Chase & Co. (In re BLMIS)*,
  Adv. Pro. Nos. 08-01789 (SMB), 10-04932 (SMB), 2014 WL 5106909
  (Bankr. S.D.N.Y. Oct. 10, 2014) ..........................................................................19

*Picard v. Magnify, Inc. (In re BLMIS)*,
  583 B.R. 829 (Bankr. S.D.N.Y. 2018) ..................................................................31

*Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*,
  460 B.R. 106 (Bankr. S.D.N.Y. 2011) ............................................15, 20, 25, 26

*Picard v. Mayer (In re Bernard L. Madoff)*,
  Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435 (Bankr. S.D.N.Y. Oct.
  27, 2021) ................................................................................................................14

*Picard v. Mendelow (In re BLMIS)*,
  560 B.R. 208 (Bankr. S.D.N.Y. 2016) ..................................................................31

*Picard v. Merkin (In re Bernard L. Madoff)*,
  581 B.R. 370 (Bankr. S.D.N.Y. 2017) ..................................................................37

*Picard v. Merkin (In re BLMIS)*,
  440 B.R. 243 (Bankr. S.D.N.Y. 2010) ..................................................................39

*Picard v. Merkin (In re BLMIS)*,
  515 B.R. 117 (Bankr. S.D.N.Y. 2014) ..........................................31, 35, 36, 39

*Picard v. Shapiro (In re BLMIS)*,
  542 B.R. 100 (Bankr. S.D.N.Y. 2015) ............................................................31, 36

*Porat v. Lincoln Towers Cmty. Ass'n*,
  464 F.3d 274 (2d Cir. 2006) ..................................................................................29

*Republic of Argentina v. Weltover, Inc.*,
  504 U.S. 607 (1992) ............................................................................................6, 9

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
    624 F.3d 123 (2d Cir. 2010)..................................................................14

*Saudi Arabia v. Nelson*,
    507 U.S. 349 (1993).................................................................6, 11

*Sec. Inv. Prot. Corp. v. BLMIS (In re Bernard L. Madoff)*,
    531 B.R. 439 (Bankr. S.D.N.Y. 2015)..................................................31

*Sec. Inv. Prot. Corp. v. BLMIS (In re Madoff Sec.)*,
    12 MC 0115, 2012 WL 12539777 (S.D.N.Y. May 16, 2012) .................33

*Sec. Inv. Prot. Corp. v. BLMIS (In re Madoff Sec.)*,
    501 B.R. 26 (S.D.N.Y. 2013)..................................................28, 32

*Sec. Inv. Prot. Corp. v. BLMIS*,
    No. 12-MC-115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2012)................... *passim*

*Sec. Inv. Prot. Corp. v. Stratton Oakmont Inc.*,
    234 B.R. 293 (Bankr. S.D.N.Y 1999)..................................................38

*Sherman v. A.J. Pegno Constr. Corp.*,
    528 F.Supp.2d 320 (S.D.N.Y. 2007)..................................................28

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distributors, Inc.)*,
    379 B.R. 5 (Bankr. E.D.N.Y. 2007)..................................................34, 35, 36

*Skanga Energy & Marine Limited v. Arevenca S.A.*,
    875 F.Supp.2d 264 (S.D.N.Y 2012)..................................................10

*Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*,
    239 F.3d 365, 2000 WL 1741550 (5th Cir. 2000), *as amended on reh'g* (Dec.
    11, 2000) ..................................................................38

*Spetner v. Palestine Inv. Bank*,
    495 F.Supp.3d 96 (E.D.N.Y. 2020) ..................................................18

*Sunward Elecs., Inc. v. McDonald*,
    362 F.3d 17 (2d Cir. 2004)..................................................23

*Tamam v. Fransabank Sal*,
    677 F.Supp.2d 720 (S.D.N.Y. 2010)..................................................18

*Taylor v. Sturgell*,
    553 U.S. 880 (2008)..................................................30

*Tex. Trading & Milling Corp. v. Fed. Republic of Nigeria*,
    647 F.2d 300 (2d Cir. 1981), *overruled on other grounds by Frontera*
    *Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d
    393 (2d Cir. 2009) ...................................................................................................9

*Toberman v, Copas*,
    800 F.Supp. 1239 (M.D. Pa. 1992) ......................................................................29

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
    916 F.3d 143 (2d Cir. 2019) .................................................................................16

*United States v. Henshaw*,
    388 F.3d 738 (10th Cir. 2004) ..............................................................................37

*Walden v. Fiore*,
    571 U.S. 277 (2014) .............................................................................................21

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016) .................................................................................25

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) .............................................................................................25

**Statutes**

11 U.S.C. § 546(e) ........................................................................................... *passim*

11 U.S.C. § 548(a)(1)(A) ...................................................................................29, 32

11 U.S.C. § 550...........................................................................................1, 32, 33

11 U.S.C. § 550(a) ............................................................................................ *passim*

11 U.S.C. § 550(a)(2) ..............................................................................................34

11 U.S.C. § 550(d) ...................................................................................................38

28 U.S.C. § 1602 ........................................................................................................6

28 U.S.C. § 1605(a)(2)...........................................................................................7, 13

**Rules**

Fed. R. Bankr. P. 7010............................................................................................27

Fed. R. Bankr. P. 7015............................................................................................29

Fed. R. Civ. P. 8 ......................................................................................................26

Fed. R. Civ. P. 10(c) ........................................................................................27, 28

Fed. R. Civ. P. 12(b)(2)..............................................................................................14

Fed. R. Civ. P. 12(b)(6)..............................................................................................29

Fed. R. Civ. P. 15(a) ..................................................................................................29

N.Y. C.P.L.R. § 302(a)(1)......................................................................................17, 23

**Other Authorities**

5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure 3d §
    1326 (4th ed. 2007)..................................................................................27, 28, 29

Mohit Tater, Fahad Al Rajaan: A Brief Biography, Entrepreneurship Life, (Mar.
    12, 2020), https://www.entrepreneurshiplife.com/fahad-al-rajaan-a-brief-
    biography/ ..............................................................................................................5

Wafra Inc., Wafra Investment Advisory Group, Inc. Is Now Wafra Inc., Wafra,
    (Apr. 4, 2018), https://www.wafra.com/news/wafra-investment-advisory-
    group-inc-is-now-wafra-inc/ ...................................................................................5

H.R. Rep. No. 94–1487 (1976)....................................................................................8

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff, respectfully submits this memorandum of law and the Declaration of Brian W. Song ("Song Decl.") in opposition to Defendant The Public Institution for Social Security's ("PIFSS") Motion to Dismiss the Complaint ("Motion" or "Mot.").

## PRELIMINARY STATEMENT

On January 5, 2012, the Trustee initiated this lawsuit against PIFSS, a government agency of the State of Kuwait responsible for administering and investing the assets of the Kuwaiti social security system. The Trustee seeks to recover a subsequent transfer of approximately $20 million of BLMIS customer property under 11 U.S.C. § 550. PIFSS attempts to shield itself because it is a foreign entity. The fact remains, however, that PIFSS fully intended that its funds would be invested with BLMIS and PIFSS received a subsequent transfer that resulted from its investment in BLMIS through Fairfield Sentry Limited ("Sentry").

Each of PIFSS's arguments for dismissal lacks merit. First, PIFSS claims that this suit is barred by the Foreign Sovereign Immunities Act ("FSIA"). Because the FSIA's commercial activity exception applies, PIFSS is not immune from the Court's subject matter jurisdiction. This exception is applicable not only because PIFSS's commercial activity had a direct effect in the United States, but also because that commercial activity was carried on in the United States. Second, PIFSS erroneously argues that the Court does not have personal jurisdiction over it. However, PIFSS's contacts with the forum related to its BLMIS investment are precisely the type of minimum contacts that courts have found establish and support the exercise of specific personal jurisdiction. Third, despite PIFSS's protests to the Trustee's incorporation by reference of his

complaint against the Fairfield Greenwich Group defendants,[1] such incorporation is proper under the Federal Rules of Civil Procedure to establish the avoidability of the initial transfers from BLMIS to Sentry.

Fourth and finally, PIFSS argues that the Trustee's pleadings are deficient because (a) the safe harbor provision of 11 U.S.C. § 546(e) bars him from avoiding the initial transfer from BLMIS to Sentry from which this subsequent transferee claim derived, and (b) the Trustee does not identify which specific initial transfer of BLMIS customer property was subsequently transferred to PIFSS. Neither argument is availing. The safe harbor provision of Section 546(e) does not protect PIFSS from liability because the Trustee has sufficiently pleaded the avoidability of the initial transfers to Sentry. And contrary to PIFSS's assertions, at the pleading stage, the Trustee is not required to detail what portion of the subsequent transfer to PIFSS comprises customer property or to tie it to a specific initial transfer from BLMIS to Sentry.

For these reasons, PIFSS has failed to sufficiently challenge the allegations of the Trustee's Complaint and the Motion must be denied.

## **STATEMENT OF FACTS**

## I.    **THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS**

Madoff founded and operated BLMIS from New York until its collapse in 2008. *See* Complaint ("Complaint" or "Compl.") ¶¶ 23, 31. BLMIS had three principal business units: (1) a proprietary trading business; (2) a market-making business; and (3) an investment advisory business (the "IA Business"). *Id*. ¶ 23. For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy (the "SSC Strategy"), which involved (a) investing in a

---

[1] Amended Complaint, *Picard v. Fairfield Sentry Ltd., et al.*, Adv. Pro. No. 09-01239 (BRL) (July 20, 2010), ECF No. 23 ("Fairfield Amended Complaint"), now superseded by the Second Amended Complaint. Second Amended Complaint, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (SMB) (Aug. 28, 2020), ECF No. 286.

basket of common stocks from the Standard & Poor's 100 Index, (b) buying put options and selling call options to hedge against price changes in the underlying basket of stocks, and (c) purchasing U.S. treasury bills when the money was out of the market. *Id*. ¶¶ 24-25. In reality, BLMIS operated a Ponzi scheme through its IA Business. *Id*. ¶ 26. On December 11, 2008, Madoff's fraud was publicly revealed, and he was arrested for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. *Id*. ¶ 11.

The extent of damage Madoff caused was made possible by BLMIS "feeder funds"—large investment funds created for the express purpose of funneling investors' funds into BLMIS. *See Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 179 (2d Cir. 2021). PIFSS knowingly invested in one such feeder fund, Sentry. Compl. ¶¶ 2, 7.

