JENNER & BLOCK LLP
Richard Levin
Carl Wedoff
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600

Vincent E. Lazar
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350

*Counsel for Defendant Banque Syz & Co., SA*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Proc. No. 08-01789 (CGM) |
| *Plaintiff-Applicant,* | |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| *Defendant.* | |
| In re | |
| BERNARD L. MADOFF, | |
| *Debtor.* | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Proc. No. 11-02149 (CGM) |
| *Plaintiff,* | **BANQUE SYZ SA'S REPLY TO THE TRUSTEE'S MEMORANDUM IN OPPOSITION TO BANQUE SYS'S MOTION TO DISMISS THE COMPLAINT** |
| v. | |
| BANQUE SYZ & CO., SA, | |
| *Defendant.* | |

# TABLE OF CONTENTS

Table of Authorities ............................................................................................ ii

Introduction ....................................................................................................... 1

I.      The Complaint Does Not Comply with F.R.C.P. 8(a) and 10(c). .................. 1

II.     The Complaint's Allegations Establish Two Affirmative Defenses. ........... 4

    A.     An Innocent Subsequent Transferee May Invoke the Section 546(e)
        Safe Harbor With Respect to the Initial Transfer. ........................... 4

    B.     The Complaint Establishes Banque Syz's Good Faith For Value
        Defense. ......................................................................................... 8

III.    The Trustee Has Not Justified His Failure To Plead Plausibly That Banque
    Syz Received Customer Property .................................................................10

    A.     The Trustee Has Not Alleged Facts That Support the Inference the
        Funds He Alleges Banque Syz Received Originated With BLMIS. ...............10

    B.     The Trustee's Tracing and Commingling Arguments Are Not
        Relevant. ........................................................................................11

    C.     The Trustee Has All of the Records He Needs.................................12

IV.     The Complaint Alleges Insufficient Facts To Support Personal Jurisdiction. ...........13

    A.     Banque Syz Acted as Agent (Custodian) for Disclosed Principal Isos
        Fund Ltd. ........................................................................................13

    B.     Banque Syz Did Not Purposefully Avail Itself of Conducting Business
        in the United States. ........................................................................16

    C.     Banque Syz's New York Bank Account Does Not Subject It to Specific
        Personal Jurisdiction Here...............................................................18

V.      Count II Seeking Disallowance of the Isos Claim Should Be Dismissed...................20

Conclusion .......................................................................................................20

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*45 John Lofts, LLC v. Meridian Capital Group LLC (In re 45 John Lofts, LLC),*
599 B.R. 730 (Bankr. S.D.N.Y. 2019) ...................................................................11

*Aozora Bank Ltd. v. SIPC,*
480 B.R. 117 (S.D.N.Y. 2011)................................................................15, 17

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)................................................................................9, 12

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)................................................................................12

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985)................................................................16, 18

*CEM Corp. v. Pers. Chemistry, AB,*
55 F. App'x 621 (4th Cir. 2003)................................................................18

*In re CNB Intern., Inc.,*
393 B.R. 306 (Bankr. W.D.N.Y. 2008) ................................................................12

*In re Dreier,*
452 B.R. 391 (Bankr. S.D.N.Y. 2011) ................................................................4

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.,*
141 S. Ct. 1017 (2021)................................................................16, 17, 18

*Goodyear Dunlop Tires Ops., S.A. v. Brown,*
564 U.S. 915 (2011)................................................................16, 18

*Griffin Indus. v. Irvin,*
496 F.3d 1189 (11th Cir. 2007) ................................................................14

*Johnson v. Fed. Home Loan Mortg. Corp.,*
793 F.3d 1005 (9th Cir. 2015) ................................................................14

*Kowalski v. YellowPages.com, LLC,*
2012 WL 1097350 (S.D.N.Y. Mar. 31, 2012) ................................................................14

*Kruse v. SIPC,*
708 F.3d 422 (2d Cir. 2013) ................................................................15

*Licci v. Lebanese Canadian Bank,*
    20 N.Y.3d 327 (2012) ...............................................................................................19

*Lowe v. Connect Invest. Corp.,*
    2020 WL 10355788 (W.D. Tex. Sep. 25, 2020) ...................................................18

*McKenna v. Wright,*
    386 F.3d 432 (2d Cir. 2004) .....................................................................................4

*In re O'Malley,*
    601 B.R. 629 (Bankr. N.D. Ill. 2019) .....................................................................12

*Official Committee of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank,*
    549 B.R. 56 (S.D.N.Y. 2016) ..................................................................................19

*In re Outlaw Lab'y, LP Litig.,*
    2019 WL 3889559 (S.D. Cal. Aug. 19, 2019) .......................................................14

*Picard v. ABN AMRO Bank N.A.,*
    2020 WL 1584491 (Bankr. S.D.N.Y. Mar. 31, 2020) .............................................8

*Picard v. Avellino,*
    557 B.R. 89 (Bankr. S.D.N.Y. 2016) ........................................................................6

*Picard v. BNP Paribas S.A.,*
    594 B.R. 167 (Bankr. S.D.N.Y. 2018) .......................................................7, 17, 18

*Picard v. Bureau of Labor Ins.,*
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) ....................................................................17

*Picard v. Ceretti,*
    2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015) .............................................6

*Picard v. Citibank, N.A.,*
    12 F.4th 171 (2d Cir. 2021) ......................................................................................9

*Picard v. Cohmad Sec. Corp.,*
    454 B.R. 317 (Bankr. S.D.N.Y. 2011) ..............................................................10, 13

*Picard v. Est. of Mendelow,*
    560 B.R. 208 (Bankr. S.D.N.Y. 2016) ......................................................................6

*Picard v. Magnify, Inc.,*
    583 B.R. 829 (Bankr. S.D.N.Y. 2018) ......................................................................6

*Picard v. Mayer,*
    2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021) ............................................13

*Picard v. Merkin*,
    440 B.R. 243 (Bankr. S.D.N.Y. 2010) ................................................................4

