UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

SECURITIES INVESTOR PROTECTION
CORPORATION,                                    :

                                                :        Adv. Pro. No. 08-01789 (CGM)

                        Plaintiff-Applicant,    :

                                                :        SIPA LIQUIDATION

            v.                                  :

                                                :        (Substantively Consolidated)

BERNARD   L.   MADOFF   INVESTMENT               :
SECURITIES, LLC,                                :

                                                :
                        Defendant.              :

-------------------------------------------------------------x

In re:                                          :

                                                :

BERNARD L. MADOFF,                              :

                                                :

                        Debtor.                 :

-------------------------------------------------------------x

IRVING H. PICARD, Trustee for the               :    Adv. Pro. No. 11-02570 (CGM)
Liquidation of Bernard L. Madoff Investment     :
Securities LLC, and Bernard L. Madoff,          :

                                                :

                        Plaintiff,              :

                                                :

            v.                                  :

                                                :

BANCA CARIGE S.P.A.,                            :

                                                :

                        Defendant.              :

-------------------------------------------------------------x

## REPLY IN RESPONSE TO TRUSTEE'S OPPOSITION TO
## AND IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR
## LACK OF PERSONAL JURISDICTION AND FOR FAILURE TO STATE A CLAIM

David J. Mark
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
(212) 506-1700
*Attorneys for Defendant Banca Carige S.p.A.*

# TABLE OF CONTENTS

**Page**

ARGUMENT ..................................................................................................... 1

I.     TRUSTEE HAS FAILED TO DEMONSTRATE THAT THE COURT HAS
PERSONAL JURISDICTION OVER DEFENDANT ...................................... 1

     A.     Banca Carige's Alleged Contacts with the Forum are  Insufficient to
Establish Specific Jurisdiction ............................................................... 2

          1.     The Trustee's "Knowledge-and-Intent" Theory Does Not Suffice
to Impute Fairfield Sentry's or BLMIS's Contacts to Banca Carige ......... 2

          2.     Twice-Used Correspondent Accounts Do Not Suffice for Specific
Jurisdiction ................................................................................... 7

          3.     The Subscription Agreement Does Not Suffice to Establish
Specific Jurisdiction, Especially Under *Fairfield* ..................... 11

     B.     The Exercise of Jurisdiction Over Banca Carige is Unreasonable ...................... 13

II.     TRUSTEE'S COMPLAINT AND OPPOSITION FAIL TO PLEAD THE
AVOIDANCE OR AVOIDABILITY OF THE INITIAL TRANSFER ......................... 15

III.     THE TRUSTEE'S COMPLAINT DOES NOT SUFFICIENTLY ALLEGE
THAT BANCA CARIGE RECEIVED CUSTOMER PROPERTY .............................. 18

     A.     The Trustee Has Not Met his Burden of Alleging Facts That Support the
Inference That the Funds at Issue Originated with the Debtor ............................ 18

     B.     The Trustee has All of the Records He Needs .................................................... 20

CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 45 John Lofts, LLC*,
    599 B.R. 730 (Bankr. S.D.N.Y. 2019) ....................................................................................19

*In re Allou Distrib. Inc.*,
    379 B.R. 5 (E.D.N.Y. 2007) ...........................................................................................18, 19

*Am. Casein Co. v. Geiger (In re Geiger)*,
    446 B.R. 670 (Bankr. E.D. Pa. 2010) ............................................................................15, 16

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Am. Boat Co., LLC*,
    2012 WL 527209 (S.D.N.Y. Feb. 17, 2012) .................................................................11, 12

*Asahi Metal Indus. Co. v. Superior Court of Cal.*,
    480 U.S. 102 (1987) .......................................................................................................13, 14

*Benton v. Cameco Corp.*,
    375 F.3d 1070 (10th Cir. 2004) .....................................................................................14, 15

*In re Bernard L. Madoff Inv. Sec. LLC*,
    515 B.R. 117 (Bankr. S.D.N.Y. 2014) ...........................................................................19, 20

*Bertolini-Mier v. Upper Valley Neurology Neurosurgery, P.C.*,
    2017 U.S. Dist. LEXIS 148029 (D. Vt. Sep. 13, 2017) .......................................................4

*Bristol-Myers Squibb Co. v. Superior Court of Calif, San Francisco Cty.*,
    137 S. Ct. 1773 (2017) ..........................................................................................................2

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) .................................................................................................3, 6, 12

*Chase Manhattan Bank v. Banque Generale du Commerce*,
    1997 WL 266968 (S.D.N.Y. May 20, 1997) ......................................................................12

*Cmty. Fin. Grp., Inc. v. Stanbic Bank Ltd.*,
    2015 WL 4164763 (S.D.N.Y. July 10, 2015) .....................................................................10

*Dandong v. Pinnacle Performance Ltd.*,
    966 F. Supp. 2d 374 (S.D.N.Y. 2013) ............................................................................10, 11

*Deutsche Bank Tr. Co. Ams. v. Large Private Ben. Owners (In re Tribune Co.
    Fraudulent Conveyance Litig.)*,
    946 F.3d 66 (2d Cir. 2019) ...................................................................................................4

*Fairfield Sentry Ltd. (In Liquidation) v. Migani*,
[2014] UKPC 9 ..................................................................................................13

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
2018 Bankr. LEXIS 2324 (Bankr. S.D.N.Y. Aug. 6, 2018) ........................... *passim*

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
141 S. Ct. 1017 (2021)..........................................................................................6

*Hau Yin To v. HSBC Holdings, PLC*,
2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir.
2017) ..............................................................................................................7, 10, 11

*Helicopteros Nacionales De Colombia v. Hall*,
466 U.S. 408 (1984)..............................................................................................2

*Hill v. HSBC Bank*,
207 F.Supp. 3d 333 (S.D.N.Y. 2016)..............................................................7, 9,10

*HSH Nordbank AG New York Branch v. St.*,
2012 WL 2921875 (S.D.N.Y. July 18, 2012) ......................................................9

*Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*,
326 U.S. 310 (1945)..............................................................................................13

*Jesner v. Arab Bank, PLC*,
138 S. Ct. 1386 (2018)..........................................................................................8

*Licci v. Lebanese Can. Bank, SAL*,
20 N.Y.3d 327 (2012) ..........................................................................................10

