KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, New York 10020
(212) 940-8800
*Attorneys for Defendants*

Hearing Date: September 14, 2022
Opposition Date: June 27, 2022
Reply Date: July 27, 2022

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, )<br>Plaintiff-Applicant, )<br>v. )<br>BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, )<br>Defendant. ) | **Adv. Pro. No. 08-1789 (CGM)**<br><br>**SIPA Liquidation**<br>**(Substantively Consolidated)** |
| In re: )<br>BERNARD L. MADOFF, )<br>Debtor. ) | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, )<br>Plaintiff, )<br>v. )<br>Barfield Nominees Ltd. and Northern Trust Corporation, )<br>Defendants. ) | **Adv. Pro. No. 12-01669 (CGM)** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE TRUSTEE'S COMPLAINT**

# TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ..............................................................................................................2

POINT I The Trustee's Allegations Are Insufficient  to Establish Jurisdiction Over the
Defendants ................................................................................................................2

    a.    The Trustee's Group Pleading Is Improper to Establish Jurisdiction over
Defendants ............................................................................................................... 3

    b.    The Court Cannot Impose Jurisdiction over Barfield by Assigning Northern
Trust's Alleged Jurisdictional Contacts to Barfield .......................................................... 5

    c.    The Trustee's Allegations Fail to Establish General Jurisdiction over
Barfield .................................................................................................................... 8

    d.    The Trustee's Allegations Fail to Establish Specific Jurisdiction over
Barfield .................................................................................................................... 9

    e.    The Trustee Does Not Allege that the Subsequent Transfers Were Received
in Accounts in the United States ................................................................................. 10

    f.    The Alleged Foreseeability of the Fairfield Fund's Investment in BLMIS
Does Not Establish Personal Jurisdiction over Barfield .................................................. 11

    g.    The Subscription Agreement Cannot Subject Barfield to this Court's
Personal Jurisdiction ................................................................................................ 13

    h.    The Trustee's Miscellaneous Jurisdictional Allegations Also Fail...................... 14

    i.    The Exercise of Personal Jurisdiction over Barfield Would Not Comport
with Due Process...................................................................................................... 17

POINT II The Complaint fails Under Rule 12(b)(6) ....................................................18

    a.    The Trustee Does Not Adequately Plead the Avoidability of the Fairfield
Initial Transfers because Adopting the Entire Fairfield Amended Complaint by
Reference Is Improper............................................................................................... 18

    b.    The Trustee's Claim Is Barred by 11 U.S.C. § 546(e).......................................... 24

        (i)    The Alleged Initial Transfer Was Made by or to a Covered Entity.......... 26

        (ii)    The Alleged Initial Transfer Was Made by a Stockbroker. ..................... 26

(iii)    The Fairfield Initial Transfers Were Made to (or for the Benefit of) a "Financial Institution." ............................................................................ 27

(iv)    The Alleged Initial Transfer Was a Settlement Payment and Made in Connection with a Securities Contract ............................................................ 28

c.    The Trustee Does Not Plead the Subsequent Transfers with the Requisite Specificity or that They Consisted of BLMIS Customer Property .................................. 34

(i)    The Trustee Has Not Sufficiently Pleaded Who Received the Transfers at Issue ................................................................................................ 35

(ii)    The Trustee Does Not Plausibly Plead that Subsequent Transfers Consisted of BLMIS Customer Property ............................................................ 36

CONCLUSION .................................................................................................................... 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Casein Co. v. Geiger (In re Geiger)*,
    446 B.R. 670 (Bankr. E.D. Pa. 2010) ....................................................................20

*Arista Records, LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010).................................................................................15

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*,
    480 U.S. 102 (1987)........................................................................................12, 17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................... *passim*

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................... *passim*

*Berdeaux v. OneCoin Ltd.*,
    ---F. Supp. 3d ----, 2021 WL 4267693 (S.D.N.Y. Sept. 20, 2021)..........................4

*Bermudez v. City of New York*,
    783 F. Supp. 2d 560 (S.D.N.Y. 2011)....................................................................40

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007)...................................................................................9

*Brause v. Travelers Fire Ins. Co.*,
    19 F.R.D. 231 (S.D.N.Y. 1956) ............................................................................20

*Burger King v. Rudzewicz*,
    471 U.S. 462 (1985)............................................................................................17

*Consol. Dev. Corp. v. Sherritt, Inc.*,
    216 F.3d 1286 (11th Cir. 2000) ..............................................................................5

*Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
    651 F.3d 329 (2d Cir. 2011)..................................................................................32

*Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.)*,
    226 F.3d 160 (2d Cir. 2000)..................................................................................21

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014).............................................................................................8

*Davis v. Bifani*,
   2007 WL 1216518 (D. Colo. Apr. 24, 2007) .........................................................20

*DiStefano v. Carozzi N. Am., Inc.*,
   286 F.3d 81 (2d Cir. 2001) .......................................................................2, 17

*Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*,
   323 B.R. 857 (Bankr. S.D.N.Y. 2005) ...........................................................27, 32

*Epps v. Stewart Info. Servs. Corp.*,
   327 F.3d 642 (8th Cir. 2003) .......................................................................5

*Fagan v. Republic of Austria*,
   08-CV-6715, 2011 WL 1197677 (S.D.N.Y. Mar. 25, 2011) .........................................6, 8

*Fairfield Sentry Ltd. (In Liquidation) v. Citibank NA London*,
   No. 19-CV-03911-VSB 24 (S.D.N.Y. July 21, 2021), Dkt. No. 440 ...............................10, 12

*Fairfield Sentry Ltd. v. ABN AMRO Schwiz AG, et al.*,
   Adv. Pro. No. 10-03636 (Bankr. S.D.N.Y. Oct. 26, 2016) ...................................29, 30, 31

*Garfinkle v. Conference on Jewish Material Claims Against Germany, Inc.*,
   2020 WL 6323462 (S.D.N.Y. Oct. 28, 2020) .........................................................40

*Ghazzaoui v. Anne Arundel Cnty.*,
   2014 WL 3973037 (D. Md. Aug. 11, 2014) ...........................................................21

*Golden Gulf Corp. v. Jordache Enters., Inc.*,
   No. 91-CV-8506, 1994 WL 62384 (S.D.N.Y. Feb. 24, 1994) ...........................................5

*Gonzalez v. Bank of Am. Ins. Servs., Inc.*,
   454 F. App'x 295 (5th Cir. 2011) ..................................................................5

*Greatship (India) Ltd. v. Marine Logistics Solutions (Marsol) LLC*,
   No. 11-CV-420, 2012 WL 204102 (S.D.N.Y. Jan., 24, 2012) .........................................6, 7

*Grow Grp., Inc. v. Jandernoa*,
   No. 94-CV-56799, 1996 WL 31848 (S.D.N.Y. Jan. 26, 1996) ...........................................4

*Gucci Am. Inc., Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) .......................................8

*Hau Yin To v. HSBC Holdings PLC*,
   No. 15CV3590, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F.
   App'x 66 (2d Cir. 2017) ...........................................................................15

*Heinert v. Bank of Am. N.A.*,
   835 F. App'x 627 (2d Cir. 2020) ..................................................................30

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984) .......................................................................................................11

*Hill v. HSBC Bank*
  *plc*, 207 F. Supp. 3d 333, 339-40 (S.D.N.Y. 2016) ...........................................14, 15

*Hinton v. Trans Union, LLC*,
  654 F. Supp. 2d 440 (E.D. Va. 2009), *aff'd*, 382 F. App'x 256 (4th Cir. 2010).....................22

*Homeschool Buyers Club, Inc. v. Brave Writer, LLC*,
  No. 19-CV-6046, 2020 WL 1166053 (S.D.N.Y. Mar. 11, 2020) (Broderick, J).....................10

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
  529 F. Supp. 3d 111 (S.D.N.Y. 2021).........................................................................4

*In re Aozora Bank Ltd. v. Securities Investor Protection Corp.*,
  480 B.R. 117 (Bankr. S.D.N.Y. 2012) ......................................................................16

*In re Bernard L. Madoff Inv. Sec. LLC*,
  No. 12-2557 (2d Cir. May 15, 2013) .........................................................................27

*In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Revocable Trust)*,
  773 F.3d 411 (2d Cir. 2014), *cert. denied*, 576 U.S. 1044 (2015).................................. *passim*

*In re Bernard L. Madoff Investment Securities LLC*,
  525 B.R. 871 (Bankr. S.D.N.Y. 2015).......................................................................16

*In re Caremerica, Inc.*,
  409 B.R. 737 (Bankr. E.D.N.C. 2009)........................................................................35

*In re Fairfield Sentry Ltd. (Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam)*,
  10-13164-SMB, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ...........................27, 28

*In re Fairfield Sentry Ltd.*,
  No. 10-13164, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018)...............................11, 13

*In re Lehman Brothers Holdings, Inc.*,
  544 B.R. 16, 34-35 (Bankr. S.D.N.Y. 2015)..............................................................16

*In re Lyondell Chem. Co.*,
  543 B.R. 127 ...................................................................................................6, 7, 9

*In re Roco Corp.*,
  701 F.2d 978 (1st Cir. 1983)...................................................................................33

*In re Terrorist Attacks on Sept. 11, 2001*,
  714 F.3d 659 (2d Cir. 2013)..................................................................................3, 13

*In re Trib. Co. Fraudulent Conv. Litig.*,
  10 F.4th 147 (2d Cir. 2021) ................................................................29

*In re Tribune Co. Fraudulent Conv. Litig.*,
  946 F.3d 66 (2d Cir. 2019).................................................25, 27, 29

*Indemnity Ins. Co. of N. Am. v. K-Line Am., Inc.*,
  No. 06-CV-0615, 2007 WL 1732435 (S.D.N.Y. June 14, 2007) ........................6, 7

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945).................................................................17

*Intel Corp. Inv. Policy Comm. v. Sulyma*,
  140 S. Ct. 768 (2020)...............................................................30

*Irwin v. ZDF Enters. GmbH*,
  No. 040-CV-8027, 2006 WL 374960 (S.D.N.Y. Feb. 16, 2006)...........................6

*Jazini v. Nissan Motor Co.*,
  148 F.3d 181 (2d Cir. 1998)......................................................3, 6

*Kalin v. Xanboo, Inc.*,
  526 F. Supp. 2d 392 (S.D.N.Y. 2007)...............................................6

*Lavazza Premium Coffees Corp. v. Prime Line Distributors Inc.*,
  No. 20 CIV. 9993, 2021 WL 5909976 (S.D.N.Y. Dec. 10, 2021).......................13

*Law v. Siegel*,
  571 U.S. 415 (2014)............................................................8, 34

*Lowden v. William M. Mercer, Inc.*,
  903 F. Supp. 212 (D. Mass. 1995) ................................................21

*Melnick v. Adelson-Melnick*,
  346 F. Supp. 2d 499 (S.D.N.Y. 2004)..............................................3

*Merit Mgmt. Grp., LP v. FTI Consulting Inc.*,
  138 S. Ct. 883 (2018)............................................................34

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996).......................................................17

*Muhammad v. Bethel-Muhammad*,
  2012 WL 1854676 (S.D. Ala. May 21, 2012) .......................................21

*Murray v. Miner*,
  74 F.3d 402 (2d Cir. 1996).......................................................6

*Muth v. Dechert, Price & Rhoads,*
　　391 F. Supp. 935 (E.D. Pa. 1975) .........................................................................20

*NCUA Bd. v. Morgan Stanley & Co.,*
　　2014 WL 1673351 (S.D.N.Y. Apr. 28, 2014).........................................................20

*Neewra, Inc. v. Manakh Al Khaleej Gen. Trading & Contracting Co.,*
　　No. 03-CV-2936, 2004 WL 1620874 (S.D.N.Y. July 20, 2004)............................10

*New Hampshire v. Maine,*
　　532 U.S. 742 (2001)..............................................................................................28

*Norex Petroleum Ltd. v. Blavatnik,*
　　22 N.Y.S.3d 138 (N.Y. Sup. 2015).........................................................................8

*Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameries,*
　　2004 WL 2199547 (S.D.N.Y. Sept. 29, 2004)..........................................................6

*Nuevo Mundo Holdings v. PriceWaterhouseCoopers LLP,*
　　No. 03-CV-0613, 2004 WL 2848524 (S.D.N.Y. Dec. 9, 2004) .................................3

*Nycomed U.S., Inc. v. Glenmark Generics, Ltd.,*
　　2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010)..........................................................22

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank,*
　　549 B.R. 56 (S.D.N.Y. 2016)....................................................................................9

