**Hearing Date: August 10, 2022**
**Objections Date: June 28, 2022**
**Reply Date: July 28, 2022**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (CGM) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |

In re:

BERNARD L. MADOFF,

Debtor.

IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff,

Plaintiff,

v.

Adv. Pro. No. 12-01677 (CGM)

SOCIETE GENERALE PRIVATE BANKING (SUISSE) S.A. (*f/k/a* SG Private Banking Suisse S.A.), individually and as successor in interest to Societe Generale Private Banking (Lugano-Svizzera) S.A.; SOCGEN NOMINEES (UK) LIMITED; LYXOR ASSET MANAGEMENT INC. (*f/k/a* SG Asset Management, Inc.), as General Partner of SG AM AI Premium Fund L.P.; SG AUDACE ALTERNATIF (*f/k/a* SGAM AI Audace Alternatif), now acting by and through its manager, Lyxor Asset Management S.A.S.; SGAM AI EQUILIBRIUM FUND (*f/k/a* SGAM Alternative Diversified Fund), now acting by and through its liquidator, KPMG Advisory Sarl; LYXOR PREMIUM FUND (*f/k/a* SGAM Alternative Multi Manager

Diversified Fund), now acting by and through its trustee, Societe Generale S.A.; SOCIETE GENERALE S.A., as Trustee for Lyxor Premium Fund and Successor in Interest to Banque de Reescompte et de Placement a/k/a Barep and to Societe Generale Asset Management Banque d/b/a Barep; SOCIETE GENERALE LUXEMBOURG (*f/k/a* Societe Generale Bank & Trust S.A.); OFI MGA ALPHA PALMARES (*f/k/a* Oval Alpha Palmares); OVAL PALMARES EUROPLUS; and UMR SELECT ALTERNATIF;

Defendants.

**THE SOCIÉTÉ GÉNÉRALE DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 5

    A.    Background ................................................................................................. 5

    B.    The Trustee's Actions Against the Fairfield Funds ................................. 6

    C.    The Actions Brought by the Fairfield Liquidators ................................... 7

    D.    The Present Complaint against the SG Defendants ................................. 8

    E.    The Trustee's Complaints Against Other Alleged Subsequent
           Transferees ............................................................................................. 10

ARGUMENT ........................................................................................................... 11

I.     THE TRUSTEE CANNOT ESTABLISH PERSONAL JURISDICTION
       OVER THE SG FOREIGN DEFENDANTS. .................................................. 11

    A.    The Trustee Has Failed to Plead Facts Sufficient to Support An
           Assertion of General Jurisdiction Over the SG Foreign Defendants. ................... 12

    B.    The Trustee Has Failed to Allege Facts Sufficient to Support an
           Assertion of Specific Jurisdiction Over the SG Defendants. ................... 13

          1.    The Alleged Foreseeability of the Fairfield Funds'
                Investment in BLMIS Does Not Establish Personal
                Jurisdiction over the SG Foreign Defendants. .......................... 13

          2.    The Subscription Agreements Cannot Subject the SG
                Foreign Defendants to Personal Jurisdiction. .......................... 16

    C.    The Exercise of Personal Jurisdiction over the SG Foreign
            Defendants Would Not Comport with Due Process ............................. 17

II.    THE COMPLAINT FAILS TO PLEAD THAT THE SG DEFENDANTS
       RECEIVED BLMIS CUSTOMER PROPERTY. ........................................... 18

    A.    The Trustee Has Not Adequately Alleged That Any of the Alleged
           Subsequent Transfers Contain Customer Property. ............................. 18

    B.    The Trustee's Complaint Seeks to Recover Transfers Made by
           Sentry at Times When the Trustee Alleges There was no Money
           Left From BLMIS. ............................................................................. 21

III.   RECOVERY OF ALLEGED SUBSEQUENT TRANSFERS OF INITIAL
       TRANSFERS MADE OUTSIDE THE TWO-YEAR LOOKBACK IS
       BARRED BY THE SAFE HARBOR OF 11 U.S.C. § 546(e). ....................................... 24

       A.   The Alleged Initial Transfers Were Made by, to, or for the Benefit
            of, a Covered Entity. ..................................................................................... 25

            1.   The Alleged Initial Transfers Were Made by a Stockbroker. ................... 26

            2.   The Alleged Initial Transfers Were Made to a Financial
                 Institution. ............................................................................................... 26

            3.   Certain Alleged Initial Transfers Were Allegedly Made
                 "for the Benefit of" a Financial Institution. ............................................ 27

       B.   The Alleged Initial Transfers Were Settlement Payments and Made
            "in Connection With" a Securities Contract. ......................................... 28

       C.   Claims Based on Initial Transfers Before the Two-Year Lookback
            Period Must Be Dismissed. ...................................................................... 32

IV.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT DOES
       NOT CONTAIN A "SHORT AND PLAIN STATEMENT OF THE
       CLAIM." ............................................................................................................ 32

CONCLUSION .................................................................................................................... 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency Rent A Car Sys. v. Grant Rent A Car Corp.*,
  98 F.3d 25 (2d Cir. 1996) ............................................................................. 12, 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................ 19

*Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
  651 F.3d 329 (2d Cir. 2011) ............................................................................... 31

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ...................................................................................... 11, 12

*DiStefano v. Carozzi N. Am., Inc.*,
  286 F.3d 81 (2d Cir. 2001) ................................................................................. 11

*Fairfield Sentry Ltd. (In Liquidation) v. Migani*,
  [2014] UKPC 9 .......................................................................................... 7, 8, 29

*Ferrante Equip. Co. v. Lasker-Goldman Corp.*,
  26 N.Y.2d 280 (1970) ......................................................................................... 14

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984) ............................................................................................ 13

*In re Bernard L. Madoff Inv. Sec. LLC*,
  12 F.4th 171 (2d Cir. 2021) ............................................................................... 25

*In re Bernard L. Madoff Inv. Sec. LLC*,
  515 B.R. 117 (Bankr. S.D.N.Y. 2014) ..................................................... 20, 21, 24

*In re Bernard L. Madoff Inv. Sec. LLC*,
  542 B.R. 100 (Bankr. S.D.N.Y. 2015) ........................................................... 18, 19

*In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Revocable Trust)*,
  773 F.3d 411 (2d Cir. 2014) ......................................................................... passim

*In re CIL Ltd.*,
  582 B.R. 46 (Bankr. S.D.N.Y. 2018) ..................................................................... 9

*In re Fairfield Sentry Ltd.*,
  596 B.R. 275 (Bankr. S.D.N.Y. 2018) ................................................................... 8

*In re Fairfield Sentry Ltd.*,
  No. 10-13164, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ...............................15, 17

*In re Fairfield Sentry Ltd.*,
  No. 10-13164, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ....................8, 26, 27, 31

*In re Khan*,
  No. 10-46901, 2014 WL 4956676 (Bankr. E.D.N.Y. Sept. 30, 2014) ...................................23

*In re Level 8 Apparel, LLC*,
  No. 16-13164, 2021 WL 279620 (Bankr. S.D.N.Y. Jan. 26, 2021) .........................................9

*In re Lyondell Chem. Co.*,
  543 B.R. 127 (Bankr. S.D.N.Y. 2016) ....................................................................................11

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*,
  218 F.R.D. 76 (S.D.N.Y. 2003) ..............................................................................................33

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
  917 F.3d 85 (2d Cir. 2019)........................................................................................................5

*In re Roman Catholic Diocese of Albany, N.Y., Inc.*,
  745 F.3d 30 (2d Cir. 2014)......................................................................................................13

*In re Sledziejowski*,
  No. 13-22050, 2016 WL 6155929 (Bankr. S.D.N.Y. Oct. 21, 2016) ....................................15

*In re Terrorist Attacks on Sept. 11, 2001*,
  714 F.3d 659 (2d Cir. 2013)....................................................................................................15

*In re Trib. Co. Fraudulent Conv. Litig.*,
  10 F.4th 147 (2d Cir. 2021) ....................................................................................................29

*In re Trib. Co. Fraudulent Conv. Litig.*,
  946 F.3d 66 (2d Cir. 2019)..................................................................................................4, 25

*Int'l Customs Assocs. v. Ford Motor Co.*,
  893 F. Supp. 1251 (S.D.N.Y. 1995)........................................................................................14

*Kennedy v. Mondelez Glob. LLC*,
  No. 19-CV-302, 2020 WL 4006197 (E.D.N.Y. July 10, 2020)...............................................24

*Kramer v. Time Warner Inc.*,
  937 F.2d 767 (2d Cir. 1991)......................................................................................................5

*Lavazza Premium Coffees Corp. v. Prime Line Distributors Inc.*,
  No. 20 CIV. 9993, 2021 WL 5909976 (S.D.N.Y. Dec. 10, 2021)..........................................16

*Metro Life Ins. Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996)................................................................................17

*New Hampshire v. Maine*,
  532 U.S. 742 (2001)........................................................................................27

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
  549 B.R. 56 (S.D.N.Y. 2016)...........................................................................11

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
  712 F.3d 705 (2d Cir. 2013).............................................................................21

*Porina v. Marward Shipping Co.*,
  No. 05 CIV. 5621, 2006 WL 2465819 (S.D.N.Y. Aug. 24, 2006) .........................17

*Sapia v. Home Box Off., Inc.*,
  No. 18 CIV. 1317, 2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018).........................21

*Salahuddin v. Cuomo*,
  861 F.2d 40 (2d Cir. 1988)...............................................................................33

*Sapia v. Home Box Off., Inc.*,
  No. 18 CIV. 1317, 2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018).........................21

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  476 B.R. 715 (S.D.N.Y. 2012).........................................................................26

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  505 B.R. 135 (S.D.N.Y. 2013).........................................................................28

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  594 B.R. 167 (Bankr. S.D.N.Y. 2018)...............................................................12

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  No. 12 MC 115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ..................... *passim*

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Fairfield Inv.
  Fund Ltd.)*,
  No. 08-01789, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021)............5, 25, 30

*Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*,
  337 B.R. 791 (Bankr. S.D.N.Y. 2005) ...............................................................31

*SPV OSUS Ltd. v. UBS AG*,
  114 F. Supp. 3d 161 (S.D.N.Y. 2015)...........................................................14, 15

