# EXHIBIT B

I. **Code Monétaire et Financier (Version en vigueur au 25 février 2022)**

### Article L214-1

I. – Constituent des placements collectifs :
1° Les organismes de placement collectif en valeurs mobilières agréés conformément à la directive 2009/65/CE du Parlement européen et du Conseil du 13 juillet 2009 portant coordination des dispositions législatives, réglementaires et administratives concernant certains organismes de placement collectif en valeurs mobilières, dits " OPCVM " ;
2° Les fonds relevant de la directive 2011/61/UE du Parlement européen et du Conseil du 8 juin 2011 sur les gestionnaires de fonds d'investissement alternatifs, dits : " FIA " ;
3° Les placements collectifs autres que ceux mentionnés aux 1° et 2°, dits : " Autres placements collectifs ".
II. – Constituent des organismes de placement collectif :
1° Les OPCVM ;
2° Les FIA mentionnés au II de l'article L. 214-24.

### Article L214-4

Les OPCVM prennent la forme soit de sociétés d'investissement à capital variable dites " SICAV ", soit de fonds communs de placement.

Les OPCVM peuvent comprendre différentes catégories de parts ou d'actions dans des conditions fixées par le règlement du fonds ou les statuts de la société d'investissement à capital variable, selon les prescriptions du règlement général de l'Autorité des marchés financiers.

### Article L214-7-2

Par dérogation aux dispositions des titres II et III du livre II et du titre II du livre VIII du code de commerce, les dispositions suivantes s'appliquent aux SICAV :
1° Les actions sont intégralement libérées dès leur émission ;
2° Tout apport en nature est apprécié par le commissaire aux comptes sous sa responsabilité ;
3° L'assemblée générale ordinaire peut se tenir sans qu'un quorum soit requis ; il en est de même, sur deuxième convocation, de l'assemblée générale extraordinaire ;
4° Une même personne physique peut exercer simultanément cinq mandats de directeur général, de membre du directoire ou de directeur général unique de SICAV ayant leur siège sur le territoire français. Les mandats de directeur général, de membre du directoire ou de directeur général unique exercés au sein d'une SICAV ne sont pas pris en compte pour les règles de cumul visées au livre II du code de commerce ;
5° Les mandats de représentant permanent d'une personne morale au conseil d'administration ou de surveillance d'une SICAV ne sont pas pris en compte pour l'application des dispositions des articles L. 225-21, L. 225-77 et L. 225-94-1 du code de commerce ;
6° Le conseil d'administration, le directoire ou, lorsque la SICAV est une société par actions simplifiée, les dirigeants de cette société désignent le commissaire aux comptes pour six exercices, après accord de l'Autorité des marchés financiers. La désignation d'un commissaire aux comptes suppléant n'est pas requise. Les dispositions de l'article L. 823-3-1 du code de commerce sont applicables à la SICAV relevant des dispositions du III de l'article L. 820-1 du même code ;
7° La mise en paiement des produits distribuables doit avoir lieu dans le délai d'un mois après la tenue de l'assemblée générale ayant approuvé les comptes de l'exercice ;

8° L'assemblée générale extraordinaire qui décide une transformation, fusion ou scission, donne pouvoir au conseil d'administration, au directoire ou, lorsque la SICAV est une société par actions simplifiée, les dirigeants de cette société, d'évaluer les actifs et de déterminer la parité de l'échange à une date qu'elle fixe ; ces opérations s'effectuent sous le contrôle du commissaire aux comptes sans qu'il soit nécessaire de désigner un commissaire à la fusion ; l'assemblée générale est dispensée d'approuver les comptes si ceux-ci sont certifiés par le commissaire aux comptes ;
9° En cas d'augmentation de capital, les actionnaires n'ont pas de droit préférentiel de souscription aux actions nouvelles ;
10° Les statuts contiennent l'évaluation des apports en nature. Il y est procédé au vu d'un rapport qui leur est annexé et qui est établi sous sa responsabilité par le commissaire aux comptes ; les statuts ne peuvent prévoir d'avantages particuliers ;
11° L'assemblée générale annuelle est réunie dans les quatre mois de la clôture de l'exercice.

