**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
                                                                        :
SECURITIES INVESTOR PROTECTION                                          :
CORPORATION,                                                            :   No. 08-01789 (BRL)
                                                                        :
          Plaintiff-Applicant,                                          :   SIPA Liquidation
                                                                        :
               v.                                                       :   (Substantively Consolidated)
                                                                        :
BERNARD L. MADOFF INVESTMENT                                            :
SECURITIES LLC,                                                         :
                                                                        :
          Defendant.                                                    :
------------------------------------------------------------------------X
                                                                        :
In re:                                                                  :
                                                                        :
BERNARD L. MADOFF,                                                      :
                                                                        :
          Debtor.                                                       :
------------------------------------------------------------------------X
                                                                        :
IRVING PICARD, Trustee for the                                         :
Liquidation of Bernard L. Madoff Investment                             :
Securities LLC,                                                         :
                                                                        :
          Plaintiff,                                                    :   Adv. Pro. No. 12-01677 (BRL)
                                                                        :
               v.                                                       :
                                                                        :
SOCIÉTÉ GÉNÉRALE  PRIVATE BANKING                                       :
(SUISSE) S.A. (f/k/a SG Private Banking Suisse                          :
S.A.), et al.,                                                          :
                                                                        :
          Defendants.                                                   :
                                                                        :
------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## THE MOTION OF THE OFI FUNDS
## <u>TO DISMISS THE COMPLAINT</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ............................................................................................................... 1

ARGUMENT .................................................................................................................... 3

   POINT I:  THE OFI FUNDS HAVE NO LEGAL EXISTENCE AND LACK THE
   CAPACITY TO BE SUED ............................................................................................ 3

      A.  The OFI Funds Have No Legal Existence ........................................................... 4
      B.  Capacity To Be Sued ......................................................................................... 6

   POINT II:  THE COURT LACKS PERSONAL JURISDICTION OVER THE OFI
   FUNDS .......................................................................................................................... 8

      A.  Alleged Knowledge of Fairfield Sentry's Investment in BLMIS Does Not Satisfy
         Minimum Contacts. ......................................................................................... 10
      B.  The Subscription Agreement Cannot Subject the OFI Funds to this Court's
         Personal Jurisdiction ...................................................................................... 12
      C.  Personal Jurisdiction Over the OFI Funds Does Not Comply With Due
         Process.. ......................................................................................................... 15

   POINT III:  THE COMPLAINT SHOULD BE DISMISSED BASED ON THE
   APPLICATION OF 11 U.S.C. § 546(e) ....................................................................... 18

      A.  THE FAIRFIELD SENTRY INITIAL TRANSFERS WERE MADE BY, TO OR
         FOR THE BENEFIT OF, A COVERED ENTITY ............................................ 21

         1. The Fairfield Sentry Initial Transfers Were Made by a Stockbroker ............ 22
         2. The Fairfield Sentry Initial Transfers Were Made to a Financial Institution
           and for the benefit of a Financial Institution ................................................. 22

      B.  THE FAIRFIELD SENTRY INITIAL TRANSFERS WERE SETTLEMENT
         PAYMENTS AND MADE IN CONNECTION WITH A SECURITIES
         CONTRACT ..................................................................................................... 23

CONCLUSION ............................................................................................................... 26

14005271.2 4/28/2022

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arma v. Buyseasons, Inc.*,
  591 F. Supp. 2d 637 (S.D.N.Y. 2008) ....................................................... 14

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cty.*,
  480 U.S. 102 (1987)................................................................... 11, 15, 16

*Benton v. Cameco Corp.*,
  375 F.3d 1070 (10th Cir. 2004) ................................................................ 17

*In re Bernard L. Madoff Inv. Sec. LLC*,
  12 F.4th 171 (2d Cir. 2021) (Menashi, J., concurring)............................... 19

*Brown v. Fifth Judicial District Drug Task Force*,
  255 F.3d 475 (8th Cir. 2001) ...................................................................... 5

*Cfirstclass Corp. v. Silverjet PLC*,
  560 F. Supp. 2d 324 (S.D.N.Y. 2008) ....................................................... 13

*Charles Schwab Corp. v. Bank of Am. Corp.*,
  883 F.3d 68 (2d Cir. 2018)........................................................................... 8

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)..................................................................................... 9

*Darby v. Pasadena Police Dept.*,
  939 F.2d 311 (5th Cir. 1991) ...................................................................... 5

*Del Medical Imaging Corp. v. CR Tech USA, Inc.*,
  2010 WL 1487994 (S.D.N.Y. Apr. 13, 2010)............................................... 8

*Ellul v. Congregation of Christian Brothers, et al.*,
  No. 09-cv-10590, 2011 WL 1085325 (S.D.N.Y. Mar. 23, 2011), *aff'd on
  other grounds*, 774 F.3d 791 (2d Cir. 2014)................................................ 4

*In re Fairfield Sentry Ltd.*,
  No. 10-cv-13164, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) .............. 10, 14

*In re Fairfield Sentry Ltd.*,
  No. 10-cv-13164, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ............ 22, 23

*Fund Liquidation Holdings LLC v. Bank of America Corp.*,
  991 F.3d 370 (2d Cir. 2021)................................................................... 4, 5

14005271.2 4/28/2022

*Galerie Gmurzynska v. Hutton*,
  257 F. Supp. 2d 621 (S.D.N.Y. 2003) ....................................................................... 16

*Gov't Employees Ins. Co. v. Estate of Sosnov*,
  664 N.Y.S.2d 608 (N.Y. App. Div. 2d Dept. 1997) ...................................................... 7

*Hau Yin To v. HSBC Holdings, PLC*,
  No. 15-cv-3590, 2017 WL 816136, . (S.D.N.Y. Mar. 1, 2017), aff'd, 700
  F. App'x 66 (2d Cir. 2017) .................................................................................. 12, 15

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984) ................................................................................................... 10

*Hill v. HSBC Bank PLC*,
  207 F.Supp. 3d 333 (S.D.N.Y. 2016) ......................................................................... 12

*Klonis v. Nat'l Bank of Greece, S.A.*,
  492 F. Supp. 2d 293 (S.D.N.Y. 2007) .......................................................................... 8

*Lavazza Premium Coffees Corp. v. Prime Line Distributors Inc.*,
  No. 20-cv-9993, 2021 WL 5909976 (S.D.N.Y. Dec. 10, 2021)................................. 12

*Light v. Taylor*,
  317 F. App'x. 82 (2d Cir. 2009) .................................................................................. 13

*Luvata Buffalo, Inc. et al. v. Mol Mitsui O.S.K.*,
  No. 08-cv-0701, 2010 WL 5779411 (W.D.N.Y. July 28, 2010)................................. 13

*In re Lyondell Chem. Co.*,
  543 B.R. 127 (Bankr. S.D.N.Y. 2016) .......................................................................... 9

*In re Magnetic Audiotape Antitrust Litig.*,
  334 F.3d 204 (2d Cir. 2003) ......................................................................................... 8

*Manko Window Systems, Inc. v. Prestik*,
  No. 16-cv-2818, 2017 WL 4355580 (D. Kan. Sept. 29, 2017)................................... 17

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996) ........................................................................................... 8

*Museum Boutique Intercontinental, Ltd. v. Picasso*,
  886 F. Supp. 1155 (S.D.N.Y. 1995) ......................................................................... 4, 5

