Robert J. Lack (rlack@fklaw.com)
Jeffrey C. Fourmaux (jfourmaux@fklaw.com)
Dielai Yang (dyang@fklaw.com)
FRIEDMAN KAPLAN SEILER & ADELMAN LLP
7 Times Square
New York, NY 10036-6516
Telephone: (212) 833-1100
Facsimile: (212) 833-1250

*Attorneys for Defendant Multi-Strategy Fund Limited*

**Hearing Date: May 18, 2022**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>              Plaintiff-Applicant,<br><br>      v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>              Defendant. | No. 08-01789 (CGM)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>              Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff,<br><br>              Plaintiff,<br><br>      v.<br><br>MULTI-STRATEGY FUND LIMITED,<br><br>              Defendant. | Adv. Pro. No. 12-01205 (CGM) |

**DEFENDANT MULTI-STRATEGY FUND LIMITED'S REPLY MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ........................................................................................ ii

ARGUMENT ............................................................................................................1

I.      WHERE, AS HERE, SECTION 546(e) BY ITS TERMS COVERS AN INITIAL
TRANSFER, AN INNOCENT SUBSEQUENT TRANSFEREE MAY INVOKE
THE SAFE HARBOR EVEN IF THE INITIAL TRANSFEREE MAY NOT ...................1

II.     THE TRUSTEE HAS NOT JUSTIFIED HIS FAILURE TO PLAUSIBLY
ALLEGE THAT MULTI-STRATEGY RECEIVED CUSTOMER PROPERTY ............6

     A.    The Trustee Fails to Meet His Pleading Burden ......................................7

     B.    Tracing Analysis Is Unnecessary Where the Pleadings Negate
Commingling ...........................................................................................9

     C.    The Trustee Has All the Records He Needs ...........................................11

III.    THE TRUSTEE HAS FAILED TO ESTABLISH PERSONAL JURISDICTION .........11

     A.    The Trustee's Knowledge-and-Intent Theory Does Not Suffice to Impute
Sentry's or BLMIS's Contacts to Multi-Strategy, and *BLI* Did Not
Establish Otherwise ...............................................................................11

     B.    Communicating from Canada to New York, and Meeting in New York
Once, After Negotiating and Executing an Agreement Outside the United
States, Do Not Support a Prima Facie Case for Personal Jurisdiction ...................15

     C.    The Subscription Agreements Do Not Support Jurisdiction .................................17

     D.    That Sentry and Multi-Strategy Were Customers of Banks That Used
Correspondent Accounts in New York Does Not Support Jurisdiction ...............18

     E.    The Trustee's Claim to Recover Multi-Strategy's Redemption from Sentry
Does Not "Arise from or Relate to" Any Contacts with Kingate .........................20

CONCLUSION.....................................................................................................20

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
    599 B.R. 730 (Bankr. S.D.N.Y. 2019) ...................................................................7

*Al Rushaid v. Pictet & Cie*,
    28 N.Y.3d 316 (2016) ...............................................................................................18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................8

*Bartlett v. Société Générale de Banque au Liban SAL*,
    2020 WL 7089448 (E.D.N.Y. Nov. 25, 2020) .........................................................19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................8

*Berdeaux v. OneCoin Ltd.*,
    2021 WL 4267693 (S.D.N.Y. Sept. 20, 2021) ...................................................18, 19

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) .................................................................................................17

*Burlington Indus., Inc. v. Salem Int'l Co.*,
    645 F. Supp. 872 (S.D.N.Y. 1986) ..........................................................................15

*Chase Manhattan Bank v. Banque Generale du Commerce*,
    1997 WL 266968 (S.D.N.Y. May 20, 1997) ...........................................................17

*Druck Corp. v. Macro Fund (U.S.) Ltd.*,
    102 F. App'x 192 (2d Cir. 2004) .............................................................................15

*Ehrlich-Bober & Co. v. Univ. of Houston*,
    49 N.Y.2d 574 (1980) ..............................................................................................19

*Eldesouky v. Aziz*,
    2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014) .........................................................19

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
    397 F. Supp. 3d 323 (S.D.N.Y. 2019) .....................................................................19

*Fairfield Sentry Ltd. v. Migani*,
    [2014] UKPC 9 ........................................................................................................17

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
    2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ...............................................17

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021) .............................................................................................16

*Ge Dandong v. Pinnacle Performance Ltd.*,
    966 F. Supp. 2d 374 (S.D.N.Y. 2013).....................................................................19

*Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*,
    2014 WL 47774 (Bankr. S.D.N.Y. Jan. 3, 2014).....................................................10

*Hau Yin To v. HSBC Holdings PLC*,
    2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) .............................................................16

*Hill v. HSBC Bank plc*,
    207 F. Supp. 3d 333 (S.D.N.Y. 2016).....................................................................16

*HSH Nordbank N.Y. Branch v. Street*,
    2012 WL 2921875 (S.D.N.Y. July 18, 2012) ..........................................................19

*In re Tribune Co. Fraudulent Conveyance Litig.*,
    946 F.3d 66 (2d Cir. 2019).......................................................................................13

*In re UBS AG Sec. Litig.*,
    2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City of Pontiac
    Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014) .........1

*Kelley v. Westford Special Situations Master Fund, L.P.*,
    2020 WL 3077151 (D. Minn. June 10, 2020)..........................................................10

*Licci v. Lebanese Canadian Bank, SAL*,
    20 N.Y.3d 327 (2012) ..............................................................................................18

*McKee Electric Co. v. Rauland-Borg Corp.*,
    20 N.Y.2d 377 (1967) ..............................................................................................16

*Motors Liquidation Co. Avoidance Action Tr. v. JPMorgan Chase Bank, N.A. (In
    re Motors Liquidation Co.)*,
    565 B.R. 275 (Bankr. S.D.N.Y. 2017)...............................................................17, 19

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
    549 B.R. 56 (S.D.N.Y. 2016)...................................................................................18

*Picard v. BNP Paribas S.A. (In re Madoff)*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018)............................................................ *passim*

iii

*Picard v. Bureau of Lab. Ins. (In re Madoff)*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) ............................................................................ *passim*

*Picard v. Charles Ellerin Rev. Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012) ..........................................................8, 10

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    454 B.R. 317 (Bankr. S.D.N.Y. 2011) ....................................................................................7

*Picard v. Estate of Igoin (In re Bernard L. Madoff Inv. Sec. LLC)*,
    525 B.R. 871 (Bankr. S.D.N.Y. 2015) ..................................................................................19

*Picard v. Fairfield Inv. Fund Ltd. (In re Madoff)*,
    2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ......................................................4, 5, 6

