**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (CGM) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 12-01694 (CGM) |
| v. | |
| BANQUE CANTONALE VAUDOISE, | |
| Defendant. | |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT BANQUE CANTONALE VAUDOISE'S MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ..........................................................................................................2

I.      THE BLMIS PONZI SCHEME..................................................................................2

II.     BANQUE CANTONALE VAUDOISE AND ITS INVESTMENTS IN SENTRY ..........3

ARGUMENT ..............................................................................................................................4

I.      THE COMPLAINT PLEADS THAT BCV RECEIVED BLMIS CUSTOMER
        PROPERTY UNDER SECTION 550(a) .............................................................................5

        A.      BCV Misstates the Trustee's Pleading Burden.....................................................6

        B.      BCV's Tracing Arguments Fail on a Motion to Dismiss .......................................7

        C.      BCV's Claims of Double Recovery Are Premature ...............................................12

II.     SECTION 546(E) DOES NOT BAR RECOVERY FROM BCV....................................13

        A.      Sentry's Actual Knowledge of Madoff's Fraud Bars Application of
                Section 546(e) ........................................................................................................13

        B.      BCV Is Precluded from Relitigating the Actual Knowledge Exception................14

        C.      BCV Is Precluded from Arguing that Section 546(e) Applies
                Independently to Recovery Actions.......................................................................15

III.    THE COMPLAINT SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE
        SENTRY INITIAL TRANSFERS...................................................................................21

CONCLUSION............................................................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
    599 B.R. 730 (Bankr. S.D.N.Y. 2019) ...............................................................5, 6, 9

*Am. Casein Co. v. Geiger (In re Geiger)*,
    446 B.R. 670 (Bankr. E.D. Pa. 2010) ...................................................................21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................................4, 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................4, 7

*Cargo Partner AG v Albatrons, Inc.*,
    352 F.3d 41 (2d Cir. 2003)..................................................................................4

*CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*,
    393 B.R. 306 (Bankr. W.D.N.Y. 2008) ...............................................................12

*DeMasi v. Benefico*,
    567 F. Supp. 2d 449 (S.D.N.Y. 2008)..................................................................22

*Dery v. United States (In re Bridge)*,
    90 B.R. 839 (Bankr. E.D. Mich. 1988) ................................................................12

*Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.)*,
    343 B.R. 75 (Bankr. S.D.N.Y. 2006), *rev'd on other grounds*, 388 B.R. 489
    (S.D.N.Y. 2008) .................................................................................................19

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
    651 F.3d 329 (2d Cir. 2011)................................................................................18

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
    Adv. Pro. No. 10-13164 (SMB), 2020 WL 7345988 (Bankr. S.D.N.Y. Dec.
    14, 2020) .....................................................................................................20, 21

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
    596 B.R. 275 (Bankr. S.D.N.Y. 2018) .................................................................21

*Ferrari v. Cnty. of Suffolk*,
    790 F. Supp. 2d 34 (E.D.N.Y. 2011) ...................................................................22

*Fowler v. Caliber Home Loans, Inc.*,
    277 F. Supp. 3d 1324 (S.D. Fla. 2016) ..................................................................8

*Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*,
    Adv. Pro. Nos. 10-03493 (SMB), 10-05447 (SMB), 2014 WL 47774 (Bankr.
    S.D.N.Y. Jan. 3, 2014) ...........................................................................................10

*Helms v. Metro. Life Ins. Co. (In re O'Malley)*,
    601 B.R. 629 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021)...........................12

*IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*,
    408 F.3d 689 (11th Cir. 2005) ...............................................................................12

*In re J.P. Jeanneret Assoc., Inc.*,
    769 F. Supp. 2d 340 (S.D.N.Y. 2011)......................................................................4

*Kelley v. Safe Harbor Managed Account 101, Ltd.*,
    No. 20-3330, 2022 WL 1177748 (8th Cir. Apr. 21, 2022)................................16, 20

*Kelley v. Westford Special Situations Master Fund, L.P.*,
    No. 19-cv-1073, 2020 WL 3077151 (D. Minn. June 10, 2020) .....................8, 9, 11

*Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*,
    No. 07-MD-1902 (JSR), 2013 WL 12191844 (S.D.N.Y. Mar. 25, 2013) ...............14

*Picard v. Avellino (In re BLMIS)*,
    557 B.R. 89 (Bankr. S.D.N.Y. 2016) ......................................................................15

*Picard v. BNP Paribas S.A. (In re BLMIS)*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018)........................................................... *passim*

*Picard v. Ceretti (In re BLMIS)*,
    Adv. Pro. No. 09-01161 (SMB), 2015 WL 4734749 (Bankr. S.D.N.Y. Aug.
    11, 2015) ...............................................................................................................15

*Picard v. Charles Ellerin Revocable Tr. (In re BLMIS)*,
    Adv. Pro. Nos. 10-04398 (BRL), 10-05219 (BRL), 2012 WL 892514 (Bankr.
    S.D.N.Y. Mar. 14, 2012)........................................................................... *passim*

*Picard v. Citibank, N.A. (In re BLMIS)*,
    12 F.4th 171 (2d. Cir. 2021) ............................................................................3, 20

*Picard v. Cohen*,
    Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296 (Bankr. S.D.N.Y. Apr.
    25, 2016) ...............................................................................................................15

*Picard v. Cohmad Sec. Corp. (In re BLMIS)*,
    454 B.R. 317 (Bankr. S.D.N.Y. 2011)....................................................................10

*Picard v. Est. of Seymour Epstein (In re BLMIS)*,
    No. 2l-cv-02334 (CM), 2022 WL 493734 (S.D.N.Y. Feb. 17, 2022) ....................18

*Picard v. Fairfield Inv. Fund Ltd. (In re BLMIS)*,
  Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6,
  2021) ................................................................................................................... *passim*

*Picard v. Ida Fishman Revocable Tr. (In re BLMIS)*,
  773 F.3d 411 (2d Cir. 2014)................................................................................15, 18

*Picard v. Lowrey (In re BLMIS)*,
  596 B.R. 451 (S.D.N.Y. 2019), *aff'd sub nom. Picard v. Gettinger (In re
  BLMIS)*, 976 F.3d 184 (2d Cir. 2020)................................................................15, 22

*Picard v. Magnify, Inc. (In re BLMIS)*,
  583 B.R. 829 (Bankr. S.D.N.Y. 2018)....................................................................15

