**BAKER & HOSTETLER LLP**

45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (CGM) |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | SIPA LIQUIDATION |
| Defendant. | (Substantively Consolidated) |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 12-01194 (CGM) |
| v. | |
| KOOKMIN BANK, | |
| Defendant. | |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT KOOKMIN BANK'S MOTION TO DISMISS**

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF FACTS ...............................................................................3

   I.     THE BLMIS PONZI SCHEME..............................................................3

   II.    THE INITIAL TRANSFEREE ACTION AND PURSUIT OF CUSTOMER
         PROPERTY .........................................................................................4

   III.   DEFENDANT AND ITS INVESTMENTS IN FAIRFIELD SENTRY .................4

ARGUMENT ...............................................................................................6

   I.     THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT .........6

       A.    Defendant Purposefully Availed Itself of the Laws and Privileges of
            Conducting Business in New York by Investing in Fairfield Sentry..........8

           1.    Defendant's Declaration Is Incomplete and Unreliable...................9

           2.    Defendant's Investments in BLMIS through Fairfield Sentry
                Establish Minimum Contacts.........................................................10

                a.    *BLI* Establishes Jurisdiction Over Defendant ....................11

                b.    The PPM's Obvious Connections with New York ............12

                c.    The Subscription Agreements Include New York
                     Choice of Law and Forum Selection Clauses and
                     Relate to the Trustee's Claims ...........................................14

           3.    The Use of New York Bank Accounts Establishes Personal
                Jurisdiction.................................................................................17

                a.    Defendant's Repeated Use of the Deutsche Bank NY
                     Account and HSBC USA Account Support Jurisdiction...18

                  b.    Even if Defendant Used Correspondent Bank
                     Accounts, This Court Has Personal Jurisdiction Over
                     Defendant........................................................................19

       B.    The Exercise of Personal Jurisdiction Is Reasonable. ...............................22

C.    At Minimum, the Trustee Is Entitled to Jurisdictional Discovery. ............22

II.    SECTION 546(e) DOES NOT BAR RECOVERY FROM DEFENDANT .........23

A.    Fairfield Sentry Had Actual Knowledge of Madoff's Fraud. ....................24

B.    Defendant Is Precluded From Arguing That Section 546(e) Applies
       Independently to Recovery Actions...........................................................25

III.    THE TRUSTEE'S COMPLAINT ADEQUATELY PLEADS THAT
        DEFENDANT RECEIVED BLMIS CUSTOMER PROPERTY .........................28

A.    The Trustee Meets His Pleading Burden. ..................................................28

B.    Defendant's "Alternative Explanations" Should Be Rejected...................31

C.    The Single Satisfaction Rule Does Not Bar the Trustee's Claim. .............33

IV.    THE TRUSTEE SUFFICIENTLY PLEADS THE AVOIDABILITY OF
        THE FAIRFIELD SENTRY TRANSFERS .........................................................34

CONCLUSION....................................................................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
  599 B.R. 730 (Bankr. S.D.N.Y. 2019) .....................................................................29

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
  98 F.3d 25 (2d Cir. 1996) .......................................................................................7

*Al Rushaid v. Pictet & Cie*,
  28 N.Y.3d 316 (2016) ........................................................................................20, 21

*Am. Casein Co. v. Geiger (In re Geiger)*,
  446 B.R. 670 (Bankr. E.D. Pa. 2010) ..................................................................34, 37

*Ayyash v. Bank Al-Madina*,
  No. 04 Civ. 9201(GEL), 2006 WL 587342 (S.D.N.Y. Mar. 9, 2006) ....................23

*Bartlett v. Société Générale de Banque Au Liban SAL*,
  No. 19-CV-00007 (CBA) (VMS), 2020 WL 7089448
  (E.D.N.Y. Nov. 25, 2020) ......................................................................................18

*In re BLMIS*,
  No. 1:21-cv-02334 (CM), 2022 WL 493734 (S.D.N.Y. Feb. 17, 2022) ................35

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)...............................................................................7, 8, 15, 22

*Chase Manhattan Bank v. Banque Generale du Com.*,
  No. 96-cv-5184 (KMW), 1997 WL 266968 (S.D.N.Y. May 20, 1997) ................15

*Chloé v. Queen Bee of Beverly Hills, LLC*,
  616 F.3d 158 (2d Cir. 2010)...........................................................................6, 7, 22

*CNB Int'l, Inc. v. Kelleher (In re CNB Int'l, Inc.)*,
  393 B.R. 306 (Bankr. W.D.N.Y. 2008), *aff'd on other grounds*,
  440 B.R. 31 (W.D.N.Y. 2010) .............................................................................33

*Cromer Fin. Ltd. v. Berger*,
  137 F. Supp. 2d 452 (S.D.N.Y. 2001)....................................................................7

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014).................................................................................................7

*Dandong v. Pinnacle Performance Ltd.*,
  966 F. Supp. 2d 374 (S.D.N.Y. 2013).....................................................................17

*DeMasi v. Benefico*,
    567 F. Supp. 2d 449 (S.D.N.Y. 2008)......................................................................................36

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
    722 F.3d 81 (2d Cir. 2013)..................................................................................................6

*Eldesouky v. Aziz*,
    No. 11–CV–6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014) ...............................17

*Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.)*,
    343 B.R. 75 (Bankr. S.D.N.Y. 2006), *rev'd on other grounds*,
    388 B.R. 489 (S.D.N.Y. 2008)...........................................................................................28

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
    397 F. Supp. 3d 323 (S.D.N.Y. 2019).............................................................................8, 19

*Ferrari v. Cnty. of Suffolk*,
    790 F. Supp. 2d 34 (E.D.N.Y. 2011) ..................................................................................36

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021)..................................................................................................16, 18

*Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*,
    No. 08-15051 (SMB), 2014 WL 47774 (Bankr. S.D.N.Y. Jan. 3, 2014) ..............................30

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
    425 F.3d 158 (2d Cir. 2005)................................................................................................7

*Hau Yin To v. HSBC Holdings PLC*,
    No. 15CV3590-LTS-SN, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd*,
    700 F. App'x 66 (2d Cir. 2017) ...........................................................................................21

*Helms v. Metro. Life Ins. Co. (In re O'Malley)*,
    601 B.R. 629 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021)..........................33

*Hill v. HSBC Bank plc*,
    207 F. Supp. 3d 333 (S.D.N.Y. 2016)..................................................................................21

*HSH Nordbank AG N.Y. Branch v. Street*,
    No. 11 Civ. 9405(DLC), 2012 WL 2921875 (S.D.N.Y. July 18, 2012)...........................17, 19

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945).......................................................................................................7, 8

*Kelley v. Safe Harbor Managed Acct. 101, Ltd.*,
    No. 20-3330, 2022 WL 1177748 (8th Cir. Apr. 21, 2022) ...............................................25, 28

*Kelley v. Westford Special Situations Master Fund, L.P.*,
    No. 19-cv-1073, 2020 WL 3077151 (D. Minn. June 10, 2020) .............................................33

*Kiobel v. Royal Dutch Petroleum Co.*,
    No. 02 Civ. 7618 (KMW)(HBP), 2009 WL 3817590
    (S.D.N.Y. Nov. 16, 2009) ................................................................................................22, 23

*Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*,
    No. 07-MD-1902 (JSR), 2013 WL 12191844 (S.D.N.Y. Mar. 25, 2013) ..............................25

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    20 N.Y.3d 327 (2012) ..................................................................................................20, 21

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013)....................................................................................................20

*Liveo v. Hausman*,
    61 Misc. 3d 1043 (N.Y. Sup. Ct. 2018) ...................................................................................9

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996)......................................................................................................8

*In re Motors Liquidation Co.*,
    590 B.R. 39 (S.D.N.Y. 2018)..................................................................................................35

*Motors Liquidation Co. Avoidance Action Trust v. JPMorgan Chase Bank, N.A.*
    *(In re Motors Liquidation Co.)*,
    565 B.R. 275 (Bankr. S.D.N.Y. 2017) ...............................................................................16, 19

*New Hampshire v. Maine*,
    532 U.S. 742 (2001)................................................................................................................25

*Off. Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic Bank*,
    549 B.R. 56 (S.D.N.Y. 2016)..............................................................................................19, 20

*Picard v. Avellino*,
    557 B.R. 89 (Bankr. S.D.N.Y. 2016) ......................................................................................24

*Picard v. BNP Paribas S.A. (In re BLMIS)*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018) ......................................................................... *passim*

*Picard v. Bureau of Labor Insurance (In re BLMIS)*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) ......................................................................... *passim*

*Picard v. Ceretti*,
    No. 09-01161 (SMB), 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015).............24, 30, 31

*Picard v. Charles Ellerin Revocable Tr. (In re BLMIS)*,
  No. 08-01789 (BRL), 2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012).....................29, 33

*Picard. v. Citibank, N.A. (In re BLMIS)*,
  12 F.4th 171 (2d. Cir. 2021) ...........................................................................................4, 36

*Picard v. Cohmad Sec. Corp. (In re BLMIS)*,
  454 B.R. 317 (Bankr. S.D.N.Y. 2011).............................................................................26, 32

*Picard v. The Est. (Succession) of Doris Igoin (In re BLMIS)*,
  525 B.R. 871 (Bankr. S.D.N.Y. 2015)....................................................................................17

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*,
  627 B.R. 546 (Bankr. S.D.N.Y. 2021).............................................................................7, 8, 19

*Picard v. Fairfield Investment Fund Ltd. (In re BLMIS)*,
  Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479
  (Bankr. S.D.N.Y. Aug. 6, 2021) ...............................................................3, 24, 34, 36

*Picard v. The Gerald and Barbara Keller Family Tr. (In re BLMIS)*,
  634 B.R. 39 (Bankr. S.D.N.Y. 2021)........................................................................................9

*Picard v. JPMorgan Chase & Co. (In re BLMIS)*,
  No. 08–99000 (SMB), 2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10, 2014) .........................10

*Picard v. Magnify, Inc.*,
  583 B.R. 829 (Bankr. S.D.N.Y. 2018).....................................................................................24

*Picard v. Maxam Absolute Return Fund, L.P.*,
  460 B.R. 106 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012).................7, 11, 22

*Picard v. Mayer (In re BLMIS)*,
  Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435
  (Bankr. S.D.N.Y. Oct. 27, 2021) .................................................................6, 29, 30

