**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 12-01210 (CGM) |
| Plaintiff, | |
| v. | |
| SCHRODER & CO. BANK AG, | |
| Defendant. | |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT**
**SCHRODER & CO. BANK AG'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS .........................................................................................3

I.      THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS..............................3

II.     SCHRODER AND ITS INVESTMENTS IN BLMIS FEEDER FUNDS ..........4

ARGUMENT ...........................................................................................................6

I.      LEGAL STANDARD..................................................................................6

II.     THE COURT HAS PERSONAL JURISDICTION OVER SCHRODER .........6

        A.      Schroder's Contacts With New York Demonstrate that it Purposefully
                Availed Itself of the Benefits and Privileges of New York ...................9

                1.      Schroder's Purposeful Use of Its Own and Fairfield's New York
                        Bank Accounts Establishes Specific Personal Jurisdiction ........9

                2.      Schroder's Intentional Investment in BLMIS through Feeder Funds
                        Constitutes Purposeful Availment of the Laws and Privileges of
                        Conducting Business in New York............................................12

                        a.      *BLI* Establishes this Court's Jurisdiction Over Schroder...............13

                3.      Schroder's Contacts with FGG in New York also Establish
                        Minimum Contacts....................................................................14

                4.      Schroder's Contacts with the Forum are Sufficiently Related to the
                        Trustee's Claims ......................................................................19

        B.      Exercise of Personal Jurisdiction Over Schroder is Reasonable ...........20

        C.      In the Alternative, the Trustee is Entitled to Jurisdictional Discovery .................20

III.    THE TRUSTEE'S COMPLAINT STATES A VALID CAUSE OF ACTION
        FOR RECOVERY OF BLMIS CUSTOMER PROPERTY UNDER SECTION
        550(A)......................................................................................................21

        A.      The Trustee's Complaint Meets the Pleading Requirements.................21

        B.      Schroder Misstates the Trustee's Pleading Burden .............................22

        C.      Schroder's Tracing Arguments are Inappropriate for a Motion to Dismiss ..........23

D.      Schroder's Claims of Double Recovery are Premature ..........................................25

IV.    SECTION 546(e) DOES NOT APPLY TO SCHRODER ................................................26

A.      The Fairfield Funds Had Actual Knowledge of Madoff's Fraud ..........................26

B.      Schroder Is Precluded From Relitigating the Actual Knowledge Exception ........27

C.      Schroder Is Precluded From Arguing That Section 546(e) Applies
        Independently to Recovery Actions........................................................................28

D.      The Fairfield Complaint is Properly Incorporated ...................................................33

        1.      The Incorporated Material Complies with Federal Rules of Civil
                Procedure 10 and 8....................................................................................34

                a.      All Adversary Proceedings Are Part of the Main Case for
                        Purposes of Rule 10(c)...................................................................34

                b.      Incorporation Is Permitted Where It Achieves the Purpose
                        of Rule 10(c) ..................................................................................35

                c.      The Trustee's Allegations are Sufficient Under Rule 8................36

        2.      The Court Can Take Judicial Notice of the Fairfield Decision and
                the Fairfield Second Amended Complaint.................................................36

        3.      In the Alternative, the Court Can Afford the Trustee an
                Opportunity to Replead...............................................................................37

V.     THE 550(b) GOOD FAITH DEFENSE IS AN AFFIRMATIVE DEFENSE AND
       INAPPROPRIATE AT THE MOTION TO DISMISS STAGE .......................................37

CONCLUSION.....................................................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
    599 B.R. 730 (Bankr. S.D.N.Y. 2019) .............................................................21, 22

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
    98 F.3d 25 (2d Cir. 1996) .............................................................................8

*Al Rushaid v. Pictet & Cie*,
    28 N.Y.3d 316 (2016) ...................................................................................11

*Am. Casein Co. v. Geiger (In re Geiger)*,
    446 B.R. 670 (Bankr. E.D. Pa. 2010) ......................................................33, 34, 37

*Ashcroft v. Iqbal*,
    556 U.S. 552 (2009) .......................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................................6

*In re Bernard L. Madoff Inv. Secs. LLC (Picard v. Ida Fishman Recoverable
    Trust)*,
    773 F.3d 411 (2d Cir. 2014) ....................................................................28, 31

*Burger King v. Rudzewicz*,
    471 U.S. 462 (1985) .......................................................................7, 8, 16, 18

*Cargo Partner AG v Albatrons, Inc.*,
    352 F.3d 41 (2d Cir. 2003) ...........................................................................6

*Chase Manhattan Bank v. Banque Generale Du Com.*,
    No. 96 CIV. 5184 (KMW), 1997 WL 266968 (S.D.N.Y. May 20, 1997) ..............16

*Chloé v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010) .....................................................................7, 20

*CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*,
    393 B.R. 306 (Bankr. W.D.N.Y. 2008) ...........................................................26

*Cromer Fin. Ltd. v. Berger*,
    137 F. Supp. 2d 452 (S.D.N.Y. 2001) .............................................................7

*CutCo Indus., Inc. v. Naughton*,
    806 F.2d 361 (2d Cir.1986) ...........................................................................16

*Dandong v. Pinnacle Performance Ltd.*,
    966 F. Supp. 2d 374 (S.D.N.Y. 2013)...................................................................10

*DeMasi v. Benefico*,
    567 F. Supp. 2d 449 (S.D.N.Y. 2008)..................................................................36

*Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*,
    722 F.3d 81 (2d Cir. 2013)..................................................................................7

*In re Dreier LLP*,
    452 B.R. 391 (Bankr. S.D.N.Y. 2011) ................................................................39

*Eldesouky v. Aziz*,
    No. 11–CV–6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014) ........... 9-10

*Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.)*,
    343 B.R. 75 (Bankr. S.D.N.Y. 2006), *rev'd on other grounds*, 388 B.R. 489
    (S.D.N.Y. 2008).................................................................................................32

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
    651 F.3d 329 (2d Cir. 2011)................................................................................31

*ESI, Inc. v. Coastal Corp.*,
    61 F. Supp. 2d 35 (S.D.N.Y. 1999) .....................................................................8

*Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
    397 F.Supp. 3d 323 (S.D.N.Y. 2019)..............................................................9, 11

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
    No. 10-13164, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018)...............16, 17

*Ferrari v. Cnty of Suffolk*,
    790 F. Supp. 2d 34 (E.D.N.Y. 2011) ..................................................................36

*Foman v. Davis*,
    371 U.S. 178 (1962)...........................................................................................37

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*,
    141 S. Ct. 1017 (2021).................................................................................18, 19

*Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*,
    Adv. Pro. Nos. 10-03493 (SMB), 10-05447 (SMB), 2014 WL 47774 (Bankr.
    S.D.N.Y. Jan. 3, 2014).......................................................................................24

*Helms v. Metropolitan Life Ins. Co. (In re O'Malley)*,
    601 B.R. 629 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021)...........25

*Hill v. HSBC Bank, plc*
   207 F. Supp. 3d 333 (S.D.N.Y. 2016)...................................................................12

*HSH Nordbank AG N.Y. Branch v. Street*,
   No. 11 Civ. 9405(DLC), 2012 WL 2921875 (S.D.N.Y. July 18, 2012)......................9, 10, 19

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)..............................................................................................7, 8

*In re J.P. Jeanneret Assoc., Inc*.,
   769 F. Supp. 2d 340 (S.D.N.Y. 2011)...................................................................6

*Kelley v. Safe Harbor Managed Acct. 101, Ltd.*,
   No. 20-3330, 2022 WL 1177748 (8th Cir. Apr. 21, 2022)................................29, 32

*Kelley v. Westford Special Situations Master Fund, L.P.*,
   No. 19-cv-1073, 2020 WL 3077151 (D. Minn. June 10, 2020) .......................23, 25

*Kelly–Brown v. Winfrey*,
   717 F.3d 295 (2d Cir. 2013)...............................................................................38

*Kiobel v. Royal Dutch Petroleum Co.*,
   No. 02 Civ. 7618 (KMW) (HBP), 2009 WL 3817590 (S.D.N.Y. Nov. 16,
   2009) .............................................................................................................20, 21

*Leema Enters., Inc. v. Willi*,
   575 F. Supp. 1533 (S.D.N.Y. 1983).....................................................................11

*Licci v. Lebanese Canadian Bank*,
   20 N.Y.3d 327....................................................................................................11

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   732 F.3d 161 (2d Cir. 2013)...............................................................................11

*Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC*,
   843 F. Supp. 2d 191. (D. Mass. 2012) ................................................................35

*McGee v. Int'l Life Ins. Co.*,
   335 U.S. 220 (1957)............................................................................................7

*McKenna v. Wright*,
   386 F. 3d 432 (2d Cir. 2004)..............................................................................39

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996)..................................................................................8

*Morrison v. Office of the U.S. Tr. (In re Morrison)*,
   375 B.R. 179 (Bankr. W.D. Pa. 2007) ................................................................34

*Motors Liquidation Co. Avoidance Action Trust v. JPMorgan Chase Bank, N.A.*
   *(In re Motors Liquidation Co.),*
   565 B.R. 275 (Bankr. S.D.N.Y. 2017) ...................................................................16

*Muth v. Dechert, Price & Rhoads,*
   391 F. Supp. 935 (E.D. Pa. 1975) ...............................................................35, 37

*Off. Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic
   Bank,*
   549 B.R. 56 (Bankr. S.D.N.Y. 2016) ............................................................11, 19

*Pelt v. Utah,*
   539 F.3d 1271 (10th Cir. 2008) .........................................................................17

*Picard v. Avellino,*
   557 B.R. 89 (Bankr. S.D.N.Y. 2016) ..................................................................28

*Picard v. BNP Paribas S.A. (In re BLMIS),*
   594 B.R. 167 (Bankr. S.D.N.Y. 2018) ........................................................ *passim*

*Picard v. Bureau of Labor Ins. (In re BLMIS),*
   480 B.R. 501 (Bankr. S.D.N.Y. 2012) ........................................................ *passim*

*Picard v. Ceretti, et al.,*
   No. 09-01161 (SMB), 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015) ........................28

*Picard v. Charles Ellerin Revocable Trust (In re BLMIS),*
   Adv. Pro. Nos. 10-04398 (BRL), 10-05219 (BRL), 2012 WL 892514 (Bankr.
   S.D.N.Y. Mar. 14, 2012) .....................................................................21, 23, 24

*Picard. v. Citibank, N.A. (In re BLMIS),*
   12 F.4th 171 (2d. Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard,*
   142 S. Ct. 1209 (2022) ..............................................................................3, 38, 39

*Picard v. Cohen,*
   Adv. Pro. No. 10-04311, 2016 WL 1695296 (Bankr. S.D.N.Y. Apr. 25, 2016) ....................28

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC),*
   454 B.R. 317 (Bankr. S.D.N.Y. 2011) ..................................................................24

*Picard v. Estate of Igoin (In re BLMIS),*
   525 B.R. 871 (Bankr. S.D.N.Y. 2015) ..................................................................10

*Picard v. Estate of Stanley Chais,*
   445 B.R. 206 (Bankr. S.D.N.Y. 2011) ............................................................19, 24

*Picard v. Fairfield Greenwich Group (In re Fairfield Sentry Ltd.).,*
   627 B.R. 546 (Bankr. S.D.N.Y. 2021) ..........................................................7, 8, 19

*Picard v. Fairfield Inv. Fund Ltd. (In re BLMIS)*,
No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ................. *passim*

