# EXHIBIT 4

## FAIRFIELD SIGMA LIMITED

Maximum Capitalization:  5,000,000 Shares
Minimum Investment: 200,000 EUR

### INFORMATION MEMORANDUM

THE DIRECT OR INDIRECT SALE OF SHARES
OF FAIRFIELD SIGMA LIMITED TO
CITIZENS, NATIONALS OR RESIDENTS OF,
OR INSTITUTIONS OR OTHER ENTITIES ORGANIZED,
CHARTERED OR RESIDENT IN, THE UNITED STATES
OF AMERICA IS EXPRESSLY PROHIBITED.

Fairfield Sigma Limited (the "Company") is incorporated in the Territory of the British Virgin Islands.  The Company is soliciting subscriptions for up to 5,000,000  redeemable shares (the "Shares"), denominated in Euros, payable in full at the time of subscription.  The Company will allocate its assets to an investment fund affiliated with the Company's investment manager, Fairfield Greenwich Limited.  In addition, a portion of the Company's assets will be utilized to hedge the currency exposure resulting from the ownership of assets denominated in U.S. Dollars

The date of this Offering Memorandum is October 29, 1999.

Investment Manager:        Fairfield Greenwich Limited
                           399 Park Avenue, 36th Floor
                           New York, NY  10022
                           (212) 319-6060

189633.1                                                          11/04/99 10:21am

FOIA Confidential Treatment Requested                            FGG00122606
by Fairfield Greenwich Limited

FGGSAC0016568

## MUTUAL FUNDS DISCLOSURE

The British Virgin Islands Mutual Funds Act (the "Act") was approved on June 6th 1996 and was implemented on January 2nd 1998 with the aim of regulating Mutual Funds, the Managers and Administrators carrying on business in or from within the Territory of the British Virgin Islands (the "BVI").

Three types of fund, namely Private, Professional and Public Funds (each as defined in the Act) are regulated by the Act and it is intended that Fairfield Sigma Limited (the "Company"), will apply for recognition under the Act as a Professional Fund.

A Professional Fund is defined as a mutual fund:

    a.    the shares of which are made available only to professional investors and the initial investment in which, in respect of the majority of such investors, is not less than one hundred thousand dollars in US currency or its equivalent in any other currency; or

    b.    is designated as a professional fund by regulations.

A "Professional Investor" is defined as a person whose ordinary business involves, whether for his own account or the account of others, the acquisition or disposal of property of the same kind as the property, or a substantial part of the property, of the fund or a person who has signed a declaration that they have a net worth in excess of $1 million and they consent to being treated as a professional investor.

The Act provides for a Professional Fund to be able to manage or administer its affairs in or from within the Territory for up to fourteen days before being recognized.

To be recognized under the act an annual fee of $350 is payable by the Company.

Recognition under the Act should not be taken to imply that the Company has been approved by any regulatory authority in any country such as the United States, the United Kingdom or any other jurisdiction other than the BVI and it is intended that any potential shareholders of the Company participate on the basis that they can afford to lose all or a substantial portion of their investment.

189633.1
11/04/99 10:21am

FOIA Confidential Treatment Requested
by Fairfield Greenwich Limited

FGG00122607

FGGSAC0016569

**Anti-Money Laundering**

To ensure compliance with statutory and other generally accepted principles aimed at the prevention of money-laundering, the Company and/or Citco Fund Services (Europe) B.V. (the "Administrator") may require a detailed verification of a prospective investor's identity. Depending on the circumstances of each application, a detailed verification may not be required if:

(a) the applicant makes the payment from an account in the applicant's name at a recognized financial institution;
(b) the application is made through a recognized intermediary.

These exceptions will apply only if the financial institution or intermediary referred to above is within a country recognized as having sufficient anti-money laundering regulations.

An individual may be required to produce a copy of a passport or identification card certified by a notary public. Corporate applicants or other legal entities may be required to produce a certified copy of the certificate of incorporation (and any change of name), memorandum and articles of association (or equivalent), the names, occupants, dates of birth and residential and business addresses of all directors and the signatory card verifying the authority of officers to sign on behalf of the corporate entity. Trusts, or similar organizational units without specified beneficial owner, which subscribe to the Fund must demonstrate organizational documents which verify their existence and the authority of one or more signatories to sign subscriptions on their behalf.

Pending the provision of evidence satisfactory to the Administrator as to the identity of any prospective investor, the evidence of title in respect of Shares may be retained at the absolute discretion of the Administrator. If within a reasonable period of time following a request for verification of identity, the Administrator has not received evidence satisfactory to it as aforesaid, it may, in its absolute discretion, refuse to allot the Shares applied for in which event application moneys will be returned without interest to the account from which such moneys were originally debited.

Financial institutions which have been duly qualified and authorized to exercise their activity in their respective countries as a bank and which are subject to internationally recognized anti-money laundering legislation may subscribe for Shares on behalf of their clients.

-ii-

189633.1                                                                        11/04/99 10:21am

FOIA Confidential Treatment Requested                          FGG00122608
by Fairfield Greenwich Limited

FGGSAC0016570

## TABLE OF CONTENTS

SUMMARY ...................................................................................................................................1

THE COMPANY ..........................................................................................................................4

MANAGEMENT OF THE COMPANY AND OTHER RELATIONSHIPS ..............................4

INVESTMENT POLICIES ..........................................................................................................7

OFFERING OF THE SHARES .....................................................................................................9

FEES, COMPENSATION AND EXPENSES ............................................................................12

ADMINISTRATOR, REGISTRAR AND TRANSFER AGENT ..............................................13

RISK FACTORS ........................................................................................................................14

POTENTIAL CONFLICTS OF INTEREST ..............................................................................18

PRIOR TRADING RESULTS ....................................................................................................19

DESCRIPTION OF SHARES .....................................................................................................20

DIVIDEND POLICY ..................................................................................................................20

TRANSFERS, REDEMPTIONS AND TERMINATION ..........................................................21

TAX CONSIDERATIONS AND EXCHANGE CONTROL .....................................................22

LEGAL MATTERS ....................................................................................................................23

MISCELLANEOUS ...................................................................................................................24

APPENDIX A – FINANCIAL STATEMENTS OF FAIRFIELD SENTRY LIMITED

APPENDIX B – SUBSCRIPTION DOCUMENTS

-iii-

FOIA Confidential Treatment Requested                                    FGG00122609
by Fairfield Greenwich Limited

FGGSAC0016571

## SUMMARY

The following Summary is intended to highlight certain basic information which is set forth more fully elsewhere in this Information Memorandum and, accordingly, should be read in conjunction with such detailed information.

### The Offering

| | |
|---|---|
| Issuer | Fairfield Sigma Limited (the "Company") is organized as an international business company under the laws of the Territory of the British Virgin Islands (the "BVI"). The registered office of the Company is located in the BVI. |
| Securities Offered | Shares of the Company's Common Stock, denominated in Euros (the "Shares"), will be offered at an initial offering price of 100 EUR per Share for Shares to be sold at a closing to be held on November 1, 1999. Thereafter, the Shares will be sold at a price equal to the Net Asset Value per Share (as defined) as calculated as of the date of issuance (generally the first day of every month). The Shares will be offered to subscribers who desire to invest in Fairfield Sentry Limited and to hedge the currency exposure to the Euro resulting from the Company holding assets (i.e., shares in Fairfield Sentry Limited) denominated in U.S. dollars. |
| Offerees | Purchasers who are not citizens, nationals or residents of, or institutions or other entities organized, chartered or resident in, the United States. See "OFFERING OF SHARES." |
| Minimum Subscription | The minimum initial subscription per investor is 200,000 EUR, unless the Company deems it advisable to permit subscriptions for a lesser amount, such amount to be no less than 100,000 EUR. Following his initial investment, a shareholder may make additional investments in amounts of not less than 75,000 EUR. |
| Maximum Capitalization | The Company will not accept a subscription tendered for Shares at a time when the number of its outstanding Shares is 5,000,000. |
| Subscription Procedures | It is preferable that subscriptions be made by wire transfer. However, subscriptions may be made by mail if necessary. Subscription amounts must be received by the Company at least two (2) business days prior to month end. |

-1-

189633.1                                                                                          11/19/99

FOIA Confidential Treatment Requested                                    FGG00122610
by Fairfield Greenwich Limited

