QUINN EMANUEL URQUHART & SULLIVAN, LLP
Marc L. Greenwald
Eric M. Kay
Daniel M. Kelly
51 Madison Avenue, 22nd Floor,
New York, New York 10010-1601
Tel:  (212) 849-7000
Fax:  (212) 849-7100

*Attorneys for Defendant Abu Dhabi Investment Authority*

Hearing Date: September 14, 2022
Opposition Date: July 11, 2022
Reply Date: August 10, 2022

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | **ORAL ARGUMENT REQUESTED** |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 11-02493 (CGM) |
| v. | **ABU DHABI INVESTMENT AUTHORITY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT** |
| ABU DHABI INVESTMENT AUTHORITY, | |
| Defendant. | |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT .................................................................................1

BACKGROUND ...................................................................................................3

    A.    Abu Dhabi Investment Authority.................................................3

    B.    The Complaint And Related Proceedings....................................3

ARGUMENT ......................................................................................................6

I.    AS AN INSTRUMENTALITY OF A FOREIGN STATE, ADIA IS IMMUNE FROM THIS COURT'S SUBJECT MATTER JURISDICTION......................................6

    A.    Any Action Against ADIA Is Subject to the Foreign Sovereign Immunities Act.........................................................................6

    B.    ADIA Has Satisfied Its Prima Facie Burden Under the FSIA...............................7

    C.    The Trustee Cannot Satisfy His Burden of Demonstrating an Exception to Immunity Under the FSIA .................................................8

        1.    The Commercial Activity Exception Does Not Apply ...............................9

II.    THIS COURT LACKS PERSONAL JURISDICTION OVER ADIA ...........................12

    A.    Jurisdictional Allegations................................................13

    B.    The Trustee Has Not Established General Jurisdiction .........................14

    C.    ADIA Has Not Consented to This Court's Jurisdiction .........................14

    D.    The Trustee Has Not Established Specific Jurisdiction.........................15

        1.    ADIA's Purported Knowledge of Sentry's Investment With BLMIS Does Not Establish Personal Jurisdiction ...................16

        2.    ADIA's Purported Wiring of Money To or From Sentry's Accounts Does Not Establish Personal Jurisdiction ....................18

        3.    ADIA's Purported Contacts with Sentry's Managers Do Not Establish Personal Jurisdiction ...............................19

    E.    The Exercise of Jurisdiction Over ADIA Would Not Comport With Due Process ..................................................................20

III.    THE TRUSTEE'S CLAIM IS PRE-EMPTED BY THE SAFE-HARBOR PROVISION OF 11 U.S.C. § 546(E) ..........................................................22

    A.    The Alleged Initial Transfers Were Made By, To, and for the Benefit Of Covered Entities Under Section 546(e) ....................................24

    B.    The Alleged Initial Transfers Were Made in Connection with Securities Contracts ................................................................25

    C.    The Alleged Initial Transfers Are Also Settlement Payments...............................27

D.     The Trustee Has Not Pleaded That ADIA Had Actual Knowledge of The
       Madoff Fraud .................................................................................................. 27

IV.    THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT ADIA
       RECEIVED BLMIS CUSTOMER PROPERTY ............................................. 29

V.     THE COMPLAINT FAILS TO CONTAIN A "SHORT AND PLAIN
       STATEMENT OF THE CLAIM" IN VIOLATION OF RULE 8(A)(2) ......................... 32

VI.    THE TRUSTEE'S OWN PLEADINGS ESTABLISH THAT ADIA ACTED IN
       GOOD FAITH ................................................................................................... 35

       A.     ADIA Gave Value When It Redeemed Its Shares ................................. 35

       B.     ADIA Acted in Good Faith and Could Not Have Discovered Madoff's
              Fraud Where So Many Others Failed .................................................... 37

CONCLUSION .......................................................................................................... 39

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc.*,
   328 F. Supp. 3d 329 (S.D.N.Y. 2018) ...................................................... 14

*Antares Aircraft, L.P. v. Fed. Republic of Nigeria*,
   948 F.2d 90 (2d Cir. 1991) ...................................................................... 11

*Antares Aircraft, L.P. v. Fed. Republic of Nigeria*,
   999 F.2d 33 (2d Cir. 1993) ...................................................................... 11

*Asahi Metal Indus. Co. v. Superior Court*,
   480 U.S. 102 (1987) ................................................................................ 20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................ 30

*Atherton v. F.D.I.C.*,
   519 U.S. 213 (1997) ................................................................................ 36

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................ 30

*Benton v. Cameco Corp.*,
   375 F.3d 1070 (10th Cir. 2004) .............................................................. 22

*BLI and Picard v. BNP Paribas S.A.*,
   594 B.R. 167 (Bankr. S.D.N.Y. 2018) ................................. 11, 12, 17, 18

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ................................................................................ 16

*Cargill Int'l S.A. v. M/T Pavel Dybenko*,
   991 F.2d 1012 (2d Cir. 1993) .................................................................... 7

*Constellation Energy Commodities Grp. v. Transfield ER Cape, Ltd.*,
   801 F. Supp. 2d 211 (S.D.N.Y. 2011) .................................................... 34

*D&R Global Selections, S.L. v. Bodega Olegario Falcon Pineiro*,
   29 N.Y.3d 292 (2017) ............................................................................. 15

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ................................................................................ 14

*David v. Bifani*,
   2007 WL 1216518 (D. Colo. Apr. 24, 2007) ......................................... 35

*Dole Food Co. v. Patrickson*,
  538 U.S. 468 (2003) ................................................................................................ 8

*Drexel Burnham Lambert Group Inc. v. Comm. of Receivers for Galadari*,
  12 F.3d 317 (2d Cir. 1993) .................................................................................... 10

*Fairfield Sentry Limited (In Liquidation) v. Abu Dhabi Investment Authority*,
  Adv. Proc. No. 11-01719 (BRL) (Bankr. S.D.N.Y. Apr. 15, 2011) ........................ 5

*Fairfield Sentry Ltd. v. Citco Global Custody NV*,
  Adv. Proc., No. 19-1122 (SMB) (Bankr. S.D.N.Y. Nov. 26, 2019) ...................... 31

*Fairfield Sentry Ltd. v. Migani*,
  [2014] UKPC 9 ........................................................................... 6, 15, 26, 36

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*,
  2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) .............................................. 15

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*,
  2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ...................................... 22, 25

*Federal Republic of Germany v. Philipp*,
  141 S. Ct. 703 (2021) .............................................................................................. 8

*Ferrante Equip. Co. v. Lasker-Goldman Corp.*,
  26 N.Y.2d 280 (1970) ............................................................................................ 17

*Filetech S.A. v. France Telecom S.A.*,
  157 F.3d 922 (2d Cir. 1998) .................................................................................... 8

*Friedman v. Bloomberg L.P.*,
  884 F.3d 83 (2d Cir. 2017) .................................................................................... 13

*Gater Assets, Ltd. v. AO Moldovagaz*,
  2 F.4th 42 (2d Cir. 2021) ...................................................................................... 12

*Hamilton v. Accu-Tek*,
  32 F. Supp. 2d 47 (E.D.N.Y. 1998) ...................................................................... 22

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*,
  530 U.S. 1 (2000) .................................................................................................. 22

*Hau Yin To v. HSBC Holdings PLC*,
  2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017) ............... 18

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984) .............................................................................................. 16

iv

*Hill v. HSBC Bank, plc*,
   207 F. Supp. 3d 333 (S.D.N.Y. 2016) ....................................................................... 19

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ................................................................................................. 13

*Jones v. Nat'l Comms. & Surveillance Networks*,
   266 F. App'x 31 (2d Cir. 2008) .............................................................................. 33

*Lame v. United States Trustee*,
   540 U.S. 526 (2004) ................................................................................................. 22

*Letom Mgmt. Inc. v. Centaur Gaming, LLC*,
   2017 WL 4877426 (S.D.N.Y. Oct. 27, 2017) ......................................................... 18

*Fairfield Sentry Limited (In Liquidation) v. Abu Dhabi Investment Authority*,
   Adv. Proc., No. 11-01719 (BRL) (Bankr. S.D.N.Y. Apr. 15, 2011) ......................... 5

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
   753 F.3d 395 (2d Cir. 2014) ...................................................................................... 8

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996) ................................................................................ 20, 21

*Murphy v. Korea Asset Mgmt. Corp.*,
   421 F. Supp. 2d 627 (S.D.N.Y. 2005) ...................................................................... 7

*NCUA Bd. v. Morgan Stanley & Co.*,
   2014 WL 1673351 (S.D.N.Y. Apr. 28, 2014) ......................................................... 34

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
   2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010) ........................................................ 34

*OBB Personenverkehr AG v. Sachs*,
   577 U.S. 27 (2015) ........................................................................................ 9, 11, 12

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
   712 F.3d 705, 723 (2d Cir. 2013) ........................................................................... 32

*Picard v. BNP Paribas S.A.*,
   594 B.R. 167 (Bankr. S.D.N.Y. 2018) ............................................................... 17, 18

*Picard v. Bureau of Labor Insurance*,
   480 B.R. 501 (Bankr. S.D.N.Y. 2012) .............................................................. 11, 17

*Picard v. Citibank N.A.*,
   12 F.4th 171 (2d Cir. 2021) ..................................................................................... 37

*Picard v. Fairfield Inv. Fund Ltd.*,
  2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ...................................................... *passim*

*Picard v. Fairfield Sentry Ltd.*,
  Adv. Pro., No. 09-01239 (BRL) (Bankr. S.D.N.Y. July 7, 2010) ............................................. 4

*Picard v. Ida Fishman Revocable Trust*,
  773 F.3d 411 (2d Cir. 2014) ................................................................... *passim*

*Picard v. Shapiro*,
  542 B.R. 100 (Bankr. S.D.N.Y. 2015) ................................................................... 30

*Porina v. Marward Shipping Co.*,
  2006 WL 2465819 (S.D.N.Y. Aug. 24, 2006) ................................................................... 20

*Quilvest Finance Ltd. v. Fairfield Sentry Ltd.*,
  Case Nos. HCVAP 2011/041-052 ................................................................... 36

*Republic of Argentina v. Weltover, Inc.*,
  504 U.S. 607 (1992) ................................................................... 10

*Robinson v. Gov't of Malaysia*,
  269 F.3d 133 (2d Cir. 2001) ................................................................... 7

*Rosenblatt v. Coutts & Co. AG*,
  2017 WL 3493245 (S.D.N.Y. Aug. 14, 2017) ................................................................... 18

*Russello v. United States*,
  464 U.S. 16 (1982) ................................................................... 36

*Salahuddin v. Cuomo*,
  861 F.2d 40 (2d Cir. 1988) ................................................................... 33

*Sapia v. Home Box Off., Inc.*,
  2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018) ................................................................... 32

*Saudi Arabia v. Nelson*,
  507 U.S. 349 (1993) ................................................................... 6, 8, 10

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  608 B.R. 181 (Bankr. S.D.N.Y. 2019) ................................................................... 35

*SIPC v. Bernard L. Madoff Inv. Secs. LLC*,
  2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) *("Cohmad")* ................................................................... 26, 27, 28, 29

