# EXHIBIT 2

JAMES CLARKSON (JC-7697)
ACTING REGIONAL DIRECTOR
Andrew M. Calamari (AC-4864)
Alexander M. Vasilescu (AV-2575)
Israel Friedman (IF-1958)
Preethi Krishnamurthy (PK-2809)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center
New York, NY 10281
(212) 336-1100

**08 CIV 10791**

**JUDGE STANTON**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------
SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

  - against -

BERNARD L. MADOFF,
BERNARD L. MADOFF INVESTMENT
   SECURITIES LLC,

    Defendants.
------------------------------------------------------------x

RECEIVED DEC 11 2008 U.S.D.C. S.D.N.Y. CASHIERS

____ Civ. ____

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against defendants Bernard L. Madoff ("Madoff") and Bernard L. Madoff Investment Securities LLC ("BMIS"), alleges:

### SUMMARY

1.    The Commission brings this emergency action to halt ongoing fraudulent offerings of securities and investment advisory fraud by Madoff and BMIS, a broker dealer and investment adviser registered with the Commission. From an indeterminate period through the present, Madoff and BMSI has committed fraud through the investment adviser activities of

BMIS. Yesterday, Madoff admitted to one or more employees of BMIS that for many years he has been conducting a Ponzi-scheme through the investment adviser activities of BMIS and that BMIS has liabilities of approximately $50 billion. Madoff told these employees that he intends to distribute any remaining funds at BMIS to employees and certain investors in the investment advisor business, such as family and friends. Such a distribution will be unfair and inequitable to other investors and creditors of BMIS.

2. Expedited relief is needed to halt the fraud and prevent the Defendants from unfairly distributing the remaining assets in an unfair and inequitable manner to employees, friend and relatives, at the expense of other customers.

3. To halt the ongoing fraud, maintain the status quo and preserve any assets for injured investors, the Commission seeks emergency relief, including temporary restraining orders and preliminary injunctions, and an order: (i) imposing asset freezes against the Defendants; (ii) appointing a receiver over BMIS; (iii) allowing expedited discovery and preventing the destruction of documents; and (iv) requiring the Defendants to provide verified accountings. The Commission also seeks permanent injunctions, disgorgement of ill-gotten gains, plus prejudgment interest and civil monetary penalties against all of the Defendants.

## VIOLATIONS

4. By virtue of the conduct alleged herein:

   a. All Defendants directly or indirectly, singly or in concert, have engaged, and are engaging, in acts, practices, schemes and courses of business that constitute violations of Sections 206(1) and 206(2) of the Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1), (2)], and Section 17(a) of

2

the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77q(a) and Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

7. The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), and Section 21(d)(1) of the Exchange Act, 15 U.S.C. § 78u(d)(1), seeking to restrain and enjoin permanently the Defendants from engaging in the acts, practices and courses of business alleged herein.

8. In addition to the injunctive and emergency relief recited above, the Commission seeks: (i) final judgments ordering Defendants to disgorge their ill-gotten gains with prejudgment interest thereon; and (ii) final judgments ordering the Defendants to pay civil penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to Section 214 of the Advisers Act [15 U.S.C. § 80b-14], Section 22(a) of the Securities Act [ 15 U.S.C. § 77v(a)] and Sections 21(e) and 27 of the Exchange Act [ 15 U.S.C. §§ 78u(e) and 78aa].

11. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391. The Defendants, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the transactions, acts, practices and courses of business alleged herein. A substantial part of the events

3

comprising Defendants' fraudulent scheme that gives rise to the Commission's claims occurred in the Southern District of New York, including that BMIS is located and headquared in this District and certain of Madoff and BMIS committed their fraudulent securities and adviser activities in this District.

## THE DEFENDANTS

12.  **Madoff** is a resident of New York City and is the sole owner of BMIS. BMIS' website indicates that Madoff founded BMIS in the early 1960s and that he is an attorney. Madoff is a former Chairman of the board of directors of the NASDAQ stock market. BMIS is both a broker-dealer and investment adviser registered with the Commission. Madoff oversees and controls the investment adviser services at BMIS as well at the overall finances of BMIS.

