**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (CGM) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 12-01695 (CGM) |
| v. | |
| BORDIER & CIE, | |
| Defendant. | |

**BORDIER & CIE'S REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

ARGUMENT .................................................................................................................... 1

I.    THE TRUSTEE HAS NOT JUSTIFIED HIS FAILURE TO PLAUSIBLY
ALLEGE THAT BORDIER RECEIVED CUSTOMER PROPERTY............................. 1

      A.    The Trustee Fails to Meet His Pleading Burden ......................................... 2

      B.    Tracing Analysis Is Unnecessary Where the Pleadings
Negate Commingling ................................................................................... 4

      C.    The Trustee Has All the Records He Needs ................................................ 6

      D.    The Trustee Has No Claims Against Defendants Who Are
Not "Transferees" ....................................................................................... 7

II.   WHERE, AS HERE, SECTION 546(E) BY ITS TERMS COVERS AN
INITIAL TRANSFER, AN INNOCENT SUBSEQUENT TRANSFEREE
MAY INVOKE THE SAFE HARBOR EVEN IF THE INITIAL
TRANSFEREE MAY NOT................................................................................. 8

III.  THE COMPLAINT DOES NOT COMPLY WITH RULE 8(A)(2). ............................. 14

CONCLUSION ............................................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

Cases

*45 John Lofts, LLC v. Meridian Capital Group LLC (In re 45 John Lofts, LLC)*,
599 B.R. 730 (Bankr. S.D.N.Y. 2019) .......................................................................................3

*Am. Casein Co. v. Geiger (In re Geiger)*,
446 B.R. 670 (Bankr. E.D. Pa. 2010) .....................................................................................15

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
301 F.R.D. 487 (C.D. Cal. 2014) ............................................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................................1, 3, 4

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................................1, 3, 4

*CNB International, Inc. v. Kelleher (In re CNB International, Inc.)*,
393 B.R. 306 (Bankr. W.D.N.Y. 2008) ....................................................................................8

*Edmondson v. RCI Hospitality Holdings, Inc.*,
No. 16-CV-2242, 2020 WL 1503452 (S.D.N.Y. Mar. 30, 2020) ..................................................6

*Francis v. Accubanc Mortg. Corp.*,
No. 19-CV-902 (AJN), 2020 WL 2086038 (S.D.N.Y. Apr. 30, 2020) .........................................16

*Glob. Network Commc'ns, Inc. v. City of N.Y.*,
458 F.3d 150 (2d Cir. 2006)....................................................................................................16

*Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*,
No. 08–15051 (SMB), 2014 WL 47774 (Bankr. S.D.N.Y. Jan. 3, 2014)......................................5

*In re O'Malley*,
601 B.R. 629 (Bankr. N.D. Ill. 2019) .......................................................................................7

*In re UBS AG Sec. Litig.*,
No. 07 Civ. 11225, 2012 WL 4471265 (S.D.N.Y. 2012) .............................................................8

*Kelley v. Westford Special Situations Master Fund, L.P.*,
No. 19-cv-1073, 2020 WL 3077151 (D. Minn. June 10, 2020) ....................................................5

*Picard v. Avellino (In re Bernard L. Madoff Inv. Sec. LLC)*,
557 B.R. 89 (Bankr. S.D.N.Y. 2016)......................................................................................13

*Picard v. BNP Paribas S.A. (In re Madoff)*,
594 B.R. 167 (Bankr. S.D.N.Y. 2018) ........................................................................13

*Picard v. Ceretti (In re Bernard L. Madoff Inv. Sec. LLC)*,
No. 08–99000, 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015) ...........................13

*Picard v. Charles Ellerin Rev. Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*,
No. 08–01789, 2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012) ..........................3, 5

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
454 B.R. 317 (Bankr. S.D.N.Y. 2011) ......................................................................2, 7

*Picard v. Est. of Mendelow*,
560 B.R. 208 (Bankr. S.D.N.Y. 2016) ........................................................................13

*Picard v. Fairfield Inv. Fund Ltd. (SIPC v. Bernard L. Madoff Inv. Sec. LLC)*,
No. 08-01789, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ...........................12

*Picard v. Magnify Inc. (In re Bernard L. Madoff Inv. Sec. LLC)*,
583 B.R. 829 (Bankr. S.D.N.Y. 2018) ........................................................................13

*Picard v. Mayer (In re Bernard L. Madoff Inv. Sec. LLC)*,
No. 08-01789, 2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021) ..........................3, 7

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
515 B.R. 117 (Bankr. S.D.N.Y. 2014) .................................................................. *passim*

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
581 B.R. 370 (Bankr. S.D.N.Y. 2017) ..........................................................................5

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*,
542 B.R. 100 (Bankr. S.D.N.Y. 2015) ......................................................................4, 13

*Sec. Inv. Protec. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
501 B.R. 26 (S.D.N.Y. 2013) ....................................................................................15

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib., Inc.)*,
379 B.R. 5 (Bankr. E.D.N.Y. 2007) ..............................................................................2

