**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC and
the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (CGM) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 12-01004 (CGM) |
| v. | |
| FULLERTON CAPITAL PTE LTD., | |
| Defendant. | |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT FULLERTON CAPITAL PTE LTD.'S MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ..............................................................................................3

    I.      THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS.............................3

    II.     FULLERTON AND ITS INVESTMENTS IN THE FAIRFIELD
         FUNDS ..............................................................................................4

ARGUMENT ...............................................................................................................7

    I.      LEGAL STANDARD.......................................................................................7

    II.     SECTION 546(E) DOES NOT BAR RECOVERY FROM
         FULLERTON ..................................................................................................7

         A.     Sentry's Actual Knowledge of Madoff's Fraud Bars Application
              of Section 546(e).........................................................................8

         B.     Fullerton Is Precluded From Relitigating the Actual Knowledge
              Exception ......................................................................................9

         C.     Fullerton is Precluded From Arguing That Section 546(e) Applies
              Independently to Recovery Actions..........................................10

    III.    THE COMPLAINT ADEQUATELY ALLEGES THAT FULLERTON
         RECEIVED BLMIS CUSTOMER PROPERTY UNDER SECTION
         550(A)...........................................................................................15

         A.     Fullerton Misstates the Trustee's Pleading Burden ...................16

         B.     Fullerton's Tracing Arguments Fail on a Motion to Dismiss ....19

    IV.    THE COMPLAINT SUFFICIENTLY PLEADS THE AVOIDABILITY
         OF THE SENTRY INITIAL TRANSFERS........................................................23

    V.     THIS COURT HAS PERSONAL JURISDICTION OVER
         FULLERTON ...............................................................................................25

         A.     Fullerton Purposefully Availed Itself of the Laws and Privileges
              of Conducting Business in New York by Investing in the
              Fairfield Funds ...........................................................................28

              1.     Fullerton's Investments in BLMIS through the BLMIS
                    Feeder Funds Establish Minimum Contacts ..................29

a.   *BLI* Establishes this Court's Jurisdiction Over
Fullerton ........................................................................30

b.   The Forum Selection and Choice of Law Clauses
in the Subscription Agreement Are Strong
Jurisdictional Contacts ...........................................32

2.   Fullerton's Purposeful Use of Its Own and Sentry's New
York Bank Accounts Establishes Specific Personal
Jurisdiction .......................................................................34

B.   Fullerton's Contacts with the Forum are Sufficiently Related to
the Trustee's Claims ..................................................................37

C.   The Exercise of Personal Jurisdiction Over Fullerton is
Reasonable ...............................................................................38

D.   The Trustee Is Entitled to Jurisdictional Discovery ...................38

CONCLUSION .............................................................................................39

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
    599 B.R. 730 (Bankr. S.D.N.Y. 2019) ............................................................15, 17

*ADO Finance, AG v. McDonnell Douglas Corp.*,
    931 F.Supp. 711 (C.D. Cal. 1996) .........................................................................29

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
    98 F.3d 25 (2d Cir. 1996)......................................................................................27

*Aguas Lenders Recovery Grp. v. Suez, S.A.*,
    585 F.3d 696 (2d Cir. 2009)...................................................................................33

*Am. Casein Co. v. Geiger (In re Geiger)*,
    446 B.R. 670 (Bankr. E.D. Pa. 2010) ....................................................................23

*Angell v. Ber Care, Inc. (In re Caremerica, Inc.)*,
    409 B.R. 737 (Bankr. E.D.N.C. 2009)...............................................................18, 19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................7

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
    902 F.2d 194 (2d Cir. 1990)...................................................................................25

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................7

*In re Bernard L. Madoff Inv. Secs. LLC (Picard v. Ida Fishman Recoverable
    Trust)*,
    773 F.3d 411 (2d Cir. 2014)...............................................................................10, 12

*Buchwald Capital Advisors LLC v. JP Morgan Chase Bank, N.A.* (*In re M.
    Fabrikant & Sons)*,
    No. 06-12737 (SMB), 2009 WL 3806683 (Bankr. S.D.N.Y. Nov. 10, 2009).........19

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)...........................................................................................26, 27

*Cargo Partner AG v Albatrans, Inc.*,
    352 F.3d 41 (2d Cir. 2003).......................................................................................7

*Chase Manhattan Bank v. Banque Generale Du Com.*,
 No. 96 CIV. 5184 (KMW), 1997 WL 266968 (S.D.N.Y. May 20, 1997)..............................33

*Chloe v. Queen Bee of Beverly Hills, LLC*,
 616 F.3d 158 (2d Cir. 2010).......................................................................26, 27, 38

*Citibank, N.A. v. Picard*,
 142 S. Ct. 1209 (2022)........................................................................................4

*Cromer Fin. Ltd. v. Berger*,
 137 F. Supp. 2d 452 (S.D.N.Y. 2001).......................................................................26

*CutCo Indus., Inc. v. Naughton*,
 806 F.2d 361 (2d Cir. 1986)..............................................................................29, 32

*Daimler AG v. Bauman*,
 571 U.S. 117 (2014)..........................................................................................26

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*,
 290 F.3d 42 (1st Cir. 2002).................................................................................29

*DeMasi v. Benefico*,
 567 F. Supp. 2d 449 (S.D.N.Y. 2008).......................................................................25

*Dery v. United States (In re Bridge)*,
 90 B.R. 839 (E.D. Mich. 1988)..............................................................................23

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
 722 F.3d 81 (2d Cir. 2013)..................................................................................25

*Eldesouky v. Aziz*,
 No. 11–CV–6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014) ................................34

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
 651 F.3d 329 (2d Cir. 2011)..................................................................................12

*Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
 397 F. Supp. 3d 323 (S.D.N.Y. 2019).......................................................................29

*Ferrari v. Cnty. of Suffolk*,
 790 F. Supp. 2d 34 (E.D.N.Y. 2011) .......................................................................25

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
 141 S. Ct. 1017 (2021).....................................................................................26, 37

*Fowler v. Caliber Home Loans, Inc.*,
 277 F. Supp. 3d 1324 (S.D. Fla. 2016) .....................................................................20

*GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*,
667 F. Supp. 2d 308 (S.D.N.Y. 2009)........................................................................4

*Gowan v. Amaranth Advisors, LLC (In re Dreier LLP)*,
Adv. Pro. Nos. 10-03493 (SMB) & 10-05447 (SMB), 2014 WL 47774
(Bankr. S.D.N.Y. Jan. 3, 2014).............................................................................22

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
425 F.3d 158 (2d Cir. 2005)...................................................................................27

*Hau Yin To v. HSBC Holdings PLC*,
No. 15-CV-3590-LTS-SN, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd*,
700 F. App'x 66 (2d Cir. 2017) .............................................................................35

*Hill v. HSBC Bank PLC*,
207 F. Supp. 3d 333 (S.D.N.Y. 2016)..............................................................35, 36

*HSH Nordbank AG N.Y. Branch v. Street*,
No. 11 CIV. 9405 (DLC), 2012 WL 2921875 (S.D.N.Y. July 18, 2012)..............34

*In re Int'l Admin. Servs., Inc.*,
408 F.3d 689 (11th Cir. 2005) .........................................................................16, 23

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945).................................................................................................26

*In re J.P. Jeanneret Assoc., Inc.*,
2011 WL 335594 (S.D.N.Y. Jan. 31, 2011) .............................................................7

*Kelley v. Safe Harbor Managed Acct. 101, Ltd.*,
31 F.4th 1058 (8th Cir. Apr. 21, 2022) ............................................................11, 14

*Kelley v. Westford Special Situations Master Fund, L.P.*,
No. 19-cv-1073, 2020 WL 3077151 (D. Minn. June 10, 2020) ..................20, 21, 22

*Kiobel v. Royal Dutch Petroleum Co.*,
No. 02 CIV. 7618 (KMW)(HBP), 2009 WL 3817590 (S.D.N.Y. Nov. 16,
2009) ....................................................................................................................38, 39

*Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*,
No. 07-MD-1902 (JSR), 2013 WL 12191844 (S.D.N.Y. Mar. 25, 2013)................9

*Lavazza Premium Coffees Corp. v. Prime Line Distribs. Inc.*,
No. 20 CIV. 9993 (KPF), 2021 WL 5909976 (S.D.N.Y. Dec. 10, 2021) ..............33

*Letom Mgmt. Inc. v. Centaur Gaming, LLC*,
No. 17 Civ. 3793 (PAE), 2017 WL 4877426 (S.D.N.Y. Oct. 27, 2017) ................35

*Licci ex rel. Licci v. Lebanese Can. Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013)................................................................................36

*Licci v. Lebanese Canadian Bank, SAL*,
    20 N.Y.3d 327 (2012) ....................................................................................36

*In re Lyondell Chem. Co.*,
    543 B.R. 127 (Bankr. S.D.N.Y. 2016)..............................................................29

*In re Madoff Securities*,
    12-MC-115, Section 546(e) Briefing Order, ECF No. 119 (S.D.N.Y. filed
    May 16, 2012)................................................................................................12

*McGee v. Int'l Life Ins. Co.*,
    335 U.S. 220 (1957).........................................................................................27

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996)...............................................................................27

*Milliken v. Meyer*,
    311 U.S. 457 (1940).........................................................................................26

*In re MJK Clearing, Inc.*,
    371 F.3d 397 (8th Cir. 2004) ............................................................................20

*Motors Liquidation Co. Avoidance Action Trust v. JPMorgan Chase Bank, N.A.*
    (*In re Motors Liquidation Co.*),
    565 B.R. 275 (Bankr. S.D.N.Y. 2017)..............................................................33

*New Hampshire v. Maine*,
    532 U.S. 742 (2001).........................................................................................9

*Off. Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic
    Bank*,
    549 B.R. 56 (Bankr. S.D.N.Y. 2016).............................................................36, 37

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013).............................................................................22

*Picard v. Avellino*,
    557 B.R. 89 (Bankr. S.D.N.Y. 2016)................................................................9

*Picard v. BNP Paribas*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018)........................................................ *passim*

*Picard v. Bureau of Labor Ins. (In re Bernard L. Madoff)*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) (Lifland, J.)...................................... *passim*

*Picard v. Ceretti, et al.*,
Adv. Pro. No. 09-01161 (SMB), 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015) ................................................................................................................9

*Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*,
Adv. Pro. Nos. 10-04398 (BRL), 10-05219 (BRL), 2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012) ..............................................................................15, 17, 22

*Picard. v. Citibank, N.A. (In re BLMIS)*,
12 F.4th 171 (2d. Cir. 2021) ..............................................................................4

*Picard v. Cohen*,
Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296 (Bankr. S.D.N.Y. Apr. 25, 2016) ...........................................................................................................10

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
454 B.R. 317 (Bankr. S.D.N.Y. 2011) .............................................................21

*Picard v. Est. of Igoin (In re BLMIS)*,
525 B.R. 871 (Bankr. S.D.N.Y. 2015) .........................................................29, 35

*Picard v. Est. of Seymour Epstein (In re BLMIS)*,
No. 1:2l-cv-02334 (CM), 2022 WL 493734 (S.D.N.Y. Feb. 17, 2022) ................13

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*,
627 B.R. 546 (Bankr. S.D.N.Y. 2021) ......................................................26, 27, 37

*Picard v. Fairfield Investment Fund Ltd. (In re BLMIS)*,
Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ................................................................................................... *passim*

*Picard v. Fullerton Capital Pte. Ltd.*, Adv. Pro. 12-01004, Motion to Withdraw
the Reference, ECF No. 5 (Bankr. S.D.N.Y., filed April 2. 2012) ...................3, 9, 24

*Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*,
Adv. Pro. Nos. 08-01789 (SMB), 10-04932 (SMB), 2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10, 2014) ................................................................28, 31

*Picard v. Lowrey*,
596 B.R. 451 (S.D.N.Y. 2019), *aff'd sub nom. Picard v. Gettinger*, 976 F.3d 184 (2d Cir. 2020) ..........................................................................................10, 24

*Picard v. Magnify, Inc.*,
583 B.R. 829 (Bankr. S.D.N.Y. 2018) ...............................................................9

*Picard v. Maxam Absolute Return Fund, L.P. (In re Bernard L. Madoff Inv. Sec. LLC)*,
460 B.R. 106 (Bankr. S.D.N.Y. 2011) .......................................................26, 28, 38

*Picard v. Mayer (In re BLMIS)*,
   Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435 (Bankr. S.D.N.Y. Oct.
   27, 2021) ................................................................................................................16

*Picard v. Mendelow et al.*,
   560 B.R. 208 (Bankr. S.D.N.Y. Sept. 28, 2016) ....................................................9

*Picard v. Merkin*,
   515 B.R. 117 (Bankr. S.D.N.Y. 2014) ................................................9, 15, 17, 21

*Picard v. Merkin (In re BLMIS)*,
   440 B.R. 243 (Bankr. S.D.N.Y. 2010) ...................................................................7

*Picard v. Merkin (In re BLMIS)*,
   581 B.R. 370 (Bankr. S.D.N.Y. 2017) ............................................................20, 21

*Picard v. Shapiro*,
   542 B.R. 100 (Bankr. S.D.N.Y. 2015) ........................................................9, 17, 18

*Picard v. Square One Fund Ltd.*,
   Bench Ruling on Motion to Dismiss, Adv. Pro. No. 10-04330 (Bankr.
   S.D.N.Y. May 29, 2018) .........................................................................................9

*In re Picard, Trustee for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
   917 F.3d 85 (2d Cir. 2019) ......................................................................11, 30, 38

*Porina v. Marward Shipping Co.*,
   521 F.3d 122 (2d Cir. 2008) .................................................................................26

*Pramer S.C.A. v. Abaplus Int'l Corp.*,
   76 A.D.3d 89 (1st Dep't 2010) .............................................................................35

*Roth v. Jennings*,
   489 F.3d 499 (2d Cir. 2007) ...................................................................................7

*Rothman v. Gregor*,
   220 F.3d 81 (2d Cir. 2000) ...............................................................................2, 25

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
   624 F.3d 123 (2d Cir. 2010) .................................................................................25

*Sacody Techs., Inc. v. Avant, Inc.*,
   862 F. Supp. 1152 (S.D.N.Y. 1994) .....................................................................33

*Sapia v. Home Box Office, Inc.*
   No. 18 Civ. 1317 (CM), 2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018) ................22

*SAS Grp., Inc. v. Worldwide Inventions, Inc.*,
   245 F. Supp. 2d 543 (S.D.N.Y. 2003) ................................................................30

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   531 B.R. 439 (Bankr. S.D.N.Y. 2015) ..................................................................9

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
   501 B.R. 26 (S.D.N.Y. 2013) ..................................................................11, 14, 24

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   No. 12-MC-115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) (Rakoff, J.)
   .................................................................................................8, 12, 14, 15

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
   379 B.R. 5 (Bankr. E.D.N.Y. 2007) ....................................................15, 16, 17, 18

*SIPC v. Bernard L. Madoff Securities LLC (In re: BLMIS)*,
   Case No. 12-MC-115 (JSR), Order, ECF No. No. 119 (Bankr. S.D.N.Y., filed
   May 22, 2012) ..................................................................................................9, 24

*Solution Tr. v. 2100 Grand LLC (In re AWTR Liquidation Inc.)*,
   548 B.R. 300 (Bankr. C.D. Cal. 2016) ................................................................20

*Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*,
   2000 WL 1741550 (5th Cir. Dec. 11, 2000) ........................................................23

*SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*,
   620 B.R. 505 (Bankr. S.D.N.Y. 2020) ................................................................13

*Sunward Elecs., Inc. v. McDonald*,
   362 F.3d 17 (2d Cir. 2004) ..........................................................................32, 34

*Tamam v. Fransabank SAL*,
   677 F. Supp. 2d 720 (S.D.N.Y. 2010) ................................................................35

*Taylor v. Sturgell*,
   553 U.S. 880 (2008) ............................................................................................9

*Tousa Homes, Inc. v. Palm Beach Newspapers, Inc. (In re TOUSA, Inc., et al.)*,
   442 B.R. 852 (Bankr. S.D. Fla. 2010) ................................................................18

*Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*,
   571 F.3d 221 (2d Cir. 2009) ................................................................................29

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
   916 F.3d 143 (2d Cir. 2019) ................................................................................27

*United States v. Henshaw*,
    388 F.3d 738 (10th Cir. 2004) .........................................................................................20, 23

*Universal Trading & Inv. Co. v. Tymoshenko*,
    No. 11 Civ. 7877 (PAC), 2012 WL 6186471 (S.D.N.Y. 2012)...............................................35

*In re Viropharma, Inc.*,
    No. CIV.A. 02-1627, 2003 WL 1824914 (E.D. Pa. Apr. 7, 2003) .........................................20

*Walden v. Fiore*,
    571 U.S. 277 (2014)..............................................................................................................31

*Zucker v. Oconee Reg'l Healthcare Found., Inc. (In re Oconee Reg'l Health Sys., Inc.)*,
    621 B.R. 64 (Bankr. M.D. Ga. 2020).....................................................................................18

**Statutes**

11 U.S.C. § 546(e) ....................................................................................................................7, 11

**Rules**

Fed. R. Civ. P. 8(a)(2)..................................................................................................................7

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff"), respectfully submits this memorandum of law and supporting declaration of Nicholas J. Cremona ("Cremona Decl."), in opposition to defendant Fullerton Capital PTE Limited's (the "Defendant" or "Fullerton") motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) (the "Motion").

## PRELIMINARY STATEMENT

As part of the Trustee's continuing efforts to recover BLMIS customer property that was stolen as part of Madoff's Ponzi scheme, this action seeks to recover approximately $10.3 million of customer property that Fullerton received from Fairfield Sentry Limited ("Sentry"). Fullerton purposefully invested in BLMIS through Sentry, (together with Fairfield Sigma Limited, the "Fairfield Funds"), entities expressly constituted to funnel investments to BLMIS in New York. Nonetheless, Fullerton moves to dismiss the Trustee's Complaint, arguing that (i) the safe harbor under Section 546(e) bars avoidance and recovery, (ii) the Trustee has failed to allege the elements necessary to recover under Section 550(a), (iii) the Trustee has failed to provide sufficient notice of his claims, and (iv) this Court does not have jurisdiction. Fullerton's arguments fail.

First, the Trustee plausibly alleges the avoidability of the initial transfers from BLMIS based on Sentry's actual knowledge of fraud, and therefore the safe harbor under Section 546(e) is inapplicable and does not bar recovery from Fullerton. In its Motion, Fullerton argues that there is no actual knowledge exception "outside the two-year look back" and, in the alternative, Fullerton's knowledge as a subsequent transferee (and not the Fairfield Funds' knowledge as initial transferees) should determine the avoidability of the initial transfers from BLMIS. Mot. at 11-12.

1

These arguments conflict with the plain language of the statute and precedent in this SIPA liquidation proceeding establishing that Section 546(e) does not independently protect against the recovery of avoidable fraudulent transfers from a subsequent transferee.

Second, the Trustee plausibly alleges that Fullerton received customer property under Section 550(a) by outlining the relevant pathways through which customer property was transferred from BLMIS to the Fairfield Funds and subsequently to Fullerton.  The Trustee further alleges the necessary vital statistics (*i.e.,* the "who, when, and how much") the subsequent transfer Fullerton received.  At this stage of the litigation, nothing more is required.  Fullerton's arguments that the Trustee must meet a heightened pleading burden are plainly inappropriate on a motion to dismiss and run contrary to well established case law in this liquidation.

Third, the Trustee's Complaint provides a "short and plain statement" consistent with Rule 8 showing that the Trustee is entitled to relief.  Fullerton asserts that the Trustee's incorporation by reference of his complaint against Sentry and other related parties violates Federal Civil Procedure Rules 10(c) and 8.  Not only does this argument conflict with precedent from the District Court, this Court may take judicial notice of the Trustee's Second Amended Complaint and the Court's own opinion in *Picard v. Fairfield Investment Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*"), in which the Court held that the Second Amended Complaint plausibly alleged Sentry's actual knowledge of fraud. *See Rothman v. Gregor*, 220 F.3d 81, 91–92 (2d Cir. 2000) (taking judicial notice of later filed complaint in related proceeding).

Finally, the Complaint establishes this Court's jurisdiction over Fullerton. Fullerton purposefully used U.S. bank accounts to both subscribe into and redeem out of Sentry, which standing alone, provides sufficient basis for personal jurisdiction.   Fullerton's subscription

agreement with Sentry also required it to submit to New York jurisdiction and agree to forum selection and choice of law clauses, all tied to New York.  These New York contacts also support the exercise of jurisdiction here.  Additionally, Fullerton's agents met with Fairfield and purposely invested in the Fairfield Funds, knowing and intending that BLMIS in New York would be the *de facto* investment manager, broker dealer, and custodian of Sentry's (and Fullerton's) investments. Fullerton knew Sentry fed substantially all of their funds into BLMIS and that BLMIS was essential to its investments. Bernstein Decl., Ex. G, *Picard v. Fullerton Capital Pte Ltd.*, Adv. Pro. 12-01004 (CGM), ECF No. 105-8.  Investing in BLMIS was the entire point.  These facts, plus the additional contacts discussion herein collectively establish jurisdiction.

The Trustee respectfully requests that the Court deny Fullerton's Motion in its entirety.

## STATEMENT OF FACTS

## I.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS

Madoff founded and operated BLMIS from New York until its collapse in 2008.  *See* Complaint ("Compl.") ¶ 31.  BLMIS had three principal business units: (i) a proprietary trading business; (ii) a market-making business; and (iii) an investment advisory business (the "IA Business").  *Id.* at ¶ 23.  For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy (the "SSC Strategy"), which involved (a) investing in a basket of common stocks from the Standard & Poor's 100 Index, (b) buying put options and selling call options to hedge against price changes in the underlying basket of stocks, and (c) purchasing U.S. treasury bills when the money was out of the market.  *Id.* ¶¶ 24-25.  In reality, BLMIS operated a Ponzi scheme through its IA Business.  *Id.* ¶ 28.  On December 11, 2008, Madoff's fraud was publicly revealed and he was arrested for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud.  *Id.* ¶ 11.

The extent of damage Madoff caused was made possible by BLMIS "feeder funds"—large investment funds created to funnel investors' funds into BLMIS. *See Picard. v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 179 (2d. Cir. 2021), cert. denied sub nom. *Citibank, N.A. v. Picard*, 142 S. Ct. 1209 (2022) ("*Citibank*"). Fullerton knowingly invested in Sentry, one of the largest of these feeder funds. Compl. ¶ 6.

