**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation (Substantively Consolidated) |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L. MADOFF INVESTMENT SECURITIES LLC, AND BERNARD L. MADOFF, | Adv. Pro. No. 11-02551 (CGM) |
| Plaintiff, | |
| v. | |
| DELTA NATIONAL BANK AND TRUST COMPANY, | |
| Defendant. | |

**DEFENDANT DELTA NATIONAL BANK AND TRUST
COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF IRVING H. PICARD'S COMPLAINT**

April 29, 2022

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..........................................................................................1

BACKGROUND ..............................................................................................................2

I.      COMPLAINT AND SETTLEMENT WITH FAIRFIELD SENTRY. ..............................3

II.     COMPLAINT AGAINST DELTA BANK. ....................................................................4

III.    PROCEDURAL HISTORY............................................................................................6

ARGUMENT ..................................................................................................................6

I.      THE COMPLAINT VIOLATES RULE 8'S REQUIREMENT OF A "SHORT
        AND PLAIN STATEMENT OF THE CLAIM."..............................................................7

II.     THE COMPLAINT DOES NOT STATE A CLAIM FOR RECOVERY OF
        AVOIDED TRANSFERS UNDER SECTION 550(A). ....................................................9

        A.      The Complaint Does Not Allege that Any Transfers Were Avoided. ....................9

        B.      The Complaint Does Not Allege that Delta Bank Received Customer
                Property.........................................................................................................13

III.    SECTION 546(e)'S SAFE HARBOR BARS RECOVERY FOR THE ALLEGED
        TRANSFERS THAT OCCURRED MORE THAN TWO YEARS BEFORE THE
        BANKRUPTCY PETITION WAS FILED. ...................................................................15

        A.      Section 546(e) Applies to the Initial Transfers to Fairfield Sentry Because
                Payments Were Made by a Stockbroker in Connection with Securities
                Contracts. .....................................................................................................16

        B.      Section 546(e) Applies to Subsequent Transfers to Delta Bank Because
                Payments Were Made to Delta Bank, a Financial Institution, in
                Connection with Valid Securities Contracts. ......................................................20

IV.     THE COMPLAINT ESTABLISHES DELTA BANK'S GOOD FAITH. ........................22

        A.      Delta Bank Took for Value.............................................................................22

        B.      Delta Bank Took in Good Faith.......................................................................23

        C.      Delta Bank Lacked Knowledge of the Voidability of the Initial Transfers. ..........25

V.      THE CLAIMS SHOULD BE DISMISSED WITH PREJUDICE...................................25

CONCLUSION...............................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft* v. *Iqbal*,
   556 U.S. 662 (2009) ...................................................................................... 6, 13-14

*Bell Atl. Corp.* v. *Twombly*,
   550 U.S. 544 (2007) ............................................................................................6, 8

*Brandt* v. *Horseshoe Hammond, LLC (In re Equip. Acq. Res., Inc.)*,
   803 F.3d 835 (7th Cir. 2015) .................................................................................25

*Caminero* v. *Metro. Transp. Auth.*,
   2019 WL 5722011 (S.D.N.Y. May 2, 2019) .........................................................12

*In re Caremerica, Inc.*,
   409 B.R. 737 (Bankr. E.D.N.C. 2009) ...................................................................14

*Constellation Energy Commodities Grp. Inc.* v. *Transfield ER Cape Ltd.*,
   801 F. Supp. 2d 211 (S.D.N.Y. 2011) ..................................................................8, 9

*In re Direct Access Partners, LLC*,
   602 B.R. 495 (Bankr. S.D.N.Y. 2019) ............................................................. 10-11

*James* v. *Borough of Manhattan Cmty. Coll.*,
   2021 WL 5567848 (S.D.N.Y. Nov. 29, 2021) ................................................. 12-13

*In re JVJ Pharmacy, Inc.*,
   630 B.R. 388 (S.D.N.Y. 2021) ...............................................................................10

*In re Lyondell Chem. Co.*,
   503 B.R. 348 (Bankr. S.D.N.Y. 2014) ...................................................................12

*In re M. Fabrikant & Sons, Inc.*,
   394 B.R. 721 (Bankr. S.D.N.Y. 2008) ...................................................................11

*Nycomed U.S. Inc.* v. *Glenmark Genetics, Inc.*,
   2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010) .........................................................9

*In re Picard*,
   917 F.3d 85 (2d Cir. 2019) ..............................................................................6, 10

*Picard* v. *ABN AMRO Bank N.A. (SIPC* v. *BLMIS)*,
   2020 WL 1584491 (Bankr. S.D.N.Y. Mar. 31, 2020) .....................................22, 23

*Picard* v. *Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  12 F.4th 171 (2d Cir. 2021) ................................................................ *passim*

*Picard* v. *Fairfield Inv. Fund Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ................................. 7, 12, 16, 20

*Picard* v. *Fishman (In re BLMIS)*,
  773 F.3d 411 (2d Cir. 2014) ................................................................ *passim*

*Picard* v. *Greiff*,
  476 B.R. 715 (S.D.N.Y. 2012) .............................................................. 17

*Picard* v. *Katz*,
  462 B.R. 447 (S.D.N.Y. 2011) .............................................................. 17

*Picard* v. *Nelson*,
  610 B.R. 197 (Bankr. S.D.N.Y. 2019) ................................................... 17

*Picard* v. *Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*,
  542 B.R. 100 (Bankr. S.D.N.Y. 2015) .................................................. 9, 13, 15

*SIPC* v. *Bernard L. Madoff Inv. Sec. LLC*,
  501 B.R. 26 (S.D.N.Y. 2013) ............................................................... 11, 21

*SIPC* v. *Bernard L. Madoff Inv. Sec. LLC*,
  516 B.R. 18 (S.D.N.Y. 2014) ............................................................... 25

*SIPC* v. *Bernard L. Madoff Inv. Sec. LLC*,
  2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ......................................... *passim*

*In re Trib. Co. Fraudulent Conv. Litig.*,
  946 F.3d 66 (2d Cir. 2019) .................................................................. 18

*United States* v. *Int'l Longshoremen Ass'n*,
  518 F. Supp. 2d 422 (E.D.N.Y. 2007) .................................................. 7-8

*United States* v. *Space Hunters, Inc.*,
  429 F.3d 416 (2d Cir. 2005) ................................................................ 6-7

*United States* v. *Wilson*,
  503 U.S. 329 (1992) ........................................................................... 11

*United States ex rel. Grubea* v. *Rosicki, Rosicki & Assocs., P.C.*,
  319 F. Supp. 3d 747 (S.D.N.Y. 2018) .................................................. 25-26

**Statutes and Rules**

11 U.S.C. § 101 .................................................................................. 21

11 U.S.C. § 546 .................................................................................................................12, 15

11 U.S.C. § 550 .................................................................................................................11, 22

11 U.S.C. § 551 ...................................................................................................................9, 11

11 U.S.C. § 741 .........................................................................................................................18

15 U.S.C. § 78fff-2 ...................................................................................................................13

Fed. R. Bankr. P. 7008 ...............................................................................................................6

Fed. R. Bankr. P. 7012 ...............................................................................................................6

Fed. R. Civ. P. 8 .........................................................................................................................7

Fed. R. Civ. P. 10(c) ...................................................................................................................9

**Other Authority**

5 COLLIER ON BANKRUPTCY ¶ 550.03[1] (Richard Levin & Henry J.
    Sommer eds., 16th ed. 2022) .................................................................................................22

Defendant Delta National Bank and Trust Company ("Delta Bank") respectfully requests that the Court dismiss with prejudice the August 25, 2011 Complaint filed by Plaintiff, Irving H. Picard (the "Trustee"), trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the estate of Bernard L. Madoff, for failure to state any claim under Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable to this adversary proceeding by Rules 7008 and 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## PRELIMINARY STATEMENT

This case concerns a series of alleged transfers of money between BLMIS and feeder fund Fairfield Sentry Limited ("Fairfield Sentry"), and subsequent transfers of funds from Fairfield Sentry to Delta Bank on behalf of and at the express direction of Delta Bank's clients. For the reasons stated below, the Complaint fails to plead sufficient facts to show that any transfers to Delta Bank can be avoided.

