**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 10-05421 (CGM) |
| FRANK J. AVELLINO, *et al.*, | |
| Defendants. | |

# TRUSTEE'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

# CONTENTS

Preliminary Statement ................................................................................................1

I.  THERE IS NO GENUINE ISSUE OF MATERIAL FACT AS TO ANY
    ELEMENT OF THE TRUSTEE'S CLAIMS ...................................................2

    A.  There is No Genuine Issue of Fact that the Trustee Has Established
        BLMIS's Intent to Defraud Creditors .......................................................3

        1.  The Ponzi Presumption Applies Because Defendants Were IA
            Business Customers ...........................................................................3

        2.  The Proprietary Trading Business Was Not "Profitable" And, Even
            If It Was, the Ponzi Presumption Would Still Apply .................................6

        3.  BLMIS's Intent to Defraud Is Satisfied By the Existence of
            "Badges of Fraud"..............................................................................7

    B.  The Trustee is Entitled to Summary Judgment on His Claims to Avoid and
        Recover the $17.2 Million in Fictitious Profits as Calculated by The Net
        Investment Method ................................................................................7

II. THE TRUSTEE'S MOTION RESTS ON ADMISSIBLE EVIDENCE ...........................8

    A.  The Plea Allocutions of Madoff and Former BLMIS Employees Are
        Admissible ..........................................................................................8

    B.  The Criminal Trial Testimony of Frank DiPascali Is Admissible ..........................8

    C.  Dubinsky's Expert Opinions are Admissible.............................................9

    D.  The Bienes Frontline Interview Transcript Is Authentic and Admissible ............10

    E.  Hearsay Testimony By Former BLMIS Employees Is Admissible.......................11

III. DEFENDANTS FAIL TO OFFER ADMISSIBLE EVIDENCE THAT
     CREATES ANY ISSUE OF FACT...............................................................11

    A.  Defendants' Responses to Most of the Trustee's 56.1 Statements of Fact
        Are Improper and Should Therefore Be Deemed Admitted................................11

    B.  Fortgang's Opinions are Inadmissible Under FRE 702 and Create No
        Issues of Fact.....................................................................................13

        1.  Fortgang's Opinion That BLMIS Trade Confirmations Prove a
            "Valid," "Real" Securities Transaction Occurred Is Unreliable and
            Lacks Evidentiary Foundation .................................................................13

2.      Fortgang's Opinion That Defendants Were Customers of BLMIS's
        Market-Making Business Is Unreliable and Divorced From the
        Realities of This Case ...............................................................................15

3.      Fortgang's Opinions Are Legal Conclusions That Invade the
        Province of the Court ...............................................................................16

4.      Fortgang's Opinions Create No Genuine Issues of Fact............................17

C.      Madoff's Testimony Is Inadmissible ....................................................................18

1.      Madoff's Testimony is Improper Expert Opinion and Should be
        Excluded for Failure to Comply with Fed. R. Civ. P. 26(a) .....................18

2.      Madoff's Testimony Is Not Admissible and Should Be
        Disregarded ..............................................................................................18

IV.     THE TRUSTEE IS ENTITLED TO AN AWARD OF PREJUDGMENT
        INTEREST........................................................................................................19

CONCLUSION.......................................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baity v. Kralik*,
    51 F. Supp. 3d 414 (S.D.N.Y. 2014)....................................................................13

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*,
    168 F. Supp. 2d 57 (S.D.N.Y. 2001)...................................................................11

*Banner v. Kassow*,
    104 F.3d 352 (2d Cir. 1996)..................................................................................7

*In re Bernard L. Madoff Inv. Sec. LLC*,
    654 F.3d 229 (2d Cir. 2011)...........................................................................8, 18

*In re Bernard L. Madoff Inv. Secs. LLC*,
    424 B.R. 122 (Bankr. S.D.N.Y. 2010) .................................................................4

*In re Bernard L. Madoff Inv. Secs. LLC*,
    976 F.3d 184 (2d Cir. 2020)...........................................................................8, 18

*In re Blech Sec. Litig.*,
    No. 94 CIV. 7696 (RWS), 2003 WL 1610775 (S.D.N.Y. Mar. 26, 2003) .......16, 18

*Costello v. N.Y. State Nurses Ass'n*,
    783 F. Supp. 2d 656 (S.D.N.Y. 2011)................................................................13

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993).............................................................................................14

*Fed. Trade Comm'n v. Vyera Pharm., LLC*,
    20-cv-00706 (DLC), 2021 WL 5567137 (S.D.N.Y. Nov. 29, 2021)....................11

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997).............................................................................................17

*Geoghan v. Long Island R.R.*,
    No. 06 Civ. 1435 (CLP), 2009 WL 982451 (E.D.N.Y. Apr. 9, 2009)..................13

*Goldstick v. The Hartford, Inc.*,
    No. 00 Civ. 8577 (LAK), 2002 WL 1906029 (S.D.N.Y. Aug. 19, 2002) ............13

*Gredd v. Bear, Stearns Secs. Corp. (In re Manhattan Inv. Fund Ltd.*),
    310 B.R. 500 (Bankr. S.D.N.Y. 2002) .................................................................7

*Jeffrys v. Rossi*,
    275 F.Supp.2d 463 (S.D.N.Y. 2003)....................................................................................20

*John Paul Mitchell Sys. v. Quality King Distrib. Inc.*,
    106 F. Supp. 2d 462 (S.D.N.Y. 2000)..............................................................................11

*Johnson v. City of New York*,
    No. 15 Civ. 6915 (ER), 2019 WL 294796 (S.D.N.Y. Jan. 23, 2019).......................13

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)........................................................................................................14

*Lippe v. Bairnco Corp.*,
    288 B.R. 678 (S.D.N.Y. 2003).......................................................................................16

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
    209 F. Supp. 3d 612 (S.D.N.Y. 2016)............................................................................17

*McHale v. Boulder Capital LLC (In re 1031 Tax Grp., LLC)*,
    439 B.R. 84 (Bankr. S.D.N.Y. 2010)...........................................................................20

*Picard v. Bam, L.P.*,
    624 B.R. 55 (Bankr. S.D.N.Y. 2020).........................................................................4, 10

*Picard v. Epstein* (*In re Bernard L. Madoff Investment Secs LLC*),
    No. 1:21-cv-02334 (CM), 2022 WL 493734 (S.D.N.Y. Feb. 17, 2022) ........................ *passim*

*Picard v. Fairfield Pagma Assocs.*,
    LP, No. 08-01789 (CGM), 2022 WL 1110560 (Bankr. S.D.N.Y. Apr. 13,
    2022) ................................................................................................................................20

*Picard v. Greiff*,
    476 B.R. 715 (S.D.N.Y. 2012)..........................................................................................8

*Picard v. JABA Assocs. LP*,
    528 F.Supp.3d 219 (S.D.N.Y. 2021)........................................................................7, 9, 10

*Picard v. Keller Family Trust*,
    634 B.R. 39 (Bankr. S.D.N.Y. 2021)...........................................................................20

*Picard v. Legacy*,
    603 B.R. 682 (Bankr. S.D.N.Y. 2019)............................................................................7

*Picard v. Merkin*,
    581 B.R. 370 (S.D.N.Y. Bankr. 2017)..........................................................................16

*Picard v. Nelson*,
    610 B.R. 197 (Bankr. S.D.N.Y. 2019).................................................................. *passim*

*Picard v. Nissenbaum*,
No. 20 CV. 3140, 2021 WL 1141638 (S.D.N.Y. Mar. 24, 2021)........................................9, 10

