**BAKER & HOSTETLER LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 10-05421 (CGM) |
| FRANK J. AVELLINO, *et al.*, | |
| Defendants. | |

**TRUSTEE'S REPLY TO DEFENDANTS' OBJECTIONS AND RESPONSES**
**TO TRUSTEE'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF TRUSTEE'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

The Trustee submits this reply to Defendants' Objections and Responses to the Trustee's Statement of Material Fact, ECF No. 248, filed in response to the Trustee's Statement of Material Facts ("Statement"), ECF No. 238, in Support of the Trustee's Motion for Partial Summary Judgment ("Motion"), ECF No. 236.

## **REPLY**

None of the purported factual disputes that Defendants identify in their Objections and Responses ("Responses") to the Trustee's Statement[1] is a genuine issue of material fact that precludes this Court from granting summary judgment to the Trustee.

### A.  Defendants Concede That Many Facts Are "Undisputed"[2]

Defendants outright admit that 111 of the 461 statements set forth in the Trustee's Statement are "Undisputed."  All 111 such facts should be deemed admitted under Local Rule 7056-1(d).

### B.  Defendants Respond That a Statement is Both "Disputed" and "Undisputed"[3]

There are 95 facts from the Trustee's Statement to which (i) Defendants responded "Disputed," but then followed with an assertion that the facts contained in the same Statement are "Undisputed" and/or (ii) Defendants respond with "Disputed" to a specific paragraph but then refer the Court to their response to a different paragraph where they admit the facts asserted therein, in whole or in part.  Such responses may take the form of labeling quoted testimony in a Statement

---

[1] **Exhibit A** attached hereto is a chart reflecting the total list of the Trustee's Statements, Defendants' Responses, and the Trustee's corresponding Reply.

[2] **Exhibit B** attached hereto is a chart listing the 111 Statements that Defendants responded are "Undisputed."

[3] **Exhibit C** attached hereto is a chart listing 95 Statements to which Defendants responded both "Disputed" and "Undisputed" in the same Response, or where Defendants responded to a Statement as "Disputed," then referred the Court to a different Response in which Defendants admitted the facts asserted therein.

as "Undisputed," followed by objections, such as to relevance or phraseology, or the addition of

extraneous statements all in the same Response.  *See, e.g.*, Responses ¶¶ 36, 82, 262.  Others

respond that a Statement is "Disputed," but then immediately follow that "the facts alleged are

undisputed" (*see, e.g.*, Responses ¶¶ 346-349) or respond that a Statement is "Disputed" but rely

on a paragraph where that Statement was undisputed (*see, e.g.*, Responses 350-354).  The 95 facts

with these types of Responses should be deemed admitted pursuant to Local Rule 7056-1.

### C.  Defendants Respond that Facts are "Disputed" But Do Not Specifically Controvert These Facts[4]

For the remaining 255 of the 461 Statements, Defendants have responded by stating

"Disputed."  However, of those, 242 do not appropriately controvert the Statements.  Instead, these

responses asserted narratives consisting of: (i) evidentiary objections, including relevance

objections; (ii) the addition of extraneous facts and unrelated testimony; (iii) improper legal

argument; (iv) assertions that a Statement contains "implied" facts; (v) mischaracterizations of the

Statement or its supporting evidence; or (vi) quibbles with the Trustee's phraseology that are not

material to the Court's resolution of the Motion.  Further, many of the Responses set forth full

counterstatements, though they are not styled as such or set out in the traditional form, pursuant to

Local Rule 7056-1.  The Court should adopt these 242 facts as undisputed for purposes of the

Motion because the Defendants have not specifically controverted them.

The Defendants' objections in the remaining 13 (of the 255) in the "Disputed" category do

not create a material dispute of facts precluding summary judgment for the Trustee.

---

[4] **Exhibit D** attached hereto lists the 255 Statements to which Defendants responded with "Disputed," and the Trustee's Reply to same.

I.      **Trustee's Appointment and Liquidation**

1.      On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud.  Compl., *United States v. Madoff*, No. 08-mj-02735 (S.D.N.Y. 2008), ECF No. 1.

**RESPONSE: Disputed.**  Admit that Madoff was arrested on December 11, 2008. However, the Trustee is incorrect as to the charges asserted against Madoff at the time of the arrest. Other than establishing the Filing Date, such inaccuracy is neither material nor necessary for the determination of the Trustee's Motion.

**TRUSTEE'S REPLY**: Defendants admit that Madoff was arrested on December 11, 2008. Defendants' additional response neither raises a genuine dispute with Trustee Statement ¶ 1, nor provides any evidence to the contrary.  Trustee Statement ¶ 1 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).  *See* LBR 7056-1)(d) (stating that facts shall be deemed admitted for the purposes of the motion unless "specifically controverted").

2.      Contemporaneously, the Securities and Exchange Commission ("SEC") commenced an action in the United States District Court for the Southern District of New York. Compl., *SEC v. Madoff*, No. 08-cv-10791 (LLS) (S.D.N.Y. Dec. 11, 2008), ECF No. 1.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY**: Defendants admit the factual statement in Trustee Statement ¶ 2. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

3.      On December 15, 2008, under 15 U.S.C. § 78eee(a)(4)(A), the SEC consented to combining its action with an application by the Securities Investor Protection Corporation ("SIPC").  Application of SIPC at 10, *SEC v. Madoff*, No. 08-cv-10791 (LLS) (S.D.N.Y. Dec. 15,

2008), ECF No. 5. Thereafter, under 15 U.S.C. § 78eee(a)(4)(B), SIPC filed an application in the

District Court alleging, among other things, that BLMIS could not meet its obligations to securities

customers as they came due and its customers needed the protections afforded by the Securities

Investor Protection Act ("SIPA"). *Id.* at 2–3.

**RESPONSE: Undisputed.** However, the Trustee fails to articulate that SIPC filed its

action for protection solely for the entity, Bernard L. Madoff Investment Securities, LLC. See

Application of SIPC at 10, <u>SEC v. Madoff</u>, No. 08-10794 (LLS) (S.D.N.Y. Dec. 15, 2008), ECF

No. 5.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 3

but add extraneous statements that are not responsive to the stated fact and are argumentative.

Accordingly, Defendants' extraneous statements should be disregarded and Trustee Statement ¶ 3

should be deemed admitted under Local Rule 7056-1(d).

4.      Also, on December 15, 2008, the district court granted SIPC's application and

entered an order pursuant to SIPA, which, in pertinent part:

- appointed the Trustee for the liquidation of the business of BLMIS pursuant to 15 U.S.C. § 78eee(b)(3);

- appointed Baker and Hostetler LLP as counsel to the Trustee pursuant to 15 U.S.C. § 78eee(b)(3); and

- removed the case to the Bankruptcy Court pursuant to 15 U.S.C. § 78eee(b)(4). Order, *SEC v. Madoff*, No. 08-cv-10791 (LLS) (S.D.N.Y. Dec. 15, 2008), ECF No. 4 ("SIPC Liquidation Order").

**RESPONSE: Undisputed.** However, the Trustee was appointed solely for the liquidation

of BLMIS, the limited liability company and not of Madoff or his sole proprietorship. SIPC

Liquidation Order, ECF No. 3. See <u>In re. Bernard L. Madoff Inv. Securities, LLC</u>, 557 B.R. 89

(Bank. S.D.N.Y. 2016). While potentially relevant on other issues in this case, it is neither material

nor necessary for the determination of the Trustee's Motion.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 4 but add extraneous statements that are not responsive to the stated fact and are argumentative. Accordingly, Defendants' extraneous statements should be disregarded and Trustee Statement ¶ 4 should be deemed admitted under Local Rule 7056-1(d).

5.    By orders dated December 23, 2008, and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found that the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate. Order, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. Dec. 23, 2008), ECF No. 11; Order, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro No 08-01789 (SMB) (Bankr. S.D.N.Y. Feb. 4, 2009), ECF No. 69.

**RESPONSE: Disputed** only with regard to the Trustee's utilization of the phrase "… the estate of Madoff…" to the extent that this fails to acknowledge that the "estate" is solely the limited liability company Bernard Madoff Investment Securities LLC. <u>SIPC v. Bernard L. Madoff Inv. Sec. LLC</u>, Adv. Pro.No. 08-01789 (SMB) (Bankr. S.D.N.Y. Dec. 23, 2008), ECF No. 11; Order, Feb. 4, 2009, ECF No. 69.

**TRUSTEE'S REPLY**: Defendants do not dispute the factual statement in this paragraph but only "dispute" the Trustee's phraseology. Defendants' quibble with the Trustee's phraseology neither raises a genuine dispute nor specifically controverts the factual statement in Trustee Statement ¶ 5. Consequently, Trustee Statement ¶ 5 should be deemed admitted.

6.    On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff, and on June 9, 2009, the Bankruptcy Court substantively consolidated the Chapter 7 estate of Madoff into the SIPA Proceeding. Involuntary Petition, *In re Bernard L. Madoff*, Adv. Pro. No. 09-11893 (SMB) (Bankr. S.D.N.Y. Apr. 13, 2009), ECF No. 1; Consent Order, *Sec. Inv'r Prot.*

*Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. June 9, 2009), ECF No. 252.

 **RESPONSE: Undisputed.**  The Order consolidating the Chapter 7 estate of Madoff into the SIPA proceeding imposed certain restrictions which could be relevant on other issues in this case, it is not material nor necessary for the determination of the Trustee's Motion.

 **TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 6. Defendants add extraneous statements that are argumentative and which they concede are not "material" to the Trustee's motion.  Accordingly, Defendants' extraneous statements should be disregarded and Trustee Statement ¶ 6 should be deemed admitted under Local Rule 7056-1(d).

**II.** **BLMIS's Business**

 7. In January 1960, Bernard L. Madoff registered as a broker-dealer with the SEC. He was assigned registrant number 8-8132.  Through that registration, the broker-dealer became a member of SIPC when SIPA was enacted in 1970.  SIPC Liquidation Order; Declaration of Regina Griffin, dated February 3, 2022 ("Griffin Decl."), Ex. 1 (SEC Form BD for Bernard L. Madoff dated Dec. 31, 1959 (PUBLIC0003607)).

 **RESPONSE: Undisputed.**

 **TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 7. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

 8. Beginning in 1960 and until January 1, 2001, BLMIS operated as a sole proprietorship.  Declaration of Bruce G. Dubinsky in Support of the Trustee's Motion for Partial Summary Judgment dated February 3, 2022 ("Dubinsky Decl."), Attach. A (Expert Report of Bruce G. Dubinsky, dated January 16, 2019 ("Dubinsky Global Report") at ¶ 36.  During its existence, it operated under the names Bernard L. Madoff and Bernard L. Madoff Investment Securities and, after 2001, as Bernard L. Madoff Investment Securities LLC.  *Id*. at ¶ 38.

**RESPONSE: Disputed.** BLMIS as the LLC did not operate as a sole proprietorship; Madoff operated as a sole proprietorship. Defendants further object to the reliance on Dubinsky as the source for these facts, as more fully set forth in Section IIE of Defendants' Memorandum of Law in Response to the Trustee's Motion.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 8, nor provides any evidence to the contrary. Defendants interpose an evidentiary objection to the admissibility of Dubinsky's expert opinions and add an extraneous statement constituting an improper legal argument in violation of Local Rule 7056-1. Trustee Statement ¶ 8 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, Dubinsky's expert opinions are admissible. *See* Trustee's Reply Memo of Law at Section II.C.

9.      Effective as of January 1, 2001, BLMIS was registered as a New York single member limited liability company. On January 12, 2001, BLMIS amended its SEC Form BD to reflect its change in corporate form from a sole proprietorship to a single member limited liability company and all the assets and liabilities of the sole proprietorship were transferred to the limited liability company. Griffin Decl. Ex. 2 ("Amended Form BD" dated January 12, 2001).

**RESPONSE: Disputed**. BLMIS as the LLC did not amend its form as it did not exist before January 2001 so did not have a form before then.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 9, nor provides any evidence to the contrary. Defendants add extraneous statements that are arguments in violation of Local Rule 7056-1. Trustee Statement ¶ 9 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

10.    In response to the direction in the Amended Form BD to "[b]riefly describe details

of the *succession* including any assets or liabilities not assumed by the *successor* [BLMIS],"

(emphasis in original), Madoff replied:

> EFFECTIVE JANUARY 1, 2001, PREDECESSOR WILL TRANSFER TO
> SUCCESSOR ALL OF PREDECESSOR'S ASSETS AND LIABILITIES,
> RELATED TO PREDECESSOR'S BUSINESS. THE TRANSFER WILL NOT
> RESULT IN ANY CHANGE IN OWNERSHIP OR CONTROL.

Griffin Decl. Ex. 2 (Amended Form BD) at Question 5 (emphasis in original).  No assets or

liabilities of the sole proprietorship were listed as "not assumed by the successor."  *Id.*

**RESPONSE: Disputed.** While the quoted language appears on Amended Form BD, the

document expressly does not include the Investment Advisory ("IA") business as an operation of

the LLC. Griffin Decl. Ex. 2 Amended Form BD at 8-10.

**TRUSTEE'S REPLY**: Defendants admit the quoted language that formed the basis of the

factual statement in Trustee Statement ¶ 10.  Defendants' additional response neither raises a

genuine dispute with Trustee Statement ¶ 10, nor provides any evidence to the contrary.

Defendants' extraneous statements are not responsive to the stated fact and are argumentative.

This fact is therefore not controverted, and consequently, should be deemed admitted under Local

Rule 7056-1(d).

11.    Madoff further certified that no "accounts, funds, or securities of customers of the

*applicant* are held or maintained by such other *person*, firm, or organization." *Id.* at Question 8(c)

(emphasis in original).

**RESPONSE: Disputed.** Madoff did not certify that accounts were held by the limited

liability company. To the extent that this statement contains the Trustee's characterization of the

effect of the Amended Form BD, which speaks for itself, the Court is respectfully referred to the

cited document for a true and accurate interpretation of its contents.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 11, nor provides any evidence to the contrary. Defendants' extraneous statements are not responsive to the stated fact and are argumentative. Accordingly, Defendants' extraneous statements should be disregarded. Trustee Statement ¶ 11 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

12.    Also effective January 1, 2001, BLMIS's Amended and Restated Operating Agreement transferred all assets—including bank accounts—held by the sole proprietorship to the LLC:

> 3. **Purpose**. The Company is formed to receive as at January 1, 2001, all of the assets, subject to liabilities, associated with the business being conducted by Bernard L. Madoff, as sole proprietorship (the "Business") and to thereafter conduct such Business, and any further extension therefor, in such manner and form as determined by the Member in his sole discretion, to the extent permitted by the [Limited Liability Company Law of the State of New York] or by the laws of any jurisdiction which the Company may do business.

Griffin Decl. Ex. 3 (BLMIS's Amended and Restated Operating Agreement).

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 12. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

13.    BLMIS's change from a sole proprietorship to an LLC was reflected on BLMIS documents, including customer statements sent to the Summary Judgment Entity Defendants and customer agreements, which included "LLC" in the top left corner starting in 2001. *See, e.g.*, Griffin Decl. Exs. 4, 7-11.

**RESPONSE: Undisputed** except to the extent that BLMIS as an LLC did not change from a sole proprietorship as it did not exist earlier and other documents sent out by BLMIS did not reflect the LLC designation: As this Court has noted, "Madoff was not particularly attentive to the

names he used…." *SIPC v. Bernard L. Madoff Investment Securities LLC* (In re Madoff), 610 B.R.

197, 218 (Bankr. S.D.N.Y. 2019).

> **TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 13 but add extraneous statements that are not responsive to the stated fact, are argumentative, and constitute legal conclusions in violation of Local Rule 7056-1.  Accordingly, Defendants' extraneous statements should be disregarded and Trustee Statement ¶ 13 should be deemed admitted under Local Rule 7056-1(d).

14.      In 2006, BLMIS registered as an investment advisor with the SEC claiming to have only 23 accounts and $11.7 billion in assets under management.  Griffin Decl. Ex. 12 (2006 Form ADV); *see also* Dubinsky Decl. Attach. A (Dubinsky Global Report) ¶ 39.  Madoff used the same SEC registrant number (8-8132) and signed the Form ADV on behalf of "Bernard L. Madoff Investment Securities LLC."  Griffin Decl. Ex. 12 (2006 Form ADV).

> **RESPONSE: Undisputed.** With the clarification that the Trustee's utilization of the term "BLMIS", refers to the limited liability company. Griffin Decl. Ex 12 (2006 Form Adv.).

> **TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 14 but add that the statement is subject to clarification.  Since Defendants do not specifically controvert the factual statement in this paragraph, this extraneous information should be disregarded and Trustee Statement ¶ 14 should be deemed admitted under Local Rule 7056-1(d).

15.      BLMIS operated three business units: (i) a proprietary trading business; (ii) a market-making business; and (iii) the investment advisory business (the "IA Business").  Dubinsky Decl. Attach. A, Dubinsky Global Report at ¶ 36.

> **RESPONSE: Undisputed.** However, BLMIS did not operate an IA Business until it was registered as an investment advisor in 2006. (Amended Complaint ¶111).

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 15 but add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. Accordingly, Defendants' extraneous statements should be disregarded and Trustee Statement ¶ 15 should be deemed admitted under Local Rule 7056-1(d).

16.    The proprietary trading business traded for its own account to make money for BLMIS. *Id.* ¶¶ 36, 46.

**RESPONSE: Undisputed.** The proprietary trading businesses (as well as the market-making business) constituted the activities of a traditional broker dealer and market maker who bought and sold securities on behalf of its clients, here, the accounts of the Defendants, as well as its own account. Fortgang Decl., Ex. A, (Fortgang Report), at 5-7.

**TRUSTEE'S REPLY**:  Defendants admit the factual statement in Trustee Statement ¶ 16 but add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. Accordingly, Defendants' extraneous statements should be disregarded and Trustee Statement ¶ 16 should be deemed admitted under Local Rule 7056-1(d).

17.    The market-making business made markets in certain stocks, bonds, warrants and rights. *Id. at 46.*

**RESPONSE: Undisputed.**  See Defendant's Response to Trustee's statement no. 16.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 17. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

18.    The proprietary trading and market-making businesses were referred to within BLMIS as "House 5" (collectively referred to herein as the "Proprietary Trading Business." *Id.* at ¶ 36.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY**: Defendants admit the factual statement in Trustee Statement ¶ 18. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

19.    The IA Business purportedly traded stocks and options on behalf of its customers. *Id.* ¶¶ 41–44.

**RESPONSE: Disputed.**   Defendants object to the use of the word "purportedly." Also, this statement provides no time frame for the IA Business. See response to Trustee's statement no. 15. Substantial evidence exists that BLMIS traded securities on behalf of its clients, see Woodfield Decl. Ex. 1 (Madoff Dep. Dec. 20, 2016) at 54:18-25; 55:1-25; 56:1-19; 58:10-25; Ex. 10 (Madoff Dep. Nov. 13, 2019) at 15:23-25; 16:1; Ex. 2 (Madoff Dep. April 26, 2017) at 47:13-16; 65:10-16; Fortgang Decl., Ex. A, (Report) at 6, 8.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 19, nor provides any evidence to the contrary.  Trustee Statement ¶ 19 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d). Moreover, Defendants' quibble with the Trustee's phraseology does not controvert any of the facts in Trustee Statement ¶ 19, a further reason this factual statement should be deemed admitted.

The Trustee objects to the Defendants' reliance on Madoff's testimony which is impermissible expert testimony, inadmissible hearsay, and untrustworthy.  The Trustee further objects to reliance on the Fortgang Reports because the opinions contained therein do not create disputed issues of fact and are inadmissible as unreliable and untrustworthy.  *See* Trustee's Reply Memo at Section III.B; III. C.

Nonetheless, the Trustee's experts conclusively established that Defendants were customers of the IA Business (see Trustee's Reply to Statement ¶ 29) and Madoff did not execute any of the trades for IA Business customers.  *See* Trustee's 56.1 Statement: ¶¶ 125-317.  Former

BLMIS employees DiPascali and Kugel, and even Madoff himself, corroborate these conclusions.

Trustee's 56.1 Statement ¶¶ 22-30.

Madoff, DiPascali, and Bongiorno provided testimony that the Defendants were customers

of the IA Business:

- Griffin Decl., Ex. 15; Griffin Supp. Decl., Ex. 64 (DiPascali Tr.) at 4622:23-4623:1: Q. And when you say [Avellino and Bienes] were a client of Madoff Securities, were they a client in the investment side or were they a client working with market making? A: No, on the investment side.

- Griffin Supp. Decl., (Madoff P&S Dep.) at 17:25-18:9 - Q. Did Alpern & Heller ever have an account though the investment advisory business of yours? A. Yes. Q. Okay. And did that firm at any point in time become known as Alpern & Avellino? A. Yes. Q. Okay. And so did Alpern & Avellino also maintain an investment advisory account? A. Yes.

- Griffin Decl., Ex. 27 (Bongiorno Dep.) at 18:5-12 - Q: Can you give me a sense of who those retail customers were? A: At the time, I remember Saul Alpern [Madoff's-father-in-law] as one of them …Frank Avellino and Mike Bienes both worked for Mr. Alpern.  They probably had accounts back then.)

Moreover, Madoff, in the testimony on which Defendants rely, confirmed the timeframe

for his IA Business, admitting that he started a "retail" business in the 1960s (Woodfield Ex. 1 at

55:1-24) and referencing the problems of his "investment advisory firm" in the 1980s (Woodfield

Ex. 1 at 55:1-24).  DiPascali also testified as follows:

- When you started working at Madoff Securities was there an investment advisory business?  It was not registered as an investment adviser back in those days, but he maintained a customer business."  Q: Who ran that customer business when you first started at Madoff Securities in 1975? A: Annette [Bongiorno].

Griffin Decl. Ex. 15 (DiPascali Tr.) at 4517:21-4518:2.  *See also* Griffin Decl. Ex. 29

(Crupi Dep.) at 13:15-14:9.

It is further undisputed that the Proprietary Trading Business made markets for

institutional, broker-dealer clients or traded for its own accounts; it did not service retail customers

like the Summary Judgment Entity Defendants.  *See* Trustee's 56.1 Statement: ¶¶ 318-19.  Nor did

the Proprietary Trading Business execute trades on behalf of the IA Business customers. *Id.* at

225-242, 254-259, 266, and 319.

20.    The Proprietary Trading Business and the IA Business were units of BLMIS

operated by Madoff. *Id.* ¶¶ 36, 48.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY**: Defendants admit the factual statement in Trustee Statement ¶ 20.

Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

**III.    The Guilty Pleas, Criminal Proceeding and Convictions of Former BLMIS Employees**

**A.    Madoff**

21.    At a plea hearing on March 12, 2009, in the case captioned *United States v. Madoff*,

No. 09-CR-213(DC), Madoff pleaded guilty to an 11-count criminal action filed against him by

the United States Attorney for the Southern District of New York. Plea Allocution of Bernard L.

Madoff, *United States v. Madoff*, No. 09-CR-213 (DC) (S.D.N.Y. Mar. 12, 2009) (the "Madoff

Allocution"), ECF No. 57, (Griffin Decl. Ex. 13).

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY**: Defendants admit the factual statement in Trustee Statement ¶ 21.

Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

22.    Madoff admitted that he "operated a Ponzi scheme through the investment advisory

side of [BLMIS]." *Id*. at 23:14–23; 31:25–32:1.

**RESPONSE: Undisputed** that it is a partial quote. However, it has no applicability

to the Defendants whose accounts were actively traded by Madoff. See Fortgang Decl., Ex. A

(Report) at 6, 7; Fortgang Decl., Ex. B (Rebuttal) at 7.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 22 but add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. Accordingly, Defendants' extraneous statements should be disregarded and Trustee Statement ¶ 22 should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, Defendants were customers of the IA Business (*see* Trustee's Reply to Statement ¶ 29), and the trades in the accounts for the Defendants, including for the Summary Judgment Entity Defendants, were fictitious (*see* Trustee's Reply to Statement ¶ 19).

23.    Madoff further admitted that he never invested his clients' funds in securities, that he used funds on hand in the JP Morgan account to pay customer redemptions, and that he created false trading confirmations and client account statements to cover up the fact that he had not executed trades on behalf of BLMIS IA clients. Madoff stated:

> The essence of my scheme was that I represented to clients and prospective clients who wished to open investment advisory and individual trading accounts with me that I would invest their money in shares of common stock, options, and other securities of large well-known corporations, and upon request, would return to them their profits and principal. Those representations were false for many years. Up until I was arrested on December 11, 2008, I never invested these funds in the securities, as I had promised. Instead, those funds were deposited in a bank account at Chase Manhattan Bank. When clients wished to receive the profits they believed they had earned with me or to redeem their principal, I used the money in the Chase Manhattan bank account that belonged to them or other clients to pay the requested funds. The victims of my scheme included individuals, charitable organizations, trusts, pension funds, and hedge funds.

*Id.* at 24:9–24.

**RESPONSE: Undisputed** that this statement quotes a portion of Madoff's plea allocation but dispute the characterization of the quote. However, such statement has no applicability to the Defendants whose accounts were actively traded by Madoff. See Fortgang Decl., Ex A (Report) at 6, 7; Fortgang Decl., Ex. B (Rebuttal) at 7.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 23 but add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence.  Accordingly, Defendants' extraneous statements should be disregarded and Trustee Statement ¶ 23 should be deemed admitted under Local Rule 7056-1(d).

Further, Defendants' objections to the characterization and relevance of Trustee Statement ¶ 23 do not sufficiently respond to, or deny, the uncontroverted facts therein, and therefore Trustee Statement ¶ 23 is deemed admitted.

Nonetheless, it is undisputed that Defendants were customers of the IA Business (*see* Trustee's Reply to Statement ¶ 29), and the trades in the accounts for the Defendants, including for the Summary Judgment Entity Defendants, were fictitious (*see* Trustee's Reply to Statement ¶ 19).

**B.    Frank DiPascali**

24.    Frank DiPascali ("DiPascali"), a BLMIS employee since 1975 and Madoff's right-hand man, pleaded guilty to a ten-count criminal action charging him with participating in and conspiring to perpetuate the Ponzi scheme at BLMIS.  Griffin Decl. Ex. 14 (Plea Allocution Transcript of Frank DiPascali Jr., *United States v. DiPascali*, No. 09-CR-764 (RJS), ECF No. 12, hereinafter "DiPascali Plea") at 44:25-25, 65:6-8.

**RESPONSE: Disputed.**  DiPascali was not charged with "participating in and conspiring to perpetuate the Ponzi scheme at BLMIS". Griffin Decl. Ex. 14 (DiPascali Plea Allocution).

**TRUSTEE'S REPLY**: Defendants' response does not raise a genuine dispute with Trustee Statement ¶ 24, and the statement is therefore not controverted.  Consequently, Trustee Statement ¶ 24 should be deemed admitted under Local Rule 7056-1(d).

In any event, as the *Nelson* Court recognized, "The Court is not aware of the specific crime of operating a Ponzi scheme but the Trustee is not relying on the judgments of conviction; he is

relying on the allocutions to prove the facts necessary to show that Madoff Securities and BLMIS committed the various crimes to which [Madoff and DiPascali] pled guilty (securities fraud, etc,) through the operation of a Ponzi scheme." *Picard v. Nelson*, 610 B.R. 197, 210 n.8 (Bankr. S.D.N.Y. 2019).

25.    At a plea hearing on August 11, 2009, in the case captioned *United States v. DiPascali*, No. 09-CR-764 (RJS), DiPascali admitted that no purchases or sales of securities took place in connection with the IA Business customer accounts.  DiPascali testified:

> From at least the early 1990s through December of 2008, there was one simple fact that Bernie Madoff knew, that I knew, and that other people knew but that we never told the clients nor did we tell the regulators like the SEC. No purchases of [sic] sales of securities were actually taking place in their accounts. It was all fake. It was all fictitious. It was wrong and I knew it was wrong at the time, sir.

*Id.* at 45:21–46:15.

**RESPONSE: Disputed.**  Defendants object to the admission of DiPascali's plea allocution and testimony in the criminal trial of *US v. Bonventre*. See Section IIE of the Defendants' Response to the Trustee's Motion.

**TRUSTEE'S REPLY**: Defendants' evidentiary objection neither raises a genuine dispute with Trustee Statement ¶ 25, nor provides any evidence to the contrary because it does not rebut the factual statement asserted.   Trustee Statement ¶ 25 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, it is law of the case that DiPascali's plea allocution and Criminal Trial testimony are admissible.  *See* Trustee Reply Memo at II.B.

26.    At the plea hearing, DiPascali testified that he had been instructed to falsely represent to clients that securities trading was occurring in their investment accounts when in fact, no trades were being made.  DiPascali stated:

> From our office in Manhattan at Bernie Madoff's direction, and together with others, I represented to hundreds, if not thousands, of clients that security trades were being placed in their accounts when in fact no trades were taking place at all.

(*Id.* at 46:21–25).

\*\*\*

> Most of the time the clients' money just simply went into a bank account in New York that Bernie Madoff controlled. Between the early '90s and December'08 at Bernie Madoff's direction, and together with others, I did [the] follow[ing] things: On a regular basis I told clients over the phones and using wires that transactions on national securities exchanges were taking place in their account when I knew that no such transactions were indeed taking place. I also took steps to conceal from clients, from the SEC, and from auditors the fact that no actual security trades were taking place and to perpetuate the illusion that they actually were. On a regular basis I used hindsight to file historical prices on stocks then I used those prices to post purchase of sales to customer accounts as if they had been executed in real time. On a regular basis I added fictitious trade data to account statements of certain clients to reflect the specific rate of earn return that Bernie Madoff had directed for that client.
> *Id.* at 47:5–22.

\*\*\*

> … I knew no trades were happening. I knew I was participating in a fraudulent scheme. I knew what was happening was criminal and I did it anyway.

*Id.* at 52:2–5.

**RESPONSE: Disputed.**  See Response to Trustee's statement no. 25. Additionally, the quoted portion of DiPascali's plea allocution does not identify to what accounts such testimony purportedly applied.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 25 which neither raises a genuine dispute with Trustee Statement ¶ 26, nor provides any evidence to the contrary.  Defendants add extraneous statements that are in violation of Local Rule 7056-1 because they are not responsive to the stated facts, and are argumentative.  Accordingly, these extraneous statements should be disregarded.   Trustee Statement ¶ 26 is therefore not specifically controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

27.     DiPascali gave testimony at a criminal trial of five former BLMIS employees (the "Criminal Trial") in which he confirmed that the securities transactions on the IA Business customer statements were fake.  Griffin Decl. Ex. 15 (DiPascali Cr.) at 4517:14-24.

**RESPONSE: Disputed.**  See Response to Trustee's statement no. 25.

**TRUSTEE'S REPLY:** Defendants refer to their response to Trustee Statement ¶ 25 which neither raises a genuine dispute with Trustee Statement ¶ 27, nor provides any evidence to the contrary.  Trustee Statement ¶ 27 is therefore not specifically controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee further refers the Court to Trustee's Reply to ¶ 25.

**C.     David Kugel**

28.     At a plea hearing on November 21, 2011, in the case captioned *United States v. Kugel*, No. 10-CR-228 (LTS), David Kugel ("Kugel"), another long-time BLMIS employee, pleaded guilty to a six-count criminal action charging him with securities fraud, falsifying the records of BLMIS, conspiracy, and bank fraud.  Griffin Decl. Ex. 16 (Plea Allocution of David L. Kugel, *United States v. Kugel*, No. 10-CR-228 (LTS) (S.D.N.Y. Nov. 21, 2011 hereinafter "Kugel Plea") at ECF No. 188.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 28. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

29.     Kugel admitted in his plea allocution:

[B]eginning in the early '70s, until the collapse of BLMIS in December 2008, I helped create fake, backdated trades. I provided historical trade information . . . to create fake trades that, when included on the account statements and trade confirmations of Investment Advisory clients, gave the appearance of profitable trading when in fact no trading had actually occurred.

*Id.* at 32:4-12.

**RESPONSE: Disputed.**   Undisputed that Kugel so stated.   Disputed that it is relevant to the Defendants who were not clients of BLMIS' Investment Advisory Business.   Fortgang Decl. Ex. A., (Report) at 6.   Also, Madoff disputed Kugel had access to any of the pertinent records or could have knowledge of false trades. Woodfield Decl., Ex. 2, (Madoff Dep. April 26, 2017) at 82:8-25; 83:1-25; 84:1-25; 85:1-6.   Kugel was a market maker for convertible bonds for the firm; his testimony that arbitrage trades were not being implemented in the 70s was inaccurate. Woodfield Decl., Ex. 10 (Madoff Dep. Nov. 13, 2019) at 63:25; 64:1-10.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 29, nor provides any evidence to the contrary.   Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 29 but add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. These additional statements should be disregarded.   Defendants also interpose a relevance objection which is unfounded.   Trustee Statement ¶ 29 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Further, the Trustee objects to reliance on the Fortgang Reports because the opinions contained therein do not create disputed issues of fact and are inadmissible as unreliable and untrustworthy. *See* Reply Memo at III.B.  The Trustee also objects to the Defendants' reliance on Madoff's testimony which is inadmissible hearsay. *See* Reply Memo at III.C.

Nevertheless, in his plea allocution, Kugel testified that he "provided historical trade information to other BLMIS employees, which was used to create false, profitable trades in the Investment Advisory clients' accounts at BLMIS."  Griffin Decl. Ex. 16 (Kugel Plea Allocution). Former BLMIS employees Bongiorno, Crupi, and DiPascali testified extensively about Kugel's role in providing historical trade data that the employees used to fabricate the trades for the

convertible arbitrage and buy and hold accounts. *See, e.g.*, Trustee Statement ¶¶ 139-143. BLMIS books and records also confirm Kugel's role in fabricating these securities transactions. For example, the Employee Notebooks detail the internal process which included getting historical trade information from Kugel. Trustee Statement ¶ 135. Dubinsky's investigation confirms Kugel's role in manufacturing the fictitious transactions on the customer statements. Dubinsky Decl., Attach. A (Dubinsky Global Report), ¶¶ 93-95.

30.     Kugel also testified at the Criminal Trial, where he admitted that by 1977, he knew definitively that those trades reported on account statements for customers of the IA Business were fake and detailed his role in creating those fake transactions. Griffin Decl. Ex. 17 (Kugel Tr.) at 1804:9-1817:8, 1860:25-1861:11.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 29.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 30, nor provides any evidence to the contrary. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 30 but refer to their response to Trustee Statement ¶ 29 where they admit, in whole or in part, the factual statement in that paragraph. Trustee Statement ¶ 30 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

**D.      Irwin Lipkin**

31.     At a plea hearing on November 8, 2012, Irwin Lipkin, BLMIS's first employee and controller, pleaded guilty to a two-count criminal action charging him with securities fraud, falsifying the records of BLMIS, and making false statements in relation to documents required by ERISA. Griffin Decl. Ex. 17 (Plea Allocution of Irwin Lipkin, *United States v. Irwin Lipkin*, No. 10-CR-228 (LTS) (S.D.N.Y. Nov. 8, 2012).

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 31. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

32.     Irwin Lipkin admitted that beginning in the 1970s, BLMIS's revenue was falsely inflated through fraudulent bookkeeping entries and annual audited reports. *Id.* at 30:23–31:3, 31:10–18, 31:24–32:5.

**RESPONSE: Disputed.**   Madoff testified that Irwin Lipkin had no knowledge of facts which would have involved fraud. Woodfield Decl., Ex. 10, (Madoff Dep. Nov. 13, 2019) at 63:15-24.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 32, nor provides any evidence to the contrary.   Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 32 and the testimony relied on does not support their extraneous statement.   Accordingly, this extraneous statement should be disregarded.   Trustee Statement ¶ 32 is not specifically controverted and therefore should be deemed admitted under Local Rule 7056-1(d).

Further, the Trustee objects to the Defendants' reliance on Madoff's testimony because it is inadmissible hearsay and untrustworthy.

### E.     Eric S. Lipkin

33.     At a plea hearing on June 6, 2011, Eric Lipkin, a former BLMIS payroll clerk, pleaded guilty to a six-count criminal action charging him with, among other things, bank fraud, falsifying the records of BLMIS, conspiracy, and making false statements.   Griffin Decl. Ex. 18 (Plea Allocution of Eric S. Lipkin, *United States v. Eric S. Lipkin*, No. 10-CR-228 (LTS) (S.D.N.Y. June 6, 2011), ECF No. 148).

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 33. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

34.     Eric Lipkin admitted that BLMIS created fake reports that replicated those of the Depository Trust Corporation ("DTC"), which provides clearance for nearly all equity, bond, government securities, mortgage-backed securities, money market instruments, and over-the-counter derivative transactions in the U.S. Market. The purpose of these fake DTC reports was to purportedly confirm non-existent positions in the IA Business accounts, and the fake reports were given to auditors and the SEC to mislead them. *Id.* at 32:4–10, 33:22–34:8.

**RESPONSE: Disputed.**  This statement could be misconstrued that Eric Likin believed that BLMIS was involved in a fraudulent Ponzi scheme. In fact, he testified under oath that he had no such knowledge until Madoff was arrested and the fraudulent activity was publicly exposed. Woodfield Decl., Ex 14 (Eric Lipkin Dep. January 14, 2020) at 135:7-17. Madoff confirmed that the employees would not have knowledge of the fraud; they were just following instructions. Woodfield Decl., Ex. 10 (Madoff Dep. Nov. 13, 2019) at 60:7-20. Also dispute relevance as Defendants did not have IA accounts. See Response to Trustee's Statement 29.

**TRUSTEE'S REPLY**:  Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 34, nor provides any evidence to the contrary. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 34 but add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. These additional statements should be disregarded. Defendants also interpose a relevance objection which is not a sufficient response or denial. Moreover, Defendants' objection based on their mischaracterization of Trustee Statement ¶ 34 is improper under Local Rule 7056.1.

Accordingly, Trustee Statement ¶ 34 is not specifically controverted and therefore should be deemed admitted under Local Rule 7056-1(d).

Further, the Trustee objects to the Defendants' reliance on Madoff's testimony because it is inadmissible hearsay and untrustworthy.

### F.    Enrica Cotellessa-Pitz

35.    At a plea hearing on December 19, 2011, Enrica Cotellessa-Pitz, BLMIS's former controller, pleaded guilty to a four-count criminal action charging her with conspiracy to falsify the records of BLMIS, conspiracy to obstruct the Internal Revenue Service in the collection of income taxes, and conspiracy to make false filings with the SEC.  Griffin Decl. Ex. 19 (Plea Allocution of Enrica Cotellessa-Pitz, *United States v. Cotellessa-Pitz*, No. 10-CR-228 (LTS) (S.D.N.Y. Dec. 19, 2011), ECF No. 1512).

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 35. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

36.    Cotellessa-Pitz admitted that IA Business customer money was funneled to the Proprietary Trading Business to falsely inflate their revenue and hide their losses.  *Id.* at 31:12–32:12.

**RESPONSE: Disputed.**  Undisputed that Cotellessa-Pitz so stated.  Disputed that it is relevant to the Avellino Defendants who were not clients of BLMIS' Investment Advisory Business.  Fortgang Decl. Ex. A., (Report) at 6.  Madoff confirmed that the employees would not have knowledge of the fraud; they were just following instructions. Woodfield Decl. Ex. 10 (Madoff Dep. Nov. 13, 2019) a 60:7-20.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 36. Defendants' extraneous statements are not responsive to the stated fact, are argumentative, and are

not supported by competent evidence. These objections should be disregarded as they are in violation of Local Rule 7056-1. The fact in Trustee Statement ¶ 36 concerning Cotellessa-Pitz's statements in her plea allocution is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, the evidence establishes that Cotellessa-Pitz, as former controller of BLMIS, testified about her role in manipulating and falsifying BLMIS's financial records. *See* Trustee Statement ¶¶ 330-331, 339. Further, it is law of the case that Cotellessa-Pitz's plea allocution is admissible (*see* Trustee Reply Memo at II.A.).

### G. The Criminal Conviction of Five Former BLMIS Employees

37. On March 24, 2014, five former BLMIS employees who were the defendants in the Criminal Trial – Daniel Bonventre, Annette Bongiorno ("Bongiorno"), Jo Ann "Jodi" Crupi ("Crupi"), George Perez and Jerome O'Hara – were convicted of fraud, securities violations, and other crimes in connection with their participation in the Ponzi scheme at BLMIS. Griffin Decl. Ex. 20 (Verdict Form in *United States v. Bonventre, et al.,* No. 10-CR-228 (LTS) (S.D.N.Y. March 24, 2014), ECF No. 800).

**RESPONSE: Disputed.** They were not convicted of "participation in the Ponzi scheme at BLMIS". Griffin Decl. Ex. 20 (Verdict Form).

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 37, nor provides any evidence to the contrary. Defendants' objection mischaracterizing Trustee Statement ¶ 37 is an improper response under Local Rule 7056-1. Trustee Statement ¶ 37 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

In any event, as the *Nelson* Court recognized, "The Court is not aware of the specific crime of operating a Ponzi scheme but the Trustee is not relying on the judgments of conviction; he is

relying on the allocutions to prove the facts necessary to show that Madoff Securities and BLMIS

committed the various crimes to which [Madoff and DiPascali] pled guilty (securities fraud, etc,)

through the operation of a Ponzi scheme." *Picard v. Nelson*, 610 B.R. 197, 210 n.8 (Bankr.

S.D.N.Y. 2019).

## IV.    The Trustee's Experts

38.    The Trustee retained Bruce Dubinsky ("Dubinsky"), a forensic accountant and

certified fraud examiner with more than 30 years experience in financial fraud investigations.

Dubinsky performed a forensic examination of BLMIS, and detailed the results of his findings in

an expert report on the proof of fraud and insolvency at BLMIS, dated January 16, 2019.  Dubinsky

Decl. Attach A (Dubinsky Global Report).   In that Report, Dubinsky rendered certain opinions

related to BLMIS's operations and financial condition.    Among Dubinsky's opinions were his

conclusions that Madoff did not execute any trades for its IA Business customers, the IA Business

was operating a Ponzi scheme from at least the 1970s, and the Proprietary Trading Business was

part of the fraudulent scheme.

**RESPONSE: Disputed.**   While Dubinsky may be qualified as an expert regarding

financial fraud, he has no training or expertise regarding the custom and practice in the securities

industry and is not qualified to offer expert opinions regarding such matters. His testimony

regarding the custom and practice in the securities industry is inadmissible. See Section IID of

Defendant's Response to the Trustee's Motion.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee

Statement ¶ 38, nor provides any evidence to the contrary.  Defendants do not specifically rebut

the factual statement in Trustee Statement ¶ 38 but interpose an evidentiary objection and add

extraneous statements that are not responsive to the stated fact, are argumentative, and are not

supported by competent evidence. This fact is therefore not specifically controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, Dubinsky's expert opinions are admissible (*see* Trustee's Reply Memo at II.C.).

39.     In a separate expert report, dated June 5, 2020, Dubinsky analyzed the transactions in the IA Business accounts held by Avellino and Bienes and their related entities. Dubinsky Decl. Attachment B ("Dubinsky A&B Report"). Dubinsky determined that these IA Business accounts contained fictitious transactions consistent with the indicia of fraud he identified as part of Madoff's operation of the Ponzi scheme.

**RESPONSE: Disputed.**  The Avellino Defendants did not have IA Business accounts, but rather had accounts with BLMIS as a broker dealer and market maker; Bienes had no accounts in his own name The trades reflected on their statements constituted real securities. Fortgang Decl., Ex. A (Report) at 6, 7; Fortgang Decl., Ex. B (Rebuttal) at 7.  Woodfield Decl. Ex. 8 (Michael Sept. 10, 2015 Deposition in *P & S v Sullivan*, 12-034123(07), 17th Judicial Circuit for Broward County, Florida. ("P & S Case") ("Michael Dep.") at 36:21 – 38:3. Moreover, Dubinsky is not qualified to offer expert opinions involving the securities industry. See Response to Trustee statement no. 38.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 39, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 39 but interpose an evidentiary objection and add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence.  This fact is therefore not specifically controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Further, the Trustee objects to reliance on the Fortgang Reports because the opinions contained therein do not create disputed issues of fact and they are inadmissible as unreliable and untrustworthy. *See* Reply Memo at III.B.

Nonetheless, in the Counterclaims of the Post-1993 Entities, they admit that BLMIS acted as their "investment advisor" and in their Answer, admit that Avellino had level of control of their "IA accounts." Griffin Decl. Ex.45. Further, it is undisputed that Madoff was operating a Ponzi scheme through his IA Business (*see* Trustee's Reply Memo at I.A.), Defendants were customers of the IA Business (*see* Trustee's Reply to Statement ¶ 29), the trades in the accounts for the Defendants, including for the Summary Judgment Entity Defendants, were fictitious (*see* Trustee's Reply to Statement ¶ 19), and Dubinsky's expert opinions are admissible (*see* Trustee's Reply Memo at II.C.).

40.    The Trustee also retained Lisa Collura, a forensic accountant and certified fraud examiner who proffered two reports: a global report dated January 16, 2019 (Collura Decl. Attach. A ("Collura Report"), and a report specific to this proceeding dated June 5, 2020. Collura Decl. Attach. B ("Collura A&B Report").

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 40. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

41.    In her global report, Collura analyzed the cash transactions on all IA Business customer statements and BLMIS bank records. In the Collura A&B Report, Collura determined, among other things, that from the late 1980s to the early 1990s, balances in the IA Business bank accounts were overdrawn, and analyzed the initial transfers made by BLMIS to the Defendants.

**RESPONSE: Disputed.** Defendants do not dispute that Ms. Collura prepared such analysis of activities that took place decades prior to the time period relevant to the Trustee's Motion, but dispute that the Avellino Defendants' accounts with BLMIS were IA accounts. See Response to Trustee's statement no. 29.

**TRUSTEE'S REPLY**: Defendants admit the factual statement in Trustee Statement ¶ 41 but add a relevance objection and extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. Defendants' objections do not raise a genuine dispute with Trustee Statement ¶ 41, nor provides any evidence to the contrary. Trustee Statement ¶ 41 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, it is undisputed that Defendants were customers of the IA Business (*see* Trustee's Reply to Statement ¶ 29), and the trades in the accounts for the Defendants, including for the Summary Judgment Entity Defendants, were fictitious (*see* Trustee's Reply to Statement ¶ 19).

42.    The Trustee also retained Matthew Greenblatt, a forensic accountant and certified fraud examiner. In a global report dated November 15, 2012, Greenblatt identified the methodology he used for the principal balance calculations he applied to each IA Business account from April 1, 1981 through December 11, 2008. Greenblatt Decl. Attach. A ("Greenblatt Report"). In a separate report for this case, Greenblatt applied the methodology of the principal balance calculation to the Defendants' IA Business accounts. Greenblatt Decl. Attach. B ("Greenblatt A&B Report").

**RESPONSE: Disputed.** Defendants do not dispute that the Trustee retained Mr. Greenblatt to prepare a report but dispute that the Avellino Defendants' accounts with BLMIS were IA accounts. See Response to Trustee's statement no. 29.

**TRUSTEE'S REPLY**: Defendants admit the factual statement in Trustee Statement ¶ 42 but add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. Defendants' objections do not raise a genuine dispute with Trustee Statement ¶ 42, nor provide any evidence to the contrary. Trustee Statement ¶ 42 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, it is undisputed that Defendants were customers of the IA Business (*see* Trustee's Reply to Statement ¶ 29), and the trades in the accounts for the Defendants, including for the Summary Judgment Entity Defendants, were fictitious (*see* Trustee's Reply to Statement ¶ 19).

## V.    Avellino's and Bienes' Roles in the Origin and Perpetuation of the Ponzi Scheme

### A.    Avellino and Bienes Partnered with Madoff's Father-in-Law to Operate Madoff's First Feeder Fund

43.    In 1958, Avellino began working as an accountant for Madoff's father-in-law, Saul Alpern ("Alpern"). Griffin Decl. Ex. 21 (Deposition of Frank Avellino dated November 20, 2019 Volume 1, hereinafter "Avellino Dep. Vol. 1") at 15:6-20 and 21:14-22:19; Griffin Decl. Ex. 23 (Defendants' Amended Responses to Request for Admissions, hereinafter "Defts. Am. Resp. to Req. for Admissions") at ¶¶ 3-4.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 43. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

44.     In 1960, Madoff began operating his business from Alpern's accounting firm, Alpern & Heller. It was at that time that Avellino met Madoff. Griffin Decl. Ex. 21 (Avellino Dep. Vol 1), at 21:14-22:7; Griffin Decl. Ex. 23 (Defts. Am. Resp. to Req. for Admissions) at ¶ 6.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 44. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

45.     In or about 1968, Bienes joined Alpern's firm as an accountant. Griffin Decl. Ex. 21 (Avellino Dep. Vol. 1) at 24:6 – 25:1 and 29:2 – 22:7; Griffin Decl. Ex. 23 (Defts. Am. Resp. to Req. for Admissions) at ¶ 11.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 45. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

46.     Alpern & Heller became Alpern & Avellino in or about 1968, Alpern, Avellino & Bienes in 1970, and when Alpern retired in 1975, the accounting firm became known as Avellino & Bienes (hereinafter "A&B"). Griffin Decl. Ex. 21 (Avellino Dep. Vol. 1) at 22:24-23:12; 23:21-24:5; and 29:8-29:20; Griffin Decl.Ex. 23 (Defts. Am. Resp. to Req. for Admissions) at ¶¶ 5 and 18.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 46. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

47.     In the early 1960s, Madoff's father-in-law, Alpern, formed his own group of investors from his friends, family, and accounting clients to provide money to Madoff's IA Business. Griffin Decl. Ex. 21 (Avellino Dep. Vol. 1) at 25:8 – 26:1; 28:2 – 28:10; 34:13-34:18.

**RESPONSE: Disputed** as to the reference to "Madoff's IA Business", a term utilized by the Trustee and his expert which is not defined and is amorphous. See Response to Trustee's statement no. 29.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 47, nor provides any evidence to the contrary. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 47 and only "dispute" the Trustee's phraseology. Accordingly, Trustee Statement ¶ 47 is not specifically controverted, and therefore, should be deemed admitted under Local Rule 7056-1(d).

48.     In an interview on PBS's Frontline, Bienes stated that Madoff's early customers were "[Saul's] clients, family, friends." Griffin Decl. Ex. 24 (Transcript of Frontline Interview of David Bienes for "The Madoff Affair, 10-05421-BIENES__006304 – 006349, hereinafter "Bienes Frontline Interview") at 10-05421-BIENES_006308.

**RESPONSE: Undisputed** that the quoted portion of the edited transcript of Michael so stated. Object to the admissibility of Michael's Frontline Interview. See Section IIE of Defendants' Response to the Trustee's Motion.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 48 but interpose an evidentiary objection to the admissibility of the Bienes Frontline Interview. Defendants' additional response neither raises a genuine dispute with Trustee Statement ¶ 48, nor provides any evidence to the contrary. Defendants' evidentiary objection is argumentative and not supported by competent evidence. This fact is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

*See also* Griffin Decl. Ex. 21 (Avellino Dep. Vol. 1) 29:21-24; 40:2-13.

Nonetheless, the Bienes Frontline Interview is authentic and admissible. *See* Trustee's Reply Memo at II.D.

49.     In the 1960s, Alpern told Bienes he should invest with Madoff's IA Business, telling him that Madoff would get him 20% returns.   Griffin Decl. Ex. 24 (Bienes Frontline Interview) at 10-05421-BIENES__006306 and 006347; Griffin Decl. Ex. 23 (Defts. Am. Resp. to Req. for Admissions) at ¶ 17.

**RESPONSE: Disputed** as to the reference to usage of the phrase: "Madoff's IA Business.") See Response to Trustee's statement no. 29. Object to the admissibility of Michael's Frontline Interview. See Response to Trustee's statement no. 48.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 49, nor provides any evidence to the contrary.   Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 49, but "dispute" the Trustee's phraseology. Defendants' quibble with the Trustee's phraseology does not controvert any of the facts in Trustee Statement ¶ 49.   Defendants also interpose an evidentiary objection to the admissibility of the Bienes Frontline Interview which is unfounded.   Trustee Statement ¶ 49 is not specifically controverted, and therefore, should be deemed admitted under Local Rule 7056-1(d).

*See also* Griffin Supp. Decl. Ex. 67 (Bienes P&S Dep.) at 174:24-175:8 ("Q. Okay. Here I'm just going to quote you and just ask you if this is true, okay? This is talking about Saul Alpern. It says: "One of the first things Saul Alpern said to me when I went to work for him was: 'Listen, yeah, listen. You got money, you can invest it with my son-in-law Bernie. You'll get 20 percent.'" All right. You mentioned that on TV. Do you recall that being one of the first things that Saul Alpern said to you? A. Yes I do.").

Nonetheless, the Bienes Frontline Interview is authentic and admissible.   *See* Trustee Reply Memo at II.D.

50.     Alpern provided the funds he received from his investors to Madoff to deposit into a pooled IA Business account in the name of Avellino & Alpern.   Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶ 24; Griffin Decl. Ex. 24 (Bienes Frontline Interview) at 10-05421-BIENES__006306 and 006308-6309; Griffin Decl. Ex. 23 (Defts. Am. Resp. to Req. for Admissions) at ¶ 9.

**RESPONSE: Disputed** as to the reference to "IA Business account." See Response to Trustee's statement no. 29. Object to the admissibility of Michael's Frontline Interview. See Response to Trustee's statement no. 48.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 50, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 50, but "dispute" the Trustee's phraseology. Defendants' quibble with the Trustee's phraseology does not controvert any of the facts in Trustee Statement ¶ 50.  Defendants also interpose an evidentiary objection to the admissibility of the Bienes Frontline Interview which is unfounded.   Trustee Statement ¶ 50 is not specifically controverted, and therefore, should be deemed admitted under Local Rule 7056-1(d).

Frank Avellino also testified that Alpern provided funds from his investors to BLMIS, and the account consisted of a "group" of investors.  Griffin Decl. Ex. 21 (Avellino Dep. Vol. 1) at 25:8-26:1; 29:21-32:19.

Nonetheless, the Bienes Frontline Interview is authentic and admissible.  Reply at II.D.

51.     Alpern's pooled IA account arrangement simplified the accounting for Madoff, because Alpern performed all accounting services for the investors.  Dubinsky Decl. Attach. B

(Dubinsky A&B Report) at ¶ 24; Griffin Decl. Ex. 21 (Avellino Dep. Vol. 1) at 25:8-26:16, 29:21-32:19; Griffin Decl. Ex. 24 (Bienes Frontline Interview) at 10-05421-BIENES__006309.

**RESPONSE: Disputed** as to the reference to "IA account." See Response to Trustee's statement no. 29. Object to the reliance on Dubinsky as the source for these facts. See Response to Trustee's statement no. 8. Object to the admissibility of Michael's Frontline Interview. See Response to Trustee's statement no. 48.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 51, nor provides any evidence to the contrary. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 51, but "dispute" the Trustee's phraseology. Defendants' quibble with the Trustee's phraseology does not controvert any of the facts in Trustee Statement ¶ 51. Defendants also interpose evidentiary objections to the admissibility of Dubinsky's expert opinions and the Bienes Frontline Interview which are unfounded. Trustee Statement ¶ 51 is not specifically controverted, and therefore, should be deemed admitted under Local Rule 7056-1(d).

*See also* Griffin Decl. Ex. 67 (Bienes P&S Dep.) at 176:9-177:5 ("Q. Okay. Then the question: 'And the guy had a hot hand?' And you say, 'You see, what Bernie said – he took a few straight accounts from Saul's people in the beginning, and then he said to his father-in-law: 'No I cannot handle small accounts like this. This is a pain in the neck and a pain in the butt.' So Saul, being smart, said: 'Look, open up an account called A&A, and I will do the record keeping. I will handle the checks. I'll do it all.' 'Yeah. He gave Frank a piece, and I got a piece when I became partner. It became like a client of the firm. It was only about $2 million, $2.5 million in the account. That was big money to me. And we made a little bit off the top, or backs – a business in millions, a profit in pennies. It's true. So he would do this, and then when he retired, he says: 'I'm taking

the green book down to Florida. It'll give me work to do, and I'll mail the stuff up to Nanette, and

she'll type it with the checks and send it out.' Do you recall that? A. Yes, I do.").

Nonetheless, it is undisputed that Defendants were customers of the IA Business (*see*

Trustee's Reply to Statement ¶ 29), the Bienes Frontline Interview is authentic and admissible (*see*

Reply Memo at II.D.), and Dubinsky's expert opinions are admissible (*see* Trustee's Reply Memo

at II.C.).

52.     By the 1970s, Avellino and Bienes both joined Alpern in operating, through their

entity A&B, what ultimately became Madoff's first feeder fund.  Dubinsky Decl. Attach. B

(Dubinsky A&B Report) at ¶ 25; Griffin Decl. Ex. 21 (Avellino Dep. Vol. 1) at 29:25-30:15.

**RESPONSE: Disputed.**  Alpern did all the work; Frank and Michael did not help Alpern

do anything and did not know how many investors or accounts there were and did not reference it

as a "feeder fund". Griffin Decl. Ex. 21 (Avellino Dep. Vol. 1) at 25:24-25; 26:1-13; 29:25-30:15).

**TRUSTEE'S REPLY**: Defendants' objection to Trustee Statement ¶ 52 does not create

an issue of fact that would preclude summary judgment for the Trustee.  Further, the Trustee refers

the Court to the Defendants' admissions in their Amended Responses to the Trustee's Request for

Admission.  (Griffin Decl. Ex. 23, ¶¶ 8-12, 16-18; *see* Trustee's Reply Memo at III.A.).

53.     In or about 1975 when Alpern retired, he transferred management of the pooled IA

Business accounts to Avellino and Bienes.  Dubinsky Decl. Attach. B (Dubinsky A&B Report) at

¶ 25; Griffin Decl. Ex. 21 (Avellino Dep. Vol. 1) at 29:21–30:15, and 32:3-32:19.

**RESPONSE: Disputed** as to the reference to "IA Business." See Response to Trustee's

statement no. 29.  Dispute as to the reference to "Avellino and Bienes" as it fails to distinguish

between Frank and Michael as individuals and "Avellino and Bienes" ("A & B") as an entity.

Frank and Michael, as partners of A & B, agreed that A & B, the entity, would "take over" the

accounts. The Trustee purposefully uses the terms interchangeably to conflate the individuals with the entity. Furthermore, Defendants object to the reliance on Dubinsky for these facts. See Response to Trustee's statement no. 8.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 53, nor provides any competent evidence to the contrary. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 53 but add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. These additional statements should be disregarded. Defendants' quibble with the Trustee's phraseology does not controvert any of the facts in Trustee Statement ¶ 53. Defendants also interpose an evidentiary objection to the admissibility of Dubinsky's expert opinions which is unfounded. Trustee Statement ¶ 53 is not specifically controverted, and therefore, should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, Dubinsky's expert opinions are admissible. *See* Trustee's Reply Memo at II.C.

54.    After Alpern's retirement, Avellino and Bienes continued to collect moneys from investors – their friends, clients, families – and sent the funds to Madoff. Griffin Decl. Ex. 21 (Avellino Dep. Vol. 1) at 30:10-31:1; Griffin Decl. Ex. 24 (Bienes Frontline Interview) at 10-05421-BIENES__006309-6311.

**RESPONSE: Disputed.** Dispute as to the reference to "Avellino and Bienes" as it fails to distinguish between Frank and Michael as individuals and "Avellino and Bienes" ("A & B") as an entity. Frank and Michael, as partners of A & B, agreed that A & B, the entity, would "take over" the accounts. Object to the admissibility of Michael's Frontline Interview. See Response to Trustee's statement no. 48.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 54, nor provides any competent evidence to the contrary. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 54 but add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. These additional statements should be disregarded. Defendants' quibble with the Trustee's phraseology does not controvert any of the facts in Trustee Statement ¶ 54. Defendants also interpose evidentiary objections to the admissibility of the Bienes Frontline Interview which is unfounded. Trustee Statement ¶ 54 is not specifically controverted, and therefore, should be deemed admitted under Local Rule 7056-1(d).

*See also* Griffin Decl. Ex. 67 (Bienes P&S Dep.) at 175:25-177:5; 177:23-179:6.

Nonetheless, the Bienes Frontline Interview is authentic and admissible. *See* Trustee's Reply Memo at II.D.

55.    Avellino and Bienes attracted prospective investors by touting virtually "riskless" investments. Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 20, 82 and n.72; Griffin Decl. Ex. 25, (King Arthur Account Fact Sheet, MADOFF_EXHIBITS-02862-02863); Griffin Decl. Ex. 26 (Deposition of Avellino and Bienes dated July 7, 1992, *In the Matter of King Arthur*, SEC file No: MNY-149) at 74:18 - 75:18.

**RESPONSE: Disputed.** Dispute the reliance on Dubinsky for these facts. See Response to Trustee's no. 8. Dispute that it refers to Frank and Michael individually. See Response to Trustee's no. 53. Dispute also because Frank testified specifically that he had never seen the King Arthur Fact Sheet and did not know that anyone was disseminating it. Griffin Decl. Ex 26 (Deposition of Avellino and Bienes dated July 7, 1992, *In the Matter of King Arthur,* SEC file No: MNY-149) at 125: 3-135:19. A & B had lenders, not investors, at that time, and it did nothing to

attract them but responded to inquiries from people who knew the friends and family of those who were their existing lenders. A & B had no marketing literature and did nothing to attract lenders. Griffin Decl. Ex. 26 (Deposition of Avellino and Bienes dated July 7, 1992, *In the Matter of King Arthur*, SEC file NO: MNY-149) at 63:10-66.

**TRUSTEE'S REPLY:** Defendants' objection to Trustee Statement ¶ 55 does not create an issue of fact that would preclude summary judgment for the Trustee. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 55 but add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. These additional statements should be disregarded. Defendants' quibble with the Trustee's phraseology does not controvert any of the facts in Trustee Statement ¶ 55. Defendants also interpose an evidentiary objection to the admissibility of Dubinsky's expert opinions which is unfounded. Trustee Statement ¶ 55 is not specifically controverted, and therefore, should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, Dubinsky's expert opinions are admissible. *See* Trustee's Reply Memo at II.C.

### B.    Avellino and Bienes Had a Symbiotic Relationship with Madoff

#### 1.    Avellino and Bienes Provided Madoff With a Steady Source of Cash to Sustain the Ponzi Scheme

56.    For decades, Avellino and Bienes provided Madoff with what every Ponzi scheme requires: a continuous source of cash. Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶ 29.

**RESPONSE: Disputed.** This statement implies that Frank and Michael knew of the existence of a Ponzi scheme and knew what such a scheme required. Neither Frank nor Michael had knowledge of the existence of Madoff's fraudulent conduct. Woodfield Decl. Ex. 12 (Madoff Dep. in P & S Case Oct. 19, 2015) at 220:18-25; 221:1-10; 21-24; 241:3-8; Woodfield Decl., Ex.

8 (Michael Dep.) at 67:18-24; Dianne Decl., ¶5.  Object to Dubinsky as a reference for these facts.

See Response to Trustee's Statement No. 8.  Object to reference to individuals rather than A & B.

See Response to Trustee's Statement No. 53.

      **TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee

Statement ¶ 56, nor provides any evidence to the contrary.  Defendants do not specifically rebut

the factual statement in Trustee Statement ¶ 56 but object based on so-called implied facts.  This

objection is not a sufficient response or denial.  Defendants also add extraneous statements that

are not responsive to the stated fact, are argumentative, and are not supported by competent

evidence.  These additional statements should be disregarded.  Defendants' quibble with the

Trustee's phraseology does not controvert any of the facts in Trustee Statement ¶ 56.  Defendants

also interpose an evidentiary objection to the admissibility of Dubinsky's expert opinions.

Accordingly, Trustee Statement ¶ 56 is not specifically controverted, and therefore, should be

deemed admitted under Local Rule 7056-1(d).

      Further, the Trustee objects to the Defendants' reliance on Madoff's testimony because it

is inadmissible hearsay and untrustworthy (*see* Reply Memo at III.C.) and Dubinsky's expert

opinions are admissible (*see* Trustee's Reply at II.C.).

      57.    Bienes stated that in the 1970s, A&B was Madoff's sole feeder fund, providing

new investor cash to the IA Business:

> [*Question*]:  At the time, were you the only people that you were aware of
> that were feeding Bernie Madoff money?
> [*Bienes:*] Yes.  Yes.
> [*Question:*] This is the 1970s?
> [*Bienes:*] Yes.  Yes.  We thought we were the only ones, that we were the
> elect, that we were Saul's [Alpern's] partners.

Griffin Decl. Ex. 24 (Bienes Frontline Interview) at 10-05421-BIENES__006311.

**RESPONSE: Undisputed** that the quoted part of the edited transcript so stated. But dispute the Trustee's reference to "the IA Business" and "sole feeder fund". See Response to Trustee's statement no. 29. Object to the admissibility of Michael's Frontline Interview. See Response to Trustee's statement no. 48.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 57. Defendants interpose an evidentiary objection to the admissibility of the Bienes Frontline Interview and quibble with the Trustee's phraseology. These objections neither raise a genuine dispute with the fact asserted in Trustee Statement ¶ 57, nor provide any evidence to the contrary. Accordingly, Trustee Statement ¶ 57 should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, the Bienes Frontline Interview is authentic and admissible. *See* Reply Memo at II.D.).

58.     Through A&B's pooled IA Business accounts, Avellino and Bienes funneled hundreds of millions of dollars from thousands of investors to the IA Business. Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶ 29.

**RESPONSE: Disputed** as to the usage of the term "IA Business", "pooled", and investors. See Response to Trustee's statement nos. 29 and 55. Object to reliance on Dubinsky for these facts. See Response to Trustee's statement no. 8. Object to reference to individuals rather than A & B. See Response to Trustee's statement no. 53.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 58, nor provides any evidence to the contrary. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 58, but "dispute" the Trustee's phraseology. Defendants' quibble with the Trustee's phraseology does not controvert any of the facts in Trustee Statement ¶ 58. Defendants also interpose an evidentiary objection to the admissibility of the

Dubinsky's expert opinions which is unfounded. Trustee Statement ¶ 58 is not specifically controverted, and therefore, should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, Dubinsky's expert opinions are admissible. *See* Reply at II.C.

59. Like Alpern had previously done for Madoff, Avellino and Bienes performed all accounting services for their investors. Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 24-25; Griffin Decl. Ex. 21 (Avellino Dep. Vol. 1) at 29:25 - 31:1; 32:3 – 32:19.

**RESPONSE: Disputed.** There is no time reference for this statement. Furthermore, there were no investors; they were lenders, and A & B did not perform accounting services for its lenders. Michael performed no accounting services. Griffin Decl. Ex. 21 (Avellino Dep). at 32: 12-16); See Response to Trustee's no. 55. Object to the reference to individuals and not A & B. See Response to Trustee's statement no. 53. Object to the reliance on Dubinsky for these facts. See Response to Trustee's statement no. 8.

**TRUSTEE'S REPLY:** Defendants' objection to Trustee Statement ¶ 59 does not create an issue of fact that would preclude summary judgment for the Trustee. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 59 but add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. These additional statements should be disregarded. Defendants' quibble with the Trustee's phraseology does not controvert any of the facts in Trustee Statement ¶ 59. Defendants also interpose an evidentiary objection to the admissibility of Dubinsky's expert opinions which is unfounded. Trustee Statement ¶ 59 is not specifically controverted, and therefore, should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, Dubinsky's expert opinions are admissible. *See* Trustee's Reply Memo at II.C.

60.     Bienes admitted he and Avellino were Madoff's "front men" for years.   Griffin

Decl. Ex. 24 (Bienes Frontline Interview) at 10-05421-BIENES__006340.

**RESPONSE: Undisputed** that the edited transcript so stated, but misconstrued. Object to

the admissibility of Michael's Frontline Interview. See Response to Trustee's statement no. 48.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 60.

Defendants interpose an evidentiary objection to the admissibility of the Bienes Frontline

Interview which is unfounded.  Accordingly, Trustee Statement ¶ 60 should be deemed admitted

under Local Rule 7056-1(d).

Nonetheless, the Bienes Frontline Interview is authentic and admissible.  *See* Trustee's

Reply at II.D.

61.     As the source of some of the earliest BLMIS customers, Avellino and Bienes helped

Madoff build the infrastructure of his fraudulent business operations.  Dubinsky Decl. Attach. B

(Dubinsky A&B Report) at ¶ 23; Griffin Decl. Ex. 27 (Bongiorno Dep.) at 18:5-18:12.

**RESPONSE: Disputed.**  This statement was not made by Bongiorno, and it implies Frank

and Michael knowingly participated in Madoff's fraudulent activities, which they did not. Frank

and Michael had no such knowledge. See Response to Trustee's statement no. 56. Also

Defendants' object to reliance on Dubinsky for these facts. See Response to Trustee's statement

no. 8.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee

Statement ¶ 61, nor provides any evidence to the contrary.  Defendants do not specifically rebut

the factual statement in Trustee Statement ¶ 61 but add extraneous statements that are not

responsive to the stated fact, are argumentative, and are not supported by competent evidence.

This additional statement should be disregarded.  Defendants also impose an evidentiary objection

to the admissibility of Dubinsky's expert opinions. Trustee Statement ¶ 61 is not specifically controverted and therefore should be deemed admitted under Local Rule 7056-1(d).

Moreover, Defendants' additional objection based on so-called implied facts and not asserted facts is not a sufficient response or denial, and therefore, a further reason that Trustee Statement ¶ 61 should be deemed admitted.

Nonetheless, Dubinsky's expert opinions are admissible.  *See* Trustee's Reply Memo at II.C.

### 2. Avellino and Bienes Profited Every Single Year From the Returns Madoff Guaranteed Them

62.    Avellino and Bienes made substantial profits from the returns Madoff guaranteed them, and they structured their entire business operations around these guaranteed returns. Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 27-29; 83.

**RESPONSE: Disputed.** The returns on the accounts were not "guaranteed", but rather were projections based upon prior performance. Woodfield Decl. Ex 13 (Frank Dep. Sept. 9, 2015) at 13:2-5; 63:21-24. No guarantees were made by Madoff. Woodfield Decl., Ex. 10 (Madoff Dep. Nov. 13, 2019) at 44:11-21; Ex. 13 (Frank Dep. Sept. 9, 2015) at 13:2-5. Object to the words "entire business operations" as it is not defined.  Object also to the reliance on Dubinsky for these facts. See Response to Trustee's statement no. 8. Object to referring to individuals rather than A & B.  See Response to Trustee's statement no. 53.

**TRUSTEE'S REPLY**: Defendants' partial dispute of Trustee Statement ¶ 62 does not create an issue of fact that would preclude summary judgment for the Trustee.  Further, the remaining facts in Trustee Statement ¶ 62 are not specifically controverted as required by Local Rule 7056-1.  Moreover, Defendants' quibble with the Trustee's phraseology does not controvert any of the facts in Trustee Statement ¶ 62.  Defendants also interpose an evidentiary objection to

the admissibility of Dubinsky's expert opinions which is unfounded. Dubinsky's expert opinions

are admissible. *See* Reply Memo at II.C.

Defendants dispute that Madoff guaranteed returns but the overwhelming evidence from

former IA Business employees Bongiorno, Crupi, and DiPascali establishes that Madoff

guaranteed rates of returns for IA Business accounts , including for those held by Avellino, Bienes,

and their related entities. *See, e.g.*,

- Griffin Decl. Ex. 27 (Bongiorno Dep.) at 139:19-140:1 ("A: The changes were because Bernie had to get their accounts in line. Q. Okay. So he had to increase the value of the accounts? A. I don't know if he had to, but he did *because that was the agreement he had with them* [Avellino and Bienes].") (emphasis added).

- Griffin Decl. Ex. 15 (DiPascali Tr.) at 5771:16-19 ("A. Where he [Madoff] and I and Mr. Avellino were in the same room where *a definitive rate of return was, indeed, promised* and needed to -- when it needed to be adjusted by Bernie, there had to be follow-up conversations.") (emphasis added)

- Griffin Decl. Ex. 24 (Bienes Frontline Interview) at 10-05421-BIENES_006323 ("He was giving us a rate of return. No, no piece of the action – a rate of return. And we were offering people less. I mean, you don't have to be a rocket scientist to figure this out. If Bernie's giving us 20 or 19, I'm not gonna give you 22; I'm gonna give you a couple of points less."

- Griffin Decl. Ex. 26 (SEC Dep. of Avellino and Bienes dated July 7, 1992) at 75:14-18 ("I could honestly say, and you could check any record that you want with me from 1962 to today, in thousands of transactions, of what I call arbitrage, which is bona fide convertible buying and selling, there has never been a loss.")

- Griffin Decl. Ex. 22 (Avellino Dep. Vol. 2) at 279:15-20 ("Q. And you referenced a percentage. Was it your understanding that you were getting a percentage of the 300 plus million that we were talking about that was reinvested by the A&B former clients? A. I believe so.")

Further, the Trustee objects to the Defendants' reliance on Madoff's testimony because it

is inadmissible hearsay and untrustworthy. *See* Trustee's Reply Memo at III.C.

Accordingly, in light of the overwhelming evidence proffered by the Trustee, Trustee Statement ¶ 62 is not specifically controverted and therefore should be deemed admitted under Local Rule 7056-1(d).

63.    Avellino and Bienes promised fixed rates of return to their investors that were lower than the returns Madoff had guaranteed them.  Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 28, 83.

**RESPONSE: Disputed.**    A & B, not Frank and Michael, individually, provided promissory notes to their lenders, not investors, at various fixed rates of interest; dispute the terms "promise" and that Madoff "guaranteed" a rate of return. Woodfield Decl., Ex. 10 (Madoff Dep. Nov. 13, 2019) at 44:11-21; Woodfield Decl., Ex. 2 (Madoff Dep. April 26, 2017) at 170:7-16; Woodfield Decl., Ex. 12 (Madoff Dep. Oct. 19, 2015) at 35:11-19; Woodfield Decl., Ex. 13 (Frank Dep. Sept. 9, 2015) at 13:2-5.  Object to reliance on Dubinsky for these facts.  See Response to Trustee's statement no. 8.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 63, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 63 but add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence.  The additional statement should be disregarded.  Defendants also interpose an evidentiary objection to the admissibility of Dubinsky's expert opinions, which is unfounded.  Trustee Statement ¶ 63 is not specifically controverted and therefore should be deemed admitted under Local Rule 7056-1(d).

Further, the Trustee objects to the Defendants' reliance on Madoff's testimony because it is inadmissible hearsay and untrustworthy.  *See* Trustee's Reply Memo at III.C.

64.     Avellino's and Bienes' compensation for feeding other investors' funds to Madoff's IA Business was to retain the difference between the rate of returns Madoff guaranteed them in advance and the lower rates of return they promised their investors.  Griffin Decl. Ex. 21 (Avellino Dep. Vol. 1) at 48:5 – 49:14; Griffin Decl. Ex. 23 (Defts. Am. Resp. to Req. for Admissions) at ¶ 23; Griffin Decl. Ex. 24 (Bienes Frontline Interview) at 10-05421-BIENES_006310-11, 006322-6323; Griffin Decl. Ex. 15 (DiPascali Tr.) at 4626:8-4626:22.

**RESPONSE: Disputed** as to the usage of the terms "guaranteed" and "promised". Dispute reference to individuals and not A & B, and to the reference to investors, rather than lenders.  See Response to Trustee's statement nos. 53, 55, 62 and 63.  Object to the admissibility of Michael's Frontline Interview. See Response to Trustee's statement no. 48.

**TRUSTEE'S REPLY:** Defendants' partial dispute of Trustee Statement ¶ 64 does not create an issue of fact that would preclude summary judgment for the Trustee.  Further, the remaining facts in Trustee Statement ¶ 64 are not specifically controverted as required by Local Rule 7056-1. Moreover, Defendants' quibble with the Trustee's phraseology does not controvert any of the facts in Trustee Statement ¶ 64.  Defendants also interpose an evidentiary objection to the admissibility of the Bienes Frontline Interview which is unfounded.  Accordingly, Trustee Statement ¶ 64 is not specifically controverted and therefore should be deemed admitted under Local Rule 7056-1(d).

*See also* Griffin Supp. Decl. Ex. 67 (Avellino P&S Dep.) at 56:4-57:4.

Nonetheless, the Bienes Frontline Interview is authentic and admissible.  *See* Reply Memo at II.D.  Further, the Trustee refers the Court to the Defendants' admissions in their Amended Responses to the Trustee's Request for Admission.  Griffin Decl. Ex. 23; s*ee* Trustee Reply Memo at III.A.

65.    Avellino admitted that A&B made a profit every year going as far back to 1962, and never had a loss.  Griffin Decl. Ex. 26 (Dep. of Avellino and Bienes dated July 7, 1992, *In the Matter of King Arthur*, SEC file No: MNY-1490) at 44:25 – 47:9; *Id.* at 75:14 – 75:18.

**RESPONSE: Disputed.**  Frank testified that there was a year they had a loss. Griffin Decl. Ex. 21 (Dep. of Avellino) at 50:5-14.

**TRUSTEE'S REPLY:** The Defendants' objection to Trustee Statement ¶ 65 does not create an issue of fact that would preclude summary judgment for the Trustee.

66.    Bienes separately confirmed A&B never had a down year in its IA Business Accounts:

[*Question:*] How many years were you investing with him [Madoff]?
[*Bienes:*] Bernie, from the beginning about 35 years.
[*Question:*] Did you ever have a down year?
[*Bienes:*] Never. Not once.

Griffin Decl. Ex. 24 (Bienes Frontline Interview) at 10-05421-BIENES__006314 and 006348.

**RESPONSE: Undisputed** that the quoted part of the edited transcript so stated**.** Object to the admissibility of Michael's Frontline Interview. See Response to Trustee's statement no. 48.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 66. Defendants interpose an evidentiary objection to the admissibility of the Bienes Frontline Interview which is unfounded.  This objection neither raises a genuine dispute with the fact asserted in Trustee Statement ¶ 66, nor provides any evidence to the contrary.  Accordingly, Trustee Statement ¶ 66 should be deemed admitted under Local Rule 7056-1(d).

Further, the Trustee refers the Court to Defendants' admissions in their Amended Responses to the Trustee's Request for Admission.  Griffin Decl. Ex. 23 (Defts. Am. Resp. to Req. for Admissions) at ¶ 25.  *See also* Griffin Supp. Decl. Ex. 67 (Bienes P&S Dep.) at 97:8-21.

Nonetheless, the Bienes Frontline Interview is authentic and admissible.  *See* Trustee's Reply Memo at II.D.

67.    Bienes described the profits he received from Madoff as "[e]asy, easy-peasy, like a money machine.  I always said I never lifted any heavy weights."  Griffin Decl. Ex. 24 (Bienes Frontline Interview) at 10-05421-BIENES__006313.

**RESPONSE: Undisputed** that the quoted part of the edited transcript so stated. Object to the admissibility of Michael's Frontline Interview. See Response to Trustee's statement no. 48.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 67. Defendants interpose an evidentiary objection to the admissibility of the Bienes Frontline Interview.  This objection neither raises a genuine dispute with the fact asserted in Trustee Statement ¶ 67, nor provides any evidence to the contrary.  Accordingly, Trustee Statement ¶ 67 should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, the Bienes Frontline Interview is authentic and admissible.  *See* Trustee's Reply Memo at II.D.

68.    Bienes conceded that his financial success was built on Madoff: "Bernie was the well.  I just turned the spigot, sent him the fax, the money came."  Griffin Decl. Ex. 24 (Bienes Frontline Interview) at 10-05421-BIENES_006348.

**RESPONSE: Disputed** as to the Trustee's characterization that Michael "conceded." Object to the admissibility of Michael's Frontline Interview. See Response to Trustee's statement no. 48.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 68, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 68 but "dispute" the Trustee's phraseology.

Defendants' quibble with the Trustee's phraseology does not controvert any of the facts in Trustee

Statement ¶ 68.  Defendants object to the admissibility of the Bienes Frontline Interview which is

unfounded.  Accordingly, Trustee Statement ¶ 68 is therefore not controverted, and consequently,

should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, the Bienes Frontline Interview is authentic and admissible.  Trustee's Reply

Memo at II.D.

69.    Avellino and Bienes compensated certain business associates for feeding money to

them that they ultimately sent to Madoff, thereby enhancing their own profits.  Griffin Decl.

Attach. B (Dubinsky A&B Report) at ¶¶ 26 and 28; Griffin Decl. Ex. 24 (Bienes Frontline

Interview) at 10-05421-BIENES_006321-23; Griffin Decl. Ex. 28 (Deposition of Andrew

Copperman dated Jan. 10, 2020) at 25:21-25.

**RESPONSE: Disputed.** Object to the reference to individuals and not A & B. See

Response to Trustee's statement no. 53.  Frank testified that A & B was not paid a fee by anyone

for referring clients or customers.  A & B paid interest.  It would have no idea whether someone

would take a fee from that interest. Griffin Decl. Ex. 26 (SEC Dep. of Avellino and Bienes dated

July 7, 1992) at 72:7-15; 24-25; 73:2. Object to the admissibility of Michael's Frontline Interview,

See Response to Trustee's Statement no. 48.

**TRUSTEE'S REPLY:** Defendants' partial dispute of Trustee Statement ¶ 69 does not

create an issue of fact that would preclude summary judgment for the Trustee.  Further, the

remaining facts in Trustee Statement ¶ 69 are not specifically controverted as required by Local

Rule 7056-1.  Moreover, Defendants' quibble with the Trustee's phraseology does not controvert

any of the facts in Trustee Statement ¶ 69. Defendants also interpose an evidentiary objection to

the admissibility of the Bienes Frontline Interview.  Nonetheless, the Bienes Frontline Interview

is authentic and admissible.  See Trustee's Reply Memo at II.D.

70.    Bienes admitted that in the 1970s and 1980s, he and Avellino were "running a big

business" with Madoff:

> [*Question*:] You talked a little bit about Bernie in the early, early days.  But
> by the '70s, into the '80s, you had a lot of contact with Bernie.  You got to
> know him?
> [*Bienes*:] Had to have a lot of contact.  We were running – in our estimation
> – a big business with him.  We had to know what was going on.

Griffin Decl. Ex. 24 (Bienes Frontline Interview) at 10-05421-BIENES__006315.

**RESPONSE: Undisputed** that the quoted part of the edited transcript so stated**.** Object to

the admissibility of Michael's Frontline Interview, See Response to Trustee's statement no. 48.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 70.

Defendants interpose an evidentiary objection to the admissibility of the Bienes Frontline

Interview which is unfounded.  This objection neither raises a genuine dispute with the fact

asserted in Trustee Statement ¶ 70, nor provides any evidence to the contrary.  Accordingly,

Trustee Statement ¶ 70 should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, the Bienes Frontline Interview is authentic and admissible.  *See* Reply at II.D.

71.    In or about 1984, Avellino and Bienes ceased all accounting services and focused

solely on their pooled IA Business accounts at BLMIS.  Griffin Decl. Ex. 23 (Defts.' Am. Resp.

to Req. for Admission) at ¶¶ 24-25; Griffin Decl. Ex. 26 (Dep. of Avellino and Bienes dated July

7, 1992, *In the Matter of King Arthur*, SEC file No: MNY-1490) at 35:1 – 38:3; Griffin Decl. Ex.

24 (Bienes Frontline Interview) at 10-05421-BIENES__006313.

**RESPONSE: Disputed** as to the usage of the term "IA Business." See Response to

Trustee's statement no. 29. Object to referring to individuals rather than A & B. See Response to Trustee's statement no. 53. Object to the use of the word "pooled". Object to the admissibility of Michael's Frontline Interview. See Response to Trustee's statement no. 48.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 71, nor provides any evidence to the contrary. Defendants interpose an evidentiary objection to the admissibility of the Bienes Frontline Interview which is unfounded. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 71 but object to the Trustee's phraseology. Defendants' quibble with the Trustee's phraseology does not controvert any of the facts in Trustee Statement ¶ 71. Accordingly, Trustee Statement ¶ 71 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

*See also* Griffin Supp. Decl. Ex. 67 (Bienes P&S Dep.) at 180:2-20.

Nonetheless, the Bienes Frontline Interview is authentic and admissible. *See* Trustee Reply Memo at II.D.).

### C.    Avellino and Bienes Worked with Madoff to Deceive the SEC in 1992

72.    By June of 1992, when Avellino and Bienes had funneled nearly one half billion dollars of other people's money to the IA Business, the SEC began investigating them for operating an "unregistered investment company" and for "engag[ing] in the unlawful sale of unregistered securities." Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶ 89; Griffin Decl. Ex. 24 (Bienes Frontline Interview) at 10-05421-BIENES__006319.

**RESPONSE: Disputed.** Object to the referring to individuals rather than A & B. See Response to Trustee's statement no. 53. Object to the usage of the term "IA Business". See Response to Trustee's statement no. 29. Object to the reliance on Dubinsky for these facts. See Response to Trustee's statement no. 8. Object to the admissibility of Michael's Frontline Interview. See Response to Trustee's statement no. 48.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 72, nor provides any evidence to the contrary. Defendants interpose an evidentiary objection to the admissibility of the Bienes Frontline Interview which is unfounded. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 72 but object to the Trustee's phraseology. Defendants' quibble with the Trustee's phraseology does not controvert any of the facts in Trustee Statement ¶ 72. Accordingly, Trustee Statement ¶ 72 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

*See also* Griffin Decl. Ex. 21 (Avellino Dep. Vol. 1) at 131:11-132:19; 147:22-148:17; 150:20-151:11.

Nonetheless, the Bienes Frontline Interview is authentic and admissible. *See* Trustee Reply Memo at II.D.).

73.    DiPascali testified that Madoff became upset when he learned of the SEC investigation. Griffin Decl. Ex. 15 (DiPascali Tr.) at 4623:4 – 4623:21.

**RESPONSE: Disputed;** see Response to Trustee's statement nos. 25, 74, and 81.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 73, nor provides any evidence to the contrary. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 73. Accordingly, Trustee Statement ¶ 73 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee refers the Court to Trustee's Reply at ¶¶ 25, 74, and 81.

74.    DiPascali explained that Madoff's concern with the SEC's investigation was that it could eventually lead to the discovery of BLMIS's fraud:

Q. And what concerns did Madoff discuss relating to the SEC, now looking at Avellino and Bienes?
A. He wanted to keep that episode in Avellino and Bienes' office. He did not want the SEC to look any further than the minor violation of failing to

register the notes that they were issuing.  He needed to – He could not afford for the investigation to dig any deeper because, as you kept peeling away the onion that would start with Avellino and Bienes, the fraud would have been disclosed.

Griffin Decl. Ex. 15 (DiPascali Tr.) at 4627:16 – 4627:24.

**RESPONSE: Disputed.**  See response to Trustee's statement no. 25. Also inadmissible as double hearsay. See Defendants' Memo Section IIE. Also, Madoff's testimony disputes DiPascali's testimony and his truthfulness.  Frank DiPascali was his assistant and virtually had no function in the firm prior to 1992.  He worked in the research department and had no involvement in trading.  Madoff was not concerned about the SEC investigation; the SEC was regularly at his office. There was never any problem.  Woodfield Decl Ex. 12 (Madoff Dep. Oct. 19, 2015) at 57:1-25; 58:1-2; 59:12-25; 60:1-25; 61:1-8; 63:17-25; 64:1-2.; Woodfield Decl. Ex. 10 (Madoff Dep. Nov. 13, 2019) at 62:24-25; 63:1-8. When the SEC came to investigate, they confirmed that all the securities were there. Woodfield Decl. Ex. 10 (Madoff Dep. Nov. 13, 2019) at 38:15-25; 39:1.

**TRUSTEE'S REPLY:** Defendants' objection to Trustee Statement ¶ 74 does not create an issue of fact that would preclude summary judgment for the Trustee.  Further, the facts in Trustee Statement ¶ 74 are not specifically controverted as required by Local Rule 7056-1. Defendants also interpose an evidentiary objection to the admissibility of Frank DiPascali's Criminal Trial testimony and add extraneous statements that are not responsive to the stated fact, are argumentative, and not supported by competent evidence.  These extraneous statements should be disregarded.   Accordingly, Trustee Statement ¶ 74 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

It is law of the case that DiPascali's plea allocution and Criminal Trial testimony are admissible.  (*See* Trustee's Reply Memo at II.B.).

Further, the Trustee objects to the Defendants' reliance on Madoff's testimony as inadmissible hearsay and untrustworthy. *See* Trustee's Reply at III.C. In light of the Trustee's admissible evidence to the contrary, this factual statement should be deemed admitted under Local Rule 7056-1(d). .

75.    During the SEC investigation, Avellino and Bienes gave sworn testimony about their IA Business accounts. Griffin Decl. Ex. 26 (SEC Dep. of Avellino and Bienes dated July 7, 1992); Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶ 89.

**RESPONSE: Disputed.** Object to the usage of "IA Business" accounts. See Response to Trustee's statement no. 29. Object to reliance on Dubinsky for these facts. See Response to Trustee's statement no. 8.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 75, nor provides any evidence to the contrary. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 75, but "dispute" the Trustee's phraseology. Defendants' quibble with the Trustee's phraseology does not controvert any of the facts in Trustee Statement ¶ 75. Defendants also interpose an evidentiary objection to the admissibility of the Dubinsky which is unfounded. Accordingly, Trustee Statement ¶ 75 is not specifically controverted, and therefore, should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, Dubinsky's expert opinions are admissible. See Trustee Reply Memo at II.C.

76.    Avellino and Bienes testified under oath that their IA Business accounts held total assets of approximately $440 million. Griffin Decl. Ex. 26 (SEC Dep. of Avellino and Michael Bienes dated July 7, 1992) at 83:1 – 84:6.

**RESPONSE: Disputed** as to the usage of the term: "IA Business." See Response to Trustee's statement no. 29.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 76, nor provides any evidence to the contrary. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 76, but only "dispute" the Trustee's phraseology. Defendants' quibble with the Trustee's phraseology does not controvert any of the facts in Trustee Statement ¶ 76. Trustee Statement ¶ 76 is not specifically controverted, and therefore, should be deemed admitted under Local Rule 7056-1(d).

77.    Avellino and Bienes also testified that Madoff purportedly employed a hedged investment strategy for the A&B Accounts:

> Q.    …Are you aware of the strategy that Mr. Madoff utilizes?
> WITNESS AVELLINO:  Oh, yes.
> Q.    Could you describe that to me?
> WITNESS AVELLINO:  Yes.  What we basically have is, of course, long positions.  He buys securities for the accounts of Avellino & Bienes, and the strategies that have been highly successful over the years, which Mr. Madoff, by the way, happens to be an expert in, all of the derivative hedges that the market affords.  We sell short against the box, we use hedges of the Standard & Poor's 500, Fortune 500 …. Mr. Madoff uses the hedges basically as S&P's, puts and calls.  Every security that we have in the long position has a hedge, every single one of them.

Griffin Decl. Ex. 26 (SEC Dep. of Avellino and Bienes dated July 7, 1992) at 40:13-41:3.

**RESPONSE: Undisputed** that Frank so testified.  However, Frank was only stating what he had been told; he did not do the investing, nor understand the investing strategy.  Madoff did all the investing. Griffin Decl. Ex. 21 (Frank Depo) at 117:2-25; 118:1-25.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 77. Defendants add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence.  Accordingly, Defendants' extraneous statements should be disregarded and Trustee Statement ¶ 77 should be deemed admitted under Local Rule 7056-1(d).

78.    Dubinsky compared the testimony given by Avellino and Bienes to the SEC to the transactions appearing on the original A&B customer statements and concluded that Avellino's and Bienes' testimony was inconsistent with the transactions reflected on their original customer statements. Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 88-96.

**RESPONSE: Undisputed** that Dubinsky so concluded, but his conclusion is not admissible because he does not have the proper qualifications to make such conclusions. See Response to Trustee's Statement no. 8 and 38.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 78. Defendants interpose an evidentiary objection to the admissibility of Dubinsky's expert opinions which is unfounded. This objection neither raises a genuine dispute with the fact asserted in Trustee Statement ¶ 78, nor provides any evidence to the contrary. Accordingly, Trustee Statement ¶ 78 should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, Dubinsky's expert opinions are admissible. See Trustee's Reply Memo at II.C.

79.    Dubinsky's analyses show that the original A&B IA Business customer statements had a balance of only $364 million in securities in 1992, which was $76 million less than the $440 million in total equity Avellino and Bienes claimed in their sworn testimony. Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 95-96.

**RESPONSE: Undisputed** that Dubinsky's report so stated, but his opinion is not admissible because he lacks the qualifications to make such conclusions. See Response to Trustee's statement no. 38. Dispute the usage of terms "IA Business". See Response to Trustee's statement no. 29.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 79. Defendants interpose an evidentiary objection to the admissibility of Dubinsky's expert opinions and quibble with the Trustee's phraseology. These objections neither raise a genuine dispute with the fact asserted in Trustee Statement ¶ 79, nor provide any evidence to the contrary. Accordingly, Trustee Statement ¶ 79 should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, Dubinsky's expert opinions are admissible. *See* Trustee's Reply Memo at II.C.

80.    Dubinsky's analyses also revealed that A&B's original customer statements did not reflect any purported investment strategy hedged with S&P 100 options like the strategy Avellino and Bienes described under oath to the SEC. In fact, the original customer statements had no options transactions at all. Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 92-94.

**RESPONSE: Undisputed** that Dubinsky's report so stated; but his opinion is not admissible because he lacks the qualifications to make such conclusions. See Response to Trustee's statement no. 38. Dispute the usage of terms "IA Business". See Response to Trustee's statement no. 29.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 80. Defendants interpose an evidentiary objection to the admissibility of Dubinsky's expert opinions and quibble with the Trustee's phraseology. These objections neither raise a genuine dispute with the fact asserted in Trustee Statement ¶ 80, nor provide any evidence to the contrary. Accordingly, Trustee Statement ¶ 80 should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, Dubinsky's expert opinions are admissible. See Trustee's Reply Memo at II.C.

81.    DiPascali confirmed that it would have been "problematic" if Avellino and Bienes produced their original customer statements to the SEC, because the transactions on those statements were inconsistent with their testimony, and so Madoff directed a "redo" of the statements:

> Q.  What did Madoff say his concerns were?
> A.  Well, to a certain amount of the clients that Avellino had been dealing with for many, many years, he was explaining to them that they were doing some sort of a hedged arbitrage.  Well, quite frankly, the accounts had morphed into something completely different than hedged arbitrage for whatever reason….So they needed to change the complexions of what [customer statements] was previously issued to Avellino because if you looked at the Avellino accounts, like when the music stopped on the date that the SEC would get them, they were very problematic to Bernie.  They did not indicate in any way, shape or form that these accounts were hedged in any way, shape or form….
>
> And they weren't worth nearly what the liabilities that Avellino and Bienes had to their clients, or if you added up, or the SEC added up….it didn't add up.  There wasn't enough cushion there to cover what was out here.  Very problematic for Frank Avellino, but anything that's problematic for Frank Avellino at this point is extremely problematic to Bernie Madoff.
>
> So it was circle the wagons and let's redo all of this stuff so that Frank Avellino can give the SEC a more cohesive investment picture that is worth considerably more money, that is clearly hedged, and all of that is now consistent with what he's been telling his clients.

Griffin Decl. Ex. 15 (DiPascali Tr.) at 4628:13- 4628:16; 4629:3 - 4630:7.

**RESPONSE: Disputed**.  Undisputed that DiPascali so testified as to the quoted language but dispute the introduction of such testimony. See Response to Trustee's statement no. 25 & 138. Dispute based on Madoff's testimony about DiPascali. See Response to Trustee's statement no. 74. Also, Madoff did not know if the statements had been recreated or that the statements sent to the SEC had been changed. Woodfield Decl. Ex. 10 (Madoff Dep. Nov. 13, 2019) at 31:16-25; 32:1-3; 33:14-23.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 81. Defendants' additional response neither raises a genuine dispute with Trustee Statement ¶ 81, nor

provides any evidence to the contrary. Defendants' evidentiary objections to the admissibility of DiPascali's Criminal Trial testimony and extraneous statements are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. This fact is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee objects to the Defendants' reliance on Madoff's testimony because it is inadmissible hearsay and untrustworthy. See Trustee's Reply Memo at III.C.

Nonetheless, it is law of the case that DiPascali's Criminal Trial testimony is admissible. See Trustee's Reply Memo at II.B.

The Trustee further refers the Court to Trustee's Reply to ¶¶ 25, 74, 138.

82.    DiPascali admitted that the purpose of redoing the original A&B customer statements before producing them to the SEC was ultimately to deceive regulators. Griffin Decl. Ex. 15 (DiPascali Tr.) at 4639:2 – 4639:7.

**RESPONSE: Disputed**. Undisputed that DiPascali so testified. But dispute introduction of such testimony. See Response to Trustee's Statement no. 25 &138. Disputed based on Madoff's testimony. See Response to Trustee's Statement nos. 74 and 81.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 82. Defendants interpose an evidentiary objection to the admissibility of DiPascali's Criminal Trial testimony. This objection neither raises a genuine dispute with the fact asserted in Trustee Statement ¶ 82, nor provides any evidence to the contrary. Accordingly, Trustee Statement ¶ 82 is not specifically controverted and should be deemed admitted under Local Rule 7056-1(d).

The Trustee objects to the Defendants' reliance on Madoff's testimony because it is inadmissible hearsay and untrustworthy. See Reply Memo at III.C.

Nonetheless, it is law of the case that DiPascali's Criminal Trial testimony is admissible. See Trustee's Reply Memo at II.B.

The Trustee further refers the Court to Trustee's Reply to ¶¶ 25, 74, 81, 138.

83.     As with all of the purported securities transactions that appeared on the A&B original customer statements, the purported transactions on the redone statements were fake, and never took place.  Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 113, 115, 122, 134, 135, and 140; Griffin Decl. Ex. 15 (DiPascali Tr.) at 4630:8 – 4630:17.

**RESPONSE**: **Disputed**.  Madoff has testified that actual trades were made in the accounts at that time. Woodfield Decl. Ex 10 (Madoff Dep. Nov. 13, 2019) at 15:23-25; 16:1; 18:10-15; Object to the reliance on Dubinsky's opinion because he lacks the qualifications to make such opinions. See Response to Trustee's statement no. 38.  Object to reliance on DiPascali's testimony. See Response to Trustee's statement no. 25.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 83, nor provides any competent evidence to the contrary.  Defendants do not specifically controvert the factual statement in Trustee Statement  83 but rely exclusively on Madoff's testimony which is impermissible hearsay and untrustworthy. See Trustee's Reply Memo at III.C.  The overwhelming evidence proffered by the Trustee shows that Madoff did not execute any of the trades on the customer statements.  See, e.g., Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶ 35-161.  Accordingly, Trustee Statement ¶ 83 is not specifically controverted

Nonetheless, it is undisputed that Madoff was operating a Ponzi scheme through his IA Business, Defendants were customers of the IA Business (*see* Trustee's Reply at Statement ¶ 29), the trades in the accounts for the Defendants, including for the Summary Judgment Entity

Defendants, were fictitious (*see* Trustee's Reply at Statement ¶ 19), and Dubinsky's expert

opinions are admissible (*see* Trustee's Reply Memo at II.C.).  Further, it is law of the case that

DiPascali's plea allocution and Criminal Trial testimony are admissible.

1. **Avellino Returned A&B's Original Customer Statements between 1989 and 1992 to BLMIS, and BLMIS Altered Them to Match Avellino's and Bienes' Testimony**

84.    In 1992, BLMIS significantly manipulated the transactions on the original A&B

customer statements so that when the revised statements were produced to the SEC, they would

match Avellino's and Bienes' sworn testimony before the SEC.  Dubinsky Decl. Attach. B

(Dubinsky A&B Report) at pages 44-80.

**RESPONSE: Disputed.**  Object to the reliance on Dubinsky for these facts. See Response

to Trustee's statement no. 8. See Response to Trustee's statement nos. 74, 81 and 83 for disputed

facts.  Also, neither Frank nor Michael had any knowledge of alleged "revised" statements

produced to SEC. Griffin Decl. Ex. 21 (Frank Dep.) at 93:21-25; 94:1-3; 183:18-25; 184:1-9;

191:10-25; 192:1-21); Woodfield Decl., Ex. 8 (Michael Bienes Dep. in P & S) at 129: 9-25; 130:1;

Woodfield Decl., Ex. 13 (Frank dep. in P & S) at 13:18-25; 14:1-25; 15:1-25; 16:1-19; Dianne

Decl., ¶¶ 1, 2.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee

Statement ¶ 84, nor provides any evidence to the contrary.  Defendants do not specifically rebut

the factual statement in Trustee Statement ¶ 84 but add extraneous statements that are not

responsive to the stated fact, are argumentative, and are not supported by competent evidence.

These additional statements should be disregarded.  Defendants also interpose an evidentiary

objection as to the admissibility of Dubinsky's expert opinions which is unfounded.  Trustee

Statement ¶ 84 is not specifically controverted and therefore should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, Dubinsky's expert opinions are admissible.

The Trustee further refers the Court to the Trustee's Reply at ¶¶ 74, 81, and 83.

85.     As part of the redo of the A&B customer statements, Avellino returned three years (1989-1992) of the original customer statements to BLMIS.  Griffin Decl. Ex. 27 (Bongiorno Dep.) at 143:6 – 143:24 and 144:7 – 145:18.

**RESPONSE: Disputed**.  Avellino has no knowledge of returning original customer statements, and if they were returned, he had no knowledge that they would be revised before being sent to the SEC.  See Response to Trustee's statement 84.  Bongiorno testified that she had no discussion with Frank or Michael about these statements; that she did not know how he knew to return them; that she had no knowledge that anyone at BLMIS had discussed changing them with anyone at A & B; and that she got them back from Frank or "whoever mailed them to her." Griffin Decl. Ex. 27 (Bongiorno Dep.) at 144:1-6; 145:17-19; 208:3-25; 210:4-24; 211:12-25; and 212:1-17.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 85, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 85 but add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. These additional statements should be disregarded.  Trustee Statement ¶ 84 is not specifically controverted and therefore should be deemed admitted under Local Rule 7056-1(d).

86.     BLMIS maintained these original statements in an envelope marked "These were returned," in handwriting that Bongiorno confirmed under oath was hers.  Griffin Decl. Ex. 27

(Bongiorno Dep.) at 145:4 – 145:18 and Griffin Decl. Ex. 30 (Trustee's Deposition Ex. 42); Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 97-98.

**RESPONSE: Disputed.** There is no testimony or evidence of what was included in the envelope when it was sent to BLMIS; whether the documents were removed and/or replaced; and whether the documents which are in the envelope today or when Bongiorno testified are the same documents which were in the envelope when it was sent to BLMIS. See Section __ of Defendants' Response to Trustee's Motion. Object to the reliance on Dubinsky for these facts. See Response to Trustee's statement no. 8.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 86, nor provides any evidence to the contrary. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 86 but add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. These additional statements should be disregarded. Defendants also interpose an evidentiary objection as to the admissibility of Dubinsky's expert opinions which is unfounded. Trustee Statement ¶ 86 is not specifically controverted and therefore should be deemed admitted under Local Rule 7056-1(d)**.**

Nevertheless, Dubinsky's expert opinions are admissible.

87.    DiPascali testified at the Criminal Trial:

Q.    Now, what steps were then taken to deal with the [SEC investigation into Avellino and Bienes] internally at Madoff Securities?
A.    We basically circled the wagons and pitched in in any way we can, depending on what abilities you had, to bail Bernie out of a problem.
Q.    Who were some of the people that were involved in circling the wagons?
A.    Annette's department. Annette, myself, clearly Bernie, and then there were some fringe players that dropped what they were doing and ran some tapes for us to balance things out…. they were basically trying to do was *create an entirely new set of books and records that they can give to*

> *Avellino and Bienes, that Avellino could then give to the SEC and, hopefully,*
> *this whole problem would go away.*

Griffin Decl. Ex. 15 (DiPascali Tr.) at 4627:25 – 4628:16 (emphasis added).

**RESPONSE: Disputed.**  Undisputed that DiPascali so testified.  Dispute the introduction

of such testimony. See Response to Trustee's statement no. 25.  There is no testimony or evidence

that Avellino gave any alleged revised statements to the SEC. See Response to Trustee's statement

no. 84.

**TRUSTEE'S REPLY**: Defendants admit the factual statement in Trustee Statement ¶ 87.

Defendants' additional response neither raises a genuine dispute with Trustee Statement ¶ 87, nor

provides any evidence to the contrary.  Defendants' evidentiary objections to the admissibility of

DiPascali's Criminal Trial testimony and extraneous statements are not responsive to the stated

fact, are argumentative, and are not supported by competent evidence.  This fact is therefore not

controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, it is law of the case that DiPascali's Criminal Trial testimony is admissible.

88.    Among the changes BLMIS made to A&B's original customer statements were a

new set of customer account statements which retroactively inserted $86 million in fake US

Treasuries to A&B IA Business account 1-00125-3.  Dubinsky Decl. Attach. B (Dubinsky A&B

Report) at ¶¶ 103-113 and Figures 21-25.

**RESPONSE: Disputed.**  Object to the usage of the term: "IA Business." See Response to

Trustee's statement no. 29.  Object to the reliance on Dubinsky for these facts, or his opinion on

same.  See Response to Trustee's statement nos. 8 and 38.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee

Statement ¶ 88, nor provides any evidence to the contrary.  Defendants do not specifically rebut

the factual statement in Trustee Statement ¶ 88, but "dispute" the Trustee's phraseology.

Defendants' quibble with the Trustee's phraseology does not controvert any of the facts in Trustee Statement ¶ 88. Defendants also interpose an evidentiary objection to the admissibility of Dubinsky's expert opinions which is unfounded. Trustee Statement ¶ 88 is not specifically controverted, and therefore, should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, Dubinsky expert opinions are admissible.

89. BLMIS retroactively created a new IA Business account for A&B, 1A0053, and manufactured three years of statements back to 1989 for this fake account. BLMIS employee Bongiorno confirmed that this account was not "opened" until June 1992. Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 114-127 and Figs. 29-37; Griffin Decl. Ex. 27 (Bongiorno Dep.) at 180:4 –180:16; 184:15-187:3; Griffin Decl. Ex. 31 (Trustee Dep. Ex. 71).

**RESPONSE: Disputed** Object to the usage of the term: "IA Business." See Response to Trustee's Statement no. 29. Object to reliance on Dubinsky for these facts. See Response to Trustee's Statement no. 8. Dispute that Bongiorno would have knowledge that there was any fraud; she would have just been following instructions. Woodfield Decl., Ex. 10 (Madoff Dep. Nov. 13, 2019) at 60:7-20. Additionally, as pointed out by the Honorable Judge Bernstein, the exhibits to the complaint indicate that this account was funded with transfers from other A & B related accounts and that transfers between related accounts could be more plausibly considered as A & B withdrawing its own money, which does not evidence any wrongdoing. *See Picard v Avellino*, 557 BR 89 (Bktcy. S.D.N.Y 2016 ("*Avellino Motion to Dismiss Decision*") *at 115* (citing ECF 86; Ex. B at 26).

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 89, nor provides any competent evidence to the contrary. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 89 but add extraneous statements

that are not responsive to the stated fact, contain legal conclusions, are argumentative, and are not supported by competent evidence. These additional statements should be disregarded. Defendants' quibble with the Trustee's phraseology does not controvert any of the facts in Trustee Statement ¶ 89. Defendants also interpose an evidentiary objection to the admissibility of Dubinsky's expert opinions which is unfounded. Trustee Statement ¶ 89 is not specifically controverted, and therefore, should be deemed admitted under Local Rule 7056-1(d).

Further, the Trustee objects to the Defendants' reliance on Madoff's testimony because it is inadmissible hearsay and untrustworthy.

Nonetheless, Dubinsky's expert opinions are admissible.

90.     BLMIS also altered A&B's original customer statements in 1992 to conceal inter-account transfers made between their accounts and those of other IA Business customers before they were produced to the SEC. Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 128-134 and Figs. 38-42; Griffin Decl. Ex. 15 (DiPascali Tr.) at 4640:22-4641:15.

**RESPONSE: Dispute** the usage of the term: "IA Business." See Response to Trustee's Statement no. 29. Madoff had no knowledge of altered statements and the trades in the A & B accounts were valid. See Response to Trustee's statement nos. 74, 81 and 83. Neither Frank nor Michael had knowledge of any altered statements. See Response to Trustee's statement no. 84.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 90, nor provides any competent evidence to the contrary. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 90 but add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. These additional statements should be disregarded. Defendants' quibble with the Trustee's phraseology does not controvert any of the facts in Trustee Statement ¶ 90. Trustee

Statement ¶ 90 is not specifically controverted, and therefore, should be deemed admitted under Local Rule 7056-1(d).

Further, the Trustee objects to the Defendants' reliance on Madoff's testimony because it is inadmissible hearsay and untrustworthy.

The Trustee further refers the Court to the Trustee's Reply at ¶¶ 74, 81, 83, and 84.

91.    Madoff also added fictitious backdated transactions to A&B account 1-00125-7 to generate over $134.3 million in cash. Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 135-140 and Figs. 45-48.

**RESPONSE: Disputed.** Madoff did not know statements were recreated, or that statements sent to the SEC had been altered. The transactions in the A & B accounts were valid. See Response to Trustee's statement nos. 74, 81 and 83. Object to reliance on Dubinsky for these facts. See Response to Trustee's statement no. 8.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 91, nor provides any competent evidence to the contrary. Defendants do not specifically controvert the factual statement in Trustee Statement ¶ 91 but rely exclusively on Madoff's testimony which is impermissible hearsay and untrustworthy. Defendants also interpose an evidentiary objection to the admissibility of Dubinsky's expert opinions which is unfounded and add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. These additional statements should be disregarded. The overwhelming evidence proffered by the Trustee shows that Madoff did not execute any of the trades on the customer statements. See, e.g., Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶ 35-161. Accordingly, Trustee Statement ¶ 91 is not specifically controverted.

Nonetheless, it is undisputed that Madoff was operating a Ponzi scheme through his IA Business, Defendants were customers of the IA Business (*see* Trustee's Reply at Statement ¶ 29), the trades in the accounts for the Defendants, including for the Summary Judgment Entity Defendants, were fictitious (*see* Trustee's Reply at Statement ¶ 19), and Dubinsky's expert opinions are admissible.

92.     Avellino, on behalf of A&B, produced the revised A&B customer statements to the SEC during the 1992 investigation as if they were the original statements issued by BLMIS three years prior.  Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 112 and n. 116, 122, and 125; Griffin Decl. Ex. 32 (Trustee Dep. Ex. 39) at FRANK AVELLINO_000010-12; Griffin Decl. Ex. 27 (Bongiorno Dep.) at 139:14-142:6; Griffin Decl. Ex. 15 (DiPascali Tr.) at 4627:16-4630:7.

**RESPONSE: Disputed.**  Frank did not produce revised statements to SEC, and did not have knowledge about any revised statements.  See Response to Trustee's statement nos. 84 and 86.  Object to reliance on Dubinsky for facts.  See Response to Trustee's statement no. 8.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 92, nor provides any evidence to the contrary.  Defendants interpose an evidentiary objection to the admissibility of Dubinsky's expert opinions which is unfounded and add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence.  These additional statements should be disregarded.  Trustee Statement ¶ 92 is not specifically controverted and therefore should be deemed admitted under Local Rule 7056-1(d)**.**

Nonetheless, Dubinsky's expert opinions are admissible.

93.     Dubinsky concluded that BLMIS's retroactive changes to the A&B customer statements that were ultimately produced to the SEC in 1992 had two effects: (i) purportedly

increased the equity reflected on the A&B customer statements, and thereby reduced the substantial shortfall between the amounts Avellino and Bienes represented to the SEC that they owed to their clients and the purported equity recorded on the original A&B customer statements; and (ii) reflected a more conservative investment portfolio. Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 103, 112, 125-126, and 135.

**RESPONSE: Disputed.** Dubinsky is not qualified to offer expert opinions involving securities industry and, as an expert, is not permitted to testify as to these conclusions. See Response to Trustee's statement nos. 8 and 38. Madoff had no knowledge of statements being altered, and the trades in the A & B accounts were valid. See Response to Trustee's statement nos. 74, 81 and 83.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 93, nor provides any competent evidence to the contrary. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 93 but add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. These additional statements should be disregarded. Defendants also interpose an evidentiary objection to the admissibility of Dubinsky's expert opinions which is unfounded. Trustee Statement ¶ 93 is not specifically controverted, and therefore, should be deemed admitted under Local Rule 7056-1(d).

Further, the Trustee objects to the Defendants' reliance on Madoff's testimony because it is inadmissible hearsay and untrustworthy.

Nonetheless, it is undisputed that Madoff was operating a Ponzi scheme through his IA Business, Defendants were customers of the IA Business (*see* Trustee's Reply at Statement ¶ 29), the trades in the accounts for the Defendants, including for the Summary Judgment Entity

Defendants, were fictitious (*see* Trustee's Reply at Statement ¶ 19), and Dubinsky's expert opinions are admissible.

94.     Dubinsky opined that "[i]n the real investment world, transactions cannot be inserted into accounts three years after the fact."  Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶ 140; *see also* ¶¶ 113, 122, 127 134.

**RESPONSE: Disputed.**  Dubinsky lacks the expertise to provide opinions involving the securities industry and, as an expert, could not testify to these opinions. See Response to Trustee's statement no.  8 and 38.  Also dispute that transactions were inserted "three years after the fact". Actual trades were made.  See Response to Trustee's statement no. 19.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 94, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 94 but interpose an evidentiary objection to the admissibility of Dubinsky's expert opinions which is unfounded and add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence.  These additional statements should be disregarded.  Trustee Statement ¶ 94 is not specifically controverted, and therefore, should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, it is undisputed that Madoff was operating a Ponzi scheme through his IA Business, Defendants were customers of the IA Business (*see* Trustee's Reply at Statement ¶ 29), the trades in the accounts for the Defendants, including for the Summary Judgment Entity Defendants, were fictitious (*see* Trustee's Reply at Statement ¶ 19), and Dubinsky's expert opinions are admissible.

>    2.    **Avellino Prepared Handwritten Ledgers Which Matched the Fraudulently Revised A&B Customer Statements and Produced Them to the SEC**

95.    In 1992, Avellino prepared handwritten ledgers for A&B based on the redone customer statements and produced to them to SEC on behalf of A&B. Griffin Decl. Ex. 32 (Trustee Dep. Ex. 39) at FRANKAVELLINO_000010; Griffin Decl. Ex. 33 (Trustee Dep. Ex. 40).

**RESPONSE**: **Disputed.** Frank testified he had no knowledge of redone customer statements, and he did not produce redone documents to the SEC. See Response to Trustee's statement nos. 84 and 86. Additionally see Response to Trustee's statement nos. 74, 81 and 83 relating to Madoff's testimony contrary to this statement.

**TRUSTEE'S REPLY:** Defendants' partial dispute of Trustee Statement ¶ 95 does not create an issue of fact that would preclude summary judgment for the Trustee. Further, the remaining facts in Trustee Statement ¶ 95 are not specifically controverted as required by Local Rule 7056-1**.** Defendants add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. These additional statements should be disregarded. Accordingly, Trustee Statement ¶ 95 is not specifically controverted and therefore should be deemed admitted under Local Rule 7056-1(d)**.**

The Trustee further objects to the Defendants' reliance on Madoff's testimony which is inadmissible hearsay and untrustworthy.

96.    Avellino admitted under oath that he prepared these handwritten accounting ledgers for A&B. Griffin Decl. Ex. 21 (Avellino Dep. Vol. 1) at 168:14-171:22; Griffin Decl. Exs. 32 (Trustee Dep. Ex. 39) and 33 (Trustee Dep. Ex. 40).

**RESPONSE**: **Disputed.** Frank admitted that he prepared handwritten ledgers, but not based on "redone" customer statements, nor did he admit that he produced them to the SEC. See Response to Trustee's statement no. 95.

**TRUSTEE'S REPLY:** Defendants' admit the factual statement in Trustee's Statement ¶ 96. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 96 but add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. These additional statements should be disregarded. Trustee Statement ¶ 96 is not specifically controverted, and therefore, should be deemed admitted under Local Rule 7056-1(d).

97.     Avellino received copies of the fraudulently revised statements from the IA Business and later returned them to Madoff, along with the matching handwritten ledgers he prepared. These statements and handwritten ledgers were among BLMIS's books and records in an envelope marked: "CONFIDENTIAL      FOR: BERNIE MADOFF      FROM: FRANK AVELLINO." Dubinsky Decl. Attach. B (Dubinsky A&B Rept.) at ¶¶ 110-111 and Figures 26-28; Griffin Decl. Ex. 34 (MADTBB03348258, 8312-8325, 8346-8354).

**RESPONSE**: **Disputed.** There is no testimony or evidence that Frank received copies of revised statements, or that he returned them to Madoff, along with the matching handwritten ledgers. There is no testimony or evidence of who delivered the envelope; why the envelope was delivered; what was in the envelope when it was delivered; whether the documents were ever removed and/or replaced; and whether the documents in the envelope today are the exact same documents which were in the envelope when it was delivered. See Response to Trustee's statement nos. 84 and 86. Object to the reliance on Dubinksy for these facts. See Response to Trustee's statement no. 8.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 97, nor provides any evidence to the contrary. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 97 but interpose an evidentiary objection to the

admissibility of Dubinsky's expert opinions which is unfounded and add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence.   These additional statements should be disregarded.   Trustee Statement ¶ 97 is not specifically controverted, and therefore, should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, Dubinsky's expert opinions are admissible.

98.     Dubinsky analyzed these handwritten ledgers prepared by Avellino and concluded they included all of the fraudulent adjustments and modifications BLMIS made retroactively to A&B's original customer statements.  Dubinsky Decl. Attach. B (Dubinsky A&B Rept.) at ¶¶ 149-159.

**RESPONSE**: **Disputed.**  Object to the reliance on Dubinsky for these facts and opinion. See Response to Trustee's statement nos. 8 and 38. Frank only admitted to his handwriting on the ledgers; he had no knowledge of or participation in any alleged modifications made by BLMIS. See Response to Trustee's statement nos. 84, 86 and 96.  Additionally, see Response to Trustee's statement nos. 74, 81 and 83 relating to Madoff's testimony contrary to this statement.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 98, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 98 but interpose an evidentiary objection to the admissibility of Dubinsky's expert opinions which is unfounded and add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence.   These additional statements should be disregarded.   Trustee Statement ¶ 98 is not specifically controverted, and therefore, should be deemed admitted under Local Rule 7056-1(d).

The Trustee further objects to the Defendants' reliance on Madoff's testimony as it is inadmissible hearsay and untrustworthy.

Nonetheless, Dubinsky's expert opinions are admissible.

99.    For example, the handwritten A&B ledgers matched the customer statements that BLMIS had fraudulently revised so that the total balance of one of A&B's IA Business accounts had increased by nearly *$240 million* from what had been on its original customer statements. Dubinsky Decl. Attach. B (Dubinsky A&B Rept.) at ¶ 154 and Fig. 57.

**RESPONSE**: **Disputed.**  Object to the reliance on Dubinsky for these facts. See Response to Trustee's statement no. 8. See also Response to Trustee's statement nos. 84, 86 and 96.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 99, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 99 but interpose an evidentiary objection to the admissibility of Dubinsky's expert opinions which is unfounded.  Trustee Statement ¶ 99 is not specifically controverted, and therefore, should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, Dubinsky's expert opinions are admissible.

The Trustee further refers the Court to the Trustee's Reply at ¶¶ 84, 86, and 96.

100.    In another example, the handwritten ledgers included entries as of December 31, 1989 for A&B account 1A0053 – but that account was the one for which BLMIS had retroactively created three years of statements in 1992 that had never existed before.  Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 155-156; and ¶¶ 114-127.

**RESPONSE: Disputed.**  See Response to Trustee's statement no. 99.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 100, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 100.  Trustee Statement ¶ 100 is not specifically controverted, and therefore, should be deemed admitted under Local Rule 7056-1(d).

The Trustee further refers the Court to the Trustee's Reply at ¶ 99.

> **3.    To End the SEC Investigation, Madoff Had to Pay Out Nearly $460
> Million to Avellino and Bienes, But Had to Borrow Hundreds of
> Millions of Dollars to Do So**

101.    To end the SEC's investigation and lawsuit against them, the SEC ordered Avellino

and Bienes to close their IA Business accounts and pay back their investors under SEC scrutiny.

Griffin Decl. Ex. 15 (DiPascali Tr.) at 4700:8 – 4703:6; Dubinsky Decl. Attach. B (Dubinsky A&B

Rept.) at ¶ 162.

**RESPONSE**: **Disputed.** The SEC investigation was resolved by a settlement reached

between the parties. Woodfield Decl. Ex. 15 (Consents by Frank and Michael).   The statement

refers to individuals rather than A & B, and monies were returned by BLMIS, not A & B, to the

lenders, not investors.   See Response to Trustee's statement no. 53. Object to the reliance on

Dubinsky for these facts See Response to Trustee's statement no. 8. Object to reference to IA

Business accounts.   See Response to Trustee's statement no. 29.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee

Statement ¶ 101, nor provides any evidence to the contrary.   Defendants do not specifically rebut

the factual statement in Trustee Statement ¶ 101 but interpose an evidentiary objection to the

admissibility of Dubinsky's expert opinions which is unfounded and add extraneous statements

that are not responsive to the stated fact, are argumentative, and are not supported by competent

evidence.   These additional statements should be disregarded.   Further, Defendants' quibble with

the Trustee's phraseology does not controvert any of the facts in Trustee Statement ¶ 101.

Accordingly, Trustee Statement ¶ 101 is not specifically controverted, and therefore, should be

deemed admitted under Local Rule 7056-1(d).

Nonetheless, Dubinsky's expert opinions are admissible.

102.    Because the IA Business was a fraud, BLMIS did not have any securities to

liquidate in order to pay out the amounts owed to A&B's clients.   Griffin Decl. Ex. 15 (DiPascali

Tr.) at 4700:8 – 4701:6; *see generally* Dubinsky Decl. Attach. A (Dubinsky Global Rept.) at ¶¶ 83-324; *see also* ¶¶ 35, 113, 115, 127, 134, 140, 147.163-164.

**RESPONSE**: **Disputed.** A & B did not have accounts at the "IA Business", and an investment advisor is not licensed to make trades. See Response to Trustee's statement no. 29. Also, the "IA Business" was only one of the operations of BLMIS and Trustee admits that other divisions made trades so securities existed to liquidate. Woodfield Decl. Ex 1 (Madoff Dep. Dec. 20, 2016) at 54:18-25; 55:1-25; 56:1-19; 58:10-25); Fortgang Decl., Ex. A, Fortgang Report, at 6, 8. There were sufficient funds to pay for the accounts, except if they had arbitrage positions that were not completed yet or back from the transfer agents. Rather than unwinding them, Madoff had other customers, who were big clients, purchase their positions. Woodfield Decl., Ex. 12 (Madoff Dep. Oct. 19, 2015) at 64:5-16; 66:5-14; Woodfield Decl., Ex. 10 (Madoff Dep. Nov. 13, 2019) atR33:24-25; 34:1-24.) There is no evidence that Frank or Michael (or A & B) had any knowledge of where BLMIS got the money to pay back the lenders. Woodfield Decl. Ex. 8 (Michael Dep.) at 33:19-21; Woodfield Decl., Ex. 13 (Frank Dep. Sept. 9, 2015) at 76:19-25; 77:1-18.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 102, nor specifically rebuts the factual statement in Trustee Statement ¶ 102. Defendants' response to ¶ 102 adds extraneous statements that are not responsive to the stated fact, contain legal conclusions, are argumentative, and not supported by competent evidence. These additional statements should be disregarded. Trustee Statement ¶ 102 is not specifically controverted and therefore should be deemed admitted under Local Rule 7056-1(d).

The Trustee further objects to the Defendants' reliance on the Fortgang Reports because the opinions therein do not create disputed issues of fact and they are inadmissible as unreliable and untrustworthy.

The Trustee further objects to the Defendants' reliance on Madoff's testimony which is impermissible expert testimony, inadmissible hearsay, and untrustworthy.

Nonetheless, it is undisputed that Madoff was operating a Ponzi scheme through his IA Business, Defendants were customers of the IA Business (*see* Trustee's Reply at Statement ¶ 29), and the trades in the accounts for the Defendants, including for the Summary Judgment Entity Defendants, were fictitious (*see* Trustee's Reply at Statement ¶ 19).

103.    Collura reviewed BLMIS's available books and records and concluded that the IA Business did not have sufficient cash to payout the $457 million A&B owed to its investors. Collura Decl. Attach. B (Collura A&B Report) at ¶¶ 15-28, 33, 35-36, Figs. 1-7 and Ex. 3.

**RESPONSE**: **Disputed.** See Response to Trustee's statement no. 102. A & B had lenders; not investors. See Response to Trustee's Statement of Facts at 55.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 103, nor provides any evidence to the contrary. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 103 but object to the Trustee's phraseology. Defendants' quibble with the Trustee's phraseology does not controvert any of the facts in Trustee Statement ¶ 103. Accordingly, Trustee Statement ¶ 103 is not specifically controverted and therefore should be deemed admitted under Local Rule 7056-1(d).

The Trustee further refers the Court to the Trustee's Reply at ¶ 102.

104.    From her analyses, Collura concluded that, for the majority of time from 1988 until October 1992, the average available balance of the IA Business bank accounts was *overdrawn* – meaning that the accounts had a *negative* balance, or were only slightly above zero.  *Id.*

**RESPONSE**: **Disputed.**  See Response to Trustee's statement no. 102.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 104, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 104.   Trustee Statement ¶ 104 is not specifically controverted, and therefore, should be deemed admitted under Local Rule 7056-1(d).

The Trustee further refers the Court to the Trustee's Reply at ¶ 102.

105.    Collura identified the primary sources of funds that BLMIS used to make the payout to Avellino and Bienes as loans BLMIS obtained from financial institutions illegitimately collateralized with securities belonging to other customers and not the IA Business, and a few large cash deposits from certain IA customers.  Collura Decl. Attach. B (Collura A&B Report) at ¶¶ 34, 39, 42, 44-48, 51, Fig. 8, and Exs. 4.1, 4.2, 4.3, 4.4, and 4.5; Griffin Decl. Ex. 15 (DiPascali Tr.) at 4700:8-4701:1; 4705:18 – 4709:8.

**RESPONSE**: **Disputed.**  See Response to Trustee's statement no. 102.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 105, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 105.   Trustee Statement ¶ 105 is not specifically controverted, and therefore, should be deemed admitted under Local Rule 7056-1(d).

The Trustee further refers the Court to the Trustee's Reply at ¶ 102.

D.    **Madoff Compensated Avellino and Bienes for Referring their Investors Directly to BLMIS**

106.    After the SEC closed its investigation, Avellino and Bienes advised their clients to open customer accounts directly with BLMIS, providing an influx of customers and funds to the IA Business.  Griffin Decl. Ex. 21 (Avellino Dep. Vol. 1) at 244:12 – 245:12; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶ 165 and Fig. 60; Collura Decl. Attach. B (Collura A&B Report) at ¶ 62 and Fig. 13.

**RESPONSE**: **Disputed.**   For those A&B clients who sought to invest with BLMIS; Madoff advised Frank and Michael to refer them to Madoff directly.  Griffin Decl., Ex. 21 at 244:12-25; 245:1-12.  Object to the reliance on Dubinksy (and Collura) for these facts.   See Response to Trustee's statement no. 8.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 106, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 106 but interpose evidentiary objections as to the admissibility of Dubinsky's expert opinions, as well as Collura's expert opinions, which are unfounded.  Defendants also add an extraneous statement that is not responsive to the stated fact, is argumentative, and is not supported by competent evidence.  This additional statement should be disregarded.   Accordingly, Trustee Statement ¶ 106 is not specifically controverted, and therefore, should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, Dubinsky's expert opinions are admissible.

107.    The IA Business opened nearly 1100 new accounts for former A&B investors at the end of 1992 into 1993.  Griffin Decl. Ex. 29 (Crupi Dep.) at 168:23 – 169:8; Griffin Decl. Ex. 15 (DiPascali Tr.) at 4717:17 – 4723:6; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶ 174 and Fig. 62.

**RESPONSE**: **Disputed.**  They were former A & B lenders; not investors.  See Response to Trustee's statement no. 55.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 107, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 107, but "dispute" the Trustee's phraseology. Defendants' quibble with the Trustee's phraseology does not controvert any of the facts in Trustee Statement ¶ 107.  Trustee Statement ¶ 107 is not specifically controverted, and therefore, should be deemed admitted under Local Rule 7056-1(d).

108.    From November 1992 through 1993, Avellino, Bienes, and their former investors collectively deposited more than $500 million with BLMIS, which constituted nearly 42.25% of all customer deposits for the IA Business during that time.  Collura Decl. Attach. B (Collura A&B Report) at ¶ 62 and Ex. 6.

**RESPONSE**: **Disputed.**  Defendants did not invest in the "IA Business", Bienes did not invest directly at all and A & B (not Frank and Michael) had former lenders, not investors.  See Response to Trustee's statement nos. 29, 53 and 55.  Woodfield Decl., Ex. 8 (Michael Dep.) at 36:21-38:3.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 108, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 108 but add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. These additional statements should be disregarded.  Further, Defendants' quibble with the Trustee's phraseology does not controvert any of the facts in Trustee Statement ¶ 108.

Accordingly, Trustee Statement ¶ 108 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, in the Counterclaims of the Post-1993 Entities, they admit that BLMIS acted as their "investment advisor" and in their Answers, they acknowledge their "IA accounts." See Trustee's Reply Memo at I.A. Defendants further concede that "At most the Trustee has established that the BLMIS IA Business was a Ponzi scheme." Opp. Mem. at 11. Further, it is undisputed that Defendants were customers of the IA Business (*see* Trustee's Reply at Statement ¶ 29), and the trades in the accounts for the Defendants, including for the Summary Judgment Entity Defendants, were fictitious (*see* Trustee's Reply at Statement ¶ 19).

109.    Avellino and Bienes also created a series of new entities to continue profiting from the IA Business (the "Post-1993 Entities"). (Bienes Frontline Interview) at 10-05421-BIENES_006329-631; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 168-169; Griffin Decl. Ex. 21 (Avellino Dep. Vol. 1) at 83:5 -88:2 and 236:2 – 237:1.

**RESPONSE**: **Disputed.** Undisputed that Frank and Michael created partnerships to invest their family money with BLMIS but dispute that Defendants invested in the "IA Business". See Response to Trustee's statement no. 29. Object to the admissibility of Michael's Frontline Interview. See response to Trustee's statement no. 48.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 109. Defendants' additional response neither raises a genuine dispute with Trustee Statement ¶ 109, nor provides any evidence to the contrary. Defendants interpose an evidentiary objection to the admissibility of the Bienes Frontline Interview which is unfounded and "dispute" the Trustee's phraseology. Defendants' quibble with the Trustee's phraseology does not controvert any of the

fact in Trustee Statement ¶ 109.    Accordingly, Trustee Statement ¶ 109 is not specifically controverted, and therefore, should be deemed admitted under Local Rule 7056-1(d).

See also Griffin Supp. Decl. Ex. 67 (Bienes P&S Dep.) at 193:3-10.

Nonetheless, it is undisputed that Defendants were customers of the IA Business (see Trustee's Reply at Statement ¶ 29), and the Bienes Frontline Interview is authentic and admissible.

110.    Avellino, Bienes, and their wives opened seven new IA Business accounts in the names of their new entities (the "Post-1993 Entity Accounts"), which included the accounts for the Summary Judgment Entity Defendants.    Griffin Decl. Ex. 24 (Bienes Frontline Interview) at 10-05421-BIENES_006329-631; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 168-169; Griffin Decl. Ex. 21 (Avellino Dep. Vol. 1) at 83:5 -88:2 and 236:2 – 237:1.

**RESPONSE**: **Disputed.**    All four individuals did not open seven new accounts; not all accounts were opened by these individuals.    The new entities did not invest in the "IA Business".    See Response to Trustee's statement no. 29. Object to the reliance on Dubinsky for these facts. See Response to Trustee's statement no. 8. Object to the admissibility of Michael's Frontline Interview.    See response to Trustee's statement no. 48.    Griffin Decl. Ex. 21 at 236:6-10; 237: 19-238:11.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 110, nor provides any evidence to the contrary.    Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 110 but interpose evidentiary objections to the admissibility of Dubinsky's expert opinions and the Bienes Frontline Interview which are unfounded and "dispute" the Trustee's phraseology.    Defendants' quibble with the Trustee's phraseology does not controvert any of the fact in Trustee Statement ¶ 110.    Accordingly, Trustee

Statement ¶ 110 is not specifically controverted, and therefore, should be deemed admitted under

Local Rule 7056-1(d).

Nonetheless, in the Counterclaims of the Post-1993 Entities, they admit that BLMIS acted

as their "investment advisor" and in their Answers, they acknowledge their "IA accounts." Trustee

Reply Memo at I.A. Further, it is undisputed that Defendants were customers of the IA Business

(*see* Trustee's Reply at Statement ¶ 29), the trades in the accounts for the Defendants, including

for the Summary Judgment Entity Defendants, were fictitious (*see* Trustee's Reply at Statement ¶

19), Dubinsky's expert opinions are admissible, and the Bienes Frontline Interview is authentic

and admissible.

1.     **Madoff Agreed to Provide Commissions and Guaranteed Rates of Return to Avellino and Bienes and Did So Through the Schtupping Process**

111.     In exchange for referring their former clients back to invest directly with BLMIS

in 1993, Madoff agreed to provide annual commissions to Avellino and Bienes that included a

fixed percentage of the total amount of former investor cash they successfully referred to BLMIS

in 1992, and a guaranteed rate of return in the accounts of their newly formed entities. Dubinsky

Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 170-172; Griffin Decl. Ex. 15 (DiPascali Tr.) at

4885:25 – 4887:5, 5776:9-5776:23.

**RESPONSE: Disputed.** A & B's former lenders asked to invest in BLMIS, and Madoff

told Avellino and Bienes to refer them directly to him. See Response to Trustee's statement no.

106. There was no "guaranteed" rate of return. See Response to Trustee's statement to 62. Object

to reliance on Dubinsky as to these facts. See Response to Trustee's statement no. 8.

**TRUSTEE'S REPLY:** Defendants' partial dispute of Trustee Statement ¶ 111 does not

create an issue of fact that would preclude summary judgment for the Trustee. Further, the

remaining facts in Trustee Statement ¶ 111 are not specifically controverted as required by Local

Rule 7056-1. Defendants add extraneous facts that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. These additional statements should be disregarded. Accordingly, Trustee Statement ¶ 111 is not specifically controverted and therefore should be deemed admitted under Local Rule 7056-1(d).

The Trustee further refers the Court to the Trustee's Reply at ¶ 62.

112. The annual commissions and guaranteed rates of return Madoff promised to Avellino and Bienes were not paid in cash. Rather, Madoff delivered on his promises by manufacturing additional fake trades in the Post 1993 Entity Accounts – a process DiPascali contemporaneously dubbed as "schtupping" the accounts. Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 171, 179 – 206; Griffin Decl. Ex. 15 (DiPascali Tr.) at 4889:11 – 4890:21.

**RESPONSE: Disputed.** Undisputed that payments were made through additional trades in their accounts, but such trades were not "fake". Fortgang Decl. Ex A (Report) at 4, 6 and 7. Object to reliance on Dubinsky because he is not qualified to provide such opinions. See Response to Trustee's statement no. 38. Disputed there were guaranteed returns. See Response to Trustee's statement no. 62.

**TRUSTEE'S REPLY:** Defendants admit part of the factual statement in Trustee Statement ¶ 112 but add argumentative statements that are not supported by competent evidence. Defendants also interpose an evidentiary objection to the admissibility of Dubinsky's expert opinions which is unfounded. Accordingly, Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 112, nor provides any evidence to the contrary. Trustee Statement ¶ 112 is therefore not specifically controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Further, the Trustee objects to reliance on the Fortgang Reports because the opinions contained therein do not create disputed issues of fact and are inadmissible as unreliable and untrustworthy.

Nonetheless, Dubinsky's expert opinions are admissible.

The Trustee further directs the court to the Trustee's Reply at Statements ¶¶ 19, 29, 38, 39, and 62.

113.    BLMIS applied this "schtup" process starting as early as 1994.  Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶ 195.

**RESPONSE**: **Undisputed.** But dispute the reliance on Dubinsky for these facts. See Response to Trustee's statement no. 8.

**TRUSTEE'S REPLY:**  Defendants admit the factual statement in Trustee Statement ¶ 113 but interpose an evidentiary objection to the admissibility of Dubinsky's expert opinions.  This objection neither raises a genuine dispute with the fact asserted in Trustee Statement ¶ 113, nor provides any evidence to the contrary.  Accordingly, Trustee Statement ¶ 113 should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, Dubinsky's expert opinions are admissible.

114.    Avellino admitted that Madoff did not provide the promised remuneration through checks or cash, but rather "through transactions that Madoff created in my personal accounts, our personal accounts."  Griffin Decl. Ex. 21 (Avellino Dep. Vol. 1) at 253:9-14; Griffin Decl. Ex. 22 (Avellino Dep. Vol. 2) at 270:1-271:20; 275:22-276:2; Griffin Decl. Ex. 23 (Defts.' Am. Resp. to Req. for Admission) at ¶ 50.

**RESPONSE**: **Disputed.**   It infers that the transactions were fake, and that Madoff promised anything, when, in fact, the transactions were real.  See Response to Trustee's statement nos. 62 and 112.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 114, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 114 but object based on so-called inferred facts and not asserted facts.  This objection is not a sufficient response or denial.  Defendants also adds an extraneous statement that is not responsive to the stated fact, is argumentative, and is not supported by competent evidence.  This additional statement should be disregarded.  Accordingly, Trustee Statement ¶ 114 is not specifically controverted, and therefore, should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, it is undisputed that Defendants were customers of the IA Business (*see* Trustee's Reply at Statement ¶ 29), the trades in the accounts for the Defendants, including for the Summary Judgment Entity Defendants, were fictitious (*see* Trustee's Reply at Statement ¶ 19).

115.    Avellino monitored the returns in the Post-1993 Entity Accounts, and would advise DiPascali when the commissions or the rates of return fell "short" of the amount Madoff promised. Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 207-218; Griffin Decl. Ex. 35 (Trustee Dep. Ex. 51).

**RESPONSE**: **Undisputed.**  But object to the reliance on Dubinsky for these facts.  See Response to Trustee's statement no. 8 and dispute that Madoff "promised" anything.  See Response to Trustee's Statement at 62.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 115. Defendants interpose an evidentiary objection to the admissibility of Dubinsky's expert opinions

which is unfounded and quibble with the Trustee's phraseology.  These objections neither raise a

genuine dispute with the fact asserted in Trustee Statement ¶ 115, nor provide any evidence to the

contrary.   Accordingly, Trustee Statement ¶ 115 is not specifically controverted and should be

deemed admitted under Local Rule 7056-1(d).

Nonetheless, Dubinsky's expert opinions are admissible.

116.   For example, in a December 1998 letter to DiPascali, Avellino wrote:

Yes, it's that time of year again.  Just a note to touch base about the accounts.  Please
make necessary trades in all of the accounts:  1. Grosvenor Partners, Ltd., 2 May
Fair Ventures and Mayfair Ventures Pension Plan.  I believe the total base of the
three accounts will be enough to even up the balances due.  My calculations show
that BLM was short (for 12/31/97) approx. $2,500,000.

Griffin Decl. Ex. 35 (Trustee Dep. Ex. 51) [emphasis in original].

**RESPONSE**: **Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 116.

Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

117.   In analyzing the schtup transactions in the Post-1993 Entity Accounts, Dubinsky

determined that between 1994 and 2007, Madoff added fictitious trades totaling approximately

$60 million to these accounts using the schtupping process.  Dubinsky Decl. Attach. B (Dubinsky

A&B Report) at ¶ 219 and Fig. 88.

**RESPONSE**: **Disputed.**  See Response to Trustee's statement no. 112.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee

Statement ¶ 117, nor provides any evidence to the contrary.  Defendants do not specifically rebut

the factual statement in Trustee Statement ¶ 117.  Trustee Statement ¶ 117 is therefore not

specifically controverted, and consequently, should be deemed admitted under Local Rule 7056-

1(d).

The Trustee refers the Court to Trustee's Reply at ¶ 112.

118.    Dubinsky opined that "commissions paid to investment advisor representatives are paid in cash, not in trades made on their behalf."  Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶ 184.

**RESPONSE**: **Disputed.**  Undisputed that Dubinsky so opined but dispute his ability to provide expert opinions regarding the securities industry.  See Response to Trustee's statement no. 38. Further, dispute that Defendants' relationship was with an "investment advisor."  See Response to Trustee's statement no. 29.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 118. Defendants interpose an evidentiary objection as to the admissibility of Dubinsky's expert opinions and extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence.  Defendants' objections do not raise a genuine dispute with Trustee Statement ¶ 118, nor provide any evidence to the contrary.  Trustee Statement ¶ 118 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, in the Counterclaims of the Post-1993 Entities, they admit that BLMIS acted as their "investment advisor" and in their Answers, they acknowledge their "IA accounts." Further, it is undisputed that Defendants were customers of the IA Business (*see* Trustee's Reply at Statement ¶ 29), and Dubinsky's expert opinions are admissible.

119.    Like the other fraudulent transactions in all the IA Business accounts, none of these transactions took place, and schtupping was, as Dubinsky concluded, "an integral part of the fraud."  Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶ 195.

**RESPONSE**: **Disputed**.  Avellino Defendants did not have accounts with the "IA Business." See Response to Trustee's statement no. 29. Further, the trades in their accounts were

real. See Fortgang Decl. Ex A (Report) at 4, 6 and 7. Object to Dubinsky's qualifications for providing such opinions. See Response to Trustee's statement no. 38.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 119, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 119 but add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. These additional statements should be disregarded.  Defendants also interpose an evidentiary objection to the admissibility of Dubinsky's expert opinions which is unfounded and neither raises a genuine dispute with Trustee Statement ¶ 119 nor provides any evidence to the contrary. Accordingly, Trustee Statement ¶ 119 is not specifically controverted and should be deemed admitted under Local Rule 7056-1(d).

The Trustee further objects to the Defendants' reliance on the Fortgang Reports because the opinions contained therein do not create disputed issues of fact and are inadmissible as unreliable and untrustworthy.

Nonetheless, in the Counterclaims of the Post-1993 Entities, they admit that BLMIS acted as their "investment advisor" and in their Answers, they acknowledge their "IA accounts." Further, it is undisputed that Defendants were customers of the IA Business (*see* Trustee's Reply at Statement ¶ 29), the trades in the accounts for the Defendants, including for the Summary Judgment Entity Defendants, were fictitious (*see* Trustee's Reply at Statement ¶ 19), and Dubinsky's expert opinions are admissible.

E.     **Madoff Used the A&B "Pooled Account" Arrangement as his Model for Future Feeder Funds**

120.     After closing out the A&B accounts, Madoff needed a new source of continuous funds to sustain his Ponzi scheme. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 348-349, Figure 53; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 32, 173, n.195.

**RESPONSE**: **Disputed.** Defendants object to reliance on Dubinsky for these facts, and it includes improper conclusions which Dubinsky could not know or have personal knowledge of. See Response to Trustee's statement no. 8. Dispute to the extent that implies that the Defendants would have had any information regarding Madoff's financial condition or needs; there is no evidence that they had such knowledge, and they did not. Dianne Decl., at ¶4; Woodfield Decl. Ex. 8 (Michael Dep.) at 33:19-21; Woodfield Decl. Ex. 13 (Frank Dep.) at 76:19-25; 77:1-18.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 120, nor provides any evidence to the contrary. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 120 but add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. These additional statements should be disregarded. Defendants also interpose an evidentiary objection to the admissibility of Dubinsky's expert opinions which is unfounded and neither raises a genuine dispute with Trustee Statement ¶ 120 nor provides any evidence to the contrary. Further, Defendants' objection based on so-called implied facts and not asserted facts is not a sufficient response or denial. Accordingly, Trustee Statement ¶ 120 is not specifically controverted and should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, Defendants concede that, "At most the Trustee has established that the BLMIS IA Business was a Ponzi scheme." Opp. Mem. at 11. Further, it is undisputed that Defendants were customers of the IA Business (*see* Trustee's Reply to Statement ¶ 29), the trades

in the accounts for the Defendants, including for the Summary Judgment Entity Defendants, were fictitious (*see* Trustee's Reply to Statement ¶ 19), and Dubinsky's expert opinions are admissible.

121.     Since Madoff had found success with the A&B feeder fund model, he transitioned to implementing this infrastructure on a much larger scale with other institutional feeder funds. Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 32, 173, n.195; Collura Decl. Attach. B. (Collura A&B Report) at ¶¶ 58, 63, Exs. 5 and 6.

**RESPONSE**: **Disputed.** Defendants object to reliance on Dubinsky and Collura for these facts, and it includes improper conclusions which neither Dubinsky nor Collura could have known or had personal knowledge of. See Response to Trustee's statement no. 8 & 122.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 121, nor provides any evidence to the contrary. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 121 but interpose evidentiary objections as to the admissibility of Dubinsky's expert opinions, as well as Collura's expert opinions, which are unfounded. Accordingly, Trustee Statement ¶ 121 is not specifically controverted and should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, Dubinsky's expert opinions are admissible.

122.     For example, in 1998 alone, the deposits by these feeder funds exceeded $1.6 billion and represented approximately 61% of all cash deposits into BLMIS. Collura Decl. Attach. B. (Collura A&B Report) at ¶ 63, Figures 11 and 14, Ex. 6.

**RESPONSE**: **Disputed.** Defendants object to reliance on Collura for these facts, and it includes improper conclusions which Collura could not know or have personal knowledge of. See Response to Trustee's statement no. 8.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 122, nor provides any evidence to the contrary. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 122 but interpose an evidentiary objection as to the admissibility of Collura's expert opinions which is unfounded. Accordingly, Trustee Statement ¶ 122 is not specifically controverted and should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, the Trustee's motion relies on admissible evidence.

123.    This trajectory continued to escalate throughout the 2000s, and in 2007, these feeder funds deposited over $5.5 billion in cash deposits to BLMIS, which amounted to nearly 77% of total cash deposits. Collura Decl. Attach. B. (Collura A&B Report) at ¶ 63, Figures 11 and 15, Ex. 6; *see also* Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶ 173, n.195.

**RESPONSE**: **Disputed.** Defendants object to reliance on Dubinsky for these facts, and it includes improper conclusions which neither Dubinsky nor Collura could have known or have personal knowledge of. See Response to Trustee's statement no. 8.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 123, nor provides any evidence to the contrary. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 123 but interpose evidentiary objections as to the admissibility of Dubinsky's expert opinions, as well as Collura's expert opinions, which are unfounded. Accordingly, Trustee Statement ¶ 123 is not specifically controverted and should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, Dubinsky's expert opinions are admissible.

## VI.    Madoff Was Operating a Ponzi Scheme

### A.    BLMIS Did Not Engage in the Trades on Customers' Statements

124.    Customers of the IA Business would deposit cash with BLMIS, and Madoff promised to invest those funds pursuant to certain investment strategies, but as the Trustee's

certified fraud examiner concluded, from at least the 1970s, the IA Business did not engage in the securities transactions on customer statements. *See generally* Dubinsky Decl. Attach. A (Dubinsky Global Report) at Section VI.A.

**RESPONSE**: **Disputed.** The Avellino Defendants did not invest in "IA Business", See Response to Trustee's statement no. 29. Further, Dubinsky lacks the requisite expertise to opine regarding the securities industry. See Response to Trustee's statement no. 38. The trades in the Avellino Defendants' accounts were real. See Fortgang Decl. Ex A (Report) at 4, 6 and 7. See Response to Trustee's statement no. 19.

**TRUSTEE REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 124, nor provides any evidence to the contrary. Defendants' evidentiary objections are wholly unrelated to the substance of the fact in Trustee Statement ¶ 124. Reliance on Fortgang does not controvert this fact because Fortgang's report does not address the fact stated in Trustee Statement ¶ 124. Trustee Statement ¶ 124 is therefore not specifically controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, Defendants concede that "At most, the Trustee has established that the BLMIS IA Business was a Ponzi scheme." Opp. Mem. at 11. Further, it is undisputed that Defendants were customers of the IA Business (*see* Trustee's Reply to Statement ¶ 29), the trades in the accounts for the Defendants, including for the Summary Judgment Entity Defendants, were fictitious (*see* Trustee's Reply to Statement ¶ 19), and Dubinsky's expert opinions are admissible.

### 1.    Madoff Did Not Execute the Convertible Arbitrage Transactions

125.    Between the 1970s and the 1990s, Madoff purported to trade for his IA Business customers pursuant to a convertible arbitrage investment strategy. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 88; Griffin Decl. Ex. 15 (DiPascali Tr.) at 4542:21-4543:10.

**RESPONSE**: **Disputed.** Avellino Defendants did not have accounts in the IA Business. See Response to Trustee's statement no. 29. Object to reliance on Dubinsky for these facts or any for opinions relating to securities. See Response to Trustee's statement nos. 8 and 38.

**TRUSTEE REPLY**: Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 125 but add an extraneous statement that is not responsive to the stated fact, is argumentative, and is not supported by competent evidence. This additional statement should be disregarded. Defendants also interpose an evidentiary objection which is unfounded. This fact is therefore not specifically controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, in the Counterclaims of the Post-1993 Entities, they admit that BLMIS acted as their "investment advisor" and in their Answers, they acknowledge their "IA accounts." Defendants further concede that "At most the Trustee has established that the BLMIS IA Business was a Ponzi scheme." Opp. Mem. at 11. Further, it is undisputed that Defendants were customers of the IA Business (*see* Trustee's Reply to Statement ¶ 29), the trades in the accounts for the Defendants, including for the Summary Judgment Entity Defendants, were fictitious (*see* Trustee's Reply to Statement ¶ 19), and Dubinsky's expert opinions are admissible.

126.    The "strategy" involved convertible securities, which are fixed income (such as bonds) and/or preferred equity instruments (such as convertible preferred shares) that permit the purchaser to convert that security to shares of stock under pre-specified conditions and timeframes set forth by the issuer. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 83-84; Griffin Decl. Ex. 27 (Bongiorno Dep.) at 20:18-21:1; Griffin Decl. Ex. 15 (DiPascali Tr.) at 4543:11-4544:10.

**RESPONSE**: **Disputed.** Defendants did not have accounts in the IA Business. See Response to Trustee's statement no. 29. Object to reliance on Dubinsky for such facts or for any opinions relating to securities. See Response to Trustee's statement nos. 8 and 38.

**TRUSTEE REPLY**: Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 126 but add an extraneous statement that is not responsive to the stated fact, is argumentative, and is not supported by competent evidence. This additional statement should be disregarded. Defendants also interpose an evidentiary objection which is unfounded. This fact is therefore not specifically controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, in the Counterclaims of the Post-1993 Entities, they admit that BLMIS acted as their "investment advisor" and in their Answers, they acknowledge their "IA accounts." Defendants further concede that "At most, the Trustee has established that the BLMIS IA Business was a Ponzi scheme." Opp. Mem. at 11.

127.    Dubinsky analyzed BLMIS's books and records, third-party market data, and the purported convertible arbitrage transactions that appeared on IA Business customer statements between November 1978 and July 1992 and concluded that Madoff did not execute any of the trades for his IA Business customers pursuant to this strategy. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 90-146; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 35-52, 57-62, 63-65.

**RESPONSE: Disputed.** The Defendants did not have "IA Business" accounts. See Response to Trustee's statement 29. Object to reliance on Dubinsky for such facts or for any opinions relating to securities. See Response to Trustee's statement nos. 8 and 38.

**TRUSTEE REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 127, nor provides any evidence to the contrary. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 127 but interpose an evidentiary objection and add extraneous statements that are not responsive to the stated fact. This fact is therefore not specifically controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, in the Counterclaims of the Post-1993 Entities, they admit that BLMIS acted as their "investment advisor" and in their Answers, they acknowledge their "IA accounts." Griffin Decl., Ex. 45.

128.    Madoff instead promised specific rates of returns to his IA Business customers, and to meet those targeted, predetermined returns, he directed his employees to manufacture fake trades using historical market data. Griffin Decl. Ex. 27 (Bongiorno Dep.) at 53:25-54:3; Griffin Decl. Ex. 29 (Crupi Dep.) at 43:1-10; 45:5-11; Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 90-93 and Figure 1; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 35; 39.

**RESPONSE: Disputed.**    The Avellino Defendants did not have "IA Business" accounts. See Response to Trustee's statement no. 29. Object to reliance on Dubinsky for such facts or for any opinions relating to securities. See Response to Trustee's statement nos. 8 and 38. No guarantees or promises made by Madoff. See Response to Trustee's statement no. 62. Employees would not have knowledge of the fraud and cannot testify through such double hearsay. Woodfield Decl., Ex. 10 (Madoff Dep. Nov. 13, 2019) at 60:7-20; 63:9-25; 64:1-10. See Response to Trustee's Statement no. 74.

**TRUSTEE'S REPLY**: Defendants' partial objection to Trustee Statement ¶ 128 does not create an issue of fact that would preclude summary judgment for the Trustee. Further, the Trustee

refers the Court to the Defendants' admissions in their Amended Responses to the Trustee's Request for Admission. The remainder of Trustee Statement ¶ 128 is uncontroverted and should be deemed admitted under Local Rule 7056-1(d). Moreover, Defendants' quibble with the Trustee's phraseology and their evidentiary objections do not controvert any of the facts in Trustee Statement ¶ 128. Dubinsky's expert opinions are admissible.

Nevertheless, in the Counterclaims of the Post-1993 Entities, they admit that BLMIS acted as their "investment advisor" and in their Answers, they acknowledge their "IA accounts." Moreover, the Trustee objects to the Defendants' reliance on Madoff's testimony which is impermissible expert testimony and inadmissible hearsay, and reliance on the Fortgang Reports as inadmissible.

In any event, Defendants' proffer of Madoff's testimony and reliance on the Fortgang Reports do not raise a genuine dispute with Trustee Statement ¶ 128 because the Trustee has put forth substantial evidence to the contrary. Bongiorno, Crupi, and DiPascali testified that Madoff promised guaranteed rates of returns to his customers, including to Avellino and Bienes. *See* Trustee's Reply to Statement ¶ 62.

Further, the IA Business employees testified extensively about their role in manufacturing the fictitious securities transactions for IA Business customers. For example, Kugel testified that by 1977 he knew definitively that those trades reported on account statements for customers of the IA Business were fake. Kugel Tr. at 1804:9-1817:8, 1860:25-1861:11.

Bongiorno, Crupi, Kugel, and DiPascali detailed the internal procedures they used for creating the fake trades that appeared on the customer statements for each of the strategies purportedly executed by Madoff. See Trustee 56.1 Statement at 29-30, 134, 25-27, 196, 284.

Even Madoff, upon whom the Defendants rely, testified that DiPascali primarily handled the investment advisory side of the business, including the accounts of former A&B clients and the Summary Judgment Entity Defendants.  Madoff A&B Deposition at 11:1-13, 31:23-32:21, 40:14-41:2, 52:21:53:1, 54:22-55:2, 59:20-60:6 and Defendants' Ex. 6 (Strattham January 2008 Statement); Madoff P&S Deposition at 57:1-7.  *See also Madoff P&S* Dep. at 214:16-19 (Madoff admitted that DiPascali was involved in the Ponzi scheme).

129.    These fake trades were always profitable, but the purported profits were not derived from contemporaneous market conditions, but rather from the specific rates of return Madoff dictated for each convertible arbitrage IA Business account.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 90-93; 96-97; 100; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 35; 39-41; 52.

**RESPONSE: Disputed.**  See Response to Trustee's statement no. 128.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 129, nor provides any evidence to the contrary.  Trustee Statement ¶ 129 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 128.

130.    BLMIS employees confirm the fictitious nature of these transactions and their role in inputting these transactions on the IA Business customer statements.  *See, e.g.*, Griffin Decl. Ex. 16 (Kugel Plea Allocution) at 32:1-14; Griffin Decl. Ex. 27 (Bongiorno Dep.) at 20:18-21:11; Griffin Decl. Ex. 29 (Crupi Dep.) at 25:1-22.

**RESPONSE: Disputed.**  The Avellino Defendants did not have "IA Business" accounts. See Response to Trustee's statement no. 29.  None of the employees would have known about the fraud.  See Response to Trustee's statement no. 128. BLMIS employees admitted that they did not

know about the fraud until after the fact. Griffin Decl., Ex. 27 (Bongiorno Dep.) at 211:1-5; Griffin

Decl., Ex. 29 (Crupi Dep.) at 15:24-16:18;16:21-25.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee

Statement ¶ 130, nor provides any evidence to the contrary.  Defendants do not specifically rebut

the factual statement in Trustee Statement ¶ 130 but add extraneous statements that are not

responsive to the stated fact, are argumentative, and are not supported by competent evidence.

These additional statements should be disregarded.  Defendants' reliance on testimony unrelated

to the substance of the fact in Trustee Statement ¶ 130 does not create a genuine issue of fact.

Accordingly, Trustee Statement ¶ 130 is not specifically controverted and should be deemed

admitted under Local Rule 7056-1(d).

Nevertheless, in the Counterclaims of the Post-1993 Entities, they admit that BLMIS acted

as their "investment advisor" and in their Answers, they acknowledge their "IA accounts."

The Trustee further refers the Court to Trustee's Reply to ¶¶ 29, 128.

131.    Kugel, BLMIS's head arbitrageur, in his plea allocution, admitted his role in

fabricating the convertible arbitrage transactions that appeared on the customer statements:

> I provided historical trade information to other BLMIS employees, which was used
> to create false, profitable trades in the Investment Advisory clients' accounts at
> BLMIS.  Specifically, beginning the early '70s, until the collapse of BLMIS in
> December 2008, I helped create fake, backdated trades.  I provided historical trade
> information – sorry – first to Annette Bongiorno, and later to Joanne Crupi, and
> others which enabled them to create fake trades that, when included on the account
> statements and trade confirmations of Investment Advisory clients, gave the
> appearance of profitable trading when in fact no trading had actually occurred.

Griffin Decl. Ex. 16 (Kugel Plea Allocution) at 32:1-12.

**RESPONSE: Disputed.**  See Response to Trustee's statement no. 29.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 131, nor provides any evidence to the contrary. Trustee Statement ¶ 131 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 29.

132.    Bongiorno and Crupi, the employees responsible for managing these accounts, testified at their depositions that they did not execute any of the convertible arbitrage transactions that appeared on the customer statements. Griffin Decl. Ex. 27 (Bongiorno Dep.) at. 20:18-21:11; 25:8-12; 44:2-46:2; 66:1-5; Griffin Decl. Ex. 29 (Crupi Dep.) at 24:1-14; 25:15-22; 27:6-9; 35:20-36:2; 57:9-23.

**RESPONSE: Disputed.** The Avellino Defendants did not have "IA Business" accounts. See Response to Trustee's statement no. 29. Also, neither Bongiorno nor Crupi held positions which would have involved executing trades. Griffin Decl. Ex. 29 (Crupi Dep.) at 10: 22-25; 11: 1-12; 15:5-8; Griffin Decl. Ex. 27 (Bongiorno Dep.) at 13:9-12; 15:7 16: 3-11; 25:8-12; 72:4-6; 10-14.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 132, nor provides any evidence to the contrary. Trustee Statement ¶ 132 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, it is undisputed that Bongiorno and Crupi managed the convertible arbitrage and buy and hold accounts and they testified that they used historical market data to manufacture the trades that appeared on the IA Business customer statements. *See, e.g.*, Griffin Decl. Ex. 29 (Crupi Dep.) at 79:12-80:5, 82-83:5; Griffin Decl. Ex. 27 (Bongiorno Dep.) at 54:18-23, 56:4-57:23, 72:16-73:10.

It is further undisputed that in the Counterclaims of the Post-1993 Entities, they admit that BLMIS acted as their "investment advisor" and in their Answers, they acknowledge their "IA accounts."

133.    Dubinsky detailed the step-by-step mechanical process the BLMIS employees used to reverse engineer the fake convertible arbitrage trades.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 89-146, Figures 1-23 and Exs. 1-10.

**RESPONSE: Disputed.**  The Avellino Defendants did not have "IA Business" accounts. See Response to Trustee's statement no. 29.  Additionally, object to reliance on Dubinsky for these facts or for opinions relating to securities.  See Response to Trustee's statement nos. 8 and 38.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 133, nor provides any evidence to the contrary.  Defendants do not rebut the factual statement in Trustee Statement ¶ 133 but interpose an evidentiary objection and add extraneous statements that are not responsive to the stated fact.  This fact is therefore not specifically controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

134.    Bongiorno and Crupi gave detailed testimony about the internal procedures used for creating the convertible arbitrage transactions, confirming Dubinsky's analysis.  Griffin Decl. Ex. 27 (Bongiorno Dep.) at 53:25-54:3; 81:6-10; Griffin Decl. Ex. 29 (Crupi Dep.) at. 43:1-45:11; 57:19-23; 60:3-6; 79:12-80:5; 82:2-83:5.

**RESPONSE: Disputed.**  The Avellino Defendants did not have "IA Business" accounts. See Response to Trustee's statement no. 29. Furthermore, neither Bongiorno nor Crupi were aware they were involved in any fictitious trades.  See Response to Trustee's statement no. 128.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 134, nor provides any evidence to the contrary.  Defendants do not rebut the factual

statement in Trustee Statement ¶ 134 but add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. These additional statements should be disregarded. Trustee Statement ¶ 134 is therefore not specifically controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 29, 128.

135.    Dubinsky analyzed notebooks maintained by former BLMIS employees, Betty Mazzone and Jo Ann Crupi (the "Employee Notebooks"). These Employee Notebooks set forth the process the employees used to create the fictitious convertible arbitrage transactions that ultimately ended up on the customer statements. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 93; 96-97; 100-101; Dubinsky Decl. Attach B (Dubinsky A&B Report) at ¶¶ 39; 41-42; Griffin Decl. Ex. 36 (Dep. Ex. 59) and Ex. 37 (Dep. Ex. 108); Griffin Decl. Ex. 27 (Bongiorno Dep.) at 52:5-7 ("I think [Madoff] asked everybody to write down exactly what they do and the order they do it in.").

**RESPONSE: Disputed.**  The Avellino Defendants did not have "IA Business" accounts. See Response to Trustee's statement no. 29. Employees did not have knowledge about any fraud. See Response to Trustee's statement no. 128. Object to reliance on Dubinsky's for these facts or for opinions on the securities industry and to reliance on BLMIS employees' double hearsay. See Response to Trustee's statement nos. 8, 38 and 74.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 135, nor provides any evidence to the contrary. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 135. Trustee Statement ¶ 135 is therefore not specifically controverted, and consequently, should be deemed admitted under Local Rule 7056-

1(d).  Nevertheless, in the Counterclaims of the Post-1993 Entities, they admit that BLMIS acted as their "investment advisor" and in their Answers, they acknowledge their "IA accounts."

The Trustee refers the Court to Trustee's Reply at ¶¶ 8, 29, 38, 74, and 128.

136.    At the outset of every purported trade, Madoff provided the IA Business employees with parameters consisting of the specific rates of return that he had preordained for each of the convertible arbitrage accounts.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 90-93 and Figure 1; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 35, 39; Griffin Decl. Ex. 27 (Bongiorno Dep.) at 53:25-54:3, 81:6-10; Griffin Decl. Ex. 29 (Crupi Dep.) at 43:1-10; 44:24-45:11.

**RESPONSE: Disputed.**  See Response to Trustee's statement nos. 134 and 135. No rates were guaranteed. See Response to Trustee's Statement no. 62.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 136, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 136.  Trustee Statement ¶ 136 is therefore not specifically controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 62, 134, and 135.

137.    Bongiorno and Crupi testified that Madoff's predetermined profits were locked in at the beginning of each convertible arbitrage transaction.  Griffin Decl. Ex. 27 (Bongiorno Dep.) at 80:22-25, 81:6-10; Griffin Decl. Ex. 29 (Crupi Dep.) at 45:5-11, 57:9-23.

**RESPONSE: Disputed.**  See Response to Trustee's statement no. 134.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 137, nor provides any evidence to the contrary.  Defendants do not specifically rebut

the factual statement in Trustee Statement ¶ 137.   Trustee Statement ¶ 137 is therefore not specifically controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 134.

138.    Specifically, Bongiorno testified that "[i]n the arbitrage days, as soon as the account was set up, it was set up with that return that he [Madoff] promised customers."  Griffin Decl. Ex. 27 (Bongiorno Dep.) at 53:13-53:15.

**RESPONSE: Disputed.**  See Response to Trustee's statement no. 134. Object also on the grounds of inadmissible hearsay and foundation.  See Response to Trustee's statement no. 74.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 138, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 138.   Trustee Statement ¶ 138 is therefore not specifically controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

139.    The IA Business employees would then give Kugel the specific customer's account, the rate of return Madoff had set for that account, a dollar value for the purported investment, and the duration of that trade.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 93-94; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶ 39; Griffin Decl. Ex. 27 (Bongiorno Dep.) at 51:10-54:3; Griffin Decl. Ex. 29 (Crupi Dep.) at 42:15-43:10; Griffin Decl. Ex. 36 (Dep. Ex. 59); Griffin Decl. Ex. 37 (Dep. Ex. 108).

**RESPONSE: Disputed.**  See Response to Trustee's statement nos. 29, 131, 134 and 135.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 139, nor provides any evidence to the contrary.  Defendants do not specifically rebut

the factual statement in Trustee Statement ¶ 139.  Trustee Statement ¶ 139 is therefore not

specifically controverted, and consequently, should be deemed admitted under Local Rule 7056-

1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 29, 131, 134, 135.

140.    Kugel selected historical market price data from Bloomberg and *The Wall Street*

*Journal* to facilitate the IA Business employees' fabrication of convertible arbitrage transactions

consistent with Madoff's stipulated parameters for each customer account.  Griffin Decl. Ex. 29

(Crupi Dep.) at 79:12-80:5; Griffin Decl. Ex. 38 (Dep. Ex. 109); Griffin Decl. Ex. 15 (DiPascali

Tr.) at 4546:5-4548:20, 4681:3-15; Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 94.

**RESPONSE: Disputed.**  See Response to Trustee's statement nos. 29 and139.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee

Statement ¶ 140, nor provides any evidence to the contrary.  Defendants do not specifically rebut

the factual statement in Trustee Statement ¶ 140.  Trustee Statement ¶ 140 is therefore not

specifically controverted, and consequently, should be deemed admitted under Local Rule 7056-

1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 29, 139.

141.    Kugel then reverse engineered this historical trade information based on Madoff's

preordained rates of return and provided this data to IA Business employees in the form of trading

tickets.  Griffin Decl. Ex. 29 (Crupi Dep.) at 27:6-9; 57:9-23; 61:12-24; 65:12-66:10.

**RESPONSE: Disputed.**  See Response to Trustee's statement nos. 29 and139.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee

Statement ¶ 141, nor provides any evidence to the contrary.  Defendants do not specifically rebut

the factual statement in Trustee Statement ¶ 141.  Trustee Statement ¶ 141 is therefore not

specifically controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 29, 139.

142.    The IA Business employees used this historical trade data from Kugel to perform the step-by-step calculations on adding machine tapes using the prescribed formulas to determine how many securities to purportedly "buy" and "sell" in accordance with Madoff's directives. *See* Griffin Decl. Ex. 27 (Bongiorno Dep.) at 54:18-23; 56:4-57:23; Griffin Decl. Ex. 29 (Crupi Dep.) at 27:6-23; Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 96-97, 100; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 41-42; 45.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 139.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 142, nor provides any evidence to the contrary. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 142. Trustee Statement ¶ 142 is therefore not specifically controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 139.

143.    To ensure that the same fake trades would not be added to the customer statements too frequently, the IA Business employees recorded the names, date ranges, and conversion factors for each of these securities on index cards. Griffin Decl. Ex. 27 (Bongiorno Dep.) at 60:7-61:25; Griffin Decl. Ex. 29 (Crupi Dep.) at 82:2-83:25; Griffin Decl. Ex. 39 (Trustee Dep. Ex. 60); Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 95; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 39, 43, 46.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 139. The employees never used the term "fake" and thought the trades were real.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 143, nor provides any evidence to the contrary. Defendants do not rebut the factual statement in Trustee Statement ¶ 143 but add an extraneous statement that is not responsive to the stated fact, are argumentative, and are not supported by competent evidence. This additional statement should be disregarded; Defendants cite to no competent evidence. Trustee Statement ¶ 143 is not specifically controverted and therefore should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee refers the Court to Trustee's Reply to ¶ 139.

144.    Bongiorno testified that "we just kept a record of every arbitrage he gave us and we kept it in a box because Bernie didn't want the trades done over and over again. He wanted a certain amount of time before doing it again." Griffin Decl. Ex. 27 (Bongiorno Dep.) at 61:3-8.

**RESPONSE: Disputed.**    See Response to Trustee's statement no. 139. Object to inadmissible hearsay. See Response to Trustee's statement no. 138.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 144, nor provides any evidence to the contrary. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 144. Trustee Statement ¶ 144 is therefore not specifically controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee refers the Court to Trustee's Reply to ¶ 138.

145.    Ultimately, the IA Business employees added the fictitious convertible arbitrage transactions to the customer statements and trade confirmations that they sent to the IA Business

customers.  Griffin Decl. Ex. 27 (Bongiorno Dep.) at 34:21-35:1; 67:17-20; Griffin Decl. Ex. 29

(Crupi Dep.) at 27:6-23; Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 94, 98-102;

Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 40-46.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 139.  Additionally, the

Defendants did not have IA Business accounts and the trades made in their accounts were real. See

Response to Trustee's statement no. 39.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee

Statement ¶ 145, nor provides any evidence to the contrary.  Defendants do not rebut the factual

statement in Trustee Statement ¶ 145 but add an extraneous statement that is not responsive to the

stated fact, is argumentative, and is not supported by competent evidence.  This additional

statement should be disregarded.  Trustee Statement ¶ 145 is not specifically controverted and

therefore should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, in the Counterclaims of the Post-1993 Entities, they admit that BLMIS acted

as their "investment advisor" and in their Answers, they acknowledge their "IA accounts."  Griffin

Decl., Ex. 45.  The Trustee further refers the Court to Trustee's Reply to ¶ 39.

146.    Bongiorno testified that the mechanical process to create the convertible arbitrage

trades described in internal BLMIS books and records was in place from the 1970s.  Griffin Decl.

Ex. 27 (Bongiorno Dep.) at 65:17-22.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 139.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee

Statement ¶ 146, nor provides any evidence to the contrary.  Defendants do not specifically rebut

the factual statement in Trustee Statement ¶ 146.  Trustee Statement ¶ 146 is therefore not

specifically controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 139.

> **(a)    The Process Used to Create the Convertible Arbitrage Transactions Resulted in Market Impossibilities and Trading Anomalies**

147.    Since the IA Business created the convertible arbitrage trades manually, human error during this process resulted in mistakes.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶115; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 33, 63.

**RESPONSE: Disputed.**  The Defendants did not have "IA Business" accounts. See Response to Trustee's statement no. 29. Object to reliance on Dubinsky for this fact, and it is not proper testimony for an expert. See Response to Trustee's statement no. 8.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 147, nor provides any evidence to the contrary.  Defendants do not rebut the factual statement in Trustee Statement ¶ 147 but add an extraneous statement that is not responsive to the stated fact, is argumentative, and is not supported by competent evidence.  This additional statement should be disregarded.  Defendants also interpose an evidentiary objection which is unfounded.  Trustee Statement ¶ 147 is not specifically controverted and therefore should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 8, 29.

148.    As part of his global fraud investigation, Dubinsky compared the convertible arbitrage transactions in (i) all IA Business accounts for certain time periods between October 1979 and December 1992 (the "Monthly Time Period") and (ii) A&B accounts between November 1978 through July 1992 ("A&B Time Period") to historical, independent market

trading records.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 89, 112-115;

Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 38, 64.

**RESPONSE: Disputed.** The Avellino Defendants did not have "IA Business" accounts.

See Response to Trustee's statement no. 29.  Object to Dubinsky's opinion as he lacks the expertise

to make such opinion.  See Response to Trustee's statement nos. 38 and 39. Madoff disputed

Dubinsky's competency to make such comparisons as well as disputed his "facts" and opinions.

Defendants' expert, Fortgang, also disputed Dubinsky's "facts" and opinions.  See Section IID of

the Defendants' Response to the Trustee's Motion.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee

Statement ¶ 148, nor provides any evidence to the contrary.  Defendants do not specifically rebut

the factual statement in Trustee Statement ¶ 148.  Trustee Statement ¶ 148 is therefore not

specifically controverted, and consequently, should be deemed admitted under Local Rule 7056-

1(d).

The Trustee objects to reliance on the Fortgang Reports because the opinions contained

therein do not create disputed issues of fact and they are inadmissible as unreliable and

untrustworthy.  The Trustee further objects to the Defendants' reliance on Madoff's testimony

because it is impermissible expert testimony.

149.    Dubinsky identified extensive trading anomalies in the convertible arbitrage

accounts from which he concluded that it was impossible for BLMIS to have engaged in those

transactions.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 114-146; Dubinsky

Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 38, 64-65.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 149, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 149. Trustee Statement ¶ 149 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

**(b)    Impossible Market Volumes and Prices**

150.    Dubinsky found numerous instances where the volume of convertible arbitrage trades reflected on the IA Business customer statements (both in the aggregate and on an individual customer account basis over time) exceeded the *entire* publicly reported market volume for those particular securities on the days they were supposedly traded.   Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 116-120, Figures 13 - 15, Table 2, and Exs. 3-5.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 150, nor provides any evidence to the contrary.  Trustee Statement ¶ 150 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

151.    Dubinsky therefore concluded that BLMIS could not have actually executed those trades in the securities marketplace.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 116-120, Figures 13 - 15, Table 2, and Exs. 3-5.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 148 and 150.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 151, nor provides any evidence to the contrary.  Trustee Statement ¶ 151 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 148, 150.

152.    For the Monthly Time Period, 94% of the purported transactions exceeded the daily market volume by an average of over 200 times the entire reported daily volume for all market trades of those securities.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 117, Figure 13, and Ex. 3.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 148 and 150.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 152, nor provides any evidence to the contrary.  Trustee Statement ¶ 152 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 148, 150.

153.    Similarly, Dubinsky found that *over 90%* of the total purported transactions in the A&B Time Period exceeded the daily market volume for those securities by an average of nearly 30 times the actual daily volume.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 118, Figure 14, and Ex. 5; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶ 64 and Ex. 3.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 148 and 150.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 153, nor provides any evidence to the contrary.  Trustee Statement ¶ 153 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 148, 150.

154.    Dubinsky further found that 41% of the purported transactions in the Monthly Time Period and 44% of the purported transactions in the A&B Time Period reflected trade dates on which the market did not report any trading in that particular security for that particular day. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 117-120, Figures 13-15, Table 2, and Exs. 3 and 5.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 148 and 150.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 154, nor provides any evidence to the contrary.  Trustee Statement ¶ 154 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 148, 150.

155.    Dubinsky also determined that there were several instances where the purported trading volume in convertible bond and preferred stock transactions reflected on the customer statements for convertible arbitrage accounts exceeded the total amount of issuance outstanding in the market or exceeded at least 85% as of each respective transaction date.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 120-123.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 148 and 150.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 155, nor provides any evidence to the contrary.  Trustee Statement ¶ 155 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 148, 150.

156.    Dubinsky identified numerous instances of purported trades that were recorded at impossible prices, as they were outside the range of market-reported trading prices on those given days.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 124-126 and Exs. 6-8.

**RESPONSE: Disputed.**  See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 156, nor provides any evidence to the contrary.  Trustee Statement ¶ 156 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

157.    Specifically, Dubinsky determined that 76% of the securities with unique prices in the Monthly Time Period and the A&B Time Period were outside the actual reported daily market price range, thus confirming that the prices were fictitious.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 124-125, Table 2, and Exs. 7 and 8; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶ 64 and Ex. 4.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 148 and 156.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 157, nor provides any evidence to the contrary.  Trustee Statement ¶ 157 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 148, 156.

### (c)    Additional Anomalies on the Customer Statements

158.    Dubinsky determined that the IA Business failed to report dividend payments and/or accrued interest for the purported convertible arbitrage transactions reflected on customer statements, even though the actual convertible securities paid dividends or interest.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 129-132 and Figure 16; Attach. B (Dubinsky A&B Report) at ¶ 64.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 158, nor provides any evidence to the contrary.  Trustee Statement ¶ 158 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

159.    Dubinsky concluded that the absence of these dividends further confirms that the IA Business never executed the convertible arbitrage transactions.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 129 and 132.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 159, nor provides any evidence to the contrary. Trustee Statement ¶ 159 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

160. Dubinsky also identified numerous transactions on IA Business customer statements that purportedly occurred on dates *after* those specific securities had already been called for conversion by the issuing company, confirming the fictitious nature of these transactions. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 127-128 and Table 2; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶ 64.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 160, nor provides any evidence to the contrary. Trustee Statement ¶ 160 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

161. Additionally, Dubinsky did not identify any independent transfer records evidencing that the IA Business ever converted the purported convertible securities into common shares, despite the IA Business customer statements reflecting the conversion of these securities. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 133-142, Tables 2-4, and Figures 17 and 18.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 161, nor provides any evidence to the contrary. Trustee Statement ¶ 161 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

162.    Absent the supporting documentation and/or communications with transfer agencies regarding conversion, Dubinsky concluded that the IA Business could not have converted the underlying shares into common stock for any of the thousands of purported transactions in its convertible arbitrage accounts.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 138.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 162, nor provides any evidence to the contrary.  Trustee Statement ¶ 162 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

163.    The IA Business consistently did not report the correct conversion factors and did not "pay out" fractional shares on the required conversion date.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 138-142; Figures 17-18; and Table 4.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 163, nor provides any evidence to the contrary.  Trustee Statement ¶ 163 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

164.    Further, Dubinsky determined that the trade confirmations the IA Business fabricated in connection with its manufacturing of the purported convertible arbitrage transactions were prepared backwards, evidencing the fictitious nature of the convertible arbitrage transactions. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 143-146; and Figures 19-23.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 164, nor provides any evidence to the contrary. Trustee Statement ¶ 164 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

### (d)    Madoff Did Not Execute the Convertible Arbitrage Transactions for the A&B Accounts

165.    Dubinsky analyzed the purported convertible arbitrage transactions in the A&B accounts and concluded that they were no different from all other IA Business convertible arbitrage accounts, as they followed the same fraudulent patterns and exhibited similar market impossibilities. Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 35, 37-52, 57-62, 63-65; *see also* Griffin Decl. Ex. 27 (Bongiorno Dep.) at 123:12-124:14, 130:1-131:1; Griffin Decl. Ex. 29 (Crupi Dep.) at 55:10-15, 62:24-63:10; 64:17-19.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 165, nor provides any evidence to the contrary. Trustee Statement ¶ 165 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

166.    As with all other convertible arbitrage accounts, the IA Business implemented a mechanical process driven by preordained rates of return to manufacture the convertible arbitrage transactions in the A&B accounts. Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 35, 37-52 and Figures 1-6; Griffin Decl. Ex. 27 (Bongiorno Dep.) at 123:12-124:4, 130:1-131:1.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 166, nor provides any evidence to the contrary.  Trustee Statement ¶ 166 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

167.    Dubinsky found that the returns reflected on the customer statements for the A&B accounts were impossibly consistent year-after-year and always profitable.  Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 47-52.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 167, nor provides any evidence to the contrary.  Trustee Statement ¶ 167 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

168.    Specifically, Dubinsky examined all 1,428 convertible arbitrage transactions reflected in the A&B accounts over a 15-year period and found that 99% of the purported transactions were reported as if they generated total returns between 2.5 and 4.5 percent, and that 97% of all the purported transactions reflected monthly returns between 1.5% and 2%.  Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 48 - 50 and Figures 7 and 8.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 168, nor provides any evidence to the contrary.  Trustee Statement ¶ 168 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

169.    Dubinsky opined that given the fluctuations and volatility in the actual securities market, the abnormally high degree of consistency in the returns for the A&B accounts for over nearly 15 years was virtually impossible.  Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 48; 50-52.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 169, nor provides any evidence to the contrary.  Trustee Statement ¶ 169 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

## 2.    The Buy and Hold Transactions Were Fictitious

170.    From at least the 1970s, the accounts of certain of Madoff's employees, family members, and long-time customers, did not follow either the purported convertible arbitrage strategy or the split-strike conversion strategy.   Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 25, 182; Griffin Decl. Ex. 27 (Bongiorno Dep.) at 69:4-12.

**RESPONSE: Undisputed** though dispute Dubinsky's ability to so testify. See Response to Trustee's statement no. 8.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 170. Defendants interpose an evidentiary objection to the admissibility of Dubinsky's expert opinions. This objection neither raises a genuine dispute with the fact asserted in Trustee Statement ¶ 170, nor provides any evidence to the contrary.  Accordingly, Trustee Statement ¶ 170 should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, Dubinsky's expert opinions are admissible.

171.    For those customers, Madoff purportedly purchased securities (typically equities), held these securities for certain periods of time, and then purportedly sold them for a profit (the

"Buy and Hold Accounts").  Griffin Decl. Ex. 27 (Bongiorno Dep.) at 69:4-12; Dubinsky Decl.

Attach. A (Dubinsky Global Report) at ¶¶ 25, 182; Dubinsky Decl. Attach. B (Dubinsky A&B

Report) at ¶ 53.

**RESPONSE: Disputed.** Defendants object to the use of the word "purportedly."

Substantial evidence exists that BLMIS traded securities on behalf of his clients. See Response to

Trustee's statement no. 19.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee

Statement ¶ 171, nor provides any evidence to the contrary.  Defendants do not specifically rebut

the factual statement in Trustee Statement ¶ 171 but add an extraneous statement that is not

responsive to the stated fact, is argumentative, and is not supported by competent evidence.  This

additional statement should be disregarded.  Further, Defendants' quibble with the Trustee's

phraseology does not controvert any of the facts in Trustee Statement ¶ 171.  Accordingly, Trustee

Statement ¶ 171 is therefore not controverted, and consequently, should be deemed admitted under

Local Rule 7056-1(d).

172.    These Buy and Hold Accounts were sometimes referred to internally at BLMIS as

the "long position" accounts.  Griffin Decl. Ex. 27 (Bongiorno Dep.) at 23:21-24:8; Griffin Decl.

Ex. 29 (Crupi Dep.) at 15:18-19.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 172.

Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

173.    Dubinsky analyzed the transactions in these Buy and Hold Accounts between 1978

and 2008 and concluded that they were not executed in the securities market but were based on

historical market data and reverse engineered to meet targeted rates of return.  Dubinsky Decl.

Attach. A (Dubinsky Global Report) at ¶¶ 25; 182-193; Dubinsky Decl. Attach. B (A&B Report) at ¶¶ 53-55.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 173, nor provides any evidence to the contrary. Trustee Statement ¶ 173 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

174.     BLMIS employees also gave testimony about the fictitious nature of these transactions. For example, DiPascali testified at the Criminal Trial that none of the trades in the Buy and Hold Accounts was real:

> Q.     And what is a long position account?
> A.     Typically an array of securities of various portfolios, sometimes hedged, sometimes not, but it could be a portfolio of one stock, it could be a portfolio of stocks, depending on the account.
> Q.     And who was it that was in charge of putting in the trades for Ms. Bongiorno's accounts?
> A.     She was.
> Q.     Were any of those trades real?
> A.     No.

Griffin Decl. Ex. 15 (DiPascali Tr.) at 4916:18-4917:2.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148. Additionally, DiPascali's trial testimony is inadmissible. See Response to Trustee's statement no. 25.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 174, nor provides any evidence to the contrary. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 174 but interpose an evidentiary objection to the admissibility of DiPascali's Criminal Trial testimony. This objection neither raises a genuine

dispute with the fact asserted in Trustee Statement ¶ 174, nor provides any evidence to the contrary. Accordingly, Trustee Statement ¶ 174 is not specifically controverted and therefore should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, it is law of the case that DiPascali's criminal trial testimony is admissible. The Trustee further directs the Court to Trustee's Reply to ¶¶ 25, 148.

175.   Kugel also admitted to his role in creating fictitious trades beginning in the 1970s. Griffin Decl. Ex. 16 (Kugel Plea Allocution) at 32:1-14.

**RESPONSE: Disputed.**  The Avellino Defendants did not have "IA Business" accounts. See Response to Trustee's statement no. 29.   Also, Madoff disputed Kugel's testimony.   See Response to Trustee's statement no. 29.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 175, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 175 but add an extraneous statement that is not supported by competent evidence.  This additional statement should be disregarded.  Trustee Statement ¶ 175 is not specifically controverted and therefore should be deemed admitted under Local Rule 7056-1(d).  Moreover, the Trustee objects to the Defendants' reliance on Madoff's testimony as inadmissible hearsay and untrustworthy.

The Trustee further refers the Court to Trustee's Reply to ¶ 29.

176.   Bongiorno and Crupi, who were responsible for managing the Buy and Hold Accounts, testified that they never executed those trades.  Griffin Decl. Ex. 27 (Bongiorno Dep.) at 72:2-9; 76:22-77:1; Griffin Decl. Ex. 29 (Crupi Dep.) at 24:1-8, 71:4-9.

**RESPONSE: Disputed.**  The Avellino Defendants did not have "IA Business" accounts. See Response to Trustee's statement no. 29. Also, neither Bongiorno or Crupi held positions which

involved executing trades, nor did they have knowledge of any fictitious nature of the trades. See response to Trustee's statement no. See Response to Trustee's statement nos. 89 and132.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 176, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 176 but add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. These additional statements should be disregarded.  Trustee Statement ¶ 176 is not specifically controverted and therefore should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee directs the Court to Trustee's Reply to ¶¶ 29, 89, 132.

177.    Instead, all the securities transactions that appeared on the customer statements for the Buy and Hold accounts were based on trading information from Madoff and Kugel. Griffin Decl. Ex. 29 (Crupi Dep.) at 24:8-14; 25:15-22; 35:20-36:2; Griffin Decl. Ex. 27 (Bongiorno Dep.) at 73:23-74:10.

**RESPONSE: Disputed.** The Avellino Defendants did not have "IA Business" accounts, or "Buy and Hold" accounts. See Response to Trustee's statement no. 29. The trades reflected on their statements constituted real securities. Fortgang Decl., Ex. A (Report) at 6, 7; Fortgang Decl., Ex. B (Rebuttal) at 7.  Object to inadmissible hearsay. See Response to Trustee's statement no. 138.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 177, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 177 but add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence.

These additional statements should be disregarded.  Trustee Statement ¶ 177 is not specifically controverted and therefore should be deemed admitted under Local Rule 7056-1(d).

Moreover, the Trustee objects to reliance on the Fortgang Reports because the opinions therein do not create disputed issues of fact, and are inadmissible as unreliable and untrustworthy.

Nevertheless, the Trustee directs the Court to Trustee's Reply to ¶¶ 19, 29, 89, 132.

178.    Bongiorno and Crupi testified about the process that they and other BLMIS employees followed to input those transactions on the customer statements for the Buy and Hold Accounts.  Griffin Decl. Ex. 29 (Crupi Dep.) at 24:8 - 25:22; 35:20-36:2; Griffin Decl. Ex. 27 (Bongiorno Dep.) at 73:23-74:10.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 134 and 177.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 178, nor provides any evidence to the contrary.  Trustee Statement ¶ 178 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 134, 177.

179.    For each new Buy and Hold Account, Madoff set a targeted rate of return and promised that return to his customers.  Griffin Decl. Ex. 27 (Bongiorno Dep.) at 77:16-20; Griffin Decl. Ex. 29 (Crupi Dep.) at 71:11-14; 72:7-17; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 53-54; 56.

**RESPONSE: Disputed.**  See Response to Trustee's statement no. 177. Object to reliance on Dubinsky for these facts or for opinions about securities. See Response to Trustee's statement nos. 8 and 38. Object to inadmissible hearsay.  See Response to Trustee's statement no. 74 and 138. No guarantees or promises were made by Madoff.  See Response to Trustee's statement no. 128.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 179, nor provides any evidence to the contrary. Defendants do not rebut the factual statement in Trustee Statement ¶ 179 but add an extraneous statement that is not responsive to the stated fact, is argumentative, and is not supported by competent evidence. This additional statement should be disregarded. Defendants also interpose evidentiary objections which are unfounded. Trustee Statement ¶ 179 is not specifically controverted and therefore should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee refers the Court to Trustee's Reply to ¶¶ 8, 38, 74, 128, 138, 177.

180.    Madoff and Kugel provided historical trade information from Bloomberg that Bongiorno and Crupi ultimately input on the customer statements. Bongiorno testified that:

> The trading information came mostly from Bernie [Madoff] or David [Kugel]. They would have us look up bridges – Bloomberg sheets and bridge sheets. They would give me the stock and tell me the range and have me look up a Bloomberg sheet to get the exact dates and amounts on them and tell me how much was done during the particular day and how much I could do during that particular day, and then I would break it down based on the money that came in.

Griffin Decl. Ex. 27 (Bongiorno Dep.) at 72:20-73:5.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 131, 134 and 177.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 180, nor provides any evidence to the contrary. Trustee Statement ¶ 180 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 131, 134, 177.

(a)    **BLMIS Employees Manipulated the Transactions in the Buy and Hold Accounts to Meet Targeted Rates of Returns**

181.    Madoff targeted rates of return for customers with Buy and Hold Accounts but rewarded his longest customers with the highest returns. Griffin Decl. Ex. 27 (Bongiorno Dep.) at 78:18-24.

**RESPONSE: Undisputed.** But the Avellino Defendants did not have "Buy and Hold" accounts. See Response to Trustee's statement no. 29. Object to inadmissible hearsay. See Response to Trustee's statement no. 138.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 181. Defendants interpose an evidentiary objection that neither raises a genuine dispute with the fact asserted in Trustee Statement ¶ 181, nor provides any evidence to the contrary. Accordingly, Trustee Statement ¶ 181 is not specifically controverted and therefore should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee's motion rests on admissible evidence.

182.    Bongiorno testified that: "I think like some of the old-timers, like, for example, the Avellino group and the Steinbergs and Picowers and the Chase's [sic], they got all got more, a higher return than most of the other customers. And I think that's because they were with him the longest." Griffin Decl. Ex. 27 (Bongiorno Dep.) at 78:18-24.

**RESPONSE: Undisputed** Bongiorno so testified. Dispute her knowledge of any fraud and her ability to testify based upon such speculation. See Response to Trustee's statement no. 134. Object to inadmissible hearsay. See Response to Trustee's statement no. 138.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 182. Defendants interpose an evidentiary objection that neither raises a genuine dispute with the fact asserted in Trustee Statement ¶ 182, nor provides any evidence to the contrary. Accordingly, Trustee Statement ¶ 182 is not specifically controverted and therefore should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 134, 138.

183.    To ensure that the performance of these Buy and Hold Accounts matched Madoff's promised returns, the employees would monitor and track the accounts' purported performance on a monthly basis through the use of internal reports called the Portfolio Management Reports. Griffin Decl. Ex. 27 (Bongiorno Dep.) at 79:23-80:12; Griffin Decl. Ex. 29 (Crupi Dep.) at 70:5-72:24; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶ 55.

**RESPONSE: Disputed.**   The Avellino Defendants did not have IA or "Buy and Hold" accounts.  See Response to Trustee's statement no. 29.  Object to reliance on Dubinsky for these facts or for his opinion.  See Response to Trustee's statement nos. 8 and 38. See also Response to Trustee's statement no. 134.  Object to reference to Madoff's "promised" returns as he made no such promises.  See Response to Trustee's statement nos. 8 and 38. See also Response to Trustee's statement no. 62.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 183, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 183 but add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. These additional statements should be disregarded.  Defendants also interpose an evidentiary objection which is unfounded.  The Trustee's motion rests on admissible evidence.  Trustee Statement ¶ 183 is not specifically controverted and therefore should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, in the Counterclaims of the Post-1993 Entities, they admit that BLMIS acted as their "investment advisor" and in their Answers, they acknowledge their "IA accounts." Madoff, on whom the Defendants rely, also testified that these accounts were IA Business accounts.

Further, the Trustee refers the Court to Trustee's Reply to ¶¶ 8, 29, 38, 62,134.

184.    If the purported performance of a specific account did not reflect the specific rate of return Madoff had stipulated, the IA Business employees would retroactively add other fictitious trades to the account to meet the desired returns through a process the employees termed "getting accounts in line."  Griffin Decl. Ex. 27 (Bongiorno Dep.) at 81:17-82:7, 87:3-88:1; Griffin Decl. Ex. 29 (Crupi Dep.) at 138:20-23; Griffin Decl. Ex. 15 (DiPascali Tr.) at 4735:5-25; 5943:22-5944:1; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 55-56.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 183.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 184, nor provides any evidence to the contrary.  Trustee Statement ¶ 184 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 183.

185.    Bongiorno explained the mechanics of the "getting accounts in line":

> [W]ell, the process would just be – this is what I was told – to see what his return was on the stock that he [Madoff] was doing.  And so let's say he [Madoff] owed somebody some extra gains to bring the account in line, he would tell me put through the trades on this and this in order to bring that up, if it was under where it should be.

Griffin Decl. Ex. 27 (Bongiorno Dep.) at 83:1-9.

**RESPONSE: Disputed.** See Response to Trustee's statement nos.  74 and 178.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 185, nor provides any evidence to the contrary.  Trustee Statement ¶ 185 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 74, 78.

186.    Dubinsky opined that adjustments to securities transactions "cannot be performed retroactively in the real world; real trades must be executed and settled through actual market

mechanisms and at the time of actual performance." Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶ 113 and ¶140.

**RESPONSE: Disputed;** See Response to Trustee's statement no. 38.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 186, nor provides any evidence to the contrary. Trustee Statement ¶ 186 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 38.

187.    The IA Business engaged in similar trade manipulation efforts to get the A&B accounts "in line" and increase their value in response to the 1992 SEC investigation of Avellino and Bienes. Griffin Decl. Ex. 27 (Bongiorno Dep.) at 137:7-140:9; Griffin Decl. Ex. 29 (Crupi Dep.) at 138:6-141:11; Griffin Decl. Ex. 15 (DiPascali Tr.) at 4629:1-4630:7; 4658:3-4661:1.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 39. Object to the conclusion that this was in response to 1992 SEC investigation of A & B, as there is no evidence to support this conclusion.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 187, nor provides any evidence to the contrary. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 187 but add an extraneous statement that is not responsive to the stated fact, is argumentative, and is not supported by competent evidence. This additional statement should be disregarded. Trustee Statement ¶ 187 is not specifically controverted and therefore should be deemed admitted under Local Rule 7056-1(d).

> **(b)    Dubinsky Identified Numerous Market Impossibilities and Trading Anomalies in the Buy and Hold Accounts**

188.    Dubinsky identified trading anomalies and market impossibilities in the Buy and Hold Accounts. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 25; 183-193.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 29, 38, 148 and 150.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 188, nor provides any evidence to the contrary. Trustee Statement ¶ 188 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 29, 38, 148, 150.

189. Specifically, from October 1979 to November 2008, the transactions in the Buy and Hold Accounts exceeded the entire daily market volume, contained prices that were outside the daily price range, settled on holidays or weekends when the markets were closed, and contained backdated transactions. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 25; 183-193; 300; Exs. 17-20, 30.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 188.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 189, nor provides any evidence to the contrary. Trustee Statement ¶ 189 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 188.

(c)     **The Buy and Hold Transactions in the A&B Accounts Were Fictitious**

190. Dubinsky also concluded that the purported Buy and Hold transactions in the A&B accounts were no different from all other IA Business Buy and Hold Accounts, as they followed the same fraudulent patterns and exhibited similar market impossibilities. Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 35; 53-62; 66-73; Griffin Decl. Ex. 27 (Bongiorno Dep.) at 123:12-124:14; 129:9-17; 131:2-10.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 188.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 190, nor provides any evidence to the contrary. Trustee Statement ¶ 190 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 188.

191.    Madoff targeted specific rates of return for the A&B accounts and promised those returns to Avellino and Bienes. Griffin Decl. Ex. 27 (Bongiorno Dep.) at 78:12-24; 131:25-132:5; 139:14-140:9; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶ 54.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 8, 53, 62 and 74.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 191, nor provides any evidence to the contrary. Trustee Statement ¶ 191 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 8, 53, 62, 74.

192.    BLMIS employees tracked and monitored the rates of return for these accounts by using Portfolio Management Reports, which they provided to Avellino and Bienes in addition to the monthly customer statements. Griffin Decl. Ex. 27 (Bongiorno Dep.) at 34:21-35:1; 88:3-91:6; Griffin Decl. Ex. 40 (Trustee Dep. Ex. 62); Attach. B (Dubinsky A&B Report) at ¶¶ 55, 56.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 8 and 53.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 192, nor provides any evidence to the contrary. Trustee Statement ¶ 192 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 8, 53.

193.    Dubinsky also concluded that because the Buy and Hold transactions in the A&B accounts were never executed in the securities markets they also exhibited similar trading

anomalies and market impossibilities as the fictitious transactions across all Buy and Hold Accounts. Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 66-67.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 193, nor provides any evidence to the contrary. Trustee Statement ¶ 193 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

194.    Dubinsky identified purported purchases and sales of securities at prices that were beyond the daily market highs or lows, aggregate IA Business transaction volumes exceeding daily market volumes, and backdated transactions. Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 57-62, 66-73; Exs. 2; 5-6.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 194, nor provides any evidence to the contrary. Trustee Statement ¶ 194 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

### 3.    The Split-Strike Conversion Transactions on Customer Statements Were Fictitious

195.    By 1992, after the SEC investigation and the influx of nearly 1100 new IA Business customer accounts for former A&B clients, the IA Business changed its primary purported investment strategy to the split-strike conversion strategy. Dubinsky Decl. Attach. A (Dubinsky Global Report) at Section VI.A.(1)(b), specifically ¶ 155; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 30-33; 173-175.

**RESPONSE: Undisputed.** But object to reliance on Dubinsky for such facts or for opinions relating to securities. See Response to Trustee's statement nos. 8 and 38.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 195. Defendants interpose an evidentiary objection to the admissibility of Dubinsky's expert opinions but this objection neither raises a genuine dispute with the fact asserted in Trustee Statement ¶ 195, nor provides any evidence to the contrary. Accordingly, Trustee Statement ¶ 195 should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, Dubinsky's expert opinions are admissible.

196. The split-strike conversion strategy was borne out of the IA Business' need for a more scalable and efficient trading strategy in the face of the increased number of customer accounts, including the Post-1993 Entity Accounts. Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 30-33; 173-175 and Figure 62; Griffin Decl. Ex. 29 (Crupi Dep.) at 37:15; 169:2-170:3; Griffin Decl. Ex. 15 (DiPascali Tr.) at 4712:21-4713:14; 4727:6-11.

**RESPONSE: Undisputed.** But object to the sources of the conclusion See Response to Trustee's statement nos. 8, 29, 38 and 74.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 196 but interpose what appears to be an evidentiary objection. This objection neither raises a genuine dispute with the fact asserted in Trustee Statement ¶ 196, nor provides any evidence to the contrary. Accordingly, Trustee Statement ¶ 196 should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee's motion rests on admissible evidence.

197. Dubinsky's analysis showed that the split-strike conversion strategy, as purportedly executed by BLMIS, involved (a) investing in a basket of common stocks from the Standard & Poor's 100 Index, (b) buying put options and selling call options to hedge against price changes in

the underlying basket of stocks, and (c) purchasing U.S. treasury bills ("T-Bills") when the money was "out of the market." Dubinsky Decl. Attach. A (Dubinsky Global Report) at Section VI.A.(1)(b).

**RESPONSE: Undisputed.** See Response to Trustee's statement no. 196.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 197 Accordingly, Trustee Statement ¶ 197 should be deemed admitted under Local Rule 7056-1(d).

198.     The strategy was purportedly set up by BLMIS so that the purchase of put options and the sale of call options would create a collar around the stock to reduce the volatility of BLMIS's portfolio. Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 156–58.

**RESPONSE: Undisputed.** See Response to Trustee's statement no. 196.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 198. Accordingly, Trustee Statement ¶ 198 should be deemed admitted under Local Rule 7056-1(d).

199.     Dubinsky concluded that BLMIS did not conduct this strategy on behalf of its customers. Dubinsky Decl. Attach. B (Dubinsky A&B Report) at Section VI.A.(1)(b).

**RESPONSE: Disputed.** See Response to Trustee's statement no. 8, 38 39.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 199, nor provides any evidence to the contrary. Trustee Statement ¶ 199 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 8, 38, 39.

200.     Dubinsky based his conclusion on (a) the impossible reported volume of equity and options trades; (b) the impossible equity and options trades reported outside the daily price range; (c) the low volatility in its reported daily trading performance compared to the actual market behavior and the performance achieved by BLMIS in the Proprietary Trading Business unit as

measured by the volume weighted average prices for its sales and purchases; (d) the consistently positive rates of returns that did not "mirror" the volatility of the markets; (e) a lack of any DTC records to confirm the reported IA Business equity or treasury trades; and (f) a lack of Options Clearing Corporation ("OCC") records to confirm the reported IA Business options trades. Dubinsky Decl. Attach. A (Dubinsky Global Report) at Section VI.A.(1)(c)(i)-(vi), A.(1)(e)(i)-(iv).

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148. All trades are not recorded with the DTC. Woodfield Decl., Ex. 10 (Madoff Dep. Nov. 13, 2019) at 21:8-20; 22:3-25; Woodfield Decl. Ex. 2 (Madoff Dep. April 26, 2017) at 78:1-25; 110:23-25.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 200, nor provides any evidence to the contrary. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 200 but add an extraneous statement that is argumentative and not supported by competent evidence. This additional statement should be disregarded. Moreover, the Trustee objects to the Defendants reliance on Madoff's testimony which is impermissible expert testimony and inadmissible hearsay. Trustee Statement ¶ 200 is not specifically controverted and therefore should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee refers the Court to the Trustee's Reply to ¶148.

### (a)    Impossible Equity and Options Volumes

201.    Dubinsky analyzed equity and options trades that the IA Business reportedly made pursuant to the split-strike conversion strategy between January 2000 and November 2008 ("Analyzed Time Period"). Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 159.

**RESPONSE: Disputed.** Undisputed that Dubinsky prepared such report. Dispute that Avellino Defendants had IA Accounts as well as object that Dubinsky has the training or

experience to provide expert opinions regarding the securities industry See Response to Trustee's statement nos. 29 and 38.

**TRUSTEE'S REPLY**:   Defendants admit the factual statement in Trustee Statement ¶ 201.   Defendants' additional response neither raises a genuine dispute with Trustee Statement ¶ 201, nor provides any evidence to the contrary.   Defendants' evidentiary objections and extraneous statements are not responsive to the stated fact, are argumentative, and are not supported by competent evidence.   This fact is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

202.    Dubinsky compared the daily volumes for certain stocks reported as purchased or sold by the IA Business on the aggregated customer statements with the actual market volumes sold as reported by Bloomberg.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 159–60.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 202, nor provides any evidence to the contrary.  Trustee Statement ¶ 202 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

203.    Dubinsky found many instances where the volume that BLMIS claimed to have purchased or sold on behalf of all IA Business customers exceeded the volume of equities traded for the entire market.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 159–60.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 203, nor provides any evidence to the contrary. Trustee Statement ¶ 203 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

204. For example, on July 14, 2000, the aggregated IA Business customer statements reported purchases of 2,822,680 shares of AIG but the total market volume that traded that day for all of AIG shares in the market was only 1,692,800. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 159, and Ex. 11 thereto.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 204, nor provides any evidence to the contrary. Trustee Statement ¶ 204 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

205. Similarly, the IA Business reported trading 17,709,440 shares of GE on September 13, 2000, but the total market volume that traded that day for GE shares in the market was only 7,604,800. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 159, Ex. 11 thereto.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 205, nor provides any evidence to the contrary. Trustee Statement ¶ 205 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

206.    Additionally, Dubinsky found many instances where the volume that BLMIS claimed to have purchased or sold on behalf of all IA Business customers exceeded the volume of options traded for the entire market.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶160.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 206, nor provides any evidence to the contrary.  Trustee Statement ¶ 206 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

207.    Specifically, 71.1% of the unique purported options contracts traded above the daily market volume, and 62% of that universe had purported volumes that were 10 times above the daily market volume.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ Ex. 12.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 207, nor provides any evidence to the contrary.  Trustee Statement ¶ 207 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

208.    Dubinsky concluded that BLMIS's purported trading in excess of market volumes demonstrated that the IA Business did not execute these transactions for its customers.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at Section VI.A.(1)(c), ¶¶ 159–60 and Exs. 11–12 thereto.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 208, nor provides any evidence to the contrary. Trustee Statement ¶ 208 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

**(b)    Equity and Options Trades Priced Outside Daily Price Range**

209.    For the Analyzed Time Period (2000-2008), Dubinsky determined that there were 99,972 purported equity transactions executed outside the daily market traded price range. The purported prices for these transactions exceeded the daily high price by as much as $8.96 and were below the daily low by as much as $105.04. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 161 and Ex. 13 thereto.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 209, nor provides any evidence to the contrary. Trustee Statement ¶ 209 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

210.    Dubinsky concluded that there was no evidence in the BLMIS books and records that the almost 100,000 transactions were mistakes, and there were no DTC records evidencing that the trades were actually executed. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 161–63.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 148 and 200.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 210, nor provides any evidence to the contrary. Trustee Statement ¶ 210 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 148, 200.

211.    Dubinsky opined that equity trades that were reported as having been executed outside the daily price range of the entire U.S. equities market could not have occurred.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 161–62, and Ex. 13 thereto.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 211, nor provides any evidence to the contrary.  Trustee Statement ¶ 211 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

212.    Dubinsky performed the same analysis on options trades for the same time period and identified 34,501 options transactions traded outside of the daily price range.  He found that the options traded above the daily high price by as much as $15.25 higher and by as much as $6.05 below the daily low price.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 164–66, and Ex. 14 thereto.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 212, nor provides any evidence to the contrary.  Trustee Statement ¶ 212 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

213.    Dubinsky opined that, as with the equity trades, the purported options trades that were executed outside the daily price range could not have occurred.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 164–67, Ex. 14.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 213, nor provides any evidence to the contrary. Trustee Statement ¶ 213 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

### (c)    Volume Weighted Average Price Analysis

214.    The absence of actual trading was also reflected in the prices at which the IA Business purportedly bought and sold shares using the split-strike conversion strategy. Dubinsky conducted a Volume Weighted Average Price ("VWAP") analysis of the daily purchases and sales reported by the IA Business and the Proprietary Trading Business. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 168–72.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 214, nor provides any evidence to the contrary. Trustee Statement ¶ 214 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

215.    VWAP is a trading benchmark that gives the average price a security has traded throughout the day, based on both volume and price. VWAP is a widely used industry benchmark that allows a firm to see how well its traders are doing compared to the rest of the market. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 168–69.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 215, nor provides any evidence to the contrary. Trustee Statement ¶ 215 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

216.    Based on his analysis, Dubinsky determined that the IA Business purportedly executed 83% of the daily buy transactions by share volume below the VWAP, and 72% of the daily sell transactions by share volume above the VWAP.  In other words, BLMIS had the uncanny ability to buy low and sell high at a remarkable rate compared to the rest of the market.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 170.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 216, nor provides any evidence to the contrary.  Trustee Statement ¶ 216 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

217.    Dubinsky further compared the IA Business's purchases and sales of the same stocks actually traded by the Proprietary Trading Business on the same days.  The Proprietary Trading Business matched average VWAP of traders.  The IA Business, however, consistently outperformed VWAP by such wide margins that it evidenced the fictitious nature of the trades. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 171–72.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 217, nor provides any evidence to the contrary.  Trustee Statement ¶ 217 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

218.    Dubinsky concluded that the unrealistic VWAP results demonstrated that the IA Business did not trade on behalf of its customers.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 170–72.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 218, nor provides any evidence to the contrary. Trustee Statement ¶ 218 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

### (d)    Consistently Positive Annual Rates of Return

219.    To further test whether the IA Business engaged in trading, Dubinsky analyzed the volatility of the IA Business's reported average annual rate of return for the split-strike conversion strategy as compared with the volatility of the annual rate of return as reported by Bloomberg for the two major market indices, the S&P 100 Index and the Dow Jones Industrial Average (the "Dow Jones") from December 31, 1996 through December 11, 2008. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 177–78.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 219, nor provides any evidence to the contrary. Trustee Statement ¶ 219 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

220.    Because the IA Business's split-strike conversion strategy was supposedly engineered around the S&P 100, with a basket of stocks in the S&P 100 and using S&P index options, the IA Business's returns should have performed similarly to the S&P 100 Index. In other words, if the market goes down, the returns should have gone down and vice versa. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶177.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 220, nor provides any evidence to the contrary.  Trustee Statement ¶ 220 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

221.    Dubinsky's analysis showed, however, that the volatility in the IA Business rates of return did not mirror the volatility of the rates of returns of the major indices.  The IA Business rates of return stayed within a small range, generally between 10-12% for most years and going up to 20% for the year of 1999.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 178, 180.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 221, nor provides any evidence to the contrary.  Trustee Statement ¶ 221 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

222.    Dubinsky found that the returns for the major market indices ranged from a high of 31% to a low of -37% (specifically, the S&P 100 swinging widely from a high of 31% to a low of -37%, and the Dow Jones from a high of 25% to a low of -34%).  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 179.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 222, nor provides any evidence to the contrary.  Trustee Statement ¶ 222 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

223.    While the returns available in the major indices went up and down, representing the volatility in the market, the IA Business returns stayed steady for the twelve-year period examined, never having a negative year or month (even throughout 2008).   Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 180–81.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 223, nor provides any evidence to the contrary.  Trustee Statement ¶ 223 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

224.    Dubinsky concluded that the lack of volatility in the IA Business demonstrated that the IA Business was not engaged in trading.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 181.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 148.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 224, nor provides any evidence to the contrary.  Trustee Statement ¶ 224 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 148.

### (e)    Securities Listed on the IA Business Customer Statements Did Not Reconcile with DTC Records

225.    Dubinsky compared the trades purportedly executed for the customer accounts in the IA Business with the records maintained by the DTC.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at Section VI.A.(1)(e).

**RESPONSE: Disputed.** There is no time frame included but the DTC was not started until 1973. Avellino Defendants did not have IA Business Accounts. See Response to Trustee's statement no. 29.

**TRUSTEE'S REPLY:**   Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 225, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 225 but add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence.  These additional statements should be disregarded.  Trustee Statement ¶ 225 is not specifically controverted and therefore should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, Dubinsky's Global Report details the timeframe of his DTC analysis.  *See* Dubinsky Decl., Attach A (Dubinsky Global Report) at Section VI.A.(1)(e) at ¶¶ 209-210.

226.    When equity trades are recorded at the DTC, it creates the official record of where that stock is held.  The ownership of the stock can be confirmed with the DTC.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 194–95.

**RESPONSE: Disputed.** The DTC was not created until 1973, so no comparisons could be made prior to that date.  Furthermore, all trades are not recorded with the DTC. Woodfield Decl., Ex. 10 (Madoff Dep. Nov. 13, 2019) at 21:8-20; 22:3-25; Woodfield Decl. Ex. 2 (Madoff Dep. April 26, 2017) at 78:1-25; 110:23-25.  Object to Dubinsky's competency to provide opinions about securities.  See Response to Trustee's statement no. 38.

**TRUSTEE'S REPLY:**   Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 226, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 226 but add extraneous statements that are not responsive to the stated fact or supported by competent evidence.  Those extraneous statements

should be disregarded. Trustee Statement ¶ 226 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Further, the Trustee objects to the Defendants' reliance on Madoff's testimony which is impermissible expert testimony.

227.    BLMIS had a single account with the DTC, the "646 account." All equity trades made by BLMIS would have been reflected in the DTC records pertaining to its account. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 209.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 226.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 227, nor provides any evidence to the contrary. Trustee Statement ¶ 227 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 226.

228.    Dubinsky's analysis confirmed that the securities that were cleared through BLMIS's DTC account, the 646 account, were traded by the Proprietary Trading Business. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 209.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 226.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 228, nor provides any evidence to the contrary. Trustee Statement ¶ 228 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 226.

229.    No IA Business trades were cleared through BLMIS's DTC account. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 209–13.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 226.   Additionally, Avellino Defendants did not have IA Business accounts. See Response to Trustee's statement no. 29.

**TRUSTEE'S REPLY:**   Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 229, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 229 but add an extraneous statement that is not responsive to the stated fact, is argumentative, and is not supported by competent evidence.  This extraneous statement should be disregarded.  Accordingly, Trustee Statement ¶ 229 is not specifically controverted and therefore should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply at ¶ 226.

230.   The Proprietary Trading Business shares reflected in the DTC records matched the BLMIS records evidencing those trades.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 209, 211, 213.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 226.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 230, nor provides any evidence to the contrary.  Trustee Statement ¶ 230 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 226.

231.   Dubinsky concluded that the Proprietary Trading Business actually executed those trades in the marketplace, as confirmed by the DTC records.  For the IA Business, however, Dubinsky could not account for the stock purportedly traded for the customers in the IA Business in any DTC records.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 209.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 229.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 231, nor provides any evidence to the contrary. Trustee Statement ¶ 231 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 229.

232. Based on his analysis, Dubinsky concluded that the IA Business did not execute the equity trades reflected on the customer statements. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 212.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 229.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 232, nor provides any evidence to the contrary. Trustee Statement ¶ 232 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 229.

233. Because there were no records from the DTC showing that BLMIS owned the securities listed on the IA Business customer statements, BLMIS created fake DTC records for the IA Business. Dubinsky uncovered dozens of fake DTC screen inquiries to document purported trading activity of the IA Business. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 199–208.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 229.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 233, nor provides any evidence to the contrary. Trustee Statement ¶ 233 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 229.

234. BLMIS installed software on the IA Business computer system that recreated fake DTC reports that were meant to look like official reports. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 206–07.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 8 and 229.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 234, nor provides any evidence to the contrary. Trustee Statement ¶ 234 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 8, 229.

235. Dubinsky explained that there would be no reason, if one were doing legitimate trading and had owned the stocks, to go into a computer system and write code that used form-printing software to print out a report that mimicked what the DTC puts out, because there would instead be a real DTC report. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 208. Dubinsky made this determination by examining the metadata of the fake DTC screens, the code embedded in the document to record characteristics of the document, including when it was created. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 199–205.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 8 and 226.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 235, nor provides any evidence to the contrary. Trustee Statement ¶ 235 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 8, 226.

236. Based on Dubinsky's analysis of the DTC records, Dubinsky concluded that BLMIS was not trading equities for its IA Business customers. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 208.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 229.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 236, nor provides any evidence to the contrary.  Trustee Statement ¶ 236 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 229.

**(f)** **Reported Options Trades Could Not be Reconciled to OCC Records**

237.    The options purportedly executed for the customer accounts in the IA Business could not be reconciled with the records of the OCC, an organization that clears and settles options transactions in the U.S. market.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 196–98.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 148 and 226.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 237, nor provides any evidence to the contrary.  Trustee Statement ¶ 237 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 148, 226.

238.    Dubinsky explained that BLMIS had a single account with the OCC, and the IA Business purportedly traded S&P Index options ("OEX"), which are "proprietary options" traded exclusively on the Chicago Board of Option Exchange ("CBOE").  These proprietary options can only be traded on the CBOE, but there would be a record of them both from the CBOE and the OCC.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 166, 219.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 229.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 238, nor provides any evidence to the contrary.  Trustee Statement ¶ 238 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 229.

239.    Dubinsky reviewed the OCC records for the BLMIS account from October 31, 2002 through October 31, 2008.  Based on his review of those records, Dubinsky was able to reconcile and confirm the options that were traded by the Proprietary Trading Business but could not account for the options purportedly traded for the customers in the IA Business.  *Id.* at ¶¶ 220–22.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 229.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 239, nor provides any evidence to the contrary.  Trustee Statement ¶ 239 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 229.

240.    Dubinsky found that the options purportedly traded on behalf of the IA Business customers, as recorded in the IA Business trading records, were not shown on OCC records and were not cleared through the OCC.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 222.

**RESPONSE: Disputed.** See Response to Trustee's statement No. 229.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 240, nor provides any evidence to the contrary.  Trustee Statement ¶ 240 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 229.

241.    For example, on October 31, 2005, records for the Proprietary Trading Business and the OCC indicate that 20 options described as "S&P 100 INDEX NOVEMBER 590 CALL"

were purchased and held by BLMIS. The aggregate number of "S&P 100 INDEX NOVEMBER 590 CALL" options reported on IA Business customer statements for the same date totaled 658,342. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 223.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 229.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 241, nor provides any evidence to the contrary. Trustee Statement ¶ 241 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 229.

242.    Based on his analyses, Dubinsky concluded that BLMIS did not conduct any options trading on behalf of its IA Business customers. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 222.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 229.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 242, nor provides any evidence to the contrary. Trustee Statement ¶ 242 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 229.

**(g)    The IA Business Did Not Purchase Treasuries for IA Business Customer Accounts**

243.    In addition to purportedly purchasing stocks and options collars, BLMIS claimed it would intermittently invest IA Business customer funds in treasuries as part of the split-strike conversion strategy. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 44.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 229.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 243, nor provides any evidence to the contrary.  Trustee Statement ¶ 243 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 229.

244.    Dubinsky performed two separate analyses to determine whether BLMIS purchased Treasuries on behalf of IA Business customers: he (i) compared the T-Bills purchased with customer funds from the JPMC '703 Account and/or through various brokerage accounts (collectively, the "Brokerage Accounts") to the positions reflected on the IA Business customer statements; and (ii) compared the Treasury positions in the Proprietary Trading Business to the positions reflected on the IA Business customer statements.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 224, 228.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 229.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 244, nor provides any evidence to the contrary.  Trustee Statement ¶ 244 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 229.

245.    Each of these analyses conclusively found that Madoff did not purchase treasuries on behalf of his IA Business customers.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 224, 228.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 229.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 245, nor provides any evidence to the contrary.  Trustee Statement ¶ 245 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 229.

**(h)    The Brokerage Accounts Did Not Hold T-Bills for the IA Business Customers**

246.    Dubinsky reviewed BLMIS's books and records to identify the trade date, volume, price, security description, and maturity date for each of the T-Bills held in the Brokerage Accounts and compared that information to the T-Bills reflected on the IA Business customer statements. *Id.* at ¶ 228, n.213.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 229.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 246, nor provides any evidence to the contrary.  Trustee Statement ¶ 246 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 229.

247.    Dubinsky's analysis confirmed that the T-Bills held in the Brokerage Accounts did not "match" the (i) trade date, (ii) volume, (iii) price, (iv) security description, and (v) maturity date for every purported treasury position on the IA Business customer statements.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 232-40; n. 217.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 229.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 247, nor provides any evidence to the contrary.  Trustee Statement ¶ 247 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 229.

248.    More specifically, Dubinsky found that approximately 71% of the T-Bills on the IA Business customer statements did not have the same maturity date as any of the T-Bills held in

the Brokerage Accounts.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 233, and Ex. 23 thereto.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 229.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 248, nor provides any evidence to the contrary.  Trustee Statement ¶ 248 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 229.

249.    Of the remaining 29% of the T-Bills on the customer statements - 4,660 unique transactions - that did have the same maturity dates as those held on the Brokerage Accounts, there were only 20 unique instances in which the IA Business customer accounts purportedly purchased and sold a treasury on the same dates as the Brokerage Accounts.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 234-36.  In each of the 20 instances, the purported volume of the T-Bills purchased and sold in the aggregate by the IA Business was higher than the actual volume purchased and sold in the aggregate by the Brokerage Accounts.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 239-40.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 229.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 249, nor provides any evidence to the contrary.  Trustee Statement ¶ 249 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 229.

250.    Dubinsky concluded that none of the T-Bills identified on customer statements was the same T-Bills held in the Brokerage Accounts.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 240.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 229.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 250, nor provides any evidence to the contrary. Trustee Statement ¶ 250 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 229.

251.    Dubinsky opined that the IA Business' limited purchases of T-Bills with funds from the Brokerage Accounts were not for any IA Business customer account, but rather were for the purpose of investing the IA Business' excess cash—*i.e.,* cash management. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 228.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 8 and 229.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 251, nor provides any evidence to the contrary. Trustee Statement ¶ 251 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 8, 229.

252.    Collura similarly reached the same conclusion: that the T-Bills purchased through the IA Business bank accounts were not for the IA Business customers but were instead used for cash management purposes. Collura Decl. Attach A (Collura Report) at ¶ 62.

**RESPONSE: Disputed.** The Avellino Defendants were not customers of BLMIS "IA Business." See Response to Trustee's statement no. 29 and 38.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 252, nor provides any evidence to the contrary. Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 252 but add an extraneous statement that is not responsive to the stated fact or supported by competent evidence. This extraneous statement

should be disregarded. Trustee Statement ¶ 252 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Moreover, Defendants' reference to their response to Trustee Statement ¶ 38 in which they interpose an evidentiary objection to Dubinsky's expert opinions is also unrelated to the fact asserted in Trustee Statement ¶ 252 regarding Collura's expert opinions and therefore, a further reason this factual statement should be deemed admitted.

253.    Specifically, Collura found no reference to specific BLMIS customers in the transaction descriptions for short-term investments in the 703 Account or any investment activity in the Brokerage Accounts.  Collura Decl. Attach A (Collura Report) at ¶ 62.

**RESPONSE: Disputed.** The Avellino Defendants were not customers of BLMIS "IA Business." See Response to Trustee's statement no. 29.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 253, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 253 but add an extraneous statement that is not responsive to the stated fact or supported by competent evidence.  This extraneous statement should be disregarded. Trustee Statement ¶ 253 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

> **(i)    No T-Bills Were Purchased by the Proprietary Trading Business For the IA Business Customers**

254.    For the period of 2002 through 2007, Dubinsky reviewed the BLMIS books and records to identify the unique T-Bills held by the Proprietary Trading Business on December 31 of each of those years.  He then compared those holdings to (i) those T-Bill positions held at BLMIS's account at the DTC, which serves as the custodian or the clearing house for treasuries,

and (ii) the T-Bills purportedly held by the IA Business for its customers.  Dubinsky Decl. Attach.

A (Dubinsky Global Report) at ¶¶ 225–27.

RESPONSE: Disputed. See Response to Trustee's statement no. 229.

TRUSTEE'S REPLY: Defendants' response neither raises a genuine dispute with Trustee

Statement ¶ 254, nor provides any evidence to the contrary.  Trustee Statement ¶ 254 is therefore

not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 229.

255.    Dubinsky prepared a summary chart of his review of these voluminous records,

which accurately represents his comparison of the treasuries in the Proprietary Trading Business

and the positions purportedly purchased by the IA Business for its customers:

**Table 5**
**Comparison of Year-End US Treasury Positions: Proprietary Trading Business vs. IA Business**

| Year-End | Proprietary Trading Business | IA Business | | Proprietary Trading Business positions as a percent of IA Business positions |
|---|---|---|---|---|
| 2002 | $84,000,000 | $30,975,765,000 | | 0.27% |
| 2003 | $70,000,000 | $33,643,020,000 | | 0.21% |
| 2004 | $70,000,000 | $37,935,258,000 | | 0.18% |
| 2005 | $75,000,000 | $40,913,910,000 | | 0.18% |
| 2006 | $70,000,000 | $48,342,420,000 | | 0.14% |
| 2007 | $80,000,000 | $56,990,055,000 | | 0.14% |

Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 227, Table 5.

RESPONSE: Disputed. See Response to Trustee's statement no. 229.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 255, nor provides any evidence to the contrary.  Trustee Statement ¶ 255 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 229.

256.    The amount of T-Bills held by the Proprietary Trading Business was negligible compared to those purportedly held on behalf of customers of the IA Business.  For example, by the end of 2007, the $80 million in treasury positions held by the Proprietary Trading Business (as recorded on the DTC records) was only 0.14 percent of the approximately $57 billion in treasury positions purportedly held by the IA Business.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 227 and Table 5.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 229.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 256, nor provides any evidence to the contrary.  Trustee Statement ¶ 256 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 229.

257.    Dubinsky concluded it was not possible that the T-Bills purportedly held by IA Business customers actually existed.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 226-227 and Table 5.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 229.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 257, nor provides any evidence to the contrary.  Trustee Statement ¶ 257 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 229.

> **(j)** **The Aggregate Volume of Purported IA Business Treasuries Far Exceeded the Volume of Treasuries in the Brokerage Accounts and the Proprietary Trading Business**

258.     Dubinsky additionally determined that even if one were to add up all the treasuries in the Brokerage Accounts and the Proprietary Trading Business, they would be short of what was reported on the IA Business customer statements.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 230–31, Figure 36 and Ex. 22 thereto.

**RESPONSE: Disputed.** See response to Trustee's statement no. 229.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 258, nor provides any evidence to the contrary.  Trustee Statement ¶ 258 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 229.

259.     As shown below in Figure 36 from the Dubinsky Global Report, the total volume of T-Bills purportedly held in the IA Business at year-end from 1998-2007 dwarfed the volume held in the Brokerage Accounts and the Proprietary Trading Business:

**FIGURE 36**



Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 227-231; Table 5; and Ex. 22 thereto.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 229.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 259, nor provides any evidence to the contrary.  Trustee Statement ¶ 259 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 229.

### (k)    DiPascali Confirmed that the Purported Treasury Transactions on the Customer Statements Were Fictitious

260.    DiPascali gave testimony at the Criminal Trial in which he confirmed Dubinsky's and Collura's conclusions that the T-Bills purchased with the IA Business money were for BLMIS's cash management and were not purchased for any customer account.  Griffin Decl. Ex. 15 (DiPascali Tr.) at 4931:12–23; 4921:7–12; 4930:6–4931:5; and 5345:1–5346:3.

**RESPONSE: Disputed.** Not disputed that DiPascali gave testimony at the Criminal Trial.  See Response to Trustee's statement no. 25. Additionally, the Avellino Defendants were not customers of BLMIS' "IA Business." See Response to Trustee's statement no. 29.

**TRUSTEE'S REPLY**:  Defendants admit the factual statement in Trustee Statement ¶ 260.  Defendants' additional response neither raises a genuine dispute with Trustee Statement ¶ 260, nor provide any evidence to the contrary.  Defendants' evidentiary objections and extraneous statements are not responsive to the stated fact, are argumentative, and are not supported by competent evidence.  This fact is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

261.    DiPascali further testified that the T-Bill purchases in the Brokerage Accounts were made at the direction of Madoff to earn interest on the cash held in the 703 Account.  Griffin Decl. Ex 15 (DiPascali Tr.) at 4961:15–4962:22.

**RESPONSE: Disputed.** Not disputed that DiPascali gave testimony at the Criminal Trial. See Response to Trustee's statement no. 25.

**TRUSTEE'S REPLY**:  Defendants admit the factual statement in Trustee Statement ¶ 261.  Defendants' additional response neither raises a genuine dispute with Trustee Statement ¶ 261, nor provide any evidence to the contrary.  Defendants' evidentiary objections and extraneous statements are not responsive to the stated fact, are argumentative, and are not supported by competent evidence.  This fact is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

262.    DiPascali differentiated between the process he followed for treasuries fabricated from historical market data for customers of the IA Business and T-Bills actually purchased for cash management purposes.  Griffin Decl. Ex. 15 (DiPascali Tr.) at 4931:24-4934:13.

**RESPONSE: Disputed.** See Response to Trustee's Statement no. 260.

**TRUSTEE'S REPLY**:  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 262 but refer to their response to Trustee Statement ¶ 260 where they admit, in whole or in part, the factual statement in that paragraph.  Defendants' additional response to Trustee ¶ 260 neither raises a genuine dispute with Trustee Statement ¶ 262, nor provides any evidence to the contrary.  Defendants' extraneous statements in that paragraph are not responsive to the stated fact, are argumentative, and are not supported by competent evidence.  The factual statement in Trustee Statement ¶ 262 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 260.

263.    For those transactions that were fabricated using historical market data, DiPascali testified as follows:

Q.      As part of this strategy, the IA business would do what was referred to as going into the market and purport to buy securities, is that right?

A.      Correct.

Q.      Were you really buying securities?

A.      No.

Q.      Was this all just on paper?

A.      Yes.

Q.      Then, when you got out of the market, the IA business would purport to buy treasury securities, right?

A.      That's correct.

Q.      Did you really buy treasury securities?

A.      No.

Q.      Were those all fake?

A.      Yes.

Q.      When that activity happened, would there be communications sent to customers?

A.      Every time.

Q.      Are you familiar with the term "trade confirmation"?

A.      Sure.

Q.      Would trade confirmations be sent to customers?

A.      Yes.

Q.      Would that reflect the fake trades that you just described?

A.      Exactly that.

Q.      Would account statements that we have looked at be sent to customers?

A.      Yes.

Q.      Would those account statements reflect the fake trading that you testified about?

A.      Yes.

Griffin Decl. Ex. 15 (DiPascali Tr.) at 4803:23-4805:2.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 260.

**TRUSTEE'S REPLY**:  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 263 but refer to their response to Trustee Statement ¶ 260 where they admit, in whole or in part, the factual statement in that paragraph.  Defendants' additional response to Trustee ¶ 260 neither raises a genuine dispute with Trustee Statement ¶ 263, nor provides any evidence to the contrary.  Defendants' extraneous statements in that paragraph are not responsive to the stated fact, are argumentative, and are not supported by competent evidence.  The factual

statement in Trustee Statement ¶ 263 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 260.

264.    DiPascali specifically explained that he used historical prices to manufacture the treasury bill transactions on the IA Business customer statements.  Griffin Decl. Ex. 15 (DiPascali Tr.) at 4931:24–4934:13.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 260.

**TRUSTEE'S REPLY**:   Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 264 but refer to their response to Trustee Statement ¶ 260 where they admit, in whole or in part, the factual statement in that paragraph.  Defendants' additional response to Trustee ¶ 260 neither raises a genuine dispute with Trustee Statement ¶ 264, nor provides any evidence to the contrary.  Defendants' extraneous statements in that paragraph are not responsive to the stated fact, are argumentative, and are not supported by competent evidence.  The factual statement in Trustee Statement ¶ 264 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to  ¶ 260.

265.    DiPascali explained the nuts and bolts of his process that resulted in T-Bill transactions showing up on the IA Business customer statements, and further confirmed that they were all fake:

Q.    Now can we go to the second page of this document. What is this that we are looking at?
A.    It's a spreadsheet that I created that was going to be the nuts and bolts of this exercise. It was going to do a lot of the calculation for me and allow the process to progress swiftly instead of from month to month to month and client to client to client calculate all sorts of stuff, and then have to then create another side to that. This spreadsheet, which is an Excel-based spreadsheet, is identifying certain treasury bills across the top column. The

top row is the CUSIP of treasury bills and options. The second row are the symbols of options and then a string of treasury bills. Going on the far left column are a string of account numbers. Those are the accounts that Bernie told us he wanted to use to be the counterparties of the customer option positions. What this is doing is it's allowing me to randomly assign, once I know the total of my customer option positions, a quantity to each of those counterparties. Then, once I've randomly defined what each counterparty's position is, this is calculating what its margin or collateral requirement would be. Once I established that, this spreadsheet allows me to randomly pick a group of treasuries that were going to represent that collateral, and then the whole total number would circle back to what I needed. It's fairly complicated, but it did all the grind work necessary to accomplish what Bernie wanted.

Q.    Were any of the treasury bills that are reflected on this real?

A.    No.

Griffin Decl. Ex. 15 (DiPascali Tr.) at 5344:24–5346:3.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 260.

**TRUSTEE'S REPLY**:  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 265 but refer to their response to Trustee Statement ¶ 260 where they admit, in whole or in part, the factual statement in that paragraph.  Defendants' additional response to Trustee ¶ 260 neither raises a genuine dispute with Trustee Statement ¶ 265, nor provides any evidence to the contrary.  Defendants' extraneous statements in that paragraph are not responsive to the stated fact, are argumentative, and are not supported by competent evidence.  The factual statement in Trustee Statement ¶ 265 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply ¶ 260.

266.    DiPascali also confirmed that the Proprietary Trading Business did not have an inventory of treasuries "that was equivalent to the amount that was on the statements" for IA Business customers.  Griffin Decl. Ex. 15 (DiPascali Tr.) at 6950:25–6951:9; *see also* at 4931:6-11.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 260.

**TRUSTEE'S REPLY**:   Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 266 but refer to their response to Trustee Statement ¶ 260 where they admit, in whole or in part, the factual statement in that paragraph.  Defendants' additional response to Trustee ¶ 260 neither raises a genuine dispute with Trustee Statement ¶ 266, nor provides any evidence to the contrary.  Defendants' extraneous statements in that paragraph are not responsive to the stated fact, are argumentative, and are not supported by competent evidence.  The factual statement in Trustee Statement ¶ 266 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply at ¶ 260.

### (l)    The Split Strike Conversion Transactions in the Post-1993 Entity Accounts Were Fictitious

267.    Dubinsky determined that the customer statements for the Post-1993 Entity Accounts reflected transactions purportedly pursuant to the split-strike conversion strategy. Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶ 178.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 38. The trades in these accounts were real. See Response to Trustee's statement no. 39.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 267, nor provides any evidence to the contrary. Defendants rely on their evidentiary objections and extraneous statements in ¶¶ 38 and 39 which consist of legal conclusions, are not responsive to the stated fact in Trustee Statement ¶ 267, are argumentative, and are not supported by competent evidence.  Accordingly, Defendants' extraneous statements should be disregarded and Trustee Statement ¶ 267 should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, it is undisputed that Madoff was operating a Ponzi scheme through his IA Business, Defendants were customers of the IA Business (*see* Trustee's Reply to Statement ¶ 29),

the trades in the accounts for the Defendants, including for the Summary Judgment Entity Defendants, were fictitious (*see* Trustee's Reply to Statement ¶ 19), and Dubinsky's expert opinions are admissible.

268.    Dubinsky opined that these purported split-strike conversion strategy transactions in the Post-1993 Entity Accounts were similarly fraudulent.  They followed the same fraudulent patterns and exhibited similar market impossibilities as all other split-strike conversion accounts held by IA Business customers.  *Id.* at ¶ 178.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 267.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 268, nor provides any evidence to the contrary.  Trustee Statement ¶ 268 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 267.

269.    Dubinsky identified numerous trading anomalies and market impossibilities in the Post-1993 Entity Accounts, including: (i) option volumes exceeding daily market volumes; (ii) equity and option prices exceeding daily market prices; (iii) weekend trades; and (iv) backdated trades.  Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶ 178 and Exs. 7-11 thereto.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 148 and 267.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 269, nor provides any evidence to the contrary.  Trustee Statement ¶ 269 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 148, 267.

270.    Dubinsky also found that the Post-1993 Entity Accounts received remarkably consistent, positive annual rates of return.  Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 220-225; and Figures 89 - 92.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 267.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 270, nor provides any evidence to the contrary.  Trustee Statement ¶ 270 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 267.

271.    Contrary to the significant volatility of returns recorded in the major market indices and despite the split-strike conversion's supposed correlation with these indices, Dubinsky's analysis showed that the annual rates of return for the Post-1993 Entity Accounts were *always positive*.  Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 221-222 and Figure 89.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 267.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 271, nor provides any evidence to the contrary.  Trustee Statement ¶ 271 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 267.

### 4.    Additional Proof that BLMIS Never Engaged in the Securities Transactions on Customer Statements

#### (a)    The IA Business' Computer Programs Were An Integral Part of How the Ponzi Scheme Was Perpetuated

272.    Dubinsky analyzed and compared the computer systems and underlying programming codes for the IA Business and the Proprietary Trading Business.  He concluded that for all time periods, the IA Business computer environment only supported the operation of a fraud, and not a legitimate business.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 81-82;

103-111; 199-208; 271-289; 292-296; and Table 1; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 33-34.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 29 and 38.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 272, nor provides any evidence to the contrary. Trustee Statement ¶ 272 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 29, 38.

273. Dubinsky compared the programs and systems found in the IA Business to those in the Proprietary Trading Business. He determined that the capabilities of the computer systems of the Proprietary Trading Business were vastly different than those of the IA Business. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 79-82; 271-275, Figure 45 and Table 1.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 29 and 38.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 273, nor provides any evidence to the contrary. Trustee Statement ¶ 273 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 29, 38.

274. Dubinsky concluded that the Proprietary Trading Business systems contained components typically found in a broker-dealer environment where actual trades were being executed. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 79-82; 271-272; 274, Figure 45 and Table 1.

**RESPONSE: Disputed.** Do not dispute the Proprietary Trading Business executed actual trades. But dispute Dubinsky's qualifications to provide such an opinion. See Response to Trustee's statement no. 38.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 274, nor provides any evidence to the contrary.  Trustee Statement ¶ 274 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 29, 38.

275.    In contrast, Dubinsky found that none of the systems necessary for the execution of securities trades were found in the IA Business computer environment.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 271-275; Figure 45; and Table 1.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 29 and 38.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 275, nor provides any evidence to the contrary.  Trustee Statement ¶ 275 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 29, 38.

276.    Dubinsky determined that the IA Business computer system was not connected to any of the standard platforms used in a legitimate trading environment, such as NASDAQ or DTC. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 81, n.92; 271-275; Dubinsky A&B Report ¶ 34.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 29 and 38.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 276, nor provides any evidence to the contrary.  Trustee Statement ¶ 276 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 29, 38.

277.    Dubinsky also did not find any evidence that the IA Business computer systems communicated with any of the standard trading platforms or any of the connections available to

the Proprietary Trading Business systems.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 275.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 29 and 38.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 277, nor provides any evidence to the contrary.  Trustee Statement ¶ 277 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 29, 38.

278.    Dubinsky determined that the computer systems and programs were a core part of how the IA Business perpetuated the Ponzi scheme.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 79-82; 103-111; 199-208; 271-289; 292-296; and Table 1; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 33-34.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 8, 29 and 38.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 278, nor provides any evidence to the contrary.  Trustee Statement ¶ 278 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 8, 29, 38.

279.    Dubinsky's analysis revealed that the IA Business had custom-made programs developed to backdate and backfill trade data that no legitimate business engaged in trading activities with the securities market would ever use.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 82, 103-111, 199-208, 271-275, 278-289; 292-296.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 29 and 38.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 279, nor provides any evidence to the contrary.  Trustee Statement ¶ 279 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 29, 38.

280.    The IA Business relied on the computer systems - run from an IBM AS/400 (and its predecessors) with code and software originating from programs written in the 1970s and 1980s - to create the fake securities transactions, generate the documentation that supported the Ponzi scheme, and keep track of the customer cash in and cash out.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 81-82; 101-111; 199-208; 276-289; 292-296; Figures 30-34; 48-50; and Table 1; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 33-34; Griffin Decl. Ex. 29 (Crupi Dep.) at 88:16-89:17, 101:4-16.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 29 and 38.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 280, nor provides any evidence to the contrary.  Trustee Statement ¶ 280 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 29, 38.

281.    For each of the purported trading strategies (convertible arbitrage, split strike conversion, and buy and hold), the IA Business developed custom-made computer programs to facilitate the Ponzi scheme by automating the process of creating fictitious trades from historic trade data.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 81-82; 103-111; 256; 260-261; 264; 267; 278-289; and Table 1; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 33-34; 175; 190-192; and 213.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 8, 29, 34 and 38

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 281, nor provides any evidence to the contrary. Trustee Statement ¶ 281 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 8, 29, 34, 38.

282.    For example, for the convertible arbitrage accounts, the IA Business hardcoded the formulaic process into the AS/400, and predecessor computer systems, based on a preordained set of protocols to ultimately create the fabricated transactions and a full suite of supporting documents. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 103-111; and Figures 8-12; Griffin Decl. Ex. 27 (Bongiorno Dep.) at 45:7-11, 57:15-19, 77:2-6; Griffin Decl. Ex. 29 (Crupi Dep.) at 77:24-78:12; 78:20-79:4.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 29 and 38.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 282, nor provides any evidence to the contrary. Trustee Statement ¶ 282 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 29, 38.

283.    Similar to the convertible arbitrage process, Bongiorno testified that the IA Business ultimately automated the steps that the employees previously used with the manual system to fabricate the transactions reflected on the customer statements for the Buy and Hold Accounts. Griffin Decl. Ex. 27 (Bongiorno Dep.) at 76:17-77:6.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 29, 34 and 134.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 283, nor provides any evidence to the contrary. Trustee Statement ¶ 283 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 29, 34, 134.

284.    As the Ponzi scheme progressed, with the influx of nearly 1100 new customers starting in 1992, Madoff adjusted his infrastructure and relied heavily on his computer systems to implement the fraudulent split-strike conversion transactions.    Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 33-34; 175; Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 278-279; Griffin Decl. Ex. 15 (DiPascali Tr.) at 4712:21-4717:17-20; 4727:6-11; 4817:21-4819:1; 5865:1-11; and Griffin Decl. Ex. 29 (Crupi Dep.) at 37:15; 169:2-170:3.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 8, 29 and 38.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 284, nor provides any evidence to the contrary.  Trustee Statement ¶ 284 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 8, 29, 38.

285.    Dubinsky determined that a key component of creating the fraudulent split strike conversion trades was a custom-made program referred to as a "Random Order Generator." Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 278-289.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 29 and 38.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 285, nor provides any evidence to the contrary.  Trustee Statement ¶ 285 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 29, 38.

286.    This program allowed the IA Business employees to use historical market data to determine the prices and volumes of the securities transactions that ultimately appeared on the customer statements.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 278-289.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 29 and 38.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 286, nor provides any evidence to the contrary. Trustee Statement ¶ 286 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 29, 38.

287.    Dubinsky opined that a legitimate business would have no need for a random order generation program because all the orders would have a record generated from an external party at the time the trade was properly executed. *Id*. at ¶ 289.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 29 and 38.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 287, nor provides any evidence to the contrary. Trustee Statement ¶ 287 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 29, 38.

288.    Dubinsky further analyzed an internal software called "STMTPro" that was part of the IA Business computer programs. Through this program, the IA Business retroactively changed security transactions on customer statements that were already issued – including the purported purchase or sale of additional backdated securities, or the purported payment of a dividend – and then printed those revised customer statements. *Id*. at ¶¶ 292-296.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 29 and 38.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 288, nor provides any evidence to the contrary. Trustee Statement ¶ 288 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 29, 38.

289.    In Dubinsky's opinion, the IA Business could only redo these statements and retroactively add new transactions because the original securities transactions were fictitious and never executed in the first place.  Id. at ¶¶ 19, 292-296, 331-335.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 29 and 38.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 289, nor provides any evidence to the contrary.  Trustee Statement ¶ 289 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 29, 38.

### (b)    The IA Business Used a Fake Single Counterparty for All Purported Securities Transactions

290.    At least as early as 1978 through 2008, the IA Business purported to use a single counterparty for every one of the securities transactions reflected on the IA Business customer statements, including those for the A&B accounts and the Post-1993 Entity Accounts.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 243-245; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 75-76, 80; and Figures 13-15.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 19, 29 and 38.  Madoff testified if dealing as a principal there would not be a counterparty on the other side of the trade. Woodfield Decl. Ex. 1 (Madoff Dep. Dec. 20, 2106) at 128:2-12.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 290, nor specifically rebuts the fact asserted in Trustee Statement ¶ 290.  Defendants add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence.  Accordingly, Defendants' extraneous statements should be disregarded and Trustee Statement ¶ 290 should be deemed admitted under Local Rule 7056-1(d).

The Trustee objects to the Defendants' reliance on Madoff's testimony which is impermissible expert testimony and inadmissible hearsay.

291.     Dubinsky reviewed every IA Business Stock Record Summary by security from 1978 through 1992, as well as AS/400 computer programming code, trade date blotters, and IA Business instruction manuals, and determined that because the IA Business was not executing securities transactions in the actual marketplace, it pre-selected fake counterparties to purportedly take the opposite side of these transactions.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 243-244, n.219, n.220; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 75-79, and Figures 13-15; Griffin Decl. Ex. 41 (Madoff Investment Securities House 17 Manual) at MADTSS00336530.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 290.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 291, nor provides any evidence to the contrary.  Trustee Statement ¶ 291 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 290.

292.     The name of the fictitious counterparty varied throughout the years across internal BLMIS documents: National Bank of North America ("NBNA") from 1978-1983, National Westminster Bank from 1983-1987, and the generic "Clearing Banks" from 1987-2008.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 243-244; and Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 75, 79; and Figure 15.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 290.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 292, nor provides any evidence to the contrary. Trustee Statement ¶ 292 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 290.

293.    But, at any particular point in time, the IA Business preordained at the outset of every single purported transaction the assignment of the exact same fictitious counterparty. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 243, 244; and Dubinsky Decl. Attach. B (A&B Report) at ¶¶ 75, 76, 79; and Figures 13 and 15; and Griffin Decl. Ex 41 (Madoff Investment Securities House 17 Manual).

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 8 and 290.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 293, nor provides any evidence to the contrary. Trustee Statement ¶ 293 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 8, 290.

294.    The IA Business even developed custom-made AS/400 programming code that automatically pre-assigned the same single counterparty for every purported trade. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 243-244; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 76, 78; Griffin Decl. Ex. 27 (Bongiorno Dep.) at 205:10-23; Griffin Decl. Ex. 29 (Crupi Dep.) at 189:10-191:3.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 290.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 294, nor provides any evidence to the contrary. Trustee Statement ¶ 294 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 290.

295.    Dubinsky confirmed that in a legitimate trading environment, the broker would execute transactions with any number of counterparties that would be willing to take the opposite side of those transactions.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 241; 245; Dubinsky Decl. Attach. B (A&B Report) at ¶ 80.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 290.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 295, nor provides any evidence to the contrary.  Trustee Statement ¶ 295 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 290.

296.    Dubinsky concluded that the IA Business' use of only a single, predetermined counterparty for every trade, during each respective time period for at least thirty years, demonstrates that no such counterparty existed, and the securities transactions reflected on the IA Business customer statements were never executed.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 242; 245; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 74-76, 80.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 8 and 290.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 296, nor provides any evidence to the contrary.  Trustee Statement ¶ 296 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 8, 290.

297.    Dubinsky also confirmed from his review of the bank account records for the IA Business that it never received any cash payments from any purported counterparty (identified

above or any other) for any of the securities transactions reflected on the IA Business customer statements.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 243, 246.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 290.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 297, nor provides any evidence to the contrary.  Trustee Statement ¶ 297 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 290.

#### (c)    The Schtup Transactions

298.    As part of the scheme to deliver his promised rates of returns and commissions to certain IA Business customers, Madoff engaged in a process of propping up certain customers' accounts with extra fake trades that were intended to generate additional fictitious gains.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 27, 256-270; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 179, 195; Griffin Decl. Ex. 15 (DiPascali Tr.) at 4890:11-21; 4892:8-13; Griffin Decl. Ex. 42 (Lipkin Dep.) at 44:7-8; 60:7-8; 76:20-25; Griffin Decl. Ex. 29 (Crupi Dep.) at 173:2-174:1.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 8, 29, 32, 38 and 39.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 298, nor provides any evidence to the contrary.  Trustee Statement ¶ 298 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d). Moreover, Defendants' reliance on testimony unrelated to the substance of the fact in Trustee Statement ¶ 298 does not create a genuine issue of fact, and a further reason this statement should be deemed admitted.

Nonetheless, the Trustee directs the court to the Trustee's Reply to ¶¶ 8, 29, 32, 38, and 39.

299.     This process, in place between 1994 and 2007, was referred to internally at BLMIS as "Schtupping."    Griffin Decl. Ex. 29 (Crupi Dep.) at 173:2-177:16; Griffin Decl. Ex. 15 (DiPascali Tr.) at 4887:12-13; Griffin Decl. Ex. 42 (Lipkin Dep.) at 32:10-25.

**RESPONSE: Undisputed** that it was referred to as "Schtupping", but dispute that it was part of a fraudulent scheme.  See Response to Trustee's statement nos. 29, 38, and 39.

**TRUSTEE'S REPLY:**    Defendants admit the factual statement in Trustee Statement ¶ 299. Defendants add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence.    Accordingly, Defendants' extraneous statements should be disregarded and Trustee Statement ¶ 299 should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, Dubinsky analyzed the books and records of BLIMS and confirmed that the Schtupping process was "an integral part of the fraud" and used to manufacture fictitious trades in the Post-1993 Entity Accounts.  *See* Trustee Statements ¶¶ 298-316; Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 27, 256-270; and Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 171-172, 179-219.    DiPascali confirmed Dubinsky's conclusion.    At his plea allocution, DiPascali admitted to the process by which these fake trades were added to IA Business accounts: "On a regular basis I added fictitious trade data to account statements of certain clients to reflect the specific rate of earn return that Bernie Madoff had directed for that client."  DiPascali Plea at 47:19-22.  *See also* Griffin Decl. Ex. 15 (DiPascali Tr.) at 4890:10-21

The Trustee further directs the Court to the Trustee's Reply to ¶¶ 19, 29, 38, and 39.

300.     Schtupping was typically performed at the end of the year and enabled the IA Business to "true up" certain customers' accounts - including the Post-1993 Entity Accounts - whose fictitious trades throughout the year had not purportedly yielded the predetermined rates of

return and/or commissions that Madoff had guaranteed and promised to his customers.  Dubinsky

Decl. Attach. A (Dubinsky Global Report) at ¶¶ 27, 256, n.231, 257, 270; Dubinsky Decl. Attach.

B (Dubinsky A&B Report) at ¶¶ 167, n.182, 170, n.188, 179, n.202, 180-181, n.204; Griffin Decl.

Ex. 15 (DiPascali Tr.) at 4887:6-25; 4890:19-4893:8; Griffin Decl. Ex. 42 (Lipkin Dep.) at 32:10-

25, 43:20-25, 115:7-9; Griffin Decl. Ex. 29 (Crupi Dep.) at 173:2-177:16.

**RESPONSE: Disputed.** Undisputed that BLMIS made year-end trades on some of the

Avellino Defendants' accounts, but dispute that such accounts were "IA Business" accounts, or

that the trades were fictitious, or that Madoff gave guarantees, or that Dubinsky is qualified to

provide these facts or such opinions. See Response to Trustee's statement nos. 29, 38, 39 and 62.

**TRUSTEE'S REPLY:** Defendants admit part of the factual statement in Trustee

Statement ¶ 300 but add argumentative statements that are not supported by competent evidence.

Accordingly, Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 300,

nor provide any evidence to the contrary.  Trustee Statement ¶ 300 is therefore not controverted,

and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee further directs the court to the Trustee's Reply to ¶¶ 19, 29, 38, 39 62, and

299.

301.    The schtup transactions typically appeared on customer statements and trade

confirmations at the end of the year, and consisted of fake S&P Index, non-hedged options that

were always profitable and notably inconsistent with the split strike conversion strategy.  Dubinsky

Decl. Attach. A (Dubinsky Global Report) at ¶¶ 256-258; Dubinsky Decl. Attach. B (Dubinsky

A&B Report) at ¶¶ 171, 181-182, n.204, n.205, 183, 188-189; Griffin Decl. Ex. 15 (DiPascali Tr.)

at 4890:10 – 4890:21.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 300.

**TRUSTEE'S REPLY**: Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 301 but refer to their response to Trustee Statement ¶ 300 where they admit, in whole or in part, the factual statement in that paragraph. Defendants' additional response to Trustee ¶ 300 neither raises a genuine dispute with Trustee Statement ¶ 301, nor provides any evidence to the contrary. Defendants' extraneous statements in that paragraph are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. The factual statement in Trustee Statement ¶ 301 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply at ¶ 300.

302.    Dubinsky analyzed the books and records and confirmed that like all other transactions reflected on the IA Business customer statements and trade confirmations, these transactions never took place and constituted an integral part of the fraud. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 27, 256, 267, 269-270; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 179, 195.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 8 and 300.

**TRUSTEE'S REPLY**: Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 302 but refer to their responses to Trustee Statements ¶¶ 8 and 300 where they admit, in whole or in part, the factual statements in those paragraphs. Defendants' additional responses to Trustee ¶¶ 8 and 300 neither raise a genuine dispute with Trustee Statement ¶ 302, nor provide any evidence to the contrary. Defendants' extraneous statements in those paragraphs are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. The factual statement in Trustee Statement ¶ 302 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply at ¶ 300.

303.     Dubinsky further opined that in the investment management industry, it is not appropriate to retroactively adjust the performance of an account through the addition of trades manipulated to reflect the amount of profits needed to meet previously promised returns and/or commissions.  Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 184, 218.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 300.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 303, nor provides any evidence to the contrary.  Trustee Statement ¶ 303 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 300.

304.     At his plea allocution, DiPascali confirmed the fraudulent nature of the schtup transactions: "On a regular basis I added fictitious trade data to account statements of certain clients to reflect the specific rate of earn [sic] return that Bernie Madoff had directed for that client."  Griffin Decl. Ex. 14 (DiPascali Plea) at 47:19-22.

**RESPONSE: Disputed.** Undisputed that DiPascali so testified. Disputed that such trades were fictitious, and that double hearsay should not be admitted through him.  See Response to Trustee's statement nos. 25, 74 and 300.

**TRUSTEE'S REPLY**: Defendants admit the factual statement in Trustee Statement ¶ 304. Defendants' additional response neither raises a genuine dispute with Trustee Statement ¶ 304, nor provide any evidence to the contrary.  Defendants' evidentiary objections and extraneous statements are not responsive to the stated fact, are argumentative, and are not supported by competent evidence.  This fact is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, the Trustee directs the Court to Trustee's Reply to Statements ¶¶ 19, 25, 74, 300.

305.    DiPascali testified that the schtup process was borne out of the need to incentivize and ultimately compensate Avellino and Bienes with guaranteed rates of return and commissions for continuing to direct their former clients to the IA Business after the SEC shutdown of the A&B accounts.  Griffin Decl. Ex. 15 (DiPascali Tr.) at 4887:6-4890:9 and 4893:9-12.

**RESPONSE: Disputed.**  See Response to Trustee's statement no. 304.    Additionally, compensation was paid to the post 1993 entities, not to Avellino and Bienes individually.

**TRUSTEE'S REPLY:** Defendants refer to their response to Trustee Statement ¶ 304 where they admit, in whole or in part, the factual statement in that paragraph.    Defendants' additional responses to Trustee Statement ¶ 304 neither raise a genuine dispute with Trustee Statement ¶ 305 nor provide any evidence to the contrary.    These additional responses are not responsive to the stated fact, are argumentative, and are not supported by competent evidence.    The fact in Trustee Statement ¶ 305 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, Defendants' further response to Trustee Statement ¶ 305 is inconsistent with the Avellino's deposition testimony that "the Bienes Family and the Avellino Family would eventually share in the remuneration that was received by those accounts."  Griffin Decl. Ex. 22 (Avellino Dep. Vol. 2) at 285:2-12.

306.    Many additional customers on the "schtup" list to receive the extra fake trades in their IA Business accounts at the end of each year were customers who, like Avellino and Bienes, brought in new investors to BLMIS.  Griffin Decl. Ex. 15 (DiPascali Tr.) at 4890:22 – 4893:12.

**RESPONSE: Disputed.** The Avellino Defendants were not customers of the IA Business and their statements reflected valid securities. See Response to Trustee's statement nos. 25, 29, and 300.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 25, 29, and 300 where they admit, in whole or in part, the factual statements in those paragraphs. Defendants' additional responses to Trustee Statement ¶ ¶ 25, 29, and 300 neither raise a genuine dispute nor provide any evidence to the contrary. These additional responses are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. The fact in Trustee Statement ¶ 306 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee refers the Court to the Trustee's Reply to Statements ¶¶ 19, 25, 29, 300.

307.    Dubinsky detailed the step-by-step mechanical process by which IA Business employees created these fictitious schtup transactions that appeared on customer statements and trade confirmations. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 27, 256-270; Figures 38-44; and Ex. 25; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 15, 171, 179-219; and Figures 63-88.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 8 and 300.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 307, nor provides any evidence to the contrary. Trustee Statement ¶ 307 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee further directs the Court to the Trustee's Reply to Statements ¶¶ 8 and 300.

308.    To determine which accounts fell short of the promised rates of returns and/or commissions, the IA Business employees monitored and tracked account performance similar to the internal process used for the Buy and Hold Accounts.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 27, 256-257, 265-267, and Figures 42 and 43; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 55, 180, 181, n.204, 185, 194, and Figure 63; Griffin Decl. Ex. 29 (Crupi Dep.) at 71:15-19; Griffin Decl. Ex. 42 (Lipkin Dep.) at 32:10-33:6.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 300.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 308, nor provides any evidence to the contrary.  Trustee Statement ¶ 308 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee further directs the Court to the Trustee's Reply to Statement ¶ 300.

309.    Using the Portfolio Management Reports, the IA Business employees would engage in various reconciliation efforts typically at the end of the year to calculate the amount of additional profits necessary to increase a customer's rate of return and/or commissions in accordance with Madoff's directives.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 27, 256-257, 265-267, 270; and Figures 42 and 43; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 180-181, 183, and Figure 63; Griffin Decl. Ex. 29 (Crupi Dep.) at 173:17-174:1.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 8, 74 and 300.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 309, nor provides any evidence to the contrary.  Trustee Statement ¶ 309 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee further directs the Court to the Trustee's Reply to Statements ¶¶ 8, 74, and 300.

310.    The IA Business employees created internal, handwritten schtup schedules to track the specific dollar amount of extra profits to add to particular accounts.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 258-264, 269, n.235, Figures 38-41, and Ex. 25; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 180, n.203, 183, 187, 197-201, 212; and Figures 64, 70, 73, and 81; Griffin Decl. Ex. 42 (Lipkin Dep.) at 48:19-49:9; Griffin Decl. Ex. 29 (Crupi Dep.) at 199:13-200:2.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 300.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 310, nor provides any evidence to the contrary.  Trustee Statement ¶ 310 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee further directs the Court to the Trustee's Reply to Statement ¶ 300.

311.    The schtup schedules identified the particular IA Business customer accounts and "money needed" for each account, along with the corresponding amount ("units") of the purported options trades necessary to generate those additional fictitious profits.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 258-264, 269, n.235, and Ex. 25; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 180, n.203, 183, 187, 197-201, 212.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 300.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 311, nor provides any evidence to the contrary.  Trustee Statement ¶ 311 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee further directs the Court to the Trustee's Reply to Statement ¶ 300.

312.    To reverse engineer the specific S&P index options trades with the preordained profits dictated by Madoff, the IA Business employees used historical pricing trade data from

Bloomberg.  Attach. B (Dubinsky A&B Report) at ¶¶ 188; 189; n.209; 190-192; and Figures 65 and 67; Griffin Decl. Ex. 42 (Lipkin Dep.) at 71:8-72:22; Griffin Decl. Ex. 29 (Crupi Dep.) at 205:14-206:23.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 300.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 312, nor provides any evidence to the contrary.  Trustee Statement ¶ 312 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee further directs the Court to the Trustee's Reply to Statement ¶ 300.

313.    The IA Business employees would input the historical market data into the special basket trading computer program, labeled "B.SCHUPT," to manufacture the fictitious trades and generate the requisite additional profits in connection with the implementation of the schtup process.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 256; 260-267 and Figure 40; Attach. B (Dubinsky A&B Report) at ¶¶ 190-192; 213 and Figures 66 and 71; Griffin Decl. Ex. 29 (Crupi Dep.) at 204:4-21; Griffin Decl. Ex. 42 (Lipkin Dep.) at 80:8-21.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 300.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 313, nor provides any evidence to the contrary.  Trustee Statement ¶ 313 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee further directs the Court to the Trustee's Reply to Statement ¶ 300.

314.    In addition to the B.SCHUPT computer program, IA Business employees also used other computer programs and/or files and handwritten records, including "B.XTRAPL", batch trade slips, and Batch Stock Record Activity Reports, to manipulate the purported options basket trading and fabricate the supporting documentation.  Dubinsky Decl. Attach. A (Dubinsky Global

Report) at ¶ 262; and Figure 41; Attach. B (Dubinsky A&B Report) at ¶¶ 213-214; Figures 82-84;

Griffin Decl. Ex. 42 (Lipkin Dep.) at 128:19-130:20; Griffin Decl. Ex. 29 (Crupi Dep.) at 186:5-

191:3; 194:1-199:9.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 300.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee

Statement ¶ 314, nor provides any evidence to the contrary.  Trustee Statement ¶ 314 is therefore

not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee further directs the Court to the Trustee's Reply to Statement ¶ 300.

315.    DiPascali summarized the mechanics of the schtup process to create the additional,

fictitious transactions as follows:

> We would design an option transaction, typically an index option, and we would
> calculate what the payment should be.  These numbers over the years changed
> somewhat.  But once we identified what the number was, then we would write a
> fictitious buy ticket and a subsequent fictitious sell ticket that would create P&L in
> their accounts, and the value of their account would therefore increase equal to the
> amount of theoretical commission [and/or guaranteed rate of return] Bernie owed
> them.

Griffin Decl. Ex. 15 (DiPascali Tr.) at 4890:11-18.

**RESPONSE: Disputed.** Undisputed that DiPascali so testified. See Response to Trustee's

statement nos. 19 and 25.

**TRUSTEE'S REPLY**: Defendants admit the factual statement in Trustee Statement ¶ 315.

Trustee Statement ¶ 315 is therefore not controverted, and consequently, should be deemed

admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee directs the Court to the Trustee's Reply to Statements ¶¶ 19, and

25.

316.    Ultimately, the IA Business employees recorded the fictitious schtup transactions

on the customer statements and trade confirmations that they then sent to IA Business customers,

such as the accounts of the Post-1993 Entities. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 261; 267; 270; and Figure 44; Dubinsky Decl. Attach. B (Dubinsky A&B Report) at ¶¶ 180-181, n.204, 193, 200-217; Figures 68, 72, 74-76, 79, 85-87; Griffin Decl. Ex. 42 (Lipkin Dep.) at 30:10-17; Griffin Decl. Ex. 29 (Crupi Dep.) at 205:1-13; 212:7-16.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 8, 300.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 316, nor provides any evidence to the contrary. Trustee Statement ¶ 316 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee further directs the Court to the Trustee's Reply to Statements ¶¶ 8, 300.

317.    The IA Business employees engaged in similar trade manipulation efforts when revising the composition and rates of return for the A&B accounts during the 1992 SEC investigation of Avellino & Bienes. *See supra* at ¶¶ 72-94.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 72-94.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 317, nor provides any evidence to the contrary. Trustee Statement ¶ 317 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 72-94.

### (d)    The Proprietary Trading Business Did Not Execute Trades for IA Business Customers

318.    Dubinsky analyzed the trading activities, general operations, and financial condition of the Proprietary Trading Business as part of his forensic investigation of BLMIS. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 30-32, 46, 168-172, 194-227, 351-409, Figures 30-36, and Table 5.

**RESPONSE: Disputed.** Undisputed that Dubinsky conducted such analysis. See Response to Trustee's statement no. 38.

**TRUSTEE'S REPLY**: Defendants admit the factual statement in Trustee Statement ¶ 318. Defendants further refer to their response to Trustee Statement ¶ 38 which neither raises a genuine nor provides any evidence to the contrary. Trustee Statement ¶ 318 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee directs the Court to the Trustee's Reply to Statement ¶ 38.

319.    Dubinsky determined that the Proprietary Trading Business either made markets for institutional, broker-dealer clients or traded for its own account to increase BLMIS's profits. It did not service retail customers like those in the IA Business. *Id*. at ¶ 46. Nor did it, as Dubinsky concluded, execute any equity, option, or Treasury trades on behalf of the IA Business customers. *See supra*, Stmt. ¶¶ 225-242; 254-259; and 266.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 38 and 39.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 319, nor provides any evidence to the contrary. Trustee Statement ¶ 319 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d)

Nevertheless, the Trustee directs the Court to the Trustee's Reply to Statements ¶¶ 38 and 39.

320.    Instead, Dubinsky found that the Proprietary Trading Business engaged in fraudulent activities and was not a profitable concern. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 30-32; 351-409, 419-420.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 38 and 39. Madoff contradicted this and testified that it was not fraudulent and was profitable. Woodfield Decl., Ex. 2 (Madoff dep.) at 127:5-20.

**TRUSTEE'S REPLY**: Defendants' objection to Trustee Statement ¶ 320 does not create an issue of fact that would preclude summary judgment for the Trustee. Defendants' reliance on testimony from Madoff does not create a genuine dispute of material fact. Moreover, Defendants' reliance on opinions from Fortgang unrelated to the substance of the fact in Trustee Statement ¶ 320 does not create a genuine issue of fact.

Nevertheless, the uncontroverted evidence shows that the Proprietary Trading Business was not profitable and BLMIS as a whole was insolvent. *See* Trustee's Statements ¶¶ 320, 321, 366, 368. The uncontroverted evidence further establishes that the Proprietary Trading Business relied on fraudulent infusions of cash from the IA Business. *See* Trustee's Statements ¶¶ 321, 322, 323, 324, 325. Defendants do not dispute that BLMIS's falsified financials reflecting these infusions misrepresented the actual financial position of BLMIS. *See* Defendants' Response to Trustee Statement ¶ 336.

The Trustee further directs the Court to the Trustee's Reply to Statements ¶¶ 38, and 39.

321.    The Proprietary Trading Business relied on fraudulent infusions of cash from the IA Business for its operations and to hide ongoing, significant net losses. *Id*. at ¶¶ 30-32; 351-408, 419-420.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 38, 39 and 320.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 321, nor provides any evidence to the contrary. Trustee Statement ¶ 321 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee directs the Court to the Trustee's Reply to Statements ¶¶ 38, 39, and 320.

322.    Beginning as early as the 1970s and continuing through 2008, the IA Business transferred significant amounts of customer funds to the Proprietary Trading Business.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 30, 352-358, 366-369; and Figures 63 and 64; Griffin Decl. Ex. 17 (Irwin Lipkin Plea Allocution) at 30:23; 31:10; 31:24-32:5; Griffin Decl. Ex. 19 (Cotellessa-Pitz Allocution) at 31:12-32:12.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 38 and 39.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 322, nor provides any evidence to the contrary.  Trustee Statement ¶ 322 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 38, 39.

323.    Between 1999 and 2008, for example, the IA Business transferred approximately $800 million from the 703 Account or IA Business-funded brokerage accounts to the Proprietary Trading Business' bank account held at the Bank of New York (the '621 Account).  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 353-354; 442; Table 15; and Ex. 34; Collura Declaration, Attach. A (Collura Report) at ¶¶ 37; 47 n.28; 57 n.34; and Ex. 4.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 38 and 39.

**TRUSTEE'S REPLY:**  Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 323, nor provides any evidence to the contrary.  Trustee Statement ¶ 323 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 38, 39.

324.    Dubinsky's investigation confirmed that these cash infusions from the IA Business were intended to "prop up" the Proprietary Trading Business and make it appear as if it was generating profits, when in fact it was not profitable.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 30-31, 351-408 and Figures 56-64, 80-84, 87-89.

**RESPONSE: Disputed.** See Response to Trustee's statement nos.8, 38 and 39. Proprietary business had legitimate profits of $572 million. Woodfield Decl., Ex 10 (Madoff Dep. Nov. 13, 2019) at 126:6-14; 127:5-15.

**TRUSTEE'S REPLY**: Defendants' objection to Trustee Statement ¶ 324 does not create an issue of fact that would preclude summary judgment for the Trustee.

The Trustee directs the Court to the Trustee's Reply to Statements ¶¶ 8, 38, 39, and 320.

325.    Dubinsky determined that a significant percentage of the Proprietary Trading Business purported revenue was derived from the improper transfer of customer funds from the IA Business.  *Id.* at ¶ 339.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 324.

**TRUSTEE'S REPLY**:  Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 325, nor provides any evidence to the contrary.  Trustee Statement ¶ 325 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 324.

326.    None of the funds transferred from the IA Business was used to purchase securities on behalf of the IA Business customers.  *Id.* at ¶¶ 30, 352-404, 419, 420, n.334-335.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 38 and 39.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 326, nor provides any evidence to the contrary. Trustee Statement ¶ 326 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d)

The Trustee directs the Court to the Trustee's Reply to Statements ¶¶ 19, 38, 39, and 320.

327. Dubinsky found that in order to make their internal records appear legitimate, the Proprietary Trading Business manually input fake trades and corresponding fictitious profits into its computer systems and trading records in amounts equal to the funds transferred from the IA Business. *Id*. at ¶¶ 355-390; 395-398; 402-404; and Figures 55-79; 84-86; and 90-92.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 324.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 327, nor provides any evidence to the contrary. Trustee Statement ¶ 327 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee directs the Court to the Trustee's Reply to Statements ¶¶ 19, 38, 39, 320, and 324.

328. Dubinsky concluded that these "profits" were not connected to any actual trading in the securities markets. *Id*. at ¶¶ 355-390; 395-398; 402-404; and Figures 55-79; 84-86; and 90-92.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 324.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 328, nor provides any evidence to the contrary. Trustee Statement ¶ 328 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee directs the Court to the Trustee's Reply to Statements ¶¶ 19, 38, 39, 320, and 324.

329.    Dubinsky's analysis also revealed that BLMIS aggregated these associated fictional profits into the Proprietary Trading Business' overall profits and reported these inflated numbers on BLMIS's audited financial statements and regulatory reports, such as FOCUS Reports, to paint a better financial picture.  *Id.* at ¶¶ 30-31; 353-408; and Figures 55-62; 80-84; 87-89; and 92-95.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 8 and 324.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 329, nor provides any evidence to the contrary.  Trustee Statement ¶ 329 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee directs the Court to the Trustee's Reply to Statements ¶¶ 19, 38, 39, 320, and 324.

330.    One of BLMIS's former controllers, Cotellessa-Pitz, confirmed Dubinsky's conclusion at her plea hearing:

> I booked the transfers of funds [from the IA Business] at times into specific securities or trading positions and accounts that were part of the firm's Proprietary Trading and Market Making businesses. I knew that the transfers bore no relation to these securities or positions, and that the funds did not result from trading in these securities through the firm's Proprietary Trading and Market Making businesses and, therefore, that my entries were false. I understood that my entries falsely inflated the revenue, increased the profits, and hid the losses of the Proprietary Trading and Market Making businesses and at the same time did not accurately report the financial condition of BLMIS as a whole.

Griffin Decl. Ex. 19 (Cotellessa-Pitz Allocution) at 32:1-12 (emphasis added); *id.* at 30:19-31:4.

**RESPONSE: Disputed.** Undisputed that Cotellessa-Pitz so stated. See Response to Trustee's statement no. 324.

**TRUSTEE'S REPLY**: Defendants admit the factual statement in Trustee Statement ¶ 330. .  Trustee Statement ¶ 330 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee directs the Court to the Trustee's Reply to Statements ¶¶ 324.

331.    Cotellessa-Pitz further testified that she "transferred the same inaccurate record entries into FOCUS Reports and annual financial statements that I knew would be sent to the SEC." *Id*. at 31:2-4; 31:12-15.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 330.

**TRUSTEE'S REPLY:** Defendants refer to their response to Trustee Statement ¶ 330 where they admit the factual statement in that paragraph.  Therefore, Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 331, nor provides any evidence to the contrary. Trustee Statement ¶ 331 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee directs the Court to the Trustee's Reply to Statement ¶ 330.

332.    Collura analyzed the activity in the IA Business '703 Account and confirmed Dubinsky's findings.  Collura concluded that there were no inflows from sales of securities for the IA Business customer accounts from any source, including from the Proprietary Trading Business. Collura Declaration, Attach. A (Collura Report) at ¶¶ 24; 32; 44; Figure 1; and Ex. 4.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 330.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 330 where they admit the factual statement in that paragraph.  Therefore, Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 332, nor provides any evidence to the contrary.  Trustee Statement ¶ 332 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee directs the Court to the Trustee's Reply to Statement ¶ 330.

333.    Collura determined that 97% of the inflows into the '703 Account were from IA Business customers and the remaining 3% were from cash management activities derived from the use of customer funds. *Id*. at ¶¶ 24; 47; 62; Figure 1; and Ex. 4.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 330.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 330 where they admit the factual statement in that paragraph. Therefore, Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 333, nor provides any evidence to the contrary. Trustee Statement ¶ 333 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee directs the Court to the Trustee's Reply to Statement ¶ 330.

334.    Collura found that none of the 3% of inflows was generated from profits relating to the sales of securities reflected on the IA Business customer statements. *Id*. at ¶¶ 24; 47; 62; Figure 1; and Ex. 4.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 330.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 330 where they admit the factual statement in that paragraph. Therefore, Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 334, nor provides any evidence to the contrary. Trustee Statement ¶ 334 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee directs the Court to the Trustee's Reply to Statement ¶ 330.

### (e)    BLMIS Falsified Its Financial and Regulatory Statements

335.    Dubinsky's forensic investigation showed that BLMIS falsified its financial and regulatory statements from at least the 1970s. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 301-313; n.250; 352-353.

**RESPONSE: Disputed.** All information was not available for Dubinsky to make such a conclusion dating back to the 70s, and he does not have the expertise to make such an opinion. See Response to Trustee's statement no. 38.  Woodfield Decl., Ex. 10 (Madoff Dep. Nov. 13, 2019) at 119:17-25.  Additionally, even if there were false reports, it would not affect the real trades in the accounts of the Avellino Defendants. See Response to Trustee's statement no. 39.

**TRUSTEE REPLY:** Defendants do not dispute the factual statement in Trustee Statement ¶ 335 but rely on testimony unrelated to the substance of the fact in Trustee Statement ¶ 335, and add extraneous statements that are not responsive to the stated fact, are argumentative, consist of legal conclusions, and are not supported by competent evidence.  Accordingly, Defendants' statements should be disregarded and Trustee Statement ¶ 335 should be deemed admitted under Local Rule 7056-1(d).

Nonetheless, it is undisputed that Madoff was operating a Ponzi scheme through his IA Business, Defendants were customers of the IA Business (*see* Trustee's Reply to Statement ¶ 29), the trades in the accounts for the Defendants, including for the Summary Judgment Entity Defendants, were fictitious (*see* Trustee's Reply to Statement ¶ 19), and Dubinsky's expert opinions are admissible.  The Trustee further directs the Court to the Trustee's Reply ¶¶ 38 and 39.

336.    Based on his analysis of BLMIS's FOCUS Reports, Annual Audited Reports, and Form ADV registration statements, Dubinsky concluded that these documents mispresented the actual financial state of BLMIS's affairs.  *Id*. at ¶¶ 301-313; n.250; 352-353.

**RESPONSE: Undisputed.** See Response to Trustee's statement no. 335.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 336 but cites to ¶ 335 which relies on testimony unrelated to the substance of the fact in Trustee

Statements ¶ 335, and adds extraneous statements that are not responsive to the stated fact, are argumentative, consist of legal conclusions, and are not supported by competent evidence. Accordingly, Defendants' statements should be disregarded and Trustee Statement ¶ 336 should be deemed admitted under Local Rule 7056-1(d).

The Trustee directs the Court to the Trustee's Reply to ¶ 335.

337.    In addition to including falsified "profits" based on the funds the IA Business funneled to the Proprietary Trading Business (*see supra* ¶¶ 320-331), Dubinsky determined that the FOCUS Reports and Annual Audited Reports revealed inconsistencies in BLMIS's purported business activities, as well as material misstatements in its financial statements. *Id*. at ¶¶ 306-313, and Table 10.

**RESPONSE: Disputed.** Undisputed that Dubinsky conducted such analysis. See Response to Trustee's statement no. 335.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 337. Trustee Statement ¶ 337 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee further directs the Court to Trustee Reply to ¶ 335.

338.    Specifically, Dubinsky determined that BLMIS inaccurately reported the amount of cash it held, failed to properly reflect its liabilities (such as loans), falsely documented commissions, and did not reflect certain activity typical of a broker conducting trades for investment advisory customers (such as customer receivables, customer payables, and Rule 15c3-3 reserve requirements) on the FOCUS Reports and Annual Audited Reports. *Id*. at ¶¶ 306-313, and Table 10.

**RESPONSE: Disputed.** Undisputed that Dubinsky conducted such analysis. See Response to Trustee's statement no. 335.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 338. Trustee Statement ¶ 338 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee further directs the Court to Trustee Reply to ¶ 335.

339.    BLMIS's Chief Compliance Officer, Peter Madoff, and its two Controllers, Irwin Lipkin, and Enrica Cotellessa-Pitz, pled guilty to manipulating and falsifying its financial records and regulatory filings.  Griffin Decl. Ex. 43 (Peter Madoff Plea) at 33:24-34:5; 35:20-25; 36:15-38:6; 39:11-40:19; Griffin Decl. Ex. 17 (Irwin Lipkin Plea) at 30:4-5, 30:23-31:3, 31:6-32:11; Griffin Decl. Ex. 19 (Cotellessa-Pitz Allocution) at 30:19-31:4; 31:12-15; 32:1-12.

**RESPONSE: Undisputed** they pled guilty.  Dispute that they would have knowledge of fraud. See Response to Trustee's statement no. 134.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 339 but add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence.  Accordingly, Defendants' extraneous statements should be disregarded and Trustee Statement ¶ 339 should be deemed admitted under Local Rule 7056-1(d).

340.    Irwin Lipkin, BLMIS's first employee (who began working at BLMIS in the 1960s) and first Controller, admitted at his plea allocution:

> While working for Bernie Madoff, I made accounting entries in financial records that I knew were inaccurate.  Moreover, I knew the documents containing these false entries were to be filed with various regulatory authorities.  These filings helped Mr. Madoff run the Ponzi scheme that harmed thousands of people.

Griffin Decl. Ex. 17 (Irwin Lipkin Plea Allocution) at 30:23-31:3; s*ee also id. at* 30:4-5, 31:6-32:11.

**RESPONSE: Undisputed.** See Response to Trustee's statement no. 32.

**TRUSTEE'S REPLY:**  Defendants admit the factual statement in Trustee Statement ¶ 340.  Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

341.    This practice of falsifying records continued at BLMIS for decades.  For example, DiPascali and Eric Lipkin also testified during their plea allocutions about falsifying BLMIS's books and records and creating fake reports to mislead the SEC and auditors.  Griffin Decl. Ex. 14 (DiPascali Plea Allocution) at 49:8-21); Griffin Decl. Ex. 18 (Eric Lipkin Plea Allocution) at 32:2-10; 33:22-34:8.

**RESPONSE: Undisputed** that they so testified. See Response to Trustee's statement nos. 25, 34, and 338.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 341.  Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

342.    BLMIS also failed to register as an investment adviser with the SEC at any time between 1979, when registration became a requirement, and when Madoff finally registered in August of 2006.  Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 301-302.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 342.  Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

343.    BLMIS misrepresented the numbers of clients and never filed a Form ADV before August 2006.  *Id*. at ¶¶ 301-303.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 343.  Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

344.    Once BLMIS registered as an investment adviser with the SEC in August 2006, Madoff continued his practice of falsifying his financial reports. Madoff falsified *every* Form ADV he filed by misrepresenting the number of accounts BLMIS maintained and customer assets under management. *Id*. at ¶¶ 302-303.

**RESPONSE: Undisputed.** Avellino Defendants were not IA customers. See Response to Trustee's statement no. 29.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 344, but add extraneous statements that are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. Accordingly, Defendants' extraneous statements should be disregarded and Trustee Statement ¶ 344 should be deemed admitted under Local Rule 7056-1(d).

345.    Further Madoff admitted at his plea allocution:

> [W]hen I recently caused my firm in 2006 to register as an investment adviser with the SEC, I subsequently filed with the SEC a document called the form ADV uniform application for investment adviser registration. On this form I intentionally and falsely certified under penalty of perjury that Bernard L. Madoff Investment Securities had custody of my advisory clients' securities. That was not true, and I knew it when I completed and filed the form with the SEC …

Griffin Decl. Ex. 13 (Madoff Plea) at 28:10-19.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 345. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

**B.    Cash Deposits of IA Customers Were Commingled in the 703 Account, and Were the Source of Payments to Other Customers**

346.    During at least the ten-year period before its collapse on December 11, 2008, BLMIS primarily used three bank accounts for the IA Business: the 703 Account; JPMorgan account #xxxxxxxxx1509 (the "509 Account", together with the 703 Account, the "JPMorgan

Accounts"); and Bankers Trust account #xx-xx0-599 (the "BT Account"). Dubinsky Decl. Attach.
A (Dubinsky Global Report) ¶ 340 n.285; Attach. A (Collura Report) at ¶17.

**RESPONSE: Disputed.** The facts alleged are undisputed. However, the Avellino
Defendants were not customers of IA Business. See Response to Trustee's statement no. 29.

**TRUSTEE'S REPLY**: Defendants admit the factual statement in Trustee Statement ¶ 346.
Defendants' additional response neither raises a genuine dispute with Trustee Statement ¶ 346, nor
provides any evidence to the contrary. Defendants' extraneous statements are not responsive to
the stated fact, are argumentative, and are not supported by competent evidence. This fact is
therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-
1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 29.

347. IA Business customers' cash deposits were deposited and commingled into the 703
Account. Dubinsky Decl. Attach. A (Dubinsky Global Report) ¶ 340; Collura Decl. Attach. A
(Collura Report) at ¶¶ 20–24.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 346.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 346
where they admit the factual statement in that paragraph. Defendants' additional response to
Trustee ¶ 346 neither raises a genuine dispute with Trustee Statement ¶ 347, nor provides any
evidence to the contrary. Trustee Statement ¶ 347 is therefore not controverted, and consequently,
should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 346.

348. IA Business customer withdrawals were made through the JPMorgan Accounts and
the BT Account, which was a checking account entirely funded by the 703 Account during the

period for which bank records are available.  Collura Decl. Attach. A (Collura Report) at ¶¶ 25–30.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 346.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 346 where they admit the factual statement in that paragraph. Defendants' additional response to Trustee ¶ 346 neither raises a genuine dispute with Trustee Statement ¶ 348, nor provides any evidence to the contrary.  Trustee Statement ¶ 348 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 346.

349.    The 703 and 509 Accounts were linked commercial business accounts.  The 509 Account was a controlled disbursement account that was entirely funded by the 703 Account. *Id.* ¶ 25.

**RESPONSE: Disputed.**  See Response to Trustee's statement no. 346.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 346 where they admit the factual statement in that paragraph. Defendants' additional response to Trustee ¶ 346 neither raises a genuine dispute with Trustee Statement ¶ 349, nor provides any evidence to the contrary.  Trustee Statement ¶ 349 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 346.

350.    Cash deposited in the Post-1993 Entity Accounts was deposited in the '703 and '509 accounts, and cash withdrawals for the Post-1993 Entity Accounts were made from the '703 and '509 accounts.  Collura Decl. Attach. B (Collura A&B Report) at ¶¶ 68, 82, 86, and Exs. 7, 9 and 10.

**RESPONSE: Disputed.** Undisputed that Collura's analysis so determined. Disputed to the extent the Trustee implies that the Avellino Defendants knew or should have known the internal operations of BLMIS or that the trades in their accounts were not real.

**TRUSTEE'S REPLY**:  Defendants admit the factual statement in Trustee Statement ¶ 350.  Defendants' objection based on so-called implied facts and not asserted facts is not a sufficient response or denial; it neither raises a genuine dispute with Trustee Statement ¶ 350, nor provides any evidence to the contrary. This fact is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 19, 39.

351.    An analysis of the 703 Account showed that the money in that account consisted almost entirely of customer deposits.  Dubinsky Decl. Attach. A (Dubinsky Global Report) ¶ 340 n.285; Collura Decl. Attach. A (Collura Report) at ¶ 27.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 350.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 350 where they admit the factual statement in that paragraph. Defendants' additional response to Trustee ¶ 350 neither raises a genuine dispute with Trustee Statement ¶ 351, nor provides any evidence to the contrary.  The fact in Trustee Statement ¶ 351 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 350.

352.    Ninety-seven percent of all cash additions into the 703 Account came directly from IA Business customers.  Dubinsky Decl. Attach. A (Dubinsky Global Report) ¶ 340 n.285, Figure 52; Collura Decl. Attach. A (Collura Report) at ¶ 24, Figure 1.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 350.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 350 where they admit the factual statement in that paragraph. Defendants' additional response to Trustee ¶ 350 neither raises a genuine dispute with Trustee Statement ¶ 352, nor provides any evidence to the contrary. The fact in Trustee Statement ¶ 352 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 350.

353. The other three percent of inflows into the 703 Account came from income earned on (1) short-term investment activity made directly from the 703 Account (including overnight sweeps, overnight deposits, commercial paper, Certificates of Deposit and Treasury Bills); and (2) investments of BLMIS customer funds made through bank and brokerage accounts held in the name of BLMIS or Madoff. Collura Decl. Attach. A (Collura Report) at ¶¶ 45–62; Dubinsky Decl. Attach. A (Dubinsky Global Report) at Figure 52 & n.286.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 350.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 350 where they admit the factual statement in that paragraph. Defendants' additional response to Trustee ¶ 350 neither raises a genuine dispute with Trustee Statement ¶ 353, nor provides any evidence to the contrary. The fact in Trustee Statement ¶ 353 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 350.

354. Because the short-term investments, including overnight sweeps, were made directly out of the 703 Account, the source of the money for those investments was customer funds. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 340; Collura Decl. Attach. A (Collura Report) at ¶¶ 24, 46–47.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 350.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 350 where they admit the factual statement in that paragraph. Defendants' additional response to Trustee ¶ 350 neither raises a genuine dispute with Trustee Statement ¶ 354, nor provides any evidence to the contrary. The fact in Trustee Statement ¶ 354 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 350.

355.    For the period prior to December 1998, BLMIS employees maintained handwritten documents going back to 1990 to keep track of cash deposits and withdrawals from the IA Business bank accounts. Collura Decl. Attach. A (Collura Report) at ¶ 41; 44; Griffin Decl. Ex. 29 (Crupi Dep.) at 28:1-7, 29:13-31:20, 90:19-9:3, 106:2-7, 109:7-21.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 29 and 350.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 350 where they admit the factual statement in that paragraph. Defendants' additional response to Trustee ¶ 350 neither raises a genuine dispute with Trustee Statement ¶ 355, nor provides any evidence to the contrary. The fact in Trustee Statement ¶ 355 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶¶ 29 and 350.

356.    Collura determined that the handwritten documents maintained by BLMIS employees were a reliable indicator of cash activity in the IA Business bank accounts in the absence of bank records because she reconciled them to both BLMIS bank records and BLMIS customer statements. Collura Decl. Attach. A (Collura Report) at ¶¶ 15, 36, 40, 43; *see also* Griffin Decl. Ex. 29 (Crupi Dep.) at 112:19-113:1.

**RESPONSE: Disputed.** Undisputed that Collura's analysis so determined. Disputed to the extent the Trustee implies that the Avellino Defendants knew or should have known the internal operations of BLMIS or that their deposits were not used to purchase trades in their account. See Response to Trustee's statement no. 350.

**TRUSTEE'S REPLY**: Defendants admit the factual statement in Trustee Statement ¶ 356. Defendants' objection is based on so-called implied facts and not asserted facts is not a sufficient response or denial; it neither raises a genuine dispute with Trustee Statement ¶ 356, nor provides any evidence to the contrary. Trustee Statement ¶ 356 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee further refers the Court to Trustee's Reply to ¶¶ 350.

357.    The handwritten documents maintained by BLMIS employees going back to 1990 reflect that all IA customer cash was deposited in the commingled IA bank account, and customer withdrawals were paid from these commingled funds. *Id.* at ¶ 44; Griffin Decl. Ex. 29 (Crupi Dep.) at 90:10-92:3.

**RESPONSE: Disputed.** The facts alleged are undisputed however, the Avellino Defendants did not have "IA Business" Accounts. See Response to Trustee's statement nos. 29 and 350.

**TRUSTEE'S REPLY**: Defendants admit the factual statement in Trustee Statement ¶ 357. Defendants' additional response neither raises a genuine dispute with Trustee Statement ¶ 357, nor provide any evidence to the contrary. Defendants' extraneous statements are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. This fact is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee further refers the Court to Trustee's Reply to ¶¶ 29, 350.

358.    Crupi confirmed that the IA Business commingled customer cash deposits and withdrawals in the IA Business bank account going back to at least 1983, if not before.  Griffin Decl. Ex. 29 (Crupi Dep.) at 29:13-31:6, 52:22-53:2, 90:10-92:3.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 29 and 350.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶¶ 29 and 350 where they admit the factual statement in that paragraph. Defendants' additional response to Trustee ¶¶ 29 and 350 neither raises a genuine dispute with Trustee Statement ¶ 358, nor provides any evidence to the contrary.  The fact in Trustee Statement ¶ 358 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee further refers the Court to Trustee's Reply to ¶¶ 29, 350.

**C.    The IA Business Had No Other Source of Funds**

359.    There were no inflows into the 703 Account from sales of securities for customer accounts.  Dubinsky Decl. Attach. A (Dubinsky Global Report) ¶ 340; Collura Decl. Attach. A (Collura Report) at ¶¶ 24, 32.

**RESPONSE: Disputed.** The facts are not disputed. But have no relevance to the real trades in the accounts of the Avellino Defendants. See Response to Trustee's statement nos. 29 and 39.

**TRUSTEE'S REPLY**: Defendants admit the factual statement in Trustee Statement ¶ 359. Defendants' relevance objection and extraneous statements are not responsive to the stated fact, are argumentative, and are not supported by competent evidence.  This fact is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee further refers the Court to Trustee's Reply to ¶¶ 29, 39.

360.    There were no outflows from the 703 Account to purchase securities for customer accounts.  Dubinsky Decl. Attach. A (Dubinsky Global Report) ¶ 350; Collura Decl. Attach. A (Collura Report) at ¶ 32.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 359.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 359 where they admit the factual statement in that paragraph. Defendants' additional response to Trustee ¶ 359 neither raises a genuine dispute with Trustee Statement ¶ 360, nor provides any evidence to the contrary. Defendants' extraneous statements in that paragraph (Trustee ¶ 359) are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. The fact in Trustee Statement ¶ 360 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee refers the Court to Trustee's Reply to ¶ 359.

361.    Apart from two short-term loans BLMIS received from JPMorgan totaling $145 million in November 2005 and January 2006—both of which were repaid by June 2006—the IA Business did not obtain loans from third parties or from the Proprietary Trading Business sufficient to pay the IA Business customer withdrawals. Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶¶ 342–44.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 359.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 359 where they admit the factual statement in that paragraph. Defendants' additional response to Trustee ¶ 359 neither raises a genuine dispute with Trustee Statement ¶ 361, nor provides any evidence to the contrary. Defendants' extraneous statements in that paragraph (Trustee ¶ 359) are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. The fact in Trustee Statement ¶ 361 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee refers the Court to Trustee's Reply to ¶ 359.

362.    The IA Business also did not receive payments of any cash dividends. According to the customer statements, the IA Business reported that it received cash dividends related to purported trading and paid or credited them to the accountholders. Between 1998 and 2008, BLMIS reported that it had paid or credited its customers $4.3 billion in cash dividends. *Id.* at ¶¶ 247–55.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 359.

**TRUSTEE'S REPLY:** Defendants refer to their response to Trustee Statement ¶ 359 where they admit the factual statement in that paragraph. Defendants' additional response to Trustee ¶ 359 neither raises a genuine dispute with Trustee Statement ¶ 362, nor provides any evidence to the contrary. Defendants' extraneous statements in that paragraph (Trustee ¶ 359) are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. The fact in Trustee Statement ¶ 362 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee refers the Court to Trustee's Reply to ¶ 359.

363.    Of the more than 8,300 IA Business dividend transactions identified on the customer account statements from 1998 to 2008, not one purported dividend payment matched to a cash addition to the 703 Account. *Id.* at ¶¶ 253–54.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 253-53 and 359.

**TRUSTEE'S REPLY:** Defendants refer to their response to Trustee Statement ¶ 359 where they admit the factual statement in that paragraph. Defendants' additional response to Trustee ¶ 359 neither raises a genuine dispute with Trustee Statement ¶ 363, nor provides any evidence to the contrary. Defendants' extraneous statements in that paragraph (Trustee ¶ 359) are not responsive to the stated fact, are argumentative, and are not supported by competent evidence.

The fact in Trustee Statement ¶ 363 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee refers the Court to Trustee's Reply to ¶¶ 253, 359.

364.    There is no record of any dividends being received by the IA business. *Id.* at ¶ 248.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 359.

**TRUSTEE'S REPLY:** Defendants refer to their response to Trustee Statement ¶ 359 where they admit the factual statement in that paragraph. Defendants' additional response to Trustee ¶ 359 neither raises a genuine dispute with Trustee Statement ¶ 364, nor provides any evidence to the contrary. Defendants' extraneous statements in that paragraph (Trustee ¶ 359) are not responsive to the stated fact, are argumentative, and are not supported by competent evidence. The fact in Trustee Statement ¶ 364 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee refers the Court to Trustee's Reply to ¶ 359.

365.    Dubinsky concluded that the IA Business did not have any legitimate income-producing activities. The only source of cash available for the IA Business to pay purported investment profits as well as redemption requests from its customers was from cash that other IA Business customers deposited in the 703 Account. *Id.* at ¶¶ 330–37.

**RESPONSE: Disputed.** See Response to Trustee's statement nos. 29 and 38.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 365, nor provides any evidence to the contrary. Trustee Statement ¶ 365 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee further directs the Court to the Trustee's Reply to ¶¶ 29 and 38.

366.    These transactions rendered BLMIS insolvent. By no later than December 2002, its

assets totaled approximately $1.82 billion and its liabilities totaled $11.9 billion. *Id.* at Section VII., ¶¶ 432–33, Table 13.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 38.  Dispute it was insolvent prior to 2002.  Woodfield Decl. Ex.  (Madoff Dep. Nov. 13, 2019) at 124:1-4.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 366, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 366 but add an extraneous statement that is not responsive to the stated fact, is argumentative, and is not supported by competent evidence.  This additional statement should be disregarded.  Trustee Statement ¶ 366 is not specifically controverted and therefore should be deemed admitted under Local Rule 7056-1(d).

367.    In December 2008, BLMIS's capital had dwindled to the point where customer redemptions or withdrawal requests grossly exceeded the amounts it had on hand.  The customer property on hand at BLMIS as of December 11, 2008 was not sufficient to pay the claims of its customers. *Id.* at ¶¶ 40, 440–41.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 367.  Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

368.    Based on his review of BLMIS's books and records, and his evaluations of the IA Business' liabilities to customers, Dubinsky also determined that it was reasonable to conclude that BLMIS was insolvent back to at least 1983. *Id.* at ¶ 434 and Table 14.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 366.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 368, nor provides any evidence to the contrary. Trustee Statement ¶ 368 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 366.

## VII.    The Transfers to the Post-1993 Entity Accounts

### A.    The Post-1993 Entities and Their General Partners

369.    Four of the Post-1993 Entities received fictitious profits in the two-year period for which the Trustee seeks summary judgment on this motion:  Mayfair Ventures, Grosvenor Partners, Aster Associates and St. James Associates.  Greenblatt Decl. Attach. B (Greenblatt A&B Report) at Exs. 7H, 7I, 7L, and 7M.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 39.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 369, nor provides any evidence to the contrary.  Trustee Statement ¶ 369 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 39.

#### 1.    Mayfair Ventures

370.    Mayfair Ventures was a customer of the IA Business. Griffin Decl. Ex. 44 (Frank Avellino's Answer) at ¶ 31, 63; Griffin Decl. Ex. 45 (Defendant Entities' Ans. to Amended Complaint) at ¶¶ 31, 63 and 346; Griffin Decl. Ex. 6 (Customer Agreements for Mayfair); Greenblatt Declaration Attach. B (Greenblatt A&B Report) at ¶ 24.

**RESPONSE: Disputed**. See Response to Trustee's statement no. 39.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 370, nor provides any evidence to the contrary.  Trustee Statement ¶ 370 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 39.

371.   Mayfair Ventures held IA Business Account No. 1ZB032 ("Mayfair Ventures Account").  Griffin Decl. Ex. 10 (BLMIS customer statement for Mayfair ); Greenblatt Declaration Ex. B (Greenblatt A&B Report) at ¶ 24.

**RESPONSE: Disputed** to the extent that it implies Mayfair Ventures was a customer of the IA business. See Response to Trustee's statement no. 39.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 371, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 371 but object based on so-called implied facts.  This objection is not a sufficient response or denial, and accordingly, this factual statement should be deemed admitted pursuant to Local Rule 7056-1(d).

Nevertheless, in the Counterclaims of the Post-1993 Entities, they admit that BLMIS acted as their "investment advisor" and in their Answers, they acknowledge their "IA accounts." Madoff, on whom the Defendants rely, also testified that these accounts were IA Business accounts.

The Trustee refers the Court to Trustee Reply ¶ 39.

372.   Mayfair Ventures was a general partnership formed under the laws of the State of Florida.  Griffin Decl. Ex. 45 (Defendant Entities' Answer) at ¶¶ 63 and 346.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 372. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

373.   Defendants Avellino, Nancy Avellino, Bienes, and Dianne Bienes were general partners of Mayfair Ventures.  Griffin Decl. Ex. 45 (Defendant Entities' Answer) at ¶ 347.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 373. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

### 2.    Grosvenor Partners

374.    Grosvenor Partners was a customer of the IA Business.  Griffin Decl. Ex. 44 (Frank Avellino Answer) at ¶ 31; Griffin Decl. Ex. 45(Defendant Entities' Answer) at ¶ 31; Griffin Decl. Ex. 7 (Customer Agreements for Grosvenor); Greenblatt Declaration Ex. B (Greenblatt A&B Report) at ¶ 24.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 39.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 374, nor provides any evidence to the contrary.  Trustee Statement ¶ 374 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 39.

375.    Grosvenor Partners held IA Business Account No. 1ZB046 ("Grosvenor Partners Account"). Greenblatt Declaration Ex. B (Greenblatt A&B Report) at ¶ 24; Griffin Decl. Ex. 10 (Customer Statement for Grosvenor).

**RESPONSE: Disputed** to the extent that it implies Grosvenor Partners was a customer of the IA business. See Response to Trustee's statement no. 39.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 375, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 375 but object based on so-called implied facts.  This objection is not a sufficient response or denial, and accordingly, this factual statement should be deemed admitted pursuant to Local Rule 7056-1(d).

Nevertheless, in the Counterclaims of the Post-1993 Entities, they admit that BLMIS acted as their "investment advisor" and in their Answers, they acknowledge their "IA accounts." Madoff, on whom the Defendants rely, also testified that these accounts were IA Business accounts.

The Trustee refers the Court to Trustee Reply ¶ 39.

376.    Grosvenor Partners was a limited partnership formed under the laws of the State of Florida.  Griffin Decl. Ex. 49 (Declaration of Frank Avellino, dated May 15, 2009).

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 376. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

377.    Avellino admitted he was a general partner of Grosvenor Partners. Griffin Decl. Ex. 21 (Avellino Dep. Vol. 1) at 227:13-19.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 377. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

378.    Mayfair Ventures was a general partner of Grosvenor Partners, and Avellino, Nancy Avellino, Bienes and Dianne Bienes were general partners of Mayfair Ventures.  Griffin Decl. Ex. 23 (Defts' Am. Resp. to Req. for Admission) at ¶ 60; Griffin Decl. Ex. 45 (Defendant Entities' Answer) at ¶ 347; Griffin Decl. Ex. 44 (Frank Avellino Answer) at ¶ 347.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 378. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

### 3.    Aster Associates

379.    Aster Associates was a customer of the IA Business.  Griffin Decl. Ex. 44 (Frank Avellino Answer) at ¶ 31; Griffin Decl. Ex. 45 (Defendant Entities' Answer) at ¶ 31; Griffin Decl. Ex. 4 (Customer Agreements for Aster Associates).

**RESPONSE: Disputed.** See Response to Trustee's statement no. 39.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 379, nor provides any evidence to the contrary.  Trustee Statement ¶ 379 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 39.

380.    Aster Associates held IA Business Account No. 1ZB509 ("Aster Associates Account").  Griffin Decl. Ex. 8 (Customer Statement for Aster Associates Account);  Greenblatt Declaration Ex. B (Greenblatt A&B Report) at ¶ 24.

**RESPONSE: Disputed** to the extent that it implies Aster Associates was a customer of the IA business. See Response to Trustee's statement no. 39.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 380, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 380 but object based on so-called implied facts.  This objection is not a sufficient response or denial, and accordingly, this factual statement should be deemed admitted pursuant to Local Rule 7056-1(d).

Nevertheless, in the Counterclaims of the Post-1993 Entities, they admit that BLMIS acted as their "investment advisor" and in their Answers, they acknowledge their "IA accounts." Madoff, on whom the Defendants rely, also testified that these accounts were IA Business accounts.

The Trustee refers the Court to Trustee Reply ¶ 39.

381.    Aster Associates was a Florida general partnership.  Griffin Decl. Ex. 44 (Frank Avellino Answer) at ¶¶ 64 and 347; Griffin Decl. Ex. 45 (Defendant Entities' Answer to Amended Complaint) at ¶¶ 64 and 364.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 381. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

382.    Avellino was a general partner of Aster Associates.  Griffin Decl. Ex. 44 (Avellino Answer) at ¶ 365; Griffin Decl. Ex. 45 (Defendant Entities' Answer) at ¶ 365.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 382. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

383.    Nancy Avellino was a general partner of Aster Associates.  Griffin Decl. Ex. 46 (Nancy Avellino Answer) at ¶ 365.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 383. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

384.    Heather Lowles was a general partner of Aster.  Griffin Decl. Ex. 44 (Defendant Frank Avellino's Answer) at ¶ 80; Griffin Decl. Ex. 45 (Defendant Entities' Answer) at ¶ 80.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 384. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

385.    Rachel A. Rosenthal, also known as Rachel Liersch, was a general partner of Aster Associates.  Griffin Decl. Ex. 47 (Defendant Rachel A. Rosenthal's Answer) at ¶ 77.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 385.

Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

386.    Rachel Anne Rosenthal Trust U/A dated June 29, 1990 was a general partner of

Aster Associates.  Griffin Decl. Ex. 47 (Defendant Rachel A. Rosenthal's Answer) at ¶ 78; Griffin

Decl. Ex. 45 (Defendant Entities' Answer) at ¶ 78.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 386.

Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

387.    Rachel Anne Rosenthal Trust Number 2 U/A dated June 24, 1992 was a general

partner of Aster Associates.  Griffin Decl. Ex. 45 (Defendant Entities' Answer) at ¶ 79.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 387.

Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

### 4.    St. James Associates

388.    St. James Associates was a customer of the IA Business.  Griffin Decl. Ex. 7

(Customer Agreements for St. James Associates); Greenblatt Decl. Ex. B (Greenblatt A&B

Report) at ¶ 24.

**RESPONSE: Disputed** to the extent that it implies St. James Associates was a customer

of the IA business. See Response to Trustee's statement no. 39.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee

Statement ¶ 388, nor provides any evidence to the contrary.  Defendants do not specifically rebut

the factual statement in Trustee Statement ¶ 388 but object based on so-called implied facts.  This

objection is not a sufficient response or denial, and accordingly, this factual statement should be deemed admitted pursuant to Local Rule 7056-1(d).

Nevertheless, in the Counterclaims of the Post-1993 Entities, they admit that BLMIS acted as their "investment advisor" and in their Answers, they acknowledge their "IA accounts." Madoff, on whom the Defendants rely, also testified that these accounts were IA Business accounts.

The Trustee refers the Court to Trustee Reply ¶ 39.

389.    St. James Associates held IA Business Account No. 1ZB510 ("St. James Associates Account").  Greenblatt Declaration Ex. B (Greenblatt A&B Report) at ¶ 24; Griffin Decl. Ex. 11 (Customer Statement for St. James).

**RESPONSE: Disputed** to the extent that it implies St. James Associates was a customer of the IA business. See Response to Trustee's statement no. 39.

**TRUSTEE'S REPLY**: Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 389, nor provides any evidence to the contrary.  Defendants do not specifically rebut the factual statement in Trustee Statement ¶ 389 but object based on so-called implied facts and not asserted facts.  This objection is not a sufficient response or denial, and accordingly, this factual statement should be deemed admitted pursuant to Local Rule 7056-1(d).

Nevertheless, in the Counterclaims of the Post-1993 Entities, they admit that BLMIS acted as their "investment advisor" and in their Answers, they acknowledge their "IA accounts." Madoff, on whom the Defendants rely, also testified that these accounts were IA Business accounts.

The Trustee refers the Court to Trustee Reply ¶ 39.

390.    St. James Associates was a general partnership formed under the laws of the State of Florida.  Griffin Decl. Ex. 23 (Defts' Am. Resp. to Req. for Admission) at ¶ 52; Griffin Decl. Ex. 48 (Bienes' and St. James Answer) at ¶ 65.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 390. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

391.    Bienes and Dianne Bienes were general partners of St. James Associates.  Griffin Decl. Ex. 23 (Defts' Am. Resp. to Req. for Admission) at ¶ 53.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 391. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

### 5.    The General Partners of the Summary Judgment Entity Defendants

392.    Avellino was a general partner of Mayfair Ventures, Grosvenor Partners, and Aster Associates.  Griffin Decl. Ex. 45 (Defendant Entities' Answer to Amended Complaint) at ¶ 347; Griffin Decl. Ex. 21 (Avellino Dep. Vol. 1) at 227:13-19; Griffin Decl. Ex. 44 (Avellino Answer) at ¶ 365; Griffin Decl. Ex. 50 (Excerpt of Grosvenor 2005 Tax Return).

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 392. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

393.    Nancy Avellino is a general partner of Mayfair Ventures and Aster Associates. Griffin Decl. Ex. 45 (Defendant Entities' Answer) at ¶ 347; Griffin Decl. Ex. 46 (Nancy Avellino Answer) at ¶ 365; Griffin Decl. Ex. 50 (Excerpt from Grosvenor Tax Return).

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 393. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

394.    Heather Lowles is a general partner of Aster Associates.  Griffin Decl. Ex. 44 (Defendant Frank Avellino's Answer) at ¶ 80.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 394. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

395.    On November 16, 2017, Bienes was substituted with the Estate of Michael S. Bienes, and Dianne K. Bienes, in her capacity as Personal Representative for the Estate of Michael S. Bienes.  Stipulation and Order for Substitution of the Estate of Michael S. Bienes and Dianne K. Bienes, in her Capacity as Personal Representative of the Estate of Michael S. Bienes, in Place of Deceased Defendant Michael S. Bienes, dated November 16, 2017, ECF No. 170.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 395. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

396.    Bienes was a general partner of Mayfair Ventures and St. James Associates.  Griffin Decl. Ex. 45 (Defendant Entities' Answer) at ¶ 347; Griffin Decl. Ex. 23 (Defts. Am. Resp. to Request for Admission) at ¶ 53.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 396. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

397.    Dianne Bienes is a general partner of Mayfair Ventures and St. James Associates. Griffin Decl. Ex. 45 (Defendant Entities' Answer) at ¶ 347; Griffin Decl. Ex. 23 (Defts. Am. Resp. to Req. for Admission) at ¶ 53.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 397. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

398.    Mayfair Ventures was a general partner of Grosvenor Partners.  Griffin Decl. Ex. 23 (Defts. Am. Resp. to Req. for Admission) at ¶ 60.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 398. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

### B.    Greenblatt's Principal Balance Calculation

399.    Greenblatt calculated the principal balance for each IA Business account (the "Principal Balance Calculation").  In his Principal Balance Calculation, Greenblatt applied the Net Equity Investment Method (the Trustee's cash in/cash out net equity methodology), which takes into account all of the principal and cash transactions into and out of the IA Business accounts. Declaration of Matthew B. Greenblatt, dated February 3, 2022 ("Greenblatt Decl."), Attach. A (Expert Report of Matthew G. Greenblatt, CPA/CFF, CFE dated November 15, 2012 ("Greenblatt Report")) at ¶¶ 4-5.

**RESPONSE: Disputed.** Undisputed that he did the calculation. However, dispute the Avellino Defendants had IA accounts.  See Response to Trustee's statement no. 29. Also disputed that utilization of the Net Equity Investment Method to determine the net equity of the Avellino Defendants is not appropriate. See Section IIF of the Defendants' Memo.

**TRUSTEE'S REPLY**: Defendants admit the factual statement in Trustee Statement ¶ 399. Defendants' additional response neither raises a genuine dispute with Trustee Statement ¶ 399, nor provide any evidence to the contrary. Defendants add extraneous statements that are not responsive to the stated fact, are legal conclusions, are argumentative, and are not supported by competent evidence. This fact is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

400.    Greenblatt prepared a chronological listing of cash and principal transactions reflected in the BLMIS customer statements. Greenblatt relied on the customer statements because they are the most comprehensive and complete accounting of the debtor's books and records with respect to transaction-by-transaction line item detail of the cash and principal transactions and because the customer statements were sent to customers, giving customer the opportunity to correct errors on the statements. Greenblatt Decl. Attach. A (Greenblatt Report) at ¶¶ 10-12, 40-43.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 399.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 399 where they admit the factual statement in that paragraph. Defendants' additional response to Trustee ¶ 399 neither raises a genuine dispute with Trustee Statement ¶ 400, nor provides any evidence to the contrary. Trustee Statement ¶ 400 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee refers the Court to Trustee's Reply to ¶ 399.

401.    The first monthly customer statement which reported dollar amounts for any securities allegedly held at month end was March of 1981. Therefore, the full period in which the

Principal Balance Calculation could be performed covered the time period from April 1, 1981 through December 11, 2008. *Id.* at ¶ 5 n.1.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 399.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 399 where they admit the factual statement in that paragraph. Defendants' additional response to Trustee ¶ 399 neither raises a genuine dispute with Trustee Statement ¶ 401, nor provides any evidence to the contrary. Trustee Statement ¶ 401 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee refers the Court to Trustee's Reply to ¶ 399.

402.    Greenblatt identified that, over the course of forty years, the Defendants maintained 18 different accounts with the IA Business:  the seven Post-1993 Entity Accounts, which include the accounts held by the Summary Judgment Entity Defendants, and eleven accounts that were held prior to January 1, 1993 (the "Pre-1993 A&B Accounts"). *Id.* at ¶¶ 22-24. Greenblatt applied the principal balance calculation to all of these accounts. Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶¶ 25-68.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 399.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 399 where they admit the factual statement in that paragraph. Defendants' additional response to Trustee ¶ 399 neither raises a genuine dispute with Trustee Statement ¶ 402, nor provides any evidence to the contrary. Trustee Statement ¶ 402 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee refers the Court to Trustee's Reply to ¶ 399.

1.      **Principal Balance Calculation for Mayfair Ventures Account 1ZB032**

403.    For Greenblatt's analysis with respect to Mayfair Ventures Account 1ZB032, his Principal Balance Calculation covered the period from the account opening through December 11, 2008.  Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶¶ 54-64, and Exs. 3A and 7H thereto.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 399.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 399 where they admit the factual statement in that paragraph. Defendants' additional response to Trustee ¶ 399 neither raises a genuine dispute with Trustee Statement ¶ 403, nor provides any evidence to the contrary.  Trustee Statement ¶ 403 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee refers the Court to Trustee's Reply to ¶ 399.

404.    Greenblatt determined that on February 11, 1993, the Mayfair Ventures Account 1ZB032 was opened with a cash deposit of $26,000,000, which represented principal.  Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶ 58 and Ex. 7H thereto.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 404. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

405.    On March 28, 1995, there was an additional cash deposit of $2,000,000.  Both of the cash deposits represent principal of $28,000,000.  Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶¶ 59, 60, and Ex. 3A thereto.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 405. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

406.    During the life of the Mayfair Ventures Account 1ZB032, there were 29 cash withdrawals of $27,850,000.  Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶ 61, Exs. 3A and Ex. 7H.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 406. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

407.    In addition, on July 3, 1995, there was an inter-account transfer of $18,000,000 from the Mayfair Ventures Account 1ZB032 to the Grosvenor Partners Account 1ZB046. Greenblatt determined that at the time of the transfer, the Mayfair Ventures Account had only $4,500,000 of principal available, and thus the remaining balance of that reported inter-account transfer from Mayfair Ventures Account to the Grosvenor Partners Account 1ZB046 consisted of fictitious profits.  Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶ 62 and Exs. 7H and & 7I thereto.

**RESPONSE: Disputed.** Undisputed that the transactions identified occurred. Disputed that such transactions involved "fictitious profits". See Response to Trustee's statement nos. 39 and 399.

**TRUSTEE'S REPLY**: Defendants admit the factual statement in Trustee Statement ¶ 407 but add an improper legal conclusion.This fact is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to Statements ¶¶  39 and 399.

408.    Between April 1, 2002 and March 1, 2005, Greenblatt identified five additional inter-account transfers from the Mayfair Ventures Account 1ZB032 to the Grosvenor Partners Account 1ZB046 in the aggregate amount of $22,003,827.  Greenblatt determined that at the time

of the transfer, the Mayfair Ventures Account had a negative principal balance and there was no principal available to be transferred into the Grosvenor Partners Account. Accordingly, they were not credited as principal to the Grosvenor Partners Account. Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶ 63 and Exs. 7H and 7I thereto.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 408. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

409. The Principal Balance Calculation for the Mayfair Ventures Account demonstrates that between February 11, 1993 and December 11, 2008, $32,350,000 was withdrawn from or transferred within BLMIS, which consisted of $28,000,000 of principal and an additional $4,350,000 of funds withdrawn in excess of principal, representing fictitious profits over the life of the Mayfair Ventures Accounts. Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶ 64 and Exs. 3A and 7H thereto.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 407.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 407 where they admit the factual statement in that paragraph. Defendants' additional response to Trustee ¶ 407 neither raises a genuine dispute with Trustee Statement ¶ 409, nor provides any evidence to the contrary. Trustee Statement ¶ 409 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee refers the Court to Trustee's Reply to ¶ 407.

410. Within the Two-Year Period prior to December 11, 2008, $2,500,000 in fictitious profits was withdrawn from the Mayfair Ventures Account 1ZB032. Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶ 64 and Ex. 7H thereto.

234

**RESPONSE: Disputed.** See Response to Trustee's statement no. 407.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 407 where they admit the factual statement in that paragraph. Defendants' additional response to Trustee ¶ 407 neither raises a genuine dispute with Trustee Statement ¶ 410, nor provides any evidence to the contrary. Trustee Statement ¶ 410 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee refers the Court to Trustee's Reply to ¶ 407.

## 2. Principal Balance Calculation for the Grosvenor Partners Account 1ZB046

411. For Greenblatt's analysis with respect to the Grosvenor Partners Account 1ZB046, his Principal Balance Calculation covered the period from the account opening through December 11, 2008. Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶¶ 65-116 and Exs. 3A and 7I thereto.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 407.

**TRUSTEE'S REPLY:** Defendants refer to their response to Trustee Statement ¶ 407 where they admit the factual statement in that paragraph. Defendants' additional response to Trustee ¶ 407 neither raises a genuine dispute with Trustee Statement ¶ 411, nor provides any evidence to the contrary. Trustee Statement ¶ 411 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee refers the Court to Trustee's Reply to ¶ 407.

412. Greenblatt determined that the Grosvenor Partners Account 1ZB046 was opened with three cash deposits via wires were made into the Grosvenor Partners Account on February 26, 1993 which totaled $1,740,000, representing principal. Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶¶ 65 and 108, and Ex. 7I thereto.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 412. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

413.    Subsequent to these initial cash deposits, there were 23 additional cash deposits via checks and wires into the Grosvenor Partners Account in the aggregate amount of $29,411,600, all representing principal.  Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶ 109 and Ex. 7I thereto.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 413. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

414.    On July 3, 1995 and May 3, 2001, there were two inter-account transfers from the Mayfair Ventures Account 1ZB032 and IA Business Account 1J0049 into the Grosvenor Partners Account: $18,000,000 from the Mayfair Ventures Account on July 3, 1995; and $5,603,255 from IA Business Account 1J0049 on May 3, 2001.  However, the Grosvenor Partners Account 1ZB046 was only credited with $4,500,000 and $1,700,000 of principal respectively for these transfers, because the remaining balance of the transfers constituted fictitious profits.  Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶ 110 and Exs. 7G-7I thereto.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 407.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 407 where they admit the factual statement in that paragraph.  Defendants' additional response to Trustee ¶ 407 neither raises a genuine dispute with Trustee Statement ¶ 414, nor provides any evidence to the contrary.  Trustee Statement ¶ 414 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee refers the Court to Trustee's Reply to ¶ 407.

415.    Between July 25, 2001 and March 1, 2005, there were six inter-account transfers from IA Business Account 1J0049 and Mayfair Ventures Account 1ZB032 into the Grosvenor Partners Account in the aggregate amount of $22,006,701.   However, these amounts were not credited as principal into the Grosvenor Partners Account because they constituted fictitious profits.  Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶ 111 and Exs. 7G-7I thereto.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 407.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 407 where they admit the factual statement in that paragraph.  Defendants' additional response to Trustee ¶ 407 neither raises a genuine dispute with Trustee Statement ¶ 415, nor provides any evidence to the contrary.  Trustee Statement ¶ 415 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee refers the Court to Trustee's Reply to ¶ 407.

416.    In addition, on March 3, 2004, there was an inter-account transfer from IA Business Account 1ZB262 into Grosvenor Partners Account in the amount of $6,000,000.   Greenblatt determined that at the time of the transfer, Account 1ZB262 had sufficient principal to transfer the full amount to Grosvenor Partners Account, and therefore $6,000,000 was credited as principal to this account.  Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶ 112 and Ex. 7I and 7J thereto.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 416. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

417.    In total, Greenblatt identified 26 cash deposits and nine inter-account transfers which provided the Grosvenor Partners Account with a total of $43,351,600 of principal. Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶ 113, and Exs. 3A and 7I thereto.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 417. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

418.    During the life of the Grosvenor Partners Account, there were a total of 131 cash withdrawals totaling $101,603,000.  Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶ 114 and Exs. 3A and 7I thereto.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 418. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

419.    There were also 16 inter-account transfers made by the Grosvenor Partners Account to other related IA Business accounts in the aggregate amount of $77,763,276.  However, these sums were not credited as principal to those accounts because there was no principal available to be transferred due to the negative principal balances in the Grosvenor Partners Account at the time of these inter-account transfers.  Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶ 115 and Exs. 3A and 7I thereto.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 419. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

420.    The Principal Balance Calculation for the Grosvenor Partners Account demonstrates that between February 26, 1993 and December 11, 2008, $101,603,000 was

withdrawn from or transferred within BLMIS, which consisted of $43,351,600 of principal and an additional $58,251,400 of funds withdrawn in excess of principal, representing fictitious profits over the life of the Grosvenor Partners Accounts. Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶ 116 and Exs. 3A and 7I thereto.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 407.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 407 where they admit the factual statement in that paragraph. Defendants' additional response to Trustee ¶ 407 neither raises a genuine dispute with Trustee Statement ¶ 420, nor provides any evidence to the contrary. Trustee Statement ¶ 420 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee refers the Court to Trustee's Reply to ¶ 407.

421.    Within the Two-Year Period prior to December 11, 2008, $2,500,000 of fictitious profits was withdrawn from the Grosvenor Partners Account. Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶ 116 and Ex. 7I thereto.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 407.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 407 where they admit the factual statement in that paragraph. Defendants' additional response to Trustee ¶ 407 neither raises a genuine dispute with Trustee Statement ¶ 421, nor provides any evidence to the contrary. Trustee Statement ¶ 421 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee refers the Court to Trustee's Reply to ¶ 407.

### 3.    Principal Balance Calculation for the Aster Associates Account 1ZB509

422.    For Greenblatt's analysis with respect to the Aster Associates Account 1ZB509, his Principal Balance Calculation covered the period from the account opening through December 11,

2008.  Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶¶ 142-151 and Exs. 3A and 7L thereto.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 422. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

423.    The Aster Associates Account 1ZB509 was opened on June 30, 2004.  Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶¶ 142, 148, and Ex. 7L thereto.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 423. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

424.    The account was opened with an inter-account transfer of $5,000,000 on June 30, 2004 from the Grosvenor Partners Account 1ZB046.  However, this amount was not credited to the Aster Associates Account 1ZB509 as principal because it constituted fictitious profits. Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶ 148 and Exs. 3A, 7I and 7L thereto.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 407.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 407 where they admit the factual statement in that paragraph.  Defendants' additional response to Trustee ¶ 407 neither raises a genuine dispute with Trustee Statement ¶ 424, nor provides any evidence to the contrary.  Trustee Statement ¶ 424 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee refers the Court to Trustee's Reply to ¶ 407.

425.    Subsequent to the initial inter-account transfer, there were three additional inter-account transfers from the Grosvenor Partners Account 1ZB046 to the Aster Associates Account

1ZB509 in the aggregate amount of $16,496,288.  However, none of these were credited into the

Aster Associates Account because these inter-account transfers constituted fictitious profits.

Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶ 149 and Exs. 3A, 7I and 7L thereto.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 407.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 407

where they admit the factual statement in that paragraph.  Defendants' additional response to

Trustee ¶ 407 neither raises a genuine dispute with Trustee Statement ¶ 425, nor provides any

evidence to the contrary.  Trustee Statement ¶ 425 is therefore not controverted, and consequently,

should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee refers the Court to Trustee's Reply to ¶ 407.

426.    During the life of the Aster Associates Account, there were 12 cash withdrawals in

the aggregate amount of $7,000,000.  Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶

150, Exs. 3A and 7L thereto.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 426.

Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

427.    The Principal Balance Calculation for the Aster Associates Account demonstrates

that between June 30, 2004 and December 11, 2008, $7,000,000 was withdrawn from BLMIS,

which consisted entirely of funds withdrawn in excess of principal, representing fictitious profits

over the life of the Aster Associates Account.  Greenblatt Decl. Attach. B (Greenblatt A&B Report)

at ¶ 151 and Exs. 3A and 7L thereto.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 407.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 407 where they admit the factual statement in that paragraph. Defendants' additional response to Trustee ¶ 407 neither raises a genuine dispute with Trustee Statement ¶ 427, nor provides any evidence to the contrary. Trustee Statement ¶ 427 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee refers the Court to Trustee's Reply to ¶ 407.

428.    Within the Two-Year Period prior to December 11, 2008, $3,500,000 in fictitious profits was withdrawn from Aster Associates Account 1ZB509. Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶ 151 and Ex. 7L thereto.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 407.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 407 where they admit the factual statement in that paragraph. Defendants' additional response to Trustee ¶ 407 neither raises a genuine dispute with Trustee Statement ¶ 428, nor provides any evidence to the contrary. Trustee Statement ¶ 428 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee refers the Court to Trustee's Reply to ¶ 407.

### 4.    Principal Balance Calculation for the St. James Associates Account 1ZB510

429.    For Greenblatt's analysis with respect to the St. James Associates Account 1ZB510, his Principal Balance Calculation covered the period from the account opening through December 11, 2008. Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶¶152-162 and Exs. 3A and 7M thereto.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 429. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

430.    St. James Associates Account 1ZB510 was opened on June 30, 2004.  Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶¶ 152 and 158 and Ex. 7M thereto.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 430. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

431.    The St. James Associates Account was opened with an inter-account transfer of $5,000,000 from the Grosvenor Partners Account 1ZB046.  However, this amount was not credited as principal because the inter-account transfer constituted fictitious profits.  Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶ 158 and Exs. 3A, 7I and 7M thereto.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 407.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 407 where they admit the factual statement in that paragraph.  Defendants' additional response to Trustee ¶ 407 neither raises a genuine dispute with Trustee Statement ¶ 431, nor provides any evidence to the contrary.  Trustee Statement ¶ 431 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee refers the Court to Trustee's Reply to ¶ 407.

432.    Subsequent to the initial inter-account transfer, there were three additional inter-account transfers from the Grosvenor Partners Account 1ZB046 in the aggregate amount of $40,886,988.  However, none of these were credited as principal into the St. James Associates Account 1ZB510 because these inter-account transfers constituted fictitious profits.  Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶ 159 and Exs. 3A, 7I and 7M thereto.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 407.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 407 where they admit the factual statement in that paragraph.  Defendants' additional response to Trustee ¶ 407 neither raises a genuine dispute with Trustee Statement ¶ 432, nor provides any evidence to the contrary. Trustee Statement ¶ 432 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee refers the Court to Trustee's Reply to ¶ 407.

433.    In addition, on July 29, 2008, there was a cash deposit via wire into the St. James Associates Account in the amount of $1,000,000, representing principal.  Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶ 160 and Exs. 3A and 7M thereto.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 433. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

434.    During the life of the St. James Associates Account 1ZB510, there were 22 cash withdrawals in the aggregate amount of $18,450,000.  Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶ 161 and Exs. 3A and 7M thereto.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 434. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

435.    The Principal Balance Calculation for the St. James Associates Account demonstrates that between June 30, 2004 and December 11, 2008, $18,450,000 was withdrawn from BLMIS, which consisted of $1,000,000 in principal and an additional $17,450,000 of funds withdrawn in excess of principal, representing fictitious profits over the life of the St. James

Associates Account.  Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶ 162 and Exs. 3A and 7M thereto.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 407.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 407 where they admit the factual statement in that paragraph.  Defendants' additional response to Trustee ¶ 407 neither raises a genuine dispute with Trustee Statement ¶ 435, nor provides any evidence to the contrary.  Trustee Statement ¶ 435 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee refers the Court to Trustee's Reply to ¶ 407.

436.    Within the Two-Year Period prior to December 11, 2008, $8,700,000 in fictitious profits was withdrawn from the St. James Associates Account 1ZB510.  Greenblatt Decl. Attach. B (Greenblatt A&B Report) at ¶ 162 and Ex. 7M thereto.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 407.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 407 where they admit the factual statement in that paragraph.  Defendants' additional response to Trustee ¶ 407 neither raises a genuine dispute with Trustee Statement ¶ 436, nor provides any evidence to the contrary.  Trustee Statement ¶ 436 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee refers the Court to Trustee's Reply to ¶ 407.

437.    Greenblatt determined that between February 1993 to December 2008, the Pre-1993 A&B Accounts and the Post-1993 Entity Accounts received more than $900 million in total transfers, of which more than $572 million constituted fictitious profits.  Greenblatt Decl. Attach.

B (Greenblatt A&B Report) at ¶¶ 22-25, 50, 51, 64, 116, 129, 151 and 162, chart on page 17, and exhibits cited therein.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 407.

**TRUSTEE'S REPLY**: Defendants refer to their response to Trustee Statement ¶ 407 where they admit the factual statement in that paragraph. Defendants' additional response to Trustee ¶ 407 neither raises a genuine dispute with Trustee Statement ¶ 437, nor provides any evidence to the contrary. Trustee Statement ¶ 437 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

Nevertheless, the Trustee refers the Court to Trustee's Reply to ¶ 407.

### C.  Collura's Reconciliation Analyses

438.  Collura reconciled the cash transactions reflected on the statements of the BLMIS customer accounts with available records and trace the flow of those funds. Collura Decl. Attach. A. (Collura Report) at ¶ 7; Collura Decl. Attach. B ("Collura A&B Report") at ¶ 10, Assignment III.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 438. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

439.  For her reconciliation and tracing analyses, Collura reviewed available third-party bank records. These bank records include hundreds of thousands of pages of BLMIS bank statements, wire transfer data, cancelled checks, and deposit slips. Collura Decl. Attach. A (Collura Report) at ¶ 10. The reconciliation of the customer statements and bank records was conducted to determine whether the cash transactions on the IA Business customer statements were accurately reflected as cash transactions—cash deposits or cash withdrawals. *Id.* ¶¶ 15, 31.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 439. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

440.    Collura confirmed that the deposit and withdrawal transactions identified on the BLMIS customer statements corresponded to transactions on the available third-party bank records in the same amount, on or around the same date, and to or for the benefit of the same customer. *Id.* ¶ 22, Collura Decl. Attach. B (Collura A&B Report) at ¶ 68.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 440. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

441.    Collura reviewed over 225,000 transactions on the customer statements, and over 150,000 transactions on the bank records.  She kept track of these transactions by assigning a unique identifier to each of the cash transactions on the customer statements and a different unique identifying number to all of the transactions in the bank records.  Collura Decl. Attach. A (Collura Report) at ¶¶ 10, 23.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 441. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

442.    Of the over 225,000 transactions reflected on BLMIS customer statements from December 1998 to December 2008, Collura was able to reconcile 99% of these cash transactions to BLMIS bank records.  *Id.* ¶¶ 15, 31.

**RESPONSE: Undisputed**.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 442. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

443.    Collura also conducted a reconciliation analysis with respect to the cash transactions in the accounts of the Summary Judgment Entity Defendants.  From the chronological listing of all cash and principal transactions for every BLMIS customer account compiled by FTI, she identified 298 cash deposit and withdrawal transactions in the customer statements for the accounts of the Post-1993 Entities.  Collura Decl. Attach. B (Collura A&B Report) at ¶ 67.

**RESPONSE: Undisputed**.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 443. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

444.    Collura reconciled the 298 cash transactions in the accounts of the Post-1993 Entities to available BLMIS bank records, documents contained in BLMIS customer files, and/or documents produced to the Trustee related to the A&B Entity Defendants.  *Id.* at ¶ 67.

**RESPONSE: Undisputed**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 444. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

445.    From her analyses, Collura reconciled a total of 289 of the 298 cash transactions in the accounts of the Post-1993 Entities (including the Summary Judgment Entity Defendants), or approximately 97% to available BLMIS bank records, documents contained in BLMIS customer files, and/or documents produced to the Trustee related to the Post-1993 Entities.  *Id.* at ¶¶ 68-76. She was unable to reconcile the remaining cash transactions due to the unavailability of records related to transactions dated between March 1993 and June 1995.  *Id.* at ¶ 78.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 445. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

446.    Based on her review of documents contained in the customer files maintained at BLMIS, Collura did not find any instance of the Post-1993 Entities (including the Summary Judgment Entity Defendants) communicating to BLMIS any disagreement with respect to the accuracy of any cash transaction reflected on the customer statements for those accounts. *Id.* at ¶ 78.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 446. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

D.    **Collura's Tracing Analyses**

447.    Collura was also asked to determine whether transfers of BLMIS funds during the Post January 2001 Period could be traced to bank accounts held by the Summary Judgment Entity Defendants, by following the flow of funds from one bank account to another.  Collura Decl. Attach. B (Collura A&B Report) at ¶ 80 and Ex. 9.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 447. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

448.    To perform her tracing analyses, Collura reviewed the available BLMIS records, as well as bank records produced to the Trustee by third-party financial institutions related to bank accounts held by the Summary Judgment Entity Defendants.  Collura Decl. Attach. B (Collura A&B Report) at ¶¶ 81-85.

**RESPONSE: Undisputed**.

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 448. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

449.    As detailed below, from her analyses, Collura was able to trace 100% of the transfers BLMIS made in the Post January 2001 Period to bank accounts held in the name of the Post-1993 Entities, including the transfers of the $17.2 million in fictitious profits made to the Summary Judgment Entity Defendants in the Two-Year Period.  Collura Decl. Attach. B (Collura A&B Report) at ¶ 86 and Exs. 9 and 10.

**RESPONSE: Disputed.** Undisputed that Collura performed such analysis. Disputed that such calculations have any relevance to the issues raised in the Trustee's motion. See Response to Trustee's statement no. 407.

**TRUSTEE'S REPLY**: Defendants admit the factual statement in Trustee Statement ¶ 449. Defendants' contention that Trustee Statement ¶ 449 is not relevant is not a sufficient response or denial; it neither raises a genuine dispute with Trustee Statement ¶ 449, nor provides any evidence to the contrary.  This fact is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 407.

### 1.    Tracing Results of Mayfair Ventures Account No. 1ZB032

450.    For Collura's tracing analysis with respect to Mayfair Ventures, she analyzed the cash withdrawals from the Mayfair Account during the Post January 2001 Period.  Collura Decl. Ex. B (Collura A&B Report) at ¶ 86, and Exs. 9 and 10.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY**: Defendants admit the factual statement in Trustee Statement ¶ 450. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

451.    Based on available bank records from BLMIS, Collura traced 100% of the total amount of cash withdrawals reflected on the customer statements for the Mayfair Ventures Account 1ZB032 during the Post January 2001 Period, including the $2.5 million in fictitious

profits transferred in the Two-Year Period, to a bank account held by or for the benefit of Mayfair.

*Id.*

**RESPONSE: Disputed.** See Response to Trustee's statement no. 449.

**TRUSTEE'S REPLY:** Defendants refer to their response to Trustee Statement ¶ 449 where they admit the factual statement in that paragraph. Defendants' additional response to Trustee ¶ 449 neither raises a genuine dispute with Trustee Statement ¶ 451, nor provides any evidence to the contrary. Trustee Statement ¶ 451 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 449.

## 2.    Tracing Results of Grosvenor Partners Account No. 1ZB046

452.    For Collura's tracing analysis with respect to Grosvenor, she analyzed the cash withdrawals from the Grosvenor Partners Account 1ZB046 during the Post January 2001 Period. Collura Decl. Attach. B (Collura A&B Report) at ¶ 86, and Exs. 9 and 10.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 452. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

453.    Based on available bank records from BLMIS, Collura traced 100% of the total amount of cash withdrawals reflected on the customer statements for the Grosvenor Partners Account 1ZB046 during the Post January 2001 Period, including the $2.5 million in fictitious profits transferred in the Two-Year Period, to a bank account held by or for the benefit of Grosvenor Partners. *Id.*

**RESPONSE: Disputed.** See Response to Trustee's statement no. 449.

**TRUSTEE REPLY:** Defendants refer to their response to Trustee Statement ¶ 449 where they admit the factual statement in that paragraph. Defendants' additional response to Trustee ¶

449 neither raises a genuine dispute with Trustee Statement ¶ 453, nor provides any evidence to the contrary. Trustee Statement ¶ 453 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 449.

### 3.    Tracing Results of Aster Associates Account No. 1ZB509

454.    For Collura's tracing analysis with respect to Aster Associates, she analyzed the cash withdrawals from the Aster Associates Account 1ZB509 during the Post January 2001 Period. Collura Decl. Attach. B (Collura A&B Report) at ¶ 86, and Exs. 9 and 10.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 454. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

455.    Based on available bank records from BLMIS, Collura traced 100% of the total amount of cash withdrawals reflected on the customer statements for the Aster Associates Account 1ZB509 during the Post January 2001 Period, including the $3.5 million in fictitious profits transferred in the Two-Year Period, to a bank account held by or for the benefit of Aster Associates. *Id.*

**RESPONSE: Disputed.** See Response to Trustee's statement no. 449.

**TRUSTEE REPLY:** Defendants refer to their response to Trustee Statement ¶ 449 where they admit the factual statement in that paragraph. Defendants' additional response to Trustee ¶ 449 neither raises a genuine dispute with Trustee Statement ¶ 455, nor provides any evidence to the contrary. Trustees Statement ¶ 455 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 449.

4.    **Tracing Results of St. James Associates Account No. 1ZB510**

456.    For Collura's tracing analysis with respect to St. James Associates, she analyzed the cash withdrawals from the St. James Associates Account 1ZB510 during the Post January 2001 Period.  Collura Decl. Attach. B (Collura A&B Report) at ¶ 86, and Exs. 9 and 10.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 456. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

457.    Based on available bank records from BLMIS, Collura traced 100% of the total amount of cash withdrawals reflected on the customer statements for the St. James Associates Account 1ZB510 during the Post January 2001 Period, including the $8.7 million in fictitious profits transferred in the Two-Year Period, to a bank account held by or for the benefit of St. James Associates.  *Id.*

**RESPONSE: Disputed.** See Response to Trustee's statement no. 449.

**TRUSTEE REPLY:** Defendants refer to their response to Trustee Statement ¶ 449 where they admit the factual statement in that paragraph.  Defendants' additional response to Trustee ¶ 449 neither raises a genuine dispute with Trustee Statement ¶ 457, nor provides any evidence to the contrary.  Trustee's Statement ¶ 457 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 449.

E.    **The Transfers to Defendants Were Made by Bernard L. Madoff Investment Securities LLC**

458.    BLMIS operated as a sole proprietorship prior to 2001.  In January 2001, the sole proprietorship was converted to a single member LLC, using the same SEC registrant number, 8-8132.  Griffin Decl. Ex. 1 (Amended Form BD).

**RESPONSE: Disputed.**  BLMIS as an LLC did not exist prior to 2001.  Madoff operated as a sole proprietor.

**TRUSTEE'S REPLY:** Defendants' response neither raises a genuine dispute with Trustee Statement ¶ 458, nor provides any evidence to the contrary.  Trustee Statement ¶ 458 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

459.    The bank statements for the 703 and 509 Accounts listed the account holder as "Bernard L. Madoff" from December 1998 to September 2002, when the name was changed to "Bernard L. Madoff Investment Securities."   Collura Decl. Attach. A (Collura Report) at ¶¶ 20 n.7, and 25 n.9.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 459. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).

460.    For the time period for which bank records were available (December 1998 through December 2008), the 703 and 509 Accounts were used for customer deposits and withdrawals— the business of the IA Business.  *Id.* at ¶¶ 24–30; Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 340 n.285, Figure 52.

**RESPONSE: Disputed.** See Response to Trustee's statement no. 39.

**TRUSTEE'S REPLY:** Defendants refer to their response to Trustee Statement ¶ 39 where they admit the factual statement in that paragraph.  Defendants' additional response to Trustee ¶ 39 neither raises a genuine dispute with Trustee Statement ¶ 460, nor provides any evidence to the contrary.  Trustee Statement ¶ 460 is therefore not controverted, and consequently, should be deemed admitted under Local Rule 7056-1(d).

The Trustee refers the Court to Trustee's Reply to ¶ 39.

461.    For the time period for which bank records were available, the face of the bank statements for the 703 Account and 509 Account showed they were designated as "Commercial Checking" accounts.  The statements were addressed to the attention of either Tony Tiletnick, a BLMIS employee, or Daniel Bonventre, BLMIS's operations manager, at the BLMIS business address at 885 Third Avenue, New York, New York. None of the statements were addressed to Madoff personally.   Griffin Decl. Ex. 51 (Exemplar BLMIS Bank Statements 1998-2008); Dubinsky Decl. Attach. A (Dubinsky Global Report) at ¶ 340, Exs. 31 and 32.

**RESPONSE: Undisputed.**

**TRUSTEE'S REPLY:** Defendants admit the factual statement in Trustee Statement ¶ 461. Accordingly, this fact should be deemed admitted under Local Rule 7056-1(d).


Dated: May 23, 2022
    New York, New York                     By: */s/ Regina Griffin*_____
                                           **Baker & Hostetler LLP**
                                           45 Rockefeller Plaza
                                           New York, New York 10111
                                           Telephone: (212) 589-4200
                                           Facsimile: (212) 589-4201
                                           David J. Sheehan
                                           Email: dsheehan@bakerlaw.com
                                           Regina Griffin
                                           Email: rgriffin@bakerlaw.com

                                           *Attorneys for Irving H. Picard, Trustee*
                                           *for the Substantively Consolidated SIPA*
                                           *Liquidation of Bernard L. Madoff  Investment*
                                           *Securities LLC and the Chapter 7 Estate of*
                                           *Bernard L. Madoff*