# EXHIBIT 56



3/26/99 - on Belli's List

AMF00267004

TX022

<u>**NAME & ADDRESS FILE MAINTENANCE**</u>

Action (1) _A_   (Note: A= Add  C= Change  D= Delete)   **\*Agency** _X_

Account Number (6) _ICM 579 - 30/40_
Type   (1) _|_|_   (Note: 1=Name & Address  2=Duplicate #_____  #= Mailing)

P_____   S_____   A_____   H_____   N_____

Line 1 (30) _BAM, L. P._

Line 2 (30)_____

Line 3 (30)_____

Line 4 (30)_____ **REDACTED** _____

City (20) **REDACTED** State (2)_REDACTED_ Zip **REDACTED**

Check Name _See Line1_

_____

**(Note: Type 1 Information Only)**
Short Name(12) _BAM, L.P._   SS-ID # (11)  REDACTED _2634_
Foreign Acct _____   Margin Acct _N_   1087_____
Group Name(10) _ICM_
Comps_____ Memos_____ Statements_____ (Note: N= DO NOT PRINT)
                 Profits  Dividend  Interest  (Note: S= Send R= Reinvest)

| Type | 1 | Profits | Dividend | Interest | |
|------|---|---------|----------|----------|---|
| | 2 | - | - | - | |
| | 3 | - | - | - | |
| | 4 | - | - | - | (F) |
| | 5 | - | - | - | |
| | 6 | - | - | - | FOREIGN_____ |
| | 7 | - | - | - | MARGIN_____ |
| | 8 | - | - | - | 1087_____ |
| | 9 | - | - | - | |

_Entered 3/26/89_

Line 1 (30)_____

Line 2 (30)_____

Line 3 (30)_____

Line 4  (30)_____

City (20)_____ State (2)_____ Zip_____

AMF00267005

TX022

## Name & Address File Maintenance

Account Number (6) __1-CM579-30/40__

TYPE 2 # __1__

Line 1 (30) ____Marc Federbush_____

Line 2 (30) ____Anchin, Bloch & Anchin_____    C _____

Line 3 (30) _____    M _____

Line 4 (30) ____1375 Broadway_____    S __X__

City (20) ____New York_____    State (2) __NY__    Zip ____10018____

TYPE 2 # __2__

Line 1 (30) ____Larry Bell_____

Line 2 (30) ____Sosnik, Bell & Co., LLC_____    C _____

Line 3 (30) ____One Parker Plaza_____    M _____

Line 4 (30) ____15th Floor_____    S __X__

City (20) ____Fort Lee_____    State (2) __NJ__    Zip ____07024____

TYPE 2 # _____

Line 1 (30) _____

Line 2 (30) _____    C _____

Line 3 (30) _____    M _____

Line 4 (30) _____    S __c__

City (20) _____    State (2) _____    Zip _____

TYPE 2 # _____

Line 1 (30) _____

Line 2 (30) _____    C _____

Line 3 (30) _____    M _____

Line 4 (30) _____    S _____

City (20) _____    State (2) _____    Zip _____

AMF00267006

TX022

<u>**Name & Address File Maintenance**</u>

Account Number (6) ___ l-Cm579-3 _____

TYPE 2 # *3*

Line 1 (30) ___ Adam  Mann _____

Line 2 (30) _____ C _____

Line 3 (30) _____ M _____

Line 4 (30) ___ REDACTED _____ S ✓

City (20) ___ REDACTED ___ State (2) REDACTED Zip REDACTED

TYPE 2 # *4*

Line 1 (30) ___ Betsy  Mann  Polatsch _____

Line 2 (30) _____ C _____

Line 3 (30) ___ REDACTED _____ M _____

Line 4 (30) ___ REDACTED _____ S ✓

City (20) ___ REDACTED ___ State (2) REDACTED Zip REDACTED  REDACTED

TYPE 2 # _____

Line 1 (30) _____

Line 2 (30) _____ C _____

Line 3 (30) _____ M _____

Line 4 (30) _____ S _____

City (20) _____ State (2) _____ Zip _____

TYPE 2 # _____

Line 1 (30) _____

Line 2 (30) _____ C _____

Line 3 (30) _____ M _____

Line 4 (30) _____ S _____

City (20) _____ State (2) _____ Zip _____

AMF00267007

TX022

## Name & Address File Maintenence

Account Number (6) _ICm 579_

PE 2# 1

Line 1 (30) Maurice Cohn
Line 2 (30) _____            C (N)
Line 3 (30) _____            M ✓
Line 4 (30) 885 32nd Ave. 18th FC      S ✓
City (20) NY        State (2) NY   Zip 10022    (11)

PE 2# #2

Line 1 (30) Goldstein Golub Kessler
Line 2 (30) 1185 6th Ave              C _____
Line 3 (30) ATTN: Jeff Grossman Nettie Ratafia   M _____
Line 4 (30) _____          S ✓
City (20) N.1.      State (2) NT  Zip 10036

PE 2# 3

Line 1 (30) Sosnick, Bell + Co
Line 2 (30) _____            C _____
Line 3 (30) _____            M _____
Line 4 (30) ONE PARKER PLAZA           S ✓
City (20) FORT LEE    State (2) NJ  Zip 07024

PE 2# 4

Line 1 (30) SP Capital Management
Line 2 (30) Scott Whitcher              C ✓
Line 3 (30) _____             M _____
Line 4 (30) 575 5th Ave 40th Fl         S ✓
City (20) New York    State (2) NY  Zip 10017

AMF00267008

TX022

4/18/08

TO: JODI CRUPI

FROM: M. CHEW

RE: BAM LP (1-CM579-3-0)

Hi JODI —

PLEASE SEND ME A

CHECK OF 110,000 TO MY

HOUSE FROM THE ABOVE

ACCOUNT.

THANKS —

Cecile Jean

4/23

AMF00267009

TX022

01/20/2007 19:36   REDACTED                MERYL & MICHAEL MANN              PAGE 01/01

TO: JOAI CRUPI                    .   ,   1/20/05

From: MICHAEL MANN

RE: BAM LP   1-CM-579-)-0

JOAI -

CAN YOU PLEASE SEND A

CHECK FROM ABOVE ACCT

FOR 15,000 —    TO  MY

HOUSE.        Thank you -
              Cecil sea

REDACTED

**REDACTED**

AMF00267010

TX022

10/22/07

TO: JODI CREW.

From: MICHAEL MANN

RE: BAM LP (1-CM579-3-0)

JODI,

PLEASE SEND ME A CHECK

FROM MY ACCOUNT (MOVES) FOR

50,000.

THANK YOU —

Cecil Ccm

REDACTED

REDACTED

REDACTED

800 M     5- 10/24

AMF00267011

09/04/2007  21:17    REDACTED                THE MANNS                    PAGE  01

9/4/07

TO: JON CRUPI

From: MICHAEL MANN

RE: BOM LP SECT 1- CMS73-3-0

Hi JON -

PLEASE CHANGE MY DAUGHTER'S

ADDRESS FROM    REDACTED

NYC  TO: BETSY POLATSCH

# REDACTED

THANK YOU -

Cecil Cee

REDACTED

REDACTED

AMF00267012

TX022

7/23/07

TO: JODI CRUPI

FROM: MICHAEL MANN

RE: BSM CP 1-CM579-3-0

JODI,

PLEASE SEND ME A CHECK

FROM MY BSM ACCOUNT. FOR

300,000.

THANKS —

Cecil C_____

MICHAEL MANN

REDACTED

7/25

AMF00267013

TX022

6/23/07

TO: TONI CRUPI

FROM: MICHAEL MANN

TONI,

I WOULD LIKE TO START IMMEDIATELY HAVING DUPLICATE COPIES OF MY MONTHLY + QUARTERLY STATEMENTS TO GO TO MY NEW ACCOUNTANT.

THE ADDRESS IS:

MARC FEDERBUSH
ANCHIN, BLOCH + ANCHIN
1375 BROADWAY
NYC   10018

I WOULD APPRECIATE IF YOU COULD SEND THE STATEMENTS GOING BACK TO 1/31/07 UP TO THE CURRENT ONES.

IT WILL BE FOR MY 2 ACCOUNTS...

① MICHAEL MANN  & MERYL MANN  1- CM363-3-0
                            1- CM579-3-0

② BAM LP

THANK YOU

[signature]  REDACTED

AMF00267014

TX022

6/10/07

TO: TONY CROPPI

From: MICHAEL MANN

TONY,

I DON'T WANT ANY OF

MY STATEMENTS COME TO

MY ACCOUNTANT (JEFF GROSSMAN

AT GGK).

Thanks —

Chris Cc     REDACTED

ACCTS
MICHAEL MANN & MERYL MANN  /— CM 363 —3—0
BSM LP  #  /— CM 579—3—0

AMF00267015

TX022

4/17/07

TO: JODI CROPI

FROM: MICHAEL MANN

RE: BLMM LP    ACCT # 1-CM579-3-0

Hi JODI,

PLEASE SEND ME A

CHECK FROM BLMM LP IN

THE AMOUNT OF $8,000.

PLEASE MAIL TO MY HOUSE.

# REDACTED

THANKS VERY MUCH,

Carl C____

4/17

AMF00267016

# J.B.S. LTD.

### 1400 BROADWAY 17TH FLOOR    NEW YORK, N.Y. 10018
### (212) 764-4600    FAX (212) 764-9340

1/4/06

TO: JODI CRUP.

FROM: MICHAEL MANN

RE: ~~8AM~~ LP    (7 - CM 579 - 7 - 0)

JODI,

HAPPY NEW YEAR! PLEASE

SEND ME A CHECK TO MY

HOUSE FOR   60,000.

THANKS,

REDACTED

REDACTED

REDACTED

**REDACTED**

AMF00267017

TX022

TO: JODI CRUPI

From: MICHAEL MANN

RE: BAM LP
    ACCT. # 1 CM 579-4-0

JODI —
I WOULD LIKE TO REDUCE
THE BAM ACCOUNT + LEAVE
WITH BERNARD MADOFF INVESTMENT
1 MILLION DOLLARS. SO THE
CHECK I RECEIVE SHOULD BE
APPROX. 1,400,000

Thank you —
MICHAEL MANN

REDACTED

P.S.
I WILL
CALL YOU
THUS.

S- 12/8

CELL  REDACTED

AMF00267018

TX022

04/06/2005 22:07   REDACTED          THE MANNS              PAGE 01

TO: JODI   CROP,                                              4/6/05

From: MICHAEL MANN.

RE: BAM L.P.   ACCT #  I—CM579-3-0

JODI,
    I NEED YOU TO SEND ME A
CHECK FROM BAM LP  IN THE
AMOUNT OF 153,000.
    I WOULD APPRECIATE IF
YOU COULD GET THE CHECK
OUT TO MY  HOUSE AS SOON AS
POSSIBLE.                    REDACTED

          REDACTED     REDACTED

REDACTED
PLEASE USE   MY  FEDEX
                    FOR OVERNITE
REDACTED
                 I WILL CALL YOU
DELIVERY.        TO FOLLOW UP WITH
THANK AM
YOU.       CK OUT    THANKS!
           4/8        Cecil Cem  REDACTED
                   REDACTED

(2:†)

AMF00267019

04/02/2005  17:05  REDACTED          THE MANNS          PAGE  01.

4/2/05

To: Jodi Crupi

From: Michael Mann          (# 1-CM 528-3-0).

Re: Bank Account

FILE
PL?

Jodi,

I need you to change my

daughter, Betsy Polatsch, address.

REDACTED

She moved from

REDACTED

to

REDACTED     REDACTED

I would appreciate if you

would send the monthly statements

to her new address.

Any questions, please call me.

Thanks,

Cecil

REDACTED

(c)

AMF00267020

FEB-25-2005 10:45 PM                                                    P.01

2/vr/05

TO: JODI CRUPI

From: MICHAEL MANN

RE: BMM LP (ACCT # 1- CM579-3-0)

JODY,

PLEASE SEND ME A CHECK

FOR 275,000    TO MY HOUSE.

**REDACTED**

Thanks.

CECIL CA

OFF 212-764-4600        CK OUT
CELL  [REDACTED] → [REDACTED] [REDACTED]    3/2

(2.6)

AMF00267021

TX022

TONI CAUSI                                    2/28/05

MICHAEL MANN

TONI,

AS I DISCUSSION WITH YOU.

THE 175,000 TO PAM WHICH
YOU SAID IS GOING OUT ON
                    I NEED IT OVERNIGHT

TO MY HOUSE FOR 3/3 !!!

