# EXHIBIT 59



**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue New York, NY 10022-4834

212 230-2424
800 334-1343
Telex 235130
Fax 212 486-8178

| TAX ID NO. | | ACCT# ASSIGNED |
|---|---|---|
| REDACTED | 8243 | 1ZA284   30/40 |

Mr./Mrs./Ms. Carol Nelson & Stan Nelson
NAME

STREET Redacted

Redacted

CITY REDACTED   STATE REDACTED   ZIP New Home 10036 Redacted

TEL. NUMBER   BUSINESS   RESIDENCE

REG. REP _____

WE DEEM THE QUESTIONS CONTAINED IN THIS SECTION TO BE REQUIRED BY THE "KNOW YOUR CUSTOMER" RULE OF THE NATIONAL ASSOCIATION OF SECURITY DEALERS, AND, THEREFORE, MUST BE ANSWERED IN FULL.

RESIDENCE   REDACTED

Edward S. Gordon Company   Stan   (Self)
NAME OF EMPLOYER (IF HOUSEWIFE, NAME THE HUSBAND'S EMPLOYER)

EMPLOYER'S ADDRESS   200 Park Avenue, NY, NY  10166

OCCUPATION   Real Estate Consultant

Chemical Bank  (Private Banking) 30 Rockerfeller Plaza
BANK REFERENCE AND ADDRESS   New York City

OTHER BROKERAGE ACCOUNTS WITH   Gordon Haskett Company

CLIENT INTRODUCED BY _____

**FOR OFFICE USE ONLY**

R. R.'S ESTIMATE OF CLIENTS NET WORTH _____

IS CLIENT OVER 21 YEARS OF AGE   YES_____   NO_____

HOW LONG HAVE YOU KNOWN CLIENT _____

CLIENT IS CITIZEN OF _____

APPROVED BY _____

DATE SENT TO CLIENT                                   DATE SENT TO CLIENT

MARGIN AGREEMENT _____   MAIL WAIVER FORM _____
JOINT AGREEMENT _____   MULTIPLE A/C FORM _____
CORPORATE ACCOUNT FORM _____   CORPORATE RESOLUTION _____
CO-PARTNERSHIP FORM _____

Affiliated with:
Madoff Securities International Ltd.
43 London Wall, London England EC2M 5TB.071-374 0891

AMF00008290

TX340                                                       Page 1 of 9

**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue New York, NY 10022-4834

212 230-2424
800 221-2242
Telex 235130
Fax 212 486-8178

Congress has mandated that all interest and dividend payors including banks, corporations and funds must withhold 10% of all dividends or interest paid UNLESS you complete and return the form at the bottom of this page.

### Important New Tax Information

"Under the Federal income tax law, you are subject to certain penalties as well as with-holding of tax at a 20% rate if you have not provided us with your correct social security number or other taxpayer identification number. Please read this notice carefully.

You (as a payee) are required by law to provide us (as payor) with your correct taxpayer identification number. If you are an individual, your taxpayer identification is your social security number. If you have not provided us with your correct taxpayer identification number, you may be subject to a $50 penalty imposed by the Internal Revenue Service. In addition, divided payments that we make to you may be subject to backup withholding starting on January 1, 1984.

Backup withholding is different from the 10% withholding on interest and dividends that was repealed in 1983. If backup withholding applies, payor is required to withhold 20% of dividend payments made to you. Backup withholding is not an additional tax. Rather, the tax liability of persons subject to backup withholding will be reduced by the amount of tax withheld. If withholding results in an overpayment of taxes, a refund may be obtained".

Please sign the form and return it to us.

<u>Even if you have already provided this information it is required by the IRS that all information requested below be provided again.</u>

Thank you for your cooperation.

(Corporations are exempt from this requirement and should not return this form.)

------------------------------------------------------------

SUBSTITUTE INTERNAL REVENUE SERVICE FORM W-9

Account Number(s): 1ZA284-3

Taxpayer Identification Number:

REDACTED 8243

Name: Carol & Stan Nelson

Address: REDACTED

(Signature) Carol Nelson    By Nelson

"Under penalties of perjury, I certify that the number shown on this form is my correct Taxpayer Identification Number".

