# EXHIBIT 60

Page 1

1

2      UNITED STATES BANKRUPTCY COURT

3      SOUTHERN DISTRICT OF NEW YORK

4      ------------------------------------x

5      SECURITIES INVESTOR PROTECTION
       CORPORATION,

6                   Plaintiff-Applicant,

7      -against-              Adv. Pro. No.
                              08-01789(SMB)

8      BERNARD L. MADOFF INVESTMENT
       SECURITIES LLC,

9                   Defendant.

10     ------------------------------------x

11     In re:

12     BERNARD L. MADOFF,
                   Debtor.

13

       ------------------------------------x

14

       IRVING H. PICARD, Trustee for the

15     Liquidation of Bernard L. Madoff
       Investment Securities LLC,

16                  Plaintiff,

17     -against-              Adv. Pro. No.
                              10-05421(SMB)

18     FRANK J. AVELLINO, et al.,
                   Defendants.

19

       ------------------------------------x

20

          REMOTE VIDEOTAPED DEPOSITION OF

21             STANLEY FORTGANG
            New Rochelle, New York

22            December 10, 2020

23

24     Reported By:

25     ERIC J. FINZ

Page 2

1

2                          December 10, 2020
                            10:19 a.m.

3

4      Remote Videotaped Deposition of

5  STANLEY FORTGANG, taken by Plaintiff,

6  pursuant to Notice, before ERIC J. FINZ,

7  a Shorthand Reporter and Notary Public

8  within and for the State of New York.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

```
 1
 2   A P P E A R A N C E S: (All Via Remote)
 3   BAKER HOSTETLER LLP
     Attorneys for Plaintiffs
 4        45 Rockefeller Plaza
          New York, New York 10111
 5
     BY:   ESTERINA GIULIANI, ESQ.
 6         egiuliani@bakerlaw.com
           KATHRYN M. ZUNNO-FREANEY, ESQ.
 7         kzunno@bakerlaw.com
           CHRISTINA GOTSIS, ESQ.
 8         cgotsis@bakerlaw.com
 9
10   HAILE SHAW & PFAFFENBERGER PA
     Attorneys for Defendant
11        660 US Highway 1
          North Palm Beach, Florida 33408
12
     BY:   GARY WOODFIELD, ESQ.
13         gwoodfield@haileshaw.com
14
15
16
     ALSO PRESENT:
17
          THOMAS AVELLINO
18
          VINCENT MAGGIANO, Veritext Concierge
19
          LEE BOWRY, Videographer
20
21
22
23
24
25
```

STANLEY FORTGANG

1

2    Q.    Okay.  And so what is the

3    basis for your opinion that the trades

4    confirmed to Avellino are legitimate

5    transactions of actual securities?

6    A.    As a -- as a market-maker and

7    a practitioner for the last 25 -- for 25

8    years, it is custom and practice and

9    standard knowledge that the way a

10   transaction is confirmed is through the

11   existence of a confirmation and a

12   statement.  When one receives a

13   confirmation and/or a statement, they

14   are, therefore, the recipient of the

15   transaction that's listed there.  That is

16   a statement -- a confirmation reflects,

17   by definition, and market custom and

18   practice, that it is reflecting an actual

19   trade.

20   Q.    And what, if any, analysis did

21   you do to determine if the trades

22   confirmed to Avellino were legitimate

23   transactions of actual securities?

24   A.    I'm not sure what you mean by

25   "analysis."

Page 117

1                    STANLEY FORTGANG

2          Q.     Well, other than your

3     experience that you just explained, did

4     you do any type of analysis on --

5          A.     Sorry.

6          Q.     Go ahead.

7          A.     There is no analysis to be

8     done.  If you receive a confirmation,

9     then a trade was done.

10         Q.     Okay.  And did you do any

11    analysis to determine if the trades

12    reflected on the Avellino account

13    statements actually occurred?

14         A.     Same idea.  An account

15    statement is just a period in time

16    summary, for a month, for a quarter or a

17    year, summary of all the confirmations

18    that were sent out, all the trades that

19    were done.  So if they're listed on a

20    statement, then a trade occurred.

