# EXHIBIT 63

HAILE, SHAW & PFAFFENBERGER, P.A.
660 U. S. Highway One, Third Floor
North Palm Beach, FL 33408
Tel: (561) 627-8100
Fax: (561) 622-7603
Gary A. Woodfield
*Attorneys for Defendants*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
SECURITIES INVESTOR PROTECTION
CORPORATION,

                    Plaintiff-Applicant,

       v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

               Defendant.
---------------------------------------------------------x
In re:

BERNARD L. MADOFF,

Debtor.
---------------------------------------------------------x
IRVING H. PICARD, Trustee for the Liquidation
of Bernard L. Madoff Investment Securities LLC,

              Plaintiff,

       v.

FRANK AVELLINO, et al.,

              Defendants.
---------------------------------------------------------x

Adv. Pro. No. 08-01789 (SMB)

SIPA LIQUIDATION

(Substantively Consolidated)

Adv. Pro. No. 10-05421 (SMB)

## <u>DEFENDANTS THOMAS G. AVELLINO, STRATTHAM PARTNERS, ASCENT, INC. AND S.A'S ANSWER TO AMENDED COMPLAINT AND COUNTERCLAIM</u>

    Defendants, Thomas G. Avellino ("Thomas Avellino"), Strattham Partners ("Strattham"),

Ascent, Inc. ("Ascent") and S.A., (collectively, "Defendants"), by and through their undersigned

attorneys, for their Answer, deny the allegations in the Amended Complaint of the Trustee,

Irving H. Picard (the "Complaint"), unless specifically admitted as follows:

## NATURE OF THE PROCEEDING

1.    Deny knowledge or information sufficient to form a belief.

2.    Admit that Frank Avellino ("Avellino") was a Certified Public Accountant

operated Avellino & Bienes and deny knowledge or information sufficient to form a belief as to

the remaining allegations of paragraph 2.

3.    Admit that Avellino and his wife, Nancy Carroll Avellino, own a residence in

Palm Beach, Florida, deny knowledge or information sufficient to form a belief as to the

remaining allegations of paragraph 3.

4.    Deny knowledge or information sufficient to form a belief.

5.    Denied as to Thomas Avellino; deny knowledge or information sufficient to form

a belief as to the remaining allegations of paragraph 5.

6. – 18.    Deny knowledge or information sufficient to form a belief.

19.    Denied.

20.    Denied as to Thomas Avellino; deny knowledge or information sufficient to form

a belief as to the remaining allegations of paragraph 20.

21.    Admit that Thomas Avellino exercised his Fifth Amendment rights and deny

knowledge or information sufficient to form a belief as to the remaining allegations of paragraph

21.

22.    Denied as to Thomas Avellino; deny knowledge or information sufficient to form

a belief as to the remaining allegations of paragraph 22.

23.    Deny knowledge or information sufficient to form a belief.

24.    Deny knowledge or information sufficient to form a belief.

25.    Denied.

## JURISDICTION AND VENUE

26.    Insofar as paragraph 26 sets forth legal conclusions, no response is required.

27.    Insofar as paragraph 27 sets forth legal conclusions, no response is required.

28.    Insofar as paragraph 28 sets forth legal conclusions, no response is required.

29.    Insofar as paragraph 29 sets forth legal conclusions, no response is required.

## DEFENDANTS

30.    Admit that Avellino resides in Palm Beach, Florida, was a CPA and deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 30.

31. – 53.    Deny knowledge or information sufficient to form a belief.

54.    Admit that Thomas Avellino is Avellino's son and deny the remaining allegations of paragraph 54.

55.    Denied.

56.    Admit that Thomas Avellino was a partner of Strattham, Grosvenor and Aster and deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 56.

57.    Admit.

58. – 65.    Deny knowledge or information sufficient to form a belief.

66.    Admit that Thomas Avellino was a partner of Strattham which invested with BLMIS and deny the remaining allegations of paragraph 66.

67.    Admit that KJA was a Florida partnership, that had an account with BLMIS and

deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 67.

68.     Admit that Thomas Avellino was president of Ascent, that Ascent was the managing partner of Strattham and deny the remaining allegations of paragraph 68.

69. – 75.     Deny knowledge or information sufficient to form a belief.

