# ATTACHMENT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br>　　　　　　Plaintiff-Applicant,<br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br>　　　　　　Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br>BERNARD L. MADOFF,<br>　　　　　　Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>　　　　　　Plaintiff,<br>v.<br><br>DORON TAVLIN TRUST U/A 2/4/91, and DORON A. TAVLIN, as Trustee and Beneficiary of the Doron Tavlin Trust U/A 2/4/91,<br><br>　　　　　　Defendants. | Adv. Pro. No. 10-05312 (SMB) |

**EXPERT REPORT OF**
**LISA M. COLLURA, CPA, CFE, CFF**

**Proof of Transfers**
**To the Tavlin Defendants**

**July 1, 2019**

## TABLE OF CONTENTS

I. PROFESSIONAL BACKGROUND ........................................................................................... 2

II. SCOPE OF ASSIGNMENT ....................................................................................................... 2

III. METHODOLOGY .................................................................................................................... 4

IV. SUMMARY OF FINDINGS ..................................................................................................... 5

V. RECONCILIATION OF CASH TRANSACTIONS FOR THE TAVLIN ACCOUNT ............ 6
    A. OVERVIEW — 6
    B. BLMIS BANK ACCOUNTS — 6
    C. BLMIS CUSTOMER FILES — 7
    D. DOCUMENTS PRODUCED TO THE TRUSTEE RELATED TO THE TAVLIN ACCOUNT — 8
    E. RESULTS OF RECONCILIATION — 8

VI. TRACING CASH WITHDRAWALS FROM THE TAVLIN ACCOUNT ............................. 9
    A. OVERVIEW — 9
    B. RESULTS OF TRACING — 9

VII. SIGNATURE AND RIGHT TO MODIFY ............................................................................ 10

VIII. LIST OF EXHIBITS .............................................................................................................. 11

# I. PROFESSIONAL BACKGROUND

1.      I am a Senior Managing Director in the Forensic and Litigation Consulting practice of FTI Consulting, Inc. ("FTI"), with 25 years of experience in accounting, auditing and litigation consulting services. I specialize in providing forensic accounting and financial fraud investigative services in connection with internal investigations on behalf of trustees, boards of directors and audit committees of companies.

2.      I have extensive experience in conducting large-scale, fact-finding investigations into fraudulent financial transactions, including tracing significant flows of funds between accounts and entities. During my career at FTI, I have assisted in the investigation of several of the largest fraud cases in the United States.

3.      I am a Certified Public Accountant (CPA), a Certified Fraud Examiner (CFE), a member of the American Institute of Certified Public Accountants (AICPA), and am Certified in Financial Forensics (CFF) by the AICPA. My curriculum vitae, attached as **Exhibit 1** to this report, further describes my professional credentials, experience, and qualifications, including my testimony in the last four years.

# II. SCOPE OF ASSIGNMENT

4.      Bernard L. Madoff Investment Securities LLC ("BLMIS") was an investment firm owned and operated by Bernard L. Madoff ("Madoff"). On December 11, 2008, Madoff was arrested for violating multiple securities laws in connection with running a Ponzi scheme through the investment advisory business of BLMIS (the "IA Business"). On December 15, 2008, Irving H. Picard was appointed as the Trustee for the liquidation of the business of BLMIS, and Baker & Hostetler LLP was retained as his counsel. Shortly thereafter, FTI was retained by Baker & Hostetler LLP, on behalf of the Trustee, to analyze, among other things, the financial affairs of BLMIS and to assist the Trustee with the liquidation of BLMIS. As part of our engagement, FTI was tasked with the exercise of reconstructing the books and records of

BLMIS, including all records of the cash transactions related to the BLMIS IA Business customer accounts as far back as the records allow.

5.  This report should be read in conjunction with my Expert Report regarding the Reconciliation of Cash Transactions for All BLMIS Customers and Analysis of IA Business Cash Activity dated January 16, 2019 (the "Collura January 2019 Report").[1]

6.  For this report, I was specifically tasked with performing forensic analyses to determine the following:

- Whether the cash transactions reflected on the customer statements for the Tavlin Defendants'[2] customer account at BLMIS that is at issue in this matter (the "Tavlin Account"[3]) reconciled to available documentation; and
- Whether, based on my review of available bank records, the cash withdrawals (*i.e.*, transfers from BLMIS) reflected on the customer statements for the Tavlin Account during the period between and including December 11, 2006 and December 11, 2008 (the "Two Year Period") could be traced to bank accounts held by, or for the benefit of, the Tavlin Defendants.

