KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022
(212) 940-8800
*Attorneys for Defendant*

Hearing Date: TBD
Opposition Date: April 15, 2022
Reply Date: May 16, 2022

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br>        Plaintiff-Applicant, <br> v. <br> BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, <br>        Defendant. | **Adv. Pro. No. 08-01789 (CGM)** <br><br> **SIPA Liquidation** <br> **(Substantively Consolidated)** |
| In re: <br><br> BERNARD L. MADOFF, <br><br>        Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br>        Plaintiff, <br><br> v. <br><br> LLOYDS TSB BANK PLC, <br><br>        Defendant. | **Adv. Pro. No. 12-01207 (CGM)** |

**MEMORANDUM OF LAW IN SUPPORT OF LLOYDS BANK PLC'S**
**MOTION TO DISMISS THE TRUSTEE'S COMPLAINT**

# <u>TABLE OF CONTENTS</u>

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ..........................................................................................................................4

POINT I The Trustee Does Not Adequately Plead the Avoidability of The Fairfield Initial Transfers BECAUSE Adopting the Entire Fairfield Amended Complaint by Reference Is Improper ................................................................................................................................4

POINT II The Trustee's Claim Is Barred By 11 U.S.C. § 546(e)...............................................10

    a.      The Alleged Initial Transfer Was Made by or to a Covered Entity ....................12

        1.      The Alleged Initial Transfer Was Made by a Stockbroker.......................12

        2.      The Fairfield Initial Transfers Were Made to (or for the Benefit of) a "Financial Institution." ....................................................................................13

        3.      The Alleged Initial Transfer Was a Settlement Payment and Made in Connection with a Securities Contract.........................................................15

POINT III The Trustee Does Not Plead Plausibly that Subsequent Transfers CONSISTED of BLMIS Customer Property ......................................................................................................20

CONCLUSION.......................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Casein Co. v. Geiger (In re Geiger)*,
    446 B.R. 670 (Bankr. E.D. Pa. 2010) ....................................................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................*passim*

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................*passim*

*Bermudez v. City of New York*,
    783 F. Supp. 2d 560 (S.D.N.Y. 2011) .............................................................25

*Brause v. Travelers Fire Ins. Co.*,
    19 F.R.D. 231 (S.D.N.Y. 1956) ........................................................................5

*Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
    651 F.3d 329 (2d Cir. 2011) ............................................................................18

*Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.)*,
    226 F.3d 160 (2d Cir. 2000) ..............................................................................7

*Davis v. Bifani*,
    2007 WL 1216518 (D. Colo. Apr. 24, 2007) .......................................................6

*Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*,
    323 B.R. 857 (Bankr. S.D.N.Y. 2005) ..............................................................14

*Fairfield Sentry Ltd. v. ABN AMRO Schwiz AG, et al.*,
    Adv. Pro. No. 10-03636 (Bankr. S.D.N.Y. Oct. 26, 2016) .................................15

*Fairfield Sentry Ltd. v. Migani*,
    [2014] UKPC 9 .............................................................................................15

*Garfinkle v. Conference on Jewish Material Claims Against Germany, Inc.*,
    2020 WL 6323462 (S.D.N.Y. Oct. 28, 2020) ....................................................24

*Ghazzaoui v. Anne Arundel Cnty.*,
    2014 WL 3973037 (D. Md. Aug. 11, 2014) .........................................................7

*Heinert v. Bank of Am. N.A.*,
    835 F. App'x 627 (2d Cir. 2020) ......................................................................17

*Hinton v. Trans Union, LLC*,
    654 F. Supp. 2d 440 (E.D. Va. 2009), *aff'd*, 382 F. App'x 256 (4th Cir. 2010) ....................8

*In re Bernard L. Madoff Inv. Sec. LLC*,
    No. 12-2557 (2d Cir. May 15, 2013) ................................................................................13

*In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Revocable Trust)*,
    773 F.3d 411 (2d Cir. 2014), *cert. denied*, 576 U.S. 1044 (2015) ...............................*passim*

*In re Caremerica, Inc.*,
    409 B.R. 737 (Bankr. E.D.N.C. 2009) ..............................................................................21

*In re Fairfield Sentry Ltd. (Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam)*,
    10-13164-SMB, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ......................... 13, 14

*In re Roco Corp.*,
    701 F.2d 978 (1st Cir. 1983) ...........................................................................................19

*In re Trib. Co. Fraudulent Conv. Litig.*,
    10 F.4th 147 (2d Cir. 2021) .............................................................................................15

*In re Tribune Co. Fraudulent Conveyance Litig.*,
    946 F.3d 66 (2d Cir. 2019) ......................................................................................11, 14, 16

*Intel Corp. Inv. Policy Comm. v. Sulyma*,
    140 S. Ct. 768 (2020) .......................................................................................................17

*Law v. Siegel*,
    571 U.S. 415 (2014) ..........................................................................................................20

*Lowden v. William M. Mercer, Inc.*,
    903 F. Supp. 212 (D. Mass. 1995) .....................................................................................7

*Merit Mgmt. Grp., LP v. FTI Consulting Inc.*,
    138 S. Ct. 883 (2018) ........................................................................................................20

*Muhammad v. Bethel-Muhammad*,
    2012 WL 1854676 (S.D. Ala. May 21, 2012) ......................................................................7

*Muth v. Dechert, Price & Rhoads*,
    391 F. Supp. 935 (E.D. Pa. 1975) ......................................................................................6

*NCUA Bd. v. Morgan Stanley & Co.*,
    2014 WL 1673351 (S.D.N.Y. Apr. 28, 2014) .....................................................................6

*New Hampshire v. Maine*,
    532 U.S. 742 (2001)..........................................................................................................14

*Nycomed US, Inc. v. Glenmark Generics, Ltd.*,
  2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010) ......................................................8

*Papasan v. Allain*,
  478 U.S. 265 (1986)............................................................................................4

*Picard v. ADIA*,
  Adv. Pro. No. 11-02493-cgm ............................................................................24

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  12 F.4th 171 (2d Cir. 2021) ..............................................................................19

*Picard v. Fairfield Inv. Fund Ltd. (SIPC v. Bernard L. Madoff Inv. Sec. LLC)*,
  2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) (Morris, C.J.)
  ..................................................................................................12, 17, 18

*Picard v. Fairfield Sentry Ltd.*,
  No. 09-01239 (Bankr. S.D.N.Y. July 20, 2010) ......................................... 1, 2, 5

*Picard v. Fairfield Sentry Ltd.*,
  No. 09-01239 ECF 286-12 ................................................................................18

*Picard v. Lloyds TSB Bank Plc*,
  No. 12-01207-cgm............................................................................................5

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
  515 B.R. 117 (Bankr. S.D.N.Y. 2014).......................................................... 17, 21

*Picard v. Shapiro*,
  Adv. Proc. No. 10-5383 (Bankr. S.D.N.Y. July 8, 2014 .....................................21

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Secs. LLC)*,
  542 B.R. 100 (Bankr. S.D.N.Y. 2015)..................................................21, 22, 25

*Prestige Pet Prod., Inc. v. Pingyang Huaxing Leather & Plastic Co.*,
  767 F. Supp. 2d 806 (E.D. Mich. 2011) ............................................................24

*Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*,
  151 F. Supp. 2d 371 (S.D.N.Y. 2001) ................................................................4

*Rosner v. Bank of China*,
  349 F. App'x 637 (2d Cir. 2009) .......................................................................17

*Ryan v. Hunton & Williams*,
  2000 WL 1375265 (E.D.N.Y. Sept. 20, 2000) ...................................................17

*Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
  2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) .............................................*passim*

*Silverman v. Actrade Cap., Inc. (In re Actrade Fin. Techs. Ltd.)*,
   337 B.R. 791 (Bankr. S.D.N.Y. 2005) ............................................................................. 19, 20

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715 (S.D.N.Y. 2012), *aff'd
   sub nom. Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff
   Inv. Sec. LLC)*,
   773 F.3d 411 (2d Cir. 2014) ............................................................................................ 13

*Strandberg v. State Farm Mutual Auto Ins. Co.*,
   2016 WL 614401 (D. Nev. Feb. 16, 2016) ...................................................................... 21

*Taylor v. Sturgell*,
   553 U.S. 880 (2008) ........................................................................................................ 14

*Texas Water Supply Corp. v. R. F. C.*,
   204 F.2d 190 (5th Cir. 1953) ..........................................................................................

