**KATTEN MUCHIN ROSENMAN LLP**
50 Rockefeller Plaza
New York, New York 10020
(212) 940-8800
*Attorneys for Defendant*

**Hearing Date**: June 15, 2022 at
10:00 A.M.
**Opposition Date**: April 15, 2022
**Reply Date**: May 23, 2022

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,　　　Plaintiff-Applicant,　　　　　　v.　BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,　　　　　Defendant. | **Adv. Pro. No. 08-01789 (CGM)**　**SIPA Liquidation**　**(Substantively Consolidated)** |
| In re:　BERNARD L. MADOFF,　　　　Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,　　　Plaintiff,　　　v.　LLOYDS TSB BANK PLC,　　　　Defendant. | **Adv. Pro. No. 12-01207 (CGM)** |

**REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF DEFENDANT**
**LLOYDS BANK PLC'S MOTION TO DISMISS THE TRUSTEE'S COMPLAINT**

## TABLE OF CONTENT

                                                                                    **Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ...................................................................................................... 1

I.   THE COMPLAINT DOES NOT ADEQUATELY PLEAD AVOIDABILITY
     UNDER F.R.C.P. 8(A) AND 10(C) ............................................................... 1

II.  WHERE, AS HERE, SECTION 546(e) BY ITS TERMS COVERS AN INITIAL
     TRANSFER, AN INNOCENT SUBSEQUENT TRANSFEREE MAY INVOKE
     THE SAFE HARBOR EVEN IF THE INITIAL TRANSFEREE MAY NOT ................ 5

     A.   The Trustee's Attempt to Strip Innocent Subsequent Transferee Defendants
          of Statutory Safe Harbor Protections is Contrary to Law ..................................... 5

     B.   As a Financial Institution Redeeming Investments in Fairfield Sentry,
          Lloyds Is Separately Entitled to the Statutory Safe Harbor's Protection
          Based on Securities Contracts with Fairfield Sentry ........................................... 10

III. THE TRUSTEE HAS NOT JUSTIFIED HIS FAILURE TO PLAUSIBLY
     ALLEGE THAT LLOYDS RECEIVED CUSTOMER PROPERTY ........................... 13

     A.   The Trustee Fails to Meet His Pleading Burden. ................................................. 13

     B.   Tracing Analysis Is Unnecessary Where the Pleadings Negate
          Commingling. ................................................................................................... 15

     C.   The Trustee Has All the Records He Needs ....................................................... 17

     D.   The Trustee Can Only Assert Claims Against Defendants Who Are
          "Transferees" of "Customer Property." ............................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
   599 B.R. 730 (Bankr. S.D.N.Y. 2019) .................................................................................. 14

*Am. Casein Co. v. Geiger (In re Geiger)*,
   446 B.R. 670 (Bankr. E.D. Pa. 2010) ..................................................................................... 2

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................ 13, 15

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................ 13, 15

*CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*,
   393 B.R. 306 (Bankr. W.D.N.Y. 2008) ................................................................................ 19

*Edmondson v. RCI Hospitality Holdings, Inc.*,
   No. 16-CV-22422020, WL 1503452 (S.D.N.Y. Mar. 30, 2020) ......................................... 17

*Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*,
   No. 08–15051, 2014 WL 47774 (Bankr. S.D.N.Y. Jan. 3, 2014) ....................................... 17

*Kelley v. Westford Special Situations Master Fund, L.P.*,
   No. 19-CV-10732020, WL 3077151 (D. Minn. June 10, 2020) .......................................... 16

*In re O'Malley*,
   601 B.R. 629 (Bankr. N.D. Ill. 2019) .................................................................................... 18

*Picard v. ABN AMRO Bank (Ireland) Ltd. (In re BLMIS)*,
   505 B.R. 135 (Bankr. S.D.N.Y. 2013) .................................................................................. 11

*Picard v. Avellino (In re Bernard L. Madoff Inv. Sec. LLC)*,
   557 B.R. 89 (Bankr. S.D.N.Y. 2016) ..................................................................................... 9

*Picard v. BNP Paribas S.A. (In re Madoff)*,
   594 B.R. 167 (Bankr. S.D.N.Y. 2018) .................................................................................... 9

*Picard v. Ceretti (In re Bernard L. Madoff Inv. Sec. LLC)*,
   No. 08–99000, 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015) .................................. 9

*Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*,
   2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012) ................................................. 14, 15, 17

*Picard v. Cohmad Sec. Corp. (In re BLMIS) ("Cohmad I")*,
    454 B.R. 317 (Bankr. S.D.N.Y. 2011).......................................................................13, 14, 18

*Picard v. Cohmad Sec. Corp.*,
    No. 09-1305 ECF 82-2 (Bankr. S.D.N.Y. Oct. 8, 2009)................................................*passim*

*Picard v. Est. of Mendelow*,
    560 B.R. 208 (Bankr. S.D.N.Y. 2016).................................................................................9

*Picard v. Fairfield Inv. Fund Ltd. (SIPC v. Bernard L. Madoff Inv. Sec. LLC)*,
    No. 08-01789, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ...........................*passim*

*Picard v. Magnify (In re Bernard L. Madoff Inv. Sec. LLC), Inc.*,
    583 B.R. 829 (Bankr. S.D.N.Y. 2018).................................................................................9

*Picard v. Mayer (In re BLMIS)*,
    No. 08-01789, 2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021)...................................18

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
    515 B.R. 117 (Bankr. S.D.N.Y. 2014)..........................................................................*passim*

*Picard v. Merkin (In re BLMIS)*,
    581 B.R. 370 (Bankr. S.D.N.Y. 2017)...............................................................................16

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*,
    542 B.R. 100 (Bankr. S.D.N.Y. 2015)...........................................................................9, 15

*Picard v. Square One Fund Ltd. (In re Madoff)*,
    No. 10-4330 (Bankr. S.D.N.Y. May 29, 2019) ...................................................................9

