**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (CGM) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 11-02730 (CGM) |
| v. | |
| ASB BANK CORP., | |
| Defendant. | |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANT ASB BANK CORP.'S MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS ................................................................................................3

I.      THE BLMIS PONZI SCHEME...........................................................................3

II.     THE FAIRFIELD SENTRY FUND....................................................................4

III.    ASB AND ITS INVESTMENTS IN FAIRFIELD SENTRY ..............................5

ARGUMENT ...................................................................................................................7

I.      THIS COURT HAS PERSONAL JURISDICTION OVER ASB........................7

        A.      ASB Purposefully Availed Itself of the Laws and Privileges of Conducting
                Business in New York, and More Generally in the United States, by
                Investing in Sentry .................................................................................9

        B.      The Exercise of Personal Jurisdiction Over ASB Is Reasonable...........................20

II.     SECTION 546(e) DOES NOT BAR RECOVERY FROM ASB.....................21

        A.      Sentry's Actual Knowledge of Madoff's Fraud Bars Application of
                Section 546(e) .......................................................................................21

        B.      ASB Is Precluded from Relitigating the Actual Knowledge Exception................22

        C.      ASB Is Precluded from Arguing that Section 546(e) Applies
                Independently to Recovery Actions........................................................23

III.    THE COMPLAINT PLAUSIBLY PLEADS THAT ASB RECEIVED BLMIS
        CUSTOMER PROPERTY UNDER SECTION 550(a) ....................................27

        A.      ASB Misstates the Trustee's Pleading Burden ......................................28

        B.      ASB's Tracing Arguments Fail on a Motion to Dismiss........................30

        C.      ASB's Claims of Double Recovery Are Premature.................................34

IV.     THE COMPLAINT SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE
        SENTRY INITIAL TRANSFERS..................................................................34

CONCLUSION................................................................................................................37

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
   599 B.R. 730 (Bankr. S.D.N.Y. 2019) ........................................................................28, 29, 32

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
   98 F.3d 25 (2d Cir. 1996) .........................................................................................................9

*Al Rushaid v. Pictet & Cie*,
   28 N.Y.3d 316 (2016) .............................................................................................................18

*Am. Casein Co. v. Geiger (In re Geiger)*,
   446 B.R. 670 (Bankr. E.D. Pa. 2010) ....................................................................................35

*Anna Sui Corp. v. Forever 21, Inc.*,
   No. 07-cv-3235 (TPG), 2008 WL 4386747 (S.D.N.Y. Sept. 25, 2008) .................................16

*Bartlett v. Société Générale de Banque Au Liban SAL*,
   No. 19-CV-00007 (CBA) (VMS), 2020 WL 7089448 (E.D.N.Y. Nov. 25,
   2020) .......................................................................................................................................18

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985).................................................................................................................8

*Burlington Indus., Inc. v. Salem Int'l Co.*,
   645 F. Supp. 872 (S.D.N.Y. 1986) .........................................................................................15

*Chloé v. Queen Bee of Beverly Hills, LLC*,
   616 F.3d 158 (2d Cir. 2010)........................................................................................7, 9, 13, 20

*CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*,
   393 B.R. 306 (Bankr. W.D.N.Y. 2008) ..................................................................................34

*Cromer Fin. Ltd. v. Berger*,
   137 F. Supp. 2d 452 (S.D.N.Y. 2001).......................................................................................7

*CutCo Indus., Inc. v. Naughton*,
   806 F.2d 361 (2d Cir. 1986).................................................................................................9, 16

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014).................................................................................................................7

*Dandong v. Pinnacle Performance Ltd.*,
   966 F. Supp. 2d 374 (S.D.N.Y. 2013).....................................................................................17

*DeMasi v. Benefico*,
    567 F. Supp. 2d 449 (S.D.N.Y. 2008)...................................................................37

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
    722 F.3d 81 (2d Cir. 2013).............................................................................................7

*Druck Corp. v. Macro Fund (U.S.) Ltd.*,
    102 F. App'x 192 (2d Cir. 2004) ...............................................................................15

*Eldesouky v. Aziz*,
    No. 11–CV–6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014) ..............................17

*Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
    397 F. Supp. 3d 323 (S.D.N.Y. 2019)..................................................................9, 18

*Ferrari v. Cnty. of Suffolk*,
    790 F. Supp. 2d 34 (E.D.N.Y. 2011) .......................................................................36

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*,
    141 S. Ct. 1017 (2021)...........................................................................................14, 19

*Fowler v. Caliber Home Loans, Inc.*,
    277 F. Supp. 3d 1324 (S.D. Fla. 2016) ....................................................................32

*Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*,
    Adv. Pro. Nos. 10-03493 (SMB), 10-05447 (SMB), 2014 WL 47774 (Bankr.
    S.D.N.Y. Jan. 3, 2014) ............................................................................................33

*Grove Press, Inc. v. Angleton*,
    649 F.2d 121 (2d Cir. 1981)......................................................................................16

*Hecklerco, LLC v. YuuZoo Corp. Ltd.*,
    252 F. Supp. 3d 369 (S.D.N.Y. 2017).......................................................................15

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)..................................................................................................12

*Helms v. Metro. Life Ins. Co. (In re O'Malley)*,
    601 B.R. 629 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021)...........................34

*Hosking v. TPG Capital Mgmt., L.P. (In re Hellas Telecomm. (Lux.) II SCA)*,
    547 B.R. 80 (Bankr. S.D.N.Y. 2016).........................................................................9

*HSH Nordbank AG N.Y. Branch v. Street*,
    No. 11 Civ. 9405(DLC), 2012 WL 2921875 (S.D.N.Y. July 18, 2012)...........................16, 19

*IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*,
    408 F.3d 689 (11th Cir. 2005) ..................................................................................29

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ............................................................................................8, 19

*Kelley v. Safe Harbor Managed Acct. 101, Ltd.*,
    31 F.4th 1058 (8th Cir. 2022) ............................................................................24, 27

*Kelley v. Westford Special Situations Master Fund, L.P.*,
    No. 19-cv-1073, 2020 WL 3077151 (D. Minn. June 10, 2020) ................................30, 32, 33

*Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*,
    No. 07-MD-1902 (JSR), 2013 WL 12191844 (S.D.N.Y. Mar. 25, 2013) ..............................22

*Licci v. Lebanese Canadian Bank, SAL*,
    20 N.Y.3d 327 (2012) ........................................................................................17, 18

*Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013) ........................................................................................18

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996) ........................................................................................8

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ........................................................................................22

*Off. Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic Bank*,
    549 B.R. 56 (Bankr. S.D.N.Y. 2016) ........................................................................18, 19

*Picard v. Avellino*,
    557 B.R. 89 (Bankr. S.D.N.Y. 2016) ........................................................................22

*Picard v. BNP Paribas S.A. (In re BLMIS)*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018) ........................................................................ *passim*

*Picard v. Bureau of Labor Insurance (In re BLMIS)*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) (Lifland, J.) ..........................................10, 11, 12, 35

*Picard v. Ceretti*,
    Adv. Pro. No. 09-01161 (SMB), 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015) ........................................................................................22

*Picard v. Charles Ellerin Revocable Tr. (In re BLMIS)*,
    Adv. Pro. Nos. 10-04398 (BRL), 10-05219 (BRL), 2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012) ........................................................................28, 29, 31

*Picard v. Citibank, N.A. (In re BLMIS)*,
    12 F.4th 171 (2d. Cir. 2021) ........................................................................................4

*Picard v. Cohen*,
    Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296 (Bankr. S.D.N.Y. Apr.
    25, 2016) ............................................................................................................23

*Picard v. Cohmad Sec. Corp. (In re BLMIS)*,
    454 B.R. 317 (Bankr. S.D.N.Y. 2011) .............................................................. *passim*

*Picard v. Est. of Seymour Epstein (In re BLMIS)*,
    No. 1:2l-cv-02334 (CM), 2022 WL 493734 (S.D.N.Y. Feb. 17, 2022) ...............................26

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*,
    627 B.R. 546 (Bankr. S.D.N.Y. 2021) ...............................................................8, 19

*Picard v. Fairfield Investment Fund Ltd. (In re BLMIS)*,
    Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6,
    2021) .......................................................................................................... *passim*

*Picard v. Ida Fishman Revocable Tr. (In re BLMIS)*,
    773 F.3d 411 (2d Cir. 2014)...........................................................................23, 25

*Picard v. JPMorgan Chase & Co. (In re BLMIS)*,
    Adv. Pro. No. 08-99000 (SMB), 2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10,
    2014) ............................................................................................................11

*Picard v. Lowrey*,
    596 B.R. 451 (S.D.N.Y. 2019), *aff'd sub nom. Picard v. Gettinger*, 976 F.3d
    184 (2d Cir. 2020).......................................................................................23, 35, 36

*Picard v. Magnify, Inc.*,
    583 B.R. 829 (Bankr. S.D.N.Y. 2018)..................................................................22

*Picard v. Maxam Absolute Return Fund, L.P.*,
    460 B.R. 106 (Bankr. S.D.N.Y. 2011).........................................................8, 11, 20, 21

*Picard v. Mayer (In re BLMIS)*,
    Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435 (Bankr. S.D.N.Y. Oct.
    27, 2021) .......................................................................................................28

*Picard v. Mendelow*,
    560 B.R. 208 (Bankr. S.D.N.Y. Sept. 28, 2016)......................................................22

*Picard v. Merkin*,
    515 B.R. 117 (Bankr. S.D.N.Y. 2014) ............................................................. *passim*

*Picard v. Merkin (In re BLMIS)*,
    581 B.R. 370 (Bankr. S.D.N.Y. 2017) ...............................................................31, 33

*Picard v. Shapiro*,
542 B.R. 100 (Bankr. S.D.N.Y. 2015) .............................................................22, 30

*Picard v. Square One Fund Ltd.*,
Bench Ruling on Motion to Dismiss, Adv. Pro. No. 10-04330 (Bankr.
S.D.N.Y. May 29, 2018) .................................................................................22

*In re Picard*,
917 F.3d 85 (2d Cir. 2019) ......................................................................10, 21, 24

*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000) .................................................................................37

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
624 F.3d 123 (2d Cir. 2010) ...........................................................................7, 13

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
379 B.R. 5 (Bankr. E.D.N.Y. 2007) ..............................................................28, 29, 30

*SIPC v. BLMIS*,
531 B.R. 439 (Bankr. S.D.N.Y. 2015) .................................................................22

