**Hearing Date: July 13, 2022 at 10:00 a.m. (ET)**

Leo Muchnik
**GREENBERG TRAURIG, LLP**
One Vanderbilt Avenue
New York, New York 10017
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: muchnikl@gtlaw.com

Joseph P. Davis (admitted *pro hac vice*)
Alison T. Holdway (admitted *pro hac vice*)
**GREENBERG TRAURIG, LLP**
One International Place, Suite 2000
Boston, Massachusetts 02110
Telephone: (617) 310-6000
Facsimile: (617) 310-6001
Email: davisjo@gtlaw.com
Email: holdwaya@gtlaw.com

*Attorneys for Defendant The Public Institution for Social Security*

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (CGM) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment | Adv. Pro. No. 12-01002 (CGM) |

Securities LLC, and Bernard L. Madoff,

                    Plaintiff,

        v.

THE PUBLIC INSTITUTION FOR SOCIAL
SECURITY,

                    Defendant.

**REPLY IN SUPPORT OF THE PUBLIC INSTITUTION
<u>FOR SOCIAL SECURITY'S MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

Page

ARGUMENT ...................................................................................................1

    I.    No Clause of the FSIA's Commercial Activity Exception Applies. .......................1

        A.    Trustee Has Not Established PIFSS' Conduct
                Had a Direct Effect in the U.S. under the
                Third Clause of the Commercial Activity Exception. ................................2

        B.    Neither the First nor Second Clause of the
                Commercial Activity Exception Applies. .....................................................5

    II.    This Court Does Not Have Specific Jurisdiction Over PIFSS...............................6

        A.    Transfers Through Correspondent
                Bank Accounts Do Not Establish Jurisdiction.............................................6

        B.    Trustee Has Not Established Purposeful Availment..................................10

        C.    An Unidentified Subscription Agreement
                Does Not Support Jurisdiction. ..................................................................12

    III.    Trustee Cannot Save His Improper
           Incorporation by Reference of the FAC.....................................................13

    IV.    Section 546(e) Bars Trustee's Claim to Recover on the Transfer. ........................14

    V.    The Complaint Does Not Plausibly Allege that
        PIFSS Received Customer Property. ........................................................17

CONCLUSION ...........................................................................................20

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*45 John Lofts LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
    599 B.R. 730 (Bankr. S.D.N.Y. 2019) .............................................................................. 18

*Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670 (Bankr. E.D. Pa. 2010) ........................ 13

*Aramony v. United Way of Am.*, 254 F.3d 403 (2d Cir. 2001) ............................................................ 2

*Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989) ................................ 2

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................................... 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................................... 17

*Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379 (S.D.N.Y. 2021) .................................................. 6

*Criterium Capital Funds B.V. v. Tremont (Berm.) Ltd.
    (In re Kingate Mgmt. Ltd. Litig.)*, 746 F. App'x 40 (2d Cir. 2018) ...................................... 1

*Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374 (S.D.N.Y. 2013) ........................... 9

*Daou v. BLC Bank, S.A.L.*, No. 20-cv-4438,
    2021 U.S. Dist. LEXIS 69502(S.D.N.Y. Apr. 9, 2021) ................................................... 3, 5

*Eldesouky v. Aziz*, No. 11-CV-6989, 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014) .................... 9

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
    Adv. No. 10-03496, 2018 Bankr. LEXIS 2324 (Bankr. S.D.N.Y. Aug. 6, 2018) ............ 13

*Guirlando v. T.C. Ziraat Bankasi A.S.*, 602 F.3d 69 (2d Cir. 2009) .......................................... 3, 4

*Hau Yin To v. HSBC Holdings, PLC*, No. 15CV3590, 2017 U.S. Dist. LEXIS 28931
    (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017) ....................................... 8

*Helms v. Metro. Life Ins. Co. (In re O'Malley)*, 601 B.R. 629 (Bankr. N.D. Ill. 2019),
    *aff'd*, 633 B.R. 332 (N.D. Ill. 2021) .......................................................................... 19, 20

*Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016) ..................................................... 8

*HSH Nordbank AG N.Y. Branch v. Street*, No. 11 Civ. 9405,
    2012 WL 2921875 (S.D.N.Y. July 18, 2012) .................................................................. 9

*In re Gorsoam Ltd.*, No. 17-cv-5912, 2021 WL 240736 (S.D.N.Y. Jan. 25, 2021) ...................... 2

*In re Picard*, 917 F.3d 85 (2d Cir. 2019) ...................................................................... 4

*In re Southmark Corp.*, 239 F.3d 365, 2000 WL 1741550
(5th Cir. 2000) (per curiam), as amended on reh'g (Dec. 11, 2000) ............................... 19

*In re UBS AG Secs. Litig.*, No. 07 Civ. 11225,
2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) ......................................................... 13, 14

*Kensington Int'l Ltd. v. Itoua*, 505 F.3d 147 (2d Cir. 2007) ......................................... 3

*Licci v. Lebanese Canadian Bank, SAL*, 984 N.E.2d 893 (N.Y. 2012) .......................... 9

*MMA Consultants 1, Inc. v. Republic of Peru*, 719 F. App'x 47 (2d Cir. 2017) ............ 3

*OBB Personenverkehr AG v. Sachs*, 577 U.S. 27 (2015) .......................................... 2, 3

*Off. Comm. of Unsecured Creditors of Arcapita v.
Bahrain Islamic Bank*, 549 B.R. 56 (S.D.N.Y. 2016) .................................................. 9

*Pablo Star Ltd. v. Welsh Gov.*, 961 F.3d 555 (2d Cir. 2020) .................................... 1, 5

*Picard v. ABN AMRO Bank (Ireland) Ltd.*, 505 B.R. 135 (S.D.N.Y. 2013) ................. 16

*Picard v. BNP Paribas S.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
594 B.R. 167 (Bankr. S.D.N.Y. 2018) ................................................................... 7, 8

*Picard v. Bureau of Labor Ins. (In re Bernard L. Madoff Inv. Sec. LLC)*,
480 B.R. 501 (Bankr. S.D.N.Y. 2012) ................................................................... 2, 3

*Picard v. Charles Ellerin Rev. Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*,
2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012) .................................................. 18

*Picard v. Est. of Stanley Chais (In re Bernard L. Madoff Inv. Sec. LLC)*,
445 B.R. 206 (Bankr. S.D.N.Y. 2011) ................................................................... 18

*Picard v. Fairfield Inv. Fund Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*,
2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ................................................. 15

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
515 B.R. 117 (Bankr. S.D.N.Y. 2014) ................................................................... 18

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*,
542 B.R. 100 (Bankr. S.D.N.Y. 2015) ................................................................... 17

*S.I.P.C. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 115,
2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ............................................. 14, 15, 16, 17

