HERBERT SMITH FREEHILLS NEW YORK LLP
Marc J. Gottridge
Michael Schoeneberger
450 Lexington Avenue
New York, New York 10017
Telephone: (917) 542-7600
marc.gottridge@hsf.com
michael.schoeneberger@hsf.com

*Attorneys for the Defendants in Adversary Proceeding No. 11-02569 (CGM)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 11-02569 (CGM) |
| Plaintiff, | |
| v. | **BARCLAYS DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT** |
| BARCLAYS BANK (SUISSE) S.A., CAIXABANK S.A., as successor by merger to Barclays Bank S.A., and ZEDRA TRUST COMPANY (JERSEY) LIMITED (f/k/a Barclays Private Bank & Trust Limited), | |
| Defendants. | |

## <u>TABLE OF CONTENTS</u>

**Page**

ARGUMENT ................................................................................................................. 1

I.    Section 546(e) Bars the Trustee's Claims
Based on Alleged "Six-Year" Transfers ............................................................. 1

    A.    As the Trustee Concedes, the Alleged Initial
Transfers Qualify for the Statutory Safe Harbor........................................ 2

    B.    The Trustee's Attempt to Strip Innocent Subsequent Transferee
Defendants of Statutory Safe Harbor Protections is Contrary to Law........ 2

        1.    *Cohmad* Does Not Divest Innocent Subsequent Transferee
Defendants of the Protections of the Statutory Safe Harbor .............. 3

        2.    The Trustee's Attempt to Divest Innocent Subsequent
Transferee Defendants of the Protections of the
Statutory Safe Harbor Is Inconsistent with
Second Circuit Case Law, as Well as *Cohmad* .................................. 9

    C.    As Financial Institutions Redeeming Investments in
Fairfield Sentry, the Barclays Defendants are also
Separately Entitled to the Statutory Safe Harbor's
Protection Based on Securities Contracts with Fairfield Sentry............... 11

II.    The Trustee Has Not Alleged with Particularity
Actual Fraudulent Intent under Section 548(a)(1)(a).......................................... 14

III.    The Trustee Has Failed to Adequately Plead
the Avoidability of the Alleged Initial Transfers ................................................. 15

IV.    The Trustee Has Not Plausibly Alleged that the Barclays
Defendants were Subsequent Transferees of Customer Property......................... 17

CONCLUSION.................................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*45 John Lofts LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
    599 B.R. 730 (Bankr. S.D.N.Y. 2019) ................................................................................ 18

*Am. Casein Co. v. Geiger (In re Geiger)*,
    446 B.R. 670 (Bankr. E.D. Pa. 2010) ........................................................................... 15, 16

*AP Servs., LLP v. Silva*,
    483 B.R. 63 (S.D.N.Y. 2012) ......................................................................................... 5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................... 17

*Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortg. Inv. Corp.)*,
    256 B.R. 664 (Bankr. S.D.N.Y. 2000), *aff'd* 264 B.R. 303 (S.D.N.Y. 2001) ........................ 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................... 17

*Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Recoverable Tr.)*,
    773 F.3d 411 (2d Cir. 2014) ......................................................................................... 9, 10

*Daly v. Deptula (In re Carrozella & Richardson)*,
    286 B.R. 480 (D. Conn. 2002) ..................................................................................... 14

*Deutsch v. JPMorgan Chase & Co.*,
    No. 18-CV-11655 (VSB), 2019 WL 4805689 (S.D.N.Y. Sept. 30, 2019) ............................... 2

*Geltzer v. Barish (In re Geltzer)*,
    502 B.R. 760 (S.D.N.Y. 2013) ..................................................................................... 15

*Helms v. Metro. Life Ins. Co. (In re O'Malley)*,
    601 B.R. 629 (Bankr. N.D. Ill. 2019) ........................................................................... 19

*In re Boston Generating LLC (Holliday v. K Rd. Power Mgmt., LLC)*,
    617 B.R. 442 (Bankr. S.D.N.Y. 2020) ........................................................................... 5

*In re Tribune Co. Fraudulent Conveyance Litig.*,
    946 F.3d 66 (2d Cir. 2019) ......................................................................................... 9, 10

*Kelley v. Safe Harbor Managed Acct. 101, Ltd.*,
    31 F.4th 1058 (8th Cir. 2022) ..................................................................................... 5

*Lustig v. Weisz & Assocs., Inc. (In re Unified Com. Cap., Inc.)*,
    260 B.R. 343 (Bankr. W.D.N.Y. 2001) ......................................................................... 14

*Peterson v. Enhanced Investing Corp. (Cayman) Ltd. (In re Lancelot Invs. Fund)*,
467 B.R. 643 (Bankr. N.D. Ill. 2012) .................................................. 10

*Picard v. ABN AMRO Bank (Ir.) Ltd. (Sec. Inv. Protection Corp. v. Bernard
L. Madoff Inv. Sec. LLC)*, 505 B.R. 135 (S.D.N.Y. 2013)..................... 9, 12

*Picard v. BNP Paribas S.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
594 B.R. 167 (Bankr. S.D.N.Y. 2018) .................................................. 7

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
12 F.4th 171 (2d Cir. 2021) ......................................................... 14, 15

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
454 B.R. 317 (Bankr. S.D.N.Y. 2011)................................................ 18

*Picard v. Greiff (In re Madoff Sec.)*,
476 B.R. 715 (S.D.N.Y. 2012)........................................................ 10

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
515 B.R. 117 (Bankr. S.D.N.Y. 2014) ......................................... 8, 9, 18

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*,
542 B.R. 100 (Bankr. S.D.N.Y. 2015)............................................... 17

*Salahuddin v. Cuomo*,
861 F.2d 40 (2d Cir. 1988)........................................................... 16

*Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC
(In re Madoff Sec.)*, 501 B.R. 26 (S.D.N.Y. 2013) .............................. 16

*Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
No. 12 MC 115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ............... passim

*Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*,
No. 08-1789 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ............ 5, 6, 7, 13

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib. Inc.)*,
379 B.R. 5 (Bankr. E.D.N.Y. 2007)................................................. 18

*SunEdison Litigation Trust v. Seller Note, LLC (In re SunEdison, LLC)*,
620 B.R. 505 (Bankr. S.D.N.Y. 2020) ............................................. 7, 8

*U.S. Bank N.A. v. Verizon Commc'ns Inc.*,
892 F. Supp. 2d 805 (N.D. Tex. 2012) ............................................ 5

*United States v. Int'l Longshoremen's Ass'n*,
518 F. Supp. 2d 422 (E.D.N.Y. 2007) ............................................ 16

