# EXHIBIT 3

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    - - - - - - - - - - - - - - - x

4    IRVING H. PICARD, TRUSTEE

5    FOR THE LIQUIDATION OF B.

6    vs.                              CASE NO. 11-02149-cgm

7    BANQUE SYZ & CO., S.A.

8    - - - - - - - - - - - - - - - x

9    IRVING H. PICARD, TRUSTEE

10   FOR THE LIQUIDATION OF B.

11   vs.                              CASE NO. 12-01205-cgm

12   MULTI-STRATEGY FUND LIMITED

13   - - - - - - - - - - - - - - - x

14

15                    U.S. Bankruptcy Court

16                    One Bowling Green

17                    New York, New York  10004

18

19                    May 18, 2022

20                    10:01 AM

21   B E F O R E :

22   HON. CECELIA G. MORRIS

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  Unknown

Page 2

1   Adversary Proceeding 11-02149-cgm, Irving H. Picard, Trustee

2   for the Liquidation of B vs. Banque XYZ & Co., SA

3   RE:  Doc #148 Notice of Adjournment of Hearing RE: Pre-Trial

4   Conference Hearing not Held and Adjourned to 5/18/22 at 10

5   a.m. at Videoconference (ZoomGov) (CGM).

6

7   RE:  Doc #149 Motion to Dismiss Case/Motion and Notice of

8   Motion of Defendant Banque Syz SAs Motion to Dismiss the

9   Complaint (related document(s) 147, 1) filed by Richard B.

10  Levin on behalf of Banque SYZ & Co., SA with hearing to be

11  held on 5/18/22 at 10 a.m. at Videoconference (ZoomGov)

12  (CGM) Responses due by 3/29/22

13

14  RE:  Doc #153 Opposition/Trustee's memorandum of Law in

15  Opposition to Defendant Banque Syz SA's Motion to Dismiss

16  (related document(s)149) filed by Nicholas Cremona on behalf

17  of Irving H. Picard, Trustee for the Liquidation of Bernie

18  L. Madoff Investment Securities LLC and Bernard L. Madoff

19

20  RE:  Doc #156 Reply to Motion/Banque Syz SA's Reply to the

21  Trustee's Memorandum in Opposition to Banque Sys's Motion to

22  Dismiss the Complaint (related document(s) 149) filed by

23  Richard B. Levin on behalf of Banque SYZ & Co., SA.

24

25

1    Adversary proceeding:  12-01205-cgm; Irving H. Picard,

2    Trustee for the Liquidation of B v. Multi-Strategy Fund

3    Limited

4    RE:  Doc #91 Motion to Dismiss Adversary Proceeding (related

5    document(s) 1) filed by Robert J. Lack on behalf of Multi-

6    Strategy Fund Limited with hearing to be held on 5/18/22 at

7    10 a.m. at Videoconference (ZoomGov) (CGM)

8

9    RE:  Doc #99 Motion to Dismiss Adversary Proceeding Notice

10   of Motion to Dismiss the Amended Complaint (related

11   document(s)97) filed by Robert J. Lack on behalf of Multi-

12   Strategy Fund Limited with hearing to be held on 5/18/22 at

13   10:00 a.m. at Videoconference (ZoomGov) (CGM)

14

15   RE:  Doc #108 Opposition/Trustee's memorandum of Law in

16   Opposition to Defendant Multi-Strategy Fund Limited's Motion

17   to Dismiss (related document(s)99) filed by David J. Sheehan

18   on behalf of Irving H. Picard, Trustee for the Liquidation

19   of Bernard L. Madoff Investment Securities LLC

20

21   RE:  Doc #110 Reply Memorandum of Law of Defendant Multi-

22   Strategy Fund Limited in Support of its Motion to Dismiss

23   the Amended Complaint (related document(s)99) filed by

24   Robert J. Lack on behalf of Multi-Strategy Fund Limited.

25   Transcribed by:  Sheila Orms

```
 1    A P P E A R A N C E S :

 2    MAYER BROWN LLP

 3         Attorneys for Lombard Odier

 4         1221 Avenue of the Americas

 5         New York, NY  10020

 6

 7    BY:  CHRISTOPHER J. HOUPT, ESQ.

 8         MARC COHEN, ESQ. (ZOOM)

 9         MARK G. HANCHET, ESQ. (ZOOM)

10         KEVIN C. KELLY, ESQ. (ZOOM

11

12    KELLNER HERLIHY GETTY FRIEDMAN

13         Attorneys for Parson Finance Panama S.A.

14         470 Park Avenue South

15         7th Floor

16         New York, NY  10016-6819

17

18    BY:  DOUGLAS A. KELLNER, ESQ.

19

20    CLIFFORD CHANCE US LLP

21         Attorneys for Dexia Banque Internationale a Luxembourg

22         31 West 52nd Street

23         New York, NY  10019

24

25    BY:  JEFF E. BUTLER, ESQ. (ZOOM)
```

1    CIRILLO LAW OFFICE

2         Attorneys for National Bank of Kuwait (NBK)

3         246 E. 33rd Street

4         New York, NY  10016

5

6    BY:  RICHARD A. CIRILLO, ESQ. (ZOOM)

7

8    FRIEDMAN KAPLAN SEILER ADELMAN LLP

9         Attorneys for Multi-Strategy Fund Limited

10        7 Times Square

11        New York, NY  10036

12

13   BY:  ROBERT J. LACK, ESQ. (ZOOM)

14        JEFFREY C. FOURMAUX, ESQ. (ZOOM)

15

16   PORZIO BROMBERG NEWMAN, P.C.

17        Attorneys for Luxalpha SICAV and its Liquidators, Alain

18             Rukavina

19        1675 Broadway

20        Suite 1810

21        New York, NY  10019

22

23   BY:  DEAN M. OSWALD, ESQ. (ZOOM)

24

25

Page 6

1   BAKER HOSTETLER LLP

2        Attorneys for Irving H. Picard, Trustee

3        45 Rockefeller Plaza

4        New York, NY  10111

5

6   BY:  NICHOLAS CREMONA, ESQ. (ZOOM)

7        MATTHEW FEIL, ESQ. (ZOOM)

8        MATTHEW B. FRIEDMAN, ESQ. (ZOOM)

9        MARCELLA OLIVER, ESQ.

10

11  GREENBERG TRAURIG, LLP

12       Attorneys for The Public Institution for Social

13            Security

14       One International Place

15       Suite 2000

16       Boston, MA  02110

17

18  BY:  ALISON T. HOLDWAY, ESQ. (ZOOM)

19       JOSEPH DAVIS, ESQ. (ZOOM)

20       LEO MUCHNIK, ESQ. (ZOOM)

21

22

23

24

25

1   WUERSCH GERING LLP

2        Attorneys for Bank Vontobel

3        100 Wall Street

4        10th Floor

5        New York, NY  10005

6

7   BY:  GREGORY F. HAUSER, ESQ. (ZOOM)

8

9   JENNER BLOCK LLP

10        Attorneys for "Defendant"

11        1155 Avenue of the Americas

12        new York, NY  10036

13

14   BY:  RICHARD LEVIN, ESQ. (ZOOM)

15

16   JENNER BLOCK LLP

17        Attorneys for "Defendant"

18        353 N. Clark Street

19        Chicago, IL  60654

20

21   BY:  VINCENT LAZAR, ESQ.

22

23

24

25

Page 8

1   BECKER GLYNN MUFFLY CHASSIN HOSINSKI LLP

2       Attorneys for The Sumitomo Trust and Banking Co., Ltd.

3       299 Park Avenue

4       New York, NY  10171

5

6   BY:  MICHAEL ZEB LADNSMAN, ESQ. (ZOOM)

7

8   CLEARY GOTTLIEB STEEN HAMILTON LLP

9       Attorneys for CACEIS Bank Luxembourg

10       2112 Pennsylvania Avenue, N.W.

11       Suite 1000

12       Washington, D.C.  20037

13

14   BY:  NOWELL BAMBERGER, ESQ.

15

16   CLEARY GOTTLIEB STEEN HAMILTON LLP

17       Attorneys for CACEIS Bank Luxembourg

18       One Liberty Plaza

19       New York, NY  10006

20

21   BY:  JOSEPH M. KAY, ESQ.

22       THOMAS Q. LYNCH, ESQ.

23       RACHEL POLAN, ESQ. (ZOOM)

24       JEFFREY A. ROSENTHAL, ESQ.

25       ELIZABETH VICENS, ESQ.

Page 9

1    PROSKAUER ROSE LLP

2         Attorneys for (Unknown)

3         Eleven Times Square

4         New York, NY  10036

5

6    BY:  EHUD BARAK, ESQ.

7         RUSSELL T. GORKIN, ESQ.

8         ELLIOT R. STEVENS, ESQ.

9

10   ARNOLD PORTER KAYE SCHOLER LLP

11        Attorneys for ASB Bank Corp.

12        250 W. 55th Street

13        New York, NY  10019-9710

14

15   BY:  LUCAS B. BARRETT, ESQ. (ZOOM)

16

17   ARNOLD PORTER KAYE SCHOLER LLP

18        Attorneys for ASB Bank Corp.

19        601 Massachusetts Ave., N.W.

20        Washington, D.C. 2001-3743

21

22   BY:  ROSA J. EVERGREEN, ESQ.

23

24

25

```
 1   ROPES GRAY LLP
 2        Attorneys for Ropes Gray LLP
 3        Prudential Tower
 4        800 Boylston Street
 5        Boston, MA
 6
 7   BY:  THANITHIA BILLINGS, ESQ.
 8        ANDREW DEVORE, ESQ.
 9
10   WILLKIE FARR GALLAGHER LLP
11        Attorneys for Unknown
12        787 Seventh Avenue
13        New York, NY  10019-6099
14
15   BY:  LOUIS ALOYSIUS CRACO, ESQ.
16
17   BOIES SCHILLER FLEXNER LLP
18        Attorneys for ZCM
19        55 Hudson Yards
20        New York, NY  10001
21
22   BY:  STEVEN FROOT, ESQ. (ZOOM)
23
24
25
```

Page 11

1   YOUNG CONAWAY STARGATT TAYLOR LLP

2        Attorneys for Irving H. Picard, Trustee

3        1270 Avenue of the Americas

4        Suite 2210

5        New York, NY  10020

6

7   BY:  CHRISTOPHER M. LAMBE, ESQ.

8

9   SHEARMAN STERLING LLP

10        Attorneys for Unknown

11        599 Lexington Avenue

12        New York, NY  10022

13

14   BY:  RANDY LEWIS MARTIN, ESQ. (ZOOM)

15

16   SIDLEY AUSTIN LLP

17        Attorneys for Unknown

18        787 Seventh Avenue

19        New York, NY  10019

20

21   BY:  DAVID MOON, ESQ.

22        LUCIA M. RADDER, ESQ.

23        MARISSA ALTER-NELSON, ESQ.

24

25

```
 1   ALLEGAERT BERGER VOTEL LLP

 2        Attorneys for Unknown

 3        111 Broadway

 4        20th Floor

 5        New York, NY  10006

 6

 7   BY:  LAUREN J. PINCUS, ESQ.

 8        DAVID J. SHAIMAN, ESQ.

 9        MICHAEL S. VOGEL, ESQ.

10        JOHN ZULACK, ESQ.

11

12   SELEDY GAY ELSBERG PLLC

13        Attorneys for Fairfield Entities and Foreign

14             Representatives

15        1290 6th Avenue

16        New York, NY  10104

17

18   BY:  DOMINIC BUDETTI, ESQ.

19        DAVID ELSBERG, ESQ.

20        JORDAN GOLDSTEIN, ESQ.

21        RONALD KROCK, ESQ.

22        SAMUEL KWAK, ESQ.

23        JULIE SINGER, ESQ.

24

25
```

1    BROWN RUDNICK LLP

2         Attorneys for Unknown

3         1 Financial Center, Boston

4         Boston, MA  02111

5

6    BY:  MELANIE D. BURKE, ESQ. (ZOOM)

7

8    LATHAM WATKINS LLP

9         Attorneys for Unknown

10        1271 Avenue of the Americas

11        New York, Ny  10020

12

13   BY:  COREY CALABRESE, ESQ.

14

15   HERBERT SMITH FREEHILLS NEW YORK LLP

16        Attorneys for Unknown

17        450 Lexington Avenue

18        14th Floor

19        New York, NY  10017

20

21   BY:  JONATHAN CROSS, ESQ.

22        MARK J. GOTTRIDGE, ESQ. (ZOOM)

23

24

25

1    SHEPPARD MULLIN RICHTER HAMPTON, LLP

2         Attorneys for Meritz

3         30 Rockefeller Plaza

4         New York, NY  10012

5

6    BY:  MICHAEL T. DRISCOLL, ESQ.

7

8    MCKOOL SMITH

9         Attorneys for Bank Julius Baer

10        395 9th Avenue

11        50th Floor

12        New York, NY  10001

13

14   BY:  ERIC HALPER, ESQ.

15

16   SHEPPARD MULLIN RICHTER HAMPTON, LLP

17        Attorneys for Unknown

18        30 Rockefeller Plaza

19        New York, NY  10112

20

21   BY:  BLANKA K. WOLFE, ESQ. (ZOOM)

22

23

24

25

1   LOWENSTEIN SANDLER LLP

2       Attorneys for Bureau of Labor Insurance

3       One Lowenstein Drive

4       Roseland, NJ  07068

5

6   BY:  NICOLE M. FULFREE, ESQ. (ZOOM)

7

8   BECKER GLYNN MUFFLY CHASSIN HOSINSKI LLP

9       Attorneys for The Sumitomo Trust and Banking Co., Ltd.

10      299 Park Avenue

11      New York, NY  10171

12

13  BY:  TARA Q. HIGGINS, ESQ. (ZOOM)

14

15  DAVIS GILBERT LLP

16      Attorneys for Natixis

17      1675 Broadway

18      New York, NY  10019

19

20  BY:  ADAM M. LEVY, ESQ. (ZOOM)

21      HENRY SEIJI NEWMAN, ESQ. (ZOOM)

22

23

24

25

1   SEWARD KISSEL

2        Attorneys for Arden Endowment Advisers Limited

3        One Battery Park Plaza

4        New York, NY  10004

5

6   BY:  M. WILLIAM MUNNO, ESQ. (ZOOM)

7

8   WESTERMAN BALL EDERER MILLER ZUCKER SHARFSTEIN

9        Attorneys for Arden Asset Management Inc.

10       1201 RXR Plaza

11       Uniondale, NY  11556

12

13  BY:  MICHAEL B. WEITMAN, ESQ. (ZOOM)

14

15

16

17

18

19

20

21

22

23

24

25

1                  P R O C E E D I N G S

2             THE COURT:  Good morning, everyone.

3             MR. CREMONA:  Good morning, Your Honor.

4             THE COURT:  Just for the record, the first matter

5    that we have on is 10-04289, Picard versus John Fujiwara and

6    that one, there's been a certificate filed of no objection;

7    is that correct?

8             MR. CREMONA:  Good morning, Your Honor, this is

9    Nicholas Cremona appearing on behalf of the Trustee.  That's

10   correct, Your Honor.  After the objection deadline on

11   Friday, we submitted a certificate of no objection and a

12   proposed order granting the motion to enforce the settlement

13   agreement which remains in default.

14            THE COURT:  Very good.  I will -- when it comes

15   through the system, I'll -- we'll sign off on it, thank you.

16            MR. CREMONA:  Thank you, Your Honor.

17            THE COURT:  12-01205, Irving Picard, the Trustee

18   versus Multi-Strategy Funds Limited, 12-01205, state your

19   name and affiliation.

20            MR. LACK:  Good morning, Your Honor, Robert Lack

21   of Friedman Kaplan Seiler and Adelman for defendant Multi-

22   Strategy Limited.

23            THE COURT:  I need to have everybody put their

24   appearance on first.

25            MR. LACK:  Oh, yes.  And also with me today is my

Page 18

```
 1   partner Jeffrey Fourmaux, who will present part of the

 2   argument for the defendant.

 3            THE COURT:  Okay.  Very good.

 4            MR. FEIL:  Good morning, Your Honor, Matthew Feil

 5   for -- from Baker Hostetler for the Trustee and my colleague

 6   Matthew Friedman will also be appearing for the Trustee.

 7            THE COURT:  Very good.  Mr. Lack, it's your

 8   motion.

 9            MR. LACK:  Thank you, Your Honor.  This is the

10   first motion to dismiss in a series of approximately 80

11   proceedings brought by the Trustee to recover transfers from

12   offshore Madoff feeder funds to foreign transferees.

13            The Trustee alleges that the transfers constituted

14   subsequent transfers of customer property, initially

15   transferred to those feeder funds by Bernard L. Madoff

16   Investment Securities LLC or BLMIS, which I'll refer to

17   sometimes as Madoff.

18            The legal issues we will argue today are common to

19   nearly all the cases.  I will address two of them, the

20   applicability of the safe harbor in Section 546(e) in the

21   Bankruptcy Code and the Trustee's failure to plausibly

22   allege the transfer at issue constituted customer property.

23   My partner, Jeff Fourmaux will address the lack of personal

24   jurisdiction.

25            In the case of Multi-Strategy, the issues are
```

1    presented exceptionally clearly.  Multi-Strategy is an

2    investment fund established in the Cayman Islands and

3    operated out of Canada.

4              In the Trustee's amended complaint filed in

5    February of this year, the Trustee seeks to recover a single

6    transfer of $25.8 million made from Fairfield Sentry to

7    Multi-Strategy on March 15th, 2005.

8              The amended complaint was filed after Multi-

9    Strategy made its initial motion to dismiss.  The Trustee

10   does not seek any discovery in connection with this motion

11   and does not seek leave to amend.

12             In this case, as in many others, the Trustee has

13   given the back of his hand to Multi-Strategy's motion.

14   Section 546(e) does not apply, he says, because the initial

15   transferee, Sentry, is alleged to have had actual knowledge

16   of Madoff's fraud.

17             The Trustee denies any obligation to link the

18   initial transfers from Madoff to Sentry to the subsequent

19   transfer from Sentry to Multi-Strategy.  And he says that

20   Multi-Strategy's intent that its investment in Sentry would

21   ultimately be invested in the U.S. market is enough to

22   establish jurisdiction.

23             All of these Trustee assertions are wrong, and fly

24   in the face of Judge Rakoff's opinion in Cohmad, this

25   Court's decision in Fairfield Investment Fund, the Supreme

Page 20

1     Court's decision in Iqbal, Twombly and Walden, and many

2     others.

3              Now, we start with Section 546(e).  Section 546(e)

4     prevents the Trustee from avoiding certain initial

5     transfers.  The Trustee does not dispute that it applies by

6     its terms to the initial transfer alleged to have occurred

7     from Madoff to Sentry in this case.

8              That is, he does not dispute that Madoff was a

9     stockbroker, that Sentry was a financial institution and

10    that the transfer was a settlement payment or in connection

11    with a securities contract.  He does not dispute that that

12    transfer that Multi-Strategy was made more than two years

13    before the petition date.

14             The real issue on this motion is not whether the

15    safe harbor applies to the initial transfer.  It clearly

16    does.  But which transferees can invoke it, whether the

17    actual knowledge of the initial transferee can be used to

18    strip the safe harbor protection from a subsequent

19    transferee that does not have actual knowledge?

20             The Trustee's argument against the safe harbor has

21    two steps.  First, he says that under Cohmad, Section 546(e)

22    cannot be invoked by the initial transferee, Sentry, because

23    of Sentry's alleged actual knowledge of Madoff's fraud.

24             And second, the Trustee goes on to argue because

25    the safe harbor cannot be invoked by the initial transferee,

Page 21

1    it cannot be invoked by the subsequent transferee, Multi-

2    Strategy, either, even though Section 546(e) literally

3    applies and Multi-Strategy is not alleged to have had actual

4    knowledge of the fraud.

5          The Trustee's second step is not supported by

6    Cohmad.  Quite the opposite.  Cohmad stands for the

7    proposition that a transferee's ability to invoke the safe

8    harbor, depends on whether that transferee, that is the

9    defendant being sued had actual knowledge of the fraud.

10         At the start of his opinion, Judge Rakoff weighs

11   out his holding in two paragraphs.  First,  where exception

12   546(e) would otherwise apply, the initial transferee cannot

13   invoke it, if the initial transferee had actual knowledge of

14   the fraud.

15         And second, where 546(e) would otherwise apply,

16   the subsequent transferee cannot invoke it if the subsequent

17   transferee had actual knowledge of the fraud.

18         No where does Judge Rakoff say that where Section

19   546(e) would otherwise apply, the subsequent transferee

20   cannot invoke it if the initial transferee had actual

21   knowledge of the fraud.  And there's no reason to believe

22   that Judge Rakoff would deny an otherwise applicable safe

23   harbor to an innocent subsequent transferee.  His stated

24   reason for his holding in Cohmad was that Section 546(e) is

25   designed to protect the legitimate expectations of parties

Page 22

1    to securities contracts.  And that if a transferee actually

2    knew that there was no securities contract between --

3    because Madoff who is not trading securities, there's no

4    reason to give that transferee the benefit of the safe

5    harbor.

6            But there, there is no allegation that Multi-

7    Strategy knew Madoff was not trading securities.  They had

8    every reason to believe that any transfer from Madoff to

9    Sentry was in connection with a securities contract, either

10   between Madoff and Sentry or between Sentry and Multi-

11   Strategy.  Cohmad's rationale supports Multi-Strategy's

12   ability to invoke the safe harbor.

13           Now, this Court adopted this approach in Fairfield

14   Investment Fund when it focused on the actual knowledge of

15   the various subsequent transferees in deciding whether to

16   dismiss the subsequent transfer claims against it.

17           In the case of Corina Noel Piedrahita, the Court

18   found that there were no allegations that she had actual

19   knowledge of the fraud and dismissed the subsequent transfer

20   claim against her.

21           Had the Trustee's theory been correct and the

22   actual knowledge of Sentry had been sufficient to deny

23   subsequent transferees the ability to invoke the safe

24   harbor, this Court would have refused to dismiss the claim

25   against Ms. Piedrahita since it found that Sentry's actual

1    knowledge had been adequately alleged.  But the Court

2    dismissed Ms. Piedrahita because she lacked actual

3    knowledge.  A consistent approach requires dismissal of

4    Multi-Strategy here.

5            The Trustee argues that allowing the subsequent

6    transferee to invoke the safe harbor when the initial

7    transferee cannot, is somehow treating them unequally, not

8    so.

9            The same rule from Cohmad applies to both.

10   Transferees with actual knowledge cannot avail themselves

11   with the safe harbor.  As Judge Rakoff put it in the passage

12   Your Honor quoted in Fairfield Investment Fund, quote, if

13   the Trustee sufficiently alleges that the transferee from

14   whom he seeks to recover a fraudulent transfer knew of

15   Madoff's securities fraud, that transferee cannot claim the

16   protections of Section 546(e), safe harbor, unquote.

17           Here, the Trustee does not allege that Multi-

18   Strategy knew of Madoff's fraud.  Multi-Strategy thus can

19   invoke the safe harbor, even if Sentry cannot.  Indeed,

20   allowing the Trustee's claim against Multi-Strategy would be

21   treating innocent transferees unequally.

22           All innocent initial transferees that received

23   transfers more than two years before the petition date, have

24   been been dismissed based on the safe harbor as a result of

25   the Second Circuit's decision in Fishman.

1          It would be bizarre and unjust for innocent

2     subsequent transferees to be denied the use of the safe

3     harbor, where they had no direct dealings with Madoff and

4     thus were further removed from Madoff's wrongdoing than the

5     initial transferees.

6          If Your Honor has no questions on this, I'll

7     proceed to customer property.

8          THE COURT:  Okay.

9          MR. LACK:  Because --

10         THE COURT:  One thing I did want to say is if you

11    emphasize what you've written and don't repeat yourself, it

12    helps me.

13         MR. LACK:  Oh, yes, absolutely, Your Honor.  And I

14    have --

15         THE COURT:  (indiscernible), right?

16         MR. LACK:  Yeah, absolutely.

17         THE COURT:  Okay.  Thank you.

18         MR. LACK:  Okay.  On the issue of customer

19    property, the Trustee claims that because Sentry invested

20    nearly all its money in BLMIS, all redemptions from Sentry

21    had to be Madoff customer property.

22         The problem is that the Trustee's own pleading

23    show that this is implausible and in the case of a single

24    transfer to Multi-Strategy impossible.

25         This is not a matter of expert opinion, but simple

Page 25

1    arithmetic.  The first transfers from Madoff to Sentry

2    within the six year period preceding the petition date began

3    on May 9th, 2003.

4            On May 9th, July 11th, and July 22nd, 2003 BLMIS

5    sent $40 million, $55 million and $25 million respectively

6    to Sentry, for a total of $120 million.

7            There were no further transfers from Madoff to

8    Sentry in the nearly two years from that time until Multi-

9    Strategy received its redemption on March 15th, 2005.

10           Now, how do we know this on this motion to

11   dismiss?  It's in the tables attached as exhibits to the

12   amended complaint that the Trustee filed against Multi-

13   Strategy.

14           The Trustee has filed complaints alleging that

15   during May 2003 and the following months, Fairfield Sentry

16   transferred hundreds of millions of dollars of Madoff

17   customer property to Fairfield affiliated entities and

18   Fairfield investors.

19           Simply adding these up -- yes.  And simply adding

20   these up, as I did in my declaration shows that all the

21   Madoff money was gone by the time Multi-Strategy received

22   its redemption in March 2005.

23           The money Multi-Strategy received could not have

24   come from Madoff.  It had to have come from other Sentry

25   investors.

1            In Multi-Strategy's case, the Court doesn't need

2     to look beyond the Trustee's amended complaint against

3     Multi-Strategy and the documents it incorporates by

4     reference.

5            The Trustee's second amended complaint against

6     Fairfield Sentry which is incorporated by reference into the

7     Trustee's amended complaint against Multi-Strategy was more

8     than $300 million of transfers from Sentry to a Fairfield

9     affiliated entities between May 9th, 2003 and March 14th,

10    2005.  Far more than the $120 million Madoff sent to Sentry.

11    It is simply not plausible on the face of the Trustee's

12    amended complaint against Multi-Strategy that Multi-Strategy

13    received any Madoff customer property in the single

14    redemption on March 15th, 2005.

15           Now, the Trustee says -- the Trustee says that our

16    exhaustion argument belies on the factual assumption that

17    every transfer from Sentry that preceded ours was sourced

18    solely by customer property.  He says that on page 30 of his

19    opposing brief.

20           On this motion, we are entitled to this assumption

21    because the Trustee alleges precisely this in his

22    complaints.  The Trustee alleges in his complaints that the

23    entire subsequent transfers to each defendant consisted of

24    customer property, not that only some of them did.

25           For example, the amended complaint against Multi-

Page 27

1   Strategy alleges in paragraph 2 that quote, the Trustee

2   seeks to recover a single subsequent transfer of $25,763,374

3   in BLMIS customer property.

4          In paragraph 331 of the Trustee's second amended

5   complaint against Fairfield Sentry, he alleges that all

6   subsequent transfers quote, were and remain customer

7   property.  And indeed, in the amended complaint, the trustee

8   filed yesterday, against Standard Charter Financial Services

9   Luxembourg, he seeks to recover $289 million in alleged

10  subsequent transfers.  And alleges in paragraph one that all

11  $289 million is quote, BLMIS customer property, unquote.

12         Thus, holding the Trustee to what he alleged in

13  his complaints, all of the Madoff money that was received

14  before March 15th, 2005, had to have been distributed by

15  Sentry to others before Multi-Strategy received its

16  redemption.

17         This is not a matter of tracing of commingled

18  property.  At the time of Multi-Strategy's redemption, there

19  was no commingling with Madoff and non-Madoff money because

20  there was no Madoff money left in Sentry.

21         None of the cases cited by the Trustee involved a

22  situation in which customer property had been exhausted or

23  in which nearly two years had passed between the last

24  alleged initial transfer and the alleged subsequent

25  transfer.

1            As we noted in our reply brief, those cases

2    involve linkages between the initial and subsequent

3    transfers that were apparent on the face of the pleadings,

4    with corresponding amounts within short periods of time.

5    The Trustee made no attempt to show any such linkage here.

6            Indeed, the Trustee does not dispute that he has

7    sued for billions of dollars more in subsequent transfers

8    than Sentry ever received from Madoff.

9            His allegations that these subsequent transfers

10   all are customer property simply cannot be true.  If

11   following Twombly required the Trustee to show how each

12   transfer could plausibly be customer property.  He has not

13   done so even though he has had access to Sentry's books and

14   records for more than a decade.

15           In the case of a single transfer to Multi-Strategy

16   he failed to show any linkage to customer property in his

17   amended complaint even after his failure was highlighted in

18   our initial motion to dismiss.  His claim should therefore

19   be dismissed without leave to amend.

20           At this point, Your Honor, unless you have some

21   questions about the customer property, I'll ask Mr. Fourmaux

22   to address personal jurisdiction.

23           THE COURT:  Very good, Mr. Fourmaux.

24           MR. FOURMAUX:  Good morning, Your Honor, Jeff

25   Fourmaux, Friedman Kaplan Seiler and Adelman for defendant

1   Multi-Strategy Fund.  I'll be addressing why there's no

2   personal jurisdiction here.

3            The basic jurisdictional facts are undisputed.

4   I'll just mention the highlights.  Multi-Strategy is an

5   investment fund organized in the Cayman Islands with its

6   principal place of business in Canada.  Multi-Strategy did

7   not negotiate or execute its subscription agreements or its

8   redemption requests with Sentry in the United States.  Those

9   documents were all signed in Canada and faxed to the

10  Netherlands.

11           The subscription and redemption payments went by

12  wire transfer from Multi-Strategy's bank account in Canada

13  to Sentry's bank account in Ireland and vice versa.

14           Now, the Trustee makes four arguments for specific

15  jurisdiction, but on the facts here, none of them

16  establishes a prima facie case, either alone or in

17  combination.

18           First, there's the Trustee's lead argument for

19  specific jurisdiction.  That's the Trustee's knowledge and

20  intent theory and it's fundamentally contrary to controlling

21  appellate authority.

22           The Trustee alleges that Multi-Strategy bought

23  shares of Sentry knowing and intending that Sentry would

24  invest Multi-Strategy's money with Madoff in New York and

25  that Madoff purported to trade in U.S. securities.

Page 30

1           The Trustee asserts that quote, by investing in

2     this way, defendant purposely undertook investment

3     activities in the United States, end quote.  That's the

4     amended complaint, paragraph 100.  That is a theory of

5     imputation, Your Honor.

6           The Trustee asks the Court to treat Sentry's act

7     of investing Multi-Strategy's money with Madoff in New York

8     as being Multi-Strategy's own action in New York.  By doing

9     that, the Trustee seeks to impute Sentry's New York contact

10    to Multi-Strategy.  But neither the Trustee nor the BLI

11    opinion he relies on, cites any precedent or authority for

12    his knowledge and intent theory of imputation.

13           Why not?  Because the Trustee's theory is

14    contradicted by well established principles.  First,

15    specific jurisdiction must be based on a defendant's own

16    contacts with the forum, not on the plaintiff's, or any

17    third party's contacts with the forum.  That's the core

18    principle confirmed in the Supreme Court's 2014 decision in

19    Walden v Fiore.

20           Second, federal law and New York law both respect

21    the separate legal personalities of corporation and

22    shareholder when determining jurisdiction.  And that's what

23    Sentry and Multi-Strategy are, corporation and shareholder.

24           The upshot of those two principles is that neither

25    federal law from the Second Circuit nor New York law will

1   impute a corporation's jurisdictional contacts to a

2   shareholder except in two narrow well defined circumstances.

3           The first exception is that the corporation is an

4   alter ego or a mirror department of the shareholder.  But

5   the Trustee's claiming -- is not claiming there's any ground

6   for piercing the corporate veil between Multi-Strategy and

7   Sentry.

8           The second exception is agency.  There's a very

9   well established test for that, which the Trustee

10  acknowledges his brief at page 17.  It requires, among other

11  things, that the shareholder must have some control over the

12  corporation in its conduct of the transaction in New York.

13  But the Trustee concedes that Multi-Strategy did not have

14  control over Sentry's investments with BLMIS.

15          Instead, the Trustee alleges that quote, personnel

16  at FGG's New York headquarters maintained final control of

17  Fairfield Sentry's investments at BLMIS, end quote.  That's

18  amended complaint, paragraph 62.

19          So because the Trustee does not allege all the

20  required elements of either alter ego or agency, Sentry's

21  contacts with New York cannot be imputed to Multi-Strategy.

22          Now, nonetheless, the Trustee urges the Court to

23  follow the result in Judge Lifland's decision in Picard v

24  Bureau of Labor Insurance from 2012.  That's -- we'll call

25  that BLI for short.  And he asked on that basis to impute

Page 32

1    Sentry's New York contacts to Multi-Strategy just based on

2    insufficient elements of knowledge and intent.

3            The controlling Second Circuit and New York Court

4    of Appeals law on imputation was never briefed by either

5    party in BLI.  There were only two pages briefing on

6    specific jurisdiction by the defendant in that case.  And

7    that briefing made it appear as if the dispositive issue was

8    just a factual question on whether the defendant's funds

9    ended up in the Madoff accounts, merely as a result of

10   happenstance or coincidence, or whether the Trustee

11   adequately alleged the defendant knew and intended all along

12   that Sentry would place its money with Madoff in New York.

13           It was in that context, Your Honor, that the BLI

14   court only responding to the arguments actually made to it

15   held that personal jurisdiction would be found because the

16   defendant knew and intended that Sentry would invest its

17   money with Madoff in New York.

18           But long established controlling case law that was

19   never briefed to or addressed by BLI shows why knowledge and

20   intent are not enough.  We discuss it in our moving brief.

21           In opposition, the Trustee does not dispute that

22   Multi-Strategy identified the controlling appellate court

23   authority.  The Trustee does not dispute that imputation

24   requires alter ego or agency and the Trustee did not dispute

25   that he has not alleged facts showing either.  He does not

Page 33

1    cite any appellate case law permitting imputation based on

2    knowledge and intent alone.  Those concessions are

3    dispositive, Your Honor.

4            Because BLI assumed, without addressing, that the

5    Trustee's theory of knowledge and intent was legally

6    sufficient and because that theory is, in fact, contrary to

7    controlling legal framework, this Court respectfully repeat

8    BLI's result here.

9            Unless Your Honor has any questions, I'll move to

10   the second.  So the second argument is -- relates to

11   communications from Canada to New York.

12           The Trustee alleges that Multi-Strategy

13   representatives in Canada sent e-mails and made phone calls

14   to Fairfield Greenwich employees in New York.  The Trustee

15   does not allege that any transaction was conducted or

16   negotiated through those communications.  Without that, such

17   communications do not constitute transacting business in New

18   York under well established authority that we cited in our

19   briefs.

20           The Trustee also points to the fact that shortly

21   after Multi-Strategy first purchased shares in Sentry in

22   July 2004, Multi-Strategy representatives visited New York

23   and while here, having an introductory meeting with some

24   Fairfield Greenwich employees.  Again, there's no

25   allegations that any transaction was conducted or negotiated

1  at that meeting.  And without any transaction that one

2  meeting does not constitute purposeful availment of the

3  privilege of doing business in New York.

4         In addition to that, the Trustee's claim does not

5  arise out of or relate in any way to any of the alleged

6  telecommunications or the single meeting.

7         Third, the Trustee has an argument based on the

8  subscription fees.  The Trustee contends that Multi-

9  Strategy's subscription agreements with Sentry.  In them,

10  Multi-Strategy agreed to a choice of New York law and

11  consented to personal jurisdiction of New York courts with

12  respect to certain matters.

13         But as noted in our briefs, there's controlling

14  precedence from UK Privy Council in Migani and from this

15  Court in Fairfield I, that foreclosed that argument.

16         And then last, Your Honor, the Trustee's last

17  argument of personal jurisdiction relates to correspondent

18  bank accounts.  There's a few essential facts that are

19  needed to put that argument in context.

20         Sentry had a bank account at the Dublin, Ireland

21  branch of Citco Bank, which is a Dutch bank.  Multi-Strategy

22  had a bank account at a Montreal, Canada branch of

23  Desjardin, which is a Canadian Bank.  Like most non-U.S.

24  banks, Citco Bank and Desjardin hold and use correspondent

25  accounts at U.S. banks to facilitate U.S. dollar wire

Page 35

1    transfers.

2         The Trustee contends that Multi-Strategy

3    purposefully availed itself of the privilege of doing

4    business in New York because Sentry and Multi-Strategy were

5    customers of banks, that in turn, used correspondent

6    accounts in New York to facilitate U.S. dollar wire

7    transfers between their accounts in Ireland and Canada.

8    There is no case law support for the Trustee's assertion,

9    Your Honor.

10        The Trustee cites cases on New York bank accounts.

11   But in all of them, it's the defendant that selects, holds,

12   controls and uses the New York bank account and that's a

13   basis for finding that the defendant was transacting

14   business in New York in those cases.

15        In situations like we have here, where the

16   defendant is just a customer of a non-party foreign bank

17   that has and uses a correspondent account in New York, that

18   does not count as bank customer itself doing business in New

19   York.

20        Judge Valerie Caproni, at the district court in

21   the 2021 Berdeaux OneCoin case that we cited in our reply

22   brief surveyed the law in this area just last fall and

23   concluded that there is no authority, quote, standing for

24   the principal that a non-domiciliary individual defendant

25   may be subject to specific jurisdiction in New York under

Page 36

1    Section 302(a)(1) because the non-domiciliary moved money

2    between foreign bank accounts, that the transfer passing

3    through New York via a correspondent account, end quote.

4            I'd say, moreover, the Trustee's claims do not

5    arise out of or relate in any way to the fact that wire

6    transfers between Ireland and Canada were routed through New

7    York midway.

8            In closing, Your Honor, I note that Multi-Strategy

9    moved to dismiss the Trustee's original complaint for lack

10   of personal jurisdiction on the same grounds in January of

11   this year, 2022.  The Trustee responded to Multi-Strategy's

12   original complaint by filing the amended complaint in

13   February.  But the amended pleading doesn't cure any of the

14   jurisdictional facts that we showed in January.

15           So I would submit, respectfully, Your Honor, that

16   the Court should dismiss for lack of personal jurisdiction

17   without leave to amend.

18           If Your Honor has questions, I'd be happy --

19           THE COURT:  No.

20           MR. FOURMAUX:  -- to address them, otherwise, I

21   would ask that I be permitted some time in rebuttal after

22   the Trustee's counsel speaks.

23           THE COURT:  Very good.

24           MR. FOURMAUX:  Thank you.

25           THE COURT:  Mr. Feil, before you begin, I have one

Page 37

1    question for you.  The -- Kingate is mentioned and I'm --

2    since I'm new to this case, what happened with Kingate?

3              MR. FEIL:  I'm sorry, Kingate is mentioned in what

4    capacity, Your Honor?

5              THE COURT:  Well, you had it in some of the things

6    -- maybe it wasn't -- maybe it's in the other case, not this

7    one.  Maybe it's in the other case.

8              MR. FEIL:  I think it's in the other case, Your

9    Honor.

10             THE COURT:  Okay.  Very good, we'll talk about it

11   then.  Thank you.

12             MR. FEIL:  Okay.  I will be responding to Mr.

13   Lack's arguments concerning Section 546(e) and the

14   plausibility of the Trustee's transfer claim.  And then my

15   colleague, Mr. Friedman will address why this Court has

16   jurisdiction over the defendant.

17             Your Honor, I'd like to begin by discussing the

18   defendant's right to assert the Section 546(e) defense in

19   this action to recover a subsequent transfer and how prior

20   decisions of the district court and the Bankruptcy Court in

21   this liquidation made clear that the Trustee is not required

22   to allege that the subsequent transferees had actual

23   knowledge.  Well, Your Honor has already ruled that the

24   Trustee has sufficiently pled that the initial transferee

25   has actual knowledge.

1          Defendant is effectively arguing that it has an

2    independent right to assert the 546(e) defense, even whereas

3    here, the initial transferee is barred from asserting the

4    defense.  That is wrong.

5          Defendant has a right to raise an indirect defense

6    to avoidance by stepping into the shoes of the initial

7    transferee and asserting the defenses available to the

8    initial transferee.  That right, however, extends only so

9    far as the initial transferee could itself raise the defense

10   here.

11         Where the initial transferee is itself barred from

12   raising 546(e) as a defense, then too -- so too as the

13   subsequent transferee by stepping into its shoes.  Thus Your

14   Honor's finding that the Trustee has pled Sentry's actual

15   knowledge forecloses the application of 546(e) at the

16   pleading stage in this action.

17         And there's no reason to consider whether the

18   defendant has actual knowledge for purposes of 546(e) to

19   decide the motion.  This is evident from the consolidated

20   decisions of the district court in this liquidation.

21         Your Honor, the defendant talked about the Cohmad

22   decision and I'd like to just discuss that a little bit.  In

23   April 2013, the district court issued that decision

24   explaining how Section 546(e) should be applied as to the

25   Trustee's claims against initials and subsequent

1    transferees.

2            The decision followed a bottom line order from the

3    district court which Multi-Strategy has block quoted in its

4    reply.  It argues that the bottom line order requires the

5    Trustee to plead subsequent transferee's actual knowledge in

6    this 550 recovery action, despite the avoidability of the

7    initial transfers.

8            I'd like to walk the Court through the Cohmad

9    decision in the bottom line order and certain related case

10   law to show that there's only one part of the Cohmad

11   decision where the district court addresses how and when a

12   subsequent transferee's actual knowledge is relevant.  And

13   to show how the defendant is misinterpreting that part of

14   the decision.

15           Both the decision and the bottom line order

16   establishes a subsequent transferees' actual knowledge is

17   only relevant when the initial transferee is innocent, and

18   can itself assert a 546(e) defense to avoidability.

19           Before we examine the bottom line order, I'd like

20   to turn the Court's attention to the part of the Cohmad

21   decision where the district court specifically addresses the

22   subsequent transferee's limited right to assert the defense.

23   And that's on page 7, Your Honor, of that opinion.

24           The district court addresses the question before

25   Your Honor, a subsequent transferee's right to raise the

Page 40

1    546(e) defense in the context of a 550 recovery action.

2    That section of the decision begins by noting that to

3    recover from a subsequent transferee, the Trustee must first

4    show that the initial transfers, in our case, the transfers

5    from BLMIS to Sentry are avoidable.

6             The district court then explained that a

7    subsequent transferee has a right to raise the initial

8    transferee's defenses to avoidance, explaining and I quote

9    from that page 7, even if the initial or immediate

10   transferee fails to raise a Section 546(e) defense against

11   the Trustee's avoidance of certain transfers, either because

12   the Trustee did not bring an adversary proceeding against

13   that transferee or because the transferee settled with the

14   Trustee or simply because the transferee failed to raise the

15   defense, the subsequent transferee is nonetheless entitled

16   to raise a Section 546(e) defense against recovery of those

17   funds.

18             In support, the district court cites to and quotes

19   from the bankruptcy court's decision in In Re Fabrikanc.

20   And that establishes that a Trustee need not obtain a fully

21   litigated avoidance order against an initial transferee

22   before bringing a recovery action, but the defendant

23   subsequent transferees can raise that in that recovery

24   action and can defend it on the basis that the initial

25   transfers were not fraudulent.

1           In other words, in a recovery action against the

2     subsequent transferee, the defendant may challenge the

3     avoidance of the initial transfer by asserting the initial

4     transferee's defenses to avoidance.  But then the district

5     court announces that there's one caveat to this rule.  And

6     it is this one caveat that demonstrates that part 2 of the

7     district court's bottom line order does not require the

8     Trustee to allege a subsequent transferee's actual

9     knowledge, where the initial transferee itself has actual

10    knowledge.

11          Quoting now from page 7 of the district court's

12    Cohmad decision, the district court said, there's one caveat

13    to this rule, to the extent an innocent customer transferred

14    funds to a subsequent transferee who had actual knowledge of

15    Madoff's securities fraud, that subsequent transferee cannot

16    prevail on a motion to dismiss on the basis of Section

17    546(e) safe harbor.

18          The one caveat applies where an innocent customer

19    transferred funds to a subsequent transferee who had actual

20    knowledge.  In other words, the one caveat applies only

21    where an innocent, initial transferee, one without actual

22    knowledge, could have asserted a successful 546(e) defense

23    to avoidance.  That's the only scenario where the Trustee

24    must plead the subsequent transferee's actual knowledge,

25    where there is an innocent initial transferee.

1          Thus it's clear that the caveat does not require

2     the Trustee to independently plead the actual knowledge of

3     the subsequent transferee where the initial transferee could

4     itself not assert a valid 546(e) defense.

5          Returning now to the bottom line holding, which

6     appears on page 1 of the district court's decision.  Part

7     one of Cohmad as Mr. Lack explained, stands for the

8     proposition that 546(e) will not bar avoidance where the

9     initial transferee has actual knowledge.

10         Part 2 of Cohmad reflects the one caveat that we

11    just discussed and that's clear because it applies only

12    where there is an innocent initial transferee, one with

13    actual knowledge -- without actual -- one without actual

14    knowledge, I'm sorry, Your Honor.  And 546(e) otherwise

15    applies to bar avoidance of the initial transfer.

16         Part 2 begins quote, where the Trustee has sought

17    to recover transfers to a subsequent transferee, the

18    avoidance of which would otherwise be barred by Section

19    546(e) as to the initial transferee.

20         That makes clear that part 2 only applies where

21    the initial transferee has a valid 546(e) defense to

22    avoidance.  And we can stop there, because that isn't the

23    case here, where avoidance of the initial transfer is not

24    barred by 546(e) at the pleading stage, as a result of Your

25    Honor's finding that the Trustee has adequately pled

1    Sentry's actual knowledge.

2          If the defendant's theory were correct, and the

3    Trustee is required to plead the actual knowledge of both

4    the initial and subsequent transferees, then there would be

5    no need for the district court's one caveat.  Instead, one

6    caveat makes clear that the only situation where a Trustee

7    must plead the subsequent transferee's actual knowledge is

8    when there's an innocent initial transferee.

9          Part two, the one caveat is intended to prevent a

10   subsequent transferee with actual knowledge from being able

11   to step into the shoes of an innocent initial transferee and

12   assert the initial transferee's 546(e) defense.

13          And, Your Honor, this interpretation is confirmed

14   by later decisions from the district court and the

15   bankruptcy court applying Cohmad.

16          Turning first to the district court's consolidated

17   decision regarding the Trustee's right to bring a 550

18   recovery action without first obtaining an order of

19   avoidance.  That decision is reported at 501 B.R. 26 and

20   cited on page 36 of the Trustee's opposition brief.

21          Multi-Strategy is bound by that decision as it was

22   among the parties who withdrew the reference on that issue.

23   The district court issued the decision several months after

24   its Cohmad decision and held, the Trustee did not have to

25   obtain a fully litigated final judgment of avoidance against

1    the relevant initial transferee as a precondition to

2    bringing the recovery action against the subsequent

3    transferee.

4         But and I quote from that decision at 501 B.R. 29,

5    Section 550(a) requires that the Trustee show that the

6    initial transferee he seeks to recover is avoidable in each

7    recovery action.  And the subsequent transferee in

8    possession of that transfer may raise any defense to

9    avoidance available to the initial transferee, as well as

10   any defenses to recovery it may have.

11        The district court set out a few general

12   principles guiding its decision and these two quotes that

13   I'm about to read appear at the bottom of 29 and the top of

14   30 in that decision.

15        First, the transfer that the Trustee must prove is

16   avoidable is the initial transfer of property by the debtor,

17   not any subsequent transfers of that property to the

18   defendants from whom the Trustee seeks to recover here.

19        Second, and relatedly, it is well established the

20   concepts of avoidance and recovery are separate and

21   distinct.  As set forth in the Bankruptcy Code, each type of

22   action is subject to different defenses, including separate

23   statutes of limitations.

24        Applying those principles, Your Honor, to the

25   question of whether a subsequent transferee may raise the

Page 45

1    initial transferee statute of limitations' defense that this

2    court held, a subsequent transferee from whom the Trustee

3    seeks to recover, may assert any defense to avoidance

4    available to the initial transferee unless collateral

5    estoppel or res judicata applies.  That's at page 35 of that

6    decision.

7            And a little bit further down on 35 and 36, the

8    district court made clear that the subsequent transferee

9    could raise that defense, but only to the extent that the

10   initial transferee could itself raise the defense.

11           In other words, the subsequent transferee can step

12   into the initial transferee's shoes to challenge avoidance,

13   but it does so only to the extent that the initial

14   transferee could itself raise the defense.  To hold

15   otherwise, the district court instructed, would quote,

16   conflate the separate concepts of avoidance and recovery.

17   Thus, when the initial transferee's barred from asserting

18   the Section 546(e) defense to avoidance, so too is the

19   subsequent transferee stepping into its shoes.

20           Now, the Bankruptcy Court applied this Cohmad

21   decision in a situation that's analogous to the case before

22   you today and that was in Picard v BNP, 549 B.R. 167.  And

23   there, the Bankruptcy Court held, quote, by its terms, the

24   safe harbor is a defense to avoidance of the initial

25   transfer.

1        And citing to page 7 of the Cohmad decision where

2     the district court discussed how to apply this defense in a

3     recovery action against the subsequent, the BNP court said a

4     subsequent transferee is protected indirectly, to the extent

5     that the initial transfer is not avoidable because of the

6     safe harbor.

7        The Bankruptcy Court continued, the Trustee does

8     not, however, avoid the subsequent transfer.  He recovers

9     the value of the avoided initial transfer from the

10    subsequent transferee under 11 U.S.C. Section 550(a) and the

11    safe harbor does not refer to recovery claims under Section

12    550.

13       Now, Multi-Strategy argues in its reply that the

14    BNP decision doesn't apply or is inconsistent with the

15    district court's Cohmad decision.  Specifically they argue

16    that the Bankruptcy Court focused on a strawman argument by

17    not considering quote, whether a subsequent transferee's

18    invocation of Section 546(e) is barred by the initial

19    transferee's actual knowledge.  That's at page 5 of their

20    reply.

21       But that's simply wrong.  In BNP the subsequent

22    transferee defendants made the same argument the defendant

23    does here.  And Your Honor can see that by looking at the

24    reply brief in that action, which is available on the

25    Court's docket at 12 -- Adversary Proceeding No. 12-01576

1    and it's ECF No. 116 and the quotes that I'm about to read

2    appear on pages 9 and 10.

3              There, the defendant argued, quote, the trustee

4    can escape application of the Section 546(e) to his recovery

5    claims here only by sufficiently pleading that both the

6    initial and -- and the initial transferees and the BNP

7    defendant who is the subsequent transferee there had actual

8    knowledge of the Madoff fraud.

9              THE COURT:  Mr. Feil just froze.

10             MR. FEIL:  I'm sorry, can you see me?

11             THE COURT:  Did everybody else freeze or is it

12   just Mr. Feil?

13             MR. FEIL:  I --

14             THE COURT:  Mr. Cremona?

15             MR. CREMONA:  Seems fine to me, Your Honor.

16             MR. FEIL:  I can hear you, Your Honor.

17             THE COURT:  Are you frozen.

18             MR. CREMONA:  I am not.

19             THE COURT:  Yes.

20             MR. FEIL:  Can you not hear any of us?  Your

21   Honor, I can hear you.

22             THE COURT:  Why -- Mr. Fourmaux, you're not

23   frozen, are you?

24             MR. FEIL:  Your Honor, are you able to hear me?

25             THE COURT:  Are you frozen?  I'm frozen.

1          MR. FEIL:  I can, I can hear you, Your Honor.

2          THE COURT:  I'm the one.  I'm the one that froze.

3          MR. FEIL:  Okay.  Are you able to hear me now?

4          THE COURT:  I am.

5          MR. FEIL:  Okay.

6          THE COURT:  You were at Docket No. on our -- you

7     were talking about Docket No.

8          MR. FEIL:  Yes, that's right.

9          THE COURT:  And that was when you froze.

10         MR. FEIL:  Okay.  I'll pick up there, Your Honor.

11         THE COURT:  Okay.  Thank you.

12         MR. FEIL:  You're welcome, thank you.

13         So what I was mentioning was the reply brief, the

14    defendant's reply brief in the BNP action.  I'm about to

15    read two quotes from that, that demonstrate that they made

16    the same argument that the defendant here is making now.

17    And their reply brief is available on the docket for

18    Adversary Proceeding No. 12-01576, and that's at ECF No. 116

19    and it's two quotes that appear on pages 9 and 10.

20         And they say that the trustee can escape the

21    application of Section 546(e) to his recovery claims here

22    only by sufficiently pleading both that the initial

23    transferees and the BNPP defendant who is the subsequent

24    transferee there, had actual knowledge of the Madoff fraud.

25         That's precisely what they're arguing here, Your

1    Honor, is that even though we've alleged that the actual

2    knowledge of the initial transferee, we also have to allege

3    the actual knowledge of the subsequent transferee and it

4    continued in the BNP brief to say, Section 546(e) is

5    intended to provide an objective safe harbor to the entire

6    chain of securities customers.  And that's exactly what Mr.

7    Lack just argued.

8              Those are the same arguments that they made in

9    their brief as well.  Even where this Court has determined

10   that the Trustee would have to allege the subsequent

11   transferee's actual knowledge, even where this Court has

12   determined that the initial transferee has already been

13   alleged to have actual knowledge.

14             In other words, Your Honor, like the defendant in

15   BNP, Multi-Strategy is arguing the Trustee must sufficiently

16   plead both of their actual knowledge.

17             Near the end of the Cohmad decision there's a

18   section where Judge -- the district court considers a

19   hypothetically whether a securities agreement between an

20   initial and subsequent transferee could satisfy the

21   securities contract element of 546(e).

22             The defendant suggests that this hypothetical

23   gives it an independent right to assert 546(e) in this

24   recovery action.  But that's not what Cohmad held.  As

25   previously discussed, Cohmad sets forth a single situation

Page 50

1    where the subsequent transferee's actual knowledge is

2    relevant and that's where the initial transferee does not

3    have actual knowledge.

4           This was an issue at the time, the question of

5    whether another agreement could satisfy the securities

6    contract element because the district court's holdings in

7    In Katz and Gripe were on appeal before the Second Circuit.

8           And the Second Circuit has not yet issued its

9    decision in Ida Fishman confirming that the BLMIS account

10   opening agreement satisfied the securities contract element.

11          A group of financial institution defendants there

12   argued that even if Madoff's account documents were not

13   securities contracts, various other types of contracts could

14   satisfy that element of 546(e).

15          The district court's hypothetical was addressing

16   this argument, and while it agreed to other -- that other

17   contracts could satisfy that element, it did not suggest in

18   its hypothetical that the existence of such a contract would

19   shift the actual knowledge analysis to the subsequent

20   transferee.

21          To the contrary, Your Honor, that decision

22   reiterated that the focus of 546(e) remained on the

23   avoidance of the initial transfer from the debtor to the

24   initial transferee.  And in BNP, the bankruptcy court did

25   not even feel the need to address this hypothetical, even

1    though the subsequent transferee defendants there argued

2    again Section 546(e) is intended to provide an objective

3    safe harbor to the entire chain of securities customers.

4    The bankruptcy court's decision in BNP is law of the case

5    and it is binding on Multi-Strategy.

6           Accepting defendant's position, Your Honor, would

7    conflate the Code separation between avoidance and recovery.

8    Accepting Multi-Strategy's position would mean that the safe

9    harbor would apply even where the initial transferee knew

10   there were no securities transactions in need need of

11   protection.  It would also result in a situation where the

12   avoidability of the initial transfer turned on what the

13   initial transferee subsequently did with the transfer after

14   receiving it.

15          Take for example a situation where a Trustee

16   prevails in an avoidance action against the initial

17   transferee who had actual knowledge.  Having obtained that

18   avoidance judgment, the Trustee then seeks to recover

19   portions of the initial transfer from two different

20   subsequent transferees, one with actual knowledge and one

21   without.

22          Can the transferee without actual knowledge argue

23   that the avoidance was wrongly decided?  And if so, could

24   the Trustee still recover from the other subsequent

25   transferee who had actual knowledge, even though the

Page 52

1    transfer is now not avoidable?  That doesn't make sense,

2    Your Honor.  You can't have the same transfer avoidable in

3    one action and not avoidable in another.  As the district

4    court held in 550 -- in its 550 decision, this would

5    conflate the separate concepts of avoidance and recovery.

6         And just one last note about the defendant's

7    contention that Your Honor's holding in Fairfield Investment

8    Fund shows that you can apply 546(e) to a subsequent

9    transferee, even where the initial has actual knowledge.

10         That wouldn't explain why Your Honor dismissed the

11    two year claims against Ms. Piedrahita.  And there are two

12    other reasons why the Court would have considered Ms.

13    Piedrahita's actual knowledge and that's because as an agent

14    of Fairfield, her actual knowledge would be imputable to the

15    initial transferee.

16         And then second, when the Court decided that case,

17    the Citibank -- the Second Circuit has not issued its

18    decision in Citibank yet.  Thus, the Trustee was required to

19    plead the subsequent transferee's lack of good faith which

20    required a showing of willful blindness or actual knowledge.

21         Just one last note on 546(e) and then I'll move on

22    to customer property.  And that's that the defendant says

23    that we conceded that their transfer was in connection with

24    -- well, the initial transfer from BLMIS to Sentry was in

25    connection with an agreement between them.  As I just

Page 53

1    explained, I don't think that that's relevant, but we did

2    not concede that point and we specifically refuted it at

3    footnote 14 on page 36 of our brief.

4          So with that, I'll move -- unless Your Honor has

5    any questions about 546(e), I'll move on to the customer

6    property issue.

7          THE COURT:  No, I don't believe so.  I think

8    you've explained 546(e) very clearly.

9          MR. FEIL:  Thank you.

10          So I'd like to begin by just explaining why the

11    Trustee satisfied its pleading burden under Rule 8 with

12    respect to the subsequent transfer claim and then I'll

13    address the defendant's arguments briefly.

14          First, Sentry -- the alleged -- the Trustee

15    alleges the following.  First, Sentry sent substantially all

16    of its assets to BLMIS to be custodied and invested.

17          Second, Multi-Strategy delivered funds to Sentry

18    for the purpose of having them custodied and invested with

19    BLMIS.

20          Third, in February of 2005, Multi-Strategy got so

21    scared about Madoff and the potential Ponzi scheme, that it

22    redeemed all of its Madoff investments, including those made

23    through Sentry.

24          Fourth, Sentry responded to the defendant's

25    redemption request by transferring $25,763,374 to

defendant's designated New York bank account on March 15th, 2005.

Fifth, when Madoff's fraud was revealed publicly defendant expressed satisfaction and good fortune that it had obtained this transfer while it could before Madoff's Ponzi scheme collapsed.

This record satisfies the Trustee's pleading burden under Rule 8(a) because it gives the defendant notice of the claims against it and plausibly alleges that the defendant received a subsequent transfer that contained stolen customer property.

Defendant advances two arguments as to why the Trustee has fallen short here, and before I address the substance of their arguments, it's worth noting that the overwhelming weight of authority favors allowing the Trustee to proceed to discovery on this point.

The case law establishes that there's an equitable element to tracing, and that the Court should look to all of the circumstances surrounding the transfers, including the purposes of the transfers and the parties' intent.

Despite dedicating a third of both of their briefs to this argument, the defendant identifies only two cases that even dismissed claims at the pleading stage, both of which allowed the plaintiff to replead.

So then I'll move on to their arguments. The

1    first argument that Mr. Lack discussed today was that the

2    Trustee has not linked the subsequent transfer to any

3    specific initial transfers.  And this argument relies almost

4    entirely on the Picard v Shapiro.  But that case is easily

5    distinguishable from the incident case.

6            The Court there found that the complaint lacked

7    the vital statistics necessary to support the subsequent

8    transfer claim, because it alleged the subsequent transfers

9    upon information and belief and without any detail.

10           Because the complaint lacked these vital

11   statistics, the Court found, and I quote, this is on page

12   119, 542 B.R. at 119, because the complaint lacked these

13   vital statistics, the Court found he did not plausibly imply

14   that the initial transferees even made subsequent transfers

15   to the subsequent transferees.

16           As discussed here, the vital statistics are set

17   forth in the amended complaint.  Moreover, defendant has

18   stipulated to the fact that it received the subsequent

19   transfer from Sentry.  It has also submitted documents with

20   its motion evidencing that it received the subsequent

21   transfer from Sentry.

22           Thus, there's no question that Sentry made the

23   subsequent transfer to Multi-Strategy.  And the bankruptcy

24   court's statement in the complaint in Shapiro did not tie

25   any initial transfer to a subsequent transfer or subsequent

Page 56

1    transferee, was made in the context of allegations lacking

2    these basic vital statistics, and it should not require such

3    linkage here.

4            That's especially true where the Trustee plausibly

5    alleges that pursuant to Sentry's own governing documents,

6    BLMIS was the custodian of substantially all of Sentry's

7    assets.

8            At a loss for supporting authority, Your Honor,

9    defendant cites in its reply to cases that denied motions to

10   dismiss, nevertheless claiming that they support dismissal

11   here.  And I'll just talk about one briefly and that Judge's

12   Lifland's decision in Cohmad, the original decision which is

13   454 B.R. 317.  The relevant portion is at page 340 and

14   there, Judge Lifland set forth the same Rule 8(a) notice

15   pleading that the Trustee asserts here.

16           Quote, set forth the necessary vital statistics

17   the who, when, and how much of the purported transfers.  And

18   Judge Lifland set the baseline for pleading a subsequent

19   transfer, as quote, at the very least, the Trustee must

20   plead a statement of facts that adequately appraises the

21   subsequent transferees of the transfers he seeks to recover.

22           And although Judge Lifland discussed connections

23   between the initial and subsequent transfers there, he

24   concluded, quote, if the information contained in the

25   complaint and the exhibits attached thereto provide more

Page 57

1    than enough detail to provide the defendants with notice of

2    when and what amount, with what frequency and from whom they

3    received subsequent transfers, as well as why.  And again,

4    here, as I mentioned, there's no doubt that the amended

5    complaint alleges all those same things.

6         Defendant next argues that the Trustee -- the

7    Trustee's allegations in this and other actions render it

8    impossible that the Trustee -- that the subsequent transfer

9    received from Sentry contained any stolen customer property.

10        To support this theory, the defendant adopts an

11   allegation made by the Fairfield liquidators, that says,

12   from time to time to make redemption payments, Sentry made

13   withdrawals from Sentry's BLMIS accounts or utilized

14   subscription monies of other investors on hand that were

15   directed from investment in BLMIS.

16        In other words, defendant is suggesting that the

17   subsequent transfer it received could not have contained any

18   stolen customer property but was instead, comprised solely

19   of funds from Sentry's other investors directed from

20   investment with BLMIS.

21        It's essentially asking this Court to discredit

22   the Trustee's well pled allegation that Sentry's governing

23   documents provided that it sent substantially all of its

24   assets to BLMIS, based on this allegation of the Fairfield

25   liquidators.

Page 58

1            Defendant's argument fails at the pleading stage

2     for four reasons.  First, even if the liquidator's

3     allegation is true, it doesn't establish how Sentry

4     accomplished this.  Was it from a commingled account, were

5     certain redemptions paid entirely from one source or

6     another, or were they all paid from a combination of funds?

7            This all underscores that the key category of data

8     is missing from the analysis, and that's the dates and

9     amounts of influence of funds to Sentry and what Sentry did

10    with those funds.

11           Without that part of the picture, it's impossible

12    to accurately assess to what extent each subsequent transfer

13    contained customer property.  And in this situation, the

14    case law is clear, that the Trustee is not required to trace

15    customer property at the pleading stage or even at summary

16    judgment.

17           This is why the defendant is unable to point the

18    Court to a single case, dismissing subsequent transfer

19    claims at the pleading stage under a similar theory.

20    Defendant nevertheless is asking this Court to reach a

21    finding of fact at the pleading stage that the transfer it

22    received contained no stolen customer property.

23           It does not disclose what tracing methodology it

24    purports to use to reach this conclusion.  In its reply,

25    defendant asserts that no tracing is required, only simple

1    arithmetic.  But defendant's simple arithmetic appears to be

2    premised on a first in first out tracing methodology, which

3    again is not appropriate at the pleading stage.  This is a

4    question for this Court to decide upon a full record,

5    including fact and expert discovery.

6            Second, the liquidator's allegation suggests that

7    Sentry treated redemption and subscription funds as fungible

8    and commingled those funds.  But this type of commingling

9    does not defeat the Trustee's ability to trace customer

10   property, nor does it require the Trustee to do so at the

11   pleading stage.

12           Third, defendant's argument is premised entirely

13   on the assumption that the Trustee's subsequent transfer

14   exhibits can be read to establish that every subsequent

15   transfer was comprised solely of stolen BLMIS customer

16   property.  But those exhibits do not establish that fact.

17           At the pleading stage, the Trustee is not required

18   to plead, much less establish than an alleged subsequent

19   transfer is comprised solely of customer property.  As Judge

20   Lifland explained in Charles Ellerin Trust, even at summary

21   judgment, it's not necessary for the Trustee to specify what

22   portion of the subsequent transfer was derived from BLMIS.

23           Because the Trustee's transfer exhibits do not

24   establish that each transfer was comprised solely of BLMIS

25   customer property, defendant's arithmetic tracing method

Page 60

1    breaks down and there's nothing to support their contention

2    that Sentry had exhausted the customer property on hand.

3    And defendant makes no attempt in its reply brief to address

4    this fatal flaw in its argument.

5             Moreover, for this Court to discredit defendant's

6    or credit defendant's argument and find that at the pleading

7    stage that the Trustee's transfer exhibits establish that

8    each transfer was comprised entirely of stolen customer

9    property it would have implications for other defendants,

10   who are also claiming that the transfers they received

11   contained no customer property.

12            Your Honor may have noticed from the motions that

13   have been coming in, that this is a theme.  Every party is

14   arguing that somebody else got the customer property, which

15   just underscores why this issue is not appropriate on a

16   motion to dismiss.

17            Which brings me to the fourth reason.  It's simply

18   premature to make these determinations at the pleading

19   stage.  Courts in this district and even in this liquidation

20   have denied summary judgment where even a small or

21   undetermined portion of customer property was conceivably

22   traceable to the debtor.

23            The decision -- the bankruptcy court's decision in

24   In Re Dreier is instructive and there, the bankruptcy court

25   allowed the Trustee to proceed to trial where at most, 3 and

Page 61

1  a half percent of the transfers at issue could be traced to

2  the debtor's Ponzi scheme.

3          And I'll just quote really quickly from that case

4  on page 15, it's 2014 Westlaw 47774 at 15.  The subsequent

5  transferees argue that the Trustee failed to show that the

6  funds actually paid them any fees.  However, it's reasonable

7  to assume that the funds satisfied their obligation to pay

8  fees under the solo note investments.  And the Trustee is

9  not required to perform dollar-for-dollar tracing at the

10  summary judgment stage.

11          Finally, the manager's speculation that tracing is

12  not likely to reveal a subsequent transfer of stolen note

13  proceeds hardly justifies granting the cross motion for

14  summary judgment.

15          Similarly here, Your Honor, it's reasonable to

16  assume that Sentry satisfied its obligations under its own

17  private placement memoranda to custody substantially all of

18  its assets with BLMIS especially at the pleading stage.

19          Moreover, like the defendant in Charles Ellerin

20  Trust, defendant here quote, mistakenly argues that the

21  trustee must include evidence proving that the only funding

22  source for the initial transferee was from a Madoff account.

23          One note on the defendant's argument about the

24  Trustee having access to documents, as an initial matter,

25  the Trustee does not have a complete set of Fairfield's

Page 62

1   books and records.  In fact, some of the documents defendant

2   submitted with its own motion were new to us.

3           Moreover, nothing using Rule 8(a) suggests that a

4   plaintiff should be required to offer proof at the pleading

5   stage if it has access to documents.  To the contrary, the

6   cases on this issue do not demand that level of proof even

7   following discovery.

8           And I'll rest with that unless Your Honor has any

9   questions.

10          THE COURT:  I don't.  I'll have questions for Mr.

11  Lack about it, but not you.

12          MR. FEIL:  Okay.  I'll turn it over to my

13  colleague, Mr. Friedman then to address personal

14  jurisdiction.

15          THE COURT:  Thank you.  Mr. Friedman.

16          MR. FRIEDMAN:  Good morning, Your Honor.  My name

17  is Matthew Friedman and I'm an associate at Baker Hostetler.

18  On behalf of the Trustee I'd like to briefly respond to

19  Multi-Strategy Funds and Mr. Fourmaux's arguments on

20  personal jurisdiction.

21          Your Honor, Multi-Strategy Fund has argued that

22  each contact on its own is not enough for purposeful

23  availment.  But within this liquidation, the Court in Picard

24  Bureau of Labor Insurance or BLI, found that several

25  contacts also present here, together establish purposeful

Page 63

1    availment on the basis of an intention to invest with BLMIS

2    and U.S. listed securities.

3              Judge Lifland's decision in BLI is good law and by

4    itself, establishes personal jurisdiction in this case.

5    That said here, they're even stronger and additional

6    contacts than there were in BLI in the totality of the

7    circumstances.

8              Multi-Strategy Fund first subscribed in BLMIS

9    feeder funds in 1999, but for expanding their BLMIS

10   investment with a Sentry subscription in late June 2004.

11   Fairfield Greenwich Group or FGG who operated and controlled

12   Sentry labeled Multi-Strategy Fund a Madoff addict who

13   needed a fix.

14             And like in BLI, the contacts here underscore

15   Multi-Strategy Fund's intention to invest even more with

16   BLMIS.  A couple of weeks after that first subscription

17   Mario Therrien, the president of Multi-Strategy Fund came to

18   New York in mid-July to meet with FGG regarding Multi-

19   Strategy Fund's Sentry investment.  This is a key contact.

20             Multi-Strategy Fund is coming into the

21   jurisdiction to learn more about their Sentry investment.

22   In Walden as you heard Mr. Fourmaux today it's one of Multi-

23   Strategy Fund's main cases, that decision says that physical

24   presence isn't a prerequisite to jurisdiction, but it's

25   certainly a relevant contact.

1          That meeting also preceded Multi-Strategy Fund's

2      second subscription and their redemption and receipt of the

3      stolen customer property that the Trustee seeks to recover

4      in this action.

5          Following the July 2004 meeting, Multi-Strategy

6      Fund sent numerous e-mails to FGG that underscored their

7      emphasis on the amount.  They asked for info that you've got

8      on Madoff, they asked how Madoff made money, and they asked

9      when Madoff was invested in a given month.

10          For his part, Mr. Therrien sent at least seven

11      inquiries regarding additional Sentry capacity and that led

12      to a second subscription ultimately in January 2005.

13          I want to briefly touch on the two subscription

14      agreements that you can see attached to Mr. Therrien's

15      declaration at Exhibits A and B.  They're significant for

16      several reasons.

17          First, they both contain New York jurisdiction,

18      forum selection and choice of law provisions.  Second, by

19      executing the subscription agreements, Multi-Strategy Fund

20      agreed to deliver subscription money to an HSBC account in

21      New York and they did so.

22          But third, and most importantly, Multi-Strategy

23      Fund attached a one page document on Multi-Strategy Fund

24      letterhead that designated a Bank of New York account in New

25      York.  You can see this one page document at page 13 of both

Page 65

1    Exhibits A and B to Mr. Therrien's declaration.

2         That Bank of New York account was used first for

3    sending subscription money to Sentry, but on top of that,

4    Multi-Strategy Fund directed FGG to use that Bank of New

5    York account for any Sentry redemption.

6         They also directed FGG to do that in their

7    redemption request, as you can see at Exhibit C to Mr.

8    Therrien's declaration and page 6 is that same one page

9    document.  Ultimately, Multi-Strategy Fund used that Bank of

10   New York account for every Sentry transaction they engaged

11   in.

12        Keeping up the theme of the focus on Madoff, when

13   Multi-Strategy Fund redeemed in February 2005 it was because

14   as my colleague Mr. Feil has accounted, Mr. Therrien was,

15   quote, so scared of Madoff and the potential Ponzi scheme.

16        Now, when Mr. Therrien informed FTG that Multi-

17   Strategy Fund was redeeming from Sentry, he and the FGG

18   partner he spoke to, discussed the rumors about Madoff.

19   Your Honor, these contacts belie Multi-Strategy Fund's

20   argument that the Trustee is depending on imputing contacts

21   from Sentry, BLMIS or a bank.  The Trustee has not alleged

22   or argued for alter ego or imputation from those entities.

23        As the Supreme Court said in Walden a defendant's

24   contacts with the forum state may be intertwined with those

25   transactions or interactions with the plaintiff or other

Page 66

1    parties.  All the contacts alleged in the amended complaint

2    are Multi-Strategy Fund's contacts, even if they're

3    intertwined with Sentry or BLMIS or a New York bank.

4              As in BLI, Multi-Strategy Fund invested in Sentry

5    with a specific purpose of having fund investments with

6    BLMIS in New York and in U.S. listed investments.

7              Multi-Strategy Fund was another Madoff addict that

8    subscribed to the additional access to Madoff.  They asked

9    questions about Madoff and they redeemed because they were

10   so scared of Madoff and the potential Ponzi scheme.  They

11   visited New York and used New York bank accounts to

12   subscribe and redeem.

13             Speaking of the New York bank accounts, I want to

14   respond to two new cases that Multi-Strategy Fund cites in

15   its reply, an argument that they make about correspondent

16   bank accounts.

17             Multi-Strategy Funds says they're not a bank and

18   the HSBC and Bank of New York accounts are not their

19   accounts.  So in their view, the uses of these accounts

20   don't matter.  But they're wrong.

21             Licci, Al Rushaid and other cases that analyze the

22   correspondent bank account issue don't focus on whether the

23   defendant is a bank, and they don't focus on who the account

24   belongs to.  Rather, the key is whether the use of the

25   account was purposeful and volitional rather than passive.

Page 67

1              One of the new cases that Multi-Strategy Fund

2       cites in its reply brief, Universal Trading v Tymoshenko

3       confirms that the purposeful aspect is key.  In that case,

4       the Court dismissed because the only relevant contact was

5       use of a New York bank account, but there were no

6       allegations that the use was purposeful.

7              Here, Multi-Strategy Fund directed FGG to deliver

8       redemption payments to the bank of New York account in New

9       York.  This is purposeful and volitional.  To the extent

10      Multi-Strategy Fund claims that its identity as a non-bank

11      and its use of a third party bank account is dispositive,

12      we've cited several cases finding personal jurisdiction over

13      non-bank defendants that used third party bank accounts for

14      relevant transactions in New York.

15             For example, in SO Exploration versus Nigerian

16      National Petroleum, the non-bank defendant argued that it

17      didn't own the U.S. accounts that were used for the relevant

18      transactions.  But the Court did not find that argument

19      persuasive, writing and I quote, the point is not whether

20      the defendant owns the account, it is that they made

21      purposeful use of them for reasons related to the underlying

22      dispute.  That's 397 F. Supp. 3rd 323 at 346.  That standard

23      is met here.

24             The correspondent bank account allegations are

25      just one of the places where Multi-Strategy Fund says, this

Page 68

1    one contact alone isn't enough to constitute purposeful

2    availment.  But that's not the test and that's not our

3    argument.

4            The defendant in BLI also argued that isolated

5    bank account uses standing alone were insufficient to

6    establish personal jurisdiction.  But Judge Lifland rejected

7    that argument, because personal jurisdiction there was not

8    rooted in the mere existence or maintenance of those

9    accounts.  The contacts here support finding personal

10   jurisdiction.

11           The Berdeaux v OneCoin case, which is also cited

12   in Multi-Strategy Fund's reply for the first time and I

13   believe Mr. Fourmaux quoted it today, that also confirms

14   that the test is the totality of the circumstances.  That

15   quote that Mr. Fourmaux read and that they block quote in

16   their reply, that part's dicta, because the Court had

17   already held by that part of the decision that the totality

18   of the circumstances fell short of purposeful availment.

19           That holding makes sense because in that case,

20   there were far weaker contacts and distinguishable facts.

21   The only relevant contacts for the individual defendant in

22   that case were that the defendant was a New York admitted

23   lawyer, he was convicted of a crime in New York, and he

24   merely knew of a single wire transfer through a New York

25   bank account.

Page 69

1          In Berdeaux, Judge Caproni wrote that there cannot

2     be a purposeful use of a bank account unless the defendant,

3     quote, played a role in routing the wire transfers to the

4     New York corresponding account.  That's 2021 Westlaw,

5     4267693 at page 12 footnote 22.

6          Here, Multi-Strategy Fund played a major role.

7     They directed Sentry to use the Bank of New York account.

8     That's more than just moving money as Mr. Fourmaux labeled

9     it this morning.

10         Berdeaux is also notable because there's nothing

11    in that case that tie the use of the bank account to the

12    claims against the defendant.  Here, by contrast, Multi-

13    Strategy Fund received a precise transfer that the Trustee

14    seeks to recover in that Bank of New York account.

15         Finally, in Berdeaux, the defendant didn't target

16    New York, or expect to be sued in New York.  But here,

17    Multi-Strategy Fund specifically targeted Madoff in New York

18    and they signed subscription agreements with a New York

19    choice of law, forum selection, and jurisdiction provision.

20         Taking a step back, Your Honor, the contacts that

21    the Trustee has alleged surpass those relied on by Judge

22    Lifland on personal jurisdiction in BLI.  Mr. Fourmaux said

23    this morning that BLI didn't address the issues Multi-

24    Strategy Fund raises.  But personal jurisdiction was

25    squarely addressed, including some of the same cases that

Page 70

1    are cited in the briefing here, and the Court consider

2    analogous facts.

3            Judge Lifland found personal jurisdiction over a

4    foreign entity that invested tens of millions of dollars in

5    Sentry with a specific goal of having funds invested with

6    BLMIS in New York.  And with the intention of profiting from

7    that U.S. based investment.

8            The defendant in BLI knew, intended, and

9    contemplated that its Sentry investment would be transferred

10   to BLMIS in New York, to be invested in the New York

11   securities market.

12           Now, we spent pages in our opposition brief

13   discussing BLI in more detail and why it applies, so I won't

14   belabor the point here.  But as in BLI, the Court should

15   find personal jurisdiction over Multi-Strategy Fund.

16           Multi-Strategy Fund has argued that BLI was

17   overruled, but they're wrong.  Given that the Trustee is not

18   relying on imputation or alter ego, the only case they cite

19   that potentially overrules BLI is Walden.  But Walden's

20   inapposite here.  It's an intentional tort case that was

21   applying an effects test.  Purposeful availment was not at

22   issue, and in fact, is never even mentioned in the decision.

23           In Walden, the Supreme Court found that there was

24   no personal jurisdiction over a police officer who merely

25   knew that the plaintiff was from Nevada.  But he had no

Page 71

1   other jurisdictionally relevant contacts there.  By

2   contrast, Multi-Strategy Fund intentionally directed funds

3   to BLMIS through Sentry, which was a fund that they knew was

4   going to funnel investments to BLMIS.

5           They try to paint a picture as if they were simply

6   purchasing shares in a foreign fund and that foreign fund

7   was the one that invested their money with New York based

8   BLMIS.  This is misdirection.  It's actually the same

9   argument that BLI made, because -- it's the same argument

10  that BLI made, but Judge Lifland called it disingenuous,

11  because it isn't happenstance or a coincidence that BLI's

12  money or Multi-Strategy Fund's money ended up at BLMIS.  It

13  was always their intention that it would.

14          The last argument I want to address is this idea

15  that Multi-Strategy Funds' New York contacts aren't related

16  to the Trustee's claim.  In support, Multi-Strategy Funds

17  relies on a series of contract cases, where there is no

18  connection between the claim and the contract.  That's

19  simply not this case.

20          The Trustee's claim arises from federal law, not a

21  contract, and he seeks to recover a subsequent transfer of

22  stolen customer property to Multi-Strategy Fund.

23          As an example of this argument, they cite two

24  cases that were also cited by the BNP Paribas defendants in

25  their motion to dismiss.  Those two cases are Hill versus

Page 72

1    HSBC and Hau Yin To versus HSBC.

2              In BNP Paribas, the bankruptcy court found that

3    those two cases had no bearing on the issue of personal

4    jurisdiction arising from the defendant's redemption as

5    investors in Tremont feeder funds that arose from the

6    defendant's New York contacts.

7              This was because a lack of personal jurisdiction

8    in Hill and Hau Yin To was based on merely incidental

9    contacts.  Those contacts related to fulfilling a foreign

10   contract to provide custodial and administrative services

11   for feeder funds.

12             Here, this case does not involve a contract to

13   supply goods or services and there is no claim for breach of

14   contract or a common law.  Each of the New York contacts

15   alleged in the amended complaint directly relates to the

16   Trustee's claim against Multi-Strategy Fund.

17             In Ford Motor Company, the Supreme Court made

18   clear, that a causal relationship between the claim and the

19   contacts is not required.  Instead, there need only be a

20   relatedness between the transaction and the legal claim,

21   such that the latter is not completely (indiscernible) from

22   the former.  That's a quote from Licci 2, 732 F3d 161 at 168

23   to 169.

24             Multi-Strategy Fund's New York contacts underscore

25   their purpose and intent to invest with BLMIS in New York.

1   These contacts directly relate to Multi-Strategy Fund's

2   redemption and their receipt of more than $25 million of

3   stolen customer property.  They therefore relate to the

4   Trustee's claim to recover that money for the benefit of the

5   estate.

6           Unless Your Honor has any questions, I'll turn it

7   over for rebuttal unless Mr. Feil has something to add.

8           MR. FEIL:  Your Honor, I just wanted to address

9   your question about Kingate.  You're right, we do cite the

10  Kingate at the beginning of our complaint and that's just --

11          THE COURT:  (indiscernible)

12          MR. FEIL:  I'm sorry, that's just to note that the

13  defendant also received transfers from Kingate, that the

14  Trustee had dropped those claims because he reached a full

15  recovery in the settlement with Kingate.

16          THE COURT:  Okay.  Thank you.

17          MR. FEIL:  You're welcome.

18          THE COURT:  Okay.  I have a couple of questions,

19  Mr. Lack, this is your question.

20          MR. LACK:  Yes.

21          THE COURT:  In Case 109 -- excuse me 09-01239 in

22  the Corina Piedrahita case, knowledge was relevant because

23  that was an initial transfer.  And for -- in Fairfield and

24  good faith prior to the Second Circuit's agenda, it's not

25  relevant for the subsequent transfer, and for the safe

1    harbor defense.  I want you to talk to me about that,

2    because that's my opinion.

3              MR. LACK:  Right, exactly, Your Honor.  And it is

4    true --

5              THE COURT:  Initial as subsequent, talk to me.

6              MR. LACK:  Yes, absolutely.

7              It is certainly true, Your Honor, that you looked

8    at the knowledge of Ms. Piedrahita and other officers and

9    agents of Fairfield Funds --

10             THE COURT:  Right.

11             MR. LACK:  -- in order to determine whether their

12   knowledge could be imputed to Fairfield as an initial

13   transferee.  And you found that in fact, not with respect to

14   Ms. Piedrahita, but with respect to all the other

15   individuals who were officers and agents.  You found that

16   they did have, they were adequately alleged to have known

17   that Madoff was not trading securities.  Their knowledge

18   could be imputed to the Fairfield Funds, therefore,

19   Fairfield Funds had actual knowledge and they could not

20   invoke the safe harbor as initial transferee.

21             But if the Trustee's theory had been correct, you

22   would have stopped there and say, well now that I've found

23   that the initial transferee Fairfield Sentry and other

24   Fairfield Funds cannot invoke the safe harbor, that disposes

25   of all the subsequent transfer claims because they can't

1    invoke the safe harbor either.

2          But you didn't do that, you dismissed the

3    subsequent transfer claims against Ms. Piedrahita.  And the

4    only basis we submit you could have done that on was Section

5    546(e).  And the reason we say that is because with respect

6    to the good faith defense, it was also asserted by the

7    subsequent transferees, you held that because the defendants

8    had the burden of proving value as an element of the good

9    faith defense, that you could not address the good faith

10   defense on a motion to dismiss.

11         And therefore, the only basis we submit this Court

12   could have had to dismiss the claim, subsequent transfer

13   claim that Ms. Piedrahita is 546(e).

14         Now, Mr. Feil noted that there were some

15   transfers, subsequent transfers to Ms. Piedrahita within two

16   years of the petition date.  And he asked well how could

17   they have been under 546(e).

18         There may be a question as to those transfers,

19   Your Honor, but there were other transfers that were beyond

20   the two year period.  And as to those, we submit, the only

21   basis on which this Court could have dismissed the

22   subsequent transfers against Ms. Piedrahita was 546(e).  And

23   therefore, to be consistent with Your Honor's decision in

24   Fairfield Investment Fund, which we think was correct

25   because Ms. Piedrahita did not have actual knowledge

Page 76

1    alleged.  She should not have been deprived of the safe

2    harbor.  To be consistent with Your Honor's decision in

3    Fairfield Investment Fund, to be consistent with Cohmad, you

4    should dismiss the claim against Fairfield -- against Multi-

5    Strategy Fund.

6              THE COURT:  I think you're misreading it.  That's

7    not correct.  I dismissed on good faith.  So okay.

8              MR. LACK:  Well --

9              THE COURT:  Anything else you wish to rebut?  I've

10   heard you.  Anything else you wish --

11             MR. LACK:  Okay.  Let me go back and -- because --

12   let me go back to the basic argument that Mr. Feil made.  He

13   says basically that Multi-Strategy as a subsequent

14   transferee, under Cohmad steps into the shoes of the initial

15   transferee.  That is not correct.  Okay.  It's not correct

16   as a statutory basis, it's not correct under Cohmad.

17             Section 546(e) and Section 550(a) refer to

18   avoidability of the transfer, not the liability of the

19   transferee.  550(a) does not say if the initial transferee

20   is liable, then the subsequent transferee is also liable.

21             And the finding -- determining factor in Cohmad

22   was the actual knowledge of the transferee who was being

23   sought to be recovered against as the defendant.

24             Now, Judge Rakoff clearly did not hold that the

25   ability of the subsequent transferee to invoke the safe

1   harbor depends on the initial transferee.  Paragraph 2 of

2   his ruling says just the opposite.  Even if the initial

3   transferee is innocent, that doesn't mean the subsequent

4   transferee necessarily didn't invoke the safe harbor.  The

5   determinate is the actual knowledge of the particular

6   transferee being sued.

7           And I'd like to note that Section 546(e) reflects

8   Congress' determination to protect the legitimate

9   expectations of people engaging in securities transactions.

10  The Second Circuit has been very clear about that.  The

11  Second Circuit's been clear that it holds the safe harbor,

12  even in situations where someone might have said, well, they

13  should have an exception, you should have an exception, the

14  Trustee argued in the Madoff case, because it was a Ponzi

15  scheme, and because Madoff wasn't actually trading

16  securities.  The Second Circuit said no, we're enforcing

17  Section 546(e) as written as Congress intended.

18          And so here, Judge Rakoff looked at exactly those

19  legitimate expectations and drawing the line in Cohmad.  He

20  said that where the transferee knows, actually knows that

21  there are no securities contracts because Madoff is not

22  trading securities, then they can't invoke the safe harbor,

23  because they have no legitimate expectations.

24          But that rationale applies where the subsequent

25  transferee did have a legitimate expectation as Multi-

Page 78

1    Strategy did.  And a legitimate expectation that Madoff had

2    to secure these contract with Sentry and it had a -- Multi-

3    Strategy had a securities contract with Sentry itself.  And

4    therefore, there is no -- it would be flouting Congress'

5    intent under Section 546(e) to deprive the subsequent

6    transferee, in that situation, of the use of the safe

7    harbor.  And it's a safe harbor again as to the initial

8    transfer.

9           We're not saying, and this is the strawman

10   argument that Mr. Feil repeats here, we're not saying that

11   the Section 546(e) applies directly to subsequent transfers.

12   It protects the initial transfer.  It protects the initial

13   transfer because he admits and does not dispute, for

14   example, that Sentry was a financial institution.  Doesn't

15   dispute that Madoff was a stockholder.  He doesn't dispute

16   there were securities contracts and settlement payments

17   here.

18          All he basically says is that the knowledge of the

19   initial transferee can be a transfer over to the subsequent

20   transferee and thereby, depriving the safe harbor of someone

21   who had a legitimate expectation based on the fact that

22   someone else didn't have a legitimate expectation.  And we

23   don't think that is consistent with Congress' intent.

24          THE COURT:  Okay.

25          MR. LACK:  Let me say one other thing about -- in

1   response on the customer property side, because Mr. Feil

2   repeated a misrepresentation he made in his opening brief

3   that we had responded to in footnote 3 of our -- I'm sorry,

4   a misrepresentation in his amended complaint, which we

5   responded to in footnote 3 of our opening brief.

6          He said that we stipulated that customer property

7   was received.  That is not true at all.  I have the

8   stipulation here which he's referring to.  It's ECF 88 and

9   the language that we said was, the remaining Count II of the

10  complaint as to CDP is dismissed, without prejudice, based

11  on defendant's representation that Multi-Strategy and not

12  CDP received the transfer from Fairfield Sentry Limited.  It

13  says nothing about customer property.

14         So it is incorrect to suggest that we have in any

15  case -- any instance stipulated or admitted that we received

16  customer property.  The evidence -- and we're not talking

17  about the evidence that we came up with, the evidence

18  proffered in the complaint and its exhibits in our case, in

19  the Fairfield, the second amended complaint which is

20  incorporated by reference into our case, complaint.  In the

21  other complaints, all of these pleadings say, allege that

22  the transfer, subsequent transfers made from Sentry were all

23  Madoff customer property.

24         On a motion to dismiss, it is 100 percent

25  appropriate to hold the plaintiff to what they plead in

1    their complaint.  And if the complaint and its exhibits

2    plead them out of a claim because it renders on its face the

3    claim implausible, then the motion to dismiss must be

4    granted under Iqbal and Twombly.  That's exactly what has

5    happened here.

6              And I can say that there -- the defendant -- the

7    Trustee has had four opportunities to show this Court how it

8    could be that the $25.8 million that Multi-Strategy received

9    was linked to customer property.  Because he didn't do it in

10   the initial complaint, after we pointed out the

11   implausibility of it through the arithmetic exercise of my

12   initial declaration in the initial motion, they filed an

13   amended complaint, they didn't do the linkage in the amended

14   complaint.

15             After we pointed it out again in our renewed

16   motion to dismiss, they did not do it in their opposing

17   brief and they did not do it in oral argument today.  They

18   claim they don't have to do it.

19             Well, in our case, I think it's clear from what

20   they've actually alleged and in Multi-Strategy's case we can

21   make this case within the four corners of the complaint and

22   the documents of the complaint incorporates by reference.

23   It is simply implausible that the Madoff -- any Madoff money

24   went to Multi-Strategy.  It was all borne based on what the

25   Trustee himself has alleged, and we can hold him to that,

Page 81

1    and Your Honor should hold him to that.

2            And that is -- it's not our obligation to explain

3    where the money would have come from, otherwise, although we

4    do have a good explanation based on what Fairfield Sentry

5    said elsewhere, but it is his, the Trustee's obligation to

6    make a plausible case.  He has simply not done it with

7    respect to Multi-Strategy, and therefore, the motion should

8    be --

9            THE COURT:  Okay.  Mr. Fourmaux, I have a question

10   for you.

11           MR. FOURMAUX:  Yes, Your Honor.

12           THE COURT:  Did Multi-Strategy sign -- oh, wait a

13   minute, one thing I think this is for both of you.  Did

14   Multi-Strategy sign off on the case that was consolidated

15   before Judge Rakoff?

16           MR. LACK:  Cohmad, Your Honor?

17           THE COURT:  Yes.  Yes.

18           MR. LACK:  Yes.  Multi-Strategy was one of the

19   parties that sought to withdraw the reference in Cohmad --

20           THE COURT:  Okay.

21           MR. LACK:  -- and therefore we believe Cohmad is

22   applicable to our case.

23           THE COURT:  I hear you.  I just wanted to know the

24   answer to that question and it was a yes or no question.

25   Thank you.

1          Now then, Mr. Fourmaux, I have a question for you.

2          MR. FOURMAUX:  Sure.

3          THE COURT:  And it is the Supreme Court decision

4    in Walden.  And in the Supreme Court decision to Walden,

5    which I'll quote it, you argue it pretty forcefully, but I

6    want to quote from that case and I want you to answer this.

7          MR. FOURMAUX:  Uh-huh.

8          THE COURT:  Although physical presence in the

9    forum is not a prerequisite to jurisdiction, physical entry

10   into the state, either by the defendant in person or through

11   an agent, goods, mail or some other means is certainly

12   relevant, please address that.

13         MR. FOURMAUX:  Sure, Your Honor.  There is only

14   one physical entry alleged in this case and that is --

15         THE COURT:  Well, let's talk about all the other

16   stuff.

17         MR. FOURMAUX:  Okay.  Your Honor -- okay.  You

18   were going to physical presence so if I --

19         THE COURT:  I didn't --

20         MR. FOURMAUX:  I'll just start with the --

21         THE COURT:  (indiscernible) --

22         MR. FOURMAUX:  -- physical entrance.

23         THE COURT:  You just wanted to hear physical

24   presence.

25         MR. FOURMAUX:  Okay.

1          THE COURT:  You didn't hear about all the other

2    mail, such as e-mail, and other means.  Talk to me.

3          MR. FOURMAUX:  Sure, okay.  First, the meeting in

4    New York after the subscription agreement is already signed,

5    after we're already a shareholder.

6          Not every -- yes, physical presence can be

7    relevant sometimes, but not every physical presence, not

8    every meeting is a jurisdictional contact.

9          So for instance, in the McKee case from the New

10   York Court of Appeals that we cite, that involved a meeting

11   in New York where the parties discussed the contract that

12   was in dispute.  That one meeting, the New York Court of

13   Appeals held that does not constitute a transacting of

14   business.

15         The Court went so far as to say that it wasn't

16   just a minimal, it wasn't even a minimal contact, it was an

17   infinitesimal contact.  It was not enough to constitute

18   transacting business in New York.

19         The cases are very clear that isolated meetings,

20   if there's no transaction conducted, there's no negotiation

21   of a further transaction and there's no allegation of that

22   here, than the mere presence in New York is not sufficient.

23         As far as the e-mails and phone calls, though,

24   these are also e-mails and phone calls after the Multi-

25   Strategy is already a shareholder in Sentry and there's two

Page 84

1    lines of authority that are absolutely applicable here that

2    settle discretion dispositively.

3             First, there's the Hill and Halian Taul cases

4    which were mentioned just a little bit ago and those are

5    cases where if you have a foreign defendant and a contract

6    that is negotiated and executed outside of the United

7    States, then if there are communications from the foreign

8    location into New York and also payments to and from New

9    York, if it's all incidental to the fulfilling that contract

10   that was negotiated and executed outside of the United

11   States, then it does not support jurisdiction.

12            Now, they said well, oh, but BNP Paribas already

13   dealt with that and ruled that that is not -- that that line

14   of cases is not non-applicable to any investor in the feeder

15   funds.  Absolutely incorrect, Your Honor.

16            BNP was decided on its facts.  In BNP there were

17   foreign defendants; however, they had an office right here

18   in New York, 787 7th Avenue.  And the subscription

19   agreements in that case were signed in New York by personnel

20   of the defendant in New York.

21            So you had an agreement that was executed in New

22   York, beyond -- so the predicate for -- the necessary

23   predicate for the Halian Taul and Hill cases was missing in

24   that case because it was negated by the facts.  More than

25   that, the same defendants, employees in New York, also

Page 85

1    advantaged the investment, so that the entire situation in

2    BNP was people at 787 7th Avenue dealing with people in

3    Westchester County.  That's why those cases didn't apply.

4         Here, the Trustee concedes that the contracts were

5    negotiated and executed outside of the United States.

6    That's one line of authority.  There's another line of

7    authority that's even longer, that goes back to 1970 from

8    the New York Court of Appeals, and that's the Parke-Bernet

9    case that's been consistently applied for 50 plus years.

10        And that's if you are outside of New York and

11   you're making a phone call or some other telecommunication

12   into New York, that unless you are transacting business on

13   that call, it doesn't count as a jurisdictional contact.

14        So that the classic case was, in part, Bernet was

15   there was an auction, an art auction taking place in New

16   York.  And in the auction room they turn on the speakerphone

17   and a defendant in California places bids over the

18   speakerphone.  And the Court -- then after he doesn't pay

19   for his winning bids and he gets sued in New York.

20        The Court says, well, okay, you weren't in New

21   York, but you projected yourself into commerce in New York

22   over the telephone.  Following that case it's -- there's

23   just dozens and scores of cases, and we cited cases that

24   collect them, that say, you know, if you have a phone call,

25   you have an e-mail, but there's no business -- there's no

Page 86

1    transaction conducted or negotiation, then that -- those

2    incidental communications do not qualify as a contact.

3             And so I -- and I think this is your -- a case,

4    Your Honor, of lots of zeroes don't add up to something more

5    than zero.  I know they want you to look at the cumulative

6    impact, but I think that you have here a series of contacts

7    that count for nothing.

8             Now, if I may just quickly on the BLI case again,

9    what we really have here is presented as a strawman.  They

10   want to pretend that all we're doing is saying the same

11   thing, that the defendant said in BLI.  So I just want to

12   make absolutely clear, Your Honor, absolutely clear.  We are

13   not saying that it was just a coincidence the money -- or

14   that we were surprised that the money ended up with Madoff.

15            We're not disputing that the defendant knew and

16   intended for the purposes of this motion, we're not

17   disputing that the defendant knew and intended that its

18   money would eventually go through Sentry into Madoff.

19            The argument that we we're presenting is that that

20   is not legally sufficient to constitute contact because it's

21   not legally sufficient under very well established case law

22   to impute Sentry's act of investing with Madoff to us, even

23   if we knew about it and even if we intended it.

24            So they say, we admit that it's not an alter ego,

25   we admit that it's not an agent.  Agency would require not

1    just knowledge and intent and to benefit for the shareholder

2    but also control.  And they have not alleged that, and I

3    think they just admitted that they aren't alleging all of

4    those elements.

5          So without that, the fact that you invested, even

6    knowingly and intendingly through another corporation

7    doesn't make us jurisdictionally present in New York.

8          Now, Mr. Friedman also talked about bank accounts

9    and just very quickly, he points to a subscription agreement

10   and he says, well, look, let's look at the wire transfer

11   instructions.

12         So in the subscription agreement Sentry gave its

13   wire transfer instructions for payments that would go into

14   Sentry and Multi-Strategy gave its wire instructions for

15   payments that would go to Multi-Strategy.

16         And in the wire instructions for Sentry, they list

17   that HSBC USA bank account in the name of Citi -- Citco Bank

18   Netherland N.V. Dublin branch.  And then it specifically

19   says for further credit to account name Fairfield Sentry and

20   against an account number.

21         So the HSBC USA pay account in New York is just

22   for routing to the ultimate destination to Fairfield Sentry

23   in the Dublin, Ireland branch of Citco.  There's no claim

24   that Sentry itself has the HSBC account.  All they're doing

25   is informing persons that if you're going to send a wire

1   transfer to us in Ireland, our bank Citco works through

2   HSBC.  Same thing for the Multi-Strategy fund wire transfer

3   instructions.

4            It says very clearly, this is in Therrien Exhibits

5   A and -- A and B, there's wiring instructions, pay through,

6   those are the words, Your Honor, pay through bank, Bank of

7   New York and gives an account number.  Then says for further

8   credit to beneficiary's bank, Caisse Centrale Desjardin,

9   beneficiary's name, Multi-Strategy Fund and it gives the

10  account number.

11           So there is -- the money is only passing through

12  the accounts that are maintained not by Sentry and not by

13  Multi-Strategy, but by their perspective banks.

14           Now, Mr. Friedman talked about a volitional act,

15  well -- he says, well, you went ahead and put that

16  information down there in the subscription agreement that's

17  a volitional act.  It's not a volitional you're Your Honor.

18  We did not choose that our bank would have that particular

19  corresponding account.  It's not a volitional act here, Your

20  Honor, it's an informational act.

21           All we do is informing for the convenience of our

22  counterparty here is the bank that our -- here's the

23  correspondent bank that our bank uses.  But the transfer

24  itself is from Ireland to Canada and from Canada to Ireland.

25  And the case law that's rehearsed again in the Berdeaux

1    decision, Judge Caproni makes a survey of the law and

2    concludes that there's no support for the idea that if

3    you're just a customer and the -- you're making a transfer

4    from one foreign location to another foreign location and

5    your banks that you use route through New York on the way,

6    that's not purposefully availing yourself of the privilege

7    of doing business in New York.

8              And just to be very clear, they said -- Mr.

9    Friedman said well, you received the redemption payment in

10   the HSBC account.  No, Your Honor, absolutely not.  HSBC

11   account, or my apologies, the Bank of New York account.

12   Says well, you received the redemption payment in the Bank

13   of New York account.  No.

14             The Bank of New York account again as it's clearly

15   stated is an account held by Desjardin Bank.  When money

16   went into Desjardin's bank account at Bank of New York,

17   Multi-Strategy didn't receive that.  The only person who had

18   that money at that point was Desjardin Bank.  It is not

19   until Desjardin Bank then credits Multi-Strategy's account,

20   at Multi-Strategy's account at Desjardin in Montreal.

21   That's when Multi-Strategy Fund receives the redemption

22   payment.

23             The -- Multi-Strategy Fund had no right to

24   withdraw money from correspondent account owned by Desjardin

25   Bank.  Now, he says, oh, but we cited cases that shows that

Page 90

1   you don't have to own the account.  Absolutely false, Your

2   Honor.

3          So he mentioned the SO versus Nigerian case, the

4   Nigerian Oil case, very important.  That case, the facts

5   there were there's a breach of contract action against the

6   Nigerian state oil company which was found to be an alter

7   ego of the Republic of Nigeria.  And the situation there was

8   it's the Nigerian state oil company.

9          The Central Bank of Nigeria opens three accounts

10  at JPMorgan in New York for the benefit of the Nigerian

11  state oil company for the purpose of the Nigerian state oil

12  company to use.

13         The opinion cites that the Nigerian state oil

14  company received bank statements for those accounts and that

15  it had the authority on its own to transfer money out of

16  those accounts.

17         So it was a case where the accounts were nominally

18  held in the name of the Central Bank of Nigeria, but they

19  were controlled by the Nigerian state oil company.  And it

20  was in that context where the Nigerian state oil company in

21  fact controlled the accounts, that -- the Court said, well,

22  it doesn't matter whose -- you don't get out of this by

23  saying your name isn't on the account.  That's completely

24  different, Your Honor, in the situation with Multi-Strategy

25  Fund.

Page 91

1          Multi-Strategy Fund doesn't have any control of a

2    Desjardin's account with Bank of New York.  That's the same

3    account that any customer of Desjardin Bank, any customer at

4    Desjardin Bank that makes a U.S. dollar wire transfer is

5    going to have their money cashed to that account.  But none

6    of the customers control that account.

7          So all we're doing in the subscription agreement

8    is informing a counterparty of that fact.  If we had not

9    listed the correspondent accounts, the exact same thing

10   would have happened.  If we had just given our -- if we had

11   just our bank account number at Desjardin Bank and gave that

12   as the wire transfer instructions, the same thing would have

13   happened.

14         All that would have happened in that case is

15   someone at Citco Bank would have to look up on the Swiss

16   system, who's the correspondent account for Desjardin.  And

17   the same transaction would have happened.  We had no control

18   over it.  All we're doing is essentially saving somebody at

19   a bank a few minutes of looking up a -- the correspondent

20   account number.

21         So last, if I may, the -- on relatedness.  Again -

22   - so for a number of these contacts it's obviously -- it's

23   not enough that there be -- remember there are two parts to

24   specific jurisdiction.  There has to be a contact that

25   constitutes purposeful availment and the claim must arise

1    out of or relate to those contacts.

2            Here, there's no showing or allegation of well how

3    did the fact that money going from Ireland to Canada, how

4    did the fact that it went midway through New York, how does

5    that relate in any way causily, logically, in any way

6    whatsoever to whatever Madoff was running the Ponzi scheme,

7    to whether Madoff made a fraudulent transfer, or to whether

8    we received customer property?

9            Everything in their claim would be exactly the

10    same if the money had been routed in some other way or if we

11    had --

12            THE COURT:  I've heard you already.  I've heard

13    enough.

14            MR. FOURMAUX:  Okay.

15            THE COURT:  You're beginning to repeat yourself

16    and I --

17            MR. FOURMAUX:  All right.

18            THE COURT:  -- really get tired of repeating --

19    repeat.

20            MR. FOURMAUX:  Okay.  Then if you have no other

21    questions, I'll rest, Your Honor.

22            THE COURT:  I do not have any other questions.

23            MR. FOURMAUX:  Thank you.

24            THE COURT:  Mr. Feil, Mr. Friedman, any quick

25    response, and it better be exactly on point and a quick

Page 93

1    response.

2              MR. FEIL:  Yeah, I'll just say in response to Mr.

3    Lack, I did not say that they stipulated that the subsequent

4    transfer had customer property just that they had received

5    it.  You can see in the transcript.

6              With respect to his contention that Congress is

7    intending to protect the entire chain of transfers, it's

8    true that Congress has amended the safe harbor and the

9    Courts have interpreted it liberally, but nobody, Congress

10   hasn't seen fit to add 550 to it.  And I think Your Honor

11   gets that.

12             THE COURT:  I knew that.

13             MR. FEIL:  Okay.  That's all I had.

14             THE COURT:  Very good.  Mr. Friedman, same thing,

15   any quick things that were brought up that were not argued

16   before that you just want to quickly address?

17             MR. FRIEDMAN:  No, thank you, Your Honor, I think

18   we addressed everything.  Thank you for your time.

19             THE COURT:  Excellent.  Very good.  The Court will

20   issue a written decision and I am going to take a five

21   minute break before we begin the next one.

22        (Recessed at 11:42 a.m.; reconvened at 11:49 a.m.)

23             THE COURT:  Good morning still.

24             UNIDENTIFIED:  Good morning, Your Honor.

25             UNIDENTIFIED:  Good morning.

1          THE COURT:  Oops.  I keep turning myself off and

2     on.  This is -- we're now on Adversary Proceeding 11-02149,

3     the Trustee Picard versus Banque SYZ & Company, SA.  State

4     your name and affiliation.

5          MR. LEVIN:  Good morning, Your Honor, Richard

6     Levin, Jenner & Block LLP appearing for Banque SYZ.

7          MR. CREMONA:  Good morning, Your Honor, Nicholas

8     Cremona, Baker & Hostetler appearing on behalf of Irving

9     Picard as SIPA Trustee.

10          THE COURT:  Mr. Levin, I believe this is your

11     motion.

12          MR. CREMONA:  Your Honor, if I may --

13          THE COURT:  Oh, I'm so sorry.

14          MR. CREMONA:  Sorry to interrupt, I just wanted to

15     address a housekeeping matter at --

16          THE COURT:  Go ahead.

17          MR. CREMONA:  -- the outset, Your Honor, because

18     you had asked about the Kingate transfers in the Multi-

19     Strategy matter and the same applies here.  I just wanted to

20     point Your Honor to a stipulation that we entered which is

21     at Docket 147 in this case, entered on December 12th, 2021.

22     And similar to the other case, we dismissed the Kingate Euro

23     transfers and the Kingate global subsequent transfers based

24     on the settlement and the recovery of those transfers.  So

25     that's why there was an adjustment and they're not discussed

1   herein.

2            THE COURT:  Okay.  I have to say --

3            MR. LEVIN:  Your Honor --

4            THE COURT:  I'm sorry, Mr. Levin, the docket is

5   not so clean.  So sometimes we're new to this and trying to

6   find it.  It is not necessarily simple.  So, yes, Mr. Levin.

7            MR. LEVIN:  Yeah, and just to confirm what Mr.

8   Cremona said and --

9            THE COURT:  Okay.

10            MR. LEVIN:  -- noting that the stipulation did not

11   actually result in an amended complaint.  The complaint

12   still has all of the Kingate allegations in it.

13            THE COURT:  Okay.  Okay.  But let me just ask Mr.

14   Cremona.  But isn't there a stipulation on the Multi-

15   Strategy or just an amended complaint?

16            MR. CREMONA:  On Multi-Strategy I'll defer to Mr.

17   Feil.  I don't know whether or not there was a stipulation

18   or if that was addressed in the complaint.  In -- as Mr.

19   Levin said, in this action we stipulated solely to the

20   dismissal of the transfers that relate to Kingate and that's

21   all we accomplished with the stipulation that I referred to.

22            THE COURT:  Okay.  All right.

23            MR. LACK:  Your Honor?  Your Honor?

24            THE COURT:  Yes, sir.

25            MR. LACK:  In the Multi-Strategy case, at Document

Page 96

1   88, there is a stipulation which does dismiss the Kingate

2   related claims and then there was an amended complaint which

3   was in accordance with that and did not include the Kingate.

4           THE COURT:  I'm sorry to take y'all's time on

5   this.  We're just trying to get everything straightened out.

6   Very good.  Mr. Levin, it's your motion.

7           MR. LEVIN:  Thank you, Your Honor.  Your Honor, I

8   know you're well prepared on these matters so before I

9   started, I wanted to know if there was anything specifically

10  you wanted me to address or any questions before I start my

11  prepared remarks.

12          THE COURT:  Thank you.  I tried to be prepared and

13  I actually want to hear you first and I think questions may

14  come up that I come back to you on, but let's just hear you

15  first.

16          MR. LEVIN:  Fine.  All right.  I'll proceed.

17          THE COURT:  And honestly, if y'all will -- not

18  necessarily emphasize but add to your papers, because we've

19  really gone over the papers.

20          MR. LEVIN:  Yes, understood.

21          THE COURT:  So if you'll -- right, thank you.

22          MR. LEVIN:  Your Honor, the first issue, the first

23  item of business is we filed a request for judicial notice.

24  The Trustee did not object to that request so we ask that

25  judicial notice be taken of the documents that are  a part

1    of that request.

2            THE COURT:  That are on the docket already?

3            MR. LEVIN:  Yes.

4            THE COURT:  Okay.  I can always take judicial

5    notice of something that's on the docket.  I don't

6    necessarily have to take judicial notice of what's in the

7    docket -- in the document, so --

8            MR. LEVIN:  Well, our request, Your Honor, spells

9    out exactly what we're seeking, it's a written request, it's

10   on the docket with all of the documents attached as exhibits

11   to the request and it spells out exactly what we are seeking

12   judicial notice of, whether it is the existence of the

13   document, or in some cases, the contents of the document.

14           MR. CREMONA:  Your Honor, sorry to interrupt --

15           THE COURT:  Yes, sir?

16           MR. CREMONA:  -- this is Nicholas Cremona, I

17   apologize for interrupting.  But while we did not object to

18   the concept of matters being taken on judicial notice, we

19   intend to address here today the purpose for which those

20   documents can or cannot be used and the appropriateness on a

21   motion to dismiss, which I intend to address in my

22   presentation.

23           THE COURT:  Okay.  I -- that's what's important to

24   me.  Obviously I take judicial notice of anything that's

25   filed.  But a judicial notice can't be used for the truth of

1      the matter asserted and that's just blanket.

2              I can take judicial notice of -- if it's been

3      filed.  I can take judicial notice of it's here.  And I will

4      do that, but that's just that it's filed and it's before the

5      Court.  Very good.

6              MR. LEVIN:  Your Honor, I don't want to beat this

7      too much, but for example, the motion to dismiss assumes the

8      facts in the complaint to be true and similarly --

9              THE COURT:  I have to.  I have to.

10             MR. LEVIN:  Yes, yes.  And we're -- similarly,

11     we're assuming the documents that are referenced in the

12     complaint, which we ask the Court to -- which are attached

13     to our request for judicial notice, we assumed those to be

14     true.

15             THE COURT:  I cannot do that.  That's not what the

16     law says and you know that's not what -- excuse me.  That's

17     not what it says.  That sounds like evidence to me and if

18     that's evidence, we will be in the courtroom and the

19     evidence will be there.

20             I take judicial notice of the fact that the

21     document was filed, that's all I will do.  And, yes, you may

22     rebut it, but I'm taking judicial notice of the fact that

23     it's been filed.

24             MR. LEVIN:  I will not go over our request in

25     detail, Your Honor, I'll let the written request speak for

1    itself.

2            THE COURT:  Thank you.

3            MR. LEVIN:  Your Honor, I want to address a

4    preliminary issue before getting into the grounds that we

5    have asserted for our motion to dismiss.

6            We have five grounds unlike Multi-Strategy, we

7    overlap on three of them but there are two additional ones.

8    But there's a preliminary issue that I want to mention and I

9    think this is really important understanding the context of

10   this case.

11           This case is about -- this adversary proceeding is

12   about an investment that Bank SYZ made with Sentry, not an

13   investment that Bank SYZ made with BLMIS.  The Sentry

14   offering memorandum which the complaint references stated

15   Sentry intended to use the funds to invest in U.S.

16   securities, that Sentry maintained an account at BLMIS,

17   which was a broker dealer, it needed to maintain an account

18   to trade in U.S. securities.  And that BLMIS would manage

19   the investment, in effect be the investment manager.

20           Neither the complaint nor the facts as the world

21   now knows them support any theory that Banque SYZ or any

22   other Sentry investor who did not have actual knowledge that

23   BLMIS was not trading securities, was investing with BLMIS

24   or in BLMIS as if BLMIS were a fund in which one could

25   invest.

1              Anymore than if I might call a broker at Charles

2       Schwab and send money with instructions to buy shares of

3       Apple or General Motors or any other U.S. securities, I'm

4       investing in Charles Schwab, I'm not.  And even if my broker

5       there steals all my money, I still didn't make an investment

6       in Charles Schwab.

7              An here, the Sentry -- Banque SYZ was investing in

8       Sentry and Sentry was using the money that it got from all

9       of its investors to invest in U.S. securities using BLMIS as

10      its broker dealer and effective events manager.

11             The Second Circuit recognized this distinction in

12      the Ida Fishman case.  And I'm going to quote on page 421 of

13      the Fishman case.  The account documents establish that

14      BLMIS and its customers manifested their mutual assent that

15      BLMIS would conduct securities transactions on the

16      customer's behalf pursuant to specific investment strategy.

17      Now, here the customer BLMIS with Sentry, not Banque SYZ.

18             Going on with the quote, of course, BLMIS secretly

19      intended to violate the agreement by using the deposits to

20      fund the ongoing Ponzi scheme, but this is of no moment.

21      This was talking -- getting to the point of whether Fishman,

22      in that case it was a 546(e) case.

23             And this distinction is important to remember when

24      analyzing the relationships among BLMIS, Sentry and Banque

25      SYZ.  Banque SYZ was an investor in Sentry.

Page 101

1          Did you just turn your camera off or --

2          THE COURT:  I did accidentally, thank you, I

3  apologize.

4          MR. LEVIN:  Okay.  No problem.

5          THE COURT:  I'm struggling with making this camera

6  work.

7          MR. LEVIN:  Well, I don't mind if it's off, I just

8  wanted to make sure I wasn't -- I shouldn't --

9          THE COURT:  No, I want you to read my tells.

10         MR. LEVIN:  I looked for those.

11         THE COURT:  I'll leave it on.

12         MR. LEVIN:  Okay.  So this distinction is

13  important to remember when analyzing the relationships among

14  to BLMIS and Sentry and Banque SYZ.  SYZ was an investor in

15  Sentry and Sentry obtained investors such as Banque SYZ on

16  the basis that Sentry was an investor in U.S. securities,

17  not in BLMIS.  That turned out not to be true at the end of

18  the day, but at least that's what Sentry represented to its

19  investors.

20         And to the extent that the Trustee argues that

21  Sentry was not investing in U.S. securities because it knew

22  BLMIS -- Sentry was not investing, because it knew BLMIS was

23  not investing in U.S. securities.  That's the allegation in

24  the Fairfield amended complaint.

25         The Second Circuit's statement applies equally.

1    Sentry agreed with its investors, including Banque SYZ that

2    it would invest in U.S. securities, whether it secretly

3    intended to violate that agreement is of no moment.

4            So I want to set that as a context for the

5    arguments that I'm going to make.  The first point, Your

6    Honor, is that as we said in our memorandum, the -- one of

7    the essential elements of an action to recover customer

8    property from a subsequent transferee is that the initial

9    transfer be avoidable.

10           And the complaint must sufficiently allege

11   avoidability or actually avoided.  It's already been

12   avoided, but here, just avoidability.  The only allegation

13   of substance of any -- other than just the bare assertion

14   that it's avoidable, that the initial transfers to Sentry

15   were avoidable is by incorporation by reference of the

16   Fairfield amended complaint.

17           There are three reasons why that is not proper in

18   this case.  First, Rule 10(c) which permits incorporation by

19   reference does not permit wholesale incorporation from

20   another action and the incorporation must specifically

21   identify the allegations being incorporated, not all 217

22   pages, 798 allegations and 101 exhibits.

23           Second, this incorporated complaint has been

24   superseded.  It's no longer operative and it's based on

25   superseded legal principles as we note from the Citibank

Page 103

1    case.

2              And third, the incorporated complaint does -- now

3    this goes to Rule 8(a) which requires that a complaint

4    contain a short and plain statement, it does not contain a

5    short and plain statement of the claim.  And it would expand

6    the scope of this litigation well beyond the main issues of

7    avoidability and recovery with extensive allegations and

8    exhibits that are irrelevant to the Trustee's complaint in

9    this action.

10             As such, we believe the wholesale incorporation

11   should be stricken with the result of the complaint against

12   Banque SYZ does not adequately allege that the Sentry

13   transfers from BLMIS were avoidable, which is an essential

14   element.

15             As we said in our reply brief, Your Honor, we do

16   not object to the Trustee's amendment of the complaint to

17   allege only the relevant facts to frame the issue for this

18   case.  We just don't want to deal with all of their claims

19   against all of the Fairfield defendants.  This relates only

20   to Sentry and only to the avoidability of the initial

21   transfers to Sentry.

22             I want to move to the second grounds for our

23   motion to dismiss, Your Honor, which is the safe harbor of

24   Section 546(e).  I'm going to adopt Mr. Lack's arguments,

25   except to the extent they were specific to the facts of his

1    case, but on the general points I want to adopt those and

2    just add a few words without repeating, maybe a different

3    emphasis than he had.

4              The safe harbor, by its express terms, prohibits

5    avoidance and therefore recovery of transfers made more than

6    two years before bankruptcy.  It's absolute.  There are no

7    exceptions.  And the Second Circuit has said we look askance

8    at any objections and has denied other attempts to find

9    exceptions to the safe harbor.

10             And that would end this litigation, since the

11   alleged initial transfers here, to the extent we can

12   determine which ones the complaint is referring to, were

13   made more than two years before bankruptcy.

14             But as the safe harbor has been construed in this

15   case by both Judge Rakoff and by this court, the -- there

16   has been an exception, a judicially created exception to the

17   safe harbor.  And that exception is that the safe harbor

18   cannot be invoked by a transferee who had actual knowledge

19   that BLMIS was not trading securities.

20             We disagree with that ruling.  We wish to preserve

21   the issue for appeal, but we recognize it's law of the case

22   so we're going to go on that basis for now, Your Honor.

23             Oh, and to answer your earlier question, Banque

24   SYZ was also a party to the Cohmad proceeding, so we are

25   bound by that as well in the case here.

1              THE COURT:  I was thinking the same thing.

2              MR. LEVIN:  Now, Judge Rakoff's judicially created

3    exception was narrow, and when a Court creates an exception

4    to a very absolute clear congressional command, that

5    exception should be construed very narrowly.  And Judge

6    Rakoff made clear the reason for the exception was designed

7    to strip protection from those who knew there were no

8    securities transactions.

9              That applies equally to initial transferees

10   without knowledge and it should apply, if you take the logic

11   of his opinion creating this exception, it should apply

12   equally to subsequent transferees without knowledge.  And

13   there's no allegation here that Banque SYZ knew there were

14   no underlying securities transactions.

15             In addition, going back to the Ida Fishman case

16   from the Second Circuit, it's 773 F3d 411, the Court ruled

17   that the phrase in connection with, quote, in Section 546(e)

18   sets a low bar for the required relationship between the

19   securities contract and the transfers sought to be avoided.

20             Because the Trustee here alleges that the

21   redemption payments that Banque SYZ received from Sentry

22   were customer property withdrawn from BLMIS to fund the

23   redemptions, the allegation is that the withdrawals were

24   transfers in connection with the securities contract between

25   Sentry and Banque SYZ.  And as such, even if Sentry had

1    actual knowledge that BLMIS was not trading, the benefit of

2    the safe harbor here is for Banque SYZ who was the party to

3    a securities contract between it and Sentry.

4            I'll move on to the customer property issue, Your

5    Honor, and again I want to echo Mr. Lack's argument, except

6    with respect to the specifics of the transfer of Multi-

7    Strategy because our facts are a little bit different.

8            Despite the Trustee's exercise to frame this as a

9    tracing -- I'm sorry, the Trustee's attempt to frame this as

10   a tracing exercise, we do not believe this is a question for

11   expert opinion, but it's a legal question of not what the

12   facts are, that's for trial.

13           The question here is does the complaint plausibly

14   allege that the transfers in question contain customer

15   property.  Because if the complaint doesn't plausibly allege

16   that, you don't get to trial.  So the complaint has to make

17   plausible allegations.

18           First, in this case, first the Trustee doesn't

19   identify which of the initial transfers of customer property

20   were allegedly transferred to Banque SYZ.  He simply lists a

21   bunch of BLMIS to Sentry transfers and does not tie any

22   initial transfers to any transfer from Sentry to Banque SYZ.

23   They're just broad generalities, no specifics and that is

24   not adequate under Iqbal and Twombly.

25           And second, in our case, there's an enormous time

Page 107

1    gap that makes it implausible that the funds Sentry

2    transferred to Banque SYZ were customer property that Sentry

3    received from BLMIS.

4          If you look at page 33 of our memorandum, Your

5    Honor, we have a table which is a summary of the transfers

6    alleged just within the four corners of our complaint

7    without looking at the 70 some other complaints that the

8    Trustee has brought.

9          And this -- the plausibility problem here is that

10   as you can see from that table, BLMIS transferred money to

11   Sentry.  Sentry transferred enormous amounts of money back

12   to BLMIS, comparable amounts and yet, somehow the Trustee

13   says it's plausible that despite a billion and a half

14   dollars of transfers from Sentry to BLMIS, that's before the

15   transfers to Banque SYZ, despite a billion and a half

16   dollars of transfers somehow, without saying how, without

17   any specifics, without any details, somehow Sentry set aside

18   some money of customer property that it received and it used

19   that money to pay Banque SYZ.

20         So if you expand this table to include the 70 some

21   other complaints as we explained in our memorandum, Sentry

22   transferred out over $7 billion of money and took in from

23   BLMIS under $3 billion of money.

24         So while it's conceivable that there was customer

25   property that found its way to Banque SYZ, Iqbal and Twombly

Page 108

1    require more than conceivable, they require that it be --

2    that the claim be plausible that that was customer property.

3    And again without the details and we believe under the

4    Trustee's agreement with the Sentry liquidator, the Trustee

5    had access to the Sentry bank records to provide those

6    details.  Without those details, the claim that Banque SYZ

7    received customer property is not plausibly alleged.

8            Again, we have no objection if the Trustee -- to

9    the Trustee amending its complaint if he can, to plausibly

10   allege that the funds that Banque SYZ received were customer

11   property, and to show the connection, we just say that he

12   hasn't done so so far.

13           Your Honor, I want to turn Section 550(b)(1),

14   which is an affirmative defense.  And ordinarily, an

15   affirmative defense is not -- cannot be used on a motion to

16   dismiss.  But if the complaint itself has adequate

17   allegations, which are accepted as true, that support the

18   affirmative defense, the Court may dismiss on the

19   affirmative defense.  We made that point, we cited that in

20   our brief and cited the case law for that.

21           Now, the affirmative defense here 550(b)(1) gives

22   the subsequent transferee an affirmative defense if the

23   transferee takes three elements, takes for value, in good

24   faith, and without knowledge of avoidability of the transfer

25   avoided.

1              The first value, we address that in memorandum.

2     We believe there was adequate consideration for the transfer

3     between Sentry and Banque SYZ.  That's what's required by

4     value here.  I'm not going to spend anymore time on that.

5              But I want to focus on good faith for a moment.

6     Citibank decision last August defines what's required for

7     the good faith element.  It has three components.

8              The first component is what facts the defendant

9     subjectively knew.  The second component is whether those

10    facts put the transferee on inquiry notice of the fraudulent

11    purpose of the transfer.

12             And in this case, the transfer we're talking about

13    is the subsequent transfer from Sentry to Banque SYZ, just

14    as the value analysis is from Banque SYZ to Sentry.  It's at

15    that level, that subsequent transfer level.

16             And the third element is if so, whether diligent

17    inquiry by the transferee, here Banque SYZ, would have

18    discovered the fraudulent purpose of the transfer, the

19    transfer being the transfer from Sentry to Banque SYZ.

20             Now, why do I say that that element is tested at

21    the subsequent transfer level, not at the initial transfer

22    level?  Because the third element is, without knowledge of

23    the voidability of the avoided transfer.  And the avoided

24    transfer is the transfer that occurs between BLMIS and

25    Sentry.  That's directed at the initial transfer.

1             And that's how the statute picks up the subsequent

2      transferee who knew too much.  If the subsequent transferee

3      had knowledge of the voidability of the transfer avoided,

4      then even if he was in good faith between the subsequent

5      transferee and the initial transferee, the subsequent

6      transferee will be liable.

7             So the statute itself separates those two

8      concepts.  Turning to good faith and looking at good faith

9      at the Sentry to Banque SYZ level, it's Banque SYZ's good

10     faith in accepting the transfer from Sentry.

11            Going back to the Citibank test.  The first two

12     elements of that test, subjective knowledge and whether that

13     would put a reasonable investor on inquiry notice are not

14     addressed in the complaint, and I don't propose that we can

15     address them here on a motion to dismiss.

16            But the third element, which must be met for the

17     good faith test, is whether a diligent inquiry would have

18     discovered the fraudulent purpose of the transaction.

19            That is purely a hypothetical test.  Would have

20     discovered is hypothetical.  It's not an actual what did

21     they discover.  Obviously if the subsequent transferee had

22     actual knowledge of those securities transfers, of course

23     then they would have knowledge of avoidability of the

24     transfer, of the initial transfer.

25            But here, Citibank is looking at a hypothetical

Page 111

1    test.  And a hypothetical test is not subject to fact

2    discovery.  As the Trustee's claim in his opposition that

3    there are myriad unknown facts critical to opposing a good

4    faith defense is wrong.  It's based on pre-Citibank law,

5    which didn't impose this particular hypothetical test.

6            In this case, the complaint -- I'm going to assume

7    that the first two of two elements of the Citibank test are

8    met.  And the only question is whether the third one.  Here

9    -- assume without admitting of course.

10           However, the complaint here includes new --

11   numerous allegations about whether a diligent inquiry would

12   have discovered the fraudulent purpose of the transfer from

13   Sentry to Banque SYZ.

14           So the third element can be addressed now.  The

15   complaint effectively alleges that if an investor had

16   conducted a diligent inquiry of Sentry, it would have found

17   -- it would not have found a fraudulent purpose in Sentry's

18   making the redemption payments.

19           Section 7.E of the Fairfield amended complaint,

20   which is incorporated by reference, of course, we're

21   assuming the incorporation is adequate for these purposes,

22   but we still maintain the Court should not permit the

23   incorporation.  But if it is incorporated, Section 7.E is

24   headed, quote, the defendant's deceive their investors.

25   These are the Fairfield defendants.  And it goes on for 12

Page 112

1    paragraphs detailing the grave extent to which Sentry's

2    management prevented any investors from discovering anything

3    about Sentry's operations.

4            I've already addressed the third element,

5    knowledge avoidability which should be tested at the initial

6    transfer level.  And in this case, there's no basis to

7    conclude that Banque SYZ could -- even could have known

8    about -- sorry, let me say that again.

9            There's no basis that Banque SYZ could even have

10   known about the avoidability of the initial transfers

11   because the Trustee doesn't even -- because there's no

12   allegation that the Trustee -- I'm sorry.  I'm going to take

13   a breath, Your Honor.

14           THE COURT:  Go ahead.  But let me just ask you a

15   question then while you're taking a breath.  Are you saying

16   that good faith is to Fairfield and knowledge is to BLMIS,

17   is that what you're saying to me?

18           MR. LEVIN:  That's what 550(b)(1) says, good faith

19   -- took the transfer in good faith.  Where did the transfer

20   come from?  It came from the initial transferee, not from

21   the debtor.  Took the transferee in good faith.

22           THE COURT:  Okay.

23           MR. LEVIN:  And took the transfer without

24   knowledgeability of the transfer avoided, which is the

25   initial transfer.  So the statute itself distinguishes

1    between those two steps in the process.  And that's what I'm

2    saying.

3              And here, the complaint does not allege that

4    Banque SYZ even could have known about the initial

5    transfers, that the Trustee alleges, let alone that they

6    might be voidable.  So that third test is satisfied for the

7    affirmative defense.

8              Your Honor, I'll go on for just briefly one

9    additional issue.  Even if good faith is tested by whether

10   Banque SYZ was in good faith with respect to Madoff.  That's

11   not what the statute says, but I'm sure that's the Trustee's

12   position.  That -- the statute requires actual knowledge,

13   not inquiry knowledge, not good faith, actual knowledge of

14   the voidability.

15             But if we assume otherwise that the good faith

16   applies at the initial transfer level, the complaint again

17   sets forth allegations to show that the -- Banque SYZ could

18   not have determined the fraudulent purpose of the transfers

19   as the Citibank case says.

20             Suppose for example, the Trustee had alleged in

21   his complaint that BLMIS was such an expert at concealing

22   his fraud that no one, no matter how expert an investigator

23   could have gotten through the web of lies and deceit to

24   discover the fraud.  That would surely meet the Citibank

25   good faith test by establishing the diligent inquiry by the

1    defendant could not have discovered the fraud.

2              Now, we're not saying that the Trustee made such

3    categorical statements in his complaint, no.  He did not.

4    Rather, he alleged that a thorough investigation by both an

5    independent hedge fund research and advisory firm and by the

6    SEC with its greater investigatory powers and subpoena

7    powers and regulatory powers did not discover the fraudulent

8    purpose of the transfers.  And that's very close to saying

9    the same thing.

10             So on that basis, we believe that even if the good

11   faith is tested at the initial transfer level, rather than

12   knowledge avoidability being transferred at the initial

13   transfer level, that the affirmative defense is satisfied.

14             Finally, Your Honor, and I appreciate your

15   patience, I'd like to move on to personal jurisdiction.

16             THE COURT:  Okay.

17             MR. LEVIN:  Again, I want to adopt Mr. Fourmaux's

18   points with respect to imputation and with respect to the

19   subscription agreements on personal jurisdiction.

20             But let me start by saying that the complaint, any

21   complaint must contain specific allegations sufficient to

22   make it plausible that the Court has specific personal

23   jurisdiction over the defendant.  It's not enough for the

24   plaintiff alleging conclusory terms, only the defendant had

25   minimum contacts or that defendant purposefully availed

Page 115

1    itself of the laws and protections of the United States, in

2    the hopes that those allegations would permit discovery that

3    might reveal a basis for personal jurisdiction.  Iqbal and

4    Twombly made clear, conclusory allegations are not

5    sufficient.

6           Here, with respect to the alleged subsequent

7    transfers, the Trustee alleges little more than that.  In

8    paragraph 6 of the complaint, he says only, Banque SYZ

9    knowingly directed funds to be invested with New York based

10   BLMIS through Madoff feeder funds and Banque SYZ knowingly

11   received transfers of customer property from BLMIS by

12   withdrawing money from the feeder funds.

13          Now, those are conclusory allegations, especially

14   Banque SYZ knowingly received customer property from BLMIS

15   by withdrawing.  That is a complete conclusory allegation,

16   no sufficient detail for that.

17          And therefore, they're inadequate.  Their

18   formulaic recitation of the elements of personal

19   jurisdiction devoid of the specific facts necessary to

20   support them.

21          Now, I know Mr. Cremona filed the declaration, in

22   which he makes numerous other allegations, which are not

23   referenced in the complaint.  And as we pointed out in our

24   papers, one may not amend the complaint by an opposition to

25   a motion to dismiss.  If the Trustee needs to amend the

1    complaint, it should be through a proper amendment of the

2    complaint.

3            But, second, even if these allegations, these

4    broad conclusory allegations were true, the first allegation

5    would not support specific personal jurisdiction.  And now I

6    go back to what I said in my opening remarks, Your Honor.

7            Banque SYZ invested in Sentry, a non-US legal

8    entity, not in BLMIS.  Sentry did not invest with or in

9    BLMIS, at least it intended to invest in U.S. securities

10   using BLMIS as its broker dealer and Banque SYZ invested

11   only in Sentry, not BLMIS.

12           And the only reason we're here today is because

13   BLMIS reached its agreement with Sentry to invest in U.S.

14   securities resulting in this SIPA proceeding.  It -- but it

15   must be the defendant's activities that give rise to

16   personal jurisdiction.  The mere fact that Madoff breached

17   its agreement and defrauded thousands of people does not all

18   of a sudden make Banque SYZ subject to personal jurisdiction

19   in this matter.

20           And I want to mention, Your Honor, Judge

21   Bernstein's decision in what we refer to as Fairfield 1,

22   which is the August 6th, 2018 decision.  He ruled that the

23   Sentry investors, including Banque SYZ, which was a party to

24   that proceeding were not subject to personal -- specific

25   personal jurisdiction in New York in an action by their

Page 117

1    counterparty, the Sentry fund itself, the party that Banque

2    SYZ had contracted with on account of their investments in

3    Sentry.

4              Said, the subscription agreement was not enough

5    and that was the agreement under which the investment was

6    made and was the basis -- I'm sorry, that was the basis on

7    which the investment was made.

8              And here, the Sentry Fund itself, through its

9    liquidators, the counterparty that Banque SYZ tried to sue

10   Banque SYZ in New York and Judge Bernstein said wait a

11   minute, your investment in Sentry through the subscription

12   agreement is not an inadequate basis for jurisdiction in New

13   York, for recovery of the redemption payments that Sentry

14   made to its investors.  There would have to be another

15   basis.

16             If the -- Banque SYZ' counterparty could not sue

17   Banque SYZ in New York on personal jurisdiction on account

18   of those investments, how is it that Sentry's counterparty

19   in which BLM -- in which Banque SYZ had no connection or no

20   relationship.  How could it sue, or through its Trustee sue

21   on personal jurisdiction in New York?  So we think the

22   Fairfield 1 decision supports our argument.

23             Now, this complaint different from the Multi-

24   Strategy complaint --

25             THE COURT:  Okay.  Just let me mention one thing.

Page 118

1          MR. LEVIN:  Yeah.

2          THE COURT:  We haven't determined personal

3     jurisdiction in Fairfield yet, so.

4          MR. LEVIN:  Correct.  What he has said is, that

5     the investment through the subscription agreement is not

6     adequate, there has to be some other basis.

7          THE COURT:  Okay.  Because that's an open issue in

8     Fairfield.

9          MR. LEVIN:  Yes, it is.  And my point here, Your

10    Honor, is simply to say that the BLI case which has been

11    argued back and forth, this seems contrary to that, because

12    the subscription agreement made clear through the offering

13    memorandum that the funds that Sentry received from its

14    investors would be invested in U.S. securities in New York.

15         So that fact was very much before Judge Bernstein

16    and he ruled that that was not enough.  So at best, that --

17    and that is with full knowledge of the BLI decision and he

18    ruled that way anyway.

19         So we think that is -- and that -- we think that

20    is good law here and Banque SYZ was a party to that

21    proceeding.  I know the Trustee wasn't, but Banque SYZ was

22    and we think that's the -- should be the law in this case.

23         THE COURT:  We're talking about purposeful

24    availment, we're not talking about contract (indiscernible)

25    so.

Page 119

1              MR. LEVIN:  Well, the purposeful -- agreed,

2       agreed.  The purposeful availment alleged here is the

3       contract.  They use the contract to purposefully avail

4       themselves of investment in U.S. securities.  But Banque SYZ

5       never invested in U.S. securities, it invested in Sentry.

6              You know, any -- you know, let's go back to my

7       broker at Charles Schwab.  If I invest in -- let's say I'm a

8       foreign investor and I invest in a foreign mutual fund and

9       that foreign mutual fund signs up with Charles Schwab to

10      make investments and Schwab steals the money, that doesn't

11      mean the investors in that fund all of a sudden became

12      subject to U.S. jurisdiction simply because they knew that

13      their fund, or their company, their industrial company,

14      their financial company, whatever, would make investments in

15      the United States, even though they knew they would make

16      investments in the United States.

17             Now, the fraud, Madoff's fraud does not all of a

18      sudden bring Banque SYZ into the United States when it was

19      separated by Sentry, so.

20             THE COURT:  As you've already said, that alone

21      maybe is not enough.  Okay.

22             MR. LEVIN:  Right, okay.

23             THE COURT:  I heard you.

24             MR. LEVIN:  Now, the complaint alleges one other

25      basis for personal -- specific personal jurisdiction over

Page 120

1    Banque SYZ, that it opened the ISOS fund account at BLMIS.

2          That too is inadequate.  Specific personal

3    jurisdiction relates only to the transaction that is the

4    subject of the litigation.  The ISOS account was opened

5    after the transactions alleged in the complaint.  You can't

6    retroactively create personal jurisdiction with respect to a

7    transaction.

8          And, in fact, the cases we cite make clear and the

9    Supreme Court has made clear, that you look at this on a

10   transaction by transaction basis, but there are two cases

11   that we cited involving -- the one case, two separate

12   contracts between the same counterparties.  And the Court

13   looked at personal jurisdiction with respect to each

14   contract independently.

15         It didn't say, I mean, let's assume a

16   hypothetical.  A New York party contracts with Swiss party

17   on contract A, and a little while later, contracts with

18   contract party -- I'm sorry, contracts in New York on

19   contract day and a little while later contracts in

20   Switzerland on contract B.  And a dispute arises over

21   contract B.

22         The cases say that the New York courts would not

23   have specific personal jurisdiction with respect to contract

24   B which was all done in Switzerland, even though contract A

25   was done in New York by the same parties.  And we cite the

Page 121

1    cases to that effect.  So that's one point.

2           And here the account was opened later, so it can't

3    relate back.  And it's not enough to just say, oh, well,

4    this all relates to BLMIS, you know, it's all Madoff, and

5    therefore, it's the same thing.  No, it's transaction by

6    transaction as those cases show.

7           Now, in addition, the papers show the allegations

8    are that Banque SYZ opened the account as an agent for ISOS

9    fund, not in its -- it used its name, but it used its name

10   as agent, it said the account state -- the account name is

11   Banque SYZ reference ISOS.  And then it's filed with BLMIS,

12   an IRS form that says we are not opening this account in our

13   own name or opening it as an agent for a third party.

14          So the documents were clear about that.  And that

15   too is another reason why the opening of the ISOS account is

16   not adequate for specific jurisdiction over the prior

17   initial and subsequent transfers alleged in the complaint.

18          So the Trustee says, ah, but Banque SYZ filed a

19   proof of claim in this case for ISOS.  And the ISOS proof of

20   claim equally makes clear that it was filed as agent for

21   ISOS fund.

22          And as we explained in our memorandum, SIPA itself

23   and the SIPC rules say that where a party holds an account

24   as an agent, it is to be distinguished from any account in

25   its own name.  And here it was clear that Banque SYZ was an

Page 122

1       agent for ISOS fund and therefore should be distinguished.

2              So -- and that takes me to the last point which is

3       Count II of the complaint, Your Honor, the disallowance of

4       the ISOS claim.  The Trustee makes no allegations of any

5       transfers to ISOS fund, makes no allegations of anything

6       wrong with the ISOS fund claim.

7              The only basis for disallowance of the claim is

8       502(b) based on transfers to its agent Banque SYZ and SIPA

9       and the SIPC rules as we cited make clear that that's not

10      enough, and therefore, the Count II should be dismissed and

11      the ISOS claim should be allowed.

12             Open to questions, Your Honor, otherwise I've

13      concluded.

14             THE COURT:  I think I through them out as you were

15      going along.

16             MR. LEVIN:  Great.

17             THE COURT:  Mr. Cremona.

18             MR. CREMONA:  Thank you, Your Honor.  I guess it's

19      good afternoon at this point.

20             THE COURT:  I guess we made it to that, yes.

21             MR. CREMONA:  I intend to focus on defendant's

22      arguments made on reply and as stated here today, and also

23      to establish similar ground rules at the outset for

24      completeness of the record on the matter, I would

25      incorporate the arguments made by my colleague Mr. Feil

Page 123

1    concerning 546(e) and its inapplicability to the instant

2    action, as he just argued in the Multi-Strategy case 12-

3    01205, as well as the plausibility of the Trustee's

4    allegations that the transfers in these cases are comprised

5    of stolen customer property.

6            I'll do my best, Your Honor, to supplement those

7    points, only to the extent that Mr. Levin has augmented his

8    colleague's points.  Likewise, I would incorporate the

9    arguments and the relevant precedence argued by my colleague

10   Mr. Friedman concerning the appropriateness of this Court's

11   exercising personal jurisdiction over this defendant.  And

12   will likewise do my best only to supplement those arguments

13   to the extent specific issues have been raised by Mr. Levin

14   and to address the specific facts of this case.

15           THE COURT:   (indiscernible) you and Mr. Levin for

16   that, it actually keeps my mind a little clear, so I

17   appreciate that, thank you.

18           MR. CREMONA:   Thank you, Your Honor.  With that

19   background I will proceed.

20           Again, while your -- while the defendant today has

21   made many arguments in an effort to retain that stolen

22   customer property to the detriment of the net loser victims,

23   those arguments are belied by the plausible allegations in

24   the complaint, involve questions of fact that are not

25   appropriate for determination on a motion to dismiss, and in

Page 124

1    any event, must be rejected as based on the law of this

2    case.

3           And I'll take the arguments in the order that Mr.

4    Levin just made them.  First, the defendant maintains that

5    the Trustee has failed to plausibly allege the avoidability

6    of the initial transfers by incorporating the allegations

7    relating to Fairfield's actual knowledge, as alleged in the

8    Fairfield amended complaint, which is set forth at paragraph

9    63 in the complaint in this case.

10          The defendant argues that would violate Rule 10(c)

11   and Rule 8 and I would submit, Your Honor, that is wrong for

12   a number of reasons, including that the defendant expressly

13   conceded that point in multiple ways in his brief, and in

14   fact, just now we heard him rely on those same allegations

15   multiple times in his presentation.

16          And just briefly, Your Honor, as set forth in our

17   papers, the incorporation by reference is totally

18   appropriate under Rule 10(c), relying on the Geiger case,

19   which is at 446 B.R. 670.  It's directly on point, despite

20   the arguments made in reply that permitted the incorporation

21   by reference under 10(c) of pleadings in a different

22   adversary proceeding within the same liquidation, because it

23   was under the umbrella of the debtor's bankruptcy case.

24          I would submit, Your Honor, the facts here are

25   identical.  We have the umbrella of the SIPA liquidation and

Page 125

1    multiple adversary proceedings within that case.

2              Next, Your Honor, again briefly we cited to the

3    district court's decision in the 550 consolidated proceeding

4    in our papers.  And there, the district court already found

5    that incorporation by reference in the exact same manner,

6    mainly as set forth in paragraph 63 through 65 in the

7    instant complaint, was entirely appropriate when it reviewed

8    a nearly identical complaint and determined that Section

9    550(a) only requires the Trustee to show that the transfer

10   he seeks to recover is avoidable in each recovery action and

11   found sufficient the Trustee's incorporation by reference of

12   the then operating Fairfield complaint.

13             I would also point out that Banque SYZ

14   participated in that proceeding before the district court,

15   they're listed in the exhibit of all participating

16   defendants, which is at 12MC115 Docket No. 314 at entry No.

17   15 on page 10 of 15.

18             Despite defendant's participation in that

19   proceeding, it somehow challenges the application in effect

20   of that decision in their reply.  They claim it doesn't

21   apply because it only was applied to a quote/unquote

22   representative case, which is at their reply on page 2.

23             However, the Court specifically noted that all the

24   participants to that proceeding were alleged to have

25   received avoidable transfers from Fairfield and Kingate just

Page 126

1    like SYZ here, and the Court was determining whether the

2    Trustee had alleged -- adequately alleged the initial

3    transfers of Fairfield as avoidable based on the same

4    allegations incorporated here before the Trustee could

5    recover from the participating defendants there, like SYZ.

6           And so I would submit, Your Honor, that that

7    decision which is 501 B.R. 26 is law of the case and clearly

8    binding on this precedent, who participated in that

9    proceeding.

10          Moreover, regardless of the incorporation, Your

11   Honor, the Trustee submits that you can take judicial notice

12   of Your Honor's decision finding that the Fairfield second

13   amended complaint sufficiently alleges the avoidability of

14   the initial transfers.

15          That was previously determined by Your Honor at

16   2021 Westlaw 3477479.  And I would point out, while Mr.

17   Levin in his reply tries to distinguish the cases that we

18   relied upon, our case here is even stronger.

19          And it's an important distinction that makes our

20   request stronger under the cases, is that we incorporated

21   the complaint at issue expressly by reference at paragraph

22   63 of the operative complaint.

23          And, you know, providing the defendants with the

24   requisite notice they claimed they didn't have.  They've

25   been on notice of the incorporated allegations for over 11

1    years, since we filed our complaint in this action in May of

2    2011.

3            The other Courts were relying on permitted

4    incorporation on a different subsequent complaints, based on

5    requests after the fact, and still took judicial notice

6    generally pursuant to Federal Rule of Evidence 201(b).

7            So -- but again putting aside the appropriateness

8    of the incorporation, beyond what Mr. Levin conceded here

9    today on the record, I would refer Your Honor to his

10   declaration which is at ECF No. 151.  As he said, it's his

11   declaration and request for judicial notice.

12           He specifically in that document requests that

13   this Court take judicial notice of the Fairfield amended

14   complaint and the second amended complaint at Exhibits B and

15   D respectively to his declaration.  And he notes, quote, the

16   allegations in the complaint are incorporated by reference

17   in a complaint are assumed to be true for purposes of a

18   motion to dismiss under Rule 12(b)(6).  That's ECF No. 151

19   at page 5.

20           So I find it interesting that Mr. Levin objects to

21   this Court's ability to take judicial notice of its own

22   decision finding that the trustee plausibly alleged

23   Fairfield's actual knowledge, while simultaneously asking

24   this Court to take judicial notice of the very same

25   complaint.

1          I submit, Your Honor, that the defendant cannot

2     maintain these contradictory positions.  Likewise,

3     defendant's argument that it is unable to respond to the

4     allegations establishing Fairfield's actual knowledge as

5     incorporated by reference in the complaint herein is belied,

6     I would say again in the first instance by what Mr. Levin

7     said today in reciting those very same allegations, but also

8     by his acknowledgement in his reply that the allegations in

9     that complaint sufficiently allege the avoidability of the

10    initial transfers based on Fairfield's actual knowledge.

11          In his reply at page 2, he states, Banque SYZ does

12    not claim that the Fairfield amended complaint

13    insufficiently alleges avoidability of the initial transfers

14    and admits that the Court in Fairfield, quote, concluded

15    that the operative complaint alleged that the various

16    initial transferees, including Sentry, had actual knowledge

17    of BLMIS' fraud.  That's at the reply at page 6.

18          Again, Your Honor, on the one hand defendant

19    claims it does not know which allegations concerning

20    Fairfield's actual knowledge have been incorporated and that

21    it must respond to, but at the same time, he can readily

22    ascertain from reviewing those same allegations that the

23    Trustee has plausibly alleged actual knowledge.  Again, I

24    submit that the defendant cannot credibly maintain both

25    positions.

1          And for these reasons, I submit that the

2     incorporation of the Fairfield amended complaint by

3     reference is entirely appropriate and plausibly alleges the

4     avoidability of the initial transfers.

5          Unless Your Honor has any questions, I'll move on

6     to my next topic.

7          THE COURT:  Please, go ahead, thank you.

8          MR. CREMONA:  Next, Banque SYZ as we heard Mr.

9     Levin today assert that its good faith and value defenses

10    are established on the face of the complaint.  They are not.

11         First, by their very nature affirmative defenses

12    under Section 550(b) are fact driven, requiring a factual

13    analysis and a presentation of evidence.  That sort of

14    factual analysis is not appropriate at this stage of the

15    litigation, particularly with respect to a good faith

16    defense.

17         In their reply papers, again defendant -- they

18    first argue that its value defense under Section 550(b) is

19    established somehow in the face of the complaint.  However,

20    as much as the defendant tries to avoid this Court's finding

21    in Your Honor's Fairfield decision, Your Honor previously

22    held, quote, as to whether the defendants gave value in the

23    form of surrendering shares in the Fairfield funds, such a

24    determination could not be made as a matter of law or fact

25    at this stage, end quote.  That's at 2021 Westlaw 3477479 at

1    page 8.

2              Excuse me, Your Honor.  Similarly, defendants

3    argue that its good faith defense has also been established

4    on the face of the complaint.  That is also not the case.

5              The Trustee submitted a recent decision from the

6    district court, Picard v ABN Ambro which is at 20 CID 2586

7    and it was decided on May 2, 2022.  We submitted that

8    supplemental authority, Your Honor, because it was issued

9    after the close of briefing in this matter.  I submit to

10   Your Honor, this is dispositive of this good faith issue and

11   this affirmative defense.

12             In that case, as here, the appellees asked the

13   bankruptcy court to determine that the Section 550(b) good

14   faith defense appeared on the face of the complaint and

15   rendered the Trustee's claim subject to dismissal.

16             The district court held that a good faith -- that

17   the good faith -- excuse me, that good faith is an

18   affirmative defense, that the similarly situated defendants

19   bear the burden of proving and that the Second Circuit made

20   clear in its decision in Citibank that the inquiry notice

21   standard requires quote, a fact intensive inquiry to be

22   determined on a case by case basis which naturally takes

23   into account the disparate circumstances of differently

24   situated transferees.  And they cited to Citibank.

25             The Court noted that such a fact based

Page 131

1    determination can only be made on the entirety of the

2    factual record after discovery which has not occurred here,

3    noting that good faith inquiry notice -- the good faith

4    inquiry notice standard is difficult to resolve even at the

5    summary judgment stage, much less at the pleading stage.

6           So, Your Honor, for those reasons, I submit that

7    these defenses should be rejected as directly overruled and

8    the motion denied.  Again, unless Your Honor has questions

9    on that, I'll move forward to the next affirmative defense.

10          THE COURT:  Please, move forward.

11          MR. CREMONA:  Next, Your Honor, Banque SYZ

12   asserted that its 546(e) defense is established on the face

13   of the complaint.  And again, without reiterating all of the

14   arguments previously made, I think I will just try to hit

15   the highlights.

16          As we've said 546(e) by its expressed terms does

17   not apply.  It applies to avoidance not recovery.  As Mr.

18   Levin acknowledged, SYZ was a party to the Cohmad

19   consolidated proceeding and is bound by the ruling.  I would

20   submit that Mr. Levin's reading of the ruling there in a

21   vacuum is just incorrect.

22          As my colleague Mr. Feil went through in detail

23   the second paragraph of that decision, the Court need not

24   get to because once the avoidability of the initial transfer

25   has been established based on the actual knowledge of the

Page 132

1    initial transferee, that ends the inquiry.

2          And I think it's particularly important to point

3    out just briefly again, the Court in BNP, this Court

4    specifically addressed the very same argument as Mr. Feil

5    laid out.  And somehow the defendants don't acknowledge that

6    the very same issue is before this Court and there the Court

7    denied the application of 546(e) and denied consideration of

8    the subsequent transferee's actual knowledge.  And I would

9    submit the same outcome is appropriate here, Your Honor, and

10    that's based on the law of the case in the form of Cohmad

11    and BNP.

12          I'm just -- and then just moving forward, I think

13    the other aspects have been covered.  Unless Your Honor has

14    specific questions, I will move on to customer property.

15          THE COURT:  Great, thank you.

16          MR. CREMONA:  Thank you, Your Honor.

17          So again, in SYZ's reply at page 10, SYZ

18    acknowledges that its central point is that the Trustee has

19    alleged billions of dollars more in subsequent transfers

20    than the initial transfers that -- and that somehow results

21    in the exhaustion of the customer property at issue in any

22    particular case and somehow in this case.

23          First of all, Your Honor, what the defendant is

24    asking you to do is beyond applying an incorrect pleading

25    burden, is also to look beyond the plausible allegations in

Page 133

1    this complaint and consider voluminous materials beyond the

2    four corners of the complaint, including as Mr. Levin said

3    here today, approximately 80 -- the complaints in 80 other

4    actions and look to those pleadings to determine whether the

5    trustee's allegations in this case are plausible.  And I

6    would refer Your Honor to -- that's Mr. Levin's declaration

7    at ECF 151 at Exhibit 1.

8            And that's simply inappropriate, Your Honor, on a

9    motion to dismiss because this Court is confined to the four

10   corners of this complaint to make that determination.

11           And in the first instance, this Court acknowledged

12   that the Trustee is entitled to sue multiple subsequent

13   transferees to recover the same customer property until he

14   has been fully satisfied.

15           The fact that the Trustee sued numerous defendants

16   to recover a portion of the same $3 billion and the

17   aggregate demand amounts against those subsequent transfer

18   -- in those subsequent transfer of cases exceed that amount

19   is totally unremarkable and entirely consistent with the law

20   of this liquidation.

21           In fact, Your Honor acknowledged in your Fairfield

22   decision that quote, the Trustee may recover avoided

23   transfers from an initial transferee or a subsequent

24   transferee and need not seek recovery first from the initial

25   transferee.

Page 134

1          And while recognizing that the Trustee is limited

2     by Section 550(d) to only a single satisfaction of an

3     avoided transfer, Your Honor noted that whether the Trustee

4     had been fully satisfied is an issue to be determined at a

5     later stage of this litigation.  And that's Your Honor's

6     decision at 2021 Westlaw 3477479 at page 10.

7          Likewise, the Court in Merkin, this Court in

8     Merkin provided a similar illustrated example and that shows

9     that the -- that really shows that the defendant's charts

10    attached to Mr. Levin's declaration and all the arguments

11    about mathematical impossibility are irrelevant and

12    premature.

13         There, the Court stated an example and said, for

14    example, if an initial fraudulent transfer of $1 is

15    subsequently transferred ten times from transferee one to

16    transferee two from two to three and three to four, et

17    cetera, the Trustee can sue each transferee for $1.  For

18    this reason, the aggregate subsequent transfer claim can

19    greatly exceed the amount of the initial transfer.

20         Nevertheless, the Trustee is entitled to only one

21    satisfaction under Section 550(d) and in the Court's example

22    can collect no more -- on account -- no more than $1 on

23    account of the initial fraudulent transfer.

24         So, Your Honor, given that the complaint need only

25    plausible allege that some portion of the substantive

1    transfer is comprised of customer property, it is entirely

2    plausible and highly likely that the aggregate demand

3    amounts of all the subsequent transfer cases would exceed

4    the $3 billion in initial transfers to the Fairfield Funds.

5            And that fact in no way supports defendant's

6    faulty logic that through simple arithmetic it can

7    demonstrate that the initial transfers were exhausted on the

8    face of any particular complaint.

9            In fact, in Merkin, even at an individual case

10   level, this Court could not engage in the mathematical

11   exercise that the defendant argues for here because it was

12   unnecessary.  The Court reviewed certain transfers

13   identified in the complaint.  And once it determined that a

14   portion of those subsequent transfers were funded with

15   customer property, that ended the inquiry.  And the Court

16   denied the motion.

17           To be exact, Your Honor, of the nearly 290

18   subsequent transfers at issue in that case, the Court

19   actually focused and analyzed only a handful, less than ten,

20   to determine that the subsequent transfers at issue were

21   comprised of customer property.

22           What the Court did not do was to go on and

23   aggregate all the initial transfers and then determine

24   whether the total subsequent transfers exceeded the total

25   amount of initial transfers.  And that's because the Trustee

Page 136

1    met the standard there, just as he has done here.

2            And now, Your Honor, I would take us through the

3    complaint to demonstrate how the Trustee has met the

4    appropriate standard in this action and how he plausibly

5    alleged that approximately 15 million .9 -- excuse me, 15.

6    million -- $9 million in subsequent transfers are comprised

7    of BLMIS customer property.

8            And just to be clear, the standard and his burden

9    to recover the subsequent transfers, as articulated by this

10   Court in Merkin, he must allege facts that support the

11   inference that the funds at issue originated with the debtor

12   and contained the necessary vital statistics, the who, when,

13   and how much of the purported transfers to establish an

14   entity as a subsequent transferee of the funds.

15           The Court also made clear that the complaint need

16   only support the inference that a portion of the subsequent

17   transfer originated with BLMIS.  Like the instant case, the

18   Trustee is not required to connect each of the subsequent

19   transfers with an initial avoidable transfer emanating from

20   BLMIS or a prior subsequent transfer originating with the

21   initial transfer.

22           So, Your Honor, let's look at the complaint.  The

23   complaint alleges that Banque SYZ received transfers

24   identified by date and amount from Sentry and that Sentry

25   invested substantially all of its funds with BLMIS.  That's

Page 137

1   stated in the complaint at paragraph 63 through 70, Exhibits

2   I, J and K.

3           The complaint likewise alleges that Banque SYZ

4   received transfers identified by date and amount from Sigma

5   and that Sigma invested all of its funds with Sentry and

6   that's at the complaint at paragraph 71 through 74, Exhibits

7   L and M.

8           So Mr. Levin directed Your Honor to his chart at

9   page 33.  I'd like to take another look at that with Your

10  Honor and focus on it for a moment.  And although it seeks

11  to show the implausibility of the Trustee's customer

12  property allegations, I submit it actually demonstrates how

13  the Trustee satisfies his burden.

14          It illustrates that the complete -- excuse me.  It

15  illustrates that the complaint and its exhibits detail the

16  vital statistics and the relevant pathways through which

17  customer property flowed from BLMIS to Sentry and ultimately

18  to the defendant.

19          If you look at the first column it details the

20  dates and amounts totaling $1.315 million that BLMIS

21  transferred to Sentry between May 2003 and March of 2007.

22  And the dates and the amounts of approximately $15.5 million

23  Sentry transferred to the defendant.

24          It clearly shows that the Trustee has alleged that

25  at least some portion of the subsequent transfers Banque SYZ

Page 138

1  received originated with BLMIS.  For example, the May 15,

2  2006 transfer to defendant in an amount of $332,185 occurred

3  shortly after Sentry received a $120 million transfer from

4  BLMIS on April 13th, 2006.

5          Now, I submit, Your Honor, while it is not

6  required at this stage of the case and is beyond what the

7  Trustee is required to plead, the linkage that the defendant

8  claims is so vital to the Trustee's case and lacking in

9  their view on the face of the complaint, is readily apparent

10 based on defendant's own illustration of what is stated in

11 the complaint.

12          It is certainly plausible that some portion of the

13 $120 million transfer from BLMIS to Sentry funded the

14 $332,000 transfer from Sentry to SYZ just over 30 days

15 later.  And, Your Honor, I would submit that alone is reason

16 to deny defendant's motion to dismiss on this point.

17          Unless Your Honor has questions on -- actually,

18 Your Honor, I apologize, I'd just like to rebut something

19 about what Mr. Levin talked about having the documents in

20 our possession and that somehow, you know, we are prejudiced

21 or our claims should be enhanced.

22          That is not the case.  We -- as my colleague Mr.

23 Feil said, we do not have all the documents and what is --

24 the exercise that is ultimately going to be required here is

25 well beyond just reviewing that, bank documents, it goes

Page 139

1    beyond that the Trustee does not have anywhere near complete

2    set of the Fairfield bank records.

3            In addition, the ultimate tracing will involve the

4    relationship between the parties.  We'll rely on records

5    showing SYZ's course of business and how redemptions went

6    from Sentry to SYZ and records which will be produced in

7    discovery.  Those are some of the -- I mean, those are some

8    of the gaps that we have and I just wanted to point that out

9    since we've heard repeatedly today that the Trustee has all

10   the documents it needs to, you know, engage in the tracing

11   exercise, which is inappropriate at this stage in any event.

12           Unless Your Honor has further questions on

13   customer property, I'll move on to the final point which is

14   personal jurisdiction.

15           THE COURT:  Please, go right ahead.  Thank you.

16           MR. CREMONA:  Thank you, Your Honor.

17           Your Honor, I submit that it is appropriate and

18   reasonable for this Court to exercise personal jurisdiction

19   over this defendant based on its extensive contacts with

20   this forum, and purposeful availment of the benefits and

21   protection of this jurisdiction, which contacts this Court

22   has previously held sufficient for purposes of personal

23   jurisdiction.

24           Once more here, this defendant opened an account

25   with BLMIS for purposes of directly investing with Madoff in

Page 140

1    New York and did invest with BLMIS for a period of nearly

2    two years, from March of '07 through December of '08.

3            SYZ then subsequently filed a customer claim

4    related to that direct account and participated in this

5    liquidation proceeding in an effort to recoup asserted

6    losses based on its direct investment with BLMIS, each of

7    which provides this Court with an independent basis to

8    exercise jurisdiction over the defendant beyond the usual

9    minimal contacts that have alone been sufficient under this

10   Court's holding in BLI.

11           So although we've discussed it a fair amount

12   today, I would just briefly, Your Honor, I would like to

13   start with the guiding principles enunciated by Judge

14   Lifland in BLI, where he appropriate -- he appropriately

15   exercised personal jurisdiction over a Fairfield investor

16   under the identical facts to the case here.

17           So Judge Lifland focused on the following facts.

18   BLI signed the subscription agreement with Fairfield that

19   expressly incorporated a private placement memorandum that

20   highlighted the following, the prominent role of New York

21   based BLMIS' investment strategy, that BLMIS would retain

22   custody of at least 95 percent of the funds' assets in the

23   United States, the parties agreed to New York choice of law

24   in forum selection clauses.

25           The agreement required that all subscription

Page 141

1    payments from BLI to Fairfield pass through Fairfield's New

2    York account at HSBC and that BLI's redemption payments from

3    Fairfield were processed through its own New York bank

4    account.

5            So on the basis of the foregoing facts, all of

6    which are present in this case, Judge Lifland held that

7    jurisdiction was appropriate because BLI purposefully

8    availed itself to the benefits and protections of New York,

9    New York laws by knowing, intending and contemplating that

10   the substantial majority of funds invested in Fairfield

11   would be transferred to BLMIS in New York to be invested in

12   New York in the securities market.

13           So, Your Honor, I submit that the facts of the

14   instant case dictate the exact same result.  And while that

15   is enough, I would like to point out some additional bases

16   in our complaint.

17           As stated in paragraphs 38 -- excuse me, as stated

18   in paragraphs 7 and 38 of the complaint SYZ opened and

19   maintained a direct account with BLMIS.  That's account

20   number 1FR126 and used New York banks to transfer funds into

21   and receive monies from BLMIS, including the BLMIS 703

22   account at JPMorgan Chase.

23           In addition, paragraph 24 of the complaint states

24   that Banque SYZ executed the customer agreement and all

25   necessary account opening documents for purposes of its

Page 142

1   account with BLMIS and delivered those documents to the head

2   -- to the New York headquarters.

3          And just before I move on, Your Honor, I want to

4   rebut something that Mr. Levin said.  You know, he talked

5   about extra complaint allegations and all sorts of documents

6   that were attached to our papers beyond the complaint.

7   However, as we cited in our papers it is entirely

8   appropriate for a plaintiff to establish a prima facie case

9   of jurisdiction through affidavits and supporting materials

10  that contain averments of facts outside the pleadings.

11         We cited to a Second Circuit case, 624 F3d 123,

12  these pleadings and affidavits are to be construed in the

13  light most favorable to the plaintiff, resolving all doubts

14  in plaintiff's favor.  Again that's the Queen Bee case,

15  Second Circuit, 616 F3d 158.

16         I would also point that Judge Lifland found

17  exactly the same in BLI when he noted that a Court may

18  resolve disputed jurisdictional facts -- excuse me, the

19  Court may resolve disputed jurisdictional fact issues by

20  reference to evidence outside the pleading, such as

21  affidavits and consider all pertinent documentation

22  submitted by the parties.  And that's BLI, 480 B.R. at 510.

23         And with that, Your Honor, I'll walk through some

24  of the documents that are attached to my declaration, which

25  establish that it was SYZ that opened the account.

Page 143

1           In addition to the allegations at -- my

2    declaration at ECF 164, Exhibit 12, as I said make quite

3    clear that SYZ opened the account on its own behalf.  As

4    you'll see at Exhibit 12, all of the account opening

5    documents were signed by Banque SYZ, including the customer

6    agreement with absolutely no reference to ISOS.

7           Every related account statement was addressed to

8    SYZ with no reference to ISOS for the entire duration of the

9    account.  In the BLMIS customer agreement, which was signed

10   by SYZ, Banque SYZ represented that no other person or

11   entity had an interest in the customer account.

12          BLMIS only communicated with Eric Syz and other

13   Banque SYZ representatives regarding the customer account,

14   and SYZ representative, not ISOS directed the wire transfers

15   into the customer accounts, asked questions regarding

16   purported trades on the statements, and trade confirmations,

17   and all -- and signed all the trading authorizations.

18          I would also just like to rebut something we heard

19   from Mr. Levin.  He referenced the IRS form that was

20   attached to his declaration.  You know, we heard him talk

21   about how that demonstrates that SYZ was acting as an

22   intermediary and not on its own behalf.  And that somehow

23   negates all the documentation that I just recited and which

24   was in the customer account file with BLMIS.

25          He quotes from this form and he did earlier in his

1    presentation.  To that effect, Your Honor, it is not clear

2    to me what this form even shows, but what is clear, is what

3    it doesn't show.

4          The form is mainly blank and does not list the

5    relevant account as its supposed to in line 8.  No where is

6    SYZ's quote/unquote disclosed principal mentioned in this

7    form, and if anything, all it possibly creates is an issue

8    of fact that can only be resolved after discovery, such as

9    who had dominion and control over the funds.

10          There are just a number of issues.  But what's

11   most important, the Trustee when reviewing the debtor's

12   books and records would have no way to know that based on --

13   that this somehow created an account relationship or a

14   customer relationship.  He would have no way to know that

15   when he determined that SYZ was the customer under SIPA.

16          And I would also like to address this agency

17   argument that is now being espoused by Mr. Levin here today.

18   And really for the first time on reply.  No such agency

19   argument was made in the motion.

20          SYZ mentioned only that, quote, it opened the

21   account for ISOS with BLMIS on or around March 7, 2007 and

22   that's at the motion at page 38.  And that SYZ opened the

23   BLMIS account in a custodial capacity for its customer ISOS.

24          For the first time on reply, SYZ contends that it

25   acted as an agent for ISOS when it filed the claim and it

Page 145

1    opened the BLMIS account in its own name, devoting three

2    pages to the point in its reply at page 14 through 16, now

3    claiming their relationship is quote/unquote agency in a

4    nutshell.  None of this was in the motion to dismiss, Your

5    Honor.

6            So in the first instance, I would ask Your Honor

7    to disregard this argument in its entirety because it was

8    asserted for the first time on reply.  And if Your Honor is

9    inclined I'm happy to provide some authority that argument

10   is first raised in the reply, should not be properly

11   considered, since this is the first time we've had an

12   opportunity to respond to it.

13           THE COURT:  Mr. Levin, what say you?

14           MR. LEVIN:  Your Honor, I would have to go through

15   on the fly right now, and detail the Trustee's allegations

16   on jurisdiction in his opposition.  He's -- this argument

17   about agency was made specifically in reply to the Trustee's

18   allegation about who the customer was in this account.

19           And we said the documents that Mr. Cremona

20   submitted made clear that it is an agency account.  And

21   therefore, I think it is proper in the reply, it's not like

22   we just made this up.  We came to this late.

23           We made the arguments we did on jurisdiction in

24   the initial proceeding.  Again, I'm going to have to --

25           THE COURT:  Mr. Cremona, I'll tell you what, we're

Page 146

1    going to make it very narrow.  You file your brief on the

2    very, very narrow issue of the ones which you think he --

3    that Mr. Levin brought up today, and Mr. Levin, then you

4    reply to that.

5              MR. LEVIN:  Thank you, Your Honor.

6              THE COURT:  So --

7              MR. LEVIN:  (indiscernible) for that?

8              MR. CREMONA:  I mean, Your Honor, I -- Your Honor,

9    I'm also happy to respond as well on the agency point and I

10   have authority to that effect which I can do right now as

11   well.

12             THE COURT:  Five pages each.  Make it short and

13   simple.

14             MR. LEVIN:  Yeah, Your Honor, I think what you

15   were referring to was the agency point which Mr. Cremona is

16   addressing.  Was there something else that Mr. Cremona --

17             THE COURT:  Mr. Cremona, are we missing something?

18             MR. CREMONA:  Well, Your Honor, I was -- what I

19   said is I'd be inclined to provide you with the authority on

20   agency as well that it's premature and inappropriate on a

21   motion to dismiss, which I'm happy to do right now.

22             THE COURT:  No, I thought we were only dealing

23   with what Mr. -- I thought the only thing we were dealing in

24   right now and, Mr. Levin, I heard you, but we're dealing

25   with supposedly you brought up a defense in oral argument

1    and Mr. Cremona says that I shouldn't be ruling on that or

2    not ruling on it, it shouldn't be allowed.  It was a very

3    narrow issue.  Mr. Cremona --

4              MR. CREMONA:  Sure.

5              THE COURT:  -- am I right?

6              MR. CREMONA:  Just to be clear, Your Honor, and I

7    don't want to confuse matters.  What I'm saying is, in Mr.

8    Levin -- in the defendant's motion to dismiss they made

9    perhaps two line references to a purported agency

10   relationship, they never made an argument that they were the

11   agent.  They said they were -- they filed -- they did --

12             THE COURT:  You were making a legal argument about

13   something, so I don't need to go into that detail.  I just

14   want the memo on the legal arguments you made, and Mr.

15   Levin, your response to that legal argument.  You can point

16   to it and do you need memos on it?  Is this with ISO?

17             MR. CREMONA:  It is, yes, Your Honor, and I guess

18   the specific narrow issue is whether or not it's appropriate

19   to consider an argument that was raised for the first time

20   on reply.

21             MR. LEVIN:  Your Honor, I'm trying to understand

22   here whether --

23             THE COURT:  I am too because let me tell you, Mr.

24   Levin, I'm really wanting to get this opinion out.  We've

25   got so many more in the queue, I want to get this one out

1    quickly.

2            MR. CREMONA:  Your Honor, I'm happy to move

3    forward.

4            THE COURT:  Okay.

5            MR. CREMONA:  I think I'd just like to make my

6    next point which I think resolves the issue.

7            THE COURT:  Okay.

8            MR. CREMONA:  So even if the Court was inclined to

9    consider defendant's agency argument which are beyond the

10   allegations in the complaint, I think they should be

11   disregarded in any event, because the scope of an agency

12   relationship is a question not properly resolvable on a

13   motion to dismiss.  That's a fact intensive inquiry and

14   that's clear in the law in this circuit.

15           THE COURT:  Okay.  Let's leave it there then.  I

16   don't want memos.

17           MR. CREMONA:  Understood.  Thank you, Your Honor.

18   So with that, I would conclude this by saying, SYZ's direct

19   account and investment with BLMIS provides yet another

20   significant contact and conduct establishing a clear New

21   York nexus in favor of this Court exercising personal

22   jurisdiction over this defendant.

23           And there is one final independent basis for

24   jurisdiction here.  That is, Your Honor, that SYZ filed the

25   customer claim on its own behalf.  And looking to the

Page 149

1    complaint, the complaint adequately pled that SYZ filed the

2    customer claim in the SIPA proceeding seeking to recover

3    funds it allegedly lost on its investment in BLMIS, which

4    has not been -- yet been determined, whereby it submitted to

5    this Court's jurisdiction.  And that's alleged at paragraph

6    883 and 93 of the complaint.

7            And what I would say, Your Honor, is that SYZ's

8    reliance on the claim form itself does nothing to undermine

9    these well pleaded allegations.  The fact remains that the

10   end notes in the claim form do not change that the claim was

11   signed by SYZ and filed on its behalf, nor does it

12   retroactively change the account opening documents and all

13   the course of dealing directly with BLMIS as the direct

14   account holder, the very account the claim relates to.

15           The filing of that claim and SYZ's active

16   participation in the claims process seeking the benefit from

17   the Trustee's recoveries in this liquidation most certainly

18   confer this Court with jurisdiction on that independent

19   basis.

20           That claim remains outstanding and will be

21   appropriately resolved within this adversary proceeding

22   pursuant to the 502(d) count.

23           And just to rebut something that Mr. Levin said

24   that somehow the claim does not relate to this adversary

25   proceeding, it most certainly does.  The claimant is SYZ, by

Page 150

1    operation of law, 502(d) applies to that and it will be

2    resolved as part of this adversary proceeding.

3          And as a result, by the way, that confers this

4    Court with final adjudicated authority over the action under

5    the principles of Katchen v Landy and the other related

6    cases cited in our papers.

7          Lastly, Your Honor, I would just turn to the

8    plausibility of the allegations regarding the 502(d) count.

9    The complaint plausibly alleges that Banque SYZ filed the

10   customer claim on its account and received stolen customer

11   property, therefore, the customer claim must be denied

12   pursuant to 502(d).

13         Again, looking at the complaint, the Trustee

14   adequately pled that the customer claim should be

15   temporarily disallowed pursuant to 502(d) at paragraphs 83

16   and 93 through 94.  And having alleged that SYZ is the

17   customer with a direct account with BLMIS, that it filed the

18   related claim for its own account is the recipient of

19   avoidable and recoverable transfers of customer property.

20   And has yet to return those transfers to the Trustee, it

21   follows that the claim must be disallowed as a matter of

22   law.

23         For all those reasons, Your Honor, Banque SYZ's

24   motion to dismiss Count II should be denied and the customer

25   claims should be disallowed.

1                THE COURT:  Very good.  Mr. Levin.

2                MR. LEVIN:  Thank you, Your Honor.  And I'd like

3       to start where Mr. Cremona did on a point of personal

4       privilege, with his remark that I was making arguments so

5       that my client could retain stolen customer property.  I

6       don't think that's quite appropriate in a court like this

7       and I'll move on.

8                THE COURT:  It was an editorial comment and I

9       know, so move on.

10               MR. LEVIN:  First, he says -- I'll take the

11      arguments in the order he gave them.  He said that we

12      conceded that incorporation by reference was appropriate in

13      this case because several of our arguments with affirmative

14      defenses relied on the allegations of the Fairfield amended

15      complaint.

16               But in fact, on page 15 of our motion, if I can

17      turn to that, on page 15 of our motion we specifically said

18      if this Court denies our motion with respect to Rule 8(a)

19      and 10(c) then we will address what's in the Fairfield

20      amended complaint.  That's on 15 to 16.  So we have not

21      conceded that it is appropriate.

22               Second, Mr. Cremona relied on the Geiger case,

23      which we both cited in our papers, saying that the

24      incorporation by reference from one adversary proceeding to

25      another adversary proceeding was appropriate.

1          We disagree with that ruling but we understand

2     that.  But the important point here is even if the Court

3     were to accept that position, Geiger struck the

4     incorporation by reference because the incorporated

5     complaint did not contain a short and plain statement of the

6     grounds entitling the plaintiff to relief.

7          So I'm happy to have him rely on Geiger, because

8     that's exactly the facts of this case.  He says the district

9     court found that incorporation by reference was appropriate,

10    we addressed that in our papers.  I'm not going to go over

11    it in detail.

12         He says that the judicial notice of a decision is

13    appropriate.  Sure.  But it's not what they're alleging.

14    It's -- they're trying to say that the Court decided

15    something and therefore that's our allegation, but it's not

16    in the complaint.  So, you know, we address that in our

17    papers.

18         And I never claimed that the Trustee has not

19    alleged actual knowledge by Sentry.  I recognize the Court's

20    decision in the Fairfield Investment Fund case, that the

21    Court held that the Fairfield second amended complaint, not

22    the first one that's incorporated in ours, but that's okay,

23    I'll give a little -- I have a little give on that one.

24         But the second amended complaint adequately

25    alleged actual knowledge.  I'm not challenging that here.

1    So I don't know where Mr. Cremona got that statement from.

2            That's -- let me move on to Section 550(b), the

3    good faith defense.  He says that a fact driven issue, but

4    as I pointed out, the Citibank decision makes that purely a

5    hypothetical case.  And to the extent that Judge McMahon's

6    opinion in BNP suggests otherwise, it doesn't really grapple

7    with the issue, instead falling back on what we would

8    consider a more common pre-Citibank understanding of the

9    term good faith, which looks at what the defendant might or

10   might not have known or thought.

11           Moving on to 546(e).  Let's see.  There are -- if

12   you look at the potential actual knowledge of an initial

13   transferee and a subsequent transferee, there are four

14   possibilities of actual knowledge that Madoff wasn't traded

15   securities.

16           Initial transferee knew, subsequent transferee

17   knew.  Initial transferee knew, subsequent transferee didn't

18   know.  Subsequent transferee knew, initial transferee didn't

19   know.  You know, you can make a matrix of these.

20           Judge Rakoff addressed only the initial transferee

21   knew whether or not the subsequent -- I'm sorry.  The

22   initial transferee knew and the subsequent transferee knew

23   and he addressed initial transferee was innocent and

24   subsequent transferee knew.

25           He didn't address the initial transferee knew and

1    subsequent transferee did not know.  But all the language in

2    his complaint -- in his opinion suggests that the protected

3    securities market that transaction should be protected and

4    that's what we've got here.

5           I also pointed about the -- okay.  Nothing further

6    on that.

7           Customer property.  Mr. Cremona said that our

8    argument on this should be confined to the four corners of

9    the complaint.  Of course, when it comes to the

10   incorporation by reference, he says that Geiger says that

11   the entire SIPA proceeding is one proceeding.  And the Court

12   can look at everything within that proceeding.

13          And if that's the case, the Court may indeed look

14   at the 70 some other complaints and we noted those, we

15   attached those in our request for judicial notice as to what

16   the Trustee had alleged.

17          He says that Judge Bernstein looked at the

18   possibility of $1 being transferred to subsequent transferee

19   A, subsequent transferee B, subsequent transferee C and so

20   on up to ten subsequent transferees and the Trustee could

21   sue each one.  That's not this fact, that's not this case.

22          This case is the $1 transferred to the initial

23   transferee -- the initial transferee.  And then subsequent

24   transferee at that same point in time transferring $10 to

25   ten different subsequent transferees, they can't all have

Page 155

1    received customer property.  It's not a chain.  It was a

2    simultaneous -- or it's not simultaneous.  It was -- in some

3    cases it was simultaneous.  In others, it was more like

4    transferred to multiple subsequent transferees not in a

5    chain with each other.

6              He noted that the Sentry offering memorandum, said

7    that it invested all of its Sentry funds with Madoff and

8    therefore anything that Sentry paid out to its investors

9    must have been customer property.

10             Well, there's a logical fallacy in that.  Sentry -

11   - because Sentry was going to take money that it received

12   and invested with customer property, that doesn't mean that

13   it didn't get any money from other -- I'm sorry.  That it

14   didn't get money from other sources besides withdrawals from

15   Madoff.

16             And we show in our papers, it can't be that it

17   received 2.9 million -- billion from Madoff and paid out 7

18   billion to others and all of that $7 billion was 2.9.  That

19   is, you know, spinning gold out of straw.  It just can't be.

20             Mr. Cremona focused on our March 20, '07 transfer.

21   Admittedly that was right after a transfer from BLMIS to

22   Sentry.  Our main focus here was on the transfer of the

23   $13.5 or so million nine months after the last prior initial

24   transfer, and the Court shouldn't be distracted by that

25   small subsequent transfer when the real focus is on the

1    large earlier transfer.

2         Finally on jurisdiction.  Mr. Cremona keeps

3    stressing Banque SYZ's direct investment with Madoff.  When

4    the papers show that it was investing as agent.  All I can

5    suggest is if I were the -- an officer of a corporation and

6    the corporation opened an account and I signed all the

7    documents, I would be the agent of that corporation, but

8    that doesn't mean it's my account.

9         SYZ itself was the agent of ISOS and made that

10   clear in Madoff's documents, both in the document cited in

11   Mr. Cremona's declaration, the -- where the -- how the

12   account name should read when it was opened.

13        I apologize, I had that in front of me, that's on

14   page -- that's Exhibit 11, page 8 and 10 of his declaration,

15   Exhibit 11, pages 8 and 10.  And then in the proof of claim

16   it was clear that SYZ was filing it as an agent.

17        We're not talking about the scope of the agency

18   relationship here.  It's not whether the agent had -- scope

19   of agency usually has to do with whether the agent had

20   authority to enter into whatever transaction.  There's no

21   dispute here that Banque SYZ had authority to enter into

22   this transaction for ISOS.

23        But it did so as an agent and that does not

24   subject SYZ to personal jurisdiction for things that

25   occurred months and years prior because they were part of

Page 157

1     the same transaction.  Nor does it make 502(d) applicable.

2           I searched long and hard, Your Honor, for a case

3     in which an agent had received a voidable transfer and his

4     principal had filed a claim against the debtor.  That's the

5     facts of this case.  I could not find one.

6           But 502(d) talks about whether the avoidable

7     transfer was returned by the recipient and a proof of claim

8     by that recipient, by the claimant, here the claimant is

9     ISOS filed by its agent Banque SYZ.

10          Finally, on the affidavits outside the pleadings,

11    yes, of course, courts can look to documents outside the

12    pleadings to determine jurisdiction, but not, not where the

13    complaint simply alleges in conclusory terms the Court has

14    personal jurisdiction over the defendant period or the

15    defendant purposefully availed itself of the United States

16    or with investment in the United States period.  And now

17    let's use that as a wedge to open up discovery and put in a

18    lot of additional material.  The complaint itself must be

19    plausible and set forth a plausible basis for jurisdiction.

20          Nothing further, Your Honor, unless you have any

21    questions.

22          THE COURT:  No, I do not.  Mr. Cremona, anything

23    you wish to add that is put only on what was just addressed

24    by Mr. Levin?

25          MR. CREMONA:  Your Honor, I'll be extremely brief.

Page 158

1    One, on the Geiger case, those limitations that Mr. Levin

2    just referred to do not apply.  There were two aspects of

3    that incorporation, one was a motion that was attempted to

4    be incorporated and one was the complaint for declaratory

5    judgment and that complaint was incorporated.

6         Second, my understanding of the law, you know, Mr.

7    Levin's request to incorporate by reference, 80 other

8    complaints is not appropriate.  The face of the complaint is

9    what governs here.  What we did is by expressly referencing

10   one complaint in paragraph 63, that is appropriate and

11   that's a big distinction.

12        The point about the account was opened for ISOS,

13   nothing in the documentation shows that.  There was one REF

14   ISOS, I would submit to Your Honor that that does not negate

15   the 12 to 18 months of statements that show who the account

16   holder was, and that no where in the documentation is ISOS

17   referenced.

18        And the last point on the claim, you simply cannot

19   rewrite history by filing a proof of claim and you did so

20   claiming on an agent, or that that person was the customer.

21   The customer is determined as Your Honor knows, as we cited

22   in our cases by the Morgan Kennedy factors, the Kruse case,

23   Aozora, whether or not the person entrusted cash or

24   securities with the broker dealer for the purpose of

25   purchasing securities, ISOS never did that, SYZ did that,

Page 159

1   SYZ is the customer.  That's all I have, thank you.

2           THE COURT:  Thank you.  Thank y'all very much.  I

3   enjoy -- I enjoy y'all very much.  I will issue a written

4   decision and have a good day.

5           MR. CREMONA:  Thank you, Your Honor.

6           MR. LEVIN:  Thank you, Your Honor.

7           THE COURT:  Thanks, everyone.

8   (Proceedings concluded at 1:21 p.m.)

9                       * * * * *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 160

1                          CERTIFICATION

2

3          I, Sheila G. Orms, certify that the foregoing is a

4    correct transcript from the official electronic sound

5    recording of the proceedings in the above-entitled matter.

6

7

8     Signature of Approved Transcriber

9     Dated:  May 26, 2022

10

11

12

13

14

15    VERITEXT

16    330 Old Country Road

17    Suite 300

18    Mineola, NY  11501

19

20

21

22

23

24

25

**&**

**&**   1:7 2:2,10,23
    94:3,6,8

**0**

**01205**   123:3
**02110**   6:16
**02111**   13:4
**07**   140:2 155:20
**07068**   15:4
**08**   140:2
**09-01239**   73:21

**1**

**1**   2:9 3:5 13:3 36:1
    42:6 108:13,21
    112:18 116:21
    117:22 133:7
    134:14,17,22
    154:18,22
**1.315**   137:20
**10**   2:4,11 3:7 47:2
    48:19 102:18
    124:10,18,21
    125:17 132:17
    134:6 151:19
    154:24 156:14,15
**10-04289**   17:5
**100**   7:3 30:4 79:24
**1000**   8:11
**10001**   10:20 14:12
**10004**   1:17 16:4
**10005**   7:5
**10006**   8:19 12:5
**10012**   14:4
**10016**   5:4
**10016-6819**   4:16
**10017**   13:19
**10019**   4:23 5:21
    11:19 15:18
**10019-6099**   10:13
**10019-9710**   9:13
**10020**   4:5 11:5
    13:11

**10022**   11:12
**10036**   5:11 7:12
    9:4
**101**   102:22
**10104**   12:16
**10111**   6:4
**10112**   14:19
**10171**   8:4 15:11
**108**   3:15
**109**   73:21
**10:00**   3:13
**10:01**   1:20
**10th**   7:4
**11**   46:10 126:25
    156:14,15
**11-02149**   1:6 2:1
    94:2
**110**   3:21
**111**   12:3
**11166**   160:7
**11501**   160:18
**1155**   7:11
**11556**   16:11
**116**   47:1 48:18
**119**   55:12,12
**11:42**   93:22
**11:49**   93:22
**11th**   25:4
**12**   46:25 69:5
    111:25 123:2
    127:18 143:2,4
    158:15
**12-01205**   1:11 3:1
    17:17,18
**12-01576**   46:25
    48:18
**120**   25:6 26:10
    138:3,13
**1201**   16:10
**1221**   4:4
**123**   142:11
**1270**   11:3

**1271**   13:10
**1290**   12:15
**12mc115**   125:16
**12th**   94:21
**13**   64:25
**13.5**   155:23
**13th**   138:4
**14**   53:3 145:2
**147**   2:9 94:21
**148**   2:3
**149**   2:7,16,22
**14th**   13:18 26:9
**15**   61:4,4 125:17
    125:17 136:5,5
    138:1 151:16,17
    151:20
**15.5**   137:22
**151**   127:10,18
    133:7
**153**   2:14
**156**   2:20
**158**   142:15
**15th**   19:7 25:9
    26:14 27:14 54:1
**16**   145:2 151:20
**161**   72:22
**164**   143:2
**167**   45:22
**1675**   5:19 15:17
**168**   72:22
**169**   72:23
**17**   31:10
**18**   1:19 158:15
**1810**   5:20
**1970**   85:7
**1999**   63:9
**1:21**   159:8
**1fr126**   141:20

**2**

**2**   27:1 41:6 42:10
    42:16,20 72:22
    77:1 125:22
    128:11 130:7

**2.9**   155:17
**2.9.**   155:18
**20**   130:6 155:20
**2000**   6:15
**2001-3743**   9:20
**2003**   25:3,4,15
    26:9 137:21
**20037**   8:12
**2004**   33:22 63:10
    64:5
**2005**   19:7 25:9,22
    26:10,14 27:14
    53:20 54:2 64:12
    65:13
**2006**   138:2,4
**2007**   137:21
    144:21
**201**   127:6
**2011**   127:2
**2012**   31:24
**2013**   38:23
**2014**   30:18 61:4
**2018**   116:22
**2021**   35:21 69:4
    94:21 126:16
    129:25 134:6
**2022**   1:19 36:11
    130:7 160:9
**20th**   12:4
**2112**   8:10
**217**   102:21
**22**   69:5
**2210**   11:4
**22nd**   25:4
**24**   141:23
**246**   5:3
**25**   25:5 73:2
**25,763,374**   27:2
    53:25
**25.8**   19:6 80:8
**250**   9:12
**2586**   130:6

**26**   43:19 126:7
160:9
**289**   27:9,11
**29**   44:4,13
**290**   135:17
**299**   8:3 15:10

**3**

**3**   60:25 79:3,5
107:23 133:16
135:4
**3/29/22**   2:12
**30**   14:3,18 26:18
44:14 138:14
**300**   26:8 160:17
**302**   36:1
**31**   4:22
**314**   125:16
**317**   56:13
**323**   67:22
**33**   107:4 137:9
**330**   160:16
**331**   27:4
**332,000**   138:14
**332,185**   138:2
**33rd**   5:3
**340**   56:13
**346**   67:22
**3477479**   126:16
129:25 134:6
**35**   45:5,7
**353**   7:18
**36**   43:20 45:7 53:3
**38**   141:17,18
144:22
**395**   14:10
**397**   67:22
**3rd**   67:22

**4**

**40**   25:5
**411**   105:16
**421**   100:12
**4267693**   69:5

**446**   124:19
**45**   6:3
**450**   13:17
**454**   56:13
**470**   4:14
**47774**   61:4
**480**   142:22

**5**

**5**   46:19 127:19
**5/18/22**   2:4,11 3:6
3:12
**50**   85:9
**501**   43:19 44:4
126:7
**502**   122:8 149:22
150:1,8,12,15
157:1,6
**50th**   14:11
**510**   142:22
**52nd**   4:22
**542**   55:12
**546**   18:20 19:14
20:3,3,21 21:2,12
21:15,19,24 23:16
37:13,18 38:2,12
38:15,18,24 39:18
40:1,10,16 41:17
41:22 42:4,8,14
42:19,21,24 43:12
45:18 46:18 47:4
48:21 49:4,21,23
50:14,22 51:2
52:8,21 53:5,8
75:5,13,17,22
76:17 77:7,17
78:5,11 100:22
103:24 105:17
123:1 131:12,16
132:7 153:11
**549**   45:22
**55**   10:19 25:5
**550**   39:6 40:1
43:17 44:5 46:10

46:12 52:4,4
76:17,19 93:10
108:13,21 112:18
125:3,9 129:12,18
130:13 134:2,21
153:2
**55th**   9:12
**599**   11:11

**6**

**6**   65:8 115:8
127:18 128:17
**601**   9:19
**60654**   7:19
**616**   142:15
**62**   31:18
**624**   142:11
**63**   124:9 125:6
126:22 137:1
158:10
**65**   125:6
**670**   124:19
**6th**   12:15 116:22

**7**

**7**   5:10 39:23 40:9
41:11 46:1 107:22
141:18 144:21
155:17,18
**7.e**   111:19,23
**70**   107:7,20 137:1
154:14
**703**   141:21
**71**   137:6
**732**   72:22
**74**   137:6
**773**   105:16
**787**   10:12 11:18
84:18 85:2
**798**   102:22
**7th**   4:15 84:18
85:2

**8**

**8**   53:11 54:8 56:14
62:3 103:3 124:11
130:1 144:5
151:18 156:14,15
**80**   18:10 133:3,3
158:7
**800**   10:4
**83**   150:15
**88**   79:8 96:1
**883**   149:6

**9**

**9**   47:2 48:19 136:5
136:6
**91**   3:4
**93**   149:6 150:16
**94**   150:16
**95**   140:22
**97**   3:11
**99**   3:9,17,23
**9th**   14:10 25:3,4
26:9

**a**

**a.m.**   2:5,11 3:7,13
93:22,22
**ability**   21:7 22:12
22:23 59:9 76:25
127:21
**able**   43:10 47:24
48:3
**abn**   130:6
**absolute**   104:6
105:4
**absolutely**   24:13
24:16 74:6 84:1
84:15 86:12,12
89:10 90:1 143:6
**accept**   152:3
**accepted**   108:17
**accepting**   51:6,8
110:10

**access** 28:13
61:24 62:5 66:8
108:5
**accidentally**
101:2
**accomplished**
58:4 95:21
**account** 29:12,13
34:20,22 35:12,17
36:3 50:9,12 54:1
58:4 61:22 64:20
64:24 65:2,5,10
66:22,23,25 67:5
67:8,11,20,24
68:5,25 69:2,4,7
69:11,14 87:17,19
87:20,21,24 88:7
88:10,19 89:10,11
89:11,13,14,15,16
89:19,20,24 90:1
90:23 91:2,3,5,6
91:11,16,20 99:16
99:17 100:13
117:2,17 120:1,4
121:2,8,10,10,12
121:15,23,24
130:23 134:22,23
139:24 140:4
141:2,4,19,19,22
141:25 142:1,25
143:3,4,7,9,11,13
143:24 144:5,13
144:21,23 145:1
145:18,20 148:19
149:12,14,14
150:10,17,18
156:6,8,12 158:12
158:15
**accounted** 65:14
**accounts** 32:9
34:18,25 35:6,7
35:10 36:2 57:13
66:11,13,16,18,19

66:19 67:13,17
68:9 87:8 88:12
90:9,14,16,17,21
91:9 143:15
**accurately** 58:12
**acknowledge**
132:5
**acknowledged**
131:18 133:11,21
**acknowledgement**
128:8
**acknowledges**
31:10 132:18
**act** 30:6 86:22
88:14,17,19,20
**acted** 144:25
**acting** 143:21
**action** 30:8 37:19
38:16 39:6 40:1
40:22,24 41:1
43:18 44:2,7,22
46:3,24 48:14
49:24 51:16 52:3
64:4 90:5 95:19
102:7,20 103:9
116:25 123:2
125:10 127:1
136:4 150:4
**actions** 57:7 133:4
**active** 149:15
**activities** 30:3
116:15
**actual** 19:15
20:17,19,23 21:3
21:9,13,17,20
22:14,18,22,25
23:2,10 37:22,25
38:14,18 39:5,12
39:16 41:8,9,14
41:19,21,24 42:2
42:9,13,13,13
43:1,3,7,10 46:19
47:7 48:24 49:1,3

49:11,13,16 50:1
50:3,19 51:17,20
51:22,25 52:9,13
52:14,20 74:19
75:25 76:22 77:5
99:22 104:18
106:1 110:20,22
113:12,13 124:7
127:23 128:4,10
128:16,20,23
131:25 132:8
152:19,25 153:12
153:14
**adam** 15:20
**add** 73:7 86:4
93:10 96:18 104:2
157:23
**addict** 63:12 66:7
**adding** 25:19,19
**addition** 34:4
105:15 121:7
139:3 141:23
143:1
**additional** 63:5
64:11 66:8 99:7
113:9 141:15
157:18
**address** 18:19,23
28:22 36:20 37:15
50:25 53:13 54:13
60:3 62:13 69:23
71:14 73:8 75:9
82:12 93:16 94:15
96:10 97:19,21
99:3 109:1 110:15
123:14 144:16
151:19 152:16
153:25
**addressed** 32:19
69:25 93:18 95:18
110:14 111:14
112:4 132:4 143:7
152:10 153:20,23

157:23
**addresses** 39:11
39:21,24
**addressing** 29:1
33:4 50:15 146:16
**adelman** 5:8
17:21 28:25
**adequate** 106:24
108:16 109:2
111:21 118:6
121:16
**adequately** 23:1
32:11 42:25 56:20
74:16 103:12
126:2 149:1
150:14 152:24
**adjourned** 2:4
**adjournment** 2:3
**adjudicated** 150:4
**adjustment** 94:25
**administrative**
72:10
**admit** 86:24,25
**admits** 78:13
128:14
**admitted** 68:22
79:15 87:3
**admittedly**
155:21
**admitting** 111:9
**adopt** 103:24
104:1 114:17
**adopted** 22:13
**adopts** 57:10
**advances** 54:12
**advantaged** 85:1
**adversary** 2:1 3:1
3:4,9 40:12 46:25
48:18 94:2 99:11
124:22 125:1
149:21,24 150:2
151:24,25

**advisers** 16:2
**advisory** 114:5
**affidavits** 142:9
142:12,21 157:10
**affiliated** 25:17
26:9
**affiliation** 17:19
94:4
**affirmative**
108:14,15,18,19
108:21,22 113:7
114:13 129:11
130:11,18 131:9
151:13
**afternoon** 122:19
**agency** 31:8,20
32:24 86:25
144:16,18 145:3
145:17,20 146:9
146:15,20 147:9
148:9,11 156:17
156:19
**agenda** 73:24
**agent** 52:13 82:11
86:25 121:8,10,13
121:20,24 122:1,8
144:25 147:11
156:4,7,9,16,18
156:19,23 157:3,9
158:20
**agents** 74:9,15
**aggregate** 133:17
134:18 135:2,23
**ago** 84:4
**agreed** 34:10
50:16 64:20 102:1
119:1,2 140:23
**agreement** 17:13
49:19 50:5,10
52:25 83:4 84:21
87:9,12 88:16
91:7 100:19 102:3
108:4 116:13,17

117:4,5,12 118:5
118:12 140:18,25
141:24 143:6,9
**agreements** 29:7
34:9 64:14,19
69:18 84:19
114:19
**ah** 121:18
**ahead** 88:15 94:16
112:14 129:7
139:15
**al** 66:21
**alain** 5:17
**alison** 6:18
**allegaert** 12:1
**allegation** 22:6
57:11,22,24 58:3
59:6 83:21 92:2
101:23 102:12
105:13,23 112:12
115:15 116:4
145:18 152:15
**allegations** 22:18
28:9 33:25 56:1
57:7 67:6,24
95:12 102:21,22
103:7 106:17
108:17 111:11
113:17 114:21
115:2,4,13,22
116:3,4 121:7
122:4,5 123:4,23
124:6,14 126:4,25
127:16 128:4,7,8
128:19,22 132:25
133:5 137:12
142:5 143:1
145:15 148:10
149:9 150:8
151:14
**allege** 18:22 23:17
31:19 33:15 37:22
41:8 49:2,10

79:21 102:10
103:12,17 106:14
106:15 108:10
113:3 124:5 128:9
134:25 136:10
**alleged** 19:15 20:6
20:23 21:3 23:1
27:9,12,24,24
32:11,25 34:5
49:1,13 53:14
55:8 59:18 65:21
66:1 69:21 72:15
74:16 76:1 80:20
80:25 82:14 87:2
104:11 107:6
108:7 113:20
114:4 115:6 119:2
120:5 121:17
124:7 125:24
126:2,2 127:22
128:15,23 132:19
136:5 137:24
149:5 150:16
152:19,25 154:16
**allegedly** 106:20
149:3
**alleges** 18:13
23:13 26:21,22
27:1,5,10 29:22
31:15 33:12 53:15
54:9 56:5 57:5
105:20 111:15
113:5 115:7
119:24 126:13
128:13 129:3
136:23 137:3
150:9 157:13
**alleging** 25:14
87:3 114:24
152:13
**allowed** 54:24
60:25 122:11
147:2

**allowing** 23:5,20
54:15
**aloysius** 10:15
**alter** 11:23 31:4
31:20 32:24 65:22
70:18 86:24 90:6
**ambro** 130:6
**amend** 19:11
28:19 36:17
115:24,25
**amended** 3:10,23
19:4,8 25:12 26:2
26:5,7,12,25 27:4
27:7 28:17 30:4
31:18 36:12,13
55:17 57:4 66:1
72:15 79:4,19
80:13,13 93:8
95:11,15 96:2
101:24 102:16
111:19 124:8
126:13 127:13,14
128:12 129:2
151:14,20 152:21
152:24
**amending** 108:9
**amendment**
103:16 116:1
**americas** 4:4 7:11
11:3 13:10
**amount** 57:2 64:7
133:18 134:19
135:25 136:24
137:4 138:2
140:11
**amounts** 28:4
58:9 107:11,12
133:17 135:3
137:20,22
**analogous** 45:21
70:2
**analysis** 50:19
58:8 109:14

129:13,14
**analyze** 66:21
**analyzed** 135:19
**analyzing** 100:24
  101:13
**andrew** 10:8
**announces** 41:5
**answer** 81:24 82:6
  104:23
**anymore** 100:1
  109:4
**anyway** 118:18
**aozora** 158:23
**apologies** 89:11
**apologize** 97:17
  101:3 138:18
  156:13
**apparent** 28:3
  138:9
**appeal** 50:7
  104:21
**appeals** 32:4
  83:10,13 85:8
**appear** 32:7 44:13
  47:2 48:19
**appearance** 17:24
**appeared** 130:14
**appearing** 17:9
  18:6 94:6,8
**appears** 42:6 59:1
**appellate** 29:21
  32:22 33:1
**appellees** 130:12
**apple** 100:3
**applicability**
  18:20
**applicable** 21:22
  81:22 84:1,14
  157:1
**application** 38:15
  47:4 48:21 125:19
  132:7

**applied** 38:24
  45:20 85:9 125:21
**applies** 20:5,15
  21:3 23:9 41:18
  41:20 42:11,15,20
  45:5 70:13 77:24
  78:11 94:19
  101:25 105:9
  113:16 131:17
  150:1
**apply** 19:14 21:12
  21:15,19 46:2,14
  51:9 52:8 85:3
  105:10,11 125:21
  131:17 158:2
**applying** 43:15
  44:24 70:21
  132:24
**appraises** 56:20
**appreciate** 114:14
  123:17
**approach** 22:13
  23:3
**appropriate** 59:3
  60:15 79:25
  123:25 124:18
  125:7 129:3,14
  132:9 136:4
  139:17 140:14
  141:7 142:8
  147:18 151:6,12
  151:21,25 152:9
  152:13 158:8,10
**appropriately**
  140:14 149:21
**appropriateness**
  97:20 123:10
  127:7
**approved** 160:8
**approximately**
  18:10 133:3 136:5
  137:22

**april** 38:23 138:4
**arden** 16:2,9
**area** 35:22
**argue** 18:18 20:24
  46:15 51:22 61:5
  82:5 129:18 130:3
**argued** 47:3 49:7
  50:12 51:1 62:21
  65:22 67:16 68:4
  70:16 77:14 93:15
  118:11 123:2,9
**argues** 23:5 39:4
  46:13 57:6 61:20
  101:20 124:10
  135:11
**arguing** 38:1
  48:25 49:15 60:14
**argument** 18:2
  20:20 26:16 29:18
  33:10 34:7,15,17
  34:19 46:16,22
  48:16 50:16 54:22
  55:1,3 58:1 59:12
  60:4,6 61:23
  65:20 66:15 67:18
  68:3,7 71:9,9,14
  71:23 76:12 78:10
  80:17 86:19 106:5
  117:22 128:3
  132:4 144:17,19
  145:7,9,16 146:25
  147:10,12,15,19
  148:9 154:8
**arguments** 29:14
  32:14 37:13 49:8
  53:13 54:12,14,25
  62:19 102:5
  103:24 122:22,25
  123:9,12,21,23
  124:3,20 131:14
  134:10 145:23
  147:14 151:4,11
  151:13

**arises** 71:20
  120:20
**arising** 72:4
**arithmetic** 25:1
  59:1,1,25 80:11
  135:6
**arnold** 9:10,17
**arose** 72:5
**art** 85:15
**articulated** 136:9
**asb** 9:11,18
**ascertain** 128:22
**aside** 107:17
  127:7
**askance** 104:7
**asked** 31:25 64:7
  64:8,8 66:8 75:16
  94:18 130:12
  143:15
**asking** 57:21
  58:20 127:23
  132:24
**asks** 30:6
**aspect** 67:3
**aspects** 132:13
  158:2
**assent** 100:14
**assert** 37:18 38:2
  39:18,22 42:4
  43:12 45:3 49:23
  129:9
**asserted** 41:22
  75:6 98:1 99:5
  131:12 140:5
  145:8
**asserting** 38:3,7
  41:3 45:17
**assertion** 35:8
  102:13
**assertions** 19:23
**asserts** 30:1 56:15
  58:25

assess 58:12
asset 16:9
assets 53:16 56:7
57:24 61:18
140:22
associate 62:17
assume 61:7,16
111:6,9 113:15
120:15
assumed 33:4
98:13 127:17
assumes 98:7
assuming 98:11
111:21
assumption 26:16
26:20 59:13
attached 25:11
56:25 64:14,23
97:10 98:12
134:10 142:6,24
143:20 154:15
attempt 28:5 60:3
106:9
attempted 158:3
attempts 104:8
attention 39:20
attorneys 4:3,13
4:21 5:2,9,17 6:2
6:12 7:2,10,17 8:2
8:9,17 9:2,11,18
10:2,11,18 11:2
11:10,17 12:2,13
13:2,9,16 14:2,9
14:17 15:2,9,16
16:2,9
auction 85:15,15
85:16
augmented 123:7
august 109:6
116:22
austin 11:16
authority 29:21
30:11 32:23 33:18

35:23 54:15 56:8
84:1 85:6,7 90:15
130:8 145:9
146:10,19 150:4
156:20,21
authorizations
143:17
avail 23:10 119:3
available 38:7
44:9 45:4 46:24
48:17
availed 35:3
114:25 141:8
157:15
availing 89:6
availment 34:2
62:23 63:1 68:2
68:18 70:21 91:25
118:24 119:2
139:20
ave 9:19
avenue 4:4,14
7:11 8:3,10 10:12
11:3,11,18 12:15
13:10,17 14:10
15:10 84:18 85:2
averments 142:10
avoid 46:8 129:20
avoidability 39:6
39:18 51:12 76:18
102:11,12 103:7
103:20 108:24
110:23 112:5,10
114:12 124:5
126:13 128:9,13
129:4 131:24
avoidable 40:5
44:6,16 46:5 52:1
52:2,3 102:9,14
102:15 103:13
125:10,25 126:3
136:19 150:19
157:6

avoidance 38:6
40:8,11,21 41:3,4
41:23 42:8,15,18
42:22,23 43:19,25
44:9,20 45:3,12
45:16,18,24 50:23
51:7,16,18,23
52:5 104:5 131:17
avoided 46:9
102:11,12 105:19
108:25 109:23,23
110:3 112:24
133:22 134:3
avoiding 20:4

**b**

b 1:5,10,21 2:2,9
2:23 3:2 6:8 9:15
16:13 64:15 65:1
88:5 108:13,21
112:18 120:20,21
120:24 122:8
127:6,14,18
129:12,18 130:13
153:2 154:19
b.r. 43:19 44:4
45:22 55:12 56:13
124:19 126:7
142:22
back 19:13 69:20
76:11,12 85:7
96:14 105:15
107:11 110:11
116:6 118:11
119:6 121:3 153:7
background
123:19
baer 14:9
baker 6:1 18:5
62:17 94:8
ball 16:8
bamberger 8:14
bank 5:2 7:2 8:9
8:17 9:11,18 14:9

29:12,13 34:18,20
34:21,21,22,23,24
35:10,12,16,18
36:2 54:1 64:24
65:2,4,9,21 66:3
66:11,13,16,17,18
66:22,23 67:5,8
67:10,11,13,13,16
67:24 68:5,25
69:2,7,11,14 87:8
87:17,17 88:1,6,6
88:8,18,22,23,23
89:11,12,14,15,16
89:16,18,19,25
90:9,14,18 91:2,3
91:4,11,11,15,19
99:12,13 108:5
138:25 139:2
141:3
banking 8:2 15:9
bankruptcy 1:1
1:15,23 18:21
37:20 40:19 43:15
44:21 45:20,23
46:7,16 50:24
51:4 55:23 60:23
60:24 72:2 104:6
104:13 124:23
130:13
banks 34:24,25
35:5 88:13 89:5
141:20
banque 1:7 2:2,8
2:10,15,20,21,23
4:21 94:3,6 99:21
100:7,17,24,25
101:14,15 102:1
103:12 104:23
105:13,21,25
106:2,20,22 107:2
107:15,19,25
108:6,10 109:3,13
109:14,17,19

110:9,9 111:13
112:7,9 113:4,10
113:17 115:8,10
115:14 116:7,10
116:18,23 117:1,9
117:10,16,17,19
118:20,21 119:4
119:18 120:1
121:8,11,18,25
122:8 125:13
128:11 129:8
131:11 136:23
137:3,25 141:24
143:5,10,13 150:9
150:23 156:3,21
157:9
**bar** 42:8,15
105:18
**barak** 9:6
**bare** 102:13
**barred** 38:3,11
42:18,24 45:17
46:18
**barrett** 9:15
**based** 23:24 30:15
32:1 33:1 34:7
57:24 70:7 71:7
72:8 78:21 79:10
80:24 81:4 94:23
102:24 111:4
115:9 122:8 124:1
126:3 127:4
128:10 130:25
131:25 132:10
138:10 139:19
140:6,21 144:12
**baseline** 56:18
**bases** 141:15
**basic** 29:3 56:2
76:12
**basically** 76:13
78:18

**basis** 31:25 35:13
40:24 41:16 63:1
75:4,11,21 76:16
101:16 104:22
112:6,9 114:10
115:3 117:6,6,12
117:15 118:6
119:25 120:10
122:7 130:22
140:7 141:5
148:23 149:19
157:19
**battery** 16:3
**bear** 130:19
**bearing** 72:3
**beat** 98:6
**becker** 8:1 15:8
**bee** 142:14
**began** 25:2
**beginning** 73:10
92:15
**begins** 40:2 42:16
**behalf** 2:10,16,23
3:5,11,18,24 17:9
62:18 94:8 100:16
143:3,22 148:25
149:11
**belabor** 70:14
**belie** 65:19
**belied** 123:23
128:5
**belief** 55:9
**belies** 26:16
**believe** 21:21 22:8
53:7 68:13 81:21
94:10 103:10
106:10 108:3
109:2 114:10
**belongs** 66:24
**beneficiary's** 88:8
88:9
**benefit** 22:4 73:4
87:1 90:10 106:1

149:16
**benefits** 139:20
141:8
**berdeaux** 35:21
68:11 69:1,10,15
88:25
**berger** 12:1
**bernard** 2:18 3:19
18:15
**bernet** 85:8,14
**bernie** 2:17
**bernstein** 117:10
118:15 154:17
**bernstein's**
116:21
**best** 118:16 123:6
123:12
**better** 92:25
**beyond** 26:2
75:19 84:22 103:6
127:8 132:24,25
133:1 138:6,25
139:1 140:8 142:6
148:9
**bids** 85:17,19
**big** 158:11
**billings** 10:7
**billion** 107:13,15
107:22,23 133:16
135:4 155:17,18
155:18
**billions** 28:7
132:19
**binding** 51:5
126:8
**bit** 38:22 45:7
84:4 106:7
**bizarre** 24:1
**blank** 144:4
**blanka** 14:21
**blanket** 98:1
**bli** 30:10 31:25
32:5,13,19 33:4

62:24 63:3,6,14
66:4 68:4 69:22
69:23 70:8,13,14
70:16,19 71:9,10
86:8,11 118:10,17
140:10,14,18
141:1,7 142:17,22
**bli's** 33:8 71:11
141:2
**blindness** 52:20
**blm** 117:19
**blmis** 18:16 24:20
25:4 27:3,11
31:14,17 40:5
50:9 52:24 53:16
53:19 56:6 57:13
57:15,20,24 59:15
59:22,24 61:18
63:1,8,9,16 65:21
66:3,6 70:6,10
71:3,4,8,12 72:25
99:13,16,18,23,23
99:24,24 100:9,14
100:15,17,18,24
101:14,17,22,22
103:13 104:19
105:22 106:1,21
107:3,10,12,14,23
109:24 112:16
113:21 115:10,11
115:14 116:8,9,10
116:11,13 120:1
121:4,11 128:17
136:7,17,20,25
137:17,20 138:1,4
138:13 139:25
140:1,6,21,21
141:11,19,21,21
142:1 143:9,12,24
144:21,23 145:1
148:19 149:3,13
150:17 155:21

**block**  7:9,16 39:3
  68:15 94:6
**bnp**  45:22 46:3,14
  46:21 47:6 48:14
  49:4,15 50:24
  51:4 71:24 72:2
  84:12,16,16 85:2
  132:3,11 153:6
**bnpp**  48:23
**boies**  10:17
**books**  28:13 62:1
  144:12
**borne**  80:24
**boston**  6:16 10:5
  13:3,4
**bottom**  39:2,4,9
  39:15,19 41:7
  42:5 44:13
**bought**  29:22
**bound**  43:21
  104:25 131:19
**bowling**  1:16
**boylston**  10:4
**branch**  34:21,22
  87:18,23
**breach**  72:13 90:5
**breached**  116:16
**break**  93:21
**breaks**  60:1
**breath**  112:13,15
**brief**  26:19 28:1
  31:10 32:20 35:22
  43:20 46:24 48:13
  48:14,17 49:4,9
  53:3 60:3 67:2
  70:12 79:2,5
  80:17 103:15
  108:20 124:13
  146:1 157:25
**briefed**  32:4,19
**briefing**  32:5,7
  70:1 130:9

**briefly**  53:13
  56:11 62:18 64:13
  113:8 124:16
  125:2 132:3
  140:12
**briefs**  33:19 34:13
  54:21
**bring**  40:12 43:17
  119:18
**bringing**  40:22
  44:2
**brings**  60:17
**broad**  106:23
  116:4
**broadway**  5:19
  12:3 15:17
**broker**  99:17
  100:1,4,10 116:10
  119:7 158:24
**bromberg**  5:16
**brought**  18:11
  93:15 107:8 146:3
  146:25
**brown**  4:2 13:1
**budetti**  12:18
**bunch**  106:21
**burden**  53:11
  54:8 75:8 130:19
  132:25 136:8
  137:13
**bureau**  15:2 31:24
  62:24
**burke**  13:6
**business**  29:6
  33:17 34:3 35:4
  35:14,18 83:14,18
  85:12,25 89:7
  96:23 139:5
**butler**  4:25
**buy**  100:2

**c**

**c**  4:1,10 5:14 17:1
  65:7 102:18
  124:10,18,21
  151:19 154:19
**caceis**  8:9,17
**caisse**  88:8
**calabrese**  13:13
**california**  85:17
**call**  31:24 85:11
  85:13,24 100:1
**called**  71:10
**calls**  33:13 83:23
  83:24
**camera**  101:1,5
**canada**  19:3 29:6
  29:9,12 33:11,13
  34:22 35:7 36:6
  88:24,24 92:3
**canadian**  34:23
**capacity**  37:4
  64:11 144:23
**caproni**  35:20
  69:1 89:1
**case**  1:6,11 2:7
  18:25 19:12 20:7
  22:17 24:23 26:1
  28:15 29:16 32:6
  32:18 33:1 35:8
  35:21 37:2,6,7,8
  39:9 40:4 42:23
  45:21 51:4 52:16
  54:17 55:4,5
  58:14,18 61:3
  63:4 67:3 68:11
  68:19,22 69:11
  70:18,20 71:19
  72:12 73:21,22
  77:14 79:15,18,20
  80:19,20,21 81:6
  81:14,22 82:6,14
  83:9 84:19,24
  85:9,14,22 86:3,8

86:21 88:25 90:3
  90:4,4,17 91:14
  94:21,22 95:25
  99:10,11 100:12
  100:13,22,22
  102:18 103:1,18
  104:1,15,21,25
  105:15 106:18,25
  108:20 109:12
  111:6 112:6
  113:19 118:10,22
  120:11 121:19
  123:2,14 124:2,9
  124:18,23 125:1
  125:22 126:7,18
  130:4,12,22,22
  132:10,22,22
  133:5 135:9,18
  136:17 138:6,8,22
  140:16 141:6,14
  142:8,11,14
  151:13,22 152:8
  152:20 153:5
  154:13,21,22
  157:2,5 158:1,22
**cases**  18:19 27:21
  28:1 35:10,14
  54:22 56:9 62:6
  63:23 66:14,21
  67:1,12 69:25
  71:17,24,25 72:3
  83:19 84:3,5,14
  84:23 85:3,23,23
  89:25 97:13 120:8
  120:10,22 121:1,6
  123:4 126:17,20
  133:18 135:3
  150:6 155:3
  158:22
**cash**  158:23
**cashed**  91:5
**categorical**  114:3

category 58:7
causal 72:18
causily 92:5
caveat 41:5,6,12
  41:18,20 42:1,10
  43:5,6,9
cayman 19:2 29:5
cdp 79:10,12
cecelia 1:22
center 13:3
central 90:9,18
  132:18
centrale 88:8
certain 20:4 34:12
  39:9 40:11 58:5
  135:12
certainly 63:25
  74:7 82:11 138:12
  149:17,25
certificate 17:6,11
certification
  160:1
certify 160:3
cetera 134:17
cgm 1:6,11 2:1,5
  2:12 3:1,7,13
chain 49:6 51:3
  93:7 155:1,5
challenge 41:2
  45:12
challenges 125:19
challenging
  152:25
chance 4:20
change 149:10,12
charles 59:20
  61:19 100:1,4,6
  119:7,9
chart 137:8
charter 27:8
charts 134:9
chase 141:22

chassin 8:1 15:8
chicago 7:19
choice 34:10
  64:18 69:19
  140:23
choose 88:18
christopher 4:7
  11:7
cid 130:6
circuit 30:25 32:3
  50:7,8 52:17
  77:10,16 100:11
  104:7 105:16
  130:19 142:11,15
  148:14
circuit's 23:25
  73:24 77:11
  101:25
circumstances
  31:2 54:19 63:7
  68:14,18 130:23
cirillo 5:1,6
citco 34:21,24
  87:17,23 88:1
  91:15
cite 33:1 70:18
  71:23 73:9 83:10
  120:8,25
cited 27:21 33:18
  35:21 43:20 67:12
  68:11 70:1 71:24
  85:23 89:25
  108:19,20 120:11
  122:9 125:2
  130:24 142:7,11
  150:6 151:23
  156:10 158:21
cites 30:11 35:10
  40:18 56:9 66:14
  67:2 90:13
citi 87:17
citibank 52:17,18
  102:25 109:6

110:11,25 111:4,7
113:19,24 130:20
130:24 153:4,8
citing 46:1
claim 22:20,24
  23:15,20 28:18
  34:4 37:14 53:12
  55:8 71:16,18,20
  72:13,16,18,20
  73:4 75:12,13
  76:4 80:2,3,18
  87:23 91:25 92:9
  103:5 108:2,6
  111:2 121:19,20
  122:4,6,7,11
  125:20 128:12
  130:15 134:18
  140:3 144:25
  148:25 149:2,8,10
  149:10,14,15,20
  149:24 150:10,11
  150:14,18,21
  156:15 157:4,7
  158:18,19
claimant 149:25
  157:8,8
claimed 126:24
  152:18
claiming 31:5,5
  56:10 60:10 145:3
  158:20
claims 22:16
  24:19 36:4 38:25
  46:11 47:5 48:21
  52:11 54:9,23
  58:19 67:10 69:12
  73:14 74:25 75:3
  96:2 103:18
  128:19 138:8,21
  149:16 150:25
clark 7:18
classic 85:14

clauses 140:24
clean 95:5
clear 37:21 42:1
  42:11,20 43:6
  45:8 58:14 72:18
  77:10,11 80:19
  83:19 86:12,12
  89:8 105:4,6
  115:4 118:12
  120:8,9 121:14,20
  121:25 122:9
  123:16 130:20
  136:8,15 143:3
  144:1,2 145:20
  147:6 148:14,20
  156:10,16
clearly 19:1 20:15
  53:8 76:24 88:4
  89:14 126:7
  137:24
cleary 8:8,16
client 151:5
clifford 4:20
close 114:8 130:9
closing 36:8
code 18:21 44:21
  51:7
cohen 4:8
cohmad 19:24
  20:21 21:6,6,24
  23:9 38:21 39:8
  39:10,20 41:12
  42:7,10 43:15,24
  45:20 46:1,15
  49:17,24,25 56:12
  76:3,14,16,21
  77:19 81:16,19,21
  104:24 131:18
  132:10
cohmad's 22:11
coincidence 32:10
  71:11 86:13

collapsed  54:6
collateral  45:4
colleague  18:5
  37:15 62:13 65:14
  122:25 123:9
  131:22 138:22
colleague's  123:8
collect  85:24
  134:22
column  137:19
combination
  29:17 58:6
come  25:24,24
  81:3 96:14,14
  112:20
comes  17:14
  154:9
coming  60:13
  63:20
command  105:4
comment  151:8
commerce  85:21
commingled
  27:17 58:4 59:8
commingling
  27:19 59:8
common  18:18
  72:14 153:8
communicated
  143:12
communications
  33:11,16,17 84:7
  86:2
company  72:17
  90:6,8,11,12,14
  90:19,20 94:3
  119:13,13,14
comparable
  107:12
complaint  2:9,22
  3:10,23 19:4,8
  25:12 26:2,5,7,12
  26:25 27:5,7

28:17 30:4 31:18
  36:9,12,12 55:6
  55:10,12,17,24
  56:25 57:5 66:1
  72:15 73:10 79:4
  79:10,18,19,20
  80:1,1,10,13,14
  80:21,22 95:11,11
  95:15,18 96:2
  98:8,12 99:14,20
  101:24 102:10,16
  102:23 103:2,3,8
  103:11,16 104:12
  106:13,15,16
  107:6 108:9,16
  110:14 111:6,10
  111:15,19 113:3
  113:16,21 114:3
  114:20,21 115:8
  115:23,24 116:1,2
  117:23,24 119:24
  120:5 121:17
  122:3 123:24
  124:8,9 125:7,8
  125:12 126:13,21
  126:22 127:1,14
  127:14,16,17,25
  128:5,9,12,15
  129:2,10,19 130:4
  130:14 131:13
  133:1,2,10 134:24
  135:8,13 136:3,15
  136:22,23 137:1,3
  137:6,15 138:9,11
  141:16,18,23
  142:5,6 148:10
  149:1,1,6 150:9
  150:13 151:15,20
  152:5,16,21,24
  154:2,9 157:13,18
  158:4,5,8,10
complaints  25:14
  26:22,22 27:13

79:21 107:7,21
  127:4 133:3
  154:14 158:8
complete  61:25
  115:15 137:14
  139:1
completely  72:21
  90:23
completeness
  122:24
component  109:8
  109:9
components  109:7
comprised  57:18
  59:15,19,24 60:8
  123:4 135:1,21
  136:6
conaway  11:1
concealing  113:21
concede  53:2
conceded  52:23
  124:13 127:8
  151:12,21
concedes  31:13
  85:4
conceivable
  107:24 108:1
conceivably  60:21
concept  97:18
concepts  44:20
  45:16 52:5 110:8
concerning  37:13
  123:1,10 128:19
concessions  33:2
conclude  112:7
  148:18
concluded  35:23
  56:24 122:13
  128:14 159:8
concludes  89:2
conclusion  58:24
conclusory
  114:24 115:4,13

115:15 116:4
  157:13
conduct  31:12
  100:15 148:20
conducted  33:15
  33:25 83:20 86:1
  111:16
confer  149:18
conference  2:4
confers  150:3
confined  133:9
  154:8
confirm  95:7
confirmations
  143:16
confirmed  30:18
  43:13
confirming  50:9
confirms  67:3
  68:13
conflate  45:16
  51:7 52:5
confuse  147:7
congress  77:8,17
  78:4,23 93:6,8,9
congressional
  105:4
connect  136:18
connection  19:10
  20:10 22:9 52:23
  52:25 71:18
  105:17,24 108:11
  117:19
connections  56:22
consented  34:11
consider  38:17
  70:1 133:1 142:21
  147:19 148:9
  153:8
consideration
  109:2 132:7
considered  52:12
  145:11

considering  46:17
considers  49:18
consisted  26:23
consistent  23:3
  75:23 76:2,3
  78:23 133:19
consistently  85:9
consolidated
  38:19 43:16 81:14
  125:3 131:19
constitute  33:17
  34:2 68:1 83:13
  83:17 86:20
constituted  18:13
  18:22
constitutes  91:25
construed  104:14
  105:5 142:12
contact  30:9
  62:22 63:19,25
  67:4 68:1 83:8,16
  83:17 85:13 86:2
  86:20 91:24
  148:20
contacts  30:16,17
  31:1,21 32:1
  62:25 63:6,14
  65:19,20,24 66:1
  66:2 68:9,20,21
  69:20 71:1,15
  72:6,9,9,14,19,24
  73:1 86:6 91:22
  92:1 114:25
  139:19,21 140:9
contain  64:17
  103:4,4 106:14
  114:21 142:10
  152:5
contained  54:10
  56:24 57:9,17
  58:13,22 60:11
  136:12

contemplated
  70:9
contemplating
  141:9
contends  34:8
  35:2 144:24
contention  52:7
  60:1 93:6
contents  97:13
context  32:13
  34:19 40:1 56:1
  90:20 99:9 102:4
continued  46:7
  49:4
contract  20:11
  22:2,9 49:21 50:6
  50:10,18 71:17,18
  71:21 72:10,12,14
  78:2,3 83:11 84:5
  84:9 90:5 105:19
  105:24 106:3
  118:24 119:3,3
  120:14,17,18,19
  120:20,21,23,24
contracted  117:2
contracts  22:1
  50:13,13,17 77:21
  78:16 85:4 120:12
  120:16,17,18,19
contradicted
  30:14
contradictory
  128:2
contrary  29:20
  33:6 50:21 62:5
  118:11
contrast  69:12
  71:2
control  31:11,14
  31:16 87:2 91:1,6
  91:17 144:9
controlled  63:11
  90:19,21

controlling  29:20
  32:3,18,22 33:7
  34:13
controls  35:12
convenience
  88:21
convicted  68:23
core  30:17
corey  13:13
corina  22:17
  73:22
corners  80:21
  107:6 133:2,10
  154:8
corp  9:11,18
corporate  31:6
corporation  30:21
  30:23 31:3,12
  87:6 156:5,6,7
corporation's
  31:1
correct  17:7,10
  22:21 43:2 74:21
  75:24 76:7,15,15
  76:16 118:4 160:4
correspondent
  34:17,24 35:5,17
  36:3 66:15,22
  67:24 88:23 89:24
  91:9,16,19
corresponding
  28:4 69:4 88:19
council  34:14
counsel  36:22
count  35:18 79:9
  85:13 86:7 122:3
  122:10 149:22
  150:8,24
counterparties
  120:12
counterparty
  88:22 91:8 117:1
  117:9,16,18

country  160:16
county  85:3
couple  63:16
  73:18
course  100:18
  110:22 111:9,20
  139:5 149:13
  154:9 157:11
court  1:1,15 17:2
  17:4,14,17,23
  18:3,7 22:13,17
  22:24 23:1 24:8
  24:10,15,17 26:1
  28:23 30:6 31:22
  32:3,14,22 33:7
  34:15 35:20 36:16
  36:19,23,25 37:5
  37:10,15,20,20
  38:20,23 39:3,8
  39:11,21,24 40:6
  40:18 41:5,12
  43:14,15,23 44:11
  45:2,8,15,20,23
  46:2,3,7,16 47:9
  47:11,14,17,19,22
  47:25 48:2,4,6,9
  48:11 49:9,11,18
  50:24 52:4,12,16
  53:7 54:18 55:6
  55:11,13 57:21
  58:18,20 59:4
  60:5,24 62:10,15
  62:23 65:23 67:4
  67:18 68:16 70:1
  70:14,23 72:2,17
  73:11,16,18,21
  74:5,10 75:11,21
  76:6,9 78:24 80:7
  81:9,12,17,20,23
  82:3,3,4,8,15,19
  82:21,23 83:1,10
  83:12,15 85:8,18
  85:20 90:21 92:12

92:15,18,22,24
93:12,14,19,19,23
94:1,10,13,16
95:2,4,9,13,22,24
96:4,12,17,21
97:2,4,15,23 98:5
98:9,12,15 99:2
101:2,5,9,11
104:15 105:1,3,16
108:18 111:22
112:14,22 114:16
114:22 117:25
118:2,7,23 119:20
119:23 120:9,12
122:14,17,20
123:15 125:4,14
125:23 126:1
127:13,24 128:14
129:7 130:6,13,16
130:25 131:10,23
132:3,3,6,6,15
133:9,11 134:7,7
134:13 135:10,12
135:15,18,22
136:10,15 139:15
139:18,21 140:7
142:17,19 145:13
145:25 146:6,12
146:17,22 147:5
147:12,23 148:4,7
148:8,15,21
149:18 150:4
151:1,6,8,18
152:2,9,14,21
154:11,13 155:24
157:13,22 159:2,7
**court's**  19:25 20:1
30:18 39:20 40:19
41:7,11 42:6 43:5
43:16 46:15,25
50:6,15 51:4
55:24 60:23
123:10 125:3

127:21 129:20
134:21 140:10
149:5 152:19
**courtroom**  98:18
**courts**  34:11
60:19 93:9 120:22
127:3 157:11
**covered**  132:13
**craco**  10:15
**create**  120:6
**created**  104:16
105:2 144:13
**creates**  105:3
144:7
**creating**  105:11
**credibly**  128:24
**credit**  60:6 87:19
88:8
**credits**  89:19
**cremona**  2:16 6:6
17:3,8,9,16 47:14
47:15,18 94:7,8
94:12,14,17 95:8
95:14,16 97:14,16
97:16 115:21
122:17,18,21
123:18 129:8
131:11 132:16
139:16 145:19,25
146:8,15,16,17,18
147:1,3,4,6,17
148:2,5,8,17
151:3,22 153:1
154:7 155:20
156:2 157:22,25
159:5
**cremona's**  156:11
**crime**  68:23
**critical**  111:3
**cross**  13:21 61:13
**cumulative**  86:5
**cure**  36:13

**custodial**  72:10
144:23
**custodian**  56:6
**custodied**  53:16
53:18
**custody**  61:17
140:22
**customer**  18:14
18:22 24:7,18,21
25:17 26:13,18,24
27:3,6,11,22
28:10,12,16,21
35:16,18 41:13,18
52:22 53:5 54:11
57:9,18 58:13,15
58:22 59:9,15,19
59:25 60:2,8,11
60:14,21 64:3
71:22 73:3 79:1,6
79:13,16,23 80:9
89:3 91:3,3 92:8
93:4 100:17 102:7
105:22 106:4,14
106:19 107:2,18
107:24 108:2,7,10
115:11,14 123:5
123:22 132:14,21
133:13 135:1,15
135:21 136:7
137:11,17 139:13
140:3 141:24
143:5,9,11,13,15
143:24 144:14,15
144:23 145:18
148:25 149:2
150:10,11,14
150:17,19,24
151:5 154:7 155:1
155:9,12 158:20
158:21 159:1
**customer's**  100:16
**customers**  35:5
49:6 51:3 91:6

100:14

**d**

**d**  13:6 17:1
127:15 134:2,21
149:22 150:1,8,12
150:15 157:1,6
**d.c.**  8:12 9:20
**data**  58:7
**date**  20:13 23:23
25:2 75:16 136:24
137:4
**dated**  160:9
**dates**  58:8 137:20
137:22
**david**  3:17 11:21
12:8,19
**davis**  6:19 15:15
**day**  101:18 120:19
159:4
**days**  138:14
**deadline**  17:10
**deal**  103:18
**dealer**  99:17
100:10 116:10
158:24
**dealing**  85:2
146:22,23,24
149:13
**dealings**  24:3
**dealt**  84:13
**dean**  5:23
**debtor**  44:16
50:23 60:22
112:21 136:11
157:4
**debtor's**  61:2
124:23 144:11
**decade**  28:14
**deceit**  113:23
**deceive**  111:24
**december**  94:21
140:2

decide 38:19 59:4
decided 51:23
52:16 84:16 130:7
152:14
deciding 22:15
decision 19:25
20:1 23:25 30:18
31:23 38:22,23
39:2,9,11,14,15
39:21 40:2,19
41:12 42:6 43:17
43:19,21,23,24
44:4,12,14 45:6
45:21 46:1,14,15
49:17 50:9,21
51:4 52:4,18
56:12,12 60:23,23
63:3,23 68:17
70:22 75:23 76:2
82:3,4 89:1 93:20
109:6 116:21,22
117:22 118:17
125:3,20 126:7,12
127:22 129:21
130:5,20 131:23
133:22 134:6
152:12,20 153:4
159:4
decisions 37:20
38:20 43:14
declaration 25:20
64:15 65:1,8
80:12 115:21
127:10,11,15
133:6 134:10
142:24 143:2,20
156:11,14
declaratory 158:4
dedicating 54:21
default 17:13
defeat 59:9
defend 40:24

defendant 2:8,15
3:16,21 7:10,17
17:21 18:2 21:9
26:23 28:25 30:2
32:6,11,16 35:11
35:13,16,24 37:16
38:1,5,18,21
39:13 40:22 41:2
46:22 47:3,7
48:16,23 49:14,22
52:22 54:4,8,10
54:12,22 55:17
56:9 57:6,10,16
58:17,20,25 60:3
61:19,20 62:1
66:23 67:16,20
68:4,21,22 69:2
69:12,15 70:8
73:13 76:23 80:6
82:10 84:5,20
85:17 86:11,15,17
109:8 114:1,23,24
114:25 123:11,20
124:4,10,12 128:1
128:18,24 129:17
129:20 132:23
135:11 137:18,23
138:2,7 139:19,24
140:8 148:22
153:9 157:14,15
defendant's 30:15
32:8 37:18 43:2
48:14 51:6 52:6
53:13,24 54:1
58:1 59:1,12,25
60:5,6 61:23
65:23 72:4,6
79:11 111:24
116:15 122:21
125:18 128:3
134:9 135:5
138:10,16 147:8
148:9

defendants 44:18
46:22 50:11 51:1
57:1 60:9 67:13
71:24 75:7 84:17
84:25 103:19
111:25 125:16
126:5,23 129:22
130:2,18 132:5
133:15
defense 37:18
38:2,4,5,9,12
39:18,22 40:1,10
40:15,16 41:22
42:4,21 43:12
44:8 45:1,3,9,10
45:14,18,24 46:2
74:1 75:6,9,10
108:14,15,18,19
108:21,22 111:4
113:7 114:13
129:16,18 130:3
130:11,14,18
131:9,12 146:25
153:3
defenses 38:7 40:8
41:4 44:10,22
129:9,11 131:7
151:14
defer 95:16
defined 31:2
defines 109:6
defrauded 116:17
deliver 64:20 67:7
delivered 53:17
142:1
demand 62:6
133:17 135:2
demonstrate
48:15 135:7 136:3
demonstrates
41:6 137:12
143:21

denied 24:2 56:9
60:20 104:8 131:8
132:7,7 135:16
150:11,24
denies 19:17
151:18
deny 21:22 22:22
138:16
department 31:4
depending 65:20
depends 21:8 77:1
deposits 100:19
deprive 78:5
deprived 76:1
depriving 78:20
derived 59:22
designated 54:1
64:24
designed 21:25
105:6
desjardin 34:23
34:24 88:8 89:15
89:18,19,20,24
91:3,4,11,16
desjardin's 89:16
91:2
despite 39:6 54:21
106:8 107:13,15
124:19 125:18
destination 87:22
detail 55:9 57:1
70:13 98:25
115:16 131:22
137:15 145:15
147:13 152:11
detailing 112:1
details 107:17
108:3,6,6 137:19
determinate 77:5
determination
77:8 123:25
129:24 131:1
133:10

determinations
  60:18
determine  74:11
  104:12 130:13
  133:4 135:20,23
  157:12
determined  49:9
  49:12 113:18
  118:2 125:8
  126:15 130:22
  134:4 135:13
  144:15 149:4
  158:21
determining
  30:22 76:21 126:1
detriment  123:22
devoid  115:19
devore  10:8
devoting  145:1
dexia  4:21
dicta  68:16
dictate  141:14
different  44:22
  51:19 90:24 104:2
  106:7 117:23
  124:21 127:4
  154:25
differently  130:23
difficult  131:4
diligent  109:16
  110:17 111:11,16
  113:25
direct  24:3 140:4
  140:6 141:19
  148:18 149:13
  150:17 156:3
directed  57:15,19
  65:4,6 67:7 69:7
  71:2 109:25 115:9
  137:8 143:14
directly  72:15
  73:1 78:11 124:19
  131:7 139:25

149:13
disagree  104:20
  152:1
disallowance
  122:3,7
disallowed  150:15
  150:21,25
disclose  58:23
disclosed  144:6
discover  110:21
  113:24 114:7
discovered  109:18
  110:18,20 111:12
  114:1
discovering  112:2
discovery  19:10
  54:16 59:5 62:7
  111:2 115:2 131:2
  139:7 144:8
  157:17
discredit  57:21
  60:5
discretion  84:2
discuss  32:20
  38:22
discussed  42:11
  46:2 49:25 55:1
  55:16 56:22 65:18
  83:11 94:25
  140:11
discussing  37:17
  70:13
disingenuous
  71:10
dismiss  2:7,8,15
  2:22 3:4,9,10,17
  3:22 18:10 19:9
  22:16,24 25:11
  28:18 36:9,16
  41:16 56:10 60:16
  71:25 75:10,12
  76:4 79:24 80:3
  80:16 96:1 97:21

98:7 99:5 103:23
  108:16,18 110:15
  115:25 123:25
  127:18 133:9
  138:16 145:4
  146:21 147:8
  148:13 150:24
dismissal  23:3
  56:10 95:20
  130:15
dismissed  22:19
  23:2,24 28:19
  52:10 54:23 67:4
  75:2,21 76:7
  79:10 94:22
  122:10
dismissing  58:18
disparate  130:23
disposes  74:24
dispositive  32:7
  33:3 67:11 130:10
dispositively  84:2
dispute  20:5,8,11
  28:6 32:21,23,24
  67:22 78:13,15,15
  83:12 120:20
  156:21
disputed  142:18
  142:19
disputing  86:15
  86:17
disregard  145:7
disregarded
  148:11
distinct  44:21
distinction  100:11
  100:23 101:12
  126:19 158:11
distinguish
  126:17
distinguishable
  55:5 68:20

distinguished
  121:24 122:1
distinguishes
  112:25
distracted  155:24
distributed  27:14
district  1:2 35:20
  37:20 38:20,23
  39:3,11,21,24
  40:6,18 41:4,7,11
  41:12 42:6 43:5
  43:14,16,23 44:11
  45:8,15 46:2,15
  49:18 50:6,15
  52:3 60:19 125:3
  125:4,14 130:6,16
  152:8
doc  2:3,7,14,20
  3:4,9,15,21
docket  46:25 48:6
  48:7,17 94:21
  95:4 97:2,5,7,10
  125:16
document  2:9,16
  2:22 3:5,11,17,23
  64:23,25 65:9
  95:25 97:7,13,13
  98:21 127:12
  156:10
documentation
  142:21 143:23
  158:13,16
documents  26:3
  29:9 50:12 55:19
  56:5 57:23 61:24
  62:1,5 80:22
  96:25 97:10,20
  98:11 100:13
  121:14 138:19,23
  138:25 139:10
  141:25 142:1,5,24
  143:5 145:19
  149:12 156:7,10

[documents - establish]                                              Page 15

157:11

**doing** 30:8 34:3
35:3,18 86:10
87:24 89:7 91:7
91:18

**dollar** 34:25 35:6
61:9,9 91:4

**dollars** 25:16 28:7
70:4 107:14,16
132:19

**domiciliary** 35:24
36:1

**dominic** 12:18

**dominion** 144:9

**doubt** 57:4

**doubts** 142:13

**douglas** 4:18

**dozens** 85:23

**drawing** 77:19

**dreier** 60:24

**driscoll** 14:6

**drive** 15:3

**driven** 129:12
153:3

**dropped** 73:14

**dublin** 34:20
87:18,23

**due** 2:12

**duration** 143:8

**dutch** 34:21

**e**

**e** 1:21,21 4:1,1,25
5:3 17:1,1 18:20
19:14 20:3,3,21
21:2,12,15,19,24
23:16 33:13 37:13
37:18 38:2,12,15
38:18,24 39:18
40:1,10,16 41:17
41:22 42:4,8,14
42:19,21,24 43:12
45:18 46:18 47:4
48:21 49:4,21,23

50:14,22 51:2
52:8,21 53:5,8
64:6 75:5,13,17
75:22 76:17 77:7
77:17 78:5,11
83:2,23,24 85:25
100:22 103:24
105:17 123:1
131:12,16 132:7
153:11

**earlier** 104:23
143:25 156:1

**easily** 55:4

**ecf** 47:1 48:18
79:8 127:10,18
133:7 143:2

**echo** 106:5

**ecro** 1:25

**ederer** 16:8

**editorial** 151:8

**effect** 99:19 121:1
125:19 144:1
146:10

**effective** 100:10

**effectively** 38:1
111:15

**effects** 70:21

**effort** 123:21
140:5

**ego** 31:4,20 32:24
65:22 70:18 86:24
90:7

**ehud** 9:6

**either** 21:2 22:9
29:16 31:20 32:4
32:25 40:11 75:1
82:10

**electronic** 160:4

**element** 49:21
50:6,10,14,17
54:18 75:8 103:14
109:7,16,20,22
110:16 111:14

112:4

**elements** 31:20
32:2 87:4 102:7
108:23 110:12
111:7 115:18

**eleven** 9:3

**elizabeth** 8:25

**ellerin** 59:20
61:19

**elliot** 9:8

**elsberg** 12:12,19

**emanating** 136:19

**emphasis** 64:7
104:3

**emphasize** 24:11
96:18

**employees** 33:14
33:24 84:25

**ended** 32:9 71:12
86:14 135:15

**endowment** 16:2

**ends** 132:1

**enforce** 17:12

**enforcing** 77:16

**engage** 135:10
139:10

**engaged** 65:10

**engaging** 77:9

**enhanced** 138:21

**enjoy** 159:3,3

**enormous** 106:25
107:11

**enter** 156:20,21

**entered** 94:20,21

**entire** 26:23 49:5
51:3 85:1 93:7
143:8 154:11

**entirely** 55:4 58:5
59:12 60:8 125:7
129:3 133:19
135:1 142:7

**entirety** 131:1
145:7

**entities** 12:13
25:17 26:9 65:22

**entitled** 26:20
40:15 133:12
134:20 160:5

**entitling** 152:6

**entity** 70:4 116:8
136:14 143:11

**entrance** 82:22

**entrusted** 158:23

**entry** 82:9,14
125:16

**enunciated**
140:13

**equally** 101:25
105:9,12 121:20

**equitable** 54:17

**eric** 14:14 143:12

**escape** 47:4 48:20

**especially** 56:4
61:18 115:13

**espoused** 144:17

**esq** 4:7,8,9,10,18
4:25 5:6,13,14,23
6:6,7,8,9,18,19,20
7:7,14,21 8:6,14
8:21,22,23,24,25
9:6,7,8,15,22 10:7
10:8,15,22 11:7
11:14,21,22,23
12:7,8,9,10,18,19
12:20,21,22,23
13:6,13,21,22
14:6,14,21 15:6
15:13,20,21 16:6
16:13

**essential** 34:18
102:7 103:13

**essentially** 57:21
91:18

**establish** 19:22
58:3 59:14,16,18
59:24 60:7 62:25

68:6 100:13
122:23 136:13
142:8,25
**established** 19:2
30:14 31:9 32:18
33:18 44:19 86:21
129:10,19 130:3
131:12,25
**establishes** 29:16
39:16 40:20 54:17
63:4
**establishing**
113:25 128:4
148:20
**estate** 73:5
**estoppel** 45:5
**et** 134:16
**euro** 94:22
**event** 124:1
139:11 148:11
**events** 100:10
**eventually** 86:18
**evergreen** 9:22
**everybody** 17:23
47:11
**evidence** 61:21
79:16,17,17 98:17
98:18,19 127:6
129:13 142:20
**evidencing** 55:20
**evident** 38:19
**exact** 91:9 125:5
135:17 141:14
**exactly** 49:6 74:3
77:18 80:4 92:9
92:25 97:9,11
142:17 152:8
**examine** 39:19
**example** 26:25
51:15 67:15 71:23
78:14 98:7 113:20
134:8,13,14,21
138:1

**exceed** 133:18
134:19 135:3
**exceeded** 135:24
**excellent** 93:19
**exception** 21:11
31:3,8 77:13,13
104:16,16,17
105:3,3,5,6,11
**exceptionally**
19:1
**exceptions** 104:7
104:9
**excuse** 73:21
98:16 130:2,17
136:5 137:14
141:17 142:18
**execute** 29:7
**executed** 84:6,10
84:21 85:5 141:24
**executing** 64:19
**exercise** 80:11
106:8,10 135:11
138:24 139:11,18
140:8
**exercised** 140:15
**exercising** 123:11
148:21
**exhausted** 27:22
60:2 135:7
**exhaustion** 26:16
132:21
**exhibit** 65:7
125:15 133:7
143:2,4 156:14,15
**exhibits** 25:11
56:25 59:14,16,23
60:7 64:15 65:1
79:18 80:1 88:4
97:10 102:22
103:8 127:14
137:1,6,15
**existence** 50:18
68:8 97:12

**expand** 103:5
107:20
**expanding** 63:9
**expect** 69:16
**expectation** 77:25
78:1,21,22
**expectations**
21:25 77:9,19,23
**expert** 24:25 59:5
106:11 113:21,22
**explain** 52:10
81:2
**explained** 40:6
42:7 53:1,8 59:20
107:21 121:22
**explaining** 38:24
40:8 53:10
**explanation** 81:4
**exploration** 67:15
**express** 104:4
**expressed** 54:4
131:16
**expressly** 124:12
126:21 140:19
158:9
**extends** 38:8
**extensive** 103:7
139:19
**extent** 41:13 45:9
45:13 46:4 58:12
67:9 101:20
103:25 104:11
112:1 123:7,13
153:5
**extra** 142:5
**extremely** 157:25

**f**

**f** 1:21 7:7 67:22
**f3d** 72:22 105:16
142:11,15
**fabrikanc** 40:19
**face** 19:24 26:11
28:3 80:2 129:10

129:19 130:4,14
131:12 135:8
138:9 158:8
**facie** 29:16 142:8
**facilitate** 34:25
35:6
**fact** 33:6,20 36:5
55:18 58:21 59:5
59:16 62:1 70:22
74:13 78:21 87:5
90:21 91:8 92:3,4
98:20,22 111:1
116:16 118:15
120:8 123:24
124:14 127:5
129:12,24 130:2
130:25 133:15,21
135:5,9 142:19
144:8 148:13
149:9 151:16
153:3 154:21
**factor** 76:21
**factors** 158:22
**facts** 29:3,15
32:25 34:18 36:14
56:20 68:20 70:2
84:16,24 90:4
98:8 99:20 103:17
103:25 106:7,12
109:8,10 111:3
115:19 123:14
124:24 136:10
140:16,17 141:2
141:13 142:10,18
152:8 157:5
**factual** 26:16 32:8
129:12,14 131:2
**failed** 28:16 40:14
61:5 124:5
**fails** 40:10 58:1
**failure** 18:21
28:17

**fair** 140:11
**fairfield** 12:13
19:6,25 22:13
23:12 25:15,17,18
26:6,8 27:5 31:17
33:14,24 34:15
52:7,14 57:11,24
63:11 73:23 74:9
74:12,18,19,23,24
75:24 76:3,4
79:12,19 81:4
87:19,22 101:24
102:16 103:19
111:19,25 112:16
116:21 117:22
118:3,8 124:8
125:12,25 126:3
126:12 127:13
128:12,14 129:2
129:21,23 133:21
135:4 139:2
140:15,18 141:1,3
141:10 151:14,19
152:20,21
**fairfield's** 61:25
124:7 127:23
128:4,10,20 141:1
**faith** 52:19 73:24
75:6,9,9 76:7
108:24 109:5,7
110:4,8,8,10,17
111:4 112:16,18
112:19,21 113:9
113:10,13,15,25
114:11 129:9,15
130:3,10,14,16,17
130:17 131:3,3
153:3,9
**fall** 35:22
**fallacy** 155:10
**fallen** 54:13
**falling** 153:7

**false** 90:1
**far** 26:10 38:9
68:20 83:15,23
108:12
**farr** 10:10
**fatal** 60:4
**faulty** 135:6
**favor** 142:14
148:21
**favorable** 142:13
**favors** 54:15
**faxed** 29:9
**february** 19:5
36:13 53:20 65:13
**federal** 30:20,25
71:20 127:6
**feeder** 18:12,15
63:9 72:5,11
84:14 115:10,12
**feel** 50:25
**fees** 34:8 61:6,8
**feil** 6:7 18:4,4
36:25 37:3,8,12
47:9,10,12,13,16
47:20,24 48:1,3,5
48:8,10,12 53:9
62:12 65:14 73:7
73:8,12,17 75:14
76:12 78:10 79:1
92:24 93:2,13
95:17 122:25
131:22 132:4
138:23
**fell** 68:18
**fgg** 63:11,18 64:6
65:4,6,17 67:7
**fgg's** 31:16
**fifth** 54:3
**file** 143:24 146:1
**filed** 2:9,16,22 3:5
3:11,17,23 17:6
19:4,8 25:12,14
27:8 80:12 96:23

97:25 98:3,4,21
98:23 115:21
121:11,18,20
127:1 140:3
144:25 147:11
148:24 149:1,11
150:9,17 157:4,9
**filing** 36:12
149:15 156:16
158:19
**final** 31:16 43:25
139:13 148:23
150:4
**finally** 61:11
69:15 114:14
156:2 157:10
**finance** 4:13
**financial** 13:3
20:9 27:8 50:11
78:14 119:14
**find** 60:6 67:18
70:15 95:6 104:8
127:20 157:5
**finding** 35:13
38:14 42:25 58:21
67:12 68:9 76:21
126:12 127:22
129:20
**fine** 47:15 96:16
**fiore** 30:19
**firm** 114:5
**first** 17:4,24 18:10
20:21 21:11 25:1
29:18 30:14 31:3
33:21 40:3 43:16
43:18 44:15 53:14
53:15 55:1 58:2
59:2,2 63:8,16
64:17 65:2 68:12
83:3 84:3 96:13
96:15,22,22 102:5
102:18 106:18,18
109:1,8 110:11

111:7 116:4 124:4
128:6 129:11,18
132:23 133:11,24
137:19 144:18,24
145:6,8,10,11
147:19 151:10
152:22
**fishman** 23:25
50:9 100:12,13,21
105:15
**fit** 93:10
**five** 93:20 99:6
146:12
**fix** 63:13
**flaw** 60:4
**flexner** 10:17
**floor** 4:15 7:4
12:4 13:18 14:11
**flouting** 78:4
**flowed** 137:17
**fly** 19:23 145:15
**focus** 50:22 65:12
66:22,23 109:5
122:21 137:10
155:22,25
**focused** 22:14
46:16 135:19
140:17 155:20
**follow** 31:23
**followed** 39:2
**following** 25:15
28:11 53:15 62:7
64:5 85:22 140:17
140:20
**follows** 150:21
**footnote** 53:3 69:5
79:3,5
**forcefully** 82:5
**ford** 72:17
**foreclosed** 34:15
**forecloses** 38:15
**foregoing** 141:5
160:3

**foreign** 12:13
 18:12 35:16 36:2
 70:4 71:6,6 72:9
 84:5,7,17 89:4,4
 119:8,8,9
**form** 121:12
 129:23 132:10
 143:19,25 144:2,4
 144:7 149:8,10
**former** 72:22
**formulaic** 115:18
**forth** 44:21 49:25
 55:17 56:14,16
 113:17 118:11
 124:8,16 125:6
 157:19
**fortune** 54:4
**forum** 30:16,17
 64:18 65:24 69:19
 82:9 139:20
 140:24
**forward** 131:9,10
 132:12 148:3
**found** 22:18,25
 32:15 55:6,11,13
 62:24 70:3,23
 72:2 74:13,15,22
 90:6 107:25
 111:16,17 125:4
 125:11 142:16
 152:9
**four** 29:14 58:2
 80:7,21 107:6
 133:2,9 134:16
 153:13 154:8
**fourmaux** 5:14
 18:1,23 28:21,23
 28:24,25 36:20,24
 47:22 63:22 68:13
 68:15 69:8,22
 81:9,11 82:1,2,7
 82:13,17,20,22,25
 83:3 92:14,17,20

 92:23
**fourmaux's** 62:19
 114:17
**fourth** 53:24
 60:17
**frame** 103:17
 106:8,9
**framework** 33:7
**fraud** 19:16 20:23
 21:4,9,14,17,21
 22:19 23:15,18
 41:15 47:8 48:24
 54:3 113:22,24
 114:1 119:17,17
 128:17
**fraudulent** 23:14
 40:25 92:7 109:10
 109:18 110:18
 111:12,17 113:18
 114:7 134:14,23
**freehills** 13:15
**freeze** 47:11
**frequency** 57:2
**friday** 17:11
**friedman** 4:12 5:8
 6:8 17:21 18:6
 28:25 37:15 62:13
 62:15,16,17 87:8
 88:14 89:9 92:24
 93:14,17 123:10
**front** 156:13
**froot** 10:22
**froze** 47:9 48:2,9
**frozen** 47:17,23
 47:25,25
**ftg** 65:16
**fujiwara** 17:5
**fulfilling** 72:9
 84:9
**fulfree** 15:6
**full** 59:4 73:14
 118:17

**fully** 40:20 43:25
 133:14 134:4
**fund** 1:12 3:2,6,12
 3:16,22,24 5:9
 19:2,25 22:14
 23:12 29:1,5 52:8
 62:21 63:8,12,17
 63:20 64:6,19,23
 64:23 65:4,9,13
 65:17 66:4,5,7,14
 67:1,7,10,25 69:6
 69:13,17,24 70:15
 70:16 71:2,3,6,6
 71:22 72:16 75:24
 76:3,5 88:2,9
 89:21,23 90:25
 91:1 99:24 100:20
 105:22 114:5
 117:1,8 119:8,9
 119:11,13 120:1
 121:9,21 122:1,5
 122:6 152:20
**fund's** 63:15,19
 63:23 64:1 65:19
 66:2 68:12 71:12
 72:24 73:1
**fundamentally**
 29:20
**funded** 135:14
 138:13
**funding** 61:21
**funds** 17:18 18:12
 18:15 32:8 40:17
 41:14,19 53:17
 57:19 58:6,9,10
 59:7,8 61:6,7
 62:19 63:9 66:17
 70:5 71:2,15,16
 72:5,11 74:9,18
 74:19,24 84:15
 99:15 107:1
 108:10 115:9,10
 115:12 118:13

 129:23 135:4
 136:11,14,25
 137:5 140:22
 141:10,20 144:9
 149:3 155:7
**fungible** 59:7
**funnel** 71:4
**further** 24:4 25:7
 45:7 83:21 87:19
 88:7 139:12 154:5
 157:20

---

**g**

**g** 1:22 4:9 17:1
 160:3
**gallagher** 10:10
**gap** 107:1
**gaps** 139:8
**gay** 12:12
**geiger** 124:18
 151:22 152:3,7
 154:10 158:1
**general** 44:11
 100:3 104:1
**generalities**
 106:23
**generally** 127:6
**gering** 7:1
**getting** 99:4
 100:21
**getty** 4:12
**gilbert** 15:15
**give** 22:4 116:15
 152:23,23
**given** 19:13 64:9
 70:17 91:10
 134:24
**gives** 49:23 54:8
 88:7,9 108:21
**global** 94:23
**glynn** 8:1 15:8
**go** 76:11,12 86:18
 87:13,15 94:16
 98:24 104:22

112:14 113:8
116:6 119:6 129:7
135:22 139:15
145:14 147:13
152:10
**goal** 70:5
**goes** 20:24 85:7
103:3 111:25
138:25
**going** 71:4 82:18
87:25 91:5 92:3
93:20 100:12,18
102:5 103:24
104:22 105:15
109:4 110:11
111:6 112:12
122:15 138:24
145:24 146:1
152:10 155:11
**gold** 155:19
**goldstein** 12:20
**good** 17:2,3,8,14
17:20 18:3,4,7
28:23,24 36:23
37:10 52:19 54:4
62:16 63:3 73:24
75:6,8,9 76:7 81:4
93:14,19,23,24,25
94:5,7 96:6 98:5
108:23 109:5,7
110:4,8,8,9,17
111:3 112:16,18
112:19,21 113:9
113:10,13,15,25
114:10 118:20
122:19 129:9,15
130:3,10,13,16,17
130:17 131:3,3
151:1 153:3,9
159:4
**goods** 72:13 82:11
**gorkin** 9:7

**gotten** 113:23
**gottlieb** 8:8,16
**gottridge** 13:22
**governing** 56:5
57:22
**governs** 158:9
**granted** 80:4
**granting** 17:12
61:13
**grapple** 153:6
**grave** 112:1
**gray** 10:1,2
**great** 122:16
132:15
**greater** 114:6
**greatly** 134:19
**green** 1:16
**greenberg** 6:11
**greenwich** 33:14
33:24 63:11
**gregory** 7:7
**gripe** 50:7
**ground** 31:5
122:23
**grounds** 36:10
99:4,6 103:22
152:6
**group** 50:11 63:11
**guess** 122:18,20
147:17
**guiding** 44:12
140:13

**h**

**h** 1:4,9 2:1,17 3:1
3:18 6:2 11:2
**half** 61:1 107:13
107:15
**halian** 84:3,23
**halper** 14:14
**hamilton** 8:8,16
**hampton** 14:1,16
**hanchet** 4:9

**hand** 19:13 57:14
60:2 128:18
**handful** 135:19
**happened** 37:2
80:5 91:10,13,14
91:17
**happenstance**
32:10 71:11
**happy** 36:18
145:9 146:9,21
148:2 152:7
**harbor** 18:20
20:15,18,20,25
21:8,23 22:5,12
22:24 23:6,11,16
23:19,24 24:3
41:17 45:24 46:6
46:11 49:5 51:3,9
74:1,20,24 75:1
76:2 77:1,4,11,22
78:7,7,20 93:8
103:23 104:4,9,14
104:17,17 106:2
**hard** 157:2
**hau** 72:1,8
**hauser** 7:7
**head** 142:1
**headed** 111:24
**headquarters**
31:16 142:2
**hear** 47:16,20,21
47:24 48:1,3
81:23 82:23 83:1
96:13,14
**heard** 63:22 76:10
92:12,12 119:23
124:14 129:8
139:9 143:18,20
146:24
**hearing** 2:3,4,10
3:6,12
**hedge** 114:5

**held** 2:4,11 3:6,12
32:15 43:24 45:2
45:23 49:24 52:4
68:17 75:7 83:13
89:15 90:18
129:22 130:16
139:22 141:6
152:21
**helps** 24:12
**henry** 15:21
**herbert** 13:15
**herlihy** 4:12
**higgins** 15:13
**highlighted** 28:17
140:20
**highlights** 29:4
131:15
**highly** 135:2
**hill** 71:25 72:8
84:3,23
**history** 158:19
**hit** 131:14
**hold** 34:24 45:14
76:24 79:25 80:25
81:1
**holder** 149:14
158:16
**holding** 21:11,24
27:12 42:5 52:7
68:19 140:10
**holdings** 50:6
**holds** 35:11 77:11
121:23
**holdway** 6:18
**hon** 1:22
**honestly** 96:17
**honor** 17:3,8,10
17:16,20 18:4,9
23:12 24:6,13
28:20,24 30:5
32:13 33:3,9
34:16 35:9 36:8
36:15,18 37:4,9

37:17,23 38:21
39:23,25 42:14
43:13 44:24 46:23
47:15,16,21,24
48:1,10 49:1,14
50:21 51:6 52:2
52:10 53:4 56:8
60:12 61:15 62:8
62:16,21 65:19
69:20 73:6,8 74:3
74:7 75:19 81:1
81:11,16 82:13,17
84:15 86:4,12
88:6,17,20 89:10
90:2,24 92:21
93:10,17,24 94:5
94:7,12,17,20
95:3,23,23 96:7,7
96:22 97:8,14
98:6,25 99:3
102:6 103:15,23
104:22 106:5
107:5 108:13
112:13 113:8
114:14 116:6,20
118:10 122:3,12
122:18 123:6,18
124:11,16,24
125:2 126:6,11,15
127:9 128:1,18
129:5,21 130:2,8
130:10 131:6,8,11
132:9,13,16,23
133:6,8,21 134:3
134:24 135:17
136:2,22 137:8,10
138:5,15,17,18
139:12,16,17
140:12 141:13
142:3,23 144:1
145:5,6,8,14
146:5,8,8,14,18
147:6,17,21 148:2

148:17,24 149:7
150:7,23 151:2
157:2,20,25
158:14,21 159:5,6
**honor's** 38:14
42:25 52:7 75:23
76:2 126:12
129:21 134:5
**hopes** 115:2
**hosinski** 8:1 15:8
**hostetler** 6:1 18:5
62:17 94:8
**houpt** 4:7
**housekeeping**
94:15
**hsbc** 64:20 66:18
72:1,1 87:17,21
87:24 88:2 89:10
89:10 141:2
**hudson** 10:19
**huh** 82:7
**hundreds** 25:16
**hypothetical**
49:22 50:15,18,25
110:19,20,25
111:1,5 120:16
153:5
**hypothetically**
49:19

**i**

**ida** 50:9 100:12
105:15
**idea** 71:14 89:2
**identical** 124:25
125:8 140:16
**identified** 32:22
135:13 136:24
137:4
**identifies** 54:22
**identify** 102:21
106:19
**identity** 67:10

**ii** 79:9 122:3,10
150:24
**il** 7:19
**illustrated** 134:8
**illustrates** 137:14
137:15
**illustration**
138:10
**immediate** 40:9
**impact** 86:6
**implausibility**
80:11 137:11
**implausible** 24:23
80:3,23 107:1
**implications** 60:9
**imply** 55:13
**important** 90:4
97:23 99:9 100:23
101:13 126:19
132:2 144:11
152:2
**importantly**
64:22
**impose** 111:5
**impossibility**
134:11
**impossible** 24:24
57:8 58:11
**imputable** 52:14
**imputation** 30:5
30:12 32:4,23
33:1 65:22 70:18
114:18
**impute** 30:9 31:1
31:25 86:22
**imputed** 31:21
74:12,18
**imputing** 65:20
**inadequate**
115:17 117:12
120:2
**inapplicability**
123:1

**inapposite** 70:20
**inappropriate**
133:8 139:11
146:20
**incident** 55:5
**incidental** 72:8
84:9 86:2
**inclined** 145:9
146:19 148:8
**include** 61:21
96:3 107:20
**includes** 111:10
**including** 44:22
53:22 54:19 59:5
69:25 102:1
116:23 124:12
128:16 133:2
141:21 143:5
**inconsistent** 46:14
**incorporate**
122:25 123:8
158:7
**incorporated** 26:6
79:20 102:21,23
103:2 111:20,23
126:4,20,25
127:16 128:5,20
140:19 152:4,22
158:4,5
**incorporates** 26:3
80:22
**incorporating**
124:6
**incorporation**
102:15,18,19,20
103:10 111:21,23
124:17,20 125:5
125:11 126:10
127:4,8 129:2
151:12,24 152:4,9
154:10 158:3
**incorrect** 79:14
84:15 131:21

132:24
**independent** 38:2
  49:23 114:5 140:7
  148:23 149:18
**independently**
  42:2 120:14
**indirect** 38:5
**indirectly** 46:4
**indiscernible**
  24:15 72:21 73:11
  82:21 118:24
  123:15 146:7
**individual** 35:24
  68:21 135:9
**individuals** 74:15
**industrial** 119:13
**inference** 136:11
  136:16
**infinitesimal**
  83:17
**influence** 58:9
**info** 64:7
**information** 55:9
  56:24 88:16
**informational**
  88:20
**informed** 65:16
**informing** 87:25
  88:21 91:8
**initial** 19:9,14,18
  20:4,6,15,17,22
  20:25 21:12,13,20
  23:6,22 24:5
  27:24 28:2,18
  37:24 38:3,6,8,9
  38:11 39:7,17
  40:4,7,9,21,24
  41:3,3,9,21,25
  42:3,9,12,15,19
  42:21,23 43:4,8
  43:11,12 44:1,6,9
  44:16 45:1,4,10
  45:12,13,17,24

46:5,9,18 47:6,6
  48:22 49:2,12,20
  50:2,23,24 51:9
  51:12,13,16,19
  52:9,15,24 55:3
  55:14,25 56:23
  61:22,24 73:23
  74:5,12,20,23
  76:14,19 77:1,2
  78:7,12,12,19
  80:10,12,12 102:8
  102:14 103:20
  104:11 105:9
  106:19,22 109:21
  109:25 110:5,24
  112:5,10,20,25
  113:4,16 114:11
  114:12 121:17
  124:6 126:2,14
  128:10,13,16
  129:4 131:24
  132:1,20 133:23
  133:24 134:14,19
  134:23 135:4,7,23
  135:25 136:19,21
  145:24 153:12,16
  153:17,18,20,22
  153:23,25 154:22
  154:23 155:23
**initially** 18:14
**initials** 38:25
**innocent** 21:23
  23:21,22 24:1
  39:17 41:13,18,21
  41:25 42:12 43:8
  43:11 77:3 153:23
**inquiries** 64:11
**inquiry** 109:10,17
  110:13,17 111:11
  111:16 113:13,25
  130:20,21 131:3,4
  132:1 135:15
  148:13

**instance** 79:15
  83:9 128:6 133:11
  145:6
**instant** 123:1
  125:7 136:17
  141:14
**institution** 6:12
  20:9 50:11 78:14
**instructed** 45:15
**instructions** 87:11
  87:13,14,16 88:3
  88:5 91:12 100:2
**instructive** 60:24
**insufficient** 32:2
  68:5
**insufficiently**
  128:13
**insurance** 15:2
  31:24 62:24
**intend** 97:19,21
  122:21
**intended** 32:11,16
  43:9 49:5 51:2
  70:8 77:17 86:16
  86:17,23 99:15
  100:19 102:3
  116:9
**intending** 29:23
  93:7 141:9
**intendingly** 87:6
**intensive** 130:21
  148:13
**intent** 19:20 29:20
  30:12 32:2,20
  33:2,5 54:20
  72:25 78:5,23
  87:1
**intention** 63:1,15
  70:6 71:13
**intentional** 70:20
**intentionally** 71:2
**interactions** 65:25

**interest** 143:11
**interesting** 127:20
**intermediary**
  143:22
**international** 6:14
**internationale**
  4:21
**interpretation**
  43:13
**interpreted** 93:9
**interrupt** 94:14
  97:14
**interrupting**
  97:17
**intertwined** 65:24
  66:3
**introductory**
  33:23
**invest** 29:24 32:16
  63:1,15 72:25
  99:15,25 100:9
  102:2 116:8,9,13
  119:7,8 140:1
**invested** 19:21
  24:19 53:16,18
  64:9 66:4 70:4,5
  70:10 71:7 87:5
  115:9 116:7,10
  118:14 119:5,5
  136:25 137:5
  141:10,11 155:7
  155:12
**investigation**
  114:4
**investigator**
  113:22
**investigatory**
  114:6
**investing** 30:1,7
  86:22 99:23 100:4
  100:7 101:21,22
  101:23 139:25
  156:4

**investment** 2:18 3:19 18:16 19:2 19:20,25 22:14 23:12 29:5 30:2 52:7 57:15,20 63:10,19,21 70:7 70:9 75:24 76:3 85:1 99:12,13,19 99:19 100:5,16 117:5,7,11 118:5 119:4 140:6,21 148:19 149:3 152:20 156:3 157:16

**investments** 31:14 31:17 53:22 61:8 66:5,6 71:4 117:2 117:18 119:10,14 119:16

**investor** 84:14 99:22 100:25 101:14,16 110:13 111:15 119:8 140:15

**investors** 25:18,25 57:14,19 72:5 100:9 101:15,19 102:1 111:24 112:2 116:23 117:14 118:14 119:11 155:8

**invocation** 46:18

**invoke** 20:16 21:7 21:13,16,20 22:12 22:23 23:6,19 74:20,24 75:1 76:25 77:4,22

**invoked** 20:22,25 21:1 104:18

**involve** 28:2 72:12 123:24 139:3

**involved** 27:21 83:10

**involving** 120:11

**iqbal** 20:1 80:4 106:24 107:25 115:3

**ireland** 29:13 34:20 35:7 36:6 87:23 88:1,24,24 92:3

**irrelevant** 103:8 134:11

**irs** 121:12 143:19

**irving** 1:4,9 2:1,17 3:1,18 6:2 11:2 17:17 94:8

**islands** 19:2 29:5

**iso** 147:16

**isolated** 68:4 83:19

**isos** 120:1,4 121:8 121:11,15,19,19 121:21 122:1,4,5 122:6,11 143:6,8 143:14 144:21,23 144:25 156:9,22 157:9 158:12,14 158:16,25

**issue** 18:22 20:14 24:18 32:7 43:22 50:4 53:6 60:15 61:1 62:6 66:22 70:22 72:3 93:20 96:22 99:4,8 103:17 104:21 106:4 113:9 118:7 126:21 130:10 132:6,21 134:4 135:18,20 136:11 144:7 146:2 147:3 147:18 148:6 153:3,7 159:3

**issued** 38:23 43:23 50:8 52:17 130:8

**issues** 18:18,25 69:23 103:6 123:13 142:19 144:10

**item** 96:23

**i'm** 96:4

**j**

**j** 3:5,11,17,24 4:7 5:13 9:22 12:7,8 13:22 137:2

**january** 36:10,14 64:12

**jeff** 4:25 18:23 28:24

**jeffrey** 5:14 8:24 18:1

**jenner** 7:9,16 94:6

**john** 12:10 17:5

**jonathan** 13:21

**jordan** 12:20

**joseph** 6:19 8:21

**jpmorgan** 90:10 141:22

**judge** 1:23 19:24 21:10,18,22 23:11 31:23 35:20 49:18 56:14,18,22 59:19 63:3 68:6 69:1,21 70:3 71:10 76:24 77:18 81:15 89:1 104:15 105:2,5 116:20 117:10 118:15 140:13,17 141:6 142:16 153:5,20 154:17

**judge's** 56:11

**judgment** 43:25 51:18 58:16 59:21 60:20 61:10,14 131:5 158:5

**judicata** 45:5

**judicial** 96:23,25 97:4,6,12,18,24

97:25 98:2,3,13 98:20,22 126:11 127:5,11,13,21,24 152:12 154:15

**judicially** 104:16 105:2

**julie** 12:23

**julius** 14:9

**july** 25:4,4 33:22 63:18 64:5

**june** 63:10

**jurisdiction** 18:24 19:22 28:22 29:2 29:15,19 30:15,22 32:6,15 34:11,17 35:25 36:10,16 37:16 62:14,20 63:4,21,24 64:17 67:12 68:6,7,10 69:19,22,24 70:3 70:15,24 72:4,7 82:9 84:11 91:24 114:15,19,23 115:3,19 116:5,16 116:18,25 117:12 117:17,21 118:3 119:12,25 120:3,6 120:13,23 121:16 123:11 139:14,18 139:21,23 140:8 140:15 141:7 142:9 145:16,23 148:22,24 149:5 149:18 156:2,24 157:12,14,19

**jurisdictional** 29:3 31:1 36:14 83:8 85:13 142:18 142:19

**jurisdictionally** 71:1 87:7

**justifies** 61:13

## k

**k** 14:21 137:2
**kaplan** 5:8 17:21
  28:25
**katchen** 150:5
**katz** 50:7
**kay** 8:21
**kaye** 9:10,17
**keep** 94:1
**keeping** 65:12
**keeps** 123:16
  156:2
**kellner** 4:12,18
**kelly** 4:10
**kennedy** 158:22
**kevin** 4:10
**key** 58:7 63:19
  66:24 67:3
**kingate** 37:1,2,3
  73:9,10,13,15
  94:18,22,23 95:12
  95:20 96:1,3
  125:25
**kissel** 16:1
**knew** 22:2,7 23:14
  23:18 32:11,16
  51:9 68:24 70:8
  70:25 71:3 86:15
  86:17,23 93:12
  101:21,22 105:7
  105:13 109:9
  110:2 119:12,15
  153:16,17,17,18
  153:21,22,22,24
  153:25
**know** 25:10 81:23
  85:24 86:5 95:17
  96:8,9 98:16
  115:21 118:21
  119:6,6 121:4
  126:23 128:19
  138:20 139:10
  142:4 143:20

144:12,14 151:9
152:16 153:1,18
153:19,19 154:1
155:19 158:6
**knowing** 29:23
141:9
**knowingly** 87:6
115:9,10,14
**knowledge** 19:15
20:17,19,23 21:4
21:9,13,17,21
22:14,19,22 23:1
23:3,10 29:19
30:12 32:2,19
33:2,5 37:23,25
38:15,18 39:5,12
39:16 41:9,10,14
41:20,22,24 42:2
42:9,13,14 43:1,3
43:7,10 46:19
47:8 48:24 49:2,3
49:11,13,16 50:1
50:3,19 51:17,20
51:22,25 52:9,13
52:14,20 73:22
74:8,12,17,19
75:25 76:22 77:5
78:18 87:1 99:22
104:18 105:10,12
106:1 108:24
109:22 110:3,12
110:22,23 112:5
112:16 113:12,13
113:13 114:12
118:17 124:7
127:23 128:4,10
128:16,20,23
131:25 132:8
152:19,25 153:12
153:14
**knowledgeability**
112:24

**known** 74:16
112:7,10 113:4
153:10
**knows** 77:20,20
99:21 158:21
**krock** 12:21
**kruse** 158:22
**kuwait** 5:2
**kwak** 12:22

## l

**l** 2:18,18 3:19
18:15 137:7
**labeled** 63:12 69:8
**labor** 15:2 31:24
62:24
**lack** 3:5,11,24
5:13 17:20,20,25
18:7,9,23 24:9,13
24:16,18 36:9,16
42:7 49:7 52:19
55:1 62:11 72:7
73:19,20 74:3,6
74:11 76:8,11
78:25 81:16,18,21
93:3 95:23,25
**lack's** 37:13
103:24 106:5
**lacked** 23:2 55:6
55:10,12
**lacking** 56:1
138:8
**ladnsman** 8:6
**laid** 132:5
**lambe** 11:7
**landy** 150:5
**language** 79:9
154:1
**large** 156:1
**lastly** 150:7
**late** 63:10 145:22
**latham** 13:8
**lauren** 12:7

**law** 2:14 3:15,21
5:1 30:20,20,25
30:25 32:4,18
33:1 34:10 35:8
35:22 39:10 51:4
54:17 58:14 63:3
64:18 69:19 71:20
72:14 86:21 88:25
89:1 98:16 104:21
108:20 111:4
118:20,22 124:1
126:7 129:24
132:10 133:19
140:23 148:14
150:1,22 158:6
**laws** 115:1 141:2
**lawyer** 68:23
**lazar** 7:21
**lead** 29:18
**learn** 63:21
**leave** 19:11 28:19
36:17 101:11
148:15
**led** 64:11
**left** 27:20
**legal** 18:18 30:21
33:7 72:20 102:25
106:11 116:7
147:12,14,15
**legally** 33:5 86:20
86:21
**legitimate** 21:25
77:8,19,23,25
78:1,21,22
**leo** 6:20
**letterhead** 64:24
**level** 62:6 109:15
109:15,21,22
110:9 112:6
113:16 114:11,13
135:10
**levin** 2:10,23 7:14
94:5,6,10 95:3,4,6

95:7,10,19 96:6,7
96:16,20,22 97:3
97:8 98:6,10,24
99:3 101:4,7,10
101:12 105:2
112:18,23 114:17
118:1,4,9 119:1
119:22,24 122:16
123:7,13,15 124:4
126:17 127:8,20
128:6 129:9
131:18 133:2
137:8 138:19
142:4 143:19
144:17 145:13,14
146:3,3,5,7,14,24
147:8,15,21,24
149:23 151:1,2,10
157:24 158:1
159:6
**levin's** 131:20
133:6 134:10
158:7
**levy** 15:20
**lewis** 11:14
**lexington** 11:11
13:17
**liability** 76:18
**liable** 76:20,20
110:6
**liberally** 93:9
**liberty** 8:18
**licci** 66:21 72:22
**lies** 113:23
**lifland** 56:14,18
56:22 59:20 68:6
69:22 70:3 71:10
140:14,17 141:6
142:16
**lifland's** 31:23
56:12 63:3
**light** 142:13

**likewise** 123:8,12
128:2 134:7 137:3
**limitations** 44:23
45:1 158:1
**limited** 1:12 3:3,6
3:12,22,24 5:9
16:2 17:18,22
39:22 79:12 134:1
**limited's** 3:16
**line** 39:2,4,9,15,19
41:7 42:5 77:19
84:13 85:6,6
144:5 147:9
**lines** 84:1
**link** 19:17
**linkage** 28:5,16
56:3 80:13 138:7
**linkages** 28:2
**linked** 55:2 80:9
**liquidation** 1:5,10
2:2,17 3:2,18
37:21 38:20 60:19
62:23 124:22,25
133:20 140:5
149:17
**liquidator** 108:4
**liquidator's** 58:2
59:6
**liquidators** 5:17
57:11,25 117:9
**list** 87:16 144:4
**listed** 63:2 66:6
91:9 125:15
**lists** 106:20
**literally** 21:2
**litigated** 40:21
43:25
**litigation** 103:6
104:10 120:4
129:15 134:5
**little** 38:22 45:7
84:4 106:7 115:7
120:17,19 123:16

152:23,23
**llc** 2:18 3:19 18:16
**llp** 4:2,20 5:8 6:1
6:11 7:1,9,16 8:1
8:8,16 9:1,10,17
10:1,2,10,17 11:1
11:9,16 12:1 13:1
13:8,15 14:1,16
15:1,8,15 94:6
**location** 84:8 89:4
89:4
**logic** 105:10 135:6
**logical** 155:10
**logically** 92:5
**lombard** 4:3
**long** 32:18 157:2
**longer** 85:7
102:24
**look** 26:2 54:18
86:5 87:10,10
91:15 104:7 107:4
120:9 132:25
133:4 136:22
137:9,19 153:12
154:12,13 157:11
**looked** 74:7 77:18
101:10 120:13
154:17
**looking** 46:23
91:19 107:7 110:8
110:25 148:25
150:13
**looks** 153:9
**loser** 123:22
**loss** 56:8
**losses** 140:6
**lost** 149:3
**lot** 157:18
**lots** 86:4
**louis** 10:15
**low** 105:18
**lowenstein** 15:1,3

**lucas** 9:15
**lucia** 11:22
**luxalpha** 5:17
**luxembourg** 4:21
8:9,17 27:9
**lynch** 8:22

**m**

**m** 5:23 8:21 11:7
11:22 15:6,20
16:6 137:7
**ma** 6:16 10:5 13:4
**madoff** 2:18,18
3:19 18:12,15,17
19:18 20:7,8 22:3
22:7,8,10 24:3,21
25:1,7,16,21,24
26:10,13 27:13,19
27:19,20 28:8
29:24,25 30:7
32:9,12,17 47:8
48:24 53:21,22
61:22 63:12 64:8
64:8,9 65:12,15
65:18 66:7,8,9,10
69:17 74:17 77:14
77:15,21 78:1,15
79:23 80:23,23
86:14,18,22 92:6
92:7 113:10
115:10 116:16
121:4 139:25
153:14 155:7,15
155:17 156:3
**madoff's** 19:16
20:23 23:15,18
24:4 41:15 50:12
54:3,5 119:17
156:10
**mail** 82:11 83:2,2
85:25
**mails** 33:13 64:6
83:23,24

**main** 63:23 103:6
155:22
**maintain** 99:17
111:22 128:2,24
**maintained** 31:16
88:12 99:16
141:19
**maintains** 124:4
**maintenance** 68:8
**major** 69:6
**majority** 141:10
**making** 48:16
85:11 89:3 101:5
111:18 147:12
151:4
**manage** 99:18
**management** 16:9
112:2
**manager** 99:19
100:10
**manager's** 61:11
**manifested**
100:14
**manner** 125:5
**marc** 4:8
**marcella** 6:9
**march** 19:7 25:9
25:22 26:9,14
27:14 54:1 137:21
140:2 144:21
155:20
**mario** 63:17
**marissa** 11:23
**mark** 4:9 13:22
**market** 19:21
70:11 141:12
154:3
**martin** 11:14
**massachusetts**
9:19
**material** 157:18
**materials** 133:1
142:9

**mathematical**
134:11 135:10
**matrix** 153:19
**matter** 17:4 24:25
27:17 61:24 66:20
90:22 94:15,19
98:1 113:22
116:19 122:24
129:24 130:9
150:21 160:5
**matters** 34:12
96:8 97:18 147:7
**matthew** 6:7,8
18:4,6 62:17
**mayer** 4:2
**mckee** 83:9
**mckool** 14:8
**mcmahon's** 153:5
**mean** 51:8 77:3
119:11 120:15
139:7 146:8
155:12 156:8
**means** 82:11 83:2
**meet** 63:18 113:24
**meeting** 33:23
34:1,2,6 64:1,5
83:3,8,10,12
**meetings** 83:19
**melanie** 13:6
**memo** 147:14
**memoranda**
61:17
**memorandum**
2:14,21 3:15,21
99:14 102:6 107:4
107:21 109:1
118:13 121:22
140:19 155:6
**memos** 147:16
148:16
**mention** 29:4 99:8
116:20 117:25

**mentioned** 37:1,3
57:4 70:22 84:4
90:3 144:6,20
**mentioning** 48:13
**mere** 68:8 83:22
116:16
**merely** 32:9 68:24
70:24 72:8
**meritz** 14:2
**merkin** 134:7,8
135:9 136:10
**met** 67:23 110:16
111:8 136:1,3
**method** 59:25
**methodology**
58:23 59:2
**michael** 8:6 12:9
14:6 16:13
**mid** 63:18
**midway** 36:7 92:4
**migani** 34:14
**miller** 16:8
**million** 19:6 25:5
25:5,5,6 26:8,10
27:9,11 73:2 80:8
136:5,6,6 137:20
137:22 138:3,13
155:17,23
**millions** 25:16
70:4
**mind** 101:7
123:16
**mineola** 160:18
**minimal** 83:16,16
140:9
**minimum** 114:25
**minute** 81:13
93:21 117:11
**minutes** 91:19
**mirror** 31:4
**misdirection** 71:8
**misinterpreting**
39:13

**misreading** 76:6
**misrepresentation**
79:2,4
**missing** 58:8
84:23 146:17
**mistakenly** 61:20
**moment** 100:20
102:3 109:5
137:10
**money** 24:20
25:21,23 27:13,19
27:20 29:24 30:7
32:12,17 36:1
64:8,20 65:3 69:8
71:7,12,12 73:4
80:23 81:3 86:13
86:14,18 88:11
89:15,18,24 90:15
91:5 92:3,10
100:2,5,8 107:10
107:11,18,19,22
107:23 115:12
119:10 155:11,13
155:14
**monies** 57:14
141:21
**month** 64:9
**months** 25:15
43:23 155:23
156:25 158:15
**montreal** 34:22
89:20
**moon** 11:21
**morgan** 158:22
**morning** 17:2,3,8
17:20 18:4 28:24
62:16 69:9,23
93:23,24,25 94:5
94:7
**morris** 1:22
**motion** 2:7,7,8,8
2:15,20,21 3:4,9
3:10,16,22 17:12

18:8,10 19:9,10
19:13 20:14 25:10
26:20 28:18 38:19
41:16 55:20 60:16
61:13 62:2 71:25
75:10 79:24 80:3
80:12,16 81:7
86:16 94:11 96:6
97:21 98:7 99:5
103:23 108:15
110:15 115:25
123:25 127:18
131:8 133:9
135:16 138:16
144:19,22 145:4
146:21 147:8
148:13 150:24
151:16,17,18
158:3
**motions** 56:9
60:12
**motor** 72:17
**motors** 100:3
**move** 33:9 52:21
53:4,5 54:25
103:22 106:4
114:15 129:5
131:9,10 132:14
139:13 142:3
148:2 151:7,9
153:2
**moved** 36:1,9
**moving** 32:20
69:8 132:12
153:11
**muchnik** 6:20
**muffly** 8:1 15:8
**mullin** 14:1,16
**multi** 1:12 3:2,5
3:11,16,21,24 5:9
17:18,21 18:25
19:1,7,8,13,19,20
20:12 21:1,3 22:6

22:10,11 23:4,17
23:18,20 24:24
25:8,12,21,23
26:1,3,7,12,12,25
27:15,18 28:15
29:1,4,6,12,22,24
30:7,8,10,23 31:6
31:13,21 32:1,22
33:12,21,22 34:8
34:10,21 35:2,4
36:8,11 39:3
43:21 46:13 49:15
51:5,8 53:17,20
55:23 62:19,21
63:8,12,15,17,18
63:20,22 64:1,5
64:19,22,23 65:4
65:9,13,16,19
66:2,4,7,14,17
67:1,7,10,25
68:12 69:6,12,17
69:23 70:15,16
71:2,12,15,16,22
72:16,24 73:1
76:4,13 77:25
78:2 79:11 80:8
80:20,24 81:7,12
81:14,18 83:24
87:14,15 88:2,9
88:13 89:17,19,20
89:21,23 90:24
91:1 94:18 95:14
95:16,25 99:6
106:6 117:23
123:2
**multiple** 124:13
124:15 125:1
133:12 155:4
**munno** 16:6
**mutual** 100:14
119:8,9
**myriad** 111:3

**n**
**n** 4:1 7:18 17:1
**n.v.** 87:18
**n.w.** 8:10 9:19
**name** 17:19 62:16
87:17,19 88:9
90:18,23 94:4
121:9,9,10,13,25
145:1 156:12
**narrow** 31:2
105:3 146:1,2
147:3,18
**narrowly** 105:5
**national** 5:2 67:16
**natixis** 15:16
**naturally** 130:22
**nature** 129:11
**nbk** 5:2
**near** 49:17 139:1
**nearly** 18:19
24:20 25:8 27:23
125:8 135:17
140:1
**necessarily** 77:4
95:6 96:18 97:6
**necessary** 55:7
56:16 59:21 84:22
115:19 136:12
141:25
**need** 17:23 26:1
40:20 43:5 50:25
51:10,10 72:19
131:23 133:24
134:24 136:15
147:13,16
**needed** 34:19
63:13 99:17
**needs** 115:25
139:10
**negate** 158:14
**negated** 84:24
**negates** 143:23

**negotiate** 29:7
**negotiated** 33:16
33:25 84:6,10
85:5
**negotiation** 83:20
86:1
**neither** 30:10,24
99:20
**nelson** 11:23
**net** 123:22
**netherland** 87:18
**netherlands** 29:10
**nevada** 70:25
**never** 32:4,19
70:22 119:5
147:10 152:18
158:25
**nevertheless**
56:10 58:20
134:20
**new** 1:2,17,17 4:5
4:16,23 5:4,11,21
6:4 7:5,12 8:4,19
9:4,13 10:13,20
11:5,12,19 12:5
12:16 13:11,15,19
14:4,12,19 15:11
15:18 16:4 29:24
30:7,8,9,20,25
31:12,16,21 32:1
32:3,12,17 33:11
33:14,17,22 34:3
34:10,11 35:4,6
35:10,12,14,17,18
35:25 36:3,6 37:2
54:1 62:2 63:18
64:17,21,24,24
65:2,4,10 66:3,6
66:11,11,13,14,18
67:1,5,8,8,14
68:22,23,24 69:4
69:7,14,16,16,17
69:18 70:6,10,10

71:7,15 72:6,14
72:24,25 83:4,9
83:11,12,18,22
84:8,8,18,19,20
84:21,25 85:8,10
85:12,15,19,20,21
87:7,21 88:7 89:5
89:7,11,13,14,16
90:10 91:2 92:4
95:5 111:10 115:9
116:25 117:10,12
117:17,21 118:14
120:16,18,22,25
140:1,20,23 141:1
141:3,8,9,11,12
141:20 142:2
148:20
**newman** 5:16
15:21
**nexus** 148:21
**nicholas** 2:16 6:6
17:9 94:7 97:16
**nicole** 15:6
**nigeria** 90:7,9,18
**nigerian** 67:15
90:3,4,6,8,10,11
90:13,19,20
**nine** 155:23
**nj** 15:4
**noel** 22:17
**nominally** 90:17
**non** 27:19 34:23
35:16,24 36:1
67:10,13,16 84:14
116:7
**notable** 69:10
**note** 36:8 52:6,21
61:8,12,23 73:12
77:7 102:25
**noted** 28:1 34:13
75:14 125:23
130:25 134:3
142:17 154:14

155:6
**notes** 127:15
149:10
**notice** 2:3,7 3:9
54:8 56:14 57:1
96:23,25 97:5,6
97:12,18,24,25
98:2,3,13,20,22
109:10 110:13
126:11,24,25
127:5,11,13,21,24
130:20 131:3,4
152:12 154:15
**noticed** 60:12
**noting** 40:2 54:14
95:10 131:3
**nowell** 8:14
**number** 87:20
88:7,10 91:11,20
91:22 124:12
141:20 144:10
**numerous** 64:6
111:11 115:22
133:15
**nutshell** 145:4
**ny** 4:5,16,23 5:4
5:11,21 6:4 7:5,12
8:4,19 9:4,13
10:13,20 11:5,12
11:19 12:5,16
13:11,19 14:4,12
14:19 15:11,18
16:4,11 160:18

---

**o**

**o** 1:21 17:1
**object** 96:24
97:17 103:16
**objection** 17:6,10
17:11 108:8
**objections** 104:8
**objective** 49:5
51:2

**objects** 127:20
**obligation** 19:17
61:7 81:2,5
**obligations** 61:16
**obtain** 40:20
43:25
**obtained** 51:17
54:5 101:15
**obtaining** 43:18
**obviously** 91:22
97:24 110:21
**occurred** 20:6
131:2 138:2
156:25
**occurs** 109:24
**odier** 4:3
**offer** 62:4
**offering** 99:14
118:12 155:6
**office** 5:1 84:17
**officer** 70:24
156:5
**officers** 74:8,15
**official** 160:4
**offshore** 18:12
**oh** 17:25 24:13
81:12 84:12 89:25
94:13 104:23
121:3
**oil** 90:4,6,8,11,11
90:13,19,20
**okay** 18:3 24:8,17
24:18 37:10,12
48:3,5,10,11
62:12 73:16,18
76:7,11,15 78:24
81:9,20 82:17,17
82:25 83:3 85:20
92:14,20 93:13
95:2,9,13,13,22
97:4,23 101:4,12
112:22 114:16
117:25 118:7

119:21,22 148:4,7
148:15 152:22
154:5
**old** 160:16
**oliver** 6:9
**once** 131:24
135:13 139:24
**onecoin** 35:21
68:11
**ones** 99:7 104:12
146:2
**ongoing** 100:20
**oops** 94:1
**open** 118:7 122:12
157:17
**opened** 120:1,4
121:2,8 139:24
141:18 142:25
143:3 144:20,22
145:1 156:6,12
158:12
**opening** 50:10
79:2,5 116:6
121:12,13,15
141:25 143:4
149:12
**opens** 90:9
**operated** 19:3
63:11
**operating** 125:12
**operation** 150:1
**operations** 112:3
**operative** 102:24
126:22 128:15
**opinion** 19:24
21:10 24:25 30:11
39:23 74:2 90:13
105:11 106:11
147:24 153:6
154:2
**opportunities**
80:7

**opportunity**
145:12
**opposing** 26:19
80:16 111:3
**opposite** 21:6 77:2
**opposition** 2:14
2:15,21 3:15,16
32:21 43:20 70:12
111:2 115:24
145:16
**oral** 80:17 146:25
**order** 17:12 39:2
39:4,9,15,19
40:21 41:7 43:18
74:11 124:3
151:11
**ordinarily** 108:14
**organized** 29:5
**original** 36:9,12
56:12
**originated** 136:11
136:17 138:1
**originating**
136:20
**orms** 3:25 160:3
**oswald** 5:23
**outcome** 132:9
**outset** 94:17
122:23
**outside** 84:6,10
85:5,10 142:10,20
157:10,11
**outstanding**
149:20
**overlap** 99:7
**overruled** 70:17
131:7
**overrules** 70:19
**overwhelming**
54:15
**owned** 89:24
**owns** 67:20

**p**
**p** 4:1,1 17:1
**p.c.** 5:16
**p.m.** 159:8
**page** 26:18 31:10
39:23 40:9 41:11
42:6 43:20 45:5
46:1,19 53:3
55:11 56:13 61:4
64:23,25,25 65:8
65:8 69:5 100:12
107:4 125:17,22
127:19 128:11,17
130:1 132:17
134:6 137:9
144:22 145:2
151:16,17 156:14
156:14
**pages** 32:5 47:2
48:19 70:12
102:22 145:2
146:12 156:15
**paid** 58:5,6 61:6
155:8,17
**paint** 71:5
**panama** 4:13
**papers** 96:18,19
115:24 121:7
124:17 125:4
129:17 142:6,7
150:6 151:23
152:10,17 155:16
156:4
**paragraph** 27:1,4
27:10 30:4 31:18
77:1 115:8 124:8
125:6 126:21
131:23 137:1,6
141:23 149:5
158:10
**paragraphs** 21:11
112:1 141:17,18
150:15

**paribas** 71:24
72:2 84:12
**park** 4:14 8:3
15:10 16:3
**parke** 85:8
**parson** 4:13
**part** 18:1 39:10
39:13,20 41:6
42:6,10,16,20
43:9 58:11 64:10
68:17 85:14 96:25
150:2 156:25
**part's** 68:16
**participants**
125:24
**participated**
125:14 126:8
140:4
**participating**
125:15 126:5
**participation**
125:18 149:16
**particular** 77:5
88:18 111:5
132:22 135:8
**particularly**
129:15 132:2
**parties** 21:25
43:22 54:20 66:1
81:19 83:11
120:25 139:4
140:23 142:22
**partner** 18:1,23
65:18
**parts** 91:23
**party** 32:5 35:16
60:13 67:11,13
104:24 106:2
116:23 117:1
118:20 120:16,16
120:18 121:13,23
131:18

**party's** 30:17
**pass** 141:1
**passage** 23:11
**passed** 27:23
**passing** 36:2
88:11
**passive** 66:25
**pathways** 137:16
**patience** 114:15
**pay** 61:7 85:18
87:21 88:5,6
107:19
**payment** 20:10
89:9,12,22
**payments** 29:12
57:12 67:8 78:16
84:8 87:13,15
105:21 111:18
117:13 141:1,2
**pennsylvania**
8:10
**people** 77:9 85:2,2
116:17
**percent** 61:1
79:24 140:22
**perform** 61:9
**period** 25:2 75:20
140:1 157:14,16
**periods** 28:4
**permit** 102:19
111:22 115:2
**permits** 102:18
**permitted** 36:21
124:20 127:3
**permitting** 33:1
**person** 82:10
89:17 143:10
158:20,23
**personal** 18:23
28:22 29:2 32:15
34:11,17 36:10,16
62:13,20 63:4
67:12 68:6,7,9

[personal - preliminary]                                                Page 29

69:22,24 70:3,15
70:24 72:3,7
114:15,19,22
115:3,18 116:5,16
116:18,24,25
117:17,21 118:2
119:25,25 120:2,6
120:13,23 123:11
139:14,18,22
140:15 148:21
151:3 156:24
157:14
**personalities**
30:21
**personnel**  31:15
84:19
**persons**  87:25
**perspective**  88:13
**persuasive**  67:19
**pertinent**  142:21
**petition**  20:13
23:23 25:2 75:16
**petroleum**  67:16
**phone**  33:13
83:23,24 85:11,24
**phrase**  105:17
**physical**  63:23
82:8,9,14,18,22
82:23 83:6,7
**picard**  1:4,9 2:1
2:17 3:1,18 6:2
11:2 17:5,17
31:23 45:22 55:4
62:23 94:3,9
130:6
**pick**  48:10
**picks**  110:1
**picture**  58:11 71:5
**piedrahita**  22:17
22:25 23:2 52:11
73:22 74:8,14
75:3,13,15,22,25

**piedrahita's**
52:13
**piercing**  31:6
**pincus**  12:7
**place**  6:14 29:6
32:12 85:15
**placement**  61:17
140:19
**places**  67:25
85:17
**plain**  103:4,5
152:5
**plaintiff**  54:24
62:4 65:25 70:25
79:25 114:24
142:8,13 152:6
**plaintiff's**  30:16
142:14
**plausibility**  37:14
107:9 123:3 150:8
**plausible**  26:11
81:6 106:17
107:13 108:2
114:22 123:23
132:25 133:5
134:25 135:2
138:12 157:19,19
**plausibly**  18:21
28:12 54:9 55:13
56:4 106:13,15
108:7,9 124:5
127:22 128:23
129:3 136:4 150:9
**played**  69:3,6
**plaza**  6:3 8:18
14:3,18 16:3,10
**plead**  39:5 41:24
42:2 43:3,7 49:16
52:19 56:20 59:18
79:25 80:2 138:7
**pleaded**  149:9
**pleading**  24:22
36:13 38:16 42:24

47:5 48:22 53:11
54:7,23 56:15,18
58:1,15,19,21
59:3,11,17 60:6
60:18 61:18 62:4
131:5 132:24
142:20
**pleadings**  28:3
79:21 124:21
133:4 142:10,12
157:10,12
**please**  82:12
129:7 131:10
139:15
**pled**  37:24 38:14
42:25 57:22 149:1
150:14
**pllc**  12:12
**plus**  85:9
**point**  28:20 53:2
54:16 58:17 67:19
70:14 89:18 92:25
94:20 100:21
102:5 108:19
118:9 121:1 122:2
122:19 124:13,19
125:13 126:16
132:2,18 138:16
139:8,13 141:15
142:16 145:2
146:9,15 147:15
148:6 151:3 152:2
154:24 158:12,18
**pointed**  80:10,15
115:23 153:4
154:5
**points**  33:20 87:9
104:1 114:18
123:7,8
**polan**  8:23
**police**  70:24
**ponzi**  53:21 54:6
61:2 65:15 66:10

77:14 92:6 100:20
**porter**  9:10,17
**portion**  56:13
59:22 60:21
133:16 134:25
135:14 136:16
137:25 138:12
**portions**  51:19
**porzio**  5:16
**position**  51:6,8
113:12 152:3
**positions**  128:2,25
**possession**  44:8
138:20
**possibilities**
153:14
**possibility**  154:18
**possibly**  144:7
**potential**  53:21
65:15 66:10
153:12
**potentially**  70:19
**powers**  114:6,7,7
**pre**  2:3 111:4
153:8
**preceded**  26:17
64:1
**precedence**  34:14
123:9
**precedent**  30:11
126:8
**preceding**  25:2
**precise**  69:13
**precisely**  26:21
48:25
**precondition**  44:1
**predicate**  84:22
84:23
**prejudice**  79:10
**prejudiced**
138:20
**preliminary**  99:4
99:8

**premature** 60:18
134:12 146:20
**premised** 59:2,12
**prepared** 96:8,11
96:12
**prerequisite**
63:24 82:9
**presence** 63:24
82:8,18,24 83:6,7
83:22
**present** 18:1
62:25 87:7 141:6
**presentation**
97:22 124:15
129:13 144:1
**presented** 19:1
86:9
**presenting** 86:19
**preserve** 104:20
**president** 63:17
**pretend** 86:10
**pretty** 82:5
**prevail** 41:16
**prevails** 51:16
**prevent** 43:9
**prevented** 112:2
**prevents** 20:4
**previously** 49:25
126:15 129:21
131:14 139:22
**prima** 29:16
142:8
**principal** 29:6
35:24 144:6 157:4
**principle** 30:18
**principles** 30:14
30:24 44:12,24
102:25 140:13
150:5
**prior** 37:19 73:24
121:16 136:20
155:23 156:25

**private** 61:17
140:19
**privilege** 34:3
35:3 89:6 151:4
**privy** 34:14
**problem** 24:22
101:4 107:9
**proceed** 24:7
54:16 60:25 96:16
123:19
**proceeding** 2:1
3:1,4,9 40:12
46:25 48:18 94:2
99:11 104:24
116:14,24 118:21
124:22 125:3,14
125:19,24 126:9
131:19 140:5
145:24 149:2,21
149:25 150:2
151:24,25 154:11
154:11,12
**proceedings**
18:11 125:1 159:8
160:5
**proceeds** 61:13
**process** 113:1
149:16
**processed** 141:3
**produced** 139:6
**proffered** 79:18
**profiting** 70:6
**prohibits** 104:4
**projected** 85:21
**prominent** 140:20
**proof** 62:4,6
121:19,19 156:15
157:7 158:19
**proper** 102:17
116:1 145:21
**properly** 145:10
148:12

**property** 18:14,22
24:7,19,21 25:17
26:13,18,24 27:3
27:7,11,18,22
28:10,12,16,21
44:16,17 52:22
53:6 54:11 57:9
57:18 58:13,15,22
59:10,16,19,25
60:2,9,11,14,21
64:3 71:22 73:3
79:1,6,13,16,23
80:9 92:8 93:4
102:8 105:22
106:4,15,19 107:2
107:18,25 108:2,7
108:11 115:11,14
123:5,22 132:14
132:21 133:13
135:1,15,21 136:7
137:12,17 139:13
150:11,19 151:5
154:7 155:1,9,12
**propose** 110:14
**proposed** 17:12
**proposition** 21:7
42:8
**proskauer** 9:1
**protect** 21:25 77:8
93:7
**protected** 46:4
154:2,3
**protection** 20:18
51:11 105:7
139:21
**protections** 23:16
115:1 141:8
**protects** 78:12,12
**prove** 44:15
**provide** 49:5 51:2
56:25 57:1 72:10
108:5 145:9
146:19

**provided** 57:23
134:8
**provides** 140:7
148:19
**providing** 126:23
**proving** 61:21
75:8 130:19
**provision** 69:19
**provisions** 64:18
**prudential** 10:3
**public** 6:12
**publicly** 54:3
**purchased** 33:21
**purchasing** 71:6
158:25
**purely** 110:19
153:4
**purported** 29:25
56:17 136:13
143:16 147:9
**purports** 58:24
**purpose** 53:18
66:5 72:25 90:11
97:19 109:11,18
110:18 111:12,17
113:18 114:8
158:24
**purposeful** 34:2
62:22,25 66:25
67:3,6,9,21 68:1
68:18 69:2 70:21
91:25 118:23
119:1,2 139:20
**purposefully** 35:3
89:6 114:25 119:3
141:7 157:15
**purposely** 30:2
**purposes** 38:18
54:20 86:16
111:21 127:17
139:22,25 141:25
**pursuant** 56:5
100:16 127:6

[pursuant - recovery]                                                    Page 31

149:22 150:12,15
**put** 17:23 23:11
  34:19 88:15
  109:10 110:13
  157:17,23
**putting** 127:7

**q**

**qualify** 86:2
**queen** 142:14
**question** 32:8
  37:1 39:24 44:25
  50:4 55:22 59:4
  73:9,19 75:18
  81:9,24,24 82:1
  104:23 106:10,11
  106:13,14 111:8
  112:15 148:12
**questions** 24:6
  28:21 33:9 36:18
  53:5 62:9,10 66:9
  73:6,18 92:21,22
  96:10,13 122:12
  123:24 129:5
  131:8 132:14
  138:17 139:12
  143:15 157:21
**queue** 147:25
**quick** 92:24,25
  93:15
**quickly** 61:3 86:8
  87:9 93:16 148:1
**quite** 21:6 143:2
  151:6
**quote** 23:12 27:1
  27:6,11 30:1,3
  31:15,17 35:23
  36:3 40:8 42:16
  44:4 45:15,23
  46:17 47:3 55:11
  56:16,19,24 61:3
  61:20 65:15 67:19
  68:15,15 69:3
  72:22 82:5,6

100:12,18 105:17
  111:24 125:21
  127:15 128:14
  129:22,25 130:21
  133:22 144:6,20
  145:3
**quoted** 23:12 39:3
  68:13
**quotes** 40:18
  44:12 47:1 48:15
  48:19 143:25
**quoting** 41:11

**r**

**r** 1:21 4:1 9:8 17:1
**rachel** 8:23
**radder** 11:22
**raise** 38:5,9 39:25
  40:7,10,14,16,23
  44:8,25 45:9,10
  45:14
**raised** 123:13
  145:10 147:19
**raises** 69:24
**raising** 38:12
**rakoff** 21:10,18
  21:22 23:11 76:24
  77:18 81:15
  104:15 105:6
  153:20
**rakoff's** 19:24
  105:2
**randy** 11:14
**rationale** 22:11
  77:24
**reach** 58:20,24
**reached** 73:14
  116:13
**read** 44:13 47:1
  48:15 59:14 68:15
  101:9 156:12
**readily** 128:21
  138:9

**reading** 131:20
**real** 20:14 155:25
**really** 61:3 86:9
  92:18 96:19 99:9
  134:9 144:18
  147:24 153:6
**reason** 21:21,24
  22:4,8 38:17
  60:17 75:5 105:6
  116:12 121:15
  134:18 138:15
**reasonable** 61:6
  61:15 110:13
  139:18
**reasons** 52:12
  58:2 64:16 67:21
  102:17 124:12
  129:1 131:6
  150:23
**rebut** 76:9 98:22
  138:18 142:4
  143:18 149:23
**rebuttal** 36:21
  73:7
**receipt** 64:2 73:2
**receive** 89:17
  141:21
**received** 23:22
  25:9,21,23 26:13
  27:13,15 28:8
  54:10 55:18,20
  57:3,9,17 58:22
  60:10 69:13 73:13
  79:7,12,15 80:8
  89:9,12 90:14
  92:8 93:4 105:21
  107:3,18 108:7,10
  115:11,14 118:13
  125:25 136:23
  137:4 138:1,3
  150:10 155:1,11
  155:17 157:3

**receives** 89:21
**receiving** 51:14
**recessed** 93:22
**recipient** 150:18
  157:7,8
**recitation** 115:18
**recited** 143:23
**reciting** 128:7
**recognize** 104:21
  152:19
**recognized**
  100:11
**recognizing** 134:1
**reconvened** 93:22
**record** 17:4 54:7
  59:4 122:24 127:9
  131:2
**recording** 160:5
**records** 28:14
  62:1 108:5 139:2
  139:4,6 144:12
**recoup** 140:5
**recover** 18:11
  19:5 23:14 27:2,9
  37:19 40:3 42:17
  44:6,18 45:3
  51:18,24 56:21
  64:3 69:14 71:21
  73:4 102:7 125:10
  126:5 133:13,16
  133:22 136:9
  149:2
**recoverable**
  150:19
**recovered** 76:23
**recoveries** 149:17
**recovers** 46:8
**recovery** 39:6
  40:1,16,22,23
  41:1 43:18 44:2,7
  44:10,20 45:16
  46:3,11 47:4
  48:21 49:24 51:7

**redeem** 66:12

52:5 73:15 94:24
103:7 104:5
117:13 125:10
131:17 133:24
**redeem** 66:12
**redeemed** 53:22
65:13 66:9
**redeeming** 65:17
**redemption** 25:9
25:22 26:14 27:16
27:18 29:8,11
53:25 57:12 59:7
64:2 65:5,7 67:8
72:4 73:2 89:9,12
89:21 105:21
111:18 117:13
141:2
**redemptions**
24:20 58:5 105:23
139:5
**ref** 158:13
**refer** 18:16 46:11
76:17 116:21
127:9 133:6
**reference** 26:4,6
43:22 79:20 80:22
81:19 102:15,19
111:20 121:11
124:17,21 125:5
125:11 126:21
127:16 128:5
129:3 142:20
143:6,8 151:12,24
152:4,9 154:10
158:7
**referenced** 98:11
115:23 143:19
158:17
**references** 99:14
147:9
**referencing** 158:9
**referred** 95:21
158:2

**referring** 79:8
104:12 146:15
**reflects** 42:10
77:7
**refused** 22:24
**refuted** 53:2
**regarding** 43:17
63:18 64:11
143:13,15 150:8
**regardless** 126:10
**regulatory** 114:7
**rehearsed** 88:25
**reiterated** 50:22
**reiterating** 131:13
**rejected** 68:6
124:1 131:7
**relate** 34:5 36:5
73:1,3 92:1,5
95:20 121:3
149:24
**related** 2:9,16,22
3:4,10,17,23 39:9
67:21 71:15 72:9
96:2 140:4 143:7
150:5,18
**relatedly** 44:19
**relatedness** 72:20
91:21
**relates** 33:10
34:17 72:15
103:19 120:3
121:4 149:14
**relating** 124:7
**relationship**
72:18 105:18
117:20 139:4
144:13,14 145:3
147:10 148:12
156:18
**relationships**
100:24 101:13
**relevant** 39:12,17
44:1 50:2 53:1

56:13 63:25 67:4
67:14,17 68:21
71:1 73:22,25
82:12 83:7 103:17
123:9 137:16
144:5
**reliance** 149:8
**relied** 69:21
126:18 151:14,22
**relief** 152:6
**relies** 30:11 55:3
71:17
**rely** 124:14 139:4
152:7
**relying** 70:18
124:18 127:3
**remain** 27:6
**remained** 50:22
**remaining** 79:9
**remains** 17:13
149:9,20
**remark** 151:4
**remarks** 96:11
116:6
**remember** 91:23
100:23 101:13
**removed** 24:4
**render** 57:7
**rendered** 130:15
**renders** 80:2
**renewed** 80:15
**repeat** 24:11 33:7
92:15,19
**repeated** 79:2
**repeatedly** 139:9
**repeating** 92:18
104:2
**repeats** 78:10
**replead** 54:24
**reply** 2:20,20 3:21
28:1 35:21 39:4
46:13,20,24 48:13
48:14,17 56:9

58:24 60:3 66:15
67:2 68:12,16
103:15 122:22
124:20 125:20,22
126:17 128:8,11
128:17 129:17
132:17 144:18,24
145:2,8,10,17,21
146:4 147:20
**reported** 43:19
**representation**
79:11
**representative**
125:22 143:14
**representatives**
12:14 33:13,22
143:13
**represented**
101:18 143:10
**republic** 90:7
**request** 53:25
65:7 96:23,24
97:1,8,9,11 98:13
98:24,25 126:20
127:11 154:15
158:7
**requests** 29:8
127:5,12
**require** 41:7 42:1
56:2 59:10 86:25
108:1,1
**required** 28:11
31:20 37:21 43:3
52:18,20 58:14,25
59:17 61:9 62:4
72:19 105:18
109:3,6 136:18
138:6,7,24 140:25
**requires** 23:3
31:10 32:24 39:4
44:5 103:3 113:12
125:9 130:21

requiring 129:12
requisite 126:24
res 45:5
research 114:5
resolvable 148:12
resolve 131:4
  142:18,19
resolved 144:8
  149:21 150:2
resolves 148:6
resolving 142:13
respect 30:20
  34:12 53:12 74:13
  74:14 75:5 81:7
  93:6 106:6 113:10
  114:18,18 115:6
  120:6,13,23
  129:15 151:18
respectfully 33:7
  36:15
respectively 25:5
  127:15
respond 62:18
  66:14 128:3,21
  145:12 146:9
responded 36:11
  53:24 79:3,5
responding 32:14
  37:12
response 79:1
  92:25 93:1,2
  147:15
responses 2:12
rest 62:8 92:21
result 23:24 31:23
  32:9 33:8 42:24
  51:11 95:11
  103:11 141:14
  150:3
resulting 116:14
results 132:20
retain 123:21
  140:21 151:5

retroactively
  120:6 149:12
return 150:20
returned 157:7
returning 42:5
reveal 61:12
  115:3
revealed 54:3
reviewed 125:7
  135:12
reviewing 128:22
  138:25 144:11
rewrite 158:19
richard 2:9,23 5:6
  7:14 94:5
richter 14:1,16
right 24:15 37:18
  38:2,5,8 39:22,25
  40:7 43:17 48:8
  49:23 73:9 74:3
  74:10 84:17 89:23
  92:17 95:22 96:16
  96:21 119:22
  139:15 145:15
  146:10,21,24
  147:5 155:21
rise 116:15
road 160:16
robert 3:5,11,24
  5:13 17:20
rockefeller 6:3
  14:3,18
role 69:3,6 140:20
ronald 12:21
room 85:16
rooted 68:8
ropes 10:1,2
rosa 9:22
rose 9:1
roseland 15:4
rosenthal 8:24
route 89:5

routed 36:6 92:10
routing 69:3
  87:22
rudnick 13:1
rukavina 5:18
rule 23:9 41:5,13
  53:11 54:8 56:14
  62:3 102:18 103:3
  124:10,11,18
  127:6,18 151:18
ruled 37:23 84:13
  105:16 116:22
  118:16,18
rules 121:23
  122:9,23
ruling 77:2
  104:20 131:19,20
  147:1,2 152:1
rumors 65:18
running 92:6
rushaid 66:21
russell 9:7
rxr 16:10

          s
s 2:9,16,22 3:5,11
  3:17,23 4:1 12:9
  17:1
s.a. 1:7 4:13
sa 2:2,10,23 94:3
sa's 2:15,20
safe 18:20 20:15
  20:18,20,25 21:7
  21:22 22:4,12,23
  23:6,11,16,19,24
  24:2 41:17 45:24
  46:6,11 49:5 51:3
  51:8 73:25 74:20
  74:24 75:1 76:1
  76:25 77:4,11,22
  78:6,7,20 93:8
  103:23 104:4,9,14
  104:17,17 106:2

samuel 12:22
sandler 15:1
sas 2:8
satisfaction 54:4
  134:2,21
satisfied 50:10
  53:11 61:7,16
  113:6 114:13
  133:14 134:4
satisfies 54:7
  137:13
satisfy 49:20 50:5
  50:14,17
saving 91:18
saying 78:9,10
  86:10,13 90:23
  107:16 112:15,17
  113:2 114:2,8,20
  147:7 148:18
  151:23
says 19:14,19
  20:21 26:15,15,18
  52:22 57:11 63:23
  66:17 67:25 76:13
  77:2 78:18 79:13
  85:20 87:10,19
  88:4,7,15 89:12
  89:25 98:16,17
  107:13 112:18
  113:11,19 115:8
  121:12,18 147:1
  151:10 152:8,12
  153:3 154:10,10
  154:17
scared 53:21
  65:15 66:10
scenario 41:23
scheme 53:21
  54:6 61:2 65:15
  66:10 77:15 92:6
  100:20
schiller 10:17

scholer 9:10,17
schwab 100:2,4,6
  119:7,9,10
scope 103:6
  148:11 156:17,18
scores 85:23
searched 157:2
sec 114:6
second 20:24 21:5
  21:15 23:25 26:5
  27:4 30:20,25
  31:8 32:3 33:10
  33:10 44:19 50:7
  50:8 52:16,17
  53:17 59:6 64:2
  64:12,18 73:24
  77:10,11,16 79:19
  100:11 101:25
  102:23 103:22
  104:7 105:16
  106:25 109:9
  116:3 126:12
  127:14 130:19
  131:23 142:11,15
  151:22 152:21,24
  158:6
secretly 100:18
  102:2
section 18:20
  19:14 20:3,3,21
  21:2,18,24 23:16
  36:1 37:13,18
  38:24 40:2,10,16
  41:16 42:18 44:5
  45:18 46:10,11,18
  47:4 48:21 49:4
  49:18 51:2 75:4
  76:17,17 77:7,17
  78:5,11 103:24
  105:17 108:13
  111:19,23 125:8
  129:12,18 130:13
  134:2,21 153:2

secure 78:2
securities 2:18
  3:19 18:16 20:11
  22:1,2,3,7,9 23:15
  29:25 41:15 49:6
  49:19,21 50:5,10
  50:13 51:3,10
  63:2 70:11 74:17
  77:9,16,21,22
  78:3,16 99:16,18
  99:23 100:3,9,15
  101:16,21,23
  102:2 104:19
  105:8,14,19,24
  106:3 110:22
  116:9,14 118:14
  119:4,5 141:12
  153:15 154:3
  158:24,25
security 6:13
see 46:23 47:10
  64:14,25 65:7
  93:5 107:10 143:4
  153:11
seek 19:10,11
  133:24
seeking 97:9,11
  149:2,16
seeks 19:5 23:14
  27:2,9 30:9 44:6
  44:18 45:3 51:18
  56:21 64:3 69:14
  71:21 125:10
  137:10
seen 93:10
seiji 15:21
seiler 5:8 17:21
  28:25
selection 64:18
  69:19 140:24
selects 35:11
seledy 12:12

send 87:25 100:2
sending 65:3
sense 52:1 68:19
sent 25:5 26:10
  33:13 53:15 57:23
  64:6,10
sentry 19:6,15,18
  19:19,20 20:7,9
  20:22 22:9,10,10
  22:22 23:19 24:19
  24:20 25:1,6,8,15
  25:24 26:6,8,10
  26:17 27:5,15,20
  28:8 29:8,23,23
  30:23 31:7 32:12
  32:16 33:21 34:9
  34:20 35:4 40:5
  52:24 53:14,15,17
  53:23,24 55:19,21
  55:22 57:9,12
  58:3,9,9 59:7 60:2
  61:16 63:10,12,19
  63:21 64:11 65:3
  65:5,10,17,21
  66:3,4 69:7 70:5,9
  71:3 74:23 78:2,3
  78:14 79:12,22
  81:4 83:25 86:18
  87:12,14,16,19,22
  87:24 88:12 99:12
  99:13,15,16,22
  100:7,8,8,17,24
  100:25 101:14,15
  101:15,16,18,21
  101:22 102:1,14
  103:12,20,21
  105:21,25,25
  106:3,21,22 107:1
  107:2,11,11,14,17
  107:21 108:4,5
  109:3,13,14,19,25
  110:9,10 111:13
  111:16 116:7,8,11

116:13,23 117:1,3
  117:8,11,13
  118:13 119:5,19
  128:16 136:24,24
  137:5,17,21,23
  138:3,13,14 139:6
  152:19 155:6,7,8
  155:10,11,22
sentry's 20:23
  22:25 28:13 29:13
  30:6,9 31:14,17
  31:20 32:1 38:14
  43:1 56:5,6 57:13
  57:19,22 86:22
  111:17 112:1,3
  117:18
separate 30:21
  44:20,22 45:16
  52:5 120:11
separated 119:19
separates 110:7
separation 51:7
series 18:10 71:17
  86:6
services 27:8
  72:10,13
set 44:11,21 55:16
  56:14,16,18 61:25
  102:4 107:17
  124:8,16 125:6
  139:2 157:19
sets 49:25 105:18
  113:17
settle 84:2
settled 40:13
settlement 17:12
  20:10 73:15 78:16
  94:24
seven 64:10
seventh 10:12
  11:18
seward 16:1

shaiman 12:8
shapiro 55:4,24
shareholder
30:22,23 31:2,4
31:11 83:5,25
87:1
shares 29:23
33:21 71:6 100:2
129:23
sharfstein 16:8
shearman 11:9
sheehan 3:17
sheila 3:25 160:3
sheppard 14:1,16
shift 50:19
shoes 38:6,13
43:11 45:12,19
76:14
short 28:4 31:25
54:13 68:18 103:4
103:5 146:12
152:5
shortly 33:20
138:3
show 24:23 28:5
28:11,16 39:10,13
40:4 44:5 61:5
80:7 108:11
113:17 121:6,7
125:9 137:11
144:3 155:16
156:4 158:15
showed 36:14
showing 32:25
52:20 92:2 139:5
shows 25:20 32:19
52:8 89:25 134:8
134:9 137:24
144:2 158:13
sicav 5:17
side 79:1
sidley 11:16

sigma 137:4,5
sign 17:15 81:12
81:14
signature 160:7,8
signed 29:9 69:18
83:4 84:19 140:18
143:5,9,17 149:11
156:6
significant 64:15
148:20
signs 119:9
similar 58:19
94:22 122:23
134:8
similarly 61:15
98:8,10 130:2,18
simple 24:25
58:25 59:1 95:6
135:6 146:13
simply 25:19,19
26:11 28:10 40:14
46:21 60:17 71:5
71:19 80:23 81:6
106:20 118:10
119:12 133:8
157:13 158:18
simultaneous
155:2,2,3
simultaneously
127:23
singer 12:23
single 19:5 24:23
26:13 27:2 28:15
34:6 49:25 58:18
68:24 134:2
sipa 94:9 116:14
121:22 122:8
124:25 144:15
149:2 154:11
sipc 121:23 122:9
sir 95:24 97:15
situated 130:18
130:24

situation 27:22
43:6 45:21 49:25
51:11,15 58:13
78:6 85:1 90:7,24
situations 35:15
77:12
six 25:2
small 60:20
155:25
smith 13:15 14:8
social 6:12
solely 26:18 57:18
59:15,19,24 95:19
solo 61:8
somebody 60:14
91:18
sorry 37:3 42:14
47:10 73:12 79:3
94:13,14 95:4
96:4 97:14 106:9
112:8,12 117:6
120:18 153:21
155:13
sort 129:13
sorts 142:5
sought 42:16
76:23 81:19
105:19
sound 160:4
sounds 98:17
source 58:5 61:22
sourced 26:17
sources 155:14
south 4:14
southern 1:2
speak 98:25
speakerphone
85:16,18
speaking 66:13
speaks 36:22
specific 29:14,19
30:15 32:6 35:25
55:3 66:5 70:5

91:24 100:16
103:25 114:21,22
115:19 116:5,24
119:25 120:2,23
121:16 123:13,14
132:14 147:18
specifically 39:21
46:15 53:2 69:17
87:18 96:9 102:20
125:23 127:12
132:4 145:17
151:17
specifics 106:6,23
107:17
specify 59:21
speculation 61:11
spells 97:8,11
spend 109:4
spent 70:12
spinning 155:19
spoke 65:18
square 5:10 9:3
squarely 69:25
stage 38:16 42:24
54:23 58:1,15,19
58:21 59:3,11,17
60:7,19 61:10,18
62:5 129:14,25
131:5,5 134:5
138:6 139:11
standard 27:8
67:22 130:21
131:4 136:1,4,8
standing 35:23
68:5
stands 21:6 42:7
stargatt 11:1
start 20:3 21:10
82:20 96:10
114:20 140:13
151:3
started 96:9

**state** 17:18 65:24
  82:10 90:6,8,11
  90:11,13,19,20
  94:3 121:10
**stated** 21:23 89:15
  99:14 122:22
  134:13 137:1
  138:10 141:17,17
**statement** 55:24
  56:20 101:25
  103:4,5 143:7
  152:5 153:1
**statements** 90:14
  114:3 143:16
  158:15
**states** 1:1 29:8
  30:3 84:7,11 85:5
  115:1 119:15,16
  119:18 128:11
  140:23 141:23
  157:15,16
**statistics** 55:7,11
  55:13,16 56:2,16
  136:12 137:16
**statute** 45:1 110:1
  110:7 112:25
  113:11,12
**statutes** 44:23
**statutory** 76:16
**steals** 100:5
  119:10
**steen** 8:8,16
**step** 21:5 43:11
  45:11 69:20
**stepping** 38:6,13
  45:19
**steps** 20:21 76:14
  113:1
**sterling** 11:9
**steven** 10:22
**stevens** 9:8
**stipulated** 55:18
  79:6,15 93:3

95:19
**stipulation** 79:8
  94:20 95:10,14,17
  95:21 96:1
**stockbroker** 20:9
**stockholder** 78:15
**stolen** 54:11 57:9
  57:18 58:22 59:15
  60:8 61:12 64:3
  71:22 73:3 123:5
  123:21 150:10
  151:5
**stop** 42:22
**stopped** 74:22
**straightened** 96:5
**strategy** 1:12 3:2
  3:6,12,16,22,24
  5:9 17:18,22
  18:25 19:1,7,9,19
  20:12 21:2,3 22:7
  22:11 23:4,18,18
  23:20 24:24 25:9
  25:13,21,23 26:3
  26:7,12,12 27:1
  27:15 28:15 29:1
  29:4,6,22 30:10
  30:23 31:6,13,21
  32:1,22 33:12,21
  33:22 34:10,21
  35:2,4 36:8 39:3
  43:21 46:13 49:15
  51:5 53:17,20
  55:23 62:19,21
  63:8,12,15,17,19
  63:20,23 64:1,5
  64:19,22,23 65:4
  65:9,13,17,19
  66:2,4,7,14,17
  67:1,7,10,25
  68:12 69:6,13,17
  69:24 70:15,16
  71:2,12,15,16,22
  72:16,24 73:1

76:5,13 78:1,3
  79:11 80:8,24
  81:7,12,14,18
  83:25 87:14,15
  88:2,9,13 89:17
  89:21,23 90:24
  91:1 94:19 95:15
  95:16,25 99:6
  100:16 106:7
  117:24 123:2
  140:21
**strategy's** 19:13
  19:20 22:11 26:1
  27:18 29:12,24
  30:7,8 34:9 36:11
  51:8 80:20 89:19
  89:20
**straw** 155:19
**strawman** 46:16
  78:9 86:9
**street** 4:22 5:3 7:3
  7:18 9:12 10:4
**stressing** 156:3
**stricken** 103:11
**strip** 20:18 105:7
**stronger** 63:5
  126:18,20
**struck** 152:3
**struggling** 101:5
**stuff** 82:16
**subject** 35:25
  44:22 111:1
  116:18,24 119:12
  120:4 130:15
  156:24
**subjective** 110:12
**subjectively** 109:9
**submit** 36:15 75:4
  75:11,20 124:11
  124:24 126:6
  128:1,24 129:1
  130:9 131:6,20
  132:9 137:12

138:5,15 139:17
  141:13 158:14
**submits** 126:11
**submitted** 17:11
  55:19 62:2 130:5
  130:7 142:22
  145:20 149:4
**subpoena** 114:6
**subscribe** 66:12
**subscribed** 63:8
  66:8
**subscription** 29:7
  29:11 34:8,9
  57:14 59:7 63:10
  63:16 64:2,12,13
  64:19,20 65:3
  69:18 83:4 84:18
  87:9,12 88:16
  91:7 114:19 117:4
  117:11 118:5,12
  140:18,25
**subsequent** 18:14
  19:18 20:18 21:1
  21:16,16,19,23
  22:15,16,19,23
  23:5 24:2 26:23
  27:2,6,10,24 28:2
  28:7,9 37:19,22
  38:13,25 39:5,12
  39:16,22,25 40:3
  40:7,15,23 41:2,8
  41:14,15,19,24
  42:3,17 43:4,7,10
  44:2,7,17,25 45:2
  45:8,11,19 46:3,4
  46:8,10,17,21
  47:7 48:23 49:3
  49:10,20 50:1,19
  51:1,20,24 52:8
  52:19 53:12 54:10
  55:2,7,8,14,15,18
  55:20,23,25,25
  56:18,21,23 57:3

57:8,17 58:12,18
59:13,14,18,22
61:4,12 71:21
73:25 74:5,25
75:3,7,12,15,22
76:13,20,25 77:3
77:24 78:5,11,19
79:22 93:3 94:23
102:8 105:12
108:22 109:13,15
109:21 110:1,2,4
110:5,21 115:6
121:17 127:4
132:8,19 133:12
133:17,18,23
134:18 135:3,14
135:18,20,24
136:6,9,14,16,18
136:20 137:25
153:13,16,17,18
153:21,22,24
154:1,18,19,19,20
154:23,25 155:4
155:25
**subsequently**
51:13 134:15
140:3
**substance**  54:14
102:13
**substantial**
141:10
**substantially**
53:15 56:6 57:23
61:17 136:25
**substantive**
134:25
**successful**  41:22
**sudden**  116:18
119:11,18
**sue**  117:9,16,20
117:20 133:12
134:17 154:21

**sued**  21:9 28:7
69:16 77:6 85:19
133:15
**sufficient**  22:22
33:6 83:22 86:20
86:21 114:21
115:5,16 125:11
139:22 140:9
**sufficiently**  23:13
37:24 47:5 48:22
49:15 102:10
126:13 128:9
**suggest**  50:17
79:14 156:5
**suggesting**  57:16
**suggests**  49:22
59:6 62:3 153:6
154:2
**suite**  5:20 6:15
8:11 11:4 160:17
**sumitomo**  8:2
15:9
**summary**  58:15
59:20 60:20 61:10
61:14 107:5 131:5
**superseded**
102:24,25
**supp**  67:22
**supplement**  123:6
123:12
**supplemental**
130:8
**supply**  72:13
**support**  3:22 35:8
40:18 55:7 56:10
57:10 60:1 68:9
71:16 84:11 89:2
99:21 108:17
115:20 116:5
136:10,16
**supported**  21:5
**supporting**  56:8
142:9

**supports**  22:11
117:22 135:5
**suppose**  113:20
**supposed**  144:5
**supposedly**
146:25
**supreme**  19:25
30:18 65:23 70:23
72:17 82:3,4
120:9
**sure**  82:2,13 83:3
101:8 113:11
147:4 152:13
**surely**  113:24
**surpass**  69:21
**surprised**  86:14
**surrendering**
129:23
**surrounding**
54:19
**survey**  89:1
**surveyed**  35:22
**swiss**  91:15
120:16
**switzerland**
120:20,24
**sys's**  2:21
**system**  17:15
91:16
**syz**  1:7 2:8,10,15
2:20,23 94:3,6
99:12,13,21 100:7
100:17,25,25
101:14,14,15
102:1 103:12
104:24 105:13,21
105:25 106:2,20
106:22 107:2,15
107:19,25 108:6
108:10 109:3,13
109:14,17,19
110:9 111:13
112:7,9 113:4,10

113:17 115:8,10
115:14 116:7,10
116:18,23 117:2,9
117:10,16,17,19
118:20,21 119:4
119:18 120:1
121:8,11,18,25
122:8 125:13
126:1,5 128:11
129:8 131:11,18
132:17 136:23
137:3,25 138:14
139:6 140:3
141:18,24 142:25
143:3,5,8,10,10
143:12,13,14,21
144:15,20,22,24
148:24 149:1,11
149:25 150:9,16
156:9,16,21,24
157:9 158:25
159:1
**syz's**  110:9 132:17
139:5 144:6
148:18 149:7,15
150:23 156:3

---

**t**

**t**  6:18 9:7 14:6
**table**  107:5,10,20
**tables**  25:11
**take**  51:15 93:20
96:4 97:4,6,24
98:2,3,20 105:10
112:12 124:3
126:11 127:13,21
127:24 136:2
137:9 151:10
155:11
**taken**  96:25 97:18
**takes**  108:23,23
122:2 130:22
**talk**  37:10 56:11
74:1,5 82:15 83:2

143:20
**talked** 38:21 87:8
  88:14 138:19
  142:4
**talking** 48:7 79:16
  100:21 109:12
  118:23,24 156:17
**talks** 157:6
**tara** 15:13
**target** 69:15
**targeted** 69:17
**taul** 84:3,23
**taylor** 11:1
**telecommunicat...**
  85:11
**telecommunicat...**
  34:6
**telephone** 85:22
**tell** 145:25 147:23
**tells** 101:9
**temporarily**
  150:15
**ten** 134:15 135:19
  154:20,25
**tens** 70:4
**term** 153:9
**terms** 20:6 45:23
  104:4 114:24
  131:16 157:13
**test** 31:9 68:2,14
  70:21 110:11,12
  110:17,19 111:1,1
  111:5,7 113:6,25
**tested** 109:20
  112:5 113:9
  114:11
**thanithia** 10:7
**thank** 17:15,16
  18:9 24:17 36:24
  37:11 48:11,12
  53:9 62:15 73:16
  81:25 92:23 93:17
  93:18 96:7,12,21

99:2 101:2 122:18
  123:17,18 129:7
  132:15,16 139:15
  139:16 146:5
  148:17 151:2
  159:1,2,2,5,6
**thanks** 159:7
**that's** 98:1
**theme** 60:13
  65:12
**theory** 22:21
  29:20 30:4,12,13
  33:5,6 43:2 57:10
  58:19 74:21 99:21
**thereto** 56:25
**therrien** 63:17
  64:10 65:14,16
  88:4
**therrien's** 64:14
  65:1,8
**thing** 24:10 78:25
  81:13 86:11 88:2
  91:9,12 93:14
  105:1 114:9
  117:25 121:5
  146:23
**things** 31:11 37:5
  57:5 93:15 156:24
**think** 37:8 53:1,7
  75:24 76:6 78:23
  80:19 81:13 86:3
  86:6 87:3 93:10
  93:17 96:13 99:9
  117:21 118:19,19
  118:22 122:14
  131:14 132:2,12
  145:21 146:2,14
  148:5,6,10 151:6
**thinking** 105:1
**third** 30:17 34:7
  53:20 54:21 59:12
  64:22 67:11,13
  103:2 109:16,22

110:16 111:8,14
  112:4 113:6
  121:13
**thomas** 8:22
**thorough** 114:4
**thought** 146:22,23
  153:10
**thousands** 116:17
**three** 90:9 99:7
  102:17 108:23
  109:7 134:16,16
  145:1
**tie** 55:24 69:11
  106:21
**time** 25:8,21
  27:18 28:4 36:21
  50:4 57:12,12
  68:12 93:18 96:4
  106:25 109:4
  128:21 144:18,24
  145:8,11 147:19
  154:24
**times** 5:10 9:3
  124:15 134:15
**tired** 92:18
**today** 17:25 18:18
  45:22 55:1 63:22
  68:13 80:17 97:19
  116:12 122:22
  123:20 127:9
  128:7 129:9 133:3
  139:9 140:12
  144:17 146:3
**top** 44:13 65:3
**topic** 129:6
**tort** 70:20
**total** 25:6 135:24
  135:24
**totaling** 137:20
**totality** 63:6 68:14
  68:17
**totally** 124:17
  133:19

**touch** 64:13
**tower** 10:3
**trace** 58:14 59:9
**traceable** 60:22
**traced** 61:1
**tracing** 27:17
  54:18 58:23,25
  59:2,25 61:9,11
  106:9,10 139:3,10
**trade** 29:25 99:18
  143:16
**traded** 153:14
**trades** 143:16
**trading** 22:3,7
  67:2 74:17 77:15
  77:22 99:23
  104:19 106:1
  143:17
**transacting** 33:17
  35:13 83:13,18
  85:12
**transaction** 31:12
  33:15,25 34:1
  65:10 72:20 83:20
  83:21 86:1 91:17
  110:18 120:3,7,10
  120:10 121:5,6
  154:3 156:20,22
  157:1
**transactions**
  51:10 65:25 67:14
  67:18 77:9 100:15
  105:8,14 120:5
**transcribed** 3:25
**transcriber** 160:8
**transcript** 93:5
  160:4
**transfer** 18:22
  19:6,19 20:6,10
  20:12,15 22:8,16
  22:19 23:14 24:24
  26:17 27:2,24,25
  28:12,15 29:12

36:2 37:14,19
41:3 42:15,23
44:8,15,16 45:25
46:5,8,9 50:23
51:12,13,19 52:1
52:2,23,24 53:12
54:5,10 55:2,8,19
55:21,23,25,25
56:19 57:8,17
58:12,18,21 59:13
59:15,19,22,23,24
60:7,8 61:12
68:24 69:13 71:21
73:23,25 74:25
75:3,12 76:18
78:8,12,13,19
79:12,22 87:10,13
88:1,2,23 89:3
90:15 91:4,12
92:7 93:4 102:9
106:6,22 108:24
109:2,11,12,13,15
109:18,19,19,21
109:21,23,24,24
109:25 110:3,10
110:24,24 111:12
112:6,19,19,23,24
112:25 113:16
114:11,13 125:9
131:24 133:17,18
134:3,14,18,19,23
135:1,3 136:17,19
136:20,21 138:2,3
138:13,14 141:20
155:20,21,22,24
155:25 156:1
157:3,7
**transferee** 19:15
20:17,19,22,25
21:1,8,12,13,16
21:17,19,20,23
22:1,4 23:6,7,13
23:15 37:24 38:3

38:7,8,9,11,13
39:17 40:3,7,10
40:13,13,14,15,21
41:2,9,14,15,19
41:21,25 42:3,3,9
42:12,17,19,21
43:8,10,11 44:1,3
44:6,7,9,25 45:1,2
45:4,8,10,11,14
45:19 46:4,10,22
47:7 48:24 49:2,3
49:12,20 50:2,20
50:24 51:1,9,13
51:17,22,25 52:9
52:15 56:1 61:22
74:13,20,23 76:14
76:15,19,19,20,22
76:25 77:1,3,4,6
77:20,25 78:6,19
78:20 102:8
104:18 108:22,23
109:10,17 110:2,2
110:5,5,6,21
112:20,21 132:1
133:23,24,25
134:15,16,17
136:14 153:13,13
153:16,16,17,17
153:18,18,20,22
153:22,23,24,25
154:1,18,19,19,23
154:23,24
**transferee's** 21:7
39:5,12,22,25
40:8 41:4,8,24
43:7,12 45:12,17
46:17,19 49:11
50:1 52:19 132:8
**transferees** 18:12
20:16 22:15,23
23:10,21,22 24:2
24:5 37:22 39:1
39:16 40:23 43:4

47:6 48:23 51:20
55:14,15 56:21
61:5 75:7 105:9
105:12 128:16
130:24 133:13
154:20,25 155:4
**transferred** 18:15
25:16 41:13,19
70:9 106:20 107:2
107:10,11,22
114:12 134:15
137:21,23 141:11
154:18,22 155:4
**transferring**
53:25 154:24
**transfers** 18:11,13
18:14 19:18 20:5
23:23 25:1,7 26:8
26:23 27:6,10
28:3,7,9 35:1,7
36:6 39:7 40:4,4
40:11,25 42:17
44:17 54:19,20
55:3,8,14 56:17
56:21,23 57:3
60:10 61:1 69:3
73:13 75:15,15,18
75:19,22 78:11
79:22 93:7 94:18
94:23,23,24 95:20
102:14 103:13,21
104:5,11 105:19
105:24 106:14,19
106:21,22 107:5
107:14,15,16
110:22 112:10
113:5,18 114:8
115:7,11 121:17
122:5,8 123:4
124:6 125:25
126:3,14 128:10
128:13 129:4
132:19,20 133:23

135:4,7,12,14,18
135:20,23,24,25
136:6,9,13,19,23
137:4,25 143:14
150:19,20
**traurig** 6:11
**treat** 30:6
**treated** 59:7
**treating** 23:7,21
**tremont** 72:5
**trial** 2:3 60:25
106:12,16
**tried** 96:12 117:9
**tries** 126:17
129:20
**true** 28:10 56:4
58:3 74:4,7 79:7
93:8 98:8,14
101:17 108:17
116:4 127:17
**trust** 8:2 15:9
59:20 61:20
**trustee** 1:4,9 2:1
2:17 3:2,18 6:2
11:2 17:9,17 18:5
18:6,11,13 19:5,9
19:12,17,23 20:4
20:5,24 23:5,13
23:17 24:19 25:12
25:14 26:15,15,21
26:22 27:1,7,12
27:21 28:5,6,11
29:14,22 30:1,6,9
30:10 31:9,13,15
31:19,22 32:10,21
32:23,24 33:12,14
33:20 34:7,8 35:2
35:10 36:11 37:21
37:24 38:14 39:5
40:3,12,14,20
41:8,23 42:2,16
42:25 43:3,6,24
44:5,15,18 45:2

46:7 47:3 48:20
49:10,15 51:15,18
51:24 52:18 53:11
53:14 54:13,15
55:2 56:4,15,19
57:6,8 58:14
59:10,17,21 60:25
61:5,8,21,24,25
62:18 64:3 65:20
65:21 69:13,21
70:17 73:14 77:14
80:7,25 85:4 94:3
94:9 96:24 101:20
105:20 106:18
107:8,12 108:4,8
108:9 112:11,12
113:5,20 114:2
115:7,25 117:20
118:21 121:18
122:4 124:5 125:9
126:2,4,11 127:22
128:23 130:5
132:18 133:12,15
133:22 134:1,3,17
134:20 135:25
136:3,18 137:13
137:24 138:7
139:1,9 144:11
150:13,20 152:18
154:16,20

**trustee's** 2:14,21
3:15 18:21 19:4
20:20 21:5 22:21
23:20 24:22 26:2
26:5,7,11 27:4
29:18,19 30:13
31:5 33:5 34:4,16
35:8 36:4,9,22
37:14 38:25 40:11
43:17,20 54:7
57:7,22 59:9,13
59:23 60:7 71:16
71:20 72:16 73:4

74:21 81:5 103:8
103:16 106:8,9
108:4 111:2
113:11 123:3
125:11 130:15
133:5 137:11
138:8 145:15,17
149:17
**truth** 97:25
**try** 71:5 131:14
**trying** 95:5 96:5
147:21 152:14
**turn** 35:5 39:20
62:12 73:6 85:16
101:1 108:13
150:7 151:17
**turned** 51:12
101:17
**turning** 43:16
94:1 110:8
**two** 18:19 20:12
20:21 21:11 23:23
25:8 27:23 30:24
31:2 32:5 43:9
44:12 48:15,19
51:19 52:11,11
54:12,22 64:13
66:14 71:23,25
72:3 75:15,20
83:25 91:23 99:7
104:6,13 110:7,11
111:7,7 113:1
120:10,11 134:16
134:16 140:2
147:9 158:2
**twombly** 20:1
28:11 80:4 106:24
107:25 115:4
**tymoshenko** 67:2
**type** 44:21 59:8
**types** 50:13

**u**

**u.s.** 1:15,23 19:21
29:25 34:23,25,25
35:6 63:2 66:6
67:17 70:7 91:4
99:15,18 100:3,9
101:16,21,23
102:2 116:9,13
118:14 119:4,5,12
**u.s.c.** 46:10
**uh** 82:7
**uk** 34:14
**ultimate** 87:22
139:3
**ultimately** 19:21
64:12 65:9 137:17
138:24
**umbrella** 124:23
124:25
**unable** 58:17
128:3
**underlying** 67:21
105:14
**undermine** 149:8
**underscore** 63:14
72:24
**underscored** 64:6
**underscores** 58:7
60:15
**understand**
147:21 152:1
**understanding**
99:9 153:8 158:6
**understood** 96:20
148:17
**undertook** 30:2
**undetermined**
60:21
**undisputed** 29:3
**unequally** 23:7,21
**unidentified**
93:24,25

**uniondale** 16:11
**united** 1:1 29:8
30:3 84:6,10 85:5
115:1 119:15,16
119:18 140:23
157:15,16
**universal** 67:2
**unjust** 24:1
**unknown** 1:25 9:2
10:11 11:10,17
12:2 13:2,9,16
14:17 111:3
**unnecessary**
135:12
**unquote** 23:16
27:11 125:21
144:6 145:3
**unremarkable**
133:19
**upshot** 30:24
**urges** 31:22
**usa** 87:17,21
**use** 24:2 34:24
58:24 65:4 66:24
67:5,6,11,21 69:2
69:7,11 78:6 89:5
90:12 99:15 119:3
157:17
**uses** 35:12,17
66:19 68:5 88:23
**usual** 140:8
**usually** 156:19
**utilized** 57:13

**v**

**v** 3:2 30:19 31:23
45:22 55:4 67:2
68:11 130:6 150:5
**vacuum** 131:21
**valerie** 35:20
**valid** 42:4,21
**value** 46:9 75:8
108:23 109:1,4,14
129:9,18,22

**various** 22:15 50:13 128:15

**veil** 31:6

**veritext** 160:15

**versa** 29:13

**versus** 17:5,18 67:15 71:25 72:1 90:3 94:3

**vice** 29:13

**vicens** 8:25

**victims** 123:22

**videoconference** 2:5,11 3:7,13

**view** 66:19 138:9

**vincent** 7:21

**violate** 100:19 102:3 124:10

**visited** 33:22 66:11

**vital** 55:7,10,13 55:16 56:2,16 136:12 137:16 138:8

**vogel** 12:9

**voidability** 109:23 110:3 113:14

**voidable** 113:6 157:3

**volitional** 66:25 67:9 88:14,17,17 88:19

**voluminous** 133:1

**vontobel** 7:2

**votel** 12:1

**vs** 1:6,11 2:2

**w**

**w** 9:12

**wait** 81:12 117:10

**walden** 20:1 30:19 63:22 65:23 70:19 70:23 82:4,4

**walden's** 70:19

**walk** 39:8 142:23

**wall** 7:3

**want** 24:10 64:13 66:13 71:14 74:1 82:6,6 86:5,10,11 93:16 96:13 98:6 99:3,8 101:9 102:4 103:18,22 104:1 106:5 108:13 109:5 114:17 116:20 142:3 147:7,14,25 148:16

**wanted** 73:8 81:23 82:23 94:14 94:19 96:9,10 101:8 139:8

**wanting** 147:24

**washington** 8:12 9:20

**watkins** 13:8

**way** 30:2 34:5 36:5 89:5 92:5,5 92:10 107:25 118:18 135:5 144:12,14 150:3

**ways** 124:13

**we've** 49:1 67:12 96:18 131:16 139:9 140:11 145:11 147:24 154:4

**weaker** 68:20

**web** 113:23

**wedge** 157:17

**weeks** 63:16

**weighs** 21:10

**weight** 54:15

**weitman** 16:13

**welcome** 48:12 73:17

**went** 29:11 80:24 83:15 88:15 89:16

**west** 4:22

**westchester** 85:3

**westerman** 16:8

**westlaw** 61:4 69:4 126:16 129:25 134:6

**whatsoever** 92:6

**wholesale** 102:19 103:10

**willful** 52:20

**william** 16:6

**willkie** 10:10

**winning** 85:19

**wire** 29:12 34:25 35:6 36:5 68:24 69:3 87:10,13,14 87:16,25 88:2 91:4,12 143:14

**wiring** 88:5

**wish** 76:9,10 104:20 157:23

**withdraw** 81:19 89:24

**withdrawals** 57:13 105:23 155:14

**withdrawing** 115:12,15

**withdrawn** 105:22

**withdrew** 43:22

**wolfe** 14:21

**words** 41:1,20 45:11 49:14 57:16 88:6 104:2

**work** 101:6

**works** 88:1

**world** 99:20

**worth** 54:14

**writing** 67:19

**written** 24:11 77:17 93:20 97:9

92:4 131:22 139:5

98:25 159:3

**wrong** 19:23 38:4 46:21 66:20 70:17 111:4 122:6 124:11

**wrongdoing** 24:4

**wrongly** 51:23

**wrote** 69:1

**wuersch** 7:1

**x**

**x** 1:3,8,13

**xyz** 2:2

**y**

**y'all** 96:17 159:2 159:3

**y'all's** 96:4

**yards** 10:19

**yeah** 24:16 93:2 95:7 118:1 146:14

**year** 19:5 25:2 36:11 52:11 75:20

**years** 20:12 23:23 25:8 27:23 75:16 85:9 104:6,13 127:1 140:2 156:25

**yesterday** 27:8

**yin** 72:1,8

**york** 1:2,17,17 4:5 4:16,23 5:4,11,21 6:4 7:5,12 8:4,19 9:4,13 10:13,20 11:5,12,19 12:5 12:16 13:11,15,19 14:4,12,19 15:11 15:18 16:4 29:24 30:7,8,9,20,25 31:12,16,21 32:1 32:3,12,17 33:11 33:14,18,22 34:3 34:10,11 35:4,6 35:10,12,14,17,19 35:25 36:3,7 54:1

63:18 64:17,21,24
64:25 65:2,5,10
66:3,6,11,11,13
66:18 67:5,8,9,14
68:22,23,24 69:4
69:7,14,16,16,17
69:18 70:6,10,10
71:7,15 72:6,14
72:24,25 83:4,10
83:11,12,18,22
84:8,9,18,19,20
84:22,25 85:8,10
85:12,16,19,21,21
87:7,21 88:7 89:5
89:7,11,13,14,16
90:10 91:2 92:4
115:9 116:25
117:10,13,17,21
118:14 120:16,18
120:22,25 140:1
140:20,23 141:2,3
141:8,9,11,12,20
142:2 148:21
**young**   11:1
**you're**   88:17

**z**

**zcm**   10:18
**zeb**   8:6
**zero**   86:5
**zeroes**   86:4
**zoom**   4:8,9,10,25
5:6,13,14,23 6:6,7
6:8,18,19,20 7:7
7:14 8:6,23 9:15
10:22 11:14 13:6
13:22 14:21 15:6
15:13,20,21 16:6
16:13
**zoomgov**   2:5,11
3:7,13
**zucker**   16:8
**zulack**   12:10