**Hearing Date: June 15, 2022, 10:00 a.m.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (CGM) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | Adv. Pro. No. 12-01693 (CGM) |
| Plaintiff, | |
| v. | |
| BANQUE LOMBARD ODIER & CIE SA, | |
| Defendant. | |

# BANQUE LOMBARD ODIER & CIE SA'S REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF ITS MOTION TO DISMISS

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT ................................................................................................................... 1

I.      THE TRUSTEE CANNOT ESTABLISH PERSONAL JURISDICTION. ...................... 1

        A.      Taken Individually or Collectively, the Trustee's Alleged Contacts
                do not Establish Jurisdiction. .................................................................. 2

                1.      *New York Choice of Law and Choice of Forum Clauses*............................ 2

                2.      *Proffered Visits to BLMIS in 2001 and 2008* ............................................ 3

                3.      *Use of a New York Correspondent Account for Four
                        Redemptions* ......................................................................... 5

        B.      Under *BNP*, the Trustee's Proffered Contacts do not Establish
                Jurisdiction Over Lombard Odier. .......................................................... 7

        C.      *BLI* Does not Apply to this Case............................................................ 8

        D.      The Exercise of Personal Jurisdiction Over Lombard Odier Would
                be Unreasonable and Violate Due Process. ............................................. 11

II.     THE TRUSTEE HAS NOT JUSTIFIED HIS FAILURE TO PLAUSIBLY
        ALLEGE THAT LOMBARD ODIER RECEIVED CUSTOMER
        PROPERTY. ................................................................................................... 11

        A.      The Trustee Failed to Meet His Pleading Burden................................. 12

        B.      Tracing Analysis Is Unnecessary Where the Pleadings Negate
                Commingling .......................................................................... 13

        C.      The Trustee Has All the Records He Needs .......................................... 14

        D.      The Trustee Has No Claims Against Defendants Who Are Not
                "Transferees" .......................................................................... 15

III.    WHERE, AS HERE, SECTION 546(E) BY ITS TERMS COVERS AN
        INITIAL TRANSFER, AN INNOCENT SUBSEQUENT TRANSFEREE
        MAY INVOKE THE SAFE HARBOR EVEN IF THE INITIAL
        TRANSFEREE MAY NOT........................................................................... 16

IV.     THE COMPLAINT DOES NOT COMPLY WITH RULE 8(A)(2). ............................ 19

CONCLUSION ................................................................................................................ 20

i

## TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*45 John Lofts, LLC v. Meridian Capital Group LLC (In re 45 John Lofts, LLC)*,
599 B.R. 730 (Bankr. S.D.N.Y. 2019) ........................................................................12

*Am. Casein Co. v. Geiger (In re Geiger)*,
446 B.R. 670 (Bankr. E.D. Pa. 2010) ........................................................................19

*Berdeaux v. OneCoin Ltd.*,
561 F. Supp. 3d 379 (S.D.N.Y. 2021) ........................................................................10

*In re Bernard L. Madoff Investment Securities LLC*,
460 B.R. 106 (Bankr. S.D.N.Y. 2011) ........................................................................11

*Bristol-Myers Squibb Co. v. Super. Ct. of Calif., San Francisco Cnty.*,
137 S. Ct. 1773 (2017) ........................................................................10

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ........................................................................3

*Burlington Industries, Inc. v. Salem International Co.*,
645 F. Supp. 872 (S.D.N.Y. 1986) ........................................................................5

*Capitol Records, Inc. v. MP3tunes, LLC*,
No. 07 Civ 9931, 2008 U.S. Dist. LEXIS 75329 (S.D.N.Y. Sep. 29, 2008) ..................4

*CNB International Inc. v. Kelleher (In re CNB International, Inc.)*,
393 B.R. 306 (Bankr. W.D.N.Y. 2008) ........................................................................15

*Edmondson v. RCI Hospitality Holdings, Inc.*,
No. 16-CV-2242, 2020 WL 1503452 (S.D.N.Y. Mar. 30, 2020) ..................................14

*Esso Exploration and Production Nigeria Limited v. Nigerian National Petroleum
Corporation*,
397 F. Supp. 3d 323 (S.D.N.Y. 2019) ........................................................................4, 5

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*,
No. 10-13164, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ..............................3

*Ford Motor Co. v. Mont.*,
141 S. Ct. 1017 (2021) ........................................................................8

*Francis v. Accubanc Mortg. Corp.*,
No. 19-CV-902 (AJN), 2020 WL 2086038 (S.D.N.Y. Apr. 30, 2020) ...........................20

*Glob. Network Commc'ns, Inc. v. City of N.Y.*,
458 F.3d 150 (2d Cir. 2006)...........................................................................20

*Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*,
No. 08–15051 (SMB), 2014 WL 47774 (Bankr. S.D.N.Y. Jan. 3, 2014).....................................14

*Gucci Am., Inc. v. Weixing Li*,
135 F. Supp. 3d 87 (S.D.N.Y. 2015)...........................................................................7

*Hill v. HSBC Bank*,
207 F. Supp. 3d 333 (S.D.N.Y. 2016)...........................................................................8

*Kelley v. Westford Special Situations Master Fund, L.P.*,
No. 19-cv-1073, 2020 WL 3077151 (D. Minn. June 10, 2020) ....................................14

*Licci v. Lebanese Canadian Bank*,
20 N.Y.3d 327 (2012)...........................................................................7

*Neewra, Inc. v. Manakh Al Khaleej Gen. Trading & Contracting Co.*,
No. 03 Civ. 2936, 2004 WL 1620874 (S.D.N.Y. July 20, 2004) ....................................6

*NIKE, Inc. v. Wu*,
349 F. Supp. 3d 346 (S.D.N.Y. 2018)...........................................................................7

*Picard v. Avellino (In re Bernard L. Madoff Inv. Sec. LLC)*,
557 B.R. 89 (Bankr. S.D.N.Y. 2016)...........................................................................18

*Picard v. BNP Paribas S.A. (In re Madoff)*,
594 B.R. 167 (Bankr. S.D.N.Y. 2018).......................................................... *passim*

*Picard v. Bureau of Labor Insurance (In re Madoff)*,
480 B.R. 501 (Bankr. S.D.N.Y. 2012)...........................................................2, 8, 9

*Picard v. Ceretti (In re Bernard L. Madoff Inv. Sec. LLC)*,
No. 08–99000, 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015) .........................................18

*Picard v. Charles Ellerin Rev. Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*,
No. 08–01789, 2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012) ....................................13, 14

*Picard v. Cohmad Sec. Corp. (In re BLMIS)*,
454 B.R. 317 (Bankr. S.D.N.Y. 2011)...........................................................12, 15

*Picard v. Est. of Mendelow*,
560 B.R. 208 (Bankr. S.D.N.Y. 2016)...........................................................................18

*Picard v. Fairfield Inv. Fund Ltd.*,
No. 08-01789, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021)...........................................18

*Picard v. Fairfield Sentry Ltd.*,
917 F.3d 85 (2d Cir. 2019) ........................................................................................11

*Picard v. Magnify Inc. (In re Bernard L. Madoff Inv. Sec. LLC)*,
583 B.R. 829 (Bankr. S.D.N.Y. 2018) ........................................................................18

