**Hearing Date: July 13, 2022, 10:00 a.m.**

KELLNER HERLIHY GETTY & FRIEDMAN, LLP
Douglas A. Kellner, Esq.
470 Park Avenue South, 7th Floor
New York, New York 10016-6819
Telephone:  (212) 889-2121
Email: dak@khgflaw.com

*Attorneys for Parson Finance Panama S,A,*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　Plaintiff-Applicant,<br><br>　　　v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　Defendant. | Adv. Pro. No. 08-01789 (CGM)<br><br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>　　　Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>PARSON FINANCE PANAMA S.A.,<br><br>　　　Defendant. | Adv. Pro. No. 11-02542 (CGM) |

**REPLY MEMORANDUM OF PARSON FINANCE PANAMA S.A.
IN SUPPORT OF ITS MOTION TO DISMISS**

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................... ii-iii

I.   THE TRUSTEE CANNOT ESTABLISH PERSONAL
     JURISDICTION OVER PARSON FINANCE ............................................    1

     A. Taken Individually or Collectively, the Trustee's Alleged
        Contacts do not Establish Jurisdiction ...................................    2

II.  THE COMPLAINT FAILS TO PLEAD ADEQUATELY THAT
     PARSON FINANCE RECEIVED CUSTOMER PROPERTY .......................    5

III. WHERE, AS HERE SECTION 546(E) BY ITS TERMS COVERS
     AN INITIAL TRANSFER, AN INNOCENT SUBSEQUENT
     TRANSFEREE MAY INVOKE THE SAFE HARBOR EVEN IF
     THE INITIAL TRANSFEREE MAY NOT ......................................    7

     A. As the Trustee Concedes, the Alleged Initial Transfers
        Qualify for the Statutory Safe Harbor ...................................    7

     B. The Trustee's Attempt to Strip Innocent Subsequent
        Transferee Defendants of Statutory Safe Harbor Protections
        is Contrary to Law ...................................................................    8

        1. *Cohmad* Does Not Divest Innocent Subsequent
           Transferee Defendants of the Protections of the
           Statutory Safe Harbor ...............................................    9

        2. The Trustee's Attempt to Divest Innocent
           Subsequent Transferee Defendants of the Protections
           of the Statutory Safe Harbor Is Inconsistent with
           *Cohmad* and Second Circuit Case Law ...................................   15

     C. Parson Finance Is Separately Entitled to the Statutory Safe
        Harbor's Protection Based on Securities Contracts with
        Fairfield Sentry ...................................................................   16

     CONCLUSION ...................................................................................   19

## **TABLE OF AUTHORITIES**

**Page**

*America/International 1994 Venture v. Mau*, 146 A.D.3d 40 (2d Dep't 2016) ........... 4

*AP Servs., LLP v. Silva*, 483 B.R. 63, 71 (S.D.N.Y. 2012) ........................................ 11

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................. 5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) ........................................... 5

*Capitol Records, Inc. v. MP3tunes, LLC*, No. 07 Civ 9931, 2008 U.S. Dist. LEXIS
    75329, at *12 (S.D.N.Y. Sep. 29, 2008) ................................................................. 3

*Deutsch v. JPMorgan Chase & Co.*, No. 18-CV-11655 (VSB),
    2019 WL 4805689, at *5 (S.D.N.Y. Sept. 30, 2019)............................................... 8

*Esso Exploration and Production Nigeria Limited v. Nigerian National Petroleum
    Corporation* 397 F. Supp. 3d 323, 344 (S.D.N.Y. 2019) ....................................... 3-5

*Etra v. Matta,* 61 N.Y.2d 455, 458-59 (1984) ................................................................ 4

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, No. 10-13164, 2018 WL
    3756343, at*12 (Bankr. S.D.N.Y. Aug. 6, 2018) ................................................... 2

*Helms v. Metro. Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 656 (Bankr. N.D. Ill.
    2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021) ........................................................... 6

*Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339–40 (S.D.N.Y. 2016) ...................... 3

*In re Boston Generating LLC Holliday v. K Rd. Power Mgt., LLC*, 617 B.R. 442,
    477 (Bankr. S.D.N.Y. 2020) .................................................................................... 11

*In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 94 (2d Cir. 2019) ...... 15

*John Lofts LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R.
    730, 736–37, 747 (Bankr. S.D.N.Y. 2019) .............................................................. 5

*Kelley v. Safe Harbor Managed Acct 101, Ltd.*, 31 F.4th 1058 (8th Cir. 2022)........... 13

*Peterson v. Enhanced Investing Corp. (Cayman) Ltd. (In re Lancelot Investors
    Fund)*, 467 B.R. 643, 652-53 (Bankr. N.D. Ill. 2012) ............................................ 16

*Picard v. ABN AMRO Bank (Ireland) Ltd. (Secs. Inv. Protection Corp. v. Bernard
    L. Madoff Investment Securities LLC)*, 505 B.R. 135, 142 (S.D.N.Y. 2013) ......... 15

*Picard v. BNP Paribas S.A. (In re Madoff),* 594 B.R. 167
    (Bankr. S.D.N.Y. 2018) ........................................................................................... 1,13

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R.
    317, 341 (Bankr. S.D.N.Y. 2011) ........................................................................... 5,14

*Picard v. Greiff*, 476 B.R. 715, 722 (S.D.N.Y. 2012) .................................................. 16

*Picard v. Ida Fishman Recoverable Trust*, 773 F.3d 411, 423 (2d Cir. 2014)............. 15

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117
    (Bankr. S.D.N.Y. 2014) ........................................................................................... 5,14

