**BECKER, GLYNN, MUFFLY,**
**CHASSIN & HOSINSKI LLP**
*Attorneys for Defendant*
299 Park Avenue
New York, New York 10171
Telephone: 212-888-3033
Facsimile:  212-888-0255
Zeb Landsman
zlandsman@beckerglynn.com

Hearing Date: May 18, 2022, 10:00 a.m.
Opposition Date: April 12, 2022
Reply Date: May 12, 2022

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (CGM) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff, <br><br> Plaintiff, <br><br> v. <br><br> THE SUMITOMO TRUST AND BANKING CO., LTD, <br><br> Defendant. | Adv. Pro. No. 11-02573 (CGM) <br><br> **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT THE SUMITOMO TRUST AND BANKKING CO., LTD'S MOTION TO DISMISS** |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

SUMMARY OF ARGUMENT ............................................................................ 1

STATEMENT OF RELEVANT FACTS ......................................................... 3

    1.    The Amended Complaint Does Not Identify Which Initial Transfer
        Gave Rise to Sumitomo's Supposed Subsequent Transfer ..................... 4

    2.    The Allegations, if True, Would Not Establish That Blmis Was the
        Source of Sumitomo's Payment Because Sentry Regularly Paid
        Redeeming Investors From Non-BLMIS Sources ..................................... 9

STANDARD OF REVIEW .............................................................................. 11

ARGUMENT ...................................................................................................... 11

    I.    THE AMENDED COMPLAINT VIOLATES RULE 8(A) ...................... 11

    II.    THE AMENDED COMPLAINT VIOLATES RULE 9(B) ...................... 14

    III.    SECTION 546(E) BARS THE TRUSTEE'S CLAIM ............................. 16

        A.    The Alleged Initial Transfer Was Made By Or To A Covered
            Entity .......................................................................................... 17

            1.    BLMIS Was a Stockbroker ............................................ 17

            2.    Sentry Was a Financial Institution ................................. 18

        B.    The Alleged Initial Transfer Was a Settlement Payment and
            Made in Connection with a Securities Contract .......................... 21

    IV.    THE TRUSTEE FAILS TO ALLEGE FACTS SHOWING THAT THE
        TRANSFER TO SUMITOMO COMPRISED BLMIS CUSTOMER
        PROPERTY ...................................................................................... 26

    V.    IN THE ALTERNATIVE, DISMISSAL IS WARRANTED BECAUSE
        THE PLEADINGS REVEAL A FATAL FLAW IN THE TRUSTEE'S
        LOGIC .............................................................................................. 28

CONCLUSION ................................................................................................... 31

# TABLE OF AUTHORITIES

## Cases

*Angell v. Ber Care, Inc. (In re Caremerica, Inc.),*
409 B.R. 737 (Bankr. E.D.N.C. 2009) .................................................................. 27

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ....................................................................... passim

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ....................................................................... passim

*Bermudez v. City of New York,*
783 F. Supp. 2d 560 (S.D.N.Y. 2011) .................................................................. 31

*Birdsell v. U.S. West Newvector Grp., Inc. (In re Cellular Exp. of Ariz., Inc.),*
275 B.R. 357 (Bankr. D. Ariz. 2002) .................................................................. 12

*Briscoe v. City of New Haven,*
654 F.3d 200 (2d Cir. 2011) .................................................................. 20

*Chambers v. Time Warner, Inc.,*
282 F.3d 147 (2d Cir. 2002) .................................................................. 2, 12

*Davis v. Bifani,*
07-CV-00122-MEH-BNB, 2007 WL 121615 (D. Color. Apr. 24, 2007) ................. 14

*Eisberner v. Discover Prods., Inc.,*
No. 12-C-0699, 2013 WL 3773389 (E.D. Wis. July 17, 2013) .............................. 31

*Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.),*
323 B.R. 857 (Bankr. S.D.N.Y. 2005) .................................................................. 18

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.,*
651 F.3d 329 (2d Cir. 2011) .................................................................. 24

*Garfinkle v. Conf. on Jewish Material Claims Against Germany, Inc.,*
No. 1:19-cv-7007-JPO, 2020 WL 6323462 (S.D.N.Y. Oct. 28, 2020).............. 29, 31

*Gowan v. Amaranth LLC (In re Dreier LLP)*,
    452 B.R. 451 (Bankr. S.D.N.Y. 2011)............................................................. 13, 27

*Hall v. Phenix Investigations, Inc.*,
    No. 3:14-cv-0665, 2015 WL 2070028 (N.D. Tex. May 5, 2015) ............................ 31

*In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Citibank, N.A.)*,
    12 F.4th 171 (2d Cir. 2021) ................................................................................ 24

*In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Revocable Trust)*,
    773 F.3d 411 (2d Cir. 2014)........................................................................... passim

*In re Fairfield Sentry Ltd. (Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam)*,
    10-13164-SMB, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ....... 18, 19, 20

*In re Trib. Co. Fraudulent Conv. Litig.*,
    10 F.4th 147 (2d Cir. 2021) ......................................................................... 20, 22

*In re Trib. Co. Fraudulent Conv. Litig.*,
    946 F.3d 66, 78 (2d Cir. 2019) ........................................................... 18, 19, 22, 25

*Kramer v. Time Warner Inc.*,
    937 F.2d 767 (2d Cir. 1991) .................................................................................. 3

*Law v. Siegel*,
    571 U.S. 415 (2014) ............................................................................................. 25

*Lowden v. William M. Mercer, Inc.*,
    903 F. Supp. 212 (D. Mass. 1995) ....................................................................... 14

*Merit Mgmt. Grp., LP v. FTI Consulting Inc.*,
    138 S. Ct. 883 (2018) .......................................................................................... 25

*Muth v. Dechert, Price & Rhoads*,
    391 F.Supp. 935 (E.D. Pa. 1975) ......................................................................... 14

*N.Y.C. Dist. Council of Carpenters Pension Fund v. Forde*,
    11-CIV-5474-LAP-GWG, 2018 WL 2455437 (S.D.N.Y. June 1, 2018)................. 20

*Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*,
    13-CIV-6705-DLC, 2014 WL 1673351 (S.D.N.Y. Apr. 28, 2014) ......................... 14

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ........................................................................ 21

*Off. Comm. of Unsecured Creditors v. Am. Tower Corp. (In re Verestar, Inc.)*,
    343 B.R. 444 (Bankr. S.D.N.Y. 2006) ............................................. 15

*Off. Comm. of Unsecured Creditors v. JP Morgan Chase Bank, N.A.*
    *(In re M. Fabrikant & Sons, Inc.)*, 394 B.R. 721 (Bankr. S.D.N.Y. 2008) ............ 15

*Papasan v. Allain*,
    478 U.S. 265 (1986) ........................................................................ 11

*Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*,
    458 B.R. 87 (Bankr. S.D.N.Y. 2011) ................................................ 12

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Secs. LLC)*,
    542 B.R. 100 (Bankr. S.D.N.Y. 2015) ................................... 1, 26, 27, 29

*Prestige Pet Prod., Inc. v. Pingyang Huaxing Leather & Plastic Co.*,
    767 F. Supp. 2d 806 (E.D. Mich. 2011) ........................................ 29, 31

*Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*,
    151 F.Supp.2d 371 (S.D.N.Y. 2001) ............................................... 11

*Roco Corp. v. Cohen (In re Roco Corp.)*,
    701 F.2d 978 (1st Cir. 1983) ......................................................... 25

*Rosen v. Unilever U.S., Inc.*,
    No. 09-02563-JW, 2010 WL 4807100 (N.D. Cal. May 3, 2010) ............................ 31

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000) ......................................................... 4, 30

*Salahuddin v. Cuomo*,
    861 F.2d 40 (2d Cir. 1988) ...................................................... 2, 12, 14

*Omnibus Motion to Dismiss Decision, Sec. Inv'r Prot. Corp. v. Bernard
    L. Madoff Inv. Secs. LLC (In re: Bernard L. Madoff)*,
    531 B.R. 439, 473  (S.D.N.Y. 2015) ............................................... 27

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*
   (*Picard v. Fairfield Inv. Fund Ltd.*), No. 08-01789-CGM, 2021 WL 3477479
   (Bankr. S.D.N.Y. Aug. 6, 2021) ............................................................ 3, 16

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
   476 B.R. 715 (S.D.N.Y. 2012) ................................................................ 17

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*
   (*Picard v. BNP Paribas S.A.)*, 594 B.R. 167 (Bankr. S.D.N.Y. 2018) ....... 13, 26, 27

*Sec. Inv's Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC,*
   12-MC-115-JSR, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ...................... 22, 24

*Sharp Int'l Corp. v. State St. Bank & Tr. Co.*
   (*In re Sharp Int'l Corp.)*, 403 F.3d 43 (2d Cir. 2005) ............................... 15

*Silverman v. Actrade Cap., Inc. (In re Actrade Fin. Techs. Ltd.),*
   337 B.R. 791 (Bankr. S.D.N.Y. 2005) .................................................... 25

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.),*
   379 B.R. 5 (Bankr. E.D.N.Y. 2007) ...................................................... 12, 27

*State Bank & Tr. Co. v. Spaeth (In re Motorwerks, Inc.),*
   371 B.R. 281 (Bankr. S.D. Ohio 2007) .................................................. 12, 14

*Strandberg v. State Farm Mut. Auto Ins. Co.,*
   15-CV-02468-RCJ-PAL, 2016 WL 614401 (D. Nev. 2016) .................................. 29

