**BECKER, GLYNN, MUFFLY, CHASSIN & HOSINSKI LLP**
*Attorneys for Defendant*
299 Park Avenue
New York, New York 10171
Telephone: 212-888-3033
Facsimile: 212-888-0255
Zeb Landsman
zlandsman@beckerglynn.com

Hearing Date: September 14, 2022, 10:00 a.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (CGM) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff, <br><br> Plaintiff, <br><br> v. <br><br> THE SUMITOMO TRUST AND BANKING CO., LTD, <br><br> Defendant. | Adv. Pro. No. 11-02573 (CGM) <br><br> **REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT THE SUMITOMO TRUST AND BANKING CO., LTD'S MOTION TO DISMISS** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................iii

INTRODUCTION ....................................................................1

I.    THE AMENDED COMPLAINT VIOLATES THE PLEADING
STANDARDS OF RULE 8(a) ..............................................2

    A.    The Trustee Does Not Refute Sumitomo's Lack of Fair
Notice Argument ...............................................2

    B.    The Trustee Improperly Incorporates by Reference the
Fairfield Amended Complaint ................................4

    C.    The Trustee's Law of the Case and Judicial Notice
Arguments Fail to Save His Deficient Pleading ...............5

        1.    There Is No Law of the Case That Binds the Court
Here................................................6

        2.    Judicial Notice Cannot Substitute for Adequate
Pleading ...........................................7

II.    THE TRUSTEE IGNORES THE HEIGHTENED PLEADING
STANDARD UNDER RULE 9(b) AS IT APPLIES TO THE
INITIAL TRANSFER...........................................7

III.    THE TRUSTEE HAS NOT ALLEGED THAT SUMITOMO
RECEIVED CUSTOMER PROPERTY ..........................8

    A.    The Trustee Misunderstands the Plausibility
Requirement of *Twombly* and *Iqbal*, and ignores
*Strandberg*........................................8

    B.    The Trustee Misuses *Merkin II* in This Case, He Cannot
Sue for Amounts That "Greatly Exceed the Amount of the
Initial Transfer".....................................10

    C.    Tracing and Commingling Are Not Issues Here ...............11

    D.    Experts Are Not Necessary...............................12

    E.    The Trustee Has All the Records He Needs....................12

IV.    BY REDEEMING INVESTMENTS IN SENTRY, SUMITOMO IS
SEPARATELY ENTITLED TO THE STATUTORY SAFE
HARBOR PROTECTION UNDER SECTION 546(e) BASED ON
ITS SECURITIES CONTRACT WITH SENTRY .........................14

CONCLUSION.....................................................17

# TABLE OF AUTHORITIES

## Cases

*Am. Casein Co. v. Geiger (In re Geiger)*,
    446 B.R. 670 (Bankr. E.D. Pa. 2010) ...................................................................... 4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................ 8, 9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................ 8, 9

*Edmondson v. RCI Hosp. Holdings, Inc.*,
    No. 16-CV-2242-VEC, 2020 WL 1503452 (S.D.N.Y. Mar. 30,
    2020)......................................................................................................................... 12

*Enron Corp. v. Lehman Bros. Fin. S.A. (In re Enron Corp.)*,
    No. 03-93383-A, 2005 WL 3873896 (Bankr. S.D.N.Y. July 29,
    2005)........................................................................................................................... 8

*Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*,
    Nos. 10-03493-SMB, 10-05447-SMB, 2014 WL 47774 (Bankr.
    S.D.N.Y. Jan. 2, 2014) ........................................................................................... 12

*Kelley v. Westford Special Situations Master Fund, L.P.*,
    No. 19-CV-1073-ECT-KMM, 2020 WL 3077151 (D. Minn.,
    June 10, 2020)......................................................................................................... 11

*Lowden v. William M. Mercer, Inc.*,
    903 F. Supp. 212 (D. Mass., 1995) ......................................................................... 4

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013)................................................................................... 13

*Picard v. ABN AMRO Bank (Ireland) Ltd.*,
    505 B.R. 135 (S.D.N.Y. 2013) ............................................................................... 16

*Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*,
    Nos, 10-04398-BRL, 10-05219-BRL, 2012 WL 892514 (Bankr.
    S.D.N.Y. Mar. 14, 2012) ........................................................................................ 11

