**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and the*
*Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (CGM) <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, <br><br> Plaintiff, <br><br> v. <br><br> LION GLOBAL INVESTORS LIMITED, <br><br> Defendant. | Adv. Pro. No. 11-02540 (CGM) <br><br><br> **TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT** |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS .......................................................................................3

   I.     THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS.............................3

   II.    FAIRFIELD SENTRY........................................................................4

   III.   THE DEFENDANT AND FAIRFIELD SENTRY ................................................5

ARGUMENT ...........................................................................................................6

   I.     LEGAL STANDARD........................................................................6

   II.    LION GLOBAL IS THE PROPER PARTY .........................................7

   III.   THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT ..........8

       A.   Defendant Purposefully Availed Itself of The Laws and Privileges of Conducting Business In New York By Investing In Sentry .....................11

       B.   Defendant's Investment in BLMIS through Fairfield Sentry ...................11

           a.   *BLI* Establishes this Court's Jurisdiction Over the Defendant.......12

           b.   Walden Does Not Save the Defendant from this Court's Jurisdiction....................................................................14

           c.   Defendant's Direct Contacts with New York ................................15

       C.   The Exercise of Personal Jurisdiction Over Defendant Is Reasonable......18

       D.   In The Alternative, The Trustee Is Entitled To Jurisdictional Discovery ...................................................................................19

   IV.   THE COMPLAINT SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE SENTRY INITIAL TRANSFERS...............................................20

       A.   The Incorporated Material Complies With Federal Rules of Civil Procedure 10 and 8...............................................................21

       B.   In the Alternative, the Trustee Should Be Afforded the Opportunity to Replead ...............................................................................22

   V.    SECTION 546(E) DOES NOT BAR RECOVERY FROM DEFENDANT.........23

       A.   Fairfield Sentry Had Actual Knowledge of Madoff's Fraud .....................23

       B.   Defendant Is Precluded From Arguing That Section 546(e) Applies Independently to Recovery Actions.........................................25

   VI.   THE TRUSTEE'S COMPLAINT PLEADS THAT DEFENDANT RECEIVED BLMIS CUSTOMER PROPERTY UNDER SECTION 550(A).....28

       A.   Defendant Misstates the Trustee's Pleading Burden .................................29

       B.   Defendant's Tracing Arguments Fail on a Motion to Dismiss.................31

C.     Defendant's Claims of Double Recovery Are Premature..........................33

CONCLUSION....................................................................................................................34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
   599 B.R. 730 (Bankr. S.D.N.Y. 2019) ...............................................................................29, 30

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
   98 F.3d 25 (2d Cir. 1996) ..........................................................................................................10

*Am. Casein Co. v. Geiger (In re Geiger)*,
   446 B.R. 670 (Bankr. E.D. Pa. 2010) ................................................................................20, 21

*Ashcroft v. Iqbal*,
   556 U.S. 552 (2009) ....................................................................................................................6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................................................6

*Bernard L. Madoff Inv. Secs. LLC (Picard v. Ida Fishman Recoverable Trust)*,
   773 F.3d 411 (2d Cir. 2014) ................................................................................................25, 26

*Bissonnette v. Podlaski*,
   138 F. Supp. 3d 616 (S.D.N.Y. 2015) ........................................................................................9

*Burger King v. Rudzewicz*,
   471 U.S. 462 (1985) ................................................................................................................9, 10

*Burlington Indus., Inc. v. Salem Int'l Co.*,
   645 F. Supp. 872 (S.D.N.Y. 1986) ...........................................................................................16

*Cargo Partner AG v Albatrons, Inc.*,
   352 F.3d 41 (2d Cir. 2003) ..........................................................................................................6

*Chloé v. Queen Bee of Beverly Hills, LLC*,
   616 F.3d 158 (2d Cir. 2010) ...................................................................................9, 10, 17, 18

*CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*,
   393 B.R. 306 (Bankr. W.D.N.Y. 2008) .....................................................................................33

*Colson Servs. Corp. v. Bank of Baltimore*,
   712 F.Supp. 28 (S.D.N.Y. 1989) ...............................................................................................12

*Cromer Fin. Ltd. v. Berger*,
   137 F. Supp. 2d 452 (S.D.N.Y. 2001) .........................................................................................9

*Davis v. Bifani,*
  No. 07-cv-00122-MEH-BNB, 2007 WL 1216518 (D. Colo. Apr. 24, 2007)..........................21

*DeMasi v. Benefico,*
  567 F. Supp. 2d 449 (S.D.N.Y. 2008).....................................................................................20

*Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.,*
  722 F.3d 81 (2d Cir. 2013)........................................................................................................8

*Druck Corp. v. Macro Fund (U.S.) Ltd.,*
  102 F. App'x 192 (2d Cir. 2004) .............................................................................................16

*Ellicott Mach. Corp. v. John Holland Party, Ltd.,*
  995 F.2d 474 (4th Cir. 1993) ...................................................................................................18

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.,*
  651 F.3d 329 (2d Cir. 2011)......................................................................................................26

*Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.,*
  397 F. Supp. 3d 323 (S.D.N.Y. 2019).....................................................................................11

*Fairfield Sentry Ltd.,* 596 B.R. 275 (Bankr. S.D.N.Y. 2018) ........................................................28

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.),*
  No. 10-13164 (SMB), 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) .........................28

*Ferrari v. Cnty. of Suffolk,*
  790 F. Supp. 2d 34 (E.D.N.Y. 2011) .......................................................................................20

*Foman v. Davis,*
  371 U.S. 178 (1962)..................................................................................................................23

*Giuliano v. Barch,*
  No. 16-cv-0859 (NSR), 2017 WL 1234042 (S.D.N.Y. Mar. 31, 2017) ..................................15

*Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP),*
  Adv. Pro. Nos. 10-03493 (SMB), 10-05447 (SMB), 2014 WL 47774, (Bankr.
  S.D.N.Y. Jan. 3, 2014) ..............................................................................................................33

*Grand River Enters. Six Nations, Ltd. v. Pryor,*
  425 F.3d 158 (2d Cir. 2005)......................................................................................................11

*Helms v. Metro. Life Ins. Co.*
  (In re O'Malley), 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019) .................................................33

*Int'l Customs Assocs., Inc. v. Ford Motor Co.,*
  893 F. Supp. 1251 (S.D.N.Y. 1995) .................................................................................15, 17

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ..........................................................................................9, 10

*J.P. Jeanneret Assoc., Inc.*,
    769 F. Supp. 2d 340 (S.D.N.Y. Jan. 31, 2011) ........................................................6

*Jonas v. Estate of Leven*,
    116 F. Supp. 3d 314 (S.D.N.Y. 2015) ....................................................................15

*Kelley v. Safe Harbor Managed Acct. 101, Ltd.*,
    No. 20-3330, 2022 WL 1177748 (8th Cir. Apr. 21, 2022) ................................25, 28

*Kelley v. Westford Special Situations Master Fund, L.P.*,
    No. 19-cv-1073, 2020 WL 3077151 (D. Minn. June 10, 2020) ........................31, 32

*Kiobel v. Royal Dutch Petroleum Co.*,
    No. 02 Civ. 7618 (KMW)(HBP), 2009 WL 3817590 (S.D.N.Y. Nov. 16,
    2009) .......................................................................................................................19

*Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*,
    No. 07-MD-1902 (JSR), 2013 WL 12191844 (S.D.N.Y. Mar. 25, 2013) ..............24

*Licci ex rel. Licci v. Lebanese Can. Bank, SAL*,
    673 F.3d 50 (2d Cir. 2012) ....................................................................................15

*Marine Midland Bank, N.A. v. Miller*,
    664 F.2d 899 (2d Cir. 1981) ....................................................................................9

*Mass. Mut. Life Ins. Co. v. Residential Funding Co.*,
    LLC, 843 F. Supp. 2d 191 (D. Mass. 2012) ..........................................................21

*McGee v. Int'l Life Ins. Co.*,
    335 U.S. 220 (1957) .................................................................................................9

*McKee Electric Co. v. Rauland-Burg Corp.*,
    20 N.Y. 2d 377 (1967) ...........................................................................................17

*Metals Alliance Corp. v. Beshay*,
    1998 WL 811788 (S.D.N.Y. Nov. 19, 1998) ..........................................................17

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996) ....................................................................................10

*Morrison v. Off. of the U.S. Tr. (In re Morrison)*,
    375 B.R. 179 (Bankr. W.D. Pa. 2007) ..................................................................21

*Motors Liquidation Co*, 565 B.R. 275 (Bankr. S.D.N.Y. 2017) ....................................12

*New Hampshire v. Maine*,
    532 U.S. 742 (2001)..................................................................................................24

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
    No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010)...................21

*Picard, Trustee for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85
    (2d Cir. 2019)..........................................................................................12, 19, 25

*Picard v. BNP Paribas S.A. (In re BLMIS)*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018)............................................................ *passim*

*Picard v. Bureau of Labor Ins. (In re Bernard L. Madoff)*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012)................................................12, 13, 14, 15

*Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*,
    Adv. Pro. Nos. 10-04398 (BRL), 2012 WL 892514
    (Bankr. S.D.N.Y. Mar. 14, 2012) ...................................................................28, 29, 31, 32

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    12 F.4th 171 (2d Cir. 2021) ........................................................................................4

*Picard v. Cohen*,
    Adv. Pro. No. 10-04311, 2016 WL 1695296,
    (Bankr. S.D.N.Y. Apr. 25, 2016). ...........................................................................25

*Picard v. Cohmad Sec. Corp. (In re BLMIS)*,
    454 B.R. 317 (Bankr. S.D.N.Y. 2011)............................................................ *passim*

*Picard v. Est. of Seymour Epstein (In re BLMIS)*,
    No. 2l-CV-02334 (CM), 2022 WL 493734 (S.D.N.Y. Feb. 17, 2022)...................................27

*Picard v. Fairfield Greenwich Group (In re Fairfield Sentry Ltd.)*,
    627 B.R. 546 (Bankr. S.D.N.Y. 2021).................................................................9, 10

*Picard v. Fairfield Investment Fund Ltd. (In re BLMIS)*,
    Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6,
    2021) ............................................................................................................. *passim*

