**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                    Plaintiff-Applicant,<br><br>        v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                    Defendant. | Adv. Pro. No. 08-01789 (CGM)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                    Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff,<br><br>                    Plaintiff,<br><br>        v.<br><br>BANQUE CANTONALE VAUDOISE,<br><br>                    Defendant. | Adv. Pro. No. 12-01694 (CGM) |

**BANQUE CANTONALE VAUDOISE'S REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

ARGUMENT ...................................................................................................................... 1

    I.     THE TRUSTEE HAS NOT JUSTIFIED HIS FAILURE TO
          PLAUSIBLY ALLEGE THAT BCV RECEIVED CUSTOMER
          PROPERTY ........................................................................................................ 1

          A.    The Trustee Fails to Meet His Pleading Burden ........................................ 2

          B.    Tracing Analysis Is Unnecessary Where the Pleadings
                Negate Commingling .................................................................................. 4

          C.    The Trustee Has All the Records He Needs ............................................... 6

          D.    The Trustee Has No Claims Against Defendants Who Are
                Not "Transferees" ...................................................................................... 7

    II.    WHERE, AS HERE, SECTION 546(E) BY ITS TERMS
          COVERS AN INITIAL TRANSFER, AN INNOCENT
          SUBSEQUENT TRANSFEREE MAY INVOKE THE SAFE
          HARBOR EVEN IF THE INITIAL TRANSFEREE MAY NOT. ...................... 8

    III.    THE COMPLAINT DOES NOT COMPLY WITH RULE 8(A)(2). ................... 14

CONCLUSION ................................................................................................................. 16

## TABLE OF AUTHORITIES

Page(s)

Cases

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
599 B.R. 730 (Bankr. S.D.N.Y. 2019) .................................................................................3

*Am. Casein Co. v. Geiger (In re Geiger)*,
446 B.R. 670 (Bankr. E.D. Pa. 2010) ...............................................................................15

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
301 F.R.D. 487 (C.D. Cal. 2014) .....................................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................1, 3

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................................1, 3

*CNB International, Inc. v. Kelleher (In re CNB International, Inc.)*,
393 B.R. 306 (Bankr. W.D.N.Y. 2008) ..............................................................................7

*Edmondson v. RCI Hospitality Holdings, Inc.*,
No. 16-CV-2242, 2020 WL 1503452 (S.D.N.Y. Mar. 30, 2020) .....................................6

*Francis v. Accubanc Mortg. Corp.*,
No. 19-CV-902 (AJN), 2020 WL 2086038 (S.D.N.Y. Apr. 30, 2020) ..........................16

*Glob. Network Commc'ns, Inc. v. City of N.Y.*,
458 F.3d 150 (2d Cir. 2006)..............................................................................................16

*Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*,
No. 08–15051 (SMB), 2014 WL 47774 (Bankr. S.D.N.Y. Jan. 3, 2014).........................5

*Kelley v. Westford Special Situations Master Fund, L.P.*,
No. 19-cv-1073, 2020 WL 3077151 (D. Minn. June 10, 2020) ........................................5

*In re O'Malley*,
601 B.R. 629 (Bankr. N.D. Ill. 2019) ................................................................................7

*Picard v. Avellino (In re Bernard L. Madoff Inv. Sec. LLC)*,
557 B.R. 89 (Bankr. S.D.N.Y. 2016).................................................................................13

*Picard v. BNP Paribas S.A. (In re Madoff)*,
594 B.R. 167 (Bankr. S.D.N.Y. 2018) ..............................................................................13

*Picard v. Ceretti (In re Bernard L. Madoff Inv. Sec. LLC)*,
No. 08–99000, 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015) ........................................13

*Picard v. Charles Ellerin Rev. Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*,
No. 10-05219, 2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012) ...........................................3, 5

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
454 B.R. 317 (Bankr. S.D.N.Y. 2011) .......................................................................................2, 7

*Picard v. Est. of Mendelow*,
560 B.R. 208 (Bankr. S.D.N.Y. 2016) .........................................................................................13

*Picard v. Fairfield Inv. Fund Ltd. (Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv.
Sec. LLC)*,
No. 09-01239, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ...........................11, 12, 13, 14

*Picard v. Magnify Inc. (In re Bernard L. Madoff Inv. Sec. LLC)*,
583 B.R. 829 (Bankr. S.D.N.Y. 2018) .........................................................................................13

*Picard v. Mayer (In re Bernard L. Madoff Inv. Sec. LLC)*,
No. 20-01316, 2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021) ........................................3, 7

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
515 B.R. 117 (Bankr. S.D.N.Y. 2014) .......................................................................2, 3, 5, 7, 13

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
581 B.R. 370 (Bankr. S.D.N.Y. 2017) ...........................................................................................5

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*,
542 B.R. 100 (Bankr. S.D.N.Y. 2015) ...................................................................................3, 4, 13

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
No. 12 MC 115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ............................................ *passim*

*Sec. Inv. Protec. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
501 B.R. 26 (S.D.N.Y. 2013) .......................................................................................................15

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib., Inc.)*,
379 B.R. 5 (Bankr. E.D.N.Y. 2007) ...............................................................................................2

*SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*,
620 B.R. 505 (Bankr. S.D.N.Y. 2020) .........................................................................................13

*In re UBS AG Sec. Litig.*,
No. 07 Civ. 11225, 2012 WL 4471265 (S.D.N.Y. 2012) ...............................................................8

*United States v. Henshaw*,
388 F.3d 738 (10th Cir. 2004) ........................................................................................................5

*United States v. Int'l Longshoremen's Ass'n*,
518 F. Supp. 2d 422 (E.D.N.Y. 2007) ...........................................................................................14

<u>Statutes</u>

11 U.S.C. § 546(e) ................................................................................................. *passim*

11 U.S.C. § 550.............................................................................................................7, 12, 13

<u>Rules</u>

Fed. R. Civ. P. 8(a) ............................................................................................14, 15, 16

Fed. R. Civ. P. 10(c) ................................................................................................14

Fed. R. Civ. P. 11 ..........................................................................................................16

Fed. R. Civ. P. 12(b) ............................................................................................1, 13

Defendant Banque Cantonale Vaudoise ("BCV" or "Defendant"),[1] by its undersigned counsel, respectfully submits this reply memorandum of law in further support of its motion to dismiss the Complaint (the "Complaint") of Irving Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC (the "Trustee"), pursuant to Federal Rule of Civil Procedure 12(b)(6).

## ARGUMENT

## I.    THE TRUSTEE HAS NOT JUSTIFIED HIS FAILURE TO PLAUSIBLY ALLEGE THAT BCV RECEIVED CUSTOMER PROPERTY.

BCV's Opening Brief (at 10-17, ECF 94) demonstrates that the Trustee fails to plausibly allege that the single so-called "subsequent transfer" BCV received from Fairfield Sentry Limited ("Sentry") contained Bernard L. Madoff Investment Securities LLC ("BLMIS") customer property and, indeed, that the Trustee's own allegations render it impossible that it did. The Trustee's opposition simply waves off this fatal defect—never even bothering to dispute BCV's central point that the Trustee has alleged billions of dollars more in subsequent transfers of BLMIS customer property from Sentry than he alleges was ever transferred to Sentry. This is not a matter of requiring "tracing" or a "dollar-for-dollar accounting". Nor is the present issue one for expert opinion. Rather, whether the Complaint plausibly alleges that the single transfer at issue contained customer property is a *legal* question to be resolved on a motion to dismiss. The Trustee's approach of ignoring his responsibilities under *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57, 570 (2007), would impose enormous delay and expense upon the defendants and burden the Court with administering and adjudicating time-consuming, baseless claims not plausibly related to the recovery of customer property.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Opening Brief.

### A.    The Trustee Fails to Meet His Pleading Burden.

The Trustee does not deny that he has failed to tie any of the dozens of alleged initial transfers from BLMIS to Sentry to the single alleged subsequent transfer to BCV.  Instead, he argues he need not do so (Opp. Br. at 6, ECF 97), even as his own authorities support this pleading requirement.  For example, in *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317 (Bankr. S.D.N.Y. 2011) ("*Cohmad I*"), this Court upheld the pleading of the subsequent transfers because "the Trustee alleges that the amounts of Commissions specified by BLMIS on the Payment Schedules *correspond* to the amounts paid by BLMIS to Cohmad and, subsequently, to the Cohmad Representatives".  *Id.* at 341 (emphasis added); *see also* First Am. Compl. Exs. 2, 4, *Picard v. Cohmad Sec. Corp.*, No. 09-01305 ECF 82-2, 82-4 (Bankr. S.D.N.Y. Oct. 8, 2009) (commissions due to eight Cohmad Representatives computed to average $214,722.03 per month from May to December 2008, corresponding exactly to monthly payments from BLMIS to Cohmad of $214,722.03 per month during those months).  In other words, the *Cohmad* complaint linked particular initial transfers from BLMIS to particular subsequent transfers, in stark contrast to the Trustee's vague generalities here.

Likewise, in *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib., Inc.)*, 379 B.R. 5 (Bankr. E.D.N.Y. 2007), the court noted that the linkage between the initial and subsequent transfers was pleaded in the complaint: "The funds transferred by the Controlled Entities and Eurofactors in connection with the Kent Avenue Condominiums were preceded by fraudulent transfers of funds from Allou *in amounts sufficient to cover the transfers* by the Controlled Entities and Eurofactors."  *Id.* at 30 (quoting Amended Complaint ¶¶ 53, 56; emphasis added); *see also id.* at 13 (specifying initial and subsequent transfers during 13-day period); *see also Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117, 150

2

(Bankr. S.D.N.Y. 2014) ("*Merkin I*") ("several subsequent transfers took place contemporaneously or shortly after an initial transfer . . . , *implying linkage*"; emphasis added); *45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 736-37, 747 (Bankr. S.D.N.Y. 2019) (complaint alleged that two payments totaling $29.4 million were deposited into an account and that $29.4 million was transferred out the same day and next business day; citing Complaint ¶¶ 60-69).[2]

Thus, the cases that say that a trustee "need only allege sufficient facts to show the relevant pathways through which the funds were transferred," *e.g.*, *Ellerin*, 2012 WL 892514, at *3, do not (indeed, cannot) relieve the Trustee of his obligation under *Iqbal* and *Twombly* to plead a plausible linkage between the initial and subsequent transfers. None of those cases upholds a pleading where, based on the Trustee's own allegations, the purported pathway is a dead-end, as is the case here, where the Trustee has alleged that prior Sentry distributions had exhausted all the BLMIS money at Sentry prior to the Defendant's redemption. None provides a justification for suing to recover billions of dollars more than the total customer property in question.

