**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of Bernard*
*L. Madoff Investment Securities LLC and the Chapter 7*
*Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (CGM) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 12-01211 (CGM) |
| v. | |
| UNION SECURITIES INVESTMENT TRUST CO., LTD., UNION USD GLOBAL ARBITRAGE FUND, UNION USD GLOBAL ARBITRAGE A FUND, and UNION ARBITRAGE STRATEGY FUND, | |
| Defendants. | |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ...........................................................................................................3

I.      THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS.............................................3

II.     DEFENDANTS AND THEIR INVESTMENTS IN SENTRY ..........................................4

ARGUMENT .................................................................................................................................6

I.      LEGAL STANDARD...........................................................................................................6

II.     THE TRUSTEE SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE
        SENTRY INITIAL TRANSFERS.......................................................................................7

        A.      The Incorporated Material Complies With Rules 8 and 10 ....................................7

        B.      The Court Can Take Judicial Notice of the Fairfield Inv. Fund Decision.............10

III.    THE TRUSTEE'S COMPLAINT ADEQUATELY PLEADS THAT
        DEFENDANT RECEIVED BLMIS CUSTOMER PROPERTY .....................................11

        A.      The Defendants Misstate the Trustee's Pleading Burden .....................................12

        B.      Defendants' Arguments are Inappropriate for a Motion to Dismiss......................13

IV.     SECTION 546(E) DOES NOT BAR RECOVERY FROM DEFENDANTS .................17

        A.      Fairfield Sentry Had Actual Knowledge of Madoff's Fraud .................................17

        B.      Defendants Are Precluded From Arguing That Section 546(e) Applies
                Independently to Recovery Actions.......................................................................19

        C.      The Trustee Has Adequately Alleged Actual Fraudulent Intent............................23

V.      THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS .................25

        A.      Defendants Purposefully Availed Themselves of the Laws and Privileges
                of New York by Investing in Sentry .....................................................................28

        B.      Defendants' Purposeful Use of Their Own and Fairfield's New York Bank
                Accounts Establishes Specific Personal Jurisdiction.............................................28

        C.      Defendants' Intentional Investment in BLMIS Through Sentry Establishes
                Minimum Contacts.................................................................................................31

1.      *BLI* Establishes this Court's Jurisdiction Over Defendants ...................... 31

D.      The Defendants' Contacts with FGG in New York also Establish
        Minimum Contacts ................................................................................... 32

E.      Defendants' Contacts with the Forum are Sufficiently Related to the
        Trustee's Claims ...................................................................................... 36

F.      Exercise of Personal Jurisdiction Over Defendants is Reasonable ....................... 38

G.      In the Alternative, the Trustee is Entitled to Jurisdictional Discovery ................. 39

CONCLUSION .......................................................................................................... 39

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
    599 B.R. 730 (Bankr. S.D.N.Y. 2019) ...............................................................................11, 12

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
    98 F.3d 25 (2d Cir. 1996) ...........................................................................................................27

*Am. Casein Co. v. Geiger (In re Geiger)*,
    446 B.R. 670 (Bankr. E.D. Pa. 2010) ........................................................................................7

*Armstrong v. Collins*,
    No. 01-cv-2437, 2010 WL 1141158 (S.D.N.Y. Mar. 24, 2010)...........................................24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................................6, 7

*In re Bayou Grp., LLC*,
    439 B.R. 284 (S.D.N.Y. 2010)................................................................................................24

*Bear Sterns Secs. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*,
    397 B.R. 1 (S.D.N.Y. 2007).............................................................................................24, 25

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).....................................................................................................................6

*Burger King v. Rudzewicz*,
    471 U.S. 462 (1985).................................................................................................26, 27, 34, 36

*Cargo Partner AG v Albatrans, Inc.*,
    352 F.3d 41 (2d Cir. 2003).........................................................................................................6

*Chase Manhattan Bank v. Banque Generale Du Com.*,
    No. 96 CIV. 5184 (KMW), 1997 WL 266968 (S.D.N.Y. May 20, 1997).............................34

*Chloé v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010)............................................................................................26, 38

*CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*,
    393 B.R. 306 (Bankr. W.D.N.Y. 2008) ................................................................................14

*Cohen v. UBS Fin. Servs., Inc.*,
    No. 12-CV-02147, 2014 WL 240324 (S.D.N.Y. Jan. 22, 2014) ...........................................24

iii

*Cromer Fin. Ltd. v. Berger*,
    137 F. Supp. 2d 452 (S.D.N.Y. 2001) .................................................................................26

*CutCo Indus., Inc. v. Naughton*,
    806 F.2d 361 (2d Cir.1986) ...............................................................................................33

*Dandong v. Pinnacle Performance Ltd.*,
    966 F. Supp. 2d 374 (S.D.N.Y. 2013) .................................................................................29

*Davis v. Bifani*,
    No. 07-cv-00122-MEH-BNB, 2007 WL 1216518 (D. Colo. Apr. 24, 2007) ...........................9

*DeMasi v. Benefico*,
    567 F. Supp. 2d 449 (S.D.N.Y. 2008) .................................................................................11

*Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*,
    722 F.3d 81 (2d Cir. 2013) ..........................................................................................25, 26

*In re Dreier LLP*,
    452 B.R. 391 (Bankr. S.D.N.Y. 2011) ...............................................................................24

*Drenis v. Haligiannis*,
    452 F. Supp. 2d 418 (S.D.N.Y. 2006) .................................................................................24

*Eldesouky v. Aziz*,
    No. 11–CV–6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014) ..............................29

*ESI, Inc. v. Coastal Corp.*,
    61 F. Supp. 2d 35 (S.D.N.Y. 1999) ....................................................................................27

*Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
    397 F. Supp. 3d 323 (S.D.N.Y. 2019) .................................................................................28

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
    No. 10-13164, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) .....................................34

*Ferrari v. Cnty. of Suffolk*,
    790 F. Supp. 2d 34 (E.D.N.Y. 2011) .................................................................................10

*Finn v. All. Bank*,
    860 N.W.2d 638 (Minn. 2015) ...........................................................................................25

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*,
    141 S. Ct. 1017 (2021) .......................................................................................................36

*Fowler v. Caliber Home Loans, Inc.*,
    277 F. Supp. 3d 1324 (S.D. Fla. 2016) ...............................................................................15

*GEM Advisors, Inc. v. Corporacion Sidenor*,
S.A., 667 F. Supp. 2d 308 (S.D.N.Y. 2009) ........................................................31

*Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.)*,
310 B.R. 500 (Bankr. S.D.N.Y. 2002) ...............................................................24

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984).............................................................................................37

*Helms v. Metropolitan Life Ins. Co. (In re O'Malley)*,
601 B.R. 629 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021)............................13

*Hill v. HSBC Bank plc*,
207 F. Supp. 3d 333 (S.D.N.Y. 2016)...................................................................37

*Hinton v. TransUnion, LLC*,
654 F. Supp. 2d 440 (E.D. Va. 2009), *aff'd*, 382 F. App'x 256 (4th Cir. 2010)........................9

*Homeschool Buyers Club, Inc. v. Brave Writer, LLC*,
No. 19-CV-6046, 2020 WL 1166053 (S.D.N.Y. Mar. 11, 2020) ...........................30

*HSH Nordbank AG N.Y. Branch v. Street*,
No. 11 Civ. 9405(DLC), 2012 WL 2921875 (S.D.N.Y. July 18, 2012)..................29

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945).......................................................................................26, 27

*In re J.P. Jeanneret Assoc., Inc.*,
2011 WL 335594 (S.D.N.Y. Jan. 31, 2011) ...........................................................6

*Johnson v. Holder*,
564 F.3d 95 (2d Cir. 2009)...................................................................................24

*Kelley v. Safe Harbor Managed Acct. 101, Ltd.*,
No. 20-3330, 2022 WL 1177748 (8th Cir. Apr. 21, 2022) ...............................19, 22

*Kelley v. Westford Special Situations Master Fund, L.P.*,
No. 19-cv-1073, 2020 WL 3077151 (D. Minn. June 10, 2020) .........................14, 15

*Kiobel v. Royal Dutch Petroleum Co.*,
No. 02 Civ. 7618 (KMW) (HBP), 2009 WL 3817590 (S.D.N.Y. Nov. 16,
2009) .....................................................................................................................39

*Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*,
No. 07-MD-1902 (JSR), 2013 WL 12191844 (S.D.N.Y. Mar. 25, 2013)..............18

*Lavazza Premium Coffees Corp. v. Prime Line Distribs. Inc.*,
No. 20 CIV. 9993 (KPF), 2021 WL 5909976 (S.D.N.Y. Dec. 10, 2021) ..............35

*Lowden v. William M. Mercer, Inc.*,
  903 F. Supp. 212 (D. Mass. 1995) .........................................................................9

*Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC*,
  843 F. Supp. 2d 191 (D. Mass. 2012) ....................................................................8

*McGee v. Int'l Life Ins. Co.*,
  335 U.S. 220 (1957).............................................................................................26

*Merrill v. Abbott (In re Indep. Clearing House Co.)*,
  77 B.R. 843 (D. Utah 1987)................................................................................25

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996)..................................................................................27

*Motors Liquidation Co. Avoidance Action Trust v. JPMorgan Chase Bank, N.A.
  (In re Motors Liquidation Co.)*,
  565 B.R. 275 (Bankr. S.D.N.Y. 2017) ................................................................34

*Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*,
  No. 13 CIV. 6705 (DLC), 2014 WL 1673351 (S.D.N.Y. Apr. 28, 2014) .................9

*Neewra, Inc.v. Manakh Al Khaleej Gen. Trading & Contracting Co.*,
  No. 03 CIV. 2936, 2004 WL 1620874 (S.D.N.Y. July 20, 2004) ..........................30

*New Hampshire v. Maine*,
  532 U.S. 742 (2001).............................................................................................18

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
  No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010).....................9

*Picard v. BNP Paribas S.A. (In re BLMIS)*,
  594 B.R. 167 (Bankr. S.D.N.Y. 2018).............................................................. *passim*

*Picard v. Bureau of Labor Ins. (In re Bernard L. Madoff)*,
  480 B.R. 501 (Bankr. S.D.N.Y. 2012) (Lifland, J.)....................................... *passim*

*Picard v. Chais (In re Bernard L. Madoff Inv. Sec. LLC)*,
  445 B.R. 206 (Bankr. S.D.N.Y. 2011) ................................................................16

*Picard v. Charles Ellerin Revocable Trust (In re BLMIS)*,
  Adv. Pro. Nos. 10-04398 (BRL), 10-05219 (BRL), 2012 WL 892514 (Bankr.
  S.D.N.Y. Mar. 14, 2012)...................................................................11, 14, 15

*Picard. v. Citibank, N.A. (In re BLMIS)*,
  12 F.4th 171 (2d. Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*,
  142 S. Ct. 1209 (2022).................................................................10, 23, 24

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    454 B.R. 317 (Bankr. S.D.N.Y. 2011) ............................................................................ *passim*

*Picard v. Est. of Seymour Epstein (In re BLMIS)*,
    No. 2l-cv-02334 (CM), 2022 WL 493734 (S.D.N.Y. Feb. 17, 2022) ..........................8, 21, 23

