**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>         Plaintiff-Applicant,<br><br>    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>         Defendant. | Adv. Pro. No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>         Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff,<br><br>         Plaintiff,<br><br>    v.<br><br>BANK HAPOALIM B.M. and BANK HAPOALIM (SWITZERLAND) LTD.,<br><br>         Defendants. | Adv. Pro. No. 12-01216 (CGM)<br><br><br>**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT** |

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ......................................................................................................3

    I.     THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS..............................3

    II.    DEFENDANTS AND THEIR INVESTMENT IN SENTRY................................4

ARGUMENT ..........................................................................................................................6

    I.     THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS ........6

         A.    Defendants Purposefully Availed Themselves of the Laws and
              Privileges of Conducting Business in New York and the United States
              by Investing in the BLMIS Feeder Funds ....................................................8

              1.    Defendants' Intentional Investments With BLMIS Through
                   the BLMIS Feeder Funds Establish Minimum Contacts .................9

                   a.    *BLI* Establishes This Court's Jurisdiction Over
                        Defendants ........................................................................10

                   b.    *Walden* Does not Save Defendants From This Court's
                        Jurisdiction ........................................................................11

              2.    The Forum Selection and Choice of Law Clauses in the
                   Subscription Agreements are Strong Jurisdictional Contacts........14

              3.    Defendants Had Significant Other Contacts With the United
                   States in Connection With Their Investments in Other BLMIS
                   Feeder Funds .................................................................................15

              4.    Defendants' Purposeful Use of New York Bank Accounts
                   Establishes Specific Jurisdiction...................................................16

                   a.    Defendants' Intentional, Repeated Use of New York
                          Bank Accounts for Their Investments Establishes
                            Jurisdiction ........................................................................16

                     b.    That the JPM NY Account and HSBC USA Account
                          Were Correspondent Does not Alter the Analysis.............17

                5.    Defendants' Contacts With the Forum are Sufficiently Related
                   to the Trustee's Claims ..................................................................19

6.    Defendants' Remaining Arguments Against Jurisdiction are
not Persuasive ................................................................................20

B.    The Exercise of Personal Jurisdiction Over Defendants is Reasonable ....21

C.    In the Alternative, the Trustee is Entitled to Jurisdictional Discovery ......22

II.    THE TRUSTEE'S COMPLAINT STATES A VALID CAUSE OF ACTION
FOR RECOVERY OF BLMIS CUSTOMER PROPERTY UNDER
SECTION 550(a) ..............................................................................................23

III.    THE TRUSTEE SUFFICIENTLY PLEADS THE AVOIDABILITY OF
THE INITIAL TRANSFERS ............................................................................29

A.    The Incorporated Material Complies With Rules 10 and 8 ......................29

B.    The Court Can Take Judicial Notice of the *Fairfield Inv. Fund*
Decision ..................................................................................................34

IV.    SECTION 546(e) DOES NOT BAR RECOVERY FROM DEFENDANTS .......34

A.    Sentry Had Actual Knowledge of Madoff's Fraud ....................................35

B.    Defendants Are Precluded From Arguing That Section 546(e) Applies
Independently to Recovery Actions ..........................................................35

CONCLUSION.....................................................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC*,
  599 B.R. 730 (Bankr. S.D.N.Y. 2019)..............................................................23, 24

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
  98 F.3d 25 (2d Cir. 1996)........................................................................................8

*Al Rushaid v. Pictet & Cie*,
  28 N.Y.3d 316 (2016) ......................................................................................17, 19

*Am. Casein Co. v. Geiger (In re Geiger)*,
  446 B.R. 670 (Bankr. E.D. Pa. 2010) ..................................................................30

*In re Amaranth Natural Gas Commodities Litig.*,
  587 F. Supp. 2d 513 (S.D.N.Y. 2008)...................................................................13

*Ayyash v. Bank Al-Madina*,
  No. 04 Civ. 9201, 2006 WL 587342 (S.D.N.Y. Mar. 9, 2006) ...........................23

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985).......................................................................7, 8, 14, 15

*Chase Manhattan Bank v. Banque Generale Du Com.*,
  No. 96 CIV 5184, 1997 WL 266968 (S.D.N.Y. May 20, 1997) ...........................14

*Chloé v. Queen Bee of Beverly Hills, LLC*,
  616 F.3d 158 (2d Cir. 2010).........................................................................6, 8, 22

*CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*,
  393 B.R. 306 (Bankr. W.D.N.Y. 2008) ................................................................29

*Cromer Fin. Ltd. v. Berger*,
  137 F. Supp. 2d 452 (S.D.N.Y. 2001).....................................................................6

*CutCo Indus., Inc. v. Naughton*,
  806 F.2d 361 (2d Cir. 1986) ..................................................................................15

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014).................................................................................................6

*Dandong v. Pinnacle Performance Ltd.*,
  966 F. Supp. 2d 374 (S.D.N.Y. 2013).....................................................................16

*DeMasi v. Benefico*,
    567 F. Supp. 2d 449 (S.D.N.Y. 2008)......................................................................34

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
    722 F.3d 81 (2d Cir. 2013)..................................................................................6

*Eldesouky v. Aziz*,
    No. 11–CV–6986, 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014) ..........................16

*Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
    397 F. Supp. 3d 323 (S.D.N.Y. 2019)................................................................8, 18

*In re Fairfield Sentry Ltd.*,
    No. 10-13164, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ......................14

*Ferrari v. Cnty. of Suffolk*,
    790 F. Supp. 2d 34 (E.D.N.Y. 2011) ..................................................................34

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021)................................................................................19, 20

*Fowler v. Caliber Home Loans, Inc.*,
    277 F. Supp. 3d 1324 (S.D. Fla. 2016) ..............................................................26

*Gowan v. Amaranth Advisors, LLC (In re Dreier LLP)*,
    Adv. Pro. Nos. 10-03493 (SMB) & 10-05447 (SMB), 2014 WL 47774
    (Bankr. S.D.N.Y. Jan. 3, 2014) ....................................................................27, 28

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
    425 F.3d 158 (2d Cir. 2005).................................................................................8

*Gucci Am., Inc. v. Li*,
    135 F. Supp. 3d 87 (S.D.N.Y. 2015)...................................................................19

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408, 417 (1984) ..................................................................................12

*Hau Yin To v. HSBC Holdings plc*,
    No. 15-CV-3590, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) ..............................21

*Helms v. Metro. Life Ins. Co. (In re O'Malley)*,
    601 B.R. 629 (Bankr. N.D. Ill. 2019) .................................................................29

*Hill v. HSBC Bank plc*,
    207 F. Supp. 3d 333 (S.D.N.Y. 2016) .................................................................21

*Hinton v. Trans Union, LLC*,
    654 F. Supp. 2d 440 (E.D. Va. 2009) .................................................................32

*HSH Nordbank AG N.Y. Branch v. Street*,
   No. 11 Civ. 9405 (DLC), 2012 WL 2921875 (S.D.N.Y. July 18, 2012) .....................7, 16, 19

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)...................................................................................................7, 20

*Kelley v. Westford Special Situations Master Fund, L.P.*,
   No. 19-cv-1073, 2020 WL 3077151 (D. Minn. June 10, 2020) ................................26, 27, 28

*Kelley v. Safe Harbor Managed Acct. 101, Ltd.*,
   No. 20-3330, 2022 WL 1177748 (8th Cir. Apr. 21, 2022) ...............................................36, 39

*Kiobel v. Royal Dutch Petroleum Co.*,
   No. 02 Civ. 7618, 2009 WL 3817590 (S.D.N.Y. Nov. 16, 2009) ....................................22, 23

*Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*,
   No. 07-MD-1902 (JSR), 2013 WL 12191844 (S.D.N.Y. Mar. 25, 2013) ............................14

*Liberatore v. Calvino*,
   293 A.D.2d 217, 742 N.Y.S.2d 291 (App. Div. 2002) ..........................................................16

*Licci v. Lebanese Canadian Bank, SAL*,
   20 N.Y.3d 327 (2012) ...............................................................................................17, 18, 19

*Picard v. Lowrey*,
   596 B.R. 45 (S.D.N.Y. 2019) ...............................................................................................31

*Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC*,
   843 F. Supp. 2d 191 (D. Mass. 2012) ...................................................................................31

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996)...................................................................................................7

*Morrison v. Off. of the U.S. Tr. (In re Morrison)*,
   375 B.R. 179 (Bankr. W.D. Pa. 2007) ..................................................................................30

*Motors Liquidation Co. Avoidance Action Trust v. JPMorgan Chase Bank, N.A.*
   *(In re Motors Liquidation Co.)*,
   565 B.R. 275 (Bankr. S.D.N.Y. 2017)...........................................................................15, 18

*Nappier v. Pricewaterhouse Coopers LLP*,
   227 F. Supp. 2d 263 (D.N.J. 2002) .......................................................................................26

*New Hampshire v. Maine*,
   532 U.S. 742 (2001)...............................................................................................................14

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
   No. 08-CV-5023, 2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010)...........................................31

*Off. Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic Bank,*
  549 B.R. 56 (S.D.N.Y. 2016)......................................................................17, 18, 19

*In re Picard,*
  917 F.3d 85 (2d Cir. 2019)..........................................................................9, 22, 36

*Picard v. BNP Paribas S.A. (In re BLMIS),*
  594 B.R. 167 (Bankr. S.D.N.Y. 2018) ........................................................... *passim*

*Picard v. Bureau of Labor Insurance (In re BLMIS),*
  480 B.R. 501 (Bankr. S.D.N.Y. 2012) ........................................................... *passim*

*Picard v. Chais (In re BLMIS),*
  440 B.R. 274 (Bankr. S.D.N.Y. 2010)......................................................................19

*Picard v. Charles Ellerin Revocable Tr.,*
  Adv. Pro. No. 10-04398 (BRL), 2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14,
  2012) ............................................................................................................. *passim*

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC),*
  12 F.4th 171 (2d Cir. 2021) ................................................................................3, 4

*Picard v. Cohmad Secs. Corp.,*
  454 B.R. 317 (S.D.N.Y. 2011)................................................................................27

*Picard v. Estate (Succession) of Doris Igoin (In re BLMIS),*
  525 B.R. 871 (Bankr. S.D.N.Y. 2015).............................................................17, 18

*Picard v. Estate of Seymour Epstein (In re BLMIS),*
  No. 2l-cv-02334, 2022 WL 493734 (S.D.N.Y. Feb. 17, 2022) ............................38

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.),*
  627 B.R. 546 (Bankr. S.D.N.Y. 2021).....................................................6, 7, 8, 19

*Picard v. Fairfield Investment Fund Ltd. (In re BLMIS),*
  Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6,
  2021) ............................................................................................................. *passim*

*Picard v. JPMorgan Chase & Co. (In re BLMIS),*
  No. 08-99000 (SMB), 2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10, 2014).........11

*Picard v. Mayer,*
  Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435 (Bankr. S.D.N.Y. Oct.
  27, 2021) ...............................................................................................................24

*Picard v. Maxam Absolute Return Fund, L.P.,*
  460 B.R. 106 (Bankr. S.D.N.Y. 2011).............................................................7, 9, 22

*Picard v. Merkin (In re BLMIS)*,
   515 B.R. 117 (Bankr. S.D.N.Y. 2014) ............................................................ *passim*

