# EXHIBIT H

# KINGATE MANAGEMENT LIMITED

HEMISPHERE HOUSE

9 CHURCH STREET, HAMILTON HM 11, BERMUDA

POSTAL ADDRESS:
P.O. BOX HM 951
HAMILTON HM DX
BERMUDA

TELEPHONE:  (441) 295 9166
FAX:            (441) 296 8227

November 10, 1998

**Via Courier: 011 411 283 8181**

Mr. Habshush
Bank Hapoalim (Switzerland) Ltd.
Stockerstrasse 33
8039 Zurich
Switzerland

**Ref:  Kingate Global Fund, Ltd., Class B**

Please find enclosed an information memorandum for the above fund as requested.

Yours sincerely
KINGATE MANAGEMENT LIMITED

Tina Outerbridge

Tina Outerbridge

Encl.

# INFORMATION MEMORANDUM

### AMENDED AND RESTATED AS OF SEPTEMBER 30, 1998

# KINGATE GLOBAL FUND, LTD.

*A British Virgin Islands Corporation*

### Private Offering of Class B Common Shares

### Price per Share: Net Asset Value

### Minimum Subscription: U.S.$ 250,000

| | |
|---|---|
| *Co-Managers:* | *Kingate Management Limited*<br>*Tremont (Bermuda) Limited* |
| *Consultant:* | *FIM Limited* |
| *Administrator:* | *Hemisphere Management Limited* |

*Kingate Global Fund, Ltd.*

A 1397

AAMSAA0001397

*Kingate Global Fund, Ltd.*

A 1398

AAMSAA0001398

# NOTICE

Neither Kingate Global Fund, Ltd. (the "Fund") nor the Class B Common Shares of the Fund (the "Class B Shares") described in this Amended and Restated Information Memorandum (this "Memorandum") have been or will be registered or qualified under the securities laws of the United States ("U.S.") or any other jurisdiction. This Memorandum shall not constitute an offer to sell or the solicitation of an offer to buy, nor shall there be any sale of Class B Shares in any jurisdiction in which such offer, solicitation or sale is not authorized or to any person to whom it is unlawful to make such offer, solicitation or sale. The direct or indirect ownership of Class B Shares by "Restricted Persons" as defined in this Memorandum is prohibited. No person has been authorized to make any representations concerning the Fund or the Class B Shares which are inconsistent with those contained in this Memorandum, and any such representations should accordingly be treated as unauthorized and may not be relied upon by the recipient.

Prospective investors should not construe the contents of this Memorandum as legal, tax or financial advice. All prospective investors should consult their own professional advisors as to the legal, tax, financial or other matters relevant to the suitability of an investment in the Class B Shares for such investor.

The purchase of Class B Shares is speculative and involves a high degree of risk. There is no assurance that the Fund will be profitable. Moreover, since the Fund's Net Asset Value and the Net Asset Value of the Class B Shares will be calculated in U.S. Dollars, each shareholder, and not the Fund, will bear the risk of any foreign currency exposure resulting from differences, if any, in the value of the U.S. Dollar relative to the currency of the country in which such shareholder resides. See section entitled "RISK FACTORS" within this Memorandum for a description for a more detailed description of the risks involved in the purchase of Class B Shares.

This Memorandum is intended solely for the use of the person to whom it has been delivered by the Fund for the purpose of evaluating a possible investment by the recipient in the Class B Shares described herein, and it is not to be reproduced or distributed to any other persons (other than professional advisors of the prospective investor receiving this document from the Fund). Kingate Global Fund, Ltd. has offered, pursuant to separate offering materials, Class A and DM Class Shares. Class C, E, F and G Shares have been reserved for other purposes. No offering of Class A, DM, C, E, F and G Shares is made by this Memorandum.

Any questions relating to the purchase of Class B Shares in the Fund or this Information Memorandum should be directed to the Fund's Co-Managers, Kingate Management Limited ("Co-Manager Kingate") and Tremont (Bermuda) Limited ("Co-Manager Tremont") (together, the "Co-Managers" as defined herein).

This Memorandum supersedes the Fund's Information Memorandum dated April 1, 1997.

---

All monetary amounts set forth herein are expressed in U.S. Dollars.

*Kingate Global Fund, Ltd.*

*Kingate Global Fund, Ltd.*

A 1400

AAMSAA0001400

## Table of Contents

|  | Page |
|---|---|
| SUMMARY | (i) |
| DIRECTORY | (vii) |
| THE FUND | 1 |
| The Fund's Investment Objective | 1 |
| Investment Process | 1 |
| Investment Policies | 2 |
| Temporary Investments | 2 |
| Investment Restrictions | 2 |
| Borrowing and Lending | 3 |
| The Multi-Advisor Concept | 3 |
| CERTAIN RISK FACTORS | 4 |
| MANAGEMENT | 13 |
| The Board of Directors | 13 |
| The Co-Managers | 13 |
| The Investment Advisors | 15 |
| The Consultant | 16 |
| The Administrator | 16 |
| Banking and Custody | 17 |
| FEES AND EXPENSES | 17 |
| Organization Costs | 17 |
| Fees of the Co-Managers | 17 |
| Fees of the Consultant | 18 |
| Fees of the Administrator | 18 |
| Fees of the Bank | 18 |
| Fees of the Investment Advisors | 18 |
| Apportionment of Expenses | 18 |
| Other Operating Expenses | 18 |
| SHARES OF THE FUND | 19 |
| The Fund's Share Capital | 19 |
| Subscriptions | 19 |
| Subscription Charge | 20 |
| Eligible Investors | 20 |
| Redemption | 21 |
| Redemption Charge | 22 |
| Suspension of Redemption and Sales | 22 |
| DETERMINATION OF NET ASSET VALUE | 23 |
| Net Asset Valuation | 23 |
| Registration and Transfer of Class B Shares and Certificates | 24 |
| Dividends | 24 |
| Voting and Other Rights | 24 |

## Table of Contents
(Continued)

| | Page |
|---|---|
| TAXATION | 25 |
| British Virgin Islands Taxation | 25 |
| US Federal Income Taxation | 25 |
| Other Taxation | 25 |
| Shareholders of the Fund | 26 |
| Returns | 26 |
| Unrelated Business Taxable Income | 26 |
| Changes in Law | 26 |
| ADDITIONAL INFORMATION | 27 |
| Reports to the Shareholders | 27 |
| Available Documents | 27 |
| Inquiries | 27 |
| SUBSCRIPTION INSTRUCTIONS | S-1 |
| SUBSCRIPTION AGREEMENT | S-3 |
| REDEMPTION REQUEST | S-5 |

*Kingate Global Fund, Ltd.*

**A 1402**

**AAMSAA0001402**

# KINGATE GLOBAL FUND, LTD.

## SUMMARY

The information set out below should be read in conjunction with the full text of this Information Memorandum (the "Memorandum").

**Kingate Global Fund, Ltd.**

Kingate Global Fund, Ltd. (the "Fund") is an open-end investment company organized as an international business company in the British Virgin Islands ("B.V.I.") on February 11, 1994. The Fund is a "Professional Fund" as that term is defined in the British Virgin Islands Mutual Funds Act (1996), as amended by the Mutual Fund Amendment Act (1997). The Fund is offering, through this Memorandum, Class B Common Shares (the "Class B Shares") at a net price per Class B Share equal to the Net Asset Value (as defined herein) of the Class B Shares. As of August 31, 1998, the Net Asset Value per Share of the Class B Shares was US$164.98. See "SHARES OF THE FUND" and "DETERMINATION OF NET ASSET VALUE." The Fund will seek long-term capital growth by allocating Class B Share capital to a selected investment advisor or investment advisors (the "Investment Advisor" or "Investment Advisors" as defined herein). The information in this Memorandum is qualified in its entirety by the Memorandum of Association and Articles, which are available on request. The Fund is also authorized to issue, and presently has outstanding, common shares which are designated Class A Common Shares and DM Class Common Shares (the "Class A Shares" and "DM Class Shares" respectively) simultaneously with this offering). Class C, E, F and G Common Shares have been reserved for other purposes (the "Class C Shares," "Class E Shares," "Class F Shares," and "Class G Shares," respectively). Such Class A Shares and DM Class Shares are issued pursuant to separate offerings as described in the Information Memorandums dated September 30, 1998. No offering of Class A, DM, C, E, F or G Shares is made by this Memorandum.

**Investment Objective and Program**

The Fund will seek long term capital growth. Capital received from subscribers of Class B Shares will be invested pursuant to the Investment Objective and Program described herein. In attempting to achieve its objective, the Fund will invest Class B Share capital primarily in securities through a selected investment advisor or investment advisors (the "Investment Advisor" or "Investment Advisors" as defined herein) and may also invest through acquisitions of interests in general or limited partnerships, funds, corporations, trusts or other investment vehicles based in the United States that invest or trade in a wide range of securities ("Portfolio Funds"). Throughout this Memorandum the term "Investment Advisor" or "Investment Advisors," as the case may be, is used to denote the individually managed accounts, as the case may be, and the Portfolio Funds. The Fund, through the Investment Advisors, expects to engage in,

AAMSAA0001403

among other things, hedged transactions using equities and derivative products.

**Investment Advisors**

The Fund's investment portfolio will initially be allocated to the Investment Advisor, (the "Investment Advisor" as defined herein) selected by the Co-Managers. Additional Investment Advisors may be utilized in the future, some of which may be investment companies to which the Co-Managers provide advisory services, and from time to time the Co-Managers may manage directly the investment of a portion of the Fund's investment portfolio. The Fund has the ability to engage new Investment Advisors and to discharge existing Investment Advisors in response to changing market conditions.

**Strategy**

The Fund will initially be a single advisor fund. As such, the overall success of the Fund will initially depend on the ability of the Investment Advisor to be successful in his own strategy. The past performance of such strategy is not necessarily indicative of the Investment Advisor's future profitability, and no strategy can consistently determine which security to purchase or sell at a profit. Any factor which would make it more difficult to execute more timely trades, such as a significant lessening of liquidity in a particular market, would also be detrimental to profitability. Further, the Investment Advisor may modify his strategy from time to time in an attempt to evaluate market movements more favorably. As a result of such periodic modifications, it is possible that the strategies used by the Investment Advisor in the future may be different from those presently in use. No assurance can be given that the strategy to be used by the Investment Advisor will be successful under all or any market conditions. In addition, it is not known what effect, if any, the size of the Fund's account or the increase in total funds being invested with the Investment Advisor will have on the performance of such Investment Advisor's trading methods. If the Fund is at any time a multi-advisor fund, it will be subject to risks similar to those referenced above with respect to the strategies of the Investment Advisors. There can be no guarantee of future performance and there is no assurance that the Fund will be able to achieve its Investment Objective or be profitable.

**Net Asset Value**

The Net Asset Value of the Class B Shares will be based upon the performance of the assets allocated to the Class B Shares and the costs and expenses attributable to the Class B Shares. The Net Asset Value of the Class B Shares will be apportioned in accordance with the Memorandum of Association and Articles. A more detailed description of "Net Asset Value" appears elsewhere in this Memorandum.

**Board of Directors**

The Fund has four (4) Directors on its Board of Directors who exercise ultimate authority over the Fund. The Directors will meet at least annually, either at the Fund's registered office in the B.V.I. or at another location of their choosing other than a location within the United States ("U.S.") or Bermuda to review the investment and administrative affairs of the Fund.

**Co-Managers**

Kingate Management Limited, a company duly incorporated under the laws of Bermuda on February 24, 1994 ("Co-Manager Kingate") and Tremont (Bermuda) Limited ("Co-Manager

*Kingate Global Fund, Ltd.*

ii

A 1404

AAMSAA0001404

Tremont"), a company duly incorporated under the laws of Bermuda on November 16, 1988 (herein together, the "Co-Managers") have been appointed as the Co-Managers of the Fund's assets. Each of the Co-Managers acts pursuant to a Co-Manager Agreement, as amended, effective March 1, 1995 by and between the Fund and the Co-Manager (herein the "Co-Manager Agreement"). Pursuant to the Co-Manager Agreement, each Co-Manager shall evaluate, select and monitor the Investment Advisors and, in general, provide all necessary management services to the Fund. The Co-Managers may also manage directly the investment of a portion of the Fund's assets. See "MANAGEMENT - The Co-Managers."

**Consultant**

FIM Limited, located in London, United Kingdom (herein the "Consultant"), has been appointed as consultant to Co-Manager Kingate in relation to the investments of the Fund pursuant to a Consulting Services Agreement by and among the Fund, Co-Manager Kingate and the Consultant dated November 1, 1994 as amended effective December 1, 1995 (the "FIM Consulting Services Agreement"). Pursuant to the FIM Consulting Services Agreement, the Consultant shall render consulting advice with respect to the analysis of the world's currencies, equity and fixed-income markets, as well as other various asset classes and, in general, the allocation of the Fund's portfolio among different markets and asset classes. Additionally, FIM researches, screens and nominates for selection by Co-Manager Kingate investment advisors that may be appointed to manage the Fund's assets.

**Administrator**

Hemisphere Management Limited, located in Hamilton, Bermuda (herein the "Administrator") has been appointed as Administrator of the Fund pursuant to an Administration Agreement, as amended, effective March 1, 1995, by and among the Fund, Co-Manager Kingate and the Administrator (herein the "Administration Agreement"). Pursuant to the Administration Agreement, the Administrator administers the day-to-day activities of the Fund's operations, which include, without limitation, receiving subscriptions and processing redemption requests, calculating the Net Asset Value, responding to shareholder inquiries and similar matters. See "MANAGEMENT - Administrator."

**Banking and Custody**

The Bank of Bermuda Limited (the "Bank"), based in Hamilton, Bermuda, has been appointed as the Fund's banker for purposes of receiving subscription funds, disbursing redemption payments and processing cash transactions not directly related to the Fund's investment portfolio. Additionally, the Class B assets of the Fund are held in the custody of the Bank pursuant to a Custodian Agreement, as amended, effective March 1, 1995 by and among the Fund, the Co-Manager Kingate and the Bank (herein the Custodian Agreement). See "MANAGEMENT - Banking and Custody."

