**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Chapter 7 Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (CGM) <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br> Plaintiff, <br><br> v. <br><br> MERITZ FIRE & MARINE INSURANCE CO., LTD., <br><br> Defendant. | Adv. Pro. No. 11-02539 (CGM) |

## TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT MERITZ FIRE & MARINE INSURANCE CO., LTD.'S
## <u>MOTION TO DISMISS</u>

# TABLE OF CONTENTS

                                                                            **Page**

PRELIMINARY STATEMENT ...................................................................1

STATEMENT OF FACTS .........................................................................3

    I.    THE BLMIS PONZI SCHEME............................................................3

    II.   THE INITIAL TRANSFEREE ACTION AND SETTLEMENT ..........................4

    III.  MERITZ AND ITS INVESTMENTS IN SENTRY ................................4

ARGUMENT .......................................................................................5

    I.    THIS COURT HAS PERSONAL JURISDICTION OVER MERITZ ..................5

        A.    Meritz Purposefully Availed Itself of the Laws and Privileges of
             Conducting Business in New York by Investing in Sentry ......................7

             1.    Meritz's Investments in BLMIS through Sentry Establish
                  Minimum Contacts..........................................................8

                  a.    *BLI* Establishes Jurisdiction Over Meritz ...........................9

                  b.    *Walden* Does Not Save Meritz from this Court's
                        Jurisdiction ........................................................10

             2.    Meritz's Contacts with FGG Establish Minimum Contacts ..........11

             3.    The Use of New York Bank Accounts Establishes Personal
                  Jurisdiction..................................................................14

             4.    Meritz's Other Arguments Against Jurisdiction Are Not
                  Persuasive ...................................................................17

         B.    The Exercise of Personal Jurisdiction Is Reasonable ..............................19

        C.    At Minimum, the Trustee Is Entitled to Jurisdictional Discovery ............20

    II.   SECTION 546(e) DOES NOT BAR RECOVERY FROM DEFENDANT .........20

        A.    Sentry Had Actual Knowledge of Madoff's Fraud...................................21

        B.    Meritz Is Precluded From Arguing That Section 546(e) Applies
              Independently to Recovery Actions...........................................22

i

C.      The Trustee Has Adequately Alleged Actual Fraudulent Intent................26

III.    THE TRUSTEE'S COMPLAINT ADEQUATELY PLEADS THAT
        MERITZ RECEIVED BLMIS CUSTOMER PROPERTY ................................29

        A.      Meritz Misstates the Trustee's Pleading Burden ......................................30

        B.      Meritz's Arguments Regarding "Plausibility" Must Be Rejected ............32

IV.     THE TRUSTEE SUFFICIENTLY PLEADS THE AVOIDABILITY OF
        THE SENTRY TRANSFERS................................................................................35

        A.      The Incorporated Material Complies with Fed. R. Civ. P. 10 and 8 .........35

        B.      The Court Can Take Judicial Notice of the *Fairfield Inv. Fund*
                Decision ....................................................................................................38

CONCLUSION.....................................................................................................................39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
    599 B.R. 730 (Bankr. S.D.N.Y. 2019) ..............................................................30, 31

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
    98 F.3d 25 (2d Cir. 1996)..................................................................................................7

*Al Rushaid v. Pictet & Cie*,
    28 N.Y.3d 316 (2016) ....................................................................................................16

*Am. Casein Co. v. Geiger (In re Geiger)*,
    446 B.R. 670 (Bankr. E.D. Pa. 2010) ......................................................................35, 39

*Armstrong v. Collins*,
    No. 01-cv-2437 (PAC), 2010 WL 1141158 (S.D.N.Y. Mar. 24, 2010) ..................28

*Asahi Metal Industry Co., Ltd. v. Superior Court of California*,
    480 U.S. 102 (1987)........................................................................................................11

*Ayyash v. Bank Al-Madina*,
    No. 04 Civ. 9201(GEL), 2006 WL 587342 (S.D.N.Y. Mar. 9, 2006) ....................20

*In re Bayou Grp., LLC*,
    439 B.R. 284 (S.D.N.Y. 2010)......................................................................................28

*Bear Stearns Secs. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*,
    397 B.R. 1 (S.D.N.Y. 2007)......................................................................................27, 28

*In re Bernard L. Madoff Inv. Secs. LLC (Picard v. Ida Fishman Recoverable Trust)*,
    773 F.3d 411 (2d Cir. 2014)..........................................................................................22

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)..................................................................................6, 7, 13, 19

*Burlington Indus., Inc. v. Salem Int'l Co.*,
    645 F. Supp. 872 (S.D.N.Y. 1986) ..............................................................................12

*Chase Manhattan Bank v. Banque Generale Du Com.*,
    No. 96-cv-5184 (KMW), 1997 WL 266968 (S.D.N.Y. May 20, 1997) ................13

*Chloé v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010)..............................................................................6, 7, 19

*CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*,
393 B.R. 306 (Bankr. W.D.N.Y. 2008) ...............................................................33

*Cohen v. UBS Fin. Servs., Inc.*,
No. 12-CV-02147 (LGS), 2014 WL 240324 (S.D.N.Y. Jan. 22, 2014), *aff'd*,
799 F.3d 174 (2d Cir. 2015) ...............................................................................27

*Cromer Fin. Ltd. v. Berger*,
137 F. Supp. 2d 452 (S.D.N.Y. 2001) ...................................................................6

*Dandong v. Pinnacle Performance Ltd.*,
966 F. Supp. 2d 374 (S.D.N.Y. 2013) .................................................................15

*Davis v. Bifani*,
No. 07-cv-00122-MEH-BNB, 2007 WL 1216518 (D. Colo. Apr. 24, 2007).........37

*DeMasi v. Benefico*,
567 F. Supp. 2d 449 (S.D.N.Y. 2008) .................................................................38

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
722 F.3d 81 (2d Cir. 2013) ...................................................................................5

*Drenis v. Haligiannis*,
452 F. Supp. 2d 418 (S.D.N.Y. 2006) .................................................................28

*Eldesouky v. Aziz*,
No. 11–CV–6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014) ..............15

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
397 F. Supp. 3d 323 (S.D.N.Y. 2019)..............................................................8, 16

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
No. 10-13164, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018)....................14

*Ferrari v. Cnty. of Suffolk*,
790 F. Supp. 2d 34 (E.D.N.Y. 2011) ...................................................................38

*Finn v. Alliance Bank*,
860 N.W.2d 638 (Minn. 2015)............................................................................28

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
141 S. Ct. 1017 (2021) ...............................................................11, 13, 17, 18

*Fowler v. Caliber Home Loans, Inc.*,
277 F. Supp. 3d 1324 (S.D. Fla. 2016), *aff'd sub nom.*
*Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314 (11th Cir. 2018)..........34

iv

*Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*,
  Adv. Pro. No. 10-03493 (SMB), 2014 WL 47774
  (Bankr. S.D.N.Y. Jan. 3, 2014) ................................................................33

*Gowan v. The Patriot Grp., LLC (In re Dreier LLP)*,
  452 B.R. 391 (Bankr. S.D.N.Y. 2011) ....................................................28

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
  425 F.3d 158 (2d Cir. 2005)......................................................................7

*Gredd v. Bear, Sterns Sec. Corp. ( In re Manhattan Inv. Fund Ltd.)*,
  310 B.R. 500 (Bankr. S.D.N.Y. 2002)....................................................28

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984)................................................................................10

*Helms v. Metro. Life Ins. Co. (In re O'Malley)*,
  601 B.R. 629 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021)...........................33

*Hill v. HSBC Bank plc*,
  207 F. Supp. 3d 333 (S.D.N.Y. 2016)....................................................18

*Hinton v. Trans Union, LLC*,
  654 F. Supp. 2d 440 (E.D. Va. 2009) ...............................................38, 39

*HSH Nordbank AG N.Y. Branch v. Street*,
  No. 11 Civ. 9405(DLC), 2012 WL 2921875 (S.D.N.Y. July 18, 2012)...........................15, 17

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945).........................................................................6, 7, 17

*Johnson v. Holder*,
  564 F.3d 95 (2d Cir. 2009).....................................................................27

*Kelley v. Safe Harbor Managed Acct. 101, Ltd.*,
  31 F.4th 1058 (8th Cir. 2022) ...........................................................23, 26

*Kelley v. Westford Special Situations Master Fund, L.P.*,
  No. 19-cv-1073, 2020 WL 3077151 (D. Minn. June 10, 2020) ........................................32, 34

*Kiobel v. Royal Dutch Petroleum Co.*,
  No. 02 Civ. 7618 (KMW)(HBP), 2009 WL 3817590
  (S.D.N.Y. Nov. 16, 2009) .......................................................................20

*Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*,
  No. 07-MD-1902 (JSR), 2013 WL 12191844 (S.D.N.Y. Mar. 25, 2013)...............................14

*Licci v. Lebanese Canadian Bank, SAL*,
   20 N.Y.3d 327 (2012) ................................................................15, 16

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   732 F.3d 161 (2d Cir. 2013).................................................................16

*Lowden v. William M. Mercer, Inc.*,
   903 F. Supp. 212 (D. Mass. 1995) .......................................................37

*Lustig v. Weisz & Associates, Inc. (In re Unified Commercial Capital, Inc.)*,
   260 B.R. 343 (Bankr. W.D.N.Y. 2001) ...............................................28

*Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC*,
   843 F. Supp. 2d 191 (D. Mass. 2012) .................................................36

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996)...................................................................7

*Motors Liquidation Co. Avoidance Action Trust v. JPMorgan Chase Bank, N.A.
(In re Motors Liquidation Co.)*,
   565 B.R. 275 (Bankr. S.D.N.Y. 2017) .........................................13, 16

*Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*,
   No. 13 CIV. 6705 (DLC), 2014 WL 1673351 (S.D.N.Y. Apr. 28, 2014) ..............................37

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
   No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010)...................37

*Off. Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic Bank*,
   549 B.R. 56 (S.D.N.Y. 2016).........................................................16, 17

*Pelt v. Utah*,
   539 F.3d 1271 (10th Cir. 2008) ..........................................................14

*Picard v. BNP Paribas S.A. (In re BLMIS)*,
   594 B.R. 167 (Bankr. S.D.N.Y. 2018)......................................... *passim*

*Picard v. Bureau of Labor Insurance (In re BLMIS)*,
   480 B.R. 501 (Bankr. S.D.N.Y. 2012) ....................................... *passim*

*Picard v. Charles Ellerin Revocable Tr. (In re BLMIS)*,
   Adv. Pro. Nos. 10-04398 (BRL), 10-05219 (BRL), 2012 WL 892514
   (Bankr. S.D.N.Y. Mar. 14, 2012.).............................................29, 30, 34

*Picard. v. Citibank, N.A. (In re BLMIS)*,
   12 F.4th 171 (2d. Cir. 2021) .....................................................4, 27, 38

*Picard v. Cohen*,
   Adv. Pro. No. 10-04311, 2016 WL 1695296 (Bankr. S.D.N.Y. Apr. 25, 2016) ....................22

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   454 B.R. 317 (Bankr. S.D.N.Y. 2011) ...................................................................................31

*Picard v. Est. of Seymour Epstein (In re BLMIS)*,
   No. 2l-cv-02334 (CM), 2022 WL 493734 (S.D.N.Y. Feb. 17, 2022) ........................25, 27, 36

*Picard v. The Est. (Succession) of Doris Igoin (In re BLMIS)*,
   525 B.R. 871 (Bankr. S.D.N.Y. 2015) .........................................................................15, 16, 27

