# EXHIBIT 2

# FAIRFIELD SENTRY LIMITED

Maximum Capitalization:      5,000,000 Shares
Minimum Investment:          U.S. $100,000

# INFORMATION MEMORANDUM

THE DIRECT OR INDIRECT SALE OF SHARES OF FAIRFIELD SENTRY LIMITED TO CITIZENS,
NATIONALS OR RESIDENTS OF, OR INSTITUTIONS OR OTHER ENTITIES ORGANIZED, CHARTERED
OR RESIDENT IN, THE UNITED STATES OF AMERICA IS EXPRESSLY PROHIBITED.

Fairfield Sentry Limited (the "Company") was incorporated in the Territory of the British Virgin Islands on
October 30, 1990. The Company is soliciting subscriptions for up to 5,000,000 redeemable shares (the "Shares"),
payable in full at the time of subscription. As of April 30, 2000, there were 3,760,278 Shares issued and
outstanding with a Net Asset Value of $686.23 per Share (unaudited).

The date of this Offering Memorandum is June 30, 1994, as amended, February 15, 1995,
September 30, 1995, January 2, 1996, February 28, 1997, January 1, 1998, January 1, 1999,
January 1, 2000, June 15, 2000, and July 1, 2000

# INVESTMENT MANAGER

Fairfield Greenwich Limited

399 Park Avenue, 36th Floor
New York, New York 10022
(212) 319-6060

Confidential Treatment Requested by HNAH

# MUTUAL FUNDS DISCLOSURE

The British Virgin Islands Mutual Funds Act (the "Act") was approved on June 6th 1996 and was implemented on January 2nd 1998 with the aim of regulating Mutual Funds, the Managers and Administrators carrying on business in or from within the Territory of the British Virgin Islands (the "BVI").

Three types of fund, namely Private, Professional and Public Funds (each as defined in the Act) are regulated by the Act and Fairfield Sentry Limited (the "Company") has applied for recognition under the Act as a Professional Fund.

**A Professional Fund is defined as a mutual fund:**

a.      the shares of which are made available only to professional investors and the initial investment in which, in respect of the majority of such investors, is not less than one hundred thousand dollars in US currency or its equivalent in any other currency; or

b.      is designated as a professional fund by regulations.

**A "Professional Investor" is defined as:**

a.      a person whose ordinary business involves, whether for his own account or the account of others, the acquisition or disposal of property of the same kind as the property, or a substantial part of the property, of the fund or a person who has signed a declaration that they have a net worth in excess of $1 million and they consent to being treated as a professional investor.

The Act provides for a Professional Fund to be able to manage or administer its affairs in or from within the Territory for up to fourteen days before being recognized.

To be recognized under the act an annual fee of $350 is payable by the Fund.

Recognition under the Act should not be taken to imply that the Fund has been approved by any regulatory authority in any country such as the United States, the United Kingdom or any other jurisdiction other than the BVI and it is intended that any potential shareholders of the Fund, participate on the basis that they can afford to lose all or a substantial portion of their investment.

Confidential Treatment Requested by HNAH

HNAH-SEC-004986

SECSEK0001150

FAIRFIELD SENTRY LIMITED                                    INFORMATION MEMORANDUM

## ANTI-MONEY LAUNDERING

To ensure compliance with statutory and other generally accepted principles aimed at the prevention of money-laundering, the Company and/or the Administrator, Citco Fund Services (Europe) B.V., may require a detailed verification of a prospective investor's identity. Depending on the circumstances of each application, a detailed verification may not be required if:

(a)     the applicant makes the payment from an account held in the applicant's name at a recognized financial institution; or

(b)     the application is made through a recognized intermediary.

These exceptions will only apply if the financial institution or intermediary referred to above is within a country recognized as having sufficient anti-money laundering regulations.

An individual may be required to produce a copy of a passport or identification card certified by a notary public. Corporate applicants or other legal entities may be required to produce a certified copy of the certificate of incorporation (and any change of name), memorandum and articles of association (or equivalent), the names, occupations, dates of birth and residential and business addresses of all directors and the signatory card verifying the authority of officers to sign on behalf of the corporate entity. Trusts, or similar organizational units without specific beneficial owner, which subscribe to the Fund must demonstrate organizational documents which verify their existence and the authority of one or more signatories to sign subscriptions on their behalf.

Pending the provision of evidence satisfactory to the Administrator as to the identity of any prospective investor, the evidence of title in respect of Shares may be retained at the absolute discretion of the Administrator.  If within a reasonable period of time following a request for verification of identity, the Administrator has not received evidence satisfactory to it as aforesaid, it may, in its absolute discretion, refuse to allot the Shares applied for in which event application moneys will be returned without interest to the account from which such moneys were originally debited.

Financial institutions which have been duly qualified and authorized to exercise their activity in their respective countries as a bank and which are subject to internationally recognized anti-money laundering legislation may subscribe for Shares on behalf of their clients.

Confidential Treatment Requested by HNAH

HNAH-SEC-004987

SECSEK0001151

FAIRFIELD SENTRY LIMITED        INFORMATION MEMORANDUM

## TABLE OF CONTENTS

MUTUAL FUNDS DISCLOSURE ........................................................................ 2

ANTI-MONEY LAUNDERING.......................................................................... 3

TABLE OF CONTENTS.................................................................................. 4

SUMMARY ................................................................................................ 5

     THE OFFERING................................................................................ 5
     SALE, REDEMPTION AND EXCHANGE OF SHARES ............................... 7
     COMPENSATION AND EXPENSES ..................................................... 7
     MANAGEMENT OF THE COMPANY .................................................... 9
     INVESTMENT POLICIES ................................................................... 11
     OFFERING OF THE SHARES ............................................................. 12
     FEES, COMPENSATION AND EXPENSES ............................................ 15
     ESCROW BANK AND CUSTODIAN ..................................................... 16
     ADMINISTRATOR, REGISTRAR AND TRANSFER AGENT ....................... 16
     RISK FACTORS .............................................................................. 16
     POTENTIAL CONFLICTS OF INTEREST ............................................. 19
     PRIOR TRADING RESULTS .............................................................. 20
     PERFORMANCE TABLES .................................................................. 20
     DESCRIPTION OF SHARES ............................................................... 24
     DIVIDEND POLICY ......................................................................... 24
     TRANSFERS, REDEMPTIONS AND TERMINATION ................................ 24
     TAX CONSIDERATIONS AND EXCHANGE CONTROL ............................ 25
     LEGAL MATTERS .......................................................................... 26
     MISCELLANEOUS .......................................................................... 26

APPENDIX – A FINANCIAL STATEMENTS ...................................................... 28

APPENDIX – B SUBSCRIPTION DOCUMENTS .................................................. 29

SHARE APPLICATION FORM........................................................................ 30

     SIGNATURE PAGE FOR SUBSCRIPTION BY AN: INDIVIDUAL.................. 33
     SIGNATURE PAGE FOR SUBSCRIPTION BY AN: ENTITY ....................... 34

REDEMPTION REQUEST FORM ..................................................................... 36

Confidential Treatment Requested by HNAH

HNAH-SEC-004988

SECSEK0001152

FAIRFIELD SENTRY LIMITED                                    INFORMATION MEMORANDUM

## SUMMARY

*The following Summary is intended to highlight certain basic information which is set forth more fully elsewhere in this Information Memorandum and, accordingly, should be read in conjunction with such detailed information.*

### The Offering

#### ISSUER

Fairfield Sentry Limited (the "Company") is organized as an international business company under the laws of the Territory of the British Virgin Islands ("BVI"). The registered office of the Company is located in the BVI.

#### SECURITIES OFFERED

Shares of the Company's Common Stock were sold on November 30, 1990 at an initial offering price of U.S. $200 per Share and thereafter have been sold at a price equal to the Net Asset Value (as defined) as of the date of issuance. The Net Asset Value of the Shares as of April 30, 2000 was $686.23 (unaudited).

#### OFFEREES

Purchasers, who are not citizens, nationals or residents of, or institutions or other entities organized, chartered or resident in, the United States. See "OFFERING OF SHARES."

#### MINIMUM SUBSCRIPTION

The minimum initial subscription per investor for the Shares is U.S. $100,000, unless the Company deems it advisable to permit subscriptions for a lesser amount. Following his initial investment, a shareholder may make additional investments in amounts of not less than U.S. $50,000.

#### MAXIMUM CAPITALIZATION

The Company will not accept a subscription tendered for Shares at a time when the number of its outstanding Shares is 5,000,000.

Confidential Treatment Requested by HNAH                                    HNAH-SEC-004989

SECSEK0001153

FAIRFIELD SENTRY LIMITED                                    INFORMATION MEMORANDUM

## SUBSCRIPTION
## PROCEDURES

It is preferable that subscriptions be made by wire transfer. However, subscriptions may be made by mail if necessary.

## SOLICITATION OF
## SUBSCRIPTIONS

There are no underwriting arrangements with respect to the offering of Shares. All solicitations of subscriptions will be made directly by the Company or through the assistance of unaffiliated placement agents and money managers. Such unaffiliated placement agents and money managers may charge their clients a placement fee of up to 5% of the total amount of the subscription for Shares sold with their assistance, and/or share in the fees earned by Fairfield Greenwich Limited, as Investment Manager. The unaffiliated placement agents and money managers may rebate all or a portion of such fees to their clients

## BUSINESS OBJECTIVE OF
## THE COMPANY

The Company will seek to achieve capital appreciation of its assets by allocating its assets to an account at Bernard L. Madoff Investment Securities ("BLM"), a registered broker-dealer in New York, which employs an options trading strategy described as "split strike conversion".

## INVESTMENT MANAGER

Fairfield Greenwich Limited ("FGL" or the "Manager"), a corporation organized under the laws of Ireland, serves as the Company's investment manager. Jeffrey H. Tucker and Walter M. Noel, Jr. are the officers and Directors of FGL. Andres Piedrahita is a principal of the Manager. Mr. Noel is also a Director of the Company (see "MANAGEMENT OF THE COMPANY").

## DIRECTORS

Walter M. Noel Jr.
Jan R. Naess
Peter P. Schmid

## CITCO

Citco Fund Services (Europe) B.V., an affiliate of Curacao International Trust Company, N.V., acts as escrow agent, administrator, registrar and transfer agent for the Company. The

Confidential Treatment Requested by HNAH                                    HNAH-SEC-004990

SECSEK0001154

Company's escrow account is maintained at Citco Bank Nederland, N.V. Citco Global Custody N.V. acts as custodian for the Company.

**DIVIDEND POLICY**

It is anticipated that the Company will not declare any dividends; rather, income will be reinvested and will be reflected in the Net Asset Value of the Shares.

## Sale, Redemption and Exchange of Shares

**REDEMPTION AT THE OPTION OF A SHAREHOLDER**

A shareholder of the Company, on ten (10) business days' (i.e., a day other than a Saturday, Sunday a public holiday or a day on which banks are generally authorized or obliged by law or regulation to close in The Netherlands or in the United States of America) notice, may cause his Shares to be redeemed as of the end of any month.

**COMPULSORY REDEMPTION**

The Company reserves the right to call all or a part of a shareholder's Shares for redemption at any time for any reason or for no reason.

**SALES**

The Company will offer its Shares on a continuous basis. Subscriptions received during any monthly period will ordinarily be accepted as of the first day of the following month, i.e., subscriptions received between March 1 and March 31 will be accepted as of April 1.

**EXCHANGE LISTINGS**

The Company was admitted to the Official List of the Irish Stock Exchange in Dublin, Ireland on January 12, 1995. The Company was issued SEDOL number 0-334-934. There can be no assurance that a public trading market will develop for the Company's Shares. Shareholder redemption rights are not affected by this listing.

## Compensation and Expenses

Confidential Treatment Requested by HNAH                                    HNAH-SEC-004991

SECSEK0001155

## EXPENSES

The Company's initial organization and offering expenses were approximately $5,000. Such expenses were paid by the Company and were amortized among the Company's shareholders, during a period of five years from November 30, 1990, the date of the initial closing of this offering. The Company will bear, for each year, all continuing offering costs; all ordinary legal and auditing fees; all registrar, transfer agent and administration fees; and all expenses in maintaining the Company's office and all other expenses incurred in the operation of the Company, if any, including any legal fees that relate to extraordinary circumstances, such as tax examinations or litigation involving the Company, as well as all fees and all ordinary and necessary expenses related to the Company's investment and trading activities. Transactional costs will be included in the Company's calculation of profit and loss and therefore will be indirectly borne by the Company.

## PERFORMANCE FEE

The Manager will receive, for each calendar quarter, a performance fee with respect to each Share outstanding during such calendar quarter in an aggregate amount equal to 20% of any New High Net Profits (as defined under "FEES, COMPENSATION AND EXPENSES - Performance Fee") with respect to each Share. Shares which are either purchased or redeemed during a calendar quarter shall be subject to the payment of a performance fee only for the portion of the calendar quarter during which such Shares were outstanding. The performance fee will only be paid on "new appreciation" in the Company's Net Asset Value.

The Manager and the Company may enter into an agreement pursuant to which the Manager may elect to defer payment of all or a portion of its performance fees.

Confidential Treatment Requested by HNAH

HNAH-SEC-004992

SECSEK0001156

FAIRFIELD SENTRY LIMITED                                                    INFORMATION MEMORANDUM

## THE COMPANY

### DESCRIPTION

The Company was incorporated in the Territory of the British Virgin Islands ("BVI") as an international business company on October 30, 1990. The registered office of the Company is located in Road Town, Tortola, British Virgin Islands.

