**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Rockefeller Center
1270 Avenue of the Americas, Suite 2210
New York, New York 10020
Telephone: (212) 332-8840
Facsimile: (212) 332-8855

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and the*
*Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | Adv. Pro. No. 12-01680 (CGM) |
| Plaintiff, | |
| v. | |
| INTESA SANPAOLO SPA (AS SUCCESSOR IN INTEREST TO BANCA INTESA SPA), EURIZON CAPITAL SGR SPA (AS SUCCESSOR IN INTEREST TO EURIZON INVESTIMENTI SGR SPA, F/K/A NEXTRA | |

INVESTMENT MANAGEMENT SGR SPA,
AND EURIZON ALTERNATIVE
INVESTMENTS SGR SPA, FKA NEXTRA
ALTERNATIVE INVESTMENTS SGR SPA),
EURIZON LOW VOLATILITY F/K/A
NEXTRA LOW VOLATILITY, EURIZON
LOW VOLATILITY II F/K/A NEXTRA
LOW VOLATILITY II, EURIZON LOW
VOLATILITY PB F/K/A NEXTRA LOW
VOLATILITY PB, EURIZON MEDIUM
VOLATILITY F/K/A NEXTRA MEDIUM
VOLATILITY, EURIZON MEDIUM
VOLATILITY II F/K/A NEXTRA MEDIUM
VOLATILITY II, EURIZON TOTAL
RETURN F/K/A NEXTRA TOTAL
RETURN,

       Defendants.

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS
EURIZON CAPITAL SGR SPA, EURIZON LOW VOLATILITY, AND
<u>EURIZON MEDIUM VOLATILITY'S MOTION TO DISMISS</u>**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT .............................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 4

    I.     The BLMIS Ponzi Scheme and Its Feeder Funds ............................................ 4

    II.    Sentry ............................................................................................................... 4

    III.   The Eurizon Defendants ................................................................................... 5

ARGUMENT ..................................................................................................................... 6

    I.     Legal Standard ................................................................................................. 6

    II.    Section 546(e) Does Not Bar Recovery From the Eurizon Defendants ............................ 7

        A.    Sentry Had Actual Knowledge of Madoff's Fraud. .......................... 8

        B.    The Eurizon Defendants Are Bound by the Actual Knowledge Exception
            Established in *Cohmad*. ................................................................. 9

        C.    The Eurizon Defendants are Also Precluded From Arguing That Section
            546(e) Applies Independently to Recovery Actions. ........................... 10

    III.   The Trustee Adequately Alleged Fraudulent Intent Under the Bankruptcy Code
        and New York Debtor and Creditor Law. ........................................................ 16

    IV.   The Trustee Sufficiently Pleads the Avoidability of the Initial Transfers. ...................... 19

        A.    The Incorporated Material Complies with Rule 10 and Rule 8. .................... 19

            1.    The Trustee's Incorporation of the Allegations from the Fairfield
                Amended Complaint is Sufficient to Plead Avoidability of the
                Initial Transfers from BLMIS to Sentry. ................................. 19

            2.    Incorporation is Permitted Where it Achieves the Purpose of
                Rule 10(c). ............................................................................. 20

            3.    The Trustee's Allegations are Sufficient Under Rule 8. ..................... 23

        B.    The Court May Take Judicial Notice of the *Fairfield Inv.* Decision. .................. 24

        C.    At the Very Least, the Trustee Should be Afforded the Opportunity to
            Amend. ................................................................................................. 25

    V.    The Trustee's Complaint States a Valid Cause of Action for Recovery of Stolen
        BLMIS Customer Property Under Section 550(a) ............................................. 25

        A.    The Trustee's Complaint Meets the Pleading Requirements. .............................. 26

        B.    The Eurizon Defendants Misstate the Trustee's Pleading Burden. ...................... 27

        C.    The Eurizon Defendants' Tracing Arguments are Inappropriate for a
            Motion to Dismiss. ............................................................................... 28

        D.    The Eurizon Defendants' Claims of Double Recovery are Premature. ................ 31

CONCLUSION .................................................................................................................. 32

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*45 John Lofts*, *LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
    599 B.R. 730 (Bankr. S.D.N.Y. 2019) ...................................................................... 26, 27

*Am. Casein Co. v. Geiger (In re Geiger)*,
    446 B.R. 670 (Bankr. E.D. Pa. 2010) .................................................................................. 20

*Angell v. Ber Care, Inc. (In re Caremerica, Inc.)*,
    409 B.R. 737 (Bankr. E.D.N.C. 2009) ................................................................................ 28

*Armstrong v. Collins*,
    No. 01-CV-2437 (PAC), 2010 WL 1141158 (S.D.N.Y. Mar. 24, 2010) ............................ 17

*Ashcroft v. Iqbal*,
    556 U.S. 552 (2009) .............................................................................................................. 6

*In re AVI, Inc.*,
    389 B.R. 721 (9th Cir. BAP 2008) ...................................................................................... 11

*Bear Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*,
    397 B.R. 1 (S.D.N.Y. 2007) ................................................................................................ 17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................................................. 6

*Cargo Partner AG v. Albatrans, Inc.*,
    352 F.3d 41 (2d Cir. 2003) .................................................................................................... 6

*CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*,
    393 B.R. 306 (Bankr. W.D.N.Y. 2008) .............................................................................. 32

*Davis v. Bifani*,
    No. 07-CV-00122-MEH-BNB, 2007 WL 1216518 (D. Colo. Apr. 24, 2007).................... 22

*DeMasi v. Benefico*,
    567 F. Supp. 2d 449 (S.D.N.Y. 2008) ................................................................................ 24

*In re Ditech Holding Corp.*,
    No. 19-10412 (JLG), slip op., 2020 WL 3635547 (Bankr. S.D.N.Y. July 3, 2020)............ 6

*In re Dreier*,
    435 B.R. 391 (Bankr. S.D.N.Y. 2011) ................................................................................ 18

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
    651 F.3d 329 (2d Cir. 2011) ............................................................................................ 8, 12

*Ferrari v. Cnty. of Suffolk,*
  790 F. Supp. 2d 34 (E.D.N.Y. 2011) .................................................................. 24

*Foman v. Davis,*
  371 U.S. 178 (1962) ............................................................................................ 25

*Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP),*
  Adv. Pro. No. 10-03493 (SMB), 2014 WL 47774 (Bankr. S.D.N.Y. Jan. 3, 2014) ........................... 31

*Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller,*
  957 F.2d 1575 (11th Cir. 1992) ........................................................................... 18

*Helms v. Metro. Life Ins. Co. (In re O'Malley),*
  601 B.R. 629 (Bankr. N.D. Ill. 2019) .................................................................. 31

*Johnson v. Holder,*
  564 F.3d 95 (2d Cir. 2009) ................................................................................. 18

*Kelley v. Safe Harbor Managed Acct. 101, Ltd.,*
  31 F.4th 1058 (8th Cir. 2022) ...................................................................... 11, 14

*Kelley v. Westford Special Situations Master Fund, L.P.,*
  No. 19-CV-1073, 2020 WL 3077151 (D. Minn. June 10, 2020) ........................... 28, 30, 31

*Krys v. Sugrue (In re Refco Inc. Sec. Litig.),*
  No. 07-MD-1902 (JSR), 2013 WL 12191844 (S.D.N.Y. Mar. 25, 2013) ................ 9

*Lowden v. William M. Mercer, Inc.,*
  903 F. Supp. 212 (D. Mass. 1995) ....................................................................... 22

*In re Madoff Sec.,*
  12-MC-115 (S.D.N.Y. May 16, 2012), ECF No. 119 .......................................... 12

*Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC,*
  843 F. Supp. 2d 191 (D. Mass. 2012) .................................................................. 21

*Morrison v. Off. of the U.S. Tr. (In re Morrison),*
  375 B.R. 179 (Bankr. W.D. Pa. 2007) ................................................................. 21

*Muhammad v. Bethel-Muhammad,*
  No. CIV.A. 11-0690-WS-B, 2012 WL 1854315 (S.D. Ala. May 21, 2012) ........... 22

*New Hampshire v. Maine,*
  532 U.S. 742 (2001) ............................................................................................. 9

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.,*
  No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010) ................ 22

*Perez v. Terrestar Corp. (In re Terrestar Corp.),*
  No. 16 Civ. 1421 (ER), 2017 WL 1040448 (S.D.N.Y. Mar. 16, 2017) ................... 8

*Picard v. Avellino (In re BLMIS)*,
    557 B.R. 89 (Bankr. S.D.N.Y. 2016) .................................................................. 10

*Picard v. BAM L.P.*,
    624 B.R. 55 (Bankr. S.D.N.Y. 2020) ................................................................... 8

*Picard v. Banque Syz & Co., SA*,
    Adv. Pro. No. 11-02149 (CGM) (Bankr. S.D.N.Y. June 14, 2022), ECF No. 167 .............................. 1

*Picard v. BNP Paribas S.A. (In re BLMIS)*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018) ...................................................... 4, 11, 13

*Picard v. Ceretti (In re BLMIS)*,
    No. 09-01161 (SMB), 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015)........................ 10

*Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*,
    Adv. Pro. No. 10-04398 (BRL), 2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012) ............... 26, 29

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    12 F.4th 171 (2d Cir. 2021) ...................................................................*passim*

*Picard v. Cohen*,
    Adv. Pro. No. 10–04311 (SMB), 2016 WL 1695296 (Bankr. S.D.N.Y. Apr. 25, 2016) .............. 10, 16

*Picard v. Cohmad Sec. Corp. (In re BLMIS)*,
    454 B.R. 317 (Bankr. S.D.N.Y. 2011) ...........................................................*passim*

*Picard v. Est. of Seymour Epstein (In re BLMIS)*,
    No. 21-CV-02334 (CM), 2022 WL 493734 (S.D.N.Y. Feb. 17, 2022)............................ 1, 13, 17, 20

*Picard v. Estate (Succession) of Igoin (In re BLMIS)*,
    525 B.R. 871 (Bankr. S.D.N.Y. 2015) .............................................................. 16

*Picard v. Fairfield Inv. Fund Ltd.*,
    Adv. Pro. No. 09-01239, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2020) .....................*passim*

