**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 12-01021 (CGM) |
| Plaintiff, | |
| v. | |
| GROSVENOR INVESTMENT MANAGEMENT LTD., GROSVENOR PRIVATE RESERVE FUND LIMITED, GROSVENOR BALANCED GROWTH FUND LIMITED, AND GROSVENOR AGGRESSIVE GROWTH FUND LIMITED, | |
| Defendants. | |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ......................................................................................... 3

    I.      BLMIS ..................................................................................................... 3

    II.     SENTRY ................................................................................................. 3

    III.    DEFENDANTS AND THEIR INVESTMENT IN SENTRY ........................................... 4

        A.     Defendants Were Sophisticated Investors ............................................. 4

        B.     Defendants Used Sentry to Gain Access to New York-Based BLMIS ................. 4

        C.     Defendants Invested in Kingate, Another Path to BLMIS in New York .............. 8

ARGUMENT ...................................................................................................... 8

    I.      THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS .................... 8

        A.     Defendants' Contacts With New York Support Jurisdiction ................................ 9

        B.     Defendants Purposefully Availed Themselves of the Laws and Privileges of
             New York by Investing in a New York-Based BLMIS Feeder Fund ................. 11

            1.     The Subscription Agreements that Govern the Redemptions of
                 Customer Property Are Compelling Jurisdictional Contacts ................. 12

            2.     Defendants Entered into Additional Contracts with New York's
                 FGG to Recruit Investors for Sentry ....................................................... 14

            3.     *BLI* Establishes this Court's Jurisdiction Over Defendants ................. 15

            4.     *Walden* Does Not Change the Jurisdictional Analysis ......................... 17

        C.     Defendants' Use of Domestic Bank Accounts in New York Establishes
             Jurisdiction ........................................................................................... 18

            1.     Defendants Used Sentry's New York Bank Accounts to Subscribe ....... 18

            2.     Defendants Instructed Sentry to Redeem to New York
                 Correspondent Accounts .......................................................... 19

            3.     The Trustee's Claims Arise Out of or Relate to Defendants' Use of
                 New York Accounts .............................................................. 22

D.      Defendants' Communications with Sentry Establish Jurisdiction ....................... 24

E.      The Defendants' Investment and Contacts with Kingate in New York
        Contribute to Establishing Jurisdiction ................................................................. 25

F.      The Exercise of Personal Jurisdiction Over Defendants Is Reasonable ............. 26

G.      In the Alternative, the Trustee Is Entitled to Jurisdictional Discovery ............... 27

II.     THE TRUSTEE HAS SATISFIED HIS PLEADING BURDEN .................................... 27

A.      The Complaint Sufficiently Pleads Avoidability of the Initial Transfers ............ 27

B.      The Incorporated Material Complies With Federal Rules of Civil Procedure
        10 and 8 .................................................................................................................. 29

III.    THE TRUSTEE'S CLAIM IS NOT BARRED UNDER 11 U.S.C. § 546(e) .................. 30

A.      Sentry Had Actual Knowledge of Madoff's Fraud ............................................... 31

B.      Section 546(e) Does Not Apply Independently to Recovery Actions ................. 32

IV.     THE TRUSTEE HAS PLAUSIBLY ALLEGED DEFENDANTS RECEIVED
        BLMIS PROPERTY ........................................................................................................ 33

A.      The Trustee's Complaint Properly Pleads That Defendants Received
        Recoverable Stolen Customer Property Under Section 550(A) ........................... 33

B.      Defendants' Tracing Arguments Fail .................................................................... 35

C.      Defendants' Double Recovery Claims Are Premature ........................................ 37

CONCLUSION ........................................................................................................................... 38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
  98 F.3d 25 (2d Cir. 1996) ............................................................................................... 9

*Al Rushaid v. Pictet & Cie*,
  68 N.E.3d 1 (N.Y. 2016) ............................................................................................... 22

*Am. Casein Co. v. Geiger (In re Geiger)*,
  446 B.R. 670 (Bankr. E.D. Pa. 2010) ...................................................................... 28, 29

*In re Bernard L. Madoff Inv. Sec. LLC*, 976 F.3d 184 (2d Cir. 2020),
  *cert. denied sub nom. Gettinger v. Picard*,
  141 S. Ct. 2603 (2021) ........................................................................................ 2, 3, 11

*In re BLMIS*,
  654 F.3d 229 (2d Cir. 2011) ........................................................................................... 3

*In re BLMIS*,
  721 F.3d 54 (2d Cir. 2013) ............................................................................................. 3

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ........................................................................................... 9, 18, 26

*Chloé v. Queen Bee of Beverly Hills, LLC*,
  616 F.3d 158 (2d Cir. 2010) ................................................................................. 8, 9, 26

*CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*,
  393 B.R. 306 (Bankr. W.D.N.Y. 2008) ....................................................................... 37

*Davis v. Bifani*,
  No. 07-cv-00122-MEH-BNB, 2007 WL 1216518 (D. Colo. Apr. 24, 2007) ................. 29

*DeMasi v. Benefico*,
  567 F. Supp. 2d 449 (S.D.N.Y. 2008) .......................................................................... 28

*Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*,
  722 F.3d 81 (2d Cir. 2013) ............................................................................................. 8

*ESI, Inc. v. Coastal Corp.*,
  61 F. Supp. 2d 35 (S.D.N.Y. 1999) ........................................................................ 10, 25

*Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
  397 F.Supp.3d 323 (S.D.N.Y. 2019) ....................................................................... 11, 18

*Ferrari v. Cnty. of Suffolk*,
  790 F. Supp. 2d 34 (E.D.N.Y. 2011) ............................................................................ 28

iv

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Court*,
   141 S. Ct. 1017 (2021) .................................................................................. 9, 13, 17, 22

*Golden Archer Invs., LLC v. Skynet Fin. Sys.*,
   No. 11 CIV. 3673 (RJS), 2012 WL 123989 (S.D.N.Y. Jan. 3, 2012) .................................................................. 24

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984) .................................................................. 17

*Helms v. Metro. Life Ins. Co. (In re O'Malley)*,
   601 B.R. 629 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021) ...................................... 37

*Homeschool Buyers Club, Inc. v. Brave Writer, LLC*,
   No. 19-CV-6046 (VSB), 2020 WL 1166053 (S.D.N.Y. Mar. 11, 2020) ............................................. 18

*HSH Nordbank AG New York Branch v. Street*,
   No. 11 CIV. 9405 DLC, 2012 WL 2921875 (S.D.N.Y. July 18, 2012) ........................................ 18, 23

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) .................................................................. 9, 26

*Kelley v. Safe Harbor Managed Acct. 101, Ltd.*,
   No. 20-3330, 2022 WL 1177748 (8th Cir. Apr. 21, 2022) .................................... 32

*Kelley v. Westford Special Situations Master Fund, L.P.*,
   No. 19-cv-1073, 2020 WL 3077151 (D. Minn. June 10, 2020) .................................... 36, 37

*Kiobel v. Royal Dutch Petroleum Co.*,
   No. 02 Civ. 7618 (KMW)(HBP), 2009 WL 3817590 (S.D.N.Y. Nov. 16, 2009) .............................. 27

*Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*,
   No. 07-MD-1902 (JSR), 2013 WL 12191844 (S.D.N.Y. Mar. 25, 2013) ............................ 31

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   732 F.3d 161 (2d Cir. 2013) .................................................................. 13, 21

*Licci v. Lebanese Canadian Bank, SAL*,
   984 N.E.2d 893 (N.Y. 2012) .................................................................. 13

*Morrison v. Off. of the U.S. Tr. (In re Morrison)*,
   375 B.R. 179 (Bankr. W.D. Pa. 2007) .................................................................. 29

*In re Motors Liquidation Co.*,
   565 B.R. 275 (Bankr. S.D.N.Y. 2017) .................................................................. 18

*Muhammed v. Bethel-Muhammad*,
   No. CIV.A. 11-0690-WS-B, 2012 WL 1854315 (S.D. Ala. May 21, 2012) ...................... 29

*New Hampshire v. Maine*,
   532 U.S. 742 (2001) .................................................................. 31

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
   No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010) ............................... 29

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
   549 B.R. 56 (S.D.N.Y. 2016) .................................................................................................... 21, 23

*Picard v. Banque SYZ & Co., SA*, Adv. Pro. No. 11-02149 (CGM),
   ECF No. 167 (Main Case ECF No. 21741) Bankr. S.D.N.Y. June 14, 2022)........................... *passim*

*Picard v. Bureau of Labor Ins. (In re Bernard L. Madoff)*,
   480 B.R. 501 (Bankr. S.D.N.Y. 2012) .................................................................................... *passim*

*Picard v. Chais (In re Bernard L. Madoff Inv. Sec. LLC)*,
   440 B.R. 274 (Bankr. S.D.N.Y. 2010) ................................................................................. 22, 23, 27

*Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*,
   No. 08-01789 (BRL), 2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012) ........................ 33, 34, 36

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   418 B.R. 75 (Bankr. S.D.N.Y. 2009) ..................................................................................... *passim*

*Picard v. Est. of Igoin (In re Bernard L. Madoff Inv. Sec. LLC)*,
   525 B.R. 871 (Bankr. S.D.N.Y. 2015) ...................................................................................... 19, 22

*Picard v. Fairfield Greenwich Grp. (In re Sentry Ltd.)*,
   627 B.R. 546 (Bankr. S.D.N.Y. 2021) .................................................................................... *passim*

*Picard v. Fairfield Inv. Fund (In re BLMIS)*,
   No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr.
   S.D.N.Y. Aug. 6, 2021) .......................................................................................................... *passim*

*Picard v. Fairfield Inv. Fund Ltd.*,
   Adv. Pro. No. 09-01239 (SMB) (Aug. 28, 2020) .................................................................. 2, 3, 38

*Picard v. Fairfield Inv. Fund Ltd. (In re Bernard L. Madoff)*,
   Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Dec. 6, 2021) ...................................................... 35

*Picard v. Ida Fishman Revocable Trust*,
   773 F.3d 411 (2d Cir. 2014) ....................................................................................................... 3

*Picard v. JPMorgan Chase & Co.*,
   No. 08-99000 (SMB), 2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10, 2014)................................ 11, 16

*Picard v. Maxam Absolute Return Fund, L.P.*,
   460 B.R. 106 (Bankr. S.D.N.Y. 2011) ................................................................................... 9, 11, 27

*Picard v. Mayer (In re BLMIS)*, Adv. Pro. No. 20-01316 (CGM),
   2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021)........................................................................ 34

*Picard v. Merkin (In re BLMIS)*,
   515 B.R. 117 (Bankr. S.D.N.Y. 2014) ................................................................................... 33, 36

*Picard v. Multi-Strategy Fund Ltd.*, Adv. Pro. No. 12-01205 (CGM),
  ECF No. 122 (Main Case ECF No. 21729) (Bankr. S.D.N.Y. June 13, 2022) ............................ *passim*

