

STATE OF NEW YORK          )
                          )
                          )          ss
COUNTY OF NEW YORK         )


## **CERTIFICATION**


This is to certify that the attached translation is, to the best of my knowledge and belief, a true

and accurate translation from Hebrew into English of the attached Declaration of Retired Judge

Varda Alshech.


_____

Lynda Green, Senior Managing Editor
Lionbridge


Sworn to and subscribed before me

this __15__ day of __JUNE__, 20_22_.

_____

JEFFREY AARON CURETON
NOTARY PUBLIC-STATE OF NEW YORK
No. 01CU6169789
Qualified in New York County
My Commission Expires 09-23-2023

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (CGM) |
| vs. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | |
| vs. | Adv. Pro. No. 21-01190 (CGM) |
| THE HEBREW UNIVERSITY OF JERUSALEM, YISSUM RESEARCH DEVELOPMENT COMPANY OF THE HEBREW UNIVERSITY OF JERUSALEM LTD., BEN-GURION UNIVERSITY OF THE NEGEV, B.G. NEGEV TECHNOLOGIES AND APPLICATIONS LTD., THE WEIZMANN INSTITUTE OF SCIENCE, and BAR ILAN UNIVERSITY, | |
| Defendants. | |

## DECLARATION OF RETIRED JUDGE VARDA ALSHECH

I, Varda Alshech, declare under the penalty of perjury under the laws of the United States of America, as follows:

A.   **Background and introduction:**

1.   My name is Varda Alshech and I am a retired judge of the Tel Aviv District Court, Israel. In 1969 I was accredited as an attorney in Israel. In 1978 I was appointed as a judge of the Magistrates' Court in Tel Aviv. In 1987 I was promoted to serve as Registrar in the District Court in Tel Aviv. In 1990 I was appointed to serve as a judge in the District Court in Tel Aviv and in 2006 I was appointed as Vice President of the Tel Aviv District Court, a position I held until my retirement from the bench in 2013.

2.   Between the years 1987 and 1999 I presided mainly over civil-commercial cases. In 1999 I was appointed to serve as the Court's director of its Liquidation, Receivership, Rehabilitation and Bankruptcy Department. As part of my role, I presided over some of the most significant liquidation and creditors' arrangement cases in Israel during these years.

3.   Since my retirement from the bench, I have been engaged as an arbitrator and mediator and serve as director of several large public companies in Israel. My CV is attached as **Appendix A**.

4.  The Plaintiff in the case Picard v. Hebrew University of Jerusalem et. al. (Adv. Pro. No. 21-01190) heard before the Honorable Judge Morris in the United States Bankruptcy Court of the Southern District of New York (hereinafter, respectively: the "**Plaintiff**" or the "**Trustee**" and the "**Proceeding**") retained my services to analyze and provide my professional opinion regarding the declarations filed on behalf of the Defendants in this proceeding (hereinafter: the "**Defendants**" or the "**Universities**"), about the conduct of their employees, personnel, and other representatives, (hereinafter: the "**Personnel**") relating to receiving funds from the Yeshaya Horowitz Association (hereinafter: the "**Association**" or "**Yeshaya**"), and particularly regarding Prof. Amir Licht's declaration (hereinafter respectively: "**Prof. Licht**" and "**Licht's Declaration**").

## A.1. <u>The documents I reviewed:</u>

5.  The factual background I relied upon is that which appears in Licht's Declaration, in Chapter 3 (sections 9-13). Additionally, I read the material the Plaintiff's attorneys sent me, consisting of the Complaint filed by the Plaintiff, the Motion to Dismiss and the Declarations filed on behalf of the Defendants, including the Licht Declaration and I examined the relevant rulings and laws in Israel. Furthermore, I reviewed various documents, including the pleadings filed by the parties herein within the proceedings held between them before the Israeli Court, and part of their appendices, as well as statutes, case law and articles that are relevant to Israeli law.

## A.2. <u>The Licht Declaration. - an improperly narrow view of law requiring a holistic approach</u>*:*

6.  The Licht Declaration reviews the law relating to the present case through the prism of Israeli corporate law from an extremely narrow point of view and reaches determinations in respect to the present case as if corporate laws exist in a void and stand alone, meaning that they are detached from the legal system and *sui juris*. In my opinion, Prof. Licht is mistaken in respect to the corporate law as presented in his declaration and in its application, *inter alia*, by selecting the narrow definition of the term "organ" applied in Israeli criminal law, disregarding almost entirely the civil law. He is mistaken to completely ignore the differences between criminal proceedings, upon which he relied, and civil proceedings, such as this proceeding. A graver mistake is to look at things from such a narrow standpoint, and not take a more comprehensive view of the law in its entirety, as part of an entire fabric of law also containing corporate laws. A holistic application of the relevant corporate laws to the present case results in completely different conclusions from those presented in the Licht Declaration. Based on my experience, and because Israeli corporate law is based on the American law, I do not believe that applying Israeli law concerning issues of attribution of vicarious liability and knowledge of the Defendants' Personnel to the Defendants themselves would yield a result that is different if American law were to apply.

7.  The Defendants' claim that they did not "explicitly authorize" the activity of their Personnel, as well as Adv. Green's, is of no consequence. Accepting such a claim would allow any corporation to evade liability for its representatives' actions by claiming it did not explicitly authorize them. As explained in greater detail below, there was no need for the Defendants' explicit authorization, because for years they consented to the activity every time they received the funds distributed to them by Yeshaya and benefited from them.

8.  As I will extensively detail below, in my professional opinion and experience, according to Israeli law in its entirety – by virtue of corporate law and by virtue of other laws – the knowledge and conduct of the Defendants' Personnel, as well as Adv. Green's, who were involved in the activities of the Yeshaya Association, are also necessarily the knowledge and conduct of the Defendants themselves.

**A.3.** **Structure and methodology:**

9.  I will start by reviewing the basis for the corporate law applied in Israel. I will then specify the various additional sets of law pursuant to which Israeli courts attribute vicarious liability to a corporation for those who act on its behalf, including the corporate laws which Prof. Licht relied upon. To complete the discussion, I will also review the issues of action outside the scope of authorization and how, contrary to Prof. Licht's position, the "organ theory" as it developed under the Israeli law renders the Defendants liable for actions of their representatives in Yeshaya, and at the very least imputes to the Defendants the constructive knowledge of their representatives. I will conclude by specifically addressing the Licht Declaration and the failures I found therein, as well as the issue of piercing the corporate veil between some of the Defendants and companies they own which also received funds from Yeshaya. As I shall detail below, the various laws that apply to the relationship between the Defendants and their Personnel as well as Adv. Green, define these relationships in different ways. Thus, and as I shall demonstrate, according to agency laws, they will be viewed <u>as agents</u> of the Defendants, and according to corporate law – <u>organs</u> of the Defendants. This should not be considered a contradiction since these are complementary laws that in this case lead to the same result.

10.  In my declaration, the term **"corporate law"** refers to the entire corpus of legislation and case law applicable to an incorporated group of people, including commercial companies, but also for example, associations and other corporations established by law. That is to differentiate from specific references to the Companies Law, 5759-1999 (hereinafter: the **"Companies Law"**) which constitutes a part of the corporate law corpus.

11.  Unless stated otherwise, the emphases in the various quotations presented in my declaration were added by me and are not in the original quotation.

**B.**    **Corporate law in Israel is based on norms from modern Anglo-American law and therefore Israeli law does not conflict with U.S. law:**

12.  Israeli law relating to corporations derives from and identifies with American law and assumes the American norms which originated in English law.

13.  Prof. Licht, in his article "**The Objectives of the Corporation,**" 1 Justice & Business. 173 (2004) refers to the American norms and their application in Israeli law. In his article, Prof. Licht writes that Israeli law relating to corporations derives from and identifies with American law and assumes the American norms, as follows:

> "It may be generally said that Israeli law safeguards the main delineating lines of the common law system. **In the area of corporate law, the center of gravity has moved in the last generation from reliance on English law to reliance on American law** ...."

14.  Israeli law is derived in great part from American law, both in the area of corporations and in other areas. See, for example, Civ.A. 2705/91 **Rajakh Salem Abu Jakhala v. East Jerusalem Electric Company Ltd.**, ILR 48(1) 554 (1993), in paragraph 5; Cr.A. 2103/07 **Avihu Horowitz v. the State of Israel** (Nevo database, December 31, 2008), in paragraph 35, and also Civ.A. 7276/18 **The Estate of the Late Jane Doe v. the State of Israel Mental Health Center "Maale Hacarmel"** (Nevo database, March 2, 2021), in paragraph 31.

15.  Therefore, according to case law and various scholars, including Prof. Licht himself, corporate law in Israel derives inspiration and assumes the norms customary in the United States. In this context, and in our case, there is no contradiction between the Israeli law and the American law.

16.  Similarly, there is no contradiction between Israeli and American agency laws applicable to imputation of knowledge in this case.

**C.  The Defendants' Vicarious Liability and Constructive Knowledge:**

**C.1. The relationship between agency laws and corporate law – the actions of a corporation through an organ are subject to several laws simultaneously:**

17.  As it is known, a corporation is a non-human abstract legal personality. As such, in practice, all its actions are performed by a human agent. Even in a chain of companies, at the end of the day there is a human person who carries out an action and/or fails to carry out an action for the corporation. That person may be an officer, director, agent, trustee, bailee, representative or any other term or job definition. Section 46 of the Companies Law defines anyone who acts for the company and according to law whose action is considered as the company's action, as an "**organ.**"

18.  Since this is so, several sets of laws apply simultaneously to the actions of such organ and/or agent for the corporation, where the Companies Law only forms part of it, and it also includes agency laws, trust law, corporate law, bailment law, tort law, and so forth. Furthermore, and as I shall mention below, the present Defendants are not ordinary corporations, but public universities, or at least – hybrid entities subject (and accordingly, also subjecting their organs and/or agents) to duties of conduct from public law having an enhanced standard of fairness compared to private law.

19.  I will refer to the main laws relevant to the present case – agency laws and corporate law. Corporate law splits into two levels, the criminal level (in which the organ theory is generally applied) and the civil level which is relevant to the present case. Agency laws and corporate laws are not alternative laws but rather apply simultaneously.

20.  Prof. Licht referred briefly to agency laws in Israel (on pages 27-30 of the Licht Declaration) only to determine that the law in Israel does not recognize the ratification of acts of the Defendants' senior Personnel, because they (the Personnel) did not clearly present themselves as agents of the Defendants. According to Prof. Licht, under the law in Israel, when a person does not purport to present himself as an agent, there cannot be an act of ratification, and no agency relationship will be created. This is because, according to Prof. Licht, ratification requires the agent to present himself as being an agent or as an organ of the principal, and that the principal, after having learned about the agent's acts, will choose to ratify the agency (*Id.* at section 71). It seems that Prof. Licht's position is that the agent must actively present himself as agent of the principal so that the agency is satisfied and that the principal, after having learned of the agent's acts, has to actively ratify his acts. I believe Prof. Licht to be mistaken on this matter. As I shall explain below, Israeli law recognizes agency <u>by conduct</u>, even if it is not disclosed and explicit, <u>and ratification of the agency by conduct</u>. This is stated explicitly in the plain wording of the law.

21.  <u>In Israel, acts performed by a corporation through its organs and/or its agents are simultaneously included within agency laws and within corporate law. The laws on this matter are cumulative and apply alongside each other.</u> This was determined by the Supreme Court in C.A 4371/12 **Ilan Segev, CPA v. Shafir Buildings Industries (2002) Ltd.** (Nevo Database, September 17, 2014), in section 43.

**C.2. Vicarious liability of public entities for the activities of an organ on their behalf – under the Agency Law:**

22.  As indicated by the Trustee's allegations in the complaint filed within these proceedings, and as also appears in the Licht Declaration on behalf of the Defendants, some of the Defendants' Personnel – i.e., employees and office holders who worked there, were highly senior office holders and also served

at the same time in various other positions at the Yeshaya Association, including on the managing board and/or the audit committee and/or in entities Yeshaya created for the purpose of distributing funds.

23. The Agency Law, 5725-1965 (hereinafter: the "**Agency Law**") prescribes several fundamental principles in respect of the law of agency, whose relevance to the present matter is as follows:
    A. Agency can be in relation to any legal act (with the exception of anything that has to be performed personally).
    B. A person's agent has the same status as that person himself, to obligate and benefit the principal, and as part of this, the agent's intention and knowledge are imputed to the principal.
    C. The creation of the agency may be in writing, verbally and even by the principal's conduct.
    D. The agency applies to any action reasonably required for the performance of the agency.
    E. The presumption of knowledge – a person is deemed to have knowledge if, as a reasonable man, he should have known.
    F. The agency laws apply simultaneously with other relevant laws.

And in the language of the Agency Law (relevant sections):

> "1. (a) Agency is the grant of power to an agent to do, in the name or in place of a principal, a legal act in respect of a third party. (b) Any legal act may be an object of agency, except an act which by its nature or under law must be performed personally. …

> 2. A person's agent has the same status as that person himself, and an act of the agent, including his knowledge and intent, binds or entitles the principal.

> 3. (a) Agency is conferred by written or oral authorization of the agent by the principal, or by notice to the third party by the principal, or by the conduct of the principal toward one of them…

> 5. (a) Agency extends – unless limited by the authorization – to any act reasonably required for the proper carrying out of its object, but it does not – except by express authorization – extend to proceedings before any court, tribunal, or arbitrator, nor to a compromise, renunciation or gratuitous act…

> 18. For the purposes of this Law, a person shall be deemed to have knowledge of a thing if he should as a reasonable person have knowledge thereof or if he has received notice thereof in the ordinary way.

> 19. This Law shall not derogate from the provisions of any law regulating a particular category of agency relationships."

24. The simple and clear provisions of the Agency Law are therefore sufficient to lead to the conclusion that Prof. Licht's position is incorrect. The present case is covered by all the simple and clear provisions of the Agency Law listed above.

**C.2.(i) <u>The existence of agency is not conditioned upon written authorization or formal presentation of the agent as such:</u>**

25. According to the Agency Law, there is no need for the Defendants to confer explicit written authorization to their agents in the Yeshaya Association in order to represent their interests and vote to approve the transfer of funds to the Defendants for the Defendants' objectives. According to the Agency Law, there is also no need for the Defendants' Personnel or Adv. Green to present themselves as the Defendants' agents. Prof. Licht does not rule out the fact that they acted for the benefit of the Defendants and their objectives. The actual conduct of the Defendants pertaining to this matter, over the years, is what established the agency. Pertinent to this matter are the determinations of the Supreme Court in C.A. 502/78 **State of Israel v. Yerucham Nissim**, ILR 35(4) 748 (1981), as follows:

> "12. … X is deemed to be the long arm of Y – and therefore as his agent with respect to vicarious liability in tort – if X's act is not carried out independently on his own but is carried out within the scope of Y's business activities, in a manner dissimilar to an external business service provided to Y, but as activity constituting an internal and integral part of Y's business activities. In such circumstances, X's act is an internal part of Y's total activity

and may be regarded as one of the organs constituting the entire body of activity. In these circumstances, X may be regarded as the long arm, because he is a living organ from Y's entire system."

**C.2.(ii) <u>Imputing the knowledge and conduct of the Defendants' Personnel's as well as Adv. Green's on to the Defendants themselves by virtue of the Agency Law:</u>**

26. There is no way to view the agents who operated on behalf of the Defendants, other than as integral limbs of the Defendant public/hybrid entities. I should emphasize that under section 2 of the Agency Law "A person has the same status as the agent himself" even with respect to intention and knowledge. Therefore, the intention and knowledge of the humans who promoted and approved the transfer of funds from the Yeshaya Association to the Defendants, the Defendants' agents, are imputed to and deemed to be the intention and knowledge of the Defendants themselves. Therefore, when the funds were received at the Defendants, it is presumed that they knew with certainty and intended to receive the funds (identical knowledge between them and their agents).

27. Furthermore, according to the additional presumption on this matter prescribed in section 18 of the Agency Law as specified above, a person is deemed to have knowledge of what s/he should have known as a reasonable person. In the present case, there is a clear and obvious presumption that all those "persons involved in the work" who annually approved Yeshaya's financial statements knew that these were considerable sums of money coming from the United States from an account "at a broker in the U.S." as was clearly stated in these statements. This is knowledge of a "reasonable person" which the Agency Law speaks of.

28. The above comments are added to the Israeli legal norms under which public, or at least hybrid private-public, entities such as the Defendants are required to act with enhanced good faith and special fair dealing. Such was held for example, in Civ.A. 3979/01 **Isco Building and Properties Ltd. v. Israel Land Administration**, ILR 57(5) 423 (2003), and in HCJ 4289/00 **Abramowitz Heddy *et al.* v. Prime Minister of Israel** (Nevo Database, December 10, 2009). The duty to act with enhanced good faith and special fair dealing enhances both the presumption of Defendants' knowledge about the source of the funds they received as well as their responsibility for the actions of their agents where the funds are turned out to not be legitimate.

**C.3. <u>Vicarious liability and presumption of knowledge - under the Tort laws:</u>**

29. In addition to the agency laws, the actions and knowledge of the Defendants' Personnel as well as those of Adv. Green, can also be imputed to the Defendants under Tort Laws. The Civil Wrongs Ordinance [New Version] (hereinafter: "**CWO**") prescribes the responsibility and liability of a principal for the acts performed on his behalf by his agent, as well as prescribes a presumption of knowledge, as follows:

> "13. (A) For the purposes of this Ordinance, an employer will be liable for any act committed by his employee –
>
> (1) if he has authorized or ratified that act;
> (2) if it is committed by the employee in the course of his employment; Provided that –
> (a) an employer shall not be liable for any act committed by any person not being another of his employees, to whom his employee has without his authority, express or implied, delegated his duty;
> (b) a person who is compelled by law to use the services of another person, in the choice of whom he has no discretion, is not liable for any act committed by that other in the course of such employment.
> (B) An act shall be deemed to have been done in the course of an employee's employment if it is done by him in his capacity as an employee and whilst he was performing the usual duties of and incidental to his employment, notwithstanding that the act was an improper mode of performing an act authorized by the

employer; but an act shall not be deemed to have been so done if it is done by an employee for his own ends and not on behalf of the employer.

(C) For the purposes of this Section, act - includes omission.

14. For the purposes of this Ordinance, any person who employs an agent, not being his employee, to do any act or class of acts on his behalf shall be liable for anything done by such agent in the performance of, and for the manner in which such agent does, such act or class of acts . . .

17. Whenever under the provisions of this Ordinance it is necessary to allege or prove knowledge, the knowledge of an agent or of an employee shall be deemed to be the knowledge of his principal or employer if such knowledge was acquired by the agent whilst acting for and on behalf of his principal, or was acquired by the employee in the course of his employment in connection with the matter or thing in respect of which the knowledge is necessary."

30. The CWO therefore also establishes both the liability of the Defendants for the actions performed on their behalf by their agents and the presumption that they knew of the transfer of funds to them, because <u>according to the CWO, the knowledge and conduct of an employee or agent is deemed to be the knowledge and conduct of the employer or his principal.</u>

31. In respect of the vicarious liability and presumption of knowledge under the Agency Law and CWO, I saw fit to present the language of the Law and Ordinance alone because, as may be seen, it is clear and sufficient. The case law on this matter is extensive, but there is no need to present it, considering the simplicity and clarity of the matter. It is worth emphasizing that this case involves agency by conduct which continued for many years. The Personnel, namely managers, professors and the other office holders involved in the activity were the Defendants' agents for years and their activities with Yeshaya were clearly within the scope of their agency. The Defendants knew about the activities of those Personnel and Adv. Green within Yeshaya and agreed to it by happily and gratefully receiving the funds directed to them, as a result of said activities.

32. The Defendants' current denial of the agency relationship, the agency, and receipt of the benefits of that agency constitutes conduct in bad faith, unfair dealing, and dishonesty, in violation of the common duty to act in good faith and decency, and certainly in violation of the enhanced duty applying to the Defendants as public, or at least hybrid entities.

**C.4.** <u>**Vicarious liability and imputation of knowledge of corporations for the acts of the organ on their behalf – under corporate law:**</u>

33. As stated, the agency laws and corporate law apply in tandem and in this sub-chapter, I shall discuss the corporate law. Section 46 of the Companies Law defines an "organ" as anyone operating on behalf of the company, and under the law his act is considered to be an act of the company, as follows:

"46. The company's organs are the general meeting, the board of directors, the general manager and <u>any person whose acts in any given matter are considered by law or by virtue of the articles of association to be the acts of the company with regard to the matter concerned.</u>"

34. As shall be explained below, according to the interpretation of the law, there is no need for an official position and/or an official appointment on behalf of the company and it is enough that such organ performs actions on behalf of such company. Section 47 of the Companies Law also provides that the company is responsible for all acts of those persons acting on its behalf under law, and that the acts and intentions of the organ are its acts and intentions, as follows:

"47. The acts and intentions of an organ shall be the acts and intentions of the company."

35. It should be noted that the Companies Law not only refers to acts performed by the organ and fully imputes them to acts of the company, but also further provides and imputes the intentions of the organ as the intentions of the company itself. The essence is simple – imputing not only the act but also the intention. In this case, when the Defendants' organs acted on their behalf to transfer funds from BLMIS and/or from the Yeshaya Association to the Defendants, the Law imputes the actions and intentions of these organs as the actions and intentions of each of the Defendants themselves. Furthermore,

section 53 of the Companies Law provides that a company is liable in tort, directly, for any wrongdoing committed by its organ, as follows:

> "53. (a) A company shall be directly liable in tort for any civil wrong committed by one of its organs.
> (b) Nothing in the provisions of subsection (a) shall derogate from a company's vicarious liability in tort under any law."

36. In respect of other relevant laws – civil wrongs in torts, liability under the Agency Law, the enhanced standard of good faith by virtue of their being public entities, and the like – reviewed hereinabove, also apply here. The Defendants are liable in torts for all the acts committed for them by their employees, agents, etc., who are deemed in this regard to be the organs of the Defendants. As stated in section 53(b) of the Companies Law, it does not derogate from any further liability of the Defendants under any other law, but this section provides a specific liability whereby a company is liable for the acts and omissions committed by the organs on its behalf.

37. It has been repeatedly held in Israel, including in the ruling of the Supreme Court on this matter by the Honorable Chief Justice Meir Shamgar, OBM in C.A. 725/78 **British Canadian Builders Ltd. v. Yoel Oren**, ILR 35(4) 253 (1981), as follows:

> "The company, which is an abstract legal personality, is held in direct liability in tort where an actual tortious act has been committed by anyone considered to be its organ. In this case the company is deemed to be in breach of the obligation imposed on it, by means of the actions of anyone considered to be its organ, meaning the person carrying out its desire, and as its alter ego."

