**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff, | Adv. Pro. No. 11-02925 (CGM) |
| Plaintiff, | |
| v. | |
| CREDIT SUISSE AG; CREDIT SUISSE AG, NASSAU BRANCH; CREDIT SUISSE (LUXEMBOURG) SA; CREDIT SUISSE INTERNATIONAL; CREDIT SUISSE NOMINEES (GUERNSEY) LIMITED; CREDIT SUISSE LONDON NOMINEES LIMITED; AND CREDIT SUISSE (UK) LIMITED, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

William J. Sushon
Daniel S. Shamah
Kayla N. Haran
O'Melveny & Myers LLP
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000

*Attorneys for Credit Suisse AG; Credit Suisse AG, Nassau Branch; Credit Suisse (Luxembourg) SA; Credit Suisse International; Credit Suisse Nominees (Guernsey) Limited; Credit Suisse London Nominees Limited; and Credit Suisse (UK) Limited*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

BACKGROUND .................................................................................. 4

    A.    Credit Suisse ......................................................................... 4

    B.    The Funds ............................................................................ 4

    C.    The Trustee's Actions Against the Fairfield Funds ................... 4

    D.    The Complaint and Related Proceedings ................................. 5

LEGAL STANDARD ............................................................................ 7

ARGUMENT ...................................................................................... 7

    I.    THE COMPLAINT FAILS TO PLEAD A VOIDABLE TRANSFER. ............... 8

    II.    THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT THE CREDIT SUISSE REDEMPTIONS WERE BLMIS PROPERTY ..................... 10

    A.    The Trustee Does Not Adequately Allege That the Funds Transferred to Credit Suisse Originated with BLMIS. ............................ 11

    B.    The Trustee's Allegations Confirm That It Is Implausible That the Credit Suisse Redemptions Include BLMIS Customer Property .............. 12

    III.    THE TRUSTEE'S OWN PLEADINGS ESTABLISH THAT CREDIT SUISSE IS ENTITLED TO THE GOOD-FAITH DEFENSE. ........................... 13

    A.    Credit Suisse Received the Redemptions for Value. ................ 14

    B.    Credit Suisse Acted in Good Faith and Could Not Have Discovered Madoff's Fraud Where So Many Others Failed. .................. 15

    IV.    BANKRUPTCY CODE SECTION 546(e) BARS THE BULK OF THE TRUSTEE'S CLAIMS. ................................................................ 17

    A.    The Initial Transfers Were Made by, to, and for the Benefit of Covered Entities. ................................................................ 18

    B.    The Alleged Initial Transfers Were Made in Connection with Securities Contracts and Were Settlement Payments. ............... 20

    C.    The Trustee Has Not Pleaded Actual Credit Suisse Knowledge of the Madoff Fraud. ............................................................. 22

CONCLUSION ................................................................................... 22

# TABLE OF AUTHORITIES

Page

<u>**CASES**</u>

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................ 7, 12

*Atherton v. FDIC*,
519 U.S. 213 (1997) ........................................................................................ 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................ 7

*BLD Prods., LLC v. Viacom, Inc.*,
2011 WL 1327340 (S.D.N.Y. Mar. 31, 2011), *aff'd in relevant part, vacated in part, remanded sub nom. BLD Prods., LLC v. Remote Prods., Inc.*, 509 F. App'x 81 (2d Cir. 2013) ........................................................................................ 16

*CLC Creditors' Grantor Tr. v. Howard Sav. Bank (In re Commercial Loan Corp.)*,
2010 WL 1730860 (Bankr. N.D. Ill. Apr. 29, 2010) .......................................... 14

*Constellation Energy Commodities Grp. v. Transfield ER Cape, Ltd.*,
801 F. Supp. 2d 211 (S.D.N.Y. 2011) .................................................................. 8, 9

*David v. Bifani*,
2007 WL 1216518 (D. Colo. Apr. 24, 2007) ...................................................... 9

*Fairfield Sentry Ltd. v. Citco Glob. Custody NV*,
No. 19-1122 (Bankr. S.D.N.Y. Nov. 26, 2019) .................................................. 13

*Fairfield Sentry Ltd. v. Migani*,
[2014] UKPC 9 ................................................................................................ 20

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) .......................................... 20

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*,
2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ...................................... 17, 19

*Gilmore v. Rivera*,
2014 WL 1998227 (S.D.N.Y. May 14, 2014) ...................................................... 17

*In re Enron Corp.*,
333 B.R. 205 (Bankr. S.D.N.Y. 2005) .................................................................. 14

*In re Geiger*,
446 B.R. 670 (Bankr. E.D. Pa. 2010) .................................................................. 8

## TABLE OF AUTHORITIES
### (continued)

**Page**

*In re Old Carco LLC*,
    454 B.R. 38 (Bankr. S.D.N.Y. 2011)................................................................. 12

*In re Tribune Co. Fraudulent Conv. Litig.*,
    946 F.3d 66 (2d Cir. 2019)............................................................................... 21

*Jones v. Bock*,
    549 U.S. 199 (2007)......................................................................................... 17

*Levitch v. Columbia Broad. Sys., Inc.*,
    94 F.R.D. 292 (S.D.N.Y. 1982), *aff'd*, 697 F.2d 495 (2d Cir. 1983)................... 8, 9

*NCUA Bd. v. Morgan Stanley & Co.*,
    2014 WL 1673351 (S.D.N.Y. Apr. 28, 2014)...................................................... 8, 9

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
    2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010) ...................................................... 8

*Papasan v. Allain*,
    478 U.S. 265 (1986)........................................................................................... 7

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013)............................................................................. 12

*Picard v. ABN Amro Bank N.A.*,
    2020 WL 1584491 (Bankr. S.D.N.Y. Mar. 31, 2020) ................................. 1, 14, 15

*Picard v. ABN Amro Bank (Ireland) Ltd.*,
    505 B.R. 135 (S.D.N.Y. 2013)........................................................................... 22

*Picard v. Banque SYZ & Co., SA*,
    Adv. Pro. No. 11-02149 (Bankr. S.D.N.Y. June 14, 2022) ............................... 1, 22

*Picard v. Citibank, N.A.*,
    12 F.4th 171 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*,
    142 S. Ct. 1209 (2022)............................................................................. 7, 8, 15

*Picard v. Fairfield Sentry Ltd.*,
    Adv. Pro. No. 09-1239 (Bankr. S.D.N.Y. Aug. 28, 2020)............................... 10, 17

*Picard v. Fairfield Sentry Ltd.*,
    Adv. Pro. No. 09-1239 (Bankr. S.D.N.Y. May 9, 2011) ......................................... 5

*Picard v. Fairfield*,
    2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ............................................ 22

*Picard v. Ida Fishman Revocable Tr.*,
    773 F.3d 411 (2d Cir. 2014)................................................................... 17, 20, 21

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Picard v. Multi-Strategy Fund Ltd.*,
    Adv. Pro. No. 12-01205 (Bankr. S.D.N.Y. June 13, 2022) ............................................... 1, 22

*Picard v. Stanley Shapiro*,
    542 B.R. 100 (Bankr. S.D.N.Y. 2015) ............................................................................. 10, 11

Privy Council Decision,
    [2014] UKPC 9 ......................................................................................................................... 14

*Quilvest Fin. Ltd. v. Fairfield Sentry Ltd.*,
    Case Nos. HCVAP 2011/041–052 ............................................................................................ 15

*Russello v. United States*,
    464 U.S. 16 (1982) ................................................................................................................... 14

*Sapia v. Home Box Off., Inc.*,
    2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018) ........................................................................ 12

