**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and*
*the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | (Substantively Consolidated) |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 11-02568 (CGM) |
| Plaintiff, | |
| v. | |
| CATHAY LIFE INSURANCE CO., LTD., | |
| Defendant. | |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT**
**CATHAY LIFE INSURANCE CO., LTD.'S MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS .....................................................................................4

    I.     THE BLMIS PONZI SCHEME..........................................................4

    II.    THE INITIAL TRANSFEREE ACTION AND SETTLEMENT ..........................4

    III.   CATHAY AND ITS INVESTMENTS IN SENTRY..............................................5

ARGUMENT ......................................................................................................6

    I.     THIS COURT HAS PERSONAL JURISDICTION OVER CATHAY .................6

         A.    Cathay Purposefully Availed Itself of the Laws and Privileges of
              Conducting Business in New York by Investing in Sentry ........................8

             1.    Cathay's Investments in BLMIS Through Sentry Establish
                   Minimum Contacts...........................................................9

                   a.    *BLI* and Recent Decisions in *Multi-Strategy* and
                          *Banque SYZ* Establish Personal Jurisdiction......................10

                   b.    *Walden* Does Not Save Cathay from this Court's
                          Jurisdiction.........................................................11

             2.    Cathay's Contacts With FGG Establish Minimum Contacts.........13

             3.    Cathay's Purposeful Use of New York Bank Accounts
                    Establishes Specific Personal Jurisdiction.....................................16

         B.    The Exercise of Personal Jurisdiction Is Reasonable ................................19

         C.    At Minimum, the Trustee Is Entitled to Jurisdictional Discovery ............20

    II.    SECTION 546(e) DOES NOT BAR RECOVERY FROM CATHAY.................21

         A.    Sentry Had Actual Knowledge of Madoff's Fraud....................................22

         B.    The Actual Knowledge Requirement Under Section 546(e) Is
              Inapplicable to the Recovery of Subsequent Transfers Under Section
              550.........................................................................23

i

C.    The Trustee Has Adequately Alleged Actual Fraudulent Intent Under
Section 548(a)(1)(A) of the Bankruptcy Code...........................................26

III.    THE TRUSTEE'S COMPLAINT ADEQUATELY PLEADS THAT
CATHAY RECEIVED BLMIS CUSTOMER PROPERTY................................29

IV.    THE TRUSTEE SUFFICIENTLY PLEADS THE AVOIDABILITY OF
THE SENTRY TRANSFERS..............................................................................33

A.    The Incorporated Material Complies With Rules 10 and 8 ......................34

B.    The Court Can Take Judicial Notice of the *Fairfield Inv. Fund*
Decision ...................................................................................................36

CONCLUSION.....................................................................................................................37

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
   599 B.R. 730 (Bankr. S.D.N.Y. 2019) ...............................................................29, 30

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
   98 F.3d 25 (2d Cir. 1996)................................................................................8

*Al Rushaid v. Pictet & Cie*,
   28 N.Y.3d 316 (2016) ......................................................................................17

*Am. Casein Co. v. Geiger (In re Geiger)*,
   446 B.R. 670 (Bankr. E.D. Pa. 2010) ............................................................34

*Armstrong v. Collins*,
   No. 01-cv-2437 (PAC), 2010 WL 1141158 (S.D.N.Y. Mar. 24, 2010) ............27-28

*Ayyash v. Bank Al-Madina*,
   No. 04 Civ. 9201(GEL), 2006 WL 587342 (S.D.N.Y. Mar. 9, 2006) ...................21

*In re Bayou Grp., LLC*,
   439 B.R. 284 (S.D.N.Y. 2010)...........................................................................27

*Bear Stearns Secs. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*,
   397 B.R. 1 (S.D.N.Y. 2007)...........................................................................27, 28

*In re Bernard L. Madoff Inv. Secs. LLC (Picard v. Ida Fishman Recoverable Trust)*,
   773 F.3d 411 (2d Cir. 2014).............................................................................23

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985).................................................................................7, 8, 14, 19

*Burlington Indus., Inc. v. Salem Int'l Co.*,
   645 F. Supp. 872 (S.D.N.Y. 1986) ....................................................................13

*In re Caremerica*,
   409 B.R. 737 (E.D.N.C. 2009)...........................................................................31

*Chase Manhattan Bank v. Banque Generale Du Com.*,
   No. 96-cv-5184 (KMW), 1997 WL 266968 (S.D.N.Y. May 20, 1997) ...............14

*Chloé v. Queen Bee of Beverly Hills, LLC*,
   616 F.3d 158 (2d Cir. 2010)........................................................................7, 8, 19

*CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*,
   393 B.R. 306 (Bankr. W.D.N.Y. 2008) ................................................................33

*Cohen v. UBS Fin. Servs., Inc.*,
   No. 12-CV-02147 (LGS), 2014 WL 240324 (S.D.N.Y. Jan. 22, 2014), *aff'd*,
   799 F.3d 174 (2d Cir. 2015)..................................................................................27

*Cromer Fin. Ltd. v. Berger*,
   137 F. Supp. 2d 452 (S.D.N.Y. 2001).....................................................................7

*Davis v. Bifani*,
   No. 07-cv-00122-MEH-BNB, 2007 WL 1216518 (D. Colo. Apr. 24, 2007)........................35

*DeMasi v. Benefico*,
   567 F. Supp. 2d 449 (S.D.N.Y. 2008).....................................................................36

*Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*,
   722 F.3d 81 (2d Cir. 2013)....................................................................................6

*Drenis v. Haligiannis*,
   452 F. Supp. 2d 418 (S.D.N.Y. 2006)....................................................................28

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
   397 F. Supp. 3d 323 (S.D.N.Y. 2019).....................................................................9

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
   No. 10-13164, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018)................................15, 16

*Ferrari v. Cnty. of Suffolk*,
   790 F. Supp. 2d 34 (E.D.N.Y. 2011) .....................................................................36

*Finn v. All. Bank*,
   860 N.W.2d 638 (Minn. 2015)..............................................................................28

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021)..............................................................................12, 15, 18

*Gowan v. The Patriot Grp., LLC (In re Dreier LLP)*,
   452 B.R. 391 (Bankr. S.D.N.Y. 2011).....................................................................28

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
   425 F.3d 158 (2d Cir. 2005)...................................................................................8

*Gredd v. Bear Stearns Secs. Corp. (In re Manhattan Inv. Fund Ltd.)*,
   310 B.R. 500 (Bankr. S.D.N.Y. 2002)....................................................................28

*Hau Yin To v. HSBC Holdings PLC*,
No. 15CV3590-LTS-SN, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd*,
700 F. App'x 66 (2d Cir. 2017*)* .....................................................................18

*Helms v. Metro. Life Ins. Co. (In re O'Malley)*,
601 B.R. 629 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021) ..........................33

*Hill v. HSBC Bank PLC*,
207 F. Supp. 3d 333 (S.D.N.Y. 2016) ....................................................................18

*Hinton v. Trans Union, LLC*,
654 F. Supp. 2d 440 (E.D. Va. 2009) ..................................................................37

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945) .......................................................................................7, 8

*Johnson v. Holder*,
564 F.3d 95 (2d Cir. 2009) .............................................................................27

*Kelley v. Safe Harbor Managed Acct. 101, Ltd.*,
31 F.4th 1058 (8th Cir. 2022) ......................................................................24, 26

*Kelley v. Westford Special Situations Master Fund, L.P.*,
No. 19-cv-1073, 2020 WL 3077151 (D. Minn. June 10, 2020) ...............................32

*Kiobel v. Royal Dutch Petroleum Co.*,
No. 02 Civ. 7618 (KMW)(HBP), 2009 WL 3817590 (S.D.N.Y. Nov. 16,
2009) ...................................................................................................20, 21

*Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*,
No. 07-MD-1902 (JSR), 2013 WL 12191844 (S.D.N.Y. Mar. 25, 2013) .............................15

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
732 F.3d 161 (2d Cir. 2013) ...........................................................................17

*Licci v. Lebanese Canadian Bank, SAL*
20 N.Y.3d 327 (2012) .....................................................................................17

*Lowden v. William M. Mercer, Inc.*,
903 F. Supp. 212 (D. Mass. 1995) ...................................................................35

*Lustig v. Weisz & Assocs., Inc. (In re Unified Com. Cap., Inc.)*,
260 B.R. 343 (Bankr. W.D.N.Y. 2001) ..............................................................28

*Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC*,
843 F. Supp. 2d 191 (D. Mass. 2012) ................................................................35

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996) ......................................................................................8

*Minnie Rose LLC v. Yu*,
    169 F. Supp. 3d 504 (S.D.N.Y. 2016) ....................................................................19

*Motors Liquidation Co. Avoidance Action Trust v. JPMorgan Chase Bank, N.A.*
    *(In re Motors Liquidation Co.)*,
    565 B.R. 275 (Bankr. S.D.N.Y. 2017) ....................................................................15

*Muhammad v. Bethel-Muhammad*,
    Civil Action No. 11-0690-WS-B, 2012 WL 1854315 (S.D. Ala. May 21,
    2012) ........................................................................................................................35

*Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*,
    No. 13 CIV. 6705 (DLC), 2014 WL 1673351 (S.D.N.Y. Apr. 28, 2014) ..............35

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
    No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010) ....35

*O'Toole v. MyPlace Dev. SP. Z O.O. (In re Sledziejowski)*, Ch. 7 Case No. 13-
    22050, Adv. No. 15-08207, 2016 WL 6155929 (Bankr. S.D.N.Y. Oct. 21,
    2016) ........................................................................................................................17

*Off. Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic
    Bank*,
    549 B.R. 56 (S.D.N.Y. 2016) ..................................................................................17

*Pelt v. Utah*,
    539 F.3d 1271 (10th Cir. 2008) ...............................................................................15

*Picard v. Banque SYZ & Co., SA*,
    Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June
    14, 2022) ........................................................................................................ *passim*

*Picard v. BNP Paribas S.A. (In re BLMIS)*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018) ........................................................... *passim*

*Picard v. Bureau of Labor Ins. (In re BLMIS)*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) (Lifland, J.) ....................................... *passim*

*Picard v. Charles Ellerin Revocable Trust (In re BLMIS)*,
    Adv. Pro. No. 10-04398, 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14,
    2012) ..................................................................................................................29, 32

*Picard. v. Citibank, N.A. (In re BLMIS)*,
    12 F.4th 171 (2d. Cir. 2021) ..........................................................................4, 27, 36

*Picard v. Cohen*,
   Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296 (Bankr. S.D.N.Y. Apr.
   25, 2016) ..................................................................................................23

*Picard v. Est. of Seymour Epstein*,
   No. 1:21-cv-02334-CM, 2022 WL 493734 (S.D.N.Y. Feb. 17, 2022)....................................26

*Picard v. Est. (Succession) of Doris Igoin (In re BLMIS)*,
   525 B.R. 871 (Bankr. S.D.N.Y. 2015)..................................................................27

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*,
   627 B.R. 546 (Bankr. S.D.N.Y. 2021) ................................................................7, 8

