**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of Bernard*
*L. Madoff Investment Securities LLC and the Chapter 7*
*Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (CGM) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 11-02551 (CGM) |
| v. | |
| DELTA NATIONAL BANK AND TRUST COMPANY, | |
| Defendant. | |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DELTA NATIONAL BANK AND TRUST COMPANY'S MOTION TO DISMISS**

## TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ...............................................................................................3

I.      THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS...........................................3

II.     DELTA AND ITS INVESTMENTS IN SENTRY ........................................................4

ARGUMENT ...............................................................................................................5

I.      LEGAL STANDARD...........................................................................................5

II.     THE TRUSTEE SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE
        INITIAL TRANSFERS ........................................................................................6

        A.      The Complaint and The Incorporated Material Comply With Rule 8 ....................6

        B.      The Court Can Take Judicial Notice of the *Fairfield Inv. Fund* Decision .............9

III.    THE TRUSTEE'S COMPLAINT ADEQUATELY PLEADS A CLAIM FOR
        RECOVERY UNDER SECTION 550 .....................................................................9

        A.      The Complaint Sufficiently Pleads the Avoidability of the Sentry Initial
                Transfers ...............................................................................................9

        B.      The Trustee Need Only Show that the Initial Transfers are Avoidable in
                Order to Maintain a Subsequent Transfer Claim .....................................10

        C.      Under Law of the Case, A Prior Judgment of Avoidance Is Not an
                Element of a Section 550 Claim ................................................................14

        D.      The Second Circuit Did Not Overrule the Decisions in this Case, Nor Do
                Citations to Inapposite Decisions Assist Delta's Interpretation ...........................15

        E.      The Trustee Need Not Obtain a Final Judgment of Avoidance In Order to
                Recover From Delta, Because SIPA Authorizes the Trustee to Recover
                "Void or Voidable" Transfers Under the Bankruptcy Code................................17

IV.     TRUSTEE'S COMPLAINT ADEQUATELY PLEADS THAT DELTA BANK
        RECEIVED BLMIS CUSTOMER PROPERTY ...........................................................18

        A.      The Trustee's Complaint Meets the Pleading Requirements................................19

        B.      Delta Misstates the Trustee's Pleading Burden ....................................................20

i

V.      SECTION 546(E) DOES NOT BAR RECOVERY FROM DEFENDANT ..................... 22

        A.      Sentry Had Actual Knowledge of Madoff's Fraud ................................................ 23

        B.      Delta Bank Is Precluded From Relitigating the Actual Knowledge
                Exception Established in Cohmad .......................................................................... 24

        C.      Section 546(e) Does Not Apply Independently to Recovery Actions ................... 25

VI.     THE 550(B) GOOD FAITH DEFENSE IS AN AFFIRMATIVE DEFENSE AND
        INAPPROPRIATE AT THE MOTION TO DISMISS STAGE ...................................... 29

VII.    THE TRUSTEE'S COMPLAINT SHOULD NOT BE DISMISSED WITH
        PREJUDICE ................................................................................................................. 31

CONCLUSION ......................................................................................................................... 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
    599 B.R. 730 (Bankr. S.D.N.Y. 2019) ..............................................................................19, 20

*Advanced Telecom Network, Inc. v. Allen (In re Advanced Telecom Network, Inc.)*,
    321 B.R. 308 (Bankr. M.D. Fla. 2005), *rev'd on other grounds by* 490 F.3d
    1325 (11th Cir. 2007) ........................................................................................................12

*Am. Casein Co. v. Geiger (In re Geiger)*,
    446 B.R. 670 (Bankr. E.D. Pa. 2010) ...............................................................................6, 7

*Anderson v. Bajaj (In re Med. Mgmt. Grp., LLC)*,
    534 B.R. 646 (Bankr. D.S.C. 2015) ....................................................................................12

*Aramony v. United Way of Am.*,
    254 F.3d 403 (2d Cir. 2001)................................................................................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................................................5

*In re AVI, Inc.*,
    389 B.R. 721 (B.A.P. 9th Cir. 2008)........................................................................11, 12, 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................................................5

*In re Bernard L. Madoff Inv. Sec. LLC*,
    No. 1:21-cv-02334-CM, 2022 WL 493734 (S.D.N.Y. Feb. 17, 2022)................................8, 15

*Brown v. Phillips (In re Phillips)*,
    379 B.R. 765 (Bankr. N.D. Ill 2007) ...................................................................................12

*In re Caremerica, Inc.*,
    409 B.R. 737 (Bankr. E.D.N.C. 2009).............................................................................20, 21

*Cargo Partner AG v. Albatrans, Inc.*,
    352 F.3d 41 (2d Cir. 2003)...................................................................................................5

*Citibank, N.A. v. Picard*,
    *142 S. Ct. 1209 (2022)* ........................................................................................................4

*In re Club Ventures Investments LLC*,
    507 B.R. 91 (S.D.N.Y. 2014)..............................................................................................14

*Constellation Energy Commodities Group Inc. v. Transfield ER Cape Ltd.*,
   801 F. Supp. 2d 211 (S.D.N.Y. 2011) .................................................................7

*Crafts Plus+, Inc. v. Foothill Capital Corp. (In re Crafts Plus+, Inc.)*,
   220 B.R. 331 (Bankr. W.D. Tex. 1998) .............................................................12

*In re Crysen/Montenay Energy Co.*,
   226 F.3d 160 (2d Cir. 2000), *cert. denied*, 532 U.S. 920, 121 S. Ct. 1356
   (2001) ...............................................................................................................14

*DeMasi v. Benefico*,
   567 F. Supp. 2d 449 (S.D.N.Y. 2008) .................................................................9

*In re Direct Access Partners, LLC*,
   602 B.R. 495 (Bankr. S.D.N.Y. 2019) ...............................................................16

*In re Dreier LLP*,
   452 B.R. 391 (Bankr. S.D.N.Y. 2011) .........................................................30, 31

*Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.)*,
   343 B.R. 75 (Bankr. S.D.N.Y. 2006) *rev'd* 388 B.R. 489 (S.D.N.Y. 2008) ..........12

*Ferarri v. Cnty. of Suffolk*,
   790 F. Supp. 2d 34 (E.D.N.Y. 2011) ...................................................................9

*Geltzer v. Salzman (In re ContinuityX, Inc.)*,
   582 B.R. 124 (Bankr. S.D.N.Y. 2018) .....................................................12, 13, 14

*Greenwald v. Latham & Watkins (In re Trans-End Tech., Inc.)*,
   230 B.R. 101 (Bankr. N.D. Ohio 1998) ..............................................................12

*United States ex. Rel Grubea v. Rosicki, Rosicki & Assocs, P.C.*,
   319 F. Supp.3d 747 (S.D.N.Y. 2018) .................................................................34

*IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*,
   408 F.3d 689 (11th Cir. 2005) ...........................................................................11

*In re J.P. Jeanneret Assoc., Inc.*,
   2011 WL 335594 (S.D.N.Y. Jan. 31, 2011) ........................................................5

*In re JVJ Pharmacy, Inc.*,
   630 B.R. 388 (S.D.N.Y. 2021) ..........................................................................16

*Kelley v. Safe Harbor Managed Acct. 101, Ltd.*,
   No. 20-3330, 2022 WL 1177748 (8th Cir. Apr. 21, 2022) ....................................25

*Kelley v. Westford Special Situations Master Fund, L.P.*,
   No. 19-cv-1073, 2020 WL 3077151 (D. Minn. June 10, 2020) .............................21

*Kelly-Brown v. Winfrey*,
 717 F.3d 295 (2d Cir. 2013)................................................................29

*Kendall v. Sorani (In re Richmond Produce Co.)*,
 195 B.R. 455 (N.D. Cal. 1996) ......................................................12, 13

*Leonard v. Optimal Payments, Ltd. (In re Nat'l Audit Defense Network Inc.)*,
 332 B.R. 896 (Bankr. D. Nev. 2005) ...................................................12

*In re Lloyd Sec., Inc.*,
 75 F.3d 853 (3d Cir. 1996)..................................................................17

*In re M. Fabrikant & Sons, Inc.*,
 394 B.R. 721 (Bankr. S.D.N.Y. 2008)..................................................16

*Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*,
 397 F.3d 77 (2d Cir. 2005)..................................................................14

*McKenna v. Wright*,
 386 F.3d 432 (2d Cir. 2004).................................................................31

*In re Motors Liquidation Co.*,
 590 B.R. 39 (S.D.N.Y. 2018), *aff'd*, 943 F.3d 125 (2d Cir. 2019) .........15

*Official Comm. Of Unsecured Creditors, v. Foss (In re Felt Mfg. Co.)*,
 371 B.R. 589 (Bankr. D.N.H. 2007) ....................................................12

*Picard v. Avellino*,
 557 B.R. 89 (Bankr. S.D.N.Y. 2016) ...................................................24

*Picard v. BNP Paribas S.A. (In re Barnard L. Madoff Inv. Sec. LLC)*,
 594 B.R. 167 (Bankr. S.D.N.Y. 2018) ........................................... *passim*

*Picard v. Bureau of Labor Ins.*,
 No. 08-01789 (BRL), 480 B.R. 501................................................ *passim*

*Picard v. Ceretti, et al.*,
 No. 09-01161 (SMB), 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015).......................24

*Picard v. Charles Ellerin Revocable Trust (In re BLMIS)*,
 Adv. Pro. Nos. 10-04398 (BRL), 10-05219 (BRL), 2012 WL 892514 (Bankr.
 S.D.N.Y. Mar. 14, 2012).........................................................18, 19, 22

*Picard. v. Citibank, N.A. (In re BLMIS)*,
 12 F.4th 171 (2d. Cir. 2021) ...................................................... *passim*

*Picard v. Cohen*,
 Adv. Pro. No. 10-04311, 2016 WL 1695296 (Bankr. S.D.N.Y. Apr. 25, 2016) ...................24