## II.    <u>SENTRY</u>

Sentry was controlled by the Fairfield Greenwich Group ("FGG" or "Fairfield"), a *de facto* partnership with its principal place of business in New York. *See Picard v. Fairfield Inv. Fund Ltd. (In re Bernard L. Madoff)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021); *see also* Compl. ¶ 7. Sentry was a U.S. dollar-denominated fund that invested 95% of its assets with BLMIS. Compl. ¶ 2. Investors in Sentry were required to execute Subscription Agreements ("Agreements"), in which the investors acknowledged their sophistication.[2] The Agreements also incorporated Sentry's Information Memorandum ("IM"), and, by signing, investors warranted that they "received and read . . . the terms of the Information Memorandum."[3]

---

[2] Song Decl. Ex. 1 (Information Memorandum Fairfield Sentry Limited dated January 1998 (SECSEV3381092-SECSEV3381126) ("Jan. 1998 IM")) at SECSEV3381118.

[3] *Id*.

The IM explicitly disclosed BLMIS's multiple roles as the de facto investment manager, broker dealer, and custodian for Sentry. Regarding BLMIS's role as the fund's actual investment manager, the IM disclosed that Sentry's "Business Objective" was "to achieve capital appreciation of its assets by allocating its assets to an account at Bernard L. Madoff Investment Securities ('BLM[IS]'), a registered broker-dealer in New York, New York, which employs an options trading strategy described as 'split strike conversion.'"[4] The IM also disclosed how "[t]he services of . . . [BLMIS] are essential to the continued operations of [Sentry]."[5]

Regarding BLMIS's roles as Sentry's broker dealer and custodian, the IM stated "[Sentry] has delegated the management of the Company's investment activities to Bernard L. Madoff Investment Securities" and that "Bernard L. Madoff Investment Securities has entered into an agreement with Citco Custody pursuant to which Bernard L. Madoff Investment Securities will serve as a sub-custodian of the Company's assets."[6] Thus, the IM specifically informed investors in Sentry that BLMIS—not Sentry or its service providers—would have custody of Sentry's assets in the United States and would execute the fund's purported investment strategy.

The Agreements included additional connections to New York. As alleged in the Complaint, PIFSS entered into and executed a Sentry Subscription Agreement under which PIFSS submitted to New York jurisdiction. Compl. ¶ 7. The Agreements also instructed investors to send payments to a bank account with Republic National Bank of New York at 452 Fifth Avenue, New York, NY.[7]

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Sentry and related defendants to avoid and recover fraudulent transfers of customer property in the amount of

---

[4] *Id.* at SECSEV3381096.
[5] *Id.* at SECSEV3381106.
[6] *Id.* at SECSEV3381100, SECSEV3381105.
[7] Song Decl. Ex. 1 (Jan. 1998 IM) at SECSEV3381117.

approximately $3 billion. Compl. ¶ 36. In 2011, the Trustee settled with Sentry and others. *Id*.

¶ 40. As part of the settlement, Sentry consented to a judgment in the amount of $3.054 billion but

repaid only $70 million to the BLMIS estate. *Id*. The Trustee then commenced a number of

adversary proceedings against subsequent transferee defendants to recover the approximately $3

billion in customer property.

## III.    PIFSS AND ITS INVESTMENT IN SENTRY

PIFSS is a government agency of the state of Kuwait. *Id*. ¶ 3. From 1985 through at least

2008, PIFSS's Director General Fahad Al-Rajaan served as Chairman of Wafra Investment

Advisory Group, Inc. ("Wafra"), a global investment advisory firm.[8] Wafra was founded to

manage PIFSS's investments in the U.S.,[9] and upon information and belief, Wafra did so on behalf

of PIFSS by conducting investment research on Sentry, and otherwise acting on its behalf as its

U.S. agent and investment adviser.[10]

In 1999 and 2000, PIFSS invested millions of dollars in Sentry.[11] Prior to BLMIS's

collapse, PIFSS received at least $30,000,000 in transfers from Sentry in 2003 and 2004. Compl.

¶¶ 2, 41, Ex. C.[12]

---

[8] Mohit Tater, Fahad Al Rajaan: A Brief Biography, Entrepreneurship Life, (Mar. 12,
2020), https://www.entrepreneurshiplife.com/fahad-al-rajaan-a-brief-biography/

[9] Wafra Inc., Wafra Investment Advisory Group, Inc. Is Now Wafra Inc., Wafra, (Apr. 4, 2018),
https://www.wafra.com/news/wafra-investment-advisory-group-inc-is-now-wafra-inc/

[10] Song Decl. ¶ 2.

[11] Song Decl. Ex. 2 (Subscription Confirmation Fairfield Sentry Limited dated October 2000 (ANWAR-CFSE-00651498-ANWAR-CFSE-00651499) ("Oct. 2000 Subscription Confirmation")) at ANWAR-CFSE-00651498; Song Decl. Ex. 3 (Subscription Form Fairfield Sentry Limited dated July 1999 (ANWAR-CCI-00084102) ("July 1999 Subscription Form")); Song Decl. Ex. 4 (Subscription Form Fairfield Sentry Limited dated March 1999 (ANWAR-CCI-00154789-ANWAR-CCI-00154790) ("March 1999 Subscription Form")) at ANWAR-CCI-00154789.

[12] The Trustee filed the Complaint against PIFSS to recover two transfers that PIFSS received from Sentry: (1) $10 million on April 14, 2003, and (2) $20 million on January 21, 2004. Compl. ¶ 2, Ex. C. On December 21, 2021, the parties stipulated to dismiss the claim as to the $10 million transfer that occurred on April 14, 2003. Stipulation and Order Regarding Dismissal with Prejudice of a Transfer Alleged in the Complaint, *Picard v. The Public Institution for Social Security*, Adv. Pro. No. 12-01002 (CGM), ECF No. 111 (Bankr. S.D.N.Y. Dec. 21, 2021), ECF No. 111. The Trustee's claim for the $20 million subsequent transfer that occurred on January 21, 2004, remains.

PIFSS knew that it was engaging with New York when it invested in Sentry. Compl. ¶ 6. PIFSS executed a Subscription Agreement through which it acknowledged that it received and read the IM and thus knew and intended that BLMIS was the recipient of its investment with Sentry.[13] PIFSS also agreed to the Subscription Agreement's New York jurisdiction clause. Compl. ¶ 7.

Moreover, PIFSS used the New York banking system to subscribe into and redeem from Sentry. PIFSS sent a subscription payment to Sentry's bank account with HSBC Bank USA in New York, New York (the "HSBC USA Account").[14] It used a Northern Trust International Banking account in New York to send at least one subscription payment to Sentry totaling $5 million.[15] PIFSS used a JP Morgan Chase New York correspondent account to receive redemption payments from Sentry—including the $20 million transfer at issue here.[16]

## ARGUMENT

## I.    THE COURT HAS SUBJECT MATTER JURISDICTION OVER THE CASE

The FSIA, 28 U.S.C. § 1602, establishes a framework for determining whether a federal court may exercise jurisdiction over a foreign state. *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 610 (1992). Under the FSIA, foreign states are "presumptively immune from the jurisdiction of United States courts; unless a specified exception applies." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). Federal courts can exercise subject matter jurisdiction over a foreign state under the FSIA when (1) a statutory exception outlined in Sections 1605-07 applies and (2)

---

[13] Song Decl. Ex. 1 (Jan. 1998 IM) at SECSEV3381118.

[14] Song Decl. Ex. 2 (Oct. 2000 Subscription Confirmation) at ANWAR-CFSE-00651498.

[15] Song Decl. Ex. 3 (July 1999 Subscription Form) at ANWAR-CCI-00084102.

[16] Song Decl. Ex. 5 (Redemption Fairfield Sentry Limited dated April 2003 (ANWAR-CFSE-00317812 ("Apr. 2003 Redemption")); Song Decl. Ex. 6 (Redemption Fairfield Sentry Limited dated January 2004 (ANWAR-CFSE-00319437 ("Jan. 2004 Redemption")).

the foreign state has been served with process in accordance with FSIA provisions. *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 104 (2d Cir. 2017).

Based on the FSIA, PIFSS makes two arguments for dismissal: (1) that it meets the definition of a "foreign state" because it is indisputably a government agency; and (2) the only relevant FSIA exception, the commercial activity exception, does not apply because the transfer did not directly affect the United States. *See* Mot. at 9-11. The Trustee does not dispute that PIFSS is a "foreign state" under the FSIA. *See* Compl. ¶ 22. However, PIFSS's interpretation of the commercial activity exception is incorrect. When properly analyzed, the commercial activity exception applies and PIFSS is not immune from this Court's jurisdiction.

### A.     FSIA Immunity Does Not Apply Under the Third Clause of the Commercial Activity Exception

The FSIA commercial activity exception provides that a foreign state shall not be immune from the jurisdiction of United States courts when:

> the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; *or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States*.

28 U.S.C. § 1605(a)(2) (emphasis added).

PIFSS argues that the foreign nature of its investment in Sentry is "undisputed" and therefore only the third clause of the commercial activity exception, italicized above, could apply. Mot. at 10. As addressed in Section B below, this is not the case; but even assuming it were, the Court would still have subject matter jurisdiction over PIFSS, consistent with this Court's decision in another Fairfield Sentry subsequent transfer case, *Picard v. Bureau of Labor Ins. (In re Bernard L. Madoff)*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012) ("*BLI*").

This portion of the exception, referred to as the "direct effects clause," has three prongs: (i) the action is based on an act outside of the United States; (ii) such act was in connection with a commercial activity of the foreign state elsewhere; and (iii) the act caused a direct effect in the United States. 28 U.S.C. § 1605(a)(2). All three prongs are satisfied here.

### 1.    PIFSS's Acts Occurred Outside of the United States

PIFSS asserts that its conduct occurred in a territory outside of the United States. Mot. at 10. Thus, the first prong is satisfied.

### 2.    PIFSS's Subscription Into and Redemption From Sentry Constitute "Commercial Activity"

PIFSS's subscription into and redemption from Sentry constitute "commercial activity" under the FSIA. *See BLI*, 480 B.R. at 512 (concluding that such actions by BLI were commercial activity because they "did not involve the use of powers peculiar to sovereigns"); *see also Aurelius Cap. Partners, LP v. The Republic of Argentina*, No. 07 CIV 2715 (TPG), 2009 WL 755231, at *12 (S.D.N.Y. Mar. 12, 2009), *rev'd and vacated*, 584 F.3d 120 (2d Cir. 2009) (legislative history of the FSIA indicates the Act's definition of commercial activity includes investing in securities of an American corporation) (citing H.R. Rep. No. 94–1487, at 16 (1976)). Rather than dispute this fact—because it cannot—PIFSS accepts it *arguendo*. Mot. at 10.

The FSIA defines "commercial activity" as "a regular course of commercial conduct or a particular commercial transaction or act." *NML Cap., Ltd. v. Republic of Argentina*, 680 F.3d 254, 257 (2d Cir. 2012). "The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." *Id*. The acts of subscribing into and redeeming from Sentry are undoubtedly commercial conduct. This is the sort of activity typically exercised by private parties engaged in commerce.