*Picard v. Merkin*,
    515 B.R. 117 (Bankr. S.D.N.Y. 2014) ............................................ 6, 11, 12, 13

*Picard v. Shapiro*,
    542 B.R. 100 (Bankr. S.D.N.Y. 2015) ..........................................................6, 11

*Picard v. Square One Fund Ltd.*,
    No. 10-4330 (Bankr. S.D.N.Y. May 29, 2019) ................................................6

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000) ..............................................................................3

*Rothstein v. Am. Int'l Group, Inc.*,
    837 F.3d 195 (2d Cir. 2016) ............................................................................8

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib. Inc.)*,
    379 B.R. 5 (Bankr. E.D.N.Y. 2007) ..............................................................10

*SIPC v. BLMIS*,
    501 B.R. 26 (S.D.N.Y. 2013) ..........................................................................2

*SIPC v. BLMIS*,
    2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ..............................................5, 6

*SIPC v. BLMIS*,
    516 B.R. 18 (S.D.N.Y. 2014) ..........................................................................9

*SIPC v. BLMIS (Picard v. Fairfield Inv. Fund Ltd.)*,
    2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ..............................3, 4, 6

*SIPC v. Morgan, Kennedy & Co.*,
    533 F.2d 1314 (2d Cir. 1976) ........................................................................15

*Spetner v. Palestine Inv. Bank*,
    495 F. Supp. 3d 96 (E.D.N.Y. 2020) ......................................................19, 20

*SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*,
    620 B.R. 505 (Bankr. S.D.N.Y. 2020), (Opp. 14) ..........................................7

*In re UBS AG Securities Litigation*,
    2012 WL 4471265 (S.D.N.Y. 2012) ......................................................1, 5, 16

*United Teamster Fund v. MagnaCare Admin. Servs., LLC*,
    39 F. Supp. 3d 461 (S.D.N.Y. 2014) ..............................................................4

*Walden v. Fiore,*
    571 U.S. 277 (2014) ........................................................................................................17

*Wright v. Ernst & Young LLP,*
    152 F.3d 169 (2d Cir. 1998) ........................................................................................19

*In re Yuska,*
    2018 WL 1725633 (Bankr. N.D. Iowa Apr. 6, 2018) ........................................................16

**Statutes**

11 U.S.C. § 502(d) ................................................................................................13, 20

11 U.S.C. § 550(a)(2) ....................................................................................................12

15 U.S.C. § 78fff-3(a)(2) ..........................................................................................14, 15

15 U.S.C. § 78*lll*(2)(A) ................................................................................................15

**Other Authorities**

17 C.F.R. § 300.101(b) ..................................................................................................15

Fed. R. Bankr. Proc. 3001(b) ........................................................................................20

Fed. R. Civ. P. 8(a) ....................................................................................................1, 2

Fed. R. Civ. P. 8(a)(2) ..................................................................................................3

Fed. R. Civ. P. 10(c) ..................................................................................................1, 2

Fed. R. Civ. P. 12(b)(6) ................................................................................................4

## Introduction

The *Trustee's Memorandum of Law in Opposition to Banque Syz SA's Motion to Dismiss* [ECF 153] ("**Opposition**"), responding to *Banque Syz SA's Memorandum of Law in Support of Its Motion To Dismiss The Complaint* [ECF 150] ("**Memorandum**"), does not address arguments Banque Syz made; addresses instead straw-man arguments Banque Syz did not make; cites cases that are distinguishable or inapposite; and misinterprets key precedents.[1] As such, this Court should grant Banque Syz's Motion to Dismiss.[2]

## I.    The Complaint Does Not Comply with F.R.C.P. 8(a) and 10(c).

In responding to Banque Syz's argument that Rule 10(c) imposes specific limits on incorporation by reference, the trustee says only that incorporation by reference is permissible, citing *American Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670 (Bankr. E.D. Pa. 2010), a case Banque Syz itself cited and is distinguishable on its facts. But the trustee's Opposition ignores the significant limitations on incorporation imposed by *Geiger* and other case law, described in detail in Banque Syz's Memorandum. The trustee neither addressed Banque Syz's Rule 10(c) points (that the Complaint improperly incorporates a pleading from another action, improperly incorporates an entire pleading, and improperly fails to specify the relevant allegations) nor contested their applicability to the facts of this case and therefore is deemed to have conceded those issues. *In re UBS AG Securities Litigation*, 2012 WL 4471265, at *11 (S.D.N.Y. 2012) (plaintiff "concede[d] through silence" defendant's assertion by failing to respond to it in opposition brief).

The trustee's response to Banque Syz's Rule 8(a) argument that the Complaint did not comply with either Rule 8(a)'s requirement of "a short and plain statement of the claim

---

[1] Undefined capitalized terms have the meaning provided in the Memorandum.

[2] To the extent Banque Syz does not specifically reply to an argument in the Opposition, Banque Syz relies on, and does not waive, its argument in the Memorandum addressing the issue.

showing that the pleader to relief" fares no better. *First*, he argues that in *SIPC v. BLMIS*, 501 B.R. 26 (S.D.N.Y. 2013), the District Court ruled that the incorporated allegations of the Fairfield Amended Complaint adequately alleged avoidability of the initial transfer. (Opp. 8.) But the District Court's decision addressed a different legal issue, and the block quote the trustee provides is taken out of context, as trustee's alteration shows. The case involved a consolidated proceeding in which the District Court withdrew the reference to decide several preliminary legal issues. Judge Rakoff summarized the issue before him as follows:

> The question raised in this consolidated proceeding is whether this limitation requires Irving Picard (the "Trustee") — the trustee appointed under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa et seq., to administer the estate of Bernard L. Madoff Investment Securities LLC ("Madoff Securities") — to obtain a judgment of avoidance of Madoff Securities' transfers before he can recover those transfers from a subsequent transferee, and, if so, against whom he must obtain that judgment.