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
732 F.3d 161 (2d Cir. 2013)..............................................................................8, 10

*Manko Window Systems, Inc. v. Prestik*,
2017 WL 4355580 (D. Kan. Sept. 29, 2017) ......................................................14

*Mednik v. Specialized Loan Servicing, LLC*,
2021 U.S. Dist. LEXIS 34059 (E.D.N.Y. Feb. 23, 2021)....................................15

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996)...................................................................................13

*Motors Liquidation Co. Avoidance Action Tr. v. JPMorgan Chase Bank, N.A. (In
re Motors Liquidation Co.)*,
565 B.R. 275 (Bankr. S.D.N.Y. 2017) ............................................................12, 13

*Mycak v. Honeywell, Inc.*,
  953 F.2d 798 (2d Cir. 1992)................................................................................16

*Nike, Inc. v. Wu*,
  349 F. Supp. 3d 346 (S.D.N.Y. 2018)................................................................10

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*,
  149 F.3d 1086 (10th Cir. 1998) .........................................................................14

*Patricia Yak, v. Biggerpockets, L.L.C., Craig Curelop*,
  2022 WL 67740 (2d Cir. Jan. 7, 2022) ..............................................................12

*Picard v. Chais (In re Bernard L. Madoff Inv. Sec. LLC)*,
  440 B.R. 274 (Bankr. S.D.N.Y. 2010).................................................................9

*Picard v. Cohmad Sec. Corp. (In re BLMIS)*,
  454 B.R. 317 (Bankr. S.D.N.Y. 2011)...........................................................19, 20

*Picard v. Estate (Succession) of Igoin*,
  525 B.R. 871 (Bankr. S.D.N.Y. 2015).................................................................9

*Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10, 2014) ..........................................6

*Picard v. Maxam Absolute Return Fund, L.P. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  460 B.R. 106 (Bankr. S.D.N.Y. 2011).................................................................6

*Picard v. Mayer (In re BLMIS)*,
  2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021) ........................................20

*Picard v. Shapiro, et al. (In re Madoff)*,
  542 B.R. 100 (Bankr. S.D.N.Y. 2015)...............................................................19

*In re Picard*,
  917 F.3d 85 (2d Cir. 2019)...................................................................................5

*Porina v. Marward Shipping Co.*,
  2006 WL 2465819 (S.D.N.Y. Aug. 24, 2006), *aff'd*, 521 F.3d 122 (2d Cir. 2008) ..................................................................................................................13

*Rocky Mountain Chocolate Factory v. Arellano*,
  2017 WL 4697503 (D. Colo. Oct. 19, 2017) .....................................................14

*Rushaid v. Pictet & Cie*,
  28 N.Y.3d 316 (2016) ............................................................................8, 10, 11

*Sec. Inv. Protec. Corp. v. Bernard L. Madoff Inv. Secs. LLC,*
    501 B.R. 26 (S.D.N.Y. 2013) ................................................................16

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff),*
    594 B.R. 167 (Bankr. S.D.N.Y. 2018) .................................................10

*Sec. Inv'r Prot. SIPA Liquidation Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) ......................................4, 5, 6, 13

*In re Terrorist Attacks on September 11, 2001,*
    714 F.3d 659 (2d Cir. 2013) .................................................................1

*Tymoshenko v. Firtash,*
    2013 U.S. Dist. LEXIS 43543 (S.D.N.Y. Mar. 26, 2013) ....................13

*U.S. v. Acquest Transit LLC,*
    2018 WL 3861612 (W.D.N.Y. Aug. 14, 2018) ....................................16

*Vasquez v. Hong Kong & Shanghai Banking Corp.,*
    477 F. Supp. 3d 241 (S.D.N.Y. 2020) ...........................................10, 11

*Walden v. Fiore,*
    571 U.S. 277 (2014) ................................................................. *passim*

*Waldman v. Palestine Liberation Org.,*
    835 F.3d 317 (2d Cir. 2016) ..............................................................1, 2

*World-Wide Volkswagen Corp. v. Woodson,*
    444 U.S. 286 (1980) ........................................................................3, 14

*Wright v. Ernst & Young LLP,*
    152 F.3d 169 (2d Cir. 1998) ...............................................................18

**Other Authorities**

Rule 8(a) ..............................................................................15, 16, 18

Rule 8(a)(2) ...................................................................................17

Rule 10(c) .................................................................................15, 18

Rule 15 ............................................................................................18

11 U.S.C. § 550 ................................................................................6

NY CPRL § 302(a)(1) .......................................................................9

Defendant Banca Carige S.p.A. ("Banca Carige"), by and through its undersigned counsel, respectfully submits this reply in response to the *Trustee's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint* [Dkt. 113] (the "Opposition" or "Opp."), dated March 28, 2022, and in further support of its *Motion to Dismiss the Complaint*, [Dkt. 107] (the "Motion to Dismiss") and *Memorandum of Law* in support thereof [Dkt. 108] (the "Memorandum of Law" or "MOL"), dated January 28, 2022[1], and respectfully represents as follows:

## ARGUMENT

### I.    TRUSTEE HAS FAILED TO DEMONSTRATE THAT THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT

The Trustee has failed to carry his burden of pleading that the Court can exercise personal jurisdiction over Banca Carige, an Italian bank with no ties to New York or even to the United States. *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 334 (2d Cir. 2016) ("[I]t is the plaintiff's burden to establish that the court has personal jurisdiction over the defendants.") (quoting *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996)).

Inasmuch as the Trustee does not allege general jurisdiction (*see* Opp. at 8, n.19), he must plead facts supporting specific jurisdiction, namely that (1) the claims set forth in the Complaint arise out of Banca Carige's purportedly sufficient "minimum contacts with the relevant forum," and (2) "the exercise of jurisdiction is reasonable in the circumstances." *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks omitted). The Trustee has failed to do so, including under recent Supreme Court precedent which he cannot distinguish. Thus, this case must be dismissed.

---

[1]    All citations in this memorandum to "[Dkt. ___]" refer to the docket entry of that number in this adversary proceeding, Adv. Proc, No. 11-02570 (CGM) (Bankr. S.D.N.Y 2011). Capitalized terms not defined herein shall have the same meaning as ascribed in the Memorandum of Law or the Opposition.