*Papasan v. Allain,*
　　478 U.S. 265 (1986)................................................................................................18

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC),*
　　12 F.4th 171 (2d Cir. 2021) ....................................................................................33

*Picard v. Fairfield Inv. Fund Ltd. (SIPC v. Bernard L. Madoff Inv. Sec. LLC),*
　　2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) (Morris, C.J.) ................................ *passim*

*Picard v. Fairfield Sentry Ltd.,*
　　No. 09-1239 (Bankr. S.D.N.Y. July 20, 2010) .......................................................4, 19, 23, 32

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC),*
　　515 B.R. 117 (Bankr. S.D.N.Y. 2014)..............................................................31, 35

*Picard v. Shapiro,*
　　Adv. Pro. No. 10-5383 (Bankr. S.D.N.Y. July 8, 2014).........................................35

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Secs. LLC),*
　　542 B.R. 100 (Bankr. S.D.N.Y. 2015)..................................................35, 36, 37, 40

*Prestige Pet Prod., Inc. v. Pingyang Huaxing Leather & Plastic Co.*,
   767 F. Supp. 2d 806 (E.D. Mich. 2011)......................................................................40

*Pyskaty v. Wide World of Cars, LLC*,
   856 F.3d 216 (2d Cir. 2017).......................................................................................15

*Reich v. Lopez*,
   858 F.3d 55 (2d Cir. 2017).............................................................................................8

*Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001).........................................................................18

*Rose v. Goldman, Sachs & Co.*,
   163 F. Supp. 2d 238 (S.D.N.Y. 2001).........................................................................15

*Rosner v. Bank of China*,
   349 F. App'x 637 (2d Cir. 2009) .................................................................................30

*Rush v. Savchuk*,
   444 U.S. 320 (1980).......................................................................................................4

*Ryan v. Hunton & Williams*,
   2000 WL 1375265 (E.D.N.Y. Sept. 20, 2000) ..........................................................30

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   594 B.R. 167 (Bankr. S.D.N.Y. 2018) (Bernstein, J.) .....................................2, 9, 15

*Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
   2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)........................................... *passim*

*Shaw v. Housing Auth. of Camden*,
   No. 11-4291, 2012 WL 3283402 (D.N.J. Aug. 10, 2012) ..........................................36

*Sheeran v. Blyth Shipholding, S.A.*,
   2015 WL 9048979 (D.N.J. Dec. 16, 2015) ...............................................................36

*Silverman v. Actrade Cap., Inc. (In re Actrade Fin. Techs. Ltd.)*,
   337 B.R. 791 (Bankr. S.D.N.Y. 2005) .......................................................................33

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715 (S.D.N.Y. 2012), *aff'd*
   *sub nom. Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff*
   *Inv. Sec. LLC)*,
   773 F.3d 411 (2d Cir. 2014).................................................................................15, 26

*SPV Osus Ltd. v. UBS AG*,
   882 F.3d 333 (2d Cir. 2018)..............................................................................3, 11, 14

*Strandberg v. State Farm Mut. Auto. Ins. Co.*,
  2016 WL 614401 (D. Nev. Feb. 16, 2016) ..............................................34

*Tamam v. Fransabank SAL*,
  677 F. Supp. 2d 720 (S.D.N.Y. 2010) ......................................................3

*Taylor v. Sturgell*,
  553 U.S. 880 (2008) ................................................................................28

*Texas Water Supply Corp. v. R. F. C.*,
  204 F.2d 190 (5th Cir. 1953) ..................................................................20

*Toberman v. Copas*,
  800 F. Supp. 1239 (M.D. Pa. 1992) ........................................................21

*Toppel v. Marriott Int'l, Inc.*,
  No. 03-CV-3042, 2006 WL 2466247 (S.D.N.Y. Aug. 24, 2006) ..............3

*U.S. v. Int'l Longshoremen's Ass'n*,
  518 F. Supp. 2d 422 (E.D.N.Y. 2007) ....................................................22

*Vasquez v. Hong Kong and Shanghai Banking Corp., Ltd.*,
  477 F.Supp.3d 241 *(S.D.N.Y. 2020)*......................................................14

*Volkswagenwek Aktiengesellschaft v. Beech Aircraft Corp.*,
  751 F.2d 117 (2d Cir. 1984)......................................................................6

*Walden v. Fiore*,
  571 U.S. 277 (2014)..................................................................12, 14, 17

*Wallert v. Atlan*,
  141 F. Supp. 3d 258 (S.D.N.Y. 2015)........................................................3

*Wolfe v. Charter Forest Behav. Health Sys., Inc.*,
  185 F.R.D. 225 (W.D. La. 1999) ............................................................21

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980)................................................................................17

*Xiu Feng Li v. Hock*,
  371 Fed.Appx. 171 (2nd Cir. 2010)..........................................................8

*Young v. City of Mount Ranier*,
  238 F.3d 567 (4th Cir. 2001) ..................................................................21

*Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC*,
  No. 19-CV-3444, 2020 WL 5503557 (S.D.N.Y. Sept. 10, 2020) (Broderick,
  J.)..........................................................................................................9, 14

**Statutes**

11 U.S.C. § 101(22)(A) ...................................................................................27

11 U.S.C. § 101(53A) ......................................................................................26

11 U.S.C. § 544 ................................................................................................25

11 U.S.C. § 546(e) ...................................................................................... *passim*

11 U.S.C. § 547 ................................................................................................25

11 U.S.C. § 548(a)(1)(A) ................................................................24, 25, 33, 34

11 U.S.C. § 548(a)(1)(B) .................................................................................26

11 U.S.C. § 550(a) ...........................................................................................18

11 U.S.C. § 741(7)(A) ......................................................................................29

18 U.S.C. § 1961 *et seq* ...................................................................................22

28 U.S.C. 1334(a) ............................................................................................20

28 U.S.C. 1334(b) ............................................................................................20

**Rules**

CPLR § 301 ........................................................................................................8

CPLR § 302(a)(1) ....................................................................................9, 10, 14

Fed. R. Bankr. P. 7004(f) ..................................................................................9

Fed. R. Bankr. P. 7008(a) ................................................................................20

Fed R. Civ. P. 8(a) ..................................................................................... *passim*

Fed. R. Civ. P. 10(c) .................................................................................. *passim*

Fed. R. Civ. P. 12(b)(2) ...............................................................................1, 2, 3

Fed. R. Civ. P. 12(b)(6) .................................................................................1, 18

Moore's Federal Practice-Civil § 10.04[1] (2021) .....................................19, 21

5A Wright & Miller, Federal Practice and Procedure:  Civil § 1326 ............21

**Other Authorities**

*Black's Law Dictionary* (8th ed. 2004)..........................................................................................22

De Nederlandsche Bank, *Information Detail: Citco Bank Nederland N.V.*,
    https://www.dnb.nl/en/public-register/information-
    detail/?registerCode=WFTKF&relationNumber=B0275 ......................................................27

Ireland, *Financial Service Provider Profile: Citco Bank Nederland NV Dublin
    Branch*,
    http://registers.centralbank.ie/FirmDataPage.aspx?firmReferenceNumber=C2
    7278..................................................................................................................................27

Defendants Barfield Nominees Ltd. ("Barfield") and Northern Trust Corporation ("Northern Trust," and together with Barfield, the "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint, ECF 1 (the "Complaint" or "Compl.")[1] filed by plaintiff Irving H. Picard, Trustee (the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), pursuant to Rule 12(b)(2), 12(b)(6), 10(c), and 8(a) with prejudice.

## PRELIMINARY STATEMENT

This adversary proceeding rests on a bare bones Complaint, filed a decade ago, which initially sought recovery of secondary transfers that the Defendants received from two feeder funds, Kingate and Fairfield Sentry Limited ("Sentry" or the "Fairfield Fund"). The Defendants are Northern Trust, an Illinois corporation and its subsidiary, Barfield, a foreign entity maintaining its place of business in Guernsey, United Kingdom. The Trustee ignores those parties corporate separateness throughout the Complaint and instead group pleads all allegations against both of them together as the "Barfield Defendants." The parties recently stipulated to a dismissal of all claims related to transfers from the Kingate Fund—leaving only those claims arising from six subsequent transfers made from Fairfield Sentry to the group plead "Barfield Defendants." Compl. ¶ 25, Compl. Ex. C.

This motion is brought because the Complaint fails as a matter of law in several respects. First, the Trustee fails to make allegations sufficient to establish personal jurisdiction over the Defendants. The Trustee's Complaint improperly uses group-pleading to hide its jurisdictional infirmity and parlays that weakness by skirting around the fact that he has sued two different

---

[1] Copy attached as Exhibit A to the Declaration of Anthony L. Paccione in Support of Defendants' Motion to Dismiss the Trustee's Complaint ("Paccione Decl."). Unless otherwise noted, all ECF citations refer to Adv. Proc. No. 12-01669 (CGM).

corporate entities without coming close to establishing corporate veil piercing. His jurisdictional

hijinks simply fail to pass muster (*See* Point I, *infra*).

Alternatively, like many other pleadings filed by the Trustee in adversary proceedings, this

Complaint also fails because it contains no allegations to support the avoidability of initial transfers

and this alone dooms the Trustee's Complaint because this recovery action requires the Trustee to

plead the avoidability of transfers by BLMIS to alleged initial transferee. (*See* Point II(a), *infra*.)

The Trustee's claim is also prohibited under the Section 546(e) safe harbor. Indeed, the Second

Circuit has already ruled that the Section 546(e) safe harbor applies to BLMIS recovery actions

against subsequent transferees. (*See* Point II(b), *infra*.) The Trustee also uses impermissible

conclusory allegations and improper group pleading when identifying the recipient of the transfers

he seeks to recover. (*See* Point II(c)(i), *infra*), and does not include allegations to demonstrate that

the transfers he seeks to recover are customer property. (*See* Point II(c)(ii), *infra*.) His pleading

alleges just the opposite. The Trustee seeks to recover $5 billion from subsequent transferees who

invested in BLMIS through the Fairfield Fund, but acknowledges that the Fairfield Fund only

invested $3 billion into BLMIS. Certain transfers in this proceeding could not possibly have

originated with BLMIS, based on the Trustee's own allegations. (*See* Point II(c)(ii), *infra*.) Each

of these defects require the Court to dismiss the Complaint in its entirety.

## ARGUMENT

### POINT I

### THE TRUSTEE'S ALLEGATIONS ARE INSUFFICIENT
### TO ESTABLISH JURISDICTION OVER THE DEFENDANTS

The Trustee bears the burden of establishing that this Court has personal jurisdiction over

the Defendants. *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). "To survive

a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules

of Civil Procedure, the Trustee 'must make a *prima facie* showing that jurisdiction exists.'" *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (Bernstein, J.) ("*BNP Paribas*"), quoting *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018).

A *prima facie* showing requires more than "some evidence" that jurisdiction over the defendant is proper – the plaintiff must instead plead "facts which, if true, are sufficient in themselves to establish jurisdiction." *Tamam v. Fransabank SAL*, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010) (citation omitted). To satisfy its *prima facie* burden, the plaintiff cannot rely on "[c]onclusory non-fact-specific jurisdictional allegations," nor is the Court required to accept as true a "legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659 (2d Cir. 2013), quoting *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998); *Wallert v. Atlan*, 141 F. Supp. 3d 258, 276 (S.D.N.Y. 2015) ("A party … 'may not rely on 'conclusory non-fact-specific jurisdictional allegations' to overcome a [Rule 12(b)(2)] motion to dismiss.'") (internal quotations omitted). Instead, the plaintiff must plead or aver specific facts showing jurisdiction. *Toppel v. Marriott Int'l, Inc.*, No. 03-CV-3042, 2006 WL 2466247, at *2-4 (S.D.N.Y. Aug. 24, 2006); *Melnick v. Adelson-Melnick*, 346 F. Supp. 2d 499, 503 (S.D.N.Y. 2004); *Nuevo Mundo Holdings v. PriceWaterhouseCoopers LLP*, No. 03-CV-0613, 2004 WL 2848524, at *5 (S.D.N.Y. Dec. 9, 2004).