*SPV Osus Ltd. v. UBS AG*,
  882 F.3d 333 (2d Cir. 2018)........................................................................14, 15

*SPV Osus Ltd. v. UniCredit Bank Austria*,
  No. 18-CV-3497, 2019 WL 1438163 (S.D.N.Y. Mar. 30, 2019)...........................15

*Sullivan v. Kodsi*,
 373 F. Supp. 2d 302 (S.D.N.Y. 2005)...................................................................................19

*Sunward Elecs., Inc. v. McDonald*,
 362 F.3d 17 (2d Cir. 2004)...........................................................................................2, 16

*Taylor v. Sturgell*,
 553 U.S. 880 (2008)...........................................................................................................27

*U.S. v. Int'l Longshoremen's Ass'n*,
 518 F. Supp. 2d 422 (E.D.N.Y. 2007) ..............................................................................33

*Walden v. Fiore*,
 571 U.S. 277 (2014)....................................................................................................13, 18

*Waldman v. Palestine Liberation Organization*,
 835 F.3d 317, 335 (2d Cir. 2016).................................................................................13, 14

*World-Wide Volkswagen Corp. v. Woodson*,
 444 U.S. 286 (1980)...........................................................................................................17

*Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC*,
 No. 19-CV-3444, 2020 WL 5503557 (S.D.N.Y. Sept. 10, 2020)..................................11, 12

**Statutes**

11 U.S.C. § 101................................................................................................8, 26, 27

11 U.S.C. § 546(e) .............................................................................................. *passim*

11 U.S.C. § 548(a)(1)(A) .......................................................................................24, 31

11 U.S.C. § 550(a)(2).....................................................................................................9

11 U.S.C. § 551...............................................................................................................9

11 U.S.C. § 741.........................................................................................................29, 31

15 U.S.C. § 78fff-2(c)(3) ..............................................................................................18

**Rules**

Fed. R. Bankr. P. 7004..................................................................................................11

Fed. R. Civ. P. 8......................................................................................................2, 33

Fed. R. Civ. P. 12.....................................................................................................1, 9

Fed. R. Civ. P. 15.........................................................................................................33

vi

N.Y. C.P.L.R. § 302 (McKinney 2001) ........................................................................................11

Defendants Société Générale Private Banking (Suisse) S.A. (*f/k/a* SG Private

Banking Suisse S.A.) ("SG Suisse"), individually and as successor in interest to Societe Generale

Private Banking (Lugano-Svizzera) S.A. ("SG Lugano"); Socgen Nominees (UK) Limited ("SG

UK"); Lyxor Asset Management Inc. (*f/k/a* SG Asset Management, Inc.), as General Partner of

SG AM AI Premium Fund L.P.; SG Audace Alternatif (*f/k/a* SGAM AI Audace Alternatif), now

acting by and through its manager, Lyxor Asset Management S.A.S. ("SG Audace"); SGAM AI

Equilibrium Fund (*f/k/a* SGAM Alternative Diversified Fund), now acting by and through its

liquidator, KPMG Advisory Sarl ("SG Equilibrium"); Lyxor Premium Fund (*f/k/a* SGAM

Alternative Multi Manager Diversified Fund), now acting by and through its trustee, Societe

Generale S.A. ("Lyxor Premium"); Societe Generale S.A. ("SG"), as Trustee for Lyxor Premium

Fund and Successor in Interest to Banque de Reescompte et de Placement a/k/a Barep and to

Societe Generale Asset Management Banque d/b/a Barep; and Societe Generale Luxembourg

(*f/k/a* Societe Generale Bank & Trust S.A.) ("SG Luxembourg") (collectively, the "SG

Defendants" or "Defendants"), by their undersigned counsel, respectfully submit this

memorandum of law in support of their motion to dismiss the Amended Complaint (the

"Complaint") (Shaiman Decl. Ex. 1) of Irving Picard, Trustee for the Liquidation of Bernard L.

Madoff Investment Securities LLC (the "Trustee"), pursuant to Federal Rules of Civil Procedure

12(b)(2) and 12(b)(6).[1]

## PRELIMINARY STATEMENT

In the Trustee's pursuit of claims against alleged foreign subsequent transferees of

the feeder funds Fairfield Sentry Limited ("Sentry"), Fairfield Sigma Limited ("Sigma") and

Fairfield Lambda Limited ("Lambda" and, together with Sentry and Sigma, the "Fairfield Funds"

---

[1] A Stipulation and Order (the "April 18 Stipulation") Dkt. No. 133 (Shaiman Decl. Ex. 2) was entered on April 18, 2022 in the present action which, among other things, amended the caption of the Complaint.

or the "Funds"), he has asserted a right to "recover" every dollar ever received by anyone from any party with any connection to the Ponzi scheme run by Bernard L. Madoff Investment Securities LLC ("BLMIS" or "Madoff") even if the dollar never belonged to customers of BLMIS.  In so alleging, he has brought claims against foreign defendants, including many in this case, whose redemptions from funds related to Madoff had no connection to the United States and who therefore are not subject to jurisdiction here.  The Trustee also ignores principles of basic arithmetic, by alleging "subsequent transfers" from Sentry to redeemers and others that are approximately $2 billion more than the allegedly avoidable initial transfers from BLMIS to Sentry.  Further, the Trustee disregards the statutory safe harbor that Congress created to promote certainty and finality in the securities markets, which bars the bulk of his subsequent transfer claims.  Finally, the Trustee disregards Federal Rule of Civil Procedure 8(a)(2)'s pleading requirements and therefore leaves the SG Defendants to guess at what, exactly, is the basis for the Trustee's claims.  For all these reasons, the Trustee's claims are fatally flawed and should be dismissed.

First, the Trustee has failed to establish personal jurisdiction over Defendants SG Suisse, SG Lugano, SG UK, SG Audace, SG Equilibrium, Lyxor Premium, SG, and SG Luxembourg (collectively, the "SG Foreign Defendants")—non-U.S. entities who are not "at home" in New York, and whose alleged U.S. contacts are too scant to support the Trustee's assertion of specific personal jurisdiction.  Indeed, all told, the Trustee's jurisdictional allegations amount to random New York contacts, none of which constitutes a transaction within the state under New York's long-arm statute.  *See Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004).  The alleged foreseeability of the Fairfield Funds' investment in BLMIS— that the SG Foreign Defendants expected the British Virgin Islands ("BVI") Funds would invest

in BLMIS—is inadequate to confer jurisdiction because, among other reasons, the redemptions

at issue are purely foreign, and the Trustee cannot satisfy the minimum contacts inquiry by

establishing contacts between third parties (*i.e.*, the Fairfield Funds) and the forum state (*i.e.*,

New York). Further, the Trustee's allegations related to the Subscription Agreements between

the SG Foreign Defendants and the Funds are similarly flawed, because this Court has already

rejected that jurisdictional theory.

<u>Second</u>, basic arithmetic dictates that recoverable subsequent transfers *from*

Sentry cannot exceed the approximately ***$3 billion*** in initial transfers BLMIS made *to* Sentry.  In

this and other proceedings, the Trustee nonetheless seeks to recover approximately ***$5 billion***

from defendants that allegedly redeemed shares from Sentry or received other transfers from

Sentry.  That massive disparity alone renders the Trustee's subsequent transfer claims entirely

implausible.  Specific transfers alleged in the Complaint drive home this point.  As just one

example, the Trustee seeks to recover approximately $16 million in transfers from Sentry to the

SG Defendants that were made between October 2003 and March 2005.  These redemptions

were received anywhere from months to a year and a half after Sentry had last received any

funds from BLMIS.  By that time, according to the Trustee's own allegations, Sentry had already

transferred all of those funds from BLMIS to other recipients; this means that, according to the

Complaint, any transfer to the SG Defendants could not possibly have included BLMIS customer

funds.  Such allegations violate the most basic pleading standards, which demand that the

Trustee tie all subsequent transfers he seeks to recover to an initial transfer of customer property

(which he also fails to do) and that those ties be plausible.  The Trustee's pleading failures are

even more striking because, for over a decade, the Trustee has had the very records from Sentry,

Sigma and Lambda that would demonstrate which subsequent transfers contain money from

BLMIS, if any, and which did not. That the Trustee has nonetheless put forth such impossible

allegations prevents the SG Defendants from evaluating the claims against them for purposes of

defending or settling the litigation and requires that the Complaint be dismissed.

Third, all claims based on initial transfers made more than two years before the

petition date are barred by the securities safe harbor of 11 U.S.C. § 546(e). That statute

recognizes the importance of certainty, speed, and finality in securities transactions. *See In re

Trib. Co. Fraudulent Conv. Litig.*, 946 F.3d 66, 90 (2d Cir. 2019), *cert. denied,* 141 S. Ct. 2552

(2021) ("*Tribune I*") ("Unwinding settled securities transactions . . . would seriously undermine .

. . markets in which certainty, speed, finality, and stability are necessary to attract capital."). As

the Second Circuit has explained, "[p]ermitting the clawback of millions, if not billions, of

dollars from BLMIS clients—many of whom are institutional investors and feeder funds—would

likely cause the very 'displacement' that Congress hoped to minimize in enacting § 546(e)." *In

re Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Revocable Trust)*, 773 F.3d 411, 420

(2d Cir. 2014), *cert. denied*, 576 U.S. 1044 (2015) (*"Fishman"*) (citation omitted). All of the

initial transfers that the Trustee seeks to avoid in order to recover alleged subsequent transfers

from the SG Defendants are, according to his own allegations, settlement payments made by, to,

or, in certain cases, for the benefit of "covered entities" in connection with securities contracts.

Despite this, and despite the lack of any allegation that the SG Defendants knew that Madoff was

running a Ponzi scheme, the Trustee seeks to recover transfers as far back as 2003, which, if

allowed, would lead to the very disruption of the securities market that the statute was designed

to avoid. Thus, the Court should dismiss all claims by the Trustee against the SG Defendants

based on initial transfers made prior to September 6, 2007.