### Article L214-7-3

Les dispositions des articles L. 224-1, L. 224-2, du deuxième alinéa de l'article L. 225-2, des articles L. 225-3 à L. 225-16, L. 225-25, L. 225-26, L. 225-258 à L. 225-270, du quatrième alinéa de l'article L. 227-1, des articles L. 227-13 à L. 227-16, L. 227-18, L. 228-23, L. 231-1 à L. 231-8, L. 233-8, et L. 441-14 du code de commerce ne sont pas applicables aux SICAV. Les SICAV ne peuvent pas prévoir de clauses d'inaliénabilité.
Les fusions transfrontalières des SICAV ne sont pas régies par les articles L. 236-25 à L. 236-32 du code de commerce.

### Article L214-8

Sous réserve des dispositions de l'article L. 214-8-7, le fonds commun de placement, qui n'a pas la personnalité morale, est une copropriété d'instruments financiers et de dépôts dont les parts sont émises et rachetées à la demande, selon le cas, des souscripteurs ou des porteurs et à la valeur liquidative majorée ou diminuée, selon les cas, des frais et commissions. Ne s'appliquent pas au fonds commun de placement les dispositions du code civil relatives à l'indivision ni celles des articles 1871 à 1873 du même code relatives aux sociétés en participation.
Les parts peuvent être admises aux négociations sur un marché réglementé ou un système multilatéral de négociation dans des conditions fixées par décret.
Le règlement général de l'Autorité des marchés financiers fixe les conditions de souscription, de cession et de rachat des parts émises par le fonds commun de placement.

### Article L214-8-1

Le fonds commun de placement est constitué à l'initiative d'une société de gestion, chargée de sa gestion, laquelle choisit un dépositaire des actifs du fonds. Cette société établit le règlement du fonds.
Le siège social et l'administration centrale de la société de gestion sont situés en France.
Ils peuvent toutefois être situés dans un autre Etat membre de l'Union européenne ou un autre Etat partie à l'accord sur l'Espace économique européen lorsque la société de gestion exerce en France son activité en libre établissement ou en libre prestation de services en application de l'article L. 532-20-1.
La souscription ou l'acquisition de parts d'un fonds commun de placement emporte acceptation de son règlement.

### Article L214-8-5

Les porteurs de parts ne sont tenus des dettes de la copropriété qu'à concurrence de l'actif du fonds et proportionnellement à leur quote-part.

### Article L214-8-8

Le fonds commun de placement est représenté à l'égard des tiers par la société chargée de sa gestion. Cette société peut agir en justice pour défendre ou faire valoir les droits ou intérêts des porteurs de parts.

### Article L214-9

L'OPCVM, le dépositaire et la société de gestion agissent de manière honnête, loyale, professionnelle, indépendante et dans le seul intérêt de l'OPCVM et des porteurs de parts ou actionnaires de l'OPCVM. Ils doivent présenter des garanties suffisantes en ce qui concerne leur organisation, leurs moyens techniques et financiers, l'honorabilité et l'expérience de leurs dirigeants.
Aucune SICAV ni aucune société de gestion ne peut exercer l'activité de dépositaire.

### Article L214-10

La SICAV ou la société de gestion de l'OPCVM veille à ce qu'un dépositaire unique soit désigné.
Dans les conditions fixées par le règlement général de l'Autorité des marchés financiers, la désignation du dépositaire est matérialisée par un contrat écrit.
Ce contrat définit notamment les informations nécessaires pour permettre au dépositaire de remplir ses fonctions.