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ................................................................................................... 23

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
  549 B.R. 56 (S.D.N.Y. 2016) ....................................................................................... 9

*Phillips v. Audio Active Ltd.*,
  494 F.3d 378 (2d Cir. 2007) ................................................................... 13

*Picard v. ABN Amro Bank (Ireland Ltd.) (f/k/a Fortis Prime Fund Solutions Bank (Ireland) Ltd.) (n/k/a ABN Amro Retained Custodial Services (Ireland) Limited)*,
  No. 20-cv-1898 (2d Cir. Oct. 1, 2021) Dkt. No. 50 .................................... 19

*Picard v. Greiff*,
  476 B.R. 715 (S.D.N.Y. 2012) ....................................................... 19, 20, 22

*Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*,
  773 F.3d 411 (2d Cir. 2014) .................................................................... 24

*Picard v. Katz*,
  462 B.R. 447 (S.D.N.Y. 2011) ............................................................ 19, 20

*Porina v. Marward Shipping Co.*,
  No. 05-cv-5621, 2006 WL 2465819 (S.D.N.Y. Aug. 24, 2006) ................................. 15

*Roby v. The Corporation of Lloyd's, et al.*,
  796 F. Supp. 103 (S.D.N.Y. 1992) ...................................................... 4, 5, 7

*Rocky Mountain Chocolate Factory v. Arellano*,
  No. 17-cv-0582, 2017 WL 4697503 (D. Colo. Oct. 19, 2017) .................................. 17

*SIPC. v. Bernard L. Madoff Inv. Sec., LLC (In re Madoff Sec.)*,
  No. 12-mc-00115 (JSR), 2013 WL 1609154 (S.D.N.Y. April 15, 2013).............*passim*

*SIPC v. Bernard L. Madoff Investment Securities LLC*,
  516 B.R. 18 (S.D.N.Y. 2014) .............................................................. 25, 26

*In re South African Apartheid Litigation*,
  643 F.Supp. 2d 423 (S.D.N.Y. 2009) ........................................................ 16

*SPV Osus Ltd. v. UBS AG*,
  882 F.3d 333 (2d Cir. 2018) .................................................................... 10

*Tamam v. Fransabank Sal*,
  677 F. Supp. 2d 720 (S.D.N.Y. 2010) ......................................................... 12

*Taylor v. Sturgell*,
  553 U.S. 880 (2008) ............................................................................. 23

*In re Terrorist Attacks on Sept. 11, 2001*,
  714 F.3d 659 (2d Cir. 2013) .................................................................... 11

iv

*In Re Vivendi Universal, S.A. Securities Litigation*,
605 F. Supp. 2d 570 (S.D.N.Y. 2009) ..................................................................... 6

*Walden v. Fiore*,
571 U.S. 277 (2014) ............................................................................................. 11

*Washington v. U.S. Tennis Ass'n, Inc.*,
290 F. Supp. 2d 323 (E.D.N.Y. 2003) ..................................................................... 4

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980) ............................................................................................. 15

*Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC*,
No. 19-CV-3444, 2020 WL 5503557 (S.D.N.Y. Sept. 10, 2020) ............................... 9

**Statutes**

11 U.S.C. § 101(22)(A) ................................................................................... 22, 23

11 U.S.C. § 101(53A)(B) ..................................................................................... 22

11 U.S.C. § 546(e) ....................................................................................... *passim*

11 U.S.C. § 741(7)(A)(i) ...................................................................................... 24

28 U.S.C. §§754 and 959(a) ................................................................................. 7

11 USCS § 101 ................................................................................................... 18

11 USCS § 101, 741 ........................................................................................... 18

11 USCS §§ 544, 545, 547, 548(a)(1)(B), and 548(b) ............................................ 18

11 USCS § 548(a)(1)(A) ...................................................................................... 19

11 USCS § 741(7) ............................................................................................... 19

11 USCS § 761(4) ............................................................................................... 19

New York Debtor & Creditor Law § 278 ............................................................. 2, 13

**Other Authorities**

59 Am. Jur. 2d PARTIES § 44 ............................................................................... 4

Federal Rule of Bankruptcy Procedure 7004 .......................................................... 9

Federal Rule of Bankruptcy Procedure 7004(f) ....................................................... 9

14005271.2 4/28/2022

Federal Rules of Bankruptcy Procedure Rule 7012(b) ...................................................... 1

Federal Rules of Civil Procedure Rules 12(b)(2) and 12(b)(6) ........................................ 1

N.Y. C.P.L.R. § 302 (McKinney 2001) ............................................................................... 9

Federal Rules of Civil Procedure Rule 9 ........................................................................... 4

Federal Rules of Civil Procedure Rule 17(b) ....................................................... 5, 6, 7, 8

Federal Rules of Civil Procedure Rule 17(b)(3) ................................................................ 7

Federal Rules of Civil Procedure Rule 17(b)(3)(A) ........................................................... 7

14005271.2 4/28/2022

## PRELIMINARY STATEMENT

Defendants OFI MGA Alpha Palmares ("OFI"), Oval Palmares Europlus ("Palmares") and UMR Select Alternatif ("UMR") (collectively, the "OFI Funds" or "Defendants") respectfully submit this memorandum of law, along with the Declarations of Jean-Pierre Grimaud and Hervé Lecuyer, in support of their motion, pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, and Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing the claims asserted in the complaint (the "Complaint") filed in the above-captioned action against the OFI Funds by Irving Picard, as Trustee (the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS").

## BACKGROUND

The Trustee commenced this proceeding to recover transfers made by Fairfield Sentry Limited ("Fairfield Sentry") and other feeder funds to Defendants following initial transfers from BLMIS to Fairfield Sentry and the other feeder funds. *See* Complaint ¶¶ 2, 3. Fairfield Sentry is a hedge fund, in liquidation, that is organized under the laws of the British Virgin Islands. *See* Complaint, Ex. A, ¶ 32. The Trustee alleged in the Complaint that OFI and Palmares are *fonds commun de placement* ("FCP") organized under the laws of France. *See* Complaint ¶¶ 22, 23. The Trustee mistakenly alleged that UMR is a "fund of funds" organized under the laws of France (Complaint ¶ 24) but as set forth in the Declaration of Jean-Pierre Grimaud, UMR is also an FCP. Grimaud Dec., ¶ 6.

The Trustee alleges in the Complaint that initial transfers made by BLMIS to Fairfield Sentry ("Fairfield Sentry Initial Transfers") were subsequently transferred to, or

for the benefit of, among other parties, Société Générale Bank & Trust S.A. ("SGBT"),
OFI, Palmares and UMR ("Fairfield Sentry Subsequent Transfers").  (Complaint ¶¶ 72,
73).  The Trustee also alleges: (i) that the OFI Funds and SGBT entered into one or
more subscription agreements with Fairfield Sentry and received subsequent transfers
from Fairfield Sentry in the name of "SGBT Lux/Oval Alpha Palmares"; (ii) that Palmares
and SGBT entered into one or more subscription agreements with Fairfield Sentry and
received subsequent transfers from Fairfield Sentry in the name of "SGBT
Lux/Palmares Europlus"; and (iii) that UMR and SGBT entered into one or more
subscription agreements with Fairfield Sentry and received subsequent transfers from
Fairfield Sentry in the name of "SGBT Lux/UMR."   (Complaint ¶¶ 22, 23, 24).