*Picard v. Mayer (In re Bernard L. Madoff Inv. Sec. LLC)*,
    2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021) ..............................................................8

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
    515 B.R. 117 (Bankr. S.D.N.Y. 2014) ..............................................................................8, 10

*Picard v. Merkin (In re Madoff)*,
    581 B.R. 370 (Bankr. S.D.N.Y. 2017) ....................................................................................9

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*,
    542 B.R. 100 (Bankr. S.D.N.Y. 2015) ....................................................................................8

*Roxx Allison Ltd. v. Jewelers Inc.*,
    385 F. Supp. 3d 377 (S.D.N.Y. 2019) ..................................................................................15

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib. Inc.)*,
    379 B.R. 5 (Bankr. E.D.N.Y. 2007) ........................................................................................7

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
    2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ................................................................. *passim*

*SPV Osus Ltd. v. UBS AG*,
    114 F. Supp. 3d 161 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018) ...........................16

*Steinberg v. A Analyst Ltd.*,
    2009 WL 806780 (S.D. Fla. Mar. 26, 2009) ........................................................................18

*SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*,
    620 B.R. 505 (Bankr. S.D.N.Y. 2020) ................................................................................5, 6

*United States v. Sepúlveda-Hernández*,
    752 F.3d 22 (1st Cir. 2014) ..................................................................................................10

iv

*Universal Trading & Inv. Co. v. Tymoshenko*,
    2012 WL 6186471 (S.D.N.Y. Dec. 12, 2012) .........................................................................19

*Universitas Educ., LLC v. Nova Grp., Inc.*,
    2013 WL 6123104 (S.D.N.Y. Nov. 20, 2013) ........................................................................10

*Walden v. Fiore*,
    571 U.S. 277 (2014)..................................................................................................................14

**Statutes**

11 U.S.C. § 546(e) .......................................................................................................... *passim*

28 U.S.C. § 1605(a)(2)......................................................................................................20

CPLR § 302(a)(1) ........................................................................................................16, 17

3660112.1

Defendant Multi-Strategy Fund Limited ("Multi-Strategy") respectfully submits this reply memorandum in support of its motion to dismiss the Amended Complaint ("Am. Compl.") of plaintiff Irving H. Picard, Trustee (the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the Chapter 7 Estate of Bernard L. Madoff.

## ARGUMENT

I.    **WHERE, AS HERE, SECTION 546(e) BY ITS TERMS COVERS AN INITIAL TRANSFER, AN INNOCENT SUBSEQUENT TRANSFEREE MAY INVOKE THE SAFE HARBOR EVEN IF THE INITIAL TRANSFEREE MAY NOT**

The Trustee's Opposition does not dispute that BLMIS was a stockbroker, that Sentry was a financial institution, or that the alleged initial transfer from BLMIS to Sentry was a settlement payment or a transfer in connection with a securities contract between Sentry and its investors. Trustee's Mem. in Opp. to Mot. ("Opp.," No. 12-1205, ECF 108) at 33-40. Thus, he has conceded those points, *see In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014), and may not contest that Section 546(e) applies by its terms to Sentry's alleged subsequent transfers of BLMIS's initial transfers made more than two years before the bankruptcy, including the March 15, 2005 transfer from Sentry to Multi-Strategy. Moreover, the Trustee does not dispute that Multi-Strategy did not have actual knowledge of Madoff's fraud.

The Trustee argues only that under Judge Rakoff's rulings in *SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad II*"), "a subsequent transferee cannot assert the protections of Section 546(e) where the Trustee adequately pleads the initial transferee's actual knowledge." Opp. at 38. As the Trustee would have it, Sentry's alleged actual knowledge of Madoff's fraud bars not only Sentry,

but also subsequent transferees, from invoking the safe harbor for initial transfers made more than two years before bankruptcy.[1]

To the contrary, *Cohmad II* directly supports the applicability of the safe harbor to innocent subsequent transferees and requires that Multi-Strategy's motion to dismiss be granted. In a ruling that he directed be applied to a large number of adversary proceedings, *see* 2013 WL 1609154, at *10,[2] and which therefore was not "dicta," *contra* Opp. at 37, Judge Rakoff held that the relevant "actual knowledge" is that of the transferee from which the Trustee seeks recovery:

> (1) Where the Trustee has sought to avoid transfers to an *initial transferee*, the avoidance of which would otherwise be barred by Section 546(e) . . . , the *initial transferee* will not be able to prevail on a motion to dismiss some or all of the Trustee's avoidance claims simply on the basis of the Section 546(e) "safe harbor" *if* the Trustee has alleged that the *initial transferee* had actual knowledge of Madoff Securities' fraud; and

> (2) Where the Trustee has sought to recover transfers made to a *subsequent transferee*, the avoidance of which would otherwise be barred by Section 546(e) as to the initial transferee, the *subsequent transferee* will not be able to prevail on a motion to dismiss some or all of the Trustee's avoidance claims simply on the basis of the Section 546(e) "safe harbor" *if* the Trustee has alleged that the *subsequent transferee* had actual knowledge of Madoff Securities' fraud.

*Cohmad II*, 2013 WL 1609154, at *1 (emphasis added except for "if").

While paragraph (2) above addressed whether a subsequent transferee would be precluded from asserting the safe harbor where the *subsequent transferee* had

---

[1] The Trustee devotes most of his brief on Section 546(e) to a straw man argument that the safe harbor does not apply directly to subsequent transfers, and that an alleged subsequent transferee can invoke Section 546(e) only to the extent the safe harbor applies to the alleged initial transfer. Multi-Strategy has not contended otherwise and bases its defense on the statute's applicability to the alleged initial transfer from BLMIS to Sentry. The real issue on this motion is not whether the safe harbor applies to the initial *transfer* (it clearly does), but which *transferees* can invoke it—whether the actual knowledge of the initial transferee can be used to strip the safe harbor's protection from a subsequent transferee that does not have actual knowledge.

[2] *See* Amended Notice of Motion to Dismiss, *Cohmad II*, No. 12-MC-115, ECF 289 (S.D.N.Y. Aug. 10, 2012) (listing proceedings involved in *Cohmad II*).