*Picard v. Mayer (In re BLMIS)*,
  Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435 (Bankr. S.D.N.Y. Oct.
  27, 2021) ..................................................................................................................5

*Picard v. Mendelow (In re BLMIS)*,
  560 B.R. 208 (Bankr. S.D.N.Y. 2016)....................................................................15

*Picard v. Merkin (In re BLMIS)*,
  515 B.R. 117 (Bankr. S.D.N.Y. 2014)............................................................ *passim*

*Picard v. Merkin (In re BLMIS)*,
  581 B.R. 370 (Bankr. S.D.N.Y. 2017)..................................................................9, 11

*Picard v. Shapiro (In re BLMIS)*,
  542 B.R. 100 (Bankr. S.D.N.Y. 2015)..............................................................6, 7, 15

*In re Picard*,
  917 F.3d 85 (2d Cir. 2019)......................................................................................16

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir. 2007).....................................................................................4

*Rothman v. Gregor*,
  220 F.3d 81 (2d Cir. 2000)..................................................................................2, 22

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
  379 B.R. 5 (Bankr. E.D.N.Y. 2007)....................................................................5, 6, 7

*SIPC v. BLMIS (In re Bernard L. Madoff)*,
  531 B.R. 439 (Bankr. S.D.N.Y. 2015)....................................................................15

*SIPC v. BLMIS (In re Madoff Sec.)*,
  501 B.R. 26 (S.D.N.Y. 2013)..............................................................................16, 21

iv

*SIPC v. BLMIS (In re Madoff Sec.)*,
   No. 12-MC-115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)............................ *passim*

*Solution Tr. v. 2100 Grand LLC (In re AWTR Liquidation Inc.)*,
   548 B.R. 300 (Bankr. C.D. Cal. 2016)...................................................................8

*Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*,
   239 F.3d 365, 2000 WL 1741550 (5th Cir. Dec. 11, 2000).......................................11

*SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*,
   620 B.R. 505 (Bankr. S.D.N.Y. 2020)..................................................................18

*Taylor v. Sturgell*,
   553 U.S. 880 (2008).........................................................................................14

*United States v. Henshaw*,
   388 F.3d 738 (10th Cir. 2004) ........................................................................9, 12

*In re Viropharma, Inc.*,
   No. CIV.A. 02-1627, 2003 WL 1824914 (E.D. Pa. Apr. 7, 2003) ...........................8

**Statutes**

11 U.S.C. § 546(e) ............................................................................................... *passim*

11 U.S.C. § 548(a)(1)(A) ...............................................................................13, 16

11 U.S.C. § 550 ...............................................................................................16, 17

11 U.S.C. § 550(a) ............................................................................................. *passim*

11 U.S.C. § 550(a)(2)...............................................................................................5

11 U.S.C. § 550(d) ...............................................................................................12

**Rules**

Fed. R. Bankr. P. 7012 ...........................................................................................4

Fed. R. Civ. P. 8 ...................................................................................................2

Fed. R. Civ. P. 8(a)(2)........................................................................................4, 21

Fed. R. Civ. P. 10(c) ...........................................................................................21

Fed. R. Civ. P. 12(b)(6)...................................................................................1, 4, 8

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff, respectfully submits this memorandum of law in opposition to the motion (the "Motion") brought by defendant Banque Cantonale Vaudoise ("BCV") to dismiss the Trustee's Complaint pursuant to Federal Civil Procedure Rule 12(b)(6).

## PRELIMINARY STATEMENT

As part of the Trustee's continuing efforts to recover BLMIS customer property that was stolen as part of Madoff's Ponzi scheme, this action seeks to recover approximately $10 million of customer property that BCV received from Fairfield Sentry Limited ("Sentry"). BCV moved to dismiss the Complaint on three grounds, arguing that (i) BCV did not receive any customer property, (ii) the safe harbor under Section 546(e) bars avoidance and recovery, and (iii) the Trustee has failed to provide sufficient notice of his claim. All of BCV's arguments fail.

The Trustee's Complaint plausibly alleges that BCV received customer property under Section 550(a) by outlining the relevant pathways through which customer property was transferred from BLMIS to Sentry and subsequently to BCV. The Trustee further alleges the necessary vital statistics (*i.e.*, the "who, when, and how much") for the subsequent transfer BCV received. At this stage of the litigation, nothing more is required. Contrary to BCV's arguments, the Trustee does not have to show a dollar-for-dollar accounting or tracing at the pleading stage. BCV's arguments are plainly inappropriate on a motion to dismiss and run contrary to well established case law in this SIPA liquidation proceeding.

The Trustee's Complaint also plausibly alleges the avoidability of the initial transfers from BLMIS based on Sentry's actual knowledge of fraud, and therefore the safe harbor under Section 546(e) is inapplicable and does not bar recovery from BCV. In its Motion, BCV argues that there

is no actual knowledge exception and, in the alternative, BCV's knowledge as a subsequent transferee should determine the avoidability of the initial transfers from BLMIS. These arguments conflict with the plain language of the statute and precedent in this SIPA liquidation establishing that Section 546(e) does not independently protect against the recovery of avoidable fraudulent transfers from a subsequent transferee.

Finally, the Trustee's Complaint provides a "short and plain statement" showing that the Trustee is entitled to relief. BCV objects that the Trustee has violated Federal Civil Procedure Rule 8 by incorporating by reference his complaint against Sentry and other related parties.[1] Not only does this argument conflict with precedent from the District Court, this Court may take judicial notice of the Trustee's Second Amended Complaint and the Court's own opinion in *Picard v. Fairfield Investment Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021), in which the Court held that the Second Amended Complaint plausibly alleged Sentry's actual knowledge of fraud.

Because BCV's arguments lack merit, the Trustee respectfully requests that the Court deny BCV's Motion.

## STATEMENT OF FACTS

### I.    THE BLMIS PONZI SCHEME

Madoff founded and operated BLMIS from New York until its collapse in 2008. Compl. ¶ 23, ECF No. 1.[2]  BLMIS had three principal business units: (i) a proprietary trading business;

---

[1] After the Trustee filed his Complaint against BCV, the Trustee filed a Second Amended Complaint against the Fairfield Greenwich Group ("Fairfield" or "FGG") defendants. *See* Second Am. Compl., *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286. This Court may take judicial notice of the Trustee's Second Amended Complaint against Fairfield. *See Rothman v. Gregor*, 220 F.3d 81, 91–92 (2d Cir. 2000) (taking judicial notice of later filed complaint in related proceeding).