*Picard v. Mendelow*,
  560 B.R. 208 (Bankr. S.D.N.Y. 2016).....................................................................................24

*Picard v. Merkin (In re BLMIS)*,
  515 B.R. 117 (Bankr. S.D.N.Y. 2014).......................................................................... *passim*

*Picard v. Merkin (In re BLMIS)*,
  581 B.R. 370 (Bankr. S.D.N.Y. 2017).................................................................................31, 32, 33

*In re Picard*,
  917 F.3d 85 (2d Cir. 2019).........................................................................................21, 22, 26

*Porina v. Marward Shipping Co.*,
    521 F.3d 122 (2d Cir. 2008)..................................................................................6

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000)..................................................................................37

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
    624 F.3d 123 (2d Cir. 2010)................................................................................6

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Securities)*,
    No. 12-MC-115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)............................. *passim*

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
    379 B.R. 5 (Bankr. E.D.N.Y. 2007)................................................................29, 31

*SIPC v. BLMIS (In re Madoff Sec.)*,
    501 B.R. 26 (S.D.N.Y. 2013)...........................................................25, 34, 35

*SIPC v. Stratton Oakmont, Inc.*,
    234 B.R. 293 (Bankr. S.D.N.Y. 1999) ................................................................32

*Strauss v. Crédit Lyonnais, S.A.*,
    175 F. Supp. 3d 3 (E.D.N.Y. 2016) ..................................................................18

*SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*,
    620 B.R. 505 (Bankr. S.D.N.Y. 2020) ................................................................27

*Taylor v. Sturgell*,
    553 U.S. 880 (2008)........................................................................................25

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
    916 F.3d 143 (2d Cir. 2019)..............................................................................7

*U.S. v. Int'l Longshoremen's Assn.*,
    518 F. Supp. 2d 422 (E.D.N.Y. 2007) ....................................................35, 36, 37

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016)..............................................................................22

*Whitaker Secs., LLC v. Rosenfeld (In re Rosenfeld)*,
    543 B.R. 60 (Bankr. S.D.N.Y. 2015)...................................................................35

**Statutes**

11 U.S.C. § 546(e) ........................................................................................ *passim*

11 U.S.C. § 550..........................................................................................26, 33

11 U.S.C. § 550(a) .....................................................................................2, 30, 34

11 U.S.C. § 550(a)(2)...................................................................................................28

11 U.S.C. § 550(d).......................................................................................................33

**Rules**

Fed. R. Civ. P. 8.......................................................................................................3, 36

Fed. R. Civ. P. 8(a)(2)...................................................................................................34

Fed. R. Civ. P. 10............................................................................................................3

Fed. R. Civ. P. 10(c).....................................................................................................34

Fed. R. Civ. P. 12(b)(2)..................................................................................................1

Fed. R. Civ. P. 12(b)(6)..................................................................................................1

Fed. R. Civ. P. 17(b)......................................................................................................9

**Other Authorities**

5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure 3d §
    1326 (4th ed. 2008).................................................................................................35

Plaintiff Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), and the substantively consolidated chapter 7 estate of Bernard L. Madoff ("Madoff"), by and through the Trustee's undersigned counsel, respectfully submits this memorandum of law and the supporting declaration of Eric R. Fish ("Fish Decl.") in opposition to Defendant Kookmin Bank's motion to dismiss the Complaint ("Motion" or Mot.").

## PRELIMINARY STATEMENT

Defendant's Motion tries to convince the Court that Defendant—a sophisticated bank that funneled millions of dollars to BLMIS through its largest feeder fund, Fairfield Sentry Limited ("Fairfield Sentry")—cannot possibly be subjected to the jurisdiction of this Court because it had little to no knowledge regarding Fairfield Sentry's or BLMIS's business. This is disingenuous. The reality is that Kookmin Bank knowingly invested in Fairfield Sentry, a New York-centric fund that placed its assets with BLMIS in New York, and purposely availed itself of U.S. securities markets and the New York banking system. Despite this purposeful availment, Defendant moves to dismiss the Trustee's Complaint on the grounds that this Court does not have jurisdiction under Fed. R. Civ. P. 12(b)(2). Defendant also moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that: (i) the safe harbor under Section 546(e) bars recovery; (ii) the Complaint fails to plead that Defendant received any transfers of customer property; and (iii) the Complaint does not adequately allege avoidability of the initial transfers. Defendant's arguments under both Rule 12(b)(2) and 12(b)(6) are without merit.

*First*, this Court has personal jurisdiction over Defendant as Defendant's contacts are the type that establish and support the exercise of personal jurisdiction in this Circuit. Specifically, Defendant acknowledged that it received and reviewed Fairfield Sentry's Private Placement Memorandum ("PPM"), which made clear that Fairfield Sentry was a New York-centric fund

invested in U.S. equities. Defendant also used a New York bank account to subscribe into and
redeem from Fairfield Sentry. While the use of this bank account alone provides a sufficient basis
for jurisdiction, Defendant also contemplated the jurisdiction of the New York courts in executing
a subscription agreement with Fairfield Sentry that contained New York forum selection and
choice of law provisions.

*Second*, the Trustee plausibly alleges the avoidability of the initial transfers based on
Fairfield Sentry's actual knowledge of fraud, and therefore the safe harbor for securities payments
pursuant to securities contracts under Section 546(e) is inapplicable and does not bar recovery
from Defendant. Defendant mostly ignores this actual knowledge exception and only argues in a
footnote that there is no such exception or, in the alternative, Defendant's lack of knowledge as a
subsequent transferee is determinative. But the plain language of the statute and precedent in this
SIPA liquidation proceeding makes the safe harbor inapplicable to the Trustee's claims against
Defendant, who is a subsequent transferee.

*Third,* the Trustee plausibly alleges that Defendant received customer property under
Section 550(a) by outlining the relevant pathways through which customer property was
transferred from BLMIS to Fairfield Sentry and subsequently to Defendant. Notably, Defendant
does not take issue with the movement of the funds or Defendant's receipt of those funds. Instead,
Defendant challenges the nature of the transfers by questioning whether they consisted of customer
property. In doing so, Defendant attempts to operate in a universe of hypotheticals by putting forth
"alternate explanations" for the source of the transfers. Such supposition and speculation is
inappropriate for a motion to dismiss and runs contrary to well-established case law in this SIPA
liquidation proceeding. The Trustee is under no obligation to establish a dollar-for-dollar
accounting at the pleading stage.

*Finally*, the Trustee's Complaint adequately alleges the avoidability of the initial transfers. Defendant asserts that the Trustee has violated Fed. R. Civ. P. 8 and 10 by incorporating by reference his complaint against Fairfield Sentry (the "Fairfield Amended Complaint"),[1] but this argument conflicts with precedent from the District Court.  Moreover, this Court may take judicial notice of the operative complaint—the Fairfield Second Amended Complaint—and its opinion in *Picard v. Fairfield Investment Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*"), in which this Court held that the Trustee plausibly alleged Fairfield Sentry's actual knowledge of fraud and the avoidability of the initial transfers.

Having failed to raise a sufficient challenge to the Trustee's Complaint, Defendant's Motion must be denied.

## STATEMENT OF FACTS

### I.      THE BLMIS PONZI SCHEME

Madoff founded and operated BLMIS from New York until its collapse in 2008.  *See* Compl. ¶ 31, ECF No. 1.  BLMIS had three principal business units: (i) a proprietary trading business; (ii) a market-making business; and (iii) an investment advisory business (the "IA Business").  *Id.* ¶ 23.  For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy, which involved (a) investing in a basket of common stocks from the Standard & Poor's 100 Index, (b) buying put options and selling call options to hedge against price changes in the underlying basket of stocks, and (c) purchasing U.S. treasury bills when the money was out of the market.  *Id.* ¶¶ 24–25.  In reality, BLMIS operated a Ponzi scheme through its IA Business.

---

[1] After the Trustee filed his Complaint against Defendant, the Trustee filed a Second Amended Complaint ("Fairfield Second Amended Complaint") in the initial transfer action.  *See* Fairfield Second Amended Complaint, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286.

*Id.* ¶ 26.  On December 11, 2008, Madoff's fraud was publicly revealed, and he was arrested for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud.  *Id.* ¶ 11.

The extent of damage Madoff caused was made possible by BLMIS "feeder funds"—large investment funds created for the express purpose of funneling investors' funds into BLMIS.  *See Picard. v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 179 (2d. Cir. 2021).  Defendant invested in one of these feeder funds, Fairfield Sentry, a fund operated by Fairfield Greenwich Group ("FGG") in New York that invested more than 95% of its assets with BLMIS.  *See* Compl. ¶¶ 2, 7.

## II.    THE INITIAL TRANSFEREE ACTION AND PURSUIT OF CUSTOMER PROPERTY

Following BLMIS's collapse and the commencement of the SIPA liquidation proceeding, the Trustee filed an adversary proceeding against Fairfield Sentry and related defendants to avoid and recover fraudulent transfers of stolen customer property in the amount of approximately $3 billion.  *Id.* ¶ 35.  In 2011, the Trustee settled with Fairfield Sentry and others.  *Id.* ¶ 40.  As part of the settlement, Fairfield Sentry consented to a judgment in the amount of $3.054 billion but repaid only $70 million to the BLMIS estate.  *Id.*  The Trustee then commenced a number of adversary proceedings against defendants like Kookmin Bank to recover the approximately $3 billion in missing customer property.

## III.    DEFENDANT AND ITS INVESTMENTS IN FAIRFIELD SENTRY

Defendant is a bank organized under the laws of South Korea, with its principal place of business in South Korea.  *Id.* ¶ 22.  Defendant invested substantial sums with Fairfield Sentry, which, in turn, invested nearly all its funds with BLMIS.  *Id.* ¶ 2.  Prior to BLMIS's collapse, Defendant received more than thirty transfers from Fairfield Sentry between January 2005 and January 2006 totaling more than $42 million.  *Id.* ¶¶ 2, 41, Ex. C.  For each of the transfers, the

Trustee's Complaint sets forth the subsequent transferor (Fairfield Sentry), the subsequent

transferee (Kookmin Bank), the date of the subsequent transfer, and the amount of the subsequent

transfer. *Id.*, Ex. C.