*Picard v. JPMorgan Chase & Co.*,
No. 08-99000 (SMB), 2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10, 2014) .......................... 14

*Picard v. Lowrey*,
596 B.R. 451 (S.D.N.Y. 2019), *aff'd sub nom. Picard v. Gettinger*, 976 F.3d
184 (2d Cir. 2020) ........................................................................................................... 28, 35

*Picard v. Magnify, Inc.*,
583 B.R. 829 (Bankr. S.D.N.Y. 2018) ...................................................................................... 28

*Picard v. Maxam Absolute Return Fund, L.P.*,
460 B.R. 106 (Bankr. S.D.N.Y. 2011) ................................................................................... 7, 20

*Picard v. Mayer*,
No. 20-01316 (CGM), 2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021) ................. 22, 24

*Picard v. Mendelow et al.*,
560 B.R. 208 (Bankr. S.D.N.Y. Sept. 28, 2016) ...................................................................... 28

*Picard v. Merkin (In re BLMIS)*,
440 B.R. 243 (Bankr. S.D.N.Y. 2010) ........................................................................... 6, 38, 39

*Picard v. Merkin (In re BLMIS)*,
515 B.R. 117 (Bankr. S.D.N.Y. 2014) ............................................................... 21, 22, 25, 28

*Picard v. Merkin (In re BLMIS)*,
581 B.R. 370 (Bankr. S.D.N.Y. 2017) ...................................................................................... 25

*Picard v. Shapiro*,
542 B.R. 100 (Bankr. S.D.N.Y. 2015) ................................................................................. 23, 28

*Picard v. Square One Fund Ltd.*,
Bench Ruling on Motion to Dismiss, Adv. Pro. No. 10-04330 (Bankr.
S.D.N.Y. May 29, 2018) ........................................................................................................... 28

*In re Picard, Trustee for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
917 F.3d 85 (2d Cir. 2019) ......................................................................................... 13, 20, 29

*Porat v. Lincoln Towers Cmty. Ass'n*,
464 F.3d 274 (2d Cir. 2006) ...................................................................................................... 37

*Roth v. Jennings*,
489 F.3d 499 (2d Cir. 2007) ........................................................................................................ 6

*Rothman v. Gregor*,
　　220 F.3d 81 (2d Cir. 2000)..........................................................................................36

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
　　624 F.3d 123 (2d Cir. 2010)..........................................................................................7

*Sacody Techs., Inc. v. Avant, Inc.*,
　　862 F. Supp. 1152 (S.D.N.Y. 1994)..............................................................................16

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
　　531 B.R. 439 (Bankr. S.D.N.Y. 2015)......................................................................28, 30

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Secs.)*,
　　501 B.R. 26 (S.D.N.Y. 2013)................................................................................29, 34, 36

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Secs.)*,
　　No. 20-cv-02586 (S.D.N.Y. May 2, 2022) (McMahon, J.) ..............................37, 38

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
　　No. 12-MC-115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) (Rakoff, J.) .................. *passim*

*Sherman v. A.J. Pegno Constr. Corp.*,
　　528 F. Supp. 2d 320 (S.D.N.Y. 2007)............................................................................35

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
　　379 B.R. 5 (Bankr. E.D.N.Y. 2007)..........................................................................21, 22

*In re Sledziejowski*,
　　No. 13-22050 (RDD), 2016 WL 6155929 (Bankr. S.D.N.Y. Oct. 21, 2016)..........................11

*SPV Osus Ltd. v. UBS AG*,
　　882 F.3d 333 (2d Cir. 2018)..........................................................................................12

*In re SunEdison, Inc.*,
　　620 B.R. 505 (Bankr. S.D.N.Y. 2020)............................................................................31

*Sunward Elecs., Inc. v. McDonald*,
　　362 F.3d 17 (2d Cir. 2004)............................................................................................16

*Taylor v. Sturgell*,
　　553 U.S. 880 (2008)......................................................................................................17

*To v. HSBC Holdings plc*,
　　No. 15CV3590-LTS-SN, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017)....................................12

*Toberman v. Copas*,
　　800 F. Supp. 1239 (M.D. Pa 1992)............................................................................35, 37

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
   916 F.3d 143 (2d Cir. 2019)..................................................................................8

*United States v. Henshaw*,
   388 F.3d 738, 741 (10th Cir. 2004) ....................................................................24

*United Teamster Fund v. MagnaCare Admin. Servs., LLC*,
   39 F. Supp. 3d 461 (S.D.N.Y. 2014).................................................................38

*Walden v. Fiore*,
   571 U.S. 277 (2014)....................................................................................17, 18

*Whitaker Secs., LLC v. Rosenfeld (In re Rosenfeld)*,
   543 B.R. 60 (Bankr. S.D.N.Y. 2015)................................................................35

**Statutes**

11 U.S.C. § 546(e) ............................................................................... *passim*

11 U.S.C. § 548(a)(1)..................................................................................34

11 U.S.C. § 548(a)(1)(A)........................................................................26, 29

11 U.S.C. § 548(a)(1)(B)........................................................................26, 29

11 U.S.C. § 550 ..................................................................................... *passim*

11 U.S.C. § 550(a) ................................................................................. *passim*

11 U.S.C. § 550(a)(2)..................................................................................21

11 U.S.C. § 550(b)...................................................................................3, 37

11 U.S.C. § 550(d)..................................................................................25, 26

**Rules**

Fed. R. Bankr. P. 7012.................................................................................6

Fed. R. Bankr. P. 7015...............................................................................37

Fed. R. Civ. P. 8(a)(2).............................................................................6, 36

Fed. R. Civ. P. 10(c) ..........................................................................33, 34, 35

Fed. R. Civ. P. 12(b)(2)...............................................................................1

Fed. R. Civ. P. 12(b)(6)......................................................................1, 6, 37, 39

N.Y. C.P.L.R. § 302(a)(1)...............................................................................................................9

**Other Authorities**

5A Alan Wright & Arthur R. Miller, Federal Practice & Procedure 3d (3d ed.
    2007) ...........................................................................................................................34, 35

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff"), respectfully submits this memorandum of law and supporting declaration of Robertson D. Beckerlegge ("Beckerlegge Decl."), in opposition to defendant Schroder & Co. Bank AG's (the "Defendant" or "Schroder") motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) (the "Motion").

## **PRELIMINARY STATEMENT**

This action by the SIPA Trustee within the SIPA BLMIS liquidation proceeding seeks to recover $28,532,732 in subsequent transfers of stolen BLMIS customer property that Schroder received from Fairfield Sentry Limited ("Sentry") and Fairfield Sigma Limited ("Sigma," and together, the "Fairfield Funds"). For years, Schroder purposefully invested in BLMIS through BLMIS feeder funds, entities expressly constituted to funnel investments to BLMIS in New York. Nonetheless, Schroder moves to dismiss the Trustee's Complaint, arguing that (i) this Court does not have jurisdiction; (ii) Schroder did not receive any transfers of customer property; (iii) the safe harbor under Section 546(e) bars recovery; and (iv) the Complaint establishes Schroder's Section 550 good faith and other defenses. Schroder's arguments fail.

Despite Defendant's arguments to the contrary, Schroder's contacts with the forum are precisely the type of minimum contacts that courts have found establish personal jurisdiction. First, Schroder purposefully used U.S. bank accounts to both subscribe into and redeem from the Fairfield Funds, which standing alone, provides sufficient basis for personal jurisdiction. Second, Schroder signed multiple subscription agreements with the Fairfield Funds, all of which required it to submit to New York jurisdiction and agree to forum selection and choice of law clauses, all tied to New York. These New York contacts also support the exercise of jurisdiction here. Third,

Schroder purposefully invested in the Fairfield Funds, knowing and intending that BLMIS in New York would be the *de facto* investment manager, broker dealer, and custodian of the Fairfield Funds' (and Schroder's) investments. Schroder knew the Fairfield Funds fed substantially all of their funds into BLMIS and that BLMIS was essential to its investments. In fact, investing in BLMIS was the entire point. These facts, plus the additional contacts discussed herein, establish jurisdiction.

The Trustee has plausibly alleged that Schroder received customer property under Section 550(a) by outlining the relevant pathways through which customer property was transferred from BLMIS to the Fairfield Funds and subsequently to Schroder. The Trustee has also alleged the necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer Schroder received. Nothing more is required at the pleading stage. In response, Schroder argues that the Trustee must show a dollar-for-dollar accounting at the pleading stage and argues that the Trustee must tie every subsequent transfer to specific initial transfers. However, Schroder's arguments are plainly inappropriate on a motion to dismiss and run contrary to well established case law.

The Trustee has also sufficiently alleged the avoidability of the initial transfers based on the Fairfield Funds' actual knowledge of fraud, through incorporating by reference his amended complaint against Sentry (the "Fairfield Complaint").[1] Therefore, the safe harbor for securities payments pursuant to securities contracts under Section 546(e) does not bar recovery from Schroder. Schroder now argues that the avoidability of the initial transfers has not been adequately pled through the incorporation of the Fairfield Complaint, and, in the alternative, Schroder's knowledge as a subsequent transferee (and not the Fairfield Funds' knowledge as

---

[1] After the Trustee filed his Complaint against Defendant, the Trustee filed a Second Amended Complaint (the "Fairfield SAC") in the initial transfer action. *See* Fairfield Second Amended Complaint, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286.

initial transferees) should determine the avoidability of the initial transfers from BLMIS. These arguments conflict with the plain language of the statute and precedent in this SIPA liquidation proceeding, establishing that Section 546(e) does not independently safe harbor the recovery of avoidable fraudulent transfers from a subsequent transferee.

Finally, as recently articulated by the District Court, the Section 550(b) "good faith" defense available to subsequent transferees is a fact-intensive affirmative defense that is premature and inappropriate on a motion to dismiss.

The Trustee respectfully requests that the Court deny Schroder's Motion in its entirety.

## STATEMENT OF FACTS

### I.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS

Madoff founded and operated BLMIS from New York until its collapse in 2008. *See* Complaint ("Compl.") ¶ 23. BLMIS had three principal business units: (i) a proprietary trading business; (ii) a market-making business; and (iii) an investment advisory business (the "IA Business"). *Id.* For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy (the "SSC Strategy"), which involved (a) investing in a basket of common stocks from the Standard & Poor's 100 Index, (b) buying put options and selling call options to hedge against price changes in the underlying basket of stocks, and (c) purchasing U.S. treasury bills when the money was out of the market. *Id.* ¶¶ 24-25. In reality, BLMIS operated a Ponzi scheme through its IA Business. *Id.* ¶ 28. On December 11, 2008, Madoff's fraud was publicly revealed and he was arrested for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. *Id.* ¶ 11.

The extent of damage Madoff caused was made possible by BLMIS "feeder funds"— large investment funds created to funnel investors' funds into BLMIS. *See Picard. v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 179 (2d. Cir. 2021), *cert. denied sub nom. Citibank, N.A. v.*

3

*Picard*, 142 S. Ct. 1209 (2022) ("*Citibank*"). Schroder knowingly invested in a number of these feeder funds, including the Fairfield Funds, Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd. (together, the "Kingate Funds"). Compl. ¶ 2.

## II.    SCHRODER AND ITS INVESTMENTS IN BLMIS FEEDER FUNDS

Schroder is a global asset management company that also provides private banking services to individuals and institutions. Compl. ¶ 3. Schroder invested substantial sums with both the Kingate Funds and the Fairfield Funds, which in turn invested nearly all of their funds with BLMIS. *Id.* at ¶ 7.