FGGSAC0016572

| | |
|---|---|
| Solicitation of Subscriptions | There are no underwriting arrangements with respect to the offering of Shares.  All solicitations of subscriptions will be made directly by the Company or through the assistance of unaffiliated placement agents and money managers.    Such unaffiliated placement agents and money managers may charge their clients a placement fee of up to 5% of the total amount of the subscription for Shares sold with their assistance, and/or share in the fees earned by Fairfield Greenwich Limited, as Investment Manager. The unaffiliated placement agents and money managers may rebate all or a portion of such fees to their clients. |
| Business Objective of the Company | The Company will seek to achieve capital appreciation of its assets by purchasing shares in Fairfield Sentry Limited ("FSL"), a British Virgin Islands corporation, which invests its assets through an account at Bernard L. Madoff Investment Securities ("BLM"), a registered broker-dealer in New York, New York, which employs an options trading strategy described as "split strike conversion". FSL is an affiliate of the Company and the investment manager, Fairfield Greenwich Limited.   FSL issued shares in November 1990 at $200 per share.  As of September 30, 1999, its Net Asset Value per share was U.S.$635.78, with total assets of U.S. $2,281,617,577 (unaudited). |
| | The Company will utilize leverage through a line of credit extended by Citco Bank Nederland N.V. ("Citco Bank") in purchasing its interests in FSL.  The Company will also allocate a small portion of its assets to Citco Bank to provide a currency overlay program designed to hedge the currency exposure of its Shareholders resulting from the Company holding assets denominated in U.S. Dollars.  The Company's obligations to Citco Bank with respect to the leveraging and currency hedging activities will be collateralized through a pledge of the  assets underlying the Shares (i.e., the Company's shares in FSL).  In order to perfect this pledge of assets, the Company's shares in FSL will be held in the name of Citco Bank.  Citco Bank will be permitted to take any and all appropriate action with respect to these FSL shares at any time in the event of a default on the part of the Company with regard to its obligations to Citco Bank. |
| Investment Manager | Fairfield Greenwich Limited ("FGL" or the "Manager"), a corporation organized under the laws of Ireland, serves as the Company's investment manager.    It is also the Investment |

-2-

FOIA Confidential Treatment Requested                                           FGG00122611
by Fairfield Greenwich Limited

FGGSAC0016573

Manager of FSL. Jeffrey H. Tucker, and Walter M. Noel, Jr. are the officers, Directors and principal shareholders of FGL. Mr. Noel is also a Director of the Company (see "MANAGEMENT OF THE COMPANY"). Andres Piedrahita is the beneficial owner of FGL's third shareholder and serves as a consultant to FGL.

|  |  |
|---|---|
| Directors | Walter M. Noel, Jr., Jan R. Naess and Peter P. Schmid are the Directors of the Company. They are also the Directors of FSL. |
| Citco | Citco Fund Services (Europe) B.V., an affiliate of Citco Group Limited, acts as administrator, registrar and transfer agent for the Company. |
| Dividend Policy | It is anticipated that the Company will not declare any dividends; rather, income will be reinvested and will be reflected in the Net Asset Value of the Shares. |

<u>Sale, Redemption and Exchange Of Shares</u>

|  |  |
|---|---|
| Redemption at the Option of a Shareholder | A shareholder of the Company, on fifteen (15) business days' (i.e., any day not a Saturday or Sunday, that is not a public holiday or a day on which banks are generally authorized or obliged by law or regulation to close in the Netherlands or the United States of America) notice, may cause his Shares to be redeemed as of the end of any month. |
| Compulsory Redemption | The Company reserves the right to call all or a part of a shareholder's Shares for redemption at any time for any reason or for no reason. |
| Sales | The Company will offer its Shares on a continuous basis. Subscriptions received during any monthly period will ordinarily be accepted as of the first day of the following month, i.e., subscriptions received between March 1 and March 31 will be accepted as of April 1. |

<u>Compensation And Expenses</u>

|  |  |
|---|---|
| Expenses | The Company's expenses incident to this offering will not exceed $5,000. Such expenses will be paid by the Company and will be amortized among the Company's shareholders, during a period of |

-3-

FOIA Confidential Treatment Requested
by Fairfield Greenwich Limited

FGG00122612

FGGSAC0016574

five years from the date of the initial closing of this offering. The Company will bear, for each year, all continuing offering costs; all ordinary legal and auditing fees; all registrar, transfer agent and administration fees; and all expenses in maintaining the Company's office and all other expenses incurred in the operation of the Company, if any, including any legal fees that relate to extraordinary circumstances, such as tax examinations or litigation involving the Company, as well as all fees and all ordinary and necessary expenses related to the Company's investment and trading activities. Transactional costs will be included in FSL's calculation of profit and loss and therefore will be indirectly borne by the Company. The costs incident to the currency hedging program and leverage will be borne by the Company. The Company will not pay the Manager a management fee or performance fee. Any fees incident to the Company's investment in FSL shall be paid to the Manager by FSL.

## THE COMPANY

Description

The Company was incorporated in the Territory of the British Virgin Islands ("BVI") as an international business company on March 19, 1997. The registered office of the Company is located in Road Town, Tortola, British Virgin Islands.

Shareholders will have the right to redeem part or all of their Shares, or purchase additional Shares, on a monthly basis (See "TRANSFERS, REDEMPTIONS AND TERMINATION").

## MANAGEMENT OF THE COMPANY AND OTHER RELATIONSHIPS

The Company

The Company's Board of Directors has overall management responsibility for the Company, including establishing investment, dividend and distribution policy, and having the authority to select and replace the Company's administrator, registrar and transfer agent, any officers of the Company and other persons or entities with management or administrative responsibilities to the Company. None of the Company's Directors own an equity interest in the Company.

The Directors of the Company are as follows:

-4-

189633.1                                                                                    11/19/99

FOIA Confidential Treatment Requested
by Fairfield Greenwich Limited

FGG00122613

FGGSAC0016575

**Walter M. Noel, Jr.**, age 68, graduated from Vanderbilt University in 1952, received a Master of Arts in Economics from Harvard University in 1953 and graduated from Harvard Law School in 1959. From 1959 to 1972, he was associated with the Management Services Division of Arthur D. Little Inc., an industrial and management consulting firm. From 1972 to 1974, Mr. Noel was President of Bahag Banking Ltd., in Lausanne, Switzerland. In 1974, Mr. Noel became Vice-President of the International Private Banking Department of Citibank, N.A., where he remained until 1977, when he became Senior Vice President of the International Private Banking Department of Chemical Bank. Since 1983, Mr. Noel has been a self-employed investment consultant and, until January 1992, was associated with Fahnestock & Co., Inc., a member firm of the New York Stock Exchange. From 1993 to 1996, Mr. Noel was a general partner of Fred Kolber & Co. Limited Partnership ("Fred Kolber & Co."), a broker dealer registered with the Securities and Exchange Commission, which was a member of the National Association of Securities Dealers, Inc. and various securities exchanges and clearing organizations. Until January 1998, Mr. Noel was a general partner of GOF Partners (Limited Partnership), a Connecticut limited partnership ("GOF"), and Greenwich Strategies, L.P. and Greenwich Sentry, L.P., which are Delaware limited partnerships and investment partnerships offered to United States residents and citizens. Fairfield Greenwich Limited is now the general partner of these entities. He is a director of Fairfield Sentry Limited ("FSL"), Fairfield International Limited ("FIL"), Advanced Strategies Limited ("Advanced"), Sentry Select Limited ("Sentry Select"), Advanced Pacific Strategies Limited, Glickenhaus International Limited ("GIL") , Sentry Assets (Euro) Limited, Arlington International Fund Limited ("AIL") and Gulfstream International Fund Limited, corporations organized under the laws of the British Virgin Islands (the "BVI"), which offer money management services to non-U.S. citizens and residents. He is an officer and director of Fairfield International Managers, Inc., a Delaware corporation, which served as the Company's investment manager until December 31, 1997, and which offered investment management services to the aforementioned BVI corporations and certain of the private investment partnerships noted above until December 31, 1997. Finally, Mr. Noel is a Director of The Navigation Fund Limited, a Liberian corporation, and an officer and director of Fairfield Greenwich Capital Partners, Inc. ("FGCPI"), a Delaware corporation which is the administrative manager of The Navigation Fund Limited and a co-venturer in J.P. Acquisition Fund, L.P., a Delaware limited partnership organized to acquire and manage private operating companies.

**Jan R. Naess**, age 39, received a Bachelor of Arts degree in 1981 and a Masters degree in Economics in 1983 from the University of Oslo. From 1983 to 1987, he was employed in the Economic Research Department of R.S. Platou a.s. in Oslo, a leading shipbrokering firm. In 1987, Mr. Naess joined with R.S. Platou a.s. to form R.S. Platou Asset Management a.s., which was instrumental in the sale and purchase of 15 bulk carriers from 1987 to 1989. In 1989, Mr. Naess liquidated his interest in R.S. Platou Asset Management a.s. and formed PAN Shipping Ltd., a shipowning/ operating and project development company, which merged with Northern Navigation International Limited ("NNI") in 1991. Mr. Naess is a Vice-President of NNI, a

-5-

189633.1                                                                                           11/19/99

FOIA Confidential Treatment Requested
by Fairfield Greenwich Limited

FGG00122614

FGGSAC0016576

Liberian corporation, which is in the business of investing in and managing shipping assets and which is the investment manager of The Navigation Fund Limited. He serves as a Director of FSL, FIL, Sentry Select, GIL and AIL.

**Peter P. Schmid**, age 50, received a Swiss Federal Certificate of Capacity in 1968. Mr. Schmid was employed by Credit Suisse from 1968 to 1986. From 1975 to 1977, he was employed in Credit Suisse's International Portfolio Management Department in Zurich. After a brief posting in Credit Suisse's New York office, Mr. Schmid was in charge of the Bank's representative office in Rio de Janeiro from 1977 to 1984. From 1984 to 1986, Mr. Schmid was Vice President in charge of Credit Suisse's Latin American Private Banking Desk in Geneva. Mr. Schmid has been an independent investment adviser since April 1986. He is President of Peter Schmid (Portfolio Management), P. Schmid & Associés, S.A., Rock Ltd. and Armor S.A. Mr. Schmid is a Director of Inter Asset Management Inc., FSL, FIL, Sentry Select, GIL and AIL.