*SIPC v. Bernard L. Madoff Inv. Secs. LLC*,
  476 B.R. 715 (S.D.N.Y. 2012) ................................................................... 24

*SPV Osus, Ltd. v. UBS AG*,
  882 F.3d 333 (2d Cir. 2018) ........................................................................ 16, 19

*SunLight Gen. Cap. LLC v. CJS Invs. Inc.*,
  114 A.D.3d 521 (1st Dep't 2014) ...................................................................... 17

*Taylor v. Sturgell*,
  553 U.S. 880 (2008) .......................................................................................... 25

*In re Terrorist Attacks on September 11*,
  714 F.3d 659 (2d Cir. 2013) ............................................................................. 13

*Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*,
  204 F.3d 384 (2d Cir. 2000) ................................................................................ 6

*In re Tribune Co. Fraudulent Conveyance Litig.*,
  10 F.4th 147 (2d Cir. 2021) *("Tribune II")* ..................................................... 26

*United States v. U.S. Telecom Long Distance, Inc.*,
  2018 WL 4566673 (D. Nev. Sept. 24, 2018) .................................................... 34

*Universal Trading & Inv. Co. v. Tymoshenko*,
  2012 WL 6186471 (S.D.N.Y. Dec. 12, 2012) .................................................. 19

*United States v. International Longshoremen's Association*,
  518 F. Supp. 2d 422 (E.D.N.Y. 2007) .............................................................. 35

*Vasquez v. Hong Kong and Shanghai Banking Corp.*,
  477 F. Supp. 3d 241 (S.D.N.Y. 2020) .............................................................. 19

*Virtual Countries, Inc. v. Republic of S. Africa*,
  300 F.3d 230 (2d Cir. 2002) ..................................................................... 7, 8, 10

*Walden v. Fiore*,
  571 U.S. 277 (2014) ....................................................................... 15, 16, 17, 18

*Zappia Middle E. Const. Co. Ltd. v. Emirate of Abu Dhabi*,
  215 F.3d 247 (2d Cir. 2000) ........................................................................... 7, 8

*Zim Integrated Shipping Servs. v. Bellwether Design Techs.*,
  2020 WL 5503557 (S.D.N.Y. Sept. 10, 2020) ................................................. 19

*Ziparo v. CSX Transp.*,
  15 F. 4th 153 (2d Cir. 2021) ............................................................................. 36

**Statutory Authorities**

11 U.S.C. § 101(22)(A) ...................................................................................... 24

11 U.S.C. § 101(22A)(A) ........................................................................... 25

11 U.S.C. § 101(53A)(B) ........................................................................... 24

11 U.S.C. § 546(e) .......................................... 22, 23, 24, 25, 26, 27, 28, 29

11 U.S.C. § 548(a)(1)(A) ..................................................................... 22, 23

11 U.S.C. § 548(a)(1)(B) ........................................................................... 36

11 U.S.C. § 550 ......................................................................................... 33

11 U.S.C. § 550(a) ................................................................................. 1, 33

11 U.S.C. § 550(b) ........................................................................... 3, 35, 36

11 U.S.C. § 551 ......................................................................................... 33

11 U.S.C. § 584(a) ..................................................................................... 33

11 U.S.C. § 741(7) .......................................................................... 26, 35, 36

15 U.S.C. § 78fff-2(c)(3) ........................................................................... 29

28 U.S.C. § 1603(a) ..................................................................................... 6

28 U.S.C. § 1604 ......................................................................................... 6

28 U.S.C. § 1605(a)(2) ...................................................................... 9, 10, 11

28 U.S.C. 1603(b) ....................................................................................... 7

N.Y. Civ. Prac. L. & R. § 302 ................................................................... 15

## Rules and Regulations

Fed. R. Bankr. P. 7004 .............................................................................. 15

Fed. R. Bankr. P. 7004(f) .......................................................................... 15

Fed. R. Bankr. P. 7012(b) ........................................................................... 1

Fed. R. Civ. P. 4 ....................................................................................... 15

Fed. R. Civ. P. 8(a)(2) .............................................................................. 32

Fed. R. Civ. P. 10(c) ................................................................................. 34

Fed. R. Civ. P. 12(b) ................................................................................... 1

Fed. R. Civ. P. 12(b)(1)..................................................................................... 1

Fed. R. Civ. P. 12(b)(2)................................................................................... 12

Fed. R. Civ. P. 12(b)(6)..................................................................................... 1

**Additional Authorities**

5 Collier on Bankruptcy ¶ 550.03 (16th ed. 2019) ...................................... 36

Wright & Miller, 5 Federal Practice and Procedure § 1281 (4th ed. 2021).................................. 32

Defendant Abu Dhabi Investment Authority ("ADIA"), respectfully submits this memorandum of law, and the accompanying declarations of Marc L. Greenwald and Mohamed Mubarak Rashed Saeed Al-Hajeri in support of its motion to dismiss the complaint filed by Plaintiff Irving H. Picard (the "Trustee"), as trustee for the liquidation estates of Bernard L. Madoff Investment Securities LLC ("BLMIS") and Bernard L. Madoff, individually, under the Securities Investor Protection Act (the "Complaint" or "Compl.") (Greenwald Decl. Ex. 1), pursuant to Federal Rules of Civil Procedure 12(b)(1), (b)(2), and (b)(6), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012(b).

## PRELIMINARY STATEMENT

This adversary proceeding is one of many such suits filed against investors in Fairfield Sentry Limited ("Sentry"), a British Virgin Islands investment fund. In the sole count of the Complaint, which has sat unamended for over a decade, the Trustee seeks to recover $300,000,000 that ADIA received in connection with its redemption of shares in Sentry between March 2005 and March 2006 (the "Redemption Payments") as subsequent transfers of alleged fraudulent conveyances from BLMIS to Sentry under 11 U.S.C. § 550(a).  Age has not improved the Trustee's Complaint.

As a threshold matter, ADIA is immune from suit pursuant to the Foreign Sovereign Immunities Act.  Despite recognizing ADIA's sovereign status, the Complaint fails to allege any facts supporting any exception to the FSIA, such as commercial activity causing a direct effect in the United States.  ADIA's immunity from suit demands prompt dismissal of this action.

Even if ADIA were not immune from suit under the FSIA (which it is), this Court would lack personal jurisdiction over it because the incidental United States contacts that the Trustee alleges are insufficient to satisfy the minimum contacts test required to haul ADIA before this Court and, moreover, do not arise out of the ADIA's receipt of the Redemption Payments as is

necessary to exercise specific jurisdiction.  And the exercise of personal jurisdiction would be unreasonable in any case.

Beyond those gating issues, the Trustee's claim still fails because ADIA's redemptions are protected from recapture under the Bankruptcy Code's safe-harbor provisions.  Section 546 of the Bankruptcy Code bars the Trustee from avoiding a settlement payment or similar transfer by, to, or for the benefit of a "financial participant" in connection with a securities contract. Here there can be no doubt that the Redemption Payments that the Trustee seeks to recover represent the prototypical transfers covered by the Bankruptcy Code's safe harbors.

Nor does the Complaint plausibly allege that the Redemption Payments made to ADIA contained BLMIS customer property, a prerequisite for the Trustee to recover the subsequent transfer that Sentry made to ADIA.  The Trustee seeks to recover several *billions* more dollars from alleged subsequent transferees of Sentry than it seeks to recover from Sentry itself, a fact that undermines the Trustee's contention that transferees from Sentry—such as ADIA—received BLMIS customer property.  And, adding to that infirmity, the Complaint fails to plead the avoidance or even the voidability of BLMIS's initial transfers to Sentry and instead seeks to "incorporate by reference" a sprawling complaint containing over a hundred exhibits filed in an entirely different action against different defendants that has since been superseded, rendering the version purportedly incorporated into the Complaint a nullity.  Such wholesale incorporation is not permitted by the Federal Rules of Civil Procedure and violates Rule 8(a)'s requirement that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Further, even if this Court permits the Trustee to incorporate by reference a lengthy complaint in a separate action against Sentry (an action that was settled, and not litigated to a

judgment), the Trustee's own pleadings here and in the complaint that he seeks to incorporate

establish that ADIA is entitled to avail itself of the good faith defense under 11 U.S.C. § 550(b).

ADIA took the Redemption Payments for value when it tendered shares in Sentry and it could

not have reasonably been expected to uncover the Madoff fraud when even the SEC had been

unable to do so.

## **BACKGROUND**

### A.      **Abu Dhabi Investment Authority**

Created in 1976, ADIA is an independent public institution established under the laws of

the Emirate of Abu Dhabi.  *See* Declaration of Mohamed Mubarak Rashed Saeed Al-Hajeri,

dated May 10, 2022, ¶ 2.  Such laws provide that ADIA is wholly owned by, and subject to the

supervision of, the Government of the Emirate of Abu Dhabi.  *Id.  See also* Compl. ¶ 22

("Defendant ADIA is a sovereign wealth fund that is wholly owned by the Emirate of Abu

Dhabi.").  Under Law (5) of 1981 of the Emirate of Abu Dhabi, ADIA is a separate and

independent entity of the Government of Abu Dhabi and enjoys the full legal capacity to act.  Al-

Hajeri Decl. ¶ 3.  ADIA's primary responsibility is to invest funds on behalf of the Government

of the Emirate of Abu Dhabi in order to make available the necessary financial resources to

secure and maintain the future welfare of the Emirate.  *Id.*  During the period of 1996 through

2002, ADIA invested a total of $200 million into Sentry, mostly in successive increments of $25

million.  *Id.* ¶ 5.  Between March 2005 and March 2006, ADIA redeemed its shares in Sentry for

$300 million.  *Id.* ¶ 6.

### B.      **The Complaint And Related Proceedings**

On August 8, 2011, the Trustee filed a one-count complaint seeking to "recover" the

Redemption Payments, comprising one payment of $200 million purportedly made on April 4,

2005, and one payment of $100 million on March 30, 2006.  Compl., Ex. E, Dkt. 1-5.  Both

payments were made more than two years before BLMIS entered liquidation in December 2008. Compl. ¶¶ 11-15.

The Complaint devotes most of its allegations to Madoff's Ponzi scheme and the transfers from BLMIS to Sentry. *See* Compl. ¶¶ 23-33. Rather than alleging facts to support his contention that the Redemption Payments contained BLMIS customer property, however, the Trustee instead alleges in conclusory fashion that "a portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant ADIA." *Id.* ¶ 42. To fill that hole in his pleadings, the Trustee attaches an exhibit comprising more than seventy pages of small type listing thousands of transactions among BLMIS, Sentry, and many unnamed entities. *See* Compl., Ex. D, Dkt. 1-4.