13.  **BMIS** is a broker-dealer and investment advisor registered in both capacities with the Commission. BMIS engages in three different operations, which include investment adviser services, market making services and proprietary trading. BMIS' website states that it has been providing quality executions for broker-dealers, banks and financial institutions since its inception in 1960;" and that BMIS,"[w]ith more than $700 million in firm capital, Madoff currently ranks among the top 1% of US Securities firms." The most recent Form ADV for BMIS filed in January 2008 with the Commission stated that BMIS had over $17 billion in assets under management, and 23 clients. BMIS represented that its trading strategy for adviser accounts involved trading in baskets of equity securities and options thereon.

## FACTS

14.  From an indeterminate time to the present, Madoff and BMIS have been conducting a Ponzi-scheme through the investment adviser services of BMIS.

4

15. Madoff conducts certain investment advisory business for clients that is separate from the BMIS' proprietary trading and market making activities.

16. Madoff ran his investment adviser business from a separate floor in the New York offices of BMIS.

17. Madoff kept the financial statements for the firm under lock and key, and was "cryptic" about the firm's investment advisory business when discussing the business with other employees of BMIS.

18. In or about the first week of December 2008, Madoff told a senior employee that there had been requests from clients for approximately $7 billion in redemptions, that he was struggling to obtain the liquidity necessary to meet those obligations, but that he thought that he would be able to do so. According to this senior employee, he had previously understood that the investment advisory business had assets under management on the order of between approximately $8-15 billion.

19. On or about December 9, 2008, Madoff informed another senior employee that he wanted to pay 2008 bonuses to employees of the firm in December, which was earlier than employee bonuses are usually paid.

20. Bonuses traditionally have been paid at BMIS in February of each year for the pervious year's work.

21. On or about December 10, 2008, the two senior employees referenced above visited Madoff at the offices of BMIS to discuss the situation further, particularly because Madoff had appeared to these two senior employees to have been under great stress in the prior weeks.

5

22.  At that time, Madoff informed the senior employees that he had recently made profits through business operations, and that now was a good time to distribute it. When the senior employee challenged his explanation, Madoff said that he did not want to talk to them at the office, and arranged a meeting at Madoff's apartment in Manhattan. At that meeting Madoff stated, in substance, that he "wasn't sure he would be able to hold it together" if they continued to discuss the issue at the office.

23.  At Madoff's Manhattan apartment, Madoff informed the two senior employees, in substance, that his investment advisory business was a fraud. Madoff stated that he was "finished," that he had "absolutely nothing," that "it's all just one big lie," and that it was "basically, a giant Ponzi scheme." In substance, Madoff communicated to the senior employees that he had for years been paying returns to certain investors out of the principal received from other, different, investors. Madoff stated that the business was insolvent, and that it had been for years. Madoff also stated that he estimated the losses from this fraud to be approximately $50 billion. One of the senior employees has a personal account at BMIS in which several million had been invested under the management of Madoff.

24.  At Madoff's Manhattan apartment, Madoff further informed the two senior employees referenced above that, in approximately one week, he planned to surrender to authorities, but before he did that, he had approximately $200-300 million left, and he planned to use that money to make payments to certain selected employees, family, and friends.

## FIRST CLAIM FOR RELIEF

**Violations of Sections 206(1) and 206(2) of the Advisers Act**
(Against Madoff and BMIS)
(Fraud Upon Advisory Clients and Breach of Fiduciary Duty
by Investment Adviser)

25.    Paragraphs 1 through 24 are realleged and incorporated by reference as if set forth fully herein.

26.    Madoff and BMIS at all relevant time were investment advisers within the meaning of Section 201(11) of the Advisers Act [15 U.S.C. § 80b-2(11)]

27.    Madoff and BMIS directly or indirectly, singly or in concert, knowingly or recklessly, through the use of the mails or any means or instrumentality of interstate commerce, while acting as investment advisers within the meaning of Section 202(11) of the Advisers Act [15 U.S.C. §80b-2(11)]: (a) have employed, are employing, or are about to employ devices, schemes, and artifices to defraud any client or prospective client; or (b) have engaged, are engaging, or are about to engage in acts, practices, or courses of business which operates as a fraud or deceit upon any client or prospective client.