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
No. 12 MC 115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ............................. *passim*

*SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*,
620 B.R. 505 (Bankr. S.D.N.Y. 2020) ........................................................................13

*United States v. Henshaw*,
388 F.3d 738 (10th Cir. 2004) ......................................................................................5

*United States v. Int'l Longshoremen's Ass'n,*
518 F. Supp. 2d 422 (E.D.N.Y. 2007) ......................................................................14

Statutes

11 U.S.C. § 546(e) ............................................................................... *passim*

11 U.S.C. § 550(a)(2)...........................................................................................7

Rules

Fed. R. Civ. P. 8(a) ....................................................................................14, 15, 16

Fed. R. Civ. P. 10(c) ....................................................................................14

Fed. R. Civ. P. 11 ....................................................................................16

Fed. R. Civ. P. 12(b)(6)....................................................................................1

Defendant Bordier & Cie ("Bordier" or "Defendant"), by its undersigned counsel, respectfully submits this reply memorandum of law in further support of its motion to dismiss the Complaint (the "Complaint") of Irving Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC (the "Trustee"), pursuant to Federal Rule of Civil Procedure 12(b)(6).

## ARGUMENT

### I.  THE TRUSTEE HAS NOT JUSTIFIED HIS FAILURE TO PLAUSIBLY ALLEGE THAT BORDIER RECEIVED CUSTOMER PROPERTY.

Bordier's Opening Brief (at 9-16, ECF 87) demonstrates that the Trustee fails to plausibly allege that any of the purported subsequent transfers contained Bernard L. Madoff Investment Securities LLC ("BLMIS") customer property and that in many cases the Trustee's own allegations render it impossible that they did.  The Trustee's opposition simply waves off this fatal defect—never even bothering to dispute Bordier's central point that the Trustee has alleged billions of dollars more in subsequent transfers of BLMIS customer property from Fairfield Sentry Limited ("Sentry") than he alleges was ever transferred to Sentry.  This is not a matter of requiring "tracing" or a "dollar-for-dollar accounting".  Nor is the present issue one for expert opinion.  Rather, whether the Complaint plausibly alleges that each transfer at issue contained customer property is a *legal* question to be resolved on a motion to dismiss.  The Trustee's approach of ignoring his responsibilities under *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57, 570 (2007), would impose enormous delay and expense upon Defendants and burden the Court with administering and adjudicating time-consuming, baseless claims not plausibly related to the recovery of customer property.

A.    **The Trustee Fails to Meet His Pleading Burden.**

The Trustee does not deny that he has failed to tie any of the thousands of alleged initial transfers from BLMIS to Sentry to any of the alleged subsequent transfers to Bordier. Instead, he argues he need not do so (Opp. Br. at 6, ECF 96), even as his own authorities support this pleading requirement.  For example, in *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317 (Bankr. S.D.N.Y. 2011) ("*Cohmad I*"), this Court upheld the pleading of the subsequent transfers because "the Trustee alleges that the amounts of Commissions specified by BLMIS on the Payment Schedules *correspond* to the amounts paid by BLMIS to Cohmad and, subsequently, to the Cohmad Representatives".  *Id.* at 341 (emphasis added); *see also* First Am. Compl. Exs. 2, 4, *Picard v. Cohmad Sec. Corp.*, No. 09-01305 ECF 82-2, 82-4 (Bankr. S.D.N.Y. Oct. 8, 2009) (commissions due to eight Cohmad Representatives computed to average $214,722.03 per month from May to December 2008, corresponding exactly to monthly payments from BLMIS to Cohmad of $214,722.03 per month during those months).  In other words, the *Cohmad* complaint linked particular initial transfers from BLMIS to particular subsequent transfers, in stark contrast to the Trustee's vague generalities here.

Likewise, in *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib., Inc.)*, 379 B.R. 5 (Bankr. E.D.N.Y. 2007), the court noted that the linkage between the initial and subsequent transfers was pleaded in the complaint: "The funds transferred by the Controlled Entities and Eurofactors in connection with the Kent Avenue Condominiums were preceded by fraudulent transfers of funds from Allou *in amounts sufficient to cover the transfers* by the Controlled Entities and Eurofactors."  *Id.* at 30 (quoting Amended Complaint ¶¶ 53, 56; emphasis added); *see also id.* at 13 (specifying initial and subsequent transfers during 13-day period); *see also Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117, 150

2

(Bankr. S.D.N.Y. 2014) ("*Merkin I*") ("several subsequent transfers took place contemporaneously or shortly after an initial transfer . . . , *implying linkage*"; emphasis added); *45 John Lofts, LLC v. Meridian Capital Group LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 736-37, 747  (Bankr. S.D.N.Y. 2019) (complaint alleged that two payments totaling $29.4 million were deposited into an account and that $29.4 million was transferred out the same day and next business day; citing complaint ¶¶ 60-69).[1]