## II.    FULLERTON AND ITS INVESTMENTS IN THE FAIRFIELD FUNDS

Fullerton, formerly known as Goldtree Investment Private Limited, was at all relevant times an indirect, wholly owned subsidiary of Temasek, Singapore's state-owned investment company with over $100 billion of assets under management. Compl. ¶ 3; Cremona Decl., Ex. 7 at p. 9. Fullerton Fund Management ("Fullerton Management"), another wholly owned subsidiary of Temasek, managed and operated Temasek's global investment portfolio, including those investments held by Fullerton. Cremona Decl, Ex. 1. Fullerton was an investment holding company for Fullerton Management and did not have any employees. Cremona Decl., Ex. 7 at pp. 9, 18. Fullerton was fully managed and operated by employees of Temasek and Fullerton Management. *Id.* at 18. Temasek, Fullerton Management, and Fullerton all had the same physical address and contact information at 60B Orchard Road, #06-18 Tower 2, TheAtrium@Orchard, Singapore 238891. *Id.* at 9; Cremona Decl., Ex. 2. The email addresses for both Fullerton Management and Fullerton employees were "@fullerton.com.sg" and employees of Temasek also had Fullerton email addresses. Cremona Decl. Exs. 2, 8-9. Given this overlap in corporate functions and the control exercised over Fullerton by Temasek and Fullerton Management over Fullerton, the actions of Fullerton Management and Temasek should be imputed to Fullerton. *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 319 (S.D.N.Y. 2009). (Holding that common ownership and overlapping directors and executives, financial dependency of the

subsidiary on the parent, involvement by the parent in the hiring of staff, and the parent's control

of the subsidiary's marketing and operational policies all support a finding that subsidiary is a

"mere department or shell of a parent for jurisdictional purposes").

The Fairfield Funds were controlled by Fairfield Greenwich Group ("FGG"), a *de facto*

partnership with its principal place of business in New York. *See Picard v. Fairfield Inv. Fund*

*Ltd. (In re Bernard L. Madoff)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479, at *9 (Bankr.

S.D.N.Y.); *see also* Compl. ¶ 7.  Sentry was a U.S. dollar-denominated fund that invested 95% of

its assets with BLMIS.  Compl. ¶ 2.  FGG also conducted key operations from its New York office.

*Id.*, Cremona Decl. Exs. 4-6.  For example, Sentry subscriptions were approved or rejected by a

New York-based FGG partner.  *Id.*, Ex. 10.  FGG's Finance Group, which was responsible for

processing subscriptions and redemptions, performing due diligence, communicating with

investors, and providing investor support, was also located in New York.  *Id.*, Ex. 3.

Key employees of Temasek and Fullerton corresponded with FGG regarding potential

investments in Sentry and BLMIS, and visited New York to meet with FGG employees.  For

example, Antony Dirga, who held positions at both Temasek and Fullerton Management, visited

New York to attend a meeting at FGG's offices.  *See Id.* at Exs. 11-12, 14.

Fullerton executed a subscription agreement with Sentry as Goldtree Investments Private

Limited. *Id.,* Ex. 13.  The subscription agreement listed Fullerton Management as the advisor.  The

subscription agreement incorporated the Fairfield Funds' Private Placement Memoranda

("PPMs"), and by signing, investors warranted that they "received and read a copy of the [PPMs]."

*Id.* ¶ 7.

The subscription agreement included additional connections to New York.  The agreement

contained a New York choice of law provision: "This Agreement shall be governed and enforced

in accordance with the laws of New York, without giving effect to its conflict of laws provisions."

*Id.*, ¶ 16.   Under a heading titled *New York Courts*, the agreement contained a New York venue and forum selection clause:

> Subscriber agrees that any suit, action or proceeding ("Proceeding") with respect to this Agreement and the Fund may be brought in New York.   Subscriber irrevocably submits to the jurisdiction of the New York courts with respect to any Proceeding and consents that service of process as provided by New York law may be made upon Subscriber in such Proceeding, may not claim that a Proceeding has been brought in an inconvenient forum.

*Id.,* ¶ 19.   The agreement also instructed investors to send subscription payments to Sentry's bank account with HSBC Bank USA in New York (the "HSBC USA Account").   *Id.,* ¶ 3.   Fullerton also provided bank information for receiving redemptions at The Bank of New York, New York in the name of "Goldtree Investments Private Limited's" (the "Bank of New York Account") to receive redemption funds from Sentry in U.S. dollars.   *Id.*, Annexure A.

Prior to BLMIS's collapse, Fullerton received approximately $10,290,445 in one subsequent transfer of customer property from Sentry.   Compl. ¶ 41, Ex. C.   Following the collapse, the Trustee filed an adversary proceeding against the Fairfield Funds and related defendants to avoid and recover fraudulent transfers of customer property in the amount of approximately $3 billion.   *Id.*  ¶ 35.   In 2011, the Trustee settled with the Fairfield Funds.   *Id.* at ¶ 40.   As part of the settlement, Sentry consented to a judgment in the amount of $3.054 billion but repaid only $70 million in the BLMIS estate.   *Id.*   The Trustee then commenced a number of adversary proceedings against defendants such as Fullerton to recover the approximately $3 billion in stolen customer property.   *Id.* at ¶ 35.

6

**ARGUMENT**

## I. LEGAL STANDARD

When considering motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule"), applicable to an adversary proceeding under Fed. R. Bankr. P. 7012, "the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences" in the Trustee's favor. *In re J.P. Jeanneret Assoc., Inc*., 2011 WL 335594, at *8 (S.D.N.Y. Jan. 31, 2011) (citing *Cargo Partner AG v Albatrans, Inc*., 352 F.3d 41, 44 (2d Cir. 2003); *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007)).  To survive the motion to dismiss, the pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2).  The allegations need only meet the "plausibility" standard, such that they "'nudge[] [the] claims' … 'across the line from conceivable to plausible.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

The complaint here sets forth in full the elements of the Trustee's claims, pleading Defendant's receipt of a subsequent transfer of customer property and the grounds upon which the Trustee seeks to recover such transfer made to Defendant.  Thus, dismissal of the Complaint at this juncture is inappropriate.  *See Picard v. Merkin (In re BLMIS)*, 440 B.R. 243, 254-71, 273 (Bankr. S.D.N.Y. 2010).

## II. SECTION 546(E) DOES NOT BAR RECOVERY FROM FULLERTON

Section 546(e) provides a safe harbor for the avoidance of certain initial transfers made outside the two-year period referenced in Section 548(a)(1)(A).  *See* 11 U.S.C. § 546(e)

("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may

not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title." (emphasis added)).

However, in *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-MC-115, 2013 WL

1609154, at *1 (S.D.N.Y. Apr. 15, 2013) (Rakoff, J.) ("*Cohmad*"), the District Court held that an

initial transferee's actual knowledge of Madoff's fraud precluded application of the Section 546(e)

safe harbor, thereby allowing the Trustee to avoid transfers made by BLMIS prior to the two-year

period referenced in Section 548(a)(1)(A).  Fullerton's argument that Section 546(e) bars recovery

against it notwithstanding Fairfield's actual knowledge, misreads *Cohmad* and ignores this Court's

application of that decision in another subsequent transfer recovery action. *See Picard v. BNP

Paribas*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) ("*BNP*").   Fullerton's arguments must be

rejected because Fullerton misinterprets the law and because law of the case dictates otherwise.

A.      **Sentry's Actual Knowledge of Madoff's Fraud Bars Application of Section
        546(e)**

In its Motion, Fullerton sets forth at length the requirements of Section 546(e) and how

they are presumably met in this case in multiple ways with respect to the initial transfers to Sentry,

as established by *Cohmad*.  *See* Mot. at 5-15.  None of this matters.[1]  As Fullerton concedes, this

Court has previously found that the Trustee has sufficiently pled that the initial transferee Sentry

had actual knowledge of Madoff's fraud and that such initial transfers are avoidable. *See* Mot. at

11 (citing *Fairfield Inv. Fund*, 2021 WL 3477479, at *4–5).  As such, Section 546(e) does not bar

the avoidance of initial transfers made to Sentry, and those transfers may be recovered from

Fullerton, regardless of whether Sentry or Fullerton qualify as financial institutions, their

---

[1] The Trustee does not concede that any agreement or transfers between Sentry and Fullerton activate the safe harbor under Section 546(e).  Sentry's agreement with and transfers to Fullerton are simply not relevant to application of Section 546(e), because whether the initial transfers from BLMIS to Sentry are avoidable turns on Sentry's actual knowledge of fraud at BLMIS, not Fullerton's knowledge as a subsequent transferee.

agreement qualifies as securities contracts, or their transfers qualify as settlement payments.[2]  The

Trustee therefore focuses his response on Fullerton's erroneous arguments regarding the actual

knowledge exception and its application here.

### B.    Fullerton Is Precluded From Relitigating the Actual Knowledge Exception

Fullerton is precluded from arguing that *Cohmad* is wrong and relitigating whether actual

knowledge bars the application of Section 546(e). *Cohmad* was issued in connection with

consolidated proceedings before the District Court as to the application of Section 546(e), and as

Fullerton concedes that decision held that a party with actual knowledge of Madoff's fraud cannot

claim the protection of Section 546(e).  *See* Mot. at 13. The District Court then remanded the

relevant cases back to this Court, and this Court has since applied the actual knowledge

"exception" on several occasions.[3]

Although Fullerton accuses the Trustee of "manufactur[ing] exceptions to Section 546(e),"

Mot. at 11, Fullerton participated in the District Court Proceedings.[4]  Given its participation in the

withdrawal of the reference and the District Court's review of this issue, Defendant is bound by

*Cohmad* and that decision is law of the case.  *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv.*

---

[2] Though not necessary to the Court's analysis, we note that Defendant's argument that the Trustee is in privity with the Fairfield liquidators and therefore bound by any rulings in the Fairfield liquidation is incorrect.  *See* Mot. at 8-9 n.7.  Defendants cite no relevant authority for this argument because none exists.  For example, *New Hampshire v. Maine*, 532 U.S. 742 (2001), does not even involve non-party preclusion.  And if *Taylor v. Sturgell*, 553 U.S. 880 (2008), "stands for anything, it is for the need to narrow and regularize the use of preclusion against nonparties." *Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*, No. 07-MD-1902 (JSR), 2013 WL 12191844, at *11 (S.D.N.Y. Mar. 25, 2013).

[3] *See, e.g., Fairfield Inv. Fund*, 2021 WL 3477479, at *4 (applying actual knowledge exception); *Picard v. Square One Fund Ltd.*, Bench Ruling on Motion to Dismiss, Adv. Pro. No. 10-04330 (Bankr. S.D.N.Y. May 29, 2018) (same); *Picard v. Magnify, Inc.*, 583 B.R. 829, 841 (Bankr. S.D.N.Y. 2018) (same); *Picard v. Mendelow et al.*, 560 B.R. 208 (Bankr. S.D.N.Y. Sept. 28, 2016) (same); *Picard v. Avellino*, 557 B.R. 89, 112 (Bankr. S.D.N.Y. 2016) (same); *Picard v. Shapiro*, 542 B.R. 100 (Bankr. S.D.N.Y. 2015) (same); *Picard v. Ceretti, et al.*, Adv. Pro. No. 09-01161 (SMB), 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015) (same); *Picard v. Merkin*, 515 B.R. 117 (Bankr. S.D.N.Y. 2014) (same).

[4] *See Picard v. Fullerton Capital Pte. Ltd.*, Adv. Pro. 12-01004, Motion to Withdraw the Reference, ECF No. 5 (Bankr. S.D.N.Y., filed April 2. 2012) (raising 546(e) as grounds for withdrawal); *SIPC v. Bernard L. Madoff Securities LLC (In re: BLMIS)*, Case No. 12-MC-115 (JSR), Order, ECF No. No. 119 (Bankr. S.D.N.Y., filed May 22, 2012) (listing Fullerton Capital Pte. Ltd. as participant at entry 101 to Exhibit A).