*First*, the 45-paragraph (12-page) Complaint is virtually devoid of allegations specific to Delta Bank. Plaintiff tries to remedy this by improperly incorporating by reference an entirely separate complaint in a separate lawsuit, which alleges 31 causes of action against dozens of defendants, none of whom are Delta Bank. This comes nowhere close to Rule 8's requirement that a complaint state a "short and plain statement of the claim showing that the pleader is entitled to relief."

*Second*, despite having access to Fairfield Sentry's records regarding its dealings with BLMIS for over a decade, the Trustee does not (i) plead facts establishing that the alleged transfers have been avoided or (ii) identify in his Complaint which of the alleged transactions from BLMIS to Fairfield Sentry and from Fairfield Sentry to Delta Bank contained customer property,

which is required for BLMIS to recover any of the funds.  Purely speculative allegations of the

sort made in the Complaint do not state a claim under the Federal Rules or Bankruptcy Rules.

> *Third*, even if the Court finds that the Complaint properly pleads that Delta Bank

received customer property, the majority of the alleged funds at issue are protected by the safe

harbor of Section 546(e) of Title 11, United States Code (the "Bankruptcy Code"), which provides

that transfers made more than two years prior to the date of the bankruptcy petition cannot be

avoided.  The safe harbor applies for two independent reasons:  (i) the alleged transfers from

BLMIS to Fairfield Sentry were made by a stockbroker in connection with securities contracts;

and (ii) the alleged subsequent transfers were made to a financial institution—here, Delta Bank—

in connection with the same securities contracts.

> *Fourth*, the facts alleged in the Complaint establish that Delta Bank acted in good

faith as a subsequent transferee and, therefore, the Trustee cannot recover for any of the alleged

transfers.

> *Fifth*, despite having access to myriad documents through discovery, including full

access to Fairfield Sentry's books and records, for over a decade, the Trustee has failed to plead

facts supporting any claim and, therefore, his failure to do so indicates an inability to cure any of

the deficiencies in his complaint.

> Because the Trustee has failed to allege a cognizable claim against Delta Bank,

the Court should dismiss the Complaint with prejudice.

## **BACKGROUND**

> Delta Bank is a nationally chartered bank based in New York, with a branch in

Miami, that offers private banking services.  (Compl. ¶ 3, Ex. A.)

> The Complaint against Delta Bank contains no allegations about its involvement

with the BLMIS Ponzi scheme or how Delta Bank received customer property.  Still, the Trustee

seeks to recover funds from Delta Bank in one of 81 similar proceedings against alleged subsequent transferees. (*See* Trustee's Twenty-Sixth Interim Report for the Period Apr. 21, 2021 through Sept. 30, 2021 ¶ 229 & Ex. D, *SIPC* v. *Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y. Oct. 29, 2021), ECF No. 20821.)

## I.    COMPLAINT AND SETTLEMENT WITH FAIRFIELD SENTRY.

Prior to filing a complaint against Delta Bank, the Trustee initiated an adversary proceeding against Fairfield Sentry in *Picard* v. *Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y.) (the "Picard/Fairfield Action"), in which the Trustee alleged that he "sought to avoid and recover initial transfers of Customer Property from BLMIS to Fairfield Sentry, in the amount of approximately $3 billion." (Compl. ¶ 33; *see* Amended Complaint, *Picard* v. *Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. July 20, 2010), ECF No. 23 (the "Fairfield Amended Complaint" or "FAC").)    In describing Fairfield Sentry's conduct, the Fairfield Amended Complaint alleged that Fairfield Sentry "went to great lengths to keep their investors far away from Madoff" (FAC ¶ 342), by "misl[eading] investors by making false excuses when the investors requested meetings with Madoff" (FAC ¶ 344); in 2002, "remov[ing] all references to BLMIS from their marketing materials" and offering memorandum (FAC ¶ 346); "actively and repeatedly 'block[ing]' investors wishing to obtain more information" (FAC ¶ 348); "cover[ing] up Madoff's actual role with the FGG funds" (FAC ¶ 350); and selling "the false assurance that they conducted superior due diligence" (FAC ¶ 362).    According to the Fairfield Amended Complaint, even the United States Securities and Exchange Commission ("SEC") could not uncover the fraud when it investigated Madoff in 2006. (FAC ¶¶ 351, 360-61.)

Subsequently, on June 7, 2011—nearly 11 years ago—this Court approved a settlement agreement between the Trustee and the liquidators of Fairfield Sentry and two affiliated funds, Fairfield Sigma Limited and Fairfield Lambda Limited. (*See* Motion for Entry of Order

Pursuant to Section 105(a) the Bankruptcy Code and Rules 2002(a)(3) and 9019(a) of the Federal Rules of Bankruptcy Procedure Approving an Agreement Ex. A, *Picard* v. *Fairfield Sentry Fund Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. May 9, 2011), ECF No. 69-2 (the "Fairfield Settlement Agreement" or "FSA").)    Pursuant to the Fairfield Settlement Agreement, the liquidators consented to a $3.054 billion judgment against Fairfield Sentry.  (FSA ¶ 1.)  Also as part of the Fairfield Settlement Agreement, the Liquidators and the Trustee agreed to cooperate and "provide reasonable access to the other's documents, data, and other information" related to, among other subjects, claims against subsequent transferees of Fairfield funds.   (FSA ¶ 14.) Accordingly, the Trustee has had access to Fairfield Sentry's books, records, and other relevant documents since June 2011.

## II.    COMPLAINT AGAINST DELTA BANK.

On August 25, 2011, the Trustee filed a 12-page, 45-paragraph complaint against Delta Bank, asserting one count for the recovery of a series of 52 transfers he alleges occurred between January 2003 and November 2008, totaling approximately $20,634,958.  (Compl. ¶ 39 & Ex. D.)  Thirty-five of those alleged transfers, totaling $12,444,735, purportedly occurred before December 2006.[1]  (*See* Compl. Ex. D at 1.)