*Picard v. Sage Realty*,
No. 30-10109 (JFK), 2021 WL 5826295 (S.D.N.Y. Dec. 8, 2021)...........................................9

*Picard v. Sage Realty*,
No. 20-10109 (JFK), 2022 WL 1125643 (S.D.N.Y. Apr. 15, 2022)..............................3, 8, 10

*Scholes v. Lehmann*,
56 F.3d 750 (7th Cir. 1995) ......................................................................................7

*Sutton v. Massachusetts Mut. Life Ins. Co.*,
No. 18-CV-1273 (VSB), 2020 WL 5765693 (S.D.N.Y. Sept. 27, 2020) ...............................19

*U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3*,
No. 00 Civ. 4763 (RMB) (JCF), 2006 WL 2136249 (S.D.N.Y. Aug. 1, 2006).......................13

*U.S. v. Al-Moayad*,
545 F.3d 139 (2d Cir. 2008)....................................................................................10

*United States v. Bilzerian*,
926 F.2d 1285 (2d Cir. 1991)...................................................................................18

**Statutes**

11 U.S.C. § 548(a)(1)(A) ......................................................................................2, 7

11 U.S.C. § 548(c) ...............................................................................................8

**Rules**

Fed. R. Civ. P. 26(a)(2)........................................................................................19

Fed. R. Civ. P. 26(a)(2)(D)(ii)................................................................................19

Fed. R. Civ. P. 56.1............................................................................................13

Fed. R. Evid. P. 702 ...................................................................................1, 14, 16, 19

Fed. R. Evid. P. 801(d)(2)......................................................................................11

Fed. R. Evid. P. 802 ............................................................................................20

Fed. R. Evid. P. 803(22) .........................................................................................8

Fed. R. Evid. P. 807 ...................................................................................8, 9, 12, 20

Fed. R. Evid. P. 901(b)(4) ......................................................................................11

Irving H. Picard, as Trustee[1] for the substantively consolidated liquidation of BLMIS

under SIPA, and the chapter 7 estate of Bernard L. Madoff, respectfully submits this reply

memorandum of law in further support of the Trustee's Motion for partial summary judgment.

### Preliminary Statement

Through this Motion, the Trustee seeks to recover $17.2 million in fictitious profits

Summary Judgment Entity Defendants received from BLMIS.  Defendants[2] do not dispute the

transfers or that they were transfers of an interest of the debtor made in the Two-Year period.

And this Court and others that have reviewed the evidence have repeatedly found that BLMIS

operated a Ponzi Scheme through the IA Business, and that the Ponzi scheme presumption

("Ponzi Presumption") applies to establish the Debtor's intent to defraud creditors.

Nonetheless, Defendants attempt to manufacture issues of fact, claiming they were

customers not of the IA Business, but rather the market-making/broker dealer business,[3] and that

the trades in their accounts were "real."  Against a solid wall of proof that establishes they were

IA customers just like all the others and that the trades in their accounts were fake – including

thorough analyses by the Trustee's experts, extensive documentary evidence and testimony of

former BLMIS employees – the only evidence Defendants point to in support of their position is

their proffered expert, Stanley Fortgang ("Fortgang") and the testimony of Madoff himself.

But Fortgang's testimony is inadmissible under FRE 702, as his opinions are wholly

unreliable, lack any evidentiary foundation, and constitute legal conclusions that improperly

invade the province of the Court – and notably, were already rejected by the Second Circuit's

---

[1] Unless otherwise defined, capitalized terms herein have the meaning ascribed in the Memorandum of Law in Support of Trustee's Motion for Partial Summary Judgment and Statement of Material Facts.

[2] References herein to "Defendants" include the Summary Judgment Defendants.

[3] The Trustee's Motion defined this side of BLMIS's business as the "Proprietary Trading Business," which includes the broker dealer/market making businesses referred to by Defendants.

Net Equity Decision.[4]  Madoff's testimony is also inadmissible because: (i) Defendants attempt to use him improperly as an expert rebuttal witness without having made the requisite expert disclosures; and (ii) it lacks any guarantees of trustworthiness.  Even if admitted, none of Fortgang's or Madoff's testimony would create any issues of fact precluding summary judgment.

Because the definitive proof establishes that Defendants are similarly situated to all other IA Business customers, their remaining arguments fail.  And contrary to their assertions, the Trustee's Motion rests on admissible evidence, much of which this Court and others have already admitted, including Dubinsky's expert opinions and the plea allocutions and testimony of former BLMIS employees.  Accordingly, the Trustee's Motion should be granted,[5] including an award of prejudgment interest, for the reasons set forth below.

## I. THERE IS NO GENUINE ISSUE OF MATERIAL FACT AS TO ANY ELEMENT OF THE TRUSTEE'S CLAIMS

There is no genuine issue of fact that the Trustee has established all elements of his claims to avoid and recover transfers of fictitious profits made to Summary Judgment Entity Defendants under 11 U.S.C. § 548(a)(1)(A), which are: (i) a transfer of an interest of the debtor in property; (ii) made within two years of the petition date; (iii) with "actual intent to hinder, delay, or defraud" a creditor.  *Picard v. Epstein* (*In re Bernard L. Madoff Investment Secs LLC*), No. 1:21-cv-02334 (CM), 2022 WL 493734, at *11 (S.D.N.Y. Feb. 17, 2022) ("*Epstein II*").

Notably, Defendants concede that the Trustee has established the first two elements of his claims (Opp. at 12), and only dispute the last element – that BLMIS acted with intent to defraud

---

[4] *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 238-39 (2d Cir. 2011) ("Net Equity Decision").

[5] Contrary to Defendants' argument that the Court should enter a report and recommendation (Opp. at 40), this Court has jurisdiction to enter a final judgment because the Summary Judgment Entity Defendants filed customer claims, which subjected them to the bankruptcy court's equitable power.  *Picard v. BAM, L.P.,* 612 B.R. 257, 260 (Bankr. S.D.N.Y. 2020).

its creditors. *Id*. at 27-29.

### A. There is No Genuine Issue of Fact that the Trustee Has Established BLMIS's Intent to Defraud Creditors

Every court that has considered this issue has held that "the Trustee is entitled to the benefit of the [Ponzi Presumption], and so can prove fraudulent intent as a matter of law."[6] Thus, it is not surprising that Defendants do not attempt to contest that the IA Business was a Ponzi scheme (Opp. at 12). They do argue that the Ponzi Presumption should not apply as "*to them*" *(Id*. at 12-13), but for the reasons set forth below, the Ponzi Presumption is applicable here, and BLMIS's intent to defraud is also established through badges of fraud.

1. *The Ponzi Presumption Applies Because Defendants Were IA Business Customers*

Defendants argue, based on the inadmissible *ipse dixit* of their proffered expert, Fortgang (*see* Section IIIB), that the customer agreements they executed with BLMIS established them as customers not of BLMIS's IA Business, but of its market-making business[7] and, as such, the trade confirmations they received from BLMIS confirmed the existence of "valid" and "real" securities transactions. Opp. at 13-14; Fortgang Decl. Attach. A at Ex. 4.

The evidence, however, firmly establishes that Summary Judgment Entity Defendants were customers of the IA Business. In fact, the agreements upon which they rely are no different than the agreements executed by *all* other IA Business customers.[8] And the overwhelming

---

[6] *Epstein II*,  2022 WL 493734, at *17; *Picard v. Sage Realty*, No. 20-10109 (JFK), 2022 WL 1125643, at *28 (S.D.N.Y. Apr. 15, 2022).