USE MY FONT ACCT

<div style="border:1px solid; display:inline-block; padding:4px 20px;">**REDACTED**</div>

THANKS

Cecil C...

REDACTED

REDACTED

AMF00267022

01/26/2005  22:04    [REDACTED]                    THE TMANNS                    PAGE  01

*ATT: ERIN*
*THIS LETTER*
*FOLLOWED ACCOUNT:*

### MICHAEL MANN    *PERTAINS TO THE*

[REDACTED]

*1) MICHAEL MANN +*
*MENTL MANN  1-CM363-3-c*

*2) MICHAEL MANN (IRA)*
*1-CM367-4-0*

*3) BAM LP  1-CM579-3-c*

*THANK YOU -*
*Cecil se*

January 25, 2005

Via Facsimile (212-838-4061)

Bernie Madoff
Chief Executive Officer
Bernard Madoff Investment Securities, LLC
885 Third Avenue
New York, NY 10022

RE:    Duplicate Statements and Correspondence to Interested Party

Dear Bernie:

On June 15, 2004, I advised you in writing that I wished to have duplicates of all statements and correspondence sent to the following interested party:

> Sterling Stamos
> c/o Scott Whitcher
> 575 Fifth Avenue, 40th Floor
> New York, NY 10017

I now wish to rescind that request.  Please discontinue sending statements and correspondence to Sterling Stamos.

If you have any questions or require further information, please contact me.

Very truly yours,

Michael Mann

Cc:    Kai Bergman, Sterling Stamos

AMF00267023

Page 20 of 78                    TX022



TO: ROBERT CANDILE

71/407

PLEASE DELIVER TO
ROBERT CANDILE.

ROBERT -
I WOULD LIKE ONE OF MY

ACCOUNTS (BAM LP 1-CM 579-3-0)...

FOR ALL STATEMENTS TO GO TO

MY 2 CHILDREN.

1) **REDACTED**

2) BETSY MANN POLATSCH REDACTED

**REDACTED**

THANKS. WEITE

IF YOU HAVE ANY QUESTIONS
FEEL FREE TO CALL ME AT REDACTED
REDACTED REDACTED

AMF00267024

06/21/2004 20:31 REDACTED THE MANNS PAGE 01

TO: ROBERT CARDILE 6/16/04

From: MICHAEL MANN

ROBERT,

AS WE DISCUSSED .. THE FOLLOWING

3 ACCOUNTS ARE THE ONES THAT I

WOULD LIKE MONTHLY + QUARTERLY

STATEMENTS TO GO TO SCOTT

WHITCHER OF SP CAPITAL MGMT.
Whitcher

1) MICHAEL MANN + MERYL MANN 1 — CM 363 - 3 - 0

2) MM LP 1 — CM 579 - 3 - 0

3) MICHAEL MANN IRA 1 — CM 367 - 3 - 0

SP Ca
575 5TH AV
40 TH 1

10017

REDACTED

Thanks,

AMF00267025

JAN-06-2004 12:01 AM                                                    P.01

# BETSY'S THINGS 1/5/04

1400 BROADWAY, NEW YORK, N.Y. 10018
(212) 840-2171. FAX (212) 221-4370

TO: JONI CRUPI

FROM: MICHAEL MANN

JONI,

PLEASE SEND ME A CHECK

FROM BAM LI ACCT #

1 - CM579-3-0    FOR

THE AMOUNT OF 100,000.

1/6

THANKS -

MICHAEL MANN

[signature]

PLEASE SEND CHECK TO MY HOUSE.



REDACTED

AMF00267026

Apr-24-00 10:32A BETSY'S THINGS          212-221-4370          P.01

4/24/00
TO: Erin

# BETSY'S THINGS

April 24, 2000

1400 BROADWAY   NEW YORK, N.Y. 10018
(212) 840-2171   FAX (212) 221-4370

TO: BELLE JONES

From: MICHAEL MANN

THIS FAX CONFIRMS MY PHONE

CONVERSATION TODAY WITH LINDA

THAT I NEED TO WITHDRAW

$2,000 FROM BAM ACCOUNT

( ACCT # 1 - CM579-3-0 )

PLEASE SEND A CHECK TO

MY HOUSE —

REDACTED

1.2  CKOUT
4/25    ✓    THANKS — [signature]

P.S.
IF YOU HAVE ANY QUESTION

REDACTED

NCOME

AMF00267027

APR-15-2003 10:29 PM                                              P.01

# BETSY'S THINGS  4/15/03

1400 BROADWAY   NEW YORK, N.Y. 10018
(212) 840-2171   FAX (212) 221-4370

TO: JODI + ERIN,

AS WE JUST DISCUSSED I NEED
2 CHECKS SENT TO ME:

(1) ACCOUNT # 1-CM 579-3-0  (Bsm LP) 2.3mil
      NEED    70,000   CHECK

                                    5-4/16

(2) ACCOUNT # 1-CM 363-3-0
      (MICHAEL MANN + MERYL MANN)
      NEED    400,000   CHECK.   13mil

PLEASE  MAIL  AS  SOON  AS  YOU
CAN  TO  MY  HOME

REDACTED

CALL  ME  IF  YOU  HAVE  ANY
QUESTIONS.       THANKS —

                                MICHAEL MANN

AMF00267028

TO: JODY

From: MICHAEL MANN

PLEASE ADD THESE CHECKS

TOTALING 100,000 TO

Bam LP ACCT # 1-CM579-3-0

THANKS —

MICHAEL MANN

REDACTED

AMF00267029

TX022



FDX: MANN

CM 363
cm 579

AMF00267030

TX022

06/23/2002  20:43    REDACTED    212- 85F-    THE MANNS    PAGE 01
4061    6/23/02

JODY

TO: ~~REDACTED~~

From: MICHAEL MANN

RE: BAM LP  1= CM579-3-0

PLEASE SEND ME A CHECK

MADE OUT TO BAM LP

FOR 15,000.

THANKS —

Cecil Lee

REDACTED

(2 mi)    6/25

AMF00267031

4/21/02

TO: JOSI

PLEASE SEND ME A CHECK

FOR 70,000 FROM BAM LP

ACCOUNT # 1-CM579-3-0

MAIL TO MY HOUSE:

REDACTED

THANX. Michael Mann

MICHAEL MANN

REDACTED

2 mil      4/23

AMF00267032

TX022

05/21/2001  22:04    REDACTED                    THE MANNS                    PAGE  01

TO: ERIN REARDON

From: MICHAEL MANN

+ 1 COPY

ERIN —

AS I HAD MENTIONED TO YOU

TODAY — THE COPIES OF MY

STATEMENTS THAT YOU SEND TO MY

ACCOUNT (GOLDSTEIN GOLUB + KESSLER)

SHOULD GO TO THE ATTENTION OF

JEFF GROSSMAN (NOT MARK KATKIN) —

THE ACCOUNTS ARE AS FOLLOWS:

MICHAEL MANN AND MERYL MANN

#  1 — CM 363 — 3 — 0
#  1 — CM 363 — 4 — 0

BAM LP  #  1 — CM 579 — 3 — 0
1 — CM 579 — 4 — 0

THANKS — Claire Mann

IF YOU HAVE ANY QUESTIONS — PLEASE
CALL ME AT MY OFFICE

REDACTED

AMF00267033

TX022

NOV-06-00 01:10A BETSY'S_THI          [REDACTED]          P.02

All Mutual Funds Transfers
ABA 021-001-033
BT Private Banking
280 Park Avenue
New York, NY 10017
Acct # [REDACTED] 5-009
FFC to: *BAM L.P.*
A/C #: [REDACTED] 9888

*DONE*
*Profile: BAMLP*
*Address: 1400 Broadway*
*NY NY 10018*

** TOTAL PAGE.02 **

— 2—

AMF00267034

TX022

Nov-06-00 01:10A BETSY'S THI          212-221-4370          P.01

212-755-7271

# BETSY'S THINGS

11/6/00

1400 BROADWAY  NEW YORK, N.Y. 10018
(212) 840-2171  FAX (212) 221-4370

(15M)

TO: _Bruce Jones_  11/6/00   FaxTo: Jodi
                                  Fr: Belle
From: Michael Mann
RE: BAM LP        Acct # 1- CM 579-3-0
                                   579-4-0

AS MENTIONED — I WANT TO

DO A WIRE TRANSFER (SEE

FOLLOWING INSTRUCTIONS) IN THE

AMOUNT OF 750,000 (SEVEN

HUNDRED + FIFTY THOUSAND DOLLARS)

I WOULD APPRECIATE IF

THIS COULD BE DONE BY

TOMORROW 11/7/00 . THANKS —

        1,150M

ANY QUESTIONS PLEASE CALL ME —

                —1—

AMF00267035

TX022

Oct-06-00 08:00A BETSY'S THI                212-221-4370            P.01

755-9297

10/6/00
To: Jodi
RE: LCM 579
BM LP

# BETSY'S THINGS

1400 BROADWAY   NEW YORK, N.Y. 10018
(212) 840-2171   FAX (212) 221-4370

10/6/00

att. Belle Jones + Linda —

As discussed with you on

the phone — I need you

to send me a check

for 43,000 from my

BAM L.P. Account —

please send the check

to my Home Address:

REDACTED

Thanks — Michael Maram

CK OUT
10/12

1.2

AMF00267036

TX022

# SOSNIK, BELL & COMPANY

## FACSIMILE TRANSMITTAL SHEET

| To: ERin | From: L. Bell |
|---|---|
| Fax number: | Date: 8/28 |
| Company: | Total # of pages including cover: 2 |
| Re: | |

☐ URGENT   ☐ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY   ☐ PLEASE RECYCLE

## NOTES/COMMENTS:

START DUES FROM
JANUARY 2000

ONE PARKER PLAZA • FORT LEE, NJ 07644 • EMAIL: SCOTT@SOSNIK-BELL.COM
PHONE: 201-461-6464 • FAX: 201-461-6864

AMF00267037

TO    :  Sosnik, Bell & Co., CPA's

FROM  :  _Michael Mann_

Please proceed with the preparation of the summary
statement for the Bernard L. Madoff Investment Securities
Account.

For the account(s) listed, use this notice as authorization
to receive duplicate statements directly from Bernard L.
Madoff Investment Securities for all **prior** and **future**
months.

| Name, Address & Telephone # | Account # |
|---|---|
| BAM LP | CM 579 |
| | |
| | |
| | |

I understand that the service will be provided at a fee of
$585 per account.

_____
Client's Signature

AMF00267038

TX022

08/28/2000  08:25   2014616864          SOSNIK,BELL&CO/                    PAGE  01.

# SOSNIK, BELL & COMPANY

## FACSIMILE TRANSMITTAL SHEET

| To: ERin | From: L. Bell |
|---|---|
| Fax number: | Date: 8/28 |
| Company: | Total # of pages including cover: 1 |
| Re: | |

☐ URGENT  ☐ FOR REVIEW  ☐ PLEASE COMMENT  ☐ PLEASE REPLY  ☐ PLEASE RECYCLE

## NOTES/COMMENTS:

START DUES FROM

JANUARY 2000

ONE PARKER PLAZA  •  FORT LEE, NJ 07644  •  EMAIL: SCOTT@SOSNIK-BELL.COM
PHONE: 201-461-6464  •  FAX: 201-461-6864

AMF00267039

TX022

08/28/2000  00:25    2014616864    REDACTED    SOSNIK,BELL&CO/    PAGE  02
08/25/2000  11:33    2014616864    THE MANNS    PAGE  02
                                   SOSNIK,BELL&CO/    PAGE  02

TO      :   Sosnik, Bell & Co., CPA's

FROM    :   *Michael Mann*

**Please proceed with the preparation of the summary
statement for the Bernard L. Madoff Investment Securities
Account.**

**For the account(s) listed, use this notice as authorization
to receive duplicate statements directly from Bernard L.
Madoff Investment Securities for all _prior_ and _future_
months.**

| Name, Address<br>& Telephone # | Account # |
|---|---|
| BAM LP | CM 579 |
|  |  |
|  |  |
|  |  |

I understand that the service will be provided at a fee of
$585 per account.