Please fill in your name, address, taxpayer identification number, and sign above.

Affiliated with:
Madoff Securities International Ltd.
43 London Wall, London England EC2M 5TB 071-374 0891

AMF00008291



**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue New York, NY 10022-4834

212 230-2424
800 221-2242
Telex 235130
Fax 212 486-8178

## TRADING AUTHORIZATION LIMITED TO PURCHASES AND SALES OF SECURITIES

Gentlemen:

  The undersigned hereby authorizes Bernard L. Madoff (whose signature appears below) as his agent and attorney in fact to buy, sell and trade in stocks, bonds and any other securities in accordance with your terms and conditions for the undersigned's account and risk and in the undersigned's name, or number on your books. The undersigned hereby agrees to indemnify and hold you harmless from, and to pay you promptly on demand any and all losses arising therefrom or debit balance due thereon. However, in no event will the losses exceed my investment.

  In all such purchases, sales or trades you are authorized to follow the instructions of Bernard L. Madoff in every respect concerning the undersigned's account with you; and he is authorized to act for the undersigned and in the undersigned's behalf in the same manner and with the same force and effect as the undersigned might or could do with respect to such purchases, sales or trades as well as with respect to all other things necessary or incidental to the furtherance or conduct of such purchases, sales or trades.

  The undersigned hereby ratifies and confirms any and all transactions with you heretofore or hereafter made by the aforesaid agent or for the undersigned's account.

  This authorization and indemnity is in addition to (and in no way limits or restricts) any rights which you may have under any other agreement or agreements between the undersigned and your firm.

  This authorization and indemnity is also a continuing one and shall remain in full force and effect until revoked by the undersigned by a written notice addressed to you and delivered to your office at 885 Third Avenue but such revocation shall not affect any liability in any way resulting from transaction initiated prior to such revocation. This authorization and indemnity shall enure to the benefit of your present firm and any successor firm or firms irrespective of any change or changes at any time in the personnel thereof for any cause whatsoever, and of the assigns of your present firm or any successor firm.

Dated, *Jan 13, 1993*

*New York* (City)    *New York* (State)

Very truly yours, *Carol Nelson*    *By Nelson*
      (Client Signature)

Signature Of Authorized Agent: _____

Affiliated with:
Madoff Securities International Ltd.
43 London Wall, London England EC2M 5TB.071-374 0891

AMF00008292

**BERNARD L. MADOFF**
**Investment Securities**
885 Third Avenue New York, NY 10022-4834

212 230-2424
800 221-2242
Telex 235130
Fax 212 486-8178

## OPTION AGREEMENT

TO:  BERNARD L. MADOFF INVESTMENT SECURITIES

In order to induce you to carry accounts ("Option Accounts") for me (however designated) for transactions in option contracts (including, without limitations, purchase, sale, transfer, exercise and endorsement) ("Option Transaction"), I hereby warrant, represent and agree with you as set forth below on this Option Agreement.

1. I understand, and am well aware, that option trading may be highly speculative in nature. I am also aware that on certain days, option trading may cease and this could result in a financial loss to me. I agree to hold BERNARD L. MADOFF, its other Divisions, and its officers, Directors and Agents harmless for such loss.

2. I agree that I am responsible for making all final decisions as to transactions effected in any account of mine that you are carrying for me. I understand that each order I enter (to buy or sell) must be complete as to security, quantity, price and duration of the order.

3. I understand that option trading may result in additional margin requirements and I agree to put up the additional money or securities on a timely basis (when you so request).

4. I understand that any option transaction made for any account of mine is subject to the rules, regulations, customs and usages of The Options Clearing Corporation and of the registered national securities exchange, national securities association, clearing organization or market where such transaction was executed. I agree to abide by such rules, regulations, custom and usages and I agree that, acting individually or in concert with others, I will not exceed any applicable position or exercise limits imposed by such exchange, association, clearing organization or other market with respect to option trading.