21         Q.     Okay.  And did you take any

22    steps to determine if any of those trades

23    actually were executed in the market?

24         A.     They were executed between the

25    market-maker, BLMIS, and the accounts

1                    STANLEY FORTGANG

2       that BLMIS did the transaction with.

3       That's the transaction.

4              Q.    Well, I mean, when you say

5       that, you mean -- let me back up.  What

6       do you mean by that?

7              A.    When a -- when one receives a

8       confirmation, let's just say, for

9       example, when Frank Avellino receives a

10      confirmation, that a trade occurred where

11      BLMIS, let's just say, for example, sold

12      them security XYZ, then that is proof of

13      the transaction between BLMIS and the

14      Avellinos.  That is the transaction that

15      occurred.  What BLMIS did other than that

16      has nothing to do with Mr. Avellino.

17             Q.    Did you do any analysis to see

18      what BLMIS actually did?

19             A.    We know what they did.  They

20      sold or bought a security with Avellino,

21      as shown by the confirmation.

22             Q.    So the confirmation then is

23      what you looked at to determine that it

24      was a legitimate transaction?

25             A.    The confirmation is the proof

Page 119

1                STANLEY FORTGANG

2      and the only proof that exists that a

3      trade occurred between BLMIS and

4      Avellino.

5          Q.    Okay.  And do you know whether

6      BLMIS actually sold or bought the

7      security?

8          A.    They actually bought or sold

9      it by the fact that they issued a

10     confirmation saying they bought or sold a

11     security with Mr. Avellino or the entity.

12         Q.    Okay.  So other than the

13     confirmation, is there anything else that

14     you would have -- that you would have --

15         A.    That is the only proof that

16     exists.

17         Q.    So if you received a

18     confirmation, could you go out in the

19     market and see if that trade was actually

20     done?

21         A.    It was done.  The market-maker

22     sold it to you.  They're acting as a --

23     BLMIS is acting as a market-maker.  When

24     the market-maker sells or buys to the

25     client, that is a transaction.  It

Page 128

1                    STANLEY FORTGANG

2          A.    It is the -- these documents

3    here specifically relating to opinion 1

4    and the confirms, my opinion is it does

5    not rely upon the statements and

6    confirmations.  They just serve as

7    examples to me of what was received by

8    Avellino to ensure that the statements

9    and confirmations did in fact reflect

10   securities, prices, volumes, et cetera.

11   The existence of such confirmations and

12   statements are the basis of my opinion.

13         Q.    Okay.  And other than those

14   statement and confirmations that you have

15   been referring to, which I believe is

16   number 6 of the materials reviewed.

17   Correct?  Is there anything else on this

18   list?

19         A.    Sorry, I just lost it.  Let me

20   go back.

21         Q.    That's okay.  Let me rephrase

22   the question anyway to make it clearer.

23              Other than the statement and

24   confirmations of Strattham, which is

25   number 6 in Exhibit 3, your materials

STANLEY FORTGANG

1

2    Correct?

3           A.    I said yes.  Yes.

4           Q.    Oh, okay.  I think you cut out

5    on the video, so I apologize for that.

6           A.    I'm looking down at my paper.

7           Q.    So did you engage in any

8    analysis of the transactions you saw in

9    the statements or confirmations?

10          A.    I don't know what you mean by

11   "analysis."  There was no analysis that I

12   could think of that was required.  Again,

13   my opinion is based -- is that the

14   receipt or the issuance of a confirmation

15   and a statement is the proof of the

16   opinion I'm giving that a trade existed

17   between BLMIS and Avellino on an actual

18   security.

19          Q.    Okay.  So for example, you

20   wouldn't have checked to see if that

21   transaction that was reflected in a

22   confirmation or a statement was even

23   possible that day in the market?

24          A.    No.  But that wouldn't matter.

25   Between a market-maker, if the

Page 138

1                    STANLEY FORTGANG

2      second side to the trade.  As a

3      market-maker they do the trade with you,

4      period, full stop, no other parties

5      involved.