76.     Admit that AFF was a Florida corporation with its principal place of business in Palm Beach, Florida, that Avellino, Nancy Avellino, Thomas Avellino and Rachel Rosenthal were officers and deny the remaining allegations of paragraph 76.

77.     Admits that Rachel Rosenthal's name is Rachel Liersch, is Nancy Avellino's daughter, was an officer of AFF and denies the remaining allegations of paragraph 77.

78. – 86.     Denies knowledge or information to form a belief.

87.     Admit that S.A. is Thomas Avellino's son and Avellino's grandson, that he was the beneficiary of the trust and deny the remaining allegations of paragraph 87.

88.     Admit the existence of the trust, that Avellino was the trustee of the trust, and deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 88.

## BACKGROUND, THE TRUSTEE, AND STANDING

89. – 101.     Deny knowledge or information sufficient to form a belief.

## THE PONZI SCHEME

102.     Admit that BLMIS operated from offices at 885 Third Avenue, New York, New York and deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 102.

103. – 177.     Deny knowledge or information sufficient to form a belief.

178.    Denied as to Thomas Avellino; deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 178.

179.    Denied as to Thomas Avellino; deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 179.

180.    Denied as to Thomas Avellino; deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 180.

181.    Deny knowledge or information sufficient to form a belief.

182.    Denied as to Thomas Avellino; deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 182.

183. – 190.    Deny knowledge or information sufficient to form a belief.

191.     Denied as to Thomas Avellino and Ascent; deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 191.

192.    Deny knowledge or information sufficient to form a belief.

193.    Deny knowledge or information sufficient to form a belief.

194. – 205.    Denied.

206.    Denied as to Thomas Avellino; deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 206.

207.    Denied as to Thomas Avellino; deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 207.

### AVELLINO AND BIENES NEGOTIATED WITH MADOFF TO RECEIVE GUARANTEED RATES OF RETURN AND FRAUDULENT SIDE PAYMENTS FOR FUNDS FORMER A&B INVESTORS REINVESTED WITH BLMIS

208. – 214.    Deny knowledge or information sufficient to form a belief.

215.    Denied.

216. – 221.    Deny knowledge or information sufficient to form a belief.

222.    Denied as to Thomas Avellino; deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 222.

224.    Denied as to Thomas Avellino; deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 224.

## AVELLINO, BIENES, AND THEIR FAMILIES KNEW THEIR RECEIPT OF FRAUDULENT SIDE PAYMENTS THROUGH BLMIS' "SCHUPT" PROCESS WAS FURTHER PROOF OF FRAUD AT BLMIS

225.    Denied as to Thomas Avellino and deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 225.

226. - 232.    Deny knowledge or information sufficient to form a belief.

233.    Denied as to Strattham and deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 233.

234.    Deny knowledge or information sufficient to form a belief.

235. – 237.    Denied as to Thomas Avellino and deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraphs 235 - 237.

238. – 241.    Deny knowledge or information sufficient to form a belief.

242.    Denied as to Thomas Avellino and deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 242.

## AVELLINO, BIENES, AND THOMAS AVELLINO KNEW OF OR WERE WILLFULLY BLIND TO OTHER FACTS SUGGESTING FRAUD AT BLMIS

243.    Denied as to Thomas Avellino and deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 243.

**Avellino, Bienes, and Thomas Avellino Knew of, or Were Willfully Blind to, Impossibly Consistent Annual Rates of return Madoff promised and Delivered In the Post-1992 IA Accounts**

244. – 247.    Deny knowledge or information sufficient to form a belief.

248.    Denied as to Thomas Avellino and deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 248.

249.    Deny knowledge or information sufficient to form a belief.

250.    Denied as to Thomas Avellino and deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 250.

**Avellino, Bienes, and Thomas Avellino Knew of, or Were Willfully Blind to, Trading Impossibilities In the Post-1992 IA Accounts**

251.    Denied as to Thomas Avellino and deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 251.

**Avellino, Bienes, and Thomas Avellino Knew of, or Were Willfully Blind to, Impossible Options Trading Volume in the Post-1992 Accounts**

252. – 254.    Deny knowledge or information sufficient to form a belief.