7.  For purposes of this report, I use the term "reconciled" to indicate when I have matched, agreed and/or determined consistency between cash transactions reflected on BLMIS customer statements to information or data per another source (*e.g.*, amounts on BLMIS bank records, correspondence between the customer and BLMIS regarding requests for withdrawals, or documents produced to the Trustee related to the Tavlin Account). For purposes of this report, I use the term "traced" to indicate when I have followed the flow of funds from one

---

[1] My findings and conclusions rendered in the Collura January 2019 Report, along with the accompanying Exhibits to that report are all incorporated by reference herein. All capitalized terms that are defined in the Collura January 2019 Report shall have the same meaning in this report.

[2] The defendants in this matter are Doron Tavlin Trust U/A 2/4/91 (the "Tavlin Trust Defendant") and Doron A. Tavlin (collectively, the "Tavlin Defendants").

[3] The Tavlin Defendants maintained BLMIS customer account 1T0004 under the name "DORON TAVLIN TRUST DORON A TAVLIN AND HARVEY KRAUSS ESQ TRUSTEES" (prior to August 2004, the name on this account was "DORON TAVLIN TRUST IRWIN LIPKIN TRUSTEE" – *see* AMF00224350).

3

bank account (*e.g.*, BLMIS's bank account) to another bank account (*e.g.*, the Tavlin Defendants' bank account).

8. This report has been prepared in connection with the above-captioned litigation and is to be used only for the specific purposes of this lawsuit. It is not to be used for any other purpose without the express written consent of FTI. If called upon to testify in this matter, I intend to provide testimony regarding my analyses and conclusions consistent with this report.

9. FTI is being compensated at a rate of $670 per hour for my professional time incurred in performing the work necessary to prepare this report. FTI's fees are not contingent on the conclusions reached in this report or the outcome of the above-captioned litigation.

**III. METHODOLOGY**

10. To determine whether the cash transactions reflected on the customer statements for the Tavlin Account reconciled to available documentation, I used the results of the forensic analysis of the available BLMIS bank records as described in the Collura January 2019 Report. In addition, I reviewed and analyzed other documents and records maintained at BLMIS, including documents contained in BLMIS customer files, as well as documents produced to the Trustee related to the Tavlin Account. Based on my review and analysis of these materials, I identified the cash transactions related to the Tavlin Account that reconciled to these documents.

11. Next, to determine whether the cash withdrawals reflected on the customer statements for the Tavlin Account during the Two Year Period could be traced to bank accounts held by, or for the benefit of, the Tavlin Defendants, I again used the available information from BLMIS bank records. In addition, I reviewed records received by the Trustee from a third-party financial institution, Sterling National Bank. Using these available bank records, I identified the recipients of the transfers from BLMIS.

12. The documents and data that I considered in connection with this report are listed in **Exhibit 2**. I reserve the right to supplement my report based on any additional documents or information received.

4

## IV. SUMMARY OF FINDINGS

13.     Based on the forensic analyses performed, as described above and throughout this report, as well as my skills, knowledge, experience, education and training that I applied to the documents and information available to me as of the date of this report, my findings are summarized as follows:

- For my reconciliation analysis, I analyzed the cash transactions in the Tavlin Account from March 1991 to December 2008. During this time period, the customer statements for the Tavlin Account reflected 35 cash transactions, which consisted solely of cash withdrawal transactions. I reconciled 26 of these transactions reflected on the customer statements for the Tavlin Account, including all of the cash transactions in the 10 Year Period, to available BLMIS bank records, documentation contained in BLMIS customer files, and/or documents produced to the Trustee by the Tavlin Defendants. I was unable to complete my reconciliation for the remaining cash transactions reflected on the customer statements for the Tavlin Account due to the unavailability of records related to transactions dated between July 1992 and March 1994. However, based on my review of documents contained in the customer file maintained at BLMIS for the Tavlin Account, I have not found any instance of the Tavlin Defendants communicating to BLMIS any disagreement with respect to the accuracy of any cash transaction reflected on the customer statements for the Tavlin Account.