*Toberman v. Copas*,
   800 F. Supp. 1239 (M.D. Pa. 1992) .................................................................................. 7

*United States v. Int'l Longshoremen's Ass'n*,
   518 F. Supp. 2d 422 (E.D.N.Y. 2007) .............................................................................. 8

*Wolfe v. Charter Forest Behavioral Health Sys., Inc.*,
   185 F.R.D. 225 (W.D. La. 1999) ....................................................................................

*Young v. City of Mount Ranier*,
   238 F.3d 567 (4th Cir. 2001) ............................................................................................ 7

**Statutes**

11 U.S.C. § 101(22)(A) ............................................................................................................ 13

11 U.S.C. § 101(53A) ............................................................................................................. 12

11 U.S.C. § 544 ............................................................................................................. 3, 10, 12

11 U.S.C. § 546(e) ........................................................................................................... *passim*

11 U.S.C. § 547 ............................................................................................................. 3, 10, 12

11 U.S.C. § 548(a)(1)(A) ......................................................................................... 10, 11, 19, 20

11 U.S.C. § 548(a)(1)(B) ................................................................................................ 3, 10, 12

11 U.S.C. § 550 ..................................................................................................................... 1, 4

11 U.S.C. § 550(a) ............................................................................................................... 4, 10

11 U.S.C. § 741(7)(A)(i) ...............................................................................................16

11 U.S.C. § 741(7)(A)(vii) ............................................................................................16

28 U.S.C. § 1334(a) .........................................................................................................6

28 U.S.C. § 1334(b) .........................................................................................................6

28 U.S.C. tit. 11 ...............................................................................................................6

11. U.S.C. § 101 .............................................................................................................10

11. U.S.C. § 101(22) ......................................................................................................13

11. U.S.C. § 545 .............................................................................................................10

11. U.S.C. § 548(b) ........................................................................................................10

11. U.S.C. § 741 .............................................................................................................10

11. U.S.C. § 741(7) ........................................................................................................10

11. U.S.C. § 761 .............................................................................................................10

11. U.S.C. § 761(4) ........................................................................................................10

**Rules**

Fed. R. Bankr. P. 7008(a) .................................................................................................6

Fed R. Civ. P. 8(a) .......................................................................................................2, 6

Fed. R. Civ. P. 8(a)(2) ......................................................................................................8

Fed. R. Civ. P. 8(a)(2)(d)(1) .............................................................................................6

Fed. R. Civ. P. 10(c) ................................................................................................*passim*

Fed. R. Civ. P. 12(b)(6) ................................................................................................1, 4

Moore's Federal Practice-Civil § 10.04[1] (2021) ........................................................5,

5A Wright & Miller, Federal Practice and Procedure: Civil § 1326............................7

**Other Authorities**

*Black's Law Dictionary* (8th ed. 2004) ......................................................................7, 8

De Nederlandsche Bank, *Information Detail: Citco Bank Nederland N.V.*,
https://www.dnb.nl/en/public-register/information-
detail/?registerCode=WFTKF&relationNumber=B0275 (last visited Jan. 27,
2022)..................................................................................................................................13

Ireland, *Financial Service Provider Profile: Citco Bank Nederland NV Dublin
Branch*,
http://registers.centralbank.ie/FirmDataPage.aspx?firmReferenceNumber=C2
7278 (last visited Jan. 27, 2022) ......................................................................................13

Defendant Lloyds TSB Bank PLC, now known as Lloyds Bank plc ("Lloyds" or "Defendant") respectfully submits this memorandum of law in support of its motion to dismiss pursuant to Rule 12(b)(6), with prejudice, the Complaint, ECF 1 (the "Complaint" or "Compl."),[1] filed by plaintiff Irving H. Picard, Trustee (the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS").

## PRELIMINARY STATEMENT

While the Trustee contends that Lloyds received transfers from Fairfield Sentry Limited ("Sentry") and Fairfield Sigma ("Sigma" and collectively "Fairfield Funds"), Lloyds seeks dismissal because the Trustee's pleading is fatally flawed. Indeed, the Trustee's Complaint is a copy-and-paste pleading, fatally devoid of allegations to show the avoidability of initial transfers vital to his claim under Section 550 of the Bankruptcy Code. Nor does the Trustee seek recoverability of transfers that are properly alleged as customer property. Moreover, under prevailing Second Circuit law, it sets forth a claim that is clearly prohibited under the Section 546(e) safe harbor.

*First*, the Trustee improperly pleads the avoidability of the initial transfers from BLMIS to Sentry solely by incorporating by reference "the allegations contained in the Fairfield Amended Complaint[2] as if fully set forth herein." Compl. ¶ 36. This kind of shortcut pleading is not permitted and such allegations cannot be credited by this Court. (See Point I, *infra*). That is especially true here where the Trustee tries to incorporate by reference the entirety of the 217-page Fairfield Amended Complaint and 111 exhibits into the 15-page Complaint filed against Lloyds in this Adversary Proceeding. The Trustee's pleading states no explicit nexus to the alleged

---

[1] Unless otherwise noted, all ECF citations refer to Adv. Proc. No. 12-1207 (CGM).

[2] Fairfield Amended Complaint, *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. July 20, 2010), ECF 23 (without exhibits) (copy attached as Paccione Decl. Ex. A).

subsequent transfers to Lloyds, and it contains allegations regarding subject matters far beyond the issue relevant to the pleading in this case, i.e., whether specific transfers (not all transfers) made to the Fairfield Funds (and not their co-defendants) were avoidable. Consequently, permitting incorporation would require Lloyds to answer all of the allegations in the Fairfield Amended Complaint, even if the allegations were not relevant to this Adversary Proceeding. Making matters worse is the fact that the Fairfield Amended Complaint has been superseded by a further amended complaint and asserts claims against other defendants wholly unrelated to this case. *See Picard v. Fairfield Sentry Ltd.*, No. 09-01239 (Bankr. S.D.N.Y. July 20, 2010), ECF 286, filed Aug. 28, 2020 (copy attached as Paccione Decl. Ex. B). The Trustee's lazy pleading violates Fed R. Civ. P. 8(a). Without the Trustee's incorporated allegations, the Complaint fails to plead an essential element of the claim to recover subsequent transfers—i.e., avoidability of the initial transfers—and should be dismissed.

*Second*, the Second Circuit has already ruled that the Section 546(e) safe harbor applies to recovery actions against subsequent transferees like Lloyds. The Second Circuit explained, "[p]ermitting the clawback of millions, if not billions, of dollars from BLMIS clients—many of whom are institutional investors and feeder funds—would likely cause the very 'displacement' that Congress hoped to minimize in enacting § 546(e)." *In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Revocable Trust)*, 773 F.3d 411, 420 (2d Cir. 2014), *cert. denied*, 576 U.S. 1044 (2015) ("*Fishman*") (citation omitted). Here, the alleged subsequent transfers that the Trustee seeks to recover were, according to his own allegations, settlement payments made by, to, or for the benefit of "covered entities" in connection with securities contracts. Despite this, and despite no allegation that Lloyds had any knowledge that Madoff was running a Ponzi scheme, the Trustee seeks to recover transfers as far back as 2003, which, if allowed, would lead to the very

disruption of the securities market that the Section 546(e) safe harbor was designed to avoid. As a result, the safe harbor prohibits the Trustee from recovering subsequent transfers that are avoidable under Sections 544, 547, and 548(a)(1)(B), among others. Accordingly, there is no basis for the Trustee to recover transfers dating back more than December 11, 2006.