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
    501 B.R. 26 (S.D.N.Y. 2013) .........................................................................................2, 3

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib. Inc.)*,
    379 B.R. 5 (Bankr. E.D.N.Y. 2007) ..................................................................................14

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
    No. 12-MC-115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)....................................*passim*

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
    No. 12-MC-115 ECF 289 (S.D.N.Y. Aug. 10, 2012) ...........................................................6

*SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*,
    620 B.R. 505 (Bankr. S.D.N.Y. 2020)................................................................................9

*U.S. v. Henshaw*,
    388 F.3d 738 (10th Cir. 2004) .........................................................................................16

*In re UBS AG Securities Litigation*,
  No. 07-CV-112252012,  WL 4471265  (S.D.N.Y. 2012), *aff'd on other grounds
  sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752
  F.3d 173 (2d Cir. 2014) ...................................................................................2, 5

*Wright v. Ernst & Young LLP*,
  152 F.3d 169 (2d Cir. 1998) .............................................................................4

## Statutes

11 U.S.C. § 546(e) ..............................................................................*passim*

11 U.S.C. § 546(g) ........................................................................................11

11 U.S.C. § 548(a) ..........................................................................................3

11 U.S.C. § 550 ............................................................................................12

11 U.S.C. § 550(a)(2) ....................................................................................18

15 U.S.C. § 78aaa *et seq.* ................................................................................2

## Rules

Fed. R. Civ. P. 8(a) ............................................................................. 1, 2, 3, 4

Fed. R. Civ. P. 10(c) ........................................................................... 1, 2, 3, 4

Fed. R. Civ. P. 12(b)(6) ...................................................................................1

Fed. R. Civ. P. 15 ...........................................................................................4

Defendant Lloyds TSB Bank PLC, now known as Lloyds Bank plc ("Lloyds" or "Defendant"), respectfully submits this reply memorandum of law in further support of its motion to dismiss the Complaint, ECF 1 (the "Complaint" or "Compl."),[1] filed by plaintiff Irving H. Picard, Trustee (the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under Federal Rule of Civil Procedure Rule 12(b)(6) (the "Motion to Dismiss").[2]

## PRELIMINARY STATEMENT

The Trustee's opposition ("Opposition" or "Opp.") presents no convincing argument to sustain the Trustee's case against Lloyds. The Complaint fails for three reasons. First, the Trustee fails to plead the avoidability of transfers by BLMIS to the alleged initial transferees, Fairfield Sentry Limited ("Sentry") and Fairfield Sigma Limited ("Sigma"). To prevail, the Trustee must set forth specific allegations, with sufficient detail, that the alleged initial transfers were avoidable. Second, the Section 546(e) safe harbor prohibits the Trustee's claims. Indeed, the binding case law in the Second Circuit compels a dismissal of the Trustee's claim as it concerns all but a small portion of the transfers at issue in this case. Third, the Trustee fails to include allegations demonstrating that the transfers he seeks to recover originated as BLMIS customer property.

## ARGUMENT

### I.  THE COMPLAINT DOES NOT ADEQUATELY PLEAD AVOIDABILITY UNDER F.R.C.P. 8(A) AND 10(C)

In its moving papers, Lloyds demonstrated that the Complaint did not comply with either Federal Rule of Civil Procedure Rule 8(a)'s requirement of "a short and plain statement of the claim showing that the pleader to relief" or Rule 10(c)'s limitations on incorporation by reference.

---

[1] Unless otherwise noted, all ECF citations refer to Adv. Pro. No. 12-1207 (CGM).

[2] Adv. Pro. No. 12-1207, ECF 88.

1

Fed. R. Civ. P. 8(a); Fed. R. Civ. P. 10(c). In responding to Lloyds' argument, the Trustee says only that incorporation by reference is permissible, citing *Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670 (Bankr. E.D. Pa. 2010). But Lloyds had anticipated the Trustee's reliance and explained how that case is distinguishable on its facts from this one. The Trustee's Opposition also ignores the significant limitations of incorporation by reference *Geiger* and other case law imposed, described in detail in Lloyds' Motion to Dismiss. The Trustee neither addressed Lloyds' Rule 10(c) points (that the Complaint improperly incorporates a pleading from another action, improperly incorporates an entire pleading, and improperly fails to specify the relevant allegations) nor contested the applicability of those points to the facts of this case and, therefore, effectively conceded those points. *In re UBS AG Securities Litigation*, No. 07-CV-112252012, 2012 WL 4471265, at *11 (S.D.N.Y. 2012) (finding Plaintiff "concede[d] through silence" Defendant's assertion by failing to respond to it in opposition brief), *aff'd on other grounds sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014).

The Trustee's Opposition to Lloyds' Rule 8(a) argument fares no better. *First*, he argues the District Court has ruled that the incorporated allegations of the Fairfield Amended Complaint adequately alleged avoidability of the initial transfer. Opp. 7, citing *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 501 B.R. 26, 29, 36 (S.D.N.Y. 2013). But that argument is misguided since the District Court's decision addressed a different legal issue, and the block quote the Trustee provides (Opp. 7-8) is taken out of context. The decision involved a consolidated proceeding in which the District Court withdrew the reference to decide several preliminary legal issues. *Sec. Inv. Protec. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 12-MC-115 (JSR), 501 B.R. 26 (S.D.N.Y. 2013). Judge Rakoff summarized the issue before him as follows:

> The question raised in this consolidated proceeding is whether this limitation requires Irving Picard (the "Trustee") — the Trustee appointed under the Securities

2

> Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa et seq., to administer the estate
> of Bernard L. Madoff Investment Securities LLC ("Madoff Securities") — to
> obtain a judgment of avoidance of Madoff Securities' transfers before he can
> recover those transfers from a subsequent transferee, and, if so, against whom he
> must obtain that judgment.