*SIPC v. BLMIS (In re Madoff Sec.)*,
501 B.R. 26 (S.D.N.Y. 2013) .......................................................................24, 27, 35, 36

*SIPC v. BLMIS*,
No. 12-MC-00115(JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)
(Rakoff, J.) ................................................................................................ *passim*

*SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*,
620 B.R. 505 (Bankr. S.D.N.Y. 2020) .................................................................25

*Taylor v. Sturgell*,
553 U.S. 880 (2008) ...........................................................................................22

*United States v. Henshaw*,
388 F.3d 738 (10th Cir. 2004) ...........................................................................31

*In re Viropharma, Inc.*,
No. CIV.A. 02-1627, 2003 WL 1824914 (E.D. Pa. Apr. 7, 2003) .........................32

*Walden v. Fiore,*
571 U.S. 277 (2014) ....................................................................................12, 13

*Waldman v. Palestine Liberation Org.*,
835 F.3d 317 (2d Cir. 2016) ...............................................................................20

**Statutes**

11 U.S.C. § 544 ................................................................................................................35

11 U.S.C. § 546(e) ...................................................................................................... *passim*

11 U.S.C. § 547 ................................................................................................................35

11 U.S.C. § 548 ................................................................................................................35

11 U.S.C. § 548(a)(1)(A) .................................................................................................21

11 U.S.C. § 550 ....................................................................................................23, 24, 35

11 U.S.C. § 550(a) ..................................................................................................... *passim*

11 U.S.C. § 550(a)(2) .................................................................................................27, 29

11 U.S.C. § 550(d) ...........................................................................................................34

**Rules**

Fed. R. Civ. P. 8(a) .........................................................................................................34

Fed. R. Civ. P. 8(a)(2) .......................................................................................................1

Fed. R. Civ. P. 10(c) ...........................................................................................34, 35, 36

Fed. R. Civ. P. 12(b)(6) ...................................................................................................32

N.Y. C.P.L.R. 302 ...........................................................................................................16

N.Y. C.P.L.R. 302(a)(1) ..................................................................................................15

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the estate of Bernard L. Madoff ("Madoff"), under chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Code"), respectfully submits this memorandum of law together with the declaration of Torello H. Calvani ("Calvani Decl.") in opposition to the motion (the "Motion") of defendant ASB Bank Corp. ("ASB"), formerly known as Atlantic Security Bank, to dismiss the Trustee's Complaint.

## PRELIMINARY STATEMENT

As part of the Trustee's continuing efforts in this SIPA liquidation proceeding to recover BLMIS customer property that was stolen as part of Madoff's Ponzi scheme, the Trustee seeks in this adversary proceeding to recover approximately $120 million in subsequent transfers that ASB received from Fairfield Sentry Limited ("Sentry"), a so-called "feeder fund" created for the express purpose of feeding investors' money to BLMIS. ASB moves to dismiss the Trustee's Complaint, contending that: (i) this Court lacks personal jurisdiction over it; (ii) the safe harbor under Bankruptcy Code Section 546(e) bars the Trustee's claim to recover subsequent transfers under Section 550(a); (iii) the Trustee fails to allege that it received any transfers of BLMIS customer property; and (iv) the Trustee fails to plead the avoidability of the initial transfers from BLMIS to Sentry under either Section 550(a) or Federal Rule of Civil Procedure 8(a)(2). Each contention is without foundation.

This Court undoubtedly has personal jurisdiction over ASB based on its contacts with New York and the United States more generally. ASB invested in Sentry, which was managed by the Fairfield Greenwich Group ("FGG"), a New York-based *de facto* partnership. Sentry invested substantially all of its assets with BLMIS in New York. Representatives of ASB traveled to New York and met with representatives of FGG to discuss Sentry. On one such trip in 2003, ASB

representatives met with Madoff in BLMIS's offices on Third Avenue in Manhattan. FGG representatives also traveled to and met with an executive at ASB regarding Sentry in the Miami, Florida area, where for many years ASB maintained an office. These facts clearly demonstrate that this Court has personal jurisdiction over ASB in this action.

Section 546(e) does not bar the Trustee's claim to recover subsequent transfers of BLMIS customer property from ASB. The Trustee plausibly alleges the avoidability of the initial transfers from BLMIS to Sentry based on Sentry's actual knowledge of Madoff's fraud. ASB nonetheless argues that there is no actual knowledge exception to Section 546(e) and, even if there is one, ASB maintains that its knowledge, as a subsequent transferee, should determine the avoidability of the initial transfers. These contentions conflict with the plain language of Section 546(e) and have been previously rejected in this SIPA liquidation proceeding because Section 546(e) does not independently safe harbor the recovery of fraudulent transfers from a subsequent transferee.

The Trustee likewise plausibly alleges that ASB received BLMIS customer property. In the Complaint, the Trustee outlines the relevant pathways through which property was transferred from BLMIS to Sentry and from Sentry to ASB. The Trustee also details the necessary vital statistics (i.e., the "who, when, and how much") for each subsequent transfer ASB received. At this stage of the litigation, nothing more is required. ASB nevertheless argues that the Trustee must allege a dollar-for-dollar accounting and contends that the Trustee's allegations are implausible based on its use of an undisclosed tracing methodology. This Court has previously rejected these same arguments raised by other defendants in this SIPA liquidation proceeding.

Finally, the Trustee has plausibly alleged the avoidability of the initial transfers from BLMIS to Sentry. ASB contends that the plain text of Section 550(a) requires the Trustee to avoid the initial transfers before seeking recovery and that the Trustee has not even alleged the

avoidability of the Sentry transfers. ASB further contends that the Trustee has violated Rule 8 by incorporating by reference his First Amended Complaint against Sentry.[1]  ASB's arguments conflict with precedent from the District Court.  Moreover, this Court may take judicial notice of the Trustee's Second Amended Complaint and the Court's own opinion in *Picard v. Fairfield Investment Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021), in which this Court held that the Trustee plausibly alleged Sentry's actual knowledge of Madoff's fraud so as to deny the invocation of Section 546(e).

Because all of the arguments raised by ASB lack merit, the Trustee respectfully requests that the Court deny the Motion.

## STATEMENT OF FACTS

### I.    THE BLMIS PONZI SCHEME

Madoff founded and operated BLMIS from New York until its collapse in 2008.  *See* Compl. ¶ 22, ECF No. 1.[2]  BLMIS had three principal business units: (i) a proprietary business; (ii) a market-making business; and (iii) an investment advisory business (the "IA Business").  *Id.* BLMIS reported to customers of its IA Business that it was executing a split-strike conversion strategy (the "SSC Strategy"), which purportedly involved (a) investing in a basket of common stocks from the Standard & Poor's 100 Index, (b) buying put options and selling call options to hedge against price changes in the underlying basket of stocks, and (c) purchasing U.S. treasury bills when its customers' accounts were reportedly out of the market.  *Id.* ¶¶ 23–24.  In reality, BLMIS was operating a Ponzi scheme through its IA Business.  *Id.* ¶¶ 25, 27.

---

[1] After the Trustee filed his Complaint against ASB, the Trustee filed a Second Amended Complaint against Sentry and related entities.  *See* Second Am. Comp., *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286.

[2] Unless otherwise indicated, all ECF references herein refer to those in the instant adversary proceeding.

On December 11, 2008, Madoff's fraud was publicly revealed, and he was arrested for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud.  *Id.* ¶ 10.  The extent of damage Madoff caused was made possible by BLMIS feeder funds, large investment funds specifically created to funnel investors' monies into BLMIS.  *See Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 179 (2d. Cir. 2021).

## II.    THE FAIRFIELD SENTRY FUND

ASB knowingly invested in one such BLMIS feeder fund, Sentry.  Compl. ¶¶ 2, 6.  Sentry was controlled by FGG, a *de facto* partnership with a principal place of business in New York. Calvani Decl., Exs. 1–5.  Sentry was a U.S. dollar-denominated fund that invested 95% of its assets with BLMIS.  Compl. ¶ 2.

Until 2003, FGG represented that Sentry was managed from New York.  Calvani Decl., Exs. 6–7.  In 2003, FGG designated a Bermuda entity known as Fairfield Greenwich Bermuda Limited ("FG Bermuda") as manager.  *Id.*, Ex. 8.  However, FGG continued to conduct key operations relating to Sentry from its New York office.  *Id.*, Exs. 3–5.  For example, Sentry subscriptions were approved or rejected by a New York-based FGG partner.  *Id.*, Ex. 9.  FGG's Finance Group, which was responsible for processing subscriptions and redemptions, performing due diligence, communicating with investors, and providing investor support, was also located in New York.  *Id.*, Ex. 1.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Sentry to avoid and recover fraudulent transfers of BLMIS customer property in the amount of approximately $3 billion.  Compl. ¶ 34.  In 2011, the Trustee settled with Sentry.  *Id.* ¶ 39.  As part of the settlement, Sentry consented to a judgment in the amount of $3.054 billion but repaid only $70 million to the BLMIS customer property estate.  *Id.*  The Trustee then commenced numerous

adversary proceedings against ASB and others who invested in BLMIS through Sentry to recover

the approximately $3 billion in stolen customer property.

## III.    ASB AND ITS INVESTMENTS IN FAIRFIELD SENTRY

ASB was an investment firm incorporated in the Cayman Islands with a registered office

in the Cayman Islands.[3]  Compl. ¶ 21.  Its ultimate parent company was Credicorp LTD., a limited

liability company incorporated in Bermuda with a primary listing on the New York Stock

Exchange under the quote symbol "BAP."  Calvani Decl., Ex. 10.  Prior to January 2003, ASB

maintained an office on Brickell Avenue in Miami, Florida.  *Id.*, Ex. 11.  Then in January 2003,

ASB signed a ten-year lease and opened an office in Coral Gables, Florida.  *Id.*, Exs. 11–12.

Previously, in or about 2001, ASB or its parent company opened a brokerage firm in

Miami, Florida under the name of ASB Securities, Inc., *nka* Credicorp Securities, Inc. ("ASB

Securities").  *Id.*, Exs. 13–14.  ASB executives and/or directors assumed similar roles at ASB

Securities, including Bruno Ghio, Fernando Montero, Carlos Munoz, and Javier Maggiolo, but

each continued to act on behalf of ASB.  *Id.*, Exs. 15–17.  Ghio, a Senior Vice President of Asset

Management at ASB, served as Deputy General Manager of ASB Securities in Florida from early

2003 through the middle of 2006.  *Id.*, Ex. 17.