*S.I.P.C. v. Bernard L. Madoff Inv. Secs. LLC (In re Madoff Secs.)*,
501 B.R. 26 (S.D.N.Y. 2013) ............................................................................. 13

*Saudi Arabia v. Nelson*, 507 U.S. 349 (1993) ................................................................. 3

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib. Inc.)*,
    379 B.R. 5 (Bankr. E.D.N.Y. 2007) ................................................................. 18

*Skanga Energy & Marine Ltd. v. Aevenca S.A.*,
    875 F. Supp. 2d 264 (S.D.N.Y. 2012) ................................................................. 4

*Tuli v. Republic of Iraq (In re Tuli)*, 172 F.3d 707 (9th Cir. 1999) ................................. 2

*United States v. Assa Co.*, 934 F.3d 185 (2d Cir. 2019) ................................................. 2

*Walden v. Fiore*, 571 U.S. 277 (2014) ................................................................. 6, 11

**Statutes**

11 U.S.C. § 106(a) ................................................................. 1, 2

11 U.S.C. § 546(e) ................................................................. 14, 15, 16

11 U.S.C. § 550(a)(2) ................................................................. 20

28 U.S.C. § 1603(e) ................................................................. 5

28 U.S.C. § 1605(a)(2) ................................................................. 1, 3, 5

**Rules**

Fed. R. Civ. P. 8(a) ................................................................. 13

Fed. R. Civ. P. 8(a)(2) ................................................................. 13

Fed. R. Civ. P. 8(d)(1) ................................................................. 13

Fed. R. Civ. P. 10(c) ................................................................. 13

Defendant The Public Institution for Social Security ("PIFSS") respectfully submits this reply memorandum in support of its motion to dismiss the Complaint.[1]

## ARGUMENT

**I.      No Clause of the FSIA's Commercial Activity Exception Applies.**

In its Moving Brief, PIFSS demonstrated that it is a foreign state under the Foreign Sovereign Immunities Act ("FSIA") entitled to immunity, and that the third clause of the commercial activity exception—pertaining to a foreign state's activity on foreign soil causing a direct effect in the U.S.—does not apply. (Br. at 9–11.) *See* 28 U.S.C. § 1605(a)(2).

Trustee concedes that PIFSS is a foreign state under the FSIA, which renders PIFSS presumptively immune from suit. As such, the burden is on the Trustee "to make an initial showing that an enumerated exception to sovereign immunity applies." *Pablo Star Ltd. v. Welsh Gov.*, 961 F.3d 555, 560 (2d Cir. 2020) (internal citation omitted). Trustee contends that each of the three clauses under the commercial activity exception is met. (Opp. at 7.)[2] However, he has failed to meet his burden compelling dismissal of the Complaint.

Trustee's interpretation of each clause of the exception is unsupported, and allegations underlying Trustee's argument in his Opposition were not included in the Complaint. (*See, e.g.*, Opp. at 10 (alleging PIFSS received and signed a Sentry Information Memorandum ("IM")), 14 (alleging PIFSS had a correspondent bank account in New York).) PIFSS first addresses the third clause below and then turns to the first and second clauses.[3]

---

[1]    This Reply uses the same abbreviations as PIFSS' Memorandum of Law in Support of its Motion to Dismiss, ECF No. 118 ("Moving Brief" or "Br.").

[2]    The first deals with "commercial activity carried on in the [U.S.] by a foreign state;" the second with, "an act performed in the [U.S.] in connection with a commercial activity of the foreign state elsewhere." 28 U.S.C. § 1605(a)(2).

[3]    To the extent that there may be an argument that PIFSS is not entitled to sovereign immunity under 11 U.S.C. § 106(a), Trustee failed to raise and, therefore, forfeited the argument. *See Criterium Capital Funds B.V. v. Tremont (Berm.) Ltd. (In re Kingate Mgmt. Ltd. Litig.)*, 746 F. App'x 40, 43 (2d Cir. 2018) (affirming finding

A.    Trustee Has Not Established PIFSS' Conduct Had a Direct Effect in the
<u>U.S. under the Third Clause of the Commercial Activity Exception</u>.

Trustee's argument about the applicability of the third clause of the exception hinges on his contention that the Court's ruling in *Picard v. Bureau of Labor Ins. (In re Bernard L. Madoff Inv. Sec. LLC)*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012) ("*BLI*") is law of the case. (Opp. at 9.) The law of the case doctrine applies when "prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication." *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001). "Application of the law of the case doctrine is discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment[,]" *id.* (quotation marks and citations omitted), particularly where there was an intervening change in controlling law or clear error. *In re Gorsoan Ltd.*, No. 17-cv-5912, 2021 WL 240736, at *2 (S.D.N.Y. Jan. 25, 2021).

*BLI* is not the law of the case because it predates the Supreme Court's seminal decision in *OBB* and the *BLI* Court focused on the wrong conduct without analyzing the specific conduct that formed the foundation of the lawsuit. (Br. at 11.) As clarified by the Supreme Court's subsequent ruling in *OBB*, the only conduct relevant to Trustee's Section 550(a)(2) claim is the 2004 Transfer. 577 U.S. at 33–34. *OBB*'s holding regarding the "based upon" prong renders *BLI* inapplicable. The Trustee's identification of factual differences between this case and *OBB* is a distinction without a difference. Further, Trustee's argument that the *BLI* decision is not impacted by *OBB* because the Supreme Court "did not cite to" *BLI* (Opp. at 12) is nonsensical.

---

that plaintiffs waived argument by failing to raise it in opposition to motion to dismiss). The Supreme Court and Second Circuit have long held that the FSIA is the "sole basis" of subject matter jurisdiction over foreign states. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989) ("[T]he FSIA is the sole basis for obtaining jurisdiction over a foreign state in our courts."); *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 30 (2015) (same); *United States v. Assa Co.*, 934 F.3d 185, 189 (2d Cir. 2019) ("If the defendant is a foreign state, the lawsuit *must* go through the FSIA gateway." (emphasis in original)). While the Ninth Circuit has found that section 106(a)(1) abrogates the FSIA with respect to certain provisions of the Bankruptcy Code, that finding was *dicta*; the defendant foreign state never appeared or raised a sovereign immunity defense. *See Tuli v. Republic of Iraq (In re Tuli)*, 172 F.3d 707, 711–12 (9th Cir. 1999). However, the FSIA is clear and, as noted, the Supreme Court has repeatedly held that exceptions to sovereign immunity are set forth only in that statute.