*United States v. Sepúlveda-Hernández*,
    752 F.3d 22 (1st Cir. 2014) ................................................................................ 19

**Statutes**

11 U.S.C. § 546(e) .................................................................................... passim

11 U.S.C. § 548(a)(1)(A) ............................................................... 8, 9, 10, 14

11 U.S.C. § 550(a) ............................................................................. 5, 9, 19

11 U.S.C. § 550(b) ..................................................................................... 7

**Rules**

Fed. R. Civ. P. 8 .................................................................................. 16, 17

Fed. R. Civ. P. 9 ........................................................................................ 14

Fed. R. Civ. P. 10 ....................................................................................... 17

Defendants Barclays Bank (Suisse) S.A., Caixabank S.A., as successor by merger to Barclays Bank S.A., and Zedra Trust Company (Jersey) Limited (f/k/a Barclays Private Bank & Trust Limited) (together, the "Barclays Defendants") respectfully submit this reply memorandum in further support of their motion to dismiss the Complaint.[1]

## **ARGUMENT**

## I.    **SECTION 546(e) BARS THE TRUSTEE'S CLAIMS BASED ON ALLEGED "SIX-YEAR" TRANSFERS**

The Trustee concedes that the alleged initial "six-year" transfers qualify under the statutory safe harbor (as demonstrated at Mem. 16–24), yet seeks to strip the Barclays Defendants of its protections.  He argues that *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC (In re Madoff Securities)*, No. 12 MC 115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*") prohibits an ***innocent subsequent transferee*** from invoking Section 546(e) merely because the Trustee alleges that the ***initial*** transferee had actual knowledge of the underlying fraud.  This misconstrues *Cohmad*, which precludes only transferee defendants having such actual knowledge from relying on Section 546(e); the Barclays Defendants lacked such knowledge.  Accepting the Trustee's misreading would eviscerate the safe harbor in the subsequent transfer context, contrary to *Cohmad* and admonitions of the Second Circuit.  Moreover, the Trustee fails to rebut the Barclays Defendants' showing that Section 546(e) also governs here under a separate and additional holding of *Cohmad*: the safe harbor also applies, without regard to the initial transferee's alleged knowledge, by virtue of "securities contracts" between Fairfield Sentry and the Barclays Defendants that did not involve BLMIS.

---

[1] Unless otherwise specified, citations to "ECF No. __" refer to Adv. Pro. No. 12-02569. Capitalized terms not defined herein have the meanings ascribed to them in the Barclays Defendants' initial memorandum of law, ECF No. 126, cited as "Mem." Citations to "Opp." refer to the Trustee's opposition memorandum (the "Opposition"), ECF No. 130. Unless otherwise stated, all internal quotations and citations in judicial decisions are omitted.

## A. As the Trustee Concedes, the Alleged Initial Transfers Qualify for the Statutory Safe Harbor

The Barclays Defendants have established that the alleged initial transfers from BLMIS to Fairfield Sentry qualify for the Section 546(e) safe harbor because: (a) they are transfers and settlement payments made "in connection with a securities contract" (indeed, two separate securities contracts—BLMIS's customer agreements with Fairfield Sentry (*see* Mem. 16–17) and the Fairfield Sentry Articles of Association (the "Articles"), which govern redemptions from Fairfield Sentry (*see id*. at 17–20)); and (b) they were made by, to, and/or for the benefit of covered entities, including a stockbroker and multiple financial institutions (*see id*. at 20–24). The Trustee does not contest any of this. He has therefore conceded that the alleged initial transfers satisfy Section 546(e)'s requirements. *See, e.g.*, *Deutsch v. JPMorgan Chase & Co.*, No. 18-CV-11655 (VSB), 2019 WL 4805689, at *5 (S.D.N.Y. Sept. 30, 2019).

## B. The Trustee's Attempt to Strip Innocent Subsequent Transferee Defendants of Statutory Safe Harbor Protections is Contrary to Law

The Trustee dismissively asserts that "[n]one of this matters," because he has pleaded actual knowledge of the Madoff/BLMIS fraud by *Fairfield Sentry—not* the Barclays Defendants. Opp. 5. The Trustee does not allege that any Barclays Defendant had actual knowledge of the fraud. *See* Mem. 12. Instead, he advances a grasping interpretation of *Cohmad* to try to deprive subsequent transferee defendants that are *not* alleged to have had actual knowledge of the BLMIS/Madoff fraud and did *not* actually know that BLMIS was not trading securities ("Innocent Subsequent Transferee Defendants") of Section 546(e)'s protections if—and solely because—the *initial* transferee allegedly had such actual knowledge. *See* Opp. 5–6. That is not the law. Neither

2

*Cohmad* nor other governing authority deprives an Innocent Subsequent Transferee Defendant of its statutory protections based on an unrelated initial transferee's alleged knowledge.[2]

### 1. *Cohmad* Does Not Divest Innocent Subsequent Transferee Defendants of the Protections of the Statutory Safe Harbor

"Where the Trustee has sought to recover transfers made to a subsequent transferee, the avoidance of which would otherwise be barred by Section 546(e) as to the initial transferee, the subsequent transferee will not be able to prevail on a motion to dismiss . . . the Trustee's avoidance claims simply on the basis of Section 546(e)'s 'safe harbor' *if* the Trustee has alleged that the *subsequent transferee* had actual knowledge of Madoff Securities' fraud." *Cohmad*, 2013 WL 1609154, at *1 (first emphasis original; second emphasis added). Where, as here, the Trustee has *not* alleged such actual knowledge by the *subsequent transferee defendant*, it logically follows that the defendant *is* "able to prevail on a motion to dismiss" based on Section 546(e). *Id.* The Trustee's contrary contention—that an Innocent Subsequent Transferee Defendant loses its ability to assert a Section 546(e) defense based on the happenstance of an unrelated initial transferee's knowledge—does not survive a close reading of *Cohmad*.

*Cohmad* resulted from the District Court's withdrawal of the reference in many adversary proceedings (including this one) to address "whether application of Section 546(e) to an initial or mediate Transfer bars recovery by the Trustee of any subsequent Transfer pursuant to Section 550." Section 546(e) Briefing Order, *In re Madoff Sec.*, No. 12-MC-115 (S.D.N.Y. May 16, 2012), ECF No. 119 ("Briefing Order"). Judge Rakoff held that an *initial transferee defendant* cannot obtain dismissal "simply on the basis of Section 546(e)'s 'safe harbor' *if* the Trustee has alleged that the initial transferee had actual knowledge of the Madoff Securities' fraud." *Cohmad*, 2013

---

[2] The Barclays Defendants dealt with Fairfield Sentry and related funds at arm's length, and the Trustee does not allege otherwise. Nor does the Trustee argue that Fairfield Sentry's alleged knowledge of the BLMIS/Madoff fraud may be imputed to the Barclays Defendants.