*Picard v. Mayer (In re Bernard L. Madoff Inv. Sec. LLC)*,
No. 08-01789, 2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021) ......................13, 15

*Picard v. Merkin (in re BLMIS)*,
515 B.R. 117 (Bankr. S.D.N.Y. 2014) ......................................................12, 14, 15, 18

*Picard v. Merkin (In re BLMIS)*,
581 B.R. 370 (Bankr. S.D.N.Y. 2017) ........................................................................14

*Picard v. Shapiro (In re BLMIS)*,
542 B.R. 100 (Bankr. S.D.N.Y. 2015) ..................................................................13, 18

*Rushaid v. Pictet & Cie*,
28 N.Y.3d 316 (2016) ...............................................................................................7

*SAS Group, Inc. v. Worldwide Inventions, Inc.*,
245 F. Supp. 2d 543 (S.D.N.Y. 2003) .........................................................................5

*Sec. Inv. Protec. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
501 B.R. 26 (S.D.N.Y. 2013) ...................................................................................19

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib., Inc.)*,
379 B.R. 5 (Bankr. E.D.N.Y. 2007) ..........................................................................12

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
No. 12 MC 115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) .......................16, 17, 19

*Spetner v. Palestine Inv. Bank*,
495 F. Supp. 3d 96 (E.D.N.Y. 2020) .........................................................................10

*SPV Osus Ltd. v. UBS AG*,
882 F.3d 333 (2d Cir. 2018) ...............................................................................7, 8, 9

*SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*,
620 B.R. 505 (Bankr. S.D.N.Y. 2020) ........................................................................18

*Sunward Elecs., Inc. v. McDonald*,
362 F.3d 17 (2d Cir. 2004) .........................................................................................3

*United Comput. Capital Corp. v. Secure Prods., L.P.*,
218 F. Supp. 2d 273 (N.D.N.Y. 2002) .....................................................................4, 11

iv

*United States v. Henshaw,*
388 F.3d 738 (10th Cir. 2004) ...................................................................................14

*United States v. Int'l Longshoremen's Ass'n,*
518 F. Supp. 2d 422 (E.D.N.Y. 2007) ........................................................................19

*Visual Footcare Techs., LLC v. CFS Allied Health Educ., LLC*
No. 13 Civ. 4588, 2014 WL 772215 (S.D.N.Y. Feb. 21, 2014) .....................................4

*Walden v. Fiore,*
571 U.S. 277 (2014)........................................................................................... *passim*

*Waldman v. Palestine Liberation Org.,*
835 F.3d 317 (2d Cir. 2016)......................................................................................10

*World-Wide Volkswagen Corp. v. Woodson,*
444 U.S. 286 (1980)..................................................................................................11

<u>Statutes</u>

11 U.S.C. § 546(e) ..........................................................................................16, 17, 18

<u>Rules</u>

Fed. R. Civ. P. 8............................................................................................................19, 20

Fed. R. Civ. P. 10.........................................................................................................19

Fed. R. Civ. P. 12.........................................................................................................1

Lombard Odier,[1] by its undersigned counsel, respectfully submits this reply memorandum of law in further support of its motion to dismiss the Complaint of the Trustee pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## ARGUMENT

## I.    THE TRUSTEE CANNOT ESTABLISH PERSONAL JURISDICTION.

The Bank's Opening Brief (ECF 91) demonstrates that the Complaint does not make out the required *prima facie* case for personal jurisdiction over Lombard Odier based on the standard articulated by Judge Bernstein in *Picard v. BNP Paribas S.A. (In re Madoff),* 594 B.R. 167 (Bankr. S.D.N.Y. 2018) ("*BNP*"), an avoidance case brought by the Trustee, which the Trustee agrees is the "law of the case."  In *BNP*, Judge Bernstein, relying upon the Supreme Court's decision in *Walden v. Fiore,* 571 U.S. 277 (2014) and Second Circuit precedent, held that the Trustee is required to establish jurisdiction with respect to *each* of the redemptions he sought to avoid based on the *defendant's* contacts with the forum.[2]  *See BNP,* 594 B.R. at 189-90.

The Trustee argues that the Court can assert jurisdiction over Lombard Odier based on three purported contacts:  (1) agreements (executed outside the United States) between Lombard Odier and a third party that contain New York choice of law and forum clauses; (2) two meetings between Lombard Odier employees and Madoff in New York; and (3) the use of U.S. correspondent banks to receive just four of the "at least" 131 redemptions that the Trustee seeks to avoid.[3]  Taken alone or together these contacts do not establish jurisdiction over any of the Trustee's avoidance claims.  Critically, the Trustee does not allege or cite evidence of *any New York contacts* between Lombard Odier and the Fairfield Funds, the entities whose transfers to

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Opening Brief.
[2] As we explain below, although *BNP* found jurisdiction, it did so based on numerous, direct contacts, none of which is alleged to be present here for the vast majority of the at-issue redemptions.
[3] The latter two proffered contacts were not alleged in the Complaint.

Lombard Odier the Trustee seeks to avoid, for *97%* of the at-issue redemptions.  So Lombard Odier is very different from other foreign banks in these proceedings that the Trustee alleges had multiple New York contacts with the Fairfield Funds related to all or nearly all transfers at issue in those actions.

Given the insufficiency of Lombard Odier's own alleged jurisdictional contacts, the Trustee points to New York contacts of the Fairfield Funds—independent parties (with which Lombard Odier dealt, on behalf of its customers, *outside* the United States) that, in turn, invested in BLMIS in New York.  But the Fairfield Funds' contacts with New York cannot be imputed to Lombard Odier for purposes of personal jurisdiction.  *Picard v. Bureau of Labor Insurance (In re Madoff)*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012) ("*BLI*"), the case upon which the Trustee relies even though it has been superseded by *BNP*—a development that the Trustee ignores—is clearly distinguishable based on the Trustee's concession that *BLI* involved a defendant that, unlike Lombard Odier, invested its *own* money in the Fairfield Funds.  *See* Kronegg Decl. ¶¶ 2, 3.  Further, controlling case law rejects the Trustee's jurisdictional theory of imputation because the jurisdictional analysis must focus on the *defendant's* own contacts with the forum.

Accordingly, because personal jurisdiction is lacking, Lombard Odier's Motion to Dismiss should be granted and the Complaint dismissed in its entirety.

**A.    Taken Individually or Collectively, the Trustee's Alleged Contacts do not Establish Jurisdiction.**

*1.    New York Choice of Law and Choice of Forum Clauses*

The Trustee points to New York choice of law and choice of forum provisions included in a proffered Subscription Agreement between Lombard Odier and Sentry.  Calvani Decl., Ex.