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R. 100, 119
   (Bankr. S.D.N.Y. 2015) ................................................................................ 5

*Rothschild, Unterberg, Towbin v. McTamney* , 59 N.Y.2d 651, 652 (1983)............... 4

*SAS Group, Inc. v. Worldwide Inventions, Inc.* and *Burlington Industries, Inc. v.
   Salem International Co.* 245 F. Supp. 2d 543, 549 (S.D.N.Y. 2003); 645 F.
   Supp. 872, 874 (S.D.N.Y. 1986)................................................................... 4

*Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities
   LLC*, No. 12 MC 115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) .......... 7,9,11,13,14,16,19,20

*Silverman v, K.E.R.U. Realty Corp. (In re Allou Distrib. Inc.)*, 379 B.R. 5, 13, 30
   (Bankr. E.D.N.Y. 2007)................................................................................ 5

*SPV Osus Ltd.*, 882 F.3d at 345(S.D.N.Y. 2019)......................................................... 3

*SunEdison Litigation Trust v. Seller Note, LLC (In re SunEdison, LLC)*,
   620 B.R. 505 (Bankr. S.D.N.Y. 2020)...................................................... 13

*U.S. Bank N.A. v. Verizon Communs. Inc.*, 892 F. Supp. 2d 805, 815
   (N.D. Tex. 2012)....................................................................................... 11

*United Comput. Capital Corp. v. Secure Prods., L.P.*, 218 F. Supp. 2d 273, 278
   (N.D.N.Y. 2002)........................................................................................ 3

*Visual Footcare Techs., LLC v. CFS Allied Health Educ., LLC*, No. 13 Civ. 4588,
   2014 WL 772215, at*8 (S.D.N.Y. Feb. 21, 2014)................................... 3

*Walden v. Fiore,* 571 U.S. 277 (2014) ........................................................................ 1

## STATUTES, RULES, & OTHER AUTHORITIES

Bankruptcy Code Section 546(e) ................................................................................ 7-12,14-19

Bankruptcy Code Section 548(a)(1)(A)....................................................................... 14-16

Bankruptcy Code Section 550(a) ................................................................................ 11

Bankruptcy Code Section 550(a)(2) ........................................................................... 6

Bankruptcy Code Section 550(b) ................................................................................ 13

Federal Rules of Civil Procedure 12(b)(2)................................................................. 1

Federal Rules of Civil Procedure 12(b)(6)................................................................. 1

Defendant Parson Finance Panama S.A. ("Parson Finance") respectfully submits this reply memorandum of law in further support of its motion to dismiss the Complaint of Irving Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC (the "Trustee"), pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## I.   THE TRUSTEE CANNOT ESTABLISH PERSONAL JURISDICTION OVER PARSON FINANCE

Parson Finance's Opening Brief (ECF 93) demonstrates that the Complaint does not make out the required prima facie case for personal jurisdiction over Parson Finance based on the standard articulated by Judge Bernstein in *Picard v. BNP Paribas S.A. (In re Madoff),* 594 B.R. 167 (Bankr. S.D.N.Y. 2018) ("BNP"), an avoidance case brought by the Trustee, which the Trustee agrees is the "law of the case." In *BNP,* Judge Bernstein, relying upon the Supreme Court's decision in *Walden v. Fiore, 571 U.S. 277 (2014)* and Second Circuit precedent, held that the Trustee is required to establish jurisdiction with respect to each of the redemptions he sought to avoid based on the defendant's contacts with the forum. *See BNP,* 594 B.R. at 189-90.

The Trustee argues that the Court can assert jurisdiction over Parson Finance based on three purported contacts: (1) agreements (executed outside the United States) between Parson Finance and third party Fairfield Sentry that contain New York choice of law and forum clauses; (2) two meetings between alleged agents of Parson Finance with Fairfield in New York; and (3) that the redemption from Fairfield Sentry passed through a New York correspondent bank.

Taken alone or together these contacts do not establish jurisdiction over the Trustee's avoidance claim. Critically, the Trustee does not allege that Parson Finance itself had any dealings with BLMIS.

While the Trustee attaches some correspondence relating to the Fairfield Funds, an actual examination of the correspondence completely corroborates the Verling Declaration (ECF 94) that Parson Finance's only direct contact was a meeting in London to make the investment in Fairfield Sentry. That Anova and Bamont had other, remote business connections to New York while representing other clients, does not establish that they acted as agents for Parson Finance in New York.[1]

### A. Taken Individually or Collectively, the Trustee's Alleged Contacts do not Establish Jurisdiction.

The Trustee points to New York choice of law and choice of forum provisions included in a proffered Subscription Agreement between Parson Finance and Fairfield Sentry. The inclusion of New York choice of law and forum provisions in the subscription agreement fails to establish personal jurisdiction over Parson Finance for the Trustee's avoidance claim. Judge Bernstein ruled with respect to claims brought by the Fairfield Liquidators (the party to the agreement) that the Fairfield Sentry subscription agreements are "irrelevant" to claims to recover redemption payments because "consent to the Subscription Agreement does not constitute consent to personal jurisdiction in the U.S. Redeemer Actions." *See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, No. 10-13164, 2018 WL 3756343, at*12 (Bankr. S.D.N.Y. Aug. 6, 2018). *A fortiori*, the clauses in the Subscription Agreement, to which the Trustee was not even a party, do not relate to the redemptions at issue and provide no basis for jurisdiction.