*Taylor v. Sturgell,*
   553 U.S. 880 (2008) ........................................................................ 20

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
   551 U.S. 308 (2007) ......................................................................... 3

*Texas Water Supply Corp. v. R. F. C.,*
   204 F.2d 190 (5th Cir. 1953) ............................................................... 14

*Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.),*
   429 B.R. 73 (Bankr. S.D.N.Y. 2010) ...................................................... 15

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.,*
  216 F. Supp. 2d 198 (S.D.N.Y. 2002) ...................................................................... 15

**Statutes**

11 U.S.C. § 101 ........................................................................................................ 16

11 U.S.C. § 101(22) ................................................................................................. 18

11 U.S.C. § 101(22)(A). ..................................................................................... 18, 19

11 U.S.C. § 101(53A) .............................................................................................. 17

11 U.S.C. § 741 ........................................................................................................ 16

11 U.S.C. § 741(7) .............................................................................................. 16, 25

11 U.S.C. § 741(7)(A)(i) ......................................................................................... 22

11 U.S.C. § 741(7)(A)(vii) ...................................................................................... 22

11 U.S.C. § 741(8) ................................................................................................... 25

11 U.S.C. § 761 ........................................................................................................ 16

11 U.S.C. § 761(4) ................................................................................................... 16

11 U.S.C. § 544 ........................................................................................................ 16

11 U.S.C. § 545 ........................................................................................................ 16

11 U.S.C. § 547 ........................................................................................................ 16

11 U.S.C. § 546(e) ............................................................................................. passim

11 U.S.C. § 548(a)(1)(A) ................................................................................... passim

11 U.S.C. § 548(a)(1)(B) ......................................................................................... 16

11 U.S.C. § 548(b) ................................................................................................... 16

11 U.S.C. § 550(b) ................................................................................................... 24

15 U.S.C. § 78fff-2(c)(3) .......................................................................................... 26

Federal Rules of  Bankruptcy Procedure 7009 ............................................................ 14

Federal Rule of Civil Procedure 8(a) .................................................................. passim

Federal Rule of Civil Procedure 9(b) ..................................................... 2, 13, 14, 15

Federal Rule of Civil Procedure 10(c) ........................................................... 14, 30

Federal Rule of Civil Procedure 12(b)(6) ....................................................... 3, 11, 28

**Other Authorities**

http://registers.centralbank.ie/FirmDataPage.aspx?firmReference
     Number=C27278 .................................................................................... 18

https://www.dnb.nl/en/public-register/information-
     detail/?registerCode=WFTDG&relationNumber=B0275 ..................................... 18

## INTRODUCTION

The defendant, The Sumitomo Trust & Banking Co. Ltd. ("Sumitomo"),
moves to dismiss the amended complaint of the plaintiff, Irving Picard, who is the
trustee ("Trustee") for the liquidation of Bernard L. Madoff Securities LLC
("BLMIS") and Bernard L. Madoff.[1] This memorandum supports the motion.

The Trustee invokes 11 U.S.C. §§ 501 to recover $54,253,642 that Sumitomo
received from Fairfield Sentry Limited ("Sentry"). The Trustee can prevail only if he
shows (1) that there was an initial transfer of $54,253,642 from BLMIS to Sentry
that is avoidable and (2) that Sentry subsequently transferred those funds to
Sumitomo. *See Picard v. Shapiro* (*In re Bernard L. Madoff Inv. Secs. LLC*), 542 B.R.
100, 119 (Bankr. S.D.N.Y. 2015).

## SUMMARY OF ARGUMENT

A central problem with the amended complaint is its failure to provide any
details about the supposed initial transfer. The Trustee simply declares that there
was one, and then attaches a 77-page spreadsheet reflecting more than 5,000
transactions occurring over 17 years. It appears, though it goes unsaid by the
Trustee, that nearly 30 of the 5,000 transactions are potentially avoidable transfers
from BLMIS to Sentry. Such sloppy pleading makes it nearly impossible for
Sumitomo to answer the amended complaint or prepare for trial.

---

[1] The amended complaint ("*Am. Compl.*"), without exhibits, is attached as Exhibit 1 to the
declaration of Tara Q Higgins ("*Higgins Dec.*"), dated February 11, 2022.  Exhibits C and D to the
amended complaint are attached as Exhibits 2 and 3, respectively, to the *Higgins Dec.*

For instance, which transaction should Sumitomo refer to in its answer? All 30? All 5,000? Should it depose witnesses and demand documents about each of the 5,000 listed transactions that ***might*** be the alleged initial transfer? Did it occur within two years, which might give rise to a claim of actual fraud under 11 U.S.C. 548(a)(1)(A), but which would also require the Trustee to comply with Fed. R. Civ. P. 9(b)? Or did the alleged initial transfer take place more than two years before the filing, permitting Sumitomo to raise a defense pursuant to 11 U.S.C. 546(e)?

None of these questions is answered in the amended complaint. Therefore, as we show in **Point I**, the amended complaint violates Fed. R. Civ. P. 8(a) because it does not give Sumitomo "fair notice of the claim asserted so as to enable [it] to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *accord Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002).

More problems are created if we were to guess the details of the supposedly avoidable initial transfer. In **Point II**, we show that the amended complaint would violate Fed. R. Civ. P. 9(b) if the Trustee alleges voidability pursuant to 11 U.S.C. 548(a)(1)(A) ("actual intent to hinder, delay, or defraud") because the pleading fails to allege fraud with particularity. Alternatively (**Point III**), if the Trustee intends to prove avoidability by a different provision, his claim would fail pursuant to Section 546(e).

No matter which provision he uses, moreover, we contend (**Point IV**) that the amended complaint does not state a claim because it fails to connect any particular initial transfer to funds received by Sumitomo.

2

Finally, **Point V** exposes the illogic of the Trustee's pleadings, which seeks the impossible: to recover more in subsequent transfers than was initially transferred. Exhibit C to the amended complaint establishes that Sentry paid more to the universe of supposed subsequent transferees named in the Trustee's multiple adversary proceedings than Sentry received from BLMIS. Therefore, the Trustee's pleadings, even if true, prove only that it is possible that Sumitomo's particular transfer originated with BLMIS. But mere possibility is insufficient to state a claim for relief under *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## STATEMENT OF RELEVANT FACTS[2]

Sumitomo purchased a membership interest in Sentry. Later, Sentry redeemed (*i.e.*, purchased) Sumitomo's membership interest for approximately $54,253,642. The Trustee alleges that Sentry used funds originating from BLMIS to redeem Sumitomo's interest. To plead its case, the Trustee relies on (i) the allegations of the amended complaint, (ii) the spreadsheets in Exhibit C that list thousands of transfers among BLMIS, Sentry and other entities that span more

---

[2] These facts are taken from allegations in the amended complaint – which Sumitomo neither admits nor concedes – and documents that the amended complaint incorporates by reference, as well as the Trustee's pleadings in other Madoff proceedings and other items of which the Court may take judicial notice. *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*Picard v. Fairfield Inv. Fund Ltd.*), No. 08-01789-CGM, 2021 WL 3477479, at *2 (Bankr. S.D.N.Y. Aug. 6, 2021)) (on motion under Rule 12(b)(6), "courts must consider . . . matters of which a court may take judicial notice", quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)). Here, the Court may take judicial notice of the Trustee's pleadings in other adversary proceedings, and Sumitomo respectfully requests that it do so. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("courts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in other litigation, but rather to establish the fact of such litigation and related filings").

than a decade, and (iii) reference to the 217-page amended complaint that it filed

against Sentry in a related proceeding that later settled.[3]

The Trustee makes the same allegation, albeit with different amounts, for

hundreds of other former Sentry members who are defendants in the Trustee's

other proceedings in this Court. We attach to the *Higgins Dec.* some excerpts and

exhibits to these adversary complaints.[4]

### 1. The Amended Complaint Does Not Identify Which Initial Transfer Gave Rise to Sumitomo's Supposed Subsequent Transfer

The Trustee alleges that BLMIS made thousands of initial transfers over six

years to Sentry totaling "approximately $3 billion" (*Am. Compl.* ¶ 35) and that

Sentry, on one day during those six years (October 16, 2007), transferred

$54,253,642 to Sumitomo (*id.* ¶ 40, Ex. D). Although the Trustee has all the records

of both BLMIS and Sentry, it neglects to identify which of the thousands of

transfers from BLMIS was supposedly subsequently transferred to Sumitomo—not

a date, not an amount, not anything from which Sumitomo or this Court could infer

the supposed source of the transfer to Sumitomo.

Here are the allegations, as written in the amended complaint by the

Trustee:

---

[3] Paragraph 34 of the amended complaint identifies the amended complaint filed in *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (the "Fairfield Amended Complaint") and "incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein." The Fairfield Amended Complaint contains 798 paragraphs and was superseded by the Trustee's second amended complaint filed in that matter. The Fairfield Amended Complaint is attached as Exhibit 4 to the *Higgins Dec.*

[4] The Court can take judicial notice of pleadings that the Trustee has filed in other cases. *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of complaint from another case filed by plaintiff).

4

35.    During the six years preceding the Filing Date, BLMIS made transfers to Fairfield Sentry of approximately $3 billion (the "Fairfield Sentry Six Year Initial Transfers")

36.    The Fairfield Sentry Six Year Initial Transfers include approximately $1.6 billion which BLMIS transferred to Fairfield Sentry during the two years preceding the Filing Date (the "Fairfield Sentry Two Year Initial Transfers").