*Picard v. Cohmad Secs. Corp. (In re BLMIS)*,
    454 B.R. 317 (Bankr. S.D.N.Y. 2011).................................................................... 13

*Picard v. Fairfield Inv. Fund Ltd. (In re Madoff)*,
  No. 09-01239-CGM, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug.
  6, 2021).................................................................................................5, 7, 17

*Picard v. Mayer (In re BLMIS)*,
  No. 20-01316-CGM, 2021 WL 4994435 (Bankr. S.D.N.Y. Oct.
  27, 2021)............................................................................................... 13

*Picard v. Merkin (In re BLMIS)*,
  515 B.R. 117 (Bankr. S.D.N.Y. 2014).........................2, 7, 10, 11, 12, 13

*Picard v. Merkin (In re BLMIS)*,
  581 B.R. 370 (Bankr. S.D.N.Y. 2017)................................................... 11

*Salahuddin v. Cuomo*,
  861 F.2d 40 (2d Cir. 1988) ...................................................................3

*Sapia v. Home Box Off., Inc.*,
  No. 18-CIV-1317-CM, 2018 WL 6985223 (S.D.N.Y. Dec. 17,
  2018).................................................................................................. 13

*Secs. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re
  Madoff Sec.)*,
  No. 12-MC-115-JSR, 2013 WL 1609154 (S.D.N.Y. Apr. 15,
  2013)................................................................................. 14, 15, 16, 17

*Secs. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
  501 B.R. 26 (S.D.N.Y. 2013) .............................................................5, 6

*Strandberg v. State Farm Mut. Auto Ins. Co.*,
  15-CV-02468-RCJ-PAL, 2016 WL 614401 (D. Nev. Feb. 16,
  2016)....................................................................................................9

*The State Bank & Tr. Co. v. Spaeth (In re Motorwerks, Inc.)*,
  371 B.R. 281 (Bankr. S.D. Ohio 2007) .................................................3

*Toberman v. Copas*,
  800 F. Supp. 1239 (M.D. Pa., 1992) ....................................................4

*U.S. v. Henshaw*,
  388 F.3d 738 (10th Cir. 2004) ........................................................... 11

iv

*U.S. v. Int'l Longshoremen's Ass'n,*
   518 F. Supp. 2d 422 (E.D.N.Y. 2007) ................................................................ 5

*Wolfe v. Charter Forest Behav. Health Sys., Inc.,*
   185 F.R.D. 225 (W.D. La., 1999) ...................................................................... 4

*Wright v. Ernst & Young LLP,*
   152 F.3d 169 (2d Cir. 1998) ....................................................................... 5, 7

## Statutes

11 U.S.C. § 546(e) ............................................................................ 14, 15, 16, 17

11 U.S.C. § 546(g) .......................................................................................... 16

11 U.S.C. § 548(a)(1)(A) ................................................................................... 3

11 U.S.C. § 550 ........................................................................................... 2, 16

11 U.S.C. § 550(a) ........................................................................................... 1

## Other Authorities

Moore's Federal Practice–Civil § 10.04[1] ........................................................ 4

## Rules

Federal Rules of Civil Procedure 8 ............................................................... 4, 6

Federal Rules of Civil Procedure 8(a) .......................................................... 2, 6

Federal Rules of Civil Procedure 8(a)(2) ...................................................... 5, 6

Federal Rules of Civil Procedure 9(b) .......................................................... 7, 8

Federal Rules of Civil Procedure 10(c) ........................................................... 2

Federal Rules of Civil Procedure 12 ............................................................... 9

Federal Rules of Civil Procedure 12(b)(6) ................................................... 1, 9

Federal Rules of Civil Procedure 15 ............................................................... 7

## INTRODUCTION

This is the reply memorandum of the defendant, Sumitomo, in further support of its motion to dismiss the amended complaint.[1]

Section 550(a) of the Bankruptcy Code requires the Trustee to identify a particular initial transfer between BLMIS and Sentry that is avoidable. The fundamental problem with the amended complaint is that the Trustee, instead, alleges thousands of such transfers occurring over years—any of which may or may not be the transfer he will use at trial to support his claim.