*Picard v. JPMorgan Chase & Co. (In re BLMIS)*,
    Adv. Pro. No. 08-99000 (SMB), 2014 WL 5106909, at *9 (Bankr. S.D.N.Y.
    Oct. 10, 2014) ..........................................................................................................13

*Picard v. Lowrey*,
    596 B.R. 451 (S.D.N.Y. 2019) .................................................................................24

*Picard v. Maxam Absolute Return Fund, L.P.*,
    460 B.R. 106 (Bankr. S.D.N.Y. 2011).....................................................................9, 12, 19

*Picard v. Mayer (In re BLMIS)*,
  Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435 (Bankr. S.D.N.Y. Oct.
  27, 2021) ...................................................................................................................29

*Picard v. Merkin (In re BLMIS)*,
  440 B.R. 243 (Bankr. S.D.N.Y. 2010) ....................................................................7

*Picard v. Merkin (In re BLMIS)*,
  515 B.R. 117 (Bankr. S.D.N.Y. 2014) . No .................................................... *passim*

*Picard v. Merkin (In re BLMIS)*,
  581 B.R. 370 (Bankr. S.D.N.Y. 2017) ..............................................................31, 32

*Picard v. Montpelier Int'l Ltd.*,
  Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435 (Bankr. S.D.N.Y. Oct.
  27, 2021) .....................................................................................................................9

*Picard v. Shapiro (In re BLMIS)*,
  542 B.R. 100 (Bankr. S.D.N.Y. 2015) ..............................................................30, 31

*Porat v. Lincoln Towers Cmty. Ass'n*,
  464 F.3d 274 (2d Cir. 2006)...................................................................................22

*Porina v. Marward Shipping Co.*,
  521 F.3d 122 (2d Cir. 2008)......................................................................................9

*RBC Cap. Mkts., LLC v. Garcia Hamilton & Assocs., LP*,
  2021 WL 230194 (S.D.N.Y. Jan. 22, 2021) ...........................................................17

*Roper Starch Worldwide, Inc. v. Reymer & Assocs., Inc.*,
  2 F. Supp. 2d 470 (S.D.N.Y. 1998) .........................................................................15

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir. 2007)......................................................................................6

*Rothman v. Gregor*,
  220 F.3d 81 (2d Cir. 2000).....................................................................................20

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
  624 F.3d 123 (2d Cir. 2010)..............................................................................9, 10

*SPV OSUS Ltd. v. UBS AG* 114 F.Supp 3d 161 (S.D.N.Y. 2015) ...............................17

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  531 B.R. 439 (Bankr. S.D.N.Y. 2015)......................................................................24

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  501 B.R. 26 (S.D.N.Y. Oct. 28, 2013)........................................................22, 25, 28

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  No. 12-MC-115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ................................23, 26, 27

*Sherman v. A.J. Pegno Constr. Corp.*,
  528 F. Supp. 2d 320 (S.D.N.Y. 2007) ..............................................................................21, 22

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
  379 B.R. 5 (Bankr. E.D.N.Y. 2007) ..................................................................................29, 30

*SunEdison, Inc.*, 620 B.R. 505 (Bankr. S.D.N.Y. 2020) ....................................................27

*SunLight Gen. Cap. LLC v. CJS Invs. Inc.*,
  114 A.D.3d 521, 981 N.Y.S.2d 390 (2014) ...........................................................................15

*Taylor v. Sturgell*,
  553 U.S. 880 (2008) .................................................................................................................24

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
  916 F.3d 143 (2d Cir. 2019) ....................................................................................................10

*United States v. Henshaw*,
  388 F.3d 738 (10th Cir. 2004) ............................................................................................31-32

*United States v. Int'l Longshoremen's Ass'n*,
  518 F. Supp. 2d 422 (E.D.N.Y. 2007) ....................................................................................21

*Walden v. Fiore*,
  571 U.S. 277 (2014) .................................................................................................................14

*Waldman v. Palestine Liberation Org.*,
  835 F.3d 317 (2d Cir. 2016) ....................................................................................................18

*Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*,
  543 B.R. 127 (Bankr. S.D.N.Y. 2016) ....................................................................................15

*Whitaker Sec., LLC v. Rosenfeld (In re Rosenfeld)*,
  543 B.R. 60 (Bankr. S.D.N.Y. 2015) ..................................................................................21, 22

## Statutes

11 U.S.C. § 546(e) ......................................................................................................... *passim*

11 U.S.C. § 550(a) ......................................................................................................... *passim*

11 U.S.C. § 550(d) ...................................................................................................................33

**Other Authorities**

5A Alan Wright & Arthur R. Miller, <u>Federal Practice & Procedure</u>, § 1326

(3d ed. 2007) ...................................................................................................................21

Federal Rule of Bankruptcy Procedure 7015.................................................................23

CPLR § 302(a)(1) ...........................................................................................................15

Federal Rule of Bankruptcy Procedure 7012.................................................................6

Federal Rules of Civil Procedure Rule 15(a)................................................................22

Federal Rule of Bankruptcy Procedure 8 ................................................................2, 22

Federal Rule of Bankruptcy Procedure 8(a)(2)........................................................6, 20

Federal Rule of Bankruptcy Procedure 10(c) ......................................................2, 20, 21

Federal Rule of Bankruptcy Procedure 12(b)(2) ...........................................................9

Federal Rule of Bankruptcy Procedure 12(b)(6) .....................................................6, 23

Irving H. Picard as trustee (the "Trustee"), for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection

Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff, respectfully

submits this memorandum of law in opposition to the motion to dismiss the Complaint pursuant

to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure (the "Motion") filed by

defendant Lion Global Investors Limited ("Lion Global" or "Defendant").

## PRELIMINARY STATEMENT

This action by the Trustee in this SIPA liquidation proceeding seeks to recover $50,583,443

in subsequent transfers of stolen BLMIS customer property that Defendant received from Fairfield

Sentry Limited ("Sentry"). Defendant contends that it was not a party to any subscription or

redemption agreements and was not a recipient—as principal or agent—of any transfers from

Sentry in July 2005 and therefore these facts alone, "should be the end of the inquiry." But the

inquiry is only beginning as the Motion actually raises numerous questions of fact. Lion Global

was the successor to both Lion Capital Management ("Lion Capital") and Straits Lion Asset

Management ("Straits Lion"), the entity that made the investment in Sentry. This "Lion" family of

entities and successors, including Defendant, purposely availed themselves of New York law by

engaging with the Fairfield Greenwich Group ("FGG") in New York to not only invest in Sentry,

but also to establish a joint venture to sell FGG products, including Sentry, in Asia. *See*

Beckerlegge Decl. Ex. 2.

The Trustee's well-pleaded complaint alleges that Defendant received subsequent transfers

of stolen customer property from Sentry and these allegations are based on documentation in the

Trustee's possession.[1] Defendant's unsupported, bald statement that it did not receive these transfers is an issue of fact. As the Court must accept the Trustee's well-pled allegations as true for the purposes of a motion to dismiss, Defendant's contention that it did not receive the transfers is inappropriate on a motion to dismiss and will be determined through discovery.

Lion Global's Motion also should be denied because this Court has personal jurisdiction over the Defendant. Defendant or its predecessor entity, Straits Lion, purposefully invested in Sentry, knowing that BLMIS in New York was the *de facto* investment manager, broker dealer, and custodian of Sentry's investments. The knowledge Defendant's predecessors gathered about FGG, Sentry, and BLMIS while negotiating the joint venture with FGG cannot be siloed from its decision to make a $50 million investment in Sentry before the joint venture was formed. The time periods and decision makers clearly overlap between the joint venture formation and Defendant's investment in Sentry; the two are inextricably linked. Defendant and its predecessors' contacts with the forum are precisely the type of minimum contacts that courts have found to establish the exercise of specific personal jurisdiction.

The Trustee's incorporation by reference of the Fairfield Amended Complaint is appropriate under Rule 10(c) and sufficient to satisfy Rule 8's "short and plain statement" requirement.[2] Such incorporation represents a practical method for the Trustee to plead avoidance of the relevant transfers, and Defendant can respond to the incorporation by reference allegation just as they would any other paragraph in the Complaint. In any event, this Court may take judicial notice of the operative Second Amended Complaint and its opinion in *Picard v. Fairfield*

---

[1] For example, the Trustee is in possession of documents reflecting transfers to Defendant in Defendant's name in 2005. *See* Beckerlegge Decl. Ex.5. Documents also reveal that Defendant worked with FGG to establish a joint venture to distribute FGG products in Asia.

[2] After the Trustee filed his Complaint against Defendant, the Trustee filed a Second Amended Complaint (the "Fairfield SAC") against the Fairfield Greenwich Group defendants (collectively, "Fairfield"). *See* Second Am. Comp., *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286.

*Investment Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr.

S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*"), in which the Court held that the Trustee plausibly

alleged the avoidability of the Sentry transfers.

The Trustee has plausibly alleged Sentry's actual knowledge of fraud, and therefore under

controlling law, the safe harbor for settlement payments or transfers in connection with securities

contracts under Section 546(e) is inapplicable and does not bar recovery of subsequent transfers

from Defendant. The plain language of the statute and precedent in this liquidation proceeding

establish that Section 546(e) does not independently safe harbor the recovery of avoidable

fraudulent transfers from a subsequent transferee.

Finally, the Trustee has plausibly alleged that Defendant received stolen customer property

under Section 550(a) by outlining the relevant pathways through which customer property was

transferred from BLMIS to Sentry and subsequently to Defendant. The Trustee has also alleged

the necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer

Defendant received. At this stage of the litigation, nothing more is required. Defendant's

arguments that the Trustee must trace and tie any initial transfer to any subsequent transfer at the

pleading stage or that the Trustee's claims are implausible under some fact-bound and undisclosed

tracing methodology are incorrect and inappropriate on a motion to dismiss.

The Trustee respectfully requests that the Court deny Defendant's Motion.