As such, the Trustee has not satisfied the pleading standard set in *Iqbal*, *Twombly*, and *Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015), when he alleges only dates and amounts of multiple initial transfers and the single alleged subsequent transfer without any connection between them. *Shapiro*'s requirement

---

[2] Similarly, in *Picard v. Charles Ellerin Rev. Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 10-05219, 2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012), the Trustee's submissions showed, for example, that a defendant trust issued defendant Janet Winters a $6,200 check just two weeks after it deposited $25,000 from BLMIS. Resp. to Mot., Attach. A, *Ellerin*, No. 10-05219, ECF 12-1, at 93-94; *id*., Compl. Ex. B, ECF 1, at 1. In *Picard v. Mayer (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 20-01316, 2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021), the linkage was also clear: on September 4, 2007, BLMIS transferred $50,000,000 to Legacy Capital; the next day, Legacy Capital transferred $50,000,000 to Montpellier; and two days after that, Montpellier transferred $30,647,210 to what became Kronos Group. Compl. Ex. B, *Mayer*, No. 20-01316, ECF 1-2, at 16; *id*. Compl. Exs. C, D, ECF 1-3, 1-4.

that the Trustee "allege facts that support the inference that the funds at issue originated with the

BLMIS" and "tie any initial transfer to any subsequent transfer or Subsequent Transferee," 542

B.R. at 119, is not a requirement of dollar-for-dollar accounting or tracing individual dollar

amounts, but the bare minimum necessary to notify BCV of the Trustee's claims so it can

prepare its defense.

**B.    Tracing Analysis Is Unnecessary Where the Pleadings Negate Commingling.**

The Trustee engages in misdirection when he argues that the commingling of

BLMIS and non-BLMIS money at Sentry relieves him of the obligation to allege a plausible

linkage between initial and subsequent transfers.  As made clear in the Opening Brief (at 10-17,

ECF 94) the Trustee's own pleadings establish that there are significant periods of time where

there was *no commingling* because there was *no customer property left at Sentry*—it had all been

paid out previously.  Thus, the single payment to BCV must have come from another source, not

from commingled BLMIS and other funds.

As set forth in the Opening Brief (at 15, ECF 94), The Trustee alleges that in the

period from April 13, 2006 through September 5, 2007, Sentry withdrew a total of $120 million

from BLMIS in one transaction on April 13, 2006.  *See* Compl. Ex. B pp. 25, 26 ("CHECK

WIRE" entries).  The Trustee further alleges that in the *more than one year* between Sentry's

receipt of that $120 million from BLMIS on April 13, 2006 through May 15, 2007 – the day

before BCV's alleged redemption – Sentry paid *more than $620 million* of alleged customer

property to the FGG Defendants and to redeeming shareholders, including Sigma, and Lambda.

*See* Shaiman Decl. Exs. 5, 6, ¶ 13, ECF 93; Shaiman Reply Decl. Ex. 1, ¶ 6.  Accordingly, there

was simply no alleged "customer property" remaining from the April 13, 2006 transfer to fund

BCV's alleged redemption on May 16, 2007 (*see* Compl. Ex. C), more than a year after the last transfer from BLMIS to Sentry.  *See generally* Opening Br. at 15-17, ECF 94.

Tracing is only an issue where funds are commingled.  *See Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 581 B.R. 370, 384-85 (Bankr. S.D.N.Y. 2017) ("*Merkin II*") (tracing necessary where subsequent transfers originated from commingled accounts); *United States v. Henshaw*, 388 F.3d 738, 739 (10th Cir. 2004) (same).  Because the Trustee's allegations *negate* the existence of commingling (or customer property) for extensive time periods, the Trustee's authorities for the proposition that commingling does not defeat tracing, *see Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-cv-1073, 2020 WL 3077151, at *4 (D. Minn. June 10, 2020); *Ellerin*, 2012 WL 892514, at *3, or that claims may proceed even though tracing may ultimately prove difficult, *see Merkin I*, 515 B.R. at 152; *Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*, No. 08–15051 (SMB), 2014 WL 47774, at *15 (Bankr. S.D.N.Y. Jan. 3, 2014), are irrelevant.  The Trustee has not plausibly alleged that BLMIS money was commingled at Sentry where his own allegations demonstrate there was no BLMIS money left at Sentry.