*Picard v. Estate (Succession) of Igoin (In re BLMIS)*,
    525 B.R. 871 (Bankr. S.D.N.Y. 2015) ..............................................................................23, 29

*Picard v. Fairfield Greenwich Group (In re Fairfield Sentry Ltd.)*,
    627 B.R. 546 (Bankr. S.D.N.Y. 2021) .........................................................................26, 27, 36

*Picard v. Fairfield Investment Fund Ltd. (In re BLMIS)*,
    Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6,
    2021) ................................................................................................................................ *passim*

*Picard v. Gettinger (In re Bernard L. Madoff Inv. Sec. LLC)*,
    976 F.3d 184 (2d Cir. 2020), *cert. denied sub nom. Gettinger v. Picard*, 141 S.
    Ct. 2603 (2021) ..........................................................................................................................23

*Picard v. JABA Assocs. LP*,
    No. 20-CV-3836, 2021 WL 1112342 (S.D.N.Y. Mar. 24, 2021) ...........................................25

*Picard v. Ken-Wen Fam. Ltd. P'ship*,
    Adv. Pro. No. 10-04468 (CGM), 2022 WL 709768 (Bankr. S.D.N.Y. Mar. 9,
    2022) ..........................................................................................................................................23

*Picard v. Lisa Beth Nissenbaum Trust*,
    No. 20 cv. 3140, 2021 WL 1141638 (S.D.N.Y. Mar. 24, 2021) ......................................23, 25

*Picard v. Maxam Absolute Return Fund, L.P.*,
    460 B.R. 106 (Bankr. S.D.N.Y. 2011) ..............................................................................26, 38

*Picard v. Mayer*,
    No. 20-01316 (CGM), 2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021) ..................12, 16

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
    515 B.R. 117 (Bankr. S.D.N.Y. 2014) .................................................................11, 12, 15, 16

*Picard v. Merkin (In re BLMIS)*,
    581 B.R. 370 (Bankr. S.D.N.Y. 2017) ..............................................................................14, 16

*Picard v. Nelson (In re BLMIS)*,
    610 B.R. 197 (Bankr. S.D.N.Y. 2019) ..............................................................................23, 25

*Picard v. Sage Realty*,
    No. 20-CV-10109, 2022 WL 1125643 (S.D.N.Y. Apr. 15, 2022) (JFK) ..........................23, 24

*Picard v. Shapiro*,
542 B.R. 100 (Bankr. S.D.N.Y. 2015)................................................................13

*In re Picard, Trustee for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
917 F.3d 85 (2d Cir. 2019)............................................................20, 30, 31, 38

*Roth v. Jennings*,
489 F.3d 499 (2d Cir. 2007)....................................................................................6

*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000).....................................................................................11

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
624 F.3d 123 (2d Cir. 2010)..................................................................................26

*Sacody Techs., Inc. v. Avant, Inc.*,
862 F. Supp. 1152 (S.D.N.Y. 1994)......................................................................34

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
531 B.R. 439 (Bankr. S.D.N.Y. 2015)..................................................................18

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Secs.)*,
501 B.R. 26 (S.D.N.Y. Oct. 28, 2013).........................................................8, 19, 22

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
No. 12-MC-115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)...........................17, 20, 21, 22

*Sharp International Corp. v. State Street Bank & Trust Co.*,
403 F.3d 43 (2d Cir. 2005).....................................................................................24

*Sherman v. A.J. Pegno Constr. Corp.*,
528 F. Supp. 2d 320 (S.D.N.Y. 2007)................................................................8, 10

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
379 B.R. 5 (Bankr. E.D.N.Y. 2007).......................................................................12

*SPV Osus Ltd. v. UBS AG*,
882 F.3d 333 (2d Cir. 2018)..................................................................................37

*In re SunEdison, Inc.*,
620 B.R. 505 (Bankr. S.D.N.Y. 2020)..................................................................21

*Sunward Elecs., Inc. v. McDonald*,
362 F.3d 17 (2d Cir. 2004).....................................................................................33

*Taylor v. Sturgell*,
553 U.S. 880 (2008)................................................................................................18

*Toberman v. Copas*,
    800 F. Supp. 1239 (M.D. Pa. 1992) ........................................................................9

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
    916 F.3d 143 (2d Cir. 2019).................................................................................27

*United States v. Henshaw*,
    388 F.3d 738 (10th Cir. 2004) .............................................................................15

*United States v. Int'l Longshoremen's Ass'n*,
    518 F. Supp. 2d 422 (E.D.N.Y. 2007) ..................................................................9

*Walden v. Fiore*,
    571 U.S. 277 (2014)......................................................................................35, 36

*Whitaker Sec., LLC v. Rosenfeld (In re Rosenfeld)*,
    543 B.R. 60 (Bankr. S.D.N.Y. 2015)....................................................................9

*Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs, LLC*,
    No. 19-CV-3444 (VSB), 2020 WL 5503557 (S.D.N.Y. Sept. 10, 2020) .............37

**Statutes**

11 U.S.C. § 546(e) ....................................................................................... *passim*

11 U.S.C. § 548(a) .................................................................................................3, 10

11 U.S.C. § 548(a)(1) ....................................................................................................7

11 U.S.C. § 548(a)(1)(A) .............................................................................17, 23, 25

11 U.S.C. § 550(a) ....................................................................................... *passim*

11 U.S.C. § 550(a)(2)....................................................................................................11

11 U.S.C. § 550(d) .............................................................................................13, 14

**Rules**

Fed. R. Bankr. P. 7012 ................................................................................................6

Fed. R. Civ. P. 8 ...................................................................................1, 2, 7, 10

Fed. R. Civ. P. 8(a)(2) ................................................................................................6

Fed. R. Civ. P. 9(b) ...........................................................................................23, 25

Fed. R. Civ. P. 10(c) ..........................................................................................1, 7, 8

Fed. R. Civ. P. 12(b)(2)...........................................................................................................1

Fed. R. Civ. P. 12(b)(6).................................................................................................1, 6, 15

N.Y. C.P.L.R. § 302(a)(1)......................................................................................................29

**Other Authorities**

Wright & Miller § 1326 ......................................................................................................9, 10

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection

Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff"),

respectfully submits this memorandum of law and supporting declaration of Nicholas J. Cremona

("Cremona Decl."), in opposition to defendants Union USD Global Arbitrage Fund ("Union

Global Fund"), Union USD Global Arbitrage A Fund ("Union Global A Fund"), Union Arbitrage

Strategy Fund ("Union Strategy Fund," and collectively, the "Defendant Funds"), and Union

Securities Investment Trust Co., Ltd.'s ("USITC," and together with the Defendant Funds, the

"Defendants") motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure

12(b)(2) and 12(b)(6) (the "Motion").

## PRELIMINARY STATEMENT

As part of the Trustee's continuing efforts in this SIPA liquidation proceeding to recover

BLMIS customer property that was stolen as part of Madoff's Ponzi scheme, this action seeks to

recover over $17 million of customer property that Defendants received from Fairfield Sentry

Limited ("Sentry"). Defendants purposefully invested in BLMIS through Sentry, an entity

expressly constituted to funnel investments to BLMIS in New York. Nonetheless, Defendants

move to dismiss the Trustee's Complaint, arguing that (i) the Trustee has failed to adequately

allege the avoidability of the initial transfers, (ii) the Complaint fails to plead that Defendants

received any transfers of customer property, (iii) the safe harbor under Section 546(e) bars

avoidance and recovery, and (iv) this Court does not have jurisdiction. Defendants' arguments

fail.

First, the Trustee's Complaint provides a "short and plain statement" consistent with Rule

8 showing that the Trustee is entitled to relief. Defendants assert that the Trustee's incorporation

by reference of his complaint against Sentry and other related parties violates Federal Civil

Procedure Rules 10(c) and 8. Not only does this argument conflict with precedent from the District Court, but this Court may also take judicial notice of the Trustee's Second Amended Complaint and the Court's own opinion in *Picard v. Fairfield Investment Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*"), in which the Court held that the Second Amended Complaint plausibly alleged the avoidability of the initial transfers to Sentry.

Second, the Trustee plausibly alleges that Defendants received customer property under Section 550(a) by outlining the relevant pathways through which customer property was transferred from BLMIS to Sentry and subsequently to Defendants. The Trustee further alleges the necessary vital statistics (*i.e.,* the "who, when, and how much") concerning the subsequent transfers the Defendants received. At this stage of the litigation, nothing more is required. Defendants' arguments that the Trustee must meet a heightened pleading burden are plainly inappropriate on a motion to dismiss and run contrary to well established case law in this SIPA liquidation proceeding.

Third, the Trustee sufficiently alleges the avoidability of the initial transfers based on Sentry's actual knowledge of fraud, through incorporating by reference his amended complaint against Sentry (the "Fairfield Complaint").[1] Therefore, the safe harbor for securities payments pursuant to securities contracts under Section 546(e) does not bar recovery from Defendants. Defendants argue that their knowledge as subsequent transferees (and not Sentry's knowledge as an initial transferee) should determine the avoidability of the initial transfers from BLMIS. This argument conflicts with the plain language of the statute and precedent in this SIPA liquidation

---

[1] After the Trustee filed his Complaint against Defendant, the Trustee filed a Second Amended Complaint (the "Fairfield SAC") in the initial transfer action. *See* Fairfield Second Amended Complaint, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286.

proceeding, establishing that Section 546(e) does not independently safe harbor the recovery of avoidable fraudulent transfers from a subsequent transferee. In any event, the safe harbor is a non-issue as to the majority of transfers from BLMIS to Sentry which occurred between December 11, 2006, and December 11, 2008 and are avoidable under Section 548(a). To that end, Defendants' arguments that BLMIS's actual intent under Section 548(a) has not been adequately alleged by virtue of the Ponzi scheme presumption are also contrary to existing precedent.

Finally, the Complaint establishes this Court's jurisdiction over Defendants. Defendants purposefully used U.S. bank accounts in New York to both subscribe into and redeem out of Sentry, which standing alone, provides sufficient basis for personal jurisdiction. Defendants' subscription agreements with Sentry also required them to submit to New York jurisdiction and agree to forum selection and choice of law clauses, all tied to New York. Additionally, Defendants purposely invested in Sentry, knowing and intending that BLMIS in New York would be the *de facto* investment manager, broker dealer, and custodian of Sentry's (and Defendants') investments. Defendants knew Sentry fed substantially all of their funds into BLMIS and that BLMIS was essential to its investments. Investing in BLMIS was the entire point. These facts, plus the additional contacts discussed herein collectively establish jurisdiction.

The Trustee respectfully requests that the Court deny Defendants' Motion in its entirety.

## STATEMENT OF FACTS

## I. THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS

Madoff founded and operated BLMIS from New York until its collapse in 2008. *See* Complaint ("Compl.") ¶ 26, ECF No. 1. BLMIS had three principal business units: (i) a proprietary trading business; (ii) a market-making business; and (iii) an investment advisory business (the "IA Business"). *Id.* For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy, which involved (a) investing in a basket of common stocks from the Standard

& Poor's 100 Index, (b) buying put options and selling call options to hedge against price changes in the underlying basket of stocks, and (c) purchasing U.S. treasury bills when the money was out of the market. *Id.* ¶¶ 27-28. In reality, BLMIS operated a Ponzi scheme through its IA Business. *Id.* ¶ 31. On December 11, 2008, Madoff's fraud was publicly revealed and he was arrested for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. *Id.* ¶ 11.