*Picard v. Merkin (In re BLMIS)*,
   581 B.R. 370 (Bankr. S.D.N.Y. 2017) ............................................................26, 28

*Picard v. Shapiro (In re BLMIS)*,
   542 B.R. 100 (Bankr. S.D.N.Y. 2015) ............................................................24, 25

*Rothman v. Gregor*,
   220 F.3d 81 (2d Cir. 2000) ............................................................................34

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
   624 F.3d 123 (2d Cir. 2010) ..........................................................................6

*Sass v. Barclays Bank PLC (In re Am. Home Mortg., Holdings, Inc.)*,
   501 B.R. 44 (Bankr. D. Del. 2013) .................................................................26

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   531 B.R. 439 (Bankr. S.D.N.Y. 2015) ...........................................................35

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
   501 B.R. 26 (S.D.N.Y. 2013) ..........................................................30, 33, 36, 39

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   No. 12-MC-115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ..................... *passim*

*Sherman v. A.J. Pegno Constr. Corp.*,
   528 F. Supp. 2d 320 (S.D.N.Y. 2007) ...........................................................31, 33

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
   379 B.R. 5 (Bankr. E.D.N.Y. 2007) ...............................................................23

*SPV Osus Ltd. v. UBS AG*,
   882 F.3d 333 (2d Cir. 2018) ..........................................................................20, 21

*Steinberg v. A Analyst Ltd.*,
   No. 04-60898-CIV, 2009 WL 838989 (S.D. Fla. Mar. 26, 2009) ..................13

*Suber v. VVP Servs., LLC*,
   No. 20-CV-08177, 2021 WL 4429237 (S.D.N.Y. Sept. 27, 2021) ................13

*In re SunEdison, Inc.*,
   620 B.R. 505 (Bankr. S.D.N.Y. 2020) ...........................................................37, 38

*Taylor v. Sturgell*,
   553 U.S. 880 (2008) ......................................................................................14

*Theraplant, LLC v. Makarechi*,
    No. 16-CV-0646, 2016 WL 7839186 (S.D.N.Y. Dec. 23, 2016) ...........................................13

*Tymoshenko v. Firtash*,
    No. 11-CV-2794 KMW, 2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013) ...............................13

*United States v. Int'l Longshoremen's Ass'n*,
    518 F. Supp. 2d 422 (E.D.N.Y. 2007) ............................................................................31, 33

*Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*,
    477 F. Supp. 3d 241 (S.D.N.Y. 2020).................................................................................18

*Walden v. Fiore*,
    571 U.S. 277 (2014) .................................................................................................. *passim*

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016).................................................................................................22

*Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*,
    543 B.R. 127 (Bankr. S.D.N.Y. 2016).................................................................................13

*Whitaker Sec., LLC v. Rosenfeld (In re Rosenfeld)*,
    543 B.R. 60 (Bankr. S.D.N.Y. 2015)...................................................................................32

## Other Authority

11 U.S.C. § 550(a) ................................................................................................ *passim*

11 U.S.C. § 550(d) ...........................................................................................................29

11 U.S.C. § 546(e) ................................................................................................ *passim*

5A Alan Wright & Arthur R. Miller, Federal Practice & Procedure (3d ed. 2007) .........30, 32, 33

## Rules

Fed. R. Bankr. P. 7010..........................................................................................................30

Fed. R. Civ. P. 12(b) ..............................................................................................................1

Fed. R. Civ. P. 8.................................................................................................... *passim*

Fed. R. Civ. P. 10.................................................................................................. *passim*

N.Y.C.P.L.R. § 302(a)(3)......................................................................................................13

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection

Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff, respectfully

submits this memorandum of law and the declaration of Keith R. Murphy ("Decl.") in opposition

to the motion to dismiss the complaint (the "Complaint" or "Compl.") pursuant to Federal Rules

of Civil Procedure 12(b)(2) and 12(b)(6) (the "Motion") filed by Bank Hapoalim B.M. ("Hapoalim

BM") and Bank Hapoalim (Switzerland) Ltd. ("Hapoalim Switzerland," and together with

Hapoalim BM, "Defendants").

## PRELIMINARY STATEMENT

As part of the Trustee's continuing efforts in this SIPA liquidation proceeding to recover

BLMIS customer property that was stolen as part of Madoff's Ponzi scheme, this action by the

Trustee seeks to recover approximately $21.8 million[1] in subsequent transfers that Defendants

received from Fairfield Sentry Limited ("Sentry").  Defendants move to dismiss the Trustee's

Complaint, arguing that (i) this Court does not have personal jurisdiction over Defendants, (ii) the

Trustee violates Rules 8 and 10 of the Federal Rules of Civil Procedure (the "Rules") by

incorporating by reference the Trustee's complaint against Sentry (the "Fairfield Amended

Complaint" or "Fairfield Am. Compl.") to plead avoidability of the initial transfers, (iii)

Defendants did not receive transfers of customer property, and (iv) the safe harbor under Section

546(e) of the Bankruptcy Code bars recovery.  For the reasons set forth herein, Defendants'

arguments fail.

---

[1] The amount sought in the Complaint was $27,637,884.  However, pursuant to a February 7, 2022 Stipulation [ECF No. 113], the Trustee dismissed from the Complaint his claims seeking to recover $5,878,675 in subsequent transfers Defendant Hapoalim Switzerland was alleged to have received from Kingate Global Fund, Ltd. ("Kingate Global"), in light of a prior settlement.  *See Picard v. Ceretti,* Adv. Pro. No. 09-01161 (CGM) (Bankr. S.D.N.Y. Aug. 6, 2019).

1

First, this Court has personal jurisdiction over Defendants. Defendants purposefully invested in Sentry, knowing from Sentry's documents that BLMIS in New York was the *de facto* investment manager, broker-dealer, and custodian of Sentry's investments, that Sentry fed substantially all of its funds into BLMIS, and that BLMIS was essential to the fund's investments. Investing with BLMIS was the entire point. Defendants' subscription agreements with Sentry required them to submit to New York jurisdiction, forum selection, and choice of law clauses. Defendants designated and used New York bank accounts to deposit funds with Sentry and to receive the transfers from Sentry at issue. These facts, plus multiple additional contacts discussed herein, establish jurisdiction.

Second, the Trustee has plausibly alleged that Defendants received customer property under Section 550(a) by outlining the relevant pathways through which customer property was transferred from BLMIS to Sentry and subsequently to Defendants. The Trustee has also alleged the necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer Defendants received. At the pleading stage, nothing more is required.

Third, the Trustee's incorporation by reference of the Fairfield Amended Complaint is appropriate under Rules 8 and 10(c).[2] Such incorporation represents a practical method for the Trustee to plead avoidance of the initial transfers to Sentry, and Defendants can respond to the allegation just as they would any other paragraph in the Complaint. In any event, this Court may take judicial notice of the operative Second Amended Complaint and its opinion in *Picard v. Fairfield Investment Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479

---

[2] After the Trustee filed his Complaint against Defendants here, the Trustee filed a Second Amended Complaint ("Second Amended Complaint") against the Fairfield Greenwich Group defendants (collectively, "Fairfield"). *See* Second Amended Complaint, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286.

(Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*"), holding that the Trustee plausibly alleged the avoidability of the Sentry transfers.

Fourth, because the Trustee has plausibly alleged Sentry's actual knowledge of fraud, under controlling law, the Section 546(e) safe harbor for settlement payments or transfers in connection with securities contracts is inapplicable and does not bar recovery from Defendants. Defendants' argument—that the Trustee must plead *their* actual knowledge as opposed to that of Sentry—both misinterprets and directly conflicts with precedent in this case.

The Trustee respectfully requests that the Court deny the Motion.

## STATEMENT OF FACTS

### I.   THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS

Madoff founded and operated BLMIS from New York until its collapse in 2008.  Compl. ¶ 25.  BLMIS had three principal business units: (i) a proprietary trading business; (ii) a market-making business; and (iii) an investment advisory business (the "IA Business").  *Id.* For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy (the "SSC Strategy"), which involved (a) investing in a basket of common stocks from the Standard & Poor's 100 Index, (b) buying put options and selling call options to hedge against price changes in the underlying basket of stocks, and (c) purchasing U.S. Treasury bills when the money was out of the market.  *Id.* ¶¶ 26–27.  In reality, BLMIS operated a Ponzi scheme through its IA Business.  *Id.* ¶¶ 17–18; 28–35.  On December 11, 2008, Madoff's fraud was publicly revealed, and he was arrested for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud.  *Id.* ¶ 12.

The extent of damage Madoff caused was made possible by BLMIS "feeder funds"—large investment funds created for the express purpose of funneling investors' funds into BLMIS.  *See Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171, 179 (2d Cir. 2021),

*cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S.Ct. 1209, 212 L. Ed. 2d 217 (Feb. 28, 2022).

Defendants invested in a number of these feeder funds, including Sentry, Kingate Global, and

Primeo Select Fund ("Primeo"). *See* Decl. Exs. A–D; Compl. ¶ 2. Though the Trustee's

Complaint seeks to recover solely transfers out of Sentry, Defendants' investments in these other

funds are addressed *infra* at pp. 9–10, 15–16 to demonstrate the extent of Defendants'

jurisdictional contacts with the United States.

## II.   DEFENDANTS AND THEIR INVESTMENT IN SENTRY

Defendant Hapoalim BM is a private bank maintaining a principal place of business in Tel

Aviv, Israel, and a branch office in New York. Compl. ¶ 23. Defendant Hapoalim Switzerland is

a private bank with a principal place of business in Zurich, Switzerland. Compl. ¶ 24. Each

Defendant invested substantial sums with Sentry. During the six-year period prior to BLMIS's

collapse, Defendants received at least $21,759,209 in transfers from Sentry through Sentry's New

York bank account. Compl., Exs. F & G.

Sentry was managed by the Fairfield Greenwich Group ("FGG"), a *de facto* partnership

with its principal place of business in New York. *See Fairfield Inv. Fund*, 2021 WL 3477479, at

*9. Sentry was a U.S. dollar-denominated fund that invested 95% of its assets with BLMIS.

Fairfield Am. Compl., *Picard v. Sentry Limited, et al.*, No. 08-01789 (CGM), Adv. Proc. No. 09-

01239 (Bankr. S.D.N.Y. July 20, 2010), ECF No. 23, ¶¶ 52, 318.

As an investor in Sentry, each Defendant executed multiple subscription agreements. In

these agreements, each Defendant acknowledged its sophistication and that it had "such knowledge

and experience in financial and business matters that [it was] capable of evaluating the risks of this

investment." Decl. Exs. A, B. The subscription agreements also incorporated Sentry's Private

Placement Memoranda ("PPMs"), and by signing, investors like Defendants warranted that they

"received and read a copy of the [PPMs]." *Id.* Each Defendant also agreed to New York choice

of law, jurisdiction, and forum provisions in each subscription agreement it executed. *Id.*

The PPMs explicitly disclosed BLMIS's multiple roles as the de facto investment manager,

broker dealer, and custodian for Sentry. Decl. Exs. E, F. Additionally, the PPMs disclosed how

"[t]he services of BLM[IS] and its personnel are essential to the continued operation of [Sentry],

and its profitability, if any." *Id*. As detailed below, the PPMs also highlighted the numerous U.S.

connections inherent to investing in Sentry.