**Registrar and Transfer Agent**

In addition to its administrative duties, the Administrator has been appointed as Registrar and Transfer Agent of the Class B Shares pursuant to a Registrar Agreement, as amended, effective March 1, 1995, by and among the Fund, Co-Manager Kingate and the Administrator (herein the "Registrar Agreement"). See "MANAGEMENT - Administrator."

*Kingate Global Fund, Ltd.*

A 1405

AAMSAA0001405

| | |
|---|---|
| **Minimum Investment** | U.S. $250,000 - waivable at the discretion of the Fund. |
| **Eligible Investors** | The Class B Shares may be purchased only by investors who are not "Restricted Persons" as defined in the section entitled "Eligible Investors" in this Memorandum. Persons interested in purchasing Class B Shares should inform themselves as to the legal requirements within their own countries for the purchase of Class B Shares and any foreign exchange restrictions which they may encounter. |
| **Subscriptions** | The Class B Shares may be purchased as of the first Business Day (as defined herein) subsequent to the prior month-end (herein the "Subscription Date") at a price equal to the Net Asset Value per Class B Share as of the Subscription Date, plus any applicable subscription charges. "Business Day" refers to any day when the central banking systems of the U.S. and Bermuda are open and operating. Completed Subscription Forms must be received by the Administrator by the last Business Day prior to the first Business Day of the month in which prospective investors wish to subscribe for Class B Shares and cleared funds must be received by the Bank at the latest by the Subscription Date.    All subscriptions are required to be made in U.S. Dollars, except that the Fund may, in certain cases, accept shares of other investment companies as consideration for the Class B Shares. Fractional Class B Shares will not be issued and refunds of subscription funds will be made only if the surplus amount (corresponding to non-issued fractional Class B Shares) is in excess of U.S. $200. The Fund reserves the right to accept or reject any subscription in its absolute discretion. The Co-Managers, in their sole discretion, may (i) discontinue the offering of the Class B Shares at any time or (ii) permit subscriptions on other than the first Business Day of a month at the then Net Asset Value of the Class B Shares. |
| **Redemptions** | Redemptions may be made as of the last Business Day of each calendar month (herein the "Redemption Date") upon thirty-five (35) days' prior notice, at the Net Asset Value as of the Redemption Date.   Settlements will generally be made within thirty (30) days after the Redemption Date.  In circumstances where the Fund is unable to liquidate securities positions in an orderly manner in order to fund redemptions or where the value of the assets of the Fund cannot reasonably be determined, the Fund may take longer than thirty (30) days to effect settlements of redemptions or may even suspend redemptions.   The notice requirement may be waived by the Fund in its discretion. |
| **Subscription and Redemption Charges** | A sales charge of five percent (5%) of the amount invested is payable on subscription of the Class B Shares, but such charge may be waived in whole or in part at the sole discretion of the Co-Managers. The Co-Managers may grant all or part of such charge to dealers and independent third parties in connection with the solicitation of subscriptions. Generally, no redemption charge is imposed.   However, a redemption charge not to exceed one percent (1.0%) of the proceeds (waivable in whole or in part at the sole discretion of the Co-Managers in exceptional circumstances) will be imposed on the redemption of Class B Shares which are held for less than twelve (12) months from the Subscription Date. |

*Kingate Global Fund, Ltd.*

A 1406

AAMSAA0001406

| | |
|---|---|
| **Dividends** | The Fund does not anticipate that any dividends or other distributions shall be paid to shareholders out of the Fund's current earnings and profits, but rather that such income will be reinvested. The Fund reserves the right to change such policy. |
| **Fees and Expenses** | The Co-Managers receive a monthly fee from the Fund at an aggregate annual rate equal to one and one-half percent (1.50%) of the Fund's month-end Net Asset Value attributable to the Class B Shares, (the "Co-Management Fee"), to be paid to them pursuant to their respective Co-Manager Agreements. Appropriate adjustments will be made to account for capital contributions and withdrawals. |
| | For its administrative duties, the Administrator receives compensation monthly, based on time spent, at a minimum of U.S. \$3,000 per month, and is entitled to reimbursement of actual out-of-pocket expenses. Additionally, for its services as Registrar and Transfer Agent, the Administrator receives compensation monthly calculated at an annual rate of U.S. \$2,000. |
| | The Consultant is paid by Co-Manager Kingate for its services at no additional cost to the Fund. |
| | Pursuant to the Custodian Agreement, the Bank receives a custodian services fee comprised of (i) an annual safekeeping charge equal to ten basis points (.10%) of the gross asset value of the Fund, subject to a minimum custodian fee equal to U.S. \$5,000 for the period through February 28, 1996, U.S.\$ 15,000 for the subsequent twelve months, with a maximum annual custodian fee of U.S. \$25,000; and (ii) the right to recover all sub-custodian charges which will be charged directly to the Fund. The Bank is entitled to reimbursement of actual out-of-pocket expenses. |
| | The Fund bears all other costs of its investment program (including brokerage and custody charges, sales loads, interest and taxes) as well as professional fees of its auditors and attorneys. Organization costs have been paid by the Fund out of its assets. Expenses relating to the offering of the Class B Shares will be borne by the Class B shareholders and paid out of the proceeds of this offering. The Class B Shares' organizational costs are being amortized over a period of sixty (60) months. As of August 31, 1998, the unamortized organizational costs of the Class B Shares were US\$9,436.25. |
| **Tax Status** | The Fund should not be subject to any B.V.I. or U.S. income taxes (other than U.S. withholding taxes on dividends and certain interest income derived from U.S. sources). Shareholders of the Fund who are not otherwise subject to B.V.I. or U.S. taxation by reason of their residence, nationality or other particular circumstances should not become subject to any such taxation by reason of the ownership or redemption of the Class B Shares. Persons interested in the purchase of the Class B Shares should inform themselves as to the tax consequences, if any, in their own countries, which might be relevant to the purchase, holding, repurchase, redemption or transfer of the Class B Shares. |

_Kingate Global Fund, Ltd._

**A 1407**

AAMSAA0001407

| | |
|---|---|
| **Functional Currency** | The Fund reports it results and transacts subscriptions and redemptions in U.S. Dollars. The Fund may from time to time attempt to hedge currencies against U.S. Dollars in circumstances in which, in the opinion of the Co-Managers, the Fund's exposure to other currencies may have a negative impact on the results of the Fund. |
| **Risks** | The purchase of the Class B Shares is speculative and involves a high degree of risk. There is no assurance that the Fund will be profitable. Moreover, since the Fund's Net Asset Value and the Net Asset Value of the Class B Shares are calculated in U.S. Dollars, each Class B Shareholder ("Class B Shareholders", as defined herein) and not the Fund, will bear the risk of any foreign currency exposure resulting from differences, if any, in the value of the U.S. Dollar relative to the currency of the country in which such shareholder resides. See "RISK FACTORS." |
| **Fiscal Year** | The Fund's fiscal year-end shall be December 31st each year. |
| **Reports** | Class B Shareholders receive annual audited financial statements within a reasonable time after the Fund's fiscal year-end and the Administrator will communicate the Net Asset Value of the Class B Shares to Class B Shareholders on a monthly basis. Net Asset Value quotations will also be published monthly (estimated to the extent required) in the *International Herald Tribune*, *Financial Times*, *Bloomberg* and *Telekurs*. |
| **Fund's Termination** | The Fund may be terminated in accordance with the laws of the British Virgin Islands. |

* * * *

AAMSAA0001408

# DIRECTORY

| | | | |
|---|---|---|---|
| **Fund's Registered Office** | Kingate Global Fund, Ltd.<br>c/o Bison Financial Services Limited<br>Bison Court<br>P.O. Box 3460<br>Road Town, Tortola<br>British Virgin Islands<br>Attn.: Mr. Keith R. Bish | Telephone<br>Telecopier | (+ 1-809) 494-5239<br>(+ 1-809) 494-6728 |
| **Fund's Directors** | Ms. Sandra Manzke<br>Mr. Charles D. Sebah<br>Mr. Christopher Wetherhill<br>Mr. Keith R. Bish | | |
| **Co-Managers** | Kingate Management Limited<br>Hemisphere House<br>9 Church Street<br>P.O. Box HM 951<br>Hamilton HM DX, Bermuda | Telephone<br>Telecopier | (+ 1-441) 295-9166<br>(+ 1-441) 296 8227 |
| | Tremont (Bermuda) Limited<br>Tremont House<br>4 Park Road<br>Hamilton HM 11, Bermuda<br>Attn: Mr. Johann S. Wong | Telephone<br>Telecopier | (+ 1-441) 292-3781<br>(+ 1-441) 296-0667 |
| **Administrator** | Hemisphere Management Limited<br>Hemisphere House<br>9 Church Street<br>P.O. Box HM 951<br>Hamilton HM DX, Bermuda<br>Attn.: Christopher Wetherhill, F.C.A. | Telephone<br>Telecopier | (+ 1-441) 295-9166<br>(+ 1-441) 296 8227 |
| **Consultant** | FIM Limited<br>25-28 Old Burlington Street<br>London W1X 1LB<br>United Kingdom<br>Attn.   Mr. Carlo Grosso<br>        Mr. Federico M. Ceretti | Telephone<br>Telecopier | (+ 44-171) 494-2194<br>(+ 44-171) 494-1981 |
| **Bank** | The Bank of Bermuda Limited<br>6 Front Street<br>P.O. Box HM 1020<br>Hamilton HM 11, Bermuda<br>Attn.: Mr. Ifor Hughes | Telephone<br>Telecopier | (+ 1-441) 295-4000<br>(+ 1-441) 295-4145 |

_Kingate Global Fund, Ltd._

A 1409

AAMSAA0001409

| **Auditors** | PricewaterhouseCoopers | Telephone | (+ 1-441) 295-2000 |
| | Dorchester House | Telecopier | (+ 1-441) 295-1242 |
| | Church Street | | |
| | Hamilton, Bermuda | | |
| | Attn.: Peter Mitchell, C.A. | | |
| | George Holmes, C.A. | | |

**Legal Advisors**   *In the British Virgin Islands:*

| | Harney, Westwood & Riegels | Telephone | (+ 1-809) 494-2233 |
| | Craigmuir Chambers | Telecopier | (+ 1-809) 494-3547 |
| | P.O. Box 71 | | |
| | Road Town, Tortola | | |
| | British Virgin Islands | | |
| | Attn.: Richard Peters, Esq. | | |

*In the United States*

| | Newman, Tannenbaum, Helpern, | Telephone | (+ 1-212) 508-6701 |
| | Syracuse & Hirschtritt LLP | Telecopier | (+ 1-212) 355-3034 |
| | 900 Third Avenue | | |
| | New York, N.Y. 10022 | | |
| | U.S.A. | | |
| | Attn.: Michael G.Tannenbaum,Esq. | | |

\* \* \* \*

A 1410

AAMSAA0001410

# KINGATE GLOBAL FUND, LTD.

- - -

---
## THE FUND
---

THE KINGATE GLOBAL FUND, LTD. (the "Fund") is an open-end investment company organized as an international business company in the British Virgin Islands (B.V.I.) The Fund is a "Professional Fund" as that term is defined in the British Virgin Islands Mutual Funds Act (1996), as amended by the Mutual Fund Amendment Act (1997). The Fund will seek long-term capital growth by allocating Class B Share capital to a selected investment advisor or investment advisors (the "Investment Advisor or "Investment Advisors", as the case may be) and may also in the future allocate capital among general or limited partnerships, funds, corporations, trusts or other investment vehicles based in the United States that invest or trade in a wide range of securities (the "Portfolio Funds"). Throughout this Memorandum the term "Investment Advisor" or "Investment Advisors," as the case may be, is used to denote the individually managed accounts, as the case may be, and the Portfolio Funds. The Fund initially will select a single Investment Advisor that will employ a variety of investment techniques and strategies. Additional Investment Advisors may be utilized in the future when market conditions warrant such action.

The Fund is also authorized to issue, and presently has outstanding, common shares which are designated Class A Common Shares and DM Class Common Shares (the "Class A Shares" and "DM Class Shares" respectively) simultaneously with this offering. Class C, E, F and G Common Shares have been reserved for other purposes (the "Class C Shares," "Class E Shares," "Class F Shares," and "Class G Shares," respectively). Such Class A Shares and DM Class Shares are issued pursuant to separate offerings as described in Amended and Restated Information Memorandums dated September 30, 1998. No offering of Class A, DM, C, E, F or G is being made by this Memorandum. See "CLASS B SHARES OF THE FUND" and "DETERMINATION OF NET ASSET VALUE." Accordingly, all references in the Memorandum shall be deemed to refer to Class B Shares. The information in this Memorandum is qualified in its entirety by the Memorandum of Association and Articles which are available on request.

### The Fund's Investment Objective

The Fund's investment objective is to seek long-term capital growth. In attempting to achieve its objective, the Fund shall primarily invest with an Investment Advisor who is based in the United States and who invests or trades in a wide range of equity securities, and, to a lesser extent, other securities. In certain instances and at certain times, the Co-Managers may directly invest certain of the Fund's assets, rather than allocating such assets to the Investment Advisor as may be consistent with, and in furtherance of, the Fund's investment objective. All investments involve investment risk and may result in losses instead of gains, as the achievement of the Fund's investment objective cannot be assured. See "Certain Risk Factors."

### Investment Process

In selecting a particular Investment Advisor to which the Fund will allocate assets, the Co-Managers will be guided by the following general criteria:

- The Investment Advisor's past performance and reputation.
- Size and efficiency of assets managed.
- Continued favorable outlook for the strategy employed.
- Ability of the Fund to make withdrawals or liquidate its investment.

---

A 1411

AAMSAA0001411

In an effort to optimize its investment program, the Fund may allocate, when appropriate, a portion of its capital to Investment Advisors who lack historical track records but, in the Co-Managers' judgement, offer exceptional potential.