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*,
   627 B.R. 546 (Bankr. S.D.N.Y. 2021) ...............................................................................6, 7, 17

*Picard v. Fairfield Investment Fund Ltd. (In re BLMIS)*,
   Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479
   (Bankr. S.D.N.Y. Aug. 6, 2021) ............................................................................... *passim*

*Picard v. Gettinger*,
   976 F.3d 184 (2d Cir. 2020) *cert. denied sub nom. Gettinger v. Picard*,
   141 S. Ct. 2603 (2021) ..........................................................................................................27

*Picard v. JABA Assocs. LP*,
   528 F. Supp. 3d 219 (S.D.N.Y. 2021) ....................................................................................29

*Picard v. JPMorgan Chase & Co. (In re BLMIS)*,
   Adv. Pro. No. 08-99000 (SMB), 2014 WL 5106909
   (Bankr. S.D.N.Y. Oct. 10, 2014) .............................................................................................9

*Picard v. Ken-Wen Fam. Ltd. P'ship*,
   638 B.R. 41 (Bankr. S.D.N.Y. 2022) .....................................................................................27

*Picard v. Lisa Beth Nissenbaum Tr.*,
   No. 20 cv. 3140 (JGK), 2021 WL 1141638 (S.D.N.Y. Mar. 24, 2021),
   *judgment entered*, No. 20 CV 3140 (JGK), 2021 WL 1167939
   (S.D.N.Y. Mar. 25, 2021) ..................................................................................................27, 29

*Picard v. Maxam Absolute Return Fund, L.P.*,
   460 B.R. 106 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012) .................6, 8, 19

*Picard v. Mayer (In re BLMIS)*,
   Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435
   (Bankr. S.D.N.Y. Oct. 27, 2021) .........................................................................................6, 30

*Picard v. Merkin (In re BLMIS)*,
   515 B.R. 117 (Bankr. S.D.N.Y. 2014) ...............................................................29, 30, 31, 33

*Picard v. Merkin (In re BLMIS)*,
　　581 B.R. 370 (Bankr. S.D.N.Y. 2017) ............................................................32, 34

*Picard v. Nelson (In re BLMIS)*,
　　610 B.R. 197 (Bankr. S.D.N.Y. 2019) ............................................................27, 29

*Picard v. Sage Realty*,
　　No. 20-CV-10109 (JFK), 2022 WL 1125643 (S.D.N.Y. Apr. 15, 2022) ..............27

*Picard v. Shapiro*,
　　542 B.R. 100 (Bankr. S.D.N.Y. 2015) ......................................................................32

*In re Picard*,
　　917 F.3d 85 (2d Cir. 2019) ..................................................................8, 19, 23

*Porina v. Marward Shipping Co.*,
　　521 F.3d 122 (2d Cir. 2008) ........................................................................6

*Rothman v. Gregor*,
　　220 F.3d 81 (2d Cir. 2000) ..........................................................................38

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
　　624 F.3d 123 (2d Cir. 2010) ..........................................................................5

*SAS Grp., Inc. v. Worldwide Inventions, Inc.*,
　　245 F. Supp. 2d 543 (S.D.N.Y. 2003) .................................................................12

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
　　531 B.R. 439 (Bankr. S.D.N.Y. 2015) ............................................................21, 22

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Secs.)*,
　　501 B.R. 26 (S.D.N.Y. 2013) .................................................................23, 25, 36

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
　　No. 12-MC-115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ........................... *passim*

*Sharp International Corp. v. State Street Bank & Trust Co.*,
　　403 F.3d 43 (2d Cir. 2005) ......................................................................28, 29

*Sherman v. A.J. Pegno Constr. Corp.*,
　　528 F. Supp. 2d 320 (S.D.N.Y. 2007) ............................................................36, 37

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
　　379 B.R. 5 (Bankr. E.D.N.Y. 2007) ...................................................................31

*SPV Osus Ltd. v. UBS AG*,
　　882 F.3d 333 (2d Cir. 2018) ........................................................................18

*SunEdison Litig. Tr. v. Seller Note, LLC ( In re SunEdison, Inc.)*,
   620 B.R. 505 (Bankr. S.D.N.Y. 2020) ..................................................24

*Sunward Elecs., Inc. v. McDonald*,
   362 F.3d 17 (2d Cir. 2004) ..................................................13

*Taylor v. Sturgell*,
   553 U.S. 880 (2008) ..................................................14

*Toberman v. Copas*,
   800 F. Supp. 1239 (M.D. Pa. 1992) ..................................................39

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
   916 F.3d 143 (2d Cir. 2019) ..................................................6

*United States v. Int'l Longshoremen's Ass'n*,
   518 F. Supp. 2d 422 (E.D.N.Y. 2007) ..................................................37, 39

*Walden v. Fiore*,
   571 U.S. 277 (2014) ..................................................10, 11

*Waldman v. Palestine Liberation Org.*,
   835 F.3d 317 (2d Cir. 2016) ..................................................19

*Whitaker Sec., LLC v. Rosenfeld (In re Rosenfeld)*,
   543 B.R. 60 (Bankr. S.D.N.Y. 2015) ..................................................37

**Statutes**

11 U.S.C. § 546(e) .................................................. *passim*

11 U.S.C. § 548(a) ..................................................38

11 U.S.C. § 548(a)(1) ..................................................35

11 U.S.C. § 548(a)(1)(A) .................................................. *passim*

11 U.S.C. § 550 ..................................................23, 24

11 U.S.C. § 550(a) .................................................. *passim*

11 U.S.C. § 550(a)(2) ..................................................29

11 U.S.C. § 550(d) ..................................................32, 33

**Rules**

Fed. R. Civ. P. 8 ..................................................3, 35, 38

Fed. R. Civ. P. 8(a)(2)..................................................................................................35

Fed. R. Civ. P. 9(b) ...............................................................................................26, 29

Fed. R. Civ. P. 10....................................................................................................3, 35

Fed. R. Civ. P. 10(c) ............................................................................................35, 36

Fed. R. Civ. P. 12(b)(2)................................................................................................1

Fed. R. Civ. P. 12(b)(6)..........................................................................................1, 34

**Other Authorities**

5A Alan Wright & Arthur R. Miller, Federal Practice & Procedure 3d § 1326
   (4the ed. 2008) ....................................................................................................37

Plaintiff Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), and the substantively consolidated chapter 7 estate of Bernard L. Madoff ("Madoff"), by and through the Trustee's undersigned counsel, respectfully submits this memorandum of law and the supporting declaration of Eric R. Fish ("Fish Decl.") in opposition to Defendant Meritz Fire & Marine Insurance Co., Ltd.'s ("Meritz") motion to dismiss the Complaint ("Motion" or Mot.").

## PRELIMINARY STATEMENT

This adversary proceeding is part of the Trustee's continuing efforts in this SIPA liquidation proceeding to recover BLMIS customer property that was stolen as part of Madoff's Ponzi scheme. In an effort to evade this Court's jurisdiction, Meritz argues that all of the transfers at issue occurred entirely outside of the United States. This characterization distorts the facts. The reality is that this action seeks to recover over $21 million in subsequent transfers of stolen BLMIS customer property that Meritz received from New York-centric Fairfield Sentry Limited ("Sentry"), the largest of the BLMIS feeder funds. Indeed, the purpose of Meritz's investment was to place funds with BLMIS in New York. Meritz nevertheless moves to dismiss the Trustee's Complaint on the grounds that this Court does not have jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Meritz also moves to dismiss the Trustee's Complaint pursuant to Rule 12(b)(6) on the grounds that: (i) the safe harbor under Section 546(e) bars recovery; (ii) the Complaint fails to plead that Meritz received any transfers of customer property; and (iii) the Complaint does not adequately allege the avoidability of the initial transfers. Meritz's arguments under both Rule 12(b)(2) and 12(b)(6) are without merit.

*First,* this Court has personal jurisdiction over Meritz because Meritz's contacts are the type that establish and support the exercise of personal jurisdiction in this Circuit. Specifically,

1

Meritz acknowledged that it received and reviewed Sentry's Private Placement Memorandum ("PPM"), which made clear that Sentry was a New York-centric fund invested in U.S. equities with BLMIS. Meritz also contemplated the jurisdiction of the New York courts in executing a subscription agreement with Sentry that contained forum selection and choice of law provisions. Meritz's ties to the forum are all the more obvious when considering Meritz representatives visited the feeder fund's manager, Fairfield Greenwich Group ("FGG"), at their offices in New York and communicated directly with FGG.

*Second*, Section 546(e)'s safe harbor is no bar to recovery because the Trustee has plausibly alleged avoidability of the initial transfers based on Sentry's actual knowledge of fraud. In addition, at least half of the subsequent transfers at issue indisputably consist of two-year transfers that are not subject to Section 546(e) regardless of Sentry's knowledge. Meritz nevertheless argues that (1) its own lack of knowledge as a subsequent transferee is determinative and (2) the Trustee has not sufficiently alleged intent to defraud under Section 548(a)(1)(A), which Meritz argues is the sole exception to the Section 546(e) safe harbor. But the plain language of Section 546(e), applicable precedent, and law of the case in this SIPA liquidation proceeding make the safe harbor inapplicable to Meritz. The Trustee has sufficiently pleaded both the avoidability of the initial transfers *and* actual knowledge of the initial transferee.

*Third*, the Trustee plausibly alleges that Meritz received customer property under Section 550(a) by outlining the relevant pathways through which customer property was transferred from BLMIS to Sentry and subsequently to Meritz. Meritz challenges the nature of the transfers by questioning whether they consisted of customer property. In doing so, Meritz cherry-picks one transfer to argue a failure to link the monies to BLMIS and proffers an "alternate explanation" for the source of redemption payments. Meritz also applies some unknown and undisclosed tracing

2

methodology and/or methodologies of its choosing—which is inappropriate at this stage of the litigation and contrary to established law.

*Finally*, the Complaint adequately alleges the avoidability of the initial transfers. Meritz asserts that the Trustee violates Rules 8 and 10 by incorporating by reference his complaint against Sentry (the "Fairfield Amended Complaint"),[1] but this argument conflicts with precedent from the District Court and the purpose of the rules. Moreover, this Court may take judicial notice of the operative complaint—the Fairfield SAC—and its opinion in *Picard v. Fairfield Investment Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*"), in which this Court held that the Trustee plausibly alleged the avoidability of the initial transfers.

Having failed to raise a sufficient challenge to the Trustee's Complaint, Meritz's Motion must be denied.

## STATEMENT OF FACTS

### I.    THE BLMIS PONZI SCHEME

Madoff founded and operated BLMIS in New York until its collapse in 2008. *See* Compl. ¶ 30, ECF No. 1. BLMIS had three principal business units: (i) a proprietary trading business; (ii) a market-making business; and (iii) an investment advisory business (the "IA Business"). *Id.* ¶ 22. For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy, which involved (a) investing in a basket of common stocks from the Standard & Poor's 100 Index; (b) buying put options and selling call options to hedge against price changes in the underlying basket of stocks; and (c) purchasing U.S. treasury bills when the money was out of the market. *Id.*

---

[1] As Meritz acknowledges, after the filing of his Complaint against Meritz, the Trustee filed a Second Amended Complaint ("Fairfield SAC") in the initial transfer action. *See* Fairfield SAC, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286; Decl. of Michael T. Driscoll, Ex. 2.

¶¶ 23–24.  In reality, BLMIS operated a Ponzi scheme through its IA Business.  *Id.* ¶ 25.  On December 11, 2008, Madoff's fraud was publicly revealed and he was arrested for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud.  *Id.* ¶ 10.