Shareholders will have the right to redeem part or all of their Shares, or purchase additional Shares, on a monthly basis (See "TRANSFERS, REDEMPTIONS AND TERMINATION").

## MANAGEMENT OF THE COMPANY

### THE COMPANY

The Company's Board of Directors has overall management responsibility for the Company, including establishing investment, dividend and distribution policy, and having the authority to select and replace the Company's administrator, registrar and transfer agent, any officers of the Company and other persons or entities with management or administrative responsibilities to the Company. None of the Company's Directors own an equity interest in the Company.

### THE DIRECTORS OF THE COMPANY ARE AS FOLLOWS:

**Walter M. Noel, Jr.,** age 69, graduated from Vanderbilt University in 1952, received a Master of Arts in Economics from Harvard University in 1953 and graduated from Harvard Law School in 1959. From 1959 to 1972, he was associated with the Management Services Division of Arthur D. Little Inc., an industrial and management consulting firm. From 1972 to 1974, Mr. Noel was President of Bahag Banking Ltd., in Lausanne, Switzerland. In 1974, Mr. Noel became Vice-President of the International Private Banking Department of Citibank, N.A., where he remained until 1977, when he became Senior Vice President of the International Private Banking Department of Chemical Bank. Since 1983, Mr. Noel has been a self-employed investment consultant and, until January 1992, was associated with Fahnestock & Co., Inc., a member firm of the New York Stock Exchange. From 1993 to 1996, Mr. Noel was a general partner of Fred Kolber & Co. Limited Partnership ("Fred Kolber & Co."), a broker dealer registered with the Securities and Exchange Commission, which is a member of the National Association of Securities Dealers, Inc. and various securities exchanges and clearing organizations. Until January 1998, Mr. Noel was a general partner of GOF Partners (Limited Partnership), a Connecticut limited partnership ("GOF"), and Greenwich Strategies, LP and Greenwich Sentry, LP, which are Delaware limited partnerships, each of which are private investment partnerships offered to United States residents and citizens. FGL is now the general partner of these entities. He is a director of Fairfield International Limited ("FIL"), Advanced Strategies Limited ("Advanced"), Sentry Select Limited ("Sentry Select"), MJM International Limited, Advanced Pacific Strategies Limited, Glickenhaus International Limited ("GIL") and Arlington International Fund Ltd. ("Arlington"), corporations organized under the laws of the British Virgin Islands (the "BVI"), which offer money management services to non-U.S. citizens and residents. He is an officer and director of Fairfield International Managers, Inc., a Delaware corporation, which, until December 31, 1997, served as the

Confidential Treatment Requested by HNAH

FAIRFIELD SENTRY LIMITED                                    INFORMATION MEMORANDUM

Company's investment manager. Finally, Mr. Noel is a Director of The Navigation Fund Limited, a Liberian corporation.

**Jan R. Naess**, age 40, received a Bachelor of Arts degree in 1981 and a Masters degree in Economics in 1983 from the University of Oslo. From 1983 to 1987, he was employed in the Economic Research Department of R.S. Platou a.s. in Oslo, a leading ship-brokering firm. In 1987, Mr. Naess joined with R.S. Platou a.s. to form R.S. Platou Asset Management a.s., which was instrumental in the sale and purchase of 15 bulk carriers from 1987 to 1989. In 1989, Mr. Naess liquidated his interest in R.S. Platou Asset Management a.s. and formed PAN Shipping Ltd., a ship-owning/ operating and project development company, which merged with Northern Navigation International Limited ("NNI") in 1991. Mr. Naess is a Vice-President of NNI, a Liberian corporation, which is in the business of investing in and managing shipping assets and which is the investment manager of The Navigation Fund Limited. He serves as a Director of FIL, Sentry Select, GIL and Arlington.

**Peter P. Schmid**, age 49, received a Swiss Federal Certificate of Capacity in 1968. Credit Suisse from 1968 to 1986 employed Mr. Schmid. From 1975 to 1977, he was employed in Credit Suisse's International Portfolio Management Department in Zurich. After a brief posting in Credit Suisse's New York office, Mr. Schmid was in charge of the Bank's representative office in Rio de Janeiro from 1977 to 1984. From 1984 to 1986, Mr. Schmid was Vice President in charge of Credit Suisse's Latin American Private Banking Desk in Geneva. Mr. Schmid has been an independent investment adviser since April 1986. He is President of Peter Schmid (Portfolio Management), P. Schmid & Associés, S.A., Rock Ltd. and Armor S.A. Mr. Schmid is a Director of Inter Asset Management Inc., FIL, Sentry Select, GIL and Arlington.

## THE INVESTMENT MANAGER

The Company's investment manager is Fairfield Greenwich Limited, a corporation organized under the laws of Ireland ("FGL" or the "Manager"), which was incorporated on October 23, 1997. It is responsible for the management of the Company's investment activities, monitoring those investments and maintaining the relationship between the Company and its escrow agent, custodian, administrator, registrar and transfer agent. FGL has delegated the management of the Company's investment activities to Bernard L. Madoff Investment Securities, a registered broker-dealer in New York, see "INVESTMENT POLICIES". FGL is the general partner of GOF, Greenwich Strategies, LP, Greenwich Sentry, LP and Belmont Investors, L.P., a Delaware limited partnership. It is the investment manager of FIL, Advanced, Sentry Select, Arlington, Dynamic Alternative Strategies Limited, Dynamic Alternative Plus Strategies Limited, the last two of which are BVI corporations, and Sentry Assets (Euro), Ltd., a Cayman Islands corporation, and the administrative manager of GIL, Epsilon Global Active Value Fund Ltd., a BVI corporation, and The Navigation Fund Limited. It is also a co-venturer in J.P. Acquisition, LP, a Delaware limited partnership organized to acquire and manage private operating companies. The Manager maintains an office at 399 Park Avenue, 36th Floor, New York, New York 10022; telephone number (212) 319-6060. The Directors, principal officers and shareholders of the Manager are Walter M. Noel, Jr. and Jeffrey H. Tucker. Andres Piedrahita is the beneficial owner of the Manager's third shareholder and serves as a consultant to the Manager.

**Walter M. Noel, Jr.** is a President and a Director of the Manager. His background is summarized above under "MANAGEMENT OF THE COMPANY AND OTHER RELATIONSHIPS - The Company".

**Jeffrey H. Tucker**, age 54, is Vice President and a Director of the Manager. Mr. Tucker practiced law in New York City from 1970 - 1986. In January of 1987 he joined Fred Kolber & Co., and in September of 1987 he became a general partner of Fred Kolber & Co. which position he occupied until

Confidential Treatment Requested by HNAH

HNAH-SEC-004994

SECSEK0001158

1996. Mr. Tucker was also a general partner of GOF, Greenwich Strategies, LP and Greenwich Sentry, LP until January 1998 and is an officer and director of FIM and FGCPI.

Andres Piedrahita, age 40, graduated from Boston University's School of Communications in 1981. Upon graduation from college, Mr. Piedrahita became employed as a financial consultant with Prudential Bache Securities Inc. in New York. From 1987 to 1990, Mr. Piedrahita was a Vice President at Shearson Lehman Hutton, specializing in money management consulting for non-U.S. institutions and individuals. From 1991 to 1997, Mr. Piedrahita was the Director and President of Littlestone Associates, Inc., a New York corporation, which until December 31, 1997, was the investment manager of Advanced Strategies Limited, Advanced Latin Fund, Ltd., Advanced Pacific Strategies Limited, Dynamic Alternative Strategies Limited and Dynamic Leveraged Strategies Limited, which are British Virgin Islands corporations.

The Manager will not have any beneficial interest in the Company.

Pursuant to the Investment Management Agreement between the Company and the Manager, the Manager is not liable for any error of judgment or for any loss suffered by the Company unless such loss resulted from the Manager's willful misfeasance, bad faith, gross negligence or reckless disregard of its obligations and duties. See "RISK FACTORS".

## INVESTMENT POLICIES

The Company seeks to obtain capital appreciation of its assets through the utilization of nontraditional options trading strategies. The Company was incorporated in the BVI in October 1990. The Manager has established a discretionary account for Sentry at Bernard L. Madoff Investment Securities ("BLM"), a registered broker-dealer in New York, who utilizes a strategy described as "split strike conversion". This strategy has defined risk and profit parameters, which may be ascertained when a particular position is established. All investment decisions in the account at BLM are effected by persons associated with BLM. The firm, which employs approximately 150 people, acts primarily as a market maker in stocks and convertible securities. Most of the stocks for which it acts as a market maker are also listed on the New York Stock Exchange. Set forth below is a description of the "split strike conversion" strategies.

The establishment of a typical position entails (i) the purchase of a group (or basket) of equity securities that together will highly correlate to the S&P 100 Index (the "OEX"), (ii) the sale of out of the money OEX call options in an equivalent contract value dollar amount to the basket of equity securities purchased, and (iii) the purchase of an equivalent number of out of the money OEX put options. A call option is out of the money when its strike price is greater than the current price of the stock; a put option is out of the money when the strike price is lower than the current price of the stock. The basket typically consists of approximately 35 stocks in the S&P 100 Index.

The logic of this strategy is that once a long stock position has been established, selling a call against such long position will increase the standstill rate of return, while allowing upward movement to the short call strike price. The purchase of an at or out of the money put, funded with part or the entire call premium, protects the equity position from downside risk.

A bullish or bearish bias of the positions can be achieved by adjustment of the strike prices in the OEX puts and calls. The further away the strike prices are from the price of the S&P 100 Index, the more

Confidential Treatment Requested by HNAH

bullish the strategy. However, the dollar value underlying the put options always approximates the value of the basket of stocks.

## TRANSACTION EXECUTIONS

BLM acts as a principal in connection with its sale of securities to the Company and the purchase of securities from the Company. BLM acts as a market-maker in the stocks purchased and sold by the Company. These market making activities enable BLM to trade with the Company as principal.

The options transactions executed for the benefit of the Company are effected, primarily, in the over-the-counter market, not on a registered options exchange.
*See "POTENTIAL CONFLICTS OF INTEREST".*

## OTHER INVESTMENTS

In order to ensure that the Company will not be subject to United States federal income taxation on trading gains from the disposition of certain investments, the Company will not invest in any "United States real property interest" (including, for example, certain interests in any U.S. Corporation that is a "United States real property holding corporation"), as such terms are defined under the U.S. Internal Revenue Code of 1986 (the "Code") and the Treasure Regulations promulgated thereunder. See "TAX CONSIDERATIONS AND EXCHANGE CONTROL."

The Company may invest some of its assets in short-term U.S. government obligations, certificates of deposit, short-term high grade commercial paper and other money market instruments (but not money market mutual funds), including repurchase agreements with respect to such obligations. In order to ensure that substantially all of the interest earned by the Company will not be subject to United States federal withholding taxes, any investment in an obligation of a U.S. person or entity (other than in certificates of deposits in banks) primarily will be in an instrument (i) which is issued and purchased at a discount from its face amount, which is not otherwise interest bearing, and which has a term of no more than 183 days from the date of issuance or (ii) which is in registered form and which is issued after July 18, 1984. See "TAX CONSIDERATIONS AND EXCHANGE CONTROL."

## OFFERING OF THE SHARES

The Company is offering up to 5,000,000 shares (the "Shares"). The initial offering price on November 30, 1990 was U.S. $200 per Share. The Shares are being offered at a price equal to the Net Asset Value per Share (as defined) on the date of issuance. As of April 30, 2000, 3,760,278 Shares were issued and outstanding with a Net Asset Value per Share of $686.23 (subject to audit). The Shares may not be sold directly or indirectly to (i) natural persons who are citizens, nationals, or residents of, or institutions or other entities organized, created, formed, chartered or resident in, the United States of America, (ii) entities as to which any person or entity described in (i) above is, directly, or indirectly, a beneficiary, fiduciary, grantor or decedent, or (iii) institutions or other entities owned, in whole or in part, directly or indirectly by the persons or entities described in (i) or (ii) above ("U.S. persons"). No shares may be subject to an option held by a U.S. person. Any transfer of Shares to a U.S. person is prohibited and

Confidential Treatment Requested by HNAH

will be subject to immediate and compulsory redemption by the Company. See "TRANSFERS, REDEMPTIONS AND TERMINATION - Transfers."

The minimum initial purchase by each subscriber is U.S. $100,000, unless the Company deems it advisable to permit subscriptions for a lesser amount. The Company may reject any subscription, in whole or in part, in its discretion. All subscriptions, once made, are irrevocable to the subscriber.

All proceeds from the sale of Shares will be received by the Company in trust and will be deposited by the Company into segregated interest bearing accounts in the Company's name at the Company's escrow bank, Citco Bank Nederland, N.V. ("Citco").

The Company will offer its Shares on a continuous basis at a price equal to the Net Asset Value per Share as of the date of issuance. Subscriptions received during any monthly period will be accepted as of the first day of the following month. Thus, for example, subscriptions received between January 1 and January 31 will be accepted as of February 1. The Company reserves the right, in its discretion, to accept any subscription prior to such first day.

There are no underwriting arrangements with respect to the offering of Shares. All solicitations of subscriptions will be made directly by the Company or through the assistance of unaffiliated placement agents and money managers, who may charge a placement fee of up to 5% of the total amount of the subscriptions for Shares sold, and/or share in the fees earned by the Manager. The unaffiliated placement agents and money managers may rebate all or a portion of such fees to their clients.

The Company was admitted to the Official List of the Irish Stock Exchange, Dublin, Ireland, on January 12, 1995. The Company was issued SEDOL number 0-330-934. There can be no assurance that a trading market in the Company's Shares will develop. This listing does not affect shareholder redemption rights.