*Picard v. Ida Fishman Rev. Tr. (In re BLMIS)*,
    773 F.3d 411 (2d Cir. 2014) ...................................................................... 10, 12

*Picard v. Intesa Sanpaolo*,
    Adv. Pro. No. 12-01680 (Bankr. S.D.N.Y. Sept. 21, 2012), ECF No. 17 ........................... 10

*Picard v. JABA Assocs. LP (In re BLMIS)*,
    528 F. Supp. 3d 219 (S.D.N.Y. 2021) ......................................................... 16, 18, 19

*Picard v. Jacob M. Dick Rev. Living Tr. DTD 4/6/01 et al. (In re BLMIS)*,
    No. 10-04570 (CGM) (Bankr. S.D.N.Y. June 6, 2022), ECF No. 141 ............................... 17

*Picard v. Ken-Wen Family Ltd. P'ship et al. (In re BLMIS)*,
    638 B.R. 41 (Bankr. S.D.N.Y 2022) ................................................................ 16

*Picard v. Legacy Cap. Ltd.*,
603 B.R. 682 (Bankr. S.D.N.Y. 2019) ............................................................................... 8

*Picard v. Lowrey (In re BLMIS)*,
596 B.R. 451 (S.D.N.Y. 2019) ................................................................................... 9, 20

*Picard v. Magnify, Inc. (In re BLMIS)*,
583 B.R. 829 (Bankr. S.D.N.Y. 2018) ............................................................................. 10

*Picard v. Mayer (In re BLMIS)*,
Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021)..................... 26

*Picard v. Mendelow (In re BLMIS)*,
560 B.R. 208 (Bankr. S.D.N.Y. 2016) ............................................................................. 10

*Picard v. Merkin (In re BLMIS)*,
440 B.R. 243 (Bankr. S.D.N.Y. 2010) ............................................................... 7, 17, 26, 30

*Picard v. Merkin (In re BLMIS)*,
515 B.R. 117 (Bankr. S.D.N.Y. 2014) ..................................................................... *passim*

*Picard v. Merkin (In re BLMIS)*,
581 B.R. 370 (Bankr. S.D.N.Y. 2017) ....................................................................... 29, 31

*Picard v. Multi-Strategy Fund Ltd.*,
Adv. Pro. No. 12-01205 (CGM) (Bankr. S.D.N.Y. June 13, 2022), ECF No. 122 ...................... *passim*

*Picard v. Sage Realty*,
No. 20-CV-10109 (JFK), 2022 WL 1125643 (S.D.N.Y. Apr. 15, 2022)............................................ 17

*Picard v. Shapiro (In re BLMIS)*,
542 B.R. 100 (Bankr. S.D.N.Y. 2015) ................................................................... 10, 27, 28

*Picard v. Square One Fund Ltd.*,
Adv. Pro. No. 10-04330 (May 29, 2019 Bench Ruling) ...................................................... 10

*In re Picard*,
917 F.3d 85 (2d Cir. 2019) ............................................................................................ 12

*In re Pilgrim's Pride Corp.*,
442 B.R. 522 (Bankr. N.D. Tex. 2010) ............................................................................. 8

*Porat v. Lincoln Towers Cmty. Ass'n*,
464 F.3d 274 (2d Cir. 2006) ......................................................................................... 25

*Preterm-Cleveland v. McCloud*,
994 F.3d 512 (6th Cir. 2021)......................................................................................... 18

*Roth v. Jennings*,
489 F.3d 499 (2d Cir. 2007) ........................................................................................... 6

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000) ........................................................................................... 2, 24

*Sass v. Barclays Bank PLC (In re Am. Home Mortg., Holdings, Inc.)*,
    501 B.R. 44 (Bankr. D. Del. 2013) ..................................................................................... 29

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    501 B.R. 26 (S.D.N.Y. 2013) ......................................................................... 11, 14, 20, 24

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    531 B.R. 439 (Bankr. S.D.N.Y. 2015) ............................................................................ 7, 9

*SEC v. F.O. Baroff Co.*,
    497 F.2d 280 (2d Cir. 1974) ............................................................................................... 8

*Sharp Int'l Corp. v. State Street Bank & Tr. Co. (In re Sharp Int'l Corp. et al.)*,
    403 F.3d 43 (2d Cir. 2005) ................................................................................................ 18

*Sherman v. A.J. Pegno Constr. Corp.*,
    528 F. Supp. 2d 320 (S.D.N.Y. 2007) ......................................................................... 21, 23

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
    379 B.R. 5 (Bankr. E.D.N.Y. 2007) ................................................................................... 27

*In re SunEdison, Inc.*,
    620 B.R. 505 (Bankr. S.D.N.Y. 2020) ............................................................................... 13

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) ............................................................................................................. 9

*United States v. Int'l Longshoremen's Ass'n*,
    518 F. Supp. 2d 422 (E.D.N.Y. 2007) ......................................................................... 21, 25

*United States v. Quintieri*,
    306 F.3d 1217 (2d Cir. 2002) .............................................................................................. 8

*Whitaker Sec., LLC v. Rosenfeld (In re Rosenfeld)*,
    543 B.R. 60 (Bankr. S.D.N.Y. 2015) ................................................................................. 22

## STATUTES

11 U.S.C. § 546(e) .............................................................................................................*passim*

11 U.S.C. § 550(a) .............................................................................................................*passim*

11 U.S.C. § 550(d) ...................................................................................................... 31, 32

15 U.S.C. §§ 78aaa-*lll* ............................................................................................................ 1

## RULES

Fed. R. Bankr. P. 7010 ...................................................................................................... 20

Fed. R. Civ. P. 8 ................................................................................................. 2, 19, 23, 24

Fed. R. Civ. P. 8(a)(2) .................................................................................................. 6, 23

Fed. R. Civ. P. 9(b) ............................................................................................................ 18

Fed. R. Civ. P. 10 ............................................................................................................. 19

Fed. R. Civ. P. 10(c) ................................................................................... 2, 19, 20, 21

Fed. R. Civ. P. 12(b)(6) ............................................................................................... *passim*

**OTHER AUTHORITIES**

5A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1326 (3d
    ed. 2007) ..................................................................................................................... 22

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection

Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff, respectfully

submits this memorandum of law in opposition to the motion to dismiss the Trustee's Complaint

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP" or the "Rules") filed

by defendants Eurizon Capital SGR SpA ("Eurizon Capital"), Eurizon Low Volatility ("Low

Volatility"), and Eurizon Medium Volatility ("Medium Volatility") (collectively, the "Eurizon

Defendants") (the "Motion").

## PRELIMINARY STATEMENT

The Trustee sufficiently pleaded claims under Section 550 to recover approximately $11.65

million of stolen BLMIS customer property transferred from Fairfield Sentry Limited ("Sentry")

to the Eurizon Defendants.[1]  The Eurizon Defendants move to dismiss the Trustee's Complaint on

three grounds, arguing that (1) the safe harbor under Section 546(e) bars recovery, (2) the Trustee

failed to allege the avoidability of the initial transfers, and (3) the Trustee failed to allege that the

Eurizon Defendants are subsequent transferees of stolen customer property.  As this Court recently

held in *Picard v. Multi-Strategy Fund Ltd.*, all three arguments fail.  *See* Memorandum Decision

Denying Defendant's Motion to Dismiss, *Picard v. Multi-Strategy Fund Ltd.*, Adv. Pro. No. 12-

01205 (CGM) (Bankr. S.D.N.Y. June 13, 2022), ECF No. 122 ("*Multi-Strategy*").[2]

---

[1] The amount originally sought in the Trustee's Complaint was approximately $105.3 million.  By way of stipulation entered on March 29, 2022, the Trustee agreed not to pursue certain transfers from Kingate Global Fund Ltd. and Kingate Euro Fund Ltd. in the amount of $93,661,909.  *See Stipulation and Order to Dismiss Certain Transfers Alleged in the Complaint and Set a Briefing Schedule*, ECF No. 93.

[2] The Court's memorandum decision denying defendant's motion to dismiss in *Picard v. Banque Syz & Co., SA*, Adv. Pro. No. 11-02149 (CGM) (Bankr. S.D.N.Y. June 14, 2022), ECF No. 167 ("Banque Syz"), which was filed earlier today, is consistent in all material respects with the *Multi-Strategy* opinion.  Much like *Multi-Strategy*, the Banque Syz opinion extinguishes each of the Eurizon Defendants' arguments and provides additional support for the denial of the Motion.

First, controlling precedent holds that Section 546(e) does not bar recovery because it is the initial transferee's knowledge, not the Eurizon Defendants' knowledge, that guides the analysis as to whether the initial transfers from BLMIS to Sentry are avoidable. The concepts of avoidance and recovery are separate and distinct—Section 546(e) applies to the avoidance of *initial* transfers, not the recovery of subsequent transfers under Section 550. *Id.* at 19. The Eurizon Defendants conflate these two fundamental principles.

Second, the Trustee plausibly alleged the avoidability of the initial transfers from BLMIS to Sentry based on the Ponzi scheme presumption. Although unnecessary, the Court may also (1) take judicial notice of the operative Second Amended Complaint[3] against Sentry and (2) rely on its recent decision in *Picard v. Fairfield Inv. Fund Ltd.* ("*Fairfield Inv.*") as law of the case. In *Fairfield Inv.*, the Court held that the Second Amended Complaint sufficiently alleged the avoidability of the initial transfers from BLMIS.[4] The Court affirmed this ruling in *Multi-Strategy*.

Third, the Trustee's incorporation by reference of the amended complaint filed in the *Fairfield Inv.* adversary proceeding (the "Fairfield Amended Complaint")[5] complies with both Rule 10(c) and Rule 8. *See Multi-Strategy*, Adv. Pro. No. 12-01205, at 14. Incorporation is a practical method for the Trustee to plead avoidance of the relevant transfers. The Court has held on numerous occasions that the Trustee can rely on the Ponzi scheme presumption to allege and establish the avoidability of the initial transfers. And the Court may take judicial notice of the

---

[3] After the Trustee filed the Complaint against the Eurizon Defendants, the Trustee filed a second amended complaint (the "Second Amended Complaint") against the Fairfield Greenwich Group. *See* Second Amended Complaint, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286. The Court may take judicial notice of the Trustee's Second Amended Complaint. *See Rothman v. Gregor*, 220 F.3d 81, 91–92 (2d Cir. 2000) (taking judicial notice of a later filed complaint in a related proceeding).