*Picard v. Sage Realty*,
  No. 20 Civ. 10057 (JFK), 2021 WL 5926059 (S.D.N.Y. Dec. 15, 2021) ........................................... 37

*Picard v. Shapiro*,
  542 B.R. 100 (Bankr. S.D.N.Y. 2015) ............................................................................................. 34

*In re Picard, Tr. for the Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
  917 F.3d 85 (2d Cir. 2019) ................................................................................................ 12, 27, 32

*Rothman v. Gregor*,
  220 F.3d 81 (2d Cir. 2000) .............................................................................................................. 29

*Rubinbaum LLP v. Related Corp. Partners V, L.P.*,
  154 F. Supp. 2d 481 (S.D.N.Y. 2001) ............................................................................................. 24

*S. New Eng. Tel. Co. v. Glob. NAPs Inc.*,
  624 F.3d 123 (2d Cir. 2010) ............................................................................................................. 8

*Sec. Int. Prot. Corp. v. BLMIS (In re Consolidated Proceedings on 11 U.S.C. §550(a))*,
  501 B.R. 26 (S.D.N.Y. 2013) ............................................................................................... 29, 30, 32

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  531 B.R. 439 (Bankr. S.D.N.Y. 2015) ............................................................................................. 31

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  594 B.R. 167 (Bankr. S.D.N.Y. 2018) ...................................................................................... *passim*

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  No. 12-MC-115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) (Rakoff, J.) ......................... 30, 32, 33

*Shaffer v. Heitner*,
  433 U.S. 186 (1977) .......................................................................................................................... 9

*Sherman v. A.J. Pegno Constr. Corp.*,
  528 F. Supp. 2d 320 (S.D.N.Y. 2007) ............................................................................................. 30

*Taylor v. Sturgell*,
  553 U.S. 880 (2008) ........................................................................................................................ 31

*United States v. Cut*,
  720 F.3d 453 (2d Cir. 2013) ............................................................................................................ 37

*United States v. Int'l Longshoremen's Ass'n*,
  518 F. Supp. 2d 422 (E.D.N.Y. 2007) ............................................................................................. 29

*Walden v. Fiore*,
  571 U.S. 277 (2014) ........................................................................................................................ 17

vii

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016) ............................................................................................. 26

*Whitaker v. Am. Telecasting, Inc.*,
    261 F.3d 196 (2d Cir. 2001) ............................................................................................... 8

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ......................................................................................................... 26

**Statutes**

11 U.S.C. § 546(e) .................................................................................................................. *passim*

11 U.S.C. § 548(a)(1)(A) ....................................................................................................... 30, 32

11 U.S.C. § 550 ...................................................................................................................... 30, 32

11 U.S.C § 550(a) .................................................................................................................. *passim*

11 U.S.C § 550(d) ......................................................................................................................... 37

Securities Investor Protection Act, 15 U.S.C. §§ 78aaa–*lll* ........................................................... 1

Securities Investor Protection Act, 15 U.S.C. § 78lll(4) ............................................................... 2

**Rules**

Federal Rule of Civil Procedure 8 .......................................................................................... 29, 30

Federal Rule of Civil Procedure 8(a)(2) ................................................................................. 27, 28

Federal Rule of Civil Procedure 10 ............................................................................................... 29

Federal Rule of Civil Procedure 10(c) .................................................................................... 28, 29

Federal Rule of Civil Procedure 12 ............................................................................................... 30

Federal Rule of Civil Procedure 12(b)(6) ..................................................................................... 31

Federal Rule of Civil Procedure 37(e) .......................................................................................... 35

**Other Authorities**

5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure 3d* § 1326
    (3d ed. 2007) ................................................................................................................... 29

*Principal*, Merriam-Webster (11th ed. 2020) ............................................................................... 6

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection

Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff, submits this

memorandum of law and declaration of Dean D. Hunt ("Decl."), in opposition to Defendants'

Grosvenor Investment Management Ltd. ("Management"), Grosvenor Private Reserve Fund Limited

("Reserve"), Grosvenor Balanced Growth Fund Limited ("Balanced") and Grosvenor Aggressive

Growth Fund Limited ("Aggressive" and with Reserve and Balanced, the "Grosvenor Funds," and

together with Management, "Defendants") Motion to Dismiss the Complaint ("Motion").

## PRELIMINARY STATEMENT

On June 13 and 14, 2022, this Court denied defendants' Multi-Strategy Fund Limited and

Banque SYZ & Co., SA Motions to Dismiss, which raised near identical arguments to those raised

by Defendants. *See Picard v. Multi-Strategy Fund Ltd.*, Adv. Pro. No. 12-01205 (CGM), ECF No.

122 (Main Case ECF No. 21729) (Bankr. S.D.N.Y. June 13, 2022) ("*Multi-Strategy*"); *Picard v.

Banque SYZ & Co., SA*, Adv. Pro. No. 11-02149 (CGM), ECF No. 167 (Main Case ECF No.

21741) (Bankr. S.D.N.Y. June 14, 2022) ("*Banque SYZ*"). Defendants' Motion should also be

denied.

Trying to distance themselves from this forum, Defendants, like Multi-Strategy and

Banque SYZ, paint a surrealistic picture of a fully foreign investment in which they stood

cluelessly on the sidelines while Fairfield Sentry ("Sentry"), a single purpose feeder fund wholly

dependent on BLMIS, invested their money in New York. In reality, Defendants fully intended

their money would be invested with BLMIS, sanctioned BLMIS as integral to their decision to

invest through Sentry, and even directly entered into agreements with Sentry under which

Defendants actively recruited new investors to Sentry in exchange for fees. Further, Defendants

signed contracts that affirmed they received and read Sentry's disclosures and offering terms that

1

stated Sentry had given BLMIS sole control to invest Defendants' subscriptions using a strategy relying entirely on the purchase and sale of U.S. securities and options in New York.

The Trustee has alleged the minimum contacts necessary to establish personal jurisdiction. Defendants' sole purpose in investing in the New York-based single-purpose fund was to make money from BLMIS. The contracts Defendants entered with Sentry, the use of New York bank accounts to facilitate their investment objectives, and their frequent interactions with New York investment advisors are precisely the type of minimum contacts that establish specific personal jurisdiction, as considered by this Court in *Multi-Strategy*.

Next, the Trustee's Complaint ("Compl."), ECF No. 1, alleges avoidability of the initial transfers from BLMIS to Sentry and properly incorporates his complaint against the Fairfield Greenwich Group ("FGG")[1] to further explain avoidability. Moreover, this Court may take judicial notice of its ruling that the Fairfield Complaint adequately pleads the avoidability of the initial transfers. *See Picard v. Fairfield Inv. Fund Ltd. (In re Bernard L. Madoff)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*").

Third, Defendants wrongly argue they are entitled to judgment on the pleadings because the safe harbor provision of 11 U.S.C. § 546(e) bars the Trustee from avoiding the initial transfers from BLMIS to Sentry from which the subsequent transfer 11 U.S.C § 550(a) recovery claim is derived. Defendants also claim the Trustee does not identify the specific initial transfers of comingled BLMIS stolen Customer Property[2] subsequently transferred to Defendants. Neither argument is correct. A Section 546(e) affirmative defense does not protect Defendants, and the Trustee's Complaint is not required to detail what portion of the subsequent transfers to Defendants

---

[1] Amended Complaint, *Picard v. Fairfield Sentry Ltd., et al.*, Adv. Pro. No. 09-01239 (BRL) (July 20, 2010), ECF No. 23 ("Fairfield Complaint"), now superseded by the Second Amended Complaint. Second Amended Complaint, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (SMB) (Aug. 28, 2020), ECF No. 286.
[2] SIPA § 78lll(4).

comprise stolen Customer Property or tie them to specific initial transfers from BLMIS to Sentry. As this Court found in *Multi-Strategy* and *Banque SYZ*, the Trustee has properly pled the vital statistics for each recoverable subsequent transfer.

Far from being foreign, Defendants' investments had "New York" and "BLMIS" written all over them. As professional investors consciously speculating millions of dollars in securities using a single, nontraditional trading strategy that relied exclusively on investments in U.S. stocks and options, Defendants repeatedly acknowledged their objective to make money through BLMIS in New York. The Trustee's Complaint provides a clear, detailed basis for recovery.

## STATEMENT OF FACTS

### I.   BLMIS

This case arises out of the infamous Ponzi scheme perpetrated by Bernard L. Madoff, the facts of which are "well documented across many pages of Federal Reporters" and are pled with specificity in the Complaint. *See In re Bernard L. Madoff Inv. Sec. LLC*, 976 F.3d 184, 188 (2d Cir. 2020), *cert. denied sub nom. Gettinger v. Picard*, 141 S. Ct. 2603 (2021) (citing *e.g., Picard v. Ida Fishman Revocable Trust*, 773 F.3d 411 (2d Cir. 2014); *In re BLMIS*, 721 F.3d 54 (2d Cir. 2013); *In re BLMIS*, 654 F.3d 229 (2d Cir. 2011)); Compl. ¶¶ 26–36.

### II.   SENTRY

Sentry was a single-purpose U.S. dollar-denominated investment fund whose sole purpose was to funnel money to BLMIS, specifically, 95% of the assets of investors like Defendants. *See* Compl. ¶¶ 2, 7. Sentry was controlled by FGG, a *de facto* partnership that managed and conducted key operations from its New York office. *See Fairfield Inv. Fund*, 2021 WL 3477479, at *9; Compl. ¶ 6.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Sentry. Compl. ¶ 34. In 2011, the Trustee settled with Sentry and others; Sentry consented to a $3.054

billion judgment but paid only $70 million to the BLMIS estate. *Id.* ¶ 39. The Trustee then filed adversary proceedings like this one to recover the remaining approximately $3 billion in stolen Customer Property.

## III.    DEFENDANTS AND THEIR INVESTMENT IN SENTRY

### A.    Defendants Were Sophisticated Investors

Investing in Sentry was limited to professional investors like Defendants "who ha[d] the ability to speculate in high risk securities." Decl. Ex. 1. Defendants were part of a larger umbrella of sophisticated financial entities that included fund and asset managers and administrators that were generally known as the Grosvenor Group. Defendants had significant expertise investing in hedge funds, including those selected for inclusion in the Grosvenor Funds. Defendant Management was the fund manager of the Grosvenor Funds.

### B.    Defendants Used Sentry to Gain Access to New York-Based BLMIS

Defendants began investing in BLMIS through Sentry in December 1996.[3] *See* Decl. Ex. 2. Over an almost twelve-year period, Defendants subscribed tens of millions of dollars through Sentry on over 100 occasions. *See* Decl. Ex. 2. Between 2005 and 2007, Defendants received seven subsequent transfers of avoidable Customer Property totaling $24,815,102. *See* Decl. Ex. 2; Compl. ¶¶ 44–48; Compl. Exs. D, E.