**C.4(i)  Implementing the tests of the "organ theory" – obligating the Defendants for the deeds of the organs who acted on their behalf:**

38. The Defendants are also liable for the acts of their Personnel as well as the acts of Adv. Green under the "organ theory." I emphasize that the organ theory is required wherever *mens rea* is required for the determination of liability (generally in criminal law). For example, it was held in the Supreme Court in C.A. 4202/08 **Amar Elsa'ana v. VAT Director** (Nevo Database, July 1, 2010) as follows:

> "…The "organ theory" by virtue of which the *mens rea* and the active behavioral component when satisfied in an organ of a corporation are perceived to be the *mens rea* and active behavioral component of the corporation, and this is what permits the imposition of direct liability on the corporation, even where without having any human traits, it did not perform the act "itself"."

39. The Supreme Court held in respect to the organ theory that the same *mens rea* transferred from the organ to the corporation essentially makes them jointly liable for the criminal act committed, "partners in crime," as determined in Cr. App. 7399/95 **Nechushtan Elevator Industries Ltd. v. State of Israel**, ILR 52(2) 105 (1998), on page 124, as follows:

> "The organ theory which presents the organ as the "human face" of the corporation and regards them both together as one "joint" "entity" is intended to confer human characteristics on the corporation enabling personal criminal liability to be imposed on it – as a corporation."

40. Indeed, the organ theory has nonetheless been accepted both in relation to criminal law and in relation to civil law "where necessary," meaning where *mens rea* is needed for the purpose of establishing liability, although, as appears from the case law which discusses this issue, generally, the issues discussed therein concern criminal matters because there is no need for a mental element for the purpose of establishing civil liability. Therefore, the case law relating to the actual implementation of the "organ theory" has been primarily developed in criminal law. At the basis of the "organ theory" are the following two tests:

1) The "**Organizational Test**" – the formal status of the organ in the corporation (being an officer with a defined "title," such as CEO, Vice President, etc.) as a function for the purpose of examining his status in the company.

2) The "**Functional Test**" – whether the function actually performed by the corporate officer justifies regarding his acts as acts of the corporation. This is when, as presented in the above case law,

an organ does not necessarily mean a senior officer of the company, and even junior-ranking employees may be regarded as organs.

41. In practice, these are tests create an amorphous definition and not a standard framework for purposes of a definition, and therefore there is no closed list of who should be considered an organ. However, the logic in the definition is clear and includes within "organ" anyone who in practice has a crucial function in the corporation, responsible for its activities and/or actually performing its activity internally and/or externally, whereas the job title is of no practical significance. The case law has determined that above these two tests are essentially considerations of general and legal policy, under which an organ will be recognized as a person binding the corporation in criminal law. Within this framework three auxiliary tests were determined, as follows: (A) Whether the statute did not intend to remove from its ambit the corporation's liability. (B) Whether the organ's act was carried out in the fulfillment of his function. (C) Whether the act was for the benefit of the corporation, or at least not directed against it. The matter was summarized well in the judgment of the Tel Aviv District Court (Tel Aviv District) 1420-07 **Zeev Zeevi v. T.R.D. Instrum Ltd.** (Nevo Database, April 28, 2015), as follows:

> "The organ theory … which "presents the organ as the 'human face' of the corporation and regards them both together as one 'joint entity', which is intended to confer human characteristics on the corporation enabling personal criminal liability to be imposed on it – as a corporation … The main purpose of imposing liability under the organ theory is to deter the corporation and corporations like it, so that the next time they will avoid the recurrence of the offense by creating supervisory and control mechanisms which are able to prevent in advance any situations leading to the criminal offense: …
>
> … 115. At the basis of the organ theory is obviously the organ, that senior long arm of the company. Customarily, there are two alternative tests in the case law and literature to examine the question whether X is to be considered an organ in Y corporation. The first test, is the organizational test – under this test, the question whether an individual is an organ will be examined according to his formal status within the corporation … The second test, is the functional test – whether the function performed by the specific officer justifies regarding his acts as acts of the corporation "whatever the hierarchical status of the person acting in the company may be …
> 116. The two tests, which derive from commonsense, do not define the list of office holders that may be organs within a closed list, … Considerations of legal policy have also not infrequently been part of the determination of the framework, and naturally will have greater weight in borderline cases … to determine that a corporation is liable under the organ theory for the activities performed by the corporation's organ, it is necessary to determine that it is appropriate to impose liability on the corporation for the concrete acts of the organ (the Modiim Case, pages 383-384). This is a question of legal policy, and over the years the following auxiliary tests have been formed in the case law: first, whether the legislation did not intend to remove from its ambit the corporation's liability (the Modiim Case, at page 385); the second, whether the organ's act was carried out in the fulfillment of his function (Kremnitzer and Ganaim, at pages 97-98); third, whether the act was for the benefit of the corporation, or at least was not directed against it."

42. In the present case the answer to all the tests and examinations mentioned above leads to the unequivocal conclusion that the Defendants' agents are organs who acted on their behalf and the knowledge and acts of their agents should be imputed to the Defendants. Some of the organs and agents who acted for the Defendants in the Yeshaya Association had an official position in the Defendant corporations, so that it is clear that the aforesaid organizational test, in respect of part of the Defendants, is clearly and absolutely satisfied. This is sufficient to accommodate the organ theory in relation to these Defendants. However, as stated above, the organizational test is not everything, and even in a case where the agent does not have a permanent official job title within the corporation, s/he will still be regarded as an organ thereof where the functional test is satisfied. Thus, in the case at hand, the functional test is satisfied because the Defendants were the primary beneficiaries of these money transfers.

43. Furthermore, considerations of "judicial policy," "general policy," etc., lead to the imputation of knowledge and conduct to the corporate entity benefiting from an act of its organ. Therefore, the obvious conclusion in this case is the imputation of knowledge and conduct of the organs, i.e., the Personnel and Adv. Green, to the Defendants. To wit, in the present case the main act was the transfer of funds to the Defendants by the Yeshaya Association in which their Personnel and Adv. Green were involved. Not only did these acts benefit the Defendants and/or were performed in their favor, but the Defendants were the <u>primary beneficiaries</u> thereof.

**C.4(ii). <u>The case law's definition of a corporation's "organ" for the purpose of determining vicarious liability is broader in civil law than it is in criminal law:</u>**

44. Prof. Licht opted to define the term "organ" in its most narrow sense pursuant to Israeli criminal law tests and disregarded almost entirely the civil law. I emphasize that the aforementioned organizational test and the functional test are at the criminal level, and according to which a person will be deemed an organ of a corporation, such that acts or omissions they committed may be considered criminal offenses of the corporation itself. *A fortiori* when dealing with civil matters, such as the present case, these tests will be softer and more flexible.

45. A company's vicarious liability for the acts committed on its behalf by its organ was held extensively in the case law, certainly where there is "<u>an intention to benefit the corporation</u>." In C.A. 407/89 **Tzuk Or Ltd. v. Car Security Ltd.**, ILR 48(5) 661 (1994), the Supreme Court explained these matters, and also held that an organ of the company with regard to vicarious liability and in tort, an officer who is not senior may also be deemed an organ of the corporation, if his act and intention can be regarded as the act of the corporation itself, as follows:

> "An innocent injured party is better off than a guilty wrongdoer: it would be appropriate for the manager, organ or officer to also bear the burden of the company's insolvency in the tort situation. Personal liability is an integral part of the principle that a person who benefits from a risk cannot evade the results of such a risk" … "<u>We saw that a company may be found liable in tort under direct liability or under vicarious liability.</u> The direct liability arises wherever the organ of the company commits a tortious act. The acts of the organ are imputed to the company. If the organ committed a tort in his capacity as organ, this means the company committed a tort. The acts of an employee who is not an organ are not imputed to the company. However, if the provisions of section 13 of the Civil Wrongs Ordinance [New Version] are satisfied, vicarious liability is imposed on the company. This is the law if the agent of the company committed a tort, as determined in section 14 – then the liability of the company is vicarious. What is the extent of this concept of "organ" … Even a corporate officer who is not a senior officer may be considered an organ of the corporation…."

46. The question of who an organ is was also discussed in the ruling in Cr. App. 99/14 **State of Israel v. Melisron Ltd.** (Nevo Database, December 25, 2014) (hereinafter: "**Melisron**"), referred to by Prof. Licht, on behalf of the Defendants. The organ theory mentioned at length in the judgment in Cr. App. 3027/90 **Modiim Construction and Development Company Ltd. v. State of Israel**, ILR 45(4) 364 (1991) (hereinafter: "**Modiim**"), is, by its nature, intended for the purpose of examining the question of imputing criminal intent in criminal offenses perpetrated by an organ for a corporation. As previously stated, since we are dealing with civil law and not criminal law, the tests with respect to "who is an organ," "who is an agent" and such are "softer" because there is no necessity for the heavier burden existing in criminal law. This distinction is missing from Licht's Decl. In any event, also in the **Melisron** judgment, the court held that there is no need for an official function definition or title to transform a person into an organ or agent, but the circumstances are examined according to their substance and not by definitions for appearances' sake. <u>The substance of an organ's activity in a company is examined without a need for the existence of a formal appointment.</u> Thus, in paragraph 141 of Melisron:

> "…I should first state that in my opinion, Melisron's argument that Madar should not be regarded as an organ of the company if only on the ground that he was not employed as the company's financial director within the company, only externally as a "financial services provider," is inappropriate. This is because the law is not only satisfied with the way things appear to be but it also examines the substance; this is essential to achieve the most basic purpose of the law – justice" …
>
> …"company law, as in the present case, is no different to this, and as Gross states: 'the prevailing approach in company law places the emphasis on the substance of the activities of the company's organ and not on the formal appointment' (*Id*. at 124)".

47. I conclude, therefore, that according to Israeli civil law, the Defendants' Personnel, as well as Adv. Green, are organs of the Defendants, and there is no significance to the definition of the formal position of each one of them within the Defendants, where it is clear that their actions at the Yeshaya Association, including approving transfer of funds, were performed on behalf of and for the benefit of the Defendants and for their objectives.

**C.5. Imputing vicarious liability and knowledge onto a corporation not under organ theory:**

48. To complete the picture, I should mention that there may be cases where the organ theory does not apply, and the court will employ other tests for the purpose of imputing the organ's intention to the corporation to impose criminal liability. Courts have held that even relatively junior officers may be considered an organ for the purpose of imposing criminal liability on the company. Courts have also held that within the scope of the functional examination (to find out whether an individual is an organ), an employee who operated within the scope of his position in the corporation in excess of his authority, and even in breach of the express instructions of his superiors, may also be identified as an organ. See, for example, the judgment of the District Court, Judge Khaled Kabub, Criminal Case 23842-11-11 **State of Israel v. Avraham Levy** (Nevo Database, November 19, 2013):

> "… according to the traditional model of the organ theory, within the ambit of the functional examination, an employee who acted within the scope of his functions at the corporation, even when acting in excess of his authority and sometimes even in the course of acting in breach of the explicit instructions of his superiors, may be identified as an organ… In the Nechushtan case, the Supreme Court expressed this position … when it determined that: 'Limiting the personal liability of the corporation to acts committed by its organ only within the scope of his authority removes the lifeblood from the organ theory' (*id*. at 123). Without determining hard and fast rules on this matter, it can be said that there may be cases where the organs of the corporation committed criminal acts in respect of which it is appropriate to impose liability on the corporation itself, despite the fact that these acts were not intended to benefit it… Where the organ acted both with intent to benefit the corporation and also with personal motives, the organ theory may be applied, obviously taking into account all relevant considerations."

And I should emphasize that there is nothing to prevent a company from being held liable for an act committed by an organ on its behalf in civil law, even where in criminal law, which applies a higher standard, it will not be convicted.

**C.6.   Constructive knowledge – imputing absolute knowledge when turning a blind eye:**

49. The Defendants had agents who acted on their behalf at the Yeshaya Association: members and founders of the Association, some of whom worked at some of the Defendants, some of whom served in formal positions at the Defendants and some of whom acted generally in their agency at the Association and related entities. Section 2 of the Agency Law provides, *inter alia,* that the principal should be imputed with the knowledge that the agent has – see the quote in section 23 above.

50. According to the clear language of the Agency Law, the knowledge attributed to the organs and/or agents of the Defendants, who acted on their behalf at the Yeshaya Association, is directly transferred and imputed to the Defendants themselves.  This conclusion is particularly apt in the present case given that these are public corporations which are subject to enhanced duty of good faith and fair dealing.

51. And thus, the Agency Law itself imputes constructive knowledge to the principal and the agent. The Trustee does not have to prove the Defendants' actual positive knowledge of all the accurate facts, because these presumptions are sufficient to determine that the Defendants knew that which was imputed to them. Moreover, a lack of knowledge originating in negligence or turning a blind eye is also deemed to be actual knowledge. On this matter Justice Barak held, in the judgment in the case of **F.H.C. 1740/91 Barclays Discount Bank Ltd. v. Shraga Prost Kostman**, ILR 47(5) 031 (1993), that negligence leading to lack of knowledge amounts to knowledge, as follows:

> "According to this provision, when a person knows nothing, but as a reasonable person he should have known about it, he is deemed to have known about it. Negligence in the lack of knowledge is equivalent to knowledge. Therefore, anywhere in the Agency Law where the legal result is contingent on the fact that a person knew something, the same legal result will be reached also where such person did not know anything, but as a reasonable person he should have known … ."

52. As stated, the CWO also prescribes a presumption of knowledge, as follows:

> "17. Whenever under the provisions of this Ordinance it is necessary to allege or prove knowledge, the knowledge of an agent or of an employee shall be deemed to be the knowledge of his principal or employer if such knowledge was acquired by the agent whilst acting for and on behalf of his principal, or was acquired by the employee in the course of his employment in connection with the matter or thing in respect of which the knowledge is necessary."

53. Thus, the CWO also establishes both the liability of the Defendants for the acts performed on their behalf by their agents and the presumption that they knew of the transfer of funds to them, because the knowledge of the employee or agent is regarded as the knowledge of the employer or his principal. And I should emphasize, willful blindness could serve as knowledge even in criminal law, and the imputation of offenses to a senior officer to bear vicarious liability for acts performed by a more junior employee. Thus, the Supreme Court determined in L.Cr.A. 5502/19 **Yuri Murbayev v. State of Israel** (Nevo Database, August 25, 2019), as follows:

> "Willful blindness to the acts of the company's employees, intended to benefit the company, while stealing money from the public treasury, will not allow them to evade criminal responsibility."

54. The case law in Israel, including of the Supreme Court, recognized the likelihood of an identity between the organs and the corporation, imputing knowledge of the organs to the company itself, imputing criminal intent in criminal law. The Supreme Court held in the case of Cr.App. 5640/97 **Raphael Reich v. State of Israel**, ILR 53(2) 433 (1999), as follows:

> "…The organ managers – they are the brain and center and any act or omission of theirs may be deemed an act of the corporation. This is the identity between the organs and the corporation, by imputing the criminal intent of the organ to the corporation … the same intent which, upon its formation in the organ, may be imputed to the corporation."

55. The fact that the Court recognized and imputed the organ's knowledge to be the company's knowledge in criminal law has far-reaching significance because it is overwhelmingly clear that the burden in a criminal trial is far heavier than that required in civil law, in a monetary claim, as in the present case. Therefore, since a corporation's criminal liability has been recognized for offenses committed by the organ on its behalf, where the organ's intention and knowledge were imputed to the company, *a fortiori* this must be even more so in an "ordinary" civil claim where the "ordinary" burden of proof must be established. The rule according to which the knowledge of anyone acting on behalf of a corporation may be imputed to the corporation was determined in many judgments, including in the Modiim judgment referred to by Prof. Licht. Thus, *inter alia*, it was held in L.Civ.A. 4828/19 **Aryeh Shamam v. Adv. Zeev Desberg** (Nevo Database, December 19, 2019), as follows:

> "Knowledge may be imputed to a corporation when its organ – and including a director, senior officer or any other officer whose act may be regarded as the act of the corporation itself – knew or could have known of the facts establishing the cause of action."

**C.7. Act in excess of authorization:**

56. Chapter 8 of the Licht Declaration (sections 68-72) includes reference to section 6 of the Agency Law and negates the possibility that the Defendants *ex post facto* ratified the actions of their Personnel or Adv. Green's, within Yeshaya. Section 6 of the Agency Law prescribes in respect of an agent who acts in excess of authorization, as follows:

> "6. (a) Where a person has acted as the agent of another person without being authorized to do so or in excess of the authorization, the other person may, subject to the provisions of subsection (b), ratify the act *ex post facto*. *Ex post facto* ratification shall have the effect of prior authorization, provided that a right acquired by another person in good faith and for value before ratification shall not be impaired.
>
> (b) If at the time of the act the third party did not know that the agent acted without authorization or in excess of his authorization, he may, at his option, so long as the ratification of the act has not come to his knowledge, regard the agent as a party to the act or withdraw from the act and claim damages from the agent." (Agency Law, 5755-1965).

57. The provisions of the Agency Law regarding acts in excess of authorization and the discussion of this issue are not relevant to the present case because there is no excess of authorization of the Defendants' agents and organs, certainly not when dealing with activity over very many years in which they transferred millions of dollars to the Defendants. It is unthinkable to accept an assertion of an excess of authorization where the principal is aware of what is going on and receives millions of dollars as a result of the agency over many years. On this matter the Defendants' conduct in real time shows there was prior authorization and certainly *ex post facto* ratification and acceptance of the acts of their agents, the organs, operating on their behalf in the Yeshaya Association.

58. Not only did the Defendants not protest to their agents, their organs operating on their behalf and/or for their benefit in the Yeshaya Association, but they encouraged them, both by receiving the funds, and by granting various degrees and honors. According to the Agency Law, *ex post facto* ratification is the same as prior authorization, and in any event the result is identical also considering the existence of other laws, such as those on unjust enrichment, reliance, etc. For example, I held in the judgment I handed down in the case of **Company Liquidation (Tel Aviv District) 2673-08 Pro Interactive Ltd. v. Yogel Marketing Mei-Tal Ltd.** (Nevo Database, July 26, 2012), as follows:

> "Whether I examine the parties' relationship under section 6 of the Agency Law, meaning *ex post facto* ratification is the same as prior authorization, or whether I examine the issue according to the law on unjust enrichment and reliance in good faith, the result is the same. … The liquidator may regard the Respondent and Boroda as jointly and severally liable… ."

59. According to the law in Israel, the substance is the essence and not the definition. Matters are examined according to principles of good faith and the law on unjust enrichment, and not literally, but practically and in principle. In the present case, the fact that the Defendants authorized, the activity of their Personnel in the Yeshaya Association, while benefiting from the funds distributed by Yeshaya to themselves and for fulfilment of their requirements and accepting it with gratitude, establishes an agency relationship between the parties and ratifies the agents' actions. The Defendants cannot distance themselves from their Personnel and Adv. Green, who acted in their behalf and for their benefit, nor from the Yeshaya Association in which they acted. The Court held in Civ.A. 4371/12 **CPA Ilan Segev v. Shafir Industrial Buildings (2002) Ltd.** (Nevo Database, September 17, 2014), on the matter of an agent exceeding the authorization given to him that "the application of the agency laws does not negate personal liability under other sets of laws."

60. According to the ruling, even when there is an excess of authorization, the corporation may still be liable under other laws (for example, the Unjust Enrichment Law, and so forth). The Defendants not only did not disassociate themselves from the acts of their agents, but regarding some of them, even encouraged them and allowed them to continue for many years.

**D.    The Defects in Prof. Licht's Affidavit:**

61.    First, Prof. Licht conflates criminal and civil matters in relation to corporations, their vicarious liability, the knowledge imputed to them and so forth. It is a commonplace and well-known rule in Israeli law, and probably in most of the world, that because criminal law deals with the law of persons and civil law with monetary laws, in criminal matters the burden of proving the components of the action is "heavier". This is true when it comes to the heavier burden of evidence at the time of a criminal indictment compared with an "ordinary" civil claim. And likewise true when it comes to the requirement that the language of the criminal law be precise and clear and absolutely defines the details of the offense in question, etc.

62.    Therefore, when Prof. Licht presents tests and norms determined in relation to the liability of a corporation in criminal law (the "organ theory") and attempts to apply these norms to the present case, of a civil monetary claim for restitution, and writes in his declaration that these criminal norms are not satisfied in this case, with all due respect, he is mistaken twice: **First mistake** – the norms are satisfied in this case. **Second mistake** – even if these norms had not been satisfied, this would not have derogated from the corporation's vicarious liability. This is because even if a conviction is not possible according to these norms in criminal law, this does not preclude imputing knowledge and imposing liability in a civil claim under corporate law, "ordinary" vicarious liability, trusts law, unjust enrichment, liability in torts, etc.

63.    I should emphasize and clarify that this **does not work backwards**. In other words, as I stated in this declaration, I present the norms in the criminal law to hold a corporation criminally liable and prove that the tests and rules set forth in case law apply in this case, which means that this is *a fortiori*. Meaning, if the terms of the test with a higher standard of the criminal law are satisfied in this case, then they are satisfied all-the-more under the lower standard of a civil claim, required for the Trustee's complaint.

64.    Even if there were any merit to the specific interpretation by Prof. Licht for the present case, the attempt to combine all that is stated in Licht's Declaration into a single frame and a single interpretation, based on a single legal doctrine (the organ theory) is unrealistic and incorrectly applied. In Chapter 4 of his declaration, Prof. Licht presents the "legal questions" he was asked, whereas in section 15.b. of his declaration, Prof. Licht argues that the answer to all the above questions is no. With all due respect, there is no basis for this. In my opinion based on full and holistic view of the entire corpus of relevant Israeli laws, which I reviewed herein, the answer to the questions presented to Prof. Licht is a definitive "yes."

**D.1. Addressing Prof. Licht's reference to the Modiim judgment:**

65.    The Licht Declaration includes extensive reference to the ruling in Modiim. This is a ruling which essentially has already been amended by the Companies Law, which was enacted and amended years after the judgment was handed down (*inter alia* by section 46 of the Companies Law quoted by me above). In essence, as may be seen, the Modiim judgment is concerned with a traffic offense committed by a driver on behalf of a company in a vehicle registered in the company's name and photographed by a traffic camera.