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) .................................................................. 21, 22

*SIPC v. Bernard L. Madoff Inv. Secs. LLC*,
    476 B.R. 715 (S.D.N.Y. 2012) ............................................................................................... 18

*Spool v. World Child Int'l Adoption Agency*,
    520 F.3d 178 (2d Cir. 2008) ...................................................................................................... 7

*United States v. Int'l Longshoremen's Ass'n*,
    518 F. Supp. 2d 422 (E.D.N.Y. 2007) ...................................................................................... 9

*United States v. U.S. Telecom Long Distance, Inc.*,
    2018 WL 4566673 (D. Nev. Sept. 24, 2018) .......................................................................... 10

*Ziparo v. CSX Transp.*,
    15 F.4th 153 (2d Cir. 2021) ..................................................................................................... 14

## **STATUTES**

11 U.S.C. § 101(22) .......................................................................................................................... 4

11 U.S.C. § 101(22)(A) .................................................................................................................. 19

11 U.S.C. § 101(22A)(A) ............................................................................................................... 19

11 U.S.C. § 101(53A)(A) & (B) ............................................................................................... 18, 19

11 U.S.C. § 546(e) ................................................................................................................... passim

11 U.S.C. § 548(a)(1)(A) ......................................................................................................... 17, 18

**TABLE OF AUTHORITIES**
(continued)

|  | **Page** |
|---|---|
| 11 U.S.C. § 550 | 2, 7, 10 |
| 11 U.S.C. § 550(a) | 7, 11 |
| 11 U.S.C. § 550(b) | 1, 14, 15 |
| SIPA § 78fff | 11 |
| SIPA § 78fff-2(c)(3) | 11 |

## OTHER AUTHORITIES

| | |
|---|---|
| 2A *Moore's Federal Practice* (1981) | 9 |
| 5 *Collier on Bankruptcy* | 14 |

## RULES

| | |
|---|---|
| Fed. R. Civ. P. 10(c) | 8, 9 |
| Fed. R. Civ. P. 12(b)(6) | 7 |
| Fed. R. Civ. P. 8 | 8, 22 |
| Fed. R. Civ. P. 8(a) | 2 |
| Fed. R. Civ. P. 8(a)(2) | 8 |

## PRELIMINARY STATEMENT

The most basic pleading requirement under the Federal Rules is that a complaint set forth a "short and plain" statement of a plausible claim for relief. The Trustee's Complaint[1] fails this basic test because it does not plead either element of his claims. On its face, it includes only conclusory allegations of the avoidability of BLMIS's initial transfers to the Fairfield Funds. As for the other element of the Trustee's claims—that the Redemption Payments made to Credit Suisse contained BLMIS customer property—the Complaint relies on a mathematical impossibility: it seeks to recover from subsequent transferees more money than the Fairfield Funds transferred to them.[2] The Complaint should therefore be dismissed.[3]

---

[1] This Memorandum uses the following definitions: (i) "Credit Suisse" means Defendants Credit Suisse AG; Credit Suisse AG, Nassau Branch; Credit Suisse (Luxembourg) SA; Credit Suisse International; Credit Suisse Nominees (Guernsey) Limited; Credit Suisse London Nominees Limited; and Credit Suisse (UK) Limited, collectively; (ii) "Trustee" means Plaintiff Irving H. Picard; (iii) "BLMIS" means Bernard L. Madoff Investment Securities LLC; (iv) "Sentry" means Fairfield Sentry Limited; (v) "Sigma" means Fairfield Sigma Limited; (vi) "Lambda" means Fairfield Lambda Limited; (vii) "Fairfield Funds" means Sentry, Sigma, and Lambda, collectively; (viii) the "Fairfield Amended Complaint" means ECF No. 23 in *Picard v. Fairfield Sentry Limited*, No. 08-01789 (BRL), Adv. Pro. No. 09-01239 (cited herein as "Fairfield Am. Compl. ¶ __"); (ix) "Fairfield Second Amended Complaint" means ECF No. 286 in *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-1239 (Bankr. S.D.N.Y. Aug. 28, 2020); (x) "Fairfield Settlement Agreement" means ECF No. 69-2 in *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-1239 (Bankr. S.D.N.Y. May 9, 2011); and (xi) "Redemption Payments" means payments Credit Suisse allegedly received in exchange for redeeming shares in Fairfield Funds in the relevant time period, as identified in Exs. E, G, and I of the Complaint (the "Redemption Payments"). Unless otherwise specified, all emphasis is added, and all citations and quotations are omitted.

[2] Credit Suisse acknowledges that this Court recently denied motions to dismiss that included pleading deficiency, customer property, section 546(e), and good-faith arguments in *Picard v. Multi-Strategy Fund Ltd.*, Adv. Pro. No. 12-01205 (Bankr. S.D.N.Y. June 13, 2022) ("*Multi-Strategy*"), ECF No. 122, and *Picard v. Banque SYZ & Co., SA*, Adv. Pro. No. 11-02149 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque SYZ*"), ECF No. 167. Nevertheless, each of the arguments Credit Suisse sets forth in this motion independently serves as a basis for dismissal for the reasons described in the motion. Unlike in *Banque SYZ*, Credit Suisse's good faith is apparent on the face of the complaint and independently mandates dismissal. And in *Banque SYZ*, this Court did not address the ruling in *Picard v. ABN Amro Bank N.A.*, 2020 WL 1584491, at *8 (Bankr. S.D.N.Y. Mar. 31, 2020) ("*ABN Amro N.A.*"), which held that surrendering shares in feeder funds for cash constitutes "value" for purposes of section 550(b).

[3] Counts one through three of the Complaint are identical in their attempt to "recover" subsequent transfers Credit Suisse allegedly received from a Fairfield Fund under the Bankruptcy Code and New York's Debtor & Creditor Law. Therefore, all arguments in this motion apply equally to each count. Counts four and five regarding Kingate Global Fund, Ltd. and Kingate Euro Fund, Ltd. were voluntarily dismissed by stipulation on March 29, 2022. ECF No. 101.

The Complaint in this action stems from the Madoff Ponzi scheme and seeks to recover as voidable subsequent transfers $375,468,983 from Credit Suisse under section 550. But the Complaint contains only the most threadbare allegations, specifying the aggregate dollar amounts the Trustee alleges were transferred to each Credit Suisse entity from the Fairfield Funds, and then simply assuming that each of those transfers constituted BLMIS customer property that was the subject of a prior voidable transfer from BLMIS to the Fairfield Funds. Beyond that, the Complaint incorporates by reference a sprawling complaint spanning hundreds of pages that the Trustee filed against the Fairfield Funds without even attempting to explain which of those allegations the Trustee is invoking or how they support his claims. This pleading tactic fails for two reasons.

First, the Complaint fails to plead the avoidance or even the avoidability of BLMIS's initial transfers to the Fairfield Funds. The Complaint instead seeks to satisfy this requirement by incorporating by reference the Fairfield Amended Complaint, but the Federal Rules prohibit such wholesale incorporation. Indeed, it is a textbook example of a violation of Rule 8(a)'s requirement that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Second, the Complaint does not plausibly allege that the Redemption Payments made to Credit Suisse contained BLMIS customer property, a prerequisite for the Trustee to recover the subsequent transfers that the Fairfield Funds allegedly made to Credit Suisse. The Complaint is premised on a mathematical impossibility: the Trustee seeks to recover several billions more dollars from alleged subsequent transferees than he seeks to recover from the initial transferees, the Fairfield Funds. Courts routinely dismiss complaints based on allegations that cannot possibly be true.