*Picard v. Fairfield Inv. Fund Ltd.*,
   Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Aug. 28, 2020)........................................3

*Picard v. Fairfield Inv. Fund Ltd.*,
   Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Dec. 6, 2021) .........................................19

*Picard v. Fairfield Investment Fund Ltd. (In re BLMIS)*,
   Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6,
   2021) ..................................................................................... *passim*

*Picard v. Fairfield Pagma Assocs., LP*,
   Adv. Pro. No. 10-05169 (CGM) (Bankr. S.D.N.Y. April 13, 2022) ......................................26

*Picard v. Gettinger*,
   976 F.3d 184 (2d Cir. 2020), *cert. denied sub nom. Gettinger v. Picard*, 141 S.
   Ct. 2603 (2021) ........................................................................................26

*Picard v. JABA Assocs. LP*,
   528 F. Supp. 3d 219 (S.D.N.Y. 2021)..................................................................29

*Picard v. JPMorgan Chase & Co. (In re BLMIS)*,
   Adv. Pro. No. 08-99000 (SMB), 2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10,
   2014) ..................................................................................................11

*Picard v. Ken-Wen Fam. Ltd. P'ship*,
   638 B.R. 41 (Bankr. S.D.N.Y. 2022)...................................................................26

*Picard v. Lisa Beth Nissenbaum Trust*,
   20 cv. 3140 (JGK), 2021 WL 1141638 (S.D.N.Y. Mar. 24, 2021), *judgment
   entered*, No. 20 cv. 3140 (JGK), 2021 WL 1167939 (S.D.N.Y. Mar. 25, 2021) ..............26, 29

*Picard v. Maxam Absolute Return Fund, L.P.*,
   460 B.R. 106 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012) .................7, 9, 20

*Picard v. Mayer (In re BLMIS)*,
  Adv Pro. No. 20-01316 (CGM), 2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27,
  2021) ........................................................................................................................7, 30

*Picard v. Merkin (In re BLMIS)*,
  515 B.R. 117 (Bankr. S.D.N.Y. 2014) .............................................................29, 30

*Picard v. Merkin (In re BLMIS)*,
  581 B.R. 370 (Bankr. S.D.N.Y. 2017) ..................................................................32

*Picard v. Multi-Strategy Fund Ltd.*,
  Adv. Pro. No. 12-01205 (CGM), 2022 WL 2137073 (Bankr. S.D.N.Y. June
  13, 2022) ....................................................................................... *passim*

*Picard v. Nelson (In re BLMIS)*,
  610 B.R. 197 (Bankr. S.D.N.Y. 2019) .............................................................26, 29

*Picard v. Sage Realty*,
  No. 20-CV-10109 (JFK), 2022 WL 1125643 (S.D.N.Y. Apr. 15, 2022) .........26, 27

*Picard v. Shapiro (In re BLMIS)*,
  542 B.R. 100 (Bankr. S.D.N.Y. 2015) ..................................................................31

*In re Picard, Trustee for the Liquidation of Bernard L. Madoff Investment
  Securities LLC*,
  917 F.3d 85 (2d Cir. 2019*)* .........................................................................9, 20, 24

*Porina v. Marward Shipping Co.*,
  521 F.3d 122 (2d Cir. 2008) ...................................................................................7

*Rothman v. Gregor*,
  220 F.3d 81 (2d Cir. 2000) .............................................................................. 36-37

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
  624 F.3d 123 (2d Cir. 2010) ...................................................................................7

*SAS Grp. Inc. v. Worldwide Inventions, Inc.*,
  245 F.Supp.2d 543 (S.D.N.Y. 2003) .....................................................................13

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  531 B.R. 439 (Bankr. S.D.N.Y. 2015) .............................................................22, 23

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  No. 12-MC-115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) .............21, 25

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
  501 B.R. 26 (S.D.N.Y. Oct. 28, 2013) (Rakoff, J.) ..........................................24, 34

*Sharp Int'l Corp. v. State Street Bank & Trust Co.*,
    403 F.3d 43 (2d Cir. 2005)................................................................28

*Sherman v. A.J. Pegno Constr. Corp.*,
    528 F. Supp. 2d 320 (S.D.N.Y. 2007).................................................35

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
    379 B.R. 5 (Bankr. E.D.N.Y. 2007)............................................ 30-31

*Spetner v. Palestine Inv. Bank*,
    495 F. Supp. 3d 96 (E.D.N.Y. 2020) ............................................ 17-18

*SPV Osus Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018)..............................................................18

*SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*,
    620 B.R. 505 (Bankr. S.D.N.Y. 2020) ........................................ 25-26

*Sunward Elecs., Inc. v. McDonald*,
    362 F.3d 17 (2d Cir. 2004)...............................................................14

*Tamam v. Fransabank SAL*,
    677 F. Supp.2d 720 (S.D.N.Y. 2010)................................................17

*Taylor v. Sturgell*,
    553 U.S. 880 (2008)........................................................................15

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
    916 F.3d 143 (2d Cir. 2019)...............................................................7

*United States v. Int'l Longshoremen's Ass'n*,
    518 F. Supp. 2d 422 (E.D.N.Y. 2007) ..............................................35

*Walden v. Fiore*,
    571 U.S. 277 (2014)...................................................................11, 12

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016)..............................................................19

*Whitaker Sec., LLC v. Rosenfeld (In re Rosenfeld)*,
    543 B.R. 60 (Bankr. S.D.N.Y. 2015).................................................35

## Statutes

11 U.S.C. § 546(e) ......................................................................... *passim*

11 U.S.C. § 548(a)(1)..........................................................................34

11 U.S.C. § 548(a)(1)(A) ............................................................2, 21, 28

11 U.S.C. § 550(a) ................................................................................................... *passim*

15 U.S.C. §§ 78aaa-*lll* ...............................................................................................1

**Rules**

Fed. R. Civ. P 12(b)(2).............................................................................................1, 19

Fed. R. Civ. P. 12(b)(6)................................................................................................1

**Other Authorities**

5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* 3d §
1326 (4th ed. 2008) ...............................................................................................35

Plaintiff Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L.

Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15

U.S.C. §§ 78aaa-*lll* ("SIPA"), and the substantively consolidated chapter 7 estate of Bernard L.

Madoff ("Madoff"), by and through the Trustee's undersigned counsel, respectfully submits this

memorandum of law and the supporting declaration of Eric R. Fish ("Fish Decl.") in opposition to

Cathay Life Insurance Co., Ltd.'s ("Cathay") motion to dismiss the Complaint ("Motion" or

"Mot.").[1]

## PRELIMINARY STATEMENT

This adversary proceeding is part of the Trustee's continuing efforts in this SIPA

liquidation proceeding to recover BLMIS customer property that was stolen as part of Madoff's

Ponzi scheme.  In this action, the Trustee seeks to recover approximately $24.5 million in

subsequent transfers that Cathay received from New York-centric Fairfield Sentry Limited

("Sentry"), the largest of the BLMIS feeder funds.  In an effort to evade this Court's jurisdiction,

Cathay argues that all of the transfers at issue occurred outside of the United States and that Cathay

lacks the requisite minimum contacts.  Cathay therefore moves to dismiss the Trustee's Complaint

on the grounds that this Court does not have personal jurisdiction pursuant to Federal Rule of Civil

Procedure 12(b)(2).  Cathay also moves to dismiss the Trustee's Complaint pursuant to Rule

12(b)(6) on the grounds that: (i) the safe harbor under Section 546(e) bars recovery and actual

intent has not sufficiently been alleged; (ii) the Complaint fails to plead that Cathay received

transfers of customer property; and (iii) the Complaint does not adequately allege the avoidability

of the initial transfers.  All of these arguments lack merit.

---

[1] All references are to Cathay's Amended Motion to Dismiss filed at ECF No. 119.  That document superseded an earlier filed Memorandum of Law at ECF No. 117, which the Trustee considers a nullity.

1

*First*, this Court has personal jurisdiction over Cathay because its contacts are the type that establish and support the exercise of personal jurisdiction in this Circuit. Specifically, Cathay invested in Sentry knowing that it was managed by Fairfield Greenwich Group ("FGG") in New York and that virtually all of Sentry's assets were placed with BLMIS in New York. Although Cathay paints a surrealistic picture of a fully foreign investment in which it stood on the sidelines while Sentry invested its money in BLMIS, Cathay fully intended that its money would be invested with BLMIS. Cathay even asked FGG if it could call BLMIS the "external fund manager." Cathay contemplated the jurisdiction of the New York courts in executing a subscription agreement with Sentry that contained New York forum selection and choice of law provisions. Cathay also communicated with FGG representatives and visited FGG's offices in New York in connection with its Sentry investment. In addition, Cathay utilized bank accounts in New York to deposit funds with Sentry and to receive the very transfers at issue in this case.

*Second*, the Trustee has plausibly alleged avoidability of the initial transfers. The vast majority of the subsequent transfers at issue—more than $22 million of approximately $24.5 million total—indisputably consist of two-year transfers that are not subject to Section 546(e) regardless of Sentry's knowledge of Madoff's fraud. Cathay nevertheless argues that (1) the Section 546(e) safe harbor applies, and its own lack of knowledge as a subsequent transferee is determinative; and (2) the Trustee has not sufficiently alleged BLMIS's intent to defraud under Section 548(a)(1)(A). But both of these arguments fail based on the plain language of the Bankruptcy Code, applicable precedent, and law of the case in this SIPA liquidation proceeding.

*Third*, the Trustee plausibly alleges that Cathay received customer property under Section 550(a) by outlining the relevant pathways through which customer property was transferred from BLMIS to Sentry and subsequently to Cathay. Cathay challenges the nature of the transfers by

2

contending that the Trustee does not tie together the subsequent transfers with the initial transfers. But this is essentially a tracing argument, which is inappropriate at this stage of the litigation and contrary to established law. Cathay's fact-based arguments attacking the plausibility of the subsequent transfers similarly fail under applicable precedent.

*Finally*, the Complaint adequately alleges the avoidability of the initial transfers. Cathay asserts that the Trustee violates Rules 8 and 10 by incorporating by reference his complaint against Sentry (the "Fairfield Amended Complaint"),[2] but this argument conflicts with precedent from the District Court and the purpose of the rules. Moreover, this Court may take judicial notice of the operative complaint—the Fairfield SAC—and its opinion in *Picard v. Fairfield Investment Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*"), in which this Court held that the Trustee plausibly alleged the avoidability of the initial transfers.

Cathay's arguments are similar to those made by two other subsequent transferee defendants, Multi-Strategy Fund Ltd. and Banque SYZ & Co., in their motions to dismiss. In separate Memoranda Decisions issued on June 13 and June 14, 2022, this Court denied both motions in their entirety. *See Picard v. Multi-Strategy Fund Ltd.*, Adv. Pro. No. 12-01205 (CGM), 2022 WL 2137073 (Bankr. S.D.N.Y. June 13, 2022) ("*Multi-Strategy*"); *Picard v. Banque SYZ & Co., SA*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque SYZ*"). For the reasons articulated in the Court's Memoranda Decisions and for the

---

[2] After the Trustee filed his Complaint against Cathay, the Trustee filed a Second Amended Complaint ("Fairfield SAC") in the initial transfer action. *See* Fairfield SAC, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286.

reasons the Trustee sets forth herein, the Trustee respectfully requests that the Court deny Cathay's

Motion.