*Picard v. Fairfield Investment Fund Ltd. (In re BLMIS)*,
    Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6,
    2021) ...................................................................................................................... *passim*

*Picard v. Gettinger (In re Bernard L. Madoff Inv. Sec. LLC)*,
    976 F.3d 184 (2d Cir. 2020)........................................................................17, 18

*Picard v. Ida Fishman Revocable Trust (In re BLMIS)*,
    773 F.3d 411 (2d Cir. 2014).................................................................................24

*Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    548 B.R. 13 (Bankr. S.D.N.Y. 2016) ...................................................................10

*Picard v. Magnify, Inc.*,
    583 B.R. 829 (Bankr. S.D.N.Y. 2018) .................................................................24

*Picard v. Mayer*,
    No. 20-01316 (CGM), 2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021) ........19

*Picard v. Mendelow et al.*,
    560 B.R. 208 (Bankr. S.D.N.Y. Sept. 28, 2016)...................................................24

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
    515 B.R. 117 (Bankr. S.D.N.Y. 2014) .............................................................. *passim*

*Picard v. Merkin (In re BLMIS)*,
    440 B.R. 243 (Bankr. S.D.N.Y. 2010) ........................................................5, 21, 32

*Picard v. Shapiro*,
    542 B.R. 100 (Bankr. S.D.N.Y. 2015)...................................................20, 21, 24

*Picard v. Square One Fund Ltd.*,
    Bench Ruling on Motion to Dismiss, Adv. Pro. No. 10-04330 ..............................24

*In re Picard*,
    917 F.3d 85 (2d Cir. 2019)...................................................................................26

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir. 2007)...................................................................................5

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000)....................................................................................9

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    603 B.R. 682 (Bankr. S.D.N.Y. 2019) .................................................................15

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    608 B.R. 181 (Bankr. S.D.N.Y. 2019) .................................................................10

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   610 B.R. 197 (Bankr. S.D.N.Y. 2019) .....................................................................15

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Secs.)*,
   No. 20-cv-02586 (S.D.N.Y. May 2, 2022) (McMahon, J.) ................................29, 30

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Secs.)*,
   501 B.R. 26 (S.D.N.Y. Oct. 28, 2013) ............................................................ *passim*

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   No. 08-01789 (SMB), 563 B.R. 737 (Bankr. S.D.N.Y. 2017).........................11, 15

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   No. 12-MC-115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)...........22, 26, 27, 28

*Shapiro v. Art Leather, Inc. (In re Connolly N. Am., LLC)*,
   340 B.R. 829 (Bankr. E.D. Mich. 2006) .................................................................12

*Sherman v. A.J. Pegno Constr. Corp.*,
   528 F. Supp. 2d 320 (S.D.N.Y. 2007).......................................................................7

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
   379 B.R. 5 (Bankr. E.D.N.Y. 2007)...................................................................19, 20

*In re Terrestar Corp.*,
   No. 16 CIV. 1421 (ER), 2017 WL 1040448 (S.D.N.Y. Mar. 16, 2017)..................15

*United States v. Int'l Longshoremen's Ass'n*,
   518 F. Supp. 2d 422 (E.D.N.Y. 2007) ......................................................................7

*United Teamster Fund v. MagnaCare Admin Servs., LLC*,
   39 F.Supp. 3d 461 (S.D.N.Y. 2014)........................................................................29

*Weinman v. Simons (In re Slack-Horner Foundries Co.)*,
   971 F.2d 577 (10th Cir. 1992) ................................................................................12

**Statutes**

11 U.S.C. § 546(a) ...............................................................................13, 14, 16, 17

11 U.S.C. § 546(e) ................................................................................. *passim*

11 U.S.C. § 547.......................................................................................................20

11 U.S.C. § 547(b) ..................................................................................................22

11 U.S.C. § 548.......................................................................................................13

11 U.S.C. § 548(a) ...........................................................................................3, 6, 8

11 U.S.C. § 548(a)(1) ..........................................................................................................6, 16

11 U.S.C. § 548(a)(1)(A) ..............................................................................................22, 23, 25

11 U.S.C. § 548(c) ...........................................................................................................16, 18

11 U.S.C. § 550 ............................................................................................................. *passim*

11 U.S.C. § 550(a) ......................................................................................................... *passim*

11 U.S.C. § 550(a)(2) .............................................................................................................18

11 U.S.C. § 550(b) ......................................................................................................... *passim*

11 U.S.C. § 550(f) .................................................................................................................14

15 U.S.C. § 78fff-1(a) ...........................................................................................................17

15 U.S.C. § 78fff-2(a)(3) .......................................................................................................17

15 U.S.C. § 78fff-2(c)(3) ..................................................................................................17, 18

15 U.S.C. § 78fff(a)(4) ..........................................................................................................17

15 U.S.C. § 78fff(b) ..............................................................................................................17

15 U.S.C. § 78*lll*(4) ..............................................................................................................18

**Rules**

Fed. R. Bankr. P. 7012 ............................................................................................................5

Fed. R. Civ. P. 8 .......................................................................................................1, 5, 6, 8, 9

Fed. R. Civ. P. 10(c) ...............................................................................................................6

Fed. R. Civ. P. 12(b)(6) .............................................................................................1, 5, 23, 30

**Other Authorities**

Wright & Miller § 1326 ...........................................................................................................7

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection

Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff"),

respectfully submits this memorandum of law in opposition to defendant Delta National Bank and

Trust Company's ("Delta" or "Defendant") motion to dismiss the Complaint pursuant to Federal

Rule of Civil Procedure 12(b)(6) (the "Motion").

## PRELIMINARY STATEMENT

As part of the Trustee's continuing efforts in this SIPA liquidation proceeding to recover

BLMIS Customer Property that was stolen as part of Madoff's Ponzi scheme, this action seeks to

recover over $20 million of stolen Customer Property that Delta received from Fairfield Sentry

Limited ("Sentry"), a BLMIS "feeder fund" expressly constituted to funnel investments to BLMIS.

Delta moves to dismiss the Trustee's Complaint, arguing that (i) the Trustee has failed to

adequately allege the avoidability of the initial transfers, (ii) the Trustee has failed to allege the

elements necessary to recover under section 550(a), (iii) the safe harbor under section 546(e) bars

avoidance and recovery, (iv) the Complaint establishes Delta's section 550 good faith, and (v) the

Trustee's claims should be dismissed with prejudice. However, Delta's Motion should be denied

in its entirety consistent with this Court's recent denials of similar motions to dismiss in *Picard v.*

*Multi-Strategy Fund Limited (In re Bernard L. Madoff Inv. Secs. LLC)*, ECF No. 122 (Main Case

ECF No. 21729) (CGM), Case No. 08-01789 (Bankr. S.D.N.Y. June 13, 2022) ("*Multi-Strategy*")

and *Picard v. Banque Syz & Co., SA (In re Bernard L. Madoff Inv. Secs. LLC)*, Adv. No. 11-02149

(CGM), ECF no. 167 (Main Case ECF No. 21741) (Bankr. S.D.N.Y. June 14, 2022) ("*Banque*

*Syz*").

First, the Trustee's Complaint provides a "short and plain statement" consistent with

Federal Civil Procedure Rule 8 showing that the Trustee is entitled to relief.  Delta asserts that the

Trustee's incorporation by reference of his complaint against Sentry and other related parties violates this rule. Not only does this argument conflict with precedent from the District Court, but disregards this Court's authority to take judicial notice of the Trustee's Second Amended Complaint and its own opinion in *Picard v. Fairfield Investment Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*"), holding that the Second Amended Complaint plausibly alleged the avoidability of the initial transfers to Sentry.

Second, the Trustee plausibly alleges that Delta received Customer Property under section 550(a) by outlining the relevant pathways through which Customer Property was transferred from BLMIS to Sentry and subsequently to Delta. The Trustee further alleges the necessary vital statistics (*i.e.,* the "who, when, and how much") concerning the subsequent transfers Delta received. As this Court found in *Multi-Strategy* and *Banque Syz*, at this stage of the litigation, nothing more is required. Delta's arguments that the Trustee must meet a heightened pleading burden are plainly inappropriate on a motion to dismiss and run contrary to well established case law in this SIPA liquidation proceeding.

Third, the Trustee sufficiently alleges the avoidability of the initial transfers based on Sentry's actual knowledge of fraud, through incorporating by reference his amended complaint against Sentry (the "Fairfield Complaint").[1] Therefore, the safe harbor for securities payments pursuant to securities contracts under section 546(e) does not bar recovery from Delta. Delta argues that its knowledge as subsequent transferee (and not Sentry's knowledge as an initial transferee) should determine the avoidability of the initial transfers from BLMIS. This argument

---

[1] After the Trustee filed his Complaint against Defendant, the Trustee filed a Second Amended Complaint (the "Fairfield SAC") in the initial transfer action. *See* Fairfield Second Amended Complaint, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286.

conflicts with the plain language of the statute and precedent in this SIPA liquidation proceeding, establishing that section 546(e) does not independently safe harbor the recovery of avoidable fraudulent transfers from a subsequent transferee. In any event, the safe harbor is a non-issue as the majority of transfers from BLMIS to Sentry occurred between December 11, 2006, and December 11, 2008, and thus are avoidable under section 548(a).[2]

Fourth, the section 550(b) "good faith" defense available to subsequent transferees is a fact-intensive affirmative defense that is premature and plainly inappropriate on a motion to dismiss. As this court recently found in *Banque Syz*, it is Delta's burden to plead this affirmative defense in an answer and prove with evidence; it cannot be established in a complaint.

Lastly, Delta's argument that the Trustee's claims should be dismissed with prejudice lacks merit. Contrary to Delta's assertions, the Trustee has not had "unfettered access to Fairfield Sentry's books and records" for "over ten years" and discovery in the Fairfield Liquidators' action is still ongoing.

The Trustee respectfully requests that the Court deny Delta's Motion in its entirety.