PIFSS's motives for this investment activity (e.g., providing sustainable insurance and social services) are irrelevant.

### 3.    PIFSS's Acts Caused a Direct Effect in the United States

PIFSS's investment into and redemption from Sentry directly affected the United States. The Second Circuit has called for courts to liberally construe what constitutes a "direct effect in the United States" to provide access to courts for plaintiffs who have been wronged. *See, e.g.*, *Tex. Trading & Milling Corp. v. Fed. Republic of Nigeria*, 647 F.2d 300, 312 (2d Cir. 1981), *overruled on other grounds by Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393 (2d Cir. 2009) ("Courts construing either ['direct' or 'in the United States'] should be mindful . . . of Congress's concern with providing 'access to the courts' to those aggrieved by the commercial acts of a foreign sovereign . . . .") (citation omitted). Courts should inquire whether the United States has an interest in the action such that "Congress would have wanted an American court to hear the case." *Id*. at 313. The Supreme Court has found that "an effect is direct if it follows as an immediate consequence of the defendant's . . . activity." *Weltover*, 504 U.S. at 618 (quotation marks omitted). To establish a direct effect in the United States, the United States "need not be the location where the most direct effect is felt, simply a direct effect." *Hanil Bank v. PT. Bank Negara Indonesia, (Persero)*, 148 F.3d 127, 133 (2d Cir. 1998).

The *BLI* decision has already addressed PIFSS's arguments regarding the relevant conduct to be considered when determining a "direct effect," and the relevant case law, procedure, and statutory law cited by Judge Lifland in *BLI* is instructive here and is law of the case. In *BLI*, Judge Lifland denied a Sentry subsequent transferee defendant's motion to dismiss based on the FSIA because:

> BLI's actions caused a direct effect in the United States by causing a two-way flow of funds to and from New York-based BLMIS: *to* BLMIS for investment in U.S. Securities and U.S. Treasuries and *from* BLMIS in the form of profits from those

investments. This flow of funds in the form of subscription and redemption payments into and out of BLMIS in the United States via Fairfield Sentry was part of a specific investment structure explicitly set forth in the Subscription Agreement and the PPMs. These documents stated that: (i) Fairfield Sentry was required to invest at least 95% of its assets in the Split Strike Conversion Strategy utilized and controlled by BLMIS in New York; (ii) BLMIS was to act as sub-custodian of these assets, holding them in segregated accounts in New York; and (iii) BLMIS was to invest these assets in U.S. Securities and Treasuries.

*BLI*, 480 B.R. at 513.

Similarly, here, PIFSS has caused a direct effect in the United States by creating a "two-way flow of funds" in the form of its subscription into[17] and $20 million redemption payment out of Sentry on January 21, 2004.[18] *See* Compl. ¶¶ 35-39, 41, Ex. C. As stated, PIFSS signed an IM[19] that disclosed BLMIS's roles as Sentry's broker dealer and custodian, that "[Sentry] has delegated the management of the Company's investment activities to Bernard L. Madoff Investment Securities," and that "Bernard L. Madoff Investment Securities has entered into an agreement with Citco Custody pursuant to which Bernard L. Madoff Investment Securities will serve as a sub-custodian of the Company's assets."[20]

Because this flow of funds to and from BLMIS was the ultimate purpose of PIFSS's agreement with Sentry, and because it is the basis of the instant lawsuit, the actions PIFSS took in connection therewith are sufficient to satisfy the direct effects test under the commercial activity exception of the FSIA. *See BLI*, 480 B.R. at 513-14, (citing *Filetech S.A. v. France Telecom, S.A.*, 212 F.Supp.2d 183, 197 (S.D.N.Y. 2001) (finding that BLI's movement of money to and from

---

[17] Song Decl. Ex. 4 (March 1999 Subscription Form) at ANWAR-CCI-00154789; Song Decl. Ex. 3 (July 1999 Subscription Form) at ANWAR-CCI-00084102.

[18] Song Decl. Ex. 5 (Apr. 2003 Redemption) at ANWAR-CFSE-00317812; Song Decl. Ex. 6 (Jan. 2004 Redemption) at ANWAR-CFSE-00319437.

[19] Song Decl. Ex. 1 (Jan. 1998 IM) at SECSEV3381100, SECSEV3381105.

[20] PIFSS also argues that the Trustee has failed to show a "direct effect" in the U.S. by failing to include facts showing that Sentry's subsequent transfer to PIFSS was funded with BLMIS customer property. As discussed in depth *infra*, the Trustee has in fact shown the requisite necessary vital statistics of the purported transfers of customer property. Even if some of the transfers were not ultimately determined to be customer property, a direct effect exists by virtue of PIFSS's investing in and redeeming out of Sentry, which was based in New York, and using its bank accounts.

BLMIS in the U.S., as contemplated by the Agreements, was not fortuitous or incidental; it was

"the ultimate objective" and "raison d'etre" of the Agreement between BLI and Sentry)).[21]

### 4.    OBB Personenverkehr Did Not Overturn BLI

PIFSS attempts to argue that the basis of the *BLI* ruling was "overturned" by *OBB*

*Personenverkehr AG v. Sachs*, 577 U.S. 27 (2015), because there the Supreme Court purportedly

clarified the "based upon" requirement of the FSIA commercial activity exception. *See* Mot. at 10-

11. Specifically, PIFSS contends that after *OBB Personenverkehr*, the sole relevant conduct and

the "gravamen of the Complaint" under the commercial activity exception is its *receipt* of funds

from Sentry, rather than its investment with BLMIS, which PIFSS erroneously argues is all the

Court looked to in *BLI*.

As an initial matter, *OBB Personenverkehr* is distinguishable on both legal and factual

grounds. The Court in *OBB Personenverkehr* interpreted the FSIA in a case involving claims of

negligence, which are entirely different than the crux of the matter here, namely investment activity

with Madoff feeder fund Sentry. *OBB Personenverkehr*, 577 U.S. at 27. *OBB Personenverkehr*

involved a dispute brought by a U.S. resident against the Austrian state-owned railway. *Id*. The

plaintiff suffered personal injuries when she fell onto the tracks at the Innsbruck, Austria, train

station while attempting to board a train. *Id.* at 30. The question of jurisdiction hinged on whether

the plaintiff's personal injury suit was "based upon" the sale of an electronic train ticket from a

Massachusetts-based travel agent, and is thus factually distinguishable. *Id*. at 35. Importantly, *OBB*

---

[21] PIFSS argues that the Complaint should be dismissed for lack of subject matter jurisdiction because it does not contain any allegations regarding commercial activity in the U.S. or the redemptions causing a direct effect in the U.S. *See* Mot. at 10. As discussed *supra*, this is not true because the Complaint alleges that BLMIS made initial transfers of customer property to Sentry (Compl. ¶¶ 35-39), and that a portion of those initial transfers was subsequently transferred to PIFSS (Compl. ¶ 41, Ex. C). Such allegations are sufficient to establish the applicability of the commercial activity exception. *Skanga Energy & Marine Limited v. Arevenca S.A.*, 875 F.Supp.2d 264, 271-72 (S.D.N.Y. 2012) (the direct effect requirement of the FSIA was satisfied where the allegations showed that the parties to a transaction, including the sovereign defendant, contemplated that payment would be made to a U.S. bank account, such payment was made, and plaintiff's cause of action arose out of that transaction.).

*Personenverkehr* did not cite to, implicate, or disturb Judge Lifland's *BLI* holding in its explication

of the "based upon" requirement of the commercial activity exception. There is nothing in *OBB*

*Personenverkehr* that supports PIFSS's argument that the Court in *BLI* "focused on the wrong

conduct." Mot. at 11.

PIFSS's argument also mischaracterizes the holdings in both *OBB Personenverkehr* and

*BLI. OBB Personenverkehr* did not change or newly interpret the "based upon" analysis, as PIFSS

implies (*see* Mot. at 11, "Courts now are required . . ."). Rather, the Court in *OBB Personenverkehr*

cited to the formative case of *Saudi Arabia v. Nelson*—the same decision that guided this Court in

*BLI*—in stating that the Court must look to the "foundation" of a claim or "gravamen" of a

complaint to determine direct effect. In short, *OBB Personenverkehr* and *BLI* are simply two cases

applying the same law to their own distinct facts and do not conflict.

Finally, even if this Court were to find that *OBB Personenverkehr* requires it (as PIFSS

contends) to look beyond investments in BLMIS to determine the "foundation" of the Trustee's

claims, *BLI* did just that. In *BLI*, as analyzed in detail above, the Court made clear that its finding

of a direct effect was based on not only the defendant's investment into BLMIS, but all the money

sent back and forth between BLMIS, Sentry, and the subsequent transferee defendant in

furtherance of the defendant's investment activity, and all the actions the defendant took related to

that flow of funds. As noted by Judge Lifland in that decision:

> At bottom, this is not a situation where "the ripples caused by an overseas
> transaction manage eventually to reach the shores of the United States." Rather,
> BLI intended to profit from BLMIS in New York through investments in Fairfield
> Sentry. As a result, the United States clearly has an interest in this action such that
> Congress would have wanted an American court to hear the case.

*BLI*, 480 B.R. at 515 (citations omitted).

To this end, the Second Circuit has already instructed that in actions brought under § 550(a), like this one, BLMIS's initial transfer of customer property, and any subsequent transfers that follow, are domestic activity. *See In re Irving H. Picard, Trustee for the Liquidation of BLMIS*, 917 F.3d 85, 99-100 (2d Cir. 2019) (holding that "[w]hen a domestic debtor commits fraud by transferring property from a U.S. bank account, the conduct that § 550(a) regulates takes place in the United States."). Although the Second Circuit did not make this finding in the FSIA context, the holding discredits PIFSS's argument that in § 550(a) actions the investment activity of defendants lacks any significant effect in the U.S. At minimum, the domestic nature of the transfers from BLMIS to Sentry and then to PIFSS support a finding that such transfers had a direct effect in the U.S.

**B.** **FSIA Immunity Also Does Not Apply Based on the First or Second Clauses of the Commercial Activity Exception**

In addition, the Court has subject matter jurisdiction based on first and second clauses of the FSIA commercial activity exception. First, PIFSS's commercial activity was "carried on in the United States" (clause 1). 28 U.S.C. § 1605(a)(2). Second, at the very least, acts were "performed in the United States in connection with a commercial activity of the foreign state elsewhere." (clause 2). *Id*.[22]

PIFSS's commercial activity was carried on in the United States because from subscription to redemption, PIFSS intended its funds to be invested in New York, and its funds went into and came out of New York as it intended. The entire transaction was centered in New York, as required by the Agreements: PIFSS chose to invest in Sentry with full knowledge that Sentry had to invest at least 95% of its funds in BLMIS in New York; the Agreements required PIFSS to wire

---

[22] Though jurisdiction based on these first and second prongs of the commercial activity exception was briefed by the parties, the Court in *BLI* did not reach the issue because it found that it had subject matter jurisdiction "under at least the third clause of the commercial activity exception." *BLI*, 480 B.R. at 511.

subscription funds to the New York HSBC USA Account; that same account was used for redemptions; and PIFSS used its own New York correspondent account to effect the transfers.