501 B.R. at 28. After extensive analysis, Judge Rakoff ruled that the trustee may seek avoidance of a subsequent transfer without first obtaining a judgment against the initial transferee avoiding the initial transfer. *Id.* at 37. In only one sentence late in the opinion did Judge Rakoff mention the incorporated complaint, and that sentence began with the phrase, which the trustee omitted, "Applying these principles [announced in the opinion] to a representative case …." *Id.* at 36. However, the defendants there had not challenged the propriety or scope of the incorporation, and Judge Rakoff did not delve into it, let alone rule on the Rule 8(a) and 10(c) issues that Banque Syz raises. Therefore, the quote is taken out of context, is dictum, relates to an earlier version of the complaint, does not address Banque Syz's arguments, and does not bind this Court as law of the case or otherwise.

Banque Syz does not claim that the Fairfield Amended Complaint insufficiently alleges avoidability of the Initial Transfers. Rather, the Fairfield Amended Complaint alleges far too much more than avoidability to meet Rule 8(a)(2)'s requirement of a short and plain

statement. By incorporating the entire Fairfield Amended Complaint, the trustee puts at issue all claims asserted against all Fairfield defendants, including a plethora of irrelevant allegations and exhibits having nothing to do with avoidability. Banque Syz should not be required to respond to allegations irrelevant to this action or to guess which ones apply.

*Second*, the trustee argues, "the Court may take judicial notice of the Fairfield complaint and its prior decision holding that the complaint sufficiently alleges the avoidability of the initial transfers from BLMIS." (Opp. 8–9 (citing *SIPC v. BLMIS (Picard v. Fairfield Inv. Fund Ltd.)*, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield*")).) Judicial notice of the *Fairfield* decision's existence cannot save the trustee's Complaint. This Court's *Fairfield* decision addressed the Fairfield Second Amended Complaint, not the Fairfield Amended Complaint that the Complaint here attempts to incorporate.[3] Moreover, judicial notice, particularly of a court decision, cannot substitute for allegations the defendant admits or denies, thus framing the disputed facts and issues for both the parties and the Court. Banque Syz does not dispute the *Fairfield* ruling; it simply challenges the trustee's wholesale incorporation of a complaint from another action that includes a myriad of allegations irrelevant to this action.

The trustee requests leave to amend his Complaint if the Court sustains Banque Syz's Rule 8(a) and Rule 10(c) objection. Banque Syz does not object. All it seeks is a short and plain statement giving it sufficient notice of the claims the trustee asserts against it, without the substantial extraneous material from the improper wholesale incorporation by reference.

---

[3] *Rothman v. Gregor*, 220 F.3d 81, 91–92 (2d Cir. 2000), is not to the contrary, because it addressed judicial notice of a complaint that *defendants* had filed to support plaintiffs' allegations. It did not permit plaintiff to incorporate by reference unspecified allegations in a 200-page complaint as the only allegations in support of otherwise conclusory assertions essential to plaintiff's case.

## II.  The Complaint's Allegations Establish Two Affirmative Defenses.

Where the facts necessary to support an affirmative defense are apparent on the face of the Complaint, the Court should grant the motion to dismiss. *Fairfield,* 2021 WL 3477479, at *9. The trustee instead relies on contrary or inapposite cases.

The trustee quotes *United Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461, 475 (S.D.N.Y. 2014): "Affirmative defenses 'often require[ ] consideration of facts outside of the complaint and thus [are] inappropriate to resolve on a motion to dismiss.'" (Opp. 15.) However, the full quote adds:

> Affirmative defenses may be adjudicated at this stage in the litigation, however, where the facts necessary to establish the defense are evident on the face of the complaint. *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

And *McKenna* permitted an affirmative defense "to be asserted on a Rule 12(b)(6) motion because 'the complaint itself established the circumstances required as a predicate to a finding of qualified immunity.'" *McKenna*, 386 F.3d at 435 (quoting *Green v. Maraio*, 722 F.2d 1013, 1019 (2d Cir. 1983)).

In *Picard v. Merkin*, 440 B.R. 243, 257 (Bankr. S.D.N.Y. 2010), this Court affirmed that a defendant may assert an affirmative defense where the complaint "allege[s] facts (taken as true) that establish an affirmative defense." but denied the motion, "as the Complaint is replete with contrary allegations." The decision in *In re Dreier*, 452 B.R. 391, 426 (Bankr. S.D.N.Y. 2011), acknowledged the same. These cases are thus irrelevant to the questions of whether the Complaint may or does establish Banque Syz's affirmative defenses.

### A.  An Innocent Subsequent Transferee May Invoke the Section 546(e) Safe Harbor With Respect to the Initial Transfer.

The trustee does not dispute that BLMIS was a stockbroker, Sentry was a financial institution, the initial transfer from BLMIS to Sentry was a settlement payment or a transfer in connection with a securities contract between Sentry and Banque Syz and for the benefit

of a financial institution, or that Banque Syz did not have actual knowledge of Madoff's fraud. (Opp. 9–15.) Thus, he has conceded those points. *See UBS AG*, 2012 WL 4471265, at *11.

Nevertheless, the trustee claims that under *SIPC v. BLMIS*, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad II*"), Banque Syz may not assert the section 546(e) safe harbor if the initial transferee had actual knowledge of the fraud. (Opp. 14.) That is, Sentry's alleged actual knowledge of Madoff's fraud would bar not only Sentry, but also every subsequent transferee, from invoking the safe harbor otherwise statutorily applicable to initial transfers made more than two years before bankruptcy.

However, Judge Rakoff's ruling merely barred a transferee—whether initial or subsequent—with actual knowledge of the fraud from invoking the section 546(e) safe harbor. In a governing ruling he directed be applied in many adversary proceedings, *see Cohmad II*, 2013 WL 1609154, at *10,[4] Judge Rakoff held that the relevant "actual knowledge" is that of the party from which the trustee seeks recovery. *Id.* at *1 ("bottom-line ruling").