A.    **Banca Carige's Alleged Contacts with the Forum are
Insufficient to Establish Specific Jurisdiction**

The Trustee relies on three purported connections of Banca Carige to New York which he

contends support specific jurisdiction:  (1) Banca Carige purchased shares in Fairfield Sentry, a

BVI fund which in turn invested in BLMIS; (2) Banca Carige and Fairfield Sentry included a

New York forum selection clause in their Subscription Agreement; and (3) Banca Carige

subscribed into Fairfield Sentry by wiring funds "through" a New York bank.  None suffice.

1.    **The Trustee's "Knowledge-and-Intent" Theory Does Not Suffice to Impute
Fairfield Sentry's or BLMIS's Contacts to Banca Carige**

The Trustee's primary jurisdictional argument amounts to the following:  because Banca

Carige purchased shares in Fairfield Sentry, which then invested with BLMIS, "Banca Carige

purposefully availed itself of an investment in New York with BLMIS *through Fairfield Sentry*

and knowingly accepted the benefits and privileges of doing so."  (Opp. at 11-12 (emphasis

added).)  Not so.  "For a State to exercise jurisdiction consistent with due process… [t]he

relationship between the defendant and the forum must arise out of contacts that the defendant

*himself* creates with the forum."  *Waldman*, 835 F.3d at 335 (quoting *Walden v. Fiore*, 571 U.S.

277, 284 (2014)) (emphasis in original).  Thus, "unilateral activity of another party or a third

person is not an appropriate consideration when determining whether a defendant has sufficient

contacts with a forum State to justify an assertion of jurisdiction."  *Helicopteros Nacionales De*

*Colombia v. Hall*, 466 U.S. 408, 417 (1984) (citation omitted); *see Bristol-Myers Squibb Co. v.*

*Superior Court of Calif, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017) ("[A] defendant's

relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction.")

(quoting *Walden*, 571 U.S. at 296).

In 2014, the Supreme Court in *Walden*, 571 U.S. at 277, rejected the same "knowledge

and imputation" theory that the Trustee now offers here.  There, the Ninth Circuit had found that

a Nevada federal court, where Nevada plaintiffs had sued a Georgia-based defendant, could exercise jurisdiction over the defendant in connection with an "aspect of the case" in which the defendant had filed a false affidavit against the plaintiffs, because the defendant "expressly aimed his submission . . . at Nevada by submitting the affidavit with knowledge" of its effect in and "significant connection to Nevada." *Id.* at 282 (additional quotation marks omitted).

The Supreme Court reversed because "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 285 (citation omitted). "First, the relationship must arise out of contacts that the defendant *himself* creates with the forum State." *Id.* at 284 (quotations omitted) (emphasis in original). "Second, [the] 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285 (citation omitted). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the . . . attenuated contacts he makes by interacting with other persons affiliated with the State." *Id.* at 286 (citation and additional quotation marks omitted). This is because "[d]ue process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant — not the convenience of plaintiffs or third parties." *Id.* at 284 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980)). Accordingly, the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.* (citation omitted); *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.") (emphasis in original).

Thus, this Court must consider what (if any) contacts *Banca Carige itself* – not Fairfield Sentry or BLMIS – created with New York. Because Banca Carige created none, the Trustee asks the Court to instead impute Fairfield Sentry's act of investing with New York-based BLMIS, and Banca Carige's alleged knowledge thereof, as Banca Carige's own conduct, to find minimum contacts between Banca Carige and New York. But neither the Trustee, nor *Sec. Inv'r Prot. SIPA Liquidation Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012) ("*BLI*"), which the Trustee urges the Court to follow, cites any precedent or authority for exercising specific jurisdiction over a defendant based on this knowledge and/or imputation theory.[2]

As Banca Carige observed in its Memorandum of Law, the parties in *BLI* never briefed controlling case law on "knowledge and imputation" failing to suffice for jurisdictional purposes. (*See* MOL at 12, n.6.) Rather, the *BLI* defendant's specific jurisdiction argument was limited to the defendant having no control over how Fairfield Sentry invested and that the investment just happened to "end up" with BLMIS. (*See id.*; *BLI*, Adv. Proc. No. 11-2732 (Bankr. S.D.N.Y.) [Docket No. 10], at 10-11.) Thus, the only issue under consideration in *BLI* was whether the defendant's investment ended up with BLMIS "merely . . . as a result of happenstance or coincidence," or rather, whether the Trustee adequately alleged that the defendant knew that

---

[2]     Fairfield Sentry was a BVI investment fund, and Banca Carige was one of its shareholders. The Second Circuit mandates that the separate legal personalities of a corporation and its shareholders are to be respected for jurisdictional purposes, and thus that the jurisdictional contacts of a corporation can be imputed to a shareholder only if the corporation is an alter ego of the shareholder, or if the corporation was acting as the agent of the shareholder when it transacted the relevant business in New York. Merely showing knowledge and intent – and/or benefit – is not sufficient; *control* is also required. *Deutsche Bank Tr. Co. Ams. v. Large Private Ben. Owners (In re Tribune Co. Fraudulent Conveyance Litig.)*, 946 F.3d 66, 79 (2d Cir. 2019); *see Bertolini-Mier v. Upper Valley Neurology Neurosurgery, P.C.*, 2017 U.S. Dist. LEXIS 148029, at *12 (D. Vt. Sep. 13, 2017) ("For purposes of specific personal jurisdiction, the contacts of a third-party may be imputed to the defendant under either an agency or alter ego theory. In order to establish jurisdiction under the agency theory, the plaintiff must show that the defendant exercises control over the activities of the third-party.") (quoting *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1379 (Fed. Cir. 2015)) (footnote omitted). The Trustee does not allege that Banca Carige controlled Fairfield Sentry.