### a.    The Trustee's Group Pleading Is Improper to Establish Jurisdiction over Defendants

The Trustee improperly groups Barfield and Northern Trust together. The Trustee alleges that Barfield is a foreign entity maintaining its place of business in Guernsey, United Kingdom. Comp. ¶ 23. It alleges that Northern Trust is a corporation with its principal place of business in Illinois and that Barfield is a "subsidiary of Defendant Northern Trust through Northern Trust

Fiduciary Services (Guernsey) Limited that is 99% owned by Defendant Northern Trust" and that, upon the Trustee's information and belief, "the Barfield Defendants collectively function as one entity for all of the purposes herein." Compl. ¶¶ 23, 25. But the Trustee propounds no particularized factual allegations with respect to either entity. The Complaint utterly fails to distinguish whether Barfield or Northern Trust redeemed the subsequent transfers at issue, and the Complaint fails to separate the operations between the two entities. Throughout the entire Complaint, the Trustee makes assertions about the "Barfield Defendants" which is defined to include both Northern Trust and Barfield. But these are separate corporations and jurisdiction has to be plead against each one—not by lumping both together in a defined term. *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021) ("To allege personal jurisdiction over a defendant, group pleading is not permitted. Instead, the plaintiff is required to establish personal jurisdiction separately over each defendant."); *see also Berdeaux v. OneCoin Ltd.*, ---F. Supp. 3d ----, 2021 WL 4267693, at *6 (S.D.N.Y. Sept. 20, 2021) ("A plaintiff must carry his burden with respect to each defendant individually."); *Grow Grp., Inc. v. Jandernoa*, No. 94-CV-56799, 1996 WL 31848, at *5 (S.D.N.Y. Jan. 26, 1996) (citing *Rush v. Savchuk*, 444 U.S. 320, 322 (1980) ("Indeed considering the defending parties by group and aggregating their forum contacts in determining jurisdiction is plainly unconstitutional.")).

The Trustee's improper group pleading is a thinly veiled attempt to obtain jurisdiction *over* Barfield *through* the U.S.-based Northern Trust. In fact, pleadings filed by the Liquidators of Fairfield Sentry Limited in this Court, allege only that Barfield—and not Northern Trust—received redemptions from Fairfield Sentry. *See Fairfield Sentry Ltd., v. Barfield Nominees Ltd.,* Adv. Pro. No. 11-01470 (Bankr. S.D.N.Y. 2011), ECF 1. Thus, it appears that the naming of Northern Trust as a recipient of Fairfield Sentry redemptions in this case is either an error or implausible. It would

also appear that the Trustee has improperly named Northern Trust (a US based corporation) as a means to create some claim of jurisdiction over Barfield. But even that strategy fails because the Trustee's attempt to pierce the corporate veil between these two separate corporations misses by a wide mile. (*See* Section I(b), immediately below).

### b.    The Court Cannot Impose Jurisdiction over Barfield by Assigning Northern Trust's Alleged Jurisdictional Contacts to Barfield

The Trustee seeks to be excused from the prohibition against group pleading jurisdictional allegations because Barfield is an alleged "subsidiary of Defendant Northern Trust" and because the "Barfield Defendants collectively function as one entity." Compl. ¶¶ 23, 25. These allegations do not create an exception to the rule.

Courts have readily disposed of such arguments in the past. "As long as corporate formalities are observed, operations and responsibilities are distinctly maintained and no agency relationship exists . . . court[s] will not view distinct corporations as a single entity." *Golden Gulf Corp. v. Jordache Enters., Inc.*, No. 91-CV-8506, 1994 WL 62384, at *3 (S.D.N.Y. Feb. 24, 1994).[2] A subsidiary corporation should not be subject to personal jurisdiction "simply because a state has jurisdiction over the parent, even if the parent is the sole shareholder of the subsidiary." *Id.* (quotation omitted). Rather, "[t]he jurisdictional acts of a parent in New York may be imputed to a foreign subsidiary, but only where 'the subsidiary is acting as an agent for the parent, or the

---

[2] *Accord, e.g., Gonzalez v. Bank of Am. Ins. Servs., Inc.*, 454 F. App'x 295, 300-01 (5th Cir. 2011) ("When determining if personal jurisdiction can be imputed through a parent-subsidiary relationship, we begin with a presumption that a subsidiary, even one that is wholly-owned, is independent of its parent for jurisdictional purposes."); *Epps v. Stewart Info. Servs. Corp.,* 327 F.3d 642, 648-49 (8th Cir. 2003) ("[P]ersonal jurisdiction can be based on the activities of the nonresident corporation's in-state subsidiary, but only if the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego."); *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293-94 (11th Cir. 2000) ("Where the subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent, jurisdiction over the parent may not be acquired on the basis of the local activities of the subsidiary. . . . For [plaintiff] to persuade us that the district court had general personal jurisdiction over [nonresident defendant] because of [its subsidiary's] activities in the United States, it would have to show that [the subsidiary's] corporate existence was simply a formality, and that it was merely [the parent's] agent." (internal quotation omitted)).

parent's control is so complete that the subsidiary is a mere department of the parent'"—or, in other words, where they are "alter egos" of one another. *Greatship (India) Ltd. v. Marine Logistics Solutions (Marsol) LLC*, No. 11-CV-420, 2012 WL 204102, at *3 (S.D.N.Y. Jan., 24, 2012) (quoting *Irwin v. ZDF Enters. GmbH*, No. 040-CV-8027, 2006 WL 374960, at *8 (S.D.N.Y. Feb. 16, 2006)); *see Fagan v. Republic of Austria*, 08-CV-6715, 2011 WL 1197677, at *17 (S.D.N.Y. Mar. 25, 2011).

The Trustee's non-conclusory allegations are insufficient to pierce the corporate veil in this instance. "New York courts apply a presumption of separateness to corporations and are hesitant to disregard the corporate form." *Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392, 403 (S.D.N.Y. 2007) (citations omitted). Indeed, the Second Circuit has stated that courts should permit veil-piercing only under "extraordinary circumstances." *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996). Moreover, the presence of a local corporation does not create jurisdiction over a related, but independently managed, foreign corporation. *See Jazini*, 148 F.3d at 184. Only where the plaintiff has established that the entity subject to jurisdiction and the foreign entity are merely "alter egos" or the local entity is a "mere department" of the foreign entity, will the court disregard the corporate form and find jurisdiction over the foreign entity.[3] *See Fagan*, 2011 WL 1197677, at *17 (S.D.N.Y. Mar. 25, 2011) (declining to find personal jurisdiction).

Thus, for example, in *Indemnity Ins. Co. of N. Am. v. K-Line Am., Inc.*, No. 06-CV-0615, 2007 WL 1732435, at *10 (S.D.N.Y. June 14, 2007), plaintiffs alleged that jurisdiction over one

---

[3] The Court of Appeals has specified four factors to be considered in determining whether a subsidiary and a parent are alter egos: (1) common ownership; (2) financial dependency of the subsidiary on the parent; (3) the degree to which the parent interferes in the selection of the subsidiary's executive personnel and fails to observe corporate formality; and (4) the degree of the parent's control over the subsidiary's marketing and operational policies. *Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameries*, 2004 WL 2199547, *12 (S.D.N.Y. Sept. 29, 2004) (citing *Volkswagenwek Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120-22 (2d Cir. 1984)); *In re Lyondell Chem. Co.*, 543 B.R. at 145.

defendant applied to all of its affiliates and subsidiaries because the defendants "present themselves to the world as a unified company." The court concluded, however, that such conclusory allegations did not support a finding of jurisdiction because, "[a]t best, the facts asserted by [plaintiff] show that [defendant] is an affiliation of related companies that cooperate in the marketing, sale, and production of products," which is "insufficient to support jurisdiction." *Id*.

The same is true here. Even accepting as true the Trustee's allegation that the "Barfield Defendants collectively function as one entity for the purposes [of the Complaint]," there is still no basis for imputing jurisdictional contacts from Barfield to Northern Trust or vice versa. Compl. ¶ 25. Indeed, "courts in this circuit have found a *prima facie* showing of alter ego jurisdiction only where the plaintiff alleged (and in some instances provided evidence), *in addition* to common ownership and overlapping officers and directors, that the subsidiary was kept undercapitalized, that there was a failure to respect corporate formalities or permit autonomous decision-making, or both." *In re Lyondell Chem. Co.*, 543 B.R. 127, 145 (Bankr. S.D.N.Y. 2016).

The Trustee propounds no allegation of interlocking directorates or executive staff, no allegation of Barfield's financial dependency on Northern Trust, no allegation of interference by Northern Trust in the selection of Barfield's executive personnel or of disregard for corporate formalities, and no allegation of any control by Northern Trust over Barfield's marketing or operational policies. Thus, the Complaint does not even come close to alleging any basis for attributing Northern Trust's jurisdictional contacts to Barfield. Courts faced with such inadequate allegations have not only refused to impute the contacts of one corporate affiliate to another, but have also refused requests for jurisdictional discovery made by plaintiffs seeking to probe for information that might bolster their allegations. *See, e.g.*, *Greatship*, 2012 WL 204102, at *7;

*Fagan*, 2011 WL 1197677, at *20.  The Trustee's vague allegations are insufficient to pierce the corporate veil, and do not support a finding of personal jurisdiction.

### c.     The Trustee's Allegations Fail to Establish General Jurisdiction over Barfield

It is unclear if the Trustee purports to claim to have general jurisdiction over Barfield, but to the extent he does, the Complaint fails.

In New York, general jurisdiction may be established only if (1) the defendant is domiciled, incorporated in or has its principal place of business in the forum state or (2) in exceptional cases, the defendant's contacts with a forum are so extensive as to support general jurisdiction notwithstanding domicile elsewhere.  *Daimler AG v. Bauman*, 571 U.S. 117, 137-38 (2014); *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017); *see also Norex Petroleum Ltd. v. Blavatnik*, 22 N.Y.S.3d 138 (N.Y. Sup. 2015) (*Daimler* "brought an end to 'doing business' jurisdiction").

The allegations in the Complaint fail to plead that Barfield is subject to general jurisdiction in New York. Barfield is certainly not located in New York or the United States, nor is it alleged to have operations in New York or the United States. Compl. ¶¶ 23, 25.  And this is not an exceptional case, where the Trustee has pled that Barfield had contacts in New York or the United States sufficient to establish general jurisdiction. Compl. ¶ 3; *see also Gucci Am. Inc., Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (finding the bank's activities in New York "plainly [did] not approach" the required level of contact required by *Daimler*) (citing *Daimler*, 571 U.S. at 761 n.19).  Barfield does not do business in New York or the United States "with a fair measure of permanence and continuity."  *Xiu Feng Li v. Hock,* 371 Fed.Appx. 171, 174 (2nd Cir. 2010). Accordingly, the Trustee has failed to establish general jurisdiction over Barfield.  *See Daimler*, 571 U.S. at 136-40.

d.      **The Trustee's Allegations Fail to Establish Specific Jurisdiction over Barfield**

To establish specific jurisdiction under New York's long-arm statute,[4] the Trustee must

satisfy two exacting pleading requirements:  (1) Barfield must have transacted business within the

state; and (2) the claims asserted must arise from their separate business activity.  *See Zim*

*Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC*, No. 19-CV-3444, 2020 WL

5503557, at *4 (S.D.N.Y. Sept. 10, 2020) (Broderick, J.) (citing *Best Van Lines, Inc. v. Walker*,

490 F.3d 239, 246 (2d Cir. 2007)).  The Trustee also must demonstrate that the exercise of personal

jurisdiction over both Barfield "would comport with due process." *Zim Integrated Shipping Servs.*

*Ltd.*, 2020 WL 5503557, at *3 (internal quotations omitted).

As Judge Bernstein already held in these proceedings with respect to this very jurisdictional

issue, each subsequent transfer is a separate claim.  Accordingly, the Trustee must separately

establish the Court's jurisdiction over Barfield for ***each individual transfer*** it seeks to recover.

*BNP Paribas*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Each transfer is a separate claim, and

the Trustee must establish the court's jurisdiction with respect to each claim asserted.") (internal

quotations and citations omitted).  The Trustee has failed to do so because the Complaint does not

allege that the alleged subsequent transfers were received in accounts in the United States or that

these specific transfers are linked to the United States in any way.