Finally, the SG Defendants are entitled to a "short and plain statement" of the claims against them. Instead, the Trustee's 26-page Complaint, which he has failed materially to amend for a decade, purports to "incorporate by reference" another 217-page complaint that was filed in a different adversary proceeding and has since been amended, rendering the iteration purportedly incorporated into the Trustee's Complaint superseded and moot. This pleading does not provide the SG Defendants with fair notice of the claims against them, and the Complaint should be dismissed on this basis as well.

## STATEMENT OF FACTS[2]

### A.    Background

This action is one of more than six dozen proceedings in which the Trustee seeks to recover payments that defendants are alleged to have received when they redeemed shares in Sentry; here, the Trustee seeks to recover approximately $137 million in redemptions from Sentry, Sigma and Lambda. Compl. ¶¶ 85-99.[3] From the 1990s through BLMIS's collapse in December 2008, Sentry sold shares directly to foreign investors. *See* First Amended Complaint (the "Trustee's Fairfield Amended Complaint"), *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. 09-01239 (Bankr. S.D.N.Y.) (the "Fairfield Action"), Compl. Ex. A Dkt. No. 1-1 ¶¶ 32, 33 (Shaiman Decl. Ex. 1). Sigma and Lambda were "feeder funds" for Sentry that accepted

---

[2] These facts are taken from allegations in the Complaint – which Defendants neither admit nor concede – and documents incorporated by reference therein, as well as the Trustee's pleadings in other Madoff proceedings and other items of which the Court may take judicial notice. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*Picard v. Fairfield Inv. Fund Ltd.*), No. 08-01789, 2021 WL 3477479, at *2 (Bankr. S.D.N.Y. Aug. 6, 2021)) (on motion under Rule 12(b)(6), "courts must consider… matters of which a court may take judicial notice", quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)). Here, the Court may take judicial notice of the Trustee's pleadings in other adversary proceedings, and the SG Defendants respectfully request that it do so. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("courts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in other litigation, but rather to establish the fact of such litigation and related filings").

[3] While the Complaint against the SG Defendants was initially dismissed under principles of comity, it was reinstated following appeal. *See In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85 (2d Cir. 2019), *cert. denied sub. nom. HSBC Holdings PLC v. Picard*, 140 S. Ct. 2824 (2020).

subscriptions in non-U.S. currency and then invested those funds in Sentry.  Sentry in turn, invested with BLMIS.  *See id.* ¶¶ 20, 22.

The Trustee's claims are best understood in the context of related proceedings, some initiated by the Trustee, and some by the Fairfield Liquidators.  Those proceedings are described briefly below.

**B.     The Trustee's Actions Against the Fairfield Funds**

Madoff's massive fraud was revealed in December 2008.  On or about May 18, 2009, the Trustee commenced an action against the Fairfield Funds and others seeking the avoidance and recovery of over $3.5 billion of initial transfers they received from BLMIS. Trustee's Twenty-Sixth Interim Report for the Period April 1, 2021 through September 30, 2021, *In re Bernard L. Madoff Inv. Secs. LLC,* Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y.), Dkt. No. 20821 ¶ 167.  On July 20, 2010, the Trustee filed the Trustee's Fairfield Amended Complaint in which he named additional defendants, including entities and individuals (the "FGG Defendants") associated with the Fairfield Greenwich Group, which formed, managed, and marketed the Fairfield Funds, alleging that BLMIS made approximately $3 billion in initial transfers to Sentry during the six-year look-back period, from December 11, 2002 to December 11, 2008.  Trustee's Fairfield Amended Complaint ¶ 536 (Shaiman Decl. Ex. 1).

On May 9, 2011, the Trustee settled with the Fairfield Liquidators.  *See* Settlement Agreement (the "Fairfield Settlement"), Compl. Ex. B (Shaiman Decl. Ex. 1).  On July 13, 2011, this Court entered consent judgments in favor of the Trustee against Sentry for $3.054 billion, Sigma for $752.3 million and Lambda for $52.9 million.  Compl. ¶ 68.  In the Fairfield Settlement, the Trustee and the Fairfield Liquidators "each agree[d] to provide reasonable access to the other's documents, data, and other information relating to, or beneficial to the pursuit of, the Sharing Claims."  Fairfield Settlement, Compl. Ex. B, ¶ 14 (Shaiman Decl.

Ex. 1).  "Sharing Claims" includes the present action, as well as the Fairfield Liquidators' actions

against the applicable SG Defendants.  *Id.* ¶¶ 4, 7, 11.  The Trustee and the Fairfield Liquidators

also each agreed to provide the other with "reasonable cooperation and assistance … in

connection with the prosecution of the Sharing Claims."  *Id.* ¶ 14.  Thus, the Trustee has had

access to Fairfield's documents and cooperation (including, presumably, the documents pursuant

to which the Trustee brought many of the Sentry Redeemer Actions, including this one filed in

2012) since 2011.

On August 28, 2020, the Trustee filed a second amended complaint in the

Fairfield Action (Second Amended Complaint, Fairfield Action, Dkt. No. 286 (the "Second

Amended Complaint")), seeking to recover, as BLMIS customer property, among other things,

approximately $1 billion in amounts allegedly paid by Sentry to certain FGG Defendants (*i.e.*,

one-third of the total amount of customer property BLMIS allegedly transferred to Sentry).  *See*

Exhibits 8, 10, 12, 13, 14 and 21 to the Second Amended Complaint, Fairfield Action, Dkt. Nos.

286-8, 286-10, 286-12, 286-13, 286-14, 286-21 (Shaiman Decl. Ex. 4).

### C.    The Actions Brought by the Fairfield Liquidators

Shortly after Madoff's fraud was revealed, the Fairfield Funds entered liquidation

proceedings before the Eastern Caribbean Supreme Court in the High Court of Justice of the

Virgin Islands.  Fairfield Settlement, Compl. Ex. B, at 2-3 (Shaiman Decl. Ex. 1).  The Fairfield

Liquidators commenced actions in the BVI against a number of the Fairfield Funds' alleged

redeemers seeking repayment of redemption payments made by the Funds to these redeemers

prior to BLMIS's collapse.  *See* Exhibit G to the Fairfield Settlement ("Settlement Exhibit G"),

Fairfield Action, Dkt. No. 69-9, at 6-7 (Shaiman Decl. Ex. 3); *see also Fairfield Sentry Ltd. (In*

*Liquidation) v. Migani*, [2014] UKPC 9 ("*Migani*") (*available at*

https://www.jcpc.uk/cases/docs/jcpc-2012-0061-judgment.pdf).  The Fairfield Liquidators

discontinued their claims in the BVI litigation following a final appellate decision in April 2014

issued by the U.K. Privy council in favor of defendants. *See Migani*.

Starting in or about April 2010, the Fairfield Liquidators commenced actions in

New York against hundreds of the Funds' shareholders, including many that had been sued

unsuccessfully in the BVI. *See* Settlement Exhibit G (Shaiman Decl. Ex. 3) (listing 209 actions

seeking to recover redemption payments against Sentry redeemers brought by the Fairfield

Liquidators and pending as of May 9, 2011).[4]  Certain SG Defendants are named in several of

these actions.[5]

Pursuant to a series of decisions by this Court (which are currently subject to

appeal), all of the Fairfield Liquidators' New York claims have been dismissed except for

constructive trust claims against the so-called "Knowledge Defendants."  *In re Fairfield Sentry

Ltd.*, 596 B.R. 275, 282, 305, 316 (Bankr. S.D.N.Y. 2018); *In re Fairfield Sentry Ltd.*, No. 10-

13164, 2020 WL 7345988, at *1 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*").

### D.    The Present Complaint against the SG Defendants

The Trustee brings this proceeding pursuant to his statutory authority under the

Securities Investor Protection Act, 11 U.S.C. §§ 101, *et seq.*  ("SIPA").  Compl. ¶ 26.  According

to the Complaint, various SG Defendants received approximately $128,678,138 in redemptions

from Sentry, approximately $2,090,254 in redemptions from Sigma, and approximately

$6,287,866 in redemptions from Lambda, all of which the Trustee attempts to characterize as

---

[4] While there is substantial overlap, these actions by the Fairfield Liquidators also include defendants who are not being sued by the Trustee.  *See, e.g.*, Third Amended Complaint, *Fairfield Sentry Ltd. (In Liquidation), et al. v. Banque Piguet & Cie S.A.*, Adv. Pro. No. 10-03514 (Bankr. S.D.N.Y.), Dkt. No. 72.

[5] As set forth in footnote 2, above, this Court may take judicial notice of pleadings in other actions.  This is especially true here where the Trustee is in privity with the Fairfield Liquidators in actions to recover alleged BLMIS customer property and the Trustee and Fairfield Liquidators have stipulated to a joint interest between them in this respect.  *See infra* at 27, n. 16.

"subsequent transfers" of BLMIS "customer property." *Id.* ¶ 73, 74, 75.[6] The Trustee invokes

Section 550 of the Bankruptcy Code and Section 278 of the New York Debtor & Creditor Law

("NYDCL"). Compl. ¶¶ 89, 94, 99.[7]

Specifically, the Trustee alleges that (1) BLMIS made numerous initial transfers

over six years to Sentry (Compl. Ex. D (Shaiman Decl. Ex. 1)) totaling approximately $3 billion

(*id.* ¶ 69) and that Sentry, on certain days during those six years, transferred $128,678,138 in

total to certain SG Defendants (*id.* ¶ 73, Ex. E); (2) that approximately $750 million of the initial

transfers Sentry received from BLMIS was transferred by Sentry to Sigma (*id.* ¶ 74, Ex. F), and

that Sigma transferred approximately $2,090,254 to certain SG Defendants (*id.* ¶ 74, Ex. G); and

(3) that approximately $52,935,000 of the initial transfers Sentry received from BLMIS were

transferred by Sentry to Lambda (*id.* ¶ 75, Ex. H), and that Lambda transferred approximately

$6,287,866 to SG Suisse (*id.* ¶ 75, Ex. I). The Trustee does not identify which portions of these

initial transfers from BLMIS to Sentry were supposedly subsequently transferred to the SG

Defendants as redemptions—not a date, not an amount, not anything from which the SG

Defendants or this Court might discern the supposed source of the funds that were transferred

from Sentry, Sigma, and Lambda to the SG Defendants. As explained below, this pleading

---

[6] The Trustee appears to pursue claims against the SG Defendants as subsequent transferees under 11 U.S.C. 550(a)(2). *See* Compl. ¶ 88 (alleging SG Sentry Defendants are "immediate or mediate transferees of the Fairfield Sentry Initial Transfers"); Compl. ¶¶ 93, 98 (same for SG Sigma Defendants and SG Suisse as a transferee from Lambda). For purposes of this motion, the SG Defendants accept this allegation as true, as they must on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6); however, the SG Defendants, including without limitation SG Luxembourg, expressly reserve the right to argue that they acted as mere conduits.