### Article L214-10-1

I. – Seuls peuvent exercer l'activité de dépositaire d'OPCVM :
1° La Banque de France ;
2° La Caisse des dépôts et consignations ;
3° Les établissements de crédit ayant leur siège social en France ;
4° Les établissements de crédit ayant leur siège social dans un Etat membre de l'Union européenne ou partie à l'accord sur l'Espace économique européen autre que la France, par l'intermédiaire de leurs succursales établies sur le territoire français exerçant leur activité de dépositaire dans les mêmes conditions que les établissements de crédit mentionnés au 3° ;
5° Les entreprises d'investissement ayant leur siège social en France, dont les fonds propres ne sont pas inférieurs aux exigences calculées en fonction de l'approche choisie conformément à l'article 315 ou à l'article 317 du règlement (UE) n° 575/2013 du Parlement et du Conseil du 26 juin 2013.
Pour exercer l'activité de dépositaire d'OPCVM, les entités mentionnées aux 3° à 5° doivent être habilitées à exercer l'activité de tenue de compte conservation d'instruments financiers en application de l'article L. 542-1.
II. – Pour exercer l'activité de dépositaire d'OPCVM, les entités mentionnées au 3° et au 4° du I établissent un cahier des charges qui précise les conditions dans lesquelles elles envisagent d'exécuter leurs missions dans le respect des obligations qui leur incombent en application des paragraphes 1 et 2 de la présente sous-section et indique la structure de leur organisation.
L'Autorité des marchés financiers approuve le cahier des charges et ses modifications ultérieures selon la procédure prévue au deuxième alinéa de l'article L. 532-1.
III. – Pour exercer l'activité de dépositaire d'OPCVM, les entreprises d'investissement mentionnées au 5° du I doivent :
1° Etablir un programme d'activité de dépositaire d'OPCVM approuvé par l'Autorité des marchés financiers. Pour approuver un programme d'activité de dépositaire, cette autorité vérifie que l'entreprise d'investissement concernée remplit les conditions suivantes :



a) Elle a mis en place des politiques et procédures adéquates suffisantes pour garantir le respect par l'entité, y compris par ses dirigeants et son personnel, des obligations qui incombent aux dépositaires d'OPCVM ;
b) Elle dispose de procédures administratives et comptables saines, de mécanismes de contrôle interne, de procédures d'évaluation des risques efficaces et de dispositifs efficaces de contrôle et de sauvegarde de ses systèmes de traitement de l'information pour l'exercice de l'activité de dépositaire d'OPCVM ;
c) Elle maintient et applique des dispositions organisationnelles et administratives efficaces, en vue de prendre toute mesure raisonnable destinée à prévenir les conflits d'intérêts pour l'exercice de l'activité de dépositaire d'OPCVM ;
d) Elle veille à conserver un enregistrement de tout service qu'elle fournit, de toute activité qu'elle exerce et de toute transaction qu'elle effectue, permettant à l'Autorité des marchés financiers d'exercer ses tâches de surveillance et ses activités de contrôle des activités de dépositaire d'OPCVM ;
e) Elle prend des mesures raisonnables pour garantir la continuité et la régularité de l'exercice de ses fonctions de dépositaire en utilisant des systèmes, ressources et procédures appropriés et proportionnés, y compris en vue de l'exercice de ses activités de dépositaire d'OPCVM ;
f) Tous les membres de son organe de direction et de sa direction générale possèdent des connaissances, des compétences et une expérience suffisantes ;
g) Son organe de direction possède collectivement les connaissances, les compétences et l'expérience appropriées nécessaires à la compréhension des activités du dépositaire, y compris des principaux risques y afférents ;
2° Obtenir un agrément délivré par l'Autorité de contrôle prudentiel et de résolution. Pour délivrer son agrément, cette autorité s'assure que l'entreprise d'investissement dispose d'un programme d'activité approuvé par l'Autorité des marchés financiers conformément au 1° et respecte les conditions mentionnées aux deux derniers alinéas du I. Cet agrément et ses modifications ultérieures sont délivrés selon les mêmes procédures que celles prévues aux articles L. 532-1 à L. 532-5 pour les demandes portant sur les services d'investissement mentionnés au 4 ou 5 de l'article L. 321-1.
IV. – Les dépositaires d'OPCVM doivent satisfaire à tout moment aux conditions d'accès à l'activité de dépositaire prévues au présent article.