The Trustee alleged that the following Fairfield Sentry Subsequent Transfers
occurred: (i) a transfer of $13,732,259 on December 19, 2005 to SGBT Lux/Palmares;
(ii) a transfer of $5,845,555 on February 15, 2006 to SGBT Lux/OFI; (iii) a transfer of
$7,113,675 on March 16, 2007 to SGBT Lux/UMR; and (iv) a transfer of $6,026,761 on
March 16, 2007 to SGBT Lux/OFI.  (Complaint ¶ 73, Ex. E, p 1).

Count One of the Complaint is the only count brought against the OFI Funds.
The Trustee alleges in Count One that the Fairfield Sentry Initial Transfers are
avoidable and recoverable and that, as a result, the Fairfield Sentry Subsequent
Transfers are recoverable from the OFI Funds as subsequent transferees under
sections 550(a) and 551 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*
(the "Bankruptcy Code"), the New York Debtor & Creditor Law ("NYDCL") § 278 and
SIPA § 78fff-2(c)(3).  (Complaint ¶¶ 88, 89).

14005271.2 4/28/2022

## ARGUMENT

### POINT I:  THE OFI FUNDS HAVE NO LEGAL EXISTENCE AND LACK THE CAPACITY TO BE SUED

The OFI Funds were all created as FCP's under Article 214 of the French Monetary and Financial Code. Grimaud Dec., ¶¶ 4-6; Lecuyer Dec., ¶ 9-11; Complaint ¶¶ 22, 23.

Under French law, an FCP has no legal personality. Lecuyer Dec. ¶ 15 (*citing* Monetary and Financial Code, Art L. 214-8).  An FCP is a co-ownership of financial instruments and is a unique form of investment vehicle.  *Id.* at ¶ 16. An FCP is different from a corporation, partnership, association or other form of business entity. *Id. at* ¶ 17. An FCP has no officers or employees of its own.  *Id.* at ¶ 21.  An FCP is an undivided pool of assets managed exclusively by a management company on behalf of investors who purchase redeemable non-voting units in the FCP.  *Id.* at ¶ 30.   The investors are generally referred to as "unit holders."  *Id.*

An FCP is established by a contract between the management company and the custodian bank, both of which create the fund's regulations. *Id.* at ¶ 39 (*citing* Monetary and Financial Code, Art L. 214-8-1).  The purchase by an investor of units in an FCP constitutes acceptance by the investor of the FCP's regulations.  *Id.* at ¶ 31 (*citing* Monetary and Financial Code, Art L. 214-8-1).  The assets of the FCP must be kept in a custodian bank account which is separate and apart from management company accounts.  *Id.* at ¶ 32 (*citing* Monetary and Financial Code, Art L. 214-9).  The management company has the exclusive right to manage the FCP.  *Id.* at ¶ 40 (*citing* Monetary and Financial Code, Art L. 214-8).  The management company has no interest in the assets of the FCP.  *Id.*

The FCP units acquired by an investor represent that investor's pro rata right in the undivided collection of assets held by the custodian bank. *Id.* at ¶ 34.  The unit holders are liable for the FCP's debts only to the extent of the FCP's assets and in proportion to their own pro rata share.   *Id.* at ¶ 35 (citing Monetary and Financial Code, Art L. 214-8-5).  In other words, the liability of the unit holders is several, not joint, and each unit holder is only liable for the amount of his individual share of the pooled assets. *Id.*

### A.  The OFI Funds Have No Legal Existence

"Capacity to be sued and legal existence are separate and distinct concepts." *Roby v. The Corporation of Lloyd's, et al.*, 796 F. Supp. 103, 110 (S.D.N.Y. 1992), *aff'd on other grounds*, 996 F.2d 1353 (2d Cir. 1993); *Fund Liquidation Holdings LLC v. Bank of America Corp.*, 991 F.3d 370, 382-83 (2d Cir. 2021) (noting that "the Federal Rules of Civil Procedure differentiate between corporate existence and capacity" to sue, and Rule 9 lists the two terms independent of one another, indicating that they are "distinct concepts" with "distinct meanings"); *Museum Boutique Intercontinental, Ltd. v. Picasso*, 886 F. Supp. 1155, 1159 (S.D.N.Y. 1995).  "Both capacity to be sued and legal existence are prerequisites to the suability of an entity[.]."  *Roby*, 796 F. Supp. at 110; *Ellul v. Congregation of Christian Brothers, et al.*, No. 09-cv-10590, 2011 WL 1085325, at *3 (S.D.N.Y. Mar. 23, 2011), *aff'd on other grounds*, 774 F.3d 791 (2d Cir. 2014).

"Actions may be brought only against legal entities." 59 Am. Jur. 2d PARTIES § 44; *see also Washington v. U.S. Tennis Ass'n, Inc.*, 290 F. Supp. 2d 323, 324 n.1 (E.D.N.Y. 2003) ("The U.S. Open is not an independent entity; it is an event, run by the U.S.T.A., and is therefore incapable of being sued.").  A party must have a legal

4

existence as a prerequisite to having the capacity to be sued. *Fund Liquidation Holdings LLC*, 991 F.3d at 383; *Roby*, 796 F. Supp. at 110; *see also Museum Boutique Intercontinental, Ltd.*, 886 F.Supp. at 1159 (finding defendant's "authority to act for or be sued as a representative of the *indivision* is not governed by Rule 17(b), which by its terms only applies to the 'capacity' to be sued[]"); *Brown v. Fifth Judicial District Drug Task Force*, 255 F.3d 475, 477 (8th Cir. 2001) (noting authority in support of the proposition that "the questions of legal or juridical existence and capacity to sue and be sued are distinct, and that a group of persons working together for a common purpose must first be found to have legal existence before the question of capacity to sue or be sued can arise"); *Darby v. Pasadena Police Dept.*, 939 F.2d 311, 314 (5th Cir. 1991) (claims brought against defendant that lacks capacity to be sued are subject to dismissal).  Thus, if it is found that a defendant lacks legal existence, the court may dismiss the action without having to analyze whether the defendant has the capacity to be sued under Fed. R. Civ. P. 17(b). *See Museum Boutique Intercontinental, Ltd.*, 886 F. Supp. at 1159-1161; *cf. Fund Liquidation Holdings LLC*, 991 F.3d at 386 (holding that where the *plaintiff* is the party with no legal existence, "Article III is satisfied so long as a party with standing to prosecute the specific claim in question exists at the time the pleading is filed").

Because the FCP is a creation of French law, its legal existence should be determined as a matter of French Law.  *See Museum Boutique Intercontinental, Ltd.*, 886 F. Supp. at 1159 (defendant's "authority to be sued as an heir is governed by French law, the law which created both the *indivision* and her status as an heir").  As set forth above and in the Declaration of Hervé Lecuyer, the OFI Funds, as FCPs under

French law, do not have a legal existence.  The court in *In Re Vivendi Universal, S.A.*
*Securities Litigation*, 605 F. Supp. 2d 570, 580 (S.D.N.Y. 2009), recognized that French
FCPs "have no legal personality . . ." and that French law governing FCPs "is in all
material respects identical to Luxembourgian law."  With respect to the Luxembourgian
FCPs, the court found that "[l]egal experts from both sides of the debate agree that
FCPs do not have legal personality and thus cannot act on their own."  *Id.* at 579
(internal quotation marks omitted).