2

actual knowledge of Madoff's fraud, it pointedly did *not* preclude a subsequent transferee

from asserting the safe harbor if the *initial transferee* had actual knowledge of Madoff's

fraud.  The reason for this can be seen in Judge Rakoff's explanation of his ruling:

> [I]f the allegations adequately allege that a *defendant* had actual knowledge of
> Madoff's scheme, *such a transferee stands in a different posture from an innocent
> transferee, even as concerns the application of Section 546(e)*. . . . [T]he purpose
> of this section is "minimiz[ing] the displacement caused in the commodities and
> securities markets in the event of a major bankruptcy affecting those industries."
> . . .  In the context of Madoff Securities' fraud, that goal is best achieved by
> protecting the reasonable expectations of investors who believed they were
> signing a securities contract; but a transferee who had actual knowledge of the
> Madoff "Ponzi" scheme did not have any such expectations, but was simply
> obtaining moneys while he could.  Neither law nor equity permits such a person
> to profit from a safe harbor intended to promote the legitimate workings of the
> securities markets and the reasonable expectations of legitimate investors.
>
> * * *
>
> [T]o the extent that an innocent customer transferred funds to a *subsequent
> transferee who had actual knowledge of Madoff Securities' fraud*, that subsequent
> transferee cannot prevail on a motion to dismiss on the basis of Section 546(e)'s
> safe harbor.  Again, this follows from the general principles enunciated earlier in
> this Opinion.  A defendant cannot be permitted to in effect launder what he or she
> knows to be fraudulently transferred funds through a nominal third party and still
> obtain the protections of Section 546(e). . . .  In sum, if the Trustee sufficiently
> alleges that *the transferee from whom he seeks to recover a fraudulent transfer*
> knew of Madoff Securities' fraud, *that transferee* cannot claim the protections of
> Section 546(e)'s safe harbor.

*Id*. at *4, 7 (emphasis added; citations omitted).

In these passages, Judge Rakoff announced an exception to the safe harbor

for subsequent transferees parallel to (not greater than) the one he announced for initial

transferees, precluding Section 546(e) from being invoked in a situation in which it

otherwise would apply if doing so would benefit a defendant (whether an initial or

subsequent transferee) with actual knowledge that the funds it received had been

fraudulently transferred.  The Trustee concedes this when he says that "the point of the

actual knowledge exception . . . is to restrict transferees with actual knowledge from

hiding behind the safe harbor." Opp. at 38-39.

   *Cohmad II* established that when an initial transferee has actual knowledge

of the fraud, and thus knows there is no bona fide settlement payment or securities

contract, it cannot invoke the safe harbor to protect the initial transfer. Similarly, when a

subsequent transferee has actual knowledge of the fraud, it cannot invoke the safe harbor

that would otherwise apply to the initial transfer, even if the initial transferee was

"innocent," because the subsequent transferee knows there is no bona fide settlement

payment or securities contract, and allowing the culpable subsequent transferee to invoke

the safe harbor would permit it to "launder . . . fraudulently transferred funds through a

nominal third party," i.e., the initial transferee. But where the subsequent transferee lacks

actual knowledge of the fraud, it has a "reasonable expectation" that it is receiving a

settlement payment pursuant to a securities contract, and that reasonable expectation

should be protected by the safe harbor that Congress enacted.

   In *Picard v. Fairfield Investment Fund Ltd. (In re Madoff)*, 2021 WL

3477479 (Bankr. S.D.N.Y. Aug. 6, 2021), this Court ruled consistently with the foregoing

interpretation of Judge Rakoff's holdings. It began by quoting *Cohmad II*'s statement

that "if the Trustee sufficiently alleges that the transferee from whom he seeks to recover

a fraudulent transfer knew of Madoff Securities' fraud, *that transferee* cannot claim the

protections of Section 546(e)'s safe harbor," *id*. at *4 (quoting *Cohmad II*, 2013 WL

1609154, at *7) (emphasis added). This Court then dismissed the Trustee's claim against

Corina Noel Piedrahita for subsequent transfers she received from various Fairfield

entities[3] because the Trustee "failed to plead individualized factual allegations demonstrating that [she] had independent actual knowledge of the BLMIS fraud." *Fairfield Inv. Fund*, 2021 WL 3477479, at *6. The Court dismissed the subsequent transferee claim despite having earlier concluded that the complaint alleged that various initial transferees, including Sentry, had actual knowledge of Madoff's fraud. *Id*. at *4.[4] This Court's ruling in *Fairfield Investment Fund* thus compels rejection of the Trustee's misinterpretation of *Cohmad II* and dismissal of his claim against Multi-Strategy.[5]

The Trustee also cites *Picard v. BNP Paribas S.A. (In re Madoff)*, 594 B.R. 167 (Bankr. S.D.N.Y. 2018), and *SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*, 620 B.R. 505 (Bankr. S.D.N.Y. 2020), for support, Opp. at 38, but neither case discussed whether a subsequent transferee's invocation of Section 546(e) is barred by the initial transferee's actual knowledge. Instead, both cases focused on the same straw man argument raised by the Trustee here. *See BNP Paribas*, 594 B.R. at 197 ("the safe harbor is a defense to the avoidance of the *initial* transfer"); *SunEdison*, 620

---

[3] The Trustee's complaint against Corina Noel Piedrahita alleged that she had received subsequent transfers from, among others, Fairfield Greenwich Limited, which in turn had received subsequent transfers from Sentry. *See* Second Am. Compl. Exs. 12 & 23, *Fairfield Inv. Fund*, No. 09-1239, ECF 286-12, at 5 & ECF 286-23.

[4] The Court then addressed the actual knowledge of each subsequent transferee even after concluding that one or more of them, as agents of the Fairfield Funds, had actual knowledge that would be imputed to the Fairfield Funds as initial transferees. *Fairfield Inv. Fund*, 2021 WL 3477479, at *4-6. This would have been unnecessary had the actual knowledge of the initial transferee been determinative in denying use of the safe harbor by the subsequent transferees.

[5] Any suggestion (as the Trustee has made in another case) that this Court dismissed the subsequent transfer claim against Corina Noel Piedrahita because of the Trustee's failure to plead willful blindness and bad faith would be incorrect. In *Fairfield Investment Fund*, this Court stated that because it was not apparent on the face of the complaint that the defendants gave value, their good-faith defense could not be decided on a motion to dismiss. 2021 WL 3477479, at *9. Thus, the only basis on which this Court could have dismissed any part of the subsequent transfer claim against Ms. Piedrahita was Section 546(e).

5

B.R. at 514 ("the safe harbor defense only applies by its terms to the initial transfer");

note 1 *supra*. And to the extent *BNP Paribas* might be read to imply that an innocent

subsequent transferee cannot invoke the safe harbor, it is inconsistent both with

*Cohmad II* and this Court's decision in *Fairfield Investment Fund*.

The Trustee says our interpretation would "allow an initial transferee who

had knowledge of the fraud and was unable to satisfy a judgment (like Sentry) to place

fraudulently transferred funds with a subsequent transferee out of the reach of a trustee."