[2] Unless otherwise indicated, all ECF references herein refer to the case captioned *Picard v. Banque Cantonale Vaudoise*, Adv. Pro. No. 12-01694 (CGM) (Bankr. S.D.N.Y.).

(ii) a market-making business; and (iii) an investment advisory business (the "IA Business"). *Id.* For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy, which involved (a) investing in a basket of common stocks from the Standard & Poor's 100 Index, (b) buying put options and selling call options to hedge against price changes in the underlying basket of stocks, and (c) purchasing U.S. Treasury bills when the money was out of the market. *Id.* ¶¶ 24–25. In reality, BLMIS operated a Ponzi scheme through its IA Business. *Id.* ¶ 26. On December 11, 2008, Madoff's fraud was publicly revealed, and he was arrested for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. *Id.* ¶ 11.

The extent of damage Madoff caused was made possible by BLMIS "feeder funds"—large investment funds created for the express purpose of funneling their investors' funds into BLMIS. *See Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 179 (2d. Cir. 2021). BCV invested in a number of these feeder funds, including Sentry. Compl. ¶ 2. Each of these feeder funds had customer accounts with BLMIS's IA Business and invested more than 95% of their assets with BLMIS. *Id.*

## II.    BANQUE CANTONALE VAUDOISE AND ITS INVESTMENTS IN SENTRY

BCV is a Swiss *société anonyme de droit public* (*i.e.*, a corporation organized under public law) located in Lausanne, Switzerland. *Id.* ¶¶ 3, 22. The Trustee alleged that BCV knowingly received at least one subsequent transfer from BLMIS by withdrawing money from Sentry. *Id.* ¶ 6.

BCV received a single transfer from Sentry prior to BLMIS's collapse in December 2008. *Id.* ¶ 41, Ex. C. The Trustee's Complaint sets forth the subsequent transferor (Sentry), the subsequent transferee (BCV), the date of the subsequent transfer (May 16, 2007), and the amount of the subsequent transfer ($9,769,927). *Id.*

3

Following BLMIS's collapse and the commencement of this SIPA liquidation proceeding, the Trustee filed an adversary proceeding against Sentry and related defendants to avoid and recover fraudulent transfers of stolen customer property in the amount of approximately $3 billion. *Id*. ¶ 35. In 2011, the Trustee settled with Sentry and other parties. Compl. ¶ 40. As part of the settlement, Sentry consented to a judgment in the amount of $3.054 billion but repaid only $70 million to the BLMIS customer property estate. *Id.* The Trustee then commenced a number of adversary proceedings against defendants like BCV to recover the approximately $3 billion in missing customer property.

## **ARGUMENT**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), applicable under Federal Rule of Bankruptcy Procedure 7012, "the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences" in the Trustee's favor. *In re J.P. Jeanneret Assoc., Inc.*, 769 F. Supp. 2d 340, 353 (S.D.N.Y. 2011) (citing *Cargo Partner AG v Albatrons, Inc.*, 352 F.3d 41, 44 (2d Cir. 2003); *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007)). To survive the motion to dismiss, the pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The allegations need only meet the "plausibility" standard, such that they "'nudge[] [the] claims' . . . 'across the line from conceivable to plausible.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted).

4

I.    **THE COMPLAINT PLEADS THAT BCV RECEIVED BLMIS CUSTOMER PROPERTY UNDER SECTION 550(a)**

The Trustee's Complaint states a claim for recovery under Section 550(a)(2) by plausibly alleging that BCV received a subsequent transfer of stolen BLMIS customer property. To plead a subsequent transfer claim, the Trustee must allege facts that support an inference "that the funds at issue originated with the debtor." *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149–50 (Bankr. S.D.N.Y. 2014) ("*Merkin I*"). No tracing analysis is required, as the pleading burden "is not so onerous as to require 'dollar-for-dollar accounting' of 'the exact funds' at issue." *Id.* at 150 (quoting *Picard v. Charles Ellerin Revocable Tr. (In re BLMIS)*, Adv. Pro. Nos. 10-04398 (BRL), 10-05219 (BRL), 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012)). Rather, "the Trustee need only allege sufficient facts to show the relevant pathways through which the funds were transferred from BLMIS to [the subsequent transferee]." *Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *3; *see also 45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019). In addition, the Trustee must allege "'the necessary vital statistics—the who, when, and how much' of the purported transfers to establish an entity as a subsequent transferee of the funds." *Merkin I*, 515 B.R. at 150 (quoting *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 32 (Bankr. E.D.N.Y. 2007)).

The Trustee's Complaint meets these requirements. The Complaint alleges that BCV received the transfer, identified by date and amount, from Sentry, and that Sentry invested substantially all of its funds with BLMIS. Compl. ¶¶ 2, 41, Ex. C. Thus, the Complaint plausibly alleges that BCV received a subsequent transfer of customer property by (a) outlining the relevant pathways through which customer property was transferred from BLMIS to Sentry and subsequently to BCV and (b) providing the necessary vital statistics (*i.e.*, the "who, when, and how much") for the subsequent transfer. Nothing more is required. *See, e.g.*, *Picard v. Mayer (In re*

*BLMIS)*, Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021) (rejecting argument that subsequent transfer claim was not pled "with enough specificity as to how and what [defendant] received" and holding complaint "contains sufficient information regarding which transfers the Trustee is seeking to recover").

### A.    BCV Misstates the Trustee's Pleading Burden

Given the sufficiency of the Trustee's pleading, BCV argues for an alternative pleading standard, asserting that the Trustee must tie the subsequent transfer BCV received to a specific initial transfer from BLMIS.  Motion at 9–10.  In *Merkin I*, however, the Court rejected this very argument, denying the defendants' motion to dismiss subsequent transfer claims even though the complaint did "not connect each of the subsequent transfers with an initial, voidable transfer emanating from BLMIS."  515 B.R. at 150, *see also In re 45 John Lofts, LLC*, 599 B.R. at 747 (finding no "requirement to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss").  Nor is there any requirement that the Trustee must detail what portion of the subsequent transfer comprises customer property.  There is no such pleading burden. *See Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *3 (holding at summary judgment, "it is not necessary for the Trustee to specify what portion of the Subsequent Transfers to [defendant] was derived from BLMIS"); *see also In re Allou Distribs., Inc.*, 379 B.R. at 30 (finding "if dollar-for-dollar accounting is not required at the proof stage, then surely it is not required at the pleading stage either").