Investors in Fairfield Sentry, including Defendant, were required to execute subscription

agreements in which the investors acknowledged their sophistication and that they had "such

knowledge and experience in financial and business matters that [they were] capable of evaluating

the risks of this investment." *See* Declaration of Hoon-Mi Park ("Park Decl."), Ex. 2 ¶ 8.  The

subscription agreements also incorporated Fairfield Sentry's PPMs; and by signing, investors

warranted that they "received and read a copy of the [PPMs]." *Id.* ¶ 7.  The Park Declaration

appends one such subscription agreement, but the Trustee is in possession of at least two others

for Defendant. Fish Decl., Exs. 1–2.  Defendant signed all of these subscription agreements *before*

the date of the PPM submitted with the Park Declaration, and therefore must have received and

reviewed multiple Fairfield Sentry PPMs.  *See* Park Decl., Ex. 1; Fish Decl., Exs. 1–2.

These Fairfield Sentry subscription agreements included several references to New York.

For example, as Defendant itself acknowledges, the subscription agreements contained a New

York choice of law provision and forum selection clause.  Park Decl., Ex. 2 ¶¶ 16, 19; Fish Decl.

Exs. 1–2 ¶¶ 16, 19.   In addition, Defendant designated redemptions from Fairfield Sentry be

deposited into an account with "Deutsche Bank Trust Company Americas NY" (the "Deutsche

Bank NY Account") in its own name; and in one of these agreements, Defendant designated the

same account for subscriptions to Fairfield Sentry.  Park Decl., Ex. 2  ¶ 30.g; Fish Decl. Ex. 1 ¶

30.g, Ex. 2 ¶¶ 30.g-h.   And like all Fairfield Sentry investors, Defendant agreed to send its

subscription payments to Fairfield Sentry's HSBC bank account in New York (the "HSBC USA

Account").  Park Decl., Ex. 2 ¶ 3; Fish Decl. Exs. 1–2 ¶ 3.

The PPMs—at least one of which Defendant acknowledged reviewing—also disclosed BLMIS's role as the custodian for Fairfield Sentry. Specifically, the PPMs disclosed that BLMIS served as custodian for Fairfield Sentry, where 95% of Fairfield Sentry's assets were under BLMIS's custody. Park Decl., Ex. 1. at 15. The PPMs were therefore explicit in informing investors, including Defendant, that BLMIS would have custody of Fairfield Sentry's assets. In another clear reference to BLMIS, the PPMs disclosed that Fairfield Sentry sought "to obtain capital appreciation of its assets principally through the utilization of a nontraditional options trading strategy described as 'split strike conversion,' to which the Fund allocates the predominant portion of its assets." Park Decl., Ex. 1 at 8. The PPMs also had a number of references to the New York-centric nature of Fairfield Sentry, as more fully set forth below. *See infra* pp. 13–14.

## ARGUMENT

## I.    THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only show a *prima facie* case that personal jurisdiction exists. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013). A *prima facie* showing of jurisdiction "may be established solely by allegations." *Id.* at 84–85 ("Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction."). A plaintiff also may establish a *prima facie* case of jurisdiction through affidavits and supporting materials that contain averments of facts outside the pleadings. *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010); *Picard v. Mayer (In re BLMIS)*, Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435, at *3 (Bankr. S.D.N.Y. Oct. 27, 2021). These pleadings and affidavits are to be construed "in the light most favorable to the plaintiffs, resolving all doubts in their favor." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)).

Depending on the nature of a defendant's contacts with the forum, a court may exercise general or specific jurisdiction. *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 473 (S.D.N.Y. 2001). Specific jurisdiction exists where the defendant purposely directs its activities into the forum and the underlying cause of action arises out of or relates to those activities. *See Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021).[2]

The specific jurisdiction analysis is a two-step inquiry. First, the court assesses whether the defendant established "minimum contacts" in the forum, such that the defendant purposely availed itself of the privilege of conducting activities with the forum. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76 (1985). The defendant's activities need not have taken place within the forum, "and a single transaction with the forum will suffice." *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012). Moreover, minimum contacts may be found when a "defendant's allegedly culpable conduct involves at least in part financial transactions that touch the forum." *In re Fairfield Sentry Ltd.*, 627 B.R. at 566 (quoting *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 151 (2d Cir. 2019)).

In determining whether a defendant's contacts establish personal jurisdiction, the court must look at the "totality of the circumstances" rather than analyze each contact in isolation. *See Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996); *see also Chloé*, 616 F.3d at 164 (analyzing totality of defendants' contacts to determine jurisdiction under New York's long-arm statute and Due Process Clause); *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005) ("No single event or contact connecting defendant to the

---

[2] General jurisdiction is based on the defendant's general business contacts with the forum and permits the exercise of jurisdiction where the claims are unrelated to those contacts. *See Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014).

forum state need be demonstrated; rather, the *totality of all defendant's contacts* with the forum

state must indicate that the exercise of jurisdiction would be proper." (citation omitted)).

Second, the court conducts a "reasonableness" inquiry to determine that its exercise of

jurisdiction will not offend traditional notions of "fair play and substantial justice." *Int'l Shoe*,

326 U.S. at 320. To determine whether jurisdiction is reasonable, courts consider the following:

> (1) the burden that the exercise of jurisdiction will impose on the
> defendant; (2) the interests of the forum state in adjudicating the
> case; (3) the plaintiff's interest in obtaining convenient and effective
> relief; (4) the interstate judicial system's interest in obtaining the
> most efficient resolution of the controversy; and (5) the shared
> interest of the states in furthering social policies.

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996). Where the plaintiff

has alleged purposeful availment, however, the burden shifts to the defendant to present a

"compelling case" that jurisdiction would be unreasonable. *In re Fairfield Sentry Ltd.*, 627 B.R.

at 567 (citing *Burger King*, 471 U.S. at 472–73).

### A.    Defendant Purposefully Availed Itself of the Laws and Privileges of Conducting Business in New York by Investing in Fairfield Sentry.

Defendant had numerous and substantive contacts with New York that establish this

Court's jurisdiction. Defendant: (1) invested in Fairfield Sentry, whose assets were managed and

custodied by BLMIS in New York and placed in U.S. investments; (2) used New York banks to

transact with Fairfield Sentry; and (3) had direct connections with New York through its Fairfield

Sentry subscription agreements. Several of these contacts are sufficient in and of themselves to

support jurisdiction. But at a minimum, the contacts in their totality plainly establish that

Defendant purposefully directed its activities to the United States and New York specifically. *See

Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 397 F. Supp. 3d 323, 344

(S.D.N.Y. 2019) ("When all [defendant]'s Agreement-related contacts are considered together, it

is clear [the defendant] purposely availed itself of the forum.").

Defendant attempts to raise issues of fact regarding its role in its Fairfield Sentry investments, but regardless of its purported role, Defendant cannot escape the basic facts of this recovery action: Kookmin Bank signed multiple subscription agreements to invest in Fairfield Sentry, placed funds into Fairfield Sentry, and received subsequent transfers of stolen customer property as part of its redemptions—all while utilizing New York bank accounts. Defendant's arguments regarding its role and alleged lack of knowledge of the investment thus ring hollow.

### 1.    Defendant's Declaration Is Incomplete and Unreliable.

In an effort to distance itself from this forum, Defendant attempts to disavow any responsibility by arguing that its "role was solely to provide administrative 'back office' execution services for a nominal fee," and to do what the asset managers' instructed. Mot. at 17. But Defendant voluntarily elected to enter into these arrangements, subscribed into Fairfield Sentry, and received transfers from Fairfield Sentry. Notably, Defendant does not argue that it is an improper party to this proceeding or that some other entity received the transfers at issue.[3]

Defendant's arguments rely heavily on the Park Declaration, which is incomplete and unreliable. The Park Declaration attaches one subscription agreement, dated April 26, 2004, (Park Decl., Ex. 2), and states that Defendant signed "several substantively identical Subscription Agreements with Fairfield [Sentry]." Park Decl. ¶ 10. But this representation is incorrect. As noted above, the Trustee is aware of at least two other signed subscription agreements: one dated April 24, 2004, and another dated April 25, 2004. *See* Fish Decl., Exs. 1–2. While the overall

---

[3] Even if Defendant acted as a trustee as it submits, Defendant is still the proper party to this lawsuit. Under Fed. R. Civ. P. 17(b), the capacity of a trust to be sued is determined by the laws of the state where the court is located. Under New York law, an express trust does not have the capacity to be sued in its own name. *Picard v. The Gerald and Barbara Keller Family Tr. (In re BLMIS)*, 634 B.R. 39, 48 (Bankr. S.D.N.Y. 2021); *Liveo v. Hausman*, 61 Misc. 3d 1043, 1044–45 (N.Y. Sup. Ct. 2018) ("A trust . . . is a legal fiction, and cannot sue or be sued itself. . . . Instead, trustees, as representatives of the trust, act on behalf of the trust to bring legal action, and can also be sued in situations where the trust may be liable.").

form of the subscription agreements may be similar, Defendant disregards key differences in the completed forms. For instance, while the Park Declaration attaches a subscription agreement designating a Korean bank for subscription payments, another subscription agreement shows that Defendant designated the Deutsche Bank NY Account for its subscription payments. Park Decl. Ex. 2 ¶ 30.h; Fish Decl. Ex. 2 ¶ 30.h.

The Park Declaration also is inaccurate in stating that the October 1, 2004 PPM was the "only one" Defendant received. *See* Park Decl. ¶ 7. The subscription agreement attached to the Park Declaration, as well as the two subscription agreements in the Trustee's possession, were all signed in April 2004, *before* the date of the October 1, 2004 PPM. In executing the April 2004 subscription agreements, Defendant attested to having "received and read a copy of the [PPM]." *See* Fish Decl., Exs. 1–2, ¶ 7; Park Decl., Ex. 2 ¶ 7. The Trustee also has documentation showing that Defendant was invested in Fairfield Sentry at least as of December 30, 2003. *See* Fish Decl., Ex. 3. As the October 1, 2004 PPM is dated *after* the time Defendant signed the April 2004 subscription agreements and after it invested with Fairfield Sentry, Defendant necessarily must have received earlier versions of the PPM.[4] The Park Declaration—which Kookmin Bank relies on in denying personal jurisdiction—is thus incomplete and lacks credibility.