The Fairfield Funds were controlled by the Fairfield Greenwich Group ("FGG" or "Fairfield"), a *de facto* partnership with its principal place of business in New York. *See Picard v. Fairfield Inv. Fund Ltd. (In re BLMIS)*, No. 09-01239 (CGM), 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*"). Sentry was a U.S. dollar-denominated fund that invested 95% of its assets with BLMIS. *Picard v. Fairfield Sentry Limited, et al.*, No. 08-01789 (CGM), Adv. Proc. No. 09-01239, ECF No. 23 (the "Fairfield Am. Compl.") ¶¶ 52, 318. Sigma invested 100% of its assets in Sentry. Compl. ¶ 2.

As an investor in the Fairfield Funds, Schroder executed subscription agreements, in which it acknowledged its sophistication and that it had "such knowledge and experience in financial and business matters that [they were] capable of evaluating the risks of this investment." Beckerlegge Decl. Ex. 1. The subscription agreements also incorporated the Fairfield Funds' Private Placement Memorandums ("PPMs"), and by signing, investors like Schroder warranted that they "received and read a copy of the [PPMs]." *Id.* Schroder also agreed to New York choice of law, jurisdiction, and forum provisions in each subscription agreement it executed. *Id.*

4

The PPMs explicitly disclosed BLMIS's multiple roles as the *de facto* investment manager, broker dealer, and custodian for the Fairfield Funds. *Id.*, Ex. 2-4. Additionally, the PPMs disclosed how "[t]he services of BLM[IS] and its personnel are essential to the continued operation of [Sentry], and its profitability, if any." *Id.*, Exs. 2-3. Specifically, investors learned from the PPMs that BLMIS—not the Fairfield Funds or their service providers—would have custody of Sentry's assets in the United States and would execute the funds' purported investment strategy. *Id.*

Like all Fairfield Fund investors, Schroder agreed to send its subscription payments to Sentry's HSBC Bank USA bank account in New York. *Id.*, Ex. 1. Schroder purposefully directed all of its Sentry subscription payments to the HSBC Bank USA New York bank account. *Id.*, Exs. 1, 5. That money was then deposited by Sentry into BLMIS's account at JP Morgan Chase Bank in New York. Fairfield Am. Compl. ¶ 35. In addition, Schroder designated redemptions from Sentry be deposited into a Northern Trust International Banking Corporation account in New York in its own name. Beckerlegge Decl., Exs. 6-8.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against the Fairfield Funds and related defendants to avoid and recover fraudulent transfers of customer property in the amount of approximately $3 billion. Compl. ¶ 36; *see also* Fairfield SAC. In 2011, the Trustee settled with the Fairfield Funds. As part of the settlement, Sentry consented to a judgment in the amount of $3.054 billion but repaid only $70 million to the BLMIS estate. *Id.* The Trustee then commenced a number of adversary proceedings against defendants like Schroder to recover the approximately $3 billion in stolen customer property.

## ARGUMENT

### I.    LEGAL STANDARD

When considering motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule"), applicable to an adversary proceeding under Fed. R. Bankr. P. 7012, "the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences" in the Trustee's favor. *In re J.P. Jeanneret Assoc., Inc*., 769 F. Supp. 2d 340, 353 (S.D.N.Y. 2011) (citing *Cargo Partner AG v Albatrons, Inc*., 352 F.3d 41, 44 (2d Cir. 2003); *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007)). To survive the motion to dismiss, the pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). At the pleading stage, the allegations need only meet the "plausibility" standard, such that they "'nudge[] [the] claims' … 'across the line from conceivable to plausible.'" *Ashcroft v. Iqbal*, 556 U.S. 552, 680 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

The Complaint here sets forth in full the elements of the Trustee's claims, pleading Defendant's receipt of subsequent transfers of customer property and the grounds upon which the Trustee seeks to recover such transfers made to Defendant. Thus, dismissal of the Complaint at this juncture is inappropriate. *See Picard v. Merkin (In re BLMIS)*, 440 B.R. 243, 254-71, 273 (Bankr. S.D.N.Y. 2010).

### II.    THE COURT HAS PERSONAL JURISDICTION OVER SCHRODER

The Court has personal jurisdiction over Schroder because (i) Schroder had minimum contacts with the forum such that it purposefully availed itself of the benefits and privileges of investing in New York and (ii) the exercise of jurisdiction over Schroder is reasonable.

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only show a *prima facie* case that personal jurisdiction exists. *Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013). At this early stage, a *prima facie* showing of jurisdiction "may be established solely by allegations." *Id.*, at 84-85. A plaintiff also may establish a *prima facie* case of jurisdiction through affidavits and supporting materials that contain averments of facts outside the pleadings. *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010). The pleadings and affidavits are to be construed "in the light most favorable to the plaintiffs, resolving all doubts in their favor." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

A court may exercise general or specific personal jurisdiction based on the nature of the defendant's contacts with the forum. *See Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 473 (S.D.N.Y. 2001). Specific jurisdiction, which is at issue in this case, exists where the defendant purposely directs its activities into the forum and the underlying cause of action arises out of or relates to those activities. *Picard v. Fairfield Greenwich Group (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021) (citing *Cromer*, 137 F. Supp. 2d at 473).

The specific jurisdiction analysis is a two-step inquiry. First, the court assesses whether the defendant purposefully established "minimum contacts" in the forum, such that the defendant purposefully availed itself of the privilege of conducting activities with the forum. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Burger King v. Rudzewicz*, 471 U.S. 462, 475–76 (1985). Activity which took place outside the forum and even a "single transaction" with the forum can constitute purposeful availment. *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011) (citing *McGee v. Int'l Life Ins. Co.*, 335 U.S. 220, 223 (1957)) (internal citation omitted). Moreover, minimum contacts may be found when a

7

"'defendant's allegedly culpable conduct involves at least in part financial transactions that touch the forum.'" *In re Fairfield Sentry Ltd.*, 627 B.R. at 566 (quoting *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 151 (2d Cir. 2019)).

Second, the court determines if the exercise of personal jurisdiction is "reasonable" such that doing so will not offend the traditional notions of "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 320. To determine whether jurisdiction is reasonable, courts consider the following factors:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (citation omitted). Where the plaintiff has alleged purposeful availment, however, the burden shifts to the defendant to present a "compelling case" that jurisdiction would be unreasonable. *In re Fairfield Sentry Ltd.*, 627 B.R. at 567 (citing *Burger King*, 471 U.S. at 472–73).

In determining whether a defendant's forum contacts establish personal jurisdiction, the Court must look at "the totality of the circumstances" rather than analyze each contact in isolation. *See, e.g., Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996); *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 59 (S.D.N.Y. 1999) ("[W]e are directed by the Second Circuit to look at 'the totality of the circumstances'" in a personal jurisdiction analysis) (internal citation omitted). In this case, the totality of the circumstances demonstrates that Schroder purposefully availed itself of the protections and privileges of conducting business in New York and that the exercise of personal jurisdiction over Schroder is reasonable.

8

A.    **Schroder's Contacts With New York Demonstrate that it Purposefully Availed Itself of the Benefits and Privileges of New York**

Schroder had multiple contacts with New York which establish this Court's jurisdiction. Schroder used a New York bank account in its own name to send subscription payments to and receive redemption payments from Sentry. Additionally, Schroder purposefully targeted the New York securities market by investing in the Fairfield Funds and other BLMIS feeder funds, which were managed and custodied by BLMIS in New York. Finally, Schroder had direct connections with New York through its Sentry and Sigma subscription agreements. While many of these contacts are sufficient to establish personal jurisdiction on their own, in their totality these contacts demonstrate that Schroder purposefully directed its activities to New York. *See Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 397 F.Supp. 3d 323, 344 (S.D.N.Y. 2019) ("When all [defendant]'s Agreement-related contacts are considered together, it is clear [the defendant] purposely availed itself of the forum.").

1.    **Schroder's Purposeful Use of Its Own and Fairfield's New York Bank Accounts Establishes Specific Personal Jurisdiction**

Schroder had a U.S. bank account in its own name with the Northern Trust International Banking Corporation in New York. Beckerlegge Decl. Exs. 6-8. Schroder used this account both to subscribe into and to receive redemption and fee payments from Sentry and specifically listed this account in its subscription agreements. *Id.*, Exs. 1, 6-8. Courts have repeatedly held that use of New York bank accounts to conduct significant and repeated transfers of funds is sufficient in and of itself to establish personal jurisdiction under either the due process analysis or the New York long-arm statute, N.Y. C.P.L.R. § 302(a)(1).[2] *See, e.g., Eldesouky v. Aziz*, No. 11–CV–

---

[2] Certain cases discussed herein address jurisdiction under New York's long-arm statute. Due to the close overlap between the requirements of due process and the New York long-arm statute, courts engaging in a due process analysis frequently cite long-arm cases. *See, e.g., HSH Nordbank AG N.Y. Branch v. Street*, No. 11 Civ. 9405(DLC), 2012 WL 2921875, at *4 n.3 (S.D.N.Y. July 18, 2012) (noting "the personal jurisdiction analysis under § 302(a)(1) and the Due Process Clause is in most instances essentially coterminous") (citations omitted).

6986 (JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York long-arm statute based solely on defendant's use of New York account to receive payment at issue); *HSH Nordbank*, 2012 WL 2921875, at *4 (same); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 382–83 (S.D.N.Y. 2013) (same).

This Court has similarly found jurisdiction where transferee defendants invested from or received relevant transfers in U.S. bank accounts. *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) *("BNP")* (finding personal jurisdiction over the transferee where "in their capacity as investors, the Defendants sent subscription agreements to New York, wired funds in U.S. dollars to New York, sent redemption requests to New York and received redemption payments from a Bank of New York account in New York."); *Picard v. Estate of Igoin (In re BLMIS)*, 525 B.R. 871, 884 (Bankr. S.D.N.Y. 2015) (finding personal jurisdiction over initial transferee defendants who received transfers from BLMIS's New York bank account).

In addition to the repeated use of its own New York bank account, Schroder sent and received payments to and from Sentry's New York correspondent bank account at HSBC Bank USA, for ultimate deposit in Sentry's bank account. Schroder agreed to send subscription payments from its own New York account to Sentry's New York account in numerous subscription agreements. Beckerlegge Decl. Ex. 1. This repeated and intentional use of Sentry's New York correspondent bank account is also sufficient to establish personal jurisdiction over Schroder.

To the extent that Schroder argues that Sentry's HSBC account and its own New York bank account were correspondent accounts, not direct accounts, this distinction is immaterial in a personal jurisdiction analysis. In the leading case, the New York Court of Appeals held that the

10

use of a correspondent account is sufficient to establish personal jurisdiction "even if no other contacts between the defendant and New York can be established," so long as the use of the correspondent account was purposeful. *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327 at 338; *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 165 (2d Cir. 2013) (finding personal jurisdiction over a defendant with "no operations, branches, or employees in the United States" where the defendant repeatedly used a New York correspondent account); *Off. Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic Bank*, 549 B.R. 56, 67–69 (Bankr. S.D.N.Y. 2016) (designation and use of New York correspondent accounts to receive transfers); *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 327 (2016) (use of New York correspondent accounts to effectuate transfers on behalf of the defendant bank's clients). The fact that the HSBC USA account used by Schroder belonged to Sentry does not change the analysis because Schroder purposefully agreed to use the account. *See Esso*, 397 F. Supp. 3d at 346 ("[T]he point is not whether [the defendant] owns the accounts, it is that they made purposeful use of them for reasons related to the underlying dispute.").