The Investment Manager

The Company's investment manager is Fairfield Greenwich Limited, a corporation organized under the laws of Ireland, ("FGL or the "Manager"), which was incorporated on October 23, 1997. FGL is also the investment manager of FSL and other investment funds domiciled outside of the United States. It is responsible for the management of the Company's investment activities, monitoring those investments and maintaining the relationship between the Company and FSL and with its escrow agent, custodian, administrator, registrar and transfer agent. FGL has delegated the management of FSL's investment activities to Bernard L. Madoff Investment Securities, a registered broker-dealer in New York, New York, see "INVESTMENT POLICIES". The Manager maintains an office at 399 Park Avenue, New York, New York 10022; telephone number (212) 319-6060. The Directors and officers of the Manager are Walter M. Noel, Jr. and Jeffrey H. Tucker. Andres Piedrahita acts as a consultant to the Manager.

Walter M. Noel, Jr. is the President and a Director of the Manager. His background is summarized above under "MANAGEMENT OF THE COMPANY AND OTHER RELATIONSHIPS - The Company".

Jeffrey H. Tucker, age 53, is Vice President and a Director of the Manager. Mr. Tucker practiced law in New York City from 1970 - 1986. In January of 1987 he joined Fred Kolber & Co., and in September of 1987 he became a general partner of Fred Kolber & Co. which position he occupied until 1996. Until January 1998, Mr. Tucker was also a general partner of GOF, Greenwich Strategies, L.P. and Greenwich Sentry, L.P. and is presently an officer and director of FIM and FGCPI.

Andres Piedrahita, age 40, graduated from Boston University's School of Communications in 1981. Upon graduation from college, Mr. Piedrahita became employed as a financial consultant with Prudential Bache Securities Inc. in New York. From 1987 to 1990, Mr.

189633.1                                                                                    11/19/99

FOIA Confidential Treatment Requested                                              FGG00122615
by Fairfield Greenwich Limited

FGGSAC0016577

Piedrahita was a Vice President at Shearson Lehman Hutton, specializing in money management consulting for non-U.S. institutions and individuals. From 1991 to 1997, Mr. Piedrahita was the Director and President of Littlestone Associates, Inc., a New York corporation, which until December 31, 1997, was the investment manager of Advanced Strategies Limited, Advanced Latin Fund, Ltd., Advanced Pacific Strategies Limited, Dynamic Alternative Strategies Limited and Dynamic Leveraged Strategies Limited, which are British Virgin Islands corporations.

The Manager will not have any beneficial interest in the Company.

Pursuant to the Investment Management Agreement between the Company and the Manager, the Manager is not liable for any error of judgment or for any loss suffered by the Company unless such loss resulted from the Manager's willful misfeasance, bad faith, gross negligence or reckless disregard of its obligations and duties. See "RISK FACTORS".

## INVESTMENT POLICIES

The Company seeks to obtain capital appreciation of its assets through nontraditional options trading strategies by investing in FSL, which has established a discretionary account at Bernard L. Madoff Investment Securities ("BLM"), a registered broker-dealer in New York, New York, which utilizes a strategy described as "split strike conversion". This strategy has defined risk and profit parameters which may be ascertained when a particular position is established. All investment decisions in the account at BLM are effected by persons associated with BLM. The firm, which employs approximately 300 people, acts primarily as a market maker in stocks and convertible securities. Most of the stocks for which it acts as a market maker are also listed on the New York Stock Exchange. Set forth below is a description of the "split strike conversion" strategy.

The establishment of a typical position entails (i) the purchase of a group or basket of equity securities that together will highly correlate to the S&P 100 Index (the "OEX"), (ii) the sale of out of the money OEX call options in an equivalent contract value dollar amount to the basket of equity securities, and (iii) the purchase of an equivalent number of out of the money OEX put options. A call option is out of the money when its strike price is greater than the current price of the stock; a put option is out of the money when the strike price is lower than the current price of the stock. The basket typically consists of approximately 35 stocks in the S&P 100 Index.

The logic of this strategy is that once a long stock position has been established, selling a call against such long position will increase the standstill rate of return, while allowing upward movement to the short call strike price. The purchase of an out of the money put, funded with part or all of the call premium, protects the equity position from downside risk.

-7-

FOIA Confidential Treatment Requested
by Fairfield Greenwich Limited

FGG00122616

FGGSAC0016578

A bullish or bearish bias of the positions can be achieved by adjustment of the strike prices in the OEX puts and calls. The further away the strike prices are from the price of the S&P 100 Index, the more bullish the strategy. However, the dollar value underlying the put options always approximates the value of the basket of stocks.

FSL initially issued shares in November 1990 at $200 per share. As of September 30,1999, FSL's Net Asset Value per share was U.S.$635.78 with total assets of U.S. $2,281,617,577 (subject to audit).

FSL was admitted to the Official List of the Irish Stock Exchange, Dublin, Ireland, on January 12, 1995. FSL was issued SEDOL number 0-330-934. There can be no assurance that a trading market in the FSL shares will develop. The Company's redemption rights as an FSL shareholder are not affected by FSL having obtained the listing.

Transaction Executions

BLM acts as a principal in connection with its sale of securities to FSL, and the purchase of securities from FSL. BLM acts as a market-maker in the stocks purchased and sold by FSL. These market making activities enable BLM to trade with the Company as principal.

The options transactions executed for the benefit of FSL, and indirectly, the Company, are effected in the over-the-counter market and on a registered options exchange. See "POTENTIAL CONFLICTS OF INTEREST".

The Company will leverage the purchase of additional shares of FSL through a line of credit established at Citco Bank Nederland N.V. ("Citco Bank"). The cost of this leverage will be reflected in the Net Asset Value of the Company's Shares.

In an effort to manage the U.S. Dollar exposure of the Company's shareholders, the Manager has established an account at Citco Bank to hedge the currency exposure of the shareholders resulting from the Company holding assets denominated in U.S. Dollars. The account will apply a passive strategy designed to immunize investors against U.S. Dollar declines by continuously hedging the currency exposure utilizing foreign exchange instruments. Obligations owed to Citco Bank in connection with this account, as well as the line of credit described above, will be collateralized by a pledge of the assets underlying the Shares (i.e., the Company's FSL shares).

The Company may hedge its currency exposure through the purchase or sale of any foreign exchange instrument including forward and option contracts. At the present time, the Company will utilize forward contracts in the interbank market as the means for its hedging activities. Hedging contracts, on a net position basis, will generally be no less than 95%, and will not exceed 105% of the Net Asset Value of the Shares, i.e. the net notional value of hedging

-8-

FOIA Confidential Treatment Requested                                          FGG00122617
by Fairfield Greenwich Limited

FGGSAC0016579

positions outstanding in this account will range from 95% to 105% of the Net Asset Value of the Shares. The cost incident to managing the currency exposure of the shareholders will be reflected in the Net Asset Value of the Shares.

<u>Other Investments</u>

In order to ensure that the Company will not be subject to United States federal income taxation on trading gains from the disposition of certain investments, the Company will not invest in any "United States real property interest" (including, for example, certain interests in any U.S. Corporation that is a "United States real property holding corporation"), as such terms are defined under the U.S. Internal Revenue Code of 1986 (the "Code") and the Treasury Regulations promulgated thereunder. See "TAX CONSIDERATIONS AND EXCHANGE CONTROL."

The Company may invest some of its assets in short-term U.S. government obligations, certificates of deposit, short-term high grade commercial paper and other money market instruments (but not money market mutual funds), including repurchase agreements with respect to such obligations. In order to ensure that substantially all of the interest earned by the Company will not be subject to United States federal withholding taxes, any investment in an obligation of a U.S. person or entity (other than in certificates of deposits in banks) primarily will be in an instrument (i) which is issued and purchased at a discount from its face amount, which is not otherwise interest bearing, and which has a term of no more than 183 days from the date of issuance or (ii) which is in registered form and which is issued after July 18, 1984. See "TAX CONSIDERATIONS AND EXCHANGE CONTROL."

## OFFERING OF THE SHARES

The Company is offering up to 5,000,000 shares, denominated in Euros (the "Shares"). The initial offering price is 100 EUR per Share. The Company anticipates the commencement of trading activities in November or December, 1999. Thereafter, the Shares will be offered at a price equal to the Net Asset Value per Share (as defined) as calculated as of the date of issuance (generally the last day of every month). The Shares may not be sold directly or indirectly to (i) natural persons who are citizens, nationals, or residents of, or institutions or other entities organized, created, formed, chartered or resident in, the United States of America, (ii) entities as to which any person or entity described in (i) above is, directly, or indirectly, a beneficiary, fiduciary, grantor or decedent, or (iii) institutions or other entities owned, in whole or in part, directly or indirectly by the persons or entities described in (i) or (ii) above ("U.S. persons"). No shares may be subject to an option held by a U.S. person. Any transfer of Shares to a U.S. person is prohibited and will be subject to immediate and compulsory redemption by the Company. See "TRANSFERS, REDEMPTIONS AND TERMINATION - Transfers."

-9-

189633.1                                                                                   11/19/99

FOIA Confidential Treatment Requested                                    FGG00122618
by Fairfield Greenwich Limited

FGGSAC0016580

The minimum initial purchase by each subscriber is 200,000 EUR, unless the Company deems it advisable to permit subscriptions for a lesser amount, such amount to be no less than 100,000 EUR. The Company may reject any subscription, in whole or in part, in its discretion. All subscriptions, once made, are irrevocable to the subscriber.