The Trustee likewise supports his allegation that the initial transfers to Sentry were avoidable by purporting to "incorporate by reference" the allegations contained in his First Amended Complaint in his case against Sentry and various related parties. Compl. ¶ 35; *see also* First Amended Complaint, *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (BRL) (Bankr. S.D.N.Y. July 7, 2010), Dkt. 23 (the "Fairfield Amended Complaint" and "Fairfield Action" respectively) (Greenwald Decl. Ex. 2). ADIA is not a party to the Fairfield Action, nor is it mentioned in the Fairfield Amended Complaint, and the Trustee does not identify which paragraphs or allegations he intends to incorporate by reference.[1]

The Fairfield Amended Complaint alleges, in broad terms, that BLMIS's operations were characterized by secrecy and a lack of transparency, and that Sentry's management "went to

---

[1] The Fairfield Amended Complaint has since been superseded by a Second Amended Complaint. *See* Second Amended Complaint, Fairfield Action, Dkt. 286 (the "Fairfield Second Amended Complaint"). However, the Trustee has not amended his complaint against ADIA since he filed the Fairfield Second Amended Complaint to incorporate that document. And, like the Fairfield Amended Complaint, the Fairfield Second Amended Complaint makes no mention of ADIA.

great lengths to keep their investors far away from Madoff," Fairfield Amended Complaint

¶ 342, "misled investors," *id.* ¶ 344, "remove[d] all references to BLMIS from their marketing

materials" in 2002, *id.* ¶ 346, "actively and repeatedly 'blocked' investors wishing to obtain

more information," *id.* ¶ 348, "went to great lengths to cover up Madoff's actual role with the

[Fairfield Greenwich Group] funds" *id.* ¶ 350, and "sold the false assurance that they conducted

superior due diligence" *id.* ¶ 362.  The Fairfield Amended Complaint further alleges that the SEC

investigated BLMIS in 2006 but failed to uncover the fraud.  *Id.* ¶¶ 351-61.

On May 9, 2011, the Trustee moved this Court for approval of a settlement agreement

with Sentry, acting through liquidators appointed for Sentry in proceedings before the Eastern

Caribbean Supreme Court in the High Court of Justice of the Virgin Islands.  *See* Fairfield

Action, Dkt. 69; *see also* Compl. ¶ 40.  This Court approved the settlement on June 7, 2011.

Compl. ¶ 40.  Pursuant to that agreement, the Sentry liquidators consented to a $3.054 billion

judgment against Sentry.  *See* Fairfield Settlement, Fairfield Action, Dkt. 69-2 ¶ 1 (Greenwald

Decl. Ex. 3).  The settlement agreement further provided for cooperation and information sharing

between the Sentry liquidators and the Trustee concerning, *inter alia*, claims against parties that

redeemed their Sentry shares.  *See id.* ¶ 14.  Accordingly, the Trustee had access to Sentry's

books and records for at least two months before he filed the Complaint against ADIA and has

continued to enjoy that access for over a decade since.

The Sentry liquidators commenced a separate action in this Court against ADIA to

recover the same transfers that are at issue in this adversary proceeding.  *See* First Amended

Complaint, *Fairfield Sentry Limited (In Liquidation) v. Abu Dhabi Investment Authority*, Adv.

Proc. No. 11-01719 (BRL) (Bankr. S.D.N.Y. Apr. 15, 2011), Dkt. 4 (Greenwald Decl. Ex. 4).  In

that complaint, the Sentry liquidators explain that ADIA invested in Sentry by subscribing for

and purchasing shares in Sentry, and received cash from Sentry to redeem those shares. *Id.* ¶ 36. Those payments were governed by Sentry's Articles of Association.[2]  *See Fairfield Sentry Ltd. v. Migani*, [2014] UKPC 9, ¶ 10 (the "*Privy Council Decision*") ("[T]he terms of the subscriber's membership of the Fund, which govern the redemption of its shares … are to be found in the Articles of Association of the Fund.").[3]

## ARGUMENT

## I.    AS AN INSTRUMENTALITY OF A FOREIGN STATE, ADIA IS IMMUNE FROM THIS COURT'S SUBJECT MATTER JURISDICTION

### A.    Any Action Against ADIA Is Subject to the Foreign Sovereign Immunities Act

As the Trustee concedes, ADIA is an agency or instrumentality of a foreign sovereign state, the Emirate of Abu Dhabi.  *See* Al-Hajeri Decl. ¶¶ 2-3; Compl. ¶ 22.  As such, ADIA "is presumptively immune from suit in U.S. courts."  *Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*, 204 F.3d 384, 388 (2d Cir. 2000) (citing *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993)).  Section 1604 of the Foreign Sovereign Immunities Act provides that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter."  28 U.S.C. § 1604.  For sovereign immunity purposes, "a 'foreign state' . . .  includes . . . an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a).  In turn, an agency or instrumentality of a foreign state means any entity that: (1)  is a separate legal person, corporate or otherwise; (2) is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof; and (3) is neither a citizen of

---

[2] A copy of Fairfield Sentry's Articles of Association is annexed to the Greenwald Decl. as Ex. 5.

[3] The *Privy Council Decision* is available at: https://www.jcpc.uk/cases/docs/jcpc-2012-0061-judgment.pdf and a copy is annexed to the Greenwald Decl. as Ex. 6.

a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country. 28 U.S.C. 1603(b). Each of these elements applies to ADIA. Indeed, in prior unrelated litigation involving ADIA as a party, the Second Circuit found that, "[i]t is undisputed that the defendants-appellees [including ADIA] are either foreign sovereigns or instrumentalities of a foreign sovereign." *Zappia Middle E. Const. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 250 (2d Cir. 2000).

### B.    ADIA Has Satisfied Its Prima Facie Burden Under the FSIA

A party asserting sovereign immunity to contest subject matter jurisdiction "must present a prima facie case that it is a foreign sovereign.'" *Virtual Countries, Inc. v. Republic of S. Africa*, 300 F.3d 230, 241 (2d Cir. 2002) (quoting *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir. 1993)). After such a prima facie showing by the defendant, "the plaintiff has the burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted, although the ultimate burden of persuasion remains with the alleged foreign sovereign." *Cargill*, 991 F.2d at 1016 (citations omitted). The defendant satisfies its burden of persuasion under a preponderance of the evidence standard. *Virtual Countries*, 300 F.3d at 242.

In resolving challenges to jurisdiction on a motion to dismiss based on FSIA immunity, a court may, and in some cases must, "look outside the pleadings" to resolve the motion. *Murphy v. Korea Asset Mgmt. Corp.*, 421 F. Supp. 2d 627, 630 (S.D.N.Y. 2005); *see also Robinson v. Gov't of Malaysia*, 269 F.3d 133, 141-42 (2d Cir. 2001) ("A district court does not, of course, decide a case on the merits… [b]ut under the FSIA, the district court may examine the defendant's activities to determine whether they confer subject matter jurisdiction"). "Our rule is that, on a 'challeng[e][to] the district court's subject matter jurisdiction [under the FSIA], the court may resolve disputed jurisdictional fact issues by reference to evidence outside the

pleadings, such as affidavits.'" *Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922, 932 (2d Cir.

1998) (citation omitted) (alterations in original), *overruled on other grounds*, *Lotes Co. v. Hon*

*Hai Precision Indus. Co.*, 753 F.3d 395 (2d Cir. 2014).

Here ADIA is an independent public institution wholly owned by the Emirate of Abu

Dhabi.  Al-Hajeri Decl. ¶ 2; Compl. ¶ 22.  ADIA was created in 1976 under the laws of the

Emirate of Abu Dhabi and is subject to the supervision of the Government of the Emirate of Abu

Dhabi.  Al-Hajeri Decl. ¶ 2.  ADIA is an agency of the Government of Abu Dhabi and enjoys the

full legal capacity to act.  *Id.* ¶ 3.  Accordingly, and as the Second Circuit itself found in *Zappia*,

ADIA qualifies as an agency or instrumentality of a foreign sovereign state.  *See Dole Food Co.*

*v. Patrickson*, 538 U.S. 468, 474 (2003) ("[D]irect ownership of a majority of shares by the

foreign state satisfies the statutory requirement.").

### C.     The Trustee Cannot Satisfy His Burden of Demonstrating an Exception to Immunity Under the FSIA

ADIA's status as an instrumentality of a foreign state means that this Court lacks subject

matter jurisdiction over ADIA "unless a specified exception" to the FSIA applies.  *Federal*

*Republic of Germany v. Philipp*, 141 S. Ct. 703, 709 (2021) (quoting *Nelson*, 507 U.S. at 355).

The Complaint, however, contains *no* allegations that would support a finding that any

exception applies to this action.  Accordingly, the Trustee has failed to carry "the burden of

going forward with evidence showing that, under exceptions to the FSIA, immunity should not

be granted." *Virtual Countries*, 300 F.3d at 241 (citation omitted).  This Court must therefore

dismiss this action for want of subject matter jurisdiction.  *See id.* at 242 (affirming district

court's dismissal of complaint for lack of subject matter jurisdiction under the FSIA based on

plaintiff's failure to allege or proffer sufficient evidence to support jurisdiction).  Moreover, to

the extent this Court considers any exceptions notwithstanding the Trustee's failure to so allege

that any applies, the only exception that is conceivably relevant here, the commercial activity

exception, is plainly inapposite.

1.    <u>The Commercial Activity Exception Does Not Apply</u>

Under the commercial activity exception to the FSIA, United States courts may exercise

jurisdiction over foreign states and their agencies or instrumentalities if:

> [T]he action is based upon a commercial activity carried on in the
> United States by the foreign state; or upon an act performed in the
> United States in connection with a commercial activity of the
> foreign state elsewhere; or upon an act outside the territory of the
> United States in connection with a commercial activity of the
> foreign state elsewhere and that act causes a direct effect in the
> United States.

28 U.S.C. § 1605(a)(2).  In assessing whether a suit is "based upon" specific conduct, the Court

must identify the "particular conduct that constitutes the gravamen of the suit."  *OBB*

*Personenverkehr AG v. Sachs*, 577 U.S. 27, 35 (2015) (internal quotation marks omitted).  Here,

the gravamen of the Complaint is that ADIA, an instrumentality of the Emirate of Abu Dhabi,

received and retained the Redemption Payments from Sentry, a BVI entity. *See* Compl. ¶¶ 2, 41-

48. Moreover, ADIA requested the Redemption Payments through Citco Fund Services (Europe)

B.V. ("Citco"), a Dutch entity that was Sentry's administrator, and ADIA understood that Citco

sent ADIA the redemption funds from an account outside the United States.  Al-Hajeri Decl. ¶ 8.

Accordingly, the first two clauses of the commercial activity exception are, on their face, not

applicable.  The claims asserted in Complaint are clearly not based upon "ADIA's commercial

activity carried on in the United States" or "an act performed in the United States in connection

with a commercial activity of [ADIA] elsewhere."  *See* 28 U.S.C. §1605(a)(2).

The third clause of the commercial activity exception also does not apply.  That clause

requires that "the action [be] based upon . . . an act outside the territory of the United States in

connection with a commercial activity of the foreign state elsewhere and that act causes a direct

9

effect in the United States." 28 U.S.C. § 1605(a)(2).  In considering that clause, the Second

Circuit has endorsed the "legally significant acts test," which "requires that the conduct having a

direct effect in the United States be legally significant conduct in order for the commercial

activity exception to apply." *Virtual Countries, Inc.*, 300 F.3d at 240.  "An effect is direct if it

follows as an *immediate* consequence of the defendant's activity." *Id.* at 236 (quoting *Republic*

*of Argentina v. Weltover, Inc.*, 504 U.S. 607, 618 (1992)) (emphasis in original).