28.    As described in the paragraphs above, Madoff and BMIS violated Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1), (2)] and unless enjoined will continue to violate Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1), (2)].

## SECOND CLAIM FOR RELIEF

**Violations of Section 17(a)(1) of the Securities Act**
(Against all Defendants)
(Antifraud violations)

29.    Paragraphs 1 through 24 are realleged and incorporated as if set forth

7

fully herein.

30. From at least 2005 through the present, the Defendants, in the offer and sale of securities, by the use of the means and instruments of transportation and communication in interstate commerce or by the use of the mails, directly and indirectly, have employed and are employing devices, schemes and artifices to defraud.

31. The Defendants knew or were reckless in not knowing of the activities described above.

32. By reason of the activities herein described, the Defendants have violated and are violating Section 17(a)(1) of the Securities Act [15 U.S.C. §77q(a)(1)].

### THIRD CLAIM FOR RELIEF

**Violations of Section 17(a)(2) and 17(a)(3) of the Securities Act**
(Against all Defendants)
(Antifraud violations)

33. Paragraphs 1 through 24 are realleged and incorporated by reference as if set forth fully herein.

34. From at least 2005, the Defendants, in the offer and sale of securities, by the use of the means and instruments of transportation and communication in interstate commerce or by the use of the mails, directly and indirectly, have obtained and are obtaining money and property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and have engaged and are engaging in transactions, practices or courses of business which have operated and will operate as a fraud and deceit upon investors.

35. By reason of the activities herein described, the Defendants have violated and are

violating Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §77q(a)(2) and §77q(a)(3)].

## FOURTH CLAIM FOR RELIEF

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5**
(Against all Defendants)
(Antifraud violations)

36.   Paragraphs 1 through 24 are realleged and incorporated by reference as if set forth fully herein.

37.   From at least 2005 through the present, the Defendants, in connection with the purchase and sale of securities, directly and indirectly, by the use of the means and instrumentalities of interstate commerce or of the mails, have employed and are employing devices, schemes and artifices to defraud; have made and are making untrue statements of material fact and have and are omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and have engaged and are engaging in acts, practices and courses of business which operated as a fraud and deceit upon investors.

38.   Defendants knew or were reckless in not knowing of the activities described above.

39.   By reason of the activities herein described, the Defendants have violated and are violating Section 10(b) of the Exchange Act [15 U.S.C. §§78j(b)] and Rule 10b-5 [17 C.F.R. §240.10b-5] promulgated thereunder.

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that the Court grant the following relief:

### I.

Enter judgment in favor of the Commission finding that the Defendants each violated the securities laws and rules promulgated thereunder as alleged herein;

### II.

An Order temporarily and preliminarily, and Final Judgments permanently, restraining and permanently enjoining the Defendants, their agents, servants, employees and attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from committing future violations of Section Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§80b-6(1) and 80b-6(2)].

### III.

An Order temporarily and preliminarily, and Final Judgments permanently, restraining and permanently enjoining the Defendants, their agents, servants, employees and attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from committing future violations of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5.

10

## IV.

An order directing the Defendants to disgorge their ill-gotten gains, plus prejudgment interest thereon.

## V.

Final Judgments directing the Defendants to pay civil money penalties pursuant to Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9], Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

## VII.

Granting such other and further relief as to this Court seems just and proper.

Dated: New York, New York
December 11, 2008

By: /s/ James A. Clarkson
James Clarkson (JC-7697)
Associate Regional Director
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
3 World Financial Center
New York, NY 10281-1022
(212) 336-0178

Of Counsel:
Andrew M. Calamari
Alexander M. Vasilescu
Israel Friedman
Preethi Krishnamurthy