    Thus, the cases that say that a trustee "need only allege sufficient facts to show the relevant pathways through which the funds were transferred," *e.g.*, *Ellerin*, 2012 WL 892514, at *3, do not (indeed, cannot) relieve the Trustee of his obligation under *Iqbal* and *Twombly* to plead a plausible linkage between the initial and subsequent transfers.  None of those cases upholds a pleading where, based on the Trustee's own allegations, the purported pathway is a dead-end, as is the case here, where the Trustee has alleged that prior Sentry distributions had exhausted all the BLMIS money at Sentry prior to the Defendant's redemption.  None provides a justification for suing to recover billions of dollars more than the total customer property in question.[2]

---

[1] Similarly, in *Picard v. Charles Ellerin Rev. Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 08–01789, 2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012), the Trustee's submissions showed, for example, that a defendant trust issued defendant Janet Winters a $6,200 check just two weeks after it deposited $25,000 from BLMIS. Resp. to Mot., Attach. A, *Ellerin*, No. 10-05219, ECF 12-1, at 93-94; *id*., Compl. Ex. B, ECF 1, at 1.  In *Picard v. Mayer (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 08-01789, 2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021), the linkage was also clear:  on September 4, 2007, BLMIS transferred $50,000,000 to Legacy Capital; the next day, Legacy Capital transferred $50,000,000 to Montpellier; and two days after that, Montpellier transferred $30,647,210 to what became Kronos Group.  Compl. Ex. B, *Mayer,* No. 20-01316, ECF 1-2, at 16; *id*. Compl. Exs. C, D, ECF 1-3, 1-4.

[2] In a footnote (Opp. Br. p. 10, n.7, ECF 96), the Trustee accuses Bordier of "conveniently ignor[ing]" alleged subsequent transfers which are close in time to an initial transfer.  But the Trustee does not identify which these are or which, in his view, are sufficiently close in time to "infer[] linkage," and as set forth in the Opening Brief (at Point I.B, ECF 87), even temporally proximate transfers were devoid of customer property.

As such, the Trustee has not satisfied the pleading standard set in *Iqbal*, *Twombly*, and *Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R. 100 (Bankr. S.D.N.Y. 2015), when he alleges only dates and amounts of multiple initial and alleged subsequent transfers without any connection between them. *Shapiro*'s requirement that the Trustee "allege facts that support the inference that the funds at issue originated with the BLMIS" and "tie any initial transfer to any subsequent transfer or Subsequent Transferee," 542 B.R. at 119, is not a requirement of dollar-for-dollar accounting or tracing individual dollar amounts, but the bare minimum necessary to notify Bordier of the Trustee's claims so it can prepare its defense.

### B.    Tracing Analysis Is Unnecessary Where the Pleadings Negate Commingling.

The Trustee engages in misdirection when he argues that the commingling of BLMIS and non-BLMIS money at Sentry relieves him of the obligation to allege a plausible linkage between initial and subsequent transfers. As made clear in the Opening Brief, the Trustee's own pleadings establish that there are significant periods of time where there was *no commingling* because there was *no customer property left at Sentry*—it had all been paid out previously. Thus, the payments to Bordier must have come from another source, not from commingled BLMIS and other funds.

For example, as set forth in the Opening Brief, the Trustee alleges that on May 9, 2003, BLMIS transferred $40 million to Sentry. At the same time, the Trustee's allegations that redemption payments were comprised entirely of customer property—while implausible— necessarily mean that this transfer was spent on redemptions by no later than June 2003. *See* Shaiman Decl. Exs. 1, 2, ¶ ¶ 6, 8. Then, on July 11, 2003, BLMIS transferred $55 million to Sentry, which the Trustees' pleadings allege was fully exhausted by no later than July 16, 2003. *See* Shaiman Decl. Exs. 1, 2, ¶ ¶ 6, 8. And on July 22, 2003, BLMIS transferred $25 million to

Sentry, which the Trustee's pleadings allege was spent by no later than September 2003. *See* Shaiman Decl. Exs. 1, 2, ¶ ¶ 6, 8. After that, the Trustee alleges that there were *no* transfers from BLMIS to Sentry until April 1, 2005 (*see* Compl. Ex. B, ECF 1-2). Thus, having used up all funds from BLMIS, there could have been no commingling between October 2003 and April 1, 2005.[3]

Tracing is only an issue where funds are commingled. *See Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 581 B.R. 370, 384-85 (Bankr. S.D.N.Y. 2017) ("*Merkin II*") (tracing necessary where subsequent transfers originated from commingled accounts); *United States v. Henshaw*, 388 F.3d 738, 739 (10th Cir. 2004) (same). Because the Trustee's allegations *negate* the existence of commingling (or customer property) for extensive time periods, the Trustee's authorities for the proposition that commingling does not defeat tracing, *see Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-cv-1073, 2020 WL 3077151, at *4 (D. Minn. June 10, 2020); *Ellerin*, 2012 WL 892514, at *3, or that claims may proceed even though tracing may ultimately prove difficult, *see Merkin I*, 515 B.R. at 152; *Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*, No. 08–15051 (SMB), 2014 WL 47774, at *15 (Bankr. S.D.N.Y. Jan. 3, 2014), are irrelevant. The Trustee has not plausibly alleged that BLMIS money was commingled at Sentry where his own allegations demonstrate there was no BLMIS money left at Sentry.