*Sec. LLC*, 531 B.R. 439, 466 (Bankr. S.D.N.Y. 2015) ("Those moving defendants that participated in the withdrawal of the reference of the antecedent debt/value issue have had their day in court and Judge Rakoff's decisions are law of the case."); *Picard v. Lowrey*, 596 B.R. 451, 464 (S.D.N.Y. 2019), *aff'd sub nom. Picard v. Gettinger*, 976 F.3d 184 (2d Cir. 2020) (law of the case doctrine foreclosed relitigation of issue where the district court "considered and rejected the very arguments that defendants now make"). Defendant also did not seek leave to appeal the *Cohmad* decision.

Nor does the Second Circuit's decision in *Ida Fishman* warrant reconsideration of *Cohmad*'s actual knowledge exception.[5] As this Court has recognized, *Ida Fishman* did not address the actual knowledge exception. *See Picard v. Cohen*, Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296, at *10 n.16 (Bankr. S.D.N.Y. Apr. 25, 2016).

## C.    Fullerton is Precluded From Arguing That Section 546(e) Applies Independently to Recovery Actions

Fullerton is also incorrect that the Trustee must allege that a subsequent transferee had actual knowledge in order to invoke the actual knowledge exception to Section 546(e). Specifically, Fullerton argues that under *Cohmad*, its subscription agreement with Sentry may act as the relevant "securities contract" in lieu of BLMIS's account agreement, and, in these Section 550 recovery actions, the Court must look solely to Fullerton's knowledge to determine whether the initial transfer is avoidable.[6] Mot. at 9, 12-13. But *Cohmad* does not stand for this

---

[5] *In re Bernard L. Madoff Inv. Secs. LLC (Picard v. Ida Fishman Recoverable Trust)*, 773 F.3d 411 (2d Cir. 2014) ("*Ida Fishman*").

[6] To the extent Fullerton argues that the initial transfers were made for the benefit of Fullerton, Mot. at 9 (citing Compl. ¶ 41), this is wrong, as the Complaint does *not* allege the initial transfers were made "for the benefit of" Defendant. Rather, two paragraphs of the Complaint allege that the *subsequent transfers* from Fairfield Sentry were made "to, or for the benefit of" Defendant. *See* Compl. ¶¶ 41, 45. Paragraphs 2, 3, and 34 merely allege that Defendant received subsequent transfers from Sentry.

proposition, and Fullerton's argument just repackages the previously rejected argument that the Section 546(e) safe harbor should independently apply to recovery actions under Section 550.

Under its plain language, Section 546(e) applies to the avoidance of initial transfers, not the recovery of subsequent transfers under Section 550.  *See* 11 U.S.C. § 546(e) ("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title.") (emphasis added); *see BNP*, 594 B.R. at 197 ("The Trustee does not . . . 'avoid' the subsequent transfer; he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550."); *Kelley v. Safe Harbor Managed Acct. 101, Ltd.*, 31 F.4th 1058, 1064 n.5 (8th Cir. Apr. 21, 2022) ("*SHMA*") (citing *BNP*).

The safe harbor's limitation to avoidance actions is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct."  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 501 B.R. 26, 30 (S.D.N.Y. 2013). It is also consistent with the understanding that the Code's avoidance provisions protect against depletion of a debtor's estate, while Section 550 is merely a "utility provision," intended to help execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place."  *See In re Picard, Trustee for Liquidation of Bernard L. Madoff Inv. Sec. LLC,* 917 F.3d 85, 98 (2d Cir. 2019).  This Court should reject Fullerton's attempt to purposefully conflate the legally separate concepts of avoidance and recovery under Section 550.

*Cohmad* confirmed that Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees.  The District Court withdrew the reference on whether Section 546(e) barred recovery of a subsequent transfer pursuant to

Section 550.[7]   However, in its decision, the District Court specifically limited the safe harbor to

avoidance claims based on the plain language of Section 546(e).  *See Cohmad*, 2013 WL 1609154,

at *4, *9 (applying the "plain terms" of Section 546(e)), *7 (recognizing that subsequent

transferees can raise initial transferees' defenses to *avoidance*), *10 ("[B]oth initial transferees and

subsequent transferees are entitled to raise a defense based on the application of Section 546(e) to

the *initial* transfer from Madoff Securities.") (emphasis added).    And though the Court

hypothesized, in *dicta*, that a subsequent transferee's subscription with the initial transferee feeder

fund, and related agreements and transactions, might under certain circumstances constitute

relevant "securities contracts," and that certain subsequent transferee defendants might qualify as

"financial institutions" or "financial participants," the decision is clear that the focus of the safe

harbor is still on the *initial* transfers.  *See id.* at *9.[8]  Contrary to Fullerton's argument, the District

Court did not, in its hypothetical, discuss actual knowledge or indicate that in such circumstances,

the initial transferee's actual knowledge should be disregarded. *Enron Creditors Recovery Corp.*

*v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 339 (2d Cir. 2011), which the District Court cites in *Cohmad*

solely to support its reading of what constitutes a "securities contract," does not change this

outcome.   The focus is still on the initial transfers, which for purposes of Section 546(e), the

Second Circuit has already determined, and it is now not debatable, are the transfers from BLMIS

to its feeder funds. *See Ida Fishman*, 773 F.3d at 422-23.  As such, neither the initial transfers nor

---

[7] *See In re Madoff Securities*, 12-MC-115, Section 546(e) Briefing Order, ECF No. 119 (S.D.N.Y. filed May 16, 2012) (withdrawing the reference on issue of "whether application of Section 546(e) to an initial or mediate Transfer bars recovery by the Trustee of any subsequent transfer pursuant to Section 550").

[8] The original point of the *Cohmad* hypothetical was to address the subsequent transfer defendants' argument that if necessary, in lieu of the BLMIS customer agreements, their subscription agreements could act as the relevant securities agreements under Section 546(e). *Cohmad*, 2013 WL 1609154 at *8. That argument became moot as both the Second Circuit and the District Court determined that the BLMIS customer agreement was a "securities agreement" and the initial transfers from BLMIS were "settlement payments" notwithstanding that no securities were traded and therefore subject to Section 546(e).

the initial transferees' actual knowledge can be disregarded, regardless of which securities agreement is being relied upon.

Based on *Cohmad*, this Court held in *BNP* that Section 546(e) applies only to avoidance, not recovery, and that a subsequent transferee cannot extend the protections of Section 546(e) where the Trustee has adequately pled the initial transferee's actual knowledge.  *See BNP*, 594 B.R. at 197; *see also SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*, 620 B.R. 505, 514 (Bankr. S.D.N.Y. 2020) ("[T]he safe harbor defense only applies by its terms to the initial transfer.").  In *BNP*, this Court explicitly rejected the argument being made here—that the "*only* way the Trustee can escape the application of Section 546(e) here is by pleading with particularity and plausibility that the [subsequent transferee defendants] actually knew of the Madoff Ponzi scheme." *BNP*, 594 B.R. 196–97 (emphasis in original).  Rather, as explained in *BNP*, a subsequent transferee gets only "indirect" protection from Section 546(e) to the same extent it protects the initial transferee.  *Id.* at 197.  Like *Cohmad*, *BNP* is law of the case and Fullerton is bound by both decisions.  *See Picard v. Est. of Seymour Epstein (In re BLMIS)*, No. 1:2l-cv-02334 (CM), 2022 WL 493734, at *12 (S.D.N.Y. Feb. 17, 2022) (finding in a SIPA liquidation like this one where different adversary proceedings arise within the same liquidation, that law of the case applies when "prior decisions in an ongoing case either expressly resolve[] an issue or necessarily resolve[] it by implication").

Fullerton nevertheless continues to argue that its agreement with Sentry is the relevant "securities agreement," and therefore this Court must look only to Fullerton's actual knowledge. Mot. at 12-13.  But as stated above, the District Court did not conclude this, and *BNP* confirmed this was not the case.  Indeed, Fullerton's misinterpretation of *Cohmad* would effectively eliminate the point of the actual knowledge exception—which is to restrict all bad actors from hiding behind

the safe harbor. *See Cohmad*, 2013 WL 1609154, at *3 (explaining that defendants who knew BLMIS was a Ponzi scheme "must have known that the transfers they received directly or indirectly from Madoff Securities were not 'settlement payments.'"). Adopting Fullerton's position means the safe harbor would apply even where the initial transferee feeder fund knew there were no securities transactions to protect. It would also allow an initial transferee—who had knowledge of the fraud and was unable to satisfy a judgment (like Sentry)—to place fraudulently transferred moneys with a subsequent transferee and out of the reach of a trustee.

Expanding the safe harbor as Fullerton proposes also would result in subsequent transferees being afforded more protection as to avoidance than the initial transferee itself, which does not reflect Congress' intent. *See In re Madoff Sec.*, 501 B.R. at 29 ("Section 550(a) requires that the Trustee show that the transfer he seeks to recover is avoidable in each recovery action, and the subsequent transferee in possession of that transfer may raise any defenses to avoidance available to the initial transferee, as well as any defenses to recovery it may have."). As the Eighth Circuit pointed out in *SHMA* while citing *BNP*, under Section 546(e), "a subsequent transferee is protected *indirectly* to the extent that the initial transfer is not avoidable because of the safe harbor." 31 F. 4th at 1063 n.5 (cleaned up; emphasis added). Conversely, providing subsequent transferees with the same defenses to avoidance as available to initial transferees does not unfairly bias subsequent transferees.

Defendant also misconstrues *Cohmad*'s holding — which was not a part of the Court's "securities contract" hypothetical—that subsequent transferees with actual knowledge are also prohibited from benefitting from the safe harbor. *See* Mot. at 12-13. That holding does not mean, as Defendant contends, that in order to recover from a subsequent transferee, the Trustee must plead its actual knowledge. On the contrary, it merely ensures that any defendant that *does* have

actual knowledge, including a subsequent transferee, cannot benefit from the safe harbor (even if the initial transferee is innocent), such that the purpose of the actual knowledge exception is achieved consistently. *See Cohmad*, 2013 WL 1609154, at *1, *7. This holding that, like initial transferees, subsequent transferees with actual knowledge cannot benefit from the safe harbor does not justify affording subsequent transferees expanded protections, such that they can benefit from the safe harbor despite the actual knowledge of the relevant initial transferees.

## III. THE COMPLAINT ADEQUATELY ALLEGES THAT FULLERTON RECEIVED BLMIS CUSTOMER PROPERTY UNDER SECTION 550(A)

The Trustee's Complaint states a claim for recovery under Section 550(a)(2) by plausibly alleging that Fullerton received a subsequent transfer of BLMIS customer property. To plead a subsequent transfer claim, the Trustee must allege facts that support an inference "that the funds at issue originated with the debtor." *Picard v. Merkin (In re BLMIS),* 515 B.R. 117, 149–50 (Bankr. S.D.N.Y. 2014) ("Merkin I"). No tracing analysis is required, as the pleading burden "is not so onerous as to require 'dollar-for-dollar accounting' of 'the exact funds' at issue." *Id*. at 150 (quoting *Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*, Adv. Pro. Nos. 10-04398 (BRL), 10-05219 (BRL), 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012)). Rather, "the Trustee need only allege sufficient facts to show the relevant pathways through which the funds were transferred from BLMIS to [the subsequent transferee]." *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3; *see also 45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019). In addition, the Trustee must allege "'the necessary vital statistics—the who, when, and how much' of the purported transfers to establish an entity as a subsequent transferee of the funds." *Merkin I*, 515 B.R. at 150 (quoting *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 32 (Bankr. E.D.N.Y. 2007)).