The majority of the allegations in the Complaint focus on Madoff's Ponzi scheme and certain fund transfers from BLMIS to Fairfield Sentry.  (*See, e.g.*, Compl. ¶¶ 9-19, 21-31, 33-38.)  None of these allegations refer to Delta Bank.  Even with the benefit of access to Fairfield Sentry's books and records, the Complaint only contains four allegations about Delta Bank:

- With this Complaint, the Trustee seeks to recover approximately $20,634,958 in subsequent transfers of Customer Property made to Defendant Delta Bank. (Compl. ¶ 2.)

---

[1]     In December 2008, the bankruptcy petition was filed.

- Defendant Delta Bank also knowingly received transfers of Customer Property from BLMIS by withdrawing money from Fairfield Sentry.  (Compl. ¶ 6.)

- Defendant Delta Bank received subsequent transfers of Customer Property from Fairfield Sentry, which maintained one or more customer accounts with BLMIS.  (Compl. ¶ 32.)

- A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Delta Bank and is recoverable from Defendant Delta Bank pursuant to section 550 of the Bankruptcy Code.  Based on the Trustee's investigation to date, approximately $20,634,958 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Delta Bank (the "Fairfield Sentry Subsequent Transfers") [defined as the 52 transfers listed on Exhibit D to the Complaint].  (Compl. ¶ 39.)

From these four paragraphs, the Trustee seeks to recover the approximately $20,634,958 from Delta Bank as a subsequent transferee through section 550(a) of the Bankruptcy Code.  (Compl. ¶ 42.)

To fill in the gaps left by the minimal Complaint, the Trustee purports to incorporate the entire Fairfield Amended Complaint, which comprises 217 pages and asserts 31 different causes of action against more than 40 defendants, into the Delta Bank Complaint.  (*See* Compl. ¶ 33.)  The Fairfield Amended Complaint asserts, among other things, claims for:  (i) turnover and accounting (FAC ¶¶ 549-56); (ii) unjust enrichment (FAC ¶¶ 733-39); (iii) conversion (FAC ¶¶ 740-44); (iv) money had and received (FAC ¶¶ 745-47); (v) aiding and abetting fraud (FAC ¶¶ 748-93); (vi) aiding and abetting breach of fiduciary duty (FAC ¶¶ 794-98); and (vii) objections to the allowance of claims against a variety of different parties (FAC ¶¶ 728-732).  However, Delta Bank is neither a party to, nor mentioned in, the Fairfield Amended Complaint.  Moreover, the Trustee does not specify which allegations set forth in the Fairfield Amended Complaint are relevant to the claims against Delta Bank.  (*See* Compl. ¶ 33.)

On August 28, 2020, the Trustee filed a second amended complaint in the Picard/Fairfield Action, (*Picard* v. *Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y.

-5-

Aug. 28, 2020), ECF No. 286 (the "Fairfield SAC")).  The Fairfield SAC, like the Fairfield

Amended Complaint it supersedes, makes no mention of Delta Bank.  The Trustee has not sought

to amend the Delta Bank Complaint to incorporate the superseding Fairfield SAC.

## III.    PROCEDURAL HISTORY.

On March 3, 2017, the Bankruptcy Court dismissed the Complaint in this action.

(ECF No. 76.)  The Trustee appealed, and the Second Circuit reversed on February 25, 2019.  *In

re Picard*, 917 F.3d 85 (2d Cir. 2019), *cert. denied,* 140 S. Ct. 2824 (2020).  Following the denial

of certiorari in June 2020, the Second Circuit vacated the judgment and remanded the case (and

approximately 80 other parallel cases) to this Court, which reopened it on October 27, 2020.  Upon

remand, the Trustee took no action on this case until after this Court's scheduling conference on

September 15, 2021.  (ECF 94.)  Thereafter, the parties met and conferred.  The Trustee informed

Delta Bank that he would not seek to amend the Complaint, and the parties established a briefing

schedule for this motion.  (*See* ECF No. 96.)

## ARGUMENT

Federal Rule 12(b)(6), applicable through Bankruptcy Rule 7012(b), requires

dismissal of a complaint if it fails to allege "enough facts to state a claim to relief that is plausible

on its face," or if its allegations, "however true, could not raise a claim of entitlement to relief."

*Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 558, 570 (2007).  While the Court must draw all

reasonable inferences in favor of the plaintiff, it need not credit "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements."  *Ashcroft* v. *Iqbal*, 556

U.S. 662, 678 (2009).

The Court may grant a motion to dismiss based on an affirmative defense when that

defense is clear from the face of the complaint. *See United States* v. *Space Hunters, Inc.*, 429 F.3d

416, 426 (2d Cir. 2005); *Picard* v. *Fairfield Inv. Fund Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021).

The claim asserted in the Complaint in this action is both implausible and defective as a matter of law and should be dismissed with prejudice.

## I.    THE COMPLAINT VIOLATES RULE 8'S REQUIREMENT OF A "SHORT AND PLAIN STATEMENT OF THE CLAIM."

As a threshold matter, the Complaint should be dismissed because it does not contain "a short and plain statement of the claim showing that [Plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rather than allege specific facts relevant to this action, Plaintiff instead incorporates by reference a completely separate complaint filed in a separate proceeding. (*See* Compl. ¶ 33 ("The Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein.").) The Complaint contains zero explanation how the Fairfield Amended Complaint, or anything set forth in it, relates to the single claim the Trustee brings against Delta Bank. Compared to Plaintiff's Complaint here, which consists of only 12 pages and 45 enumerated paragraphs, the Fairfield Amended Complaint spans 217 pages and 798 paragraphs. It contains factual allegations about dozens of parties that are completely irrelevant here. The Trustee makes no attempt to identify which of those 798 paragraphs have any relationship to Delta Bank. The Trustee makes no reference to the fact that the Fairfield Amended Complaint was superseded by the Fairfield SAC. All of this violates the most basic pleading principle of Rule 8. Courts in these circumstances routinely dismiss claims that are based on allegations incorporated wholesale and without explanation from entirely different complaints.

In *United States* v. *International Longshoremen Association*, the Government attempted to state a claim for RICO violations against the defendant by "incorporating factual allegations contained in several prior lengthy criminal and civil RICO pleadings." 518 F. Supp.

2d 422, 463 (E.D.N.Y. 2007).    The district court dismissed the claim, holding that the
Government's attempt to rely on allegations from separate pleadings to state a claim in the instant
case was "a blatant violation of Rule 8(a)(2)'s direction that a civil plaintiff provide a 'short and
plain statement of the claim showing that the pleader is entitled to relief.'"  *Id.* (quoting Fed. R.
Civ. P. 8(a)(2)).    Similarly, in *Constellation Energy Commodities Group Inc.* v. *Transfield ER
Cape Ltd.*, the court rejected one of the plaintiff's claims, which was based on "allegations [that]
reference[d] mere unproven allegations lodged against [defendants] . . . in a totally separate,
unrelated action."  801 F. Supp. 2d 211, 223 (S.D.N.Y. 2011).    The court held that once the
"transplanted allegations" were "[s]tripp[ed] away" all that "remain[ed] of the . . . claim" were two
"conclusory allegations [that were] manifestly insufficient to state a plausible claim for relief."  *Id.*
at 223-24.