[7] Summary Judgment Entity Defendants concede in their counterclaims that BLMIS acted as their "investment advisor" and that Avellino had an interest or level of control of their "IA accounts." *See* ¶¶ 17 and 13 in each of Griffin Decl., Exs. 45, 48, and 63 ).

[8] In the underlying decision on net equity, Judge Lifland considered a Limited Trade Authorization for IA Business customers that was *identical* to that of Summary Judgment Entity Defendants. *See In re Bernard L. Madoff Inv. Secs. LLC,* 424 B.R. 122, 128 (Bankr. S.D.N.Y. 2010) (citing Declaration of Joseph Looby, ECF No. 524, Attach. 1, Ex. 3), and *cf.* to Fortgang Decl. Attach. A, Ex. 4.  In the *Nelson* and *Bam* cases, this Court also considered the very same Customer Agreements as Defendants. *Picard v. Bam, L.P.*, 624 B.R. 55, 60 (Bankr. S.D.N.Y. 2020) and Griffin Supp. Decl., Exs. 55 and 56; *Picard v.*

evidence establishes that their accounts were just like all other IA Business customer accounts:

- <u>Same Purported Trading Strategies</u>: Madoff purportedly executed trades for the IA Business customers pursuant to three primary strategies: convertible arbitrage, buy and hold, and split strike conversion. Defendants' accounts consisted of transactions from each of these strategies.[9]

- <u>Same Securities Purportedly Traded on the Same Days at the Same Prices</u>: Defendants' accounts frequently included many of the same securities purportedly traded in other IA Business customers' accounts on the same days at the same prices.[10]

- <u>Same Market Impossibilities:</u> Market impossibilities and trading anomalies reflected on all IA Business customer statements were also present in the transactions for Defendants' accounts.[11]

- <u>Same Fake Counterparties:</u> At the outset of every purported securities transaction, the IA Business preassigned the exact same fictitious counterparty across all IA Business accounts, including those of Defendants.[12]

- <u>Same Commingled Bank Account for Cash Deposits and Withdrawals:</u>[13] Defendants' cash deposits were deposited and commingled with other IA Business customers' funds in the 703 Account (the primary account for the IA Business), and their withdrawals paid through the 703 Account and 509 Account (a checking account entirely funded by the 703 Account).[14]

     Further, the Trustee's unrebutted evidence establishes that the procedures used by the IA

Business employees to manufacture the fraudulent securities transactions for Defendants'

accounts were consistent across all IA Business accounts:

- <u>Same IA Business Managers:</u> The same IA Business employees who managed all other IA Business customer accounts (Bongiorno, Jo Ann Crupi, and DiPascali) were responsible for

---

*Nelson*, 610 B.R. 197, 217 (Bankr. S.D.N.Y. 2019) and Griffin Supp. Decl,. Exs. 57-59 and *compare* to Opp. at 13-14.

[9] *See* Trustee's 56.1 ¶¶ 165-67, 179-93, 267-71.

[10] *See* Dubinsky Global Report at Exs. 7-8, 12-14, 17-18; Dubinsky A&B Report ¶ 72, Figure 12, and Exs. 4, 6-9; *see also* Dubinsky Global Report at ¶¶ 258-68, Figures 38, 39, and 44; Dubinsky A&B Report ¶¶ 185-94, Figures 64 and 68.

[11] *See* Trustee's 56.1 ¶¶ 147-69, 190-94, 267-71.

[12] *See* Trustee's 56.1 ¶¶ 290-97; Dubinsky A&B Report ¶ 214, n. 237, and Figure 84.

[13] Defendants admit that the IA Business commingled customer cash deposits in the '703 Account. Defts. 56.1 Response at ¶¶ 346-64.

[14] *See* Trustee's 56.1 ¶¶ 346-58.

and testified about their role in managing Defendants' customer accounts.[15]

- <u>Same Trade Confirmations and Customer Statements:</u> Defendants' trade confirmations and customer statements mirrored those of other IA Business customers.[16]

- <u>Same Internal Process of Fabricating the Trades:</u>[17] The IA Business employees followed the same process of using historical market prices to fabricate the purported securities transactions reflected on customer statements and trade confirmations for the Defendants' accounts as they did for all IA Business customers.[18]

Moreover, Dubinsky conclusively establishes that the Proprietary Trading Business did not execute any trades on behalf of IA Business customers, including Defendants.[19]  Trustee's 56.1 ¶¶ 318-319.  Collura also separately confirmed that there were no inflows of funds into the IA Business bank account from the Proprietary Trading Business for sales of securities on behalf of IA Business customers.  Trustee's 56.1 ¶¶ 332-34.

DiPascali's testimony[20] and even Madoff's testimony[21] (on which Defendants heavily rely) also confirms they were IA Business customers.  Thus, there is simply nothing in the record on which Defendants "can hang a plausible argument that they were situated any differently than any other Madoff customer/victim," and the Ponzi Presumption therefore applies.[22]

---

[15] *See* Trustee's 56.1 ¶¶ 115-16, 132, 165-66, 176, 190-92, 195-96, 298-300, 305-10, 312-16; Griffin Decl. Ex. 29 (Crupi Dep.) at 168:23-172:21; Griffin Decl. Ex. 15 (DiPascali Cr. Tr.) at 4885:6-4886:17.

[16] *See, e.g.*, Dubinsky Global Report at ¶¶ 143-146, Figures 19-22, and Ex. 10; Dubinsky Global Report at Figures 17, 68; Dubinsky A&B Rep. at Fig. 74 and 75; Griffin Decl. Ex. 21 (Frank Avellino Dep.) at 103:19-104:12; Trustee Dep. Ex. 31; Fortgang Decl. Attach. A. at Exs. 5.

[17] The IA Business internal "House 17 Manual" dated August 1995 identifies the "A&B" and the "A&B - ALL" groups of accounts as IA Business accounts, which includes Defendants' accounts.  *See* Griffin Decl. Ex. 41 (House 17 Manual) at MADTSS00336552-53; Collura Decl. Attach. A. (Collura Report) ¶¶ 56-57, and n. 38.

[18] *See* Trustee's 56.1 ¶¶ 111-19, 165-66, 190-92, 267-68, 298-317.

[19] The Proprietary Trading Business did not service retail clients, and had an entirely different customer base consisting of institutional broker-dealers, banks and financial institutions.  Trustee's 56.1 ¶ 319.

[20] Griffin Decl. Ex. 15 (DiPascali Cr. Tr.) at 4622:23-4623:1; 4517:21-4518:2.

[21] Woodfield Decl. Ex. 12 (Madoff P&S Dep. Tr.) at 17:25-18:9; *see also id.* at 142:3-7.

[22] *Epstein II*, 2022 WL 493734, at *17.

2. *The Proprietary Trading Business Was Not "Profitable" And, Even If It Was, the Ponzi Presumption Would Still Apply*

Defendants further claim based on their purported status as customers of the Proprietary Trading Business of BLMIS that the Ponzi Presumption should not apply to them because, according to Madoff's testimony, that business conducted legitimate business and produced profits. Opp.. at 13, 17-18. Even assuming, *arguendo*, Defendants were customers of the Proprietary Trading Business, the evidence establishes it was neither profitable nor "legitimate."

Madoff operated the Proprietary Trading Business as part of his fraudulent scheme by siphoning IA Business customer funds to "prop" it up.[23] Trustee's 56.1 ¶¶ 322-330. Dubinsky's investigation shows that from the 1970s and continuing through 2008, the IA Business fraudulently transferred significant amounts of customer funds to the Proprietary Trading Business to give the false appearance of profitability[24] and to hide ongoing, significant losses,[25] which Pitz, BLMIS's former controller, corroborated at her plea allocution.