_____
**Client's Signature**

AMF00267040

TX022

# BETSY'S THINGS

755-9280

6/5/00

1400 BROADWAY    NEW YORK, N.Y. 10018
(212) 840-2171    FAX (212) 221-4370

6/30/00

To: Belle
RE: ICM579

Att - Linda

I would appreciate (from now on) that you send B.A.M. only statements to

MARK RATAFIA                    L.L.C.
GOLDSTEIN GOLUB KESSLER ~~athele~~
1185  6th AVE
N.Y.C.  N.Y.  (0036 - 2602

Thank you —

Cecil Clark

MICHAEL MANN

AMF00267041

TX022

3/30/99

Bernie:

This family partnerships
w. Michael Monn as GP &
his kids Betsy & Adam as
limited partners, opened w.
$1 mil on 3/26. Please sign
a/c papers.

Bill

AMF00267042

TX022

 **BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue  New York, NY 10022-4834



212 230-2424
800 334-1343
Telex 235130
Fax 212 486-8178

**TAX ID NO.**

*APPLIED FOR*

**ACCT# ASSIGNED**

Mr./Mrs./Ms.   **NAME**   BAM, L.P.

**STREET**   **REDACTED**   REDACTED

**CITY**   **STATE**   **ZIP**
REDACTED

**TEL. NUMBER**        **BUSINESS**        **RESIDENCE**

**REG. REP**   *A. SPRING*

**WE DEEM THE QUESTIONS CONTAINED IN THIS SECTION TO BE REQUIRED BY THE
"KNOW YOUR CUSTOMER" RULE OF THE NATIONAL ASSOCIATION OF SECURITY
DEALERS, AND, THEREFORE, MUST BE ANSWERED IN FULL.**

**RESIDENCE**

**NAME OF EMPLOYER (IF HOUSEWIFE, NAME THE HUSBAND'S EMPLOYER)**

**EMPLOYER'S ADDRESS**

**OCCUPATION**

**BANK REFERENCE AND ADDRESS**

**OTHER BROKERAGE ACCOUNTS**

**CLIENT INTRODUCED BY**   Richard Spring

**FOR OFFICE USE ONLY**

**R R.'S ESTIMATE OF CLIENTS NET WORTH**

**IS CLIENT OVER 21 YEARS OF AGE**      YES            NO

**HOW LONG HAVE YOU KNOWN CLIENT**

**CLIENT IS CITIZEN OF**

**APPROVED BY**

**DATE SENT TO CLIENT**        **DATE SENT TO CLIENT**

**MARGIN AGREEMENT** _____        **MAIL WAIVER FORM** _____
**JOINT AGREEMENT** _____         **MULTIPLE A/C FORM** _____
**CORPORATE ACCOUNT FORM** _____  **CORPORATE RESOLUTION** _____
**CO-PARTNERSHIP FORM** _____

Affiliated with:
Madoff Securities International Ltd.
12 Berkeley Street, Mayfair, London W1X 5AD.0171-493 6222

AMF00267043

TX022



**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue New York, NY 10022-4834

212 230-2424
800 334-1343
Telex 235130
Fax 212 486-8178

Congress has mandated that all interest and dividend payers including banks, corporations and funds must withhold 10% of all dividends or interest paid UNLESS you complete and return the form at the bottom of this page.

### Important New Tax Information

"Under the Federal income tax law, you are subject to certain penalties as well as with-holding of tax at a 20% rate if you have not provided us with your correct social security number or other taxpayer identification number. Please read this notice carefully.

You (as a payee) are required by law to provide us (as payer) with your correct taxpayer identification number. If you are an individual, your taxpayer identification is your social security number. If you have not provided us with your correct taxpayer identification number, you may be subject to a $50 penalty imposed by the Internal Revenue Service. In addition, divided payments that we make to you may be subject to backup withholding starting on January 1, 1984.

Backup withholding is different from the 10% withholding on interest and dividends that was repealed in 1983. If backup withholding applies, payer is required to withhold 20% of dividend payments made to you. Backup withholding is not an additional tax. Rather, the tax liability of persons subject to backup withholding will be reduced by the amount of tax withheld. If withholding results in an overpayment of taxes, a refund may be obtained".

Please sign the form and return it to us.

_Even if you have already provided this information it is required by the IRS that all information requested below be provided again._

Thank you for your cooperation.

-----------------------------------------------------

### SUBSTITUTE INTERNAL REVENUE SERVICE FORM W-9

Account Number(s): _____

Taxpayer Identification Number:

*APPLIED FOR*

Name: _____ BAM, L.P. _____

Address: _____ [ **REDACTED** ] _____

(Signature) _~Cecel Cre~_____

"Under penalties of perjury, I certify that the number shown
On this form is my correct Taxpayer Identification Number".

Please fill in your name, address, taxpayer identification number, and sign above.

Affiliated with:
Madoff Securities International Ltd.
43 London Wall, London England EC2M 5TB.071-374 0891

AMF00267044

TX022



**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue New York, NY 10022-4834

212 230-2424
800 334-1343
Telex 235130
Fax 212 486-8178

## TRADING AUTHORIZATION LIMITED TO PURCHASES
## AND SALES OF SECURITIES AND OPTIONS

To Whom It May Concern:

The undersigned hereby authorizes Bernard L. Madoff (whose signature appears below) as his agent and attorney in fact to buy, sell and trade in stocks, bonds, options and any other securities in accordance with your terms and conditions for the undersigned's account and risk and in the undersigned's name, or number on your books. The undersigned hereby agrees to indemnify and hold you harmless from, and to pay you promptly on demand any and all losses arising therefrom or debit balance due thereon. However, in no event will the losses exceed my investment.

In all such purchases, sales or trades you are authorized to follow the instructions of Bernard L. Madoff in every respect concerning the undersigned's account with you; and he is authorized to act for the undersigned and in the undersigned's behalf in the same manner and with the same force and effect as the undersigned might or could do with respect to such purchases, sales or trades as well as with respect to all other things necessary or incidental to the furtherance or conduct of such purchases, sales or trades.

The undersigned hereby ratifies and confirms any and all transactions with you heretofore or hereafter made by the aforesaid agent or for the undersigned's account.

This authorization and indemnity is in addition to (and in no way limits or restricts) any rights which you may have under any other agreement or agreements between the undersigned and your firm.

This authorization and indemnity is also a continuing one and shall remain in full force and effect until revoked by the undersigned by a written notice addressed to you and delivered to your office at 885 Third Avenue but such revocation shall not affect any liability in any way resulting from transaction initiated prior to such revocation. This authorization and indemnity shall enure to the benefit of your present firm and any successor firm or firms irrespective of any change or changes at any time in the personnel thereof for any cause whatsoever, and of the assigns of your present firm or any successor firm.

Dated, *3/23/95*

| REDACTED |
| :---: |
| (City)          (State) |

Very truly yours, ___*Cecil Cee*_____    *General Partner*____
(Client Signature)

Signature of Authorized Agent: _____

Affiliated with:
Madoff Securities International Ltd.
43 London Wall, London England EC2M 5TB.071-374 0891

AMF00267045

TX022

**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue New York, NY 10022-4834

212 230-2424
800 334-1343
Telex 235130
Fax 212 486-8178

## OPTION AGREEMENT

TO:  BERNARD L. MADOFF INVESTMENT SECURITIES

In order to induce you to carry accounts ("Option Accounts") for me (however designated) for transactions in option contracts (including, without limitations, purchase, sale, transfer, exercise and endorsement) ("Option Transaction"), I hereby warrant, represent and agree with you as set forth below on this Option Agreement.

1.      I understand, and am well aware, that option trading may be highly speculative in nature. I am also aware that on certain days, option trading may cease and this could result in a financial loss to me.  I agree to hold  BERNARD L. MADOFF, its other  Divisions,  and its officers, Directors and Agents  harmless for such loss.

2.      I understand that any option transaction  made for any account  of mine is  subject to the  rules, regulations, customs and usages of The Options Clearing Corporation  and of the registered national  securities exchange,  national securities association,  clearing  organization or market where  such transaction was executed. I agree to  abide by such  rules, regulations, custom and usages and I agree that,  acting individually or in concert with others, I will not exceed any applicable position  or exercise limits  imposed by  such  exchange, association, clearing organization or other market with respect  to option trading.

3.      If I do not satisfy, on a timely basis, your money or security calls,  you  are authorized in your sole discretion and without notification, to take  any and all steps you deem necessary to protect yourself (for any reason)  in connection with option transactions for my account including the right  to buy and/or sell (including short or short exempt) for my  account and risk any part or all of the shares represented by options  handled, purchased, sold and/or endorsed by you for my account or to buy  for my account and risk any option as you may deem  necessary or appropriate.  Any and all expenses or losses incurred in this connection  will be reimbursed by me.

4.      In addition to the terms and conditions  hereof,  my option account will be subject to all of the terms and conditions of all other agreements heretofore or hereafter at any time entered into with you relating to the  purchase and sale of securities  and commodities except to the extent that such other agreements are contrary to  or inconsistent herewith.

Affiliated with:
Madoff Securities International Ltd.
43 London Wall, London England EC2M 5TB.071-374 0891

AMF00267046

TX022

5.  This agreement shall apply to all puts or call which you may have executed, purchased, sold or handled for any account of mine and also shall apply to all puts, or calls which you may hereafter purchase, sell, handle or execute for any account of mine.

6.  I have received from BERNARD L. MADOFF the most recent risk disclosure documents entitled "Understanding the Risks and Uses of Listed Options", "Listed Options on Stock Indices", "Listed Options on Foreign Currencies", and "Listed Options in Debt Instruments". I have read and understand the information contained in these documents.

7.  I understand that you assign exercise notices on a random basis except that with respect to options on the following debt instruments: Treasury Bonds, Treasury Notes, Treasury Bills and GNMAS, you may preferentially assign exercises of block-size (i.e. covering $1,000,000 or more of underlying securities) to block-size writing positions and you may preferentially assign smaller exercises to smaller writing positions. I understand that upon my request you will provide me with further information regarding the procedure used to assign exercise notices.

DATED ___8/~3/99_____     ACCOUNT NO._____

SIGNATURES

(If a Corporation)                                        (If Individuals)

_____                     _____
(Name of Corporation)                                   _____

By_____                   (Second Party if Joint Account)

Title_____                (If a Partnership)

                                                        ___BAM, L.P._____
                                                        (Name of Partnership)

SEAL

                                                        By _____
                                                        (A Partner)

**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue New York, NY 10022-4834

212 230-2424
800 334-1343
Telex 235130
Fax 212 486-8178

## CUSTOMER AGREEMENT

In consideration for you (the "Broker") opening or maintaining one or more accounts (the "Customer"), the Customer agrees to the terms and conditions contained in this Agreement.  The heading of each provision of the Agreement is for descriptive purposes only and shall not be deemed to modify or qualify any of the rights or obligations set forth in each such provision.  For purposes of this Agreement, "securities and other property" means, but is not limited to money, securities, financial instruments and commodities of every kind and nature and related contracts and options, except that the provisions of paragraph 13 herein (the arbitration clause) shall not apply to commodities accounts. This definition includes securities or other property currently or hereafter held, carried or maintained by you or by any of your affiliates, in your possession or control, or in the possession or control of any such affiliate, for any purpose, in and for any of my accounts now or hereafter opened, including any account in which I may have an interest.

### 1. APPLICABLE RULES AND REGULATIONS

All transactions in the Customer's Account shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market, and its clearing house, if any, where the transactions are executed by the Broker or its agents, including its subsidiaries and affiliates.  Also, where applicable, the transactions shall be subject (a) to the provisions of (1) the Securities Exchange Act of 1934, as amended, and (2) the Commodities Exchange Act, as amended; and (b) to the rules and regulations of (1) the Securities and Exchange Commission, (2) the Board of Governors of the Federal Reserve System and (3) the Commodities Futures Trading Commission.

### 2. AGREEMENT CONTAINS ENTIRE UNDERSTANDING/ASSIGNMENT

This Agreement contains the entire understanding between the Customer and the Broker concerning the subject matter of this Agreement.  Customer may not assign The rights and obligations hereunder without first obtaining the prior written consent of the Broker.

### 3. SEVERABILITY

If any provision of this Agreement is held to be invalid, void or unenforceable by reason of any law, rule, administrative order or judicial decision, that determination shall not effect the validity of the remaining provisions of this Agreement.

### 4. WAIVER

Except as specifically permitted in this Agreement, no provision of this Agreement can be, nor be deemed to be, waived, altered, modified or amended unless such is agreed to in a writing signed by the broker.

### 5. DELIVERY OF SECURITIES

Without abrogating any of the Broker's rights under any other portion of this Agreement and subject to any indebtedness of the Customer to the Broker, the Customer is entitled, upon appropriate demand, to receive physical delivery of fully paid securities in the Customer's Account.