5. If I do not satisfy, on a timely basis, your money or security calls, you are authorized in your sole discretion and without notification, to take any and all steps you deem necessary to protect yourself (for any reason) in connection with option transactions for my account including the right to buy and/or sell (including short or short exempt) for my account and risk any part or all of the shares represented by options handled, purchased, sold and/or endorsed by you for my account or to buy for my account and risk any option as you may deem necessary or appropriate. Any and all expenses or losses incurred in this connection will be reimbursed by me.

6. I bear full responsibility for taking action to exercise an option contract and you shall not be required to take any action with respect to an option contract, including any action to exercise a valuable option prior to its expiration date, except upon my express instructions.

Affiliated with:
Madoff Securities International Ltd.
43 London Wall, London England EC2M 5TB.071-374 0891

AMF00008293

TX340    Page 4 of 9

7. In addition to the terms and conditions hereof, my option account will be subject to all of the terms and conditions of all other agreements heretofore or hereafter at any time entered into with you relating to the purchase and sale of securities and commodities except to the extent that such other agreements are contrary to or inconsistent herewith.

8. This agreement shall apply to all puts or call which you may have executed, purchased, sold or handled for any account of mine and also shall apply to all puts, or calls which you may hereafter purchase, sell, handle or execute for any account of mine.

9. I have received from BERNARD L. MADOFF the most recent risk disclosure documents entitled "Understanding the Risks and Uses of Listed Options", "Listed Options on Stock Indices", "Listed Options on Foreign Currencies", and "Listed Options in Debt Instruments". I have read and understand the information contained in these documents.

10. I understand that you assign exercise notices on a random basis except that with respect to options on the following debt instruments: Treasury Bonds, Treasury Notes, Treasury Bills and GNMAS, you may preferentially assign exercises of block-size (i.e. covering $1,000,000 or more of underlying securities) to block-size writing positions and you may preferentially assign smaller exercises to smaller writing positions. I understand that upon my request you will provide me with further information regarding the procedure used to assign exercise notices.

DATED _13 Jan. 93_     ACCOUNT NO._____

## SIGNATURES

(If a Corporation)                    (If Individuals)

_____             _Carol Nelson_____
(Name of Corporation)                 _Sy Nelson_____
By_____              (Second Party If Joint Account)

Title_____             (If a Partnership)

                                      _____
                                      (Name of Partnership)
        SEAL
                                      By_____
                                              (A Partner)

AMF00008294



**BERNARD L. MADOFF**
**Investment Securities**

885 Third Avenue New York, NY 10022-4834

212 230-2424
800 221-2242
Telex 235130
Fax 212 486-8178

## CUSTOMER AGREEMENT

In consideration for you (the "Broker") opening or maintaining one or more accounts (the "Customer"), the Customer agrees to the terms and conditions contained in this Agreement. The heading of each provision of the Agreement is for descriptive purposes only and shall not be deemed to modify or qualify any of the rights or obligations set forth in each such provision. For purposes of this Agreement, "securities and other property" means, but is not limited to money, securities, financial instruments and commodities of every kind and nature and related contracts and options, except that the provisions of paragraph 19 herein (the arbitration clause) shall not apply to commodities accounts. This definition includes securities or other property currently or hereafter held, carried or maintained by you or by any of your affiliates, in your possession or control, or in the possession or control of any such affiliate, for any purpose, in and for any of my accounts now or hereafter opened, including any account in which I may have an interest.

**1. APPLICABLE RULES AND REGULATIONS**

All transactions in the Customer's Account shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market, and its clearing house, if any, where the transactions are executed by the Broker or its agents, including its subsidiaries and affiliates. Also, where applicable, the transactions shall be subject (a) to the provisions of (1) the Securities Exchange Act of 1934, as amended, and (2) the Commodities Exchange Act, as amended; and (b) to the rules and regulations of (1) the Securities and Exchange Commission, (2) the Board of Governors of the Federal Reserve System and (3) the Commodities Futures Trading Commission.