6           Q.    Okay.  So for any given

7      transaction, did you do any analysis to

8      determine whether BLMIS was acting as a

9      market-maker in connection with the

10     Avellino accounts?

11          A.    I'm not sure what you mean by

12     "analysis" again.  But the confirmation

13     is the proof.  There is no further

14     analysis.

15          Q.    So when you look at a

16     confirmation, are you able to determine

17     whether or not BLMIS was acting as a

18     market-maker for that transaction?

19          A.    Confirmations, I don't recall

20     offhand if they specify.  Sometimes

21     confirmations do, sometimes they don't.

22     It depends who's issuing the

23     confirmation.  I don't recall offhand if

24     the ones I looked at had a specific

25     denoting of what capacity they acted in.

Page 143

1                    STANLEY FORTGANG

2    and that allowed them to trade -- to be

3    in business.

4         Q.    And where did you get those

5    facts from?

6         A.    I don't recall if I did work

7    to look at it or not, or it was known to

8    me and any other market participant that

9    BLMIS was in fact a member of SEC and

10   FINRA.

11        Q.    Okay.  And do you know what

12   time period he was a member and what time

13   period he was registered?

14        A.    I don't recall specifically.

15   But 1993 to 2008 is when I would -- I

16   shouldn't speculate, but that's when I

17   believe the time frame probably was.

18        Q.    Okay.  And so just to confirm,

19   so -- but you didn't do any analysis to

20   determine in which capacity BLMIS was

21   acting with the Avellino account

22   statements, that is, a broker-dealer or

23   market-maker?

24        A.    They had to be acting as one

25   of those two.

Page 144

1                    STANLEY FORTGANG

2          Q.     Okay.

3          A.     Or both.  So there was no

4    analysis to be done.  They had to be

5    acting in one of those two, if not both,

6    capacities.

7          Q.     Right.

8                 But you didn't do any analysis

9    to figure out for which transaction BLMIS

10   was acting in which capacity?  I'm sorry,

11   Mr. Fortgang, your video cut out because

12   I can't hear you.

13         A.     Can you hear me now?

14         Q.     I can hear you now.

15         A.     Yeah, I don't know what

16   happened, I'm sorry.

17                I said no, I did not do any

18   further analysis.

19         Q.     Okay, thank you.

20                I would like to turn your

21   attention now, Mr. Fortgang, to page 6,

22   the second full paragraph.  I'm sorry,

23   page 6 of Trustee 133, your June 5th

24   report.  The second full paragraph starts

25   with, "Any and all monies deposited by

Page 159

1                    STANLEY FORTGANG

2          the record, the time is 2:06 p.m.

3          This is the end of media unit 3.

4               (A recess was taken.)

5               THE VIDEOGRAPHER:  We're back

6          on the record, the time is

7          p.m.  This is the beginning of

8          media unit 4 in the deposition of

9          Stanley Fortgang.

10   BY MS. GIULIANI:

11          Q.    Hello again, Mr. Fortgang.

12          A.    Hi.

13          Q.    So I would like to direct your

14   attention to opinion 3, which is page 7

15   of your June 5th report.

16          A.    Okay.

17          Q.    Okay.  Where it says, "A

18   market-maker selling naked shorts is

19   common and acceptable practice."

20               Do you see that?

21          A.    Yes.

22          Q.    So on page 7, the third

23   paragraph under opinion 3 states,

24   "Therefore, when BLMIS, acting as a

25   market-maker, sold securities to Avellino

1                STANLEY FORTGANG

2       that it may not have owned, it was acting

3       in a perfectly legitimate manner."

4                Do you see that?

5          A.    Yes.

6          Q.    Okay.  What do you mean by

7       BLMIS sold securities to Avellino that it

8       may not have owned?

9          A.    So that's what short selling

10      is, when you sell something you do not

11      yet own.  And as a market-maker, they had

12      an exemption from Reg SHO, which allowed

13      them to naked short any securities that

14      they wanted to.  So if they sold

15      securities to Avellino that they did not

16      have, they were engaging in short selling

17      that they were permitted to do.