255.    Denied as to Thomas Avellino and deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 255.

**Avellino, Bienes, and Thomas Avellino Knew of, or Were Willfully Blind to, Impossible Transactions Priced Outside the Daily Range in the Post-1992 IA Accounts**

256. – 259.    Deny knowledge or information sufficient to form a belief.

260.    Denied as to Thomas Avellino and deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 260.

261.    Deny knowledge or information sufficient to form a belief.

262.    Denied as to Thomas Avellino and deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 262.

**AS EARLY AS 1978, AVELLINO AND BIENES KNEW OF OR WERE WILLFULLY BLIND TO FACTS SUGGESTING FRAUD AT BLMIS**

263. – 291.    Deny knowledge or information sufficient to form a belief.

**AVELLINO, BIENES, AND THEIR FAMILIES ROUTINELY AND IMPROPERLY DISREGARDED THE FORM OF THE INTER-CONNECTED ENTITIES THEY CREATED SOLELY TO INVEST IN BLMIS**

292.    Denied as to Thomas Avellino and deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 292.

293.    Denied as to Thomas Avellino and deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 293.

294.    Denied as to Thomas Avellino and deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 294.

295.    Denied as to Thomas Avellino and deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 295.

296. – 297.    Deny knowledge or information sufficient to form a belief.

298.    Denied as to Thomas Avellino and deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 298.

299.    Deny knowledge or information sufficient to form a belief.

300.    Denied.

301. – 303.    Deny knowledge or information sufficient to form a belief.

304.    Denied.

305.    Deny knowledge or information sufficient to form a belief.

306.    Denied.

**AFTER REVELATION OF MADOFF'S FRAUD, BIENES LIED IN A TELEVISION INTERVIEW AND BIENES, AVELLINO, MRS. BIENES AND THOMAS AVELLINO ASSERTED THEIR FIFTH AMENDMENT RIGHTS AGAINST SELF**

08-01789-cgm   Doc 21643-9   Filed 05/23/22   Entered 05/23/22 16:23:15   Ex. 63
Pg 9 of 24

## INCRIMINATION

307. – 327.    Deny knowledge or information sufficient to form a belief.

328.    Admit that Thomas Avellino asserted his Fifth Amendment privilege and deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 328.

## IMPUTATION OF KNOWLEDGE AND LIABILITY

329.    Denied as to Thomas Avellino and deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 329.

330.    Denied as to Thomas Avellino and deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 330.

331.    Denied as to Thomas Avellino and deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 331.

332.    Denied as to Thomas Avellino and deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 332.

333. - 364.    Deny knowledge or information sufficient to form a belief.

365.    Admit that Thomas Avellino was a partner of Aster and deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 365.

366. – 389.    Deny knowledge or information sufficient to form a belief.

390.    Admit that Strattham was a general partnership and deny the remaining allegations of paragraph 390.

391.    Admit that Thomas Avellino was a general partner of Strattham and deny the remaining allegations of paragraph 391.

392.    Admit that Thomas Avellino managed the affairs of Strattham and deny the

remaining allegations of paragraph 392.

393. – 396.    Denied.

397.    Admit.

398.    Denied.

399. - 418.    Deny knowledge or information to form a belief.

419.    Denied.

420. – 453.    Deny knowledge or information to form a belief.

454.    Denied.

455.    Denied as to Thomas Avellino and deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 455.

456. - 483.    Deny knowledge or information sufficient to form a belief.

## COUNT ONE:
## FRAUDULENT TRANSFER – 11 U.S.C. §§ 105(a), 502(d), 548(a)(1)(A), 550(a) and 551

484.    Defendants incorporate their responses to the allegations contained in the previous paragraphs of the Amended Complaint as though fully set forth herein.

485. – 488.    Deny knowledge or information sufficient to form a belief.

489.    Denied.

## COUNT TWO:
## FRADULENT TRANSFER – 11 U.S.C. §§ 105(a), 548(a)(1)(B), 550(a) and 551

490.    Defendants incorporate their responses to the allegations contained in the previous paragraphs of the Amended Complaint as though fully set forth herein.

491. – 497.    Deny knowledge or information sufficient to form a belief.