- For my tracing analysis, I analyzed the one cash withdrawal from the Tavlin Account during the Two Year Period for $489,272. Based on available bank records from BLMIS and records received by the Trustee from a third-party financial institution, Sterling National Bank, I traced the cash withdrawal from the Tavlin Account during the Two Year Period to a law firm's escrow account for taxes paid on behalf of the Tavlin Trust Defendant.

5

**V. RECONCILIATION OF CASH TRANSACTIONS FOR THE TAVLIN ACCOUNT**

*A. OVERVIEW*

14.     The chronological listings of all cash and principal transactions for every BLMIS customer account compiled by FTI, as described in the Principal Balance Calculation Report, included the cash transactions for the Tavlin Account. From March 1991 to December 2008, the customer statements for the Tavlin Account reflected 35 cash transactions, which consisted solely of cash withdrawal transactions totaling $2,435,967.[4] I was tasked with reconciling these 35 cash transactions to available BLMIS bank records, documents contained in BLMIS customer files, and/or documents produced to the Trustee related to the Tavlin Account. *See* **Exhibit 3** for a list of these cash withdrawal transactions; *see also* **Exhibit 6** – "Reconciliation and Tracing Results – Tavlin Account."

*B. BLMIS BANK ACCOUNTS*

15.     Of the 35 cash transactions reflected on the customer statements for the Tavlin Account, 14 occurred in the ten-year period for which there were available bank records for the three BLMIS bank accounts described in the Collura January 2019 Report. I reconciled all 14 cash transactions reflected on the customer statements for the Tavlin Account during the period December 1998 to December 2008 (the 10 Year Period, as defined in the Collura January 2019 Report) to available BLMIS bank records, including copies of cancelled checks. The 14 cash transactions were cash withdrawals via check and were reconciled to the 509 Account.

16.     Based on the results of my reconciliation of the cash transactions in the Tavlin Account to available BLMIS bank records, as well as the results of my Global Reconciliation as further described in the Collura January 2019 Report, I can reasonably infer that if BLMIS bank

---

[4] One cash withdrawal transaction reflected on the customer statements for the Tavlin Account was subsequently cancelled and therefore is excluded from the count of total cash transactions.

6

records prior to December 1998 were available to me, I would be able to reconcile the pre-December 1998 cash transactions in the Tavlin Account.

C. *BLMIS CUSTOMER FILES*

17. In addition to reconciling the cash withdrawal transactions for the Tavlin Account to the available BLMIS bank records as described above, I also reviewed customer files from BLMIS's records to identify correspondence related to the cash transactions reflected on the customer statements for the Tavlin Account.

18. Customer files related to customer accounts were maintained in BLMIS's records and were generally organized by BLMIS account number. These customer files contained documents including, but not limited to, correspondence between the customer and BLMIS employees regarding incoming deposits and/or requests for withdrawals, customer contact information, BLMIS customer agreements, as well as trust and other agreements.

19. As part of my analysis, I identified the customer file for the Tavlin Account within BLMIS's records. I reviewed the documents contained in this customer file to identify correspondence that related to the cash transactions reflected on the customer statements for the Tavlin Account.[5] I identified letters and/or other correspondence in this customer file that support 25 of the 35 cash transactions in the Tavlin Account. One of these letters, which is a request for a cash withdrawal from the Tavlin Account, is attached as **Exhibit 4** and is described further below:

- In a letter dated January 16, 2007, Harvey Krauss requests on behalf of the Tavlin Trust Defendant, "Per your procedures, please send me a check in the amount of $489,272 from Ron's Trust A/C to the order of my law firm's escrow A/C."

---

[5] In addition, as part of my analysis, I also reviewed the customer files related to BLMIS customer accounts 1T0007 under the name "RYAN TAVLIN TRUST," and 1T0036 under the name "RYAN TAVLIN TRUST UA 10/31/96 DORON A TAVLIN AND HARVEY KRAUSS ESQ TRUSTEES."

7

20.     Furthermore, based on my review of the documents contained in the customer file for the Tavlin Account, I have not found any instance of the Tavlin Defendants communicating to BLMIS any disagreement with respect to the accuracy of any cash transaction reflected on the customer statements for the Tavlin Account.