*Third*, the Trustee has not adequately alleged that the specific transfers it seeks to recover are customer property. Basic arithmetic dictates that recoverable subsequent transfers from Sentry cannot exceed the approximately *$3 billion* in initial transfers BLMIS allegedly made to Sentry (the "Fairfield Initial Transfers"). In this and other proceedings, the Trustee nonetheless seeks to recover approximately *$5 billion* in claims from subsequent transferee defendants that allegedly redeemed shares from Sentry or received other transfers from Sentry. That massive disparity alone renders the Trustee's subsequent transfer claims entirely implausible. Some of the specific transfers alleged in the Complaint drive home this point. For instance, the Trustee seeks to recover transfers from Sentry to Lloyds that were made in May 2004. This is nearly a full year after Sentry had last received any funds from BLMIS, by which time, according to the Trustee's own allegations, Sentry had already transferred all of those funds from BLMIS to other recipients; this means that any transfer to Lloyds could not plausibly have included BLMIS customer funds. Such allegations violate the most basic pleading standards, which demand that the Trustee tie all subsequent transfers he seeks to recover to an initial transfer (which he also fails to do), and that those ties be plausible. The Trustee's pleading failures are even more striking because, for over a decade, the Trustee has had the very records from Sentry and Sigma that would demonstrate which subsequent transfers contain money from BLMIS, if any—and which did not. That the Trustee has nonetheless put forth such impossible allegations prevents Lloyds from evaluating the claims

against it for purposes of defending or settling the litigation and requires that the Complaint be dismissed.

## ARGUMENT

The Court must dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Moreover, a claimant's allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A plausible claim pleads facts "that allow [ ] … the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

While the Court must accept well-pleaded factual allegations as true, it need not accept assertions that are unsupported by factual allegations, *id.* at 678–79, nor "legal conclusion couched as a factual allegation[,]" *Papasan v. Allain*, 478 U.S. 265, 286 (1986), nor "conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely." *Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001).

### POINT I

### THE TRUSTEE DOES NOT ADEQUATELY PLEAD THE AVOIDABILITY OF THE FAIRFIELD INITIAL TRANSFERS BECAUSE ADOPTING THE ENTIRE FAIRFIELD AMENDED COMPLAINT BY REFERENCE IS IMPROPER

To recover from a subsequent transferee, the Trustee must plead and prove, among other things, an initial transfer that is avoided or at least avoidable. 11 U.S.C. § 550(a); *Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 2013 WL 1609154, at *7-8 (S.D.N.Y. Apr. 15, 2013). The Trustee seeks to recover from Lloyds under 11 U.S.C. § 550 as a subsequent transferee of an alleged fraudulent conveyance of funds from BLMIS to Sentry. *See* Compl. ¶ 42;

4

Ex. C. In his Complaint, the Trustee attempts to plead an avoidable initial transfer from BLMIS to Sentry by only the following single conclusory allegation:

> 36. The Trustee has filed an adversary proceeding against Fairfield Sentry, Fairfield Sigma, and other defendants in the Bankruptcy Court under the caption *Picard v. Fairfield Sentry Ltd., et al.*, No. 09-01239 (BRL), in which, in part, the Trustee sought to avoid and recover the initial transfers of Customer Property from BLMIS to Fairfield Sentry in the amount of approximately $3 billion (the "Fairfield Amended Complaint"). The Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein.[3]

*Picard v. Lloyds TSB Bank Plc*, No. 12-01207-cgm, ECF 1, at ¶ 36.

Paragraphs 37 and 38 of the Complaint assert in conclusory fashion that the Fairfield Initial Transfers were avoidable—that BLMIS was a Ponzi scheme (Compl. ¶¶ 1, 17–18, 24–34), BLMIS made transfers to Sentry (*id.* ¶¶ 37–40, Ex. C), and the Sentry Initial Transfers are avoidable (*id.*)—without any supporting factual allegations that would meet the pleading requirements of *Twombly* and *Iqbal*. Without more, the Complaint is missing essential factual allegations and must be dismissed for failure to state a claim on which relief may be granted. The only allegations that might meet those requirements are contained in the Fairfield Amended Complaint, which the Complaint purports to incorporate in its entirety by reference in paragraph 36.

Rule 10(c) of the Federal Rules of Civil Procedure provides, "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading." The rule "eliminates redundancy and repetition." Moore's Federal Practice–Civil § 10.04[1] (2021) (citing *Brause v. Travelers Fire Ins. Co.*, 19 F.R.D. 231, 234 (S.D.N.Y. 1956)). For example, the common practice of adopting by reference the background allegations of a complaint into the specific claims for relief obviates the need to repeat general allegations.

---

[3] The Trustee has since superseded the Fairfield Amended Complaint by filing a Second Amended Complaint in that adversary proceeding. (Paccione Decl. Ex. B).

However, the authority to adopt by reference has its limits.  Courts have generally held that a pleading in one action may not adopt by reference the pleadings in a different action.  *Texas Water Supply Corp. v. R. F. C.*, 204 F.2d 190, 196 (5th Cir. 1953); *NCUA Bd. v. Morgan Stanley & Co.*, 2014 WL 1673351, *9 (S.D.N.Y. Apr. 28, 2014); *see Davis v. Bifani*, 2007 WL 1216518, *1 (D. Colo. Apr. 24, 2007) (noting it is improper "to incorporate by reference wholesale the allegations in a complaint in a completely separate action, even if that action is between the same parties," but striking the incorporation by reference for violation of Rule 8(a), rather than Rule 10(c)); *Muth v. Dechert, Price & Rhoads*, 391 F. Supp. 935, 938 (E.D. Pa. 1975) ("when determining the sufficiency of the Third-Party Complaints, we can look only to the pleadings in this case").

In the extremely rare instance[4] when incorporating an entire pleading was permitted, that incorporation must also comply with Rule 8(a)'s requirement that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "[each] allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2)(d)(1); Fed. R. Bankr. P. 7008(a); *Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010).  Thus, even where adoption by reference is permitted (whether from the same adversary proceeding or another), Rule 8(a) additionally requires that the resulting pleading must be clear and concise, *Geiger*, 446 B.R. at 679, and the adoption must be "with a degree of specificity and clarity which would enable the

---

[4] Lloyds has found only one reported bankruptcy court decision that has permitted incorporation by reference of pleadings filed in one adversary proceeding in a different adversary proceeding. *Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670 (Bankr. E.D. Pa. 2010).  But the reasoning in that case was incorrect because it treated the bankruptcy case itself as a single action.  That reading improperly confuses the terminology used in the Federal Rules of Civil Procedure (the "Civil Rules") with different terminology used in the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  Part VII of the Bankruptcy Rules applies to adversary proceedings and treats each adversary proceeding as a separate proceeding, analogous to a civil action under the Civil Rules.  *Compare* 28 U.S.C. § 1334(a) (jurisdiction over "cases" under title 11) *with id.* § 1334(b) (jurisdiction over "proceedings" arising in or related to cases under title 11).  Moreover, the *Geiger* court granted the defendant's motion to dismiss the complaint because its incorporation of the other pleading in its entirety failed to comply with Rule 8(a)'s requirement to plead short plain statements.

responding party to easily determine the nature and extent of the incorporation." *Wolfe v. Charter Forest Behavioral Health Sys., Inc.*, 185 F.R.D. 225, 229 (W.D. La. 1999). "The reference must be clear and specific and must specifically identify the statements incorporated." Moore's Federal Practice–Civil § 10.04[1] (2021) (citing *Toberman v. Copas*, 800 F. Supp. 1239, 1243 (M.D. Pa. 1992)).