*Id*. at 28.   After extensive analysis, Judge Rakoff ruled that the Trustee may seek avoidance of a

subsequent transfer without first obtaining a judgment against the initial transferee avoiding the

initial transfer.  *Id*. at 37.   In only one sentence later in the opinion, which the Trustee quotes in

part, did Judge Rakoff mention anything about the adequacy of the complaint, and that sentence

began with the phrase, which the Trustee omitted, "Applying these principles [announced in the

opinion] to a representative case . . ."  However, the defendants in that case had not challenged the

propriety or scope of the incorporation, and Judge Rakoff did not delve into those questions, let

alone decide the Rule 8(a) and 10(c) issues that Lloyds presents.  The quote is taken out of context

and is dictum.   It relates to an earlier version of the complaint.   Therefore, it does not bind this

Court as to the law of this case or otherwise.

　　　　Moreover, Judge Rakoff's statement does not address Lloyds' argument.  Lloyds does not

claim that the Fairfield Amended Complaint insufficiently alleges avoidability of the initial

transfers.  Indeed, the Trustee's statement that "[t]he purpose of incorporating the complaint" is to

"mak[e] a *prima facie* showing of the common issue of avoidability of initial transfers under

Section 548(a)" misses the point entirely.  Opp. 9.  Lloyds' point is that the Fairfield Amended

Complaint alleges much more than avoidability, in order to meet Rule 8(a)(2)'s requirement of a

short and plain statement of the claim showing that the pleader is entitled to relief.   By

incorporating the entire Fairfield Amended Complaint, the Trustee puts at issue all claims he

asserted against Sentry and the other Fairfield defendants, including a plethora of irrelevant

allegations and exhibits that have nothing to do with avoidability.   Lloyds should not be required

to respond to the entire complaint against the Fairfield defendants to be able to defend the Trustee's claim against Lloyds.

The Trustee's opposition again misses the mark. It is no answer to say that Lloyds may respond only to those allegations in the Fairfield Amended Complaint that address avoidability. A defendant should not be required to guess which of the plaintiff's allegations apply and which do not: the plaintiff is required to state a claim in a short and plain statement of facts entitling the plaintiff to relief, to which the defendant can then respond.

*Second*, the Trustee argues that even if his incorporation were improper, "this Court may take judicial notice of its holding that the Fairfield Second Amended Complaint sufficiently alleges the avoidability of the initial transfers." Opp. 11. Judicial notice cannot save the Trustee's Complaint. This Court's *Fairfield* decision to which the Trustee refers addressed the Fairfield Second Amended Complaint, not the Fairfield Amended Complaint that the Trustee's Complaint attempts to incorporate by reference. Moreover, judicial notice, particularly of a court decision, cannot substitute for allegations in a complaint, which the defendant can admit or deny, thus framing the facts and issues in dispute. And the Trustee's request that the Court take judicial notice to fill in missing allegations resulting from his failure to plead or incorporate properly is tantamount to amending the complaint without compliance with Rule 15. *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (plaintiff may not add allegations in her memorandum opposing motion to dismiss). Judicial notice does not relieve the Trustee of his burden to meet the pleading requirements of the Federal Rules of Civil Procedure and applicable case law concerning incorporation by reference.

The Trustee requests leave to amend his Complaint if the Court sustains Lloyds' Rule 8(a) and Rule 10(c) objection. Lloyds does not object to what will amount to a "without prejudice

dismissal" so long as what is subsequently alleged is a pleading containing a short and plain statement giving it sufficient notice of the claims the Trustee asserts against it, without the substantial extraneous material from the improper wholesale incorporation by reference.

## II.    WHERE, AS HERE, SECTION 546(E) BY ITS TERMS COVERS AN INITIAL TRANSFER, AN INNOCENT SUBSEQUENT TRANSFEREE MAY INVOKE THE SAFE HARBOR EVEN IF THE INITIAL TRANSFEREE MAY NOT

In his Opposition, the Trustee does not dispute that BLMIS was a stockbroker, that Sentry was a financial institution, or that the initial transfer from BLMIS to Sentry was a settlement payment or a transfer in connection with a securities contract between Sentry and its alleged investors like Lloyds, made for the benefit of a financial institution. Opp. 12-19. Accordingly, he has conceded those points, *see In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *11 (S.D.N.Y. 2012), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014), and he may not contest that Section 546(e) applies by its terms to all of Sentry's alleged subsequent transfers of BLMIS's initial transfers made more than two years before BLMIS's bankruptcy filing, including the March 15, 2005 transfer made by Sentry to Lloyds. Moreover, the Trustee does not dispute that Lloyds did not have actual knowledge of Madoff's fraud.

### A.    The Trustee's Attempt to Strip Innocent Subsequent Transferee Defendants of Statutory Safe Harbor Protections is Contrary to Law.

The Trustee argues that under Judge Rakoff's ruling in *SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12-MC-115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"), "a subsequent transferee cannot assert the protections of Section 546(e) where the Trustee adequately pleads the initial transferee's actual knowledge." Opp. 16. As the Trustee would have it, *Sentry's* alleged actual knowledge of Madoff's fraud bars not only Sentry, but also

subsequent transferees from invoking the safe harbor for initial transfers made more than two years

before bankruptcy.[3]

On the contrary, *Cohmad* directly supports the safe harbor's applicability to innocent

subsequent transferees and requires that Lloyds' motion to dismiss be granted. In a ruling that he

directed be applied to many adversary proceedings, *see Cohmad*, 2013 WL 1609154, at *10,[4] and

which therefore was not "dicta," (Opp. 16), Judge Rakoff held that the relevant "actual knowledge"

is that of the party from which the Trustee seeks recovery:

> (1) Where the Trustee has sought to avoid transfers to an *initial transferee*,
> the avoidance of which would otherwise be barred by Section 546(e) . . . the *initial
> transferee* will not be able to prevail on a motion to dismiss some or all of the
> Trustee's avoidance claims simply on the basis of the Section 546(e) "safe harbor"
> *if* the Trustee has alleged that the *initial transferee* had actual knowledge of Madoff
> Securities' fraud; and
> (2) Where the Trustee has sought to recover transfers made to a *subsequent
> transferee*, the avoidance of which would otherwise be barred by Section 546(e) as
> to the initial transferee, the *subsequent transferee* will not be able to prevail on a
> motion to dismiss some or all of the Trustee's avoidance claims simply on the basis
> of the Section 546(e) "safe harbor" *if* the Trustee has alleged that the *subsequent
> transferee* had actual knowledge of Madoff Securities' fraud.