ASB knew that it was engaging with New York when it invested in Sentry.  ASB knew

that FGG purported to manage Sentry from New York.  *Id.*, Exs. 6–7.  ASB likewise knew that

BLMIS operated from New York.  In a share application form from 2001, ASB acknowledged that

it had received and read Sentry's Information Memorandum, as amended, which disclosed

BLMIS's multiple roles.  *Id.*, Exs. 7, 18.  The Information Memorandum detailed how BLMIS

---

[3] As part of a merger, Atlantic Security Bank is now part of ASB Bank Corp., which is incorporated in Panama.
Motion at 1–2, nn.1, 3.

acted as Sentry's custodian, broker-dealer, and investment manager, with total control over ASB's investments in Sentry. *Id.*, Ex. 7 at pp. 11, 15–20. The share application form and the Information Memorandum also instructed ASB to send subscription payments to a bank account with HSBC Bank USA located at 452 Fifth Avenue, New York, New York (the "HSBC USA Account"). *See id.*, Ex. 7 at p. 14; *id*, Ex. 18 at p. 1.

ASB personnel visited New York on multiple occasions to meet with FGG partners and/or Madoff to discuss ASB's investment in Sentry. Compl. ¶ 6. For instance, Montero, Munoz, and Maggiolo traveled to New York in February 2003 and met with, among others at FGG, Jeffrey Tucker, a founding partner of FGG, to discuss ASB's investment in Sentry as well as other FGG funds. *Id.*; *see also* Calvani Decl., Ex. 19. A few months later in April 2003, FGG partners Lourdes Barreneche and Richard Landsberger met with Ghio in Coral Gables, Florida regarding ASB's investment in Sentry. Calvani Decl., Ex. 20.

In November 2003, Ghio, Maggiolo, and Montero travelled to New York where they, together with Barreneche and Walter Noel (another FGG founding partner), met with Madoff in BLMIS's offices to discuss ASB's investment in Sentry. Compl. ¶ 6; *see also* Calvani Decl., Ex. 21. At the meeting, this group was joined by Benjamin Schliemann and Christopher Neve, principals of Accumulus Capital Management LLC ("Accumulus"), whom FGG described as advisors of ASB. Calvani Decl., Ex. 21. Accumulus is a New York-based investment advisor and consultant. *Id.*, Ex. 22.

Between late 2003 and 2005, ASB made twelve redemptions from Sentry which totaled approximately $120 million.[4] Compl. ¶ 40 & Ex. D. Sentry made each of these redemptions to

---

[4] The Trustee's Complaint originally sought to recover thirteen redemptions ASB received from Sentry, but pursuant to a stipulation so ordered by the Court, the Trustee dismissed a transfer ASB received on April 14, 2003 in the amount of $513,267. Stip. and Order to Dismiss Alleged Transfer, ECF No. 109,

ASB by wiring funds from the HSBC USA Account into a New York correspondent bank account designated by ASB at Standard Chartered Bank.  *See, e.g.*, Calvani Decl., Ex. 23.

## ARGUMENT

### I.    THIS COURT HAS PERSONAL JURISDICTION OVER ASB

To overcome a motion to dismiss for lack of personal jurisdiction, a plaintiff need only demonstrate a *prima facie* case that personal jurisdiction exists.  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013).  A *prima facie* showing of jurisdiction "may be established solely by allegations." *Id.* at 84–85 (finding "[p]rior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction").  A plaintiff also may establish a *prima facie* case of jurisdiction through affidavits and supporting materials that contain averments of facts outside the pleadings. *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010).  These pleadings and affidavits are to be construed in the light most favorable to the plaintiff, resolving all doubts in the plaintiff's favor.  *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

Depending on the nature of a defendant's contacts with the forum, a court may exercise general or specific jurisdiction.  *See, e.g.*, *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 473 (S.D.N.Y. 2001).  General jurisdiction is based on the defendant's general business contacts with the forum and permits a court to exercise jurisdiction even where the claims are unrelated to those contacts.[5]  *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014).  Specific jurisdiction exists where the defendant purposely directs its activities into the forum and the underlying cause or causes of

---

[5] The Trustee's claims arise out of ASB's specific contacts with the forum and a finding of general jurisdiction is thus unnecessary here.

action arise out of or relate to those activities. *See, e.g.*, *Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021).

An analysis into specific jurisdiction is a two-step inquiry. In the first step, the court assesses whether the defendant purposefully established "minimum contacts" in the forum, such that the defendant purposefully availed itself of the privilege of conducting activities with the forum. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985). The defendant's activities need not have taken place within the forum, and "a single transaction with the forum will suffice." *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011). Minimum contacts may also be found when a "defendant's allegedly culpable conduct involves at least in part financial transactions that touch the forum." *In re Fairfield Sentry Ltd.*, 627 B.R. at 566.

In the second step, the court conducts a "reasonableness" inquiry to determine if its exercise of jurisdiction will not offend traditional notions of "fair play and substantial justice," *Int'l Shoe*, 326 U.S. at 320, and in connection with this inquiry, the court considers the following factors:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the shared interest of the states in furthering social policies.

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996). Where the plaintiff has sufficiently alleged purposeful availment, however, the burden shifts to the defendant to present a "compelling case" that jurisdiction would be unreasonable. *In re Fairfield Sentry Ltd.*, 627 B.R. at 567 (citing *Burger King*, 471 U.S. at 472–73).

In determining whether a defendant's contacts establish personal jurisdiction, the court must look at "the totality of the circumstances" rather than any given contact in isolation. *See,*

*e.g.*, *Chloé*, 616 F.3d at 164 (analyzing totality of defendants' contracts to determine jurisdiction under New York's long-arm statute and the Due Process Clause); *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996); *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) ("No single event or contact connecting defendant to the forum state need be demonstrated; rather, the *totality of all defendant's contacts* with the forum state must indicate that the exercise of jurisdiction would be proper." (emphasis added and citation omitted)).

In federal bankruptcy cases, the appropriate forum for a defendant's contacts is the United States. *See, e.g.*, *Hosking v. TPG Capital Mgmt., L.P. (In re Hellas Telecomm. (Lux.) II SCA)*, 547 B.R. 80, 96–97 (Bankr. S.D.N.Y. 2016) ("Because the sovereign exercising jurisdiction is the United States, not a particular state, minimum contacts with the United States is sufficient to satisfy the Fifth Amendment due process requirement, whether the claims asserted arise under federal, state or foreign law.").

### A. ASB Purposefully Availed Itself of the Laws and Privileges of Conducting Business in New York, and More Generally in the United States, by Investing in Sentry

ASB's numerous contacts with New York, and the United States more generally, establish this Court's jurisdiction over ASB. ASB invested in Sentry, whose assets were nearly exclusively managed and custodied by BLMIS in New York. ASB had direct connections with New York through its meetings with FGG and Madoff about Sentry and direct connections with Florida through its Miami area offices and its meetings with FGG in Florida to discuss Sentry. ASB also used New York banks to transact with Sentry. These contacts, either independently or in their totality, establish that ASB purposefully directed its activities to New York and the United States. *See Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 397 F. Supp. 3d 323, 344 (S.D.N.Y. 2019) ("When all [defendant]'s Agreement-related contacts are considered together, it is clear [the defendant] purposely availed itself of the forum.").

1.    **ASB's Investment in BLMIS through Sentry Establishes Minimum Contacts**

ASB's deliberate targeting of BLMIS and the New York securities market—through an entity expressly constituted for that purpose—is dispositive on the issue of personal jurisdiction. As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going." *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019). ASB knew Sentry invested substantially all of its assets with BLMIS. ASB received and reviewed Sentry's Information Memorandum which disclosed that: (i) Sentry invested at least 95% of its assets with BLMIS, (ii) BLMIS performed all investment management duties for these assets; (iii) BLMIS was registered with the U.S. Securities and Exchange Commission; (iv) BLMIS was the executing broker for Sentry's investments, and purportedly operated and executed the SSC Strategy on the fund's behalf; (v) BLMIS's SSC Strategy purportedly involved the purchase of U.S. equities, U.S. options, and U.S. treasury bills; (vi) the decisions regarding which U.S. securities to purportedly purchase, and when to make such purchases, were made by BLMIS in New York; (vii) BLMIS was the custodian of Sentry's investments with BLMIS; and (viii) BLMIS was "essential to the continued operation of" Sentry. Calvani Decl., Exs. 6–8.

This Court has already concluded that a similarly situated investor was subject to this Court's jurisdiction in *Picard v. Bureau of Labor Insurance (In re BLMIS)*, 480 B.R. 501, 516–18 (Bankr. S.D.N.Y. 2012) (Lifland, J.) ("*BLI*"). There, as here, the Trustee's suit was "based upon [the subsequent transferee's] investment of tens of millions of dollars in Fairfield Sentry with the specific goal of having funds invested in BLMIS in New York, with intent to profit therefrom." *Id.* at 506. There, as here, the subsequent transferee was aware of the investment's BLMIS-centric purpose. *Id.* at 507–08. And there, as here, the subsequent transferee unsuccessfully argued that

the foreseeability of its investment ending up in a BLMIS account was insufficient to support

personal jurisdiction.  *Id.* at n.14.  Not only did this Court reject this argument, Judge Lifland

viewed it as "disingenuous," explaining:

> BLI's investments in Fairfield Sentry did not merely "end up" in an
> account at BLMIS as a result of happenstance or coincidence.
> Rather, BLI purposefully availed itself of the benefits and
> protections of New York laws by knowing, intending and
> contemplating that the substantial majority of funds invested in
> Fairfield Sentry would be transferred to BLMIS in New York to be
> invested in New York securities market.

*Id.* at 517; *see also Picard v. JPMorgan Chase & Co. (In re BLMIS)*, Adv. Pro. No. 08-99000

(SMB), 2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014) (noting courts in this liquidation

have already "confirmed that defendants who invested directly or indirectly with BLMIS and

received payments from BLMIS as an initial transferee or subsequent transferee of those initial

transfers were subject to the Court's personal jurisdiction").  As framed by this Court, "BLI

intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money

orchard in the United States and reap the benefits therefrom."  *BLI*, 480 B.R. at 506; *see also*

*Maxam*, 460 B.R. at 116–20 (finding jurisdiction where defendant knew and intended that funds

invested with a feeder fund would be sent to BLMIS in New York for investment).