*BLI*'s reasoning is irreconcilable with *OBB*. The *BLI* court did not focus on the subsequent transfer at issue, but instead on defendant's motive to have its funds "invested in BLMIS." 480 B.R. at 511. *OBB* dictates, however, that the conduct that constitutes the gravamen of Trustee's Complaint is PIFSS' receipt of a single redemption transfer. The "basis or foundation" of Trustee's subsequent transfer claim against PIFSS has nothing to do with PIFSS' purported intent to invest in BLMIS through Sentry. (Opp. at 10). Proof of that fact would not "entitle [Trustee] to relief," which is the focus of the "based upon" prong. *OBB*, 577 U.S. at 34.[4]

The Complaint demonstrates that PIFSS' act of receiving a redemption payment in January 2004 did not have a "direct effect" in the U.S., which is the third prong of the exception. "[A]n effect is 'direct' if it follows 'as an ***immediate*** consequence of the ***defendant's . . . activity***.'" *Guirlando v. T.C. Ziraat Bankasi A.S.*, 602 F.3d 69, 74 (2d Cir. 2009) (emphasis added) (citation omitted). There must be "no intervening element." *Id.* (citations omitted). The Second Circuit has held repeatedly that the "transfer of funds out of a New York bank account is not itself sufficient to place the effect of a defendant's conduct in the United States within the meaning of § 1605(a)(2)." *Id.* at 80 (citations omitted).[5]

---

[4]    Trustee alternatively argues that *BLI* is consistent with *OBB* because both cite *Saudi Arabia v. Nelson*, 507 U.S. 349 (1993), but his argument obscures the import of *Nelson*. The words "foundation" and "gravamen" each appear once in *Nelson* in a string cite in *dictum*. *See* 507 U.S. at 357. *OBB*, in contrast, took the "teach[ings]" from *Nelson* and clarified in its holding that courts must ascertain the conduct that constitutes the gravamen or core of the lawsuit: "the [foreign] sovereign['s] acts that actually injured [the plaintiff]." 577 U.S. at 35. Since *OBB*, the Second Circuit has described zeroing in on the gravamen of the claim as the "'foundational step' for determining whether § 1605(a)(2) applies." *MMA Consultants 1, Inc. v. Republic of Peru*, 719 F. App'x 47, 52 (2d Cir. 2017) (citation omitted). It is required for all three clauses of the commercial activity exception. *See Kensington Int'l Ltd. v. Itoua*, 505 F.3d 147, 155 (2d Cir. 2007) ("based upon" has same meaning in all three clauses of § 1605(a)(2)). In examining the "based upon" prong, "a court must consider the degree of closeness . . . between the commercial activity and the gravamen of the plaintiff's complaint." *Daou v. BLC Bank, S.A.L.*, No. 20-cv-4438, 2021 U.S. Dist. LEXIS 69502, at *16 (S.D.N.Y. Apr. 9, 2021) (alteration in original) (quotation marks and citations omitted). "There must be a ***significant nexus*** between the commercial activity in this country upon which the exception is based and a plaintiff's cause of action[, which] involves a degree of closeness . . . ***considerably greater than common law causation requirements***." *Id.* at *16–17 (emphasis added) (quotation marks and internal citations omitted).

[5]    Since the relevant "act" for the "direct effects" is the one that underpins the "based upon" prong, the *BLI* court's analysis of this prong is likewise incorrect in light of *OBB*. *See* 28 U.S.C. § 1605(a)(2) ("based . . . upon *an act*

3

Nothing in the Complaint alleges that any request by PIFSS to Sentry for a redemption or payment by Sentry to PIFSS of the 2004 Transfer had an effect in the U.S. To the contrary, Complaint Ex. B (Dkt. No. 1-2) and Muchnik Decl. Ex. G (Dkt. No. 117-7) show that **no funds** were withdrawn during that time and **no** customer property was transferred from BLMIS to Sentry in the six months before the Transfer. Further, Trustee does not dispute Sentry used subscription funds from other investors to make redemption payments (Opp. at 37)—which, separately, is an intervening element, fatal to Trustee's "direct effects" contention. *See Guirlando*, 602 F.3d at 75 ("The requisite immediacy is lacking where the alleged effect depends crucially on variables **independent** of the conduct of the foreign state." (emphasis added) (citation and quotation marks omitted)).[6]

Finally, Trustee's argument that BLMIS' initial transfers and Sentry's subsequent transfers are all "domestic" under *In re Picard*, 917 F.3d 85 (2d Cir. 2019) is wrong. The FSIA focuses on whether conduct of a foreign sovereign had a direct effect in the U.S., not whether U.S. law applies extraterritorially. *Picard* has no bearing on whether PIFSS' activities in Kuwait had a direct effect in the U.S.[7]

---

*outside* the territory the territory of the United States in connection with a commercial activity of the foreign state elsewhere and *that act* causes a direct effect in the United States" (emphasis added)).

[6]    While the *BLI* court found Sentry's acts did not break "the chain of causation" between the defendant's redemption request to Sentry and any direct effect in the U.S., the defendant in *BLI* did not argue that Sentry had used other subscribers' moneys to fund the redemption transfer. *See Picard* v. *Bureau of Labor Ins.*, Adv. No. 11-02732 [ECF No. 38], Reply Brief at 18. It was thus in this context that the *BLI* court found Sentry's acts as being connected to the redemption request. In addition, *BLI*'s finding on causation is flawed considering *OBB* since it focused on the wrong conduct as noted above, *supra* at 3 n.5.

[7]    Opposition footnote 21 claims that PIFSS is wrong that the Complaint does not allege commercial activity in the U.S. or redemptions causing a direct effect in the U.S. But the portions of the Complaint that Trustee cites (¶¶ 35–39, 41, Compl. Ex. C) allege **Sentry's** contacts with BLMIS and that **Sentry** transferred funds to PIFSS without specifically tying BLMIS' initial transfer(s) to any transfer to PIFSS. The Complaint fails to allege any activity on the part of PIFSS that caused a direct effect in the U.S. Trustee's reliance on *Skanga Energy & Marine Ltd. v. Aevenca S.A.*, 875 F. Supp. 2d 264 (S.D.N.Y. 2012) is misplaced. In *Skanga*, the foreign state required plaintiff to deposit funds into its *agent's* bank account in the U.S. *See* 875 F. Supp. 2d at 272. No such allegation is present here, and the documents annexed to the Song Decl. show only that PIFSS had a bank account in London.

B.       Neither the First nor Second Clause of the Commercial Activity Exception Applies.

Trustee argues that the first and second clauses of the commercial activity exception apply, but he failed to fully analyze the requirements of either clause and has not shown a "degree of closeness" between PIFSS' alleged activity and the gravamen of Trustee's claim, let alone one with a "significant nexus . . . considerably greater than common law causation requirements." *Daou*, 2021 U.S. Dist. LEXIS 69502, at *16–17 (quotation marks and internal citations omitted).