WL 1609154, at *1 (emphasis in original). The court's rationales for denying such defendants the benefit of the safe harbor were that: (i) if they signed "account agreements" with BLMIS with actual knowledge of its fraud, they "must have known that the transfers they received" from BLMIS "were not 'settlement payments'"; and (ii) transferees with actual knowledge that BLMIS was not trading securities "must [also] have known that the transfers could not have been made in connection with an actual 'securities contract.'" *Id*. at *3.

For this reason, Judge Rakoff explained, if the Trustee's pleading "adequately alleges[s] that a defendant had actual knowledge of Madoff's scheme, ***such a transferee stands in a different posture from an innocent transferee, even as concerns the application of Section 546(e)***." *Id*. at *4 (emphasis added). The court pointed out that the "purpose" of Section 546(e) is to minimize "the displacement caused in the commodities and securities markets in the event of a major bankruptcy affecting those industries"—a "goal [that] is best achieved by protecting the reasonable expectations of investors who believed they were signing a securities contract." *Id*. An innocent investor—*i.e.*, one without actual knowledge of the fraud—has such "reasonable expectations" and is entitled to Section 546(e)'s protections. *Id*. By contrast, "a transferee who had actual knowledge of the Madoff 'Ponzi' scheme did not have such expectations, but was simply obtaining moneys while he could." *Id*. Accordingly, the court in *Cohmad* drew a clear, bright line as to the availability of Section 546(e) on motions to dismiss, based ***solely*** on whether the "defendant"— *i.e.*, ***the transferee being sued***—allegedly had such actual knowledge of the underlying fraud. *Id*.

This distinction applies fully to alleged ***subsequent transferee defendants***. Judge Rakoff held that "even if the initial (or mediate) transferee failed to raise a Section 546(e) defense" for any reason (including, as here, the Trustee's settlement of claims against the initial transferee), "the subsequent transferee is nonetheless entitled to raise a Section 546(e) defense against recovery

4

of those funds," *id*. at \*7—and then applied to alleged subsequent transferees the same bright line test applicable to initial transferee defendants. Thus, "if the Trustee sufficiently alleges that ***the transferee against whom he seeks to recover a fraudulent transfer*** knew of Madoff Securities' fraud, ***that transferee*** cannot claim the protection of Section 546(e)'s safe harbor." *Id*. (emphasis added).[3] *Cohmad* therefore precludes ***only*** "actual knowledge" defendants against which the Trustee seeks recovery from invoking the safe harbor. It does not affect subsequent transferee defendants ***not*** alleged to have had such knowledge—*i.e.*, Innocent Subsequent Transferee Defendants. They still may invoke Section 546(e)'s protections, including on motions to dismiss.[4]

---

[3] *Cohmad* thus refutes the Trustee's argument that Judge Rakoff "specifically limited the safe harbor to avoidance claims." Opp. 8. Section 546(e) not only limits a trustee's avoidance powers, but also provides a defense—which may be raised by motion to dismiss—to defendants sued under Section 550(a) for ***recovery*** of allegedly fraudulent transfers. In *Cohmad* (in addition to the language quoted in the text *supra*), Judge Rakoff explained that he had twice previously held that Section 546(e) "required the dismissal" both of the Trustee's avoidance claims and of "***related recovery claims under Section 550(a)***." *Cohmad*, 2013 WL 1609154, at \*3 (emphasis added). Similarly, in *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC (In re Bernard L. Madoff)*, No. 08-1789 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Investment Fund*"), this Court, citing *Cohmad*, explained that a subsequent transferee is "entitled to raise a § 546(e) defense ***against recovery***" of funds sought by the Trustee. *Id*. at \*3 (emphasis added). *See also U.S. Bank N.A. v. Verizon Commc'ns Inc*., 892 F. Supp. 2d 805, 815 (N.D. Tex. 2012) ("Section 546(e) bars the plaintiff from recovering the $2.4 billion in cash as a fraudulent transfer."); *AP Servs., LLP v. Silva*, 483 B.R. 63, 71 (S.D.N.Y. 2012) (dismissing a recovery claim under Section 546(e)); *In re Boston Generating LLC (Holliday v. K Rd. Power Mgmt., LLC)*, 617 B.R. 442, 477 (Bankr. S.D.N.Y. 2020) (granting motion to dismiss) ("Pursuant to section 546(e) of the Bankruptcy Code, certain transfers are excepted from avoidance and recovery."); Briefing Order (addressing whether the safe harbor bars "recovery by the Trustee of any subsequent Transfer pursuant to Section 550"). Indeed, *Kelley v. Safe Harbor Managed Acct. 101, Ltd*., 31 F.4th 1058 (8th Cir. 2022), cited at Opp. 7, 8, 10, involved application of the safe harbor to a case where, as here, the trustee alleged that funds an initial transferee subsequently transferred to a defendant were recoverable under Section 550(a). *Id*. at 1064.

[4] The Trustee speculates that accepting the Barclays Defendants' position would permit initial transferees with actual knowledge to launder funds to or through innocent subsequent transferees. *See* Opp. 10. But the Trustee has pleaded no such thing. Far from alleging that Fairfield Sentry "placed" funds with the Barclays Defendants, *id*., his theory is that the Barclays Defendants initiated and drove the redemption process, "withdrawing money" from Fairfield Sentry and Fairfield Sigma. Compl. ¶ 6.