11, ECF 101.[4]  The Trustee does not allege that Lombard Odier negotiated or executed this (or any) subscription agreement with Sentry in the United States.  Compl. ¶ 7; Opp. at 6, ECF 100.[5]

The inclusion of New York choice of law and forum provisions in a Subscription Agreement fails to establish personal jurisdiction over Lombard Odier for any of the Trustee's avoidance claims, and the Trustee concedes that such clauses cannot establish jurisdiction by themselves.  Opp. at 16, ECF 100.  In fact, Judge Bernstein ruled with respect to claims brought by the Fairfield Liquidators (the party to the agreement) that the Sentry subscription agreements are "irrelevant" to claims to recover redemption payments because "consent to the Subscription Agreement does not constitute consent to personal jurisdiction in the U.S. Redeemer Actions." *See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, No. 10-13164, 2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018).  *A fortiori*, the clauses in the Subscription Agreement, to which the Trustee was not even a party, do not relate to the redemptions at issue and provide no basis for jurisdiction.[6]

### 2.    *Proffered Visits to BLMIS in 2001 and 2008*

Although the Trustee does not allege *any* New York physical contacts between Lombard Odier and *Fairfield*, he does proffer that employees of Lombard Odier visited BLMIS in New

---

[4] Although the Trustee contends that Exhibits 11, 12 and 13 are Sentry subscription agreements signed by Lombard Odier, Opp. at 15, ECF 100, only Exhibit 11 is such an agreement.  Exhibit 12 bears the notation "FOR TRANSFER PURPOSES ONLY" on the first page and the "Amount of Subscription" is left blank; Exhibit 13 contains no reference to Lombard Odier, is missing pages 1, 2 and 15, and bears a stamp "for transfer purposes only" on every page.

[5] Exhibit 11, missing a cover page, was, as the fax stamp header on each page shows, executed by Lombard Odier in Geneva, Switzerland.

[6] The cases cited by the Trustee illustrate the inadequacy of this contact.  Both *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985), and *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004), found that the existence of a choice of law provision could serve as *one* of many relevant contacts when the wider agreements between the parties clearly envisioned extensive ongoing business contacts and obligations between the parties in the forum state.  Here, the Sentry subscription agreement does not envision extensive or ongoing contacts or obligations between Lombard Odier and Sentry in New York, and the Trustee alleges no such contacts.

York on two occasions:  in 2001 and 2008.[7]  Opp. at 6-7, ECF 100, Calvani Decl. Exs. 17 & 19,

ECF 101.  However, unlike in his complaint against Multi-Strategy Fund Limited that alleges a

New York meeting with *Fairfield*,[8] the Trustee does not credibly assert that any U.S. meetings

with *Madoff* had anything to do with the Fairfield Funds or the redemptions at issue.  This

distinguishes Lombard Odier from other defendants who had meetings in the U.S. concerning the

Fairfield Funds, especially in the instances where those defendants invested their own money in

the Fairfield Funds *following* those meetings.  Alleged meetings by Lombard Odier with BLMIS

that did not concern the Fairfield Funds cannot support personal jurisdiction over the Trustee's

avoidance claims which are predicated exclusively on the Fairfield redemptions.  *Visual*

*Footcare Techs., LLC v. CFS Allied Health Educ., LLC*, No. 13 Civ. 4588, 2014 WL 772215, at

*8 (S.D.N.Y. Feb. 21, 2014) (three in-forum meetings incidental to the contractual relationship at

issue do not qualify as purposeful availment and cannot subject defendant to personal

jurisdiction); *Capitol Records, Inc. v. MP3tunes, LLC*, No. 07 Civ. 9931, 2008 U.S. Dist. LEXIS

75329, at *12 (S.D.N.Y. Sep. 29, 2008) (in-forum meetings are insufficient to establish

jurisdiction absent additional evidence that the meetings related to the plaintiff's claims).[9]

The Trustee relies on *Esso Exploration and Production Nigeria Limited v. Nigerian*

*National Petroleum Corporation* to support his contention that the totality of Lombard Odier's

alleged contacts establish that Lombard Odier purposefully directed its activities to New York.

Opp. at 9, ECF 100 (citing 397 F. Supp. 3d 323, 344 (S.D.N.Y. 2019)).  This reliance is

---

[7] The Trustee's allegation that a meeting took place on Tuesday, October 27, 2001, between Lombard Odier employees and Madoff, based on the latter's datebook entries, is impossible because October 27, 2001, was a Saturday, not a Tuesday.  Exhibit 17 appears to be a mash-up of pages from two separate datebooks.
[8] Tr. May 18, 2022 Hr'g *SIPC v. BLMIS, LLC*, Adv. Pro. No. 12-01205 (Bankr. S.D.N.Y.), Dkt. No. 121, at 63, Shaiman Decl. Ex. 3.
[9] *See also United Comput. Capital Corp. v. Secure Prods., L.P.*, 218 F. Supp. 2d 273, 278 (N.D.N.Y. 2002) (explaining that "meetings in the forum state that are exploratory, unproductive, or insubstantial are insufficient to establish requisite contacts with the state" and finding that "the activities at the few New York meetings cited by plaintiff lack any substantial nexus between the business transacted and the cause of action sued on").

misguided because in *Esso*, unlike here, the defendant was alleged to have had extensive contacts

with the U.S. to negotiate and facilitate the performance of the agreement at issue. 397 F. Supp.

3d at 344 ("Specifically, NNPC attended the Houston roadshow to solicit bids, engaged in

preliminary negotiations in Houston, directed communications to the United States during

contract negotiations, and travelled to the United States on more than one occasion to facilitate

performance of the Agreement."). The Trustee's reliance on *SAS Group, Inc. v. Worldwide*

*Inventions, Inc.* and *Burlington Industries, Inc. v. Salem International Co.* is also unavailing,

because, in both of those cases, just like in *Esso*, the in-forum meetings involved negotiations

between the parties that directly gave rise to the claims at issue. 245 F. Supp. 2d 543, 549

(S.D.N.Y. 2003); 645 F. Supp. 872, 874 (S.D.N.Y. 1986).

The Trustee has not alleged (and cannot allege) that the proffered meetings between

Lombard Odier and BLMIS gave rise to decisions with respect to redemptions from (or

investments in) Sentry.[10]  Instead, the Trustee merely poses a question: "Why else would

Lombard employees travel to BLMIS's offices in New York to visit Madoff in 2001 and 2008?"

Opp. at 1, ECF 100.  Personal jurisdiction cannot be grounded on such speculation.[11]

###### 3.    *Use of a New York Correspondent Account for Four Redemptions*

Based on his access to the relevant transaction records, the Trustee proffers documents

that indicate Lombard Odier received payments into its New York correspondent account for just

---

[10] The Trustee alleges that Lombard Odier began investing in Sentry as early as 1995, and that Lombard Odier redeemed funds from Sentry as early as January 1998, but both of these events occurred at least three years before the first date that the Trustee claims Lombard Odier met with BLMIS.  Calvani Decl. Ex. 1 at 3, 8, ECF 101.