The Trustee does not credibly assert that there were any meetings in New York relating to Parson Finance's investment in the Fairfield Funds or the redemption at issue. Even if there

---

[1] Feil Exhibits 9-13, 19-29 and 31 (ECF 97), cited at Opp. Mem. 4, do not support the claim that there were any "in-person meetings with FGG in New York…to discuss Parson's investment in Sentry."

were a couple of indirect meetings, they would not be sufficient to create jurisdiction over the redemption. See *Visual Footcare Techs., LLC v. CFS Allied Health Educ., LLC*, No. 13 Civ. 4588, 2014 WL 772215, at*8 (S.D.N.Y. Feb. 21, 2014) (three in-forum meetings incidental to the contractual relationship at issue do not qualify as purposeful availment and cannot subject defendant to personal jurisdiction); *Capitol Records, Inc. v. MP3tunes, LLC*, No. 07 Civ. 9931, 2008 U.S. Dist. LEXIS 75329, at *12 (S.D.N.Y. Sep. 29, 2008) (in-forum meetings are insufficient to establish jurisdiction absent additional evidence that the meetings related to the plaintiff's claims); *see also United Comput. Capital Corp. v. Secure Prods., L.P.*, 218 F. Supp. 2d 273, 278 (N.D.N.Y. 2002)(explaining that "meetings in the forum state that are exploratory, unproductive, or insubstantial are insufficient to establish requisite contacts with the state" and finding that "the activities at the few New York meetings cited by plaintiff lack any substantial nexus between the business transacted and the cause of action sued on").

That payments passed through a New York correspondent account, without any direction by Parson Finance, does not establish a required minimum contact with New York. *See SPV Osus Ltd.*, 882 F.3d at 345 (finding "handful of communications and transfer of funds . . . are insufficient to allow the exercise of specific personal jurisdiction over the [Foreign] Defendants"); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339–40 (S.D.N.Y. 2016) (finding allegations that foreign defendants "communicated with and transmitted information and funds to and from BLMIS located in New York" were insufficient to "project" the foreign defendants into New York) (internal quotations omitted).

The Trustee relies on *Esso Exploration and Production Nigeria Limited v. NigerianNational Petroleum Corporation* to support his contention that the totality of Parson Finance's alleged contacts establish that Parson Finance purposefully directed its activities to

New York. Opp. at 21(citing 397 F. Supp. 3d 323, 344 (S.D.N.Y. 2019)). This reliance is

misguided because in *Esso*, unlike here, the defendant was alleged to have had extensive contacts

with the U.S. to negotiate and facilitate the performance of the agreement at issue. 397 F. Supp.

3d at 344 ("Specifically, NNPC attended the Houston roadshow to solicit bids, engaged in

preliminary negotiations in Houston, directed communications to the United States during

contract negotiations, and travelled to the United States on more than one occasion to facilitate

performance of the Agreement."). The Trustee's reliance on *SAS Group, Inc. v. Worldwide

Inventions, Inc.* and *Burlington Industries, Inc. v. Salem International Co.* is also unavailing,

because, in both of those cases, just like in *Esso*, the in-forum meetings involved negotiations

between the parties that directly gave rise to the claims at issue. 245 F. Supp. 2d 543, 549

(S.D.N.Y. 2003); 645 F. Supp. 872, 874 (S.D.N.Y. 1986).

Whether Parson Finance has not engaged in sufficient purposeful activity to confer

jurisdiction pursuant to New York's long-arm statute. In *Etra v. Matta,* 61 N.Y.2d 455, 458-59

(1984), the Court of Appeals found that the totality of a Massachusetts doctor's contacts with

New York, in the form of written and telephonic communications and the shipment of

experimental drugs to the decedent's New York physician, were insufficient to confer personal

jurisdiction. Similarly, in *Rothschild, Unterberg, Towbin v. McTamney* , 59 N.Y.2d 651, 652

(1983) and in  *America/International 1994 Venture v. Mau*, 146 A.D.3d 40 (2d Dep't 2016), the

New York courts have found that choice of New York law and communications to a New York

broker would not be sufficient to establish purposeful activity in New York. There is no basis for

this Court to extend its jurisdiction to Parson Finance in these circumstances.

## II.    THE COMPLAINT FAILS TO PLEAD ADEQUATELY THAT PARSON FINANCE RECEIVED CUSTOMER PROPERTY

The Complaint fails to plausibly allege that Parson Finance is a subsequent transferee of customer property. The Trustee does not deny failing to plead any facts connecting the alleged initial transfers to the alleged subsequent transfers—*i.e.*, his pleading concededly does not "tie any initial transfer to any subsequent transfer or Subsequent Transferee." *Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (citation omitted).  Instead, he disclaims any such obligation.  The law, however, requires every plaintiff to allege a claim with "facial plausibility" by "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Simply listing alleged initial transfers and subsequent transfers and adding the bare, conclusory assertion that the entries in the two lists are sufficiently connected falls "short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

Decisions cited by the Trustee—some from other adversary proceedings he has commenced—disprove his argument by exemplifying the types of allegations that plausibly tie initial and subsequent transfers at the pleading stage.  *See, e.g.*, *45 John Lofts LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 736–37, 747 (Bankr. S.D.N.Y. 2019) (payments totaling $29.4 million deposited into an account; $29.4 million withdrawn by the next business day); *Merkin*, 515 B.R. at 150 ("[S]everal subsequent transfers took place contemporaneously or shortly after an initial transfer . . . , implying linkage."); *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317, 341 (Bankr. S.D.N.Y. 2011) (pleading of subsequent transfers held sufficient where they "correspond[ed] to" initial transfers from BLMIS); *Silverman v, K.E.R.U. Realty Corp. (In re Allou Distrib. Inc.)*, 379 B.R. 5, 13, 30 (Bankr. E.D.N.Y. 2007) (alleged subsequent transfers "were preceded by fraudulent transfers" from debtor "in amounts sufficient to cover the [subsequent] transfers," all within 13 days).  Requiring the Trustee to plead facts alleging some "linkage," *Merkin*, 515 B.R. at 150, does not mandate a "tracing analysis" or "dollar-for-dollar accounting" as the Trustee asserts.  *See* Opp. 22.  Rather, it merely requires

pleading facts that, if proved, would link initial to subsequent transfers—something the Trustee himself has done in other actions, but not here.