37.    The Fairfield Sentry Two Year Initial Transfers include approximately $1.1 billion which BLMIS transferred to Fairfield Sentry during the 90 days preceding the Filing Date (the "Fairfield Sentry Preference Period Initial Transfers").

. . .

40.    A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Sumitomo …. Based on the Trustee's investigation to date, approximately $54,253,642 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Sumitomo (the "Fairfield Sentry Subsequent Transfers").

The alleged transfer to Sumitomo is identified in Exhibit D.[5]



The details about the "Fairfield Sentry Initial Transfers," which we refer to as "Sentry Initial Transfers," are supposedly found in Exhibit C to the amended complaint. *Am. Compl.* ¶ 38. Exhibit C is a confusing 77-page list of thousands of individual transfers. Here is sample page:

---

[5] We have embedded a photocopy of Exhibit D.

11-02573-brl   Doc 8-3   Filed 12/20/11   Entered 12/20/11 16:12:16   Exhibit C   Pg
72 of 77                                                                Exhibit C

BLMIS ACCOUNT NO. 1FN070 - FAIRFIELD SENTRY LIMITED C/O CITCO GREENWICH GROUP 55 EAST 52ND STREET 33RD FL

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | Preference Period Initial Transfers | Two Year Initial Transfers | Six Year Initial Transfers |
| 1/31/1995 | TRANS FROM 1FN04530 (1FN045) | 1,249,275 | - | - | 1,249,275 | - | 1,249,275 | - | - | - |
| 2/28/1995 | TRANS FROM 1FN04530 (1FN045) | 1,376,200 | - | - | 1,376,200 | - | 2,625,475 | - | - | - |
| 3/31/1995 | TRANS FROM 1FN04530 (1FN045) | 1,692,380 | - | - | 1,692,380 | - | 4,317,855 | - | - | - |
| 4/28/1995 | TRANS FROM 1FN04530 (1FN045) | 4,362,250 | - | - | 4,362,250 | - | 8,680,105 | - | - | - |
| 5/31/1995 | TRAN FROM 1FN04530 (1FN045) | 2,204,436 | - | - | 2,204,436 | - | 10,884,541 | - | - | - |
| 6/30/1995 | TRANS FROM 1FN04530 (1FN045) | 3,460,484 | - | - | 3,460,484 | - | 14,345,025 | - | - | - |
| 7/31/1995 | TRANS FROM 1FN04530 (1FN045) | 1,066,657 | - | - | 1,066,657 | - | 15,411,682 | - | - | - |
| 8/28/1995 | TRANS TO 1FN04530 (1FN045) | (5,762) | - | - | - | (5,762) | 15,405,919 | - | - | - |
| 9/29/1995 | TRANS FROM 1FN04530 (1FN045) | 2,301,677 | - | - | 2,301,677 | - | 17,707,596 | - | - | - |
| 10/27/1995 | TRANS FROM 1FN04530 (1FN045) | 261,954 | - | - | 261,954 | - | 17,969,550 | - | - | - |
| 11/24/1995 | TRANS FROM 1FN04530 (1FN045) | 471,634 | - | - | 471,634 | - | 18,441,184 | - | - | - |
| 12/29/1995 | TRANS FROM 1FN04530 (1FN045) | 5,577,776 | - | - | 5,577,776 | - | 24,018,960 | - | - | - |
| 1/31/1996 | TRANS FROM 1FN04530 (1FN045) | 71,650 | - | - | 71,650 | - | 24,090,610 | - | - | - |
| 2/29/1996 | TRANS FROM 1FN04530 (1FN045) | 7,385,905 | - | - | 7,385,905 | - | 31,476,515 | - | - | - |
| 3/29/1996 | TRANS TO 1FN04530 (1FN045) | (1,828,882) | - | - | - | (1,828,882) | 29,647,633 | - | - | - |
| 4/30/1996 | TRANS TO 1FN04530 (1FN045) | (868,793) | - | - | - | (868,793) | 28,978,840 | - | - | - |
| 5/31/1996 | TRANS FROM 1FN04530 (1FN045) | (1,758,480) | - | - | - | (1,758,480) | 27,220,360 | - | - | - |
| 6/28/1996 | TRANS TO 1FN04530 (1FN045) | (70,676) | - | - | - | (70,676) | 27,149,684 | - | - | - |
| 7/31/1996 | TRANS TO 1FN04530 (1FN045) | (7,437,859) | - | - | - | (7,437,859) | 19,711,826 | - | - | - |
| 8/30/1996 | TRANS FROM 1FN04530 (1FN045) | 4,182,376 | - | - | 4,182,376 | - | 23,894,202 | - | - | - |
| 9/30/1996 | TRANS FROM 1FN04530 (1FN045) | 3,647,768 | - | - | 3,647,768 | - | 27,541,970 | - | - | - |
| 10/31/1996 | TRANS FROM 1FN04530 (1FN045) | 1,122,715 | - | - | 1,122,715 | - | 28,664,705 | - | - | - |
| 11/29/1996 | TRANS FROM 1FN04530 (1FN045) | 3,870,921 | - | - | 3,870,921 | - | 32,535,625 | - | - | - |
| 12/31/1996 | TRANS FROM 1FN04530 (1FN045) | 680,538 | - | - | 680,538 | - | 33,216,163 | - | - | - |
| 1/31/1997 | TRANS FROM 1FN04530 (1FN045) | 4,183,823 | - | - | 4,183,823 | - | 37,399,986 | - | - | - |
| 2/28/1997 | TRANS FROM 1FN04530 (1FN045) | 3,551,975 | - | - | 3,551,975 | - | 40,951,961 | - | - | - |
| 3/31/1997 | TRANS TO 1FN04530 (1FN045) | (2,325,993) | - | - | - | (2,325,993) | 38,625,968 | - | - | - |
| 4/30/1997 | TRANS TO 1FN04530 (1FN045) | (9,453,364) | - | - | - | (9,453,364) | 29,172,604 | - | - | - |
| 5/30/1997 | TRANS FROM 1FN04530 (1FN045) | 3,326,923 | - | - | 3,326,923 | - | 32,499,527 | - | - | - |
| 6/30/1997 | TRANS FROM 1FN04530 (1FN045) | 4,080,019 | - | - | 4,080,019 | - | 36,579,546 | - | - | - |
| 7/31/1997 | TRANS FROM 1FN04530 (1FN045) | 6,006,758 | - | - | 6,006,758 | - | 42,586,304 | - | - | - |
| 8/29/1997 | TRANS TO 1FN04530 (1FN045) | (92,008) | - | - | - | (92,008) | 42,494,296 | - | - | - |
| 9/30/1997 | TRANS FROM 1FN04530 (1FN045) | 428,150 | - | - | 428,150 | - | 42,922,446 | - | - | - |
| 10/31/1997 | TRANS TO 1FN04530 (1FN045) | (1,887,720) | - | - | - | (1,887,720) | 41,034,726 | - | - | - |
| 11/28/1997 | TRANS FROM 1FN04530 (1FN045) | 6,228,887 | - | - | 6,228,887 | - | 47,263,613 | - | - | - |
| 12/31/1997 | TRANS TO 1FN04530 (1FN045) | (4,341,967) | - | - | - | (4,341,967) | 42,921,646 | - | - | - |
| 1/30/1998 | TRANS TO 1FN04530 (1FN045) | (1,791,004) | - | - | - | (1,791,004) | 41,130,643 | - | - | - |
| 2/27/1998 | TRANS FROM 1FN04530 (1FN045) | 34,281,577 | - | - | 34,281,577 | - | 69,412,220 | - | - | - |
| 3/31/1998 | TRANS FROM 1FN04530 (1FN045) | 4,492,195 | - | - | 4,492,195 | - | 69,904,414 | - | - | - |
| 4/30/1998 | TRANS FROM 1FN04530 (1FN045) | 16,869,760 | - | - | 16,869,760 | - | 86,774,174 | - | - | - |
| 5/21/1998 | TRANS TO 1FN04530 (1FN045) | (2,204,588) | - | - | - | (2,204,588) | 84,569,586 | - | - | - |
| 5/29/1998 | TRANS FROM 1FN04530 (1FN045) | 32,916 | - | - | 32,916 | - | 84,602,502 | - | - | - |
| 6/29/1998 | TRANS TO 1FN04530 (1FN045) | (8,041,000) | - | - | - | (8,041,000) | 76,561,502 | - | - | - |
| 7/29/1998 | TRANS FROM 1FN04530 (1FN045) | 51,013,560 | - | - | 51,013,560 | - | 127,575,062 | - | - | - |
| 8/31/1998 | TRANS FROM 1FN04530 (1FN045) | 1,583,810 | - | - | 1,583,810 | - | 129,158,872 | - | - | - |
| 9/30/1998 | TRANS TO 1FN04530 (1FN045) | (68,294,974) | - | - | - | (68,294,974) | 60,863,898 | - | - | - |
| 11/30/1998 | TRANS FROM 1FN04530 (1FN045) | 45,133,096 | - | - | 45,133,096 | - | 105,996,994 | - | - | - |
| 12/31/1998 | TRANS TO 1FN04530 (1FN045) | (6,598,156) | - | - | - | (6,598,156) | 99,398,838 | - | - | - |
| 1/29/1999 | TRANS FROM 1FN04530 (1FN045) | 161,399 | - | - | 161,399 | - | 99,560,037 | - | - | - |
| 2/26/1999 | TRANS TO 1FN04530 (1FN045) | (10,852,082) | - | - | - | (10,852,082) | 88,707,955 | - | - | - |
| 3/8/1999 | TRANS TO 1FN04530 (1FN045) | (377,252) | - | - | - | (377,252) | 88,330,703 | - | - | - |
| 3/30/1999 | TRANS FROM 1FN04530 (1FN045) | 2,236,948 | - | - | 2,236,948 | - | 90,567,651 | - | - | - |
| 3/31/1999 | TRANS TO 1FN04530 (1FN045) | (2,198,048) | - | - | - | (2,198,048) | 88,369,603 | - | - | - |
| 4/26/1999 | TRANS FROM 1FN04530 (1FN045) | 27,692,044 | - | - | 27,692,044 | - | 116,061,646 | - | - | - |
| 4/22/1999 | TRANS FROM 1FN04530 (1FN045) | 475,508 | - | - | 475,508 | - | 116,537,154 | - | - | - |
| 5/26/1999 | TRANS FROM 1FN04530 (1FN045) | 3,067,262 | - | - | 3,067,262 | - | 119,604,416 | - | - | - |
| 5/7/1999 | TRANS TO 1FN04530 (1FN045) | (5,553,562) | - | - | - | (5,553,562) | 114,050,854 | - | - | - |
| 5/13/1999 | TRANS FROM 1FN04530 (1FN045) | 887,603 | - | - | 887,603 | - | 114,938,457 | - | - | - |
| 5/26/1999 | TRANS TO 1FN04530 (1FN045) | (4,387,293) | - | - | - | (4,387,293) | 110,551,165 | - | - | - |
| 6/14/1999 | CHECK WIRE | 10,000,000 | 10,000,000 | - | - | - | 120,551,165 | - | - | - |
| 6/15/1999 | TRANS TO 1FN04530 (1FN045) | (10,000,000) | - | - | - | (10,000,000) | 110,551,165 | - | - | - |