Our main memorandum describes the problems that arise from the Trustee's flawed pleading, including that Sumitomo cannot effectively answer the amended complaint or defend itself without discovery about hundreds of transfers and years of transactions, most of which are surely irrelevant. And, more broadly, the amended complaint fails under Rule 12(b)(6) because its factual allegations, if true, show only that the Trustee might be entitled to relief, not that he would be entitled to relief.

In response to our motion, the Trustee could have cured some of these problems. He could have identified which transaction was the alleged initial transfer or explained how Sumitomo might deal with the questions left open by the overbroad pleading. He could have limited his universe of lawsuits to those involving customer property, rather than knowingly suing more subsequent transferees than could possibly have received any. But he did not. He mostly

---

[1] Capitalized terms not defined in this reply shall have the same meaning provided in Sumitomo's main memorandum of law. *Main Memo* ECF 112.

ignored the issue, presumably so he can continue to hide his cards until trial and force hundreds of defendants to engage in years of difficult and expensive discovery.[2]

## I.   THE AMENDED COMPLAINT VIOLATES THE PLEADING STANDARDS OF RULE 8(a)

Sumitomo's main memorandum shows that the amended complaint fails to give fair notice of the Trustee's claim such that Sumitomo can answer or prepare for trial, and violates Rule 8(a)'s requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief," including the incorporation of the Fairfield Amended Complaint pursuant to Fed. R. Civ. P. 10(c).

The Trustee's opposition does not address these issues. Instead, he raises arguments based on law of the case and judicial notice, which we address directly in Point I(C), below.

### A.   The Trustee Does Not Refute Sumitomo's Lack of Fair Notice Argument

Our main memorandum contends that the amended complaint's failure to identify the initial transfer that supposedly supports the Trustee's § 550 claim raises too many questions to permit Sumitomo to conduct efficient discovery, plead affirmative defenses, or prepare for trial. *Main Memo* at 11-14; *see also Salahuddin*

---

[2] We refute the Trustee's opposition points in the body of this reply memorandum. But one point deserves a preview: the Trustee's misapplication of *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149 (Bankr. S.D.N.Y. 2014) ("*Merkin II*"). The Trustee defends his allegations that the defendants received billions more in subsequent transfers than BLMIS ever transferred to Sentry by quoting *Merkin II*'s holding that "the aggregate subsequent transfer claim can greatly exceed the amount of the initial transfer." But that rule applies where a single initial transfer is re-transferred multiple times among multiple subsequent transferees: A to B to C to D etc. Here, the Trustee alleges something different. He alleges that A (BLMIS) transferred to B (Sentry) and then B made transfers to C (Sumitomo), D, E, and the other defendants. There is no allegation of transfers among or between C, D, E, etc., at least as it relates to Sumitomo.

*v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *The State Bank & Tr. Co. v. Spaeth (In re Motorwerks, Inc.)*, 371 B.R. 281, 293 (Bankr. S.D. Ohio 2007). The Trustee's opposition could have sought to correct the problem by identifying the initial transfer or set of transfers. But he did not, thus leaving key questions unanswered and hobbling Sumitomo for the entire proceeding, from its answer, through the discovery process, to preparing its defenses at trial.

Sumitomo cannot fairly be expected to respond to allegations of an avoidable initial transfer if the Trustee does not identify one. With no identified transfer to investigate, the Trustee's pleading will compel Sumitomo to discover facts about each of them.[3]

Sumitomo has different legal defenses, moreover, depending on whether the unidentified alleged initial transfer occurred before December 11, 2006, the beginning of the two-year lookback period under § 548(a)(1)(A). While the transfer to Sumitomo occurred after that date, only the date of the ***initial*** transfer matters, and the Trustee has refused—in the amended complaint and again in opposition to the motion to dismiss—to provide even that much detail.[4] Sumitomo will therefore

---

[3] The Trustee has provided spreadsheets reflecting initial transfers but will still have to prove at trial that they actually occurred. Sumitomo is entitled to discover the relevant facts about each supposed transfer.