## STATEMENT OF FACTS

**I.      THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS**

Madoff founded and operated BLMIS from New York until its collapse in 2008. *See*

Complaint ("Compl.") ¶ 23. BLMIS had three principal business units: (i) a proprietary trading

business; (ii) a market-making business; and (iii) an investment advisory business (the "IA

Business"). *Id*. For its IA Business customers, BLMIS purportedly executed a split-strike

conversion strategy (the "SSC Strategy"), which involved (a) investing in a basket of common stocks from the Standard & Poor's 100 Index, (b) buying put options and selling call options to hedge against price changes in the underlying basket of stocks, and (c) purchasing U.S. treasury bills when the money was out of the market. *Id*. ¶¶ 24-25. In reality, BLMIS operated a Ponzi scheme through its IA Business. *Id*. ¶¶ 16-17; 26-33. On December 11, 2008, Madoff's fraud was publicly revealed, and he was arrested for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. *Id*. ¶ 11.

The extent of damage Madoff caused was made possible by BLMIS "feeder funds"—large investment funds created for the express purpose of funneling investors' funds into BLMIS. *See Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171, 179 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, No. 21-1059, 2022 WL 585915 (U.S. Feb. 28, 2022) ("*Citibank*"). Defendant invested in Sentry, which it knew was a Madoff feeder fund. *See* Compl. ¶¶ 7,34.

## II.   <u>FAIRFIELD SENTRY</u>

Sentry was managed by FGG, a *de facto* partnership with its principal place of business in New York. *See* Compl. ¶ 7; *Fairfield Inv. Fund*, 2021 WL 3477479, at *9. Sentry was a U.S. dollar-denominated fund that invested 95% of its assets with BLMIS. *Id*. ¶ 2. FGG conducted key operations of Sentry from its New York office. For example, Sentry subscriptions were approved or rejected by a New York-based FGG partner. FGG's Finance Group, which was responsible for processing subscriptions and redemptions, performing due diligence, communicating with investors, and providing investor support, was also located in New York.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Sentry and related defendants to avoid and recover fraudulent transfers of customer property in the amount of approximately $3 billion. *Id*. ¶ 35. In 2011, the Trustee settled with Sentry and others. *Id*. ¶ 40. As

part of the settlement, Sentry consented to a judgment in the amount of $3.054 billion but repaid

only $70 million to the BLMIS estate. *Id*. The Trustee then commenced a number of adversary

proceedings to recover the approximately $3 billion in missing customer property, including the

above-captioned matter against Defendant.

## III.    <u>THE DEFENDANT AND FAIRFIELD SENTRY</u>

Defendant Lion Global is a Singapore public limited company operating as a manager of

investment funds with its principal place of business in Singapore. Lion Global is a member of the

Oversea-Chinese Banking Corporation Limited Group ("OCBC"). Beckerlegge Decl. Ex. 17. It is

one of the largest asset management companies in Southeast Asia. In 1986, OCBC established an

asset management division called OCBC-SIMBL Investment Management Limited, which was

then renamed OCBC Asset Management in 1989. In 1996, Great Eastern Holdings ("Great

Eastern"), a subsidiary of OCBC, formed an asset management division named Straits Lion. *Id*. In

2005, OCBC Asset Management and Straits Lion merged to form Lion Capital. *Id.* Lion Capital

was then renamed Lion Global.[3] *Id. see also* Beckerlegge Decl. Ex. 1. Lion Global is 70% owned

by Great Eastern and 30% owned by Orient Holdings Private Limited, another wholly owned

subsidiary of OCBC. Lion Global is the current successor to Straits Lion and Lion Capital all under

the "Lion" family of entities umbrella.[4]

In 2003, FGG and Defendant's predecessor, Straits Lion, began work on a joint venture

named Fairfield Straits Lion Asset Management (the "Joint Venture"), a hedge fund management

and distribution platform in Asia for FGG-managed funds, including Sentry. FGG owned 35% of

the Joint Venture and Straits Lion owned 65%. FGG served as the investment manager for the

---

[3] There is a discrepancy as to when Lion Global was formed which is discussed in detail *infra* Section II.
[4] For the purposes of this memorandum, the "Lion" family of entities consists of Straits Lion, Lion Capital and Lion
Global.

Joint Venture, and Straits Lion as the investment adviser. In 2005, following the creation of Lion

Capital, the Joint Venture was renamed Lion Fairfield. The Straits Lion personnel who initiated

and cultivated the Fairfield relationship, and had knowledge of Sentry operations, continued in

various roles within the Lion family of entities, following the creation of Joint Venture and Lion

Capital. Beckerlegge Decl. Exs. 6-7.

Straits Lion, Defendant's predecessor, subscribed $50 million into Sentry in March and

April of 2005. *Id.*, 3-4. Shortly thereafter, in July of 2005, the entire investment was redeemed and

$50,583,443 in transfers were issued from Sentry to Lion Global. Compl. ¶¶ 41-43; *see also*

Compl. Ex. D; Beckerlegge Decl. Ex. 5.

## ARGUMENT

## I.   LEGAL STANDARD

When considering motions to dismiss under 12(b)(6) the Federal Rules of Civil Procedure

applicable to an adversary proceeding under Fed. R. Bankr. P. 7012, "the Court must liberally

construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable

inferences" in the Trustee's favor. *In re J.P. Jeanneret Assoc., Inc.*, 769 F. Supp. 2d 340, 353

(S.D.N.Y. Jan. 31, 2011) (*citing Cargo Partner AG v Albatrons, Inc.*, 352 F.3d 41, 44 (2d Cir.

2003); *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007)). To survive the motion to dismiss, the

pleading must contain a "short and plain statement of the claim showing that the pleader is entitled

to relief." Rule 8(a)(2). At the pleading stage, the allegations need only meet the "plausibility"

standard, such that they "'nudge[] [the] claims' … 'across the line from conceivable to plausible.'"

*Ashcroft v. Iqbal*, 556 U.S. 552, 680 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)). A claim is facially plausible where "the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678 (citation omitted).

The Complaint here sets forth in full the elements of the Trustee's claims, pleading Defendant's receipt of subsequent transfers of stolen customer property and the grounds upon which the Trustee seeks to recover such transfers made to Defendant. Thus, dismissal of the Complaint at this juncture is inappropriate. *See Picard v. Merkin (In re BLMIS)*, 440 B.R. 243, 254-71, 273 (Bankr. S.D.N.Y. 2010).

## II.    LION GLOBAL IS THE PROPER PARTY

This matter involves various entities falling under the "Lion" family umbrella. As stated above, OCBC Asset Management and Straits Lion merged in 2005 to form Lion Capital. Then, Lion Capital was renamed Lion Global. There is a discrepancy as to what year Lion Global was created. Pursuant to the website of Lion Global's parent company, OCBC, Lion Global was formed in 2005. However, this is contrary to the information provided by Defendant in support of its Motion stating that Lion Global was formed in 2008.[5] *See* Tan Decl. at ¶8. This is a question of fact.

Despite the complex evolution of the various "Lion" entities on paper, in practice, there was substantial continuity of leadership and management. Personnel from Straits Lion and Lion Capital continued in their roles through the evolution of the "Lion" entities and the formation of the Joint Venture. For example, Daniel Chan was named the CEO of Straits Lion in 2004 and continued as the CEO for Lion Capital after the OCBC-Straits Lion merger. Mr. Chan remained as the CEO of Lion Capital and Lion Global until he left the company in 2010. Beckerlegge Decl. Ex. 7. Other personnel from the "Lion" entities also worked in various roles at different entities.

---

[5] Defendant also asserts that it was not served with Summons and Complaint in the United States. *See* Tan Decl. at ¶5. However, Defendant's counsel accepted service on November 1, 2011. *See Picard v. Lion Global Investors Limited* Adv. Pro. No. 11-02540, Stipulation Extending Time to Respond and Adjourning the Pre-Trial Conference, ECF No. 7 (Bankr. S.D.N.Y. filed Nov. 1, 2011) (counsel accepted service of Summons and Complaint and waived any defenses based on insufficiency of process or insufficiency of service of process of the Summons and Complaint on behalf of the Defendant).

For instance, Mr. Foo Cheong Tong served as a Vice President at Straits Lion and then upon the formation of the Joint Venture he became the CEO and COO of Lion Fairfield. *Id.,* Ex. 6.

Defendant baldly asserts that it "did not receive, either as principal or agent, the alleged transfers Plaintiff seeks to recover in this adversary proceeding." Mot. at 10. Nevertheless, the Trustee has records in its possession indicating otherwise. Beckerlegge Decl. Ex. 5. These statements show that six redemption payments were transferred from Sentry to "Lion Global Investors" totaling $50,583,443 on or about July 15, 2005. *Id.* The records also include a street address and email address associated with Defendant.[6] *Id.,* Exs. 8-9;18.

The Trustee is also in possession of records establishing that Straits Lion – Defendant's predecessor – made subscription payments into Sentry and the documents identify the date, account name, and the amount of each subscription. *Id.*, Exs. 3-4. These records reflect that Straits Lion placed a total of $50 million into Sentry in multiple subscription payments between March and April of 2005. *Id.* At the time the suit was filed, the Trustee alleged in good faith that Lion Global is the proper defendant based on the information available to him. And Defendant has not argued that it is not a successor in interest to Straits Lion. Thus, any purported conflicting questions of fact that Defendant raises will need to be resolved during discovery.

## III.    THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only show a *prima facie* case that personal jurisdiction exists. *Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013). At this early stage, a *prima facie* showing of jurisdiction "may be established solely by allegations." *Id.*, at 84-85 ("prior to discovery, a plaintiff challenged by a

---

[6] The address of "One George Street #08-01 Singapore 049145" was also used by Lion Global's predecessor entities, Lion Capital and Straits Lion. The email suffix "@lookforlion" is associated with Lion Global. *See* Beckerlegge Decl. Exs. 8-9;18.

jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction."). A plaintiff also may establish a *prima facie* case of jurisdiction through affidavits and supporting materials that contain averments of facts outside the pleadings.[7] *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010). The pleadings and affidavits are to be construed "in the light most favorable to the plaintiffs, resolving all doubts in their favor." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)).

A court may exercise general or specific personal jurisdiction based on the nature of the defendant's contacts with the forum. *See Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 483 (S.D.N.Y. 2001). Specific jurisdiction, which is at issue in this case, exists where the defendant purposely directs its activities into the forum and the underlying cause of action arises out of or relates to those activities. *Picard v. Fairfield Greenwich Group (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021) (citing *Cromer*, 137 F. Supp. 2d at 473).