Contrary to the Trustee's assertion, there is no undisclosed expert methodology here—only arithmetic.  The Trustee alleges that ***every single*** redemption payment from Sentry during the relevant period was comprised ***entirely*** of customer property; therefore, each redemption necessarily decreased the amount of customer property left at Sentry by the amount redeemed.  *See* Shaiman Reply Decl. Ex. 2, ¶ 8 (alleging, for example, that "[b]ased on the Trustee's investigation to date, approximately $8,470,371 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Bank Vontobel").  All BCV does is subtract those redemptions from the amounts received from BLMIS—hardly the

5

province of experts.  *See Edmondson v. RCI Hospitality Holdings, Inc.*, No. 16-CV-2242, 2020

WL 1503452, at *6 (S.D.N.Y. Mar. 30, 2020) ("Simple arithmetic, such as ordinary

multiplication, is a paradigmatic example of the type of everyday activity that goes on in the

normal course of human existence.") (citations and quotation marks omitted).

      **C.**      **The Trustee Has All the Records He Needs.**

Seeking to excuse his failure to plead a *prima facie* case, the Trustee argues that

he needs discovery from Sentry's management.  But the Trustee cannot overcome BCV's

showing that, for over a decade, he has had access to every record he needs.

First, the Trustee claims that he "does not have all of the Fairfield Funds' books

and records."  But he does not say *what* he needs that he does not have, and this bald assertion is

belied by his own pleadings detailing *thousands* of alleged transfers from Sentry.  *See* Shaiman

Decl. Ex. 1 at Ex. B, ECF 93.

Next, he complains that discovery from the FGG defendants is ongoing.  But the

Trustee is notably silent as to his contractual right to records and cooperation from the Fairfield

Liquidators (*see* Settlement Agreement, *Picard v. Fairfield Inv. Fund Ltd. (Sec. Inv. Prot. Corp.

v. Bernard L. Madoff Inv. Sec. LLC)*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y.), ECF 69-2, ¶

14)—who admitted before this Court that as of 2010 they possessed most of the books and

records of the feeder funds Sentry, Fairfield Sigma Limited ("Sigma") and Fairfield Lambda

Limited ("Lambda" and, together with Sentry and Sigma, the "Fairfield Funds").  *See*

Declaration of Kenneth Krys, *In re Fairfield Sentry Ltd.*, No. 10-13164 (Bankr. S.D.N.Y. July

16, 2010), ECF 40, ¶¶ 15, 19.  If the Trustee believed he was missing anything, all he had to do

for over a decade was to invoke his rights against the Fairfield Liquidators and ask.  *See* Opening

Br. at 13, ECF 94.

The Trustee's access to the necessary records distinguishes his authorities, which offer plaintiffs greater latitude in pleading where subsequent transfers had to be proven through *defendants'* records. *See Merkin I*, 515 B.R. at 151; *Cohmad I*, 454 B.R. at 329; *Picard v. Mayer (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 20-01316, 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021).[3] No such latitude should be afforded to a plaintiff who possesses all the relevant facts yet still fails to plausibly allege that transfers contain customer property.

**D.    The Trustee Has No Claims Against Defendants Who Are Not "Transferees".**

The Trustee contends that it is of no moment that he alleges billions of dollars more in customer property was transferred from Sentry than was ever transferred to Sentry because he can recover from any combination of "transferees" up to the amount avoided. Opp. Br. at 12, ECF 97. This ignores the fact that for at least approximately $2 billion of claims, BCV *is not a "transferee."* Courts have defined an "immediate or mediate transferee" under 11 U.S.C. § 550(a)(2) as "one who takes in a later transfer down the chain of title or possession." *In re O'Malley*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019) (citation and quotation marks omitted). Here, BCV never became a transferee of customer property because there was no BLMIS money at Sentry to transfer to it. *See* Opening Br., Point I, ECF 94 .

This case is thus completely different from those involving re-transfers among subsequent transferees, as in *Merkin I*, 515 B.R. at 149-50, or allocation of liability among subsequent transferees who all indisputably received money from the debtor, as in *CNB International, Inc. v. Kelleher (In re CNB International, Inc.)*, 393 B.R. 306, 332-33 (Bankr. W.D.N.Y. 2008).[4] Instead, the Trustee here seeks to recover any money a defendant may have

---

[3] The Trustee asserts (Opp. Br. at 11, ECF 97) that BCV has relevant records, but he does not articulate what they are, and BCV is hard-pressed to imagine what they might be.

[4] Indeed, when the Trustee sought to recover an alleged transfer from one defendant to another, he expressly alleged it. *See* Shaiman Reply Decl. Ex. 2, ¶ 8 (alleging subsequent transfers from BBH to Credit Agricole Miami).

received from *Sentry* (*see generally* Shaiman Reply Decl. Ex. 1 (alleging transfers from Sentry to applicable defendant)), without regard to whether, as to that payment, the defendant was a "transferee" of BLMIS. This he may not do, and the Trustee's claims should be dismissed.

## II.    WHERE, AS HERE, SECTION 546(E) BY ITS TERMS COVERS AN INITIAL TRANSFER, AN INNOCENT SUBSEQUENT TRANSFEREE MAY INVOKE THE SAFE HARBOR EVEN IF THE INITIAL TRANSFEREE MAY NOT.