## II.    <u>DEFENDANTS AND THEIR INVESTMENTS IN SENTRY</u>

Defendant USITC is a Taiwanese commercial banking and investment management institution. *Id*. ¶ 3. The Defendant Funds are all funds managed by USITC. *Id.* Defendants all share the same physical address and contact information at 6th Floor, No. 137, Section 2, Nanking East Rd., Taipei, Taiwan. Compl. ¶¶ 22-25. Employees of USITC corresponded directly with Fairfield Greenwich Group ("FGG") concerning investments in Sentry and all communication and payment instructions related to the Defendant Funds' investments were directed to USITC. Cremona Decl., Exs. 1-5.

The Defendant Funds invested substantial sums with Sentry, which in turn invested nearly all of its funds with BLMIS. Compl. ¶ 6. Sentry was controlled by FGG, a *de facto* partnership with its principal place of business in New York. *See Fairfield Inv. Fund*, 2021 WL 3477479, at *9; *see also* Compl. ¶ 6. Sentry was a U.S. dollar-denominated fund that invested 95% of its assets with BLMIS. Compl. ¶ 2. FGG also conducted key operations from its New York Office. Cremona Decl., Exs. 6-8. For example, Sentry subscriptions were approved or rejected by a New York-based FGG Partner. *Id.*, Ex. 9. FGG's Finance Group, which was responsible for processing subscriptions and redemptions, performing due diligence, communicating with investors, and providing investor support, was also located in New York. *Id.*, Ex. 7.

The Defendant Funds executed subscription agreements with Sentry, in which they acknowledged their sophistication as investors and that they had "such knowledge and experience in financial matters sufficient to evaluate the risks involved in an investment in the Fund." *Id*., Exs. 10-12., ¶ 5(c). Employees of USITC were signatories on all subscription agreements between the Defendant Funds and Sentry. *Id.* at ¶ 30(i). The subscription agreements also included additional connections to New York. The agreements contained a New York choice of law provision, *Id.*, ¶ 16, and, under a heading titled *New York Courts*, the agreement contained a New York venue and forum selection clause submitting to the jurisdiction of New York. *Id.*, ¶ 19. The agreements also instructed investors to send subscription payments to Sentry's bank account with HSBC Bank USA in New York (the "HSBC USA Account"). *Id.*, ¶ 3. Defendants also used correspondent bank accounts at JPMorgan Chase Bank, NY (the "JPMorgan NY Accounts") to receive redemption funds from Sentry. Cremona Decl., Exs. 1-3.

The subscription agreements also incorporated Sentry's Private Placement Memorandums ("PPMs"), and by signing, investors warranted that they "received and read a copy of the [PPMs]." *Id.*, Exs. 10-12, ¶ 7. The PPMs explicitly disclosed BLMIS's multiple roles as the *de facto* investment manager, broker dealer, and custodian for Sentry. *Id.*, Ex. 13. The PPMs specifically informed investors that BLMIS would have custody of Sentry's assets in the United States and would execute the funds' purported investment strategy. *Id.*

Within the two-year period prior to BLMIS's collapse, Defendants received a total of $17,206,127 from Sentry. Specifically, Union Global Fund received approximately $9,283,664 in fourteen subsequent transfers of customer property from Sentry. Compl. ¶ 44, Ex. C. Similarly, Union Global A Fund received approximately $6,477,447 in nine subsequent transfers, and Union

Strategy Fund received approximately $1,445,016 in three subsequent transfers. *Id.* ¶¶ 46, 48, Exs. C – E.

Following the collapse, the Trustee filed an adversary proceeding against Sentry and related defendants to avoid and recover fraudulent transfers of customer property in the amount of approximately $3 billion. *Id.* ¶ 38; *see also Picard v. Fairfield Sentry, Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286. In 2011, the Trustee settled with Sentry. As part of the settlement, Sentry consented to a judgment in the amount of $3.054 billion but repaid only $70 million to the BLMIS estate. Compl. ¶ 43. The Trustee then commenced a number of adversary proceedings against defendants like the Defendants to recover the approximately $3 billion in stolen customer property.

## ARGUMENT

## I.    LEGAL STANDARD

When considering motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule"), applicable to an adversary proceeding under Fed. R. Bankr. P. 7012, "the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences" in the Trustee's favor. *In re J.P. Jeanneret Assoc., Inc*., 2011 WL 335594, at *8 (S.D.N.Y. Jan. 31, 2011) (citing *Cargo Partner AG v Albatrans, Inc*., 352 F.3d 41, 44 (2d Cir. 2003); *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007)). To survive the motion to dismiss, the pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). The allegations need only meet the "plausibility" standard, such that they "'nudge[] [the] claims' … 'across the line from conceivable to plausible.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible where "the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678 (citation omitted).

## II.   THE TRUSTEE SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE SENTRY INITIAL TRANSFERS

Defendants' arguments regarding incorporation by reference of the Fairfield Complaint[2] under Rule 10(c) and a "short and plain statement" under Rule 8 misconstrue the language and purpose of these rules and ignore the substance of the Trustee's allegations.  The Trustee may incorporate the Fairfield Complaint under Rule 10(c) to demonstrate the avoidability of the initial transfers from BLMIS to Sentry.  *See Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010) (allowing incorporation by reference under Rule 10(c) of pleadings in different adversary proceeding within the same liquidation).  In any event, the Court may take judicial notice of the Fairfield SAC as well as its own decision on the avoidability of the initial transfers.

### A.   The Incorporated Material Complies With Rules 8 and 10

Defendants argue that the Trustee may not incorporate by reference the Fairfield Amended Complaint, which details the avoidability of the initial transfers.  *See* 11 U.S.C. § 548(a)(1). Defendants' main support for this assertion is that courts in other contexts have declined to allow incorporation by reference of pleadings in a different action.  *See* Mot. at 8–10.  In the bankruptcy context, however, all matters under the umbrella of one liquidation are considered one proceeding for purposes of Rule 10(c).  *See In re Geiger*, 446 B.R. at 679 (allowing incorporation by reference of pleadings in a different adversary proceeding within the same liquidation because the pleadings "directly relate[d] to, materially affect[ed], and [were] filed in a single bankruptcy case.").

---

[2] As noted in Footnote 1, the Fairfield Amended Complaint was amended after the filing of the Complaint in this adversary proceeding.  The operative complaint in that action is the Fairfield SAC.

Defendants also ignore the District Court's prior opinion on whether under Section 550(a) the Trustee must avoid an initial transfer or plead its avoidability in a subsequent transfer action. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Secs.),* 501 B.R. 26 (S.D.N.Y. Oct. 28, 2013). In that decision, the District Court found sufficient the Trustee's incorporation by reference of initial transfer complaints, including the Fairfield Amended Complaint:

> [T]he Trustee's complaint against [the subsequent transfer defendant] incorporates by reference the complaints against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. . . . Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).

*Id.* at 36. This decision is now law of the case. *See Est. of Seymour Epstein*, 2022 WL 493734, at *12 (S.D.N.Y. Feb. 17, 2022).

Regardless, Rule 10(c) does not prohibit the incorporation of entire pleadings from other actions. *See* Mot. at 9-10. The Southern District of New York and other federal courts have permitted incorporation by reference of pleadings in separate actions in appropriate circumstances. *See Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 323 n.5 (S.D.N.Y. 2007) (citation omitted) (interpreting Rule 10(c)'s reference to "another pleading" as not being confined to another pleading in the same action, and permitting incorporation of entire pleadings in separate cases); *Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC*, 843 F. Supp. 2d 191, 214 n.15 (D. Mass. 2012) (holding incorporation by reference appropriate where "the court [was] familiar with the filings in the other [] case[], which [were] substantially similar to [that] case, and the usual

concerns about inferring arguments from other submissions have less force.").[3]

Here, the Trustee references only one other pleading—the Fairfield Amended Complaint—and the incorporation is clear, with its purpose obvious. *See* Wright & Miller § 1326 ("If the incorporation is clear, less emphasis need be placed on the source of the incorporated material."); *Whitaker Sec., LLC v. Rosenfeld (In re Rosenfeld)*, 543 B.R. 60, 66 (Bankr. S.D.N.Y. 2015) (noting that some courts fear incorporation will not provide adequate notice as to claims or allegations, but allowing incorporation because "there is no danger of prejudice"). This is unlike the attempted incorporation in *Hinton v. TransUnion, LLC,* cited by Defendant, where there was a "particularly high" risk of confusion because plaintiff was seeking "incorporation in an amended pleading of a superseded version of that same pleading" in that very action. 654 F. Supp. 2d 440, 446 (E.D. Va. 2009), *aff'd,* 382 F. App'x 256 (4th Cir. 2010). Further, in *Toberman v. Copas*, the initial plaintiff's complaint is not actually incorporated into the third-party complaint and the third-party complaint provides no details of its own. *Toberman v. Copas*, 800 F. Supp. 1239, 1243 (M.D. Pa. 1992). In fact, *Toberman* stands for the proposition that one complaint can incorporate a previous complaint, it just must be done "explicitly", which the Trustee does. *Id.*

Contrary to Defendants' lack of "fair notice" arguments, reference to the Fairfield Amended Complaint provides notice of avoidability of initial transfers in a manner that avoids repetition and over-complication. "The ability to incorporate matters from other pleadings is

---

[3] In contrast, the cases Defendants cited are inapposite because in those cases, unlike in this one, plaintiffs were incorporating pleadings by reference in separate actions in an attempt to add entirely new claims. *See, e.g., United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 461–66 (E.D.N.Y. 2007); *Davis v. Bifani*, No. 07-cv-00122-MEH-BNB, 2007 WL 1216518, at *1 (D. Colo. Apr. 24, 2007); *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803, at *4 (E.D.N.Y. Mar. 26, 2010). Those courts found that incorporation under the circumstances would have led to confusion or a lack of notice of the claims asserted. By contrast, Defendants would be hard pressed to argue they are confused or lack notice that the Trustee is seeking to avoid the initial transfers. In the other cases Defendants cite, the information plaintiffs sought to incorporate was also even more irrelevant, such as affirmative defenses in answers filed by defendants in other actions (*Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*, No. 13 CIV. 6705 (DLC), 2014 WL 1673351, at *9 (S.D.N.Y. Apr. 28, 2014)), and arguments in a motion to dismiss (*Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212, 215 (D. Mass. 1995)).

especially useful in multiparty litigation when the presence of common questions often results in the pleadings of the parties on the same side of the litigation being virtually identical, which makes employing simple incorporations by reference highly desirable." *Sherman*, 528 F. Supp. 2d at 323 n.5 (citing Wright & Miller § 1326); Wright & Miller § 1326 n.1 ("Adoption by reference avoids overly long or complicated pleadings.").