As with other Sentry investors, both Defendants sent subscription payments to and received

redemptions from Sentry's HSBC USA account in New York (the "HSBC USA Account"). *Id.*

Exs. A, B. Subscription payments were then deposited into BLMIS's account at JP Morgan Chase

Bank in New York. Fairfield Am. Compl. ¶ 35. In addition, (i) Defendant Hapoalim Switzerland

designated and used a correspondent bank account in the name of "POALLULLXXX"—the bank-

identifying SWIFT code for Hapoalim Switzerland—at JPMorgan Chase in New York (the "JPM

NY Account") to receive redemption payments, and (ii) Defendant Hapoalim BM designated and,

upon information and belief based on its designation, used, a bank account in its own name at its

own New York branch to receive redemption payments (the "Hapoalim NY Account"). Decl. Exs.

A, B, G. Hapoalim Switzerland received at least 25 redemption payments from Sentry and

Hapoalim BM received at least three, which redemptions together constitute all of the transfers

being sought from it in the Trustee's Complaint. Compl. Exs. F, G.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Sentry and

related defendants to avoid and recover fraudulent transfers of customer property in the amount of

approximately $3 billion. Compl. ¶ 44; *see also* Second Amended Complaint. In 2011, the Trustee

settled with Sentry. As part of the settlement, Sentry consented to a judgment in the amount of

$3.054 billion but repaid only $70 million to the BLMIS estate.  Compl. ¶ 49.  The Trustee then commenced a number of adversary proceedings against those like Defendants to recover the approximately $3 billion in stolen customer property.

## ARGUMENT

## I.    THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only show a *prima facie* case that personal jurisdiction exists.  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013).  A *prima facie* showing of jurisdiction "may be established solely by allegations."  *Id.* at 84–85 (finding "[p]rior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction").  A plaintiff also may establish a *prima facie* case of jurisdiction through affidavits and supporting materials that contain averments of facts outside the pleadings.  *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010).  These pleadings and affidavits are to be construed in the light most favorable to the plaintiff, resolving all doubts in plaintiff's favor. *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

Depending on the nature of a defendant's contacts with the forum, a court may exercise general or specific jurisdiction.  *See Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 473 (S.D.N.Y. 2001).  Specific jurisdiction exists where the defendant purposely directs its activities into the forum and the underlying cause of action arises out of or relates to those activities.  *See Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021).[3]

---

[3] General jurisdiction is based on the defendant's general business contacts with the forum and permits a court to exercise jurisdiction where the claims are unrelated to those contacts.  *See Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014).  Because the Complaint amply alleges specific jurisdiction, there is no need to reach the issue of general jurisdiction at this time.

The specific jurisdiction analysis is a two-step inquiry. First, the court assesses whether the defendant purposefully established "minimum contacts" with the forum, such that the defendant purposefully availed itself of the privilege of conducting activities with the forum. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985). The defendant's activities need not have taken place within the forum, "and a single transaction with the forum will suffice." *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011). The defendant's contacts need only be related to the plaintiff's claims, such as where the "defendant's allegedly culpable conduct involves at least in part financial transactions that touch the forum." *In re Fairfield Sentry Ltd.*, 627 B.R. at 566 (citation and quotation marks omitted).[4]

Second, the court conducts a "reasonableness" inquiry to determine that its exercise of jurisdiction will not offend traditional notions of "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 320. To determine whether jurisdiction is reasonable, courts consider the following:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the shared interest of the states in furthering social policies.

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996). Where the plaintiff has alleged purposeful availment, however, the burden shifts to the defendant to present a

---

[4] The Complaint asserts personal jurisdiction over Defendants under Bankruptcy Rule 7004(f) and New York's long-arm statute. *See* Compl. ¶¶ 8–9. Due to the close overlap between the requirements of due process and the New York long-arm statute, courts engaging in a due process analysis frequently cite long-arm cases. *See, e.g.*, *HSH Nordbank AG N.Y. Branch v. Street*, No. 11 Civ. 9405 (DLC), 2012 WL 2921875, at *4 n.3 (S.D.N.Y. July 18, 2012) (noting "the personal jurisdiction analysis under CPLR § 302(a)(1) and the Due Process Clause is in most instances essentially coterminous" (citations omitted)).

"compelling case" that jurisdiction would be unreasonable. *In re Fairfield Sentry Ltd.*, 627 B.R. at 567 (citing *Burger King*, 471 U.S. at 472–73).

In determining whether a defendant's contacts establish personal jurisdiction, the court must look at "the totality of the circumstances" rather than analyze each contact in isolation. *See Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996); *see also Chloé*, 616 F.3d at 164 (analyzing totality of defendants' contacts to determine jurisdiction under New York's long-arm statute and the Due Process Clause); *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005) ("No single event or contact connecting defendant to the forum state need be demonstrated; rather, the *totality of all defendant's contacts* with the forum state must indicate that the exercise of jurisdiction would be proper.") (emphasis in the original).

A.     **Defendants Purposefully Availed Themselves of the Laws and Privileges of Conducting Business in New York and the United States by Investing in the BLMIS Feeder Funds**

Defendants had numerous contacts with the United States that establish this Court's jurisdiction. Defendants (1) purposefully targeted the New York securities market by investing in Sentry and other BLMIS feeder funds, knowing that their assets were managed and custodied by BLMIS in New York; (2) agreed to New York jurisdiction, forum selection, service of process, and choice of law provisions related to their Sentry investments; and (3) designated and used New York bank accounts to transact with Sentry in connection with their investments and redemptions. Many of these contacts independently establish jurisdiction. In their totality, these contacts demonstrate that Defendants availed themselves of the forum. *See Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 397 F. Supp. 3d 323, 344 (S.D.N.Y. 2019) ("When all [defendant]'s Agreement-related contacts are considered together, it is clear [defendant] purposely availed itself of the forum."). And because the Trustee's claims in this proceeding arise

out of and relate to Defendants' contacts with New York, the minimum contacts requirement is satisfied, and adjudication in New York is reasonable and appropriate.

> ### 1.    Defendants' Intentional Investments With BLMIS Through the BLMIS Feeder Funds Establish Minimum Contacts

Defendants' intentional investments with BLMIS in New York through known BLMIS feeder funds alone establish personal jurisdiction over Defendants.  As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going."  *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019); *see also Maxam*, 460 B.R. at 116–20 (finding jurisdiction where defendant knew and intended monies invested with BLMIS feeder fund to be sent to BLMIS in New York for investment).  By executing the subscription agreements, Defendants affirmed that they received and read Sentry's PPM and as a result knew that: (i) Sentry invested at least 95% of its assets with BLMIS; (ii) BLMIS performed all investment management duties for these assets; (iii) BLMIS was registered with the U.S. Securities and Exchange Commission; (iv) BLMIS was the executing broker for Sentry's investments, and purportedly operated and executed the SSC Strategy on the fund's behalf; (v) BLMIS's SSC Strategy purportedly involved the purchase of U.S. equities, U.S. options, and U.S. Treasury bills; (vi) the decisions regarding which U.S. securities to purportedly purchase, and when to make such purchases, were made by BLMIS in New York; (vii) BLMIS was the custodian of Sentry's investments with BLMIS; and (viii) BLMIS was "essential to the continued operation of" Sentry.  *See* Decl. Exs. E, F.  This Court in *Picard v. BNP Paribas S.A. (In re BLMIS)* ("*BNP*") similarly found jurisdiction over investor defendants based on the U.S. contacts inherent in doing business with BLMIS feeder funds.  594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) (finding *prima facie*

showing of jurisdiction "over any fraudulent transfer claims resulting from redemptions by the Defendants from their accounts with the Tremont Funds").

Defendants likewise knew when they invested in the other BLMIS feeder funds, *supra* at p. 4, that those investments were all being funneled to the United States. Kingate Global stated in its Information Memorandum, as sent to Hapoalim Switzerland, that "the Fund shall primarily invest with an Investment Advisor who is based in the United States . . . ." *See* Decl. Ex. H. Similarly, the offering documents sent by Primeo disclosed that its assets were "managed by one Manager, who utilizes a 'split-strike conversion strategy' approach" based on the purchase of S&P 100 stocks and options. *See* Dec. Ex. I.

      a.      **_BLI_ Establishes This Court's Jurisdiction Over Defendants**

Based on Defendants' demonstrated intention to invest with BLMIS through Sentry, this Court has already concluded that investors like Defendants are subject to personal jurisdiction. *See Picard v. Bureau of Labor Insurance (In re BLMIS)*, 480 B.R. 501, 516–18 (Bankr. S.D.N.Y. 2012) (Lifland, J.) ("*BLI*"). There, as here, the Trustee's suit was "based upon [the subsequent transferee's] investment of tens of millions of dollars in Sentry with the specific goal of having funds invested in BLMIS in New York, with intent to profit therefrom." *BLI*, 480 B.R. at 506. There, as here, the subsequent transferee was provided with PPMs with the same information and executed subscription agreements establishing the investment's BLMIS-centric purpose. *Id.* at 507–08. And there, as here, the subsequent transferee argued that the foreseeability of its investment ending up in a BLMIS account was insufficient to support personal jurisdiction. *Id.* at n.14. Not only did the Court reject this argument, Judge Lifland called it "disingenuous," explaining:

> BLI's investments in Fairfield Sentry did not merely "end up" in an account at BLMIS as a result of happenstance or coincidence. Rather, BLI purposefully availed itself of the benefits and

> protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market.

*Id.* at 517; *see also Picard v. JPMorgan Chase & Co. (In re BLMIS)*, No. 08-99000 (SMB), 2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014) (noting courts in this liquidation have already "confirmed that defendants who invested directly or indirectly with BLMIS and received payments from BLMIS as an initial transferee or subsequent transferee of those initial transfers were subject to the Court's personal jurisdiction"). As framed by this Court, "BLI intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom." *BLI*, 480 B.R. at 506.

Because Defendants are identically situated to the *BLI* defendant with respect to the fundamental purpose of their investment, *BLI* is controlling and resolves Defendants' personal jurisdiction defense without the need for inquiry into their additional U.S. contacts. In fact, the evidence that Defendants purposefully targeted the New York securities market is even stronger here because Defendants knowingly invested in at least two other BLMIS feeder funds—each similarly constituted to feed investments to BLMIS in New York. Nevertheless, despite the obvious weight of *BLI*, Defendants do not cite that decision in their Motion.