It is presently contemplated that all of the Fund's assets, other than temporary investments, will be initially invested through the Investment Advisor. The Fund may in the future invest with other Investment Advisors. The Fund may in the future invest directly in securities if the Co-Managers determine such strategy to be in the Fund's best interests. The Co-Managers will review the Fund's holdings with the Investment Advisor or Investment Advisors not less frequently than quarterly to assess, among other things, their investment performance and to determine whether they continue to meet the general investment criteria outlined above.

## Investment Policies

The Fund expects to invest its assets with an Investment Advisor or Investment Advisors specializing in hedged transactions using equities, derivative products and index options.

The investments of the Investment Advisor or Investment Advisors may from time to time be concentrated in a particular industry or industries, although the Co-Managers do not currently contemplate employing the Investment Advisor or Investment Advisors for the purpose of concentrating the Fund's investments in a particular industry. The Co-Managers are not prohibited from investing the Fund's assets with Investment Advisors that are affiliated with the Co-Managers. However, the Co-Managers do not presently intend to make any such investments with affiliates. The Co-Managers will only invest with such affiliates if the terms of such investments are at least as favorable as could be obtained or received from unaffiliated third parties.

The Co-Managers may buy or sell securities for their own accounts, including securities which are the same as those held by the Fund; provided, however, that the Co-Managers shall not buy securities from or sell securities to the Fund.

A certain portion of the Fund's investments may from time to time take the form of interests, not offered pursuant to an effective registration statement under the Securities Act of 1933, as amended (the "1933 Act"), and issued by entities organized as partnerships under United States law but not registered as investment companies under the Investment Company Act of 1940, as amended (the "U.S. Company Act").

The Co-Managers shall have no authority, without the approval of the Class B Shareholders holding at least 67% of the Class B Shares, to change the Investment Objective of the Fund.

## Temporary Investments

Pending investment of capital of the Fund in accordance with the Fund's Investment Objective and Policies, or to facilitate withdrawals of capital by Class B Shareholders as permitted by this Memorandum, the Fund may, among other things, hold cash or invest in cash equivalents. Among the cash equivalents in which the Fund may invest are: obligations of the United States Government, its agencies or instrumentalities, commercial paper, and certificates of deposit and bankers' acceptances issued by United States banks that are members of the Federal Deposit Insurance Corporation. The Fund may also enter into repurchase agreements and may purchase shares of money market mutual funds in accordance with applicable legal restrictions.

## Investment Restrictions

The following investment restrictions of the Fund may not be changed without the approval of the Class B Shareholders holding at least 67% of the Class B Shares held by the Class B Shareholders:

(a)    the Fund will invest no more than 20% of the value of its total assets (at the time of investment) in the securities of any one issuer;

*Kingate Global Fund, Ltd.*_____

2

AAMSAA0001412

(b)    the Fund will not purchase real estate or interests in real estate, except that the Fund may purchase and sell securities that are secured by real estate or interests therein and may purchase securities issued by companies that invest or deal in real estate;

(c)    the Fund will not invest in any Portfolio Fund that does not permit its investors to withdraw all or any portion of their interests on at least a quarterly basis; and

(d)    The Fund will not, directly or indirectly, invest in or acquire any commodity interests or any options and futures for currency interests.

The restriction set forth in clause (a) above shall not apply to investments in obligations of any government, or any government agency or instrumentality, or to investments in certificates of deposit, time deposits, short-term commercial paper, shares of money market funds or bankers' acceptances.

### Borrowing and Lending

The Fund is authorized to borrow in order to fund redemption requests and to enhance its investment leverage. There are no restrictions on the Fund's borrowing capacity other than limitations imposed by lenders and any applicable credit regulations. Loans generally may be obtained from securities brokers and dealers or from other financial institutions; such loans are secured by securities or other assets of the Fund pledged to such brokers. Loans may also be made from or to other investment companies on such terms as are commercially reasonable, including without limitation, from or to investment companies similar to the Fund, or from or to finance companies with respect to which the Co-Managers (or one or more of its affiliates) have an interest, either as sponsor, manager, administrator, owner or otherwise.

The Fund may engage in "short sales," that is, the practice of selling securities which are borrowed from a third party, if an Investment Advisor anticipates a future decline in the price of the security. The Fund will be required to return, at the lender's demand, securities equivalent to those borrowed for the short sale. Pending the return of such securities, the Fund will be required to deposit with the lender as collateral the proceeds of the short sale plus additional cash or securities; the amount of the required deposit will be adjusted periodically to reflect any change in the market price of the security which the Fund is required to return to the lender.

### The Multi-Advisor Concept

The Fund's investment portfolio will initially be allocated to the Investment Advisor, (the "Investment Advisor" as defined herein) selected by the Co-Manager. Additional Investment Advisors may be utilized in the future, some of which may be investment companies to which the Co-Managers provide advisory services, and from time to time the Co-Managers may manage directly the investment of a portion of the Fund's investment portfolio. The Fund has the ability to engage new Investment Advisors and to discharge existing Investment Advisors in response to changing market conditions.

A 1413

AAMSAA0001413

## CERTAIN RISK FACTORS

Prospective investors should give careful consideration to the following risk factors in evaluating the merits and suitability of an investment in the Fund as they relate specifically to the Class B Shares or to the Fund, in general, as the context requires. The following does not purport to be an adequate summary of all the risks associated with an investment in the Fund. Rather, the following are only certain particular risks to which the Fund is subject that the Co-Managers wish to encourage prospective investors to discuss in detail with their professional advisors.

### Limited Operating History; No Liquidity

The Fund commenced operations with respect to Class B Shares on March 1, 1995 and as such has limited operating history with regard to such Shares. Accordingly, an investment in the Fund entails a high degree of risk. There can be no assurance that the Fund will achieve its investment objective and program or that the Co-Managers will be able to select an Investment Advisor or Investment Advisors that will succeed in achieving the Fund's investment objective and program. Given the factors which are described below, there exists a possibility that an investor could suffer a substantial loss as a result of an investment in the Fund. There is no market for investments in the Fund and, accordingly, investments in the Fund may be disposed of only through the withdrawal procedures described elsewhere in this Information Memorandum.

### Trading Strategies and Investment Advisors

This is initially a single-advisor Fund. The overall success of the Fund depends initially upon the ability of the initial Investment Advisor to be successful in his own strategy and thereafter will depend on the ability of the Investment Advisors (if more than one) to be successful in their own strategies. The past performance of such strategy or strategies is not necessarily indicative of his or their future profitability, and no strategy can consistently determine which security to purchase or sell at a profit. Any factor which would make it more difficult to execute more timely trades, such as a significant lessening of liquidity in a particular market, would also be detrimental to profitability. Further, the initial Investment Advisor and the Investment Advisors (if more than one) may modify his strategy or their strategies from time to time in an attempt to evaluate market movements more favorably. As a result of such periodic modifications, it is possible that the strategy or strategies used by such Investment Advisor or Investment Advisors in the future may be different from those presently in use. No assurance can be given that the strategy or strategies to be used by the Investment Advisor or Investment Advisors will be successful under all or any market conditions. In addition, it is not known what effect if any the size of the Fund's account or the increase in total funds being invested with an Investment Advisor will have on the performance of such Investment Advisor's trading methods.

Moreover, in order to diversify the Fund's investments, the Co-Managers in the future may select a number of Investment Advisors, each of which trades independently of the others. Although this diversification would be intended to offset losses while maintaining the possibility of capitalizing on profitable price movements, there can be no assurance that the use of several Investment Advisors will not result overall in losses generated by some Investment Advisors exceeding profits achieved by others.

### Dependence on the Co-Managers

All decisions with respect to the Fund's assets and the general management of the Fund will be made by the Co-Managers. Class B Shareholders will have no right or power to take part in the management of the Fund. As a result, the success of the Fund for the foreseeable future will depend largely upon the ability of the Co-Managers.

*Kingate Global Fund, Ltd.*

4

AAMSAA0001414

### Achievement of the Fund's Investment Goal and Objective

All investments with the Investment Advisor or Investment Advisors risk the loss of capital. No guarantee or representation is made that the Fund's program will be successful. The Fund's investment program may include the selection of Investment Advisors that utilize such investment techniques as short sales, leverage and limited diversification, which practices can, in certain circumstances, maximize the adverse impact to which the Fund's investments may be subject. To the extent the Investment Advisors pursue investment opportunities in undervalued securities and "special situations," there is an inherent uncertainty in the appraisal of future values and risk of loss of capital. No assurance can be given that the Fund will achieve its investment objective of long-term capital growth, whether or not the Fund invests its assets directly or through Investment Advisors.

### Nature of an Investment in the Fund

By investing in the Fund, which in turn principally invests with an Investment Advisor or Investment Advisors, an investor will, in effect, incur the costs of two forms of investment advisory services, the Management Fee paid to the Co-Managers for selecting Investment Advisors and administering the Fund, as well as the incentive and other fees paid to Investment Advisors.

### Inadvertent Concentration

Although the Co-Managers will monitor the Investment Advisor or Investment Advisors to whom the Fund has allocated capital, it is possible that more than one Investment Advisor might take substantial positions in the same security at the same time.

### Lack of Publicly Available Information Regarding Portfolio Funds

The interests in Portfolio Funds that may be purchased and sold by the Fund may not be offered pursuant to registration statements effective under the 1933 Act. In addition, the Portfolio Funds in which the Fund will potentially invest will not be subject to the periodic information and reporting provisions of the U.S. Securities Exchange Act of 1934, nor will those Portfolio Funds be registered as investment companies under the U.S. Company Act. Accordingly, only a relatively small amount of publicly available information about the Portfolio Funds will be available to the Co-Managers in managing and assessing the Fund's investments. These securities laws, particularly the U.S. Company Act, are designed to protect investors in pooled investment vehicles offered to the public. The Co-Managers believe, however, that they will be able to obtain sufficient information from the Portfolio Funds to manage the Fund's investments effectively.

### Temporary Investments in Managed Accounts

Where a Portfolio Fund limits the admission of new limited partners or the contribution of additional capital to certain opening dates (e.g., semi-annually), it may be necessary for the Fund to defer placing capital with one or more Portfolio Funds pending such dates of admission. In such cases, the Fund will seek to establish investment advisory accounts with the same Investment Advisor or other Investment Advisors. The performance of such accounts during such interim periods may not match the performance of the Portfolio Funds into which admission is being sought. In certain circumstances, this investment structure may result in recognition of taxable gain or loss on the securities in the account at the time of admission to the Portfolio Fund.

### Regulation

The Fund is not registered as an investment company under the U.S. Company Act (or any similar state laws). Investors, therefore, will not be accorded the protective measures provided by such legislation.

*Kingate Global Fund, Ltd.*

5

A 1415

AAMSAA0001415

Moreover, as noted above, Portfolio Funds are generally not subject to many provisions of the federal securities laws, particularly the U.S. Company Act, that are designed to protect investors in pooled investment vehicles offered to the public. The U.S. Company Act, among other things, regulates the relationship between the advisor and the investment company.

Registered investment companies are required, under applicable U.S. Securities Exchange Commission forms relating to the registration of their interests, to state definitive policies with respect to certain enumerated types of activities, some of which may not be changed without security holder approval. Such policies are considered to be "fundamental" policies with respect to such securities investments (i.e., policies which the registered investment company deems to be fundamental or policies which may not be changed without the approval of a majority of the registered investment company's security holders). The following discussion summarizes the Fund's currently anticipated policies with respect to such activities.

*Type of Securities in which the Fund May Invest.* As set out in this Memorandum and as generally authorized by the Memorandum of Association and Articles the Fund may invest in securities and other business interests of any and all types and descriptions, including "restricted" securities. The Fund may buy or write put and call options. Notwithstanding the foregoing, the Fund will not invest in real estate or commodities interests or any options and futures for currency interests without the consent of Class B Shareholders holding 67% of the Class B Shares.

*Use of Leverage.* The Fund may trade in securities on margin and may effect short sales. The Fund also may borrow, pledge, mortgage, lend or hypothecate securities or other assets.

*Making of Loans.* The Fund may make loans.

*Underwriting of Securities and Other Issuers.* The Fund will not underwrite securities of other issuers in connection with the distribution of securities.

*Concentration of Investments in Particular Industries or Companies.* The Co-Managers may concentrate investments in particular industries and, from time to time to a lesser extent, in particular companies. The Fund will not invest more than 20% of the value of its total assets in securities of any one issuer (other than certificates of deposits, time deposits, short-term commercial paper, shares of money market funds and bankers' acceptances). The Fund may not change these policies without the approval of Class B Shareholders holding at least 67% of the Class B Shares.

*Investment in Companies for the Purpose of Exercising Control of Management.* The Fund may invest in companies for the purpose of exercising control although it does not intend to do so on a regular basis.

*Policy with respect to Portfolio Turnover.* The Fund has no definite policy with respect to portfolio turnover. The Fund may incur a significant turnover rate, since the Fund's investment strategies sometimes may involve short-term considerations.

**Valuation of Portfolio Funds**

The method by which the Fund allocates Class B Share Net Asset Value (as defined in this Memorandum) contemplates the Fund's valuing its holdings of Portfolio Funds (if any). In valuing those holdings, the Fund will need to rely on financial information provided by Portfolio Funds. The Co-Managers may, in their discretion, modify such valuations to the extent they deem necessary to take into account restrictions upon marketability or other factors affecting the value of a Portfolio Fund. The Co-Managers' exercise of this discretion could result in a decrease in the value of a Class B Shareholder's Net Asset Value.

**Monthly Contributions and Admission of Shareholders**

Portfolio Funds in which the Fund may invest may not permit additional capital contributions or the admission of new shareholders on the same basis as the Fund. As a result, the Fund may be delayed in

A 1416

AAMSAA0001416

investing Class B Shareholders' contributions in Portfolio Funds. This delay may in turn act to dilute the interests of existing Class B Shareholders in the Fund's holdings of Portfolio Funds.