The extent of damage Madoff caused was made possible by BLMIS "feeder funds"—large investment funds created for the express purpose of funneling investors' funds into BLMIS.  *See Picard. v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 179 (2d. Cir. 2021).  Meritz invested in one of these feeder funds, Sentry, a fund operated by FGG in New York that invested more than 95% of its assets with BLMIS.  *See* Compl. ¶¶ 2, 6.

## II.    THE INITIAL TRANSFEREE ACTION AND SETTLEMENT

Following BLMIS's collapse and the commencement of the SIPA liquidation proceeding, the Trustee filed an adversary proceeding against Sentry and related defendants to avoid and recover fraudulent transfers of stolen customer property in the amount of approximately $3 billion.  *Id.* ¶ 34.  In 2011, the Trustee settled with Sentry and others.  *Id.* ¶ 39.  As part of the settlement, Sentry consented to a judgment in the amount of $3.054 billion but repaid only $70 million to the BLMIS estate.  *Id.*  The Trustee then commenced a number of adversary proceedings against defendants like Meritz to recover the approximately $3 billion in missing customer property.

## III.    MERITZ AND ITS INVESTMENTS IN SENTRY

Meritz, a public limited company based in South Korea, invested substantial sums with Sentry, which, in turn, invested nearly all its funds with BLMIS.  *Id.* ¶¶ 2, 21.  Prior to BLMIS's collapse, Meritz received two transfers from Sentry in August and September 2007 totaling more than $21 million.  *Id.* ¶¶ 2, 40, Ex. C.  For both transfers, the Complaint sets forth the subsequent transferor (Sentry), the subsequent transferee (Meritz), the date of the subsequent transfer, and the amount of the subsequent transfer.  *Id.*, Ex. C.

Investors in Sentry, including Meritz, were required to execute subscription agreements in which the investors acknowledged that they had "such knowledge and experience in financial and business matters that [they were] capable of evaluating the risks of this investment." *See* Fish Decl., Ex. A ¶ 8.  The subscription agreements also incorporated Sentry's PPMs; and by signing, investors warranted that they "received and read a copy of the [PPMs]." *Id.* ¶ 7.  The PPM disclosed BLMIS's central role in the investment, as well as multiple references to the United States and New York.  *See* Fish Decl., Ex. B (attaching May 8, 2006 PPM, the last known PPM dated before Meritz signed its subscription agreement).  And as Meritz itself acknowledges, the subscription agreement contained a New York choice of law provision and forum selection clause consenting to the jurisdiction of the New York courts.  Mot. at 29; Fish Decl., Ex. A ¶¶ 16, 19; Compl. ¶ 6.  Meritz also agreed to send its subscription payments to Sentry's HSBC bank account in New York (the "HSBC NY Account") and used an account at Bank of America in New York (the "Bank of America NY Account") related to its investment.  Fish Decl., Ex. A ¶ 3, Exs. C–E; Compl. ¶ 6.  In addition, Meritz communicated with FGG in New York and even visited the FGG New York offices in connection with its investment.  Fish Decl., Exs. F–H.

## ARGUMENT

## I.    THIS COURT HAS PERSONAL JURISDICTION OVER MERITZ

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only show a *prima facie* case that personal jurisdiction exists.  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013).  A *prima facie* showing of jurisdiction "may be established solely by allegations."  *Id.* at 84–85 ("Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction.").  A plaintiff also may establish a *prima facie* case of jurisdiction through affidavits and supporting materials that contain averments of facts outside the pleadings. *See S. New England*

*Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010); *Picard v. Mayer (In re BLMIS)*, Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435, at *3 (Bankr. S.D.N.Y. Oct. 27, 2021). These pleadings and affidavits are to be construed "in the light most favorable to the plaintiffs, resolving all doubts in their favor." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)).

Depending on the nature of a defendant's contacts with the forum, a court may exercise general or specific jurisdiction. *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 473 (S.D.N.Y. 2001). Relevant here, specific jurisdiction exists where the defendant purposely directs its activities into the forum and the underlying cause of action arises out of or relates to those activities. *See Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021).

The specific jurisdiction analysis is a two-step inquiry. First, the court assesses whether the defendant established "minimum contacts" in the forum, such that the defendant purposely availed itself of the privilege of conducting activities with the forum. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76 (1985). The defendant's activities need not have taken place within the forum, "and a single transaction with the forum will suffice." *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012). Moreover, minimum contacts may be found when a "defendant's allegedly culpable conduct involves at least in part financial transactions that touch the forum." *In re Fairfield Sentry Ltd.*, 627 B.R. at 566 (quoting *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 151 (2d Cir. 2019)).

In determining whether a defendant's contacts establish personal jurisdiction, the court must look at the "totality of the circumstances" rather than analyze each contact in isolation. *See*

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996); *see also Chloé*, 616 F.3d at 164 (analyzing totality of defendants' contacts to determine jurisdiction under New York's long-arm statute and Due Process Clause); *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005) ("No single event or contact connecting defendant to the forum state need be demonstrated; rather, the *totality of all defendant's contacts* with the forum state must indicate that the exercise of jurisdiction would be proper." (citation omitted)).

Second, the court conducts a "reasonableness" inquiry to determine that its exercise of jurisdiction will not offend traditional notions of "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 320. To determine whether jurisdiction is reasonable, courts consider the following:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996). Where the plaintiff has alleged purposeful availment, however, the burden shifts to the defendant to present a "compelling case" that jurisdiction would be unreasonable. *In re Fairfield Sentry Ltd.*, 627 B.R. at 567 (citing *Burger King*, 471 U.S. at 472–73).

### A.    Meritz Purposefully Availed Itself of the Laws and Privileges of Conducting Business in New York by Investing in Sentry

Meritz had numerous and substantive contacts with New York that establish this Court's jurisdiction. Meritz: (1) invested in Sentry, with the knowledge and intention that those funds would be invested, managed, and custodied by BLMIS in New York; (2) met with FGG personnel in New York regarding its Sentry investments; (3) had direct connections with New York through its Sentry subscription agreement; and (4) used New York banks to deposit funds with and receive funds from Sentry. Several of these contacts are sufficient in and of themselves to support

jurisdiction.  The contacts in their totality establish that Meritz purposefully directed its activities

to the United States and New York specifically.  *See Esso Expl. & Prod. Nigeria Ltd. v. Nigerian*

*Nat'l Petroleum Corp.*, 397 F. Supp. 3d 323, 344 (S.D.N.Y. 2019) ("When all [defendant]'s

Agreement-related contacts are considered together, it is clear [the defendant] purposely availed

itself of the forum.").

> **1.    Meritz's Investments in BLMIS through Sentry Establish Minimum Contacts**

Meritz's intentional investment with BLMIS in New York through Sentry establishes

personal jurisdiction.  Regardless of its other contacts supporting jurisdiction, Meritz's deliberate

targeting of New York-based BLMIS and the U.S. securities market—through an entity expressly

constituted for that purpose—is dispositive.

As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose

to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities,

they knew where their money was going."  *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019); *see also*

*Maxam*, 460 B.R. at 116–20 (finding jurisdiction where defendant knew and intended that funds

invested with BLMIS feeder fund would be sent to BLMIS in New York for investment).  Indeed,

by executing the subscription agreement and affirming that it received and read Sentry's PPM,

Meritz knew that: (i) Sentry invested at least 95% of its assets with BLMIS; (ii) BLMIS performed

all investment management duties for these assets; (iii) BLMIS was registered with the U.S.

Securities and Exchange Commission; (iv) BLMIS was the executing broker for Sentry's

investments, and purportedly operated and executed the SSC Strategy on the fund's behalf; (v)

BLMIS's SSC Strategy purportedly involved the purchase of U.S. equities, U.S. options, and U.S.

treasury bills; (vi) the decisions regarding which U.S. securities to purportedly purchase, and when

to make such purchases, were made by BLMIS in New York; (vii) BLMIS was the custodian of

Sentry's investments with BLMIS; and (viii) BLMIS was "essential to the continued operation of" Sentry.  Fish Decl. Ex. B.

a.     ***BLI* Establishes Jurisdiction Over Meritz**

Based on the demonstrated intention to invest with BLMIS in New York through Sentry, this Court already has concluded that investors like Meritz are subject to personal jurisdiction in *Picard v. Bureau of Labor Insurance (In re BLMIS)*, 480 B.R. 501, 516–18 (Bankr. S.D.N.Y. 2012) (Lifland, J.) ("*BLI*").  There, as here, the Trustee's suit was "based upon [the subsequent transferee's] investment of tens of millions of dollars in Sentry with the specific goal of having funds invested in BLMIS in New York, with intent to profit therefrom." *Id.* at 506.  There, as here, the subsequent transferee was provided with a substantially identical PPM and executed a substantially identical subscription agreement establishing the investment's BLMIS-centric purpose. *Id.* at 507–08.  And there, as here, the subsequent transferee argued that the foreseeability of its investment ending up in a BLMIS account was insufficient to support personal jurisdiction. *Id.* at 516 n.14.  The Court rejected this argument and called it "disingenuous," explaining:

> BLI's investments in Fairfield Sentry did not merely "end up" in an account at BLMIS as a result of happenstance or coincidence. Rather, BLI purposefully availed itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market.

*Id.* at 517; *see also Picard v. JPMorgan Chase & Co. (In re BLMIS)*, Adv. Pro. No. 08-99000 (SMB), 2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014) (noting courts in this liquidation have already "confirmed that defendants who invested directly or indirectly with BLMIS and received payments from BLMIS as initial transferees or as subsequent transferees of those initial transferees were subject to the Court's personal jurisdiction").  As framed by this Court, "BLI

9

intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money

orchard in the United States and reap the benefits therefrom." *BLI*, 480 B.R. at 506.

Because Meritz is identically situated to the defendant in *BLI* with respect to the

fundamental purpose of its investment, *BLI* is controlling and resolves Meritz's personal

jurisdiction defense without the need for inquiry into its additional New York contacts.

### b.    *Walden* Does Not Save Meritz from this Court's Jurisdiction

Meritz ignores the obvious weight of *BLI* and instead relies on *Walden v. Fiore*, 571 U.S.

277 (2014), to frame the jurisdictional analysis through a false lens of "foreseeability."  However,

the facts and applicable law of *Walden* are significantly different from those here.  The defendant

in *Walden*, a Georgia police officer, had no purposeful contacts with the forum state of Nevada.

*Id.* at 288–89.  The officer had "never traveled to, conducted activities within, contacted anyone

in, or sent anything or anyone to Nevada," nor was the officer's seizure of funds predicated in any

way on the fact that their intended destination was Nevada.  *Id.* at 289.  The Court of Appeals

applied the "effects" test applicable in intentional tort cases and found jurisdiction because the

officer had seized money in Georgia from a Nevada resident and therefore the seizure would have

some foreseeable effect in Nevada.  *Id.* at 290–91.  The Supreme Court disagreed, finding that the

defendant had "formed no jurisdictionally relevant contacts with Nevada" and that he could not be

sued in Nevada for an unlawful seizure of money in Georgia merely because he knew the plaintiff

resided in Nevada.  *Id.* at 289–91.  This is simply a reaffirmation of the well-established principle

that personal jurisdiction cannot be premised solely on a plaintiff's unilateral contacts with the

forum state.  *Id.* at 284 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408,

417 (1984)).