## NET ASSET VALUE DEFINED

Net Asset Value is defined as the Company's total assets including (i) all cash and cash equivalents, including bank deposits and interest bearing obligations (valued at cost plus accrued interest and discount), (ii) securities positions (valued at closing prices), and (iii) the liquidating value of all options positions, less total liabilities of the Company (utilizing generally accepted accounting principles as a guideline, consistently applied under the accrual method of accounting), except to the extent set forth below:

    1)  In the case of extraordinary circumstances which warrant a different valuation of any securities, such as an inability to liquidate existing positions, such securities will be valued at such prices as the Manager shall determine; and

    2)  The amount of any distribution or dividend made shall be a liability of the Company from the day when the distribution or dividend is declared until it is paid.

The Company's Board of Directors shall make all decisions on the valuation of assets and liabilities and determination of Net Asset Value.

Net Asset Value per Share is defined as the Net Asset Value divided by the number of Shares then outstanding.

Who Should Purchase/Subscription Procedure

Confidential Treatment Requested by HNAH                    HNAH-SEC-004997

SECSEK0001161

This offering is limited to non-U.S. persons who have the ability to speculate in high risk securities and for whom such a purchase is suitable in light of such person's financial condition. The Company will require as a condition to the acceptance of a subscription that the subscriber represent and warrant that he has a net worth in excess of U.S. $1,000,000 and is not a U.S. person.

Prospective subscribers should inform themselves as to the legal requirements within their own countries for the purchase of Shares and any foreign exchange or tax considerations relevant to such purchase.

As part of the Company's responsibility for the prevention of money laundering, the Company will require detailed verification of a prospective investor's identity to be included with its subscription application.

An individual will be required to produce a copy of a passport or identification card. Corporate applicants will be required to produce a certified copy of the certificate of incorporation (and any change of name), memorandum and articles of association (or other documents evidencing the existence of the legal entity), the register of directors or an excerpt from the trade register held at the relevant chamber of commerce and the signatory card verifying the authority of officers to sign on behalf of the corporate entity. Trusts and other entities which subscribe to the Company must demonstrate organizational documents which verify the existence of the entity and which verify the authority of one or more signatories to sign subscriptions on behalf of the entity.

The Company reserves the right to request such further information as is necessary to verify the identity of an applicant. In the event of delay or failure by the applicant to produce any information required for verification purposes, the Company may refuse to accept the application and the subscription moneys relating thereto.

In order to subscribe for Shares, subscribers must complete and sign the Share Application Form included in the Subscription Documents which accompany this Offering Memorandum, and indicate the dollar amount of Shares that are being purchased and mail them to Fairfield Sentry Limited, c/o Citco Fund Services (Europe) B.V., Strawinskylaan 1725, 1077 XX Amsterdam, P.O. Box 7241 1007 JE Amsterdam, The Netherlands; fax no.: (31) 20-675-0881.

Subscription funds of investors should be wire transferred to the Company's escrow account at:

<div style="margin-left:3em">

HSBC Bank USA
452 Fifth Avenue
New York, NY 10018
SWIFT: MRMDUS33
ABA: 021 001 088

| | |
|---|---|
| In favour: | Citco Bank Nederland N.V. |
| | SWIFT: CITCNL2A |
| Account No.: | Redacted 4212 |
| For further credit to: | Fairfield Sentry Limited |
| Account No.: | Redacted 3.797 |
| By Order of: | Name of Subscriber |

</div>

14 OF 39

Confidential Treatment Requested by HNAH

HNAH-SEC 001008
SECSEK0001162

In the event a subscriber cannot wire transfer funds, a check payable to "Fairfield Sentry Limited-- Escrow Account" in U.S. dollars denominated funds for the full purchase price of the Shares should be mailed to the Company with the Share Application Form.

## FEES, COMPENSATION AND EXPENSES

### START-UP EXPENSES

The initial offering and organization expenses (including legal and accounting fees), of approximately U.S. $5,000, were paid by the Company. Such expenses were amortized among the Company's shareholders during a period of five years from the date of the initial closing (November 30, 1990).

### EXPENSES

The Company will bear all of the continuing offering costs and all other expenses incurred in the operation of the Company, if any, including the ordinary and necessary expenses directly related to its investment and trading activities, all administration fees and all legal and auditing fees, including any legal and auditing fees that relate to extraordinary circumstances, such as tax examinations or litigation involving the Company.

### PERFORMANCE FEE

The Manager will receive, for each calendar quarter, a performance fee (the "Performance Fee") in an amount equal to 20% of the amount of any New High Net Profits earned by the Company. Shares which are purchased or redeemed during a calendar quarter shall be subject to the payment of the Performance Fee only for the portion of the quarter during which such Shares were outstanding. New High Net Profits are defined as the excess, if any, of, respectively, (A) the Net Asset Value as of the last day of a calendar quarter (before deduction of the current performance fee, if any, paid or payable) over (B) the difference between (i) the sum of (a) the highest Net Asset Value of the Company as of the last day of any preceding calendar quarter during which such share was outstanding, or the date of the initial closing of this offering (or if such Share was issued thereafter, as of the date of such issuance, whichever date the Net Asset Value was higher), and (b) the amount of any subscription proceeds for Shares issued as of, or subsequent to, the date thereof, and (ii) the amount of dividends, distributions and redemptions payable as of, or subsequent to, the date thereof, and losses, if any, associated with redeemed Shares. IN OTHER WORDS, PERFORMANCE FEES WILL ONLY BE PAID ON "NEW APPRECIATION" IN THE NET ASSET VALUE OF THE COMPANY. No Share will be subject to the payment of a Performance Fee until all Shares have recouped their respective loss carryovers; i.e., until the Net Asset Value of such Shares is at least as high as the previous highest Net Asset Value per Share.

Pursuant to its agreement with the Company, the Manager may elect to defer payment of all or portion of its Performance Fees.

Confidential Treatment Requested by HNAH

HNAH-SEC-004999

SECSEK0001163

FAIRFIELD SENTRY LIMITED                                    INFORMATION MEMORANDUM

## SALARIES AND OTHER PERSONNEL EXPENSES

Mr. Noel will not be compensated for serving as a director of the Company, but he and representatives of the Manager will be reimbursed by the Company for any out-of-pocket expenses they may incur in attending meetings of the Board of Directors or of shareholders. The directors not affiliated with the Management, of which there are at the present time two, will each be paid a fee of $5,000 per annum by the Company together with his out-of-pocket expenses in attending meetings of the Board of Directors or of shareholders.

## ESCROW BANK AND CUSTODIAN

The Company's escrow account is maintained at Citco Bank Nederland N.V. Citco Global Custody N.V. ("Citco Custody") has agreed to act as the custodian of the Company's assets. Bernard L. Madoff Investment Securities has entered into an agreement with Citco Custody pursuant to which Bernard L. Madoff Investment Securities will serve as a sub-custodian of the Company's assets.

## ADMINISTRATOR, REGISTRAR AND TRANSFER AGENT

Pursuant to an agreement between Citco and the Company, Citco serves as the administrator for the Company, under the overall direction of the Company's Board of Directors. As administrator, Citco has the responsibility for furnishing the day to day administrative services which the Company may require, such as: accounting services; maintaining the Company's books and records; preparation of reports and accounts; calculation of Net Asset Value and fees; communications with shareholders and/or governmental bodies; paying the Company's expenses; providing suitable facilities and procedures for handling dividends and distributions (if any) and the orderly liquidation and dissolution of the Company, if required.

To the extent that Citco relies on information supplied by the Company, any investee fund of the Company or any brokers engaged by the Company, in connection with making any of the aforementioned calculations, Citco's liability for the accuracy of such calculations is limited to the accuracy of its computations. Citco shall not be liable for the accuracy of the underlying data provided to it.

## RISK FACTORS

Among the substantial risk factors involved in a purchase of Shares in the Company are the following:
### TRADING RISKS.

Substantial risks are involved in the trading of equity securities and options. Market movements can be volatile and are difficult to predict. U.S. Government activities, particularly those of the Federal Reserve Board, can have a profound effect on interest rates which, in turn, substantially affect securities and options prices as well as the liquidity of such markets. Politics, recession, inflation, employment levels, trade policies, international events, war and other unforeseen events can also have significant

Confidential Treatment Requested by HNAH

HNAH-SEC-005000

SECSEK0001164

impact upon the prices of securities. A variety of possible actions by various government agencies also can inhibit the profitability of the Company's business or can result in losses. Such events, which can result in huge market movements and volatile market conditions, create the risk of catastrophic losses for the Company.

1. Various techniques are employed to attempt to reduce a portion of the risks inherent in the trading strategy utilized on behalf of the Company. The ability to achieve the desired effect through a particular technique is dependent upon many factors, including the liquidity of the market at the desired time of execution. Thus, substantial risk remains that the techniques employed on behalf of the Company cannot always be implemented or effective in reducing losses. At various times, the markets for exchange-listed equity securities and options and/or other securities may be "thin" or illiquid, making purchases or sales of securities or options at desired prices or in desired quantities difficult. The volume and volatility of trading in the market depend in part on general public interest and public opinion concerning economic conditions as well as the liquidity provided by market-makers and specialists. The liquidity of the market may also be affected by a halt in trading on a particular securities exchange or exchanges. Illiquid markets may make it difficult to have an order executed at a desired price.

2. Securities Trading is Speculative. Options, and sometimes, stock prices, may trade in a highly volatile manner. Price movements are influenced by, among other things, changing supply and demand relationships, governmental and trade programs and policies, and national and international political and economic events. The value of an option depends largely upon the likelihood of favorable price movements in the underlying interest in relation to the exercise price during the life of the option.

3. Trading Strategies May Not be Successful. There can be no assurance that any trading method employed on behalf of the Company will produce profitable results, and the past performance of the Company and the other funds managed by the Manager and its principals are not necessarily indicative of the future profitability of the Company. Profitable trading is often dependent on anticipating trends or trading patterns. In addition, markets experiencing random price fluctuations, rather than defined trends or patterns, may generate a series of losing trades. There have been periods in the past when the markets have been subject to limited and ill-defined price movements, and such periods may recur. Any factor, which may lessen major price trends (such as governmental controls affecting the markets), may reduce the prospect for future trading profitability.

4. Dependence Upon Principals and Bernard L. Madoff Investment Securities. The services of Messrs. Tucker and Noel and Bernard L. Madoff Investment Securities are essential to the continued operations of the Manager. If any of their services were no longer available, their absence would have an adverse impact upon an investment in the Company. The manager has delegated all investment management duties to Bernard L. Madoff Investment Securities. As a result, the Company is subject to the judgment, decisions and trading opinions of Bernard L. Madoff Investment Securities and has no control over the decisions implemented by Bernard L. Madoff Investment Securities.

5. Conflicts of Interest. The Manager's Directors and Bernard L. Madoff Investment Securities and its principals, are presently affiliated with and may in the future form and manage other investment entities (including, without limitation, investment

Confidential Treatment Requested by HNAH

HNAH-SEC-005001

SECSEK0001165

partnerships, investment companies and mutual funds) with substantially the same or different objectives as those of the Company. They may also make investments in securities for their own accounts. In addition, the Manager functions as the investment manager for unregistered foreign investment companies and as the commodity pool operator for entities in addition to the Company. Such activities could detract from the time that the Manager and its principals, and Bernard L. Madoff Investment Securities and its principals allocate to the affairs of the Company.

6.   Conflicts of Interest-Transaction Executions. Bernard L. Madoff Investment Securities, in its role as a market-maker, trades with the Company as principal. Bernard L. Madoff Investment Securities also makes the investment decisions on behalf of the Company through a grant of discretionary authority over the Company's account at Bernard L. Madoff Investment Securities. As a result of this discretionary authority, Bernard L. Madoff Investment Securities has the ability to use the Company's assets to enhance its market making function and no arm's length relationship exists between the Company and Bernard L. Madoff Investment Securities in the execution of stock and options transactions for the Company's account.

7.   Competition. The securities industry is highly competitive in the United States. Competition from other persons or entities involved in activities similar to those of the Company can restrict the ability of the Company to acquire positions at the prices deemed most beneficial to its overall trading strategies. Many such competing persons or entities are better capitalized and have more experience in trading than the Company. Moreover, the widespread use of computer-assisted trading systems for trading strategies can alter trading patterns or affect execution of trades to the detriment of the Company.

8.   Regulated Industries. The securities industry is highly regulated. The Company will not be directly subject to regulation by the SEC, national securities exchanges, or the Federal Reserve Board. However, the SEC regularly reviews the practices and procedures of the securities industry and the marketplace in general, and from time to time revise rules and regulations pertaining thereto. The exchanges engage in similar reviews and at times revise their rules. There can be no assurance whatsoever that any rules and regulations promulgated by the SEC, the Federal Reserve Board, the CFTC or the various securities exchanges or statutory amendments to the Securities Exchange Act of 1934 will not adversely impact the Company.

9.   Over-the-counter Options Transactions. A portion of the options transactions effected on behalf of the Company utilizes the over-the-counter market for their execution. Trading equity and index options in the over-the-counter market is subject to contra-party credit risk and is without the protections afforded by transactions effected through the Options Clearing Corporation, a registered clearing facility. Bernard L. Madoff Investment Securities does not act as a counter-party in the options transactions, nor has it ever done so in the past.

10.  Option Buyer's Risk of Loss of Entire Investment. An option is a wasting asset, which becomes worthless when the option expires. As the remaining life of an option shortens with the passage of time, its value is reduced until it reaches zero upon expiration. This means that the option buyer who neither sells it in the secondary market nor exercises it prior to expiration will lose his entire investment in the option.