[4] *See Fairfield Inv.*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021).

[5] Adv. Pro. No. 09-01239 (BRL) (Bankr. S.D.N.Y. July 20, 2010), ECF No. 23.

Trustee's Second Amended Complaint and its own opinion in *Fairfield Inv.*, in which the Court

held that the Second Amended Complaint plausibly alleged Sentry's actual knowledge of fraud.[6]

Because the Court's rulings in adversary proceedings within this SIPA liquidation proceeding

constitute law of the case, and because no sufficient reason exists to deviate from its prior rulings,

the Court should find that the Trustee adequately alleged Sentry's actual knowledge of fraud.

Fourth, the Trustee satisfied Section 550(a) by plausibly alleging the relevant pathways

through which stolen customer property moved from BLMIS to Sentry and subsequently to the

Eurizon Defendants. The Trustee also alleged the necessary vital statistics, i.e., the "who, when,

and how much," for each subsequent transfer the Eurizon Defendants received. *See Multi-

Strategy*, Adv. Pro. No. 12-01205, at 22 (finding that including the information such as that

contained in Ex. C to the Trustee's Complaint provides the defendant with the necessary "who,

when, and how much" of the subsequent transfers). The Eurizon Defendants admit as much. *See*

Eurizon Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Complaint,

ECF No. 96 (the "Memorandum"), at 24. At this stage, nothing more is required. The Trustee is

not required to plead a dollar-for-dollar accounting. *See Multi-Strategy*, Adv. Pro. No. 12-01205,

at 13. Accepting the Eurizon Defendants' arguments would require the Court to resolve expert

and fact issues, which is contrary to well-established case law in this SIPA liquidation proceeding.

And the law of the case should not be disturbed.

Accordingly, the Trustee respectfully requests that the Court deny the Motion.

---

[6] *Fairfield Inv.*, 2021 WL 3477479, at *8.

## STATEMENT OF FACTS

### I.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS

Madoff founded and operated BLMIS from New York until its collapse in 2008.    *See*

Compl. ¶ 40.  BLMIS had three principal business units, one of which was an investment advisory

business that purported to employ strategies to maximize returns and minimize risk to its investors.

*Id.* ¶¶ 32–34.  In reality, BLMIS operated a Ponzi scheme through its investment advisory business.

*Id*. ¶¶ 17–18, 32–42.  BLMIS never purchased any securities on behalf of its investors and sent

falsified monthly statements showing fictitious transactions and gains.  *See Picard v. BNP Paribas*

*S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) ("*BNP*").  After his arrest for

securities fraud, investment advisor fraud, and mail and wire fraud, Madoff admitted through

criminal plea allocutions that he (1) operated a Ponzi scheme through the investment advisory

business and (2) never made the investments he promised his clients, using their money instead to

pay withdrawals and make other avoidable transfers to other BLMIS account holders.  Compl.

¶¶ 17, 35–38.  Failure to pay these withdrawals would have resulted in demand, investigation, the

filing of claims, and ultimate disclosure of the Ponzi scheme.  *Id.* ¶ 39.  By the time of its collapse,

BLMIS's liabilities were many billions of dollars greater than its assets.  *Id.* ¶ 42.

### II.    SENTRY

Sentry is a Madoff "feeder fund"—a large investment fund created for the express purpose

of funneling investors' funds into BLMIS.  *See Picard v. Citibank, N.A. (In re Bernard L. Madoff*

*Inv. Sec. LLC)*, 12 F.4th 171, 179 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*,

142 S.Ct. 1209 (2022) ("*Citibank*").  Sentry was a U.S. dollar-denominated fund that invested 95%

of its assets with BLMIS.  Compl. ¶ 2.  Fairfield Greenwich Group ("FGG"), a *de facto* partnership

with its principal place of business in New York, managed and controlled Sentry.  *See id.* ¶ 8;

*Fairfield Inv.*, 2021 WL 3477479, at *9.  FGG conducted key operations of Sentry from its New

York Office. For example, a New York-based partner approved or rejected subscriptions in Sentry. FGG's Finance Group, which was responsible for processing subscriptions and redemptions, performing due diligence, communicating with investors, and providing investor support, was also located in New York.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Sentry and certain related defendants to avoid and recover approximately $3 billion in fraudulent transfers of stolen customer property. Compl. ¶ 44. In 2011, the Trustee settled with Sentry. *Id.* ¶ 49. As part of the settlement, the Court entered a $3.054 billion judgment against Sentry. *Id.* The Trustee then commenced adversary proceedings against the Eurizon Defendants, and others, to recover the stolen customer property.

## III.    THE EURIZON DEFENDANTS

The Eurizon Defendants invested in and received redemptions—transfers of stolen BLMIS customer property—from Sentry beginning in 2003, if not earlier. *See id.* ¶¶ 50, 51. The Eurizon Defendants knew Sentry was a Madoff feeder fund. *See id.* ¶ 7. When the Eurizon Defendants received the subsequent transfers, Eurizon Capital and its predecessor in interest served as the asset management division of the largest bank in Italy, Banca Intesa SpA. *Id.* ¶ 3. Banca Intesa SpA was a global provider of investment management and financial services to corporations, institutions, and high-net-worth individuals. *Id.* At all relevant times, Eurizon Capital managed Low Volatility and Medium Volatility. *Id.* ¶¶ 25, 28.

As part of the Trustee's continuing efforts in this SIPA liquidation proceeding to recover BLMIS customer property that was stolen as part of Madoff's Ponzi scheme, and as clearly alleged in the Complaint, the Trustee seeks to recover (1) two transfers totaling $7,913,079 made from Sentry to Low Volatility on June 16, 2003, and March 15, 2005, and (2) one transfer totaling $3,740,436 made from Sentry to Medium Volatility on September 15, 2004. *See id.* ¶¶ 50, 51;

Exs. C, D.  Each transfer the Eurizon Defendants received from Sentry was a transfer of stolen

BLMIS customer property—property the Trustee is attempting to recover through this adversary

proceeding.

The Court addressed the issues raised by the Eurizon Defendants in its *Multi-Strategy*

opinion, holding that (1) Section 546(e) does not bar recovery of subsequent transfers from Sentry

to the Eurizon Defendants, (2) the Trustee's incorporation of the Fairfield Amended Complaint

adequately alleged the avoidability of the initial transfers, and (3) the Fairfield Second Amended

Complaint sufficiently alleges that Sentry had actual knowledge of the Madoff fraud.  *See Multi-*

*Strategy*, Adv. Pro. No. 12-01205, at 12-22.  The Court's *Multi-Strategy* opinion disposes of each

of the Eurizon Defendants' arguments.

## ARGUMENT

## I.    LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6), the Court "must liberally

construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable

inferences in favor of the trustee."  *See In re Ditech Holding Corp.*, No. 19-10412 (JLG), slip op.,

2020 WL 3635547, at *5 (Bankr. S.D.N.Y. July 3, 2020) (including omitted portion) (quoting *In*

*re J.P. Jeanneret Assoc., Inc.*, 769 F. Supp 2d 340, 353 (S.D.N.Y. 2011) (citing *Cargo Partner*

*AG v. Albatrans, Inc.*, 352 F.3d 41, 44 (2d Cir. 2003)); *see also Roth v. Jennings*, 489 F.3d 499,

510 (2d Cir. 2007).

To survive a motion to dismiss, a complaint must contain a "short and plain statement of

the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  At the pleading

stage, the allegations in the complaint need only meet the "plausibility" standard.  In other words,

they only need to "nudge[] [the] claims . . . across the line from conceivable to plausible."  *Ashcroft*

*v. Iqbal*, 556 U.S. 552, 680 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, at 678 (internal citation omitted).

Here, and as explained more fully below, the Complaint sets forth the elements of the Trustee's claims, plausibly pleading the Eurizon Defendants' receipt of subsequent transfers of stolen customer property and the grounds upon which the Trustee seeks to recover such transfers from the Eurizon Defendants. Dismissal here is inappropriate. *See Picard v. Merkin (In re BLMIS)*, 440 B.R. 243, 254–71, 273 (Bankr. S.D.N.Y. 2010).

## II.    SECTION 546(E) DOES NOT BAR RECOVERY FROM THE EURIZON DEFENDANTS.

Section 546(e) provides a safe harbor for the avoidance of certain initial transfers made outside the two-year period referenced in Section 548(a)(1)(A). *See* 11 U.S.C. § 546(e). In *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (often referred to as Cohmad), however, the District Court held that an initial transferee's actual knowledge of Madoff's fraud precluded application of the Section 546(e) safe harbor, thereby allowing the Trustee to avoid transfers made by BLMIS prior to the two-year period referenced in Section 548(a)(1)(A). No. 12-MC-115 (JSR), 2013 WL 1609154, at *1, *10 (S.D.N.Y. Apr. 15, 2013) (Rakoff, J.) ("*Cohmad*"). In the Complaint, the Trustee sufficiently pleaded Sentry's—the relevant transferee for purposes of a Section 546(e) analysis—actual knowledge of the Madoff fraud by incorporating the Fairfield Amended Complaint. *See Multi-Strategy*, Adv. Pro. No. 12-01205, at 18 ("This Court determined that the Fairfield Complaint is replete with allegations demonstrating that Fairfield Sentry had actual knowledge that BLMIS was not trading securities."). As such, Section 546(e) does not provide a basis to dismiss the Trustee's Complaint. As discussed below, the Eurizon Defendants' Section 546(e) argument is based on the tortured misreading of Section 546(e) and *Cohmad*, and

has already been rejected by the Court in other adversary proceedings commenced in this SIPA liquidation proceeding.