Defendants' financial transactions were rooted in New York. Each Defendant executed a Subscription Agreement with Sentry. Under the Subscription Agreement, which incorporated Sentry's Information Memorandum ("IM")[4], Defendants gave money to Sentry intending that New York-based BLMIS invest the money in U.S. securities and options. *See* Decl. Ex. 1. The IM disclosed critical information to potential investors about Sentry's operations, investment risks,

---

[3] Balanced began investing in Sentry in December 1996, and Reserve began investing in Sentry in 1999.
[4] Later versions of the IM were titled the Private Placement Memorandum ("PPM").

and offering terms. Each time Defendants authorized Sentry to invest their money in BLMIS, Defendants executed either a Short Form Subscription Agreement confirming they had executed and were bound by the Subscription Agreement,[5] or a Share Application Form confirming the terms of the IM.[6] Decl. Exs. 3, 4. Every Defendant subscription reaffirmed "each and every representation and covenant made by [Defendants] in the original Subscription Agreement." *See* Decl. Ex. 3. Defendants' redemption documents further confirm that their redemptions were "defined in and subject to all of the terms and conditions of the [IM]." Decl. Ex. 5.

The Share Application Forms Defendants completed and executed for Sentry subscriptions incorporate the IM, as amended at the time of the subscription. Under the IM as amended on January 1, 1998, there was no doubt about the investment's inextricable ties to New York. Defendants knowingly took advantage of those ties to make money. The IM described Sentry's total reliance on BLMIS. *See* Decl. Ex. 1. In fact, Defendants authorized investing in a fund whose objective was only achieved by allocating Defendants' assets to BLMIS in New York:

> **BUSINESS OBJECTIVE OF THE COMPANY**
>
> The Company will seek to achieve capital appreciation of its assets by allocating its assets to an account at Bernard L. Madoff Investment Securities ("BLM"), a registered broker-dealer in New York, New York, which employs an options trading strategy described as "split strike conversion".

*See id*. The IM affirmed the fund's dependence on BLMIS, stating:

> 4.  Dependence Upon Principals and Bernard L. Madoff Investment Securities.  The services of Messrs. Tucker and Noel and Bernard L. Madoff Investment Securities are essential to the continued operations of the Manager.  If any of their services were no longer available, their absence would have an adverse impact upon an investment in the Company.  The manager has delegated all investment management duties to Bernard L. Madoff Investment Securities.  As a result, the Company is subject to the judgment, decisions and trading opinions of Bernard L. Madoff Investment Securities and has no control over the decisions implemented by Bernard L. Madoff Investment Securities.

---

[5] By at least 2003, Defendants began to use Short Form Subscription Agreements to subscribe to Sentry.
[6] From 1996 until at least 2000, Defendants used Share Application Forms to subscribe to Sentry.

*See id.* Through the IM, Defendants contractually agreed that **all** investment management duties were delegated to BLMIS, and, as a result, Sentry had **no control** over BLMIS's decisions. *See id.* BLMIS was given unrestricted control over Defendants' investment and "no arm's length relationship exist[ed] between [Sentry] and BLMIS." *See id.* Sentry's complete reliance on BLMIS was endorsed by Defendants each and every time they subscribed.

Using the access they gained to BLMIS, Defendants sought "to obtain capital appreciation of their assets through the utilization of nontraditional options trading strategies." *Id.* Defendants contractually agreed that Sentry would achieve Defendants' objective by utilizing BLMIS's split-strike conversion ("SSC") strategy to buy and sell U.S. securities and options traded on the New York Stock Exchange. *See id.* Further, the IM made clear that all investment decisions in the New York-based account were "effected by persons associated with BLM[IS]." *Id.* Indeed, Defendants sought BLMIS's status as a "market maker" on the New York Stock Exchange to give them a strategic advantage. *See id.* It was clear that decisions about Defendants' investments were being made and executed by persons in New York trading on Defendants' behalf.

Regarding BLMIS's role as principal, the IM disclosed:

**TRANSACTION EXECUTIONS**

> BLM acts as a principal in connection with its sale of securities to the Company and the purchase of securities from the Company. BLM acts as a market-maker in the stocks purchased and sold by the Company. These market making activities enable BLM to trade with the Company as principal.

*Id.* Defendants knew and agreed that BLMIS, a New York-based broker dealer, had controlling authority[7] over their investment, including their subscriptions and redemptions.

---

[7] Merriam-Webster's dictionary defines "principal" as "a person who has controlling authority." *Principal*, MERRIAM-WEBSTER (11th ed. 2020).

Defendants also consented to Sentry's abdication of control of Defendants' investments to BLMIS. Defendants agreed that the money they sent to Sentry would be held by New York-based BLMIS, as sub-custodian. Specifically, the IM disclosed:

**ESCROW AGENT AND CUSTODIAN**

> Pursuant to an agreement between Citco and the Company, Citco serves as escrow agent in connection with the continued offering of the Shares. The Company's escrow account is maintained at Citco Bank Nederland N.V. Citco Global Custody N.V. ("Citco Custody") has agreed to act as the custodian of the Company's assets. Bernard L. Madoff Investment Securities has entered into an agreement with Citco Custody pursuant to which Bernard L. Madoff Investment Securities will serve as a sub-custodian of the Company's assets.

*Id.* The IM elaborated on additional New York connections. It instructed Defendants to send subscription payments to an account with Republic National Bank of New York, located at 452 Fifth Avenue, New York, NY, later acquired by HSBC Bank USA. The IM also disclosed that both Sentry's attorney and Investment Manager were in New York. *See id.*

Defendants continued to subscribe to Sentry through the early 2000s.[8] The July 1, 2002 PPM instructed Defendants to send subscription payments to HSBC Bank USA on Fifth Avenue in New York. *See* Decl. Ex. 6. That PPM also provided that it was governed by New York law and Defendants agreed that any suit with respect to the PPM may be brought in New York. *See id.* Specifically, the PPM stated:

> 15.    New York Courts. Subscriber agrees that any suit, action or proceeding ("Proceeding") with respect to this Agreement and the Fund may be brought in New York. Subscriber irrevocably submits to the jurisdiction of New York courts with respect to any Proceeding and consents that service of process as provided by New York law may be made upon Subscriber in such Proceeding, and may not claim that Proceeding has been brought in an inconvenient forum. Subscriber consents to the service of process out of any New York court in any such Proceeding, by the mailing of copies thereof, by certified or registered mail, return receipt requested, addressed to Subscriber at the address of Subscriber then appearing on the Fund's records. Nothing herein shall affect the Fund's right to commence any Proceeding or otherwise to proceed against Subscriber in any other jurisdiction or to serve process upon

---

[8] For example, Reserve made a subscription on July 25, 2002, and each of the Grosvenor Funds made a subscription on September 30, 2002. *See* Decl. Ex. 2.

### C.    Defendants Invested in Kingate, Another Path to BLMIS in New York

Defendants also invested through another BLMIS feeder fund, Kingate Global Fund Limited ("Kingate"). *See* Compl. ¶¶ 2, 56, 58. Defendants signed similar subscription agreements for their subscriptions into Kingate between 1999 and 2005.[9] *See* Decl. Ex. 7 ¶ 29.

## ARGUMENT

## I.    THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS

The Court has personal jurisdiction because Defendants had minimum contacts with the forum such that they purposefully availed themselves of the benefits and privileges of investing in New York and the exercise of jurisdiction over Defendants is reasonable.

The Trustee need only show a *prima facie* case that personal jurisdiction exists. *Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013). The *prima facie* showing "may be established solely by allegations." *Id.* at 84–85. On a motion to dismiss, the plaintiff's *prima facie* "showing may be made through the plaintiff's 'own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant.'" *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 594 B.R. 167, 188 (Bankr. S.D.N.Y. 2018) ("*BNP*") (citing *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)); *see also S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (a *prima facie* case of jurisdiction may be established through affidavits and supporting materials that contain averments of facts outside the pleadings). The pleadings and affidavits must be construed in the light most favorable to the plaintiff, resolving all doubts in plaintiff's favor. *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

---

[9] The parties stipulated to dismiss with prejudice Count II and all transfers from Kingate from the Trustee's Complaint, on January 11, 2022. *See* ECF No. 105. Despite the dismissal of the claim against Kingate, this Court noted in *Mutli-Strategy*, that "allegations regarding the Defendant[s]' investment in multiple BLMIS feeder funds lends support to the Trustee's allegations that Defendant[s] purposefully invested in BLMIS." *Multi-Strategy* at 7 n.2.

Specific jurisdiction exists where the defendant purposefully directs its activities into the forum and the underlying cause of action arises out of or relates to those activities. *See Picard v. Fairfield Greenwich Grp. (In re Sentry Ltd.)*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021). The court must first determine if the defendant established "minimum contacts" in the forum, such that the defendant purposefully availed itself of the privilege of conducting activities with the forum. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The due process requirement of "fair warning" that an activity will subject a defendant to jurisdiction is satisfied if the defendant "purposefully directed" its activities to the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). The focus is on the relationship among the defendant, the forum, and the litigation. *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). The claims "must arise out of or relate to the defendant's contacts" with the forum. However, specific jurisdiction does not require "proof that the plaintiff's claim came about because of the defendant's in-state conduct." *Multi-Strategy* at 8, citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Court*, 141 S. Ct. 1017, 1025–26 (2021).

This Court has correctly held that a defendant's activities do not have to take place in the forum, "and a single transaction with the forum will suffice." *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011). The action may "arise[] out of or relate[] to those" contacts with the forum when a "defendant's allegedly culpable conduct involves at least in part financial transactions that touch the forum." *In re Sentry Ltd.*, 627 B.R. at 566. This Court must look at "the totality of the circumstances" rather than analyze each contact in isolation. *See Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996); *Chloé*, 616 F.3d at 164. Defendants' activities satisfy the "minimum contacts" criterion.

### A.    Defendants' Contacts With New York Support Jurisdiction

Defendants argue the Trustee "barely alleges any connection between Defendants and the United States at all." Mot. at 2. After admitting that contacts do, in fact, exist, Defendants' attempt

to minimize them by saying they are "attenuated" and "ministerial" fails. *Id*. The jurisdictional

allegations in the Trustee's Complaint, Compl. ¶ 6, and the detailed jurisdictional allegations in

the Trustee's Proffered Allegations Pertaining to the Extraterritoriality Issue as to Grosvenor

Defendants ("Proffered Allegations"), which Defendants cite in their Motion and *of which*

*Defendants request this Court take judicial notice*, clearly describe Defendants' New York

contacts.[10] *See* Proffered Allegations ECF No. 70; Decl. Ex. 7. Defendants' choice to give a New

York broker and custodian unfettered control over their investments, and their repeated contacts

with New York related to those "nontraditional" investments, gave Defendants "fair warning" that

their investment activity might subject them to the jurisdiction of this Court.