66.    It is obvious that the tests prescribed with respect to the criminal liability of a corporation for a traffic violation committed by an organ on its behalf is not relevant to the liability of corporations for the return of funds amounting to millions of dollars transferred to them. A traffic violation (and a relatively minor one) which carries a fine (in a relatively minor amount) is not comparable to committing civil wrongs or unjust enrichment in enormous amounts. It is patently clear that this comparison is not relevant here.

67. In any event, as I explained above, the tests and conditions presented in the Modiim ruling are satisfied in this case and lead to the conclusion that the Defendants should be imputed with the knowledge of those responsible for the acts committed for them by their organs and/or agents in the Yeshaya Association. Beyond this, the customary practice in the courts is to recognize the liability of a company for offenses committed by an organ and/or agent on its behalf, particularly if s/he performed the transfers for the benefit of the company (see the case law I quoted above), and this was also eventually determined in the Modiim judgment itself.

68. Furthermore, in the Modiim ruling itself it was held that the organ theory does not derogate from the "ordinary" vicarious liability which applies to corporations (and to the public), and that it is intended, *inter alia*, to impute the mental element required for the purpose of convicting a corporation of a criminal offense perpetrated by an organ on its behalf, so that the mental element and the knowledge of the organ are imputed to the corporation. And the court determined:

> "To wit: the organ theory was not intended to impose on the corporation liability for the liability of the organs. For this purpose, there is the doctrine of vicarious liability. The organ theory assumes that there is a legal norm applicable to the corporation. According to which, certain results arise (whether concerning imposition of liability or an exemption or defense from liability, or on any other matter), if human features have crystallized in the corporation, such as criminal intent (awareness, intention), an active act or such like. The organ theory causes a situation whereby the corporation will be able to manifest these human features. The corporation therefore may be liable (civilly, criminally or otherwise) even if the organ itself is not liable … In another sense, and from the standpoint of the legal system, absolute personal criminal liability is more "absolute" because with vicarious liability, frequently, the offense committed by the agent or the employee is an offense requiring *mens rea*, and this was satisfied in the one directly responsible (see Cr. App. 378/78 [7] at page 443; Motion 95/80 [6] at page 664). Hence, the liability of the corporation by means of the organ theory is not a branch of strict liability."

69. The Supreme Court's ruling is therefore clear. A corporation has vicarious liability for the acts of those persons acting on its behalf, and has also liability in tort for acts it caused. The test for this is mainly a factual one (who committed the act or caused the damage) and the mental element and/or the intention are not of any significance, as they are not necessary and irrelevant on these matters. In the case of criminal law, in an offense where the mental element is required, it is possible by means of the organ theory to impute to the corporation the knowledge, and hence the mental element required. In the Modiim ruling, the company was ultimately convicted of the traffic offense dealt with in the judgment.

70. In my opinion, in the present case, even the conditions and tests at the higher standard required for criminal liability are satisfied according to the aforesaid organ theory. Here, we are dealing with the receipt of considerable amounts of donations. We are also dealing with an association which made advance undertakings to expend funds totaling millions of dollars, without these amounts being in its coffers. It is therefore clear that had it not been for the involvement of the Defendants' organs and/or agents in the transfer of funds and their knowledge of their source, none of Yeshaya's members would have dared to sign such an undertaking and the Defendants themselves would not have agreed to rely on it. As was found in the Modiim ruling, corporations are, at the end of the day, operated by humans, and it is clear the humans in this case knew and acted for the benefit of the Defendants.

71. In any event, in the present case, as I mentioned, the entire discussion about the aforesaid criminal law and the organ theory are far beyond what is necessary, because we are not concerned with criminal law but with civil law, in which the burden of evidence and the burden of proof are far lower. In this context of the Modiim judgment, I found the comments of the court in Miscellaneous Motions (Jerusalem Magistrates) 3811/02 **Yedid and Eyal Trading Ltd. v. Israel Police Beit Shemesh** (Nevo Database, June 2, 2002) to be most pertinent, and summarizing the law on this matter, as follows:

> "The question is who an organ of the company is for this purpose. In the Modiim ruling this question was left for further review because the company did not attend the trial and it was regarded as personally liable. The test for a person being an organ of a company is an alternative test – organizational and functional. Organizational – according to the position of the person in the company (shareholder, director) and functional – whether it is possible to impute his deeds to the company. This test was

-15-

recently prescribed in section 46 of the new Companies Law, but it was acceptable previously in the case law … 'With respect to driving a car, according to the test stated in section 23, it seems that it is possible, according to the functional test, to impute the act of the driver to the company and there is no need for the driver of the vehicle to be a director or shareholder of the company. As Prof. Procaccia mentioned above, an offense of the kind being discussed will generally be performed by a "small fry," in other words, by drivers. Imposing criminal liability on a company for its acts will lead to its managers being concerned about giving appropriate instructions, so that the provisions of the law will be enforced in a better manner. However, even if my conclusion is not accepted, as I shall set forth below, the company will be liable in this case under vicarious liability. … In the case before us, a driver who is an employee of the company was caught and he committed the offense during a work journey in the company's service.'… 'the type of offense concerned is the type of offense wherein vicarious liability must be imputed to the company'… In the case before us, imposing vicarious liability on the corporation will be definitely in the best interest of the public."

72.    From my many years of experience as a judge in the District Court in Israel, according to the current law in Israel, the Defendants should be imputed with the conduct and knowledge of their Personnel, as well as those of Adv. Green.

**D.2.  Comment on Prof. Licht's reference to the Melisron ruling:**

73.    Prof. Licht relies in his declaration on the Supreme Court judgment in Melisron. In Melisron, the Supreme Court expressly held that the tests concerning a person being an organ for a corporation are based on common sense and are not a "closed list" such that it can change according to the structure of the organization, the nature of activity and the method of distribution of powers and authorities, as well as in view of legal policy considerations. My above comments about the Modiim ruling apply even more so to this matter. Here too, it concerns the higher standard that is not required in the present case, particularly in all matters relating to the Melisron ruling which deals with violations of securities laws.

74.    In the Melisron case, the Supreme Court essentially held in the judgment that for a corporation to renounce its responsibility for an act performed by an organ on its behalf, it must prove that the act was to the detriment of the corporation. Reading the entire actual Court judgment in the Melisron case shows that the rule determined in relation to the (more serious) criminal law of a corporation is presented therein as follows:

> "As for the criminal aspect, relevant to the present case, even though it is mainly a creation of the case law … as has been determined, nothing in this section can narrow the application of the organ theory as developed in the case law, but it can only give it more explicit entrenchment in primary legislation. 115. At the basis of the organ theory is obviously the organ, that senior long arm of the company. Customarily, there are two alternative tests in the case law and literature to examine the question whether X is to be considered an organ in Y corporation. The first test, is the organizational test …  The second test, is the functional test …  The two tests, which derive from commonsense, do not define the list of office holders that may be organs within a closed list, and for good reason: 'Indeed, out of necessity, the expression organs and other senior officers of a corporation is somewhat amorphous, and does not delineate an accurate and standard framework for discussion. However, its logic is clear. It is intended to encompass all the deciding figures and the top-ranking institutions of a legal entity, responsible for shaping its policy and executing most of its activities internally and externally, without reference to the titles of the functions or positions. The list of functions and positions is not standard for all corporations, and in part it changes face according to the structure of the organization, the nature of the activities and the method of distribution of powers and authorities of the entity under examination. Considerations of legal policy have also not infrequently been part of the determination of the framework, and naturally will have greater weight in borderline cases'… The case law clearly indicated that we are dealing here with alternative tests…"

75.    Furthermore, after the Supreme Court discussed extensively the questions and tests it defined, it held that essentially legal policy considerations in criminal law are those which form the basis of the question whether to criminally convict or not to convict a corporation, where the monetary amount in question is a significant consideration in respect of determining such public policy. Just as in the

Modiim case, in the Melisron case, legal policy considerations in the criminal arena were also what tilted the balance, and in both cases the criminal conviction remained in effect. Also in the present case, according to legal and public policy considerations in Israel at the present time, the Defendants should be imputed with the knowledge and conduct of their Personnel as well as those of Adv. Green.

76. Furthermore, when the Defendants are public (or hybrid) entities they are under an enhanced duty of good faith and fair dealing, and therefore legal policy considerations lead to the conclusion that where a transfer of funds has taken place in such considerable sums that require precautions and scrutiny, the knowledge will be imputed irrespective of the arguments of the recipient of the funds with regard to his knowledge and/or good faith. The trend in Israeli law is that this is the appropriate manner of conduct according to commonsense and fair dealing, and no less than this, due to the strong policy of the war on the black market, money laundering, etc.

### D.3. Prof. Licht's reference to the comments of Feller et al.:

77. In section 35 (page 15 of his declaration), Prof. Licht refers to the comments of the scholar Prof. Feller (and later to the comments of Prof. Mordechai Kremnitzer). In the Modiim ruling, the Court quotes the comments of Prof. Feller and presents his theory, as well as sets forth the many arguments against Prof. Feller's position, as follows:

> "… See S.Z. Feller, Elements of Criminal Law (Harry Sacker Institute for Legislative Research and Comparative Law, Volume 1, 5744, 105 … Prof. Feller therefore opines that in principle, no personal criminal liability should be imposed on a corporation (with the exception of criminal strict liability offenses not requiring criminal intent), and the liability of the organs (on the criminal level) and the liquidation of a corporation (on the civil level) is sufficient … Against this approach it may be said that the social objectives, which society wishes to achieve by means of the criminal law, are consistent with recognition of the personal criminal liability of the corporation. In a modern society, the corporation is a main basis for human activity. There are countries in which there are more corporations than people. Where within the framework of the corporation, conduct takes place which is perceived by society as criminal – tax evasion, violations of planning and construction laws, conducting activity contrary to public morality (soliciting for prostitution) and such like – the values which society wishes to protect are promoted by the imposition of personal criminal liability on the corporation… Indeed, the starting point of Israeli law is that a corporation bears personal criminal liability. In principle, any criminal offense, where the interests protected by it are likely to be harmed by the corporation, imposes personal criminal liability on the corporation."

78. Hence, the Court did not accept Prof. Feller's position, and as stated, in the judgments on the matter, on the criminal level, it was determined that in practice the test is the result of such legal and public policy. A policy which is also present in this case "so that the wrongdoer will not benefit from his wrongdoing." The above comments are also correct in respect to Prof. Licht's reference to the comments of the scholars Kremnitzer and Ganaim, which was also discussed in the judgment of the Supreme Court in the Melisron case, which refer to the comments of Kremnitzer and Ganaim, *inter alia*, as follows:

> "The first test, is the organizational test - … see … M. Kremnitzer and H. Ganaim "The Criminal Liability of Corporations," Shamgar book – articles – Part 2, 87 (5763-2003) (hereinafter, "Kremnitzer and Ganaim") … The second test, is the functional test … See also … Kremnitzer and Ganaim, pages 87-88).
>
> 116. The two tests, which derive from commonsense, do not define the list of office holders that may be organs within a closed list, and for good reason: … 'The list of functions and positions is not standard for all corporations, and in part it changes face according to the structure of the organization, the nature of the activities and the method of distribution of powers and authorities of the entity under examination. Considerations of legal policy have also not infrequently been part of the determination of the framework, and naturally will have greater weight in borderline cases', … See also Kremnitzer and Ganaim, at page 89) … A review of the case law of this court shows that to date no use has been made of this test to rule out the application of the organ theory entirely and the discussion, if any, is of a purely theoretical nature (the Modiim case, at page 385); for example, even with the offense of causing death by negligence, which it may be argued, *prima facie*, has a "human" nature, it has been found that a corporation may be found criminally liable in respect of a breach of the Safety at Work Ordinance … I should add to this that as Kremnitzer

and Ganaim have noted, it is highly doubtful whether it is possible to make a categorical determination and each case should be examined on its merits (Kremnitzer and Ganaim, at pages 94-95) … As Kremnitzer and Ganaim state, a main justification for imposing liability on a corporation for the acts of an individual derives from the fact the individual acted to benefit the corporation, and therefore, when he acted against the **corporation, it will not be justified to obligate the corporation for his acts (Kremnitzer and Ganaim, at pages 98-99)"**

79. The Court itself, therefore, also determines that in practice it will examine each case on its merits, where legal and public policy considerations may significantly tilt the balance in the direction of making the corporation criminally liable for the acts performed by an organ. In any event, I see no reason to expand on Prof. Licht's reference to the legal scholars, since this is a matter which was discussed at length and decided in the case law, and the theories and concepts raised by scholars, certainly those that were known at the time of handing down the aforesaid judgments, are, with all due respect, not the law in Israel. The Supreme Court of Israel has determined that these are merely theoretical discussions, and that in practice in Israel, even with offenses that are *prima facie* human, knowledge may be imputed to a corporation and it may be found criminally liable, such as causing death by negligence and so forth, as held for example in Cri. C. (Tel Aviv, Magistrate) 3935-02 **Tel Aviv District Attorney – Criminal v. Israel Electric Company Ltd.** (Nevo Database, December 20, 2005).

80. In practice this means that it is hard to see the forest for the trees. With all the tests, theories, and assumptions it could be possible to lose track of what is important and the basic rules of justice. And the Court has held that this has not been the case, and time after time the Court's eyes have been wide open and it has looked at the result of its case law, beyond the tests themselves, so that it is consistent with the desirable criminal, public and legal liability policy. And in the present case, the desirable policy is that the knowledge and conduct of the Defendants' Personnel as well as Adv. Green's, should be imputed to the Defendants, which are public entities who received to their possession enormous amounts of funds which were obtained as part of a fraud.

**D.4. Prof. Licht erred in his determination that a single member of a board of directors cannot be an organ of the company:**

81. The tests, as presented above, are whether such organ acted for the benefit of the corporation, and the like, tests of legal and public policy considerations as specified above. All the above tests are satisfied in the present case, and it is clear that the organs of the Defendants acted within the Yeshaya Association to benefit the Defendants and to transfer enormous amounts of funds to them. The current judicial, legal, public, and economic policies in Israel will obligate the imputation of knowledge and conduct to the Defendants.

82. In sections 38 and henceforth of his declaration, Prof. Licht writes things which, with all due respect, are inconsistent with the law in Israel. For example, his comments in section 41 whereby in the absence of specific authorization, a single member of a corporation's managing board will not be deemed an organ of the corporation, his knowledge will not be deemed the knowledge of the corporation and so forth. With all due respect, this is completely incorrect.

83. As quoted above, from the rulings which Prof. Licht himself referred to, the ruling of the Supreme Court in the Modiim case and in the Melisron case, the companies were convicted for acts they did not authorize the organ who acted on their behalf to do. The company Modiim did not authorize the person who drove the vehicle on its behalf to commit a traffic offense and the Melisron company did not authorize its organs to commit securities laws violations. Even though both Modiim and Melisron did not give any authorization to their organs from the outset and did not ratify their organs' acts retroactively in any way, the Court nonetheless, convicted them under criminal law and imputed their organs' actions and knowledge to them, although those organs were not board members.

84. Similarly, to the formal position title pursuant to the organ theory, the matter of the authorization is also of no real significance. Otherwise, any corporation could avoid liability by saying "I did not authorize the performance of the act." There is no basis for these comments, and they do not correctly describe the current Israeli law. Also, the provisions of section 42 and henceforth of Licht's Decl., with all due respect, are meaningless. Whether the organ in question exceeded his authorization is of no real importance. In the judgments presented above, and even in the judgments presented by Prof. Licht in his declaration, there is no case in which a company gave authorization to an organ on its behalf to commit a criminal offense. In practice, all the organs in the judgments acted in excess of authority, and this did not change in any manner the criminal conviction of these corporations due to the acts of their organs which were imputed to those corporations.

**D.5. Addressing Prof. Licht's reference to the Gottesdiener ruling:**

85. In section 43 of the Licht Declaration, he refers to the Supreme Court ruling in Cr. App. 7621/14 **Aharon Gottesdiener v. State of Israel** (Nevo Database, March 1, 2017) (hereinafter: "**Gottesdiener**"). With all due respect, this is a ruling which is completely irrelevant to the present issue. It involved a fraud in which government employees presented academic and other certificates to obtain wages, while the institutions which granted the certificates failed to meet the required standard. The Court held that the Defendants' contention that only they were prosecuted and not senior employees in the civil service is incorrect and does not provide an equitable defense. This is because knowledge cannot be imputed to the State about unlawful acts that were committed. This is unrelated to our present case.

86. In this matter it was an argument in defense of the criminal defendants for the purpose of mitigating their own punishment with respect to the State which had employed them, and which did not prosecute other employees, meaning <u>the argument of those claimed to be organs, and not the defense argument of a corporation</u>. I also note that this case as well is a comparison between a criminal matter and a civil matter in the present case, and despite this, the Court in Gottesdiener convicted those involved in the affair.

87. The fact that Prof. Licht saw fit to rest the theory presented in his declaration on the ruling in Gottesdiener serves as a double-edged sword proving that he was unable to present relevant case law of the Court supporting his viewpoint. My above comments are also true with respect to the other rulings mentioned later on page 19 of Prof. Licht's declaration (including those mentioned there, in footnote number 33). However, since Prof. Licht himself did not provide any details about them, I do not see reason for me to do so and present why they are irrelevant.

**D.6. Addressing Prof. Licht's reference to the Boublil ruling:**

88. In sections 46-50 of the Licht Declaration (page 19), he seeks to rely on statements in the ruling of the District Court, in Crim. C. (Jerusalem, District) 22847-12-10 **State of Israel v. Nissim Boublil** (Nevo Database, September 13, 2018) (hereinafter: "**Boublil**"). First, this is a District Court ruling, which offers no novelty or changes compared to the rules that were determined extensively in the case law of the Supreme Court and cited therein, both in relation to the organ theory and in relation to the question of who an organ is. Therefore, with all due respect, there is no real reason to refer to the Boublil ruling, which deals with matters that were decided in a higher-instance court. Second, the Boublil ruling also involves a criminal proceeding and not a civil proceeding, where the standard is lower, and again, also in this judgment, the court criminally convicted the defendants, both the organs and the corporations.

89. In the Boublil ruling, the court decided not to impute the deeds of one of the criminal defendants there, by the name of Foldie Peretz (hereinafter: "**Peretz**"), to an organization named the Israel Builders' Association (hereinafter: the "**IBA**"), in which Peretz served as one of its 22 presidium members. Prof. Licht claims that t the decision not to impute Perez's deeds to the IBA establishes that a single

member of a corporation's management, which according to its governing documents is not authorized to bind the corporation alone, is not an organ of that corporation. This determination by Prof. Licht is contrary to the law and disregards the specific circumstances of that case (where, in any event, the Association was convicted pursuant to the deeds of another organ) and how different it is than our case. First, Peretz's deeds (boycotting a tender rising to restrictive trade practice) did not and were not intended to benefit the IBA, but rather himself (to the contrary, the IBA received an opinion that his deeds may be unlawful). Second, the IBA did not authorize in advance nor ratify retroactively (to the contrary, the court was convinced that the IBA held a full hearing regarding the proposed move suggested by Peretz and decided not to approve or support it (section 253 the Boublil ruling)). This means that in Peretz's case as discussed in the Boublil ruling, two of the functional test's conditions were **not** satisfied – Peretz did perform acts that benefited the corporation and the corporation did not approve them in advance nor ratify them retroactively, not expressly or by conduct. Under these circumstances it is understandable why the District Court decided not to view Peretz as on organ of the IBA for that indictment in the Boublil case.

90.  It is completely different from the present case in which senior Personnel of the Defendants as well as Adv. Green acted for years and years within the Yeshaya Association to transfer funds in enormous amounts to the Defendants, while the Defendants received these amounts with gratitude. In addition, and as I already noted, this case is a civil matter which does not require the high level of certainty as in a criminal proceeding and that which the Plaintiff seeks to impute on the Defendants is the knowledge of their organs and/or agents concerning the source of the funds Yeshaya transferred to the Defendants and not necessarily any specific act.

91.  I emphasize - the Defendants' Personnel did not sit in Yeshaya to approve articles/academic degrees or the promotion of Personnel, nor did they write research papers within Yeshaya, but rather they acted tirelessly to approve and transfer significant sums of money to the Defendants.

92.  Prof. Licht quotes sections 243-247, 249 and 260 of the ruling, whereas in my opinion, the relevant sections in which the District Court repeated the well-known rules, are sections 239-242 in which the Court summarizes the law and rules on the issue of imposing criminal liability on a corporation for an offense committed by an organ, exactly like those I reviewed in this declaration, as follows:

> "239. ... According to section 23(a)(2) of the Law, a corporation will bear criminal liability for an offense requiring proof of criminal intent or negligence if 'in the specific circumstances and in light of the person's function, power and responsibility in management of the affairs of the corporation, the act in which the offense was committed, and his criminal intent or negligence, should be regarded as the act, intent or negligence of the corporation.'
>
> 240. . ... However, even an officer who is not senior may be considered an organ of the corporation, if, according to the corporation's documents or according to any other normative source, their acts and intention are regarded as the act of the corporation itself' ... Two alternative tests were determined on the basis of which the issue of whether a specific person may be regarded as an organ of the corporation may be decided – one test is an organizational test ... and the other test is a functional test ...
>
> 241. ... This final question is a question of legal policy, which over the years several auxiliary tests have been formulated intended to help answer this question – the courts are required to examine whether the statute did not intend to remove from its ambit the option of imposing liability on a corporation, whether the act of the organ was carried out in the fulfillment of his function and also whether the act was for the benefit of the corporation, or at least not directed against it. ...
>
> 242. ...The case law has determined that the range of situations to be included within the expression 'in the fulfillment of his function' should be interpreted broadly. (*Id.*, in paragraph 120)."

**D.7. Prof. Licht's arguments on piercing the corporate veil:**

93.  At the end of his declaration (sections 77-80), Prof. Licht contends that the piercing of the corporate veil should not be permitted between a company and a subsidiary without the corporate structure having been abused to harm creditors. Prof. Licht is mistaken in this as well.

94.  I assume that Prof. Licht's intention is the fact that some of the Defendants acted by means of companies or entities under their control. This is a customary practice in Israel, where public entities and non-profit organizations like the Defendants are performing acts of a clearly commercial nature through companies or entities under their control.

95.  Contrary to what was stated in the Licht Declaration, in the present case, in which funds were transferred to the Defendants, or to companies under their control, by organs and agents of the Defendants, where the final destination for the money to be transferred was determined by them, there is no real significance to the separate legal personality of the company from that of the Defendant which owns it. There is no difference between a transfer of funds to a university and a transfer of funds to a company under its full ownership and control.