Even if the Complaint adequately pleaded a claim, however, it should still be dismissed because two defenses are evident from the face of the Complaint and the incorporated Fairfield Complaint.

The first such defense is Credit Suisse's good-faith defense under Bankruptcy Code section 550(b). Establishing this defense requires Credit Suisse to show only that it (i) provided value to the initial transferee (here, the Fairfield Funds) and (ii) took each transfer without knowledge that BLMIS was a fraudulent enterprise. Both elements are satisfied based solely on the Complaint's allegations. Decisions in BLMIS cases have long established that share redemptions in BLMIS feeder funds, like the Fairfield Funds, constitute value as a matter of law. And the incorporated Fairfield Amended Complaint's allegations establish that Credit Suisse could not plausibly have been expected to uncover Madoff's fraud. That complaint pleads that the Fairfield Funds' management did such an effective job covering up their fraud that even the SEC, with all its investigative powers and the full potency of the federal government, was unable to expose Madoff's scheme. Surely, Credit Suisse, a foreign bank, could not plausibly be expected to succeed where the U.S. government failed.

The second defense is section 546(e)'s "safe harbor" defense. That defense bars the Trustee from avoiding a settlement payment or any transfer by, to, or for the benefit of a "financial participant" or a "financial institution" in connection with a securities contract. Here, there can be no doubt that the Redemption Payments are precisely the kinds of transfers covered by section 546(e) because, among other things, they were made between financial institutions in connection with securities contracts. Dismissal of the claims under section 546(e)'s safe harbor is therefore warranted, with the exception of claims for *actual* fraudulent transfers occurring within two years before BLMIS's bankruptcy.

These cases have been pending for well over a decade and the Trustee has had ample

time to remedy the pleading deficiencies in the Complaint.  For all of the foregoing reasons, the

Court should dismiss the Complaint with prejudice.

## BACKGROUND

### A.    Credit Suisse

Each of the defendants is affiliated with Credit Suisse AG, a "financial institution" as that

term is defined in Bankruptcy Code section 101(22).  Credit Suisse AG is a wholly owned

subsidiary of Credit Suisse Group AG, a corporation organized under the laws of Switzerland.

Defs.' Corp. Ownership Stmt. 2, ECF No. 6.  Credit Suisse AG, Nassau Branch, Credit Suisse

(Luxembourg) SA, Credit Suisse International, Credit Suisse Nominees (Guernsey) Limited,

Credit Suisse (UK) Limited, and Credit Suisse London Nominees Limited are wholly owned by

Credit Suisse AG.  Defs.' Corp. Ownership Stmt. 2-3, ECF No. 6.

### B.    The Funds

The Fairfield Funds are BLMIS feeder funds based in the British Virgin Islands.  Compl.

¶¶ 3-4.  Sentry maintained customer accounts at BLMIS and allegedly was "one of BLMIS'

largest feeder funds," and "invested all" of its assets "with BLMIS."  *Id.* ¶ 3.  Sigma and Lambda

were affiliates of Sentry that acted as foreign currency feeder funds, and were allegedly both

invested entirely in Sentry.  *Id.* ¶ 4.  On July 21, 2009, the Eastern Caribbean Supreme Court in

the High Court of Justice of the British Virgin Islands placed the Fairfield Funds in liquidation.

*Picard v. Fairfield Sentry Ltd.*, No. 08-01789 (BRL), Adv. Pro. No. 09-01239 (the "Fairfield

Action"), ECF No. 23 (the "Fairfield Amended Complaint" or "Fairfield Am. Compl.") ¶ 22.

### C.    The Trustee's Actions Against the Fairfield Funds

The Trustee filed a complaint against, and subsequently settled with, the Liquidators of

the Fairfield Funds.  *See* Fairfield Am. Compl. and *Settlement Agreement, Picard v. Fairfield*

*Sentry Ltd.*, Adv. Pro. No. 09-1239 (Bankr. S.D.N.Y. May 9, 2011), ECF No. 69-2 (the

"Fairfield Settlement Agreement"). On May 9, 2011, the parties stipulated to judgment in favor

of the BLMIS Estate (in the amount of approximately $3 billion for Sentry, $750 million for

Sigma, and $53 million for Lambda). Compl. ¶ 56; *see* Fairfield Settlement Agreement. The

Fairfield Settlement Agreement provided for cooperation and information sharing between the

Trustee and the Fairfield Funds' joint liquidators concerning, among other things, claims against

parties that redeemed shares from the Funds. *See* Fairfield Settlement Agreement ¶ 14. Thus,

for more than a decade since that settlement, the Trustee has had access to the Fairfield Funds'

books and records.

### D.    The Complaint and Related Proceedings

Approximately six months after the settlement, the Trustee sued Credit Suisse to "recover

subsequent transfers of Customer Property from certain BLMIS feeder funds to Defendants

totaling $375,468,983." Compl. ¶ 2. The Complaint devotes most of its allegations to Madoff's

Ponzi scheme and transfers from BLMIS to the Fairfield Funds. *See id*. ¶¶ 30-53. Rather than

pleading facts plausibly to show that the Redemption Payments to Credit Suisse included BLMIS

customer property, the Trustee instead alleges in conclusory fashion that "a portion of the

Fairfield … Initial Transfers was subsequently transferred through Fairfield … to, or for the

benefit of, [Credit Suisse]." *Id.* ¶¶ 61-63.

The Trustee does not identify which portions of these initial transfers from BLMIS to the

Fairfield Funds were allegedly later transferred to Credit Suisse as Redemption Payments. *See*

*id.* Rather, the Trustee vaguely alleges that during "the six years preceding the Filing Date,

BLMIS made transfers to Fairfield Sentry of $2,985,136,619 (the 'Fairfield Sentry Six Year

Initial Transfers')", and the "Fairfield Sentry Six Year Initial Transfers include $1,614,067,088

that BLMIS transferred to Fairfield Sentry during the two years preceding the Filing Date (the

'Fairfield Sentry Two Year Initial Transfers')."  FAC ¶¶ 57-58.  The Trustee also alleges that the

"Fairfield Sentry Two Year Initial Transfers include $1,134,628,244 that BLMIS transferred to

Fairfield Sentry during the 90 days preceding the Filing Date (the 'Fairfield Sentry Preference

Period Initial Transfers')."  *Id.* ¶ 59.  The Trustee then concludes—without elaboration—that a

"portion of the Fairfield" Sentry, Sigma, and Lambda "Initial Transfers" were "subsequently

transferred to, or for the benefit of, the Defendant."  *Id.* ¶¶ 61-63.  While the Complaint alleges

the amounts,[4] it does not explain how those amounts were determined or how to trace those

amounts from BLMIS to Credit Suisse.

Despite more than a decade of access to the Fairfield Funds' books and records and

ample time to investigate and amend his Complaint, the Trustee does not trace any specific

Credit Suisse redemption to BLMIS.  Rather, the Trustee attaches nearly 60 pages of exhibits

listing thousands of transactions among BLMIS and Sentry.  *See* Compl., Ex. D.  The exhibits

show that payments came from Citco bank accounts designated for the benefit of Sentry, referred

to as "Citco Global Custody N V FBO Fairfield Sentry Ltd" (Account Nos. IFN012 and

IFN045).  *Id.*  And while the Complaint also includes schedules of alleged transfers from the

Fairfield Funds to Credit Suisse (*see* Compl. Exs. E, G, and I), the Complaint offers no details

regarding the source of the funds that comprised these alleged transfers.