## STATEMENT OF FACTS

### I.    THE BLMIS PONZI SCHEME

Madoff founded and operated BLMIS in New York until its collapse in 2008.  *See* Compl.

¶¶ 24, 32, ECF No. 1.  BLMIS had three principal business units: (i) a proprietary trading business;

(ii) a market-making business; and (iii) an investment advisory business (the "IA Business").  *Id*.

¶ 24.  For its IA Business customers, BLMIS purportedly executed a split-strike conversion

strategy ("SSC Strategy"), which involved: (a) investing in a basket of common stocks from the

Standard & Poor's 100 Index; (b) buying put options and selling call options to hedge against price

changes in the underlying basket of stocks; and (c) purchasing U.S. treasury bills when the money

was out of the market.  *Id.* ¶¶ 25–26.  In reality, BLMIS operated a Ponzi scheme through its IA

Business.  *Id.* ¶ 29.  On December 11, 2008, Madoff's fraud was publicly revealed, and he was

arrested for criminal violations of federal securities laws, including securities fraud, investment

adviser fraud, and mail and wire fraud.  *Id.* ¶ 10.

The extent of damage Madoff caused was made possible by BLMIS "feeder funds"—large

investment funds created for the express purpose of funneling investors' funds into BLMIS.  *See*

*Picard. v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 179 (2d. Cir. 2021).  Cathay invested in one

of these feeder funds, Sentry, a fund operated by FGG in New York that invested more than 95%

of its assets with BLMIS.  *See* Compl. ¶¶ 2, 6.

### II.    THE INITIAL TRANSFEREE ACTION AND SETTLEMENT

Following BLMIS's collapse and the commencement of the SIPA liquidation proceeding,

the Trustee filed an adversary proceeding against Sentry and related defendants to avoid and

recover fraudulent transfers of stolen customer property in the amount of approximately $3 billion.

*Id.* ¶ 36.  In 2011, the Trustee settled with Sentry and others.  *Id.* ¶ 41.  As part of the settlement,

Sentry consented to a judgment in the amount of $3.054 billion but repaid only $70 million to the

BLMIS estate.  *Id.*  The Trustee then commenced a number of adversary proceedings against

defendants like Cathay to recover the approximately $3 billion in missing customer property.

## III.    CATHAY AND ITS INVESTMENTS IN SENTRY

Cathay, an insurance company based in Taiwan, invested substantial sums with Sentry,

which, in turn, invested nearly all its funds with BLMIS.  *Id.* ¶¶ 2, 22.  Prior to BLMIS's collapse,

Cathay received two transfers from Sentry in August 2005 and September 2008 totaling

approximately $24.5 million.  *Id.* ¶ 42, Ex. D.  For both transfers, the Trustee's Complaint sets

forth the subsequent transferor (Sentry), the subsequent transferee (Cathay), the date of the

subsequent transfer, and the amount of the subsequent transfer.  *Id.*, Ex. D.[3]

Investors in Sentry, including Cathay, were required to execute subscription agreements in

which the investors acknowledged that they had "such knowledge and experience in financial and

business matters that [they were] capable of evaluating the risks of this investment."  *See* Fish

Decl., Ex. A ¶ 8.  The subscription agreements also incorporated Sentry's PPMs; and by signing,

investors warranted that they "received and read a copy of the [PPMs]."  *Id.* ¶ 7.  Cathay signed at

least two subscription agreements—one in September 2003 and another in November 2007.  Fish

Decl., Exs. A, B.  Cathay thus received at least two versions of the Sentry PPM in subscribing to

the feeder fund.  Cathay acknowledged receiving and reading a PPM with their initial investment—

---

[3] As Cathy notes, the Complaint also named Cathay United Bank Ltd. as a defendant, but that defendant was subsequently dismissed such that Cathay is the sole remaining defendant in this action. *See* Mot. at 5 n.11.  Exhibit D to the Complaint specifies the transfers that Cathay received (as opposed to Exhibit E to the Complaint, which specifies the transfers made to Cathay United Bank Ltd.).

likely the July 1, 2003 PPM—and received at least one additional PPM dated August 14, 2006. Fish Decl., Exs. C, D, E. The PPMs disclosed to Cathay BLMIS's central role in controlling the investment. In fact, before signing its September 2003 subscription agreement, a Cathay representative asked if she could call BLMIS the "external fund manager" of Sentry and questioned FGG's role in light of BLMIS's level of control. Fish Decl., Ex. F.

The PPMs and subscription agreements clearly spelled out that an investment in Sentry was a New York-based investment, containing multiple references to the United States and New York throughout. As Cathay acknowledges, the subscription agreements contained a New York choice of law provision and forum selection clause in which Cathay consented to jurisdiction in New York. Mot. at 10; Fish Decl., Ex. A ¶¶ 16, 19; Compl. ¶ 6. And like other Sentry investors, Cathay agreed to send its subscription payments to Sentry's HSBC bank account in New York (the "HSBC NY Account"). Fish Decl., Ex. A ¶ 3; Compl. ¶ 6. While investing with Sentry—and ultimately BLMIS—Cathay utilized an account at JP Morgan Chase Bank in New York for subscriptions and redemptions. Fish Decl., Exs. A ¶ 30.h, G, H. In addition, a Cathay representative communicated with and visited FGG's office in New York regarding Cathay's Sentry investment. Fish Decl., Exs. I, J, K.

## ARGUMENT

## I.      THIS COURT HAS PERSONAL JURISDICTION OVER CATHAY

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only show a *prima facie* case that personal jurisdiction exists. *Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013). A *prima facie* showing of jurisdiction "may be established solely by allegations." *Id.* at 84-85 ("Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of

jurisdiction."). A plaintiff may also establish a *prima facie* case of jurisdiction through affidavits and supporting materials that contain averments of fact outside the pleadings. *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010); *Picard v. Mayer (In re BLMIS)*, Adv Pro. No. 20-01316 (CGM), 2021 WL 4994435, at *3 (Bankr. S.D.N.Y. Oct. 27, 2021). These pleadings and affidavits are to be construed "in the light most favorable to plaintiffs, resolving all doubts in their favor." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)).

Depending on the nature of a defendant's contacts with the forum, a court may exercise general or specific jurisdiction. *Cromer Fin. Ltd. v. Berger,* 137 F. Supp. 2d 452, 473 (S.D.N.Y. 2001). Relevant here, specific jurisdiction exists where the defendant purposely directs its activities into the forum, and the underlying cause of action arises out of or relates to those activities. *See Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021) ("*Fairfield*").

The specific jurisdiction analysis is a two-step inquiry. First, the court assesses whether the defendant established "minimum contacts" in the forum, such that the defendant purposely availed itself of the privilege of conducting activity in the forum. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985). The defendant's activities need not have taken place within the forum, "and a single transaction with the forum will suffice." *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012). Moreover, minimum contacts may be found when a "defendant's allegedly culpable conduct involves at least in part financial transactions that touch the forum." *See Fairfield*, 627 B.R. at 566 (quoting *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 151 (2d Cir. 2019)).

7

In determining whether a defendant's contacts establish personal jurisdiction, the court must look at the "totality of the circumstances" rather than analyze each contact in isolation. *See Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996); *see also Chloé*, 616 F.3d at 164 (analyzing totality of defendants' contacts to determine jurisdiction under New York's long-arm statute and Due Process Clause); *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005) ("No single event or contact connecting defendant to the forum state need be demonstrated; rather, the *totality of all defendant's contacts* with the forum state must indicate that the exercise of jurisdiction would be proper." (citation omitted) (emphasis in original)).

Second, the Court conducts a reasonableness inquiry to determine that its exercise of jurisdiction will not offend traditional notions of "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 320. To determine whether jurisdiction is reasonable, courts consider the following:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996). Where the plaintiff has alleged purposeful availment, however, the burden shifts to the defendant to present a "compelling case" that jurisdiction would be unreasonable. *Fairfield*, 627 B.R. at 567 (citing *Burger King*, 471 U.S. at 472-73).

## A.    Cathay Purposefully Availed Itself of the Laws and Privileges of Conducting Business in New York by Investing in Sentry

Cathay had numerous and substantive contacts with New York that establish this Court's jurisdiction. Cathay: (1) invested in Sentry, whose assets were managed from FGG's offices in

8

New York, custodied by BLMIS in New York, and placed in U.S. investments; (2) used New York banks to transact business with Sentry; (3) had connections with New York through its Sentry subscription agreements; and (4) communicated with FGG representatives in New York and visited FGG's New York headquarters. Several of these contacts are sufficient in and of themselves to support jurisdiction. The contacts in their totality plainly establish that Cathay purposefully directed its activities to the United States and New York specifically. *See Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 397 F. Supp. 3d 323, 344 (S.D.N.Y. 2019) ("When all [defendant]'s Agreement-related contacts are considered together, it is clear [the defendant] purposely availed itself of the forum.").

### 1.   Cathay's Investments in BLMIS Through Sentry Establish Minimum Contacts

Cathay's intentional investment with BLMIS through Sentry, a known BLMIS feeder fund, alone establishes personal jurisdiction. Regardless of its other New York contacts supporting this Court's assertion of personal jurisdiction, Cathay's deliberate targeting of BLMIS and the New York securities market—through entities expressly constituted for that purpose—is dispositive.

As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going." *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019*); see also Maxam*, 460 B.R. at 116-20 (finding jurisdiction where defendant knew and intended that funds invested with BLMIS feeder fund would be sent to New York for investment by BLIMS in New York). Here, Cathay knew from the PPMs it received and reviewed that: (i) Sentry invested at least 95% of its assets with BLMIS; (ii) BLMIS performed all investment management duties for these assets; (iii) BLMIS was registered with the U.S. Securities and Exchange Commission; (iv) BLMIS was the executing broker for Sentry's investments and purportedly operated and executed

9

the SSC Strategy on the fund's behalf; (v) BLMIS's SSC Strategy purportedly involved the purchase of U.S. equities, U.S. options, and U.S. treasury bills; (vi) the decisions regarding which U.S. securities to purportedly purchase, and when to make such purchases, were made by BLMIS in New York; (vii) BLMIS was the custodian of Sentry's investments with BLMIS; and (viii) BLMIS was essential to Sentry's continued operation and profitability. *See* Fish Decl., Exs. C, E. As noted above, Cathay was well aware of Madoff's central role from the outset, even questioning FGG's role in light of Madoff's level of control. *See id.*, Ex. F.