## STATEMENT OF FACTS

### I.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS

Madoff founded and operated BLMIS from New York until its collapse in 2008. *See* Complaint ("Compl.") ¶ 29, ECF No. 1. BLMIS had three principal business units: (i) a proprietary trading business; (ii) a market-making business; and (iii) an investment advisory business (the "IA Business"). *Id.* ¶ 21. For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy, which involved (a) investing in a basket of common stocks from the Standard & Poor's 100 Index, (b) buying put options and selling call options to

---

[2] Delta expressly conceded section 546(e) does not apply to over $8 million in transfers that were made in the two-year period. Mot. at 16 n. 6.

hedge against price changes in the underlying basket of stocks, and (c) purchasing U.S. treasury bills when the money was out of the market. *Id.* ¶¶ 22-23. In reality, BLMIS operated a Ponzi scheme through its IA Business. *Id.* ¶ 26. On December 11, 2008, Madoff's fraud was publicly revealed, and he was arrested for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. *Id.* ¶ 9.

The extent of damage Madoff caused was made possible by BLMIS "feeder funds"—large investment funds created to funnel investors' funds into BLMIS. *See Picard. v. Citibank, N.A. (In re BLMIS),* 12 F.4th 171, 179 (2d. Cir. 2021), cert. denied sub nom. *Citibank, N.A. v. Picard*, 142 S. Ct. 1209 (2022) ("*Citibank*"). Delta knowingly invested in Sentry, one such feeder fund. Compl. ¶ 2.

## II.    DELTA AND ITS INVESTMENTS IN SENTRY

Delta is a U.S. bank that offers private banking services. *Id.* ¶ 20. Delta invested substantial sums with Sentry, which in turn invested nearly all of its funds with BLMIS. *Id.* at ¶ 2; *Picard v. Fairfield Sentry Limited, et al.*, No. 08-01789 (CGM), Adv. Proc. No. 09-01239, ECF No. 23 (the "Fairfield Am. Compl.") ¶¶ 52, 318.

Sentry was controlled by the Fairfield Greenwich Group ("FGG"), a de facto partnership with its principal place of business in New York. *See Picard v. Fairfield Inv. Fund Ltd. (In re BLMIS)*, No. 09-01239 (CGM), 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021) (*"Fairfield Inv. Fund"*). Sentry was a U.S. dollar-denominated fund that invested 95% of its assets with BLMIS. Fairfield Am. Compl. ¶¶ 52, 318.

Prior to BLMIS's collapse, Delta received approximately $20,634,958 in subsequent transfers of Customer Property from Sentry. Compl. ¶ 42, Ex. D. Following the collapse, the Trustee filed an adversary proceeding against Sentry and related defendants to avoid and recover fraudulent transfers of Customer Property in the amount of approximately $3 billion. Compl. ¶

33. In 2011, the Trustee settled with Sentry, and as part of the settlement, Sentry consented to a judgment in the amount of $3.054 billion but repaid only $70 million to the BLMIS estate. *Id.* ¶ 38. The Trustee then commenced a number of adversary proceedings against defendants such as Delta to recover the approximately $3 billion in stolen Customer Property.

## ARGUMENT

## I.    LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule"), applicable to this adversary proceeding under Fed. R. Bankr. P. 7012, "the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences" in the Trustee's favor. *In re J.P. Jeanneret Assoc., Inc.*, 2011 WL 335594, at *8 (S.D.N.Y. Jan. 31, 2011) (citing *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 44 (2d Cir. 2003); *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007)). To survive a motion to dismiss, the pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). The allegations need only meet the "plausibility" standard, such that they "'nudge[] [the] claims' … 'across the line from conceivable to plausible.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

The Complaint here sets forth in full the elements of Trustee's claims, pleading Delta's receipt of subsequent transfers of Customer Property and the grounds upon which the Trustee seeks to recover such transfers made to Delta. Thus, dismissal of the Complaint at this juncture is inappropriate. *See Picard v. Merkin (In re BLMIS)*, 440 B.R. 243, 254-71, 273 (Bankr. S.D.N.Y. 2010).

## II.  THE TRUSTEE SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE INITIAL TRANSFERS

Delta's argument alleging that incorporation by reference of the Fairfield Amended Complaint violates the requirement for a "short and plain statement of the claim" under Rule 8 misconstrues the purpose of incorporation and ignores the substance of the Trustee's allegations. The Trustee may incorporate the Fairfield Complaint under Rule 10(c) to demonstrate the avoidability of the initial transfers from BLMIS to Sentry.  *See Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010) (allowing incorporation by reference under Rule 10(c) of pleadings in a different adversary proceeding within the same liquidation).  In any event, the Court may take judicial notice of the Fairfield Second Amended Complaint as well as its own decision on the avoidability of the initial transfers.

### A.  The Complaint and The Incorporated Material Comply With Rule 8

Delta argues that the Trustee may not incorporate by reference the Fairfield Complaint, which details the avoidability of the initial transfers.  *See* 11 U.S.C. § 548(a)(1).  Delta's main support for this assertion is that courts in other contexts have declined to allow incorporation by reference of pleadings in entirely different actions where such incorporation violated Rule 8(a)(2)'s direction that a civil plaintiff provide a "short and plain statement of the claim."  *See* Mot. at 7-8.  However, the Trustee only incorporates the Fairfield Complaint to make a *prima facie* showing that the initial transfers are avoidable under section 548(a), which is a required element in recovery actions.  *See Citibank*, 12 F.4th at 196-97.

In addition, in the bankruptcy context, all matters under the umbrella of one liquidation are considered one proceeding for purposes of incorporation under Rule 10(c).  *See Multi-Strategy*, Adv. No. 12-01205, at 14 ("The Fairfield Complaint was filed in the 'same action' as this adversary proceeding for purposes of Rule 10(c)."); *In re Geiger*, 446 B.R. at 679 (allowing incorporation

6

by reference of pleadings in a different adversary proceeding within the same liquidation because the pleadings "directly relate[d] to, materially affect[ed], and [were] filed in a single bankruptcy case."). In contrast, the cases Delta cites are inapposite because in those cases, unlike in this one, plaintiffs were incorporating pleadings by reference in separate actions in an attempt to add entirely new claims. *See, e.g., United States v. Int'l Longshoremen's Assn'n,* 518 F. Supp. 2d 422, 461-66 (E.D.N.Y. 2007); *Constellation Energy Commodities Group Inc. v. Transfield ER Cape Ltd.*, 801 F. Supp. 2d 211, 223 (S.D.N.Y. 2011). Those courts found that incorporation under the circumstances would have led to confusion or lack of notice of the claims asserted. In this case, Delta would be hard pressed to argue they are confused or lack notice that the Trustee is seeking to avoid the initial transfers.

Contrary to Delta's lack of "fair notice" arguments, reference to the Fairfield Complaint provides notice of the avoidability of the initial transfers in a manner that avoids repetition and over-complication. As this Court recently held, "[i]f the Court were to dismiss [the Complaint] and permit the Trustee to amend his Complaint to include all of the allegations that are already contained in the Fairfield Complaint, all parties would be prejudiced by delay in these already, overly-prolonged proceedings." *Banque Syz,* at 15-16. "The ability to incorporate matters from other pleadings is especially useful in multiparty litigation when the presence of common questions often results in the pleadings of the other parties on the same side of the litigation being virtually identical, which makes employing simple incorporations by reference highly desirable." *Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 323 n.5 (S.D.N.Y. 2007) (citing Wright & Miller § 1326); Wright & Miller § 1326 n.1 ("Adoption by reference avoids overly long or complicated pleadings.").

Delta also ignores the District Court's prior opinion on whether under section 550(a) the Trustee must avoid an initial transfer or plead its avoidability in a subsequent transfer action. *Sec.*

*Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Secs.)*, 501 B.R. 26 (S.D.N.Y.

Oct. 28, 2013). In that decision, the District Court found sufficient the Trustee's incorporation by

reference of initial transfer complaints, including the Fairfield Complaint:

> [T]he Trustee's complaint against [the subsequent transfer defendant] incorporates
> by reference the complaints against Kingate and Fairfield, including the allegations
> concerning the avoidability of the initial transfers, and further alleges that
> avoidability of these transfers outright …. Thus, the avoidability of the transfers
> from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes
> of section 550(a).

*Id.* at 36; *see also Multi-Strategy*, Adv. No. 12-01205, at 14 ("The district court has already found

that adoption by reference of the entire Fairfield Complaint is proper."). This decision is now law

of the case. *See In re Bernard L. Madoff Inv. Sec. LLC,* No. 1:21-cv-02334-CM, 2022 WL 493734,

at *12 (S.D.N.Y. Feb. 17, 2022) ("*Est. of Seymour Epstein*").

Delta's argument that the Trustee's incorporation of the Fairfield Complaint violates Rule

8 ignores the substance of the Complaint and the purpose of the incorporation: to make a *prima*

*facie* showing that the initial transfers are avoidable under section 548(a). *Citibank,* 12 F.4th at

196-97. Delta complains that the Trustee adopts the Fairfield Complaint wholesale and fails to

"specify[] which of the multitude of allegations from the Fairfield Amended Complaint apply" to

Delta in the current adversary proceeding. Mot. at 8. However, the Complaint only incorporates

the Fairfield Complaint – as part of one paragraph – in pleading the avoidability of the initial

transfers. This places no undue burden on Delta, as it can admit the substance of the avoidability

of the initial transfers, deny them, or respond that they do not have sufficient information to admit

or deny. *See Banque Syz*, at 15-16 (holding that incorporating by reference the Fairfield Complaint

did not prejudice subsequent transferee defendant). Repleading all initial transfer allegations

would unnecessarily add countless pages to the Complaint. *Id.*; *see also Multi-Strategy*, Adv. No.

12-01205, at 13 (finding Trustee properly pleaded the avoidability of the initial transfer "by adopting by reference the entirety of the complaint filed against Fairfield Sentry.").