Alternatively, even if this court determined that PIFSS's commercial activity was not carried out domestically, the relevant transfers were "acts" that occurred in the U.S. in connection with that activity. Specifically, as noted above, the Second Circuit has previously held that all transfers stemming from BLMIS's bank account are by definition domestic activity. *See In re Picard*, 917 F.3d at 100 ("When a domestic debtor commits fraud by transferring property from a U.S. bank account, the conduct that § 550(a) regulates takes place in the United States."). Also, the redemption payments to PIFSS were made from Sentry's U.S. correspondent account to PIFSS's bank account in New York. *See N.Y. Bay Co. Ltd. v. State Bank of Patiala*, No. 93 Civ. 6075 (WK), 1994 WL 369406, at *4 (S.D.N.Y. July 12, 1994) (holding defendant's receipt of funds from plaintiff in its New York bank account and defendant's agreement in New York to convert funds it received to rupees were acts performed in the United States that were related to defendant's commercial activity in India).

## II.    THE COURT HAS SPECIFIC PERSONAL JURISDICTION OVER PIFSS

PIFSS argues that the Court lacks personal jurisdiction over it. PIFSS proffers that it is a foreign entity that is not "at home" in New York, Mot. at 12-13; that it did not consent to jurisdiction by entering into Agreements with Sentry, even though the Agreements contained New York venue and choice of law provisions, *id*. at 13-14; and that it does not have sufficient minimum contacts despite knowledge of Sentry's investment with BLMIS and transfers to and from Sentry's U.S. bank accounts, *id*. at 14-20. These arguments are unavailing.

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a *prima facie* case that personal jurisdiction exists. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013). At this early stage, a *prima facie* showing of jurisdiction "may be

established solely by allegations." *Id.* at 84-85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)) ("Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction."). A plaintiff also may establish a *prima facie* case of jurisdiction through affidavits and supporting materials that contain averments of facts outside the pleadings.[23] *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010). The pleadings and affidavits are to be construed "in the light most favorable to [the] plaintiffs, resolving all doubts in their favor." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (citations omitted).

The personal jurisdiction analysis is a two-step inquiry that focuses on (1) minimum contacts and (2) whether jurisdiction will be reasonable under the circumstances. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (due process requires that a defendant have sufficient minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'") (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). There are two types of personal jurisdiction that satisfy minimum contacts: general jurisdiction[24] and specific jurisdiction. *Cromer Fin. Ltd. v. Berger*, 137 F.Supp.2d 452, 473 (S.D.N.Y. 2001). "Specific jurisdiction exists when the defendant 'purposefully direct[s] his activities at residents of the forum' and the underlying cause of action 'arises out of or relates to those activities.'" *Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*, 627 B.R. 546,

---

[23] Courts may consider extrinsic material in deciding a motion to dismiss under Rule 12(b)(2). *See Picard v. Mayer (In re Bernard L. Madoff)*, Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435, at *3 (Bankr. S.D.N.Y. Oct. 27, 2021) ("To meet this burden at the pleading stage, the plaintiff need only to make 'a prima facie showing of jurisdiction through its own affidavits and supporting materials.'") (quoting *Bissonnette v. Podlaski*, 138 F.Supp.3d 616, 621-22 (S.D.N.Y. 2015)).

[24] General jurisdiction is based on the defendant's general business contacts with the forum state and permits a court to exercise jurisdiction where the suit is unrelated to those contacts. *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014). Here, the Trustee's case arises out of the contacts PIFSS has with the forum and a finding of general jurisdiction is unnecessary.

566 (Bankr. S.D.N.Y. 2021) (citations omitted).

Specific personal jurisdiction is proper where the defendant's contacts "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). But specific jurisdiction does not require a causal relationship between a plaintiff's claims and the defendant's contacts with the forum state. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). Moreover, the defendant's activities "need not have taken place within the forum, and a single transaction with the forum will suffice." *Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011) (internal citation omitted) (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). Specific jurisdiction may also be found when a "defendant's allegedly culpable conduct involves at least in part financial transactions that touch the forum." *Fairfield Greenwich Grp.*, 627 B.R. at 566 (quoting *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 151 (2d Cir. 2019)).

To determine whether jurisdiction is reasonable, courts consider the following factors:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996). Where the plaintiff has alleged purposeful availment, however, the burden shifts to the defendant to present a "compelling case" that jurisdiction would be unreasonable. *Fairfield Greenwich Grp.*, 627 B.R. at 567 (citing *Burger King*, 471 U.S. at 472-73).

PIFSS's contacts with the forum are such that specific personal jurisdiction is reasonable. Personal jurisdiction is established through PIFSS's use of U.S. bank accounts to make its

investments in Sentry. Additionally, PIFSS's Agreements with Sentry show that it purposefully availed itself of the benefits and privileges of investing here. Further, the Agreements' forum selection and choice of law clauses independently establish jurisdiction and, at minimum, demonstrate significant contacts with New York that support the exercise of jurisdiction.

A.    **PIFSS's Use of U.S. Bank Accounts to Make Its Sentry Investments Is Sufficient to Establish Jurisdiction**

This Court has jurisdiction over PIFSS because it purposefully used U.S. bank accounts to both subscribe into and redeem from Sentry. PIFSS designated in its Agreement, and then used, a Northern Trust International Banking account in New York to send at least one subscription payment to Sentry totaling $5 million.[25] In addition, PIFSS sent and received payments to and from Sentry's New York correspondent accounts, also in accordance with its feeder fund transactional documents. PIFSS used an HSBC Bank correspondent account in New York—the HSBC USA Account—as the account to which it sent a subscription payment to Sentry totaling $15,000,000.[26] PIFSS also used a JP Morgan Chase New York correspondent account to receive the subsequent transfer at issue—the $20 million redemption payment from Sentry.[27]

Even absent other contacts, a defendant's use of a domestic bank account in connection with the activity alleged is sufficient to establish jurisdiction, under either the due process analysis or the New York long-arm statute, N.Y. C.P.L.R. § 302(a)(1).[28] *See, e.g.*, *Eldesouky v. Aziz*, No. 11-CV-6986 (JLC), 2014 WL 7271219, at *6-7 (S.D.N.Y. Dec. 19, 2014) (foreign defendant subject to jurisdiction under New York long-arm statute based solely on its use of a New York

---

[25] Song Decl. Ex. 3 (July 1999 Subscription Form) at ANWAR-CCI-00084102.

[26] Song Decl. Ex. 2 (Oct. 2000 Subscription Confirmation) at ANWAR-CFSE-00651498.

[27] Song Decl. Ex. 6 (Jan. 2004 Redemption) at ANWAR-CFSE-00319437.

[28] Certain cases discussed herein address jurisdiction under New York's long-arm statute. Due to the very close overlap between the requirements of the New York long-arm statute and those of due process, courts engaging in a due process analysis frequently cite long-arm cases as a matter of course. *See, e.g.*, *HSH Nordbank AG N.Y. Branch v. Street*, No. 11 Civ. 9405(DLC), 2012 WL 2921875, at *4 n.3 (S.D.N.Y. July 18, 2012) (noting that "the personal jurisdiction analysis under § 302(a)(1) and the Due Process Clause is in most instances essentially coterminous").

account to receive payment at issue); *HSH Nordbank*, 2012 WL 2921875, at *4 (Florida-based

Defendants subject to jurisdiction under New York long-arm statute based solely on his use of a

New York bank account to receive the fraudulent conveyances at issue); *Dandong v. Pinnacle

Performance Ltd.*, 966 F.Supp.2d 374, 382-83 (S.D.N.Y. 2013) (Cayman-registered defendants

subject to jurisdiction in New York based solely on its use of New York bank accounts to facilitate

its alleged fraud).

PIFSS's use of correspondent accounts does not alter this outcome. *See Licci v. Lebanese

Canadian Bank, SAL*, 984 N.E.2d 893, 899-900 (N.Y. 2012) (leading case, holding that a

defendant's purposeful "use of a correspondent bank account in New York, even if no other

contacts between the defendant and New York can be established" suffices to show defendant

transacted business in New York); *see also Off. Comm. of Unsecured Creditors of Arcapita v.

Bahrain Islamic Bank*, 549 B.R. 56, 67-69 (S.D.N.Y. 2016) (foreign defendants subject to

jurisdiction based solely on their designation and use of New York correspondent accounts to

receive the preferential transfers at issue).

The case at bar is therefore a far cry from cases cited by PIFSS where the defendant was a

mere recipient of funds from an account unilaterally selected by plaintiff and either unapproved

by defendant or the use of which defendant was merely aware. *Tamam v. Fransabank Sal*, 677

F.Supp.2d 720, 727-28 (S.D.N.Y. 2010) (finding no substantial relationship between the

correspondent bank accounts and the cause of action because "[i]t is clear that the events giving

rise to the physical injuries and deaths for which Plaintiffs seek redress are missile attacks in Israel,

not funds transfers in New York"); *O'Toole v. MyPlace Dev. SP. Z O.O. (In re Sledziejowski)*, Ch.

7 Case No. 13-22050, Adv. No. 15-08207, 2016 WL 6155929, at *7 (Bankr. S.D.N.Y. Oct. 21,

2016) (no personal jurisdiction based on a third-party transfer to defendant sent from the U.S.);

*Spetner v. Palestine Inv. Bank*, 495 F.Supp.3d 96, 105 (E.D.N.Y. 2020) (no personal jurisdiction where defendant had no "direct contact with the New York banking system at any point" and merely "knew and intended that [its agent] would necessarily transact in the New York banking system").

PIFSS's reliance on other cases like *Hau Yin To v. HSBC Holdings PLC*, No. 15-CV-3590 (LTS)(SN), 2017 WL 816136, at *6 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017), and *Hill v. HSBC Bank plc*, 207 F.Supp.3d 333, 340 (S.D.N.Y. 2016), where use of a correspondent account was deemed an "incidental consequence[] of fulfilling a foreign contract," is also misplaced. In *BNP*, this Court determined that those cases are not relevant to the Trustee's subsequent transfer actions. *See Picard v. BNP Paribas S.A. (In re Bernard L. Madoff)*, 594 B.R. 167, 192 (Bankr. S.D.N.Y. 2018) ("*Hill* has no bearing on the issue of personal jurisdiction arising from the Defendants' redemptions as investors in the Tremont Funds which arose from their New York contacts with the Tremont Funds.").