While paragraph (2) of the bottom-line ruling addressed whether a subsequent transferee would be precluded from asserting the safe harbor where the subsequent transferee itself had actual knowledge of Madoff's fraud, it pointedly did not preclude an innocent subsequent transferee from raising the safe harbor where the initial transferee had actual knowledge of Madoff's fraud. As Judge Rakoff explained, section 546(e) is intended to protect the markets and the reasonable expectations of those "who believed they were signing a securities contract," *id.* at *4, not an initial or subsequent transferee with actual knowledge of fraud, who could have no such expectations. *Id.* at *4, 7.

---

[4] *See* Amended Notice of Motion to Dismiss, *SIPC v. BLMIS*, No. 12-MC-115 (S.D.N.Y. Aug. 10, 2012) [ECF 289] (listing proceedings involved in *Cohmad II*).

5

Thus, Judge Rakoff announced an exception to the safe harbor for subsequent transferees parallel to (not greater than) the one for initial transferees, precluding a defendant (whether an initial or subsequent transferee) with actual knowledge of the fraud scheme from invoking section 546(e).[5] But where the subsequent transferee lacks actual knowledge of the fraud, it has a "reasonable expectation" that it is receiving a settlement payment under a securities contract which is entitled to protection under the safe harbor. *Id.* at *4. Therefore, *Cohmad II* directly supports the safe harbor's applicability to innocent subsequent transferees and requires that Banque Syz's motion to dismiss be granted.

This Court followed this interpretation in *Fairfield*. It dismissed the claim against Corina Noel Piedrahita for subsequent transfers because the trustee "failed to plead individualized factual allegations demonstrating that [she] had independent actual knowledge of the BLMIS fraud," *Fairfield*, at *6, despite having earlier concluded that the operative complaint alleged that various initial transferees, including Sentry, had actual knowledge of BLMIS's fraud. *Id.* at *4. Accordingly, this Court's *Fairfield* ruling compels rejection of the trustee's misinterpretation of *Cohmad II* and dismissal of Count I.[6]

---

[5] The trustee's brief tacitly concedes this, stating that "the point of the actual knowledge exception … is to restrict transferees with actual knowledge from hiding behind the safe harbor." (Opp. 14.)

[6] The trustee asserts that "this Court has since applied the actual knowledge 'exception' on numerous occasions" (Opp. 11), but none of the cases he cites in his accompanying footnote (Opp. 11 n.4) barred an innocent subsequent transferee from invoking the safe harbor based on the actual knowledge of the initial transferee. *See Fairfield*, 2021 WL 3477479, at *7 (dismissing innocent subsequent transferee); *Picard v. Square One Fund Ltd.*, No. 10-4330 (Bankr. S.D.N.Y. May 29, 2019) [ECF 181 at 41] (claim only against initial transferee defendant); *Picard v. Magnify, Inc.*, 583 B.R. 829 (Bankr. S.D.N.Y. 2018) (no subsequent transfer claims in complaint [ECF 143 in No. 10-5279]); *Picard v. Est. of Mendelow*, 560 B.R. 208, 226, 229 (Bankr. S.D.N.Y. 2016) (sustaining allegations of initial transferees' actual knowledge; dismissing subsequent transferee claims); *Picard v. Avellino*, 557 B.R. 89, 116, 125-26 (Bankr. S.D.N.Y. 2016) (not addressing precise question in light of certain concessions and lack of challenges by defendants); *Picard v. Shapiro*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (dismissing subsequent transfer claims); *Picard v. Ceretti*, 2015 WL 4734749, at *1, 10 (Bankr. S.D.N.Y. Aug. 11, 2015) (subsequent transfer claims not subject of motion); *Picard v. Merkin*, 515 B.R. 117, 141, 153 (Bankr. S.D.N.Y. 2014) ("*Merkin*") (applying safe harbor to subsequent transfers beyond two-year period because complaint failed to plausibly allege transferees' actual knowledge).

The trustee also relies on *Picard v. BNP Paribas S.A.*, 594 B.R. 167 (Bankr. S.D.N.Y. 2018), and *SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*, 620 B.R. 505 (Bankr. S.D.N.Y. 2020), (Opp. 14), but neither case discussed whether the initial transferee's actual knowledge bars a subsequent transferee's invocation of section 546(e) as to the initial transfer. Instead, both focused on the straw-man argument to which the trustee devotes most of his section 546(e)'s discussion—that the safe harbor does not apply to a subsequent transfer. *See BNP Paribas*, 594 B.R. at 197 ("the safe harbor is a defense to the avoidance of the *initial* transfer"); *SunEdison*, 620 B.R. at 514 ("the safe harbor defense only applies by its terms to the initial transfer").[7] The issue here is not whether the safe harbor applies to an initial transfer (it does), but rather which transferees are barred from invoking it—and whether the initial transferee's actual knowledge bars a subsequent transferee from asserting the defense as to initial transfers sought to be recovered from it.

Banque Syz's interpretation does not "allow an initial transferee who had knowledge of the fraud and was unable to satisfy a judgment (like Sentry) to place fraudulently transferred funds with a subsequent transferee out of the reach of a trustee." (Opp. 15.) If an initial transferee makes subsequent fraudulent transfers, they typically may be avoided and recovered by its creditors or the estate. In any event, such speculation has no place here. Sentry did not initiate the redemption; Banque Syz did. And Banque Syz is not alleged to have had actual knowledge of Madoff's fraud. It is thus entitled to invoke the protections of section 546(e), and in line with *Cohmad II* and *Fairfield*, the Complaint should be dismissed.

---

[7] To the extent *BNP Paribas* might be read to imply that an innocent subsequent transferee may not invoke the safe harbor, it is inconsistent both with *Cohmad II* and *Fairfield*.

**B.   The Complaint Establishes Banque Syz's Good Faith For Value Defense.**

Two sets of allegations in the Complaint (relating to value and good faith) establish Banque Syz's section 550(b) affirmative defense. The trustee, again quoting from *Fairfield*, asserts that "whether the Defendants 'gave value' in the form of surrendering shares in the Fairfield Funds, such a determination cannot be made as a matter of law or fact at this stage." (Opp. 17 (quoting *Fairfield*, 2021 WL 3477479, at *9).) This conclusion does not apply here. First, Banque Syz is not bound by the Court's ruling against a different defendant in a different adversary proceeding. *See Rothstein v. Am. Int'l Group, Inc.*, 837 F.3d 195, 204 (2d Cir. 2016) ("one is not bound by a judgment … in litigation in which he is not designated as a party"). More importantly, the issues there differed significantly from those here.