Fairfield Sentry's investment strategy consisted of placing funds there. *BLI*, 480 B.R. at 517. It was in that context that the *BLI* court, responding to the limited arguments before it, and not reaching dispositive case law never briefed to it, held that personal jurisdiction would be found, because the defendant knew and intended that Fairfield Sentry would invest its money with BLMIS in New York. *Id.*, *passim.*

However, in contrast to the *BLI* defendant (*see* MOL at 12, n.6), Banca Carige's argument is *not* that Banca Carige did not know and/or intend that Fairfield Sentry would place its money with BLMIS or trade in United States securities.[3] Rather, Banca Carige submits that its knowledge of the forum in which Fairfield Sentry would invest – whether Banca Carige knew it was New York or the United States, or not – is jurisdictionally irrelevant under *Walden* and other controlling cases not considered in *BLI*. In other words, a share purchaser's knowledge and intent that a company in which it invested would undertake investment activities in a forum is not sufficient to impute the company's forum activities to the shareholder. Because *BLI* assumed, without addressing, that the Trustee's "knowledge and intent" theory was legally sufficient, and because that theory is in fact contrary to controlling precedent which was not before the *BLI* court, this Court should not repeat *BLI*'s result.

The Trustee does not cite a single Supreme Court or Second Circuit case imputing a third party's jurisdictional contacts with a forum to a defendant, based on the defendant's knowledge of the third party's contacts or intent alone. (*See* Opp. at 10.) *Cf. In re Picard*, 917 F.3d 85, 91, 105 (2d Cir. 2019) (noting colloquially that feeder fund investors "knew where their money was

---

[3]    Accordingly, the Trustee's referral to "Banca Carige's suggestion that its funds simply ended up in the United States due to happenstance or through what it refers to as the 'stream of commerce' theory of personal jurisdiction" (Opp. at 14) makes no sense. Nor does Banca Carige argue that a defendant must physically enter New York in order to transact business there (*id.*), although Banca Carige's failure to ever do so here supports dismissal inasmuch as it further evidences Banca Carige's lack of *its own* New York contacts.

going" in the context of deciding whether the "presumption against extraterritoriality or international comity principles" prevented use of Bankruptcy Code section 550, and not considering personal jurisdiction); *Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*, 2014 WL 5106909, at *1 (Bankr. S.D.N.Y. Oct. 10, 2014) (deciding no jurisdictional issues but rather, whether settlement triggered "most favored nations" clause and merely noting *BLI* in that context); *Picard v. Maxam Absolute Return Fund, L.P. (In re Bernard L. Madoff Inv. Sec. LLC)*, 460 B.R. 106, 118 (Bankr. S.D.N.Y. 2011) (enjoining defendant from proceeding with Cayman Islands action against Trustee, where defendant itself was a BLMIS feeder fund, not merely a shareholder of one).

The Trustee's attempt to distinguish the Supreme Court's post-*BLI* decision in *Walden* because the underlying lawsuit there involved an intentional tort (Opp. at 12-13) is to no avail – *Walden* makes clear that, in all cases, specific jurisdiction must be based on the defendant's *own* contacts with the forum, *not* on the defendant's contacts with persons who reside in the forum, and *not* on the plaintiff's *or* a third party's contacts with the forum. *See Walden*, 571 U.S. at 284-85, 291 (concluding that "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State."); *cf. Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1031 (2021) (cited in Opp. at 14) (rejecting argument that "a plaintiff 's residence and place of injury can *never* support jurisdiction" where defendant "extensively promoted, sold, and serviced" defective products in various states) (emphasis added); *Burger King*, 471 U.S. at 479-80 (cited in Opp. at 13) (finding jurisdiction due to defendant's entry into a contract with a resident of the forum that envisioned defendant's own "continued and wide-reaching contacts" with the forum).

The Trustee's Opposition violates those precepts. Indeed, all the Trustee can do is allege

that Banca Carige "knew the following facts," and list *Fairfield Sentry's* and *BLMIS's* alleged

New York contacts. (Opp. at 11; *see id.* at 13 ("As demonstrated by *Fairfield Sentry's* offering

materials and subscription agreements, *Fairfield Sentry's* express purpose was to pool funds and

funnel them to BLMIS . . .") (emphasis added).) Banca Carige deciding "to invest in Fairfield

Sentry," while allegedly "[a]rmed with [] knowledge" (*id.*) about Fairfield Sentry's New York

activity, supports specific jurisdiction no more than the *Walden* defendant aiming his affidavit

into Nevada while "armed with knowledge" of plaintiffs' Nevada activity. *See Walden*, 571 U.S.

at 282, 284-86. Because the Trustee relies on the New York contacts of Fairfield Sentry and

BLMIS, and under controlling authority there is no legal basis for imputing such contacts to

Banca Carige, the Trustee's "knowledge and intent" theory must be rejected.

### 2. Twice-Used Correspondent Accounts Do Not Suffice for Specific Jurisdiction

Nor do Banca Carige's two incidental uses of United States bank accounts support

specific jurisdiction. The Trustee does not dispute that the entirety of this alleged activity

amounts to no more than: (i) Banca Carige investing from Italy by wiring funds to Fairfield

Sentry in the BVI, through a bank in New York; and (ii) Fairfield Sentry transferring its

redemption payment from the BVI, through a correspondent bank account in the United States

on its way to Banca Carige in Italy. As set forth in the Memorandum of Law, the incidental use

of a bank account in the United States to facilitate U.S. dollar-denominated payments to settle a

foreign securities transaction does not, as a matter of controlling law, give rise to personal

jurisdiction. *See Hau Yin To v. HSBC Holdings, PLC*, 2017 WL 816136, at *6. (S.D.N.Y. Mar.

1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017) (rejecting personal jurisdiction over foreign

defendants because their alleged connection to the forum was the transmission of information

and funds "to and from BLMIS . . . [as an] incidental consequence[] of fulfilling a foreign

contract"); *Hill v. HSBC Bank plc*, 207 F.Supp. 3d 333, 339-40 (S.D.N.Y. 2016) (finding

transmission of information and funds to and from BLMIS to be "incidental consequences of fulfilling a foreign contract...insufficient to 'project' the Foreign Defendants into New York" and not amounting "to 'purposeful availment' of the laws of [the forum]").