---

[4] The Trustee bases personal jurisdiction on New York's long-arm statute, N.Y. C.P.L.R. § 302 (McKinney 2001), and Federal Rule of Bankruptcy Procedure 7004.  Compl. ¶ 8.  Under Federal Rule of Bankruptcy Procedure 7004(f), the Trustee can establish personal jurisdiction by demonstrating sufficient minimum contacts with the United States as a whole.  *See In re Lyondell Chem. Co.*, 543 B.R. 127, 138-39 (Bankr. S.D.N.Y. 2016).  The federal jurisdictional analysis "closely resemble[s]" New York's long-arm statute and due process requirements, so the analyses are largely interchangeable, but Rule 7004(f) accounts for contacts throughout the United States.  *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 68 (S.D.N.Y. 2016).

e.    **The Trustee Does Not Allege that the Subsequent Transfers Were Received in Accounts in the United States**

The fact that the Complaint does not allege that the transfers the Trustee seeks to recover were sent to or even through New York (or any U.S.) accounts, on its own, defeats jurisdiction over the Trustee's claims to recover each alleged subsequent transfer.  *See Neewra, Inc. v. Manakh Al Khaleej Gen. Trading & Contracting Co.*, No. 03-CV-2936, 2004 WL 1620874, at \*5 (S.D.N.Y. July 20, 2004) (non-U.S. bank did not engage in any jurisdictionally relevant activities in New York where it did not use its U.S. correspondent account to effect any transactions giving rise to plaintiff's claims); *see also Homeschool Buyers Club, Inc. v. Brave Writer, LLC*, No. 19-CV-6046, 2020 WL 1166053, at \*5 (S.D.N.Y. Mar. 11, 2020) (Broderick, J) (plaintiff failed to make a *prima facie* showing under N.Y. C.P.L.R. § 302(a)(1) because plaintiff did not allege "the existence of a single act directed at New York out of which these claims arise").

The Liquidators for the Fairfield Fund (the "Fairfield Liquidators") confirmed that virtually all of the same transfers the Trustee seeks to recover here allegedly occurred entirely outside of the United States:

> ***The redemption transfers at issue here were purely foreign***.  The Citco Administrator (a foreign entity) managed the share register and processed the redemption requests abroad, and the Funds (also foreign entities) transferred redemption payments to Defendants (also chiefly foreign entities).  *[E]very relevant component of the transactions at issue here occurred outside the territorial jurisdiction of the United States*.

Plaintiff-Appellants' Opening Brief for Second-Round Appeal ("Liquidators' Appeal"), *Fairfield Sentry Ltd. (In Liquidation) v. Citibank NA London*, No. 19-CV-03911-VSB 24 (S.D.N.Y. July 21, 2021), Dkt. No. 440, at 24 (emphasis added).  Because BLMIS did not transact any business with Barfield, the contacts that the Trustee cites and must rely upon are 100 percent derivative of

the Fairfield Fund's contacts; if the Fairfield Sentry Liquidators cannot allege sufficient jurisdictional contacts with Barfield, neither can the Trustee.

There can be no doubt that, based on the Trustee's and Fairfield Sentry Liquidators' own allegations in their complaints, the same transfers they seek to recover occurred entirely outside the United States.  Thus, the Trustee cannot meet his burden of establishing this Court's personal jurisdiction over Barfield, and the Complaint must be dismissed.

### f.    The Alleged Foreseeability of the Fairfield Fund's Investment in BLMIS Does Not Establish Personal Jurisdiction over Barfield

The Trustee's alternate jurisdictional theory, that Barfield purposefully availed themselves of the laws of New York and the United States by investing in the foreign Fairfield Fund, which in turn invested in BLMIS (Compl. ¶ 6), also fails.

*First*, the allegation that Barfield allegedly knew that a non-U.S. fund (Sentry), in which Barfield's banking customers invested, would invest in BLMIS (Compl. ¶¶ 6, 7) does not give rise to this litigation and thus does not support jurisdiction.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."); *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) (substantial connection "depends on the relationship among the defendant, the forum, and the litigation").  The Trustee's claims do not focus on the decision to *invest* with Sentry as the basis for liability.  *See In re Fairfield Sentry Ltd.,* No. 10-13164, 2018 WL 3756343, at *4-12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*") (subscription agreements irrelevant to claim not based on subscription).  Instead, the Trustee's claim to recover the transfers Barfield received from Sentry outside the United States relates to and arises out of those very transfers.  *See, e.g.*, Compl. ¶¶ 55, 60.  As the Fairfield Liquidators themselves maintain, every element of

the transaction is "purely foreign."  Liquidators' Appeal, *Fairfield Sentry Limited (In Liquidation) v. Citibank NA London*, No. 19-CV-03911-VSB 24 (S.D.N.Y. July 21, 2021), Dkt. No. 440, at 24.

*Second*, knowledge that the foreign Fairfield Fund would invest with BLMIS in New York is insufficient as a matter of law to support jurisdiction over Barfield.  The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third-parties) and the forum State."  *Walden v. Fiore,* 571 U.S. 277, 284 (2014).  In *Walden*, a Nevada-based plaintiff sued a Georgia police officer in Nevada for an unlawful seizure of money in a Georgia airport.  *Id*. at 288.  The police officer knew that the plaintiff had connections to Nevada and that the seizure would delay the return of the plaintiff's property to Nevada, but the Supreme Court nonetheless held it unconstitutional to exercise personal jurisdiction over the police officer in Nevada.  *Id*. at 289.  As the Supreme Court explained, the foreseeability of a plaintiff's connection to the forum is irrelevant to whether there is jurisdiction over the defendant because it "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis."  *Id*.  Instead, "[t]he substantial connection … between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State*."  *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 112 (1987) (quotation omitted) (emphasis in original).  Even if true, the Trustee's allegation that Barfield knew that the Fairfield Fund would invest with BLMIS does not satisfy *Walden*, and it is insufficient to hale Barfield into a New York court.  Moreover, if the Trustee's theory were upheld, any investment that foreseeably found its way into a U.S. asset would confer personal jurisdiction.  There is no precedent for such a sweeping result that would flood U.S. courts with cases against parties with

no U.S. contacts. *See, e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013) (noting foreseeability by itself is "insufficient" for the exercise of personal jurisdiction).

### g. The Subscription Agreement Cannot Subject Barfield to this Court's Personal Jurisdiction

The Trustee's jurisdictional theory that "Barfield Defendants entered into a subscription agreement with Sentry under which it submitted to New York jurisdiction" (Compl. ¶ 7) is inapplicable to the Trustee's claims against Barfield and has already been rejected by this Court.

Any theory of jurisdiction predicated on the subscription agreement is not applicable because the Trustee cannot invoke a forum selection clause in a contract to which he is a stranger, to establish this Court's jurisdiction over the subsequent transfer claim that he seeks to advance. *See Lavazza Premium Coffees Corp. v. Prime Line Distributors Inc.*, No. 20 CIV. 9993, 2021 WL 5909976, at *7 (S.D.N.Y. Dec. 10, 2021) (rejecting enforcement of forum selection clause for a non-party plaintiff bringing claims outside of the clause's scope).

Additionally, the law of the case disposes of this theory of jurisdiction. In the Fairfield Sentry Liquidators' proceedings, this Court concluded that the execution of certain subscription agreements, without more, did not subject the defendants—including Barfield—to personal jurisdiction. *Fairfield I*, 2018 WL 3756343, at *12. Specifically, this Court held that the New York choice of forum provisions in the subscription agreement did not apply to the disputes concerning subsequent transfers because the Fairfield Sentry Liquidators' claim is solely based on redemptions and does not arise out of the subscription agreements. *Id.*, at *11 (adhering to the Privy Council's holding "that the Subscription Agreement was irrelevant to actions to recover the inflated redemption payments").

### h.   The Trustee's Miscellaneous Jurisdictional Allegations Also Fail

The Trustee's remaining miscellaneous jurisdictional allegations, that Barfield "sent a copy of the subscription agreement to FGG's New York city office, and wired funds to Fairfield Sentry through a bank in New York … [and] also regularly communicated by e-mail and letters with its FGG account representatives located in FGG's New York City office," (Compl. ¶ 7), also fail because they are unrelated to the Trustee's claims, and in any event, are insufficient.

First, the Trustee does not allege facts explaining how any of these alleged contacts purportedly give rise to his claims. *See Zim Integrated Shipping Servs. Ltd.*, 2020 WL 5503557, at *5 (various contacts with New York insufficient to confer personal jurisdiction under Section 302(a)(1) where none gave rise to plaintiff's cause of action); *Vasquez v. Hong Kong and Shanghai Banking Corp., Ltd.,* 477 F.Supp.3d 241 *(S.D.N.Y. 2020)* (foreign bank's use of a New York-based correspondent bank account did not constitute purposeful availment sufficient to subject it to specific jurisdiction.)

Second, even if accepted as true, allegations that a defendant sent contracts or emails to New York or wired money through New York are insufficient to establish that it was transacting business in New York or had minimum contacts with the United States. *See SPV Osus Ltd.*, 882 F.3d at 345 (finding "handful of communications and transfer of funds . . . are insufficient to allow the exercise of specific personal jurisdiction over the [Foreign] Defendants"); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339-40 (S.D.N.Y. 2016) (finding allegations that foreign defendants "communicated with and transmitted information and funds to and from BLMIS located in New York" were insufficient to "project" the foreign defendants into New York) (internal quotations omitted); *see also Walden v. Fiore*, 571 U.S. 277, 285 (2014) (instructing that the relevant analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.").

14

Based on the Trustee's own statements made to this Court in a related action, the Trustee's

limited allegations regarding Barfield's purported contacts with New York or the U.S. are lacking

when compared with the allegations that this Court has found sufficient:

> This is not the *Hill* [*Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016)] case or the *To* [*Hau Yin To v. HSBC Holdings PLC*, No. 15CV3590, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017)] case where there's a foreign plaintiff [as] a foreign administrator of a foreign feeder fund and nobody is present in New York but somebody presses a button and a transfer goes through some … account in New York. *These defendants are working in New York; they're marketing their leverage from New York; they're routing money in BNP Paribas New York accounts, not correspondent accounts, actual accounts. And all our claims arise from the activity that was here, Your Honor*.

Tr. Mar. 9, 2018, Hr'g *SIPC v. BLMIS, LLC*, Adv. Pro. No. 12-01576 (Bankr. S.D.N.Y.), Dkt. No.

137, at 56-57 (emphasis added). The Trustee has offered no such allegations regarding Barfield's

contacts in New York or the United States from which his claims arise.

Here, the Trustee alleges that Barfield invested in the foreign Fairfield Fund, but he fails

to allege that Barfield had any sufficient New York contacts. In fact, the Trustee fails to allege

that Barfield had any contacts with the United States at all. He does not allege that Barfield entered

into any contracts with BLMIS or maintained an account with BLMIS in New York. Indeed, as

established by the Fairfield Sentry Liquidators' detailed allegations, Barfield was required to

maintain a non-U.S. account with a foreign bank—not BLMIS in New York—in order to even

invest in and to receive redemptions from the foreign Fairfield Fund.[5]

---

[5] The Complaint does not allege any additional facts supporting these unsubstantiated allegations. Conclusory allegations like this, based solely on "information and belief," (Compl. ¶ 7), are inadequate as a matter of law. *See Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 226 (2d Cir. 2017) (allegations based "upon information and belief" were entirely speculative where the complaint contained no allegations of fact which, if true, would have supported such allegations); *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (a "conclusory allegation on information and belief" is insufficient to make a claim plausible where the complaint's factual allegations do not raise a right to relief above the speculative level); *Rose v. Goldman, Sachs & Co.*, 163 F. Supp. 2d 238, 242 (S.D.N.Y. 2001) (complaint with no specific factual allegations to enable court to evaluate information and belief assertions failed to state a claim).