The Trustee also originally sought recovery of certain alleged redemption payments the SG Defendants received from Kingate Global Fund ("Kingate"), but those claims were dismissed as a result of a June 26, 2019, settlement between the Trustee and Kingate's joint liquidators. *See* the April 18 Stipulation (Shaiman Decl. Ex. 2).

[7] Although Section 278 of the NYDCL was amended, effective April 4, 2020, the amended statute only "applies to transactions occurring on or after April 4, 2020" and is therefore inapplicable here. *In re Level 8 Apparel, LLC*, No. 16-13164, 2021 WL 279620, at *5 n.8 (Bankr. S.D.N.Y. Jan. 26, 2021).

The Complaint also purports to assert claims pursuant to 11 U.S.C. § 551. Section 551, however, does not provide for an independent cause of action. *See In re CIL Ltd.*, 582 B.R. 46, 97 (Bankr. S.D.N.Y. 2018), *amended on reconsideration*, No. 13-11272, 2018 WL 3031094 (Bankr. S.D.N.Y. June 15, 2018).

failure is dispositive, particularly because at the time he filed the Complaint, the Trustee had long had access to the Fairfield Funds' records.

Among several proposed jurisdictional theories, the Trustee alleges that the SG Foreign Defendants directed funds to be invested with BLMIS through the Fairfield Funds, and then received transfers from those funds. Compl. ¶ 31. The Trustee further alleges that these contacts constitute minimum contacts with New York. Compl. ¶ 32. Additionally, the Trustee alleges that certain SG Foreign Defendants entered into Subscription Agreements with the Funds containing forum selection clauses (Compl. ¶¶ 33-34).

E.    **The Trustee's Complaints Against Other Alleged Subsequent Transferees**

Besides the claims in this action, the Trustee also has filed approximately six dozen actions against other Sentry redeemers. In those actions, combined with the Trustee's action against Sigma and Lambda, the Trustee seeks to recover, in the aggregate, alleged subsequent transfers of BLMIS customer property totaling approximately $4 billion from defendants who allegedly received redemption payments from Sentry. *See* Shaiman Decl. Exs. 5, 6, ¶ 9. And on top of that $4 billion in supposed "subsequent transfers," the Trustee also seeks to recover *another* approximately $1 billion of alleged customer property in amounts paid by Sentry to the FGG Defendants. *See* Shaiman Decl. Ex. 4, ¶ 10. In short, the Trustee is trying to recover roughly $5 billion in alleged "subsequent transfers" that flowed out of Sentry, even though he alleges that the initial transfers from BLMIS included only $3 billion of customer property.

## ARGUMENT

**I.     THE TRUSTEE CANNOT ESTABLISH PERSONAL JURISDICTION OVER THE SG FOREIGN DEFENDANTS.**

The Trustee cannot meet his burden of establishing this Court's jurisdiction over

the SG Foreign Defendants.  *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir.

2001).  The Complaint does not allege that the Court has general jurisdiction over the SG

Foreign Defendants, companies established outside of, and that are not "at home" in, the United

States (*see* Compl. ¶ 29-38).  *Daimler AG v. Bauman,* 571 U.S. 117, 136-40 (2014).  Thus, the

Trustee must plead facts supporting the exercise of specific jurisdiction.  To do so, under New

York's long-arm statute,[8] the Trustee must satisfy two exacting pleading requirements: (1) the

SG Foreign Defendants must have transacted business within the state; and (2) the claims

asserted must arise from that business activity.  *See Zim Integrated Shipping Servs. Ltd. v.*

*Bellwether Design Techs. LLC*, No. 19-CV-3444, 2020 WL 5503557, at *4 (S.D.N.Y. Sept. 10,

2020) (Broderick, J.) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)).

"The question of whether an out-of-state defendant transacts business in New York is determined

by considering a variety of factors, including: (i) whether the defendant has an on-going

contractual relationship with a New York corporation; (ii) whether the contract was negotiated or

executed in New York, and whether, after executing a contract with a New York business, the

defendant has visited New York for the purpose of meeting with parties to the contract regarding

the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the

---

[8] The Trustee bases personal jurisdiction on New York's long-arm statute, N.Y. C.P.L.R. § 302 (McKinney 2001), and Federal Rule of Bankruptcy Procedure 7004. Compl. ¶ 29.  Under Federal Rule of Bankruptcy Procedure 7004(f), the Trustee can establish personal jurisdiction by demonstrating sufficient minimum contacts with the United States as a whole.  *See In re Lyondell Chem. Co.*, 543 B.R. 127, 138-39 (Bankr. S.D.N.Y. 2016).  The federal jurisdictional analysis "closely resemble[s]" New York's long-arm statute and due process requirements, so the analyses are largely interchangeable.  *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 68 (S.D.N.Y. 2016).

contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state." *Agency Rent A Car Sys. v. Grant Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996) (citations omitted).  If the minimum contacts test is met, the Trustee also must demonstrate that the exercise of personal jurisdiction over the SG Foreign Defendants "would comport with due process."  *Zim Integrated Shipping Servs. Ltd.*, 2020 WL 5503557, at *3 (internal quotations omitted).

As Judge Bernstein already held in these proceedings with respect to this very jurisdictional issue, each subsequent transfer is a separate claim.  Accordingly, the Trustee must establish the Court's jurisdiction over *each* SG Foreign Defendant for *each individual transfer* it seeks to recover.  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Each transfer is a separate claim, and the Trustee 'must establish the court's jurisdiction with respect to each claim asserted.'") (internal quotations and citations omitted).  Here, the Trustee has failed to do so.

### A.    The Trustee Has Failed to Plead Facts Sufficient to Support An Assertion of General Jurisdiction Over the SG Foreign Defendants

Under *Daimler,* corporations are only "at home"—absent "exceptional" circumstances not present here—for purposes of exercising general jurisdiction in the state where they are incorporated or have their principal place of business.  *Daimler,* 571 U.S. at 136-40. There is no dispute, and the Trustee affirmatively alleges, that the SG Foreign Defendants are non-U.S.-based entities headquartered abroad: SG Suisse and SG Lugano are organized under the laws of Switzerland;[9] SG Audace, and SG are organized under the laws of France; SG

---

[9] Pursuant to the April 18 Stipulation, SG Suisse was substituted as a defendant in the present action "in place of and as successor to" SG Lugano on April 18, 2022 because "the assets and liabilities (including those in connection with the claims pending in this case) of defendant [SG Lugano] were transferred to defendant [SG Suisse] pursuant to a merger and its Swiss corporate registration cancelled in April 2016".  *See* the April 18 Stipulation (Shaiman Decl. Ex. 2).

Equilibrium and SG Luxembourg are organized under the laws of Luxembourg; SG UK is

organized under the laws of the United Kingdom; Lyxor Premium is organized under the laws of

Ireland; and all the SG Foreign Defendants' principal places of business are located in their

respective countries of organization.  *See* Compl. ¶¶ 8-13, 16-20.  Further, the Trustee's pre-

*Daimler* allegations regarding "other strong ties to the United States and New York," including

references to SG's New York branch office and SG Suisse's former Florida representative office,

are irrelevant to jurisdiction under current law.  Thus, the SG Foreign Defendants plainly are not

"at home" in New York, and there is no basis for exercising general jurisdiction over them.  *See*

*In re Roman Catholic Diocese of Albany, N.Y., Inc.,* 745 F.3d 30, 39 (2d Cir. 2014).

**B.**  **The Trustee Has Failed to Allege Facts Sufficient to Support an Assertion of Specific Jurisdiction Over the SG Defendants**

**1.**  **The Alleged Foreseeability of the Fairfield Funds' Investment in BLMIS Does Not Establish Personal Jurisdiction over the SG Foreign Defendants**

The Trustee's jurisdictional theory, that the SG Foreign Defendants purposefully

availed themselves of the laws of New York by investing in the foreign Fairfield Funds, which in

turn invested in BLMIS (Compl. ¶ 31), must fail.

The allegation that the SG Foreign Defendants expected that the British Virgin

Islands-based Fairfield Funds would invest in BLMIS (*id.* ¶¶ 31-32) relies on the "unilateral

activity of another party or a third person [, which] is not an appropriate consideration when

determining whether a defendant has sufficient contacts with a forum State to justify an assertion

of jurisdiction."  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984).

The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused

'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and

the forum State."  *Walden v. Fiore,* 571 U.S. 277, 284 (2014); *see also Waldman v. Palestine*

*Liberation Organization*, 835 F.3d 317, 335 (2d Cir. 2016) (personal jurisdiction measured not by third-party contacts but on contacts "the 'defendant *himself*' creates"); *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) (*"UBS II"*) (substantial connection "depends on 'the relationship among *the defendant*, the forum, and the litigation'") (emphasis added); *Int'l Customs Assocs. v. Ford Motor Co.,* 893 F. Supp. 1251, 1262 (S.D.N.Y. 1995) ("contention that the majority of [plaintiff]'s performance under the contract would occur in New York" did not establish jurisdiction, because "appropriate focus . . . is on what the non-domiciliary defendant did in New York and not on what the plaintiffs did"), *aff'd*, 201 F.3d 431 (2d Cir. 1999).  That the SG Foreign Defendants may have indirectly received a "benefit or profit" from BLMIS's performance in New York is "clearly not an act by the recipient in this State sufficient to confer jurisdiction under our long-arm statute."  *Ferrante Equip. Co. v. Lasker-Goldman Corp.,* 26 N.Y.2d 280, 285 (1970).