## II. Règlement général de l'AMF en vigueur au 23/09/2021

### Article 411-1

1. Le terme : "OPCVM" désigne soit une société d'investissement à capital variable (SICAV), soit un fonds commun de placement (FCP) agréé(e) conformément à la directive 2009/65/CE du Parlement européen et du Conseil du 13 juillet 2009.
2. Le terme : "porteur" désigne le porteur de parts de FCP ou l'actionnaire de SICAV.
3. Lorsque la SICAV ne délègue pas globalement la gestion de son portefeuille telle que mentionnée à l'article L. 214-7 du code monétaire et financier, elle doit remplir l'ensemble des conditions applicables aux sociétés de gestion et respecter les obligations applicables à ces sociétés.
4. La référence aux "membres du conseil d'administration ou directoire de la SICAV" doit s'entendre comme incluant, le cas échéant, le président de la société par actions simplifiée ou celui ou ceux de ses dirigeants que les statuts désignent pour exercer les attributions du conseil d'administration conformément aux dispositions de l'article L. 227-1 du code de commerce.

### Article 411-2

Sont soumis aux dispositions du présent chapitre l'ensemble des organismes de placement collectif en valeurs mobilières (OPCVM) régis par la sous-section 1 de la section 1 du chapitre IV du titre Ier du livre II du code monétaire et financier ainsi que leur société de gestion et dépositaire.

### Article 411-3

Un OPCVM ne peut se transformer en un autre placement collectif.

### Article 411-4

Les statuts de la SICAV sont signés par les premiers actionnaires soit en personne, soit par un mandataire justifiant d'un pouvoir spécial. Ils mentionnent les noms des premiers actionnaires et le montant des versements effectués par chacun d'eux, et, selon les cas, le nom des premiers membres du conseil d'administration ou du directoire et du conseil de surveillance ainsi que le nom du premier commissaire aux comptes et, le cas échéant, de son suppléant, désignés dans les conditions prévues à l'article L. 214-7-2 du code monétaire et financier.
La SICAV ne peut constituer un ou plusieurs compartiments et émettre des catégories d'actions que si ses statuts le prévoient expressément.

### Article 411-5

Les statuts, accompagnés du certificat, délivré par le dépositaire, attestant du dépôt du capital initial, sont déposés au greffe du tribunal de commerce du lieu du siège social de la SICAV.
Lorsque les statuts prévoient que la SICAV comporte un ou plusieurs compartiments, le dépositaire délivre en outre à la société de gestion un certificat pour chaque compartiment. Ce certificat est adressé par la société de gestion à l'AMF.
Une instruction de l'AMF précise les informations minimales contenues dans les statuts de la SICAV.



**Article 411-5-1**

Les statuts prévus à l'article L. 214-4 du code monétaire et financier fixent les principes de distribution des sommes distribuables de la SICAV, les modalités concernant les souscriptions et les rachats ainsi que, le cas échéant, celles régissant les droits attachés aux différentes catégories d'actions. Les modalités de distribution des sommes distribuables de la SICAV peuvent être définies dans le prospectus.