Based upon the foregoing, because the OFI Funds have no legal personality or
existence, the Trustee cannot maintain this action against the OFI Funds and his claims
against the OFI Funds must be dismissed.

### B.  Capacity To Be Sued

Although the OFI funds are not legal entities subject to suit, the Trustee may
mistakenly argue that Rule 17(b) of the Federal Rules of Civil Procedure ("FRCP")
permits a lawsuit to be filed against the OFI Funds.  Since the OFI Funds have no legal
personality or existence, there is no reason to determine whether the OFI Funds have
the capacity to be sued.  Rule 17(b) cannot create a legal existence or a substantive
right where none exists under French law.

As set forth above, in order to bring a suit against a defendant, the defendant
must not only have legal existence, but must also have the capacity to be sued. Under
FRCP 17(b) the capacity to sue or be sued is determined as follows:

(1) for an individual who is not acting in a representative capacity, by the law of
the individual's domicile;

(2) for a corporation, by the law under which it was organized; and

(3) for all other parties, by the law of the state where the court is located, except that: (A) a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws; and (B) 28 U.S.C. §§754 and 959(a) govern the capacity of a receiver appointed by a United States court to sue or be sued in a United States court.

Rule 17(b) merely addresses a party's capacity to be sued, which is a separate and distinct inquiry from the legal existence of an entity. "Rule 17(b) does not confer legal existence or create new types of legal entities." *Roby*, 796 F. Supp. at 110.

The Trustee cannot contend that the OFI Funds are individuals. It is also clear that the OFI Funds are not corporations. Even if this Court rejected the rule enunciated in *Roby* that the Rule 17(b) inquiry regarding capacity is not triggered until a court has first made the threshold determination that the party in question is a legal entity, which the OFI Funds are not, Rule 17(b)(3) would apply and this court would have to look to New York law to determine whether the OFI Funds, as FCPs, have the capacity to be sued. Under New York law, "[a]n action cannot be maintained against a party who is not a natural or artificial person having legal capacity to be sued." *Gov't Employees Ins. Co. v. Estate of Sosnov*, 664 N.Y.S.2d 608, 609 (N.Y. App. Div. 2d Dept. 1997). Likewise, the OFI Funds cannot be sued under the exception set forth in Rule 17(b)(3)(A) because there is no basis to conclude that under French law or New York law, the OFI Funds are legally recognized partnerships or unincorporated associations. *See Roby*, 796 F. Supp. at 107 (the Lloyd's syndicates were not unincorporated associations under New York because "liability was several, not joint, and that each underwriter was obligated only for the amount of his individual underwriting, irrespective of the obligation of any of the other underwriters") (internal quotation marks omitted).

Accordingly, the Trustee cannot establish the OFI Funds capacity to be sued under Rule 17(b) of the Federal Rules of Civil Procedure and, therefore, the claims against the OFI Funds must be dismissed.

**POINT II**:  **THE COURT LACKS PERSONAL JURISDICTION OVER THE OFI FUNDS**

As the party asserting jurisdiction, the Trustee bears the burden of establishing this Court's personal jurisdiction over the OFI Funds.  *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003); *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996); *Klonis v. Nat'l Bank of Greece, S.A.*, 492 F. Supp. 2d 293, 298 (S.D.N.Y. 2007).  Prior to discovery, the Trustee is required to plead "legally sufficient allegations of jurisdiction."  *Metro. Life Ins. Co.*, 84 F.3d at 566.  At the motion to dismiss stage, the Trustee has the pleading burden and "must make a prima facie showing that jurisdiction exists" over the OFI Funds consistent with due process. *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81 (2d Cir. 2018) (internal quotation marks omitted).

Here, regardless of the sufficiency of the Trustee's jurisdictional allegations, this Court lacks personal jurisdiction over the OFI Funds because they do not have a legal existence.  *See Del Medical Imaging Corp. v. CR Tech USA, Inc.*, 2010 WL 1487994, at *4 (S.D.N.Y. Apr. 13, 2010) (*citing White v. Moylan*, 554 F. Supp. 2d 263, 266 (D. Conn. 2008)) (finding that "the court lacks personal jurisdiction over an entity that does not exist").  Accordingly, the Court need not go further in its analysis of the Trustee's jurisdictional allegations relating to the OFI Funds. Should the Court analyze those allegations, it should find that the Trustee has failed to meet its burden.

The Trustee does not allege that the Court has general jurisdiction over the OFI Funds.  French FCPs (*see* Complaint ¶¶ 22-24) are not "at home" in the United States, and so the Trustee must plead facts supporting the exercise of specific jurisdiction over the OFI Funds.  *See Daimler AG v. Bauman*, 571 U.S. 117, 136-37 (2014).  To do so, under New York's long-arm statute,[1] the Trustee must satisfy two exacting pleading requirements:  (1) the OFI Funds must have transacted business within the state; and (2) the claims asserted must arise from that business activity.  *See Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC*, No. 19-CV-3444, 2020 WL 5503557, at *4 (S.D.N.Y. Sept. 10, 2020) (Broderick, J.) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)).  The Trustee also must demonstrate that the exercise of personal jurisdiction over the OFI Funds "would comport with due process." *Zim Integrated Shipping Servs. Ltd.*, 2020 WL 5503557, at *3 (internal quotations omitted).

As the basis for specific jurisdiction over the OFI Funds, the Trustee asserts that the OFI Funds "purposely availed themselves of the laws and protections of the United States and the State of New York by … knowingly directing funds to be invested with New York-based BLMIS through the Fairfield Funds . . . and then receiving transfers from these funds." (Complaint ¶ 31).  The Trustee further asserts that the "subscription agreements, as well as Fairfield Fund private placement memoranda, also confirmed that substantially all of the funds' assets would be invested with New York-based

---

[1] The Trustee bases personal jurisdiction on New York's long-arm statute, N.Y. C.P.L.R. § 302 (McKinney 2001), and Federal Rule of Bankruptcy Procedure 7004.  Complaint ¶ 29.  Under Federal Rule of Bankruptcy Procedure 7004(f), the Trustee can establish personal jurisdiction by demonstrating sufficient minimum contacts with the United States as a whole.  *See In re Lyondell Chem. Co.*, 543 B.R. 127, 137-39 (Bankr. S.D.N.Y. 2016).  The federal jurisdictional analysis "closely resemble[s]" New York's long-arm statute and due process requirements, so the analyses are largely interchangeable.  *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 68 (S.D.N.Y. 2016).

BLMIS" and that "Fairfield Sentry instructed its subscribers to send subscription monies

to a bank account in New York." *Id*. ¶ 34.  Finally, the Trustee asserts that the OFI

Funds "entered into one or more subscription agreements with the Fairfield Funds

agreeing not only that New York law would govern their dealings, but also that any

related suit, action or proceeding would be brought in New York." *Id*. ¶ 33.

### A.    Alleged Knowledge of Fairfield Sentry's Investment in BLMIS Does Not Satisfy Minimum Contacts.

The assertion that the OFI Funds knew that Fairfield Sentry assets would be

invested with BLMIS and that the subscription agreements instructed subscribers to

send subscription monies to a bank account in New York are jurisdictionally irrelevant

and deficient.