Opp. at 39. Such speculation is inapt. Sentry did not initiate the redemption; Multi-

Strategy did. And since Multi-Strategy is not alleged to have had actual knowledge of

the fraud, its dismissal is squarely in line with *Cohmad II* and *Fairfield Investment Fund*.

## II.   THE TRUSTEE HAS NOT JUSTIFIED HIS FAILURE TO PLAUSIBLY ALLEGE THAT MULTI-STRATEGY RECEIVED CUSTOMER PROPERTY

Multi-Strategy's moving brief ("Mov. Br.") demonstrated that the Trustee does

not plausibly allege that the purported subsequent transfer from Sentry to Multi-Strategy

contained BLMIS customer property and that the Trustee's own allegations render it impossible

that it did. Mov. Br. at 16-23. The Trustee's opposition simply waves off the fatal defect—

never bothering to dispute Multi-Strategy's point that based simply on the Trustee's allegations

in the Amended Complaint, prior Sentry distributions had exhausted all the BLMIS money at

Sentry prior to Multi-Strategy's redemption. This is not a matter of requiring "tracing" or a

"dollar-for-dollar accounting." Nor is the present issue one for expert opinion. Rather, whether

the Amended Complaint plausibly alleges that the transfer at issue contained customer property

is a *legal* question properly resolved on this motion to dismiss.

**A.      The Trustee Fails to Meet His Pleading Burden**

            The Trustee does not deny that he has failed to tie any of the thousands of alleged

initial transfers from BLMIS to Sentry to the alleged subsequent transfer to Multi-Strategy.

Instead, he argues he need not do so (Opp. at 27), but his own authorities fully support this

pleading requirement.  For example, in *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff

Inv. Sec. LLC)*, this Court held the subsequent transfers were sufficiently pled because "the

Trustee alleges that the amounts of Commissions specified by BLMIS on the Payment Schedules

*correspond* to the amounts paid by BLMIS to Cohmad and, subsequently, to the Cohmad

Representatives."  454 B.R. 317, 341 (Bankr. S.D.N.Y. 2011) ("*Cohmad I*") (emphasis added).

Inter alia, the complaint alleged commissions for eight Cohmad Representatives averaged

$214,722.03 per month, which corresponded exactly to monthly payments from BLMIS to

Cohmad of $214,722.03.  *See* First Am. Compl, Exs. 2, 4, *Picard v. Cohmad Sec. Corp.*, No. 09-

1305, ECF 82-2, at 4, 82-4, at 1.  The *Cohmad* complaint thus linked particular initial transfers to

particular subsequent transfers, in stark contrast to the Trustee's vague generalities here.

            Likewise, in *45 John Lofts, LLC v. Meridian Capital Group LLC (In re 45 John

Lofts, LLC)*, the complaint sufficiently tied initial to subsequent transfers where it alleged

payments totaling $29.4 million were deposited into an account and $29.4 million was

transferred out by the next business day.  599 B.R. 730, 736-37, 747 (Bankr. S.D.N.Y. 2019)

(citing *45 John Lofts* Compl. ¶¶ 60-69).  In *Silverman v. K.E.R.U. Realty Corp. (In re Allou

Distrib. Inc.)*, the linkage between the initial and subsequent transfers was expressly pleaded in

the complaint:  "The funds transferred by the Controlled Entities and Eurofactors . . . were

preceded by fraudulent transfers of funds from Allou *in amounts sufficient to cover the transfers*

by the Controlled Entities and Eurofactors."  379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007) (quoting

*Allou* Am. Compl. ¶¶ 53, 56; emphasis added); *id.* at 13 (noting initial and subsequent transfers

during 13-day period).  And in *Picard v. Merkin (In re Bernard L. Madoff Investment Securities LLC)*, "several subsequent transfers took place contemporaneously or shortly after an initial transfer . . . , *implying linkage*."  515 B.R. 117, 150 (Bankr. S.D.N.Y. 2014) ("*Merkin I*") (emphasis added).[6]

Thus, the cases cited by the Trustee as saying a plaintiff "need only allege sufficient facts to show the relevant pathways through which the funds were transferred," *e.g.*, *Ellerin*, 2012 WL 892514, at *3, do not (and cannot) relieve him of his obligation under *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57, 570 (2007), to plead a plausible linkage between the initial and subsequent transfers.  None of those cases upholds a pleading where the purported "pathway" is a dead-end, as is the case here where the Trustee has alleged that prior Sentry distributions had exhausted all the BLMIS money at Sentry prior to the defendant's redemption.

As such, the Trustee has not met the pleading standard set in *Iqbal*, *Twombly*, and *Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R. 100 (Bankr. S.D.N.Y. 2015), when he alleges only dates and amounts of multiple initial and alleged subsequent transfers without any connection between them.  *Shapiro*'s requirement that the Trustee "allege facts that support the inference that the funds at issue originated with the BLMIS" and "tie any initial transfer to any subsequent transfer or Subsequent Transferee," 542 B.R. at 119, is not a

---

[6] Similarly, in *Picard v. Charles Ellerin Rev. Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*, 2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012), the Trustee's submissions showed, for example, that a defendant trust issued defendant Janet Winters a $6,200 check just two weeks after it deposited $25,000 from BLMIS.  *Ellerin*, No. 10-5219, ECF 12-1, at 93-94; *id.*, ECF 1, Ex. B, at 1.  In *Picard v. Mayer (In re Bernard L. Madoff Inv. Sec. LLC)*, 2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021), the linkage was also clear:  on September 4, 2007, BLMIS transferred $50,000,000 to Legacy Capital; the next day, Legacy Capital transferred $50,000,000 to Montpellier; and two days after that, Montpellier transferred $30,647,210 to what became Kronos Group.  *Mayer* Compl. Ex. B, at 16; *id.* Exs. C, D, No. 20-1316, ECF 1-2, 1-3, 1-4.

requirement of dollar-for-dollar accounting or tracing individual dollar amounts, but the bare

minimum necessary to notify Multi-Strategy of the Trustee's claim so it can prepare its defense.

**B.**     **Tracing Analysis Is Unnecessary Where the Pleadings Negate Commingling**

The Trustee engages in misdirection when he argues that commingling of BLMIS

and non-BLMIS money at Sentry relieves him of the obligation to link initial and subsequent

transfers.  As made clear in our moving brief, the Trustee's own pleadings (*not* the Fairfield

Liquidators') establish there are long periods when there was *no commingling* because there was

*no customer property left at Sentry*—it had all been paid out previously.  Thus, the payment to

Multi-Strategy must have come from another source, not from commingled BLMIS funds.