To support its argument that the Trustee has failed to allege facts showing that the subsequent transfer to BCV was comprised of customer property, BCV erroneously relies on *Picard v. Shapiro (In re BLMIS)*, 542 B.R. 100 (Bankr. S.D.N.Y. 2015).  *See* Motion at 10.  BCV analogizes this case to *Shapiro* and contends "[a]s in *Shapiro*, the Trustee's Complaint fails to plead the 'necessary vital statistics.'"  *Id.* at 10.  This is factually and legally incorrect.

In *Shapiro*, the Trustee alleged that certain trusts and members of the Shapiro family received approximately $54 million in fraudulent transfers from BLMIS, and "upon information and belief" these defendants subsequently transferred a portion of this same amount to other defendants. *Id.* at 119. The Court dismissed the subsequent transfer claim because the complaint did not detail any of the necessary vital statistics of the subsequent transfers. *Id.* There were no allegations regarding the specific initial transferees, the specific subsequent transferees, or the dates or amounts of the subsequent transfers. *Id.* In fact, the complaint in *Shapiro* failed to "plausibly imply that the initial transferees even made subsequent transfers," alleging only that "a portion" was transferred without any evidence of any subsequent transfers. *Id.* Consequently, this Court granted defendants' motion to dismiss the subsequent transfer claim. *Id.*

Unlike in *Shapiro*, the Complaint in this action identifies the specific subsequent transfer from Sentry to BCV by detailing the "necessary vital statistics" for the transfer BCV received. *See* Compl., Ex. C. And, the Complaint alleges additional facts regarding BCV's status as an investor in Sentry, including a subscription agreement, wire transfer, and communications with Sentry regarding its investment and redemption. *See* Compl. ¶ 7. These are the "necessary vital statistics" for the transfer BCV received. *See In re Allou Distribs., Inc.*, 379 B.R. at 32.

### B.     BCV's Tracing Arguments Fail on a Motion to Dismiss

BCV's tracing arguments fare no better and are inappropriate on a motion to dismiss. As an initial matter, the word "tracing" is conspicuously absent from BCV's Motion. BCV may argue it is only relying on the notice pleading requirements under *Iqbal* and *Twombly* and is not requiring the Trustee to trace the exact transfers of customer property from BLMIS through Sentry to BCV. This would be disingenuous. Of course BCV is arguing for a tracing analysis at the pleading stage; BCV just refuses to acknowledge this because such an argument is clearly inappropriate on a motion to dismiss for each of the reasons set forth below.

First, BCV claims the transfer it received from Sentry is comprised of subscriptions from other investors. Motion at 11–12. In other words, BCV argues that Sentry commingled customer property with other funds, and this commingling defeats the Trustee's ability to trace the transfer of customer property from BLMIS because the "money could not possibly have originated with BLMIS." *Id*. at 12. Again, BCV is wrong. "The law does not place such a difficult burden on trustees. The commingling of legitimate funds with funds transferred from the debtor does not defeat tracing." *Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-cv-1073 (ECT/KMM), 2020 WL 3077151, at *4 (D. Minn. June 10, 2020) (citing *Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *3) (citation omitted). In fact, where there is commingling of funds, the tracing of funds is not an issue to be determined on a motion to dismiss. *See Merkin I*, 515 B.R. at 152.

Second, BCV claims that Sentry paid other investors with the customer property it received from BLMIS prior to making any transfers to BCV. Motion at 15. However, BCV does not disclose what tracing methodology or methodologies it relies upon to reach this conclusion.[3] And why not? Because it is for this Court to decide—after fact and expert discovery—the appropriate

---

[3] The declaration of BCV's counsel (Shaiman Decl.), which attaches exhibits totaling almost nine hundred pages, includes several "calculations" of various transfers from BLMIS to Sentry and Sentry to its investors. *See* Shaiman Decl. ¶¶ 9–13, ECF No. 93. These calculations add and subtract transfers from over 90 proceedings, in amounts that have in some cases changed since the filing of the Trustee's complaints and with no explanation for the methodology behind the calculations. BCV's undefined tracing methodology, which it uses to contest the transfer in this proceeding, is nothing more than "an attempt to interject improper expert testimony into a Rule 12(b)(6) context." *Fowler v. Caliber Home Loans, Inc.*, 277 F. Supp. 3d 1324, 1331 (S.D. Fla. 2016) (declining to consider expert testimony in a motion to dismiss); *see also Solution Tr. v. 2100 Grand LLC (In re AWTR Liquidation Inc.)*, 548 B.R. 300, 334 (Bankr. C.D. Cal. 2016) (assessment of valuation that "almost certainly will require expert testimony" is inappropriate for a motion to dismiss); *In re Viropharma, Inc.*, No. CIV.A. 02-1627, 2003 WL 1824914, at *2 (E.D. Pa. Apr. 7, 2003) ("The [party's] submission of an expert report at [the motion to dismiss] stage is entirely improper.").

tracing methodology under the circumstances of this case.[4]  *See Picard v. Merkin (In re BLMIS)*, 581 B.R. 370, 386 (Bankr. S.D.N.Y. 2017) ("*Merkin II*") ("[T]he Court's selection of an appropriate methodology is committed to the Court's discretion."); *Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *3, n.7 ("Courts have broad discretion to determine which monies of commingled funds derive from fraudulent sources." (citing *United States v. Henshaw*, 388 F.3d 738, 741 (10th Cir. 2004) (finding "courts exercise case-specific judgment to select the method best suited to achieve a fair and equitable result on the facts before them"))).

Third, BCV's assertion that Sentry exhausted all BLMIS customer property on hand before BCV redeemed relies on the factual assumption that every subsequent transfer that preceded BCV's transfers was sourced solely by customer property.  *See* Motion at 15–16.  In support, BCV relies entirely on exhibits to pleadings from other adversary proceedings.  *Id.* at 15; *see also* Shaiman Decl., Exs. 4–6.  Those exhibits, however, do not establish this fact.  Furthermore, at this stage of the proceedings, the Trustee is not required to plead, much less establish, that an alleged subsequent transfer consisted entirely of customer property.  *See Kelley*, 2020 WL 3077151, at *4 (holding where debtors' funds are commingled with "cash from new subscribing investors," a trustee is not required to establish that transfers "originated solely" with the debtor or even to account for "the exact funds at issue" on summary judgment); *In re 45 John Lofts, LLC*, 599 B.R. at 746–47 (rejecting argument "that Plaintiff generically, and without factual support, alleged that every transfer out of" the initial transferee's commingled account was made with debtor property

---

[4] This Court has recognized different tracing methodologies offered by the Trustee in this liquidation to assist the trier of fact, including: (1) Last In, First Out (LIFO), (2) First In, First Out (FIFO), (3) Lowest Intermediation Balance Rule (LIBR), (4) Restated Tracing Rules (Restated LIBR), and (5) Proportionality. These "methodologies reflect legal rules or fictions designed to assist a Court in dealing with an improper transfer form a commingled fund." *Merkin II*, 581 B.R. at 386.

because the plaintiff is not required "to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss" (internal quotation marks omitted)).