### 2.    Defendant's Investments in BLMIS through Fairfield Sentry Establish Minimum Contacts.

Defendant is subject to this Court's jurisdiction because it invested in Fairfield Sentry with the obvious purpose of having funds invested in New York with BLMIS and profiting therefrom. *See Picard v. JPMorgan Chase & Co. (In re BLMIS)*, No. 08–99000 (SMB), 2014 WL 5106909,

---

[4] The Trustee does not have information as to when exactly Defendant first invested with Fairfield Sentry to determine the applicable PPM, but the Trustee's records reflect that the last PPM prior to December 2003 was dated July 2003 and there were also Fairfield Sentry PPMs dated prior to that time. The Park Declaration therefore raises multiple questions requiring discovery. *See also infra* pp. 22–23.

at *9 (Bankr. S.D.N.Y. Oct. 10, 2014) (recognizing that "defendants who invested directly or indirectly with BLMIS and received payments from BLMIS as initial transferees or as subsequent transferees of those initial transferees were subject to the Court's personal jurisdiction"); *Maxam*, 460 B.R. at 116–20 (finding jurisdiction where defendant knew and intended that funds invested with BLMIS feeder fund would be sent to New York for investment by BLMIS in New York). Defendant contends that it was not aware of the obvious New York connection of its Fairfield Sentry investment, but the subscription agreements, PPMs, banking information, and nature of the investment all demonstrate otherwise. Defendant's argument that it was not aware of the investment in BLMIS is simply implausible in light of BLMIS's central role in the investments. It is inconceivable that a sophisticated bank would place funds with Fairfield Sentry without knowing that substantially all of those funds would be placed with BLMIS for investment.

### a.    *BLI* Establishes Jurisdiction Over Defendant

Based on the reality of Fairfield Sentry's investment structure, this Court already has concluded that investors like Kookmin Bank are subject to personal jurisdiction in *Picard v. Bureau of Labor Insurance (In re BLMIS)*, 480 B.R. 501, 516–18 (Bankr. S.D.N.Y. 2012) (Lifland, J.) ("*BLI*"). There, as here, the Trustee's suit was "based upon [the subsequent transferee's] investment of tens of millions of dollars in Fairfield Sentry with the specific goal of having funds invested in BLMIS in New York, with intent to profit therefrom." *Id.* at 506. There, as here, the subsequent transferee was provided with a PPM and executed similar subscription agreements. *Id.* at 507–08. For instance, "the PPMs set forth that BLMIS would retain custody of at least 95% of the Fund's assets" and that the investments would be placed in S&P stocks. *See id.* at 508. And there, as here, the subsequent transferee argued that the foreseeability of its investment ending up in a BLMIS account was insufficient to support personal jurisdiction. *Id.* at 516 n.14. The Court rejected this argument and called it "disingenuous," explaining:

11

> BLI's investments in Fairfield Sentry did not merely "end up" in an account at BLMIS as a result of happenstance or coincidence. Rather, BLI purposefully availed itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market.

*Id.* at 517.

Because Kookmin Bank is similarly situated to the defendant in *BLI* with respect to the fundamental purpose of its investment, *BLI* is controlling and resolves Defendant's personal jurisdiction defense without the need for inquiry into its additional New York contacts.

### b.    The PPM's Obvious Connections with New York

Defendant's contentions that it was unaware of Fairfield Sentry's ties to BLMIS and New York fall flat. To invest with Fairfield Sentry, Defendant executed the subscription agreements through which it affirmed having received and read Fairfield Sentry's PPMs and agreed to be bound by the PPMs' terms. Defendant relies on its purported "back office" role to argue that it "would have reviewed, if any of it, only the steps to execute the asset managers' purchase and redemption instructions," as "[o]ther parts of the PPM were not relevant to [Defendant]'s duties or responsibilities." Mot. at 18. But such an argument belies the actual documents that Defendant executed. Indeed, in signing the subscription agreements, Defendant attested multiple times to reviewing the applicable PPMs and being bound by their terms. Moreover, even if Defendant was acting as a trustee as it claims, Paragraph 27 of the subscription agreements provides in no uncertain terms that "[i]f subscriber is subscribing as trustee, agent, representative, or nominee for another person (the 'Beneficial Shareholder'), Subscriber agrees that the representations and agreements herein are made by Subscriber with respect *to itself* and the Beneficial Shareholder." Park Decl., Ex. 2, ¶ 27 (emphasis added). Defendant thus explicitly agreed to the terms of Fairfield Sentry's subscription agreements on its own behalf, while also affirming it had read the contents

of the PPMs.  Defendant's bald assertion that it did not read the PPMs is contrary to the executed

documents and does nothing more than raise fact questions inappropriate for a motion to dismiss.

Fairfield Sentry clearly represented in the PPMs that it would be invested in the U.S.

securities market and custodied with BLMIS.  Putting aside Defendant's inaccurate statement that

it received only the October 1, 2004 PPM, that document alone shows the investment's connection

with the United States, New York, and BLMIS.  The October 1, 2004 PPM noted that BLMIS

served as Fairfield Sentry's custodian and held 95% of Fairfield Sentry's assets.  Park Decl., Ex.

1 at 14–15.  And while Defendant makes the implausible claim it "did not know that BLMIS or

Bernie Madoff had anything to do with Fairfield or its shares," (Mot. at 18), it is beyond reason

for Defendant to claim that "[n]othing in the PPM informs a reader that any activity relating to

Fairfield or its investments would take place in New York or elsewhere in the United States."  Mot.

at 19.  For instance, in describing the investment, the October 1, 2004 PPM stated that the

investment strategy and typical position entail:

> (i) the purchase of a group or basket of equity securities that are
> intended to highly correlate to the S&P 100 Index, (ii) the sale of
> out-of-the-money S&P 100 Index call options in an equivalent
> contract value dollar amount to the basket of equity securities, and
> (iii) the purchase of an equivalent number of out-of-the-money S&P
> 100 Index put options. An index call option is out-of-the-money
> when its strike price is greater than the current price of the index; an
> index put option is out-of-the-money when the strike price is lower
> than the current price of the index. The basket typically consists of
> approximately 35 to 45 stocks in the S&P 100.

Park Decl., Ex. 1 at 8.  That PPM further provided: "The Fund may invest some of its assets in

*short-term U.S. government obligations*, certificates of deposit, short-term high grade commercial

paper and other money market instruments, including repurchase agreements with respect to such

obligations, money market mutual funds and short term bond funds."  *Id.* at 9.  (emphasis added).

13

If BLMIS's custody of the assets and investment strategy centered around U.S. securities wasn't enough, the October 1, 2004 PPM is replete with further references to the United States and New York that make Defendant's assertions even more outlandish:

- The minimum investment and initial offering price are in U.S. Dollars.[5]

- "[Fairfield Sentry] will maintain its assets in U.S. dollars."[6]

- "The Net Asset Value per Share is determined in U.S. dollars."[7]

- Fairfield Sentry maintains U.S. counsel located in New York.[8]

- The trading risks discuss U.S. government activities.[9]

- Fairfield Sentry's intermediary bank is in New York.[10]

- Fairfield Sentry's manager, FGG, maintains its principal office in New York.[11]

- Legal matters in connection with the offering have been passed upon for Fairfield Sentry in the United States by counsel located in New York.[12]

    **c.**    **The Subscription Agreements Include New York Choice of Law and Forum Selection Clauses and Relate to the Trustee's Claims**

Defendant's executed subscription agreements themselves further evidence a "strong nexus with New York" supporting jurisdiction. *See BLI*, 480 B.R. at 517 n.15. In signing the Fairfield Sentry subscription agreements, Defendant clearly submitted to venue in New York, the jurisdiction of the New York courts, and the application of New York law. Park Decl. Ex. 2 ¶¶

---

[5] Park Decl., Ex. 1 at i, 1, 10.

[6] *Id.* at 20.

[7] *Id.* at 20.

[8] *Id.* at vi.

[9] *Id.* at 16.

[10] *Id.* at 13.

[11] *Id.* at 6.

[12] *Id.* at 33.

16, 19. Specifically, the subscription agreement was "governed and enforced in accordance with the laws of New York, without giving effect to its conflict of laws provisions." Park Decl. Ex. 2, ¶ 16. In addition, Defendant: (i) "agree[d] that any suit, action or proceeding . . . with respect to this Agreement and the Fund may be brought in New York," (ii) "irrevocably submit[ted] to the jurisdiction of the New York courts with respect to any [p]roceeding," and (iii) agreed that disputes over the agreement "shall be governed and enforced in accordance with the laws of New York," and that if litigating here, "may not claim that a Proceeding has been brought in an inconvenient forum." Park Decl., Ex. 2 ¶¶ 16, 19.

Defendant argues, incorrectly, that it did not submit to New York jurisdiction because the provision allows "either party" to bring litigation "in any other jurisdiction." Mot. at 22. But the provision provided that it was "the *Fund's* [Fairfield Sentry's] right to commence any Proceeding or otherwise to proceed against Subscriber [Defendant] in any other jurisdiction." Park Decl., Ex. 2 ¶ 19 (emphasis added). Moreover, "Subscriber [Defendant] irrevocably submits to the jurisdiction of the New York courts with respect to any Proceeding." *Id.* Defendant cannot seriously contend that the subscription agreement did not contemplate any proceedings arising out of the agreement to be in New York and under New York law.

Contrary to Defendant's contention that these provisions are irrelevant, (Mot. at 22 n.13), "a choice of law provision may constitute a 'significant contact' with the forum state" and "is relevant in determining whether a defendant has purposefully availed itself of a particular forum's laws." *Chase Manhattan Bank v. Banque Generale du Com.*, No. 96-cv-5184 (KMW), 1997 WL 266968, at *2 (S.D.N.Y. May 20, 1997); *see also Burger King*, 471 U.S. at 482 (finding jurisdiction where choice of law provision "reinforced [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there"). To this end, the Trustee does not

argue that Defendant is bound to litigate here because of its agreement to do so, but rather that Defendant's agreement to New York law, New York jurisdiction, and a New York forum in contracts integral to this case provides a strong jurisdictional contact with New York. For example, in *BLI*, the Court, without addressing the issue of whether defendants consented to jurisdiction, found that the clauses in the subscription agreements "further evidenc[e] the strong nexus with New York." 480 B.R. at 517, n.15. Similarly, in *Motors Liquidation Co. Avoidance Action Trust v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, the court held that even if defendant's agreement to New York forum and choice of law provisions did not constitute consent, the provisions helped establish minimum contacts to support specific jurisdiction. 565 B.R. 275, 288–89 (Bankr. S.D.N.Y. 2017) (finding agreement provisions plus a correspondent bank account in New York reflected a relationship "centered in New York").