In arguing that the "mere maintenance" of a U.S. bank account is insufficient to establish personal jurisdiction, Schroder relies on factually distinguishable cases. Mot. at 30-31 (citing *In re Sledziejowski*, No. 13-22050 (RDD), 2016 WL 6155929 (Bankr. S.D.N.Y. Oct. 21, 2016) (finding that the transfer of funds by a third party from the United States to Poland in connection with loan agreement was not a contact relevant to specific jurisdiction analysis because the transfer was not made by defendant); *Leema Enters., Inc. v. Willi*, 575 F. Supp. 1533, 1537 (S.D.N.Y. 1983) (finding that correspondent bank accounts were "unrelated to the fraud alleged")). Moreover, Schroder's use of its New York bank account went beyond "mere

11

maintenance" as Schroder was a knowing participant in the underlying transactions, directing the movement of its own funds through this account.

Schroder's reliance on a trio of cases asserting common law claims brought against fund service providers is equally unavailing. *See* Motion at 31 (citing *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016); *To v. HSBC Holdings plc*, No. 15CV3590-LTS-SN, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017)). This Court has previously determined that this line of cases is inapplicable to claims against defendants like Schroder, who invested in BLMIS feeder funds. In *BNP* this Court specifically noted that "*Hill* has no bearing on the issue of personal jurisdiction arising from the Defendants' redemptions as investors in the Tremont Funds which arose from their New York contacts with the Tremont Funds." 594 B.R. at 192. *SVP, Hill,* and *To* all involve disputes between two parties about services owed under a foreign contract, like the breach of fiduciary duty and other claims. By contrast, this action is brought by a U.S. Trustee to recover fraudulent transfers from an investor whose transfers of funds to and from U.S. bank accounts evidence an intent to direct activity towards the U.S. securities markets. *See Picard v. Bureau of Labor Ins. (In re BLMIS),* 480 B.R. 501, 513 (Bankr. S.D.N.Y. 2012) *("BLI")* ("This movement of money to and from BLMIS in the United States, as contemplated by the Agreements, was not fortuitous or incidental; instead, it was 'the ultimate objective' and the '*raison d'etre*' of the Agreement between BLI and Fairfield Sentry.").

### 2.    Schroder's Intentional Investment in BLMIS through Feeder Funds Constitutes Purposeful Availment of the Laws and Privileges of Conducting Business in New York

Schroder's intentional investment with BLMIS in New York through known BLMIS feeder funds alone establishes personal jurisdiction. The Second Circuit recognized that when subsequent transfer investors, like Schroder, chose to invest with "feeder funds that placed all or

substantially all of their assets with Madoff Securities, they knew where their money was going."

*In re Picard, Trustee for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 105 (2d

Cir. 2019) (*"ET Decision"*). By executing numerous subscription agreements and affirming that

it read the Fairfield Funds' PPMs Schroder knew that: (i) Sigma invested substantially all of its

assets in Sentry; (ii) Sentry invested at least 95% of its assets with New York-based BLMIS; (iii)

BLMIS performed all investment management duties for these assets; (iv) BLMIS was registered

with the U.S. Securities and Exchange Commission; (v) BLMIS was the executing broker for

Sentry's investments, and purportedly operated and executed the SSC Strategy on the fund's

behalf; (vi) BLMIS's SSC Strategy purportedly involved the purchase of U.S. equities, U.S.

options, and Treasury Bills, and the decisions regarding which U.S. securities to purportedly

purchase, and when to make such purchases, were made by BLMIS in New York; (vii) BLMIS

was the custodian of Sentry's investments with BLMIS; and (viii) BLMIS was "essential to the

continued operation of" Sentry. Beckerlegge Decl. Exs. 2-4. The fact that Schroder's investments

would ultimately lie with BLMIS was not a mystery to Schroder; it was the entire point of

investing with the Fairfield Funds.

      a.      ***BLI* Establishes this Court's Jurisdiction Over Schroder**

This Court has already concluded that investors like Schroder, who intentionally invested

in BLMIS through the Fairfield Funds, are subject to personal jurisdiction in *BLI*. 480 B.R. at

516-18. There, as here, the Trustee's suit was "based upon [the subsequent transferee's]

investment of tens of millions of dollars in Sentry with the specific goal of having funds invested

in BLMIS in New York, with intent to profit therefrom." *Id.* at 506. There, as here, the

subsequent transferee was provided with identical PPMs and executed identical subscription

agreements establishing the investment's BLMIS-centric purpose. *Id.* at 507-08. And there, as

here, the subsequent transferee argued that the foreseeability of its investment "ending up" in a

BLMIS account was insufficient to support personal jurisdiction. *Id.* at 517. Not only did the

Court reject this argument, Judge Lifland called it "disingenuous," explaining that:

> BLI's investments in Fairfield Sentry did not merely "end up" in
> an account at BLMIS as a result of happenstance or coincidence.
> Rather, BLI purposefully availed itself of the benefits and
> protections of New York laws by knowing, intending and
> contemplating that the substantial majority of funds invested in
> Fairfield Sentry would be transferred to BLMIS in New York to be
> invested in the New York securities market.

*Id.* at 517; *see also Picard v. JPMorgan Chase & Co.*, No. 08-99000 (SMB), 2014 WL 5106909,

at *9 (Bankr. S.D.N.Y. Oct. 10, 2014) (noting courts in this liquidation proceeding have already

"confirmed that defendants who invested directly or indirectly with BLMIS and received

payments from BLMIS as initial transferees or as subsequent transferees of those initial

transferees were subject to the Court's personal jurisdiction"). As framed by this Court, "BLI

intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money

orchard in the United States and reap the benefits therefrom." *BLI*, 480 B.R. at 506.

Because Schroder is identically situated to the defendant in *BLI* with respect to the

fundamental purpose of their investment, *BLI* is controlling and resolves Schroder's personal

jurisdiction defense without the need for inquiry into its additional New York contacts. In fact,

the evidence that Schroder purposefully targeted the New York securities market is considerably

stronger here because Schroder invested in Sigma, which funneled investments into BLMIS

through Sentry, and at least two other BLMIS feeder funds—the Kingate Funds—both similarly

constituted to feed foreign investments directly to BLMIS in New York. *See supra* at pp. 3-4.

### 3.    Schroder's Contacts with FGG in New York also Establish Minimum Contacts

By investing with the Fairfield Funds, Schroder knowingly transacted business with FGG

in New York. When Schroder first invested in the Fairfield Funds, FGG represented that

Fairfield Greenwich Limited, a New York entity, managed the Fairfield Funds. Beckerlegge
Decl. Exs. 2, 4. After FGG formed FG Bermuda in 2003, FGG continued to conduct key
operations from its New York office. *See supra* pp. 3-4. Under similar facts in *BNP*, this Court
found jurisdiction over an investor defendant based on the U.S. contacts inherent in doing
business with the Tremont funds, another BLMIS feeder fund. *BNP*, 594 B.R. at 191 (finding a
*prima facie* showing of jurisdiction "over any fraudulent transfer claims resulting from
redemptions by the Defendants from their accounts with the Tremont Funds").

Additionally, the numerous subscription agreements Schroder executed with the Fairfield
Funds further evidence a "strong nexus with New York" that supports jurisdiction. *See BLI*, 480
B.R. at 517, n.15. In each of the many subscription agreements Schroder executed, it submitted
to venue in New York, the jurisdiction of the New York courts, and the application of New York
law. Specifically, Schroder agreed to the subscriptions agreements' clauses in which it (i)
"agree[d] that any suit, action or proceeding . . . with respect to this Agreement and the Fund
may be brought in New York," (ii) "irrevocably submit[ted] to the jurisdiction of the New York
courts with respect to any [p]roceeding," and (iii) agreed that disputes over the agreement "shall
be governed and enforced in accordance with the laws of New York," and that if litigating here,
it "may not claim that a Proceeding has been brought in an inconvenient forum." Beckerlegge
Decl. Ex. 1.

Schroder's argument that these provisions are immaterial because the Trustee is not a
party to the subscription agreements and the Trustee's claims do not arise under the subscription
agreements misapprehends the relevance of these provisions in this action. *See* Mot. at 31-32.
The Trustee is not seeking to enforce the choice of venue and choice of law provisions, nor does
the Trustee argue that this Court has jurisdiction based on Schroder's consent. Rather, Schroder's

15

repeated agreement to New York law, New York jurisdiction, and New York venue in these subscription agreements is a significant jurisdictional contact with New York and serves as evidence that Schroder purposefully directed its activities toward New York.

Courts have repeatedly held that such provisions constitute jurisdictional contacts with the forum state. *See Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004) ("A choice of law clause is a significant factor in a personal jurisdiction analysis because the parties, by so choosing, invoke the benefits and protections of New York law.") (citing *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 367 (2d Cir.1986) and *Sacody Techs., Inc. v. Avant, Inc.*, 862 F. Supp. 1152, 1156 (S.D.N.Y. 1994)); *Chase Manhattan Bank v. Banque Generale Du Com.*, No. 96 CIV. 5184 (KMW), 1997 WL 266968, at *2 (S.D.N.Y. May 20, 1997) ("[A] choice of law provision may constitute a 'significant contact' with the forum state."); *see also Burger King*, 471 U.S. at 482 ("Although such a [choice of law] provision standing alone would be insufficient to confer jurisdiction . . . it reinforced [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there.").

In *BLI*, this Court, without addressing the issue of whether defendants consented to jurisdiction, found that the clauses in the subscription agreements "further evidenc[e] the strong nexus with New York." 480 B.R. at 517, n.15; *see also Motors Liquidation Co. Avoidance Action Trust v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, 565 B.R. 275, 288– 89 (Bankr. S.D.N.Y. 2017) (finding agreement provisions under New York law plus correspondent banking in New York evidenced a relationship "centered in New York").

Schroder's reliance on the treatment of subscription agreements in the *Fairfield Liquidators* decision is misplaced. Mot. at 32, citing *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, No. 10-13164, 2018 WL 3756343 (Bankr. S.D.N.Y.

Aug. 6, 2018) (*"Fairfield Liquidators"*).[3] In that case, the Fairfield Liquidators argued that the defendants had consented to personal jurisdiction because they were bound by the New York provisions in the subscription agreements. *Fairfield Liquidators,* 2018 WL 3756343, at \*7, 8. The Trustee, however, does not argue that Schroder consented to the jurisdiction of this Court by virtue of the subscription agreements alone. Rather, the Trustee argues that the execution of multiple subscription agreements, all of which contained New York choice of law, jurisdiction and venue provisions, serves as an important jurisdictional contact with the forum and persuasive evidence of Schroder's purposeful availment of the laws and privileges of New York.

In attempting to downplay the importance of its contacts with the Fairfield Funds, Schroder relies on a misreading of *Walden v. Fiore*, 571 U.S. 277 (2014). Mot. at 29-30. In fact, *Walden* has no application here. In a case addressing the foreseeability of an injury arising within a forum state based on tortious conduct outside that state, the Court in *Walden* found that a Georgia police officer could not be sued in Nevada for an unlawful seizure of money in Georgia merely because he knew the plaintiffs resided in Nevada. *Walden*, 571 U.S. at 288-91. *Walden* simply reaffirms the well-established principle that personal jurisdiction cannot be premised solely on a plaintiff's unilateral contacts with the forum state. *See id.* at 284.