All proceeds from the sale of Shares will be received by the Company in trust and will be deposited by the Company into segregated interest bearing accounts in the Company's name at the Company's subscription agent, Citco Bank.

After the initial closing, the Company will offer its Shares on a continuous basis at a price equal to the Net Asset Value per Share as calculated as of the date of issuance of such Shares. Subscriptions must be received at least two (2) business days prior to month end. They will be accepted as of the first day of the following month. Thus, for example, subscriptions received between January 1 and January 20 (assuming January 29th is two business days before the end of January) will be accepted as of February 1. The Company reserves the right, in its discretion, to accept any subscription prior to such first day.

There are no underwriting arrangements with respect to the offering of Shares. All solicitations of subscriptions will be made directly by the Company or through the assistance of unaffiliated placement agents and money managers, who may charge a placement fee of up to 5% of the total amount of the subscriptions for Shares sold, and/or share in the fees earned by the Manager. The unaffiliated placement agents and money managers may rebate all or a portion of such fees to their clients.

Net Asset Value Defined

Net Asset Value is defined as the Company's total assets including (i) all cash and cash equivalents, including bank deposits and interest bearing obligations (valued at cost plus accrued interest and discount) and (ii) securities positions (valued at closing prices) (i.e., the Net Asset Value of the Company's FSL shares), less total liabilities of the Company (utilizing generally accepted accounting principles as a guideline, consistently applied under the accrual method of accounting), except to the extent see form below:

(i) In the case of extraordinary circumstances which warrant a different valuation of any securities, such as an inability to liquidate existing positions, such securities will be valued at such prices as the Manager shall determine; and

(ii) The amount of any distribution or dividend made shall be a liability of the Company from the day when the distribution or dividend is declared until it is paid.

All decisions on the valuation of assets and liabilities and the determination of Net Asset Value shall be made by the Company's Board of Directors.

-10-

189633.1                                                                                                    11/19/99

FOIA Confidential Treatment Requested
by Fairfield Greenwich Limited

FGG00122619

FGGSAC0016581

Net Asset Value per Share is defined as the Net Asset Value divided by the number of Shares then outstanding.

The difference between the Net Asset Value of the Company and the Net Asset Value of FSL will be directly related to the results of, and charges incident to, the currency hedging trading account maintained with respect to the Company's Shares and the costs incident to the use of leverage.

Who Should Purchase/Subscription Procedure

This offering is limited to non-U.S. persons who have the ability to speculate in high risk securities and for whom such a purchase is suitable in light of such person's financial condition. The Company will require as a condition to the acceptance of a subscription that the subscriber represent and warrant that he has a net worth in excess of U.S. $1,000,000, or its equivalent in the local currency of the subscriber, and is not a U.S. person.

Prospective subscribers should inform themselves as to the legal requirements within their own countries for the purchase of Shares and any foreign exchange or tax considerations relevant to such purchase.

As part of the Company's responsibility for the prevention of money laundering, the Company will require detailed verification of a prospective investor's identity to be included with its subscription application.

An individual will be required to produce a copy of a passport or identification card. Corporate applicants will be required to produce a certified copy of the certificate of incorporation (and any change of name), memorandum and articles of association (or other documents evidencing the existence of the legal entity), the register of directors or an excerpt from the trade register held at the relevant chamber of commerce and the signatory card verifying the authority of officers to sign on behalf of the corporate entity. Trusts and other entities which subscribe to the Company must demonstrate organizational documents which verify the existence of the entity and which verify the authority of one or more signatories to sign subscriptions on behalf of the entity.

The Company reserves the right to request such further information as is necessary to verify the identity of an applicant. In the event of delay or failure by the applicant to produce any information required for verification purposes, the Company may refuse to accept the application and the subscription moneys relating thereto.

In order to subscribe for Shares, subscribers must complete and sign the Share Application Form included in the Subscription Documents which accompany this Offering Memorandum, and indicate the EUR amount of Shares that are being purchased and mail them

-11-

FOIA Confidential Treatment Requested                          FGG00122620
by Fairfield Greenwich Limited

FGGSAC0016582

to Fairfield Sigma Limited, c/o Citco Fund Services (Europe) B.V., Telestone 8 – Teleport, Naritaweg 165, 1043 BW Amsterdam, P.O. Box 7241 1007 JE Amsterdam, The Netherlands; fax no.: (31) 20 572-2476.

Subscription funds of investors purchasing Shares should be wire transferred to the Company's account at:

| | |
|---|---|
| Bank: | De Nederlandsche Bank |
| | Westeinde 1 |
| | Postbus 98 |
| | 1000 AB Amsterdam |
| Swift No: | FLOR NL 2A |
| For Account | |
| and under swift to: | Citco Bank Nederland NV |
| | P.O. Box 7241 |
| | Amsterdam, The Netherlands |
| Account No.: | Redacted 6.630 |
| Reference: | Fairfield Sigma Limited |
| Account No. | Redacted 3.883 |
| By Order of: | Name of Subscriber |

In the event a subscriber cannot wire transfer funds, a check payable to "Fairfield Sigma Limited--Escrow Account" in EUR denominated funds for the full purchase price of the Shares should be mailed to the Company with the Share Application Form.

## FEES, COMPENSATION AND EXPENSES

Start-up Expenses

The expenses incident to this offering (including legal fees), will not exceed U.S. $5,000 and will be paid by the Company. The Company intends to amortize these expenses over a period of 60 months commencing November 1999. Generally accepted accounting principles ("GAAP") require that organizational costs be treated as an expense when incurred. The Investment Manager believes, based upon the advice of the Company's independent auditors, that the effect on the Company's results from this departure from GAAP will not be material. The Investment Manager may charge a ratable portion of the unamortized organization costs to any shareholder who redeems Shares before the 60-month amortization period has elapsed.

-12-

FOIA Confidential Treatment Requested
by Fairfield Greenwich Limited

FGG00122621

FGGSAC0016583

Expenses

The Company will bear all of the continuing offering costs and all other expenses incurred in the operation of the Company, if any, including the ordinary and necessary expenses directly related to its investment and trading activities (including the costs incident to its leverages and the currency trading hedging account), all administration fees and all legal and auditing fees, including any legal and auditing fees that relate to extraordinary circumstances, such as tax examinations or litigation involving the Company. Transactional costs will be included in FSL's compensation of profit and loss and will, accordingly, be indirectly borne by the Company.

Performance and Management Fees

The Manager does not receive, either a performance or management fee from the Company. The Manager does receive a quarterly performance fee from FSL in an amount equal to 20% of the amount of any new high net profits i.e., new appreciation, earned by FSL.

Salaries and Other Personnel Expenses

Mr. Noel will not be compensated for serving as a director of the Company, but he and representatives of the Manager will be reimbursed by the Company for any out-of-pocket expenses they may incur in attending meetings of the Board of Directors or of shareholders. The directors not affiliated with the Management, of which there are two at the present time, will each be paid a fee of $5,000 per annum by the Company together with his out-of-pocket expenses in attending meetings of the Board of Directors or of shareholders.

## ADMINISTRATOR, REGISTRAR AND TRANSFER AGENT

Pursuant to an agreement between Citco, Fund Services (Europe) BV ("Citco") and the Company, Citco serves as the administrator for the Company, under the overall direction of the Company's Board of Directors. As administrator, Citco has the responsibility for furnishing the day to day administrative services which the Company may require, such as: accounting services; maintaining the Company's books and records; preparation of reports and accounts; calculation of Net Asset Value and fees; communications with shareholders and/or governmental bodies; paying the Company's expenses; providing suitable facilities and procedures for handling dividends and distributions (if any) and the orderly liquidation and dissolution of the Company, if required.

To the extent that Citco relies on information supplied by the Company, any investee fund of the Company or any brokers engaged by the Company, in connection with making any of the aforementioned calculations, Citco's liability for the accuracy of such calculations is limited

-13-

FOIA Confidential Treatment Requested
by Fairfield Greenwich Limited

FGG00122622

FGGSAC0016584

to the accuracy of its computations.  Citco shall not be liable for the accuracy of the underlying data provided to it.

## RISK FACTORS

Among the substantial risk factors involved in a purchase of Shares in the Company are the following:

1.    <u>Trading Risks</u>.  Substantial risks are involved in the trading of equity securities and options.  Market movements can be volatile and are difficult to predict.  U.S. Government activities, particularly those of the Federal Reserve Board, can have a profound effect on interest rates which, in turn, substantially affect securities and options prices as well as the liquidity of such markets.  Politics, recession, inflation, employment levels, trade policies, international events, war and other unforeseen events can also have significant impact upon the prices of securities.  A variety of possible actions by various government agencies also can inhibit the profitability of the Company's business or can result in losses.  Such events, which can result in huge market movements and volatile market conditions, create the risk of catastrophic losses for the Company.