Accordingly, to maintain jurisdiction over ADIA under this prong of the commercial

activity exception, the Trustee must demonstrate that ADIA's legally significant acts abroad

caused an immediate consequence in the United States.  But here the sole count is not based on

ADIA's acts *at all*.  Rather, the only legally significant acts alleged as the basis of the Trustee's

claim are acts of Sentry.

In fact, the Complaint does not allege any commercial activity on the part of ADIA, let

alone activity in the United States, other than the passive receipt of the Redemption Payments. A

sovereign cannot lose immunity under the commercial activity exception when the claims do not

require any activity on the part of the sovereign.  *See* 28 U.S.C. § 1605(a)(2) (All three clauses

require that the actions be based on "activity" of or by the foreign state); *Nelson*, 507 U.S. at 356

(no FSIA exception applied "[b]ecause we conclude that the suit is not based upon any

commercial activity by petitioners"); *Drexel Burnham Lambert Group Inc. v. Comm. of*

*Receivers for Galadari*, 12 F.3d 317, 330 (2d Cir. 1993) ("If the 'connection' language of

§ 1605(a)(2) were read . . . to include tangential commercial activities to which the 'acts'

forming the basis of the claim have only an attenuated connection, the 'commercial activity'

exception would effectively be rewritten to authorize the exercise of jurisdiction over acts that

are essentially sovereign in nature.").  Simply put, Sentry's acts (even if they were found to have

10

a direct effect in the United States) cannot be imputed to ADIA for purposes of the commercial activity exception.

The Complaint also fails to allege how any of ADIA's legally significant acts, to the extent any occurred, had a direct effect in the United States. As noted, Sentry is a BVI entity, not a United States entity. Thus, it is unclear how ADIA's receipt of the Redemption Payments, from Sentry, could have a direct effect in the United States. Indeed, the Second Circuit has held that "the fact that an American individual or firm suffers some financial loss from a foreign tort cannot, standing alone, suffice to trigger the exception." *Antares Aircraft, L.P. v. Fed. Republic of Nigeria*, 999 F.2d 33, 36 (2d Cir. 1993); *see also Antares Aircraft, L.P. v. Fed. Republic of Nigeria*, 948 F.2d 90, 92 (2d Cir. 1991) ("The transfer of funds out of [a] New York bank account ... [is] not [itself] sufficient to place the effect of [a] defendant['s] conduct 'in the United States' within the meaning of § 1605(a)(2)."), *vac'd*, 505 U.S. 1215 (1992). At bottom, ADIA's retention of the funds had no immediate effect at all, let alone the "direct effect" requirement of the statute. 28 U.S.C. § 1605(a)(2).

While the Trustee may argue that *Picard v. Bureau of Labor Insurance*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012) ("*BLI*") governs this case, the reasoning of *BLI* is irreconcilable with the Supreme Court's later decision in *OBB Personenverkehr* concerning the commercial activity exception to the FSIA. In *BLI*, this Court held that a foreign state was not entitled to sovereign immunity in a subsequent transfer action by the Trustee because that suit was "based upon BLI's investment of tens of millions of dollars in Fairfield Sentry with the specific goal of having funds invested in BLMIS in New York, with intent to profit therefrom." 480 B.R. at 506. In *OBB Personenverkehr*, however, the Supreme Court clarified that the "based upon" requirement of the commercial activity exception requires courts to examine the "particular conduct that constitutes

the gravamen of the suit[,] [r]ather than individually analyzing each of the [] causes of action,"

577 U.S. at 35 (internal quotation marks omitted).

Accordingly, *BLI*'s one-sentence conclusion that the commercial activity exception

applied to abrogate defendant's sovereign immunity focused on the wrong conduct.  The "basis

or foundation" of the Trustee's subsequent transfer claim is not ADIA's purported intent to

invest in BLMIS through Sentry; proof of that fact would not "entitle [the Trustee] to relief." *Id.*

at 34.  Instead, the particular conduct that constitutes the gravamen of Trustee's Complaint is

ADIA's passive receipt of the Redemption Payments.  As already discussed, that is not

"commercial activity" at all and, in any event, it is undisputed that ADIA received the

Redemption Payments outside of the United States.

Thus, the Complaint fails to meet the commercial activity exception in a manner that

would overcome ADIA's immunity under the FSIA.  Since ADIA is immune from this Court's

jurisdiction, the Complaint must be dismissed.

## II.    THIS COURT LACKS PERSONAL JURISDICTION OVER ADIA

Even assuming that this Court determines that the FSIA does not preclude it from

exercising subject-matter jurisdiction over this dispute, the Complaint must be dismissed for

want of personal jurisdiction over ADIA pursuant to Federal Rule of Civil Procedure 12(b)(2).[4]

The Trustee has the burden to establish this Court's jurisdiction.  *See, e.g.*, *Friedman v.*

*Bloomberg L.P.*, 884 F.3d 83, 90 (2d Cir. 2017) ("The plaintiff bears the burden of

---

[4]  While the Second Circuit has held that foreign *states* are not entitled to protection from the exercise of
judicial power under the Due Process Clause of the Fifth Amendment, it recently affirmed that "[a]gencies and
instrumentalities of foreign sovereigns retain their status as 'separate legal persons' and receive protection from the
exercise of personal jurisdiction under the Due Process Clause."  *Gater Assets, Ltd. v. AO Moldovagaz*, 2 F.4th 42,
49 (2d Cir. 2021) (citation omitted).  Because it is undisputed that ADIA is an instrumentality of the Emirate of Abu
Dhabi, this court may not exercise personal jurisdiction over it unless due process would permit as much, which, in
this case, it does not.

demonstrating that the court has personal jurisdiction over each defendant.") (citation omitted). Specifically, "[t]o establish personal jurisdiction over a defendant, due process requires a plaintiff to allege (1) that the defendant has 'certain minimum contacts' with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (citing, *inter alia*, *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Trustee has not met his burden as to either prong of the inquiry.

### A.    Jurisdictional Allegations

The Trustee concedes that ADIA "is a sovereign wealth fund that is wholly owned by the Emirate of Abu Dhabi and maintains its principal executive office at 211 Corniche Street, Abu Dhabi, United Arab Emirates." Compl. ¶ 22; *see also id.* ¶ 3. The Trustee does not, and cannot, allege that ADIA has either an office or any employees in New York or elsewhere in the United States, because it does not. *See* Al-Hajeri Decl. ¶ 4. Instead, the Trustee's sole allegation in support of personal jurisdiction is that:

> Defendant ADIA is subject to personal jurisdiction in this judicial district because it purposely availed itself of the laws and protections of the United States and the [S]tate of New York by, among other things, knowingly directing funds to be invested with New York-based BLMIS through Fairfield Sentry. Defendant ADIA knowingly received transfers of Customer Property from BLMIS. The Trustee's investigation to date reveals that Defendant ADIA obtained this Customer Property by withdrawing money from Fairfield Sentry, a Fairfield Greenwich Group ("FGG") managed Madoff Feeder Fund. By directing its investment through FGG, Defendant ADIA knowingly accepted the rights, benefits, and privileges of conducting business and/or transactions in the United States and New York. Defendant ADIA entered into a subscription agreement with Fairfield Sentry under which ADIA submitted to New York jurisdiction, sent the subscription agreement to FGG's New York City office, wired funds to Fairfield Sentry through a bank in New York, and regularly communicated by e-mail and telephone with its Fairfield Sentry account representatives located in FGG's New York City office.

> Defendant ADIA thus derived significant revenue from New York
> and maintained minimum contacts and/or general business contacts
> with the United States and New York in connection with the
> claims alleged herein.

Compl. ¶ 7. That allegation is insufficient to establish personal jurisdiction over ADIA under any

of the three recognized bases: general jurisdiction, jurisdiction by consent, and specific

jurisdiction.

### B.    The Trustee Has Not Established General Jurisdiction

As an initial matter, the Trustee does not—and cannot—allege that this Court may

exercise general personal jurisdiction over ADIA.  A party is subject to general personal

jurisdiction only when it is essentially "at home" in the forum, either by being incorporated or

having its principal place of business therein.  *Daimler AG v. Bauman*, 571 U.S. 117, 136-37

(2014).  Here it is undisputed that ADIA is an agency of the Emirate of Abu Dhabi with its

principal place of business in Abu Dhabi.  Compl. ¶¶ 3, 22.

### C.    ADIA Has Not Consented to This Court's Jurisdiction

The Trustee's allegation that ADIA "submitted to New York jurisdiction" by entering a

Subscription Agreement with Sentry, Compl. ¶ 7, does not establish that ADIA consented to

jurisdiction in New York.

As a threshold matter, the Trustee is not a party to, or third-party beneficiary of, the

Subscription Agreement.  Accordingly, the Trustee is not entitled to invoke the Subscription

Agreement's forum selection clause.  *See Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc.*, 328 F.

Supp. 3d 329, 334-39 (S.D.N.Y. 2018) (rejecting enforcement of forum selection clause by non-

signatory to relevant agreement and dismissing case for lack of personal jurisdiction).

Moreover, this Court held that a suit by the Sentry liquidators, who (unlike the Trustee)

*are* party to the Subscription Payment, to recover a redemption payment is not a suit "with

respect to the Subscription Agreement" and therefore does not fall within the scope of its forum

selection clause. *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, 2018 WL 3756343, at *11-

12 (Bankr. S.D.N.Y. Aug. 6, 2018) (adhering to holding of *Privy Council Decision* that the

Subscription Agreement is irrelevant in action to recover redemption payments). Accordingly,

the Subscription Agreement provides no basis for this Court to exercise jurisdiction over ADIA.

### D.    The Trustee Has Not Established Specific Jurisdiction

The Trustee has not alleged minimum contacts sufficient to support the exercise of

specific jurisdiction.[5] The assessment of whether a court may exercise specific jurisdiction over

a nonresident "focuses on the relationship among the defendant, the forum, and the litigation."

*Walden v. Fiore*, 571 U.S. 277, 284 (2014). "First, the relationship must arise out of contacts

that the *defendant* himself creates with the forum state." *Id.* (emphasis in original) (internal

quotation marks and citation omitted). "Second, our minimum contacts analysis looks to the

defendant's contacts with the *forum State itself*, not the defendant's contacts with persons who

reside there." *Id.* at 285 (emphasis added).