---

[3] Of course, the long gap between the July 22, 2003 and April 1, 2005 transfers – during which the Trustee alleges that Sentry paid approximately $600 million in redemptions – highlights the implausibility of any allegation that transfers to Bordier contained customer property, especially when the Trustee alleges that Sentry withdrew funds from BLMIS "in order to pay" redemption payments. *See* ("Trustee's Fairfield Amended Complaint"), *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y.) (the "Fairfield Action"), ECF 23, ¶¶ 53, 58, 63, 71, 76, 80, 85, 100, 104, 109, 129, 141, 159.

Contrary to the Trustee's assertion, there is no undisclosed expert methodology here—only arithmetic. The Trustee alleges that every single redemption payment from Sentry during the relevant period was comprised entirely of customer property; therefore, each redemption necessarily decreased the amount of customer property left at Sentry by the amount redeemed. *See* Shaiman Decl. Ex. 2, ¶ 8 (alleging, for example, that "[b]ased on the Trustee's investigation to date, approximately $8,470,371 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Bank Vontobel"). All Bordier does is subtract those redemptions from the amounts received from BLMIS—hardly the province of experts. *See Edmondson v. RCI Hospitality Holdings, Inc.*, No. 16-CV-2242, 2020 WL 1503452, at *6 (S.D.N.Y. Mar. 30, 2020) ("Simple arithmetic, such as ordinary multiplication, is a paradigmatic example of the type of everyday activity that goes on in the normal course of human existence.") (citations and quotation marks omitted).

### C.    The Trustee Has All the Records He Needs.

Seeking to excuse his failure to plead a *prima facie* case, the Trustee argues that he needs discovery from Sentry's management. But the Trustee cannot overcome Bordier's showing that, for over a decade, he has had access to every record he needs.

First, the Trustee claims that he "does not have all of the Fairfield Funds' books and records." But he does not say *what* he needs that he does not have, and this bald assertion is belied by his own pleadings detailing *thousands* of alleged transfers from Sentry. *See* Shaiman Decl. Ex. 1.

Next, he complains that discovery from the FGG defendants is ongoing. But the Trustee is notably silent as to his contractual right to records and cooperation from the Fairfield Liquidators (*see* Settlement Agreement, Fairfield Action, ECF 69-2, ¶ 14)—who admitted before

this Court that as of 2010 they possessed most of the books and records of the feeder funds

Sentry, Fairfield Sigma Limited ("Sigma") and Fairfield Lambda Limited ("Lambda" and,

together with Sentry and Sigma, the "Fairfield Funds").  *See* Declaration of Kenneth Krys, *In re*

*Fairfield Sentry Ltd.*, No. 10-13164 (Bankr. S.D.N.Y. July 16, 2010), ECF 40, ¶¶ 15, 19.  If the

Trustee believed he was missing anything, all he had to do for over a decade was to invoke his

rights against the Fairfield Liquidators and ask.  *See* Opening Br. at 5, ECF 87.

       The Trustee's access to the necessary records distinguishes his authorities, which

offer plaintiffs greater latitude in pleading where subsequent transfers had to be proven through

*defendants'* records.  *See Merkin I*, 515 B.R. at 151; *Cohmad I*, 454 B.R. at 329; *Picard v. Mayer*

*(In re Bernard L. Madoff Inv. Sec. LLC)*, No. 08-01789, 2021 WL 4994435, at *5 (Bankr.

S.D.N.Y. Oct. 27, 2021).[4]  No such latitude should be afforded to a plaintiff who possesses all

the relevant facts yet still fails to plausibly allege that transfers contain customer property.

      **D.**    **The Trustee Has No Claims Against Defendants Who Are Not "Transferees".**

       The Trustee contends that it is of no moment that he alleges billions of dollars

more in customer property was transferred from Sentry than was ever transferred to Sentry

because he can recover from any combination of "transferees" up to the amount avoided.  Opp.

Br. at 12, ECF 96.  This ignores the fact that for at least approximately $2 billion of claims, the

defendant *is not a "transferee."*  Courts have defined an "immediate or mediate transferee"

under 11 U.S.C. § 550(a)(2) as "one who takes in a later transfer down the chain of title or

possession."  *In re O'Malley*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019) (citation and quotation

marks omitted).  Here, for millions of dollars of the Trustee's claims, Bordier never became a

---

[4] The Trustee asserts (Opp. Br. at 12, ECF 96) that Bordier has relevant records, but he does not
articulate what they are, and Bordier is hard-pressed to imagine what they might be.

transferee of customer property because there was no BLMIS money at Sentry to transfer to it. *See* Opening Br., Point I, ECF 87.