15

The Trustee's Complaint meets these requirements.  The Complaint alleges that Fullerton received one transfer on October 14, 2005 from Sentry, and that Sentry invested substantially all of its funds with BLMIS. Compl. ¶¶ 2, 41-42, Ex. C.  Thus, the Complaint plausibly alleges that Fullerton received a subsequent transfer of customer property by (a) outlining the relevant pathway through which customer property was transferred from BLMIS to the Fairfield Funds and subsequently to Fullerton and (b) providing the necessary vital statistics (*i.e.,* "the who, when and how much") for the subsequent transfer.  Nothing more is required.  *See, e.g.*, *Picard v. Mayer (In re BLMIS)*, Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021) (rejecting argument that subsequent transfer claim was not pled "with enough specificity as to how and what [defendant] received" and holding complaint "contains sufficient information regarding which transfers the Trustee is seeking to recover").

### A.    Fullerton Misstates the Trustee's Pleading Burden

Given the sufficiency of the Trustee's pleading, Fullerton argues for an alternate pleading standard, asserting that "[i]n order to state a claim under [Section] 550(a), 'the plaintiff has the burden of tracing funds it claims to be property of the estate.' *Silverman v. K.E.R.U. Realty Corp.* (*In re Allou Distribs., Inc.*), 379 B.R. 5, 30 (S.D.N.Y. 2007) (citing *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 708 (11th Cir. 2005)) ("*IAS*")." Mot. at 16. However, this citation is misleading. Although the quote from *IAS* is technically correct, this decision was issued on appeal after a trial and a judgment was entered and the case did not address the pleading burden.  *In re Allou Distribs., Inc.,* 379 B.R. 5.  By adding the phrase "in order to state a claim" before the quote from *IAS*, Fullerton misstates the law.  The unquoted language from *Allou* makes this very clear.  In *Allou*, the Court actually said "in order to prove a Section 550(a)(2) claim, a plaintiff must carry its burden …" 379 B.R. at 30.   And the Court continues: "in order to state a Section 550(a)(2) claim, a

16

plaintiff must allege sufficient facts to show, if proved, that the funds at issue originated with the debtor. But if dollar-for-dollar accounting is not required at the proof stage, then surely it is not required at the pleading stage either." *Id.* Whether intentionally or not, Fullerton conflates the pleading and ultimate burden at the proof stage, and the cases they cite, in fact support the finding that the Complaint sufficiently details the transfer at issue.

Fullerton further argues that the Trustee "must identify the 'date and amount of each transfer.'" Mot. at 17. To the extent Fullerton is arguing that the Complaint must identify the specific initial transfer which was subsequently transferred to Fullerton, the Court rejected this argument in *Merkin,* where the Court refused to dismiss subsequent transfer claims even though the complaint did "not connect each of the subsequent transfers with an initial, voidable transfer emanating from BLMIS." 515 B.R. at 150, *see also In re 45 John Lofts, LLC,* 599 B.R. at 747 (finding no "requirement to trace individual dollar amounts from the transferor to the transferee to survive a motion to dismiss"). This Court has also found that the Trustee need not detail which and what portion of each subsequent transfer comprises customer property. *See Merkin*, 515 B.R. at 152–53 (refusing to dismiss complaint where "at least some of the subsequent transfers . . . may be recoverable"); *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3 (holding at summary judgment, "it is not necessary for the Trustee to specify what portion of the Subsequent Transfers to [defendant] was derived from BLMIS").

To support its argument that the Trustee has failed to allege facts showing that the subsequent transfer to Fullerton was comprised of customer property, Fullerton erroneously cites to *Picard v. Shapiro (In re BLMIS)*, 542 B.R. 100 (Bankr. S.D.N.Y. 2015). This reliance fails for multiple reasons. *See* Mot. at 16 (citing *Shapiro,* 542 B.R. at 119).

17

In *Shapiro,* the Trustee alleged that certain trusts and members of the Shapiro family received approximately $54 million in fraudulent transfers from BLMIS, and "upon information and belief" these defendants subsequently transferred this same amount to other defendants.  *See Shapiro,* 542 B.R. at 104.  However, the Court dismissed the subsequent transfer claims because the complaint did not detail *any* of the necessary vital statistics of the subsequent transfers.  *Id.* at 119.  There were no allegations regarding the subsequent transferors, the subsequent transferees, or the dates or amounts of the subsequent transfers, and consequently this Court granted Defendants' motion to dismiss the subsequent transfer claim.  *Id.*

Unlike in *Shapiro*, the Complaint in this action identifies the specific subsequent transfer received by Fullerton from Sentry.  Compl., Ex. C.  Moreover, the Complaint alleges additional facts regarding Fullerton's status as an investor in Sentry, including a subscription agreement and wire transfers. *See* Compl. ¶¶ 2, 6-7.  These are the "necessary vital statistics" for the transfer Fullerton received.  *See In re Allou Distribs., Inc.*, 379 B.R. at 32.

Fullerton's reliance on *Angell v. Ber Care, Inc. (In re Caremerica, Inc.),* 409 B.R. 737, 750-751 (Bankr. E.D.N.C. 2009), likewise lacks merit.  Mot. at 16-17.  *Caremerica* applied a heightened pleading standard that has been disfavored across jurisdictions, and, in all events, is irrelevant here.  *See, e.g.*, *Zucker v. Oconee Reg'l Healthcare Found., Inc. (In re Oconee Reg'l Health Sys., Inc.)*, 621 B.R. 64, 71-72 (Bankr. M.D. Ga. 2020) ("This heightened pleading standard for preference claims, as adopted by *Caremerica* and its progeny, is inconsistent with the liberal fair notice pleading standard of Federal Rule of Bankruptcy Procedure . . . 7008(a)(2), as well as the Supreme Court's assertion that a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."); *Tousa Homes, Inc. v. Palm Beach Newspapers, Inc. (In re TOUSA, Inc., et al.)*, 442 B.R. 852, 855-56 (Bankr. S.D. Fla. 2010) ("The pleading requirements

of *Caremerica* require more than the standard promulgated in *Twombly* and *Iqbal* and the liberal

pleading policy underlying the civil rules."). In fact, *Caremerica* involved preferential transfers

from a non-debtor bank account where the trustee failed to "rebut the alternative and reasonable

possibility that the funds . . . originated from sources other than the debtors." *In re Caremerica,*

*Inc.*, 409 B.R. at 751.

Here, where the Trustee has alleged the vital statistics of the transfer Fullerton received,

including the transferor, the transferee, and the date and amount of the transfer, *Shapiro* and

*Caremerica* support denying the motion to dismiss.

### B.    Fullerton's Tracing Arguments Fail on a Motion to Dismiss

Fullerton's other fact-based tracing arguments fare no better and are inappropriate for a

motion to dismiss.  Fullerton cites to *In re M. Fabrikant & Sons* for the proposition that "[t]he

Trustee may not 'lump transfers spanning a two to three year period,' but rather must identify the

'date and amount of each transfer.'" Mot. at 17 (citing *Buchwald Capital Advisors LLC v. JP*

*Morgan Chase Bank, N.A.* (*In re M. Fabrikant & Sons)*, No. 06-12737 (SMB), 2009 WL 3806683,

at *16 (Bankr. S.D.N.Y. Nov. 10, 2009).  However, the Trustee's Complaint specifically does

"identify the date amount of each transfer", unlike in *Fabrikant* where the complaint "fail[ed] to

particularize the initial transfers or subsequent transfers." *In re M. Fabrikant & Sons*, 2009 WL

3806683, at *16.  To the extent Fullerton cites to *Fabrikant* in an attempt to impose a requirement

on the Trustee at the pleading stage to link every subsequent transfer from Sentry to an initial

transfer from BLMIS, it is wrong. The case does not address this issue, and ample case law exists

to the contrary. *See supra* at pp. 16-20.

Fullerton also argues that Sentry commingled "property of the estate" with "non-estate funds" thus requiring the Trustee to satisfy the "lowest intermediate balance test."[9]  Mot. at 17. However, it is for this Court to decide—after fact and expert discovery—the appropriate tracing methodology under the circumstances of this case.[10] *See Picard v. Merkin (In re BLMIS)*, 581 B.R. 370, 386 (Bankr. S.D.N.Y. 2017) ("*Merkin II*") ("[T]he Court's selection of an appropriate methodology is committed to the Court's discretion."); *United States v. Henshaw*, 388 F.3d 738, 741 (10th Cir. 2004) (finding "courts exercise case-specific judgment to select the method best suited to achieve a fair and equitable result on the facts before them").  Fullerton cites to *In re MJK Clearing, Inc.* in support of their position; however, *In re MJK Clearing, Inc.* applied Minnesota law to trace funds based on whether a constructive trust was formed for summary judgment purposes. *In re MJK Clearing, Inc.*, 371 F.3d 397, 403 (8th Cir. 2004).  The case provides no support for the proposition that the Trustee is "require[d]" to "satisfy the 'lowest intermediate balance test'" at the motion to dismiss stage. *Id.* at 399.  In fact, the case law is clear that "[t]he commingling of legitimate funds with funds transferred from the debtor does not defeat tracing." *Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-cv-1073 (ECT/KMM), 2020 WL

[9] The declaration of Fullerton's counsel (Bernstein Decl.), which attaches exhibits totaling over thirteen hundred pages, includes several "calculations" of various transfers from BLMIS to Sentry and Sentry to its investors.  *See* Bernstein Decl. ¶¶ 4-7, 18, ECF No. 105.  These calculations add and subtract transfers from over 90 proceedings, in amounts that have in some cases changed since the filing of the Trustee's complaints and with no explanation for the methodology behind the calculations.  Fullerton's tracing methodology, which it uses to contest the transfer in this proceeding, is nothing more than "an attempt to interject improper expert testimony into a Rule 12(b)(6) context." *Fowler v. Caliber Home Loans, Inc.*, 277 F. Supp. 3d 1324, 1331 (S.D. Fla. 2016) (declining to consider expert testimony in a motion to dismiss); *see also Solution Tr. v. 2100 Grand LLC (In re AWTR Liquidation Inc.)*, 548 B.R. 300, 334 (Bankr. C.D. Cal. 2016) (assessment of valuation that "almost certainly will require expert testimony" is inappropriate for a motion to dismiss); *In re Viropharma, Inc.*, No. CIV.A. 02-1627, 2003 WL 1824914, at *2 (E.D. Pa. Apr. 7, 2003) ("The [party's] submission of an expert report at [the motion to dismiss] stage is entirely improper.").

[10] This Court has recognized different tracing methodologies offered by the Trustee in this liquidation to assist the trier of fact, including: (1) Last In, First Out (LIFO), (2) First In, First Out (FIFO), (3) Lowest Intermediation Balance Rule (LIBR), (4) Restated Tracing Rules (Restated LIBR), and (5) Proportionality.  These "methodologies reflect legal rules or fictions designed to assist a Court in dealing with an improper transfer form a commingled fund." *Merkin II*, 581 B.R. at 386.

3077151, at *4 (D. Minn. June 10, 2020). In fact, where there is commingling of funds, the tracing

of funds is not an issue to be determined on a motion to dismiss. *See Merkin I*, 515 B.R. at 152.