        The Trustee's Complaint here suffers from the same fatal defect.    The Trustee
attempts to adopt wholesale the entire Fairfield Amended Complaint, which asserts 31 causes of
action against 40 different defendants, without specifying which of the multitude of allegations
from the Fairfield Amended Complaint apply in this case.    The Trustee's improper pleading thus
directly violates Rule 8(a)(2)'s requirement of a short and plain statement, *see id.* at 223 ("A
pleading may not adopt other pleadings from a wholly separate action."  (citing *Texas Water
Supply Corp.* v. *R.F.C.*, 204 F.2d 190, 196-97 (5th Cir. 1953))), and it does not "give the defendant
fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555
(internal quotation marks omitted).    Once those allegations from the Fairfield Amended Complaint
are "[s]tripp[ed] away" from the Complaint here, all that remains are four conclusory allegations

about the payments made to Delta Bank, which are clearly "insufficient to state a plausible claim for relief." *Constellation Energy*, 801 F. Supp. 2d at 223-24.[2]

## II.    THE COMPLAINT DOES NOT STATE A CLAIM FOR RECOVERY OF AVOIDED TRANSFERS UNDER SECTION 550(A).

Beyond the impropriety of incorporating an entirely separate 217-page pleading, the Trustee's single claim against Delta Bank under Section 550 of the Bankruptcy Code[3] must be dismissed because the Complaint does not allege facts establishing two of the essential elements of such a claim:  (i) that any of the alleged transfers were avoided, *see Picard* v. *Citibank, N.A. (In re Bernard L. Madoff Inv. Secs. LLC)*, 12 F.4th 171, 197 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1209 (2022); or (ii) that Delta Bank had received any customer property, *see Picard* v. *Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015).

### A.    The Complaint Does Not Allege that Any Transfers Were Avoided.

To state a claim for recovery under Section 550(a), the Trustee must allege "that the transfer was avoided, and that the defendant is an initial or subsequent transferee." *Citibank*, 12 F.4th at 197.  Thus, "before [the Trustee] can recover the funds . . . he must first avoid BLMIS's transfers." *Id.* at 181.  Nowhere in the Complaint does the Trustee allege that any transfers have been avoided.  At best, the Complaint alleges only that BLMIS's transfers were "avoidable"

---

[2]    Although Fed. R. Civ. P. 10(c) permits the adoption by reference of a statement from "elsewhere in the same pleading or in any other pleading or motion," "[a] Rule 10(c) adoption clause that does little more than make wholesale reference to the contents of a prior pleading"— as occurred here—"exemplifies the kind of incorporation that fails to give the requisite guidance to the responding party." *Nycomed U.S. Inc.* v. *Glenmark Genetics, Inc.*, 2010 WL 1257803, at *4 & n.6 (E.D.N.Y. Mar. 26, 2010) (internal quotation marks omitted).

[3]    Count One of the Complaint is for recovery under Sections 550(a) and 551, but Section 551 merely states that avoided transfers are "preserved for the benefit of the estate," 11 U.S.C. § 551, and it does not provide the purported operative cause of action.  (*See* Compl. ¶ 42 ("Defendant Delta Bank received the Fairfield Sentry Subsequent Transfers, totaling approximately $20,634,958, which are recoverable pursuant to section 550(a) of the Bankruptcy Code.").)

(Compl. ¶¶ 26, 34-36), but as two recent decisions from the Second Circuit make clear, this is insufficient.

Most recently, in the context of analyzing the good faith defense set forth in Section 550(b) of the Bankruptcy Code, the Second Circuit stated, "Section 550 authorizes a trustee to recover the property transferred by the debtor to any transferee (initial or subsequent) to the extent that a transfer is avoided under [an avoiding power].  As a result, before [the Trustee] can recover the funds from Appellees*, he must first avoid BLMIS's transfers to Appellees*." *Citibank*, 12 F.4th at 181 (emphasis added) (citation omitted).  The Court then added that "Section 550 authorizes a trustee to recover transfers *voided under Section 548* from initial and subsequent transferees," *id.*, before stating that "the elements a trustee must satisfy to recover transferred property [are]:  *that the transfer was avoided*, and that the defendant is an initial or subsequent transferee," *id.* at 197 (emphasis added) (citing 5 COLLIER ON BANKRUPTCY ¶ 550.02 (16th ed. 2021)).  The *Citibank* decision directly follows *In re Picard*, which was decided two years earlier and came to the same conclusion.  In *In re Picard*, when discussing the relationship between the avoidance and recovery powers, the court explained that "*[o]nly once a transfer is avoided* may a trustee recover the underlying property.*" 917 F.3d at 95 (emphasis added).  Thus, "a trustee cannot use § 550(a) to recover property unless the trustee has first avoided a transfer under one of these provisions." *Id.* at 97.

Lower courts have since followed the Second Circuit's decisions.  For example, in *In re JVJ Pharmacy, Inc.*, the district court held that the relevant "[t]ransfers must be avoided under section 548(a)(1) before the Trustee can invoke section 550 to seek recovery." 630 B.R. 388, 401 (S.D.N.Y. 2021) (citing *Picard*, 917 F.3d at 98).  Similarly, Judge Wiles held that "section 550 makes clear that a trustee may only recover transfers from subsequent transferees if the initial

transfer itself 'is avoided.'" *In re Direct Access Partners, LLC*, 602 B.R. 495, 518 (Bankr. S.D.N.Y. 2019) (Wiles, J.).

Moreover, these decisions confirm what the language of the Bankruptcy Code provides. Section 550(a) states, "to the extent that a transfer is avoided under section [544 or 548], the trustee may recover" (emphasis added) from initial or subsequent transferees. The words "is avoided" are different from the word "avoidable," as the Trustee alleges here. The key phrase in the statute signifies the present state of being "avoided," rather than the future possibility of becoming "avoided." *See In re M. Fabrikant & Sons, Inc.*, 394 B.R. 721, 741 (Bankr. S.D.N.Y. 2008) ("'Avoid' is a verb that means 'to render void, or to annul, vacate, defeat, evade, invalidate.' It is not synonymous with 'avoidable.' Avoidable, or 'voidable,' is an adjective. It describes a transaction that can be voided, but that is valid until annulled." (internal citations and quotations omitted)); *cf. United States* v. *Wilson*, 503 U.S. 329, 333 (1992) ("Congress' use of a verb tense is significant in construing statutes.").[4]

While the district court has previously concluded that Section 550(a) only requires a showing "that a given transfer is avoidable," *SIPC* v. *Bernard L. Madoff Inv. Sec. LLC*, 501 B.R. 26, 37 (S.D.N.Y. 2013), this cannot be reconciled with the plain text of the statute or the Second Circuit's subsequent rulings. *See, e.g.*, *Citibank*, 12 F.4th at 181 ("[B]efore [the Trustee] can recover the funds from Appellees, he must first avoid BLMIS's transfers to Appellees."). Given the Second Circuit's rulings and because this Court is not bound by prior decisions of the District

---

[4]    The title of Section 550 – "[l]iability for avoided transfer" – and the subsections that follow Section 550(a) also use the term "avoided" or the phrase "is avoided," rather than "avoidable," further demonstrating that a transfer must have first been avoided in order to be able to be recovered. *See* 11 U.S.C. §§ 550 ("Liability of transferee of avoided transfer"), 550(b)(1), 550(c); *see also* 11 U.S.C. § 551 ("Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title . . . is preserved for the benefit of the estate but only with respect to property of the estate.").