Even had the Proprietary Trading Business been profitable, it still does not alter the fact that the trades in Defendants' accounts were fake. And even *if* their trades had been real, this Court and others have rejected Defendants' argument that the Ponzi Presumption should not apply to "legitimate" transactions engaged in by a Ponzi enterprise.[26]

---

[23] The "IA Business was the big tail wagging the little Proprietary Trading Business dog." *Nelson*, 610 B.R. at 234 n.35.

[24] Defendants' reliance on the sale of the Proprietary Trading Business to Surge Trading as "proof" of its solvency (Opp. at 18) is belied by the fact that Surge voluntarily wound down that business in August 2011 and, as a result, the Trustee has publicly reported he received only $1,389,423.16 from this sale. Dubinsky Global ¶¶ 435-36, n. 345.

[25] Trustee's 56.1 ¶¶ 322-323, 329-331, 335-40.

[26] *Gredd v. Bear, Stearns Secs. Corp. (In re Manhattan Inv. Fund Ltd*.), 310 B.R. 500, 509-11 (Bankr. S.D.N.Y. 2002) (Lifland, J.); *Picard v. Legacy*, 603 B.R. 682, 692 (Bankr. S.D.N.Y. 2019); *Picard v. JABA Assocs. LP*, 528 F.Supp.3d 219, 236-37, 240 (S.D.N.Y. 2021); *Scholes v. Lehmann*, 56 F.3d 750, 757-58 (7th Cir. 1995).

3.  *BLMIS's Intent to Defraud Is Satisfied By the Existence of "Badges of Fraud"*

As an alternative to the Ponzi Presumption, a trustee may show certain "badges of fraud" to prove actual intent to defraud under section 548(a)(1)(A).  *Banner v. Kassow*, 104 F.3d 352, at *2 (2d Cir. 1996).  In his Motion, the Trustee set forth evidence demonstrating that a number of badges of fraud existed at BLMIS.  Trustee's Mem. Of Law  at 34-35.  In *Nelson*, the court found that this evidence, as a matter of law, demonstrated that the Two-Year Transfers at issue bore at least three "badges of fraud."[27]  *Nelson,* 610 B.R. at 235.

**B.  The Trustee is Entitled to Summary Judgment on His Claims to Avoid and Recover the $17.2 Million in Fictitious Profits as Calculated by The Net Investment Method**

Despite Defendants' arguments to the contrary (Opp. at 28), the Net Investment Method is the *only* appropriate methodology for calculating Summary Judgment Entity Defendants' net equity because they were IA Business customers with fake split-strike trades just like all other IA Business customers.[28]  Because Defendants do not challenge the Trustee's calculations, there is no genuine issue of fact that the Trustee is entitled to recover the $17.2 million in Fictitious Profits Summary Judgment Entity Defendants received in the Two-Year Period.

And contrary to Defendants' arguments (Opp. at 27-29),[29] courts have repeatedly held that Bankruptcy Code § 548(c)'s "value" defense  does not enable them to keep the fictitious

---

[27] Defendants' argument that two of the "badges of fraud" are not present  – solvency and lack of consideration –  is unfounded (Opp. at 17-18).  The Proprietary Trading Business was neither solvent nor legitimate (*see* Section I.A.2).  And while Defendants assert they provided consideration claiming their trades were real, the unrebutted evidence establishes they were fake.  *See generally* Section I.A.1.

[28] Net Equity Decision, 654 F.3d at 238-39; *see also Picard v. Sage*, 2022 WL 1125643, at *18 (S.D.N.Y. Apr. 15, 2022) (noting Net Equity Decision upheld Trustee's use of the Net Investment Method to calculate net equity of BLMIS customers "who had invested exclusively in Madoff's fraudulent Split Strike Conversion strategy").

[29] Defendants devote pages to their "good-faith" for the purposes of the §548(c) defense (Opp. at 35-37), but their good faith – or lack thereof – is irrelevant to this Motion because, as this Court has recognized, the Trustee's claims for fictitious profit are strict liability.  *See, e.g.*, Tr. of Oral Arg., *Picard v. Bernfeld*, Adv. Pro. No. 10-05143 (SMB) (Bankr. S.D.N.Y. Oct. 28, 2015), ECF No. 20 at 114:10–11.

profits they received in excess of the principal they invested.[30]

## II.    THE TRUSTEE'S MOTION RESTS ON ADMISSIBLE EVIDENCE

### A.    The Plea Allocutions of Madoff and Former BLMIS Employees Are Admissible

Defendants object to the admissibility of DiPascali's plea allocution as hearsay (Opp. at

24), but all courts to consider the issue have held that the guilty pleas of Madoff and former

BLMIS employees are admissible under FRE 803(22) (judgment of a previous conviction) or

FRE 807 (residual exception),[31] and there is no basis to depart from those rulings here.[32]

### B.    The Criminal Trial Testimony of Frank DiPascali Is Admissible

Defendants seek to preclude the use of DiPascali's Criminal Trial testimony,[33] even

though this Court and others have found it admissible (including on summary judgment),[34] under

FRE 807 because it was supported by sufficient guarantees of trustworthiness.[35]

Defendants argue that DiPascali's testimony lacks trustworthiness because they claim

---

[30] *See, e.g.*, *In re Bernard L. Madoff Inv. Secs. LLC,* 976 F.3d 184, 198 (2d Cir. 2020) ("Antecedent Debt Decision"); *Picard v. Greiff*, 476 B.R. 715, 718 (S.D.N.Y. 2012) ("[O]nly a defendant's investment of principal may count as 'value' … for purposes of section 548(c)").

[31] Under FRE 807, a hearsay statement is not excluded by the general rule against hearsay if it: (1) is supported by sufficient guarantees of trustworthiness after considering the totality of circumstances and evidence, if any, corroborating the statement, and (2) is more probative than any other evidence the proponent can obtain through reasonable efforts.

[32] *See, e.g.*, *Epstein II*, 2022 WL 493734, at *14 (concluding "that the 'various plea allocutions' from the [sic] Madoff and his confederates 'are admissible under Federal Rules of Evidence 803(22) and 807, as several courts considering this issue in similar contexts have held'"); *Nelson*, 610 B.R. at 209 (same).

[33] DiPascali died in May 2015, before he could be deposed by the Trustee.

[34] *See Epstein II,* 2022 WL 493734, at *14 (Judge McMahon agreeing with Judge Koeltl's decisions in *Nissenbaum* and *JABA,* that DiPascali's testimony is reliable and may be considered in connection with the Trustee's summary judgment motion).

[35] The courts found: (a) when DiPascali testified, he had an interest in continuing to cooperate with the Government in the hopes of a favorable sentencing recommendation; (b) he testified for 16 days and was subject to extensive cross-examination; (c) he never recanted; (d) his unavailability was due to his death; (e) his testimony was not inconsistent with his plea allocution, and (f) was corroborated by Dubinsky. *See, e.g., Picard v. Sage*, No. 30-10109 (JFK), 2021 WL 5826295 (S.D.N.Y. Dec. 8, 2021), at *3-4; *JABA Assoc.*, 528 F.Supp.3d at 233–34; *Nelson*, 610 B.R. at 226–30; *Picard v. Nissenbaum*, No. 20 CV. 3140 (JGK), 2021 WL 1141638, at *8 (S.D.N.Y. Mar. 24, 2021).