### 6. SALES BY CUSTOMER

The Customer understands and agrees any order to sell "short" will be designated as such by the Customer, and that the Broker will mark the order as "short".  All other sell orders will be for securities owned ("long"), at that time, by the Customer by placing the order the Customer affirms that he will deliver the securities on or before the settlement date.

Affiliated with:
Madoff Securities International Ltd.
43 London Wall, London England EC2M 5TB.071-374 0891

AMF00267048

TX022

**7. BROKER AS AGENT**

The customer understands that the Broker is acting as the Customer's agent, unless the Broker notifies the Customer, in writing before the settlement date for the transaction, that the Broker is acting as dealer for its own account or as agent for some other person.

**8. CONFIRMATIONS AND STATEMENTS**

Confirmations of transactions and statements for the Customer's Account(s) shall be binding upon the Customer if the Customer does not object, in writing, within ten days after receipt by the Customer.

**9. SUCCESSORS**

Customer hereby agrees that this Agreement and all the terms thereof shall be binding upon Customer's heirs, executors, administrators, personal representatives and assigns. This Agreement shall enure to the benefit of the Broker's present organization, and any successor organization, irrespective of any change or changes at any time in the personnel thereof, for any cause whatsoever.

**10. CHOICE OF LAWS**

THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF _____N·Y._____ AND SHALL BE CONSTRUED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF _____N·Y._____.

**11. CAPACITY TO CONTRACT, CUSTOMER AFFILIATION**

By signing below, the Customer, represents that he/she is of legal age, and that he/she is not an employee of any exchange, or of any corporation of which any exchange owns a majority of the capital stock, or of a member of any exchange, or of a member firm or member corporation registered on any exchange, or of a bank, trust company, insurance company or of any corporation, firm or individual engaged in the business of dealing, either as broker or as principal, in securities, bills of exchange, acceptances or other forms of commercial paper, and that the Customer will promptly notify the Broker in writing if the Customer is now or becomes so employed. The Customer also represents that no one except the Customer has an interest in the account or accounts of the Customer with you.

**12. ARBITRATION DISCLOSURES**

* ARBITRATION IS FINAL AND BINDING ON THE PARTIES.

* THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.

* PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.

* THE ARBITRATORS AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED.

* THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

AMF00267049

TX022



**13. ARBITRATION**

THE CUSTOMER AGREES, AND BY CARRYING AN ACCOUNT FOR THE CUSTOMER THE BROKER AGREES THAT ALL CONTROVERSIES WHICH MAY ARISE BETWEEN US CONCERNING ANY TRANSACTION OR THE CONSTRUCTION, PERFORMANCE, OR BREACH OF THIS OR ANY OTHER AGREEMENT BETWEEN US PERTAINING TO SECURITIES AND OTHER PROPERTY, WHETHER ENTERED INTO PRIOR, ON OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED PURSUANT TO THE FEDERAL ARBITRATION ACT AND THE LAWS OF THE STATE DESIGNATED IN PARAGRAPH 10, BEFORE THE AMERICAN ARBITRATION ASSOCIATION, OR BEFORE THE NEW YORK STOCK EXCHANGE, INC. OR AN ARBITRATION FACILITY PROVIDED BY ANY OTHER EXCHANGE OF WHICH THE BROKER IS A MEMBER, OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. OR THE MUNICIPAL SECURITIES RULE MAKING BOARD AND IN ACCORDANCE WITH THE RULES OBTAINING OF THE SELECTED ORGANIZATION. THE CUSTOMER MAY ELECT IN THE FIRST INSTANCE WHETHER ARBITRATION SHALL BE BY THE AMERICAN ARBITRATION ASSOCIATION, OR BY AN EXCHANGE OR SELF-REGULATORY ORGANIZATION OF WHICH THE BROKER IS A MEMBER, BUT IF THE CUSTOMER FAILS TO MAKE SUCH ELECTION, BY REGISTERED LETTER OR TELEGRAM ADDRESSED TO THE BROKER AT THE BROKER'S MAIN OFFICE, BEFORE THE EXPIRATION OF TEN DAYS AFTER RECEIPT OF A WRITTEN REQUEST FROM THE BROKER TO MAKE SUCH ELECTION, THEN THE BROKER MAY MAKE SUCH ELECTION, THE AWARD OF THE ARBITRATORS, OR OF THE MAJORITY OF THEM SHALL BE FINAL, AND JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT, STATE OR FEDERAL, HAVING JURISDICTION.

**14. DISCLOSURES TO ISSUERS**

Under rule 14b-1(c) of the Securities Exchange Act of 1934, we are required to disclose to an issuer the name, address, and securities position of our customers who are beneficial owners of that issuer's securities unless the customer objects. Therefore, please check one of the boxes below:

____ Yes, I do object to the disclosure of information.

____ No, I do not object to the disclosure of such information.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 13.

(X) _____     (X) _____
(Customer Signature/date)                    (Customer Signature/date)

**REDACTED**
(Customer Address)                          _____
                                            (Account Number)

**REDACTED**

AMF00267050



**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue New York, NY 10022-4834

212 230-2424
800 334-1343
Telex 235130
Fax 212 486-8178

<u>ACCOUNT NUMBER</u>

### PARTNERSHIP ACCOUNT AGREEMENT

To:  Bernard L. Madoff Investment Securities
885 Third Avenue
New York, New York 10022

In connection with your carrying a partnership account (which may be a joint venture) in the name of _____ BAM, L.P. _____, a duly organized partnership or joint venture (referred to herein as the "Partnership") of which each of the following persons is a General Partner:

Print Name(s) of General Partner(s)                Signature(s) of General Partner(s)

_____ MICHAEL MANN _____                _____

_____                _____

_____                _____

_____                _____

(attach additional pages hereto if necessary)

by signing above, each General Partner hereby confirms that such person has  unlimited liability for the obligations of the Partnership and each and every General Partner shall have authority on behalf of the Partnership to establish and maintain one or more accounts with Bernard L. Madoff Investment Securities.

The authority hereby conferred and the representations herein made shall remain in effect until written notice to the contrary is received by you.

Bernard L. Madoff Investment Securities is instructed to direct all notices or communications including demands, notices, confirmations, reports and statements of account, for the Partnership in connection with the  Partnership account as follows:

Name:  _____ BAM, L.P. _____          Address:  **REDACTED**

X _____
(Signature of General Partner)

_____ MICHAEL MANN _____
(Print Name of General Partner)

Affiliated with:
Madoff Securities International Ltd.
43 London Wall, London England EC2M 5TB.071-374 0891

AMF00267051

# SCHAEFFER & ZAPSON LLP

### ATTORNEYS AT LAW
450 SEVENTH AVENUE
NEW YORK, N.Y. 10123
(212) 279-3467
TELECOPIER (212) 695-3575

SAMUEL SCHAEFFER (1907-1980)
ELLIOT L. SCHAEFFER
MICHAEL G. ZAPSON ◊

———
LANCE N. OLITT
STEVEN J. LUCKNER
JEFFREY B. KRONGOLD •
◊ ALSO ADMITTED IN WASHINGTON, D.C.
• ALSO ADMITTED IN FLORIDA

NASSAU COUNTY OFFICE
20 WEST PARK AVENUE
LONG BEACH, N.Y. 11561
(516) 431-0103

———
OF COUNSEL
DAVID GALANTER
STANLEY M. SPIEGLER

March 25, 1999

Ms. Bell Jones
Bernard L. Matoff Investment Securities
885 Third Avenue
New York, New York 10022-4834

Re:    **Michael Mann BAM L.P.**

Dear Ms. Jones:

Pursuant to Michael Mann's request I am enclosing herewith a copy of the Limited Partnership Agreement above referenced.

If you have any questions or need any additional information please feel to contact me.

Very truly yours,

Jeffrey B. Krongold

JBK:ak

C:\My Documents\JBK\Docs\Letters\Mann.Bell.doc

AMF00267052

TX022

# AGREEMENT OF LIMITED PARTNERSHIP

## OF

## BAM L.P.

AGREEMENT of limited partnership made as of the        day of March, 1999 by and among Michael Mann residing at [REDACTED] (hereinafter referred to as the "General Partner") Betsy Mann residing at [REDACTED] (hereinafter referred to as "Betsy") and Adam Mann residing at [REDACTED] (hereinafter referred to as "Adam")(Betsy and Adam are collectively referred to as the "Limited Partners")

## W I T N E S S E T H :

## RECITALS

A.    The Partners (as hereinafter defined) all desire to enter into an agreement to establish a limited partnership (the "Partnership") under the New York Limited Partnership Law;

B.    The Partners (as hereinafter defined) desire that the Limited Partnership (as hereinafter defined) transact certain business and make certain investments, and that they all share in the risks, benefits, profits and losses of these businesses and investments;

C.    The Partners desire that MICHAEL MANN be the sole General Partner (as hereinafter defined) and that all of the other Partners (as hereinafter defined) be Limited Partners (as hereinafter defined).

THEREFORE, in consideration of the mutual covenants and conditions herein contained, and other good and valuable consideration, the receipt of which hereby is acknowledged by each party to the others, the parties hereto, for themselves, their respective heirs, executors, administrators, successor and assigns, hereby agree as follows:

-  1 —

\\NTSERVER\DATA\S&Z Docs\DOCS\JBK\Docs\Partnership\BAM.LP.doc

AMF00267053

TX022

# ARTICLE 1

## DEFINITIONS

As used herein, the following terms shall have the following meanings:

1.1    ""Act" shall mean the uniform Limited Partnership Act as enacted by the State of New York.

1.2    "Agreement" shall mean this Agreement of Limited Partnership, as amended from time to time.

1.3    "Bankruptcy" with respect to any Person shall mean:

    a.    the institution by such Person of proceedings to be adjudged as bankrupt or insolvent, or the consent by such Person to the institution of bankruptcy or insolvency proceedings against him or it, or the filing by such Person of a petition or answer or consent seeking reorganization or relief under the present or any future Federal Bankruptcy Act or any other present or future applicable federal, state, or foreign law regarding bankruptcy, insolvency or other relief for debtors, or the consent by such Person to the filing of any such petition or to the appointment of a receiver, liquidator, trustee (or other similar official) of such Person or of all or of a substantial part of the assets of such Person, or the making by such Person of any assignment for the benefit of creditors or the admission in writing by such Person of his or its inability to pay his or its debts generally as they come due or the commission by such Person of any "act of bankruptcy" (as defined under the present or any future Federal Bankruptcy Act); or

    b.    the entry by a court of competent jurisdiction of an order judgment or decree judgment such Person a bankrupt or insolvent or approving as properly filed a petition seeking reorganization, arrangement, adjustment or composition of or in respect of such Person under the present or any future Federal Bankruptcy Act or foreign law relating to bankruptcy, insolvency, or other relief of debtors, or appointing a receiver, liquidator, trustee (or other similar official) of such person or of all or a substantial part of the assets of such Person, or ordering the winding up or liquidation

— 2 —

AMF00267054

TX022

of the affairs of such Person, which order, judgment or decree shall remain unstayed and in effect for an aggregate of sixty (60) days (whether or not consecutive).

1.4    "Capital Contribution" of a Partner shall mean the amount of consideration contributed by such Partner to the Limited Partnership.

1.5    "Cash Flow" shall mean the net income from operations of the Limited Partnership determined in accordance with generally accepted accounting principles consistently applied, increased by: (1) any depreciation or depletion deductions taken into account in computing taxable income and (2) any nontaxable income or receipts (other than Capital Contributions), and reduced by: (1) any principal payments on any Partnership debts, (2) expenditures to acquire or improve Limited Partnership assets, and (3) proceeds from the sale or exchange of Limited Partnership assets.

1.6    "Code" shall mean the United States Internal Revenue Code of 1986, as amended, the Regulations promulgated thereunder and any corresponding provisions of subsequent law.

1.7    "Limited Partner" shall mean any Person who is a Limited Partner at the time of the reference thereto.

1.8    "Limited Partnership" shall mean the limited partnership formed pursuant to this Agreement.

1.9    "Partner" shall mean the General Partner, or any Limited Partner, and "Partners" refers collectively to the General Partner and the Limited Partner.

1.10    Partnership Capital. The "Partnership Capital" is the total of the Partners' capital contributions.

1.11    Partnership Interests. The "Partnership Interests" are the relative interests of the individual Partners in the Limited Partnership, as indicated herein.