**2. AGREEMENT CONTAINS ENTIRE UNDERSTANDING/ASSIGNMENT**

This Agreement contains the entire understanding between the Customer and the Broker concerning the subject matter of this Agreement. Customer may not assign The rights and obligations hereunder without first obtaining the prior written consent of the Broker.

**3. SEVERABILITY**

If any provision of this Agreement is held to be invalid, void or unenforceable by reason of any law, rule, administrative order or judicial decision, that determination shall not effect the validity of the remaining provisions of this Agreement.

**4. WAIVER**

Except as specifically permitted in this Agreement, no provision of this Agreement can be, nor be deemed to be, waived, altered, modified or amended unless such is agreed to in a writing signed by the broker.

**5. DELIVERY OF SECURITIES**

Without abrogating any of the Broker's rights under any other portion of this Agreement and subject to any indebtedness of the Customer to the Broker, the Customer is entitled, upon appropriate demand, to receive physical delivery of fully paid securities in the Customer's Account.

**6. LIENS**

All securities and other property of the Customer in any account in which the Customer has an interest shall be subject to a lien for the discharge of any and all indebtedness or any other obligation of the Customer to the Broker. All securities and other property of the Customer shall be held by the Broker as Security for the payment of any such obligations or indebtedness to the Broker in any Account that the Customer may have an interest, and the Broker subject to applicable law may, at any time and without prior notice to the Customer, use and/or transfer any or all securities and other property interchangeably in any Account(s) in which the Customer has an interest (except regulated commodity Accounts).

Affiliated with:
Madoff Securities International Ltd.
43 London Wall, London England EC2M 5TB. 071-374 0891

AMF00008295

### 7. INTEREST

Debit balances of the Account(s) of the Customer shall be charged with interest in accordance with the Broker's established custom, as disclosed to the Customer pursuant to the provisions of Rule 10b-16 of the Securities Exchange Act of 1934.

### 8. DISCLOSURES REGARDING LIQUIDATIONS AND COVERING POSITIONS THE CUSTOMER SHOULD CLEARLY UNDERSTAND THAT, NOT WITHSTANDING A GENERAL POLICY OF GIVING CUSTOMERS NOTICE OF A MARGIN DEFICIENCY, THE BROKER IS NOT OBLIGATED TO REQUEST ADDITIONAL MARGIN FROM THE CUSTOMER IN THE EVENT THE CUSTOMER'S ACCOUNT FALLS BELOW MINIMUM MAINTENANCE REQUIREMENTS. MORE IMPORTANTLY, THERE MAY/WILL BE CIRCUMSTANCES WHERE THE BROKER WILL LIQUIDATE SECURITIES AND/OR OTHER PROPERTY IN THE ACCOUNT WITHOUT NOTICE TO THE CUSTOMER TO ENSURE THAT MINIMUM MAINTENANCE REQUIREMENTS ARE SATISFIED.