18         Q.    Okay.  And just to be clear,

19      when you say Avellino, again, we're

20      referring to Frank Avellino, the related

21      family entities, and family members that

22      are defendants.  Correct?

23         A.    Correct.

24         Q.    Okay.  And now what specific

25      securities did BLMIS sell to Avellino

                    STANLEY FORTGANG

1
2    that it may not have owned?

3         A.    Oh, I do not know that.

4         Q.    Okay.  So you did no analysis

5    to determine what specific securities

6    BLMIS sold to Avellino that it may not

7    have owned?

8         A.    There is no way for anyone to

9    know that.

10        Q.    What do you mean?

11        A.    There is no way for anyone to

12   know that.  BLMIS is selling a security,

13   only they know if they had it or they

14   didn't.  No one else in the marketplace

15   would know if they had it.

16        Q.    Okay.  So would there be no

17   record that BLMIS sold a security

18   eventually?

19        A.    We have records.  I'm not sure

20   what you mean by "eventually."  But the

21   record of the sale was the confirmation

22   issued from BLMIS to Avellino or

23   whomever.  They issue a confirmation to

24   show, to memorialize the fact that they

25   sold these securities to them.

1                    STANLEY FORTGANG

2          Q.    Okay.  So is it your testimony

3      then that -- well, let me ask this

4      question:  So do you know what specific

5      securities BLMIS sold to Avellino that it

6      did not own?

7          A.    You, I believe, asked and

8      answered is what you guys like to say.  I

9      believe you asked me that already.  And

10     there is no way to know that.

11         Q.    Okay.

12         A.    There is absolutely no way you

13     could know that.

14         Q.    Okay.  The question I'd asked

15     you was about may not have owned, now I

16     was honing in on whether it did not own

17     it.  So you have the same answer, in

18     other words, you're saying that there is

19     no way to know that?

20         A.    Correct.

21         Q.    BLMIS would know that, but

22     there is no way --

23         A.    Correct.

24         Q.    Okay.  And I assume that would

25     mean it would be in BLMIS's records,

1          STANLEY FORTGANG

2    whether or not --

3          A.    If you could see their

4    holdings on a given day when they did a

5    transaction, then yes.

6          Q.    Okay.  So what is the basis

7    for your statement that BLMIS sold

8    securities to defendants that it may not

9    have owned?

10         A.    Well, they sold securities to

11   the defendant, because we have the

12   confirmations and the statements.  We

13   don't know if they owned them or not, so

14   we say may have been.  They may have

15   owned them, but since we can't know that,

16   we have to know that they either did or

17   didn't.  So they may have been selling

18   something they didn't own.  But that's

19   perfectly legitimate.  So if one were to

20   say but they sold you these but they

21   didn't have them, I am saying that makes

22   no difference whatsoever.

23         Q.    And so the securities that

24   you're talking about that were sold to

25   Avellino, what securities are you talking

1                    STANLEY FORTGANG

2          about?  Are you talking about all the

3          securities that are reflected on their

4          BLMIS statements?

5                    A.    Anything that BLMIS issued a

6          statement -- issued a confirmation that

7          they sold to Avellino, would be included.

8          The confirmation says we sold it to you.

9                    Q.    Okay.  And so this statement

10         that BLMIS sold securities to Avellino

11         that it may not have owned, is that based

12         on your -- is based on what?

13                   A.    It says may.  It didn't say

14         they did.  There is no basis for a may.

15         It's saying that it is -- all I'm saying

16         is that if one were to say, but how could

17         they have sold securities that they

18         didn't own, this is to say, that is the

19         course of business that one can and in

20         fact often does, or it may have, sold

21         securities it does not own.  And that is

22         perfectly legitimate, it is still a

23         full-fledged transaction of an actual

24         security.

25                   Q.    Okay.  So you mentioned naked

Page 165

1                    STANLEY FORTGANG

2    short sales before.  Did you do any

3    analysis to confirm whether BLMIS engaged

4    in naked short selling in connection with

5    the Avellino accounts?

6         A.    That would be the same answer

7    as short selling, which is there is

8    absolutely no way one could possibly know

9    that, other than BLMIS, at the time that

10   they sold the securities.