498.    Denied.

## COUNT THREE:
## FRAUDULENT Transfer – NEW YORK DEBTOR AND CREDITOR LAW §§ 276, 276-a, and/or 11 U.S.C. §§ 105(a), 502(d), 544(b), 550(a) and 551

499.    Defendants incorporate their responses to the allegations contained in the previous paragraphs of the Amended Complaint as though fully set forth herein.

500. – 502.    Deny knowledge or information sufficient to form a belief.

503.    Denied as to Thomas Avellino; deny knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 503.

504.    Denied.

## COUNT FOUR:
## FRAUDULENT TRANSFER – NEW YORK DEBTOR AND CREDITO LAW §§ 273, 278 AND/OR 279, AND 11 U.S.C. §§ 105(a), 502(d), 544(b), 550(a) AND 551

505.    Defendants incorporate their responses to the allegations contained in the previous paragraphs of the Amended Complaint as though fully set forth herein.

506. – 509.    Deny knowledge or information sufficient to form a belief.

510.    Denied.

## COUNT FIVE:
## FRAUDULENT TRANSFER – NEW YORK DEBTOR AND CREDITOR LAW §§ 274, 278 AND/OR 279 AND U.S.C. §§ 105(a), 502(d), 544(b), 550(a) AND 551

511.    Defendants incorporate their responses to the allegations contained in the previous paragraphs of the Amended Complaint as though fully set forth herein.

512. – 515.    Deny knowledge or information sufficient to form a belief.

516.    Denied.

## COUNT SIX:
## FRADULENT TRANSFER – NEW YORK DEBTOR AND CREDITOR LAW §§ 275, 278, AND/OR 11 U.S.C. §§ 105(a), 502(d), 544(b), 550(a) and 551

517.    Defendants incorporate their responses to the allegations contained in the previous

paragraphs of the Amended Complaint as though fully set forth herein.

518. – 521.    Deny knowledge or information sufficient to form a belief.

522.    Denied.

**COUNT SEVEN**
**RECOVERY OF ALL FRADULENT TRANSFERS – NEW YORK CIVIL PRACTICE**
**LAW AND RULES 203(g)AND 213(8), NEW YORK DEBTOR AND CREDITOR LAW §§**
**276, 276-a, AND/OR 279 AND 11 U.S.C. §§ 105(a), 502(d), 544(b), 550(a) AND 551**

523.    Defendants incorporate their responses to the allegations contained in the previous

paragraphs of the Amended Complaint as though fully set forth herein.

524. – 527.    Deny knowledge or information sufficient to form a belief.

528.    Denied as to Thomas Avellino; deny knowledge or information sufficient to form

a belief as to the remaining allegations of paragraph 528.

529.    Denied.

**COUNT EIGHT:**
**PREFERENTIAL TRANSFERS – 11 U.S.C. §§ 105(a), 502(d), 547(b), 550 AND 551**

530.    Defendants incorporate their responses to the allegations contained in the previous

paragraphs of the Amended Complaint as though fully set forth herein.

531. – 539.    Deny knowledge or information sufficient to form a belief.

540.    Denied.

**COUNT NINE:**
**RECOVERY OF SUBSEQUENT TRANSFERS – NEW YORK DEBTOR AND**
**CREDITOR LAW §§ 276-a AND 278, 11 U.S.C. §§ 105(a)**
**AND 550(a) AND SIPA § 78fff-2(c)(3)**

541.    Defendants incorporate their responses to the allegations contained in the previous

paragraphs of the Amended Complaint as though fully set forth herein.

542. – 545.    Deny knowledge or information sufficient to form a belief.

546.    Denied as to Defendants; deny knowledge or information sufficient to form a

belief as to the remaining allegations of paragraph 546.

547.    Denied.

## COUNT TEN:
## OBJECTION TO AND DISALLOWANCE OF CUSTOMER CLAIMS

548.    Defendants incorporate their responses to the allegations contained in the previous

paragraphs of the Amended Complaint as though fully set forth herein.

549. – 553.    Denied.

## COUNT ELEVEN:
## EQUITABLE DISALLOWANCE OF CLAIMS

554.    Defendants incorporate their responses to the allegations contained in the previous

paragraphs of the Amended Complaint as though fully set forth herein.

555. – 559.    Denied.