D.  *DOCUMENTS PRODUCED TO THE TRUSTEE RELATED TO THE TAVLIN ACCOUNT*

21.     As of the date of this report, the Trustee has received documents related to the Tavlin Account consisting of, among other things, correspondence related to the cash transactions in the Tavlin Account. I reconciled 10 of the 35 cash transactions reflected on the customer statements for the Tavlin Account to these documents produced to the Trustee.

E.  *RESULTS OF RECONCILIATION*

22.     In total, based on my analyses described above, I reconciled 26 of the 35 cash transactions reflected on the customer statements for the Tavlin Account, including all of the cash transactions in the 10 Year Period, to available BLMIS bank records, documentation contained in BLMIS customer files, and/or documents produced to the Trustee by the Tavlin Defendants. **Exhibit 3**, which lists each of the 35 cash transactions for the Tavlin Account, contains three columns that indicate the results of my reconciliation to each of these sources of information.

23.     I was unable to complete my reconciliation for the remaining cash transactions reflected on the customer statements for the Tavlin Account due to the unavailability of records related to transactions dated between July 1992 and March 1994. However, as noted above, I have not found any instance of the Tavlin Defendants communicating to BLMIS any disagreement with respect to the accuracy of any cash transaction reflected on the customer statements for the Tavlin Account.

## VI. TRACING CASH WITHDRAWALS FROM THE TAVLIN ACCOUNT

### A. OVERVIEW

24. The available BLMIS bank records, as described in the Collura January 2019 Report, were also used to determine whether I could trace the funds that left BLMIS's bank accounts to bank accounts held by, or for the benefit of, the Tavlin Defendants. To determine this, I performed a "Receiving Bank" analysis, which traces transfers from BLMIS's bank accounts to bank accounts that received funds from BLMIS.

25. During the Two Year Period, the customer statements for the Tavlin Account reflected one cash withdrawal transaction for $489,272. This cash withdrawal transaction was in the form of a check written from the 509 Account.

26. Tracing withdrawals via check requires a legible copy of a cancelled check. The necessary information to trace the amount to a receiving bank account, including endorser, banking institution and bank account number, is typically included on the back of a cancelled check. Oftentimes, however, not all of this information was available on the copy of the cancelled check written from the 509 Account and/or the available information was often illegible. In any event, when possible, I identified and captured all available and legible information from the cancelled check written from the 509 Account related to the withdrawal from the Tavlin Account.

27. In addition, to trace the cash withdrawal from BLMIS, I also reviewed documents produced to the Trustee by Sterling National Bank.

### B. RESULTS OF TRACING

28. **Exhibit 5** summarizes the results of my Receiving Bank analysis and my review of bank records produced to the Trustee by Sterling National Bank.[6] This exhibit lists the bank

---

[6] *See also* **Exhibit 6**.

9

account I identified by tracing the cash withdrawal from BLMIS during the Two Year Period and supports that the $489,272 cash withdrawal from the Tavlin Account during the Two Year Period went to an escrow account held by the law firm of Snow Becker Krauss, P.C. for taxes owed by the Tavlin Trust Defendant.[7]

29.     In addition, based on my review and analysis of the bank records described above, I identified a transfer from the escrow account held by the law firm of Snow Becker Krauss, P.C. in the form of a check for the same amount of the cash withdrawal from BLMIS, ($489,272) that was made payable to the United States Treasury and referenced "Doron A Tavlin Trust."[8]

## VII. SIGNATURE AND RIGHT TO MODIFY

30.     This report and the exhibits contained herein present my findings and the bases thereof.  To the extent that any additional information is produced by any party, I reserve the right to incorporate such additional information into my report or to modify my report as necessary.

By:

*Lisa M. Collura*

Lisa M. Collura, CPA, CFE, CFF
July 1, 2019

---

[7] See also **Exhibit 4**.
[8] See **Exhibit 6**.

## VIII. LIST OF EXHIBITS

Exhibit 1:  Curriculum Vitae
Exhibit 2:  Documents Considered
Exhibit 3:  List of All Cash Transactions in the Tavlin Account
Exhibit 4:  Letter from BLMIS Customer File for the Tavlin Account
Exhibit 5:  Results of Tracing Analysis – Tavlin Account (*During the Two Year Period*)
Exhibit 6:  Reconciliation and Tracing Results – Tavlin Account