Finally, not only must the resulting pleading be clear, concise, and specific, the incorporation "must specifically identify which portions of the prior pleading are adopted." *Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212, 216 (D. Mass. 1995); *accord Toberman*, 800 F. Supp. at 1243 (plaintiff must "provid[e], at a minimum, direct reference to specific paragraphs relied on"). Rule 10(c) permits only adoption by reference of a "statement in a pleading," not of entire pleadings. *Muhammad v. Bethel-Muhammad*, 2012 WL 1854676, at *12 n. 10 (S.D. Ala. May 21, 2012) (condemning "sweeping reference to his 100-page complaint"). The requirement that references be explicit and direct is not merely for the sake of form: it "enable[s] the responding party to ascertain the nature and extent of the incorporation." *Ghazzaoui v. Anne Arundel Cnty.*, 2014 WL 3973037, *4 (D. Md. Aug. 11, 2014). As one court has stated:

> This requirement of clarity ensures fairness to the responding party, for without this requirement incorporations "may prove confusing and inconvenient." 5A Wright & Miller, *supra*, § 1326. And the risk of such confusion and inconvenience is particularly high where, as here, a party seeks wholesale incorporation in an amended pleading of a superseded version of that same pleading. This is so because "[a]s a general rule, 'an amended pleading ordinarily supersedes the original and renders it of no legal effect.'" *Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) (quoting *Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.)*, 226 F.3d 160, 162 (2d Cir. 2000)). This general rule, like Rule 10(c)'s clarity requirement, also has fairness as its purpose, for it breeds confusion and uncertainty if in responding to an amended pleading, a party is required to take into account a number of other, superseded pleadings. This is especially true with respect to a complaint, which serves as the "pleading that starts a civil action and states . . . the

> basis for the plaintiff's claim[ ] and the demand for relief." *Black's Law
> Dictionary* (8th ed. 2004) (defining "complaint").

*Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47 (E.D. Va. 2009) (footnote omitted),

*aff'd*, 382 F. App'x 256 (4th Cir. 2010). Thus, a "Rule 10(c) adoption clause that does little more

than make wholesale reference to the contents of a prior pleading exemplifies the kind of

incorporation that fails to give the requisite guidance to the responding party." *Nycomed US, Inc.*

*v. Glenmark Generics, Ltd.*, 2010 WL 1257803, *4 (E.D.N.Y. Mar. 26, 2010) (internal quotes

omitted) (citation omitted).

The District Court for the Eastern District of New York synthesized each of these

requirements in dismissing a complaint that relied on numerous prior pleadings. In *United States*

*v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422 (E.D.N.Y. 2007), the government brought a

civil RICO action in a complaint which attached as exhibits pleadings from several prior criminal

and civil actions against some of the same defendants. The court rejected the attempt to

incorporate the prior pleadings. First, "[t]he Government's failure to specifically identify which

portions of the hundreds of pages of exhibits it intends to incorporate by reference into the

Amended Complaint makes it impossible for the Court or the defendants to ascertain the nature

and extent of the incorporation, and the purported incorporation is therefore invalid." *Id.* at 462.

Second, the wholesale incorporation of the prior pleadings is "a blatant violation of Rule 8(a)(2)'s

direction that a civil plaintiff provide a 'short and plain statement of the claim,'" and it would have

rendered the complaint "utterly incoherent" and "an unintelligible morass of self-contradictory

allegations." *Id.* at 462 n.72, 463. Finally, the court noted that if the incorporation were accepted,

the defendants would have been required to respond not only to the 85-page complaint, but also to

every paragraph in the 400 pages of exhibits. *Id.* at 464.

In this case, the Trustee's attempt to plead the avoidability of the Fairfield Initial Transfers rests solely by incorporating by reference "the allegations contained in the Fairfield Amended Complaint as if fully set forth herein." Compl, ¶ 36. The attempt to incorporate by reference all 798 paragraphs of a 217-page complaint (which itself attaches and refers to 111 exhibits) into what would otherwise be a 15-page complaint against Lloyds violates numerous pleading rules and requirements: it improperly incorporates by reference a pleading from another action; it improperly incorporates an entire pleading, not the statements in a pleading; and it improperly fails to specify the relevant allegations (as opposed to "all" allegations) that are being incorporated. And worse, the Complaint incorporates a pleading that has been superseded by a further amended complaint which removes numerous allegations and claims and has rendered the incorporated earlier pleading inoperative.

Because the Fairfield Amended Complaint asserts claims against numerous defendants other than Sentry and against Sentry for much more than the avoidance of the transfers at issue in this Adversary Proceeding, the incorporation does not contain a short and plain statement of the claim—avoidability—entitling the Trustee to relief. *See* Paccione Decl. Ex. A. Permitting the Trustee's incorporation by reference here might require Lloyds to answer all the allegations in all 798 paragraphs in the Fairfield Amended Complaint, even those that have nothing to do with the claim in this Adversary Proceeding. Even if Lloyds could respond to the Fairfield Amended Complaint, the result would be to expand the scope of this adversary proceeding well beyond the claims asserted in the Complaint for recovery of subsequent transfers of allegedly avoidable transfers of BLMIS customer property and put in issue here all the other claims for relief in the Fairfield Amended Complaint. The Trustee does not assert liability of Lloyds for any of the Trustee's claims against any of the defendants named in the Fairfield Amended Complaint, and

Lloyds should not be required to address those claims, with all the associated discovery and trial time that would likely result, or guess, at its peril, which of the incorporated allegations are relevant and must be addressed.

For all these reasons, the Court should reject the Trustee's attempt to incorporate the Fairfield Amended Complaint by reference. Without the incorporated Fairfield Amended Complaint, the Complaint pleads avoidability in only a conclusory fashion. Under *Iqbal* and *Twombly*, the Court need not credit legal conclusions styled as factual allegations. As such, the Complaint does not adequately plead an essential element of the claim to recover subsequent transfers—avoidability of the Fairfield Initial Transfers—and should be dismissed.

## POINT II

### THE TRUSTEE'S CLAIM IS BARRED BY 11 U.S.C. § 546(e)

Section 550(a) of the Bankruptcy Code provides that to the extent a transfer is avoided under certain sections of the Code, a trustee may recover the property transferred, or its value, from the initial transferee or any subsequent transferee. Section 546(e), however, bars a trustee from avoiding a transfer (other than under Section 548(a)(1)(A), which has only a two-year lookback period) if the transfer, *inter alia*, (1) was made by or to a covered entity such as a stockbroker, financial institution, or financial participant; and (2) was either a settlement payment or a transfer in connection with a securities contract:

> Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not avoid a transfer that is a margin payment, as defined in section 101, 741, or 761 of this title, or settlement payment, as defined in section 101 or 741 of this title, made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, or that is a transfer made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, in connection with a securities contract, as defined in section 741(7), commodity contract, as defined in section 761(4), or forward contract, that is made before the commencement of the case, except under section 548(a)(1)(A) of this title.

11 U.S.C. § 546(e).

The Second Circuit has instructed that courts should enforce Section 546(e)'s safe harbor whenever it applies by its terms, specifically including in actions brought by the Trustee here. In construing Section 546(e) in the context of avoidance actions by the Trustee, the Second Circuit has explained that, "in enacting the Bankruptcy Code, Congress struck careful balances between the need for an equitable result for the debtor and its creditors, and the need for finality." *Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411, 423 (2d Cir. 2014) (citation omitted). In particular, "by enacting § 546(e), Congress provided that, for a very broad range of securities-related transfers, the interest in finality is sufficiently important that they cannot be avoided by a bankruptcy trustee at all, except as actual fraudulent transfers under § 548(a)(1)(A)." *Id.* "Unwinding settled securities transactions . . . would seriously undermine . . . markets in which certainty, speed, finality, and stability are necessary to attract capital." *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 90 (2d Cir. 2019) ("*Tribune I*"). "Permitting the clawback of millions, if not billions, of dollars from BLMIS clients—many of whom are institutional investors and feeder funds—would likely cause the very 'displacement' that Congress hoped to minimize in enacting § 546(e)." *Fishman*, 773 F.3d at 420 (citation omitted).