*Cohmad*, 2013 WL 1609154, at *1 (emphasis added except for "if").

While paragraph (2) above addressed whether a subsequent transferee would be precluded

from asserting the safe harbor where the *subsequent transferee* had actual knowledge of Madoff's

fraud, it pointedly did *not* prevent a subsequent transferee from asserting the safe harbor where the

---

[3] The Trustee devotes most of his brief on Section 546(e) to a straw man argument that the safe harbor does not apply directly to subsequent transfers, and that an alleged subsequent transferee can invoke Section 546(e) only to the extent the safe harbor applies to the alleged initial transfer. Lloyds has not contended otherwise and bases its safe harbor defense on Section 546(e)'s applicability to the alleged initial transfer from BLMIS to Sentry. The real issue on this motion is not whether the safe harbor applies to the initial *transfer* (it does), but which *transferees* can invoke it— whether the actual knowledge of the initial transferee can be used to strip the safe harbor's protection from a subsequent transferee that does not have actual knowledge.

[4] *See* Amended Notice of Motion to Dismiss, *SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12-MC-115 ECF 289 (S.D.N.Y. Aug. 10, 2012) (listing proceedings involved in *Cohmad*).

*initial transferee* had actual knowledge of Madoff's fraud. The reason for this is displayed in

Judge Rakoff's explanation of his ruling, in which he stated:

> [I]f the allegations adequately allege that a *defendant* had actual knowledge of Madoff's scheme, *such a transferee stands in a different posture from an innocent transferee, even as concerns the application of Section 546(e)*. . . [T]he purpose of this section is "minimiz[ing] the displacement caused in the commodities and securities markets in the event of a major bankruptcy affecting those industries." . . . In the context of Madoff Securities' fraud, that goal is best achieved by protecting the reasonable expectations of investors who believed they were signing a securities contract; but a transferee who had actual knowledge of the Madoff "Ponzi" scheme did not have any such expectations, but was simply obtaining moneys while he could. Neither law nor equity permits such a person to profit from a safe harbor intended to promote the legitimate workings of the securities markets and the reasonable expectations of legitimate investors.
>
> * * *
>
> [T]o the extent that an innocent customer transferred funds to a *subsequent transferee who had actual knowledge of Madoff Securities' fraud*, that subsequent transferee cannot prevail on a motion to dismiss on the basis of Section 546(e)'s safe harbor. Again, this follows from the general principles enunciated earlier in this Opinion. A defendant cannot be permitted to in effect launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of Section 546(e). . . . In sum, if the Trustee sufficiently alleges that *the transferee from whom he seeks to recover a fraudulent transfer* knew of Madoff Securities' fraud, *that transferee* cannot claim the protections of Section 546(e)'s safe harbor.

*Id*. at *4, 7 (emphasis added; citations omitted).

In these passages, Judge Rakoff announced an exception to the safe harbor for subsequent

transferees parallel to (not greater than) the one he announced for initial transferees, precluding

Section 546(e) from being invoked in a situation in which it otherwise would apply if doing so

would benefit a defendant (whether an initial or subsequent transferee) with actual knowledge that

the funds it received had been fraudulently transferred.[5]

---

[5] The Trustee's brief concedes this when it states that "the point of the actual knowledge exception . . . is to restrict any transferees with actual knowledge from hiding behind the safe harbor." Opp. 17.

*Cohmad* established that when an initial transferee has actual knowledge of the fraud, and thus knows there is no bona fide settlement payment or securities contract, it cannot invoke the safe harbor to protect the initial transfer. Similarly, when a subsequent transferee has actual knowledge of the fraud, it cannot invoke the safe harbor that would otherwise apply to the initial transfer, even if the initial transferee was "innocent," because the subsequent transferee knows there is no bona fide settlement payment or securities contract, and allowing the culpable subsequent transferee to invoke the safe harbor would permit it to "launder . . . fraudulently transferred funds through a nominal third party," i.e., the initial transferee. But where the subsequent transferee lacks actual knowledge of the fraud, it has a "reasonable expectation" that it is receiving a settlement payment pursuant to a securities contract. That reasonable expectation should be protected by the safe harbor that Congress enacted.

In *Picard v. Fairfield Inv. Fund Ltd. (SIPC v. Bernard L. Madoff Inv. Sec. LLC)*, No. 08-01789, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021), this Court ruled consistently with the preceding interpretation of Judge Rakoff's ruling. It began by quoting *Cohmad*'s statement that "if the Trustee sufficiently alleges that the transferee from whom he seeks to recover a fraudulent transfer knew of Madoff Securities' fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor," *id*. at *4 (citing *Cohmad*, 2013 WL 1609154, at *7). This Court then dismissed the Trustee's claim against Corina Noel Piedrahita for subsequent transfers she received from various Fairfield entities[6] because the Trustee "failed to plead individualized factual allegations demonstrating that [she] had independent actual knowledge of the BLMIS fraud." *Fairfield Inv. Fund*, 2021 WL 3477479, at *6. The Court dismissed the subsequent transferee