Faced with the obvious weight of *BLI*, ASB attempts to marginalize the decision by

claiming that its "[m]ere knowledge that Sentry would invest in BLMIS in New York is

insufficient to support personal jurisdiction over ASB."  Motion at 31.  As discussed above, Judge

Lifland viewed this very argument as "disingenuous" and for good reason.  In *BLI* and here, the

purposeful decision to invest with Sentry, a feeder fund expressly designed to funnel those

investments to BLMIS in New York, was and still is sufficient to establish personal jurisdiction.

*See BLI*, 480 B.R. at 517 ("In a nutshell, BLI invested tens of millions of dollars in Fairfield Sentry

with the specific purpose of having funds invested in BLMIS in New York, and intended to profit

from this U.S.-based investment.").  Because ASB is identically situated to the defendant in *BLI*

with respect to the core purpose of its investment in Sentry, *BLI* controls and resolves ASB's

personal jurisdiction defense without the need for further inquiry.

ASB also attempts to marginalize *BLI* by claiming that the decision has been overturned

by *Walden v. Fiore*, 571 U.S. 277 (2014).  Motion at 31.  However, the facts and law of *Walden*

are significantly different from those here, such that *Walden* is inapposite to whether this Court

has personal jurisdiction over an investor in a BLMIS feeder fund.  The defendant in *Walden*—a

Georgia police officer who seized money from the plaintiff in Georgia while the plaintiff was *en

route* to Nevada (the forum state)—had no purposeful contacts with the Nevada.  *Id.* at 288–89.

The officer had "never traveled to, conducted activities within, contacted anyone in, or sent

anything or anyone to Nevada;" nor was the officer's seizure of funds at issue predicated in any

way on the fact that their intended destination was Nevada.  *Id.* at 289.  Applying the "effects" test

applicable to intentional tort cases, the Court of Appeals concluded it had jurisdiction because the

officer's seizure of plaintiff's assets would have some foreseeable effect in Nevada.  *Id.* at 290–

91.  The Supreme Court disagreed, concluding that the officer had "formed no jurisdictionally

relevant contacts with Nevada" and that he could not be sued in Nevada for an unlawful seizure of

money in Georgia merely because he knew the plaintiff resided in Nevada.  *Id.* at 289–91.  In

reversing the Court of Appeals, the Supreme Court simply reaffirmed the well-established

principle that personal jurisdiction cannot be premised solely on a plaintiff's unilateral contacts

with the forum state.  *Id.* at 284 & 289 ("Due process requires that a defendant be haled into court

in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous,

or attenuated' contacts he makes by interacting with other persons affiliated with the State." (citing

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984))

This case is nothing like *Walden*.  As a preliminary matter, the Trustee's allegations implicate the Supreme Court's "purposeful availment" framework, which the Court in *Walden* did not reference, let alone apply.  In *Walden*, the police officer's lack of "any jurisdictionally relevant contacts with Nevada" is not remotely analogous to ASB intentionally directing investments to BLMIS in New York.  The fact that representatives from ASB travelled to New York and met with FGG and Madoff to discuss Sentry's investment with BLMIS, as detailed below, demonstrates that ASB's contacts with New York were hardly "random, fortuitous, or attenuated" as in *Walden*.  Here, ASB's contacts with New York were "intertwined with [its] transactions or interactions with the plaintiff or other parties," *Walden*, 571 U.S. at 286, and thus support jurisdiction.  Accordingly, this Court should reaffirm *BLI* and hold that ASB's purposeful targeting of New York by intentionally investing with BLMIS through Sentry establishes personal jurisdiction over ASB.

### 2.    ASB's Contacts with BLMIS and FGG in New York and Florida Further Establish Jurisdiction

In the Complaint, the Trustee additionally alleges that representatives of ASB visited New York and met with persons from FGG as well as Madoff to discuss Madoff's investment strategy.[6] Compl. ¶ 6.  ASB attempts to marginalize this allegation by portraying that these contacts with New York are limited to a single meeting with FGG and Madoff, which may not have even "concerned Fairfield's investment with BLMIS."  Motion at 31–32.  Of course, the Trustee is not confined to the allegations of his Complaint to establish jurisdiction.  *S. New England Tel. Co.*, 624 F.3d at 138.  Nevertheless, even in the absence of any additional detail, this Court certainly can—and respectfully must—reasonably infer that ASB's meeting with Madoff concerned Sentry's investment with BLMIS.  *Chloé*, 616 F.3d at 163.  Indeed, ASB's investment with BLMIS

---

[6] The Trustee therefore hardly relies only on "conclusory, cookie-cutter allegations that ASB purposely availed itself of the benefits and privileges of doing business in the State through Sentry."  Motion at 2.

through Sentry exceeded $100 million at that time and thus, to infer that the subject of Sentry's

investment with BLMIS was never raised during the meeting with Madoff, is not only

unreasonable but borders on the absurd.

But the Court need not rely on inferences.  As ASB is well aware, the purpose of the

meeting with Madoff in November 2003 was to discuss Sentry's investment with BLMIS.[7]  ASB

dispatched three representatives from its Florida office, Bruno Ghio, Javier Maggiolo, and

Fernando Montero, to attend the meeting with Madoff.  Calvani Decl., Ex. 21.  The purpose of the

November 18, 2003 meeting was made clear in a November 17, 2003 email from Barreneche to

Ghio, which attached a Sentry questionnaire.  *Id*., Exs. 21, 24.  In an agenda prepared in advance

of the meeting and shared with Ghio, FGG specified the following:

> Meeting with Mr. Bernard Madoff, Portfolio Manager of Fairfield
> Sentry Limited.
>
> *(Mr. Jeffrey Tucker and Ms. Lourdes Barreneche will be*
> *accompanying you to the Meeting at Mr. Madoff's office)*
>
> <u>PURPOSE</u>: Mr. Madoff will be available to address your questions
> related to Fairfield Sentry Limited
>
> (This meeting will take place at Mr. Madoff's offices)

*Id.*, Ex. 25.  In the Sentry questionnaire provided to ASB, FGG purported to respond to a wide

range of questions regarding Sentry's $4.1 billion investment with BLMIS.  *Id*., Ex. 24.  For

instance, FGG relayed that BLMIS managed 98% of Sentry's assets.  *Id.*

Joining the ASB representatives at their meeting with Madoff were Noel and Barreneche

from FGG and Accumlus' Schliemann and Neve.  *Id.*, Ex. 21.  After the meeting, Ghio called

Barreneche to thank her for the meeting with Madoff and to apologize for the behavior of one of

---

[7] Whether the meeting took place *after* ASB already made its investments with Sentry is of no moment.  Motion at
31–32.  *See Ford Motor Co. v. Montana Eighth Jud. Dist.*, 141 S. Ct. 1017, 1026 (2021) (finding due process test for
specific jurisdiction did not depend on strict causation).  Moreover, the meeting occurred *before* ASB withdrew
approximately $120 million from Sentry.  *See* Compl., Ex. D.

ASB's advisors from Accumulus, who according to Barreneche, was "not up the curve on Sentry" and asked too many questions of Madoff regarding Sentry's investment with BLMIS.  *Id.*, Ex. 26.

This is not the only meeting of which the Trustee is aware that ASB had in New York concerning Sentry's investment with BLMIS.  Earlier, in February 2003, ASB's Montero, Munoz, and Maggiolo traveled to New York to meet with FGG to discuss ASB's investment in Sentry. *Id.*, Ex. 19.  Barreneche relayed to others at FGG that ASB wished to meet with FGG to learn more about Sentry and FGG's other funds as well as Madoff and his organization.  *Id.*  Among those with whom ASB met at FGG was Dan Lipton, FGG's CFO, who discussed Sentry's investment with BLMIS.  *Id.*  In April 2003, Barreneche and Richard Landsberger, another FGG partner, traveled to Coral Gables to meet with Ghio.  *Id.*, Ex. 20.  FGG viewed the meeting as a "great opportunity to explain in detail the strategy" of Sentry and FGG's other funds.  *Id.*  ASB's meetings with FGG and Madoff support jurisdiction.  *See Druck Corp. v. Macro Fund (U.S.) Ltd.*, 102 F. App'x 192, 193–94 (2d Cir. 2004) (finding one or two meetings concerning a "fund's investment strategy" to be "substantive and substantial" enough to support jurisdiction even though no investment was immediately forthcoming); *Burlington Indus., Inc. v. Salem Int'l Co.*, 645 F. Supp. 872, 874 (S.D.N.Y. 1986) (finding jurisdiction where defendant attended two meetings in New York to conduct business and reach an agreement).

Moreover, ASB had extensive contacts with New York through its advisor, Accumulus, a New York-based investment advisor and consultant.  Under New York's long-arm statute, "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person *or through an agent* . . . transacts any business within the state" where the cause of action arises from those transactions. N.Y. C.P.L.R. 302(a)(1) (emphasis added); *see also Hecklerco, LLC v. YuuZoo Corp. Ltd.*, 252 F. Supp. 3d 369, 378–79 (S.D.N.Y. 2017) (finding specific jurisdiction over defendants who used

agents to sell shares of company stock to plaintiffs in New York).[8]  To be considered an agent for

jurisdictional purposes, the agent must have acted in the state "for the benefit of, [and] with the

knowledge and consent of, and under some control by, the nonresident principal."  *Grove Press,

Inc. v. Angleton,* 649 F.2d 121, 122 (2d Cir. 1981).  In determining whether an agency relationship

exists under N.Y. C.P.L.R. 302, courts have focused on the realities of the relationship in question

rather than the formalities of agency law.  *See CutCo Indus.*, 806 F.2d at 366.

Accumulus was described as ASB's advisor for its investments with Sentry.  Calvani Decl.,

Ex. 27.  In July 2003, Accumulus' Schliemann and Neve met with FGG founding partners Tucker

and Noel to discuss Sentry's investments with BLMIS.  Schliemann and Neve also attended the

November 2003 meeting with Madoff.  *Id.*, Ex. 21.  And after the meeting with Madoff,

Schliemann contacted FGG on several occasions to follow up on a number of items regarding

BLMIS, including asking for audited financials of BLMIS and posing numerous questions

regarding BLMIS's auditor, Friehling & Horowitz CPA.  *Id.*, Exs. 28–29.  These purposeful acts

of Accumulus on behalf of ASB are imputed to ASB and further support jurisdiction.  *See Anna

Sui Corp. v. Forever 21, Inc.*, No. 07-cv-3235 (TPG), 2008 WL 4386747, at \*2 (S.D.N.Y. Sept.