Under the first clause, a foreign state does not have sovereign immunity where "the action is based upon a commercial activity carried on in the United States by the foreign state," 28 U.S.C. § 1605(a)(2). To trigger this clause, commercial activity carried on by PIFSS must have had "***substantial contact*** with the United States." *Id*. at § 1603(e) (emphasis added). The Second Circuit, in turn, has explained that the "substantial contact" standard evidenced the intent of Congress "to require a tighter nexus than the minimum contacts standard for due process." *Pablo Star*, 961 F.3d at 565 (quotation marks and citations omitted). As explained in the Moving Brief (at 14–23) and herein (*infra* at § II), Trustee has failed to satisfy the minimum contacts standard for due process, let alone point to any commercial activity PIFSS performed in the U.S. Accordingly, the first clause of the exception does not apply.[8]

As for the second clause, Trustee argues that "the relevant transfers" were acts performed in the U.S. (Opp. at 14.) Trustee does not define or identify those transfers, but again claims that they are domestic under *Picard*. For the same reasons identified above (*supra* at 4), Trustee has not demonstrated that *Picard*'s extraterritoriality analysis applies in the context of the FSIA. In addition, Trustee contends that redemption payments were made to PIFSS' New York bank

---

[8]    Trustee argues that PIFSS invested in Sentry knowing that it invested 95% of its funds with BLMIS. This allegation does not appear in the Complaint. Complaint ¶ 2 alleges that Sentry "maintained in excess of 95% of its assets in its BLMIS customer accounts," but the Complaint does not allege that PIFSS *knew* about this alleged 95% threshold.

account. But there is only one redemption payment at issue, and Trustee has not shown that PIFSS

had its own correspondent account in New York. (*See infra* at 7–9.) Instead, Song Ex. 4 shows

that "PIFSS' New York bank account" was a correspondent bank for Ahli United Bank (UK) PLC

London. Song. Ex. 6 at ANWAR-CFSE-00319437.

## II.    This Court Does Not Have Specific Jurisdiction Over PIFSS.

None of the three purported contacts Trustee identified to support specific jurisdiction,[9]

(1) the use of U.S. bank accounts in making investments with Sentry, (2) information in certain

Sentry documents, and (3) Sentry's subscription agreements, is a contact of PIFSS with the U.S.

*See Walden v. Fiore*, 571 U.S. 277, 278–85 (2014).[10]

### A.    Transfers Through Correspondent Bank Accounts Do Not Establish Jurisdiction.

Alleged knowledge that a funds transfer, even one furthering a fraud, "passed through a

correspondent bank in New York is insufficient as a matter of law to confer jurisdiction." *Berdeaux*

*v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 402–04 (S.D.N.Y. 2021) ("Plaintiffs have identified no

authority, nor is the Court aware of any, standing for the principle that a non-domiciliary individual

defendant may be subject to specific jurisdiction in New York under [CPLR §] 302(a)(1) because

the non-domiciliary moved money between foreign bank accounts, with the transfer passing

through New York via a correspondent account."). Trustee contends PIFSS (i) designated and used

a New York bank to send a payment to Sentry and (ii) sent and received payments from Sentry's

New York correspondent accounts. (Opp. at 17–19.) These are not "suit-related conduct" that

"create a substantial connection with the forum." *Walden*, 571 U.S. at 284. Trustee has not

---

[9]    Trustee concedes that the Court does not have general jurisdiction. (Opp. at 15 n.24.)

[10]    Trustee brushes away *Walden* without considering the facts alleged in this case. Trustee incorrectly refers to PIFSS' "relationships with BLMIS and a BLMIS feeder fund," citing *Walden* for the proposition that a defendant's contacts with the forum may be intertwined with transactions with the plaintiff or others. (Opp. 21, n.38.) But the Complaint does not allege PIFSS had a relationship or contact with BLMIS. As described below (*see infra* at § II), Trustee did not identify any suit-related contact between PIFSS and the forum.

identified *any* conduct of PIFSS related to the suit or connected to the forum. For reasons discussed in PIFSS' Motion to Strike filed with this Reply, the documents on which Trustee relies lack foundation and are inadmissible hearsay, the contents of which are not alleged in the Complaint.

First, in support of his assertion that PIFSS designated and used a New York bank to send a single payment to Sentry, Trustee cited a July 1, 1999 "Subscription Form of Fairfield Sentry Limited" that was apparently "filled in" by someone named "Judith." (Song Ex. 3.) The Form does not establish that PIFSS held an account in the U.S.: the remitting bank is Northern Trust Int'l Banking Corp. New York, USA, a correspondent bank for AHLI United Bank of Kuwait in London. Trustee made no attempt to tie this Form or the payment allegedly reflected therein to the sole subsequent Transfer in 2004 (*i.e.*, four-and-a-half years later). As such, the Form is irrelevant for jurisdictional purposes, which must "focus on [PIFSS'] U.S. contacts related to the receipt of the [single] subsequent transfer[] at issue." *Picard v. BNP Paribas S.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018).

Second, Trustee contends that PIFSS sent a payment to a correspondent account at HSBC in New York and received a payment from a correspondent account at JP Morgan Chase ("JPMC") in New York. As for the HSBC account, Trustee cited an unsigned memo dated September 22, 2000—more than three years *before* the 2004 Transfer—from Citco Fund Services (Europe) B.V., which, according to the memo, had offices in Amsterdam and the British Virgin Islands but not in the U.S. (Song Ex. 2.) The memo instructs PIFSS to transfer a payment to an HSBC account in New York belonging to Citco Bank Nederland N.V. Amsterdam. There is no indication that the memo was sent to PIFSS, PIFSS transferred any funds to the HSBC account, PIFSS had control over choosing that account, or any transfer in 2000 was related to Trustee's claim against PIFSS.

7

As for Trustee's claim that PIFSS received money from a JPMC account, he relies on a "Request for Wire Transfer Payment" from a Citco entity located in Amsterdam to Citco Bank Nederland N.V. Dublin Branch in Ireland. (Song Ex. 6.) The Request lists JPMC in New York as the bank to be credited, but specifically states that the funds are to be further credited to AHLI United Bank (UK) PLC London, with PIFSS listed as the beneficiary of the foreign AHLI account. The Request does not establish that the payment constituted customer property or was transferred from the JPMC account to a PIFSS account in the U.S. Trustee has not attempted to establish that PIFSS had any control over AHLI's correspondent bank account in New York.

Trustee's failure to tie these documents to PIFSS is fatal because mere use of a correspondent bank account by a foreign entity under a foreign contract—which is exactly what Trustee alleges PIFSS did—does not confer jurisdiction. (Br. at 17–18 (citing cases).) Trustee's attempts to distinguish the cases PIFSS cited are unavailing. He is mistaken in his argument that *BNP Paribas* forecloses reliance on *Hau Yin To v. HSBC Holdings, PLC*, No. 15CV3590, 2017 U.S. Dist. LEXIS 28931 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017), and *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016). The *BNP Paribas* court's minimum contact conclusion is based on the specific facts of that case, which are not similar to the facts of this case and cannot be extrapolated to apply here. (Br. at 16–17.) There, the defendants' derivatives group "operated from New York, and the subsequent transfers were largely the result of those New York activities"; the defendants had New York offices and one defendant had its principal place of business in New York; and the defendants invested in domestic feeder funds. *See* 594 B.R. at 191–192. Here, there are no similar allegations that PIFSS engaged in any conduct in New York that would establish specific jurisdiction. Thus, this case is similar to both *Hau Yin To* and *Hill*, where the defendants' contacts with the U.S. were the transmission of information

and funds to and from BLMIS, which were the incidental consequences of fulfilling foreign contracts that did not amount to purposeful availment.