In *Fairfield Investment Fund*, this Court reiterated that "if the Trustee sufficiently alleges that the transferee ***from whom he seeks to recover a fraudulent transfer*** knew of Madoff Securities' fraud, ***that transferee*** cannot claim the protections of Section 546(e)'s safe harbor." *Id.*, 2021 WL 3477479, at *4 (emphasis added) (quoting *Cohmad*). The Court accordingly examined whether the Trustee had sufficiently alleged facts establishing actual knowledge separately as to each individual subsequent transferee defendant, *see id.* at *5–7, and concluded that "[t]he Trustee has failed to plead individualized factual allegations demonstrating that Corina Noel Piedrahita had independent actual knowledge of the BLMIS fraud." *Id.* at *6. The Court therefore dismissed all individual claims against Ms. Piedrahita, *id.* at *15, even though it found that the Trustee had adequately pleaded actual knowledge on the part of both the ***initial*** transferees and the ***other*** subsequent transferee defendants, *id.* at *4–6; *see also id.* at *15 (denying motion to dismiss except as to the individual claims against Ms. Piedrahita).[5]

The Trustee argues that the actual knowledge of individual defendants in *Fairfield Investment Fund* was relevant to the motion there only for purposes of imputing it to the initial transferee entities because of their roles with the entities. *See* Opp. 10. But even though the Court found that the Trustee had alleged actual knowledge on the part of the initial transferees, *see Fairfield Inv. Fund*, 2021 WL 3477479, at *4, it did ***not***—as the Trustee asks it to do here— automatically deprive all subsequent transferee defendants of the safe harbor's protection. On the Trustee's reading of *Cohmad*, there would have been no reason for the Court to consider whether

---

[5] The only claims asserted against Ms. Piedrahita were subsequent transfer claims. *See* Second Amended Complaint, Adv. Pro. No. 09-1239 (CGM), ECF No. 286, ¶¶ 366–70, 391–94. The Court discussed the Trustee's failure to allege facts showing that Ms. Piedrahita had "independent actual knowledge of the BLMIS fraud," *Fairfield Inv. Fund*, 2021 WL 3477479, at *6, in Section III(A) of its decision, relating to whether Section 546(e) "BAR[RED] THE TRUSTEE'S SIX-YEAR SUBSEQUENT TRANSFER CLAIMS." *Id.* at *3.

the Trustee had pleaded facts establishing Ms. Piedrahita's actual knowledge, and no basis to

dismiss the individual claims against her.  Rather, based on that view, once the Court held that the

initial transferees' actual knowledge had been sufficiently pleaded, *all* defendants' motions to

dismiss would have been denied—including the motion of Ms. Piedrahita, the lone Innocent

Subsequent Transferee Defendant.[6]  But that is not what happened in *Fairfield Investment Fund*.

The other cases cited by the Trustee provide no support for the proposition that *Cohmad*

strips an Innocent Subsequent Transferee Defendant of its ability to obtain dismissal of recovery

claims under Section 546(e) merely because an unrelated initial transferee had actual knowledge.

In *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167 (Bankr. S.D.N.Y. 2018), cited at Opp.

7, 9, the Trustee did not even advance that argument, and the court's decision did not analyze the

issue; neither the Trustee nor the court cited *Cohmad*.[7]  Nor was the issue presented in *SunEdison*

*Litigation Trust v. Seller Note, LLC (In re SunEdison, LLC)*, 620 B.R. 505 (Bankr. S.D.N.Y. 2020),

---

[6] The Trustee alternatively suggests that the dismissal as to Ms. Piedrahita may have been based on a finding, for purposes of the defendants' Section 550(b) "good faith for value" defense, that the Trustee had not adequately pleaded a lack of "good faith."  *See* Opp. 11.  But this ignores: (i) the placement of the discussion of Ms. Piedrahita's lack of knowledge in Section III(A) (*i.e.*, the Section 546(e) portion) of the decision (*see supra* at 6 n.5), rather than in the separate Section III(B) dealing with the Section 550(b) defense, *see Fairfield Inv. Fund*, 2021 WL 3477479, at *7–9; and (ii) the Court's holding that it could not determine on a Rule 12(b) motion whether any defendant "gave value" in surrendering shares in the Fairfield Funds, as a result of which it denied all defendants' motions to dismiss to the extent based on the Section 550(b) defense. *Id.* at *9.

[7] The Trustee there merely argued that Section 546(e) does not apply to the recovery of subsequent transfers.  *See Picard v. BNP Paribas S.A. (In re Bernard L. Madoff Inv. Sec.)*, Adv. Pro. 12-1576, ECF No. 110, at 25–26.  (Construing *BNP Paribas* to bar all subsequent transferee defendants from invoking the safe harbor would contradict *Cohmad* and other authorities discussed *supra* at 4–6 & n.5.)  And here, unlike in *BNP Paribas*, the Trustee has **conceded** that Section 546(e)'s requirements are satisfied as to the initial transfer. *See supra* at 2.  The question on this motion is whether *Cohmad* should be interpreted to divest an Innocent Subsequent Transferee Defendant of the statute's protection.  Moreover, to the extent Judge Bernstein in *BNP Paribas* referred to defendants' knowledge, he appears to have conflated the safe harbor with the entirely separate "good faith for value" defense under Section 550(b), which is not at issue on this motion. *See BNP Paribas*, 594 B.R. at 197 ("[E]ven if the subsequent transferee was unaware of Madoff's Ponzi scheme, it must still prove that it gave value in order to prevail on its defense.").

cited at Opp. 9, where Judge Bernstein granted defendants' motion to dismiss constructive fraudulent transfer claims based on Section 546(e) without discussing any alleged transferee's knowledge or citing *Cohmad*. *See id*. at 512–17. And none of the decisions string-cited at Opp. 6 n.7 justifies stripping Innocent Subsequent Transferee Defendants of Section 546(e)'s protections by dint of an initial transferee's actual knowledge. On the contrary, in *Picard v. Merkin (In re Bernard L. Madoff Investment Securities LLC)*, 515 B.R. 117 (Bankr. S.D.N.Y. 2014) ("*Merkin*"), Judge Bernstein held that because the Trustee's complaint "fail[ed] to plausibly allege" that a subsequent transferee defendant "had actual knowledge of Madoff's Ponzi scheme," Section 546(e) applied; the court accordingly dismissed the avoidance and recovery claims except under Section 548(a)(1)(A). *Id*. at 141.

The Trustee argues that the Barclays Defendants' reading of *Cohmad* would "expand[] the safe harbor," with "subsequent transferees being afforded more protection as to avoidance than the initial transferee itself, which does not reflect Congress' intent." Opp. 10. That is incorrect on multiple levels. *First*, this motion raises no issue concerning the scope of the safe harbor itself. Congress clearly defined its contours in Section 546(e), and the Trustee concedes that the statutory requirements are all satisfied here. *See supra* at 2. What *is* at issue is whether *Cohmad* should be read to deny an Innocent Subsequent Transferee Defendant its ability to invoke the safe harbor on a motion to dismiss. *Second*, the key distinction drawn in *Cohmad* was not between initial and subsequent transferees, but between defendants alleged to have had knowledge of the underlying fraud (and that BLMIS was not trading securities) and those against which no such allegations were even made. Only "those defendants who claim the protections of Section 546(e) through a [BLMIS] account agreement but who actually knew that [BLMIS] was a Ponzi scheme are not entitled to the protections of the Section 546(e) safe harbor," *Cohmad*, 2013 WL 1609154, at *10—

a rule the court applied equally to initial and subsequent transferees.[8]  *See id.* at *5–8.  *Third*, the Trustee cites no Code provision or legislative history supporting the proposition that Congress intended to deny Innocent Subsequent Transferee Defendants the benefits of the safe harbor.