[11] Such meetings could have been courtesy calls or concerned other feeder funds.  Indeed, the Complaint contained a whole section on Lombard Odier's investment in Kingate Global, another feeder fund unrelated to Fairfield.

four[12] out of the "at least" 131 redemptions payments that he seeks to avoid.[13]  Opp. at 19, ECF

100, Calvani Decl., Exs 22-25, ECF 101; Compl., Exs. C & E.  To be sure, the use of Lombard

Odier's U.S. correspondent bank account to receive payment of four redemptions represents a

jurisdictional contact—indeed the only jurisdictional contact—with respect to each of those four

redemptions.[14]  However, how payment was effected with respect to four redemptions cannot

affect the jurisdictional analysis of the at least 127 other redemptions where the redemption was

paid into Lombard Odier's account *outside* the United States.  *BNP*, 594 B.R. at 190 ("Each

transfer is a separate claim, and the Trustee must establish the court's jurisdiction with respect to

each claim asserted.") (internal quotations and citation omitted); *Neewra, Inc. v. Manakh Al

Khaleej Gen. Trading & Contracting Co.*, No. 03 Civ. 2936, 2004 WL 1620874, at *4, 5

(S.D.N.Y. July 20, 2004) (holding that one transaction involving the use of a U.S. correspondent

account cannot establish jurisdiction over another transaction that did not use a U.S.

correspondent account where the transactions give rise to different causes of action).  Given the

importance that the Trustee has assigned to whether a redemption at issue was received in an

account in the U.S. in these proceedings,[15] that the vast majority (97%) of the hundreds of

redemptions at issue here were received in Lombard Odier's account *outside* the U.S. not only

fails to support jurisdiction over those redemptions, but compels the opposite result.

---

[12] The reference to a purported fifth redemption from *Sigma* (Opp. at 7, Ex. 26, ECF 100) is an obvious error, because such redemptions were in Euros not U.S. dollars and, therefore, would not have been made through a U.S. correspondent account.

[13] The Fairfield Liquidators, whose complaint the Trustee incorporates, specifically allege that virtually all of the same supposed subsequent transfers that the Trustee seeks to avoid here were paid into accounts in non-U.S. banks. *See* Compl. at 9; Opening Br. at 11, ECF 91.  The Trustee has access to the relevant documents; this is why he is able to proffer only the four Fairfield redemptions paid to Lombard Odier's U.S. correspondent account.

[14] We note that three of the four alleged redemptions paid to Lombard Odier's U.S. correspondent account do not contain any BLMIS customer property and therefore may not be avoided even if jurisdiction were to exist.  *See infra* § II.

[15] Tr. May 18, 2022 Hr'g *SIPC v. BLMIS, LLC*, Adv. Pro. No. 12-01205 (Bankr. S.D.N.Y.), Dkt. No. 121, at 64, Shaiman Decl. Ex. 3.

Accordingly, the most the Trustee can make of the Fairfield redemptions paid to Lombard Odier's U.S. correspondent account is that there could be jurisdiction over the avoidance claims involving those four individual transactions. However, the use of a U.S. correspondent account to receive those redemptions, standing alone and without any other jurisdictional contacts, is insufficient even to find jurisdiction for those transactions.[16]

### B.    Under *BNP*, the Trustee's Proffered Contacts do not Establish Jurisdiction Over Lombard Odier.

The contacts proffered by the Trustee fail to establish personal jurisdiction under *BNP*, which is the Madoff avoidance proceeding *brought by the Trustee* with the most recent and thorough analysis of personal jurisdiction. In *BNP*, which the Trustee agrees is the "law of the case"[17] yet all but ignores in his Opposition, Judge Bernstein analyzed the "relationship among the defendant, the forum, and the litigation," instructing that the contacts must be defendant-created and touch the forum itself. *BNP*, 594 B.R. at 189 (quoting *Walden*, 571 U.S. at 283–84).[18] Judge Bernstein cited the Second Circuit requirement of a proximate cause connection between the defendant's jurisdictional contacts and the underlying claim. *Id.* at 190 (quoting *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018)).

*BNP* upheld jurisdiction over the BNP entities based on extensive New York contacts

---

[16] The Trustee concedes that a defendant's mere use of a correspondent account does not create jurisdiction under New York law—the use must be "purposeful." Opp. at 18, ECF 100. Where personal jurisdiction has been based on the defendant's use of a correspondent bank account, courts have found that the use of the account was "purposeful" only when the defendant made dozens or even hundreds of transfers through it. *See Licci v. Lebanese Canadian Bank,* 20 N.Y.3d 327, 340 (2012) (routing several million dollars through correspondent account "'dozens' of times indicates desirability and lack of coincidence"); *Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 323-29 (2016) (finding transfer to correspondent accounts at least 12 times for $4 million sufficient for personal jurisdiction); *Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 94-96 (S.D.N.Y. 2015) (transfers nearly a dozen times through correspondent account sufficient to support personal jurisdiction ); *NIKE, Inc. v. Wu*, 349 F. Supp. 3d 346, 356-57 (S.D.N.Y. 2018) ("hundreds of occasions" sufficient for jurisdiction).
[17] Tr. May 18, 2022 Hr'g *SIPC v. BLMIS, LLC*, Adv. Pro. No. 12-01205 (Bankr. S.D.N.Y.), Dkt. No. 121, at 132, Shaiman Decl. Ex. 3.
[18] Judge Bernstein focused his analysis "on the Defendants' U.S. contacts related to the receipt of the fifty-nine subsequent transfers at issue," making clear that each transfer presented a separate avoidance claim for which jurisdiction must be established. *BNP*, 594 B.R. at 190.

related to the redemptions at issue not present here.  The BNP defendants maintained offices and

employees in New York (and elsewhere in the United States).  *Id.* at 188-89.  In fact, for most of

the redemptions at issue, the defendants in *BNP* relied upon their own Fund Derivatives Group,

which was located in New York, and the *BNP* Court credited allegations that the subsequent

transfers at-issue "arose … from the Fund Derivatives Group's New York contacts."  *Id.* at 190.

For other redemptions at issue, the defendants were "direct investors" in the Funds and received

the at-issue redemptions in New York.  *Id.* at 191.  In so holding, Judge Bernstein contrasted

*BNP*'s contacts with those of the HSBC entities found to be jurisdictionally insufficient in *Hill v.*

*HSBC Bank plc* (*id.* at 191–92),[19]—"communicat[ing] with and transmit[ing] information and

funds to and from BLMIS located in New York," (207 F. Supp. 3d 333, 339 (S.D.N.Y. 2016)).

In sum, the New York contacts proffered by the Trustee[20] pale in comparison to the defendants'

contacts in *BNP*, and are even less significant than those found lacking in *Hill*.[21]

### C.    *BLI* Does not Apply to this Case.

Given the insufficiency under *BNP* of his proffered jurisdictional contacts between

Lombard Odier and Fairfield, the Trustee, citing *BLI,* resorts to relying on *Fairfield's* contacts

---

[19] Contrary to the Trustee's incorrect assertion, Judge Bernstein distinguished *Hill* on the facts; Judge Bernstein did not find *Hill* inapplicable to Madoff avoidance cases generally.  The Trustee's argument that "[t]his Court has already determined that this line of cases is not relevant to the Trustee's actions against defendants like Lombard who invested in BLMIS's feeder funds," (Opp. at 21, ECF 100) is incorrect.  *BNP* makes no such determination and, Judge Bernstein's distinction of *Hill* actually demonstrates *Hill*'s relevance.

[20] Unlike Multi-Strategy, the Trustee does not allege that Lombard Odier sent any documents or emails to the U.S. concerning the Fairfield Funds or had any physical contact with Fairfield in New York.  Tr. May 18, 2022 Hr'g *SIPC v. BLMIS, LLC*, Adv. Pro. No. 12-01205 (Bankr. S.D.N.Y.), Dkt. No. 121, at 63–65, Shaiman Decl. Ex. 3. This further differentiates Lombard Odier from other defendants in the Trustee's proceedings.