Remarkably, the Trustee's opposition to the instant motion to dismiss acknowledges that Parson Finance, "asserts that Sentry exhausted all BLMIS customer property on hand when it made a transfer to Abu Dhabi Investment Authority days before satisfying Parson's redemption request," but astonishingly continues, "This assertion relies on the factual assumption that the subsequent transfer to Abu Dhabi Investment Authority and other transfers preceding it were sourced solely by customer property." Opp. at 31-32. Yet, the Trustee himself alleged in his complaint against Abu Dhabi Investment Authority that the transfer was sourced from customer property. *See* ADIA Compl., 11-02493 EF#1 ¶ 2 ("With this Complaint, the Trustee seeks to recover approximately $300,000,000 in subsequent transfers of Customer Property made to Defendant ADIA."); *id*. ¶ 41 ("approximately $300,000,000 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant ADIA"); *id*. Ex. E (listing $200,000,000 of the $300,000,000 as having been transferred from Sentry to ADIA on April 4, 2005). The Trustee cannot have it both ways.

The Trustee's pleadings establish long periods in which no commingling of funds occurred—and the requisite linkage cannot be made—because no BLMIS customer property remained at Fairfield Sentry; it had already been paid out. The Trustee implausibly seeks to recover *$2 billion* more in subsequent transfers than the sum of all alleged initial transfers from BLMIS to Fairfield Sentry. The Trustee tries to justify this overreach because he "'can recover from any combination of [transferees]' up to the amount avoided." (citing *Helms v. Metro. Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021)). But the only subsequent transferees from which potentially duplicate recoveries may be obtained—*i.e.*, the "immediate or mediate transferee[s] of [an] initial transferee," to which Section 550(a)(2) refers—are those "who take[] in a later transfer down the chain of title or possession." *Helms*, 601 B.R. at 656 (citation omitted). Here, the Trustee does not seek recovery from a series of transferees in a single "chain of title or possession." Instead, he sues to recover various amounts from many defendants in dozens of *different* alleged chains of title or possession,

6

asserting—without alleging facts plausibly supporting the assertion—that all the funds they received constitute subsequent transferees of customer property. And he persists in doing so even though the total he seeks exceeds by approximately $2 billion the sum of the initial transfers.  Not surprisingly, the Trustee cites no precedent for proceeding in this manner.

## III.   WHERE, AS HERE, SECTION 546(E) BY ITS TERMS COVERS AN INITIAL TRANSFER, AN INNOCENT SUBSEQUENT TRANSFEREE MAY INVOKE THE SAFE HARBOR EVEN IF THE INITIAL TRANSFEREE MAY NOT.

The Trustee concedes that the alleged initial "six-year" transfers qualify under the statutory safe harbor, yet seeks to strip Parson Finance of its protections.  He argues that *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC*, No. 12 MC 115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*") prohibits an ***innocent subsequent transferee*** from invoking Section 546(e) merely because the Trustee alleges that the ***initial*** transferee had actual knowledge of the underlying fraud.  This misconstrues *Cohmad*, which precludes only transferees themselves allegedly having such actual knowledge from relying on Section 546(e); the Trustee concedes that Parson Finance lacked such knowledge. Accepting the Trustee's misreading would eviscerate the safe harbor in the subsequent transfer context, contrary to *Cohmad* and at odds with admonitions of the Second Circuit.  Moreover, the Trustee fails to rebut the showing that Section 546(e) governs here under a separate and additional holding of *Cohmad*, under which that provision applies, without regard to the initial transferee's knowledge, by virtue of "securities contracts" between Fairfield Sentry and Parson Finance that did not involve BLMIS.

### A.   As the Trustee Concedes, the Alleged Initial Transfers Qualify for the Statutory Safe Harbor

Parson Finance established that the alleged initial transfers from BLMIS to Fairfield Sentry qualify for the Section 546(e) safe harbor because: (a) they are transfers and settlement

payments made "in connection with a securities contract" (indeed, two separate securities contracts—BLMIS's customer agreements with Fairfield Sentry and the Fairfield Sentry Articles of Association, which govern redemptions from Fairfield Sentry; and (b) they were made by, to, and/or for the benefit of covered entities, including a stockbroker and multiple financial institutions. The Trustee does not contest any of this. He has therefore conceded that the alleged initial transfers satisfy Section 546(e)'s requirements. *See, e.g., Deutsch v. JPMorgan Chase & Co.*, No. 18-CV-11655 (VSB), 2019 WL 4805689, at *5 (S.D.N.Y. Sept. 30, 2019).