Page 1 of 6 - 1FN070

*Am. Compl.*, Ex. C, p. 72.

Exhibit C does not seem limited to initial transfers; rather, it apparently lists all activity in the accounts Sentry maintained with BLMIS without specifying which transactions constituted the Sentry Initial Transfers. Interpreting the exhibits in a way that is most helpful to the Trustee, but which is hardly clear from the pleadings, we assume that the Sentry Initial Transfers[6] are those labeled as "CHECK WIRE" (*i.e.*, not inter-account transfers, transfers to the IRS, or transfers

---

[6] Although Exhibit C includes all transactions since the opening of the accounts, the Sentry Initial Transfers include only those made within six years before the Filing Date, December 11, 2008. And while there are reports of four different accounts included in Exhibit C, the Sentry Initial Transfers only appear in two of them (1FN012 and 1FN045). The reports of the other two accounts (1FN069 and 1FN070) show only inter-account transfers.

to a money market fund). If our assumption is correct, (i) the Sentry Initial

Transfers (taken from Exhibit C), (ii) the Sentry deposits into its BLMIS accounts

(also taken from Exhibit C), and (iii) the alleged subsequent transfer of customer

property to Sumitomo (taken from Exhibit D) can be summarized like this:

| Date | BLMIS to Sentry (USD) | Sentry to BLMIS (USD) | Sentry to Sumitomo (USD) |
|---|---|---|---|
| 5/9/2003 | 40,000,000 | | |
| 7/11/2003 | 55,000,000 | | |
| 7/22/2003 | 25,000,000 | | |
| 10/23/2003 | | (20,000,000) | |
| 11/14/2003 | | (50,000,000) | |
| 1/21/2004 | | (50,000,000) | |
| 3/10/2004 | | (50,000,000) | |
| 8/31/2004 | | (100,000,000) | |
| 12/28/2004 | | (100,000,000) | |
| 4/1/2005 | 175,000,000 | | |
| 5/11/2005 | | (50,000,000) | |
| 7/6/2005 | 85,000,000 | | |
| 9/2/2005 | 30,000,000 | | |
| 10/3/2005 | 90,000,000 | | |
| 10/3/2005 | 90,000,000 | | |
| 10/3/2005 | 70,000,000 | | |
| 11/16/2005 | 185,000,000 | | |
| 12/15/2005 | 85,000,000 | | |
| 1/10/2006 | 60,000,000 | | |

| | | | |
|---|---|---|---|
| 1/10/2006 | 55,000,000 | | |
| 3/16/2006 | 50,000,000 | | |
| 3/27/2006 | 50,000,000 | | |
| 3/27/2006 | 50,000,000 | | |
| 4/13/2006 | 120,000,000 | | |
| 8/4/2006 | | (160,000,000) | |
| 9/6/2006 | | (150,000,000) | |
| 10/5/2006 | | (100,000,000) | |
| 1/4/2007 | | (500,000,000) | |
| 2/12/2007 | | (175,000,000) | |
| 5/3/2007 | | (100,000,000) | |
| 6/7/2007 | | (100,000,000) | |
| 8/6/2007 | | (100,000,000) | |
| 9/6/2007 | 65,000,000 | | |
| 10/3/2007 | 95,000,000 | | |
| 10/16/2007 | | | (54,253,642) |
| 11/6/2007 | | (110,000,000) | |
| 1/11/2008 | 70,000,000 | | |
| 3/13/2008 | | (60,000,000) | |
| 5/5/2008 | 80,000,000 | | |
| 7/10/2008 | 20,000,000 | | |
| 8/1/2008 | | (80,000,000) | |
| 9/4/2008 | 120,000,000 | | |
| 10/3/2008 | 150,000,000 | | |
| 10/23/2008 | 130,000,000 | | |

| 11/4/2008 | 450,000,000 | | |
| 11/4/2008 | 400,000,000 | | |
| **TOTALS** | **2,895,000,000** | **(2,055,000,000)** | **(54,253,642)** |

*Am. Compl.*, Exs. C, D.

But even using these assumptions, nothing in Exhibit C (or elsewhere) informs Sumitomo, or the Court, which of the multiple Sentry Initial Transfers is alleged to be the basis of the transfer to Sumitomo.

### 2. The Allegations, if True, Would Not Establish That BLMIS Was the Source of Sumitomo's Payment Because Sentry Regularly Paid Redeeming Investors From Non-BLMIS Sources

Although the Trustee does not identify a particular initial transfer as the source of Sumitomo's payment, his filings in this and other adversary proceedings do prove that many of Sentry's transfers to redeeming shareholders like Sumitomo could not have involved transfers of property originating from BLMIS.

Besides the claims in this action, the Trustee also has filed more than 70 actions against other Sentry investors. In those actions, combined with the Trustee's action against related funds, Fairfield Sigma Limited ("Sigma") and Fairfield Lambda Limited ("Lambda"), the Trustee seeks to recover approximately $4 billion in subsequent transfers of BLMIS customer property from defendants who, like Sumitomo, allegedly received redemption payments from Sentry. *See Higgins Dec.* ¶ 14, Exs. 6, 7. And on top of that $4 billion in supposed "subsequent transfers," the Trustee also seeks to recover another approximately $1 billion in amounts paid by Sentry to its management group. *See Higgins Dec.* ¶ 15, Ex. 5.

9

In short—and this is key—the Trustee is trying to recover roughly $5 billion in alleged "subsequent transfers" that flowed out of Sentry, even though he simultaneously alleges that the initial transfers (*i.e.*, from BLMIS to Sentry) total less than $3 billion. At least $2 billion of the alleged "subsequent transfers," therefore, could not have been subsequent transfers of BLMIS customer property.

In a related proceeding, Sentry confirmed this conclusion—that it regularly paid investors like Sumitomo with funds that did not originate with BLMIS. In *Fairfield Sentry Limited, et al., v. Citco Global Custody NV*, Sentry admitted that it used "subscription monies of other investors," not transfers from BLMIS, to pay redeeming investors. Here is what it told the Court:

> From time to time, to make Redemption Payments, Sentry (and Sigma and Lambda through Sentry) made withdrawals from Sentry's BLMIS accounts (***or utilized subscription monies of other investors on hand that were directed for investment in BLMIS***).

*Fairfield Sentry Limited, et al., v. Citco Global Custody NV*, 19-01122 Doc. No. 19, entered Nov. 26, 2019, at para 63.[7]

Considering these facts, and the absence of any allegations directly connecting Sumitomo's transfer to BLMIS, it would be unreasonable to infer that the Sumitomo transfer originated with BLMIS.

---

[7] As set forth in footnote 2, above, this Court may take judicial notice of pleadings in other actions. This is especially true here where the Trustee is in privity with the liquidators of Sentry, Sigma, and Lambda (the "Fairfield Liquidators") in actions to recover alleged BLMIS customer property and the Trustee and Fairfield Liquidators have stipulated to a joint interest between them in this respect. *See infra* at p. 21, n. 13. The stipulation between the Trustee and the Fairfield Liquidators filed in *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-1239, (Bankr. S.D.N.Y. May 9, 2011), ECF 62 (the "Settlement Agreement") is attached as Exhibit 10 to the *Higgins Dec.*

## STANDARD OF REVIEW

The Court must dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Moreover, a claimant's allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A plausible claim pleads facts "that allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

While the Court must accept well-pleaded factual allegations as true, it need not accept assertions that are unsupported by factual allegations, *id.* at 678–79, nor "legal conclusion[s] couched as [ ] factual allegation[s,]" *Papasan v. Allain*, 478 U.S. 265, 286 (1986), nor "conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely." *Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*, 151 F.Supp.2d 371, 405 (S.D.N.Y. 2001).