[4] Because Sumitomo's transfer occurred nearly a year after the start of the lookback period, it might seem reasonable to assume that the underlying initial transfer likely occurred close to that date and, therefore, within the lookback period. But the Trustee has refused to take a position on this key matter, even after we raised in our initial motion papers, and Sumitomo should not have to speculate. Moreover, it is clear from the Trustee's pleadings that (1) there were only two transfers from BLMIS to Sentry that occurred both within the lookback period and prior to Sumitomo's transfer and (2) the amounts of those initial transfers were insufficient to fund the approximately 125 subsequent transfers Sentry made to other defendants around the same time. *See Higgins Dec.*

have to explore and raise all of the potential defenses, even those that could be rendered irrelevant by fair notice from the Trustee.

### B. The Trustee Improperly Incorporates by Reference the Fairfield Amended Complaint

The amended complaint improperly incorporates all of the Fairfield Amended Complaint (a lengthy complaint with exhibits) into what would otherwise be a relatively short, amended complaint against Sumitomo. The Trustee defends his practice by citing *Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670 (Bankr. E.D. Pa. 2010). But *Geiger* dismissed the complaint because, in part, the incorporation violated Rule 8. *Geiger*, 446 B.R. at 679-80.

An acceptable incorporation must "enable the responding party to easily determine the nature and extent of the incorporation." *Wolfe v. Charter Forest Behav. Health Sys., Inc.*, 185 F.R.D. 225, 229 (W.D. La., 1999). "The reference must be clear and specific and must specifically identify the statements incorporated," Moore's Federal Practice–Civil § 10.04[1] (2021) (citing *Toberman v. Copas*, 800 F. Supp. 1239, 1243 (M.D. Pa., 1992)), and "specifically identify which portions of the prior pleading are adopted," *Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212, 216 (D. Mass., 1995); *accord Toberman*, 800 F. Supp. at 1243 (plaintiff must "provid[e], at a minimum, direct reference to specific paragraphs relied on"), none of which can be found in the amended complaint.

---

Exs. 2, 3, 7. This Court should dismiss the amended complaint because the Trustee fails to give Sumitomo enough information to know the theory under which the Trustee is proceeding.

Here, the Trustee alleges that the initial transfers are avoidable, not by giving facts about them, but by incorporating "the allegations contained in the Fairfield Amended Complaint," a pleading with 798 paragraphs containing 111 exhibits (*Am. Compl.* ¶ 34), and without specifying particular allegations within the Fairfield Amended Complaint that are being incorporated. *See U.S. v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 463 (E.D.N.Y. 2007) (pleading the necessary elements of a claim through incorporation of other pleadings is "a blatant violation of Rule 8(a)(2)'s direction that a civil plaintiff provide a 'short and plain statement of the claim showing that the pleader is entitled to relief'").

### C. The Trustee's Law of the Case and Judicial Notice Arguments Fail to Save His Deficient Pleading

The Trustee contends that (1) the law of the case from *Secs. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 501 B.R. 26 (S.D.N.Y. 2013) ("*Madoff Securities*"), establishes that the Fairfield Amended Complaint adequately alleges avoidability of the initial transfer and (2) the Court may take judicial notice of its own similar holding in *Picard v. Fairfield Inv. Fund Ltd. (In re Madoff)*, No. 09-01239-CGM, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*FIF*"). Trustee's Opposition Memorandum of Law ("*Opp.*") ECF 117 at 19. But the *Madoff Securities* court does not address the adequacy of the Fairfield Amended Complaint. And judicial notice of a court decision cannot substitute for allegations in a complaint. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).

5

### 1.    There Is No Law of the Case That Binds the Court Here

In *Madoff Securities* (a consolidated proceeding), the district court withdrew the reference to decide several preliminary legal issues, including whether the Code required the Trustee to obtain a judgment of avoidance of initial transfers before seeking to recover from the subsequent transferees. *Madoff Securities*, 501 B.R. at 28. The Trustee quotes part of a single sentence of dicta referencing the adequacy of the complaint (*Opp.* at 28) but omits the court's introductory clause: "Applying these principles [announced in the opinion] to a representative case . . . ." But the consolidated defendants did not challenge the incorporation, nor did the court consider those questions, let alone rule on the Rule 8(a) issues that Sumitomo and other defendants raise.

Moreover, the Trustee's quotation does not address Sumitomo's argument. Sumitomo does not claim that the Fairfield Amended Complaint fails to allege avoidability of the Initial Transfers. Rather, we argue that incorporating the Fairfield Amended Complaint, and thus requiring Sumitomo to answer all of its allegations, violates Rule 8(a)(2)'s requirement of a short and plain statement of the claim.