The specific jurisdiction analysis is a two-step inquiry. First, the court assesses whether the defendant purposefully established "minimum contacts" in the forum, such that the defendant purposefully availed itself of the privilege of conducting activities within the forum. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Burger King v. Rudzewicz*, 471 U.S. 462, 475–76 (1985). Activity which took place outside the forum and even a "single transaction" with the forum can constitute purposeful availment. *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106,

---

[7] Courts may consider extrinsic material in deciding a motion to dismiss under Rule 12(b)(2). *See Picard v. Montpelier Int'l Ltd.*, Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435, at *3 (Bankr. S.D.N.Y. Oct. 27, 2021) ("To meet this burden at the pleading stage, the plaintiff need only make 'a prima facie showing of jurisdiction through its own affidavits and supporting materials.'") (quoting *Bissonnette v. Podlaski*, 138 F. Supp. 3d 616, 621-22 (S.D.N.Y. 2015)); *see also Cohmad Sec. Corp. (In re Bernard L. Madoff Investment Sec., LLC)*, 418 B.R. 75, 79 (Bankr. S.D.N.Y. 2009) ("To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a plaintiff need only make a prima facie showing 'through its own affidavits and supporting materials' that personal jurisdiction exists.") (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)).

117 (Bankr. S.D.N.Y. 2011) (citing *McGee v. Int'l Life Ins. Co.*, 335 U.S. 220, 223 (1957))

(internal citation omitted). Moreover, minimum contacts may be found when a "'defendant's

allegedly culpable conduct involves at least in part financial transactions that touch the forum.'"

*In re Fairfield Sentry Ltd.*, 627 B.R. at 566 (quoting *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,

916 F.3d 143, 151 (2d Cir. 2019)).

Second, the court determines if the exercise of personal jurisdiction is "reasonable" such

that doing so will not offend the traditional notions of "fair play and substantial justice." *Int'l Shoe*,

326 U.S. at 320.To determine whether jurisdiction is reasonable, courts consider the following

factors:

> (1) the burden that the exercise of jurisdiction will impose on the defendant;
> (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's
> interest in obtaining convenient and effective relief; (4) the interstate
> judicial system's interest in obtaining the most effective resolution of the
> controversy; and (5) the shared interest of the states in furthering social
> policies.

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (citation omitted).

Where the plaintiff has alleged purposeful availment, however, the burden shifts to the

defendant to present a "compelling case" that jurisdiction would be unreasonable. *In re Fairfield

Sentry Ltd.*, 627 B.R. at 567 (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 472-73 (1985)).

Defendant repeatedly asserts throughout the Motion that the Trustee's allegations are "conclusory"

and therefore should be dismissed. But as noted above, a plaintiff may establish a *prima facie* case

of jurisdiction through averments outside the pleadings, and all pleadings and affidavits are to be

construed "in light most favorable to the plaintiffs, resolving all doubts in their favor." *Chloé*, 616

F.3d at 163; *S. New England Tel. Co.*, 624 F.3d at 138.

In determining whether a defendant's contacts establish personal jurisdiction, the court

must look at "the totality of the circumstances" rather than analyze each contact in isolation. *See*

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996); *see also*

*Chloé*, 616 F.3d at 164 (analyzing totality of defendants' contacts to determine jurisdiction under

New York's long-arm statute and the Due Process Clause); *Grand River Enters. Six Nations, Ltd.*

*v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005) ("[T]he *totality of all defendant's contacts* with the

forum state must indicate that the exercise of jurisdiction would be proper.") (emphasis in

original). In this case, the totality of the circumstances demonstrates that Defendant and its

predecessors purposefully availed themselves of the protections and privileges of conducting

business in New York and that the exercise of personal jurisdiction over Defendant is reasonable.

### A.    Defendant Purposefully Availed Itself of The Laws and Privileges of Conducting Business In New York By Investing In Sentry

Defendant and its predecessor entities had numerous contacts with New York that firmly

establish this Court's jurisdiction. Defendant and its predecessors (1) purposefully invested in

Sentry which it knew was managed and custodied by BLMIS in New York; (2) knowingly directed

contacts into the forum through communications and visits to New York with respect to its

investment and business activities; and (3) maintained a long working relationship with FGG

through its formation of the Joint Venture. Many of these contacts independently establish

jurisdiction but, in their totality, these contacts conclusively establish that the Defendant and its

predecessors purposefully directed their activities to New York. S*ee Esso Exploration & Prod.*

*Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 397 F. Supp. 3d 323, 344 (S.D.N.Y. 2019) ("When

all [defendant]'s Agreement-related contacts are considered together, it is clear [the defendant]

purposely availed itself of the forum.").

### B.    Defendant's Investment in BLMIS through Fairfield Sentry

Straits Lion's intentional investment with BLMIS in New York through a known BLMIS

feeder fund establishes personal jurisdiction. The Second Circuit recognized that when subsequent

transfer investors, like Straits Lion, chose to invest with "feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going." *In re Picard, Trustee for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 105 (2d Cir. 2019) ("*ET Decision*"); *Picard v. Bureau of Labor Ins. (In re Bernard L. Madoff)*, 480 B.R. 501, 516-18 (Bankr. S.D.N.Y. 2012) ("*BLI*") (defendant "purposefully availed itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in [BLMIS feeder fund] Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market"). Regardless of Defendant and its predecessors' other contacts supporting jurisdiction, the deliberate targeting of BLMIS and the New York securities market—through entities expressly constituted for that purpose—is dispositive. *Maxam*, 460 B.R. at 116–20 (finding jurisdiction where defendant knew and intended that funds invested with BLMIS feeder fund would be sent to BLMIS in New York for investment).

In addition, under New York law, a successor-in-interest can "step into the jurisdictional shoes" of its predecessor. *In re Motors Liquidation Co*, 565 B.R. 275, 287 (Bankr. S.D.N.Y. 2017). "The general rule . . . is that the successor-in-interest may be subject to jurisdiction based on the activities of its predecessor" in New York. *Id.* (quoting *Colson Servs. Corp. v. Bank of Baltimore*, 712 F.Supp. 28, 31 (S.D.N.Y. 1989)). Therefore, Defendant's predecessors' activities and contacts with New York can be attributed to Lion Global and used to assert personal jurisdiction over Lion Global by this Court.

a.       *BLI* Establishes this Court's Jurisdiction Over the Defendant

This Court has already concluded that investors who intentionally invested in BLMIS through Sentry are subject to personal jurisdiction in *BLI*. 480 B.R. at 516–18. In *BLI*, the Trustee's suit was "based upon [the subsequent transferee's] investment of tens of millions of dollars in Fairfield Sentry with the specific goal of having funds invested in BLMIS in New York, with intent

12

to profit therefrom." 480 B.R. at 506. There, as here, the subsequent transferee argued that the foreseeability of its investment ending up in a BLMIS account was insufficient to support personal jurisdiction. *Id.* at n.14. Not only did the Court reject this argument, Judge Lifland called it "disingenuous," explaining:

> BLI's investments in Fairfield Sentry did not merely "end up" in an account at BLMIS as a result of happenstance or coincidence. Rather, BLI purposefully availed itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market.

*Id.* at 517; *see also Picard v. JPMorgan Chase & Co. (In re BLMIS),* Adv. Pro. No. 08-99000 (SMB), 2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014) (noting courts in this liquidation have already "confirmed that defendants who invested directly or indirectly with BLMIS and received payments from BLMIS as initial transferees or as subsequent transferees of those initial transferees were subject to the Court's personal jurisdiction"). As framed by this Court, "BLI intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom." *BLI*, 480 B.R. at 506.

Because Defendant is similarly situated to the defendant in *BLI* with respect to the fundamental purpose of the investment, *BLI* is controlling and resolves Defendant's personal jurisdiction defense without the need for inquiry into its additional New York contacts.[8] In fact, the evidence that Defendant purposefully targeted the New York securities market is even stronger here.

Defendant cannot seriously argue that it was unaware that its investment in Sentry would be invested with BLMIS in New York. Mot. at 11. The work done and knowledge gained in

---

[8] Despite *BLI* being directly on point, Defendant fails to address it in the sixteen pages dedicated to personal jurisdiction in its brief.

negotiating and forming the Joint Venture cannot be separated from the investment. All connections tie Defendant and its predecessor Straits Lion to New York. For instance, during the negotiations, FGG sent Mr. Foo Cheong Tong Sentry's Private Placement Memorandum ("PPM"). Beckerlegge Decl. Ex. 11. The PPM explained that "BLM[IS] has approximately 95% of [Fairfield Sentry's] assets under custody," and that Sentry allocated the predominant portion of its assets to BLMIS's SSC Strategy. *Id*. The PPM also explains how BLMIS purportedly executed the SSC Strategy. *Id*. Mr. Foo Cheong Tong also received Sentry's tear sheets and semi-annual updates from FGG. *Id., Exs.* 12-13.

b.    Walden Does Not Save the Defendant from this Court's Jurisdiction

Defendant's attempt to draw the Court's attention to *Walden* and not address the *BLI* decision is an attempt to frame the jurisdictional analysis here through the false lens of "foreseeability." *Walden v. Fiore*, 571 U.S. 277 (2014); *see* Mot. at 13. In fact, *Walden* has no application here. In a case addressing the foreseeability of an injury arising within a forum state based on tortious conduct outside that state, the Court in *Walden* found that a Georgia police officer could not be sued in Nevada for an unlawful seizure of money in Georgia merely because he knew the plaintiffs resided in Nevada. *Walden*, 571 U.S. at 288-91. *Walden* simply reaffirms the well-established principle that personal jurisdiction cannot be premised solely on a plaintiff's unilateral contacts with the forum state. *See id*. at 284.

Defendant also misinterprets *Walden* to the extent it argues, in effect, that Defendant's connections to the forum must be viewed in a vacuum as opposed to being based on its relationships with BLMIS and Sentry. *Walden* recognized that "a defendant's contacts with the Forum State may be intertwined with his transactions or interactions with the plaintiff or other parties." *Walden*, 571 U.S. at 286. Here, clearly the Joint Venture negotiations and investment in Sentry are intertwined with the redemptions that are the subject of this action.