In his Opposition, the Trustee does not dispute that BLMIS was a stockbroker, that Sentry was a financial institution, or that the initial transfer from BLMIS to Sentry was a settlement payment or a transfer both in connection with a securities contract between Sentry and its investors like BCV and for the benefit of a financial institution. Opp. Br. at 13-20, ECF 97. Accordingly, he has conceded those points, *see In re UBS AG Sec. Litig.*, No. 07 Civ. 11225, 2012 WL 4471265, at *11 (S.D.N.Y. 2012), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014), and he may not contest that Section 546(e) applies by its terms to all Sentry's alleged subsequent transfers of BLMIS's initial transfers made more than two years before BLMIS's bankruptcy filing.[5] Moreover, the Trustee does not dispute that BCV did not have actual knowledge of Madoff's fraud.

The Trustee argues only that "[b]ased on" Judge Rakoff's ruling in *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12 MC 115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad II*"), "a subsequent transferee cannot extend the protections of Section 546(e) where the Trustee has adequately pled the initial transferee's actual knowledge." Opp. Br. at 18, ECF 97. As the Trustee would have it, Sentry's alleged actual

---

[5] As BCV established in its Opening Brief (at 18, ECF 94), and the Trustee does not dispute (Opp. Br. at 13-20, ECF 97) because the first transfer from BLMIS to Sentry during the Two Year Lookback period occurred on September 6, 2007 – after BCV's alleged May 16, 2007 redemption – the safe harbor bars the Trustee's entire claim against BCV.

knowledge of Madoff's fraud bars not only Sentry, but also subsequent transferees, from invoking the safe harbor for initial transfers made more than two years before bankruptcy.[6]

      To the contrary, *Cohmad II* directly supports the applicability of the safe harbor to innocent subsequent transferees and requires that BCV's motion to dismiss be granted.  In a ruling that he directed be applied to a large number of adversary proceedings, *see Cohmad II*, 2013 WL 1609154, at *10,[7] and which therefore was not "dicta," (Opp. Br. at 17, ECF 97) Judge Rakoff held that the relevant "actual knowledge" is that of the party from which the Trustee seeks recovery:

>     (1) Where the Trustee has sought to avoid transfers to an *initial transferee*, the avoidance of which would otherwise be barred by Section 546(e) . . . , the *initial transferee* will not be able to prevail on a motion to dismiss some or all of the Trustee's avoidance claims simply on the basis of the Section 546(e) "safe harbor" *if* the Trustee has alleged that the *initial transferee* had actual knowledge of Madoff Securities' fraud; and
>     (2) Where the Trustee has sought to recover transfers made to a *subsequent transferee*, the avoidance of which would otherwise be barred by Section 546(e) as to the initial transferee, the *subsequent transferee* will not be able to prevail on a motion to dismiss some or all of the Trustee's avoidance claims simply on the basis of the Section 546(e) "safe harbor" *if* the Trustee has alleged that the *subsequent transferee* had actual knowledge of Madoff Securities' fraud.

*Cohmad II*, 2013 WL 1609154, at *1 (emphasis added except for "if").

      While paragraph (2) above addressed whether a subsequent transferee would be precluded from asserting the safe harbor where the *subsequent transferee* had actual knowledge of Madoff's fraud, it pointedly did *not* preclude a subsequent transferee from asserting the safe

---

[6] The Trustee devotes most of his brief on Section 546(e) to a straw man argument that the safe harbor does not apply directly to subsequent transfers, and that an alleged subsequent transferee can invoke Section 546(e) only to the extent the safe harbor applies to the alleged initial transfer.  BCV has not contended otherwise and bases its safe harbor defense on Section 546(e)'s applicability to the alleged initial transfer from BLMIS to Sentry.  The real issue on this motion is not whether the safe harbor applies to the initial *transfer* (it clearly does), but which *transferees* can invoke it—namely, whether the actual knowledge of the initial transferee can be used to strip the safe harbor's protection from a subsequent transferee that does not have actual knowledge.

[7] *See* Amended Notice of Motion to Dismiss, *Sec. Inv. Prot. Corp.  v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)* (S.D.N.Y. Aug. 10, 2012), No. 12-MC-00115, ECF 289 (listing proceedings involved in *Cohmad*).

harbor where the *initial transferee* had actual knowledge of Madoff's fraud.[8]  The reason for this can be seen in Judge Rakoff's explanation of his ruling, in which he again focused on the subsequent transferee's knowledge when recovery was sought from that subsequent transferee:

> [I]f the allegations adequately allege that a *defendant* had actual knowledge of Madoff's scheme, *such a transferee stands in a different posture from an innocent transferee, even as concerns the application of Section 546(e)*. . . . [T]he purpose of this section is "minimiz[ing] the displacement caused in the commodities and securities markets in the event of a major bankruptcy affecting those industries." . . .  In the context of Madoff Securities' fraud, that goal is best achieved by protecting the reasonable expectations of investors who believed they were signing a securities contract; but a transferee who had actual knowledge of the Madoff "Ponzi" scheme did not have any such expectations, but was simply obtaining moneys while he could.  Neither law nor equity permits such a person to profit from a safe harbor intended to promote the legitimate workings of the securities markets and the reasonable expectations of legitimate investors.
>
> * * *
>
> [T]o the extent that an innocent customer transferred funds to a *subsequent transferee who had actual knowledge of Madoff Securities' fraud*, that subsequent transferee cannot prevail on a motion to dismiss on the basis of Section 546(e)'s safe harbor.  Again, this follows from the general principles enunciated earlier in this Opinion.  A defendant cannot be permitted to in effect launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of Section 546(e). . . .  In sum, if the Trustee sufficiently alleges that *the transferee from whom he seeks to recover a fraudulent transfer* knew of Madoff Securities' fraud, *that transferee* cannot claim the protections of Section 546(e)'s safe harbor.