Defendants also cannot seriously argue that the Trustee's incorporation of the Fairfield Amended Complaint violates Rule 8. Defendants ignore the substance of the Complaint and the purpose of the incorporation: to make a *prima facie* showing that the initial transfers are avoidable under Section 548(a). *See Picard. v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 196–97 (2d. Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209 (2022). Defendants complain that they would be required to "respond, paragraph-by-paragraph, to the allegations in the Fairfield Amended Complaint." Mot. at 11. Not so. The Complaint only incorporates the Fairfield Amended Complaint—as part of one paragraph—in pleading the avoidability of the initial transfers. This places no undue burden on the Defendants, as they can admit the substance of the avoidability of the initial transfers, deny them, or respond that they do not have sufficient information to admit or deny. Repleading all initial transfer allegations would unnecessarily add countless pages to the Complaint.

## B.    The Court Can Take Judicial Notice of the Fairfield Inv. Fund Decision

Defendants' arguments about incorporation are really much ado about nothing because this Court may take judicial notice of the operative Fairfield Second Amended Complaint and its prior decision holding that the complaint sufficiently alleges the avoidability of the initial transfers. *See Fairfield Inv. Fund*, 2021 WL 3477479. On a motion to dismiss, "a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*." *Ferrari v. Cnty. of Suffolk*, 790 F. Supp.

2d 34, 38 n.4 (E.D.N.Y. 2011).  "Included among such matters are decisions in prior lawsuits."

*DeMasi v. Benefico*, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008).  The fact that the Fairfield Second

Amended Complaint was filed after the Complaint in this action is of no consequence.  *See*

*Rothman v. Gregor*, 220 F.3d 81, 91–92 (2d Cir. 2000) (taking judicial notice of a subsequently

filed complaint in related proceeding).

The Trustee has adequately pleaded the avoidability of the initial transfers, and regardless,

this Court may take judicial notice of its opinion in *Fairfield Inv. Fund*.  If this Court holds

otherwise, the Trustee respectfully requests the opportunity to replead.

## III.    THE TRUSTEE'S COMPLAINT ADEQUATELY PLEADS THAT DEFENDANT RECEIVED BLMIS CUSTOMER PROPERTY

The Trustee's Complaint states a claim for recovery under Section 550(a)(2) by plausibly

alleging that Defendants received subsequent transfers of BLMIS customer property.  To plead a

subsequent transfer claim, the Trustee must allege facts that support an inference "that the funds

at issue originated with the debtor."  *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,

515 B.R. 117, 149 (Bankr. S.D.N.Y. 2014) (citation omitted).  No tracing analysis is required, as

the pleading burden "is not so onerous as to require 'dollar-for-dollar accounting' of 'the exact

funds' at issue."  *Id.* (quoting *Picard v. Charles Ellerin Revocable Trust (In re BLMIS)*, Adv. Pro.

Nos. 10-04398 (BRL), 10-05219 (BRL), 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14,

2012)).  Rather, as Defendants concede, "the Trustee need only allege sufficient facts to show the

relevant pathways through which the funds were transferred from BLMIS to [the subsequent

transferee]."  *Charles Ellerin Revocable Trust*, 2012 WL 892514, at *3; *see also 45 John Lofts,*

*LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 747 (Bankr. S.D.N.Y.

2019).  And, as Defendants correctly state, the Trustee must allege only "'the necessary vital

statistics—the who, when, and how much' of the purported transfers to establish an entity as a

subsequent transferee of the funds." *Merkin*, 515 B.R. at 150 (quoting *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 32 (Bankr. E.D.N.Y. 2007)).

The Trustee's Complaint alleges that the Defendant Funds received specific transfers, on specific dates, in specific amounts from Sentry, and that Sentry invested substantially all of its funds with BLMIS. Compl. ¶¶ 2, 44, 46, 48, Exs. C – E. Thus, the Complaint plausibly alleges that the Defendant Funds received subsequent transfers of customer property by (a) outlining the relevant pathway through which customer property was transferred from BLMIS to Sentry and subsequently to the Defendant Funds, and (b) providing the necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer. Nothing more is required. *See, e.g.*, *Picard v. Mayer*, No. 20-01316 (CGM), 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021) (rejecting argument that subsequent transfer "claim has not been plead with enough specificity as to how and what [defendant] received" and holding complaint "contains sufficient information regarding which transfers the Trustee is seeking to recover").

## A.    The Defendants Misstate the Trustee's Pleading Burden

The Defendants misstate the pleading burden, arguing that the Trustee must connect by "tying" each subsequent transfer received by them to a specific initial transfer from BLMIS. Mot. at 1, 12-14, 16. However, this Court has previously refused to dismiss subsequent transfer claims where the complaint "[did] not connect each of the subsequent transfers with an initial, voidable transfer emanating from BLMIS." *Merkin*, 515 B.R. at 150, *see also 45 John Lofts, LLC*, 599 B.R. at 747 (finding no "requirement to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss"). Likewise, this Court has already rejected the argument that the Trustee must detail which and what portion of each subsequent transfer comprises customer property. *See Merkin*, 515 B.R. at 152–53 (refusing to dismiss complaint where "at least some of the subsequent transfers . . . may be recoverable"); *see also In re Allou*

12

*Distribs., Inc.*, 379 B.R. at 30 (finding "if dollar-for-dollar accounting is not required at the proof stage, then surely it is not required at the pleading stage either").

In arguing that the Trustee has not met the pleading burden, Defendants rely on a misapplication of *Shapiro*, which is a factually distinguishable case. Mot. at 12-13; *Picard v. Shapiro*, 542 B.R. 100 (Bankr. S.D.N.Y. 2015). In *Shapiro*, the Trustee alleged that certain trusts and members of the Shapiro family received approximately $54 million in fraudulent transfers from BLMIS, and "upon information and belief" these defendants subsequently transferred this same amount to other defendants. *See Shapiro*, 542 B.R. at 104, 119. However, in that case the complaint *did not detail any* of the necessary vital statistics of the subsequent transfers. *Id*. at 119. There were no allegations regarding the subsequent transferors, the subsequent transferees, or the dates or amounts of the subsequent transfers, and consequently this Court granted defendants' motion to dismiss the subsequent transfer claim. *Id*. By contrast, in this case the Trustee has alleged the specific parties, dates, and amounts of each transfer the Defendant Funds received from Sentry and the investment relationship between the parties. Compl. ¶¶ 2, 44, 46, 48, Exs. C – E. As such, *Shapiro* actually supports denying Defendants' motion to dismiss because in this case the Trustee has alleged the vital statistics of each transfer they received.

### B.    Defendants' Arguments are Inappropriate for a Motion to Dismiss

Defendants' fact-based arguments pertaining to tracing and customer property, Mot. at 13-15, are both disingenuous and inappropriate for a motion to dismiss. First, Defendants assert that the Trustee's claims are "not plausible" because the Trustee is seeking more money from all subsequent transferees of Sentry than Sentry withdrew from BLMIS. Mot. at 13-14. There is no dispute that the Trustee is limited to "a single satisfaction" under Section 550(a). 11 U.S.C. § 550(d). However, the Trustee "can recover from any combination of [transferees]" up to the amount avoided. *Helms v. Metropolitan Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 656 (Bankr.

N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021).  And under Section 550(a), "a trustee may recover [an avoided] transfer from a subsequent transferee of those funds, without the necessity for allocation among all the subsequent transferees."  *CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*, 393 B.R. 306, 333 (Bankr. W.D.N.Y. 2008).  Thus, until the Trustee recovers the full amount of the approximately $3 billion in fraudulent transfers received by Sentry, the Trustee may simultaneously seek recovery from Defendants in this action and from defendants in other actions, even in an aggregate amount that exceeds associated initial transfers.  *See Fairfield Inv. Fund*, 2021 WL 3477479, at *12 (holding the defendant's arguments regarding "double recovery" and the Trustee's purported limitations under Section 550(d) are "to be determined at a later stage in the litigation").

Next, Defendants argue that they could not have received customer property because of the amount of time that purportedly elapsed between Sentry's receipt of certain initial transfers from BLMIS and Sentry's subsequent transfers to Defendants.  Mot. at 14.  Such tracing arguments are inappropriate when there are issues of commingling funds as with Sentry.  "The law does not place such a difficult burden on trustees.  The commingling of legitimate funds with funds transferred from the debtor does not defeat tracing."  *Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-cv-1073, 2020 WL 3077151, at *4 (D. Minn. June 10, 2020) (citing *Charles Ellerin Revocable Trust*, 2012 WL 892514, at *2).  Defendants inappropriately rely on the passage of time and do not disclose what tracing methodology or methodologies they rely upon to reach their conclusion.  It is for this Court to decide—after fact and expert discovery—the appropriate tracing methodology under the circumstances.  *See Merkin*, 581 B.R. at 386 ("Court's selection of an appropriate methodology is committed to the Court's discretion.") (citation omitted); *Charles*

14

*Ellerin Revocable Trust*, 2012 WL 892514, at *3, n.7 ("Courts have broad discretion to determine which monies of commingled funds derive from fraudulent sources.") (citation omitted).

Defendants additionally argue that based on their own supposition, there is an "alternative explanation" for the source of the redemption payments to the Defendant, including that Sentry paid other investors with funds from subscribing investors, and not just with funds from BLMIS. Mot. at 15-16. But to reach this conclusion, Defendants again make an inappropriate tracing argument and apply some undisclosed tracing methodology or methodologies of their choosing. This argument is nothing more than "an attempt to interject improper expert testimony into a Rule 12(b)(6) context." *Fowler v. Caliber Home Loans, Inc.*, 277 F. Supp. 3d 1324, 1331 (S.D. Fla. 2016). At this stage of the proceedings, the Trustee is not required to plead, much less establish, that an alleged subsequent transfer is comprised solely of customer property. *See Kelley*, 2020 WL 3077151, at *4 (holding that where debtors' funds are commingled with "cash from new subscribing investors," a trustee is not required to establish that the transfers "originated solely" with the debtor or even to account for "the exact funds at issue" on summary judgment).

Defendants argue that there is a "lack of linkage" between the initial transfers and subsequent transfers, Mot. at 12-15; however, the Complaint demonstrates the relationship between initial transfers from BLMIS to Sentry, and subsequent transfers from Sentry to Defendants. *See* Compl. Exs. B – E. Further, tracing arguments such as these are inappropriate on a motion to dismiss. *Charles Ellerin Revocable Trust*, 2012 WL 892514, at *3, n.7 ("Courts have broad discretion to determine which monies of comingled funds derive from fraudulent sources.") (citing *United States v. Henshaw*, 388 F.3d 738, 741 (10th Cir. 2004)). And even if it may prove difficult for the Trustee to trace these transfers, this is not grounds for dismissal at the pleading stage. *See Merkin*, 515 B.R. at 152 (finding it "premature to cut off the Trustee's

opportunity to satisfy his [tracing] burden on a motion to dismiss" merely because the tracing may prove difficult).