### b.   *Walden* **Does not Save Defendants From This Court's Jurisdiction**

Ignoring *BLI*, Defendants cite *Walden v. Fiore* to frame the jurisdictional analysis through a false lens of "foreseeability." 571 U.S. 277 (2014). Motion at 11–13. However, the facts and applicable law of *Walden* are significantly different from those here, and do not support Defendants' argument. The defendant in *Walden*, a Georgia police officer, had no purposeful minimum contacts with the forum state of Nevada. *Id.* at 288-89. The officer had "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada," nor

11

was the officer's seizure of funds predicated in any way on the fact that their intended destination was Nevada. *Id.* at 289. The Court of Appeals applied the "effects" test applicable in intentional tort cases and found jurisdiction despite the above facts, because the officer had seized money in Georgia from a Nevada resident and therefore the seizure would have some foreseeable effect in Nevada. *Id.* at 290–91. The Supreme Court disagreed, finding that the defendant had "formed no jurisdictionally relevant contacts with Nevada" and that he could not be sued in Nevada for an unlawful seizure of money in Georgia merely because he knew the plaintiff resided in Nevada. *Id.* at 289–91. In so holding, the Court simply reaffirmed the well-established principle that personal jurisdiction cannot be premised solely on a plaintiff's unilateral contacts with the forum state. *Id.* at 284, 289 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

This case is nothing like *Walden*. As a preliminary matter, the Trustee's allegations implicate the Supreme Court's "purposeful availment" framework (not the "effects" test), a concept that the Court in *Walden* did not apply. Nor is the police officer's lack of "any jurisdictionally relevant contacts with Nevada" remotely analogous to Defendants intentionally directing investments over the course of a decade to New York-based BLMIS through feeder funds formed for this express purpose. *Id.* at 289–91.

Defendants further argue that "accepting the Trustee's theory would drastically expand the scope of U.S. personal jurisdiction, rendering every investor in any foreign company amenable to suit anywhere in the U.S. that the company – not the investor – does business." Motion at 13 (citing cases). But the Trustee is not arguing that every investor should automatically be subject to jurisdiction in all forums where its investment company happens to do business. Rather, under the facts of *this* case—where Defendants have signed agreements expressly indicating their intent to direct custody and control over all of their funds to a specific U.S. broker-dealer in order to

knowingly profit from the U.S. securities markets—such Defendants have purposefully availed themselves of the laws and protections of the United States.

For these reasons, and because the Trustee is not arguing that jurisdiction exists due to happenstance, foreseeability, or imputation to a shareholder of its company's U.S. contacts, the cases cited by Defendants are inapposite. *See Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, 543 B.R. 127, 139 n.6 (Bankr. S.D.N.Y. 2016) (jurisdiction denied where Trustee relied exclusively on an alter ego theory of jurisdiction); *In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 536–37 (S.D.N.Y. 2008) (jurisdiction denied because plaintiffs never actually alleged that defendant directed any activity toward the United States); *Steinberg v. A Analyst Ltd.*, No. 04-60898-CIV, 2009 WL 838989, at *5 (S.D. Fla. Mar. 26, 2009) (jurisdiction denied where plaintiff either did not allege or made only a "bare assertion" that funds in which defendant invested had "assets, accounts and management all located in New York," and there was no indication defendant knew its redemptions were being made through New York); *Tymoshenko v. Firtash*, No. 11-CV-2794 KMW, 2013 WL 1234943, at *4 (S.D.N.Y. Mar. 27, 2013) (jurisdiction lacking where defendants did not "even kn[o]w" that companies they invested in engaged in activities in the United States).[5]

Defendants' efforts to downplay their investments' New York destination as just a "foreseeable" consequence rather than a deliberate and purposeful targeting of the forum is the same "disingenuous" argument this Court rejected in *BLI*. Here, Defendants' contacts with New York were "intertwined with [its] transactions or interactions with the plaintiff or other parties,"

---

[5] *See also* Motion at 14–15 (citing various alter ego and veil piercing cases). Defendants also cite language from *Suber v. VVP Servs., LLC*, No. 20-CV-08177 (AJN), 2021 WL 4429237, *9 (S.D.N.Y. Sept. 27, 2021), citing *Theraplant, LLC v. Makarechi*, No. 16-CV-0646 (DLC), 2016 WL 7839186, at *4 (S.D.N.Y. Dec. 23, 2016), but these cases were both tort actions addressing the "substantial revenue" requirement for out-of-state defendants under section 302(a)(3) of the New York Civil Practice Law & Rules (the "CPLR"). They were not analyzing purposeful availment or the analogous "transacting business" prong of CPLR section 302, and have nothing to do with Defendants' position.

*Walden*, 571 U.S. at 286, and thus support jurisdiction.  The Court should reject Defendants'

invitation to ignore the reality and intention of Defendants' activities directed to this forum in a

specific effort to profit from conducting business in New York.

> **2.**      **The Forum Selection and Choice of Law Clauses in the Subscription Agreements are Strong Jurisdictional Contacts**

Defendants' subscription agreements with Sentry further evidence a "strong nexus with

New York" that supports jurisdiction.  *See BLI*, 480 B.R. at 517, n.15.  When Defendants invested

in Sentry, they each signed subscription agreements through which they submitted to venue in

New York, the jurisdiction of the New York courts, and the application of New York law.  Decl.

Exs. A, B.  Defendants argue that these provisions are irrelevant because the Trustee is not a party

to the subscription agreements and the Trustee's claims do not arise under the subscription

agreements.  Motion at 15–16 (citing *In re Fairfield Sentry Ltd.*, No. 10-13164, 2018 WL 3756343,

at *11–*12 (Bankr. S.D.N.Y. Aug. 6, 2018)).   But the Trustee is not arguing this Court has

jurisdiction based on Defendants' consent.  Rather, Defendants' agreements to New York venue,

jurisdiction, and law further show that Defendants purposefully directed their activities toward

New York and provide another strong jurisdictional contact with New York.[6]

"[A] choice of law provision may constitute a 'significant contact' with the forum state"

and "is relevant in determining whether a defendant has purposefully availed itself of a particular

forum's laws."  *Chase Manhattan Bank v. Banque Generale Du Com.*, No. 96 CIV 5184 (KMW),

1997 WL 266968, at *2 (S.D.N.Y. May 20, 1997); *see also Burger King*, 471 U.S. at 482

---

[6] Though not necessary to the Court's analysis, Defendants' argument that the Trustee is in privity with the Fairfield liquidators and therefore bound by any rulings in the Fairfield liquidation, is incorrect.  Motion at 16.  Defendants cite no relevant authority for this argument because none exists.  For example, *New Hampshire v. Maine*, 532 U.S. 742 (2001) does not even involve non-party preclusion.  And if *Taylor v. Sturgell*, 553 U.S. 880 (2008), "stands for anything, it is for the need to narrow and regularize the use of preclusion against nonparties."  *Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*, No. 07-MD-1902 (JSR), 2013 WL 12191844, at *11 (S.D.N.Y. Mar. 25, 2013).

("Although such a [choice of law] provision standing alone would be insufficient to confer jurisdiction . . . it reinforced [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there."). To this end, the *BLI* Court, without addressing the issue of whether defendant consented to jurisdiction, found that the clauses in the subscription agreements "further evidenc[e] the strong nexus with New York." 480 B.R. at 517, n.15. Similarly, in *Motors Liquidation Co. Avoidance Action Trust v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, the court held that, even if defendant's agreement to New York forum and choice of law provisions did not constitute consent, the provisions helped establish minimum contacts to support specific jurisdiction. 565 B.R. 275, 288–89 (Bankr. S.D.N.Y. 2017) (finding agreement provisions under New York law plus correspondent banking in New York evidenced a relationship "centered in New York").

### 3.    Defendants Had Significant Other Contacts With the United States in Connection With Their Investments in Other BLMIS Feeder Funds

Defendants moreover, through their own U.S. branches and agent, engaged in significant business activity related to their other BLMIS feeder fund investments, creating additional jurisdictional contacts. Defendants marketed BLMIS feeder fund Primeo via a distribution agreement and side letter entered into by Poalim Asset Management Ltd. ("Poalim"), an affiliate that acted as Defendants' agent with respect to Primeo. *See* Decl. Ex. J; *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986) (finding that jurisdiction based on the acts of agents is determined based on the "realities of the relationship in question"). To this end, between 2007–08, both Poalim and Hapoalim BM, through its Miami, Florida branch, actively communicated with Primeo agent Pioneer Funds Distributor, Inc., a U.S. corporation located in Miami, with respect to due diligence on, and in order to further invest in, BLMIS. *See* Decl. Ex. K. These communications in the U.S. by Defendants and their agent establish additional

15

jurisdictional contacts relevant to Defendants' BLMIS-related investments in the U.S. *See Liberatore v. Calvino*, 293 A.D.2d 217, 742 N.Y.S.2d 291, 293 (App. Div. 2002) (holding that jurisdictionally relevant transactions may be found solely on the basis of phone, mail, and electronic communications) (citing cases). Though the Complaint does not seek subsequent transfers received from Primeo, the foregoing activities with respect to Primeo are jurisdictional contacts because, as Defendants were aware, all the feeder funds were interchangeable vehicles for investing with BLMIS. See Decl. Ex. K.

### 4. Defendants' Purposeful Use of New York Bank Accounts Establishes Specific Jurisdiction

This Court has jurisdiction because Defendants purposefully used the New York banking system to subscribe into and redeem from Sentry.

### a. Defendants' Intentional, Repeated Use of New York Bank Accounts for Their Investments Establishes Jurisdiction

Courts have often held that a defendant's purposeful use of a domestic bank account is sufficient to establish personal jurisdiction. *See, e.g.*, *Eldesouky v. Aziz*, No. 11–CV–6986 (JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York long-arm statute based solely on defendant's use of New York account to receive payment at issue); *HSH Nordbank*, 2012 WL 2921875, at *4 (finding jurisdiction under New York long-arm statute based solely on defendants' use of a New York account to receive fraudulent conveyances at issue); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 382–83 (S.D.N.Y. 2013) (finding jurisdiction in New York based solely on defendant's use of New York accounts to facilitate alleged fraud). In this SIPA liquidation proceeding, this Court has similarly found jurisdiction where initial and subsequent transferee defendants invested through and received transfers from U.S. bank accounts. *See BNP*, 594 B.R. at 191 (finding jurisdiction over subsequent transferee defendants that sent subscriptions to, and received redemptions from, feeder funds' New

York bank account); *see also Picard v. Estate (Succession) of Doris Igoin (In re BLMIS)*, 525 B.R.

871, 884 (Bankr. S.D.N.Y. 2015) (finding jurisdiction over initial transferee defendants who

received transfers from BLMIS's New York bank account).

Here, Hapoalim Switzerland designated and used the JPM NY Account in New York and

Hapoalim BM designated and, upon information and belief, used the Hapoalim NY Account at its

own branch in New York to receive redemptions from Sentry. *See supra*, p. 5. And both

Defendants used the HSBC USA Account in New York for subscriptions and redemptions. *See

id.* Based on the foregoing case law, these uses of bank accounts alone are sufficient to confer

personal jurisdiction.[7]

### b. That the JPM NY Account and HSBC USA Account Were Correspondent Does not Alter the Analysis

That the JPM NY Account and HSBC USA Account were correspondent does not change

the analysis. Courts have held that the use of a correspondent bank account is also sufficient to

establish personal jurisdiction. In the leading case, *Licci v. Lebanese Canadian Bank, SAL*, the

New York Court of Appeals held that a defendant's use of a correspondent bank account in New

York supports a finding of jurisdiction "even if no other contacts between the defendant and New

York can be established" provided that such use was "purposeful." 20 N.Y.3d 327, 338 (2012);

*see also Off. Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic Bank*,

549 B.R. 56, 67–69 (S.D.N.Y. 2016) (finding jurisdiction based on designation and use of New

York correspondent accounts to receive transfers); *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316,

---

[7] Defendants argue that the Trustee's allegations that Hapoalim Switzerland received redemption proceeds from the JPM NY Account in New York are improperly on "information and belief," conclusory, and not tied to the transfers alleged in the Complaint. Motion at 16–17. But the Complaint Exhibit F shows dozens of transfers Hapoalim Switzerland received, and the supporting redemption documents reflect the designation and use of the JPM NY Account for its transfers. *See* Compl. Ex. F; Decl. Ex. G. Defendants do not cite authority contravening the well-settled principle, discussed above, that a plaintiff may establish a *prima facie* case of personal jurisdiction through affidavits and supporting materials. Thus, Defendants' arguments lack merit.