### Compensation Arrangements of Investment Advisors

The managers or general partners of many, if not most, of the managed accounts and Portfolio Funds through which the Fund may invest will be compensated through incentive arrangements. Under these arrangements, the manager may benefit from appreciation, including unrealized appreciation, in the value of the account, but may not be similarly penalized for realized losses or decreases in the value of the account. Such fee arrangements may create an incentive for the Investment Advisors to make investments that are riskier or more speculative than would be the case in the absence of a performance fee. Moreover, incentive fees may be paid to an Investment Advisor because of its favorable performance while the Fund, taken as a whole, may not be profitable.

### Risks of Special Techniques Used by Investment Advisors

The Investment Advisor or certain of the Investment Advisors through which the Fund may invest will use special investment techniques that may subject the Fund's investments to certain risks. Certain, but not all, of these techniques and the risks that they entail are summarized below. The Fund, in any event, is not designed to correlate to the broad equity market, and should not be viewed as a substitute for equity investments.

### Short Selling

Certain Investment Advisors through which the Fund may invest may sell securities of an issuer short in the expectation of "covering" the short sale with securities purchased in the open market at a price lower than that received in the short sale. If the price of the issuer's securities declines, the Investment Advisor may then cover the short position with securities purchased in the market. The profit realized on a short sale will be the difference between the price received in the sale and the cost of the securities purchased to cover the sale.

The possible losses from selling short a security differ from losses that could be incurred from a cash investment in the security; the former may be unlimited, whereas the latter can only equal the total amount of the cash investment. Short-selling activities are also subject to restrictions imposed by the federal securities laws and the various national and regional securities exchanges, which restrictions could limit the investment activities of Investment Advisors. However, where the Fund invests through a Portfolio Fund, its exposure is limited to its investment in such Fund.

### Risks of Leverage

Investment Advisors through which the Fund may invest may borrow funds for the purpose of purchasing securities. A particular Investment Advisor may not be subject to any limitations on the amount of its borrowings, and the amount of borrowings that the Investment Advisor may have outstanding at any time may be large in comparison to its capital.

Borrowing money to purchase securities may provide an Investment Advisor with the opportunity for greater capital appreciation but, at the same time, will increase the Investment Advisor's, and indirectly the Fund's, exposure to capital risk and higher current expenses. Moreover, if the Investment Advisor's assets are not sufficient to pay the principal of, and interest on, the Investment Advisor's debt when due, the Fund could sustain a total loss of its investment with the Investment Advisor.

_Kingate Global Fund, Ltd._

A 1417

AAMSAA0001417

### Risks of Options Trading

In seeking to enhance performance or hedge assets, an Investment Advisor may purchase and sell call and put options on both securities and stock indexes. A stock index measures the movement of a certain group of stocks by assigning relative values to the common stocks included in the index. Examples of well-known stock indexes are the Standard & Poor's Composite Index of 500 Stocks and the Standard & Poor's 100 Index.

Both the purchasing and the selling of call and put options contain risks. Although an option buyer's risk is limited to the amount of the purchase price of the option, an investment in an option may be subject to greater fluctuation than an investment in the underlying securities. In theory, the exposure to loss is potentially unlimited in the case of an uncovered call writer (i.e. a call writer who does not have and maintain during the term of the call an equivalent long position in the stock or other security underlying the call), but in practice the loss is limited by the term of existence of the call. The risk for a writer of an uncovered put option (i.e., a put option written by a writer that does not have and maintain an offsetting short position in the underlying stock or other security) is that the price of the underlying security may fall below the exercise price.

The effectiveness of purchasing or selling stock index options as a hedging technique will depend upon the extent to which price movements in assets that are hedged correlate with price movements of the stock index selected. Because the value of an index option depends upon movement in the level of the index rather than the price of a particular stock, whether a gain or loss will be realized from the purchase or writing of options on an index depends upon movements in the level of stock prices in the stock market generally, rather than movements in the price of a particular stock. Successful use of options on stock indexes will depend upon the ability of an Investment Advisor to predict correctly movements in the direction of the stock market generally. This ability requires skills and techniques different from those used in predicting changes in the price of individual stocks.

### Illiquidity

The consent of the Co-Managers must be obtained prior to any transfer of Class B Shares. In light of the restrictions imposed on a transfer of Class B Shares, and in light of the limitations imposed on a Class B Shareholder's ability to withdraw all or part of his or its capital from the Fund, an investment in the Fund should be viewed as illiquid and subject to risk.

Like an investment in the Fund, the Fund's investments in Portfolio Funds should be viewed as illiquid and subject to risk. Most, if not all, Portfolio Funds in which the Fund invests (if any) may restrict both the transferability of the Fund's interest and the Fund's ability to withdraw. The Fund is authorized to invest with Investment Advisors which prohibit withdrawals quarterly.

### Reliance on Management

The Co-Managers have full, exclusive and complete authority and discretion in the management and control of the business of the Fund, including the management of the Fund's investments and selection of the Investment Advisors. Class B Shareholders will have no right or power to take part in the management of the Fund. Accordingly, no person should invest in the Fund unless willing to entrust all aspects of the management of the Fund and its investments to the Co-Managers, having evaluated its capability to perform such functions.

The Class B Shareholders will have certain limited rights to consent as set forth in this Memorandum but will not have any authority or power to act for or bind the Fund.

### No Co-Managers Liability Beyond Fund Assets

Subject to the Co-Managers' fiduciary responsibility to Class B Shareholders, the Co-Managers shall have no personal liability to the Class B Shareholders for the return of any capital contributions, it being understood that any such return shall be made solely from the Fund assets.

*Kingate Global Fund, Ltd.*_____

8

A 1418

AAMSAA0001418

### Early Termination

In the event of the early termination of the Fund, the Fund would have to distribute to the Class B Shareholders their pro rata interest in the assets of the Fund. The Co-Managers can withdraw from the Fund at any time upon 6 months' prior notice, and may thereby cause the dissolution of the Fund. Certain assets held by the Fund may be highly illiquid and might have little or no marketable value. It is possible that at the time of such sale or distribution, certain securities held by the Fund would be worth less than the initial cost of such securities, resulting in a loss to the Class B Shareholders. Moreover, any Organizational Expenses with regard to the Class B Shares that had not yet become fully amortized would be debited against Fund capital at that time.

### Effect of Substantial Withdrawals

Substantial withdrawals by Class B Shareholders within a short period of time could require the Co-Managers to liquidate positions more rapidly than would otherwise be desirable, which could adversely affect the value of the Fund's assets. The resulting reduction in the Fund's assets could make it more difficult to generate a positive rate of return or to recoup losses due to a reduced equity base.

### Possibility of Fraud

When the Fund invests with an Investment Advisor, the Fund does not have actual custody of the assets. Therefore, there is the risk that the custodian could abscond with those assets. The Portfolio Funds in which the Fund may invest generally are private and have not registered their securities under federal or state law. Moreover, there can be no assurance that the Portfolio Funds will be operated in accordance with all applicable laws and that assets entrusted to Investment Advisors will be protected.

### Risks of Investment in Funds

The Fund and the Investment Advisor or Investment Advisors, as independent legal entities, may be subject to lawsuits or proceedings by government entities or private parties. Except in certain limited circumstances, expenses or liabilities of the Fund or an Investment Advisor arising from any such suit would be borne by the Fund or the Investment Advisor. Many of the Portfolio Funds in which the Fund may invest are partnerships with partnership agreements containing indemnification provisions for the general partner which may be used for the general partner's own protection against the interests of the limited partner investor. The general partners of the Portfolio Funds may be able to spend partnership funds on solutions to operating problems without obtaining prior approval from the limited partner investors. Although the Co-Managers attempt to monitor the performance of each Investment Advisor, the Fund ultimately must rely on (i) the general partner of each Portfolio Fund to operate in accordance with the investment strategy or the guidelines laid out by the general partner of the Portfolio Fund; and (ii) the accuracy of the information provided to the Fund by the general partner of the Portfolio Fund. If the general partner of a Portfolio Fund does not operate in accordance with the investment strategy or guidelines specified for such Portfolio Fund, or if the information furnished by an Portfolio Fund is not accurate, the Fund might sustain losses with respect to its investment in such Portfolio Fund despite the Co-Managers' attempts to monitor such Portfolio Fund.

### Arbitrage Trading

The trading operations of certain Investment Advisors may involve arbitraging between a security and its announced buy-out price (or other forms of "risk arbitrage"), between for example, two securities, between the equity and equity options markets. This means, for example, that the Fund may purchase (or sell) securities interests (*i.e.*, on a current basis) and take offsetting positions in the options market in the same or related securities interests. To the extent the price relationships between such positions remain constant, no gain or loss on the positions will occur. These offsetting positions entail the risk that the price differential could change unfavorably causing a loss to the position.

*Kingate Global Fund, Ltd.*

A 1419

AAMSAA0001419

### Investing in Small Companies

There is no limitation on the size or operating experience of the companies in which the Investment Advisor or Investment Advisors may invest. Some small companies in which the Investment Advisor or Investment Advisors (and, therefore, indirectly the Fund) may invest may lack management depth or the ability to generate internally or obtain externally the funds necessary for growth. Companies with new products or services could sustain significant losses if projected markets do not materialize. Further, such companies may have, or may develop, only a regional market for products or services and may be adversely affected by purely local events. Such companies may be small factors in their industries and may face intense competition from larger companies and entail a greater risk than investment in larger companies.

### Changes in Applicable Law

The Fund must comply with various legal requirements, including requirements imposed by the federal securities laws, tax laws and pension laws. Should any of those laws change over the scheduled term of the Fund, the legal requirements to which the Fund and the Class B Shareholders may be subject could differ materially from current requirements.

### Reserve for Contingent Liabilities

Under certain circumstances, the Co-Managers may find it necessary upon withdrawal by a Class B Shareholder to set up a reserve for contingent liabilities and withhold a certain portion of the Class B Shareholder's Capital Account.

### Risk of Litigation

Investment Advisors to whom the Fund has allocated capital may accumulate substantial positions in the securities of a specific company. Sometimes the Investment Advisor will engage in a proxy fight, become involved in litigation or attempt to gain control of a company. Under such circumstances, the Fund may be named as a defendant in a lawsuit or regulatory action.

### Sole Investment Advisors

Some of the Investment Advisors to whom the Fund may allocate capital consist of investment operations with only one principal or investment partnerships with a sole general partner. In such cases, if the services of the sole decision-maker of the Investment Advisor become unavailable, the Fund might sustain losses.

### Future Returns

No assurance can be given that the strategies employed by the Fund's Investment Advisor or Investment Advisors in the past to achieve attractive returns will continue to be successful or that the return on the Fund's investments will be similar to that achieved by such Investment Advisor or Investment Advisors in the past.

### Conflicts of Interest-Investments

The Fund may invest in Portfolio Funds or may make other investments in which the Co-Managers, its affiliates or their respective clients hold interests. Moreover, the Fund may co-invest in Portfolio Funds or other investments with the Co-Managers, their affiliates or their respective clients. In certain instances, the Fund may not be investing in certain Portfolio Funds or other investment opportunities in which the Co-Managers or such affiliates and clients are investing. While the Co-Managers are obligated to use their

*Kingate Global Fund, Ltd.*

10

A 1420

AAMSAA0001420

reasonable judgement in providing the Fund with a continuing and suitable investment program consistent with its investment objective and policies, the Co-Managers are not required to present to the Fund any particular investment opportunity which has come to their attention, even if such opportunity is within the investment objective of the Fund. The Co-Managers will endeavor to resolve any conflicts with respect to investment opportunities in a manner equitable to the interests of the Fund, the Co-Managers and any of the Co-Managers' other clients or affiliates.

The Fund may make investments in Portfolio Funds or with Investment Advisors for which affiliates of the Co-Managers, may then or in the future be rendering advisory or consulting services. As a result of the Fund's investments, such affiliates may be able to negotiate on a favorable basis arrangements and fees inuring to their benefit. In all these instances, the Co-Managers, as fiduciaries to the Fund, will use their best efforts to act in the interests of the Fund and will endeavor to resolve any conflicts without adverse consequences to the Fund.

**General Economic Conditions**

The success of any investment activity is influenced by general economic conditions, which may affect the level and volatility of interest rates and the extent and timing of investor participation in the markets for both equity and interest-rate-sensitive securities. Unexpected volatility or illiquidity in the markets in which the Fund directly or indirectly holds positions could impair the Fund's ability to carry out its business and could cause it to incur losses.

**Cross Collateralization Risks**

If losses are sustained by a Class which exceed the assets of such Class, such expenses will be charged against the assets of the other Class.

**Market Risks**

The success of a significant portion of the Fund's investment program will depend, to a great extent, upon correctly assessing the future course of price movements of stocks, bonds and other securities. There can be no assurance that the Investment Advisor or Investment Advisors with whom the Fund invests will be able to predict accurately these price movements.

With respect to each investment strategy used by any Investment Advisor who is managing assets for the Fund, however, there is always a degree of market risk. In addition there cannot be any assurance that the Fund will achieve its investment objective.

**Other Clients of Investment Advisors**

The Investment Advisor or Investment Advisors will have responsibility for making trading decisions on behalf of the Fund. In addition, the Investment Advisor or Investment Advisors may also manage other accounts (including other partnerships and accounts in which the Investment Advisor or Investment Advisors may have an interest) which together with accounts already being managed could increase the level of competition for the same trades the Fund might otherwise make, including the priorities of order entry. This could make it difficult or impossible to take or liquidate a position in a particular security at a price indicated by an Investment Advisor's strategy.

**Common Counsel**

Newman Tannenbaum Helpern Syracuse & Hirschtritt LLP, counsel to the Fund, also serves as counsel to the Co-Managers in connection with the offering contemplated by this Memorandum and other transactions. Counsel has attempted to be fair and reasonable and believes it has acted in a manner consistent

_Kingate Global Fund, Ltd._

11

**A 1421**

AAMSAA0001421

with its professional responsibilities. Should a future dispute arise between the Fund and Co-Managers the Co-Managers will cause the Fund to retain separate counsel.