This case is nothing like *Walden*.  As a preliminary matter, the Trustee's allegations

implicate the Supreme Court's "purposeful availment" framework (not the "effects" test), a

concept that the Court in *Walden* did not reference, let alone apply.  Nor is the police officer's lack

of "any jurisdictionally relevant contacts with Nevada" analogous to Meritz intentionally directing

investments to a New York investment manager, broker dealer, and custodian through a feeder

fund formed for this express purpose.  *Id.* at 289–91.  Quoting from *Asahi Metal Industry Co., Ltd.*

*v. Superior Court of California*, Meritz argues "[t]he 'substantial connection' . . . between the

defendant and the forum State necessary for a finding of minimum contacts must come about by

an action of the defendant purposefully directed toward the forum State."  Mot. at 28 (quoting 480

U.S. 102, 112 (1987) (citations omitted)).  Yet, this is exactly what Meritz did when it sent millions

of dollars to Sentry with BLMIS as the ultimate intended recipient.  Meritz's effort to downplay

its investment's New York destination as merely a "foreseeable" consequence rather than a

purposeful targeting of the forum is the same "disingenuous" argument this Court rejected in *BLI*.

Meritz also misinterprets *Walden* to the extent it argues, in effect, that its connections to

the forum must be viewed in a vacuum as opposed to being based on its relationships with BLMIS

and Sentry.  *See* Mot. at 28–29.  *Walden* recognized that "a defendant's contacts with the forum

State may be intertwined with his transactions or interactions with the plaintiff or other parties."

*Walden*, 571 U.S. at 286; *see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017,

1031–32 (2021) (rejecting defendant's contention that *Walden* "shows that a plaintiff's residence

and place of injury can never support jurisdiction" and explaining that "[t]hose places still may be

relevant in assessing the link between the defendant's forum contacts and the plaintiff's suit").

This Court should reaffirm *BLI* and hold that Meritz's purposeful targeting of New York

by investing with BLMIS through Sentry establishes personal jurisdiction over Meritz.

### 2.    Meritz's Contacts with FGG Establish Minimum Contacts

Meritz directed activity into the forum through its contacts with FGG in New York.

Records reflect that at least one Meritz manager in its Investment Department traveled to New

York in November 2006 to meet with FGG to discuss Meritz's investment in Sentry. Fish Decl. Exs. F–G. Despite Meritz's curious and unsupported statement that this meeting "is not the basis for the claim against it," (Mot. at 30), this New York visit itself supports jurisdiction. *See SAS Grp., Inc. v. Worldwide Inventions, Inc.*, 245 F. Supp. 2d 543, 549–50 (S.D.N.Y. 2003) (finding jurisdiction over defendant who traveled to New York for meeting to develop business relationship); *see also Burlington Indus., Inc. v. Salem Int'l Co.*, 645 F. Supp. 872, 874 (S.D.N.Y. 1986) (finding jurisdiction based on two meetings in New York). The Trustee also has documents showing a request for subsequent meetings in New York in July 2007 regarding Meritz's Sentry investments. Fish Decl. Ex. H.

Meritz's subscription agreement with Sentry further evidences a "strong nexus with New York" supporting jurisdiction. *See BLI*, 480 B.R. at 517 n.15. In signing the subscription agreement, Meritz submitted to venue in New York, the jurisdiction of the New York courts, and the application of New York law. Fish Decl. Ex. A ¶¶ 16, 19. Specifically, the subscription agreement was "governed and enforced in accordance with the laws of New York, without giving effect to its conflict of laws provisions." *Id.* ¶ 16. In addition, Meritz: (i) "agree[d] that any suit, action or proceeding . . . with respect to this Agreement and the Fund may be brought in New York," (ii) "irrevocably submit[ted] to the jurisdiction of the New York courts with respect to any [p]roceeding," and (iii) agreed that disputes over the agreement "shall be governed and enforced in accordance with the laws of New York," and that if litigating here, "may not claim that a Proceeding has been brought in an inconvenient forum." *Id.* ¶¶ 16, 19.

Meritz argues that these provisions are irrelevant because the Trustee is not a party to the subscription agreement and the Trustee's claims do not arise under the subscription agreement. *See* Mot. at 29. That argument misses the mark. The Trustee is not arguing this Court has

jurisdiction based on Meritz's consent.  Rather, Meritz's agreement with respect to New York law, New York jurisdiction, and New York venue show that Meritz purposefully directed its activities toward New York and provide another strong jurisdictional contact with New York.

"[A] choice of law provision may constitute a 'significant contact' with the forum state" and "is relevant in determining whether a defendant has purposefully availed itself of a particular forum's laws."  *Chase Manhattan Bank v. Banque Generale Du Com.*, No. 96-cv-5184 (KMW), 1997 WL 266968, at *2 (S.D.N.Y. May 20, 1997); *see also Burger King*, 471 U.S. at 482 (finding jurisdiction where choice of law provision "reinforced [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there"); *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004) ("A choice of law clause is a significant factor in a personal jurisdiction analysis because the parties, by so choosing, invoke the benefits and protections of New York law.").  For example, in *BLI*, the Court, without addressing the issue of whether defendants consented to jurisdiction, found that the clauses in the subscription agreements "further evidenc[e] the strong nexus with New York."  480 B.R. at 517, n.15.  Similarly, in *Motors Liquidation Co. Avoidance Action Trust v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, the court held that even if defendant's agreement to New York forum and choice of law provisions did not constitute consent, the provisions helped establish minimum contacts to support specific jurisdiction.  565 B.R. 275, 288–89 (Bankr. S.D.N.Y. 2017).

The subscription agreement also plainly "relate[s] to" the Trustee's claims and evidences a strong nexus between this case and New York.  *See Ford Motor*, 141 S. Ct. at 1026 (finding that plaintiffs' claims related to defendant's in-state activity and rejecting requirement of a "strict causal relationship between the defendant's in-state activity and the litigation.").  Meritz could not have invested in Sentry without executing the subscription agreement, which was a necessary

13

predicate to Meritz's receipt of stolen customer property through Sentry. The subscription agreement thus sufficiently relates to the Trustee's claims to recover that customer property from Meritz.

Meritz's reliance on *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, No. 10-13164, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield Liquidators*") is misplaced.[2] In that case, the Fairfield liquidators argued that the defendants had consented to personal jurisdiction because they were bound by the New York provisions in the subscription agreements. *Fairfield Liquidators* at *7, 8. As noted above, the Trustee does not argue Meritz consented to the jurisdiction of this Court by virtue of the subscription agreements alone. Rather, the execution of a subscription agreement containing New York choice of law and jurisdiction and forum provisions serves as an important jurisdictional contact with the forum and is persuasive evidence of Meritz's purposeful availment of the laws and privileges of New York.

### 3.    The Use of New York Bank Accounts Establishes Personal Jurisdiction

Meritz's purposeful use of bank accounts in New York further supports jurisdiction. Although Meritz's June 26, 2006 subscription agreement lists Standard Chartered First Bank, Korea Limited in Seoul, Korea for subscriptions and redemptions, the Trustee is in possession of documentation showing that Meritz received its redemptions from Sentry through the Bank of

---

[2] Meritz's argument that the Trustee is in privity with the Fairfield liquidators and is therefore bound by any rulings in the Fairfield liquidation is wrong. *See* Motion at 18, n.11. The Trustee was not a party to the Chapter 15 Fairfield liquidators' action and his interests were not represented. Thus, binding the Trustee would "run[] up against the 'deep-rooted historic tradition that everyone should have his own day in court.'" *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008) (citation omitted). And if *Taylor v. Sturgell* "stands for anything, it is for the need to narrow and regularize the use of preclusion against nonparties." *Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*, No. 07-MD-1902 (JSR), 2013 WL 12191844, at *11 (S.D.N.Y. Mar. 25, 2013). Furthermore, the Trustee cannot be bound by the *Fairfield Liquidators* decision because it raised different issues than the ones litigated in this action. The claims at issue in that action did not involve recovery of subsequent transfers under the Bankruptcy Code but rather specifically dealt with claims under the B.V.I. Insolvency Act. *Fairfield Liquidators* at *2. As the court in *Pelt v. Utah* explained, "a substantive legal relationship as contemplated by the exception is one in which the parties to the first suit are somehow accountable to nonparties who file a subsequent suit raising identical issues." 539 F.3d 1271, 1290 (10th Cir. 2008).

America NY Account.  Fish Decl. Exs. A, D–E.  In addition, Meritz sent and received payments

to and from Sentry's HSBC NY Account.  Fish Decl. Exs. A–C.  Courts have often held that a

defendant's use of a domestic bank account is sufficient to establish personal jurisdiction.[3]  *See,*

*e.g.*, *Eldesouky v. Aziz*, No. 11–CV–6986 (JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19,

2014) (finding jurisdiction under New York long-arm statute based solely on defendant's use of

New York account to receive payment at issue); *HSH Nordbank AG N.Y. Branch v. Street*, No. 11

Civ. 9405(DLC), 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012) (finding jurisdiction under

New York long-arm statute based solely on defendants' use of a New York account to receive

fraudulent conveyances at issue); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374,

382–83 (S.D.N.Y. 2013) (finding jurisdiction in New York based solely on defendant's use of

New York accounts to facilitate alleged fraud).  This Court has also found jurisdiction where initial

and subsequent transferee defendants received transfers from U.S. bank accounts.  *See Picard v.*

*BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) ("*BNP*") (finding

jurisdiction over subsequent transferee defendants that sent subscriptions to, and received

redemptions from, feeder funds' New York bank account); *Picard v. The Est. (Succession) of Doris*

*Igoin (In re BLMIS)*, 525 B.R. 871, 884 (Bankr. S.D.N.Y. 2015) (finding jurisdiction over initial

transferee defendants who received transfers from BLMIS's New York bank account).

    The fact that these U.S. bank accounts may have been correspondent accounts does not

diminish their significance.  In the leading case, *Licci v. Lebanese Canadian Bank, SAL*, the New

York Court of Appeals held that a defendant's use of a correspondent bank account in New York

---

[3] Certain cases discussed herein address jurisdiction under New York's long-arm statute.  Due to the close overlap between the requirements of due process and the New York long-arm statute, courts engaging in a due process analysis frequently cite long-arm cases.  *See, e.g.*, *HSH Nordbank AG N.Y. Branch v. Street*, No. 11 Civ. 9405(DLC), 2012 WL 2921875, at *4 n.3 (S.D.N.Y. July 18, 2012) (noting "the personal jurisdiction analysis under § 302(a)(1) and the Due Process Clause is in most instances essentially coterminous" (citations omitted)).

supports a finding of jurisdiction "even if no other contacts between the defendant and New York can be established," provided that such use was "purposeful." 20 N.Y.3d 327, 338 (2012) (internal quotation marks and citation omitted); *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 165, 171 (2d Cir. 2013) (finding jurisdiction over defendant with "no operations, branches, or employees in the United States" based on repeated use of New York's banking system); *Off. Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic Bank,* 549 B.R. 56, 67–69 (S.D.N.Y. 2016) (finding jurisdiction based on designation and use of New York correspondent accounts to receive transfers); *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 322–29 (2016) (same). What matters is that the use was "purposeful," and not coincidental or passive. *See Licci*, 20 N.Y.3d at 338–39; *Al Rushaid*, 28 N.Y.3d at 328.