Confidential Treatment Requested by HNAH                              HNAH-SEC-005002

SECSEK0001166

11. Arbitrage Transactions. Among the many risks of arbitrage transactions are that two or more buy or sell orders may not be able to be executed simultaneously at the desired prices, resulting in a loss being incurred on both sides of a multiple trade arbitrage transaction. Also, the transaction costs of arbitrage transactions can be especially significant because separate costs are incurred on each component of the combination. Consequently, a substantial favorable price movement may be required before a profit can be realized.

12. Assignment of Puts or Calls. Substantial losses may result under certain circumstances if a hedged position becomes a long or short position due to the assignment of the short put or short call portion of the hedged position. Under normal market conditions, the remaining portion of the previously hedged portion may be liquidated or otherwise adjusted to limit exposure to price changes. Suspension of trading of the option class or underlying securities followed by a price gap at the reopening of trading might result in substantial losses. The same would be true given an illiquid market such as that of October 1987.

13. Prohibition of Exercise Rights. The options markets have the authority to prohibit the exercise of particular options. If a prohibition on exercise is imposed at a time when trading in the option has also been halted, holders and writers of that option will be locked into their positions until one of the two restrictions has been lifted.

14. Limitation on Liability of the Manager. Pursuant to the Investment Management Agreement between the Company and the Manager, the Manager is not responsible for losses arising out of an error of judgment or simple negligence, but is only responsible for losses resulting from willful misfeasance, bad faith, gross negligence or a reckless disregard of its duties and obligations. Accordingly, Shareholder losses will not be recoverable from the Manager if they resulted from an erroneous decision made in good faith or simple negligence. In order for a Shareholder to obtain a recovery from the Manager, the Shareholder will have to demonstrate a high degree of misconduct on the part of the Manager. Such a high burden of proof may serve to effectively insulate the Manager from liability in the event a Shareholder suffers a loss in his investment in the Company.

15. Exchange Rate Risk. The Company will maintain its assets in U.S. dollars. The Net Asset Value per Share is determined in U.S. dollars. Non-dollar investors are subject to possible reduction in the value of their Shares due to changes in the rate of exchange between the U.S. dollar and their native currency.

## POTENTIAL CONFLICTS OF INTEREST

The Manager, its principals, and Bernard L. Madoff Investment Securities and its principals, may form and manage other investment entities (including without limitation investment partnerships, investment companies, mutual funds and offshore funds) in the future with substantially the same or different objectives as those of the Company. They may also make investments in securities for their own accounts. Such activities could detract from the time they allocate to the affairs of the Company and Bernard L. Madoff Investment Securities, as the case may be. Similarly, Messrs. Naess and Schmid, the non-affiliated directors, have other business interests and will not devote their entire time to the Company's affairs.

Confidential Treatment Requested by HNAH                    HNAH-SEC-005003

SECSEK0001167

FAIRFIELD SENTRY LIMITED                                      INFORMATION MEMORANDUM

## PRIOR TRADING RESULTS

The Company's securities trading activities, are directed by the Manager. Set forth below are the prior trading results of the Company since its inception. The trading results of the other entities for which the Manager or its affiliates have directed trading, or with which they have otherwise been affiliated, may be obtained upon request.

## THE COMPANY

The Company allocates its assets to an account at Bernard L. Madoff Investment Securities (not affiliated with the Company's Directors or FGL) which employs a strategy described as "split strike conversion". This strategy has defined risk and profit parameters which may be ascertained when the position is established. The transactions for a typical position would be (i) the purchase of a group or basket of equity securities that together will highly correlate to the S&P 100 Index (the "OEX"), (ii) the sale of out of the money OEX call options in an equivalent contract value dollar amount to the basket of equity securities purchased, and (iii) the purchase of an equivalent number of out of the money OEX put options. A call option is out of the money when its strike price is greater than the current price of the stock; a put option is out of the money when the strike price is lower than the current price of the stock. The basket typically consists of approximately 35 stocks in the S&P 100 Index. Sentry issued its shares at $200 per share. As of April 30, 2000, Net Asset Value per Share was $686.23 (subject to audit). Prior performance is shown below on a monthly basis through April 2000.

## Performance Tables

| Period | Beginning Net Asset Value (1) | Additions (2) | Withdrawals (3) | Net Profit/ Loss (4) | Ending Equity (5) | Rate of Return (6) | Shares Out-Standing |
|---|---|---|---|---|---|---|---|
| **1990** | | | | | | | |
| December | 4,363,400 | 8,157,216 | 0 | 123,779 | 12,644,395 | 2.84% | 61,478 |
| | | | RATE OF RETURN: 2.84 (1 month) | | | | |
| | | | | | | | |
| **1991** | | | | | | | |
| January | 12,644,395 | 0 | 0 | 388,941 | 13,033,336 | 3.08% | 61,478 |
| February | 13,033,336 | 0 | 0 | 190,582 | 13,223,918 | 1.46% | 61,478 |
| March | 13,223,918 | 605,364 | 315,447 | 77,222 | 13,591,057 | 0.58% | 62,618 |
| April | 13,591,057 | 1,799,968 | 0 | 189,610 | 15,580,635 | 1.40% | 71,023 |
| May | 15,580,635 | 0 | 0 | 293,006 | 15,873,641 | 1.88% | 71,023 |
| June | 15,873,641 | 4,848,334 | 0 | 58,587 | 20,780,562 | 0.37% | 92,636 |
| July | 20,780,562 | 0 | 0 | 423,819 | 21,204,381 | 2.04% | 92,636 |
| August | 21,204,381 | 0 | 0 | 226,959 | 21,431,340 | 1.07% | 92,636 |
| September | 21,431,340 | 5,533,746 | 793,533 | 170,115 | 26,341,668 | 0.79% | 112,964 |
| October | 26,341,668 | 0 | 0 | 742,835 | 27,084,503 | 2.82% | 112,964 |
| November | 27,084,503 | 0 | 0 | 21,668 | 27,106,171 | 0.08% | 112,964 |
| December | 27,106,171 | 5,514,647 | 21,703 | 441,219 | 33,040,334 | 1.63% | 135,489 |
| | | | RATE OF RETURN: 18.57% | | | | |
| **1992** | | | | | | | |
| January | 33,040,334 | 0 | 0 | 161,245 | 33,201,579 | 0.49% | 135,489 |
| February | 33,201,579 | 0 | 0 | 925,390 | 34,126,969 | 2.79% | 135,489 |
| March | 34,126,969 | 6,245,218 | 1,891,095 | 343,980 | 38,825,072 | 1.01% | 152,603 |
| April | 38,825,072 | 0 | 0 | 1,110,950 | 39,936,022 | 2.86% | 152,603 |
| May | 39,936,022 | 0 | 0 | -75,302 | 39,859,720 | -0.19% | 152,603 |
| June | 39,859,720 | 9,184,966 | 52,912 | 512,808 | 49,504,582 | 1.29% | 187,121 |
| July | 49,504,582 | 0 | 0 | -1,721 | 49,502,861 | 0.00% | 187,121 |
| August | 49,502,861 | 0 | 0 | 456,575 | 49,959,436 | 0.92% | 187,121 |

FAIRFIELD SENTRY LIMITED                                    INFORMATION MEMORANDUM

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| September | 49,959,436 | 20,978,110 | 26,806 | 199,047 | 71,109,787 | 0.40% | 265,279 |
| October | 71,109,787 | 0 | 0 | 995,069 | 72,104,856 | 1.40% | 265,279 |
| November | 72,104,856 | 0 | 0 | 1,026,781 | 73,131,637 | 1.42% | 265,279 |
| December | 73,131,637 | 4,636,235 | 0 | 1,043,369 | 78,811,241 | 1.43% | 281,860 |
| | | | | RATE OF RETURN: 14.66% | | | |
| **1993** | | | | | | | |
| January | 78,811,241 | 0 | 0 | -3,185 | 78,808,056 | 0.00% | 281,860 |
| February | 78,808,056 | 0 | 0 | 1,522,044 | 80,330,100 | 1.93% | 281,860 |
| March | 80,330,100 | 8,400,171 | 174,175 | 1,491,518 | 90,047,614 | 1.86% | 310,197 |
| April | 90,047,614 | 0 | 0 | 49,104 | 90,096,718 | 0.05% | 310,197 |
| May | 90,096,718 | 0 | 0 | 1,550,985 | 91,647,703 | 1.72% | 310,197 |
| June | 91,647,703 | 21,630,468 | 894 | 789,049 | 114,066,326 | 0.86% | 382,781 |
| July | 114,066,326 | 0 | 0 | 98,107 | 114,164,433 | 0.09% | 382,781 |
| August | 114,164,433 | 0 | 0 | 2,028,739 | 116,193,172 | 1.78% | 382,781 |
| September | 116,193,172 | 20,148,879 | 30,460 | 403,068 | 136,714,659 | 0.35% | 448,829 |
| October | 136,714,659 | 0 | 0 | 2,422,330 | 139,136,989 | 1.77% | 448,829 |
| November | 139,136,989 | 0 | 0 | 359,063 | 139,496,052 | 0.26% | 448,829 |
| December | 139,496,052 | 20,144,941 | 5,522,656 | 632,176 | 154,750,513 | 0.45% | 495,664 |
| | | | | RATE OF RETURN: 11.66% | | | |
| **1994** | | | | | | | |
| January | 154,750,513 | 2,499,475 | 0 | 3,373,291 | 160,623,279 | 2.18% | 503,499 |
| February | 160,623,279 | 3,744,520 | 300,070 | 575,550 | 163,492,179 | 0.36% | 514,335 |
| March | 163,492,179 | 11,896,109 | 1,747,663 | 2,478,735 | 176,119,360 | 1.52% | 545,785 |
| April | 176,119,360 | 0 | 0 | 3,198,300 | 179,317,660 | 1.82% | 545,785 |
| May | 179,317,660 | 6,489,179 | 0 | 945,192 | 186,752,031 | 0.53% | 565,536 |
| June | 186,752,031 | 19,912,627 | 10,049,903 | 513,368 | 197,128,123 | 0.27% | 595,215 |
| July | 197,128,123 | 2,644,775 | 3,306,812 | 3,510,400 | 199,976,486 | 1.78% | 593,251 |
| August | 199,976,486 | 3,502,115 | 0 | 838,982 | 204,317,583 | 0.42% | 603,597 |
| September | 204,317,583 | 11,949,985 | 8,944,492 | 1,678,318 | 209,001,394 | 0.82% | 612,412 |
| October | 209,001,394 | 3,009,728 | 165,160 | 3,936,829 | 215,782,791 | 1.88% | 620,593 |
| November | 215,782,791 | 4,272,314 | 1,342,682 | -1,194,329 | 217,518,094 | -0.55% | 629,065 |
| December | 217,518,094 | 8,349,741 | 13,253,982 | 1,437,665 | 214,051,518 | 0.66% | 614,975 |
| | | | | RATE OF RETURN: 11.49% | | | |
| **1995** | | | | | | | |
| January | 214,051,518 | 6,531,360 | 0 | 1,965,645 | 222,548,523 | 0.92% | 633,569 |
| February | 222,548,523 | 4,036,226 | 5,746,065 | 1,690,996 | 222,529,680 | 0.76% | 628,738 |
| March | 222,529,680 | 5,847,319 | 2,605,471 | 1,875,588 | 227,647,116 | 0.84% | 637,821 |
| April | 227,647,116 | 3,703,035 | 541,500 | 3,841,022 | 234,649,673 | 1.69% | 646,532 |
| May | 234,649,673 | 2,689,810 | 19,566 | 4,033,842 | 241,353,759 | 1.72% | 653,765 |
| June | 241,353,759 | 3,704,370 | 6,314,199 | 1,213,061 | 239,956,991 | 0.50% | 646,731 |
| July | 239,956,991 | 2,150,152 | 2,805,737 | 2,598,436 | 241,899,842 | 1.08% | 644,983 |
| August | 241,899,842 | 7,987,906 | 1,397,472 | 381,765 | 248,108,511 | -0.16% | 662,583 |
| September | 248,108,511 | 1,282,270 | 9,927,218 | 4,226,087 | 243,689,650 | 1.70% | 639,883 |
| October | 243,689,650 | 6,278,096 | 5,869,513 | 3,891,193 | 247,989,426 | 1.60% | 640,939 |
| November | 247,989,426 | 11,786,986 | 6,303,763 | 1,259,638 | 254,732,287 | 0.51% | 655,039 |
| December | 254,732,287 | 3,504,248 | 7,797,963 | 2,803,763 | 253,242,335 | 1.10% | 644,118 |
| | | | | RATE OF RETURN: 12.96% | | | |
| **1996** | | | | | | | |
| January | 253,242,335 | 5,112,706 | 8,125,743 | 3,770,800 | 254,000,098 | 1.49% | 636,552 |
| February | 254,000,098 | 4,326,423 | 2,796,660 | 1,852,111 | 257,381,973 | 0.73% | 640,358 |
| March | 257,381,973 | 7,631,216 | 5,905,689 | 3,159,206 | 262,266,706 | 1.23% | 644,599 |
| April | 262,266,706 | 8,582,153 | 1,596,537 | 1,679,848 | 270,932,170 | 0.64% | 661,660 |
| May | 270,932,170 | 14,474,663 | 1,167,224 | 3,811,955 | 288,051,564 | 1.41% | 693,708 |
| June | 288,051,564 | 42,775,784 | 4,014,666 | 623,922 | 327,436,607 | 0.22% | 786,854 |
| July | 327,436,607 | 8,106,296 | 5,108,487 | 6,288,688 | 336,723,104 | 1.92% | 793,922 |
| August | 336,723,104 | 36,219,104 | 2,654,122 | 919,606 | 371,207,692 | 0.27% | 872,846 |
| September | 371,207,692 | 62,038,406 | 3,235,919 | 4,531,387 | 434,541,566 | 1.22% | 1,009,444 |
| October | 434,541,566 | 12,036,849 | 709,111 | 4,782,259 | 450,651,563 | 1.10% | 1,035,472 |
| November | 450,651,563 | 30,780,959 | 6,293,629 | 7,097,233 | 482,236,126 | 1.57% | 1,090,865 |
| December | 482,236,126 | 29,746,295 | 11,515,954 | 2,297,036 | 502,763,503 | 0.48% | 1,131,908 |
| | | | | RATE OF RETURN: 12.97% | | | |
| **1997** | | | | | | | |
| January | 502,763,503 | 43,243,168 | 9,536,924 | 12,300,790 | 548,770,537 | 2.45% | 1,205,981 |
| February | 548,770,537 | 39,643,333 | 1,057,113 | 4,014,291 | 591,371,048 | 0.73% | 1,290,157 |
| March | 591,371,048 | 64,512,292 | 6,494,470 | 5,097,281 | 654,486,151 | 0.86% | 1,415,649 |
| April | 654,486,151 | 42,440,532 | 4,216,998 | 7,629,767 | 700,339,452 | 1.17% | 1,497,373 |