### A.    Sentry Had Actual Knowledge of Madoff's Fraud.

Evident from the *Multi-Strategy* opinion, the Eurizon Defendants' reading of *Cohmad* is wrong. The Section 546(e) safe harbor applies to the *avoidance* of certain *initial* transfers. It does not apply to the *recovery* of related *subsequent* transfers. The Court has previously found that the Trustee has sufficiently pled that the initial transferee, Sentry, had actual knowledge of Madoff's fraud and that such initial transfers are avoidable. *Fairfield Inv.*, 2021 WL 3477479, at *4–5. This finding is law of the case and there is no reason to deviate from and overturn such precedent.

The Eurizon Defendants cannot overcome the law of the case doctrine because no cogent and compelling reason exists to deviate from the above-discussed established law of these adversary proceedings. *See United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (citations omitted) (holding that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless "cogent" and "compelling" reasons militate otherwise). The Court continues to uphold the law of the case doctrine. [7] Following the doctrine ensures defrauded customers holding similar claims receive similar treatment. *In re Pilgrim's Pride Corp.*, 442 B.R. 522, 531 (Bankr. N.D. Tex. 2010); *see also SEC v. F.O. Baroff Co.*, 497 F.2d 280, 283 (2d Cir. 1974) (holding that the purpose of SIPA is protection and equal treatment of public customers of broker-dealers).

_____

[7] *See Picard v. BAM L.P.*, 624 B.R. 55, 61 (Bankr. S.D.N.Y. 2020) (citing *Picard v. Nelson*, 610 B.R. 197, 237 (Bankr. S.D.N.Y. 2019) ("The prior decisions within this SIPA proceeding constitute law of the case."); *Picard v. Legacy Cap. Ltd.*, 603 B.R. 682, 700 (Bankr. S.D.N.Y. 2019) (citing *In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018) (holding that the law of the case doctrine applies across adversary proceedings within the same bankruptcy case), *aff'd*, 943 F.3d 125 (2d Cir. 2019)); *Perez v. Terrestar Corp.* (*In re Terrestar Corp.*), No. 16 Civ. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) (applying the law of the case doctrine because "[a]dversary proceedings filed in the same bankruptcy case do not constitute different cases"), *appeal dismissed*, No. 17-1117 (2d Cir. June 29, 2017).

Recognizing the application of prior rulings, the Eurizon Defendants tacitly admit that the Trustee plausibly alleged Sentry's actual knowledge of Madoff's fraud. *See* Memorandum at 22. Because the Trustee has adequately pleaded Sentry's actual knowledge of fraud, Section 546(e) does not bar the avoidance of initial transfers to Sentry.[8]

### B.    The Eurizon Defendants Are Bound by the Actual Knowledge Exception Established in *Cohmad*.

As law of the case, the Eurizon Defendants are bound by the actual knowledge exception in *Cohmad*. *See, e.g.*, *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 466 (Bankr. S.D.N.Y. 2015) ("Those moving defendants that participated in the withdrawal of the reference of the antecedent debt/value issue have had their day in court and Judge Rakoff's decisions are law of the case."); *Picard v. Lowrey (In re BLMIS)*, 596 B.R. 451, 463 (S.D.N.Y. 2019), *aff'd sub nom. Picard v. Gettinger (In re BLMIS)*, 976 F.3d 184 (2d Cir. 2020), *cert. denied sub nom. Gettinger v. Picard*, 141 S. Ct. 2603, (2021) (holding that the law of the case doctrine foreclosed relitigation of an issue where the district court "considered and rejected the very arguments that defendants now make"). The Court "has already determined that the Fairfield Complaint contains sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule 12(b)(6) motion." *Multi-Strategy*, Adv. Pro. No. 12-01205, at 17 (citing *Fairfield Inv.*, 2021 WL 347779, at *4). No sufficient reason exists to deviate from the well-established law of these adversary proceedings in this SIPA liquidation proceeding.

---

[8] Though not necessary to the Court's analysis, the Eurizon Defendants' argument that the Trustee is in privity with the Fairfield liquidators and therefore bound by any rulings in the Fairfield liquidation is incorrect. *See* Memorandum at 23 n.20. The Eurizon Defendants cite no relevant authority for this argument because none exists. For example, *New Hampshire v. Maine*, 532 U.S. 742 (2001) does not even involve non-party preclusion. And if *Taylor v. Sturgell*, 553 U.S. 880 (2008) "stands for anything, it is for the need to narrow and regularize the use of preclusion against nonparties." *Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*, No. 07-MD-1902 (JSR), 2013 WL 12191844, at *11 (S.D.N.Y. Mar. 25, 2013).

The Eurizon Defendants also cannot relitigate whether actual knowledge bars application of Section 546(e). *Cohmad* was issued in connection with consolidated proceedings before the District Court as to the application of Section 546(e). The District Court then remanded the relevant cases back to this Court, and the Court has since applied the actual knowledge "exception" on several occasions.[9] The Eurizon Defendants participated in those District Court proceedings and are bound by the *Cohmad* decision.[10] The Eurizon Defendants' attempt to preserve their right to appeal that decision in the future is irrelevant to this Motion. Memorandum at 21 n.15.

Also, the Second Circuit's decision in *Ida Fishman*, upon which the Eurizon Defendants rely heavily, does not warrant reconsideration of *Cohmad*'s actual knowledge exception. *See Picard v. Ida Fishman Rev. Tr. (In re BLMIS)*, 773 F.3d 411 (2d Cir. 2014) ("*Ida Fishman*"). As the Court recognized, *Ida Fishman* did not address the actual knowledge exception. *See Picard v. Cohen*, Adv. Pro. No. 10–04311 (SMB), 2016 WL 1695296, at *10 n.16 (Bankr. S.D.N.Y. Apr. 25, 2016).

### C.    The Eurizon Defendants are Also Precluded From Arguing That Section 546(e) Applies Independently to Recovery Actions.

The Trustee is not required to allege the Eurizon Defendants' actual knowledge to invoke the actual knowledge exception to Section 546(e). Here, the Eurizon Defendants simply repackage

---

[9] *See, e.g.*, *Fairfield Inv.*, 2021 WL 3477479, at *4 (applying the actual knowledge exception); *Picard v. Square One Fund Ltd.*, Bench Ruling on Motion to Dismiss, Adv. Pro. No. 10-04330 (Bankr. S.D.N.Y. May 29, 2019) (same); *Picard v. Magnify, Inc. (In re BLMIS)*, 583 B.R. 829, 841 (Bankr. S.D.N.Y. 2018) (same); *Picard v. Mendelow (In re BLMIS)*, 560 B.R. 208, 225–26 (Bankr. S.D.N.Y. 2016) (same); *Picard v. Avellino (In re BLMIS)*, 557 B.R. 89, 112–19 (Bankr. S.D.N.Y. 2016) (same); *Picard v. Shapiro (In re BLMIS)*, 542 B.R. 100, 112–13 (Bankr. S.D.N.Y. 2015) (same); *Picard v. Ceretti (In re BLMIS)*, No. 09-01161 (SMB), 2015 WL 4734749, at *13–15 (Bankr. S.D.N.Y. Aug. 11, 2015) (same); *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 140–41 (Bankr. S.D.N.Y. 2014) (same).

[10] *See* Memorandum of Law in Support of Motion to Withdraw the Reference to the Bankruptcy Court by the Eurizon Defendants at 7–9, *Picard v. Intesa Sanpaolo*, Adv. Pro. No. 12-01680 (Bankr. S.D.N.Y. Sept. 21, 2012), ECF No. 17 (raising Section 546(e) as a ground for withdrawal, among other grounds).

the argument previously rejected by the Court in *BNP* that the Section 546(e) safe harbor should independently apply to recovery actions under Section 550.  *BNP*, 594 B.R. at 197.

Section 546(e) applies to the avoidance of *initial* transfers, not the recovery of subsequent transfers under Section 550.  *See Multi-Strategy*, Adv. Pro. No. 12-01205, at 19 ("By its terms, the safe harbor is a defense to the avoidance of the initial transfer.") (citing *BNP*, 594 B.R. at 197 ("The Trustee does not . . . 'avoid' the subsequent transfer; he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550.")); *see also* 11 U.S.C. § 546(e) ("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title.") (emphasis added).  *Cohmad* does not stand for the proposition that the Court must look solely to the *subsequent transferee's* actual knowledge to determine whether the initial transfer is avoidable.

The Eighth Circuit made this point clear in a recent decision involving a trustee's attempt to recover a subsequent transfer from a feeder fund in the Petters Ponzi scheme.  *See Kelley v. Safe Harbor Managed Acct. 101, Ltd.*, 31 F.4th 1058, 1064 n.5 (8th Cir. 2022) ("Though [the trustee] is seeking to claw back the subsequent transfers made by [the feeder fund] to [the subsequent transferee] through this adversary proceeding, the focus of the Section 546(e) analysis is the initial transfers made by [the initial transferor/debtor] to [the initial transferee/feeder fund].").  In other words, the transfers at issue here are the transfers from BLMIS to Sentry.  This safe harbor limitation is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct."  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 501 B.R. 26, 30 (S.D.N.Y. 2013) (Rakoff, J.) (quoting *In re AVI, Inc.*, 389 B.R. 721, 733 (9th Cir. BAP 2008)).  The Bankruptcy Code's avoidance provisions protect against depletion of a debtor's

estate, while Section 550 is merely a "utility provision," intended to help execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place." *See In re Picard*, 917 F.3d 85, 98 (2d Cir. 2019) (quoting Edward R. Morrison, *Extraterritorial Avoidance Actions: Lessons from Madoff*, 9 Brook. J. Corp. Fin. & Com. L. 268, 273 (2014)). The Court should reject the Eurizon Defendants' attempt to muddle the law by conflating avoidance and recovery under Section 550.