Defendants could have invested in funds tied to any of the 60 stock exchanges around the

world. Instead, Defendants purposely targeted New York for their investment. Defendants'

numerous contacts with New York establish this Court's jurisdiction, and these contacts were not

random, fortuitous, or attenuated. Defendants: (i) created a substantial relationship with New York

when they deliberately invested in and redeemed from Sentry, knowing BLMIS held all the purse

strings; (ii) purposefully availed themselves of New York through their continuous

communications and contacts with Fairfield in New York directly related to their investment in

BLMIS and the redemptions the Trustee seeks to recover; and (iii) used New York bank accounts

to execute all of their subscriptions and redemptions. *ESI, Inc.*, 61 F.Supp. 2d at 59 (finding that

the aggregate of defendant's forum contacts was "qualitatively significant").

Many of Defendants' contacts are sufficient to independently support jurisdiction. In

totality, the Defendants' contacts plainly establish that Defendants purposefully directed their

---

[10] Not only did Defendants file an opposition to the Proffer, *see* ECF No. 74, but they also cite to the Proffer in their
Motion. *See* Mot. at 29–30, n.15. Also of note, the Proffer incorporates the Fairfield Amended Complaint by reference.

activities to New York. *See Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 397 F.Supp.3d 323, 344 (S.D.N.Y. 2019) ("When all [defendant]'s Agreement-related contacts are considered together, it is clear [the defendant] purposely availed itself of the forum.").

**B.      Defendants Purposefully Availed Themselves of the Laws and Privileges of New York by Investing in a New York-Based BLMIS Feeder Fund**

This Court has correctly found other defendants in this SIPA liquidation proceeding subject to its jurisdiction because they invested in Sentry with the specific purpose of having their funds invested with BLMIS in New York and to profit therefrom. *See Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*, Adv. Pro. Nos. 08-01789 (SMB), 10-04932 (SMB), 2014 WL 5106909, at \*9 (Bankr. S.D.N.Y. Oct. 10, 2014) ("[D]efendants who invested directly or indirectly with BLMIS and received payments from BLMIS as initial transferees or as subsequent transferees of those initial transferees were subject to the Court's personal jurisdiction."); *Maxam*, 460 B.R. at 116-20 (finding jurisdiction where defendant knew and intended that funds invested with BLMIS feeder fund would be sent to New York for investment by BLMIS in New York).

Defendants invested in Sentry while knowing and intending their funds would be transferred to BLMIS for investment in New York, so they are subject to this Court's personal jurisdiction with respect to claims arising out of those investments. *See Multi-Strategy* at 6 (citing *Picard v. Bureau of Labor Ins. (In re Bernard L. Madoff)*, 480 B.R. 501, 516-18 (Bankr. S.D.N.Y. 2012) ("*BLI*") (Lifland)) (defendant "purposefully availed itself of the benefits and protections of New York laws by knowing, intending, and contemplating that the substantial majority of funds invested in [BLMIS feeder fund] Sentry would be transferred to BLMIS in New York to be invested in the New York securities market"); *see also Banque SYZ* at 6.

1.     **The Subscription Agreements that Govern the Redemptions of
Customer Property Are Compelling Jurisdictional Contacts**

Defendants bought shares in Sentry intending to invest with BLMIS in New York. *See In*

*re Picard, Tr. for the Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 105 (2d Cir.

2019) ("When these investors chose to buy into feeder funds that placed all or substantially all of

their assets with Madoff Securities, they knew where their money was going."). Defendants

executed Subscription Agreements with Sentry through which they affirmed having received, read,

and been bound by Sentry's IM. Decl. Ex. 4. The IMs included details about BLMIS' investment

strategy, historical performance, and trades in the S&P 100 Index. *See* Decl. Ex. 1. Defendants

knew:

(i)     all investment management duties were delegated to BLMIS;
(ii)    BLMIS had controlling authority over Defendants' investment;
(iii)   BLMIS was a registered broker-dealer in New York and was the executing
broker for Sentry's investments;
(iv)    the SSC strategy involved the purchase of U.S. securities and options;
(v)     most of the stocks for which BLMIS acted as a market maker were also
listed on the New York Stock Exchange;
(vi)    the decisions regarding which U.S. Securities to purportedly purchase, and
when to make such purchases, were delegated to BLMIS;
(vii)   BLMIS was the sub-custodian of Sentry's investments; and
(viii)  BLMIS was "essential to the continued operations of" Sentry.

The Trustee seeks to recover redemptions made by Defendants. The IM, which is

incorporated into the Subscription Agreement, sets out all of the requirements for those

redemptions, including the procedures to redeem and the form to be used. Decl. Ex. 1.

Yet, Defendants speciously argue that because the Trustee is not a party to the Subscription

Agreements and the claim asserted by the Trustee purportedly does not arise under the

Subscription Agreements, the Subscription Agreements do not provide a basis for jurisdiction here.

*See* Mot. at 15. Defendants are wrong. *See Multi-Strategy* at 10. The Trustee's claim arises out of

the Defendants' New York-based investments, and the Subscription Agreement is another example

12

of a New York contact that plainly "relates to" the Trustee's claim and is evidence of a strong nexus with New York under the totality of circumstances.

Defendants could not invest in Sentry without executing a Subscription Agreement. The Subscription Agreement was a necessary predicate to their receipt of stolen Customer Property. It is sufficiently related to the Trustee's claims to recover that stolen Customer Property from Defendants. *See Ford Motor Co.*, 141 S. Ct. at 1026 (rejecting a "strict causal relationship between the defendant's in-state activity and the litigation"); *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168–69 (2d Cir. 2013) (noting the New York Court of Appeals "made clear that the 'arising from' prong of section 302(a)(1) does not require a causal link between the defendant's New York business activity and a plaintiff's injury," but rather, "it requires 'a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim.'") (quoting *Licci v. Lebanese Canadian Bank, SAL*, 984 N.E.2d 893, 900 (N.Y. 2012)).

In an effort to distance themselves from this forum, Defendants inaccurately describe an entirely foreign investment through which Sentry, not Defendants, made the choice to invest with BLMIS.[11] *See* Mot. at 13. The opposite is true. Defendants chose to repeatedly invest in New York with BLMIS through Sentry and knowingly accepted the benefits and privileges of doing so. Defendants did not simply invest in a foreign fund; they chose a single purpose fund with the sole purpose of funneling money to New York-based BLMIS, a fact plainly apparent from Sentry's IM.

---

[11] The Trustee is not imputing Sentry's acts to Defendants. Defendants took affirmative steps of their own to gain benefits available to them only in New York.

### 2. Defendants Entered into Additional Contracts with New York's FGG to Recruit Investors for Sentry

Defendants did not idly stand by while Sentry invested its assets in BLMIS—rather, Defendants purposefully recruited investors to Sentry to invest in BLMIS in exchange for fees paid to Defendants by Sentry as additional subscriptions in Sentry so that they could make more money from BLMIS. Contrary to Defendants' statement that they "interacted only with a BVI-entity from Bermuda," Defendants interacted directly with FGG in New York in executing and performing these contracts. Mot. at 22.

In April 2003, each of the Defendants entered into contracts with Fairfield Greenwich Limited of New York called Letters of Understanding. *See* Decl. Ex. 8.



In the Letters of Understanding, signed by Defendants' President William Dolan, Defendants agreed to solicit and introduce new investors in exchange for fees rebated to Defendants in Sentry. *Id*. Defendants also agreed that New York law governed the Letters of Understanding:

> 7. **Jurisdictions**
>
> This Agreement and the rights and obligations of the parties hereto shall be governed by and construed in accordance with the laws of the State of New York.

*Id.*[12]

The Letters of Understanding are additional contracts that demonstrate Defendants were not mere investors in Sentry but were active participants in recruiting other investors—Defendants were a feeder to the feeder fund. Defendants purposefully availed themselves of doing business in New York by working hand-in-hand with New York-based FGG to solicit investors, which perpetuated BLMIS' fraud.

### 3.    *BLI* Establishes this Court's Jurisdiction Over Defendants

As long as they were making money in New York, Defendants availed themselves of the benefits and protections of doing so. Defendants cannot now claim this Court lacks personal jurisdiction because the investment did not work out as planned. This Court's opinion in *Picard v. BLI* confirms that is true. *See BLI*, 480 B.R. at 517.

Defendants intended for their money to be invested with BLMIS in New York, so the exercise of jurisdiction by this Court in connection with the Trustee's claims, which arise out of those investments, is reasonable. *Id.* (having purposely funneled millions of dollars to BLMIS in New York, the defendant "cannot claim a violation of its due process rights from having to appear in a New York court to defend itself in a suit arising from activities with a clear New York nexus"). In *BLI*, as here, the Trustee's suit was "based upon [the subsequent transferee's] investment of tens of millions of dollars in Sentry with the specific goal of having funds invested in BLMIS in New

---

[12] Also in these agreements, Defendants agreed to indemnify Sentry against any action arising out of or relating to the agreement. *See id.* It is doubtful that Defendants agreed to indemnify a New York-based company but did not contemplate having to do so in New York.

York, with intent to profit therefrom." *Id.* at 506. There, as here, the subsequent transferee was provided with IMs and executed Subscription Agreements establishing the investment's BLMIS-centric purpose. *Id.* at 507–08.

This Court already concluded that Sentry investors like Defendants are subject to personal jurisdiction in this Court. *Id.* at 516–18. *BLI* holds that defendant, just like Defendants here, "purposefully availed itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." *Multi-Strategy* at 6 (citing *BLI*, 480 B.R. at 517); s*ee also Picard v. JPMorgan Chase & Co.*, No. 08-99000 (SMB), 2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014) (courts in this SIPA liquidation proceeding have already "confirmed that defendants who invested directly or indirectly with BLMIS and received payments from BLMIS as an initial transferee or subsequent transferee of those initial transfers were subject to the Court's personal jurisdiction"). "BLI intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom." *BLI*, 480 B.R. at 506; *Multi-Strategy* at 8. Because Defendants are identically situated to the defendants in *BLI* and *Multi-Strategy* with respect to the fundamental purpose of their investment, *BLI* is controlling and resolves the Defendants' personal jurisdiction challenge.[13]

---

[13] Finally, in *BLI*, this Court found that the Defendants' suggestion that their funds simply ended up in the United States due to happenstance or through what they refer to as the "stream of commerce" theory of personal jurisdiction, *see* Mot. at 14, was particularly disingenuous. *See BLI*, 480 B.R. at 517 (highlighting defendant's understanding that its funds would be sent to a BLMIS feeder fund in order to be invested with BLMIS). This is not a circumstance that arises by chance. That Sentry invested the Defendants' funds with BLMIS in New York was not merely foreseeable to the Defendants, it was their objective.

### 4.    *Walden* Does Not Change the Jurisdictional Analysis

Defendants gloss over *BLI* and ask this Court to misconstrue *Walden*, but *Walden* does not change the analysis. *See* Mot. at 12–13; *Walden v. Fiore*, 571 U.S. 277 (2014). In fact, this Court determined that *Walden* "is no assistance to Defendant[s]." *Multi-Strategy* at 8. *Walden* does not overrule *BLI* or preclude finding jurisdiction in this case. Rather, *Walden* validates *BLI* and buttresses this Court's jurisdiction.