96.  In this case **it would be most reasonable to assume that the Court will pierce the corporate veil**. In this case, all the prescribed alternatives set forth in Section 6 of the Companies Law (see section 77 of Licht's Decl.) apply, and any of them is sufficient to pierce the corporate veil from the companies under the control of the main Defendants (the Universities) and to impute them to the main Defendants themselves. The main Defendants, by means of their organs and agents in the Yeshaya Association that withdrew its funds from BLMIS, decided on the transfer of funds as they saw fit, whether to themselves or the companies under their control. The corporate veil in this instance is of no significance, and, it is clear that piercing the corporate veil is "just and correct." I have already expounded at length about the presumption of the Defendants' knowledge, constructive knowledge, etc., the enhanced good faith required of them considering their being public entities, etc., and this all leads to the conclusion that **the Defendants have no real defense against piercing the corporate veil as aforesaid.**

97.  In this case, there is not even a need to resort to the presumption of knowledge determined in section 6(a)(2) of the Companies Law, whereby there is a presumption of knowledge where there is "suspicion over the nature of the conduct." However, above necessity, this presumption of knowledge is also satisfied in this case, and it is presumed that the Defendants knew the source of the funds Yeshaya transferred to them. In a judgment recently handed down by the Supreme Court, in Civ.A. 8416/19 **Adv. Shlomo Ness and C.P.A. Eli Shepler, Liquidators of Agrexco Agricultural Production Company Ltd. v. State of Israel** (Nevo Database, December 22, 2021) it was held that the Companies Law should be interpreted broadly in relation to piercing the corporate veil and the considerations and cases in which the corporate veil should be pierced, and not just in the case of insolvency and liquidation of companies, and that piercing the corporate veil is a "large-scale" measure, as follows:

> "…The purpose of piercing the corporate veil is to prevent abuse of the separate legal personality of the company, and to protect external creditors against improper conduct by the company and its shareholders … In practice, there are a variety of considerations that may be envisaged for petitioning to pierce the corporate veil of a company and expose the shareholders hiding behind the corporate veil, even without the company entering liquidation … Piercing the corporate veil therefore constitutes an important foundation of company law and is not limited to circumstances of insolvency … The practical consideration in initiating the process of piercing the corporate veil, only where the corporation has difficulty in discharging its debts, does not dictate a narrow interpretation of the statutory norm. It certainly does not restrict it. To the contrary, in the vast majority of cases, where the amount of debts is too low to justify liquidation proceedings of the company, the piercing of the corporate veil will be chosen as an alternative more practical step … Piercing the veil therefore serves as a tool to expand the ambit of the conflict, and create a direct conflict between the creditors and the

-21-

shareholders. The application of the veil piercing is broad and covers many areas of law
… This is therefore a far-reaching tool, with its own unique character."

98.   Indeed, this is a Supreme Court ruling of recent times, however there is no change of direction. It has reached similar findings in the past. For example, in L.C.A. 510/00 **H. Reshef Contractors (1990) Ltd. v. Ilana Inbar**, ILR 54(2) 712 (2000), the Court pierced the corporate veil between related companies, as follows:

> "…Piercing the veil is recognized and possible on any scale, all according to the nature of the matter, both to prevent the shareholders of the company or the company as a corporation, from taking advantage of the separation between them to achieve an improper purpose, involving in any event harm to another person, discrimination against such person or the infliction of damage to such person, and for 'doing justice, and for integrity and protection of the best interest of the public' "… There should be no intervention in a conclusion that the requesting company and the debtor company are related companies where, in the specific circumstances, it is appropriate to pierce the veil and regard them as one economic-business entity."

**E.   Summary and Conclusions:**

99.   Given my conclusions with respect to the above legal issues and matters, and weighing the relevant information presented before me, as stated above in my declaration, the necessary conclusion is that under Israeli law in its entirety – both under corporate law and under other applicable laws – the knowledge and conduct of the Defendants' Personnel, as well as Adv. Green's, who were involved in approving the transfer of funds from the United States via the Yeshaya Association to the Defendants, is also and necessarily the knowledge and conduct of the Defendants.

100.  Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing statements are true and correct.


[signature]

_____
**Varda Alshech**
**Deputy District Court President (retired)**


June 12, 2022

בית המשפט של ארצות הברית לפשיטות רגל
המחוז הדרומי של ניו יורק

| | |
|---|---|
| תאגיד הגנה על משקיעים בניירות ערך | |
| תובע-מבקש, | הליך אדוורסרי מספר 08-01789 (CGM) |
| נגד | פירוק לפי החוק להגנה על משקיעים בניירות ערך |
| ברנרד ל. מיידוף השקעות בניירות ערך חברה בחבות מוגבלת, | (מאוחד מהותית) |
| נתבע. | |
| בעניין : | |
| ברנרד ל. מיידוף | |
| חייב. | |
| אירווינג ה. פיקארד, נאמן לפירוק של ברנרד ל. מיידוף השקעות בניירות חברה בחבות מוגבלת, | |
| תובע, | |
| נגד | הליך אדוורסרי מספר 21-01190 (CGM) |
| האוניברסיטה העברית בירושלים, יישום חברה למחקר ופיתוח של האוניברסיטה העברית בירושלים בע"מ, אוניברסיטת בן גוריון בנגב, ב.ג. נגב טכנולוגיות ויישומים בע"מ, מרון ויצמן למדע, ו- אוניברסיטת בר אילן, | |
| נתבעים. | |

# הצהרה של השופטת (בדימוס) ורדה אלשיך

אני, ורדה אלשיך, מצהירה בזאת, בכפוף לעונשים בגין עדות שקר שבחוקי ארצות הברית של אמריקה, כדלקמן :

## א. רקע והקדמה :

1.  שמי ורדה אלשיך ואני שופטת בדימוס של בית המשפט המחוזי בתל אביב, ישראל. בשנת 1969 הוסמכתי כעורכת דין בישראל. בשנת 1978 מוניתי לשיפוט בבית המשפט השלום בתל אביב. בשנת 1987 קודמתי לשמש כרשמת בית המשפט המחוזי בתל אביב. בשנת 1990 מוניתי לכהן כשופטת בית המשפט המחוזי בתל אביב ובשנת 2006 מוניתי כסגנית נשיא בית המשפט המחוזי בתל אביב, תפקיד בו כיהנתי עד לפרישתי מכס השיפוט בשנת 2013.

2.  משנת 1987 עד שנת 1999 שפטתי בתיקים בעיקר בתחום האזרחי – מסחרי. בשנת 1999 מוניתי לשמש כמנהלת מחלקת הפירוקים, כינוסים, הבראות ופשיטות רגל בית המשפט. במסגרת תפקידי שפטתי בתיקי הפירוקים והסדרי הנושים המהגדולים בישראל בשנים אלו.

3.  מאז פרישתי מכס השיפוט, אני משמשת כבוררת וומגשרת ומכהנת כדירקטורית במספר חברות ציבוריות גדולות בישראל. קורות חיי מצורפים **כנספח א'**.

4. התובע בתביעת פיקארד נ' האוניברסיטה העברית בירושלים ואח' (הליך אדוורסרי מספר 21-01190), הנדונה בפני כבוד השופטת מוריס בבית המשפט של ארצות הברית לפשיטות רגל במחוז הדרומי של ניו יורק (להלן, בהתאמה: **"התובע"** או **"הנאמן"** ו- **"ההליך"**) שכר את שירותי, על מנת לנתח וליתן את עמדתי המקצועית ביחס להצהרות שהוגשו מטעם הנתבעים בהליך זה (להלן: **"הנתבעים"** או **"האוניברסיטאות"**), אודות התנהלותם של עובדים, אנשי סגל ונציגים אחרים שלהם (להלן: **"אנשי הסגל"**) ביחס לקבלת כספים מעמותות ישעיה הורוויץ (להלן: **"העמותה"** או **"ישעיה"**) ובפרט ביחס להצהרתו של פרופ' עמיר ליכט (להלן בהתאמה: **"הצהרת ליכט"** ו- **"פרופ' ליכט"**).

## א.1. <u>המסמכים שסקרתי</u>:

5. הרקע העובדתי עליו התבססתי הוא זה המופיע בהצהרת ליכט בפרק 3 (סעיפים 9 – 13). בנוסף קראתי את החומר שהעבירו לי עורכי הדין של התובע שכלל את התביעה שהגיש הנאמן, את הבקשה לסילוק על הסף ואת ההצהרות שהוגשו מטעם הנתבעים, לרבות הצהרת ליכט ובחנתי את ההלכות והדינים הרלוונטיים בישראל. עוד עיינתי במסמכים שונים ובהם כתבי הטענות שהגישו הצדדים להליך זה, במסגרת ההליך המתנהל ביניהם בבהמ"ש בישראל, ובחלק מהנספחים להם, וכן בחקיקה, פסיקה ומאמרים רלוונטים לדין הישראלי.

## א.2. <u>הצהרת ליכט - נקודת מבט צרה מידי על דין המחייב גישה הוליסטית</u>

6. הצהרת ליכט סוקרת את הדינים בנוגע למקרה דנן בראי דיני התאגידים בישראל באספקט צר מאוד, ומגיעה לקביעות לגבי המקרה דנן כאילו קיימים דיני התאגידים בחלל ריק ובלעדיהם אין, קרי הם תלושים ממערכת משפטית ועומדים בפני עצמם. לדעתי פרופ' ליכט טועה לגבי דיני התאגידים המוצגים בהצהרתו וייישומם, בין היתר בכך שהוא בוחר בהגדרה הצרה של של "אורגן" המשמשת במשפט הישראלי הפלילי מבלי להתייחס כמעט למשפט האזרחי. הוא טועה בהתעלמו לחלוטין מן ההבדלים שבין הליכים פליליים עליהם הוא מתבסס לבין הליכים אזרחיים כהליך דנן. טעות חמורה יותר הינה הסתכלות על הדברים מתוך ראייה צרה כנ"ל, ולא מתוך ראייה כוללת של הדין בכללותו תוך שהוא משתלב במארג שלם הכולל גם את דיני התאגידים. יישום הוליסטי של דיני התאגידים הרלוונטיים במקרה דנן, מוביל למסקנות שונות לחלוטין מאלו המוצגות בהצהרת ליכט. בהתבסס על ניסיוני כשופטת ומכיוון שדיני התאגידים הישראלים מבוססים על הדין האמריקאי, אינני סבורה שיישום של דין הישראלי ביחס לשאלות של יחוס אחריות שילוחית וידיעה של אנשי הסגל של הנתבעים לנתבעים עצמם יביא לתוצאה שונה מזו שתתקבל לפי הדין האמריקאי.

7. טענת הנתבעים שהם לא "אישרו במפורש" את הפעילות של אנשי הסגל שלהם כמו גם של עו"ד גרין, היא חסרת משמעות. קבלת טענה שכזו תאפשר לכל תאגיד לחמוק מאחריות למעשיו נציגיו בטענה שלא אישר אותם במפורש. כפי שיוסבר בפירוט להלן, לא היה צורך באישור מפורש של הנתבעים, מכיוון שבמשך שנים הם אישרו אותה בכל פעם שקיבלו את הכספים שישעיה חילקה להם ונהנו מהם.

8. כפי שאפרט להלן בהרחבה, לדעתי המקצועית ומניסיוני, על פי הדין הישראלי בכללותו – הן מכוח דיני התאגידים והן גם מכוח של דינים אחרים – ידיעות והתנהלותם של אנשי הסגל של הנתבעים, כמו גם של עו"ד גרין, שהיו מעורבים בפעילותה של עמותות ישעיה, היא גם ובהכרח ידיעתם והתנהלותם של הנתבעים עצמם.

**א.3.**  **מבנה ומתודולוגיה:**

9. בפתח דברי אסקור את הבסיס לדיני התאגידים החלים בישראל. לאחר מכן אפרט את מערכות הדינים השונות
והנוספות מכוחן מיוחסים בתי המשפט בישראל לתאגיד אחריות שילוחית למי שפועלים עבורו ובכללן גם דיני
התאגידים עליהם התבסס פרופ׳ ליכט. להשלמת הדיון בנושא אסקור גם את הסוגיות של פעולה בחריגה מהרשאה
ואת האופן שבו, בניגוד לעמדת פרופ׳ ליכט, ״תורת הארגנים״ שהתפתחה בדין הישראלי מחייבת את הנתבעים
בגין מעשי נציגיהם בישעיה ולמצער, לייחס לנתבעים את הידיעה הקונסטרוקטיבית של נציגיהם. אסיים
בהתייחסות ספציפית להצהרת ליכט ולכשלים שמצאתי בה, כמו גם לנושא הרמת המסך בין חלק מהנתבעים
לחברות שבבעלותם אשר גם הן קיבלו כספים מישעיה. כפי שאפרט בהמשך, הדינים השונים החלים על היחסים
בין הנתבעים לאנשי הסגל שלהם כמו גם לעו״ד גרין, מגדירים את יחסים אלו בדרכים שונות. כך, וכפי שאראה,
על פי דיני השליחות יראו בהם <u>כשלוחים</u> של הנתבעים, ועל פי דיני התאגידים <u>כאורגנים</u> של הנתבעים. אין לראות
בכך סתירה, שכן אלו דינים משלימים שבמבקרה דן מביאים לאותה התוצאה.

10. בהצהרתי זו המונח **״דיני תאגידים״** מתייחס למכלול דברי החקיקה וההלכות המשפטיות החלות על חבר בני
אדם מאוגד, ובכלל זה חברות מסחריות אך גם למשל עמותות ותאגידים אחרים מכוח חוק. זאת, להבדיל
מהתייחסות ספציפית לחוק החברות, תשנ״ט-1999 (להלן : **״חוק החברות״**) המהווה חלק ממכלול דיני התאגידים.

11. ככל שלא מצוין אחרת, ההדגשות בציטוטים השונים המובאים בהצהרתי זו הוספו על ידי ואינם במקור.

## ב.  דיני התאגידים בישראל מבוססים על נורמות מהמשפט האנגלו-אמריקאי המודרני ועל כן אין ניגוד בין הדין הישראלי והאמריקאי:

12. הדין הישראלי בנוגע לתאגידים שואב ומזדהה עם הדין האמריקאי ומקבל על עצמו את הנורמות האמריקאיות
שהסתמכו במקורן על המשפט האנגלי.

13. פרופ׳ ליכט, במאמרו **״תכליות החברה״**, משפט ועסקים א׳ תשס״ד, 173 (2004), מתייחס לנורמות האמריקאיות
ותחולתן במשפט הישראלי. במאמרו כותב פרופ׳ ליכט כי הדין הישראלי בנוגע לתאגידים שואב ומזדהה עם הדין
האמריקאי ומקבל על עצמו את הנורמות האמריקאיות, כדלקמן :

> ״ניתן לומר בהכללה שהמסגרת הישראלי שומר על קווי המתאר העיקריים של שיטת המשפט המקובל.
> <u>בתחום דיני החברות עבר מרכז הכובד בדור האחרון מהסתמכות על המשפט האנגלי להסתמכות על</u>
> <u>המשפט האמריקאי</u>״...

14. הדין הישראלי שואב חלקים משמעותיים בו מהדין האמריקאי, הן בתחום התאגידים והן בתחומים אחרים. ראו
למשל, בע״א 2705/91 **רג׳אח סאלם אבו-ג׳חלה נ׳ חברת החשמל מזרח ירושלים בע״מ**, פ״ד מח(1) 554 (1993),
בסעיף 5, בע״פ 2103/07 **אביהו הורוביץ נ׳ מדינת ישראל** (פורסם ב׳נבו׳, 31.12.2008), בסעיף 35 וגם בע״א
18/7276 **עזבון המנוחה פלונית נ׳ מדינת ישראל המרכז הרפואי לבריאות הנפש ״מעלה הכרמל״** (פורסם ב׳נבו׳, 2.3.2021)
בסעיף 31.

15. הנה כי כן, לפי הפסיקה ולפי מלומדים שונים, לרבות פרופ׳ ליכט עצמו, דיני התאגידים בארץ שואבים השראה
ומקבלים על עצמם את הנורמות הנהוגות בארה״ב ואין בהקשר זה ובעניינינו סתירה בין הדין הישראלי לדין
האמריקאי.

16. באופן דומה, אין סתירה בין דיני השליחות הישראלים והאמריקאים הרלוונטיים לייחוס ידיעה במקרה דנן.

## ג. אחריות שילוחית וידיעה קונסטרוקטיבית של הנתבעים:

### ג.1. היחס בין דיני השליחות ודיני התאגידים – על פעולות של תאגיד באמצעות אורגן חלים מספר דינים במקביל

17. כידוע, תאגיד הינו אישיות משפטית ערטילאית, שאינו אדם. ככזה, בפועל, כל פעולותיו נעשות על ידי שלוח אנושי. גם בשרשור של חברות, בסופו של דבר יש בן אנוש שמבצע את הפעולה ו/או חודל את המחדל עבור התאגיד. אותו בן אנוש עשוי להיות נושא משרה, דירקטור, שלוח, נאמן, שומר, נציג או כל כינוי או הגדרת תפקיד אחר. סעיף 46 לחוק החברות, מגדיר כל מי שפועל עבור החברה ועל פי דין רואים את פעולתו כפעולת החבר, כ-"אורגן".

18. היות שכך, על פעולותיו של אותו אורגן ו/או שלוח עבור התאגיד חלים בעת ובעונה אחת מספר מערכות דינים, שחוק החברות הוא רק חלק מהם, ובהם ניתן למנות גם את דיני שליחות, דיני נאמנות, דיני תאגידים, דיני שומרים, דיני הניזיקין ועוד. בנוסף וכפי שאתייחס בהמשך, הנתבעים דן אינם תאגידים רגילים אלא אוניברסיטאות ציבוריות, או למצער – גופים דו מהותיים הכפופים (ובהתאם גם מכפיפים את האורגנים ו/או שלוחיו שלהם) לחובות התנהלות מן המשפט הציבורי שהינם ברמה הגינות מוגברת בהשוואה לאלו שבמשפט הפרטי.

19. אתייחס לדינים העיקריים הרלוונטיים לעניינו – דיני שליחות ודיני תאגידים. דיני התאגידים נחלקים לשניים, המישור הפלילי (שבו מיושמת לרוב תורת האורגנים) והמישור האזרחי הרלוונטי למקרה דנן. דיני שליחות ודיני תאגידים אינם דינים חלופיים אלא חלים במקביל.

20. פרופ' ליכט התייחס בקיצור לדיני השליחות בישראל (בעמוד 27 – 30 להצהרת ליכט) רק על מנת לקבוע שהדין בישראל אינו מכיר באישורור של פעולות אנשי סגל הבכירים של הנתבעים, מאחר ואנשי סגל אלו לא הציגו את עצמם בבירור כשלוחי הנתבעים. לשיטתו של פרופ' ליכט, על פי הדין בישראל כאשר פלוני אינו מתיימר להציג עצמו כשלוח לא תיתכן פעולת אישורור ולא יווצרו יחסי שליחות. זאת, כיוון שלטענתנו של פרופ' ליכט אישרור מחייב שהשלוח יציג עצמו כשלוח או כאורגן של השולח וכי השולח, לאחר שלמד על מעשי השלוח יחבר לאשרר את השליחות. (שם, בסעיף 71). נראה שעמדתו של פרופ' ליכט היא שעל השלוח להציג את עצמו בצורה אקטיבית כשלוח של השולח על מנת שהשליחות תתקיים וכי על השולח, לאחר שלמד על מעשי השלוח, לאשרר את מעשיו בצורה אקטיבית. אני סבורה שפרופ' ליכט שוגה בעניין זה. כפי שאפרט להלן, הדין הישראלי מכיר בשליחות שבהתנהגות, גם אם היא אינה גלויה ומכוונת ובאישרור השליחות בהתנהגות. הדברים נכתבו במפורש בלשון הפשוטה של החוק.

21. בישראל, פעולות שמבצע תאגיד באמצעות אורגניו ו/או שלוחיו, נכללות במקביל הן תחת דיני השליחות והן תחת דיני התאגידים. הדינים בעניינים זה הינם מצטרפים, וחלים זה בצד זה. כך פסק בית המשפט העליון בע"א 4371/12 רו"ח אילן שגב נ' שפיר מבנים תעשיות (2002) בע"מ (פורסם בנבו, 17.09.2014), בסעיף 43.

### ג.2. אחריות שילוחית של גופים ציבוריים לפעולות אורגן מטעמם – מכוח דיני השליחות:

22. כעולה מטענותיה הנאמן בכתב התביעה שהגיש בהליך זה, וכך גם מופיע בהצהרת ליכט מטעם הנתבעים, חלק מאנשי הסגל של הנתבעים - לאמור העובדים ובעלי התפקידים שעבדו אצלם, בעלי תפקידים בכירים ביותר, שימשו,

בנוסף ובמקביל, בתפקידים כאלה ואחרים בעמותות ישעיה, לרבות בוועד המנהל ו/או בוועדת הביקורת ו/או בגופים שישעיה יצרה לשם חלוקת כספים.

23. חוק השליחות תשכ"ה 1965 (להלן: **"חוק השליחות"**), קובע מספר נקודות בסיס לעניין דיני השליחות, שהרלוונטיות לענייננו הינן :

א.    שליחות יכולה להיות בנוגע לכל פעולה משפטית (חוץ מזו המחויבת להיות אישית).

ב.    שלוחו של אדם כמותו, לחייב ולזכות את השולח, ובמסגרת כך הכוונה והידיעה של השלוח מיוחסים לשולח.

ג.    יצירת השליחות יכולה להיות בכתב, בעל פה, ואף בהתנהגות של השולח.

ד.    השליחות חלה על כל פעולה הדרושה באופן סביר לביצוע השליחות.

ה.    חזקת ידיעה - רואים אדם כיודע דבר אם היה עליו כאדם סביר לדעתו.

ו.    דיני השליחות חלים במקביל לדינים הרלוונטיים האחרים.

וכלשון חוק השליחות (הסעיפים הרלוונטיים) :

"1.(א) שליחות היא ייפוי כוחו של שלוח לעשות בשמו או במקומו של שולח פעולה משפטית כלפי צד שלישי. (ב) כל פעולה משפטית יכולה לשמש נושא לשליחות, חוץ מפעולה שלפי מהותה או על פי דין יש לבצעה אישית. ...

2.    שלוחו של אדם כמותו, ופעולת השלוח, לרבות ידיעתו וכוונתו, מחייבת ומזכה, לפי העניין, את השולח.