The Trustee also attempts to "incorporate by reference" the allegations from the Fairfield

Amended Complaint without specifying what portions of that complaint he seeks to incorporate.

Compl. ¶ 55; *see also* Fairfield Am. Compl.  The Fairfield Amended Complaint broadly alleges

---

[4] Compl. ¶¶ 61-63 ("$256,629,645 of the money transferred from BLMIS to Fairfield Sentry was subsequently
transferred by Fairfield Sentry to … CS Sentry Transferees"; "$752,273,917 of the money transferred from BLMIS
to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Fairfield Sigma … [and] in turn …
$73,182,103 of the money" allegedly went to Credit Suisse; and "$52,935,000 of the money transferred from
BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Fairfield Lambda," and in turn,
$68,983 was transferred from Fairfield Lambda to Credit Suisse).

that BLMIS's operations were characterized by secrecy and a lack of transparency, and that the

Fairfield Funds' management "went to great lengths to keep their investors far away from

Madoff," Fairfield Am. Compl. ¶ 342, "misled investors," *id.* ¶ 344, "remove[d] all references to

BLMIS from their marketing materials" in 2002, *id.* ¶ 346, "actively and repeatedly 'blocked'

investors wishing to obtain more information," *id.* ¶ 348, "went to great lengths to cover up

Madoff's actual role with the [Fairfield Greenwich Group] funds," *id.* ¶ 350, and "sold the false

assurance that they conducted superior due diligence," *id.* ¶ 362.  The Fairfield Amended

Complaint further alleges that the SEC investigated BLMIS in 2006 but failed to uncover the

fraud.  *Id.* ¶¶ 351-361.

## LEGAL STANDARD

A complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) "when

the allegations in a complaint, however true, could not raise a claim of entitlement to relief."[5]  A

claimant's allegations "must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'"[6]  While the Court must accept well-pleaded factual

allegations as true, it should not accept "legal conclusion[s] couched as factual allegations."[7]

## ARGUMENT

Bankruptcy Code section 550 authorizes a trustee to recover the property *transferred by

the debtor* to any transferee (initial or subsequent) "to the extent that a transfer is avoided under

section … 548 … of this title."  11 U.S.C. § 550(a).[8]  This requires the Trustee to (i) identify a

---

[5] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

[7] *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see also Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) ("Although we construe the pleadings liberally, 'bald assertions and conclusions of law will not suffice.'").

[8] *See also Picard v. Citibank, N.A.*, 12 F.4th 171, 181 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209 (2022).

voidable transfer, and (ii) plead that the funds he is attempting to recover from Credit Suisse are

BLMIS property.[9]  The Complaint does neither.

## I.    THE COMPLAINT FAILS TO PLEAD A VOIDABLE TRANSFER.

The Complaint stumbles at the threshold because it violates Rule 8's most fundamental

requirement—"a short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2).  In lieu of crafting the plausible factual allegations that the

Supreme Court's *Iqbal* decision requires, the Trustee has chosen to incorporate by reference

unspecified portions of an entirely different complaint filed by a different plaintiff in another

proceeding against other defendants.  Compl. ¶ 55 ("The Trustee incorporates by reference the

allegations in [the Fairfield Action] as if fully set forth here.").

While a pleading may incorporate by reference other documents, it "must be clear which

statements are to be incorporated."[10]  Rule 10(c) does provide that "[a] statement in a pleading

may be adopted by reference elsewhere in the same pleading or in any other pleading," but it

does not permit a party to adopt indiscriminately an entirely separate pleading.[11]  Wholesale

incorporation by reference of other pleadings into a complaint, like the Trustee's gambit here,

thus warrants dismissal for violating Rule 8.[12]  This is all the more true where, as here, a party

---

[9] *Id.*

[10] *Levitch v. Columbia Broad. Sys., Inc.*, 94 F.R.D. 292, 294 (S.D.N.Y. 1982), *aff'd*, 697 F.2d 495 (2d Cir. 1983); *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, 2010 WL 1257803, at *3–4 (E.D.N.Y. Mar. 26, 2010) ("Although there is no prescribed procedure for referring to incorporated matter, the references to prior allegations must be direct and explicit, in order to enable the responding party to ascertain the nature and extent of the incorporation.").

[11] *See, e.g., Nycomed*, 2010 WL 1257803, at *4 ("A Rule 10(c) adoption clause that does little more than make wholesale reference to the contents of a prior pleading exemplifies the kind of incorporation that fails to give the requisite guidance to the responding party.").

[12] *See Constellation Energy Commodities Grp. v. Transfield ER Cape, Ltd.*, 801 F. Supp. 2d 211, 223 (S.D.N.Y. 2011) ("A pleading may not adopt other pleadings from a wholly separate action."); *NCUA Bd. v. Morgan Stanley & Co.*, 2014 WL 1673351, at *9 (S.D.N.Y. Apr. 28, 2014) (striking defense where defendant attempted to "incorporate the affirmative defenses in answers filed by defendants *in other actions* into its answer") (emphasis in original); *see also In re Geiger*, 446 B.R. 670, 679–80 (Bankr. E.D. Pa. 2010) (dismissing the complaint at hand for improperly incorporating by reference other pleadings and leaving "the Defendant and the Court—to sift through many pages of

attempts to incorporate an entire pleading filed in a *separate action* that has since been superseded.[13]

The Fairfield Amended Complaint includes 798 paragraphs spanning 217 pages, with 111 accompanying exhibits, and asserts a panoply of claims against numerous defendants, none of which is related to Credit Suisse. The Trustee maintains that this unwieldy, unrelated document pleads an essential element of his claim against Credit Suisse—the avoidability of BLMIS's initial transfers to the Fairfield Funds. *See, e.g.*, Compl. ¶ 57 ("The Fairfield Sentry Six Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), and are avoidable and recoverable under sections 544, 550, and 551 of the Bankruptcy Code; §§ 273-279 of the NYDCL; and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3)."). Courts have routinely condemned this tactic, instead requiring parties to level their own factual allegations against their adversaries, or at least to identify the specific portions of the incorporated pleading on which they rely.[14] For this reason alone, the claims against Credit Suisse should be dismissed.[15] And without the incorporation, the Trustee's Complaint is comprised solely of conclusory statements that do not adequately plead the

---

attached material trying to figure out which fact goes with which allegation…. [This] is the job of the Plaintiffs, not of the Debtor or the Court.").

[13] *See, e.g.*, nn.8-11; *see also David v. Bifani*, 2007 WL 1216518, at *1 (D. Colo. Apr. 24, 2007) (striking an attempt "to incorporate by reference wholesale the allegations in a complaint in a completely separate action"); *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 463 (E.D.N.Y. 2007) (dismissing a civil RICO complaint after concluding that "the Government's proposed method of pleading necessary elements of its RICO claim by incorporating factual allegations contained in several prior lengthy criminal and civil RICO pleadings is … a blatant violation of Rule 8(a)(2)'s direction that a civil plaintiff provide a 'short and plain statement of the claim.'").

[14] *Constellation Energy*, 801 F. Supp. 2d at 223 ("A pleading may not adopt other pleadings from a wholly separate action."); *Levitch*, 94 F.R.D. at 294 ("when a pleading incorporates other documents it must be clear which statements are to be incorporated from the other documents (citing Fed. R. Civ. P. 10(c); 2A *Moore's Federal Practice* P 10.05 (1981)).

[15] *See id.*; *see also NCUA Bd.*, 2014 WL 1673351, at *9 (striking defense where defendant attempted to "incorporate the affirmative defenses in answers filed by defendants *in other actions* into its answer") (emphasis in original).