### a. *BLI* and Recent Decisions in *Multi-Strategy* and *Banque SYZ* Establish Personal Jurisdiction

Based on the demonstrated intention to invest with BLMIS in New York through Sentry, this Court has already concluded that Sentry investors like Cathay are subject to personal jurisdiction in *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 516-18 (Bankr. S.D.N.Y. 2012) (Lifland, J.) ("*BLI*"). There, as here, the Trustee's suit was "based upon [the subsequent transferee's] investment of tens of millions of dollars in Fairfield Sentry with the specific goal of having funds invested in BLMIS in New York, with intent to profit therefrom." *Id.* at 506. There, as here, the subsequent transferee executed a similar subscription agreement and was provided with an identical PPM establishing the BLMIS-centric purpose. *Id.* at 507-08; Fish Decl. Ex. E. There, as here, the subsequent transferee argued that the foreseeability of its investment "end[ing] up" in a BLMIS account was insufficient to support personal jurisdiction. *Id.* at 517. Not only did the Court reject this argument, Judge Lifland called it "disingenuous," explaining that:

> BLI's investments in Fairfield Sentry did not merely "end up" in an account at BLMIS as a result of happenstance or coincidence. Rather, BLI purposefully availed itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in

10

> Fairfield Sentry would be transferred to BLMIS in New York to be
> invested in the New York securities market.

*Id.*; *see also Picard v. JPMorgan Chase & Co. (In re BLMIS)*, Adv. Pro. No. 08-99000 (SMB),

2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014) (noting that courts in this liquidation

have already "confirmed that defendants who invested directly or indirectly with BLMIS and

received payments from BLMIS as initial transferees or as subsequent transferees of those initial

transferees were subject to the Court's personal jurisdiction").

As confirmed by this Court in *Multi-Strategy* and *Banque SYZ*, *BLI* establishes personal

jurisdiction here.  In *Multi-Strategy* and *Banque SYZ*, similar to here, the Trustee asserted

allegations as to the purpose of the investment and the defendants' contacts with FGG for ultimate

investment in BLMIS.  *See Multi-Strategy*, 2022 WL 2137073, at *3-4; *Banque SYZ*, 2022 WL

2135019, at *3-4.  Based on those contacts, this Court found that "Defendant's alleged contacts

with New York [were] not random, isolated, or fortuitous."  *Multi-Strategy*, 2022 WL 2137073, at

*4; *Banque SYZ*, 2022 WL 2135019, at *4.  Cathay's contacts are not meaningfully different than

those of the defendants in *BLI*, *Multi-Strategy*, and *Banque SYZ*.  In short, Cathay "intentionally

tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the

United States and reap the benefits therefrom."  *BLI*, 480 B.R. at 506.

### b.  *Walden* Does Not Save Cathay from this Court's Jurisdiction

To escape jurisdiction, Cathay relies on its contorted misreading of *Walden v. Fiore*, 571

U.S. 277 (2014).  Mot. at 12-13.  Contrary to Cathay's proclamation that *Walden* makes *BLI* "no

longer precedential authority," (Mot. at 13), *Walden* did no such thing and "is no assistance to

Defendant."  *Multi-Strategy*, 2022 WL 2137073, at *4.  Using the "effects test" to assess whether

injuries in a tort case arose within the forum state based on tortious activity outside of the form,

the Supreme Court in *Walden* found that a Georgia police officer could not be sued in Nevada for

11

an unlawful seizure of money in Georgia merely because he knew the plaintiffs resided in Nevada. *Id.* at 288-91. *Walden* simply reaffirms the well-established principle that personal jurisdiction cannot be premised solely on a plaintiff's unilateral contacts with the forum state. *See id.* at 284. Although it was foreseeable that the unlawful seizure would harm plaintiffs in their home state of Nevada, the Court found that the defendant's conduct neither occurred in nor was directed toward Nevada. *Id.* at 288-91. Rather, the harm occurred in Nevada solely because of plaintiffs' unilateral decision to be in Nevada when they desired to use the seized funds. *See id.* at 290.

By contrast, here, the Trustee is not alleging foreseeability as to the situs of an injury. The Trustee's allegations implicate the Supreme Court's "purposeful availment" framework (not the "effects" test), a concept that the Court in *Walden* did not reference, let alone apply. As in *BLI*, *Multi-Strategy*, and *Banque SYZ*, the Trustee is alleging that Cathay consciously invested in Sentry to reap the rewards of investing with BLMIS in New York, and received subsequent transfers as a consequence. *See, e.g.,* Compl. at ¶¶ 6, 35, Ex. D; Fish Decl. Ex. F. Cathay's efforts to downplay its investment's New York destination as a mere "foreseeable" consequence rather than a purposeful targeting of the forum is the same "disingenuous" argument this Court rejected in *BLI*.

Cathay also misinterprets *Walden* to the extent it argues, in effect, that its connections to the forum must be viewed in a vacuum as opposed to being based on its relationships with BLMIS and its feeder funds. *Walden* recognized that "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties." *Walden*, 571 U.S. at 286; *see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1031-32 (2021) (rejecting defendant's contention that *Walden* "shows that a plaintiff's residence and place of injury can never support jurisdiction" and pointing out that "[t]hose places still may be relevant in assessing the link between the defendant's forum contacts and the plaintiff's suit").

12

Accordingly, pursuant to *BLI*, *Multi-Strategy*, and *Banque SYZ*, there is no doubt that Cathay's purposeful targeting of New York by investing with BLMIS through Sentry establishes personal jurisdiction.

### 2.    Cathay's Contacts With FGG Establish Minimum Contacts

Cathay directed activity into the forum through its contacts with FGG in New York. *See SAS Grp. Inc. v. Worldwide Inventions, Inc.*, 245 F.Supp.2d 543, 549 (S.D.N.Y. 2003) (finding jurisdiction over defendant who traveled to New York for meeting to develop business relationship); *see also Burlington Indus., Inc. v. Salem Int'l Co.*, 645 F. Supp. 872, 874 (S.D.N.Y. 1986) (finding jurisdiction where defendant attended two meetings in New York to conduct business and reach an agreement).   For example, Cathay's alternative investments manager, Maggie Hsu, communicated with FGG representatives in New York on multiple occasions and even traveled from Taiwan to New York to visit FGG's offices in September 2007. *See* Fish Decl., Exs. I, J, K.   Such substantial, intentional contacts with FGG representatives in New York regarding an investment that was placed with BLMIS in New York involving the purported purchase of U.S. equities evidences the contacts—far more than minimum—required to hail Cathay into this jurisdiction.

Despite its protestations to the contrary, Cathay's subscription agreements with Sentry further evidence a "strong nexus with New York" supporting jurisdiction. *See BLI*, 480 B.R. at 517 n.15.   The PPMs, which Cathay acknowledged reviewing, included many facts which would have made it aware of the New York-nexus related to the investment and the outsized role of BLMIS in New York.   Fish Decl., Exs. A ¶ 7, C, E.   Moreover, in signing the Sentry subscription agreements, Cathay submitted to venue in New York, the jurisdiction of the New York courts, and the application of New York law. *Id.*, Ex. A ¶¶ 16, 19.   Specifically, the subscription agreements

were "governed and enforced in accordance with the laws of New York, without giving effect to its conflict of laws provisions." *Id.*, Ex. A ¶ 16. In addition, Cathay: (i) "agree[d] that any suit, action or proceeding . . . with respect to this Agreement and the Fund may be brought in New York," (ii) "irrevocably submit[ted] to the jurisdiction of the New York courts with respect to any [p]roceeding," and (iii) agreed that disputes over the agreement "shall be governed and enforced in accordance with the laws of New York," and that if litigating here, "may not claim that a Proceeding has been brought in an inconvenient forum." *Id.*, Ex. A ¶¶ 16, 19.

Cathay argues that these provisions are irrelevant because the Trustee is not a party to the subscription agreements and the Trustee's claims do not arise under the subscription agreements. Mot. at 10. This argument misses the mark. The Trustee is not arguing this Court has jurisdiction solely based on Cathay's consent. Rather, Cathay's agreements to New York law, New York jurisdiction, and New York venue show that Cathay purposefully directed its activities toward New York and provide another strong jurisdictional contact with New York.

"[A] choice of law provision may constitute a 'significant contact' with the forum state" and "is relevant in determining whether a defendant has purposefully availed itself of a particular forum's laws." *Chase Manhattan Bank v. Banque Generale Du Com.*, No. 96-cv-5184 (KMW), 1997 WL 266968, at *2 (S.D.N.Y. May 20, 1997); *see also Burger King*, 471 U.S. at 482 (finding jurisdiction where choice of law provision "reinforced [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there"); *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004) ("A choice of law clause is a significant factor in a personal jurisdiction analysis because the parties, by so choosing, invoke the benefits and protections of New York law."). For example, in *BLI*, the Court, without addressing the issue of whether defendants consented to jurisdiction, found that the clauses in the subscription agreements

14

"[f]urther evidenc[e] the strong nexus with New York." 480 B.R. at 517, n.15. Similarly, in

*Motors Liquidation Co. Avoidance Action Trust v. JPMorgan Chase Bank, N.A. (In re Motors*

*Liquidation Co.)*, the court held that even if defendant's agreement to New York forum and choice

of law provisions did not constitute consent, the provisions helped establish minimum contacts to

support specific jurisdiction. 565 B.R. 275, 288–89 (Bankr. S.D.N.Y. 2017) (finding agreement

provisions plus a correspondent bank account in New York reflected a relationship "centered in

New York").

The subscription agreements also plainly "relate to" the Trustee's claims and evidence a

strong nexus between this case and New York. *See Ford Motor*, 141 S. Ct. at 1026 (rejecting

requirement of a "strict causal relationship between the defendant's in-state activity and the

litigation"). Because the subscription agreements were necessary predicates to Cathay's receipt

of customer property through Sentry, the subscription agreements sufficiently relate to the

Trustee's claims to recover that customer property from Cathay.

Cathay's reliance on the treatment of the subscription agreements in *Fairfield Sentry Ltd.*

*v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, No. 10-13164, 2018 WL 3756343

(Bankr. S.D.N.Y. Aug. 6, 2018) (*"Fairfield Liquidators"*) is erroneous.[4] *See* Mot. at 10. In that

---

[4] Though not necessary to the Court's analysis, we note Cathay's argument that the Trustee is in privity with the Chapter 15 Fairfield liquidators and therefore bound by any rulings in the Fairfield liquidation is incorrect. *See* Mot. at 4 n.6, 28 n.26. The fact that the Fairfield Liquidators' claims were dismissed, (Mot. at 5), is therefore irrelevant here. The Trustee was not a party to the Fairfield Liquidators action, and his interests were not represented. Binding the Trustee would thus "run[] up against the historic tradition that everyone should have his own day in court.'" *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008) (citation omitted). And if *Taylor v. Sturgell*, 553 U.S. 880 (2008), "stands for anything, it is for the need to narrow and regularize the use of preclusion against nonparties." *Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*, No. 07-MD-1902 (JSR), 2013 WL 12191844, at *11 (S.D.N.Y. Mar. 25, 2013). Furthermore, the Trustee cannot be bound by the decision in the Fairfield liquidators' case because it raised different issues than the ones litigated in this action. The Fairfield liquidators' action did not involve recovery of subsequent transfers under the Bankruptcy Code, but rather specifically dealt with claims under the B.V.I. Insolvency Act. *Fairfield Liquidators*, 2018 WL 37566343, at *2. As the court in *Pelt v. Utah* explained, "a substantive legal relationship as contemplated by the exception is one in which the parties to the first suit are somehow accountable to nonparties who file a subsequent suit raising identical issues." 539 F.3d 1271, 1290 (10th Cir. 2008).

case, the Fairfield Liquidators argued that the defendants had consented to personal jurisdiction because they were bound by the New York provisions in the subscription agreements. *Fairfield Liquidators*, 2018 WL 3756343, at *7, 8. As noted above, the Trustee does not argue that Cathay consented to the jurisdiction of this Court solely by virtue of the subscription agreements. Rather, the subscription agreements, with New York choice of law, jurisdiction, and forum provisions, demonstrate Cathay's purposeful availment of the laws and privileges of New York and the reasonableness of jurisdiction. *See Multi-Strategy*, 2022 WL 2137073, at *5 n.3; *Banque SYZ*, 2022 WL 2135019, at *5 n.4.