### B.    The Court Can Take Judicial Notice of the *Fairfield Inv. Fund* Decision

Delta's arguments regarding Rule 8 and the impropriety of incorporating the Fairfield Complaint are much ado about nothing because this Court may take judicial notice of the operative Fairfield Second Amended Complaint and its prior decision holding that the complaint sufficiently alleges the avoidability of the initial transfers. *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, No. 08-01789-(CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*").   On a motion to dismiss, "a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation that related to the case sub judice." *Ferarri v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011).  "Included among such matters are decisions in prior lawsuits." *DeMasi v. Benefico*, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008).  The fact that the Fairfield Second Amended Complaint was filed after the Complaint in this action is of no consequence, and this Court's decision finding that the Trustee sufficiently plead the avoidability of the initial transfers is thus subject to judicial notice.  See *Rothman v. Gregor*, 220 F.3d 81, 81-92 (2d Cir. 2000) (taking judicial notice of a subsequently filed complaint in a related proceeding).

### III.    THE TRUSTEE'S COMPLAINT ADEQUATELY PLEADS A CLAIM FOR RECOVERY UNDER SECTION 550

### A.    The Complaint Sufficiently Pleads the Avoidability of the Sentry Initial Transfers

To plead a subsequent transfer recovery claim under section 550(a) of the Bankruptcy Code[3] in this Court, the Trustee must "plead that the initial transfer is avoidable and that the

---

[3] Section 550(a) of the Bankruptcy Code provides that "to the extent a transfer is avoided…the trustee may recover, for the benefit of the estate, the property transferred, or … the value of such property from the initial transferee of

defendant is a subsequent transferee of that initial transfer." *Picard v. BNP Paribas S.A. (In re Barnard L. Madoff Inv. Sec. LLC)*, 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018) (quoting *Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, 548 B.R. 13, 36 (Bankr. S.D.N.Y. 2016)); *see Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 501 B.R. 26, 31, 35-36 (S.D.N.Y. 2013) ("Consolidated 550 Ruling").    As to the first element, Delta does not challenge that the Trustee has pleaded that the initial transfers are avoidable. *See* Mot. at 9.

Instead, Delta argues that before the Trustee may seek to recover funds under section 550(a), he first must have obtained a fully litigated judgment on the merits avoiding the initial transfers, which the Trustee has not. Mot. at 9. Moreover, Delta argues that the Trustee cannot amend his complaint to add an avoidance action because such a claim would be time-barred. *See id*. at 12-13.

Not surprisingly, Delta's interpretation of section 550(a) has been rejected by the overwhelming weight of authority and, dispositively, the law of this case. Delta's interpretation is further contradicted by the separate avoidance and recovery schemes of the Bankruptcy Code, as well as the express provisions of SIPA. Its argument, which is based on cherry-picking dicta from the Second Circuit and other on different legal issues, lacks merit.

### B.    The Trustee Need Only Show that the Initial Transfers are Avoidable in Order to Maintain a Subsequent Transfer Claim

This Court should reject Delta's contention that the Trustee must first obtain a judgment avoiding the initial transfers from Sentry before pursuing a claim for subsequent transfers.    *See* Mot. at 10-11. Existing case law is clear that a Trustee need only plead the avoidability of the initial transfer, and need not actually avoid it, to satisfy section 550(a). *Sec. Inv. Prot. Corp. v.*

---

such transfer or the entity for whose benefit such transfer was made" or "any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a).

*Bernard L. Madoff Inv. Sec. LLC*, 608 B.R. 181, 194-96 (Bankr. S.D.N.Y. 2019) (citing *Picard v. Legacy Capital Ltd.* (*In re Bernard L. Madoff Inv. Sec. LLC*), 548 B.R. 13, 36 (Bankr. S.D.N.Y. 2016) ("*Legacy I*") vacated and remanded on other grounds, 12 F.4th 171 (2d Cir. 2021)). Specifically, within the BLMIS liquidation, the District Court and this Court held that a trustee does not need to have obtained a judgment avoiding an initial transfer prior to pursuing and recovering from a subsequent transferee. *See Multi-Strategy*, Adv. No. 12-01205, at 13 ("The Trustee is not required to avoid the transfer received by the initial transferee before asserting an action against subsequent transferees."); *Banque Syz*, at 13 ("While the Trustee must allege that the initial transfer from BLMIS to Fairfield Sentry is avoidable, he is not required to avoid the transfer received by the initial transferee before asserting an action against subsequent transferees."); Consolidated 550 Ruling, 501 B.R. at 37 (holding that language of section 550 addressing recovery "to the extent a transfer is avoided" requires only that the trustee show that a transfer is avoidable and does not require an actual judgment of avoidance); *Fairfield Inv. Fund*, 2021 WL 3477479, at *3 (construing section 550(a) to mean that recovery of a fraudulent or preferential transfer of property from a subsequent transferee requires the Trustee to "show that the initial transfer of that property by the debtor is *subject to avoidance* under one of the Bankruptcy Code's avoidance provisions (e.g., 11 U.S.C. §§ 544, 547 & 548).") (emphasis added); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (SMB), 563 B.R. 737, 753 (Bankr. S.D.N.Y. 2017) (rejecting argument that subsequent transfer claims must be dismissed because the Trustee did not avoid and recover initial transfers from the initial transferee before doing so); *Picard v. Bureau of Labor Ins.*, No. 08-01789 (BRL) ("*BLI*"), 480 B.R. 501, 522 (construing section 550 to require only avoidability in order to pursue subsequent transferee).

These decisions are consistent with nearly every court to have considered the issue. *See, e.g., In re AVI, Inc.*, 389 B.R. 721, 735 (B.A.P. 9th Cir. 2008) ("*AVI*") (in construing section 550

11

and addressing a settlement where initial transfer was not "actually avoided," court held that a trustee is not required to avoid the initial transfer from the initial transferee before seeking recovery from subsequent transfers under section 550(a); *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 706 (11th Cir. 2005) ("[O]nce the plaintiff proves that an avoidable transfer exists he can then skip over the initial transferee and recover from those next in line"); *Kendall v. Sorani (In re Richmond Produce Co.)*, 195 B.R. 455, 463 (N.D. Cal. 1996) (recognizing that "once the trustee proves that a transfer is avoidable under section 548, he may seek to recover against any transferee, initial or immediate, or an entity for whose benefit the transfer is made."); *Geltzer v. Salzman (In re ContinuityX, Inc.)*, 582 B.R. 124, 136 (Bankr. S.D.N.Y. 2018) (allowing trustee to pursue recovery from subsequent transferee where it would have been impractical, if not impossible, to obtain a judgment of avoidance against initial transferee).[4]

Delta's recycled statutory interpretation arguments urging a strict "plain text" reading have been rejected in this SIPA liquidation proceeding and other bankruptcy cases based on the same or similar rationales. Courts recognize that the clause "to the extent a transfer is avoided" in section 550(a) is ambiguous, and that it must be interpreted flexibly and in light of the framework of the Bankruptcy Code's avoidance and recovery provisions. *See* Consolidated 550 Ruling, 501 B.R. at 31-32; *BLI*, 480 B.R. at 521-22 (rejecting strict construction and reviewing in context of statutory framework as a whole to avoid absurd results); *AVI*, 389 B.R. at 733-35 (same). As a

---

[4] Numerous courts have held likewise. *See Anderson v. Bajaj (In re Med. Mgmt. Grp., LLC)*, 534 B.R. 646, 653 (Bankr. D.S.C. 2015); *Brown v. Phillips (In re Phillips)*, 379 B.R. 765, 786 (Bankr. N.D. Ill 2007); *Official Comm. Of Unsecured Creditors, v. Foss (In re Felt Mfg. Co.)*, 371 B.R. 589, 638-39 (Bankr. D.N.H. 2007); *Shapiro v. Art Leather, Inc. (In re Connolly N. Am., LLC)*, 340 B.R. 829, 839-43 (Bankr. E.D. Mich. 2006); *Leonard v. Optimal Payments, Ltd. (In re Nat'l Audit Defense Network Inc.)*, 332 B.R. 896, 915 (Bankr. D. Nev. 2005); *Advanced Telecom Network, Inc. v. Allen (In re Advanced Telecom Network, Inc.)*, 321 B.R. 308, 327 (Bankr. M.D. Fla. 2005), *rev'd on other grounds by* 490 F.3d 1325 (11th Cir. 2007); *Crafts Plus+, Inc. v. Foothill Capital Corp., (In re Crafts Plus+, Inc.)*, 220 B.R. 331, 334-38 (Bankr. W.D. Tex. 1998); *but see Weinman v. Simons (In re Slack-Horner Foundries Co.)*, 971 F.2d 577, 580 (10th Cir. 1992); *Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.)*, 343 B.R. 75, 79 (Bankr. S.D.N.Y. 2006) *rev'd* 388 B.R. 489, 490 (S.D.N.Y. 2008); *Greenwald v. Latham & Watkins (In re Trans-End Tech., Inc.)*, 230 B.R. 101, 104-05 (Bankr. N.D. Ohio 1998).

result, the "extent a transfer is avoided" clause in section 550 has been interpreted to establish a limitation on the amount of recovery, not a "temporal limitation requiring prior avoidance." Consolidated 550 Ruling, 501 B.R. at 31-32 (citing cases and legislative history). In other words, the statute recognizes that transfers may be partially avoided, and only the avoided portion of the transfer may be ultimately recovered. *See id.* at 31-32, 34; *AVI*, 389 B.R. at 733; *Kendall v. Sorani (In re Richmond Produce Co.)*, 195 B.R. at 463.