The Trustee's actions do not involve disputes between two parties stemming from services owed under a foreign contract like the breach of fiduciary duty and other claims in *To* and *Hill*. Rather, these are fraudulent transfer recovery actions by a U.S. bankruptcy trustee against investors whose transfers of funds to and from U.S. correspondent accounts fulfilled the very purpose of their feeder fund agreements and themselves evidence intent to direct activity toward the U.S. securities markets. *See BLI*, 480 B.R. at 513 ("This movement of money to and from BLMIS in the United States, as contemplated by the Agreements, was not fortuitous or incidental; instead, it was 'the ultimate objective' and the '*raison d'etre*' of the Agreement between BLI and Fairfield Sentry."). And unlike the cases cited by PIFSS where the primary activity between plaintiff and defendant was overseas, the Second Circuit has already found that the transactions at issue are

domestic. *In re Picard*, 917 F.3d at 99-100.[29]

**B.**     **PIFSS Purposely Availed Itself of the Benefits and Privileges of an Investment in the Forum**

In addition, PIFSS is subject to this Court's personal jurisdiction because it invested in Sentry with the specific purpose of profiting from its investment in BLMIS in New York. *See Picard v. JPMorgan Chase & Co. (In re BLMIS)*, Adv. Pro. Nos. 08-01789 (SMB), 10-04932 (SMB), 2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014) (recognizing that the BLMIS liquidation has "confirmed that defendants who invested directly or indirectly with BLMIS and received payments from BLMIS as initial transferees or as subsequent transferees of those initial transferees were subject to the Court's personal jurisdiction"); *Maxam Absolute Return Fund*, 460 B.R. at 116-20 (finding jurisdiction where defendant knew and intended that funds invested with BLMIS feeder fund would be sent to New York for investment by BLMIS); *BLI*, 480 B.R. at 516-18 (defendant "purposefully availed itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in [BLMIS feeder fund] Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market"); *see In re Picard*, 917 F.3d at 105 ("When these investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going.").[30]

The IM included details about the fund's investment strategy, historical performance, and trades in the S&P 100 Index.[31] Based on the information contained in Sentry's IM, PIFSS obtained plenty of information that showed it was transacting business in New York:

---

[29] This is true notwithstanding whether the Fairfield Liquidators have characterized these same transfers as foreign for purposes of their claims. *See infra* n.48.
[30] Song Decl. Ex. 4 (March 1999 Subscription Form) at ANWAR-CCI-00154789; Song Decl. Ex. 3 (July 1999 Subscription Form) at ANWAR-CCI-00084102; *see also* Compl. ¶ 7.
[31] *See generally* Song Decl. Ex. 1 (Jan. 1998 IM).

- Sentry "delegated all investment management duties to" New York-based BLMIS;[32]

- BLMIS was a registered broker dealer in New York, New York;[33]

- BLMIS was the executing broker for Sentry's investments, and purportedly operated and executed the SSC Strategy on the fund's behalf;[34]

- BLMIS's SSC Strategy purportedly involved the purchase of U.S. equities, and U.S. options traded on U.S. exchanges, and the decisions regarding which U.S. securities to purportedly purchase, and when to make such purchases, were made by BLMIS in New York;[35]

- BLMIS was the custodian of Sentry's investments with BLMIS;[36] and

- BLMIS was "essential to the continued operations of" Sentry.[37]

PIFSS did not simply invest in a foreign fund. Rather, it invested in a fund that delegated all investment management duties to New York-based BLMIS, a fact that was plainly apparent from Sentry's IM, which PIFSS read, executed, and affirmed.[38]

Further, PIFSS had regular contact with Fairfield's New York-based representatives about its investments. Greg Bowes, a New York partner of FGG, met with Fahad Al Rajan, Director General of PIFSS, in November 2003.[39] During that meeting, Al Rajan and Bowes specifically

---

[32] *Id*. at SECSEV3381106.

[33] *Id*. at SECSEV3381100.

[34] *Id*. at SECSEV3381101.

[35] *Id*.

[36] *Id*. at SECSEV3381105.

[37] *Id*. at SECSEV3381106.

[38] PIFSS's argument that the reasoning of this Court in *BLI* as to purposeful availment should not lead to the same result here relies upon a notably stark misreading of *Walden v. Fiore*, 571 U.S. 277 (2014). *Walden* has no application here. *Walden* was based on a fairly unremarkable application of the "effects test," which is used to assess intentional tort cases and focuses on injuries arising within a forum state based on tortious activity outside that forum. PIFSS also misinterprets *Walden* to the extent it argues that its connections to the forum must be viewed in a vacuum as opposed to being based on its relationships with BLMIS and a BLMIS feeder fund. Mot. at 14-16. *Walden* recognized that "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties." *Walden*, 571 U.S. at 286; *see also Ford Motor Co.*, 141 S. Ct. at 1031-32 (rejecting defendant's contention that *Walden* "shows that a plaintiff's residence and place of injury can never support jurisdiction" and pointing out that "[t]hose places still may be relevant in assessing the link between the defendant's forum contacts and the plaintiff's suit").

[39] Song Decl. Ex. 7 (Email dated November 2003 documenting meeting with FGG (FG-01359851-FG-01359852)) at FG-01359851.

discussed "the constant swirl of rumors concerning Madoff."[40] Bowes was able to assuage Al
Rajan's fears, avoid a redemption at that time, and maintain PIFSS's "warm relationship with
FGG."[41] Phillip Toub of FGG New York also met with PIFSS Deputy General Manager Sheikh
Abdullah Al-Jaber Al-Sabah in December 2006 to discuss expanding PIFSS's investments.[42]
There was another meeting with PIFSS as one of Sentry's "top 10 institutional clients" in Fall
2008.[43]

Additionally, any doubt of PIFSS's knowledge and intent to do business in this jurisdiction
is eliminated by the fact that Wafra, PIFSS's New-York based offshore subsidiary, was also
invested in Sentry and other Madoff feeder funds.[44] Representatives from Wafra met with Fairfield
in New York on multiple occasions to discuss their investments, including in Sentry.[45] Wafra's
investment in Sentry solidifies the Trustee's position that its parent, PIFSS, was aware of and
familiar with the IM and therefore had knowledge that its investment in Sentry was ultimately an
investment in New York-based BLMIS.

Finally, it is worth noting, as this Court did in *BLI*, that PIFSS's suggestion that its funds
ended up in the United States due to actions that "are solely derivative of Sentry's contacts," *see*
Mot. at 20, is particularly disingenuous. *See BLI*, 480 B.R. at 517 (highlighting defendant's
intention that its funds would be sent to a BLMIS feeder fund in order to be invested with BLMIS).

---

[40] *Id.*

[41] *Id.*

[42] Song Decl. Ex. 8 (Email dated December 2006 regarding meeting with FGG (FG-00230052)).

[43] Song Decl. Ex. 9 (Email dated July 2008 regarding scheduled meeting with FGG (FG-01830184-FG-01830185)) at FG-01830184.

[44] Song Decl. Ex. 10 (Email dated October 2003 regarding Wafra meeting with FGG (FG-05830254-FG-05830255)) at FG-05830254; Song Decl. Ex. 11 (Email dated December 2006 regarding Wafra investment (FG-00230823-FG-00230825)) at FG-00230823.

[45] Song Decl. Ex. 12 (Email dated May 2003 regarding FGG meeting with Wafra (pre-meeting background) (FG-01288351-FG-01288352); Song Decl. Ex. 13 (Email dated June 2003 regarding FGG meeting with Wafra (post-meeting notes) (FG-01288574-FG-01288575); Song Decl. Ex. 10 (Email dated October 2003 regarding Wafra meeting with FGG) at FG-05830254.

That Sentry invested PIFSS's funds with BLMIS in New York was not merely foreseeable to PIFSS, it was PIFSS's objective.

### C.   The Forum Selection and Choice of Law Clauses in the Subscription Agreements Are Strong Jurisdictional Contacts

The Subscription Agreements that governed PIFSS's investment in Sentry over the years make it subject to the jurisdiction of the New York courts. Compl. ¶ 7. PIFSS argues that because the Trustee is not a party to those Agreements, and his claim does not arise thereunder, the Agreements do not provide a basis for jurisdiction here. *See* Mot. at 13-14. PIFSS's argument misses the mark.

The Agreements plainly "relate to" the Trustee's claims and evidence a strong nexus with New York under the totality of circumstances. PIFSS's subscription into and redemption from Sentry are two sides of the same coin. It could not invest in Sentry without executing a Subscription Agreement. In turn, the funds it received represented profits and principal from its subscription based on Sentry's investments with BLMIS. Because PIFSS's Agreement was a necessary predicate to its receipt of customer property through Sentry, the Agreement is sufficiently related to the Trustee's subsequent transferee claims. *See Ford Motor Co.*, 141 S. Ct. at 1026 (rejecting a "strict causal relationship between the defendant's in-state activity and the litigation"); *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168-69 (2d Cir. 2013) (noting that the New York Court of Appeals "made clear that the 'arising from' prong of section 302(a)(1) does not require a causal link between the defendant's New York business activity and a plaintiff's injury," but rather, "it requires 'a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim.'" (quoting *Licci*, 984 N.E.2d at 900)).

23

"Although such a [choice of law] provision standing alone would be insufficient to confer jurisdiction . . . it reinforce[s] [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." *See Burger King*, 471 U.S. at 482; *see also Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004) ("A choice of law clause is a significant factor in a personal jurisdiction analysis because the parties, by so choosing, invoke the benefits and protections of New York law."); *Chase Manhattan Bank v. Banque Generale Du Commerce*, No. 96 CIV. 5184(KMW), 1997 WL 266968, at *2 (S.D.N.Y. May 20, 1997) ("[A] choice of law provision may constitute a 'significant contact' with the forum state" and "is relevant in determining whether a defendant has purposefully availed itself of a particular forum's laws."). For example, in *BLI*, this Court, without addressing the issue of whether Defendants had consented to jurisdiction, found that the clauses in the Subscription Agreements "further evidence[d] the strong nexus with New York." 480 B.R. at 517 n.15. Similarly, in *Motors Liquidation Co. Avoidance Action Tr. v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, the Bankruptcy Court held that even if New York forum and choice of law provisions do not in and of themselves constitute consent to jurisdiction, such provisions serve as factors in establishing minimum contacts to support specific jurisdiction. 565 B.R. 275, 288-89 (Bankr. S.D.N.Y. 2017) (finding agreement provisions under New York law plus correspondent banking in New York evidenced a relationship "centered in New York").