The principal focus of the "for value" defense in *Fairfield* was whether the insiders' services constituted "value" under section 550(a). The defendants' argument regarding value for surrender of fund shares was a single sentence. Similarly, this Court's statement, which the trustee quotes, is a single sentence, which did not address the issues Banque Syz raised.

Here, the trustee does not dispute that "value" under section 550(b) is "merely consideration sufficient to support a simple contract, analogous to the 'value' required under state law to achieve the status of a bona fide purchaser for value." *Picard v. ABN AMRO Bank N.A.*, 2020 WL 1584491, at *8 (Bankr. S.D.N.Y. Mar. 31, 2020). As the Memorandum explains, the Complaint alleges that Sentry was a British Virgin Islands fund and the alleged subsequent transfers were payments for redemption of shares in Sentry.[8] (Mem. 2, 10.) The internal affairs doctrine governs the relationship between Sentry and its shareholders, such as Banque Syz, and a final decision of the Eastern Caribbean Court of Appeal has held as a

---

[8] The Opposition confirms the transfers redeemed Sentry shares. (*Decl. of Nicholas J. Cremona in Support of the Trustee's Opposition to Defendant's Motion to Dismiss* at 150–154, Exs. 7, 8 [ECF 154] ("**Cremona Decl.**").)

matter of law that Sentry's redemption of its shares from its shareholders was for good consideration. (Mem. 25–26.) The facts are apparent on the face of the Complaint, and the law has been clearly determined in an authoritative decision that the redemption was for value. Thus, this determination *can* "be made as a matter of law or fact at this stage."

Similarly with respect to good faith. The trustee claims he wishes to take discovery on "myriad of unknown facts critical to opposing a good faith defense" (Opp. 16), and brushes off Banque Syz's position as "pure conjecture." (Opp. 17.) But the trustee's argument relies on pre-*Citibank* law concerning the transferee's knowledge or suspicions and the investigation the transferee conducted, which *Citibank* reversed. *SIPC v. BLMIS*, 516 B.R. 18 (S.D.N.Y. 2014) (good faith is based on the transferee's subjective knowledge), *overruled by Picard v. Citibank, N.A.*, 12 F.4th 171 (2d Cir. 2021). As the Court of Appeals made clear, the key question is whether the defendant upon "diligent inquiry … would have discovered the fraudulent purpose of the transfer." *Citibank*, 12 F.4th at 192 (internal citation and quotation marks omitted). The Court of Appeals set forth a purely hypothetical test—"*would* have discovered"—not a test based on the investigation the defendant actually did or supposedly failed to do. Fact discovery is not relevant to this hypothetical question if the complaint itself, as here, makes clear the result of the hypothetical. The Complaint alleges that even the SEC, with its awesome investigation and enforcement powers, did not discover the fraud. That is not "pure conjecture." That is the trustee's allegation, and is indisputably true. Therefore, it is not plausible that an indirect investor such as Banque Syz, with no leverage over BLMIS, "would have discovered the fraudulent purpose of the transfer." On this point, the Complaint does not state a plausible basis for liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. The Trustee Has Not Justified His Failure To Plead Plausibly That Banque Syz Received Customer Property.

Banque Syz's Memorandum also shows the trustee did not plausibly allege that the purported subsequent transfers included customer property; in many cases, the trustee's own allegations show it is impossible that they did. The Opposition simply waves off this defect— not disputing Banque Syz's central point that the trustee has alleged billions of dollars more in subsequent transfers of BLMIS customer property than initial transfers. Banque Syz does not argue (as the trustee claims) for tracing or a dollar-for-dollar accounting, only for a plausible allegation that the transfers to Banque Syz constituted transfers of customer property. The Complaint's broad generalizations and inherent contradictions do not provide that. This is not a question for expert opinion but a legal question of whether the Complaint plausibly alleges that the transfers in question contained customer property.

#### A. The Trustee Has Not Alleged Facts That Support the Inference the Funds He Alleges Banque Syz Received Originated With BLMIS.

The trustee does not deny that he failed to tie the initial transfer to Sentry to the alleged subsequent transfers to Banque Syz. He argues he need not do so. (Opp. 25.) But the trustee's own authorities belie his argument. *Picard v. Cohmad Sec. Corp.*, 454 B.R. 317, 341 (Bankr. S.D.N.Y. 2011) ("*Cohmad I*"), upheld the complaint because "the Trustee alleges that the amounts of Commissions specified by BLMIS on the Payment Schedules correspond to the amounts paid by BLMIS to Cohmad and, subsequently, to the Cohmad Representatives." *Id*. at 341. The complaint in *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib. Inc.)*, 379 B.R. 5 (Bankr. E.D.N.Y. 2007), pleaded linkage between the initial and subsequent transfers: "The funds … were preceded by fraudulent transfers of funds from Allou in amounts sufficient to cover the [subsequent] transfers." *Id*. at 30; *see also id*. at 13 (initial and subsequent transfers occurred during a 13-day period).

10

In *Merkin*, "several subsequent transfers took place contemporaneously or shortly after an initial transfer . . . , *implying linkage*." 515 B.R. at 150 (emphasis added). And in *45 John Lofts, LLC v. Meridian Capital Group LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730 (Bankr. S.D.N.Y. 2019), the complaint alleged that two payments totaling $29.4 million were deposited into an account and $29.4 million was transferred out within a day. *Id*. at 736-37, 747.

*Iqbal* and *Twombly* require the trustee to plead a plausible linkage between the initial and subsequent transfers. The trustee's obligation is not relieved by saying a trustee "need only allege sufficient facts to show the relevant pathways through which the funds were transferred." (Opp. 18 (quoting *Picard v. Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012).) Because the trustee lists only dates and amounts of multiple initial transfers and of alleged subsequent transfers without pleading any linkage, he does not meet even the *Chares Ellerin* "relevant pathways" standard, let alone "allege facts that support the inference that the funds at issue originated with the BLMIS" and "tie any initial transfer to any subsequent transfer or Subsequent Transferee." *Shapiro*, 542 B.R. at 119.