Recognizing this, the Trustee argues, as Banca Carige predicted (*see* MOL at 16), that under *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013) and its progeny, Banca Carige's transfer of the subscription and redemption payments through United States-based bank accounts is sufficient to establish personal jurisdiction because those transfers are purportedly part of the "principal wrong" alleged.  (*See* Opp. at 15-16.)  They are not.  In *Licci*, the principal wrong alleged was the bank's *intentional use of the correspondent account itself* to fund terrorist activity.  *See Licci*, 732 F.3d at 170-71; *see also Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 319-20 (2016) (cited in Opp. at 18) (finding jurisdiction based on banks' own "intentional and repeated use of New York correspondent bank accounts to launder their customers' illegally obtained funds" where defendant bank "played a central role in the . . . scheme by knowingly laundering and concealing the bribes and kickbacks for approximately four years.").  By contrast, Banca Carige's utilizing two New York bank accounts as pass-throughs for dollar-denominated subscription and redemption payments in route to Italy and the BVI does not violate any law or duty – it is the ordinary course of business.  *See Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1395 (2018) ("In New York each day, on average, about 440,000 of these transfers [Clearing House Interbank Payments System (CHIPS) — the system used for most large banking transactions], occur, in dollar amounts totaling about $1.5 trillion.").

Indeed, the Trustee fails to cite any case imposing personal jurisdiction in New York based on an allegedly fraudulent conveyance merely passing through a New York account in route to or from a foreign subsequent transferee's account abroad.  (*See* Opp. at 16-18.).  In *HSH*

*Nordbank AG New York Branch v. St.*, 2012 WL 2921875 (S.D.N.Y. July 18, 2012) (cited in

Opp. at 16-17), for example, the court found personal jurisdiction over defendants where there

were "transfers *into* New York bank accounts held by" defendants – not merely passing through

on their way to foreign accounts. *See id.* at *4 (emphasis added). "The use of New York bank

accounts to shelter significant and repeated transfers of funds constitutes the 'transaction of

business' necessary to satisfy the first requirement of § 302(a)(1)." *Id.* By contrast, the two New

York bank accounts here (one belonged to Fairfield Sentry), were not used to "shelter" anything,

but rather as a mere conduit for two payments on their way to foreign destinations.

Indeed, exercising specific jurisdiction over Banca Carige would be significantly more

tenuous than any such determinations in prior Madoff decisions cited by the Trustee (*see* Opp. at

16-18), and would constitute an unprecedented step. *Cf. Picard v. Estate (Succession) of Igoin*,

525 B.R. 871, 884 (Bankr. S.D.N.Y. 2015) (exercising personal jurisdiction where defendants

contracted directly with BLMIS in New York to invest over $66 million); *Picard v. Chais (In re

Bernard L. Madoff Inv. Sec. LLC)*, 440 B.R. 274, 279 (Bankr. S.D.N.Y. 2010) (finding

defendant, daughter-in-law of primary BLMIS operator, subject to jurisdiction where she

maintained "two active and profitable BLMIS accounts in New York" and had appointed her

father-in-law as her agent). By contrast, in *Hill*:

> The contacts alleged by Plaintiffs here do not amount to 'purposeful
> availment' of the laws of New York. None of the business activities
> allegedly conducted by the Foreign Defendants occurred in New
> York. Plaintiffs do not allege that any contracts between any of the
> Foreign Defendants and Madoff or BLMIS were negotiated or
> executed in New York. Instead, Plaintiffs have alleged that Foreign
> Defendants communicated with and transmitted information and
> funds to and from BLMIS located in New York, in connection with
> their fund administration and/or custodial duties under agreements
> negotiated with BLMIS.

207 F. Supp. 3d at 339; *see Hau Yin To*, 2017 WL 816136, at *5.

Here, Banca Carige's contact with New York is even more attenuated than that in *Hill* and *Hau Yin To*, because Banca Carige lacks contractual privity with any New York entity in connection with the alleged transfers.  The Trustee argues that *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*, 594 B.R. 167 (Bankr. S.D.N.Y. 2018) ("*BNP*") distinguished *Hill* (*see* Opp. at 19-20), but in *BNP*, the defendant bank had a litany of New York contacts not alleged here, including:  the bank's employees operated out of New York and the transfers arose from those New York contacts; the bank maintained offices in New York; and the bank had represented in its subscription agreement with Fairfield Sentry that New York was its principal place of business.  *Id.* at 190-91.

Moreover, *Licci* and other cases have found "purposeful" activity where the account was used a dozen, or hundreds, of times – not when, as here, the New York accounts were used only twice.  *Cf. Licci v. Lebanese Can. Bank, SAL*, 20 N.Y.3d 327, 340 (2012) (routing transfers through account "dozens of times" was sufficient) (quotation marks omitted); *Rushaid*, 28 N.Y.3d at 321-22 (finding at least a dozen times sufficient); *Nike, Inc. v. Wu*, 349 F. Supp. 3d 346, 356 (S.D.N.Y. 2018) (determining "hundreds of occasions" was sufficient), *with Vasquez v. Hong Kong & Shanghai Banking Corp.*, 477 F. Supp. 3d 241, 257-58 (S.D.N.Y. 2020) (three transactions "too sparse" to find purposeful); *Cmty. Fin. Grp., Inc. v. Stanbic Bank Ltd.*, 2015 WL 4164763, at *4 (S.D.N.Y. July 10, 2015) (finding single wire transfer of fraudulent funds through defendant bank's correspondent account insufficient); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 383 (S.D.N.Y. 2013) ("[Defendant] did not route a transfer relating to the Notes once or twice . . . Instead, Plaintiffs allege and the record demonstrates that [defendant] deliberately used the New York account again and again in connection with the design and issuance of the Notes at issue in this case.") (additional quotation

marks omitted).

Furthermore, as to deliberateness, courts have considered various factors, including "the necessity of the correspondent account to the alleged scheme." *Vasquez*, 477 F. Supp. 3d at 258. Thus, for example, where use of a New York correspondent bank account was an "essential step" in and "integral" to the money laundering scheme in *Rushaid*, the court found the defendant bank's use of the account to be "volitional." *Rushaid*, 28 N.Y.3d at 327, 328. In cases where, like here, the correspondent account "does not appear to have been necessary to the Ponzi scheme's success," courts have not found use of the account to be purposeful. *Vasquez*, 477 F. Supp. 3d at 262 (citing *Hau Yin To*, 2017 WL 816136, at *7 n.6 ("The wiring of funds through New York . . . was passive, rather than 'integral' to the alleged Ponzi scheme.")).

Here, as in *Vasquez* and *Hau Yin To*, the Trustee's subsequent transferee claim does not turn on whether the transfers were wired through a New York correspondent bank account or not. Only the fact that the transfer from Fairfield Sentry to Banca Carige was made, at all, is essential or integral to the Trustee's claim – the *mechanics* of the transfer, or what state the payments flowed through before arriving in the BVI and Italy, are incidental and have absolutely no bearing on the substantive claim. Thus, the two isolated uses of New York accounts here were not sufficiently frequent or integral to the claim to qualify as "purposeful," and do not support the Court's exercise of specific jurisdiction over Banca Carige.