Finally, the Trustee alleges that the "Barfield Defendants" filed two customer claims with the Trustee, thereby invoking the jurisdiction of the Court (Compl. ¶ 8). This allegation is a good reminder of the Trustee's impermissible use of group pleading. Surely, the Trustee knows which –if either—of the two Defendants filed any such customer claims and as such should be disregarded here. Indeed, those customer claims—incorporated by reference into the Complaint and attached as Exhibits B and C to the Paccione Declaration—reflect that Barfield's customers submitted claims relating to investments through the Kingate feeder fund, not the Fairfield Fund investments at issue in this case. Paccione Decl. Exs. B, C.  The Trustee cannot connect the filing of a customer claim for losses resulting from **BLMIS direct investments** to this proceeding which involves **subsequent transfers from the Fairfield Fund**. The adjudication of the subsequent transfers have nothing to do with the BLMIS customer claims allowance process, and *vice versa*. Moreover, since BLMIS customer claims are limited to direct investments in BLMIS and not allowed for losses arising from any feeder fund, those claims were denied *See In re Aozora Bank Ltd. v. Securities Investor Protection Corp.*, 480 B.R. 117, 122 (Bankr. S.D.N.Y. 2012). As such, the customer claims provide no support for the Trustee's attempt to establish personal jurisdiction over either Barfield or Northern Trust. *See*, *In re Bernard L. Madoff Investment Securities LLC*, 525 B.R. 871, 887 (Bankr. S.D.N.Y. 2015) (where "adversary proceeding does not implicate the claims allowance process, parties will not be found to submit themselves to personal jurisdiction with respect to the Trustee's fraudulent transfer action by filing SIPA claims."); *In re Lehman Brothers Holdings, Inc.,* 544 B.R. 16, 34-35 (Bankr. S.D.N.Y. 2015) (Court found that defendant's filing of proof of claim constitutes submission to the jurisdiction of the Court *only with respect to litigation concerning the claims allowance process*) (emphasis added).

i.      **The Exercise of Personal Jurisdiction over Barfield Would Not Comport with Due Process**

The Court's exercise of jurisdiction must be reasonable under the circumstances for it to be consistent with due process. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Even if this Court accepts the Trustee's improper group pleading, the Trustee's attempt to establish jurisdiction over Barfield fails. On a motion to dismiss, the Trustee bears the burden of establishing that a defendant has sufficient minimum contacts with the forum state such that each "defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum … thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co. v. Sup. Ct. of Calif.*, 480 U.S. 102, 109 (1987). The Court should dismiss the Complaint unless the "assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'— that is reasonable under the circumstances of the particular case." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

As demonstrated above, the Trustee has not alleged that Barfield had any contacts whatsoever with New York or the United States related to the Trustee's claims to recover the alleged subsequent transfers. Accordingly, personal jurisdiction over Barfield would not comport with due process. *See Walden v. Fiore*, 571 U.S. 277, 286 (2014) ("Due Process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."), quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985).

17

## POINT II

## THE COMPLAINT FAILS UNDER RULE 12(B)(6)

The Court must dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Moreover, a claimant's allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A plausible claim pleads facts "that allow [ ] … the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

While the Court must accept well-pleaded factual allegations as true, it need not accept assertions unsupported by factual allegations, *id.* at 678-79, nor "legal conclusion[s] couched as [] factual allegation[s,]" *Papasan v. Allain*, 478 U.S. 265, 286 (1986), nor "conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its [plaintiff's] pleadings rely." *Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001).

### a.    The Trustee Does Not Adequately Plead the Avoidability of the Fairfield Initial Transfers because Adopting the Entire Fairfield Amended Complaint by Reference Is Improper

To recover from a subsequent transferee, the Trustee must plead and prove, among other things, an initial transfer that is avoided or at least avoidable. 11 U.S.C. § 550(a); *Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 2013 WL 1609154, at *7-8 (S.D.N.Y. Apr. 15, 2013). The Trustee seeks to recover from the Barfield Defendants under 11 U.S.C. § 550 as a subsequent transferee of an alleged fraudulent conveyance of funds from BLMIS to Sentry. *See*

Compl. ¶ 42; Compl. Ex. C.  In his Complaint, the Trustee attempts to plead an avoidable initial

transfer from BLMIS to Sentry by only the following single conclusory allegation:

> 38. The Trustee filed an adversary proceeding against Fairfield Sentry, Fairfield
> Sigma, and other defendants in the Bankruptcy Court under the caption *Picard v.
> Fairfield Sentry Ltd., et al.*, No. 09-01239 (BRL), in which, in part, the Trustee
> sought to avoid and recover the initial transfers of Customer Property from BLMIS
> to Fairfield Sentry in the amount of approximately $3 billion (the "Fairfield
> Amended Complaint").  The Trustee incorporates by reference the allegations
> contained in the Fairfield Amended Complaint as if fully set forth herein.[6]

Compl. at ¶ 38.

Paragraphs 39 and 40 of the Complaint assert in a conclusory manner that the Fairfield

initial transfers were avoidable—that BLMIS was a Ponzi scheme (Compl. ¶¶ 1, 17–18, 26-36),

BLMIS made transfers to Sentry (*id.* ¶¶ 39-43, Ex. B), and the Sentry Initial Transfers are

avoidable (*id.*)—without any supporting factual allegations that would meet the pleading

requirements of *Twombly* and *Iqbal*.  Without more, the Complaint is missing essential factual

allegations and must be dismissed for failure to state a claim on which relief may be granted.  For

example, Section 546(e) bars the Trustee from asserting many claims against transferees, and

Judge Rakoff held that only a transferee with "actual knowledge" of BLMIS' fraud can be sued

for claims that would otherwise be barred by Section 546(e).  Yet, the only allegations that relate

at all to the Fairfield Fund's knowledge about BLMIS are contained in the Fairfield Amended

Complaint, which the Complaint purports to incorporate in its entirety by reference in paragraph

38.

Rule 10(c) of the Federal Rules of Civil Procedure provides, "A statement in a pleading

may be adopted by reference elsewhere in the same pleading or in any other pleading."  The rule

"eliminates redundancy and repetition."  Moore's Federal Practice–Civil § 10.04[1] (2021) (citing

---

[6] The Trustee has since superseded the Fairfield Amended Complaint by filing a Second Amended Complaint in that
adversary proceeding.  (Paccione Decl. Ex. E).

*Brause v. Travelers Fire Ins. Co.*, 19 F.R.D. 231, 234 (S.D.N.Y. 1956)).  For example, the common practice of adopting by reference the background allegations of a complaint into the specific claims for relief obviates the need to repeat general allegations.

However, the authority to adopt by reference has its limits.  Courts have generally held that a pleading in one action may not adopt by reference the pleadings in a different action.  *Texas Water Supply Corp. v. R. F. C.*, 204 F.2d 190, 196 (5th Cir. 1953); *NCUA Bd. v. Morgan Stanley & Co.*, 2014 WL 1673351, *9 (S.D.N.Y. Apr. 28, 2014); *see Davis v. Bifani*, 2007 WL 1216518, *1 (D. Colo. Apr. 24, 2007) (it is improper "to incorporate by reference wholesale the allegations in a complaint in a completely separate action, even if that action is between the same parties," but striking the incorporation by reference for violation of Rule 8(a), rather than Rule 10(c)); *Muth v. Dechert, Price & Rhoads*, 391 F. Supp. 935, 938 (E.D. Pa. 1975) ("when determining the sufficiency of the Third-Party Complaints, we can look only to the pleadings in this case").

In the scarce instance[7] when incorporating an entire pleading was permitted, that incorporation must also comply with Rule 8(a)'s requirement that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "[each] allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(a)(2)(d)(1); Fed. R. Bankr. P. 7008(a).  Thus, even where adoption by reference is permitted (whether from the same adversary proceeding or another), Rule 8(a) additionally requires that a pleading must be clear and concise, and the

---

[7] The Defendants have found only one reported bankruptcy court decision that has permitted incorporation by reference of pleadings filed in one adversary proceeding in a different adversary proceeding.  *Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670 (Bankr. E.D. Pa. 2010).  But the reasoning in that case was incorrect because it treated the bankruptcy case itself as a single action.  That reading improperly confuses the terminology used in the Federal Rules of Civil Procedure (the "Civil Rules") with different terminology used in the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  Part VII of the Bankruptcy Rules applies to adversary proceedings and treats each adversary proceeding as a separate proceeding, analogous to a civil action under the Civil Rules.  *Compare* 28 U.S.C. § 1334(a) (jurisdiction over "cases" under title 11) *with id.* § 1334(b) (jurisdiction over "proceedings" arising in or related to cases under title 11).  Moreover, the *Geiger* court granted the defendant's motion to dismiss the complaint because its incorporation of the other pleading in its entirety failed to comply with Rule 8(a)'s requirement to plead short plain statements.

adoption must be "with a degree of specificity and clarity which would enable the responding party

to easily determine the nature and extent of the incorporation." *Wolfe v. Charter Forest Behav.*

*Health Sys., Inc.*, 185 F.R.D. 225, 229 (W.D. La. 1999). "The reference must be clear and specific

and must specifically identify the statements incorporated." Moore's Federal Practice–Civil

§ 10.04[1] (2021) (citing *Toberman v. Copas*, 800 F. Supp. 1239, 1243 (M.D. Pa. 1992)).

Finally, the resulting pleading must be clear, concise, and specific, and the incorporation

"must specifically identify which portions of the prior pleading are adopted." *Lowden v. William*

*M. Mercer, Inc.*, 903 F. Supp. 212, 216 (D. Mass. 1995); *accord Toberman*, 800 F. Supp. at 1243

(plaintiff must "provid[e], at a minimum, direct reference to specific paragraphs relied on"). Rule

10(c) permits only adoption by reference of a "statement in a pleading," not of entire pleadings.

*Muhammad v. Bethel-Muhammad*, 2012 WL 1854676, at *12 n. 10 (S.D. Ala. May 21, 2012)

(condemning "sweeping reference to his 100-page complaint"). The requirement that references

be explicit and direct is not merely for the sake of form: it "enable[s] the responding party to

ascertain the nature and extent of the incorporation." *Ghazzaoui v. Anne Arundel Cnty.*, 2014 WL

3973037, *4 (D. Md. Aug. 11, 2014). As one court has stated:

> This requirement of clarity ensures fairness to the responding party, for without this
> requirement incorporations "may prove confusing and inconvenient." 5A Wright
> & Miller, *supra*, § 1326. And the risk of such confusion and inconvenience is
> particularly high where, as here, a party seeks wholesale incorporation in an
> amended pleading of a superseded version of that same pleading. This is so because
> "[a]s a general rule, 'an amended pleading ordinarily supersedes the original and
> renders it of no legal effect.'" *Young v. City of Mount Ranier*, 238 F.3d 567, 572
> (4th Cir. 2001) (quoting *Crysen/Montenay Energy Co. v. Shell Oil Co. (In re
> Crysen/Montenay Energy Co.)*, 226 F.3d 160, 162 (2d Cir. 2000)). This general
> rule, like Rule 10(c)'s clarity requirement, also has fairness as its purpose, for it
> breeds confusion and uncertainty if in responding to an amended pleading, a party
> is required to take into account a number of other, superseded pleadings. This is
> especially true with respect to a complaint, which serves as the "pleading that starts
> a civil action and states . . . the basis for the plaintiff's claim[ ] and the demand for
> relief." *Black's Law Dictionary* (8th ed. 2004) (defining "complaint").

21

*Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446-47 (E.D. Va. 2009) (footnote omitted),

*aff'd*, 382 F. App'x 256 (4th Cir. 2010). Thus, a "Rule 10(c) adoption clause that does little more

than make wholesale reference to the contents of a prior pleading exemplifies the kind of

incorporation that fails to give the requisite guidance to the responding party." *Nycomed U.S., Inc.*

*v. Glenmark Generics, Ltd.*, 2010 WL 1257803, *4 (E.D.N.Y. Mar. 26, 2010) (internal quotes

omitted) (citation omitted).

The District Court for the Eastern District of New York synthesized these requirements in

dismissing a complaint that relied on numerous prior pleadings. In *U.S. v. Int'l Longshoremen's*

*Ass'n*, 518 F. Supp. 2d 422 (E.D.N.Y. 2007), the government brought a civil RICO action in a

complaint which attached as exhibits pleadings from several prior criminal and civil actions against

some of the same defendants. The court rejected the attempt to incorporate the initial pleadings.

First, "[t]he Government's failure to specifically identify which portions of the hundreds of pages

of exhibits it intends to incorporate by reference into the Amended Complaint makes it impossible

for the Court or the defendants to ascertain the nature and extent of the incorporation, and the

purported incorporation is therefore invalid." *Id.* at 462. Second, the wholesale incorporation of

the prior pleadings is "a blatant violation of Rule 8(a)(2)'s direction that a civil plaintiff provide a

'short and plain statement of the claim,'" and it would have rendered the complaint "utterly

incoherent" and "an unintelligible morass of self-contradictory allegations." *Id.* at 462 n.72, 463.

Finally, the court noted that if the incorporation were accepted, the defendants would have been

required to respond to the 85-page complaint, and every paragraph in the 400 pages of exhibits.

*Id.* at 464.

In this case, the Trustee's attempt to plead the avoidability of the Fairfield initial transfers

rests solely by incorporating by reference "the allegations contained in the Fairfield Amended

Complaint[8] as if fully set forth herein." Compl, ¶ 38.  The attempt to incorporate by reference all

798 paragraphs of a 217-page complaint (which itself attaches and refers to 111 exhibits) into what

would otherwise be a 17-page complaint against the Defendants violates numerous pleading rules

and requirements: it improperly incorporates by reference a pleading from another action; it

improperly incorporates an entire pleading, not the statements in a pleading; and it improperly fails

to specify the relevant allegations (as opposed to "all" allegations) that are being incorporated.