Similarly, whether the defendant has "transacted business" in New York under CPLR 302(a)(1), depends on "whether *the defendant* has an on-going contractual relationship with a New York corporation" (*Agency Rent A Car*, 98 F.3d at 29 (emphasis added)), not whether a third party has such a contact.  In fact, all four of the *Agency Rent A Car* factors refer back to a contact between *the defendant* and a New York corporation.  Thus, the Trustee has failed to allege either a statutory or a constitutional basis for jurisdiction.

Courts addressing Madoff-related claims have agreed.  For example, in *SPV OSUS*, Judge Rakoff ruled that even "creat[ing] and promot[ing]" and then "serv[ing] as administrator to the Feeder Funds, which in turn invested in BLMIS," and "perform[ing] due diligence on Madoff" in the U.S. were "attenuated" and "sporadic or indirect contacts with the United States."  *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 170 (S.D.N.Y. 2015).

Notably, the court did not treat these service providers as transacting business in New York

merely because the feeder funds that they worked for foreseeably invested in BLMIS.  If

"foreign banks alleged to have *provided services to* foreign investment funds" (*id.* (emphasis

added)) have not transacted in the U.S., then neither have foreign defendants that merely

received investment management services *from* the BVI Fairfield Funds.  *See also SPV Osus Ltd.*

*v. UniCredit Bank Austria*, No. 18-CV-3497, 2019 WL 1438163, at *2, *7-9 (S.D.N.Y. Mar. 30,

2019) ("creat[ing], manag[ing], and administer[ing] [Madoff] feeder funds" in U.S. too

"attenuated" to confer jurisdiction under controlling *UBS II* decision).

Moreover, even if the subscriptions in Fairfield Funds were somehow a

"transaction of business within the State" of New York, the Trustee's claims do not arise out of

any decision to *subscribe*.  *See In re Fairfield Sentry Ltd.,* No. 10-13164, 2018 WL 3756343, at

*11-12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*") (subscription agreements irrelevant to

claim based on redemption).  The Trustee's claims arise out of the redemptions (*see, e.g.*, Compl.

¶¶ 2, 86, 91, 96), and even the Fairfield Liquidators argue that "*every relevant component* of the

transactions at issue here occurred outside the territorial jurisdiction of the United States."

Liquidators' Opening Br., *Fairfield Sentry Limited (In Liquidation) v. Citibank NA London*, No.

19-cv-03911-VSB (S.D.N.Y. July 21, 2021), Dkt. No. 440, at 24 (emphasis added).

If the Trustee's theory were upheld, any investment that foreseeably found its way

into a U.S. asset, or a dollar-denominated asset, would confer personal jurisdiction.  There is no

precedent for such a sweeping result, which would flood U.S. courts with cases against parties

with no U.S. contacts.  *See, e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674 (2d

Cir. 2013) (noting that mere foreseeability of harm in the forum is "insufficient" for personal

jurisdiction); *In re Sledziejowski*, No. 13-22050, 2016 WL 6155929, at *5 (Bankr. S.D.N.Y. Oct.

21, 2016) (no minimum contacts by Polish entity that received funds originating from United States relating to "investments outside of the United States").  As a result, the Trustee's jurisdictional theory must fail.

> **2.      The Subscription Agreements Cannot Subject the SG Foreign Defendants to Personal Jurisdiction**

The Trustee's jurisdictional theory that the SG Foreign Defendants entered into Subscription Agreements with the Fairfield Funds that "confirmed that substantially all of the funds' assets would be invested with New York-based BLMIS" (Compl. ¶¶ 33-34) fails for two independent reasons.  First, the Trustee is not a party to the Subscription Agreements and therefore cannot rely on them to invoke jurisdiction.  Second, this Court has already rejected Trustee's argument, holding that the subscription agreements apply only to subscriptions, not redemptions.

Any theory of jurisdiction predicated on the Subscription Agreements fails because such agreements were not entered into between the SG Foreign Defendants and "a New York corporation" (*Sunward*, 362 F.3d at 22), and in any event, the Trustee cannot invoke a forum selection clause in a contract to which he is a stranger.  *See Lavazza Premium Coffees Corp. v. Prime Line Distributors Inc.*, No. 20 CIV. 9993, 2021 WL 5909976, at *7 (S.D.N.Y. Dec. 10, 2021) (rejecting enforcement of forum selection clause by plaintiff who was a non-party to the contract).  Thus, since the Trustee is not a party to and cannot enforce the Subscription Agreements, the Trustee cannot rely on any forum selection clause contained therein as a basis for jurisdiction.

Additionally, the law of the case disposes of this theory of jurisdiction. In the Liquidators' Proceedings, Judge Bernstein held that the forum provisions in the subscription agreement govern only subscriptions and do not apply to claims based on redemptions, finding

that "the terms of the redemptions of shares [are] found in the Articles [of Association] rather

than in the Subscription Agreement," and the Articles contain no choice of forum clause.

*Fairfield I*, 2018 WL 3756343, at *11 (adhering to the Privy Council's holding "that the

Subscription Agreement was irrelevant to actions to recover the inflated redemption payments")

(on appeal).

 **C. The Exercise of Personal Jurisdiction over the SG Foreign Defendants
   Would Not Comport with Due Process**

  In addition to minimum contacts, the Court's exercise of jurisdiction must also be

reasonable under the circumstances.  This requirement comes from the Due Process Clause of

the Fifth Amendment, which, of course, applies in all federal cases. *See World-Wide Volkswagen

Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("The Due Process Clause … gives a degree of

predictability to the legal system that allows potential defendants to structure their primary

conduct with some minimum assurance as to where that conduct will and will not render them

liable to suit.") (citation omitted).  In determining whether jurisdiction is consistent with due

process, courts employ a "sliding scale," under which "the weaker the plaintiff's showing [on

minimum contacts], the less a defendant needs to show in terms of unreasonableness to defeat

jurisdiction." *Metro Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 570 (2d Cir. 1996)

(quoting *Ticketmaster-New York, Inc. v. Alioto,* 26 F.3d 201, 210 (1st Cir. 1994); *see also Porina

v. Marward Shipping Co.,* No. 05 CIV. 5621, 2006 WL 2465819, at *6 (S.D.N.Y. Aug. 24,

2006) ("[I]f a defendant's contacts with the United States are weak, the plaintiff has to make a

stronger showing of reasonableness in order to show that jurisdiction over the defendant is

proper.").

  As demonstrated above, the Trustee has not alleged that the SG Foreign

Defendants had any contacts whatsoever with the United States related to the Trustee's claims.

They are alleged only to have invested in offshore vehicles that were the victims of a U.S.-run

Ponzi scheme.  Because the Trustee's showing on minimum contacts is weak, he must make a

stronger showing that the exercise of personal jurisdiction over the SG Foreign Defendants

would be reasonable.  But he cannot: no party would anticipate being haled into a United States

court in connection with *foreign* conduct related to *foreign* investments.  *See Walden*, 571 U.S. at

286 ("Due Process requires that a defendant be haled into court in a forum State based on his

own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he

makes by interacting with other persons affiliated with the State.") (quoting *Burger King v.*

*Rudzewicz*, 471 U.S. 462, 475 (1985)).  Accordingly, the Complaint should be dismissed as

against the SG Foreign Defendants.

## II.    THE COMPLAINT FAILS TO PLEAD THAT THE SG DEFENDANTS RECEIVED BLMIS CUSTOMER PROPERTY.

### A.    The Trustee Has Not Adequately Alleged That Any of the Alleged Subsequent Transfers Contain Customer Property

In order to state a claim under SIPA, the Trustee must plausibly allege that each

redemption payment the SG Defendants received was a subsequent transfer of BLMIS customer

property that had been fraudulently transferred from BLMIS to Sentry.  *See* 15 U.S.C. § 78fff-

2(c)(3) ("the trustee may recover any property transferred by the debtor which, except for such

transfer, would have been customer property if and to the extent that such transfer is voidable or

void under the provisions of title 11").  Put differently, to state a claim under 11 U.S.C. § 550,

the Trustee must allege not just that the initial transfer is avoidable, but that the initial transfer

was subsequently transferred to the defendant.  *In re Bernard L. Madoff Inv. Sec. LLC*, 542 B.R.

100, 119 (Bankr. S.D.N.Y. 2015) ("*Shapiro*").[10]  And of course, the claim must be "plausible on

its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)).

  In the context of a claim to set aside subsequent transfers under SIPA, this Court

has held that barebones allegations—such as the Trustee's here—that customer funds were

transferred to the subsequent transferee do not suffice:

> The Trustee must allege facts that support the inference that the funds at issue
> originated with . . . BLMIS, and contain the "necessary vital statistics"—the "who,
> when, and how much" of the transfers to establish that an entity was a subsequent
> transferee of the funds. At the pleading stage, the Trustee is not required to provide
> a "dollar-for-dollar accounting" of the exact funds at issue. However, barebones
> allegations that the funds at issue were transferred to the Subsequent Transferees,
> without more detail, are insufficient.

*Shapiro*, 542 B.R. at 119.  In *Shapiro*, the Court dismissed as conclusory a subsequent transferee

claim, noting that the complaint "does not tie any initial transfer to any subsequent transfer or

Subsequent Transferee." *Id.*

  As in *Shapiro*, the Trustee's Complaint fails to plead the "necessary vital

statistics."  Rather, it merely alleges that during the six years preceding the Petition, BLMIS

transferred approximately $3 billion to Sentry, and that some unidentified "portion of [those

transfers] was subsequently transferred to, or for the benefit of," various SG Defendants.  Compl.

¶¶ 69, 73.  The Trustee does not cure this insufficient allegation by attaching exhibits (75 pages

in small font) that list thousands of transactions recorded in Sentry's accounts at BLMIS, *id.* Ex.