**Article 411-6**

I. - L'agrément d'une SICAV, prévu à l'article L. 214-3 du code monétaire et financier et, le cas échéant, l'agrément de chaque compartiment prévu au même article sont subordonnés au dépôt préalable auprès de l'AMF du dossier comportant les éléments précisés par une instruction de l'AMF.
Sans préjudice des dispositions du III, la SICAV est informée par l'AMF, dans un délai d'un mois suivant la présentation de la demande, de l'octroi ou du refus de son agrément.
Le silence gardé par l'AMF pendant un délai d'un mois à compter de l'accusé de réception de la demande par l'AMF vaut décision d'agrément.
Lorsque l'AMF demande des informations complémentaires nécessitant en retour l'envoi par la société de gestion d'une fiche complémentaire d'informations, l'AMF le notifie par écrit en précisant que les éléments demandés doivent lui parvenir dans un délai de soixante jours. À défaut de réception de ces éléments dans ce délai, la demande d'agrément est réputée rejetée. À réception de l'intégralité des informations demandées, l'AMF en accuse réception par écrit. Cet accusé de réception mentionne un nouveau délai d'agrément qui ne peut excéder celui mentionné à l'alinéa précédent.
II. - Le délai mentionné au I est ramené à huit jours ouvrés à compter de l'accusé de réception du dossier d'agrément par l'AMF, lorsque la SICAV qui sollicite l'agrément est analogue à un OPCVM ou FIA déjà agréé par l'AMF ; tel est notamment le cas lorsque, en application du deuxième alinéa de l'article L. 214-7-4 du code monétaire et financier, cette SICAV résulte de la scission d'une SICAV déjà agréée par l'AMF.
Le caractère analogue de la SICAV qui sollicite l'agrément, appelée "SICAV analogue", et de l'OPCVM ou du FIA déjà agréé par l'AMF, appelé "OPCVM ou FIA de référence", est apprécié par l'AMF, notamment au vu de chacun des éléments suivants :
1. L'OPCVM ou le FIA de référence et la SICAV analogue sont gérés par la même société de gestion ou un même délégataire de la gestion financière, ou par des sociétés de gestion ou des délégataires de la gestion financière appartenant à un même groupe et sous réserve de l'appréciation de l'AMF des informations transmises par la société de gestion de la SICAV analogue dans les conditions fixées dans une instruction de l'AMF ;
2. L'OPCVM ou le FIA de référence a été agréé par l'AMF et constitué au cours des dix-huit mois précédant la date de réception du dossier d'agrément de la SICAV analogue par l'AMF. Sur demande motivée de la société de gestion de la SICAV analogue, l'AMF peut accepter que l'OPCVM ou le FIA de référence ait été agréé et créé plus de dix-huit mois avant la date de réception du dossier de SICAV analogue ;
3. L'OPCVM ou le FIA de référence n'a pas subi de changements autres que ceux mentionnés dans une instruction de l'AMF. Sur demande motivée de la société de gestion de la SICAV analogue, l'AMF peut accepter qu'un OPCVM ou un FIA ayant subi des changements autres que ceux mentionnés dans l'instruction soit un OPCVM ou un FIA de référence ;
4. Les souscripteurs de la SICAV analogue répondent aux conditions de souscription et d'acquisition de l'OPCVM ou du FIA de référence ;
5. La stratégie d'investissement, le profil de risque, les règles de fonctionnement et les statuts de la SICAV analogue sont similaires à ceux de l'OPCVM ou du FIA de référence.
Par dérogation aux 1° à 5° qui précèdent, lorsque, en application du deuxième alinéa de l'article L. 214-7-4 du code monétaire et financier, la SICAV analogue résulte de la scission d'une SICAV déjà agréée

par l'AMF, le caractère analogue de la nouvelle SICAV est apprécié par l'AMF, notamment au regard du fait que la stratégie d'investissement, le profil de risque, les règles de fonctionnement et les statuts de la SICAV analogue sont similaires à ceux l'OPCVM de référence.

Lorsque l'un des éléments des documents constitutifs de la SICAV analogue diffère de celui de l'OPCVM ou du FIA de référence ou lorsqu'en application du deuxième alinéa de l'article L. 214-7-4 du code monétaire et financier, cette SICAV résulte de la scission d'une SICAV déjà agréée par l'AMF, cela est clairement identifié dans le dossier d'agrément de la SICAV analogue selon des modalités précisées par une instruction de l'AMF.

Lorsque l'AMF demande des informations complémentaires nécessitant en retour l'envoi d'une fiche complémentaire d'informations, elle le notifie en précisant que les éléments demandés doivent lui parvenir dans un délai de soixante jours. À défaut de réception de ces éléments dans ce délai, la demande d'agrément est réputée rejetée. À réception de l'intégralité des informations demandées, l'AMF en accuse réception par écrit. Cet accusé de réception mentionne un nouveau délai d'agrément qui ne peut excéder huit jours ouvrés.

Lorsque la SICAV analogue ou l'OPCVM ou le FIA de référence ne respectent pas les conditions mentionnées au présent article, l'AMF le notifie en précisant que les informations complémentaires, de façon à constituer un dossier d'agrément selon les modalités décrites au I, doivent lui parvenir dans un délai de soixante jours. À défaut de réception de l'ensemble de ces informations complémentaires dans ce délai, la demande d'agrément est réputée rejetée. À réception de l'ensemble de ces informations complémentaires, l'AMF en accuse réception par écrit et examine le dossier d'agrément de la SICAV dans les conditions et selon la procédure mentionnées au I. Cet accusé de réception mentionne un nouveau délai d'agrément qui ne peut excéder un mois.