First, the allegation that the OFI Funds knew that subscription payments into

Fairfield Sentry would ultimately be invested by Fairfield Sentry into BLMIS does not

give rise to personal jurisdiction.  *See Helicopteros Nacionales de Colombia, S.A. v.

Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third

person is not an appropriate consideration when determining whether a defendant has

sufficient contacts with a forum State to justify an assertion of jurisdiction."); *SPV Osus

Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) (substantial connection "depends on

the relationship among the defendant, the forum, and the litigation") (internal quotation

marks omitted).  The Trustee's claims do not focus on the decision of Defendants to

invest with Fairfield Sentry as the basis for liability.  *See In re Fairfield Sentry Ltd.*, No.

10-cv-13164, 2018 WL 3756343, at *4-12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("Fairfield I")

(subscription agreements irrelevant to claim not based on subscription).  Rather, the

Trustee's claim to recover the Fairfield Sentry Subsequent Transfers relates to and

10

arises out of the transfers, not the subscription payments. *See, e.g.,* Complaint ¶ 86.
Accordingly, subscription payments into the foreign Fairfield Sentry are irrelevant to the
jurisdictional analysis.

Second, knowledge that the foreign Fairfield Sentry would invest with BLMIS in
New York is insufficient as a matter of law to support jurisdiction over the OFI Funds.
The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused
'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third-
parties) and the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Instead,
"[t]he substantial connection … between the defendant and the forum State necessary
for a finding of minimum contacts must come about *by an action of the defendant
purposefully directed toward the forum State*." *Asahi Metal Indus. Co. v. Superior Ct. of
California, Solano Cty.*, 480 U.S. 102, 112 (1987) (quotation omitted) (emphasis in
original). Even if true, the Trustee's allegation that the OFI Funds knew that Fairfield
Sentry would invest with BLMIS does not satisfy *Walden*, and it is insufficient to hale the
OFI Funds into a New York court. Moreover, if the Trustee's theory were upheld, any
investment that foreseeably found its way into a U.S. asset would confer personal
jurisdiction. There is no precedent for such a sweeping result that would flood U.S.
courts with cases against parties with no U.S. contacts. *See, e.g., In re Terrorist
Attacks on Sept. 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013) (noting foreseeability by
itself is "insufficient" for the exercise of personal jurisdiction).

Finally, the allegation that Fairfield Sentry instructed its subscribers to send
subscription monies to a bank account in New York is jurisdictionally deficient as it is
well established that the mere use of a bank account at a U.S. financial institution to

facilitate the making and receipt of dollar-denominated payments does not subject the OFI Funds to personal jurisdiction in New York or the United States. *See Hau Yin To v. HSBC Holdings, PLC*, No. 15-cv-3590, 2017 WL 816136, at *6. (S.D.N.Y. Mar. 1, 2017), aff'd, 700 F. App'x 66 (2d Cir. 2017) (rejecting personal jurisdiction over foreign defendants because their alleged connection to the forum was the transmission of information and funds "to and from BLMIS . . . [as an] incidental consequence[] of fulfilling a foreign contract"); *Hill v. HSBC Bank PLC*, 207 F.Supp. 3d 333, 339-40 (S.D.N.Y. 2016) (finding transmission of information and funds to and from BLMIS to be "incidental consequences of fulfilling a foreign contract…insufficient to 'project' the Foreign Defendants into New York" and not amounting "to 'purposeful availment' of the laws of [the forum]"); *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 727 (S.D.N.Y. 2010) ("[C]ourts in this district have routinely held that merely maintaining a New York correspondent bank account is insufficient to subject a foreign bank to personal jurisdiction.") (collecting cases).

### B.   The Subscription Agreement Cannot Subject the OFI Funds to this Court's Personal Jurisdiction

The Trustee's jurisdictional theory that the OFI Funds entered into a subscription agreement with Fairfield Sentry under which it submitted to New York jurisdiction is not applicable as to the Trustee claims against the OFI Funds and has already been rejected by this Court.

Any theory of jurisdiction predicated on the subscription agreement is not applicable because the Trustee cannot invoke a forum selection clause in a contract to which he is a stranger to establish this Court's jurisdiction over the subsequent transfer claim that he seeks to advance. *See Lavazza Premium Coffees Corp. v. Prime Line*

12

*Distributors Inc.*, No. 20-cv-9993, 2021 WL 5909976, at *7 (S.D.N.Y. Dec. 10, 2021)

(rejecting enforcement of forum selection clause for a non-party plaintiff bringing claims

outside of the clause's scope).  A forum selection clause is enforceable only if it "covers

the claims and parties involved in the dispute." *Phillips v. Audio Active Ltd.*, 494 F.3d

378, 383 (2d Cir. 2007); *Light v. Taylor*, 317 F. App'x. 82, 83 (2d Cir. 2009) (summary

order).  The court must examine the substance of plaintiff's "claims as they relate to the

precise language of the clause." *Phillips*, 494 F.3d at 389.  To determine the

enforceability of a forum selection clause in the context of this dismissal motion, the

Court must view "the facts in the light most favorable to the party resisting enforcement

of the forum selection clause." *Cfirstclass Corp. v. Silverjet PLC*, 560 F. Supp. 2d 324,

327 (S.D.N.Y. 2008).

    The Trustee asserts claims against the OFI Funds under section 78fff-2(c)(3) of

SIPA, sections 550(a) and 551 of the Bankruptcy Code, and section 278 of the New

York Debtor & Creditor Law.   The Trustee does not rely on the subscription agreements

in any manner in pleading his claims for the recovery of Fairfield Sentry Subsequent

Transfers but relies on the aforementioned statutes as the basis for his claims.

Accordingly, the Trustee's claims against the OFI Funds are not governed by the forum

selection clause in the subscription agreements.  *See Phillips*, 494 F.3d at 381-92;

*Light*, 317 F. App'x. at 83-84 ("The relevant clause here applies only to disputes

'regarding' the agreement.  Light's copyright claims are not governed by the forum

selection clause because they do not encompass a dispute with respect to the . . .

agreement."); *Luvata Buffalo, Inc. et al. v. Mol Mitsui O.S.K.*, No. 08-cv-0701, 2010 WL

5779411, at *4 (W.D.N.Y. July 28, 2010) ("The clause applies only to actions

'thereunder', meaning under 'the contract evidenced by or contained in this Bill of Lading'.  The duties which are the subject of AIG's first cause of action are not imposed by the contract, but rather by 'the New York Uniform Commercial Code, a source of law and duties separate from the Bill of Lading itself.'"); *Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 645 (S.D.N.Y. 2008) ("Where . . . the rights being asserted do not originate from the contract containing the forum selection clause, the clause does not apply.") (collecting cases).

Additionally, in the Fairfield Liquidators' Proceedings, this Court concluded that the execution of certain subscription agreements, without more, did not subject the defendants to personal jurisdiction.  *Fairfield I*, 2018 WL 3756343, at *12.  Specifically, this Court held that the New York choice of forum provisions in the subscription agreement were not applicable to the disputes concerning subsequent transfers because the Fairfield Liquidators' claim is solely based on redemptions and does not arise out of the subscription agreements.  *Fairfield I*, 2018 WL 3756343, at *11 (adhering to the Privy Council's holding "that the Subscription Agreement was irrelevant to actions to recover the inflated redemption payments").