For example, the Trustee alleges that on May 9, 2003, BLMIS transferred

$40 million to Sentry.  At the same time, the Trustee's allegations that redemption payments

were comprised entirely of customer property necessarily mean that this transfer was spent on

the $46.7 million in redemptions that he alleges Sentry paid between May 9 and May 20, 2003.

*See* Lack Decl. ¶¶ 8-9.  Then, on July 11, 2003, BLMIS transferred $55 million to Sentry, which

the Trustees' pleadings show was fully exhausted by the $92.4 million in redemptions Sentry

paid between then and July 16, 2003.  *See* id. ¶¶ 11-12.  And on July 22, 2003, BLMIS

transferred $25 million to Sentry, which the Trustee's pleadings show was spent on $42.8 million

Sentry paid out between then and September 18, 2003.  *See id*. ¶¶ 13-14.  After that, the Trustee

alleges that there were *no* transfers from BLMIS to Sentry prior to Multi-Strategy's redemption

on March 15, 2005.  *See* Am. Compl. Ex. B.  Thus, having used up all funds from BLMIS, there

could have been no commingling between September 18, 2003 and March 15, 2005.

Tracing is only an issue where funds are commingled.  *See Picard v. Merkin (In

re Madoff)*, 581 B.R. 370, 384-86 (Bankr. S.D.N.Y. 2017) ("*Merkin II*") (tracing necessary

where subsequent transfers originated from commingled accounts).  Because the Trustee's

9

allegations *negate* the existence of commingling (or customer property) for extensive time

periods, the Trustee's authorities for the proposition that commingling does not defeat tracing

(*see Kelley v. Westford Special Situations Master Fund, L.P.*, 2020 WL 3077151, at *4 (D.

Minn. June 10, 2020); *Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 WL 6123104, at *12

(S.D.N.Y. Nov. 20, 2013); *Ellerin*, 2012 WL 892514, at *2), or that claims may proceed even

though tracing may be difficult (*see Merkin I*, 515 B.R. at 152; *Gowan v. Amaranth Advisors

L.L.C. (In re Dreier LLP)*, 2014 WL 47774, at *15-16 (Bankr. S.D.N.Y. Jan. 3, 2014)), are

irrelevant.  The Trustee cannot plausibly allege BLMIS money was commingled at Sentry when

his own allegations demonstrate there was no BLMIS money left at Sentry at the relevant time.

       Contrary to the Trustee's assertion, there is no undisclosed expert methodology

here—only arithmetic.  The Trustee alleges that every single redemption payment from Sentry

during the relevant period was comprised entirely of customer property; therefore, each

redemption necessarily decreased the amount of customer property left at Sentry by the amount

redeemed.  All Multi-Strategy does is subtract those redemptions from the amounts received

from BLMIS—hardly the province of experts.  *See United States v. Sepúlveda-Hernández*, 752

F.3d 22, 34 (1st Cir. 2014) ("Simple arithmetic . . . is a paradigmatic example of the type of

everyday activity that goes on in the normal course of human existence.").  And while the

Trustee argues that Multi-Strategy's calculations involved "transfers from over 90 proceedings"

(Opp. at 30 n.9), Multi-Strategy's moving papers demonstrated that the implausibility of the

Trustee's customer property allegation could be shown by looking solely at the allegations in *this

proceeding*, including allegations incorporated by reference into the Amended Complaint.  *See*

Mov. Br. at 21-23; Lack Decl. ¶ 17 (before Multi-Strategy's redemption, the $120 million

10

received by Sentry from BLMIS was exhausted by more than $300 million transferred from Sentry to Fairfield Affiliated Entities).[7]

## C.    The Trustee Has All the Records He Needs

Seeking to excuse his failure to plead plausible linkage, the Trustee claims he "does not have all of Sentry's books and records, and discovery . . . against the FGG [Fairfield Greenwich Group] management defendants continues." Opp. at 28 n.7. But he does not say *what* he needs that he does not have, and this bald assertion is belied by his own pleadings detailing *thousands* of alleged transfers from Sentry. *See* Lack Decl. Exs. D, E. The Trustee is notably silent as to his contractual right to records and cooperation from the Fairfield Liquidators (*see* Mov. Br. at 18)—who admitted that as of 2010 they possessed most of the Fairfield Funds' books and records. *See* Decl. of Kenneth Krys, *In re Fairfield Sentry Ltd.*, No. 10-13164, ECF 40, ¶¶ 15, 19 (Bankr. S.D.N.Y. July 16, 2010). If the Trustee believed he was missing anything, all he had to do for over a decade was to invoke his rights against the Fairfield Liquidators and ask. The Trustee's claim against Multi-Strategy should be dismissed with prejudice.

## III.    THE TRUSTEE HAS FAILED TO ESTABLISH PERSONAL JURISDICTION

## A.    The Trustee's Knowledge-and-Intent Theory Does Not Suffice to Impute Sentry's or BLMIS's Contacts to Multi-Strategy, and *BLI* Did Not Establish Otherwise

Multi-Strategy bought shares in Sentry, and Sentry invested Multi-Strategy's money with BLMIS in New York. As his primary argument for jurisdiction, the Trustee asserts this amounts to Multi-Strategy itself investing with BLMIS in New York and thus purposefully

---

[7] The Trustee contends that it is of no moment that he alleges more customer property was transferred from Sentry than was ever transferred to it because he can recover from any combination of "transferees" up to the amount avoided. Opp. at 33. This ignores the fact that Multi-Strategy never became a transferee of customer property, because on March 15, 2005 there was no BLMIS money remaining at Sentry to transfer to it.

11

availing itself of the privilege of doing business in New York, because Multi-Strategy "knew and intended" that Sentry would transfer its funds "to BLMIS to be custodied and purportedly invested in U.S.-listed securities." Opp. at 5; *see also* Am. Compl. ¶ 100 ("By investing in this way, Defendant purposely undertook investment activities in the United States.").

Whether the Trustee uses the word or not, this is a theory of *imputation*. The Trustee asks the Court to treat *Sentry's* act of investing Multi-Strategy's money with BLMIS in New York as being Multi-Strategy's own act, and thereby to impute *Sentry's* New York contacts to Multi-Strategy. But neither the Trustee nor the *BLI* opinion he urges the Court to follow cited any precedent or authority for his "knowledge and intent" theory of imputation.

There was and is, however, a well-established legal framework, recognized by the Second Circuit and the New York Court of Appeals, and consistently applied by them and the lower courts for 40 years, which governs and disposes of the Trustee's theory.