Fourth, BCV argues that it could not have received any customer property because of the amount of time that elapsed between Sentry's receipt of certain initial transfers from BLMIS and Sentry's subsequent transfer to BCV. Motion at 15. This is a variation of BCV's tracing argument that Sentry transferred BLMIS's customer property to other investors. Again, this argument is inappropriate on a motion to dismiss. And even if it may prove more difficult for the Trustee to trace the subsequent transfer sought here, this is not grounds for dismissal at the pleading stage. *See Merkin I*, 515 B.R. at 152 (finding it "premature to cut off the Trustee's opportunity to satisfy his [tracing] burden on a motion to dismiss" merely because tracing may prove difficult); *Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*, Adv. Pro. Nos. 10-03493 (SMB), 10-05447 (SMB), 2014 WL 47774, at *15 (Bankr. S.D.N.Y. Jan. 3, 2014) ("[T]he [subsequent transferees'] speculation that tracing is 'not likely' to reveal a subsequent transfer . . . hardly justifies granting [their cross-motion for summary judgment].").

Finally, without discovery, BCV's tracing arguments are speculative and premature. The Trustee is a stranger to the transactions between Sentry and BCV and is entitled to discovery on this issue. "[I]n a case such as this one, where 'the Trustee's lack of personal knowledge is compounded with complicated issues and transactions [that] extend over lengthy periods of time, the trustee's handicap increases,' and 'even greater latitude' should be afforded." *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (citation omitted). This is one reason why this Court in *Merkin I* denied the defendants' motion to dismiss, finding "[t]he subsequent transfer claim must ultimately be proved through the books and records of the defendants." 515 B.R. at 151. And even after fact discovery, expert opinion is necessary to

10

determine what portion of the subsequent transfer stemmed from the initial transfer where the subsequent transfers originated from commingled accounts. *Merkin II*, 581 B.R. at 386; *see also Kelley*, 2020 WL 3077151, at *5 (denying summary judgment because trustee introduced expert report and associated documents from which a jury could infer that defendants received subsequent transfers of customer property). Moreover, the circumstances of the transfer at issue, including the purpose of the transfer and the parties' intent, are also relevant to equitable principles applied to tracing. *See Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 239 F.3d 365, 2000 WL 1741550, at *5 (5th Cir. Dec. 11, 2000) (finding the court's "task here is to 'look beyond the particular transfers in question to the entire circumstance of the transactions'" (citation omitted)).

BCV attempts to distinguish this Court's decision denying the motion to dismiss in *Merkin I*, arguing that case required the defendants' records to address commingling among defendants and, here, "for over a decade, the Trustee has every piece of data he needs to determine" which subsequent transfers contain customer property. Motion at 13–14. However, the commingling among the defendants in *Merkin I* is not substantively different from the purported commingling at Sentry—each allegedly involved non-debtor property. And contrary to BCV's unsupported assertion, the Trustee does not have all of Sentry's books and records, and discovery in the Trustee's actions against the FGG defendants continues. *See, e.g.*, Stipulated Case Mgmt. Order, *Picard v. Fairfield Inv. Fund Ltd.*, Ad. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Dec. 6, 2021), ECF No. 353 (setting November 22, 2022 deadline for fact discovery and August 22, 2023 deadline for expert discovery). No doubt BCV also has records it can provide on these same transactions.

### C.    BCV's Claims of Double Recovery Are Premature

BCV argues the Trustee's claims are "facially implausible" because the Trustee is seeking more money from all of Sentry's subsequent transferees than the fund withdrew from BLMIS. Motion at 11–12. There is no dispute that the Trustee is limited to "a single satisfaction" under Section 550(a). 11 U.S.C. § 550(d). However, the Trustee "can recover from any combination of [transferees]" up to the amount avoided. *Helms v. Metro. Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021). Under Section 550(a), "a trustee may recover [an avoided] transfer from a subsequent transferee of those funds, without the necessity for allocation among all [the] subsequent transferees." *CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*, 393 B.R. 306, 333 (Bankr. W.D.N.Y. 2008). Thus, until the Trustee recovers the full amount of the approximately $3 billion in fraudulent transfers received by Sentry, the Trustee may simultaneously seek recovery from BCV in this action and from defendants in other actions, even in an aggregate amount that exceeds initial transfers. Moreover, the Court already has held that this type of argument is inappropriate on a motion to dismiss. *See Fairfield Inv. Fund*, 2021 WL 3477479, at *12 (holding defendant's "double recovery" arguments and the Trustee's purported limitations under Section 550(d) are "to be determined at a later stage in the litigation").

Finally, because money is fungible, "[t]he goal of tracing is not to trace anything at all in many cases, but rather to serve as an equitable substitute for the impossibility of specific identification." *Henshaw*, 388 F.3d at 741 (citation omitted). "It is undeniable that equity will follow a fund through any number of transmutations, and preserve it for the owner as long as it can be identified." *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 709 (11th Cir. 2005) (quoting *Dery v. United States (In re Bridge)*, 90 B.R. 839, 848 (Bankr. E.D. Mich. 1988)). Under these circumstances, equity weighs against cutting the Trustee off at the pleading stage.

## II.    SECTION 546(E) DOES NOT BAR RECOVERY FROM BCV

Section 546(e) provides a safe harbor for the avoidance of certain initial transfers made outside the two-year period referenced in Section 548(a)(1)(A).  *See* 11 U.S.C. § 546(e) ("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title." (emphasis added)). However, in *SIPC v. BLMIS (In re Madoff Securities)*, the District Court held that an initial transferee's actual knowledge of Madoff's fraud precludes application of the safe harbor, thereby allowing the Trustee to avoid transfers made by BLMIS prior to the two-year period referenced in Section 548(a)(1)(A).  No. 12-MC-115 (JSR), 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*").