The subscription agreements also plainly "relate to" the Trustee's claims and evidence a strong nexus between this case and New York. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021) (finding that plaintiffs' claims related to defendant's in-state activity and rejecting requirement of a "strict causal relationship between the defendant's in-state activity and the litigation."). Defendant's subscriptions into and redemptions from Fairfield Sentry are two sides of the same coin. Defendant could not have invested in Fairfield Sentry without executing a subscription agreement. And the Trustee has found that Defendant executed at least three such agreements. *See* Fish Decl., Exs. 1–2; Park Decl., Ex. 2. Because the subscription agreements were necessary predicates to Defendant's receipt of stolen customer property through Fairfield Sentry, the subscription agreements sufficiently relate to the Trustee's claims to recover that stolen customer property from Defendant.

16

3.    **The Use of New York Bank Accounts Establishes Personal Jurisdiction.**

This Court has personal jurisdiction because Defendant purposefully used the New York banking system to subscribe into and redeem from Fairfield Sentry.  Contrary to Defendant's contention, courts have often held that a defendant's use of a domestic bank account is sufficient to establish personal jurisdiction.[13]  *See, e.g.*, *Eldesouky v. Aziz*, No. 11–CV–6986 (JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York long-arm statute based solely on defendant's use of New York account to receive payment at issue); *HSH Nordbank AG N.Y. Branch v. Street*, No. 11 Civ. 9405(DLC), 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012) (finding jurisdiction under New York long-arm statute based solely on defendants' use of a New York account to receive fraudulent conveyances at issue); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 382–83 (S.D.N.Y. 2013) (finding jurisdiction in New York based solely on defendant's use of New York accounts to facilitate alleged fraud).  In this SIPA liquidation proceeding, this Court has also found jurisdiction where initial and subsequent transferee defendants received transfers from U.S. bank accounts.  *See Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) ("*BNP*") (finding jurisdiction over subsequent transferee defendants that sent subscriptions to, and received redemptions from, feeder funds' New York bank account); *Picard v. The Est. (Succession) of Doris Igoin (In re BLMIS)*, 525 B.R. 871, 884 (Bankr. S.D.N.Y. 2015) (finding jurisdiction over initial transferee defendants who received transfers from BLMIS's New York bank account).

---

[13] Certain cases discussed herein address jurisdiction under New York's long-arm statute. Due to the close overlap between the requirements of due process and the New York long-arm statute, courts engaging in a due process analysis frequently cite long-arm cases. *See, e.g.*, *HSH Nordbank AG N.Y. Branch v. Street*, No. 11 Civ. 9405(DLC), 2012 WL 2921875, at *4 n.3 (S.D.N.Y. July 18, 2012) (noting "the personal jurisdiction analysis under § 302(a)(1) and the Due Process Clause is in most instances essentially coterminous" (citations omitted)).

a.    **Defendant's Repeated Use of the Deutsche Bank NY Account
and HSBC USA Account Support Jurisdiction**

In its subscription agreements, Defendant designated its Deutsche Bank NY Account in

New York through which it received payments from Fairfield Sentry.  *See* Fish Decl., Exs. 1–2,  ¶

30.g; Park Decl., Ex. 2 ¶ 30.g.  And in at least one subscription agreement, Defendant designated

the same Deutsche Bank NY Account for the sending of subscription payments to Fairfield Sentry.

Fish Decl., Ex. 2 ¶ 30.h.   Indeed, even "[a] single transaction is sufficient to satisfy this

[jurisdictional] requirement, provided the relevant claims arise from that transaction."  *Bartlett v.*

*Société Générale de Banque Au Liban SAL*, No. 19-CV-00007 (CBA) (VMS), 2020 WL 7089448,

at *5 n.2 (E.D.N.Y. Nov. 25, 2020) (citation omitted).

Defendant used its Deutsche Bank NY Account to send and receive numerous payments to

and from Fairfield Sentry's HSBC USA Account in accordance with its subscription agreements.

*See, e.g.*, Fish Decl., Exs. 1–2.  In fact, without any discovery from Defendant, the Trustee already

has identified more than thirty transfers sent to Defendant's Deutsche Bank NY Account,

consistent with Defendant's subscription agreements—all such transfers occurring between New

York bank accounts.  *See, e.g.*, Fish Decl., Exs. 4–6 (examples of three such large transfers from

Fairfield Sentry to Defendant's Deutsche Bank NY Account in the amounts of $2,594,297.68,

$8,212,336.34, $5,547,965.34 on April 14, May 13, and June 15, 2005, respectively); *see also*

*Strauss v. Crédit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 20 (E.D.N.Y. 2016) (finding jurisdiction even

though defendant executed only five of 280 relevant transfers through a U.S. bank account).

Defendant's purposeful use of the Deutsche Bank NY Account and HSBC USA Account

supports jurisdiction because the Trustee's claims "arise out of or relate to" Defendant's use of the

accounts.  As the Supreme Court recently held, this prong does not require a causal relationship.

*See Ford Motor*, 141 S. Ct. at 1026–30.  Rather, this prong may be satisfied if defendant's conduct

involves "financial transactions that touch the forum." *In re Fairfield Sentry Ltd.*, 627 B.R. at 566

(citation omitted); *see also Off. Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain*

*Islamic Bank,* 549 B.R. 56, 68–71 (S.D.N.Y. 2016) (requiring only that claim is not completely

"unmoored" from transaction). Because the Trustee's claims relate to the very transfers that came

through the New York bank accounts, Defendant's use of these accounts supports jurisdiction.

*See, e.g.*, *HSH Nordbank*, 2012 WL 2921875, at *4.

The fact that the HSBC USA Account was Fairfield Sentry's account does not change the

analysis, because Defendant agreed to, and did, use it. *See Esso*, 397 F. Supp. 3d at 346 ("[T]he

point is not whether [defendant] owns the accounts, it is that they made purposeful use of them for

reasons related to the underlying dispute."). That Fairfield Sentry's subscription agreement

required subscribers to use the HSBC USA Account is irrelevant, because Defendant voluntarily

entered into those subscription agreements. Fish Decl., Exs. 1–2; Park Decl. Ex. 2. Each

transaction was thus a volitional act that further supports jurisdiction. *See In re Motors Liquidation*

*Co.*, 565 B.R. at 288–89 (finding defendant's use of a correspondent account to be purposeful even

where payment in New York was dictated by agreement).[14]

### b. Even if Defendant Used Correspondent Bank Accounts, This Court Has Personal Jurisdiction Over Defendant

Defendant's claim that the use of the Deutsche Bank NY Account and HSBC USA Account

does not constitute a "purposeful" decision to conduct activities in New York because they were

correspondent accounts lacks merit. *See* Mot. at 21, 23. The subscription agreements do not

specify the Deutsche Bank NY Account as a correspondent account and Defendant voluntarily

made payments *and* received redemptions from Fairfield Sentry through this New York bank

---

[14] Defendant's role as a trustee is of no moment, as Defendant signed the subscription agreement voluntarily agreeing to use Fairfield Sentry's HSBC USA Account for its subscriptions into, and redemptions from, the fund.

account. The subscription agreements merely designate Defendant's Deutsche Bank NY Account as the bank account for "Redemption Payments." *See, e.g.*, Park Decl., Ex.2, ¶ 30.g. Also notable are the banks designated for subscription payments. The subscription agreement attached to the Park Declaration listed a bank account in South Korea as the source of its subscription payments to Fairfield Sentry. *Id.* at ¶ 30.h. Thus, in this particular instance, Defendant was directing *redemptions* out of Fairfield Sentry to its Deutsche Bank NY Account, and it was *subscribing into* Fairfield Sentry from its bank account in Seoul, Korea. However, as evidenced by one of the multiple subscription agreements *not* attached to the Park Declaration, in at least one instance Defendant both *sent* subscription payments to and *received* redemption payments from Fairfield Sentry through its Deutsche Bank NY Account. Fish Decl., Ex. 2, ¶ 30.g–h. This shows the voluntary use of a New York bank account when it suited Defendant.

But regardless of whether the accounts that Defendant and Fairfield Sentry used were correspondent accounts, this Court has jurisdiction over Defendant. New York cases consistently hold that the purposeful use of a U.S. correspondent account can provide a sufficient basis on its own for jurisdiction. For example, in *Licci v. Lebanese Canadian Bank, SAL*, the New York Court of Appeals held that a defendant's use of a correspondent bank account in New York supports a finding of jurisdiction "even if no other contacts between the defendant and New York can be established" provided that such use was "purposeful." 20 N.Y.3d 327, 338 (2012) (internal quotation marks and citation omitted); *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 165, 171 (2d Cir. 2013) (finding jurisdiction over defendant with "no operations, branches, or employees in the United States" based on repeated use of New York's banking system); *Arcapita*, 549 B.R. at 67–69 (finding jurisdiction based on designation and use of New York correspondent accounts to receive transfers); *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d

316, 322–29 (2016) (same).  What matters is that the use was "purposeful," and not coincidental or passive.  *See Licci*, 20 N.Y.3d at 338–39; *Al Rushaid*, 28 N.Y.3d at 328 (defendant's choice of the New York correspondent bank made the connection to New York "volitional").

Defendant's reliance on cases like *Hau Yin To v. HSBC Holdings PLC*, No. 15CV3590-LTS-SN, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017), *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016), and others where use of a correspondent account was deemed "incidental to fulfilling a foreign contract," is also misplaced.  *See* Mot. at 24–25.  This Court already has determined that those cases are not relevant to the Trustee's actions against defendants like Kookmin Bank who invested in BLMIS feeder funds.  *See BNP*, 594 B.R. at 192 ("*Hill* has no bearing on the issue of personal jurisdiction arising from the Defendants' redemptions as investors in the Tremont Funds which arose from their New York contacts with the Tremont Fund.").  This is not a dispute between two parties stemming from services owed under foreign contracts, such as in *To* and *Hill*.  Rather, this is a fraudulent transfer recovery action brought by a SIPA Trustee in a SIPA liquidation proceeding in which the transfers of funds between the banks fulfilled the very purpose of their subscription agreements and evidence Defendant's intent to direct activity towards the U.S. securities markets.  *See BLI*, 480 B.R. at 513 ("This movement of money to and from BLMIS in the United States, as contemplated by the Agreements, was not fortuitous or incidental; instead, it was 'the ultimate objective' and the '*raison d'etre*' of the Agreement between BLI and Fairfield Sentry.").  And unlike the cases cited by Defendant where the primary activity between plaintiff and defendant was overseas, the Second Circuit has already found that the transactions at issue here are domestic.  *In re Picard*, 917 F.3d 85, 99–100 (2d Cir. 2019).