By contrast, here, the Trustee is not alleging foreseeability as to the situs of an injury. Rather, as in *BLI*, the Trustee is alleging that Schroder purposefully availed itself of the benefits and laws pertaining to investing in the United States. As demonstrated by the Fairfield Funds

---

[3] Schroder claims, without elaboration, that the rulings in the Fairfield Chapter 15 liquidation are the "law of the case" with respect to the relevance of subscription agreements. Mot. at 32, citing *Fairfield Liquidators*, 2018 WL 3756343. The Trustee was not a party to that action and his interests were not represented. Thus, binding the Trustee would "run[] up against the 'deep-rooted historic tradition that everyone should have his own day in court.'" *Taylor v. Sturgell*, 553 U.S. 880, 892-93 (2008). Furthermore, the Trustee cannot be bound by that decision because it raised different issues than the ones litigated in this action. The claims at issue in the Fairfield Liquidators action did not involve recovery of subsequent transfers under the Bankruptcy Code but rather specifically dealt with claims under the B.V.I. Insolvency Act. *Fairfield Liquidators* at \*2. As the court in *Pelt v. Utah* explained, "a substantive legal relationship as contemplated by the exception is one in which the parties to the first suit are somehow accountable to nonparties who file a subsequent suit raising identical issues." 539 F.3d 1271, 1290 (10th Cir. 2008).

offering materials, the PPMs, and subscription agreements, the Fairfield Funds' express purpose was to pool funds and funnel them to BLMIS in New York for investment in the U.S. securities markets. *See, e.g.*, Compl. at ¶ 7; Beckerlegge Decl. Exs. 1, 2-4. Armed with this knowledge, Schroder made a conscious decision to invest in the Fairfield Funds precisely so that it could reap the rewards of investing with BLMIS in New York. *Id.* A finding of personal jurisdiction on the basis of such purposeful actions directed at a New York broker-dealer and the U.S. securities markets centered in New York comports with the traditional notions of fair play and substantial justice. *See Burger King*, 471 U.S. at 471-74 (noting that due process concerns are satisfied when an out-of-state defendant purposely directs his activities at residents of the forum state and purposely benefits from those activities). In short, there is nothing in *Walden* that precludes jurisdiction here, or that questions, limits, or otherwise has any bearing on the holding in *BLI*.

Schroder also misinterprets *Walden* to the extent it argues, in effect, that Schroder's contacts to the forum must be viewed in a vacuum as opposed to being based on its relationships with BLMIS and its feeder funds. *Walden* recognized that "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties." *Walden*, 571 U.S. at 286; *see also Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1031-32 (2021) (rejecting defendant's contention that *Walden* "shows that a plaintiff's residence and place of injury can never support jurisdiction" and pointing out that "[t]hose places still may be relevant in assessing the link between the defendant's forum contacts and the plaintiff's suit").

Accordingly, this Court should reaffirm *BLI* and hold that Schroder's purposeful targeting of New York and its laws by intentionally investing with BLMIS through the Fairfield Funds establishes personal jurisdiction.

**4.    Schroder's Contacts with the Forum are Sufficiently Related to the Trustee's Claims**

Trustee's claims also "arise out of or relate to" Schroder's contacts with New York. As the Supreme Court recently held, this prong does not require a causal relationship. *See Ford Motor*, 141 S. Ct. at 1026-30. Rather, as this Court has previously stated, this prong may be satisfied if the defendant's conduct "involves at least in part financial transactions that touch the forum." *In re Fairfield Sentry Ltd.*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021) (citation and quotation marks omitted); *see also Bahrain Islamic Bank*, 549 B.R. at 68-71 (rejecting causation and requiring only that the claim is not completely "unmoored" from the transaction).

Schroder's use of U.S. bank accounts and its execution of numerous subscription agreements plainly "relate to" the Trustee's claims and evidence a strong nexus between this case and New York. The very transfers which came through these U.S. bank accounts are central to the Trustee's claims in this proceeding. Furthermore, Schroder's subscriptions into and redemptions from the Fairfield Funds are two sides of the same coin. Schroder could not invest in and profit from the Fairfield Funds without a subscription agreement, and in this case, Schroder executed numerous agreements with Sentry and Sigma. Beckerlegge Decl., Exs. 1, 5. Because Schroder's subscription agreements were necessary predicates to its receipt of customer property through the Fairfield Funds, the subscription agreements are sufficiently related to the Trustee's claims to recover that customer property from Schroder.

Schroder should reasonably anticipate such transfers would be adjudicated in the United States. *See, e.g., HSH Nordbank*, 2012 WL 2921875, at *4 ("claims against [defendants] arise directly out of the transfer of funds into [defendant's] New York accounts"); *Picard v. Estate of Stanley Chais*, 445 B.R. 206, 279 (Bankr. S.D.N.Y. 2011) (finding that defendants' contacts with the forum and the Trustee's claims are "inextricably related"). As such, the Trustee has

demonstrated that Schroder's multiple contacts with New York are sufficiently related to the Trustee's claims.

### B.    Exercise of Personal Jurisdiction Over Schroder is Reasonable

Schroder has failed to put forth any compelling reason why jurisdiction would be unreasonable. Where a plaintiff has made a threshold showing of minimum contacts, a defendant opposing the exercise of personal jurisdiction must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Chloé*, 616 F.3d at 165. Indeed, this Court has found "it would be a 'rare' case where the defendant's minimum contacts with the forum support the exercise of personal jurisdiction but it is unreasonable to force the defendant to defend the action in that forum." *BNP*, 594 B.R. at 188 (citation omitted).

This is not that "rare" case. The burden on Schroder is minimal. *See Maxam Absolute Return Fund, L.P.*, 460 B.R. at 119 (finding New York counsel and conveniences of modern communication and transportation minimize any such burden). The United States has a strong interest in applying U.S. law in this SIPA liquidation proceeding. *See id.*; *see also ET Decision*, 917 F.3d at 103 (noting the "compelling interest in allowing domestic estates to recover fraudulently transferred property"). And the Trustee has a strong interest in litigating in the United States. *See Maxam Absolute Return Fund, L.P.*, 460 B.R. at 119. Accordingly, this Court's exercise of jurisdiction over Schroder is more than reasonable.

### C.    In the Alternative, the Trustee is Entitled to Jurisdictional Discovery

If this Court finds that the Trustee has not yet made a *prima facie* showing of jurisdiction, the Trustee respectfully requests jurisdictional discovery. Such discovery may be authorized where a plaintiff has made "a threshold showing" that there is some basis for jurisdiction. *Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618 (KMW) (HBP), 2009 WL 3817590, at *4 (S.D.N.Y. Nov. 16, 2009). The Trustee has shown how Schroder purposefully invested with

BLMIS through the Fairfield Funds and relied upon U.S. bank accounts to receive BLMIS

customer property. *See supra* pp. 9-12. At a minimum, these facts establish a "threshold

showing" of jurisdiction. *Kiobel*, 2009 WL 3817590, at \*6.

## III.    THE TRUSTEE'S COMPLAINT STATES A VALID CAUSE OF ACTION FOR RECOVERY OF BLMIS CUSTOMER PROPERTY UNDER SECTION 550(A)

The Trustee's Complaint states a claim for recovery under Section 550(a)(2) by plausibly

alleging that Schroder received subsequent transfers of BLMIS stolen customer property. To

plead a subsequent transfer claim, the Trustee must allege facts that support an inference "'that

the funds at issue originated with the debtor.'" *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117,

150 (Bankr. S.D.N.Y. 2014) (citation omitted). No tracing analysis is required, as the pleading

burden "is not so onerous as to require 'dollar-for-dollar accounting' of 'the exact funds' at

issue." *Id*. (quoting *Picard v. Charles Ellerin Revocable Trust (In re BLMIS)*, Adv. Pro. Nos. 10-

04398 (BRL), 10-05219 (BRL), 2012 WL 892514, at \*3 (Bankr. S.D.N.Y. Mar. 14, 2012.)).

Rather, "the Trustee need only allege sufficient facts to show the relevant pathways through

which the funds were transferred from BLMIS to [the subsequent transferee]." *Charles Ellerin

Revocable Trust*, 2012 WL 892514, at \*3; *see also 45 John Lofts, LLC v. Meridian Cap. Grp.

LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019). In addition, the

Trustee must allege "'the necessary vital statistics—the who, when, and how much' of the

purported transfers to establish an entity as a subsequent transferee of the funds." *Merkin*, 515

B.R. at 150 (quoting *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5,

32 (Bankr. E.D.N.Y. 2007)).

### A.    The Trustee's Complaint Meets the Pleading Requirements

The Trustee's Complaint alleges that Schroder received specific transfers, on specific

dates, in specific amounts from Sentry, and that Sentry invested substantially all of its funds with

BLMIS. Compl. ¶¶ 41-42, Ex. C. The Complaint likewise alleges that Schroder received specific

transfers, on specific dates, in specific amounts from Sigma, and that Sigma invested all of its

funds with Sentry. *Id.* ¶¶ 2, 43-44, Exs. D & E. Thus, the Complaint plausibly alleges that

Schroder received subsequent transfers of customer property by (a) outlining the relevant

pathway through which customer property was transferred from BLMIS to the Fairfield Funds

and subsequently to Schroder, and (b) providing the necessary vital statistics (*i.e.*, the "who,

when, and how much") for each subsequent transfer. Nothing more is required. *See, e.g.*, *Picard*

*v. Mayer*, No. 20-01316 (CGM), 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021)

(rejecting argument that subsequent transfer "claim has not been plead with enough specificity as

to how and what [defendant] received" and holding complaint "contains sufficient information

regarding which transfers the Trustee is seeking to recover").

### B.   Schroder Misstates the Trustee's Pleading Burden

Schroder misstates the pleading burden, arguing that the Trustee must connect each

subsequent transfer received by Schroder to a specific initial transfer from BLMIS. Mot. at 10.

However, this Court has previously refused to dismiss subsequent transfer claims where the

complaint "[did] not connect each of the subsequent transfers with an initial, voidable transfer

emanating from BLMIS." *Merkin*, 515 B.R. at 150, *see also 45 John Lofts, LLC*, 599 B.R. at 747

(finding no "requirement to trace individual dollar amounts from the transferor to the transferees

to survive a motion to dismiss"). Likewise, this Court has already rejected the argument that the

Trustee must detail which and what portion of each subsequent transfer comprises customer

property. *See Merkin*, 515 B.R. at 152–53 (refusing to dismiss complaint where "at least some of

the subsequent transfers . . . may be recoverable"); *see also In re Allou Distribs., Inc.*, 379 B.R.

at 30 (finding "if dollar-for-dollar accounting is not required at the proof stage, then surely it is

not required at the pleading stage either").

In arguing that the Trustee has not met the pleading burden, Schroder relies on a
misapplication of *Shapiro*, which is a factually distinguishable case. Mot. at 11-12; *Picard v.
Shapiro*, 542 B.R. 100 (Bankr. S.D.N.Y. 2015). In *Shapiro*, the Trustee alleged that certain trusts
and members of the Shapiro family received approximately $54 million in fraudulent transfers
from BLMIS, and "upon information and belief" these defendants subsequently transferred this
same amount to other defendants. *See Shapiro*, 542 B.R. at 104, 119. However, in that case the
complaint *did not detail any* of the necessary vital statistics of the subsequent transfers. *Id*. at
119. There were no allegations regarding the subsequent transferors, the subsequent transferees,
or the dates or amounts of the subsequent transfers, and consequently this Court granted
defendants' motion to dismiss the subsequent transfer claim. *Id*. By contrast, in this case the
Trustee has alleged the specific parties, dates, and amounts of each transfer Schroder received
from Sentry and Sigma and the investment relationship between the parties. As such, *Shapiro*
actually supports denying Schroder's motion to dismiss because in this case the Trustee has
alleged the vital statistics of each transfer Schroder received.