Various techniques are employed to attempt to reduce a portion of the risks inherent in the trading strategy utilized on behalf of FSL and the Company.  The ability to achieve the desired effect through a particular technique is dependent upon many factors, including the liquidity of the market at the desired time of execution.  Thus, substantial risk remains that the techniques employed on behalf of FSL and the Company cannot always be implemented or effective in reducing losses.  At various times, the markets for exchange-listed equity securities and options and/or other securities may be "thin" or illiquid, making purchases or sales of securities or options at desired prices or in desired quantities difficult or impossible.  In addition, options prices are extremely volatile.  The volume and volatility of trading in the market depend in part on general public interest and public opinion concerning economic conditions as well as the liquidity provided by market-makers and specialists.  The liquidity of the market may also be affected by a halt in trading on a particular securities exchange or exchanges.  Illiquid markets may make it difficult to get an order executed at a desired price.

2.    <u>Securities Trading is Speculative</u>.  Options, and sometimes, stock prices, are highly volatile.  Price movements are influenced by, among other things, changing supply and demand relationships, governmental and trade programs and policies, and national and international political and economic events.  The value of an option depends largely upon the likelihood of favorable price movements in the underlying interest in relation to the exercise price during the life of the option.

-14-

FOIA Confidential Treatment Requested                                    FGG00122623
by Fairfield Greenwich Limited

FGGSAC0016585

3.    <u>Trading Strategies May Not be Successful</u>.    There can be no assurance that any trading method employed on behalf of FSL and the Company will produce profitable results, and the past performance of FSL are not necessarily indicative of the future profitability of the Company.

Profitable trading is often dependent on anticipating trends or trading patterns.   In addition, markets experiencing random price fluctuations, rather than defined trends or patterns, may generate a series of losing trades.   There have been periods in the past when the markets have been subject to limited and ill-defined price movements, and such periods may recur.   Any factor which may lessen major price trends (such as governmental controls affecting the markets) may reduce the prospect for future trading profitability.   Any factor which would make it difficult to execute trades, such as reduced liquidity or extreme market developments resulting in prices moving the maximum amount allowed in a single day, could also be detrimental to profits or cause losses.   Increases in margin levels on futures contracts or securities (including options) may occur in the future.   Such increased margin and other potential regulatory changes may adversely impact the trading strategies.   No assurance can be given that the trading techniques and strategies employed on behalf of FSL and the Company will be profitable in the future.

4.    <u>Dependence Upon Principals and Bernard L. Madoff Investment Securities</u>.   The services of Messrs. Tucker and Noel and Bernard L. Madoff Investment Securities are essential to the profitability of an investment in the Company.   If any of their services were no longer available, their absence would have an adverse impact upon an investment in the Company.   The Manager as manager of FSL, has delegated all investment management duties to Bernard L. Madoff Investment Securities.   As a result, the Company is subject to the judgment, decisions and trading opinions of Bernard L. Madoff Investment Securities and has no control over the decisions implemented by Bernard L. Madoff Investment Securities.

5.    <u>Conflicts of Interest</u>.    The Manager's Directors and Bernard L. Madoff Investment Securities and its principals, are presently affiliated with and may in the future form and manage other investment entities (including, without limitation, investment partnerships, investment companies and mutual funds) with substantially the same or different objectives as those of the Company.   They may also make investments in securities for their own accounts.   In addition, the Manager functions as the investment manager for unregistered foreign investment companies and as the commodity pool operator for entities in addition to the Company. Such activities could detract from the time that the Manager and its principals, and Bernard L. Madoff Investment Securities and its principals allocate to the affairs of FSL and the Company.

6.    <u>Conflicts of Interest-Transaction Executions</u>.    Bernard L. Madoff Investment Securities, in its role as a market-maker, trades with FSL as principal.    Bernard L. Madoff Investment Securities also makes the investment decisions on behalf of FSL through a grant of discretionary authority over FSL's account at Bernard L. Madoff Investment Securities.   As a result of this discretionary authority, Bernard L. Madoff Investment Securities has the ability to

-15-

FOIA Confidential Treatment Requested                                    FGG00122624
by Fairfield Greenwich Limited

FGGSAC0016586

use FSL's assets to enhance its market making function and no arm's length relationship exists between the Company and Bernard L. Madoff Investment Securities in the execution of stock and options transactions for FSL's account.   In addition, Bernard L. Madoff Investment Securities is usually, if not always, the contra-party in stock and over-the-counter options transactions with FSL.

7.    _Competition_.  The securities industry is highly competitive in the United States. Competition from other persons or entities involved in activities similar to those of FSL can restrict the ability of FSL to acquire positions at the prices deemed most beneficial to its overall trading strategies.  Many such competing persons or entities are better capitalized and have more experience in trading than FSL.  Moreover, the widespread use of computer-assisted trading systems for trading strategies can alter trading patterns or affect execution of trades to the detriment of FSL.

8.    _Regulated Industries_.  The securities industry is highly regulated.  Neither FSL nor the Company will be directly subject to regulation by the SEC, national securities exchanges, or the Federal Reserve Board.  However, the SEC regularly reviews the practices and procedures of the securities industry and the marketplace in general, and from time to time revise rules and regulations pertaining thereto.  The exchanges engage in similar reviews and at times revise their rules.  There can be no assurance whatsoever that any rules and regulations promulgated by the SEC, the Federal Reserve Board, the CFTC or the various securities exchanges or statutory amendments to the Securities Exchange Act of 1934 will not adversely impact the Company.

9.    _Over-the-Counter Options Transactions_.   A portion of the options transactions effected on behalf of FSL utilizes the over-the-counter market for their execution.   Trading equity and index options in the over-the-counter market is subject to contra-party credit risk and is without the protections afforded by transactions effected through the Options Clearing Corporation, a registered clearing facility.

10.    _Option Buyer's Risk of Loss of Entire Investment_.  An out of the money option is a wasting asset which becomes worthless when the option expires.  As the remaining life of an option shortens with the passage of time, its value is reduced until it reaches zero upon expiration.  This means that the option buyer who neither sells it in the secondary market nor exercises it prior to expiration will lose his entire investment in the option.

11.    _Arbitrage Transactions_.  Among the many risks of arbitrage transactions are that two or more buy or sell orders may not be able to be executed simultaneously at the desired prices, resulting in a loss being incurred on both sides of a multiple trade arbitrage transaction. Also, the transaction costs of arbitrage transactions can be especially significant because separate costs are incurred for each component of the combination.  Consequently, a substantial favorable price movement may be required before a profit can be realized.

-16-

FOIA Confidential Treatment Requested                                        FGG00122625
by Fairfield Greenwich Limited

FGGSAC0016587

12. <u>Assignment of Puts or Calls</u>.  Substantial losses may result under certain circumstances if a hedged position becomes a long or short position due to the assignment of the short put or short call portion of the hedged position.  Under normal market conditions, the remaining portion of the previously hedged portion may be liquidated or otherwise adjusted to limit exposure to price changes.  Suspension of trading of the option class or underlying securities followed by a price gap at the reopening of trading might result in substantial losses. The same would be true given an illiquid market such as that of October 1987.

13. <u>Prohibition of Exercise Rights</u>.  The options markets have the authority to prohibit the exercise of particular options.  If a prohibition on exercise is imposed at a time when trading in the option has also been halted, holders and writers of that option will be locked into their positions until one of the two restrictions has been lifted.

14. <u>Limitation on Liability of the Manager</u>.  Pursuant to the Investment Management Agreement between the Company and the Manager, the Manager is not responsible for losses arising out of an error of judgment or simple negligence, but is only responsible for losses resulting from willful misfeasance, bad faith, gross negligence or a reckless disregard of its duties and obligations.  Accordingly, Shareholder losses will not be recoverable from the Manager if they resulted from an erroneous decision made in good faith or simple negligence.  In order for a Shareholder to obtain a recovery from the Manager, the Shareholder will have to demonstrate a high degree of misconduct on the part of the Manager.  Such a high burden of proof may serve to effectively insulate the Manager from liability in the event a Shareholder suffers a loss in his investment in the Company.

15. <u>Exchange Rate Risk</u>.  The Company will maintain its assets in U.S. dollars.  The Company has established an account which will effect transactions in the currency market in an effort to hedge against such risks as they pertain to the Euro, which is the functional currency of the Company.  There can be no assurance that such transactions will be successful in protecting the shareholders against this exchange rate risk.

16. <u>Forward Trading in Currencies</u>.  The Company will engage in a substantial amount of trading in forward contracts on currencies.  Forward contracts are not traded on exchanges; rather, banks and dealers act as principals in these markets.  Forward trading is substantially unregulated; there is no limitation on the daily price movements of forward contracts.  The principals who deal in the forward markets are not required to continue to make markets in the forward contracts they trade.  There have been periods during which certain participants in the forward markets have refused to quote prices for forward contracts or have quoted prices with an unusually wide spread between the price at which they were prepared to buy and that at which they were prepared to sell.  The Company will trade forward contracts through a limited number of entities, and as a result liquidity problems might be greater in the Company's forward trades than they would be were trades to be placed through a larger number of forward market participants.  The imposition of credit controls by governmental authorities

-17-

FOIA Confidential Treatment Requested                                           FGG00122626
by Fairfield Greenwich Limited

FGGSAC0016588

might also limit such forward trading to less than that which the manager of the account would otherwise recommend, to the possible detriment of the Company.

In respect of its forward trading, the Company is subject to the risk of the inability or refusal to perform with respect to such contracts on the part of the principals or agents with or through which the Company trades. Any such failure or refusal, whether due to insolvency, bankruptcy or other causes, could subject the Company to substantial losses. The Company will not be excused from the performance of any forward contracts into which it has entered due to the default of third parties in respect of other forward trades which in the Company's trading strategy were to have substantially offset such contracts.