Because the Trustee's complaint arises out of ADIA's receipt of the Redemption

Payments, the jurisdictional analysis must center on its contacts in relation to its receipt of those

---

[5] As a statutory basis for specific jurisdiction, the Complaint invokes CPLR § 302 and Bankruptcy Rule 7004. CPLR § 302(a)(1) provides, in relevant part, that a New York Court may exercise personal jurisdiction over an out-of-state defendant only if (i) the defendant "transacts any business within the State" of New York and (ii) the plaintiff's claim "aris[es] from" such business activity. As interpreted by the Court of Appeals, the two prongs of CPLR § 302(a)(1) are largely coextensive with the requirements of the due process test in commercial contexts. *Cf. D&R Global Selections, S.L. v. Bodega Olegario Falcon Pineiro*, 29 N.Y.3d 292, 299-300 (2017) ("We have recognized that CPLR 302 and due process are not coextensive; nonetheless while personal jurisdiction permitted under the long-arm statute may theoretically be prohibited under due process analysis, we would expect such cases to be rare.") (citation and internal quotation marks omitted). Similarly, Bankruptcy Rule 7004(f) provides for personal jurisdiction in an adversary proceeding, upon service of process under Federal Rule of Civil Procedure 4, if "the exercise of jurisdiction is consistent with the Constitution and laws of the United States." For present purposes, the only material difference between the two analyses is that the New York long-arm statute focuses on a defendant's contacts with New York State, while the Bankruptcy Rule looks to its contacts with the United States as a whole. Because, however, the Trustee does not allege any contact between ADIA and any state other than New York, the analyses are the same here.

payments.  The Complaint fails to satisfy either prong of the inquiry because ADIA had no

meaningful contacts with New York or the United States in relation to its receipt of the

Redemption Payments.  "At bottom, the contacts alleged by [the Trustee] between [ADIA], the

forum and the litigation amount to a handful of communications and transfers of funds.  These

limited contacts are insufficient to allow the exercise of personal jurisdiction over [ADIA]."

*SPV Osus, Ltd. v. UBS AG*, 882 F.3d 333, 345 (2d Cir. 2018).

1.     <u>ADIA's Purported Knowledge of Sentry's Investment With BLMIS Does
Not Establish Personal Jurisdiction</u>

The Trustee's allegation that ADIA "knowingly direct[ed] funds to be invested with New

York-based BLMIS through Fairfield Sentry," Compl. ¶ 7, falls far short of establishing ADIA's

minimum contacts with New York.  To the contrary, it is well established that acts in the

domestic forum by a *third party* do not amount to minimum contacts or purposeful availment.

*Cf. Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an

individual's contract with an out-of-state party *alone* can automatically establish sufficient

minimum contacts in the other party's home forum, we believe the answer clearly is that it

cannot.") (emphasis in original).

The fact that Sentry, a BVI entity, would invest funds with BLMIS, which would in turn

hold those funds in New York cannot establish ADIA's own minimum contacts with New York.

Indeed, the Supreme Court has more than once rejected the proposition that such unilateral acts

of a third party can suffice to create minimum contacts with a forum.  *See Walden*, 571 U.S. at

291 ("'[U]nilateral activity' of a third party . . . 'cannot satisfy the requirement of contact with

the forum State.'"); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417

(1984) ("[U]nilateral activity of another party or a third person is not an appropriate

consideration when determining whether a defendant has sufficient contacts with a forum State

16

to justify an assertion of jurisdiction.") (collecting cases).  Consistent with that line of cases,

New York courts routinely hold that allegations that a nonresident defendant contracted with an

in-state plaintiff that performed a contract in the state do not amount to minimum contacts giving

rise to personal jurisdiction.  *See Ferrante Equip. Co. v. Lasker-Goldman Corp.*, 26 N.Y.2d 280,

285 (1970) ("The mere receipt by a nonresident of benefit or profit from a contract performed by

others in New York is clearly not an act by the recipient in this State sufficient to confer

jurisdiction under our long-arm statute."); *see also, e.g.*, *SunLight Gen. Cap. LLC v. CJS Invs.*

*Inc.*, 114 A.D.3d 521, 522 (1st Dep't 2014) (refusing to impute Plaintiffs own actions undertaken

within state pursuant to contract with out-of-state defendant).  It is therefore of no matter that

ADIA may have hoped to profit from BLMIS's purported trading activities when it invested in

Sentry; its investment in a BVI fund does not establish that ADIA purposefully availed itself of

the benefits of New York law.[6]

Nor do this Court's decisions in *BLI* and *Picard v. BNP Paribas S.A.*, 594 B.R. 167

(Bankr. S.D.N.Y. 2018), counsel a contrary result.  In *BLI*, this Court held that a foreign

defendant that had invested in Sentry was subject to personal jurisdiction based on its alleged

knowledge of Sentry's BLMIS investments.  480 B.R. at 517.  But that decision runs directly

contrary to the Supreme Court's subsequent decision in *Walden*, in which it held that Nevada

courts could not exercise jurisdiction over a Georgia defendant for conduct that occurred in a

Georgia airport notwithstanding that the defendant knew that the Plaintiff had connections to

Nevada and that his conduct would delay the return of the plaintiff's property to that State.  As

the Supreme Court held, basing jurisdiction on the mere fact that foreseeable harm might occur

---

[6] In any case, as the Trustee concedes, ADIA obtained no benefit from trading securities because BLMIS
did not actually trade a single security.  *See, e.g.*, Compl. ¶¶ 23-33.

in the forum "impermissibly allows a plaintiff's contacts with the defendant and forum to drive

the jurisdictional analysis." 571 U.S. at 279-81, 289. Under the *Walden* test, ADIA's alleged

knowledge that Sentry would invest with BLMIS is irrelevant to the jurisdictional analysis.

    *BNP Paribas* is likewise inapposite. There, the Court held that it could exercise

jurisdiction where the defendants, which offered customers access to BLMIS-related

transactions, "operated from New York, and the subsequent transfers were largely the result of

those New York activities." 594 B.R. at 192. There are no such allegations that ADIA engaged

in any conduct in New York at all, whether or not related to the Redemption Payments.

       2.    ADIA's Purported Wiring of Money To or From Sentry's Accounts Does
                Not Establish Personal Jurisdiction

    Equally unavailing is the Trustee's allegation that ADIA "withdr[ew] money from

Fairfield Sentry" and "wired funds to Fairfield Sentry" through a bank in New York. Compl.

¶ 7. As a matter of law, "a foreign defendant's communications with a party in New York or

sending of monies into New York are not sufficient to establish personal jurisdiction" if the

"communications with and payments to New York were made merely to ensure compliance with

contract terms negotiated and executed outside of New York." *Hau Yin To v. HSBC Holdings*

*PLC*, 2017 WL 816136, at *5 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017);

*see also, e.g.*, *Letom Mgmt. Inc. v. Centaur Gaming, LLC*, 2017 WL 4877426, at *7 (S.D.N.Y.

Oct. 27, 2017) (fact that contract negotiated and executed outside New York required payments

to New York bank account did not establish personal jurisdiction); *Rosenblatt v. Coutts & Co.*

*AG*, 2017 WL 3493245, at *4 (S.D.N.Y. Aug. 14, 2017) (non-resident defendant sending

payment to New York bank account in connection with contract negotiated and executed outside

the United States was not purposeful availment); *Universal Trading & Inv. Co. v. Tymoshenko*,

2012 WL 6186471, at * 3 (S.D.N.Y. Dec. 12, 2012) ("[C]ourts have long recognized that there

are significant policy reasons which caution against the exercise of personal jurisdiction based

only on a correspondent bank account.") (citation and internal quotation marks omitted).  Nor

does the mere maintenance of a U.S. bank account and the knowing receipt of funds through that

account establish personal jurisdiction. *See, e.g.*, *Vasquez v. Hong Kong and Shanghai Banking

Corp.*, 477 F. Supp. 3d 241, 257-58 (S.D.N.Y. 2020).  Here, the subscription payments to and

redemption payments from Sentry were made pursuant to contracts between ADIA and Sentry,

which are not alleged to have been negotiated or executed in New York.

          3.     ADIA's Purported Contacts with Sentry's Managers Do Not Establish
                   Personal Jurisdiction

Finally, the Trustee alleges, in conclusory fashion, that "Defendant ADIA . . . regularly

communicated by email and telephone with its Fairfield Sentry account representatives located in

[Fairfield Greenwich Group's] New York City office."  Compl. ¶ 7.  These allegations fail

because they are unrelated to the claim against ADIA and are, in any event, insufficient.

First, the Trustee fails to allege any facts explaining how any of these unspecified

contacts purportedly give rise to his claim, which seeks to recover the Redemption Payments

from Sentry to ADIA.  *See Zim Integrated Shipping Servs. v. Bellwether Design Techs.*, 2020

WL 5503557, at *5 (S.D.N.Y. Sept. 10, 2020) (court lacked personal jurisdiction where "none of

the contacts [plaintiff] identifies has anything to do with this dispute other than generally

involving [impleaded defendant's] business").  Second, even if the Trustee's threadbare

allegation is credited, it remains insufficient to establish jurisdiction.  As the Second Circuit

concluded in *SPV Osus*, "a handful of communications . . . [is] insufficient to allow the exercise

of personal jurisdiction over" a non-resident defendant.  882 F.3d at 345; *see also Hill v. HSBC

Bank plc*, 207 F. Supp. 3d 333, 339-40 (S.D.N.Y. 2016) (allegations that foreign defendants

"communicated with and transmitted information and funds to and from BLMIS located in New

York" did not "'project' the Foreign Defendants into New York").

E.    **The Exercise of Jurisdiction Over ADIA Would Not Comport With Due Process**

Even if the Trustee had established minimum contacts sufficient to exercise personal

jurisdiction which, for the reasons discussed above, he has not, the Court would still need to

determine whether the exercise of personal jurisdiction would be reasonable under the

circumstances.  Here, it would be entirely unreasonable to exercise jurisdiction over the

instrumentality of a foreign government from halfway across the world based on the most

attenuated of contacts.

In evaluating the reasonableness of personal jurisdiction, courts must consider: "(1) the

burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the

forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and

effective relief; (4) the interstate judicial system's interest in obtaining the most efficient

resolution of the controversy; and (5) the shared interest of the states in furthering substantive

social policies." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)

(citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113-14 (1987)).  These factors

are evaluated on a sliding scale: "the weaker the plaintiff's showing on minimum contacts, the

less a defendant needs to show in terms of unreasonableness to defeat jurisdiction."  *Id.* at 569;

*see also Porina v. Marward Shipping Co.*, 2006 WL 2465819, at *6 (S.D.N.Y. Aug. 24, 2006)

("[I]f a defendant's contacts with the United States are weak, the plaintiff has to make a stronger

showing of reasonableness in order to show that jurisdiction over the defendant is proper."). The

paltry contacts that the Trustee has cobbled together consequently require a strong showing that

the exercise of jurisdiction would be reasonable.  But each relevant reasonableness factor tilts in

ADIA's favor.

*First*, defending this case would impose a considerable burden on ADIA, which has no

"records, files, or witnesses with information about the litigation" in the United States.  *Metro.*

*Life Ins.*, 84 F.3d at 574.

*Second*, the United States' interest in tracing the funds from BLMIS is not superior to the

interests of the Emirate of Abu Dhabi in protecting its sovereign wealth, nor is it superior to the

interests of the BVI government in regulating Sentry.  That is especially so given that the

Complaint lacks any allegation that ADIA engaged in any wrongdoing, or that it was otherwise

complicit in—or even knowledgeable about—Madoff's wrongdoing or the BLMIS Ponzi

scheme.

*Third*, while New York is certainly a more convenient forum for the Trustee, that

convenience alone does not overcome the weight of the factors against the exercise of

jurisdiction.  The Trustee cannot show that it would be more reasonable to litigate his claims in

New York, as opposed to Abu Dhabi, where ADIA is located.