This case is thus completely different from those involving re-transfers among subsequent transferees, as in *Merkin I*, 515 B.R. at 149-50, or allocation of liability among subsequent transferees who all indisputably received money from the debtor, as in *CNB International, Inc. v. Kelleher (In re CNB International, Inc.)*, 393 B.R. 306, 332-33 (Bankr. W.D.N.Y. 2008).[5]  Instead, the Trustee here seeks to recover any money a defendant may have received from *Sentry* (*see generally* Shaiman Decl. Ex. 1 (alleging transfers from Sentry to applicable defendant)), without regard to whether, as to that payment, the defendant was a "transferee" of BLMIS.  This he may not do, and the Trustee's claims should be dismissed.

## II.    WHERE, AS HERE, SECTION 546(e) BY ITS TERMS COVERS AN INITIAL TRANSFER, AN INNOCENT SUBSEQUENT TRANSFEREE MAY INVOKE THE SAFE HARBOR EVEN IF THE INITIAL TRANSFEREE MAY NOT.

In his Opposition, the Trustee does not dispute that BLMIS was a stockbroker, that Sentry was a financial institution, or that the initial transfer from BLMIS to Sentry was a settlement payment or a transfer both in connection with a securities contract between Sentry and its investors like Bordier and for the benefit of a financial institution.  Opp. Br. at 13-20, ECF 96. Accordingly, he has conceded those points, *see In re UBS AG Sec. Litig.*, No. 07 Civ. 11225, 2012 WL 4471265, at *11 (S.D.N.Y. 2012), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014), and he may not contest that Section 546(e) applies by its terms to all Sentry's alleged subsequent transfers of BLMIS's initial

---

[5] Indeed, when the Trustee sought to recover an alleged transfer from one defendant to another, he expressly alleged it.  *See* Shaiman Decl. Ex. 2, ¶ 8 (alleging subsequent transfers from BBH to Credit Agricole Miami).

transfers made more than two years before BLMIS's bankruptcy filing.  Moreover, the Trustee

does not dispute that Bordier did not have actual knowledge of Madoff's fraud.

The Trustee argues only that "[b]ased on" Judge Rakoff's ruling in *SIPC v.*

*Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12 MC 115, 2013 WL 1609154

(S.D.N.Y. Apr. 15, 2013) ("*Cohmad II*"), "a subsequent transferee cannot extend the protections

of Section 546(e) where the Trustee has adequately pled the initial transferee's actual

knowledge."  Opp. Br. at 18, ECF 96.  As the Trustee would have it, Sentry's alleged actual

knowledge of Madoff's fraud bars not only Sentry, but also subsequent transferees, from

invoking the safe harbor for initial transfers made more than two years before bankruptcy.[6]

To the contrary, *Cohmad II* directly supports the applicability of the safe harbor to

innocent subsequent transferees and requires that Bordier's motion to dismiss be granted.  In a

ruling that he directed be applied to a large number of adversary proceedings, *see Cohmad II*,

2013 WL 1609154, at *10,[7] and which therefore was not "dicta," (Opp. Br. at 18, ECF 96) Judge

Rakoff held that the relevant "actual knowledge" is that of the party from which the Trustee

seeks recovery:

> (1) Where the Trustee has sought to avoid transfers to an *initial transferee*,
> the avoidance of which would otherwise be barred by Section 546(e) . . . , the
> *initial transferee* will not be able to prevail on a motion to dismiss some or all of

---

[6] The Trustee devotes most of his brief on Section 546(e) to a straw man argument that the safe harbor does not apply directly to subsequent transfers, and that an alleged subsequent transferee can invoke Section 546(e) only to the extent the safe harbor applies to the alleged initial transfer. Bordier has not contended otherwise and bases its safe harbor defense on Section 546(e)'s applicability to the alleged initial transfer from BLMIS to Sentry.  The real issue on this motion is not whether the safe harbor applies to the initial *transfer* (it clearly does), but which *transferees* can invoke it—namely, whether the actual knowledge of the initial transferee can be used to strip the safe harbor's protection from a subsequent transferee that does not have actual knowledge.

[7] *See* Amended Notice of Motion to Dismiss, *SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)* (S.D.N.Y. Aug. 10, 2012), No. 12-MC-00115, ECF 289 (listing proceedings involved in *Cohmad*).

the Trustee's avoidance claims simply on the basis of the Section 546(e) "safe harbor" *if* the Trustee has alleged that the *initial transferee* had actual knowledge of Madoff Securities' fraud; and

(2) Where the Trustee has sought to recover transfers made to a *subsequent transferee*, the avoidance of which would otherwise be barred by Section 546(e) as to the initial transferee, the *subsequent transferee* will not be able to prevail on a motion to dismiss some or all of the Trustee's avoidance claims simply on the basis of the Section 546(e) "safe harbor" *if* the Trustee has alleged that the *subsequent transferee* had actual knowledge of Madoff Securities' fraud.

*Cohmad II*, 2013 WL 1609154, at *1 (emphasis added except for "if").