Finally, without discovery, Fullerton's tracing arguments are premature. Despite

Fullerton's incorrect argument that the Trustee has "every piece of information he needs" the

Trustee is a stranger to the transactions between Sentry and Fullerton and is entitled to discovery

on this issue. *See* Mot. at 21-22. "[I]n a case such as this one, where the Trustee's lack of personal

knowledge is compounded with complicated issues and transactions [that] extend over lengthy

periods of time, the trustee's handicap increases, and even greater latitude should be afforded."

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317, 329 (Bankr.

S.D.N.Y. 2011) (cleaned up). This is one reason why this Court in *Merkin* denied defendants'

motion to dismiss, finding "[t]he subsequent transfer claim must ultimately be proved through the

books and records of the defendants." 515 B.R. at 151. And even after fact discovery, expert

opinion is necessary to determine what portion of the subsequent transfer stemmed from the initial

transfer where the subsequent transfers originated from commingled accounts. *Picard v. Merkin

(In re BLMIS)*, 581 B.R. 370, 386 (Bankr. S.D.N.Y. 2017); *see also Kelley*, 2020 WL 3077151, at

*4-5 (denying summary judgment because trustee introduced expert report and associated

documents from which a jury could infer that defendants received subsequent transfers of customer

property and holding that where debtors' funds are commingled with "cash from new subscribing

investors," a trustee is not required to establish that the transfers "originated solely" with the debtor

or even to account for "the exact funds at issue" on summary judgment).[11]

---

[11] For the same reasons, this Court should reject Fullerton's argument that the Trustee's claims should be dismissed because "the Trustee has had every piece of information he needs to determine whether an alleged subsequent transfer contains customer property." Mot. at 21. The Trustee does not have all of the Fairfield Funds' books and records, and discovery in the Trustee's actions against the FGG defendants continues. *See, e.g.*, Stipulated Case Mgmt. Order, *Picard v. Fairfield Inv. Fund Ltd.*, Ad. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Dec. 6, 2021), ECF No. 353 (setting November 22, 2022 deadline for fact discovery and August 22, 2023 deadline for expert discovery).

Courts in this District and in this SIPA liquidation proceeding have denied summary judgment where only an undetermined or small portion of the subsequent transfer was conceivably traceable to the estate. *See Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3 (holding that even at summary judgment, "it is not necessary for the Trustee to specify what portion of the Subsequent Transfers to [the subsequent transferee] was derived from BLMIS"); *see also Gowan v. Amaranth Advisors, LLC (In re Dreier LLP)*, Adv. Pro. Nos. 10-03493 (SMB) & 10-05447 (SMB), 2014 WL 47774, at *14–16 (Bankr. S.D.N.Y. Jan. 3, 2014) (allowing the trustee to proceed to trial where at most 3.5% of the transfers at issue could be traced to the debtor's Ponzi scheme). And where, as here, the Trustee "has not been afforded the opportunity to conduct discovery," courts only dismiss such claims "in the rarest of cases."[12] *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *2.

The cases cited by the Defendant to bolster its argument that the Trustee's Complaint should be dismissed because the Trustee allegedly failed to particularize the transfers is misleading as those facts in those cases are in no way analogous to the present case. *See Sapia v. Home Box Office, Inc.* No. 18 Civ. 1317 (CM), 2018 WL 6985223, at *1, *8 (S.D.N.Y. Dec. 17, 2018) (holding that plaintiffs' inability to plead exact dates of when they experienced employment retaliation was alarming to the Court given that they were the only individuals to have this alleged information); *see also Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 709, 723 (2d Cir. 2013) (holding that plaintiff who had access to the relevant information to allege "factual matter about how a prudent investor would have viewed the Portfolio's securities at the relevant times, and in the relevant circumstances," *id.* at 723, but instead relied only on allegations of "large declines in the overall [] market," *id*. at 722, did not meet his pleading burden).

---

[12] And even after fact and expert discovery, there may still be fact disputes that require a trial. *See Kelley*, 2020 WL 3077151, at *5 (denying summary judgment because of a fact dispute after the trustee introduced an expert report and associated documents from which a jury could infer the defendants received subsequent transfers of property from the Petters Ponzi scheme).

This is not a case where the Court should prematurely cut off the Trustee's ability to trace the subsequent transfer at the pleading stage. The circumstances of the transfers, including the purposes of the transfers and the parties' intent, are relevant to equitable principles applied to tracing. *See Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 2000 WL 1741550, at *5 (5th Cir. Dec. 11, 2000) (the court's "task here is to look beyond the particular transfers in question to the entire circumstance of the transactions") (cleaned up).

Because money is fungible, "[t]he goal of tracing is not to trace anything at all in many cases, but rather to serve as an equitable substitute for the impossibility of specific identification." *Henshaw*, 388 F.3d at 741. And "[i]t is undeniable that equity will follow a fund through any number of transmutations, and preserve it for the owner as long as it can be identified." *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 709 (11th Cir. 2005) (quoting *Dery v. United States (In re Bridge)*, 90 B.R. 839, 848 (E.D. Mich. 1988)). Under these circumstances, equity weighs against cutting the Trustee off at the pleading stage.

## IV.    THE COMPLAINT SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE SENTRY INITIAL TRANSFERS

Fullerton argues that the Trustee's incorporation of his then-operative complaint against Sentry violates Rule 8(a)(2)'s requirement to include a "'short and plain statement of the claim showing the [Trustee] is entitled to relief.'" Mot. at 22. However, there is no doubt that the Trustee may incorporate the Fairfield complaint under Rule 10(c) to demonstrate the avoidability of the initial transfers from BLMIS. *See Am. Casein Co. v. Geiger (In re Geiger),* 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010) (allowing incorporation by reference under Rule 10(c) of pleadings in different adversary proceeding within the same liquidation).

Fullerton's argument also conflicts with the District Court's prior opinion in this liquidation on whether under Section 550(a) the Trustee must avoid an initial transfer or plead its

avoidability in a subsequent transfer action.  *See* Mot. at 23*; In re Madoff Sec.,* 501 B.R. at 26.

Fullerton, along with various defendants moved to withdraw the reference on the meaning of

Section 550(a) and argued in the District Court that the Trustee failed to state a claim for recovery

of any subsequent transfers from Sentry.  *Id*. at 29.  But the District Court held that the Trustee

stated a claim, finding that the Trustee did not need to "avoid" a transfer before pursuing a claim

for recovery under Section 550(a), *id*., that Section 550(a) only "requires that the Trustee show

that the transfer he seeks to recover is avoidable in each recovery action," *id.,* and that the Trustee

pleaded the avoidability of the initial transfers from BLMIS to Sentry by incorporating by

reference the then-operative Fairfield complaint. *Id.* at 36.

> Applying these principles in a representative case, the District Court stated:

>> [T]he Trustee's complaint against Standard Chartered Financial
>> Services incorporates by reference the complaints against Kingate
>> and Fairfield, including the allegations concerning the avoidability
>> of the initial transfers, and further alleges the avoidability of these
>> transfers outright. . . . Thus, the avoidability of the transfers from
>> Madoff Securities to Kingate and Fairfield is sufficiently pleaded
>> for purposes of Section 550(a).

*Id.* at 36.  Fullerton withdrew on the Section 550(a) issue and participated in this consolidated

proceeding before the District Court.  *See Picard v. Fullerton Capital Pte. Ltd.*, Adv. Pro. 12-

01004, Motion to Withdraw the Reference, ECF No. 5 (Bankr. S.D.N.Y., filed April 2. 2012)

(raising 550(a) as grounds for withdrawal); *SIPC v. Bernard L. Madoff Securities LLC (In re:*

*BLMIS)*, Case No. 12-MC-115 (JSR), Order, ECF No. No. 314 (Bankr. S.D.N.Y., filed August 22,

2012) (listing Fullerton Capital Pte. Ltd. as participant at entry 29 to Exhibit A). And this

decision—allowing for incorporation by reference—is binding on Fullerton as law of the case. *See*

*Picard v. Lowrey,* 596 B.R. 451, 464 (S.D.N.Y. 2019), *aff'd sub nom.*, 976 F.3d 184 (2d Cir. 2020).

> In any event, Fullerton's argument is much ado about nothing, because this Court may take

judicial notice of the operative Second Amended Complaint and its prior decision holding that this

complaint sufficiently alleges the avoidability of the initial transfers from BLMIS.  *See Fairfield Inv. Fund*, 2021 WL 3477479.  On a motion to dismiss, "a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*."  *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011).  "Included among such matters are decisions in prior lawsuits."  *DeMasi v. Benefico,* 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008).  Finally, the fact that the noticed Fairfield Second Amended Complaint was filed after this Complaint against Fullerton is of no consequence. *See Rothman*, 220 F.3d at 91–92 (noticing later filed complaint in related proceeding).

The Trustee has complied with the Federal Rules in pleading the avoidability of the initial transfers, and regardless, this Court may take judicial notice of its opinion in Fairfield Investment Fund.  If this Court finds otherwise, the Trustee respectfully requests the opportunity to replead.

## V.   THIS COURT HAS PERSONAL JURISDICTION OVER FULLERTON

The Court has personal jurisdiction over Fullerton because: (i) Fullerton had minimum contacts with the forum such that it purposefully availed itself of the benefits and privileges of investing in New York and (ii) the exercise of jurisdiction over Fullerton is reasonable.

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only show a *prima facie* case that personal jurisdiction exists.  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013).  At this early stage, a *prima facie* showing of jurisdiction "may be established solely by allegations."  *Id.* at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)) ("Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction").  A plaintiff also may establish a *prima facie* case of jurisdiction through affidavits and supporting materials that contain averments of facts outside the pleadings.  *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010).  These pleadings and affidavits are

25

to be construed in the light most favorable to the plaintiff, resolving all doubts in plaintiff's favor. *See Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)).

The personal jurisdiction analysis is a two-step inquiry that focuses on (1) minimum contacts and (2) whether jurisdiction will be reasonable under the circumstances. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (due process requires that a defendant have sufficient minimum contacts with the forum state "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'" (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940))). There are two types of personal jurisdiction that satisfy minimum contacts: general jurisdiction and specific jurisdiction. *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 473 (S.D.N.Y. 2001). "Specific jurisdiction exists when the defendant 'purposely direct[s] [its] activities [into] the forum' and the underlying cause of action 'arises out of or relates to those activities.'" *See Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021).[13]

Specific personal jurisdiction is proper where the defendant's contacts "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). But specific jurisdiction does not require a causal relationship between a plaintiff's claims and the defendant's contacts with the forum state. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). Moreover, the defendant's activities "need not have taken place within the forum, and a single transaction with the forum will suffice." *Picard v. Maxam Absolute Return Fund, L.P.* (*In re*

---

[13] General jurisdiction is based on the defendant's general business contacts with the forum and permits a court to exercise jurisdiction where the claims are unrelated to those contacts. *See Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014). Here, the Trustee's claims arise out of Fullerton's specific contacts with the forum and a finding of general jurisdiction is unnecessary.

*Bernard L. Madoff Inv. Sec. LLC)*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011) (citation omitted)

(citing *McGee v. Int'l Life Ins. Co.*, 335 U.S. 220, 223 (1957)).  Specific jurisdiction may also be

found when a "defendant's allegedly culpable conduct involves at least in part financial

transactions that touch the forum."  *In re Fairfield Sentry Ltd.*, 627 B.R. at 566 (quoting *U.S. Bank

Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 151 (2d Cir. 2019)).

> To determine whether jurisdiction is reasonable, courts consider the following factors:

> > (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the shared interest of the states in furthering social policies.

*See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996).  Where the

plaintiff has alleged purposeful availment, however, the burden shifts to the defendant to present

a "compelling case" that jurisdiction would be unreasonable.  *In re Fairfield Sentry Ltd.*, 627 B.R.

at 567 (citing *Burger King*, 471 U.S. at 472–73).