Court, *see In re Lyondell Chem. Co.*, 503 B.R. 348, 374 n.127 (Bankr. S.D.N.Y. 2014) ("district court decisions are not binding on bankruptcy courts except with respect to any district court mandate pursuant to an appeal"), *abrogated on other grounds*, *In re Trib. Co. Fraudulent Conv. Litig.*, 946 F.3d 66 (2d Cir. 2019) ("*Tribune I*"), this Court should rely on the recent pronouncements from the Second Circuit that a claim must be avoided before the Trustee can recover under Section 550(a).[5]

Because the Trustee has not alleged in the Complaint here that any of the transfers have been avoided, he cannot state a claim under Section 550.

To the extent the Trustee would seek to amend his complaint to add an avoidance action, it must be denied because it would be time-barred.  Section 546(a) requires that an avoidance action be commenced not later than two years after the commencement of the bankruptcy case.  *See* 11 U.S.C. § 546(a) ("An action or proceeding under section 544 [or] 548 . . . of this title may not be commenced after . . . 2 years after the entry of the order for relief . . . .").  Here, the two-year Section 546(a) period expired more than 11 years ago, in December 2010.  Thus, any amendment to assert an avoidance claim would now be futile.  *See Caminero* v. *Metro. Transp. Auth.*, 2019 WL 5722011, at *4 (S.D.N.Y. May 2, 2019) ("[W]hen dismissal without prejudice would be futile because the plaintiff's claims would be time-barred if refiled, dismissal with prejudice has been held to be appropriate."), *report and recommendation adopted*, 2019 WL 3526554 (S.D.N.Y. Aug. 2, 2019); *see also James* v. *Borough of Manhattan Cmty. Coll.*, 2021 WL

---

[5]    Although the Court previously indicated that it is sufficient to plead that a transfer is avoidable, *see Fairfield Inv. Fund Ltd.*, 2021 WL 3477479, at *7, that decision came before the Second Circuit's decision in *Citibank*.  In light of *Citibank*, it is clear now that the Trustee must plead that the transfers have been avoided before he can recover any funds.  *See* 12 F.4th at 181 ("[B]efore [the Trustee] can recover the funds from Appellees, he must first avoid BLMIS's transfers to Appellees.").

-12-

5567848, at *12 (S.D.N.Y. Nov. 29, 2021) (dismissing with prejudice claims that are "time-barred by statute of limitations").

>    **B.    The Complaint Does Not Allege that Delta Bank Received Customer Property.**

The trustee's single claim against Delta Bank also must be dismissed because the Complaint does not allege that Delta Bank received BLMIS customer property.  Pursuant to SIPA, the Trustee must allege that each transfer Delta Bank received from Fairfield Sentry was a subsequent transfer of BLMIS customer property that was fraudulently transferred from BLMIS to Fairfield Sentry.  *See* 15 U.S.C. § 78fff-2(c)(3) ("[T]he trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property if and to the extent that such transfer is voidable or void under the provisions of Title 11."). Specifically, the Complaint "must allege facts that support the inference that the funds at issue originated with the BLMIS[] and contain the 'necessary vital statistics'—the 'who, when, and how much' of the transfers to establish that an entity was a subsequent transferee of the funds." *Shapiro*, 542 B.R. at 119.  The Complaint contains no such allegations.  Instead, the Complaint relies on vague assertions that (i) during the six years prior to the date of the bankruptcy petition, "BLMIS made transfers to Fairfield Sentry of approximately $3 billion," about $1.6 billion of which was allegedly transferred within two years of the petition date (Compl. ¶¶ 34-35); and (ii) a "portion of [those] Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Delta Bank" (Compl. ¶ 39), without specifying whether any portions of those transfers constituted BLMIS customer property that had been fraudulently transferred.  Such thin allegations, which require the Court to infer that because BLMIS transferred a large amount of funds to Fairfield Sentry over a period of several years, the funds that Fairfield Sentry transferred to Delta Bank necessarily came from BLMIS, are insufficient to state a claim.  *See Iqbal*, 556 U.S. at 678 ("The plausibility standard . . . asks for more than a sheer possibility that a

defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks and citation omitted)).

      Although the Trustee attached to his complaint exhibits that purportedly list fund transfers from BLMIS and Fairfield Sentry (*see* Compl. Ex. C), and transfers of funds from Fairfield Sentry and Delta Bank with dates and amounts (*see* Compl. Ex. D), these lists do not specify which, if any, of the BMLIS customer property that went to Fairfield Sentry was ultimately transferred to Delta Bank.  In short, there is nothing to tie the transfers together.  These exhibits thus do not save the Trustee's claim.

      In *In re Caremerica, Inc.*, the court analyzed a set of allegations that closely mirror those in this case.  There, the amended complaint included an exhibit with "copies of bank statements of PPS/BER Care [the conduit through which funds transferred to the defendants] for the months in which the transfers were allegedly made," and those "bank statements contained the method, date, and amount of each transfer flowing out of PPS/BER Care bank accounts.  [The exhibit] also contained a table prepared by the trustee which identified the dates and amounts of transfers received by each defendant."  409 B.R. 737, 750 (Bankr. E.D.N.C. 2009).  Nevertheless, the court found the complaint and exhibit contained "insufficient facts to support the trustee's contention that the funds flowing through BER Care, Inc. originated with the debtors."  *Id.*  In other words, the allegations did not show how much of the customer property the defendants received and, as a result, the court held that "the allegations by the trustee regarding transfers of interests of the debtors in property fail to meet the plausibility standard necessary to overcome a 12(b)(6) motion to dismiss."  *Id.* at 751.  Just like in *In re Caremerica*, the Trustee's exhibits do not show how much, if any, customer property ever made it to Delta Bank.  Accordingly, the

Complaint does not plead the "'when, and how much' of the transfers to establish that [Delta Bank] was a subsequent transferee of the funds," *Shapiro*, 542 B.R. at 119, and the claim must be dismissed.

### III. SECTION 546(e)'S SAFE HARBOR BARS RECOVERY FOR THE ALLEGED TRANSFERS THAT OCCURRED MORE THAN TWO YEARS BEFORE THE BANKRUPTCY PETITION WAS FILED.