Dubinsky's opinions "ha[ve] been refuted," so the testimony is no longer corroborated.  Opp. at

24.  But Dubinsky has not been refuted (*see* Section IIIB), DiPascali's testimony is corroborated

by voluminous evidence other than Dubinsky,[36] and FRE 807 does not require corroboration.[37]

### C.  Dubinsky's Expert Opinions are Admissible

Dubinsky, with over 35 years of experience investigating financial frauds, has been

repeatedly qualified as an expert in this SIPA liquidation in the areas of forensic accounting,

fraud examinations, computer forensics, solvency and business valuations, and investment theory

and practices.[38]  Defendants nevertheless contend that Dubinsky's qualifications are insufficient,

and he should not be permitted to offer expert opinions on "custom and practice" in the securities

industry (Opp. at 18-19, 22).  But this Court and others have repeatedly admitted Dubinsky's

expert opinions in resolving prior trials and summary judgment motions,[39] and there is no reason

to depart from those rulings here, where the crux of Defendants' argument to exclude Dubinsky[40]

relies on their proffered expert, Fortgang, who rather than "debunking" Dubinsky's opinions (as

---

[36] DiPascali's testimony is corroborated by BLMIS's books and records, other former BLMIS employee allocutions and depositions, the testimony of the Trustee's expert, Collura, Avellino's testimony and documents Avellino authored.  *See, e.g.*, Trustee's 56.1 ¶¶ 102, 103, 105, 107, 114-16.

[37] FRE 807 Advisory Committee's Note to 2019 Amendment ("The rule now provides for a uniform approach, and recognizes that the existence or absence of corroboration is relevant to, but not dispositive of, whether a statement should be admissible under this exception.").

[38] *Nelson*, 610 B.R. at 210; *Picard v. Sage Realty*, No. 20 CIV. 10057 (JFK), 2022 WL 1125643, (S.D.N.Y. Apr. 15, 2022) at n.4; *see also Picard v. Bam, L.P.* 624 B.R. 55, 60 (Bankr. S.D.N.Y. 2020) (this Court crediting Dubinsky's testimony).  At the Criminal Trial, Dubinsky was also qualified in the area of "securities/SEC fundamentals" (Cr. Tr. at 1152, 1157), and Defendants concede Dubinsky's qualifications as to "forensic accounting" and "financial fraud."  Opp. at 22; Defs 56.1 Resp. ¶ 38.

[39] *See Nelson* 610 B.R. at 225; *Bam, L.P,* 624 B.R. at 60*; Sage Realty*, 2022 WL 1125643, at n. 4.; *JABA*, 528 F.Supp.3d at 231; *Nissenbaum*, 2021 WL 1141638, at *7.

[40] Contrary to Defendants' claim that Dubinsky inappropriately opines on Avellino's and Bienes' state of mind (Opp. at 23), his expert analyses assist the trier of fact in understanding the evolution of Madoff's Ponzi scheme and A&B's role in it, how the fraudulent trades were created, how BLMIS made the fraudulent revisions to the A&B customer statements, and other areas.  But there is no need to resolve this objection now because as Defendants' state of mind is not relevant on this Motion.

Defendants claim), offers only unfounded, inadmissible conclusions.  *See* Section IIIB.

**D. The Bienes Frontline Interview Transcript Is Authentic and Admissible**

Defendants also seek to distance themselves from their own party admissions, asserting

that the statements Defendant Michael Bienes made in an interview for PBS's Frontline (Griffin

Decl. Ex. 24 , "Interview"), are untrustworthy, unauthenticated "excerpts."  Opp. at 27.  To the

contrary, the Interview transcript meets the bar for authentication, which "is not particularly

high" (*U.S. v. Al-Moayad*, 545 F.3d 139, 172 (2d Cir. 2008)), and is established by the

"appearance, contents, substance, internal patterns, or other distinctive characteristics of the item,

taken together with all of circumstances:"[41]

- Bienes admitted in his answer that he was interviewed by PBS' Frontline. Griffin Decl. Ex.
  48 (Bienes Answer) ¶¶ 308-11);

- When deposed about the Interview (with Defendants' counsel present), Bienes never once
  stated that the Interview transcript was incorrect or incomplete;[42] instead, he confirmed his
  statements were accurate (or accurately transcribed) and/or expanded his statements;[43]

- The Interview transcript remains publicly available at the Frontline/PBS internet address
  printed on the transcript; and

- Defendant Dianne Bienes produced the Interview transcript to the Trustee[44] and testified
  that the handwriting along the margins "looks like" her husband's.[45]

---

[41] FRE 901(b)(4). Notably, "the burden of authentication does not require the proponent of the evidence to
… prove beyond any doubt that the evidence is what it purports to be. Rather, the standard for
authentication, and hence for admissibility, is one of reasonable likelihood." *Fed. Trade Comm'n v.
Vyera Pharm., LLC*, 20-cv-00706 (DLC), 2021 WL 5567137, at *1 (S.D.N.Y. Nov. 29, 2021).

[42] *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 168 F. Supp. 2d 57 (S.D.N.Y. 2001), cited by
Defendants is wholly distinguishable.  Unlike the Interview transcript, the document in that case was an
"'edited, non-verbatim non-final' draft transcript of an interview" conducted by attorneys, who described
the document as containing "[t]he essence of it . . ." and corrections. *Id*. at 88–91.

[43] *See, e.g*., Woodfield Decl. Ex. 8 (Michael Bienes P&S Dep. Tr.) at 174:24-175:8; 175:145-177:5;
177:23-179:6; 180:2-20; 183:11-21; 193:3-10; 197:8-198:5.

[44] The act of producing a document can "implicitly authenticate[] the documents."  *John Paul Mitchell
Sys. v. Quality King Distrib. Inc*., 106 F. Supp. 2d 462, 472 (S.D.N.Y. 2000).

[45] Woodfield Decl. Ex. 9 (Dianne Bienes Dep. Tr.) at 69:3-22.

To the extent the statements contained within the Interview transcript are hearsay, they are admissible under FRE 801(d)(2) (statement by a party opponent) and 807 (the residual exception).

### E.    Hearsay Testimony By Former BLMIS Employees Is Admissible

Defendants claim that the Trustee's 56.1 cites to testimony of former BLMIS employees[46] they claim is "hearsay" or "double hearsay." Opp. at 26-27.  In many instances, the testimony at issue shows the effect Madoff's statements had on the listener, and is not offered for the truth of the statements contained therein, and therefore is not hearsay under FRE 801.  And some such testimony is admissible under FRE 807, because it bears the same guarantees of trustworthiness as DiPascali's criminal trial testimony.[47]  But the Court need not resolve this issue because it creates no issue of fact that would preclude summary judgment.

### III.    DEFENDANTS FAIL TO OFFER ADMISSIBLE EVIDENCE THAT CREATES ANY ISSUE OF FACT

### A.    Defendants' Responses to Most of the Trustee's 56.1 Statements of Fact Are Improper and Should Therefore Be Deemed Admitted

At first glance, Defendants' objections and responses to the Trustee's 56.1 ("Defts. 56.1 Resp.") appear to "dispute" just about all of the facts – and they even challenge the Trustee's credibility with respect to the evidence he cites therein.[48]  But when Defendants' obfuscations to

---

[46] Crupi's and Bongiorno's depositions were taken in this proceeding with Defendants' counsel present, who had the opportunity to cross-examine.  *See* Griffin Decl. Exs. 27 and 29.