- 3 -

\\NTSERVER\DATA\S&Z Docs\DOCS\JBK\Docs\Partnership\BAM.LP.doc

AMF00267055

TX022

1.12 <u>Transfer</u>.    A "Transfer" of a Partnership Interest includes any sale, pledging, encumbering, giving, bequeathing, or other transferring or disposing of, or permitting to be sold, encumbered, attached, or otherwise disposed of or have ownership changed in any manner, whether voluntarily, involuntarily, or by operation of law, other than to another partner.

1.13 "<u>Percentage Interest</u>" shall mean the proportion which each Partner's aggregate Capital Contribution paid to the Limited Partnership bears to the total of all Capital Contributions paid to the Limited Partnership by all Partners.

1.14 "<u>Person</u>" shall mean any individual, partnership, corporation, joint venture, trust, cooperative, association or other entity entitled or empowered to be a Limited Partner, and the heirs, executors, administrators, successors and assigns thereof, where the context so admits.

## ARTICLE 2

### FORMATION; PURPOSES; TERM; AND
### <u>CERTIFICATE OF LIMITED PARTNERSHIP</u>

2.1 <u>Formation of Limited Partnership.</u>  The Partners hereby form a limited partnership under and subject to the Act.  Except as hereinafter expressly provided, the General Partner shall be the sole general partner of the Limited Partnership and the Limited Partners shall be the sole limited partners thereof.

2.2 <u>Name and Principal Place of Business.</u>  The Limited Partnership shall conduct its business and promote its purposes under the firm name and style BAM L.P. or such other name as the General Partner may select from time to time.  The Limited Partnership's principal office for the transaction of business shall be 526 East Shore Road, Kings Point, NY 11024 or such other place or places within or outside the State of New York as the General Partner may select from time to time.

2.3 <u>Purposes.</u>  The Limited Partnership's purpose is owning, developing, leasing, managing, and selling of such property both real and personal as the General Partner may purchase or receive or invest on behalf of the Limited Partnership, and the conduct of any other business which shall be legal for a limited partnership to conduct in the State of New York.

- 4 -

\\NTSERVER\DATA\S&Z Docs\DOCS\JBK\Docs\Partnership\BAM.LP.doc

AMF00267056

TX022

2.4    Term.  The term of the Limited Partnership shall commence on the date hereof and shall continue and extend to and including December 31, 2025, or until such earlier date as the Limited Partnership shall be dissolved and terminated pursuant to the laws of the State of New York or Article 11 hereof.  The Limited Partnership may be continued beyond its scheduled termination date by an affirmative vote of the Partners holding a majority of the Partnership Interests.  However, at any time after the scheduled termination date, any Limited Partner may withdraw his or her capital account by written request to the General Partner, who shall cause the Limited Partnership to distribute such capital account within ninety (90) calendar days of the receipt of such written request.

2.5    Execution of Certificate.  Simultaneously with the execution of this Agreement, the Partners have executed and acknowledged a Certificate of Limited Partnership, which the General Partner shall cause to be recorded and filed in accordance with the requirements of the laws of the State of New York.

## ARTICLE 3

## PARTNERS AND CAPITAL

3.1    Partners' Capital Contribution.

3.1.1    The General Partner shall contribute to the capital of the Limited Partnership the sum of Ten Thousand ($10,000.00) Dollars.

3.1.2    Each of the Limited Partners shall contribute to the capital of the Limited Partnership the following:

| Limited Partner | Capital Contribution |
|---|---|
| Betsy Mann | $495,000 cash contribution |
| Adam Mann | $495,000 cash contribution |

- 5 –

AMF00267057

Page 54 of 78

TX022

3.2    Capital Accounts.  A separate capital account shall be maintained for each Partner, which shall consist of the amount of his or her Capital Contribution to Limited Partnership pursuant to Section 3.1 hereof and by his or her distributive share of Limited Partnership profits pursuant to Section 8.1 hereof, and decreased by distributions to him  or her by the Limited Partnership pursuant to Section 8.3 hereof, and by his or her distributive share of Limited Partnership losses pursuant to Section 8.1 hereof.  Except as otherwise expressly provided herein, no Partner shall be permitted to make any withdrawals from his or her capital account.

3.3    Each Partner's Share.  Each Partner owns that share of the total Partnership Capital in proportion to his or her Partnership Interest.  Each Partner has the unilateral right to withdraw his or her capital account at any time, and thereby terminate his or her interest in the Limited Partnership.

3.4    Additions.  No Partner will be required to make any additional capital contributions without his or her consent.

3.5    Adjustments,  Each Partner's capital account shall be adjusted whenever necessary, to reflect (1) his or her distributive share of Limited Partnership profits and losses, including capital gains and losses, (2) his or her additional contributions to the Limited Partnership, and (3) distribution made by the Limited Partnership to the Partner.  A Partner's loans to the Limited Partnership are not to be added to his or her capital account.

3.6    No Interest Paid.  No Partner shall receive any interest on his or her Capital Contributions or Limited Partnership Interest.

ARTICLE 4

SPECIAL POWER OF ATTORNEY

4.1    Appointment of General Partner.  Each Limited Partner, by his or her execution hereof, hereby irrevocably makes, constitutes and appoints the General Partner as his or her true and lawful attorney-in-fact, with power and authority in his or her name, place and stead, to make,

- 6 –

\\NTSERVER\DATA\S&Z Docs\DOCS\JBK\Docs\Partnership\BAM.LP.doc

AMF00267058

TX022

execute, sign, acknowledge and file on behalf of each of them and on behalf of the Limited Partnership:

4.1.1   Such Certificate of Limited Partnership or amendments thereto as may be required or permitted pursuant to law or the provisions of this Agreement;

4.1.2   Any papers which the General Partner may deem necessary or desirable to effect the termination of the Limited Partnership after its dissolution as provided in this Agreement;

4.1.3   Any fictitious name certificate required or permitted by law to be filed on behalf of the Limited Partnership; and

4.1.4   Any other instruments, documents and certificates which may from time to time be required or permitted by the laws of any state, the United States of America, or any political subdivision or agency thereof, to effectuate, implement, continue and defend the valid and subsisting existence, rights and property of the Limited Partnership as a limited partnership and its power to carry out its purposes as set forth in this Agreement.

4.2    <u>Terms of Grant.</u>

The foregoing appointment:

4.2.1   Is irrevocable and shall be deemed to be a power coupled with an interest in recognition of the fact that each of the Partners will be relying upon the power of the General Partner to act as contemplated by this Agreement in the execution, acknowledgment and filing and other actions of the General Partner on behalf of each Limited Partner;

4.2.2   Shall survive the death, incapacity or bankruptcy of any Limited Partner, and the transfer, by operation of law or otherwise, by any Limited Partner of the whole or any part of his or her interest in and to the Limited Partnership, its capital, profits or losses hereunder; and

4.2.3   May be exercised by the General Partner on behalf of each Limited Partner by a facsimile signature of the General Partner, or by listing all of the Limited Partners executing any instrument with a single signature of the General Partner as attorney-in-fact for all of them.

4.3    <u>Separate Form.</u>  Each Limited Partner hereby agrees to execute, acknowledge and deliver to the General Partner, promptly upon request therefor by the General Partner, a power of attorney in recordable form satisfactory to the General Partner, evidencing the foregoing appointment.

- 7 –

\\NTSERVER\DATA\S&Z Docs\DOCS\JBK\Docs\Partnership\BAM.LP.doc

AMF00267059

TX022

## ARTICLE 5

## MANAGEMENT RIGHTS OF GENERAL AND
## LIMITED PARTNERS; FEES AND EXPENSES

5.1    General Partner.    The business and affairs of the Limited Partnership shall be managed by the General Partner who shall have the exclusive right and power to manage, operate and control the Limited Partnership, to do all things necessary or appropriate to carry on its business and purposes, including, but not limited to, the right to incur and satisfy obligations relating to the formation and operation of the Limited Partnership, and to exercise all rights and powers conferred upon the General Partner by law, including, but not limited to, the right and power to:  (1) sell real or personal property to any person, giving any warranties or assurances deemed appropriate; (2) by, lease or otherwise acquire real or personal property to carry on and conduct the Limited Partnership's business; (3) borrow money for the Limited Partnership's business; (4) issue promissory notes and other debt instruments (negotiable or nonnegotiable), in any amounts secured by any encumbrance on all or any part of the Limited Partnership; (6) engage in any other means of financing; (7) enter into any agreement for sharing of profits and joint venture with any person or entity engaging in any business or venture in which the Limited Partnership may engage; (8) manage, administer, conserve, improve, develop, operate, lease, utilize, and defend the Limited Partnership's assets, directly or through third parties; (9) execute any type of agreement or instrument in connection with any other Limited Partnership power; (10) employ all types of agents and employees (including lawyers and accountants) as may seem proper; (11) buy or otherwise obtain the use of any type of equipment or other property that may be convenient or advisable in connection with any Limited Partnership business; (12) incur any reasonable expense for travel, telephone, telegraph, insurance, taxes, and such other things, in carrying on the Limited Partnership's business; (13) sue and be sued, complain and defend in the Limited Partnership's name of and on its behalf; and (14) quitclaim, release or abandon any Limited Partnership assets with or without consideration.

5.2    Limited Partners.    Limited Partners shall not have any right to take any part in or interfere in any manner with conduct, control or management of the Limited Partnership's business and shall have no right or authority to act for or bind the Limited Partnership, said powers being vested solely and exclusively in the General Partner.  Except as otherwise expressly provided herein, the Limited Partners shall have only those rights granted to limited partners pursuant to the Act.

- 8 –

\\NTSERVER\DATA\S&Z Docs\DOCS\JBK\Docs\Partnership\BAM.LP.doc

AMF00267060

TX022

5.3   Fiduciary Duty.  In exercising his full and exclusive power to manage the Limited Partnership's affairs and operate its business, the General Partner shall be bound by fiduciary duty to promote the purposes and best interests of the Limited Partnership.

5.4   Expenses.  All reasonable expenses incurred by the General Partner in managing and conducting the Limited Partnership's business, including (but not limited to) overhead, administrative and travel expenses, and professional, technical, administrative, and other services, will be reimbursed by the Limited Partnership.

5.5   Tax Matters Partner.  The General Partner shall also be the tax matters partner and, as such, shall be solely responsible for representing the Limited Partnership in all dealings with the Internal Revenue Service and any state, local, and foreign tax authorities, but the General Partner shall keep the other Partners reasonably informed of any Limited Partnership dealings with any tax agency.

5.6   General Partner's Fee.  The General Partner shall be entitled to reasonable compensation for the management of the Limited Partnership's business.

5.7   General Partner's Time.  The General Partner shall devote to the affairs of the Limited Partnership so much of his time as he may deem necessary or advisable to carry on the Limited Partnership's business.

5.8   No Liability and Indemnity.  The General Partner shall not be liable, responsible or accountable to the Limited Partnership or any Partner for any act or omission performed or omitted pursuant to the authority granted to him hereunder or by law, or for a loss resulting from any mistake or error in judgment on his part or from the negligence, dishonesty, fraud or bad faith of any employee, broker or other agent of the Limited Partnership, provided that such act or omission, such mistake or error in judgment or the selection of such employee, broker or other agent, as the case may be, did not result from the willful misconduct, gross negligence or fraud of the General Partner.  The General Partner may consult with legal counsel and any action taken or omitted in good faith in reliance upon and in accordance with the opinion or advice of such counsel shall be full protection and justification of the General Partner with respect to the action so taken or omitted.  The Limited Partnership shall indemnify and save harmless the General Partner from any loss, damage, liability or expense incurred or sustained by him by reason of any act performed by him or any omission of his for or on behalf of the Limited Partnership and in furtherance of its interest, but this indemnity shall not be applicable to loss, damage, liability or expense resulting from the willful

- 9 -

\\NTSERVER\DATA\S&Z Docs\DOCS\JBK\Docs\Partnership\BAM.LP.doc

AMF00267061

TX022

misconduct, gross negligence or fraud of the General Partner, nor shall the Limited Partners be required to make any capital contribution therefor to the Limited Partnership other than those referred to in Section 3.1 hereof.

5.9   <u>Reliance by Third Parties.</u>  Third parties dealing with the Limited Partnership may rely conclusively upon the power and authority of the General Partner to act as set forth herein and shall not be required to inquire into or ascertain the authority of the General Partner to so act.

## ARTICLE 6

## LIMITATION OF LIABILITY

6.1   <u>Limited Liability.</u>  No Limited Partner shall be liable for the debts, liabilities, losses, contracts or any other obligations of the Limited Partnership.  A Limited Partner shall be liable only to make his or her Capital Contribution and shall not be required to lend any funds to the Limited Partnership or, after his or her Capital Contribution shall have been paid, to make any further Capital Contribution to the Limited Partnership.   No General Partner shall have any personal liability for the repayment of the Capital Contribution of any Limited Partner.