### 9. LIQUIDATIONS AND COVERING POSITIONS THE BROKER SHALL HAVE THE RIGHT IN ACCORDANCE WITH ITS GENERAL POLICIES REGARDING MARGIN MAINTENANCE REQUIREMENTS TO REQUIRE ADDITIONAL COLLATERAL OR THE LIQUIDATION OF ANY SECURITIES AND OTHER PROPERTY WHENEVER IN BROKER'S DISCRETION IT CONSIDERS IT NECESSARY FOR ITS PROTECTION INCLUDING IN THE EVENT OF , BUT NOT LIMITED TO:  THE FAILURE OF THE CUSTOMER TO PROMPTLY MEET ANY CALL FOR ADDITIONAL COLLATERAL; THE FILING OF A PETITION IN BANKRUPTCY BY OR AGAINST THE CUSTOMER; THE APPOINTMENT OF A RECEIVER IS FILED BY OR AGAINST CUSTOMER; AN ATTACHMENT IS LEVIED AGAINST ANY ACCOUNT OF THE CUSTOMER OR IN WHICH THE CUSTOMER HAS AN INTEREST OR; THE CUSTOMER'S DEATH.  IN SUCH EVENT, THE BROKER IS AUTHORIZED TO SELL ANY AND ALL SECURITIES AND OTHER PROPERTY IN ANY ACCOUNT OF THE CUSTOMER WHETHER CARRIED INDIVIDUALLY OR JOINTLY WITH OTHERS, TO BUY ALL SECURITIES OR OTHER PROPERTY WHICH MAY BE SHORT IN SUCH ACCOUNT(S), TO CANCEL ANY OPEN ORDERS AND TO CLOSE ANY OR ALL OUTSTANDING CONTRACTS, ALL WITHOUT DEMAND FOR MARGIN OR ADDITIONAL MARGIN, OTHER NOTICE OF SALE OR PURCHASE, OR OTHER NOTICE OR ADVERTISEMENT EACH OF WHICH IS EXPRESSLY WAIVED BY THE CUSTOMER.  ANY SUCH SALES OR PURCHASES MAY BE MADE AT BROKER'S DISCRETION ON ANY EXCHANGE OR OTHER MARKET WHERE SUCH BUSINESS IS USUALLY TRANSACTED OR AT PUBLIC AUCTION OR PRIVATE SALE, AND BROKER MAY BE THE PURCHASER FOR BROKER'S OWN ACCOUNT.  IT IS UNDERSTOOD A PRIOR DEMAND, OR CALL, OR PRIOR NOTICE OF THE TIME AND PLACE OF SUCH SALE OR PURCHASE SHALL NOT BE CONSIDERED A WAIVER OF BROKER'S RIGHT TO SELL OR BUY WITHOUT DEMAND OR NOTICE AS HEREIN PROVIDED.

### 10. SATISFACTION OF INDEBTEDNESS

The Customer agrees to satisfy, upon demand, any indebtedness, and to pay any debit balance remaining when the Customer's Account is closed, either partially or totally. Customer Account(s) may not be closed without Broker first receiving all securities and other property for which the Account is short and all funds to pay in full for all securities and other property in which the Account(s) are long.

### 11. TRANSACTIONS AND SETTLEMENTS

All orders for the purchase or sale of securities and other property will be authorized by the Customer and executed with the understanding that an actual purchase or sale is intended and that it is the Customer's intention and obligation in every case to deliver certificates or commodities to cover any and all sales or to pay for any purchase upon the Broker's demand. If the Broker makes a short sale of any securities and other property at the Customer's direction or if the Customer fails to deliver to the Broker any securities and other property that the Broker has sold at the Customer's direction, the Broker is authorized to borrow the securities and other property necessary to enable the Broker to make delivery and the Customer agrees to be responsible for any cost or loss the Broker may incur, or the cost of obtaining the securities and other property if the Broker is unable to borrow it. The Broker is the Customer's agent to complete all such transactions and is authorized to make advances and expend monies as are required.

AMF00008296

TX340

Page 7 of 9

**12. SALES BY CUSTOMER**

The Customer understands and agrees any order to sell "short" will be designated as such by the Customer, and that the Broker will mark the order as "short". All other sell orders will be for securities owned ("long"), at that time, by the Customer by placing the order the Customer affirms that he will deliver the securities on or before the settlement date.

**13. BROKER AS AGENT**

The customer understands that the Broker is acting as the Customer's agent, unless the Broker notifies the Customer, in writing before the settlement date for the transaction, that the Broker is acting as dealer for its own account or as agent for some other person.

**14. CONFIRMATIONS AND STATEMENTS**

Confirmations of transactions and statements for the Customer's Account(s) shall be binding upon the Customer if the Customer does not object, in writing, within ten days after receipt by the Customer. Notice or other communications including margin and maintenance calls delivered or mailed to the address given below shall, until the Broker has received notice in writing of a different address, be deemed to have been personally delivered to the Customer whether actually received or not.

**15. SUCCESSORS**

Customer hereby agrees that this Agreement and all the terms thereof shall be binding upon Customer's heirs, executors, administrators, personal representatives and assigns. This Agreement shall enure to the benefit of the Broker's present organization, and any successor organization, irrespective of any change or changes at any time in the personnel thereof, for any cause whatsoever.