11        Q.    Okay.  But you didn't -- but

12   you didn't do any analysis to determine

13   that?

14        A.    I could have tried to do all

15   the analyses in the world, it would have

16   been a wonderful billing experience, but

17   there is nothing you could possibly find.

18   It doesn't exist.

19        Q.    When you say doesn't exist,

20   you mean it doesn't exist anywhere, not

21   in BLMIS records or anywhere?

22        A.    Again, it would be -- it might

23   be in a BLMIS record from the time, a

24   contemporaneous analysis of on this and

25   this day at this and this time when they

Page 166

1                STANLEY FORTGANG

2     sold these securities, that they sold

3     them short and naked short.  I don't even

4     know if they would have that in their

5     records that it was a naked short.  It's

6     not normally kept anywhere.  It's not

7     recorded anywhere.

8          Q.    Okay.  And so sitting here

9     today, can you point to any specific

10    transaction for the Avellinos when BLMIS

11    was acting as a market-maker and sold a

12    security to Avellino that it may not have

13    owned?

14         A.    There is, again, there is --

15    it's impossible for me or anyone else to

16    know that.  So the answer is no, I cannot

17    point to a specific transaction that they

18    may have executed short.  Because there

19    is no one in the universe who knows that,

20    except BLMIS at that time.

21         Q.    Okay.  And are you aware of

22    any specific instance where BLMIS was

23    purportedly engaged in short selling in

24    connection with the Avellino accounts?

25         A.    There is no way for me to know

Page 167

1                    STANLEY FORTGANG

2      that.  Same thing.

3           Q.    Okay.  If I could direct you

4      to the last sentence of the fifth

5      paragraph on page 7, opinion 2.  Where it

6      starts with, "It would therefore be

7      illogical to assume that at some

8      point" --

9           A.    One second.

10          Q.    I'm sorry.

11          A.    I'm trying to find where you

12     are.

13          Q.    Page 7, opinion 3.

14          A.    Yes.

15          Q.    Fifth paragraph, last

16     sentence.

17          A.    Which paragraph?

18          Q.    Fifth.  It's the last sentence

19     that starts with, "It would therefore be

20     illogical."

21          A.    Okay.  Next paragraph.  I got

22     it.

23          Q.    I'm just going to read it into

24     the record.  "It would therefore be

25     illogical to assume that, at some point

Page 168

1              STANLEY FORTGANG
2    during any trading period, short sales
3    made to Avellino were not covered by the
4    same equity coming into the books of
5    BLMIS."
6            You see that, correct,
7    Mr. Fortgang?
8        A.    Yes, I do.
9        Q.    Okay.  And so when you say
10   short sales made to Avellino, what short
11   sales are you referring to?
12       A.    Any that may exist.
13       Q.    Okay.  And so is it your
14   opinion that short sales did occur in the
15   Avellino accounts?
16       A.    I, again, cannot know that.
17   I'm not here to make assumptions and say
18   I assume that they were.  But, what I'm
19   saying is, if these were short sales,
20   that they were legitimate transactions,
21   as short sales.  If there were.  If you
22   were to say, but they didn't own these
23   securities, how could they sell them, I
24   am just saying they could have been short
25   sales.  And if so, they're still

Page 169

1               STANLEY FORTGANG

2     perfectly legitimate transactions.

3          Q.    Okay.  And have you actually

4     seen any specific instances of short

5     selling in the Avellino BLMIS accounts?

6          A.    Nobody in the universe could

7     see that.

8          Q.    Okay.  When you say nobody can

9     see that, you mean nobody except for

10    BLMIS?

11         A.    BLMIS at the time of the

12    transaction, unless they kept records,

13    which no one that I know of would keep a

14    record like that.

15         Q.    Okay.  So going back to your

16    statement, "it would therefore be

17    illogical to assume that, at some point

18    during any trading period, short sales

19    made to Avellino were not covered by the

20    same equity coming into the books of

21    BLMIS."

22              Can you explain what you mean

23    by "covered by the same equity coming

24    into the books of BLMIS"?

25         A.    This is, this is somewhat of