## COUNT TWELVE:
## EQUITABLE SUBORDINATION OF CUSTOMER CLAIMS

560.    Defendants incorporate their responses to the allegations contained in the previous

paragraphs of the Amended Complaint as though fully set forth herein.

561. – 563.    Denied.

564.    Denies knowledge or information sufficient to form a belief.

565.    Denied.

566.    Denied.

## COUNT THIRTEEN:
## GENERAL PARTNER LIABILITY

567.    Defendants incorporate their responses to the allegations contained in the previous

paragraphs of the Amended Complaint as though fully set forth herein.

568.    Deny knowledge or information sufficient to form a belief.

08-01789-cgm    Doc 21643-9    Filed 05/23/22    Entered 05/23/22 16:23:15    Ex. 63
Pg 15 of 24

569.    Denied.

570.    Denied.

## AFFIRMATIVE DEFENSES

## FIRST DEFENSE

The Complaint failed to state any claim upon which relief can be granted.

## SECOND DEFENSE

Plaintiff's claims should all be dismissed on the grounds that defendant justifiably relied on the activities of governmental and regulatory bodies, such as the Securities and Exchange Commission and the Securities Investor Protection Corporation, to monitor and oversee the activities of BLMIS.

## THIRD DEFENSE

Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

## FOURTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because defendant took every transfer from BLMIS for value and in good faith and defendants gave value to the debtor in exchange for such transfer (Section 548 (c) of the Bankruptcy Code).

## FIFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because defendant acted in good faith and without fraudulent intent.

## SIXTH DEFENSE

Plaintiff's claims are barred, in whole or in part, under Section 546(e) of the Bankruptcy Code, and defendant is subject to the "safe harbor" set forth in Section 546(e) of the Bankruptcy Code, and any amounts received by defendant from BLMIS are settlement payments exempt

08-01789-cgm  Doc 21643-9  Filed 05/23/22  Entered 05/23/22 16:20:15  Ex. 63
Pg 16 of 25

from avoidance under Section 546(e) of the Bankruptcy Code.

## SEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because the holding in *Picard v. Katz,* No. 11 Civ. 3605(JSR) (S.D.N.Y. Sept. 27, 2001), limits the claims for fraudulent transfers except claims for actual fraud under § 548 (a)(1)(A) of the Bankruptcy Code.

## EIGHTH DEFENSE

Plaintiff's claims are barred by the doctrine of *in pari delicto* and/or the *Wagoner rule* because, among other things, the acts of its predecessors, agents, and representatives (including Madoff and BLMIS) are imputed on the Madoff Trustee.

## NINTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because any transfers or payments alleged by plaintiff to have been made to defendant were on account of a debt or debts incurred by BLMIS in the ordinary course of business or financial affairs of BLMIS and defendant and were made according to ordinary business terms, within the meaning of 11 U.S.C. § 547(c)(2).

## TENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, pursuant to 11 U.S.C. § 547(c)(4).

## ELEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent defendant took for new value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer, within the meaning of 11 U.S.C. § 550(b)(1).

## TWELFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the single satisfaction rule set forth in

Section 550(d) of the Bankruptcy Code.

### THIRTEENTH DEFENSE

Plaintiff's claims are barred by 548(d)(2)(A) and 548(d)(2)(B) of the Bankruptcy Code.

### FOURTEENTH DEFENSE

Plaintiff's claims are not ripe, because he has failed to demonstrate that the conditions of 15 U.S. § 78fff-2(c)(3) have been met.

### FIFTEENTH DEFENSE

Plaintiff's claims are barred by the doctrine of collateral estoppel.

### SIXTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because each transfer to the defendant was made for value and fair consideration.

### SEVENTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because each transfer to the defendant was a transfer on account of an antecedent debt.

### EIGHTEENTH DEFENSE

Plaintiff lacks standing to bring any claims against the defendant.

### NINETEENTH DEFENSE

Plaintiff has failed to adequately plead with particularity the transfers plaintiff seeks to avoid.

### TWENTIETH DEFENSE

The distributions alleged by plaintiff may not be avoided or recovered because such alleged distributions do not involve property of the estate. The alleged transfers and any amounts defendant received from BLMIS are not property of the estate as, *inter alia,* such

amounts were held by BLMIS in constructive trust or as a bailee for defendant, and/or BLMIS never had a legal interest in the transferred funds.