When such a clawback action is brought against a subsequent transferee of a BLMIS client, the subsequent transferee can assert any defenses against the Trustee that the initial transferee could have asserted, including Section 546(e). This includes the situation where, as here, the alleged initial transferee, Sentry, settled with the Trustee and agreed to a consent judgment.[5] *See*

---

[5] On May 9, 2011, the Trustee entered into a Settlement Agreement (the "Fairfield Settlement Agreement") with the Liquidators of Sentry and the other Fairfield Funds. (Copy attached as Paccione Decl. Ex. C). This Court approved the Fairfield Settlement Agreement on June 7, 2011, *id.* ECF 92, and it was incorporated into the consent judgment entered against Sentry on July 13, 2011 (the "Consent Judgment"), *id.* ECF 109, ¶ 2; Compl. ¶ 41.

*Picard v. Fairfield Inv. Fund Ltd. (SIPC v. Bernard L. Madoff Inv. Sec. LLC)*, 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021) (Morris, C.J.) ("Where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here . . . , the subsequent transferee is nonetheless entitled to raise a § 546(e) defense against recovery of those funds."). Accordingly, because the Trustee is seeking to recover from Lloyds as a subsequent transferee of a BLMIS transfer to Sentry, his claims based on Sections 544, 547 and 548(a)(1)(B) (and thus, all transfers for which recovery is sought dating back farther back than December 11, 2006) must be dismissed if BLMIS's transfer to Sentry was protected by Section 546(e).[6] As shown below, it was.

     **a.**    **The Alleged Initial Transfer Was Made by or to a Covered Entity**

Here, the alleged initial transfer was made by or to an entity covered by Section 546(e) both because the alleged initial transfer was made by a stockbroker and because it was made to a financial institution, though either of those facts alone would be sufficient.[7]

     **1.**    **The Alleged Initial Transfer Was Made by a Stockbroker.**

There is no dispute that BLMIS made the initial transfers at issue and that BLMIS was a "stockbroker" covered by Section 546(e). *Fishman*, 773 F.3d at 417 (It is uncontested "that BLMIS was a 'stockbroker'" for determining safe harbor)). The Code defines "stockbroker" to include entities that "engage[ ] in the business of effecting transactions in securities." 11 U.S.C. § 101(53A). As the District Court has noted:

> Overall, Madoff Securities, which was registered as a stockbroker with the SEC, clearly engaged in securities transactions. . . . [E]ven assuming the truth of the allegation that Madoff Securities' investment advisory division never traded

---

[6] Although Section 546(e) is an affirmative defense, a court can dismiss based on Section 546(e) if its applicability is established on the face of the complaint or documents incorporated by reference into or integral to the complaint. *See Fairfield Inv. Fund*, 2021 WL 3477479, at *2.

[7] Lloyds reserves for later consideration, if necessary, the question whether the transfer also was "made by or to (or for the benefit of) a . . . financial participant." 11 U.S.C. § 546(e).

securities on behalf of clients, Madoff Securities nonetheless qualifies as a stockbroker by virtue of the trading conducted by its market making and proprietary trading divisions.

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 719 (S.D.N.Y. 2012) (citation omitted),

*aff'd sub nom. Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*,

773 F.3d 411 (2d Cir. 2014). As the Second Circuit noted in the ensuing appeal, "It is not disputed

[by the Trustee] that BLMIS was a 'stockbroker' for the purposes of § 546(e)." 773 F.3d at 417;

*see* Br. for Plaintiff-Appellant Irving H. Picard, *In re Bernard L. Madoff Inv. Sec. LLC*, No. 12-

2557 (2d Cir. May 15, 2013), ECF 145, at i-ii, 5 (not challenging stockbroker finding on appeal).

**2.    The Fairfield Initial Transfers Were Made to (or for the Benefit of) a "Financial Institution."**

There is also no dispute that BLMIS made the subject transfers to the Fairfield Funds which

was a "financial institution" covered by 546(e). *In re Fairfield Sentry Ltd. (Fairfield Sentry Ltd.*

*v. Theodoor GGC Amsterdam)*, 10-13164-SMB, 2020 WL 7345988, at *7 (Bankr. S.D.N.Y. Dec.

14, 2020) ("*Fairfield III*"). Section 101(22) defines "financial institution" to include not only "an

entity that is a commercial or savings bank," but also the customer of such a bank "when [it] is

acting as agent or custodian for a customer . . . in connection with a securities contract." 11 U.S.C.

§ 101(22)(A). In *Fairfield III*, this Court held that the Fairfield Funds (Sentry, Sigma, and

Lambda) were "financial institutions" because they were customers of Citco Bank Nederland N.V.

Dublin Branch ("Citco Bank"), a bank regulated by the Central Bank of the Netherlands and

registered with the Central Bank of Ireland. *Fairfield III*, 2020 WL 7345988, at *6 & n.11,[8] which

---

[8] *See* De Nederlandsche Bank, *Information Detail: Citco Bank Nederland N.V.*, https://www.dnb.nl/en/public-register/information-detail/?registerCode=WFTKF&relationNumber=B0275 (last visited Jan. 27, 2022) (identifying Citco Bank Nederland N.V. as "[c]arrying on the business of a bank," including "[a]cceptance of deposits and other repayable funds"); Central Bank of Ireland, *Financial Service Provider Profile: Citco Bank Nederland NV Dublin Branch*, http://registers.centralbank.ie/FirmDataPage.aspx?firmReferenceNumber=C27278 (last visited Jan. 27, 2022) (classifying Citco Bank as a "credit institution . . . whose business is to receive deposits or other repayable funds from the public and to grant credits for its own account"). This Court can take judicial notice of information from

acted as the Fairfield Funds' agent in connection with the securities contracts under which the BLMIS transfers to Sentry were made. *Id.* at *7. As this Court found in *Fairfield III*:

> [T]he [Fairfield] Liquidators' admission that redemptions were paid by Citco Bank establishes the necessary agency. It is implausible to infer that Citco Bank made the redemption payments to specific redeemers in specific amounts absent the [Fairfield] Funds' directions to do so. Moreover, Citco Bank accepted those directions by executing the redemption payments. Based on the foregoing, the Funds were customers of Citco Bank who acted as their agents in connection with the securities contracts pursuant to which the redemption payments were made, and the Funds were, therefore "financial institutions" within the meaning of 11 U.S.C. § 546(e).

2020 WL 7345988, at *7 (footnote omitted). This Court's holding in *Fairfield III* binds the Trustee because he was in privity with the Fairfield Liquidators.[9] Even if not, there is no reason for this Court to deviate from Judge Bernstein's well-reasoned *Fairfield III* decision.

In addition, if and to the extent the Complaint alleges that the Sentry redemption payments to Lloyds were tied to payments of customer property transferred from BLMIS to Sentry, the Fairfield Initial Transfers were settlement payments for the benefit of a financial institution, Lloyds, which is a bank, and are therefore subject to the Section 546(e) safe harbor. *See SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 2013 WL 1609154, at *9 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*").

---

such public registries. *See Tribune I*, 946 F.3d at 78; *Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*, 323 B.R. 857, 869 (Bankr. S.D.N.Y. 2005).

[9] As described above, the Fairfield Settlement Agreement provides for the sharing of recoveries on the parties' claims for recovery of property that Sentry transferred, cooperation and consultation on bringing those claims, and a joint interest agreement. The Trustee's and the Liquidators' agreed joint interest in any such recovered BLMIS customer property constitutes a "preexisting 'substantive legal relationship,'" focused on a successive or concurrent interest in property, of the kind recognized by the Supreme Court to give rise to non-party issue preclusion. *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008). Because the Trustee is in privity with the Liquidators in actions to recover alleged BLMIS customer property, such as the actions at issue in *Fairfield III*, and because the issue of Sentry's "financial institution" status was "actually litigated" and "essential" to the final judgments dismissing numerous such actions on the ground of the section 546(e) safe harbor, this Court's finding in *Fairfield III* that Sentry was a "financial institution" in connection with redemption payments from Sentry to its subscribers is binding on the Trustee. *See New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001) (stating requirements for issue preclusion).