---

[6] The Trustee's complaint against Corina Noel Piedrahita alleged that she had received subsequent transfers from, among others, Fairfield Greenwich Limited, which in turn had received subsequent transfers from Sentry. *See* Second Am. Compl., *Fairfield Inv. Fund*, No. 09-1239 ECF 286-12, at 5, *id*. ECF 286-23.

claim despite earlier concluding that the operative complaint alleged that various initial transferees, including Sentry, had actual knowledge of Madoff's fraud. *Id.* at *4.[7] Accordingly, this Court's ruling in *Fairfield Inv. Fund* compels rejection of the Trustee's misinterpretation of *Cohmad* and dismissal of his claim against Lloyds.[8]

The Trustee also cites *Picard v. BNP Paribas S.A. (In re Madoff)*, 594 B.R. 167 (Bankr. S.D.N.Y. 2018), and *SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*, 620 B.R. 505 (Bankr. S.D.N.Y. 2020), in support of his argument, (Opp. 15-17), but neither case discussed whether the initial transferee's actual knowledge bars a subsequent transferee's invocation of Section 546(e). Instead, both cases focused on the same straw man argument raised by the Trustee here. *See BNP Paribas*, 594 B.R. at 197 ("the safe harbor is a defense to the avoidance of the *initial* transfer"); *SunEdison*, 620 B.R. at 514 ("the safe harbor defense only applies by its terms to the initial transfer"). And to the extent *BNP Paribas* might be read to imply that an innocent

---

[7] The Court proceeded to address the actual knowledge of each of the various subsequent transferees even after concluding that one or more of them, as agents and principals of the Fairfield Funds, had actual knowledge that would be imputed to the Fairfield Funds as initial transferees. *Fairfield Inv. Fund*, 2021 WL 3477479, at *4-6. This would have been unnecessary had the actual knowledge of the initial transferee been determinative in denying the use of the safe harbor by the subsequent transferees.

[8] The Trustee asserts that "this Court has . . . applied the actual knowledge 'exception' on numerous occasions" (Opp. 13), but none of the cases he cites in his accompanying footnote (*id.* n. 10) barred an innocent subsequent transferee from invoking the safe harbor based on the actual knowledge of the initial transferee. *See Fairfield Inv. Fund*, 2021 WL 3477479, at *7 (dismissing innocent subsequent transferee); *Picard v. Square One Fund Ltd. (In re Madoff)*, No. 10-4330 (Bankr. S.D.N.Y. May 29, 2019), ECF 181, at 41 (complaint's allegations "fail to spell out a claim of actual knowledge" against initial transferee defendant); *Picard v. Magnify (In re Bernard L. Madoff Inv. Sec. LLC), Inc.*, 583 B.R. 829 (Bankr. S.D.N.Y. 2018) (no subsequent transfer claims in complaint at No. 10-5279 ECF 143); *Picard v. Est. of Mendelow*, 560 B.R. 208, 226, 229 (Bankr. S.D.N.Y. 2016) (sustaining allegations of initial transferees' actual knowledge; dismissing subsequent transferee claims); *Picard v. Avellino (In re Bernard L. Madoff Inv. Sec. LLC)*, 557 B.R. 89, 116, 125-26 (Bankr. S.D.N.Y. 2016) (not addressing precise question in light of certain concessions and lack of challenges by defendants); *Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (dismissing subsequent transfer claims); *Picard v. Ceretti (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 08–99000, 2015 WL 4734749, at *1, 10 (Bankr. S.D.N.Y. Aug. 11, 2015) (subsequent transfer claims not subject of motion); *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117, 141, 153 (Bankr. S.D.N.Y. 2014) (applying safe harbor to subsequent transfers beyond two-year period because complaint failed to plausibly allege transferees' actual knowledge).

subsequent transferee cannot invoke the safe harbor, it is inconsistent both with *Cohmad* and this Court's decision in *Fairfield Inv. Fund*.

The Trustee argues that our interpretation would "allow an initial transferee—who had knowledge of the fraud and was unable to satisfy a judgment (like Sentry)—to place fraudulently transferred moneys with a subsequent transferee and out of the reach of a Trustee." Opp. 17. Such speculation has no place here. Sentry did not initiate the redemption; Lloyds did. And since Lloyds is not alleged to have had actual knowledge of Madoff's fraud, its dismissal is squarely in line with *Cohmad* and other precedent.

> **B.    As a Financial Institution Redeeming Investments in Fairfield Sentry, Lloyds Is Separately Entitled to the Statutory Safe Harbor's Protection Based on Securities Contracts with Fairfield Sentry.**

In *Cohmad*, Judge Rakoff recognized a separate, alternative way in which the Section 546(e) safe harbor protects certain subsequent transferees (including financial institutions) that is not at all dependent on the BLMIS-Fairfield Sentry account agreements as the relevant "securities contracts." Section 546(e) does not require that "the securities contract that the transfer is made 'in connection with' be a securities contract with the debtor," but only "that the transfer relate to that securities contract." *Cohmad*, 2013 WL 1609154, at *9. Accordingly, where a BLMIS customer (such as Fairfield Sentry) made a "withdrawal" from its BLMIS account that was allegedly "caused by [its] payment obligations to a subsequent transferee under a securities contract," the initial transfer "could qualify" under Section 546(e) "as 'related to' that later transaction under the securities contract." *Id*.

It is undisputed that Lloyds and Fairfield Sentry qualify as "financial institutions" based on the Complaint and uncontested judicially noticeable materials. *See* Mem. 13-15.[9] And the Trustee is bound by his allegations that BLMIS' initial transfers were made to Sentry (at its request) for the purpose of funding Lloyds' redemption requests. *See* Mem. 15. Accordingly, the facts alleged here "fit within the plain terms of Section 546(e)." *Cohmad*, 2013 WL 1609154, at \*9; *see* Mem. 18. *Cohmad* thus provides a separate, second basis for the statutory safe harbor to protect Lloyds, premised on the Sentry Articles of Association, rather than the BLMIS-Sentry customer agreements, as the relevant "securities contract."