25, 2008) (agency is established where the agent engaged in purposeful activities in New York

relating to the transaction, the agent's actions were for the defendant's benefit and with the

defendant's knowledge and consent, and the defendant exercised some control over the agent).

Finally, by investing in Sentry, ASB knowingly transacted business with FGG in New

York.  When ASB first invested in Sentry, FGG represented that Fairfield Greenwich Limited, a

---

[8] Certain cases discussed herein address jurisdiction under New York's long-arm statute.  Due to the close overlap
between the requirements of the due process clause and the New York long-arm statute, courts engaging in a due
process analysis frequently cite long-arm cases.  *See, e.g., HSH Nordbank AG N.Y. Branch v. Street*, No. 11 Civ.
9405(DLC), 2012 WL 2921875, at \*4 n.3 (S.D.N.Y. July 18, 2012) (noting "the personal jurisdiction analysis under
§ 302(a)(1) and the Due Process Clause is in most instances essentially coterminous" (citations omitted)).

New York entity, managed Sentry. Calvani Decl., Exs. 6–7. And after FGG formed FG Bermuda

in 2003, FGG continued to conduct key operations from its New York office. *See supra* p. 4.

Under similar facts, this Court in *BNP* found jurisdiction over defendants based on the U.S.

contacts inherent in doing business with the Tremont funds. *Picard v. BNP Paribas S.A. (In re*

*BLMIS)*, 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) ("*BNP*") (finding showing of jurisdiction

"over any fraudulent transfer claims resulting from redemptions by the defendants from their

accounts with the Tremont Funds").

### 3.    ASB's Purposeful Use of a New York Correspondent Bank Account Further Establishes Specific Jurisdiction

This Court also has personal jurisdiction over ASB because of its use of the New York

banking system to subscribe into and redeem from Sentry. Courts have often held that a

defendant's use of a domestic bank account is sufficient to establish personal jurisdiction. *See,*

*e.g.*, *Eldesouky v. Aziz*, No. 11–CV–6986 (JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19,

2014) (finding jurisdiction under New York long-arm statute based solely on defendant's use of

New York account to receive payment at issue); *Dandong v. Pinnacle Performance Ltd.*, 966 F.

Supp. 2d 374, 382–83 (S.D.N.Y. 2013) (finding jurisdiction in New York based solely on

defendant's use of New York accounts to facilitate alleged fraud). In this liquidation, this Court

has also found jurisdiction where initial and subsequent transferee defendants received transfers

from U.S. bank accounts. *See BNP*, 594 B.R. at 191 (finding jurisdiction over subsequent

transferee defendants that sent subscriptions to, and received redemptions from, feeder funds' New

York bank account).

Courts reach the same conclusion where the account at issue is a correspondent bank

account. *See, e.g.*, *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 338 (2012) (holding

defendant's use of correspondent bank account in New York supports jurisdiction "even if no other

contacts between the defendant and New York can be established" provided that such use was "purposeful"); *Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 165, 171 (2d Cir. 2013) (finding jurisdiction over defendant with "no operations, branches, or employees in the United States" based on repeated use of New York's banking system); *Off. Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic Bank*, 549 B.R. 56, 67–69 (Bankr. S.D.N.Y. 2016) (finding jurisdiction based on designation and use of New York correspondent accounts to receive transfers); *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 322–29 (2016) (same). What matters is that the use is "purposeful" and not coincidental or passive. *See Licci*, 20 N.Y.3d at 338–39.

ASB designated a correspondent account at Standard Chartered Bank in New York through which Sentry sent each redemption payment to ASB. Compl. ¶ 6; *see, e.g.*, Calvani Decl., Exs. 23, 30; *see also Bartlett v. Société Générale de Banque Au Liban SAL*, No. 19-CV-00007 (CBA) (VMS), 2020 WL 7089448, at *5 n.2 (E.D.N.Y. Nov. 25, 2020) ("A single transaction is sufficient to satisfy this [jurisdictional] requirement, provided the relevant claims arise from that transaction."). And Sentry made and/or received these payments through the HSBC USA Account in New York. *See, e.g.*, Calvani Decl., Ex. 18. Where, as here, there has been repeated use of a correspondent account, purposeful availment may be inferred from the sheer volume of transactions. *See Licci,* 20 N.Y.3d at 340 (routing several million dollars through correspondent account dozens of times indicates desirability and lack of coincidence); *Al Rushaid*, 68 N.E.3d at 5–6 (finding transfer to correspondent accounts at least 12 times for $4 million sufficient for personal jurisdiction).

Whether or not the HSBC USA Account belonged to Sentry or the Standard Chartered Bank account belonged to ASB does not change the analysis under the circumstances here, because ASB voluntarily agreed to use both accounts. *See Esso*, 397 F. Supp. 3d at 346 ("[T]he point is

not whether [defendant] owns the accounts, it is that they made purposeful use of them for reasons related to the underlying dispute."); *Arcapita*, 549 B.R. at 70 n.18 ("Because [defendant] directed the wire transfers to a specifically designated New York account for its own advantage, the receipt of the funds in New York is a 'contact' properly attributed to [defendant].").

ASB's purposeful use of New York bank accounts further supports jurisdiction here because the Trustee's claims "arise out of or relate to" its use of the accounts. As the Supreme Court recently held, this prong does not require a causal relationship. *See Ford Motor*, 141 S. Ct. at 1026–30. Rather, this prong may be satisfied if defendant's conduct involves "financial transactions that touch the forum." *In re Fairfield Sentry Ltd.*, 627 B.R. at 566; *see also Arcapita*, 549 B.R. at 68–71 (requiring only that claim is not completely "unmoored" from transaction). Because the Trustee's causes of action in this proceeding relate to the very transfers that came through the accounts, ASB's use of these accounts provides further support for jurisdiction. *See, e.g.*, *HSH Nordbank*, 2012 WL 2921875, at *4 (finding "claims against [defendants] arise directly out of the transfer of funds into [defendant's] New York accounts").

### 4.    ASB's Additional Arguments Against Jurisdiction Are Not Persuasive

ASB's argument that "the Trustee must also establish the Court's jurisdiction over ASB *for each individual transfer* [he] seeks to recover" is unavailing. Motion at 30. ASB misconstrues the requirements for personal jurisdiction. Courts have personal jurisdiction over defendants, not transfers. *See, e.g.*, *Int'l Shoe*, 326 U.S. at 316. Likewise, courts must assess the defendant's contacts with the forum, not those of transfers. *See BNP*, 594 B.R. at 189 ("The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation."). And if a court finds that a defendant's minimum contacts with the forum support specific jurisdiction, the court may adjudicate any claims, provided they are sufficiently related to those contacts. *See Ford Motor*,

141 S. Ct. at 1026–28, 1032.  This is exactly what this Court did in *BNP*.  The Court did not look

at each transfer to determine jurisdiction; the Court assessed each defendant, focused on the overall

relationship with the initial transferees, and determined it had jurisdiction.  *BNP*, 594 B.R. at 191.

Although ASB may claim that this case is "materially distinguishable" from *BNP*, Motion at 32,

the Trustee alleges and now offers even further evidence of ASB's activities in the United States

that further establish personal jurisdiction here.

> **B.    The Exercise of Personal Jurisdiction Over ASB Is Reasonable**

ASB fails to offer a compelling reason for why jurisdiction would be unreasonable.  ASB

only claims in conclusory fashion that the exercise of jurisdiction in New York would create a

"significant and unreasonable burden."  Motion at 35.  "The reasonableness inquiry requires the

court to determine whether the assertion of personal jurisdiction . . . comports with 'traditional

notions of fair play and substantial justice' under the circumstances of the particular case."

*Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016).  Where a plaintiff has

made a threshold showing of minimum contacts, a defendant must present "a compelling case that

the presence of some other considerations would render jurisdiction unreasonable."  *Chloé*, 616

F.3d at 165.  Indeed, this Court has found "it would be a 'rare' case where the defendant's

minimum contacts with the forum support the exercise of personal jurisdiction but it is

unreasonable to force the defendant to defend the action in that forum."  *BNP*, 594 B.R. at 188.

This is not that "rare" case.  The burden on ASB is minimal.  ASB has been represented

by the same national law firm for over ten years.  *See Maxam*, 460 B.R. at 119 (finding New York

counsel and conveniences of modern communication and transportation minimize any burden).

ASB and its parent company, Credicorp Ltd., are no strangers to the United States.  Indeed,

Credicorp is a publicly traded company listed on the New York Stock Exchange.  Calvani Decl.,

Ex. 10.  Further, the United States has a strong interest in applying U.S. law in this SIPA

liquidation proceeding. *See In re Picard*, 917 F.3d at 103 (noting "compelling interest in allowing domestic estates to recover fraudulently transferred property"). And the Trustee undoubtedly has a strong interest in litigating in the United States. *See Maxam*, 460 B.R. at 119. Accordingly, this Court's exercise of jurisdiction over ASB is reasonable.

## II.    SECTION 546(e) DOES NOT BAR RECOVERY FROM ASB

Section 546(e) provides a safe harbor for the avoidance of certain initial transfers made outside the two-year period referenced in Section 548(a)(1)(A). *See* 11 U.S.C. § 546(e) ("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title." (emphasis added)). However, in *SIPC v. BLMIS*, No. 12-MC-00115(JSR), 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) (Rakoff, J.) ("*Cohmad*"), the District Court held that an initial transferee's actual knowledge of Madoff's fraud precluded application of the Section 546(e) safe harbor, thereby allowing the Trustee to avoid transfers made by BLMIS prior to the two-year period. In arguing that Section 546(e) bars recovery—notwithstanding Sentry's actual knowledge, ASB misreads *Cohmad* and ignores this Court's application of that decision in another subsequent transfer recovery action. *See BNP*, 594 B.R. at 197.