Moreover, the cases Trustee cites in his Opposition do not support the exercise of specific personal jurisdiction. The New York correspondent accounts at issue in those cases were maintained and controlled *by the defendants themselves*. *See Eldesouky v. Aziz*, No. 11-CV-6989, 2014 WL 7271219, at *6–*7 (S.D.N.Y. Dec. 19, 2014) ("Plaintiffs have demonstrated that [defendant] Pyramid maintained a New York bank account to which [plaintiff] Tasneem made a $35,000 wire transfer. . . . [The funds at issue were] sent to [defendant] Pyramid's account in New York."); *HSH Nordbank AG N.Y. Branch v. Street*, No. 11 Civ. 9405, 2012 WL 2921875, at *4– *5 (S.D.N.Y. July 18, 2012) (transfers were made into New York bank accounts held by defendants; plaintiff's cause of action for fraudulent conveyance arose directly out of defendants' use of New York account); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 382–83 (S.D.N.Y. 2013) (foreign defendant "opened bank accounts in New York to deposit money it raised from investors" in connection with notes defendant issued "and to facilitate its purchase of subsidiary investments that were used to 'defraud the . . . investors'"); *Licci v. Lebanese Canadian Bank, SAL*, 984 N.E.2d 893, 332 (N.Y. 2012) (foreign defendant allegedly maintained and used correspondent account in New York for "'dozens' of international wire transfers"); *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 69 (S.D.N.Y. 2016) ("[T]he [defendant] Banks were not simply complicit, or even mere participants, in the selection of the New York correspondent bank accounts. Rather, the selection of the New York correspondent bank accounts that received the funds *originated with* the Banks; they *actively directed* the funds at issue unto those New York accounts." (emphasis in original)). Further, the courts in *Licci*, 984 N.E.2d at 339, and *Dandong*, 966 F. Supp. 2d at 382, were clear that "repeated

9

08-01789-cgm    Doc 21646    Filed 05/26/22    Entered 05/26/22 14:48:48    Main Document
Pg 16 of 27

use" of New York bank accounts justified the exercise of personal jurisdiction. Here, in contrast,
Trustee identified two alleged transfers through New York correspondent accounts without
establishing that either account belonged to or was maintained by PIFSS. This is a far cry from the
repeated use of accounts that the defendants controlled in the cases on which Trustee relies.

        B.    <u>Trustee Has Not Established Purposeful Availment</u>.

        In support of his purposeful availment argument, Trustee points to (1) Sentry's IM,
(2) meetings with FGG personnel in Kuwait, and (3) contacts that a non-party allegedly had with
Sentry. None of these demonstrate purposeful availment by PIFSS.

        <u>First</u>, the Song Declaration describes the IM as "a Fairfield Sentry Limited Subscription
Memorandum dated January 1, 2008." (Song Decl. ¶ 1.) There is no doubt that if Trustee—who
has had unfettered access to the Sentry files for over a decade[11]—had documentary evidence of an
IM sent to and received by PIFSS, it would have been referenced in the Complaint. But, as
explained in the accompanying Motion to Strike, nothing in the IM, the Song Declaration, or the
Opposition demonstrates that PIFSS received the IM. The IM appears to be a draft form: the footers
state " { PAGE } OF { NUMPAGES } "; Appendix A is missing (there is no substantive information following
the "Appendix – A" slip sheet, and pages labeled A-1 – A-6, which might be part of Appendix A,
actually appear after the "Appendix – B" slip sheet); and the last page reflects editing metadata.
The Song Declaration does not tie Song Ex. 1 to PIFSS. While the Opposition makes references
to PIFSS allegedly having received, read, and signed an IM (Opp. at 6, 10, 21, 22), it does not cite
any document showing that to be true. Instead, the Opposition cites Song Ex. 1 at
SECSEV3381118, a form document with blanks containing an acknowledgement by an unknown

---

[11]   Although Trustee fails to acknowledge it, the Fairfield Liquidators admitted in 2010 that they possessed most of
the Fairfield Funds' books and records. *See* Decl. of Kenneth Krys, *In re Fairfield Sentry Ltd.*, No. 10-13164,
ECF No. 40 ¶¶ 15, 19 (Bankr. S.D.N.Y. July 16, 2010).

recipient that it agrees to purchase shares "upon the terms of the Information Memorandum dated June 30, 1994, as amended." (Opp. at 6.) In short, Trustee's new allegations that PIFSS received, read, executed, or affirmed the IM are wholly unsupported.

Second, Trustee claims that PIFSS had regular contact with Sentry's and/or FGG's New York-based representatives, but none of the three documents Trustee relies upon demonstrates any connection to the U.S. *See Walden*, 571 U.S. at 285 (court must "look[] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there"). The first document is a November 2003 email from "Greg" about his recent meeting with PIFSS *in Kuwait*. (Song Ex. 7) The second document is an internal FGG email from December 2006—nearly three years *after* the January 2004 Transfer—referring to a "meeting with PIFSS *in Kuwait*." (Song Ex. 8 (emphasis added).) The third document is an internal FGG email from July 2008—some four-and-one-half years *after* the January 2004 Transfer—referring to a future possible meeting. (Song Ex. 9.) All three documents constitute inadmissible hearsay, none is authenticated, and two are dated years after the only transfer at issue in this case. As if the documents were not unreliable enough, nothing in them hints at contact by PIFSS in the U.S. or related to the 2004 Transfer. Plainly, these documents are not evidence of physical presence or entry in the forum. *Cf. Walden*, 571 U.S. at 287 (physical presence or entry "by the defendant in person or through an agent, goods, mail, or some other means" is contact with the forum).

Third, Trustee referred to purported contacts between Wafra, Inc. ("Wafra") and FGG. Wafra is not a party or even mentioned in the Complaint. As explained in PIFSS' Motion to Strike, Trustee tries to connect Wafra to PIFSS using an attorney declaration that is not based on personal knowledge, attaching a page from Wafra's 2018 website that does not reference PIFSS. (Song. Decl. ¶ 2; Opp. at 5 n.9.) Nothing about either Song Decl. ¶ 2 or the Wafra website is reliable for

establishing a relevant nexus between Wafra and PIFSS, let alone with respect to the 2004 Transfer

at issue. Nevertheless, Trustee cites FGG emails with and about Wafra to claim that PIFSS "was

aware of and familiar with the IM" and knew "that its investment with Sentry was ultimately an

investment in New York-based BLMIS." (Opp. at 22. (citing Song Exs. 10–13).)