> ## 2.    The Trustee's Attempt to Divest Innocent Subsequent Transferee Defendants of the Protections of the Statutory Safe Harbor Is Inconsistent with Second Circuit Case Law, as Well as *Cohmad*

Under the Trustee's interpretation, Fairfield Sentry's alleged actual knowledge would disentitle ***every*** Innocent Subsequent Transferee Defendant from invoking the safe harbor.  That contravenes Judge Rakoff's stated intention.  As he later explained, in *Cohmad* the court "found that in the majority of cases, section 546(e) requires the dismissal of the Trustee's avoidance claims, except those brought under section 548(a)(1)(A) and related recovery claims under section 550(a)."  *Picard v. ABN AMRO Bank (Ir.) Ltd. (Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC)*, 505 B.R. 135, 142 (S.D.N.Y. 2013) ("*ABN AMRO*") (footnote omitted).

The Trustee's arguments are also inconsistent with the Second Circuit's admonitions against subordinating Section 546(e) to the Code's avoidance provisions.  While the Trustee naturally would prefer such an approach,[9] Congress rejected it, and courts "are obliged to respect the balance [it] struck."  *Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Recoverable Tr.)*, 773 F.3d 411, 423 (2d Cir. 2014) ("*Fishman*").  "Section 546(e) is in full conflict with the goal of maximizing the assets available to creditors.  Its purpose is to protect a national, heavily regulated market by limiting creditors' rights."  *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 94 (2d Cir. 2019).  "Section 546(e) cannot be trumped by the Code's goal of

---

[8] *See also Merkin*, 515 B.R. at 138 (explaining that under *Cohmad*, if "an initial (or subsequent) transferee had *actual* knowledge of Madoff's Ponzi scheme, he cannot avail himself of the § 546(e) safe harbor . . . ." (emphasis original)).

[9] *See* Opp. 8 ("[T]he Bankruptcy Code's avoidance provisions protect against depletion of a debtor's estate . . . .").

maximizing the return to creditors without thwarting the Section's purposes," because "in enacting that statute, Congress made precisely the opposite judgment." *Id.* "Permitting the clawback of millions, if not billions, of dollars from BLMIS clients . . . would likely cause the very 'displacement' that Congress hoped to minimize in enacting § 546(e)." *Fishman*, 773 F.3d at 420. That is no less true when such "clawbacks" are aimed at innocent subsequent transferees.

This is by no means the Trustee's first attempt to gut the safe harbor defense. For example, in *Fishman*, he argued that Section 546(e) "should not apply" to the BLMIS liquidation at all, because that supposedly would "be tantamount to giving legal effect of Madoff's fraud." 773 F.3d at 417. The Second Circuit "rejected these arguments," *id.*, and instead applied the statute as written, *see id.* at 418–23, emphasizing that the Trustee's atextual interpretation "risks the very sort of significant market disruption that Congress was concerned with," and that "[t]he clawback defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, have every reason to avail themselves of all the protections" afforded by Section 546(e). *Id.* at 420. The Second Circuit declined to create a "Ponzi scheme" or general fraud exception to the safe harbor, beyond the limited and explicit exception under Section 548(a)(1)(A). *See id.* at 421–22; *see also Picard v. Greiff (In re Madoff Sec.)*, 476 B.R. 715, 722 (S.D.N.Y. 2012) ("Nothing in the express language of § 546(e) suggests that it is not designed to protect the legitimate expectations of customers, as well as the securities market in general, even when the stockbroker is engaged in fraud."); *Peterson v. Enhanced Investing Corp. (Cayman) Ltd. (In re Lancelot Invs. Fund)*, 467 B.R. 643, 652–53 (Bankr. N.D. Ill. 2012) (holding that "settlement payments" are not ineligible for safe harbor protection "because they may be tainted by fraud," except as provided in Section 548(a)(1)(A)).

### C.    As Financial Institutions Redeeming Investments in Fairfield Sentry, the Barclays Defendants are also Separately Entitled to the Statutory Safe Harbor's Protection Based on Securities Contracts with Fairfield Sentry

In *Cohmad*, Judge Rakoff recognized a separate, alternative way in which the Section 546(e) safe harbor protects certain subsequent transferees (specifically including financial institutions) that rely on agreements other than the BLMIS-Fairfield Sentry account agreements as "securities contracts." After discussing situations where the "securities contract" was a "Madoff Securities account agreement," the court explained that the statutory phrase "is in fact much broader and includes, *inter alia*, investment fund subscription agreements and redemption requests," among others. *Cohmad*, 2013 WL 1609154, at *8. Section 546(e) does not require that "the securities contract that the transfer is made 'in connection with' must be a securities contract with the debtor"—only "that the transfer relate to that securities contract." *Id.* at *9. Thus, where a BLMIS customer (such as Fairfield Sentry) made a "withdrawal" from its BLMIS account that was allegedly "caused by [its] payment obligations to a subsequent transferee under a securities contract" (such as the Articles), the initial transfer "could qualify" under Section 546(e) "as 'related to' that later transaction under the securities contract." *Id.*; *see also* Mem. 17–20.

It is undisputed that the Barclays Defendants (and Fairfield Sentry) are all "financial institutions" based on the Complaint and uncontested judicially noticeable materials. *See* Mem. 21–24; *supra* at 2. And the Trustee is bound by his allegations that BLMIS's initial transfers were made to Fairfield Sentry (at its request) for the purpose of funding the Barclays Defendants' redemption requests. *See* Mem. 17–18 & n.6. Accordingly, the facts alleged here "fit within the plain terms of Section 546(e)." *Cohmad*, 2013 WL 1609154, at *9. *Cohmad* therefore provides a separate, second basis for the statutory safe harbor to protect the Barclays Defendants, premised on the Articles, rather than the BLMIS-Fairfield Sentry customer agreements, as the relevant "securities contract." And the Trustee concedes, by not contesting the Barclays Defendants'

showing, *see* Mem. 17–20, that the initial BLMIS-Fairfield Sentry transfers were made "in connection with" the Articles as a "securities contract" for purposes of Section 546(e).