[21] The Trustee attempts to cast doubt on the applicability of this framework by citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).  *See* Opp. at 22 n.7, ECF 100.  Although the Trustee correctly notes that *Ford* held that no proximate cause requirement exists when there are sufficient related contacts, the contacts in *Ford* were legion.  Ford blanketed Montana and Minnesota with contacts, and these contacts related to the causes of action because "Ford had advertised, sold, and serviced those two car models [involved in the car accidents at issue] in both States for many years."  *Ford*, 141 S. Ct. at 1028.  *Ford's* holding, therefore, has no bearing on the reasoning of *SPV Osus* that found a proximate cause requirement applicable to cases with limited contacts, like those alleged here.  882 F.3d at 344.

8

with BLMIS to support jurisdiction over Lombard Odier. This argument fails for several reasons.

*First*, *BNP* superseded *BLI* and therefore controls. In *BNP*, the Trustee, citing *BLI*, made the same argument he tries here: a defendant's knowledge that its investment would be made (indirectly) in BLMIS in New York is sufficient in itself to confer personal jurisdiction. Opp. Defs.' Mot. Dismiss Am. Compl., *BNP*, Adv. Pro. No. 12-01576 (Bankr. S.D.N.Y. Dec. 20, 2017), ECF 110, at 31–32. However, although Judge Bernstein cited *BLI* for other issues, he disregarded that decision in his discussion of personal jurisdiction, instead relying on *Walden* and *SPV Osus* to analyze the *defendants'* New York contacts. *BNP*, 594 B.R. at 189-192. If Judge Bernstein had found *BLI*'s reasoning on personal jurisdiction persuasive or even relevant, he would have adopted the same argument the Trustee makes here and cited *BLI* as the basis for jurisdiction. But he did nothing of the sort; instead, he disregarded the Trustee's argument, ignored *BLI*, and articulated a different standard aligned with established law and recent Supreme Court precedent. This Court should follow the "law of the case"[22] and do the same.

*Second*, even if the Court were to find that *BLI* retains vitality after *BNP*, it is nonetheless distinguishable based upon the Trustee's own argument: "In a nutshell, BLI invested tens of millions of dollars in Fairfield Sentry with the specific purpose of having funds invested in BLMIS in New York, and *intended to profit from this U.S.-based investment*." Opp. at 12, ECF 100 (quoting *BLI*, 480 B.R. at 517) (emphasis added). Indeed, the Trustee ignores the essential fact that in *BLI*, the defendant invested *its own funds* in the Fairfield Funds *for its own profit*. *BLI*, 480 B.R. at 506. Here, in marked contrast, the Trustee does not (and could not) allege that Lombard Odier invested its own funds in Fairfield or was seeking a profit from a New York

---

[22] Tr. May 18, 2022 Hr'g *SIPC v. BLMIS, LLC*, Adv. Pro. No. 12-01205 (Bankr. S.D.N.Y.), Dkt. No. 121, at 132.

investment. Lombard Odier did not purchase any shares of the Fairfield Funds for its account but rather effected transactions as broker on behalf of its clients.[23] This is yet another critical fact that distinguishes Lombard Odier from other defendants in these proceedings where the Trustee has assigned great weight to the import of an alleged profit motive in the jurisdictional analysis.[24]

*Third*, the Trustee's theory that indirect investment in the U.S. qualifies as purposeful availment (Opp. at 10, ECF 100) finds no support in the controlling case law (Opening Br. at 15-17, ECF 91). "For a State to exercise jurisdiction consistent with due process … [t]he relationship between the defendant and the forum 'must arise out of contacts that the "defendant *himself*" creates with the forum.'" *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 335 (2d Cir. 2016) (quoting *Walden*, 571 U.S. at 284 (emphasis in original)). Here, it is not disputed that Lombard Odier effected investments on behalf of its clients in the Fairfield Funds—not in BLMIS. *See, e.g.*, Opp. at 1, ECF 100 ("Lombard [Odier] purposefully invested in the Fairfield Funds"). That the Fairfield Funds "fed substantially all of their funds into BLMIS," and that the Bank was aware of this, is irrelevant to the jurisdictional analysis. *Id. See Bristol-Myers Squibb Co. v. Super. Ct. of Calif., San Francisco Cnty.*, 137 S. Ct. 1773, 1781 (2017) ("[A] defendant's relationship with a … third party, standing alone, is an insufficient basis for jurisdiction.") (quoting *Walden*, 571 U.S. at 286).[25] Rather, as the Supreme Court has instructed, "it is the

---

[23] Kronegg Decl. ¶¶ 2, 3.

[24] Tr. May 18, 2022 Hr'g *SIPC v. BLMIS, LLC*, Adv. Pro. No. 12-01205 (Bankr. S.D.N.Y.), Dkt. No. 121, at 70.

[25] That redemptions Lombard Odier received "went through [Fairfield's] HSBC USA Account" owned and maintained by Sentry (Opp. at 19, ECF 100) amounts to another third-party contact irrelevant to Lombard Odier. *See Spetner v. Palestine Inv. Bank*, 495 F. Supp. 3d 96, 113 (E.D.N.Y. 2020) (no jurisdiction where defendant engaged in a "standard correspondent banking relationship" with a third party and did not set up or direct the correspondent account at issue); *see also Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 402-403 (S.D.N.Y. 2021) (finding allegation that defendant was aware that a New York account would be used to effect a transfer of funds in furtherance of the alleged fraud to be "patently insufficient" to confer jurisdiction where there were no allegations that defendant directed the use of the New York account).

10

defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 285 (internal citation omitted).[26]

### D.    The Exercise of Personal Jurisdiction Over Lombard Odier Would be Unreasonable and Violate Due Process.

Even if the Trustee had alleged sufficient contacts between *Lombard Odier* (not Fairfield) and New York, the Court's exercise of jurisdiction must be reasonable under the circumstances for it to be consistent with due process. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 297 (1980). To hale Lombard Odier into a court in New York based solely on (1) irrelevant agreements with third parties, (2) meetings with the manager of a fund (BLMIS) in which Lombard Odier did not invest, (3) less than a handful of redemption payments made to a U.S. correspondent account, and (4) the actions taken by *Fairfield* to invest in BLMIS in New York, without alleging any contacts between Fairfield and Lombard Odier in New York, would be unreasonable.