**B.      The Trustee's Attempt to Strip Innocent Subsequent Transferee Defendants of Statutory Safe Harbor Protections is Contrary to Law**

The Trustee dismissively asserts that "[n]one of this matters" because he has pleaded actual knowledge of the Madoff/BLMIS fraud by ***Fairfield Sentry—not*** Parson Finance. Opp. 34. The Trustee has concededly failed to allege that Parson Finance had actual knowledge of the fraud. Instead, he relies on a grasping interpretation of *Cohmad* to deprive subsequent transferee defendants which are ***not*** alleged to have had actual knowledge of the BLMIS/Madoff fraud and did ***not*** know that BLMIS was not actually trading securities ("Innocent Subsequent Transferee Defendants") of Section 546(e)'s protections if, and solely because, the ***initial*** transferee allegedly had such actual knowledge. *See* Opp. 5-6. That is wrong as a matter of law. Neither *Cohmad* nor any other authority denies an Innocent Subsequent Transferee Defendant its statutory protections based on an unrelated initial transferee's alleged knowledge. Parson Finance dealt with Fairfield Sentry at arm's length, and the Trustee does not allege otherwise. Nor does the Trustee argue that Fairfield Sentry's alleged knowledge of the BLMIS/Madoff Fraud may be imputed to Parson Finance.

The real issue, then, is not whether the safe harbor applies to the initial *transfer* (it clearly does), but which *transferees* can invoke it—namely, whether the actual knowledge of the initial

transferee strips the safe harbor's protection from a subsequent transferee that does not have actual knowledge.

### 1. *Cohmad* Does Not Divest Innocent Subsequent Transferee Defendants of the Protections of the Statutory Safe Harbor

In *Cohmad*, Judge Rakoff held that "[w]here the Trustee has sought to recover transfers made to a subsequent transferee, the avoidance of which would otherwise be barred by Section 546(e) as to the initial transferee, the subsequent transferee will not be able to prevail on a motion to dismiss . . . the Trustee's avoidance claims simply on the basis of Section 546(e)'s 'safe harbor' *if* the Trustee has alleged that the subsequent transferee had actual knowledge of Madoff Securities' fraud." *Cohmad*, 2013 WL 1609154, at *1 (emphasis in original). Where, as here, the Trustee has *not* alleged such actual knowledge by the *subsequent transferee defendant*, it logically follows that the defendant *is* "able to prevail on a motion to dismiss" based on Section 546(e). *Id.* The Trustee's contrary contention—that an Innocent Subsequent Transferee loses its Section 546(e) defense based on the happenstance of an unrelated initial transferee's knowledge—does not survive a close reading of *Cohmad*.

*Cohmad* resulted from the District Court's withdrawal of the reference in many adversary proceedings (including this one) to address "whether application of Section 546(e) to an initial or mediate Transfer bars recovery by the Trustee of any subsequent Transfer pursuant to Section 550." Section 546(e) Briefing Order, *In re Madoff Sec.*, No. 12-MC-115 (S.D.N.Y. May 16, 2012), ECF No. 119 ("Briefing Order"). Judge Rakoff held that an *initial transferee defendant* "will not be able to prevail on a motion to dismiss some or all of the Trustee's avoidance claims simply on the basis of Section 546(e)'s 'safe harbor' *if* the Trustee has alleged that the initial transferee had actual knowledge of the Madoff Securities' fraud." *Cohmad*, 2013 WL 1609154, at *1 (emphasis in original). The court's rationale for that limited carve-out from the safe harbor

was that defendants that signed "account agreements" with BLMIS with actual knowledge of its fraud "must have known that the transfers they received" from BLMIS "were not 'settlement payments,'" and transferees with actual knowledge that BLMIS was not trading securities "must also have known that the transfers could not have been made in connection with an actual 'securities contract.'"  *Id*. at *3.

For this reason, Judge Rakoff explained, if the Trustee's pleading "adequately alleges[s] that a defendant had actual knowledge of Madoff's scheme, ***such a transferee stands in a different posture from an innocent transferee, even as concerns the application of Section 546(e)***."  *Id*. at *4 (emphasis added).  The court pointed out that the "purpose" of Section 546(e) is to minimize "the displacement caused in the commodities and securities markets in the event of a major bankruptcy affecting those industries"—a "goal [that] is best achieved by protecting the reasonable expectations of investors who believed they were signing a securities contract."  *Id*. (internal quotations and citations omitted).  An innocent investor—*i.e.*, one without actual knowledge of the fraud—has such "reasonable expectations" and is entitled to Section 546(e)'s protections; by contrast, "a transferee who had actual knowledge of the Madoff 'Ponzi' scheme did not have such expectations, but was simply obtaining moneys while he could."  *Id*. Accordingly, the court in *Cohmad* drew a clear, bright line as to the availability of Section 546(e) on motions to dismiss, based ***solely*** on whether the "defendant"—*i.e.*, ***the transferee being sued***—allegedly had such actual knowledge of the underlying fraud.  *Id.*

This distinction applies fully to alleged ***subsequent transferee defendants***.  After holding that "even if the initial (or mediate) transferee failed to raise a Section 546(e) defense" for any reason (including, as here, the Trustee's settlement of claims against the initial transferee), Judge Rakoff explained that "the subsequent transferee is nonetheless entitled to raise a Section 546(e)

defense against recovery of those funds," *id*. at *7—and then applied to alleged subsequent transferees the same bright line test applicable to initial transferee defendants. Thus, "if the Trustee sufficiently alleges that ***the transferee against whom he seeks to recover a fraudulent transfer*** knew of Madoff Securities' fraud, ***that transferee*** cannot claim the protection of Section 546(e)'s safe harbor." *Id*. (emphasis added). Because *Cohmad* created a limited exception to the safe harbor's protection, applicable ***only*** when the defendant ***against which the Trustee seeks recovery*** allegedly had knowledge, it does not affect subsequent transferee defendants that are ***not*** alleged to have had such knowledge—*i.e.*, Innocent Subsequent Transferee Defendants. They remain entitled to Section 546(e)'s protections, including on motions to dismiss.