## ARGUMENT

## I.    THE AMENDED COMPLAINT VIOLATES RULE 8(a)

Rule 8(a) of the Federal Rules of Civil Procedure requires a pleading to include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). In the Second Circuit, that requires the pleading to "give the adverse party fair notice of the claim asserted so as to enable

him to answer and prepare for trial." *Salahuddin*, 861 F.2d at 42; *accord Chambers*, 282 F.3d at 155. A "good test," one bankruptcy court said, "'is to ask whether the defendant could respond to [the claim for relief] with an appropriate affirmative defense.'" *State Bank & Tr. Co. v. Spaeth (In re Motorwerks, Inc.)*, 371 B.R. 281, 293 (Bankr. S.D. Ohio 2007) (quoting *Birdsell v. U.S. West Newvector Grp., Inc. (In re Cellular Exp. of Ariz., Inc.)*, 275 B.R. 357, 363 (Bankr. D. Ariz. 2002)).

In other contexts, bankruptcy courts within the Second Circuit have required a trustee's pleading to provide details of the transfers sought to be avoided. In *Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87, 118-19 (Bankr. S.D.N.Y. 2011), Judge Lifland dismissed a preference claim where the "Trustee's allegations aggregate the transfers into a lump sum without specifying the number of Preferences, the amount of any specific Preference, or which defendant received any specific Preference." Dismissal was warranted because the trustee's "bare allegations fail to provide sufficient notice for the Defendants to prepare an answer or affirmative defenses, such as whether the transfer was made in the ordinary course of business or whether there was a contemporaneous exchange for new value." *Id.* (citing *Motorwerks*, 371 B.R. at 293-94).

Other courts in the Second Circuit have routinely held that subsequent transfer complaints must provide "the necessary vital statistics—the who, when, and how much" of the transfers. *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 32 (Bankr. E.D.N.Y. 2007); *accord Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (Picard v. BNP Paribas S.A.)*, 594 B.R. 167, 195

(Bankr. S.D.N.Y. 2018); *Gowan v. Amaranth LLC (In re Dreier LLP)*, 452 B.R. 451, 464 (Bankr. S.D.N.Y. 2011).

Here, the Trustee does not give Sumitomo fair notice of his claim and, consequently, Sumitomo cannot appropriately answer the amended complaint, prepare affirmative defenses, or prepare for discovery and trial. As we have seen, the amended complaint identifies thousands of transfers from BLMIS and (probably) roughly 30 from BLMIS to Sentry but fails to identify the specific transfer or transfers that supposedly gave rise to the transfer to Sumitomo. Without knowing which transfer (or transfers) is claimed to be the initial transfer, Sumitomo cannot effectively:

- Answer the Trustee's allegation that there was an initial transfer;

- Answer the Trustee's allegation that the initial transfer is avoidable;

- Serve appropriate discovery demands;

- Evaluate whether it has a defense based on Fed. R. Civ. P. 9(b), which would apply if the alleged initial transfer were within two years of the filing and the Trustee were seeking to invoke 11 U.S.C. 548(a)(1)(A), or based on 11 U.S.C. Section 546(e), which would apply if the alleged initial transfer were made more than two years before the bankruptcy filing.[8]

---

[8] If the Court denies Sumitomo's Rule 8(a) defense, it also contends *supra* that the amended complaint must be dismissed based on those rules. Sumitomo's ability to make those arguments, however, is prejudiced by the amended complaint's failure to give it adequate notice.

- Evaluate whether it needs to defend against an actual or constructive fraud theory of avoidability.

- Evaluate whether the relevant initial transfer was actually made.

- Evaluate whether the funds from the alleged initial transfer, or some part of them, were actually transferred to Sumitomo.

Absent the information needed to answer these and other questions, Sumitomo does not have the "fair notice," *Salahuddin*, 861 F.2d at 42, or the ability to answer and prepare for trial, *Motorwerks*, 371 B.R. at 293-94, to which Rule 8 gives it the right.[9]

## II.    THE AMENDED COMPLAINT VIOLATES RULE 9(b)

To the extent the Court rules that the Trustee complied with Rule 8(a) and notified Sumitomo that the initial transfer is voidable pursuant to 11 U.S.C. 548(a)(1)(A), the amended complaint violates Fed. R. Civ. P. 9(b).

Allegations of fraud must be pleaded with particularity. Fed. R. Civ. P. 9(b); Fed. R. Bankr. P. 7009. This requirement applies to claims to avoid and recover

---

[9] Another important violation of Rule 8 (as well as Rule 10(c)) is the Trustee's wholesale incorporation of the Fairfield Amended Complaint in paragraph 34 of the amended complaint. Courts generally hold that a pleading in one action may not adopt by reference the pleadings in a different action. *Texas Water Supply Corp. v. R. F. C.*, 204 F.2d 190, 196 (5th Cir. 1953); *Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*, 13-CIV-6705-DLC, 2014 WL 1673351 * 9 (S.D.N.Y. Apr. 28, 2014) (citing Charles Alan Wright & Arthur R. Miller, et al., 5A Fed. Prac. & Proc. Civ. § 1326 (3d ed. 2013)); *see Davis v. Bifani*, 07-CV-00122-MEH-BNB, 2007 WL 121615 * 1 (D. Color. Apr. 24, 2007) (noting it is improper "to incorporate by reference wholesale the allegations in a complaint in a completely separate action, even if that action is between the same parties," but striking the incorporation by reference for violation of Rule 8(a)); *Muth v. Dechert, Price & Rhoads*, 391 F.Supp. 935, 938 (E.D. Pa. 1975); 2 Moore's Federal Practice - Civil § 10.04[3] (2021). This rule is especially true here because the Trustee failed to identify which portions of the Fairfield Amended Complaint he seeks to adopt. *Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212, 216 (D. Mass. 1995) (incorporation "must specifically identify which portions of the prior pleading are adopted"). Fed. R. Civ. P. 10(c) provides additional grounds for dismissal.

actual, as opposed to constructive, fraudulent transfers. *Sharp Int'l Corp. v. State St. Bank & Tr. Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005); *Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*, 429 B.R. 73, 91-92 (Bankr. S.D.N.Y. 2010); *Off. Comm. of Unsecured Creditors v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*, 394 B.R. 721, 733 (Bankr. S.D.N.Y. 2008); *Off. Comm. of Unsecured Creditors v. Am. Tower Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 459-60 (Bankr. S.D.N.Y. 2006).

To satisfy the particularity requirement the plaintiff must "specify the 'particulars' of the alleged fraud – including, for example, the time, place, particular individuals involved, and specific conduct at issue." *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 221 (S.D.N.Y. 2002). For claims to avoid and recover actual fraudulent transfers, the plaintiff must "specify the property that was allegedly conveyed, the timing and frequency of those allegedly fraudulent conveyances, [and] the consideration paid." *Tronox*, 429 B.R. at 92 (quoting *M. Fabrikant*, 394 B.R. at 733 (quoting, in turn, *United Feature Syndicate*, 216 F. Supp. 2d at 221)).

To the extent that the Trustee alleges that Sumitomo's transfer is based on an initial transfer that was actually fraudulent, the amended complaint does not satisfy this requirement. It fails to identify a particular initial transfer from among the thousands listed in Exhibit C. Therefore, Rule 9(b) would require dismissal if the Court were to find that the Trustee has both complied with Rule 8 and alleged that the initial transfer voidable pursuant to 11 U.S.C. 548(a)(1)(A).

15

## III.  SECTION 546(e) BARS THE TRUSTEE'S CLAIM

To the extent that the Court finds that the Trustee complied with Rule 8(a)

and put Sumitomo on notice that the initial transfer is voidable pursuant to a

provision other than 11 U.S.C. 548(a)(1)(A), the amended complaint fails under 11

U.S.C. 546(e).

In an action to recover a subsequent transfer, the subsequent transferee may

assert any defenses to avoidability of the initial transfer the initial transferee could

have asserted, including section 546(e). *See Fairfield Inv. Fund*, 2021 WL 3477479,

at *3 ("Where the initial transferee fails to raise a § 546(e) defense against the

trustee's avoidance of certain transfers, as is the case here . . . the subsequent

transferee is nonetheless entitled to raise a § 546(e) defense against recovery of

those funds.").

Section 546(e)[10] bars the trustee from avoiding (other than under section

548(a)(1)(A) with a limited reach-back period of two years) a transfer, *inter alia*, (1)

that was either a settlement payment or a transfer in connection with a securities

contract; and (2) made by or to (or for the benefit of) a covered entity such as a

stockbroker, financial institution, or financial participant. Because BLMIS's initial

---

[10] "Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not avoid a transfer that is a margin payment, as defined in section 101, 741, or 761 of this title, or settlement payment, as defined in section 101 or 741 of this title, made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, or that is a transfer made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, in connection with a securities contract, as defined in section 741(7), commodity contract, as defined in section 761(4), or forward contract, that is made before the commencement of the case, except under section 548(a)(1)(A) of this title." 11 U.S.C. § 546(e).

16

transfers to Sentry relevant to this adversary proceeding are protected from

avoidance by section 546(e), they cannot be recovered from a subsequent transferee,

and the amended complaint must be dismissed.