The Trustee suggests that Sumitomo respond only to those allegations in the Fairfield Amended Complaint that address avoidability. But Rule 8 protects defendants from having to guess which of a plaintiff's allegations apply and which do not.

6

### 2.    Judicial Notice Cannot Substitute for Adequate Pleading

The Trustee argues that even if his incorporation was improper, "this Court may take judicial notice of its holding that the Fairfield Amended Complaint sufficiently alleged the avoidability of the initial transfers." *Opp.* at 19 (footnote omitted). But this Court's *FIF* decision addressed the Fairfield Second Amended Complaint, not the Fairfield Amended Complaint that the Trustee attempts to incorporate by reference here. *FIF*, 2021 WL 3477479, at *1.

Judicial notice, particularly of a court decision, cannot substitute for allegations in a complaint. *See Wright*, 152 F.3d at 178 (plaintiff may not add allegations in her memorandum opposing motion to dismiss). The defendant cannot admit or deny allegations of which the Court has taken judicial notice. Thus, the parties cannot adequately frame the facts and issues in dispute. The Trustee's request here that the Court take judicial notice to fill in missing allegations he failed to properly plead or incorporate is tantamount to amending the complaint without compliance with Rule 15. *See id.* Judicial notice does not relieve the Trustee of his burden to meet the pleading standards of the Federal Rules of Civil Procedure as interpreted by case law. *See* Fed. R. Civ. P. 15; *Wright*, 152 F.3d at 178.

## II.    THE TRUSTEE IGNORES THE HEIGHTENED PLEADING STANDARD UNDER RULE 9(b) AS IT APPLIES TO THE INITIAL TRANSFER

The Trustee concedes that Fed. R. Civ. P. 9(b) applies to the avoidance of an initial transfer (to the extent it is based on fraud). *Opp.* at 21 (citing *Merkin II*, 515 B.R. at 149). To plead this portion of his claim with specificity, the Trustee must identify the avoidable initial transfer that allegedly funded the subsequent transfer.

Although the "Ponzi scheme presumption" might apply to some initial transfers from BLMIS to Sentry, Rule 9(b) requires the plaintiff to notify the defendant of the facts to enable it to prepare its defenses. *See Enron Corp. v. Lehman Bros. Fin. S.A. (In re Enron Corp.)*, No. 03-93383-A, 2005 WL 3873896, at *9 (Bankr. S.D.N.Y. July 29, 2005). As discussed in the main memorandum and *supra* Point I(A), the Trustee's refusal to identify the relevant initial transfer or transfers prevents Sumitomo from adequately preparing its defenses.

## III.    THE TRUSTEE HAS NOT ALLEGED THAT SUMITOMO RECEIVED CUSTOMER PROPERTY

Absent any allegation by the Trustee that a particular BLMIS-to-Sentry transfer was the source of Sentry's transfer to Sumitomo, the most one can deduce from the amended complaint that it is possible that Sentry transferred customer property to Sumitomo. The transfer may or may not have contained customer property, according to the amended complaint. That is because it is undisputed that the subsequent transferee defendants received billions more from Sentry than Sentry received from BLMIS. Thus, it is mathematically impossible that all the alleged subsequent transfers originated at BLMIS. Even assuming the truth of the allegations in the amended complaint, it does not state a claim upon which relief can be granted; it states only a claim upon which relief might be granted.

### A.    The Trustee Misunderstands the Plausibility Requirement of *Twombly* and *Iqbal,* and ignores *Strandberg*

In opposition to our motion, the Trustee cites the rule from *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57, 570 (2007), that a plaintiff's factual allegations need only be "plausible" to

8

survive a motion to dismiss. We agree. But plausibility applies only to the truth of factual allegations; the logic of the amended complaint must still lead necessarily to liability. Here is an example to show that distinction. A hypothetical plaintiff makes these three plausible factual allegations:

1. *The parties entered into a contract in which the defendant agreed to pay the plaintiff $20 on May 1, 2022 if the plaintiff delivered a book to the defendant on or before the same date.*

2. *The plaintiff delivered a book to the defendant on May 1, 2022.*

3. *The defendant might not have paid the plaintiff $20 on May 1, 2022.*

Even if each factual allegation is plausible, they do not together state a cause of action for breach of contract. A court could not find the defendant liable simply because the plaintiff proved that it was possible that the defendant breached the contract. This is clear from the text of Rule 12, which requires dismissal unless the plaintiff alleges facts "upon which relief ***can*** be granted," not facts upon which relief ***might possibly*** be granted. Fed. R. Civ. P. 12(b)(6) (emphasis added).