Defendant also relies on *Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, 543 B.R. 127 (Bankr. S.D.N.Y. 2016) asserting a "company's jurisdictional contacts will not be attributed to a shareholder unless the company was an alter ego of the shareholder or acted as its agent." Mot. at 13-14. The Trustee is not alleging jurisdiction exists due to alter ego liability, imputation or even through happenstance. Here, Straits Lion knowingly and purposefully directed activity into New York and is therefore distinguishable from a shareholder who is without knowledge of a company's U.S. contacts. Defendant and its predecessors actively sought to capitalize on BLMIS's purported trading activities in New York by investing in BLMIS through Sentry.

Moreover, the fact that a defendant may have projected itself into the forum from afar changes nothing when done so purposefully. "A defendant need not physically enter New York State in order to transact business, so long as the defendant's activities here were purposeful." *Licci ex rel. Licci v. Lebanese Can. Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012) (citations and quotation marks omitted); *see also BLI*, 480 B.R. at 516 (noting that "[t]he defendant's activity need not have taken place within the forum" (citation and quotation marks omitted)). Of course here, the Defendant did enter the forum state.

          c.     <u>Defendant's Direct Contacts with New York</u>

Defendant and its predecessors directed activity into the forum both through their direct contacts with New York and their contacts with BLMIS and FGG in New York.[9] By investing in BLMIS through Sentry, the Defendant and its predecessors knowingly transacted business in New

---

[9] Defendant also cites to cases where the Court is analyzing personal jurisdiction regarding CPLR § 302(a)(1) and examining the acts performed by a Plaintiff under its obligation to an agreement in New York. *See* Mot. at 14 n.8. The courts in *Giuliano v. Barch*, No. 16-cv-0859 (NSR), 2017 WL 1234042, at *7 (S.D.N.Y. Mar. 31, 2017); *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 327 (S.D.N.Y. 2015); *Roper Starch Worldwide, Inc. v. Reymer & Assocs., Inc.*, 2 F. Supp. 2d 470, 474 (S.D.N.Y. 1998); and *SunLight Gen. Cap. LLC v. CJS Invs. Inc.*, 114 A.D.3d 521, 522, 981 N.Y.S.2d 390 (2014) found this argument to be unavailing. The appropriate focus of an inquiry under CPLR § 302(a)(1) is on what the non-domiciliary defendant did in New York not on what the plaintiffs did. *Int'l Customs Assocs., Inc. v. Ford Motor Co.*, 893 F. Supp. 1251, 1261 (S.D.N.Y. 1995), aff'd, 201 F.3d 431 (2d Cir. 1999). Defendant's reliance on these cases is misplaced.

York. When Straits Lion first invested in Sentry, it was aware that FGG conducted key operations from its New York office. Compl. ¶7. Defendant's withdrawal of its funds from Sentry, caused the redemption payments to be wired through Sentry's correspondent bank account in New York as well. Under similar facts, this Court in *BNP* found jurisdiction over an investor defendant based on the U.S. contacts inherent in doing business with the Tremont funds. *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) ("*BNP*") (finding prima facie showing of jurisdiction "over any fraudulent transfer claims resulting from redemptions by the Defendants from their accounts with the Tremont Funds").

Defendant and its predecessors have been doing business with FGG in New York since 2003. They engaged in lengthy negotiations with FGG while working together to form the Joint Venture. During the negotiations, Straits Lion decided to invest $50 million in Sentry. Beckerlegge Decl. Exs. 3-4. Straits Lion, through its personnel traveled to New York in July of 2004 to meet with FGG at FGG's New York headquarters. Beckerlegge Decl. Ex. 10. Straits Lion participated in twelve days' worth of meetings with FGG with multiple Straits Lion executives in attendance. *Id*. Per the agenda, some of the discussions included investment opportunities, due diligence, and risk management. *Id*. FGG and Straits Lion personnel spent a significant amount of time together. *See Druck Corp. v. Macro Fund (U.S.) Ltd.*, 102 F. App'x 192, 193–94 (2d Cir. 2004) (finding one or two meetings concerning a "fund's investment strategy" to be "substantive and substantial" enough to support jurisdiction even though no investment was immediately forthcoming); *Burlington Indus., Inc. v. Salem Int'l Co.*, 645 F. Supp. 872, 874 (S.D.N.Y. 1986) (finding jurisdiction where defendant attended two meetings in New York to conduct business and reach an agreement).

Defendant's predecessors regularly communicated with FGG New York personnel to discuss the substantial investment in Sentry and development of the Joint Venture. Mr. Tong Foo Cheong of Straits Lion communicated with Mr. Rob Blum of FGG in New York to discuss an allocation study, and he acknowledged in the email that there was an "[a]llocation to Sentry, $50 million has been invested." Beckerlegge Decl. Ex.14. There were also additional communications between Straits Lion and FGG personnel in New York. On May 20, 2005, Mr. Peter Heng of Straits Lion reached out via email to Mr. Richard Landsberger and Mr. Blum of FGG to request the risk report for Sentry and Fairfield Investment Funds. *Id.,* Ex.15. Then, Mr. Heng reached out in a separate email requesting a conference call with FGG to further discuss the risk reports.[10] *Id.,* Ex.16. All of these communications were during the pendency of the Sentry investment.

Defendant relies on *McKee Electric Co. v. Rauland-Borg. Corp.*, a factually distinguishable case, for the proposition that a single meeting in New York is inadequate to establish jurisdiction. 20 N.Y.2d 377 (1967); *see* Mot. at 20. Jurisdiction was not found in *McKee* because such contacts were unrelated to the underlying cause of action, not for lack of contacts. *See id*. at 382–83. Defendant's reliance on a similarly distinguishable case in *SPV OSUS Ltd. v. UBS AG* is also misplaced.[11] 114 F. Supp. 3d 161, 170 (S.D.N.Y. 2015), aff'd, 882 F.3d 333 (2d Cir. 2018). There the court dismissed the action for lack of personal jurisdiction noting that its "scant" contacts with the forum were beside the point because plaintiffs' claims did not arise out

---

[10] Defendant cites to *Int'l Customs Assocs. v. Ford Motor Co.*, 893 F. Supp. 1251, 1261(S.D.N.Y. 1995); *RBC Cap. Mkts., LLC v. Garcia Hamilton & Assocs., LP*, 2021 WL 230194, at *4 (S.D.N.Y. Jan. 22, 2021); and *Metals Alliance Corp. v. Beshay*, 1998 WL 811788, at *2 (S.D.N.Y. Nov. 19, 1998) for the proposition that telephone calls and correspondences sent into New York by a non-domiciliary defendant alone are not enough to sustain jurisdiction over a defendant. These facts are distinguishable. Here, the Trustee is not alleging that telephone calls and correspondences alone support a finding of jurisdiction. Instead, the Trustee argues that the totality of circumstances will allow the court to find jurisdiction over the Defendant. *Chloé* 616 F.3d at 164.

[11] Defendant's reliance on *SPV*, which found no jurisdiction because defendants' contacts did not cause the injury, is suspect following the Supreme Court's decision in *Ford Motor*, which held that causation is not a prerequisite for jurisdiction. 141 S. Ct. at 1026–30.

17

of defendant's alleged contacts with New York. *Id*. at 170–71. The facts in each of the above cases are distinguishable from the instant matter where the Trustee's claim arises out of and relate to Defendant and its predecessors' contacts with New York.

Defendant and its predecessors purposefully availed themselves of the privileges and laws of New York when investing in BLMIS through Sentry as well as through the formation of the Joint Venture. Furthermore, Defendant's and its predecessors' contacts with New York and FGG for the purposes of investing and transacting business are sufficient bases to establish minimum contacts and personal jurisdiction.

**C.    The Exercise of Personal Jurisdiction Over Defendant Is Reasonable**

Defendant fails to present a compelling reason why jurisdiction would be unreasonable. "The reasonableness inquiry requires the court to determine whether the assertion of personal jurisdiction . . . comports with 'traditional notions of fair play and substantial justice' under the circumstances of the particular case." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016). Where a plaintiff has made a threshold showing of minimum contacts, a defendant must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Chloé*, 616 F.3d at 165. Indeed, this Court has found "it would be a 'rare' case where the defendant's minimum contacts with the forum support the exercise of personal jurisdiction but it is unreasonable to force the defendant to defend the action in that forum." *BNP*, 594 B.R. at 188.

Defendant relies on *Ellicott Mach. Corp. v. John Holland Party, Ltd.*, 995 F.2d 474, 478-79 (4th Cir. 1993) in which the facts are readily distinguishable from the facts set forth here. *See* Mot. at 24. The *Ellicott* case dealt with a corporation whose only contacts were with a U.S. corporation and the Maryland forum which resulted from a single, short-term contract performed abroad. Nearly all aspects of the contract took place in Australia and principally affected Australian

interests. Moreover, the contract was not performed in Maryland, nor did it result in a long-standing business relationship. Here, Defendant's entire financial investment was centered in the United States, specifically in New York, and New York courts are capable of granting relief.

This matter is not a "rare" case and the burden on Defendant is minimal. *See Maxam*, 460 B.R. at 119 (finding New York counsel and conveniences of modern communication and transportation minimize any such burden). Further, the United States has a strong interest in applying U.S. law in the SIPA liquidation proceeding. *See id*.; *see also ET Decision*, 917 F.3d at 103 (noting "compelling interest in allowing domestic estates to recover fraudulently transferred property"). And the Trustee has a strong interest in litigating in the United States. *See Maxam*, 460 B.R. at 119. Accordingly, this Court's exercise of jurisdiction over Defendant is more than reasonable.