*Id*. at *4, 7 (emphasis added; citations omitted).

In these passages, Judge Rakoff announced an exception to the safe harbor for subsequent transferees parallel to (not greater than) the one he announced for initial transferees, precluding Section 546(e) from being invoked in a situation in which it otherwise would apply if doing so would benefit a defendant (whether an initial or subsequent transferee) with actual knowledge that the funds it received had been fraudulently transferred.  The Trustee's brief

---

[8] Indeed, in Judge Rakoff's original "bottom line" Order that included the language quoted above, he underlined "subsequent" at the end of paragraph (2).  *See* Order, *Cohmad*, No. 12-MC-00115 (S.D.N.Y. Feb. 12, 2013), ECF 439, at 3.

concedes the rationale for this rule when it states that "the point of the actual knowledge

exception . . . is to restrict all *bad actors* [subsequently described as transferees with actual

knowledge] from hiding behind the safe harbor." Opp. Br. at 19, ECF 97 (emphasis added).

      *Cohmad II* established that when an initial transferee has actual knowledge of the

fraud, and thus knows there is no bona fide settlement payment or securities contract, it cannot

invoke the safe harbor to protect the initial transfer. *See Cohmad II*, 2013 WL 1609154, at *10.

Similarly, when a subsequent transferee has actual knowledge of the fraud, it cannot invoke the

safe harbor that would otherwise apply to the initial transfer, even if the initial transferee was

"innocent," because the subsequent transferee knows there is no bona fide settlement payment or

securities contract, and allowing the culpable subsequent transferee to invoke the safe harbor

would permit it to "launder . . . fraudulently transferred funds through a nominal third party,"

*i.e.*, the initial transferee. *Id.* at *8. But where the subsequent transferee lacks actual knowledge

of the fraud, it has a "reasonable expectation" that it is receiving a settlement payment pursuant

to a securities contract, and that reasonable expectation should be protected by the safe harbor

that Congress enacted. *Id.* at *4.

      In *Picard v. Fairfield Inv. Fund Ltd. (Sec. Inv. Prot. Corp. v. Bernard L. Madoff

Inv. Sec. LLC)*, No. 09-01239, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021), this Court

reiterated that "if the Trustee sufficiently alleges that the transferee ***from whom he seeks to

recover a fraudulent transfer*** knew of Madoff Securities' fraud, ***that transferee*** cannot claim the

protections of Section 546(e)'s safe harbor." *Id.* at *4 (emphasis added) (quoting *Cohmad II*).

This Court thus examined whether the Trustee had sufficiently alleged facts establishing actual

knowledge separately as to each individual subsequent transferee defendant. *See id.* at *5-*7.

The Court concluded that "[t]he Trustee has failed to plead individualized factual allegations

11

demonstrating that Corina Noel Piedrahita had independent actual knowledge of the BLMIS

fraud," *id*. at *6, and therefore dismissed all claims against her, *id*. at *15, even though it found

that the Trustee had adequately pleaded actual knowledge on the part of both the ***initial***

transferees and the ***other*** subsequent transferee defendants, *id*. at *4–6; *see also id*. at *15

(denying motion to dismiss except as to the individual claims against Ms. Piedrahita).[9]

Because individual defendants in *Fairfield Investment Fund* were "administrators

and partners of [the Fairfield Greenwich Group]," the Trustee argues (Opp. Br. at 20, ECF 97)

that their actual knowledge was relevant to the motion there only insofar as it might be imputed

to the initial transferee entities.  But even though the Court found that the Trustee had pleaded

alleged actual knowledge on the part of the initial transferees, *see* 2021 WL 3477479, at *4, it

did ***not***—as the Trustee asks it to do here—automatically deprive all subsequent transferee

defendants of the safe harbor's protection.  On the Trustee's reading of *Cohmad II*, there would

have been no reason for the Court to consider whether the Trustee had pleaded facts establishing

Ms Piedrahita's actual knowledge, and no basis to dismiss the individual claims against her.