Lastly, the Trustee is a stranger to the transactions between Sentry and Defendants and is entitled to discovery on the issue of tracing. *See Mayer*, 2021 WL 4994435, at *4 ("the Trustee is an outsider to these transactions and will need discovery to identify the specific subsequent transfers by date, amount and the manner in which they were effected") (quoting *Picard v. Chais (In re Bernard L. Madoff Inv. Sec. LLC)*, 445 B.R. 206, 236 (Bankr. S.D.N.Y. 2011)). This Court has acknowledged that "in a case such as this one, where the Trustee's lack of personal knowledge is compounded with complicated issues and transactions [that] extend over lengthy periods of time, the trustee's handicap increases, and even greater latitude should be afforded." *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up). This is one reason why this Court in *Merkin* denied defendants' motion to dismiss, finding "[t]he subsequent transfer claim must ultimately be proved through the books and records of the defendants." 515 B.R. at 151. Further, even after fact discovery, expert opinion is necessary to determine what portion of the subsequent transfer stemmed from the initial transfer where the subsequent transfers originated from commingled accounts. *Picard v. Merkin (In re BLMIS)*, 581 B.R. 370, 386 (Bankr. S.D.N.Y. 2017).

Defendants incorrectly argue that *Merkin* does not apply here because the Trustee has had access to Sentry's books and records for over a decade therefore has all the information he needs. Mot. at 13-14. In fact, the Trustee does not have all of Sentry's books and records, and discovery in the Trustee's actions against the Fairfield management defendants continues. *See, e.g.*, Stipulated Case Management Order*, Picard v. Fairfield Inv. Fund Ltd. (In re Bernard L. Madoff)*,

Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Dec. 6, 2021), ECF No. 353 (setting November

2022 deadline for fact discovery and August 2023 deadline for expert discovery).

IV.    **SECTION 546(E) DOES NOT BAR RECOVERY FROM DEFENDANTS**

Section 546(e) provides a safe harbor for the avoidance of certain initial transfers made

outside the two-year period referenced in Section 548(a)(1)(A).    *See* 11 U.S.C. § 546(e)

("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may

not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title.") (emphasis added).

However, the District Court has held that an initial transferee's actual knowledge of Madoff's

fraud precludes application of the Section 546(e) safe harbor, thereby allowing the Trustee to avoid

transfers made prior to the two-year period.    *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec.*

*LLC*, No. 12-MC-115, 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*").

At the outset, the Section 546(e) safe harbor could not possibly apply to the vast majority

of the transfers at issue in this matter because they took place well within the two-year period

referenced in Section 548(a)(1)(A).    Therefore, putting aside that Section 546(e) does not apply on

its face independently to recovery actions such as this one, nor can it be invoked where the initial

transferee's actual knowledge has been adequately alleged, Section 546(e) by its express terms

additionally has no application to the majority of transfers in this case.    *See* Compl., Exs. B – E.

As relevant to the transfers beyond two-years, Defendants argue that they had no actual knowledge

of Madoff's fraud.    But the Trustee has sufficiently pleaded the initial transferee's actual

knowledge and therefore the initial transfers are avoidable and recoverable from Defendants

outside of the safe harbor's protections.

A.    **Fairfield Sentry Had Actual Knowledge of Madoff's Fraud**

Defendants set forth at length the requirements of Section 546(e) and how they are

presumably met in this case in multiple ways with respect to the initial transfers to Sentry, as

established by *Cohmad*. *See* Mot. at 17-22.  None of this matters, however, because, as Defendants

acknowledge, this Court has previously found that the Trustee has sufficiently pled that the initial

transferee Sentry had actual knowledge of Madoff's fraud and that such initial transfers are

avoidable.  *See id.* at 22 (citing *Fairfield Inv. Fund*, 2021 WL 3477479, at *4–5).  As such, Section

546(e) does not bar recovery of those transfers from Defendants, regardless of whether the Sentry

or Defendants qualify as financial institutions, their agreements qualify as securities contracts, or

their transfers qualify as settlement payments.[4]  The Trustee therefore focuses his response on

Defendants' erroneous arguments regarding the actual knowledge exception and its application

here.

        In a footnote, Defendants preserve their right to argue that *Cohmad* is wrong and to

relitigate whether "the text of section 546(e) does not permit courts to craft a knowledge exception

to the safe harbor provisions."  Mot. at 23, n.15.  *Cohmad* was issued in connection with

consolidated proceedings before the District Court.  The District Court then remanded the relevant

cases back to this Court, and this Court has since applied the actual knowledge "exception" on

several occasions.  *See, e.g., Fairfield Inv. Fund*, 2021 WL 3477479, at *4 (applying actual

knowledge exception).  Defendants participated in those District Court proceedings.[5]  As such,

Defendants are bound by *Cohmad* and that decision is law of the case.  *See, e.g., Sec. Inv. Prot.

Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 466 (Bankr. S.D.N.Y. 2015) ("Those

---

[4] Though not necessary to the Court's analysis, we note that Defendants' argument that the Trustee is in privity with
the Fairfield liquidators and therefore bound by any rulings in the Fairfield liquidation is incorrect. *See* Motion at 19
n.12.  Defendants cite no relevant authority for this argument because none exists. For example, *New Hampshire v.
Maine*, 532 U.S. 742 (2001), does not even involve non-party preclusion, and if *Taylor v. Sturgell*, 553 U.S. 880
(2008), "stands for anything, it is for the need to narrow and regularize the use of preclusion against nonparties." *Krys
v. Sugrue (In re Refco Inc. Sec. Litig.)*, No. 07-MD-1902 (JSR), 2013 WL 12191844, at *11 (S.D.N.Y. Mar. 25, 2013).

[5] *See Picard v. Union Sec. Inv. Trust Co., Ltd., et al.*, Adv. Pro. No. 12-01211, Memorandum of Law in Support of
Defendants' Motion to Withdraw the Reference to the Bankruptcy Court, ECF No. 23, at 7–9 (Bankr. S.D.N.Y. filed
June 25, 2013) (raising Section 546(e) as a grounds for withdrawal, among other grounds).

moving defendants that participated in the withdrawal of the reference of the antecedent debt/value issue have had their day in court and Judge Rakoff's decisions are law of the case.").

### B.    Defendants Are Precluded From Arguing That Section 546(e) Applies Independently to Recovery Actions

Defendants argue that this Court should disregard Sentry's actual knowledge and that the Trustee must instead allege the actual knowledge of Defendants themselves in order to invoke the actual knowledge exception to Section 546(e). Specifically, Defendants argue that under *Cohmad*, Sentry's Articles of Association operate as the relevant "securities contract" in lieu of BLMIS's account agreement with Sentry, and as such, in these Section 550 recovery actions, the Court must look solely to the *subsequent transferee's* actual knowledge to determine whether the initial transfer is avoidable. Motion at 21-23. But *Cohmad* does not stand for this proposition, and Defendants' argument is little more than a repackaging of the previously rejected argument that the Section 546(e) safe harbor should independently apply to recovery actions under Section 550.

Under its plain language, Section 546(e) applies to the avoidance of initial transfers, not the recovery of subsequent transfers under Section 550. *See* 11 U.S.C. § 546(e) ("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title.") (emphasis added); *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) ("*BNP*") ("The Trustee does not . . . 'avoid' the subsequent transfer; he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550."); *Kelley v. Safe Harbor Managed Acct. 101, Ltd.*, No. 20-3330, 2022 WL 1177748, *3 n.5 (8th Cir. Apr. 21, 2022) ("SHMA") (citing *BNP*).

This limitation on the safe harbor to avoidance actions is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct." *In*

19

*re Madoff Secs.*, 501 B.R. at 30.  It is also consistent with the understanding that the Bankruptcy Code's avoidance provisions protect against depletion of a debtor's estate, while Section 550 is merely a "utility provision," intended to help execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place."  *See In re Picard,* 917 F.3d 85, 98 (2d Cir. 2019).

*Cohmad* confirmed that Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees.  The District Court withdrew the reference on whether Section 546(e) barred recovery of a subsequent transfer pursuant to Section 550.[6]  However, in its decision, the court specifically limited the safe harbor to avoidance claims based on the plain language of Section 546(e).  *See Cohmad*, 2013 WL 1609154, at *4, *9 (applying the "plain terms" of Section 546(e)); at *7 (recognizing that subsequent transferees can raise initial transferees' defenses to *avoidance*); and at *10 ("[B]oth initial transferees and subsequent transferees are entitled to raise a defense based on the application of Section 546(e) to the *initial* transfer from Madoff Securities.") (emphasis added).  And though the court hypothesized, in *dicta*, that a subsequent transferee's subscription agreements with the initial transferee feeder fund, and related agreements and transactions, might under certain circumstances constitute relevant "securities contracts," and that certain subsequent transferee defendants might qualify as "financial institutions" or "financial participants," the decision is clear that the focus of the safe harbor is still on the *initial* transfers.  *See id.* at *9 ("[T]he question . . . is whether the Trustee has alleged that that *initial transfer* was made in connection with (*i.e.,* related to) a covered securities contract . . . .") (emphasis added).

---

[6] *See* Section 546(e) Briefing Order, *In re Madoff Securities*, 12-MC-115 (S.D.N.Y. filed May 16, 2012), ECF No. 119 (withdrawing the reference on issue of "whether application of Section 546(e) to an initial or mediate transfer bars recovery by the Trustee of any subsequent transfer pursuant to Section 550").

Consistent with *Cohmad*, this Court held in *BNP* that Section 546(e) is applicable only to avoidance and not recovery, and most notably that a subsequent transferee cannot assert the protections of Section 546(e) where the Trustee has adequately pled the initial transferee's actual knowledge. *See BNP*, 594 B.R. at 197; *see also In re SunEdison, Inc.*, 620 B.R. 505, 514 (Bankr. S.D.N.Y. 2020) ("the safe harbor defense only applies by its terms to the initial transfer"). In *BNP*, this Court explicitly rejected the argument being made here—that the "*only* way the Trustee can escape the application of Section 546(e) here is by pleading with particularity and plausibility that the [subsequent transferee defendants] actually knew of the Madoff Ponzi scheme." *BNP*, 594 B.R. 196–97 (emphasis in original). Like *Cohmad*, *BNP* is law of the case, and Defendants are bound by both decisions. *See Picard v. Est. of Seymour Epstein (In re BLMIS)*, No. 2l-cv-02334 (CM), 2022 WL 493734, at *12 (S.D.N.Y. Feb. 17, 2022).

Defendants nevertheless seek to relitigate this point, arguing that to the extent this Court relies on the feeder fund agreements as the relevant "securities contract" in accordance with *Cohmad*, it must then look only to the actual knowledge of the subsequent transferee. Motion at 22-23.[7] But as stated above, the District Court did not conclude this, nor did it state that the actual knowledge exception should be applied any differently even if the feeder fund agreements were to be used for Section 546(e). Indeed, such an interpretation would effectively eliminate the point of the actual knowledge exception—which is to restrict any transferee with actual knowledge from hiding behind the safe harbor. *See Cohmad*, 2013 WL 1609154, at *3. Specifically, adopting

---

[7] Defendants also contend that, by alleging that "the Fairfield Initial Transfers were made … so that Fairfield Sentry could fund the Union Securities Defendants' redemption requests," the initial transfers were "in connection with" the Sentry Articles of Association. Motion at 21. However, showing that the subsequent transfers can be traced through the "relevant pathways" to the initial transfers—which issue is analyzed *infra*—is entirely irrelevant to the issue of whether the initial transfers were "in connection with" any transaction or contract between Sentry and Defendants for purposes of applying the securities safe harbor.