322–29 (2016) (same).  What matters is that the use was "purposeful," and not coincidental or passive.  *See Licci*, 20 N.Y.3d at 338–39 (finding jurisdiction where use of correspondent account was not "coincidental," and distinguishing case where defendant passively received funds due entirely to another party's actions).

Here, the JPM NY Account was in the name of Hapoalim Switzerland's own SWIFT code, and Hapoalim Switzerland sent numerous written forms directing Sentry to send redemption payments through this New York account (*see supra*, p. 5), making the purposeful use of such account by Hapoalim Switzerland extremely obvious.  Defendants' use of Sentry's HSBC USA Account in New York was also purposeful because each Defendant agreed to use that account to effectuate its investments in Sentry.  *See Esso*, 397 F. Supp. 3d at 346 ("[T]he point is not whether [defendant] owns the accounts, it is that they made purposeful use of them for reasons related to the underlying dispute."); *Arcapita*, 549 B.R. at 70 & n.18 ("Because [defendant] directed the wire transfers to a specifically designated New York account for its own advantage, the receipt of the funds in New York is a 'contact' properly attributed to [defendant].").  That Sentry's subscription agreement required subscribers to use the HSBC USA Account is also irrelevant, because Defendants voluntarily entered into that agreement.[8]  *See In re Motors Liquidation Co.*, 565 B.R. at 288–89 (finding defendant's use of a correspondent account purposeful even where payment in New York was dictated by agreement).[9]  In *BLI*, a subsequent transferee defendant's use of its own and Sentry's U.S. correspondent accounts in New York for subscribing into and redeeming from Sentry supported a finding of purposeful availment.  *See* 480 B.R. at 513 & 516 n.14.

---

[8] It makes no difference if a Citco entity chose to use the U.S. correspondent account on behalf of Sentry, as various Citco entities acted as FGG's agents.  *See Igoin*, 525 B.R. at 884 (conduct of agent is attributed to principal for purposes of jurisdictional analysis).

[9] *Cf. Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*, 477 F. Supp. 3d 241, 258-64 (S.D.N.Y. 2020) (finding, after jurisdictional discovery, that the foreign bank defendant did not itself direct the use of the correspondent account; the account was used by mere happenstance).

Finally, as addressed *supra* at p. 5, Defendants sent and received dozens of payments to and from both their own accounts and Sentry's HSBC USA Account, including all of the redemptions in this action. Where, like here, there has been repeated use of a correspondent account, purposeful availment may be inferred from the sheer volume of transactions. *See Licci,* 20 N.Y.3d at 340 (routing several million dollars through correspondent account dozens of times indicates desirability and lack of coincidence); *Al Rushaid*, 68 N.E.3d at 5–8 (finding transfer to correspondent accounts at least 12 times for $4 million sufficient for personal jurisdiction); *Gucci Am., Inc. v. Li*, 135 F. Supp. 3d 87, 94–96 (S.D.N.Y. 2015) (transfers nearly a dozen times through correspondent account sufficient to support personal jurisdiction).

### 5. Defendants' Contacts With the Forum are Sufficiently Related to the Trustee's Claims

The Trustee's claims also "arise out of or relate to" Defendants' contacts with the United States. As the Supreme Court recently held, the "arise out of or relate to" test does not require a causal relationship. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026–30 (2021). Rather, this test may be satisfied if defendant's conduct involves "financial transactions that touch the forum." *In re Fairfield Sentry Ltd.*, 627 B.R. at 566; *see also Arcapita*, 549 B.R. at 68–71 (requiring only that claim is not completely "unmoored" from transaction).

Here, the Trustee is seeking to recover the very transfers that came through the U.S. bank accounts in New York analyzed above, and thus Defendants' use of these accounts supports jurisdiction. *See, e.g., HSH Nordbank*, 2012 WL 2921875, at *4 (finding "claims against [defendants] arise directly out of the transfer of funds into [defendant's] New York accounts"); *Picard v. Chais (In re BLMIS)*, 440 B.R. 274, 279 (Bankr. S.D.N.Y. 2010) (finding that defendant's contacts with the forum and the Trustee's claims are "inextricably related"). Similarly, Defendants could not have invested in or received the transfers at issue from Sentry without first

entering into a subscription agreement, and thus contrary to Defendants' arguments, Sentry's subscription agreements also plainly "relate to" the Trustee's claims.  And in this case, each Defendant executed multiple subscription agreements.  Along with their other contacts as related to their BLMIS feeder fund investments, Defendants should reasonably anticipate that the Trustee's claims would be adjudicated in the United States.

### 6.    Defendants' Remaining Arguments Against Jurisdiction are not Persuasive

To evade jurisdiction, Defendants argue that the Trustee "must establish the Court's jurisdiction over Defendants with respect to each alleged Subsequent Transfer it seeks to recover." Motion at 11–12 (citing *BNP*, 594 B.R. at 190).  But Defendants misconstrue the requirements for personal jurisdiction and this Court's decision in *BNP*.  Courts have personal jurisdiction over *defendants*, not *transfers*.  *See, e.g.*, *Int'l Shoe*, 326 U.S. at 316.  Likewise, as Defendants recognize, courts must assess the defendant's contacts with the forum, not the transfers.  *See* Motion at 12 and 17 (citing *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 334 (2d Cir. 2018) (quoting *Walden*, 571 U.S. at 283–84) for proposition that "the inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation"); *see also BNP*, 594 B.R. at 189 (quoting same language from *Walden*).  And provided that the court finds that a defendant's minimum contacts with the forum support specific jurisdiction, the court may adjudicate any claims, provided they are related to those contacts.  *See Ford Motor*, 141 S. Ct. at 1026–28, 1032.

This is exactly what this Court did in *BNP*.  The Court did not look at each transfer to determine jurisdiction.  The Court assessed each defendant, focused on the overall relationship with the initial transferees, and determined it had jurisdiction.  *BNP*, 594 B.R. at 191.

Equally unavailing is Defendants' reliance on a trio of cases asserting common law claims brought against fund service providers. Motion at 17–18 (citing *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016); *Hau Yin To v. HSBC Holdings plc*, No. 15-CV-3590, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017); *Osus*, 882 F.3d 333). This Court has already determined that this line of cases is not relevant to the Trustee's actions against investors in BLMIS feeder funds, like Defendants. *See BNP*, 594 B.R. at 192 ("*Hill* has no bearing on the issue of personal jurisdiction arising from the Defendants' redemptions as investors in the Tremont Funds which arose from their New York contacts with the Tremont Funds."). This is not a dispute between two parties about services owed under a foreign contract, like the breach of fiduciary duty and other claims in *Osus*,[10] *Hill*, and *Hau Yin To*. This action is brought by a SIPA Trustee in a SIPA liquidation proceeding to recover fraudulent transfers from an investor whose transfers of funds to and from U.S. correspondent accounts in New York—intended to place money with BLMIS in New York—evidence an intent to direct activity towards the U.S. securities markets. *See BLI*, 480 B.R. at 513 ("This movement of money to and from BLMIS in the United States, as contemplated by the Agreements, was not fortuitous or incidental; instead, it was 'the ultimate objective' and the '*raison d'etre*' of the Agreement between BLI and Fairfield Sentry.").

**B.    The Exercise of Personal Jurisdiction Over Defendants is Reasonable**

Defendants fail to present a compelling reason why jurisdiction would be unreasonable. "The reasonableness inquiry requires the court to determine whether the assertion of personal jurisdiction . . . comports with 'traditional notions of fair play and substantial justice' under the

---

[10] Defendants' reliance on *Osus*, which found no specific jurisdiction because plaintiff's injury was not caused by defendants' contacts, is questionable following the Supreme Court's decision in *Ford Motor*, which held that causation is not a prerequisite for jurisdiction. 141 S. Ct. at 1026–30. Also, *Osus*'s finding that a "handful of communications and transfer of funds" do not support specific jurisdiction, which is cited by Defendants in their Motion (*see* Motion at 18), is not availing here given both Defendants' various respective other jurisdictional contacts, discussed above.

circumstances of the particular case." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016). Where a plaintiff has made a threshold showing of minimum contacts, a defendant must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Chloé*, 616 F.3d at 165. Indeed, this Court has found "it would be a 'rare' case where the defendant's minimum contacts with the forum support the exercise of personal jurisdiction but it is unreasonable to force the defendant to defend the action in that forum." *BNP*, 594 B.R. at 188.

This is not that "rare" case. The burden on Defendants is minimal. *See Maxam*, 460 B.R. at 119 (finding New York counsel and conveniences of modern communication and transportation minimize any such burden). The United States has a strong interest in applying U.S. law in the BLMIS SIPA liquidation proceeding, and the Trustee has a strong interest in litigating in the United States. *See id.*; *see also In re Picard*, 917 F.3d at 103 (noting "compelling interest in allowing domestic estates to recover fraudulently transferred property"). Accordingly, this Court's exercise of jurisdiction over Defendants is more than reasonable.

### C.    In the Alternative, the Trustee is Entitled to Jurisdictional Discovery

If this Court finds that the Trustee has not made a *prima facie* showing of jurisdiction, the Trustee respectfully requests jurisdictional discovery. Such discovery may be authorized where a plaintiff has made "a threshold showing" that there is some basis for jurisdiction. *Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618, 2009 WL 3817590, at *4 (S.D.N.Y. Nov. 16, 2009). The Trustee has shown how Defendants, *inter alia*, purposefully invested with BLMIS through systematic attempts to capitalize on BLMIS's purported trading activities in New York, including by knowingly steering millions of dollars to Sentry and other BLMIS feeder funds through which they facilitated BLMIS investments in New York, and relying upon U.S. bank accounts in New York to receive BLMIS customer property. *See supra* pp. 8–20. At a minimum, these facts

establish a "threshold showing" of jurisdiction. *Kiobel*, 2009 WL 3817590, at *6; *see also Ayyash v. Bank Al-Madina*, No. 04 Civ. 9201, 2006 WL 587342, at *6 (S.D.N.Y. Mar. 9, 2006) (granting discovery because allegations of wire transfers through United States made a "sufficient start" toward establishing jurisdiction).