### Lack of Independent Experts Representing Investors

The Co-Managers have consulted with counsel, accountants and other experts regarding the formation of the Fund. Each prospective investor should consult his own legal, tax and financial advisors regarding the desirability of an investment in the Fund.

### Possibility of Misappropriation of Assets

When the Fund invests with an Investment Advisor, neither the Custodian nor the Fund has custody of the assets so invested. Therefore, there is always the risk that the assets with the Investment Advisor could be misappropriated.

### Misuse of Confidential Information and Other Violations

During the past several years, there have been a number of widely reported instances of participants involved in corporate take-overs and in risk arbitrage having violated the securities laws through the misuse of confidential information or otherwise. Such violations may result in substantial liabilities for damages caused to others, for the disgorgement of profits realized and for penalties. If any of the Fund's Investment Advisors were found to have engaged in such violations in the past, the performance record of the Investment Advisors could be rendered misleading. Furthermore, if an Investment Advisor has engaged in the past or were to engage in the future in such violations, the Fund could be exposed to losses.

### Institutional Risk

The institutions, including brokerage firms and banks, with which the Fund (directly or indirectly) does business, or to which securities have been entrusted for custodial purposes, may encounter financial difficulties that impair the operational capabilities or the capital position of the Fund or an Investment Advisor.

### Lack of Liquidity in Markets

Despite the heavy volume of trading in securities, the markets for some securities have limited liquidity and depth. The lack of depth could be a disadvantage to the Fund, both in the realization of the prices which are quoted and in the execution of orders at desired prices.

### Suspensions of Trading

Each securities exchange typically has the right to suspend or limit trading in all securities which it lists. Such a suspension would render it impossible for an Investment Advisor to liquidate positions and, accordingly, could expose the Fund to losses.

A 1422

AAMSAA0001422

## MANAGEMENT

### The Board of Directors

The Fund has four (4) Directors, each of whom serves in accordance with the laws of the British Virgin Islands and in accordance with the Fund's Memorandum and Articles of Association. The Directors are:

**Ms. Sandra Manzke** has been President and Director of Tremont Advisers, Inc., a U.S. public company, since 1984. Ms. Manzke also serves as Chairman and President of Tremont Partners, Inc. and President and Director of Tremont (Bermuda) Limited, one of the Co-Managers. Ms. Manzke has been in the investment industry since 1970. Ms. Manzke serves as the Director of various U.S. companies.

**Mr. Charles D. Sebah** is the managing partner of SV International, a stock and futures brokerage firm headquartered in Paris, France, which he founded in 1989. From 1984 to 1989, Mr. Sebah worked with Drexel Burnham Lambert in various managerial capacities in both London, England and Paris. Prior to joining Drexel Burnham Lambert, Mr. Sebah was affiliated with AG Becker Paribas in London and Bache & Co. in Paris, where he was responsible for developing institutional brokerage business in U.S. securities and Eurobonds. Mr. Sebah is a former member of the board of directors of Amro Bank in Luxembourg.

**Mr. Christopher Wetherhill** - Mr. Wetherhill is the President and Chief Executive Officer of MRM Financial Services Ltd. which is the parent company of Hemisphere Management Limited and MRM Securities Ltd., The Hemisphere Trust Company Limited and Hemisphere Holdings Limited. From 1971 until 1977, Mr. Wetherhill was a Manager of the accounting and management services department at Ernst & Young, Bermuda. From 1977 to 1981, he was a Director and Financial Controller of a Bermuda company involved in offshore oil platform construction and shipping. Mr. Wetherhill is a Chartered Accountant, a Fellow of the Institute of Chartered Accountants in England and Wales, a member of the Bermudan and Canadian Institutes of Chartered Accountants and a Freeman of the City of London. Mr. Wetherhill's address is Hemisphere House, 9 Church Street, Hamilton, Bermuda.

**Mr. Keith R. Bish.** Mr. Bish is a Chartered Secretary, Certified Accountant and a member of the (British) Institute of Directors. He has worked in offshore finance since 1977 spending 12 years in Jersey, Channel Islands holding directorships and senior management positions with the trust companies of Bank of America and The Chase Manhattan Bank. In 1988 Mr. Bish relocated to the British Virgin Islands spending 7 years as Managing Director of HWR Services Limited, the trust company affiliated with the law practice of Harney Westwood & Riegels. Mr. Bish has since founded Bison Financial Services Limited of which he is Chairman and Chief Executive.

In the future, other or additional Directors may be appointed by the Fund.

It is anticipated that the Board of Directors will meet at least once a year to assist the Co-Managers in reviewing the investment and administrative affairs of the Fund. The Fund's Memorandum and Articles of Association provide that the Directors shall not be liable to the Fund for any acts or omissions in the performance of their duties if such person acted honestly and in good faith with a view to the best interests of the Fund and in the case of criminal proceedings, such person had no cause to believe that his conduct was unlawful, and contains certain provisions for the indemnification of the Directors by the Fund, to the extent permitted by law, against liabilities to third parties arising in connection with the performance of their services. The Directors may from time to time have a shareholding in the Fund.

### The Co-Managers

Kingate Management Limited and Tremont (Bermuda) Limited have been appointed as the Co-Managers of the Fund's capital. The Co-Managers were duly incorporated under the laws of Bermuda. The operating directors of the Co-Managers are:

*Kingate Global Fund, Ltd.*

13

A 1423

AAMSAA0001423

*Kingate Management Limited*

**Mr. Christopher Wetherhill** - See "MANAGEMENT - The Board of Directors" herein for biographical details.

**Ms. Margaret Every** has had over twenty years' experience in the administrative field, having worked with The Bank of N.T. Butterfield & Son Ltd. and several Bermuda exempted companies. She holds the title of Executive Vice President – Private Clients of Hemisphere Management Limited. Ms. Every's address is Hemisphere House, 9 Church Street, Hamilton Bermuda.

*Tremont (Bermuda) Limited*

**Johann Wong, CFA, President**, has over ten years experience in corporate finance and asset management with Joule & Watt Canada Inc., a private investment management and research consulting company. He is responsible for all Tremont (Bermuda) Limited activities including overseeing multi-manager program administration for clients and proprietary products, and strategic venture investments.

Johann Wong is a C.F.A. and holds an SSGD in General Arts & Science from the Jarvis Collegiate Institute in Toronto, Canada. He is a Director and President of Tremont (Bermuda) Limited, One World Capital Partners Limited, One World Asset Management Limited, One World Asset Management, Inc., and Joule & Watt Canada Inc. He is a Director of Children's Media Network, Inc., Brandt Technologies, Inc., and Advanced Orthopedic Technologies, Inc.

**Preston M. Davis, Accounting Manager**, is responsible for all accounting related matters involving Tremont (Bermuda) Limited and client accounts for which Tremont acts as administrator. Prior to joining the firm, Preston Davis was a Supervisor in the Corporate Trust Department of The Bank of Bermuda Limited where he co-ordinated the launching of new mutual funds and pensions accounts on their accounting system.

From 1981 to 1994 Preston Davis was an Accounts Manager at Fidelity International Ltd. responsible for accounting administration of a group of mutual funds and pension accounts. He was responsible for successfully co-ordinating the transfer of administration of Australia subsidiary mutual fund accounting to corporate headquarters in Bermuda. Prior to this he was an account executive at Armco Insurance Management Ltd.

Preston Davis graduated from Mount Allison University, New Brunswick, Canada with a Bachelor of Commerce in Financial Accounting.

In the future, other and additional directors of the Co-Managers may be elected.

The Co-Managers perform services pursuant to the Co-Manager Agreements. Pursuant to the terms of the Co-Manager Agreements, the Co-Managers have agreed (i) to manage all aspects of the investment advisory services provided to the Fund, including the selection and evaluation of the Investment Advisors and the allocation of the Fund's assets among the Investment Advisors and (ii) to arrange for the performance of all accounting and administrative services which may be required by the Fund's operations. The Co-Manager Agreement authorizes the Co-Managers to delegate responsibilities to others, subject to retaining certain responsibilities for evaluating and co-ordinating the services offered by others. The Co-Managers are also permitted to manage directly the investment of a portion of the investment portfolio of the Fund and may do so from time to time as conditions warrant. In addition, Co-Manager Tremont serves as the manager with respect to the Class A Shares issued by the Fund.

The Co-Managers supervise distribution of the Class B Shares. The Co-Managers may appoint other securities dealers or other financial institutions as authorized dealers for the Class B Shares. Such other, non-affiliated, authorized dealers may receive sales commissions either directly from the Fund (but payable only out of an investor's gross subscription proceeds before investment in Class B Shares and only to the extent of the permitted five percent (5%) subscription charge as described herein) or from the Co-Managers. The Co-Manager Agreement has an initial term expiring on December 31, 1996, and is automatically renewed thereafter for successive one-year periods, subject to termination by either party as of the end of any calendar

*Kingate Global Fund, Ltd.*_____

A 1424

AAMSAA0001424

month upon not less than one year's prior written notice or otherwise in accordance with the terms of the Co-Manager Agreement.

The Co-Manager Agreement provides that the Co-Managers shall not be liable to the Fund or its shareholders for any error of judgement or for any loss suffered by the Company or its shareholders in connection with its services in the absence of negligence, wilful default, fraud, or dishonesty in the performance or non-performance of its obligations or duties. The Co-Manager Agreement contains provisions for the indemnification of the Co-Managers by the Fund against liabilities to third parties arising in connection with the performance of its services, except under certain circumstances. The Co-Manager Agreement also contains provisions for the indemnification of the Fund by the Co-Managers in certain circumstances.

See "FEES AND EXPENSES" herein for a general description of the fees payable to the Co-Managers.

### The Investment Advisors

The Co-Managers, in their sole discretion, arrange for the investment of the Fund's assets by the Investment Advisors which have full investment discretion over the portion of the Fund's assets assigned to it by the Co-Managers. The Co-Managers (i) purchase interests in the Sub-Funds, (ii) establish discretionary security accounts managed by Sub-advisors or, (iii) to a limited extent, manage the assets themselves.

The Co-Managers have an international perspective regarding investments and believe that by allocating the Fund's investment portfolio either directly or through one or more Sub-Funds among a limited number of above-average Investment Advisors having different investment styles and strategies and emphasizing various techniques, products and geographic markets, the impact of any one such style, strategy or market on investment performance will be diluted, and the investment performance of the portfolio will be more consistent and less volatile over the long term than if a single style, strategy, products or market were emphasized throughout the entire period. The Co-Managers believe that, by means of this diversification of styles, hedge strategies, products and geographic markets, coupled with the use of Investment Advisors which have an above-average long-term investment performance record when measured against other investment management firms employing similar styles and strategies, the Fund may achieve better investment performance and reduced volatility over time than that of single-manager mutual funds or investment accounts.

The Co-Managers collect, analyze and evaluate information regarding the personnel, history and background, and the investment styles, products, strategies and performance of professional investment management firms. The Co-Managers also consider the geographic markets or economic sectors in which such firms are active or with respect to which they possess expertise. The process of selecting and maintaining an Investment Advisors may include simulations of the composite long-term past investment performance records of Investment Advisors having diverse investment styles, products and strategies appropriate to the Fund's investment objectives and policies. The Co-Managers may retain information services and consulting services to provide basic data and other information concerning the investment styles, strategies, products and performance records of the Investment Advisors.

The Investment Advisors are granted full discretion over all matters relating to the manner, method and timing of investment and trading transactions with respect to the assets of the Fund allocated to them, subject to the investment objectives, policies and restrictions set forth herein or otherwise communicated to them by the Co-Managers.

The Co-Managers have the ability to respond to changing market conditions by means of its selection and supervision of the Investment Advisors. The Co-Managers may reapportion the Fund's assets among the Investment Advisors or invest the assets with different Investment Advisors in its discretion.

See "FEES AND EXPENSES" herein for a general description of the fees payable to the Investment Advisors.

*Kingate Global Fund, Ltd.*

15

A 1425

AAMSAA0001425

**The Consultant**

FIM was formed on December 31, 1980 as a limited liability company under England's various Companies Acts. FIM is engaged in the business of discretionary portfolio management on behalf of institutional and private clients and in providing investment advice to institutional investors on a worldwide basis. In compliance with the United Kingdom's Financial Services Act 1986, FIM is a regulated by *The Investment Management Regulatory Organisation Ltd ("IMRO")*.

FIM performs its services pursuant to the FIM Consulting Services Agreement. FIM analyzes trends in the world's currencies, fixed-income and equity markets, as well as the performance of various other asset classes. Additionally, FIM researches, screens and nominates for selection by Co-Manager Kingate investment advisors that may be appointed to manage the Fund's assets. Based upon its analysis, FIM makes recommendations to Co-Manager Kingate concerning a proposed allocation of assets among asset classes and among investment advisors that it believes are suitable for the investment program of the Fund's various Classes of shares. If the Co-Manager accepts such a recommendation on behalf of the Fund, the Co-Manager will proceed to allocate the Fund's assets accordingly. FIM continuously monitors the asset allocation made by the Fund among various asset classes and among investment advisors. Based upon its continuous analysis of trends in the world's currencies, equity and fixed-income markets, as well as the performance of other asset classes, FIM will recommend changes in the allocation of the Fund's assets among different markets and asset classes. Based upon its continuous analysis of the performance of investment advisors, FIM will recommend changes in the allocation of the Fund's assets among different investment advisors. The Co-Manager has retained FIM in order to diversify its sources of information concerning the allocation of the Fund's assets.

The FIM Consulting Services Agreement had an initial term expiring on December 31, 1995, and is automatically renewed for successive one-year periods, subject to termination by either party at the end of the initial or subsequent term upon not less that thirty (30) days' prior written notice. The FIM Consulting Services Agreement provides that FIM shall not be liable to the Manager, the Fund or its Shareholders for any acts or omissions in the performance of its services in the absence of negligence, wilful default, fraud or dishonesty in the performance or non-performance of its obligations or duties. The FIM Consulting Services Agreement contains provisions for the indemnification of FIM by the Manger and The Fund against liabilities to third parties arising in connection with the performance of its services, except under certain circumstances.