Similarly, it does not matter that the HSBC NY Account was Sentry's account or whether the Bank of America NY account was Meritz's or its bank's because Meritz agreed to use them. *See Esso*, 397 F. Supp. 3d at 346 ("[T]he point is not whether [defendant] owns the accounts, it is that they made purposeful use of them for reasons related to the underlying dispute."); *Arcapita*, 549 B.R. at 70 & n.18 ("Because [defendant] directed the wire transfers to a specifically designated New York account for its own advantage, the receipt of the funds in New York is a 'contact' properly attributed to [defendant]."). That Sentry's subscription agreements required subscribers use the HSBC NY Account is also irrelevant, because Meritz voluntarily entered into that agreement. Fish Decl. Ex. A. Meritz could have chosen not to invest in Sentry, but by investing, Meritz agreed to use Sentry's HSBC NY Account for its subscriptions into, and redemptions from, the fund. Each transaction was thus a volitional act that supports jurisdiction.[4] *See In re Motors*

---

[4] It makes no difference if a Citco entity chose to use the U.S. correspondent account on behalf of Sentry, as various Citco entities acted as FGG's agents. *See Igoin*, 525 B.R. at 884 ("Whether [defendant] dealt with BLMIS directly or her mother or another acted on her behalf makes no difference because the conduct of her agents is attributed to her for purposes of the jurisdictional analysis.").

*Liquidation Co.*, 565 B.R. at 288–89 (finding defendant's use of a correspondent account to be purposeful even where payment in New York was dictated by agreement).

Meritz's purposeful use of the HSBC NY Account and the Bank of America NY Account supports jurisdiction because the Trustee's claims "arise out of or relate to" Meritz's use of the accounts.  As the Supreme Court recently held, this prong does not require a causal relationship. *See Ford Motor*, 141 S. Ct. at 1026–30.  Rather, this prong may be satisfied if a defendant's conduct involves "financial transactions that touch the forum."  *In re Fairfield Sentry Ltd.*, 627 B.R. at 566; *see also Arcapita*, 549 B.R. at 68–71 (requiring only that the claim is not completely "unmoored" from the transaction).  Because the Trustee's claims relate to the very transfers that came through the accounts, Meritz's use of these accounts supports jurisdiction.  *See, e.g.*, *HSH Nordbank*, 2012 WL 2921875, at *4 (finding "claims against [defendants] arise directly out of the transfer of funds into [defendant's] New York accounts").

#### 4.    Meritz's Other Arguments Against Jurisdiction Are Not Persuasive

Meritz also argues that the Trustee must allege that "each individual transfer [he] seeks to recover" was received in New York or the U.S. for this Court to have jurisdiction.  Mot. at 26 (citing *BNP*, 594 B.R. at 190).  But Meritz misconstrues the requirements for personal jurisdiction and this Court's decision in *BNP*.  Courts have personal jurisdiction over defendants, not transfers. *See, e.g.*, *Int'l Shoe*, 326 U.S. at 316.  Likewise, courts must assess the defendant's contacts with the forum, not the transfer's.  *BNP*, 594 B.R. at 189 ("The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation.").  Provided that the court finds that Meritz's minimum contacts with the forum support specific jurisdiction, the court may adjudicate any claims sufficiently related to those contacts. *See Ford Motor*, 141 S. Ct. at 1026–28, 1032.  This is exactly what this Court did in *BNP*.  The Court did not look at each transfer separately; the Court assessed

each defendant, focused on the overall relationship with the initial transferees, and determined it

had jurisdiction.  *See BNP*, 594 B.R. at 191.  In any event, there is no factual difference between

the transfers here that would affect the analysis.

Equally unavailing is Meritz's reliance on two cases asserting common law claims brought

against fund service providers.  *See* Mot. at 30 (citing *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333 (2d

Cir. 2018); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016)).  This Court already has

determined that this line of cases is not relevant to the Trustee's actions against defendants like

Meritz who invested in BLMIS feeder funds.  *See BNP*, 594 B.R. at 192 ("*Hill* has no bearing on

the issue of personal jurisdiction arising from the Defendants' redemptions as investors in the

Tremont Funds which arose from their New York contacts with the Tremont Fund.").  This is not

a dispute between two parties stemming from services owed under a foreign contract, like the

breach of fiduciary duty and other claims in *SPV*[5] and *Hill*.  Rather, this is a fraudulent transfer

recovery action brought by a SIPA Trustee in which the transfers of funds between the banks

fulfilled the very purpose of Meritz's subscription agreement and evidenced an intent to direct

activity towards the U.S. securities markets.  *See BLI*, 480 B.R. at 513  ("This movement of money

to and from BLMIS in the United States, as contemplated by the Agreements, was not fortuitous

or incidental; instead, it was 'the ultimate objective' and the '*raison d'etre*' of the Agreement

between BLI and Fairfield Sentry.").

This Court also should reject Meritz's claim that the transfers at issue "occurred entirely

outside of the United States" and were "purely foreign."  *See* Mot. at 26–28.  Meritz bases this

claim on arguments made by the Fairfield liquidators in a different case that turns on whether the

---

[5] Meritz's reliance on *SPV*, which found no jurisdiction because defendants' contacts did not cause the injury, is
suspect following the Supreme Court's decision in *Ford Motor*, which held that causation is not a prerequisite for
jurisdiction. 141 S. Ct. at 1026–30.

18

Section 546(e) safe harbor applies to claims brought under B.V.I. law by foreign liquidators in a

chapter 15 proceeding—an issue plainly not relevant in this SIPA liquidation proceeding.  In this

case, by contrast, the Second Circuit has already found, "These transfers are domestic activity."

*In re Picard*, 917 F.3d at 100 ("When a domestic debtor commits fraud by transferring property

from a U.S. bank account, the conduct that § 550(a) regulates takes place in the United States.").

### B.      The Exercise of Personal Jurisdiction Is Reasonable

Meritz fails to present a compelling reason why jurisdiction would be unreasonable.  This

is because jurisdiction is indeed reasonable here.  "The reasonableness inquiry requires the court

to determine whether the assertion of personal jurisdiction . . . comports with 'traditional notions

of fair play and substantial justice' under the circumstances of the particular case."  *Waldman v.*

*Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (citations omitted).  Where a plaintiff

has made a threshold showing of minimum contacts, a defendant must present a "compelling case

that the presence of some other considerations would render jurisdiction unreasonable."  *Chloé*,

616 F.3d at 165 (quoting *Burger King*, 471 U.S. at 477).  This Court has found "it would be a

'rare' case where the defendant's minimum contacts with the forum support the exercise of

personal jurisdiction but it is unreasonable to force the defendant to defend the action in that

forum."  *BNP*, 594 B.R. at 188.

This is not that "rare" case.  The burden on Meritz is minimal.  *See Maxam*, 460 B.R. at

119 (finding New York counsel and conveniences of modern communication and transportation

minimize any burden).  The United States also has a strong interest in applying U.S. law in this

SIPA liquidation proceeding.  *See id.; see also In re Picard*, 917 F.3d at 103 (noting "compelling

interest in allowing domestic estates to recover fraudulently transferred property").  And the

Trustee has a strong interest in litigating in the United States.  *See Maxam*, 460 B.R. at 119.

19

### C.    At Minimum, the Trustee Is Entitled to Jurisdictional Discovery

If this Court finds that the Trustee has not made a *prima facie* showing of jurisdiction, the

Trustee respectfully requests jurisdictional discovery.  "Such discovery may be authorized where

a plaintiff has made a threshold showing that there is some basis for the assertion of jurisdiction."

*Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618 (KMW)(HBP), 2009 WL 3817590, at *4

(S.D.N.Y. Nov. 16, 2009) (internal citation marks and quotation omitted).  The Trustee has shown

how Meritz, *inter alia*, (i) knowingly and purposefully invested with BLMIS through Sentry; (ii)

met with FGG in New York; and (iii) relied upon U.S. bank accounts to receive BLMIS customer

property.  At a minimum, these facts establish a "threshold showing" of jurisdiction sufficient for

discovery.  *Id.* at *6; *see also Ayyash v. Bank Al-Madina*, No. 04 Civ. 9201(GEL), 2006 WL

587342, at *6 (S.D.N.Y. Mar. 9, 2006) (granting discovery because allegations of wire transfers

through United States made a "sufficient start" toward establishing jurisdiction).[6]

## II.    SECTION 546(e) DOES NOT BAR RECOVERY FROM DEFENDANT

Section 546(e) provides a safe harbor for the avoidance of certain initial transfers made

outside the two-year period referenced in Section 548(a)(1)(A).  *See* 11 U.S.C. § 546(e)

("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may

not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title.") (emphasis added).

However, the District Court has held that an initial transferee's actual knowledge of Madoff's

fraud precludes application of the Section 546(e) safe harbor, thereby allowing the Trustee to avoid

---

[6] In addition, the subscription agreement lists an entity called Vantage as its adviser.  *See* Fish Decl., Ex. A ¶ 6. Vantage was listed as an adviser to several Sentry investors and had many communications with Sentry on behalf of its various clients.  The exact nature of Meritz's relationship with Vantage is presently unknown, but to the extent the Court finds the Trustee has not made a *prima facie* showing of personal jurisdiction, the Trustee requests jurisdictional discovery to learn of the nature of these relationships and if Vantage's contacts may be imputed to Meritz.

transfers made prior to the two-year period.  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-MC-115 (JSR), 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*").

At the outset, the Section 546(e) safe harbor could apply, at most, to only one of the two transfers at issue in this matter.[7]  *See* Compl., Exs. B, C.  Meritz nevertheless argues that it had no actual knowledge of Madoff's fraud.   But the Trustee has sufficiently pleaded the initial transferee's actual knowledge.   Meritz tries to sidestep these exceptions to Section 546(e) by seeking to overturn settled law on the applicability of the Ponzi scheme presumption, but there is no doubt that the Trustee has properly pleaded the avoidability of the initial transfers.

### A.    Sentry Had Actual Knowledge of Madoff's Fraud

Meritz sets forth at length the requirements of Section 546(e), including how they are presumably met in this case with respect to the initial transfers to Sentry.  But Meritz's argument fails because this Court has previously held that the Trustee has pleaded Sentry's actual knowledge of fraud.  *Fairfield Inv. Fund*, 2021 WL 3477479, at *4–5.   As such, Section 546(e) does not bar the avoidance of initial transfers made to Sentry, and those transfers may be recovered regardless of whether Sentry or Meritz qualify as financial institutions, their agreements qualify as securities contracts, or their transfers qualify as settlement payments.[8]

Meritz argues that Section 546(e) does not contain a knowledge exception and "reserves the right to argue" that *Cohmad* is wrong.  Mot. at 21, 22 n.14.  *Cohmad* was issued in connection

---

[7] It is not clear the extent to which Section 546(e) applies here at all, as both subsequent transfers were well within the two-year period referenced in Section 548(a)(1)(A).  As addressed below in Section III, any issues of tracing for the initial transfers out of BLMIS are best determined after a motion to dismiss.

[8] Meritz attempts to place itself as an initial transferee in making the misleading argument that the initial transfers from BLMIS to Sentry "were made, according to the Trustee, so that Sentry could fund Meritz's redemption requests." Mot. at 19.  The Complaint makes no such allegation.  Rather, the Complaint plainly alleges that Meritz is a subsequent transferee, and it is settled law that a defendant cannot be both a subsequent transferee and a party for whose benefit an initial transfer is made.  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 474 (Bankr. S.D.N.Y. 2015) (citing cases).

with consolidated proceedings before the District Court and held that a party with actual

knowledge of Madoff's fraud cannot claim the protections of Section 546(e). The District Court

then remanded the relevant cases back to this Court, and this Court has since applied the actual

knowledge exception on several occasions. *See, e.g.*, *Fairfield Inv. Fund*, 2021 WL 3477479, at

\*4. Despite now reserving its right to argue there is no actual knowledge exception, Meritz

participated in the withdrawal of the reference and is bound by *Cohmad*, which is law of the case.[9]

*See, e.g.*, *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 466 (Bankr.