Confidential Treatment Requested by HNAH

HNAH-SEC-005005

SECSEK0001169

FAIRFIELD SENTRY LIMITED                                    INFORMATION MEMORANDUM

| Month | | | | | | | |
|---|---|---|---|---|---|---|---|
| May | 700,339,452 | 31,659,013 | 787,664 | 4,421,919 | 735,632,720 | 0.63% | 1,562,964 |
| June | 735,632,720 | 69,112,559 | 6,804,423 | 9,893,080 | 807,833,936 | 1.34% | 1,693,613 |
| July | 807,833,936 | 52,481,196 | 8,178,631 | 6,041,458 | 858,177,959 | 0.75% | 1,785,804 |
| August | 858,177,959 | 36,666,097 | 21,752,715 | 2,965,872 | 876,057,213 | 0.35% | 1,816,730 |
| September | 876,057,213 | 27,840,464 | 9,288,074 | 20,947,631 | 915,557,234 | 2.39% | 1,654,305 |
| October | 915,557,234 | 29,687,157 | 4,818,657 | 5,081,365 | 945,507,099 | 0.56% | 1,904,394 |
| November | 945,507,099 | 24,605,224 | 9,721,179 | 14,717,179 | 975,108,323 | 1.56% | 1,933,913 |
| December | 975,108,323 | 30,971,574 | 24,902,843 | 4,122,122 | 985,299,175 | 0.42% | 1,945,897 |
| | | | RATE OF RETURN: 14.00% | | | | |
| **1998** | | | | | | | |
| January | 985,299,175 | 64,128,161 | 4,125,194 | 8,991,182 | 1,054,293,324 | 0.91% | 2,063,329 |
| February | 1,054,293,324 | 54,230,671 | 11,143,328 | 13,636,704 | 1,111,017,371 | 1.29% | 2,146,992 |
| March | 1,111,017,371 | 95,721,424 | 26,362,202 | 19,466,433 | 1,199,843,026 | 1.75% | 2,278,277 |
| April | 1,199,843,026 | 106,333,505 | 13,744,299 | 5,071,699 | 1,297,504,131 | 0.42% | 2,453,347 |
| May | 1,297,504,131 | 79,146,772 | 10,310,446 | 22,781,809 | 1,389,122,266 | 1.76% | 2,581,258 |
| June | 1,389,122,266 | 116,150,874 | 5,809,550 | 17,825,450 | 1,517,288,940 | 1.28% | 2,783,083 |
| July | 1,517,288,940 | 118,183,377 | 13,707,714 | 12,612,398 | 1,634,377,001 | 0.85% | 2,973,907 |
| August | 1,634,377,001 | 46,389,989 | 36,074,223 | 4,555,854 | 1,649,248,621 | 0.28% | 2,992,510 |
| September | 1,649,248,621 | 40,386,702 | 98,307,437 | 17,204,958 | 1,608,532,844 | 1.04% | 2,888,457 |
| October | 1,608,532,844 | 41,783,296 | 103,128,044 | 31,021,732 | 1,578,209,828 | 1.93% | 2,780,384 |
| November | 1,578,209,828 | 70,996,507 | 17,958,632 | 13,314,829 | 1,644,562,531 | 0.85% | 2,873,218 |
| December | 1,644,562,531 | 104,933,982 | 22,984,058 | 5,415,708 | 1,731,928,163 | 0.33% | 3,013,350 |
| | | | RATE OF RETURN: 13.42% | | | | |
| **1999** | | | | | | | |
| January | 1,731,928,163 | 45,092,968 | 18,524,174 | 35,594,045 | 1,794,091,002 | 2.06% | 3,061,038 |
| February | 1,794,091,002 | 111,903,663 | 20,600,407 | 3,148,148 | 1,888,542,407 | 0.18% | 3,126,576 |
| March | 1,888,542,407 | 91,072,350 | 128,559,324 | 43,277,106 | 1,894,332,539 | 2.29% | 3,154,158 |
| April | 1,894,332,539 | 111,884,699 | 4,451,465 | 6,774,495 | 2,008,540,268 | 0.36% | 3,332,402 |
| May | 2,008,540,268 | 58,868,950 | 18,051,157 | 30,391,176 | 2,079,749,237 | 1.51% | 3,399,115 |
| June | 2,079,749,237 | 62,267,285 | 19,845,772 | 36,687,904 | 2,158,858,654 | 1.76% | 3,466,605 |
| July | 2,158,858,654 | 59,033,936 | 19,938,726 | 9,189,869 | 2,207,143,733 | 0.43% | 3,529,768 |
| August | 2,207,143,733 | 45,330,076 | 9,376,222 | 20,742,718 | 2,263,840,305 | 0.94% | 3,589,145 |
| September | 2,263,840,305 | 42,067,369 | 41,179,552 | 16,517,273 | 2,281,245,395 | 0.73% | 3,587,770 |
| October | 2,281,245,395 | 77,425,625 | 17,954,855 | 25,426,891 | 2,366,143,055 | 1.11% | 3,680,638 |
| November | 2,366,143,055 | 57,783,705 | 31,873,529 | 38,078,419 | 2,430,131,650 | 1.61% | 3,720,304 |
| December | 2,430,131,650 | 47,002,695 | 21,613,195 | 9,506,086 | 2,465,027,236 | 0.39% | 3,759,022 |
| | | | RATE OF RETURN: 14.19% | | | | |
| **2000** | | | | | | | |
| January | 2,465,027,236 | 64,235,939 | 27,573,080 | 54,317,122 | 2,556,007,217 | 2.20% | 3,813,277 |
| February | 2,556,007,217 | 91,327,878 | 113,405,417 | 5,086,674 | 2,539,016,352 | 0.20% | 3,780,849 |
| March | 2,539,016,352 | 108,078,165 | 127,090,606 | 46,758,544 | 2,566,762,455 | 1.84% | 3,753,050 |
| April | 2,566,762,455 | 61,042,682 | 56,082,334 | 8,679,314 | 2,580,402,117 | 0.34% | 3,760,278 |
| | | | RATE OF RETURN: 4.65% (4 Months) | | | | |

Confidential Treatment Requested by HNAH                          HNAH-SEC-005006

SECSEK0001170

FAIRFIELD SENTRY LIMITED                                                    INFORMATION MEMORANDUM

## NOTES TO TABLE

1) Beginning Net Asset Value represents the sum of cash, cash equivalents and equity balances in trading accounts accounted for at fair market value. Beginning Net Asset Value is the same as the previous reporting period's Ending Equity.

2) Additions are the sum of capital contributions as of the last day of the reporting period.

3) Withdrawals are the sum of partial or total withdrawals of capital as of the last day of the reporting period.

4) Net Profit/Loss is the sum of the profits and losses realized from trading activities during the reporting period net of the quarterly performance fee (20% of new high net profits) for the reporting period paid to FIM, which has been allocated monthly for purposes of this chart.

5) Ending Equity is the sum of Beginning Net Asset Value plus additions, minus withdrawals, and Net Profit/(Loss) for the reporting period. Ending Equity is the Beginning Net Asset Value for the following reporting period.

6) Rate of Return is calculated by dividing Net Profit/(Loss) for the reporting period by the Beginning Net Asset Value for that reporting period. The cumulative Rate of Return figures which appear at the end of each year are calculated by applying on a compound basis each of the monthly or quarterly rates of return for such year to the Beginning Net Asset Value at the beginning of such year, not by adding or averaging the rates of return.

Confidential Treatment Requested by HNAH                                        HNAH-SEC-005007

SECSEK0001171

FAIRFIELD SENTRY LIMITED                                    INFORMATION MEMORANDUM

## DESCRIPTION OF SHARES

The Company is authorized to issue up to 5,000,000 shares of common stock, with par value of U.S. $.01. The Company has an authorized share capital of U.S. $50,000. The Shares will be issued in book entry form, unless delivery of the Shares in registered form is requested. Shares will not be issued in bearer form. Each Share, when issued, will be fully paid and non-assessable.

Holders of Shares are entitled to one vote per Share and will participate on a pro rata basis in the assets of the Company on liquidation and in dividends and other distributions as declared.

## DIVIDEND POLICY

Since the business objective of the Company is directed toward achieving capital appreciation, it is anticipated that the Company will not declare any dividends or make any distributions to its shareholders. Subject to the foregoing and to applicable law, the Company's Board of Directors will have sole discretion in determining the amount and frequency of dividend distributions, if any

## TRANSFERS, REDEMPTIONS AND TERMINATION

### TRANSFERS

NO SALE OR TRANSFER OF SHARES WILL BE PERMITTED WITHOUT THE COMPANY'S CONSENT; HOWEVER, SHARES MAY BE REDEEMED AS OF THE LAST DAY OF EACH MONTH OF EACH YEAR.

Any sale or transfer of a shareholder's entire interest in any Shares or any transfer of Shares by operation of law must be submitted to the Company for consent and will not be effective until such consent is given by the Company. Any other dealing with Shares by way of assignment, pledge, mortgage or otherwise is prohibited unless consented to by the Company and any attempt to do so without first obtaining the Company's consent, which may be withheld in the sole and exclusive discretion of the Company, will constitute grounds for compulsory redemption of the Shares concerned as of the next permissible redemption date (as described below) and the imposition of a processing charge of 2% of the Net Asset Value with respect to such redemption. Any application to record a transfer of Shares, including an application to record a transfer by operation of law, if not approved by the Company within 30 days, also will be treated as an application to redeem the Shares in question as of the next permissible redemption date and will be subject to a processing charge per share of 2% of the Net Asset Value per Share. The Company's shares are listed on the Irish Stock Exchange, Dublin, Ireland. There can be no assurance that a trading market in the Company's Shares will develop. Shareholder redemption rights, as set forth below, are not affected by the Company's Shares being listed on the Irish Stock Exchange.

THE DISPOSITION OF SHARES TO U.S. PERSONS (AS DEFINED UNDER "OFFERING OF SHARES") WITHOUT THE PRIOR WRITTEN APPROVAL OF THE COMPANY IS EXPRESSLY PROHIBITED, AND THE COMPANY SHALL HAVE THE RIGHT COMPULSO-

24 OF 39

Confidential Treatment Requested by HNAH

HNAH-SEC-005008

SECSEK0001172

RILY AND IMMEDIATELY TO REDEEM ANY SHARES HELD FOR ANY REASON BY U.S. PERSONS.

## REDEMPTION AT THE OPTION OF THE SHAREHOLDERS

A shareholder may cause part or all of his Shares to be redeemed as of the last day of each month of each year, provided that the Company shall be in receipt of written notice of redemption for at least ten (10) business days prior to such redemption date. In the Company's discretion, a shareholder requesting redemption of part of his Shares may be required to redeem all of his Shares unless such shareholder notifies the Company to cancel the redemption.

## COMPULSORY REDEMPTION

The Company reserves the right to call all or a part of a shareholder's Shares for redemption at any time for any reason or no reason. Except as set forth above, no processing charge will be imposed with respect to any Shares so compulsorily redeemed.

## REDEMPTIONS - GENERAL INFORMATION

Redemptions will be at the Net Asset Value per Share, subject to any applicable processing charge, as described above. If notice of intent voluntarily to redeem is not received by the Company within the prescribed period of time, then in the Company's discretion, the redemption date may be deferred to the end of the next following permissible redemption period, unless the shareholder notifies the Company to cancel the redemption. Except in the case of extraordinary circumstances, such as an inability to liquidate existing positions, or the default or delay in payments due the Company from brokers, banks or other persons, payment on redemptions will be made within 30 days after the redemption date. The Company will not pay interest to the redeeming shareholder on any payment.

Shareholders bear the risk of any decline in Net Asset Value from the date notice of intent to redeem is given until the redemption date. In addition, the Company reserves the right temporarily to suspend any redemption if the effect of substantial redemptions would seriously impair the Company's ability to operate. Requests for redemption can be made by use of the form included in the Subscription Documents, which accompany this Offering Memorandum.

## TERMINATION

The shareholders may, by a majority vote, elect to wind up and dissolve the Company at any time. If the Company's Board of Directors determines that it would be in the best interests of the Company to wind up and dissolve the Company at any time, it will recommend to the shareholders that they vote to do so, and will submit a plan of dissolution for approval by the shareholders.