The *Cohmad* court held that Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees. The District Court withdrew the reference on whether Section 546(e) barred recovery of a subsequent transfer pursuant to Section 550.[11] In its decision, however, the court specifically limited the safe harbor to avoidance claims based on the plain language of Section 546(e). *See Cohmad*, 2013 WL 1609154, at *4, *9 (applying the "plain terms" of Section 546(e)), at *7 (recognizing that subsequent transferees can raise initial transferees' defenses to *avoidance*), and at *10 ("[B]oth initial transferees and subsequent transferees are entitled to raise a defense based on the application of Section 546(e) to the *initial* transfer from Madoff Securities.") (emphasis added). And though the *Cohmad* court hypothesized, in *dicta*, that a subsequent transferee's subscription agreements with the initial transferee feeder fund might qualify as "financial institutions" or "financial participants," the decision is clear that the focus of the safe harbor is still on the initial transfers. *See id.*, at *9 ("[T]he question . . . is whether the Trustee has alleged that that *initial transfer* was made in connection with (*i.e.*, related to) a covered securities contract . . . .") (emphasis added).[12]

---

[11] *See* Section 546(e) Briefing Order, *In re Madoff Sec.*, 12-MC-115 (S.D.N.Y. May 16, 2012), ECF No. 119 (withdrawing the reference on issue of "whether application of Section 546(e) to an initial or mediate Transfer bars recovery by the Trustee of any subsequent Transfer pursuant to Section 550").

[12] For this same reason, *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 339 (2d Cir. 2011) (Memorandum at 20), which the District Court cited in *Cohmad* solely to support its reading of what constitutes a "securities contract," does not change this outcome. The focus is still on the initial transfers, which for purposes of Section 546(e) are the transfers from BLMIS to its feeder funds. *Ida Fishman*, 773 F.3d at 422–23.

Consistent with *Cohmad*, the Court held in *BNP* that Section 546(e) is applicable only to avoidance, not recovery, and most notably that a subsequent transferee cannot assert the protections of Section 546(e) where the Trustee has adequately pled the initial transferee's actual knowledge. *See BNP*, 594 B.R. at 197; *see also In re SunEdison, Inc.*, 620 B.R. 505, 514 (Bankr. S.D.N.Y. 2020) ("[T]he safe harbor defense only applies by its terms to the initial transfer."). In *BNP*, the Court explicitly rejected the argument being made by the Eurizon Defendants here—that the "*only* way the Trustee can escape the application of Section 546(e) here is by pleading with particularity and plausibility that the [subsequent transferee defendants] actually knew of the Madoff Ponzi scheme." *BNP*, 594 B.R. at 196–97 (emphasis in original). Like *Cohmad*, *BNP* is law of the case. The Eurizon Defendants are bound by both decisions. *See Picard v. Est. of Seymour Epstein (In re BLMIS)*, No. 21-CV-02334 (CM), 2022 WL 493734, at *12 (S.D.N.Y. Feb. 17, 2022) (finding "in a SIPA liquidation like this one," where different adversary proceedings arise within the same liquidation, that law of the case applies when "prior decisions in an ongoing case either expressly resolve[] an issue or necessarily resolve[] it by implication").

The Eurizon Defendants nevertheless seek to relitigate this point, arguing that, to the extent the Court relies on the feeder fund agreements as the relevant "securities agreements" in accordance with *Cohmad*, it must then look only to the actual knowledge of the subsequent transferee. *See* Memorandum at 18–21.[13] Such an interpretation would eliminate the point of the actual knowledge exception—to restrict any transferee with actual knowledge from hiding behind

---

[13] The Eurizon Defendants also contend that, by alleging that the subsequent transfers were stolen customer property, the Trustee has conceded that the initial transfers were "in connection with" the Fairfield Sentry Articles of Association. *See* Memorandum at 18–21. Showing that the subsequent transfers can be traced through the "relevant pathways" to the initial transfers—which issue is analyzed *infra*—is irrelevant to the issue of whether the initial transfers were "in connection with" any transaction or contract between Fairfield Sentry and the Eurizon Defendants for purposes of applying the securities safe harbor.

the safe harbor. *See Cohmad*, 2013 WL 1609154, at *3 (explaining that defendants who knew BLMIS was a Ponzi scheme "must have known that the transfers they received directly or indirectly from Madoff Securities were not 'settlement payments'"). Adopting the Eurizon Defendants' position would mean that the safe harbor would apply even where the initial transferee feeder fund *knew* there were no securities transactions in need of protection. Accepting that position would allow an initial transferee who had knowledge of the fraud to place fraudulently transferred monies with a subsequent transferee and out of the reach of a trustee.

Expanding the safe harbor as suggested would result in subsequent transferees enjoying more avoidance protection than the initial transferee, which does not reflect Congress's intent. *In re Madoff Sec.*, 501 B.R. at 29 ("Section 550(a) requires that the Trustee show that the transfer he seeks to recover is avoidable in each recovery action, and the subsequent transferee in possession of that transfer may raise any defenses to avoidance available to the initial transferee, as well as any defenses to recovery it may have."). As the Eighth Circuit pointed out in *Kelley* while citing *BNP*, under Section 546(e), "a subsequent transferee is protected *indirectly* to the extent that the initial transfer is not avoidable because of the safe harbor." 31 F. 4th at 1064 n.5 (emphasis added) (quoting *BNP*, 594 B.R. at 197).

The Eurizon Defendants misconstrue *Cohmad*'s holding that a subsequent transferee with actual knowledge cannot benefit from the safe harbor. *See* Memorandum at 26. The *Cohmad* case does not mean that to recover from a subsequent transferee, the Trustee must plead the Eurizon Defendants' actual knowledge. To the contrary, it merely ensures that a subsequent transferee with actual knowledge cannot step into the shoes of an innocent initial transferee to assert the initial transferee's defense to avoidance under Section 546(e). *See Cohmad*, 2013 WL 1609154, at *1, *7. ("A defendant cannot be permitted to in effect launder what he or she knows to be

fraudulently transferred funds through a nominal third party and still obtain the protections of Section 546(e).").

Finally, the Court's *Fairfield Inv.* decision does not demand a different result. In that case, the Court analyzed the actual knowledge of five different subsequent transferees, dismissing the individual claims against one of them. *See* Memorandum at 22–23. The subsequent transferees in that case, however, were administrators and partners of the Fairfield Greenwich Group, and the Court analyzed their actual knowledge for purposes of imputing it to the initial transferee feeder funds. *Fairfield Inv.*, 2021 WL 3477479, at *4–7. That case was also decided under old pleading standards where the burden of pleading lack of good faith was on the Trustee. *See Citibank*, 12 F.4th at 195–200 (holding that the Trustee does not have a burden of pleading lack of good faith). The Court dismissed the individual claims against the relevant subsequent transferee (including two-year transfers not protected by Section 546(e)) after determining the Trustee's allegations as to both actual knowledge and willful blindness were insufficient. *Id.*, at *7–8, *15. The "focus" of the Section 546(e) argument in *Fairfield Inv.* was on the initial transfer and whether the Trustee had sufficiently pled the *initial transferee's* actual knowledge. The Court did not analyze the issue of whether a subsequent transferee's actual knowledge is separately required to defeat the application of Section 546(e). In fact, during a recent oral argument on this issue, the Court confirmed that it dismissed the claims against Corina Noel Piedrahita (the fifth subsequent transferee defendant) in the *Fairfield Inv.* case on good faith grounds, not because Ms. Piedrahita lacked actual knowledge of the Madoff fraud. *See* May 18, 2022 Hr'g Tr. at 75:18–76:7 ("I think you're misreading it. That's not correct. I dismissed on good faith."). The Court confirmed this ruling in *Multi-Strategy*, holding that "[t]he Court never considered whether the safe harbor could be raised by a subsequent transferee in that case" because Section 546(e) "is inapplicable to

subsequent transferees." *Multi-Strategy*, Adv. Pro. No. 12-01205, at 21.

For all of these reasons, the Court should reject the Eurizon Defendants' argument that Section 546(e) bars recovery of the subsequent transfers they received from Sentry.

### III.    The Trustee Adequately Alleged Fraudulent Intent Under the Bankruptcy Code and New York Debtor and Creditor Law.

The Ponzi scheme presumption satisfies the Trustee's burden of pleading fraudulent intent. The Court has repeatedly held that the Trustee can establish fraudulent intent by either showing that the debtor operated a Ponzi scheme or through a badges of fraud analysis. *See Picard v. Ken-Wen Family Ltd. P'ship et al. (In re BLMIS)*, 638 B.R. 41, 49 (Bankr. S.D.N.Y 2022); *Picard v. JABA Assocs. LP (In re BLMIS)*, 528 F. Supp. 3d 219, 236–41 (S.D.N.Y. 2021); *Lisa Beth Nissenbaum Tr.*, 2021 WL 1141638, at *11–15; *Picard v. Cohen*, Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296, at *5 (Bankr. S.D.N.Y. Apr. 25, 2016) ("[T]he Trustee is entitled to rely on the Ponzi scheme presumption pursuant to which all transfers are deemed to have been made with actual fraudulent intent." (citing *In re Bernard L. Madoff*, 531 B.R. at 471)); *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 454 B.R. 317, 330 (Bankr. S.D.N.Y. 2011) ("[T]he fraudulent intent on the part of the debtor/transferor . . . is established as a matter of law by virtue of the 'Ponzi scheme presumption.'"). Under the presumption, "the existence of a Ponzi scheme demonstrates actual intent as [a] matter of law because transfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay or defraud creditors." *Citibank*, 12 F.4th at 181 (citing *Picard v. Estate (Succession) of Igoin (In re BLMIS)*, 525 B.R. 871, 892 n.21 (Bankr. S.D.N.Y. 2015)). Courts have repeatedly concluded that the Trustee has satisfied the fraudulent

intent elements of both Section 548(a)(1)(A) for two-year fraudulent transfers and NYDCL § 276 for six-year transfers by virtue of the Ponzi scheme presumption.[14]

The Eurizon Defendants nevertheless urge the Court, in a footnote, to disregard this settled principle based on a concurring opinion to the *Citibank* decision. Memorandum at 24 n.16. The Court rejected this identical argument in two recent cases, holding that the Court "will follow all courts who have opined on the issue and allow the Trustee to rely on the Ponzi scheme presumption." *See* Memorandum Decision Granting Summary Judgment in Favor of the Trustee, *Picard v. Est. of James Goodman, et al. (In re BLMIS)*, Adv. Pro. No. 10-04762 (CGM) (Bankr. S.D.N.Y. June 6, 2022), ECF No. 127, at *10–11 (citing *In re BLMIS LLC ("Epstein II")*, No. 1:21-CV-02334-CM, 2022 WL 493734, at *11 (S.D.N.Y. Feb. 17, 2022) (internal citation omitted)); *see also* Memorandum Decision Granting Summary Judgment in Favor of the Trustee, *Picard v. Jacob M. Dick Rev. Living Tr. DTD 4/6/01 et al. (In re BLMIS)*, No. 10-04570 (CGM) (Bankr. S.D.N.Y. June 6, 2022), ECF No. 141, at *10–11 (same). The District Court also recently rejected the Eurizon Defendants' argument, holding that, "[n]otwithstanding Judge Menashi's concerns, 'the Ponzi scheme presumption remains the law of this Circuit.'" *Picard v. Sage Realty*, No. 20-CV-10109 (JFK), 2022 WL 1125643, at *28 (S.D.N.Y. Apr. 15, 2022) (quoting *Bear Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.*), 397 B.R. 1, 11 (S.D.N.Y. 2007)).