*Walden* reaffirms the well-established principle that personal jurisdiction cannot be premised solely on a plaintiff's unilateral contacts with the forum state. *See id.* at 284 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). In *Walden*, the defendant's conduct neither occurred in nor was directed toward Nevada. *Id.* at 288–91. Rather, the harm occurred in Nevada solely because of plaintiffs' unilateral decision to be in Nevada when they used certain seized funds and finding jurisdiction under those circumstances would inappropriately permit "a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* at 289–90.

The opposite is true here. Jurisdiction is premised on Defendants' intent to invest funds with BLMIS in New York and Defendants' redemption of those investments. *Id.* at 290 ("The proper question is . . . whether the defendant's conduct connects him to the forum in a meaningful way."). Finding jurisdiction in this SIPA liquidation proceeding is consistent with *Walden* because Defendants' conduct connecting them with the forum state is "intertwined with his transactions or interactions with the plaintiff or other parties." *See id.* at 286; *Ford Motor Co.*, 141 S. Ct. at 1031–32.

As demonstrated by Sentry's offering materials and Subscription Agreements, Sentry's express purpose was to pool and funnel funds to BLMIS in New York for investment in United States' securities markets. *See, e.g.*, Compl. ¶ 2. Defendants had more than mere knowledge of

Sentry's ties to BLMIS and New York—it was *because of* Sentry's ties to BLMIS and New York

that Defendants invested and recruited other investors to Sentry. *Id.* ¶ 6, Decl. Ex. 1. Defendants'

intent to invest in the New York stock market with BLMIS was New York specific. *See*

*Homeschool Buyers Club, Inc. v. Brave Writer, LLC*, No. 19-CV-6046 (VSB), 2020 WL 1166053,

at *5 (S.D.N.Y. Mar. 11, 2020). Their conduct created a substantial connection with New York.

*Burger King*, 471 U.S. at 471–74 (due process concerns are satisfied when an out-of-state

defendant purposely directs his activities at residents of the forum state and purposely benefits

from those activities).

### C.    Defendants' Use of Domestic Bank Accounts in New York Establishes Jurisdiction

This Court also has jurisdiction because Defendants chose to use New York bank accounts

to both subscribe to and redeem from Sentry. A defendant's use of a domestic bank account in

connection with the activity alleged is sufficient to establish jurisdiction.[14]

#### 1.    Defendants Used Sentry's New York Bank Accounts to Subscribe

In deciding to invest in BLMIS through Sentry, Defendants contracted to use Sentry's New

York bank accounts for subscriptions into the fund.[15] On at least ***130*** occasions over almost 12

years, when subscribing to Sentry, Defendants directed funds to accounts at either the Republic

National Bank of New York or New York HSBC Bank USA. *See* Decl. Ex. 7 ¶ 27. Each transaction

was a volitional act that supports jurisdiction. *See In re Motors Liquidation Co.*, 565 B.R. 275,

---

[14] Due to the overlap between the New York long-arm statute and due process, courts frequently cite long-arm cases in a due process analysis. *See, e.g., HSH Nordbank AG New York Branch v. Street*, No. 11 CIV. 9405 DLC, 2012 WL 2921875, at *4 n.3 (S.D.N.Y. July 18, 2012).

[15] It does not matter that these accounts were Sentry's accounts because Defendants still chose to use them. *See Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 397 F. Supp. 3d 323, 346 (S.D.N.Y. 2019) ("[T]he point is not whether [defendant] owns the accounts, it is that they made purposeful use of them for reasons related to the underlying dispute.").

288–89 (Bankr. S.D.N.Y. 2017) (finding defendant's use of a correspondent account to be purposeful even where payment in New York was dictated by agreement).[16]

That Sentry's Subscription Agreements required subscribers use these accounts is irrelevant because Defendants voluntarily entered into those agreements. *See* Decl. Exs. 6, 7 ¶ 27. This Court has found that a BLMIS subsequent transferee defendant's use of its own and its feeder fund's U.S. correspondent accounts for subscribing into and redeeming from the fund shows purposefulness. *BLI*, 480 B.R. at 513, 516 n.14; *BNP*, 594 B.R. at 191. In fact, in addressing BLI's separate argument concerning its New York bank accounts, the Court expressly noted that its decision was not "rooted in the mere existence of these accounts. Instead . . . BLI directed its investment towards the forum State, thereby purposefully availing itself of the benefits and protections of New York laws." *BLI*, 480 B.R. at 516 n.14.

### 2.    Defendants Instructed Sentry to Redeem to New York Correspondent Accounts

Defendants authorized and instructed use of a New York bank account for the redemption payments the Trustee seeks to recover. Defendants try to undermine the importance of the use of correspondent bank accounts by claiming their funds just "happened to pass through on their way to another overseas bank." Mot at 17. Contrary to Defendants' contention, Defendants' use of New York banks was purposeful and at their direction as illustrated by Exhibit 9 to the Declaration excerpted below:

---

[16] It also makes no difference if a Citco entity chose to use the U.S. correspondent account on behalf of Sentry, as various Citco entities acted as Fairfield's agent. *See Igoin*, 525 B.R. at 884. Indeed, Defendants admit this in their Motion. *See* Mot. at 30 ("Those allegations…are sufficient to establish that Citco Bank was acting as Sentry's agent in connection with the redemptions at issue.").

May 23, 2007

FAIRFIELD SENTRY LIMITED
c/o Citco Fund Services (Europe) B.V.
Citco Building, Telestone - Teleport
Naritaweg 165
1043 BW Amsterdam
THE NETHERLANDS

Dear Sirs,

RE:  GROSVENOR PRIVATE RESERVE FUND LTD.
      ACCOUNT ID: ~~Redacted~~0658 – HOLDER ID: ~~Redacted~~2302

Please take this letter as your authority and instruction to REDEEM sufficient FAIRFIELD SENTRY
LIMITED shares to raise the sum of US$5,000,000.00 (Five million US Dollars) at 30th June, 2007,
on behalf of the above referenced account.

The redemption proceeds should be paid in accordance with the following wire payment
instructions;

| | |
|---|---|
| To: | Deutsche Bank Trust Company America |
| | 60 Wall Street, New York, NY, U.S.A. |
| | ABA #021001033 |
| | SWIFT CODE: BKTRUS33XXX |
| Account: | Bermuda Commercial Bank Limited |
| | 19 Par-la-Ville Road, Hamilton HM 11, Bermuda |
| | SWIFT CODE: BPBKBMHM |
| Account no.: | ~~Redacted~~251 |
| Sub-Account: | Grosvenor Private Reserve Fund Ltd. |
| Account no.: | Redacted4442 |
| Attention: | Melissa Smith |
| Reference: | Fairfield Sentry. |

We look forward to receiving confirmation of this redemption in due course.

Yours sincerely,

William Dolan

MAILING ADDRESS: P.O. BOX HM 1993, HAMILTON HM EX, BERMUDA

In 2007, William Dolan gave Sentry the "authority and instruction to REDEEM"
$5,000,000 in shares "in accordance with the following wire payment instructions" and pay them
to Deutsche Bank Trust Company America in New York. *See* Decl. Ex. 9. Included in the transfers
the Trustee seeks to collect from Defendants is a $5,000,000 subsequent transfer made in July
2007, after this authorization was sent. It was not "adventitious," Mot. at 18, or "happenstance,"
Mot. at 19, as claimed by Defendants, that New York banks were used, it was no "coincidence
money flowed through New York," Mot. at 19, and the money did not merely "pass through" this
New York bank account. Mot. at 17. To the contrary, like Multi-Strategy, Defendants purposely
authorized and directed Sentry to wire the transfers of stolen Customer Property the Trustee seeks

to recover to a New York bank account, demonstrating, as Defendants have pointed out,[17] an

"essential element" of the Trustee's claim. Mot. at 17; *see also Multi-Strategy* at 7 (citing *Picard*

*v. Multi-Strategy Fund Ltd.*, Adv. Pro. No. 12-01205 (CGM), ECF No. 97, ¶¶97, 110-113 (Main

Case ECF No. 21729) (Bankr. S.D.N.Y. February 18, 2022) ("Defendant sent wiring instructions

specifically designating a New York based bank account to which Defendant directed FGG to wire

Defendant's redemption payments from Fairfield Sentry.")).

This was not a one-time request to use a New York bank account, it was the parties' course

of dealing. In 1997, a director and shareholder of Defendants, Gordon Howard, received a fax

confirming a redemption of $4,000,000 and a transfer from Sentry "in accordance with [Gordon's]

instructions" to an account held with another New York bank account, Citibank N.A. New York.

Decl. Ex. 10. In addition, Balanced and Private used an account at Barclays Bank plc in New York

to receive transfers from Sentry. Balanced completed several standardized Sentry forms entitled

"Share Application Form," which directed a total of $27,315,101 in redemption payments to the

New York Barclays' account. *See e.g.*, Decl. Ex. 7 ¶ 28.

Even if Defendants' Deutsche Bank America account was a correspondent, New York

cases consistently hold purposeful use of a U.S. correspondent account can provide a sufficient

basis on its own for jurisdiction. *See Licci*, 984 N.E.2d at 899–900 (leading case, holding

defendant's purposeful "use of a correspondent bank account in New York, even if no other

contacts between the defendant and New York can be established" suffices to show defendant

transacted business in New York); *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain*

*Islamic Bank*, 549 B.R. 56, 67–69 (S.D.N.Y. 2016) (foreign defendants subject to jurisdiction

---

[17] Defendants admit that "the use of a New York-based correspondent bank account can be used to establish personal
jurisdiction over foreign defendants only in extremely limited circumstances, namely, when the defendant holds the
correspondent bank account or at least purposely directed the use of that account, *and* such use is an essential element
of the plaintiff's claim." *See* Mot. at 17.

based solely on their designation and use of New York correspondent accounts to receive preferential transfers); *Al Rushaid v. Pictet & Cie*, 68 N.E.3d 1, 6–11 (N.Y. 2016) (same, in connection with money laundering scheme).

Defendants' attempt to distinguish between payments sent "to" New York banks and payments sent "through" New York banks, Mot. at 17–19, is a distinction without a difference. The precedent is clear. Defendants instructed Sentry to deposit the redemption money in New York bank accounts. *See* Decl. Exs. 1, 6. In this SIPA liquidation proceeding, this Court has found jurisdiction where initial and subsequent transferee defendants received the transfers at issue from BLMIS feeder fund into U.S. bank accounts. *See BNP*, 594 B.R. at 191 (jurisdiction over subsequent transferee defendants that sent subscriptions to, and received redemptions from, feeder fund's New York bank account); *Picard v. Est. of Igoin (In re Bernard L. Madoff Inv. Sec. LLC)*, 525 B.R. 871, 884 (Bankr. S.D.N.Y. 2015) (jurisdiction over initial transferee defendants who received transfers from BLMIS's New York bank account); *Picard v. Chais (In re Bernard L. Madoff Inv. Sec. LLC)*, 440 B.R. 274, 279–80 (Bankr. S.D.N.Y. 2010) (same, plus defendants used their California bank account to receive transfers); *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 418 B.R. 75, 80 (Bankr. S.D.N.Y. 2009) (jurisdiction over initial transferee defendants that made "financial transactions to and from their New York BLMIS bank accounts"). Defendants want to debate the difference between "to" and "through," but that does not change the fact of their clear authorization and instruction to Sentry to use New York bank accounts.