3.(א)    השליחות מוקנית בהרשאה, שבכתב או שבעל-פה, מאת השולח לשלוח, או בהודעה עליה מאת השולח לצד השלישי, או על ידי התנהגות השולח כלפי אחד מהם. ...

5.(א)    השליחות חלה – באין הגבלה בהרשאה – על כל פעולה הדרושה באופן סביר לביצועה התקין של נושא השליחות, אולם אין היא חלה – באין הרשאה מפורשת לכך – על הליכים לפני בית משפט, בית דין או בורר, ולא על פשרה או ויתור או פעולה בלי תמורה. ...

18.    לעניין חוק זה רואים אדם כיודע דבר אם היה עליו כאדם סביר לדעתו או שקיבל עליו הודעה בדרך הרגילה.

19.    חוק זה אינו בא לגרוע מהוראות כל דין המסדיר סוג מיוחד של יחסי שליחות".

24. הנה כי כן, די בהוראות הפשוטות והברורות של חוק השליחות להוביל למסקנה כי עמדתו של פרופ' ליכט שגויה. המקרה דנן חוסה תחת מלוא הוראותיי הפשוטות והברורות הנ"ל של חוק השליחות.

**ג.2(i)    קיומה של שליחות אינה מותנית בהרשאה בכתב או בהצגה רשמית של השלוח ככזה**

25. ע"פ חוק השליחות, אין צורך בכך שהנתבעים יתנו הרשאה בכתב מפורשת לשלוחיהם בעמותות ישעיה, על מנת שייצגו את האינטרסים שלהם ויצביעו על אישור העברת הכספים לנתבעים לטובת מטרותיהם של הנתבעים. על-פי חוק השליחות אין גם צורך שאנשי הסגל של הנתבעים או עו"ד גרין יציגו את עצמם כשליחי הנתבעים. פרופ' ליכט אינו שולל את העובדה שהם פעלו לטובת הנתבעים ומטרותיהם. עצם התנהגות הנתבעים בעניין זה, לאורך השנים, היא שמקימה את השליחות. יפים לעניין זה קביעות בהמ"ש העליון בע"א 502/78 **מדינת ישראל נ' ירוחם ניסים,** פ"ד לה(4) 748 (1981), כדלקמן :

"12".. ... פלוני ייחשב כידו הארוכה של אלמוני - ועל כן כשלוחו לעניין האחריות השילוחית בנזיקין - אם פעולותיו של פלוני אינה נעשית באופן עצמאי משלו, אלא אם היא נעשית במסגרת הפעולות העסקיות של אלמוני, באופן שאין היא בחינת שירות חיצוני, הניתן לאלמוני, אלא פעילות, המהווה

חלק פנימי ואינטגרלי לפעולתיו העסקית של אלמוני. במצב דברים זה פעולתיו של פלוני היא חלק פנימי ממערך הפעילות הכוללת של אלמוני, וניתן לראות בה כאחד האברים, המהווים את גוף הפעילות כולה. בנסיבות אלה ניתן לראות בפלוני יד ארוכה, שכן הוא אבר חי מהמערך הכולל של אלמוני״.

**ii)ג.2)ייחוס ידיעת והתנהלות אנשי הסגל של הנתבעים, כמו גם של עו״ד גרין לנתבעים עצמם מכוח חוק השליחות**

26.    אין דרך אחרת להסתכל על השלוחים שפעלו בשם הנתבעים, אלא כאיברים אינטגרליים בגופים הציבוריים/הדו-מהותיים הנתבעים. אדגיש כי על פי סעיף 2 לחוק השליחות ״שלוחו של אדם כמותו״, גם לעניין הכוונה והידיעה. כך שהכוונה והידיעה של בני האנוש שקידמו ואישרו את העברת הכספים מעמותתם ישעיתם לנתבעים, שלוחיהם של הנתבעים, מיוחסות ונחשבות ככוונות והידיעה של הנתבעים עצמם. כך, שכאשר התקבלו הכספים אצל הנתבעים, חשוב הדבר כאילו הם ידעו בודאות והתכוונו לקבל את הכספים (זהות בידיעה ביניהם לבין שלוחיהם).

27.    זאת ועוד, ע״פ החזקה הנוספת בעניין זה שנקבע בסעיף 18 לחוק השליחות כמפורט לעיל, רואים אדם כיודע דבר אם היה עליו לדעת כאדם סביר לדעתו. במקרה דנן קיימת חזקה ברורה ונחרצת כי כל ה״עוסקים במלאכה״ שאישרו מידי שנה את הדוחות הכספיים של ישעיתם ידעו כי מדובר בכספים בסכומים ניכרים שמגיעים מארה״ב מחשבון ״אצל ברוקר בארה״ב״ כפי שנכתב בבירור בדוחות אלו. זוהי ידיעה של ״האדם הסביר״ עליה מדבר חוק השליחות.

28.    לדברים כנ״ל מתווספות נורמות משפטיות בישראל לפיהן על גופים ציבוריים, או למצער גופים דו-מהותיים דוגמת הנתבעים, לפעול בתום לב מוגבר ובהגינות מיוחדת. זאת, כפי שנקבע למשל בע״א 3979/01 **בניני ישקו ומקרקעין בע״מ נ׳ מינהל מקרקעי ישראל**, פ״ד נז(5) 423 (2003), וב-בג״ץ 4289/00 **אברמוביץ הדי ואח׳ נ׳ ראש ממשלת ישראל** (פורסם ב׳נבו׳, 10.12.2009). חובת תום לב והגינות מוגברת זו מגבירה הן את חזקת הידיעה של הנתבעים בדבר מקור הכספים שקיבלו, והן את האחריות שלהם למעשיהם של שלוחיהם מקום שנתברר כי הכספים אינם כשרים.

**ג.3.    אחריות שילוחית וחזקת הידיעה - מכוח דיני הנזיקין:**

29.    מלבד דיני השליחות, ניתן גם לייחס לנתבעים את מעשיהם וידיעותיהם של אנשי הסגל שלהם כמו גם את אלו של עו״ד גרין, גם מכוח דיני הנזיקין. פקודת הנזיקין [נוסח חדש] (להלן : **״פקודת הנזיקין״**), קובעת את אחריותו וחבתו של שולח למעשים שביצע עבורו שלוחו, וכן אף היא קובעת חזקת ידיעה, כדלקמן :

״13.(א) לעניין פקודה זו יהא מעביד חב על מעשה שעשה עובד שלו —

(1)    אם הרשה או אישרר את המעשה ;

(2)    אם העובד עשה את המעשה תוך כדי עבודתו ;

אולם —

(א)    מעביד לא יהא חב על מעשה שעשה מי שאיננו מעובדיו, אלא אחד מעובדיו העביר לו תפקידו בלא הרשאתו המפורשת או המשתמעת של המעביד ;

(ב)    מי שהיה אנוס על פי דין להשתמש בשירותיו של אדם שאין בחירתו מסורה לו, לא יהיה חב על מעשה שעשה האדם תוך כדי עבודתו זו.

(ב)    רואים מעשה כאילו נעשה תוך כדי עבודתו של עובד, אם עשהו כעובד וכשהוא מבצע את התפקידים הרגילים של עבודתו והכרוכים בה אף על פי שמעשהו של העובד היה ביצוע לא

נאות של מעשה שהרשה המעביד ; אולם לא יראו כן מעשה שעשה העובד למטרות של עצמו
ולא לענין המעביד.

(ג)    לענין סעיף זה, מעשה – לרבות מחדל.

14. לענין פקודה זו, המעסיק שלוח, שאיננו עובדו, בעשיית מעשה או סוג של מעשים למענו, יהא חב
על כל דבר שיעשה השלוח בביצוע אותו מעשה או סוג מעשים ועל הדרך שבה הוא מבצע אותם. ...

17. כל מקום שלפי פקודה זו יש לטעון או להוכיח ידיעה, יראו ידיעתו של שלוח או עובד כידיעתו של
שולחו או מעבידו, ובלבד שהידיעה נרכשה על ידי השלוח כשהוא פועל למען שולחו, או על ידי העובד
תוך כדי עבודתו לגבי העניין או הדבר שעליהם נדרשת הידיעה".

30. הנה כי כן, גם פקודת הנזיקין מקימה הן חבות של הנתבעים בגין הפעולות שביצעו עבורם שולחיהם והן חזקה כי
ידעו על העברת הכספים אליהם, שכן <u>לפי פקודת הנזיקין רואים את ידיעתו והתנהלותו של עובד או שלוח כידיעתו
והתנהלותו של המעביד או שולחו</u>.

31. בעניין האחריות השלוחית וחזקת הידיעה מכוח חוק השליחות ופקודת הנזיקין מצאתי לנכון להביא רק את לשון
החוק והפקודה, שכן, כפי שניתן להיווכח, היא ברורה ודי בה. הפסיקה בעניין זה ענפה, אך אין צורך להציגה לאור
פשטות ובהירות הדברים. ראוי להדגיש כי במקרה דנן מדובר בשליחות והתנהגות שנמשכה למשך שנים. אנשי
הסגל, לאמור המנהלים, הפרופסורים ויתר בעלי התפקידים שעסקו במלאכה, היו שלוחיהם של הנתבעים לאורך
שנים וברור כי מעשיהם בישעיה נכללים במסגרת שליחות זו. הנתבעים ידעו כי פעילותם של אנשי סגל אלו וש
עו"ד גרין בישעיה והסכימו לה בכך שקיבלו בחפץ לב ובתודה את הכספים שהופנו אליהם כתוצאה מפעילותם זו.

32. כפירתם של הנתבעים כיום ביחסי השליחות, בשליחות ובקבלת התועלת כתוצאה משליחות זו, מהווה התנהגות
בחוסר תום לב, בחוסר הגינות, ושלא בדרך ישרה, תוך הפרת החובה המקובלת לפעול באופנים אלו, ובוודאי שתוך
הפרת החובה המוגברת שחלה על הנתבעים כגופים ציבוריים, או למצער, דו-מהותיים.

## **ג.4.    אחריות שלוחית וייחוס ידיעה של תאגידים לפעולות ארגון מטעמם – מכוח דיני התאגידים:**

33. כאמור, דיני השליחות ודיני התאגידים חלים בכפיפה אחת, ובתת-פרק זה אדון בדיני התאגידים. סעיף 46 לחוק
החברות מגדיר "אורגן", כל מי שפעול עבור החברה ועל פי דין רואים את פעולותיו כפעולות החברה, כדלקמן :

"46. האורגנים של החברה הם האספה הכללית, הדירקטוריון, המנהל הכללי <u>וכל מי שעל פי דין, או
מכוח התקנון רואים את פעולותיו בעניין פלוני כפעולות החברה לאותו עניין.</u>

34. כמפורט בהמשך, בהתאם לפרשנות החוק, אין צורך בתפקיד רשמי ו/או במינוי רשמי מטעם החברה ודי בכך
שאותו ארגן מבצע פעולות עבור אותה חברה. סעיף 47 לחוק החברות קובע גם כי החברה אחראית לכל מעשי
הפועלים בשמה על פי דין, וכי פעולות הארגון וכוונותיו הן פעולותיה וכוונותיה, כדלקמן :

"47. פעולותיו של ארגון וכוונותיו הן פעולותיה של החברה וכוונותיה".

35. יש לשים לב כי חוק החברות אינו מתייחס רק לפעולותיו שביצע האורגן ומייחסן ייחוס מלא לפעולות החברה, אלא
חוק החברות אף מוסיף וקובע ומייחס את כוונותיו של האורגן ככוונות החברה עצמה. פשוטם של דברים הם
עיקרם, היינו לא רק המעשים אלא גם הכוונה. במקרה זה, כאשר אורגני הנתבעים פועלים בשמם להעביר כספים
מחברת BLMIS ו/או מעמותת ישעיה אל הנתבעים, החוק מייחס את המעשים שעשו והכוונות שהיו לאותם
אורגנים, כמעשים וכוונות שהיו לכל אחד ואחד מהנתבעים עצמם. זאת ועוד, סעיף 53 לחוק החברות, קובע כי
חברה אחראית בנזיקין, באופן ישיר, לכל עוולה שביצע ארגון שלה, כדלקמן :

"53. (א) חברה חבה במישרין באחריות בנזיקין על עוולה שבוצעה בידי אורגן שלה.

(ב) אין בהוראת סעיף קטן (א) כדי לגרוע מאחריותה השילוחית של חברה בנזיקין על פי כל דין".

36. על דינים רלוונטיים אחרים – עוולות בנזיקין, חבות מכוח חוק השליחות, חובת תום הלב המוגברת מכוח היותם גופים ציבוריים וכיוצ"ב – עמדתי לעיל, וכל האמור לעיל חל גם כאן. הנתבעים אחראים בנזיקין זה כאורגנים לעניין זה כאורגנים של הנתבעים. כאמור בסעיף 53(ב) לחוק החברות, אין בכך לגרוע מאחריות נוספת של הנתבעים על פי כל דין אחר, אלא הסעיף קובע אחריות ספציפית, ולפיה חברה אחראית לפעולות ומחדלים שביצעו אורגניה מטעמה.

37. בישראל נקבע פעם אחר פעם, לרבות בפס"ד של בהמ"ש העליון בנושא מפיו של כבוד נשיא בית המשפט העליון מאיר שמגר ז"ל בע"א 725/78 **בריטיש קנדיאן בילדרס בע"מ נ' יואל אורן**, פ"ד לה(4) 253 (1981), כדלקמן:

"החברה, שהיא אישיות משפטית ערטילאית, תחוב באחריות ישירה בנזיקין, מקום שבוצע מעשה נזיקין בפועל על-ידי מי שנחשב לאורגן שלה. במקרה זה רואים את החברה כמפרה את החובה, המוטלת עליה, באמצעות פעולותיו של מי שנחשב לאורגן שלה, היינו, מעצב רצונה וכ- alter ego שלה".

### ג.4(i) יישום מבחני "תורת האורגנים" - חיוב הנתבעים במעשי האורגנים שפעלו מטעמם:

38. הנתבעים חבים בגין מעשי אנשי הסגל שלהם הסגל גם בגין מעשי עו"ד גרין גם מכוח "תורת האורגנים". אדגיש, תורת האורגנים נדרשת כאשר נדרש יסוד נפשי לצורך קביעת אחריות (לרוב בדין הפלילי). כך לדוגמא נפסק ע"י בהמ"ש העליון בע"א 4202/08 **עאמר אלסאנע נ' מנהל מע"מ** (פורסם ב'נבו', 1.7.2010), כדלקמן:

"...'תורת האורגנים' שמכוחה נתפסים היסוד הנפשי והרכיב ההתנהגותי האקטיבי שמתקיימים אצל האורגן בתאגיד כיסוד הנפשי וכרכיב ההתנהגותי האקטיבי של התאגיד, והיא שמאפשרת הטלת אחריות ישירה על התאגיד, הגם שבאין תכונות אנושיות הוא לא ביצע את הפעולה 'בעצמו'".

39. בהמ"ש העליון קבע בנוגע לתורת האורגנים, כי אותו יסוד נפשי המועבר מהאורגן לתאגיד, הופך אותם למעשה, לאחראים ביחד **למעשה הפלילי** שנעשה, כך נקבע בע"פ 7399/95 **נחושתן תעשיות מעליות בע"מ נ' מדינת ישראל**, פ"ד נב(2) 105 (1998), בעמ' 124, כדלקמן:

"תורת האורגנים המצויה את הארגון כ'פני האנושיות' של התאגיד ורואה בשניהם יחד 'ישות' 'משותפת' אחת, נועדה להעניק לתאגיד תו אופי אנושי המאפשר להטיל עליו – כתאגיד – אחריות אישית בפלילים".

40. אכן, תורת האורגנים אומנם התקבלה הן בנוגע לדין הפלילי והן בנוגע לדין האזרחי "**כאשר יש צורך בכך**", היינו כאשר קיים צורך יסוד נפשי ביסוד לצורך ביסוס האחריות, אלא שכפי שעולה מפסקי הדין הדנים בסוגייה, ככלל, הסוגיות הנידונות בהם עוסקות בעניינים פליליים, שכן אין צורך נפשי ביסוד לצורך ביסוס חבות אזרחית. לכן, ההלכה לגבי יישום בפועל של תורת האורגנים, התפתחה בעיקר בדין הפלילי. בבסיסה של "תורת האורגנים" עומדים שני מבחנים, כדלקמן:

(1) **המבחן הארגוני** – מעמדו הפורמלי של הארגון של התאגיד (היותו בעל משרה עם 'טייטל', מוגדר כגון מנכ"ל, סמנכ"ל וכיוצ"ב, כפונקציה לצורך בחינת מעמדו בתאגיד.

(2) **המבחן הפונקציונלי** – האם התפקיד שמבצע בפועל אותו בעל תפקיד בתאגיד, מצדיקה לראות את מעשיו

כמעשיו של התאגיד? זאת כאשר, כפי שהובא בפסיקה לעיל, אורגן אין פירושו בהכרח בעל משרה בכירה בחברה, ואף עובדים זוטרים יכולים להיחשב אורגנים.

41. למעשה, מדובר במבחנים שיוצרים הגדרה אמורפית, ולא מתווה אחיד לצורך הגדרה, ולכן אין רשימה סגורה למי נחשב אורגן. אלא שההיגיון בהגדרה ברור, והוא בא לכלול תחת "אורגן" את כל מי שהינו בעל תפקיד מכריע בפועל בתאגיד, אחראי לפעילותו ו/או מבצע בפועל את פעילותו כלפי פנים ו/או כלפי חוץ, כאשר תואר המשרה אין לו חשיבות מעשית. הפסיקה קבעה כי מעל לשני המבחנים הנ"ל, עומדים, למעשה שיקולי מדיניות כללית ומשפטית, שעל פיהם יוכר אורגן כמי שמחייב את התאגיד בפלילים. במסגרת כך, נקבעו 3 מבחני עזר, כדלקמן: (א) האם דבר החקיקה לא התכוון להוציא את אחריות התאגיד; (ב) האם פעולת האורגן נעשתה במהלך מילוי תפקידו; ו- (ג) האם הפעולה הייתה לטובת התאגיד, או לכל הפחות לא כוונה נגדו. מיטב לסכם את העניין פסה"ד של ביהמ"ש המחוזי בת"א (מחוזי, ת"א) 07-1420 **זאב זאבי נ' טי.אר.די. אינסטרום בע"מ** (פורסם ב'נבו', 28.4.2015), כדלקמן:

> "תורת האורגנים... אשר "מציגה את הארגון כ'פניו האנושיים' של התאגיד וראוה בהם יחד ישות משותפ' אחת, שנועדה להעניק לתאגיד תו אופי אנושי המאפשר להטיל עליו - כתאגיד – אחריות אישית בפלילים"... מטרה עיקרית בהטלת אחריות מכוח תורת האורגנים היא הרתעת התאגיד ותאגידים דוגמתו, כדי שלהבא ימנעו את הישמנו העבירה על-ידי יצירת מנגנוני פיקוח ובקרה שיהא ביכולתם למנוע מראש מצבים המובילים אל עבר העבירה הפלילית:"...

> ... "קטו. בבסיס תורת האורגנים ניצב, כמובן, הארגון, אותו יד ארוכה בכירה של החברה. בפסיקה ובספרות נהוגים שני מבחנים חלופים לבחינת השאלה האם ייחשב פלוני כארגון בתאגיד אלמוני – המבחן הראשון, המבחן הארגוני – לפי מבחן זה, שאלת היות הפרט ארגון תיבחן בהתאם למעמדו הפורמאלי בתאגיד ... המבחן השני, המבחן הפונקציונלי – האם הפונקציה המבוצעת על-ידי נושא המשרה הספציפי מצדיקה לראות את מעשיו כמעשיו של התאגיד, "היא מעמדו ההיראכרי של הפועל בחברה אשר יהא"...

> קטז. שני המבחנים, שהם ילידי השכל הישר, אינם תוחמים את רשימת בעלי התפקידים היכולים לבוא בגדר אורגנים ברשימה סגורה, ... גם שיקולי מדיניות משפטית יטלו לא אחת חלק בקביעת המסגרת, ומטבע הדברים יגבר משקלם במקרה הגבולי" ... כדי לקבוע כי תאגיד אחראי, מכוח תורת האורגנים, לפעילות אותה ביצע אורגן התאגיד, יש לקבוע כי ראוי להטיל אחריות על התאגיד בגין מעשיו הקונקרטיים של הארגון (ענייני מודעים, עמ' 384-383). מדובר בשאלה של מדיניות משפטית, ועם השנים עוצבו בפסיקה מבחני העזר הבאים: הראשון, האם דבר החקיקה לא התכוון להוציא מתוכו את אחריות התאגיד (ענייני מודעים, בעמ' 385); השני, האם פעולת הארגון נעשתה במהלך מילוי תפקידו (קרמניצר וגנאים, בעמ' 98-97); השלישי, האם הפעולה הייתה לטובת התאגיד, או לכל הפחות לא כוונה נגדו".

42. במקרה דנן התשובה לכל המבחנים והבדיקות הנזכרות לעיל מובילה למסקנה חד משמעית כי משמעית של הנתבעים הם אורגנים שפעלו מטעמם יש לייחס את ידיעת ומעשי שלוחיהם לנתבעים. לחלק מהאורגנים והשלוחים שפעלו עבור הנתבעים בעמותת ישעית, היה תפקיד רשמי בתאגידים הנתבעים, כך שברור שהמבחן הארגוני כנ"ל, לגבי חלק מהנתבעים, מתקיים באופן ברור ונהיר. די בכך כדי להכיל את תורת האורגנים בנוגע לנתבעים הנ"ל. עם זאת, כאמור לעיל, המבחן הארגוני, אינו חזות הכל, וגם במקרה בו אין לשלוח תואר תפקיד רשמי וקבוע בתאגיד, הוא עדיין יחשב כארגון בו, שעה שמתקיים המבחן הפונקציונאלי. כך, בענייננו, מתקיים המבחן הפונקציונאלי,– שכן הנתבעים, היו הנהנים העיקריים מאותן העברות כספים.

43. זאת ועוד, שיקולים של "מדיניות שיפוטית", "מדיניות כללית" וכיוצ"ב, מובילים לכך שיש לייחס את ידיעת הארגון לגוף התאגידי שנהנה מפעולתו אותו ארגון. לפיכך, המסקנה המתבקשת בענייננו הינה ייחוס הידיעה וההתנהלות של האורגנים, היינו אנשי הסגל ועו"ד גרין, לנתבעים. ודוק, במקרה דנן, הפעולה העיקרית, הייתה העברת הכספים לנתבעים על ידי עמותת ישעיה בה היו מעורבים אנשי הסגל שלהם ועו"ד גרין. לא רק שמדובר בפעולות שהנתבעים נהנו מהן ו/או שבוצעו לטובתם, אלא שהנתבעים היו המרוויחים העיקריים מפעולות אלו.