9

avoidability of the initial transfer from BLMIS to Sentry or the intermediate transfers from

Sentry to Sigma and Lambda, an essential element of the Trustee's claim to recover Credit

Suisse's Subsequent Transfers.

The Trustee's attempt to incorporate by reference the Fairfield Amended Complaint is

especially specious because the Trustee has since amended the incorporated pleading again. *See*

*Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-1239 (Bankr. S.D.N.Y. Aug. 28, 2020), ECF

No. 286 ("Fairfield Second Amended Complaint").  The Fairfield Second Amended Complaint is

as sprawling as its predecessor, and in the years since filing the Fairfield Second Amended

Complaint, the Trustee has chosen to not amend his Complaint against Credit Suisse to clarify

which of the two Fairfield Complaints he is incorporating.  Thus, Credit Suisse and the Court can

only sift through hundreds of pages of documents across two complaints to guess as to what

allegations from which pleading require a response.  This is not what Rule 8 requires.[16]

## II.    THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT THE CREDIT SUISSE REDEMPTIONS WERE BLMIS PROPERTY.

The Complaint must also be dismissed for a separate and independent flaw:  it does not

plausibly plead that Credit Suisse received BLMIS customer property, another indispensable

element of the Trustee's claim.[17]

---

[16] *See, e.g.*, *United States v. U.S. Telecom Long Distance, Inc.*, 2018 WL 4566673, at *2 (D. Nev. Sept. 24, 2018) (wholesale incorporation of notice of apparent liability was impermissible warranting dismissal where it was unclear what the Government intended to incorporate, "leav[ing] [defendant] ... in the untenable position of not knowing which allegations underpin the government's claims and thus what content [defendant] must respond to in its answer").

[17] *Picard v. Stanley Shapiro*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (to state a claim under 11 U.S.C. § 550, the Trustee "must allege facts that support the inference that the funds at issue originated with the BLMIS, and contain the 'necessary vital statistics'—the 'who, when, and how much' of the transfers to establish that an entity was a subsequent transferee of the funds.").

### A.    The Trustee Does Not Adequately Allege That the Funds Transferred to Credit Suisse Originated with BLMIS.

To state a claim under either section 550(a) or section 78fff, the Trustee must plausibly plead facts showing that the challenged subsequent transfer was estate property.  *See* 11 U.S.C. § 550(a) (permitting recovery of estate property from subsequent transferee); SIPA § 78fff-2(c)(3) ("trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property").  In *Shapiro*, this Court described what the Trustee must plead to assert a subsequent transferee claim:

> The Trustee must allege facts that support the inference that the funds at issue originated with ... BLMIS, and contain the "necessary vital statistics"—the "who, when, and how much" of the transfers to establish that an entity was a subsequent transferee of the funds.  At the pleading stage, the Trustee is not required to provide a "dollar-for-dollar accounting" of the exact funds at issue.  However, barebones allegations that the funds at issue were transferred to the Subsequent Transferees, without more detail, are insufficient.[18]

The Complaint fails to include these details.  Instead, the Trustee simply asserts that "a portion of the Sentry Initial Transfers was subsequently transferred to, or for the benefit of, [Credit Suisse]."  Compl. ¶ 61.  Exhibit D does not substantiate these allegations: it simply lists transfers from BLMIS to Sentry, without tying those transfers to the payment of any redemption request from Credit Suisse.  The "barebones" allegation that the transfers identified on Exhibits E, G, and I (which specify the subsequent transfers at issue) originated with BLMIS is insufficient and mandates dismissal.[19]

---

[18] *Id.*

[19] *See id.* ("The SAC does not tie any initial transfer to any subsequent transfer or Subsequent Transferee.  Moreover, it does not plausibly imply that the initial transferees even made subsequent transfers to the Subsequent Transferees as opposed to third parties, or that they made the subsequent transfers rather than simply keep the initial transfers for themselves.").

In sum, the Trustee's failure to allege precisely which transfers to Credit Suisse include customer property, and from which initial transfer each subsequent transfer originates, mandates dismissal.[20]

**B.     The Trustee's Allegations Confirm That It Is Implausible That the Credit Suisse Redemptions Include BLMIS Customer Property.**

The Supreme Court has held that pleading a claim under Rule 8 requires allegations showing "more than a *sheer possibility* that a defendant has acted unlawfully."[21]  If the factual allegations in a complaint "are merely consistent with a defendant's liability, [the complaint] stops short of the line between possibility and plausibility."[22]  Bare assertions, "devoid of 'further factual enhancement[,]'" are not sufficient to withstand a motion to dismiss.[23]  Because the Complaint here rests on a mathematical impossibility, its claims are entirely implausible.[24]

The Trustee alleges that BLMIS transferred approximately $3 billion to Sentry, Compl. ¶ 55, but he simultaneously seeks to avoid nearly $4 billion in alleged subsequent transfers of "customer property" in the form of Redemption Payments made to dozens of defendants, including Sentry's own feeder funds.  *See* Fairfield Second Amended Complaint, Exs. 5 & 6. And that is on top of the approximately $1 billion that the Trustee seeks to recover from the Fairfield Greenwich Group Defendants.  *See id*. Exs. 8, 10, 12, 13, 14, and 21.  Altogether, the

---

[20] *See Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc*., 712 F.3d 705, 709, 723 (2d Cir. 2013) (affirming dismissal and finding that "such imprecise pleading is particularly inappropriate here, where the plaintiffs necessarily have access, without discovery, to plan documents and reports that provide specific information from which to fashion a suitable complaint"); *Sapia v. Home Box Off., Inc*., 2018 WL 6985223, at *8 (S.D.N.Y. Dec. 17, 2018) (dismissing a claim where plaintiffs failed to precisely plead necessary facts that were "uniquely in [p]laintiffs' possession").

[21] *Iqbal*, 556 U.S. at 678.

[22] *Id.*

[23] *Id.*

[24] *See In re Old Carco LLC*, 454 B.R. 38, 44-47 (Bankr. S.D.N.Y. 2011) (dismissing fraudulent transfer claims based on implausible allegations).

Trustee seeks to recover roughly $2 billion *more* from subsequent transfers than the amount that the Trustee alleges BLMIS transferred to Sentry.[25]  In short, the Complaint fails to plausibly allege an essential element of a subsequent transferee claim—the transfer of BLMIS property to the subsequent transferee—because the Trustee is attempting to claw back more money from subsequent transferees than he concedes was transferred to the initial or intermediate transferees.

Even beyond the mathematical impossibility of his allegations, the Trustee concedes that the reason Sentry distributed more funds than it received from BLMIS is because Sentry also continuously received funds from investor subscriptions in addition to distributions from BLMIS.  *See, e.g.*, Compl. ¶¶ 8-18 (alleging that Credit Suisse wired funds to Sentry for subscriptions).  Sentry has also stated that it "made Redemption Payments directly from amounts on hand invested by other subscribers in the Funds."[26]  The only reasonable inference to draw from these allegations is that the Fairfield Funds paid redemptions to its investors with money from other investors, *not* funds that originated with BLMIS.  Nothing in SIPA, the Bankruptcy Code, or any other provision of federal law permits the Trustee to recover funds that are not, and never were, customer property.

## III.    THE TRUSTEE'S OWN PLEADINGS ESTABLISH THAT CREDIT SUISSE IS ENTITLED TO THE GOOD-FAITH DEFENSE.

Even if the Court were to dispense with Rule 8's requirement of a "short and plain statement" of a plausible claim, the Trustee's complaint would still fail.  This is because that complaint establishes Credit Suisse's "good faith" defense under section 550(b), i.e., that Credit

---

[25] That figure does not include amounts received by the alleged subsequent transferees that Fairfield sued but that the Trustee has not.