### 3.    Cathay's Purposeful Use of New York Bank Accounts Establishes Specific Personal Jurisdiction

This Court also has jurisdiction over Cathay because it purposefully used the New York banking system to subscribe into and redeem from Sentry. Although Cathay asserts that the Trustee does not specifically allege Cathay maintained a bank account in the U.S. (Mot. at 15) and that "there are no allegations that Cathay engaged in conduct in New York in connection with either its subscription or redemption," (Mot. at 14), Cathay's September 2003 subscription agreement designates a JP Morgan Chase Bank account as the account from which it would pay subscription monies. *See* Fish Decl., Ex. A, ¶ 30.h. Cathay also used the account at JP Morgan Chase Bank in New York for receiving the transfers from Sentry at issue. *See* Fish Decl., Exs. G, H. Also notable is that Cathay wired funds to Sentry's HSBC NY Account in accordance with its subscription agreements. *Id.*, Ex. A, ¶ 3; *see also* Compl. ¶ 6.

Cathay's claim that the use of Sentry's "correspondent bank account" in New York is "incidental" and does not constitute a "purposeful" decision to conduct activities in New York lacks merit and does not take into consideration Cathay's use of the JP Morgan Chase Bank account. *See* Mot. at 14. New York caselaw consistently holds that the purposeful use of a U.S.

16

correspondent bank account can provide a sufficient basis on its own for jurisdiction. For example, in *Licci v. Lebanese Canadian Bank, SAL*, the New York Court of Appeals held that a defendant's use of a correspondent bank account in New York supports a finding of jurisdiction "even if no other contacts between the defendant and New York can be established" provided that such use was "purposeful." 20 N.Y.3d 327, 338 (2012) (internal quotation marks and citations omitted); *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 165, 171 (2d Cir. 2013) (finding jurisdiction over defendant with "no operations, branches, or employees in the United States" based on repeated use of New York's banking system); *Off. Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic Bank*, 549 B.R. 56, 67-69 (S.D.N.Y. 2016) (finding jurisdiction based on designation and use of New York correspondent accounts to receive transfers); *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 322-29 (2016) (same). What matters is that the use was "purposeful" and not coincidental or passive. *See Licci*, 20 N.Y.3d at 338-39; *Al Rushaid*, 28 N.Y.3d at 328 (finding that the choice of the New York correspondent bank made the connection to New York "volitional").

This case is a far cry from cases cited by Cathay in which the defendant was a mere recipient of funds from an account unilaterally selected by plaintiff and either unapproved by defendant or the use of which defendant was merely aware. *See Tamam v. Fransabank SAL*, 677 F. Supp.2d 720, 727-28 (S.D.N.Y. 2010) (finding no substantial relationship between the correspondent bank accounts and the cause of action because "[i]t is clear that the events giving rise to the physical injuries and deaths for which Plaintiffs seek redress are missile attacks in Israel, not funds transfers in New York"); *O'Toole v. MyPlace Dev. SP. Z O.O. (In re Sledziejowski)*, Ch. 7 Case No. 13-22050, Adv. No. 15-08207, 2016 WL 6155929, at *7 (Bankr. S.D.N.Y. Oct. 21, 2016) (no personal jurisdiction based on third-party transfer to defendant sent from U.S.); *Spetner*

17

*v. Palestine Inv. Bank*, 495 F. Supp. 3d 96, 105 (E.D.N.Y. 2020) (finding no personal jurisdiction where defendant had no "direct contact with the New York banking system at any point" and merely "knew and intended that [its agent] would necessarily transact in the New York banking system").

Equally unavailing is Cathay's reliance on three cases asserting common law claims brought against fund service providers. *See* Mot. at 14, 16 (citing *Hau Yin To v. HSBC Holdings PLC*, No. 15CV3590-LTS-SN, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017*); SPV Osus Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018); *Hill v. HSBC Bank PLC*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016)). This Court already has determined that this line of cases is not relevant to the Trustee's actions against defendants like Cathay who invested in BLMIS feeder funds. *See Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 192 (Bankr. S.D.N.Y. 2018) ("*BNP*") ("*Hill* has no bearing on the issue of personal jurisdiction arising from the Defendants' redemptions as investors in the Tremont Funds which arose from their New York contacts with the Tremont Fund."). This is not a dispute between two parties stemming from services owed under a foreign contract, like the breach of fiduciary duty and other claims in *To*, *SPV*,[5] and *Hill*. Rather, this is a fraudulent transfer recovery action in a SIPA liquidation proceeding in which the transfers of funds between the banks fulfilled the very purpose of their subscription agreements and evidence an intent to direct activity towards the U.S. securities markets. *See BLI*, 480 B.R. at 513 ("This movement of money to and from BLMIS in the United

---

[5] Any reliance on *SPV*, which found no jurisdiction because defendants' contacts did not cause the injury, is suspect following the Supreme Court's decision in *Ford Motor*, which held that causation is not a prerequisite for jurisdiction. 141 S. Ct. at 1026–30.

States, as contemplated by the Agreements, was not fortuitous or incidental; instead, it was 'the

ultimate objective' and the 'raison d'etre' of the Agreement between BLI and Fairfield Sentry.").[6]

## B.    The Exercise of Personal Jurisdiction Is Reasonable

Cathay fails to present a compelling reason why jurisdiction would be unreasonable.  This

failure is because jurisdiction is indeed reasonable here.  "The reasonableness inquiry requires the

court to determine whether the assertion of personal jurisdiction . . . comports with 'traditional

notions of fair play and substantial justice' under the circumstances of the particular case."

*Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (citations omitted).

Where a plaintiff has made a threshold showing of minimum contacts, a defendant must present a

"compelling case that the presence of some other considerations would render jurisdiction

unreasonable."  *Chloé*, 616 F.3d at 165 (quoting *Burger King*, 471 U.S. at 477).  "This Court has

found that it would be a 'rare' case where the defendant's minimum contacts with the forum

support the exercise of personal jurisdiction but it is unreasonable to force the defendant to defend

the action in that forum."  *BNP*, 594 B.R. at 188.[7]

This is not that "rare" case.  Cathay labels its contacts with the forum as "scant and

incidental," (Mot. at 17), but as noted above, the contacts were purposeful and relevant to the

Trustee's claims against Cathay to recover subsequent transfers of customer property.  Cathay also

---

[6] Cathay also asserts that the Trustee cannot make allegations upon information and belief because he has "unlimited access" to Sentry records that "gave him full opportunity to plead Cathay's alleged contacts with Fairfield Sentry." Mot. at 16.  This is untrue, as the Trustee does not have all of the necessary books and records, and discovery in the Trustee's action against the Fairfield management defendants continues.  *See, e.g.*, Stipulated Case Mgmt. Order, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Dec. 6, 2021), ECF No. 353 (setting future deadlines for fact discovery and expert discovery).  Cathay also contends that the Trustee "has had a decade to amend the Complaint," (Mot. at 17), but ignores that the Trustee may rely on information outside the pleadings for personal jurisdiction.  *See Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 510 (S.D.N.Y. 2016) ("[C]ourts may rely on additional materials outside the pleading when ruling on 12(b)(2) motions.").

[7] Cathay strains to distinguish the facts in this case from those in *BNP* by minimizing its New York contacts, (Mot. at 13-14), but as noted above, Cathay engaged in knowing and purposeful contacts granting this Court jurisdiction.

19

contends that it has no records, files, or information about the litigation in the U.S., (Mot. at 18),

but that ignores all of Cathay's contacts with New York, as well as the role of FGG in discovery.

Cathay's argument that the U.S.'s interests are not greater than Taiwan's interest "in ensuring that

its business entities are not subject to foreign litigation where there is no allegation that Cathay

engaged in wrongdoing," (Mot. at 18), disregards the interests of the SIPA Trustee and this Court.

"The forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings

in this Court." *Multi-Strategy*, 2022 WL 2137073, at *5; *Banque SYZ*, 2022 WL 2135019, at *5

(same); *see also In re Picard*, 917 F.3d at 103 (noting the "compelling interest in allowing domestic

estates to recover fraudulently transferred property").

On the other hand, the burden on Cathay is minimal. Neither litigation costs nor travel

inconveniences undermines the strong interest in litigating this matter in this Court. *See Maxam*,

460 B.R. at 119 (finding New York counsel and conveniences of modern communication and

transportation minimize any such burden). "Defendant is not burdened by this litigation." *Multi-

Strategy*, 2022 WL 2137073, at *5 (noting that the defendant actively participated in the litigation

for over ten years, is represented by competent U.S. counsel, and submitted to New York courts

in signing subscription agreements); *Banque SYZ*, 2022 WL 2135019, at *5 (same).

## C.    At Minimum, the Trustee Is Entitled to Jurisdictional Discovery

If this Court finds that the Trustee has not made a *prima facie* showing of jurisdiction, the

Trustee respectfully requests jurisdictional discovery. "Such discovery may be authorized where

a plaintiff has made a threshold showing that there is some basis for the assertion of jurisdiction."

*Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618 (KMW)(HBP), 2009 WL 3817590, at *4

(S.D.N.Y. Nov. 16, 2009) (internal citation marks and quotation omitted). The Trustee has shown

how Cathay, *inter alia*, knowingly and purposely subscribed to Sentry, which placed funds with

BLMIS, and used U.S. bank accounts to redeem out of, and at times, subscribe into Sentry. At a minimum, these facts establish a "threshold showing" of jurisdiction sufficient for discovery. *See id.*, at *6; *see also Ayyash v. Bank Al-Madina*, No. 04 Civ. 9201(GEL), 2006 WL 587342, at *6 (S.D.N.Y. Mar. 9, 2006) (granting discovery because allegations of wire transfers through the United States made a "sufficient start" toward establishing jurisdiction).[8]

## II.    SECTION 546(e) DOES NOT BAR RECOVERY FROM CATHAY

Section 546(e) provides a safe harbor for the avoidance of certain initial transfers made outside the two-year period referenced in Section 548(a)(1)(A). *See* 11 U.S.C. § 546(e) ("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title.") (emphasis added). In *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* No. 12-MC-115 (JSR), 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"), the District Court held that an initial transferee's actual knowledge of Madoff's fraud precluded application of the Section 546(e) safe harbor, thereby allowing the Trustee to avoid transfers made by BLMIS prior to the two-year period referenced in Section 548(a)(1)(A).