Moreover, Delta's impractical and rigid interpretation of section 550(a) is contrary to Congress' intent, conflates the concepts of avoidance and recovery, and has been described as non-sensical. *See, e.g., AVI*, 389 B.R. at 735 ("[W]e conclude that Congress intended avoidance as one remedy and recovery as another. Thus, we hold that a trustee is not required to avoid the initial transfer from the initial transferee before seeking recovery from subsequent transferees under section 550(a)(2)"). Rigidly interpreting section 550(a) also would adversely impact settlements with initial transferees. To require a formal judgment of avoidance would preclude trustees from pursuing subsequent transferees following a settlement with an initial transferee, leaving them "little incentive to partially settle avoidance actions, thereby running up the costs of litigation and causing further delay. Congress could not have contemplated this outcome in enacting section 550." *AVI*, 389 B.R. at 735; *see BLI*, 480 B.R. at 521-22 ("To avoid such an impractical result [from forcing the Trustee to choose between burdensome litigation with an insolvent initial transferee on one hand and forfeiting the right to recover from subsequent transferees on the other], the Court construes section 550 flexibly to require only avoidability to pursue recovery from BLI.") (emphasis added); *In re ContinuityX*, 582 B.R. at 133-36 (discussing and agreeing with avoidability rationale to preclude non-sensical results).

A corollary argument of Delta is that because a "prior judgment of avoidance" is an element of a section 550 claim, a trustee therefore must have included the avoidance claim within the

13

subsequent transfer action, thereby making such actions subject to the same time limitations of

section 546(a) for avoiding initial transfers.  *See* Mot. at 12-13.  That argument too conflates the

concepts of avoidance and recovery and has been rejected by the same courts.  A trustee need only

timely bring an avoidance action to avoid initial transfers within the two-year period set forth in

section 546(a), which the Trustee in fact did.  *See* Consolidated 550 Ruling, 501 B.R. at 34-36

(rejecting argument that subsequent transferee action must be dismissed if Trustee failed either to

obtain a judgment against the relevant subsequent transferee avoiding the initial transfer, or to

assert within 546(a) a time period an avoidance claim against the subsequent transferee to avoid

the initial transfer); *BLI*, 480 B.R. at 520 (holding that trustee may recover from subsequent

transferee under section 550 because he timely filed a complaint against initial transferee alleging

the initial transfers are "avoidable").  And a recovery action against a subsequent transferee need

only be commenced within one year of settlement or avoidance of the initial transfers.  *See* 11

U.S.C. § 550(f); *BLI,* 480 B.R. at 522; *In re ContinuityX*, 582 B.R. at 136.  The Trustee did so

here.

> ### C.    Under Law of the Case, A Prior Judgment of Avoidance Is Not an Element of a Section 550 Claim

Despite Delta's protests to the contrary, the Consolidated 550 Ruling, *Multi-Strategy*,

*Banque Syz, BLI* and *Fairfield* are law of the case, and Delta is bound by them.  The "law of the

case" doctrine provides that when prior decisions in an ongoing case "either expressly resolved an

issue or necessarily resolved it by implication," that "rule of law … should continue to govern in

subsequent stages of the same case."  *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir.

2001) (quoting *In re Crysen/Montenay Energy Co.,* 226 F.3d 160, 165 n. 5 (2d Cir. 2000), *cert.

denied*, 532 U.S. 920, 121 S. Ct. 1356 (2001)).  The doctrine "counsels against heedlessly

revisiting prior [legal] rulings in a case." *In re Club Ventures Investments LLC*, 507 B.R. 91, 100-

101 (S.D.N.Y. 2014) (citing *Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 94 (2d Cir. 2005)).

In a SIPA liquidation proceeding, the doctrine applies across different adversary proceedings arising from the same SIPA liquidation proceeding. *Est. of Seymour Epstein*, 2022 WL 493734, at *12. Specifically, this Court held that "[C]ases within this SIPA proceeding are filed in the same "proceeding"—the SIPA proceeding." *Banque Syz,* at 14, citing *In re Terrestar Corp.*, No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."); *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 610 B.R. 197, 237 (Bankr. S.D.N.Y. 2019) ("The prior decisions within this SIPA proceeding constitute law of the case . . . . "); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 603 B.R. 682, 700 (Bankr. S.D.N.Y. 2019), (citing *In re Motors Liquidation Co*., 590 B.R. 39, 62 (S.D.N.Y. 2018) (law of the case doctrine applies across adversary proceedings within the same main case), *aff'd*, 943 F.3d 125 (2d Cir. 2019)). Because this Court and the District Court previously have decided as a matter of law that a prior judgment of avoidance is not an element of a section 550 recovery claim, the Court should reject the Delta's invitation to revisit prior decisions under the law of the BLMIS case. *See* Consolidated 550 Ruling, 501 B.R. at 31 (S.D.N.Y. 2013); *Fairfield Inv. Fund Ltd.*, 2021 WL 3477479, at *3; *Sec. Inv'r Prot. Corp.*, 563 B.R. at 753; *BLI*, 480 B.R. at 522.

### D.    The Second Circuit Did Not Overrule the Decisions in this Case, Nor Do Citations to Inapposite Decisions Assist Delta's Interpretation

None of the decisions Delta cites – including decisions by the Second Circuit – address the argument that a prior judgment of avoidance is a prerequisite to a recovery claim, much less resolve it. *Picard v. Citibank* did not concern the interpretation of section 550(a); rather, the language in

the decision relied upon by Delta consists of recitation of the language of the statute in deciding issues not relevant to this Motion.

In *Picard v. Citibank*, the Second Circuit analyzed the proper standard for determining good faith under sections 548(c) and 550(b) of the Bankruptcy Code and the related pleading burden. *Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Secs. LLC)*, 12 F.4th 171 (2d Cir. 2021). The Second Circuit only refers to section 550(a) to generally explain the concepts of avoidance and recovery under the Bankruptcy Code and on the unrelated issue of whether section 550(b) is an affirmative defense and the appropriate pleading standard for that defense. *Id.* at 181, 197. Notably, *Citibank* reversed a decision of District Court Judge Rakoff, who had withdrawn the reference on and decided the interpretation of the "good faith" defense under section 550(b). Delta's argument appears to be that by referencing the avoidance and recovery concepts in its decision, the Second Circuit also intended to gratuitously reverse Judge Rakoff's separate opinion in *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 501 B.R. 26, 31 (S.D.N.Y. 2013), in which he withdrew and resolved the specific issue of whether to recover a transfer the Trustee must litigate the "avoidance" of a transfer or need merely allege it is avoidable. Defendant provides no support either for this implausible suggestion, or its interpretive argument.

The other authorities cited by Delta are similarly unavailing. *See* Mot. at 10-11. For example, in *In re Direct Access Partners, LLC*, the court held that the trustee's initial and subsequent transfer recovery claims against certain defendants were time-barred because the trustee failed to file a lawsuit to avoid the underlying initial transfers within the two-year period fixed by section 546(a) of the Bankruptcy Code. 602 B.R. 495, 518 (Bankr. S.D.N.Y. 2019); *see also In re JVJ Pharmacy, Inc.*, 630 B.R. 388 (S.D.N.Y. 2021) (vacating summary judgment on claim under section 548(a)(1) and remanding to determine defendant's status as an initial or subsequent transferee). In fact, Delta cites to decisions that undermine and weigh against its

argument.  *See* Mot. at 11 (citing *In re M. Fabrikant & Sons, Inc.*, 394 B.R. 721 (Bankr. S.D.N.Y. 2008) (declining to adopt the majority or minority view on whether section 550(a) requires a prior judgment of avoidance and stating that a trustee can always settle with an initial transferee so long as he demonstrates that the initial transfer is subject to avoidance in an action against the subsequent transferee)).

Finally, contrary to Delta's suggestion, none of the cases cited by Delta require a trustee to avoid initial transfers as against a subsequent transferee within the statutory period set forth in section 546(a) for commencing an action to avoid initial transfers.

> ### E.    The Trustee Need Not Obtain a Final Judgment of Avoidance In Order to Recover From Delta, Because SIPA Authorizes the Trustee to Recover "Void or Voidable" Transfers Under the Bankruptcy Code

Delta's interpretation of the Bankruptcy Code is incorrect.  However, even if Defendant was correct, its interpretation would be barred by SIPA.  To the extent consistent with SIPA, a SIPA liquidation proceeding must be conducted "in accordance with" and "as though it were being conducted under chapters 1, 3, and 5 and subchapters I and II of chapter 7 of title 11."  SIPA § 78fff(b).  This means SIPA incorporates applicable sections of the Bankruptcy Code to the extent they are consistent with SIPA's express provisions.  *Picard v. Gettinger (In re Bernard L. Madoff Inv. Sec. LLC)*, 976 F.3d 184, 199 (2d Cir. 2020).

SIPA contemplates satisfaction of customer claims, liquidation of the debtor's business, and satisfaction of claims filed by general creditors.  *See* SIPA §§ 78fff(a)(4), 78fff-2(a)(3).  To accomplish these goals, SIPA provides a SIPA trustee with the same powers as a chapter 7 bankruptcy trustee, *see, e.g., In re Lloyd Sec., Inc.*, 75 F.3d 853, 858 (3d Cir. 1996), and additional powers to enable him to perform the special functions of a SIPA liquidation. *See* SIPA § 78fff-1(a) (a SIPA trustee is "vested with the same powers and title with respect to the debtor and the property of the debtor … as a trustee in a case under title 11.").  These powers include the power

to avoid and recover transfers of "customer property." *See* SIPA § 78fff-2(c)(3); *Gettinger*, 976

F.3d at 199 ("A trustee therefore can invoke the fraudulent transfer provisions in the Bankruptcy

Code to recover customer property."). Customer Property includes property that was received,

acquired, or held by the broker-dealer for the accounts of customers and that has been unlawfully

converted. SIPA § 78*lll*(4). For purposes of avoidance and recovery, Customer Property is deemed

to be property of the debtor. *See* SIPA § 78fff-2(c)(3).