PIFSS cites to *Fairfield Sentry Ltd. v. Migani* [2014] UKPC 9 and *Fairfield Sentry Ltd. v. Theodore GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Ch. 15 Case No. 10-13164, Adv No. 10-03496, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) to support its arguments, noting that per those decisions, the forum selection and other clauses of the Agreements do not constitute consent to jurisdiction. But the Trustee does not argue that PIFSS is bound to litigate here because

24

of its agreement to do so in the Sentry Subscription Agreements. Rather, the Trustee argues that PIFSS's agreement to New York law, jurisdiction, and forum in contracts integral to this case provides a strong jurisdictional contact with New York. And as to that point, the decisions in those cases only have relevance "to the extent that personal jurisdiction is based solely on the forum selection clause in the Subscription Agreements." *Theodore GGC Amsterdam*, 2018 WL 3756343, at *1. The Court in *Theodore GGC Amsterdam* made clear that its decision "does not resolve the Foreign Defendants' jurisdictional objections" and "[u]pon further analysis, [the Court] may indisputably have personal jurisdiction over at least one defendant in every adversary proceeding." *Id*. at *12. As discussed *supra*, the Agreement, and any PIFSS likely would have subsequently signed, is but one jurisdictional contact the Trustee offers to establish personal jurisdiction over PIFSS. *See* Compl. ¶¶ 6-8.

### D.    The Exercise of Personal Jurisdiction Over PIFSS Is Reasonable

PIFSS fails to present a compelling reason why jurisdiction would be unreasonable. "The reasonableness inquiry requires the court to determine whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice' under the circumstances of the particular case." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016). Where a plaintiff has made a threshold showing of minimum contacts, a defendant must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Chloé*, 616 F.3d at 165 (quoting *Burger King*, 471 U.S. at 477). Indeed, this Court has found that "it would be a 'rare' case where the defendant's minimum contacts with the forum support the exercise of jurisdiction, but it is unreasonable to force the defendant to defend the action in that forum." *BNP*, 594 B.R. at 188. This is not that "rare" case.

When determining the reasonableness of exercising personal jurisdiction, courts evaluate several factors, including: 1) "the burden on the defendant"; 2) "the interests of the forum State";

3) "the plaintiff's interest in obtaining relief"; 4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and 5) "the shared interest of the several States in furthering fundamental substantive social policies." *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cty.*, 480 U.S. 102, 113 (1987) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). These factors weigh in the Trustee's favor.

The burden on PIFSS is minimal. *See Maxam Absolute Return Fund*, 460 B.R. at 119 (finding New York counsel and "conveniences of modern communication and transportation" minimize any such burden). The United States has a strong interest in applying U.S. law in the BLMIS liquidation. *See id.*; *see also In re Picard*, 917 F.3d at 103 (noting "compelling interest in allowing domestic estates to recover fraudulently transferred property"). And the Trustee has a strong interest in litigating in the United States. *See Maxam Absolute Return Fund*, 460 B.R. at 119; *see also BLI*, 480 B.R. at 517 (having purposely funneled millions of dollars to BLMIS in New York, the defendant "cannot claim a violation of its due process rights from having to appear in a New York court to defend itself in a suit arising from activities with a clear New York nexus").

On this point, PIFSS cites to *In re BLMIS*, 654 F.3d 229 (2d Cir. 2011) for the proposition that "customers that are 'net losers' are afforded priority over those that are 'net winners.'" Mot. at 22. PIFSS attempts to argue that U.S. Courts have "little interest" in the Trustee's case against a "net loser." *Id*. This is simply irrelevant to the determination of personal jurisdiction over a subsequent transferee defendant. Accordingly, this Court's exercise of jurisdiction over PIFSS is reasonable.

### E.    **At Minimum, the Trustee Is Entitled to Jurisdictional Discovery**

If this Court finds that the Trustee has not yet made a *prima facie* showing of jurisdiction, the Trustee respectfully requests jurisdictional discovery. Such discovery may be authorized where a plaintiff has made "a threshold showing" that there is some basis for jurisdiction. *Kiobel v. Royal*

*Dutch Petroleum Co.*, No. 02 Civ. 7618(KMW)(HBP), 2009 WL 3817590, at *4 (S.D.N.Y. Nov. 16, 2009); *Ayyash v. Bank Al-Madina*, No. 04 Civ. 9201(GEL), 2006 WL 587342, at *6 (S.D.N.Y. Mar. 9, 2006) (granting jurisdictional discovery because allegations of wire transfers through the United States made a "sufficient start" toward establishing jurisdiction). The Trustee has made that showing here.

## III.    THE TRUSTEE'S ALLEGATIONS ARE SUFFICIENTLY PLEADED UNDER THE FEDERAL RULES OF CIVIL PROCEDURE

PIFSS contends that the Trustee's wholesale incorporation of the Fairfield Amended Complaint violates Fed. R. Civ. P. 8. Mot. at 23-27; Compl. ¶ 35. However, Courts within the Second Circuit (1) have established that in the bankruptcy context, the wholesale incorporation of an initial transferee complaint, like this one, is allowed under Fed. R. Civ. P. 10(c) in a subsequent transferee action; or (2) may take judicial notice of its own decision on the avoidability of the initial transfers or allow the Trustee the opportunity to replead.

### A.    The Trustee's Complaint Provides Fair Notice of the Claim Asserted

Fed. R. Civ. P. 10(c), made applicable by Bankruptcy Rule 7010, allows the incorporation of other pleadings by reference. Fed. R. Civ. P. 10(c) is intended to "facilitate pleadings that are 'short, concise, and free of unwarranted repetition,' as well as to promote 'convenience' in pleading." *Morrison v. Off. of the U.S. Tr. (In re Morrison)*, 375 B.R. 179, 193 (Bankr. W.D. Pa. 2007) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure 3d § 1326 (4th ed. 2007) ("Wright & Miller")).

In the bankruptcy context, all matters under the umbrella of one liquidation are considered to be one proceeding for purposes of Fed. R. Civ. P. 10(c).[46] *Am. Casein Co. v. Geiger (In re*

---

[46] PIFSS cites to several cases where courts in other contexts have declined to allow incorporation by reference of pleadings in a different action. *See* Mot. at 24-26. However, because none of those cases addressed whether a party may incorporate by reference a pleading in the bankruptcy context, they are distinguishable from the instant matter.

*Geiger)*, 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010) (allowing incorporation by reference of the pleadings in a different adversary proceeding within the same liquidation because the pleadings "directly relate[d] to, materially affect[ed], and [were] filed in a single bankruptcy case"). This is so because the whole liquidation is "an umbrella under which all actions concerning [the] estate must be brought pursuant to the Bankruptcy Rules." *Id*.

Importantly, the District Court in this SIPA liquidation proceeding already found sufficient the Trustee's incorporation by reference of initial transferee complaints—including against Sentry—in subsequent transfer actions.

> [The] Trustee's complaint against [the subsequent transfer defendant] incorporates by reference the complaints against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).

*Sec. Inv. Prot. Corp. v. BLMIS (In re Madoff Sec.)*, 501 B.R. 26, 36 (S.D.N.Y. 2013) (citations omitted). This decision is now law of the case. *See In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018) (holding that "law of the case doctrine," in which "a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages," also "applies to different adversary proceedings filed within the same main bankruptcy case" (citations omitted)).

Further, Courts have permitted wholesale incorporation by reference of separate actions in appropriate circumstances. *See, e.g.*, *Sherman v. A.J. Pegno Constr. Corp.*, 528 F.Supp.2d 320, 323 n.5 (S.D.N.Y. 2007) (interpreting Rule 10(c)'s reference to "another pleading" as not being confined to another pleading in the same action).

The Trustee references only one other document—the initial transfer Fairfield Amended Complaint—and the incorporation is explicit and straightforward, with its purpose obvious. *See*

Wright & Miller § 1326 ("If the incorporation is clear, less emphasis need be placed on the source of the incorporated material."). Reference to the then-operative Fairfield Amended Complaint provides notice of the avoidability of the initial transfers in a manner that avoids repetition and over-complication. Courts have noted that "[t]he ability to incorporate matter from other pleadings is especially useful in multiparty litigation when the presence of common questions often results in the pleadings of the parties on the same side of the litigation being virtually identical, which makes employing simple incorporations by reference highly desirable." *Sherman*, 528 F.Supp.2d at 323 n.5 (citing Wright & Miller § 1326); Wright & Miller § 1326 n.1 ("Adoption by reference avoids overly long or complicated pleadings.").[47]

### 1. At Minimum, the Trustee Should Be Afforded the Opportunity to Replead

If the Court does not take judicial notice of the avoidability of the initial transfers at issue, the Trustee should be granted leave to replead. Fed. R. Civ. P. 15(a), made applicable by Bankruptcy Rule 7015, provides that "[t]he court should freely give leave [to amend] when justice so requires." The Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)." *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006). As evidenced by the cases relied upon by PIFSS, leave to replead extends to complaints that were dismissed for improperly incorporating other pleadings or motions by reference. *See, e.g.*, *Geiger*, 446 B.R. at 683; *Toberman v. Copas*, 800 F.Supp. 1239, 1244 (M.D. Pa. 1992).

---

[47] Regardless of incorporation, this Court may take judicial notice of the Fairfield Second Amended Complaint and its opinion in *Fairfield Inv. Fund Ltd.*, 2021 WL 3477479, in which the Court held that the Trustee plausibly alleged the Fairfield Funds' actual knowledge of fraud. On a motion to dismiss, "a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*." *Ferrari v. Cnty. of Suffolk*, 790 F.Supp.2d 34, 38 n.4 (E.D.N.Y. 2011). "Included among such matters are decisions in prior lawsuits." *DeMasi v. Benefico*, 567 F.Supp.2d 449, 453 (S.D.N.Y. 2008).

## IV.   THE TRUSTEE'S CLAIM IS NOT BARRED UNDER 11 U.S.C. § 546(e)

Section 546(e) provides a safe harbor for the avoidance of certain initial transfers made outside the two-year period referenced in Section 548(a)(1)(A). *See* 11 U.S.C. § 546(e) ("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title." (emphasis added)). However, the District Court held that a transferee's actual knowledge of Madoff's fraud precluded application of the safe harbor, thereby allowing the Trustee to avoid and recover transfers made prior to the two-year period. *Sec. Inv. Prot. Corp. v. BLMIS*, No. 12-MC-115, 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2012) (Rakoff, J.) ("*Cohmad*").