### B.    The Trustee's Tracing and Commingling Arguments Are Not Relevant.

The trustee claims Banque Syz is relying on a factual argument that "Sentry commingled customer property with other funds, and this commingling will defeat the Trustee's ability to trace the transfer of customer property." (Opp. 20.) But Banque Syz did not posit a commingling or a tracing argument in its Memorandum, stating only that the trustee did not plausibly allege Banque Syz received customer property because (i) the transfers to Banque Syz were made long after any possible predicate initial transfers from

11

BLMIS, and (ii) the trustee alleges billions more in subsequent transfers than in initial transfers. (Mem. 31–35.) This is not a tracing/commingling issue, but rather simple math.

The trustee contends the math does not matter because he can recover from any combination of "transferees" up to the amount avoided. (Opp. 22.) But an "immediate or mediate transferee" under 11 U.S.C. § 550(a)(2) is only "one who takes in a later transfer down the chain of title or possession." *In re O'Malley*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019), not merely *any* transferee from an initial transferee.

Thus, this case differs completely from those involving a chain of subsequent transferees, as in *Merkin*, 515 B.R. at 149, or allocation of liability among subsequent transferees who all indisputably received recoverable subsequent transfers, as in *In re CNB Intern., Inc.*, 393 B.R. 306, 332-33 (Bankr. W.D.N.Y. 2008). Instead, the trustee here essentially seeks to recover all money Banque Syz received from Sentry, without regard to whether, as to each payment, Banque Syz was a "transferee" of BLMIS customer property. (*See generally* Req. for Jud. Not., Exs. B, I (alleging transfers from Sentry to applicable defendants)).

A claim pled in a complaint must be more than just *conceivable*; it must be a plausible claim. *Iqbal*, 556 U.S. at 680; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although it is *conceivable* some of the funds Sentry transferred to Banque Syz was customer property, the Complaint does not plausibly allege they were.

### C.  The Trustee Has All of the Records He Needs.

Seeking to excuse his failure to plead a plausible *prima facie* case, the trustee argues he needs discovery, claiming he "does not have all of the Fairfield Funds' books and records." But he does not say *what* additional records he needs but does not have, and his own pleadings detailing *thousands* of alleged transfers from Sentry belie this bald assertion. (*See*

12

Req. for Jud. Not., Exs. B, I.) And the trustee is notably silent as to his contractual right to records and cooperation from the Fairfield Liquidators (*see* Fairfield Settlement Agreement ¶ 14)—who sought relief from this Court claiming as of 2010 they possessed most of the Fairfield Funds' books and records. (*See* Decl. of Kenneth Krys ¶¶ 15, 19, *In re Fairfield Sentry Ltd.*, No. 10-13164 (Jul 16, 2010) [ECF 40].) The trustee's access to the necessary records distinguishes his authorities, which offer plaintiffs greater latitude where payments had to be proven through *defendants'* records. *See Merkin*, 515 B.R. at 151; *Cohmad I*, 454 B.R. at 329; *Picard v. Mayer*, 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021).[9] No such latitude should be afforded to a plaintiff who either possesses or has direct access to all the relevant records yet still fails to plausibly allege that transfers contain customer property.

## IV. The Complaint Alleges Insufficient Facts To Support Personal Jurisdiction.

The trustee argues that Banque Syz submitted to personal jurisdiction in this Court by opening a customer account at BLMIS and filing a customer claim in this proceeding. He also argues that its customer claim should be disallowed under 11 U.S.C. § 502(d), even though the trustee does not allege that Isos Fund Ltd., the actual claimant, received any property recoverable under section 550. But the trustee can make these arguments only by ignoring the disclosed agency relationship between Banque Syz and its principal Isos. Those facts defeat both the trustee's personal jurisdiction and section 502(d) arguments.

### A. Banque Syz Acted as Agent (Custodian) for Disclosed Principal Isos Fund Ltd.

In its Memorandum, Banque Syz showed the BLMIS account at issue was opened for the benefit of an investment fund, Isos. The trustee's Opposition confirms Banque Syz was

---

[9] The trustee suggests Banque Syz may have relevant records, but he does not say what they are. Banque Syz struggles to imagine what it might have to show how Sentry handled its own funds.

an agent for Isos, not a customer for its own account; that BLMIS had that information in its Account Management File; and that the Isos customer claim was filed in an agency capacity.

The trustee submitted excerpts from the BLMIS Account Management File for Banque Syz. (Cremona Decl., Ex. 11.) The correspondence between Banque Syz and BLMIS makes clear the account was to be opened in the name of "Banque Syz & Co. S.A – ref. Isos." (*Id.* at 8, 10 ("We … confirm that the account name shall be: <u>Banque Syz & Co. SA – ref. Isos</u>." (emphasis in original)).) Another account opening document, which the Cremona Declaration omits, also confirms the agency relationship: Banque Syz's IRS Form W-8IMY (stating Banque Syz "is a qualified intermediary and is not acting for its own account with respect to the accounts referenced on line 8 [above].)" (*Declaration of Richard Levin in Support of Reply to Trustee's Opposition to Motion to Dismiss*, Ex. 1 at 1, filed concurrently herewith.[10])

Isos' customer claim is consistent with this relationship. It expressly states:

> 3. As the account holder of record with the Broker, Banque Syz & Co SA ("Banque Syz"), as sub-custodian of one of its affiliates, Syz & Co. Bank & Trust Ltd., custodian, submits the annexed Customer Claim form on behalf of itself and on behalf of the customer, Isos Fund Limited, a Cayman Island registered fund ("Isos"), **for whom it is claiming**.