### 3. The Subscription Agreement Does Not Suffice to Establish Specific Jurisdiction, Especially Under *Fairfield*

Nor does the forum selection clause in the Subscription Agreement entered into between Banca Carige and Fairfield Sentry confer specific jurisdiction. "A party seeking to enforce a forum selection clause must demonstrate," *inter alia*, "that . . . the claims and parties involved in the suit are subject to the forum selection clause." *Am. S.S. Owners Mut. Prot. & Indem. Ass'n,*

*Inc. v. Am. Boat Co., LLC*, 2012 WL 527209, at *3 (S.D.N.Y. Feb. 17, 2012) (quoting *Tropp v.*

*Corporation of Lloyd's*, 385 F. App'x 36, 37 (2d Cir. 2010)); *see also Patricia Yak, v.*

*Biggerpockets, L.L.C., Craig Curelop*, 2022 WL 67740, at *3 (2d Cir. Jan. 7, 2022) ("[W]e have

consistently held that forum selection and choice-of-law clauses . . . are not broad enough to

reach claims that are only incidental to the contractual relationship.").

        The Opposition fails even to mention, let alone address, Judge Bernstein's dispositive

ruling in Fairfield Sentry's own bankruptcy case, finding the forum selection clauses in Fairfield

Sentry's subscription agreement "irrelevant" to plaintiff liquidators' claims to recover

redemption payments.  *See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield*

*Sentry Ltd.)*, 2018 Bankr. LEXIS 2324, at *32 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield*").

Thus, *Fairfield* disposes of the issue, and the forum selection clause does not support specific

jurisdiction here.

        Recognizing this, the Trustee argues that the "forum selection and choice of law clauses

are contacts with New York that support jurisdiction, even if the clauses do not independently

establish jurisdiction based on Banca Carige's consent."  (Opp. at 22.)  Again, the Trustee's

cases (Opp. at 22-23) are inapposite.  The *Burger King* Court found jurisdiction because, unlike

here, the defendant entered into an agreement that envisioned "continued and wide-reaching

contacts" with the forum.  471 U.S. at 479-80.  In *Chase Manhattan Bank v. Banque Generale du*

*Commerce*, 1997 WL 266968 (S.D.N.Y. May 20, 1997), the choice of law clause broadly

governed "the parties' relationship," *id*. at *2, whereas here, the choice of law clause does not

govern the redemption at issue.  Similarly, unlike here, in *Motors Liquidation Co. Avoidance*

*Action Tr. v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, 565 B.R. 275 (Bankr.

S.D.N.Y. 2017), the agreement's forum selection clause patently applied to the transaction at

-12-

issue in the clawback claim. *Id.* at 287-8.[4]

### B.    The Exercise of Jurisdiction Over Banca Carige is Unreasonable

"The second stage of the due process inquiry asks whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice' – that is, whether it is reasonable under the circumstances of the particular case." *Porina v. Marward Shipping Co.*, 2006 WL 2465819, at \*5 (S.D.N.Y. Aug. 24, 2006), *aff'd*, 521 F.3d 122 (2d Cir. 2008) (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996), quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). "The reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need to show in terms of unreasonableness to defeat jurisdiction." *Tymoshenko v. Firtash*, 2013 U.S. Dist. LEXIS 43543, at \*14-16 (S.D.N.Y. Mar. 26, 2013) (quoting *Metro. Life Ins.*, 84 F.3d at 569) (brackets and additional quotations omitted). "A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987).

As set forth *supra* and in the Memorandum of Law, the Trustee relies on the most incidental of contacts to purportedly establish specific jurisdiction here. Thus, if those contacts are deemed sufficient, which they should not be, the Trustee must make the strongest of showings that the exercise of jurisdiction would also be reasonable. However, each of the factors that courts consider in assessing reasonableness weighs against jurisdiction. Indeed, courts have dismissed cases in circumstances like this, where even though defendants' contacts

---

[4]    Finally, the Trustee again relies on *BLI*, but *BLI* pre-dated and did not have the benefit of *Fairfield Sentry Ltd. v. Migani*, [2014] UKPC 9, cited by Judge Bernstein in *Fairfield* in 2018, 2018 Bankr. LEXIS 2324, at \*32, which established that redemptions from Fairfield Sentry are not governed by the Subscription Agreement's New York choice-of-law clause.

with the forum "'barely satisf[y] the minimum contacts standard'" – and Banca Carige's do not –

"a majority of the reasonableness factors weigh against the exercise of jurisdiction." *Rocky*

*Mountain Chocolate Factory v. Arellano*, 2017 WL 4697503, at *11 (D. Colo. Oct. 19, 2017)

(quotation omitted); *see Benton v. Cameco Corp.*, 375 F.3d 1070, 1080 (10th Cir. 2004)

(observing that defendant's "contacts with [the forum] were quite limited, barely satisfying the

minimum contacts standard. As a result, [defendant] need not make a particularly strong

showing in order to defeat jurisdiction under this reasonableness inquiry. Because the majority

of the . . . reasonableness factors weigh in [defendant's] favor . . . exercise of personal

jurisdiction over [defendant] would offend traditional notions of fair play and substantial

justice.") (citation omitted); *Manko Window Systems, Inc. v. Prestik*, 2017 WL 4355580, at *9

(D. Kan. Sept. 29, 2017) ("[B]ecause [defendant's] contacts with [the forum] are weak and

because the reasonableness factors discussed above counsel against the exercise of personal

jurisdiction, the Court grants Defendant's motion to dismiss pursuant to Fed. R. Civ. P.

12(b)(2).").

        This Trustee fails to make a strong (or any) showing in the half-page he devotes to the

issue. (*See* Opp. at 23-24.) Rather, the *Asahi* factors weigh against the exercise of jurisdiction.