And worse, the Complaint incorporates a pleading that has been superseded by a further amended

complaint which removes numerous allegations and claims and has rendered the incorporated

earlier pleading inoperative.

Because the Fairfield Amended Complaint asserts claims against numerous defendants

other than Sentry, and against Sentry for much more than the avoidance of the transfers at issue in

this Adversary Proceeding, the incorporation does not contain a short and plain statement of the

claim entitling the Trustee to relief.  *See* Paccione Decl. Ex. D. Permitting the Trustee's

incorporation by reference here might require the Defendants to answer all the allegations in all

798 paragraphs in the Fairfield Amended Complaint, even those that have nothing to do with the

claim in this Adversary Proceeding.  Even if the Defendants could respond to the Fairfield

Amended Complaint, the result would be to expand the scope of this adversary proceeding well

beyond the claims asserted in the Complaint for recovery of subsequent transfers of allegedly

avoidable transfers of BLMIS customer property and put in issue here all the other claims for relief

in the Fairfield Amended Complaint.  The Trustee does not assert liability of the Defendants for

any of the Trustee's claims against any of the defendants named in the Fairfield Amended

---

[8] Fairfield Amended Complaint, *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. July 20, 2010), ECF 23 (without exhibits) (copy attached as Paccione Decl. Ex. D).

Complaint. Defendants should not be required to address those claims, with all the associated discovery and trial time that would likely result, or guess, at its peril, which of the incorporated allegations are relevant and must be addressed.

For all these reasons, the Court should reject the Trustee's attempt to incorporate the Fairfield Amended Complaint by reference. Without the incorporated Fairfield Amended Complaint, the Complaint pleads avoidability in only a conclusory fashion. Indeed, under *Iqbal* and *Twombly*, the Court need not credit legal conclusions styled as factual allegations. Accordingly, the Complaint does not adequately plead an essential element of the claim to recover subsequent transfers—avoidability of the Fairfield initial transfers—and should be dismissed.

### b.    The Trustee's Claim Is Barred by 11 U.S.C. § 546(e)

Section 550(a) of the Bankruptcy Code provides that to the extent a transfer is avoided under certain sections of the Code, a trustee may recover the property transferred, or its value, from the initial transferee or any subsequent transferee. Section 546(e), however, bars a trustee from avoiding a transfer (other than under Section 548(a)(1)(A), which has only a two-year lookback period) if the transfer, *inter alia*, (1) was made by or to a covered entity such as a stockbroker, financial institution, or financial participant; and (2) was either a settlement payment or a transfer in connection with a securities contract. 11 U.S.C. § 546(e).

The Second Circuit has instructed that courts enforce Section 546(e)'s safe harbor whenever it applies by its terms, specifically including in actions brought by the Trustee here. In construing Section 546(e) in the context of avoidance actions by the Trustee, the Second Circuit has explained that, "in enacting the Bankruptcy Code, Congress struck careful balances between the need for an equitable result for the debtor and its creditors, and the need for finality." *Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411, 423 (2d Cir. 2014) (citation omitted). In particular, "by enacting § 546(e), Congress provided that, for a

very broad range of securities-related transfers, the interest in finality is sufficiently important that they cannot be avoided by a bankruptcy trustee at all, except as actual fraudulent transfers under § 548(a)(1)(A)." *Id.* "Unwinding settled securities transactions . . . would seriously undermine . . . markets in which certainty, speed, finality, and stability are necessary to attract capital." *In re Tribune Co. Fraudulent Conv. Litig.*, 946 F.3d 66, 90 (2d Cir. 2019) ("*Tribune I*"). "Permitting the clawback of millions, if not billions, of dollars from BLMIS clients—many of whom are institutional investors and feeder funds—would likely cause the very 'displacement' that Congress hoped to minimize in enacting § 546(e)." *Fishman*, 773 F.3d at 420 (citation omitted).

When such a clawback action is brought against a subsequent transferee of a BLMIS client, the subsequent transferee can assert any defenses against the Trustee that the initial transferee could have asserted, including Section 546(e). This includes the situation where, as here, the alleged initial transferee, Sentry, settled with the Trustee and agreed to a consent judgment.[9] *See Picard v. Fairfield Inv. Fund Ltd. (SIPC v. Bernard L. Madoff Inv. Sec. LLC)*, 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021) (Morris, C.J.) ("Where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here . . . , the subsequent transferee is nonetheless entitled to raise a § 546(e) defense against recovery of those funds."). Accordingly, because the Trustee is seeking to recover from the Defendants as a subsequent transferee of a BLMIS transfer to Sentry, his claims based on Sections 544, 547 and 548(a)(1)(B) (and thus, all transfers for which recovery is sought dating back farther back than

---

[9] On May 9, 2011, the Trustee entered into a Settlement Agreement (the "Fairfield Settlement Agreement") with the Liquidators of Sentry. (Copy attached as Paccione Decl. Ex. F). This Court approved the Fairfield Settlement Agreement on June 7, 2011, *id.* ECF 92, and it was incorporated into the consent judgment entered against Sentry on July 13, 2011 (the "Consent Judgment"), *id.* ECF 109, ¶ 2; Compl. ¶ 41.

December 11, 2006) must be dismissed if BLMIS's transfer to Sentry was protected by Section 546(e).[10] As shown below, it was.

        (i)        The Alleged Initial Transfer Was Made by or to a Covered Entity

Here, the alleged initial transfer was made by or to an entity covered by Section 546(e) both because a stockbroker made the alleged initial transfer and because it was made to a financial institution, though either of those facts alone would be sufficient.[11]

        (ii)       The Alleged Initial Transfer Was Made by a Stockbroker.

There is no dispute that BLMIS made the initial transfers at issue and that BLMIS was a "stockbroker" covered by Section 546(e). *Fishman*, 773 F.3d at 417 (It is uncontested "that BLMIS was a 'stockbroker'" for determining safe harbor). The Code defines "stockbroker" to include entities that "engage[ ] in the business of effecting transactions in securities." 11 U.S.C. § 101(53A). As the District Court has noted:

> Overall, Madoff Securities, which was registered as a stockbroker with the SEC, clearly engaged in securities transactions. . . . [E]ven assuming the truth of the allegation that Madoff Securities' investment advisory division never traded securities on behalf of clients, Madoff Securities nonetheless qualifies as a stockbroker by virtue of the trading conducted by its market making and proprietary trading divisions.

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 719 (S.D.N.Y. 2012) (citation omitted), *aff'd sub nom. Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411 (2d Cir. 2014). As the Second Circuit noted in the ensuing appeal, "It is not disputed [by the Trustee] that BLMIS was a 'stockbroker' for the purposes of § 546(e)." 773 F.3d at 417;

---

[10] Although Section 546(e) is an affirmative defense, a court can dismiss based on Section 546(e) if its applicability is established on the face of the complaint or documents incorporated by reference into or integral to the complaint. *See Fairfield Inv. Fund*, 2021 WL 3477479, at *2.

[11] Defendants reserve for later consideration, if necessary, the question whether the transfer also was "made by or to (or for the benefit of) a . . . financial participant." 11 U.S.C. § 546(e).

*see* Br. for Plaintiff-Appellant Irving H. Picard, *In re Bernard L. Madoff Inv. Sec. LLC*, No. 12-2557 (2d Cir. May 15, 2013), ECF 145, at i-ii, 5 (not challenging stockbroker finding on appeal).

> (iii)    The Fairfield Initial Transfers Were Made to (or for the Benefit of) a "Financial Institution."

There is also no dispute that BLMIS made the subject transfers to the Fairfield Fund, which was a "financial institution" covered by 546(e). *In re Fairfield Sentry Ltd. (Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam)*, 10-13164-SMB, 2020 WL 7345988, at *7 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*"). Section 101(22) defines "financial institution" to include not only "an entity that is a commercial or savings bank," but also the customer of such a bank "when [it] is acting as agent or custodian for a customer . . . in connection with a securities contract." 11 U.S.C. § 101(22)(A). In *Fairfield III*, this Court held that the Fairfield Fund was a "financial institution[]" because it was a customer of Citco Bank Nederland N.V. Dublin Branch ("Citco Bank"), a bank regulated by the Central Bank of the Netherlands and registered with the Central Bank of Ireland. *Fairfield III*, 2020 WL 7345988, at *6 & n.11,[12] which acted as the Fairfield Fund's agent in connection with the securities contracts under which the BLMIS transfers to Sentry were made. *Id.* at *7. As this Court found in *Fairfield III*:

> [T]he [Fairfield] Liquidators' admission that redemptions were paid by Citco Bank establishes the necessary agency. It is implausible to infer that Citco Bank made the redemption payments to specific redeemers in specific amounts absent the [Fairfield] Funds' directions to do so. Moreover, Citco Bank accepted those directions by executing the redemption payments. Based on the foregoing, the Funds were customers of Citco Bank who acted as their agents in connection with the securities contracts pursuant to which the redemption payments were made, and

---

[12] *See* De Nederlandsche Bank, *Information Detail: Citco Bank Nederland N.V.*, https://www.dnb.nl/en/public-register/information-detail/?registerCode=WFTKF&relationNumber=B0275 (last visited Jan. 27, 2022) (identifying Citco Bank Nederland N.V. as "[c]arrying on the business of a bank," including "[a]cceptance of deposits and other repayable funds"); Central Bank of Ireland, *Financial Service Provider Profile: Citco Bank Nederland NV Dublin Branch*, http://registers.centralbank.ie/FirmDataPage.aspx?firmReferenceNumber=C27278 (last visited Jan. 27, 2022) (classifying Citco Bank as a "credit institution . . . whose business is to receive deposits or other repayable funds from the public and to grant credits for its own account"). This Court can take judicial notice of information from such public registries. *See Tribune I*, 946 F.3d at 78; *Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*, 323 B.R. 857, 869 (Bankr. S.D.N.Y. 2005).

the Funds were, therefore "financial institutions" within the meaning of 11 U.S.C.
§ 546(e).

2020 WL 7345988, at *7 (footnote omitted). This Court's holding in *Fairfield III* binds the Trustee

because he was in privity with the Fairfield Liquidators.[13] Even if not, there is no reason for this

Court to deviate from Judge Bernstein's well-reasoned *Fairfield III* decision.

In addition, if and to the extent the Complaint alleges that the Sentry redemption payments

to the Defendants were tied to payments of customer property transferred from BLMIS to Sentry,

the Fairfield initial transfers were settlement payments for the benefit of a financial institution,

namely, the Defendants, which are banks, and are therefore covered by the Section 546(e) safe

harbor. *See SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 2013 WL 1609154, at *9 (S.D.N.Y. Apr.

15, 2013) ("*Cohmad*").

> (iv)     The Alleged Initial Transfer Was a Settlement Payment and Made in
> Connection with a Securities Contract.

In *Fishman*, the Second Circuit held that Section 546(e) shielded transfers during a six-

year look-back period from BLMIS to its account holders from the Trustee's avoidance powers.

773 F.3d at 417. The Court of Appeals concluded that the documents governing BLMIS

customers' accounts constituted securities contracts, and that the payments BLMIS made to those

customers were made "in connection with" those contracts, and also constituted "settlement

payments," *id*. at 418-23—though either of those findings would have sufficed to invoke the safe

---

[13] As described above, the Fairfield Settlement Agreement provides for the sharing of recoveries on the parties' claims for recovery of property that Sentry transferred, cooperation and consultation on bringing those claims, and a joint interest agreement. The Trustee's and the Liquidators' agreed joint interest in any such recovered BLMIS customer property constitutes a "preexisting 'substantive legal relationship,'" focused on a successive or concurrent interest in property, of the kind recognized by the Supreme Court to give rise to non-party issue preclusion. *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008). Because the Trustee is in privity with the Liquidators in actions to recover alleged BLMIS customer property, such as the actions at issue in *Fairfield III*, and because the issue of Sentry's "financial institution" status was "actually litigated" and "essential" to the final judgments dismissing numerous such actions on the ground of the section 546(e) safe harbor, this Court's finding in *Fairfield III* that Sentry was a "financial institution" in connection with redemption payments from Sentry to its subscribers is binding on the Trustee. *See New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001) (stating requirements for issue preclusion).

harbor.  The Court rejected the Trustee's argument that the safe harbor did not apply because

Madoff did not actually carry out the promised securities transactions.  *Id*. at 419-20.