D, and alleged subsequent transfers from Sentry to Defendants, *id.* at Ex. E.  To the contrary, the

Complaint fails to identify which, if any, of the 75 pages of transactions—many of which fall

---

[10] Equally, under the New York Debtor and Creditor Law, "as to claims of both actual and constructive fraud, New
York law permits money damages to be recovered only against parties who participate in the fraudulent transfer and
are either transferees of the assets or beneficiaries of the conveyance."  *Sullivan v. Kodsi*, 373 F. Supp. 2d 302, 309
(S.D.N.Y. 2005) (emphasis, citation, and internal quotation marks omitted).

outside the statute of limitations—were initial transfers of BLMIS customer property that were

allegedly subsequently transferred to the SG Defendants, nor does it do anything to tie the two

together.  Essentially, the Trustee is asking the Court to infer that because BLMIS transferred a

large amount of money to Sentry over a long period of time, then *any and all* money that went

from Sentry to the SG Defendants must have come from BLMIS. The claims to recover

redemptions from Sigma and Lambda are even more tenuous, as the Trustee merely alleges that

approximately $750 million and $52.9 million of the initial transfers that Sentry received from

BLMIS were transferred to Sigma and Lambda, respectively, and approximately $2,090,254 and

$6,287,866 of that, respectively, was transferred to certain SG Defendants (Compl. ¶¶ 74, 75).

 The Trustee's failure to allege the "necessary vital statistics" of the transfers is

particularly inexcusable in this case, in which the *plaintiff*, rather than the *defendant*, possesses

all the records relevant to establishing whether, and to what extent, any alleged transfers to the

SG Defendants contain customer property.  As noted above, the Trustee sued and settled with the

Liquidators of the Fairfield Funds, who in 2011 stipulated to the entry of judgments in favor of

the BLMIS Estate.  Compl. ¶ 68.  Pursuant to that Settlement Agreement, the Trustee has had

access to Sentry, Sigma, and Lambda's records for over a decade.  *See* Fairfield Settlement,

Compl. Ex. B ¶ 14 (Shaiman Decl. Ex. 1) (Trustee and Fairfield Liquidators "each agree to

provide reasonable access to the other's documents, data, and other information relating to, or

beneficial to the pursuit of, the Sharing Claims.").  Moreover, the Fairfield Liquidators "agree[d]

to provide reasonable cooperation and assistance" to the Trustee "in connection with the

prosecution of the Sharing Claims."  *Id*. ¶ 14.

 Thus, this case is nothing like *In re Bernard L. Madoff Inv. Sec. LLC*, 515 B.R.

117 (Bankr. S.D.N.Y. 2014) ("*Merkin*"), where this Court granted the Trustee "greater latitude"

in pleading where the Trustee – having "specifie[d] numerous inter-defendant transfers" showing

that "defendants commingled their assets, transferring their funds into and out of each other's

accounts" –faced special "difficulties" because "[t]he subsequent transfer claim must ultimately

be proved through the books and records of the defendants." *See Merkin*, 515 B.R. at 150-51.

No such latitude is warranted in this case, which does not require disentangling inter-Defendant

transfers.[11]  To the contrary, for over a decade, the Trustee has had every piece of data he needs

to determine whether an alleged subsequent transfer contains customer property, and from which

initial transfer that transfer originates, yet he has failed to so allege – because to do so would lead

to the inescapable conclusion that the Trustee is pursuing billions of dollars to which, as a matter

of simple math, he is not entitled.  *See Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt.

Inc.*, 712 F.3d 705, 709, 722 (2d Cir. 2013) (affirming dismissal and finding that "such imprecise

pleading is particularly inappropriate here, where the plaintiffs necessarily have access, without

discovery, to plan documents and reports that provide specific information from which to fashion

a suitable complaint"); *Sapia v. Home Box Off., Inc.*, No. 18 CIV. 1317, 2018 WL 6985223, at

*8 (S.D.N.Y. Dec. 17, 2018) (dismissing claim where plaintiffs failed to precisely plead

necessary facts that were "uniquely in [p]laintiffs' possession").

> **B.**     **The Trustee's Complaint Seeks to Recover Transfers Made by Sentry at
> Times When the Trustee Alleges There was no Money Left From BLMIS**

There is a reason that the Trustee cannot link alleged subsequent transfers to the

SG Defendants to initial transfers from BLMIS: it is clear from the Complaint that such a

connection is mathematically impossible, both in the aggregate and as to specific transfers.  The

---

[11] To the extent that the Complaint alleges that certain transfers were made to certain entities as trustee for, general partner of, or successor in interest to, other entities (*see* Compl. Ex. E, n.1-3 (Shaiman Decl. Ex. 1)), or that certain transfers were made to SGBT on behalf of other named defendants (*see* Compl. ¶¶ 22-24), that is not the source of the Trustee's pleading deficiency.  Rather, the deficiency, as described above, results from the Trustee's failure to plausibly tie those transfers to Defendants to initial transfers of BLMIS customer property.

subsequent transfers that the Trustee seeks to recover vastly exceed the initial transfers from

BLMIS.  And many specific alleged subsequent transfers from Sentry happened at times when,

according to the Trustee's own allegations, Sentry could not have held any BLMIS money.

    In the aggregate, the Trustee alleges *subsequent* transfers that exceed the alleged

*initial* transfers by $2 billion.  He alleges that BLMIS transferred approximately $3 billion to

Sentry (Compl. ¶ 69); yet at the same time, he seeks to "recover" an aggregate of approximately

$4 billion of alleged subsequent transfers of that same customer property in the Sentry Redeemer

Actions and from Sigma and Lambda.  *See* Compl. Exs. F, H (Shaiman Decl. Ex. 1); Shaiman

Decl. Ex. 5, 6, ¶ 9.  Additionally, the Trustee seeks to recover, again as alleged subsequent

transfers of customer property from Sentry, *another* approximately $1 billion in money allegedly

paid by Sentry to FGG Defendants.  *See* Shaiman Decl. Ex. 4, ¶ 10.  In other words, the Trustee

is endeavoring to recover, all as subsequent transfers from Sentry, roughly $2 billion more than

the total amount that the Trustee himself alleges that BLMIS transferred *to* Sentry.  The

Trustee's theory that all of the redemption payments are customer property is not merely

implausible, it is impossible.

    The reason that Sentry could distribute to its alleged transferees at least $2 billion

more than it received from BLMIS is also clear from the Complaint: BLMIS was not Sentry's

sole source of money.  The Trustee pleads that Sentry continuously received funds not just from

BLMIS, but also from subscriptions.  *See, e.g.*, Compl. ¶ 34 (alleging that the SG Defendants

wired funds to Sentry for subscriptions).  Numerous complaints are rife with similar allegations

regarding other redeemer defendants.  The transaction details the Trustee has provided to this

Court in his numerous complaints – alleging that Sentry paid out more than it received from

BLMIS – lead to the inescapable conclusion that Sentry paid redemptions with money that could not possibly have originated with BLMIS.

The implausibility—and in many instances impossibility—of the Trustee's subsequent transferee claims against the SG Defendants is underscored by the fact that the Complaint repeatedly seeks to recover alleged subsequent transfers from the SG Defendants during time periods when, according to the Trustee's own pleadings, the amounts that Sentry had paid out, all allegedly as subsequent transfers of customer property, vastly exceeded the amounts that BLMIS had transferred to Sentry.

For example, the Trustee alleges that in the period from December 11, 2002 (*i.e.*, six years preceding the filing of the petition (Compl. ¶¶ 42, 52[12])) through March 31, 2005, BLMIS transferred a total of ***$120 million*** to Sentry in three separate transfers made May 9, 2003 through July 22, 2003. *See* Compl. Ex. B pp. 19, 20 (Shaiman Decl. Ex. 1) ("CHECK WIRE" entries). The Trustee further alleges that from the first BLMIS transfer on May 9, 2003, through September 17, 2003, Sentry paid over ***$200 million*** of alleged customer property to redeeming shareholders, including transfers to Sigma, and Lambda. *See* Shaiman Decl. Exs. 5, 6 ¶ 11. Thus, by September 17, 2003, according to the Trustee's complaints, Sentry had paid out all of the potentially recoverable BLMIS funds, and then some.[13] The Trustee alleges that the

---

[12] Since the statute of limitations under New York's Debtor and Creditor Law for fraudulent conveyances is six years, *see In re Khan*, No. 10-46901, 2014 WL 4956676, at *52 (Bankr. E.D.N.Y. Sept. 30, 2014), the Trustee cannot avoid transfers from BLMIS to Sentry that occurred before December 11, 2002 (the "lookback period"). Thus, he also cannot recover any subsequent transfers of those transfers under Section 550(a). That is, regardless of when a *subsequent* transfer occurred, it is not recoverable if it does not consist of customer property that was *initially* transferred within the lookback period. Accordingly, the Court may consider only alleged *initial* transfers after December 11, 2002 (the first of which was not until May 9, 2003) in determining whether an alleged *subsequent* transfer was in fact a transfer of recoverable customer property. In any event, as set forth in Point III below, pursuant to the safe harbor of 11 U.S.C. § 546(e), the Trustee is barred from recovering alleged subsequent transfers of initial transfers which took place more than *two* years before the petition date.

[13] Specifically, the Trustee alleges that on May 9, 2003, BLMIS transferred $40 million to Sentry, which was spent by no later than June 2003; on July 11, 2003, BLMIS transferred $55 million to Sentry, which was spent by no later than July 16, 2003; and on July 22, 2003, BLMIS transferred $25 million to Sentry, which was spent by no later than September 2003. *See* Shaiman Decl. Exs. 5, 6, ¶ 11.

23

SG Defendants received 19 redemption payments from Sentry from October 2003 through

March 2005 (totaling approximately $16 million), but according to his own allegations, those

payments cannot possibly include BLMIS customer property.  That these redemption payments

to the SG Defendants took place three to twenty months after Sentry last received funds from

BLMIS further underscores the implausibility, if not the impossibility, of any allegation that

these redemption payments contain BLMIS "customer property."  *Cf. Merkin*, 515 B.R. at 150-

51 (inferring linkage where alleged "subsequent transfers took place contemporaneously or

shortly after an initial transfer" or at most two or three months later).

This is just one of many examples of the Trustee's impossible, internally

contradictory allegations.  Even if the Trustee, who has Fairfield's records and cooperation, were

entitled to avail himself of liberal pleading rules designed for plaintiffs without access to relevant

records, such allegations must be dismissed as a matter of law.  *See Kennedy v. Mondelez Glob.