III. - Lorsque la SICAV n'a désigné aucune société de gestion, elle est informée, dans les trois mois suivant le dépôt du dossier complet, que l'agrément est octroyé ou refusé. L'AMF peut prolonger ce délai d'une durée pouvant aller jusqu'à trois mois supplémentaires lorsqu'elle le juge nécessaire en raison des circonstances spécifiques de l'espèce et après l'avoir notifié à la SICAV.

**Article 411-7**

En vue de délivrer l'agrément de la SICAV prévu à l'article L. 214-3 du code monétaire et financier, l'AMF procède à l'examen des statuts de la SICAV, de la stratégie d'investissement utilisée afin d'atteindre l'objectif de gestion de l'OPCVM, de sa structure de frais ainsi que des éventuelles catégories d'actions, telles qu'elles ressortent de ses documents constitutifs.

L'AMF examine également le choix du dépositaire ainsi que la demande de la société de gestion de gérer cette SICAV.

Lorsque la société de gestion est établie dans un autre État membre de l'Union européenne ou dans un autre État partie à l'accord sur l'Espace économique européen, l'AMF statue sur la demande de la société de gestion de gérer le portefeuille de la SICAV, conformément à l'article L. 214-7-1 du code monétaire et financier.

L'AMF vérifie que la SICAV relevant du présent chapitre n'est pas juridiquement empêchée, notamment par une disposition contenue dans ses statuts, de commercialiser ses actions sur le territoire de la République française.

**Article 411-8**

Le certificat de dépôt du capital initial de la SICAV est adressé par la société de gestion ou, le cas échéant, la SICAV à l'AMF immédiatement après le dépôt des fonds et au plus tard dans les cent quatre-vingts jours ouvrés suivant la date d'agrément de la SICAV.

Pour les SICAV à compartiments, ce certificat est adressé à l'AMF dans un délai :

1. De cent quatre-vingts jours ouvrés suivant la date d'agrément de la SICAV pour l'un au moins des compartiments ; et

2. De trois cent soixante jours ouvrés suivant la date de notification de l'agrément pour les autres compartiments s'il en existe.

Le certificat de dépôt des fonds doit désigner le (ou les) compartiment(s) au(x)quel(s) il se rapporte.

A défaut de réception de ce certificat dans ces délais, l'AMF constate la nullité de l'agrément dans les conditions fixées par une instruction de l'AMF.

Lorsque des circonstances particulières le justifient, la SICAV peut solliciter la prolongation du délai de dépôt des fonds par une demande motivée qui doit parvenir à l'AMF avant la date de constatation de la nullité de l'agrément et mentionner la date souhaitée. L'AMF informe la SICAV de sa décision dans les huit jours ouvrés à compter de la réception de la demande.

**Article 411-9**

La commercialisation des actions d'une SICAV et, le cas échéant, d'un ou plusieurs compartiments ne peut intervenir qu'après notification de son agrément par l'AMF. Cette notification est adressée à la société de gestion ou, le cas échéant, à la SICAV elle-même dans les conditions fixées par une instruction de l'AMF.

**Article 411-10**

I. - L'agrément d'un FCP, prévu à l'article L. 214-3 du code monétaire et financier, et, le cas échéant, de chaque compartiment prévu au même article est subordonné au dépôt préalable auprès de l'AMF du dossier comportant les éléments précisés par une instruction de l'AMF.

La société de gestion est informée, dans un délai d'un mois suivant la présentation de la demande, de l'octroi ou du refus de l'agrément du FCP.

Le silence gardé par l'AMF pendant un délai d'un mois à compter de l'accusé de réception de la demande par l'AMF vaut décision d'agrément.

Lorsque l'AMF demande des informations complémentaires nécessitant en retour l'envoi par la société de gestion d'une fiche complémentaire d'informations, l'AMF le notifie par écrit en précisant que les éléments demandés doivent lui parvenir dans un délai de soixante jours. À défaut de réception de ces éléments dans ce délai, la demande d'agrément est réputée rejetée. À réception de l'intégralité des informations demandées, l'AMF en accuse réception par écrit. Cet accusé de réception mentionne un nouveau délai d'agrément qui ne peut excéder ceux mentionnés aux deuxième et troisième alinéas.