Furthermore, as set forth in the Declaration of Jean-Pierre Grimaud, none of the OFI Funds entered into subscription agreements with Fairfield Sentry.  The custodian of assets for each of the OFI Funds signed the subscription agreements for the Fairfield Sentry Limited shares purchased.  Grimaud Dec., ¶ 10.  Additionally, because the OFI Funds have no legal personality, the OFI Funds could not consent to personal jurisdiction by contract in New York because the OFI Funds themselves lack the ability to contract.  Lecuyer Dec., ¶ 22.

14

As such, the Trustee cannot meet its burden to establish specific jurisdiction over the OFI Funds.

### C.    Personal Jurisdiction Over the OFI Funds Does Not Comply With Due Process

Finally, asserting jurisdiction over the OFI Funds would not comply with due process. The Court's exercise of jurisdiction must be reasonable under the circumstances for it to be consistent with due process. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("The Due Process Clause ... gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.") (citation omitted). Courts apply a "sliding scale" in assessing whether jurisdiction is consistent with due process: "the weaker the plaintiff's showing on minimum contacts, the less a defendant needs to show in terms of unreasonableness to defeat jurisdiction." *LaMonica v. CEVA Grp., PLC* (In re CIL Ltd.), 582 B.R. 46, 79 (Bankr. S.D.N.Y. 2018) (internal quotation marks and citation omitted); *see also Porina v. Marward Shipping Co.*, No. 05-cv-5621, 2006 WL 2465819, at *6 (S.D.N.Y. Aug. 24, 2006) ("[I]f a defendant's contacts with the United States are weak, the plaintiff has to make a stronger showing of reasonableness in order to show that jurisdiction over the defendant is proper."). In evaluating the reasonableness of exercising personal jurisdiction, "[a] court must consider the burden on defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi*, 480 U.S. at 113.

In addition, where, as here, the involuntary participant in the action is foreign, "the Supreme Court has specifically cautioned that '[t]he unique burdens placed upon

one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.'" *In re South African Apartheid Litigation*, 643 F.Supp. 2d 423, 431 (S.D.N.Y. 2009) (citing *Ashai Metal Indus. Co.*, 480 U.S. at 113). "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Ashai*, 480 U.S. at 115 (internal quotations omitted).

As set forth above, the Trustee cannot establish the minimum contacts required for the court to exercise general or specific jurisdiction over the OFI Funds. Therefore, he must make a "stronger showing of reasonableness." *Galerie Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 628 (S.D.N.Y. 2003) (quoting *Aerogroup Intern., Inc. v. Marlboro Footworks, Ltd.*, 956 F. Supp. 427, 442 (S.D.N.Y. 1996) ("Where . . . there is a weak showing of minimum contacts, there must be a stronger showing of reasonableness.")). Weighing these factors demonstrates that it would be unreasonable for this Court to exercise jurisdiction over the OFI Funds.

The Trustee here seeks to rely on the most incidental of contacts to establish jurisdiction. Even if those contacts are deemed sufficient, which they should not be, the Trustee would therefore need to make a stronger showing that the exercise of jurisdiction would be reasonable. Yet here, each of the factors that the Court must assess in weighing reasonableness weigh against jurisdiction. The burden on the OFI Funds in litigating here is high. The OFI Funds are not legal entities and have no officers or employees. Lecuyer Dec., ¶ 15; Grimaud Dec., ¶ 7. The OFI Funds have no presence in the United States. Grimaud Dec., ¶ 12. In addition, each and every witness and document related to the transactions at issue are located outside of the

United States.  Grimaud Dec., ¶¶ 13, 14. Furthermore, the Trustee cannot show that New York is more reasonable than other available fora, including France.  Because the alleged contacts are insignificant and all of the reasonableness factors weigh against jurisdiction, the Court should dismiss the claim against the OFI Funds.

Defendants' contacts with the forum here either do not satisfy the minimum contacts standard or barely satisfy that standard.  Courts have held that even where a defendants' contacts with the forum "barely satisf[y] the minimum contacts standard," defendants should be dismissed when "a majority of the reasonableness factors weigh against the exercise of jurisdiction." *Rocky Mountain Chocolate Factory v. Arellano*, No. 17-cv-0582, 2017 WL 4697503, at *11 (D. Colo. Oct. 19, 2017) (citation omitted); *see also Benton v. Cameco Corp.*, 375 F.3d 1070, 1080 (10th Cir. 2004) (The defendant's "contacts with [the forum] were quite limited, barely satisfying the minimum contacts standard. As a result, [the defendant] need not make a particularly strong showing in order to defeat jurisdiction under this reasonableness inquiry… Because the majority of the... reasonableness factors weigh in [the defendant's] favor, ... exercise of personal jurisdiction over [the defendant]... would offend traditional notions of fair play and substantial justice."); *Manko Window Systems, Inc. v. Prestik*, No. 16-cv-2818, 2017 WL 4355580, at *9 (D. Kan. Sept. 29, 2017) ("[B]ecause [the defendant's] contacts with [the forum] are weak and because the reasonableness factors discussed above counsel against the exercise of personal jurisdiction, the Court grants Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2).").

Based upon the foregoing, exercising personal jurisdiction over OFI Funds under these circumstances is unreasonable and does not comport with due process.

Accordingly, the Court should dismiss the Trustee's claims against the OFI Funds for lack of personal jurisdiction.

### POINT III:  THE COMPLAINT SHOULD BE DISMISSED BASED ON THE APPLICATION OF 11 U.S.C. § 546(e)

The Complaint filed by the Trustee is barred by the statutory safeharbor set forth in section 546(e) of the Bankruptcy Code because all of the Fairfield Sentry Subsequent Transfers to the Defendants were "covered payments" as settlement payments and payments made in connection with securities contracts.  Furthermore, the Fairfield Sentry Initial Transfers were payment made by a stockbroker (here, BLMIS), to financial institutions (Fairfield Sentry), for the benefit of financial institutions, including SGBT. Section 546(e) prevents the Trustee from avoiding the transfers made to the OFI Funds as a matter of law, because (i) section 546(e) applies to both initial and subsequent transfers alleged by the Trustee; (ii) where section 546(e) applies to mediate transfers, it also bars recovery by the Trustee of any subsequent transfer pursuant to section 550 of the Bankruptcy Code; (iii) subsequent transferees may invoke section 546(e) even if the initial or mediate transferee did not invoke it; and (iv) the Trustee has not alleged that the OFI Funds had actual knowledge of the BLMIS fraud.

Section 546(e) of the Bankruptcy Code states:

> Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title [11 USCS §§ 544, 545, 547, 548(a)(1)(B), and 548(b)], the trustee may not avoid a transfer that is a margin payment, as defined in section 101, 741, or 761 of this title [11 USCS § 101, 741, or 761], or settlement payment, as defined in section 101 or 741 of this title [11 USCS § 101 or 741], made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, or that is a transfer made by or to (or for the

> benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, in connection with a securities contract, as defined in section 741(7) [11 USCS § 741(7)], commodity contract, as defined in section 761(4) [11 USCS § 761(4)], or forward contract, that is made before the commencement of the case, except under section 548(a)(1)(A) of this title [11 USCS § 548(a)(1)(A)].