Sentry was a corporation, and Multi-Strategy was one of its shareholders. The Second Circuit and New York Court of Appeals have taught for decades that the separate legal personalities of corporation and shareholder are to be respected for jurisdictional purposes. Under their rulings, set forth in Multi-Strategy's moving brief, the jurisdictional contacts of a corporation can be imputed to a shareholder only if the corporation is an alter ego or "mere department" of the shareholder, or if the corporation was acting as the agent of the shareholder when it transacted the relevant business in New York. There are well-established tests for alter ego or mere department jurisdiction, and for agency jurisdiction. And under those tests, neither alter ego nor agency is established merely by alleging knowledge and intent that the corporation would transact the business in New York on which specific jurisdiction is based. *See* Mov. Br. at 28-29 & cases cited therein.

12

As the Trustee himself observes in arguing that the contacts of Multi-Strategy's management company CDP Capital should be imputed to Multi-Strategy, agency is established where "the agent's actions were for the defendant's benefit and with the defendant's knowledge and consent, and the defendant exercised some control over the agent."  Opp. at 17.  Merely showing knowledge and intent—and benefit—is not sufficient; *control* is also required.  *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 79 (2d Cir. 2019).  Here, the Trustee fails to allege any control by Multi-Strategy over Sentry, and instead alleges that FGG controlled Sentry's investments with BLMIS.  Am. Compl. ¶ 62.

The Trustee urges this Court to follow *Picard v. Bureau of Labor Insurance (In re Madoff)*, 480 B.R. 501, 516-18 (Bankr. S.D.N.Y. 2012) ("*BLI*"), even though it is contrary to controlling Supreme Court, Second Circuit, and New York Court of Appeals precedent.  As Multi-Strategy observed (Mov. Br. at 32 & n.26), the controlling case law on imputation was never briefed by either party in *BLI*.  The briefing there made it appear as if the dispositive issue was whether the defendant's funds ended up in a BLMIS account "merely . . . as a result of happenstance or coincidence," *BLI*, 480 B.R. at 517, or whether the Trustee adequately alleged the defendant knew and intended that Sentry would place its money with BLMIS in New York.

It was in that context that the *BLI* court, responding to the arguments made to it, and not reaching the dispositive case law never briefed to it, held that personal jurisdiction would be found because the defendant knew and intended that Sentry would invest its money with BLMIS in New York.  But Multi-Strategy's argument here is *not* that it did not know and intend Sentry would place its money with BLMIS for trading in U.S. securities; rather, it argues that a share purchaser's knowledge and intent that the corporation would undertake investment activities in the forum is not sufficient to impute the corporation's forum activities to the

13

shareholder. Long-established, controlling law—that was never briefed to or addressed by *BLI*—supports Multi-Strategy's position. *See* Mov. Br. at 28-29, 32 & n.26.

In opposition, the Trustee does not dispute that Multi-Strategy identified controlling appellate court authority; does not dispute that imputation requires alter ego or agency; and does not dispute that he has not alleged facts showing either. He does not cite any Second Circuit or New York Court of Appeals case permitting imputation based on knowledge and intent alone. Those concessions and the undisputed appellate case law principles are dispositive and require rejection of the Trustee's theory of specific jurisdiction. Because *BLI* assumed, without addressing, that the Trustee's theory of knowledge and intent was legally sufficient, and because that theory is in fact contrary to the controlling legal framework, this Court should not repeat *BLI*'s result here or in any other case where the Trustee has not alleged facts showing the subsequent transferee controlled Sentry's New York investment activities.

The Supreme Court's post-*BLI* decision in *Walden v. Fiore*, 571 U.S. 277 (2014), makes clear that, in all cases, specific jurisdiction must be based on the defendant's own contacts with the forum, *not* on the defendant's contacts with persons who reside in the forum, and *not* on the plaintiff's or a third party's contacts with the forum. *Id*. at 284-85. The Trustee's theory violates those precepts. The Trustee asks this Court to exercise jurisdiction over Multi-Strategy based on Sentry's and BLMIS's contacts with, or conduct in, the forum. But the only ways under appellate authority that another person's contacts can establish a defendant's contacts is if the other person is the defendant's alter ego or agent, something the Trustee has not alleged. Because under the facts alleged by the Trustee, there is no legal basis for imputing the New York contacts of Sentry and BLMIS to Multi-Strategy, the Trustee's knowledge-and-intent theory and his reliance on *BLI* should be rejected.

14

**B.     Communicating from Canada to New York, and Meeting in New York Once, After Negotiating and Executing an Agreement Outside the United States, Do Not Support a Prima Facie Case for Personal Jurisdiction**

Multi-Strategy did not negotiate or execute its subscription agreements with

Sentry in the United States, and any phone calls and emails to FGG in New York were made

from Canada.  Mov. Br. at 24, 33-34; Therrien Decl. ¶¶ 7-15, 20 & Exs. A-C.  The Trustee does

not dispute those facts.  As a consequence, the following well-established legal principles apply:

- A foreign defendant's communications from outside the United States with persons in New York and sending money to and receiving money from New York do not constitute purposeful availment if they are made pursuant to a contract negotiated and executed outside the United States.  Mov. Br. at 32-33 & n.27. Accordingly, none of the phone or email communications between Multi-Strategy's managers in Canada and Sentry's managers in New York, or the payments for subscriptions or redemptions, support personal jurisdiction.

- Communications with persons in New York from another locale do not constitute purposeful availment unless the defendant "projects itself into ongoing New York commerce" by directly conducting securities transactions or market activity in New York through the communications.  *Id*. at 37-38.  Here, the only communications between Multi-Strategy and Sentry that conducted subscriptions and redemptions were made from Canada to the Netherlands.

- A single meeting in New York where no transactional activity occurred does not constitute purposeful availment.  *Id*. at 37.  Thus, the New York meeting between Multi-Strategy and Sentry representatives does not support personal jurisdiction because it occurred after Multi-Strategy had already purchased Sentry shares.[8]

The Trustee broadly asserts that the 16 cases Multi-Strategy cited on these and

related points (Mov. Br. at 33-34, 36-37 & n.24-25, 27) are all inapposite because, he says,

---

[8] The Trustee's cases (Opp. at 16-17) are distinguishable.  *Druck Corp. v. Macro Fund (U.S.) Ltd.*, 102 F. App'x 192 (2d Cir. 2004), held that two meetings in New York where defendant solicited plaintiff's investment in the scheme on which the fraud claim was based, combined with several other New York contacts, established specific jurisdiction.  *Id*. at 194-95.  In *Burlington Indus., Inc. v. Salem Int'l Co.*, 645 F. Supp. 872 (S.D.N.Y. 1986), the agreement that was basis of the suit was reached at two meetings with the defendant in New York.  *Id*. at 874. And in *Roxx Allison Ltd. v. Jewelers Inc.*, 385 F. Supp. 3d 377 (S.D.N.Y. 2019), the defendant repeatedly transacted business in New York by placing "many orders for jewelry worth a great sum of money" with a New York plaintiff by phone and email for years.  *Id*. at 381-82.