BCV now argues that Section 546(e) bars the Trustee's claims to avoid or recover transfers made by BLMIS prior to the two-year period, even though the Trustee has pled Sentry's actual knowledge.  BCV's argument must be rejected because BCV misinterprets the law and because law of the case dictates otherwise.

### A.    Sentry's Actual Knowledge of Madoff's Fraud Bars Application of Section 546(e)

In its Motion, BCV sets forth at length the requirements of Section 546(e) and how they are supposedly met in this case with respect to the initial transfers from BLMIS.  None of this matters.[5]  As BCV concedes, this Court has previously held that the Trustee has pled Sentry's

---

[5] The Trustee does not concede that any agreements or transfers between Sentry and BCV activate the safe harbor under Section 546(e).  Sentry's agreements with and transfers to BCV are simply not relevant, because whether the initial transfers from BLMIS to Sentry are avoidable turns on Sentry's actual knowledge of fraud at BLMIS, not BCV's knowledge as a subsequent transferee.

actual knowledge of fraud and that such initial transfers are avoidable.[6] *See* Motion at 21–22, n.15; *Fairfield Inv. Fund*, 2021 WL 3477479, at \*4–5, \*7. As such, Section 546(e) does not bar the avoidance of initial transfers made to Sentry, and transfers may be recovered from BCV regardless of whether Sentry and BCV qualify as financial institutions, their agreements qualify as securities contracts, or their transfers qualify as settlement payments.

Though not necessary for the Court to determine in deciding its Motion, BCV nonetheless mischaracterizes the Trustee's relationship with the Fairfield Liquidators as a "substantive legal relationship" in an effort to trigger nonparty issue preclusion as it pertains to Sentry's qualification as a "financial institution" within the meaning of Section 546(e). Motion at 20 n.13. However, merely sharing an interest in recovering customer property hardly constitutes the sort of "substantive legal relationship" required under *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008), to establish nonparty issue preclusion. *See Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*, No. 07-MD-1902 (JSR), 2013 WL 12191844, at \*13 (S.D.N.Y. Mar. 25, 2013) (emphasizing "preclusion of nonparties is an *exceptional* situation, contrary to the basic presumption that every party is entitled to its day in court").

### B.    BCV Is Precluded from Relitigating the Actual Knowledge Exception

BCV is precluded from arguing that *Cohmad* was wrongly decided and from relitigating whether actual knowledge bars the application of Section 546(e). The District Court issued *Cohmad* following consolidated proceedings on the application of Section 546(e). As BCV concedes, *Cohmad* held that a transferee with actual knowledge of Madoff's fraud cannot claim

---

[6] Although BCV says it disagrees with this Court's opinion in *Fairfield Investment Fund*, Motion at 22, n.15, BCV does not argue in its Motion that Sentry had good faith or that the Trustee has not plausibly alleged Sentry's actual knowledge of Madoff's fraud.

the protections of Section 546(e). Motion at 23. The District Court then remanded to this Court, and this Court has since applied the actual knowledge "exception" on numerous occasions.[7]

BCV participated in the District Court proceedings. *See* Mot. to Withdraw the Reference, ECF No. 5 (raising Section 546(e) as grounds for withdrawal). Given its participation, BCV is bound by *Cohmad*. *See SIPC v. BLMIS (In re Bernard L. Madoff)*, 531 B.R. 439, 466 (Bankr. S.D.N.Y. 2015) ("Those moving defendants that participated in the withdrawal of the reference of the antecedent debt/value issue have had their day in court and Judge Rakoff's decisions are law of the case."); *Picard v. Lowrey (In re BLMIS)*, 596 B.R. 451, 464 (S.D.N.Y. 2019) (law of the case doctrine foreclosed relitigating issue where the District Court "considered and rejected the very arguments that defendants now make"), *aff'd sub nom. Picard v. Gettinger (In re BLMIS)*, 976 F.3d 184 (2d Cir. 2020). BCV did not seek leave to appeal the *Cohmad* decision.

In its Motion, BCV relies heavily on *Picard v. Ida Fishman Revocable Trust (In re BLMIS)*, 773 F.3d 411 (2d Cir. 2014). Motion at 2–3, 18–21, 23 n.17. However, as this Court has recognized, the Second Circuit's decision in *Ida Fishman* did not address the actual knowledge holding from *Cohmad*. *See Picard v. Cohen*, Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296, at *10 n.16 (Bankr. S.D.N.Y. Apr. 25, 2016).

## C. BCV Is Precluded from Arguing that Section 546(e) Applies Independently to Recovery Actions

BCV is also wrong that the Trustee must allege that a subsequent transferee had actual knowledge in order to invoke the actual knowledge exception to Section 546(e). Specifically,

---

[7] *See, e.g.*, *Fairfield Inv. Fund*, 2021 WL 3477479, at *4 (applying actual knowledge exception); Bench Ruling on Mot. to Dismiss, *Picard v. Square One Fund Ltd.*, Adv. Pro. No. 10-04330 (Bankr. S.D.N.Y. May 29, 2018), ECF No. 181 (same); *Picard v. Magnify, Inc. (In re BLMIS)*, 583 B.R. 829, 841 (Bankr. S.D.N.Y. 2018) (same); *Picard v. Mendelow (In re BLMIS)*, 560 B.R. 208 (Bankr. S.D.N.Y. 2016) (same); *Picard v. Avellino (In re BLMIS)*, 557 B.R. 89, 112 (Bankr. S.D.N.Y. 2016) (same); *Shapiro*, 542 B.R. at 100 (same); *Picard v. Ceretti (In re BLMIS)*, Adv. Pro. No. 09-01161 (SMB), 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015) (same); *Merkin I*, 515 B.R. at 117 (same).

BCV argues that under *Cohmad*, its subscription agreement with Sentry is the relevant "securities contract" (in lieu of BLMIS's customer agreement with Sentry), and as such, in a Section 550 recovery action against BCV, the Court must look solely to BCV's actual knowledge to determine whether the initial transfer is avoidable.  Motion at 22–23.  But *Cohmad* does not stand for this proposition, and BCV's argument just repackages the previously rejected argument that the Section 546(e) safe harbor should independently apply to recovery actions under Section 550.

By its plain language, Section 546(e) applies to the avoidance of initial transfers, not the recovery of subsequent transfers under Section 550.  *See* 11 U.S.C. § 546(e) ("[T]he trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title." (emphasis added)); *see also Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) ("The Trustee does not . . . 'avoid' the subsequent transfer; he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550."); *Kelley v. Safe Harbor Managed Account 101, Ltd.*, No. 20-3330, 2022 WL 1177748, *3 n.5 (8th Cir. Apr. 21, 2022) (citing *BNP*, 594 B.R. at 197).