### B.    The Exercise of Personal Jurisdiction Is Reasonable.

Defendant fails to present a compelling reason why jurisdiction would be unreasonable. This is because jurisdiction is indeed reasonable here.  "The reasonableness inquiry requires the court to determine whether the assertion of personal jurisdiction . . . comports with 'traditional notions of fair play and substantial justice' under the circumstances of the particular case." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (citations omitted). Where a plaintiff has made a threshold showing of minimum contacts, a defendant must present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Chloé*, 616 F.3d at 165 (quoting *Burger King*, 471 U.S. at 477).  This Court has found "it would be a 'rare' case where the defendant's minimum contacts with the forum support the exercise of personal jurisdiction but it is unreasonable to force the defendant to defend the action in that forum." *BNP*, 594 B.R. at 188.

This is not that "rare" case.  The burden on Defendant is minimal.  *See Maxam*, 460 B.R. at 119 (finding New York counsel and conveniences of modern communication and transportation minimize any such burden).  The United States also has a strong interest in applying U.S. law in this SIPA liquidation proceeding.  *See id.; see also In re Picard*, 917 F.3d at 103 (noting "compelling interest in allowing domestic estates to recover fraudulently transferred property"). And the Trustee has a strong interest in litigating in the United States.  *See Maxam*, 460 B.R. at 119.  Accordingly, this Court's exercise of jurisdiction over Defendant is more than reasonable.

### C.    At Minimum, the Trustee Is Entitled to Jurisdictional Discovery.

If this Court finds that the Trustee has not made a *prima facie* showing of jurisdiction, the Trustee respectfully requests jurisdictional discovery.  "Such discovery may be authorized where a plaintiff has made a threshold showing that there is some basis for the assertion of jurisdiction." *Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618 (KMW)(HBP), 2009 WL 3817590, at *4

(S.D.N.Y. Nov. 16, 2009) (internal citation marks and quotation omitted). The Trustee has shown how Defendant, *inter alia*, (i) knowingly and purposely subscribed to Fairfield Sentry, which placed funds with BLMIS and purportedly used the U.S. securities markets; and (ii) used U.S. bank accounts to redeem out of, and at times, subscribe into Fairfield Sentry. At a minimum, these facts establish a "threshold showing" of jurisdiction sufficient for discovery. *Id.* at *6; *see also Ayyash v. Bank Al-Madina*, No. 04 Civ. 9201(GEL), 2006 WL 587342, at *6 (S.D.N.Y. Mar. 9, 2006) (granting discovery because allegations of wire transfers through United States made a "sufficient start" toward establishing jurisdiction).

Defendant's arguments regarding its role as a trustee also raise questions requiring discovery, whether on the merits or jurisdictional. Defendant is notably silent about the trusts' contacts with FGG and New York. In addition, Defendant's subscription agreements list an entity called Chinkara Capital as its adviser. *See* Park Decl. Ex. 2 ¶ 6; Fish Decl., Exs. 1–2 ¶ 6. Chinkara was listed as an adviser to several funds that invested in Fairfield Sentry and had many communications with Fairfield Sentry on behalf of its various clients. The exact nature of Defendant's relationships with both the trusts and Chinkara Capital is presently unknown, but to the extent the Court finds the Trustee has not made a *prima facie* showing of personal jurisdiction, the Trustee should at least be provided jurisdictional discovery to learn of the nature of these relationships and if the trusts and/or Chinkara Capital's contacts may be imputed to Defendant.

## II.    SECTION 546(e) DOES NOT BAR RECOVERY FROM DEFENDANT

Section 546(e) provides a safe harbor for the avoidance of certain initial transfers made outside the two-year period referenced in Section 548(a)(1)(A). *See* 11 U.S.C. § 546(e) ("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title.") (emphasis added). However, in *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Securities)*,

the District Court held that a transferee's actual knowledge of Madoff's fraud precluded application of the Section 546(e) safe harbor in actions to avoid initial transfers, thereby allowing the Trustee to avoid and recover transfers made prior to the two-year period. No. 12-MC-115 (JSR), 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"). Although Defendant buries *Cohmad* in a footnote and contends that it is either wrong or inapplicable, (Mot. at 7 n.7), that case governs. The District Court issued *Cohmad* following consolidated proceedings on the application of Section 546(e). The District Court then remanded to this Court, and this Court has since applied the actual knowledge exception to the Section 546(e) safe harbor on numerous occasions.[15]

Defendant mostly ignores this standard and makes the conclusory assertion that Section 546(e) bars the Trustee's claims. But the Trustee has sufficiently pleaded the initial transferee's actual knowledge, and thus consistent with *Cohmad*, Defendant's arguments must be rejected.

### A.    Fairfield Sentry Had Actual Knowledge of Madoff's Fraud.

Defendant sets forth at length the requirements of Section 546(e), including how they are presumably met in this case with respect to the initial transfers to Fairfield Sentry. But Defendant's argument is an exercise in futility because this Court has previously held that the Trustee has pleaded Fairfield Sentry's actual knowledge of fraud. *Fairfield Inv. Fund*, 2021 WL 3477479, at *4–5. As such, Section 546(e) does not bar the avoidance of initial transfers made to Fairfield Sentry, and those transfers may be recovered regardless of whether Fairfield Sentry or Defendant

---

[15] *See, e.g.*, *Fairfield Inv. Fund*, 2021 WL 3477479, at *4 (applying actual knowledge exception);*Picard v. Square One Fund Ltd.*, Bench Ruling on Mot. to Dismiss, Adv. Pro. No. 10-04330 (Bankr. S.D.N.Y. May 29, 2019) (same); *Picard v. Magnify, Inc.*, 583 B.R. 829, 841 (Bankr. S.D.N.Y. 2018) (same); *Picard v. Mendelow*, 560 B.R. 208, 225–26 (Bankr. S.D.N.Y. 2016) (same); *Picard v. Avellino*, 557 B.R. 89, 112 (Bankr. S.D.N.Y. 2016) (same); *Picard v. Shapiro*, 542 B.R. 100, 112–13 (Bankr. S.D.N.Y. 2015) (same); *Picard v. Ceretti*, No. 09-01161 (SMB), 2015 WL 4734749, at *13–14 (Bankr. S.D.N.Y. Aug. 11, 2015) (same); *Picard v. Merkin*, 515 B.R. 117, 139–41 (Bankr. S.D.N.Y. 2014) (same).

qualify as financial institutions, their agreements qualify as securities contracts, or their transfers qualify as settlement payments.[16]

**B.** **Defendant Is Precluded From Arguing That Section 546(e) Applies Independently to Recovery Actions.**

Defendant is also wrong that the Trustee must allege that a subsequent transferee had actual knowledge in order to invoke the actual knowledge exception to Section 546(e). Specifically, Defendant contends that even if *Cohmad* was correctly decided, "it would not affect this case because the complaint does not allege that KB had knowledge of BLMIS' fraud." Mot. at 7, n.7. But *Cohmad* does not stand for this proposition and such an interpretation is inconsistent with the statute. By its plain language, Section 546(e) applies to the avoidance of initial transfers, not the recovery of subsequent transfers under Section 550. *See* 11 U.S.C. § 546(e) ("[T]he trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title." (emphasis added)); *see also BNP*, 594 B.R. at 197 ("The Trustee does not . . . 'avoid' the subsequent transfer; he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550."); *Kelley v. Safe Harbor Managed Acct. 101, Ltd.*, No. 20-3330, 2022 WL 1177748, at *3 n.5 (8th Cir. Apr. 21, 2022) ("*SHMA*") (citing *BNP*).

The safe harbor's limitation to avoidance is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct." *SIPC v. BLMIS (In re*

---

[16] Though not necessary to the Court's analysis, we note that Defendant's argument that the Trustee is in privity with the Fairfield liquidators and therefore bound by any rulings in the Fairfield liquidation is incorrect. *See* Mot. at 5. Merely sharing an interest in recovering customer property hardly constitutes the sort of "substantive legal relationship" required under *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008), to establish nonparty issue preclusion. *See Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*, No. 07-MD-1902 (JSR), 2013 WL 12191844, at *13 (S.D.N.Y. Mar. 25, 2013) (emphasizing "preclusion of nonparties is an *exceptional* situation"). Defendant's cited case of *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001), (Mot. at 5. n.3), is inapposite, as that case did not even involve nonparty issue preclusion.

*Madoff Sec.),* 501 B.R. 26, 30 (S.D.N.Y. 2013) (citation omitted).  It is also consistent with the understanding that the Code's avoidance provisions protect against depletion of a debtor's estate, while Section 550 is merely a "utility provision," intended to help execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place."  *See In re Picard,* 917 F.3d at 98.

*Cohmad* confirmed that Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees.  The District Court withdrew the reference on whether Section 546(e) barred recovery of a subsequent transfer pursuant to Section 550,[17] but the District Court specifically limited the safe harbor to avoidance claims based on the plain language of Section 546(e).  *See Cohmad*, 2013 WL 1609154, at *4, *9 (applying the "plain terms" of Section 546(e)); at *7 (recognizing subsequent transferees can raise initial transferees' defenses to *avoidance*); at *10 ("[B]oth initial transferees and subsequent transferees are entitled to raise a defense based on the application of Section 546(e) to the *initial* transfer from Madoff Securities") (emphasis added).  And though the court hypothesized, in *dicta*, that a subsequent transferee's agreements and related transactions with the initial transferee feeder fund might under certain circumstances constitute relevant "securities contracts," and that certain subsequent transferee defendants might qualify as "financial institutions" or "financial participants," the *Cohmad* decision is clear that the focus of the safe harbor is still on the *initial* transfers.  *See id.* at *9 ("[T]he question . . . is whether the Trustee has alleged that that *initial transfer* was made in connection with (*i.e.,* related to) a covered securities contract . . .") (emphasis added).[18]

---

[17] *See* 546(e) Briefing Order, *In re Madoff Sec.*, No. 12-MC-115 (JSR) (S.D.N.Y. May 16, 2012), ECF No. 119 (withdrawing the reference on issue of "whether application of Section 546(e) to an initial or mediate Transfer bars recovery by the Trustee of any subsequent Transfer pursuant to Section 550").