### C.   Schroder's Tracing Arguments are Inappropriate for a Motion to Dismiss

Schroder's fact-based tracing arguments fare no better and are inappropriate for a motion
to dismiss. To the extent that Schroder argues that Sentry commingled customer property with
other funds, and that this commingling will defeat the Trustee's ability to trace the transfer of
customer property from BLMIS, Schroder is wrong. "The law does not place such a difficult
burden on trustees. The commingling of legitimate funds with funds transferred from a debtor
does not defeat tracing." *Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-cv-
1073, 2020 WL 3077151, at *4 (D. Minn. June 10, 2020) (citing *Charles Ellerin Revocable
Trust*, 2012 WL 892514, at *2).

23

Schroder argues that the Complaint and its exhibits fail to connect subsequent and initial transfers and show that it is only "potentially possible," not plausible, that Schroder received BLMIS customer property. Mot. at 12. While it is well-settled that the Trustee is not required to provide a dollar-for-dollar accounting at the pleading stage, the Complaint demonstrates a temporal relationship between initial transfers from BLMIS to the Fairfield Funds, and subsequent transfers from the Fairfield Funds to Schroder. *See* Compl. Exs. A-E.

Tracing arguments are inappropriate on a motion to dismiss. *Charles Ellerin Revocable Trust*, 2012 WL 892514, at *3, n.7 ("Courts have broad discretion to determine which monies of comingled funds derive from fraudulent sources.") (citing *United States v. Henshaw*, 388 F.3d 738, 741 (10th Cir. 2004)). And speculation that tracing efforts may be difficult is not grounds for dismissal at the pleading stage. *See Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*, Adv. Pro. Nos. 10-03493 (SMB), 10-05447 (SMB), 2014 WL 47774, at *15 (Bankr. S.D.N.Y. Jan. 3, 2014) ("[T]he [subsequent transferees'] speculation that tracing is 'not likely' to reveal a subsequent transfer . . . hardly justifies granting [their cross-motion for summary judgment].").

Moreover, the Trustee is a stranger to the transactions between the Fairfield Funds and Schroder and is entitled to discovery on the issue of tracing. *See Mayer*, 2021 WL 4994435, at *4 ("the Trustee is an outsider to these transactions and will need discovery to identify the specific subsequent transfers by date, amount and the manner in which they were effected") (quoting *Chais*, 445 B.R. at 236). This Court has acknowledged that "in a case such as this one, where the Trustee's lack of personal knowledge is compounded with complicated issues and transactions [that] extend over lengthy periods of time, the trustee's handicap increases, and even greater latitude should be afforded." *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up). This is one reason why this Court

in *Merkin* denied defendants' motion to dismiss, finding "[t]he subsequent transfer claim must ultimately be proved through the books and records of the defendants." 515 B.R. at 151. Even after fact discovery, expert opinion is necessary to determine what portion of the subsequent transfer stemmed from the initial transfer where the subsequent transfers originated from commingled accounts. *Picard v. Merkin (In re BLMIS)*, 581 B.R. 370, 386 (Bankr. S.D.N.Y. 2017); *see also Kelley*, 2020 WL 3077151, at \*5 (denying summary judgment because trustee introduced expert report and associated documents from which a jury could infer that defendants received subsequent transfers of customer property).

Schroder incorrectly alleges that the Trustee has all the information he needs because he has had access to Sentry's books and records for over a decade. Mot. at 4, 10. However, the Trustee does not have all of Sentry's books and records, and discovery in the Trustee's actions against the Fairfield management defendants continues. *See, e.g.*, Stipulated Case Management Order*, Picard v. Fairfield Inv. Fund Ltd. (In re Bernard L. Madoff)*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Dec. 6, 2021), ECF No. 353 (setting November 2022 deadline for fact discovery and August 2023 deadline for expert discovery).

## D.   Schroder's Claims of Double Recovery are Premature

Finally, Schroder argues the Trustee's claims must be dismissed because the Trustee is seeking more money from all of Sentry's subsequent transferees than the fund withdrew from BLMIS. Mot. at 13. There is no dispute that the Trustee is limited to "a single satisfaction" under Section 550(a). 11 U.S.C. § 550(d). However, the Trustee "can recover from any combination of [transferees]" up to the amount avoided. *Helms v. Metropolitan Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021). And under § 550(a), "a trustee may recover [an avoided] transfer from a subsequent transferee of those funds, without the necessity for allocation among all subsequent transferees." *CNB Int'l Inc. v. Kelleher*

25

*(In re CNB Int'l, Inc.)*, 393 B.R. 306, 333 (Bankr. W.D.N.Y. 2008). Thus, until the Trustee recovers the full amount of the $3 billion in fraudulent transfers received by Sentry, he may simultaneously seek recovery from Schroder in this action and from defendants in other actions. *See Fairfield Inv. Fund*, 2021 WL 3477479, at *12 (holding defendant's "double recovery" arguments and the Trustee's purported limitations under Section 550(d) are "to be determined at a later stage of this litigation").

## IV.    SECTION 546(e) DOES NOT APPLY TO SCHRODER

Schroder incorrectly argues that it is shielded by Section 546(e). Section 546(e) provides a safe harbor for the avoidance of certain initial transfers made outside the two-year period referenced in Section 548(a)(1)(A). *See* 11 U.S.C. § 546(e) ("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title.") (emphasis added). However, in *Cohmad*, the District Court held that an initial transferee's actual knowledge of Madoff's fraud precluded application of the safe harbor, thereby allowing the Trustee to avoid transfers made prior to the two-year period. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-MC-115, 2013 WL 1609154, at *1, 7 (S.D.N.Y. Apr. 15, 2013) (Rakoff, J.) (*"Cohmad"*) ("[T]o the extent that an innocent customer transferred funds to a subsequent transferee who had actual knowledge of Madoff Securities' fraud, that subsequent transferee cannot prevail on a motion to dismiss on the basis of Section 546(e)'s safe harbor."). Despite the fact that the Trustee is seeking to recover subsequent transfers, rather than avoid initial transfers, and has pled Fairfield's actual knowledge, Schroder now incorrectly argues that Section 546(e) bars the Trustee's claims.

### A.    The Fairfield Funds Had Actual Knowledge of Madoff's Fraud

Schroder goes through the requirements of Section 546(e) and how they are supposedly met in this case with respect to the initial transfers from BLMIS; however, the other

requirements of 546(e) are irrelevant because the Fairfield Funds had actual knowledge of fraud. This Court has previously held that the Trustee sufficiently pled that Sentry, as the initial transferee, had actual knowledge of the fraud taking place at BLMIS, and that such initial transfers are avoidable. *See Fairfield Inv. Fund*, 2021 WL 3477479, at *4–5. Based on the allegations in the Fairfield SAC, this Court found it "plausible that the Defendants knowingly invested their money in a Ponzi scheme in order to enrich themselves, through fees and other means, at the expense of their investors." *Id.*, at *8. Because the Trustee has adequately pled Sentry's actual knowledge of fraud, Section 546(e) does not provide a safe harbor for the avoidance of the initial transfers to Sentry, and those transfers may be recovered from Schroder regardless of whether Sentry and Schroder qualify as financial institutions, their agreements qualify as securities contracts, or their transfers qualify as settlement payments.[4]

### B.  Schroder Is Precluded From Relitigating the Actual Knowledge Exception

Schroder is precluded from arguing that *Cohmad* is wrong and relitigating the issue of whether actual knowledge bars the application of Section 546(e). *Cohmad* was issued in connection with consolidated proceedings before the District Court as to the application of Section 546(e), and held that a party with actual knowledge of Madoff's fraud cannot claim the protections of Section 546(e). *Cohmad*, 2013 WL 1609154, at *7. The District Court then

---

[4] The Trustee does not concede that any agreements or transfers between Sentry and Schroder activate the safe harbor under Section 546(e). Sentry's agreements with and transfers to Schroder are simply not relevant, because whether the initial transfers from BLMIS to Sentry are avoidable turns on Sentry's actual knowledge of fraud at BLMIS, not Defendant's knowledge as a subsequent transferee. Among other things, the Trustee does not concede—by alleging that the subsequent transfers were customer property—that the initial transfers were "in connection with" the subscription agreements with Schroder. As discussed elsewhere herein, the Trustee believes he will prevail on showing that the subsequent transfers are customer property. However, showing that the subsequent transfers can be traced through the "relevant pathways" to the initial transfers is entirely irrelevant to the issue of whether the initial transfers were "in connection with" any transaction or contract between the initial transferee Feeder Funds and Schroder for purposes of application of the securities safe harbor.

remanded to this Court, and this Court has since applied the actual knowledge exception on numerous occasions.[5]

Schroder participated in the District Court proceedings[6] and did not seek leave to appeal the *Cohmad* decision. Given its participation in the withdrawal of the reference and the District Court's review of this issue, Schroder is bound by *Cohmad*. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 466 (Bankr. S.D.N.Y. 2015) ("Those moving defendants that participated in the withdrawal of the reference of the antecedent debt/value issue have had their day in court and Judge Rakoff's decisions are law of the case."); *Picard v. Lowrey*, 596 B.R. 451, 464 (S.D.N.Y. 2019), *aff'd sub nom. Picard v. Gettinger*, 976 F.3d 184 (2d Cir. 2020).

The Second Circuit's decision in *Ida Fishman*, upon which Schroder relies heavily, does not warrant reconsideration of *Cohmad*'s actual knowledge exception. *See In re Bernard L. Madoff Inv. Secs. LLC (Picard v. Ida Fishman Recoverable Trust)*, 773 F.3d 411 (2d Cir. 2014). As this Court has recognized, *Ida Fishman* did not address the actual knowledge exception. *See Picard v. Cohen*, Adv. Pro. No. 10-04311, 2016 WL 1695296, at *10 n.16 (Bankr. S.D.N.Y. Apr. 25, 2016).

### C. Schroder Is Precluded From Arguing That Section 546(e) Applies Independently to Recovery Actions

Schroder is also wrong that the Trustee must allege that a subsequent transferee had actual knowledge in order to render Section 546(e) inapplicable to recovery actions. Specifically,

---

[5] *See, e.g., Fairfield Inv. Fund*, 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) (applying actual knowledge exception); *Picard v. Square One Fund Ltd.*, Bench Ruling on Motion to Dismiss, Adv. Pro. No. 10-04330 (Bankr. S.D.N.Y. May 29, 2018) (same); *Picard v. Magnify, Inc.*, 583 B.R. 829, 841 (Bankr. S.D.N.Y. 2018) (same); *Picard v. Mendelow et al.*, 560 B.R. 208 (Bankr. S.D.N.Y. Sept. 28, 2016) (same); *Picard v. Avellino*, 557 B.R. 89, 112 (Bankr. S.D.N.Y. 2016) (same); *Picard v. Shapiro*, 542 B.R. 100 (Bankr. S.D.N.Y. 2015) (same); *Picard v. Ceretti, et al.*, No. 09-01161 (SMB), 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015) (same); *Picard v. Merkin*, 515 B.R. 117 (Bankr. S.D.N.Y. 2014) (same).