Currency forwards prices are volatile. Price movements of these contracts are influenced by, among other things: government trade, fiscal, monetary and exchange control programs and policies; national and international political and economic events; and changes in interest rates. Governments from time to time intervene in the currency markets with the specific intent of influencing prices directly.

17. <u>Use of Leverage.</u>  The Company will finance a portion of the purchase price of the FSL shares through a line of credit from Citco Bank, which also manages the Company's currency hedging account. Citco Bank will receive a pledge of the assets underlying the Shares as collateral for amounts borrowed under the line of credit and the Company's obligations in the currency trading account. The use of leverage increases the volatility of the Company's performance and makes it possible for the Company to suffer losses on any open position in excess of the assets allocated to such position. In the event the Company is unable to pay all or a portion of its obligations to Citco Bank, all or a portion of the assets underlying the Shares (i.e., the FSL shares) may be forfeited..

## POTENTIAL CONFLICTS OF INTEREST

The Manager, its principals, and Bernard L. Madoff Investment Securities and its principals, may form and manage other investment entities (including without limitation investment partnerships, investment companies, mutual funds and offshore funds) in the future with substantially the same or different objectives as those of the Company. They may also make investments in securities for their own accounts. Such activities could detract from the time they allocate to the affairs of the Company and Bernard L. Madoff Investment Securities, as the case may be. Similarly, Messrs. Naess and Schmid, the non-affiliated directors, have other business interests and will not devote their entire time to the Company's affairs.

-18-

189633.1                                                                                   11/19/99

FOIA Confidential Treatment Requested                              FGG00122627
by Fairfield Greenwich Limited

FGGSAC0016589

**PRIOR TRADING RESULTS**

The Company allocates its assets to the purchase of shares in FSL, which in turn allocates its assets to an account at Bernard L. Madoff Investment Securities (not affiliated with the Company's Directors or FGL) which employs a strategy described as "split strike conversion". This strategy has defined risk and profit parameters which may be ascertained when the position is established. The transactions for a typical position would be (i) the purchase of a group or basket of equity securities that will highly correlate to the S&P 100 Index (the "OEX"), (ii) the sale of out of the money OEX call options in an equivalent contract value dollar amount to the basket of equity securities, and (iii) the purchase of an equivalent number of out of the money OEX put options. A call option is out of the money when its strike price is greater than the current price of the stock; a put option is out of the money when the strike price is lower than the current price of the stock. The basket typically consists of approximately 35 stocks in the S&P 100 Index. Sentry issued its shares at $200 per share. As of September 30, 1999, Net Asset Value per Share was U.S.$635.78 (subject to audit).

-19-

FOIA Confidential Treatment Requested                                    FGG00122628
by Fairfield Greenwich Limited

FGGSAC0016590

**Composite Capsule Performance Summary**

Percentage Rate of Return

|       | 1999 | 1998 | 1997 | 1996 | 1995 | 1994 | 1993 | 1992 | 1991 | 1990 |
|-------|------|------|------|------|------|------|------|------|------|------|
| Jan.  | +2.06% | +0.91% | +2.45% | +1.49% | +0.92% | +2.18% | 0.00% | +0.49% | +3.08% |      |
| Feb.  | +0.18% | +1.29% | +0.73% | +0.73% | +0.76% | -0.36% | +1.93% | +2.79% | +1.46% |      |
| Mar.  | +2.29% | +1.75% | +0.86% | +1.23% | +0.84% | +1.52% | +1.86% | +1.01% | +0.59% |      |
| Apr.  | +0.36% | +0.42% | +1.17% | +0.64% | +1.69% | +1.82% | +0.06% | +2.86% | +1.39% |      |
| May.  | +1.51% | +1.76% | +0.63% | +1.41% | +1.72% | +0.51% | +1.72% | -0.19% | +1.88% |      |
| Jun.  | +1.76% | +1.28% | +1.34% | +0.22% | +0.50% | +0.29% | +0.86% | +1.29% | +0.37% |      |
| Jul.  | +0.43% | +0.85% | +0.75% | +1.92% | +1.08% | +1.78% | +0.09% | 0.00% | +2.04% |      |
| Aug.  | +0.94% | +0.28% | +0.35% | -0.16% |      | +0.42% | +1.78% | +0.92% | +1.07% |      |
| Sept. | +0.73% | +1.04% | +2.39% | +1.22% | +1.70% | +0.82% | +0.35% | +0.40% | +0.80% |      |
| Oct.  |      | +1.93% | +0.56% | +1.10% | +1.60% | +1.88% | +1.77% | +1.40% | +2.82% |      |
| Nov.  |      | +0.85% | +1.56% | +1.57% | +0.51% | -0.55% | +0.26% | +1.42% | +0.08% |      |
| Dec.  |      | +0.33% | +0.42% | +0.48% | +1.10% | +0.66% | +0.45% | +1.43% | +1.63% | +2.84 |
| Year  | +10.71% | +13.42% | +14.00% | +12.97% | +12.96% | +11.49% | +11.66% | +14.66% | +18.57% | +2.84 |

Current Net Asset Value:     $2,281,017,577
Worst Monthly Average Drawdown: -0.55% (11/94)
Worst Peak-to-Valley Drawdown: -0.55% (11/94)
*Annual rate of return figures are calculated by applying the monthly rate of return figures to the beginning net
 asset value for the year on a compounded basis, and not by adding or averaging the monthly rates of return.
**"Drawdown" means losses experienced over a specified period of time.

## DESCRIPTION OF SHARES

The Company is authorized to issue up to 5,000,000 shares of common stock, with a par value of .01 EUR each (the "Shares"). The Company has an authorized share capital of 50,000 EUR. The Shares will be issued in book entry form, unless delivery of the Shares in registered form is requested. Shares will not be issued in bearer form. Each Share, when issued, will be fully paid and nonassessable.

Holders of Shares are entitled to one vote per Share and will participate on a pro rata basis in the assets of the Company on liquidation and in dividends and other distributions as declared.

## DIVIDEND POLICY

Since the business objective of the Company is directed toward achieving capital appreciation, it is anticipated that the Company will not declare any dividends or make any

189633.1                                                                                      11/19/99

FOIA Confidential Treatment Requested                                    FGG00122629
by Fairfield Greenwich Limited

FGGSAC0016591

distributions to its shareholders.  Subject to the foregoing and to applicable law, the Company's Board of Directors will have sole discretion in determining the amount and frequency of dividend distributions, if any.

## TRANSFERS, REDEMPTIONS AND TERMINATION

<u>Transfers</u>

NO SALE OR TRANSFER OF SHARES WILL BE PERMITTED WITHOUT THE COMPANY'S CONSENT; HOWEVER, SHARES MAY BE REDEEMED AS OF THE LAST DAY OF EACH MONTH OF EACH YEAR.

Any sale or transfer of a shareholder's entire interest in any Shares or any transfer of Shares by operation of law must be submitted to the Company for consent and will not be effective until such consent is given by the Company.  Any other dealing with Shares by way of assignment, pledge, mortgage or otherwise is prohibited unless consented to by the Company and any attempt to do so without first obtaining the Company's consent, which may be withheld in the sole and exclusive discretion of the Company, will constitute grounds for compulsory redemption of the Shares concerned as of the next permissible redemption date (as described below) and the imposition of a processing charge of 2% of the Net Asset Value with respect to such redemption. Any application to record a transfer of Shares, including an application to record a transfer by operation of law, if not approved by the Company within 30 days, also will be treated as an application to redeem the Shares in question as of the next permissible redemption date and will be subject to a processing charge per share of 2% of the Net Asset Value per Share.

THE DISPOSITION OF SHARES TO U.S. PERSONS (AS DEFINED UNDER "OFFERING OF SHARES") WITHOUT THE PRIOR WRITTEN APPROVAL OF THE COMPANY IS EXPRESSLY PROHIBITED, AND THE COMPANY SHALL HAVE THE RIGHT COMPULSORILY AND IMMEDIATELY TO REDEEM ANY SHARES HELD FOR ANY REASON BY U.S. PERSONS.

<u>Redemptions at the Option of the Shareholders</u>

A shareholder may cause part or all of his Shares to be redeemed as of the last day of each month of each year, provided that the Company shall be in receipt of written notice of redemption for at least fifteen (15) business days (i.e., any day not a Saturday or a Sunday, that is not a public holiday or a day on which banks are generally authorized or obliged by law or regulation to close in the Netherlands or the United States of America) prior to such redemption date.  In the Company's discretion, a shareholder requesting redemption of part of his Shares may be required to redeem all of his Shares unless such shareholder notifies the Company to cancel the redemption.

-21-

FOIA Confidential Treatment Requested
by Fairfield Greenwich Limited

FGG00122630

FGGSAC0016592

Compulsory Redemption

The Company reserves the right to call all or a part of a shareholder's Shares for redemption at any time for any reason or no reason. Except as set forth above, no processing charge will be imposed with respect to any Shares so compulsorily redeemed.