*Finally*, there is no interest of the American judicial system that would be advanced by

forcing ADIA to litigate a case involving records that are more than 20 years old and witnesses

halfway across the world.  Abu Dhabi, by contrast, has a strong interest in resolving issues

related to the investments of its money, which are intended to secure its long-term prosperity for

the benefit of its citizens.  *See* Al-Hajeri Decl. ¶ 3.

Ultimately, ADIA's alleged contacts arise from foreign acts in the context of its

relationship with Sentry, a foreign entity, concerning its foreign investments.  ADIA thus could

not have reasonably anticipated being haled into a United States court in connection with that

activity.  Courts often hold the exercise of personal jurisdiction unreasonable where a

defendant's contacts with the forum state "barely satisfy[] the minimum contacts standard."

*Benton v. Cameco Corp.*, 375 F.3d 1070, 1080 (10th Cir. 2004); *see also Hamilton v. Accu-Tek*,

32 F. Supp. 2d 47, 79 (E.D.N.Y. 1998) (same).  Even if this Court concludes that the Trustee has

managed to plead minimum contacts, the exercise of jurisdiction over ADIA would be

unreasonable.  Accordingly, dismissal is still appropriate.

## III.    THE TRUSTEE'S CLAIM IS PRE-EMPTED BY THE SAFE-HARBOR PROVISION OF 11 U.S.C. § 546(E)

Even if ADIA were not immune from suit, and even if this Court could exercise

jurisdiction over it, the safe harbor provision of Section 546(e) of the Bankruptcy Code

separately mandates dismissal of the Trustee's claim.[7]

"It is well established that when the statute's language is plain, the sole function of the

courts— at least where the disposition required by the text is not absurd—is to enforce it

according to its terms."  *Lame v. United States Trustee*, 540 U.S. 526, 534 (2004) (quoting

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)).  Moreover,

in the specific context of actions brought by the Trustee, the Second Circuit has instructed that

"by enacting § 546(e), Congress provided that, for a very broad range of securities-related

transfers, the interest in finality is sufficiently important that they cannot be avoided by a

bankruptcy trustee at all, except as actual fraudulent transfers under § 548(a)(1)(A)."  *Picard v.*

---

[7] It is appropriate for the Court to consider ADIA's safe harbor defense at this stage because "the application of Section 546(e) presents a straightforward question of statutory interpretation of the type that is appropriately resolved on the pleadings."  *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, 2020 WL 7345988, at *5 (Bankr. S.D.N.Y. Dec. 14, 2020).  Moreover, ADIA has standing to assert its defenses under Section 546(e) as a subsequent transferee notwithstanding the fact that Fairfield, as initial transferee, declined to assert it.  *See Picard v. Fairfield*, 2021 WL 3477479, at *3 ("Where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here . . . , the subsequent transferee is nonetheless entitled to raise a § 546(e) defense against recovery of those funds.").

*Ida Fishman Revocable Trust*, 773 F.3d 411, 423 (2d Cir. 2014).  Accordingly, the Circuit

cautioned that "[p]ermitting the clawback of millions, if not billions, of dollars from BLMIS

clients—many of whom are institutional investors and feeder funds—would likely cause the very

'displacement' that Congress hoped to minimize in enacting § 546(e)."  *Id.* at 420.

The plain language of Section 546(e) requires dismissal here.  Section 546(e) provides

that a trustee may not avoid transfers made by, to, or for the benefit of a covered entity, including

a "stockbroker," "financial institution," and "financial participant," "in connection with a

securities contract" or comprising "settlement payments" except under 11 U.S.C. § 548(a)(1)(A),

which has a two-year limitations period.  Here the Redemption Payments are shielded by the safe

harbor because they are both transfers "in connection with a securities contract" and "settlement

payments," and they were made by a "stockbroker," to a "financial institution," for the benefit of

a "financial participant."  Further, because the Redemption Payments were both made more than

two years prior to the commencement of the Madoff bankruptcy in December 2008, they are not

otherwise avoidable under 11 U.S.C. § 548(a)(1)(A), which provides the sole statutory exception

to the safe harbor.  Finally, the Trustee has not alleged that ADIA had actual knowledge of the

BLMIS fraud, thereby rendering irrelevant the judicially created exception that a subsequent

transferee with "actual knowledge of Madoff Securities' fraud . . . cannot prevail on a motion to

dismiss on the basis of Section 546(e)'s safe harbor."  *Picard v. Fairfield Inv. Fund Ltd.*, 2021

WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) (Morris, C.J.).[8]  Accordingly, the

Redemption Payments fall within Section 546(e)'s safe harbor and the Complaint must be

dismissed.

---

[8]  ADIA notes that the Second Circuit has not decided the viability of this judicially created exception,
which contradicts the plain language of §§ 546(e) and 548(a)(1)(A), and expressly preserves the issue.

A.    **The Alleged Initial Transfers Were Made By, To, and for the Benefit Of Covered Entities Under Section 546(e)**

As a threshold matter, a payment is subject to the safe harbor protection if it is made by, to, or for the benefit of a covered entity, including a "stockbroker," "financial institution," and "financial participant."  The Redemption Payments easily meet this requirement in three separate ways.

The Code defines "stockbroker" to include entities "engaged in the business of effecting transactions in securities."  11 U.S.C. § 101(53A)(B).  As Judge Rakoff concluded a decade ago, BLMIS qualifies as a stockbroker under the Code.  *See SIPC v. Bernard L. Madoff Inv. Secs. LLC*, 476 B.R. 715, 719 (S.D.N.Y. 2012) ("[E]ven assuming the truth of the allegation that Madoff Securities' investment advisory division never traded securities on behalf of clients, Madoff Securities nonetheless qualifies as a stockbroker by virtue of the trading conducted by its market making and proprietary trading divisions.").  This Court's inquiry need go no further.

While BLMIS's status as a stockbroker is sufficient to satisfy the "covered entity" requirement, there are two additional and independently sufficient bases to reach the same conclusion.

*First*, Sentry, as initial transferee, qualifies as a "financial institution" and is therefore a covered entity within the meaning of Section 546(e).  Under the Code, a "financial institution" includes not only "an entity that is a commercial or savings bank," or a "trust company," but also the customer of such institutions when the institution is "acting as agent or custodian for a customer . . . in connection with a securities contract."  11 U.S.C. § 101(22)(A).  And this Court held that Sentry was a "financial institution" because it: (1) was a customer of Citco, a bank regulated by the Central Bank of the Netherlands and registered with the Central Bank of Ireland, and (2) Citco acted as Sentry's agent in connection with the securities contracts underlying

Sentry's redemption payments to its shareholders. *See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, 2020 WL 7345988, at *6-8 (Bankr. S.D.N.Y. Dec. 14, 2020). That holding is binding on the Trustee because (i) he was in privity with the liquidators, and (ii) the Liquidators brought their suit as fiduciaries for the Trustee. *See generally Taylor v. Sturgell*, 553 U.S. 880 (2008) (discussing elements of collateral estoppel).

*Second*, the Trustee has alleged that the initial transfers were made "for the benefit of" ADIA, which is a Financial Participant within the meaning of 11 U.S.C. § 101(22A)(A). *See* Compl. ¶¶ 42,46. A financial participant is defined as "an entity that, at the time it enters into a securities contract . . . or at the time of the date of the filing of the petition, has one or more agreements or transactions . . . of a total gross dollar value of not less than $1,000,000,000 in notional or actual principal amount outstanding. . . or has gross mark-to-market positions of not less than $100,000,000 (aggregated across counterparties) in one or more such agreements or transactions . . . ." 11 U.S.C. § 101(22A)(A). ADIA, one of the largest sovereign wealth funds in the world, easily meets the financial thresholds in the definition of a financial participant as set out in Section 101(22A)(A). Al-Hajeri Decl. ¶ 9.

### B.    The Alleged Initial Transfers Were Made in Connection with Securities Contracts

The second requirement of the safe harbor is that the payment made by, to, or for the benefit of a covered entity be a "transfer . . . in connection with a securities contract" or a "settlement payment." 11 U.S.C. § 546(e). Although a transfer need only fit into one of those two categories to be entitled to protection under the safe harbor, here the alleged initial transfers meet both requirements.

In *Fishman*, the Second Circuit held that Section 546(e) shielded transfers from BLMIS to its account holders because the documents governing BLMIS's customer accounts were

"securities contracts" and payments that BLMIS made to its customers were made "in connection with" such contracts. 773 F.3d at 417-22. As alleged in the Complaint, Sentry "had direct customer accounts with BLMIS's investment advisory business." Compl. ¶ 2. The same reasoning therefore applies to the initial transfers to Sentry.

In addition, insofar as the Trustee's theory is that the initial transfers from BLMIS to Sentry were made to satisfy ADIA's redemption requests,[9] those transfers were likewise made "in connection with" the related securities contract that ADIA had with Sentry through the latter's Articles of Association and the Subscription Agreement that governed ADIA's relationship with Sentry. *Privy Council Decision*, [2014] UKPC 9, ¶ 10 ("[T]he terms of the subscriber's membership of the Fund, which govern the redemption of its shares . . . are to be found in the Articles of Association of the Fund").[10] Under the Bankruptcy Code, a "securities contract" is defined, in pertinent part, as "a contract for the purchase, sale, or loan of a security; [or] ... any other agreement or transaction that is similar to [any such] agreement or transaction." 11 U.S.C. § 741(7). As Judge Rakoff observed, that is a broad definition that "includes, *inter alia*, investment fund subscription agreements and *redemption requests*." *SIPC v. Bernard L. Madoff Inv. Secs. LLC*, 2013 WL 1609154, at *8 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*") (emphasis added).

Importantly, Section 546(e) does not require that the initial transfer be in connection with a securities contract between the debtor and the initial transferee, so long as it is made "in connection with *a* securities contract." 11 U.S.C. § 546(e) (emphasis added); *see also Fishman*,

---

[9] ADIA does not concede that the Trustee's theory is correct; as discussed *infra* Section IV, the Trustee has failed to plausibly allege that the Redemption Payments constituted BLMIS customer property.

[10] This Court may consider the Articles of Association in connection with this motion because they are integral to the Complaint. *See In re Tribune Co. Fraudulent Conveyance Litig.*, 10 F.4th 147, 176 (2d Cir. 2021) ("*Tribune II*") ("Here, the documents the district court relied on were the contracts that set forth the relationship between Tribune and CTC, and they were therefore integral to the complaint.").

26

773 F.3d at 422 ("[A] transfer can be connected to, and can be made in relation to, multiple documents or purposes simultaneously."). The fact that Sentry invested the bulk of its funds in BLMIS, a fictitious operation, does not change the nature of ADIA's investment with Sentry or render its agreement to purchase Sentry shares as something other than a securities contract. And, insofar as the Trustee has alleged that Sentry withdrew funds from BLMIS to fulfill the redemption requests of its investors, including ADIA, those transfers were likewise made "in connection" with those securities contracts. *See Cohmad*, 2013 WL 1609154, at *9 (noting that "hypothetical situation in which the Trustee alleges that a withdrawal of funds by an investment fund from its Madoff Securities customer account occurred because an investor in that fund sought redemption of its investment under the terms of its investment contract" would "fit within the plain terms of Section 546(e): an initial transfer that was 'made by or to (or for the benefit of) a . . . financial institution [or] financial participant . . . in connection with a securities contract'") (alterations in original).