While paragraph (2) above addressed whether a subsequent transferee would be precluded from asserting the safe harbor where the *subsequent transferee* had actual knowledge of Madoff's fraud, it pointedly did *not* preclude a subsequent transferee from asserting the safe harbor where the *initial transferee* had actual knowledge of Madoff's fraud.[8]  The reason for this can be seen in Judge Rakoff's explanation of his ruling, in which he again focused on the subsequent transferee's knowledge when recovery was sought from that subsequent transferee:

[I]f the allegations adequately allege that a *defendant* had actual knowledge of Madoff's scheme, *such a transferee stands in a different posture from an innocent transferee, even as concerns the application of Section 546(e)*. . . . [T]he purpose of this section is "minimiz[ing] the displacement caused in the commodities and securities markets in the event of a major bankruptcy affecting those industries." . . .  In the context of Madoff Securities' fraud, that goal is best achieved by protecting the reasonable expectations of investors who believed they were signing a securities contract; but a transferee who had actual knowledge of the Madoff "Ponzi" scheme did not have any such expectations, but was simply obtaining moneys while he could.  Neither law nor equity permits such a person to profit from a safe harbor intended to promote the legitimate workings of the securities markets and the reasonable expectations of legitimate investors.
                                        * * *
[T]o the extent that an innocent customer transferred funds to a *subsequent transferee who had actual knowledge of Madoff Securities' fraud*, that subsequent transferee cannot prevail on a motion to dismiss on the basis of Section 546(e)'s safe harbor.  Again, this follows from the general principles enunciated earlier in

---

[8] Indeed, in Judge Rakoff's original "bottom line" order that included the language quoted above, he underlined "subsequent" at the end of paragraph (2).  *See* Order, *Cohmad*, No. 12-MC-00115 (S.D.N.Y. Feb. 12, 2013), ECF 439, at 3.

10

this Opinion.  A defendant cannot be permitted to in effect launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of Section 546(e). . . .  In sum, if the Trustee sufficiently alleges that *the transferee from whom he seeks to recover a fraudulent transfer* knew of Madoff Securities' fraud, *that transferee* cannot claim the protections of Section 546(e)'s safe harbor.

*Id*. at *4, 7 (emphasis added; citations omitted).

In these passages, Judge Rakoff announced an exception to the safe harbor for subsequent transferees parallel to (not greater than) the one he announced for initial transferees, precluding Section 546(e) from being invoked in a situation in which it otherwise would apply if doing so would benefit a defendant (whether an initial or subsequent transferee) with actual knowledge that the funds it received had been fraudulently transferred.  The Trustee's brief concedes the rationale for this rule when it states that "the point of the actual knowledge exception . . . is to restrict transferees with actual knowledge from hiding behind the safe harbor."  Opp. Br. at 19, ECF 96.

*Cohmad II* established that when an initial transferee has actual knowledge of the fraud, and thus knows there is no bona fide settlement payment or securities contract, it cannot invoke the safe harbor to protect the initial transfer.  Similarly, when a subsequent transferee has actual knowledge of the fraud, it cannot invoke the safe harbor that would otherwise apply to the initial transfer, even if the initial transferee was "innocent," because the subsequent transferee knows there is no bona fide settlement payment or securities contract, and allowing the culpable subsequent transferee to invoke the safe harbor would permit it to "launder . . . fraudulently transferred funds through a nominal third party," *i.e.*, the initial transferee.  But where the subsequent transferee lacks actual knowledge of the fraud, it has a "reasonable expectation" that it is receiving a settlement payment pursuant to a securities contract, and that reasonable expectation should be protected by the safe harbor that Congress enacted.

11

In *Picard v. Fairfield Inv. Fund Ltd. (SIPC v. Bernard L. Madoff Inv. Sec. LLC)*,
No. 08-01789, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021), this Court ruled consistently
with the foregoing interpretation of Judge Rakoff's ruling.  The decision begins by quoting
*Cohmad II*'s statement that "if the Trustee sufficiently alleges that the transferee from whom he
seeks to recover a fraudulent transfer knew of Madoff Securities' fraud, that transferee cannot
claim the protections of Section 546(e)'s safe harbor," *id.* at *4 (citing *Cohmad II*, 2013 WL
1609154, at *7).  This Court then dismissed the Trustee's claim against Corina Noel Piedrahita
for subsequent transfers she received from various Fairfield entities[9] because the Trustee "failed
to plead individualized factual allegations demonstrating that [she] had independent actual
knowledge of the BLMIS fraud."  *Fairfield Inv. Fund*, 2021 WL 3477479, at *6.  The Court
dismissed the subsequent transferee claim despite having earlier concluded that the operative
complaint alleged that various initial transferees, including Sentry, had actual knowledge of
Madoff's fraud.  *Id.* at *4.[10]  Accordingly, this Court's ruling in *Fairfield Investment Fund*
compels rejection of the Trustee's misinterpretation of *Cohmad II* and dismissal of his claim
against Bordier.[11]

---

[9] The Trustee's complaint against Corina Noel Piedrahita alleged that she had received
subsequent transfers from, among others, Fairfield Greenwich Limited, which in turn had
received subsequent transfers from Sentry.  *See* Second Am. Compl., Fairfield Action, ECF 286-
12, at 5, *id.* ECF 286-23.