> In determining whether a defendant's forum contacts establish personal jurisdiction, the

Court must look at "the totality of the circumstances" rather than analyze each contact in isolation.

*See Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996); *Chloe*,

616 F.3d at 164 (analyzing totality of defendants' contacts to determine jurisdiction under New

York's long-arm statute and the Due Process Clause); *Grand River Enters. Six Nations, Ltd. v.

Pryor*, 425 F.3d 158, 166 (2d Cir. 2005) ("No single event or contact connecting defendant to the

forum state need be demonstrated; rather, the *totality of all defendant's contacts* with the forum

state must indicate that the exercise of jurisdiction would be proper.").

A.    **Fullerton Purposefully Availed Itself of the Laws and Privileges of Conducting Business in New York by Investing in the Fairfield Funds**

Fullerton is subject to this Court's personal jurisdiction because it invested in Sentry with the specific purpose of having funds invested with BLMIS in New York and profiting therefrom. *See Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*, Adv. Pro. Nos. 08-01789 (SMB), 10-04932 (SMB), 2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014) (recognizing that litigation in the BLMIS liquidation has "confirmed that defendants who invested directly or indirectly with BLMIS and received payments from BLMIS as initial transferees or as subsequent transferees of those initial transferees were subject to the Court's personal jurisdiction"); *Maxam Absolute Return Fund, L.P.*, 460 B.R. at 116-20 (finding jurisdiction where defendant knew and intended that funds invested with BLMIS feeder fund would be sent to New York for investment by BLMIS in New York).

As this Court has recognized, a defendant who invested in a feeder fund while knowing and intending that its funds would be transferred to BLMIS for investment in New York is subject to personal jurisdiction with respect to claims arising out of those investments. *Picard v. Bureau of Labor Ins. (In re Bernard L. Madoff)*, 480 B.R. 501, 516-18 (Bankr. S.D.N.Y. 2012) (Lifland, J.) ("*BLI*") (defendant "purposefully availed itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in [BLMIS feeder fund] Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market"). In *BLI*, like here, the defendant received and reviewed marketing materials, including PPMs, expressly indicating that the funds would ultimately be invested in BLMIS. *Id.* at 517.

Fullerton had numerous contacts with New York that establish this Court's jurisdiction. Fullerton (i) invested in Sentry with the knowledge and intention that those funds would be

invested, managed, and custodied by BLMIS in New York; (ii) met and communicated with FGG personnel in New York regarding its investments with New York-based BLMIS through Sentry, a BLMIS feeder fund[14]; (iii) agreed to New York jurisdiction, forum selection, service of process, and choice of law provisions related to its Sentry investments; and (iv) used the New York banking system to transact with Sentry. In their totality, these contacts plainly establish that Fullerton purposefully directed its activities to New York. *See Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 397 F. Supp. 3d 323, 344 (S.D.N.Y. 2019) ("When all [defendant]'s Agreement-related contacts are considered together, it is clear [the defendant] purposely availed itself of the forum.").

       1.      **Fullerton's Investments in BLMIS through the BLMIS Feeder Funds Establish Minimum Contacts**

Fullerton's intentional investment with BLMIS in New York through Sentry establishes personal jurisdiction over Fullerton. Regardless of Fullerton's other contacts that support jurisdiction, Fullerton's deliberate targeting of BLMIS and the New York securities market—through entities expressly constituted for that purpose—is dispositive.

As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities,

---

[14] Fullerton was completely owned and controlled by Temasek and Fullerton Management. They had the same addresses, contact information, and employees. *See* supra at p. 5-6. Therefore, as an alter-ego of Temasek, the contacts with New York of Anthony Dirga and other Temasek employees can be imputed to Fullerton for jurisdictional purposes. *See In re Lyondell Chem. Co.*, 543 B.R. 127, 141 (Bankr. S.D.N.Y. 2016) (quoting *ADO Finance, AG v. McDonnell Douglas Corp.*, 931 F.Supp. 711, 715 (C.D. Cal. 1996)) ("Under the federal law governing the exercise of *in personam* jurisdiction, if…one corporation [is] the alter ego of another, the Court may 'pierce the corporate veil' jurisdictionally and attribute 'contacts' accordingly"); *see also Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009) ("we have previously observed that, in general, 'alter egos are treated as one entity' for jurisdictional purposes"). Moreover, to the extent Dirga was also acting as an agent of Fullerton, his jurisdictional contacts are attributable to a principal for personal jurisdiction purposes. *See Picard v. Est. of Igoin (In re BLMIS)*, 525 B.R. 871, 884 (Bankr. S.D.N.Y. 2015) (citing *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 55 (1st Cir. 2002); *see also CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986). An "agent" may include any person that acts in the forum for the benefit of, with the knowledge and consent of, and subject to some control by, the non-domiciliary principal. *CutCo Indus., Inc.*, 806 F.2d at 366.

they knew where their money was going." *In re Picard*, 917 F.3d at 105. Indeed, by executing the subscription agreement and affirming that it received and read Sentry's PPM, Fullerton knew that BLMIS was the sub-custodian of Sentry's investments and that FGG had its principal office in New York. Bernstein Decl. at Ex. G.

Fullerton also directed activity into the forum through its contacts with BLMIS and FGG in New York. Temasek employees, including Antony Dirga, who was also an Associate Director for Fullerton Management, corresponded with FGG repeatedly and at least once traveled to New York to meet with FGG partners and managers. *See* supra at p. 6, Cremona Decl., Ex. 12 at *814-815. As an agent of Temasek and Fullerton, Dirga's visit supports exercising jurisdiction over Fullerton. *See SAS Grp., Inc. v. Worldwide Inventions, Inc.*, 245 F. Supp. 2d 543, 549-50 (S.D.N.Y. 2003) (finding jurisdiction over defendant who traveled to New York for a business meeting).

Under similar facts, this Court in *BNP* found jurisdiction over an investor defendant based on the U.S. contacts inherent in doing business with the Tremont funds. *BNP*, 594 B.R. at 191 (finding prima facie showing of jurisdiction "over any fraudulent transfer claims resulting from redemptions by the Defendants from their accounts with the Tremont Funds.").

### a.    *BLI* Establishes this Court's Jurisdiction Over Fullerton

Based on the reality of the Fairfield Funds' investment structure, and as stated *supra* in section V. A this Court has already concluded that investors like Fullerton are subject to personal jurisdiction. *See BLI,* 480 B.R. at 516-18. There, as here, the Trustee's suit was "based upon [the subsequent transferee's] investment of tens of millions of dollars in Sentry with the specific goal of having funds invested in BLMIS in New York, with intent to profit therefrom." *Id.* at 506. There, as here, the subsequent transferee was provided with identical PPMs and executed identical subscription agreements establishing the investment's BLMIS-centric purpose. *Id.* at 507–08. And

30

there, as here, the subsequent transferee argued that the foreseeability of its investment ending up

in a BLMIS account was insufficient to support personal jurisdiction. *Id.* at 516 n.14. Not only

did the Court reject this argument, Judge Lifland called it "disingenuous," explaining:

> BLI's investments in Fairfield Sentry did not merely "end up" in an
> account at BLMIS as a result of happenstance or coincidence.
> Rather, BLI purposefully availed itself of the benefits and
> protections of New York laws by knowing, intending and
> contemplating that the substantial majority of funds invested in
> Fairfield Sentry would be transferred to BLMIS in New York to be
> invested in New York securities market.

*Id.* at 517; *see also Picard v. JPMorgan Chase & Co.*, 2014 WL 5106909, at \*9 (noting

courts in this liquidation have already "confirmed that defendants who invested directly or

indirectly with BLMIS and received payments from BLMIS as an initial transferee or subsequent

transferee of those initial transfers were subject to the Court's personal jurisdiction"). As framed

by this Court, "BLI intentionally tossed a seed from abroad to take root and grow as a new tree in

the Madoff money orchard in the United States and reap the benefits therefrom." *BLI*, 480 B.R.

at 506. Because Fullerton is identically situated to the defendant in *BLI* with respect to the

fundamental purpose of the investment, *BLI* is controlling and resolves Fullerton's personal

jurisdiction defense without the need for inquiry into its additional New York contacts.

Fullerton's efforts to downplay its investment's New York destination as just a foreseeable

consequence rather than a deliberate and purposeful targeting of the forum is the same

"disingenuous" argument this Court rejected in *BLI*. Here, Fullerton's contacts with New York

were "intertwined with [its] transactions or interactions with the plaintiff or other parties." *Walden*

*v. Fiore*, 571 U.S. 277, 286 (2014). Accordingly, this Court should reaffirm *BLI* and hold that

Fullerton's purposeful targeting of New York and its laws by intentionally investing with BLMIS

through the Fairfield Funds establishes personal jurisdiction over Fullerton.

b.    **The Forum Selection and Choice of Law Clauses in the Subscription Agreement Are Strong Jurisdictional Contacts**

Fullerton's subscription agreement with Sentry further evidences a "strong nexus with New York" that supports jurisdiction. *See BLI*, 480 B.R. at 517 n.15.  When Fullerton invested in Sentry, it signed a subscription agreement through which it submitted to venue in New York, the jurisdiction of the New York courts, and the application of New York law.  Cremona Decl., Ex. 13 at ¶ 19.   Specifically, Fullerton agreed to the subscriptions agreement's clauses in which it (i) "agree[d] that any suit, action or proceeding . . . with respect to this Agreement and the Fund may be brought in New York," (ii) "irrevocably submit[ted] to the jurisdiction of the New York courts with respect to any [p]roceeding," and (iii) agreed that disputes over the agreement "shall be governed and enforced in accordance with the laws of New York," and that if litigating here, it "may not claim that a Proceeding has been brought in an inconvenient forum." *Id*.

Fullerton's arguments that these provisions are immaterial because the Trustee is not a party to the subscription agreement and the Trustee's claims do not arise under the subscription agreement misapprehends the relevance of these provisions in this action.  *See* Mot. at 25-26.  The Trustee is not seeking to enforce the choice of venue or law provisions, nor does the Trustee argue this Court has jurisdiction based on Fullerton's consent.  Rather, Fullerton's agreement to the use of New York law, jurisdiction, and venue in the Subscription Agreement is a significant jurisdictional contact with New York and serves as evidence that Fullerton purposefully directed its activities towards New York.

Courts have repeatedly held that such provisions constitute jurisdictional contacts with the forum state. *See Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004) ("A choice of law clause is a significant factor in a personal jurisdiction analysis because the parties, by so choosing, invoke the benefits and protections of New York law.") (citing *CutCo Indus.,*

*Inc.*, 806 F.2d at 367 and *Sacody Techs., Inc. v. Avant, Inc.*, 862 F. Supp. 1152, 1156 (S.D.N.Y. 1994)); *Chase Manhattan Bank v. Banque Generale Du Com.*, No. 96 CIV. 5184 (KMW), 1997 WL 266968, at *2 (S.D.N.Y. May 20, 1997) ("[A] choice of law provision may constitute a 'significant contact' with the forum state.").

In *BLI*, this Court, without addressing the issue of whether defendants consented to jurisdiction, found that the clauses in the subscription agreements "further evidenc[e] the strong nexus with New York." 480 B.R. at 517 n.15; *see also Motors Liquidation Co. Avoidance Action Trust v. JPMorgan Chase Bank, N.A.* (*In re Motors Liquidation Co.),* 565 B.R. 275, 288–89 (Bankr. S.D.N.Y. 2017) (finding agreement provisions under New York law plus correspondent banking in New York evidenced a relationship "centered in New York").