Even if the Court finds that the Trustee's Complaint is proper (which it is not), the Trustee cannot avoid any alleged transactions that occurred more than two years before the bankruptcy petition was filed. Specifically, the Trustee, through his complaint against Fairfield Sentry, seeks to avoid transfers under Section 548(a)(1)(A), which only permits avoidance of transfers "made or incurred on or within 2 years before the date of the filing of the petition," and Section 544, which permits a plaintiff to take advantage of the New York state fraudulent transfer limitation period of six years in effect at the time the transfers took place. However, Section 546(e) of the Bankruptcy Code creates a safe harbor for certain securities-related transfers. *See Picard* v. *Fishman (In re BLMIS)*, 773 F.3d 411, 423 (2d Cir. 2014) ("[B]y enacting § 546(e), Congress provided that, for a very broad range of securities-related transfers, the interest in finality is sufficiently important that they cannot be avoided by a bankruptcy trustee."). Section 546(e) provides, in pertinent part:

> Notwithstanding sections 544 [and] 548(a)(1)(B) . . . of this title, the trustee may not avoid a transfer that is a . . . *settlement payment*, as defined in section 101 or 741 of this title, made by or to (or for the benefit of) a . . . *stockbroker* [or] *financial institution* . . . or that is a transfer made by or to (*or for the benefit of*) a . . . stockbroker [or] financial institution . . . *in connection with a securities contract*, as defined in section 741(7) . . . . (emphasis added)

Because this safe harbor prevents the avoidance of covered transfers, except those made under Section 548(a)(1)(A), any transfers beyond the two-year statute of limitations are out of the Trustee's reach as a matter of law.

Applying Section 546(e) to the alleged transfers in this case, the statute protects transfers that (i) were made by, to, or for the benefit of a covered entity, including a stockbroker or financial institution; and (ii) were payments made in connection with a securities contract. Both of these elements are met for the transfers alleged in the Trustee's Complaint for two independent reasons. First, the initial transfers from BLMIS to Fairfield Sentry are payments made by a stockbroker in connection with securities contracts. Second, the subsequent transfers from Fairfield Sentry to Delta Bank are payments made to a financial institution in connection with securities contracts. Either pathway is sufficient under Section 546(e) to prevent the Trustee from avoiding the alleged transfers that occurred more than two years before the date of the bankruptcy petition.[6]

A.    **Section 546(e) Applies to the Initial Transfers to Fairfield Sentry Because Payments Were Made by a Stockbroker in Connection with Securities Contracts.**

Plaintiff alleges that Delta Bank is a subsequent transferee (Compl. ¶ 39); as such, Delta Bank may assert the Section 546(e) safe harbor defense on behalf of the initial transferee— here, Fairfield Sentry—even if the initial transferee decided not to do so. *See SIPC* v. *Bernard L. Madoff Inv. Sec. LLC*, 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*") (explaining that subsequent transferees are "entitled to raise a Section 546(e) defense against recovery of [the] funds"); *Fairfield Inv. Fund Ltd.*, 2021 WL 3477479, at *3 ("Where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here . . . , the subsequent transferee is nonetheless entitled to raise a § 546(e) defense against recovery of those funds."). Here, the Complaint makes clear that the safe harbor applies because all elements

---

[6]    The Trustee alleges 35 transfers totaling $12,444,735 that occurred outside of the two-year statute of limitations. (Compl. Ex. D). Therefore, the Court should dismiss Plaintiff's claims related to these alleged transfers.

of the safe harbor are met:  (i) the payments were made by a stockbroker; (ii) there is a valid securities contract; and (iii) the alleged transfers were made in connection with securities contracts.

*First*, both the Second Circuit and this Court have previously held in the Madoff proceedings that "[i]t is not disputed that BLMIS was a 'stockbroker' for the purposes of § 546(e)." *Fishman*, 773 F.3d at 417; *Picard* v. *Greiff*, 476 B.R. 715, 719-20 (S.D.N.Y. 2012), *aff'd*, 773 F.3d 411 (2d Cir. 2014).  Therefore, the fact that BLMIS was a stockbroker is binding, and the Trustee cannot reasonably challenge that this element has been satisfied.  *See Picard* v. *Nelson*, 610 B.R. 197, 237 (Bankr. S.D.N.Y. 2019) ("The prior decisions within this SIPA proceeding constitute law of the case.").

Specifically, in *Picard* v. *Greiff*, Judge Rakoff squarely rejected the Trustee's argument that BLMIS was not a "stockbroker" for purposes of 546(e).  476 B.R. at 719-20. Instead, he concluded that BLMIS was a stockbroker because it was registered with the SEC and "clearly engaged in securities transactions," even if the investment advisory division did not.  *Id.* at 719.  Further, BLMIS "held itself out to all its customers, including its investment advisory clients, as a firm engaged in the business of effecting transactions in securities" and, thus, defendants "have every right to avail themselves of all the protections afforded the customers of stockbrokers, including the protection offered by 546(e)."  *Id.* at 719-20.  Including *Greiff*, the District Court has already decided on three occasions—and the Second Circuit affirmed—that the Section 546(e) "stockbroker" safe harbor applies to transfers from BLMIS.  *See id.*; *Cohmad*, 2013 WL 1609154, at *2-3; *Picard* v. *Katz*, 462 B.R. 447, 451 (S.D.N.Y. 2011), *abrogated on other grounds by SIPC* v. *BLMIS*, 513 B.R. 437 (S.D.N.Y. 2014).  Any attempts by the Trustee to "re-re-litigate" his arguments relating to the applicability of Section 546(e) to BLMIS as a stockbroker should be rejected.  *Cohmad*, 2013 WL 1609154, at *2-3.

*Second*, the redemption requests between Fairfield Sentry and Delta Bank are valid securities contracts under 546(e). The definition of "securities contract" includes "a contract for the purchase, sale, or loan of a security." 11 U.S.C. § 741(7)(A)(i). And "[t]he term 'redemption,' in the securities context, means 'repurchase.'" *Tribune I*, 946 F.3d at 80. Accordingly, "the definition of securities contract . . . includes . . . redemption requests." *Cohmad*, 2013 WL 1609154, at *8. Section 546(e) requires only the existence of a securities contract, not any actual securities transactions. *See Fishman*, 773 F.3d at 420 ("Because [Section 546(e)] do[es] not contain a purchase or sale requirement, whether or not BLMIS actually transacted in securities is not determinative. Section 546(e) only requires that a covered transfer be broadly related to a 'securities contract,' not that it be connected to an actual securities transaction." (footnote omitted)).

The Complaint and the Fairfield Amended Complaint[7] allege the existence of securities contracts between Fairfield Sentry and Delta Bank. The Trustee alleges that Delta Bank "received transfers of Customer Property from BLMIS by *withdrawing money* from Fairfield Sentry." (Compl. ¶ 6 (emphasis added); *see also* Compl. ¶ 32 ("Defendant Delta Bank received subsequent transfers of Customer Property from Fairfield Sentry, which maintained one or more customer accounts with BLMIS.").) Implicit in the Trustee's subsequent transfer claim is the allegation that Fairfield Sentry redeemed shares from BLMIS in order to satisfy Delta Bank's redemption requests. In fact, the Trustee clearly alleges in the Fairfield Amended Complaint that Fairfield Sentry withdrew funds from its BLMIS account "in order to pay [a customer's]

---

[7]    Delta Bank does not agree that the wholesale incorporation of the Fairfield Amended Complaint is proper, *see supra* pp. 7-9; however, to the extent the Court finds it properly incorporated and wishes to consider its allegations, those allegations establish the existence of redemption requests that satisfy Section 546(e)'s requirements.