[47] While it is unclear if Defendants object to Kugel's Criminal Trial testimony, it meets the trustworthiness guarantees of FRE 807 for the same reason as DiPascali's: (a) when Kugel testified, he had an interest in cooperating with the Government in the hope of a favorable sentencing recommendation; (b) he testified for 6 days and was subject to cross-examination; (c) he never recanted; (d) his testimony is corroborated by Dubinsky, BLMIS books and records, and former BLMIS employees' allocutions and testimony; and (e) his testimony is consistent with his allocution.

[48] Defendants suggest that the Trustee has "distorted and embellished" the facts, claiming there is no evidence Avellino or Bienes knew that A&B's customer statements were fraudulently revised by BLMIS before production to the SEC.  Opp. at 3-4.  But Defendants do not controvert that BLMIS fraudulently revised the A&B statements; they just claim not to have known about it.  Defts. 56.1 Resp. at ¶ 84.  And

the Trustee's 56.1 are stripped bare, it becomes clear there is no issue of fact with respect to the elements of the Trustee's claims at issue.[49]

Upon closer scrutiny, in most instances where Defendants dispute a statement in their 56.1 Response, they do not do so properly. They either fail to controvert the Trustee's statement of facts with citations to admissible evidence,[50] or their responses contain statements that: (i) are consistent with the Trustee's asserted fact; (ii) relate to an entirely different subject matter; or (iii) constitute inappropriate legal argument to "spin" the admitted facts[51] – and as such, these "disputed" facts should be deemed admitted.

---

that conclusory denial is belied by the fact they admit Avellino prepared handwritten ledgers (*Id.* at ¶ 96) that matched precisely to the revised A&B customer statements. *See* Trustee's 56.1 at ¶ 98. The Court, however, need not resolve this issue on this Motion.

[49] There is also no issue of fact with respect to the basic facts concerning the role Avellino and Bienes played in perpetuating Madoff's Ponzi Scheme, as their own party-admissions establish that beginning in the 1960s, Madoff's father in law, Alpern, pooled funds of third-parties which were invested with Madoff and/or BLMIS (Griffin Decl. Ex. 23 at ¶ 9); that Avellino and Bienes took over Alpern's accounts at BLMIS in 1975 when he retired (Defts. 56.1 Resp. at ¶¶ 53 and 54); that they invested hundreds of millions of dollars of other people's money with BLMIS (Griffin Decl. Ex. 26 at 83:1-84:6); that "A&B retained any difference … between the returns A&B obtained [from BLMIS] and those paid to [A&B's] clients" (Griffin Decl. Ex. 23 at ¶ 23); after the SEC investigation closed in 1992, Avellino referred A&B's former clients to BLMIS to open direct accounts (Griffin Decl. Ex.21 at 244;12-245:12); that Madoff agreed to provide Avellino and Bienes with remuneration based on the amount of cash their former clients invested in BLMIS (Griffin Dec. Ex. 22 at 272:2 – 272:24 and Ex. 23 at ¶ 50); and Madoff paid this compensation from 1994 until 2008 through additional trades in the Summary Judgment Entity Defendants' accounts. Griffin Decl. Ex. 22 at 270:1-271:20; 274:5 – 276:19; and Ex. 23 at ¶ 50.

[50] *See Johnson v. City of New York*, No. 15 Civ. 6915 (ER), 2019 WL 294796, at *10, n.8 (S.D.N.Y. Jan. 23, 2019) (rejecting Rule 56.1 response where it "improperly interjects arguments and/or immaterial facts without controverting the assertions); *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (rejecting opposing party's denials where they "quibble with [the] phraseology, but do not address the factual substance asserted"); *Geoghan v. Long Island R.R.*, No. 06 Civ. 1435 (CLP), 2009 WL 982451, at *5–6 (E.D.N.Y. Apr. 9, 2009).

[51] *Goldstick v. The Hartford, Inc.*, No. 00 Civ. 8577 (LAK), 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (finding statement failed to comply with rule because plaintiffs "add[ed] argumentative and often lengthy narrative in almost every case[,] the object of which is to 'spin'" the admissions); *Costello v. N.Y. State Nurses Ass'n*, 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011) (disregarding responses to Rule 56.1 Statement where they were conclusory assertions and legal arguments); *U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3*, No. 00 Civ. 4763 (RMB) (JCF), 2006 WL 2136249, at *3 (S.D.N.Y. Aug. 1, 2006);

While there is absolutely no need to resolve every single fact Defendants purport to dispute, to the extent it will aid the Court, the Trustee has prepared charts that categorize all of Defendants' 56.1 Responses based on whether they were "undisputed" and thus expressly admitted," and for those that Defendants "disputed," categorized further by the legal grounds on which the Trustee contends they should be deemed admitted. *See* Charts A through D attached to the accompanying Trustee's Supplemental 56.1 Statement ("Trustee's Supp. 56.1").[52]

**B. Fortgang's Opinions are Inadmissible Under FRE 702 and Create No Issues of Fact**

Defendants proffer a purported securities expert, Fortgang, to support their argument that they were customers of the Proprietary Trading Business (and not the IA Business), and as such, the trades on their customer statements and trade confirmations evidenced "valid" transactions of "real" securities. Opp. at 13, 15 (citing Fortgang Decl.). They further contend that Fortgang "debunks" Dubinsky's findings that Summary Judgment Entity Defendants were IA Business customers, and that their trades were fake. Opp. at 18-19. But Fortgang's opinions are entirely inadmissible for the many reasons set forth below.

> 1. *Fortgang's Opinion That BLMIS Trade Confirmations Prove a "Valid," "Real" Securities Transaction Occurred Is Unreliable and Lacks Evidentiary Foundation*

To be admissible under FRE 702, expert testimony and opinions must be based upon sufficient facts using reliable methods applied to the facts of the case. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); FRE 702; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). But here, without engaging in any analyses of the transactions in

---

[52] Much of Defs. 56.1 Response consists of objections that will be resolved by the Court's findings on the admissibility of (i) Dubinsky's testimony; (ii) the former BLMIS's employees allocutions and testimony, including DiPascali's,; (iii) Fortgang's opinions and testimony; (iv) Madoff's testimony; and on (v) whether Summary Judgment Entity Defendants were IA Business customers. Notably, in many of their responses, Defendants do not address all of the evidence cited in the Trustee's 56.1.

Defendants' customer statements,[53] Fortgang nevertheless opines that *all* trades in Defendants' BLMIS accounts were "valid" and "real:"[54]

- "It is my opinion … that the generation of a confirmation is, in and of itself, *definitive proof* that a *valid, 'real'* transaction has occurred, that the securities described in the confirmation are *actual and existent*, and that a *duty of delivery* (in the case of a purchase) exists for the broker-dealer" (Fortgang Decl. Attach. A at 5) (emphasis added); and

- "[R]eceipt of a confirmation coming from a market maker, in the custom and practice of securities markets, gives the recipient *all rights of full ownership* of the security described in the confirmation. . ." *Id.* at 4 (emphasis added).

Fortgang also opines that the "naked short" sales in Defendants' BLMIS accounts constituted "valid transactions involving actual securities" (Opp. at 13, Fortgang Decl. Attach. A at 7-8) – but he does so without having engaged in any analyses to determine whether there *actually were* any short sales among the purported transactions in Defendants' accounts.[55] Similarly, Fortgang gives the sweeping opinion that "any, and all, monies deposited by [Defendants] at BLMIS" were used "exclusively to purchase securities and never for any other purposes"[56] – but without having reviewed a single BLMIS bank record or even the report of the Trustee's expert Lisa Collura (which details BLMIS's cash flow and bank accounts). Fortgang Decl. Att. A, Ex. 3.