## ARTICLE 7

## **TRANSFER OF PARTNERSHIP INTERESTS**

7.1   <u>Right of First Refusal.</u>  The Partners do not want Partnership Interests to be made generally available to persons other than the present Partners.  Therefore, the parties agree that no Partner will transfer any of his or her Partnership Interest except in accordance with the terms of this Article 7 and with the prior written consent of the General Partner.  No attempted Transfer of any Partnership Interest not in accordance with the terms of this Article 7 or the prior written consent of the General Partner shall be valid or reflected on the Partnership's books.

7.1.1   Any Partner who wishes to Transfer any of his or her Partnership Interest, or who has reason to believe that an involuntary Transfer or a Transfer by operation of law is reasonably foreseeable, shall first give each other Partner written notice of his or her intent to Transfer such offered Partnership Interest or of his or her knowledge that such involuntary Transfer or Transfer by operation of law is reasonably foreseeable.  Such notice must contain a description of what portion of his or her total Partnership Interest that will be so transferred, the consideration

- 10 –

\\NTSERVER\DATA\S&Z Docs\DOCS\JBK\Docs\Partnership\BAM.LP.doc

AMF00267062

TX022

that will be paid (if any), and the terms of Transfer and of any payment of consideration (including, but not limited to, the relative percentages of cash and debt, and the duration, interest rate, and payment schedule of any debt instruments), and the name, address (both home and office), and business or occupation of the person to whom such Partnership Interest would be transferred, and any other facts which are or would reasonably be deemed material to the proposed Transfer.

7.1.2    Upon the receipt of such notice, each other Partner shall have a right to buy a proportionate share of the offered Partnership Interest.  Each Partner may buy a share of such Partnership Interest with same proportion to the whole of such Partnership Interest as his or her own Partnership Interest bears to those of all Partners (except the transferring Partner).  Each Partner may exercise this right of first refusal by giving the transferring Partner written notice within thirty (30) calendar days after receipt of the latter's notice.

7.1.3    If the Partners do not agree to buy all of the offered Partnership Interest, the transferring Partner may complete the intended Transfer.  If such Transfer is not completed within thirty (30) calendar days after expiration or the last exercise period, any attempted Transfer will be deemed pursuant to a new offer and this section shall again apply.

7.1.4    If the proposed Transfer for which notice is given under Section 7.1.1. is a Transfer for value, and if the proposed transferee proposes to make payment in cash, debt instruments, or any type of property for which there is a national or regional public market (including, but not limited to, stocks, bonds, or other securities regularly traded on a regional or national exchange or over-the-counter), then each Partner who elects to buy part of the offered Partnership Interest under this Section 7.1 shall do so at the same purchase price and terms proportionately, as were contained in the transferring Partner's written notice of intent to Transfer.

7.1.5    If the proposed Transfer is not described in Section 7.1.4, then each Partner who elects to buy all or any part of the offered Partnership Interest under this Section 7.1 shall do so at its fair market value.  The fair market value of such Partnership Interest shall be determined by an independent appraisal performed by the Certified Public Accountant regularly employed to prepare the tax returns of the Limited Partnership, or if there be no such Certified Public Accountant, by another Certified Public Accountant selected by the General Partner, whose decision in this matter shall be conclusive.  Such purchase price shall be paid at the closing for the sale of such Partnership Interest, as follows:  one-quarter (1/4) of such purchase price in cash at such closing, and the balance in eighteen (18) equal monthly principal payments beginning one month after the date of such closing, with simple interest added to each installment, computed against the outstanding principal balance at the prevailing prime interest rate charged by Chase Manhattan Bank, of New York, New York, on the date of such closing.  The buyer will give the selling Partner a promissory note as evidence of this debt, and the buyer may prepay all or any part of the principal balance of the note at any time without penalty or premium.

\\NTSERVER\DATA\S&Z Docs\DOCS\JBK\Docs\Partnership\BAM.LP.doc

AMF00267063

TX022

7.1.6   The purchase of a Partnership Interest pursuant to this Section 7 will take place at a closing to be held not later than the tenth (10th) day after the earlier of: (1) the date on which the Partners' purchase options all have expired; or (2) the earliest date on which the Partners in the aggregate exercise their purchase options, if any, to buy all of the offered Partnership Interest. The closing will be held during normal business hours at the Limited Partnership's principal business office, or at any other place to which the parties agree.  At the closing, the buyer will pay for the Partnership Interest and the Limited Partnership will change its books to indicate the change of Partnership Interest.  If the transferring Partner is not present at the closing, then the buyer shall deposit the purchase price by check, notice or both, as this Section 7 requires, with any state or federally chartered bank in the State of New York as escrow agent, to be paid to the transferring Partner as soon as is reasonably practicable, less an appropriate fee to the Limited Partnership not to exceed five hundred dollars ($500.00) to pay for the additional administrative costs, and the Limited Partnership will adjust its books to reflect that these Partnership Interests have been transferred.

7.2    Condition Precedent to Admission of Substitute Partner.   Notwithstanding the provisions of Section 7.1, no person to whom a Partnership Interest is properly transferred shall be substituted as a new partner in place of the transferring Partner until (1) he or she is approved by the General Partner; (2) he or she has agreed in a writing delivered to the General Partner, to assume all of the obligations and undertakings of the transferor under this Agreement; and (3) he or she has paid to the General Partner a fee not to exceed five hundred dollars ($500.00) to cover costs of preparing, executing and recording all pertinent documents.

7.3    Withdrawal of Partners.  Except as otherwise provided herein or by the laws of the State of New York, no Partner may resign, withdraw or retire voluntarily from the Limited Partnership or sell, transfer, assign or otherwise dispose of his or her interest in the Limited Partnership.

7.4    Admission of Successor General Partners.  The General Partner may at any time designate one or more persons to be Successors to a General Partner, in each case with such participation in the General Partner's interest as the General Partner and such Successor General Partners may agree upon the General Partners shall execute, file and record with the appropriate governmental agencies such documents (including amendments to this Agreement) as are required to reflect the substitution of such Substituted General Partner.

7.5    Death, Incapacity or Bankruptcy of a Limited Partner.   The death, incapacity or bankruptcy of a Limited Partner shall not cause a dissolution of the Limited Partnership.  Upon the

– 12 –

\\NTSERVER\DATA\S&Z Docs\DOCS\JBK\Docs\Partnership\BAM.LP.doc

AMF00267064

TX022

death, incapacity or bankruptcy of a Limited Partner, the representative or successor-in-interest thereof, as the case may be, shall be deemed to be an assignee of the economic interest of the Limited Partner and may apply for admission to the Limited Partnership as a Substituted Limited Partner upon compliance with Section 7.7 hereof; provided, however, that in the event of bankruptcy of a Limited Partner if such representative or successor-in-interest shall not comply with Section 7.7 hereof, then the economic interest of that Limited Partner shall be dealt with in accordance with applicable law at the earliest practicable time.

7.6   **Death, Incapacity or Bankruptcy of a General Partner.**   The death, incapacity or bankruptcy of a General Partner shall not cause a dissolution of the Limited Partnership except with respect to the last remaining General Partner and then only if the remaining Partners fail to exercise the right set forth in Section 11.2 hereof.   The interest of the deceased, incapacitated or bankrupt General Partner in and to the Limited Partnership, its capital profits and looses shall be reconstituted into an equivalent Limited Partner interest and the legal representatives or successors-in-interest as the case may be, of such former General Partner shall be admitted to the Limited Partnership as a Substitute Limited Partner upon compliance with Section 7.7 hereof; provided, however, that in the event of the bankruptcy of a General Partner, if such representative or successor-in-interest shall not comply with Section 7.7 hereof, then the interest of such bankrupt General Partner shall be dealt with in accordance with applicable law at the earliest practicable time.   Anything herein to the contrary notwithstanding, such reconstituted interest shall not affect the rights of the Limited Partners as to distributions or return of their Capital Contributions or otherwise.

7.7   **Substituted Limited Partners.**

Anything herein contained to the contrary notwithstanding:

7.7.1   No successor-in-interest of a Limited Partner and no assignee or transferee of all or any part of a Limited Partner's interest in and to the Limited Partnership, its capital, profits and losses, shall be admitted to the Limited Partnership as a limited partner except upon

(i)   submitting to the General Partner a duly executed and acknowledged counterpart of the instrument or instruments making such transfer, together with such other instrument or instruments, including, but not limited to, a counterpart of this Agreement as it then may have been amended, signifying such transferee's agreement to be bound by all of the provisions of this Agreement, including, but not limited to, the restrictions upon transfers of interests therein

- 13 –

\\NTSERVER\DATA\S&Z Docs\DOCS\UBK\Docs\Partnership\BAM.LP.doc

AMF00267065

TX022

and thereto, all of the foregoing in such form and substance as shall be reasonably satisfactory to the General Partner;

(ii)    obtaining the General Partner's consent thereto in the General Partner's sole discretion; and

(iii)    agreeing to bear all costs and expenses, including legal fees of the Limited Partnership incurred in effecting such substitution.  Upon such transferee's compliance with the foregoing provisions, each of the Partners shall take all actions reasonably required to effectuate the recognition of the effectiveness of such transfer and the admission of such transferee to the Limited Partnership as a Substituted Limited Partner including, but not limited to, transferring such interest in and to the Limited Partnership, its capital, profits and losses upon the books thereof and executing, acknowledging and causing to be filed any necessary or desirable amendment to this Agreement and the Certificate of Limited Partnership.

7.7.2  The General Partner shall not consent to the admission of any such assignee as a substituted partner if, in the reasonable opinion of the General Partner,

(i)    such admission would jeopardize the status of the Limited Partnership as a partnership for Federal Income tax purposes,

(ii)    would cause a termination of the Limited Partnership within the meaning of the Code, or

(iii)    would violate, or cause the Limited Partnership to violate, any applicable law or governmental rule or regulation.

(iv)    such transfer is registered pursuant to the Securities Act of 1933 as amended and any other applicable Federal, State or governmental rule or regulation, or an exemption from such registration, if available.

- 14 -

\\NTSERVER\DATA\S&Z Docs\DOCS\JBK\Docs\Partnership\BAM.LP.doc

AMF00267066

TX022

7.7.3   No assignment to a minor or incompetent shall be effective in any respect.

7.8   <u>Non-Complying Assignments.</u>   Any assignment, sale, exchange or other transfer in contravention of any of the provisions of this Article 7 shall be void and ineffectual, and shall not bind or be recognized by the Limited Partnership.

7.9   <u>Obligations of Successors.</u>   Any person who acquires an interest in the Limited Partnership by assignment or is admitted to the Limited Partnership as a Substituted Limited Partner shall be subject to and bound by all the provisions of this Agreement as if originally a party to this Agreement.

<div align="center">

## ARTICLE 8

### ALLOCATION OF PROFITS AND LOSSES AND CASH FLOW.

</div>

8.1   <u>Profits and Losses.</u>   The Limited Partnership's net profits and losses shall be computed in accordance with generally accepted accounting principles, consistently applied.   The Limited Partnership's net profits and losses, and every section of income, deduction, gain, loss, and credit therein, shall be allocated proportionately among the Partners according to their Percentage Interests.   No Partner has priority over any other Partner as to Limited Partnership profits. Notwithstanding any other provision of this Section 8.1, income, gain, loss, and deductions with respect to property contributed to the Limited Partnership by a Partner shall be shared among the Partners so as to take account of any variation between the basis of the property so contributed and its fair market value at the time of contribution, in accordance with any applicable treasury regulations.

8.2   <u>Assignment or Death.</u>   In the event of an assignment of a Limited Partnership Interest or of a Partner's death, retirement, or expulsion, profits and losses shall be allocated based on the number of days in the particular year during which each Partner owned his or her Partnership Interest, or on any other reasonable basis consistent with applicable United States tax laws and regulations.

8.3   <u>Cash Flow.</u>   The General Partner shall have the sole discretion whether or not to

<div align="center">- 15 –</div>

\\NTSERVER\DATA\S&Z Docs\DOCS\JBK\Docs\Partnership\BAM.LP.doc

AMF00267067

have the Limited Partnership distribute its Net Cash Flow to the Partners from time to time. All distributions of Limited Partnership Net Cash Flow shall be distributed to the Partners in proportion to their Percentage Interests.