**16. CHOICE OF LAWS**

THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF _New York_ AND SHALL BE CONSTRUED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF _New York_.

**17. CAPACITY TO CONTRACT, CUSTOMER AFFILIATION**

By signing below, the Customer, represents that he/she is of legal age, and that he/she is not an employee of any exchange, or of any corporation of which any exchange owns a majority of the capital stock, or of a member of any exchange, or of a member firm or member corporation registered on any exchange, or of a bank, trust company, insurance company or of any corporation, firm or individual engaged in the business of dealing, either as broker or as principal, in securities, bills of exchange, acceptances or other forms of commercial paper, and that the Customer will promptly notify the Broker in writing if the Customer is now or becomes so employed. The Customer also represents that no one except the Customer has an interest in the account or accounts of the Customer with you.

**18. ARBITRATION DISCLOSURES**

\* ARBITRATION IS FINAL AND BINDING ON THE PARTIES.

\* THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.

\* PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.

\* THE ARBITRATORS AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED.

AMF00008297

**19. ARBITRATION**

THE CUSTOMER AGREES, AND BY CARRYING AN ACCOUNT FOR THE CUSTOMER THE BROKER AGREES THAT ALL CONTROVERSIES WHICH MAY ARISE BETWEEN US CONCERNING ANY TRANSACTION OR THE CONSTRUCTION, PERFORMANCE, OR BREACH OF THIS OR ANY OTHER AGREEMENT BETWEEN US PERTAINING TO SECURITIES AND OTHER PROPERTY, WHETHER ENTERED INTO PRIOR, ON OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED PURSUANT TO THE FEDERAL ARBITRATION ACT AND THE LAWS OF THE STATE DESIGNATED IN PARAGRAPH 18, BEFORE THE AMERICAN ARBITRATION ASSOCIATION, OR BEFORE THE NEW YORK STOCK EXCHANGE, INC. OR AN ARBITRATION FACILITY PROVIDED BY ANY OTHER EXCHANGE OF WHICH THE BROKER IS A MEMBER, OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. OR THE MUNICIPAL SECURITIES RULE MAKING BOARD AND IN ACCORDANCE WITH THE RULES OBTAINING OF THE SELECTED ORGANIZATION. THE CUSTOMER MAY ELECT IN THE FIRST INSTANCE WHETHER ARBITRATION SHALL BE BY THE AMERICAN ARBITRATION ASSOCIATION, OR BY AN EXCHANGE OR SELF-REGULATORY ORGANIZATION OF WHICH THE BROKER IS A MEMBER, BUT IF THE CUSTOMER FAILS TO MAKE SUCH ELECTION, BY REGISTERED LETTER OR TELEGRAM ADDRESSED TO THE BROKER AT THE BROKER'S MAIN OFFICE, BEFORE THE EXPIRATION OF TEN DAYS AFTER RECEIPT OF A WRITTEN REQUEST FROM THE BROKER TO MAKE SUCH ELECTION, THEN THE BROKER MAY MAKE SUCH ELECTION, THE AWARD OF THE ARBITRATORS, OR OF THE MAJORITY OF THEM SHALL BE FINAL, AND JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT, STATE OR FEDERAL, HAVING JURISDICTION.

**20. DISCLOSURES TO ISSUERS**

Under rule 14b-1(c) of the Securities Exchange Act of 1934, we are required to disclose to an issuer the name, address, and securities position of our customers who are beneficial owners of that issuer's securities unless the customer objects. Therefore, please check one of the boxes below:

✓ Yes, I do object to the disclosure of information.

___ No, I do not object to the disclosure of such information.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 19.

(X) _Carol Nelson Jan 13, 1993_     (X) _Shy Nelson 13 Jan 93_
(Customer Signature/date)                (Customer Signature/date)

[Redacted]
(Customer Address)                       (Account Number)

[Redacted]

AMF00008298

TX340    Page 9 of 9