## TWENTY-FIRST DEFENSE

Plaintiff's claims are barred, in whole or in part, because the debtor did not receive less than reasonably equivalent value in exchange for any transfer to the defendant.

## TWENTY-SECOND DEFENSE

Plaintiff's claims are barred by the doctrines of laches, waiver, estoppel, and/or acquiescence.

## TWENTY-THIRD DEFENSE

Plaintiff's claims are barred by the misconduct of BLMIS as well as by the misconduct of BLMIS and the Trustee as described in the Counterclaim asserted below, the allegations of which are incorporated as if set forth in full herein, and the Trustee's claims must be reduced, in part or in whole, through the doctrines of set-off and/or recoupment.

## TWENTY-FOURTH DEFENSE

Plaintiff's claims are barred to the extent that they arise from or relate to contractual provisions, transactions, or conduct that is illegal, unlawful, void and/or unenforceable.

## TWENTY-FIFTH DEFENSE

Plaintiff's claims are barred by the doctrine of unclean hands.

## TWENTY-SIXTH DEFENSE

Plaintiff's claims are barred because defendant did not participate in any wrongful conduct, and it is inequitable to proceed against defendant unless and until the plaintiff has exhausted his remedies against other parties that engaged in wrongful conduct in respect to BLMIS.

WHEREFORE, the defendant respectfully requests judgment dismissing with prejudice plaintiff's amended complaint in its entirety together with costs.

## COUNTERCLAIM

CounterPlaintiff, Strattham Partners, files this Counterclaim against Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC (the "Trustee") and allege:

## GENERAL ALLEGATIONS

1.     This is an action pursuant to the Securities Investor Protections Act of 1970, 15 U.S.C. 78aaa ("SIPA").

2.     The court has jurisdiction over this counterclaim pursuant to 15 U.S.C. 78eee, pursuant to the protective decree issued by the district court against the debtor, Bernard L. Madoff Securities Investments, LLC ("BLMIS"), by the referral of this action to this court pursuant to 15 U.S.C. 78eee(b)(4), and by virtue of the fact that all of the claims being asserted herein are brought pursuant to SIPA.

3.     CounterPlaintiff was a customer of BLMIS, as defined by SIPA.  The Trustee has wrongfully failed to discharge his duties to CounterPlaintiff by failing to honor its claim and pay it sums due, including but not limited to its net equity and cash.

4.     CounterPlaintiff has complied with all conditions to bringing this action or they have been waived.

## Count I

5.     This is an action brought to enforce CounterPlaintiff's rights, under SIPA and SIPC Rule 502 (17 C.F.R. §300.502), relating to securities purchased by BLMIS for their accounts.

6.      CounterPlaintiff incorporates the preceding paragraphs as if set forth fully herein.

7.      The purpose of a SIPA proceeding is to distribute customer property to the extent of net equities as promptly as possible and to discharge all customer claims for cash or securities.

8.      CounterPlaintiff has a claim for securities under SIPA and thus a claim for net equity as to the value of the securities held for its account, as reflected on its last account statement prior to the filing date of the SIPA proceeding.

9.      CounterPlaintiff is not indebted to BLMIS.

10.     The Securities Investment Protection Corporation ("SIPC") has issued rules to determine when a customer has a claim for securities pursuant to the rulemaking authority conferred on SIPC by SIPA.  The "Series 500 Rule" provides, in Rule 502, that a customer has a claim for securities when the debtor held cash in an account for a customer, the debtor has made a purchase authorized by the customer and the debtor has sent a written trade confirmation to the customer that the security has been purchased for the customer's account; or if a written trade confirmation has not been sent, the securities in question have become the subject of a completed or executory contract for purchase for the account.  CounterPlaintiff's agreement with BLMIS granted BLMIS discretionary trading authority, i.e. BLMIS could execute trades in its discretion and was not required to obtain authority from the CounterPlaintiff prior to doing so. Therefore, all securities purchased by BLMIS for the account of the CounterPlaintiff were authorized.