### 3.    The Alleged Initial Transfer Was a Settlement Payment and Made in Connection with a Securities Contract.

In *Fishman*, the Second Circuit held that Section 546(e) shielded transfers during a six-year look-back period from BLMIS to its account holders from the Trustee's avoidance powers. 773 F.3d at 417.    The Court of Appeals concluded that the documents governing BLMIS customers' accounts constituted securities contracts, and that the payments BLMIS made to those customers were made "in connection with" those contracts, and also constituted "settlement payments," *id*. at 418-23—though either of those findings would have sufficed to invoke the safe harbor.    The Court rejected the Trustee's argument that the safe harbor did not apply because Madoff did not actually carry out the promised securities transactions.  *Id*. at 419–20.

The same reasoning and result doubly apply to the transfer that the Trustee alleges BLMIS made to Sentry for the purpose of funding Lloyds' redemption request.  That alleged transfer from BLMIS to Sentry was clearly *both* "in connection with" the securities contracts Sentry had entered into with BLMIS, as in *Fishman*, *and* "in connection with" the allegedly related securities contract Lloyds had with Sentry through Sentry's Articles of Association,[10]  pursuant to which Lloyds made its redemption.  *See g. Migani*, [2014] UKPC 9, ¶ 10, https://www.jcpc.uk/cases/docs/jcpc-2012-0061-judgment.pdf  ("the terms of the subscriber's membership of the Fund, which govern the redemption of its shares . . . are to be found in the Articles of Association of the Fund").[11]

---

[10]  *See* The Declaration of William Hare, counsel for the Fairfield Liquidators, attaching the Memorandum of Association and Articles of Association of Fairfield Sentry Limited, as filed with the Court in *Fairfield Sentry Ltd. v. ABN AMRO Schwiz AG, et al.*, Adv. Pro. No. 10-03636 (Bankr. S.D.N.Y. Oct. 26, 2016), ECF 164 and 164-6 (copy attached to Paccione Decl. as Ex. D).

[11]  This Court may consider the Articles of Association in connection with this motion because, as the basis for the challenged redemption, they are integral to the Complaint.  *See In re Trib. Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 176 (2d Cir. 2021) ("Here, the documents the district court relied on were the contracts that set forth the relationship between Tribune and CTC, and they were therefore integral to the complaint.").

The definition of "securities contract" includes "a contract for the purchase, sale, or loan of a security," 11 U.S.C. § 741(7)(A)(i), and "[t]he term 'redemption,' in the securities context, means 'repurchase,'" *Tribune I*, 946 F.3d at 80. The definition of "securities contract" also includes "any other agreement or transaction that is similar to an agreement or transaction referred to in this subparagraph." 11 U.S.C. § 741(7)(A)(vii). Accordingly, "the definition of a securities contract . . . includes . . . redemption requests." *Cohmad*, 2013 WL 1609154, at *8. Furthermore, all Section 546(e) requires is that the transfer be "in connection with *a* securities contract," not in connection with the securities contract between the transferor and initial transferee. *See Fishman*, 773 F.3d at 422 (holding that "Section 546(e) sets a low bar for the required relationship between the securities contract and the transfer sought to be avoided" and that "a transfer can be connected to, and can be made in relation to, multiple documents or purposes simultaneously"); *Cohmad*, 2013 WL 1609154, at *9 (explaining that a transfer from a debtor to an initial transferee may qualify as having been made "in connection with a securities contract" between the initial transferee and a subsequent transferee, and thus be covered by the safe harbor on that basis).

Implicit in the Trustee's subsequent transfer claim is the allegation that the funds Lloyds received were transferred from BLMIS to Sentry in order that Sentry could then satisfy Lloyds' redemption request. Although, as demonstrated in Point III *infra*, this allegation lacks plausible support, its assertion necessarily involves the allegation of a connection between the initial transfer from BLMIS to Sentry and Lloyds' contract with Sentry that authorized the redemption. Accordingly, the Section 546(e) safe harbor applies to the initial transfer, and thus bars recovery of the subsequent transfer.

The Trustee may argue that the safe harbor does not apply here because the initial transferee, Sentry, allegedly knew of Madoff's fraud, and thus knew that there was no actual

"settlement payment" or "securities contract" between BLMIS and Sentry.  In *Fairfield Investment Fund*, this Court accepted that Sentry's knowledge had been adequately pleaded in a later version of the *Fairfield* complaint than the one that was incorporated by reference into the instant Complaint.  *See* 2021 WL 3477479, at *4-5 (citing Paccione Decl. Ex. B). [12]  It then quoted Judge Rakoff's statement that "'if the Trustee sufficiently alleges that the transferee from whom he seeks to recover a fraudulent transfer knew of Madoff Securities' fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor.'"  *Fairfield Inv. Fund*, 2021 WL 3477479, at *4 (quoting *Cohmad*, 2013 WL 1609154, at *7).

That argument does not defeat the application of the safe harbor here for several reasons.  **First**, as noted above, even if Sentry had actual knowledge of the BLMIS fraud sufficient to preclude **Sentry** from invoking Section 546(e), that would not affect the separate securities contracts between Sentry and its investors, including Lloyds.  Nor would Sentry's alleged knowledge of the BLMIS fraud preclude the application of Section 546(e) for the benefit of a Sentry investor if the initial transfer was "in connection with" Sentry's agreement with a Sentry investor.  In *Cohmad*, Judge Rakoff agreed that securities contracts other than the initial transferee's securities contract with BLMIS could independently satisfy Section 546(e)'s requirement that the initial transfer be in connection with a securities contract. 2013 WL 1609154, at *8-9.  Judge Rakoff ruled that so long as the initial transferee withdrew funds from BLMIS to

---

[12] Lloyds respectfully disagrees with that conclusion and reserves for a later stage of this action or appeal all arguments that the Trustee has not adequately pleaded Sentry's actual knowledge of Madoff's fraud either in the Second Amended Complaint or the earlier pleadings in *Fairfield Investment Fund* and/or that Sentry did not in fact have such actual knowledge.  *See Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 776-77 (2020) (holding that "to have 'actual knowledge' of a piece of information, one must in fact be aware of it" and distinguishing between actual knowledge and constructive knowledge); *Heinert v. Bank of Am. N.A.*, 835 F. App'x 627, 631 (2d Cir. 2020) ("allegations [of actual knowledge of misrepresentations] do not suffice to show that [the bank] had actual knowledge of the [account holders'] Ponzi scheme, the fraud on which the [plaintiffs'] claim relies"); *Rosner v. Bank of China*, 349 F. App'x 637, 639 (2d Cir. 2009) (similar); *Ryan v. Hunton & Williams*, 2000 WL 1375265, at *9 (E.D.N.Y. Sept. 20, 2000) (similar); *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117, 140 (Bankr. S.D.N.Y. 2014) (refusing to equate "strong suspicion" with "actual knowledge").

make a payment under a securities contract between the initial transferee and a subsequent

transferee, then the withdrawal from BLMIS would be a transfer made in connection with a

securities contract—namely, the contract between the initial transferee and the subsequent

transferee—and would not be avoidable on a subsequent transferee claim:

> Take, for example, a hypothetical situation in which the Trustee alleges that a
> withdrawal of funds by an investment fund from its Madoff Securities customer
> account occurred because an investor in that fund sought redemption of its
> investment under the terms of its investment contract. Assuming that either the
> investment fund or the investor qualifies as a financial institution or financial
> participant, and barring other circumstances that may appear on the facts of a given
> case, that situation appears to fit within the plain terms of Section 546(e): an initial
> transfer that was "made by or to (or for the benefit of) a . . . financial institution [or]
> financial participant . . . in connection with a securities contract."

*Id.* at *9 (footnote omitted).[13]   As applied to the facts here, the investment fund was Sentry (which

was a financial institution as shown above) and the investor was Lloyds (or some other Sentry

investor).