Because this second, alternative path to Section 546(e) protection does not implicate any securities contract Fairfield Sentry had with BLMIS, Fairfield Sentry's alleged knowledge of the Madoff/BLMIS Fraud (and that its customer agreements with BLMIS were not real securities contracts) is irrelevant to this analysis. The Trustee does not even argue that the Articles—the relevant "securities contract" in the alternative *Cohmad* analysis—was anything but an actual securities contract pursuant to which real securities were redeemed and sold. Accordingly, Fairfield Sentry's alleged actual knowledge of the Madoff/BLMIS Fraud is irrelevant. Consequently, it poses no impediment to applying Section 546(e) based on the Articles as the relevant "securities contract." *Cf. Picard v. ABN AMRO Bank (Ireland) Ltd. (In re BLMIS)*, 505 B.R. 135, 142 n.6 (Bankr. S.D.N.Y. 2013) (explaining that "the issue of knowledge is irrelevant to the application of section 546(g)," the analogous safe harbor for transfers made in connection with swap agreements, where "there is no dispute that the swap transactions actually occurred, [and] so the mindset of the participants is irrelevant").

---

[9] "Mem." refers to Lloyds Bank Plc's Memorandum of Law In Support of its Motion to Dismiss the Trustee's Complaint, ECF 88 (Bankr. S.D.N.Y. Feb. 15, 2022).

The Trustee disparages this second *Cohmad* holding as mere "dicta." Opp. 16. Not so. Judge Rakoff explicitly ordered that "to the extent a defendant claims protection under Section 546(e) under a separate securities contract as a financial participant or financial institution, ***the Bankruptcy Court must adjudicate those claims in the first instance consistent with this Opinion***." *Cohmad*, 2013 WL 1609154, at *10 (emphasis added); *see also id.* at *10 n.6 (instructing that the issue must be determined "on the basis of the specific allegations in the Trustee's complaint in a given adversary proceeding"). And this adversary proceeding was one of those "listed in Exhibit A of item number 119 on the docket of 12 Misc. 115 to be returned to the Bankruptcy Court for further proceedings consistent with this Opinion and Order." *Id.*; *see In re Madoff Sec.*, No. 12-MC-115 (S.D.N.Y. May 16, 2012) ECF No. 119, Ex. A line 28.

The Trustee's insistence that "Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees" (Opp. 15) misses the mark. The Trustee did not litigate this issue in his avoidance action against Sentry, but instead settled with that entity's liquidators. In that circumstance, *"the subsequent transferee is nonetheless entitled to raise a Section 546(e)* defense against recovery of those funds." *Cohmad*, 2013 WL 1609154, at *7; *accord, Fairfield Inv. Fund,* 2021 WL 3477479, at *3. And in this action, the Trustee has conceded that the safe harbor's prerequisites have been satisfied.

The Trustee argues that accepting Lloyds' interpretation of *Cohmad* "would effectively eliminate the point of the actual knowledge exception—which is to restrict any transferee with actual knowledge from hiding behind the safe harbor." Opp. 17. He could not be more mistaken. The Trustee appears to have forgotten that he does ***not*** allege that Lloyds had actual knowledge of the Madoff/BLMIS fraud. Far from "hiding" behind anything, Lloyds is merely claiming protections that Congress gave it, which neither *Cohmad* nor any other judicial decision has taken

away. At a minimum, all of the Trustee's claims based on transfers beyond the two-year lookback period should be dismissed.

## III.    THE TRUSTEE HAS NOT JUSTIFIED HIS FAILURE TO PLAUSIBLY ALLEGE THAT LLOYDS RECEIVED CUSTOMER PROPERTY

Lloyds' Motion to Dismiss demonstrates that the Trustee does not plausibly allege that any of the purported subsequent transfers contain customer property and that in many cases the Trustee's own allegations render it impossible that they did. The Trustee's opposition waves off the fatal defect—never even bothering to dispute Lloyds' central point that the Trustee has alleged billions of dollars more in subsequent transfers of BLMIS customer property from Sentry than he alleges was ever transferred to Sentry. This is not a matter of requiring "tracing" or a "dollar-for-dollar accounting." Nor is the issue now one for expert opinion. Whether the Complaint plausibly alleges that each transfer at issue contained customer property is a *legal* question to be resolved on a motion to dismiss. The Trustee's approach of ignoring his responsibilities under *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57, 570 (2007), would impose enormous delay and expense upon defendants and burden the Court with administering and adjudicating time-consuming, baseless claims not plausibly related to the recovery of customer property.

### A.    The Trustee Fails to Meet His Pleading Burden.

The Trustee does not deny that he has failed to tie any of the thousands of alleged initial transfers from BLMIS to Sentry to any of the alleged subsequent transfers to Lloyds. Instead, he argues he does not have to (Opp. 21), even though his own authorities demonstrate otherwise. For example, in *Picard v. Cohmad Sec. Corp. (In re BLMIS) ("Cohmad I")*, 454 B.R. 317 (Bankr. S.D.N.Y. 2011), this Court upheld the pleading of the subsequent transfers because "the Trustee alleges that the amounts of Commissions specified by BLMIS on the Payment Schedules

13

*correspond* to the amounts paid by BLMIS to Cohmad and, subsequently, to the Cohmad Representatives". *Id*. at 341 (emphasis added); *see also* First Am. Compl, Exs. 2, 4, *Picard v. Cohmad Sec. Corp.*, No. 09-1305 ECF 82-2, 82-4 (Bankr. S.D.N.Y. Oct. 8, 2009) (commissions due to eight Cohmad Representatives computed to average $214,722.03 per month from May to December 2008, corresponding exactly to monthly payments from BLMIS to Cohmad of $214,722.03 per month during those months). In other words, the *Cohmad* complaint linked particular initial transfers from BLMIS to particular subsequent transfers, in stark contrast to the Trustee's vague generalities here.