### A.    Sentry's Actual Knowledge of Madoff's Fraud Bars Application of Section 546(e)

In its Motion, ASB sets forth at length the requirements of Section 546(e) and how they are presumably met in this case. *See* Motion at 8–15. None of this matters.[9] As ASB concedes, this Court previously found that the Trustee pled that Sentry had actual knowledge of Madoff's

---

[9] The Trustee, however, does not concede that any agreements or transfers between Sentry and ASB trigger safe harbor protection under Section 546(e). Sentry's agreements with and transfers to ASB are simply not relevant, because whether the initial transfers from BLMIS to Sentry are avoidable turns on Sentry's actual knowledge of fraud at BLMIS, not ASB's knowledge as a subsequent transferee.

fraud. *See id.* at 15–16 (citing *Fairfield Inv. Fund*, 2021 WL 3477479, at *4–5). As such, Section

546(e) does not bar the avoidance of these initial transfers to Sentry, and certain of those transfers

may therefore be recovered from ASB, regardless of whether Sentry or ASB qualify as financial

institutions, their agreements qualify as securities contracts, or their transfers qualify as settlement

payments.[10]

### B.    ASB Is Precluded from Relitigating the Actual Knowledge Exception

ASB argues that Cohmad was improperly decided and tries to relitigate whether actual

knowledge bars the application of Section 546(e). However, *Cohmad* was decided in connection

with consolidated proceedings before the District Court and, as ASB concedes, *Cohmad* held that

a party with actual knowledge of Madoff's fraud cannot claim the protection of Section 546(e).

*See* Motion at 16. The District Court then remanded the relevant cases back to this Court, and this

Court has since consistently applied the actual knowledge "exception."[11]

ASB participated in those proceedings before the District Court. *See* Mot. to Withdraw the

Reference, ECF No. 7 (raising 546(e) as grounds for withdrawal); *see also* Section 546(e) Briefing

Order, *Cohmad*, No. 12-MC-00115(JSR), (S.D.N.Y. May 22, 2012), ECF No. 119. Thus, ASB is

bound by *Cohmad* as law of the case. *See SIPC v. BLMIS*, 531 B.R. 439, 466 (Bankr. S.D.N.Y.

2015) ("Those moving defendants that participated in the withdrawal of the reference of the

---

[10] Although not necessary to decide the Motion, ASB's argument that the Trustee is in privity with the Fairfield liquidators and therefore bound by any rulings in the Fairfield liquidation is incorrect. *See* Motion at 11 n.12. ASB cites no relevant authority for this argument. First, *New Hampshire v. Maine*, 532 U.S. 742 (2001) does not involve non-party preclusion. And if *Taylor v. Sturgell*, 553 U.S. 880 (2008), "stands for anything, it is for the need to narrow and regularize the use of preclusion against nonparties." *Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*, No. 07-MD-1902 (JSR), 2013 WL 12191844, at *11 (S.D.N.Y. Mar. 25, 2013).

[11] *See, e.g.*, *Fairfield Inv. Fund*, 2021 WL 3477479, at *4 (applying actual knowledge exception); *Picard v. Square One Fund Ltd.*, Bench Ruling on Motion to Dismiss, Adv. Pro. No. 10-04330 (Bankr. S.D.N.Y. May 29, 2018) (same); *Picard v. Magnify, Inc.*, 583 B.R. 829, 841 (Bankr. S.D.N.Y. 2018) (same); *Picard v. Mendelow et al.*, 560 B.R. 208 (Bankr. S.D.N.Y. Sept. 28, 2016) (same); *Picard v. Avellino*, 557 B.R. 89, 112 (Bankr. S.D.N.Y. 2016) (same); *Picard v. Shapiro*, 542 B.R. 100 (Bankr. S.D.N.Y. 2015) (same); *Picard v. Ceretti, et al.*, Adv. Pro. No. 09-01161 (SMB), 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015) (same); *Picard v. Merkin*, 515 B.R. 117 (Bankr. S.D.N.Y. 2014) (same).

antecedent debt/value issue have had their day in court and Judge Rakoff's decisions are law of the case."); *Picard v. Lowrey*, 596 B.R. 451, 464 (S.D.N.Y. 2019), *aff'd sub nom. Picard v. Gettinger*, 976 F.3d 184 (2d Cir. 2020) (finding law of the case doctrine foreclosed relitigation of issue where the district court "considered and rejected the very arguments that defendants now make…."). Nor does the Second Circuit's decision in *Ida Fishman* warrant reconsideration of *Cohmad*'s actual knowledge exception. *See Picard v. Ida Fishman Revocable Tr. (In re BLMIS)*, 773 F.3d 411 (2d Cir. 2014). As this Court has recognized, *Ida Fishman* did not address the actual knowledge exception. *See Picard v. Cohen*, Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296, at *10 n.16 (Bankr. S.D.N.Y. Apr. 25, 2016).

## C.   ASB Is Precluded from Arguing that Section 546(e) Applies Independently to Recovery Actions

ASB is incorrect that the Trustee must allege that a subsequent transferee had actual knowledge in order to invoke the actual knowledge exception to Section 546(e) in recovery actions. ASB argues that under Cohmad, Sentry's Articles of Association—under which Sentry purportedly "honored" redemption requests from its investors—may serve as the relevant "securities contract" in lieu of BLMIS's account agreement, and therefore in this Section 550 recovery action, the Court must also look to ASB's knowledge to determine whether the initial transfers from BLMIS to Sentry are avoidable. Motion at 12–19. But Cohmad does not stand for this proposition, and ASB's argument just repackages the previously rejected argument that the Section 546(e) safe harbor should independently apply to recovery actions under Section 550.

Under its plain language, Section 546(e) applies to the avoidance of initial transfers, not the recovery of subsequent transfers under Section 550. *See* 11 U.S.C. § 546(e) ("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title." (emphasis added)). As this Court explained in

*BNP*, "[t]he Trustee does not . . . 'avoid' the subsequent transfer; he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550."  594 B.R. at 197; *see also Kelley v. Safe Harbor Managed Acct. 101, Ltd.*, 31 F.4th 1058, 1064 n.5 (8th Cir. 2022) (citing *BNP*, 594 B.R. at 197).

The safe harbor's confinement to avoidance claims is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct."  *SIPC v. BLMIS (In re Madoff Sec.)*, 501 B.R. 26, 30 (S.D.N.Y. 2013) ("*Consolidated 550(a) Decision*").  It is also consistent with the understanding that the Code's avoidance provisions protect against depletion of a debtor's estate, while Section 550 is merely a "utility provision" intended to help execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place."  *In re Picard*, 917 F.3d at 98.  This Court should reject ASB's attempt to conflate these legally distinct provisions of the Bankruptcy Code.

In *Cohmad*, the District Court confirmed that Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees.  The District Court withdrew the reference on whether Section 546(e) barred recovery of a subsequent transfer pursuant to Section 550.  *See* Section 546(e) Briefing Order, *Cohmad*, 12-MC-00115(JSR) (S.D.N.Y. May 16, 2012), ECF No. 119 (withdrawing the reference on issue of "whether application of Section 546(e) to an initial or mediate Transfer bars recovery by the Trustee of any subsequent transfer pursuant to Section 550").  However, the District Court specifically limited the safe harbor to avoidance claims based on the plain language of Section 546(e).  *See Cohmad*, 2013 WL 1609154, at *4, *9 (applying the "plain terms" of Section 546(e)); *id.* at *7 (recognizing that subsequent transferees can raise initial transferees' defenses to *avoidance*); *id.* at *10 ("both

initial transferees and subsequent transferees are entitled to raise a defense based on the application

of Section 546(e) to the *initial* transfer from Madoff Securities" (emphases added)).  And although

the District Court hypothesized, in *dicta*, that a subsequent transferee's subscription with the initial

transferee feeder fund, and related agreements and transactions, might under certain circumstances

constitute relevant "securities contracts," and that certain subsequent transferee defendants might

qualify as "financial institutions" or "financial participants," the decision is clear that the focus of

the safe harbor is still on the *initial* transfers.[12]  *Id.* at *9.  Contrary to ASB's argument, the District

Court did not, in its hypothetical, discuss actual knowledge, nor indicate that in such

circumstances, the initial transferee's actual knowledge should be disregarded.

Based on *Cohmad*, this Court held in *BNP* that Section 546(e) applies only to avoidance

claims, not recovery claims, and that a subsequent transferee cannot benefit from the protections

of Section 546(e) where the Trustee has adequately pled the initial transferee's actual knowledge.

*BNP*, 594 B.R. at 197; *see also SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*,

620 B.R. 505, 514 (Bankr. S.D.N.Y. 2020) ("[T]he safe harbor defense only applies by its terms

to the initial transfer.").  This Court explicitly rejected the argument being made here—that the

"*only* way the Trustee can escape the application of Section 546(e) here is by pleading with

particularity and plausibility that the [subsequent transferee defendants] actually knew of the

Madoff Ponzi scheme." *BNP*, 594 B.R. at 196–97.  Rather, as explained in *BNP*, a subsequent

transferee gets only "indirect" protection from Section 546(e) to the same extent it protects the

initial transferee.  *Id*. at 197.  Like *Cohmad*, *BNP* is law of the case and ASB is bound by both

---

[12] The original point of the *Cohmad* hypothetical was to address the subsequent transfer defendants' argument that if necessary, in lieu of the BLMIS customer agreements, their subscription agreements could act as the relevant securities agreements under Section 546(e). *Cohmad*, 2013 WL 1609154, at *8. That argument became moot once the Second Circuit determined that the BLMIS customer agreement was a "securities agreement" and the initial transfers from BLMIS were "settlement payments" notwithstanding that no securities were traded and therefore subject to Section 546(e). *See Ida Fishman*, 773 F.3d at 419–20, 422.

decisions. *See Picard v. Est. of Seymour Epstein (In re BLMIS)*, No. 1:2l-cv-02334 (CM), 2022 WL 493734, at *12 (S.D.N.Y. Feb. 17, 2022) (finding where different adversary proceedings arise within the same liquidation, law of the case applies when "prior decisions in an ongoing case either expressly resolve[] an issue or necessarily resolve[] it by implication….").

ASB nevertheless contends that Sentry's Articles of Association is the relevant "securities agreement," and therefore this Court must examine ASB's actual knowledge.[13]  Motion at 14–19. But as stated above, the District Court did not conclude this, and *BNP* confirmed this was not the case.  Indeed, ASB's misinterpretation of *Cohmad* would effectively eliminate the point of the actual knowledge exception—which is to restrict bad actors with knowledge of Madoff's fraud from invoking safe harbor protection.  *See Cohmad*, 2013 WL 1609154, at *3 (explaining defendants who knew BLMIS was a Ponzi scheme "must have known that the transfers they received directly or indirectly from Madoff Securities were not 'settlement payments'").  Adopting ASB's position would mean that the safe harbor would apply even where the initial transferee (here, a feeder fund) knew there were no securities transactions to protect.  It would also allow an initial transferee—who had knowledge of the fraud and was unable to satisfy a judgment (like Sentry)—to place fraudulently transferred moneys with subsequent transferees and beyond the reach of a trustee.  *See id.* at *1, *7 ("A defendant cannot be permitted to in effect launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of Section 546(e).").