Trustee's allegations of personal jurisdiction over PIFSS are without any evidentiary

foundation and should be stricken. Despite having access to the Fairfield Funds' documents and

data for over ten years, Trustee neither alleged nor identified any evidence establishing that PIFSS

had suit-related contacts with the U.S. (Br. at 19–20.) The best he could do was dredge up a draft

IM without proof it was sent to PIFSS, emails reflecting meetings with unknown FGG personnel

*in Kuwait*, and FGG emails regarding Wafra. Individually, these documents prove nothing. Even

taken together, they do not establish contact between PIFSS and the U.S.

C.    An Unidentified Subscription Agreement Does Not Support Jurisdiction.

Trustee necessarily concedes that PIFSS did not consent to jurisdiction by virtue of any

Sentry subscription agreement. (Opp. at 24–25.) Yet Trustee clings to a singular allegation in the

Complaint, made upon information and belief without reference to the basis of the allegation, that

"PIFSS entered into a subscription agreement with Fairfield Sentry under which it submitted to

New York jurisdiction, [and] sent a copy of the agreement to FGG's New York City office."

(Compl. ¶ 7.) In the Opposition, Trustee claims without support that "The Forum Selection and

Choice of Law Clauses in the Subscription Agreements Are Strong Jurisdictional Contacts." (Opp.

at 23 (heading II.C).) Trustee put forth no alleged subscription agreement between PIFSS and

Sentry, and only obliquely states that "PIFSS *likely* would have subsequently signed" one. (Opp.

at 25 (emphasis added).) Trustee apparently has no copy of such a subscription agreement between

Sentry and PIFSS and failed to raise his lack of supporting evidence in his Opposition.

12

Because any supposed subscription agreement does not relate to the claim against PIFSS, basing jurisdiction on it would violate CPLR § 302(a)(1) and due process. *See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Adv. No. 10-03496, 2018 Bankr. LEXIS 2324, at *31 (Bankr. S.D.N.Y. Aug. 6, 2018) ("[W]hile the Subscription Agreement governs subscriptions and refers to the Articles [of Association], the Articles govern redemptions and make no mention of the Subscription Agreement.")).[12] Because Trustee failed to identify any contact related to the 2004 Transfer between PIFSS and the U.S., the existence of a possible subscription agreement that may have included New York forum selection and/or choice of law provisions does not establish personal jurisdiction.

### III.    Trustee Cannot Save His Improper Incorporation by Reference of the FAC.

Trustee did not address PIFSS' arguments that the Complaint improperly incorporates a defunct and superseded complaint and fails to identify the specific allegations in the FAC he alleges are relevant to the claim against PIFSS. As a result, Trustee waived any opposition to those arguments and conceded those points. *See In re UBS AG Secs. Litig.*, No. 07 Civ. 11225, 2012 WL 4471265, at *34 (S.D.N.Y. Sept. 28, 2012) (plaintiff "concede[d] through silence" defendant's assertion by failing to respond to it in opposition brief). Neither *Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670 (Bankr. E.D. Pa. 2010), nor *S.I.P.C. v. Bernard L. Madoff Inv. Secs. LLC (In re Madoff Secs.)*, 501 B.R. 26 (S.D.N.Y. 2013), justifies Trustee's attempted incorporation by reference. The *Geiger* court allowed incorporation but dismissed the complaint for violating Civil Rules 8(a)(2) and 8(d)(1). 446 B.R. at 679–80. The defendants in *In re Madoff Secs.* did not challenge the incorporation by reference and the court did not analyze Civil Rules 8(a) or 10(c). 501 B.R. at 36. Finally, Trustee cannot save his improper incorporation by arguing that "this Court

---

[12] Sentry's Articles of Association are referred to as the "Articles."

may take judicial notice of the Fairfield Second Amended Complaint and its opinion in *Fairfield Inv. Fund Ltd.*, 2021 WL 3477479." (Opp. 29, n.47.) The Complaint does not incorporate the SAC, and judicial notice is not a substitute for properly pled allegations.

**IV.    Section 546(e) Bars Trustee's Claim to Recover on the Transfer.**

Trustee does not dispute that (a) BLMIS was a stockbroker, (b) Sentry was a financial institution, and (c) that the initial transfer from BLMIS to Sentry was a settlement payment or a transfer in connection with a securities contract (here, between Sentry and BLMIS and also between Sentry and PIFSS). (Br. at 29–34.) Accordingly, Trustee has conceded that the initial six-year transfers from BLMIS to Sentry fall under Section 546(e). *See In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *11.

Trustee instead argues that under the District Court's holding in *S.I.P.C. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"), Section 546(e) is not available to PIFSS because Sentry was alleged to have been aware of BLMIS' fraud. (Opp. at 30–31.) Trustee overstates the holding in *Cohmad*. *Cohmad* left open the use of the safe harbor in Section 546(e) when, as here, there is an innocent subsequent transferee (PIFSS) asserting the defense to an initial transfer where the initial transferee (Sentry) failed to raise the defense. *Id*. at *1, *9–10. This is particularly so where the ***initial transfer*** was made in connection with a ***separate*** securities contract between the initial and subsequent transferees (the Articles).

Trustee's contention that an innocent subsequent transferee loses its Section 546(e) defense based on the knowledge of an unrelated initial transferee does not survive a close reading of *Cohmad*. The reasoning behind this new "knowledge" exception to Section 546(e) is instructive. The Court's ruling precludes a transferee, initial or subsequent, from relying on the safe harbor ***if it had knowledge of the fraud***, since that entity would have known that BLMIS was not actually trading in securities and, thus, should not be able to "launder" fraudulently transferred funds. *See*

14

*id.* at \*4, \*7. *Cohmad* drew a clear, bright line as to the availability of Section 546(e) on motions

to dismiss based solely on whether the "defendant"—i.e., the transferee being sued—allegedly had

actual knowledge of BLMIS' fraud. *Id.* at \*1, \*4, \*7. Because *Cohmad* created a limited exception

to the safe harbor's protection, applicable only when the defendant against which the Trustee seeks

recovery allegedly had knowledge of the fraud, it has no affect on subsequent transferee defendants

who are not alleged to have had such knowledge. Innocent subsequent transferee defendants

remain entitled to Section 546(e)'s protections, including in a motion to dismiss. [13]

In *Picard v. Fairfield Inv. Fund Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, 2021 WL

3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*"), this Court ruled consistently

with the foregoing interpretation of Judge Rakoff's holdings. After finding the Trustee sufficiently

alleged knowledge of Madoff's fraud on the part the initial transferees (*i.e.*, various Fairfield

entities), *id.* at \*4, the Court dismissed the Trustee's claim against Corina Noel Piedrahita for

subsequent transfers she received from the initial transferees pursuant to Section 546 because the