Because this second, alternative path to Section 546(e) protection does not implicate any securities contract between Fairfield Sentry and BLMIS, Fairfield Sentry's alleged knowledge of the Madoff/BLMIS fraud (and that its customer agreements with BLMIS were not real securities contracts) could not logically have the talismanic significance the Trustee ascribes to it.  Even if Fairfield Sentry's alleged actual knowledge of the BLMIS/Madoff Fraud would disentitle it from "claim[ing] the protections of Section 546(e) through a Madoff Securities account agreement," that would ***not*** preclude an Innocent Subsequent Transferee Defendant which obtained a transfer from Fairfield Sentry from doing so "to the extent that a defendant claims protection under Section 546(e) under a ***separate securities contract as a*** financial participant or ***financial institution***." *Cohmad*, 2013 WL 1609154, at *10 (emphasis added).

Moreover, the Trustee does not contend that the Articles—the relevant "securities contract" in the alternative *Cohmad* analysis—was anything but a real securities contract under which real securities were redeemed and sold.  Accordingly, Fairfield Sentry's alleged actual knowledge of the Madoff/BLMIS fraud poses no impediment to the Barclays Defendants' motion based on Section 546(e).  *Cf. ABN AMRO*, 505 B.R. at 142 n.6 (explaining that "the issue of knowledge was irrelevant to the application of section 546(g), the analogous safe harbor for transfers made in connection with swap agreements, where "there is no dispute that the swap transactions actually occurred, [and] so the mindset of the participants is irrelevant").

The Trustee disparages this second *Cohmad* holding as mere "dicta."  Opp. 9.  Not so. Judge Rakoff explicitly ordered that "to the extent a defendant claims protection under Section 546(e) under a separate securities contract as a financial participant or financial institution, ***the***

*Bankruptcy Court must adjudicate those claims in the first instance consistent with this Opinion*." *Cohmad*, 2013 WL 1609154, at *10 (emphasis added); *see also id.* at *9 n.6 (instructing that the issue must be determined "on the basis of the specific allegations in the Trustee's complaint in a given adversary proceeding"). And this adversary proceeding was one of those "listed in Exhibit A of item number 119 on the docket of 12 Misc. 115 to be returned to the Bankruptcy Court for further proceedings consistent with this Opinion and Order." *Id.*; *see* Briefing Order, Ex. A, line 28 (ECF No. 119, at 17).

The Trustee's assertion that "Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees," Opp. 8, is a red herring. By choosing not to litigate the Section 546(e) issue in his avoidance action against Fairfield Sentry, the Trustees left it for subsequent transferee defendants "to raise a Section 546(e) defense against recovery of those funds." *Cohmad*, 2013 WL 1609154, at *7; *accord Fairfield Inv. Fund,* 2021 WL 3477479, at *3. And the Trustee has conceded that Section 546(e)'s prerequisites have been satisfied. The question presented on this motion, then, is whether *Cohmad*'s prohibition against "actual knowledge" defendants invoking the safe harbor should be extended to Innocent Subsequent Transferee Defendants. Neither logic nor precedent supports such a jarring result.

The Trustee argues that accepting the Barclays Defendants' interpretation of *Cohmad* "would effectively eliminate the point of the actual knowledge exception—which is to restrict any transferee with actual knowledge from hiding behind the safe harbor." Opp. 10. But the Trustee has ***not*** alleged that the Barclays Defendants had actual knowledge of the Madoff/BLMIS fraud. Far from "hiding" behind anything, these Innocent Subsequent Transferee Defendants merely claim protections that Congress gave them, and which *Cohmad* has not taken away. The Trustee's claims based on initial transfers before the two-year lookback period should all be dismissed.

13

## II.    THE TRUSTEE HAS NOT ALLEGED WITH PARTICULARITY ACTUAL FRAUDULENT INTENT UNDER SECTION 548(a)(1)(a)

Section 548(a)(1)(A) permits a trustee to avoid a transfer only if the debtor "made such transfer . . . with actual intent to hinder, delay, or defraud" creditors.  On its face, the statute requires a trustee to plead and prove the actual intent underlying the ***specific transfers*** at issue, rather than relying exclusively on the general nature of the debtor's enterprise.  And, as the Trustee does not deny, the requisite allegations must be pleaded with the particularity demanded by Rule 9(b).  Here, the Trustee has failed to allege any transfer-specific facts relevant to BLMIS's actual intent.  Invoking the Ponzi scheme presumption, he instead relies on allegations about BLMIS's business in general.  *See* Opp. 12–15.[10]  However, applying that judge-made presumption to cases such as this one is, at best, "questionable." *Citibank*, 12 F.4th at 202 (Menashi, J., concurring); *see also* Mem. 28–30.   The Trustee offers no response to the valid concerns with applying the presumption that were carefully set out in the *Citibank* concurrence.

In the alternative, the Trustee claims to have satisfied his Rule 9(b) pleading obligations by alleging certain "badges of fraud"—specifically, "the concealment of facts by BLMIS, BLMIS's insolvency, and the lack of consideration provided for BLMIS's transfers to customers"

---

[10] Although the Ponzi scheme presumption has been accepted in many cases brought by the Trustee (among others), it is not—as the Trustee would have it—the "law of the Circuit," Opp. 14 (citation omitted), because our Court of Appeals has never applied it in a case where the issue was litigated or "held directly that the presumption is well-founded." *Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171, 202 n.7 (2d Cir. 2021) (Menashi, J., concurring), *cert. denied*, 142 S. Ct. 1209 (2022) ("*Citibank*").  Moreover, some courts within the Circuit have recognized that "[s]imply because a debtor conducts its business fraudulently does not make every single payment by the debtor subject to avoidance." *Daly v. Deptula (In re Carrozzella & Richardson)*, 286 B.R. 480, 489 (D. Conn. 2002); *see also Lustig v. Weisz & Assocs., Inc. (In re Unified Com. Cap., Inc.)*, 260 B.R. 343, 350 (Bankr. W.D.N.Y. 2001), *aff'd*, Nos. 01-MBK-6004L, -6005L, 2002 WL 32500567 (W.D.N.Y. June 21, 2002); *Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortg. Inv. Corp.)*, 256 B.R. 664, 680–81 (Bankr. S.D.N.Y. 2000) ("Not every transaction which has the effect of 'exacerbating the harm to creditors by increasing the amount of claims while diminishing the debtor's estate' is a fraudulent conveyance. Section 548 is not a catch-all provision."), *aff'd*, 264 B.R. 303, 308 (S.D.N.Y. 2001).