## II.    THE TRUSTEE HAS NOT JUSTIFIED HIS FAILURE TO PLAUSIBLY ALLEGE THAT LOMBARD ODIER RECEIVED CUSTOMER PROPERTY.

The Trustee does not grapple with Lombard Odier's central point that the Trustee has alleged billions of dollars more in subsequent transfers of BLMIS customer property from Sentry than he alleges was ever transferred to Sentry. This is not a matter of requiring "dollar-for-dollar accounting" or expert opinion, but a *legal* question to be resolved on a motion to dismiss, before

---

[26] The Trustee offers no Supreme Court or Second Circuit cases that support this jurisdictional theory. Opp. at 10-14, ECF 100. Instead, the Trustee relies primarily on *dicta* taken out of context from an inapposite decision. In *In re Picard* (Opp. at 10, ECF 100), the Second Circuit noted that investors in feeder funds "knew where their money was going" in the context of deciding whether the "presumption against extraterritoriality or international comity principles" prevented the use of a section of the Bankruptcy Code—not in the context of considering personal jurisdiction. 917 F.3d 85, 91, 105 (2d Cir. 2019). *Picard v. Maxam Absolute Return Fund, L.P. (In re Bernard L. Madoff Investment Securities LLC)*, upon which the Trustee also relies (Opp. at 10, ECF 100), is even less applicable because the defendant itself was a BLMIS feeder fund—not a foreign shareholder in one. 460 B.R. 106, 118 (Bankr. S.D.N.Y. 2011).

the parties and Court incur the burden of litigating time-consuming, baseless claims not plausibly related to the recovery of customer property.

### A.    The Trustee Failed to Meet His Pleading Burden.

The Trustee does not deny that he has failed to tie any of the thousands of alleged initial transfers from BLMIS to Sentry to any of the alleged subsequent transfers to Lombard Odier. Instead, he argues he need not do so (Opp. at 25-26, ECF 100), even as his own authorities support this pleading requirement.  For example, in *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 454 B.R. 317 (Bankr. S.D.N.Y. 2011) ("*Cohmad I*"), this Court upheld the pleading of the subsequent transfers because, "the Trustee alleges that the amounts of Commissions specified by BLMIS on the Payment Schedules *correspond* to the amounts paid by BLMIS to Cohmad and, subsequently, to the Cohmad Representatives".  *Id*. at 341 (emphasis added).

The Trustee's other cases similarly involved a close correspondence between the initial and subsequent transfers.  *See Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib., Inc.)*, 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007) (transfers by initial transferees "were preceded by fraudulent transfers of funds from [debtor] *in amounts sufficient to cover the [subsequent] transfers*"; emphasis added, citations omitted); *see also id*. at 13 (specifying initial and subsequent transfers during 13-day period); *Picard v. Merkin (in re BLMIS)*, 515 B.R. 117, 150 (Bankr. S.D.N.Y. 2014) ("*Merkin I*") ("several subsequent transfers took place contemporaneously or shortly after an initial transfer . . . , *implying linkage*"; emphasis added); *45 John Lofts, LLC v. Meridian Capital Group LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 736-37, 747  (Bankr. S.D.N.Y. 2019) (complaint alleged that payments totaling $29.4 million were deposited into account and $29.4 million was transferred out the same day and next

business day).[27]

Thus, the cases that say that a trustee "need only allege sufficient facts to show the relevant pathways through which the funds were transferred," *e.g.*, *Ellerin*, 2012 WL 892514, at *3, do not (indeed, cannot) relieve the Trustee of his obligation to plead a plausible linkage between the initial and subsequent transfers.  None of those cases upholds a pleading where, based on the Trustee's own allegations, the purported pathway is a dead-end, as is the case here, because the Trustee has alleged that earlier Sentry distributions had exhausted all the BLMIS money at Sentry prior to the at-issue redemptions.[28]  *See Picard v. Shapiro (In re BLMIS)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (Trustee must "allege facts that support the inference that the funds at issue originated with the BLMIS" and "tie any initial transfer to any subsequent transfer or Subsequent Transferee").

### B.    Tracing Analysis Is Unnecessary Where the Pleadings Negate Commingling.

The Trustee's invocation of "commingling" cannot relieve him of the obligation to allege a plausible linkage between initial and subsequent transfers.  As shown, the Trustee's own pleadings establish that there are significant periods of time where there was *no commingling* because there was *no customer property left at Sentry*—it had all been paid out previously.  *See* Opening Br. at 26-28, ECF 91; Shaiman Decl.  Ex. 1, ¶ 6.

---

[27] Similarly, in *Picard v. Charles Ellerin Rev. Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 08–01789, 2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012), defendant trust issued individual defendant a $6,200 check just two weeks after it deposited $25,000 from BLMIS,  Resp. to Mot., Attach. A, *Ellerin*, No. 10-05219, ECF 12-1, at 93-94; *id*., Compl. Ex. B, ECF 1, at 1, and in *Picard v. Mayer (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 08-01789, 2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021), BLMIS transferred $50,000,000 to Legacy Capital, Legacy Capital transferred $50,000,000 to Montpellier, and Montpellier transferred $30,647,210 to what became Kronos Group, all within several days.  Compl. Ex. B, *Mayer,* No. 20-01316, ECF 1-2, at 16; *id*. Compl. Exs. C, D, ECF 1-3, 1-4.

[28] In a footnote (Opp. p. 29, n.11, ECF 100), the Trustee accuses Lombard Odier of "conveniently ignor[ing]" alleged subsequent transfers close in time to an initial transfer, but does not identify these transfers and as set forth in the Opening Brief (at Point II.B), even temporally proximate transfers were devoid of customer property.

Tracing is only an issue where funds are commingled. *See Picard v. Merkin (In re BLMIS)*, 581 B.R. 370, 384-85 (Bankr. S.D.N.Y. 2017) ("*Merkin II*") (tracing necessary where subsequent transfers originated from commingled accounts); *United States v. Henshaw*, 388 F.3d 738, 739 (10th Cir. 2004) (same). Because the Trustee's allegations *negate* the existence of commingling (or customer property) for extensive time periods, the Trustee's authorities for the proposition that commingling does not defeat tracing[29] or that claims may proceed even though tracing may ultimately prove difficult[30] are irrelevant.

Contrary to the Trustee's assertion, there is no undisclosed expert methodology here—only arithmetic. The Trustee alleges that every redemption payment from Sentry during the relevant period was comprised *entirely* of customer property; therefore, each redemption necessarily decreased the amount of customer property left at Sentry by the amount redeemed. *See* Shaiman Decl. Ex. 2, ¶ 8 (alleging, for example, that "[b]ased on the Trustee's investigation to date, approximately $8,470,371 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Bank Vontobel"). All Lombard Odier does is subtract those redemptions from the amounts received from BLMIS—hardly the province of experts. *See Edmondson v. RCI Hospitality Holdings, Inc.*, No. 16-CV-2242, 2020 WL 1503452, at *6 (S.D.N.Y. Mar. 30, 2020) ("Simple arithmetic, such as ordinary multiplication, is a paradigmatic example of the type of everyday activity that goes on in the normal course of human existence.") (citations and quotation marks omitted).

### C.    The Trustee Has All the Records He Needs.

In an effort to excuse his pleading failure, the Trustee argues that he "does not have all of

---

[29] *See Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-cv-1073, 2020 WL 3077151, at *4 (D. Minn. June 10, 2020); *Ellerin*, 2012 WL 892514, at *3.

[30] *See Merkin I*, 515 B.R. at 152; *Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*, No. 08–15051 (SMB), 2014 WL 47774, at *15 (Bankr. S.D.N.Y. Jan. 3, 2014).

the Fairfield Funds' books and records."  (Opp. at 28, ECF 100.)  This is belied by his own

pleadings detailing *thousands* of alleged transfers from Sentry.  *See* Pincus Decl. Ex. 1 at Ex. B.