*Cohmad* itself thus refutes the Trustee's argument that Judge Rakoff "specifically limited the safe harbor to avoidance claims." Section 546(e) not only limits a Trustee's avoidance powers, but also provides a defense—which may be raised by motion to dismiss—to defendants sued under Section 550(a) for ***recovery*** of allegedly fraudulent transfers. In *Cohmad* (in addition to the language quoted in the text *supra*), Judge Rakoff explained that he had twice previously held that Section 546(e) "required the dismissal" both of the Trustee's avoidance claims and of "***related recovery claims under Section 550(a)***." *Cohmad*, 2013 WL 1609154, at *3 (emphasis added). Similarly, in *Fairfield Investment Fund*, this Court, citing *Cohmad*, explained that a subsequent transferee is "entitled to raise a § 546(e) defense ***against recovery***" of funds sought by the Trustee. 2021 WL 3477479, at *3 (emphasis added). *See also U.S. Bank N.A. v. Verizon Communs. Inc.*, 892 F. Supp. 2d 805, 815 (N.D. Tex. 2012) ("Section 546(e) bars the plaintiff from recovering the $2.4 billion in cash as a fraudulent transfer."); *AP Servs., LLP v. Silva*, 483 B.R. 63, 71 (S.D.N.Y. 2012) (dismissing, under Section 546(e), a recovery claim); *In re Boston Generating LLC (Holliday v. K Rd. Power Mgt., LLC)*, 617 B.R. 442, 477 (Bankr. S.D.N.Y.

2020) (granting motion to dismiss; "[p]ursuant to section 546(e) of the Bankruptcy Code, certain transfers are excepted from avoidance and recovery"); Briefing Order (addressing whether the safe harbor bars "recovery by the Trustee of any subsequent Transfer pursuant to Section 550"). Indeed, *Kelley v. Safe Harbor Managed Acct 101, Ltd.*, 31 F.4th 1058 (8th Cir. 2022), cited at Opp. 7, 8, 10, involved application of the safe harbor to a case where, as here, the trustee alleged that funds an initial transferee subsequently transferred to a defendant were recoverable under Section 550(a). *Id.* at 1064.

In *Fairfield Investment Fund*, this Court emphasized that "if the Trustee sufficiently alleges that the transferee ***from whom he seeks to recover a fraudulent transfer*** knew of Madoff Securities' fraud, ***that defendant*** cannot claim the protections of Section 546(e)'s safe harbor." *Fairfield Inv. Fund*, 2021 WL 3477479, at *4 (emphasis added) (quoting *Cohmad*). The Court accordingly examined whether the Trustee had sufficiently alleged facts establishing actual knowledge separately as to each individual defendant. *See id.* at *5–7. Based on its defendant-by-defendant analysis, the Court concluded that "[t]he Trustee has failed to plead individualized factual allegations demonstrating that Corina Noel Piedrahita had independent actual knowledge of the BLMIS fraud," *id.* at *6, and therefore dismissed all claims against her, *id.* at *15, even though it found that the Trustee had adequately pleaded actual knowledge on the part of both the ***initial*** transferees and the ***other*** subsequent transferee defendants, *id.* at *4–6; *see also id.* at *15 (denying motion to dismiss except as to the individual claims against Ms. Piedrahita).

The Trustee points out that that the individual defendants in *Fairfield Investment Fund* were "administrators and partners of the Fairfield Greenwich Group," and suggests that their actual knowledge was relevant only to the extent it might be imputed to the initial transferee entities. But that misses the point: although the Court found that the Trustee had alleged actual

knowledge on the part of the initial transferees, *see id.* at *4, it did ***not***—as the Trustee asks it to

do here—automatically deprive all subsequent transferee defendants of the safe harbor's

protection.  Had the Court adopted the Trustee's reading of *Cohmad*, there would have been no

reason to consider whether the Trustee had pleaded facts establishing Ms Piedrahita's actual

knowledge, and no basis to dismiss the individual claims against her.  Rather, on the Trustee's

interpretation, once the Court held that the initial transferees' actual knowledge had been

sufficiently pleaded, it would have been unnecessary even to consider Ms. Piedrahita's

individual circumstances and ***all*** defendants' motions to dismiss would have been denied—

including the motion of Ms. Piedrahita, the lone Innocent Subsequent Transferee Defendant.[2]

That is not, however, what happened in *Fairfield Investment Fund*.

    The other cases cited by the Trustee fail to support the proposition that an Innocent

Subsequent Transferee forfeits its ability to obtain dismissal of recovery claims merely because

an unrelated initial transferee had actual knowledge.  In *Picard v. BNP Paribas S.A. (In re*

*BLMIS)*, 594 B.R. 167 (Bankr. S.D.N.Y. 2018), the Trustee did not even advance that argument,

and in its decision the court did not analyze the issue. Nor was the issue presented in *SunEdison*

*Litigation Trust v. Seller Note, LLC (In re SunEdison, LLC)*, 620 B.R. 505 (Bankr. S.D.N.Y.