### A.   The Alleged Initial Transfer Was Made by or To a Covered Entity

While the amended complaint does not identify the date and amount of the

alleged initial transfer, it does allege that it was made by BLMIS to Sentry.

Therefore, it is covered by 546(e), because BLMIS was a stockbroker and Sentry

was a financial institution—though either of these facts alone would be sufficient.

### 1.   BLMIS Was a Stockbroker

The Code defines "stockbroker" to include entities that "engage[ ] in the

business of effecting transactions in securities." 11 U.S.C. § 101(53A). The district

court has already ruled that BLMIS engaged in securities transactions:

> Overall, Madoff Securities, which was registered as a stockbroker with
> the SEC, clearly engaged in securities transactions. . . . [E]ven
> assuming the truth of the allegation that Madoff Securities'
> investment advisory division never traded securities on behalf of
> clients, Madoff Securities nonetheless qualifies as a stockbroker by
> virtue of the trading conducted by its market making and proprietary
> trading divisions.

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 719

(S.D.N.Y. 2012) (footnote and citation omitted), *aff'd sub nom. In re Bernard L.*

*Madoff Inv. Sec. LLC (Picard v. Ida Fishman Revocable Trust)*, 773 F.3d 411 (2d

Cir. 2014). The Trustee does not dispute that BLMIS was a stockbroker. *Fishman*,

773 F.3d at 417 ("It is not disputed that BLMIS was a 'stockbroker' for the purposes

of § 546(e)"); *see* Br. for Plaintiff-Appellant Irving H. Picard, *In re Bernard L.*

*Madoff Inv. Sec. LLC*, No. 12-2557 (2d Cir. May 15, 2013), ECF 145, at i-ii, 5 (not

challenging stockbroker finding on appeal.[11]

## 2.    Sentry Was a Financial Institution

Section 101(22) of the Code defines "financial institution" to include not only

"an entity that is a commercial or savings bank," but also the customer of such a

bank "when [it] is acting as agent or custodian for a customer . . . in connection with

a securities contract." 11 U.S.C. § 101(22)(A). In *In re Fairfield Sentry Ltd.*

*(Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam)*, 10-13164-SMB, 2020 WL

7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*"), this Court held that

Sentry (the initial transferee) was a "financial institution" because it was a

customer of Citco Bank Nederland N.V. Dublin Branch ("Citco Bank"), which acted

as agent in connection with the securities contracts pursuant to which the

redemption payments were made. *Id.* at *7.

Citco Bank is a bank regulated by the Central Bank of the Netherlands and

registered with the Central Bank of Ireland. *Id.* at *6 & n.11.[12] In a document filed

with the Court proffering additional allegations pertaining to another Sentry

---

[11] The Trustee's brief is attached as Exhibit 8 to the *Higgins Dec.*

[12] *See* De Nederlandsche Bank, *Information Detail: Citco Bank Nederland N.V.*,
https://www.dnb.nl/en/public-register/information-detail/?registerCode=WFTDG&relationNumber=B0275 (last visited Dec. 14, 2021) (identifying Citco
Bank Nederland N.V. as "[c]arrying on the business of a bank," including "[a]cceptance of deposits
and other repayable funds"); Central Bank of Ireland, *Financial Service Provider Profile: Citco Bank
Nederland NV Dublin Branch*,
http://registers.centralbank.ie/FirmDataPage.aspx?firmReferenceNumber=C27278 (last visited Dec.
14, 2021) (classifying Citco Bank as a "credit institution . . . whose business is to receive deposits or
other repayable funds from the public and to grant credits for its own account"). This Court can take
judicial notice of information from such public registries. *See In re Trib. Co. Fraudulent Conv. Litig.*,
946 F.3d 66, 78 (2d Cir. 2019) ("*Tribune I*"); *Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron
Corp.)*, 323 B.R. 857, 869 (Bankr. S.D.N.Y. 2005).

investor,[13] the Trustee alleged that Walter Noel and Jeffrey Tucker, the founders of

Fairfield Greenwich Group, which organized Sentry, "contracted Citco Global

Custody N.V. . . . . to nominally serve as the custodian of the Fairfield Sentry assets"

and "opened bank accounts at Citco Bank Nederland, N.V. Dublin Branch." Proffer

¶ 37. Sentry thus was a customer of Citco Bank. *See Tribune I,* 946 F.3d at 78-79

(for purposes of Section 101(22)(A), "customer" must be given its "ordinary

meaning," which includes "someone who buys goods or services" and "a person . . .

for whom a bank has agreed to collect items") (citations omitted); *Fairfield III,* 2020

WL 7345988, at *7.

In *Tribune I,* the Second Circuit applied the common-law meaning of

"agency" for purposes of Section 101(22)(A) and section 546(e):

> Agency is the fiduciary relationship that arises when one person (a
> "principal") manifests assent to another person (an "agent") that the
> agent shall act on the principal's behalf and subject to the principal's
> control, and the agent manifests assent or otherwise consents so to act.
> . . . Establishment of an agency relationship requires facts sufficient to
> show (1) the principal's manifestation of intent to grant authority to
> the agent, and (2) agreement by the agent. In addition, the principal
> must maintain control over key aspects of the undertaking.

946 F.3d at 79 (cleaned up).

In this case, the Trustee alleges that the initial transfers from BLMIS to

Sentry were made from BLMIS accounts entitled "Citco Global Custody N.V. FBO

Fairfield Sentry Ltd." *Am. Compl.* Ex. C. These allegations are sufficient to

establish that Citco Bank was Sentry's agent in connection with the redemptions at

---

[13] The "Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue as to the CDP
Defendants" filed in *Picard v. Multi-Strategy Fund Limited,* Adv. Pro. No. 12-01205, (Bankr.
S.D.N.Y. June 26, 2015), ECF 57 ("Proffer") is attached as Exhibit 9 to the *Higgins Dec.*

issue. To paraphrase the Second Circuit in *In re Trib. Co. Fraudulent Conv. Litig.*,
10 F.4th 147 (2d Cir. 2021) ("*Tribune II*"), "Here, [Sentry] entered into an
agreement with [Citco Bank] whereby [Citco Bank] was hired to be a steward of
[Sentry]'s money . . . . It was clearly acting on behalf of [Sentry], which is enough to
satisfy § 546(e)." *Id.* at 176.

This Court came to the same conclusion in *Fairfield III*:

> [T]he [Fairfield] Liquidators' admission that redemptions were paid by
> Citco Bank establishes the necessary agency. It is implausible to infer
> that Citco Bank made the redemption payments to specific redeemers
> in specific amounts absent the Funds' directions to do so. Moreover,
> Citco Bank accepted those directions by executing the redemption
> payments. Based on the foregoing, the Funds were customers of Citco
> Bank who acted as their agents in connection with the securities
> contracts pursuant to which the redemption payments were made, and
> the Funds were, therefore "financial institutions" within the meaning
> of 11 U.S.C. § 546(e).

2020 WL 7345988, at *7 (footnote omitted). This Court's holding in *Fairfield III* is
binding on the Trustee because he was in privity with the Fairfield Liquidators who
were litigating the consolidated Fairfield redeemer actions partly for the Trustee's
benefit.[14]

---

[14] Pursuant to paragraph 4 of the Fairfield Settlement Agreement that was incorporated into the
Consent Judgment on which the Trustee relies, *see Am. Compl.* ¶ 39 & note 7 *supra*, the Fairfield
Liquidators will pay the Trustee 15% of their net recoveries from all claims the Liquidators assert
against redeemers from the Fairfield funds (included in paragraph 11's definition of "Sharing
Claims") until the Trustee has been paid $1.924 billion. Paragraph 14 states that "[t]he Trustee and
the Liquidators agree and stipulate that a joint interest exists between them with respect to the
Sharing Claims." The Trustee and the Liquidators' agreed joint interest in any such recovered
BLMIS customer property constitutes a "preexisting 'substantive legal relationship,'" focused on a
successive or concurrent interest in property, of the kind recognized by the Supreme Court to give
rise to non-party issue preclusion in *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008). *See also Briscoe v.
City of New Haven*, 654 F.3d 200, 203 (2d Cir. 2011); *N.Y.C. Dist. Council of Carpenters Pension
Fund v. Forde*, 11-CIV-5474-LAP-GWG, 2018 WL 2455437, at *16 (S.D.N.Y. June 1, 2018). Because
the Trustee is in privity with the Liquidators in actions to recover alleged BLMIS customer property,
such as the actions at issue in *Fairfield III*, and because the issue of Sentry's "financial institution"
status was "actually litigated" and "essential" to the final judgments dismissing numerous such

### B.     The Alleged Initial Transfer Was a Settlement Payment and Made in Connection with a Securities Contract

The Second Circuit in *Fishman* concluded that Section 546(e) shielded transfers between BLMIS and its account holders from avoidance. 773 F.3d at 417. The Court of Appeals held that the documents governing BLMIS customers' accounts constituted securities contracts, and BLMIS made its payments to customers "in connection with" those contracts, and that they also constituted "settlement payments." *Id.* at 418-23—though either of these findings would have sufficed to invoke the safe harbor. The Court rejected the Trustee's argument that the safe harbor did not apply because Madoff did not actually carry out the promised securities transactions.