Case law is clear, too. Our main memorandum cites *Strandberg v. State Farm Mut. Auto Ins. Co.*, 15-CV-02468-RCJ-PAL, 2016 WL 614401 (D. Nev. Feb. 16, 2016), which directly adopts this reasoning. The logic of a complaint must establish that "liability necessarily, not only possibly, follows." *Id.* at *1. The Trustee's opposition fails to distinguish *Strandberg*, or even address it.

The amended complaint must be dismissed. Even assuming that the Trustee's factual allegations are plausible, they do not state a cause of action upon which relief can be granted. *Iqbal* and *Twombly* do not say otherwise.

9

B.    The Trustee Misuses *Merkin II* in This Case, He Cannot Sue for Amounts That "Greatly Exceed the Amount of the Initial Transfer"

The Trustee contends that he is entitled to sue subsequent transferees for billions more than the amount of customer property BLMIS initially transferred. In support, he cites *Merkin II*, 515 B.R. at 149, which says that "the aggregate subsequent transfer claim can greatly exceed the amount of the initial transfer." *Opp.* at 11. The Trustee also claims permission "to simultaneously seek recovery of subsequent transfers from Sumitomo . . . and from other defendants in other adversary proceedings in the aggregate amount that exceeds any associated initial transfers." *Id.* at 12.

But *Merkin II* is very different from this case. *Merkin II* involves multiple subsequent transfers of the same initial transfer. Imagine an initial transfer of $10 from A to B that is subsequently transferred from B to C to D to E. *Merkin II* rightly permits a trustee to sue C, D, and E each for $10. The aggregate claim in that case, $30, exceeds the amount of the initial transfer. That is permissible because each defendant actually received customer property.

But the Trustee is doing something different here. He does not allege (nor could he) that there were subsequent transfers among Sumitomo and the subsequent transferees, like in *Merkin II*.[5] Nor does he allege that each defendant received customer property. Without the type of re-transfers seen in *Merkin II*, its ruling does not apply.

---

[5] Indeed, when the Trustee sought to recover an alleged transfer from one defendant to another, he expressly alleged it. *See Higgins Dec.* Ex. 7(yyy) (alleging subsequent transfers from BBH to Credit Agricole Miami).

10

This distinction is sensible. It is fair to sue subsequent transferees who actually received customer property and may have transferred it away. But it is unfair to sue subsequent transferees whom the plaintiff knows could never have received customer property. *Merkin II* was the first situation; the defendants here represent the second.

### C.    Tracing and Commingling Are Not Issues Here

The Trustee blames his failure to link the initial and subsequent transfers on commingling of BLMIS and non-BLMIS money, contending that he has no obligation to "trace" the funds. But the Trustee's own pleadings establish that there was no commingling for long periods of time because there was no customer property left at Sentry—it had all been paid out previously. Thus, the payment to Sumitomo may have come from another source, not from commingled BLMIS and other funds.

Tracing is only an issue where funds are commingled. *See Picard v. Merkin (In re BLMIS)*, 581 B.R. 370, 384-85 (Bankr. S.D.N.Y. 2017) ("*Merkin III*") (tracing necessary where subsequent transfers originated from commingled accounts); *U.S. v. Henshaw*, 388 F.3d 738, 739 (10th Cir. 2004) (same). Because the Trustee's amended complaint shows no commingling for extensive time periods, his authorities do not save his claim. *See Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-CV-1073-ECT-KMM, 2020 WL 3077151, at *4 (D. Minn., June 10, 2020); *Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*, Nos. 10-04398-BRL, 10-05219-BRL, 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012); *Merkin II*, 515

B.R. at 152; *Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*, Nos. 10-03493-SMB, 10-05447-SMB, 2014 WL 47774, at *15 (Bankr. S.D.N.Y. Jan. 2, 2014)).