### D.    In The Alternative, The Trustee Is Entitled To Jurisdictional Discovery

If this Court finds that the Trustee has not made a *prima facie* showing of jurisdiction, the Trustee respectfully requests jurisdictional discovery. Such discovery may be authorized where a plaintiff has made "a threshold showing" that there is some basis for jurisdiction. *Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618 (KMW)(HBP), 2009 WL 3817590, at *4 (S.D.N.Y. Nov. 16, 2009). The Trustee has shown that Defendant's predecessors knowingly directed funds to be invested with BLMIS through a BLMIS feeder fund, Sentry, received redemptions from Sentry's New York correspondent bank account totaling $50,583,443, visited FGG's New York offices, communicated with FGG New York personnel regarding Sentry and the $50 million investment, and transacted business in the State of New York through the formation of the Joint Venture with FGG. At a minimum, these facts establish a "threshold showing" of jurisdiction. *Kiobel*, 2009 WL 3817590, at *6. Defendant does raise issues of fact as to corporate structure and correspondent bank accounts requiring discovery. The Trustee does not concede the Defendant's argument that

Defendant's New York banking contacts as well as subscription agreements are insufficient for purposes of establishing jurisdiction. If anything, as with a number of factual issues in the matter, such argument requires discovery.

## IV.    THE COMPLAINT SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE SENTRY INITIAL TRANSFERS

Defendant argues that the Trustee's incorporation of the Fairfield Amended Complaint against Sentry violates Rule 8(a)(2)'s requirement to include a "short and plain statement" showing the Trustee is entitled to relief.[12] Mot. at 26. However, there is no doubt that the Trustee may incorporate by reference a complaint filed in a different adversary proceeding within the same SIPA liquidation proceeding. *See Am. Casein Co. v. Geiger (In re Geiger),* 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010) (allowing incorporation by reference under Rule 10(c) of pleadings in different adversary proceeding within the same liquidation).

This Court may also take judicial notice of the operative Fairfield Second Amended Complaint and its prior decision holding that the complaint sufficiently alleges the avoidability of the initial transfers from BLMIS. *See Fairfield Inv. Fund*, 2021 WL 3477479. On a motion to dismiss, "a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case sub judice." *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011). "Included among such matters are decisions in prior lawsuits." *DeMasi v. Benefico*, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008). Finally, the fact that the Fairfield SAC was filed after this Complaint against Defendant is of no moment. *See Rothman v. Gregor*, 220 F.3d 81, 91–92 (2d Cir. 2000) (noticing later filed complaint in related proceeding).

---

[12] The amended Fairfield Complaint was amended after the filing of the Complaint in this adversary proceeding. The operative complaint in that action is the Fairfield ( "SAC").

A.    **The Incorporated Material Complies With Federal Rules of Civil Procedure
10 and 8**

Rule 10(c) is intended to "facilitate pleadings that are 'short, concise, and free of
unwarranted repetition,' as well as to promote 'convenience' in pleading." *Morrison v. Off. of the
U.S. Tr. (In re Morrison)*, 375 B.R. 179, 193 (Bankr. W.D. Pa. 2007) (quoting 5A Charles Alan
Wright & Arthur R. Miller, Federal Practice & Procedure 3d ("Wright & Miller") § 1326 (3d ed.
2007)). In the bankruptcy context, all matters are under the umbrella of one liquidation and are
considered to be one proceeding for the purposes of Rule 10(c). *Geiger*, 446 B.R. at 679. It is no
different in this recovery action within the SIPA BLMIS liquidation proceeding. Even if the Court
were to find that the adversary proceedings are not one action for purposes of Rule 10(c), the Court
still can permit incorporation by reference. The Southern District and other federal courts have
permitted wholesale incorporation by reference of separate actions in appropriate circumstances.
*See Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 323 n.5 (S.D.N.Y. 2007); *Mass.
Mut. Life Ins. Co. v. Residential Funding Co.*, LLC, 843 F. Supp. 2d 191, 214 n.15 (D. Mass.
2012).[13]

Here, the Trustee references only one other document, the initial transfer complaint, and
the incorporation is explicit and straightforward, with its purpose obvious. *See* Wright & Miller §
1326 ("If the incorporation is clear, less emphasis need be placed on the source of the incorporated

---

[13] The cases cited by Defendant are inapposite because in those cases, unlike in this one, plaintiffs were incorporating
by reference pleadings in separate actions in an attempt to add new claims. *See, e.g., United States v. Int'l
Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 461-66 (E.D.N.Y. 2007) (holding the government improperly
incorporated by reference various pleadings from numerous prior civil and criminal actions to plead new claims not
otherwise alleged, and where complaint did not expressly incorporate the pleadings); *Davis v. Bifani*, No. 07-cv-
00122-MEH-BNB, 2007 WL 1216518, at *1 (D. Colo. Apr. 24, 2007) (holding plaintiff could not incorporate by
reference new claims from state-court action that were not alleged in the federal-court complaint); *Nycomed U.S. Inc.
v. Glenmark Generics Ltd.*, No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803, at *4 (E.D.N.Y. Mar. 26, 2010)
(finding incorporation by reference of "subject matter" of separate pleading "alluding to" evidence of willful
infringement was improper for purposes of stating new willful infringement claim). Defendant also cites to
*Muhammad v. Bethel-Muhammad*, in which the information plaintiffs sought to incorporate was unidentified
"evidence" submitted in another action separate and apart from any pleadings. No. CIV.A. 11-0690-WS-B, 2012 WL
1854315, at *3 n.5 (S.D. Ala. May 21, 2012).

material."); *Whitaker Sec., LLC v. Rosenfeld (In re Rosenfeld)*, 543 B.R. 60, 66 (Bankr. S.D.N.Y. 2015). Defendant cannot seriously argue that the Trustee's incorporation of the Fairfield Complaint renders the allegations confusing. Mot. at 27. The Trustee's incorporation provides notice of avoidability of initial transfers in a manner that is clear and avoids repetition. *Sherman*, 528 F. Supp. 2d at 323 n.5 (citing Wright & Miller § 1326); Wright & Miller § 1326 n.1 ("Adoption by reference avoids overly long or complicated pleadings").

Despite Defendant's protestations, the Trustee's allegations contain a "short and plain statement" showing why the Trustee is entitled to relief. The Trustee specifically alleges Defendant's liability under Section 550(a) and only incorporates the Fairfield Complaint—as part of one paragraph—in pleading the avoidability of the initial transfers. This places no undue burden on Defendant, as Defendant can either admit the substance of the avoidability of the initial transfers, deny them, or respond that they do not have sufficient information to admit or deny. Repleading all initial transfer allegations would unnecessarily add countless pages to the Complaint and is unnecessary in pleading recovery under Section 550 and inconsistent with the purpose of Rule 8. *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 501 B.R. 26, 36 (S.D.N.Y. Oct. 28, 2013) (Rakoff, J.).

Finally, as noted above, this Court may take judicial notice of the Fairfield SAC as well as its holding that the Trustee sufficiently alleged the avoidability of the initial transfers. *See Fairfield Inv. Fund*, 2021 WL 3477479.

B.     **In the Alternative, the Trustee Should Be Afforded the Opportunity to Replead**

Should the Court accept Defendant's argument and not take judicial notice of the avoidability of the initial transfers at issue, the Trustee should be granted leave to replead. *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006). Rule 15(a) of the Federal Rules

of Civil Procedure, made applicable by Bankruptcy Rule 7015, provides that "[t]he court should freely give leave [to amend] when justice so requires." The Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)." *Porat*, 464 F.3d at 276. The Trustee should be afforded his chance to have his claims tested on the merits, and not on the basis of pleading technicalities. *See Foman v. Davis*, 371 U.S. 178, 181-82 (1962).

## V.    SECTION 546(E) DOES NOT BAR RECOVERY FROM DEFENDANT

Defendant incorrectly argues that it is shielded by the Section 546(e). In *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-MC-115, 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) (Rakoff, J.) ("*Cohmad*"), the District Court held that an initial transferee's actual knowledge of Madoff's fraud precluded application of the Section 546(e) safe harbor, thereby allowing the Trustee to avoid transfers made by BLMIS prior to the two-year period referenced in Section 548(a)(1)(A). Defendant's argument that Section 546(e) bars recovery ignores *Cohmad* and the fact that the Trustee had sufficiently alleged Sentry's actual knowledge. Additionally, Defendant's argument that the safe harbor applies to the instant matter ignores this Court's application of the *Cohmad* decision in another subsequent transfer recovery action. *See BNP* 594 B.R. at 197.

### A.    Fairfield Sentry Had Actual Knowledge of Madoff's Fraud

Defendant sets forth at length the requirements of Section 546(e) and how they are presumably met in this case in multiple ways with respect to the initial transfers to Sentry. None of this matters.[14] Defendant does not challenge that this Court has previously found that the Trustee

---

[14] The Trustee does not concede that any agreements or transfers between Sentry and Defendant activate the safe harbor under Section 546(e). Sentry's agreements with and transfers to Defendant are simply not relevant, because whether the initial transfers from BLMIS to Sentry are avoidable turns on Sentry's actual knowledge of fraud at BLMIS. Among other things, the Trustee does not concede—by alleging that the subsequent transfers were customer property—that the initial transfers were "in connection with" the subscription agreements with the Defendant. As discussed elsewhere herein, the Trustee believes he will prevail on showing that the subsequent transfers are customer property. However, showing that the subsequent transfers can be traced through the "relevant pathways" to the initial

has sufficiently pled the initial transferee, Sentry, had actual knowledge of Madoff's fraud and that such initial transfers were avoidable. *See Fairfield Inv. Fund*, 2021 WL 3477479, at *4–5, *7. As such, Section 546(e) does not bar the avoidance of initial transfers made to Sentry and those transfers may be recovered from Defendant regardless of whether Sentry or Defendant qualifies as a financial institution, their agreements qualify as securities contracts, or their transfers qualify as settlement payments.[15]

Defendant participated in the District Court proceedings.[16] Given its participation in the withdrawal of the reference and the District Court's review of this issue, Defendant is bound by *Cohmad* and that decision is law of the case. S*ee Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 466 (Bankr. S.D.N.Y. 2015) ("Those moving defendants that participated in the withdrawal of the reference of the antecedent debt/value issue have had their day in court and Judge Rakoff's decisions are law of the case."); *Picard v. Lowrey*, 596 B.R. 451, 464 (S.D.N.Y. 2019), *aff'd sub nom. Picard v. Gettinger*, 976 F.3d 184 (2d Cir. 2020) (law of the case doctrine foreclosed relitigating the issue where the district court "considered and rejected the very arguments that defendants now make"). Defendant also did not seek leave to appeal the *Cohmad* decision.