Rather, if the Trustee were correct, once the Court held that the initial transferees' actual

knowledge had been sufficiently pleaded, ***all*** defendants' motions to dismiss would have been

denied—including the motion of Ms. Piedrahita, the lone Innocent Subsequent Transferee

Defendant.  But that is not what happened in *Fairfield Investment Fund*. [10]

---

[9] The only claims asserted against Ms. Piedrahita were subsequent transfer claims.  *See* Second Amended
Complaint, *Picard v. Fairfield Inv. Fund Ltd. (Sec. Inv. Prot. Corp.  v. Bernard L. Madoff Inv. Sec. LLC)*, Adv. Pro.
No. 09-01239 (CGM), ECF No. 286, ¶¶ 366-70, 391-94.  The Court discussed the Trustee's failure to allege facts
showing that she had "independent actual knowledge of the BLMIS fraud," *Fairfield Inv. Fund*, 2021 WL 3477479,
at *6, in Section III(A) of its decision, relating to whether Section 546(e) "BAR[RED] THE TRUSTEE'S SIX-
YEAR SUBSEQUENT TRANSFER CLAIMS."  *Id*. at *3.
[10] The Trustee alternatively suggests (Opp. Br. at 20, ECF 97) that the dismissal as to Ms. Piedrahita may have been
based on a finding, for purposes of the defendants' Section 550(b) "good faith for value" defense, that the Trustee
had not adequately pleaded a lack of "good faith."  But this ignores: (i) the placement of the discussion of Ms.
Piedrahita's lack of knowledge in Section III(A) (*i.e*., the Section 546(e) portion) of the decision, rather than in the
separate Section III(B) dealing with the Section 550(b) defense, *see Fairfield Inv. Fund*, 2021 WL 3477479, at *6-

The Trustee also cites *Picard v. BNP Paribas S.A. (In re Madoff)*, 594 B.R. 167

(Bankr. S.D.N.Y. 2018), and *SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*,

620 B.R. 505 (Bankr. S.D.N.Y. 2020), in support of his argument, Opp. Br. at 18-19, ECF 97,

but neither case discussed whether a subsequent transferee's invocation of Section 546(e) is

barred by the initial transferee's actual knowledge.  Instead, both cases focused on the same

straw man argument raised by the Trustee here.  *See BNP Paribas*, 594 B.R. at 197 ("the safe

harbor is a defense to the avoidance of the *initial* transfer"); *SunEdison*, 620 B.R. at 514 ("the

safe harbor defense only applies by its terms to the initial transfer"); note 6 *supra*.  And to the

extent *BNP Paribas* might be read to imply that an innocent subsequent transferee cannot invoke

the safe harbor, it is inconsistent both with *Cohmad II* and this Court's decision in *Fairfield

Investment Fund*.[11]

The Trustee argues that BCV's interpretation would "allow an initial transferee—

who had knowledge of the fraud and was unable to satisfy a judgment (like Sentry)—to place

fraudulently transferred moneys with a subsequent transferee out of the reach of a trustee."  Opp.

---

*9; and (ii) the Court's holding that it could not determine on a Rule 12(b) motion whether any defendant "gave value" in surrendering shares in the Fairfield Funds, as a result of which it denied all defendants' motions to dismiss to the extent based on the Section 550(b) defense.  *Id.* at *9, *15.

[11] The Trustee asserts that "this Court has . . . applied the actual knowledge 'exception' on numerous occasions" (Opp. Br. at 15, ECF 97), but none of the cases he cites in his accompanying footnote (*id.* n.7) barred an innocent subsequent transferee from invoking the safe harbor based on the actual knowledge of the initial transferee.  *See Fairfield Inv. Fund*, 2021 WL 3477479, at *1, 7 (dismissing innocent subsequent transferee); Tr. of May 29, 2019 Hr'g, *Picard v. Square One Fund Ltd. (In re Madoff)*, No. 10-04330 (Bankr. S.D.N.Y. May 29, 2019), ECF 181, at 41 (complaint's allegations "fail to spell out a claim of actual knowledge" against initial transferee defendant); *Picard v. Magnify Inc. (In re Bernard L. Madoff Inv. Sec. LLC)*, 583 B.R. 829 (Bankr. S.D.N.Y. 2018) (no subsequent transfer claims in complaint at No. 10-05279, ECF 143); *Picard v. Est. of Mendelow*, 560 B.R. 208, 226, 229 (Bankr. S.D.N.Y. 2016) (sustaining allegations of initial transferees' actual knowledge; dismissing subsequent transferee claims); *Picard v. Avellino (In re Bernard L. Madoff Inv. Sec. LLC)*, 557 B.R. 89, 116, 125-26 (Bankr. S.D.N.Y. 2016) (not addressing precise question in light of certain concessions and lack of challenges by defendants); *Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (dismissing subsequent transfer claims); *Picard v. Ceretti (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 08–99000, 2015 WL 4734749, at *1, 10 (Bankr. S.D.N.Y. Aug. 11, 2015) (subsequent transfer claims not subject of motion); *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117, 141, 153 (Bankr. S.D.N.Y. 2014) (applying safe harbor to subsequent transfers beyond two-year period because complaint failed to plausibly allege transferees' actual knowledge).

Br. at 19, ECF 97. Such speculation has no relevance here. Sentry did not initiate the

redemption; BCV did. And since BCV is not alleged to have had actual knowledge of Madoff's

fraud, its dismissal is squarely in line with *Cohmad II* and *Fairfield Investment Fund*.

## III.    THE COMPLAINT DOES NOT COMPLY WITH RULE 8(A)(2).

In its Opening Brief, BCV showed that the Complaint did not comply with Rule

8(a)(2)'s requirement of "a short and plain statement of the claim showing that the pleader is

entitled to relief". *See* Opening Br., Point III, ECF 94 .