Defendants' position means the safe harbor would apply even where the initial transferee feeder fund knew there were no securities transactions in need of protection.

Defendants' interpretation of *Cohmad* provides a subsequent transferee with more rights than an initial transferee, which is inconsistent with congressional intent on 546(e). *See Cohmad*, 2013 WL 1609154, at *7 (holding a subsequent transferees' actual knowledge is only relevant when the initial transferee is innocent, and can itself assert a 546(e) defense to avoidability.) *See In re Madoff Secs.*, 501 B.R. at 29 ("Section 550(a) requires that the Trustee show that the transfer he seeks to recover is avoidable in each recovery action, and the subsequent transferee in possession of that transfer may raise any defenses to avoidance available to the initial transferee, as well as any defenses to recovery it may have."). As the Eighth Circuit pointed out in SHMA while citing BNP, under Section 546(e), "a subsequent transferee is protected indirectly to the extent that the initial transfer is not avoidable because of the safe harbor." 2022 WL 1177748, at *3 n.5 (cleaned up; emphasis added).

*Cohmad*'s holding that subsequent transferees with actual knowledge are prohibited from using the safe harbor to protect themselves against recovery of transfers they received also does not support Defendants' position. *See* Motion at 23. That holding does not require a trustee to plead a subsequent transferee's actual knowledge. Rather, it merely ensures that any defendant that *doe*s have actual knowledge, including a subsequent transferee, is prohibited from using the safe harbor, such that the purpose of the actual knowledge exception is achieved consistently. *See Cohmad*, 2013 WL 1609154, at *1, *7 ("A defendant cannot be permitted to in effect launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of Section 546(e)."). This holding that, like initial transferees, subsequent transferees with actual knowledge cannot benefit from the safe harbor does not justify affording

subsequent transferees expanded protections, such that they can benefit from the safe harbor despite actual knowledge of the initial transferee.

## C.    The Trustee Has Adequately Alleged Actual Fraudulent Intent

Defendants next argue that the transfers are also not avoidable or recoverable, because the Trustee has failed to adequately allege BLMIS's "actual intent to hinder, delay or defraud" creditors under Section 548(a)(1)(A) of the Bankruptcy Code.  Mot. at 24.  Defendants contend that the Complaint lacks particularized allegations of BLMIS's actual fraudulent intent as required by Rule 9(b), and that the Trustee instead improperly relies on the "Ponzi scheme presumption." Mot. at 25.  This argument fails because the Court has repeatedly determined that the Ponzi scheme presumption establishes actual fraudulent intent.[8]   And the Complaint alleges numerous facts supporting that BLMIS was a Ponzi scheme, including that the money received from investors was used to pay off other investors—the *sine qua non* of a Ponzi scheme.  Compl. ¶¶ 16-17, 26-36.

Under this presumption, "the existence of a Ponzi scheme demonstrates actual intent as [a] matter of law because transfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay or defraud creditors." *Citibank*, 12 F.4th at 181 (citing *Picard v. Estate (Succession) of Igoin (In re BLMIS)*, 525 B.R. 871, 892 n.21 (Bankr. S.D.N.Y. 2015)).  Defendants concede, as they must, that the Ponzi scheme presumption "has been accepted by this Court and the District Court," and that the "Second Circuit has applied the presumption." Mot. at 25, n.16.  They nevertheless urge this Court to disregard this settled principle in light of a

---

[8] *See, e.g., Picard v. Sage Realty*, No. 20-CV-10109, 2022 WL 1125643, at *27–28 (S.D.N.Y. Apr. 15, 2022) (JFK); Memorandum Decision at 7, *Picard v. Fairfield Pagma Assocs., LP*, Adv. Pro. No. 10-05169 (CGM) (Bankr. S.D.N.Y. April 13, 2022), ECF No. 137; *Picard v. Est. of Seymour Epstein*, No. 1:21-cv-02334-CM, 2022 WL 493734, at *17-18 (S.D.N.Y. Feb. 17, 2022); *Picard v. Lisa Beth Nissenbaum Trust*, No. 20 cv. 3140 (JGK), 2021 WL 1141638, at *15 (S.D.N.Y. Mar. 24, 2021); *Picard v. Ken-Wen Fam. Ltd. P'ship*, Adv. Pro. No. 10-04468 (CGM), 2022 WL 709768, at *3 (Bankr. S.D.N.Y. Mar. 9, 2022); *Picard v. Nelson (In re BLMIS)*, 610 B.R. 197, 235 (Bankr. S.D.N.Y. 2019); *see also Picard v. Gettinger (In re Bernard L. Madoff Inv. Sec. LLC)*, 976 F.3d 184, 187-88 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 2603 (2021) (in which the Second Circuit noted that the case "arises out of the infamous Ponzi scheme perpetrated by Bernard L. Madoff" (footnote omitted)).

23

singular statement in a concurring opinion to the *Citibank* decision. *See Citibank*, 12 F.4th at 202

(Menashi, J., concurring).    The District Court, however, recently recognized that,

"[n]otwithstanding Judge Menashi's concerns, 'the Ponzi scheme presumption remains law of this

Circuit.'" *See Sage Realty*, 2022 WL 1125643, at *28 (citing *Gredd*, 397 B.R. at 11).  Moreover,

*dicta* in a concurring opinion has no precedential effect, and it certainly does not constitute an

intervening change of controlling law or provide any other "cogent" or "compelling" reasons to

depart from the law. *See Johnson v. Holder*, 564 F.3d 95, 99–100 (2d Cir. 2009); *Cohen v. UBS

Fin. Servs., Inc.*, No. 12-CV-02147, 2014 WL 240324, at *4 (S.D.N.Y. Jan. 22, 2014).

The Ponzi scheme presumption has moreover been embraced by federal courts generally

in this jurisdiction. *See, e.g., In re Bayou Grp., LLC*, 439 B.R. 284, 307 (S.D.N.Y. 2010) (finding

Ponzi scheme presumption establishes actual fraudulent intent); *Armstrong v. Collins*, No. 01-cv-

2437, 2010 WL 1141158, at *20 (S.D.N.Y. Mar. 24, 2010) (same); *Bear Stearns Secs. Corp. v.

Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 11 (S.D.N.Y. 2007) (same); *Drenis v.

Haligiannis*, 452 F. Supp. 2d 418, 429–30 (S.D.N.Y. 2006) (same); *In re Dreier LLP*, 452 B.R.

391, 424–25 (Bankr. S.D.N.Y. 2011) (same); *Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan

Inv. Fund Ltd.)*, 310 B.R. 500, 506 (Bankr. S.D.N.Y. 2002) (same).  Defendants ask this Court to

disregard all of the above decisions.

Defendants' attempt to cast doubt on the presumption's validity focuses on *Sharp

International Corp. v. State Street Bank & Trust Co.*, 403 F.3d 43 (2d Cir. 2005).  However,

multiple courts have explained why the Ponzi scheme presumption does not contravene the Second

Circuit's decision in that case. *See, e.g., Dreier*, 452 B.R. at 425 (rejecting argument that *Sharp*

eliminated the Ponzi scheme presumption because "*Sharp* did not involve a Ponzi scheme and the

Second Circuit did not discuss or refer to the Ponzi scheme presumption or Ponzi schemes in

general"); *In re Manhattan Inv. Fund Ltd.*, 397 B.R. at 11 ("*Sharp* does not dispose of the Ponzi scheme presumption. At most, it simply means that courts must be sure that the transfers sought to be avoided are related to the scheme."). Nor do the other cases cited by Defendants reject the presumption as it applies to Section 548(a)(1)(A). *See Finn v. All. Bank*, 860 N.W.2d 638, 647 (Minn. 2015) (finding that the presumption did not apply purely as a matter of Minnesota state law); *Merrill v. Abbott (In re Indep. Clearing House Co.),* 77 B.R. 843, 860 (D. Utah 1987) (addressing recovery of a fraudulent conveyance under a constructive fraud theory, rather than an actual fraud theory).

Finally, regardless of the Ponzi scheme presumption, the Trustee has in any event satisfied Rule 9(b). Numerous courts have found that BLMIS's actual intent to defraud has been established independent of the presumption, based on the same "badges of fraud" as alleged in the Complaint, such as, among others, the concealment of facts by BLMIS, BLMIS's insolvency, and the lack of consideration provided for BLMIS's fictitious transfers to customers. Compl. ¶¶ 16-17, 26-36; *See Picard v. JABA Assocs. LP*, No. 20-CV-3836, 2021 WL 1112342, at *14–15 (S.D.N.Y. Mar. 24, 2021) ("[T]he existence of the badges of fraud supply a separate basis to conclude that the Two-Year Transfers were made with the actual intent to defraud.") (quoting *Nelson*, 610 B.R. at 235); *Lisa Beth Nissenbaum Trust*, 2021 WL 1141638, at *15 (same). In light of these and the other allegations detailing Madoff's fraud, Defendants' argument that "the Complaint alleges nothing whatsoever about BLMIS's intent in making specific Fairfield Initial Transfers" is frivolous. Mot. at 26.

## V.    **THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS**

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only show a *prima facie* case that personal jurisdiction exists. *Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013). At this early stage, a *prima facie* showing of jurisdiction "may be

established solely by allegations." *Id.*, at 84-85. A plaintiff also may establish a *prima facie* case

of jurisdiction through affidavits and supporting materials that contain averments of facts outside

the pleadings. *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010).

The pleadings and affidavits are to be construed "in the light most favorable to the plaintiffs,

resolving all doubts in their favor." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163

(2d Cir. 2010); *Picard v. Bureau of Labor Ins. (In re Bernard L. Madoff)*, 480 B.R. 501, 516-18

(Bankr. S.D.N.Y. 2012) (Lifland, J.) ("*BLI*").

A court may exercise general or specific personal jurisdiction based on the nature of the

defendant's contacts with the forum. *See Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 473

(S.D.N.Y. 2001). Specific jurisdiction, at issue here, exists where the defendant purposely directs

its activities into the forum and the underlying cause of action arises out of or relates to those

activities. *Picard v. Fairfield Greenwich Group (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 566

(Bankr. S.D.N.Y. 2021) (citing *Cromer*, 137 F. Supp. 2d at 473).

The specific jurisdiction analysis is a two-step inquiry. First, the court assesses whether

the defendant purposefully established "minimum contacts" in the forum, such that the defendant

purposefully availed itself of the privilege of conducting activities with the forum. *See Int'l Shoe

Co. v. Washington*, 326 U.S. 310, 316 (1945); *Burger King v. Rudzewicz*, 471 U.S. 462, 475–76

(1985). Activity which took place outside the forum and even a "single transaction" with the

forum can constitute purposeful availment. *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R.

106, 117 (Bankr. S.D.N.Y. 2011) (citing *McGee v. Int'l Life Ins. Co.*, 335 U.S. 220, 223 (1957))

(internal citation omitted). Moreover, minimum contacts may be found when a "'defendant's

allegedly culpable conduct involves at least in part financial transactions that touch the forum.'"

*In re Fairfield Sentry Ltd.*, 627 B.R. at 566 (quoting *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 151 (2d Cir. 2019)).