## II.   THE TRUSTEE'S COMPLAINT STATES A VALID CAUSE OF ACTION FOR RECOVERY OF BLMIS CUSTOMER PROPERTY UNDER SECTION 550(a)

The Trustee's Complaint plausibly alleges that Defendants received subsequent transfers of BLMIS customer property.  To plead a subsequent transfer claim, the Trustee must allege facts that support an inference "that the funds at issue originated with the debtor."  *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149–50 (Bankr. S.D.N.Y. 2014).  No tracing analysis is required given that, as Defendants acknowledge (Motion at 18), the pleading burden "is not so onerous as to require 'dollar-for-dollar accounting' of 'the exact funds' at issue."  *Id.* at 150 (citing *Picard v. Charles Ellerin Revocable Tr.*, Adv. Pro. No. 10-04398 (BRL), 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012)).  Rather, "the Trustee need only allege sufficient facts to show the relevant pathways through which the funds were transferred from BLMIS to [the subsequent transferee]."  *Charles Ellerin Revocable Trust*, 2012 WL 892514, at *3; *see also 45 John Lofts, LLC v. Meridian Cap. Grp. LLC*, 599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019).  The Trustee also must allege the "'necessary vital statistics—the who, when, and how much' of the purported transfers to establish an entity as a subsequent transferee of the funds."  *Merkin*, 515 B.R. at 150 (quoting *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 32 (Bankr. E.D.N.Y. 2007)).

The Trustee's Complaint meets these requirements.  It alleges that Defendants received transfers, identified by date and amount, from Sentry, and that Sentry invested substantially all of its funds with BLMIS.  Compl. ¶¶ 2, 44–54; Exs. F, G.  Thus, the Complaint plausibly alleges that

Defendants received subsequent transfers of customer property by (a) outlining the relevant pathways through which customer property was transferred from BLMIS to Sentry and subsequently to Defendants, and (b) providing the necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer. Nothing more is required. *See, e.g.*, *Picard v. Mayer*, Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021).

Given the sufficiency of the Trustee's pleading, Defendants argue for an alternative pleading standard, asserting that the Trustee must tie each subsequent transfer Defendants received to a specific initial transfer from BLMIS. Motion at 18–20. However, in *Merkin*, this Court refused to dismiss subsequent transfer claims where the complaint "d[id] not connect each of the subsequent transfers with an initial, voidable transfer emanating from BLMIS." 515 B.R. at 150; *see also 45 John Lofts, LLC*, 599 B.R. at 747 (finding no "requirement to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss"). Defendants are also incorrect in arguing (Motion at 20) that the Trustee must detail which and what portion of each subsequent transfer comprises customer property. *See Merkin*, 515 B.R. at 152–53 (refusing to dismiss complaint where "at least some of the subsequent transfers . . . may be recoverable"); *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3 (holding at summary judgment, "it is not necessary for the Trustee to specify what portion of the Subsequent Transfers to [defendant] was derived from BLMIS").

Defendants' reliance on this Court's decision in *Picard v. Shapiro* is unavailing because *Shapiro* did not change the Trustee's pleading burden. *See* Motion at 18–20 (citing *Picard v. Shapiro (In re BLMIS)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015)). In *Shapiro*, the Trustee alleged that certain trusts and members of the Shapiro family received approximately $54 million

in fraudulent transfers from BLMIS, and "upon information and belief," these defendants subsequently transferred this same amount to other defendants. *See Shapiro*, 542 B.R. at 119. However, that complaint *did not detail any* of the necessary vital statistics of the subsequent transfers. *Id*. at 119. There were no allegations as to the mediate transferors or transferees, or the dates or amounts of the subsequent transfers. Consequently, this Court granted defendants' motion to dismiss the subsequent transfer claim. *Id*. Here, where the Trustee has alleged the vital statistics of each transfer each Defendant received and the investment relationship between each Defendant and Sentry, *Shapiro* supports denying the motion to dismiss. The chart Defendants included in the Motion—which compares certain allegations made in the *Shapiro* complaint with allegations made in this action—only demonstrates that the Trustee did in fact allege *more* here than in *Shapiro*, and none of it was upon information and belief. Motion at 19. Indeed, while the *Shapiro* complaint only alleged "some" of the initial transfers were received by the subsequent transferee defendants, the Complaint here not only specifies the dollar amounts being sought, but also includes prepared exhibits that detail the dates and amounts of each subsequent transfer to Defendants. *See* Compl. ¶ 50, Ex. F; ¶ 52, Ex. G.

Defendants' other fact-based tracing arguments fare no better and are inappropriate for a motion to dismiss. First, Defendants claim the transfers they received from Sentry comprise subscriptions from other investors. Motion at 22–23 (going so far as to speculate, without any support, that during certain periods, *none* of the funds redeemed from Sentry originated from BLMIS). In other words, Defendants argue that Sentry commingled customer property with other funds, and this commingling will defeat the Trustee's ability to trace the transfers of customer property from BLMIS. Again, Defendants are wrong. "The law does not place such a difficult burden on trustees. The commingling of legitimate funds with funds transferred from the debtor

does not defeat tracing." *Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-cv-1073, 2020 WL 3077151, at *4 (D. Minn. June 10, 2020) (citing *Charles Ellerin Revocable Trust*, 2012 WL 892514, at *2).

Second, Defendants claim that based on their analysis, Sentry paid other investors with the customer property it received from BLMIS prior to making any transfers to Defendants. Motion at 23–26. To reach this conclusion, Defendants are in effect applying some undisclosed tracing methodology or methodologies of their choosing (presumably First In, First Out, or "FIFO").[11] But it is for this Court to decide—after fact and expert discovery—on the appropriate tracing methodology to apply to this case under the circumstances. *See Picard v. Merkin (In re BLMIS)*, 581 B.R. 370, 386 (Bankr. S.D.N.Y. 2017) ("the Court's selection of an appropriate methodology is committed to the Court's discretion"); *Charles Ellerin Revocable Trust*, 2012 WL 892514, at *3, n.7 ("Courts have broad discretion to determine which monies of commingled funds derive from fraudulent sources.").[12] This argument is also flawed to the extent it relies on the factual assumption that every subsequent transfer from Sentry preceding those to Defendants was sourced solely by customer property. Neither the Complaint nor its exhibits establish this, and at this stage, the Trustee is not required to plead, much less establish, that an alleged subsequent transfer is comprised solely of customer property. *See Kelley*, 2020 WL 3077151, at *4 (where debtors'

---

[11] This argument and the declaration of Defendants' counsel, which appears to double down on the FIFO tracing methodology, serve as nothing more than "an attempt to interject improper expert testimony into a Rule 12(b)(6) context." *Fowler v. Caliber Home Loans, Inc.*, 277 F. Supp. 3d 1324, 1331 (S.D. Fla. 2016) (declining to consider expert testimony in a motion to dismiss). *See also Sass v. Barclays Bank PLC (In re Am. Home Mortg., Holdings, Inc.)*, 501 B.R. 44, 64 (Bankr. D. Del. 2013) (matters subject to factual and expert evidence are "inappropriate to decide on a motion to dismiss"); *Nappier v. Pricewaterhouse Coopers LLP*, 227 F. Supp. 2d 263, 276 (D.N.J. 2002) (question regarding most applicable accounting practices is "a question of fact best addressed through expert testimony and thus inappropriate for resolution on a motion to dismiss").

[12] Several different tracing methodologies include: (1) Last In, First Out (LIFO), (2) First In, First Out (FIFO), (3) Lowest Intermediate Balance Rule (LIBR), (4) Restated Tracing Rules (Restated LIBR), and (5) Proportionality, and these "methodologies reflect legal rules or fictions designed to assist a Court in dealing with an improper transfer from a commingled fund." *Merkin*, 581 B.R. at 386.

funds are commingled with "cash from new subscribing investors," a trustee is not required to establish transfers "originated solely" with the debtor or even to account for "the exact funds at issue" on summary judgment). To the contrary, courts in this District and in this SIPA liquidation proceeding have denied summary judgment where only an undetermined or small portion of the subsequent transfer was conceivably traceable to the estate. *See Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3 (holding that even at summary judgment, "it is not necessary for the Trustee to specify what portion of the Subsequent Transfers to [the subsequent transferee] was derived from BLMIS"); *see also Gowan v. Amaranth Advisors, LLC (In re Dreier LLP)*, Adv. Pro. Nos. 10-03493 (SMB) & 10-05447 (SMB), 2014 WL 47774, at *14–16 (Bankr. S.D.N.Y. Jan. 3, 2014) (allowing the trustee to proceed to trial where at most 3.5% of the transfers at issue could be traced to the debtor's Ponzi scheme).

Moreover, without discovery, Defendants' arguments are premature. "[I]n a case such as this one, where 'the [T]rustee's lack of personal knowledge is compounded with complicated issues and transactions [that] extend over lengthy periods of time, the trustee's handicap increases', and 'even greater latitude' should be afforded." *Picard v. Cohmad Secs. Corp.*, 454 B.R. 317, 329 (S.D.N.Y. 2011) (internal citations omitted). This is partly why this Court denied the motion to dismiss in *Merkin*, finding "[t]he subsequent transfer claim must ultimately be proved through the books and records of the defendants." 515 B.R. at 151.[13] And even after fact and expert discovery, there may be fact disputes requiring a trial. For example, in *Merkin*, this Court denied a motion in limine to exclude the Trustee's accounting expert, finding expert testimony at trial "may assist the

---

[13] Defendants argue that this case is unlike *Merkin* in that the Trustee has had access to the Fairfield books and records "for over a decade." Motion at 20–21. This is untrue. The Trustee does not have all of Sentry's books and records, and discovery in the Trustee's actions against the Fairfield management defendants is continuing. *See, e.g.*, Stipulated Amended Case Management Order, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. May 17, 2022), ECF No. 355 (setting November 22, 2023 deadline for fact discovery and August 22, 2024 deadline for expert discovery).

Court in making its own determination as to the proper methodology." 581 B.R. at 386; *see also Kelley*, 2020 WL 3077151, at \*5 (denying summary judgment after trustee introduced expert report and related documents from which a jury may infer defendants received subsequent transfers of property from Ponzi scheme).[14]

Third, Defendants argue that in certain cases they could not have received customer property because of the amount of time that elapsed between Sentry's receipt of certain initial transfers from BLMIS and Sentry's subsequent transfers to Defendants. Motion at 23–26.[15] This is a variation of Defendants' FIFO-based tracing argument, addressed *supra*, that Sentry transferred BLMIS's customer property to other investors before getting to Defendants. For the reasons stated above, tracing arguments are inappropriate on a motion to dismiss. And even if it may prove difficult for the Trustee to trace these transfers, this is not grounds for dismissal at the pleading stage. *See Merkin*, 515 B.R. at 152 (finding it "premature to cut off the Trustee's opportunity to satisfy his [tracing] burden on a motion to dismiss" merely because the tracing may prove difficult); *In re Dreier LLP*, 2014 WL 47774, at \*15 ("[T]he [subsequent transferees'] speculation that tracing is 'not likely' to reveal a subsequent transfer . . . hardly justifies granting [their cross-motion for summary judgment].").

Finally, Defendants argue the Trustee's claims are "implausible" because the Trustee is seeking more money from all subsequent transferees of Sentry than the fund withdrew from BLMIS. Motion at 22–23. There is no dispute that the Trustee is limited to "a single satisfaction" under Section 550(a). 11 U.S.C. § 550(d). However, the Trustee "can recover from any

---

[14] For similar reasons, Defendants' argument that the Trustee has not given them fair notice to prepare their affirmative defenses or for discovery or trial (Motion at 21–22) by not tying the initial and subsequent transfers together is misguided. Tracing is a factual issue to be developed during the course of litigation.