**The Administrator**

Hemisphere Management Limited, located in Hamilton, Bermuda, serves as the Fund's Administrator. Hemisphere Management Limited was incorporated in Bermuda in September 1981 to provide management, investment, administration and accounting services to international clients. The Administrator is part of the Hemisphere Group of Companies which has offices in Bermuda, Cayman Islands, British Virgin Islands, Jersey, Boston and New York.

Pursuant to the Administration Agreement and the Registrar Agreement, the Administrator is responsible for all matters pertaining to the administration of the Fund, including, without limitation, (i) communicating with the Fund's shareholders; (ii) communicating with the general public; (iii) soliciting sales of the Fund's stock; (iv) accepting the subscriptions of new shareholders; (v) maintaining the Fund's principal corporate records and books of account; (vi) disbursing payments of dividends, legal fees, accounting fees, and officers' and directors' salaries; (vii) calculating, publishing or furnishing the subscription or redemption price of the Class B Shares; (viii) conducting meetings of the Fund's shareholders and Directors; and (ix) making redemptions of the Class B Shares.

Both the Administration Agreement and the Registrar Agreement shall continue and remain in force and effect unless and until terminated by either party upon not less than three (3) months' notice or a shorter time period under certain circumstances. The Administration Agreement provides that the Administrator shall not be liable to the Co-Manager Kingate, the Fund or its shareholders in the absence of negligence, wilful default, fraud or dishonesty in the performance or non-performance of its obligations or duties. The Administration Agreement and the Registrar Agreement contain provisions for the indemnification of the Administrator by the Fund against liabilities to third parties arising in connection with the performance of its

*Kingate Global Fund, Ltd.*

16

**A 1426**

AAMSAA0001426

services, except under certain circumstances. The Administration Agreement and the Registrar Agreement also contain provisions for the indemnification of the Co-Manager Kingate and the Fund by the Administrator in certain circumstances. In addition, the Administrator also serves in that same capacity with respect to the Class A and DM Class Shares issued by the Fund.

See "FEES AND EXPENSES" herein for a description of the fees payable to the Administrator pursuant to the Administration Agreement and the Registrar Agreement.

### Banking and Custody

The Bank of Bermuda Limited, located in Hamilton, Bermuda (the "Bank"), has been appointed as the Fund's banker for purposes of receiving subscription funds, disbursing redemption payments and processing cash transactions not directly related to the Fund's portfolio. In addition, the Class B assets of the Fund are held in the custody of the Bank pursuant to the Custodian Agreement. In addition, the Bank also serves in that same capacity with respect to the Class A and DM Class Shares issued by the Fund.

The Bank is not responsible for the safekeeping of any assets of the Fund deposited in any account opened with brokers or other intermediaries in connection with the trading activities of the Fund, and in particular, the operation of any accounts managed by the Investment Advisor.

The Co-Managers will not have custody of any of the Fund's assets nor do they presently propose to perform any brokerage services for the Fund. Brokerage services may be provided to the Fund by the Investment Advisor or their affiliated firms.

\* \* \* \*

## FEES AND EXPENSES

### Organization Costs

All costs and expenses associated with the organization of the Fund, including government incorporation charges and professional fees and expenses in connection with the preparation of the Fund's offering documents and the preparation of its basic corporate and contract documents, amounting to approximately U.S. \$35,000, are paid by the Fund out of the proceeds of the initial offering of the Class B Shares. Such organizational costs and expenses are being amortized by the Fund over a period of sixty (60) months. As of September 30, 1998 the unamortized portion of such expenses was U.S.\$ 9,436.25.

### Fees of the Co-Managers

#### *Management Fee*

The Co-Managers receive a monthly fee from the Fund calculated at an annual rate equal to one and one-half percent (1.5%) of the month-end Net Asset Value of the Fund attributable to the Class B Shares (the "Co-Management Fee"). The Management Fee is generally payable as of the last Business Day of each month.

*Kingate Global Fund, Ltd.*

17

A 1427

AAMSAA0001427

**Fees of the Consultant**

The Consultant will be paid by Co-manager Kingate for its services at no additional cost to the Fund.

**Fees of the Administrator**

For its administrative duties relating to the Class B Shares, the Administrator receives customary fees paid out of the Fund assets based upon the nature and extent of the services performed by the Administrtor for the Fund. The Administrtor will also be reimbursed for all out-of-pocket expenses. Additionally, for its services as Registrar and Transfer Agent, the Administrator receives compensation monthly calculated at an annual rate of U.S. $2,000. The compensation provisions of the Administration Agreement may be revised in the future.

**Fees of the Bank**

Pursuant to the Custodian Agreement, the Bank receives a custodian services fee comprised of (i) an annual safekeeping charge equal to ten basis points (.10%) of the gross asset value of the Fund, subject to a minimum annual custodian fee equal to U.S. $5,000 for the twelve months' period ending February 28, 1996, U.S.$ 10,000 for the following twelve months,  with a maximum of U.S.$ 25,000 per annum and (ii) the right to recover all sub-custodian charges which will be charged directly to the Fund.  The Bank is entitled to reimbursement of actual out-of-pocket expenses.  The compensation provisions of the Custodian Agreement may be revised in the future.

**Fees of the Investment Advisors**

The Fund bears all direct and indirect costs associated with the investment advisory services of the Investment Advisors selected by the Co-Managers. While the exact fees charged by each Investment Advisor will differ, such fees will generally consist of one or both of the following:  (i) a fixed fee that is a percentage of the Net Asset Value of the Fund's assets attributable to the Class B Shares that are under that Investment Advisor's management; (ii) a performance fee equal to a percentage of the total appreciation, if any, in the Net Asset Value of that portion of the Fund's assets attributable to the Class B Shares managed by that Investment Advisor.

In the case of investments in shares or units of other investment companies, the fees and expenses borne by the Fund typically are not negotiable. However, the structure and level of such fees and expense is a criterion in the Co-Managers' selection process. The Fund may be required to pay subscription charges and redemption charges in connection with its investments in other investment companies.  The Fund also has to pay brokerage commissions in relation to portfolio transactions executed for the Fund by the Investment Advisor.

**Apportionment of Expenses**

Fees and expenses which are attributable to a particular Class of Shares will be charged against that Class in computing its Net Asset Value.  Other fees and expenses will be allocated pro rata between the Classes based upon the Net Asset Value.

**Other Operating Expenses**

The Co-Managers, and the Administrator are responsible for providing all office personnel, space and facilities required for the performance of their respective services.  The Fund bears all other expenses incident to its operations and business, including the fees of its auditors and legal advisors; custody charges; interest and commitment fees on loans and debt balances; any income, withholding or other taxes; and the costs of communications with shareholders, prospective investors and the Investment Advisor.

*Kingate Global Fund, Ltd.*

18

A 1428

AAMSAA0001428

Each Director of the Fund who is not an officer or employee of the Co-Managers, or the Administrator receives a fee of U.S. $750 per year. All Directors receive reimbursement for travel and other costs incurred in connection with their services.

\* \* \* \*

## SHARES OF THE FUND

### The Fund's Share Capital

The Fund has an authorized capital of U.S. $300,000, consisting of 30,000,000 Common Shares, 15,000,000 of which have been designated as Class B Shares. The remaining capitalization is as follows: 2,000,000 Class A Shares, 5,000,000 Euro Class Shares, 2,000,000 Class C Shares, 2,000,000 Class E Shares, 2,000,000 Class F Shares and 2,000,000 Class G Shares. Each Class of Shares have a par value of U.S. $.01 per Share. Each of the Class B Shares participates rateably with all other outstanding Class B Shares in the assets and earnings attributable to the Class B Shares, has the redemption rights discussed below, and is entitled to one vote at any meeting of shareholders. Fractional shares are not permitted.

The Fund has reserved the right to issue additional classes of shares from time to time, which in the Fund's discretion, may have preferences and fee arrangements which differ from those relating to the existing classes of shares, in order to meet the needs of, for example, certain institutional investors. In no event will such additional classes decrease in any manner the value of the Class B Shares or otherwise be detrimental to shareholders. Any increased administrative charges by virtue of such new classes will be borne by shareholders of such classes only.

### Subscriptions

The Class B Shares may be purchased as of the first Business Day (as defined herein) subsequent to the prior month-end (herein the "Subscription Date") at a price equal to the Net Asset Value per Class B Share as of the Subscription Date, plus any applicable subscription charges. "Business Day" refers to any day when the central banking systems of the U.S. and Bermuda are open and operating. As of August 31, 1998 the Net Asset Value per Class B Share was US$164.98. The Co-Managers, in their sole discretion, may (i) discontinue the offering of Class B Shares at any time or (ii) permit subscriptions on other than the first Business day of a month at the then Net Asset Value of the Class B Shares.

Except by special arrangement, the minimum initial subscription from each investor is U.S. $250,000. Subscriptions are generally payable in U.S. Dollars. However, the Fund may, in certain cases, accept shares of other investment companies as consideration for the Class B Shares. The acceptance of sub-scriptions as of the commencement of each month is subject to (i) receipt by the Administrator of completed Subscription Forms by the last Business Day prior to the first Business Day of the month in which prospective investors wish to subscribe for Share and (ii) confirmation of the receipt of cleared funds by the Bank at the latest by the Subscription Date. The Fund reserves the right to accept or reject subscriptions in its absolute discretion.

By special arrangement, the Fund may accept exchanges of shares of other investment companies or interests of partnerships as consideration for subscriptions for the Class B Shares, if the Co-Managers determine that such an investment is suitable for the Fund. Each such exchange must receive the prior written approval of the Co-Managers, and any such exchange may be rejected at the sole discretion of the Co-

*Kingate Global Fund, Ltd.*

A 1429

AAMSAA0001429

Managers. Class B Shares or interests accepted in such an exchange will generally be valued at the current net asset value as of the exchange date supplied by the other company or partnership, less any applicable transfer or redemption charges, for purposes of determining the number of Class B Shares of the Fund to be issued in such an exchange. However, the Co-Managers have the discretion to make special valuation determinations with respect to shares of other investment companies or interests of partnerships for which net asset value is not indicative of fair value by reason of the existence of sales charges which the Fund would have to incur if it sought to acquire such shares or interests for cash, redemption charges imposed by the other company or partnership, timing issues or other special considerations. The Fund will issue provisional confirmations of subscriptions effected by such exchanges; final confirmations will be issued within thirty (30) days. Such subscriptions will be effective only upon prior confirmation that legal title to the shares of the other investment company or interests of partnership has been transferred to the Fund. Fractional Class B Shares will not be issued and refunds of subscription funds will be made only if the surplus amount (corresponding to non-issued fractional Class B Shares) is in excess of U.S. $200.

Details of the Subscription procedure are set forth at page S-1 of the Subscription Forms. As part of the Administrator's and the Fund's responsibility for protection against money laundering, the Administrator may require a detailed verification of the identity of a person or entity applying for Shares.

### Subscription Charge

A subscription charge of five percent (5%) of the total dollar amount subscribed will be charged on subscription of the Class B Shares, but such charge may be waived in whole or in part at the sole discretion of the Co-Managers. The Co-Managers may grant all or part of such charge to dealers and independent third parties in connection with the solicitation of subscriptions. The subscription charge will be deducted from the subscriber's payment for purposes of determining the net amount available for investment in Class B Shares.

### Eligible Investors

Each prospective investor is required to certify that the Class B Shares are not being acquired directly or indirectly for the account or benefit of a Restricted Person. The term "Restricted Person" as used in this Information Memorandum means any U.S. Person as defined below and other persons from time to time designated as such by the Fund.

For the purposes of this Information Memorandum, "U.S. Person" means:

(a)    any natural person who is a resident or citizen of the United States;

(b)    any partnership or corporation organized or incorporated under the laws of the United States or a state of the United States;

(c)    any estate of which any executor or administrator is a U.S. Person as defined in subparagraphs (a) and (b) herein;

(d)    any trust of which any trustee is a U.S. Person as defined in sub-paragraphs (a) and (b) herein;

(e)    any agency or branch of a foreign entity located in the United States;

(f)    any non-discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary for the benefit or account of a U.S. Person;

(g)    any discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary organized, incorporated or, if an individual, resident in the United States; or

*Kingate Global Fund, Ltd.*

**A 1430**

AAMSAA0001430

(h)    any partnership or corporation if (i) organized or incorporated under the laws of any foreign jurisdiction and (ii) formed by a U.S. Person principally for the purpose of investing in securities not registered under the United States Securities Act of 1933, as amended (the "Securities Act"), unless it is organized or incorporated, and owned, by accredited investors (as defined in Rule 501(a) under the Securities Act) who are not natural persons, estates or trusts.

"U.S. Person" does not include:

(a)    a discretionary account or similar account (other than an estate or trust) held for the benefit or account of a non-U.S. Person by a dealer or other professional fiduciary organized, incorporated or, if an individual, resident in the United States;

(b)    any estate of which any professional fiduciary acting as executor or administrator is a U.S. Person if (i) an executor or administrator of the estate who is not a U.S. Person has sole or shared investment discretion with respect to the assets of the estate and (ii) the estate is governed by foreign law;

(c)    any trust of which any professional fiduciary acting as trustee is a U.S. Person if a trustee who is not a U.S. Person has sole or shared investment discretion with respect to the trust assets, and no beneficiary of the trust (and no settlor if the trust is revocable) is a U.S. Person;

(d)    an employee benefit plan established and administered in accordance with the law of a country other than the United States and customary practices and documentation of such country;

(e)    any agency or branch of a U.S. Person located outside the United States if (i) the agency or branch operates for valid business reasons and (ii) the agency or branch is engaged in the business of insurance or banking and is subject to substantive insurance or banking regulation, respectively, in the jurisdiction where located; or

(f)    the International Monetary Fund, the International Bank for Reconstruction and Development, the Inter-American Development Bank, the Asian Development Bank, the African Development Bank, the United Nations and their agencies, affiliates and pension plans, and any other similar international organizations, their agencies, affiliates and pension plans.