S.D.N.Y. 2015) ("Those moving defendants that participated in the withdrawal of the reference of

the antecedent debt/value issue have had their day in court and Judge Rakoff's decisions are law

of the case."). Meritz also did not seek leave to appeal the *Cohmad* decision, and the Second

Circuit's decision in *In re Bernard L. Madoff Inv. Secs. LLC (Picard v. Ida Fishman Recoverable

Trust)*, 773 F.3d 411 (2d Cir. 2014) ("*Ida Fishman*") does not warrant reconsideration of *Cohmad's*

actual knowledge exception. As this Court has recognized, *Ida Fishman* did not address the actual

knowledge exception. *See Picard v. Cohen*, Adv. Pro. No. 10-04311, 2016 WL 1695296, at \*10

n.16 (Bankr. S.D.N.Y. Apr. 25, 2016).

### B.    Meritz Is Precluded From Arguing That Section 546(e) Applies Independently to Recovery Actions

Meritz argues incorrectly that the Trustee must allege not only the actual knowledge of

Sentry, but also the actual knowledge of Meritz itself in order to invoke the exception to Section

546(e). Specifically, Meritz asserts that under *Cohmad*, the Sentry Articles of Association operate

as the relevant "securities contract," and as such, the Court must look to the *subsequent*

---

[9] *See* Mem. of Law in Supp. of Meritz Fire & Marine Insurance Co. Ltd.'s Mot. to Withdraw the Reference to the Bankruptcy Ct. ("Meritz Motion to Withdraw the Reference") at 7-9, Apr. 2, 2012, ECF No. 11 (raising Section 546(e) as one of the grounds for withdrawal).

*transferee's* actual knowledge to determine whether the initial transfer is avoidable. Mot. at 19–21. But *Cohmad* does not stand for this proposition, and Meritz's argument is little more than a repackaging of the previously rejected argument that the Section 546(e) safe harbor should independently apply to recovery actions under Section 550.

Under its plain language, Section 546(e) applies to the avoidance of initial transfers, not the recovery of subsequent transfers under Section 550. *See* 11 U.S.C. § 546(e) ("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title.") (emphasis added); *BNP*, 594 B.R. at 197 ("The Trustee does not . . . 'avoid' the subsequent transfer; he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550."); *Kelley v. Safe Harbor Managed Acct. 101, Ltd.*, 31 F.4th 1058, 1064 n.5 (8th Cir. 2022) ("*SHMA*") (citing *BNP*).

This limitation on the safe harbor to avoidance actions is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Secs.)*, 501 B.R. 26, 30 (S.D.N.Y. 2013) (Rakoff, J.) (citation omitted). It is also consistent with the understanding that the Bankruptcy Code's avoidance provisions protect against depletion of a debtor's estate, while Section 550 is merely a "utility provision," intended to help execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place." *See In re Picard,* 917 F.3d at 98 (internal quotation marks and citation omitted).

*Cohmad* confirmed that Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees. The District Court withdrew the reference on whether Section 546(e) barred recovery of a subsequent transfer pursuant to Section

550.[10]  However, in its decision, the court specifically limited the safe harbor to avoidance claims based on the plain language of Section 546(e).  *See Cohmad*, 2013 WL 1609154, at *4, *9 (applying the "plain terms" of Section 546(e)); at *7 (recognizing that subsequent transferees can raise initial transferees' defenses to *avoidance*); and at *10 ("[B]oth initial transferees and subsequent transferees are entitled to raise a defense based on the application of Section 546(e) to the *initial* transfer from Madoff Securities.") (emphasis added).  Although the court hypothesized, in *dicta*, that a subsequent transferee's agreements with the initial transferee feeder fund might under certain circumstances constitute relevant "securities contracts," and that certain subsequent transferee defendants might qualify as "financial institutions" or "financial participants," the decision is clear that the focus of the safe harbor is on the *initial* transfers.  *See id.* at *9.  Contrary to Meritz's argument, the District Court did not, in its hypothetical, discuss actual knowledge or indicate that in such circumstances the initial transferee's knowledge should be disregarded.

Based on *Cohmad*, this Court held that Section 546(e) is applicable only to avoidance and not recovery, and most notably that a subsequent transferee cannot assert the protections of Section 546(e) where the Trustee has adequately pled the initial transferee's actual knowledge.  *BNP*, 594 B.R. at 197; *see also SunEdison Litig. Tr. v. Seller Note, LLC ( In re SunEdison, Inc.)*, 620 B.R. 505, 514 (Bankr. S.D.N.Y. 2020) ("the safe harbor defense only applies by its terms to the initial transfer").  In *BNP*, this Court explicitly rejected the argument being made here—that the "*only* way the Trustee can escape the application of Section 546(e) here is by pleading with particularity and plausibility that the [subsequent transferee defendants] actually knew of the Madoff Ponzi scheme."  *BNP*, 594 B.R. at 196-97 (emphasis in original).  Rather, as explained in *BNP*, a

---

[10] *See* Section 546(e) Briefing Order, *In re Madoff Securities*, 12-MC-115 (S.D.N.Y. May 16, 2012), ECF No. 119 (withdrawing the reference on issue of "whether application of Section 546(e) to an initial or mediate Transfer bars recovery by the Trustee of any subsequent Transfer pursuant to Section 550").

subsequent transferee gets only "indirect" protection from Section 546(e) to the same extent it protects the initial transferee.  *Id*. at 197.  Like *Cohmad*, *BNP* is law of the case, and Meritz is bound by both decisions.  *See Picard v. Est. of Seymour Epstein (In re BLMIS)*, No. 2l-cv-02334 (CM), 2022 WL 493734, at *12 (S.D.N.Y. Feb. 17, 2022) (finding "in a SIPA liquidation like this one," where different adversary proceedings arise within the same liquidation, that law of the case applies when "prior decisions in an ongoing case either expressly resolve[] an issue or necessarily resolve[] it by implication") (internal quotation marks and citations omitted).

Meritz's interpretation of Section 546(e) is thus wrong and would effectively eliminate the point of the actual knowledge exception—which is to restrict any transferee with actual knowledge from hiding behind the safe harbor.  *See Cohmad*, 2013 WL 1609154, at *3 (explaining that defendants who knew BLMIS was a Ponzi scheme "must have known that the transfers they received directly or indirectly from Madoff Securities were not 'settlement payments'").  Adopting Meritz's position means the safe harbor would apply even where the initial transferee feeder fund knew there were no securities transactions in need of protection.  It would moreover allow an initial transferee—who had knowledge of the fraud and was unable to satisfy a judgment (like Sentry)—to place fraudulently transferred moneys out of the reach of a trustee.

Meritz's interpretation of *Cohmad* would provide a subsequent transferee with more rights than an initial transferee, which is inconsistent with congressional intent on Section 546(e).  *See In re Madoff Sec.*, 501 B.R. at 29 ("Section 550(a) requires that the Trustee show that the transfer he seeks to recover is avoidable in each recovery action, and the subsequent transferee in possession of that transfer may raise any defenses to avoidance available to the initial transferee, as well as any defenses to recovery it may have.").  As the Eighth Circuit pointed out—while citing *BNP*—"a subsequent transferee is protected *indirectly* [under Section 546(e)] to the extent that the

initial transfer is not avoidable because of the safe harbor." *SHMA*, 2022 WL 1177748, at *3 n.5 (cleaned up; emphasis added). Conversely, providing subsequent transferees with the same defenses to avoidance as available to initial transferees does not unfairly bias subsequent transferees.

*Cohmad*'s holding that subsequent transferees with actual knowledge are prohibited from using the safe harbor to protect themselves against recovery of transfers they received also does not support Meritz's position. *See* Mot. at 21–22. That holding does not require a trustee to plead a subsequent transferee's actual knowledge. Rather, it merely ensures that any defendant that *does* have actual knowledge, including a subsequent transferee, is prohibited from using the safe harbor, such that the purpose of the actual knowledge exception is achieved consistently. *See Cohmad*, 2013 WL 1609154, at *1, *7 ("A defendant cannot be permitted to in effect launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of Section 546(e)."). This holding that, like initial transferees, subsequent transferees with actual knowledge cannot benefit from the safe harbor does not justify affording subsequent transferees expanded protections, such that they can benefit from the safe harbor despite the initial transferee's actual knowledge.

### C.    The Trustee Has Adequately Alleged Actual Fraudulent Intent

Meritz next argues that the Trustee has failed to adequately allege BLMIS's "actual intent to hinder, delay or defraud" creditors under Section 548(a)(1)(A), which Meritz says is the "only statutory exception to the section 546(e) safe harbor." Mot. at 22. Meritz contends that the Complaint lacks particularized allegations of BLMIS's actual fraudulent intent as required by Rule 9(b), and that the Trustee improperly relies on the "Ponzi scheme presumption." Mot. at 23–25. This argument fails, as actual intent has been repeatedly determined to exist in the Trustee's cases

by virtue of the Ponzi scheme presumption.[11]    And the Complaint alleges numerous facts

supporting that BLMIS was a Ponzi scheme, including that the money received from investors was

used to pay off other investors—the *sine qua non* of a Ponzi scheme.  Compl. ¶¶ 25–30.

Under the Ponzi scheme presumption, "the existence of a Ponzi scheme demonstrates

actual intent as [a] matter of law because transfers made in the course of a Ponzi scheme could

have been made for no purpose other than to hinder, delay or defraud creditors." *Citibank*, 12

F.4th at 181 (citing *Igoin*, 525 B.R. at 892 n.21).  Meritz concedes, as it must, that the Ponzi scheme

presumption "has been accepted by this Court and the District Court," and that the "Second Circuit

has applied the presumption."  Mot. at 24, 24 n.15.  Meritz nevertheless urges this Court to

disregard this settled principle in light of a singular statement in a concurring opinion to the

*Citibank* decision.  *See Citibank*, 12 F.4th at 202 (Menashi, J., concurring).  The District Court,

however, recently recognized that, "[n]otwithstanding Judge Menashi's concerns, 'the Ponzi

scheme presumption remains law of this Circuit.'"  *See Picard v. Sage Realty*, No. 20-CV-10109

(JFK), 2022 WL 1125643, at \*28 (S.D.N.Y. Apr. 15, 2022) (citing *Bear Stearns Secs. Corp. v.*

*Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 11 (S.D.N.Y. 2007)).  Moreover, *dicta* in a

concurring opinion has no precedential effect and does not constitute an intervening change of

controlling law or provide any other "cogent" or "compelling" reasons to depart from the law.  *See*

*Johnson v. Holder*, 564 F.3d 95, 99–100 (2d Cir. 2009); *Cohen v. UBS Fin. Servs., Inc.*, No. 12-

---

[11] *See, e.g.*, *Picard v. Sage Realty*, No. 20-CV-10109 (JFK), 2022 WL 1125643, at \*27–28 (S.D.N.Y. Apr. 15, 2022);
Memorandum Decision at 7, *Picard v. Fairfield Pagma Assocs., LP*, Adv. Pro. No. 10-05169 (CGM) (Bankr. S.D.N.Y.
April 13, 2022), ECF No. 137; *Picard v. Est. of Seymour Epstein*, No. 1:21-cv-02334-CM, 2022 WL 493734, at \*17-
18 (S.D.N.Y. Feb. 17, 2022); *Picard v. Lisa Beth Nissenbaum Tr.*, No. 20 cv. 3140 (JGK), 2021 WL 1141638, at \*15
(S.D.N.Y. Mar. 24, 2021), *judgment entered*, No. 20 CV 3140 (JGK), 2021 WL 1167939 (S.D.N.Y. Mar. 25, 2021);
*Picard v. Ken-Wen Fam. Ltd. P'ship*, 638 B.R. 41, 49 (Bankr. S.D.N.Y. 2022); *Picard v. Nelson (In re BLMIS)*, 610
B.R. 197, 235 (Bankr. S.D.N.Y. 2019); *see also Picard v. Gettinger*, 976 F.3d 184, 187-88 (2d Cir. 2020) *cert. denied*
*sub nom. Gettinger v. Picard*, 141 S. Ct. 2603 (2021) (in which the Second Circuit noted that the case "arises out of
the infamous Ponzi scheme perpetrated by Bernard L. Madoff" (footnote omitted)).