## TAX CONSIDERATIONS AND EXCHANGE CONTROL

Under current legislation in the British Virgin Islands (the "BVI"), there should be no income tax, capital gains or withholding tax, estate duty or inheritance tax payable by the Company or its shareholders who are not residents or citizens of the BVI, in respect of their Shares.

There are no exchange control restrictions in the BVI. Accordingly, the Company will be free to acquire, to hold and to sell any foreign currency and securities without restriction.

Confidential Treatment Requested by HNAH

HNAH-SEC-005009

SECSEK0001173

The Company's gains from its trading in stocks, options or other investments should not be subject to United States federal income, branch or withholding taxes because the Company expects that it will not be engaged (or be treated as engaging) in a "trade or business" in the United States, or will not be treated as a personal holding company, for United States federal income tax purposes. Any dividend income received by the Company from U.S. corporations generally will be subject to United States federal withholding taxes. Although substantially all of the interest earned by the Company from sources within the United States is expected to be of the type which will not be subject to United States federal income, branch or withholding taxes, the Company may earn interest from time to time that could be subject to United States federal income, branch or with-holding taxes (al-though it is not expected that the amount of such taxes would be material). In addition, with respect to Shares held by non-U.S. persons who are not engaged in a "trade or business" in the United States (as defined under the Internal Revenue Code ["Code"]), such persons should not be subject to United States federal income, branch or withholding taxes (i) on dividends paid to them by the Company and (ii) on the redemption of their Shares by the Company. The Company expects that it will not be subject to state and local taxes in the United States on its income or capital. Because of the absence of full guidance under state and local law, however, this result is not entirely clear. The conclusions in this paragraph are based on the Code and existing laws, judicial decisions and administrative regulations, rulings and practice in the United States, all of which are subject to change.

Prospective subscribers should consult their professional advisors on the possible tax consequences of subscribing for, buying, holding, selling, transferring or redeeming Shares under the laws of their country of citizenship, residence or domicile.

## LEGAL MATTERS

Legal matters in connection with this offering have been passed upon for the Company in the United States by Andrew E. Goldstein, Esq., 909 Third Avenue, 18th Floor, New York, New York 10022.

## MISCELLANEOUS

### REPORTS AND FINANCIAL STATEMENTS

The Company's fiscal year will end on December 31, except that the Company's final fiscal year will terminate on the date the Company is placed in liquidation. The Company will keep its books on an accrual basis. Audited financial statements of the Company will be mailed to shareholders at their registered addresses, normally within 120 days after year-end. At the same time, each shareholder shall be furnished with an annual report of the Company, which will include the Net Asset Value of the Company and the Net Asset Value per Share at the end of the year, and such other information as the Company, in its discretion, determines to be necessary or appropriate. Shareholders also will receive unaudited quarterly letters with respect to the Company's financial performance.

### DOCUMENTS AVAILABLE FOR INSPECTION

The Company's books of account and all material documents, including copies of the Company's Memorandum of Association and Articles of Association, the Company's Agreement with the Bank and

Confidential Treatment Requested by HNAH                          HNAH-SEC-005010

SECSEK0001174

FAIRFIELD SENTRY LIMITED                                INFORMATION MEMORANDUM

with the Administrator, Registrar and Transfer Agent shall each by kept at the Company's business
office in the British Virgin Islands and each share-holder (or any duly constituted designee of a share-
holder) shall have, at all times during reason-able business hours, free access to such documents.

Confidential Treatment Requested by HNAH

HNAH-SEC-005011

SECSEK0001175

FAIRFIELD SENTRY LIMITED                                    INFORMATION MEMORANDUM

**APPENDIX – A Financial Statements**

28 OF 39

Confidential Treatment Requested by HNAH                    HNAH-SEC-005012

SECSEK0001176

Directors' report and
financial statements for the year
ended December 31, 2000
Fairfield Sentry Limited
Road Town, Tortola
British Virgin Islands

Confidential Treatment Requested by HNAH

HNAH-SEC-005013

SECSEK0001177

# Contents

| | | |
|---|---|---|
| 1 | **Directors and other information** | 3 |
| 1.1 | Directors and other information | 4 |
| | | |
| 2 | **Directors' report** | 5 |
| 2.1 | Directors' report | 6 |
| | | |
| 3 | **Financial statements** | 7 |
| 3.1 | Balance sheet as at December 31, 2000 | 8 |
| 3.2 | Statement of operations for the year ended December 31, 2000 | 9 |
| 3.3 | Cash flow statement for the year ended December 31, 2000 | 10 |
| 3.4 | Statement of changes in net assets for the year ended December 31, 2000 | 11 |
| 3.5 | Statement of changes in equity for the year ended December 31, 2000 | 12 |
| 3.6 | Notes to the financial statements | 13 |
| | Auditors' report | |

B0740.rap

*Fairfield Sentry Limited,*
*Road Town, Tortola, British Virgin Islands*



Confidential Treatment Requested by HNAH

1    Directors and other information

*Fairfield Sentry Limited,*
*Road Town, Tortola, British Virgin Islands*



Confidential Treatment Requested by HNAH

1.1    Directors and other information

**Directors**
Mr Walter M Noel, Jr
Mr Jan. R. Naess
Mr Peter P. Schmid

**Custodian**
Citco Global Custody
P.O. Box 7243
1007 JE Amsterdam

**Administrator, secretary and registrar**
Citco Fund Services (Europe) B V
World Trade Center
Tower B, 17th floor
Strawinskylaan 1725
P.O. Box 7241
1077 JB Amsterdam
The Netherlands

**Legal advisor**
Andrew E. Goldstein, Esq.
909 Third Avenue, 17th floor
New York, New York 10022
USA

**Investment manager**
Fairfield Greenwich Limited
399 Park Avenue, 36th floor
New York, New York 10022
USA

**Auditors**
PricewaterhouseCoopers N V.
Hofplein 19
P.O. Box 881
3000 AW Rotterdam
The Netherlands

*Fairfield Sentry Limited,*
*Road Town, Tortola, British Virgin Islands*



Confidential Treatment Requested by HNAH

HNAH-SEC-005016

SECSEK0001180

2     Directors' report

*Fairfield Sentry Limited,*
*Road Town, Tortola, British Virgin Islands*

Confidential Treatment Requested by HNAH



HNAH-SEC-005017

SECSEK0001181

### 2.1   Directors' report

Results for 2000 were satisfactory. Expenses, including performance fees, were 20.2% of gross income, approximately the same as the last two years. Declines in U.S. equities during the latter portion of the year resulted in a charge to earnings, for the year, from trading activities in equities, of (37.2%). These losses were offset by gains associated with hedging transactions, the purchase and sale of put and call options on the S&P 100 Index. The gains from hedging offset all the losses from trading in the equity markets, and represented approximately 81.6% of gains earned by the company. Income from investments in U S. Treasury investments accounted for 29.3% of net gains.

The trading strategy of the company requires a favourable environment for its implementation. The elements of a favourable environment include liquidity and volatility in the equity markets. Both elements were adequate during most of 2000 and the prospects for the future appear to be satisfactory. However, further significant, protracted deterioration of the U.S. equity markets, could impact upon liquidity.

The strategy also requires the ability to access low cost execution for the stock and options transactions. The competition for execution business in the U.S. is very intense. Consequently, the cost of trading has been well controlled, and should be maintained for the foreseeable future.

The company's asset size has grown significantly during the past 36 months. While liquidity in the U.S. equity markets has also increased during this period, the asset size of the company could have an adverse impact on its results, particularly in the event of reduced liquidity and volatility in the equity markets.

Finally, the company has two large institutional investors, each of whom owns in excess of 6% of the capital of the company. A redemption by either investor would require a significant liquidation of the company's positions. At the present time such a redemption would likely be accomplished without a material impact on the affairs of the company.

*Fairfield Sentry Limited,*
*Road Town, Tortola, British Virgin Islands*



Confidential Treatment Requested by HNAH

3    Financial statements

*Fairfield Sentry Limited,*
*Road Town, Tortola, British Virgin Islands*



Confidential Treatment Requested by HNAH

### 3.1    Balance sheet as at December 31, 2000

|  | 2000 | | 1999 |
|---|---|---|---|
|  | USD'000 | USD'000 | USD'000 | USD'000 |
| **Assets** | | | | |
| Due from banks and brokers (Note 3.6.3) | 22,017 | | 44,808 | |
| Investments (Note 3.6.4) | 3,076,613 | | 2,434,042 | |
| Loans receivable (Note 3.6 5) | 3,429 | | 5,429 | |
| Accounts receivable (Note 3 6.6) | 10,604 | | 308 | |
| **Total assets** | | 3,112,663 | | 2,434,337 |
| **Liabilities** | | | | |
| Subscriptions received in advance | 20,917 | | 26,816 | |
| Fees payable and accrued expenses (Note 3.6.7) | 15,612 | | 18,433 | |
| | | 36,529 | | 45,249 |
| **Equity (Note 3.5)** | | | | |
| Share capital | 42 | | 37 | |
| Additional paid-in capital | 2,125,932 | | 1,783,756 | |
| Retained earnings | 950,160 | | 655,845 | |
| | | 3,076,134 | | 2,439,638 |
| **Total equity and liabilities** | | 3,112,663 | | 2,484,887 |

The accompanying notes are an integral part of these financial statements.

Road Town, Tortola, May 7, 2001

Jan R. Naess, Director

Walter M. Noel. Jr., Director

Peter P Schmid, Director

*Fairfield Sentry Limited,*
*Road Town, Tortola, British Virgin Islands*

Confidential Treatment Requested by HNAH

HNAH-SEC-005020

SECSEK0001184

### 3.2    Statement of operations for the year ended December 31, 2000

|  | 2000 |  | 1999 |
|---|---|---|---|
|  | USD'000 | USD'000 | USD'000 | USD'000 |
| **Net increase in value of investments (Note 3.6.4)** |  |  |  |  |
| Realised gains on investments | 360,023 |  | 355,924 |  |
| Change in unrealised loss on investments | (145) |  | 0 |  |
|  |  | 359,878 |  | 355,924 |
| **Investment income** |  |  |  |  |
| Interest | 3,388 |  | 2,189 |  |
| Dividend | 5,684 |  | 6,806 |  |
| Other income | 3 |  | 0 |  |
|  |  | 9,075 |  | 8,995 |
| **Expenses (Note 3.6.7)** |  |  |  |  |
| Performance fees | 73,575 |  | 68,833 |  |
| Administration fees | 840 |  | 498 |  |
| Professional fees | 42 |  | 65 |  |
| Bank and broker expenses | 80 |  | 64 |  |
| Custody fee | 52 |  | 107 |  |
| Directors' fees | 10 |  | 10 |  |
| Other expenses | 39 |  | 8 |  |
|  |  | 74,638 |  | 69,585 |
| **Net result** |  | 294,315 |  | 275,334 |
| **Earnings per share** |  | 0.0750 |  | 0.0911 |

The accompanying notes are an integral part of these financial statements.

*Fairfield Sentry Limited,*
*Road Town, Tortola, British Virgin Islands*



Confidential Treatment Requested by HNAH

HNAH-SEC-005021

SECSEK0001185

### 3.3 Cash flow statement for the year ended December 31, 2000

|  | 2000 | | | 1999 |
|---|---|---|---|---|
|  | USD'000 | USD'000 | USD'000 | USD'000 |
| Net result for the year | 294,315 |  | 275,334 |  |
| **Changes in assets and liabilities** |  |  |  |  |
| Accounts receivable | (9,796) |  | (733) |  |
| Fees payable and accrued expenses | (2,821) |  | 5,875 |  |
| Loans receivable | 3,000 |  | (5,779) |  |
| Net cash from operating activities |  | 284,698 |  | 274,697 |
| **Cash flows from investing activities** |  |  |  |  |
| Net change in unrealised loss on investments | 145 |  | 0 |  |
| Net realised gains on investments | (360,023) |  | (335,924) |  |
| Purchase of investments | (48,962,564) |  | (30,990,885) |  |
| Sale of investments | 48,678,871 |  | 30,555,085 |  |
| Net cash used in investing activities |  | (643,571) |  | (771,724) |
| **Cash flows from financing activities** |  |  |  |  |
| Subscriptions received in advance | (5,899) |  | (56,379) |  |
| Issue of participating shares | 1,024,869 |  | 867,665 |  |
| Redemption of participating shares | (682,688) |  | (353,339) |  |
| Net cash from financing activities |  | 336,282 |  | 457,947 |
| Net decrease in cash and cash equivalents |  | (22,591) |  | (39,080) |
| Cash and cash equivalents at beginning of year |  | 44,608 |  | 83,688 |
| Cash and cash equivalents at end of year |  | 22,017 |  | 44,608 |

The accompanying notes are an integral part of these financial statements.

*Fairfield Sentry Limited,*
*Road Town, Tortola, British Virgin Islands*



Confidential Treatment Requested by HNAH

3.4    Statement of changes in net assets for the year ended December 31, 2000

|  | 2000 | | | 1999 |
|---|---|---|---|---|
|  | USD'000 | USD'000 | USD'000 | USD'000 |
| **Investment activities** | | | | |
| Net result | | 294,315 | | 275,334 |
| **Capital transactions** | | | | |
| Issue of participating shares | 1,024,869 | | 867,665 | |
| Redemption of participating shares | (682,688) | | (353,339) | |
|  | | 342,181 | | 514,326 |
| **Increase in net assets during the year** | | 636,496 | | 789,660 |
| Net asset value at beginning of the year | | 2,439,638 | | 1,649,978 |
| **Net asset value at end of the year** | | 3,076,134 | | 2,439,638 |
| **Number of shares outstanding at end of the year** | | 4,205,327.56 | | 3,720,304.09 |
| **Net asset value per share** | | 731,4849 | | 655,7630 |

The accompanying notes are an integral part of these financial statements.