The only way to overcome the law of the case doctrine is by showing "cogent" or "compelling" reasons such as an "intervening change in controlling law, the availability of new

---

[14] *See Sage Realty*, 2022 WL 1125643, at *27–28 (concluding that the Trustee has established actual intent to defraud pursuant to the Ponzi scheme presumption); *see also Merkin*, 440 B.R. at 257 (finding that the Trustee adequately pleaded actual fraud under NYDCL § 276 by virtue of the Ponzi scheme presumption). The Ponzi scheme presumption has also been embraced in this jurisdiction outside the BLMIS context. *See, e.g., Armstrong v. Collins*, No. 01-CV-2437 (PAC), 2010 WL 1141158, at *20 (S.D.N.Y. Mar. 24, 2010) ("In considering claims of actual fraud, 'courts have widely found that Ponzi scheme operators necessarily act with actual intent to defraud creditors due to the very nature of their schemes.'") (quoting *Terry v. June*, 432 F. Supp 635, 639 (W.D. Va. 2006)).

evidence, or the need to correct a clear error or prevent manifest injustice." *See Johnson v. Holder*, 564 F.3d 95, 99–100 (2d Cir. 2009) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1230 (2d Cir. 2002)).  Judge Menashi's concurrence did not create a change in controlling law.  *Preterm-Cleveland v. McCloud*, 994 F.3d 512, 531 (6th Cir. 2021) (recognizing that a concurring opinion, "being dicta, creates no controlling law"); *Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller*, 957 F.2d 1575, 1578 (11th Cir. 1992) (recognizing that dicta was "neither the law of the case nor binding precedent").  No such reasons exist.

Contrary to the Eurizon Defendants' argument, the Ponzi scheme presumption satisfies the specificity requirements of Rule 9(b).  Any reference to *Sharp Int'l Corp. v. State Street Bank & Tr. Co. (In re Sharp Int'l Corp. et al.)*, 403 F.3d 43 (2d Cir. 2005) is unavailing because, as the Court previously held, a defendant cannot contend that the Trustee has failed to plead intentional fraudulent intent in light of the Ponzi scheme presumption.  *See Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149 (Bankr. S.D.N.Y. 2014) ("*Merkin I*").  *Sharp* did not call into question the continued validity of the Ponzi scheme presumption.  *See, e.g.*, *In re Dreier*, 435 B.R. 391, 425 (Bankr. S.D.N.Y. 2011) (rejecting an argument that *Sharp* eliminated the Ponzi scheme presumption because "*Sharp* did not involve a Ponzi scheme and the Second Circuit did not discuss or refer to the Ponzi scheme presumption or Ponzi [s]chemes in general").  Numerous courts have also found that BLMIS's actual intent to defraud has been established independent of the presumption, based on the same "badges of fraud" alleged in the Complaint—including the concealment of facts by BLMIS, BLMIS's insolvency, and the lack of consideration provided for BLMIS's transfers of fictitious profits to customers.  Compl. ¶¶ 32–42; *see also JABA Assocs. LP*, 528 F. Supp. 3d at 240 (citing *Picard v. Nelson (In re BLMIS)*, 610 B.R. 197, 235 (Bankr. S.D.N.Y.

2019) ("[T]he existence of the badges of fraud supply a separate basis to conclude that the Two-Year Transfers were made with the actual intent to defraud.")).

## IV.   THE TRUSTEE SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE INITIAL TRANSFERS.

As the Court held in *Multi-Strategy*, incorporation of the Fairfield Amended Complaint is proper. *See Multi-Strategy*, Adv. Pro. No. 12-01205, at 14. The Court held that the Trustee sufficiently "pleaded the avoidability of the initial transfers by adopting by reference the entirety of the complaint filed against Fairfield Sentry in adversary proceeding 09-1239." *Id*. Thus, there is no doubt that the Trustee may incorporate by reference a complaint filed in a different adversary proceeding within the same SIPA liquidation proceeding, as the Trustee has done here. Here, the Complaint alleges that "the Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein." Compl. ¶ 44. The Eurizon Defendants argue that this incorporation by reference under Rule 10(c) places an "unjustified burden" on the Eurizon Defendants to "decipher[] the basic elements" of the Trustee's avoidance claim. *See* Memorandum at 26. They also profess that they have not had fair notice under Rule 8 that the Trustee is seeking to avoid the initial transfers. *Id.* at 26–27. The *Multi-Strategy* opinion disposes of these arguments.

### A.   The Incorporated Material Complies with Rule 10 and Rule 8.

   *1.   The Trustee's Incorporation of the Allegations from the Fairfield Amended Complaint is Sufficient to Plead Avoidability of the Initial Transfers from BLMIS to Sentry.*

The District Court has already found sufficient the Trustee's incorporation by reference of the initial transferee complaints—including the Fairfield Amended Complaint—in the Trustee's subsequent transfer actions:

> [T]he Trustee's complaint against [the subsequent transfer defendant] incorporates by reference the complaints against Kingate

> and Fairfield, including the allegations concerning the avoidability
> of the initial transfers, and further alleges the avoidability of these
> transfers outright. . . . Thus, the avoidability of the transfers from
> Madoff Securities to Kingate and Fairfield is sufficiently pleaded
> for purposes of section 550(a).

*In re Madoff Sec.*, 501 B.R. at 36; *accord Multi-Strategy*, Adv. Pro. No. 12-01205, at 14. "Through

the reference to the Fairfield Complaint, the Trustee has adequately pleaded the avoidability of the

initial transfer." *Multi-Strategy*, Adv. Pro. No. 12-01205, at 15. Once again, this decision allowing

for incorporation by reference is law of the case. *See Est. of Seymour Epstein*, 2022 WL 493734,

at *12 (S.D.N.Y. Feb. 17, 2022). No intervening change of controlling law exists to stray from

this precedent. *See Lowrey*, 596 B.R. at 463–64.

As the Court recently held in *Multi-Strategy*, all adversary proceedings filed under the

umbrella of a single bankruptcy case are considered one action for purposes of Rule 10(c). *See*

*Multi-Strategy*, Adv. Pro. No. 12-01205, at 14 (citing *Am. Casein Co. v. Geiger (In re Geiger)*,

446 B.R. 670, 679 (Bankr. E.D. Pa. 2010)). In *Geiger*, a bankruptcy court allowed incorporation

by reference of pleadings filed in a different adversary proceeding within the same chapter 7 case

because the pleadings "directly relate[d] to, materially affect[ed], and [were] filed in a single

bankruptcy case." *Id.* This is so because the bankruptcy case is "an umbrella under which all

actions concerning [the] estate must be brought pursuant to the Bankruptcy Rules." *Id.* Because

this adversary proceeding and the matter filed against Sentry fall under the same BLMIS

liquidation proceeding umbrella, the Trustee may incorporate allegations from the Fairfield

Amended Complaint to pleadings in other adversary proceedings.

    2.    *Incorporation is Permitted Where it Achieves the Purpose*
        *of Rule 10(c).*

Rule 10(c), made applicable by Federal Rule of Bankruptcy Procedure 7010, allows the

incorporation of other pleadings by reference. Rule 10(c) is intended to "facilitate pleadings that

are 'short, concise, and free of unwarranted repetition,' as well as to promote 'convenience' in

pleading." *Morrison v. Off. of the U.S. Tr. (In re Morrison)*, 375 B.R. 179, 193 (Bankr. W.D. Pa.

2007) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1326

(3d ed. 2007) ("Wright and Miller")).

Even if the Court were to find that the adversary proceedings are not one action for

purposes of Rule 10(c), the Court still can permit incorporation by reference.  Although the Eurizon

Defendants suggest that a party cannot incorporate pleadings from other actions under any

circumstances, Memorandum at 25–26, Rule 10(c) is not so limited.  The District Court for the

Southern District of New York and other federal courts have permitted incorporation by reference

of pleadings in separate actions in appropriate circumstances.  *See Sherman v. A.J. Pegno Constr.*

*Corp.*, 528 F. Supp. 2d 320, 323 n.5 (S.D.N.Y. 2007) (citation omitted) (interpreting Rule 10(c)'s

reference to "another pleading" as not being confined to another pleading in the same action, and

permitting incorporation of entire pleadings in separate cases); *Mass. Mut. Life Ins. Co. v.*

*Residential Funding Co., LLC*, 843 F. Supp. 2d 191, 214 n.15 (D. Mass. 2012) (holding

incorporation by reference appropriate where "the court [was] familiar with the filings in the other

[] case[], which [were] substantially similar to [that] case, and the usual concerns about inferring

arguments from other submissions ha[d] less force").

Cases cited by the Eurizon Defendants are inapplicable because in those cases, unlike in

this one where the BLMIS adversary proceedings all fall under the SIPA liquidation proceeding,

the plaintiffs were incorporating pleadings in unrelated actions in an attempt to add new claims.

*See, e.g.*, *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 461–66 (E.D.N.Y.