### 3. The Trustee's Claims Arise Out of or Relate to Defendants' Use of New York Accounts

The Trustee's claims "arise out of or relate to" Defendants' use of the bank accounts discussed above. As the Supreme Court recently held, this prong does not require a causal relationship. *See Ford Motor Co.*, 141 S. Ct. at 1026–30. Rather, as this Court has held, this prong

may be satisfied if defendant's conduct "involves at least in part financial transactions that touch the forum." *In re Sentry Ltd.*, 627 B.R. at 566; *see also Arcapita*, 549 B.R. at 68–71 (rejecting causation and requiring only that the claim is not completely "unmoored" from the transaction). In this fraudulent transfer action to recover stolen Customer Property, the transfers themselves are at the very heart of the analysis.

As detailed above, the fact that Defendants used New York bank accounts to both invest and redeem funds is significant in establishing personal jurisdiction. And because the Trustee's cause of action in this SIPA liquidation proceeding relates to the very transfers that came through these New York bank accounts, Defendants should reasonably anticipate such transfers would be adjudicated in New York. *See, e.g.*, *HSH Nordbank*, 2012 WL 2921875, at *4 ("claims against [defendants] arise directly out of the transfer of funds into [defendants'] New York accounts"); *Chais*, 440 B.R. at 279 (defendant's contacts with the forum and the Trustee's claims are "inextricably related"). Defendants' repeated, systematic, and purposeful use of New York bank accounts to direct funds to and receive funds from BLMIS through Sentry is sufficient to establish minimum contacts with New York.

"Here, the Trustee is asserting subsequent transfer claims against Defendant[s] for monies [they] received from Fairfield Sentry . . . . This lawsuit is directly related to [their] investment activities with Fairfield and BLMIS." *Multi-Strategy* at 9 (citing *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018)) (finding that the redemption and other payments the defendants received as direct investors in a BLMIS feeder fund arose from the New York contacts such as sending subscription agreements to New York, wiring funds in U.S. dollars to New York, sending redemption requests to New York, and receiving redemption payments from a Bank of New York account in New York, and were the proximate cause of the injuries that the

Trustee sought to redress).

### D.    Defendants' Communications with Sentry Establish Jurisdiction

While emails available to the Trustee indicate Defendants' decision-makers may have met with FGG in New York, *see* Decl. Ex. 11, physical presence is not a prerequisite to jurisdiction. Correspondence with investors in the forum is also a contributing factor. *Golden Archer Invs., LLC v. Skynet Fin. Sys.*, No. 11 CIV. 3673 (RJS), 2012 WL 123989, at *5 (S.D.N.Y. Jan. 3, 2012) (communications including emails with company in New York subjected defendant to jurisdiction); *Rubinbaum LLP v. Related Corp. Partners V, L.P.*, 154 F. Supp. 2d 481, 493 (S.D.N.Y. 2001).

Based on limited third-party records obtained by the Trustee, it is clear that Defendants stayed in regular communication with New York-based Fairfield employees and executives by sending emails to and calling New York regarding their investments in Sentry. *See* Decl. Exs. 11–17. Defendants' express goal in corresponding with New York was to (i) further increase the Defendants' investments in Sentry's New York-based BLMIS SSC offering, *see* Decl. Exs. 12, 13; (ii) plan meetings between the Defendants and Fairfield in New York, *see* Decl. Ex. 11; (iii) obtain information regarding Sentry updates and Fairfield's strategies, *see* Decl. Exs. 11, 14; and (iv) redeem stolen Customer Property from Sentry. *See, e.g.,* Decl. Ex. 15. Additionally, Defendants had telephone conferences with FGG regarding their New York-based investment in Sentry. *See* Decl. Exs. 16–17. Examples of these communications include:

(i) an email exchange between William Dolan and FGG's Andrew Smith regarding a potential presentation in New York the week of December 5, 2005;

(ii) an email from Defendants' President William Dolan to Cheryl Neal at FGG's New York office requesting copies of Sentry rebate agreements signed by the Defendants;

(iii) FGG internal email exchange advising that Grosvenor was "talked into staying" with FGG rather than moving account to Kingate and that a message was left on 11/18/05;

(iv) an email from Dolan stating that he and FGG's Amit Vijayvergiya had a teleconference on October 14, 2005, and attaching a redemption request for November 2005; and

(v) in October 2008, Dolan called Jeffrey Tucker at FGG's New York office to discuss insurance amounts for put options.

*See* Decl. Exs. 11, 12, 13, 16, 17.

These contacts directly relate to the transfers the Trustee seeks to recover because they were undertaken by Defendants to increase Defendants' investment in Sentry, to obtain information about Sentry's BLMIS investment strategy that resulted in Defendants' redemptions, and facilitate the redemption of stolen Customer Property. In fact, the communication in (iv) above resulted in a $5,000,000 subsequent transfer from Sentry to Defendant Reserve on December 19, 2005 that the Trustee seeks to recover.

Defendants' ongoing communications with FGG plainly establish Defendants purposefully availed themselves of New York, specifically to take advantage of a business opportunity completely controlled by BLMIS. *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 59 (S.D.N.Y. 1999) (finding the aggregate of defendant's forum contacts was "qualitatively significant"). These direct contacts further establish this Court's personal jurisdiction over the Defendants.

### E.    The Defendants' Investment and Contacts with Kingate in New York Contribute to Establishing Jurisdiction

Finally, adding to Defendants' New York contacts, beginning in 1999 they also invested in Kingate, another feeder fund invested exclusively with BLMIS. *See* Decl. Ex. 7 ¶¶ 56–82. Defendants intended that their Kingate investment be made in New York-based BLMIS and Defendants' contacts with Kingate in New York related to BLMIS must be considered as part of the totality of the circumstances supporting jurisdiction. *See* Decl. Ex. 7 ¶¶ 56–82; *see also Multi-Strategy* at 7 n.2.

### F.    The Exercise of Personal Jurisdiction Over Defendants Is Reasonable

Where the plaintiff has alleged purposeful availment, as the Trustee does here, this Court has correctly held that the burden shifts to the defendant to present a "compelling case" that jurisdiction would be unreasonable. *In re Sentry Ltd.*, 627 B.R. at 567 (citing *Burger King*, 471 U.S. at 472–73). Defendants do not satisfy their burden.

This Court must conduct a "reasonableness" inquiry to determine that its exercise of jurisdiction will not offend traditional notions of "fair play and substantial justice" under the circumstances of the particular case. *Int'l Shoe*, 326 U.S. at 320; *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016). To determine whether jurisdiction is reasonable and does not offend traditional notions of "fair play and substantial justice," courts consider the following:

> (1) the burden on the defendant; (2) the interests of the forum State; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies.

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

This Court has found that "it would be a 'rare' case where the defendant's minimum contacts with the forum support the exercise of jurisdiction, but it is unreasonable to force the defendant to defend the action in that forum." *BNP*, 594 B.R. at 188. This is not that "rare" case. Defendants do not present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Chloé*, 616 F.3d at 165 (quoting *Burger King*, 471 U.S. at 477).

Just as this Court found in *Multi-Strategy* and *Banque SYZ*, the exercise of jurisdiction over Defendants would be reasonable because "Defendant[s] [are] not burdened by this litigation. Defendant[s] ha[ve] actively participated in this Court's litigation for over ten years. [They are] represented by U.S. counsel and 'irrevocably' submitted to the jurisdiction of New York courts when [they] signed [their] subscription agreements with [Sentry]." *Multi-Strategy* at 10; *Banque*

26

*SYZ* at 9. And, as this Court held in *Multi-Strategy* and *Banque SYZ*, "[t]he forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court." *Multi-Strategy* at 10 (citing *Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*, 460 B.R. 106, 117, 119 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012)); *Banque SYZ* at 9; *Picard v. Chais (In re BLMIS)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010); *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 418 B.R. 75, 82 (Bankr. S.D.N.Y. 2009); *Picard v. Fairfield Greenwich Grp.*, (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 568 (Bankr. S.D.N.Y. 2021); *see also In re Picard*, 917 F.3d 85, 103 (2d Cir. 2019) ("The United States has a compelling interest in allowing domestic estates to recover fraudulently transferred property.").

Defendants argue that having to defend this case in New York is unreasonable because the Trustee may have to domesticate a judgment against them in Bermuda where they are in liquidation. That is not true. Collection efforts are completely separate from liability and this Court has the authority to adjudicate this adversary proceeding to determine liability. Defendants purposefully availed themselves of the benefits of New York, and must defend the case in New York. Accordingly, this Court's exercise of jurisdiction over the Defendants is reasonable.

### G.    In the Alternative, the Trustee Is Entitled to Jurisdictional Discovery

If this Court finds the Trustee has not yet made a *prima facie* showing of jurisdiction, the Trustee has certainly made a "threshold showing" warranting jurisdictional discovery. *Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618 (KMW)(HBP), 2009 WL 3817590, at *4 (S.D.N.Y. Nov. 16, 2009).

## II.    THE TRUSTEE HAS SATISFIED HIS PLEADING BURDEN

### A.    The Complaint Sufficiently Pleads Avoidability of the Initial Transfers

Defendants argue that the Trustee's incorporation of the then-operative Fairfield complaint violates Rule 8(a)(2)'s requirement to include a "short and plain statement" showing the Trustee

27

is entitled to relief.[18] Fed. R. Civ. P. 8(a)(2); Mot. at 3. However, following the district court's and this Court's instruction, the Trustee may incorporate by reference a complaint filed in a different adversary proceeding within the same SIPA liquidation proceeding. Fed. R. Civ. P. 10(c); *see also Multi-Strategy* at 14-15 (collecting cases); *Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010) (allowing incorporation of pleadings in a different adversary proceeding within the same liquidation by reference under Rule 10(c)). Defendants are not left "to guess" which allegations of the incorporated pleading they must respond to. Mot. at 3. The Trustee clearly advises Defendants that the Fairfield Complaint is incorporated to demonstrate the transfers are avoidable. *See* Compl. ¶ 38.