### ג.4.(ii)‎ הגדרת הפסיקה ל-"ארגון" של תאגיד לצורך קביעת אחריות שילוחית, רחבה יותר בדין האזרחי מאשר בדין הפלילי:

44. פרופ׳ ליכט בחר להגדיר את המונח "ארגון" במובנו הצר בהתאם למבחני הדין הפלילי בישראל והתעלם כמעט לחלוטין מהדין האזרחי. אדגיש, כי המבחן הארגוני והמבחן הפונקציונאלי הנ"ל הינם במישור הפלילי, ועל פיהם ייחשב אדם אורגן של תאגיד, כך שמעשים ו/או מחדלים שביצע עשויים להיחשב עבירות פליליות של התאגיד עצמו. קל וחומר כי כאשר מדובר בעניינים אזרחיים, כמו במקרה דנן, המבחנים הללו יהיו קלים יותר וגמישים יותר.

45. אחריות שלוחית של חברה בגין מעשים שביצע עבורה אורגן שלה נקבעה בפסיקה באופן נרחב בוודאי כאשר קיימת "כוונה להטיב עם התאגיד". בע"א 407/89 צוק אור בע"מ נ׳ קאר סקיוריטי בע"מ, פ"ד מח(5) 661 (1994), בהמ"ש העליון עמד על הדברים, וכן קבע כי אורגן של החברה לעניני חבות באחריות שלוחית ובנזיקין, יכול להיות גם נושא משרה שאינו בכיר עשוי להיחשב כאורגן התאגיד, וזאת אם ניתן לראות את פעולתו ומחשבתו כפעולת התאגיד עצמו, כדלקמן:

> ..."טוב הניזוק החף מן המזיק האשם : מן הראוי כי המנהל, האורגן או נושא המשרה גם יישאו בנטל חדלות פירעון החברה בסיטואציה הנזיקית. האחריות האישית משתלבת היטב עם העיקרון כי אדם אשר נתנה מסיכון אינו יכול להתחמק מתוצאותיו של אותו סיכון... ראינו כי חברה עשויה להתחייב בנזיקין מכוח אחריות ישירה או מכוח אחריות שילוחית. האחריות הישירה צומחת כל אימת שאורגן החברה מבצע עוולה בנזיקין. מעשי האורגן הם מעשי החברה. עם האורגן ביצע עוולה בכושרו כאורגן, משמע : החברה ביצעה עוולה. מעשי העובד אשר אינו אורגן אינם מיוחסים לחברה. עם זאת, אם מתקיימים תנאי סעיף 13 לפקודת הנזיקין [נוסח חדש], מוטלת אחריות שילוחית על החברה. הוא הדין אם שלוחה של החברה עוול, כקבוע בסעיף 14 - שאז אחריותה של החברה היא שילוחית. מה היקף השתרעות המושג "אורגן" ... גם נושא משרה שאינו בכיר עשוי להיחשב כאורגן התאגיד"...

46. השאלה מיהו ארגון נידונה אף בפסה"ד בעניין ע"פ 99/14 מדינת ישראל נ׳ מליסרון בע"מ (פורסם ב-נבו, 25.12.2014) (להלן : "מליסרון"), אליו הפנה פרופ׳ ליכט בטעם מטעם הנתבעים. תורת הארגונים שמוזכרת בהרחבה בפס"ד בעניין ע"פ 3027/90 חברת מודיעים בינוי ופיתוח בע"מ נ׳ מדינת ישראל, פ"ד מה(4) 364 (1991) (להלן : "מודיעים"), נועדה, במהותה, לצורך בחינת שאלת ייחוס כוונה פלילית בעבירות פליליות שמבצע אורגן עבור תאגיד. כאמור, היות שעוסקים אנו בדין האזרחי ולא בדין הפלילי, המבחנים לעניין "מיהו ארגון?", "מיהו שלוח?" וכי הינם "רכים" יותר, שכן אין את הצורך בנטל הכבד יותר הקיים במשפט הפלילי. אבחנה זו נעדרת מהנתחרת ליכט. מכל מקום, גם בפס"ד מליסרון בהמ"ש קובע כי אין צורך בקיומו של הגדרת תפקיד רשמי או תואר כדי להפוך אדם לאורגן או שלוח, אלא הדברים נבחנים במהותם ולא בהגדרות למראית עין. מהות פעילותו של הארגון בחברה נבחנת ללא צורך בקיומו של מינוי פורמלי. כך בסעיף קמ"א במליסרון:

...״ראשית אציין, כי לטעמי אין להלום את טענת מליסרון לפיה אין לראות במדר כאורגן החברה אך מן הטעם שלא הועסק כמנהל כספים בתוך החברה, אלא באופן חיצוני כ״נותן שירותים פיננסיים״. כך, כיון שהמשמעות אינו מסתפק בכל נראים הדברים למראית עין, אלא בוחן את מהותם; הדבר הכרחי להגשמת תכליתו הבסיסית ביותר של המשפט – צדק״...

...״דיני חברות, כבענייננו, אינם שונים מכך, וכפי שמציין גרוס: ׳התפיסה השלטת בדיני החברות שמה דגש על מהות פעילותו של האורגן בחברה ולא על המינוי הפורמלי׳ (שם, בעמ׳ 124)״.

47.  מסקנתי היא אפוא, כי בהתאם לדין האזרחי בישראל, אנשי הסגל של הנתבעים, כמו גם עו״ד גרין, הם אורגנים של הנתבעים, ואין משקל לשאלת הגדרת תפקידו הפורמלי של כל אחד ואחד מהם בנתבעים כאשר ברור כי פעולותיהם בעמותת ישעיה, לרבות אישורי העברת הכספים, נעשו עבור ולמען הנתבעים ולטובת מטרותיהם.

### ג.5.  ייחוס אחריות שילוחית וידיעה לתאגיד שלא מכוח תורת האורגנים:

48.  להשלמת התמונה אציין כי יתכנו מקרים בהם תורת האורגנים לא תוחל, ובהמ״ש ישתמשו במבחנים אחרים לצורך ייחוס כוונת האורגן לתאגיד לשם חיוב התאגיד בפלילים. בהמ״ש קבע גם כי בעל תפקיד זוטר יחסית, יכול להיחשב אורגן לצורך חיוב החברה בפלילים. עוד קבע כי בהמ״ש כי במסגרת הבחינה הפונקציונאלית (לצורך בירור אם מדובר באורגן), ניתן לזהות כאורגן גם עובד שפעל במסגרת תפקידו בתאגיד בחריגה מסמכות ואפילו תוך הפרת הוראות מפורשות של הממונים עליו. ראה למשל, פסה״ד של בהמ״ש המחוזי, השופט חאלד כבוב, ת״פ (מחוזי, ת״א) 23842-11-11 מדינת ישראל נ׳ אברהם לוי (פורסם בנבו, 19.11.2013):

> ...״על פי המודל המסורתי של תורת האורגנים, במסגרת הבחינה הפונקציונאלית, ניתן לזהות כאורגן גם עובד שפעל במסגרת תפקידו בתאגיד, אך אגב חריגה מסמכות ולעיתים אף תוך הפרת הוראות מפורשות של הממונים עליו ... בעניין נחומשון הביע עמדה זו בית המשפט העליון... בקבעו כי: ״הגבלת אחריות האישית של התאגיד למעשים שעושה האורגן שלו בגדר סמכויותיו בלבד, נוטלת מתורת האורגנים את נשמת אפה״ (שם, בעמ׳ 123). מבלי לקבוע מסמרות בעניין, יש לומר כי ניתן להעלות על הדעת מקרים בהם ביצוע אורגני התאגיד מעשים פליליים בגינם ראוי להטיל אחריות על התאגיד עצמו, חרף העובדה שמעשים אלו לא נועדו להיטיב עמו. ... מקום בו האורגן פעל הן מתוך כוונה להיטיב עם התאגיד והן מתוך מניעים אישיים גם יחד, הרי שניתן להחיל את תורת האורגנים, וזאת בהתחשב, כמובן, במכלול השיקולים הרלבנטיים״.

ואדגיש – אין מניעה כי חברה תחוייב במעשה שביצע אורגן מטעמה בדין אזרחי, אף שבדין הפלילי, שהינו ברף גבוה יותר, היא לא תורשע בגינו.

### ג.6.  ידיעה קונסטרוקטיבית - ייחוס ידיעה מוחלטת בעת עצימת עיניים:

49.  לנתבעים היו שלוחים שפעלו בשמם בעמותת ישעיה, חברי העמותה ומייסדיה, שחלקם עבדו אצל חלק מהנתבעים, חלקם שימשו בתפקידים פורמליים אצל הנתבעים וחלקם פעלו באופן כללי בשליחותם בעמותה ובגופים קשורים. סעיף 2 לחוק השליחות קובע, בין היתר, כי יש לייחס לשולח את הידיעה שיש לשלוח – ראו בציטוט בסעיף 23 לעיל.

50.  ע״פ לשונו הברורה של חוק השליחות, הידיעה המיוחסת לאורגנים ו/או שלוחים של הנתבעים, שפעלו בשמם בעמותת ישעיה, מועברת ישירות ומיוחסת לנתבעים עצמם. קל וחומר במקרה דנן, נוכח העובדה שמדובר בתאגידים ציבוריים אשר חובת תום הלב וההגינות שחלים עליהם הינם חובות מוגברות.

51. הנה כי כן, חוק השליחות עצמו מייחס ידיעה קונסטרוקטיבית, לשולח ולשלוח. אין הנאמן חייב להוכיח ידיעה פוזיטיבית ממשית של הנתבעים את מלוא העובדות לאשורן, שכן די בחזקות הנ"ל כדי לקבוע שהנתבעים ידעו את המיוחס להם. זאת ועוד, גם אי ידיעה שמקורה בהתרשלות או עצימת עין משולל כידיעה ממש. בעניין זה קבע השופט ברק, בפסק הדין בעניין **דנ"א 1740/91 בנק ברקליס-דיסקונט בע"מ נ' שרגא פרוסט קוסטמן**, פ"ד מז(5) 031 (1993), כי התרשלות שמובילה לאי ידיעה דינה כידיעה, כדלקמן:

> "על-פי הוראה זו, כאשר אדם אינו יודע דבר, אך כאדם סביר היה עליו לדעת אותו דבר, רואים אותו כיודע אותו דבר. התרשלות באי-ידיעה שקולה כנגד ידיעה. על כן, בכל מקום בחוק השליחות שבו מותנית תוצאה משפטית בכך שאדם ידע דבר, תבוא אותה תוצאה משפטית גם מקום שאותו אדם לא ידע אותו דבר, אבל היה עליו כאדם סביר לדעתו...".

52. כאמור, גם פקודת הנזיקין קובעת חזקת ידיעה, כדלקמן:

> "17. כל מקום שלפי פקודה זו יש לטעון או להוכיח ידיעה, יראו ידיעתו של שלוח או עובד כידיעתו של שולחו או מעבידו, ובלבד שהידיעה נרכשה על ידי השלוח כשהוא פועל למען שולחו, או על ידי העובד תוך כדי עבודתו לגבי העניין או הדבר שעליהם נדרשת הידיעה".

53. הנה כי כן אף פקודת הנזיקין מקימה הן חבות של הנתבעים בגין הפעולות שביצעו עבור שלוחיהם והן חזקה כי ידעו על העברת הכספים אליהם, שכן רואים את ידיעתו של עובד או שלוח כידיעתו של המעביד או שולחו. ואדגיש, עצימת עיניים יכולה לשמש כידיעה אפילו בדין הפלילי, וייחוס עבירות לנושא משרה אשר יישא באחריות שלוחית בגין מעשים שביצע עובד זוטר יותר, כך נקבע ע"י בהמש"ש העליון ברע"פ 5502/19 **יורי מורבייב נ' מדינת ישראל** (פורסם בנבו, 25.08.2019), כדלקמן:

> "עצימת עיניים למול מעשיהם של עובדי החברה, אשר נועדו להטיב עמה תוך גזילת כספים מהקופה הציבורית, לא תאפשר להם לחמוק מאחריות פלילית".

54. הפסיקה בישראל, כולל של בהמש"ש העליון הכירה באפשרות של הזהות בין הארגונים לתאגיד, ייחוס הידיעה של הארגונים לחברה עצמה, ייחוס המחשבה הפלילית בדין הפלילי. כך קבע בהמש"ש העליון בע"פ 5640/97 **רפאל רייך נ' מדינת ישראל**, פ"ד נג(2) 433 (1999), כדלקמן:

> " ... המנהלים הארגונים – הם המוח והמרכז וניתן לראות כל מעשה או מחדל שלהם כמעשה התאגיד. זו הזהות שבין הארגונים לבין התאגיד, בייחוס המחשבה הפלילית של הארגון לתאגיד ... אותה מחשבה שעם התגבשותה אצל הארגון ניתן לייחס אותה לתאגיד".

55. לעובדה כי בית המשפט הכיר וייחס את ידיעת הארגון כידיעת החברה בדין הפלילי משמעות מרחיקת לכת, שכן ברור לכל כי הנטל במשפט הפלילי הפלילי כבד לאין שיעור מזה הנדרש דין האזרחי, בתביעה כספית, כמו במקרה דנן. לפיכך, היות שהוכחה אחריות פלילית של תאגיד בגין עבירות שביצע וארגון מטעמו, כאשר הכוונה וידיעת הארגון יוחסו לחברה, קל וחומר כי יש לעשות כן בתביעה אזרחית "רגילה" בה יש להרים נטל ראיה נטל ראיה "רגיל". ההלכה לפיה ניתן לייחס לתאגיד ידיעה של מי שפועלים מטעמו נקבעה בפסקי דין רבים, לרבות בפס"ד מודיעים אליו מפנה פרופ' ליכט. כך בין היתר, נקבע ברע"א 4828/19 **אריה שמם נ' עו"ד זאב דסברג** (פורסם בנבו, 19.12.2019), כדלקמן:

> "...ניתן לייחס ידיעה לתאגיד כאשר אורגן שלו – ובכלל זה, דירקטור, נושא משרה בכיר או כל נושא משרה אשר ניתן לראות את פעולתו כפעולת התאגיד עצמו – ידע או יכול היה לדעת על העובדות המקימות את עילת התביעה".

### ג.7. **פעולה בחריגה מהרשאה:**

56. פרק 8 של הצהרת ליכט (סעיפים 68 – 72) כולל התייחסות לסעיף 6 של חוק השליחות ושולל את האפשרות שהתנבעים אישרו בדיעבד את פעולותיהם של אנשי הסגל שלהם או של עו"ד גרין, במסגרת ישעיה. סעיף 6 לחוק השליחות קובע לעניין שלום שפועל בחריגה מהרשאה, כדלקמן:

> "6.(א) פעל אדם בחזקת שלוחו של אחר בלי שהורשה לכך או בחריגה מהרשאתו, יכול אותו אחר, בכפוף לאמור בסעיף קטן (ב), לאשר את הפעולה בדיעבד; ואישור בדיעבד – כהרשאה מלכתחילה, ובלבד שלא תיפגע זכות שרכש אדם אחר בתום-לב ובתמורה לפני האישור.

> (ב) לא ידע הצד השלישי בשעת הפעולה שהשלוח פועל ללא הרשאה או בחריגה מהרשאתו, הברירה בידו, כל עוד לא נודע לו על אישור הפעולה, לראות את השלוח כבעל דברו או לחזור בו מן הפעולה ולתבוע מן השלוח את נזקו." (חוק השליחות, תשכ"ה-1965)

57. האמור בחוק השליחות בעניין חריגה מהרשאה והדיון בנושא אינו רלוונטי לענייננו, שכן אין חריגה בהרשאה של שלוחי הנתבעים ואורגניהם, בוודאי לא כאשר מדובר בפעילות במשך שנים, במסגרתה הם מעבירים מיליוני דולרים לנתבעים. לא ניתן לקבל טענה של חריגה מהרשאה, כאשר השולח מודע לדברים ומקבל מיליוני דולרים כתוצאה מהשליחות, לאורך שנים. בעניין זה התנהלות הנתבעים בזמן אמת מלמד על אישור מראש ובוודאי אישור בדיעבד וקבלה של מעשי שלוחיהם, האורגנים, הפועלים עבורם בעמותת ישעיה.

58. לא רק שהנתבעים לא מחו בפני שלוחיהם, האורגנים שלהם שפעלו מטעמם ו/או עבורם בעמותת ישעיה, אלא הם עודדו אותם, הן בכך שקיבלו את הכספים, והן באמצעות מתן תארים שונים וכבוד. על פי חוק השליחות, אישור בדיעבד כמוהו כאישור מלכתחילה, ומכל מקום התוצאה זהה גם לאור קיומם של דינים אחרים כמו עשיית עושר, הסתמכות וכיוצ"ב. כך למשל, קבעתי אני, בפסה"ד בעניין, פר"ק (מחוזי, ת"א) **08-2673 פרו אינטראקטיב בע"מ נ' יוגל שיווק מי-טל בע"מ** (פורסם בנבו, 26.07.2012), כדלקמן:

> <u>"בין אם אנתח את יחסי הצדדים לפי סעיף 6 לדיני שליחות, קרי אישור בדיעבד כמוהו כהרשאה מלכתחילה ובין אם אנתח את הסוגייה בהתאם לדיני עשיית עושר והסתמכות בתום לב, הרי התוצאה הינה אחת</u>. ... ראשי המפרק לראות את המשיבה וברודה כחניבות ביחד ולחוד ...".

59. על פי הדין בישראל, המהות היא העיקר ולא ההגדרה. הדברים נבחנים ע"פ עקרונות תום הלב, ודיני עשיית עושר, ולא בצורה דווקנית, אלא בצורה מעשית ועקרונית. במקרה דנן, העובדה שהנתבעים אישרו את פעילותם של חברי סגל שלהם בעמותת ישעיה, תוך שהם נהנים מן הכספים שחילקה ישעיה לעצמם ולמילוי צרכיהם ומקבלים אותם בתודה, מקימים קשר שליחות בין הצדדים ומאשררת את מעשי השלוחים. הנתבעים אינם יכולים להרחיק עצמם מחברי הסגל שלהם ומעו"ד גרין שפעלו בשמם ולטובתם ולא מעמותת ישעיה שבמסגרתה הם פעלו. בהמ"ש קבע בע"א 4371/12 רו"ח אילן שלג שגב נ' שפיר מבנים תעשיית (2002) בע"מ (פורסם בנבו, 17.09.2014), בעניין חריגת שלוח מהרשאה שניתנה לו כי <u>"אין בתחולתם של דיני השליחות כדי לשלול חבות אישית מכוח מערכות דינים אחרות"</u>.

60. בהתאם לפסק הדין, גם בחריגה מהרשאה, הרי שעדיין התאגיד יכול לחוב בדין מכוח דינים אחרים (לדוגמא, חוק עשיית עושר ולא במשפט וכיוצ"ב). כאמור, הנתבעים לא רק שלא התערבו ממעשי שלוחיהם, אלא לגבי חלקם עודדו אותם ואפשרו להם להמשיך לאורך שנים רבות.

## ו. הכשלים בהצהרת פרופ' ליכט:

61. ראשית, פרופ' ליכט מתייחס בערבוביה לנושאים פליליים ואזרחיים בנוגע לתאגידים, אחריותם השילוחית, הידיעה המיוחסת להם וכיוצ"ב. כלל נקוט וידוע בדין הישראלי, וכנראה כי גם במרבית העולם, כי מאחר והדין הפלילי עוסק בדיני נפשות והדין האזרחי בדיני ממונות, בעניינים פליליים נטל הוכחת מרכיבי התביעה "כבד" יותר. כך, בנוגע לנטל הראייה הכבד יותר בעת אישום פלילי מאשר בתביעה אזרחית "רגילה". כך גם בדרישה כי לשון החוק הפלילי תהיה חדה וברורה, ותגדיר באופן מוחלט כל פרטי העבירה המיוחסת ועוד.

62. לפיכך, כאשר פרופ' ליכט מציג מבחנים ונורמות שנקבעו בנוגע לחיוב תאגיד בפליליים ("תורת האורגנים") ומנסה להחיל נורמות אלה במקרה דנן, של תביעה כספית אזרחית להשבה, וכותב בהתהדרותו כי אותן נורמות פליליות לא מתקיימות במקרה זה, בכל הכבוד, הוא **טועה פעמיים**: **הטעות ראשונה** – הנורמות כן מתקיימות במקרה זה. **הטעות השנייה** – אפילו אם אותן נורמות לא היו מתקיימות, לא היה בכך לגרוע מאחריותו השילוחית של התאגיד. זאת, מכיוון שגם אם לא ניתן להרשיע על פי אותן נורמות בפליליים אין הדבר מונע ייחוס ידיעה והטלת אחריות בתביעה אזרחית מכוח דיני התאגידים, אחריות שילוחית, דיני נאמנות, עשיית עושר, אחריות בנזיקין ועוד.

63. אדגיש ואבהיר, **הדברים אינם פועלים הפוך**. היינו, כאמור בהצהרתי זו, אני מציגה את הנורמות בדין הפלילי לחיוב תאגיד, ומוכיחה כי המבחנים והכללים שנקבעו בפסיקה חלים במקרה זה, משמעות הדברים הינה "מקל וחומר". כלומר אם תנאי המבחן בעל הרף הגבוה יותר של הדין הפלילי מתקיימים במקרה דנן, קל וחומר בן בנו של קל וחומר כם מתקיימים ברף הנמוך יותר של תביעה אזרחית הנדרש לצורך תביעתו של הנאמן.

64. אפילו אם היה ממש בפרשנות הספציפית של פרופ' ליכט למקרה דנן, הרי שהניסיון לאחד את כל האמור בהצהרת ליכט לכדי תמונה בודדת ופרשנות אחת, המבוססת על דוקטרינה משפטית יחידה (תורת האורגנים), אינו ממשי וגם נעשה באופן שגוי. בפרק 4 להצהרתו מציג פרופ' ליכט את "השאלות המשפטיות" שנשאל, כאשר בסעיף 15 ב' להצהרתו טוען פרופ' ליכט כי התשובה לכל השאלות הנ"ל הינה שלילית. בכל הכבוד, אין בכך ממש. לדעתי, המתבססת על מבט הוליסטי ומלא של מכלול הדינים הישראליים הרלוונטיים לנושא, כפי שסקרתי אותם לעיל, התשובה לשאלות שהוצגו לפרופ' ליכט הינה "כן" רבתי.