[26] Second Am. Compl., *Fairfield Sentry Ltd. v. Citco Glob. Custody NV*, No. 19-1122 (Bankr. S.D.N.Y. Nov. 26, 2019), ECF No. 70 ¶ 5; First Am. Compl., *Fairfield Sentry Ltd. v. Citco Glob. Custody NV*, No. 19-1122 (Bankr. S.D.N.Y. Nov. 26, 2019), ECF No. 19 ¶ 63 ("From time to time, to make Redemption Payments, Sentry (and Sigma and Lambda through Sentry) ... utilized subscription monies of other investors on hand.").

Suisse took for value, in good faith, and without knowledge of the voidability of the transfer.
*See* 11 U.S.C. § 550(b).

### A.    Credit Suisse Received the Redemptions for Value.

The "value" that a subsequent transferee must give to assert the good-faith defense need
not be reasonably equivalent.[27]  "Had Congress intended to include a [reasonably equivalent
value] requirement in [section 550(b)], it knew how to do so."[28]  Congress did not.  Thus,
"value" under section 550(b) is "merely consideration sufficient to support a simple contract,
analogous to the 'value' required under state law to achieve the status of a bona fide purchaser
for value"—nothing more than a peppercorn.[29]

Here, it is evident from the Complaint's face that Credit Suisse gave value to the Fairfield
Funds.  The Complaint alleges that the transfers at issue were from "subscription agreements"
i.e., that Credit Suisse surrendered interests in the Fairfield Funds in exchange for redemption
payments.  Compl. ¶¶ 8-16.  Courts in the BVI (whose law governs the internal affairs of the
Fairfield Funds because they were incorporated there)[30] have held that a Sentry investor's
surrender of Sentry shares upon redemption for cash is good consideration to support the
exchange.  *See id.* ¶ 8; *Quilvest Fin. Ltd. v. Fairfield Sentry Ltd.*, Case Nos. HCVAP 2011/041–

---

[27] *See, e.g., In re Enron Corp.*, 333 B.R. 205, 236 (Bankr. S.D.N.Y. 2005) ("There is no requirement that the value
given by the transferee be a reasonable or fair equivalent.") (quoting 5 *Collier on Bankruptcy* ¶ 550.02); *CLC
Creditors' Grantor Tr. v. Howard Sav. Bank (In re Commercial Loan Corp.)*, 2010 WL 1730860, at *7 n.14 (Bankr.
N.D. Ill. Apr. 29, 2010) ("Section 550(b)(1) requires 'value,' not 'reasonably equivalent value' or 'fair market
value.'").

[28] *Ziparo v. CSX Transp.*, 15 F.4th 153, 161 (2d Cir. 2021); *see also Russello v. United States*, 464 U.S. 16, 23
(1982) ("Where Congress includes particular language in one section of a statute but omits it in another section of
the same Act, it is generally presumed that Congress acts intentionally.).

[29] *ABN Amro N.A.*, 2020 WL 1584491, at *8 (citing 5 *Collier on Bankruptcy* ¶ 550.03[1] at 550-25 (Richard Levin
& Henry J. Sommer eds., 16th ed. 2019)).

[30] *Atherton v. FDIC*, 519 U.S. 213, 224 (1997); *see also* Privy Council Decision, [2014] UKPC 9, ¶ 10 ("the terms
of the subscriber's membership of the Fund, which govern the redemption of its shares … are to be found in the
Articles of Association of the Fund").

052 ¶ 87.[31]  Decisions in the BLMIS cases here confirm that surrendering shares in feeder funds

for cash similarly constitutes "value" for purposes of section 550(b).[32]  Thus, section 550(b)'s

"value" element is satisfied as a matter of law.

> **B.    Credit Suisse Acted in Good Faith and Could Not Have Discovered Madoff's Fraud Where So Many Others Failed.**

The Second Circuit recently held that, in evaluating a claim of good faith, courts must

examine three factors:

1. "[W]hat facts the defendant actually knew; this is a subjective inquiry, not 'a theory of constructive notice.'"

2. "[W]hether these facts put the transferee on inquiry notice of the fraudulent purpose behind a transaction—that is, whether the facts the transferee knew would have led a reasonable person in the transferee's position to conduct further inquiry into a debtor-transferor's possible fraud."

3. "[W]hether 'diligent inquiry [by the transferee] would have discovered the fraudulent purpose' of the transfer."[33]

Thus, even if a transferee knows actual facts that put it on inquiry notice of a transfer's

underlying fraudulent purpose, the transferee still takes the transfer in good faith unless a diligent

inquiry would have uncovered that fraudulent purpose.  Here, the Complaint's incorporation by

reference of the Fairfield Amended Complaint alleges facts demonstrating that a diligent inquiry

would not have revealed Madoff's fraud, establishing Credit Suisse's good faith.

In the Fairfield Amended Complaint, the Trustee alleges various "red flags" that he

suggests should have alerted investors to the fraudulent purposes of BLMIS's transfers to the

---

[31] The Eastern Caribbean Court of Appeals' decision is available at: https://www.eccourts.org/quilvest-finance-ltd-and-others-v-fairfield-sentry-ltd/.

[32] *See ABN Amro N.A.*, 2020 WL 1584491, at *9 ("Surrendering equity interests constitutes value for purposes of section 550(b) because it is consideration sufficient to support a simple contract.").

[33] *Picard*, 12 F.4th at 191-92.

Fairfield Funds.  Fairfield Am. Compl. ¶¶ 3-4.  These include anecdotes of some consultants and

market analysts opining, at various times, that BLMIS *may* have been involved in improper

activities.  *Id.* ¶ 517.  But in its next breath, the Fairfield Amended Complaint asserts that

(i) BLMIS's operations were characterized by secrecy and a lack of transparency, and

(ii) Sentry's management "went to great lengths to keep their investors far away from Madoff,"

*id.* ¶ 342, "misled investors," *id.* ¶ 344, "remove[d] all references to BLMIS from their

marketing materials" in 2002, *id.* ¶ 346, "actively and repeatedly 'blocked' investors wishing to

obtain more information," *id.* ¶ 348, "went to great lengths to cover up Madoff's actual role with

the FGG funds," *id.* ¶ 350, and "sold the false assurance that they conducted superior due

diligence," *id.* ¶ 362.  And the Fairfield Amended Complaint alleges that these furtive tactics

worked.  That complaint acknowledges that in 2006, the SEC launched an investigation to

determine whether BLMIS was a Ponzi scheme or engaged in other illegal activity, yet even the

SEC—with its powerful investigative tools, expansive subpoena powers, and broad resources—

was stymied by the efforts of BLMIS and Sentry insiders to hinder the government investigation.

*Id.* ¶¶ 351, 360–361.  Accepting all the facts in that complaint as true, the only plausible

inference to draw from this pleading is that Credit Suisse, which lacked the resources and power

of one of the federal government's most potent regulatory agencies, could not reasonably have

been expected to succeed where all others had failed.[34]

---

[34] *BLD Prods., LLC v. Viacom, Inc.*, 2011 WL 1327340, at *10 (S.D.N.Y. Mar. 31, 2011), *aff'd in relevant part, vacated in part, remanded sub nom. BLD Prods., LLC v. Remote Prods., Inc.*, 509 F. App'x 81 (2d Cir. 2013) (this "Court need not accept factual allegations that are conclusory, implausible, or contradicted by exhibits to a complaint").