At the outset, the Section 546(e) safe harbor could apply, at most, to only one of the two transfers at issue—namely, a single transfer of approximately $2.22 million made in 2005. By contrast, the second transfer of approximately $22.27 million took place in 2008, well within the two-year period referenced in Section 548(a)(1)(A). *See* Compl., Exs. C, D. Indeed, this later

---

[8] In addition, Cathay's initial subscription agreement listed an entity called "Chinkara" as its adviser. *See* Fish Decl., Ex. A, ¶ 6. Chinkara Capital (later known as Vantage Capital) was listed as an adviser to several funds that invested in Sentry and had many communications with Sentry on behalf of various clients. The exact nature of Cathay's relationship with Chinkara Capital is presently unknown, but to the extent the Court finds the Trustee has not made a *prima facie* showing of personal jurisdiction, the Trustee should at least be provided jurisdictional discovery to learn of the nature of the relationship and if Chinkara Capital's contacts may be imputed to Cathay.

transfer comprises the vast majority of the total subsequent transfers the Trustee seeks to recover.

Cathay nevertheless incorrectly contends that its own lack of actual knowledge should govern, and

also seeks to overturn settled law on the applicability of the Ponzi scheme presumption. Cathay's

arguments should be rejected based on settled law.

### A.    Sentry Had Actual Knowledge of Madoff's Fraud

Cathay sets forth at length the requirements of Section 546(e), including how they are

presumably met in this case with respect to the initial transfers to Sentry and the "covered entity"

requirement.[9] Mot. 22-29. Cathay's argument fails, however, because this Court has previously

found the Trustee to have sufficiently pled the initial transferee Sentry had actual knowledge of

Madoff's fraud and that such initial transfers are avoidable. *See Fairfield Inv. Fund*, 2021 WL

3477479, at *4–5, *7. As such, Section 546(e) does not bar the avoidance of initial transfers made

to Sentry, and those transfers may be recovered from Cathay, regardless of whether Sentry or

Cathay qualify as financial institutions, their agreements qualify as securities contracts, or their

transfers qualify as settlement payments. The Trustee therefore focuses his response on Cathay's

erroneous arguments regarding the actual knowledge exception and its application here, as well as

Cathay's longshot attempt to hide behind Section 546(e)'s safe harbor for two-year transfers.

---

[9] The Trustee does not concede that any agreements or transfers between Sentry and Cathay activate the safe harbor under Section 546(e) or that any transferor or transferee is a financial participant. *See* Mot. at 28, 31. Such information is simply not relevant, because whether the initial transfers are avoidable turns on Sentry's actual knowledge of fraud at BLMIS, not Cathay's knowledge as a subsequent transferee. Among other things, the Trustee does not concede—by alleging that the subsequent transfers were customer property—that the initial transfers were "in connection with" the subscription agreements with Cathay. A showing that the subsequent transfers can be traced through the "relevant pathways" to the initial transfers is entirely irrelevant to the issue of whether the initial transfers were "in connection with" any transaction or contract between Sentry and Cathay for purposes of application of the securities safe harbor. The Trustee also does not concede that the initial transfers were made "for the benefit of" Cathay. The Complaint plainly alleges that Cathay is a subsequent transferee, and it is settled law that a defendant cannot be both a subsequent transferee and a party for whose benefit an initial transfer is made. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 474 (Bankr. S.D.N.Y. 2015) (citing cases).

Further, Cathay is precluded from arguing that *Cohmad* is wrong and relitigating whether actual knowledge bars the application of Section 546(e).  The District Court decided *Cohmad* in connection with consolidated proceedings as to the application of Section 546(e), and as Cathay concedes, that decision held that a party with actual knowledge of Madoff's fraud cannot claim the protections of Section 546(e).  *See* Mot. at 29-30.  The District Court then remanded the relevant cases back to this Court, and this Court has since applied the actual knowledge "exception" on several occasions.  *See, e.g., Fairfield Inv. Fund*, 2021 WL 3477479, at *4.  Cathay participated in the District Court proceedings and is bound by *Cohmad*, which is law of the case.[10] *See, e.g.*, *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 466 (Bankr. S.D.N.Y. 2015) ("Those moving defendants that participated in the withdrawal of the reference of the antecedent debt/value issue have had their day in court and Judge Rakoff's decisions are law of the case.").  Cathay also did not seek leave to appeal the *Cohmad* decision, and the Second Circuit's decision in *In re Bernard L. Madoff Inv. Secs. LLC (Picard v. Ida Fishman Recoverable Trust)*, 773 F.3d 411 (2d Cir. 2014) ("*Ida Fishman*") does not warrant reconsideration of *Cohmad's* actual knowledge exception.  *See Picard v. Cohen*, Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296, at *10 n.16 (Bankr. S.D.N.Y. Apr. 25, 2016) (noting *Ida Fishman* did not address the actual knowledge exception).

### B.     The Actual Knowledge Requirement Under Section 546(e) Is Inapplicable to the Recovery of Subsequent Transfers Under Section 550

Cathay is incorrect that the Trustee must allege that the subsequent transferee itself had actual knowledge in order to invoke the actual knowledge exception to Section 546(e).

---

[10] *See* Cathay's Motion to Withdraw the Reference and Mem. of Law in Supp. (Mar. 29, 2012), ECF Nos. 13-14 (raising Section 546(e) as a grounds for withdrawal).

Specifically, Cathay argues that under *Cohmad*, a defendant's subscription agreement with Sentry may act as the relevant "securities contract" in lieu of BLMIS's account agreement, and as such, in these Section 550 recovery actions, the court must look to the *subsequent transferee's* actual knowledge to determine whether the initial transfer is avoidable. *See* Mot. at 31. But *Cohmad* does not stand for this proposition, as "[t]he safe harbor is not applicable to subsequent transfers." *Multi-Strategy*, 2022 WL 2137073, at *9; *Banque SYZ*, 2022 WL 2135019, at *9.

Under its plain language, Section 546(e) applies to the avoidance of initial transfers, not the recovery of subsequent transfers under Section 550. *See* 11 U.S.C. § 546(e) ("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title.") (emphasis added); *see BNP*, 594 B.R. at 197 ("The Trustee does not . . . 'avoid' the subsequent transfer; he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550."); *Kelley v. Safe Harbor Managed Acct. 101, Ltd.*, 31 F.4th 1058, 1064 n.5 (8th Cir. 2022) ("*SHMA*") (citing *BNP*).

This limitation on the safe harbor to avoidance actions is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Secs.)*, 501 B.R. 26, 30 (S.D.N.Y. Oct. 28, 2013) (Rakoff, J.) (citation omitted). It is also consistent with the understanding that the Code's avoidance provisions protect against depletion of a debtor's estate, while Section 550 is merely a "utility provision," intended to help execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place." *See In re Picard*, 917 F.3d at 98 (internal quotation marks and citation omitted).

24

*Cohmad* confirmed that Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees.  The District Court withdrew the reference on whether Section 546(e) barred recovery of a subsequent transfer pursuant to Section 550.[11]  However, in its decision, the court specifically limited the safe harbor to avoidance claims based on the plain language of Section 546(e).  *See Cohmad*, 2013 WL 1609154, at *4, *9 (applying the "plain terms" of Section 546(e)); at *7 (recognizing that subsequent transferees can raise initial transferees' defenses to *avoidance*); at *10 ("[B]oth initial transferees and subsequent transferees are entitled to raise a defense based on the application of Section 546(e) to the *initial* transfer from Madoff Securities.") (emphasis added).  Although the court hypothesized, in *dicta*, that a subsequent transferee's agreements with the initial transferee feeder fund might under certain circumstances constitute relevant "securities contracts," and that certain subsequent transferee defendants might qualify as "financial institutions" or "financial participants," the decision is clear that the focus of the safe harbor is on the *initial* transfers.  *See id.* at *9.  Contrary to Cathay's argument, the District Court did not, in its hypothetical, discuss actual knowledge or indicate that in such circumstances, the initial transferee's actual knowledge should be disregarded.

Following *Cohmad's* precedent, this Court has confirmed on multiple occasions that Section 546(e) is applicable only to avoidance and not recovery, notably holding on each occasion that a subsequent transferee cannot assert the protections of Section 546(e) where the Trustee has adequately pled the initial transferee's actual knowledge.  *See BNP*, 594 B.R. at 197; *Multi-Strategy*, 2022 WL 2137073, at *9; *Banque SYZ*, 2022 WL 2135019, at *9; *see also SunEdison*

---

[11] *See In re Madoff Securities*, 12-MC-115, Section 546(e) Briefing Order (S.D.N.Y. May 16, 2012), ECF No. 119 (withdrawing the reference on the issue of "whether application of Section 546(e) to an initial or mediate Transfer bars recovery by the Trustee of any subsequent Transfer pursuant to Section 550").

*Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*, 620 B.R. 505, 514 (Bankr. S.D.N.Y. 2020) (noting that "the safe harbor defense only applies by its terms to the initial transfer"). As explained in *BNP*, a subsequent transferee gets only "indirect" protection from Section 546(e) to the same extent it protects the initial transferee. *BNP*, 594 B.R. at 197; *see also SHMA*, 31 F.4th at 1064 n.5 (citing *BNP* and explaining that "a subsequent transferee is protected *indirectly* [under Section 546(e)] to the extent that the initial transfer is not avoidable because of the safe harbor.") (cleaned up; emphasis added). Put simply: "Defendant is not permitted to raise the safe harbor defense on its own behalf as a subsequent transferee." *Multi-Strategy*, 2022 WL 2137073, at *10; *Banque SYZ*, 2022 WL 2135019, at *10.

### C.    The Trustee Has Adequately Alleged Actual Fraudulent Intent Under Section 548(a)(1)(A) of the Bankruptcy Code

Cathay next argues that the Trustee has failed to allege BLMIS's "actual intent to hinder, delay or defraud" creditors. Cathay contends that the Complaint lacks particularized allegations of BLMIS's actual fraudulent intent and that the Trustee improperly relies on the "Ponzi scheme presumption." Mot. at 33-35. Cathay's arguments, however, fail because the courts in this liquidation have repeatedly upheld the Ponzi scheme presumption.[12] And the Complaint alleges numerous facts supporting that BLMIS was a Ponzi scheme, including that the money received

---

[12] *See, e.g., Picard v. Sage Realty*, No. 20-CV-10109 (JFK), 2022 WL 1125643, at *27–28 (S.D.N.Y. Apr. 15, 2022); Memorandum Decision at 7; *Picard v. Fairfield Pagma Assocs., LP*, Adv. Pro. No. 10-05169 (CGM) (Bankr. S.D.N.Y. April 13, 2022), ECF No. 137; *Picard v. Est. of Seymour Epstein*, No. 1:21-cv-02334-CM, 2022 WL 493734, at *17-18 (S.D.N.Y. Feb. 17, 2022); *Picard v. Lisa Beth Nissenbaum Tr.*, No. 20 cv. 3140 (JGK), 2021 WL 1141638, at *15 (S.D.N.Y. Mar. 24, 2021), *judgment entered*, No. 20 CV 3140 (JGK), 2021 WL 1167939 (S.D.N.Y. Mar. 25, 2021); *Picard v. Ken-Wen Fam. Ltd. P'ship*, 638 B.R. 41, 49 (Bankr. S.D.N.Y. 2022); *Picard v. Nelson (In re BLMIS)*, 610 B.R. 197, 235 (Bankr. S.D.N.Y. 2019); *see also Picard v. Gettinger*, 976 F.3d 184, 187-88 (2d Cir. 2020), *cert. denied sub nom. Gettinger v. Picard*, 141 S. Ct. 2603 (2021) (noting that the case "arises out of the infamous Ponzi scheme perpetrated by Bernard L. Madoff" (footnote omitted)).

from investors was used to pay off other investors—the *sine qua non* of a Ponzi scheme.  *See*
Compl. ¶¶ 15-16, 25-34.