Importantly, SIPA permits the Trustee to recover transfers of Customer Property where (1)

"customer property is not sufficient to pay in full" all customer claims as set forth in SIPA § 78fff-

2(c)(1)(A)-(D), and (2) to the extent that the transfers are "*voidable* or *void* under the provisions

of title 11." SIPA § 78fff-2(c)(3) (emphasis added). Therefore, Defendant's misinterpretation of

the Code would create a conflict with SIPA, in which case SIPA would govern, and SIPA's

language mandates an avoidability standard. That provision of SIPA controls to the extent it is

deemed inconsistent with the Bankruptcy Code. *See, e.g., Gettinger*, 976 F.3d at 199 (holding that

the defendants could not invoke the "for value" defense in section 548(c) of the Bankruptcy Code

to transfers of fictitious profits because it conflicts with SIPA). More likely, however, SIPA

merely restates the requirements for recovery.

## IV.    TRUSTEE'S COMPLAINT ADEQUATELY PLEADS THAT DELTA BANK RECEIVED BLMIS CUSTOMER PROPERTY

The Trustee's Complaint states a claim for recovery under section 550(a)(2) by plausibly

alleging that Delta received subsequent transfers of stolen BLMIS Customer Property. To plead a

subsequent transfer claim, the Trustee must allege facts that support an inference "that the funds

at issue originated with the debtor." *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,

515 B.R. 117, 149 (Bankr. S.D.N.Y. 2014) (citation omitted). No tracing analysis is required, as

the pleading burden "is not so onerous as to require 'dollar-for-dollar accounting' of 'the exact

funds' at issue." *Id.* (quoting *Picard v. Charles Ellerin Revocable Trust (In re BLMIS)*, Adv. Pro. Nos. 10-04398 (BRL), 10-05219 (BRL), 2012 WL 892514, at \*3 (Bankr. S.D.N.Y. Mar. 14, 2012.)); *see also Banque Syz,* at 13 (the plaintiff's burden at the pleading stage does not require dollar-for-dollar accounting of the exact funds at issue); *Multi Strategy* at 13 (same). Rather, as Delta concedes, "the Trustee need only allege sufficient facts to show the relevant pathways through which the funds were transferred from BLMIS to [the subsequent transferee]." *Charles Ellerin Revocable Trust*, 2012 WL 892514, at \*3; *see also 45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019). And, as Delta correctly states, the Trustee must allege only "'the necessary vital statistics—the who, when, and how much' of the purported transfers to establish an entity as a subsequent transferee of the funds." *Merkin*, 515 B.R. at 150 (quoting *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 32 (Bankr. E.D.N.Y. 2007)).

### A.    The Trustee's Complaint Meets the Pleading Requirements

The Trustee's Complaint alleges that Delta received specific transfers, on specific dates, in specific amounts from Sentry, and that Sentry invested substantially all of its funds with BLMIS. Compl. ¶¶ 2, 33-40, Exs. C, D. Thus, the Complaint plausibly alleges that Delta received subsequent transfers of Customer Property by (a) outlining the relevant pathway through which Customer Property was transferred from BLMIS to Sentry and subsequently to Delta, and (b) providing the necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer. Nothing more is required. *See, e.g.*, *Multi-Strategy,* at 22 (finding that Trustee's complaint, which detailed transfers from Sentry to defendant, and included the dates and amounts of such transfers, was sufficient to survive a motion to dismiss); *Banque Syz*, at 25 (finding the exhibits to the complaint "provide [defendant] with the "who, when, and how much" of each transfer."); *Picard v. Mayer*, No. 20-01316 (CGM), 2021 WL 4994435, at \*5 (Bankr. S.D.N.Y.

Oct. 27, 2021) (rejecting argument that subsequent transfer "claim has not been plead with enough specificity as to how and what [defendant] received" and holding complaint "contains sufficient information regarding which transfers the Trustee is seeking to recover").

### B.     Delta Misstates the Trustee's Pleading Burden

Delta misstates the pleading burden, arguing that although the Trustee attached exhibits detailing the dates and amounts of transfers from BLMIS to Sentry and from Sentry to Delta, the Complaint nonetheless still does not adequately specify which funds constituted BLMIS Customer Property. *See* Mot. at 13-14. However, this Court has previously refused to dismiss subsequent transfer claims where the complaint "[did] not connect each of the subsequent transfers with an initial, voidable transfer emanating from BLMIS." *Merkin*, 515 B.R. at 150, *see also 45 John Lofts, LLC*, 599 B.R. at 747 (finding no "requirement to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss"). Likewise, this Court has already rejected the argument that the Trustee must detail which and what portion of each subsequent transfer comprises Customer Property. *See Merkin*, 515 B.R. at 152–53 (refusing to dismiss complaint where "at least some of the subsequent transfers . . . may be recoverable"); *see also In re Allou Distribs., Inc.*, 379 B.R. at 30 (finding "if dollar-for-dollar accounting is not required at the proof stage, then surely it is not required at the pleading stage either"); *Banque Syz,* at 13 (same); *Multi Strategy* at 13 (same).

In arguing that the Trustee has not met the pleading burden, Delta relies on misapplications of *In re Caremerica, Inc.* and *Shapiro*, which are factually distinguishable cases. *See* Mot. at 13-14; *In re Caremerica, Inc.*, 409 B.R. 737, 750 (Bankr. E.D.N.C. 2009); *Picard v. Shapiro*, 542 B.R. 100 (Bankr. S.D.N.Y. 2015). For example, in *In re Caremerica*, the Bankruptcy Court for the Eastern District of North Carolina discussed the pleading requirements for the avoidance of preferential transfers under section 547 of the Bankruptcy Code and did not address claims for

recovery under section 550. *In re Caremerica*, 409 B.R. at 750-51. Much of the discussion centered around whether the exhibits were sufficient to show a transfer of the interest of the debtor in property as required by section 547(b), and the fact that the transfers at issue originated in a non-debtor bank account. *Id.* None of these issues are relevant to the current action.

In *Shapiro*, the Trustee alleged that certain trusts and members of the Shapiro family received approximately $54 million in fraudulent transfers from BLMIS, and "upon information and belief" these defendants subsequently transferred this same amount to other defendants. *See Shapiro*, 542 B.R. at 104, 119. However, in that case the complaint *did not detail any* of the necessary vital statistics of the subsequent transfers. *Id*. at 119. There were no allegations regarding the subsequent transferors, the subsequent transferees, or the dates or amounts of the subsequent transfers, and consequently this Court granted defendants' motion to dismiss the subsequent transfer claim. *Id*. By contrast, in this case the Trustee has alleged the specific parties, dates, and amounts of each transfer the Defendant received from Sentry and the investment relationship between the parties. Compl. ¶¶ 2, 33-40, Exs. C, D. As such, *Shapiro* actually supports denying Defendant's motion to dismiss because in this case the Trustee has alleged the vital statistics of each transfer it received. *Shapiro*, 542 B.R. at 119 (finding "the Trustee must allege facts that support the inference that the funds at issue originated with the BLMIS, and contain the "necessary vital statistics"—the "who, when, and how much" of the transfers to establish that an entity was a subsequent transferee of the funds.").

Regardless, Delta's fact-based arguments pertaining to tracing and Customer Property are both disingenuous and inappropriate for a motion to dismiss. Such tracing arguments are inappropriate when there are issues of commingling funds as with Sentry. "The law does not place such a difficult burden on trustees. The commingling of legitimate funds with funds transferred from the debtor does not defeat tracing." *Kelley v. Westford Special Situations Master Fund, L.P.*,

21

No. 19-cv-1073, 2020 WL 3077151, at *4 (D. Minn. June 10, 2020) (citing *Charles Ellerin Revocable Trust*, 2012 WL 892514, at *2); *Charles Ellerin Revocable Trust*, 2012 WL 892514, at *3, n.7 ("Courts have broad discretion to determine which monies of commingled funds derive from fraudulent sources.") (citation omitted).  Delta also argues that there is a "lack of linkage" between the initial transfers and subsequent transfers, *see* Mot. at 14; however, the Complaint demonstrates the relationship between initial transfers from BLMIS to Sentry, and subsequent transfers from Sentry to Delta.  *See* Compl. Exs. C – D.  And even if it may prove difficult for the Trustee to trace these transfers, this is not grounds for dismissal at the pleading stage.  *See Merkin*, 515 B.R. at 152 (finding it "premature to cut off the Trustee's opportunity to satisfy his [tracing] burden on a motion to dismiss" merely because the tracing may prove difficult).  In any event, this Court has already found that "the [Fairfield] Complaint plausibly alleges that Fairfield Sentry did not have any assets that were not customer property."  *Multi-Strategy* at 21.  And "taking all allegations as true and reading them in a light most favorable to the Trustee," this Court denied Multi-Strategy's Motion to Dismiss and held that "the [Fairfield] Complaint plausibly pleads that Defendant[s] received customer property because Fairfield Sentry did not have other property to give."  *Multi-Strategy* at 22.

## V.    SECTION 546(E) DOES NOT BAR RECOVERY FROM DEFENDANT

Section 546(e) provides a safe harbor for the avoidance of certain initial transfers made outside the two-year period referenced in section 548(a)(1)(A).  *See* 11 U.S.C. § 546(e) ("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title.") (emphasis added). However, the District Court has held that an initial transferee's actual knowledge of Madoff's fraud precludes application of the section 546(e) safe harbor, thereby allowing the Trustee to avoid

transfers made prior to the two-year period.  *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-MC-115, 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*").

At the outset, the section 546(e) safe harbor does not apply to the majority of the transfers at issue because they took place well within the two-year period referenced in Section 548(a)(1)(A).  *See* Compl., Exs. B – E.[5]  As to the transfers beyond two years, Delta argues that the safe harbor applies because it had no actual knowledge of Madoff's fraud.  But the Trustee has sufficiently pleaded the initial transferee's actual knowledge and therefore the initial transfers are avoidable and recoverable from Delta.