PIFSS contends that the initial transfers from BLMIS to Sentry are protected from avoidance by the 11 U.S.C. § 546(e) safe harbor provision. Mot. at 27. Because this lawsuit is predicated on the Trustee first avoiding transfers from BLMIS to Sentry, PIFSS argues the subsequent transfer claim against it should be dismissed. *Id*. at 27-29. As discussed below, PIFSS's argument that Section 546(e) bars recovery as to these non-two-year transfers must be rejected because PIFSS misinterprets *Cohmad* and because law of the case dictates otherwise.

### A.   Sentry's Actual Knowledge of Madoff's Fraud Bars Application of Section 546(e)

PIFSS sets forth at length the requirements of Section 546(e) and how they are supposedly met in this case, specifically discussing whether Sentry qualifies as a financial institution,[48] whether Sentry's Agreements qualify as securities contracts, and whether Sentry's transfers to PIFSS qualify as settlement payments. Mot. at 29-35. None of this matters, however, because, as

---

[48] PIFSS's argument that the Trustee is in privity with the Fairfield Liquidators and is therefore bound by any rulings in the Fairfield liquidation is wrong. *See* Mot. at 31 & n.20. PIFSS cites no relevant authority for this argument because none exists. *New Hampshire v. Maine*, 532 U.S. 742 (2001), does not even involve nonparty preclusion. And if *Taylor v. Sturgell*, 553 U.S. 880 (2008), "stands for anything, it is for the need to narrow and regularize the use of preclusion against nonparties." *Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*, No. 07-MD-1902 (JSR), 2013 WL 12191844, at *11 (S.D.N.Y. Mar. 25, 2013).

this Court has previously held, the Trustee has sufficiently pleaded that the initial transferee Sentry had actual knowledge of Madoff's fraud and that such initial transfers are avoidable. *See Fairfield Inv. Fund Ltd.*, 2021 WL 3477479, at \*4-5. As such, Section 546(e) does not bar recovery of those transfers from PIFSS, regardless of whether Sentry or PIFSS qualifies as a financial institution, their Agreements qualify as securities contracts, or their transfers qualify as settlement payments.

### B.    PIFSS Is Precluded From Relitigating the Actual Knowledge Exception Established in *Cohmad*

In a footnote, Defendants preserve their right to argue on appeal that *Cohmad* is wrong and to relitigate whether actual knowledge bars the application of Section 546(e). The District Court issued *Cohmad* following consolidated proceedings on the application of Section 546(e). PIFSS participated in those proceedings[49] and concedes that *Cohmad* held that a party with actual knowledge of Madoff's fraud cannot claim the protections of Section 546(e). Mot. at 34 (citing *Cohmad*, 2013 WL 1609154, at \*10-11). The District Court then remanded to this Court, and this Court has since applied the actual knowledge "exception" on several occasions.[50] Given PIFSS's participation in the withdrawal of the reference and the District Court's review of this issue, PIFSS is bound by *Cohmad*. *See Sec. Inv. Prot. Corp. v. BLMIS (In re Bernard L. Madoff)*, 531 B.R. 439, 466 (Bankr. S.D.N.Y. 2015) ("Those moving defendants that participated in the withdrawal of the reference of the antecedent debt/value issue have had their day in court and Judge Rakoff's decisions are law of the case.").

---

[49] Motion to Withdraw the Reference, *Picard v. The Public Institution for Social Security*, Adv. Pro. No. 12-01002 (BRL) (Bankr. S.D.N.Y. Apr. 2, 2012), ECF No. 10 (raising Section 546(e) as a ground for withdrawal).

[50] *See, e.g.*, *Fairfield Inv. Fund Ltd.*, 2021 WL 3477479, at \*4 (applying actual knowledge exception); *Picard v. Magnify, Inc. (In re BLMIS)*, 583 B.R. 829, 841 (Bankr. S.D.N.Y. 2018) (same); *Picard v. Mendelow (In re BLMIS)*, 560 B.R. 208, 225-26 (Bankr. S.D.N.Y. 2016) (same); *Picard v. Avellino (In re BLMIS)*, 557 B.R. 89, 112 (Bankr. S.D.N.Y. 2016) (same); *Picard v. Shapiro (In re BLMIS)*, 542 B.R. 100, 112 (Bankr. S.D.N.Y. 2015) (same); *Picard v. Ceretti (In re BLMIS)*, Adv. Pro. No. 09-01161 (SMB), 2015 WL 4734749, at \*12-13 (Bankr. S.D.N.Y. Aug. 11, 2015) (same); *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 140 (Bankr. S.D.N.Y. 2014) ("*Merkin I*") (same).

Nor does the Second Circuit's decision in *Picard v. Ida Fishman Recoverable Trust (In re BLMIS)* warrant reconsideration of *Cohmad*'s actual knowledge exception. 773 F.3d 411 (2d Cir. 2014) ("*Ida Fishman*"). As this Court has recognized, *Ida Fishman* did not address the actual knowledge exception. *See Picard v. Cohen*, Adv. Pro. No. 10-04311, 2016 WL 1695296, at *10 n.16 (Bankr. S.D.N.Y. Apr. 25, 2016).

### C.  **PIFSS Is Also Precluded From Arguing That Section 546(e) Applies Independently to Recovery Actions**

PIFSS asserts that the Trustee must allege that the subsequent transferee had actual knowledge in order to invoke the actual knowledge exception to Section 546(e). Mot. at 34-35. Specifically, it argues that under *Cohmad*, the Sentry Articles of Association may act as the relevant "securities contract" in lieu of BLMIS's account agreement, and as such, in these Section 550 recovery actions, the court must look solely to PIFSS's actual knowledge to determine whether the initial transfer is avoidable. Mot. at 32. But *Cohmad* does not stand for this proposition, and the argument is just a repackaging of the previously rejected argument that the Section 546(e) safe harbor should independently apply to actions under Section 550.

By its plain language, Section 546(e) applies to the avoidance of initial transfers, not the recovery of subsequent transfers under Section 550. *See* 11 U.S.C. § 546(e) ("[T]he trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title." (emphasis added)); *see also BNP*, 594 B.R. at 197 ("The Trustee does not . . . 'avoid' the subsequent transfer; he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550."). This limitation on the safe harbor to avoidance actions is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct." *In re Madoff Sec.*, 501 B.R. at 30. This is also consistent with the understanding that the Bankruptcy Code's avoidance provisions

protect against depletion of a debtor's estate, while Section 550 is merely a "utility provision," intended to help execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place." *See In re Picard*, 917 F.3d at 98.

*Cohmad* confirmed that Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees. The District Court withdrew the reference on whether Section 546(e) barred recovery of a subsequent transfer pursuant to Section 550.[51] However, in its decision, the court specifically limited the safe harbor to avoidance claims based on the plain language of Section 546(e). *See Cohmad*, 2013 WL 1609154, at *4, *9 (applying the "plain terms" of Section 546(e)); *Id*. at *7 (recognizing that subsequent transferees can raise initial transferees' defenses to *avoidance*); *Id*. at *10 ("[B]oth initial transferees and subsequent transferees are entitled to raise a defense based on the application of Section 546(e) to the *initial* transfer from Madoff Securities" (emphasis added)). And though the court hypothesized, in *dicta*, that a subsequent transferee's subscription agreements with the initial transferee feeder fund, and related agreements and transactions, might under certain circumstances constitute relevant "securities contracts," and that certain subsequent transferee defendants might qualify as "financial institutions" or "financial participants," the decision is clear that the focus of the safe harbor is still on the *initial* transfers.[52] *See id*. at *9 ("[T]he question . . . is whether the Trustee has alleged that that *initial transfer* was made in connection with (*i.e.*, related to) a covered securities contract . . . ." (emphasis added)).

Based on *Cohmad*, this Court held in *BNP* that Section 546(e) applies only to avoidance

---

[51] *See Sec. Inv. Prot. Corp. v. BLMIS (In re Madoff Sec.)*, 12 MC 0115 (JSR), 2012 WL 12539777, at *3 (S.D.N.Y. May 16, 2012) (withdrawing the reference on issue of "whether application of Section 546(e) to an initial or mediate Transfer bars recovery by the Trustee of any subsequent Transfer pursuant to Section 550").

[52] For this same reason, *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 339 (2d Cir. 2011), which the District Court cites in *Cohmad* solely to support its reading of what constitutes a "securities contract," does not change this outcome. The focus is still on the initial transfers, which for purposes of Section 546(e) are the transfers from BLMIS to its feeder funds. *See Ida Fishman*, 773 F.3d at 422-23.

and not recovery, and that a subsequent transferee cannot assert the protections of Section 546(e) where the Trustee has adequately pleaded the initial transferee's actual knowledge. *See BNP*, 594 B.R. at 197. In *BNP*, this Court explicitly rejected the argument being made here—that the "*only way the Trustee can escape the application of Section 546(e) here is by pleading with particularity and plausibility that the [subsequent transferee defendants] actually knew of the Madoff Ponzi scheme.*" *BNP*, 594 B.R. at 196-97 (emphasis in original). Like *Cohmad*, *BNP* is law of the case and PIFSS is bound by both decisions.[53]

## V.    THE TRUSTEE ADEQUATELY ALLEGES FACTS SHOWING THE TRANSFER TO PIFSS WAS COMPRISED OF BLMIS CUSTOMER PROPERTY

PIFSS's final argument for dismissal is that the Complaint fails to tie any BLMIS initial transfer to Sentry with the subsequent transfer that PIFSS received. Mot. at 35-39. Specifically, PIFSS argues that the Trustee has failed to state a claim because the Complaint does not sufficiently allege that the redemption payment it received from Sentry was a subsequent transfer of BLMIS customer property. *Id*. at 37-39. This argument assumes that the Trustee must identify the specific initial transfers of BLMIS customer property that were subsequently transferred to PIFSS. That notion is unsupported. As part of this argument, PIFSS suggests that, because Sentry netted subscriptions and redemptions on a monthly basis and only withdrew funds from BLMIS when redemptions exceeded monthly subscriptions, at least some of the transfers from Sentry comprise investor money that never emanated from BLMIS. *Id*. at 38. On the whole, PIFSS misconstrues the Trustee's pleading burden.

---

[53] If this Court were to entertain PIFSS's position that it has an independent basis to apply Section 546(e), the Trustee reserves the right to argue that Section 546(e) still does not protect PIFSS because it also had actual knowledge of Madoff's fraud and to amend his complaint accordingly.