(Isos Proof of Claim, Endnotes, Req. for Jud. Not., Ex. J at pdf p. 6 (emphasis added).[11])

Section 9(a)(2) of SIPA provides, "a customer who holds accounts with the debtor in separate capacities shall be deemed to be a different customer in each capacity." 15 U.S.C.

---

[10] In a reply brief, a party may introduce new documents rebutting documents introduced and relied upon in a response brief. *Kowalski v. YellowPages.com, LLC*, 2012 WL 1097350, at *10 (S.D.N.Y. Mar. 31, 2012)*; In re Outlaw Lab'y, LP Litig.*, 2019 WL 3889559, at *5 (S.D. Cal. Aug. 19, 2019).

[11] The Complaint misrepresents the customer claim, alleging, "Banque Syz filed a Customer Claim in the SIPA Proceeding seeking to recover funds *it* allegedly lost on *its* investments in BLMIS," (Compl. ¶ 8 (emphasis added)), when in fact the claim itself says it is filed on behalf of *Isos Fund Ltd.* to recover *its* losses. When a document attached to or referenced in a complaint contradicts the complaint, the document controls. *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007–1008 (9th Cir. 2015); *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1205–1206 (11th Cir. 2007).

§ 78fff-3(a)(2); a*ccord* SIPC Rule 101(b), 17 C.F.R. § 300.101(b). As a result, the customer

account at issue is the account of the principal Isos Fund Ltd., not of its agent Banque Syz.

Ignoring these provisions, the trustee relies on *SIPC v. Morgan, Kennedy & Co.*, 533

F.2d 1314 (2d Cir. 1976), and other inapposite decisions. (Opp. 26-27.) In *Morgan Kennedy*,

the claimants were beneficiaries of a profit-sharing plan that had an account at the debtor.

Construing SIPA's "customer" definition,[12] the Court of Appeals held that because none of

the beneficiaries dealt with, nor had a claim based on securities received, acquired, or held

by, the debtor, they were not customers. 533 F.2d at 1318. In *Aozora Bank Ltd. v. SIPC*, 480

B.R. 117 (S.D.N.Y. 2011), the court similarly disallowed customer claims of investors in

feeder funds, stressing the legal separateness of a fund and its investors. *Id.* at 125 ("It was

the Feeder Funds who entrusted assets to BLMIS, and not the appellants."). *Kruse v. SIPC*,

708 F.3d 422, 426–27 (2d Cir. 2013), on which the trustee relies, is to the same effect.

These cases do not address an agency relationship at all. But SIPA and SIPC's Rules

do, treating "a customer who holds accounts with the debtor in separate capacities … to be a

different customer in each capacity," 15 U.S.C. § 78fff-3(a)(2), thus treating the Isos account

as separate from any account at BLMIS Banque Syz might have established (but did not).

The Account Management File documents to which the trustee cites (Opp. 27–28) do

not support a different result. Those documents show that the signatories on the account

were Banque Syz employees and that account instructions and communications involved

Banque Syz personnel. That is neither surprising nor probative. Isos designated Banque Syz

---

[12] "The term 'customer' of a debtor means any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person." 15 U.S.C. § 78*lll*(2)(A).

as its agent, and so naturally the account communications, instructions, and signatures came from the agent designated by Isos, not Isos itself. Indeed, this is agency in a nutshell.

The trustee did not address Banque Syz's argument that conduct as an agent does not subject the agent to personal jurisdiction in its own capacity, so the point should be considered conceded. *UBS AG*, 2012 WL 4471265, at *11. In any event, the point should be clear: proofs of claims (including SIPA customer claims) recognize the distinction between the person completing the claim form as agent and the creditor as principal. *See* Bankruptcy Official Form 410, Proof of Claim, Part 3 (requiring person completing claim form to indicate the capacity in which it is signed, whether as "the creditor" or as "the creditor's attorney or authorized agent"); *cf. In re Yuska*, 2018 WL 1725633 (Bankr. N.D. Iowa Apr. 6, 2018) (recognizing distinction between creditor and signer as agent). Because Banque Syz acted only as an agent for Isos in filing the proof of claim, it did not subject itself to personal jurisdiction for its own alleged conduct or liability arising from a different set of transactions.

## B. Banque Syz Did Not Purposefully Avail Itself of Conducting Business in the United States.

Even if the agency relationship between Banque Syz and Isos is disregarded, the requirements for specific personal jurisdiction defeat it here. Specific personal jurisdiction requires two elements: "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities," *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985) (citations omitted); *accord Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (specific jurisdiction requires that the defendant "must take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum.'"). Exercise of specific jurisdiction "is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Goodyear Dunlop Tires Ops., S.A. v.*

16

*Brown*, 564 U.S. 915, 919 (2011). "[T]he jurisdictional analysis focuses on the Defendants' U.S. contacts related to the receipt of the fifty-nine subsequent transfers at issue. Each transfer is a separate claim, and the Trustee 'must establish the court's jurisdiction with respect to each claim asserted.'" *BNP Paribas*, 594 B.R. at 190 (citations omitted). Banque Syz's negligible activities in New York on its own behalf satisfy neither element.

Contrary to the trustee's arguments, Banque Syz did not "avail itself of the privilege of conducting activities within the forum State," because it did not invest "in" or "with" BLMIS. Banque Syz invested in Sentry, a non-U.S. fund invested in U.S. securities, not in BLMIS. Moreover, Banque Syz did not direct or control Sentry's investments in U.S. securities, including Sentry's use of BLMIS as its broker-dealer and *de facto* investment manager. *Aozora*, 480 B.R. at 125 ("It was the Feeder Funds who entrusted assets to BLMIS, and not the appellants [feeder fund investors]."). Accordingly, Banque Syz did not take "'some act by which [it] purposefully avail[ed] itself of the privilege of conducting activities within the forum State.'" *Ford Motor*, 141 S. Ct. at 1024.