"While not dispositive, the burden on the defendant of litigating the case in a foreign forum is of

primary concern in determining the reasonableness of personal jurisdiction." *OMI Holdings, Inc.*

*v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1096 (10th Cir. 1998) (citing *World-Wide*

*Volkswagen*, 444 U.S. at 292) (footnote omitted). "When the defendant is from another country,

this concern is heightened and 'great care and reserve should be exercised' before personal

jurisdiction is exercised over the defendant." *Id.* (quoting *Asahi*, 480 U.S. at 114). The burden

on Banca Carige, an Italian bank with no connection to the United States, of litigating in New

York would be high.[5]  Moreover, the Trustee does not explain why New York is more reasonable

than other available fora, including Italy where Banca Carige has its principal place of business,

offering no more than that "the Trustee has a strong interest in litigating in the United States."

(Opp. at 24.)  *Cf. Benton*, 375 F.3d at 1079 (finding jurisdiction unreasonable where plaintiff had

"not established that litigating the matter in Canada would cause undue hardship for him").

Because the alleged minimum contacts here are insignificant and all of the reasonableness

factors weigh against jurisdiction, the Court should dismiss the claim against Banca Carige.[6]

## II.    TRUSTEE'S COMPLAINT AND OPPOSITION FAIL TO PLEAD THE AVOIDANCE OR AVOIDABILITY OF THE INITIAL TRANSFER

In its Memorandum of Law, Banca Carige argued that the Complaint did not comply

with Federal Rule of Civil Procedure ("Rule") 8(a)'s requirement of "a short and plain

statement of the claim showing that the pleader is entitled to relief" or Rule 10(c)'s limitations

on incorporation by reference.  The Opposition does not address either of these arguments.

In his Opposition to Banca Carige's Rule 10(c) argument, the Trustee says only that

incorporation by reference is permissible, citing *Am. Casein Co. v. Geiger (In re Geiger)*, 446

B.R. 670 (Bankr. E.D. Pa. 2010), a decision that Banca Carige itself cited but distinguished on

its facts.  But the Opposition ignores the significant limitations on incorporation by reference

imposed by *Geiger* and other case law, which Banca Carige's Memorandum of Law described

---

[5]      In opposition, the Trustee points to nothing more than New York counsel, modern technology, and that Banca Carige sued Citigroup affiliates in New York twelve years ago for breach of contract in an unrelated matter. (Opp. at 24, n.37.).  Plainly, that decade-old lawsuit is not relevant to the instant due process inquiry and the Trustee's reliance on it demonstrates Banca Carige's genuine lack of New York connection.

[6]      Finally, the Court should deny jurisdictional discovery here (*see* Opp. at 24-25), because there are no material facts in dispute concerning Banca Carige's connections to New York.  Rather, the parties dispute solely whether the Court can exercise specific jurisdiction as a matter of law based on factually uncontested purported minimum contacts.  *See Mednik v. Specialized Loan Servicing, LLC*, 2021 U.S. Dist. LEXIS 34059, at *24 (E.D.N.Y. Feb. 23, 2021) (denying jurisdictional discovery where plaintiff "has not identified an issue of jurisdictional fact to warrant discovery").

in detail.  The Trustee neither addressed Banca Carige's points (that the Complaint improperly

incorporates by reference a pleading from another action, improperly incorporates an entire

pleading, and improperly fails to specify the relevant allegations) nor contests the

applicability of those points to the facts of this case, and therefore the Trustee is deemed to

have conceded those issues.[7]

The Opposition's arguments to Banca Carige's Rule 8(a) argument are similarly

nonresponsive.  *First*, the Trustee argues the District Court already ruled that the

incorporation of the Fairfield Amended Complaint adequately alleged avoidability of the

initial transfer.  Opp. at 26-27.  But the District Court decision addressed a different legal

issue, and the block quote the trustee provides (Opp. at 26) is taken out of context, as

highlighted by the ellipsis at the beginning of the quote.  The decision involved a consolidated

proceeding in which the District Court withdrew the reference to decide several preliminary

legal issues.  *Sec. Inv. Protec. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 501 B.R. 26

(S.D.N.Y. 2013).  After extensive analysis, Judge Rakoff ruled that the Trustee may seek

avoidance of a subsequent transfer without first obtaining a judgment against the initial

transferee avoiding the initial transfer.  *Id*. at 37.  Only in one sentence in the opinion, which

the Trustee quotes in part, did Judge Rakoff even mention anything about the adequacy of the

Complaint, and that sentence began with the phrase, which the Trustee omitted, "Applying

these principles [announced in the opinion] to a representative case…"  *Id*. at 36.

However, the defendants in that proceeding had not challenged the adequacy of the

incorporation, and Judge Rakoff did not examine the incorporation question at all, let alone

---

[7]      *See Mycak v. Honeywell, Inc.*, 953 F.2d 798, 801 (2d Cir. 1992) ("[Plaintiff] did not contest, and
thereby conceded" the defendant's statement); *U.S. v. Acquest Transit LLC*, 2018 WL 3861612, at *26
(W.D.N.Y. Aug. 14, 2018) (finding plaintiff conceded defendant's assertion by failing to respond to it).

rule on the improper incorporation issues raised by Banca Carige.  Therefore, the quote is

taken out of context, is dictum, and does not bind this Court as law of the case or otherwise.

Even if the statement was binding in this case, it does not address Banca Carige's

argument.  Banca Carige does not claim that the Fairfield Amended Complaint insufficiently

alleges avoidability of the Initial Transfers.  Rather, Banca Carige argues that the Fairfield

Amended Complaint alleges far too much more than avoidability to meet Rule 8(a)(2)'s

requirement of a short and plain statement of the claim showing that the pleader is entitled to

relief.  By incorporating the entire Fairfield Amended Complaint, the trustee expanded the

issues from the single one of avoidability of the Initial Transfers to all claims he asserted

against Fairfield Sentry and all the other Fairfield defendants, including a plethora of

irrelevant allegations and exhibits that have nothing to do with avoidability.  Banca Carige

should not be required to respond to the entire complaint against the Fairfield defendants to be

able to defend the trustee's claim against Banca Carige.

It is no answer to say that Banca Carige may respond only to those allegations in the

Fairfield Amended Complaint that address avoidability.  A defendant should not be required

to guess which of the plaintiff's allegations apply and which do not; the plaintiff is required to

state his claim in a short and plain statement of facts entitling him to relief, to which the

defendant can then respond.