The same reasoning and result doubly apply to the transfers that the Trustee alleges BLMIS

made to Sentry for the purpose of funding Defendants' redemption request.  Transfers from

BLMIS to Sentry were clearly *both* "in connection with" the securities contracts Sentry had entered

into with BLMIS, as in *Fishman*, *and* "in connection with" the allegedly related securities contract

the Defendants had with Sentry through Sentry's Articles of Association,[14] pursuant to which the

Defendants made their redemption.   *See, e.g., Migani*, [2014]  UKPC  9,  ¶  10,

https://www.jcpc.uk/cases/docs/jcpc-2012-0061-judgment.pdf  ("the terms of the subscriber's

membership of the Fund, which govern the redemption of its shares . . . are to be found in the

Articles of Association of the Fund").[15]

The definition of "securities contract" includes "a contract for the purchase, sale, or loan

of a security," 11 U.S.C. § 741(7)(A)(i), and "[t]he term 'redemption,' in the securities context,

means 'repurchase,'" *Tribune I*, 946 F.3d at 80.  The definition of "securities contract" also

includes "any other agreement or transaction that is similar to an agreement or transaction referred

to in this subparagraph."  11 U.S.C. § 741(7)(A)(vii).  Accordingly, "the definition of a securities

contract . . . includes . . . redemption requests."  *Cohmad*, 2013 WL 1609154, at *8.  Furthermore,

Section 546(e) only requires that the transfer be "in connection with *a* securities contract," not in

connection with the securities contract between the transferor and initial transferee.  *See Fishman*,

---

[14] *See* The Declaration of William Hare, counsel for the Fairfield Liquidators, attaching the Memorandum of Association and Articles of Association of Fairfield Sentry Limited, as filed with the Court in *Fairfield Sentry Ltd. v. ABN AMRO Schwiz AG, et al.*, Adv. Pro. No. 10-03636 (Bankr. S.D.N.Y. Oct. 26, 2016), ECF 164 and 164-6 (copy attached to Paccione Decl. as Ex. G).

[15] This Court may consider the Articles of Association in connection with this memorandum because, as the basis for the challenged transfer, they are integral to the Complaint.  *See In re Trib. Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 176 (2d Cir. 2021) ("Here, the documents the district court relied on were the contracts that set forth the relationship between Tribune and CTC, and they were therefore integral to the complaint.").

773 F.3d at 422 (holding that "Section 546(e) sets a low bar for the required relationship between the securities contract and the transfer sought to be avoided" and that "a transfer can be connected to, and can be made in relation to, multiple documents or purposes simultaneously"); *Cohmad*, 2013 WL 1609154, at *9 (explaining that a transfer from a debtor to an initial transferee may qualify as having been made "in connection with a securities contract" between the initial transferee and a subsequent transferee, and thus be covered by the safe harbor on that basis).

Implicit in the Trustee's subsequent transfer claim is the allegation that the funds the Defendants received were transferred from BLMIS to Sentry so that Sentry could then satisfy the Defendants' redemption request. Although, as demonstrated in Point II(c) *infra*, this allegation lacks plausible support, its assertion necessarily involves the allegation of a connection between the initial transfer from BLMIS to Sentry and the Defendants' contract with Sentry that authorized the redemption. Accordingly, the Section 546(e) safe harbor applies to the initial transfer, and thus bars recovery of the subsequent transfer.

The Trustee may argue that the safe harbor does not apply here because the initial transferee, Sentry, allegedly knew of Madoff's fraud, and thus knew that there was no actual "settlement payment" or "securities contract" between BLMIS and Sentry. In *Fairfield Investment Fund*, this Court accepted that Sentry's knowledge had been adequately pleaded in a later version of the *Fairfield* complaint than the one that was incorporated by reference into the instant Complaint. *See* 2021 WL 3477479, at *4-5 (citing Paccione Decl. Ex. D).[16] It then quoted Judge

---

[16] The Defendants respectfully disagree with that conclusion and reserve for a later stage of this action or appeal all arguments that the Trustee has not adequately pleaded Sentry's actual knowledge of Madoff's fraud either in the Second Amended Complaint or the earlier pleadings in *Fairfield Investment Fund* and/or that Sentry did not in fact have such actual knowledge. *See Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 776-77 (2020) (holding that "to have 'actual knowledge' of a piece of information, one must in fact be aware of it" and distinguishing between actual knowledge and constructive knowledge); *Heinert v. Bank of Am. N.A.*, 835 F. App'x 627, 631 (2d Cir. 2020) ("allegations [of actual knowledge of misrepresentations] do not suffice to show that [the bank] had actual knowledge of the [account holders'] Ponzi scheme, the fraud on which the [plaintiffs'] claim relies"); *Rosner v. Bank of China*, 349 F. App'x 637, 639 (2d Cir. 2009) (similar); *Ryan v. Hunton & Williams*, 2000 WL 1375265, at *9 (E.D.N.Y. Sept.

Rakoff's statement that "'if the Trustee sufficiently alleges that the transferee from whom he seeks to recover a fraudulent transfer knew of Madoff Securities' fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor." *Fairfield Inv. Fund*, 2021 WL 3477479, at \*4 (quoting *Cohmad*, 2013 WL 1609154, at \*7). That is, Sentry's alleged actual knowledge of Madoff's fraud bars not only Sentry, but also subsequent transferees, from invoking the safe harbor.[17]

Indeed, the Trustee's argument does not defeat the application of the safe harbor here for several reasons. *First*, as noted above, even if Sentry had actual knowledge of the BLMIS fraud sufficient to preclude *Sentry* from invoking Section 546(e), that would not affect the separate securities contracts between Sentry and its investors, including the Defendants. Nor would Sentry's alleged knowledge of the BLMIS fraud preclude the application of Section 546(e) for the benefit of a Sentry investor if the initial transfer was "in connection with" Sentry's agreement with a Sentry investor. In *Cohmad*, Judge Rakoff agreed that securities contracts other than the initial transferee's securities contract with BLMIS could independently satisfy Section 546(e)'s requirement that the initial transfer be in connection with a securities contract. 2013 WL 1609154, at \*8-9. Judge Rakoff ruled that so long as the initial transferee withdrew funds from BLMIS to make a payment under a securities contract between the initial transferee and a subsequent transferee, then the withdrawal from BLMIS would be a transfer made in connection with a

---

20, 2000) (similar); *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117, 140 (Bankr. S.D.N.Y. 2014) (refusing to equate "strong suspicion" with "actual knowledge").

[17] The *Cohmad* analysis does not end with an examination of the initial transferee's level of knowledge. In *Cohmad*, Judge Rakoff announced an exception to the safe harbor for subsequent transferees parallel to the one he announced for initial transferees, precluding Section 546(e) from being invoked if a subsequent transferee had "actual knowledge." *Cohmad*, 2013 WL 1609154, at \*4, 7.

securities contract—namely, the contract between the initial transferee and the subsequent

transferee—and would not be avoidable on a subsequent transferee claim:

> Take, for example, a hypothetical situation in which the Trustee alleges that a
> withdrawal of funds by an investment fund from its Madoff Securities customer
> account occurred because an investor in that fund sought redemption of its
> investment under the terms of its investment contract. Assuming that either the
> investment fund or the investor qualifies as a financial institution or financial
> participant, and barring other circumstances that may appear on the facts of a given
> case, that situation appears to fit within the plain terms of Section 546(e): an initial
> transfer that was "made by or to (or for the benefit of) a . . . financial institution [or]
> financial participant . . . in connection with a securities contract."

*Id*. at *9 (footnote omitted).[18]  As applied to the facts here, the investment fund was Sentry (which

was a financial institution as shown above) and the investor was the Defendants (or some other

Sentry investor).

     ***Second***, the Trustee has not pleaded that the Defendants actually knew of Madoff's fraud.

Since the applicability of Section 546(e) is clear on the face of the Complaint and documents

integral to it, if the Trustee advances a theory of transferee actual knowledge as an exception to

the safe harbor, it is incumbent on him to plead such actual knowledge.  But nothing in the

Complaint even suggests that the Defendants had actual knowledge of Madoff's fraud.[19]  And

"actual knowledge," *Cohmad*, 2013 WL 1609154, at *1—not "mere suspicion," *id*. at *3, or

inquiry notice—is what Judge Rakoff repeatedly stated was necessary to defeat the safe harbor.

---

[18] Judge Rakoff also observed that "[t]o the extent that, for example, an initial transfer from Madoff [S]ecurities to an
investment fund customer and the subsequent transfer from the investment fund to its redeeming investors may
together comprise a 'settlement payment' under *Enron* [*Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d
329, 339 (2d Cir. 2011)], that transfer may fall within the purview of Section 546(e), assuming it meets the statute's
other requirements." *Cohmad*, 2013 WL 1609154, at *9 n.5.

[19] This case is unlike *Fairfield Investment Fund*, in which this Court found that the allegations against most of the
subsequent transferee defendants were sufficient to show they actually knew about Madoff's fraud. *See* 2021 WL
3477479, at *5-6.  Many of the subsequent transfers in that case were in connection with management contracts, not
securities contracts. *See, e.g.*, Fairfield Am. Compl. ¶ 138 (Fairfield Greenwich Limited received $3,844,000 in
management fees and $83,591,000 in performance fees from Sentry in 2002); *Picard v. Fairfield Sentry Ltd.*, No. 09-
01239 ECF 286-12, at 5 (showing these same amounts as subsequent transfers from Sentry).

*See, e.g.*, *id.* at \*4 ("the Trustee must show, at a minimum, that the transferee had actual knowledge that there were no actual securities transactions being conducted") (footnote omitted); *id*. at \*1, 3, 6, 7, 10. Furthermore, there is no allegation that the Defendants actually knew of any fraud at Sentry either. Because the initial transfer was made in connection with the securities contract between Sentry and the Defendants, and the Defendants are not alleged to have had actual knowledge of the Madoff fraud, the Court can and should, on those grounds alone, apply the safe harbor in Section 546(e) to this case.

**Finally**, Section 546(e) also applies here for a separate and independently sufficient reason. While we recognize that this Court and the District Court have previously ruled that Section 546(e) cannot be invoked by a transferee with actual knowledge of Madoff's fraud, and while, for the reasons discussed above, this Court does not need to reject that ruling in order to give the Defendants the benefit of the safe harbor, we note that nothing in Section 546(e) supports making its applicability turn on the knowledge of the transferee, as opposed to the debtor-transferor.[20] That section provides for only one exception to the safe harbor: namely, for a claim under Section 548(a)(1)(A), which requires the Trustee to allege and prove intentional fraud by the *transferor*. *See Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171, 181 (2d Cir. 2021) ("Voidability under § 548(a)(1)(A) focuses on the fraudulent intent of the debtor-transferor.") (footnote omitted); *Silverman v. Actrade Cap., Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005) (under Section 548(a)(1)(A) "it is the intent of the

---

[20] This is an open question at the Circuit level, and the Defendants expressly preserve it. Although the Second Circuit in *Fishman* noted that the defendants there had "every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions," 773 F.3d at 420, it did not state that the result would have been different had that not been the case. The only circumstances in which the knowledge of the transferee would be relevant would be if it could be imputed to the transferor, such as where the transferee, "as the [transferor]'s president, director, and sole shareholder, . . . was in a position to control the disposition of [the transferor's] property," *In re Roco Corp.*, 701 F.2d 978, 984 (1st Cir. 1983) (citation omitted).

transferor and not the transferee that is relevant") (citations omitted).  Thus, the exception to the

safe harbor articulated in *Cohmad*, i.e., that if the transferee from whom the Trustee seeks to

recover knew of Madoff Securities' fraud, that transferee cannot claim the protections of Section

546(e) (*Cohmad*, 2013 WL 1609154, at *7), is not supported by the text of the statute.

To hold that transferee knowledge defeats the safe harbor for a transferor is thus

inconsistent with Section 546(e)'s language.  Moreover, where the Code creates an exemption or

safe harbor, and specifies exceptions, a court is not free to create additional exceptions even when

doing so is motivated by a party's alleged wrongdoing.  *See Law v. Siegel*, 571 U.S. 415, 424-25

(2014).  Instead, the courts must adhere to "the plain meaning of the language" of the statute.  *Merit*

*Mgmt. Grp., LP v. FTI Consulting Inc.*, 138 S. Ct. 883, 897 (2018).   Considering the Second

Circuit's admonitions in *Fishman* that, in enacting Section 546(e) and its single exception for

claims under Section 548(a)(1)(A), Congress struck a balance favoring the securities markets'

interest in finality over creditors' interests in recovery, and that the courts "are obliged to respect

the balance Congress struck among these complex competing considerations," 773 F.3d at 423,

the safe harbor should apply here according to its plain language regardless of the initial transferee

Sentry's alleged knowledge.