LLC,* No. 19-CV-302, 2020 WL 4006197, at *9 (E.D.N.Y. July 10, 2020) ("where the allegations

of a complaint are materially inconsistent with the evidence a plaintiff relies on to make those

allegations, [a court] may easily conclude that plaintiffs' claims lack the facial plausibility

necessary to survive a motion to dismiss.") (citation omitted).

## III.    RECOVERY OF ALLEGED SUBSEQUENT TRANSFERS OF INITIAL TRANSFERS MADE OUTSIDE THE TWO-YEAR LOOKBACK IS BARRED BY THE SAFE HARBOR OF 11 U.S.C. § 546(e).

Section 546(e) of the Bankruptcy Code bars a trustee from avoiding a transfer

(other than under Section 548(a)(1)(A), which has only a two-year lookback period[14]) if that

---

[14] Under 11 U.S.C. § 548(a)(1)(A), a trustee may avoid transfers made within two years before the petition date (here, December 11, 2008 (*see* Compl. ¶¶ 42, 52), if the debtor made such transfer with actual intent to hinder, delay or defraud.  Because of the Ponzi scheme presumption, and actual intent is generally a factual issue, the SG Defendants, at this stage, do not seek dismissal under Section 546(e) of claims based on initial transfers made within the two years prior to the petition date (the "Two Year Transfers").  Further, in a recent concurring opinion, Judge Menashi of the United States Court of Appeals for the Second Circuit cast doubt on the validity of the presumption,

transfer, as relevant here, (1) was made "by or to (or for the benefit of)" a covered entity, such as

a stockbroker or financial institution; and (2) was either a settlement payment or a transfer in

connection with a securities contract.  11 U.S.C. § 546(e).[15]  The Second Circuit has recognized

that Section 546(e) is an "important exception to a trustee's clawback powers," designed to

minimize market disruption.  *Fishman*, 773 F.3d at 414, 420.  The Section 546(e) safe harbor is

available as a defense to alleged subsequent transferees, even where, as here, the alleged initial

transferee agreed to a consent judgment.  *See Sec. Inv. Prot. Corp.  v. Bernard L. Madoff Inv.

Sec. LLC* (*Picard v. Fairfield Inv. Fund Ltd.*), No. 08-01789, 2021 WL 3477479, at *3 (Bankr.

S.D.N.Y. Aug. 6, 2021) (Morris, C.J.) ("Where the initial transferee fails to raise a § 546(e)

defense against the Trustee's avoidance of certain transfers, … the subsequent transferee is

nonetheless entitled to raise a § 546(e) defense against recovery of those funds.").

   As set forth below, both elements of the Section 546(e) safe harbor are established

as a matter of law.  Accordingly, any claim by the Trustee against the SG Defendants as Sentry's

alleged subsequent transferee based on an initial transfer made prior to September 6, 2007 (the

first of the Two Year Transfers) must be dismissed.  *See Fishman*, 773 F.3d at 415 (affirming

dismissal of relevant claims under Rule 12(b)(6) because they were shielded by 11 U.S.C.

§ 546(e)).

A.  **The Alleged Initial Transfers Were Made by, to, or for the Benefit of, a
Covered Entity**

   Here, the alleged initial transfers were made by, to, or for the benefit of, an entity

covered by Section 546(e) for three independently sufficient reasons, namely, because the

_____

*see In re Bernard L. Madoff Inv. Sec. LLC*, 12 F.4th 171, 201-04 (2d Cir. 2021) (Menashi, J., concurring).
Accordingly, the SG Defendants reserve the right to challenge the avoidability of the Two Year Transfers should
this action proceed beyond the motion to dismiss stage.
[15] 11 U.S.C. § 546(e) also preempts state law claims seeking to unwind redemptions.  *Tribune I*, 946 F.3d at 81, 90.

alleged initial transfers were made (1) by a stockbroker, (2) to a financial institution, and (3) for certain SG Defendants, allegedly for the benefit of another financial institution.

### 1.    The Alleged Initial Transfers Were Made by a Stockbroker

The Code defines "stockbroker" to include entities "engaged in the business of effecting transactions in securities." 11 U.S.C. § 101(53A)(B). As the District Court found, BLMIS "qualifies as a stockbroker by virtue of the trading conducted by its market making and proprietary trading divisions." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 719 (S.D.N.Y. 2012) (footnote and citation omitted), *aff'd sub nom. Fishman*, 773 F.3d at 417 ("It is not disputed [by the Trustee] that BLMIS was a 'stockbroker' for the purposes of § 546(e).").

### 2.    The Alleged Initial Transfers Were Made to a Financial Institution

Sentry, the initial transferee, is also a "financial institution" under the Code, which defines "financial institution" to include both "an entity that is a commercial or savings bank," and the bank's customer "when [the bank] entity is acting as agent or custodian for a customer … in connection with a securities contract." 11 U.S.C. § 101(22)(A). In *Fairfield III*, this Court held that the Fairfield Funds were "financial institutions" because they were customers of a financial institution, Citco Bank Nederland N.V. Dublin Branch ("Citco Bank"), and Citco Bank acted as their agent in connection with the securities contracts pursuant to which the redemption payments were made. *Fairfield III*, 2020 WL 7345988, at *7.

This Court's holding in *Fairfield III* is equally applicable here and, indeed, is binding on the Trustee because he was in privity with the Fairfield Liquidators, who were litigating that action partly for the Trustee's benefit.[16]

### 3. Certain Alleged Initial Transfers Were Allegedly Made "for the Benefit of" a Financial Institution

Under the Trustee's theory, certain of the initial transfers were made "for the benefit of" a financial institution, namely SG Suisse and SG Lugano.[17]  As Judge Rakoff explained, where an investment fund withdraws money because a financial institution seeks redemption of fund shares, "that situation appears to fit within the plain terms of Section 546(e)." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 115, 2013 WL 1609154, at *9 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*").  Although implausible (*see* Point II above), the Trustee alleges just that situation.

It is indisputable that SG Suisse and SG Lugano—entities whose names state that they engage in "Private Banking"—were banks and therefore financial institutions at the relevant time.  *See* 11 U.S.C. § 101(22)(A) ("financial institution" includes "an entity that is a commercial or savings bank.")  Moreover, the Trustee's theory of recovery against SG Suisse and SG Lugano as subsequent transferees amounts to an allegation that the initial transfers from BLMIS to Sentry were made "for the benefit of" these entities.  The term "for the benefit" is

---

[16] Under the Fairfield Settlement, the Fairfield Liquidators will pay the Trustee 15% of net recoveries from their claims against redeemers from the Fairfield Funds until the Trustee has been paid $1.924 billion.  Fairfield Settlement, Compl. Ex. B ¶¶ 4, 11 (Shaiman Decl. Ex. 1).  Further, "[t]he Trustee and the Liquidators agree and stipulate that a joint interest exists between them with respect to the Sharing Claims." *Id.* at ¶ 14.  This agreed joint interest in pursuing alleged BLMIS customer property is a "preexisting 'substantive legal relationship,'" focused on a successive or concurrent interest in property, of a kind that gives rise to nonparty issue preclusion in *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008).  As such, and because the issue of Sentry's status as a "financial institution" was "actually litigated" and "essential" to the final judgments dismissing numerous such actions on grounds of the Section 546(e) safe harbor, this Court's finding in *Fairfield III* that Sentry was a "financial institution" in connection with redemption payments from Sentry to its subscribers is binding on the Trustee.  *See New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001) (stating requirements for issue preclusion).

[17] The SG Defendants reserve for later consideration, if necessary, the question whether any other initial transfers were made "for the benefit of" an entity covered under Section 546(e).

interpreted broadly—for a transfer to be "for the benefit of" a covered entity, there must be "some intent-to-benefit on the part of either the initial transferee or the debtor: that is, either of the parties to the initial transfer must have contemplated that defendants would benefit from the transfer." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 505 B.R. 135, 149 (S.D.N.Y. 2013) ("*ABN Amro Bank*").

Here, as the Trustee would have it, the funds that SG Suisse and SG Lugano received were withdrawn from BLMIS by Sentry "in order to pay" redemption payments by Sentry to redeemers. *See, e.g.*, Trustee's Fairfield Amended Complaint ¶ 53 (Shaiman Decl. Ex. 1) ("Between 2003 and 2008, Sigma redeemed approximately $752.3 million from Fairfield Sentry. … Upon information and belief, in order to pay these redemptions, Fairfield Sentry withdrew funds from its BLMIS accounts."); *see also id.* ¶ 58 (similar allegations as to Lambda's alleged redemption of "over $52.9 million from Fairfield Sentry"); *id.* ¶¶ 63, 71, 76, 80, 85, 100, 104, 109, 129, 141, 159. Since, according to the Trustee's own theory, "the funds' withdrawals were directly caused by the defendants' request for redemptions, these initial transfers were 'for the benefit' of defendants as redeeming investors." *ABN Amro Bank,* 505 B.R., at 149-50; *see also Cohmad*, 2013 WL 1609154, at *9 (where Trustee alleges withdrawal of funds by investment fund because financial institution sought to redeem its investment, that situation fits within Section 546(e)).

**B.    The Alleged Initial Transfers Were Settlement Payments and Made "in Connection With" a Securities Contract**

In analogous circumstances, the Second Circuit has concluded that Section 546(e) shields transfers from BLMIS to its account holders from the Trustee's avoidance powers. *Fishman*, 773 F.3d at 415. The *Fishman* court concluded that the documents governing BLMIS customers' accounts constituted securities contracts, and that the payments BLMIS made to

those customers were made "in connection with" those contracts, and also constituted

"settlement payments," *id*. at 418-23—either of which findings would have sufficed to invoke

the safe harbor.  The court rejected the Trustee's argument that the safe harbor did not apply

because Madoff did not actually carry out the promised securities transactions.  *Id*. at 419-20.

　　　　The same reasoning applies to the transfers that the Trustee alleges BLMIS made

to Sentry "in order to pay" redemption requests to Sentry.  Those alleged transfers were clearly

"in connection with" both (a) the securities contracts Sentry had entered into with BLMIS, *see*

*Fishman*, 773 F.3d at 418-23, and (b) according to the Trustee, (although lacking in plausible

support), the separate securities contract under which Sentry's redeemers made their

redemptions, *see* Point III.A.3 above, namely, Sentry's Articles of Association (Shaiman Decl.