II. - Le délai mentionné au I est ramené à huit jours ouvrés à compter de l'accusé de réception du dossier d'agrément par l'AMF, lorsque le FCP qui sollicite l'agrément est analogue à un OPCVM ou FIA déjà agréé par l'AMF ; tel est notamment le cas lorsque, en application du deuxième alinéa de l'article L. 214-8-7 du code monétaire et financier, ce FCP résulte de la scission d'un FCP déjà agréé par l'AMF .

Le caractère analogue du FCP qui sollicite l'agrément, appelé "FCP analogue", et de l'OPCVM ou du FIA déjà agréé par l'AMF, appelé "OPCVM ou FIA de référence" , est apprécié par l'AMF notamment au vu des éléments suivants :

1. L'OPCVM ou le FIA de référence et le FCP analogue sont gérés par la même société de gestion ou un même délégataire de la gestion financière, ou par des sociétés de gestion ou des délégataires de la gestion financière appartenant à un même groupe et, sous réserve de l'appréciation de l'AMF, des informations transmises par la société de gestion du FCP analogue dans les conditions fixées dans une instruction de l'AMF ;

2. L'OPCVM ou le FIA de référence a été agréé par l'AMF et constituée au cours des dix-huit mois précédant la date de réception du dossier d'agrément du FCP analogue par l'AMF. Sur demande motivée de la société de gestion du FCP analogue, l'AMF pourra accepter que l'OPCVM ou le FIA de référence ait été agréé et créé plus de dix-huit mois avant la date de réception du dossier de l'OPCVM ;

3. L'OPCVM ou le FIA de référence n'a pas subi de changements autres que ceux mentionnés dans une instruction de l'AMF. Sur demande motivée de la société de gestion du FCP analogue, l'AMF peut

accepter qu'un OPCVM ou un FIA ayant subi des changements autres que ceux mentionnés dans l'instruction soit un OPCVM ou un FIA de référence ;
4. Les souscripteurs du FCP analogue répondent aux conditions de souscription et d'acquisition de l'OPCVM ou du FIA de référence ;
5. La stratégie d'investissement, le profil de risque, les règles de fonctionnement et le règlement du FCP analogue sont similaires à ceux de l'OPCVM ou du FIA de référence.
Par dérogation aux 1° à 5° qui précèdent, lorsque, en application du deuxième alinéa de l'article L. 214-8-7 du code monétaire et financier, le FCP analogue résulte de la scission d'un FCP déjà agréé par l'AMF, le caractère analogue du nouveau FCP est apprécié par l'AMF, notamment au regard du fait que la stratégie d'investissement, le profil de risque, les règles de fonctionnement et le règlement du FCP analogue sont similaires à ceux de l'OPCVM de référence.
Lorsque l'un des éléments des documents constitutifs du FCP analogue diffère de celui de l'OPCVM ou du FIA de référence ou lorsqu'en application du deuxième alinéa de l'article L. 214-8-7 du code monétaire et financier, ce FCP résulte de la scission d'un FCP déjà agréé par l'AMF, cela est clairement identifié dans le dossier d'agrément du FCP analogue dans les conditions précisées par une instruction de l'AMF.
Lorsque l'AMF demande des informations complémentaires nécessitant en retour l'envoi d'une fiche complémentaire d'informations, l'AMF le notifie en précisant que les éléments demandés doivent lui parvenir dans un délai de soixante jours. À défaut de réception de ces éléments dans ce délai, la demande d'agrément est réputée rejetée. À réception de l'intégralité des informations demandées, l'AMF en accuse réception par écrit. Cet accusé de réception mentionne un nouveau délai d'agrément qui ne peut excéder huit jours ouvrés.
Lorsque le FCP analogue ou l'OPCVM ou le FIA de référence ne respecte pas les conditions mentionnées au présent article, l'AMF le notifie en précisant que les informations complémentaires de façon à constituer un dossier d'agrément selon les modalités décrites au I doivent lui parvenir dans un délai de soixante jours. À défaut de réception de l'ensemble de ces informations complémentaires dans ce délai, la demande d'agrément est réputée rejetée. À réception de l'ensemble de ces informations complémentaires, l'AMF en accuse réception par écrit et examine le dossier d'agrément du FCP dans les conditions et selon la procédure mentionnées au I. Cet accusé de réception mentionne un nouveau délai d'agrément qui ne peut excéder un mois.