11 U.S.C. § 546(e) (emphasis added).[2]

In *SIPC. v. Bernard L. Madoff Inv. Sec., LLC (In re Madoff Sec.)*, No. 12-mc-00115 (JSR), 2013 WL 1609154, at *2 (S.D.N.Y. April 15, 2013), the District Court reiterated its rulings in *Picard v. Katz*, 462 B.R. 447 (S.D.N.Y. 2011) and *Picard v. Greiff*, 476 B.R. 715 (S.D.N.Y. 2012) that the transfers at issue in those cases were "made by or to (or for the benefit of) a . . . stockbroker, in connection with a securities contract" and that "Madoff Securities qualified as a stockbroker" within the meaning of section 546(e).    The District Court also held in *Katz* and *Greiff* that "'the account agreements between Madoff Securities and the defendants clearly qualify as securities contracts' under section 741(7) of the Bankruptcy Code . . ."  *In re Madoff Sec.*, 2013 WL 1609154, at *2.  Accordingly, the District Court found in *Katz* and *Greiff* that the payments made by Madoff Securities to its customers were "transfers 'made by . . . a stockbroker . . . in connection with a securities contract'" as required by section 546(e).

---

[2] Under 11 U.S.C. § 548(a)(1)(A), a trustee may avoid transfers made within two years before the petition date (here, December 11, 2008 (*see* Complaint ¶¶ 11, 20)), if the debtor made such transfer with actual intent to hinder, delay or defraud.  Because of the Ponzi scheme presumption and best actual intent is generally a factual issue, Defendant, at this stage, does not seek dismissal under Section 546(e) of claims based on initial transfers made within the two years prior to the petition date (the "Two Year Transfers").  However, in a recent concurring opinion, Judge Menashi of the United States Court of Appeals for the Second Circuit cast doubt on the validity of the presumption, *see In re Bernard L. Madoff Inv. Sec. LLC*, 12 F.4th 171, 201-04 (2d Cir. 2021) (Menashi, J., concurring), and there is currently a petition for a direct appeal of that issue pending before the Second Circuit. *See Picard v. ABN Amro Bank (Ireland Ltd.) (f/k/a Fortis Prime Fund Solutions Bank (Ireland) Ltd.) (n/k/a ABN Amro Retained Custodial Services (Ireland) Limited)*, No. 20-cv-1898 (2d Cir. Oct. 1, 2021) Dkt. No. 50.  Accordingly, Defendants reserve the right to challenge the avoidability of the Two Year Transfers should this action proceed beyond the motion to dismiss stage.

*Id.*  Accordingly, in *Katz* and *Greiff*, the District Court held that section 546(e) "precludes the trustee from bringing any action to recover from any of Madoff's customers any of the monies paid by Madoff Securities to those customers except in cases of actual fraud." *Id.*  The District Court alternatively found in *Greiff* that "'the defendants' withdrawals from their accounts constituted 'settlement payments' from a stockbroker and therefore fall within the coverage of § 546(e) for that independent reason.'" *Greiff*, 476 B.R. at 720.

The Court applied the holdings in *Katz* and *Greiff* to subsequent transferees (i.e. those who received payments from initial transferees, including investors in so-called 'feeder funds' that held customer accounts with Madoff Securities).  The District Court held that on a motion to dismiss, "if the Trustee sufficiently alleges that the transferee from whom he seeks to recover a fraudulent transfer knew of Madoff Securities' fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor."  2013 WL 1609154, at *7.  The Trustee has not alleged that the OFI Funds, as transferees, knew of the Madoff Securities' fraud.

In this case, the Trustee alleges in the Complaint that "initial transferee Fairfield Sentry Limited ('Fairfield Sentry') maintained customer accounts at BLMIS and was one of BLMIS' largest feeder funds."  (Complaint ¶ 4).  The Trustee alleges that Fairfield Sentry entered into account agreements with BLMIS to open its accounts.  (Complaint, Ex. A, ¶ 33).  The Trustee alleges that the Fairfield Sentry Initial Transfers were made by BLMIS to Fairfield Sentry and that certain of the Fairfield Sentry Subsequent Transfers identified in Exhibit E to the Complaint were transferred to, or for the benefit of, among other parties, SGBT and ultimately the OFI Funds.  (Complaint ¶¶ 69 - 73).

20

The Trustee also alleges that the OFI Funds and SGBT received subsequent transfers from Fairfield Sentry in the name of "SGBT Lux/Oval Alpha Palmares", "SGBT Lux/Palmares Europlus", and "SGBT Lux/UMR."   (Complaint ¶¶ 22, 23, 24).

Count One of the Complaint is the only count brought against the OFI Funds. The Trustee alleges in Count One that the Fairfield Sentry Initial Transfers are avoidable and recoverable and that, as a result, the Fairfield Sentry Subsequent Transfers are recoverable under sections 550(a) and 551 of the Bankruptcy Code. (Complaint ¶¶ 88, 89).

However, even if the Trustee could show that the Fairfield Sentry Initial Transfers were avoidable pursuant to section 550(a) and 551 of the Bankruptcy Code, the OFI Funds are still "entitled to raise a section 546(e) defense against recovery of those funds" despite the fact that Fairfield Sentry settled with the Trustee.  *See Picard v. Fairfield Inv. Fund Ltd.* (SIPC v. Bernard L. Madoff Inv. Sec. LLC), No. 08-cv-01789, 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021) (Morris, C.J.) ("Where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here . . . , the subsequent transferee is nonetheless entitled to raise a § 546(e) defense against recovery of those funds."); *see also In re Madoff Sec.*, 2013 WL 1609154, at *7.

### A.  THE FAIRFIELD SENTRY INITIAL TRANSFERS WERE MADE BY, TO OR FOR THE BENEFIT OF, A COVERED ENTITY

The Fairfield Initial Transfers were made by, to, or for the benefit of, an entity covered by section 546(e) for three independently sufficient reasons, namely, because the alleged initial transfers were made (1) by a stockbroker, (2) to a financial institution, and (3) allegedly for the benefit of another financial institution.

21

1.   **The Fairfield Sentry Initial Transfers Were Made by a Stockbroker**

In this case, the Fairfield Sentry Initial Transfers were made by or to (or for the

benefit of) a stockbroker, BLMIS, in connection with a securities contract within the

meaning of section 546(e). The Code defines "stockbroker" to include entities "engaged

in the business of effecting transactions in securities."  11 U.S.C. § 101(53A)(B).  As the

District Court found, BLMIS "qualifies as a stockbroker by virtue of the trading

conducted by its market making and proprietary trading divisions."  *Sec. Inv. Prot. Corp.*

*v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 719 (S.D.N.Y. 2012) (citation

omitted), *aff'd sub nom. Fishman*, 773 F.3d at 417 ("It is not disputed [by the Trustee]

that BLMIS was a 'stockbroker' for the purposes of § 546(e).").

2.   **The Fairfield Sentry Initial Transfers Were Made to a Financial Institution and for the benefit of a Financial Institution**

Fairfield Sentry, the initial transferee, is also a "financial institution" under the

Code, which defines "financial institution" to include both "an entity that is a commercial

or savings bank," and the bank's customer "when [the bank] entity is acting as agent or

custodian for a customer … in connection with a securities contract."  11 U.S.C.