15

"[j]urisdiction in those cases was premised on the second clause of CPLR 302(a)(1)—'contracts

anywhere to supply goods or services in the state,'" whereas "jurisdiction here turns on the first

clause of CPLR 302(a)(1)—'transacts any business within the state.'"  Opp. at 24-25; *see also id*.

at 16 n.4.  The Trustee further asserts that these cases are also irrelevant because all were "cases

lacking a sufficient relation between the claim and the contacts with New York," and he

insinuates that all of them have been overruled by the holding in *Ford Motor Co. v. Montana*

*Eighth Judicial District Court*, 141 S. Ct. 1017 (2021), that some non-causal relationships will

support jurisdiction.  Opp. at 23.  These assertions are clearly and demonstrably wrong.

In fact, *none* of those 16 cases (including *McKee*) was decided under the second,

"contracts to provide goods in the state" clause of CPLR § 302(a)(1).  Instead, 15 were expressly

decided on the basis that the plaintiff had not sufficiently alleged the defendant "transacts any

business within the state" under the first clause of CPLR § 302(a)(1).  And of the 16 cases, *only*

*one* reached and decided whether the claim "arises out of or relates to" the contacts.[9]

The Trustee also asserts this Court has already held that *Hill v. HSBC Bank plc*,

207 F. Supp. 3d 333 (S.D.N.Y. 2016), and *Hau Yin To v. HSBC Holdings PLC*, 2017 WL

816136 (S.D.N.Y. Mar. 1, 2017), are "not relevant to the Trustee's actions against defendants

who invested in BLMIS's feeder funds."  Opp. at 24 (citing *BNP Paribas*, 594 B.R. at 192).  To

the contrary, *BNP Paribas* only held *Hill* and *Hau Yin To* inapplicable to the facts alleged there,

because "the Defendants' redemptions as investors in the Tremont Funds . . . arose from their

New York contacts with the Tremont Funds," 594 B.R. at 192 & n.12, whose *subscription*

---

[9] That one case, *SPV Osus Ltd. v. UBS AG*, 114 F. Supp. 3d 161 (S.D.N.Y. 2015), *aff'd*, 882 F.3d
333 (2d Cir. 2018), is not contrary to *Ford*, because it did not rely on a lack of causal connection.
Rather, the plaintiff had not alleged "any meaningful connection whatsoever" between his claims
and the defendants' conduct.  *SPV Osus*, 114 F. Supp. 3d at 170.

16

*agreements were executed by BNP employees in New York*. *See BNP Paribas* Proposed Am.

Compl. ¶ 411 & Proffer ¶ 10, No. 12-1576, ECF 100 & 64. But here, as in *Hill*, the Trustee

concedes the subscription agreements were negotiated and executed outside the United States.

**C.     The Subscription Agreements Do Not Support Jurisdiction**

In his Opposition, the Trustee does not address or even acknowledge Judge

Bernstein's dispositive ruling that the Sentry subscription agreements are "irrelevant" to claims

to recover redemption payments. *See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re

Fairfield Sentry Ltd.)*, 2018 WL 3756343, at *11-12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield

I*"); Mov. Br. at 24-25. Instead, the Trustee argues that the fact that Multi-Strategy entered into

agreements with New York forum clauses with somebody, even if not him, shows purposeful

availment of New York law. *See* Opp. at 18-19. But the agreements do not relate to the claim

the Trustee is bringing here, as required under both CPLR § 302(a)(1) and due process. *See

Fairfield I*, 2018 WL 3756343, at *11 (claims based on redemptions do not relate to the

subscription agreements). Nor did Multi-Strategy agree to have New York law govern

redemptions. *Id*. (BVI law governs). If entry into the subscription agreements supports personal

jurisdiction regardless of whether they relate to claims to recover the redemption payments, then

Judge Bernstein should have reached the opposite conclusion in *Fairfield I*.[10]

---

[10] The cases cited by the Trustee (Opp. at 18) are inapposite. *Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985), found jurisdiction because, unlike here, the defendant entered into an
agreement that envisioned "continuing and wide-reaching contacts" with the forum. *Id*. at 480.
In *Chase Manhattan Bank v. Banque Generale du Commerce*, 1997 WL 266968 (S.D.N.Y. May
20, 1997), the choice-of-law clause broadly governed "the relationship" between the plaintiff and
the defendant. *Id*. at *2. In *Motors Liquidation Co. Avoidance Action Tr. v. JPMorgan Chase
Bank, N.A. (In re Motors Liquidation Co.)*, 565 B.R. 275 (Bankr. S.D.N.Y. 2017), the
agreement's forum selection clause applied to the transaction at issue in the claim. *Id*. at 288.
And *BLI* pre-dated and did not have the benefit of the Privy Council's opinion in *Fairfield Sentry
Ltd. v. Migani*, [2014] UKPC 9, establishing that the redemptions were not governed by the
subscription agreement's New York choice-of-law clause.

3660112.1

D.    **That Sentry and Multi-Strategy Were Customers of Banks That Used Correspondent Accounts in New York Does Not Support Jurisdiction**

The Trustee's argument on New York correspondent bank accounts is another instance where he impermissibly seeks to base personal jurisdiction on the in-forum acts of third parties. The correspondent bank account cases the Trustee relies on (*Licci*, *Al Rushaid*, and *Arcapita*) are all cases where the correspondent account was the defendant bank's own account, and thus are inapplicable here. Mov. Br. 35 & n.28. When a defendant is merely the customer of a bank that maintains a correspondent account to facilitate U.S.-dollar wire transfers on their way to or from locations outside New York, the defendant's use of the account does not constitute purposeful availment. *Id*. at 35-36 (citing *Steinberg v. A Analyst Ltd*., 2009 WL 806780, at *6 (S.D. Fla. Mar. 26, 2009)).[11]

Most recently, in *Berdeaux v. OneCoin Ltd.*, 2021 WL 4267693 (S.D.N.Y. Sept. 20, 2021), Judge Caproni held that the fact that a transfer at issue passed through a New York correspondent account did not show a non-bank defendant's "purposeful" use of the account within the meaning of *Licci*, "even if [he] not only knew that a New York correspondent account was being used but actually coordinated [its] use," where he did not maintain the account and the money only passed through it en route to a foreign bank account:

---

[11] The Trustee incorrectly suggests *Steinberg* was just distinguishing a hypothetical and did not actually so rule. Opp. at 22. To the contrary, *Steinberg* was discussing a prior opinion in the case, which held that a foreign defendant (Wise Global) did not transact business within New York where it directed a U.S.-dollar wire transfer from its account at Standard Bank Asia in the Isle of Man to a British Virgin Islands investment fund, via a New York correspondent account maintained by Standard Bank Asia. Order & Opinion Granting Wise Global's Motion to Dismiss at 6, 11-16, *Steinberg*, No. 04-60898, ECF 161 (S.D. Fla. Sept. 22, 2006). The Trustee also incorrectly suggests that *Steinberg* is bad law after *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327 (2012), and *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316 (2016). But other courts faced with the same fact pattern after these decisions have ruled the same way, as shown above.

3660112.1

The vast majority of cases in which the issue is whether the use of a correspondent bank account constitutes the transaction of business under Section 302(a)(1) involve a non-domiciliary bank defendant's use of a correspondent account, not an individual's wiring of funds that incidentally pass through a New York-based correspondent account. . . . Plaintiffs have identified no authority, nor is the Court aware of any, standing for the principle that a non-domiciliary individual defendant may be subject to specific jurisdiction in New York under Section 302(a)(1) because the non-domiciliary moved money between foreign bank accounts, with the transfer passing through New York via a correspondent account.

*Berdeaux*, 2021 WL 4267693, at *12 (citations and footnote omitted); *see also Universal Trading & Inv. Co. v. Tymoshenko*, 2012 WL 6186471, at *3 (S.D.N.Y. Dec. 12, 2012) (same; concluding "courts have only found the banks themselves to be subject to jurisdiction where they have moved money through New York").[12]  Here, the correspondent account at Bank of New York was maintained by a third-party bank, Desjardins, to facilitate U.S.-dollar wire transfers of any Desjardins customer, not just Multi-Strategy.  Therrien Decl. ¶ 15 n.2.[13]

---

[12] Neither *Ehrlich-Bober & Co. v. University of Houston*, 49 N.Y.2d 574 (1980), nor *Esso Exploration & Production Nigeria Ltd. v. Nigerian National Petroleum Corp.*, 397 F. Supp. 3d 323 (S.D.N.Y. 2019) (Opp. at 22-23), holds to the contrary.  *Ehrlich-Bober* held that a correspondent bank relationship, without more, may not form the basis for long-arm jurisdiction, 49 N.Y.2d at 579, and instead found jurisdiction based on the facts that the repo transactions at issue were initiated by the defendant's employee through a phone call to the plaintiff's New York offices, the money was paid in New York, the securities were delivered in New York, and the parties agreed the repurchases would be accomplished in New York, *id.* at 582.  In *Esso*, the defendant Nigerian state oil company controlled three accounts at JPMorgan Chase Bank in New York held in the name of the Central Bank of Nigeria, and used them to send and receive funds that were the subject of the claims in the case.  397 F. Supp. 3d at 338-40, 345-46.

[13] Most of the Trustee's other cited cases (Opp. at 19-23) involve either a defendant bank that held a New York correspondent account used for transactions at issue, *see BNP Paribas*, 594 B.R. at 191; *Bartlett v. Société Générale de Banque au Liban SAL*, 2020 WL 7089448, at *1 (E.D.N.Y. Nov. 25, 2020); *Motors Liquidation*, 565 B.R. at 279, 281, or a non-bank defendant that held an ordinary New York bank account used for transactions at issue, *see Eldesouky v. Aziz*, 2014 WL 7271219, at *6-7 (S.D.N.Y. Dec. 19, 2014); *Ge Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 382–83 (S.D.N.Y. 2013); *HSH Nordbank N.Y. Branch v. Street*, 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012).  *Picard v. Estate of Igoin (In re Bernard L. Madoff Inv. Sec. LLC)*, 525 B.R. 871, 884 (Bankr. S.D.N.Y. 2015), found jurisdiction, not based on use of bank accounts, but based on the defendant having accounts at

19

**E.**     **The Trustee's Claim to Recover Multi-Strategy's Redemption from Sentry Does Not "Arise from or Relate to" Any Contacts with Kingate**

Throughout his opposition brief, the Trustee cites alleged contacts with the Kingate fund's manager Tremont to try to bolster his showing of purposeful availment with respect to Sentry.  *See* Opp. at 1-7, 10-11, 13, 16-17, 20-21.  But Kingate was a separately organized fund from Sentry; its manager Tremont was unrelated to Sentry's manager FGG; and there are no claims in the Amended Complaint to recover Kingate transfers.  "Each transfer is a separate claim, and the Trustee 'must establish the court's jurisdiction with respect to each claim asserted.'"  *BNP Paribas*, 594 B.R. at 190 (citations omitted).  Under this rule, contacts with respect to the Trustee's now-withdrawn claims to recover transfers from Kingate cannot establish this Court's jurisdiction with respect to claims to recover transfers from Sentry.[14]

Because the Trustee has failed to allege facts showing a prima facie case for personal jurisdiction over Multi-Strategy, after amending his complaint in response to a prior motion raising the same defects, the Amended Complaint should be dismissed with prejudice.

## <u>CONCLUSION</u>

For the foregoing reasons and those set forth in Multi-Strategy's moving brief, the Trustee's Amended Complaint against Multi-Strategy should be dismissed.

---

BLMIS.  And *BLI*, 480 B.R. at 513, addressed correspondent accounts in applying the "direct effects" test of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(2).

[14] The Trustee's pleas to consider the "totality" of contacts do not help him either.  Opp. at 9, 10, 18.  Adding irrelevant contacts (actions outside the United States, by third parties, or unrelated to the claim at issue) to Multi-Strategy's own insufficient contacts with the forum do not show purposeful conduct of business in New York related to the redemption at issue.

3660112.1

Dated: New York, New York
        May 4, 2022

Respectfully submitted,

s/ Robert J. Lack
Robert J. Lack (rlack@fklaw.com)
Jeffrey C. Fourmaux (jfourmaux@fklaw.com)
Dielai Yang (dyang@fklaw.com)
FRIEDMAN KAPLAN SEILER
    & ADELMAN LLP
7 Times Square
New York, NY 10036-6516
Telephone: (212) 833-1100
Facsimile: (212) 833-1250

*Attorneys for Defendant*
*Multi-Strategy Fund Limited*

21