The safe harbor's limitation to avoidance is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct."  *SIPC v. BLMIS (In re Madoff Sec.)*, 501 B.R. 26, 30 (S.D.N.Y. 2013).  It is also consistent with the understanding that the Bankruptcy Code's avoidance provisions protect against depletion of a debtor's estate, while Section 550 is merely a "utility provision," intended to help execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place." *See In re Picard*, 917 F.3d 85, 98 (2d Cir. 2019).  The Court should reject BCV's attempt to muddle the law by conflating avoidance and recovery under Section 550.

*Cohmad* confirmed that Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees. The District Court withdrew the reference on whether Section 546(e) barred recovery of a subsequent transfer pursuant to Section 550.[8] However, in its decision, the District Court specifically limited the safe harbor to avoidance claims based on the plain language of Section 546(e). *See Cohmad*, 2013 WL 1609154, at *4, *9 (applying the "plain terms" of Section 546(e)); *id.* at *7 (recognizing that subsequent transferees can raise initial transferees' defenses to *avoidance*); *id.* at *10 ("[B]oth initial transferees and subsequent transferees are entitled to raise a defense based on the application of Section 546(e) to the *initial* transfer from Madoff Securities." (emphasis added)). And though the District Court hypothesized, in *dicta*, that a subsequent transferee's subscription agreements with the initial transferee feeder fund, and related agreements and transactions, might under certain circumstances constitute relevant "securities contracts," and that certain subsequent transferee defendants might qualify as "financial institutions" or "financial participants," the District Court was clear that the focus of the safe harbor is still on the *initial* transfers.[9] *See id.* at *9. Contrary to Defendant's argument, the District Court did not, in its hypothetical, discuss actual knowledge or indicate that in such circumstances, the initial transferee's actual knowledge should be disregarded.

---

[8] *See* Section 546(e) Briefing Order, *In re Madoff Sec.*, No. 12-MC-115 (S.D.N.Y. May 16, 2012), ECF No. 119 (withdrawing the reference on issue of "whether application of Section 546(e) to an initial or mediate Transfer bars recovery by the Trustee of any subsequent Transfer pursuant to Section 550").

[9] The original point of the *Cohmad* hypothetical was to address the subsequent transferee defendants' argument that if necessary, in lieu of the BLMIS customer agreements, their subscription agreements could act as the relevant securities agreements under Section 546(e). *Cohmad*, 2013 WL 1609154, at *8. That argument became moot as both the Second Circuit and the District Court determined that each BLMIS customer agreement was a "securities agreement" and the initial transfers from BLMIS were "settlement payments" notwithstanding that no securities were traded and therefore the Trustee's avoidance claims were subject to Section 546(e).

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 339 (2d Cir. 2011), which the District Court cites in *Cohmad* solely to support its reading of what constitutes a "securities contract," does not change this outcome.  The focus is still on the initial transfers, which for purposes of Section 546(e), the Second Circuit has already determined, and it is now not debatable, are the transfers from BLMIS to its feeder funds. *See Ida Fishman*, 773 F.3d at 422–23. As such, neither the initial transfers nor the initial transferees' actual knowledge can be disregarded, regardless of which securities agreement is being relied upon.

Based on *Cohmad*, this Court held in *BNP* that Section 546(e) applies only to avoidance, not recovery, and that a subsequent transferee cannot extend the protections of Section 546(e) where the Trustee has adequately pled the initial transferee's actual knowledge.  *See BNP*, 594 B.R. at 197; *see also SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*, 620 B.R. 505, 514 (Bankr. S.D.N.Y. 2020) ("[T]he safe harbor defense only applies by its terms to the initial transfer.").  In *BNP*, the Court explicitly rejected the argument being made here—that the "*only* way the Trustee can escape the application of Section 546(e) here is by pleading with particularity and plausibility that the [subsequent transferee defendants] actually knew of the Madoff Ponzi scheme." *BNP*, 594 B.R. at 196–97 (emphasis in original).  Rather, as explained in *BNP*, a subsequent transferee gets only "indirect" protections from Section 546(e) to the same extent it protects the initial transferee.  *Id.* at 197.  Like *Cohmad*, *BNP* is law of the case, and BCV is bound by both decisions.  *See Picard v. Est. of Seymour Epstein (In re BLMIS)*, No. 2l-cv-02334 (CM), 2022 WL 493734, at *12 (S.D.N.Y. Feb. 17, 2022) (finding in a SIPA liquidation like this one where different adversary proceedings arise within the same liquidation, that law of the case applies when "prior decisions in an ongoing case either expressly resolve[] an issue or necessarily resolve[] it by implication").

BCV nevertheless continues to argue that its agreements with Sentry are the relevant "securities agreements," and therefore this Court must look only to BCV's actual knowledge.[10] Motion at 23. But the District Court did not conclude this, and *BNP* confirmed this was not the case. Indeed, BCV's interpretation would eliminate the point of the actual knowledge exception— which is to restrict all bad actors from hiding behind the safe harbor. *See Cohmad*, 2013 WL 1609154, at *3 (explaining defendants who knew BLMIS was a Ponzi scheme "must have known that the transfers they received directly or indirectly from Madoff Securities were not 'settlement payments'"). Adopting BCV's position means the safe harbor would apply even where the initial transferee *knew* there were no securities transactions to protect. It would also allow an initial transferee—who had knowledge of the fraud and was unable to satisfy a judgment (like Sentry)— to place fraudulently transferred moneys with a subsequent transferee and out of the reach of a trustee. *See Cohmad*, 2013 WL 1609154, at *1, *7 ("A defendant cannot be permitted to in effect launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of Section 546(e)."). Such an interpretation would encourage inequitable conduct and substantially interfere with powers granted to a trustee in a SIPA liquidation proceeding.