[18] Defendant claims that the initial transfers "are alleged to have been made 'for the benefit of' KB, which is also a 'financial institution'. . . ." Mot. at 5 (citing Compl. ¶¶ 2, 3, 22, 34, 41).  This is wrong, as the Complaint does *not* allege the initial transfers were made "for the benefit of" Defendant.  Rather, two paragraphs of the Complaint allege that the *subsequent transfers* from Fairfield Sentry were made "to, or for the benefit of" Defendant.  *See* Compl. ¶¶ 41, 45.  Paragraphs 2, 3, and 34 merely allege that Defendant received subsequent transfers from Fairfield Sentry.

Based on *Cohmad*, this Court held in *BNP* that Section 546(e) is applicable only to avoidance and not recovery, and most notably that a subsequent transferee cannot assert the protections of Section 546(e) where the Trustee has adequately pled the initial transferee's actual knowledge. *See BNP*, 594 B.R. at 197; *see also SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*, 620 B.R. 505, 514 (Bankr. S.D.N.Y. 2020) ("the safe harbor defense only applies by its terms to the initial transfer"). In *BNP*, the Court explicitly rejected the argument that the "*only* way the Trustee can escape the application of Section 546(e) here is by pleading with particularity and plausibility that the [subsequent transferee defendants] actually knew of the Madoff Ponzi scheme." *BNP*, 594 B.R. at 196–97.

An interpretation of Section 546(e) that requires alleging actual knowledge of a subsequent transferee would effectively eliminate the point of the actual knowledge exception—which is to restrict all bad actors from hiding behind the safe harbor. *See Cohmad*, 2013 WL 1609154, at *3 (explaining that defendants who knew BLMIS was a Ponzi scheme "must have known that the transfers they received directly or indirectly from Madoff Securities were not 'settlement payments.'"). Such an interpretation also would mean the application of the safe harbor even where the initial transferee feeder fund knew there were no securities transactions in need of protection. It would moreover allow an initial transferee with knowledge of the fraud and unable to satisfy a judgment (like Fairfield Sentry) to place fraudulently transferred moneys with a subsequent transferee and out of reach of a trustee. *See id.* at *7 ("A defendant cannot be permitted to in effect launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of Section 546(e).").

Expanding the safe harbor would also result in subsequent transferees being afforded more protection as to avoidance than the initial transferee itself, which does not reflect Congress's intent.

27

*See Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.)*, 343 B.R. 75, 82 (Bankr. S.D.N.Y. 2006), *rev'd on other grounds*, 388 B.R. 489 (S.D.N.Y. 2008) ("Upon consideration of the initial transferee's defenses and once the amount of its liability is established, that amount can be sought from any of the transferees, including subsequent transferees, subject to any of their additional defenses.").  As the Eighth Circuit pointed out in *SHMA* while citing *BNP*, "a subsequent transferee is protected [under Section 546(e)] *indirectly* to the extent that the initial transfer is not avoidable because of the safe harbor."   2022 WL 1177748, at *3 n.5 (cleaned up; emphasis added). Conversely, providing subsequent transferees with the same defenses to avoidance as available to the initial transferee does not unfairly bias subsequent transferees.

## III.    THE TRUSTEE'S COMPLAINT ADEQUATELY PLEADS THAT DEFENDANT RECEIVED BLMIS CUSTOMER PROPERTY

The Trustee's Complaint adequately states a claim for recovery under Section 550(a)(2) by plausibly alleging that Kookmin Bank received subsequent transfers of stolen BLMIS customer property.  Defendant contends that the Trustee has not sufficiently alleged that Defendant received BLMIS customer property, but the Complaint clearly and succinctly shows the initial transfers from BLMIS to Fairfield Sentry and the subsequent transfers from Fairfield Sentry to Defendant— including dates and amounts of all transfers.  The "alternate explanations" Defendant submits for the source of these transfers requires discovery, including possibly expert disclosures, and therefore are not appropriate at the pleading stage of litigation.  Notwithstanding these "alternate explanations," the Trustee's well-pleaded allegations make out a *prima facie* case, and as such, Defendant's Motion should be denied.

### A.    The Trustee Meets His Pleading Burden.

To plead a subsequent transfer claim, the Trustee must allege facts that support an inference "that the funds at issue originated with the debtor."  *Picard v. Merkin (In re BLMIS)*, 515 B.R.

117, 149–50 (Bankr. S.D.N.Y. 2014) ("*Merkin I*") (quoting *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 32 (Bankr. E.D.N.Y. 2007)).  No tracing analysis is required, as the pleading burden "is not so onerous as to require 'dollar-for-dollar accounting' of 'the exact funds' at issue."  *Id*. at 150 (quoting *Picard v. Charles Ellerin Revocable Tr. (In re BLMIS)*, No. 08-01789 (BRL), 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012)).  Rather, "the Trustee need only allege sufficient facts to show the relevant pathways through which the funds were transferred from BLMIS to [the subsequent transferee]."  *Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *3; *see also 45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019).  In addition, the Trustee must allege "the 'necessary vital statistics—the who, when, and how much' of the purported transfers to establish an entity as a subsequent transferee of the funds."  *Merkin I*, 515 B.R. at 150 (quoting *In re Allou Distribs., Inc.*, 379 B.R. at 32).

The Trustee's Complaint meets these requirements.  The Complaint alleges that Defendant received subsequent transfers, identified by date and amount, from Fairfield Sentry, and that Fairfield Sentry invested substantially all of its funds with BLMIS.  *See* Compl., Exs. B & C.  The Complaint thus outlines the relevant pathway through which stolen customer property was transferred from BLMIS to Fairfield Sentry and subsequently to Defendant and provides the necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer. Nothing more is required.  *See, e.g.*, *Mayer*, 2021 WL 4994435, at *5 (rejecting argument that subsequent transfer "claim has not been plead with enough specificity as to how and what [defendant] received" and holding complaint "contains sufficient information regarding which transfers the Trustee is seeking to recover").

Notably, Defendant does not take issue with the movement of the funds or Defendant's receipt of those funds, as the Complaint establishes that Defendant received transfers after Fairfield Sentry received transfers from BLMIS. Even so, this Court has repeatedly rejected arguments raised by other defendants in this liquidation questioning the movement of funds in a motion to dismiss. *See e.g.*, *Mayer*, 2021 WL 4994435, at *5 (finding the complaint alleged sufficient information regarding which transfers the Trustee is seeking to recover); *Merkin I*, 515 B.R. 152–53 (refusing to dismiss complaint where "at least some of the subsequent transfers . . . may be recoverable."). Defendant's claims that it may appear difficult, or even unlikely, for the Trustee to adequately trace all the subsequent transfers is not grounds for dismissal at the pleading stage. *See Merkin I*, 515 B.R. at 152 (finding it "premature to cut off the Trustee's opportunity to satisfy his [tracing] burden on a motion to dismiss" merely because the tracing may prove difficult); *Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*, No. 08-15051 (SMB), 2014 WL 47774, at *15 (Bankr. S.D.N.Y. Jan. 3, 2014) ("[T]he [subsequent transferees'] speculation that tracing is 'not likely' to reveal a subsequent transfer . . . hardly justifies granting [their cross-motion for summary judgment].").

Defendant's reliance on *Picard v. Shapiro (In re BLMIS)*, 542 B.R. 100 (Bankr. S.D.N.Y. 2015), (Mot. at 10), is unavailing because *Shapiro* did not change the pleading burden for recovery under Section 550(a). In *Shapiro*, the Trustee alleged that certain trusts and members of the Shapiro family received approximately $54 million in fraudulent transfers from BLMIS, and that "upon information and belief" these defendants subsequently transferred this same amount to other defendants. 542 B.R. at 119. The Court dismissed the subsequent transfer claim because the complaint did not detail any of the vital statistics of the transfers. *Id*. There were no allegations regarding the specific subsequent transferors, the specific subsequent transferees, or the dates or

30

amounts of the subsequent transfers.  *Id*.  By contrast, the Trustee has alleged the vital statistics of each transfer Defendant received in this case, including the date and amount of each transfer and sets out the investment relationship.  *Shapiro* therefore supports the denial of Defendant's Motion.

**B.    Defendant's "Alternative Explanations" Should Be Rejected.**

Defendant challenges the nature of the transfers and whether they consisted of customer property—arguing there are more plausible "alternative explanations" for the source of the transfers.  But this Court already has rejected the argument that the Trustee must detail which and what portion of each subsequent transfer comprises customer property.  *See Merkin I*, 515 B.R. 152–53 (refusing to dismiss complaint where "at least some of the subsequent transfers . . . may be recoverable"); *see also In re Allou Distribs., Inc.*, 379 B.R. at 30 (finding "if dollar-for-dollar accounting is not required at the proof stage, then surely it is not required at the pleading stage either").  Defendant's "fact-based" tracing arguments, neither of which provide an "obvious alternative explanation," are not persuasive and are inappropriate for a motion to dismiss.

First, Defendant speculates that Fairfield Sentry previously exhausted the customer property BLMIS transferred to Fairfield Sentry by paying other investors before Defendant.  Defendant surmises that Fairfield Sentry must have used new shareholder investments to pay Defendant's redemption requests and therefore the subsequent transfers at issue are comprised of funds from other Fairfield Sentry investors, not from BLMIS.  Mot. at 8–9.  However, Defendant provides no basis for this conclusion and fails to disclose any tracing methodology or methodologies it relies on.  This is likely because Defendant knows that it is for the Court to decide—after fact and expert discovery—the appropriate tracing methodology under the circumstances of this case.  *See Picard v. Merkin (In re BLMIS)*, 581 B.R. 370, 386 (Bankr.

S.D.N.Y. 2017) ("*Merkin II*").[19]  Defendant also overlooks Exhibits B & C to the Complaint, which establish a temporal relationship between Fairfield Sentry's receipt of stolen customer property from BLMIS and Defendant's subsequent receipt of assets from Fairfield Sentry.