[6] *See* ECF No. 5, Memorandum of Law in Support of Schroder's Motion to Withdraw Reference at 4 (raising Section 546(e) as grounds for withdrawal); ECF No. 45, Order Concerning Further Proceedings on Extraterritoriality Motion, Ex. A, at 18 (listing Schroder among the defendants in the "Returned Proceedings" following the Extraterritoriality Order).

Schroder argues that the subscription agreements between Schroder and the Fairfield Funds constitute "securities contracts," and as such, in these Section 550 recovery actions, the court must look solely to Schroder's actual knowledge as a *subsequent transferee* to determine whether the initial transfer is avoidable. *See* Mot. at 23-24. However, this argument merely repackages the previously rejected argument that the Section 546(e) safe harbor should independently apply to actions under Section 550.

Section 546(e) applies to the avoidance of initial transfers, not the recovery of subsequent transfers. *See* 11 U.S.C. § 546(e) ("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title.") (emphasis added); *see also BNP*, 594 B.R. at 197 ("The Trustee does not . . . 'avoid' the subsequent transfer; he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550."); *Kelley v. Safe Harbor Managed Acct*. 101, Ltd., No. 20-3330, 2022 WL 1177748, *3 n.5 (8th Cir. Apr. 21, 2022) (*"SHMA"*) (citing *BNP*).

This limitation to avoidance actions is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Secs.)*, 501 B.R. 26, 30 (S.D.N.Y. 2013) (citation omitted). It is also consistent with the understanding that the Code's avoidance provisions protect against depletion of a debtor's estate, while Section 550 is merely a "utility provision," intended to help execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place." *See ET Decision*, 917 F.3d at 98 (internal quotation marks omitted).

*Cohmad* confirmed that Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees.[7] The District Court withdrew the reference on whether Section 546(e) barred recovery of a subsequent transfer pursuant to Section 550.[8] However, in its decision, the District Court specifically limited the safe harbor to avoidance claims based on the plain language of Section 546(e). *See Cohmad*, 2013 WL 1609154, at *4, *9 (applying the "plain terms" of Section 546(e)); at *7 (recognizing that subsequent transferees can raise initial transferees' defenses to *avoidance*); and at *10 ("[B]oth initial transferees and subsequent transferees are entitled to raise a defense based on the application of Section 546(e) to the *initial* transfer from Madoff Securities") (emphasis added). Although the court hypothesized, in *dicta*, that a subsequent transferee's subscription agreements with the initial transferee feeder fund, and related agreements and transactions, might under certain circumstances constitute relevant "securities contracts," and that certain subsequent transferee defendants might qualify as "financial institutions" or "financial participants," the decision is clear that the focus of the safe harbor is still on the *initial* transfers. *See id.* at *9.[9] Contrary to Defendant's argument, the District Court did not, in its hypothetical, discuss actual

---

[7] Schroder claims that the initial transfers "are alleged to have been made 'for the benefit of' Schroder AG, a financial institution. . . ." Mot. at 18 (citing Compl. ¶ 41). This is wrong, as the Complaint does *not* allege the initial transfers were made "for the benefit of" Schroder. Rather, that paragraph of the Complaint alleges that the *subsequent transfers* from Sentry were made "to, or for the benefit of" Defendant. *See* Compl. ¶ 41. The Trustee thus plainly alleges in the Complaint that Schroder is a subsequent transferee, and it is settled law that a defendant cannot be both a subsequent transferee and a party for whose benefit an initial transfer is made. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 474 (Bankr. S.D.N.Y. 2015) (citing cases).

[8] *See In re Madoff Securities*, 12-MC-115, Section 546(e) Briefing Order, ECF No. 119 (S.D.N.Y. filed May 16, 2012) (withdrawing the reference on issue of "whether application of Section 546(e) to an initial or mediate Transfer bars recovery by the Trustee of any subsequent Transfer pursuant to Section 550").

[9] The original point of the *Cohmad* hypothetical was to address the subsequent transfer defendants' argument that, if necessary, in lieu of the BLMIS customer agreements, their subscription agreements could act as the relevant securities agreements under Section 546(e). *Cohmad*, 2013 WL 1609154, at *8. That argument became moot as both the Second Circuit and the District Court determined that the BLMIS customer agreement was a "securities agreement" and the initial transfers from BLMIS were "settlement payments" notwithstanding that no securities were traded and therefore subject to Section 546(e).

knowledge or indicate that in such circumstances, the initial transferee's actual knowledge should be disregarded.[10]

Following *Cohmad*, this Court held in *BNP* that Section 546(e) is applicable only to avoidance and not recovery, and most notably that a subsequent transferee cannot assert the protections of Section 546(e) where the Trustee has adequately pled the initial transferee's actual knowledge. *BNP*, 594 B.R. at 196-97 ("By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer. Hence, a subsequent transferee is protected indirectly to the extent that the initial transfer is not avoidable because of the safe harbor.") (emphasis in original) (internal citation omitted); *see also In re SunEdison, Inc.*, 620 B.R. 505, 514 (Bankr. S.D.N.Y. 2020).

As such, in *BNP*, this Court explicitly rejected the argument being made here—that the "only way the Trustee can escape the application of Section 546(e) here is by pleading with particularity and plausibility that the [subsequent transferee defendants] actually knew of the Madoff Ponzi scheme." *See BNP*, 594 B.R. at 196–97 (quoting defendant's brief). Rather, as explained in *BNP*, a subsequent transferee is only protected by Section 546(e) indirectly to the same extent it protects the initial transferee. *Id*. at 197. Like *Cohmad*, *BNP* is law of the case, and Defendant is bound by both decisions.

Schroder nevertheless continues to argue that, to the extent a party relies on the feeder fund agreements as the relevant "securities agreements" in accordance with *Cohmad*, the court must then look only to the actual knowledge of the subsequent transferee. Mot. at 24. But the District Court did not come to that conclusion and *BNP* confirmed this was not the case.

---

[10] *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 339 (2d Cir. 2011), which the District Court cites in *Cohmad* solely to support its reading of what constitutes a "securities contract," does not change this outcome. The focus is still on the initial transfers, which for purposes of Section 546(e), the Second Circuit has already determined, and it is now not debatable, are the transfers from BLMIS to its feeder funds. *See Ida Fishman*, 773 F.3d at 422-23. As such, neither the initial transfers nor the initial transferees' actual knowledge can be disregarded, regardless of which securities agreement is being relied upon.

Schroder's misinterpretation would eliminate the point of the actual knowledge exception—
which is to restrict all bad actors with actual knowledge of fraud from hiding behind the safe
harbor. *See Cohmad*, 2013 WL 1609154, at *3 (explaining that defendants who knew BLMIS
was a Ponzi scheme "must have known that the transfers they received directly or indirectly from
Madoff Securities were not 'settlement payments.'"). Adopting Schroder's position means the
safe harbor would apply even where the initial transferee feeder fund knew there were no
securities transactions to protect. It would also allow an initial transferee—who had knowledge
of the fraud and was unable to satisfy a judgment (like Sentry)—to place fraudulently transferred
moneys with a subsequent transferee and out of the reach of a trustee. *See id.*, at *1, *7 ("A
defendant cannot be permitted to in effect launder what he or she knows to be fraudulently
transferred funds through a nominal third party and still obtain the protections of Section
546(e).").

Additionally, expanding the safe harbor as Schroder proposes would result in subsequent
transferees being afforded more protection as to avoidance than the initial transferee itself,
contrary to Congress' intent. *See Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.)*, 343 B.R.
75, 82 (Bankr. S.D.N.Y. 2006), *rev'd on other grounds*, 388 B.R. 489 (S.D.N.Y. 2008). As the
Eighth Circuit pointed out in *SHMA* while citing *BNP*, under Section 546(e), "a subsequent
transferee is protected indirectly to the extent that the initial transfer is not avoidable because of
the safe harbor." 2022 WL 1177748, at *3 n.5 (cleaned up; emphasis added). Conversely,
providing subsequent transferees with the same defenses to avoidance as available to initial
transferees does not unfairly bias subsequent transferees.

Contrary to Schroder's interpretation, the court in *Cohmad* did not hold that the Trustee
must plead a subsequent transferee's actual knowledge in order to recover from that transferee.

32

*Cohmad* only held that subsequent transferees with actual knowledge also could not benefit from

Section 546(e). That holding merely ensures that any defendant that *does* have actual knowledge,

including a subsequent transferee, cannot benefit from the safe harbor (even if the initial

transferee is innocent), such that the purpose of the actual knowledge exception is achieved

consistently. *See Cohmad*, 2013 WL 1609154, at *1, *7. This holding does not justify affording

subsequent transferees *without* actual knowledge expanded protections that are *greater* than

those afforded initial transferees.

### D.    The Fairfield Complaint is Properly Incorporated

Attempting to sidestep *Cohmad*, Schroder argues that the Trustee had not properly

incorporated the Fairfield Amended Complaint with respect to the avoidability of the initial

transfers.[11] *See* Mot. at 20-22. However, Schroder's arguments regarding incorporation by

reference of the Fairfield Complaint under Rule 10(c) and a "short and plain statement" under

Rule 8 in the context of Fairfield's actual knowledge of fraud misconstrue the language and

purpose of these rules and ignore the substance of the Trustee's allegations. The Trustee may

incorporate the Fairfield Complaint under Rule 10(c) to demonstrate the avoidability of the

initial transfers from BLMIS to Sentry. *See Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R.

670, 679 (Bankr. E.D. Pa. 2010) (allowing incorporation by reference under Rule 10(c) of

pleadings in different adversary proceeding within the same liquidation). In any event, the Court

may take judicial notice of the Fairfield SAC as well as its own decision on the avoidability of

the initial transfers or allow the Trustee the opportunity to replead.

---

[11] The amended Fairfield Complaint was amended after the filing of the Complaint in this adversary proceeding.
The operative complaint in that action is the Fairfield Second Amended Complaint (the "Fairfield SAC").

1.    **The Incorporated Material Complies with Federal Rules of Civil Procedure 10 and 8**

a.    **All Adversary Proceedings Are Part of the Main Case for Purposes of Rule 10(c)**

Rule 10(c) is intended to "facilitate pleadings that are 'short, concise, and free of unwarranted repetition,' as well as to promote 'convenience' in pleading." *Morrison v. Office of the U.S. Tr. (In re Morrison)*, 375 B.R. 179, 193 (Bankr. W.D. Pa. 2007) (quoting 5A Alan Wright & Arthur R. Miller, Federal Practice & Procedure 3d ("Wright & Miller") at § 1326 (3d ed. 2007)).

Schroder argues that the Trustee may not incorporate by reference the complaint in the Trustee's action against the Fairfield defendants, which details the avoidability of the initial transfers made by BLMIS to Sentry.[12] *See* 11 U.S.C. § 548(a)(1). Schroder's main support for this assertion is that courts in other contexts have declined to allow incorporation by reference of pleadings in a different action. *See* Mot. at 20-21. In the bankruptcy context, however, all matters under the umbrella of one liquidation are considered to be one proceeding for purposes of Rule 10(c). *Geiger*, 446 B.R. at 679 (allowing incorporation by reference of pleadings in a different adversary proceeding within the same liquidation because the pleadings "directly relate[d] to, materially affect[ed], and [were] filed in a single bankruptcy case."). It is no different in this recovery action within the SIPA BLMIS liquidation proceeding.