Redemptions - General Information

Redemptions will be at the Net Asset Value per Share calculated as of the last day of the month of redemption, subject to any applicable processing charge, as described above. If notice of intent voluntarily to redeem is not received by the Company within the prescribed period of time, then in the Company's discretion, the redemption date may be deferred to the end of the next following permissible redemption period, unless the shareholder notifies the Company to cancel the redemption. Except in the case of extraordinary circumstances, such as an inability to liquidate existing positions, or the default or delay in payments due the Company from brokers, banks or other persons, payment on redemptions will be made within 30 business days after the redemption date. The Company will not pay interest to the redeeming shareholder on any payment.

Shareholders bear the risk of any decline in Net Asset Value from the date notice of intent to redeem is given until the redemption date. In addition, the Company reserves the right temporarily to suspend any redemption if the effect of substantial redemptions would seriously impair the Company's ability to operate. Requests for redemption can be made by use of the form included in the Subscription Documents which accompany this Offering Memorandum.

Termination

The shareholders may, by a majority vote, elect to wind up and dissolve the Company at any time. If the Company's Board of Directors determines that it would be in the best interests of the Company to wind up and dissolve the Company at any time, it will recommend to the shareholders that they vote to do so, and will submit a plan of dissolution for approval by the shareholders.

## TAX CONSIDERATIONS AND EXCHANGE CONTROL

Under current legislation in the British Virgin Islands (the "BVI"), there should be no income tax, capital gains or withholding tax, estate duty or inheritance tax payable by the Company or its shareholders who are not residents or citizens of the BVI, in respect of their Shares.

-22-

FOIA Confidential Treatment Requested
by Fairfield Greenwich Limited

FGG00122631

FGGSAC0016593

There are no exchange control restrictions in the BVI. Accordingly, the Company will be free to acquire, to hold and to sell any foreign currency and securities without restriction.

The Company's gains from its trading in stocks, options or other investments should not be subject to United States federal income, branch or withholding taxes because the Company expects that it, will not be engaged (or treated as engaged) in a "trade or business" in the United States, or treated as a personal holding company, for United States federal income tax purposes. Any dividend income received by the Company from U.S. corporations generally will be subject to United States federal withholding taxes. Although substantially all of the interest earned by the Company from sources within the United States is expected to be of the type which will not be subject to United States federal income, branch or withholding taxes, the Company may earn interest from time to time that could be subject to United States federal income, branch or withholding taxes (although it is not expected that the amount of such taxes would be material). In addition, with respect to Shares held by non-U.S. persons who are not engaged in a "trade or business" in the United States (as defined under the Internal Revenue Code ["Code"]), such persons should not be subject to United States federal income, branch or withholding taxes (i) on dividends paid to them by the Company and (ii) on the redemption of their Shares by the Company. The Company expects that it will not be subject to state and local taxes in the United States on its income or capital. Because of the absence of full guidance under state and local law, however, this result is not entirely clear. The conclusions in this paragraph are based on the Code and existing laws, judicial decisions and administrative regulations, rulings and practice in the United States, all of which are subject to change.

Prospective subscribers should consult their professional advisors on the possible tax consequences of subscribing for, buying, holding, selling, transferring or redeeming Shares under the laws of their country of citizenship, residence or domicile.

## LEGAL MATTERS

Legal matters in connection with this offering have been passed upon for the Company in the United States by Andrew E. Goldstein, Esq., 909 Third Avenue, 18th Floor, New York, New York 10022.

-23-

189633.1                                                                                                          11/19/99

FOIA Confidential Treatment Requested                                    FGG00122632
by Fairfield Greenwich Limited

FGGSAC0016594

## MISCELLANEOUS

Reports and Financial Statements

The Company's fiscal year will end on December 31, except that the Company's final fiscal year will terminate on the date the Company is placed in liquidation. The Company will keep its books on an accrual basis. Audited financial statements of the Company will be mailed to shareholders at their registered addresses, normally within 120 days after year-end. At the same time, each shareholder shall be furnished with an annual report of the Company, which will include the Net Asset Value of the Company and the Net Asset Value per Share at the end of the year, and such other information as the Company, in its discretion, determines to be necessary or appropriate. Shareholders also will receive unaudited quarterly letters with respect to the Company's financial performance.

Documents Available for Inspection

The Company's books of account and all material documents, including copies of the Company's Memorandum of Association and Articles of Association, the Company's Agreement with the Bank and with the Administrator, Registrar and Transfer Agent shall each by kept at the Company's business office in the British Virgin Islands and each shareholder (or any duly constituted designee of a shareholder) shall have, at all times during reasonable business hours, free access to such documents.

-24-

FOIA Confidential Treatment Requested
by Fairfield Greenwich Limited

FGG00122633

FGGSAC0016595

APPENDIX A

FINANCIAL STATEMENTS
OF FAIRFIELD SENTRY LIMITED

11/04/99 10:21am

FOIA Confidential Treatment Requested
by Fairfield Greenwich Limited

FGG00122634

FGGSAC0016596

APPENDIX B

SUBSCRIPTION DOCUMENTS

189633.1                                                                                    11/04/99 10:21am

FOIA Confidential Treatment Requested                                    FGG00122635
by Fairfield Greenwich Limited

FGGSAC0016597

## FAIRFIELD SIGMA LIMITED
## SHARE APPLICATION FORM

Instructions

A. All subscribers. Complete pages A-2 and A-3 by (i) filling in the EUR amount of the Shares subscribed to, and (ii) indicating whether the Shares are to be issued in registered form or in the name of a nominee, and page A-6 by providing the requested information.

B. Subscriptions by Individuals. If a subscription is by an individual (including more than one), the "Signature Page for Subscription by an Individual" (page A-4) must be completed.

C. Subscriptions by Entities. If a subscription is by an entity (trust, partnership, corporation, bank or broker-dealer), the "Signature Page for Subscription by an Entity" (page A-5 must be completed.

      D. Items to be delivered by All Subscribers.

    (i) Completed and signed Share Application Form and corresponding signature page.

    (ii) Wire transfer funds for the full amount of the subscription in Euros only to the Company's account at:

| | |
|---|---|
| Bank: | De Nederlandsche Bank |
| | Westeinde 1 |
| | Postbus 98 |
| | 1000 AB Amsterdam |
| Swift No: | FLOR NL 2A |
| For Account | |
| and under swift to: | Citco Bank Nederland NV |
| | P.O. Box 7241 |
| | Amsterdam, The Netherlands |
| Account No.: | Redacted 6.630 |
| Reference: | Fairfield Sigma Limited |
| Account No. | Redacted 3.883 |
| By Order of: | Name of Subscriber |

    (iii) Subscription documents should be delivered or mailed to Fairfield Sigma Limited, c/o Citco Fund Services (Europe) B.V., Telestone 8 – Teleport, Naritaweg 165, 1043 BW Amsterdam, The Netherlands; fax no.: (31) 20-572-2476. Subscription funds must be received in the Company's account at least two (2) business days prior to month end.

A-1

FOIA Confidential Treatment Requested
by Fairfield Greenwich Limited

FGG00122636

FGGSAC0016598

## SHARE APPLICATION FORM

To:   Fairfield Sigma Limited
c/o Citco Fund Services (Europe) B.V.
Telestone 8 – Teleport
Naritaweg 165
1043 BW Amsterdam
P.O. Box 7241
1007 JE Amsterdam
The Netherlands
Telephone no.: (31) 20-572-2114
Fax no.: (31) 20-572-2476

Please fill in the following information:

The undersigned hereby irrevocably subscribes for and agrees to purchase _____ EUR of the Shares (the "Shares") of Fairfield Sigma Limited (the "Company") upon the terms of the Information Memorandum dated October 29, 1999, as amended, which I/we have received and read. I/We acknowledge that I am/we are able to afford a shareholding in a speculative venture having the risks and objectives of the Company

I/We declare that the Shares hereby subscribed for are not being (i) acquired directly or indirectly by, and (ii) will not be transferred directly or indirectly to, (A) a natural person who is a citizen, national or resident of, or an institution or other entity organized, created, formed, chartered or resident in, the United States of America ("U.S. Person"), (B) an entity as to which any person or entity described in (A) above is, directly or indirectly, a beneficiary, fiduciary, grantor or decedent, or (C) institutions or other entities owned, in whole or in part, directly or indirectly, by the persons or entities described in (A) or (B) above.

If the subscriber is a bank or broker-dealer, the subscriber hereby represents and warrants, when it is acquiring Shares on behalf of clients for investment purposes, that such clients are not U.S. Persons, that it will notify the Company if it shall come to its knowledge that any such client is or has become a U.S. Person, that it will not at any time knowingly transfer or deliver the Shares or any part thereof or interest therein to a U.S. Person, and that it will not make any transfer thereof in the United States of America, its territories or possessions.

Related Professionals
(Subscriptions cannot be accepted if this section is not completed.)

(i) Please indicate, if applicable, the name of the person at Fairfield Greenwich Group with whom this subscription is associated.

Name:_____

Not Applicable:_____

(ii) Please indicate, if applicable, the name of the person  and/or entity who acts as an advisor with respect to this subscription.

A-2

189633.1                                                                                                11/04/99 10:21am

FOIA Confidential Treatment Requested                                          FGG00122637
by Fairfield Greenwich Limited

FGGSAC0016599

Name of Advisor:_____

Not Applicable:_____

I/We declare that I/we have a net worth of at least U.S. $1 Million, or its equivalent in the local currency of the undersigned, and hereby consent to being treated as a "professional investor" pursuant to the British Virgin Islands Mutual Funds Act.