### C.    The Alleged Initial Transfers Are Also Settlement Payments

In addition, the Second Circuit held in *Fishman* that BLMIS's payments to its clients constituted "settlement payments" within the meaning of Section 546(e) because they were "transfer[s] of cash or securities made to complete a securities transaction." 773 F.3d at 422 (citation omitted). That reasoning applies in equal force here, and further brings the Redemption Payments within the safe harbor.

### D.    The Trustee Has Not Pleaded That ADIA Had Actual Knowledge of The Madoff Fraud

This Court recently reaffirmed the judicially created exception to the safe harbor providing that it cannot be invoked by "a subsequent transferee who had actual knowledge of

27

Madoff Securities' fraud." *Picard v. Fairfield*, 2021 WL 3477479, at *4.[11]  Courts created this

exception because the purpose of the safe harbor is to "minimiz[e] the displacement caused in

the commodities and securities markets in the event of a major bankruptcy affecting those

industries"—a "goal [that] is best achieved protecting the reasonable expectations of investors

who believed they were signing a securities contract." *Cohmad*, 2013 WL 1609154, at *4.

However, as Judge Rakoff reasoned, "a transferee who had actual knowledge of the Madoff

'Ponzi' scheme" is not entitled to invoke the safe harbor, because that investor "did not have

such expectations, but was simply obtaining moneys while he could." *Id*.

    That rationale is plainly inapplicable here.  The Complaint is bereft of any allegation that

ADIA had any knowledge, actual or otherwise, of the Madoff fraud.  And while ADIA

acknowledges that this Court has held that the Trustee has adequately pleaded that Sentry knew

of Madoff's fraud in the Fairfield Second Amended Complaint (which is not incorporated by

reference into the instant Complaint), *see Picard v. Fairfield*, 2021 WL 3477479, at *4-5, that

finding cannot defeat the application of the safe harbor.  As this Court observed,  a subsequent

transferee who knows of the fraud and therefore was "simply obtaining moneys while he could,"

*Cohmad*, 2013 WL 1609154, at *4, should not be "permitted to launder what he or she knows to

be fraudulently transferred funds through a nominal third party and still obtain the protections of

§ 546(e)." *Picard v. Fairfield*, 2021 WL 3477479, at *4.  ADIA, however, had no knowledge of

BLMIS's fraud and therefore nothing to "launder" through the Redemption Payments.

Consequently, the judicially-created caveat to the 546(e) safe harbor has no application to ADIA

since the Complaint fails to allege that ADIA knew of the Madoff fraud.

---

[11]  As noted above, ADIA accepts for purposes of this motion that the exception is valid but expressly
preserves the issue, which the Second Circuit has not decided.

Moreover, Sentry's knowledge of the Madoff fraud has no bearing on the securities contracts between Sentry and its customers, including ADIA, pursuant to which the Redemption Payments were consummated.  As discussed above, Section 546(e)'s requirement that the initial transfer be one made "in connection with a securities contract" is satisfied where, as the Trustee alleges here, the initial transferee (Sentry) withdraws funds to make a payment under a securities contract between it and a subsequent transferee (ADIA). *Cohmad*, 2013 WL 1609154, at *8-9; *see also Fishman*, 773 F.3d at 422 ("[A] transfer can be connected to, and can be made in relation to, multiple documents or purposes simultaneously.").  Accordingly, Sentry's knowledge of the BLMIS fraud cannot defeat the application of the safe harbor.

Because the Redemption Payments fall within the safe harbor, the Complaint must be dismissed.

## IV.   THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT ADIA RECEIVED BLMIS CUSTOMER PROPERTY

In addition to the issues described above, the Trustee's Complaint fails to plausibly allege that the Redemption Payments constituted BLMIS customer property fraudulently transferred from BLMIS to Sentry, further necessitating dismissal.

Under the SIPA, "the trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property if and to the extent that such transfer is voidable or void under the provisions of title 11." 15 U.S.C. § 78fff-2(c)(3).  To plead an avoidance claim, thus, the Trustee must plausibly allege:

> facts that support the inference that the funds at issue originated
> with . . . BLMIS, and contain the "necessary vital statistics"—the
> "who, when, and how much" of the transfers to establish that an
> entity was a subsequent transferee of the funds.  At the pleading
> stage, the Trustee is not required to provide a "dollar-for-dollar
> accounting" of the exact funds at issue. However, barebones
> allegations that the funds at issue were transferred to the
> Subsequent Transferees, without more detail, are insufficient.

*Picard v. Shapiro*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015). And, as with any civil complaint, the Trustee must allege facts that, if "accepted as true[] 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible only if the alleged facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. Conclusory allegations and legal conclusions are not presumed to be true. *Id.*

The Trustee's Complaint fails to meet that standard. Rather than alleging facts supporting a reasonable inference that the Redemption Payments contained BLMIS customer property, the Trustee instead avers only that "[d]uring the six years preceding the Filing Date, BLMIS made transfers to Fairfield Sentry of $3,054,000,000," Compl. ¶ 36, and that "approximately $300,00,000 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to [ADIA]." *Id.* ¶ 41. But the Trustee makes no effort to link those transfers. Indeed, the Trustee has not alleged (and cannot allege) that Sentry used only BLMIS customer property to satisfy redemption requests. Nor does the Trustee cure that defect by attaching 74 pages of small type showing thousands of transactions among BLMIS, Sentry, and third parties, which identify neither the parties to those transactions nor which of those transactions constitute the initial transfers of BLMIS customer property that were subsequently transferred to ADIA. Compl., Ex. D. The Trustee appears to be asking ADIA and this Court to assume that, because BLMIS transferred money to Sentry over a long period of time, any money that Sentry transferred to ADIA *must* have been BLMIS customer property and is therefore recoverable. But those are precisely the sort of threadbare allegations that this Court previously rejected in *Shapiro*. 542 B.R. at 119 (dismissing claims where complaint failed to "tie

any initial transfer to any subsequent transfer or Subsequent Transferee").  The Complaint thus

fails to trace the Redemption Payments back to BLMIS customer property, as required under

SIPA.  Accordingly, dismissal is warranted.

　　　In any event, the Trustee's allegations are not only facially implausible but, indeed,

mathematically impossible.  While the Trustee alleges that BLMIS transferred approximately $3

billion to Sentry, Compl. ¶ 36, he simultaneously seeks to avoid nearly $4 billion in alleged

subsequent transfers of "customer property" in the form of redemption payments made to dozens

of defendants, including Sentry's own feeder funds.  *See* Greenwald Decl. ¶ 12, Exs. 7-8.  And

that is on top of the approximately $1 billion that the Trustee seeks to recover from the Fairfield

Greenwich Group Defendants.  *See* Exhibits 8, 10, 12, 13, 14 and 21 to the Fairfield Second

Amended Complaint, Fairfield Action, Dkts.. 286-8, 286-10, 286-12, 286-13, 286-14, 286-21

(Greenwald Decl. Ex. 9); Greenwald Decl. ¶ 13.  Altogether, the Trustee seeks to recover

roughly $2 billion more than the Trustee *himself* alleges that BLMIS transferred to Sentry.[12]

　　　As the Trustee is aware and, indeed, alleges himself, the reason that Sentry distributed

more funds than it received from BLMIS is because, in addition to distributions from BLMIS,

Sentry also continuously received funds from investor subscriptions.  *See, e.g.*, Compl. ¶ 7

(alleging that ADIA wired funds to Sentry for subscriptions).  Sentry itself has stated that it

"made Redemption Payments directly from amounts on hand invested by other subscribers in the

Funds."  Second Amended Complaint, *Fairfield Sentry Ltd. v. Citco Global Custody NV*, Adv.

Proc. No. 19-1122 (SMB) (Bankr. S.D.N.Y. Nov. 26, 2019), Dkt. 70 ¶ 5.  The only reasonable

inference to be drawn, thus, is that Sentry paid redemptions to its investors with money that did

---

[12] That figure does not include amounts received by the alleged subsequent transferees that Sentry sued but
that the Trustee has not.

not originate with BLMIS.  Nothing in SIPA or any other provision of federal law permits the

Trustee to recover funds that are not, and never were, customer property.

The Trustee's failure to plausibly allege that the Redemption Payments contained

customer property is all the more inexcusable given that it is the Trustee, and not ADIA, that has

access to all of the relevant records that would be necessary to substantiate his claim.  The

Trustee sued and settled with the liquidators of Sentry, who in 2011 stipulated to the entry of a

judgment.  Fairfield Settlement, Fairfield Action, Dkt.  69-2 ¶ 1 (Greenwald Decl. Ex. 3);

Compl. ¶ 40.  Pursuant to that agreement, the Trustee has had access to Sentry's records for over

a decade.  *See* Fairfield Settlement ¶ 14.  The Trustee's failure to plausibly allege that ADIA

received customer property despite having access to all information that would be necessary to

substantiate that claim suggests that the Trustee is simply unable to do so.  The Complaint,

therefore, must be dismissed.  *See Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc*.,

712 F.3d 705, 709, 723 (2d Cir. 2013) ("[S]uch imprecise pleading is particularly inappropriate .

. . where the plaintiffs necessarily have access, without discovery, to . . . specific information

from which to fashion a suitable complaint."); *Sapia v. Home Box Off., Inc*., 2018 WL 6985223,

at *8 (S.D.N.Y. Dec. 17, 2018) (same).

## V.    THE COMPLAINT FAILS TO CONTAIN A "SHORT AND PLAIN STATEMENT OF THE CLAIM" IN VIOLATION OF RULE 8(A)(2)

Setting aside the Complaint's myriad other infirmities, it also fails because it lacks "a

short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ.

Pro. 8(a)(2).  That rule is intended to avoid "plac[ing] an unjustified burden on the [Court] and

the party who must respond to it because they are forced to ferret out the relevant material from a

mass of verbiage."  Wright & Miller, 5 Federal Practice and Procedure § 1281 (4th ed. 2021).

"When a complaint does not comply with the requirement that it be short and plain, the court has

the power . . . to strike any portions that are redundant or immaterial, or to dismiss the complaint." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *see also Jones v. Nat'l Comms. & Surveillance Networks*, 266 F. App'x 31, 33 (2d Cir. 2008) (affirming dismissal of "single-spaced 58-page complaint with 87 additional pages of attachments, alleging over twenty separate causes of action against more than 40 defendants"). While dismissal is an extreme remedy, ADIA respectfully submits that it is warranted here.