[10] The Court proceeded to address the actual knowledge of each of the various subsequent
transferees even after concluding that one or more of them, as agents and principals of the
Fairfield Funds, had actual knowledge that would be imputed to the Fairfield Funds as initial
transferees.  *Fairfield Inv. Fund*, 2021 WL 3477479, at *4-6.  This would have been unnecessary
had the actual knowledge of the initial transferee been determinative in denying use of the safe
harbor by the subsequent transferees.

[11] The Trustee asserts that "this Court has . . . applied the actual knowledge 'exception' on
numerous occasions" (Opp. Br. at 15, ECF 96), but none of the cases he cites in his
accompanying footnote (*id.* n.9) barred an innocent subsequent transferee from invoking the safe
harbor based on the actual knowledge of the initial transferee.  *See Fairfield Inv. Fund*, 2021 WL
3477479, at *1, 7 (dismissing innocent subsequent transferee); Tr. of May 29, 2019 Hr'g, *Picard*

The Trustee also cites *Picard v. BNP Paribas S.A. (In re Madoff)*, 594 B.R. 167

(Bankr. S.D.N.Y. 2018), and *SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*,

620 B.R. 505 (Bankr. S.D.N.Y. 2020), in support of his argument, Opp. Br. at 18-19, ECF 96,

but neither case discussed whether a subsequent transferee's invocation of Section 546(e) is

barred by the initial transferee's actual knowledge. Instead, both cases focused on the same

straw man argument raised by the Trustee here. *See BNP Paribas*, 594 B.R. at 197 ("the safe

harbor is a defense to the avoidance of the *initial* transfer"); *SunEdison*, 620 B.R. at 514 ("the

safe harbor defense only applies by its terms to the initial transfer"); note 6 *supra*. And to the

extent *BNP Paribas* might be read to imply that an innocent subsequent transferee cannot invoke

the safe harbor, it is inconsistent both with *Cohmad II* and this Court's decision in *Fairfield

Investment Fund*.

The Trustee argues that Bordier's interpretation would "allow an initial

transferee—who had knowledge of the fraud and was unable to satisfy a judgment (like

Sentry)—to place fraudulently transferred moneys with a subsequent transferee out of the reach

of a trustee." Opp. Br. at 19, ECF 96. Such speculation has no relevance here. Sentry did not

---

*v. Square One Fund Ltd. (In re Madoff)*, No. 10-04330 (Bankr. S.D.N.Y. May 29, 2019), ECF
181, at 41 (complaint's allegations "fail to spell out a claim of actual knowledge" against initial
transferee defendant); *Picard v. Magnify Inc. (In re Bernard L. Madoff Inv. Sec. LLC)*, 583 B.R.
829 (Bankr. S.D.N.Y. 2018) (no subsequent transfer claims in complaint at No. 10-05279, ECF
143); *Picard v. Est. of Mendelow*, 560 B.R. 208, 226, 229 (Bankr. S.D.N.Y. 2016) (sustaining
allegations of initial transferees' actual knowledge; dismissing subsequent transferee claims);
*Picard v. Avellino (In re Bernard L. Madoff Inv. Sec. LLC)*, 557 B.R. 89, 116, 125-26 (Bankr.
S.D.N.Y. 2016) (not addressing precise question in light of certain concessions and lack of
challenges by defendants); *Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R.
100, 119 (Bankr. S.D.N.Y. 2015) (dismissing subsequent transfer claims); *Picard v. Ceretti (In
re Bernard L. Madoff Inv. Sec. LLC)*, No. 08–99000, 2015 WL 4734749, at *1, 10 (Bankr.
S.D.N.Y. Aug. 11, 2015) (subsequent transfer claims not subject of motion); *Picard v. Merkin
(In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117, 141, 153 (Bankr. S.D.N.Y. 2014)
(applying safe harbor to subsequent transfers beyond two-year period because complaint failed to
plausibly allege transferees' actual knowledge).

initiate the redemptions; Bordier did. And since Bordier is not alleged to have had actual

knowledge of Madoff's fraud, its dismissal is squarely in line with *Cohmad II* and *Fairfield*

*Investment Fund*.

## III.    THE COMPLAINT DOES NOT COMPLY WITH RULE 8(A)(2).

In its Opening Brief (at 24-25, ECF 87), Bordier showed that the Complaint did

not comply with Rule 8(a)(2)'s requirement of "a short and plain statement of the claim showing

that the pleader is entitled to relief".