The cases cited by Fullerton do nothing to support their argument because the Trustee is not arguing that that the forum selection clauses are enforceable, but instead are evidence of purposeful direction of activities and foreseeability of being subject to the laws of the United States. *See* Mot. at 26; *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701–02 (2d Cir. 2009) (holding that "the fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause"); *Lavazza Premium Coffees Corp. v. Prime Line Distribs. Inc.*, No. 20 CIV. 9993 (KPF), 2021 WL 5909976, at *7-8 (S.D.N.Y. Dec. 10, 2021) (holding the forum selection clause did not apply because the claims at issue were not predicated on the agreement that contained the forum-selection clause but that jurisdiction did exist under New York's long-arm statute).

Additionally, the choice of law provisions in the Subscription Agreement is a strong jurisdictional contact to the forum. *Chase Manhattan Bank*, 1997 WL 266968, at *2 ("[A] choice of law provision may constitute a 'significant contact' with the forum state" and "is relevant in

33

determining whether a defendant has purposefully availed itself of a particular forum's laws.");

*see also Sunward Elecs., Inc.*, 362 F.3d at 23 ("A choice of law clause is a significant factor in a personal jurisdiction analysis because the parties, by so choosing, invoke the benefits and protections of New York law"). Here, Fullerton clearly availed itself of the laws of New York by signing the Subscription Agreement through which it submitted to venue in New York, the jurisdiction of the New York courts, the service of process out of the New York courts, and the application of New York law—all of which support the Court's exercise of personal jurisdiction.

### 2.    Fullerton's Purposeful Use of Its Own and Sentry's New York Bank Accounts Establishes Specific Personal Jurisdiction

Fullerton purposefully used U.S. bank accounts to both subscribe into and redeem out of Sentry. Contrary to Fullerton's contention that the mere use of a bank account at a U.S. financial institution to facilitate its investment does not subject it to personal jurisdiction in the United States, *see* Mot. at 27-28, courts have repeatedly held that a defendant's purposeful use of a domestic bank account is sufficient to establish personal jurisdiction.[15] *See, e.g.*, *Eldesouky v. Aziz*, No. 11–CV–6986 (JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York long-arm statute based solely on defendant's use of New York account to receive payment at issue); *HSH Nordbank*, 2012 WL 2921875, at *4 (same).

This Court has similarly found jurisdiction where transferee defendants received transfers from U.S. bank accounts. *See BNP*, 594 B.R. at 191 (finding jurisdiction over subsequent transferee defendants that sent subscriptions to, and received redemptions from, feeder funds' New

---

[15] Certain cases discussed herein address jurisdiction under New York's long-arm statute. Due to the close overlap between the requirements of due process and the New York long-arm statute, courts engaging in a due process analysis frequently cite long-arm cases. *See, e.g.*, *HSH Nordbank AG N.Y. Branch v. Street*, No. 11 CIV. 9405 (DLC), 2012 WL 2921875, at *4 n.3 (S.D.N.Y. July 18, 2012) (noting "the personal jurisdiction analysis under § 302(a)(1) and the Due Process Clause is in most instances essentially coterminous") (citations omitted).

York bank account); *Picard v. Est. of Igoin*, 525 B.R. at 884 (finding jurisdiction over initial transferee defendants who received transfers from BLMIS's New York bank account).

The cases that Fullerton cites to are distinguishable on their facts and do not support their argument. *See* Mot. at 27-28; *Letom Mgmt. Inc. v. Centaur Gaming, LLC*, No. 17 Civ. 3793 (PAE), 2017 WL 4877426, at *5-8 (S.D.N.Y. Oct. 27, 2017) (finding that contractual requirement to make payments to a New York bank account was insufficient to establish personal jurisdiction where no payments were ever made and the defendant had otherwise never entered New York); *Pramer S.C.A. v. Abaplus Int'l Corp.*, 76 A.D.3d 89, 96 (1st Dep't 2010) (finding no jurisdiction where the only basis was "the allegation that VDI deposited bribes into a New York bank account purportedly controlled by plaintiff's former agent, which, by inference, were intended to produce a subsequent corrupt 2002 contract with [the Defendant]"); *Universal Trading & Inv. Co. v. Tymoshenko,* No. 11 Civ. 7877 (PAC), 2012 WL 6186471, at *3 (S.D.N.Y. 2012) (finding no jurisdiction where the Defendant's bank moving money through New York was not found to be purposeful); *Tamam v. Fransabank SAL,* 677 F. Supp. 2d 720, 727-728 (S.D.N.Y. 2010) (finding no jurisdiction where the Amended Complaint did not set forth a substantial relationship between the correspondent bank accounts and the Hizbullah terrorist attack and therefore the use of the accounts for money transfers were not at the root of the action).

Fullerton's reliance on cases asserting common law claims brought against fund service providers is equally unavailing. *See* Mot. at 27-28 (citing *Hau Yin To v. HSBC Holdings PLC,* No. 15-CV-3590-LTS-SN, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd,* 700 F. App'x 66 (2d Cir. 2017); *Hill v. HSBC Bank PLC,* 207 F. Supp. 3d 333 (S.D.N.Y. 2016). This Court has already determined that this line of cases is not relevant to the Trustee's actions against defendants like Fullerton who invested in BLMIS's feeder funds. *See BNP*, 594 B.R. at 192 ("*Hill* has no bearing

35

on the issue of personal jurisdiction arising from the Defendants' redemptions as investors in the

Tremont funds which arose from their New York contacts with the Tremont Funds."). The present

case is not a dispute between two parties about services owed under a foreign contract, like the

breach of fiduciary duty and other claims in *SPV*, *14, Hill*, and *To*. This action is brought by a

U.S. Trustee to recover fraudulent transfers from an investor whose transfers of funds to and from

U.S. correspondent accounts evidence an intent to direct activity towards the U.S. securities

markets. *See BLI*, 480 B.R. at 513 ("This movement of money to and from BLMIS in the United

States, as contemplated by the Agreements, was not fortuitous or incidental; instead, it was 'the

ultimate objective' and the '*raison d'etre*' of the Agreement between BLI and Fairfield Sentry.").

To the extent that Fullerton argues that the bank accounts used were correspondent

accounts, not direct accounts, this distinction is immaterial in a personal jurisdiction analysis. In

the leading case, *Licci v. Lebanese Canadian Bank, SAL*, the New York Court of Appeals held that

a defendant's use of a correspondent bank account in New York supports a finding of jurisdiction

"even if no other contacts between the defendant and New York can be established" provided that

such use was "purposeful." 20 N.Y.3d 327, 338 (2012); *see also Licci ex rel. Licci v. Lebanese

Can. Bank, SAL*, 732 F.3d 161, 165, 171 (2d Cir. 2013) (finding jurisdiction over defendant with

"no operations, branches, or employees in the United States" based on repeated use of New York's

banking system); *Off. Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic

Bank*, 549 B.R. 56, 67–69 (Bankr. S.D.N.Y. 2016) (finding jurisdiction based on designation and

use of New York correspondent accounts to receive transfers). What matters is that the use was

"purposeful," and not coincidental or passive. *See Licci*, 20 N.Y.3d at 338–39 (finding jurisdiction

where use of correspondent account was not "coincidental," and distinguishing case where

defendant passively received funds due entirely to another party's actions).

36

Defendant's use of New York bank accounts to direct funds to BLMIS through Sentry is sufficient to establish minimum contacts with the United States, specifically New York. Furthermore, the very transfer that the Trustee seeks to recover was deposited into and received from bank accounts located in New York, thereby meeting the second prong of the New York long-arm statute. Thus, the Trustee has demonstrated this Court has specific personal jurisdiction over the Defendant.

**B.**       **Fullerton's Contacts with the Forum are Sufficiently Related to the Trustee's Claims**

The Trustee's claims also "arise out of or relate to" Fullerton's contacts with New York. As the Supreme Court recently held, this prong does not require a causal relationship. *See Ford Motor Co.*, 141 S. Ct. at 1026. Fullerton could not invest in Sentry without executing a subscription agreement. Rather, as this Court has previously stated, this prong may be satisfied if the defendant's conduct "involves at least in part financial transactions that touch the forum." *In re Fairfield Sentry Ltd.*, 627 B.R. at 566 (citation and quotation marks omitted); *see also Bahrain Islamic Bank*, 549 B.R. at 68-71 (rejecting causation and requiring only that the claim is not completely "unmoored" from the transaction).

Fullerton's use of U.S. bank accounts in New York and its execution of a subscription agreement plainly "relate to" the Trustee's claims and evidence a strong nexus between this case and New York. The very transfers which came through these U.S. bank accounts in New York are central to the Trustee's claims in this proceeding. Furthermore, Fullerton's subscription into and redemption from Sentry are two sides of the same coin. Fullerton could not invest in and profit from Sentry without a subscription agreement. Cremona Decl., Ex. 13. Because Fullerton's subscription agreement was a necessary predicate to its receipt of

customer property through the Sentry, the subscription agreement is sufficiently related to the Trustee's claims to recover that customer property from Fullerton

### C.    The Exercise of Personal Jurisdiction Over Fullerton is Reasonable

Fullerton fails to present a compelling reason why jurisdiction would be unreasonable. Where a plaintiff has made a threshold showing of minimum contacts, a defendant opposing the exercise of personal jurisdiction must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Chloé*, 616 F.3d at 165.  Indeed, this Court has found "it would be a 'rare' case where the defendant's minimum contacts with the forum support the exercise of personal jurisdiction but it is unreasonable to force the defendant to defend the action in that forum." *BNP*, 594 B.R. at 188 (citation omitted).

This is not that "rare" case.  The burden on Fullerton is minimal, United States has a strong interest in applying U.S. law in the BLMIS liquidation, and the Trustee has a strong interested in litigation in the United States.  *See Maxam Absolute Return Fund, L.P.*, 460 B.R. at 119 (finding New York counsel and conveniences of modern communication and transportation minimize any such burden); *see also In re Picard*, 917 F.3d at 103 (noting "compelling interest in allowing domestic estates to recover fraudulently transferred property").  Accordingly, this Court's exercise of jurisdiction over Fullerton is more than reasonable.

### D.    The Trustee Is Entitled to Jurisdictional Discovery

If this Court finds that the Trustee has not made a *prima facie* showing of jurisdiction, the Trustee respectfully requests jurisdictional discovery.  Such discovery may be authorized where a plaintiff has made "a threshold showing" that there is some basis for jurisdiction.  *Kiobel v. Royal Dutch Petroleum Co.*, No. 02 CIV. 7618 (KMW)(HBP), 2009 WL 3817590, at *4 (S.D.N.Y. Nov. 16, 2009).  The Trustee has shown how, *inter alia*, Fullerton's parent company, met with Fairfield in New York, Fullerton purposefully invested with BLMIS through Madoff's feeder funds, and

relied upon U.S. bank accounts in New York to receive BLMIS customer property. Cremona Decl.,

Ex. 12 at *814-815, 13 at *824.  At a minimum, these facts establish a "threshold showing" of

jurisdiction.  *Kiobel,* 2009 WL 3817590, at *6.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests the Court deny Fullerton's

Motion.

Dated: May 18, 2022
      New York, New York

*/s/ Nicholas J. Cremona*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Robyn M. Feldstein
Email:  rfeldstein@bakerlaw.com
Alexa T. Bordner
Email:  abordner@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for
the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment
Securities LLC and Chapter 7 Estate of
Bernard L. Madoff*