-18-

redemptions." (*See* FAC ¶¶ 53, 58, 63, 67, 71, 76, 80, 85, 100, 104, 109, 114.) Section 546(e) requires that the payment is made in connection with "*a* securities contract," but that contract does not need to be the contract between the debtor and the initial transferee (*i.e.*, BLMIS and Fairfield Sentry). Instead, the definition of "securities contract" covered by the safe harbor provision is broad and includes "investment fund subscription agreements and redemption requests," even when BLMIS was not a party to the securities contract at issue. *Cohmad*, 2013 WL 1609154, at *8-9 ("Section 546(e)'s reach does not depend on the involvement of the debtor in the securities contract at issue."). Thus, the redemption request forms between Fairfield Sentry and Delta Bank are securities contracts for purposes of Section 546(e), even though BLMIS was not a party to those forms.

*Third*, the alleged transfers were made "in connection with" the redemption request forms. "[T]he definition of a transfer made 'in connection with a securities contract' [is] similarly broad." *Id.* at *9 (defining "in connection with" as "related to"). For example, "a withdrawal by a Madoff Securities customer caused by that party's payment obligations to a subsequent transferee under a securities contract could qualify as 'related to' that later transaction under the securities contract." *Id.*

The same is true here: Fairfield Sentry, a Madoff Securities customer, made withdrawals from BLMIS to fulfill the redemption requests initiated by Delta Bank on behalf of its customers. The alleged transfers are "in connection with" or "related to" the redemption request forms because the transfers from BLMIS to Fairfield Sentry occurred only because Delta Bank's clients sought to redeem their shares through the redemption request forms. *See* Compl. at ¶ 39 ("A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Delta Bank.").

The Trustee has argued in other subsequent transfer cases that Section 546(e) cannot apply because Fairfield Sentry allegedly had knowledge of BLMIS's fraud.  *See, e.g.*, *Fairfield Inv. Fund Ltd.*, 2021 WL 3477479, at *3-4.  This is incorrect and misconstrues the holding in *Cohmad*.  2013 WL 1609154, at *3 (explaining that where "these defendants had, not mere suspicions, but actual knowledge of Madoff's scheme, then" the securities contracts they signed were not valid under Section 546(e)).   Judge Rakoff made clear that actual knowledge is only relevant to Section 546(e) when all parties to a securities contract have actual knowledge of fraud because, if all parties "knew that Madoff Securities was a Ponzi scheme," then they "also must have known that the transfers could not have been made in connection with an actual 'securities contract.'"  *Id.*  But, when at least one party lacks actual knowledge of fraud, the securities contracts are valid for Section 546(e) purposes.  *See Fishman*, 773 F.3d at 419 (holding that contracts "satisfy the broad definition of 'securities contracts'" when one party believes they are a "basis . . . to make deposits or request withdrawals" even though the other party has knowledge of the fraud).  The requirement that at least one party lacks actual knowledge is satisfied in this case.  The Trustee has not alleged anywhere in the Complaint—nor could he plausibly do so—that Delta Bank had actual knowledge of BLMIS's fraud or of Fairfield Sentry's alleged participation in that fraud.  Because the Trustee makes no allegations of actual knowledge on the part of Delta Bank, the securities contracts it entered into are valid.

**B.      Section 546(e) Applies to Subsequent Transfers to Delta Bank Because Payments Were Made to Delta Bank, a Financial Institution, in Connection with Valid Securities Contracts.**

Section 546(e)'s safe harbor applies to the alleged transfers for a second, independent reason:  the alleged transfers were made to a financial institution—Delta Bank—and in connection with valid securities contracts.

A subsequent transferee, as Delta Bank is alleged to be here, can also raise a Section 546(e) defense on its own behalf. *See SIPC* v. *BLMIS*, 501 B.R. at 29. ("[T]he subsequent transferee . . . may raise any defenses to avoidance available to the initial transferee, as well as any defenses to recovery it may have.")

*First*, there is no doubt that Delta Bank is a financial institution, as defined in the Bankruptcy Code. The Bankruptcy Code defines "financial institution" to include "an entity that is a commercial or savings bank." 11 U.S.C. § 101(22). And where the Trustee alleges that a defendant is a bank, "the defendant may be deemed to constitute a protected 'financial institution' . . . for the purposes of Section 546(e) on the face of the complaint." *Cohmad*, 2013 WL 1609154, at *8. Here, the Trustee alleges that "Defendant Delta Bank offers private banking services" (Compl. ¶ 20; Compl. Ex. A), so it is undisputable that Delta Bank is a financial institution for the purposes of the safe harbor.

*Second*, as explained above, the alleged transfers were made in connection with redemption requests, which are valid securities contracts under Section 546(e). *See supra* pp. 18-20. Delta Bank and Fairfield Sentry executed redemption requests pursuant to which Delta Bank re-purchased shares in the Fairfield Sentry funds. (*See* Compl. ¶ 6; FAC ¶¶ 53, 58, 63, 67, 71, 76, 80, 85, 100, 104, 109, 114.) Fairfield Sentry's various alleged payments were made "in connection with" or "related to" the redemption requests because they were made squarely within the terms of the redemption requests.

Because both of these routes to the Section 546(e) safe harbor apply to the alleged transfers in this case, all such transfers that occurred before December 2006 must be dismissed. *See Fishman*, 773 F.3d at 415 (affirming dismissal of relevant claims under Rule 12(b)(6) because they were shielded by 11 U.S.C. § 546(e)).

-21-

## IV.    THE COMPLAINT ESTABLISHES DELTA BANK'S GOOD FAITH.

Finally, the Trustee cannot recover for any of the alleged transfers because the Complaint establishes that Delta Bank took for value in good faith.  Section 550(b) of the Bankruptcy Code protects such good-faith subsequent transferees.  A trustee cannot recover from "a transferee that takes for value . . . in good faith, and without knowledge of the voidability of the transfer avoided."  11 U.S.C. § 550(b)(1).

Although the Trustee does not need to affirmatively plead lack of good faith in the Complaint,[8] the Court can still grant a motion to dismiss where the affirmative defense of good faith is clear on the face of a complaint.  *Picard* v. *ABN AMRO Bank N.A. (SIPC* v. *BLMIS)*, 2020 WL 1584491, at *8 (Bankr. S.D.N.Y. Mar. 31, 2020) ("Where the burden of pleading rests on the defendant, the Court may nevertheless dismiss the claim pursuant to Federal Civil Rule 12(b)(6) if the defense is apparent on the face of the complaint.").  Here, the Complaint establishes Delta Bank's good-faith defense because it demonstrates that Delta Bank (i) took for value, (ii) in good faith, and (iii) without knowledge of the voidability of the transfers.

### A.    Delta Bank Took for Value.

First, Delta Bank took for value because it received money in exchange for equity pursuant to redemption requests.  Value under Section 550(b) is "merely consideration sufficient to support a simple contract, analogous to the 'value' required under state law to achieve the status of a bona fide purchaser for value.  There is no requirement that the value given by the transferee be a reasonable or fair equivalent."  5 COLLIER ON BANKRUPTCY ¶ 550.03[1] (Richard Levin & Henry J. Sommer eds., 16th ed. 2022).

---

[8]    The Second Circuit recently held that because a Section 550(b) defense is an affirmative defense, the pleading burden falls on the defendant.  *Citibank*, 12 F.4th at 200.