Fortgang's conclusions were admittedly not based on any analysis, but rather his repeated statement that, in his experience, the generation of a confirmation is proof that a valid, "real"

---

[53] When asked whether he did any analysis to reach this conclusion, Fortgang replied: "There is no analysis to be done. If you receive a confirmation, then a trade was done." Griffin Supp. Decl. Ex. 60 (Fortgang Tr.) at 116:20-117:9 and 131:7-18.

[54] Griffin Supp. Decl. Ex. 60 (Fortgang Tr.) at 118:22 -119:4 and 115:19-23.

[55] Griffin Supp. Decl. Ex. 60 (Fortgang Tr.) 159:22-167:2;167:23-169:14. Indeed, Fortgang could not "point to a specific transaction that [BLMIS] may have executed short." *Id.* at166:8-20.

[56] Fortgang Decl. Ex. A at 6; Opp. at 18; Griffin Supp. Decl. Ex. 60 (Fortgang Tr.) at 128:2-12.

transaction has occurred."[57]  But experience alone, absent evidentiary support or reliable analyses,

does not suffice to meet the reliability required by FRE 702 – particularly where the opinion at

issue is the bold statement that *all* of the Defendants' trades at BLMIS were "real" in the face of

the well-established fact that BLMIS was a Ponzi scheme.[58]

Fortgang's opinions are unmoored from the facts of this case, and based on nothing more

than *ipse dixit* – his say-so – and precisely the type of unreliable expert testimony that is

inadmissible.[59]

2.    *Fortgang's Opinion That Defendants Were Customers of BLMIS's Market-Making
      Business Is Unreliable and Divorced From the Realities of This Case*

Fortgang's main conclusion that the BLMIS trade confirmations created "real" securities

transactions is (according to him) dependent on his conclusion that Defendants were customers of

the Proprietary Trading Business of BLMIS.[60]  And this conclusion is just as unreliable and

inadmissible as his other opinions because it is admittedly unsupported by any analyses[61] and

---

[57] *See e.g.*, Fortgang Decl. Ex. A at 5; Griffin Supp. Decl. Ex. 60 (Fortgang Tr.) at 116:6-19; 118:22-119:4 ("The confirmation is the proof and the only proof that exists that a trade occurred between BLMIS and Avellino").

[58] *Picard v. Merkin*, 581 B.R. 370, 383 (S.D.N.Y. Bankr. 2017) (finding defendant's expert inadmissible, in part, because he "failed to link [his] experience to [his] conclusions");

[59] *See, e.g.*, *In re Blech Sec. Litig.*, No. 94 CIV. 7696 (RWS), 2003 WL 1610775, at *23 (S.D.N.Y. Mar. 26, 2003) (excluding expert whose *ipse dixit* opinions were "general statements without adequate factual support"); *Lippe v. Bairnco Corp.*, 288 B.R. 678, 686-89, 700-01 (S.D.N.Y. 2003) (excluding expert because his opinions "amount[ed] to no more than theoretical speculation," were contrary to record evidence, and "based solely on [his] say-so").

[60] Fortgang Decl. Ex. A (Fortgang Rep.) at 4 ("Furthermore, when the transaction occurs via a market maker, not only is [a trade confirmation] definitive proof that the trade has occurred, but it is also proof that a real security has been passed from seller to buyer.")

[61] Griffin Supp. Decl. Ex. 60 (Fortgang Tr.) at 143:18-144:18; 138:6-25 ("Q: [F]or any given transaction, did you do any analysis to determine whether BLMIS was acting as a market-maker in connection with the Avellino accounts? A: . . .[T]he confirmation is the proof.  There is no further analysis").

utterly disconnected from the facts of this case.[62]  Indeed, Fortgang could not point to a single transaction where BLMIS was actually acting as a market maker or broker-dealer for Defendants.[63]

Moreover, this conclusion is, like his other opinions, completely divorced from the facts of this case.  Fortgang's opinion is based on the fact that Defendants' agreement with BLMIS mentions the word "Broker" (Opp. at 13-14; Fortgang Att. B at 5), and his comparison of BLMIS to how *typical* brokers and investment advisors operate and are regulated generally in the industry. Fortgang, Ex. B at 6; Opp. at 14-15 and n.9).[64] But his comparison of BLMIS to *typical* broker dealers and investment advisors ignores the reality that BLMIS was never a "typical" business, but a criminal Ponzi enterprise, which for decades violated multiple securities laws and regulations and failed to register as an investment advisor to evade detection.[65]

Moreover, his conclusion utterly disregards the evidence here that Defendants' agreements with BLMIS were identical to all IA Business customers' agreements, and their accounts were handled by the same IA business employees.  *See* Section IB1.  As such, his opinion lacks any foundation and is unreliable and inadmissible.[66]

### 3. *Fortgang's Opinions Are Legal Conclusions That Invade the Province of the Court*

While expert testimony is permissible in appropriate cases, "such testimony must be

---

[62] Fortgang reviewed only a handful of Defendants' trade confirmations and customer statements.  *See* Fortgang Report, Ex. 3.  Notably, the two-page account agreement referenced by Fortgang (*id.* at Ex. 4) is the same one that  all IA Business customers had.  *See* Section IB1 above.

[63] *See* Griffin Supp. Decl. Ex. 60 (Fortgang Tr.) at 143:18-144:18, 138:6-25, 139:2-7.

[64] Fortgang concludes that BLMIS did not act like a *typical* IA Business (did not register as an IA Business as it was required to, did not take management fees like an IA Business) and that, because Madoff had discretion to execute trades for Defendants, BLMIS was acting more like a *typical* broker. Fortgang, Decl. Ex. B at 5-6.

[65] The fact that Madoff was an SEC-registered broker-dealer with discretion over his customers' accounts was, according to the District Court, part of the fraudulent scheme. *Epstein II*, 2022 WL 493734, at *1-2.

[66] *Gen. Elec. Co. v.. Joiner*, 522 U.S. 136, 146 (1997); *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 636 (S.D.N.Y. 2016) (granting motion to preclude expert because his conclusion "lack[ed] record foundation," had "no factual basis," and was contrary to record evidence).

carefully circumscribed in order to ensure that the expert does not usurp the role of the court on issues of law and the trier of fact on the ultimate issues of fact and law."[67]   Here, Fortgang's "opinion" that BLMIS trade confirmations evidence "real" securities transactions is nothing more than his view of the legal rights and obligations created by the trade confirmations.

But that issue is a purely legal question that impermissibly invades the province of the Court – and most importantly, is one the Second Circuit has already decided in the Net Equity Decision.[68] There, the court squarely rejected the same position that Fortgang advances here, finding it "would have the absurd effect of treating fictitious and arbitrarily assigned paper profits as real and would give legal effect to Madoff's machinations."[69]

### 4.  *Fortgang's Opinions Create No Genuine Issues of Fact*

Even if Fortgang's opinions were to be admissible, they still create no genuine issue of fact.  His legal conclusions are plain wrong (according to the Net Equity Decision), and thus have no probative value.  And the utter lack of evidentiary foundation to Fortgang's conclusions (which rest solely on the fake trade confirmations received by every other IA Business customer) stands in stark contrast to Dubinsky's thorough analyses of the securities trades in Summary Judgment Entity Defendants' accounts, based on extensive BLMIS books and records and other evidence, from which he concluded the Defendants were customers of the IA Business and their trades were fake like all other IA Business customers.  *See* Dubinsky Global Rep. and Dubinsky A&B Rep.