## ARTICLE 9

### RECORDS AND BOOKS OF ACCOUNT; FISCAL YEAR; BANKING; INSURANCE; REPORTS TO PARTNERS

9.1    Records and Books of Account. The Limited Partnership's books and records will be kept on the cash method of accounting and in accordance with generally accepted accounting principles consistently applied, and shall reflect all Limited Partnership transactions and be appropriate and adequate for all Limited Partnership business. The Limited Partnership books shall also be kept on a fiscal year ending December 31. The Limited Partnership's records shall be maintained at the offices of the Limited Partnership.

9.2    Fiscal Year. The Fiscal year of the Limited Partnership shall be the calendar year.

9.3    Banking. An account or accounts in the name of the Limited Partnership shall be maintained at such bank or banks as the General Partner may select. All uninvested funds of the Limited Partnership shall be deposited in a bank account of the Limited Partnership. All funds so credited to the Limited Partnership in any such account shall be subject to withdrawal by checks made in the name of the Limited Partnership and signed by the General Partner. The General Partner can authorize other persons to draw checks on Limited Partnership bank accounts, but such authority must be in writing and one (1) or more of the Partners may require that such persons be bonded. Each bank in which a Limited Partnership account is maintained is relieved of any responsibility to inquire into the Partners' authority to deal with such funds, and absolved of all liability with respect to withdrawals from such Limited Partnership accounts by any person duly authorized by the General Partner.

9.4    Reports to Partners. Within a reasonable period after the close of each fiscal year, the General Partner, at the Limited Partnership's expense, will give a written report to each other Partner indicating such Partner's share of the Limited Partnership income, which requirement may be satisfied by giving each Partner a copy of any tax form which includes such information.

- 16 -

\\NTSERVER\DATA\S&Z Docs\DOCS\JBK\Docs\Partnership\BAM.LP.doc

AMF00267068

TX022

# ARTICLE 10

## ADMISSION AND EXPULSION OF LIMITED PARTNERS

10.1    <u>Admission of New Limited Partners.</u>    A Person may be admitted as a Limited Partner at the sole discretion of the General Partner and further, provided that he or she consent in writing in a form satisfactory to the General Partner, to be bound by this Agreement.

10.2    <u>Expulsion of Limited Partners.</u>    Any Limited Partner may be expelled from the Limited Partnership on the decision of the General Partner.  Upon the expulsion of any Limited Partner, the Limited Partnership shall be required to pay to such Limited Partner an amount equal to the fair market value of any such expelled Limited Partner's Partnership Interest.  The fair market value of such expelled Limited Partner's Partnership Interest shall be determined by an independent appraisal performed by the Certified Public Accountant regularly employed to prepare the tax returns of the Limited Partnership or, if either there be no such Certified Public Accountant or such Certified Public Accountant be unacceptable to the expelled Limited Partner (as indicated by such expelled Limited Partner's written protest delivered to the General Partner within five days of such expelled Limited Partner's knowledge of his or her expulsion), by another Certified Public Accountant selected by the General Partner, whose decision in this matter shall be conclusive.

# ARTICLE 11

## DISSOLUTION;
## LIQUIDATION; AND TERMINATION.

11.1    <u>Dissolution.</u>  Subject to the provisions of the Act, the Limited Partnership shall be dissolved upon the first to occur of any of the following events:

      11.1.1  The expiration of the term provided for in Section 2.4 hereof;

      11.1.2  The death, withdrawal, bankruptcy or incapacity of the last remaining General Partner unless the Limited Partnership's business is continued as provided in Section 11.2 hereof;

      11.1.3  The sale of all or substantially all of its assets, and the

– 17 –

\\NTSERVER\DATA\S&Z Docs\DOCS\JBK\Docs\Partnership\BAM.LP.doc

AMF00267069

TX022

collection and distribution of the proceeds thereof; or

11.1.4   The agreement in writing by, or the vote of, the General Partner, and Limited Partners holding two-thirds (2/3) in interest of the Limited Partnership to dissolve the Limited Partnership.

11.2   <u>Right to Continue the Limited Partnership's Business.</u>   Upon the death, withdrawal, bankruptcy or incapacity of the last remaining General Partner the Limited Partnership shall have the right, but not the obligation, exercisable within thirty (30) days from such death, withdrawal, bankruptcy or incapacity to admit a new General Partner to the Limited Partnership upon such terms and conditions as they shall agree, and to elect to continue the Limited Partnership's business, in a reconstituted form as herein provided.   In such event, the Limited Partnership  shall not be dissolved but shall continue, and such reconstituted Limited Partnership shall have the exclusive right to use the Limited Partnership's firm name and style.

11.3   <u>Liquidation.</u>

11.3.1   Upon a dissolution of the Limited Partnership, the General Partner shall take or cause to be taken a full account of the Limited Partnership's assets and liabilities as of the date of such dissolution and shall proceed with reasonable promptness to liquidate the Limited Partnership's assets and to terminate its business.   The cash proceeds from the liquidation, as and when available therefor, shall be applied and distributed in the following order:

(i)   to the payment of all taxes, debts and other obligations and liabilities of the Limited Partnership, including the necessary expenses of liquidation, and excluding therefrom secured creditors as to whose obligations there is no personal liability for either the Limited Partnership or any Partner; provided, however, that where a contingent debt, obligation or liability exists, a reserve, in such amount as the General Partner deems reasonable, shall be established to meet such contingent debt, obligation or liability, which reserve shall be distributed only upon the termination of such contingency.

(ii)   all remaining proceeds in liquidation of the Limited Partnership shall be distributable pursuant to the provisions

- 18 –

\\NTSERVER\DATA\S&Z Docs\DOCS\JBK\Docs\Partnership\BAM.L.P.doc

AMF00267070

TX022

of Section 8.1 hereof.

11.3.2  The General Partner shall administer the liquidation of the Limited Partnership and the termination of its business, and shall be allowed a reasonable time for the orderly liquidation of the Limited Partnership's assets and the discharge of liabilities to creditors, so as to minimize losses resulting form the liquidation of the Limited Partnership's assets.

11.3.3   Anything herein contained to the contrary notwithstanding, the General Partner shall not be personally liable for the return of the Limited Partner's Capital Contributions, or any part thereof.  Any such return shall be made solely from the Limited Partnership's assets.

11.3.4  Except as otherwise provided herein, no dissolution or termination of the Limited Partnership shall relieve, release or discharge any Partner, or any of his successors, assigns, heirs or legal representatives, from any previous breach or default of, or any obligation theretofore incurred or accrued under any provision of this Agreement, and any and all such liabilities, claims, demands or causes of action arising from any such breaches, defaults and obligations shall survive such dissolution and termination.

11.4   Gain or Loss.  Any gain or loss on the disposition of Limited Partnership properties in the process of liquidation shall be credited or charged to the Partners in proportion to their Partnership Interest; provided, however, that gain or loss with respect to property contributed to the Limited Partnership by a Partner shall be shared among the Partners so as to take account of any variation between the basis of the property so contributed and its fair market value at the time of contribution, in accordance with any applicable Treasury regulations.  Any property distributed in kind in the liquidation shall be valued and treated as though it were sold and the cash proceeds distributed.  The difference between the value of property distributed in kind and its book value shall be treated as a gain or loss on the sale of property, and shall be credited or charged to the Partners accordingly.

11.5   Termination.  Upon compliance with the foregoing plan of liquidation and distribution, the General Partner shall file or cause to be filed a Certificate of Cancellation of the Certificate of Limited Partnership as well as any and all other documents required to effectuate the dissolution and termination of the Limited Partnership and the Limited Partnership thereupon shall

- 19 -

\\NTSERVER\DATA\S&Z Docs\DOCS\JBK\Docs\Partnership\BAM.LP.doc

AMF00267071

TX022

be terminated.

11.6    Limited Partnership Assets Sole Source.    The Partners shall look solely to the Limited Partnership's assets for the payment of any debts or liabilities owed by the Limited Partnership to the Partners and for the return of their capital contributions and liquidation amounts. If the Limited Partnership property remaining after the payment or discharge of all of its debts and liabilities to persons other than Partners is insufficient to return the Partners' capital contributions, they shall have no recourse therefor against the Limited Partnership or any other Partners, except to the extent that such other Partners may have outstanding debts or obligations owing to the Limited Partnership.

11.7    Winding Up.    The winding up of Limited Partnership affairs and the liquidation and distribution of its assets shall be conducted by the Partners, who are hereby authorized to do any and all acts and things authorized by law in order to effect such liquidation and distribution of the Limited Partnership's assets.

## ARTICLE 12

## PARTNERSHIP STATUS

Anything in this Agreement to the contrary notwithstanding, it is expressly intended that the entity formed hereby be a partnership as determined by the applicable provisions of the Code, the rules and regulations promulgated thereunder, and other laws pertaining thereto, and that in every respect all of the terms and provisions hereof shall at all times be so construed and interpreted as to give effect to this intent. In the event that the Internal Revenue Service of the United States or any governmental authority having jurisdiction shall in any way or at any time determine that any provision or provisions of this Agreement affects the status of this entity as a partnership, then and in such event, the Partners shall modify, amend or supplement the terms and provisions of this Agreement to the extent necessary to comply with the rules, regulations and requirements of the Internal Revenue Service of the United States or any other governmental authority having jurisdiction, in order that the entity formed hereby be treated as a partnership, be taxable as such, and the Partners hereof taxable as partners of a partnership; which modification or amendment shall be retroactively applied to the date of this Agreement.

## ARTICLE 13

## MISCELLANEOUS

– 20 –

\\NTSERVER\DATA\S&Z Docs\DOCS\JBK\Docs\Partnership\BAM.LP.doc

AMF00267072

TX022

13.1    Arbitration.  Except to the extent that the disputants agree in writing to any other method of resolution of a given dispute and except to the extent the resolution of any question is final, binding and conclusive upon the Partners under the terms of this Agreement, any dispute arising among the Partners, or any of them, or their successors-in-interest, or the estate of a deceased Partner, concerning the meaning or interpretation of this Agreement, or the rights, duties, or obligations of the Partners, including the successors-in-interest and the estate of a deceased Partner, shall, with reasonable promptness, be submitted to and determined by arbitration by the American Arbitration Association in the City of New York, in accordance with its rules then in force and effect, and judgment upon any award rendered may be entered in any court having jurisdiction thereof, and any such party may, if he so elects, institute proceedings in any court having jurisdiction for the specific performance by any party of any such award

13.2    Notices.  Unless otherwise provided herein, any offer, acceptance, approval, consent, waiver, notice or other communication required or permitted to be given hereunder (hereinafter collectively referred to as a "Notice") shall be deemed given only if in writing and mailed first class certified or registered mail, return receipt requested, postage prepaid, addressed to the Limited Partnership at its then principal office and to the Partner or Partners to whom any such Notice is addressed at the addresses herein stated for such Partner or Partners, or at such other address as any Partner hereafter may designate to the others in accordance with the provisions of this Section 13.2.  Notice of change of address of any Partner shall not be deemed to have been given until actual receipt by the Limited Partnership.  Notice on behalf of the Limited Partnership may be given by its attorneys.

13.3    Entire Agreement.  This Agreement contains the entire agreement of the parties hereto and supersedes all prior agreements and understandings, oral or otherwise, among the parties hereto with respect to the matters contained herein and it cannot be modified or amended except by written agreement signed by all of the parties.

13.4    Waivers.  Except as otherwise expressly provided herein, no purported waiver by any party of any breach by another party of any of his or her obligations, agreements or covenants hereunder, or any part thereof, shall be effective unless made in a writing subscribed by the party or parties sought to be bound thereby, and no failure to pursue or elect any remedy with respect to any default under or breach of any provision of this Agreement, or any part thereof, shall be deemed to be a waiver of any other subsequent similar or different default or breach, or any election of remedies available in connection  therewith, nor shall the acceptance or receipt by any party of any money or other consideration due him under this Agreement, with or without knowledge of any

- 21 –

\\NTSERVER\DATA\S&Z Docs\DOCS\JBK\Docs\Partnership\BAM.LP.doc

AMF00267073

TX022

breach hereunder, constitute a waiver of any provision of this Agreement with respect to such or any other breach.

13.5    Headings, Gender and Number.  The section headings herein contained have been inserted only as a matter of convenience of reference and in no way define, limit or describe the scope or intent of any provisions of this Agreement nor in any way affect any such provisions. Where appropriate as used herein, the masculine gender shall be deemed to include the feminine, the feminine gender shall be deemed to include the masculine, the singular number shall be deemed to include the plural and the plural number shall be deemed to include the singular, all as the context may require.