11.     The CounterPlaintiff has either: 1) written trade confirmations for each and every security purchased as reflected on its last account statement issued by BLMIS prior to the filing date of the SIPA proceeding; or 2) as to any security for which a trade confirmation was not received as of the filing date of the SIPA proceeding, the purchase of those securities, were the subject of a completed or executory contract for the purchase of those securities.

12.     The Trustee has failed to credit the CounterPlaintiff for the value of these securities in calculating net equity, in violation of SIPA.  The Trustee has purported to determine that CounterPlaintiff does not have any net equity in their accounts, and his Amended Complaint even seeks to invalidate the net equity claims of the Defendants, KJA, Strattham, and Mayfair Booking under Counts Ten, Eleven and Twelve.

13.     The date for determining net equity is the filing date of the SIPA proceeding against BLMIS.

14.     The Trustee's method of calculating net equity does not comply with SIPA as the Trustee has failed to include all of the CounterPlaintiff's securities which were purchased for the account of the CounterPlaintiff.

15.     The Trustee has violated SIPA by failing to discharge its obligation to the CounterPlaintiff for its net equity based on the securities purchased for their accounts.  The Trustee has made inaccurate, false and misleading factual statements about the business of BLMIS in order to avoid paying the CounterPlaintiff's net equity due to them under SIPA.

16.     By way of example and not limitation, the Trustee has alleged that BLMIS was in all respects a Ponzi scheme and that at no time did it engage in the sale of securities.  The facts are to the contrary.  BLMIS was composed of three separate divisions: 1) an investment advisory business; 2) a proprietary trading business; and 3) a market making business.  It was a single company.  In connection with each of these divisions, BLMIS did in fact trade securities, in large volumes.  BLMIS was a registered market maker with the NASDAQ and a Designated Dealer on the National Stock Exchange.  Market makers act to create liquidity in the securities markets by having on hand shares of stock as necessary to effect the execution of both the sale and purchase of securities between buyers and sellers.  By holding this inventory, the market maker can

quickly and cheaply effectuate a trade, and thus bring down the time and price of such trade and maintain liquidity in the securities markets.  By holding a large inventory of shares, the market maker can make money by effectuating a high volume of trades.  This is what BLMIS did.

17.     In addition, acting as the CounterPlaintiff's investment advisor, BLMIS purchased and sold securities for the account of the CounterPlaintiff pursuant to the discretionary trading authority granted to BLMIS.  BLMIS also purchased and sold securities for its own account, i.e. its proprietary trading business.

18.     The fact that BLMIS was actually engaged in securities trading is evidenced by an examination of 606 Reports.  Pursuant to the Securities Exchange Commission's Rule 606 (17 C.F.R.§242.606), all broker dealers are required to make public, on a quarterly basis, a report of the routing of all of its non-directed orders for execution of the trade, for the major national securities markets.

19.     By way of example, the 606 Report for the quarter ending on September 30, 2008, for the broker dealer NYLIFE SECURITIES, LLC, reflects that it routed through BLMIS 9.94% of its non-directed orders on the NYSE, 4.03% of its non-directed orders on the NASDAQ, and 14.88% of non-directed orders on the American Stock Exchange.  This is just one report of a single broker dealer, for a single quarter, and, when considered in light of the volume of securities traded on the major securities markets, it evidences the fact that BLMIS performed a voluminous amount of actual securities trading.

20.     BLMIS' market making division was the routing source of hundreds of millions of shares for execution of non-directed orders.  BLMIS received a fee for routing and executing these orders. It was not a Ponzi scheme to that extent.

21.     The Trustee has contended based on its erroneous conclusion that BLMIS did not

engage in trading securities that it cannot rely on the books and records of BLMIS in determining net equity. Rather, the Trustee has insisted on using an overly simplistic method of calculating net equity. The Trustee has used a "cash in, cash out" basis of determining net equity, i.e. the Trustee merely calculated the money a customer deposited into BLMIS and the money transferred by BLMIS to a customer to determine "net winners" and "net losers". Any person who is considered a net winner under this method has no net equity according to the Trustee. The Trustee has sought to clawback from the CounterPlaintiff who was a net winner under his theory any amount of their so called "winnings". This method does not comport with the definition of net equity in SIPA. The Trustee did not engage in a thorough and complete reconciliation of the books and records of BLMIS, contrary to its duties under SIPA.