**Second**, the Trustee has not pleaded that Lloyds actually knew of Madoff's fraud. Since

the applicability of Section 546(e) is clear on the face of the Complaint and documents integral to

it, if the Trustee advances a theory of transferee actual knowledge as an exception to the safe

harbor, it is incumbent on him to plead such actual knowledge. But nothing in the Complaint even

suggests that Lloyds had actual knowledge of Madoff's fraud.[14]   And "actual knowledge,"

---

[13] Judge Rakoff also observed that "[t]o the extent that, for example, an initial transfer from Madoff [S]ecurities to an investment fund customer and the subsequent transfer from the investment fund to its redeeming investors may together comprise a 'settlement payment' under *Enron* [*Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 339 (2d Cir. 2011)], that transfer may fall within the purview of Section 546(e), assuming it meets the statute's other requirements." *Cohmad*, 2013 WL 1609154, at *9 n.5.

[14] Thus, this case is unlike *Fairfield Investment Fund*, in which this Court found that the allegations against most of the subsequent transferee defendants were sufficient to show they actually knew about Madoff's fraud. *See* 2021 WL 3477479, at *5-6. Furthermore, many of the subsequent transfers in that case were not in connection with securities contracts, but rather management contracts. *See, e.g.*, Fairfield Am. Compl. ¶ 138 (Fairfield Greenwich Limited received $3,844,000 in management fees and $83,591,000 in performance fees from Sentry in 2002); *Picard v. Fairfield Sentry Ltd.*, No. 09-01239 ECF 286-12, at 5 (showing these same amounts as subsequent transfers from Sentry).

*Cohmed*, 2013 WL 1609154, at *1—not "mere suspicion," *id*. at *3, or inquiry notice—is what Judge Rakoff repeatedly stated was necessary to defeat the safe harbor. *See, e.g.*, *id*. at *4 ("the Trustee must show, at a minimum, that the transferee had actual knowledge that there were no actual securities transactions being conducted") (footnote omitted); *id*. at *1, 3, 6, 7, 10. Furthermore, there is no allegation that Lloyds actually knew of any fraud at Sentry either. Because the initial transfer was made in connection with the securities contract between Sentry and Lloyds and Lloyds is not alleged to have had actual knowledge of the Madoff fraud, the Court can and should, on those grounds alone, apply the safe harbor in Section 546(e) to this case.

**Finally**, Section 546(e) also applies here for a separate and independently sufficient reason. While we recognize that this Court and the District Court have previously ruled that Section 546(e) cannot be invoked by a transferee with actual knowledge of Madoff's fraud, and while, for the reasons discussed above, this Court does not need to reject that ruling in order to give Lloyds the benefit of the safe harbor, we note that nothing in Section 546(e) supports making its applicability turn on the knowledge of the transferee, as opposed to the debtor-transferor.[15]    That section provides for only one exception to the safe harbor: namely, for a claim under Section 548(a)(1)(A), which requires the Trustee to allege and prove intentional fraud by the *transferor*. *See Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171, 181 (2d Cir. 2021) ("Voidability under § 548(a)(1)(A) focuses on the fraudulent intent of the debtor-transferor.") (footnote omitted); *Silverman v. Actrade Cap., Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791,

---

[15] This is an open question at the Circuit level, and Lloyds expressly preserves it. Although the Second Circuit in *Fishman* noted that the defendants there had "every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions," 773 F.3d at 420, it did not state that the result would have been different had that not been the case. The only circumstances in which the knowledge of the transferee would be relevant would be if it could be imputed to the transferor, such as where the transferee, "as the [transferor]'s president, director, and sole shareholder, . . . was in a position to control the disposition of [the transferor's] property," *In re Roco Corp.*, 701 F.2d 978, 984 (1st Cir. 1983) (citation omitted).

808 (Bankr. S.D.N.Y. 2005) (under Section 548(a)(1)(A) "it is the intent of the transferor and not the transferee that is relevant") (citations omitted).   Thus, the exception to the safe harbor articulated in *Cohmad*, i.e., that if the transferee from whom the Trustee seeks to recover knew of Madoff Securities' fraud, that transferee cannot claim the protections of Section 546(e) (*Cohmad*, 2013 WL 1609154, at *7), is not supported by the text of the statute.

To hold that transferee knowledge defeats the safe harbor for a transferor is thus inconsistent with Section 546(e)'s language.   Where the Code creates an exemption or safe harbor, and specifies exceptions, a court is not free to create additional exceptions even when doing so is motivated by a party's alleged wrongdoing.   *See Law v. Siegel*, 571 U.S. 415, 424-25 (2014).   The courts must, instead, adhere to "the plain meaning of the language" of the statute.   *Merit Mgmt. Grp., LP v. FTI Consulting Inc.*, 138 S. Ct. 883, 897 (2018).   Considering the Second Circuit's admonitions in *Fishman* that, in enacting Section 546(e) and its single exception for claims under Section 548(a)(1)(A), Congress struck a balance favoring the securities markets' interest in finality over creditors' interests in recovery, and that the courts "are obliged to respect the balance Congress struck among these complex competing considerations," 773 F.3d at 423, the safe harbor should apply here according to its plain language regardless of the initial transferee Sentry's alleged knowledge.

## POINT III

### THE TRUSTEE DOES NOT PLEAD PLAUSIBLY THAT SUBSEQUENT TRANSFERS CONSISTED OF BLMIS CUSTOMER PROPERTY

*Iqbal* and *Twombly* require the Trustee to plead facts, not conclusions of law or statements of the elements of the cause of action, that create the plausible inference that the redemption payments were subsequent transfers of BLMIS customer property and that "liability

necessarily, not only possibly, follows." *Strandberg v. State Farm Mutual Auto Ins. Co.*, 2016

WL 614401, at *1 (D. Nev. Feb. 16, 2016). As Judge Bernstein ruled:

> The Trustee must allege facts that support the inference that the funds at
> issue originated with the BLMIS, and contain the "***necessary vital
> statistics***"—the "***who, when, and how much***" of the transfers to establish
> that an entity was a subsequent transferee of the funds. At the pleading
> stage, the Trustee is not required to provide a "dollar-for-dollar accounting"
> of the exact funds at issue. However, barebones allegations that the funds
> at issue were transferred to the Subsequent Transferees, without more detail,
> are insufficient.

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Secs. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y.

2015) (emphasis added); *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117,

150–51 (Bankr. S.D.N.Y. 2014) (same).

In *Shapiro*, the trustee alleged only generically that (i) BLMIS transferred funds to certain

accounts and (ii) the "Initial Transferee Defendants subsequently transferred a portion of the

$53,778,486 received from BLMIS" to defendants who held an account at BLMIS which was

funded largely, if not completely, with subsequent transfers. (*Picard v. Shapiro*, Adv. Proc. No.

10-5383 (Bankr. S.D.N.Y. July 8, 2014), ECF 33, ¶¶ 110, 43.) The Court dismissed the complaint

because it did not "tie any initial transfer to any subsequent transfer or Subsequent Transferee"

and did "not plausibly imply that the initial transferees even made subsequent transfers to the

Subsequent Transferees as opposed to third parties, or that they made the subsequent transfers

rather than simply keep the initial transfers for themselves." *Shapiro*, 542 B.R. at 119; *accord In

re Caremerica, Inc.*, 409 B.R. 737, 750–51 (Bankr. E.D.N.C. 2009) (court dismissed a preference

claim under *Twombly* and *Iqbal* because the trustee's factual allegations included allegations about

transfers into and out of an account and amounts received by the supposed transferees, but nothing

to tie them together). In this case, the Complaint's allegations fail to make the connections that

the courts required in *Shapiro*, *Merkin*, and *Caremerica*.

Here, the Complaint fails to set forth facts that plausibly support the inference that the subsequent transfers actually originated with BLMIS, so as to "tie [the alleged] initial transfers to any subsequent transfer or [alleged] Subsequent Transferee." *Shapiro*, 542 B.R. at 119. Rather, as in *Omnibus Motion to Dismiss Decision*, where the court dismissed the Trustee's subsequent transferee claims, his Complaint merely "allege[s] the initial transfers and assert[s], in conclusory fashion, that the [alleged] subsequent transferee defendants received subsequent transfers." *Id.*, 531 B.R. at 474.