Likewise, in *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib. Inc.)*, 379 B.R. 5 (Bankr. E.D.N.Y. 2007), the Court noted that the linkage between the initial and subsequent transfers was pleaded in the complaint: "The funds transferred by the Controlled Entities and Eurofactors in connection with the Kent Avenue Condominiums were preceded by fraudulent transfers of funds from Allou *in amounts sufficient to cover the transfers* by the Controlled Entities and Eurofactors." *Id*. at 30 (quoting Amended Complaint, Adv. Pro. No. 05-08538 ECF 19 ¶¶ 53, 56; emphasis added); *see also id*. at 13 (noting initial and subsequent transfers that occurred during 13-day period); *see also Picard v. Merkin (in re BLMIS)*, 515 B.R. 117, 150 (Bankr. S.D.N.Y. 2014) ("*Merkin I*") ("several subsequent transfers took place contemporaneously or shortly after an initial transfer . . . *implying linkage*"; emphasis added); *45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 736-37, 747 (Bankr. S.D.N.Y. 2019) (complaint alleged that two payments totaling $29.4 million were deposited into an account and that $29.4 million was transferred out the same day and next business day; citing Complaint ¶¶ 60-69).[10]

---

[10] In *Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)("Ellerin")*, 2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012), the Trustee's submissions showed, for example, that defendant Janet Winters was issued a $6,200 check from the

Thus, the cases that say that a Trustee "need only allege sufficient facts to show the relevant pathways through which the funds were transferred," *e.g.*, *Ellerin*, 2012 WL 892514, at *3, do not relieve the Trustee of his obligation under *Iqbal* and *Twombly* to plead a plausible linkage between the initial and subsequent transfers. None of those cases upheld a pleading where, based on the Trustee's own allegations, the purported pathway is a dead end, like in this case. Here, the Trustee has alleged that prior Sentry distributions to other investors had exhausted all the BLMIS money at Sentry *prior* to the defendant's redemption. None provides a justification for suing to recover billions of dollars more than the total customer property in question.

As such, when the Trustee alleges only dates and amounts of multiple initial and alleged subsequent transfers without any connection between them, he has not satisfied the pleading standards set in *Iqbal*, *Twombly*, and *Picard v. Shapiro (In re BLMIS)*, 542 B.R. 100 (Bankr. S.D.N.Y. 2015). *Shapiro*'s requirement that the Trustee "allege[s] facts that support the inference that the funds at issue originated with the BLMIS" and "tie any initial transfer to any subsequent transfer or Subsequent Transferee," 542 B.R. at 119, is not a requirement of dollar-for-dollar accounting or tracing individual dollar amounts, but the bare minimum necessary to notify defendants of the Trustee's claims so they can prepare their defenses.

**B.    Tracing Analysis Is Unnecessary Where the Pleadings Negate Commingling.**

The Trustee engages in misdirection when he argues that the commingling of BLMIS and non-BLMIS money at Sentry relieves him of the obligation to allege a plausible linkage between initial and subsequent transfers. As made clear in the Motion to Dismiss, the Trustee's pleadings establish significant periods of time when there was no commingling because *there was no*

---

Charles Ellerin Irrevocable Gift Giving Trust on October 25, 2005, two weeks after the Trust deposited $25,000 from BLMIS. *Ellerin*, No. 10-5219 ECF 12-1, at 93-94; *id*. ECF 1, Ex. B, at 1.

15

*customer property left at Sentry*—it had all been paid out previously. Thus, the payments to Lloyds must have come from another source, not from commingled BLMIS and other funds.

For example, as set forth in Lloyds' Motion to Dismiss, the Trustee alleges that on May 9, 2003, BLMIS transferred $40 million to Sentry. At the same time, the Trustee's allegations that redemption payments were comprised entirely of customer property—while implausible— necessarily mean that this transfer was spent on redemptions by no later than June 2003. *See* Paccione Decl. ¶ 10; Paccione Decl. Exs. E, F, G; Compl. Ex. C. Then, on July 11, 2003, BLMIS transferred $55 million to Sentry, which the Trustees' pleadings allege was fully exhausted by no later than July 16, 2003. *See* Paccione Decl. ¶ 10; Paccione Decl. Exs. E, F, G; Compl. Exs. B, C. And on July 22, 2003, BLMIS transferred $25 million to Sentry, which the Trustee's pleadings allege was spent by no later than September 2003. *See* Paccione Decl. ¶ 10; Paccione Decl. Exs. E, F, G; Compl. Exs. B, C. After that, the Trustee alleges that there were *no* transfers from BLMIS to Sentry until April 1, 2005. S*ee* Compl. Ex. B. Thus, having used up all funds from BLMIS, there could have been no commingling between October 2003 and April 1, 2005.[11]

Tracing is only an issue where funds are commingled. *See Picard v. Merkin (In re BLMIS)*, 581 B.R. 370, 384-85 (Bankr. S.D.N.Y. 2017) ("*Merkin II*") (tracing necessary where subsequent transfers originated from commingled accounts); *U.S. v. Henshaw*, 388 F.3d 738, 739 (10th Cir. 2004) (same). Because the Trustee's allegations *negate* the existence of commingling (or customer property) for extensive time periods, the Trustee's authorities for the proposition that commingling does not defeat tracing (*see Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-CV-

---

[11] Of course, the long gap between the July 22, 2003 and April 1, 2005 transfers – during which the Trustee alleges that Sentry paid approximately $600 million in redemptions – merely highlights the implausibility of any allegation that transfers to Lloyds contained customer property, especially when the Trustee alleges that Sentry withdrew funds from BLMIS "in order to pay" redemption payments. *See* Trustee's Fairfield Amended Complaint ¶¶ 53, 58, 63, 71, 76, 80, 85, 100, 104, 109, 129, 141, 159.