---

[13] ASB also contends that, by alleging that the subsequent transfers were customer property, the Trustee has conceded that the initial transfers were "in connection with" the subscription agreements with the Defendant. Motion At 15.  As discussed elsewhere herein, the Trustee believes he will prevail on showing that the subsequent transfers are customer property.  However, showing that the initial transfers can be traced through the "relevant pathways" is entirely irrelevant to the issue of whether the initial transfers were "in connection with" any transaction or contract between Sentry and ASB under the safe harbor.

Expanding the safe harbor as ASB proposes also would result in subsequent transferees being afforded more protection as to avoidance than the initial transferee itself, which does not reflect Congress' intent. *See Consolidated 550(a) Decision*, 501 B.R. at 29 ("Section 550(a) requires that the Trustee show that the transfer he seeks to recover is avoidable in each recovery action, and the subsequent transferee in possession of that transfer may raise any defenses to avoidance available to the initial transferee, as well as any defenses to recovery it may have."). As the Eighth Circuit recently observed in *Kelley*, citing *BNP*, under Section 546(e), "a subsequent transferee is protected *indirectly* to the extent that the initial transfer is not avoidable because of the safe harbor." 31 F.4th at 1064 n.5 (emphasis added).

Finally, ASB misconstrues *Cohmad*'s holding that a subsequent transferee with actual knowledge cannot benefit from the safe harbor. *See* Motion at 15–16. That holding does not mean, as ASB contends, that in order to recover from a subsequent transferee, the Trustee must plead ASB's actual knowledge. To the contrary, it merely ensures that a subsequent transferee with actual knowledge cannot step into the shoes of an innocent initial transferee to assert the initial transferee's defense to avoidance under Section 546(e). *See Cohmad*, 2013 WL 1609154, at *1, *7.

## III. THE COMPLAINT PLAUSIBLY PLEADS THAT ASB RECEIVED BLMIS CUSTOMER PROPERTY UNDER SECTION 550(a)

The Trustee's Complaint states a claim for recovery under Section 550(a)(2) by sufficiently alleging that ASB received subsequent transfers of stolen customer property. To plead a subsequent transfer claim, the Trustee must allege facts that support an inference "that the funds at issue originated with the debtor." *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149–50 (Bankr. S.D.N.Y. 2014) ("*Merkin I*"). No tracing analysis is required, as the pleading burden "is not so onerous as to require 'dollar-for-dollar accounting' of 'the exact funds' at issue." *Id*. at 150

27

(quoting *Picard v. Charles Ellerin Revocable Tr. (In re BLMIS)*, Adv. Pro. Nos. 10-04398 (BRL),

10-05219 (BRL), 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012)). Rather, "the Trustee

need only allege sufficient facts to show the relevant pathways through which the funds were

transferred from BLMIS to [the subsequent transferee]." *Charles Ellerin Revocable Tr.* at *3; *see

also 45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 747

(Bankr. S.D.N.Y. 2019). In addition, the Trustee must allege "'the necessary vital statistics—the

who, when, and how much' of the purported transfers to establish an entity as a subsequent

transferee of the funds." *Merkin I*, 515 B.R. at 150 (quoting *Silverman v. K.E.R.U. Realty Corp.

(In re Allou Distribs., Inc.)*, 379 B.R. 5, 32 (Bankr. E.D.N.Y. 2007)).

Here, the Trustee has met these pleading requirements. The Trustee's Complaint that

Sentry invested substantially all of its funds with BLMIS and that ASB received transfers,

identified by date and amount, from Sentry. Compl. ¶¶ 2, 41, Ex. C. Thus, the Complaint plausibly

alleges that ASB received subsequent transfers of BLMIS customer property by (a) outlining the

relevant pathways through which customer property was transferred from BLMIS to Sentry and

subsequently to ASB and (b) providing the necessary vital statistics for each subsequent transfer.

Nothing more is required. *See, e.g.*, *Picard v. Mayer (In re BLMIS)*, Adv. Pro. No. 20-01316

(CGM), 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021) (rejecting argument that

subsequent transfer claim was not pled "with enough specificity as to how and what [defendant]

received" and holding complaint "contains sufficient information regarding which transfers the

Trustee is seeking to recover").

### A. ASB Misstates the Trustee's Pleading Burden

Aware of the sufficiency of the Trustee's allegations, ASB argues that a heightened

pleading standard applies here. ASB incorrectly contends that "in order to state a claim under

Section 550(a), 'the plaintiff has the burden of tracing funds it claims to be property of the estate.'"

Motion at 16 (citing *In re Allou Distribs., Inc.*, 379 B.R. at 5; *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 708 (11th Cir. 2005)) ("*IAS*")).  But *IAS* involved a post-trial appeal and addressed a plaintiff's burden at trial not at the pleading stage.  *In re Allou Distribs., Inc.,* 379 B.R. at 5.  By framing the quoted language from *IAS* as a pleading requirement "to state a claim," ASB misstates the law.  Further language from *Allou*, which ASB does not quote, makes this very clear:

> [I]n order to *prove* a Section 550(a)(2) claim, a plaintiff must carry its burden . . . [a]nd similarly, in order to *state* a Section 550(a)(2) claim, a plaintiff must allege sufficient facts to show, if proved, that the funds at issue originated with the debtor.  But if dollar-for-dollar accounting is not required at the proof stage, then surely it is not required at the pleading stage either.

379 B.R. at 5 (emphasis added). ASB conflates the pleading and ultimate burden of proof, and the cases ASB cites support finding that the Complaint sufficiently details the transfer at issue.

To the extent ASB is arguing that the Complaint must identify the specific initial transfer which was subsequently transferred to ASB, the Court already rejected this argument in *Merkin I*. *See* 515 B.R. at 150 (refusing to dismiss subsequent transfer claims even though the complaint did "not connect each of the subsequent transfers with an initial, voidable transfer emanating from BLMIS"); *see also In re 45 John Lofts, LLC*, 599 B.R. at 747 (finding no "requirement to trace individual dollar amounts from the transferor to the transferee to survive a motion to dismiss"). This Court has also held that the Trustee need not detail which and what portion of each subsequent transfer comprises customer property.  *See Merkin I*, 515 B.R. 152–53 (refusing to dismiss complaint where "at least some of the subsequent transfers . . . may be recoverable"); *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3 (holding at summary judgment, "it is not necessary for the Trustee to specify what portion of the Subsequent Transfers to [defendant] was derived from BLMIS").

ASB's reliance on *Picard v. Shapiro (In re BLMIS)*, 542 B.R. 100 (Bankr. S.D.N.Y. 2015) is likewise misplaced. ASB contends: "As in *Shapiro*, the Trustee's Complaint fails to plead the 'necessary vital statistics.'" Motion at 10. This is factually and legally incorrect. In *Shapiro,* the Trustee alleged that certain trusts and members of the Shapiro family received approximately $54 million in fraudulent transfers from BLMIS, and "upon information and belief" these defendants subsequently transferred this same amount to other defendants. *See Shapiro,* 542 B.R. at 104. The Court dismissed the Trustee's subsequent transfer claims because the complaint did not detail *any* of the necessary vital statistics of the subsequent transfers. *Id.* at 119. There were no allegations regarding the subsequent transferors, the subsequent transferees, or the dates or amounts of the subsequent transfers, and consequently this Court granted Defendants' motion to dismiss the subsequent transfer claim. *Id.* Unlike in *Shapiro*, the Complaint here identifies the specific subsequent transfers received by ASB from Sentry. *See* Compl., Ex. D. These are the "necessary vital statistics" for the transfer ASB received. *See In re Allou Distribs., Inc.*, 379 B.R. at 32. Moreover, the Complaint alleges additional facts regarding ASB's status as an investor in Sentry. *See* Compl. ¶¶ 2, 6–7.

### B.    ASB's Tracing Arguments Fail on a Motion to Dismiss

ASB's other fact-based tracing arguments fare no better and are inappropriate on a motion to dismiss. For instance, ASB contends the transfers it received from Sentry are comprised of subscriptions from other investors, Motion at 23–25, and that Sentry commingled customer property with other funds, and this commingling defeats the Trustee's ability to trace the transfer of customer property from BLMIS. *Id.* at 25–26. Again, ASB is wrong. "The law does not place such a difficult burden on trustees. The commingling of legitimate funds with funds transferred from the debtor does not defeat tracing." *Kelley v. Westford Special Situations Master Fund, L.P.*,

No. 19-cv-1073 (ECT/KMM), 2020 WL 3077151, at *4 (D. Minn. June 10, 2020) (citing *Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *3) (citation omitted).

ASB nevertheless offers its own tracing analysis and maintains that "Sentry *apparently* had depleted all the customer property it received [from BLMIS] by the time ASB made each of the redemptions." Motion at 23 (emphasis added). However, ASB does not disclose what specific tracing methodology or methodologies it relies upon to reach this conclusion. And why not? Because it is for this Court to decide—after fact and expert discovery—the appropriate tracing methodology under the circumstances of this case.[14] *See Picard v. Merkin (In re BLMIS)*, 581 B.R. 370, 386 (Bankr. S.D.N.Y. 2017) ("*Merkin II*") ("[T]he Court's selection of an appropriate methodology is committed to the Court's discretion."); *Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *3, n.7 ("Courts have broad discretion to determine which monies of commingled funds derive from fraudulent sources." (citing *United States v. Henshaw*, 388 F.3d 738, 741 (10th Cir. 2004) (finding "courts exercise case-specific judgment to select the method best suited to achieve a fair and equitable result on the facts before them"))).