Trustee "failed to plead individualized factual allegations demonstrating that [she] had

independent actual knowledge of the BLMIS fraud," *id* at \*6.[14] Trustee's interpretation of *Cohmad*

would have precluded dismissal of the subsequent transfer claims against Ms. Piedrahita under

Section 546(e), as the initial transferees were sufficiently alleged to have had knowledge of

---

[13] Trustee's insistence that "Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees" (Opp. at 33) misses the mark and is refuted by *Cohmad*. Section 546(e) not only limits a Trustee's avoidance powers, but also provides a defense—which may be raised by motion to dismiss—to defendants sued under Section 550(a) for ***recovery*** of allegedly fraudulent transfers. In *Cohmad*, Judge Rakoff explained that he had twice previously held that Section 546(e) "required the dismissal" both of the Trustee's avoidance claims and of "***related recovery claims under Section 550(a).***" 2013 WL 1609154, at \*3 (emphasis added). Similarly, in *Fairfield Inv. Fund*, this Court, citing *Cohmad*, explained that a *subsequent* transferee is "entitled to raise a § 546(e) defense ***against recovery***." 2021 WL 3477479, at \*3 (emphasis added).

[14] Because this Court rejected dismissing subsequent transfer claims under Section 550(b)'s good faith and value defense, holding it was not apparent on the face of the SAC that defendants gave value (2021 WL 3477479, at \*9), the basis for dismissal of the subsequent transfer claim against Ms. Piedrahita must have been Section 546(e).

BLMIS fraud. Accordingly, this Court's ruling in *Fairfield Inv. Fund* compels rejection of

Trustee's interpretation of *Cohmad* and dismissal of his claim against PIFSS.[15]

*Cohmad* provides a separate, second basis for the statutory safe harbor to protect PIFSS,

premised on the Articles, rather than the BLMIS-Sentry customer agreements. The Court found

that Section 546 could apply if the initial transfer was made "in connection with" a securities

contract between an initial and subsequent transferee. 2013 WL 1609154, at *8. (Br. at 32–34).

Thus, where a BLMIS customer (Sentry) made a "withdrawal" from its BLMIS account that was

allegedly "caused by [its] payment obligations to a subsequent transferee under a securities

contract" (Sentry's Articles), the initial transfer "could qualify" under Section 546(e) "as 'related

to' that later transaction under the securities contract." *Id*. Because this second, alternative path to

Section 546(e) protection does not implicate Sentry's contract with BLMIS, Sentry's alleged

knowledge of BLMIS' fraud is irrelevant to the analysis. *Cf. Picard v. ABN AMRO Bank (Ireland)

Ltd.*, 505 B.R. 135, 142 n.6 (S.D.N.Y. 2013) (explaining "issue of knowledge was irrelevant to the

application of Section 546(g)," the analogous safe harbor for transfers made in connection with

swap agreements, where "there is no dispute that the swap transactions actually occurred" between

the initial transferee and its swap counterparty, and "so the mindset of the participants is

irrelevant").[16]

---

[15]    Trustee cites *BNP Paribas* for support of his interpretation of *Cohmad*. (Opp. at 33–34.) But that case did not discuss whether a subsequent transferee's invocation of Section 546(e) is barred by the initial transferee's actual knowledge. The Trustee there instead argued, without even citing (much less discussing) *Cohmad*, that Section 546(e) does not apply to recovery of subsequent transfers. *See Picard v. BNP Paribas S.A. (In re BLMIS)*, Adv. Pro. 12-01576, ECF No. 110, at 25–26. That is incorrect, as stated *supra* at 15 n.13. The issue is not whether Section 546(e) applies to the initial transfer (it certainly does), but whether a subsequent transferee can raise a Section 546(e) defense when an initial transferee failed to, particularly where the initial transfer is alleged to be on account of a securities contract between the two transferees. Construing *BNP Paribas* to imply that an innocent subsequent transferee defendant is precluded from invoking Section 546(e) due to the initial transferee's alleged knowledge would be inconsistent with *Cohmad* and *Fairfield Inv. Fund*.

[16]    Trustee disparages this second *Cohmad* holding as "dicta." (Opp. at 33.) Not so. Judge Rakoff explicitly ordered that "to the extent a defendant claims protection under Section 546(e) under a separate securities contract as a financial participant or financial institution, the Bankruptcy Court must adjudicate those claims in the first

Since it is undisputed that Sentry is a "financial institution" and BLMIS' initial transfers were made to Sentry at Sentry's request to fund redemption payments to Sentry's investors, such as PIFSS (Br. at 31), and the Trustee failed to contest that the Articles were a real securities contract pursuant to which securities were redeemed and sold, the facts here "fit within the plain terms of Section 546(e)." *Cohmad*, 2013 WL 1609154, at \*9.

## V.    The Complaint Does Not Plausibly Allege that PIFSS Received Customer Property.

Trustee failed to plausibly allege that PIFSS is a subsequent transferee of BLMIS customer property. (Br. at 35–40.) He does not deny failing to plead facts connecting the alleged initial transfers to Sentry (here, a total of three between May – July 2003) to the January 2004 Transfer PIFSS received. Trustee instead disclaims any such obligation and contends this is all a matter of "tracing" commingled funds (Opp. at 35.) However, whether the Complaint plausibly alleges that the Transfer at issue contained customer property is a *legal* question to be resolved on a motion to dismiss, not a tracing analysis. *Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (holding that Trustee must "allege facts that support the inference that the *funds at issue originated* with the BLMIS" (emphasis added)). The law requires plaintiff to allege a claim with "facial plausibility" by "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Simply listing alleged initial transfers and a subsequent transfer, and then adding a bare conclusory assertion that the entries in the two lists are sufficiently connected, falls "short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

---

instance consistent with this Opinion." *Cohmad*, 2013 WL 1609154, at \*10 (emphasis added); *id.* at \*9 (noting that the separate securities contract between the initial transferee and subsequent transferee would qualify under section 546(e) if either transferee was a financial institution or financial participant**)**.