generally.  Opp. 15.  But the cited paragraphs of the Complaint (¶¶ 16–17, 25–35) do not relate to the alleged "two year" transfers at issue here.  For example, the Trustee does not plead at all, much less with particularity, that those specific transfers were made without consideration.  Nor could he:  transfers by which BLMIS simply returned Fairfield Sentry's previous investments were made with consideration and do not qualify for avoidance.  *See Geltzer v. Barish (In re Geltzer)*, 502 B.R. 760, 770 (S.D.N.Y. 2013) ("[A] trustee is not permitted to sue innocent investors in a Ponzi scheme under fraudulent transfer law for the return of their principal . . . .").[11]  The Trustee fails to allege whether any of the supposed "two year" initial transfers contained fictitious profits (and if so, which ones and to what extent).  Merely listing a large number of transfers and asking the Court to assume that they were all made with intent to defraud falls well short of the Trustee's pleading burden.  His "two year" claims should be dismissed. [12]

## III.    THE TRUSTEE HAS FAILED TO ADEQUATELY PLEAD THE AVOIDABILITY OF THE ALLEGED INITIAL TRANSFERS

The Trustee attempts to plead the avoidability of the initial transfers solely by incorporating the entirety of his Amended Complaint in another adversary proceeding—the Fairfield Amended Complaint.  That flouts the Federal Rules.  *See* Mem. 30–33.  Far from authorizing this tactic, *see* Opp. 17, *American Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670 (Bankr. E.D. Pa. 2010) confirms its impropriety.  In *Geiger*, plaintiffs purported to incorporate into their complaint an entire separate 52-page pleading, and the court dismissed the complaint for failure "to satisfy the

---

[11] *See also Citibank*, 12 F.4th at 203 (Menashi, J., concurring) (noting that BLMIS customers' deposits of principal into their accounts create valid contractual antecedent debts).

[12] The Trustee describes the two-year lookback as extending to "transfers made by BLMIS during the two years prior to the filing date of the SIPA liquidation, or December 11, 2006 to December 11, 2008."  Opp. 2 n.3.  However, the Trustee has not pleaded that any such transfers were made earlier than September 5, 2007.  *See* Compl. Ex. C.

pleading requirement of Rule 8; it neither sets forth a short and plain statement of the claim, nor is

each allegation simple, concise, and direct." *Id*. at 679.  The *Geiger* court explained that the

> most serious problem with the Complaint is that it leaves the reader—the Defendant
> and the Court—to sift through many pages of attached material trying to figure out
> which fact goes with which allegation.  The Complaint itself . . . is conclusory and,
> therefore, wholly insufficient. . . . Putting together the puzzle of matching the bare-
> bones allegations with the meat of the attached materials is the job of the Plaintiffs,
> not of the Debtor or the Court. For this reason alone, the Complaint must be
> dismissed.

*Id*. at 680.

This is an even stronger case for dismissal than *Geiger*: the incorporated pleading here

comprises 217 pages and 798 paragraphs, plus 111 exhibits.  And as in *Geiger* and *United States*

*v. International Longshoremen's Ass'n*, 518 F. Supp. 2d 422 (E.D.N.Y. 2007) ("*ILA*"),[13] the

incorporated pleading is replete with allegations extraneous to the purported reason for the

incorporation.  This imposes unfair burdens on defendants, which are "forced to select the material

from the mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).  Pleading by

such blunderbuss incorporation is in "blatant violation of Rule 8(a)(2)'s direction that a civil

plaintiff provide a 'short and plain statement of the claim.'" *ILA*, 518 F. Supp. 2d at 463.[14]

---

[13] The Trustee strains to distinguish *ILA* as a case of incorporation "in an attempt to add
brand new claims." Opp. 18.  That is incorrect.  The *ILA* court rejected the Government's attempt
to allege "*necessary elements of its RICO claim* by incorporating factual allegations contained in
several prior lengthy criminal and civil RICO pleadings" as a violation of Rule 8(a).  *ILA*, 518 F.
Supp. 2d at 463 (emphasis added).

[14] The Trustee contends that the District Court has already upheld his incorporation of the
Fairfield Amended Complaint, citing *Securities Investor Protection Corp. v. Bernard L. Madoff
Investment Securities LLC (In re Madoff Securities)*, 501 B.R. 26 (S.D.N.Y. 2013).  *See* Opp. 17.
But that decision did not address the propriety of the Trustee's incorporation under the Federal
Rules; that issue was not even litigated.  Judge Rakoff instead addressed whether the Trustee could
recover a subsequent transfer without first having obtained a judgment against the initial transferee
that avoided the initial transfer.  *See In re Madoff Securities*, 501 B.R. at 37.  The Trustee also
argues that the Court may take judicial notice of the Second Amended Complaint ("SAC") in
*Fairfield Investment Fund* and its decision in that case.  *See* Opp. 21.  But he has not purported to
incorporate the SAC, and this Court's decision in *Fairfield Investment Fund* did not address

The Trustee responds that, if they must answer the Complaint, the Barclays Defendants need respond only to paragraphs relevant to "allegations of the avoidability of the initial transfers." Opp. 20. But the Trustee refuses to identify which of the 798 paragraphs relate to avoidability (and require a response), and which do not. It is not the Barclays Defendants' burden to figure this out. Rather, Rule 8(a) requires **the Trustee** to provide a short and plain statement; smuggling in through "incorporation" a mass of extraneous material about many other parties and issues, from a superseded pleading in another action, is non-compliant. The Complaint should be dismissed.

## IV. THE TRUSTEE HAS NOT PLAUSIBLY ALLEGED THAT THE BARCLAYS DEFENDANTS WERE SUBSEQUENT TRANSFEREES OF CUSTOMER PROPERTY

The Complaint fails to plausibly allege that the Barclays Defendants are subsequent transferees of customer property. *See* Mem. 33–39. The Trustee has pleaded no facts connecting the alleged initial transfers to the alleged subsequent transfers—*i.e.*, the Complaint admittedly does not "tie any initial transfer to any subsequent transfer or Subsequent Transferee." *Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015). Instead, the Trustee disclaims any such obligation. The law, however, requires every plaintiff to allege a claim with "facial plausibility" by "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Simply listing alleged initial transfers and subsequent transfers and adding the bare, conclusory assertion that the entries in the two lists are sufficiently connected to each other falls "short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

---

whether the Trustee's wholesale incorporation of an earlier and superseded pleading comports with Rules 8(a) and/or 10(c).