Further, he says nothing about his contractual right to records and cooperation from the Fairfield

Liquidators (*see* Settlement Agreement, *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239

(Bankr. S.D.N.Y.), ECF 69-2, ¶ 14)—who admitted in this Court that they have most of the

books and records of the Fairfield Funds.  Declaration of K. Krys, *In re Fairfield Sentry Ltd.*, No.

10-13164 (Bankr. S.D.N.Y. July 16, 2010), ECF 40, ¶¶ 15, 19.[31]  The Trustee's cases, which

offer pleading latitude where subsequent transfers had to be proven with *defendants'* records,[32]

are inapposite.

### D.    The Trustee Has No Claims Against Defendants Who Are Not "Transferees".

The Trustee contends that it is of no moment that he alleges billions of dollars more in

customer property than was ever transferred to Sentry because he can recover from any

combination of "transferees" up to the amount avoided.  Opp. at 29, ECF 100.  This ignores the

fact that for millions of dollars of the Trustee's claims the defendant *is not a "transferee"*

because there was *no BLMIS money* at Sentry to transfer.  *See* Opening Br., Point II, ECF 91.

This case is thus completely different from those involving re-transfers among subsequent

transferees, as in *Merkin I*, 515 B.R. at 149-50, or allocation of liability among subsequent

transferees who indisputably received money from the debtor, as in *CNB International Inc. v.

Kelleher (In re CNB International, Inc.)*, 393 B.R. 306, 332-33 (Bankr. W.D.N.Y. 2008).[33]

Here, the Trustee seeks to recover monies received from *Sentry* (*see generally* Shaiman Decl.

---

[31] The Trustee asserts (Opp. at 28, ECF 100) that Lombard Odier has relevant records, but he does not articulate what they are, and Lombard Odier is hard-pressed to imagine what they might be.
[32] *see Merkin I*, 515 B.R. at 151; *Cohmad I*, 454 B.R. at 329; *Picard v. Mayer (In re BLMIS)*, No. 08-01789, 2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021)
[33] Indeed, when the Trustee sought to recover an alleged transfer from one defendant to another, he expressly alleged it.  *See* Shaiman Decl. Ex. 2, ¶ 8 (alleging subsequent transfers from BBH to Credit Agricole Miami).

Ex. 1), without regard to whether, as to that payment, the defendant was a "transferee" of

BLMIS.  This he may not do, and the Trustee's claims should be dismissed.

### III.   WHERE, AS HERE, SECTION 546(E) BY ITS TERMS COVERS AN INITIAL TRANSFER, AN INNOCENT SUBSEQUENT TRANSFEREE MAY INVOKE THE SAFE HARBOR EVEN IF THE INITIAL TRANSFEREE MAY NOT.

The Trustee does not dispute that BLMIS was a stockbroker, that Sentry was a financial

institution, or that the initial transfer from BLMIS to Sentry was a settlement payment or a

transfer in connection with a securities contract between Sentry and its investors, like Lombard

Odier, and for the benefit of a financial institution.  Opp. at 31-37, ECF 100.  As such, there is no

question that Section 546(e) applies by its terms to all of Sentry's alleged subsequent transfers of

BLMIS's initial transfers made more than two years before BLMIS's bankruptcy filing.  Nor

does the Trustee dispute that Lombard Odier had no actual knowledge of Madoff's fraud.

The Trustee argues only that "[b]ased on" Judge Rakoff's ruling in *SIPC v. Bernard L.*

*Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12 MC 115, 2013 WL 1609154 (S.D.N.Y. Apr.

15, 2013) ("*Cohmad II*"), "a subsequent transferee cannot assert the protections of Section

546(e) where the Trustee has adequately pled the initial transferee's actual knowledge."  Opp. at

35, ECF 100.  As the Trustee would have it, Sentry's alleged actual knowledge of Madoff's

fraud bars not only Sentry, but also subsequent transferees, from invoking the safe harbor.[34]

In fact, *Cohmad II* directly supports the applicability of the safe harbor to innocent

subsequent transferees.  In a ruling that he directed be applied to a large number of adversary

---

[34] The Trustee devotes most of his brief on Section 546(e) to a straw man argument that the safe harbor does not apply directly to subsequent transfers, and that an alleged subsequent transferee can invoke Section 546(e) only to the extent the safe harbor applies to the alleged initial transfer.  Lombard Odier has not contended otherwise and bases its safe harbor defense on Section 546(e)'s applicability to the alleged initial transfer from BLMIS to Sentry.  The real issue, then, is not whether the safe harbor applies to the initial *transfer* (it clearly does), but which *transferees* can invoke it—namely, whether the actual knowledge of the initial transferee strips the safe harbor's protection from a subsequent transferee that does not have actual knowledge.

proceedings, *see Cohmad II*, 2013 WL 1609154, at *10, and which therefore was not "dicta,"

Opp. at 35, ECF 100, Judge Rakoff held that the relevant "actual knowledge" is that of the party

from which the Trustee seeks recovery:

> (1) Where the Trustee has sought to avoid transfers to an *initial transferee*, the avoidance of which would otherwise be barred by Section 546(e) . . . , the *initial transferee* will not be able to prevail on a motion to dismiss some or all of the Trustee's avoidance claims simply on the basis of the Section 546(e) "safe harbor" *if* the Trustee has alleged that the *initial transferee* had actual knowledge of Madoff Securities' fraud; and
> (2) Where the Trustee has sought to recover transfers made to a *subsequent transferee*, the avoidance of which would otherwise be barred by Section 546(e) as to the initial transferee, the *subsequent transferee* will not be able to prevail on a motion to dismiss some or all of the Trustee's avoidance claims simply on the basis of the Section 546(e) "safe harbor" *if* the Trustee has alleged that the *subsequent transferee* had actual knowledge of Madoff Securities' fraud.

*Cohmad II*, 2013 WL 1609154, at *1 (emphasis added except for "if").

Paragraph (2) does *not* preclude a subsequent transferee from asserting the safe harbor

where the *initial transferee* had actual knowledge of Madoff's fraud. This omission aligns with

the statutory goal of protecting the reasonable expectations of investors who believed they were

signing a securities contract as "a transferee who had actual knowledge of the Madoff 'Ponzi'

scheme did not have any such expectations". *Id.* at *4 ("[I]f the allegations adequately allege

that a *defendant* had actual knowledge of Madoff's scheme, such a transferee stands in a

different posture from an innocent transferee, even as concerns the application of Section

546(e)."); *see also id.* at *7 ("In sum, if the Trustee sufficiently alleges that the transferee from

whom he seeks to recover a fraudulent transfer knew of Madoff Securities' fraud, that transferee

cannot claim the protections of Section 546(e)'s safe harbor."). Indeed, the Trustee concedes the

rationale for this rule when it states that "the point of the actual knowledge exception . . . is to

restrict transferees with actual knowledge from hiding behind the safe harbor." Opp. at 36,

ECF 100.