2020), Opp. 9, where Judge Bernstein granted defendants' motion to dismiss constructive

fraudulent transfer claims based on Section 546(e) without discussing any alleged transferee's

---

[2] The Trustee alternatively suggests that the grant of the motion to dismiss as to Ms.
Piedrahita may have been based on a finding, for purposes of the defendants' "good faith for
value" defense under Section 550(b), that the Trustee had not adequately pleaded a lack of "good
faith." *See* Opp. 11. But this ignores the fact that the Court held that it could not determine on a
Rule 12(b) motion whether any defendant "gave value" in surrendering shares in the Fairfield
Funds, *Fairfield Inv. Fund*, 2021 WL 3477479 at *9, and therefore denied all defendants'
motions to dismiss insofar as they were based on the Section 550(b) "good faith for value"
defense.

knowledge.  *See id*. at 512–17.  And none of the decisions string-cited at Opp. 6 n.7 supports

stripping Innocent Subsequent Transferee Defendants of Section 546(e)'s protections by dint of

an initial transferee's actual knowledge.  On the contrary, in *Picard v. Merkin (In re Bernard L.*

*Madoff Inv. Sec. LLC)*, 515 B.R. 117 (Bankr. S.D.N.Y. 2014) ("*Merkin*"), Judge Bernstein held

that because the Trustee's complaint "fail[ed] to plausibly allege" that a subsequent transferee

defendant "had actual knowledge of Madoff's Ponzi scheme," Section 546(e) applied; thus, the

court dismissed the avoidance and recovery claims except under Section 548(a)(1)(A).  *Id*. at

141.

    The Trustee argues that Parson Finance's reading of *Cohmad* would "expand[] the safe

harbor," with "subsequent transferees being afforded more protection as to avoidance than the

initial transferee itself, which does not reflect Congress' intent." Opp. 10.  This is incorrect on

multiple levels. *First*, this motion raises no issue concerning the scope of the safe harbor itself.

Congress clearly defined its contours in Section 546(e), and the Trustee has already conceded

that the statutory requirements are all satisfied here. What is at issue, instead, is whether *Cohmad*

should be read to deny a defendant the ability to invoke the safe harbor on a motion to dismiss.

*Second*, the key distinction drawn in *Cohmad* was not between initial and subsequent transferees,

but between defendants alleged to have had knowledge of the underlying fraud (and that BLMIS

was not trading securities) and those against which no such allegations were made.  Only "those

defendants who claim the protections of Section 546(e) through a [BLMIS] account agreement

but who actually knew that [BLMIS] was a Ponzi scheme are not entitled to the protections of

the Section 546(e) safe harbor," *Cohmad*, 2013 WL 1609154, at *10—a rule the court applied

equally to initial and subsequent transferees. *See id*. at *5–8.  *Third*, the Trustee cites no Code

provision, legislative history, or anything else supporting the proposition that Congress intended to deprive Innocent Subsequent Transferee Defendants from relying on the securities safe harbor.

> ### 2. The Trustee's Attempt to Divest Innocent Subsequent Transferee Defendants of the Protections of the Statutory Safe Harbor Is Inconsistent with *Cohmad* and Second Circuit Case Law

Under the Trustee's interpretation, Fairfield Sentry's alleged actual knowledge would disentitle *every* Innocent Subsequent Transferee Defendant from invoking the safe harbor. That contravenes Judge Rakoff's stated intention. As he later explained, in *Cohmad* the court "found that in the majority of cases, section 546(e) requires the dismissal of the Trustee's avoidance claims, except those brought under section 548(a)(1)(A) and related recovery claims under section 550(a)." *Picard v. ABN AMRO Bank (Ireland) Ltd. (Secs. Inv. Protection Corp. v. Bernard L. Madoff Investment Securities LLC)*, 505 B.R. 135, 142 (S.D.N.Y. 2013) (footnote omitted).

The Trustee's arguments are also inconsistent with the Second Circuit's admonitions against subordinating Section 546(e) to the Code's avoidance provisions. While the Trustee naturally would prefer such an approach, Congress rejected it, and courts "are obliged to respect the balance [it] struck." *Bernard L. Madoff Inv. Secs. LLC (Picard v. Ida Fishman Recoverable Trust)*, 773 F.3d 411, 423 (2d Cir. 2014). "Section 546(e) is in full conflict with the goal of maximizing the assets available to creditors. Its purpose is to protect a national, heavily regulated market by limiting creditors' rights." *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 94 (2d Cir. 2019) ("*Tribune I*"). "Section 546(e) cannot be trumped by the Code's goal of maximizing the return to creditors without thwarting the Section's purposes," as "in enacting that statute, Congress made precisely the opposite judgment." *Id*.

This is not the first time the Trustee has attempted to gut the safe harbor defense. For example, in *Fishman*, the Trustee argued that Section 546(e) "should not apply" to the BLMIS

liquidation at all, because that supposedly would "be tantamount to giving legal effect of Madoff's fraud." 773 F.3d at 417. The Second Circuit "rejected these arguments," *id.*, and instead applied the statute as written. *See id.* at 418–23. The court emphasized that the Trustee's atextual interpretation "risks the very sort of significant market disruption that Congress was concerned with," and that "[t]he clawback defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting securities transaction, have every reason to avail themselves of all the protections" afforded by Section 546(e). *Id.* at 420. The Second Circuit declined to create a "Ponzi scheme" or general fraud exception to the safe harbor, beyond the limited and explicit exception under Section 548(a)(1)(A). *See id*. at 421–22; *see also Picard v. Greiff*, 476 B.R. 715, 722 (S.D.N.Y. 2012) ("Nothing in the express language of § 546(e) suggests that it is not designed to protect the legitimate expectations of customers, as well as the securities market in general, even when the stockbroker is engaged in fraud."); *Peterson v. Enhanced Investing Corp. (Cayman) Ltd. (In re Lancelot Investors Fund)*, 467 B.R. 643, 652-53 (Bankr. N.D. Ill. 2012) (holding that "settlement payments" are not ineligible for safe harbor protection "because they may be tainted by fraud" except as provided in Section 548(a)(1)(A)).