The same reasoning and result doubly applies to the transfer BLMIS allegedly made to Sentry so Sentry could then fund Sumitomo's redemption request. The alleged transfer from BLMIS to Sentry was clearly "in connection with" the securities contracts Sentry had entered into with BLMIS, as was the case in *Fishman*. But the transfer also was "in connection with" the securities contract Sumitomo had with Sentry through Sentry's Articles of Association, pursuant to which Sentry redeemed Sumitomo's interest. *See Fairfield Sentry Ltd. v. Migani*, [2014] UKPC 9, ¶ 10 ("the terms of the subscriber's membership of the Fund, which

---

actions on ground of the Section 546(e) safe harbor, this Court's finding in *Fairfield III* that Sentry was a "financial institution" in connection with redemption payments from Sentry to its subscribers is binding on the Trustee. *See New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001) (stating requirements for issue preclusion).

govern the redemption of its shares . . . are to be found in the Articles of Association of the Fund").[15]

The definition of "securities contract" includes "a contract for the purchase, sale, or loan of a security," 11 U.S.C. § 741(7)(A)(i), and "[t]he term 'redemption,' in the securities context, means 'repurchase,'" *Tribune I*, 946 F.3d at 80. The definition of "securities contract" also includes "any other agreement or transaction that is similar to an agreement or transaction referred to in this subparagraph." 11 U.S.C. § 741(7)(A)(vii).  Accordingly, "the definition of securities contract . . . includes . . . redemption requests." *Sec. Inv's Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 12-MC-115-JSR, 2013 WL 1609154, at *8 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"). Furthermore, all Section 546(e) requires is that the transfer be "in connection with *a* securities contract," not in connection with the securities contract between the transferor and initial transferee. *See Fishman*, 773 F.3d at 422 ("Section 546(e) sets a low bar for the required relationship between the securities contract and the transfer sought to be avoided."); *Cohmad*, 2013 WL 1609154, at *9 (explaining that a transfer from a debtor to an initial transferee may qualify as having been made "in connection with a securities contract" between the initial transferee and a subsequent transferee, and thus be covered by the safe harbor on that basis).

---

[15] Sentry's Articles of Association are attached as Exhibit 11 to the *Higgins Dec*. This Court may consider the Articles of Association in connection with this motion because, as the basis for the challenged redemption, they are integral to the amended complaint. *See Tribune II*, 10 F.4th at 176 ("Here, the documents the district court relied on were the contracts that set forth the relationship between Tribune and CTC, and they were therefore integral to the complaint.").

Implicit in the Trustee's subsequent transfer claim is the allegation that the funds Sumitomo received were transferred from BLMIS to Sentry so that Sentry could then satisfy Sumitomo's redemption request. That assertion necessarily involves the allegation that the initial transfer from BLMIS to Sentry was connected to Sumitomo's contract with Sentry that authorized the redemption. Accordingly, the Section 546(e) safe harbor applies to the initial transfer, and thus also bars recovery of the subsequent transfer.

The safe harbor applies even if the initial transferee, Sentry, allegedly knew of Madoff's fraud, and thus knew that there was no actual "settlement payment" or "securities contract" between them. *First*, there was a securities contract between Sentry and its investors, including Sumitomo, even if there was none between BLMIS and Sentry. In *Cohmad*, Judge Rakoff ruled that even if the initial transferee knew BLMIS was a fraud and was not trading securities, if the initial transferee withdrew funds from BLMIS to make a payment under a securities contract between the initial transferee and the subsequent transferee, then the withdrawal from BLMIS would be a transfer made in connection with a securities contract, namely, the contract between the initial transferee and the subsequent transferee, and would not be avoidable:

> Take, for example, a hypothetical situation in which the Trustee alleges that a withdrawal of funds by an investment fund from its Madoff Securities customer account occurred because an investor in that fund sought redemption of its investment under the terms of its investment contract. Assuming that either the investment fund or the investor qualifies as a financial institution or financial participant, and barring other circumstances that may appear on the facts of a given case, that situation appears to fit within the plain terms of Section

23

> 546(e): an initial transfer that was "made by or to (or for the benefit of)
> a . . . financial institution [or] financial participant . . . in connection
> with a securities contract."

*Cohmad*, 2013 WL 1609154, at *9 (footnote omitted).[16] As applied to the facts

here, the investment fund was Sentry (which was a financial institution as

shown above) and the investor was Sumitomo.

*Second*, the amended complaint does not allege, or even suggest, that the

subsequent transferee, Sumitomo, knew of Madoff's fraud, and thus knew that

there was not a real settlement payment or securities contract between BLMIS and

Sentry. And knowledge—not inquiry notice or speculation—is what Judge Rakoff

thought was necessary to defeat the safe harbor (which arises under Section 546(e),

not Section 550(b), and thus is unaffected by the Second Circuit's recent "good faith"

decision in *In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Citibank, N.A.)*, 12

F.4th 171 (2d Cir. 2021)). Furthermore, there is no allegation that Sumitomo knew

of any fraud at Sentry. Sumitomo thus had every reason to believe that the money it

received from Sentry was a settlement payment for the redemption of its

membership in Sentry shares and was made in connection with its securities

contract with Sentry.

*Third*, and most fundamentally, there is no basis in Section 546(e) for having

its applicability turn on the knowledge of the transferee, as opposed to the

---

[16] Judge Rakoff also observed that "[t]o the extent that, for example, an initial transfer from Madoff
[S]ecurities to an investment fund customer and the subsequent transfer from the investment fund
to its redeeming investors may together comprise a 'settlement payment' under *Enron Creditors
Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 339 (2d Cir. 2011)], that transfer may fall
within the purview of Section 546(e), assuming it meets the statute's other requirements." *Cohmad*,
2013 WL 1609154, at *9 n.5.

transferor.[17] That section says that the *only* exception to the safe harbor is a claim under Section 548(a)(1)(A), which involves intentional fraud by the *transferor. See Silverman v. Actrade Cap., Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005) (under § 548(a)(1)(A) "it is the intent of the transferor and not the transferee that is relevant") (citations omitted). Nor does knowledge play any role in the definitions of "settlement payment," 11 U.S.C. § 741(8), or "securities contract," 11 U.S.C. § 741(7). A holding that transferee knowledge defeats the safe harbor would be inconsistent with the language of Section 546(e). Where the Code creates an exemption or safe harbor, and specifies exceptions, a court is not free to create additional exceptions even when doing so is motivated by a party's alleged wrongdoing. *See Law v. Siegel*, 571 U.S. 415, 424-25 (2014). The courts must adhere to "the plain meaning of the language" of the statute. *See Merit Mgmt. Grp., LP v. FTI Consulting Inc.*, 138 S. Ct. 883, 897 (2018).

Section 546(e) reflects a balancing of interests by Congress, one of which is the protection of market stability. "Unwinding settled securities transactions . . . would seriously undermine . . . markets in which certainty, speed, finality, and stability are necessary to attract capital." *Tribune I*, 946 F.3d at 90. "Permitting the clawback of millions, if not billions, of dollars from BLMIS clients—many of whom are institutional investors and feeder funds—would likely cause the very

---

[17] Although the Second Circuit in *Fishman* noted that the defendants there had "every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions," 773 F.3d at 420, it did not state that the result would have been different had that not been the case. The only circumstances in which the knowledge of the transferee would be relevant would be if it could be imputed to the transferor, such as where the transferee, "as the [transferor]'s president, director, and sole shareholder, . . . was in a position to control the disposition of [the transferor's] property." *See Roco Corp. v. Cohen (In re Roco Corp.)*, 701 F.2d 978, 984 (1st Cir. 1983) (citation omitted).

'displacement' that Congress hoped to minimize in enacting § 546(e)." *Fishman*, 773

F.3d at 420 (citation omitted).

## IV. THE TRUSTEE FAILS TO ALLEGE FACTS SHOWING THAT THE TRANSFER TO SUMITOMO COMPRISED BLMIS CUSTOMER PROPERTY

To state a claim under Securities Investor Protection Act, the Trustee must

plausibly allege that the redemption payment Sumitomo received was a subsequent

transfer of BLMIS customer property that had been fraudulently transferred from

BLMIS to Sentry. *See* 15 U.S.C. § 78fff-2(c)(3) ("the trustee may recover any

property transferred by the debtor which, except for such transfer, would have been

customer property if and to the extent that such transfer is voidable or void under

the provisions of title 11").

To avoid dismissal, the Trustee must plead (1) "that the initial transfer is

avoidable" and (2) that "the funds at issue originated with the debtor"—that is, that

Sumitomo's redemption payment originated with BLMIS. *Shapiro* 542 B.R. at 119

(first quote); *BNP Paribas S.A.*, 594 B.R. at 195 (cleaned up) (second quote). This

point contends that the Trustee fails to meet the second element—that the "funds at

issue originated with the debtor."

To avoid dismissal, the Trustee must allege more than the "mere possibility"

that the transfers originated with BLMIS. *Iqbal*, 556 U.S. at 679; *see also Twombly*,

550 U.S. at 555. While the Trustee is not required to provide a "'dollar-for-dollar

accounting of the exact funds at issue'" in a subsequent transfer case, it is also true

that "barebones allegations that the funds at issue were transferred to the

Subsequent Transferees, without more detail, are insufficient." *Shapiro*, 542 B.R. at

26

119 (quoting the *Omnibus Motion to Dismiss Decision* from *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re: Bernard L. Madoff)*, 531 B.R. 439, 473 (S.D.N.Y. 2015).