### D.    Experts Are Not Necessary

Contrary to the Trustee's assertion, there is no undisclosed expert methodology here—only arithmetic. The Trustee alleges that every single redemption payment from Sentry during the relevant period comprised only customer property. *See e.g., Am. Compl.* at 10-11. It follows, therefore, that each redemption decreased the amount of customer property left at Sentry by the amount paid for the redemption. *See id.* (alleging, for example, that "[b]ased on the Trustee's investigation to date, approximately $54,253,642 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Sumitomo."). Based on that, Sumitomo simply subtracted those redemptions from the amounts Sentry received from BLMIS. No expert testimony is needed. *See Edmondson v. RCI Hosp. Holdings, Inc.*, No. 16-CV-2242-VEC, 2020 WL 1503452, at * 6 (S.D.N.Y. Mar. 30, 2020) ("Simple arithmetic, such as ordinary multiplication, is a paradigmatic example of the type of everyday activity that goes on in the normal course of human existence.") (citations and quotation marks omitted).

### E.    The Trustee Has All the Records He Needs

The Trustee says he needs discovery from Sentry's management before the Court can consider dismissing his claim. But he does not identify any missing information that might affect the motion. And the thousands of alleged transfers

contained in his pleading imply that nothing is missing. *See Higgins Dec.*, ECF 113, Exs. 5, 6, 7.

The Trustee also complains that discovery from the Fairfield Greenwich Group defendants is unfinished. But the Trustee has a contractual right to records and cooperation from the Fairfield Liquidators, who have most of the Fairfield Funds' books and records. *See Higgins Dec.* Ex. 10 ¶ 14. If the Trustee believed he was missing something, he could have and should have exercised his rights to get it from the Fairfield Liquidators. His situation, therefore, is different from the situation in the cases he cites, where the subsequent transfers had to be proven through defendants' records. *See Merkin II*, 515 B.R. at 151; *Picard v. Cohmad Secs. Corp. (In re BLMIS) ("Cohmad I")*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011); *Picard v. Mayer (In re BLMIS)*, No. 20-01316-CGM, 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021); *see Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 709, 722-23 (2d Cir. 2013) (affirming dismissal and finding that "such imprecise pleading is particularly inappropriate here, where the plaintiffs necessarily have access, without discovery, to plan documents and reports that provide specific information from which to fashion a suitable complaint"); *Sapia v. Home Box Off., Inc.*, No. 18-CIV-1317-CM, 2018 WL 6985223, at *8 (S.D.N.Y. Dec. 17, 2018) (dismissing claim where plaintiffs failed to precisely plead necessary facts that were "uniquely in [p]laintiffs' possession").[6]

---

[6] The Trustee suggests that Sumitomo may also have relevant records, but he does not articulate what they are, and Sumitomo is hard-pressed to imagine what they might be.

IV.    **BY REDEEMING INVESTMENTS IN SENTRY, SUMITOMO IS SEPARATELY ENTITLED TO THE STATUTORY SAFE HARBOR PROTECTION UNDER SECTION 546(e) BASED ON ITS SECURITIES CONTRACT WITH SENTRY**

Sumitomo's main memorandum demonstrates that § 546(e) bars the Trustee's claims if he relies on certain initial transfers. *Main Memo* at 16-26. "None of this matters," he says, because the initial transferee (Sentry) had actual knowledge of the underlying fraud, prohibiting Sumitomo from invoking the safe harbor protection. *Opp.* at 22-24 (citing *Secs. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re Madoff Sec.)*, No. 12-MC-115-JSR, 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad II*")). But the Trustee's broad interpretation of *Cohmad II* is inconsistent with the reasoning in *Cohmad II* and other authorities. Under *Cohmad II*, transferees with actual knowledge are precluded from relying on § 546(e), and the Trustee does not allege Sumitomo had such knowledge. Our main memorandum addresses this issue; we focus here on Sumitomo's alternative argument, which the Trustee ignores.