---

transfers is entirely irrelevant to the issue of whether the initial transfers were "in connection with" any transaction or contract between the initial transferee feeder funds and the Defendant for purposes of application of the securities safe harbor. The Trustee also does not concede that the initial transfers were made "for the benefit of" the Defendant. The Trustee plainly alleges in the Complaint that Defendant is a subsequent transferee, and it is settled law that a defendant cannot be both a subsequent transferee and a party for whose benefit an initial transfer is made. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 474 (Bankr. S.D.N.Y. 2015) (citing cases).

[15] Though not necessary to the Court's analysis, we note that Defendant's argument that the Trustee is in privity with the Fairfield liquidators and therefore bound by any rulings in the Fairfield liquidation is incorrect. *See* Mot. at 32 n.14. Defendants cite no relevant authority for this argument because none exists. For example, *New Hampshire v. Maine*, 532 U.S. 742 (2001), does not even involve non-party preclusion. And if *Taylor v. Sturgell*, 553 U.S. 880 (2008), "stands for anything, it is for the need to narrow and regularize the use of preclusion against nonparties." *Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*, No. 07-MD-1902 (JSR), 2013 WL 12191844, at *11 (S.D.N.Y. Mar. 25, 2013).

[16] *See Picard v. Lion Global Investors Limited* Adv. Pro. No. 11-02540, Motion to Withdraw the Reference, ECF Nos. 11-12 (Bankr. S.D.N.Y. filed Mar.26,2012) (raising Section 546(e) as a grounds for withdrawal).

Defendant heavily relies on *Ida Fishman*. However, this Second Circuit decision does not warrant a reconsideration of *Cohmad's* actual knowledge exception. *In re Bernard L. Madoff Inv. Secs. LLC (Picard v. Ida Fishman Recoverable Trust)*, 773 F.3d 411 (2d Cir. 2014). As this Court has recognized, *Ida Fishman* did not address the actual knowledge exception. *See Picard v. Cohen*, Adv. Pro. No. 10-04311, 2016 WL 1695296, at *10 n.16 (Bankr. S.D.N.Y. Apr. 25, 2016).

### B.    Defendant Is Precluded From Arguing That Section 546(e) Applies Independently to Recovery Actions

Under its plain language, Section 546(e) applies to the avoidance of initial transfers, not the recovery of subsequent transfers under Section 550. See 11 U.S.C. § 546(e) ("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title.") (emphasis added); *see also BNP*, 594 B.R. at 197 ("The Trustee does not . . . 'avoid' the subsequent transfer; he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550."); *Kelley v. Safe Harbor Managed Acct. 101, Ltd.*, No. 20-3330, 2022 WL 1177748, *3 n.5 (8th Cir. Apr. 21, 2022) ("*SHMA*") (citing *BNP*).

This limitation on the safe harbor to avoidance actions is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct." *In re Madoff Sec*. 501 B.R. at 30 (Rakoff, J.). It is also consistent with the understanding that the Code's avoidance provisions protect against depletion of a debtor's estate, while Section 550 is merely a "utility provision," intended to help execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place." S*ee In re Picard, Trustee for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 98 (2d Cir. 2019).

*Cohmad* confirmed that Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees. The District Court withdrew the

reference on whether Section 546(e) barred recovery of a subsequent transfer pursuant to Section 550.[17] However, in its decision, the court specifically limited the safe harbor to avoidance claims based on the plain language of Section 546(e). *See Cohmad*, 2013 WL 1609154, at *4, *9 (applying the "plain terms" of Section 546(e)); at *7 (recognizing that subsequent transferees can raise initial transferees' defenses to *avoidance*); and at *10 ("[B]oth initial transferees and subsequent transferees are entitled to raise a defense based on the application of Section 546(e) to the *initial* transfer from Madoff Securities.") (emphasis added). And though the court hypothesized, in *dicta*, that a subsequent transferee's subscription agreements with the initial transferee feeder fund, and related agreements and transactions, might under certain circumstances constitute relevant "securities contracts," and that certain subsequent transferee defendants might qualify as "financial institutions" or "financial participants," the decision is clear that the focus of the safe harbor is still on the *initial* transfers.[18] *See id.* at *9. The District Court did not in its hypothetical, discuss actual knowledge or indicate that in such circumstances the initial transferee's actual knowledge should be disregarded.[19]

Based on *Cohmad*, this Court held that Section 546(e) is applicable only to avoidance and not recovery, and most notably that a subsequent transferee cannot assert the protections of Section

---

[17] *See In re Madoff Securities*, 12-MC-115, Section 546(e) Briefing Order, ECF No. 119 (S.D.N.Y. filed May 16, 2012) (withdrawing the reference on issue of "whether application of Section 546(e) to an initial or mediate Transfer bars recovery by the Trustee of any subsequent Transfer pursuant to Section 550").

[18] *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 339 (2d Cir. 2011), which the District Court cites in Cohmad solely to support its reading of what constitutes a "securities contract," does not change this outcome. The focus is still on the initial transfers, which for purposes of Section 546(e), the Second Circuit has already determined, and it is now not debatable, are the transfers from BLMIS to its feeder funds. *See Ida Fishman*, 773 F.3d at 422-23. As such, neither the initial transfers nor the initial transferees' actual knowledge can be disregarded, regardless of which securities agreement is being relied upon.

[19] The original point of the *Cohmad* hypothetical was to address the subsequent transferee defendants' argument that if necessary, in lieu of the BLMIS customer agreements, their subscription agreements could act as the relevant securities agreements under Section 546(e). *Cohmad*, 2013 WL 1609154, at *8. That argument became moot as both the Second Circuit and the District Court determined that each BLMIS customer agreement was a "securities agreement" and the initial transfers from BLMIS were "settlement payments" notwithstanding that no securities were traded and therefore the Trustee's avoidance claims were subject to Section 546(e).

546(e) where the Trustee has adequately pled the initial transferee's actual knowledge. *See BNP*, 594 B.R. at 197; *see also In re SunEdison, Inc.*, 620 B.R. 505, 514 (Bankr. S.D.N.Y. 2020) ("the safe harbor defense only applies by its terms to the initial transfer").

As explained in *BNP*, a subsequent transferee gets only "indirect" protection from Section 546(e) to the same extent it protects the initial transferee. *Id.* at 197. Like *Cohmad*, *BNP* is law of the case, and Defendant is bound by both decisions. *See Picard v. Est. of Seymour Epstein (In re BLMIS)*, No. 2l-CV-02334 (CM), 2022 WL 493734, at *12 (S.D.N.Y. Feb. 17, 2022) (finding "in a SIPA liquidation like this one" where different adversary proceedings arise within the same liquidation, that law of the case applies when "prior decisions in an ongoing case either expressly resolve[] an issue or necessarily resolve[] it by implication").

Defendant nevertheless may be seeking to relitigate this point, in suggesting that this Court relies on the feeder fund agreements as the relevant "securities agreements." Defendant's misinterpretation of *Cohmad* would effectively eliminate the point of the actual knowledge exception—which is to restrict all bad actors from hiding behind the safe harbor. *See Cohmad*, 2013 WL 1609154, at *3 (explaining that defendants who knew BLMIS was a Ponzi scheme "must have known that the transfers they received directly or indirectly from Madoff Securities were not 'settlement payments.'"). Adopting Defendant's position means the safe harbor would apply even where the initial transferee feeder fund knew there were no securities transactions in need of protection. It would moreover allow an initial transferee—who had knowledge of the fraud and was unable to satisfy a judgment (like Sentry)—to place fraudulently transferred monies with a subsequent transferee and out of the reach of a trustee. It would also result in a situation whereby a final determination as to the avoidability of an initial transfer would depend upon, and could vary based on, who received subsequent transfers, if any.

Expanding the safe harbor would result in subsequent transferees being afforded more protection as to avoidance than the initial transferee itself, which is contrary to Congress' intent. *See In re Madoff Sec.*, 501 B.R. at 29 ("Section 550(a) requires that the Trustee show that the transfer he seeks to recover is avoidable in each recovery action, and the subsequent transferee in possession of that transfer may raise any defenses to avoidance available to the initial transferee, as well as any defenses to recovery it may have."). As the Eighth Circuit pointed out in *SHMA* while citing *BNP*, under Section 546(e), "a subsequent transferee is protected indirectly to the extent that the initial transfer is not avoidable because of the safe harbor." 2022 WL 1177748, at *3 n.5 (cleaned up). Conversely, providing subsequent transferees with the same defenses to avoidance as available to initial transferees does not unfairly bias subsequent transferees.[20]

## VI.    THE TRUSTEE'S COMPLAINT PLEADS THAT DEFENDANT RECEIVED BLMIS CUSTOMER PROPERTY UNDER SECTION 550(A)

The Trustee's Complaint states a claim for recovery under Section 550(a)(2) by plausibly alleging that Defendant received subsequent transfers of BLMIS stolen customer property. To plead a subsequent transfer claim, the Trustee must allege facts that support an inference "that the funds at issue originated with the debtor." *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149–150 (Bankr. S.D.N.Y. 2014) ("*Merkin I*"). No tracing analysis is required, as the pleading burden "is not so onerous as to require 'dollar-for-dollar accounting' of 'the exact funds' at issue."[21] *Id.* at 150 (*quoting Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*, Adv. Pro. Nos. 10-04398 (BRL),

---

[20] This Court's *Amsterdam* decision in the Fairfield Chapter 15 liquidation proceedings likewise does not support Defendant's position. *See* Mot. at 30, citing Fair*field Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, No. 10-13164 (SMB), 2020 WL 7345988, at *6–*7 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Amsterdam*"). That decision did not involve recovery of subsequent transfers under the Bankruptcy Code. Rather, the Court held that Section 546(e) barred the Fairfield funds' liquidators' claims for unfair preference and undervalue transactions under the B.V.I. Insolvency Act, which the Court analogized to avoidance provisions in the Bankruptcy Code. *See Amsterdam*, 2020 WL 7345988, at *5 (citing *In re Fairfield Sentry Ltd.*, 596 B.R. 275, 302, 314 (Bankr. S.D.N.Y. 2018)). The *Amsterdam* decision is currently on appeal in the U.S. District Court. *See In re Fairfield Sentry Ltd.*, 19-CV-03911 (consolidated) (S.D.N.Y.) (Broderick, J.).