In Opposition, the Trustee insists "there is no doubt that the Trustee may

incorporate the Fairfield complaint under Rule 10(c)" (Opp. Br. at 21, ECF 97), but the Trustee's

reliance on that rule distorts beyond all recognition Rule 10(c)'s provision that, "[a] statement in

a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading

or motion." The Trustee does not seek to incorporate "[a] statement", but 798 paragraphs of

statements without specifying which are relevant here, from a document that is no longer an

operative pleading and that was filed in a separate action. *See United States v. Int'l

Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 463 (E.D.N.Y. 2007) ("the Government's proposed

method of pleading necessary elements of its RICO claim by incorporating factual allegations

contained in several prior lengthy criminal and civil RICO pleadings is … a blatant violation of

Rule 8(a)(2)'s direction that a civil plaintiff provide a 'short and plain statement of the claim

showing that the pleader is entitled to relief.'"); *see also Amini Innovation Corp. v. McFerran

Home Furnishings, Inc*., 301 F.R.D. 487, 492 (C.D. Cal. 2014) ("Although there is some

disagreement on this point …, courts typically hold that Rule 10(c) does not allow a party to

adopt pleadings from a wholly separate action, even if that action is between the same parties.";

citations omitted).

The Trustee relies upon *Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670 (Bankr. E.D. Pa. 2010), which permitted incorporation by reference of pleadings in one adversary proceeding in a different adversary proceeding. However, the *Geiger* court granted the defendant's motion to dismiss the complaint incorporating the other pleading for failure to comply with Rule 8(a)'s requirement that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "[e]ach allegation must be simple, concise, and direct." *Id.* at 679. Thus, even assuming adoption by reference from another proceeding may be permitted in some situations, the resulting pleading must nonetheless satisfy Rule 8(a).

The Trustee's reliance (Opp. Br. at 21-22, ECF 97) on *Sec. Inv. Protec. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 501 B.R. 26 (S.D.N.Y. 2013), is similarly unavailing. That decision addressed a different question, namely, whether the Trustee may seek avoidance of a subsequent transfer without first obtaining a judgment against the initial transferee avoiding the initial transfer. *Id.* at 37. In only one sentence late in the opinion, which the Trustee quotes in part (Opp. Br. at 21-22, ECF 97), did Judge Rakoff mention anything about the adequacy of the complaint. However, the defendants had not challenged the propriety or scope of the incorporation, and Judge Rakoff did not delve into those questions, let alone rule on the Rule 8(a) issue that BCV raises. Therefore, the quote is taken out of context, is dictum, relates to an earlier version of the complaint, and does not bind this Court as law of the case or otherwise.

In any event, that decision is beside the point. BCV does not claim that the Trustee's Fairfield Amended Complaint insufficiently alleges avoidability of the initial transfers. Rather, BCV's point is that the Trustee's Fairfield Amended Complaint alleges far too much more than avoidability to meet Rule 8(a)(2)'s requirement of a short and plain statement of the

15

claim showing that the pleader is entitled to relief.  By incorporating the entire Trustee's Fairfield Amended Complaint, the Trustee puts at issue all claims he asserted against Sentry and the other Fairfield defendants, including a plethora of irrelevant allegations and exhibits that have nothing to do with this case, and to which BCV should not be required to respond.

Further, judicial notice cannot save the trustee's Complaint.  Judicial notice, particularly of a court decision, cannot substitute for allegations in a complaint, which a plaintiff must plead subject to the requirements of Rule 11 and which a defendant can then admit or deny, thus framing the facts and issues in dispute.  To the contrary, judicial notice of a separate complaint only permits the court to recognize that those allegations were made, not that they are true.  *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (internal citation and quotation marks omitted)); *Francis v. Accubanc Mortg. Corp.*, No. 19-CV-902 (AJN), 2020 WL 2086038, at *1 (S.D.N.Y. Apr. 30, 2020) (on motion to dismiss, court took "judicial notice of publicly filed, state-court filings involving these parties" "only to establish 'the fact of such litigation,' but not for the truth of the matters asserted in that proceeding").  Finally, the Trustee requests leave to amend his Complaint if the Court sustains BCV's Rule 8(a) objection.  BCV does not object.  All it seeks on this point is a short and plain statement giving it sufficient notice of the claims the Trustee asserts against it, without substantial extraneous material from the improper wholesale incorporation by reference.

## CONCLUSION

For the foregoing reasons and the reasons set forth in BCV's Opening Brief, BCV respectfully requests that the Court dismiss the Complaint in its entirety.

16

Dated:  June 6, 2022
        New York, New York

Respectfully Submitted,

ALLEGAERT BERGER & VOGEL LLP

By: */s/* John F. Zulack

John F. Zulack
Lauren J. Pincus
David A. Shaiman
111 Broadway, 20th Floor
New York, New York 10006
Tel. No.: 212-571-0550
Email: jzulack@abv.com
Email: lpincus@abv.com
Email: dshaiman@abv.com

*Counsel for Defendant Banque Cantonale
Vaudoise*