Second, the court determines if the exercise of personal jurisdiction is "reasonable" such that doing so will not offend the traditional notions of "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 320. To determine whether jurisdiction is reasonable, courts consider the following factors:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (citation omitted). Where the plaintiff has alleged purposeful availment, however, the burden shifts to the defendant to present a "compelling case" that jurisdiction would be unreasonable. *In re Fairfield Sentry Ltd.*, 627 B.R. at 567 (citing *Burger King*, 471 U.S. at 472–73).

In determining whether a defendant's forum contacts establish personal jurisdiction, the Court must look at "the totality of the circumstances" rather than analyze each contact in isolation. *See, e.g., Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996); *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 59 (S.D.N.Y. 1999) ("[W]e are directed by the Second Circuit to look at 'the totality of the circumstances'" in a personal jurisdiction analysis) (internal citation omitted). In this case, the totality of the circumstances demonstrates that Defendants purposefully availed themselves of the protections and privileges of conducting business in New York and that the exercise of personal jurisdiction over them is reasonable.

A.    **Defendants Purposefully Availed Themselves of the Laws and Privileges of New York by Investing in Sentry**

Defendants had multiple contacts with New York which establish this Court's jurisdiction. They: (1) used New York bank accounts to send subscription payments to and receive redemption payments from Sentry; (2) purposefully targeted the New York securities market by investing in Sentry, which was managed and custodied by BLMIS in New York; and (3) had direct connections with New York through their Sentry subscription agreements. While many of these contacts are sufficient to establish personal jurisdiction on their own, in their totality these contacts demonstrate that Defendants purposefully directed their activities to New York. *See Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 397 F. Supp. 3d 323, 344 (S.D.N.Y. 2019) ("When all [defendant]'s Agreement-related contacts are considered together, it is clear [the defendant] purposely availed itself of the forum.").

B.    **Defendants' Purposeful Use of Their Own and Fairfield's New York Bank Accounts Establishes Specific Personal Jurisdiction**

Each Defendant Fund had a U.S. correspondent bank account at J.P. Morgan Chase Bank in New York. Cremona Decl. Exs. 1-3. The correspondent accounts were either in the Defendant Funds' own names or in the name of Cathay United Bank, for the benefit of the Defendant Funds. *Id.* Cathay United Bank acted as a custodian for the Defendant Funds and handled settlement payments and dividend collections from Sentry. *Id.* The Defendant Funds used these accounts to receive redemption and fee payments from Sentry and specifically designated these accounts in the Communication and Payment Instructions annexed to their subscription agreements. *Id.*, Exs. 1-3, 10-12. Courts have repeatedly held that use of New York bank accounts to conduct significant and repeated transfers of funds is sufficient in and of itself to establish personal jurisdiction under

either the due process analysis or the New York long-arm statute, N.Y. C.P.L.R. § 302(a)(1).[9] *See,
e.g., Eldesouky v. Aziz*, No. 11–CV–6986 (JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19,
2014) (finding jurisdiction under New York long-arm statute based solely on defendant's use of
New York account to receive payment at issue); *HSH Nordbank*, 2012 WL 2921875, at *4 (same);
*Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 382–83 (S.D.N.Y. 2013) (same).

This Court has similarly found jurisdiction where transferee defendants invested from or
received relevant transfers in U.S. bank accounts. *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594
B.R. 167, 191 (Bankr. S.D.N.Y. 2018) *("BNP")* (finding personal jurisdiction over the transferee
where "in their capacity as investors, the Defendants sent subscription agreements to New York,
wired funds in U.S. dollars to New York, sent redemption requests to New York and received
redemption payments from a Bank of New York account in New York."); *Picard v. Estate of Igoin
(In re BLMIS)*, 525 B.R. 871, 884 (Bankr. S.D.N.Y. 2015) (finding personal jurisdiction over initial
transferee defendants who received transfers from BLMIS's New York bank account).

In addition to the repeated use of their New York bank accounts, Defendants sent and
received payments to and from Sentry's New York correspondent bank account at HSBC Bank
USA, for ultimate deposit in Sentry's bank account. Through USITC, the Defendant Funds agreed
to send subscription payments to Sentry's New York account in numerous subscription
agreements. Cremona Decl., Exs. 10 – 12. This repeated and intentional use of Sentry's New York
correspondent bank account is also sufficient to establish personal jurisdiction over Defendants.

---

[9] Certain cases discussed herein address jurisdiction under New York's long-arm statute. Due to the close overlap
between the requirements of due process and the New York long-arm statute, courts engaging in a due process analysis
frequently cite long-arm cases. *See, e.g., HSH Nordbank AG N.Y. Branch v. Street*, No. 11 Civ. 9405(DLC), 2012 WL
2921875, at *4 n.3 (S.D.N.Y. July 18, 2012) (noting "the personal jurisdiction analysis under § 302(a)(1) and the Due
Process Clause is in most instances essentially coterminous") (citations omitted).

For these and the reasons discussed more fully *infra*, cases cited by Defendants are distinguishable from the instant case in which defendants are alleged to and did direct conduct toward New York from which the Trustee's claims arise. *See Neewra, Inc.v. Manakh Al Khaleej Gen. Trading & Contracting Co*., No. 03 CIV. 2936, 2004 WL 1620874, at *5 (S.D.N.Y. July 20, 2004) (correspondent account was not used to effect any transactions giving rise to plaintiff's claims); *see also Homeschool Buyers Club, Inc. v. Brave Writer, LLC*, No. 19-CV-6046, 2020 WL 1166053, at *5 (S.D.N.Y. Mar. 11, 2020) (plaintiff did not allege "the existence of a single act directed at New York out of which these claims arise").

This Court should also reject Defendants' claim that the transfers the Trustee seeks to recover "occurred entirely outside of the United States" and were "purely foreign." Mot. at 28–29. Defendants base this claim on arguments made by the Fairfield liquidators[10] in a different case that turns on whether the Section 546(e) safe harbor applies to claims brought under B.V.I. law by foreign liquidators in a chapter 15 proceeding—an issue plainly not relevant here. In this case, by contrast, the Second Circuit has already found, "These transfers are domestic activity." *In re Picard, Trustee for Liquidation of Bernard L. Madoff Inv. Sec. LLC,* 917 F.3d 85, 105 (2d Cir. 2019) *("ET Decision")* ("When a domestic debtor commits fraud by transferring property from a U.S. bank account, the conduct that § 550(a) regulates takes place in the United States.").

---

[10] *See supra* n.4.

08-01789-cgm    Doc 21692    Filed 06/06/22    Entered 06/06/22 19:18:04    Main Document
Pg 42 of 50

C. **Defendants' Intentional Investment in BLMIS Through Sentry Establishes Minimum Contacts**

Defendants'[11] intentional investment with BLMIS in New York through known BLMIS feeder funds alone establishes personal jurisdiction.  The Second Circuit recognized that when subsequent transfer investors, like the Defendant Funds, chose to invest with "feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going." *ET Decision*, 917 F.3d at 105.  By executing numerous subscription agreements and affirming that they read Sentry's PPMs the Defendant Funds knew that: (i) BLMIS performed all investment management duties for these assets; (ii) BLMIS was registered with the U.S. Securities and Exchange Commission; (iii) BLMIS was the executing broker for Sentry's investments, and purportedly operated and executed the SSC Strategy on the fund's behalf; (iv) BLMIS was the custodian of Sentry's investments with BLMIS; and (v) BLMIS was "essential to the continued operation of" Sentry. Cremona Decl., Ex. 13.  The fact that the Defendant Funds' investments would ultimately lie with BLMIS was not a mystery to them; it was the entire point of investing with Sentry.

1. *BLI* **Establishes this Court's Jurisdiction Over Defendants**

This Court has already concluded that investors like Defendants, who intentionally invested in BLMIS through Sentry are subject to personal jurisdiction in *BLI*.  480 B.R. at 516-18. There, as here, the Trustee's suit was "based upon [the subsequent transferee's] investment of tens of millions of dollars in Sentry with the specific goal of having funds invested in BLMIS in New

---

[11] Given the overlap in corporate functions and the control exercised by USITC over the Defendant Funds, the actions of USITC should be imputed to all the Defendants. *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 319 (S.D.N.Y. 2009) (holding that common ownership and overlapping directors and executives, financial dependency of the subsidiary on the parent, involvement by the parent in the hiring of staff and the parent's control of the subsidiary's marketing and operational policies all support a finding that subsidiary is a "mere department or shell of a parent for jurisdictional purposes.").

York, with intent to profit therefrom." *Id.* at 506.  There, as here, the subsequent transferee was

provided with identical PPMs and executed identical subscription agreements establishing the

investment's BLMIS-centric purpose.  *Id.* at 507-08.  And there, as here, the subsequent transferee

argued that the foreseeability of its investment "ending up" in a BLMIS account was insufficient

to support personal jurisdiction.  *Id.* at 517.  Not only did the Court reject this argument, Judge

Lifland called it "disingenuous," explaining that:

> BLI's investments in Fairfield Sentry did not merely "end up" in an
> account at BLMIS as a result of happenstance or coincidence.
> Rather, BLI purposefully availed itself of the benefits and
> protections of New York laws by knowing, intending and
> contemplating that the substantial majority of funds invested in
> Fairfield Sentry would be transferred to BLMIS in New York to be
> invested in the New York securities market.

*Id.* at 517.  As framed by this Court, "BLI intentionally tossed a seed from abroad to take root and

grow as a new tree in the Madoff money orchard in the United States and reap the benefits

therefrom."  *BLI*, 480 B.R. at 506.  Because Defendants are identically situated to the defendant in

*BLI* with respect to the fundamental purpose of their investment, *BLI* is controlling and resolves

Defendants' personal jurisdiction defense without the need for inquiry into its additional New York

contacts.

### D.    The Defendants' Contacts with FGG in New York also Establish Minimum Contacts

By investing with Sentry, Defendants knowingly transacted business with FGG in New

York.  Under similar facts to those present, this Court found jurisdiction over an investor defendant

based on the U.S. contacts inherent in doing business with the Tremont funds, another BLMIS

feeder fund.  *BNP*, 594 B.R. at 191 (finding a *prima facie* showing of jurisdiction "over any

fraudulent transfer claims resulting from redemptions by the Defendants from their accounts with

the Tremont Funds").

08-01789-cgm    Doc 21692    Filed 06/06/22    Entered 06/06/22 19:18:04    Main Document
Pg 44 of 50

Additionally, the numerous subscription agreements the Defendant Funds executed with Sentry further evidence a "strong nexus with New York" that supports jurisdiction. *See BLI*, 480 B.R. at 517, n.15. In each of the subscription agreements the Defendant Funds executed, they submitted to venue in New York, the jurisdiction of the New York courts, and the application of New York law. Specifically, the Defendant Funds agreed to the subscriptions agreements' clauses in which they (i) "agree[d] that any suit, action or proceeding . . . with respect to this Agreement and the Fund may be brought in New York," (ii) "irrevocably submit[ted] to the jurisdiction of the New York courts with respect to any [p]roceeding," and (iii) agreed that disputes over the agreement "shall be governed and enforced in accordance with the laws of New York," and that if litigating here, it "may not claim that a Proceeding has been brought in an inconvenient forum." Cremona Decl., Exs. 10-12.