[15] To the extent the Court finds it relevant, Defendants conveniently ignore many of the alleged transfers in the Trustee's Complaint where the initial and subsequent transfers are close in time.

combination of [transferees]" up to the amount avoided.  *Helms v. Metro. Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021).  And under Section 550(a), "a trustee may recover [an avoided] transfer from a subsequent transferee of those funds, without the necessity for allocation among all the subsequent transferees."  *CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*, 393 B.R. 306, 333 (Bankr. W.D.N.Y. 2008).  Thus, until the Trustee recovers the full amount of the approximately $3 billion in fraudulent transfers received by Sentry and its related entities, the Trustee may simultaneously seek recovery from Defendants in this action and from defendants in other actions, even in an aggregate amount that exceeds associated initial transfers.  *See Fairfield Inv. Fund*, 2021 WL 3477479, at *12 (holding arguments regarding "double recovery" and the Trustee's purported limitations under Section 550(d) are "to be determined at a later stage in the litigation").

III. **THE TRUSTEE SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE INITIAL TRANSFERS**

Defendants next attack the Trustee's incorporation by reference of the allegations in the Fairfield Amended Complaint as to the avoidability of the initial transfers.  Motion at 26–29; *see also* Fairfield Amended Complaint.[16]  However, contrary to Defendants' arguments, this incorporation is well within the Rules, and the Court may in any event take judicial notice of its decision on the avoidability of the initial transfers.

A. **The Incorporated Material Complies With Rules 10 and 8**

Defendants argue that the Trustee's incorporation by reference of the Fairfield Amended Complaint is "wholly unauthorized" under Rule 10(c).  Motion at 28.  However, there is no doubt

---

[16] The Complaint alleges that "the Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein."  Compl. ¶ 44.

that the Trustee may incorporate by reference a complaint filed in a different adversary proceeding within this same SIPA liquidation proceeding, and that he has done so properly here.

Rule 10(c), made applicable by Federal Rule of Bankruptcy Procedure 7010, allows the incorporation of other pleadings by reference. Rule 10(c) is intended to "facilitate pleadings that are 'short, concise, and free of unwarranted repetition,' as well as to promote 'convenience' in pleading." *Morrison v. Off. of the U.S. Tr. (In re Morrison)*, 375 B.R. 179, 193 (Bankr. W.D. Pa. 2007) (quoting 5A Alan Wright & Arthur R. Miller, Federal Practice & Procedure ("Wright & Miller") at § 1326 (3d ed. 2007)). In the bankruptcy context, all adversary proceedings filed under the umbrella of a single bankruptcy case are considered to be one action for Rule 10(c) purposes. *See Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010). In *Geiger*, a bankruptcy court allowed incorporation by reference of pleadings filed in a different adversary proceeding within the same Chapter 7 case because the pleadings "directly relate[d] to, materially affect[ed], and [were] filed in a single bankruptcy case." *Id.* The bankruptcy case is "an umbrella under which all actions concerning [the] estate must be brought pursuant to the Bankruptcy Rules." *Id.*

The District Court has already found sufficient the Trustee's incorporation by reference of the Fairfield Amended Complaint in the Trustee's subsequent transfer actions, stating that:

> [The] Trustee's complaint against [the subsequent transfer defendant] incorporates by reference the complaints against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. . . . Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 501 B.R. 26, 36 (S.D.N.Y. 2013). Defendants were participants in the omnibus withdrawal of the reference related to this decision. *See Picard v. Bank Hapoalim B.M.*, Adv. Pro. No. 12-01216 (CGM),

30

Memorandum of Law in Support of Defendants' Motion to Withdraw the Reference to the

Bankruptcy Court, ECF No. 27, at 6–7 (Bankr. S.D.N.Y. Aug. 9, 2012) ("Motion to Withdraw

Reference"). This decision allowing for incorporation by reference is thus law of the case as to

Defendants. *See Picard v. Lowrey*, 596 B.R. 451, 463–64 (S.D.N.Y. 2019), *aff'd sub nom. Picard*

*v. Gettinger*, 976 F.3d 184 (2d Cir. 2020), *cert. denied sub nom. Gettinger v. Picard*, 141 S. Ct.

2603, 209 L. Ed. 2d 736 (2021).

Moreover, even if the Court were to find that the adversary proceedings are separate actions

for purposes of Rule 10(c)*,* this Court still can permit incorporation by reference, as the Southern

District of New York and other federal courts have done in appropriate circumstances. *See*

*Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 323 n.5 (S.D.N.Y. 2007) (citation

omitted) (interpreting Rule 10(c)'s reference to "another pleading" as not being confined to another

pleading in the same action, and permitting incorporation of entire pleadings in separate cases);

*Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC*, 843 F. Supp. 2d 191, 214 n.15 (D. Mass.

2012) (holding incorporation by reference appropriate where "the court [was] familiar with the

filings in the other [] case[], which [were] substantially similar to [that] case, and the usual

concerns about inferring arguments from other submissions have less force.").

Cases cited by Defendants are inapposite because in those cases, unlike in this one,

plaintiffs were incorporating pleadings by reference in an attempt to add brand new claims—*see*

*United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 461–66 (E.D.N.Y. 2007)

(finding improper incorporation by reference of pleadings from prior actions to plead entirely new

claims not otherwise alleged in complaint, which did not expressly incorporate the pleadings);

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023 (CBA) (RLM), 2010 WL

1257803, at *4 (E.D.N.Y. Mar. 26, 2010) (rejecting attempt to state new claim by incorporating

by reference a reply brief that included "no specific factual allegations" supporting the claim)—or

the  allegations were sufficiently obtuse to prevent the court and the parties from understanding

the nature of the claims, *see Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47 (E.D. Va.

2009) (rejecting plaintiff's incorporation of his prior amended complaint, which itself incorporated

his original complaint against same defendants, concluding plaintiff "made no effort" to explain

which portions of the prior pleadings were meant to be superseded and/or to survive).   As

recognized by those courts, incorporation in those cases would have led to confusion or a lack of

notice of the claims asserted via the incorporated complaints.   By contrast, the Trustee is not

seeking to add additional claims, and Defendants would be hard-pressed to argue they lacked

notice that the Trustee was seeking to avoid the initial transfers to Sentry.

Incorporation in this case moreover alleviates potential complications, rather than adds to

them.  Here, the Trustee references only one other pleading—the Fairfield Amended Complaint—

and the incorporation is direct and explicit, with its purpose obvious.  To be sure, the incorporation

is in the Complaint section labeled "Initial Transfers From BLMIS to Fairfield Sentry" and follows

allegations relating to the Trustee's avoidance claims in the Fairfield Amended Complaint.  Compl.

¶ 44.  The purpose of this incorporation is thus clear.  *See* Wright & Miller § 1326 ("If the

incorporation is clear, less emphasis need be placed on the source of the incorporated material.");

*Whitaker Sec., LLC v. Rosenfeld (In re Rosenfeld)*, 543 B.R. 60, 66 (Bankr. S.D.N.Y. 2015) (noting

some courts fear incorporation will not provide adequate notice as to claims or factual allegations,

but allowing it where "there is no danger of such prejudice").

Reference to the Fairfield Amended Complaint also provides notice of avoidability of

initial transfers in a manner that avoids repetition and over-complication.  Courts have noted that

"[t]he ability to incorporate matters from other pleadings is especially useful in multiparty

litigation when the presence of common questions often results in the pleadings of the parties on the same side of the litigation being virtually identical, which makes employing simple incorporations by reference highly desirable." *Sherman*, 528 F. Supp. 2d at 323 n.5 (citing Wright & Miller § 1326); Wright & Miller § 1326 n.1 ("Adoption by reference avoids overly long or complicated pleadings.").

For similar reasons, Defendants are wrong that incorporation of the Fairfield Amended Complaint fails under Rule 8(a)(2)'s requirement that a complaint "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief" Motion at 28. Defendants argue that the Trustee's incorporation by reference poses an "unacceptable burden" on them and that it is confusing and inconvenient here because the Fairfield Amended Complaint includes allegations as to a number of defendants besides Sentry. Motion at 29. These concerns are baseless because the Fairfield Amended Complaint is incorporated only as to the avoidability of the initial transfers. Defendants can admit the allegations of the avoidability of the initial transfers, deny them, or respond they do not have sufficient information to admit or deny. The Fairfield Amended Complaint is moreover only one document, whose allegations as to Sentry's individual liability are well-pleaded, regardless of whether other defendants are also named. This case is therefore unlike *Int'l Longshoremen's Ass'n*, where the Court had to "read through six different pleadings . . . in addition to various peripheral documents, in order to decipher the basic elements of the Government's claim . . . ." 518 F. Supp. 2d at 464.

In the absence of incorporation, to have the Trustee replead all initial transfer allegations would do nothing to provide a "short and plain statement" and would unnecessarily add countless pages to the Complaint. Such duplication is unnecessary in pleading recovery under Section 550, *see In re Madoff Sec.*, 501 B.R. at 36, and inconsistent with Rule 8's purpose. In addition, until a

subsequent transferee defendant responds to the complaint, it is not clear that a defendant would even challenge avoidability of initial transfers, particularly in an admitted Ponzi scheme, and therefore re-pleading avoidability would needlessly create repetition and lengthen the complaint.

**B.      The Court Can Take Judicial Notice of the *Fairfield Inv. Fund* Decision**

Regardless of incorporation, this Court may take judicial notice of the operative Second Amended Complaint against Fairfield and its recent decision holding that this complaint sufficiently alleged the avoidability of the initial transfers from BLMIS. *See Fairfield Inv. Fund*, 2021 WL 3477479 at *4. On a motion to dismiss, "a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*." *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011). "Included among such matters are decisions in prior lawsuits." *DeMasi v. Benefico*, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008). As Defendants themselves recognize, judicial notice of pleadings in other actions is appropriate on a motion to dismiss. Motion at 2 n.6. Finally, the fact that the noticed complaint was filed after this Complaint against Defendants is of no moment. *See Rothman v. Gregor*, 220 F.3d 81, 91–92 (2d Cir. 2000) (noticing later filed complaint in related proceeding). Should the Court accept Defendants' argument and not take judicial notice of the avoidability of the initial transfers, the Trustee respectfully requests an opportunity to replead.[17]

**IV.      SECTION 546(e) DOES NOT BAR RECOVERY FROM DEFENDANTS**

In *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-MC-115, 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) (Rakoff, J.) ("*Cohmad*"), the District Court held that an initial transferee's actual knowledge of Madoff's fraud precluded application of the Section 546(e)

---

[17] Should the Court determine that repleading is warranted here, the Complaint can be amended to name the Second Amended Complaint specifically and/or address specific paragraphs of the Second Amended Complaint, as necessary.

safe harbor, thereby allowing the Trustee to avoid transfers made by BLMIS prior to the two-year

period referenced in Section 548(a)(1)(A).    As discussed below, Defendants' argument that

Section 546(e) bars recovery from Defendants as to these transfers must be rejected because

Defendants misinterpret *Cohmad,* and because law of the case dictates otherwise.

### A.    Sentry Had Actual Knowledge of Madoff's Fraud

To begin with, Defendants set forth at length the requirements of Section 546(e) and how

they are presumably met in this case in multiple ways with respect to the initial transfers to Sentry,

as established by *Cohmad*.   Motion at 30–38.   But this is all irrelevant, because this Court has

previously found that the Trustee has sufficiently pled that the initial transferee Sentry had actual

knowledge of Madoff's fraud and that such initial transfers are avoidable.   *See Fairfield Inv. Fund*,

2021 WL 3477479, at *4–5, *7.   As discussed below, Section 546(e) does not bar recovery of

those transfers from Defendants, regardless of whether Sentry or Defendants qualify as financial

institutions, their agreements qualify as securities contracts, or their transfers qualify as settlement

payments.[18]   The Trustee therefore focuses his response on Defendants' erroneous arguments as

to the actual knowledge exception and its application here.