Any prospective investor acting in any fiduciary capacity is required to certify the number of beneficial owners for whom Class B Shares are being purchased. Furthermore, it is the responsibility of each investor to verify that the purchase and payment for the Class B Shares is in compliance with all relevant laws of the investor's jurisdiction or residence.

The Fund reserves the right to offer Class B Shares to Restricted Persons upon compliance with applicable rules and regulations.

**Redemption**

Class B Shares are eligible for redemption as of the last Business Day of each calendar month, upon not less than thirty-five (35) days' prior written notice to the Administrator. The net redemption proceeds normally will be settled within thirty (30) days after the redemption date, without interest. In circumstances where the Fund is unable to liquidate securities positions in an orderly manner so as to fund redemptions or where the value of the assets of the Fund cannot reasonably be determined, the Fund may take longer than thirty (30) days to effect settlement of redemptions. The notice requirement may be waived by the Fund in its discretion. Redemption forms will be available on request to the Administrator.

_Kingate Global Fund, Ltd._

**A 1431**

AAMSAA0001431

Redemptions will be generally settled in U.S. Dollars, although the Fund may, in its discretion, settle redemptions in kind to the extent of such redeeming shareholder's pro-rata share of non-illiquid, direct investments. Cash settlements will be remitted either by wire transfer to an account designated by the shareholder or by check posted at the shareholder's risk (as specified by the shareholder in his written redemption notice). If Class B Shares are held in certificated form, the redemption payment will not be remitted until the certificates have been tendered to the Administrator, and no interest will accrue on the redemption proceeds pending the settlement date.

The redemption price is equal to the Net Asset Value of the Class B Shares as of the Redemption Date, plus any applicable redemption charge as described below. Net Asset Value determinations are based on the market value of the Fund's assets as of the Redemption Date, after deducting all accrued debts and liabilities of the Fund, including any contingencies for which reserves are determined to be required. Such deductions will include fees earned but not yet paid to the Investment Advisor, Co-Managers, Custodian and Administrator.

The Fund and the Co-Managers each, independently, have the right to require the compulsory redemption of all Class B Shares held by a shareholder for any reason.

Compulsory redemptions will be made at the current Net Asset Value of the Class B Shares (plus any applicable redemption charge) as of the last Business Day of the month in which such notice of redemption is issued to the shareholder.

**Redemption Charge**

Generally, no redemption charge is imposed. However, a redemption charge equal to one percent (1.0%) of the proceeds (waivable in whole or in part at the sole discretion of the Co-Managers in exceptional circumstances) will be imposed on the redemption of Class B Shares which are held for less than twelve (12) months from the Subscription Date.

**Suspension of Redemption and Sales**

The Fund may suspend the redemption of Class B Shares, as well as the issuance of additional Class B Shares, upon the occurrence of any of the following circumstances:

(1)     if it is not reasonably practicable to determine the Net Asset Value of the Class B Shares on an accurate and timely basis (*e.g.*, when any securities exchange or organized interdealer market on which a significant portion of the Fund's assets is regularly quoted or traded is closed, or trading thereon has been restricted or suspended);

(2)     whenever as a result of events, conditions or circumstances beyond the control or responsibility of the Fund, disposal of the assets of the Fund or other transactions in the ordinary course of the Fund's business involving the sale, transfer, delivery or withdrawal of securities or funds is not reasonably practicable without being detrimental to the interests of the Fund's shareholders; or

(3)     in the event of the liquidation and dissolution of the Fund.

The Fund may withhold payment to any person whose Class B Shares have been tendered for redemption until after any suspension has been lifted.

\* \* \* \*

*Kingate Global Fund, Ltd.*

22

A 1432

AAMSAA0001432

## DETERMINATION OF NET ASSET VALUE

### Net Asset Valuation

Net Asset Value of the Class B Shares is the market value of the Fund's assets calculated as described below, less all accrued debts and liabilities, including (i) fees of the Investment Advisor, the Co-Managers, the Administrator and the Bank earned or accrued but not yet paid, (ii) a provision for the annual performance fees of the Investment Advisor, or Investment Advisors, as the case may be, measured as of the valuation date, (iii) monthly amortization of organization costs, (iv) an allowance for the Fund's estimated annual audit and legal fees, and (v) any contingencies for which reserves are determined to be required. Net Asset Value of the Class B Shares will be expressed in U.S. Dollars, and any items denominated in other currencies will be translated at prevailing exchange rates as determined by the Co-Managers or the Administrator.

Net Asset Valuations attributable to Class B Shares are determined by the Administrator, in large part based upon information regarding the value of the Fund's portfolio assets attributable to Class B Shares provided by the Investment Advisor, as of the close of business on the last Business Day of each calendar month. The Fund generally seeks to have portfolio securities valued in accordance with the following guidelines.

Portfolio securities attributable to Class B Shares are valued at the last sale price reported on the principal securities exchange or market on which the securities are traded. In the absence of reported sales prices on the valuation date, portfolio positions generally are valued at the last reported bid quotation in the case of securities held long and at the last reported offer quotation in the case of securities sold short. In special circumstances in which the Administrator determines that market prices or quotations do not fairly represent the value of particular assets based on information provided by the applicable Investment Advisor, the Administrator is authorized to assign a value to such assets which differs from the market prices or quotations based on information provided by the applicable Investment Advisor.

Securities or other assets which are not readily marketable, attributable to Class B Shares including, illiquid direct investments of the Fund, generally are valued at the lesser of cost or market price, and may be subject to an additional discount upon the recommendation of the Administrator. If appraisals are available, references can be made to such appraisals. Shares of other investment funds will generally be valued at the Net Asset Value attributable to Class B Shares supplied by such funds, less any applicable redemption and transfer charges imposed by such funds and less any provision for non-accrued management and performance fees. The value of assets are recorded at their fair value as determined in good faith by the Administrator in the absence of current quotations or if the Administrator concludes that such quotations are not indicative of fair value by reason of illiquidity of a particular security or other factors.

In addition to special valuation calculations relating to illiquid securities, other special situations affecting the measurement of Net Asset Values attributable to Class B Shares may arise from time to time. Prospective investors should be aware that situations involving uncertainties as to the valuation of portfolio positions could have an adverse effect on the Fund's net assets if judgements regarding appropriate valuations made by the Administrator should prove incorrect. In the absence of bad faith or manifest error, the Net Asset Value calculations of the Class B Shares made by the Administrator are conclusive and binding on all shareholders.

The Net Asset Value per Class B Share shall equal the Net Asset Value of the assets of the Fund attributable to the Class B Shares divided by the number of outstanding Class B Shares on the relevant valuation date.

*Kingate Global Fund, Ltd.*

A 1433

AAMSAA0001433

**Registration and Transfer of Class B Shares and Certificates**

Class B Shares will be issued only in registered form; the Fund does not issue bearer shares. The Administrator maintains a current register of the names and addresses of the Fund's shareholders. Certificates representing Class B Shares will be issued, without charge, only if requested by a shareholder. Certificates will be mailed or delivered to the shareholder at the shareholder's risk. Because certificates must be returned to the Administrator prior to the processing of redemption requests, the Fund discourages shareholders from requesting certificates.

Transfers of Class B Shares are permitted only with the prior consent of the Fund. Any transferee is required to furnish the same information which would be required in connection with a direct subscription in order for a transfer application to be considered by the Fund. Violation of applicable ownership and transfer restrictions may result in a compulsory redemption.

The Class B Shares are not listed or proposed to be listed on any securities exchange, and it is not anticipated that there will be any secondary market for trading in the Class B Shares. Notwithstanding, the Fund reserves the right to list the Class B Shares on The Irish Stock Exchange if, in its discretion, it deems the same desirable.

**Dividends**

It is not expected that the Fund will declare any regular dividends. All Fund earnings normally will be retained for re-investment (subject to the redemption privilege). The Fund reserves the right to change such policy.

**Voting and Other Rights**

Each Class B Shareholder is entitled to one vote for each Class B Share held on any matter affecting Class B Shareholders presented to a meeting of shareholders in accordance with the Fund's Memorandum and Articles of Association. General meetings of the Fund's shareholders will be held annually to approve the selection of auditors and to attend to such other business as may properly be placed before a meeting. Shareholders will receive at least thirty (30) days' notice of any shareholders' meeting (or ten (10) days' notice, if the Board of Directors determines that prompt shareholder action is advisable) and will be entitled to vote their Class B Shares either personally or by proxy. If the proxy sent with the notice of meeting is not completed and returned prior to the meeting and the shareholder does not appear personally at such meeting, such Class B Shares will be voted in the discretion of the proxy and the attorney-in-fact designated in the Subscription Agreement executed by such shareholder.

* * * *

*Kingate Global Fund, Ltd.*

24

A 1434

AAMSAA0001434

## TAXATION

### British Virgin Islands Taxation

The following comments are based on advice received by the Board regarding current law and practice in the British Virgin Islands. Investors should appreciate that the taxation consequences for investors and the Fund may be otherwise than as stated below. Investors should consult their professional advisors on the possible tax consequences of their subscribing for, purchasing, holding, selling or redeeming Shares under the laws of their countries of citizenship, residence, ordinary residence or domicile.

The Fund should not be subject to any taxation or other governmental charges or fees in the British Virgin Islands other than an annual license fee payable to the Registrar of Companies (currently US$300) and an annual license fee payable to the Registrar of Mutual Funds (currently US$350). Under current British Virgin Island law, no income tax should be imposed on the Fund or on investors in the Fund who are not domiciled or resident in the British Virgin Islands. There are not withholding, capital gains, estate or inheritance taxes in the British Virgin Islands.

### U.S. Federal Income Taxation

The Fund has been advised that it should not be subject to U.S. Federal income taxes on income or gains from its trading (except in respect of any dividends received in the course of such trading), provided that it does not engage in a trade or business within the U.S. to which such income or gains are effectively connected. Pursuant to a safe harbor under the U.S. Internal Revenue Code of 1986, as amended (the "Code"), a non-U.S. corporation which trades stock, securities or commodities for its own account should not be treated as engaged in a trade or business within the U.S. provided that the non-U.S. corporation is not a dealer in stock, securities or commodities. The Fund intends to conduct its business in a manner so as to meet the requirements of the safe harbor. If the activities of the Fund were not covered by the foregoing safe harbor, there would be a risk that the Fund (but not any investor) would be required to file U.S. Federal income tax return for such year and pay tax at full U.S. corporate income tax rates as well as an additional thirty percent (30%) branch profits tax.

The Fund should not be subject to U.S. Federal income or withholding tax on U.S. source interest income (other than in the case of certain contingent interest or interest received from a borrower ten percent (10%) or more of the equity of which is owned by the Fund, neither of which the Fund anticipates receiving), provided that the Fund is not engaged in a trade or business within the U.S. to which such interest income is effectively connected, and provided that the Fund's interest-bearing securities qualify as registered obligations and that the Fund periodically supplies an Internal Revenue Service Form W-8 or its equivalent.

### Other Taxation

The Fund should not be generally subject to any tax on its entire income or revenues in any other jurisdiction, although the Fund may be subject to income taxes or withholding taxes at source on dividend, interest and capital gain income derived from certain jurisdictions. The Fund will be responsible for payment of such taxes should they become liable.

Persons interested in purchasing the Shares should inform themselves as to any tax consequences particular to their circumstances arising in the jurisdiction in which they are resident or domiciled for tax purposes in connection with the acquisition, ownership, redemption or disposition of the Shares.

_Kingate Global Fund, Ltd._

A 1435

AAMSAA0001435

### Shareholders of the Fund

Class B Shareholders who are not otherwise subject to B.V.I. or United States taxes by reason of their residence, domicile or other particular circumstances should not become subject to any such taxes by reason of the ownership, transfer or redemption of the Class B Shares.

Shareholders who are or may be subject to U.S. Federal income tax on their worldwide income should be aware of certain tax consequences of investing directly or indirectly in Class B Shares and should be certain to consult with their own tax advisors in this regard.

Dividend and redemption payments made by the Fund to shareholders who are not U.S. persons should not be subject to U.S. Federal income tax, provided that Class B Shares are not held in connection with a U.S. trade or business of the shareholder in the year of receipt. Individual shareholders who are not U.S. persons should not be subject to any U.S. Federal estate or gift taxes by reason of the ownership or transfer of the Class B Shares. (A shareholder's change in status to a U.S. person could result in adverse U.S. tax consequences in addition to resulting in a compulsory redemption of Class B Shares.)

### Returns

Any U.S. Person owning ten percent (10%) or more of the value or voting power of the shares of a foreign corporation such as the Fund will likely be required to file an information return with the U.S. Internal Revenue Service containing certain disclosure concerning the filing shareholder, other shareholders and the corporation. The Fund has not committed itself to provide the information about the Fund or its shareholders needed to complete the return.

### Unrelated Business Taxable Income

The term "Permitted U.S. Person" means a U.S. Person that is subject to ERISA or is otherwise exempt from payment of U.S. Federal income tax. Generally, a Permitted U.S. Person is exempt from Federal income tax on certain categories of income, such as dividends, interest, capital gains and similar income realized from securities investment or trading activity. This type of income is exempt even if it realized from securities trading activity which constitutes a trade or business. This general exemption from tax does not apply to the "unrelated business taxable income" (UBTI") of a Permitted U.S. Person. Generally, except as noted above with respect to certain categories of exempt trading activity, UBTI includes income or gain derived from a trade or business, the conduct of which is substantially unrelated to the exercise or performance of the Permitted U.S. Person's exempt purpose or function. UBTI also includes (I) income derived by a Permitted U.S. Person from debt-financed property and (ii) gains derived by a Permitted U.S. Person from the disposition of debt-financed property.

A Permitted U.S. Person investing in a foreign corporation such as the Fund should not realize UBTI with respect to an unleveraged investment in Shares. Permitted U.S. Persons are urged to consult their own tax consequences of an investment in the Fund.

### Changes In Law

All laws, including laws relating to taxation in the British Virgin Islands and the U.S. (and in other jurisdictions as well), are subject to change without notice.