CV-02147 (LGS), 2014 WL 240324, at *4 (S.D.N.Y. Jan. 22, 2014), *aff'd*, 799 F.3d 174 (2d Cir.

2015).

The Ponzi scheme presumption also has been embraced by federal courts generally in this

jurisdiction. *See, e.g.*, *In re Bayou Grp., LLC*, 439 B.R. 284, 307 (S.D.N.Y. 2010) (finding Ponzi

scheme presumption establishes actual fraudulent intent); *Armstrong v. Collins*, No. 01-cv-2437

(PAC), 2010 WL 1141158, at *20 (S.D.N.Y. Mar. 24, 2010) (same); *In re Manhattan Inv. Fund

Ltd.*, 397 B.R. at 11 (same); *Drenis v. Haligiannis*, 452 F. Supp. 2d 418, 429–30 (S.D.N.Y. 2006)

(same); *Gowan v. The Patriot Grp., LLC* (*In re Dreier LLP*), 452 B.R. 391, 424–25 (Bankr.

S.D.N.Y. 2011) (same); *Gredd v. Bear, Sterns Sec. Corp.* ( *In re Manhattan Inv. Fund Ltd.)*, 310

B.R. 500, 506 (Bankr. S.D.N.Y. 2002) (same).  Meritz thus asks this Court to disregard all of the

above decisions in addition to the settled law of this SIPA liquidation proceeding.

Meritz tries to cast doubt on the presumption's validity by citing a handful of inapplicable

cases. *Finn v. Alliance Bank*, 860 N.W.2d 638, 647 (Minn. 2015) concluded that the presumption

did not apply purely as a matter of Minnesota state law. *Lustig v. Weisz & Associates, Inc. (In re

Unified Commercial Capital, Inc.)*, 260 B.R. 343, 350–54 (Bankr. W.D.N.Y. 2001) addressed

recovery of a fraudulent conveyance under a *constructive fraud* theory in connection with a Ponzi

scheme, without even mentioning the presumption as it applies to an *actual fraud* theory.  Neither

of the foregoing cases rejected the presumption as applied to Section 548(a)(1)(A).  Meritz also

cites to *Sharp International Corp. v. State Street Bank & Trust Co.*, 403 F.3d 43 (2d Cir. 2005),

but multiple courts also have explained why the Ponzi scheme presumption does not contravene

the Second Circuit's decision in that case.  *See, e.g.*, *In re Dreier LLP*, 452 B.R. at 425 ("*Sharp*

did not involve a Ponzi scheme and the Second Circuit did not discuss or refer to the Ponzi scheme

presumption or Ponzi schemes in general"); *In re Manhattan Inv. Fund Ltd.*, 397 B.R. at 11

("*Sharp* does not dispose of the Ponzi scheme presumption. At most, it simply means that courts must be sure that the transfers sought to be avoided are related to the scheme.").

Finally, regardless of the Ponzi scheme presumption, the Trustee has in any event satisfied Rule 9(b). Courts have found that BLMIS's actual intent to defraud has been established independent of the presumption based on the same "badges of fraud" as alleged in the Complaint, such as the concealment of facts by BLMIS, BLMIS's insolvency, and the lack of consideration provided for BLMIS's fictitious transfers to customers (Compl. ¶¶ 25–32). *See Picard v. JABA Assocs. LP*, 528 F. Supp. 3d 219, 240–41 (S.D.N.Y. 2021) (citing *Picard v. Nelson*, 610 B.R. 197, 223-24 (Bankr. S.D.N.Y. 2019)); *Picard v. Lisa Beth Nissenbaum Tr.*, No. 20 CV. 3140 (JGK), 2021 WL 1141638, at *15 (S.D.N.Y. Mar. 24, 2021), *judgment entered*, No. 20 CV 3140 (JGK), 2021 WL 1167939 (S.D.N.Y. Mar. 25, 2021). In light of these and the other allegations detailing Madoff's fraud, Meritz's suggestion that the Trustee cannot plead fraudulent intent without the Ponzi scheme presumption should not be taken seriously. *See* Mot. at 25.

## III. THE TRUSTEE'S COMPLAINT ADEQUATELY PLEADS THAT MERITZ RECEIVED BLMIS CUSTOMER PROPERTY

The Trustee's Complaint states a claim for recovery under Section 550(a)(2) by plausibly alleging that Meritz received subsequent transfers of BLMIS customer property. To plead a subsequent transfer claim, the Trustee must allege facts that support an inference "'that the funds at issue originated with the debtor.'" *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 150 (Bankr. S.D.N.Y. 2014) ("*Merkin I*") (citation omitted). The pleading burden, however, "is not so onerous as to require 'dollar-for-dollar accounting' of 'the exact funds' at issue." *Id.* (quoting *Picard v. Charles Ellerin Revocable Tr. (In re BLMIS)*, Adv. Pro. Nos. 10-04398 (BRL), 10-05219 (BRL), 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012.)). Rather, as Meritz concedes, "the Trustee need only allege sufficient facts to show the relevant pathways through which the funds

29

were transferred from BLMIS to [the subsequent transferee]." *Charles Ellerin Revocable Tr.*, 2012 WL 892514, at \*3; *see also 45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019). And as Meritz correctly states, the Trustee must allege only "the necessary vital statistics—the who, when, and how much of the purported transfers to establish an entity as a subsequent transferee of the funds." *Merkin I*, 515 B.R. at 150 (cleaned up).

Contrary to Meritz's bald assertion that the Complaint includes only "barebones allegations," (Mot. at 11), the Trustee's Complaint easily meets these requirements. The Complaint alleges that Meritz received transfers, identified by date and amount, from Sentry, and that Sentry invested substantially all of its funds with BLMIS and received initial transfers of stolen customer property. Compl. ¶¶ 2, 36–38, 40–41, Exs. B & C. Thus, the Complaint plausibly alleges that Meritz received subsequent transfers of customer property by (a) outlining the relevant pathway through which customer property was transferred from BLMIS to Sentry and subsequently to Meritz and (b) providing the necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer. Nothing more is required. *See, e.g.*, *Mayer*, 2021 WL 4994435, at \*5 (rejecting argument that subsequent transfer "claim has not been plead with enough specificity as to how and what [defendant] received" and holding complaint "contains sufficient information regarding which transfers the Trustee is seeking to recover").

### A.    Meritz Misstates the Trustee's Pleading Burden

In arguing that "the Complaint nor its exhibits specify which, if any, of the transactions constitute Fairfield Initial Transfers that involve BLMIS customer property that [were] subsequently transferred to Meritz," (Mot. at 12), Meritz misstates the Trustee's pleading burden. This Court previously rejected the same argument in *Merkin I*, where the Court refused to dismiss subsequent transfer claims even though the complaint did "not connect each of the subsequent

transfers with an initial, voidable transfer emanating from BLMIS." 515 B.R. at 150, *see also 45 John Lofts, LLC*, 599 B.R. at 747 (finding no "requirement to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss"). Likewise, this Court in *Merkin I* rejected the argument that the Trustee must detail which and what portion of each subsequent transfer comprises customer property. *See Merkin I*, 515 B.R. 152–53 (refusing to dismiss complaint where "at least some of the subsequent transfers . . . may be recoverable"); *see also Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007) (finding "if dollar-for-dollar accounting is not required at the proof stage, then surely it is not required at the pleading stage either").

Meritz strains to distinguish this case from *Merkin I* in asserting the Trustee has had access to Sentry books and records "[f]or over 10 years." Mot. at 13; *see also* Mot. at 5 ("[T]he Trustee has all the records of both BLMIS and Fairfield Sentry . . . ."). But the Trustee does *not* have all of the necessary books and records, and discovery in the Trustee's action against the Fairfield management defendants continues. *See, e.g.*, Stipulated Case Mgmt. Order, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Dec. 6, 2021), ECF No. 353 (setting future deadlines for fact discovery and expert discovery). Meritz also no doubt has records it can provide. Meritz's reliance on the passage of time and the Trustee's prior settlement is merely a deflection of Meritz's role.

The Trustee is a stranger to the transactions between Sentry and Meritz and is entitled to discovery on this issue. "[I]n a case such as this one, where the Trustee's lack of personal knowledge is compounded with complicated issues and transactions [that] extend over lengthy periods of time, the trustee's handicap increases, and even greater latitude should be afforded." *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317, 329 (Bankr.

31

S.D.N.Y. 2011) (cleaned up).  And even after fact discovery, expert opinion will be necessary to determine what portion of the subsequent transfer stemmed from the initial transfer where the subsequent transfers originated from commingled accounts.  *Picard v. Merkin (In re BLMIS)*, 581 B.R. 370, 386 (Bankr. S.D.N.Y. 2017) ("*Merkin II*"); *see also Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-cv-1073, 2020 WL 3077151, at *5 (D. Minn. June 10, 2020) (denying summary judgment because trustee introduced expert report and associated documents from which a jury could infer that defendants received subsequent transfers of customer property).

Meritz's reliance on *Shapiro* also is unavailing.  *See* Mot. at 11–12 (citing *Picard v. Shapiro*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015)).  In *Shapiro*, the Trustee alleged that certain trusts and members of the Shapiro family received approximately $54 million in fraudulent transfers from BLMIS, and "upon information and belief" these defendants subsequently transferred this same amount to other defendants.  *See Shapiro*, 542 B.R. at 104, 119.  The complaint in that case, however, did not detail any of the necessary vital statistics of the subsequent transfers.  *Id.* at 119.  There were no allegations regarding the subsequent transferors, the subsequent transferees, or the dates or amounts of the subsequent transfers, and consequently this Court granted defendants' motion to dismiss the subsequent transfer claim.  *Id.*  Here, on the other hand, the Trustee has alleged the vital statistics of both transfers that Meritz received.  *Shapiro* thus supports the Trustee's position.

### B.    Meritz's Arguments Regarding "Plausibility" Must Be Rejected

Meritz's fact-based arguments pertaining to tracing and customer property, (Mot. at 13–15), are both disingenuous and inappropriate for a motion to dismiss.  First, Meritz asserts that the Trustee's claims are "not plausible" because the Trustee is seeking more money from all subsequent transferees of Sentry than the fund withdrew from BLMIS.  Mot. at 13–14.  There is no dispute that the Trustee is limited to "a single satisfaction" under Section 550(a).  11 U.S.C. §

550(d).   However, the Trustee "can recover from any combination of [transferees]" up to the amount avoided.   *Helms v. Metro. Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021).   And under Section 550(a), "a trustee may recover [an avoided] transfer from a subsequent transferee of those funds, without the necessity for allocation among all the subsequent transferees."   *CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*, 393 B.R. 306, 333 (Bankr. W.D.N.Y. 2008).   Thus, until the Trustee recovers the full amount of the approximately $3 billion in fraudulent transfers received by Sentry, the Trustee may simultaneously seek recovery from Meritz in this action and from defendants in other actions, even in an aggregate amount that exceeds associated initial transfers.   *See Fairfield Inv. Fund*, 2021 WL 3477479, at *12 (holding the defendant's arguments regarding "double recovery" and the Trustee's purported limitations under Section 550(d) are "to be determined at a later stage [in the] litigation").