*Fairfield Sentry Limited,*
*Road Town, Tortola, British Virgin Islands*



Confidential Treatment Requested by HNAH

HNAH-SEC-005023

SECSEK0001187

3.5    Statement of changes in equity for the year ended December 31, 2000

|  | Share capital | Additional paid-in capital | Retained earnings | Total equity |
|---|---|---|---|---|
|  | USD'000 | USD'000 | USD'000 | USD'000 |
| Balance as at January 1, 1999 | 29 | 1,269,438 | 380,511 | 1,649,978 |
| Subscriptions | 14 | 867,651 |  | 867,665 |
| Redemptions | (6) | (353,333) |  | (353,339) |
| Net result for the year |  |  | 275,334 | 275,334 |
| Balance as at December 31, 1999 | 37 | 1,783,756 | 655,845 | 2,439,638 |
| Subscriptions | 15 | 1,024,854 |  | 1,024,869 |
| Redemptions | (10) | (682,678) |  | (682,688) |
| Net result for the year |  |  | 294,315 | 294,315 |
| Balance as at December 31, 2000 | 42 | 2,125,932 | 950,160 | 3,076,134 |

The accompanying notes are an integral part of these financial statements.

*Fairfield Sentry Limited,*
*Road Town, Tortola, British Virgin Islands*



Confidential Treatment Requested by HNAH

3.6    Notes to the financial statements

*3.6.1    General*

Fairfield Sentry Limited ('the Company') was incorporated in the British Virgin Islands on October 30, 1990 under the provisions of The Mutual Funds Law of the British Virgin Islands. The Company begun operations on October 30, 1990. The first shares were issued against cash.

The financial records and statements are maintained and presented in US dollars.

The investment objective of the Company is to seek to achieve capital appreciation of its assets by allocating its assets to trading accounts at Bernard L. Madoff Investment Securities, a registered broker-dealer in New York, which employs an options trading strategy described as a 'split strike conversion' strategy. The strategy has defined risk and profit parameters which may be ascertained when the position is established. The transactions for a typical position would be:

a.  the purchase of a basket of approximately 35 equity securities that together will highly correlate to the S&P Index (OEX);
b.  the sale of out of the money OEX call options in an equivalent contract value dollar amount to the basket of equity securities purchased;
c.  the purchase of an equal amount of out of the money OEX put options.

A call option is out of the money when its strike price is higher than the current price of the S&P Index. A put option is out of the money when its strike price is below the price of the S&P Index.

Pursuant to the provisions of the Articles of Association, changes in the net asset value of the Company are allocated to each share on a continuous basis.

Each share entitles the holder to one vote and to receive such dividends as declared by the directors and to participate upon liquidation on a proportional basis.

Dividend policy is determined by the directors and current policy is directed towards capital appreciation.

The minimum initial subscription per investor for the shares is USD 100,000, unless the Company deems it advisable to permit subscriptions for a lesser amount.

*Fairfield Sentry Limited,*
*Road Town, Tortola, British Virgin Islands*



Confidential Treatment Requested by HNAH

Following his initial investment, a shareholder may make additional investments in amounts of not less than USD 50,000.

Subscriptions received during any monthly period will be accepted as of the first day of the following month.

Redemption at the option of the shareholder will be accepted at the end of any month taking into account ten days notice. The Company reserves the right to call all or a part of a shareholder's shares for redemption at any time for any reason or for no reason.

### 3.6.2 Significant accounting policies

#### General
The accompanying financial statements have been prepared under the historical cost convention, modified by the valuation of investments at market value, and in accordance with International Accounting Standards (IAS). The preparation of financial statements in conformity with IAS requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period. Actual results could differ from those estimates.

The significant accounting policies are as follows:

#### Reporting currency
The financial statements are denominated in US dollars, the functional currency considered by the managers in their investment decisions.

#### Cash and cash equivalents
For the purpose of the cash flow statement, cash and cash equivalents correspond to cash at banks and brokers.

#### Accounting for investments
Investment transactions are accounted for on a trade basis. Profits and losses on the disposal of investments are computed on first in first out basis and are included in the statement of operations. Unrealised gains and losses on investments are recognised in the statement of operations.

#### Valuation of investments in securities
Investments listed and regularly traded on a recognised exchange are valued at the last quoted trade price on the relevant valuation day.

*Fairfield Sentry Limited,*
*Road Town, Tortola, British Virgin Islands*



Confidential Treatment Requested by HNAH

*Options*

Options on the S&P Index (OEX) traded on a recognised exchange are valued at the last quoted trade price on the relevant valuation day.

*Classification of assets and liabilities*
All assets and liabilities are current.

*Dividends and interest income*
Dividends are accrued on the ex-dividend date and recorded net of withholding tax. Interests are accrued on a daily basis.

5.6.3   *Cash and cash equivalents*

|  | 2000 | 1999 |
|---|---|---|
|  | USD'000 | USD'000 |
| Cash at banks | 22,010 | 44,592 |
| Cash at brokers | 7 | 16 |
|  | 22,017 | 44,608 |

As at December 31, 2000 there is no restricted cash.

*Fairfield Sentry Limited,*
*Road Town, Tortola, British Virgin Islands*

Confidential Treatment Requested by HNAH

HNAH-SEC-005027

SECSEK0001191

*3 6.4   Investments*

Through a group of accounts maintained with Bernard L. Madoff Investment Securities in New York, the Company invests in shares, bonds and options. The total amounts of cash flow invested during 2000 in these trading accounts were USD 278,000,000 (1999: USD 429,000,000).

| | Balance 01-01-2000 | Investments | Realised and unrealised gains/(losses) | Redemptions | Bala 31-12-2 |
|---|---|---|---|---|---|
| | USD'000 | USD'000 | USD'000 | USD'000 | USD'( |
| Shares (long) | 0 | 16,977,733 | (213,376) | (16,764,357) | |
| Call options (short) | 0 | 150,725 | 181,419 | (332,144) | |
| Call options (long) | 0 | 9,006 | 20,173 | (29,179) | |
| Put options (long) | 0 | 342,520 | 266,335 | (608,855) | |
| US treasury bills | 2,433,042 | 31,482,580 | 105,327 | (30,944,336) | 3,076,6 |
| Total | 2,433,042 | 48,962,564 | 359,878 | (48,678,871) | 3,076,6 |

In 1999, movements were as follows:

| | Balance 01-01-1999 | Investments | Realised and unrealised gains/(losses) | Redemptions | Balan 31-12-19 |
|---|---|---|---|---|---|
| | USD'000 | USD'000 | USD'000 | USD'000 | USD'0( |
| Shares (long) | 0 | 10,980,259 | 310,650 | (11,290,909) | |
| Call options (short) | 0 | 236,170 | 57,927 | (294,097) | |
| Put options (long) | 0 | 264,412 | (88,981) | (175,431) | |
| US treasury bills | 1,661,318 | 19,510,044 | 56,328 | (18,794,648) | 2,433,0( |
| Total | 1,661,318 | 30,990,885 | 335,924 | (30,555,085) | 2,433,04 |

*Fairfield Sentry Limited,*
*Road Town, Tortola, British Virgin Islands*



Confidential Treatment Requested by HNAH

HNAH-SEC-005028

SECSEK0001192

As at December 31, 2000 the portfolio of investments comprised the following long positions:

| | Due date | Nominal value | Yield to maturity as at 31-12-2000 | Percentage of net assets of the Company |
|---|---|---|---|---|
| | | USD'000 | USD'000 | % |
| US T-Bills | May 17, 2001 | 3,750 | 3,669 | 0% |
| US T-Bills | May 24, 2001 | 3,750 | 3,665 | 0% |
| US T-Bills | May 31, 2001 | 630,000 | 615,086 | 20% |
| US T-Bills | June 7, 2001 | 630,000 | 614,460 | 20% |
| US T-Bills | June 14, 2001 | 630,000 | 613,897 | 20% |
| US T-Bills | June 21, 2001 | 630,000 | 613,161 | 20% |
| US T-Bills | June 28, 2001 | 630,000 | 612,675 | 20% |
| Balance as at December 31, 2000 | | 3,157,500 | 3,076,613 | 100% |

*3.6.5  Loans receivable*

| | 2000 | 1999 |
|---|---|---|
| | USD'000 | USD'000 |
| Promissory note | 3,429 | 6,429 |
| | 3,429 | 6,429 |

At January 29, 1999 the Company issued a promissory note to Fairfield Greenwich Limited, the Company's investment manager.

In 2000 the promissory note granted to Fairfield Greenwich Limited has been redeemed for USD 3,000,000.

*Fairfield Sentry Limited,*
*Road Town, Tortola, British Virgin Islands*



Confidential Treatment Requested by HNAH

HNAH-SEC-005029

These promissory notes granted by the Company are subject to the following conditions:

a.  the calculated interest is 1% over the rate of return achieved through the investment of
    the Company's assets, but in no event shall interest be less than 10% per annum;
b.  repayment at June 30, 2002;
c.  secured by defined pledged assets of Fairfield Greenwich Limited.

Fairfield Greenwich Limited is considered to be a related party

### 3.6.6  Accounts receivable

|                                      | 2000      | 1999      |
|--------------------------------------|-----------|-----------|
|                                      | USD'000   | USD'000   |
| Accrued interest on promissory note  | 1,394     | 808       |
| Due from shareholders                | 8,600     | 0         |
| Other                                | 110       | 0         |
|                                      | 10,604    | 808       |

The receivable due from shareholders relates to a prepayment for a redemption. Other
receivables include USD 100,000, which relates to a short-term loan to Fairfield Investment
Fund Ltd., a company under management of Fairfield Greenwich Limited. The short-term
loan can be considered a related party transaction.

*Fairfield Sentry Limited,*
*Road Town, Tortola, British Virgin Islands*



Confidential Treatment Requested by HNAH

*3.6.7   Fees payable and accrued expenses*

As at December 31, 2000 the following amounts were included in fees payable and accrued expenses:

|  | 2000 | 1999 |
| --- | --- | --- |
|  | USD'000 | USD'000 |
| Performance fees | 15.325 | 18.186 |
| Accrued expenses | 282 | 242 |
| Directors' fees | 5 | 5 |
|  | 15.612 | 18.433 |

*Performance and directors' fees*

The investment manager of the Company is Fairfield Greenwich Limited, a corporation organised under the laws of Ireland.

Mr Noel, director of the Company, is also a president and a director of the Company's investment manager. In accordance with the investment management agreement, the appointment is for an indefinite period of time, which may be terminated on notice ten days prior to the end of any calendar quarter.

The manager does not receive a management fee, but is paid a performance fee of 20% of the new appreciation in share value each quarter. The manager has the option to defer the payment of, or to convert into shares of the Company, all or a portion of the annual performance fee. This option has not been exercised for the performance fee relating to 2000.

The directors, not affiliated with the management, receive a directors' fee of USD 5,000 per annum for attending meetings of the board of directors and shareholders' meetings.

Other than mentioned in these financial statements, there are no contracts in which any director has a material interest.

*Fairfield Sentry Limited,*
*Road Town, Tortola, British Virgin Islands*



Confidential Treatment Requested by HNAH

HNAH-SEC-005031

*Administration fee*

The administrator of the Company is Citco Fund Services (Europe) B.V. The Company pays to the administrator an annual fee based on the aggregate value of the assets comprised in each portfolio payable quarterly in arrears. The administrator will also be reimbursed for all disbursements and reasonable expenses incurred in the performance of its duties as detailed in the administrative services agreement.

*Operating expenses*

The Company is responsible for all expenses relating to any offering, and the organisation and operation of the Company including audit, legal fees, directors' remuneration and other charges including the expenses of acquiring and disposing of investments. These expenses are accrued throughout the period for which the Company receives the related benefit.

### 3.6.8  Taxation

The Company is not liable to taxation in the British Virgin Islands. Dividend and interest income received by the Company are subject to local withholding taxes.

### 3.6.9  Equity

The Company's authorised share capital consists of 10,000,000 (1999: 5,000,000) ordinary shares of nominal USD 0.01 each, of which 4,205,327.56 (1999: 3,720,304.09) shares are issued and fully paid at December 31, 2000. During the year 1,468,608.33 shares were issued (1999: 1,425,034.01) and 983,584.86 shares were redeemed (1999: 577,770.35). Holders of shares are entitled to one vote per share and participate on a pro rata basis in the net assets of the Company on liquidation and in dividends and other distributions as declared.

### 3.6.10  Net asset value per share

The calculation of the net asset value per share is based on net assets of USD 3,076,134,000 available and 4,205,327.56 shares in issue at year-end.

### 3.6.11  Earnings per share

The earnings per share are calculated by dividing the net result of USD 294,315,000 (1999: USD 275,334,000) attributable to shareholders by the weighted average number of shares outstanding during the year. The weighted average number of shares outstanding for the year ended December 31, 2000 is 3,925,339 (1999: 3,396,010). There is no dilution of the earnings per share.

*Fairfield Sentry Limited,*
*Road Town, Tortola, British Virgin Islands*



Confidential Treatment Requested by HNAH

### 3.6.12 Related parties

Mr Noel, director of the Company, is also a president and a director of the Company's investment manager.