2007) (holding that the government improperly incorporated by reference various pleadings from

numerous prior civil and criminal actions in order to plead entirely new claims not otherwise

21

alleged in the complaint, and where the complaint did not expressly incorporate the pleadings);

*Davis v. Bifani*, No. 07-CV-00122-MEH-BNB, 2007 WL 1216518, at *1 (D. Colo. Apr. 24, 2007)

(holding that the plaintiff could not incorporate by reference additional claims in a parallel state-

court action that were not alleged in the federal-court complaint); *Nycomed U.S. Inc. v. Glenmark

Generics Ltd.*, No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803, at *4 (E.D.N.Y. Mar. 26,

2010) (holding that incorporation by reference of "subject matter" of a separate pleading "alluding

to" evidence of willful infringement was improperly incorporated by reference into the complaint

for purposes of stating a new willful infringement claim).   As recognized by those courts,

incorporation would have led to confusion or a lack of notice of the claims.   By contrast, the

Trustee is not seeking to add claims through incorporation, and as discussed *infra*, the Eurizon

Defendants cannot legitimately argue they lacked notice that the Trustee was seeking to avoid the

initial transfers to Sentry.[15]

        The Trustee references only one other pleading—the Fairfield Amended Complaint.   The

purpose of the incorporation is explicit and is in the section of the Trustee's Complaint labeled

"Initial Transfers From BLMIS to Sentry," following allegations relating to the Trustee's

avoidance claims in the Fairfield Amended Complaint.   *See* Compl. ¶ 44; *see also* Wright & Miller

§ 1326 ("If the incorporation is clear, less emphasis need be placed on the source of the

incorporated material."); *Whitaker Sec., LLC v. Rosenfeld (In re Rosenfeld)*, 543 B.R. 60, 66

(Bankr. S.D.N.Y. 2015) (noting that some courts fear incorporation by reference will not provide

---

[15] In the other cases cited by the Eurizon Defendants, the information the plaintiffs sought to incorporate was even more irrelevant, such as unidentified "evidence" submitted in another action separate and apart from any pleadings (*Muhammad v. Bethel-Muhammad*, No. CIV.A. 11-0690-WS-B, 2012 WL 1854315, at *3 n.5 (S.D. Ala. May 21, 2012)), and arguments in a previously filed motion to dismiss (*Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212, 215 (D. Mass. 1995)).

adequate notice as to claims or factual allegations, but allowing incorporation because "there is no danger of such prejudice").

Reference to the Fairfield Amended Complaint provides notice of the avoidability of the initial transfers in a manner that avoids repetition and over-complication. Courts have noted that "[t]he ability to incorporate matters from other pleadings is especially useful in multiparty litigation when the presence of common questions often results in the pleadings of the parties on the same side of the litigation being virtually identical, which makes employing simple incorporations by reference highly desirable." *Sherman*, 528 F. Supp. 2d at 323 n.5 (quoting Wright & Miller § 1326); Wright & Miller § 1326 n.1 ("Adoption by reference avoids overly long or complicated pleadings.").

### 3.    *The Trustee's Allegations are Sufficient Under Rule 8.*

Incorporation of the Fairfield Amended Complaint satisfies Rule 8(a)(2). The purpose of the incorporation in the Trustee's Complaint was to make a *prima facie* showing that the initial transfers are avoidable under Section 548(a) so that the Trustee can recover from the Eurizon Defendants under Section 550(a). *See Citibank*, 12 F.4th at 196–97 (holding that "[i]f a trustee establishes a *prima facie* case under the fraudulent transfer provisions, then he or she is entitled to recovery unless the transferee can establish an *affirmative defense*") (emphasis in original) (quoting *Gettinger*, 976 F.3d at 190). The Eurizon Defendants fret that they "might have to respond, paragraph-by-paragraph, to the allegations in the Fairfield Amended Complaint" that are "extraneous" to the issues in this case. Memorandum at 27 n.18. In the Complaint, the Trustee makes specific allegations regarding the Eurizon Defendants' liability under Section 550(a) throughout, and only incorporates the Fairfield Amended Complaint—as part of one paragraph— in pleading the avoidability of the initial transfers. The Eurizon Defendants can respond under the Rules like any other paragraph; their burden is minimal. And the fact that they already analyzed

23

both the Fairfield Amended Complaint and the Fairfield Second Amended Complaint, *see* Memorandum at 5–6, going as far as to include them in their undisclosed tracing analysis, belies the Eurizon Defendants' arguments that they have insufficient notice of the Trustee's allegations.

Repleading the initial transfer allegations does nothing to provide a "short and plain statement." Such duplication is unnecessary in pleading recovery under Section 550, and is inconsistent with the purpose of Rule 8. *See In re Madoff Sec.*, 501 B.R. at 36. Until a subsequent transferee files a motion to dismiss, it is not clear whether that defendant would even challenge avoidability of initial transfers. Adding such allegations would instead create unwarranted repetition and would unnecessarily add countless pages to the Trustee's Complaint.

**B.    The Court May Take Judicial Notice of the *Fairfield Inv.* Decision.**

The Court may also (1) take judicial notice of the operative Second Amended Complaint against Sentry and (2) rely on its recent decision holding that the Second Amended Complaint sufficiently alleged the avoidability of the initial transfers from BLMIS as law of the case. *See Fairfield Inv.*, 2021 WL 3477479, at *4. On a motion to dismiss, "a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*." *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011). "Included among such matters are decisions in prior lawsuits." *DeMasi v. Benefico*, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008). And the fact that the noticed Second Amended Complaint was filed after this Complaint against the Eurizon Defendants is of no consequence. *See Rothman*, 220 F.3d at 91–92 (noticing a later filed complaint in a related proceeding). The Trustee complied with the Rules in pleading the avoidability of the initial transfers.

###### C.    At the Very Least, the Trustee Should be Afforded the Opportunity to Amend.

The Trustee respectfully requests an opportunity to amend if the Court decides not to take judicial notice of the Second Amended Complaint.  The cases the Eurizon Defendants rely upon make clear that leave to amend extends to complaints that were dismissed for improperly incorporating other pleadings or motions by reference.  *See e.g.*, *Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d at 483 (granting leave to amend).  As the Supreme Court has noted, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)." *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006).  The Court should not dismiss the Trustee's Complaint on the basis of pleading technicalities, particularly where the Court has already found that the Fairfield Amended Complaint sufficiently pleads the avoidability of the Sentry transfers.[16]

###### V.    THE TRUSTEE'S COMPLAINT STATES A VALID CAUSE OF ACTION FOR RECOVERY OF STOLEN BLMIS CUSTOMER PROPERTY UNDER SECTION 550(A).

The Trustee's Complaint plausibly alleges that the Eurizon Defendants received subsequent transfers of stolen BLMIS customer property.  To plead a subsequent transfer claim, the Trustee must allege facts that support an inference "that the funds at issue originated with the debtor." *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149–50 (Bankr. S.D.N.Y. 2014) ("*Merkin I*") (quoting *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007)).  As the Court held in *Multi-Strategy*, the Trustee is not required to perform a

---

[16] Should the Court determine that amending is warranted here, the Trustee can amend the Complaint to include allegations addressed in specific paragraphs of the Fairfield Second Amended Complaint as necessary.

tracing analysis, as the Eurizon Defendants acknowledge (Memorandum at 28), or to present a

"'dollar-for-dollar accounting' of 'the exact funds' at issue." *See Multi-Strategy*, Adv. Pro. No.

12-01205, at 13; *see also Merkin*, 515 B.R. at 149–50 (quoting *Picard v. Charles Ellerin Rev. Tr.*

*(In re BLMIS)*, Adv. Pro. No. 10-04398 (BRL), 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar.

14, 2012)).  Rather, "the Trustee need only allege sufficient facts to show the relevant pathways

through which the funds were transferred from BLMIS to [the subsequent transferee]." *Charles*

*Ellerin Rev. Tr.*, 2012 WL 892514, at *3; *see also 45 John Lofts, LLC v. Meridian Cap. Grp. LLC*

*(In re 45 John Lofts, LLC)*, 599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019).  Specifically, the Trustee

must allege the "'necessary vital statistics—the who, when, and how much' of the purported

transfers to establish an entity as a subsequent transferee of the funds." *Merkin I*, 515 B.R. at 150

(quoting *Silverman*, 379 B.R. at 32).

A.      **The Trustee's Complaint Meets the Pleading Requirements.**

The Trustee's Complaint provides the necessary vital statistics, i.e., the "who, when, and

how much" for each of the subsequent transfers, alleging that (1) the Eurizon Defendants received

three transfers totaling $11,653,515 from Sentry on June 16, 2003, March 15, 2005, and September

15, 2004, and (2) Sentry invested substantially all of its funds with BLMIS.  *See* Compl. ¶¶ 51–

52; Exs. C, D.  By including this information, the Trustee "provides [the Eurizon Defendants] with

the 'who, when, and how much' of each transfer." *See Multi-Strategy*, Adv. Pro. No. 12-01205,

at 22.  The Trustee's Complaint plausibly alleges that the Eurizon Defendants received subsequent

transfers of stolen customer property by outlining the relevant pathways through which such stolen

customer property was transferred from BLMIS to Sentry and subsequently to the Eurizon

Defendants.  Nothing more is required.  *See, e.g.*, *Picard v. Mayer (In re BLMIS)*, Adv. Pro. No.

20-01316 (CGM), 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021) (rejecting an

argument that a "claim ha[d] not been plead with enough specificity as to how and what [the

defendant] received" and holding that the complaint "contain[ed] sufficient information regarding which transfers the Trustee [was] seeking to recover").

### B.    The Eurizon Defendants Misstate the Trustee's Pleading Burden.

The Trustee is not required to tie each subsequent transfer the Eurizon Defendants received to a specific initial transfer from BLMIS. *See Multi-Strategy*, Adv. Pro. No. 12-01205, at 13.  In *Merkin I*, the Court refused to dismiss subsequent transfer claims even though the complaint "d[id] not connect each of the subsequent transfers with an initial, voidable transfer emanating from BLMIS."  515 B.R. at 150; *see also 45 John Lofts, LLC*, 599 B.R. at 747 (finding no "requirement to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss").  Similarly, the Trustee is not required to detail what portion of each subsequent transfer comprises stolen customer property.  *See Merkin I*, 515 B.R. at 152–53 (refusing to dismiss a complaint where "at least some of the subsequent transfers . . . may be recoverable"); *see also Silverman*, 379 B.R. at 30 (finding "if dollar-for-dollar accounting is not required at the proof stage, then surely it is not required at the pleading stage either").  Any argument to the contrary is wrong and disregards the law of the adversary proceedings within this SIPA liquidation proceeding.