This Court may also take judicial notice of the operative Fairfield Second Amended Complaint and its prior decision holding that the complaint sufficiently alleges the avoidability of the initial transfers from BLMIS. *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011); *see also Fairfield Inv. Fund*, 2021 WL 3477479; *see also Multi-Strategy* at 13 ("The Trustee pleaded the avoidability of the initial transfer (from BLMIS to Fairfield Sentry) by adopting by reference the entirety of the complaint filed against Fairfield Sentry in adversary proceeding 09-1239 ('Fairfield Complaint')"). "Through the reference to the Fairfield Complaint, the Trustee has adequately pleaded the avoidability of the initial transfer." *Multi-Strategy* at 15 (citing (Fairfield Compl. ¶¶ 314–318, 09-1239, ECF No. 286)). "Included among such matters are decisions in prior lawsuits." *DeMasi v. Benefico*, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008). Finally, the fact that the Fairfield Second Amended Complaint was filed after this Complaint

---

[18] In an attempt to call into question the amount of stolen Customer Property the Trustee seeks to recover, Defendants seek judicial notice of the Trustee's complaints from about eighty subsequent transfer cases pending in this Court—implicitly recognizing that incorporation by reference is an acceptable practice.

against Defendants does not matter. *See Rothman v. Gregor*, 220 F.3d 81, 91–92 (2d Cir. 2000)

(noticing later filed complaint in related proceeding).

### B.    The Incorporated Material Complies With Federal Rules of Civil Procedure 10 and 8

Rule 10(c) is intended to "facilitate pleadings that are 'short, concise, and free of

unwarranted repetition,' as well as to promote 'convenience' in pleading." *Morrison v. Off. of the*

*U.S. Tr. (In re Morrison)*, 375 B.R. 179, 193 (Bankr. W.D. Pa. 2007) (quoting 5A Charles Alan

Wright & Arthur R. Miller, *Federal Practice & Procedure 3d* ("Wright & Miller") § 1326 (3d ed.

2007)). All matters under the umbrella of a bankruptcy liquidation are considered to be one

proceeding for the purposes of Rule 10(c). *Geiger*, 446 B.R. at 679. The same is true in this case

and none of the cases cited by Defendants are relevant here.[19] Moreover, this Court has already

decided to follow the district court, which "found that adoption by reference of the entire Fairfield

Complaint is proper." *Multi-Strategy* at 14 (citing *SIPC v. BLMIS* (*In re Consolidated Proceedings*

*on 11 U.S.C. §550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013)) ("The Trustee's complaint against Standard

Chartered Financial Services incorporates by reference the complaints against Kingate and Fairfield,

including the allegations concerning the avoidability of the initial transfers, and further alleges the

---

[19] In the cases cited by Defendants, plaintiffs were incorporating by reference pleadings in separate actions in an attempt to add new claims. *See, e.g., United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 461–66 (E.D.N.Y. 2007) (the government improperly incorporated by reference various pleadings from numerous prior civil and criminal actions to plead new claims not otherwise alleged, and where complaint did not expressly incorporate the pleadings); *Davis v. Bifani*, No. 07-cv-00122-MEH-BNB, 2007 WL 1216518, at *1 (D. Colo. Apr. 24, 2007) (plaintiff could not incorporate by reference new claims from state-court action that were not alleged in the federal-court complaint); *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803, at *4 (E.D.N.Y. Mar. 26, 2010) (finding incorporation by reference of "subject matter" of separate pleading "alluding to" evidence of willful infringement was improper for purposes of stating new willful infringement claim). Defendants also cite to *Muhammad v. Bethel-Muhammad*, in which the information plaintiffs sought to incorporate was unidentified "evidence" submitted in another action separate and apart from any pleadings. No. CIV.A. 11-0690-WS-B, 2012 WL 1854315, at *3 n.5 (S.D. Ala. May 21, 2012).

avoidability of these transfers outright. Thus, the avoidability of the transfers from Madoff Securities

to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).") (cleaned up).

Here, the Trustee's incorporation provides clear notice of avoidability of initial transfers

and avoids repetition. *Sherman*, 528 F. Supp. 2d at 323 n.5 (citing Wright & Miller § 1326); Wright

& Miller § 1326 n.1 ("Adoption by reference avoids overly long or complicated pleadings"). The

Trustee's allegations contain a "short and plain statement" showing why the Trustee is

entitled to relief. Repleading all initial transfer allegations would add pages to the

Complaint and is unnecessary in pleading recovery under Section 550 and inconsistent with the

purpose of Rule 8. *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 501 B.R. 26, 36

(S.D.N.Y. Oct. 28, 2013) (Rakoff, J.).

### III.    THE TRUSTEE'S CLAIM IS NOT BARRED UNDER 11 U.S.C. § 546(e)

Defendants are not shielded by the safe harbor defense provided by Section 546(e). This

Court held in *Multi-Strategy*, that "Defendant[s] [are] not permitted to raise the safe harbor defense

on [their] own behalf as [] subsequent transferee[s]." *Multi-Strategy* at 21. Further, in *Sec. Inv'r*

*Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-MC-115, 2013 WL 1609154, at *1

(S.D.N.Y. Apr. 15, 2013) (Rakoff, J.) ("*Cohmad*"), the district court held that an initial transferee's

actual knowledge of Madoff's fraud precluded application of the Section 546(e) safe harbor, so

the Trustee can avoid transfers made by BLMIS prior to the Section 548(a)(1)(A) two-year

period.[20] Defendants ignore *Cohmad* and the fact that the Trustee has sufficiently alleged Sentry's

actual knowledge.[21] Defendants' argument that the safe harbor applies also ignores this Court's

application of *Cohmad* in another subsequent transfer recovery action. *See BNP*, 594 B.R. at 197.

---

[20] Defendants also assert, in a footnote, that they may reserve their "right" to file a second motion to dismiss "to challenge the avoidability of any and all transfers under § 548(a)(1)(A), including the right to challenge the validity of the Ponzi scheme presumption." Mot. at 27 n.12. Under Rule 12, they cannot. *See* FED. R. CIV. P. 12.

[21] Defendants do not raise or contest Sentry's "actual knowledge" or analyze the *Cohmad* case in their Motion.

### A.    Sentry Had Actual Knowledge of Madoff's Fraud

Defendants set out the Section 546(e) requirements and how they are presumably met with respect to the initial transfers to Sentry. Mot. at 28–33. None of this matters.[22] Defendants do not challenge this Court's ruling that the Trustee has sufficiently pled the initial transferee, Sentry, had actual knowledge of Madoff's fraud and that such initial transfers were avoidable. *See Fairfield Inv. Fund*, 2021 WL 3477479, at *4–5, *7. "This Court has already determined that the Fairfield Complaint contains sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule 12(b)(6) motion." *Multi-Strategy* at 17 (citing *Picard v. Fairfield Inv. Fund (In re BLMIS)*, No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021)). This Court determined that the Fairfield Complaint is replete with allegations demonstrating that Fairfield Sentry had actual knowledge that BLMIS was not trading securities. *Multi-Strategy* at 18 (citing *Fairfield Inv. Fund*, 2021 WL 3477479, at *3–7).

Section 546(e) does not bar avoidance of initial transfers made to Sentry and those transfers may be recovered from Defendants regardless of whether Sentry or Defendants qualify as a financial institution, their agreements qualify as securities contracts, or their transfers qualify as settlement payments.[23] As this Court has held, the "Trustee's allegations in the Fairfield Complaint are sufficient to survive a Rule 12(b)(6) motion on this issue." *Multi-Strategy* at 19.

---

[22] The Trustee does not concede that any agreements or transfers between Sentry and Defendants activate the safe harbor under Section 546(e). Sentry's agreements with and transfers to Defendants are not relevant, because whether the initial transfers from BLMIS to Sentry are avoidable turns on Sentry's actual knowledge of fraud at BLMIS. The Trustee plainly alleges in the Complaint that Defendants are subsequent transferees, and it is settled law that a defendant cannot be both a subsequent transferee and a party for whose benefit an initial transfer is made. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 474 (Bankr. S.D.N.Y. 2015) (citing cases).

[23] Defendants' irrelevant argument that the Trustee is in privity with the Fairfield liquidators and therefore bound by any rulings in the Fairfield liquidation is incorrect. *See* Mot. at 31 n.17. Defendants cite no relevant authority for this argument because none exists. For example, *New Hampshire v. Maine*, 532 U.S. 742 (2001), does not even involve non-party preclusion. And if *Taylor v. Sturgell*, 553 U.S. 880 (2008), "stands for anything, it is for the need to narrow and regularize the use of preclusion against nonparties." *Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*, No. 07-MD-1902 (JSR), 2013 WL 12191844, at *11 (S.D.N.Y. Mar. 25, 2013).

**B.        Section 546(e) Does Not Apply Independently to Recovery Actions**

The 546(e) "safe harbor is not applicable to subsequent transfers." *Multi-Strategy* at 19.

Under its plain language, Section 546(e) applies to the avoidance of initial transfers, not the

recovery of subsequent transfers under Section 550. *See* 11 U.S.C. § 546(e) ("Notwithstanding

sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer*.

. . except under section 548(a)(1)(A) of this title.") (emphasis added); *Multi-Strategy* at 19 (citing

*BNP*, 594 B.R. at 197) ("The Trustee does not . . . 'avoid' the subsequent transfer; he recovers the

value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and

the safe harbor does not refer to the recovery claims under section 550."); *Kelley v. Safe Harbor

Managed Acct. 101, Ltd.*, No. 20-3330, 2022 WL 1177748, at *3 n.5 (8th Cir. Apr. 21, 2022)

("*SHMA*") (citing *BNP*). This limitation on the safe harbor to avoidance actions is consistent

with  the  principle that "the concepts of avoidance and recovery are separate and distinct." *In re

Madoff Sec.*, 501 B.R. at 30. It is also consistent with the fact that the Code's avoidance provisions

protect against depletion of a debtor's estate, while Section 550 is merely a "utility provision,"

intended to help execute on that purpose by "tracing the fraudulent transfer to its ultimate resting

place." *See In re Picard,* 917 F.3d at 98.

*Cohmad* confirmed that Section 546(e) does not provide an independent safe harbor for

Section 550 recovery actions against subsequent transferees. The court specifically limited the

safe harbor to avoidance claims based on the plain language of Section 546(e). *See Cohmad*, 2013

WL 1609154, at *4, *9 (applying the "plain terms" of Section 546(e)); at *7 (recognizing that

subsequent transferees can raise initial transferees' defenses to *avoidance*); and at *10 ("[B]oth

initial transferees and subsequent transferees are entitled to raise a defense based on the application

of Section 546(e) to the *initial* transfer from Madoff Securities.") (emphasis added). And though

the court hypothesized, in *dicta*, that a subsequent transferee's subscription agreements with the

initial transferee feeder fund, and related agreements and transactions, might under certain circumstances constitute relevant "securities contracts," and that certain subsequent transferee defendants might qualify as "financial institutions" or "financial participants," the decision is clear that the focus of the safe harbor is still on the *initial* transfers. *See id*. at *9.