### ו.1. התייחסות להפניית פרופ' ליכט לפס"ד מודיעים:

65. הצהרת ליכט כוללת התייחסות רחבה לפס"ד בעניין מודיעים. מדובר בפס"ד שלמעשה כבר תוקן בחוק החברות שנחקק ותוקן שנים לאחר מתן פסק הדין (בין היתר ע"י סעיף 46 לחוק החברות שצוטט על ידי לעיל). למעשה, כפי שניתן להיווכח פס"ד מודיעים עוסק בעבירת תנועה שביצע נהג מטעם החברה ברכב שרשום ע"ש החברה וצולם במצלמת תנועה.

66. ברור כי המבחנים שנקבעו לעניין חיוב פלילי של תאגיד בגין עבירת תנועה שביצע אורגן מטעמו, אינם רלוונטיים לשאלת חיוב תאגידים בהשבת כספים בסך מיליוני דולרים שהועברו אליהם. לא דומה עבירת תנועה (מינורית יחסית) ושבצידה חיוב בקנס (בסכום זניח יחסית), לביצוע עוולות אזרחיות או התעשרות שאינה כדין בסכומי עתק. הרי ברור לכל, כי ההשוואה זו אינה ממין העניין.

67. מכל מקום, כפי שהובא על ידי לעיל, המבחנים והתנאים שהוצגו בפס״ד מודיעים, מתקיימים במקרה זה ומובילים למסקנה כי יש לייחס לנתבעים את ידיעת האחראים לפעולות שביצעו עבור ארגוניהם ו/או שלוחיהם בעמותות ישעיה. מעבר לכך, הפרקטיקה הנוהגת בבתי המשפט הינה להכיר באחריות של חברה לעבירות שביצע אורגן ו/או שלוח מטעמה, במיוחד אם ביצע את העבירה לטובתה של החברה (ראה הפסיקה שצוטטה על ידי לעיל), וכך גם נקבע בסופו של דבר בפס״ד מודיעים עצמו.

68. זאת ועוד בפס״ד מודיעים עצמו נקבע כי תורת האורגנים אינה גורעת מהאחריות השילוחית ״הרגילה״ שחלה על תאגידים (ועל הכלל), וכן כי היא באה, בין היתר, בכדי לייחס יסוד נפשי נדרש לצורך הרשעת תאגיד בעבירה פלילית שביצע אורגן מטעמו, כך שהיסוד הנפשי והידיעה של האורגן ייוחסו לתאגיד. וכפי שנקבע בהמ״ש שם :

> ״ודוק : תורת האורגנים לא נועדה להטיל על תאגיד אחריות בגין אחריותם של האורגנים. לשם כך קיימת הדוקטרינה של אחריות שילוחית. תורת האורגנים יוצאת מתוך הנחה כי קיימת נורמה משפטית המתייחסת אל התאגיד. על פיה נובעות תוצאות מסוימות (בין שעניינן הטלת אחריות, ובין שעניינן פטור או הגנה מאחריות, ובין שעניינן אחר), אם מתגבשות אצל התאגיד תכונות אנושיות, כגון מחשבה פלילית (מודעות, כוונה), פעולה אקטיבית, פעולה וכיוצא באלה. תורת האורגנים גורמת לכך כי התאגיד יוכל לקיים תכונות אנושיות אלה. על כן עשוי תאגיד להיות אחראי (אזרחית, פלילית או אחרת) גם אם הוא עצמו אינו אחראי... במובן אחר, ומנקודת מבטה של שיטת המשפט, האחריות הפלילית האישית המוחלטת היא ״מוחלטת״ יותר, שכן באחריות השילוחית, לעיתים קרובות, העבירה שנעברה על-ידי השלוח או העובד היא עבירה הדורשת מחשבה פלילית, וזו התקיימה אצל האחראי הישיר (ראה ע״פ 378/78 [7], בעמ׳ 443; המ׳ 95/80 [6], בעמ׳ 664). מכאן, שהאחריות של התאגיד באמצעות תורת האורגנים אינה ענף של האחריות המוחלטת״.

69. הנה כי כן, פסיקת בית המשפט העליון ברורה. לתאגיד אחריות שילוחית למעשיהם של הפועלים מטעמו, וכן אחריות בנזיקין בגין פעולות שגרם. המבחן לכך הינו עובדתי בעיקרו (מי ביצע את המעשה / גרם לנזק?) ואין כל כך משמעות ליסוד נפשי ו/או כוונה נדרשים שאינם רלוונטיים בעניינים אלה. במקרה של דין פלילי, בעבירה בה נדרש יסוד נפשי, ניתן בעזרת ובאמצעות תורת האורגנים, לייחס לתאגיד את הידיעה ומכאן את היסוד הנפשי הנדרש. בפס״ד מודיעים, בסופו של דבר, הורשעה החברה בעבירת התנועה שבה עוסק פסה״ד.

70. לטעמי, במקרה דנן, מתקיימים גם התנאים והמבחנים אפילו ברף הגבוה הנדרש באחריות לפלילים בהתאם לתורת האורגנים כנ״ל. הרי מדובר על קבלת תרומות בסכומים ניכרים. מדובר גם על עמותות שהתחייבה, מראש, להוצאת כספים, במיליוני דולרים ללא שסכומים אלה בקופתה. הרי ברור כי אלמלא מעורבות האורגנים ו/או שלוחים של הנתבעים בהעברת הכספים, והידיעה שלהם בדבר מקורם, איש מחברי ישעיה לא היה מעז לחתום על התחייבות כזו והנתבעים עצמם לא היו מסכימים להסתמך עליה. כפי שנמצא בפס״ד מודיעים, תאגידים, בסופו של דבר, מופעלים על ידי בני אדם, וברור כי בני האדם במקרה זה, ידעו ופעלו להטיב עם הנתבעים.

71. מכל מקום, במקרה דנן, כפי שציינתי, כל הדיון לגבי הדין הפלילי כנ״ל, ותורת האורגנים, הינם הרבה מעבר לדרוש, שכן אין אנו מצויים בשדה הפלילי אלא במישור האזרחי, בו נטל הראייה וחובת ההוכחה מופחתים בהרבה. בהקשר זה של פס״ד מודיעים, מצאתי מדויקים את דבריו של בהמ״ש בת.א. (שלום, ירושלים) 3811/02 **ידיד ואייל סחר בע״מ נ׳ משטרת ישראל בית שמש** (פורסם ב׳נבו׳, 2.6.2002), אשר מסכם את ההלכה בעניין זה כדלקמן :

> ״השאלה היא מיהו ארגון של החברה לצורך כך. בפס״ד מודיעים הושארה שאלה זו בצריך עיון כיוון שהחברה לא התייצבה למשפט וראו אותה אחראית באחריות אישית. המבחן להיותו של אדם ארגון

-15-

בחברה הוא מבחן חילופי - ארגוני ופונקציונלי. ארגוני - על פי תפקידו של אדם בחברה (בעל מניות,
מנהל), ופונקציונלי - באם ניתן לייחס לחברה את מעשיו. מבחן זה נקבע לאחרונה בסעיף 46 לחוק
החברות החדש, אך היה מקובל קודם בפסיקה. ... "לעניין נהיגת ברכב, על פי המבחן הקבוע בסעיף
23 נראה כי ניתן, על-פי המבחן הפונקציונלי, לייחס לחברה את פעולתו של הנהג, ואין צורך כי הנוהג
ברכב יהיה מנהל בחברה או בעל מניות בה. כפי שמציין פרופ' פרוקצ'יה לעיל, עברייה מחסום שבנידון
תתבצע ככלל ע"י "ידי רקק", כלומר, בידי נהגים. הטלת אחריות פלילית על החברה בשל מעשיה
תביא לכך כי המנהלים ידאגו לתת הוראות מתאימות, כך שהוראות החוק יאכפו בצורה טובה יותר.
אולם, גם אם לא תתקבל מסקנתי זו, כפי שאפרט להלן, החברה תהיה אחראית במקרה זה מכח
אחריות שילוחית. ... במקרה שלפנינו נתפש נהג שהוא עובד חברה וביצע את העבירה במהלך נסיעת
עבודה בשירות החברה...
... סוג העבירה בה מדובר הינה מסוג העבירות בה יש לייחס לתאגיד אחריות שילוחית.  ... במקרה
שלפנינו הטלת אחריות שילוחית על תאגיד בהחלט תהייה החלטה לטובת הציבורי".

72. מניסיוני כשופטת בבית המשפט המחוזי בישראל במשך שנים רבות, על פי הדין בישראל כיום, יש לייחס לנתבעים
את ידיעתם והתנהלותם אנשי הסגל שלהם, כמו גם זו של עו"ד גרין.

### ד.2. **התייחסות להפניית פרופ' ליכט לפס"ד מליסרון:**

73. פרופ' ליכט נסמך בהתהרותו גם על פסיקת בהמ"ש העליון בעניין מליסרון. בעניין מליסרון קבע בהמ"ש העליון
מפורשות כי המבחנים בנוגע להיותו אדם אורגן של תאגיד מתבססים על השכל הישר, ואינם בחינת "רשימה
סגורה", ויכולים להשתנות בהתאם למבנה הארגון, לאופי הפעילות ולאופן חלוקת הכוחות והסמכויות, וכן לאור
שיקולי מדיניות משפטיים. דברי לעיל בנוגע לפס"ד מודיעים, חלים ביתר תוקף בעניין זה. גם כאן, מצויים אנו ברף
הגבוה יותר שאינו נדרש בענייננו, במיוחד בכל הקשור לפסה"ד מליסרון העוסק בעבירות בניירות ערך.

74. בפסק הדין בעניין מליסרון קבע בית המשפט העליון כי על מנת שתאגיד יוכל להתנהג מפעולה שביצע אורגן
מטעמו, עליו להוכיח כי מדובר בפעולה שהיונ לרעת התאגיד. קריאת מלוא פסק הדין של בהמ"ש עצמו בעניין
מליסרון מלמד כי ההלכה שנקבעה בנוגע לדין הפלילי של תאגיד (החמור יותר), מוצגת כדלקמן :

"אשר לפן הפלילי, הרלבנטי לענייננו, אף שהוא יציר הפסיקה מעיקרא...כפי שנפסק, אין בסעיף זה
כדי להצר תחולתה של תורת האורגנים כפי שזו פותחה בפסיקה, אלא אך ליתן לה עיגון מפורש
בחקיקה ראשית  קטו. בבסיס תורת האורגנים ניצב, כמובן, הארגון, אותה יד ארוכה בכירה של
החברה. בפסיקה ובספרות נהוגים שני מבחנים חלופיים לבחינת השאלה האם ייחשב פלוני כאורגן
בתאגיד אלמוני. המבחן הראשון, המבחן הארגוני ... המבחן השני, המבחן הפונקציונלי. .. שני
המבחנים, שהם ילידי השכל הישר, אינם נוחמים את כל התפקידים הכולים לבוא בגדר
אורגנים ברשימה סגורה, ולא בכדי :   "אכן, מכורח המציאות, הבזיטו ארגונים ונושאי-משרה
בכירים אחרים בתאגיד הוא אמורפי משהו, ואינו מתונים מסגרת מדינקת ואחידה לדיון. אולם הגיונו
ברור. הוא נועד לחבנים את כלל הדמויות המכריעות ואת מוסדות הצמרח שיש לה להתייחם לתפקידים
לעיצוב מדיניותו ולהפעלת ולהפעלת עיקר פעולותיו כלפי פנים וכלפי חוץ, בלא להתייחס לתוארי התפקידים
או המשרות. רשימת התפקידים והמשרות אינה אחידה לכל התאגידים, ובחלקה היא תשונה פנים
בהתאם למבנה הארגון, לאופי הפעילות ולאופן חלוקת הכוחות והסמכויות של הגון נשוא הבחינה.
גם שיקולי מדיניות משפטיים יטלו יש לא אחת חלק בקביעת המסגרת, ומטבע הדברים יגבר משקלם
במקרי הגבול" .... הפסיקה הצביעה בריבוי על כך שעסקינן במבחנים חלופים ...".

75. זאת ועוד, לאחר שביהמ"ש העליון דן בהרחבה בשאלות ובמבחנים שהגדיר, הוא קובע כי למעשה שיקולי מדיניות
משפטיים בדין הפלילי, הם העומדים בבסיס השאלה אם להרשיע תאגיד בפלילים, כאשר היקף
הסכום הכספי שנידון הינו שיקול משמעותי לעניין קביעת אותה מדיניות ציבורית. כמו בעניין מודיעים, גם בעניין

מליסרון, שיקולי מדיניות שיפוטית בתחום הפלילי הם שהכריעו את הכף, ובשני המקרים ההרשעה בפלילים נותרה בעינה. גם במקרה דנן, ע״פ שיקולי מדיניות משפטית וציבורית בישראל כיום, יש לייחס את לנתבעים את הידיעה וההתנהלות של אנשי הסגל שלהם  כמו גם את אלו של עו״ד גרין.

76. בנוסף, כאשר הנתבעים הם גופים ציבוריים (או דו-מהותיים) מוטלת עליהם חובת תום לב והגינות מוגברות, ולכן שיקולי מדיניות משפטית מובילים למסקנה כי מקום בו התקיימה העברת כספים בסכומים כה ניכרים המצריכים משנה זהירות ובדיקה, הידיעה תיוחס ללא קשר לטענות מקבל אותם כספים לעניין ידיעתו ו/או תום ליבו. המגמה בדין הישראלי היא שכך יש לנהוג בהתאם לשכל הישר וההגינות, ולא פחות מכך בשל מדיניות תקיפה של מלחמה בהון שחור, בהלבנת הון וכיוצ״ב.

### 3.ד. התייחסות פרופ׳ ליכט לדברי המלומדים פלר ואח׳:

77. בסעיף 35 (עמוד 15 להצהרתו), מתייחס פרופ׳ ליכט לדברי המלומד פרופ׳ פלר (וכן בהמשך לדברי פרופ׳ מרדכי קרמניצר). בפס״ד מודיעים, בהמ״ש מצטט מדברי פרופ׳ פלר ומציג את משנתו, וכן מפרט את הטיעונים הרבים כנגד עמדתו של פרופ׳ פלר, כדלקמן:

> "...ראה ש׳ ז׳ פלר, יסודות בדיני עונשין (המכון למחקרי חקיקה ולמשפט השוואתי ע״ש הרי סאקר, כרך א׳, תשמ״ד 105 ... <u>על-כן גורם פרופ׳ פלר</u>, כי עקרונות אין להטיל אחריות פלילית אישית על תאגיד (למעט בעבירות מחדל שאינן דורשות מחשבה פלילית), ויש להסתפק באחריות האורגנים (במישור הפלילי) ובפירורית התאגיד (במישור האזרחי) ... <u>כנגד גישה זו ניתן לומר, כי היעדים החברתיים, אותם מבקשת החברה להשיג באמצעות המשפט הפלילי, עולים בקנה אחד עם הכרה באחריות פלילית אישית של התאגיד</u>. בחברה המודרנית, התאגיד הוא בסיס עיקרי לפעילות אנושית. ישנן מדינות בהן יש יותר תאגידים מבני אדם. במקום שבמסגרת התאגיד מתרחשת התנהגות הנתפסת על-ידי החברה כעבריינית – העלמת מס, הפרת חוקי תכנון ובנייה, ניהול פעילות הנוגדת את המוסר הציבורי (סרסרות לזנות) וכיוצא בהם – מקדמים את הערכים שהחברה רוצה להגן עליהם על-ידי הטלת אחריות פלילית אישית על התאגיד ... <u>אכן, נקודת המוצא של המשפט הישראלי הינה, כי תאגיד נושא באחריות פלילית אישית. עקרונית, כל עבירה פלילית, אשר האינטרסים המוגנים על-ידיה עשויים להיפגע על-ידי התאגיד, מטילה אחריות פלילית אישית על התאגיד.</u>"

78. הנה אפוא, בהמ״ש לא קיבל את עמדתו של פרופ׳ פלר, וכאמור, בפסקי הדין בעניין, <u>במישור הפלילי</u>, נקבע כי למעשה המבחן הינו תוצאה של מדיניות שיפוטית וציבורית כנ״ל. מדיניות אשר מתקיימת בענייננו "שלא יצא חוטא נשכר". הדברים כנ״ל נכונים גם לגבי הפנייה פרופ׳ ליכט לדברי המלומדים קרמניצר וגנאים, אשר אף היא מצאה ביטוי בפסה״ד של בהמ״ש העליון בעניין מליסרון, אשר מתייחסים לדברי קרמניצר וגנאים, בין היתר, כדלקמן:

> "<u>המבחן הראשון, המבחן הארגוני – ...ראו...מ׳ קרמניצר וח׳ גנאים "האחריות הפלילית של התאגיד"</u> ספר שמגר – מאמרים – חלק ב׳ 87 (תשס״ג-2003) (להלן קרמניצר וגנאים)). ... מבחן השני, <u>המבחן הפונקציונלי ...ראו גם... קרמניצר וגנאים, בעמ׳ 87-88</u>). קט״ז. שני המבחנים, שהם ילידי השכל הישר, אינם תוחמים את רשימת בעלי התפקידים היכולים <u>לבוא בגדר אורגנים ברשימה סגורה</u>, ולא בכדי ...:<u>רשימת התפקידים והמשרות אינה אחידה לכל התאגידים, ובחלקה היא תשנה פנים בהתאם למבנה הארגוני, לאופי הפעילות ולאופני חלוקת הכוחות והסמכויות ועל הגוף נשוא הבחינה. גם שיקולי מדיניות משפטית מצטרפים יטלו לא אחת חלק בקביעת המסגרת, ומטבע הדברים יגבר משקלם במקרי הגבול</u>,... ראו גם קרמניצר וגנאים ,בעמ׳ 89). ... עיון בפסיקת בית המשפט זה מעלה, כי עד כה <u>לא נעשה שימוש במבחן זה על מנת לשלול תחולתם של תורת האורגנים מכל וכל, והדיון, ככל שהיה, נשא אופי תיאורטי בלבד (עניין מודיעים, בעמ׳ 385) ; כך למשל, אף בעבירה של גרימת מוות ברשלנות,</u>

אשר ניתן לכאורה לטעון כי היא בעלת אופי "אנושי", נמצא כי יש למצוא את התאגיד חייב בפלילים, לעניינו הפרת פקודת הבטיחות בעבודה ... לכך אוסיף, כי כפי שמצויינים קרמניצר וגנאים, ספק רב אם יש מקום לקביעה קטגורית, ויש לבחון כל מקרה לגופו (קרמניצר וגנאים, בעמ' 94-95) ... כפי שמצויינים קרמניצר וגנאים, צידוק עיקרי בהשתת אחריות על התאגיד בגין מעשי הפרט נובע מכך שהפרט פעל כדי להיטיב עם התאגיד, ולכן, כאשר פעל נגד **התאגיד, לא יהיה זה מוצדק לחייב את התאגיד בגין מעשיו (קרמניצר וגנאים, בעמ' 98-99)".**

79.    הנה כן כן, גם בהמ"ש עצמו קובע כי בפועל, כל מקרה יבחן לגופו, כאשר שיקולי מדיניות משפטית וציבורית יכולים להטות את הכף בצורה משמעותית לכיוון חיובו של התאגיד בפלילים בגין מעשים שביצע אורגן. מכל מקום, לא ראיתי להתייחס בהרחבה להפניית פרופ' ליכט למלומדים, היות ומדובר בנושא שנידון בהרחבה והוכרע בפסיקה, ותאוריות ורעיונות שהועלו על ידי מלומדים, בודאי כאלה שהיו ידועים בעת מתן פסקי הדין כנ"ל, אינם בכל הכבוד, הדין בישראל. <u>בהמ"ש העליון בישראל קבע</u> שמדובר בדינים תיאורטיים, בלבד, וכי <u>בפועל בישראל, אפילו בעבירות שהינן לכאורה אנושיות, ניתן לייחס לתאגיד ידיעה ולמצוא אותו אחראי בפלילים, כמו למשל גרימת מוות ברשלנות וכיו"ב,</u> כפי שנפסק למשל בת"פ (שלום, ת"א) 3935-02 **פרקליטות מחוז ת"א - פלילי נ' חברת החשמל לישראל בע"מ** (פורסם בינבו, 20.12.2005).

80.    פירושים של הדברים, להלכה ולמעשה, כי מרוב עצים לא רואים את היער. מרוב מבחנים ותורות והנחות היה ניתן לאבד את העיקר וכללי הצדק הבסיסים. בהמ"ש קובע כי הדבר כי לא נעשה, כי פעם אחר פעם, עיני בהמ"ש נשארו פקוחות והוא הביט על תוצאת פסיקתו, מעבר למבחנים עצמם, כך שתעלה בקנה אחד עם מדיניות אחריות פלילית, ציבורית ומשפטית ראויה. ובמקרה דנן, המדיניות הראויה, הינה כי יש לייחס את ידיעתם והתנהלותם של אנשי הסגל ושל עו"ד גרין לנתבעים שהם גופים ציבוריים שקיבלו לידיהם כספים רבים שהושגו במסגרת הונאה.

## **4.ד.    פרופ' ליכט שגה בקביעתו כי חבר דירקטוריון יחיד אינו יכול להיות אורגן של החברה:**

81.    המבחנים, כפי שהוצגו לעיל הם האם האורגן פעל לטובת התאגיד וכיוצ"ב, מבחנים של שיקולי מדיניות משפטית וציבורית כמפורט לעיל. כל המבחנים הנ"ל מתקיימים בענייננו, וברור כי האורגנים של הנתבעים פעלו בתוך עמותות ישעיה בכדי להטיב בכדי עם הנתבעים, ולהעביר להם כספים בכמויות עצמאות. המדיניות השיפוטית, המשפטית, הציבורית, והכלכלית בישראל כיום תחייב את ייחוס הידיעה וההתנהלות לנתבעים.

82.    בסעיפים 38 ואילך להתארתו, פרופ' ליכט כותב דברים, אשר בכל הכבוד, אינם עונים בקנה אחד עם הדין בישראל. כך לדוגמא, דבריו בסעיף 41 לפיהם בהעדר הרשאה ספציפית, חבר יחיד מחברי הגוף המנהל של התאגיד לא ייחשב אורגן של התאגיד, ידיעתו לא תחשב ידיעת התאגיד וכו'. בכל הכבוד, הדברים אינם נכונים בעליל.