The Fairfield Amended Complaint thus affirmatively pleads facts showing that a diligent inquiry would not have uncovered the transfers' fraudulent purpose, mandating dismissal as a matter of law.[35]

## IV.    BANKRUPTCY CODE SECTION 546(e) BARS THE BULK OF THE TRUSTEE'S CLAIMS.

Bankruptcy Code section 546(e) separately mandates dismissal of the Trustee's claims (other than the intentional fraudulent transfer claim under Bankruptcy Code section 548(a)(1)(A)) to recover transfers made more than two years before BLMIS filed for bankruptcy.[36]  In actions brought by *this* Trustee, the Second Circuit has held that "by enacting § 546(e), Congress provided that, for a very broad range of securities-related transfers, the interest in finality is sufficiently important that they cannot be avoided by a bankruptcy trustee at all, except as actual fraudulent transfers under § 548(a)(1)(A)."[37]  The Second Circuit cautioned that "[p]ermitting the clawback of millions, if not billions, of dollars from BLMIS clients—many of whom are institutional investors and feeder funds—would likely cause the very 'displacement' that Congress hoped to minimize in enacting § 546(e)."[38]

---

[35] *Jones v. Bock*, 549 U.S. 199, 215 (2007) ("Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground"); *Gilmore v. Rivera*, 2014 WL 1998227, at *2 (S.D.N.Y. May 14, 2014) ("Dismissal under Fed. R. Civ. P. (12)(b)(6) is also proper if an affirmative defense, or other bar to relief, is apparent from the face of the complaint.").

[36] It is appropriate for the Court to consider Credit Suisse's safe harbor defense at this stage because "the application of Section 546(e) presents a straightforward question of statutory interpretation of the type that is appropriately resolved on the pleadings." *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam* ("*Fairfield III*"), 2020 WL 7345988, at *4 (Bankr. S.D.N.Y. Dec. 14, 2020).  Moreover, Credit Suisse has standing to assert its defenses under section 546(e) as a subsequent transferee notwithstanding the fact that Fairfield, as initial transferee, declined to assert it. *See Picard v. Fairfield*, 2021 WL 3477479, at *3 ("Where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here ..., the subsequent transferee is nonetheless entitled to raise a § 546(e) defense against recovery of those funds.").

[37] *Picard v. Ida Fishman Revocable Tr.*, 773 F.3d 411, 423 (2d Cir. 2014).

[38] *Id.* at 420.

Section 546(e) provides that a trustee may generally not avoid transfers made by, to, or for the benefit of a covered entity, including a "stockbroker," "financial institution," and "financial participation," "in connection with a securities contract" or comprising "settlement payments." The only statutory exception to this rule is Bankruptcy Code section 548(a)(1)(A), which allows for recovery of intentional fraudulent transfers made in the two years preceding bankruptcy. As demonstrated below, all Redemption Payments here predating December 2006 are anchored in the safe harbor because they are both (i) transfers "in connection with a securities contract" and "settlement payments," and (ii) made by a "stockbroker," to a "financial institution," for the benefit of a "financial participant."

### A. The Initial Transfers Were Made by, to, and for the Benefit of Covered Entities.

A payment is subject to the safe harbor protection if it is made by, to, or for the benefit of a covered entity, including a "stockbroker," "financial institution," and "financial participant." The Redemption Payments meet this requirement in three separate ways, any one of which is sufficient to satisfy the covered entity prong of section 546(e).

*First*, BLMIS is a "stockbroker" under section 546(e). The Bankruptcy Code defines "stockbroker" to include entities "engaged in the business of effecting transactions in securities." 11 U.S.C. § 101(53A)(A) & (B). As Judge Rakoff concluded a decade ago, BLMIS qualifies as a stockbroker under this definition.[39]

*Second*, Judge Bernstein has already held that the Fairfield Funds are "financial institutions within the meaning of 11 U.S.C. § 546(e)" as "customers of Citco Bank who acted as

---

[39] *See SIPC v. Bernard L. Madoff Inv. Secs. LLC*, 476 B.R. 715, 719 (S.D.N.Y. 2012) ("Thus, even assuming the truth of the allegation that Madoff Securities' investment advisory division never traded securities on behalf of clients, Madoff Securities nonetheless qualifies as a stockbroker by virtue of the trading conducted by its market making and proprietary trading divisions.").

their agents in connection with the securities contracts pursuant to which the redemption

payments were made."[40]  That holding applies with equal force here because the Trustee alleges

that the initial transfers were made from BLMIS accounts entitled "Citco Global Custody N V

FBO Fairfield Sentry Ltd" (Account Nos. IFN012 and IFN045).  *See* Compl. Ex. D.

*Third*, the Trustee has alleged that the initial transfers were made "for the benefit of" the

Credit Suisse defendants, each one of which is either a "financial institution" or a "stockbroker"

within the meaning of Bankruptcy Code section 101(22A)(A).  *See* Compl. ¶¶ 61-63.  The

Bankruptcy Code defines "financial institution" to include not only "an entity that is a

commercial or savings bank," or a "trust company," but also the customer of a bank "when [the

bank] is acting as agent or custodian for a customer ... in connection with a securities contract."

11 U.S.C. § 101(22)(A).  The Bankruptcy Code defines "stockbroker" to include entities

"engaged in the business of effecting transactions in securities."  11 U.S.C. § 101(53A)(A) &

(B).  Each Credit Suisse defendant is either authorized to perform banking activities by the

government under which it is organized, or was at the time of the transfers engaged in trading

securities, and therefore meets the definition of a either a financial institution or a stockbroker as

set out in section 101(22A)(A).[41]

---

[40] *Fairfield III*, 2020 WL 7345988, at *7.

[41] *See* Declaration of William J. Sushon, Exs. 1, 2, 5, *Fairfield Sentry Limited v. Credit Suisse Nominees (Guernsey) Limited*, Adv. Pro. No. 11-2612 (Bankr. S.D.N.Y. Mar. 23, 2020), ECF No. 71-1 (Credit Suisse Nominees (Guernsey); Credit Suisse International; and Credit Suisse AG Nassau Branch); Notice of Filing of Exs. to Supp. Mem. of Luxembourg Defs. in Supp. of Defs.' Renewed Mot. to Dismiss, Ex. A-11, *Fairfield Sentry Limited v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-4088 (Bankr. S.D.N.Y Mar. 23, 2023), ECF No. 96 (Credit Suisse (Luxembourg) SA); Supp. Mem. of Law, Ex. B, *Fairfield Sentry Limited v. ABN Amro Schweiz*, Adv. Pro. No. 10-3635, ECF No. 485-4 (Credit Suisse AG); *see also* Declaration of Kayla N. Haran, Ex. 1 (Credit Suisse (UK). Credit Suisse London Nominees is not arguing at this time that it is a covered entity under the Bankruptcy Code. But, because both BLMIS and the Fairfield Funds were covered entities, subsequent transfers to Credit Suisse London Nominees are still subject to the section 546(e) safe harbor for all other reasons set forth in Section IV.

### B. The Alleged Initial Transfers Were Made in Connection with Securities Contracts and Were Settlement Payments.

The safe harbor's second requirement is that the payment made by, to, or for the benefit of a covered entity be (i) a "transfer ... in connection with a securities contract" or (ii) a "settlement payment." 11 U.S.C. § 546(e). While a transfer need fit into only one of those two categories, the alleged initial transfers here meet both requirements.