Under the Ponzi scheme presumption, "the existence of a Ponzi scheme demonstrates
actual intent as [a] matter of law because transfers made in the course of a Ponzi scheme could
have been made for no purpose other than to hinder, delay or defraud creditors."  *Citibank*, 12
F.4th at 181 (citing *Picard v. Est. (Succession) of Doris Igoin (In re BLMIS)*, 525 B.R. 871, 892
n.21 (Bankr. S.D.N.Y. 2015)).  Cathay concedes, as it must, that this Court and the District Court
have accepted the Ponzi scheme presumption and that the "Second Circuit has on occasion applied
the presumption."  Mot. at 33 n.30.  Cathay nevertheless urges this Court to disregard this settled
principle in light of a singular statement in a concurring opinion to the *Citibank* decision
questioning the Ponzi scheme presumption as it applied to the facts in that case.  *See Citibank*, 12
F.4th at 202 (Menashi, J., concurring).  The District Court, however, recently recognized that
"[n]otwithstanding Judge Menashi's concerns, 'the Ponzi scheme presumption remains law of this
Circuit.'"  *See Picard v. Sage Realty*, No. 20-CV-10109 (JFK), 2022 WL 1125643, at *28
(S.D.N.Y. Apr. 15, 2022) (citing *Bear Sterns Secs. Corp. v. Gredd (In re Manhattan Inv. Fund
Ltd.)*, 397 B.R. 1, 11 (S.D.N.Y. 2007)).  Moreover, *dicta* in a concurring opinion has no
precedential effect, and it certainly does not constitute an intervening change of controlling law or
provide any other "cogent" or "compelling" reasons to depart from the law.  *See Johnson v. Holder*,
564 F.3d 95, 99–100 (2d Cir. 2009); *Cohen v. UBS Fin. Servs., Inc.*, No. 12-CV-02147 (LGS),
2014 WL 240324, at *4 (S.D.N.Y. Jan. 22, 2014), *aff'd*, 799 F.3d 174 (2d Cir. 2015).

The Ponzi scheme presumption also has been embraced by federal courts in this
jurisdiction.  *See, e.g., In re Bayou Grp., LLC*, 439 B.R. 284, 307 (S.D.N.Y. 2010) (finding that
the Ponzi scheme presumption establishes actual fraudulent intent); *Armstrong v. Collins*, No. 01-

27

cv-2437 (PAC), 2010 WL 1141158, at *20 (S.D.N.Y. Mar. 24, 2010) (same); *Gredd*, 397 B.R. at

11 (same); *Drenis v. Haligiannis*, 452 F. Supp. 2d 418, 429–30 (S.D.N.Y. 2006) (same); *Gowan*

*v. The Patriot Grp., LLC (In re Dreier LLP)*, 452 B.R. 391, 424–25 (Bankr. S.D.N.Y. 2011)

(same); *Gredd v. Bear Sterns Secs. Corp. (In re Manhattan Inv. Fund Ltd.)*, 310 B.R. 500, 506

(Bankr. S.D.N.Y. 2002) (same). Cathay thus asks this Court to disregard all of the above decisions

in addition to the settled law of this SIPA liquidation proceeding.

Cathay attempts to cast doubt on the presumption's validity by citing a handful of

inapplicable cases. *See* Mot. at 34. For instance, *Finn v. All. Bank*, 860 N.W.2d 638, 647 (Minn.

2015), concluded that the presumption did not apply purely as a matter of Minnesota state law.

*Lustig v. Weisz & Assocs., Inc. (In re Unified Com. Cap., Inc.)*, 260 B.R. 343, 350-54 (Bankr.

W.D.N.Y. 2001), addressed recovery of a fraudulent conveyance under a *constructive fraud* theory

in connection with a Ponzi scheme, without mentioning the presumption as it applies to an *actual*

*fraud* theory. Neither of the foregoing cases rejected the presumption as applied to Section

548(a)(1)(A). Cathay also cites to *Sharp Int'l Corp. v. State Street Bank & Trust Co.*, 403 F.3d 43

(2d Cir. 2005), but multiple courts also have explained why the Ponzi scheme presumption does

not contravene the Second Circuit's decision in that case. *See, e.g., Dreier*, 452 B.R. at 425

(rejecting argument that *Sharp* eliminated the Ponzi scheme presumption because "*Sharp* did not

involve a Ponzi scheme and the Second Circuit did not discuss or refer to the Ponzi scheme

presumption or Ponzi schemes in general"); *In re Manhattan Inv. Fund Ltd.*, 397 B.R. at 11

("*Sharp* does not dispose of the Ponzi scheme presumption. At most, it simply means that courts

must be sure that the transfers sought to be avoided are related to the scheme.").

Finally, and notwithstanding the Ponzi scheme presumption, the Trustee has in any event

satisfied Rule 9(b). Courts have found that BLMIS's actual intent to defraud has been established

28

independent of the presumption, based on the same "badges of fraud" as alleged in the Complaint, such as, the concealment of facts by BLMIS, BLMIS's insolvency, and the lack of consideration provided for BLMIS's fictitious transfers to customers (Compl. ¶¶ 25-34). *See Picard v. JABA Assocs. LP*, 528 F. Supp. 3d 219, 240-41 (S.D.N.Y. 2021) (citing *Picard v. Nelson*, 610 B.R. 197, 235 (Bankr. S.D.N.Y. 2019)); *Picard v. Lisa Beth Nissenbaum Trust*, 20 cv. 3140 (JGK), 2021 WL 1141638, at *15 (S.D.N.Y. Mar. 24, 2021), *judgment entered*, No. 20 cv. 3140 (JGK), 2021 WL 1167939 (S.D.N.Y. Mar. 25, 2021). Cathay's suggestion otherwise is meritless.

## III. THE TRUSTEE'S COMPLAINT ADEQUATELY PLEADS THAT CATHAY RECEIVED BLMIS CUSTOMER PROPERTY

The Trustee's Complaint states a claim for recovery under Section 550(a)(2) by plausibly alleging that Cathay received subsequent transfers of BLMIS customer property. To plead a subsequent transfer claim, the Trustee must allege facts that support an inference "that the funds at issue originated with the debtor." *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149-50 (Bankr. S.D.N.Y. 2014) ("*Merkin I*") (citation omitted). As Cathay acknowledges, (Mot. at 38), the pleading burden "is not so onerous as to require 'dollar-for-dollar accounting' of 'the exact funds' at issue." *Id.* (quoting *Picard v. Charles Ellerin Revocable Trust (In re BLMIS)*, Adv. Pro. No. 10-04398, 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012)). Rather, "the Trustee need only allege sufficient facts to show the relevant pathways through which the funds were transferred from BLMIS to [the subsequent transferee]." *Charles Ellerin Revocable Trust*, 2012 WL 892514, at *3; *see also 45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019). In addition, the Trustee must allege the "'necessary vital statistics—the who, when, and how much' of the purported transfers to establish an entity as a subsequent transferee of the funds." *Merkin I*, 515 B.R. at 150 (cleaned up).

29

The Trustee's Complaint meets these requirements. The Complaint alleges that Cathay received transfers, identified by date and amount, from Sentry, and that Sentry invested substantially all of its funds with BLMIS and received initial transfers from BLMIS. *See* Compl. ¶¶ 2, 35-42; Exs. C & D. The Complaint thus plausibly alleges that Cathay received subsequent transfers of customer property by outlining the relevant pathways through which stolen customer property was transferred from BLMIS to Sentry and subsequently to Cathay, and provides the necessary vital statistics (*i.e.*, the "who, when, and how much") for each of the subsequent transfers. Nothing more is required. *See Multi-Strategy*, 2022 WL 2137073, at *10; *Banque SYZ*, at *12; *see also Picard v. Mayer*, Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021) (rejecting argument that "claim has not been plead with enough specificity as to how and what [defendant] received" and holding complaint "contains sufficient information regarding which transfers the Trustee is seeking to recover").

Unable to argue that the Trustee fails to meet the relevant pleading burden, Cathay essentially argues for a new one, asserting that the Trustee must tie each subsequent transfer Cathay received to a specific initial transfer from BLMIS. Mot. at 38-39. In *Merkin I*, however, this Court refused to dismiss subsequent transfer claims even though the complaint "d[id] not connect each of the subsequent transfers with an initial, voidable transfer emanating from BLMIS." 515 B.R. at 150; *see also 45 John Lofts, LLC*, 599 B.R. at 747 (finding no "requirement to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss"). And to the extent Cathay argues that the Trustee must detail which and what portion of each subsequent transfer comprises customer property, this is also wrong. *See Merkin I*, 515 B.R. at 152-53 (refusing to dismiss complaint where "at least some of the subsequent transfers . . . may be recoverable"); *see also Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R.

30

5, 30 (Bankr. E.D.N.Y. 2007) (finding that "if dollar-for-dollar accounting is not required at the proof stage, then surely it is not required at the pleading stage either").

Cathay's reliance on this Court's decision in *Picard v. Shapiro* is unavailing because *Shapiro* did not change the Trustee's pleading burden. *See* Mot. at 38-39 (citing *Picard v. Shapiro (In re BLMIS)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015)). In *Shapiro*, the Trustee alleged that certain trusts and members of the Shapiro family received approximately $54 million in fraudulent transfers from BLMIS, and "upon information and belief," these defendants subsequently transferred this same amount to other defendants. *See Shapiro*, 542 B.R. at 119. However, that complaint did not detail any of the necessary vital statistics of the subsequent transfers. *Id.* at 119. There were no allegations regarding the subsequent transferors, the subsequent transferees, or the dates or amounts of the subsequent transfers, and consequently this Court granted defendants' motion to dismiss the subsequent transfer claim. *Id.; see also In re Caremerica*, 409 B.R. 737, 750-51 (E.D.N.C. 2009) (ruling that plaintiffs failed to allege reasonable inference that debtors transferred funds under Section 547 because there were no facts showing the debtors had interest in property exchanging hands). Here, the Trustee has alleged the vital statistics of each transfer Cathay received and sets out the investment relationship between Cathay and Sentry.