### A.    Sentry Had Actual Knowledge of Madoff's Fraud

Delta spends much time setting forth the requirements of section 546(e) and how they are presumably met in this case in multiple ways with respect to the initial transfers to Sentry, as established by *Cohmad*.  *See* Mot. at 16-21.  None of this matters.[6]  This Court has previously found that the Trustee has sufficiently pled that the initial transferee Sentry had actual knowledge of Madoff's fraud and that such initial transfers are avoidable.  *Fairfield Inv. Fund*, 2021 WL 3477479, at *4–5; *Multi-Strategy*, at 17 ("This Court has already determined that the Fairfield [Second Amended] Complaint contains sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule 12(b)(6) motion."); *Banque Syz*, at 20-21 (same).    This Court determined that the Fairfield Complaint is replete with allegations demonstrating that Fairfield Sentry had actual knowledge that BLMIS was not trading securities.  *Multi-Strategy* at 18, citing *Fairfield Inv. Fund*, 2021 WL 3477479 at *3-7.  As such, section

---

[5] Delta Bank seeks to only dismiss Plaintiff's claims related to the 35 transfers totaling $12,444,735 that occurred outside of the two-year statute of limitations.  Mot. at 16 n.6.  Delta Bank thus concedes that section 546(e) does not apply to the two-year transfers, which comprise 17 transfers totaling $8,190,223.  *See* Compl., Ex. D.

[6] The Trustee does not concede that any agreements or transfers between Sentry and Delta activate the safe harbor under section 546(e) or that any transferor or transferee is a financial participant.  *See* Mot. at 17-19.  Such information is simply not relevant, because whether the initial transfers from BLMIS to Sentry are avoidable turns on Sentry's actual knowledge of fraud at BLMIS, not Delta's knowledge as a subsequent transferee.

546(e) does not bar recovery of those transfers from Delta, regardless of whether Sentry or Delta qualify as financial institutions, their agreements qualify as securities contracts, or their transfers qualify as settlement payments. The Trustee therefore focuses his response on Defendant's erroneous arguments regarding the actual knowledge exception and its application here.

### B. Delta Bank Is Precluded From Relitigating the Actual Knowledge Exception Established in Cohmad

Delta is precluded from arguing that *Cohmad* is wrong and relitigating the issue of whether actual knowledge bars the application of section 546(e). *Cohmad* was issued in connection with consolidated proceedings before the District Court as to the application of section 546(e) and that decision held that a party with actual knowledge of Madoff's fraud cannot claim the protections of section 546(e). The District Court then remanded the relevant cases back to this Court, and this Court has since applied the actual knowledge "exception" on several occasions.[7] Delta participated in those District Court proceedings.[8] As such, Delta is bound by *Cohmad* and that decision is law of the case. *See supra* at 14-15.

In its Motion, Delta relies heavily on *Picard v. Ida Fishman Revocable Trust (In re BLMIS)*, 773 F.3d 411 (2d Cir. 2014). Mot. at 15, 17-18, 20-21. However, as this Court has recognized, the Second Circuit's decision in *Ida Fishman* did not address the actual knowledge exception. *See Picard v. Cohen*, Adv. Pro. No. 10-04311, 2016 WL 1695296, at *10, n.16 (Bankr. S.D.N.Y. Apr. 25, 2016).

---

[7] *See, e.g., Fairfield Inv. Fund*, 2021 WL 3477479, at *4 (applying actual knowledge exception); *Picard v. Square One Fund Ltd.*, Bench Ruling on Motion to Dismiss, Adv. Pro. No. 10-04330 (Bankr. S.D.N.Y. May 29, 2018) (same); *Picard v. Magnify, Inc.*, 583 B.R. 829, 841 (Bankr. S.D.N.Y. 2018) (same); *Picard v. Mendelow et al.*, 560 B.R. 208 (Bankr. S.D.N.Y. Sept. 28, 2016) (same); *Picard v. Avellino*, 557 B.R. 89, 112 (Bankr. S.D.N.Y. 2016) (same); *Picard v. Shapiro*, 542 B.R. 100 (Bankr. S.D.N.Y. 2015) (same); *Picard v. Ceretti, et al.*, No. 09-01161 (SMB), 2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015) (same); *Picard v. Merkin*, 515 B.R. 117 (Bankr. S.D.N.Y. 2014) (same).

[8] *See Picard v. Delta National Bank and Trust Company*, Adv. Pro. No. 12-cv-02615, Memorandum of Law in Support of Defendant's Motion to Withdraw the Reference to the Bankruptcy Court, ECF No. 1 (Bankr. S.D.N.Y. filed April 4, 2012); Section 546(e) Briefing Order, *In re Madoff Securities*, 12-MC-115 (S.D.N.Y. filed May 16, 2012), ECF No. 119 (listing *Delta National Bank and Trust Company*, Adv. Pro. No. 12-cv-02615 as pertaining to the consolidated proceedings on section 546(e) issues).

**C.      Section 546(e) Does Not Apply Independently to Recovery Actions**

Delta is also wrong that the Trustee must allege that a subsequent transferee had actual

knowledge in order to invoke the actual knowledge exception to section 546(e).  Specifically, Delta

argues that under *Cohmad*, "the redemption request forms between Fairfield Sentry and Delta

Bank" operate as the relevant "securities contract" in lieu of BLMIS's account agreement with

Sentry, and as such, in these section 550 recovery actions, "actual knowledge is only relevant to

section 546(e) when *all* parties to a securities contract have actual knowledge of fraud[.]"  Mot. at

19-20 (emphasis added).  But *Cohmad* does not stand for this proposition, and Delta's argument

is little more than a repackaging of the previously rejected argument that the Section 546(e) safe

harbor should independently apply to recovery actions under section 550.  *See Multi-Strategy*, at

19-20 (finding that a subsequent transferee may only raise the safe harbor as a defense "so far as

the avoidance of the initial transfer is concerned" and that the safe harbor is not available as a

defense to subsequent transfer claims); *see also Banque Syz*, at 20 ("[t]he safe harbor is not

applicable to subsequent transfers.").

By its plain language, section 546(e) applies to the avoidance of initial transfers, not the

recovery of subsequent transfers under section 550.  *See* 11 U.S.C. § 546(e) ("Notwithstanding

sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer*

. . . except under section 548(a)(1)(A) of this title.") (emphasis added); *see also Multi-Strategy* at

19, *citing Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018)

("*BNP*") ("The Trustee does not . . . 'avoid' the subsequent transfer; he recovers the value of the

avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe

harbor does not refer to the recovery claims under section 550."); *Kelley v. Safe Harbor Managed

Acct. 101, Ltd.*, No. 20-3330, 2022 WL 1177748, *3 n.5 (8th Cir. Apr. 21, 2022) ("SHMA") (citing

*BNP*, 594 B.R. at 197).

The safe harbor's limitation to avoidance is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct." *In re Madoff Secs.*, 501 B.R. at 30. It is also consistent with the understanding that the Bankruptcy Code's avoidance provisions protect against depletion of a debtor's estate, while section 550 is merely a "utility provision," intended to help execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place." *See In re Picard,* 917 F.3d 85, 98 (2d Cir. 2019).

*Cohmad* confirmed that section 546(e) does not provide an independent safe harbor for section 550 recovery actions against subsequent transferees. The District Court withdrew the reference on whether section 546(e) barred recovery of a subsequent transfer pursuant to Section 550.[9] However, in its decision, the District Court specifically limited the safe harbor to avoidance claims based on the plain language of section 546(e). *See Cohmad*, 2013 WL 1609154, at *4, *9 (applying the "plain terms" of section 546(e)); at *7 (recognizing that subsequent transferees can raise initial transferees' defenses to *avoidance*); and at *10 ("[B]oth initial transferees and subsequent transferees are entitled to raise a defense based on the application of section 546(e) to the *initial* transfer from Madoff Securities.") (emphasis added). And though the District Court hypothesized, in *dicta*, that a subsequent transferee's subscription agreements with the initial transferee feeder fund, and related agreements and transactions, might under certain circumstances constitute relevant "securities contracts," and that certain subsequent transferee defendants might qualify as "financial institutions" or "financial participants," the decision is clear that the focus of the safe harbor is still on the *initial* transfers. *See id.* at *9.[10] As this Court recently reiterated,

---

[9] *See* Section 546(e) Briefing Order, *In re Madoff Securities*, 12-MC-115 (S.D.N.Y. filed May 16, 2012), ECF No. 119 (withdrawing the reference on issue of "whether application of section 546(e) to an initial or mediate Transfer bars recovery by the Trustee of any subsequent Transfer pursuant to section 550").

[10] The original point of the *Cohmad* hypothetical was to address the subsequent transfer defendants' argument that, if necessary, in lieu of the BLMIS customer agreements, their subscription agreements could act as the relevant securities agreements under section 546(e). *Cohmad*, 2013 WL 1609154, at *8. That argument became moot as both the Second

"[b]y its terms, the safe harbor is a defense to the avoidance of the *initial* transfer." *Banque Syz* at

20 *citing Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018)

(emphasis in original).

Based on *Cohmad*, and this Court's opinions in *Multi-Strategy* and *Banque Syz,* Section

546(e) applies only to avoidance and not recovery, and, most notably, a subsequent transferee

cannot assert the protections of section 546(e) where the Trustee has adequately pled the initial

transferee's actual knowledge.  *See Multi-Strategy* at 18-21; *Banque Syz* at 13; *Cohmad*, 2013 WL

1609154, at *4, *7, *10.  In *BNP*, the Court explicitly rejected the argument being made here—

that the "*only* way the Trustee can escape the application of section 546(e) here is by pleading with

particularity and plausibility that the [subsequent transferee defendants] actually knew of the

Madoff Ponzi scheme."  *BNP*, 594 B.R. 196–97 (emphasis in original).  Rather, as explained in

*BNP*, a subsequent transferee gets only "indirect" protections from section 546(e) to the same

extent it protects the initial transferee.  *Id.* at 197.  Like *Cohmad*, *BNP* is law of the case, and

Defendant is bound by both decisions.  *See supra* at 14-15.