A.    **The Trustee Has Met the Pleading Standard Under Section 550(a)(2)**

To plead a subsequent transfer claim under Section 550(a)(2), the Trustee must allege facts that support an inference "that the funds at issue originated with the debtor." *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distributors, Inc.)*, 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007); *accord Picard v. Est. of Stanley Chais (In re BLMIS)*, 445 B.R. 206, 235 (Bankr. S.D.N.Y. 2011). "[A] complaint 'need only allege sufficient facts to show the relevant pathways through which the funds were transferred.'" *45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019) (quoting *Picard v. Charles Ellerin Revocable Tr. (In re BLMIS)*, No. 08-01789 (BRL), Adv. Pro. Nos. 10-04398 (BRL), 10-05219 (BRL), 2012 WL 892514, at *2-3 (Bankr. S.D.N.Y. Mar. 14, 2012)). "To hold otherwise would be to place an onerous and undue burden on plaintiffs asserting these kinds of claims." *Id.*

The Trustee must only plead "the necessary vital statistics—the who, when, and how much" of the purported transfers" that PIFSS received. *Merkin I*, 515 B.R. at 150. He needs to allege only that at least part of the alleged transfers originated from BLMIS. *See 45 John Lofts, LLC*, 599 B.R. at 746-47 (rejecting defendant's argument "that Plaintiff generically, and without factual support, alleged that every transfer out of" the initial transferee's commingled account was made with debtor property; the plaintiff is not required, at the pleading stage, "to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss" (cleaned up)). The pleading burden "is not so onerous as to require 'dollar-for-dollar accounting' of 'the exact funds' at issue." *Id.* (quoting *Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *3); *Silverman*, 379 B.R. at 30 ("[I]f dollar-for-dollar accounting is not required at the proof stage, then surely it is not required at the pleading stage either."). Here, the Complaint does so by outlining these vital statistics in paragraphs 34-41 and Exhibits B and C.

35

**B.**     **At the Pleading Stage, the Trustee Is Not Required to Detail What Portion of Each Subsequent Transfer Comprises Customer Property**

PIFSS is wrong that the Trustee must allege that the BLMIS transfers to Sentry occurred within a prescribed period of time relative to Sentry's transfer to PIFSS. Mot. at 38. As stated, the Trustee is not required to specify what portion of the transfers at issue comprise customer property or to connect a subsequent transfer to an initial voidable transfer. *See Merkin I*, 515 B.R. at 150, 152-53 (declining to dismiss Trustee's subsequent transfer claims even though he was unable to connect each subsequent transfer with an initial voidable transfer from BLMIS, while noting "at least some of the subsequent transfers . . . may be recoverable").[54]

On this point, PIFSS relies on *Shapiro*, 542 B.R. at 119, and attempts to analogize it on the basis that the Complaint offers only "barebone allegations" that are "deficient" and "conclusory." Mot. at 36-37. *Shapiro* is blatantly distinguishable. In *Shapiro*, the court dismissed subsequent transferee claims where the Trustee did not "plausibly imply that the initial transferees even made subsequent transfers," alleging only that "a portion" was transferred without any evidence of any subsequent transfers. *Id*. Rather, the Trustee alleged more generally that certain trusts and members of the Shapiro family received approximately $54 million in fraudulent transfers from BLMIS, and "upon information and belief" these defendants subsequently transferred this same amount to other defendants. 542 B.R. at 119. Here, the Complaint does identify specific transfers from BLMIS to Sentry by outlining the requisite "vital statistics" in paragraphs 33-41 and Exhibits B and C, discussed *supra*. *See Silverman*, 379 B.R. at 32. The Trustee alleges additional facts

---

[54] PIFSS claims that because it received its transfer six months after Sentry withdrew funds from BLMIS that it is implausible that it received customer property. Mot. at 38 n.27. Even if it may prove difficult for the Trustee to trace the subsequent transfer sought here, this is not grounds for dismissal at the pleading stage. *See Merkin I*, 515 B.R. at 152 (finding it "premature to cut off the Trustee's opportunity to satisfy his [tracing] burden on a motion to dismiss" merely because the tracing may prove difficult); *Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*, Adv. Pro. Nos. 10-03493 (SMB), 10-05447 (SMB), 2014 WL 47774, at *15 (Bankr. S.D.N.Y. Jan. 3, 2014) ("[T]he [subsequent transferees'] speculation that tracing is 'not likely' to reveal a subsequent transfer . . . hardly justifies granting [their cross-motion for summary judgment].").

regarding PIFSS's status as an investor in Sentry, including a Subscription Agreement, redemption request, and communication with Sentry regarding its investment and redemption. Compl. ¶ 6. For this important reason, the facts here are more robust and detailed than in *Shapiro*.

Further, dismissal is not warranted on the basis that Fairfield used funds from sources other than BLMIS to make the redemption payment to PIFSS. While the commingling of redemptions and subscriptions complicates the tracing of customer property from BLMIS, it is not fatal to the Trustee's subsequent transfer claims. *See Dahar v. Jackson (In re Jackson)*, 318 B.R. 5, 25 (Bankr. D.N.H. 2004) ("[T]he mere commingling of the defendant's property with the proceeds of property fraudulently transferred by the Debtor is not sufficient to defeat tracing."); *Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *3 (finding that at the summary judgment stage, it is not necessary for the Trustee to specify what portion of the subsequent transfers, which were paid from commingled funds, were derived from BLMIS).

Because money is fungible, "[t]he goal of tracing is not to trace anything at all in many cases, but rather [to] serve[] as an equitable substitute for the impossibility of specific identification." *Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *2-3 (quoting *United States v. Henshaw*, 388 F.3d 738, 741 (10th Cir. 2004)). "Courts have broad discretion to determine which monies of comingled funds derive from fraudulent sources." *Id*. at *3 n.7 (citing *Henshaw*, 388 F.3d at 741 ("There are several alternative methods, none of which is optimal for all commingling cases; courts exercise case-specific judgment to select the method best suited to achieve a fair and equitable result on the facts before them.")); *see also*, *McHale v. Boulder Cap. LLC (In re 1031 Tax Grp., LLC)*, 439 B.R. 78, 81 (Bankr. S.D.N.Y. 2010) (concluding that a pro rata allocation of commingled fraudulent transfers was appropriate).[55]

---

[55] The Bankruptcy Court has recognized several different tracing methodologies offered by the Trustee in this liquidation, including: (1) Last In, First Out (LIFO), (2) First In, First Out (FIFO), (3) Lowest Intermediation Balance

Due to Sentry's alleged practice of netting subscriptions and redemptions, the aggregate amount of the Trustee's subsequent transfer claims across his adversary proceedings may even exceed the amount of the initial transfers to which such subsequent transfers may be tied. Ultimately, the Court's "task here is to 'look beyond the particular transfers in question to the entire circumstance of the transactions.'" *Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 239 F.3d 365, 2000 WL 1741550, at *5 (5th Cir. 2000), *as amended on reh'g* (Dec. 11, 2000) (quoting *Nordberg v. Societe Generale (In re Chase & Sanborn Corp.)*, 848 F.2d 1196, 1198 (11th Cir. 1988)). The circumstances of the transfers, including the purposes of the transfers and the parties' intent are relevant to equitable principles applied to tracing. *See Southmark Corp.*, 2000 WL 1741550, at *5 (affirming lower court's finding that a subsequent transfer was recoverable despite non-definitive tracing because the transferor's intent was to make the payment out of funds it received from the debtor). And as addressed *supra*, it is premature for PIFSS to make tracing arguments at this stage of the litigation.[56]

### C.    <u>The Trustee, as an Outsider, Should Be Permitted to Obtain Discovery</u>

An outsider to the transactions, the Trustee deserves an opportunity to conduct a more thorough investigation through discovery. "[I]n a case such as this one, where the Trustee's lack of personal knowledge is compounded with complicated issues and transactions [that] extend over

---

Rule (LIBR), (4) Restated Tracing Rules (Restated LIBR), and (5) Proportionality. These "methodologies reflect legal rules or fictions designed to assist a Court in dealing with an improper transfer from a commingled fund." *Picard v. Merkin (In re Bernard L. Madoff)*, 581 B.R. 370, 386 (Bankr. S.D.N.Y. 2017).

[56] The Court should reject PIFSS argument regarding a "fatal flaw" in the Trustee's allegations due to the fact that he is seeking more money from all of Sentry's subsequent transferees than the fund withdrew from BLMIS. Mot. at 39 n.29. There is no dispute that the Trustee is limited to "a single satisfaction" under Section 550(a). 11 U.S.C. § 550(d). However, the Trustee "can recover from any combination of [transferees]" up to the amount avoided. *Helms v. Metro. Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021). And under § 550(a), "a trustee may recover [an avoided] transfer from a subsequent transferee of those funds, without the necessity for allocation among all [the] subsequent transferees." *CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*, 393 B.R. 306, 333 (Bankr. W.D.N.Y. 2008). Thus, until the Trustee recovers the full amount of approximately $3 billion in fraudulent transfers received by Sentry, the Trustee may simultaneously seek recovery from PIFSS in this action and from defendants in other actions, even in an aggregate amount that exceeds initial transfers.

lengthy periods of time, the trustee's handicap increases, and even greater latitude should be afforded" to him. *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (quoting *Sec. Inv. Prot. Corp. v. Stratton Oakmont Inc.*, 234 B.R. 293, 310 (Bankr. S.D.N.Y 1999) (cleaned up).

The Bankruptcy Court in this matter has acknowledged the Trustee's need for discovery in BLMIS proceedings. *See Merkin I*, 515 B.R. at 151 (denying dismissal even where the Trustee could not trace all subsequent transfers back to BLMIS, in part because subsequent transfers "must ultimately be proved through the books and records of the defendants"); *Est. of Stanley Chais*, 445 B.R. at 236 (the question of whether defendants "received [s]ubsequent [t]ransfers of BLMIS funds from one another is a question to which they, and they alone, have the requisite information to respond"); *Picard v. Merkin (In re BLMIS)*, 440 B.R. 243, 270 (Bankr. S.D.N.Y. 2010) (defendants "presumably have exclusive access to more detailed information regarding the proportion of their fees attributable to their BLMIS investments, and discovery of such information is warranted on the basis of the Trustee's allegations").

PIFSS's suggestion that the Trustee has all the records of both BLMIS and Sentry is not correct. Mot. at 39. Discovery in the Trustee's actions against the Fairfield management defendants is not complete. *See, e.g.*, Stipulated Case Management Order, *Picard v. Fairfield Inv. Fund Ltd. (In re Bernard L. Madoff)*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Dec. 6, 2021), ECF No. 353 (setting November 2022 deadline for fact discovery and August 2023 deadline for expert discovery). It is possible that PIFSS has records it can provide on these same transactions. Thus, the Trustee should be entitled to discovery before outright dismissal of his subsequent transfer claims.

## **CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests that the Court deny PIFSS's

Motion.


Dated: April 26, 2022
      New York, New York

*/s/ Brian W. Song*

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Brian W. Song
Email: bsong@bakerlaw.com
Ganesh Krishna
Email: gkrishna@bakerlaw.com
Ariana Dindiyal
Email: adindiyal@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee
for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment
Securities LLC and the Chapter 7 Estate of
Bernard L. Madoff*