The trustee argues *Picard v. Bureau of Labor Ins.*, 480 B.R. 501, 516–18 (Bankr. S.D.N.Y. 2012), held otherwise, but it treated Sentry as a mere conduit for its shareholder's investment not as a separate legal entity, as *Aozora* and numerous other cases require. Knowledge that a corporation will invest in the U.S. does not subject its shareholders to personal jurisdiction in the U.S for the corporation's activities. *BLI* never addressed this argument, and its holding is contrary to *Aozora* and the very nature of the separation between a corporation and its shareholders. *BNP Paribas*, a later case that did address this argument, correctly concluded otherwise, relying on *Walden v. Fiore*, 571 U.S. 277 (2014), a case the trustee dismisses as inapplicable, though it found personal jurisdiction based on other contacts. *BNP Paribas*, 594 B.R. at 190–91.

17

In addition, the Isos BLMIS account and Banque Syz's filing of the Isos customer claim had nothing to do with Banque Syz's Sentry investment, and the Isos account was opened long *after* the potentially avoidable BLMIS transfers to Sentry. Thus, the controversy that underlies this litigation—the BLMIS transfers to Sentry and the transfers from Sentry to Banque Syz—cannot "derive from," "connect with," or "arise out of or relate to" opening the Isos account at BLMIS nearly a year after the initial transfers at issue or the filing of the Isos customer claim. *See Burger King*, 471 U.S. at 472; *Ford Motor Co.*, 141 S. Ct. at 1025.

It is no answer to say that all matters relate in some fashion to "Madoff." In *CEM Corp. v. Pers. Chemistry, AB*, 55 F. App'x 621 (4th Cir. 2003), the court found no specific personal jurisdiction over the defendant in an action for breach of a settlement agreement relating to a patent infringement action, even though the defendant was active in the forum in sales and promotion of products based on the patent, because, "[t]he dispute in this case is not a patent infringement action, but an action for breach of an agreement-in-principle to settle a patent infringement action." *Id.* at 625. As the Supreme Court stated in *Goodyear*, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." 564 U.S. at 919 (citation omitted); *accord Lowe v. Connect Invest. Corp.*, 2020 WL 10355788 (W.D. Tex. Sep. 25, 2020) (specific personal jurisdiction over defendant in action on two separate employment-related contracts with plaintiff analyzed separately). And *BNP Paribas* makes clear that Second Circuit law requires jurisdiction be established "with respect to each claim asserted." 594 B.R. at 190 (quoting *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 83 (2d Cir. 2018)).

## C. Banque Syz's New York Bank Account Does Not Subject It to Specific Personal Jurisdiction Here.

The trustee also argues that Banque Syz's use of a New York bank account subjects it to personal jurisdiction. (Opp. 33–36.) Here, the Complaint says nothing about Banque Syz's

use of New York bank accounts. It makes generic allegations about minimum contacts and unspecified "transactions in the United States" between Banque Syz and Sentry and refers only to BLMIS's bank account. (Compl. ¶¶ 6, 7.) Tacitly recognizing this generic allegation is inadequate to support specific personal jurisdiction, the trustee attempts to enhance his Complaint by submitting with his Opposition documents showing Banque Syz used a New York correspondent account to send and receive payments from Sentry. (Cremona Decl. Exs. 1, 2, 5, 6, 7, 8 (respectively, Sentry subscription agreements and share subscription and redemption order confirmations).) Because the Complaint nowhere refers to these documents, the Court should disregard them as improper attempted amendments to the Complaint. *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (plaintiff may not add allegations in opposition to motion to dismiss).

In any event, these documents do not establish this Court's specific personal jurisdiction over Banque Syz. As the trustee concedes, a defendant's mere use of a correspondent account does not create jurisdiction under New York law—the use must be "purposeful." (Opp. 35.) The court must "closely examine the defendant's contacts for their quality." *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 338 (2012). Finding a "purposeful" use of New York correspondent bank accounts in a preference action against foreign banks, the court in *Official Committee of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 66 (S.D.N.Y. 2016), explained that (1) the defendants, not the debtor, set the terms of each transaction, and then presented those terms to the debtor; and (2) the defendants, not the debtor, selected U.S. dollars as the transaction currency. By contrast, there is no "purposeful" contact in a "standard correspondent banking relationship" where the defendant does set the terms of the relevant transactions. *See Spetner v. Palestine Inv.*

19

*Bank*, 495 F. Supp. 3d 96, 113 (E.D.N.Y. 2020). Nor is jurisdiction created if a defendant simply effects a wire transfer through New York banks. *See id.* at 116.

Here, the trustee's extra-Complaint allegation is that Banque Syz invested with Sentry through U.S. correspondent accounts to comply with Sentry's subscription agreement. (*See* Opp. 33; Cremona Decl. Exs. 1, 2.) But Sentry—not Banque Syz—set the terms of the transactions and selected U.S. dollars to execute the transactions. This allegation does not show "purposeful" contacts with New York and is insufficient to serve as a basis for specific personal jurisdiction. *See Spetner*, 495 F. Supp. at 113-14, 116, 117.

## V.   Count II Seeking Disallowance of the Isos Claim Should Be Dismissed

For the same reason that Banque Syz's filing a customer claim for Isos does not subject it to personal jurisdiction in its own capacity, the filing does not subject Isos to disallowance of its claim under section 502(d) when only its agent is alleged to be liable to return an avoidable transfer. As set forth above, SIPA and SIPC's Rules treat the accounts of an agent and its principal separately. *Cf.* Fed. R. Bankr. Proc. 3001(b) ("claim shall be executed by the creditor or the creditor's agent"). As a result, the customer account at issue is the account of the principal Isos Fund Ltd., not of the agent Banque Syz. Because the Complaint does not allege Isos received any transfers that the trustee seeks to recover, section 502(d) does not apply to the customer claim that was filed on behalf of Isos.

## Conclusion

For the foregoing reasons, this Court should dismiss both Counts of the Complaint.

*[Signature page follows]*

20

Dated: April 28, 2022

/s/ Richard Levin

JENNER & BLOCK LLP
Richard Levin
Carl Wedoff
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600
rlevin@jenner.com
cwedoff@jenner.com

Vincent E. Lazar
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350
vlazar@jenner.com

*Counsel for Defendant Banque Syz & Co., SA*