*Second*, the Trustee argues "the Court may take judicial notice of the Fairfield

complaint and its prior decision holding that the complaint sufficiently alleges the avoidability

of the initial transfers from BLMIS."  Opp. at 29.  If, as Banca Carige asserts, the Court must

disregard the Trustee's attempted incorporation by reference of the Fairfield Amended

Complaint, judicial notice does not save the Complaint.  Judicial notice of unpled, required

allegations is no substitute for allegations in the Complaint. A complaint must allege facts entitling the plaintiff to relief, and a response to a motion to dismiss requesting that the Court take judicial notice to fill in missing allegations amounts to amending the complaint without compliance with Rule 15 (requiring consent of the defendant or leave of court). *Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998). Judicial notice thus does not relieve the Trustee of his burden to meet the pleading requirements of the Federal Rules of Civil Procedure and applicable case law concerning incorporation.[8]

### III.    THE TRUSTEE'S COMPLAINT DOES NOT SUFFICIENTLY ALLEGE THAT BANCA CARIGE RECEIVED CUSTOMER PROPERTY

Banca Carige's Memorandum of Law demonstrates that the Trustee does not plausibly allege that the $10,532,489 that Banca Carige received on October 16, 2007 was a subsequent transfer of customer property. The Trustee's Opposition simply waves off the fatal defect and insists that the *factual* question of whether a transfer contained customer property is actually a question for expert *opinion* for another day. Though convenient for the Trustee, this theory – which would impose enormous delay and expense upon defendants – does not satisfy his burden of plausibly pleading all essential elements of his claim.

### A.    The Trustee Has Not Met his Burden of Alleging Facts That Support the Inference That the Funds at Issue Originated with the Debtor

The Trustee does not deny that he has failed to tie any initial transfer from BLMIS to Fairfield Sentry to the alleged subsequent transfer to Banca Carige. Instead, he argues he need not do so. (Opp. at 31.) However, the Trustee's own authorities establish this pleading requirement. *See In re Allou Distrib. Inc.*, 379 B.R. 5, 31-32 (E.D.N.Y. 2007) (dismissing claims

---

[8]    The Trustee requests leave to amend his Complaint if the Court sustains Banca Carige's Rule 8(a) and Rule 10(c) objection. Banca Carige does not object to the request. All it seeks is a short and plain statement giving it sufficient notice of the claims the Trustee asserts against it, without the substantial extraneous material from the improper wholesale incorporation by reference.

where complaint did not, among other things, identify the "source" of transfers claimed); *In re*

*45 John Lofts, LLC*, 599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019) (allegations sufficient where

complaint tied alleged subsequent transfers to a single alleged initial fraudulent transfer); *Picard*

*v. Cohmad Sec. Corp. (In re BLMIS)* ("*Cohmad I*"), 454 B.R. 317, 341 (Bankr. S.D.N.Y. 2011)

(allegations sufficient where amounts of commissions specified "correspond to the amounts paid

by BLMIS to Cohmad and, subsequently, to the [alleged subsequent transferees]"). The Trustee

misleadingly asserts (Opp. at 33) that *Merkin I* (defined *infra*) "rejected" this pleading burden.

Not so. *Merkin I* held that, although the complaint did not expressly connect each subsequent

transfer to an initial transfer, the pleading was nonetheless sufficient because "several subsequent

transfers took place contemporaneously or shortly after an initial transfer …, *implying linkage*."

*In re Bernard L. Madoff Inv. Sec. LLC*, 515 B.R. 117, 150 (Bankr. S.D.N.Y. 2014) ("*Merkin I*")

(emphasis added). The Trustee does not offer how such linkage is plausibly implied here,

presumably because, for the billions of dollars the Trustee seeks to recover which are devoid of

customer property, he cannot.

As such, the Trustee has not satisfied *Shapiro*'s pleading standard by alleging only the

dates and amounts of multiple initial transfers and the alleged subsequent transfer without any

connection between them. *See Picard v. Shapiro, et al. (In re Madoff)* ("*Shapiro*"), 542 B.R.

100, 119 (Bankr. S.D.N.Y. 2015). *Shapiro* also requires a plaintiff to "allege facts that support

the inference that the funds at issue originated with the BLMIS" and "tie any initial transfer to

any subsequent transfer or Subsequent Transferee." *Id*. This is not a dollar-for-dollar tracing

requirement, but a trustee may not just plead a list of initial transfers and allege that a portion of

some but not all of the initial transfers were then transferred to defendant. The defendant must

have the opportunity to challenge the avoidability of the initial transfer. *See Cohmad I*, 454 B.R.

at 340-41.  If the Trustee does not tie the subsequent transfers to initial transfers, Banca Carige must litigate numerous initial transfers that are not part of the Trustee's cause of action.  The Trustee must provide the bare minimum, not generalities, to give Banca Carige adequate notice of the claims and defenses, many of which turn on the identity of the initial transfer.

### B.    The Trustee has All of the Records He Needs

Seeking to excuse his failure to plead a prima facie case, the Trustee argues his Complaint should not be dismissed because he needs discovery.  But the Trustee cannot overcome Banca Carige's showing that for over a decade, he has had every record he needs.

Indeed, the Trustee claims that he "does not have all of the Fairfield Funds' books and records."  Opp. at 39.  But he does not articulate *what* he needs that he does not have.

The Trustee's access to the necessary records distinguishes his authorities, which offer plaintiffs greater latitude in pleading where subsequent transfers had to be proven through *defendants'* records.  *See Merkin I* at 151; *Cohmad I* at 329; *Picard v. Mayer (In re BLMIS)*, 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021).[9]  No such latitude should be afforded to a plaintiff who possesses all the relevant facts yet still fails to plausibly allege that transfers contain customer property.

### CONCLUSION

For the foregoing reasons, Banca Carige respectfully requests that the Court grant the relief requested by the Motion to Dismiss.

*[Remainder of Page Intentionally Left Blank]*

---

[9]    The Trustee suggests that Banca Carige may also have relevant records, but he does not articulate what they are, and Banca Carige is hard-pressed to imagine what they might be.

Dated:  New York, New York
         April 28, 2022

Respectfully submitted,

**KASOWITZ BENSON TORRES LLP**

By: */s/ David J. Mark*
     David J. Mark
     1633 Broadway
     New York, New York 10019
     (212) 506-1700

*Attorneys for Defendant Banca Carige S.p.A.*