    **c.**    **The Trustee Does Not Plead the Subsequent Transfers with the Requisite Specificity or that They Consisted of BLMIS Customer Property**

*Iqbal* and *Twombly* require the Trustee to plead facts, not conclusions of law or

statements of the elements of the cause of action, that create the plausible inference that the

redemption payments were subsequent transfers of BLMIS customer property and that "liability

necessarily, not only possibly, follows."  *Strandberg v. State Farm Mut. Auto. Ins. Co.*, 2016 WL

614401, at *1 (D. Nev. Feb. 16, 2016).  As Judge Bernstein ruled:

> The Trustee must allege facts that support the inference that the funds at issue
> originated with the BLMIS, and contain the "***necessary vital statistics***"—the "***who,***

34

***when, and how much***" of the transfers to establish that an entity was a subsequent transferee of the funds…[B]arebones allegations that the funds at issue were transferred to the Subsequent Transferees, without more detail, are insufficient.

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Secs. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (emphasis added); *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117, 150–51 (Bankr. S.D.N.Y. 2014) (same).

In *Shapiro*, the Trustee alleged only generically that (i) BLMIS transferred funds to certain accounts and (ii) the "Initial Transferee Defendants subsequently transferred a portion of the $53,778,486 received from BLMIS" to defendants who held an account at BLMIS which was funded largely, if not completely, with subsequent transfers. (*Picard v. Shapiro*, Adv. Pro. No. 10-5383 (Bankr. S.D.N.Y. July 8, 2014), ECF 33, ¶¶ 110, 43.) The Court dismissed the complaint because it did not "tie any initial transfer to any subsequent transfer or Subsequent Transferee" and did "not plausibly imply that the initial transferees even made subsequent transfers to the Subsequent Transferees as opposed to third parties, or that they made the subsequent transfers rather than simply keep the initial transfers for themselves." *Shapiro*, 542 B.R. at 119; *accord In re Caremerica, Inc.*, 409 B.R. 737, 750–51 (Bankr. E.D.N.C. 2009) (court dismissed a preference claim under *Twombly* and *Iqbal* because the Trustee's included factual allegations about transfers in and out of an account and amounts received by the supposed transferees, but nothing to tie them together). Here, the Complaint's allegations fail to make the connections that the courts required in *Shapiro*, *Merkin*, and *Caremerica*. As the following two subsections show *seriatim*, the Complaint here fails to plead the subsequent transfers with the requisite specificity or plausibility.

   (i)  The Trustee Has Not Sufficiently Pleaded Who Received the Transfers at Issue

As stated above, Federal Rule of Civil Procedure 8(a)(2) requires pleadings to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," to place each

defendant on notice of the plaintiff's claims and allegations against them. *See Sheeran v. Blyth Shipholding, S.A.*, 2015 WL 9048979, at *3 (D.N.J. Dec. 16, 2015). Indeed, courts will dismiss an action when a plaintiff lumps several defendants together without setting forth particularized allegations as to each defendant because the plaintiff "has engaged in impermissibly vague group pleading." *Shaw v. Housing Auth. of Camden*, No. 11-4291, 2012 WL 3283402, at *2 (D.N.J. Aug. 10, 2012) (dismissing complaint, noting that "[e]ven under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants" (citation omitted)); *see also Sheeran*, WL 9048979 at *3 (dismissing all eight complaints against defendants because plaintiff did not separate each of the defendants' alleged duty concerning their respective liability).

The Trustee's allegations defy the explicit purpose of FRCP 8(a)(2). The Trustee purposefully groups Barfield and Northern Trust as the "Barfield Defendants" at the beginning of the Complaint, but he does not allege specific allegations about each entity. Compl. ¶ 25. This group pleading is fatal to the Complaint because the allegations do not establish, as they must, who received the alleged subsequent transfers. Compl. Ex. C. Instead, the Trustee treats the entities as one, alleging they received the same money on the same date, without acknowledging any distinction between the operations of Barfield and Northern Trust. *Id*. This type of group pleading is impermissible under FRCP 8(a)(2) and fails to establish the required details of the transfer. *See Shapiro*, 542 B.R. at 119.

      (ii)     The Trustee Does Not Plausibly Plead that Subsequent Transfers Consisted of BLMIS Customer Property

The Complaint also fails to set forth facts that plausibly support the inference that the subsequent transfers actually originated with BLMIS, so as to "tie [the alleged] initial transfers to any subsequent transfer or [alleged] Subsequent Transferee." *Shapiro*, 542 B.R. at 119. Rather, as in *Omnibus Motion to Dismiss Decision*, where the court dismissed the Trustee's subsequent

36

transferee claims, his Complaint merely "allege[s] the initial transfers and assert[s], in conclusory fashion, that the [alleged] subsequent transferee defendants received subsequent transfers." *Id.*, 531 B.R. at 474.

This Complaint alleges only, and without specific detail, that "[a] portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Barfield Defendants." Compl. ¶ 44. Indeed, the exhibits to the Complaint, which are "part[s] of the pleading[s] for all purposes," Fed. R. Civ. P. 10(c), show the movements of cash in the alleged initial transfers from (i) BLMIS to Sentry and (ii) Sentry to the Defendants. Taking the allegations as true, $3 billion went from BLMIS to Sentry over six years (Compl. ¶ 39) and, on 6 separate occasions during five of those six years, Sentry distributed $16,178,329 to the Defendants. Compl. ¶ 44. *See also* Paccione Decl. Ex. H. Put syllogistically, the Trustee pleads that: (i) all redemption payments originated with BLMIS; (ii) the Defendants received redemption payments; and (iii) therefore, the Defendants' redemption payments originated with BLMIS.

But the first premise is clearly implausible for a number of reasons. From a mathematical standpoint: in the Trustee's own pleadings in the 70+ Sentry subsequent transferee recovery actions, the Trustee alleges that approximately $3 billion in redemption payments were made by Sentry to its investors after May 9, 2003 (the date of the earliest possible avoidable Fairfield Initial Transfer), each of which is alleged by the Trustee to be the proceeds of transfers from BLMIS to Sentry. Compl. ¶ 38. The Trustee alleges that during the same period, Sentry transferred another roughly $1 billion in transfers to its management group in the same time period (Paccione Decl., Ex. H), $752 million to Fairfield Sigma (Paccione Decl. Ex. H), and about $2 billion to BLMIS as deposits (Compl. Ex. B), for a total of nearly $7 billion in transfers made by Sentry during the six-year period. Yet the Trustee admits that less than $3 billion in alleged avoidable initial transfers

of customer property were made by BLMIS to Sentry during this period, meaning that at least $4 billion of the transfers Sentry made during this period—well more than half of Sentry's transfers during the period—could not have been subsequent transfers of avoidable initial customer property transfers. Nevertheless, the Trustee has challenged *all* the transfers from Sentry (other than transfers from Sentry to BLMIS), despite the mathematical impossibility of his position.

In sum, excluding only the $2 billion in transfers from Sentry to BLMIS, the Trustee is trying to recover roughly $5 billion in alleged "subsequent transfers" that flowed out of Sentry, even though he simultaneously alleges that the initial transfers (i.e., from BLMIS to Sentry) total less than $3 billion. Compl. ¶ 44. At least $2 billion of the alleged "subsequent transfers," therefore, could not have been subsequent transfers of BLMIS customer property.

Documents from the Trustee's actions against the other subsequent transferee defendants further prove the implausibility of these claims. For example, even in the most generous interpretation, one could look back to the BLMIS transfer to Sentry on May 5, 2008, for $80,000,000, and the BLMIS transfer to Sentry on July 10, 2008, for $20,000,000, and claim that Sentry had over $100,000,000 of BLMIS funds in its account for distributions. Paccione Decl. Ex. H. However, in a single day—July 15, 2008—Sentry made $112,538,526 in transfers; for the 61 transfers made that day, it is simply not possible for all subsequent transfers to consist of BLMIS funds when Sentry distributed $12,538,526 more than it collected from BLMIS. Compl. Ex. C, Paccione Decl. Ex. H, I. Thus, there is no way the Trustee can prove the $3,000,000 redemption by the Defendants that same day consisted of BLMIS funds; the money is untraceable.

Without Sentry receiving any more money from BLMIS, subsequent transferees continued to make redemptions from Sentry throughout July and August 2008. The Defendants redeemed $2 million from Sentry on August 18, 2008. Compl Ex. C. With Sentry's balance of BLMIS funds

already in the negative from the July 15, 2008 transfers, it is mathematically impossible for Barfield's August 18 redemption to have originated with BLMIS. These two transfers alone total nearly one-third of Barfield's redemptions from Sentry.

In yet another example demonstrating the traceability of funds (or lack thereof), one can look a few months earlier to January 2008. On January 11, 2008, BLMIS transferred $70 million into Sentry. Paccione Decl. Ex. H. On January 17, 2008, Sentry distributed $78,236,628 into various transferee's accounts. Compl. Ex. C; Paccione Decl. Exs. H, I. Where did the additional $8,236,628 *come from*? How was Sentry able to distribute these additional monies without adequate funds from BLMIS? Clearly, Sentry had exhausted all funds it received from BLMIS. *Id.* Yet, on February 15, 2008, without receiving any more money from BLMIS, Sentry once again transferred another $26,035,873 to 42 additional subsequent transferees, including $415,917 to Barfield or Northern Trust. Compl. Ex. C; Paccione Decl. Exs. H, I. It is evident that Sentry had exhausted all funds from BLMIS on January 17, 2008. Accordingly, it is impossible to know where the funds from the February 15 transfer originated; all that is clear, however, is that the funds could not have originated from BLMIS.

How was Sentry able to transfer to the subsequent transferee defendants more than it received from BLMIS? The answer to that question is found in Sentry's own admission that: "From time to time, to make Redemption Payments," it "utilized subscription monies of other investors on hand that were directed for investment in BLMIS", i.e., not BLMIS funds. *Citco Global Custody NV*, 19-01122 Doc. No. 19, entered Nov. 26, 2019, at para 63. To put it plainly, the Trustee's own pleading demonstrates the inability to know whether the money paid out to the Defendants was that of other Sentry investors, or of BLMIS. It is clear, thus, that "[t]here is an obvious alternative explanation" for the source of the Defendants' redemptions, and "that

39

explanation renders [the Trustee's] competing explanation conceivable but not plausible."
*Garfinkle v. Conference on Jewish Material Claims Against Germany, Inc.*, 2020 WL 6323462, at
*5 (S.D.N.Y. Oct. 28, 2020) (cleaned up); *Prestige Pet Prod., Inc. v. Pingyang Huaxing Leather
& Plastic Co.*, 767 F. Supp. 2d 806, 812 (E.D. Mich. 2011) (holding that dismissal was warranted
where there exists an "'obvious alternative explanation' that provides no grounds for relief")
(quoting *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567).

Consequently, the Trustee is left with only this logically flawed syllogism: (i) *some*
redemption payments originated with BLMIS; (ii) the Defendants received a redemption payment;
and (iii) therefore, the Defendants' redemption payment originated with BLMIS. But showing
that *some* redemption payments originated with BLMIS does not prove that any particular one did,
and thus is insufficient to state a claim "upon which relief can be granted," because *Twombly* and
*Iqbal require* courts to dismiss pleadings grounded on logical fallacies. E.g., *Bermudez v. City of
New York*, 783 F. Supp. 2d 560, 582 (S.D.N.Y. 2011) (dismissing claims because they were based
on a "false syllogism").

There must be more than a "mere possibility" that a significant number of the transfers
alleged by the Trustee actually originated with BLMIS in order for this Complaint to survive a
motion to dismiss. *Twombly*, 550 U.S. at 555. But the Trustee's theory that all the redemption
payments are customer property is not merely implausible, it is impossible. This Court has already
dismissed implausible claims in which the initial transfers could not be tied to the subsequent
transfer nor the subsequent transferee. *See Picard v. Shapiro*, 542 B.R. at 119. The Court should
apply the same logic here.

**CONCLUSION**

For the reasons stated herein, the Defendants respectfully request that the Court dismiss
the Trustee's Complaint in its entirety, with prejudice.

Dated:  April 28, 2022
New York, New York

*/s/ Anthony Paccione*

**KATTEN MUCHIN ROSENMAN LLP**
50 Rockefeller Plaza
New York, NY 10020
Telephone: (212) 940-8800
Facsimile: (212) 940-8776
Anthony L. Paccione
Email: anthony.paccione@katten.com
Mark T. Ciani
Email: mark.ciani@katten.com

*Attorneys for Defendants*

41