Ex. 7).  *See Migani* ¶ 10 ("the terms of the subscriber's membership of the Fund, which govern

the redemption of its shares . . . are to be found in the Articles of Association of the Fund").[18]

　　　　The definition of "securities contract" includes "a contract for the purchase, sale,

or loan of a security," 11 U.S.C. § 741(7)(A)(i), and, as relevant here, "includes . . . redemption

requests." *Cohmad*, 2013 WL 1609154 at *8.  Further, all Section 546(e) requires is that the

transfer be "in connection with a securities contract," even if not the securities contract between

the initial transferor and transferee.  *See Fishman*, 773 F.3d at 422 ("a transfer can be connected

to, and can be made in relation to, multiple documents or purposes simultaneously"); *Cohmad*,

2013 WL 1609154, at *9 (under the safe harbor, transfer from debtor to initial transferee may

qualify as having been made "in connection with a securities contract" between initial transferee

---

[18] This Court may consider the Articles of Association on this motion because, as the basis for the challenged
redemption, they are integral to the Complaint.  *See In re Trib. Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 176 (2d
Cir. 2021), *cert. denied*, No. 21-1006, 2022 WL 516021 (U.S. Feb. 22, 2022) ("Here, the documents the district
court relied on were the contracts that set forth the relationship between Tribune and CTC, and they were therefore
integral to the complaint.").

and subsequent transferee). The conclusion that the alleged initial transfers were made in connection with a securities contract does not change even if the initial transferee, Sentry, allegedly knew of Madoff's fraud.[19]

First, there was a securities contract between Sentry and its redeemers, even if there was none between BLMIS and Sentry, and Sentry's alleged knowledge of the BLMIS fraud would not preclude the straightforward application of Section 546(e) as being "in connection with" Sentry's agreement with its redeemers. In *Cohmad*, Judge Rakoff agreed that securities contracts other than the initial transferee's securities contract with BLMIS could independently satisfy Section 546(e). 2013 WL 1609154, at *8-9. Judge Rakoff ruled that so long as the initial transferee withdrew funds from BLMIS to make a payment under a securities contract between the initial transferee and the subsequent transferee, then the withdrawal from BLMIS would be a transfer made in connection with the securities contract between the initial transferee and the subsequent transferee and thus would not be avoidable:

> Take, for example, a hypothetical situation in which the Trustee alleges that a withdrawal of funds by an investment fund from its Madoff Securities customer account occurred because an investor in that fund sought redemption of its investment under the terms of its investment contract. Assuming that either the investment fund or the investor qualifies as a financial institution or financial participant, and barring other circumstances that may appear on the facts of a given case, that situation appears to fit within the plain terms of Section 546(e): an initial transfer that was "made by or to (or for the benefit of) a . . . financial institution [or] financial participant . . . in connection with a securities contract."

---

[19] In *Fairfield Investment Fund Ltd.*, the Court accepted that Sentry's knowledge had been adequately pled in a later version of the complaint in the Fairfield Action than the one incorporated by reference into the instant Complaint. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*Picard v. Fairfield Inv. Fund Ltd.*), No. 08-01789, 2021 WL 3477479, at *4-5 (Bankr. S.D.N.Y. Aug. 6, 2021) (citing to the Second Amended Complaint, Fairfield Action, Dkt. No. 286). Defendants respectfully disagree with that conclusion and reserve for appeal or a later stage of this action all arguments that the Trustee has not adequately pled Sentry's actual knowledge of Madoff's fraud either in the Second Amended Complaint or the earlier pleadings in that action and that Sentry did not in fact have such actual knowledge.

*Id.* at *9 (footnote omitted).[20]  The logic of Judge Rakoff's hypothetical applies directly here, where the investment fund was Sentry, a financial institution as shown above (and, additionally, certain redeemers, SG Suisse and SG Lugano, were also financial institutions).[21]  And the Complaint is devoid of any allegation that the SG Defendants knew of Madoff's fraud.

Second, while this Court and the District Court have previously ruled that Section 546(e) cannot be invoked by a defendant with actual knowledge of Madoff's fraud, and while, as set forth above, those rulings are inapplicable here, Defendants respectfully submit that there is nothing in the language of Section 546(e) that supports creating an exception to its applicability based on the knowledge of any transferee, as opposed to the debtor-transferor.[22]  That section provides for only one exception to the safe harbor: a claim under Section 548(a)(1)(A), which requires the Trustee to allege and prove intentional fraud by the transferor, and which only has a two year lookback period.  *See Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005) (under § 548(a)(1)(A) "it is the intent of the transferor and not the transferee that is relevant") (citations omitted).[23]  Thus, the exception to the safe harbor articulated in *Cohmad*, namely, that if the transferee from whom the Trustee seeks to recover knew of Madoff Securities' fraud, that transferee cannot claim the protections of Section 546(e) (*Cohmad*, 2013 WL 1609154, at *7), is not supported by the text of the statute.

---

[20] Judge Rakoff also observed that "[t]o the extent that, for example, an initial transfer from Madoff [S]ecurities to an investment fund customer and the subsequent transfer from the investment fund to its redeeming investors may together comprise a 'settlement payment' under *Enron [Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 339 (2d Cir. 2011)], that transfer may fall within the purview of Section 546(e), assuming it meets the statute's other requirements."  *Id.* at *9, n.5.

[21] That the redemptions may have passed through Sigma and Lambda does not change the analysis, as those redemptions were made under those funds' Articles of Association.  *See Fairfield III.* 2020 WL 7345988, at *6.

[22] This is an open question at the Circuit level, and the SG Defendants expressly preserve it.  Although the Second Circuit in *Fishman* noted that the defendants there had "every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions," 773 F.3d at 420, it did not state that the result would have been different had that not been the case.

[23] Nor does transferee knowledge play any role in the definitions of "settlement payment," 11 U.S.C. § 741(8), or "securities contract," *id.* 741(7).

### C. Claims Based on Initial Transfers Before the Two-Year Lookback Period Must Be Dismissed

As stated above, the SG Defendants have established both elements of a Section 546(e) defense. In order to recover from a subsequent transferee, the Trustee must show that he can avoid the initial transfer from BLMIS to Fairfield Sentry. The first transfer from BLMIS to Fairfield Sentry after December 11, 2006 was on September 6, 2007. Fairfield Sentry's last withdrawal from BLMIS before then was on April 13, 2006, outside the two-year period. Accordingly, the Trustee cannot allege any avoidable *initial* transfers from December 11, 2006 to September 6, 2007 (or before then), and therefore also cannot recover *subsequent* transfers during that period. Thus, all the claims brought by the Trustee based on initial transfers made before September 6, 2007 (the first of the Two Year Transfers) must be dismissed.

### IV. THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT DOES NOT CONTAIN A "SHORT AND PLAIN STATEMENT OF THE CLAIM."

Beyond the many infirmities in the Trustee's claims, his pleading also fails for the overarching reason that it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief" as required under Rule 8(a)(2). In particular, although the Trustee has had nearly a decade to amend his pleadings to provide the SG Defendants with sufficient notice of the claims they face, the Trustee instead depends on incorporating by reference an entire separate complaint filed in another proceeding. *See* Compl. ¶ 67 ("The Trustee incorporates by reference the allegations in the [Trustee's Fairfield Amended Complaint] as if fully set forth in this Complaint."). That complaint is 217 pages and 798 paragraphs, and contains allegations and claims against parties other than the Fairfield Funds, which bear no relevance to this case. In contrast, the Complaint here is a mere 26 pages and 105 paragraphs, even though the Trustee has had access to the information he has needed to amend his pleadings for over ten years.

The complaint that the Trustee purports to incorporate has also since been superseded by a further amended complaint.  Thus, he improperly incorporates allegations here that he no longer stands by in the case in which they were made.  *Cf.* Fed. R. Civ. P. 8(b)(1) (requiring response to "a pleading").[24]

Such wholesale incorporation of since mooted pleadings in another action is "a blatant violation of Rule 8(a)(2)'s direction that a civil plaintiff provide a short and plain statement of the claim showing that the pleader is entitled to relief."  *U.S. v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 463 (E.D.N.Y. 2007) (internal quotations omitted).  Indeed, "if all of the allegations in the prior pleadings are deemed to be incorporated into the [Complaint], then the [Complaint] would become an unintelligible morass of self-contradictory allegations" and "would in itself be grounds for dismissing the [Complaint pursuant] to Rules 12(b)(6) and 8(a)(2)."  *Id*. 462, n. 72.

Accordingly, the Complaint should be dismissed for failure to comply with Rule 8(a), or, at a minimum, paragraph 67 of the Complaint should be stricken pursuant to Rule 12(f).  *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("When a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial, *see* Fed.R.Civ.P. 12(f), or to dismiss the complaint."); *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 218 F.R.D. 76 (S.D.N.Y. 2003) (striking, under Rule 12(f), references in the operative complaint to complaints the court deemed irrelevant and contrary to Rule 8(a)).

---

[24] If, despite having attached the now-superseded complaint to his Complaint, the Trustee nonetheless purports to incorporate by reference the Second Amended Complaint, this would effectively make the Complaint automatically-amending, in violation of Federal Rule of Civil Procedure 15's dictates governing the amendment of pleadings.

33

## **CONCLUSION**

For the foregoing reasons, the SG Defendants respectfully request that the Court

dismiss the Complaint in its entirety.

Dated: April 29, 2022
       New York, New York

Respectfully Submitted,

ALLEGAERT BERGER & VOGEL LLP

By: */s/* John F. Zulack
John F. Zulack
Lauren J. Pincus
David A. Shaiman
111 Broadway, 20th Floor
New York, New York 10006
Tel. No.: 212-571-0550
Email: jzulack@abv.com
Email: lpincus@abv.com
Email: dshaiman@abv.com

MAYER BROWN LLP

By: */s/* Christopher J. Houpt
Steven Wolowitz
Christopher J. Houpt
Bradley A. Cohen
1221 Avenue of the Americas
New York, New York 10020
Tel. No.: (212) 506-2500
Email: swolowitz@mayerbrown.com
Email: choupt@mayerbrown.com
Email: bacohen@mayerbrown.com

*Counsel for the SG Defendants*