**Article 411-11**

En vue de délivrer l'agrément du FCP prévu à l'article L. 214-3 du code monétaire et financier, l'AMF procède à l'examen du règlement du FCP, de sa stratégie d'investissement utilisée afin d'atteindre l'objectif de gestion de l'OPCVM, de sa structure de frais ainsi que de ses éventuelles catégories de parts.
L'AMF examine également le choix du dépositaire ainsi que la demande de la société de gestion de gérer ce FCP.
Lorsque la société de gestion est établie dans un autre État membre de l'Union européenne ou un autre État partie à l'accord sur l'Espace économique européen, l'AMF statue sur la demande de la société de gestion de gérer le FCP, conformément à l'article L. 214-8-1 du code monétaire et financier.
L'AMF vérifie que le FCP relevant du présent chapitre n'est pas juridiquement empêché notamment par une disposition contenue dans le règlement du FCP de commercialiser ses parts sur le territoire de la République française.
L'AMF vérifie également qu'un établissement dépositaire des actifs de l'OPCVM a été désigné.

**Article 411-12**

L'attestation de dépôt des fonds du FCP est adressée à l'AMF par la société de gestion immédiatement après le dépôt des fonds et au plus tard dans les cent quatre-vingts jours ouvrés suivant la date d'agrément du FCP.

Pour les FCP à compartiments, cette attestation est adressée à l'AMF dans un délai :
1. De cent quatre-vingts jours ouvrés suivant la date d'agrément du FCP pour l'un au moins des compartiments ; et
2. De trois cent soixante jours ouvrés suivant la date de notification de l'agrément pour les autres compartiments s'il en existe.
L'attestation de dépôt des fonds doit désigner le (ou les) compartiment(s) au(x)quel(s) elle se rapporte. A défaut de réception de cette attestation dans ces délais, l'AMF constate la nullité de l'agrément dans les conditions fixées par une instruction de l'AMF.
Lorsque des circonstances particulières le justifient, la société de gestion peut solliciter la prolongation du délai de dépôt des fonds par une demande motivée qui doit parvenir à l'AMF avant la date de constatation de la nullité de l'agrément et mentionner la date souhaitée. L'AMF informe la société de gestion de sa décision dans les huit jours ouvrés à compter de la réception de la demande.

**Article 411-13**

Le règlement prévu à l'article L. 214-8-1 du code monétaire et financier mentionne la durée du FCP et le montant minimum de l'actif initial, qui ne peut être inférieur au montant fixé par l'article D. 214-6 du code monétaire et financier.
Le règlement mentionne les principes de distribution des sommes distribuables du FCP, les modalités concernant les souscriptions et les rachats, ainsi que, le cas échéant, celles régissant les droits attachés aux différentes catégories de parts. Les modalités de distribution des sommes distribuables du FCP peuvent être définies dans le prospectus.
Le FCP ne peut constituer des compartiments que si son règlement le prévoit expressément.
Une instruction de l'AMF précise le contenu des rubriques du règlement du FCP.

**Article 411-14**

La commercialisation des parts d'un FCP et, le cas échéant, de compartiments ne peut intervenir qu'après la notification de son agrément par l'AMF. Cette notification est adressée à la société de gestion du FCP dans les conditions fixées par une instruction de l'AMF.
Les souscriptions peuvent intervenir à partir de sa réception.
Les fondateurs s'engagent à compléter, le cas échéant, la souscription au plus tard à l'expiration d'un délai fixé par l'instruction précitée pour atteindre le montant minimum prévu par le règlement du FCP. Ce délai court à compter de la notification de l'agrément du FCP.
Dès que le montant mentionné à l'alinéa précédent a été atteint, la société de gestion établit la première valeur liquidative. L'attestation de dépôt correspondante faite par le dépositaire est adressée immédiatement à l'AMF.
Lorsque le FCP est composé de compartiments, le dépositaire établit une attestation de dépôt pour chaque compartiment.