§ 101(22)(A).  In *Fairfield III*, this Court held that the Fairfield Funds were "financial

institutions" because they were customers of a financial institution, Citco Bank

Nederland N.V. Dublin Branch ("Citco Bank"), which acted as their agent in connection

with the securities contracts pursuant to which the redemption payments were made. *In*

*re Fairfield Sentry Ltd.*, No. 10-cv-13164, 2020 WL 7345988, at *7 (Bankr. S.D.N.Y.

Dec. 14, 2020) ("*Fairfield III*").

14005271.2 4/28/2022

This Court's holding in *Fairfield III* is equally applicable here and, indeed, is binding on the Trustee because he was in privity with the Fairfield Liquidators, who were litigating that action partly for the Trustee's benefit.[3]

Additionally, under the Trustee's theory, the initial transfers were made "for the benefit of" a financial institution, namely SGBT (Complaint ¶ 66). SGBT is alleged to be a subsidiary of Société Générale S.A., one of the largest foreign banking organizations in the United States. (Complaint ¶ 36). As such, this Court can determine that SGBT is a "financial institution" as defined by 11 U.S.C. § 101(22)(A) on the face of the Complaint. *In re Madoff Sec.*, 2013 WL 1609154, at *8. As Judge Rakoff explained, where an investment fund withdraws funds because a financial institution seeks redemption of its investment in the fund, "that situation appears to fit within the plain terms of Section 546(e)". *Id.* at *9.

## B. THE FAIRFIELD SENTRY INITIAL TRANSFERS WERE SETTLEMENT PAYMENTS AND MADE IN CONNECTION WITH A SECURITIES CONTRACT

Additionally, the Fairfield Sentry Initial Transfers constitute a "settlement payment . . . made by or to (or for the benefit of a . . . financial institution [or] financial participant . . . in connection with a securities contract." 11 U.S.C. § 546(e). Here, the Trustee alleges that the Fairfield Sentry Initial Transfers were made in connection with the

---

[3] Under the Fairfield Settlement, the Fairfield Liquidators will pay the Trustee 15% of net recoveries from their claims against redeemers from the Fairfield Funds until the Trustee has been paid $1.924 billion. Fairfield Settlement, Fairfield Action, Dkt. No. 69-2 ¶¶ 4, 11. Further, "[t]he Trustee and the Liquidators agree and stipulate that a joint interest exists between them with respect to the Sharing Claims." *Id.* at ¶ 14. This agreed joint interest in pursuing alleged BLMIS customer property is a "preexisting 'substantive legal relationship,'" focused on a successive or concurrent interest in property, of a kind that gives rise to nonparty issue preclusion in *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008). As such, and because the issue of Sentry's status as a "financial institution" status was "actually litigated" and "essential" to the final judgments dismissing numerous such actions on grounds of the Section 546(e) safe harbor, this Court's finding in *Fairfield III* that Sentry was a "financial institution" in connection with redemption payments from Sentry to its subscribers is binding on the Trustee. *See New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001) (stating requirements for issue preclusion).

alleged subscription agreements between defendants and Fairfield Sentry (Complaint ¶¶ 22, 23, 24). In analogous circumstances, the Second Circuit has concluded that section 546(e) shields transfers from BLMIS to its account holders from the Trustee's avoidance powers. *Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411, 415 (2d Cir. 2014). The *Fishman* court concluded that the documents governing BLMIS customers' accounts constituted securities contracts, and that the payments BLMIS made to those customers were made "in connection with" those contracts, and also constituted "settlement payments," *id.* at 418-23. Either of those findings suffice for the OFI Funds to invoke the section 546(e) safe harbor with respect to the Fairfield Sentry Initial Transfers. The *Fishman* court rejected the Trustee's argument that the safe harbor did not apply because Madoff did not actually carry out the promised securities transactions. *Id.* at 419-20.

The same reasoning applies to the transfers that the Trustee alleges BLMIS made to Sentry to pay investors' redemption requests. Those alleged transfers were clearly "in connection with" the securities contracts Sentry had entered into with BLMIS, *see Fishman*, 773 F.3d at 418-23.

The definition of "securities contract" includes "a contract for the purchase, sale, or loan of a security," 11 U.S.C. § 741(7)(A)(i), and, as relevant here, "includes . . . redemption requests." *In re Madoff Sec.*, 2013 WL 1609154 at *8. Further, all section 546(e) requires is that the transfer be "in connection with *a* securities contract," even if not the securities contract between the initial transferor and transferee. *See Fishman*, 773 F.3d at 422 ("section 546(e) sets a low bar for the required relationship between the securities contract and the transfer sought to be avoided"; "a transfer can be connected

to, and can be made in relation to, multiple documents or purposes simultaneously"); *In re Madoff Sec.*, 2013 WL 1609154, at *9 (under the safe harbor, transfer from debtor to initial transferee may qualify as having been made "in connection with a securities contract" between initial transferee and subsequent transferee).

Implicit in the Trustee's subsequent transfer claim is the allegation that the Fairfield Sentry Subsequent Transfers were transferred from BLMIS to Fairfield Sentry to allow Fairfield Sentry to then satisfy Defendants' redemption requests. This assertion necessarily involves the allegation of a connection between the initial transfer from BLMIS to Fairfield Sentry and Fairfield Sentry's Articles of Association that authorized the redemptions from Fairfield Sentry. Accordingly, because the section 546(e) safe harbor applies to the Fairfield Sentry Initial Transfer, it also bars recovery of the subsequent transfer to Defendants.

Finally, there are no allegations in the Complaint that any of the OFI Funds had actual knowledge of the Madoff Securities' fraud. In *SIPC v. Bernard L. Madoff Investment Securities LLC*, 516 B.R. 18, 23 (S.D.N.Y. 2014), Judge Rakoff determined that "in the context of this litigation and with respect to both section 548(c) and section 550(b)(1), 'good faith' means that the transferee neither had actual knowledge of the Madoff Securities fraud nor willfully blinded himself to circumstances indicating a high probability of such fraud." Judge Rakoff also held that "in a SIPA proceeding such as this, a defendant may succeed on a motion to dismiss by showing that the complaint does not plausibly allege that the defendant did not act in good faith." *Id.*, at 24. "Without particularized allegations that the defendants here either knew of Madoff Securities' fraud or willfully blinded themselves to it, the Trustee's complaints here

25

cannot make out a plausible claim that he is entitled to recovery the monies defendants received from their securities accounts." *Id.*

In the Complaint, the Trustee makes no allegations, let alone particularized allegations, that the OFI Funds knew of or were willfully blind to the fraud. Accordingly, the OFI Funds are entitled to the protections of section 546(e) and the Complaint against them must be dismissed.

## **CONCLUSION**

For all of the foregoing reasons, the OFI Funds' motion to dismiss should be granted.

Dated: April 29, 2022

BOND, SCHOENECK & KING, PLLC

BY:    *s/Brian J. Butler*
      Brian J. Butler
      Sara C. Temes
One Lincoln Center
Syracuse, New York  13202
Telephone:  315-218-8000
Facsimile:  315-218-8100
Email:  bbutler@bsk.com
Email:  temess@bsk.com

*Attorneys for Defendants Ofi MGA Alpha Palmares (f/k/a Oval Alpha Palmares) Oval Palmares Europlus and UMR Select Alternatif*