Providing a subsequent transferee with more rights than an initial transferee is inconsistent with congressional intent on Section 546(e). *See Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.)*, 343 B.R. 75, 83 (Bankr. S.D.N.Y. 2006), *rev'd on other grounds*, 388 B.R. 489 (S.D.N.Y. 2008) ("Upon consideration of the initial transferee's defenses and once the amount of its liability

---

[10] BCV contends that, by alleging that the subsequent transfer was customer property, the Trustee has conceded that the initial transfers were "in connection with" Sentry's agreements with BCV. Motion at 17–23. However, showing that the subsequent transfer can be traced through the "relevant pathways" is irrelevant to the issue of whether the initial transfers were "in connection with" any transaction or contract between Sentry and BCV for purposes of the Section 546(e) safe harbor.

is established, that amount can be sought from any of the transferees, including subsequent

transferees, subject to any of their additional defenses.").  As the Eighth Circuit pointed out in

*Kelley* while citing *BNP*, under Section 546(e), "a subsequent transferee is protected *indirectly* to

the extent that the initial transfer is not avoidable because of the safe harbor."  2022 WL 1177748,

at *3 n.5 (citing *BNP*, 594 B.R. at 197) (emphasis added).  Conversely, providing subsequent

transferees with the same defenses to avoidance as available to initial transferees does not unfairly

bias subsequent transferees.

Finally, this Court's *Fairfield Investment Fund* decision does not demand a different result.

In that case, this Court analyzed the actual knowledge of five different subsequent transferees,

dismissing the individual claims against one of them.  However, there, the subsequent transferees

were administrators and partners of FGG, and the Court analyzed the FGG defendants' actual

knowledge for purposes of imputing it to initial transferee feeder funds.  *Fairfield Inv. Fund*, 2021

WL 3477479, at *4–7.  That case was also decided at a time when the burden of pleading lack of

good faith was on the Trustee, *see Citibank*, 12 F.4th at 195, and the Court dismissed the individual

claims against the relevant subsequent transferee (including two-year transfers not protected by

Section 546(e)) after determining the Trustee's allegations as to both actual knowledge and willful

blindness were insufficient.  *Id*. at *7–8, *15.  The "focus" of the Section 546(e) argument was on

the initial transfer and whether the Trustee had sufficiently pled the *initial transferee's* actual

knowledge, and the Court did not analyze the issue of whether a subsequent transferee's actual

knowledge is separately required to defeat the application of Section 546(e).[11]

---

[11] This Court's *Amsterdam* decision in the Fairfield Chapter 15 liquidation proceedings does not support BCV's position that its agreement with Sentry requires the Trustee to plead BCV's actual knowledge in order to avoid the initial transfer from BLMIS.  *See* Motion at 19–20 (citing *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Adv. Pro. No. 10-13164 (SMB), 2020 WL 7345988, at *6–7 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Amsterdam*").  That decision did not involve recovery of subsequent transfers under the Bankruptcy Code.  Rather, the Court held that Section 546(e) barred the

## III.   THE COMPLAINT SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE SENTRY INITIAL TRANSFERS

BCV argues that the Trustee's incorporation of his then-operative complaint against Sentry violates Rule 8(a)(2)'s requirement to include a "short and plain statement" showing the Trustee is entitled to relief.  Motion at 24–25.  However, there is no doubt that the Trustee may incorporate the Fairfield complaint under Rule 10(c) to demonstrate the avoidability of the initial transfers from BLMIS.  *See Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010) (allowing incorporation by reference under Rule 10(c) of pleadings in different adversary proceeding within the same liquidation).

BCV's argument also conflicts with the District Court's prior opinion in this liquidation on whether under Section 550(a) the Trustee must avoid an initial transfer or plead its avoidability in a subsequent transfer action.  *See In re Madoff Sec.*, 501 B.R. at 26.  Various defendants moved to withdraw the reference on the meaning of Section 550(a) and argued in the District Court that the Trustee failed to state a claim for recovery of any subsequent transfers from Sentry.  *Id.* at 29.  But the District Court held that the Trustee stated a claim, finding that the Trustee did not need to "avoid" a transfer before pursuing a claim for recovery under Section 550(a), *id.*, that Section 550(a) only "requires that the Trustee show that the transfer he seeks to recover is avoidable in each recovery action," *id.*, and that the Trustee pleaded the avoidability of the initial transfers from BLMIS to Sentry by incorporating by reference the then-operative Fairfield complaint.  *Id.* at 36.

Applying these principles in a representative case, the District Court stated:

> [T]he Trustee's complaint against Standard Chartered Financial
> Services incorporates by reference the complaints against Kingate

---

Fairfield liquidators' claims for unfair preference and undervalue transactions under the B.V.I. Insolvency Act, which the Court analogized to avoidance provisions in the Bankruptcy Code.  *See Amsterdam*, 2020 WL 7345988, at *5 (citing *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 596 B.R. 275, 302, 314 (Bankr. S.D.N.Y. 2018)).  The *Amsterdam* decision is currently on appeal in District Court.  *See In re Fairfield Sentry Ltd.*, No. 19-CV-03911 (VSB) (consolidated) (S.D.N.Y.).

> and Fairfield, including the allegations concerning the avoidability
> of the initial transfers, and further alleges the avoidability of these
> transfers outright. . . . Thus, the avoidability of the transfers from
> Madoff Securities to Kingate and Fairfield is sufficiently pleaded
> for purposes of section 550(a).

*Id.* at 36. BCV withdrew on the Section 550(a) issue. *See* Mot. to Withdraw the Reference, ECF No. 5. And this decision—allowing for incorporation by reference—is law of the case. *See Lowrey*, 596 B.R. at 464.

In any event, BCV's argument is much ado about nothing, because this Court may take judicial notice of the operative Second Amended Complaint and its prior decision holding that this complaint sufficiently alleges the avoidability of the initial transfers from BLMIS. *See Fairfield Inv. Fund*, 2021 WL 3477479. On a motion to dismiss, "a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*." *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011). "Included among such matters are decisions in prior lawsuits." *DeMasi v. Benefico*, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008). Finally, the fact that the noticed Fairfield Second Amended Complaint was filed after this Complaint against BCV is of no consequence. *See Rothman*, 220 F.3d at 91–92 (noticing later filed complaint in related proceeding).

The Trustee has complied with the Federal Rules in pleading the avoidability of the initial transfers, and regardless, this Court may take judicial notice of its opinion in *Fairfield Investment Fund*. If this Court holds otherwise, the Trustee respectfully requests the opportunity to replead.

## **CONCLUSION**

The Trustee respectfully requests that the Court deny BCV's Motion.

Dated: May 6, 2022
New York, New York

_/s/ David J. Sheehan_____
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Torello H. Calvani
Email: tcalvani@bakerlaw.com
Joanna F. Wasick
Email: jwasick@bakerlaw.com
Tara E. Turner
Email: tturner@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee
for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment
Securities LLC and the Chapter 7 Estate of
Bernard L. Madoff*