Second, Defendant speculates that Fairfield Sentry may have sought a line of credit to cover the redemptions at issue.  Mot. at 9.  This is unsupported, but in any event, the Trustee is a stranger to the transactions between Fairfield Sentry and Defendant and is entitled to discovery on this issue.  "[I]n a case such as this one, where 'the Trustee's lack of personal knowledge is compounded with complicated issues and transactions that extend over lengthy periods of time, the trustee's handicap increases,' and 'even greater latitude' should be afforded."  *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up) (quoting *SIPC v. Stratton Oakmont, Inc.*, 234 B.R. 293, 310 (Bankr. S.D.N.Y. 1999)).  This is one reason why this Court in *Merkin I* denied defendants' motion to dismiss, finding "[t]he subsequent transfer claim must ultimately be proved through the books and records of the defendants."  515 B.R. at 151.  The Trustee does not have all of the relevant books and records, and discovery in the Trustee's actions against the Fairfield management defendants continues.  *See, e.g.*, Stipulated Case Mgmt. Order, *Picard v. Fairfield Inv. Fund (In re BLMIS)*, 09-01236 (CGM) (Bankr. S.D.N.Y. Dec. 6, 2021), ECF No. 353 (setting November 2022 deadline for fact discovery and August 2023 deadline for expert discovery).  Defendant also no doubt has information it can provide on these transactions.

To the extent Defendant is arguing that Fairfield Sentry's commingling of funds defeats the Trustee's ability to trace the transfers, Defendant is wrong.  "The law does not place such a

---

[19] The Bankruptcy Court has accepted various different tracing methodologies, which "reflect legal rules or fictions designed to assist a Court in dealing with an improper transfer from a commingled fund."  *Merkin II*, 581 B.R. at 386.

difficult burden on trustees. The commingling of legitimate funds with funds transferred from a debtor does not defeat tracing." *Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-cv-1073 (ECT/KMM), 2020 WL 3077151, at *4 (D. Minn. June 10, 2020) (citing *Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *2). And even after fact discovery, expert opinion is necessary to determine which portion of the subsequent transfer stemmed from the initial transfer where the subsequent transfers originated from commingled accounts. *Merkin II*, 581 B.R. at 386; *see also Kelley*, 2020 WL 3077151, at *5 (denying summary judgment because of fact dispute after trustee introduced expert report and associated documents from which a jury may infer defendants received subsequent transfers of property from the Petters Ponzi scheme).

Defendant's attempts to argue that the funds they received from Fairfield Sentry are not customer property are premature and require discovery, and thus inappropriate at the pleading stage. It is not for the Trustee to explore "alternate plausible reasons" for these transfers at the pleading stage, (*see* Mot. at 9), which he plausibly alleges contained stolen customer property.

### C.    The Single Satisfaction Rule Does Not Bar the Trustee's Claim.

Finally, Defendant's argument that the Trustee "needs to reduce the amount he seeks from KB" in light of other actions against subsequent transferees, (Mot. at 9), seems to be a reference to the "single satisfaction" rule under 11 U.S.C. § 550(d). The Trustee, however, "can recover from any combination of [transferees]" up to the amount avoided. *Helms v. Metro. Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021). Under Section 550, "a trustee may recover [an avoided] transfer from a subsequent transferee of those funds, without the necessity for allocation among all [the] subsequent transferees." *CNB Int'l, Inc. v. Kelleher (In re CNB Int'l, Inc.)*, 393 B.R. 306, 333 (Bankr. W.D.N.Y. 2008), *aff'd on other grounds*, 440 B.R. 31 (W.D.N.Y. 2010). Therefore, until the Trustee recovers the full amount of the approximately $3 billion in fraudulent transfers received by Fairfield Sentry, the

Trustee may simultaneously seek recovery from Defendant in this action, as well as defendants in other actions—even in an aggregate amount that exceeds the initial transfers.  Moreover, the Court already has held that this type of argument is inappropriate on a motion to dismiss.  *See Fairfield Inv. Fund*, 2021 WL 3477479, at *12 (holding defendant's "double recovery" arguments and the Trustee's purported limitations under Section 550(d) are "to be determined at a later stage [in the] litigation").

## IV.    THE TRUSTEE SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE FAIRFIELD SENTRY TRANSFERS

Defendant argues that the Trustee's incorporation of the Fairfield Amended Complaint[20] violates incorporation by reference under Rule 10(c) and violates Rule 8(a)(2)'s requirement to include "a short and plain statement" showing the Trustee is entitled to relief.  Mot. at 11-14.  However, there is no doubt that the Trustee may incorporate a complaint under Rule 10(c) to demonstrate the avoidability of the initial transfers from BLMIS.  *See Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010) (allowing incorporation by reference under Rule 10(c) of pleadings in different adversary proceeding within the same liquidation).

Defendant's argument also ignores and conflicts with the District Court's prior opinion in this liquidation on whether under Section 550(a) the Trustee must avoid an initial transfer or plead its avoidability in a subsequent transfer action.  *In re Madoff Sec.*, 501 B.R. at 26.  Specifically, the District Court held that Section 550(a) only "requires that the Trustee show that the transfer he seeks to recover is avoidable in each recovery action," *id.* at 29, and found sufficient the Trustee's incorporation by reference of initial transfer complaints, including the Fairfield Amended Complaint:

---

[20] As noted in Footnote 1, the Fairfield Amended Complaint was amended after the filing of the Complaint in this adversary proceeding.  The operative complaint in that action is the Fairfield Second Amended Complaint.

> [T]he Trustee's complaint against [the subsequent transfer defendant] incorporates by reference the complaints against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. . . . Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).

*Id.* at 36. This decision is now law of the case. *See In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018) (holding that law of the case doctrine, in which decision on issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages, applies to different adversary proceedings within main case); *In re BLMIS*, No. 1:21-cv-02334 (CM), 2022 WL 493734, at *12 (S.D.N.Y. Feb. 17, 2022) ("[I]n a SIPA liquidation like this one, the different adversary proceedings arising within the same liquidation are 'one case' for purposes of the doctrine. This means that legal rulings reached by appellant courts in earlier clawback/fraudulent transfer cases can be treated as law of the case in this one.") (citations omitted).

Defendant attempts to use *U.S. v. Int'l Longshoremen's Assn.*, 518 F. Supp. 2d 422 (E.D.N.Y. 2007), to prop up its argument regarding the impermissibility of wholesale incorporation. *See* Mot. at 13-14. But Defendant's selective quotation disregards key factors in the court's reasoning that there was actually no incorporation by reference of the multiple pleadings: "The Amended Complaint thus gives the impression that the exhibits are attached simply as background to the factual allegations alleged in the Amended Complaint; it does not provide the 'direct and explicit' notice necessary to incorporate extraneous matter by reference." *Int'l Longshoremen's*, 518 F. Supp. 2d at 462. By contrast, the Trustee's incorporation is explicit and straightforward, with its purpose obvious. *See* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure 3d § 1326 (4th ed. 2008) ("If the incorporation is clear, less emphasis need be placed on the source of the incorporated material."); *Whitaker Secs., LLC v. Rosenfeld (In*

*re Rosenfeld)*, 543 B.R. 60, 66 (Bankr. S.D.N.Y. 2015) (noting that some courts fear incorporation

by reference will not provide adequate notice as to claims or factual allegations, but allowing

incorporation because "there is no danger of prejudice").  Moreover, the government in the *Int'l*

*Longshoremen's* case was trying to plead new claims against the defendants not otherwise alleged

in the complaint that would have expanded their liability—a different situation than what the

Trustee is doing here.

Defendant also cannot seriously argue that the Trustee's incorporation of the Fairfield

Amended Complaint violates Rule 8.  Unlike *Int'l Longshoremen's*, the incorporation does not

turn the Complaint into a "unintelligible morass of self-contradictory allegations," make it

"redundant," create "mutually inconsistent factual allegations," or involve RICO claims where

incorporation by reference is "particularly inappropriate."  518 F. Supp. 2d at 462 n.72, 464 n.76,

466 n.77.  Defendant ignores the substance of the Complaint and the purpose of the allegations: to

make a *prima facie* showing that the initial transfers are avoidable under Section 548(a) so that the

Trustee can recover from Defendant under Section 550(a).  *See Citibank*, 12 F.4th at 196–97.

In any case, Defendant's arguments about incorporation are really much ado about nothing,

because this Court may take judicial notice of the operative Fairfield Second Amended Complaint

and its prior decision holding that the complaint sufficiently alleges the avoidability of the initial

transfers.  *See Fairfield Inv. Fund*, 2021 WL 3477479.  On a motion to dismiss, "a court may take

judicial notice of prior pleadings, orders, judgments, and other related documents that appear in

the court records of prior litigation and that relate to the case *sub judice*."  *Ferrari v. Cnty. of*

*Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011).  "Included among such matters are decisions

in prior lawsuits."  *DeMasi v. Benefico*, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008).  The fact that

the Fairfield Second Amended Complaint was filed after this Complaint against Defendant is of

no consequence. *See Rothman v. Gregor*, 220 F.3d 81, 91–92 (2d Cir. 2000) (taking judicial notice of a subsequently filed complaint in related proceeding).

The Trustee has complied with the Federal Rules in pleading the avoidability of the initial transfers, and regardless, this Court may take judicial notice of its opinion in Fairfield Investment Fund. If this Court holds otherwise, the Trustee respectfully requests the opportunity to replead.[21]

## **CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests that the Court deny Kookmin Bank's Motion.

Respectfully submitted,

Dated: May 6, 2022
      New York, New York

/s/ *Eric R. Fish*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York
Tel.: (212) 589-4200
Fax: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Eric R. Fish
Email: efish@bakerlaw.com
Brian F. Allen
Email: ballen@bakerlaw.com
Michelle N. Tanney
Email: mtanney@bakerlaw.com
Megan A. Corrigan
Email: mcorrigan@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Chapter 7 Estate of Bernard L. Madoff*

---

[21] As evidenced by the cases that Defendant relies upon, leave to replead extends to complaints that were dismissed for improperly incorporating other pleadings or motions by reference or failing to provide a short and plain statement. *See e.g.*, *In re Geiger*, 446 B.R. at 683; *Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d at 483.