Moreover, Schroder's argument fails to acknowledge that the District Court in this SIPA liquidation proceeding has already found sufficient the Trustee's incorporation by reference of initial transferee complaints—including against Fairfield—in subsequent transfer actions. *In re Madoff Secs.*, 501 B.R. at 29 (holding that the Trustee sufficiently pleaded the avoidability of

---

[12] In each of the Trustee's subsequent transfer actions, he alleges that the Fairfield Funds received avoidable transfers of customer property from Madoff Securities, that portions of those initial transfers were then transferred to subsequent transferees, and that those amounts are now recoverable under 11 U.S.C. § 550(a).

34

transfers through incorporation by reference of the then-operative Fairfield complaint). *Id*. at 36.

And this decision is law of the case. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*

*(In re Madoff Secs.)*, 596 B.R. 451, 465 (S.D.N.Y. 2019), *aff'd sub nom. In re Bernard L. Madoff*

*Inv. Sec. LLC*, 976 F.3d 184 (2d Cir. 2020).

### b.    Incorporation Is Permitted Where It Achieves the Purpose of Rule 10(c)

Contrary to Schroder's insistence that a party cannot incorporate pleadings from other

actions, Rule 10(c) contains no such limitation. The Southern District and other federal courts

have permitted wholesale incorporation by reference of separate actions in appropriate

circumstances. *See Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 323 n.5

(S.D.N.Y. 2007); *Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC*, 843 F. Supp. 2d 191,

214, n.15. (D. Mass. 2012).[13]

The Trustee references only one other document—an initial transfer complaint—and the

incorporation is explicit and straightforward, with its purpose obvious. *See* Wright & Miller §

1326 ("If the incorporation is clear, less emphasis need be placed on the source of the

incorporated material."); *Whitaker Secs., LLC v. Rosenfeld (In re Rosenfeld)*, 543 B.R. 60, 66

(Bankr. S.D.N.Y. 2015). Schroder cannot seriously argue that the Trustee's incorporation of the

Fairfield Complaint renders the allegations incoherent. Quite the opposite, reference to the

Fairfield Complaint provides notice of avoidability of initial transfers in a manner that avoids

repetition and over-complication. *See Sherman*, 528 F. Supp. 2d at 323 n.5; Wright & Miller §

1326 n.1 ("Adoption by reference avoids overly long or complicated pleadings.").

---

[13] The cases cited by Schroder, on the other hand, are inapposite in that allowing the incorporation in those contexts would have led to confusion or a lack of notice. *See* Mot. 20-21, citing *inter alia*, *Muth v. Dechert, Price & Rhoads*, 391 F. Supp. 935 (E.D. Pa. 1975) (securities class action case in which the plaintiffs referred to a complaint in a separate case but neither incorporated it by reference nor attached the complaint to their pleadings); *Toberman v. Copas*, 800 F. Supp. 1239, 1243 (M.D. Pa 1992). No such issues exist here.

c. **The Trustee's Allegations are Sufficient Under Rule 8**

Despite Schroder's protestations to the contrary, the Trustee's allegations fulfil the Rule 8(a)(2) requirement that the complaint contain a "short and plain statement" of the claim and that each allegation be "simple, concise, and direct." The Trustee makes specific allegations regarding Schroder's liability under Section 550(a) throughout the Complaint, and only incorporates the Fairfield Complaint—as part of one paragraph—in pleading the avoidability of the initial transfers. This places no undue burden on Schroder in responding to the claims against it, as Schroder can either admit the substance of the avoidability of the initial transfers, deny them, or respond that they do not have sufficient information to admit or deny. Repleading all initial transfer allegations—would unnecessarily add countless pages to the Complaint and is unnecessary in pleading recovery under Section 550, *see In re Madoff Secs.*, 501 B.R. at 36, and inconsistent with the purpose of Rule 8.

2. **The Court Can Take Judicial Notice of the Fairfield Decision and the Fairfield Second Amended Complaint**

Schroder's incorporation arguments are really much ado about nothing. Regardless of incorporation, this Court may take judicial notice of the Fairfield SAC itself as well as its holding that the Trustee sufficiently alleged the avoidability of the initial transfers. On a motion to dismiss, a court may take judicial notice of prior decisions, pleadings, orders, and other related documents in the record of prior litigation that relate to the case at bar. *Ferrari v. Cnty of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011); *DeMasi v. Benefico*, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008). This Court's decision, finding that the Trustee sufficiently pleaded the avoidability of the initial transfers, is thus subject to judicial notice. *See Fairfield Inv. Fund*,

2021 WL 3477479.[14] This Court is permitted, and should, take judicial notice of the Fairfield SAC and its finding that the Trustee pleaded the avoidability of the transfers from BLMIS to Sentry.

### 3.    In the Alternative, the Court Can Afford the Trustee an Opportunity to Replead

Should the Court accept Schroder's argument and not take judicial notice of the avoidability of the initial transfers at issue, the Trustee should be granted leave to replead. *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006). Rule 15(a) of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7015, provides that "[t]he court should freely give leave [to amend] when justice so requires." The Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)." *Porat*, 464 F.3d at 276. The Trustee should thus be afforded his chance to have his claims tested on the merits, and not on the basis of pleading technicalities. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).[15]

## V.    THE 550(B) GOOD FAITH DEFENSE IS AN AFFIRMATIVE DEFENSE AND INAPPROPRIATE AT THE MOTION TO DISMISS STAGE

To get around the fact that the good faith pleading burden is no longer on the Trustee, Schroder makes an unsupportable argument that its good faith under the inquiry notice standard has been established as a matter of law on the face of the Complaint. The Trustee urges this Court to reject Schroder's attempt to raise the "good faith" affirmative defense on a motion to dismiss, just as the District Court recently did in *ABN Ireland. See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Secs.)*, No. 20-cv-02586 (S.D.N.Y. May 2, 2022)

---

[14] The Court may also take judicial notice of the Fairfield SAC filed after the Complaint here. *See Rothman v. Gregor*, 220 F.3d 81, 91-92 (2d Cir. 2000).

[15] As evidenced by the cases relied upon by Defendant, leave to replead extends to complaints that were dismissed for improperly incorporating other pleadings or motions by reference. *See* Mot. at 20-22; *see, e.g., Muth*, 391 F. Supp. At 939; *Geiger*, 446 B.R. at 683; *Toberman*, 800 F. Supp. At 1244.

(McMahon, J.) (*"ABN Ireland"*). Like Schroder, the defendants in *ABN Ireland* argued that their good faith defense was established by the complaint. *ABN Ireland*, No. 20-cv-02586, at 6-7. And, as the Court should find here, the District Court in that case concluded that the affirmative defense could not be resolved at the pleading stage. *ABN Ireland*, No. 20-cv-02586, at 7.

By their very nature, affirmative defenses are fact driven, require a factual analysis, and a presentation of evidence. *United Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461, 475 (S.D.N.Y. 2014) ("Affirmative defenses 'often require[] consideration of facts outside of the complaint and thus [are] inappropriate to resolve on a motion to dismiss.'") (quoting *Kelly–Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013)). That sort of factual analysis is not appropriate at this stage of litigation, particularly with respect to a good faith defense, which turns on questions of the defendant's motivation and intent. In its rejection of the defendants' good faith argument, the court in *ABN Ireland* highlighted the fact that the good faith inquiry notice standard is "a fact-intensive inquiry to be determined on a case-by-case basis, which naturally takes into account the disparate circumstances of differently-situated transferees." *Id.* (quoting *Citibank*, 12 F.4th at 194).

As such, even if this Court were to consider Schroder's fact-intensive affirmative defense, there are myriad unknown facts critical to opposing a good faith defense which the Trustee must be given the opportunity to uncover through discovery. *See ABN Ireland*, No. 20-cv-02586, at 7 ("The Trustee rightfully points out that such a fact-based determination 'can only be made based on the entirety of the factual record after discovery (which has not occurred here), not from isolated documents cherry-picked by Appellees and factual inferences Appellees improperly seek to have drawn in their favor.'"); *Merkin*, 440 B.R. at 257 ("[W]hether the Moving Defendants acted in good faith when they allegedly accepted hundreds of millions of

dollars in transfers of BLMIS funds is a disputed issue that this Court can properly determine only upon consideration of all of the relevant evidence obtained through the discovery process."); *In re Dreier LLP*, 452 B.R. 391, 426 (Bankr. S.D.N.Y. 2011) ("Determining the Defendants' good faith is an indisputably factual inquiry to be undertaken by the Court after the close of discovery and need not be resolved at the motion to dismiss stage.").

Tellingly, Schroder does not cite a single case where a court has granted a motion to dismiss at the pleading stage based on a good faith defense. As recognized in *Merkin*, the argument advanced by Schroder applies only as a "limited exception to the general rule" that good faith cannot be established on a motion to dismiss. 440 B.R. at 256. Moreover, to prevail under this limited exception on a Rule 12(b)(6) motion, Schroder must meet a "more stringent standard" and show not only that "the facts supporting the defense appear on the face of the complaint," but also that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *McKenna v. Wright*, 386 F. 3d 432, 436 (2d Cir. 2004)*; see also Drier*, 452 B.R. at 426.

Schroder comes nowhere near meeting such a standard. Schroder argues that based on (i) the Trustee's Fairfield Complaint-related allegations and (ii) the fact that others did not discover the fraud, diligent inquiry by Schroder would have been futile. But this is pure conjecture, which can be easily disputed. Schroder is a sophisticated party who did its own investigations and diligence on investments—facts which by their nature will come to light during discovery. And in other cases, when it was the Trustee's burden to prove bad faith (based on the stricter willful blindness standard), the Trustee has sufficiently alleged the independent knowledge and bad faith of subsequent transferees. *See, e.g.*, *Citibank*, 12 F.4th at 182.

Schroder makes similar arguments as to knowledge of voidability and value, the other factually driven affirmative defenses available to subsequent transferees under Section 550. But

these are also inappropriate for a final determination on a motion to dismiss barring highly
unusual circumstances, which Schroder does not show exist here. *See, e.g., Fairfield Inv. Fund*,
2021 WL 3477479, at *9 ("Whether the Defendants gave value is a question of fact to be
resolved either at the summary judgment stage or at trial."). Schroder identifies no allegations in
the Complaint here that on their face satisfy either affirmative defense, and indeed this Court has
previously concluded that "[a]s to whether the Defendants 'gave value' in the form of
surrendering shares in the Fairfield Funds, such a determination cannot be made as a matter of
law or fact at this stage." *Id*.

## <u>CONCLUSION</u>

For the foregoing reasons, the Trustee respectfully requests the Court deny Schroder's
Motion.

Dated: May 11, 2022               */s/ Robertson D. Beckerlegge*
     New York, New York        Baker & Hostetler LLP
                                 45 Rockefeller Plaza
                                 New York, New York 10111
                                 Telephone: (212) 589-4200
                                 Facsimile: (212) 589-4201
                                 David J. Sheehan
                                 Email: dsheehan@bakerlaw.com
                                 Robertson D. Beckerlegge
                                 Email: rbeckerlegge@bakerlaw.com
                                 Eric R. Fish
                                 Email: efish@bakerlaw.com
                                 Michelle R. Usitalo
                                 Email: musitalo@bakerlaw.com
                                 Robyn M. Feldstein
                                 Email: rfeldstein@bakerlaw.com

                                 *Attorneys for Irving H. Picard, Trustee for
the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment
Securities LLC and Chapter 7 Estate of
Bernard L. Madoff*