Shares will be held in book entry form on behalf of the subscriber, following acceptance, by the Administrator, Citco Fund Services (Europe) B.V.

Shares Certificates may be issued in the name of the Shareholder or a Nominee. If this facility is required, please check this box ☐ and if nominee registration is required, fill in the name of the nominee:

_____

The undersigned hereby agrees that the assets underlying his/its Shares (the "Pledged Assets") shall be pledged as collateral to the entity extending credit to the Company in connection with the line of credit and the currency trading account described in the Information Memorandum (the "Pledgee"). The undersigned further agrees that such Pledgee may take any and all action with respect to the Pledged Assets, in the event the Company fails to pay any amounts owed to such Pledgee on account of the Shares, without notice, including, but not limited to ordering the sale of any of the Pledged Assets at any time that there is a default in the Company's obligations and applying the proceeds of such sale in payment of any debt owed by the Company, to such Pledgee on account of the Shares, and that any action taken by the Pledgee with respect to such Pledged Assets shall not be deemed a waiver as to any other action available to the Pledgee with respect to such obligations.

_____

The Subscriber hereby designates and appoints Interman Services Limited, through its authorized officers and directors, with full power of substitution, as its true and lawful Proxy and Attorney-in-Fact for the purpose of voting the shares herein subscribed for as said Proxy may determine on any and all matters which may arise at any annual or special meeting of shareholders and upon which such shares could be voted by shareholders present in person at such meeting. This Proxy may be revoked by the owner of record of the shares hereby subscribed for, either personally or by presentation of a subsequently executed proxy at any annual meeting or special meeting of shareholders, or by written notice to Citco Fund Services (Europe) B.V., Telestone 8 – Teleport, Naritaweg 165, 1043 BW Amsterdam, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands; fax no.: (31) 20 572-2476.

_____

A-3

FOIA Confidential Treatment Requested                                    FGG00122638
by Fairfield Greenwich Limited

FGGSAC0016600

Signature Page For Subscription by an INDIVIDUAL

SHARES TO BE REGISTERED AS FOLLOWS;

(Check One)

☐ INDIVIDUAL SUBSCRIBER      ☐ CO-SUBSCRIBERS
                              (Both signatures required below)

(Please print all information exactly as you wish it to appear on the Company's records.)

_____
(Name of Subscriber)

_____          _____
(Address)                                 (Telephone - Days)

_____          _____
(Country of Residence)                    (Telephone - Evenings)

_____
(Name of Co-Subscriber)

_____          _____
(Address)                                 (Telephone - Days)

_____          _____
(Country of Residence)                    (Telephone - Evenings)

                                          _____
                                          (Facsimile Transmission Number)
Dated _____

Signature(s) of Individual Subscriber(s) (Please print name below each signature):

                              _____

                              _____

                              _____

A-4

FOIA Confidential Treatment Requested                             FGG00122639
by Fairfield Greenwich Limited

                                                                  FGGSAC0016601

Signature Page For Subscription by an ENTITY

SHARES TO BE REGISTERED AS FOLLOWS:

ENTITY OWNERSHIP - Check form of organization

☐      CORPORATION -   Please include certified resolutions (or similar documents) authorizing signature.

☐      PARTNERSHIP -   Please include a copy of the partnership agreement (or similar document) authorizing signature.

☐   TRUST - Please include a copy of the trust agreement.

☐   BANK or BROKER-DEALER - See Page A-2

(Please print all information exactly as you wish it to appear on the Company's records.)

_____    _____
(Name of Subscriber)                 (Telephone - Days)

_____    _____
(Address)                      (Telephone - Evenings)

_____    _____
(Country of Formation)           (Facsimile Transmission Number)

The undersigned trustee, partner or officer warrants that he has full power and authority from all beneficiaries or partners or from the board of directors of the entity named below to sign this Share Application Form on behalf of the entity and that a purchase of Shares in Fairfield Sigma Limited is not prohibited by the governing documents of the entity.

Dated _____    Signature(s) of Entity Subscriber(s) (Please print name below each signature):

_____
(Name of Entity)

By: _____
Trustee, partner or authorized corporate officer)

_____
(Name and Title)

By: _____
(Trustee, partner or authorized corporate officer)

_____
(Name and Title)

A-5

189633.1                                               11/04/99 10:21am

FOIA Confidential Treatment Requested            FGG00122640
by Fairfield Greenwich Limited

FGGSAC0016602

## SUBSCRIPTION INFORMATION

Name and address for Share Registration:

| | | |
|---|---|---|
| Name | : | _____ |
| Address | : | _____ |
| City | : | _____ |
| Country | : | _____ |
| Telephone | : | _____ |
| Facsimile | : | _____ |

Post Address (if other than address of registration):

| | | |
|---|---|---|
| Name | : | _____ |
| Address | : | _____ |
| City | : | _____ |
| Country | : | _____ |
| Telephone | : | _____ |
| Facsimile | : | _____ |

Name and Address of Remitting Bank:

| | | |
|---|---|---|
| Name | : | _____ |
| Address | : | _____ |
| City | : | _____ |
| Country | : | _____ |
| Telephone | : | _____ |
| Facsimile | : | _____ |
| Account # | : | _____ |

Name and Address of Bank for transfers in case of redemptions
(if other than Name & Address of Remitting Bank):

| | | |
|---|---|---|
| Name | : | _____ |
| Address | : | _____ |
| City | : | _____ |
| Country | : | _____ |
| Telephone | : | _____ |
| Facsimile | : | _____ |
| Account # | : | _____ |

A-6

FOIA Confidential Treatment Requested                                    FGG00122641
by Fairfield Greenwich Limited

FGGSAC0016603

## FAIRFIELD SIGMA LIMITED

### REDEMPTION REQUEST FORM

INSTRUCTIONS

This form should be saved and may be used by a shareholder wishing to redeem Shares in the Company. Redeeming shareholders should complete and return this form, including page B-3.

FAIRFIELD SIGMA LIMITED
c/o Citco Fund Services (Europe) B.V.
Telestone 8 – Teleport
Naritaweg 165, 1043 BW Amsterdam
P.O. Box 7241                                    Telephone no.: (31)20 572-2114
1007 JE Amsterdam                                Fax no.: (31)20 572-2476
The Netherlands

_____, 19__

Dear Sirs:

  I hereby request redemption, as defined in and subject to all of the terms and conditions of the Information Memorandum dated October 29, 1999, as amended, of Fairfield Sigma Limited (the "Company"), of _____ Shares, representing [part/all] of my Shares in the Company. I understand that redemption will only be effective as of the close of business on the last day of any calendar month, upon at least fifteen (15) business days prior written notice. Except as otherwise provided in the Information Memorandum, payment of the redemption proceeds will be made within thirty (30) business days after the effective date of redemption.

  I hereby represent and warrant that (i) I am the owner of the Shares of the Company to which this Request relates, with full power and authority to request redemption of such Shares; and (ii) I am not a "U.S. Person" (as that term is defined in the Offering Memorandum). These Shares are not subject to any pledge or otherwise encumbered in any fashion. I acknowledge that my redemption will not be effective unless and until the release of the pledge of the assets underlying the Shares held by the entity extending credit to the Company under the line of credit described in the Information Memorandum. My signature has been guaranteed by a commercial bank acceptable to the Company.

B-1

189633.1                                    11/04/99 10:21am

FOIA Confidential Treatment Requested
by Fairfield Greenwich Limited                                    FGG00122642

FGGSAC0016604

REDEMPTION REQUEST FORM (continued)

SIGNATURES MUST BE IDENTICAL TO NAME(S) IN
WHICH SHARES ARE REGISTERED

Wire Transfer Instructions (to be completed by redeeming shareholder)

Bank Name and Address:

ABA No.:

Account Name:

Account No.:

_____        _____

PRINT:  Name of Registered                         Address
              Owner of Shares

ENTITY SHAREHOLDER (OR ASSIGNEE)        INDIVIDUAL SHAREHOLDER(S)
[PARTNERSHIP, CORPORATION OR TRUST]     (OR ASSIGNEE)

_____        _____

By:_____         _____
     [Signature or partner,                       [Signature(s) of
     authorized corporate officer                 individual(s) or
     or trustee]                                   assignee(s)]

_____        _____

  Name and Title                              [Signature(s) of individual(s)
                                               or assignee(s)]

By:_____
     [Signature or partner,
     authorized corporate officer
     or trustee]

_____

  Name and Title

                    Signature(s) guaranteed by:


            _____


B-2

FOIA Confidential Treatment Requested                         FGG00122643
by Fairfield Greenwich Limited

                                                        FGGSAC0016605

## REDEMPTION INFORMATION

Name and address for Share Registration:

Name        : _____
Address     : _____
City        : _____
Country     : _____
Telephone   : _____
Facsimile   : _____

Post Address (if other than address of registration):

Name        : _____
Address     : _____
City        : _____
Country     : _____
Telephone   : _____
Facsimile   : _____

Name and Address of Bank for transfer of redemptions:

Name        : _____
Address     : _____
City        : _____
Country     : _____
Telephone   : _____
Facsimile   : _____
Account #   : _____

B-3

FOIA Confidential Treatment Requested                            FGG00122644
by Fairfield Greenwich Limited

FGGSAC0016606