Notwithstanding that the Trustee has had more than a decade to give ADIA sufficient notice of the claims he asserts, he has instead opted to incorporate by reference an entirely different complaint filed in another proceeding to which ADIA is not a party. *See* Compl. ¶ 35 ("The Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint."). That complaint comprises 798 paragraphs spanning 217 pages, with 111 accompanying exhibits, asserting a panoply of claims including turnover and accounting, preference, subsequent transfer to other defendants, unjust enrichment, conversion, money had and received, aiding and abetting fraud and breach of fiduciary duty, and objections to allowance of claims, all against numerous defendants, none of which is ADIA. And the Trustee purports to incorporate that complaint to plead an essential element of his claim against ADIA, *i.e.*, the avoidability of the initial transfers, which he alleges in only conclusory fashion in the Complaint against ADIA. *See, e.g.*, Compl. ¶ 38 ("The Fairfield Sentry Two Year Initial Transfers were and continue to be customer property within the meaning of SIPA § 78*lll*(4), are avoidable, and recoverable under sections 584(a), 550, and 551 of the Bankruptcy Code.").[13]

---

[13] Section 550(a) of the Bankruptcy Code requires that the initial transfer be "avoided," not just "avoidable," in order for a trustee to recover a transfer to a subsequent transferee.

To make matters worse, the Fairfield Amended Complaint that the Trustee purports to incorporate by reference has since been superseded by the Fairfield Second Amended Complaint. Thus, ADIA is forced to guess not merely to which paragraphs of the purportedly incorporated pleading it must respond, but also to *which pleading* it must respond with respect to an *essential element* of the Trustee's claim. *See, e.g.*, *United States v. U.S. Telecom Long Distance, Inc.*, 2018 WL 4566673, at *2 (D. Nev. Sept. 24, 2018) (wholesale incorporation of notice of apparent liability was impermissible warranting dismissal where it was unclear what the Government intended to incorporate, "leav[ing] [defendant] . . . in the untenable position of not knowing which allegations underpin the government's claims and thus what content [defendant] must respond to in its answer").

The Federal Rules of Civil Procedure do not permit the Trustee to sow such confusion. While Rule 10(c) provides that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading," it does not permit a party to adopt wholesale an entirely separate pleading. *See, e.g.*, *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, 2010 WL 1257803, at *4 (E.D.N.Y. Mar. 26, 2010) ("A Rule 10(c) adoption clause that does little more than make wholesale reference to the contents of a prior pleading exemplifies the kind of incorporation that fails to give the requisite guidance to the responding party.") (internal quotation marks omitted). That is all the more true where, as here, a party attempts to incorporate an entire pleading filed in a *separate action*. *See, e.g.*, *Constellation Energy Commodities Grp. v. Transfield ER Cape, Ltd.*, 801 F. Supp. 2d 211, 223 (S.D.N.Y. 2011) ("A pleading may not adopt other pleadings from a wholly separate action."); *NCUA Bd. v. Morgan Stanley & Co.*, 2014 WL 1673351, at *9 (S.D.N.Y. Apr. 28, 2014) (striking defense where defendant attempted to "incorporate the affirmative defenses in answers filed by defendants *in*

*other actions* into its answer") (emphasis in original); *David v. Bifani*, 2007 WL 1216518, at \*1

(D. Colo. Apr. 24, 2007) (striking attempt "to incorporate by reference wholesale the allegations

in a complaint in a completely separate action").

In *United States v. International Longshoremen's Association*, the district court dismissed

the a civil RICO complaint after concluding that "the Government's proposed method of

pleading necessary elements of its RICO claim by incorporating factual allegations contained in

several prior lengthy criminal and civil RICO pleadings is . . . a blatant violation of Rule

8(a)(2)'s direction that a civil plaintiff provide a 'short and plain statement of the claim.'" 518 F.

Supp. 2d 422, 463 (E.D.N.Y. 2007). Here too, "[t]he [Trustee's] failure to specifically identify

which portions of the hundreds of pages of exhibits it intends to incorporate by reference into the

[Complaint] makes it impossible for . . . [ADIA] to ascertain the nature and extent of the

incorporation." *Id.* at 462. Dismissal is equally appropriate here.

## VI.    THE TRUSTEE'S OWN PLEADINGS ESTABLISH THAT ADIA ACTED IN GOOD FAITH

Finally, assuming that the Trustee is permitted to incorporate the Fairfield Amended

Complaint by reference, that complaint, as well as related proceedings, establish that ADIA is

entitled to invoke the affirmative defense of good faith under Section 550(b), which bars

recovery from subsequent transferees who took for value, in good faith, and without knowledge

of the voidability of the transfer.

### A.    ADIA Gave Value When It Redeemed Its Shares

As several courts have observed, the "value" that a subsequent transferee must give to

assert a defense of good faith need not be reasonably equivalent. *See, e.g.*, *Sec. Inv. Prot. Corp.

v. Bernard L. Madoff Inv. Sec. LLC*, 608 B.R. 181, 195 (Bankr. S.D.N.Y. 2019) ("Value within

the meaning of section 550(b) is 'merely consideration sufficient to support a simple contract,

analogous to the 'value' required under state law to achieve the status of a bona fide purchaser

for value.'") (quoting 5 Collier on Bankruptcy ¶ 550.03 (16th ed. 2019)).  That makes sense

because, unlike, for example, 11 U.S.C. § 548(a)(1)(B), which provides that initial transfers may

be recovered if the debtor "received less than a *reasonably equivalent value* in exchange for such

transfer," (emphasis added), Section 550(b) contains no such language.  "Had Congress intended

to include [such a] requirement[,] . . . it knew how to do so." *Ziparo v. CSX Transp.*, 15 F. 4th

153, 161 (2d Cir. 2021); *see also Russello v. United States*, 464 U.S. 16, 23 (1982) ("Where

Congress includes particular language in one section of a statute but omits it in another section of

the same Act, it is generally presumed that Congress acts intentionally.").  "In addition, the

'value' element . . . looks to what the transferee gave up, rather than what the transferor

received." *Picard v. Fairfield*, 2021 WL 3477479, at *9.

Here the Complaint seeks recovery of transfers from Sentry to ADIA, for ADIA's

redemption of shares in Sentry.  Because Sentry is a BVI company, its relationships with its

shareholders are governed by BVI law under the internal affairs doctrine.  *See Atherton v.

F.D.I.C.*, 519 U.S. 213, 224 (1997); *see also Privy Council Decision*, [2014] UKPC 9, ¶ 10

("[T]he terms of the subscriber's membership of the Fund, which govern the redemption of its

shares … are to be found in the Articles of Association of the Fund").  The Eastern Caribbean

Court of Appeal held that a Sentry investor's surrender of Sentry shares upon Sentry's

redemption of the shares for cash gives good consideration to support the exchange. *Privy

Council Decision*, [2014] UKPC 9, ¶ 7; *Quilvest Finance Ltd. v. Fairfield Sentry Ltd.*, Case Nos.

HCVAP 2011/041-052, ¶ 87.[14]  Therefore, the Complaint and related proceedings show that the

"value" element of the affirmative defense is satisfied.

> ### B.    ADIA Acted in Good Faith and Could Not Have Discovered Madoff's Fraud Where So Many Others Failed

The Second Circuit recently held that, in evaluating a claim of good faith, Courts must

determine:

> 1.   "[W]hat facts the defendant actually knew; this is a subjective inquiry, not 'a theory of constructive notice.'"
>
> 2.   "[W]hether these facts put the transferee on inquiry notice of the fraudulent purpose behind a transaction—that is, whether the facts the transferee knew would have led a reasonable person in the transferee's position to conduct further inquiry into a debtor-transferor's possible fraud."
>
> 3.   "[W]hether 'diligent inquiry [by the transferee] would have discovered the fraudulent purpose' of the transfer."

*Picard v. Citibank N.A.*, 12 F.4th 171, 191-92 (2d Cir. 2021).  Thus, even if the transferee knew

actual facts that would put it on inquiry notice of the fraudulent purpose underlying a transfer,

the transferee still takes the transfer in good faith if a diligent inquiry would not have discovered

the fraudulent purpose of the transfer.  The Fairfield Amended Complaint—which the Trustee

has sought to incorporate in its entirety—shows that a diligent inquiry would not have revealed

the fraud, and thus establishes ADIA's good faith.

In the Fairfield Amended Complaint, the Trustee alleges various "red flags" that he

claims should have alerted investors to the fraudulent purposes of BLMIS's transfers to the

Fairfield Funds.  Even assuming that such facts should have put ADIA on inquiry notice, the

---

[14]  The Eastern Caribbean Court of Appeals' decision is available at: https://www.eccourts.org/quilvest-finance-ltd-and-others-v-fairfield-sentry-ltd/ and a copy is annexed to the Greenwald Decl. as Exhibit 10.

Fairfield Amended Complaint establishes ADIA could not have reasonably discovered the fraudulent purpose of the transfers through a diligent inquiry.

The Fairfield Amended Complaint alleges that some consultants and market analysts opined, at various times, that BLMIS *may* have been involved in improper activities. But most of those suspicions related to lack of transparency, potential self-dealing, or improper trading activities. Only a very small handful of outliers suspected a Ponzi scheme, while *thousands* of other market participants, many extremely sophisticated, disagreed with such opinions and invested in BLMIS, either directly or through feeder funds.

Even if a reasonable investor might have suspected that something was amiss at BLMIS, the Fairfield Amended Complaint shows that a diligent inquiry could not reasonably have discovered the fraudulent purpose underlying the transfers from BLMIS. The Fairfield Amended Complaint alleges, in broad terms, that BLMIS's operations were characterized by secrecy and a lack of transparency, and that Sentry's management "went to great lengths to keep their investors far away from Madoff," Fairfield Amended Complaint ¶ 342, "misled investors," *id.* ¶ 344, "remove[d] all references to BLMIS from their marketing materials" in 2002, *id.* ¶ 346, "actively and repeatedly 'blocked' investors wishing to obtain more information," *id.* ¶ 348, "went to great lengths to cover up Madoff's actual role with the FGG funds" *id.* ¶ 350, and "sold the false assurance that they conducted superior due diligence" *id.* ¶ 362.

The Fairfield Amended Complaint further alleges that SEC began an investigation in 2006 into whether BLMIS was a Ponzi scheme or engaged in other illegal activity, *id.* ¶ 351, but that even the SEC—with its powerful investigative tools, expansive subpoena powers, and broad resources—was stymied by the efforts of BLMIS and Sentry insiders to hinder the government

investigation. *Id.* ¶¶ 351-61.  ADIA, with none of those resources, could not reasonably have been expected to succeed where all others had failed.

The Trustee's own Fairfield Amended Complaint thus indicates that a diligent inquiry would not have enabled ADIA to discover the fraudulent purpose of the transfers.  Accordingly, ADIA is entitled to invoke the good-faith defense at this early stage, and the Complaint should be dismissed on that basis as well.

## **CONCLUSION**

For the foregoing reasons, ADIA respectfully requests that the Court dismiss the Complaint with prejudice.

DATED:    New York, New York              QUINN EMANUEL URQUHART &
          May 11, 2022                         SULLIVAN, LLP


By:    */s/ Marc L. Greenwald*
     Marc L. Greenwald
     Eric M. Kay
     Daniel M. Kelly
     51 Madison Avenue, 22nd Floor
     New York, New York  10010-1601
     Telephone:  (212) 849-7000
     Fax:  (212) 849-7100
     marcgreenwald@quinnemanuel.com
     erickay@quinnemanuel.com
     danielkelly@quinnemanuel.com

     *Attorneys for Defendant Abu Dhabi*
     *Investment Authority*