In Opposition, the Trustee insists "there is no doubt that the Trustee may

incorporate the Fairfield complaint under Rule 10(c)" (Opp. Br. at 20, ECF 96), but the Trustee's

reliance on that rule distorts beyond all recognition Rule 10(c)'s provision that, "[a] statement in

a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading

or motion." The Trustee does not seek to incorporate "[a] statement", but 798 paragraphs of

statements without specifying which are relevant here, from a document that is no longer an

operative pleading and that was filed in a separate action. *See United States v. Int'l*

*Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 463 (E.D.N.Y. 2007) ("the Government's proposed

method of pleading necessary elements of its RICO claim by incorporating factual allegations

contained in several prior lengthy criminal and civil RICO pleadings is … a blatant violation of

Rule 8(a)(2)'s direction that a civil plaintiff provide a 'short and plain statement of the claim

showing that the pleader is entitled to relief.'"); *see also Amini Innovation Corp. v. McFerran*

*Home Furnishings, Inc*., 301 F.R.D. 487, 492 (C.D. Cal. 2014) ("Although there is some

disagreement on this point …, courts typically hold that Rule 10(c) does not allow a party to

adopt pleadings from a wholly separate action, even if that action is between the same parties.";

citations omitted).

The Trustee relies upon *Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670 (Bankr. E.D. Pa. 2010), which permitted incorporation by reference of pleadings in one adversary proceeding in a different adversary proceeding.  However, the *Geiger* court granted the defendant's motion to dismiss the complaint incorporating the other pleading for failure to comply with Rule 8(a)'s requirement that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "[e]ach allegation must be simple, concise, and direct."  *Id.* at 679.  Thus, even assuming adoption by reference from another proceeding may be permitted in some situations, the resulting pleading must nonetheless satisfy Rule 8(a).

The Trustee's reliance (Opp. Br. at 20-21, ECF 96) on *Sec. Inv. Protec. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 501 B.R. 26 (S.D.N.Y. 2013), is similarly unavailing.  That decision addressed a different question, namely, whether the Trustee may seek avoidance of a subsequent transfer without first obtaining a judgment against the initial transferee avoiding the initial transfer.  *Id.* at 37.  In only one sentence late in the opinion, which the Trustee quotes in part (Opp. Br. at 20-21, ECF 96), did Judge Rakoff mention anything about the adequacy of the complaint.  However, the defendants had not challenged the propriety or scope of the incorporation, and Judge Rakoff did not delve into those questions, let alone rule on the Rule 8(a) issue that Bordier raises.  Therefore, the quote is taken out of context, is dictum, relates to an earlier version of the complaint, and does not bind this Court as law of the case or otherwise.

In any event, that decision is beside the point.  Bordier does not claim that the Trustee's Fairfield Amended Complaint insufficiently alleges avoidability of the initial transfers.  Rather, Bordier's point is that the Trustee's Fairfield Amended Complaint alleges far too much more than avoidability to meet Rule 8(a)(2)'s requirement of a short and plain statement of the

claim showing that the pleader is entitled to relief.  By incorporating the entire Trustee's

Fairfield Amended Complaint, the Trustee puts at issue all claims he asserted against Sentry and

the other Fairfield defendants, including a plethora of irrelevant allegations and exhibits that

have nothing to do with this case, and to which Bordier should not be required to respond.

Further, judicial notice cannot save the trustee's Complaint.  Judicial notice,

particularly of a court decision, cannot substitute for allegations in a complaint, which a plaintiff

must plead subject to the requirements of Rule 11 and which a defendant can then admit or deny,

thus framing the facts and issues in dispute.  To the contrary, judicial notice of a separate

complaint only permits the court to recognize that those allegations were made, not that they are

true.  *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court

may take judicial notice of a document filed in another court not for the truth of the matters

asserted in the other litigation, but rather to establish the fact of such litigation and related

filings." (internal citation and quotation marks omitted)); *Francis v. Accubanc Mortg. Corp.*, No.

19-CV-902 (AJN), 2020 WL 2086038, at *1 (S.D.N.Y. Apr. 30, 2020) (on motion to dismiss,

court took "judicial notice of publicly filed, state-court filings involving these parties" "only to

establish 'the fact of such litigation,' but not for the truth of the matters asserted in that

proceeding").

Finally, the Trustee requests leave to amend his Complaint if the Court sustains

Bordier's Rule 8(a) objection.  Bordier does not object.  All it seeks on this point is a short and

plain statement giving it sufficient notice of the claims the Trustee asserts against it, without

substantial extraneous material from the improper wholesale incorporation by reference.

16

**CONCLUSION**

For the foregoing reasons and the reasons set forth in Bordier's Opening Brief,

Bordier respectfully requests that the Court dismiss the Complaint in its entirety.

Dated:   May 16, 2022
         New York, New York

Respectfully Submitted,

ALLEGAERT BERGER & VOGEL LLP

By: */s/* John F. Zulack _____
John F. Zulack
Lauren J. Pincus
David A. Shaiman
111 Broadway, 20th Floor
New York, New York 10006
Tel. No.: 212-571-0550
Email: jzulack@abv.com
Email: lpincus@abv.com
Email: dshaiman@abv.com

*Counsel for Defendant Bordier & Cie*