As this Court has explained, "[s]urrendering equity interests constitutes value for purposes of [S]ection 550(b) because it is consideration sufficient to support a simple contract." *ABN AMRO Bank*, 2020 WL 1584491, at \*9. In *ABN AMRO Bank*, the defendant bank received payments from a BLMIS feeder fund, and the Court found that the defendant took for value when it received "redemptions involving the surrender of equity in exchange for a payment." *Id.*

The same is true here. The Complaint against Delta Bank, in conjunction with the Fairfield Amended Complaint,[9] demonstrates that payments to Delta Bank were made in fulfillment of Delta Bank's redemption requests. *See supra* pp. 18-20. Thus, like the payments made in *ABN AMRO Bank*, they were for value under Section 550(b).

## B. Delta Bank Took in Good Faith.

Regardless of whether Delta Bank lacked knowledge that would have put it on inquiry notice (it did lack such knowledge), Delta Bank acted in good faith because a diligent inquiry would not have uncovered Madoff's fraud. The Second Circuit recently explained the contours of "good faith" in the context of Section 550(b) and the BLMIS liquidation. *Citibank*, 12 F.4th at 191-92. *Citibank* set forth the three questions courts must answer to determine if a transferee was on inquiry notice:

> 1. "[W]hat facts the defendant knew; this is a subjective inquiry, not 'a theory of constructive notice.'"
>
> 2. "[W]hether these facts put the transferee on inquiry notice of the fraudulent purpose behind a transaction—that is, whether the facts the transferee knew would have led a reasonable person in the transferee's position to conduct further inquiry into a debtor-transferor's possible fraud."

---

[9] While the incorporation of the Fairfield Amended Complaint is improper, *see supra* pp. 7-9, to the extent the Court is willing to consider those allegations as part of the complaint here, they establish Delta Bank's good-faith defense.

> 3. "[W]hether 'diligent inquiry [by the transferee] would have discovered the fraudulent purpose' of the transfer."

*Id.* Under this three-step test, even if a defendant knew enough facts to be put on inquiry notice, the defendant takes in good faith if a diligent inquiry by the transferee would not have discovered the fraudulent purpose of the transfer. *Id.* at 192.

The Fairfield Amended Complaint alleges that BLMIS operated under a cloak of secrecy and lack of transparency. (FAC ¶¶ 501, 520.) It alleges that Sentry's management "went to great lengths to keep their investors far away from Madoff" (FAC ¶ 342); "misled investors by making false excuses when the investors requested meetings with Madoff" (FAC ¶ 344); in 2002, "remove[d] all references to BLMIS from their marketing materials" and offering memorandum (FAC ¶ 346); "actively and repeatedly 'blocked' investors wishing to obtain more information" (FAC ¶ 348); "went to great lengths to cover up Madoff's actual role with the FGG funds" (FAC ¶ 350); and "sold the false assurance that they conducted superior due diligence" (FAC ¶ 362).

The Fairfield Amended Complaint also alleges that even when a sophisticated entity (the SEC) conducted a thorough investigation, it could not uncover Madoff's fraud. (FAC ¶¶ 351, 360-61.) It alleges that the SEC began an investigation in 2006 into whether BLMIS was a Ponzi scheme or engaged in other illegal activity (FAC ¶ 351), but that the SEC was stymied by the efforts of BLMIS and Fairfield Sentry insiders to hinder the government investigation. (FAC ¶¶ 360-361.) Thus, even the SEC did not uncover the fraud before BLMIS's scheme fell apart in December 2008.

The Fairfield Amended Complaint's allegations of the numerous ways BLMIS and feeder funds kept the fraud secret and of a detailed government investigation that still failed to conclude BLMIS was a fraud are sufficient to show that even if Delta Bank had been put on inquiry

notice (which it had not), it still would not have been able to uncover the fraud despite its best efforts.

### C.    Delta Bank Lacked Knowledge of the Voidability of the Initial Transfers.

From the Complaint's allegations, Delta Bank can also satisfy the final element of the Section 550(b) defense—that it took without knowledge of the voidability of the transfers.  The determination of whether a transferee had knowledge of the voidability is done with respect to the initial transfer.  *See Brandt* v. *Horseshoe Hammond, LLC (In re Equip. Acq. Res., Inc.)*, 803 F.3d 835, 840-41 (7th Cir. 2015).  The Complaint shows that Delta Bank took "without knowledge of voidability" of the initial transfers because courts construe the knowledge requirement as a narrower subset of the "good faith requirement."  *SIPC* v. *Bernard L. Madoff Inv. Sec. LLC*, 516 B.R. 18, 23 n.3 (S.D.N.Y. 2014) (noting that the "third requirement is merely one specific type of subjective knowledge required"), *rev'd on other grounds sub nom*, *Citibank*, 12 F.4th 171 (2d Cir. 2021).  Where the Complaint shows that Delta Bank was not on inquiry notice, it thus shows that Delta Bank could not have had actual knowledge of the voidability of the initial transfers.

Accordingly, the Trustee's own Fairfield Amended Complaint demonstrates that a diligent inquiry would not have enabled Delta Bank to discover the fraudulent purpose of the transfers and, therefore, Delta Bank may avail itself of the good-faith defense, which prevents recovery for all of the alleged transfers.

## V.    THE CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.

Even if amendment could potentially cure any of the pleading deficiencies, the Trustee should not be allowed to amend his complaint after failing to do so for over a decade, despite having access to Fairfield Sentry's books and records and essentially unlimited resources. *See United States ex rel. Grubea* v. *Rosicki, Rosicki & Assocs., P.C.*, 319 F. Supp. 3d 747, 754 (S.D.N.Y. 2018) (explaining that dismissal with prejudice is appropriate where plaintiff failed to

amend complaint based on evidence available to him for six years).  As part of their settlement

agreement, the Trustee and the Fairfield Liquidators "agree[d] to provide reasonable access to the

other's documents, data, and other information relating to, or beneficial to the pursuit of," actions

against subsequent transferees, including Delta Bank.  *See* Fairfield Settlement Agreement ¶ 14,

*Picard v. Fairfield Sentry Ltd.*, Adv. Proc. No. 09-01239 (Bankr. S.D.N.Y. May 9, 2011), ECF

No. 69-2.  With unfettered access to Fairfield Sentry's books and records, the Trustee has been

well-positioned for over ten years to plead sufficient facts (if such facts exist) to state a claim,

including to chart the flow of funds from BLMIS to all subsequent transferees, and yet he failed

to do so.  His inexcusable failure to make sufficient factual allegations by 2022 "suggest[s] an

inability to do so justifying dismissal with prejudice."  *Grubea*, 319 F. Supp. 3d at 752.  Far too

much time has passed to provide the Trustee with an opportunity to file an amended complaint,

particularly when the Trustee has had access to Fairfield Sentry's books and records for over a

decade.  Accordingly, the Trustee's claims should be dismissed with prejudice.

## <u>CONCLUSION</u>

Because the Complaint fails to state a claim upon which relief can be granted, Delta

Bank respectfully requests that the Court dismiss the Complaint with prejudice.

Dated: April 29, 2022

Respectfully submitted,

/s/ *James L. Bromley*
James L. Bromley
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000
bromleyj@sullcrom.com

*Counsel to Delta National Bank and Trust
Company*