---

[67] *United States v. Bilzerian*, 926 F.2d 1285, 1294-95 (2d Cir. 1991); *see also In re Blech Sec. Litig.*, 2003 WL 1610775, at *21-*22.

[68] *See* Net Equity Decision, 654 F.3d at 235-36 (concluding that customers who received statements and trade confirmations from BLMIS should be treated as customers with claims for securities, but their "net equity" should be determined by Net Investment Method – not the market value of the securities reflected on their last BLMIS customer statement).

[69] *Id.* at 235; *see also* Antecedent Debt Decision, 976 F.3d at 198 ("It follows that regardless of whether the defendants-appellants had securities entitlements as a result of the account statements, they did not have property rights to the values in excess of principal reflected there.").

Far from "debunking" Dubinsky's expert report, Fortang's unfounded conclusions leave Dubinsky's opinions wholly unrebutted and create no issues of fact.

### C. Madoff's Testimony Is Inadmissible

1. *Madoff's Testimony is Improper Expert Opinion and Should be Excluded for Failure to Comply with Fed. R. Civ. P. 26(a)*

Defendants attempt to manufacture an issue of fact by offering Madoff's testimony to challenge and rebut the conclusions of the Trustee's expert, Dubinsky. Opp. at 19-21 (listing bullet points of Dubinsky's opinions which they claim have been "refuted by Madoff"). But they never disclosed Madoff as an expert, rebuttal[70] or otherwise, and their time to do so under Rule 26(a)(2) has long since expired. Their failure to do so bars admission of Madoff's testimony pursuant to FRE 702. *Sutton v. Massachusetts Mut. Life Ins. Co.,* No. 18-CV-1273 (VSB), 2020 WL 5765693, at *3 (S.D.N.Y. Sept. 27, 2020).

2. *Madoff's Testimony Is Not Admissible and Should Be Disregarded*

Defendants had their opportunity to, and did, depose Madoff in this case. But apparently not satisfied with the answers they received, they instead rely heavily on hearsay testimony from Madoff taken *outside* of this adversary proceeding, including a deposition authorized by the court in the "good faith" cases[71] (which the Court limited to use by the parties in those cases),[72] and in a case involving third parties.[73] As such, Madoff's testimony is hearsay and should be

---

[70] A rebuttal expert is one who presents "evidence [] intended solely to contradict or rebut evidence on the same subject matter identified by another party['s]" expert. Fed. R. Civ. P. 26(a)(2)(D)(ii).

[71] Defendants repeatedly cite to the deposition of Madoff in the "good faith" cases to attempt to rebut Dubinsky's testimony. Opp. at 19-21 (citing Woodfield Decl. Ex. 1 and 2).

[72] *See* Order dated September 29, 2016, *In re BLMIS*, No. 08-01789 ECF No. 14213. Notably, while Defendants initially sought permission from the Court to participate in that deposition of Madoff, they subsequently withdrew their request. *See In re BLMIS*, No. 08-01789 ECF Nos. 13814 and 13851.

[73] Defendants cite to a 2015 deposition of Madoff taken in a case entitled *P&S Associates et al. v. Steven Jacob* (at which the Trustee's counsel was not present to cross-examine Madoff) mainly to attempt to rebut DiPascali's Criminal Trial testimony (*see* Opp. at 25) and as evidence of what Avellino and Bienes

precluded under FRE 802.

Moreover, Madoff's hearsay testimony does not fall within any exceptions, including

FRE 807.  Unlike DiPascali's Criminal Trial testimony,[74] Madoff's testimony lacks sufficient

guarantees of trustworthiness,[75] as it is not corroborated, but rather contradicted by the Trustee's

experts, BLMIS's books and records, the pleas and testimony of BLMIS employees – and

Madoff *himself*.[76]  Where evidence is so "contradictory and fanciful" that doubt is cast upon its

plausibility, a court may disregard it.[77]  Madoff's testimony clearly falls within this category.

## IV.    THE TRUSTEE IS ENTITLED TO AN AWARD OF PREJUDGMENT INTEREST

"[A]bsent a sound reason to deny prejudgment interest, such interest should be

awarded."[78]  Thus, courts on several occasions have granted the Trustee prejudgment interest in

cases where he sought to recover fictitious profits received by innocent IA Business customers.[79]

---

purportedly knew or did not know about the fraud at BLMIS(Opp. at 9, 30-32); however, Madoff's testimony lacks foundation and should also be excluded on this basis.

[74] Unlike DiPascali, Madoff never cooperated with the Government and therefore did not have the same incentive for truthfulness to obtain a positive sentencing recommendation.

[75] A prime example of the complete lack of trustworthiness to Madoff's statements is the conflicting dates he has given for the start of his Ponzi scheme.  In his plea allocution and elsewhere, he has stated it began around "the early 1990s." Griffin Decl. Ex. 13 at 25; *see, e.g.,* Woodfield Decl. Ex 1 at 13-14, 19, 26, 99-100.  But he told the FBI just days after his arrest in 2008 that he engaged in the Ponzi scheme "[f]or virtually the entire life of the retail business" – which began in January 1960 when BLMIS was registered with the SEC.  Griffin Supp. Decl. Ex. 62 at 3-4 (emphasis added)**.**

[76] Defendants claim that Madoff's testimony in another proceeding contradicts DiPascali's testimony about whether actual trades occurred in the A&B accounts prior to 1992, what DiPascali could have known about that, and whether "a new set of [A&B] books was created to provide to the SEC."  Opp. at 25.  But Madoff testified in *this* proceeding it was DiPascali who handled A&B's trades, that Madoff himself had "nothing to do" with their trades, and he (Madoff) would have "no way of knowing" if BLMIS statements were recreated during the SEC investigation. Woodfield Decl. Ex. 10 at 59:13–24; 31:16–33:23.

[77] *See Jeffrys v. Rossi*, 275 F.Supp.2d 463, 476-77 (S.D.N.Y. 2003).

[78] *McHale v. Boulder Capital LLC (In re 1031 Tax Grp., LLC)*, 439 B.R. 84, 87 (Bankr. S.D.N.Y. 2010).

[79] *See, e.g., Picard v. Keller Family Trust*, 634 B.R. 39, 53 (Bankr. S.D.N.Y. 2021); *see also Picard v. Fairfield Pagma Assocs.*, LP, No. 08-01789 (CGM), 2022 WL 1110560, at *8 (Bankr. S.D.N.Y. Apr. 13, 2022); *Epstein II*, 2022 WL 493734, at *18.

There is no reason to depart from doing so here, particularly when it is undisputed that

Defendants had a multiple decades-long relationship with Madoff during which they continually

profited from perpetuating the Ponzi scheme.

## CONCLUSION

For the reasons set forth herein and as more detailed in the Trustee's Motion, the Trustee

respectfully requests that the Court grant partial summary judgment against the Summary

Judgment Defendants for the Two-Year Fictitious Profits of $17.2 million, and award

prejudgment interest as set forth in the Motion.

Dated: May 23, 2022
      New York, New York

By: */s/ Regina Griffin*
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Regina Griffin
Email: rgriffin@bakerlaw.com
Stacey A. Bell
Email: sbell@bakerlaw.com
Melissa L. Kosack
Email: mkosack@bakerlaw.com
Esterina Giuliani
Email: egiuliani@bakerlaw.com
Kathryn Zunno-Freaney
Email: kzunno@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the Chapter 7 Estate of*
*Bernard L. Madoff*