13.6    Cumulative Rights.   The rights and remedies provided in this Agreement are cumulative and the use of any right or remedy does not limit a party's right to use any or all other remedies.  All rights and remedies in this Agreement are in addition to any other legal rights the parties may have.

13.7    Other Activities.  Every Partner may also engage in whatever activities he or she chooses without having or incurring any obligation to offer any interest in such activities to any party hereto.

13.8    Waiver of Partition.  Each of the parties waives during the term of the Limited Partnership any right that he or she may have to maintain any action for partition with respect to the Limited Partnership's property or assets.

13.9    Binding Terms.  The terms of this Agreement are binding upon and inure to the benefit of the parties and, to the extent permitted by this Agreement, their heirs, executors, administrators, legal representatives, successors and assigns.

13.10   Personal Property.  The interests of each Partner in the Limited Partnership are personal property.

13.11   "Days" Defined.  For purposes of this Agreement, any reference to a "day" or "days" means a calendar day, including any days which fall on legal holidays or weekends.

- 22 –

\\NTSERVER\DATA\S&Z Docs\DOCS\JBK\Docs\Partnership\BAM.LP.doc

AMF00267074

TX022

13.12  Separability.  Each provision of this Agreement shall be considered to be separable. If, for any reason, any such provision or provisions, or any part thereof, is determined to be invalid and contrary to any existing or future applicable law, such invalidity shall not impair the operation of or affect those portions of this Agreement which are valid, but this Agreement shall be construed and enforced in all respects as if such invalid or unenforceable provision or provisions had been omitted, provided, however, that the status of this Limited Partnership, as a partnership, shall not be prejudiced.

13.13  Counterparts.  This Agreement may be executed in one or more counterparts and each of such counterparts, for all purposes, shall be deemed to be an original but all of such counterparts together shall constitute but one and the same instrument, binding upon all parties hereto, notwithstanding that all of such parties may not have executed the same counterpart.

13.14  Benefit.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective executors, administrators and successors, but shall not be deemed for the benefit of creditors or any other persons, nor shall it be deemed to permit any assignment by a Partner of any of his rights or obligations hereunder except as expressly provided for herein.

13.15  Further Actions.  Each of the Partners hereby agrees that he or she shall hereafter execute and deliver such further instruments and do such further acts and things as may be required or useful to carry out the intent and purpose of this Agreement and which are not inconsistent with the terms thereof.

13.16  Governing Law.  This Agreement and all matters pertaining thereto shall be governed by the laws of the State of New York, and particularly the Act

IN WITNESS WHEREOF, the Partners have hereunto set their hands and seals the day and year first above written

_____
Michael Mann, General Partner

_____
Betsy Mann, Limited Partner

_____
Adam Mann, Limited Partner

- 23 -

F:\S&Z Docs\DOCS\JBK\Docs\Partnership\BAM.LP.doc

AMF00267075

STATE OF NEW YORK    )
                     : ss:
COUNTY OF NEW YORK   )

On this 22nd day of March, 1999, before me personally appeared Michael Mann, to me known and known to me to be the individual described in and who executed the foregoing Limited Partnership Agreement and he acknowledged to me that he executed the same

Notary Public

RHEA BATTERMAN
NOTARY PUBLIC, STATE OF NEW YORK
REDACTED 0793-QUALIFIED IN QUEENS COUNTY
COMMISSION EXPIRES: 5/28/2000

STATE OF NEW YORK    )
                     : ss:
COUNTY OF NEW YORK   )

On this 22nd day of March, 1999, before me personally appeared Betsy Mann, to me known and known to me to be the individual described in and who executed the foregoing Limited Partnership Agreement and she acknowledged to me that she executed the same

Notary Public

RHEA BATTERMAN
NOTARY PUBLIC, STATE OF NEW YORK
REDACTED 0793-QUALIFIED IN QUEENS COUNTY
COMMISSION EXPIRES: 5/28/2000

STATE OF NEW YORK    )
                     : ss:
COUNTY OF NEW YORK   )

On this 22nd day of March, 1999, before me personally appeared Adam Mann, to me known and known to me to be the individual described in and who executed the foregoing Limited Partnership Agreement and he acknowledged to me that he executed the same

Notary Public

RHEA BATTERMAN
NOTARY PUBLIC, STATE OF NEW YORK
REDACTED 0793-QUALIFIED IN QUEENS COUNTY
COMMISSION EXPIRES: 5/28/2000

– 24 –

F:\S&Z Docs\DOCS\JBK\Docs\Partnership\BAM.LP.doc

AMF00267076

TX022

Apr-19-99 04:03P BETSY'S THINGS          212-221-4370          P.02

*Am. JEFF Enion 695-11.11*

DEPARTMENT OF THE TREASURY                    DATE OF THIS NOTICE:  04-14-1999
INTERNAL REVENUE SERVICE                      NUMBER OF THIS NOTICE: CP 575 B
HOLTSVILLE NY   00501                         EMPLOYER IDENTIFICATION NUMBER: [REDACTED]2634
                                              FORM:  SS-4
                                              1925528189.  B

                                                        FOR ASSISTANCE CALL US AT:
                                                        1-800-829-1040

      BAM L P
      MANN MICHAEL GEN PTR
      [REDACTED]                                        OR WRITE TO THE ADDRESS
                                                        SHOWN AT THE TOP LEFT.

                                                        IF YOU WRITE, ATTACH THE
                                                        STUB OF THIS NOTICE.

              WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER (EIN)

      Thank you for your Form SS-4, Application for Employer Identification Number
(EIN).  We assigned you EIN [REDACTED]2634.  This EIN will identify your business account,
tax returns, and documents, even if you have no employees.  Please keep this notice in
your permanent records.

      Use your complete name and EIN as shown above on all federal tax forms, payments,
and related correspondence.  If you use any variation in your name or EIN, it may
cause a delay in processing, incorrect information in your account, or cause you to be
assigned more than one EIN.

      Based on the information shown on your Form SS-4, you must file the following
forms(s) by the date we show.

              Form 1065                       04/15/2000

      Please file your Form by the due date shown above.  If the due date above has
passed and you have not yet filed, please file your Form by 04-29-1999.  If we don't
receive your form by that date, we will charge additional penalties and interest.  We
charge penalties and interest from the due date of the return until it is filed.

      Your assigned tax classification is based on information obtained from your Form
SS-4.  It is not a legal determination of your tax classification and is not binding
on the Service.  If you want a determination on your tax classification, you may seek
a private letter ruling from the Service under the procedures set forth in Rev. Proc.
98-01, 1998-1 I.R.B. 7 (or the superceding revenue procedure for the year at issue).

      If you need help in determining what your tax year is, you can get Publication
538, Accounting Periods and Methods, at your local IRS office.

      If you have any questions about the forms shown or the date they are due, you may
call us at 1-800-829-1040 or write to us at the address shown above.

*4/20/99*

*To: Jodi    THIS IS FOR YOUR RECORDS*
*Fr: Belle   SEE TAXPAYER ID WHICH WAS*
*            APPLIED FOR ON THIS NEW ACCOUNT #ICMS79.*

AMF00267077

Apr-19-99 04:04P BETSY'S THINGS                    212-221-4370              P.03

(IRS USE ONLY)    575B  113482634    04-14-1999  BAML  B  [REDACTED]8189  SS-4

Please use the label IRS provided when filing tax documents.  If that isn't possible, you should use your EIN and complete name and address as shown below to identify your account and to avoid delays in processing.

BAM L P
MANN MICHAEL GEN PTR
REDACTED

If this information isn't correct, please correct it using the bottom part of this notice.  Return it to us at the address shown so we can correct your account.

Thank you for your cooperation.

Keep this part for your records.                    CP 575 B (Rev. 1-19

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Return this part with any correspondence                          CP 575 B
so we may identify your account.  Please
correct any errors in your name or address.                    1925528189

Your Telephone Number  Best Time to Call  DATE OF THIS NOTICE:  04-14-1999
(     )     -                            EMPLOYER IDENTIFICATION NUMBER: [REDACTED]2634
                                              FORM:  SS-4

INTERNAL REVENUE SERVICE
HOLTSVILLE  NY    00501                      BAM L P
                                             MANN MICHAEL GEN PTR
                                             REDACTED

AMF00267078



**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue  New York, NY 10022-4834

212 230-2424
800 334-1343
Telex 235130
Fax 212 486-8178

TAX ID NO.    *APPLIED FOR*

ACCT# ASSIGNED    *1 CM 579 - 30/40*

Mr./Mrs./Ms.    **BAM, L.P.**
NAME

STREET        **REDACTED**

CITY                                    REDACTED    ZIP

TEL. NUMBER                BUSINESS                RESIDENCE

REG. REP    *R. SPRING*

**WE DEEM THE QUESTIONS CONTAINED IN THIS SECTION TO BE REQUIRED BY THE "KNOW YOUR CUSTOMER" RULE OF THE NATIONAL ASSOCIATION OF SECURITY DEALERS, AND, THEREFORE, MUST BE ANSWERED IN FULL.**

RESIDENCE

NAME OF EMPLOYER (IF HOUSEWIFE, NAME THE HUSBAND'S EMPLOYER)

EMPLOYER'S ADDRESS

OCCUPATION

BANK REFERENCE AND ADDRESS

OTHER BROKERAGE ACCOUNTS

CLIENT INTRODUCED BY    Richard Spring

**FOR OFFICE USE ONLY**

R R.'S ESTIMATE OF CLIENTS NET WORTH

IS CLIENT OVER 21 YEARS OF AGE            YES            NO

HOW LONG HAVE YOU KNOWN CLIENT

CLIENT IS CITIZEN OF

APPROVED BY

DATE SENT TO CLIENT                DATE SENT TO CLIENT

MARGIN AGREEMENT                MAIL WAIVER FORM
JOINT AGREEMENT                MULTIPLE A/C FORM
CORPORATE ACCOUNT FORM        CORPORATE RESOLUTION
CO-PARTNERSHIP FORM

Affiliated with:
Madoff Securities International Ltd.
12 Berkeley Street, Mayfair, London W1X 5AD.0171-493 6222

AMF00267079

*5 + DISP.*

## "CM" Account at Bernard L. Madoff Investment Securities

Preliminary: ⊙    Final: ○    *HOLDING ACCT PAPERS FOR BLM SIGN—*    Date: 03/24/99    MJC: ☑
Belle: ☑
Form ID: 5864    New Account: ⊙    Addition to Existing Account: ○    File: ☑
Jodi: ☑
Doesn't Add to Investment: ☐    How Much: $0.00    Frank: ☐

RR: RS    SMB: ☐
Account Title: BAM, L.P.    RADIX: ☐
CJ: ☐
Address (if new):    REDACTED    RS: ☑
BLM: ☐
Business Phone: 840-2171    Home Phone: REDACTED    JBG: ☐
Tax ID: APPLIED FOR    T: ☑
Date Received: 3/25/99 *EXPECTED*    Amount: *1 000 000*

Check? ☐    Wire? ☑ *Bankers Trust*
Deposit to Account#: NEW?? ?    Deposit on: 3/25/99    Upon Receipt? ☐

List Dups, if any:

Other Instructions: Note: Michael Mann is General Partner of this L.P., with his children Betsy and Adam as limited partners.

Withdrawal: ○    Withdrawal and Transfer: ○    Regular Quarterly Withdrawal: ○
Does this Reduce Investment? ☐    How Much? $0.00
Account Title:    RR:

Account Number:    Amount: $0.00
Date of Withdrawal:    Is this to close the Account? ☐
Check to be Mailed to Account Address: ☐
If No, Specify Other Mailing or Transfer Instructions:
Mail To:

Transfer to Account#:    Account Title:

○ OTHER CHANGES: (Account Title, Account Address, Tax ID#, etc.)
(Specify, Describe:)

Papers In? ☐    Date:

AMF00267080

Page 77 of 78    TX022



4/20/99 - Enter S.S. # — (AM)

6/3/00   AOD 2 #2 (AM)

9/7/10   ADD 2#3 (CE)

5/22/01  Fix 2#2 -✗

6/22/04 - add 2#4 -✗

7/14/04 - add Type 2# 5+6 (CE)

01/27/05  CXL 2#4 (CE)

4/4/05  Fix 2#6 (CE)

6/11/07 CXL 2#3 (CE)

04/06/07 add 2#1
        Move 2#3 to 2#2 (CE)

05/08/07 Fix 2#4 (CE)

AMF00267081

TX022