22. The Trustee's decision to use the "cash in, cash out" basis in calculating net equity is not in accordance with the letter or intent of the statutory requirements of SIPA. Pursuant to the provisions of Section 78fff-2, the Trustee's duty is to investigate the business of the debtor, establish a procedure for determining the net equity claims of customers and promptly make distributions. Instead, the Trustee has thrown up his hands, and refused to engage in a through and meaningful review of the books and records of BLMIS which would have led to a conclusion that securities were actually traded by BLMIS and that the CounterPlaintiff is entitled to receive their net equity based on the securities held for its account.

23. Upon information and belief, the books and records of BLMIS would reflect, upon a proper reconciliation, that BLMIS did in fact engage in securities trading, that it traded securities for the account of the CounterPlaintiff, that the last account statement of the CounterPlaintiff is true and correct reflections of the securities owned by the CounterPlaintiff, and that net equity must be paid to the CounterPlaintiff by the Trustee promptly.

08-01789-cgm   Doc 21643-9   Filed 05/23/22   Entered 05/23/22 16:23:15   Ex. 63   Pg 23 of 24

WHEREFORE, the CounterPlaintiff respectfully requests this court to enter judgment in favor of the CounterPlaintiff against the Trustee and BLMIS for the amount of the CounterPlaintiff's net equity as properly determined, together with the costs incurred in maintaining this action, and for the immediate payment of same, together with such other relief as is appropriate.  To the extent necessary to pay the sums due, the Trustee should demand the $500,000.00 required to be advanced to CounterPlaintiff by SIPC pursuant to 15 USC 78fff-3(a), and should remit all sums received by SIPC immediately to CounterPlaintiff.  Furthermore, to the extent they are not paid in full the amount of their net equity, CounterPlaintiff should be considered unsecured creditor and paid from the general estate of BLMIS.

### Count II

24.     This is an action to enforce CounterPlaintiff's entitlement to "cash" as provided in Rule 501 of the Series 500 Rules.

25.     CounterPlaintiff realleges paragraphs 1 through 4 and 7 through 23 as if set forth fully herein.

26.     Rule 501 of the Series 500 Rules provides that when a debtor held securities in an account for a customer, the customer has a claim for cash with respect to any authorized sale of a security and the debtor has sent a written trade confirmation of such sale, or if no confirmation has been sent, when the securities in question have become the subject of a completed or executory contract for sale of said securities for the customer's account.

27.     As with the purchase of securities, as to all sales of securities by BLMIS on behalf of the CounterPlaintiff, the CounterPlaintiff either: 1) received a written trade confirmations for each and every security sold for their account as reflected on their last account statement issued by BLMIS prior to the filing date of the SIPA proceeding; or 2) as to any security for which a

trade confirmation was not received as of the commencement of this proceeding, the sale of those securities were the subject of a completed or executory contract for the purchase of those securities on the filing.

28.      A cash claim is not part of net equity, and is required to be paid in addition to net equity.

29.      Any amount of cash shown on the last account statements of the CounterPlaintiff must be paid to them under SIPA.

30.      The Trustee has failed to fully credit the cash due to CounterPlaintiff, or to pay them any cash.

WHEREFORE, the CounterPlaintiff respectfully requests this court to enter judgment in favor of the CounterPlaintiff against the Trustee and BLMIS for the amount of the CounterPlaintiff's cash as properly determined, and for the immediate payment of same, together with the costs incurred in maintaining this action and such other relief as is appropriate.  To the extent necessary to pay the sums due, the Trustee should demand the $250,000.00 to be advanced to the CounterPlaintiff by SIPC pursuant to 15 USC 78fff-3(a), and should remit all sums received by SIPC immediately to CounterPlaintiff.  Furthermore, to the extent they are not paid in full the amount of their Cash, CounterPlaintiff should be considered unsecured creditor and paid from the general estate of BLMIS.

Date: November 2, 2016.

/s/ Gary A. Woodfield
Gary A. Woodfield
*Attorneys for Defendants*
HAILE, SHAW & PFAFFENBERGER, P.A.
660 U.S. Highway One, Third Floor
North Palm Beach, FL 33408
Phone: (561) 627-8100
Fax: (561) 622-7603
Email:  gwoodfield@haileshaw.com