This Complaint alleges only, and without specific detail, that "[a] portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Lloyds." Compl. ¶ 42. Indeed, the exhibits to the Complaint, which are "part[s] of the pleading[s] for all purposes," Fed. R. Civ. P. 10(c), show the movements of cash in the alleged initial transfers from (i) BLMIS to Sentry and (ii) Sentry to Lloyds, and additionally, from (iii) Sentry to Sigma and (iv) Sigma to Lloyds. Taking the allegations as true, $3 billion went from BLMIS to Sentry over six years (Paccione Decl. Ex. A; Compl. ¶ 36) and, on 36 separate occasions during five of those six years, Sentry distributed $11,134,574 to Lloyds. Compl. ¶ 42. *See also* Compl. Ex. C. Put syllogistically, the Trustee pleads that: (i) all redemption payments originated with BLMIS; (ii) Lloyds received redemption payments; and (iii) therefore, Lloyds' redemption payments originated with BLMIS.

But the first premise is clearly implausible for a number of reasons. From a mathematical standpoint: in the Trustee's own pleadings in the 70+ Sentry subsequent transferee recovery actions, the Trustee alleges that approximately $3 billion in redemption payments were made by Sentry to its investors after May 9, 2003 (the date of the earliest possible avoidable Fairfield Initial Transfer), each of which is alleged by the Trustee to be the proceeds of transfers from BLMIS to

22

Sentry. Compl. ¶ 36. The Trustee alleges that during the same period, Sentry transferred another roughly $1 billion in transfers to its management group in the same time period (Paccione Decl., Ex. G), $752 million to Sigma (Paccione Decl. Ex. G.), and about $2 billion to BLMIS as deposits (Paccione Decl. Ex. E), for a total of nearly $7 billion in transfers made by Sentry during the six-year period. Yet—and this is key—the Trustee admits that less than $3 billion in alleged avoidable initial transfers of customer property were made by BLMIS to Sentry during this period, meaning that at least $4 billion of the transfers Sentry made during this period—well more than half of Sentry's transfers during the period—could not have been subsequent transfers of avoidable initial customer property transfers. Nevertheless, the Trustee has challenged *all* the transfers from Sentry (other than transfers from Sentry to BLMIS), despite the mathematical impossibility of his position.

In sum, excluding only the $2 billion in transfers from Sentry to BLMIS, the Trustee is trying to recover roughly $5 billion in alleged "subsequent transfers" that flowed out of Sentry, even though he simultaneously alleges that the initial transfers (*i.e.*, from BLMIS to Sentry) total less than $3 billion. Compl. ¶ 36. At least $2 billion of the alleged "subsequent transfers," therefore, could not have been subsequent transfers of BLMIS customer property.

Documents from the Trustee's actions against the other subsequent transferee defendants further prove the implausibility of these claims. For example, Fairfield did not receive any transfers from BLMIS between late July 2003 and April 2005 (20 months). Paccione Decl. Ex. E. At the start of that period, BLMIS transferred $25 million into Sentry. Paccione Decl. Ex. E. However, in those 20 months, Sentry transferred nearly $517 million to defendants, including, more specifically, $2.8 million to Lloyds alone. Compl. Ex. C; Paccione Decl. Exs. F, G. With a budgetary shortfall of $492 million, the money required to complete those subsequent transfers

*must* have come from somewhere other than BLMIS.[16]  In yet another example, BLMIS transferred $175 million into Sentry on April 1, 2005.  Paccione Decl. Ex. E.  But only four days later, Sentry exhausted all of that money: on April 4, 2005, Sentry transferred $200 million to defendant Abu Dhabi Investment Authority ("ADIA").[17]  This would make it *impossible* for Sentry's May 13, 2005 transfer to Lloyds for $107,030 to have originated with BLMIS when BLMIS money was clearly exhausted one month before the Lloyds subsequent transfer.  Compl. Ex. C.[18]

How was Sentry able to transfer to the subsequent transferee defendants more than it received from BLMIS?  The answer to that question is found in Sentry's own admission that: "From time to time, to make Redemption Payments," it "utilized subscription monies of other investors on hand that were directed for investment in BLMIS", *i.e.*, not BLMIS funds.  *Citco Global Custody NV*, 19-01122 Doc. No. 19, entered Nov. 26, 2019, at para 63.  To put it plainly, it is likely the money paid out to members like Lloyds was that of other Sentry investors, not BLMIS.  It is clear, thus, that "[t]here is an obvious alternative explanation" for the source of Lloyds' redemptions, and "that explanation renders [the Trustee's] competing explanation conceivable but not plausible."  *Garfinkle v. Conference on Jewish Material Claims Against Germany, Inc.*, 2020 WL 6323462, at *5 (S.D.N.Y. Oct. 28, 2020) (cleaned up); *Prestige Pet Prod., Inc. v. Pingyang Huaxing Leather & Plastic Co.*, 767 F. Supp. 2d 806, 812 (E.D. Mich.

---

[16] 25,000,000 - 517,199,045 = 492,199,045.  Compl. Ex. C; Paccione Decl. Exs. E, F, G.

[17] *Picard v. ADIA*, Adv. Pro. No. 11-2493-cgm ECF 1-5 (copy attached to Paccione Decl. Ex. H).

[18] The Trustee's complaint also alleges that $48,836 was transferred to Lloyds by Sigma on December 22, 2004.  Compl. Ex. E.  This money, however, *also* cannot be traced back to BLMIS funds.  The last transfer from Sentry to Sigma before this December transfer to Lloyds was on September 15, 2004, for $850,000.  Paccione Decl. Ex. E.  However, the last transfer of BLMIS funds into Fairfield Sentry before that date was July 2003 for $25 million.  Between July 2003 and September 14, 2004, Fairfield Sentry distributed $306,349,135 in subsequent transfers to multiple defendants, fully exhausting BLMIS funds before Fairfield Sigma even received its payment.  Paccione Decl. Exs. F, G.  Yet again, there was a budgetary shortfall, this time for $281,349,135.  BLMIS funds were clearly exhausted by the time any money was transferred from Sigma to Lloyds, and the Trustee's allegation fails once more.

2011) (holding that dismissal was warranted where there exists an "'obvious alternative explanation' that provides no grounds for relief") (quoting *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567).

Consequently, the Trustee is left with only this logically flawed syllogism: (i) *some* redemption payments originated with BLMIS; (ii) Lloyds received a redemption payment; and (iii) therefore, Lloyds' redemption payment originated with BLMIS. But showing that *some* redemption payments originated with BLMIS does not prove that any particular one did, and thus is insufficient to state a claim "upon which relief can be granted," because *Twombly* and *Iqbal* *require* courts to dismiss pleadings grounded on logical fallacies. *E.g.*, *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 582 (S.D.N.Y. 2011) (dismissing claims because they were based on a "false syllogism").

Because it is abundantly clear that *some* of the subsequent transfers from Sentry to Lloyds cannot be traced back to BLMIS, the Trustee's claims should be dismissed in full. There must be more than a "mere possibility" that a significant number of the transfers alleged by the Trustee actually originated with BLMIS in order for this Complaint to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. But the Trustee's theory that all the redemption payments are customer property is not merely implausible, it is impossible. This Court has already dismissed implausible claims in which the initial transfers could not be tied to the subsequent transfer nor the subsequent transferee. *See Picard v. Shapiro*, 542 B.R. at 119. The Court should apply the same logic here.

## CONCLUSION

For the reasons stated herein, Lloyds respectfully requests that the Court dismiss the Trustee's Complaint in its entirety.

Dated: February 15, 2022
New York, New York

*/s/ Anthony Paccione*

**KATTEN MUCHIN ROSENMAN LLP**
New York, NY  10022
Telephone: (212) 940-8800
Facsimile: (212) 940-8776
Anthony L. Paccione
Email:  anthony.paccione@katten.com
Mark T. Ciani
Email:  mark.ciani@katten.com

*Attorneys for Defendant*