10732020, WL 3077151, at *4 (D. Minn. June 10, 2020); *Ellerin*, 2012 WL 892514, at *3), or that claims may proceed even though tracing may ultimately prove difficult (*see Merkin I*, 515 B.R. at 152; *Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*, No. 08–15051, 2014 WL 47774, at *15 (Bankr. S.D.N.Y. Jan. 3, 2014)), are irrelevant. The Trustee cannot plausibly allege that BLMIS money was commingled at Sentry when his own allegations demonstrate there was no BLMIS money left at Sentry.

Contrary to the Trustee's assertion, there is no undisclosed expert methodology here—only arithmetic. The Trustee alleges that every single redemption payment from Sentry during the relevant period was comprised entirely of customer property; therefore, each redemption necessarily decreased the amount of customer property left at Sentry by the amount redeemed. *See* Paccione Dec. Ex. E, F, G; Compl. Ex. C. All Lloyds does is subtract those redemptions from the amounts received from BLMIS—hardly the province of experts. *See Edmondson v. RCI Hospitality Holdings, Inc.*, No. 16-CV-2242, 2020 WL 1503452, at * 6 (S.D.N.Y. Mar. 30, 2020) ("Simple arithmetic, such as ordinary multiplication, is a paradigmatic example of the type of everyday activity that goes on in the normal course of human existence.") (citations and quotation marks omitted).

C.    **The Trustee Has All the Records He Needs.**

Seeking to excuse his failure to plead a *prima facie* case, the Trustee argues that he needs discovery from Sentry's management. But the Trustee cannot overcome Lloyds' showing that, for over a decade, he has had access to every record he needs.

First, the Trustee claims that he "does not have all of the Fairfield Funds' books and records." But he does not articulate *what* he needs that he does not have, and this bald assertion is belied by his own pleadings detailing *thousands* of alleged transfers from Sentry. *See* Paccione Decl. Exs. E, F, G.

17

Next, he complains that discovery from the FGG defendants is ongoing (even as he submits hundreds of pages bearing "FGG" Bates stamps with his opposition). But the Trustee is notably silent as to his contractual right to records and cooperation from the Fairfield Liquidators (*see* Settlement Agreement ¶ 14)—who admitted before this Court that as of 2010 they possessed most of the Fairfield Funds' books and records. *See* Declaration of Kenneth Krys, *In re Fairfield Sentry Ltd.*, No. 10-13164 ECF 40, ¶¶ 15, 19 (Bankr. S.D.N.Y. July 16, 2010). If the Trustee believed he was missing something, all he had to do for over a decade was to invoke his rights against the Fairfield Liquidators and ask.

The Trustee's access to the necessary records distinguishes his authorities, which offer plaintiffs greater latitude in pleading where subsequent transfers had to be proven through the *defendants'* records. *See Merkin I*, 515 B.R. at 151; *Cohmad I*, 454 B.R. at 329; *Picard v. Mayer (In re BLMIS)*, No. 08-01789, 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021).[12] No such latitude should be afforded to a plaintiff who possesses all the relevant facts yet still fails to plausibly allege that transfers contain customer property.

### D.    The Trustee Can Only Assert Claims Against Defendants Who Are "Transferees" of "Customer Property."

Finally, the Trustee contends that it is of no moment that he alleges billions of dollars more in customer property was transferred from Sentry than was ever transferred to Sentry because he can recover from any combination of "transferees" up to the amount avoided. Opp. 29. This ignores the fact that for at least approximately $2 billion of claims, the defendant *is not a "transferee."* Courts have defined an "immediate or mediate transferee" under 11 U.S.C. § 550(a)(2) as "one who takes in a later transfer down the chain of title or possession." *In re*

---

[12] The Trustee suggests that Lloyds may also have relevant records, but he does not articulate what they are, and Lloyds is hard-pressed to imagine what they might be.

*O'Malley*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019).   Here, Lloyds never became a transferee of customer property for millions of dollars of the Trustee's claims because there was no BLMIS money at Sentry to transfer to it.   *See* Lloyds' Motion to Dismiss, Point II.

This case is thus completely different from those involving re-transfers among subsequent transferees, as in *Merkin I*, 515 B.R. at 149, or allocation of liability among subsequent transferees who all indisputably received money from the debtor, as in *CNB Int'l Inc. v. Kelleher (In re CNB International, Inc.)*, 393 B.R. 306, 332-33 (Bankr. W.D.N.Y. 2008).   Instead, the Trustee here seeks to recover any money a defendant may have received from *Sentry*.   *See generally* Paccione Decl. Exs. E, F, G (alleging transfers from Sentry to applicable defendant),[13] without regard to whether, as to that payment, the defendant was a "transferee" of BLMIS.   The Trustee is not permitted to do this, and therefore, the Trustee's claims should be dismissed.

## CONCLUSION

For all the foregoing reasons, the Trustee respectfully requests that the Court grant Lloyds' Motion and dismiss all claims against Lloyds with prejudice and for such other and further relief as to which the Court deems just and proper.

---

[13] Indeed, when the Trustee sought to recover an alleged transfer from one defendant to another, he expressly alleged it.   *See* Exhibit D to the Complaint filed in the matter captioned *Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Inv. Sec. LLC v. Credit Agricole Corporate and Inv. Bank.*, Adv. Pro. No. 12-01670 (Bankr. S.D.N.Y.), ECF 1-10.

Dated:  May 23, 2022
New York, New York

*/s/ Anthony L. Paccione*
 **KATTEN MUCHIN ROSENMAN LLP**
50 Rockefeller Plaza
New York, NY 10020
Telephone:  (212) 940-8800
Facsimile:    (212) 940-8776
Anthony L. Paccione
Email: anthony.paccione@katten.com
Mark T. Ciani
Email:  mark.ciani@katten.com

*Attorneys for Defendant*