When ASB contends that Sentry exhausted all BLMIS customer property on hand before ASB received each of its redemptions, *see* Motion at 23, ASB assumes that every subsequent transfer that preceded ASB's transfers was sourced solely by customer property. ASB even

---

[14] This Court has recognized different tracing methodologies offered by the Trustee in this liquidation to assist the trier of fact, including: (1) Last In, First Out (LIFO), (2) First In, First Out (FIFO), (3) Lowest Intermediation Balance Rule (LIBR), (4) Restated Tracing Rules (Restated LIBR), and (5) Proportionality. These "methodologies reflect legal rules or fictions designed to assist a Court in dealing with an improper transfer form a commingled fund." *Merkin II*, 581 B.R. at 386.

attempts to rely on exhibits to pleadings from other adversary proceedings.[15]  *Id.* at 21 n.21; *see also* Barrett Decl. ¶¶ 18–50, Exs. A, K, L, ECF No. 106.  Putting aside whether ASB's reliance is proper on a motion to dismiss, these exhibits do not establish that ASB did not receive BLMIS customer property.  At this stage of the proceedings, the Trustee is not required to plead, much less establish, that an alleged subsequent transfer consisted entirely of customer property.  *See Kelley*, 2020 WL 3077151, at *4 (holding where debtors' funds are commingled with "cash from new subscribing investors," a trustee is not required to establish that transfers "originated solely" with the debtor or even to account for "the exact funds at issue" on summary judgment); *In re 45 John Lofts, LLC*, 599 B.R. at 746–47 (rejecting argument "that Plaintiff generically, and without factual support, alleged that every transfer out of" the initial transferee's commingled account was made with debtor property because the plaintiff is not required "to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss" (internal quotation marks omitted)).  Because the Trustee's exhibits do not establish that each alleged prior transfer was comprised solely of BLMIS customer property, and because the Trustee is not required to do so at this stage of the proceeding, there is nothing to support ASB's factual contention that none of the transfers it received from Sentry contained any BLMIS customer property.

ASB also argues that it could not have received any BLMIS customer property because of the amount of time that elapsed between Sentry's receipt of certain initial transfers from BLMIS

---

[15] The declaration of ASB's counsel includes several "calculations" of transfers from BLMIS to Sentry and Sentry to its investors.  *See* Barrett Decl., ECF No. 106.  ASB claims these calculations show that it did not receive any customer property.  But ASB's calculations, based on undefined tracing methodology, serve as nothing more than "an attempt to interject improper expert testimony into a Rule 12(b)(6) context." *Fowler v. Caliber Home Loans, Inc.*, 277 F. Supp. 3d 1324, 1331 (S.D. Fla. 2016) (declining to consider expert testimony in a motion to dismiss); *see also In re Viropharma, Inc.*, No. CIV.A. 02-1627, 2003 WL 1824914, at *2 (E.D. Pa. Apr. 7, 2003) ("The [party's] submission of an expert report at [the motion to dismiss] stage is entirely improper.").

and certain of Sentry's subsequent transfers to ASB.[16]  Motion at 23.  This is a variation of ASB's

tracing argument that Sentry transferred BLMIS customer property to other investors rather than

ASB.  Again, this argument is inappropriate on a motion to dismiss.  And even if it may prove

difficult for the Trustee to trace all of the subsequent transfers sought here, this is not grounds for

dismissal at the pleading stage.  *See Merkin I*, 515 B.R. at 152 (finding it "premature to cut off the

Trustee's opportunity to satisfy his [tracing] burden on a motion to dismiss" merely because

tracing may prove difficult); *Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*, Adv. Pro.

Nos. 10-03493 (SMB), 10-05447 (SMB), 2014 WL 47774, at *15 (Bankr. S.D.N.Y. Jan. 3, 2014)

("[T]he [subsequent transferees'] speculation that tracing is 'not likely' to reveal a subsequent

transfer . . . hardly justifies granting [their cross-motion for summary judgment].").

Finally, ASB's tracing arguments are entirely premature.  The Trustee is a stranger to the

transactions between Sentry and ASB and is entitled to discovery on this issue.  "[I]n a case such

as this one, where 'the Trustee's lack of personal knowledge is compounded with complicated

issues and transactions [that] extend over lengthy periods of time, the trustee's handicap increases,'

and 'even greater latitude' should be afforded." *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 454

B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (citation omitted).  This is one reason why this Court in

*Merkin I* denied the defendants' motion to dismiss, finding "[t]he subsequent transfer claim must

ultimately be proved through the books and records of the defendants."  515 B.R. at 151.  And

even after fact discovery, expert opinion is necessary to determine what portion of the subsequent

transfer stemmed from the initial transfer where the subsequent transfers originated from

commingled accounts.  *Merkin II*, 581 B.R. at 386; *see also Kelley*, 2020 WL 3077151, at *5

---

[16] To the extent the Court finds it relevant, ASB ignores the alleged transfers in the Trustee's Complaint where the initial and subsequent transfers are close in time.

(denying summary judgment because trustee introduced expert report and associated documents
from which a jury could infer that defendants received subsequent transfers of customer property).

### C.    ASB's Claims of Double Recovery Are Premature

ASB also argues the Trustee's claims are "facially implausible" because the Trustee is
seeking more money from all of Sentry's subsequent transferees than Sentry withdrew from
BLMIS.  Motion at 25.  There is no dispute that the Trustee is limited to "a single satisfaction"
under Section 550(a).   11 U.S.C. § 550(d).   However, the Trustee "can recover from any
combination of [transferees]" up to the amount avoided.  *Helms v. Metro. Life Ins. Co. (In re
O'Malley)*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021).  And
under Section 550(a), "a trustee may recover [an avoided] transfer from a subsequent transferee of
those funds, without the necessity for allocation among all [the] subsequent transferees."  *CNB
Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*, 393 B.R. 306, 333 (Bankr. W.D.N.Y. 2008).  Thus,
until the Trustee recovers the full amount of the fraudulent transfers received by Sentry, the Trustee
may simultaneously seek recovery from ASB in this action and from defendants in other actions,
even in an aggregate amount that exceeds the total amount of initial transfers.  *See Fairfield Inv.
Fund*, 2021 WL 3477479, at *12 (holding arguments regarding "double recovery" and the
Trustee's purported limitations under Section 550(d) are "to be determined at a later stage in the
litigation").

## IV.    THE COMPLAINT SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE SENTRY INITIAL TRANSFERS

ASB argues the Trustee's Complaint fails to plead the avoidability of the initial transfers
from BLMIS to Sentry because the Complaint does not allege that the initial transfers "were
avoided," and because the Trustee's incorporation by reference of the First Amended Complaint
against Sentry violates Rules 8(a) and 10(c).  Motion at 26–29.  Both arguments fail.

ASB invokes the "plain text" of Section 550(a) to argue that the phrase "to the extent a transfer is avoided" prevents the Trustee from recovering transfers from ASB unless the Trustee "first avoided" the transfers from Sentry. Motion at 27. But ASB previously made and lost this very argument in the District Court. *See Consolidated 550(a) Decision*, 501 B.R. at 37. ASB participated in briefing the Section 550(a) issue in the District Court. *See* Order, *Cohmad*, 12-MC-00115(JSR) (S.D.N.Y. May 13, 2013), ECF No. 468. And the District Court's decision is law of the case. *See Lowrey*, 596 B.R. at 464.

Specifically, within this SIPA liquidation proceeding, the District Court and this Court have adopted the majority view that a trustee does not need to have obtained a judgment avoiding an initial transfer prior to pursuing recovery from a subsequent transferee. *See Consolidated 550(a) Decision*, 501 B.R. at 37 (holding "to the extent a transfer is avoided" language in Section 550 only requires showing that a transfer is avoidable and does not require an actual judgment of avoidance); *Fairfield Inv. Fund Ltd.*, 2021 WL 3477479, at *3 (construing Section 550(a) to require the Trustee to "show that the initial transfer of [] property by the debtor is *subject to avoidance* under one of the Bankruptcy Code's avoidance provisions (*e.g.*, 11 U.S.C. §§ 544, 547 & 548)." (emphasis added)); *BLI*, 480 B.R. at 522 (construing Section 550 to require only avoidability in order to pursue subsequent transferee).

ASB next argues that the Trustee's incorporation of the First Amended Complaint against Sentry violates Rule 8(a)(2)'s requirement to include a "short and plain statement" showing the Trustee is entitled to relief. Motion at 36–37. However, there is no doubt that the Trustee may incorporate the First Amended Complaint under Rule 10(c) to demonstrate the avoidability of the initial transfers from BLMIS. *See Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670, 679

(Bankr. E.D. Pa. 2010) (allowing incorporation by reference under Rule 10(c) of pleadings in different adversary proceeding within the same liquidation).

ASB's argument against incorporation by reference also conflicts with the District Court's *Consolidated 550(a) Decision*.  Again, ASB argued in the District Court that the Trustee failed to state a claim for recovery because he had not "avoided" the initial transfers to Sentry.  *See Consolidated 550(a) Decision,* 501 B.R. at 29.  But the District Court held that the Trustee had stated a claim, finding that the Trustee did not need to "avoid" a transfer before pursuing a claim for recovery, that Section 550(a) only "requires that the Trustee show that the transfer he seeks to recover is avoidable in each recovery action," *and* that the Trustee pleaded the avoidability of the initial transfers from BLMIS to Sentry by incorporating by reference the then-operative First Amended Complaint against Sentry:

> [T]he Trustee's complaint against Standard Chartered Financial Services incorporates by reference the complaints against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. *See* Standard Chartered Compl. 1143–46, 50–53. Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).

*Id*. at 36.  Once again, this decision—allowing for incorporation by reference—is law of the case. *See Lowrey*, 596 B.R. at 464.

In any event, ASB's argument is much ado about nothing, because this Court may take judicial notice of the Fairfield Second Amended Complaint and its decision holding this complaint sufficiently alleges the avoidability of the initial transfers from BLMIS.  *See Fairfield Inv. Fund*, 2021 WL 3477479.  On a motion to dismiss, "a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*."  *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4

(E.D.N.Y. 2011).  "Included among such matters are decisions in prior lawsuits."  *DeMasi v. Benefico*, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008).  Finally, the fact that the noticed Second Amended Complaint was filed after this Complaint against ASB is of no moment.  *See Rothman v. Gregor*, 220 F.3d 81, 91–92 (2d Cir. 2000) (noticing later filed complaint in related proceeding).

The Trustee has complied with the Federal Rules in pleading the avoidability of the initial transfers, and regardless, this Court may take judicial notice of its opinion in *Fairfield Investment Fund*.  If this Court holds otherwise, the Trustee respectfully requests the opportunity to replead.

## CONCLUSION

The Trustee respectfully requests that the Court deny ASB's Motion in its entirety.

Dated:  May 24, 2022
New York, New York

*/s/ Torello H. Calvani*

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Torello H. Calvani
Email: tcalvani@bakerlaw.com
Joanna F. Wasick
Email: jwasick@bakerlaw.com
Tara E. Turner
Email: tturner@bakerlaw.com

Baker & Hostetler LLP
127 Public Square
Cleveland, Ohio 44114
Telephone: (216) 621-0200
Facsimile: (216) 696-0470
James H. Rollinson
jrollinson@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*