Indeed, decisions cited in the Trustee's Opposition disprove his argument by exemplifying the types of allegations that plausibly tie initial and subsequent transfers at the pleading stage. *See, e.g.*, *45 John Lofts LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 736–37, 747 (Bankr. S.D.N.Y. 2019) (payments totaling $29.4 million deposited into an account; $29.4 million withdrawn by the next business day); *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117, 150 (Bankr. S.D.N.Y. 2014) ("[S]everal subsequent transfers took place contemporaneously or shortly after an initial transfer . . . , implying linkage."); *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib. Inc.)*, 379 B.R. 5, 13, 30 (Bankr. E.D.N.Y. 2007) (alleged subsequent transfers "were preceded by fraudulent transfers" from debtor "in amounts sufficient to cover the [subsequent] transfers," all within 13 days).[17]

Requiring Trustee to plead facts alleging some "linkage," *Merkin*, 515 B.R. at 150, does not mandate a "tracing analysis" or "dollar-for-dollar accounting" as Trustee asserts. (Opp. at 35, 38.) Rather, it requires pleading facts, if proved, that link initial to subsequent transfers, something the Trustee himself has done in other actions but not here. *See, e.g.*, *Picard v. Charles Ellerin Rev. Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*, 2012 WL 892514, at *1 (Bankr. S.D.N.Y. Mar. 14, 2012) (Trustee's submissions showed the Charles Ellerin Irrevocable Gift Giving Trust (the initial BLMIS transferee) received $25,000 from BLMIS two weeks before it issued a $6,200 check to

---

[17] This case differs completely from those involving re-transfers among subsequent transferees as in *Merkin*, 515 B.R. at 149, and *Picard v. Est. of Stanley Chais (In re Bernard L. Madoff Inv. Sec. LLC)*, 445 B.R. 206, 236 (Bankr. S.D.N.Y. 2011). In both cases, the Court was informed by the difficulties the Trustee faced as he needed the *defendants'* books and records to prove his subsequent transferee claims. *See Merkin*, 515 B.R. at 149 ("The subsequent transfer claim must ultimately be proved through the books and records of the defendants. . . . The [complaint] and Exhibit C support the Trustee's allegations that the defendants commingled their assets, transferring their funds into and out of each other's accounts."); *Stanley Chais*, 445 B.R. at 236 ("The Moving Defendants are a group of interrelated individuals and entities closely associated with defendant Stanley Chais, all of whom maintained BLMIS accounts and received direct Transfers. Whether they additionally received Subsequent Transfers of BLMIS funds from one another is a question to which they, and they alone, have the requisite information to respond."). No such latitude should be afforded here, as Trustee failed to allege plausibly that the Transfer to PIFSS contained customer property despite possessing Sentry's records. (Br. at 7, 39.)

18

defendant Winter, the moving party and the Trust's named beneficiary).

Trustee deems it sufficient that he outlined the "relevant pathway[]" through which customer property was transferred from BLMIS to Sentry and subsequently to PIFSS, and identified the "vital statistics" of the relevant initial and subsequent transfers. (Opp. at 35.) But the exhibits to the Complaint (and elsewhere) reveal this "pathway" to be a dead end. For one thing, the six-month gap between the most recent alleged initial transfer from BLMIS to Sentry and the sole Transfer to PIFSS, negate any plausible inference of "linkage," in contrast to the cases cited *supra* at 18.[18] (Br. at 37–38) Additionally, Sentry transferred over $450 million *more* to third parties than it received from BLMIS during this time. (*Id*. at 38.) Sentry concededly paid redeeming investors with funds from subscribing investors, rather than BLMIS. (*Id*.)

Trustee incorrectly calls this a "commingling" argument. (Opp. at 36.) Trustee's pleadings establish long periods in which no commingling of funds occurred—and the requisite linkage cannot be made—because no BLMIS customer property remained at Sentry. (Br. at 37–38.).[19]

Finally, Trustee contends it is irrelevant that he alleges Sentry transferred more in customer property than it received from BLMIS because he "can recover from any combination of [transferees] up to the amount avoided." (Opp. 38, n.56 (citing *Helms v. Metro. Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021)). But the only subsequent transferees from which potentially duplicate recoveries may be obtained—

---

[18]   Trustee acknowledges that this six-month gap makes any linkage "difficult" to prove. (Opp. at 36 n.54.)

[19]   Trustee's reliance on *In re Southmark Corp.*, 239 F.3d 365, 2000 WL 1741550 (5th Cir. 2000) (per curiam), as amended on reh'g (Dec. 11, 2000) is likewise misplaced. (Opp. at 38.) There, the subsequent transferee defendant argued that because its bank and the initial transferee's bank both presented their respective checks for payment *on the same day*, there was a chance it could have received funds prior to the initial transferee's check from the debtor clearing (i.e., before the initial transferee received the debtor's funds). *Id.* at *11–12. The Fifth Circuit rejected this argument, finding that the stipulated facts established that (i) the defendant received proceeds at the same time as the initial transferee, and (ii) the underlying agreement with the debtor expressly earmarked funds for the defendant. *Id.* at *12. That is a far cry from what the Trustee has alleged here.

*i.e.*, the "immediate or mediate transferee[s] of [an] initial transferee," to which Section 550(a)(2) refers—are those "who take[] in a later transfer down the chain of title or possession." *Helms*, 601 B.R. at 656 (citation omitted). Here, Trustee does not seek recovery from a series of transferees in a single "chain of title or possession." Instead, he sues to recover amounts from many defendants in ***different*** alleged chains of title or possession, asserting—without alleging facts plausibly supporting the assertion—that each subsequent transferee received funds that constitute customer property. He persists in doing so even though the total he seeks exceeds by over ***$2 billion*** the sum of the initial transfers. Not surprisingly, Trustee cites no precedent for proceeding in this manner.

In a final effort to salvage this claim, Trustee asks to be excused from pleading facts plausibly showing that PIFSS received customer property based on an alleged information deficit and denies "hav[ing] ***all*** of the Fairfield Funds' books and records." (Opp. at 38–39.) Trustee does not say *what* he needs that he does not have, and he fails to allege lacking access to records related to PIFSS' investment account at Sentry. Trustee does not deny that he has had full access to the Fairfield Liquidators' "documents, data and other information relating to, or beneficial to the pursuit of" claims since the Fairfield Settlement Agreement in 2011. (Br. at 7, 39.)

Trustee's one-line suggestion at the end of the Opposition that it may be "possible that PIFSS has records it can provide on these same transactions" does not salvage Trustee's pleading deficiencies. The records of Sentry and BLMIS, not PIFSS, would show whether the single redemption payment from Sentry to PIFSS contained BLMIS customer property.

## **CONCLUSION**

For the foregoing reasons and those set forth in the Moving Brief, the Complaint against PIFSS should be dismissed.

Dated: May 26, 2022
      New York, New York

**GREENBERG TRAURIG, LLP**

By: *_/s/ Leo Muchnik_*
Leo Muchnik
One Vanderbilt Avenue
New York, New York 10017
Telephone:   (212) 801-9200
Facsimile:   (212) 801-6400
Email:      muchnikl@gtlaw.com

Joseph P. Davis III (admitted *pro hac vice*)
Alison T. Holdway (admitted *pro hac vice*)
One International Place, Suite 2000
Boston, Massachusetts 02110
Telephone:   (617) 310-6000
Facsimile:   (617) 310-6001
Email:      davisjo@gtlaw.com
Email:      holdwaya@gtlaw.com