Decisions cited by the Trustee—including from other adversary proceedings he has commenced—disprove his argument by exemplifying the types of allegations that plausibly tie initial and subsequent transfers at the pleading stage. *See, e.g.*, *45 John Lofts LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 736–37, 747 (Bankr. S.D.N.Y. 2019) (payments totaling $29.4 million deposited into an account; $29.4 million withdrawn by the next business day); *Merkin*, 515 B.R. at 150 ("[S]everal subsequent transfers took place contemporaneously or shortly after an initial transfer . . . , implying linkage."); *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317, 341 (Bankr. S.D.N.Y. 2011) (pleading of subsequent transfers held sufficient where they "correspond[ed] to" initial transfers from BLMIS); *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib. Inc.)*, 379 B.R. 5, 13, 30 (Bankr. E.D.N.Y. 2007) (alleged subsequent transfers "were preceded by fraudulent transfers" from debtor "in amounts sufficient to cover the [subsequent] transfers," all within 13 days). Requiring the Trustee to plead facts alleging some "linkage," *Merkin*, 515 B.R. at 150, does not mandate a "tracing analysis" or "dollar-for-dollar accounting" as the Trustee asserts. *See* Opp. 22. Rather, it merely requires pleading facts that, if proved, would link initial transfers to subsequent transfers—something the Trustee himself has done in other actions, but not here.

The Trustee deems it sufficient that he "outlin[ed] the relevant pathways through which customer property was transferred from BLMIS to the Fairfield Funds and subsequently to Defendants," together with the "vital statistics" of the alleged subsequent transfers. Opp. 23. But that does not wash: the Complaint's exhibits reveal his "pathways" to be dead ends. The many 10- to 17-month gaps between the most recent alleged initial BLMIS-to-Fairfield Sentry transfer and the next transfer to a Barclays Defendant (*see* Mem. 36 (listing eight such gaps)) negate any plausible inference of "linkage," unlike in the cases cited *supra* at 17. And Fairfield Sentry

concededly paid redeeming investors with funds from subscribing investors, rather than BLMIS. *See* Mem. 35. The Trustee calls this a "commingling" argument (Opp. 25), but his pleadings establish long periods in which no commingling occurred—and the requisite linkage cannot be made—because *no* customer property remained at Fairfield Sentry; it had already been paid out.[15]

The Trustee also implausibly seeks to recover *$2 billion* more in subsequent transfers than the sum of all alleged BLMIS-to-Fairfield Sentry initial transfers. *See* Mem. 34–35. The Trustee tries to justify this overreach because he "'can recover from any combination of [transferees]' up to the amount avoided." Opp. 28 (citing *Helms v. Metro. Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021)). But the only subsequent transferees from whom potentially duplicate recoveries may be obtained—*i.e.*, the "immediate or mediate transferee[s] of [an] initial transferee," to which Section 550(a)(2) refers—are those "who take[] in a later transfer down the chain of title or possession." *Helms*, 601 B.R. at 656. Here, the Trustee does not seek recovery from a series of transferees in a single "chain of title or possession." Instead, he sues to recover various amounts from many defendants in dozens of *different* alleged chains of title or possession, asserting—without alleging facts plausibly supporting the assertion— that *all* the funds they received constitute subsequent transfers of customer property. And he

---

[15] For example, the Trustee alleges that: from May 9 through July 22, 2003, BLMIS transferred $120 million to Fairfield Sentry; the next such transfer, of $175 million, did not occur until April 1, 2005; and from May 9 through September 30, 2003, Fairfield Sentry transferred more than $183 million to redeeming investors. *See* Mem. 38. Fairfield Sentry thus held *no* BLMIS customer property from October 1, 2003, until April 1, 2005. The Trustee nevertheless seeks to recover here seven redemption payments made during that period. The Trustee also accuses the Barclays Defendants of "appl[ying] some undisclosed tracing methodology or methodologies of their choosing," and submitting (through counsel's declaration) "expert testimony." Opp. 25–26. But the Barclays Defendants presented only basic arithmetic calculations—*i.e.*, adding all the BLMIS-to-Fairfield Sentry transfers and subtracting redemptions by Fairfield Sentry investors— performed on data the Trustee provided in his pleadings. That is plainly not "expert testimony." *See United States v. Sepúlveda-Hernández*, 752 F.3d 22, 35 (1st Cir. 2014) (upholding admission of a fact witness' multiplication calculations as "lay opinion testimony").

persists in doing so even though the total he seeks exceeds by approximately $2 billion the sum of the initial transfers. Not surprisingly, the Trustee cites no precedent for proceeding in this manner.

Finally, the Trustee invokes an alleged information deficit as an excuse for not pleading facts plausibly showing that the Barclays Defendants received customer property. *See* Opp. 26–27. But he does not deny that ever since his 2011 Fairfield Settlement Agreement, he has had full access to the Fairfield Liquidators' "documents, data and other information relating to, or beneficial to the pursuit of" claims in which the Trustee and the Liquidators agreed to cooperate and share proceeds—including this action. Mem. 6. He coyly denies "hav[ing] *all* of the Fairfield Funds' books and records," Opp. 27 n.18 (emphasis added), without disclosing which books and records he has, which (if any) he is missing and why, what (if anything) he has done to access any missing books and records, or whether (and how) any gaps would justify his pleading failures.[16] The Trustee's suggestion that the Barclays Defendants "also no doubt have records they can provide on these same transactions," Opp. 27 n.18, and his claimed "entitle[ment] to take discovery on this issue" from them, Opp. 27 n.18, are *non sequiturs*. Fairfield Sentry's records, to which the Trustee has had contractual access for over a decade, together with BLMIS's own records, would show whether Fairfield Sentry's redemption payments contained customer property; there is no reason to suppose that the Barclays Defendants' records would show that, and the Trustee provides none. The Trustee has not justified the Complaint's deficiencies. It should be dismissed.

## CONCLUSION

For the foregoing reasons and those stated in the Barclays Defendants' moving papers, the Court should dismiss the Complaint in its entirety.

---

[16] Although the Trustee fails to acknowledge it, the Liquidators admitted in 2010 that they possessed most of the Fairfield Funds' books and records. *See* Decl. of Kenneth Krys, *In re Fairfield Sentry Ltd.*, No. 10-13164, ECF No. 40 ¶¶ 15, 19 (Bankr. S.D.N.Y. July 16, 2010).

Dated: New York, New York
May 26, 2022

**HERBERT SMITH FREEHILLS
NEW YORK LLP**

By:    /s/ *Marc J. Gottridge*
Marc J. Gottridge
Michael Schoeneberger
450 Lexington Avenue
New York, New York 10017
Telephone: (917) 542-7600
marc.gottridge@hsf.com
michael.schoeneberger@hsf.com

*Attorneys for Defendants Barclays Bank (Suisse) S.A., Caixabank S.A., as successor by merger to Barclays Bank S.A., and Zedra Trust Company (Jersey) Limited (f/k/a Barclays Private Bank and Trust Limited)*