In *Picard v. Fairfield Inv. Fund Ltd. (SIPC v. Bernard L. Madoff Inv. Sec. LLC)*, which is consistent with this interpretation of Judge Rakoff's ruling, this Court dismissed the Trustee's claim against Ms. Piedrahita for subsequent transfers she received from various Fairfield entities because the Trustee "failed to plead individualized factual allegations demonstrating that [she] had independent actual knowledge of the BLMIS fraud."  No. 08-01789, 2021 WL 3477479, at *6 (Bankr. S.D.N.Y. Aug. 6, 2021).  The Court did so despite having earlier concluded that the complaint alleged that initial transferees, including Sentry, had actual knowledge of Madoff's fraud.  *Id.* at *4.[35]

The Trustee cites *BNP* and *SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*, 620 B.R. 505 (Bankr. S.D.N.Y. 2020), in support of his argument, Opp. at 35-36, ECF 100, but neither case discussed whether a subsequent transferee's invocation of Section 546(e) is barred by the initial transferee's actual knowledge.  Instead, both cases focused on the same straw man argument raised by the Trustee here.  *See BNP*, 594 B.R. at 197 ("the safe harbor is a defense to the avoidance of the *initial* transfer"); *SunEdison*, 620 B.R. at 514 ("the safe harbor

---

[35] The Trustee asserts that "this Court has . . . applied the actual knowledge 'exception' on numerous occasions" (Opp. at 32, ECF 100), but none of the cases he cites in his accompanying footnote (*id.*, n.13) barred an innocent subsequent transferee from invoking the safe harbor based on the actual knowledge of the initial transferee.  *See Fairfield Inv. Fund*, 2021 WL 3477479, at *1, 7 (dismissing innocent subsequent transferee); Tr. of May 29, 2019 Hr'g, *Picard v. Square One Fund Ltd. (In re Madoff)*, No. 10-04330 (Bankr. S.D.N.Y. May 29, 2019), ECF 181, at 41 (complaint's allegations "fail to spell out a claim of actual knowledge" against initial transferee defendant); *Picard v. Magnify Inc. (In re Bernard L. Madoff Inv. Sec. LLC)*, 583 B.R. 829 (Bankr. S.D.N.Y. 2018) (no subsequent transfer claims in complaint at No. 10-05279, ECF 143); *Picard v. Est. of Mendelow*, 560 B.R. 208, 226, 229 (Bankr. S.D.N.Y. 2016) (sustaining allegations of initial transferees' actual knowledge; dismissing subsequent transferee claims); *Picard v. Avellino (In re Bernard L. Madoff Inv. Sec. LLC)*, 557 B.R. 89, 116, 125-26 (Bankr. S.D.N.Y. 2016) (not addressing precise question in light of certain concessions and lack of challenges by defendants); *Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (dismissing subsequent transfer claims); *Picard v. Ceretti (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 08–99000, 2015 WL 4734749, at *1, 10 (Bankr. S.D.N.Y. Aug. 11, 2015) (subsequent transfer claims not subject of motion); *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117, 141, 153 (Bankr. S.D.N.Y. 2014) (applying safe harbor to subsequent transfers beyond two-year period because complaint failed to plausibly allege transferees' actual knowledge).

defense only applies by its terms to the initial transfer"); note 34 *supra*.[36]

Finally, the Trustee's speculation that applying the safe harbor to innocent subsequent transferees would allow an unscrupulous "initial transferee … to place fraudulently transferred moneys with a subsequent transferee and out of the reach of a trustee", Opp. at 36, ECF 100, is irrelevant here.  Sentry did not initiate the redemptions (Lombard Odier did), and Lombard Odier is not alleged to have had actual knowledge of Madoff's fraud.

## IV.    THE COMPLAINT DOES NOT COMPLY WITH RULE 8(A)(2).

The Trustee cannot cure its failure to plead "a short and plain statement of the claim showing that the pleader is entitled to relief", as required by Rule 8(a)(2) (Opening Br. at 36-37, ECF 91), by pointing to Rule 10(c)'s provision that, "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion."  The Trustee does not seek to incorporate "[a] statement", but 798 paragraphs of statements without specifying which are relevant here, from a document filed in a separate action that is no longer an operative pleading.[37]

The Trustee's reliance upon *Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670 (Bankr. E.D. Pa. 2010), is unavailing.  That case, which dismissed the complaint for failing to comply with Rule 8(a), *id.* at 679, made clear that even when incorporation of another pleading is permitted, the resulting pleading must nonetheless satisfy Rule 8(a).[38]  Judicial notice,

---

[36] To the extent *BNP* might be read to imply that an innocent subsequent transferee cannot invoke the safe harbor, it is inconsistent both with *Cohmad II* and this Court's decision in *Fairfield Investment Fund*.

[37] *See United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 463 (E.D.N.Y. 2007) ("the Government's proposed method of pleading necessary elements of its RICO claim by incorporating factual allegations contained in several prior lengthy criminal and civil RICO pleadings is … a blatant violation of Rule 8(a)(2)'s direction that a civil plaintiff provide a 'short and plain statement of the claim showing that the pleader is entitled to relief.'")

[38] Similarly unavailing is the Trustee's reliance on *Sec. Inv. Protec. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 501 B.R. 26 (S.D.N.Y. 2013).  That case addressed a different question (whether the Trustee may avoid a subsequent transfer without first obtaining a judgment against the initial transferee), and defendants did not challenge the propriety or scope of the incorporation.  *See id.* at 37 (mentioning incorporation in a single sentence).  And that decision is beside the point.  Lombard Odier does not challenge the avoidability of the initial transfers, but the propriety of the Trustee's incorporation of a plethora of irrelevant allegations and exhibits.

likewise, cannot save the trustee's Complaint.  A court may only take Judicial notice of a separate complaint to recognize that those allegations were made, not that they are true.  *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted…, but rather to establish the fact of such litigation and related filings"; internal citation and quotation marks omitted); *Francis v. Accubanc Mortg. Corp*., No. 19-CV-902 (AJN), 2020 WL 2086038, at *1 (S.D.N.Y. Apr. 30, 2020) (same, on motion to dismiss).

Finally, Lombard Odier does not object to the Trustee's request for leave to amend his Complaint if the Court sustains Lombard Odier's Rule 8(a) objection.

## CONCLUSION

For the foregoing reasons and the reasons set forth in Lombard Odier's Opening Brief, Lombard Odier respectfully requests that the Court dismiss the Complaint in its entirety.

Dated:  May 27, 2022                    Respectfully Submitted,
       New York, New York

ALLEGAERT BERGER & VOGEL LLP

By: */s/ John F. Zulack*_____
John F. Zulack
Lauren J. Pincus
David A. Shaiman
111 Broadway, 20th Floor
New York, New York 10006
Tel. No.: 212-571-0550
Email: jzulack@abv.com
Email: lpincus@abv.com
Email : dshaiman@abv.com

MAYER BROWN LLP

By: */s/ Mark G. Hanchet*_____
Mark G. Hanchet
Kevin C. Kelly
1221 Avenue of the Americas
New York, New York 10020
Tel. No.: (212) 506-2500
Email: mhanchet@mayerbrown.com
Email: kkelly@mayerbrown.com

Marc R. Cohen
1999 K St., NW
Washington, DC 20006
Tel. No.: (202) 263-3000
Email: mcohen@mayerbrown.com

*Counsel for Defendant Banque Lombard*
*Odier & Cie SA*