## C. Parson Finance Is Separately Entitled to the Statutory Safe Harbor's Protection Based on Securities Contracts with Fairfield Sentry

In *Cohmad*, Judge Rakoff recognized a separate, alternative way in which the Section 546(e) safe harbor protects certain subsequent transferees (specifically including financial institutions) that rely on agreements other than the BLMIS-Fairfield Sentry account agreements as "securities contracts." After discussing situations where the "securities contract" was a "Madoff Securities account agreement," the court explained that the statutory phrase "is in fact much broader and includes, *inter alia*, fund subscription agreements and redemption requests," among others. *Cohmad*, 2013 WL 1609154, at *8. Section 546(e) does not require that "the

16

securities contract that the transfer is made 'in connection with' must be a securities contract with the debtor," but only "that the transfer relate to that securities contract." *Id.* at *9. Accordingly, where a BLMIS customer (such as Fairfield Sentry) made a "withdrawal" from its BLMIS account that was allegedly "caused by [its] payment obligations to a subsequent transferee under a securities contract" (such as the Articles), the initial transfer "could qualify" under Section 546(e) "as 'related to' that later transaction under the securities contract." *Id.*; *see also* Mem. 17-20.

The Trustee is bound by his allegations that BLMIS's initial transfers were made to Fairfield Sentry (at its request) for the purpose of funding Parson Finance's redemption requests. Accordingly, the facts alleged here "fit within the plain terms of Section 546(e)." *Cohmad*, 2013 WL 1609154, at *9. *Cohmad* thus provides a separate, second basis for the statutory safe harbor to protect Parson Finance, premised on the Articles, rather than the BLMIS-Fairfield Sentry customer agreements, as the relevant "securities contract." And the Trustee has conceded, by not contesting Parson Finance's showing (*see* Mem. 17-20), that the initial BLMIS-Fairfield Sentry transfers were made "in connection with" the Articles as a "securities contract" for purposes of Section 546(e).

Because this second, alternative path to Section 546(e) protection does not implicate any securities contract Fairfield Sentry had with BLMIS, Fairfield Sentry's alleged knowledge of the Madoff/BLMIS Fraud (and that its customer agreements with BLMIS were not real securities contracts) is irrelevant to this analysis. In summarizing his holdings in *Cohmad*, Judge Rakoff concluded that actual knowledge of the BLMIS/Madoff Fraud disentitles a transferee defendant from relying on Section 546(e) *if* it "claim[s] the protections of Section 546(e) through a Madoff Securities account agreement," but ***not*** "to the extent that a defendant claims protection under

Section 546(e) under a ***separate securities contract as a*** financial participant or ***financial institution***." *Id*. at *10 (emphasis added).

Moreover, the Trustee does not even contend that the Articles—the relevant "securities contract" in the alternative *Cohmad* analysis—was anything but a real securities contract pursuant to which real securities were redeemed and sold. Accordingly, Fairfield Sentry's alleged actual knowledge of the Madoff/BLMIS Fraud is irrelevant, and poses no impediment to the application of Section 546(e) based on the Articles as the relevant "securities contract." *Cf. ABN AMRO*, 505 B.R. at 142 n.6 (explaining that "the issue of knowledge was irrelevant to the application of section 546(g), the analogous safe harbor for transfers made in connection with swap agreements, where "there is no dispute that the swap transactions actually occurred, [and] so the mindset of the participants is irrelevant").

The Trustee disparages this second *Cohmad* holding as mere "dicta." Opp. 9. Not so. Judge Rakoff explicitly ordered that "to the extent a defendant claims protection under Section 546(e) under a separate securities contract as a financial participant or financial institution, ***the Bankruptcy Court must adjudicate those claims in the first instance consistent with this Opinion***." *Cohmad*, 2013 WL 1609154, at *10 (emphasis added); *see also id.* at *9 n.6 (instructing that the issue must be determined "on the basis of the specific allegations in the Trustee's complaint in a given adversary proceeding").

The Trustee's insistence that "Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees" (Opp. at 8) misses the mark. The Trustee did not litigate this issue in his avoidance action against Fairfield Sentry, but instead settled with that entity's liquidators. In that circumstance, "the subsequent transferee is nonetheless entitled to raise a Section 546(e) defense against recovery of those funds." *Cohmad*,

2103 WL 1609154, at *7; *accord Fairfield Inv. Fund*, 2021 WL 3477479, at *3.  And in this action, the Trustee has conceded that the safe harbor's prerequisites have been satisfied.

*                          *                          *

The Trustee argues that accepting Parson Finance's interpretation of *Cohmad* "would effectively eliminate the point of the actual knowledge exception—which is to restrict any transferee with actual knowledge from hiding behind the safe harbor." He could not be more mistaken.  The Trustee has ***not*** alleged that Parson Finance had actual knowledge of the Madoff/BLMIS Fraud.  And far from "hiding" behind anything, these Innocent Subsequent Transferee Defendants are merely claiming protections that Congress gave them, which neither *Cohmad* nor any other judicial decision has taken away.  At a minimum, the Trustee's claims based on initial transfers before the two-year lookback period should be dismissed.

**<u>CONCLUSION</u>**

For the foregoing reasons, Parson Finance respectfully requests that the Court dismiss the Complaint in its entirety.

Dated: May 31, 2022

Respectfully submitted,

KELLNER HERLIHY GETTY & FRIEDMAN LLP

By: _____

     Douglas A. Kellner
470 Park Avenue South—7th Floor
New York, NY 10016-6951
Telephone: 212-889-2121
Email: dak@khgflaw.com

*Attorneys for Defendant Parson Finance Panama S.A.*