To meet these standards, the Trustee must allege the "necessary vital statistics—the who, when, and how much" of the transfers. *BNP Paribas S.A.*, 594 B.R. at 195 (quoting *Allou Distribs.,* 379 B.R. at 32); *accord Dreier*, 452 B.R. at 464.

In *Shapiro*, this Court dismissed generic, bare bones claims like the ones lodged against Sumitomo.[18] There, the Trustee generically alleged that (i) BLMIS transferred funds to certain accounts and (ii) those accounts transferred funds to supposed subsequent transferees:

- Based on the Trustee's investigation to date, the Initial Transferee Defendants subsequently transferred a portion of the $53,778,486 received from BLMIS (the 'Subsequent Transfers') to Defendants…
- [T]he Shapiros [who held an account at BLMIS] funded Account 1S0540 largely, if not completely, with subsequent transfers . . . they received in connection with one or more of their BLMIS accounts.

*Shapiro Compl.* ¶¶ 110, 43.

But that was insufficient. The Court dismissed the complaint because it did not "tie any initial transfer to any subsequent transfer or Subsequent Transferee." *Id.* at 119. The same thing happened in *Angell v. Ber Care, Inc. (In re Caremerica, Inc.)*, 409 B.R. 737, 750-51 (Bankr. E.D.N.C. 2009), where the court dismissed a preferential treatment claim under *Twombly* and *Iqbal* because the trustee's factual allegations, like those here, included details about the (i) transfers into and out of a

---

[18] The second amended (and operative) complaint filed by the Trustee in *Picard v. Shapiro*, Adv. Pro. No. 10-05383, (Bankr. S.D.N.Y. July 8, 2014), ECF 33 (the "*Shapiro Compl.*") is attached as Exhibit 12 to the *Higgins Dec.*

particular account and (ii) amounts received by the supposed transferees, *but nothing to tie them together.*

The Trustee does no better here. He offers only *Shapiro*-like allegations, in the form of exhibits, that (i) BLMIS transferred funds to Sentry and (ii) Sentry transferred funds to Sumitomo. But when did BLMIS transfer the funds to Sentry that Sentry supposedly used to pay Sumitomo? How much of the billions transferred from BLMIS to Sentry were subsequently directed to Sumitomo? Like the dismissed claims in *Shapiro*, these "vital statistics" are left unaddressed.

## V.   IN THE ALTERNATIVE, DISMISSAL IS WARRANTED BECAUSE THE PLEADINGS REVEAL A FATAL FLAW IN THE TRUSTEE'S LOGIC

Seen in the context of the Trustee's many subsequent transfer proceedings, the amended complaint is based on a flawed argument. It alleges only that some "subsequent" transfers involved transfers from BLMIS, which, if true, would prove only the possibility that Sumitomo's payment originated with BLMIS. That is insufficient to state a claim upon which relief can be granted. Put another way, the Court could not rule for the Trustee if, after trial, he were to prove only the possibility that Sumitomo received a subsequent transfer. If, therefore, the allegations show only possibility, dismissal is warranted.

Rule 12(b)(6) requires factual allegations to imply more than a logical "possibility" that liability arises. *Twombly*, 550 U.S. at 555 (more than "mere possibility" is required). While the factual allegations themselves need only be plausible, the logic of the complaint must establish "liability *necessarily, not only*

*possibly*, follows." *Strandberg v. State Farm Mut. Auto Ins. Co.*, 15-CV-02468-RCJ-PAL, 2016 WL 614401, at *1 (D. Nev. 2016) (emphasis added).

Put within the *Twombly* framework, the allegations must be more than "consistent" with the legal conclusions. *See also Garfinkle v. Conf. on Jewish Material Claims Against Germany, Inc.*, No. 1:19-cv-7007-JPO, 2020 WL 6323462, at *4-5 (S.D.N.Y. Oct. 28, 2020) (where there is an "obvious alternative explanation . . . that explanation renders [plaintiff]'s competing explanation 'conceivable [but not] plausible'"); *Prestige Pet Prod., Inc. v. Pingyang Huaxing Leather & Plastic Co.*, 767 F. Supp. 2d 806, 812 (E.D. Mich. 2011) (dismissal warranted where there exists an "'obvious alternative explanation' that provides no grounds for relief") (quoting *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567).

To survive this motion to dismiss, therefore, the Trustee's factual allegations must logically dictate the conclusion that Sentry transferred BLMIS funds to Sumitomo. *See Shapiro*, 542 B.R. at 119 (dismissing complaint because Trustee did "not plausibly imply that the initial transferees even made subsequent transfers to the Subsequent Transferees as opposed to third parties, or that they made the subsequent transfers rather than simply keep the initial transfers for themselves"); *Strandberg*, 2016 WL 614401, at *1 (the test is whether "liability necessarily, not only possibly, follows" from the allegations). They do not.

As we have seen, the amended complaint does not identify any particular transfer from BLMIS to Sentry as the origin of the transfer to Sumitomo. Instead, it simply alleges that (i) BLMIS paid billions to Sentry over six years and (ii) Sentry

29

made a redemption payment to a particular member. Put syllogistically, the Trustee

hopes to plow through the pleadings stage with this logic:

- *All* redemption payments originated with BLMIS.
- Sumitomo received a redemption payment.
- Therefore, Sumitomo's redemption payment originated with BLMIS.

That might be sufficient to state a claim in some cases but doesn't work here

because the pleadings demonstrate that the first premise is implausible. Exhibit C

plus the complaints filed in the Trustee's related proceedings disproves it.[19]

As we discuss in the fact section (*supra* at p. 9), in the 70+ Sentry

subsequent transferee recovery actions, the Trustee seeks to recover nearly $5

billion in alleged subsequent transfers, including approximately $1 billion in money

allegedly paid by Sentry to its management group, even though the Sentry Initial

Transfers only total approximately $3 billion. *See Am. Compl.* ¶ 35; *Higgins Dec.* ¶

14-15, Exs. 5, 6, 7. In other words, the Trustee is endeavoring to recover as

subsequent transfers from Sentry roughly $2 billion more than the total amount

that he himself alleges were transferred by BLMIS to Sentry.[20]

Consequently, the Trustee's theory that all the redemption payments are

customer property is not merely implausible, it is impossible, and he is therefore

---

[19] The exhibits are part of the pleadings pursuant to Fed. R. Civ. P. 10(c) and the Court can take judicial notice of pleadings that the Trustee has filed in other cases. *Rothman*, 220 F.3d at 92 (taking judicial notice of complaint from another case filed by plaintiff).

[20] Sentry was able to transfer more than it received from BLMIS because it had other sources of funds. The Trustee himself pleads that Sentry continuously received funds not just from BLMIS, but from investor subscriptions. *See, e.g., Am. Compl.* ¶ 6 (alleging that Sumitomo wired funds to Sentry for subscriptions). Numerous complaints include similar concessions.

left with the more limited allegation that *some* (*i.e.*, not all) of the redemption payments originated with BLMIS. Put syllogistically, his amended complaint says:

- *Some* redemption payments originated with BLMIS.
- Sumitomo received a redemption payment.
- Therefore, Sumitomo's redemption payment originated with BLMIS.

But showing that *some* redemption payments originated with BLMIS does not prove that Sumitomo's did. All that it proves, even accepting the Trustee's *factual* allegations as true, is the mere possibility that Sumitomo's payment originated with BLMIS. That is insufficient to state a claim "upon which relief can be granted." *Twombly*, 550 U.S. at 552; *see also Iqbal*, 556 U.S. at 679; *Garfinkle*, 2020 WL 6323462, at *4-5; *Prestige*, 767 F. Supp. 2d at 812.[21]

In sum, the Trustee is entitled to proceed where he makes factual allegations that, if true, would prove—not just make possible—that he is entitled to recover Sumitomo's redemption payment. But the amended complaint does not do that. Dismissal is warranted.

## CONCLUSION

For the reasons stated here, Sumitomo respectfully requests that the Court dismiss the Trustee's amended complaint in its entirety.

---

[21] *Twombly* and *Iqbal* require courts to dismiss pleadings grounded on logical fallacies or false syllogisms. *E.g.*, *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 582 (S.D.N.Y. 2011) (dismissing claims because they were based on a "false syllogism"); *Rosen v. Unilever U.S., Inc.*, No. 09-02563-JW, 2010 WL 4807100 (N.D. Cal. May 3, 2010) (complaint "failed pleading standards of *Twombly* and *Iqbal*" because it based its legal conclusion on "logical fallacies"); *Eisberner v. Discover Prods., Inc.*, No. 12-C-0699, 2013 WL 3773389 (E.D. Wis. July 17, 2013) (because of a logical "fallacy," the complaint pleaded only "a 'sheer possibility' that [defendant] has acted unlawfully," thus requiring dismissal under *Twombly* and *Iqbal*); *Hall v. Phenix Investigations, Inc.*, No. 3:14-cv-0665, 2015 WL 2070028 (N.D. Tex. May 5, 2015) (the "fallacy with plaintiffs' syllogistic argument" required dismissal under *Twombly* and *Iqbal*).

Dated:       New York, New York
             February 11, 2022

                              **BECKER, GLYNN, MUFFLY,**

                              **CHASSIN & HOSINSKI LLP**

                              By: _____/s/ Zeb Landsman_____
                                     Zeb Landsman
                                     299 Park Avenue
                                     New York, New York 10171
                                     (212) 888-3033
                                     zlandsman@beckerglynn.com

                              *Attorneys for Defendant*