In *Cohmad II*, the court recognized that § 546(e) protects financial institutions where agreements other than the BLMIS-Sentry account agreements qualify as "securities contracts." 2013 WL 1609154, at *9. After discussing situations where the "securities contract" was a "Madoff Securities account agreement," the court explained that the statutory phrase "is in fact much broader and includes, *inter alia*, fund subscription agreements and redemption requests," among others. *Id.* at *8. Section 546(e) does not require that "the securities contract that the transfer is made 'in connection with' must be a securities contract with the

14

debtor," but only "that the transfer relate to that securities contract." *Id.* at *9.

Accordingly, where a BLMIS customer (such as Sentry) made a "withdrawal" from

its BLMIS account that was allegedly "caused by [its] payment obligations to a

subsequent transferee under a securities contract" (such as Sentry's Articles of

Association), the initial transfer "could qualify" under Section 546(e) "as 'related to'

that later transaction under the securities contract." *Id.*; *see also Main Memo* at 21-

24; *Higgins Dec.* Ex. 11.

Here, it is undisputed that Sentry is a "financial institution." *See Main Memo*

at 18-20. And the Trustee is bound by his allegations that BLMIS's initial transfers

were made to Sentry (at its request) for the purpose of funding Sumitomo's

redemption request (*see Main Memo* at 21-22 & n.15). Accordingly, the facts alleged

here "fit within the plain terms of Section 546(e)." *Cohmad II*, 2013 WL 1609154, at

*9.

*Cohmad II* thus provides a separate, secondary basis for the statutory safe

harbor to protect Sumitomo, premised on Sentry's Articles of Association as the

relevant "securities contract," rather than the BLMIS-Sentry customer agreements.

And the Trustee has conceded, by not contesting Sumitomo's showing (*see Main

Memo* at 21-24), that the initial BLMIS-Sentry transfers were made "in connection

with" Sentry's Articles of Association as a "securities contract" for purposes of §

546(e).

Because this path to § 546(e) protection does not implicate any securities

contract Sentry had with BLMIS, Sentry's alleged knowledge of the BLMIS fraud

(and that its customer agreements with BLMIS were not real securities contracts) is irrelevant. In summarizing the holdings in *Cohmad II*, the court concluded that actual knowledge of the BLMIS fraud disentitles a transferee defendant from relying on Section 546(e) if it "claim[s] the protections of Section 546(e) through a Madoff Securities account agreement," but not "to the extent that a defendant claims protection under Section 546(e) under a separate securities contract as a financial participant or financial institution."  2013 WL 1609154 at *10.

Moreover, the Trustee does not contend that Sentry's Articles of Association—the relevant "securities contract" in this analysis—was anything but a real securities contract pursuant to which real securities were redeemed and sold. Accordingly, Sentry's alleged actual knowledge of the BLMIS fraud is irrelevant and poses no impediment to the application of § 546(e) based on Sentry's Articles of Association as the relevant "securities contract." *Cf. Picard v. ABN AMRO Bank (Ireland) Ltd.*, 505 B.R. 135, 142 n.6 (S.D.N.Y. 2013) (explaining that "the issue of knowledge was irrelevant to the application of section 546(g), the analogous safe harbor for transfers made in connection with swap agreements, where "there is no dispute that the swap transactions actually occurred, [and] so the mindset of the participants . . . is irrelevant").

The Trustee's insistence that "Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees" (*Opp.* at 8) misses the mark. The Trustee did not litigate this issue in his avoidance action against Sentry, but instead settled with that entity's liquidators. In that

16

circumstance, "the subsequent transferee is nonetheless entitled to raise a Section

546(e) defense against recovery of those funds." *Cohmad II*, 2013 WL 1609154, at

*7; *accord FIF*, 2021 WL 3477479, at *3. And in this action, the Trustee has

conceded that the safe harbor's prerequisites have been satisfied.

## CONCLUSION

For the reasons stated here and in its main memorandum, Sumitomo

respectfully requests that the Court dismiss the Trustee's amended complaint

in its entirety.


Dated:        New York, New York
              May 26, 2022

                              **BECKER, GLYNN, MUFFLY,**
                              **CHASSIN & HOSINSKI LLP**


                              By:    */s/ Zeb Landsman*
                                     Zeb Landsman
                                     299 Park Avenue, 16th Floor
                                     New York, New York 10171
                                     Tel. No.: (212) 888-3033
                                     zlandsman@beckerglynn.com

                              *Attorneys for Defendant*