[21] Defendant acknowledges that at the pleading stage a dollar-for-dollar-accounting is not required. *See* Mot. at 36.

10- 05219 (BRL), 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012)). Rather, "the Trustee

need only allege sufficient facts to show the relevant pathways through which the funds were

transferred from BLMIS to [the subsequent transferee]." *Charles Ellerin Rev. Tr.*, 2012 WL

892514, at *3; see also *45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,

599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019). In addition, the Trustee must allege "'the necessary

vital statistics—the who, when, and how much' of the purported transfers to establish an entity as

a subsequent transferee of the funds." *Merkin I*, 515 B.R. at 150 (*quoting Silverman v. K.E.R.U.*

*Realty Corp. (In re Allou Distribs., Inc.*), 379 B.R. 5, 32 (Bankr. E.D.N.Y. 2007)).

### A.      Defendant Misstates the Trustee's Pleading Burden

The Trustee's Complaint meets the requirements. The Complaint alleges that Sentry

invested substantially all of its funds with BLMIS, and Defendant received transfers, identified by

date and amount, from Sentry. Compl. ¶¶ 2, 34–43, Exs. B-D. Thus, the Complaint plausibly

alleges that Defendant received subsequent transfers of customer property by (a) outlining the

relevant pathways through which customer property was transferred from BLMIS to Sentry and

subsequently transferred to Defendant and (b) providing the necessary vital statistics (i.e., the

"who, when, and how much") for each subsequent transfer. Nothing more is required. *See, e.g.,*

*Picard v. Mayer (In re BLMIS)*, Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435, at *5 (Bankr.

S.D.N.Y. Oct. 27, 2021) (rejecting argument that subsequent transfer claim was not pled "with

enough specificity as to how and what [defendant] received" and holding complaint "contains

sufficient information regarding which transfers the Trustee is seeking to recover").

Unable to argue that the Trustee fails to meet the relevant pleading burden, Defendant

argues for a new standard. Defendant complains that the Complaint "makes no attempt whatsoever

to trace" the transfers of BLMIS customer property. Mot. at 4. But this is not the correct standard.

*See Merkin I*, 515 B.R. at 150; *see also In re 45 John Lofts, LLC*, 599 B.R. at 747 (finding no

"requirement to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss"). Defendant also argues that the Trustee must tie each subsequent transfer Defendant received to a specific initial transfer from BLMIS. Mot. at 38. The Court also rejected this argument in *Merkin I* when it refused to dismiss subsequent transfer claims even though the complaint did "not connect each of the subsequent transfers with an initial, voidable transfer emanating from BLMIS." *Merkin I*, 515 B.R. at 150. Likewise, the Court already rejected the argument that the Trustee must detail which and what portion of each subsequent transfer comprises customer property. *See id.*, 515 B.R. at 152–53 (refusing to dismiss complaint where "at least some of the subsequent transfers . . . may be recoverable"); *see also In re Allou Distribs., Inc.*, 379 B.R. at 30 (finding "if dollar-for-dollar accounting is not required at the proof stage, then surely it is not required at the pleading stage either").

To support its argument that the Trustee has failed to allege facts showing that the subsequent transfers to Defendant were comprised of customer property, Defendant erroneously relies on *Picard v. Shapiro (In re BLMIS)*, 542 B.R. 100 (Bankr. S.D.N.Y. 2015). *See* Mot. at 36-37. Defendant analogizes the within matter to *Shapiro* and contends the Trustee's Complaint fails to plead "vital statistics." *Id.* at 38. This is factually and legally incorrect.

In *Shapiro*, the Trustee alleged that certain trusts and members of the Shapiro family received approximately $54 million in fraudulent transfers from BLMIS, and that "upon information and belief" these defendants subsequently transferred this same amount to other defendants. *See Picard v. Shapiro (In re BLMIS)*, 542 B.R. 100, 104, 109, 119 (Bankr. S.D.N.Y. 2015). However, that complaint did not detail any of the necessary vital statistics of the subsequent transfers. *Id.* at 119. In *Shapiro*, there were no allegations regarding the subsequent transferors, the subsequent transferees, or the dates or amounts of the subsequent transfers, and consequently

this Court granted defendants' motion to dismiss the subsequent transfer claim. *Id*. Here, the Trustee has alleged the vital statistics of each transfer Defendant received. *Shapiro* therefore supports the denial of Defendant's motion to dismiss.

### B.    Defendant's Tracing Arguments Fail on a Motion to Dismiss

Defendant's other fact-based tracing arguments fare no better and are inappropriate on a motion to dismiss. First, Defendant claims the transfers it received from Sentry comprise subscriptions from other investors. Mot. at 37. In other words, Defendant argues that Sentry commingled customer property with other funds, and this commingling will defeat the Trustee's ability to trace the transfer of customer property from BLMIS. *Id*. Again, Defendant is wrong. "The law does not place such a difficult burden on trustees. The commingling of legitimate funds with funds transferred from the debtor does not defeat tracing." *Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-cv-1073 (ECT/KMM), 2020 WL 3077151, at *4 (D. Minn. June 10, 2020) (citing *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3) (citation omitted).

Second, Defendant claims that Sentry paid other investors with the customer property it received from BLMIS prior to making any transfers to Defendant. Mot. at 38. Although Defendant does not say what tracing methodology it seeks to apply, it claims that "as a matter of basic addition and subtraction, Sentry must have used funds other than those received from BLMIS to make at least some of those payments." *Id*. However, this conclusion is inappropriate, and this determination is to be made by this Court—after fact and expert discovery—regarding the appropriate tracing methodology under the circumstances of this case. Mot. at 38. *See also Picard v. Merkin (In re BLMIS)*, 581 B.R. 370, 386 (Bankr. S.D.N.Y. 2017) ("*Merkin II*") ("[T]he Court's selection of an appropriate methodology is committed to the Court's discretion."); *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3, n.7 ("Courts have broad discretion to determine which monies of commingled funds derive from fraudulent sources.") (citing *United States v. Henshaw*, 388 F.3d

738, 741 (10th Cir. 2004) (finding "courts exercise case-specific judgment to select the method best suited to achieve a fair and equitable result on the facts before them")).

The Trustee is a stranger to the transactions between Sentry and Defendant and its predecessor entities and the Trustee is entitled to discovery on this issue. "[I]n a case such as this one, where 'the Trustee's lack of personal knowledge is compounded with complicated issues and transactions [that] extend over lengthy periods of time, the trustee's handicap increases,' and 'even greater latitude' should be afforded." *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011). This is one reason why this Court in *Merkin I* denied defendants' motion to dismiss, finding "[t]he subsequent transfer claim must ultimately be proved through the books and records of the defendants." 515 B.R. at 151. And even after fact discovery, expert opinion is necessary to determine what portion of the subsequent transfer stemmed from the initial transfer where the subsequent transfers originated from commingled accounts. *Merkin II*, 581 B.R. at 386; *see also Kelley*, 2020 WL 3077151, at *5 (denying summary judgment because trustee introduced expert report and associated documents from which a jury could infer that defendants received subsequent transfers of customer property).

For the same reasons, this Court should reject Defendant's argument that the Trustee's claims should be dismissed because the Trustee has had access to Sentry's records. Mot. at 39. The Trustee does not have all Sentry's books and records, and discovery in the Trustee's actions against the FGG defendants continues. *See, e.g.,* Stipulated Case Mgmt. Order, *Picard v. Fairfield Inv. Fund Ltd.*, Ad. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. May 17, 2022), ECF No. 355 (setting November 22, 2023 deadline for fact discovery and August 23, 2024 deadline for expert discovery). Defendant also no doubt has records it can provide on these same transactions.

Third, Defendant's tracing argument is inappropriate on a motion to dismiss. And even if it may prove more difficult for the Trustee to trace all the subsequent transfers sought here, this is not grounds for dismissal at the pleading stage. *See Merkin I*, 515 B.R. at 152 (finding it "premature to cut off the Trustee's opportunity to satisfy his [tracing] burden on a motion to dismiss" merely because the tracing may prove difficult); *Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*, Adv. Pro. Nos. 10-03493 (SMB), 10-05447 (SMB), 2014 WL 47774, at *15 (Bankr. S.D.N.Y. Jan. 3, 2014) ("[T]he [subsequent transferees'] speculation that tracing is 'not likely' to reveal a subsequent transfer . . . hardly justifies granting [their cross-motion for summary judgment].").

### C.    Defendant's Claims of Double Recovery Are Premature

Finally, Defendant argues the Trustee's claims are "implausible" because the Trustee is seeking more money from all of Sentry's subsequent transferees than the fund withdrew from BLMIS. Mot. at 37. There is no dispute that the Trustee is limited to "a single satisfaction" under Section 550(a). 11 U.S.C. § 550(d). However, the Trustee "can recover from any combination of [transferees]" up to the amount avoided. *Helms v. Metro. Life Ins. Co.* (In re O'Malley), 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019), aff'd, 633 B.R. 332 (N.D. Ill. 2021). And under § 550(a), "a trustee may recover [an avoided] transfer from a subsequent transferee of those funds, without the necessity for allocation among all [the] subsequent transferees." *CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.),* 393 B.R. 306, 333 (Bankr. W.D.N.Y. 2008). Thus, until the Trustee recovers the full amount of the approximately $3 billion in fraudulent transfers received by Sentry, the Trustee may simultaneously seek recovery from Defendant in this action and from defendants in other actions, even in an aggregate amount that exceeds initial transfers. *See Fairfield Inv. Fund*, 2021 WL 3477479, at *12 (holding arguments regarding "double recovery" and the Trustee's purported limitations under Section 550(d) are "to be determined at a later stage in the litigation").

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendant's Motion.

Dated: June 1, 2022
      New York, New York

*/s/  Robertson D. Beckerlegge*

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Robertson D. Beckerlegge
Email: rbeckerlegge@bakerlaw.com
Eric R. Fish
Email: efish@bakerlaw.com
Michelle R. Usitalo
Email: musitalo@bakerlaw.com

*Attorneys for Irving H. Picard,*
*Trustee for the Substantively Consolidated*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and the Chapter 7*
*Estate of Bernard L. Madoff*