Defendants' argument that these provisions are immaterial because the Trustee is not a party to the subscription agreements and the Trustee's claims do not arise under the subscription agreements misapprehends the relevance of these provisions in this action. *See* Mot. at 30-31. The Trustee is not seeking to enforce the choice of venue and choice of law provisions, nor does the Trustee argue that this Court has jurisdiction based on the Defendant Funds' consent. Rather, the Defendant Funds' repeated agreement to New York law, New York jurisdiction, and New York venue in these subscription agreements is a significant jurisdictional contact with New York and serves as evidence that Defendants purposefully directed its activities toward New York.

Courts have repeatedly held that such provisions constitute jurisdictional contacts with the forum state. *See Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004) ("A choice of law clause is a significant factor in a personal jurisdiction analysis because the parties, by so choosing, invoke the benefits and protections of New York law.") (citing *CutCo Indus., Inc. v.*

*Naughton*, 806 F.2d 361, 367 (2d Cir.1986) and *Sacody Techs., Inc. v. Avant, Inc.*, 862 F. Supp. 1152, 1156 (S.D.N.Y. 1994)); *Chase Manhattan Bank v. Banque Generale Du Com.*, No. 96 CIV. 5184 (KMW), 1997 WL 266968, at *2 (S.D.N.Y. May 20, 1997) ("[A] choice of law provision may constitute a 'significant contact' with the forum state."); *see also Burger King*, 471 U.S. at 482 ("Although such a [choice of law] provision standing alone would be insufficient to confer jurisdiction . . . it reinforced [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there.").

In *BLI*, this Court, without addressing the issue of whether defendants consented to jurisdiction, found that the clauses in the subscription agreements "further evidenc[e] the strong nexus with New York." 480 B.R. at 517, n.15; *see also Motors Liquidation Co. Avoidance Action Trust v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, 565 B.R. 275, 288–89 (Bankr. S.D.N.Y. 2017) (finding agreement provisions under New York law plus correspondent banking in New York evidenced a relationship "centered in New York").

Defendants' reliance on the treatment of subscription agreements in the *Fairfield Liquidators* decision is misplaced. Mot. at 30-31, citing *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, No. 10-13164, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) (*"Fairfield Liquidators"*). In that case, the Fairfield Liquidators argued that the defendants had consented to personal jurisdiction because they were bound by the New York provisions in the subscription agreements. *Fairfield Liquidators,* 2018 WL 3756343, at *7, 8. The Trustee, however, does not argue that Defendants consented to the jurisdiction of this Court by virtue of the subscription agreements alone. Rather, the Trustee argues that the execution of multiple subscription agreements, all of which contained New York choice of law, jurisdiction and venue provisions, serves as an important jurisdictional contact with the forum and persuasive

34

evidence of Defendants' purposeful availment of the laws and privileges of New York. Similarly, *Lavazza* supports the Trustee's argument that the forum selection clause is evidence of purposeful direction of activities and foreseeability of being subject to the laws of the United States. *See* Mot. at 30; *Lavazza Premium Coffees Corp. v. Prime Line Distribs. Inc.*, No. 20 CIV. 9993 (KPF), 2021 WL 5909976, at *6-8 (S.D.N.Y. Dec. 10, 2021) (holding that plaintiff made a "prima facie showing that its [] claims fall within New York's long-arm statute and that the Court's exercise of personal jurisdiction over Defendant for these claims is consistent with due process despite finding that forum selection clause was not enforceable as to some of the claims at issue).

In attempting to downplay the importance of its contacts with Sentry, Defendants rely on a misreading of *Walden v. Fiore*, 571 U.S. 277 (2014). Mot. at 30-32. In fact, *Walden* has no application here. In a case addressing the foreseeability of an injury arising within a forum state based on tortious conduct outside that state, the Court in *Walden* found that a Georgia police officer could not be sued in Nevada for an unlawful seizure of money in Georgia merely because he knew the plaintiffs resided in Nevada. *Walden*, 571 U.S. at 288-91. *Walden* simply reaffirms the well-established principle that personal jurisdiction cannot be premised solely on a plaintiff's unilateral contacts with the forum state. *See id.* at 284.

By contrast, here, the Trustee is not alleging foreseeability as to the situs of an injury. Rather, as in *BLI*, the Trustee is alleging that Defendants purposefully availed itself of the benefits and laws pertaining to investing in the United States. As demonstrated by Sentry's offering materials, the PPMs, and subscription agreements, its express purpose was to pool funds and funnel them to BLMIS in New York for investment in the U.S. securities markets. *See, e.g.*, Compl. at ¶ 2; Cremona Decl., Exs.10-13. Armed with this knowledge, Defendants made a conscious decision to invest in Sentry precisely so that it could reap the rewards of investing with BLMIS in New

York.  *Id.*  A finding of personal jurisdiction on the basis of such purposeful actions directed at a

New York broker-dealer and the U.S. securities markets centered in New York comports with the

traditional notions of fair play and substantial justice.  *See Burger King*, 471 U.S. at 471-74 (noting

that due process concerns are satisfied when an out-of-state defendant purposely directs his

activities at residents of the forum state and purposely benefits from those activities).  In short,

there is nothing in *Walden* that precludes jurisdiction here, or that questions, limits, or otherwise

has any bearing on the holding in *BLI*.

Defendants also misinterpret *Walden* to the extent it argues, in effect, that their contacts to

the forum must be viewed in a vacuum as opposed to being based on its relationships with BLMIS

and its feeder funds.  *Walden* recognized that "a defendant's contacts with the forum State may be

intertwined with his transactions or interactions with the plaintiff or other parties."  *Walden*, 571

U.S. at 286; *see also Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1031-32

(2021) (rejecting defendant's contention that *Walden* "shows that a plaintiff's residence and place

of injury can never support jurisdiction" and pointing out that "[t]hose places still may be relevant

in assessing the link between the defendant's forum contacts and the plaintiff's suit").

### E.    Defendants' Contacts with the Forum are Sufficiently Related to the Trustee's Claims

Trustee's claims also "arise out of or relate to" Defendants' contacts with New York.  As

the Supreme Court recently held, this prong does not require a causal relationship.  *See Ford

Motor*, 141 S. Ct. at 1026-30.  Rather, as this Court has previously stated, this prong may be

satisfied if the defendant's conduct "involves at least in part financial transactions that touch the

forum."  *In re Fairfield Sentry Ltd.*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021).

Defendants' argument that "the allegations that the [Defendants] knew that Fairfield

Sentry, a foreign fund, would invest in BLMIS is not the basis of this litigation, and thus does not

support jurisdiction" is simply wrong and *Helicopteros* is distinguishable on its facts.  Mot. at 29;

*see Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (location of bank

from which a check is drawn is "left to the discretion of the drawer" and therefore "not an

appropriate consideration when determining whether a defendant has sufficient contacts with a

forum State to justify an assertion of jurisdiction.").  The Defendant Funds' use of U.S. bank

accounts and their execution of numerous subscription agreements plainly "relate to" the Trustee's

claims and evidence a strong nexus between this case and New York.  The very transfers which

came through these U.S. bank accounts are central to the Trustee's claims in this proceeding.

Furthermore, the Defendant Funds' subscriptions into and redemptions from Sentry are two sides

of the same coin.  The Defendant Funds could not invest in and profit from Sentry without a

subscription agreement, and in this case, the Defendant Funds executed numerous agreements with

Sentry.  Cremona Decl., Exs. 10 -12.  Because the Defendant Funds' subscription agreements were

necessary predicates to their receipt of customer property through Sentry, the subscription

agreements are sufficiently related to the Trustee's claims to recover that customer property from

Defendants.

The other cases cited by Defendants are either distinguishable on their facts or support a

finding of personal jurisdiction in the instant case.  *See, e.g.*, *Zim Integrated Shipping Servs. Ltd.

v. Bellwether Design Techs, LLC*, No. 19-CV-3444 (VSB), 2020 WL 5503557, at *3-5 (S.D.N.Y.

Sept. 10, 2020) (finding contacts with New York insufficient to confer personal jurisdiction where

those contacts were two shipments of goods unrelated to the claims at issue).  Defendants' reliance

on cases asserting common law claims brought against fund service providers is equally

unavailing.  *See* Motion at 31 (citing *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018); *Hill

v. HSBC Bank plc*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016).  This Court has previously determined

that this line of cases is inapplicable to claims against defendants like the Defendants, who invested in BLMIS feeder funds.  In *BNP* this Court specifically noted that "*Hill* has no bearing on the issue of personal jurisdiction arising from the Defendants' redemptions as investors in the Tremont Funds which arose from their New York contacts with the Tremont Funds." 594 B.R. at 192.  In summary, the Trustee has demonstrated that Defendants' multiple contacts with New York are sufficiently related to the Trustee's claims.

### F.    Exercise of Personal Jurisdiction Over Defendants is Reasonable

Defendants have failed to put forth any compelling reason why jurisdiction would be unreasonable.  Where a plaintiff has made a threshold showing of minimum contacts, a defendant opposing the exercise of personal jurisdiction must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Chloé*, 616 F.3d at 165. Indeed, this Court has found "it would be a 'rare' case where the defendant's minimum contacts with the forum support the exercise of personal jurisdiction but it is unreasonable to force the defendant to defend the action in that forum." *BNP*, 594 B.R. at 188 (citation omitted).

This is not that "rare" case.  The burden on Defendants is minimal.  *See Maxam Absolute Return Fund, L.P.*, 460 B.R. at 119 (finding New York counsel and conveniences of modern communication and transportation minimize any such burden).  The United States has a strong interest in applying U.S. law in this SIPA liquidation proceeding.  *See id.*; *see also ET Decision*, 917 F.3d at 103 (noting the "compelling interest in allowing domestic estates to recover fraudulently transferred property").  And the Trustee has a strong interest in litigating in the United States. *See Maxam Absolute Return Fund, L.P.*, 460 B.R. at 119.  Accordingly, this Court's exercise of jurisdiction over Defendants is more than reasonable.

### G.    In the Alternative, the Trustee is Entitled to Jurisdictional Discovery

If this Court finds that the Trustee has not yet made a *prima facie* showing of jurisdiction, the Trustee respectfully requests jurisdictional discovery. Such discovery may be authorized where a plaintiff has made "a threshold showing" that there is some basis for jurisdiction. *Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618 (KMW) (HBP), 2009 WL 3817590, at *4 (S.D.N.Y. Nov. 16, 2009).  The Trustee has shown how Defendants purposefully invested with BLMIS through Sentry and relied upon U.S. bank accounts to receive BLMIS customer property.  *See supra* pp. 9-12.  At a minimum, these facts establish a "threshold showing" of jurisdiction.  *Kiobel*, 2009 WL 3817590, at *6.

### CONCLUSION

The Trustee respectfully requests the Court deny Defendants' Motion.

Dated: June 6, 2022
    New York, New York

/s/ Nicholas J. Cremona
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Robyn M. Feldstein
Email:  rfeldstein@bakerlaw.com
Alexa T. Bordner
Email:  abordner@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Chapter 7 Estate of Bernard L. Madoff*