### B.    Defendants Are Precluded From Arguing That Section 546(e) Applies Independently to Recovery Actions

Defendants argue that this Court should disregard Sentry's actual knowledge and that the

Trustee must instead allege the actual knowledge of Defendants themselves in order to invoke the

---

[18] The Trustee does not concede that any agreements or transfers between Sentry and Defendants independently activate the safe harbor under Section 546(e) as to Defendants.  Sentry's agreements with and transfers to Defendants are simply not relevant, because whether the initial transfers from BLMIS to Sentry are avoidable turns on Sentry's actual knowledge of fraud at BLMIS.  Among other things, the Trustee does not concede—by alleging that the subsequent transfers were customer property—that the initial transfers were "in connection with" the subscription agreements with Defendants for purposes of Section 546(e).  In addition, the initial transfers were not made "for the benefit of" Defendants.  The Trustee plainly alleges in the Complaint that Defendants are subsequent transferees, and it is settled law that a defendant cannot be both a subsequent transferee and a party for whose benefit an initial transfer is made.  *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 474 (Bankr. S.D.N.Y. 2015) (citing cases).

actual knowledge exception to Section 546(e), calling it "the only possible exception to the application of § 546(e)." Motion at 37–38. But *Cohmad* does not stand for this proposition, and Defendants' argument is just a repackaging of the previously rejected argument that the Section 546(e) safe harbor should independently apply to recovery actions under Section 550.[19]

Under its plain language, Section 546(e) applies to the avoidance of initial transfers, not the recovery of subsequent transfers under Section 550. *See* 11 U.S.C. § 546(e) ("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title.") (emphasis added); *BNP,* 594 B.R. at 191 ("The Trustee does not . . . 'avoid' the subsequent transfer; he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550."); *Kelley v. Safe Harbor Managed Acct. 101, Ltd.*, No. 20-3330, 2022 WL 1177748, *3 n.5 (8th Cir. Apr. 21, 2022) ("*SHMA*") (citing *BNP*).

This limitation on the safe harbor to avoidance actions is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct." *In re Madoff Sec.*, 501 B.R. at 30. It is also consistent with the understanding that the Bankruptcy Code's avoidance provisions protect against depletion of a debtor's estate, while Section 550 is merely a "utility provision," intended to help execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place." *See In re Picard,* 917 F.3d at 98.

*Cohmad* confirmed that Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees. The District Court withdrew the

---

[19] While Defendants indicate that they preserve their right to argue on appeal that no actual knowledge exception exists by statute, the Trustee notes that this exception was issued in connection with consolidated proceedings before the District Court as to the application of Section 546(e). Defendants participated in those District Court proceedings, and as such, are bound by that decision as law of the case. *See* Motion to Withdraw the Reference at 6–7 (raising Section 546(e) as grounds for withdrawal, among others).

reference on whether Section 546(e) barred recovery of a subsequent transfer pursuant to Section 550.[20] However, in its decision, the court specifically limited the safe harbor to avoidance claims based on the plain language of Section 546(e). *See Cohmad*, 2013 WL 1609154, at *4, *9 (applying the "plain terms" of Section 546(e)); at *7 (recognizing that subsequent transferees can raise initial transferees' defenses to *avoidance*); and at *10 ("[B]oth initial transferees and subsequent transferees are entitled to raise a defense based on the application of Section 546(e) to the *initial* transfer from Madoff Securities.") (emphasis added).    And though the court hypothesized, in *dicta*, that a subsequent transferee's subscription agreements with the initial transferee feeder fund, and related agreements and transactions, might under certain circumstances constitute relevant "securities contracts," and that certain subsequent transferee defendants might qualify as "financial institutions" or "financial participants," the decision is clear that the focus of the safe harbor is still on the *initial* transfers. *See id.* at *9.[21] The District Court did not, in its hypothetical, discuss actual knowledge or indicate that in such circumstances, the initial transferee's actual knowledge should be disregarded.

Consistent with *Cohmad*, this Court held in *BNP* that Section 546(e) is applicable only to avoidance and not recovery, and most notably that a subsequent transferee cannot assert Section 546(e) protections where the Trustee has adequately pled the initial transferee's actual knowledge. *See BNP*, 594 B.R. at 197; *see also In re SunEdison, Inc.*, 620 B.R. 505, 514 (Bankr. S.D.N.Y.

---

[20] *See* Section 546(e) Briefing Order, *In re Madoff Sec.*, 12-MC-115 (S.D.N.Y. filed May 16, 2012), ECF No. 119 (withdrawing the reference on issue of "whether application of Section 546(e) to an initial or mediate Transfer bars recovery by the Trustee of any subsequent Transfer pursuant to Section 550").

[21] The original point of the *Cohmad* hypothetical was to address the subsequent transferee defendants' argument that if necessary, in lieu of the BLMIS customer agreements, their subscription agreements could act as the relevant securities agreements under Section 546(e). *See Cohmad*, 2013 WL 1609154, at *8. That argument became moot as both the Second Circuit and the District Court determined that each BLMIS customer agreement was a "securities agreement" and the initial transfers from BLMIS were "settlement payments" notwithstanding that no securities were traded and therefore the Trustee's avoidance claims were subject to Section 546(e).

2020) ("the safe harbor defense only applies by its terms to the initial transfer").   In *BNP*, this

Court explicitly rejected the argument being made here—that the "*only* way the Trustee can escape

the application of Section 546(e) here is by pleading with particularity and plausibility that the

[subsequent transferee defendants] actually knew of the Madoff Ponzi scheme."   *BNP*, 594 B.R.

196–97 (emphasis in original).   Like *Cohmad*, *BNP* is law of the case, and Defendants are bound

by both decisions.   *See Picard v. Estate of Seymour Epstein (In re BLMIS)*, No. 2l-cv-02334 (CM),

2022 WL 493734, at *12 (S.D.N.Y. Feb. 17, 2022) (finding that "in a SIPA liquidation like this

one" where different adversary proceedings arise within the same SIPA liquidation proceeding,

law of the case applies when "prior decisions in an ongoing case either expressly resolve[] an issue

or necessarily resolve[] it by implication").

Defendants nevertheless seem to suggest that to the extent a party relies on the feeder fund

agreements as the relevant "securities agreements" in accordance with *Cohmad*, the Court must

look only to the actual knowledge of the subsequent transferee.   Motion at 35–38.   But as stated

above, the District Court did not conclude this, and *BNP* confirmed this was not the case.   Indeed,

Defendants' misinterpretation of *Cohmad* would effectively eliminate the point of the actual

knowledge exception—which is to restrict all bad actors from hiding behind the safe harbor.   *See

Cohmad*, 2013 WL 1609154, at *3 (explaining that defendants who knew BLMIS was a Ponzi

scheme "must have known that the transfers they received directly or indirectly from Madoff

Securities were not 'settlement payments'").   Adopting Defendants' position means the safe harbor

would apply even where the initial transferee feeder fund knew there were no securities

transactions in need of protection.   It would further allow an initial transferee—who had

knowledge of the fraud and was unable to satisfy a judgment (like Sentry)—to place fraudulently

transferred monies with a subsequent transferee and out of the reach of a trustee.   It would also

result in a situation whereby a determination as to the avoidability of an initial transfer would

depend upon and vary based on whether there were subsequent transfers, and who received them.

Defendants' interpretation of *Cohmad* provides a subsequent transferee with more rights

than an initial transferee, which is inconsistent with congressional intent on section 546(e).  *See In*

*re Madoff Sec.*, 501 B.R. at 29 ("Section 550(a) requires that the Trustee show that the transfer he

seeks to recover is avoidable in each recovery action, and the subsequent transferee in possession

of that transfer may raise any defenses to avoidance available to the initial transferee, as well as

any defenses to recovery it may have.").  As the Eighth Circuit pointed out in *SHMA*, under Section

546(e), "a subsequent transferee is protected *indirectly* to the extent that the initial transfer is not

avoidable because of the safe harbor."  2022 WL 1177748, at *3 n.5 (emphasis added).

Defendants also misconstrue *Cohmad*'s holding—which was not a part of the Court's

"securities contract" hypothetical—that subsequent transferees with actual knowledge are also

prohibited from benefitting from the safe harbor.  Motion at 37–38.  That holding does not require

a trustee to plead a subsequent transferee's actual knowledge.  Rather, it merely ensures that any

defendant that *doe*s have actual knowledge, including a subsequent transferee, cannot benefit from

the safe harbor (even if the initial transferee is innocent), such that the purpose of the actual

knowledge exception is achieved consistently.  *See Cohmad*, 2013 WL 1609154, at *1, *7.  This

holding that, like initial transferees, subsequent transferees with actual knowledge cannot benefit

from the safe harbor does not justify affording subsequent transferees expanded protections, such

that they can benefit from the safe harbor despite the initial transferee's actual knowledge.

Finally, this Court's *Fairfield Inv. Fund* decision does not demand a different result.  In

that case, this Court analyzed the actual knowledge of five different subsequent transferees—who

were administrators and partners of FGG—for purposes of imputing it to the initial transferee

feeder funds. *Fairfield Inv. Fund*, 2021 WL 3477479, at *4–7. That case was also decided at a time when the burden of pleading lack of good faith was on the Trustee,[22] and the Court dismissed the individual claims against one subsequent transferee (including two-year transfers not protected by Section 546(e)) after determining the Trustee's allegations as to both actual knowledge and willful blindness were insufficient. *Id*. at *7–8, 15. The "focus" of the Section 546(e) argument in *Fairfield Inv. Fund* was on the initial transfer and whether the Trustee had sufficiently pled the *initial transferee's* actual knowledge, and the Court did not analyze whether a subsequent transferee's actual knowledge is separately required to defeat the application of Section 546(e).[23]

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Motion.

---

[22] *See id.*

[23] *See* Decl. Ex. L (May 18, 2022 Hearing Transcript, *Picard v. Banque Syz & Co., S.A.*, Adv. Pro. No. 11-02149) at 76:6-7 (Court stating, in response to defendant's interpretation of that case, "I think you're misreading it. That's not correct. I dismissed on good faith").

Dated:    June 9, 2022
        New York, New York

*/s/ David J. Sheehan*

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
dsheehan@bakerlaw.com
Keith R. Murphy
kmurphy@bakerlaw.com
Ferve E. Khan
fkhan@bakerlaw.com
Anat Maytal
amaytal@bakerlaw.com

*Attorneys for Irving H. Picard,*
*Trustee for the Substantively Consolidated*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and the Chapter 7*
*Estate of Bernard L. Madoff*

**Windels Marx Lane & Mittendorf, LLP**
156 West 56th Street
New York, New York 10019
Telephone: (212) 237-1000
Facsimile: (212) 262-1215
Kim M. Longo
Email: klongo@windelsmarx.com

*Special Counsel for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and the Chapter 7 Estate of*
*Bernard L. Madoff*