\* \* \* \*

*Kingate Global Fund, Ltd.*_____

A 1436

AAMSAA0001436

The foregoing summary does not address tax considerations which may be applicable to certain shareholders under the laws of jurisdictions other than the B.V.I., Bermuda or the U.S. The Fund has no present plans to apply for any certifications or registrations, or to take any other actions under the laws of any jurisdictions which would afford relief to local investors therein from the normal tax regime otherwise applicable to an investment in Class B Shares. It is the responsibility of all persons interested in purchasing the Class B Shares to inform themselves as to any income or other tax consequences arising in the jurisdictions in which they are resident or domiciled for tax purposes, as well as any foreign exchange or other fiscal or legal restrictions, which are relevant to their particular circumstances in connection with the acquisition, holding or disposition of the Class B Shares. The value of the Fund's investments may also be affected by repatriation and exchange control regulations.

\* \* \* \*

## ADDITIONAL INFORMATION

**Reports to the Shareholders**

The Fund will furnish annual reports to its Class B Shareholders containing financial statements examined by the Fund's independent auditors. The Administrator will communicate the Class B Shares Net Asset Value to shareholders on a monthly basis.

**Available Documents**

This Memorandum is not intended to provide a complete description of the Fund's Memorandum and Articles of Association or the agreements with the Co-Managers, Investment Advisor, Administrator and Custodian summarized herein. Copies of all such documents are available for inspection by shareholders and prospective investors during normal business hours at the Administrator's office in Bermuda.

**Inquiries**

Inquiries concerning the Fund and the Class B Shares, including information concerning subscription and redemption procedures and current Net Asset Value, should be directed to the Administrator at the address set forth in the DIRECTORY appearing elsewhere in this Memorandum.

\* \* \* \*

*Kingate Global Fund, Ltd.*

A 1437

AAMSAA0001437

[This page left intentionally blank]

*Kingate Global Fund, Ltd.*_____

A 1438

AAMSAA0001438

# KINGATE GLOBAL FUND, LTD.

## SUBSCRIPTION INSTRUCTIONS
### Class B Common Shares

**Subscription Applications**

Applications to subscribe for Class B Common Shares (The "Class B Shares") of the Kingate Global Fund , Ltd., a British Virgin Islands corporation, may be made only by written application using the enclosed Subscription Agreement. All completed Subscription Agreements should be directed to the Administrator at the address shown thereon no later than the last Business Day (as defined in the Fund's Information Memorandum) prior to the Subscription Date (as defined in the Fund's Information Memorandum). The Fund reserves the right to reject subscriptions in whole or in part, in which event subscription payments will be refunded at the applicant's risk, without interest. The Co-Managers of the Fund may, in their sole discretion, discontinue the offering of Class B Shares at any time. A properly completed and signed copy of the Subscription Agreement may be submitted to the Administrator by telecopier (+ 1-441) 296-8227 in advance of submitting the original in order to expedite processing of the application. The signed original, however, must be sent to the Administrator immediately thereafter.

**Subscription Payments**

Payments in full for the amount subscribed (not less than U.S. $250,000, unless otherwise agreed in advance by the Fund) are to be made in U.S. Dollars by Fed Fund transfer at the latest by the Subscription Date (as defined in the Fund's Information Memorandum) as follows:

(Note: Send Via SWIFT MT 100)

Wire to:

| | |
|---|---|
| Correspondent Bank: | Citibank N.A. |
| | 111 Wall Street |
| | New York, NY |
| | (ABA No.: 021000089) |
| | (CHIPS UID no. 0008) |
| | (SWIFT Code CITIUS33) |

| | |
|---|---|
| Beneficiary Bank: | The Bank of Bermuda Limited |
| | 6 Front Street |
| | Hamilton HM 11 Bermuda |

| | |
|---|---|
| Account No.: | Redacted 1671 |
| Beneficiary: | Kingate Global Fund, Ltd. (Class B Shares) |
| Account no.: | Redacted 9335 |
| Attn: | Ms. Warrenette Walcott |

Notification to the Administrator may be made via facsimile to the attention of Mr. Rich Vickers, at telecopier number (+ 1-441) 296-8227.

_Kingate Global Fund, Ltd._

S-1

A 1439

AAMSAA0001439

In order to facilitate prompt and accurate crediting of subscription payments, subscribers must notify the Administrator, prior to remitting payment, of the details of the subscription payment, indicating (i) the name of the subscriber, (ii) the dollar amount subscribed, (iii) the subscriber's address (including a telex or telecopier number if available), (iv) the name and address of the financial institution remitting the subscription payment and (v) the approximate date as of which the payment is being wired to the Fund's account.

### Confirmations

Confirmations will be sent to subscribers showing the details of each transaction. The Class B Shares will ordinarily be issued in respect of accepted applications at the Net Asset Value (as defined in the Fund's Information Memorandum) per Class B Share as of the last Business Day of the month following the date on which the Fund has verified the receipt of the cleared funds.

A Share certificate will be issued only if specifically requested by the subscriber.

### Exchanges as Subscription Payment

Payment for subscriptions of Class B Shares may, in individual cases be specifically approved by the Fund, be made by exchanging shares of another investment company. Each such exchange must receive the prior written consent of the Fund. Subscribers interested in effecting such an exchange should contact the Co-Manager indicating: (i) the name of the subscriber, (ii) the approximate dollar amount of the subscription, (iii) the subscriber's address (including the telex or telecopier number if available), (iv) the name and address of the investment company the shares of which are proposed for exchange, (v) the number of such shares, (vi) the approximate dates as of which the subscriber desires to invest in the Fund and (vii) the form in which the shares are held (*i.e.*, bearer shares or registered shares, certificated or noncertificated).

### Local Rules

Persons interested in subscribing for the Class B Shares should inform themselves as to the (1) the legal requirements within their own countries for the purchase of the Class B Shares, (2) any foreign exchange restrictions which they might encounter and (3) the income tax or other tax consequences, if any, which might be relevant to the purchase, holding or sale of the Class B Shares.

As part of the Administrator's and the Fund's responsibility for protection against money laundering, the Administrator may require a detailed verification of the identity of a person or entity applying for Shares. Depending on the circumstances of each application, a detailed verification might not be required where:

a.  the applicant makes the payment from an account held in the applicant's name at a recognized financial institution; or
b.  the application is made through a recognized intermediary.

These exceptions will only apply if the financial institution or intermediary referred to above is within a country recognized as having sufficient anti-money laundering regulations.

The Administrator and the Fund reserve the right to request such information as is necessary to verify the identity of an applicant. In the event of delay or failure by the applicant to produce any information required for verification purposes, the Administrator may refuse to accept the application and the subscription monies relating thereto or may refuse to process a redemption request until proper information has been provided.

*Kingate Global Fund, Ltd.*_____

A 1440

AAMSAA0001440

# KINGATE GLOBAL FUND, LTD.

## SUBSCRIPTION AGREEMENT
## Class B Common Shares

Kingate Management Limited
Tremont (Bermuda) Limited
As Co-Managers of
**Kingate Global Fund, Ltd. – Class B Shares**
c/o Hemisphere Management Limited
Hemisphere House, 9 Church Street
P.O. Box HM 951, Hamilton HM DX, Bermuda
Telecopier No.: (+ 1-441) 296-8227

Dear Sirs:

The undersigned subscriber (the "Subscriber") acknowledges having received, reviewed and understood the Amended and Restated Information Memorandum dated September 30, 1998 (the "Information Memorandum") for the offering of Class B Common Shares (the "Class B Shares") of Kingate Global Fund, Ltd. (the "Fund") and hereby subscribes for as many Class B Shares as may be purchased for the amount indicated below on the terms of the Information Memorandum and subject to the provisions of the Memorandum and Articles of Association of the Fund.

### Subscription Information

| | |
|---|---|
| Name and Mailing Address of Subscriber | ................................................................................. |
| | ................................................................................. |
| | ................................................................................. |
| Telephone and Telecopier (or telex) Number | ................................................................................. |
| Name and Address for Class B Share Registration (if different) | ................................................................................. |
| | ................................................................................. |
| | ................................................................................. |
| Amount of Subscription: (minimum of U.S. $250,000) | U.S.$ ............................................................ |
| Name and Address of Financial Institution Remitting Payment for Subscriber's Account | ................................................................................. |
| | ................................................................................. |
| | ................................................................................. |
| Payment Date: | ............................................... , 19................. |

_____*Kingate Global Fund, Ltd.*

S-3

A 1441

AAMSAA0001441

## Subscriber Representation

The Subscriber represents and agrees that none of the Class B Shares (nor any interest therein) is being acquired or will at any time be held, directly or indirectly, for the account or benefit of any "Restricted Person" (as defined in the Information Memorandum), and further agrees that none of the Class B Shares may be transferred to any person who has failed to supply a similar representation. The Subscriber represents and warrants that: (a) the Class B Shares are not being purchased with a view to resale; (b) all consents required to be obtained and all legal requirements necessary to be complied with or observed in order for this Agreement or the issuance of the Class B Shares to be lawful and valid under the laws of any jurisdiction to which the Subscriber is subject have been obtained, complied with or observed; and (c) the Subscriber has not relied on any representations or other information purported to be given on behalf of the Fund except as set forth on the Information Memorandum or the published, financial accounts of the Fund.

The Subscriber agrees, represents and warrants to the Fund that the Subscriber is a 'professional investor' within the meaning of the Mutual Funds Act of the British Virgin Islands, in that (1) the Subscriber's ordinary business involves, whether for its own account or the account of others, the acquisition or disposal of property of the same kind as the property, or a substantial part of the property which is (or will be) owned by the Fund, as set out in the Fund's current Confidential Offering Memorandum; OR (2) the Subscriber's net worth (in the case of a natural person, either individually or jointly with spouse) exceeds one million dollars in United States currency and that the Subscriber consents to being treated as a professional investor for the purposes of investment in the Fund.

## Standing Proxy

Subscriber hereby designates and appoints Kingate Management Limited and Tremont (Bermuda) Limited, jointly, with the powers of substitution, as Subscriber's true and lawful Proxy for the purpose of voting any Class B Shares issued pursuant to this Agreement (or such portion thereof from time to time owned by Subscriber) as said Proxy may determine on any and all matters arising at any annual or fiscal general meeting of the Fund upon which such Class B Shares could be voted by Subscriber (or the person in whose name the Class B Shares hereby subscribed are registered at Subscriber's direction) if present in person at the meeting. This proxy may be revoked by Subscriber (or his registered nominee) either personally or by presentation of a subsequently executed form of proxy at any general meeting of the Fund or by written notice to the Administrator received at the Fund's registered office prior to any such meeting.

Dated ................................................. , 19...............        ..............................................................................
(Signature)

..............................................................................        ..............................................................................
Name and Title (if signing                                                          Name of Subscriber
in representative capacity)

*Kingate Global Fund, Ltd.*_____

S-4

**A 1442**

AAMSAA0001442

# KINGATE GLOBAL FUND, LTD.

## REDEMPTION REQUEST
### Class B Common Shares

Kingate Management Limited
Tremont (Bermuda) Limited
as Co-Managers of
**Kingate Global Fund, Ltd. – Class B Shares**
c/o Hemisphere Management Limited
Hemisphere House, 9 Church Street
P.O. Box HM 951, Hamilton HM DX, Bermuda
Telecopier No.: (+ 1-441) 296-8227

Dear Sirs:

The undersigned hereby requests Redemption, as defined in and subject to all the terms and conditions of the Memorandum of Association and Articles of Kingate Global Fund, Ltd. (the "Fund"), and the Information Memorandum of the Fund, as may be amended and supplemented from time to time, of the number of Class B Shares of the Fund detailed below in an amount equal to the Net Asset Value of such Class B Shares, as defined in the Information Memorandum.

Redemption shall be effective as of the last business day of the calendar month detailed below, provided that this Request for Redemption, accompanied by a Class B share certificate(s) (if applicable) is received by the Fund at least 35 days prior to such effective date.

The undersigned (either in an individual capacity or as an authorized representative of an entity, if applicable) hereby represents and warrants to be the true, lawful and beneficial owner of the Class B Shares to which this Redemption Request relates, with full power and authority to request redemption of such Class B Shares. Such Class B Shares are not subject to any pledge or otherwise encumbered in any fashion.

#### Redemption Information

| | |
|---|---|
| Number of Class B Shares being redeemed: | ...................................................................... |
| Effective Redemption Date: | ...................................................................... |
| Name and Mailing Address of Subscriber Wishing to Redeem | ...................................................................... |
| | ...................................................................... |
| | ...................................................................... |
| Name and Address of Class B Share Registration (if different) | ...................................................................... |
| | ...................................................................... |

_____ *Kingate Global Fund, Ltd.*

S-5

**A 1443**

AAMSAA0001443

| Name and Address of Financial | ................................................................................. |
|---|---|
| Institution to which Redemption | |
| Proceeds are to be transferred | ................................................................................. |
| (including a bank account number | |
| if appropriate) | ................................................................................. |
| | ................................................................................. |

Dated ................................................, 199.....                    .................................................................
                                                                                                                (Signature)


.................................................................                    .................................................................
     Name and Title (if signing                                                              Name of Subscriber
     in representative capacity)


THIS REDEMPTION REQUEST MUST BE RECEIVED BY THE COMPANY AT LEAST 35 (THIRTY FIVE) DAYS PRIOR TO THE END OF THE MONTH IN WHICH REDEMPTION IS TO BE EFFECTIVE.

THIS REDEMPTION REQUEST MUST BE ACCOMPANIED BY SHARE CERTIFICATES FOR A NUMBER OF CLASS B COMMON SHARES AT LEAST EQUAL TO THE NUMBER OF CLASS B COMMON SHARES BEING REDEEMED (IN THE EVENT SUCH CERTIFICATES WERE ISSUED BY THE COMPANY TO THE SHAREHOLDER REQUESTING THE REDEMPTION).

*Kingate Global Fund, Ltd.*_____

A 1444

AAMSAA0001444