Second, Meritz cherry-picks one transfer—out of two—and argues that it could not have received customer property in that instance because of the amount of time that purportedly elapsed between Sentry's receipt of certain initial transfers from BLMIS and Sentry's subsequent transfer to Meritz.   Mot. at 14.   In doing so, Meritz argues a "lack of linkage," or failure to tie the initial transfers to subsequent transfers.   *See id.*   But Meritz's demand for "tying" and "linkage" is just tracing under a different name in that Meritz is asserting that the Trustee cannot trace the funds from BLMIS to Meritz.   And such tracing arguments are not grounds for dismissal at the pleading stage.   *See Merkin I*, 515 B.R. at 152 (finding it "premature to cut off the Trustee's opportunity to satisfy his [tracing] burden on a motion to dismiss" merely because the tracing may prove difficult); *Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*, Adv. Pro. No. 10-03493 (SMB), 2014 WL 47774, at *15 (Bankr. S.D.N.Y. Jan. 3, 2014) ("[T]he [subsequent transferees']

33

speculation that tracing is 'not likely' to reveal a subsequent transfer . . . hardly justifies granting [their cross-motion for summary judgment].").

Meritz's tracing arguments are especially inappropriate when, as noted above, there are issues of commingling funds as with Sentry. "The law does not place such a difficult burden on trustees.  The commingling of legitimate funds with funds transferred from the debtor does not defeat tracing." *Kelley*, 2020 WL 3077151, at *4 (citing *Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *2).  Meritz relies solely on the passage of time for one transfer and does not disclose what tracing methodology or methodologies it relies upon to reach its conclusion.  It is for this Court to decide—after fact and expert discovery—the appropriate tracing methodology under the circumstances.  *See Merkin II*, 581 B.R. at 386 ("Court's selection of an appropriate methodology is committed to the Court's discretion.") (citation omitted); *Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *3, n.7 ("Courts have broad discretion to determine which monies of commingled funds derive from fraudulent sources.") (citation omitted).

Meritz additionally argues there is an "alternative explanation" for the source of the redemption payments to Meritz, including that Sentry paid other investors with funds from subscribing investors, and not solely with funds received from BLMIS. Mot. at 14–15.  But to reach this conclusion, Meritz is again making an inappropriate tracing argument and applying some undisclosed tracing methodology or methodologies of its choosing.  Meritz's tracing arguments are nothing more than "an attempt to interject improper expert testimony into a Rule 12(b)(6) context." *Fowler v. Caliber Home Loans, Inc.*, 277 F. Supp. 3d 1324, 1331  (S.D. Fla. 2016), *aff'd sub nom. Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314 (11th Cir. 2018). At this stage of the proceedings, the Trustee is not required to plead, much less establish, that an alleged subsequent transfer is comprised solely of customer property. *See Kelley*, 2020 WL

3077151, at *4 (holding that where debtors' funds are commingled with "cash from new subscribing investors," a trustee is not required to establish that the transfers "originated solely" with the debtor or even to account for "the exact funds at issue" on summary judgment).

## IV.   THE TRUSTEE SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE SENTRY TRANSFERS

Meritz argues that the Trustee's incorporation of the Fairfield Amended Complaint[12] violates incorporation by reference under Rule 10(c) and violates Rule 8(a)(2)'s requirement to include "a short and plain statement" showing the Trustee is entitled to relief.  Mot. at 8–11.  However, the Trustee may incorporate by reference the Fairfield Amended Complaint under Rule 10(c) to demonstrate the avoidability of the initial transfers from BLMIS.  In any event, the Court may take judicial notice of the Fairfield SAC and its own decision on the avoidability of the initial transfers, or alternatively allow the Trustee the opportunity to replead.

### A.    The Incorporated Material Complies with Fed. R. Civ. P. 10 and 8

Meritz argues that the Trustee may not incorporate by reference the Fairfield Amended Complaint, which details the avoidability of the initial transfers.  *See* 11 U.S.C. § 548(a)(1).  Meritz's main support for this assertion is that courts in other contexts have declined to allow incorporation by reference of pleadings in a different action.  *See* Mot. at 9–10.  In the bankruptcy context, however, all matters under the umbrella of one liquidation are considered one proceeding for purposes of Rule 10(c).  *See Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010) (allowing incorporation by reference of pleadings in a different adversary proceeding within the same liquidation because the pleadings "directly relate[d] to, materially affect[ed], and [were] filed in a single bankruptcy case.").

---

[12] As noted in Footnote 1, the Fairfield Amended Complaint was amended after the filing of the Complaint in this adversary proceeding.  The operative complaint in that action is the Fairfield SAC.

Meritz also ignores the District Court's prior opinion on whether under Section 550(a) the Trustee must avoid an initial transfer or plead its avoidability in a subsequent transfer action. *In re Madoff Sec.*, 501 B.R. at 26. In that decision, the District Court found sufficient the Trustee's incorporation by reference of initial transfer complaints, including the Fairfield Amended Complaint:

> [T]he Trustee's complaint against [the subsequent transfer defendant] incorporates by reference the complaints against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. . . . Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).

*Id.* at 36. Meritz participated in the withdrawal of the reference[13] and is thus bound by this decision, which is now law of the case. *See Est. of Seymour Epstein*, 2022 WL 493734, at *12.

Regardless, Rule 10(c) is not so limited as to prohibit the incorporation of entire pleadings from other actions. *See* Mot. at 9. Courts in this District and elsewhere have permitted incorporation by reference of pleadings in separate actions in appropriate circumstances. *See Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 323 n.5 (S.D.N.Y. 2007) (citation omitted) (interpreting Rule 10(c)'s reference to "another pleading" as not being confined to another pleading in the same action, and permitting incorporation of entire pleadings in separate cases); *Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC*, 843 F. Supp. 2d 191, 214 n.15 (D. Mass. 2012) (holding incorporation by reference appropriate where "the court [was] familiar with the

---

[13] *See* Meritz Mot. to Withdraw the Reference at 13-14, ECF No. 11 (raising Section 550(a) as one of the grounds for withdrawal).

filings in the other [] case[], which [were] substantially similar to [that] case, and the usual concerns about inferring arguments from other submissions have less force.").[14]

Here, the Trustee references only one other pleading—the Fairfield Amended Complaint—and the incorporation is clear, with its purpose obvious. *See* 5A Alan Wright & Arthur R. Miller, Federal Practice & Procedure 3d ("Wright & Miller") § 1326 (4the ed. 2008) ("If the incorporation is clear, less emphasis need be placed on the source of the incorporated material."); *Whitaker Sec., LLC v. Rosenfeld (In re Rosenfeld)*, 543 B.R. 60, 66 (Bankr. S.D.N.Y. 2015) (noting that some courts fear incorporation will not provide adequate notice as to claims or allegations, but allowing incorporation because "there is no danger of such prejudice"). Contrary to Meritz's "fair notice" arguments, reference to the Fairfield Amended Complaint provides notice of avoidability of initial transfers in a manner that avoids repetition and over-complication. "The ability to incorporate matter from other pleadings is especially useful in multiparty litigation when the presence of common questions often results in the pleadings of the parties on the same side of the litigation being virtually identical, which makes employing simple incorporations by reference highly desirable." *Sherman*, 528 F. Supp. 2d at 323 n.5 (quoting Wright & Miller § 1326); Wright & Miller § 1326 n.1 ("Adoption by reference avoids overly long or complicated pleadings.").

---

[14] In contrast, the cases cited by Meritz are inapposite because in those cases, unlike in this one, plaintiffs were incorporating pleadings in separate actions by reference in an attempt to add brand new claims. *See, e.g.*, *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 461–66 (E.D.N.Y. 2007); *Davis v. Bifani*, No. 07-cv-00122-MEH-BNB, 2007 WL 1216518, at *1 (D. Colo. Apr. 24, 2007); *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803, at *4 (E.D.N.Y. Mar. 26, 2010). Those courts found that incorporation under the circumstances would have led to confusion or a lack of notice of the claims asserted. By contrast, Meritz would be hard pressed to argue it is confused or lack notice that the Trustee is seeking to avoid the initial transfers. In the other cases cited by Meritz, the information plaintiffs sought to incorporate was even more irrelevant, such as affirmative defenses in answers filed by defendants in other actions (*Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*, No. 13 CIV. 6705 (DLC), 2014 WL 1673351, at *9 (S.D.N.Y. Apr. 28, 2014)), and arguments in a motion to dismiss (*Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212, 215 (D. Mass. 1995)).

Meritz also cannot seriously argue that the incorporation of the Fairfield Amended Complaint violates Rule 8. Meritz ignores the substance of the Trustee's Complaint and the purpose of the incorporation: to make a *prima facie* showing that the initial transfers are avoidable under Section 548(a). *See Citibank*, 12 F.4th at 196–97. Meritz fusses that it would be required to "respond, paragraph-by-paragraph, to the allegations in the Fairfield Amended Complaint." Mot. at 10. Not so. The Complaint only incorporates the Fairfield Amended Complaint—as part of one paragraph—in pleading the avoidability of the initial transfers. This places no undue burden on Meritz, as it can admit the substance of the avoidability of the initial transfers, deny them, or respond that it does not have sufficient information to admit or deny. Repleading all initial transfer allegations would unnecessarily add countless pages to the Complaint.

## B.  The Court Can Take Judicial Notice of the *Fairfield Inv. Fund* Decision

Meritz's arguments about incorporation are really much ado about nothing because this Court may take judicial notice of the operative Fairfield SAC and its prior decision holding that the complaint sufficiently alleges the avoidability of the initial transfers. *See Fairfield Inv. Fund*, 2021 WL 3477479. On a motion to dismiss, "a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*." *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011). "Included among such matters are decisions in prior lawsuits." *DeMasi v. Benefico*, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008). The fact that the Fairfield SAC was filed after the Complaint in this action is of no consequence. *See Rothman v. Gregor*, 220 F.3d 81, 91–92 (2d Cir. 2000) (taking judicial notice of a subsequently filed complaint in related proceeding).[15]

---

[15] On the other hand, Meritz's citation of *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440 (E.D. Va. 2009) is inapposite. *See* Mot. at 10. That case involved incorporation of the prior versions of the complaint in multiple

The Trustee has adequately pleaded the avoidability of the initial transfers, and regardless, this Court may take judicial notice of its opinion in *Fairfield Inv. Fund*. If this Court holds otherwise, the Trustee respectfully requests the opportunity to replead.[16]

## **CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests that the Court deny Meritz's Motion.

Respectfully submitted,

Dated: June 10, 2022
New York, New York

/s/ *Eric R. Fish*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York
Tel.: (212) 589-4200
Fax: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Eric R. Fish
Email: efish@bakerlaw.com
Brian F. Allen
Email: ballen@bakerlaw.com
Michelle N. Tanney
Email: mtanney@bakerlaw.com
Megan A. Corrigan
Email: mcorrigan@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Chapter 7 Estate of Bernard L. Madoff*

---

amendments, which the court determined "serve as nothing more than boiler plate safety valves." *See Hinton*, 654 F. Supp. 2d at 447 (cleaned up).

[16] As evidenced by cases that Meritz relies upon, leave to replead extends to complaints that were dismissed for improperly incorporating other pleadings or motions by reference or failing to provide a short and plain statement. *See, e.g.*, *In re Geiger*, 446 B.R. at 683; *Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d at 483; *Toberman v. Copas*, 800 F. Supp. 1239, 1244 (M.D. Pa. 1992).