Shares held by other Fairfield funds, which are considered to be related parties, are:

|  | 2000 | 1999 |
|---|---|---|
| Fairfield Advanced Strategies Ltd. | 37,065.60 | 42,810.48 |
| Sentry Select Ltd. | 19,849.76 | 17,797.95 |
| Fairfield Lambda Ltd. | 35,043.57 | 65,659.48 |
| Fairfield Sigma Ltd. | 80,465.50 | 1,225.23 |
| Brazil Direct Ltd. | 5,205.84 | 9,057.28 |
| Gulfstream International Ltd. | 43,721.24 | 36,906.03 |
| Fairfield Investment Fund Ltd. | 4,470.38 | 0 |
| Dynamic Asset Strategies Ltd. | 0 | 12,778.85 |

For loans granted to related parties reference is made to note 3.6.5.

For related parties included in accounts receivable refer to note 3.6.6.

### 3.6.13 Employee information

The Company does not have any employees.

### 3.6.14 Off-balance sheet risks and other risks associated with financial instruments

The Company's investment activities expose it to the various types of risks which are associated with the financial instruments and markets in which it invests. The following summary is not intended to be a comprehensive summary of all risks, and investors should refer to the prospectus for a more detailed discussion of the risks inherent in investing in the Company.

#### Credit risk

Financial assets which potentially expose the Company to credit risk consist principally of cash due from brokers and receivables for investments sold. The Company's cash balances are with high credit quality, well established financial institutions. The extent of the Company's exposure to credit risk in respect of these financial assets approximates their carrying value as recorded in the Company's balance sheet.

*Fairfield Sentry Limited,*
*Road Town, Tortola, British Virgin Islands*



Confidential Treatment Requested by HNAH

*Off-balance sheet risks*

An off-balance sheet market risk exists when the maximum potential loss on a particular investment is greater than the value of such investments as reflected in the Company's statement of assets and liabilities. Off-balance sheet credit risk exists, among other situations, when the collateral received by the Company is insufficient to cover losses which might result from a counterpart's failure to fulfil its obligation under contracts with the Company.

As at December 31, 2000, there are no off-balance sheet positions related to the above-mentioned instruments.

*3.6.15  Fair values*

At December 31, 2000, the carrying amount of all assets and liabilities on the balance sheet approximated their fair value.

*Fairfield Sentry Limited,*
*Road Town, Tortola, British Virgin Islands*



Confidential Treatment Requested by HNAH

HNAH-SEC-005034

SECSEK0001198

# _PRICEWATERHOUSE(COOPERS_ ▣

PricewaterhouseCoopers N.V.
Accountants
Hofplein 19
3032 AC Rotterdam
P O Box 181
3000 AW Rotterdam
The Netherlands
Telephone +31 (10) 400 16 00
Facsimile +31 (10) 400 16 70
www pwcglobal.com/nl

Auditors' report

### Introduction

We have audited the accompanying balance sheet of Fairfield Sentry Limited, Road Town, Tortola, as at December 31, 2000, and the related statements of operations and cash flows for the year then ended. These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements based on our audit.

### Scope

We conducted our audit in accordance with International Standards on Auditing. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall presentation of the financial statements. We believe that our audit provides a reasonable basis for our opinion.

### Opinion

In our opinion, the financial statements give a true and fair view of the financial position of the Company as at December 31, 2000, and of the results of its operations and its cash flows for the year then ended in accordance with International Accounting Standards.

Rotterdam, May 7, 2001

_PricewaterhouseCoopers N.V._

PricewaterhouseCoopers N.V

PricewaterhouseCoopers N.V. is a company with limited liability domiciled in Amsterdam, where it is registered with the Trade Register under number 34107196  Unless expressly stipulated otherwise in writing, all our agreements are subject to the General Terms & Conditions of PricewaterhouseCoopers N.V., which have been filed with the Amsterdam Chamber of Commerce under number 4220.

Confidential Treatment Requested by HNAH

FAIRFIELD SENTRY LIMITED

INFORMATION MEMORANDUM

## **APPENDIX – B Subscription Documents**

Confidential Treatment Requested by HNAH

HNAH-SEC-005036

SECSEK0001200

## SHARE APPLICATION FORM

### INSTRUCTIONS

A. All subscribers. Complete pages A-2 and A-3 by (i) filling in the dollar amount of Shares subscribed for, and (ii) indicating whether the Shares are to be issued in registered form or in the name of a nominee, and page A-6 by providing the requested information.

B. Subscriptions by Individuals. If a subscription is by an individual (including more than one), the "Signature Page for Subscription by an Individual" (page A-4) must be completed.

C. Subscriptions by Entities. If a subscription is by an entity (trust, partnership, corporation, bank or broker-dealer), the "Signature Page for Subscription by an Entity" (page A-5 must be completed.

D. Items to be delivered by All Subscribers.

(i) Completed and signed Share Application Form and corresponding signature page.

(ii) U.S. denominated funds in the amount of the full purchase price for Shares. Wire transfer funds for the full amount of the subscription to the Company's escrow account at:

> HSBC Bank USA
> 452 Fifth Avenue
> New York, NY 10018
> SWIFT: MRMDUS33
> ABA# 021-001-088

**In favour:**  Citco Bank Nederland, N.V.
SWIFT: CITCNL2A

**Account number:**  Redacted 4212

**For further credit to:**  Fairfield Sentry Limited
**Account No.:**  Redacted 3.797

**By Order of:**  *Name of Subscriber*

(iii) Subscription documents should be delivered or mailed to Fairfield Sentry Limited, c/o Citco Fund Services (Europe) B.V., Strawinskylaan 1725, 1077 XX Amsterdam, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands; fax no.: (31) 20-675-0881.

30 OF 39

Confidential Treatment Requested by HNAH

FAIRFIELD SENTRY LIMITED                                    INFORMATION MEMORANDUM
**A-2 Share Application Form**

To:        Fairfield Sentry LimitedTelephone: (31) 20-572-2114
           c/o Citco Fund Services
           (Europe) B.V.        Fax: (31) 20-572-2476
           Strawinskylaan 1725
           1077 XX Amsterdam
           P.O. Box 7241
           1007 JE Amsterdam
           The Netherlands

Please fill in the following information:
The undersigned hereby irrevocably subscribes for and agrees to purchase

U.S. $_____ of Shares (the "Shares")

in Fairfield Sentry Limited (the "Company") upon the terms of the Information Memorandum dated June 30, 1994, as amended, which I/we have received and read. I/We acknowledge that I am/we are able to afford a shareholding in a speculative venture having the risks and objectives of the Company.

I/We declare that the Shares hereby subscribed for are not being (i) acquired directly or indirectly by, and (ii) will not be transferred directly or indirectly to, (A) a natural person who is a citizen, national or resident of, or an institution or other entity organized, created, formed, chartered or resident in, the United States of America ("U.S. Person"), (B) an entity as to which any person or entity described in (A) above is, directly or indirectly, a beneficiary, fiduciary, grantor or decedent, or (C) institutions or other entities owned, in whole or in part, directly or indirectly, by the persons or entities described in (A) or (B) above.

If the subscriber is a bank or broker-dealer, the subscriber hereby represents and warrants, when it is acquiring Shares on behalf of clients for investment purposes, that such clients are not U.S. Persons, that it will notify the Company if it shall come to its knowledge that any such client is or has become a U.S. Person, that it will not at any time knowingly transfer or deliver the Shares or any part thereof or interest therein to a U.S. Person, and that it will not make any transfer thereof in the United States of America, its territories or possessions.

**RELATED PROFESSIONALS**
(Subscriptions cannot be accepted if this section is not completed)

(i)  Please indicate the name of the person at the Fairfield Greenwich Group with whom this
     subscription is                        associated.

     Name: _____

31 OF 39

Confidential Treatment Requested by HNAH

FAIRFIELD SENTRY LIMITED                                                    INFORMATION MEMORANDUM
**A-3 Share Application Form**

(ii) Please indicate the name, if applicable, of the person and/or entity who acts as an advisor with respect to this subscription.

Name of Advisor:

_____

Name of Advisor's firm or organization:

_____

Not Applicable: _____
I/We declare that I/we have a net worth of at least U.S. $1 Million and hereby consent to being treated as a "professional investor" pursuant to the British Virgin Islands Mutual Funds Act.

Shares will be held in book entry form on behalf of the subscriber, following acceptance, by the Administrator,
Citco Fund Services (Europe) B.V.

Shares Certificates may be issued in the name of the Shareholder or a Nominee. If this facility is required, please check the box below and if nominee registration is required, fill in the name of the nominee:

☐    _____
                Name of nominee to appear on Share Certificate

The Subscriber hereby designates and appoints **Interman Services Limited,** through its authorized officers and directors, with full power of substitution, as its true and lawful Proxy and Attorney-in-Fact for the purpose of voting the shares herein subscribed for as said Proxy may determine on any and all matters which may arise at any annual or special meeting of shareholders and upon which such shares could be voted by shareholders present in person at such meeting. This Proxy may be revoked by the owner of record of the shares hereby subscribed for, either personally or by presentation of a subsequently executed proxy at any annual meeting or special meeting of shareholders, or by written notice to:
**Citco Fund Services (Europe) B.V., World Trade Center, Tower B, 17th Floor, Strawinskylaan 1725, 1077 XX Amsterdam, P.O. Box 7241, 1007 JE Amsterdam, The Netherlands; fax. no.: (31) 20-675-0881.**

32 OF 39

Confidential Treatment Requested by HNAH

HNAH-SEC-005039

SECSEK0001203

FAIRFIELD SENTRY LIMITED                                             INFORMATION MEMORANDUM
**A-4 Share Application Form**

SHARES TO BE REGISTERED AS (check one):
*(Please print all information exactly as you wish it to appear on the Company's records.)*

| | |
|---|---|
| **Individual Subscriber** | **Co-Subscribers**<br>(Both signatures are required) |
| Name of Subscriber | Name of Subscriber |
| Address | Address |
| Country of Residence | Country of Residence |
| Telephone | Telephone |
| Telephone (Evenings) | Telephone (Evenings) |
| Fax | Fax |
| Email | Email |
| Signature | Signature (both signatures are required) |
| Please print Name | Please print Name |
| Date | Date |

33 OF 39

Confidential Treatment Requested by HNAH                                      HNAH-SEC-005040

SECSEK0001204

FAIRFIELD SENTRY LIMITED
**A-5 Share Application Form**

INFORMATION MEMORANDUM

SHARES TO BE REGISTERED AS FOLLOWS (entity of ownership please check one):

**PARTNERSHIP** (please include a
copy of the partnership agreement (or
similar document)

**TRUST** (please include a copy of
the trust agreement)

**CORPORATION** - Please include
certified resolutions (or similar
documents) authorizing signature.

**BANK** (please see page A-2)

**BROKER DEALER** (see page A-2)

Name of Subscriber

Telephone

Address

Telephone (Evenings)

Country of Formation

Fax (transmission number)

Telephone

Email

The undersigned trustee, partner or officer warrants that he has full power and authority from all
beneficiaries or partners or from the board of directors of the entity named below to sign this Share
Application Form on behalf of the entity and that a purchase of Shares in Fairfield Sentry Limited is not
prohibited by the governing documents of the entity.

*(Please print all information exactly as you wish it to appear on the Company's records.)*

Name and Title (Please print name)

Name and Title (Please print name)

Signature (Trustee, partner or authorized
corporate officer)

Signature (Trustee, partner or authorized
corporate officer)

Dated

Dated

34 OF 39

Confidential Treatment Requested by HNAH

FAIRFIELD SENTRY LIMITED

**A-6 Share Application Form**

INFORMATION MEMORANDUM

## SUBSCRIPTION INFORMATION

**SHARE REGISTRATION INFORMATION**

**MAILING (POST) INFORMATION** (if other than address of registration)

_____

Name

_____

_____

Address

_____

_____

Country of Residence

_____

_____

Telephone

_____

_____

Telephone (Evenings)

_____

Fax

_____

**REMITING BANK**

**BANK FOR TRANSFERS** in case of redemptions (if other than Name & Address of Remitting Bank):

_____

Name

_____

_____

Address

_____

_____

Country of Residence

_____

_____

Telephone

_____

_____

Telephone (Evenings)

_____

Fax

_____

35 OF 39

Confidential Treatment Requested by HNAH

HNAH-SEC-005042

SECSEK0001206

SECSEK0001207

FAIRFIELD SENTRY LIMITED

**B-2**

INFORMATION MEMORANDUM

## SIGNATURES MUST BE IDENTICAL TO NAME(S) IN WHICH SHARES ARE REGISTERED

**ENTITY SHAREHOLDER (OR ASSIGNEE)**

**INDIVIDUAL SHAREHOLDER(S) [PARTNERSHIP, CORPORATION (OR ASSIGNEE) OR TRUST]**

Name of Registered Owner of Shares

Name of Subscriber

Address

Address

Signature (of individual or assignee)

Signature (of partner authorized  corporate officer or trustee)

Name and Title

Please Print Name and Title

Date

Date

Signature (of individual or assignee)

Signature (of partner authorized  corporate officer or trustee)

Name and Title

Please Print Name and Title

Date

Date

Signatures guaranteed by:

37 OF 39

Confidential Treatment Requested by HNAH

HNAH-SEC-005044

SECSEK0001208

FAIRFIELD SENTRY LIMITED
B-3

## REDEMPTION INFORMATION

**SHARE REGISTRATION**

**MAILING (POST) INFORMATION (if other than address of registration)**

Name

Name

Address

Address

Country of Residence

Country of Residence

Telephone

Telephone

Telephone (Evenings)

Telephone (Evenings)

Fax

Fax

**BANK FOR TRANSFER OF REDEMPTION**

Name

Address

Country of Residence

Telephone

Telephone (Evenings)

Fax

Confidential Treatment Requested by HNAH

HNAH-SEC-005045

SECSEK0001209