*Picard v. Shapiro* did not change the Trustee's pleading burden.  *See Picard v. Shapiro (In re BLMIS)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015)).  In *Shapiro*, the Trustee alleged that certain trusts and members of the Shapiro family received approximately $54 million in fraudulent transfers from BLMIS, and "upon information and belief," these defendants subsequently transferred this same amount to other defendants.  542 B.R. at 119.  Unlike the Complaint against the Eurizon Defendants, the complaint in *Shapiro did not detail any* of the necessary vital statistics of the subsequent transfers.  *Id.*  There were no allegations regarding the subsequent transferors, the subsequent transferees, or the dates or amounts of the subsequent transfers.  *Id.*  Consequently,

the Court granted the defendants' motion to dismiss the subsequent transfer claim. *Id.* Here, *Shapiro* actually supports denying the Motion because the Trustee sufficiently pleaded the (1) investment relationship between the Eurizon Defendants and Sentry and (2) the vital statistics of each transfer by alleging that (i) the Eurizon Defendants received a total of three transfers from Sentry on June 16, 2003, March 15, 2005, and September 15, 2004 in the aggregate amount of $11,653,515, and (ii) Sentry invested substantially all of its funds with BLMIS.

        *Angell v. Ber Care, Inc. (In re Caremerica, Inc.)*, 409 B.R. 737 (Bankr. E.D.N.C. 2009) is also inapposite. *Caremerica* involved preferential transfers from a non-debtor bank account where the trustee failed to "rebut the alternative and reasonable possibility that the funds . . . originated from sources other than the debtors." 409 B.R. at 751. This does not apply here because the Trustee identified specific transfers from BLMIS to Sentry and from Sentry to the Eurizon Defendants.

### C.    The Eurizon Defendants' Tracing Arguments are Inappropriate for a Motion to Dismiss.

        The Eurizon Defendants' other fact-based tracing arguments fare no better. First, the Trustee is not required to trace the flow of stolen customer property at the pleading stage. "The law does not place such a difficult burden on trustees. The commingling of legitimate funds with funds transferred from a debtor does not defeat tracing." *Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-CV-1073 (ECT/KMM), 2020 WL 3077151, at *4 (D. Minn. June 10, 2020) (citing *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *2)). The Eurizon Defendants' "impossibility" argument is also fatally flawed. As the Court held in *Multi-Strategy*, "Defendant's calculation ignores any money received by Fairfield Sentry prior to December 11, 2002. The Court is not convinced that this is the only method of calculating customer property." *Multi-Strategy*, Adv. Pro. No. 12-01205, at 22.

Second, determining whether Sentry paid other investors with stolen customer property it received from BLMIS prior to making any transfers to the Eurizon Defendants is a fact-intensive inquiry, which is inappropriate for resolution at this stage of the pleadings. The declaration of the Eurizon Defendants' counsel (Ditchfield Decl.), which applies some undefined tracing methodology to contest the subsequent transfers in this proceeding, is improper on a motion to dismiss and only emphasizes the need for discovery to resolve these issues. The Ditchfield Decl. is nothing more than an attempt to interject improper testimony into a Rule 12(b)(6) context. *See Sass v. Barclays Bank PLC (In re Am. Home Mortg., Holdings, Inc.)*, 501 B.R. 44, 64 (Bankr. D. Del. 2013) (holding that matters subject to factual and expert evidence are "inappropriate to decide on a motion to dismiss").

The Eurizon Defendants are in effect applying their own undisclosed tracing methodology. But it is for the Court to decide—after fact and expert discovery—on the appropriate tracing methodology to apply to this case under the circumstances. *See Picard v. Merkin (In re BLMIS)*, 581 B.R. 370, 386 (Bankr. S.D.N.Y. 2017) ("[T]he Court's selection of an appropriate methodology is committed to the Court's discretion."); *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3 n.7 ("Courts have broad discretion to determine which monies of commingled funds derive from fraudulent sources.") (citing *United States v. Henshaw*, 388 F.3d 738, 741 (10th Cir. 2004) (finding "courts exercise case-specific judgment to select the method best suited to achieve a fair and equitable result on the facts before them")).[17]

---

[17] The different tracing methodologies include: (1) Last In, First Out (LIFO), (2) First In, First Out (FIFO), (3) Lowest Intermediate Balance Rule (LIBR), (4) Restated Tracing Rules (Restated LIBR), and (5) Proportionality, and these "methodologies reflect legal rules or fictions designed to assist a Court in dealing with an improper transfer from a commingled fund." *Merkin*, 581 B.R. at 386.

The argument that every subsequent transfer made prior to the transfers the Eurizon Defendants received was sourced solely by stolen customer property is also fact intensive and requires fact and expert discovery. Neither the Complaint nor its exhibits establish this, and at this stage of the proceedings, the Trustee is not required to plead, much less establish, that an alleged subsequent transfer is comprised solely of stolen customer property. *See Westford Special Situations*, 2020 WL 3077151, at *4 (holding that where a debtors' funds are commingled with "cash from new subscribing investors," a trustee is not required to establish that the transfers "originated solely" with the debtor or even to account for "the exact funds at issue" on summary judgment).

The Trustee is a stranger to the transactions between Sentry and the Eurizon Defendants and is entitled to discovery regarding the above-referenced transactions by and between Sentry and the Eurizon Defendants. "[I]n a case such as this one, where the Trustee's lack of personal knowledge is compounded with complicated issues and transactions [that] extend over lengthy periods of time, the trustee's handicap increases, and even greater latitude should be afforded." *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up). This is one reason why the Court in *Merkin I* denied the defendants' motion to dismiss, finding "[t]he subsequent transfer claim must ultimately be proved through the books and records of the defendants." 515 B.R. at 151.[18] And even after fact and expert discovery, there may be fact disputes that require a trial. For example, in *Merkin*, the Court denied the defendants' motion in

---

[18] The Eurizon Defendants argue that this case is unlike *Merkin I* in that the Trustee has had access to the Fairfield books and records "for over a decade." *See* Memorandum at 32. This is untrue. The Trustee does not have all of Fairfield Sentry's books and records, and discovery in the Trustee's actions against the Fairfield management defendants is continuing. *See, e.g.*, Stipulated Case Mgmt. Order, *Fairfield Inv.*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Dec. 6, 2021), ECF No. 353 (setting a November 22, 2022 deadline for fact discovery and an August 22, 2023 deadline for expert discovery). The Eurizon Defendants also no doubt have records they can provide on these same transactions.

limine to exclude the Trustee's accounting expert, finding expert testimony at trial "may assist the Court in making its own determination as to the proper methodology." 581 B.R. at 386; *see also Westford Special Solutions*, 2020 WL 3077151, at \*5 (denying summary judgment because of a fact dispute after the trustee introduced an expert report and associated documents from which a jury may infer the defendants received subsequent transfers of property from the Petters Ponzi scheme).

Third, the amount of time that elapsed between Sentry's receipt of certain initial transfers from BLMIS and Sentry's subsequent transfers to the Eurizon Defendants is a variation of the Eurizon Defendants' aforementioned tracing argument that Sentry transferred BLMIS's stolen customer property to other investors before getting to the Eurizon Defendants. For the reasons stated above, tracing arguments are inappropriate on a motion to dismiss. And even if it may prove difficult for the Trustee to trace these transfers, this is not grounds for dismissal at the pleading stage. *See Merkin I*, 515 B.R. at 152 (finding it "premature to cut off the Trustee's opportunity to satisfy his [tracing] burden on a motion to dismiss" merely because the tracing may prove difficult); *Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*, Adv. Pro. No. 10-03493 (SMB), 2014 WL 47774, at \*15 (Bankr. S.D.N.Y. Jan. 3, 2014) ("[T]he [subsequent transferees'] speculation that tracing is 'not likely' to reveal a subsequent transfer . . . hardly justifies granting [their cross-motion for summary judgment].").

### D.     The Eurizon Defendants' Claims of Double Recovery are Premature.

There is no dispute that the Trustee is limited to "a single satisfaction" under Section 550(a). *See* 11 U.S.C. § 550(d). Indeed, any concern the Eurizon Defendants' have about the Trustee recovering more than he is entitled to "is unfounded." *See Multi-Strategy*, Adv. Pro. No. 12-01205, at 22. The Trustee "can recover from any combination of [transferees]" up to the amount avoided. *Helms v. Metro. Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 656 (Bankr. N.D.

Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021). And under Section 550(a), "a trustee may recover [an avoided] transfer from a subsequent transferee of those funds, without the necessity for allocation among all subsequent transferees." *CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*, 393 B.R. 306, 333 (Bankr. W.D.N.Y. 2008). Thus, the Trustee may simultaneously seek recovery from the Eurizon Defendants in this action and from defendants in other actions, even in an aggregate amount that exceeds associated initial transfers until the Trustee recovers the full amount of the approximately $3 billion in fraudulent transfers received by Sentry. *See Fairfield Inv.*, 2021 WL 3477479, at *12 (holding the defendants' arguments regarding "double recovery" and the Trustee's purported limitations under Section 550(d) are "to be determined at a later stage of [the] litigation").

## CONCLUSION

The Trustee respectfully requests that the Court deny the Motion.

Dated:  June 14, 2022
New York, New York

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

By: */s/ Matthew B. Lunn*
Rockefeller Center
1270 Avenue of the Americas, Suite 2210
New York, New York 10020
Telephone: (212) 332-8840
Facsimile: (212) 332-8855
Matthew B. Lunn
Email: mlunn@ycst.com
Michael S. Neiburg (admitted *pro hac vice*)
Email:  mneiburg@ycst.com
Justin P. Duda
Email: jduda@ycst.com
Christopher M. Lambe (admitted *pro hac vice*)
Email: clambe@ycst.com

*Attorneys for Plaintiff Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*