Based on *Cohmad* and this Court's opinions in *Multi-Strategy and Banque SYZ*, Section 546(e) applies only to avoidance and not recovery, and, most notably, a subsequent transferee cannot assert the protections of Section 546(e) where the Trustee has adequately pled the initial transferee's actual knowledge. *See Multi-Strategy* at 18–21; *Banque SYZ* at 13; *Cohmad*, 2013 WL 1609154, at *4, *7, *10; *BNP*, 594 B.R. at 197 (a subsequent transferee gets only "indirect" protection from Section 546(e) to the same extent it protects the initial transferee). Defendants are "not permitted to raise the safe harbor defense on [their] own behalf as [] subsequent transferee[s]." *Multi-Strategy* at 21.

## IV.    THE TRUSTEE HAS PLAUSIBLY ALLEGED DEFENDANTS RECEIVED BLMIS PROPERTY

### A.    The Trustee's Complaint Properly Pleads That Defendants Received Recoverable Stolen Customer Property Under Section 550(A)

The Trustee's Complaint states a claim for recovery under Section 550(a) by plausibly alleging that Defendants received subsequent transfers of stolen Customer Property.

To plead a subsequent transfer claim under Section 550(a), the Trustee must allege facts that support an inference "that the funds at issue originated with the debtor." *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149–50 (Bankr. S.D.N.Y. 2014) ("*Merkin II*"). No tracing analysis is required, as the pleading burden "is not so onerous as to require 'dollar-for-dollar accounting' of 'the exact funds' at issue."[24] *Id*. at 150 (quoting *Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*,

---

[24] Defendants acknowledge that at the pleading stage, a dollar-for-dollar accounting is not required. *See* Mot. at 34.

No. 08-01789 (BRL), 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012)); *Multi-Strategy* at 13. Rather, "the Trustee need only allege sufficient facts to show the relevant pathways through which the funds were transferred from BLMIS to [the subsequent transferee]." *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3. To recover under Section 550(a), the Trustee must allege "'the necessary vital statistics—the who, when, and how much' of the purported transfers to establish an entity as a subsequent transferee of the funds." *Multi-Strategy* at 13 (citing *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018)).

Defendants rely on an incorrect reading of *Picard v. Shapiro.* Mot. at 35. *Shapiro* did not change the pleading burden for recovery under Section 550(a). *See* 542 B.R. 100, 104, 119 (Bankr. S.D.N.Y. 2015). That complaint did not detail the necessary vital statistics of the subsequent transfers. *Id.* at 119.

Here, the Trustee has alleged the vital statistics of Defendants' receipt of subsequent transfers of BLMIS stolen Customer Property from Sentry. *See* Compl. ¶¶ 44–48. The Trustee's Complaint lists specific subsequent transfers Sentry made to Defendants. It sets out the initial transfers of Customer Property BLMIS made to Sentry in Exhibits A and B, which show Sentry's account numbers with BLMIS and list alleged transfers by date, description, and transaction amount, and that Sentry invested substantially all of its funds with BLMIS. Additionally, the Complaint alleges the date, amount, transferor, and transferee of every subsequent transfer at issue in this proceeding. *See* Compl. ¶¶ 2, 38–41 and Exs. C, D, E. The Trustee alleges with particularity that Defendants received at least seven subsequent transfers totaling $24,815,102.[25] Nothing more is required. *See, e.g.*, *Picard v. Mayer (In re BLMIS)*, Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021) (rejecting argument that subsequent transfer claim

---

[25] Two April 14, 2003 transfers are omitted. *See infra* note 30.

was not pled "with enough specificity as to how and what [defendant] received" and holding
complaint "contains sufficient information regarding which transfers the Trustee is seeking to
recover"). As this Court held in *Multi-Strategy* and *Banque SYZ*, these "exhibit[s] provide[]
[Defendants] with the 'who, when, and how much' of each transfer." *Multi-Strategy* at 22; *Banque
SYZ* at 25.

## B.    Defendants' Tracing Arguments Fail

Tracing is an equitable process used by courts where funds have been commingled with
other property in such a manner that they have lost their identity. Yet, because the Trustee meets
his pleading burden, Defendants ignore the financial complexities of this case and the several
tracing methodologies that can be considered to achieve an equitable result, telling the Court it
must adopt First in First Out as the only available equitable tracing methodology and trust their
counsel's assertion that each subsequent transfer Defendants received must be tied to a specific
initial transfer from BLMIS. *See* Mot. at 35. But, this Court noted in *Multi-Strategy* that it "is not
convinced that this is the only method of calculating customer property." *Multi-Strategy* at 22.

Defendants' assertion that the Trustee has had access to records sufficient to "fix the
mathematical impossibilities underlying his claims" is not true.[26] Mot. at 39. Discovery in this
Adversary Proceeding is necessary and, of course, has not begun.[27] Using facts developed in

---

[26] Despite the "reasonable cooperation" owed to the Trustee by the Liquidators regarding the actions assigned to the
Trustee by the Liquidators, the Trustee does not have all of the books and records or the testimony of FGG's former
investment advisors, managers, directors, and partners and other third-parties, and discovery in the actions assigned
to the Trustee by the Liquidators against the FGG defendants continues. *See, e.g.*, Stipulated Case Mgmt. Order,
*Picard v. Fairfield Inv. Fund Ltd. (In re Bernard L. Madoff)*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Dec.
6, 2021), ECF No. 353 (setting future deadlines for fact and expert discovery).

[27] If Defendants have complied with Federal Rule of Civil Procedure 37(e), they will have their own records on these
same transactions. Moreover, the Trustee's reasonable review of documents produced by Sentry did not uncover the
document Defendants had in their possession and produced as Exhibit 12 to Michael Morrison's Declaration.
Incredibly, Mr. Morrison's Declaration summarily references his review of Defendants' books and records, which
have not been produced, and his "understanding" and "belief" about them to draw unsupported conclusions about how
he thinks Defendants ran their business before he got there. Defendants ask this Court to dismiss the Trustee's
Complaint based upon Mr. Morrison's interpretation of documents that neither the Trustee nor this Court have seen.

discovery and aided by expert testimony, this Court will eventually determine which of the available equitable tracing methodologies best achieves a fair and equitable result for the parties before it. *See Merkin II*, 515 B.R. at 152 (finding it "premature to cut off the Trustee's opportunity to satisfy his [tracing] burden on a motion to dismiss" merely because the tracing may prove formidable due to comingling of assets).

As this Court acknowledges, "the [Fairfield] Complaint plausibly alleges that Fairfield Sentry did not have any assets that were not customer property." *Multi-Strategy* at 21. And "taking all allegations as true and reading them in a light most favorable to the Trustee," this Court denied Multi-Strategy's Motion to Dismiss and held that "the [Fairfield] Complaint plausibly pleads that Defendant[s] received customer property because Fairfield Sentry did not have other property to give." *Id*. at 22.

Using what they characterize as "basic math and logic," Mot. at 4, Defendants pick which facts they want this Court to rely on and tell this Court how they should be interpreted when they claim the transfers they received from Sentry comprise subscriptions from other investors. *See id*. at 36–38. Defendants are really saying that, because Sentry commingled stolen Customer Property with other funds, the Trustee cannot trace. *Id.* Defendants are wrong, especially since Sentry's express purpose was to pool funds and funnel the pool to BLMIS to invest in the U.S. securities market. *See* Compl. ¶ 2.

"The law does not place such a difficult burden on trustees. The commingling of legitimate funds with funds transferred from the debtor does not defeat tracing." *Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-cv-1073 (ECT/KMM), 2020 WL 3077151, at *4 (D. Minn. June 10, 2020) (citing *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3) (citation omitted). "Courts have broad discretion to determine which monies of comingled funds derive from fraudulent

sources." *Id.* at *3 n.7.

Finally, Defendants argue that their counsel's math proves the Trustee's claims are "implausible" or "impossible" because the Trustee is seeking more money from Sentry's subsequent transferees than the fund withdrew from BLMIS. Mot. at 35–36. But, as this Court notes, "Defendant[s]' calculation ignores any money received by Fairfield Sentry prior to December 11, 2002." *Multi-Strategy* at 22. Counsel's inappropriate testimony[28] concludes that Sentry must have paid redemptions to its investors with money that could not have originated with BLMIS while ignoring that Sentry had 95% of its investments in Madoff and facts that will be adduced as the litigation progresses.[29] *See id.* at 36–37; Compl. ¶ 2.

### C.    Defendants' Double Recovery Claims Are Premature

If Defendants are worried the Trustee may recover more than he is entitled, this Court noted such a fear is unfounded. *See Multi-Strategy* at 22. There is no dispute that the Trustee is limited to "a single satisfaction" under § 550(a), s*ee id*. citing 11 U.S.C. § 550(d), but the Trustee "can recover from any combination of [transferees]" up to the amount avoided. *Helms v. Metro. Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021). And under § 550(a), "a trustee may recover [an avoided] transfer from a subsequent transferee of those funds, without the necessity for allocation among all [the] subsequent transferees." *CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*, 393 B.R. 306, 333 (Bankr. W.D.N.Y. 2008). The Trustee may simultaneously seek recovery from Defendants and defendants

---

[28] This argument is based on improper testimony by Defendants' counsel—similar attempts have been rejected in this litigation. *See Picard v. Sage Realty*, No. 20 Civ. 10057 (JFK), 2021 WL 5926059, at *3 (S.D.N.Y. Dec. 15, 2021) (finding the analysis and conclusions contained in the proffered exhibits were improper expert testimony) (citing *United States v. Cut*, 720 F.3d 453, 457 (2d Cir. 2013)).

[29] For example, a month prior to the filing of Defendants' Motion, the Trustee offered a stipulation to dismiss two April 14, 2003 transfers to Defendants Aggressive and Private. Rather than agree to the stipulation, Defendants filed their Motion arguing the Complaint sought to recover the April 14, 2003 transfers. *See* Mot. at 4, 37. By using transfers Defendants know the Trustee is not seeking to recover, they accentuate the flaws in their arithmetic. *See* Mot. at 37.

in other actions, even in an aggregate amount that exceeds initial transfers. *See Fairfield Inv. Fund*,

2021 WL 3477479, at *12. "Calculation of whether the Trustee is fully satisfied is a factual finding

to be made by this Court at a later stage of litigation." *Multi-Strategy* at 22–23.

### CONCLUSION

Accordingly, the Trustee respectfully requests the Court deny Defendants' Motion.


Dated: June 15, 2022

Of Counsel:

**BAKER & HOSTETLER LLP**
811 Main Street, Suite 1100
Houston, Texas 77002-5018
Telephone: 713.751.1600
Facsimile: 713.751.1717
Dean D. Hunt
Email: dhunt@bakerlaw.com
Farrell A. Hochmuth
Email: fhochmuth@bakerlaw.com

**Baker & Hostetler LLP**

/s/ David J. Sheehan
45 Rockefeller Plaza
New York, New York 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201
David J. Sheehan
Email:  dsheehan@bakerlaw.com
Torello Calvani
Email: tcalvani@bakerlaw.com

*Attorney for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*