83.    הרי, כמצוטט לעיל, מתוך פסקי הדין אליהם הפנה פרופ' ליכט עצמו - פסה"ד של בהמ"ש העליון בעניין מודיעים ובעניין מליסרון, הורשעו החברות בגין מעשים שהם לא אישרו לאורגן שפעל מטעמם לעשות. חברת מודיעים לא אישרה למי שנהג ברכב מטעמה לבצע עבירת תנועה, וחברת מליסרון לא אישרה לאורגנים שלה לבצע עבירות בניירות ערך. אפילו שגם מודיעים וגם מליסרון לא נתנו לאותם אורגנים הרשאה מלכתחילה, וגם לא אישרו את מעשיהם בדיעבד בשום דרך, בתי המשפט הרשיעו אותן בדין פלילי בכל זאת וייחסו להן את מעשיהם וידיעתם של האורגנים שלהן, למרות שאורגנים אלו לא היו חברי הנהלה.

84. בדומה להגדרת התפקיד הפורמאלית לפי תורת האורגנים, גם עניין ההרשאה הינו חסר משמעות ממשית. אחרת כל תאגיד יוכל לחמוק מאחריות, באומרו "אני לא אישרתי את ביצוע הפעולה". הדברים חסרי שחר ואינם מתארים נכונה את הדין כיום בישראל. גם האמור בסעיף 42 ואילך להצהרת ליכט, בכל הכבוד, חסר שחר. לשאלה אם אותו אורגן חרג מהרשאה אין משמעות ממשית. הרי פסקי הדין שהוצגו לעיל, ואפילו בפסה"ד שהוצגו על ידי פרופ' ליכט להצהרתו, אין מקרה בו חברה נתנה הרשאה לאורגן מטעמה לבצע עבירה פלילית. בפועל כל האורגנים שבפסקי הדין פעלו בחוסר הרשאה, ואין בכך לשנות כהוא זה מהרשעת אותם תאגידים בפלילים בגין מעשי האורגנים שלהם שיוחסו לאותם תאגידים.

### ד.5.  התייחסות להפניית פרופ' ליכט לפסה"ד גוטסדינר:

85. בסעיף 43 להצהרת ליכט הוא מפנה לפסה"ד של בהמ"ש העליון בע"פ 7621/14 **אהרן גוטסדינר נ' מדינת ישראל** (פורסם ב'נבו', 1.3.2017) (להלן : **"גוטסדינר"**). בכל הכבוד, המדובר בפסק דין שהינו בלתי רלוונטי בעליל לסוגיה דנן. המדובר בתרמית במסגרתה הציגו עובדי מדינה תעודות אקדמאיות ואחרות כדי לקבל שכר, בעוד המוסדות שהעניקו את התעודות לא עמדו ברמה הנדרשת. בהמ"ש קבע כי טענת הנאשמים לפיה רק הם הועמדו לדין ולא בכירים בשרות המדינה אינה נכונה ואינה משמשת הגנה מן הצדק. שכן לא ניתן לייחס למדינה ידיעה אודות פעולות בלתי חוקיות שבוצעו. אין לכך קשר למקרה שלנו.

86. בעניין זה דובר בטענת הגנה של הנאשמים של הנאשמים לצורך הקלה בעונשם בנוגע למדינה שהעסיקה אותם ולא העמידה עובדים אחרים לדין, כלומר <ins>בטענת מי שטענו שהם אורגנים, ולא בטענת הגנה של תאגיד</ins>. עוד אציין כי גם כאן מדובר בהשוואה מהתחום המתחום הפלילי, לתחום האזרחי שבענייננו, וחרף זאת, גם בגוטסדינר בהמ"ש הרשיע את המעורבים בפרשה.

87. העובדה כי פרופ' ליכט מצא לנכון לסמוך את התאוריה אותה הוא מציג בהצהרתו, על פס"ד גוטסדינר משמשת כחרב פיפיות בידיו, באשר יש בכך להוכיח כי לא עלה בידיו, להציג פסיקה רלוונטית של בהמ"ש התומכת בדעתו. הדברים שכתבתי לעיל נכונים גם ביחס ליתר פסקי הדין הנזכרים בהמשך עמוד 19 להצהרתו של פרופ' ליכט (כולל אלה הנזכרים שם, בהערת שוליים מספר 33). אך היות ופרופ' ליכט עצמו לא פירט לגביהם, אינני מוצאת צורך שאעשה כן ואציג מדוע אינם רלוונטיים.

### ד.6.  התייחסות להפניית פרופ' ליכט לפסה"ד בובליל:

88. בסעיפים 46 – 50 להצהרת ליכט (בעמוד 19) הוא מבקש להסתמך על אמירות מתוך פסה"ד של ביהמ"ש המחוזי בת"פ (מחוזי, ירושלים) 22847-12-10 **מדינת ישראל נ' נסים בובליל** (פורסם ב'נבו', 13.09.2018) (להלן : **"בובליל"**). ראשית, מדובר בפס"ד של בית משפט מחוזי שאין בו חידוש או שינוי מן ההלכות שנקבעו באופן נרחב בפסיקתם בהמ"ש העליון ומצוטטות בו, הן בנוגע לתורת האורגנים והן בנוגע לשאלת "מיהו אורגן". לפיכך עם כל הכבוד, אין טעם ממשי בהפניה לפסה"ד בובליל, העוסק בנושאים שהוכרעו בערכאה גבוהה יותר. שנית, גם בפס"ד בובליל, מדובר בהליך פלילי ולא בהליך אזרחי שהרף בו נמוך יותר, ושוב גם בפס"ד זה, בהמ"ש הרשיע בפלילים הן האורגנים והן את התאגידים הנאשמים.

89. בעניין בובליל, בית המשפט החליט שלא לייחס את מעשיו של אחד הנאשמים שם, בשם פולידור פרץ (להלן : **"פרץ"**), לארגון בשם ה"התאחדות הקבלנים הבונים והבונים בישראל (להלן : **"ההתאחדות"**) שפרץ שימש כאחד מ-22 חברי הנשיאות שלו. פרופ' ליכט טוען כי ההחלטה שלא לייחס את מעשי פרץ להתאחדות מוכיחה כי לא ניתן לראות

בחבר הנהלה יחיד של תאגיד, שעל פי מסמכי ההתאגדות שלו אינו מוסמך לחייב לבדו את התאגיד, כאורגן של אותו תאגיד. קביעה זו של פרופ' ליכט מנוגדת לדין ומתעלמת מן הנסיבות הספציפיות אותו מקרה (שבו ממילא הורשעה ההתאחדות מכוח מעשיו של אורגן אחר שלה) ומן השוני שלו מענייננו. ראשית, מעשיו של פרץ (החרמת מכרז שעלתה לכדי כהסדר כובל) לא היטיבו ולא נועדו להיטיב עם ההתאחדות אלא עם עצמו (נהפוך הוא, ההתאחדות קיבלה חוות דעת שמעשיו עשויים להיות בניגוד לחוק). שנית, ההתאחדות לא אישרה את מעשיו לא מראש ולא בדיעבד – (נהפוך הוא – בית המשפט המחוזי השתכנע כי ההתאחדות קיימה דיון בנוגע להצעת המהלך אותו הוביל פרץ, והחליטה שלא לאשר את המהלך ולא לתמוך בו – סעיף 253 לפס"ד בובלי). כלומר, בענייננו של פרץ כפי שנדון לפס"ד בובלי לא התקיימו שניים מן תנאים של המבחן הפונקציונאלי – פרץ לא ביצע מעשים שהועילו לתאגיד והתאגיד לא אישר אותם מראש ולא אישר אותם בדיעבד, לא במפורש ולא בהתנהגות. בנסיבות אלו ניתן להבין מדוע בית המשפט המחוזי החליט שלא לראות בפרץ אורגן של ההתאחדות לצורך אותו אישום.

90. שונים הדברים לחלוטין מענייננו, שבו אנשי סגל בכירים בנתבעים, כמו גם עו"ד גרין פעלו במשך שנים על גבי שנים במסגרת עמותת ישעיה על מנת להעביר כספים בסכומים עצומים לנתבעים, תוך שהנתבעים קיבלו סכומים אלו לתודתה. בנוסף וכפי שכבר ציינתי, בענייננו מדובר בהליך אזרחי שאינו מצריך רף ודאות גבוה כבהליך פלילי ומה שהתובעת מבקש לייחס לנתבעים הוא ידיעה של האורגנים ו/או שלוחיו שלהם אודות מקור הכספים שישעיה העבירה לנתבעים ולא דווקא מעשים מסוימים שלהם.

91. אדגיש – אנשי הסגל של הנתבעים לא ישבו בישעיה כדי לאשר מאמרים/תארים אקדמאים או קידום של אנשי סגל והם גם לא כתבו במסגרתה מחקרים, אלא רק פעלו ללא לאות לאשר ולהעביר סכומים ניכרים של כספים לנתבעים.

92. פרופ' ליכט מצטט את סעיפים 243 – 247, 249 ו- 260 לפסק הדין, כאשר, לדעתי, הסעיפים הרלוונטיים בהם חוזר ביהמ"ש המחוזי על הכללים הידועים, הינם סעיפים 239 – 242 בהם מסכם ביהמ"ש את ההלכות והכללים בסוגייה של חיוב תאגיד בפלילים בגין עבירה שביצע אורגן, באופן מדויק לאלה שנסקרו על ידי בהצהרה זו. כך :

"239. ... על פי סעיף 23(א)(2) לחוק, תאגיד יישא באחריות פלילית לעבירה המצריכה הוכחת מחשבה פלילית או רשלנות אם 'בנסיבות הענין ולאור תפקידו של האדם, סמכותו ואחריותו בניהול ענייני התאגיד, יש לראות במעשה שבו עבר את העבירה, ובמחשבתו הפלילית או ברשלנותו, את מעשהו, ומחשבתו או רשלנותו, של התאגיד'.

240. ... אך גם נושא משרה שאינו בכיר עשוי להיחשב כאורגן התאגיד, וזאת אם על-פי מסמכי התאגיד או על-פי מקור נורמאטיבי אחר רואים את פעולתם ומחשבתם כפעולת התאגיד עצמו' ... נקבעו שני מבחנים חלופיים אשר על בסיסם יש להכריע האם יש לראות באדם מסוים כאורגן בתאגיד – מבחן אחד הוא המבחן הארגוני ... והמבחן השני הוא המבחן הפונקציונאלי ...

241. ... שאלה אחרונה זו היא שאלה של מדיניות משפטית אשר לאורך השנים עוצבו מספר מבחני עזר שנועדו לסייע לעננות עליה – בתי המשפט נדרשים לבחון האם דבר החקיקה לא התכוון להוציא מתוכו את האפשרות להטיל אחריות על התאגיד, האם פעולת האורגן נעשתה במהלך מילוי תפקידו וכן האם הפעולה הייתה לטובת התאגיד או לכל הפחות לא כוונה נגדו. ...

242. ... הפסיקה קבעה כי יש לפרש בהרחבה את גדר המצבים אשר יכללו תחת הביטוי "במילוי תפקידו". (שם, בפסקה ק"כ)

**7.7.** **טענות פרופ' ליכט בנוגע להרמת מסך :**

93. בשולי הצהרתו (סעיפים 77 – 80) טוען פרופ' ליכט כי אין להתיר הרמת מסך בין חברה לחברת בת ללא שהתקיים
ניצול לרעה של המבנה התאגידי לשם פגיעה בנושים. פרופ' ליכט שוגה גם בזאת.

94. אני מניחה שכוונתו של פרופ' ליכט היא לעובדה שחלק מהנתבעים פעלו באמצעות חברות או גופים שבשליטתן.
זוהי פרקטיקה נוהגת בישראל, בהם גופים ציבוריים וארגונים ללא מטרת רווח בדומה לנתבעים, מבצעים פעולות
בעלות אופי מסחרי מובהק באמצעות חברות או גופים שבשליטתן.

95. בניגוד לנאמר בהצהרת ליכט, במקרה דנן, במסגרתה הועברו הכספים לנתבעים, או לחברות שבשליטתן, ע"י
ארגונים ושלוחים של הנתבעים, כאשר יעד הכסף הסופי להעברה נקבע על ידם, הרי שאין משמעות ממשית
לאישיות המשפטית הנפרדת של החברה מהנתבע שהיא בבעלותו. אין הבדל בין העברת כספים לאוניברסיטה ובין
העברת כספים לחברה בבעלותה ובשליטתה המלאה.

96. במקרה זה, **תהיה זו הנחה סבירה ביותר כי בהמ"ש ירים את מסך ההתאגדות.** במקרה שלנו חלות כל
האלטרנטיביות שנקבעו בסעיף 6 לחוק החברות (ראה סעיף 77 להצהרת ליכט), ודי בכל אחת מהן, כדי להרים את
מסך ההתאגדות מעל החברות שבשליטתן של הנתבעים הראשיים (האוניברסיטאות) וליחסו לנתבעים הראשיים
עצמם. הרי הנתבעים הראשיים, באמצעות אורגניהם ושלוחיהם בעמותות ישעיית שמשכה את כספיה מ- BLMIS,
החליטו על העברת הכספים כאוות נפשם, בין אם לעצמם ובין אם לחברות בשליטתם. למסך ההתאגדות ובמקרה
זה אין משמעות, וברור כי הרמתו הינה "צודקת ונכונה". כבר הרחבתי בעניני חזקת הידיעה של הנתבעים, הידיעה
הקונסטרוקטיבית וכי, תום ליבם המוגבר הנדרש לאור היותם גופי ציבוריים וכי, והכל מוביל למסקנה כי
**לנתבעים אין הגנה ממשית מפני הרמת מסך כנ"ל.**

97. במקרה זה אפילו אין צורך להיזקק לחזקת הידיעה הקבועה בסעיף 6(א)(2) לחוק החברות, לפיה קיימת חזקת
ידיעה כאשר יש "חשד בדבר טיב ההתנהגות". אך בבחינת למעלה מן הצורך, הרי שגם חזקת ידיעה זו מתקיימת
במקרה זה, וחזקה על הנתבעים שידעו מהו מקור הכספים שישעיית מעבירה להם. פסק דין שניתן לא מזמן ע"י
בהמ"ש העליון, בע"א 8416/19 **עו"ד שלמה נס ורו"ח אלי שפלר מפרקי חברת אגרקסקו חברה לייצוא חקלאי
בע"מ נ' מדינת ישראל** (פורסם בנבו, 22.12.2021), קבע כי יש לפרש בהרחבה את חוק החברות בנוגע להרמת
מסך והשיקולים והמקרים בהם יורם מסך ההתאגדות, ולא רק במקרה של חדלות פירעון ופירוק חברה, וכן כי
הרמת מסך הינה כלי "רחב היקף", כדלקמן :

> "... תכליתה של הרמת המסך היא למנוע שימוש לרעה באישיות המשפטית הנפרדת של החברה,
> ולהגן על נושים חיצוניים מפני התנהגות בלתי נאותה של החברה ובעלי מניותיה ... למעשה, ניתן
> להעלות על הדעת מגוון שיקולים לעתור להרמת מסך התאגדות חברה וחשיפת בעלי המניות
> המסתתרים מאחורי מסך ההתאגדות אף מבלי שהחברה נקלעה לחדלות פירעון ... הרמת מסך
> מהווה אפוא נדבך חשוב בדיני חברות ואינה מוגבלת לנסיבות של חדלות פירעון ... השיקול המעשי
> בנקיטת הליך הרמת מסך, רק כאשר תאגיד מתקשה לשאת בחובותיו, אינו מכתיב פרשנות מצמצמת
> של הנורמה החקיקתית. הוא ודאי אינו מגביל אותו. אדרבה, בחלק נכבד של המקרים, כאשר שיעור
> החובות נמוך מכדי להצדיק הליכי פירוק של חברה, תיבחר הרמת מסך כצעד חלופי מעשי יותר ...
> הרמת מסך משמשת אפוא כלי להרחבת מעגל היריבות, וליצירת יריבות ישירה בין הנושים לבין

בעלי המניות. תחולתה של הרמת מסך הינה רחבה וחולשת על תחומי משפט רבים ... מדובר אפוא בכלי רחב היקף, שאופיו ייחודי".

98. אכן, מדובר בפסק דין של בהמ"ש העליון מהזמן האחרון, אולם אין מדובר בשינוי מגמה. דברים דומים נפסקו על ידו זה מכבר. כגון ברע"א 510/00 **ח. רשף קבלנים (1990) בע"מ נ' אילנה ענבר**, נד(2) 712 (2000), הרים בית המשפט את מסך ההתאגדות בין חברות קשורות, כדלקמן:

"הרמת המסך מוכרת ואפשרית בהיקף זה או אחר, הכל לפי טיבו של העניין, הן כדי למנוע מבעלי מניות בחברה או מהחברה כתאגיד ניצול ההפרדה שביניהם להשגת מטרה לא כשרה, הכרוכה ממילא בפגיעה בזולת, בקיפוחו או בהסבת נזק לו, והן לשם עשיית הצדק, והיושר ושמירה על טובת הציבור" ... "אין להתעַרב במסקנה כי החברה המבקשת והחברה החייבת הינן חברות קשורות אשר בנסיבות העניין ראוי להרים את המסך ולראותן כישות כלכלית-עסקית אחת".

## ה. **סיכום ומסקנות:**

99. בהינתן מסקנותי לגבי הנושאים והעניינים המשפטיים הנ"ל, ובשקלול המידע הרלוונטי שהוצג בפני כאמור לעיל בהצהרתי זו, הרי שהמסקנה המתבקשת הינה כי על פי הדין הישראלי – הן מכוח דיני התאגידים והן גם מכוח של דינים רלוונטיים אחרים – ידיעתם והתנהלותם של אנשי הסגל של הנתבעים, כמו גם של עו"ד גרין, שהיו מעורבים באישור העברת הכספים מארה"ב דרך עמותת ישעיה אל הנתבעים, היא גם ובהכרח ידיעתם והתנהלותם של הנתבעים .

100. בהתאם לסעיף 1746 לקוד 28 של ארצות הברית, אני מצהירה בזאת, בכפוף לעונשים בגין מתן עדות שקר, שאמירותיי דלעיל הן נכונות ואמיתיות.

ורדה אלשיך
סגנית נשיא בית המשפט המחוזי (בדימוס)

12 ביוני 2022

-22-

# Appendix A

### Curriculum Vitae

**Varda Alshech (Ms.)** Hon. (Ret.) Judge

**Born in Tel Aviv, Israel**

| | |
|---|---|
| 1967 | Graduate law school in the Tel Aviv Branch of Hebrew University of Jerusalem. 1967 Admitted to the (Israeli) Bar. |
| 1970-1972 | Private practice. |
| 1972-1978 | Tel-Aviv (Civil) District Attorney. Deputy District Attorney (Civil) with a judicial appointment. |
| 1974-1978 | Minister of Justice's representative at the District Planning and Construction Zoning Committee. At the same time, I was active with the Israeli Bar Association, as well as a member of the National Bar Council, until I appointed as a judge. |
| January 1978 | Appointed as judge at the Tel-Aviv Magistrate (Hashalom) Court. Practiced in all types of civil law. At the time of my appointment, I was the youngest judge appointed in Israel. |
| 1987 | Appointed as a Court Registrar at the Tel Aviv District Court. I practiced, among other things, in civil law, foreclosures, stay of exit orders, restraining orders, inheritance law and matrimonial law. |
| 1990 | Appointment as acting judge at the Tel Aviv District Court. Practiced in all types of civil law, except one year during which I presided in a panel of judges for serious crimes. |
| 1995 | Permanent appointment as judge at the Tel Aviv District Court. Practiced in many areas of civil law, including contracts, personal injury, real estate, commercial law, and I also presided on a panel of judges for civil appeals. |
| 1997 | In addition to the above practice areas, I was also appointed as a judge in the liquidation, receivership, recovery, and bankruptcy department. |
| 1999-2013 | Department manager. I presided over some of the largest liquidation, creditor settlements cases in the (Israeli) economy, such as Delek Real Estate, Africa Israel, the Bank of Commerce, Feuchtwanger Industries, Club Market, Habima Theater, Tevel International Communication, Burger Ranch, TWA Israel, PAN-AM Israel along with Delaware court, Ruppin Academic Center, Geographic Tours Ltd., Dan cooperative structural change from co-op into a company and many others.<br><br>I also presided over bankruptcy proceedings of diamond dealers, such as Assa Rubi (Yuval Gad Company) and others. My responsibilities were professional and executive, including assigning cases and issuing guidelines, both for the judges and the related advisors. The new position required handling over 2,000 new cases opened every year. The department ran without delays.<br><br>In 2006 I was appointed to be the Vice President of the Tel Aviv District Court. |

2

Retired in November 2013.

| | |
|---|---|
| 1979 et seq. | Member of the National Judicial Representation (except for two years) and between 2006 to 2012 served as the National Judicial Representation Chairlady. |
| | Within the National Judicial Representation, I was involved in handling key issues, such as: All negotiations on salaries, including components thereof and addons, as part of the Finance Committee and the Constitution Committee; Handling retirement issues for judges appointed after 1995; Representing the judges, as head of the delegation of judges in conferences by the European Association of Judges and the International Association of Judges. |
| 2013 et seq. | Since my retirement I served as arbitrator and mediator in various fields of law. I also served as a consultant in the debt settlement proceeding of Hadassah hospital in Jerusalem, and "Mega". I served as Chairperson for an independent committee for "Africa" Corporation. I am an arbitrator and mediator at the Center of Arbitration in Tel Aviv and provide advice for law firms in the areas of my past practice. |
| 2016 | Appointed as Director at Clal Insurance Enterprises Holdings Ltd., and as director I am a member of the Remuneration Committee, Audit Committee and Class Actions Committee. |
| 2021 | Appointed as external director at Denya Cebus Ltd. one of Israeli largest construction corporations. |
| 2021 | Appointed to the Managing Board of Ariel University – volunteer position. |

Since 2013 I am invited, from time to time, to lecture, at Tel Aviv University, "Lahav", accountants' continuing education, director courses and participates on professional panels.

<u>Publications</u>

| | |
|---|---|
| 2005 | First Edition of the book I wrote with my law clerk – "Stay of Proceedings: Law and Practice". This is the only book in existence, in Hebrew, on this issue, and which was in great demand, including printing of additional edition. |
| 2010 | Second Edition of the book I wrote with my law clerk – "Stay of Proceedings: Law and Practice" – was published. To date, it is the only book in Hebrew on the issue and it is used as a guide to all who practice the field. |

Married to Yossi Alshech, economist and financial advisor. We have three children and ten grandchildren.