***Made in connection with a securities contract.*** The Second Circuit has already held that BLMIS customers' account-opening documents are securities contracts for purposes of section 546(e).[42] Sentry "maintained customer accounts at BLMIS and was one of BLMIS' largest feeder funds," and thus held securities contracts with BLMIS. Compl. ¶ 3. It follows logically that the initial transfers from Sentry's BLMIS accounts were made in connection with those securities contracts. *See id*. And as the Second Circuit has held, "Section 546(e) only requires that a covered transfer be broadly related to a 'securities contract,' not that it be connected to an actual securities transaction."[43] The Initial Transfers satisfy this "low bar."[44]

Accepting the Complaint's allegations as true, the initial transfers were also "in connection with" the securities contracts between each of the Fairfield Funds and Credit Suisse. The Trustee alleges that "Sentry withdrew funds from its BLMIS accounts" to make the Redemption Payments. Fairfield Am. Compl. ¶ 63. Those Redemption Payments were governed by the Fairfield Funds' Articles of Association.[45] And the Redemption Payments were made in connection with those governing documents, satisfying the safe harbor's requirement.

---

[42] *Picard v. Ida Fishman*, 773 F.3d at 418.

[43] *Id*. at 420.

[44] *Id.* at 422.

[45] *See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)* ("*Fairfield I*"), 2018 WL 3756343, at *11–12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("the Articles govern redemptions") (citing *Fairfield Sentry Ltd. v. Migani*, [2014] UKPC 9, ¶ 10 (redemption of shares were found in the Articles)).

The Redemption Payments also qualify under section 546(e) because the redemption requests themselves are "securities contract[s]." As Judge Rakoff has held, "the definition of a securities contract is in fact much broader [than the Madoff Securities account agreements] and includes, *inter alia*, investment fund subscription agreements *and redemption requests*, margin loans, and total return swaps coupled with a securities sale transaction."[46] Even the Trustee cannot argue that the Redemption Payments were not made "in connection with" redemption requests.[47]

**Settlement payments.** The Initial Transfers were also settlement payments. The Second Circuit already ruled in *Fishman* that "[e]ach time a customer requested a withdrawal from BLMIS ... each transfer in respect of such an order or request constituted a settlement payment."[48] That reason equally applies to the Fairfield redemptions from BLMIS that the Trustee alleges were the initial transfers, and provides additional support for the conclusion that the initial transfers are protected under section 546(e).

---

[46] *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2013 WL 1609154, at *8 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"); *see also id.* at *9 (noting that "hypothetical situation in which the Trustee alleges that a withdrawal of funds by an investment fund from its Madoff Securities customer account occurred because an investor in that fund sought redemption of its investment under the terms of its investment contract" would "fit within the plain terms of Section 546(e): an initial transfer that was "made by or to (or for the benefit of) a ... financial institution [or] financial participant ... in connection with a securities contract"); *In re Tribune Co. Fraudulent Conv. Litig.*, 946 F.3d 66, 81 (2d Cir. 2019) (as "securities contract" includes a contract for the "repurchase" of a security, or any contract "similar to" a securities contract, "we have no trouble concluding ... [payments] connected to the redemption of shares, were 'in connection with a securities contract.'").

[47] *See id.*

[48] *Fishman*, 773 F.3d at 422.

### C.    The Trustee Has Not Pleaded Actual Credit Suisse Knowledge of the Madoff Fraud.

While there may be a judicially created exception to the safe harbor for "a subsequent transferee who had actual knowledge of Madoff Securities' fraud," the Trustee cannot invoke that exception here.[49]

That's because there is simply no allegation (not even a conclusory one) that Credit Suisse had any knowledge, actual or otherwise, of the Madoff fraud. And while this Court has held that the Trustee adequately pleaded Sentry's knowledge of Madoff's fraud in the Fairfield Second Amended Complaint[50] (which cannot be incorporated by reference into the Complaint here, *see supra* Section I), that finding cannot defeat the safe harbor's application because the Complaint fails to allege that Credit Suisse knew of the Madoff fraud. The Redemption Payments fall within the safe harbor, and the Trustee's claims to recover transfers made more than two years before BLMIS filed for bankruptcy must be dismissed.

## CONCLUSION

The Complaint falls short of the most basic pleading requirements. The Trustee fails to allege that the funds transferred to Credit Suisse were BLMIS property, and his attempt to

---

[49] *Picard v. Fairfield*, 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021). Credit Suisse respectfully submits that this Court's recent decisions in *Multi-Strategy* and *Banque SYZ* misinterpret Judge Rakoff's decisions on the applicability of the section 546(e) safe harbor to subsequent transferees. The District Court has held, in multiple actions brought by the Trustee seeking to recover subsequent transfers, that "even if the initial (or mediate) transferee fails to raise a Section 546(e) defense against the Trustee's avoidance of certain transfers . . . the subsequent transferee is nonetheless entitled to raise a Section 546(e) defense against recovery of those funds." *Cohmad*, 2013 WL 1609154, at *7. Judge Rakoff explained that the "one caveat" to the safe harbor was if a "*subsequent transferee*" had "actual knowledge of Madoff Securities' fraud," which the Trustee has not alleged here. *Id.* In *Cohmad*, the defendants included subsequent transferees of the same feeder funds whose alleged knowledge of the BLMIS fraud the Trustee now argues defeats application of the safe harbor. Yet, nowhere did Judge Rakoff in *Cohmad*—or in any of the later decisions applying the safe harbor to subsequent transfer claims— ever suggest that an innocent subsequent transferee would be deprived of the safe harbor merely because the initial transferee allegedly knew of Madoff's fraud. *See id.*; *see also Picard v. ABN Amro Bank (Ireland) Ltd.*, 505 B.R. 135, 142 (S.D.N.Y. 2013) ("the Court has found that, in the majority of cases, section 546(e) requires the dismissal of the Trustee's avoidance claims, except those brought under section 548(a)(1)(A) and *related* recovery claims under section 550(a)").

[50] *Picard v. Fairfield*, 2021 WL 3477479, at *4-5.

overcome this deficiency by impermissibly incorporating by reference an entirely different pleading in a different action is defective under Rule 8. Moreover, the Trustee's own pleading establishes that it is mathematically impossible, and thus clearly implausible, for funds transferred to Credit Suisse from the Feeder Funds to contain BLMIS customer property.

Even if this Court were to determine that the Trustee has adequately pleaded his claims, the Complaint establishes that Credit Suisse is entitled to the good-faith defense. The facts alleged by the Trustee show that Credit Suisse received the redemptions for value, acted in good faith, and could not have discovered Madoff's fraud. At a minimum, his recovery should be greatly reduced because a bulk of the alleged transfers are barred by Bankruptcy Code section 546(e), and the Trustee has failed to plead that Credit Suisse had actual knowledge of the Madoff Fraud.

This lawsuit should be dismissed with prejudice.

Dated: June 15, 2022

New York, New York

Respectfully Submitted,

**O'MELVENY & MYERS LLP**

By: */s/ William J. Sushon*_____
       William J. Sushon
       Daniel S. Shamah
       Kayla N. Haran
       7 Times Square
       New York, New York 10036
       Telephone: (212) 326-2000
       Facsimile: (212) 326-2061
       wsushon@omm.com
       dshamah@omm.com
       kharan@omm.com

*Attorneys for Defendants Credit Suisse AG; Credit Suisse AG, Nassau Branch; Credit Suisse (Luxembourg) SA; Credit Suisse International; Credit Suisse Nominees (Guernsey) Limited; Credit Suisse London Nominees Limited; and Credit Suisse (UK) Limited*