Cathay's attempt to compare the allegations between the Complaint and those made in *Shapiro*, (*see* Mot. at 38-39), disregards Exhibit D to the Trustee's Complaint, which provides specific details regarding the date and amount of the two subsequent transfers at issue. There were no such specific allegations regarding the subsequent transfers at issue in *Shapiro*. In addition, Cathay's chart shows that in *Shapiro*, the Trustee alleged that some unspecified "portion" of the initial transfers were subsequently transferred to "Subsequent Transferee Defendants," whereas

31

here, the Complaint specifically alleges the amount of each transfer Cathay received.  There is simply no comparison between *Shapiro* and this case.

Cathay's fact-based tracing argument regarding "plausibility" fares no better and is inappropriate for a motion to dismiss.  *See Multi-Strategy*, 2022 WL 2137073, at *10-11; *Banque SYZ*, 2022 WL 2135019, at *12.  For example, Cathay argues that "transfers from BLMIS were not the exclusive source of funds that Sentry could use to satisfy redemption requests and make other payments."  Mot. at 40.  In other words, Cathay contends that Sentry commingled customer property with other funds, and this commingling will defeat the Trustee's ability to trace the transfers of customer property from BLMIS.  But this should not defeat the Trustee's claims at the pleading stage.  "The calculation of Fairfield Sentry's customer property and what funds it used to make redemption payments are issues of fact better resolved at a later stage of litigation."  *Multi-Strategy*, 2022 WL 2137073, at *10; *Banque SYZ*, 2022 WL 2135019, at *12; *see also Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-cv-1073, 2020 WL 3077151, at *4 (D. Minn. June 10, 2020) (citing *Charles Ellerin Revocable Trust*, 2012 WL 892514, at *2) ("The law does not place such a difficult burden on trustees. The commingling of legitimate funds with funds transferred from the debtor does not defeat tracing.").  Even after fact discovery, expert opinion will be necessary to determine what portion of the subsequent transfer stemmed from the initial transfer where the subsequent transfers originated from commingled accounts.  *Picard v. Merkin (In re BLMIS)*, 581 B.R. 370, 386 (Bankr. S.D.N.Y. 2017) ("*Merkin II*").

Cathay also asserts that the Trustee's claims are "implausible" because he is seeking more money from all subsequent transferees of Sentry than the fund withdrew from BLMIS.  Mot. at 39-40.  There is no dispute that the Trustee is limited to "a single satisfaction" under Section 550(a), but the Trustee "may nevertheless pursue any and all subsequent transferees in order to

32

achieve that satisfaction." *Multi-Strategy*, 2022 WL 2137073, at *11; *see also Helms v. Metro.
Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332
(N.D. Ill. 2021) (noting that the trustee "can recover from any combination of [transferees]" up to
the amount avoided); *CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*, 393 B.R. 306, 333 (Bankr.
W.D.N.Y. 2008) (explaining that "a trustee may recover [an avoided] transfer from a subsequent
transferee of those funds, without the necessity for allocation among all the subsequent
transferees"). Thus, until the Trustee recovers the full amount of the approximately $3 billion in
fraudulent transfers received by Sentry, the Trustee may simultaneously seek recovery from
Cathay and from defendants in other actions. *See Multi-Strategy*, 2022 WL 2137073, at *11
("Calculation of whether the Trustee is fully satisfied is a factual finding to be made by this Court
at a later stage of litigation."); *Fairfield Inv. Fund*, 2021 WL 3477479, at *12 (same).

## IV.    THE TRUSTEE SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE SENTRY TRANSFERS

Cathay argues that the Trustee's incorporation of the Fairfield Amended Complaint[13]
violates incorporation by reference under Rule 10(c) and violates Rule 8(a)(2)'s requirement to
include "a short and plain statement" showing the Trustee is entitled to relief. Mot. at 35-37.
However, the Trustee may incorporate by reference the Fairfield Amended Complaint to
demonstrate the avoidability of the initial transfers from BLMIS to Sentry. The Court also may
take judicial notice of the Fairfield SAC and its own decision on the avoidability of the initial
transfers.

---

[13] As noted in Footnote 2, the Fairfield Amended Complaint was amended after the filing of the Complaint in this
adversary proceeding. The operative complaint in that action is the Fairfield SAC.

### A.      The Incorporated Material Complies With Rules 10 and 8

Cathay argues that the Trustee may not incorporate by reference the Fairfield Amended

Complaint, which details the avoidability of the initial transfers.   *See* 11 U.S.C.  § 548(a)(1).

Cathay's main support for this assertion is that courts in other contexts have declined to allow

incorporation by reference of pleadings in a different action.  *See* Mot. at 35–37.   In the bankruptcy

context, however, "pleadings filed in the 'same action' may be properly adopted by reference in

other pleadings in that action," and the "Fairfield Complaint was filed in the 'same action' as this

adversary proceeding for purposes of Rule 10(c)."   *Multi-Strategy*, 2022 WL 2137073, at *7 (citing

*Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010); *Banque SYZ*,

2022 WL 2135019, at *7 (same).

Cathay also ignores the District Court's prior opinion on whether under Section 550(a) the

Trustee must avoid an initial transfer or plead its avoidability in a subsequent transfer action.  *In*

*re Madoff Sec.*, 501 B.R. at 26.   In that decision, the District Court found sufficient the Trustee's

incorporation by reference of initial transfer complaints, including the Fairfield Amended

Complaint:

> [T]he Trustee's complaint against [the subsequent transfer
> defendant] incorporates by reference the complaints against Kingate
> and Fairfield, including the allegations concerning the avoidability
> of the initial transfers, and further alleges the avoidability of these
> transfers outright. . . .  Thus, the avoidability of the transfers from
> Madoff Securities to Kingate and Fairfield is sufficiently pleaded
> for purposes of section 550(a).

*Id.* at 36.  As this Court has determined, "[t]he district court has already found that adoption by

reference of the entire Fairfield Complaint is proper."  *Multi-Strategy*, 2022 WL 2137073, at *7;

*Banque SYZ*, 2022 WL 2135019, at *7.

Regardless, Rule 10(c) is not so limited as to prohibit the incorporation of entire pleadings from other actions. *See* Mot. at 35-36. The Southern District of New York and other federal courts have permitted incorporation by reference of pleadings in separate actions in appropriate circumstances. *See Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 323 n.5 (S.D.N.Y. 2007) (citation omitted) (permitting incorporation of entire pleadings in separate cases); *Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC*, 843 F. Supp. 2d 191, 214 n.15 (D. Mass. 2012) (holding incorporation by reference appropriate where "the court [was] familiar with the filings in the other [] case[], which [were] substantially similar to [that] case, and the usual concerns about inferring arguments from other submissions have less force.").[14]

Here, the Trustee references only one other pleading—the Fairfield Amended Complaint— and the incorporation is clear, with its purpose obvious. *See* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure 3d § 1326 (4th ed. 2008) ("If the incorporation is clear, less emphasis need be placed on the source of the incorporated material."); *Whitaker Sec., LLC v. Rosenfeld (In re Rosenfeld)*, 543 B.R. 60, 66 (Bankr. S.D.N.Y. 2015) (allowing incorporation because "there is no danger of [] prejudice"). Moreover, reference to the Fairfield Amended Complaint provides notice of avoidability of initial transfers in a manner that avoids repetition and over-complication. *See Wright & Miller* § 1326 n.1 ("Adoption by reference avoids overly long

---

[14] In contrast, the cases cited by Cathay are inapposite. In some of those cases, unlike in this one, plaintiffs were incorporating pleadings in separate actions in an attempt to add brand new claims. *See, e.g., United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 461–66 (E.D.N.Y. 2007); *Davis v. Bifani*, No. 07-cv-00122-MEH-BNB, 2007 WL 1216518, at *1 (D. Colo. Apr. 24, 2007); *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803, at *4 (E.D.N.Y. Mar. 26, 2010). And in other cases cited by Cathay, the information plaintiffs sought to incorporate was even more irrelevant, such as affirmative defenses in answers filed by defendants in other actions (*Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*, No. 13 CIV. 6705 (DLC), 2014 WL 1673351, at *9 (S.D.N.Y. Apr. 28, 2014)), a complaint that had already been ruled legally improper, "plus untold pages of 'evidence'" (*Muhammad v. Bethel-Muhammad*, Civil Action No. 11-0690-WS-B, 2012 WL 1854315, at *3 n. 5 (S.D. Ala. May 21, 2012)), and arguments in a previously filed motion to dismiss (*Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212, 215 (D. Mass. 1995)).

or complicated pleadings."). There is simply no concern here with confusion or inconvenient results from the incorporation. *Banque SYZ*, 2022 WL 2135019, at *8.

Cathay is also wrong that the Trustee's incorporation of the Fairfield Amended Complaint violates Rule 8. Cathay ignores the substance of the Complaint and the purpose of the incorporation: to make a *prima facie* showing that the initial transfers are avoidable under Section 548(a). *See Citibank*, 12 F.4th at 196–97. The Complaint only incorporates the Fairfield Amended Complaint—as part of one paragraph—in pleading the avoidability of the initial transfers. This places no undue burden on Cathay, as it can admit the substance of the avoidability of the initial transfers, deny them, or respond that it does not have sufficient information to admit or deny. Repleading the initial transfer allegations would unnecessarily add countless pages to the Complaint. "Through reference to the Fairfield Complaint, the Trustee has adequately pleaded the avoidability of the initial transfer." *See Multi-Strategy*, 2022 WL 2137073, at *7; *Banque SYZ*, 2022 WL 2135019, at *8.

## B.    The Court Can Take Judicial Notice of the *Fairfield Inv. Fund* Decision

Cathay's arguments about incorporation are really much ado about nothing because this Court may take judicial notice of the operative Fairfield SAC and its prior decision holding that the complaint sufficiently alleges the avoidability of the initial transfers. *See Fairfield Inv. Fund*, 2021 WL 3477479. On a motion to dismiss, "a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*." *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011). "Included among such matters are decisions in prior lawsuits." *DeMasi v. Benefico*, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008). The fact that the Fairfield SAC was filed after the Complaint in this action is of no consequence. *See Rothman v. Gregor*, 220 F.3d 81, 91–

92 (2d Cir. 2000) (taking judicial notice of a subsequently filed complaint in related proceeding). On the other hand, Cathay's citation of *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446-47 (E.D. Va. 2009) is inapposite. That case involved incorporation of the prior versions of the complaint in multiple amendments, which the court determined "serve as nothing more than boiler plate safety valves." *See id.* at 448.

The Trustee has adequately pleaded the avoidability of the initial transfers, and regardless, this Court may take judicial notice of its opinion in *Fairfield Inv. Fund*. If this Court holds otherwise, the Trustee respectfully requests the opportunity to replead.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court deny Cathay's Motion.

Respectfully submitted,

Dated: June 24, 2022
New York, New York

/s/ *Eric. R. Fish*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York
Tel.: (212) 589-4200
Fax: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Eric R. Fish
Email: efish@bakerlaw.com
Brian F. Allen
Email: ballen@bakerlaw.com
Michelle N. Tanney
Email: mtanney@bakerlaw.com
Kayley B. Sullivan
Email: kbsullivan@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*