Delta nevertheless seeks to relitigate this point, arguing that to the extent this Court relies

on the redemption request forms as the relevant "securities contract" in accordance with *Cohmad*,

it must then look at whether "all parties to a securities contract have actual knowledge of fraud."

Mot. at 20.[11]  But as stated above, the District Court did not conclude this, nor did it state that the

actual knowledge exception should be applied any differently even if the feeder fund agreements

---

Circuit and the District Court determined that the BLMIS customer agreement was a "securities agreement" and the
initial transfers from BLMIS were "settlement payments" notwithstanding that no securities were traded and therefore
subject to section 546(e).

[11] Defendant also contends that, by alleging that "Fairfield Sentry … made withdrawals from BLMIS to fulfill the
redemption requests initial by Delta Bank," the initial transfers were "in connection with" the redemption request
forms.  Mot. at 19.  However, showing that the subsequent transfers can be traced through the "relevant pathways" to
the initial transfers—which issue is analyzed *supra* at 18-22—is entirely irrelevant to the issue of whether the initial
transfers were "in connection with" any transaction or contract between Sentry and Defendant for purposes of applying
the securities safe harbor.

were to be used for section 546(e). Indeed, such an interpretation would effectively eliminate the point of the actual knowledge exception—which is to restrict any transferee with actual knowledge from hiding behind the safe harbor. *See Cohmad*, 2013 WL 1609154, at *3. Specifically, adopting Delta's position means the safe harbor would apply even where the initial transferee feeder fund knew there were no securities transactions in need of protection.

Delta's interpretation of *Cohmad* provides a subsequent transferee with more rights than an initial transferee, which is inconsistent with congressional intent on 546(e). *See Cohmad*, 2013 WL 1609154, at *7 (holding a subsequent transferees' actual knowledge is only relevant when the initial transferee is innocent, and can itself assert a 546(e) defense to avoidability.) *See In re Madoff Secs.*, 501 B.R. at 29 ("Section 550(a) requires that the Trustee show that the transfer he seeks to recover is avoidable in each recovery action, and the subsequent transferee in possession of that transfer may raise any defenses to avoidance available to the initial transferee, as well as any defenses to recovery it may have."). As the Eighth Circuit pointed out in *SHMA* while citing *BNP*, under section 546(e), "a subsequent transferee is protected indirectly to the extent that the initial transfer is not avoidable because of the safe harbor." 2022 WL 1177748, at *3 n.5 (cleaned up; emphasis added).

*Cohmad*'s holding that subsequent transferees with actual knowledge are prohibited from using the safe harbor to protect themselves against recovery of transfers they received also does not support Delta's position. *See* Mot. at 20-21. That holding does not require a trustee to plead a subsequent transferee's actual knowledge. Rather, it merely ensures that any defendant that *does* have actual knowledge, including a subsequent transferee, is prohibited from using the safe harbor, such that the purpose of the actual knowledge exception is achieved consistently. *See Cohmad*, 2013 WL 1609154, at *1, *7 ("A defendant cannot be permitted to in effect launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the

28

protections of section 546(e).").  This holding that, like initial transferees, subsequent transferees with actual knowledge cannot benefit from the safe harbor does not justify affording subsequent transferees expanded protections, such that they can benefit from the safe harbor despite actual knowledge of the initial transferee.

## VI.    THE 550(B) GOOD FAITH DEFENSE IS AN AFFIRMATIVE DEFENSE AND INAPPROPRIATE AT THE MOTION TO DISMISS STAGE

Although Delta concedes that the Trustee does not need to plead a lack of good faith in the Complaint, Delta argues that the Court should dismiss the Complaint because its purported good faith is clear on the face of the Complaint.  *See* Mot. at 22.  This Court should reject Delta's attempt to raise the "good faith" affirmative defense on a motion to dismiss, just as this Court and the District Court recently did in *Banque Syz* and *ABN Ireland*, respectively.  *See Banque Syz*, at 22-24; *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Secs.)*, No. 20-cv-02586 (S.D.N.Y. May 2, 2022) (McMahon, J.) ("*ABN Ireland*").  Like Delta, the defendants in *Banque Syz* and *ABN Ireland* argued that their good faith defense was established on the face of the complaint.  *Banque Syz,* at 22*; ABN Ireland,* No. 20-cv-02586, at 6-7.  The Courts in those cases concluded that the affirmative defense could not be resolved at the pleading stage.  *Id.,* at 7; *Banque Syz*, at 22 ("This affirmative defense is [defendant's] burden to plead in an answer and prove with evidence; it cannot be established in a complaint.").  The same result is warranted here.

By their very nature, affirmative defenses are fact driven, require a factual analysis, and a presentation of evidence.  *United Teamster Fund v. MagnaCare Admin Servs., LLC*, 39 F.Supp. 3d 461, 475 (S.D.N.Y. 2014) ("Affirmative defenses 'often require[] consideration of facts outside of the complaint and thus [are] inappropriate to resolve on a motion to dismiss.'") (quoting *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013)).  That sort of factual analysis is not appropriate at this stage of litigation, particularly with respect to a good faith defense under section

550(b), which turns on questions of the defendant's motivation and intent.  In its rejection of the defendants' good faith argument, the court in *ABN Ireland* highlighted the fact that the good faith inquiry notice standard is "a fact-intensive inquiry to be determined on a case-by-case basis, which naturally takes into account the disparate circumstances of differently situated transferees."  *ABN Ireland*, No. 20-cv-02586, at 7 (quoting *Citibank*, 12 F.4th at 194); *Banque Syz*, at 23 (same).

As such, even if this Court were to consider Delta's fact-intensive affirmative defense, there are myriad unknown facts critical to opposing a good faith defense which the Trustee must be given the opportunity to uncover through discovery.  *See, e.g., ABN Ireland*, No. 20-cv-02586, at 7 ("The Trustee rightfully points out that such a fact-based determination 'can only be made based on the entirety of the factual record after discovery (which has not occurred here), not from isolated documents cherry-picked by Appellees and factual inferences Appellees improperly seek to have drawn in their favor.'"); *Merkin*, 440 B.R. at 257 ("[W]hether the Moving Defendants acted in good faith when they allegedly accepted hundreds of millions of dollars in transfers of BLMIS funds is a disputed issue that this Court can properly determine only upon consideration of all of the relevant evidence obtained through the discovery process."); *In re Dreier LLP*, 452 B.R. 391, 426 (Bankr. S.D.N.Y. 2011) ("Determining the Defendants' good faith is an indisputably factual inquiry to be undertaken by the Court after the close of discovery and need not be resolved at the motion to dismiss stage.").

Delta fails to cite a single case where a court has granted a motion to dismiss at the pleading stage based on a good faith defense.  As recognized in *Merkin*, the argument advanced by Delta applies only as "a limited exception to the general rule" that good faith cannot be established on a motion to dismiss. 440 B.R. at 256.  Moreover, to prevail under this limited exception on a Rule 12(b)(6) motion, Delta must meet a "more stringent standard" and show not only that "the facts supporting the defense appear on the face of the complaint" but also that "it appears beyond doubt

30

that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004); *see also In re Dreier*, 452 B.R. at 426.

Delta comes nowhere near meeting such a standard. Delta argues that a diligent inquiry by Delta would have been futile. Mot. at 23-25. But this is pure conjecture, which can be easily disputed. Delta is a sophisticated party who did its own investigations. *Banque Syz*, at 24 (finding the Court could not make a determination on defendant's good faith affirmative defense until after a fact-intensive inquiry and discovery on the issue).

Delta makes similar arguments as to knowledge of voidability and value, the other fact-driven requirements behind the section 550(b) "good faith" affirmative defense. Mot. at 22-23, 25. But this Court has explicitly held that knowledge of voidability "cannot be established in a complaint" as it is the defendant's burden to plead and prove. *Banque Syz*, at 23; *see also, e.g., Fairfield Inv. Fund*, 2021 WL 3477479, at *9 ("Whether the Defendants gave value is a question of fact to be resolved either at the summary judgment stage or at trial.").

## VII.  THE TRUSTEE'S COMPLAINT SHOULD NOT BE DISMISSED WITH PREJUDICE

As this Court recently found in *Banque Syz* and *Multi-Strategy*, the Trustee has adequately pled his claims and thus the Motion should be denied. Delta asks the Court to dismiss the Trustee's Complaint with prejudice because of the Trustee's alleged "unfettered access" to Fairfield's books and records. But the Trustee does not have all of the books and records or the testimony of FGG's former investment advisors, managers, directors, and partners and other third-parties, and discovery in the actions assigned to the Trustee by the Fairfield Liquidators against the FGG defendants continues. *See, e.g.*, Stipulated Case Mgmt. Order*, Picard v. Fairfield Inv. Fund Ltd. (In re Bernard L. Madoff)*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Dec. 6, 2021), ECF No. 353 (setting future deadlines for fact and expert discovery). Moreover, the single case cited

by Delta is easily distinguished. *See United States ex. Rel Grubea v. Rosicki, Rosicki & Assocs., P.C.*, 319 F. Supp.3d 747, 751 (S.D.N.Y. 2018) (denying leave to amend where Plaintiff had amended his claims three times in his original action, one time in his second action, and rejected the Court's suggestion to amend after the initial conference).  Therefore, even if the Court found that the Motion has merit—which it does not—dismissal with prejudice is not warranted and he should be afforded the opportunity to amend the Complaint.

## CONCLUSION

For the foregoing reasons, The Trustee respectfully requests the Court deny Delta's Motion.

Dated: June 24, 2022
      New York, New York

/s/ Nicholas J. Cremona
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Nicholas J. Cremona
Email: ncremona@bakerlaw.com
Robyn M. Feldstein
Email:  rfeldstein@bakerlaw.com
Alexa T. Bordner
Email:  abordner@bakerlaw.com
Shelley Fredericks
Email: sfredericks@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*