**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Rockefeller Center
1270 Avenue of the Americas, Suite 2210
New York, New York 10020
Telephone: (212) 332-8840
Facsimile: (212) 332-8855

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and the*
*Chapter 7 Estate of Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　Defendant. | Adv. Pro. No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>　　　　Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff,<br><br>　　　　Plaintiff,<br><br>v.<br><br>BARFIELD NOMINEES LIMITED, and NORTHERN TRUST CORPORATION<br><br>　　　　Defendants. | Adv. Pro. No. 12-01669 (CGM) |

1

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS BARFIELD NOMINEES LIMITED, AND
<u>NORTHERN TRUST CORPORATION'S MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................ 3

    I.     The BLMIS Ponzi Scheme and Its Feeder Funds .................................................. 3

    II.    Sentry ..................................................................................................................... 3

    III.   The Barfield Defendants ........................................................................................ 4

ARGUMENT ..................................................................................................................... 6

    I.     THE COURT HAS PERSONAL JURISDICTION OVER EACH OF THE
         BARFIELD DEFENDANTS. ................................................................................ 7

         A.    Barfield Purposefully Availed Itself of the Laws and Privileges of
               Conducting Business in the United States by Investing in New
               York-Based BLMIS Via Sentry. .................................................................... 8

         B.    Barfield's Intentional and Repeated Use of New York and Chicago
               Bank Accounts to Invest with Sentry Also Establishes Jurisdiction. ......... 9

         C.    Barfield Also Purposefully Invested in Kingate and Filed Customer
               Claims Regarding Such Investment. ........................................................... 11

         D.    The Trustee's Claims to Recover the Fraudulent Transfers
               Received by the Barfield Defendants Arise Out of and Relate to
               the Barfield Defendants' Forum Conduct. .................................................. 12

         E.    The Court's Exercise of Personal Jurisdiction Is Reasonable. ................. 13

         F.    The Barfield Defendants' Remaining Arguments Against
               Jurisdiction Are Not Persuasive. ................................................................ 14

         G.    The Complaint Sufficiently Alleges Contacts to Support the
               Exercise of Personal Jurisdiction Over Both Defendants. ....................... 16

         H.    In the Alternative, the Trustee Is Entitled to Jurisdictional
               Discovery. ................................................................................................... 18

    II.    THE TRUSTEE SUFFICIENTLY PLEADS THE AVOIDABILITY OF
         THE INITIAL TRANSFERS. ............................................................................ 19

i

A.      All Adversary Proceedings Are Part of the Main Case for Purposes of Rule 10(c). ........................................................................................... 19

B.      Incorporation Is Permitted Where It Achieves the Purpose of Rule 10(c). ...................................................................................................... 20

C.      The Trustee's Allegations Are Sufficient Under Rule 8 .......................... 21

III.     SECTION 546(E) DOES NOT BAR RECOVERY FROM THE BARFIELD DEFENDANTS............................................................................. 22

A.      Sentry Had Actual Knowledge of Madoff's Fraud. ................................. 23

B.      The Barfield Defendants Are Bound by the Actual Knowledge Exception Established in *Cohmad*. .......................................................... 23

C.      The Barfield Defendants Are Also Precluded From Arguing That Section 546(e) Applies Independently to Recovery Actions. ................... 24

IV.    THE TRUSTEE'S COMPLAINT SUFFICIENTLY PLEADS RECOVERY OF STOLEN BLMIS CUSTOMER PROPERTY UNDER SECTION 550(A). .......................................................................................... 28

A.      The Trustee's Complaint Meets the Pleading Requirements ................... 29

B.      The Barfield Defendants Misstate the Trustee's Pleading Burden. .......... 29

C.      The Barfield Defendants' Tracing Arguments Are Inappropriate for a Motion to Dismiss. ........................................................................ 30

D.      The Barfield Defendants' Claims of Double Recovery Are Premature. ................................................................................................. 33

CONCLUSION ....................................................................................................... 34

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*In re 45 John Lofts, LLC*,
599 B.R. 730 (Bankr. S.D.N.Y. 2019) ........................................................................... 29

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
529 F. Supp. 3d 111 (S.D.N.Y. 2021) ........................................................................... 17

*Allianz Glob. Invs. GmbH v. Bank of Am. Corp.*,
473 F. Supp. 3d 361 (S.D.N.Y. 2020), 2020 WL 4927575 (S.D.N.Y. Aug. 21, 2020) ...................... 18

*In re Allou Distribs., Inc.*,
379 B.R. 5 (Bankr. E.D.N.Y. 2007) .................................................................... 28, 29, 30

*In re Am. Home Mortg., Holdings, Inc.*,
501 B.R. 44 (Bankr. D. Del. 2013) ................................................................................. 31

*Ayyash v. Bank Al-Madina*,
No. 04 Civ. 9201(GEL), 2006 WL 587342 (S.D.N.Y. Mar. 9, 2006) ................................. 19

*Berdeaux v. OneCoin Ltd.*,
561 F. Supp. 3d 379 (S.D.N.Y. 2021) ...................................................................... 17, 18

*BLI, Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
480 B.R. 501 (Bankr. S.D.N.Y. 2012) ...................................................................... 8, 16

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ....................................................................................................... 13

*Charles Ellerin Revocable Tr.*,
Adv. Pro. No. 0801789, 2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012) ............... 29, 31

*Chase Manhattan Bank v. Banque Generale Du Com.*,
No. 96 CIV 5184 (KMW), 1997 WL 266968 (S.D.N.Y. May 20, 1997) ........................... 13

*Chloe v. Queen Bee of Beverly Hills, LLC*,
616 F.3d 158 (2d Cir. 2010) ............................................................................................ 7

*In re CNB Int'l, Inc.*,
393 B.R. 306 (Bankr. W.D.N.Y. 2008) ........................................................................... 33

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
822 F.2d 1242 (2d Cir. 1987) ......................................................................................... 17

*Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*,
722 F.3d 81 (2d Cir. 2013) .............................................................................................. 7

iii

*In re Dreier LLP,*
    Adv. Pro. No. 10-03493 (SMB), 2014 WL 47774 (Bankr. S.D.N.Y. Jan. 3, 2014) ............................ 33

*Eldesouky v. Aziz,*
    No. 11–CV–6986 (JLC), 2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014) ............................ 10

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.,*
    651 F.3d 329 (2d Cir. 2011) ........................................................................... 26

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.,*
    397 F. Supp. 3d 323 (S.D.N.Y. 2019) ............................................. 10

*In re Fairfield Sentry Ltd.,*
    627 B.R. 546 (Bankr. S.D.N.Y. 2021) ........................................................... 7, 12

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.,*
    141 S. Ct. 1017 (2021) ........................................................................ 12, 15

*Fowler v. Caliber Home Loans, Inc.,*
    277 F. Supp. 3d 1324 (S.D. Fla. 2016) ..................................................... 31

*Ge Dandong v. Pinnacle Performance Ltd.,*
    966 F. Supp. 2d 374 (S.D.N.Y. 2013) ........................................................ 10

*Grand River Enters. Six Nations, Ltd. v. Pryor,*
    425 F.3d 158 (2d Cir. 2005) ............................................................................ 8

*Greenberg v. Hudson Bay Master Fund Ltd.,*
    No. 14CV5226 DLC, 2015 WL 2212215 (S.D.N.Y. May 12, 2015) ..................... 16

*Hau Yin To v. HSBC Holdings PLC,*
    No. 15-CV-3590, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) ...................... 15, 16

*HSH Nordbank New York Branch v. St.,*
    No. 11 Civ. 9405 (DLC), 2012 WL 2921875 (S.D.N.Y. July 18, 2012) .............. 10

*HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.,*
    No. C.A. 20-967, 2021 WL 918556 (S.D.N.Y. Mar. 10, 2021) ....................... 17

*Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement,*
    326 U.S. 310 (1945) ..................................................................................... 14

*Kelley as Tr. of PCI Liquidating Tr. v. Safe Harbor Managed Acct. 101, Ltd.,*
    31 F.4th 1058 (8th Cir. 2022) ..................................................................... 24

*Kelley as Tr. of PCI Liquidating Tr. v. Westford Special Situations Master Fund, L.P.,*
    No. 19-CV-1073, 2020 WL 3077151 (D. Minn. June 10, 2020) ................... 30, 32

*Kiobel v. Royal Dutch Petroleum Co.,*
    No. 02 Civ. 7618 (KMW)(HBP), 2009 WL 3817590 (S.D.N.Y. Nov. 16, 2009) .......... 18, 19

iv

*Licci v. Lebanese Can. Bank, SAL,*
   20 N.Y.3d 327 (N.Y. 2012) ............................................................................................ 10

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.,*
   84 F.3d 560 (2d Cir. 1996) ............................................................................................ 13

*In re Morrison,*
   375 B.R. 179 (Bankr. W.D. Pa. 2007) ........................................................................... 20

*New Hampshire v. Maine,*
   532 U.S. 742 (2001) ........................................................................................................ 23

*In re O'Malley,*
   601 B.R. 629 (Bankr. N.D. Ill. 2019) ............................................................................ 33

*Official Comm. of Unsecured Creditors of Arcapita Bank B.S.C. v. Bahrain Islamic Bank,*
   549 B.R. 56 (S.D.N.Y. 2016) ................................................................................... 10, 12

*Picard v. BAM L.P.,*
   624 B.R. 55 (Bankr. S.D.N.Y. 2020) ............................................................................. 23

*Picard v. Banque Syz & Co. SA.,*
   Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ............. *passim*

*Picard v. Barfield Nominees Ltd. and Northern Tr. Corp.,*
   Adv. Pro. No.  12-1669, ECF No. 7 (Bankr. S.D.N.Y. Jun. 29, 2012) ................................................ 24

*Picard v. BNP Paribas S.A. (In re BLMIS),*
   594 B.R. 167 (Bankr. S.D.N.Y. 2018) ..................................................................... *passim*

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC),*
   12 F.4th 171 (2d Cir. 2021) ....................................................................................... 3, 21

*Picard v. Cohen,*
   Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296 (Bankr. S.D.N.Y. Apr. 25, 2016) ..................... 24

*Picard v. Est. of Seymour Epstein (In re BLMIS),*
   No. 21-CV-02334 (CM), 2022 WL 493734 (S.D.N.Y. Feb. 17, 2022) ................................................ 26

*Picard v. Ida Fishman Rev. Tr. (In re BLMIS),*
   773 F.3d 411 (2d Cir. 2014) ..................................................................................... 24, 26

*Picard v. Legacy Cap. Ltd.,*
   603 B.R. 682 (Bankr. S.D.N.Y. 2019) ............................................................................ 23

*Picard v. Magnify, Inc. (In re BLMIS),*
   583 B.R. 829 (Bankr. S.D.N.Y. 2018) ............................................................................ 23

*Picard v. Merkin (In re BLMIS),*
   515 B.R. 117 (Bankr. S.D.N.Y. 2014) ..................................................................... *passim*

*Picard v. Merkin* (*In re BLMIS*),
    581 B.R. 370 (Bankr. S.D.N.Y. 2017) ............................................................. 29, 31, 32, 33

*Picard v. Multi-Strategy Fund Ltd.*,
    Adv. Pro. No. 12-01205, 2022 WL 2137073 (Bankr. S.D.N.Y. June 13, 2022) ......................... *passim*

*Picard v. Shapiro* (*In re BLMIS*),
    542 B.R. 100 (Bankr. S.D.N.Y. 2015) ....................................................................... 30

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
    917 F.3d 85 (2d Cir. 2019) ..................................................................................... 25

*In re Refco Inc. Sec. Litig.*,
    No. 07-MD-1902 (JSR), 2013 WL 12191844 (S.D.N.Y. Mar. 25, 2013) ............................... 23

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000) ...................................................................................... 2

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
    624 F.3d 123 (2d Cir. 2010) ..................................................................................... 7

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ............... *passim*

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    Adv. Pro. No. 20-01316, 2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021) ...................... 17

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    501 B.R. 26 (S.D.N.Y. 2013) ............................................................................. 20, 25

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    531 B.R. 439 (Bankr. S.D.N.Y. 2015) ...................................................................... 23

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    596 B.R. 451 (S.D.N.Y. 2019) ........................................................................... 20, 23

*SPV Osus Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018) ............................................................................. 14, 15

*In re SSA Bonds Antitrust Litig.*,
    420 F. Supp. 3d 219 (S.D.N.Y. 2019) ...................................................................... 18

*In re SunEdison, Inc.*,
    620 B.R. 505 (Bankr. S.D.N.Y. 2020) ..................................................................... 26

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) ............................................................................................ 23

*Tera Grp., Inc. v. Citigroup, Inc.*,
    No. C.A. 17-4302, 2018 WL 4732426 (S.D.N.Y. Sept. 28, 2018) ..................................... 18

*United States v. Quintieri,*
  306 F.3d 1217 (2d Cir 2002) ................................................................................................ 20

*Waldman v. Palestine Liberation Org.,*
  835 F.3d 317 (2d. Cir. 2016) .............................................................................................. 13

*Wilmington Tr. Co. v. Hellas Telecomm., S. à.r.l.,*
  No. C.A. 12-8686, 2016 WL 7339112 (S.D.N.Y. Aug. 4, 2016) ...................................... 18

STATUTES

11 U.S.C. § 546(e) ................................................................................................................. *passim*

11 U.S.C. § 550 ...................................................................................................................... *passim*

Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-*lll* ........................................................ 1

RULES

Fed. R. Civ. P. 8 ................................................................................................................... 2, 21

Fed. R. Civ. P. 10 ............................................................................................................ 2, 19, 20

Fed. R. Civ. P. 12 ............................................................................................................ 1, 22, 31

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection

Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff, respectfully

submits this memorandum of law in opposition to the motion (the "Motion") to dismiss the

Trustee's Complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil

Procedure ("FRCP" or the "Rules") filed by Defendants Barfield Nominees Limited ("Barfield")

and Northern Trust Corporation ("Northern Trust") (collectively, the "Barfield Defendants").

## PRELIMINARY STATEMENT

The Trustee sufficiently pleaded claims under 11 U.S.C. § 550 and NYDCL § 278 to

recover approximately $16,178,329 of stolen BLMIS customer property transferred from Fairfield

Sentry Limited ("Sentry") to Barfield.[1]   Contrary to the Barfield Defendants' assertions, the

Trustee alleged sufficient facts under controlling case law to establish personal jurisdiction over

the Barfield Defendants.   And the Court recently disposed of the Barfield Defendants' three

remaining arguments in its *Multi-Strategy* and *Banque Syz* opinions.   As explained more fully

below, the Court should deny the Motion.

First, the Court has personal jurisdiction over both Barfield Defendants.   The Barfield

Defendants do not even contest the Court's exercise of personal jurisdiction over Northern Trust

and acknowledge that Northern Trust is a United States-based corporation.   No further analysis is

needed.   Contrary to the Barfield Defendants' arguments, Barfield purposefully invested in Sentry,

knowing and intending that BLMIS in New York would be the effective investment manager,

broker dealer, and custodian of Sentry's (and Barfield's) investments.   Barfield knew Sentry

---

[1] The amount sought in the Trustee's Complaint was approximately $70,083,978.  By way of stipulation entered on March 8, 2022 [ECF No. 85], the Trustee agreed not to pursue certain transfers received from Kingate Global Fund Ltd. in the amount of $53,905,649.

funneled substantially all of its funds into BLMIS. Barfield knew BLMIS was essential to Sentry's investments. Investing in BLMIS was Barfield's ultimate investment goal. Under recent precedent, these facts, even without the additional contacts discussed herein, collectively establish personal jurisdiction.

Second, the Trustee's incorporation by reference of the amended complaint filed in the *Picard v. Fairfield Inv. Fund Ltd.* adversary proceeding (the "Fairfield Amended Complaint")[2] complies with both Rule 10(c) and Rule 8.[3] As the Court recently held, by incorporating the entirety of the Fairfield Amended Complaint, the Trustee pleaded the avoidability of the initial transfers from BLMIS to Sentry. Because the adversary proceedings within this SIPA liquidation proceeding constitute law of the case, the Court should find that the Trustee adequately alleged Sentry's actual knowledge of fraud.

Third, controlling precedent holds that the Section 546(e) safe harbor does not apply to subsequent transfers. Section 546(e) does not bar recovery because it is Sentry's knowledge, not the Barfield Defendants' knowledge, that determines whether the initial transfers from BLMIS to Sentry are avoidable. The concepts of avoidance and recovery are separate and distinct. Section 546(e) may provide a safe harbor to the avoidance of certain *initial* transfers, but not the recovery of transfers from subsequent transferees under Section 550. The Barfield Defendants conflate these two fundamental principles.

Fourth, the Trustee plausibly alleged the relevant pathways through which stolen customer property moved from BLMIS to Sentry and subsequently to Barfield, satisfying Section 550(a).

---

[2] Adv. Pro. No. 09-01239 (BRL) (Bankr. S.D.N.Y. July 20, 2010), ECF No. 23.

[3] After the Trustee filed his Complaint against the Barfield Defendants, the Trustee filed a second amended complaint (the "Second Amended Complaint") against the Fairfield Greenwich Group ("FGG"). *See* Second Amended Complaint, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286. The Court may take judicial notice of the Trustee's Second Amended Complaint. *See Rothman v. Gregor*, 220 F.3d 81, 91–92 (2d Cir. 2000) (taking judicial notice of a later filed complaint in a related proceeding).

The Trustee also alleged the necessary vital statistics for each subsequent transfer at issue. At this stage, nothing more is required. By providing this information in the Complaint, the Trustee provided the Barfield Defendants with the "who, when, and how much" of each transfer. The Trustee is not required to plead a dollar-for-dollar accounting. Accepting the Barfield Defendants' arguments would require the Court to resolve expert and fact issues prematurely.

Accordingly, the Trustee respectfully requests that the Court deny the Motion.

## STATEMENT OF FACTS

### I.    The BLMIS Ponzi Scheme and Its Feeder Funds

Bernard L. Madoff ("Madoff") founded and operated BLMIS from New York until its collapse in 2008. *See* Compl. ¶¶ 26–34. BLMIS had three principal business units, one of which was an investment advisory business that purported to employ strategies to maximize returns and minimize risk to its investors. *Id*. ¶¶ 26–27. In reality, BLMIS operated a Ponzi scheme through its fake investment advisory business. *Id*. ¶¶ 17–31. BLMIS never purchased any securities for its investors and sent falsified monthly statements showing fictitious transactions and gains. *See Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 177 (Bankr. S.D.N.Y. 2018) ("*BNP*"). After his arrest for securities fraud, investment advisor fraud, and mail and wire fraud, Madoff admitted through criminal plea allocutions that (1) he operated a Ponzi scheme through the investment advisory business and (2) he never made the investments he promised his clients, using their money instead to pay withdrawals and make other avoidable transfers to other BLMIS account holders. Compl. ¶¶ 27–29. By the time of its collapse, BLMIS's liabilities were many billions of dollars greater than its assets. *Id.* ¶ 36.

### II.    Sentry

Sentry was a Madoff "feeder fund"—a large investment fund created for the express purpose of funneling investors' funds into BLMIS. *See Picard v. Citibank, N.A. (In re Bernard L.*

3

*Madoff Inv. Sec. LLC*), 12 F.4th 171, 179 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S.Ct. 1209 (2022) ("*Citibank*").  Sentry was a U.S. dollar-denominated fund that invested 95% of its assets with BLMIS.  Compl. ¶ 2.  FGG, a *de facto* partnership with its principal place of business in New York, managed and controlled Sentry.  *See id.* ¶ 7; *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*").  FGG conducted key operations of Sentry from its New York office.  For example, a New York-based FGG partner approved or rejected subscriptions in Sentry.   FGG's Finance Group, which was responsible for processing subscriptions and redemptions, performing due diligence, communicating with investors, and providing investor support, was also located in New York.  Sentry's express purpose, to pool funds and funnel them to BLMIS in New York for investment in the U.S. securities markets, is clear from Sentry's offering materials and subscription agreements.  *See, e.g.*, Compl. ¶ 2; *see also* Declaration of Matthew B. Lunn ("Lunn Decl.") (filed contemporaneously herewith), Exs. 1, 2, 4, 6, 7, 10, 15 and 17.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Sentry and certain related defendants to avoid and recover approximately $3 billion in fraudulent transfers of stolen customer property.  Compl. ¶ 38.  In 2011, the Trustee settled with Sentry and the Court entered a $3.054 billion judgment against Sentry.  *Id.* ¶ 43.  The Trustee then commenced adversary proceedings against the Barfield Defendants, and others, to recover the stolen customer property.

## III.    **The Barfield Defendants**

Barfield invested in New York-based BLMIS through Sentry and received transfers of stolen BLMIS customer property (redemptions) from Sentry beginning in 2005, if not earlier.  *See id.* ¶¶ 44–45; *id.*, Ex. C.  The Barfield Defendants knew Sentry was a Madoff feeder fund.  *See* Compl. ¶ 6.  When Barfield received the subsequent transfers, Northern Trust was a global

4

provider of investment management and financial services to corporations, institutions, and high net worth individuals and Barfield was a Guernsey subsidiary of Northern Trust. *Id.* ¶ 3.

Barfield executed several subscription agreements, each of which acknowledged that Barfield received and read Sentry's private placement memorandum, which in turn provided that: (1) Sentry invested at least 95% of its assets with BLMIS; (2) BLMIS performed all investment management duties for these assets; (3) BLMIS was registered with the U.S. Securities and Exchange Commission; (4) BLMIS was the executing broker for Sentry's investments; (5) BLMIS, in New York, made the decisions regarding which U.S. securities to purportedly purchase, and when to make such purchases; (6) BLMIS was the custodian of Sentry's investments with BLMIS; and (7) BLMIS was "essential to the continued operation of Fairfield Sentry." *See* Lunn Decl., Exs. 1, 2, 4, 6, 7, 10, 15 and 17.

Each of the subscription agreements Barfield executed with Sentry provided, in relevant part, that to invest in Sentry, Barfield was to wire funds to Sentry's HSBC bank in New York. Lunn Decl., Exs. 2 at ¶ 3, 4 at ¶ 3, 15 at ¶ 3, and 17 at ¶ 3. The subscription agreements also required Barfield to identify the bank at which Sentry should wire redemption payments to Barfield. Barfield expressly chose its account at Northern Trust in Chicago to receive those redemption payments. Lunn Decl., Exs. 2 at ¶ 30(g), 4 at ¶ 31(g), 15 at ¶ 30(g), and 17 at ¶ 31(g). Not only did Barfield agree to wire funds to Sentry's New York bank accounts, but, in these subscription agreements, Barfield also agreed to a New York choice of law provision and a New York courts forum selection clause. Lunn Decl., Exs. 2 at ¶ 19, 4 at ¶ 21, 15 at ¶ 19, and 17 at ¶ 21.

The Trustee seeks to recover six transfers made as part of Madoff's Ponzi scheme, totaling $16,178,329 in stolen customer property made from Sentry to Barfield. *See* Compl. ¶ 44; *id.*, Ex.

5

C.  The following transfers occurred from Sentry to Barfield: (1) $4,912,440 on November 17, 2005; (2) $2,772,024 on June 15, 2007; (3) $415,917 on February 15, 2008; (4) $3,000,000 on July 15, 2008; (5) $2,000,000 on August 18, 2008; and (6) $3,077,948 on October 15, 2008.  *Id.* Each of these transfers constitutes stolen BLMIS customer property.

## ARGUMENT

The Court addressed many of the issues raised by the Barfield Defendants in its *Multi-Strategy* and *Banque Syz* opinions, holding that: (1) when a defendant knowingly and intentionally invests in BLMIS through Sentry, that defendant purposefully availed itself of the benefits and protections of New York laws and it is reasonable for such defendants to be subject to jurisdiction in the BLMIS SIPA liquidation proceeding; (2) Section 546(e) does not bar recovery of the transfers from BLMIS to Sentry from subsequent transferees of Sentry under Section 550(a); (3) the Trustee's incorporation of the Fairfield Amended Complaint adequately alleged the avoidability of the initial transfers from BLMIS to Sentry; (4) the Trustee is not required to submit a dollar-for-dollar accounting of the transfers from Sentry to BLMIS; and (5) the Trustee sufficiently pleaded a claim under Section 550(a) by alleging that Sentry did not possess assets other than customer property and by providing the necessary vital statistics of the transfers.  *Picard v. Multi-Strategy Fund Ltd.*, Adv. Pro. No. 12-01205, 2022 WL 2137073 (Bankr. S.D.N.Y. June 13, 2022) ("*Multi-Strategy*"); *Picard v. Banque Syz & Co. SA.*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque Syz*").  These holdings are law of the case within this SIPA liquidation proceeding and dispose of most of the Barfield Defendants' arguments.

6

I.     **THE COURT HAS PERSONAL JURISDICTION OVER EACH OF THE
       BARFIELD DEFENDANTS.**

The Trustee need only show a *prima facie* case that personal jurisdiction exists, which

"may be established solely by allegations." *Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d

81, 84, 86 (2d Cir. 2013). The Trustee, however, is not limited solely to the allegations in the

complaint. He may also establish a *prima facie* case of jurisdiction through affidavits and

supporting materials that contain averments of facts outside the pleadings. *See S. New England

Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010). These pleadings and affidavits are

to be construed in the light most favorable to the Trustee, resolving all doubts in his favor. *Chloe

v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

The Court articulated the appropriate jurisdictional standard in the recent *Multi-Strategy*

and *Banque Syz* opinions, describing the minimum contacts related to the claims at issue to

establish this Court's personal jurisdiction over a nonresident defendant. *Multi-Strategy*, 2022 WL

2137073, at *2–5; *see also Banque Syz*, 2022 WL 2135019, at *2–4. The jurisdictional standard

for purposeful availment, arising out of or related to the defendant's forum conduct, and

reasonableness will not be repeated at length here.

The Court may exercise personal jurisdiction over Northern Trust because Northern Trust

is an Illinois corporation. *See Memorandum of Law in Support of Defendants' Motion to Dismiss

the Trustee's Complaint* [ECF No. 90] ("Memorandum") at 1. The Barfield Defendants do not

dispute this. With respect to Barfield, the Trustee alleged that Barfield purposefully availed itself

of the privileges of conducting activities in New York by investing with New York-based BLMIS

through Sentry, satisfying the jurisdictional standard. Indeed, minimum contacts may be found

when a "'defendant's allegedly culpable conduct involves at least in part financial transactions that

touch the forum.'" *In re Fairfield Sentry Ltd.*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021) (quoting

7

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 151 (2d Cir. 2019)).  As explained more

fully below, the Trustee's claims to recover the fraudulent transfers received by the Barfield

Defendants arise out of and relate to the totality of their forum conduct and the exercise of personal

jurisdiction is reasonable.  *See Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166

(2d Cir. 2005) (noting that courts analyze the totality of contacts rather than individual contacts in

isolation).

### A.    Barfield Purposefully Availed Itself of the Laws and Privileges of Conducting Business in the United States by Investing in New York-Based BLMIS Via Sentry.

As the Court found in *Multi-Strategy* and *Banque Syz*, a party "purposefully avail[s] itself

of the benefits and protections of New York laws by knowing, intending and contemplating that

the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in

New York to be invested in the New York securities market."  *Multi-Strategy*, 2022 WL 2137073,

at *3 (quoting *BLI*, *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 480 B.R. 501, 517

(Bankr. S.D.N.Y. 2012) ("*BLI*")); *Banque Syz*, 2022 WL 2135019, at *3 (same).  In so finding, the

Court quoted *BLI*, "[Defendant] intentionally tossed a seed from abroad to take root and grow as

a new tree in the Madoff money orchard in the United States and reap the benefits therefrom."

*Multi-Strategy*, 2022 WL 2137073, at *4 (citing *BLI*, 480 B.R. at 506); *Banque Syz*, 2022 WL

2135019, at *4 (same).

Over a period of at least three (3) years, Barfield knowingly and intentionally invested with

New York-based BLMIS via its investments in Sentry, executing at least six (6), and likely more,

subscription agreements with Sentry.  Lunn Decl., Exs. 2, 4, 7, 10, 15, and 17.  In each subscription

agreement it executed, Barfield acknowledged receipt and review of Sentry's private placement

memorandum ("PPM") in effect at the time of the subscription.  *Id.*  In turn, from Barfield's review

of the various PPMs, Barfield knew that: (1) Sentry invested at least 95% of its assets with BLMIS;

8

(2) BLMIS performed all investment management duties for these assets; (3) BLMIS was the executing broker for Sentry's investments; (4) the decisions regarding which U.S. securities to purportedly purchase, and when to make such purchases, were made by BLMIS in New York; (5) BLMIS was the custodian of Sentry's investments with BLMIS; and (6) BLMIS was "essential to the continued operation of Fairfield Sentry." *See* Lunn Decl., Exs. 1 and 6.

**B.    Barfield's Intentional and Repeated Use of New York and Chicago Bank Accounts to Invest with Sentry Also Establishes Jurisdiction.**

The Court's exercise of personal jurisdiction over Barfield is also appropriate because Barfield purposefully availed itself of the laws and privileges of conducting business in the United States when it intentionally used the New York and Chicago banking systems to subscribe to and take redemptions from Sentry. Each of Barfield's Sentry subscription agreements included specific wiring instructions designating United States-based bank accounts to which Barfield was to wire subscription funds and to which Sentry was to wire redemption payments.[4] Lunn Decl., Exs. 2, 4, 7, 10, 15, and 17. Barfield also repeatedly sent redemption instructions to Sentry, again identifying the United States bank accounts Sentry should use when sending redemption payments to Barfield. Lunn Decl., Exs. 8, 13, 19 and 22. In these instructions, Barfield designated Northern Trust Company Chicago as the financial institution to receive redemption payments. *Id*.

In practice, when Barfield wished to invest, it wired funds from its Chicago-based bank accounts to Sentry's HSBC bank account in New York. Lunn Decl., Exs. 3, 5, 11 and 16. When Barfield wished to redeem its investment, Sentry wired funds to Barfield's Northern Trust bank account in Chicago. Lunn Decl., Exs. 8, 9, 12, 14, 20 and 21. The intentional use of New York

---

[4] Barfield's "Short Form" subscription agreements do not expressly provide wiring instructions, but instead acknowledge that Barfield previously delivered a fully executed Subscription Agreement, that the Short Form Subscription Agreement is in lieu of completing a new Subscription Agreement, and reaffirms each and every representation and covenant made in the original Subscription Agreement. *See e.g.*, Lunn Decl., Exs. 7 and 10.

and Chicago bank accounts to conduct significant and repeated transfers of funds alone is sufficient to establish personal jurisdiction. *See, e.g.*, *Eldesouky v. Aziz*, No. 11–CV–6986 (JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19, 2014) (finding the defendant subject to jurisdiction under the New York long-arm statute based solely on its use of a New York account to receive payment at issue); *see also HSH Nordbank New York Branch v. St.*, No. 11 Civ. 9405 (DLC), 2012 WL 2921875, at *4–5 (S.D.N.Y. July 18, 2012) (finding jurisdiction under the New York long-arm statute based solely on the defendants' use of a New York account to receive the fraudulent conveyances at issue); *Ge Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 382–84 (S.D.N.Y. 2013) (finding jurisdiction in New York based solely on the defendant's use of New York accounts to facilitate the alleged fraud).

Barfield's argument that the bank accounts it used are correspondent accounts is unavailing.  In *Licci v. Lebanese Can. Bank, SAL*, the New York Court of Appeals held that a defendant's use of a correspondent bank account in New York supports a finding of jurisdiction "even if no other contacts between the defendant and New York can be established," provided that such use was "purposeful."  20 N.Y.3d 327, 338 (N.Y. 2012); *see also Official Comm. of Unsecured Creditors of Arcapita Bank B.S.C. v. Bahrain Islamic Bank*, 549 B.R. 56, 67–71 (S.D.N.Y. 2016) (finding jurisdiction over the defendants based on designation and use of New York correspondent accounts to receive transfers).  It does not matter that Sentry identified its HSBC USA bank account to receive subscriptions because Barfield purposefully agreed to use the HSBC account to submit subscription monies.  *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 397 F. Supp. 3d 323, 346 (S.D.N.Y. 2019) ("[T]he point is not whether [the

defendant] owns the accounts, it is that they made purposeful use of them for reasons related to the underlying dispute.").

Many of the above-described contacts alone support jurisdiction, but together, they establish that Barfield purposefully directed its activities to the United States. *See id.* at 344 ("When all [the defendant]'s Agreement-related contacts are considered together, it is clear [the defendant] purposely availed itself of the forum.") (citations omitted). Barfield knew that by investing with Sentry, it was investing with BLMIS and Madoff. By investing with Sentry and utilizing U.S. bank accounts to facilitate those investments, Barfield purposefully targeted the New York and U.S. securities markets. The analysis can stop here.

### C.    Barfield Also Purposefully Invested in Kingate and Filed Customer Claims Regarding Such Investment.

Adding to its New York contacts, Barfield also knowingly and purposely invested in BLMIS through another feeder fund, Kingate Global Fund Ltd. ("Kingate"). Compl. ¶¶ 2, 46–52. Barfield signed similar subscription agreements for its subscriptions into Kingate between 1999 and 2007. *See* Lunn Decl., Ex. 18 ¶¶ 28–33. In addition, in connection with its Kingate investments, Barfield submitted two customer claims (the "Customer Claims") in this SIPA liquidation proceeding. *See* Compl. ¶ 8; *see also Declaration of Anthony L. Paccione in Support of Defendants' Motion to Dismiss the Complaint* [ECF No. 89] ("Paccione Decl.") Exs. B, C.[5] That Barfield knew and intended its investment in Kingate would flow to BLMIS in New York is expressly acknowledged in the Customer Claims, which state that Barfield "granted Kingate Global discretionary authority to execute securities transactions with [BLMIS]." *Id.* Ex. B, at 4 n.2; *see also id.* Ex. C, at 4 n.3.

---

[5] The Trustee's denial of the Customer Claims and the dismissal of the Kingate transfers do not affect the Court's exercise of personal jurisdiction. *See Multi-Strategy*, 2022 WL 2137073, at *3 n.2 ("Despite the dismissal of this claim, allegations regarding the [d]efendant's investment in multiple BLMIS feeder funds lends support to the Trustee's allegations that the Defendant purposefully invested in BLMIS.").

Barfield's intentional investment in New York-based BLMIS via Kingate and Barfield's filing of the Customer Claims are additional contacts with New York as part of the totality of circumstances that supports jurisdiction. *See Multi-Strategy*, 2022 WL 2137073, at *3 n.2.

        **D.**        **The Trustee's Claims to Recover the Fraudulent Transfers Received by the Barfield Defendants Arise Out of and Relate to the Barfield Defendants' Forum Conduct.**

The exercise of personal jurisdiction over the Barfield Defendants is appropriate because the Trustee's claims "arise out of *or relate to* the [Barfield Defendants'] contacts with the forum." *See Multi-Strategy*, 2022 WL 2137073, at *4 (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021) (emphasis in original)); *Banque Syz*, 2022 WL 2135019, at *4 (same). The Trustee is not required to show that his claims came about because of the defendant's in-state conduct. *Id.* The Court "need only find 'an affiliation between the forum and the underlying controversy.'" *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *BNP*, 594 B.R. at 190). The Barfield Defendants' conduct involves extensive financial transactions touching the forum satisfying the "arise out of or relate to" test. *In re Fairfield Sentry Ltd.*, 627 B.R. at 566; *see also Arcapita*, 549 B.R. at 67–71 (requiring only that a claim is not completely "unmoored" from transaction).

The Trustee asserts subsequent transfer claims against the Barfield Defendants for monies received from Sentry. Compl. ¶¶ 2, 37–45, 53–57. The Trustee's allegations directly relate to Barfield's U.S.-based conduct. *Multi-Strategy*, 2022 WL 2137073, at *4 (citing *BNP*, 594 B.R. at 191 (finding that the redemption and other payments the defendants received as direct investors in a BLMIS feeder fund arose from the New York contacts such as sending redemption requests to New York, and receiving payments from a Bank of New York account in New York, and were the proximate cause of the injuries that the Trustee sought to redress)); *Banque Syz*, 2022 WL 2135019, at *4 (same). The Trustee's claims against the Barfield Defendants are, therefore, related

12

to the alleged in-forum contacts.

### E.    The Court's Exercise of Personal Jurisdiction Is Reasonable.

Because Barfield's conduct is sufficient to establish personal jurisdiction, the Court must

now determine whether the exercise of jurisdiction is reasonable. *Burger King Corp. v. Rudzewicz*,

471 U.S. 462, 477 (1985). "The reasonableness inquiry requires the court to determine whether

the assertion of personal jurisdiction over the defendant comports with 'traditional notions of fair

play and substantial justice' under the circumstances of the particular case." *Waldman v. Palestine*

*Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (citations omitted).   To determine whether

jurisdiction is reasonable, courts consider the following factors:

> (1) the burden that the exercise of jurisdiction will impose on the
> defendant; (2) the interests of the forum state in adjudicating the
> case; (3) the plaintiff's interest in obtaining convenient and effective
> relief; (4) the interstate judicial system's interest in obtaining the
> most effective resolution of the controversy; and (5) the shared
> interest of the states in furthering social policies.

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (citations omitted).

The Barfield Defendants fail to show why jurisdiction would be unreasonable.

Barfield "irrevocably" submitted to the jurisdiction of the New York Courts and to the

application of New York law every time it signed a subscription agreement. *See* Lunn Decl., Exs.

2, 4, 7, 10, 15 and 17. "[A] choice of law provision may constitute a 'significant contact' with the

forum state" and "is relevant in determining whether a defendant has purposefully availed itself of

a particular forum's laws." *Chase Manhattan Bank v. Banque Generale Du Com.*, No. 96 CIV

5184 (KMW), 1997 WL 266968, at *2 (S.D.N.Y. May 20, 1997); *see also Burger King*, 471 U.S.

at 482 ("Although such a [choice of law] provision standing alone would be insufficient to confer

jurisdiction . . . it reinforced [the defendant's] deliberate affiliation with the forum State and the

reasonable foreseeability of possible litigation there.").

Along with its intentional submission to the choice of law and forum provisions of the Sentry subscription agreements, each of Barfield's other contacts with the United States discussed herein—its knowing and intentional investment in New York-based BLMIS via Sentry and Kingate, its intentional utilization of New York- and Chicago-based bank accounts, and its filing of the Customer Claims—make it reasonably foreseeable that this Court would have jurisdiction over Barfield. No burden exists for the Barfield Defendants to litigate these claims in New York. "[I]t would be a 'rare' case where the defendant's contacts with the forum support the exercise of personal jurisdiction but it is unreasonable for the defendant to defend the action in that forum." *BNP*, 594 B.R. at 188 (citation omitted). This is not that "rare" case. Indeed, the Barfield Defendants, represented by highly competent U.S. counsel, have participated in this litigation for more than ten years. *See Multi-Strategy*, 2022 WL 2137073, at *5 (finding that the exercise of jurisdiction is reasonable for various reasons, including the defendant's representation by U.S. counsel); *Banque Syz*, 2022 WL 2135019, at *4–5 (same).

As the Court held in *Multi-Strategy*, "the forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court." 2022 WL 2137073, at *5. Taking into account all of the facts, the Court's exercise of jurisdiction is reasonable.

**F.     The Barfield Defendants' Remaining Arguments Against Jurisdiction Are Not Persuasive.**

Courts have jurisdiction over *defendants*, not *transfers*. *See, e.g.*, *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). The Barfield Defendants recognize as much, stating that courts assess the defendant's contacts with the forum, not the transfers. *See* Memorandum at 11, 14 (citing *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014)) for the proposition that "the inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses

14

on the relationship among the defendant, the forum, and the litigation."); *see also BNP*, 594 B.R. at 189 (quoting the same). And provided that a court finds that a defendant's minimum contacts with the forum support specific jurisdiction, that court may adjudicate any claims related to those contacts. *See Ford Motor*, 141 S. Ct. at 1026–28, 1032. This is exactly what happened in *BNP*. The Court did not look at each transfer to determine jurisdiction. The Court assessed each defendant, focused on the overall relationship with the initial transferees, and determined it had jurisdiction. *BNP*, 594 B.R. at 191.

The Court has already determined that the *Hill*, *HSBC Holdings*, and *Osus* cases the Barfield Defendants rely on are not relevant to the Trustee's actions against investors in BLMIS feeder funds. *See* Memorandum at 15 (citing *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016); *Hau Yin To v. HSBC Holdings PLC*, No. 15-CV-3590, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017); *SPV Osus Ltd. v. UBS AG,* 882 F.3d 333 (2d Cir. 2018); *see also BNP*, 594 B.R. at 192 ("*Hill* has no bearing on the issue of personal jurisdiction arising from the Defendants' redemptions as investors in the Tremont Funds which arose from their New York contacts with the Tremont Funds."). This case does not involve a dispute between two parties about services owed under a foreign contract, like the breach of fiduciary duty and other claims in *Osus*,[6] *Hill*, and *Hau Yin To*. Here, a SIPA Trustee in a SIPA liquidation proceeding brought this action to recover fraudulent transfers from an investor whose transfer of funds to and from U.S. bank accounts in New York and Chicago, funds intended for BLMIS in New York, evidence an intent to direct activity towards the U.S. securities markets. *See*

---

[6] Barfield's reliance on *Osus*, which found no specific jurisdiction because the plaintiff's injury was not caused by the defendants' contacts, is questionable following the Supreme Court's decision in *Ford Motor*, which held that causation is not a prerequisite for jurisdiction. *Ford Motor*, 141 S. Ct. at 1026–30. Also, *Osus*'s finding that a "handful of communications and transfers of funds" do not support specific jurisdiction, which is cited by Barfield, is not availing here given Barfield's various other jurisdictional contacts discussed above. *See* Memorandum at 14.

*BLI*, 480 B.R. at 513 ("This movement of money to and from BLMIS in the United States, as contemplated by the Agreement, was not fortuitous or incidental; instead, it was 'the ultimate objective' and the '*raison d'etrè*' of the Agreement between BLI and Fairfield Sentry."). The *Osus*, *Hill*, and *Hau Yin To* line of cases do not support dismissal.

### G.    The Complaint Sufficiently Alleges Contacts to Support the Exercise of Personal Jurisdiction Over Both Defendants.

The Trustee's Complaint sufficiently alleges contacts to support the Court's exercise of personal jurisdiction over each of the Barfield Defendants. Barfield's "group pleading" argument overlooks that personal jurisdiction over Northern Trust exists because Northern Trust is an Illinois corporation. The Barfield Defendants concede this fact. *See* Memorandum at 1. This leaves only *one* defendant's contacts to analyze—Barfield. But as detailed above, the Trustee established, independently from Northern Trust, that Barfield purposefully availed itself of the benefits and privileges of doing business in New York by knowingly and intentionally investing with New York-based BLMIS through Sentry and Kingate and by using New York and Chicago bank accounts to facilitate those investments. Barfield's contacts with the forum are sufficient, and the Trustee did not, nor does he need to, impute Northern Trust's jurisdictional contacts to establish jurisdiction over Barfield. The Barfield Defendants' group pleading argument does not defeat jurisdiction.

Barfield is a subsidiary of Northern Trust, and Barfield and Northern Trust are affiliates. Memorandum at 1. Therefore, even if the Court finds that the Trustee grouped the Barfield Defendants' together, the Trustee's Complaint still survives because the Barfield Defendants are affiliates. *See Greenberg v. Hudson Bay Master Fund Ltd.*, No. 14CV5226 DLC, 2015 WL 2212215, at *7 (S.D.N.Y. May 12, 2015) (citing to Black's Law Dictionary and finding that the term "affiliates" refers to "a corporation that is related to another corporation by shareholdings or

16

other means of control," such as "a subsidiary, parent, or sibling corporation"). "'No specific connection' between the fraudulent behavior and the particular defendants is necessary 'where . . . defendants are insiders or affiliates.'" *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 20-01316, 2021 WL 4994435, at \*10 (Bankr. S.D.N.Y. Oct. 27, 2021) (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987); *see also Fairfield Inv. Fund*, 2021 WL 3477479, at \*11 (same).

The Trustee identified this relationship in the Complaint. Compl. ¶¶ 23–25. As demonstrated by the documents attached to the declaration of the Barfield Defendants' counsel, the Trustee had a basis to believe that the Barfield Defendants may have collectively functioned as one entity. Several documents contain both Barfield's and Northern Trust's letterhead. *See, e.g.*, Paccione Decl., Exs. B and C. In *DiVittorio*, the Second Circuit "reasoned that 'where . . . much of the factual information needed to fill out plaintiff's complaint lies peculiarly within the opposing parties' knowledge, the general rule disfavoring allegations founded upon belief ought not to be rigidly enforced.'" 822 F.2d at 1248. Similarly, the precise nature of the relationship between the subsequent transfers and the Barfield Defendants "lies peculiarly" with the Barfield Defendants themselves—out of the Trustee's reach. Thus, the Trustee's allegations as to the Barfield Defendants in the Complaint are appropriate.

The overwhelming majority of cases concerning improper group pleading involved numerous unrelated defendants where it was difficult to distinguish between them. *See e.g.*, *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111 (S.D.N.Y. 2021) (dismissing a group plead complaint with over seventeen defendants); *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 391 (S.D.N.Y. 2021) (granting a motion to dismiss against eight defendants); *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, No. C.A. 20-967, 2021 WL 918556 (S.D.N.Y.

17

Mar. 10, 2021) (dismissing a complaint against nine defendants); *Allianz Glob. Invs. GmbH v. Bank of Am. Corp.*, 473 F. Supp. 3d 361 (S.D.N.Y. 2020)*, objections overruled,* 2020 WL 4927575 (S.D.N.Y. Aug. 21, 2020) (dismissing a complaint as to sixteen defendants); *In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219 (S.D.N.Y. 2019) (dismissing a complaint against seventeen defendants); *Tera Grp., Inc. v. Citigroup, Inc.*, No. C.A. 17-4302, 2018 WL 4732426 (S.D.N.Y. Sept. 28, 2018) (dismissing a complaint involving twelve separate financial institutions); *Wilmington Tr. Co. v. Hellas Telecomm., S. à.r.l.*, No. C.A. 12-8686, 2016 WL 7339112 (S.D.N.Y. Aug. 4, 2016) (dismissing a complaint as to six defendants).   There are only two affiliated defendants here.

On the occasion where courts dismiss complaints on the basis of group pleading, they generally do so without prejudice, only dismissing with prejudice where plaintiffs either heavily supplemented their pleadings or already had an opportunity to amend the complaint.  *See Aegean*, 529 F. Supp. 3d at 160, n.34 (denying leave to amend where the complaint was already amended previously); *Berdeaux*, 561 F. Supp. 3d at 419 (dismissing with prejudice where the plaintiffs already amended the complaint three times); *SSA Bonds*, 420 F. Supp. 3d at 242 (dismissing with prejudice only after the plaintiffs were afforded the opportunity to amend the complaint).  The facts in those cases are not present here.  In this case, there has been no amendment or discovery. Dismissal based on group pleading is not warranted.

### H.      In the Alternative, the Trustee Is Entitled to Jurisdictional Discovery.

If the Court finds that the Trustee has not made a *prima facie* showing of jurisdiction as to Barfield, the Trustee respectfully requests jurisdictional discovery and leave to amend the Complaint at the conclusion of that discovery.   "Such discovery may be authorized where a plaintiff has made 'a threshold showing' that there is some basis for the assertion of jurisdiction." *Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618 (KMW)(HBP), 2009 WL 3817590, at *4

(S.D.N.Y. Nov. 16, 2009). The Trustee has shown how Barfield purposefully invested with BLMIS in New York through Sentry using Sentry's New York bank account and used U.S. bank accounts to receive stolen BLMIS customer property. At a minimum, these facts establish a "threshold showing" of jurisdiction justifying discovery. *Id*. at *4, *6; *see also Ayyash v. Bank Al-Madina*, No. 04 Civ. 9201(GEL), 2006 WL 587342, at *5–6 (S.D.N.Y. Mar. 9, 2006) (granting jurisdictional discovery because allegations of wire transfers to the United States made a "sufficient start" toward establishing jurisdiction).

## II.    THE TRUSTEE SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE INITIAL TRANSFERS.

As the Court held in *Multi-Strategy* and *Banque Syz*, incorporation of the Fairfield Amended Complaint is proper. *Multi-Strategy*, 2022 WL 2137073, at *7; *Banque Syz*, 2022 WL 2135019, at *8. The Trustee sufficiently "pleaded the avoidability of the initial transfer (from BLMIS to Fairfield Sentry) by adopting by reference the entirety of the complaint filed against Fairfield Sentry in adversary proceeding 09-1239." *Multi-Strategy*, 2022 WL 2137073, at *7; *Banque Syz*, 2022 WL 2135019, at *7. Similar to *Multi-Strategy* and *Banque Syz*, the Complaint against the Barfield Defendants alleges that "the Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein." Compl. ¶ 38.

### A.    All Adversary Proceedings Are Part of the Main Case for Purposes of Rule 10(c).

The District Court has already found sufficient the Trustee's incorporation by reference of his initial transferee complaints, including the Fairfield Amended Complaint, in the Trustee's subsequent transfer actions:

> [The] Trustee's complaint against [the subsequent transfer defendant] incorporates by reference the complaints against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. . . . Thus, the avoidability of the transfers from

19

> Madoff Securities to Kingate and Fairfield is sufficiently pleaded
> for purposes of section 550(a).

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 501 B.R. 26, 36 (S.D.N.Y. 2013) ("*In re*

*Madoff Sec.*"). Since all adversary proceedings filed under the umbrella of a single bankruptcy

case are considered to be one action for purposes of Rule 10(c), this decision allowing for

incorporation by reference is law of the case. No intervening change of controlling law exists to

stray from this precedent. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 596 B.R.

451, 463 (S.D.N.Y. 2019), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 976 F.3d 184 (2d

Cir. 2020), *cert. denied sub nom. Gettinger v. Picard*, 141 S. Ct. 2603 (2021) ("*Picard v. Lowrey*")

(holding that the law of the case doctrine foreclosed relitigation of an issue where the district court

"considered and rejected the very arguments that defendants now make"); *see also United States*

*v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir 2002) (citations omitted) (holding that when a court has

ruled on an issue, that decision should generally be adhered to by that court in subsequent stages

in the same case unless "cogent" and "compelling" reasons, such as an intervening change in

controlling law, the availability of new evidence, or the need to correct a clear error or prevent

manifest injustice militate otherwise); *Multi-Strategy*, 2022 WL 2137073, at *7; *Banque Syz*, 2022

WL 2135019, at *7.

Because this adversary proceeding and the action filed against Sentry fall under the same

SIPA BLMIS liquidation proceeding umbrella, the Trustee may incorporate allegations from the

Fairfield Amended Complaint here.

### B.    Incorporation Is Permitted Where It Achieves the Purpose of Rule 10(c).

The Trustee's incorporation meets the purpose of Rule 10(c) to promote short, concise

pleadings, free of unwarranted repetition. *In re Morrison*, 375 B.R. 179, 193 (Bankr. W.D. Pa.

2007). The incorporation is addressed specifically to the initial transferee and is in the section of

the Trustee's Complaint labeled "Initial Transfers From BLMIS to Fairfield Sentry" following allegations relating to the Trustee's avoidance claims in the Fairfield Amended Complaint. *See* Compl. ¶¶ 38–43. The Trustee references only the Fairfield Amended Complaint. Reference to the Fairfield Amended Complaint provides notice of the avoidability of initial transfers in a manner that avoids repetition and over-complication.

### C.    The Trustee's Allegations Are Sufficient Under Rule 8.

Incorporation of the Fairfield Amended Complaint also satisfies Rule 8(a)(2). By incorporating the Fairfield Amended Complaint, the Trustee made a *prima facie* showing that the initial transfers are avoidable under Section 548(a) so that the Trustee can recover from the Barfield Defendants pursuant to Section 550(a). *See Citibank*, 12 F.4th at 196–97 (holding that "if a trustee establishes a *prima facie* case under the fraudulent transfer provisions, then he or she is entitled to recovery unless the transferee can establish an *affirmative defense*") (emphasis in original).

The Trustee makes specific allegations regarding the Barfield Defendants' liability under Section 550(a) throughout, and only incorporates the Fairfield Amended Complaint as part of one paragraph in pleading the avoidability of the initial transfers. The Barfield Defendants' burden is minimal. And the fact that they already analyzed both the Fairfield Amended Complaint and the Fairfield Second Amended Complaint, *see* Memorandum at 18–24, 30, belies the Barfield Defendants' arguments that they have insufficient notice of the Trustee's allegations. Like *Multi-Strategy* and *Banque Syz*, the Trustee "adequately pleaded, with particularity, the avoidability of the initial transfer due to Fairfield Sentry's knowledge of BLMIS's fraud." *Multi-Strategy*, 2022 WL 2137073, at *7; *Banque Syz*, 2022 WL 2135019, at *8.

21

### III.    SECTION 546(E) DOES NOT BAR RECOVERY FROM THE BARFIELD DEFENDANTS.

The safe harbor is not available to the Barfield Defendants as a defense to the Trustee's subsequent transfer claims. *Multi-Strategy*, 2022 WL 2137073, at *8; *Banque Syz*, 2022 WL 2135019, at *9. Section 546(e) provides a safe harbor as to the avoidance of certain initial transfers not falling within Section 548(a)(1)(A). *See* 11 U.S.C. § 546(e). In *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (often referred to as *Cohmad*), the District Court held that an initial transferee's actual knowledge of Madoff's fraud precluded application of the Section 546(e) safe harbor, thereby allowing the Trustee to avoid transfers made by BLMIS that are otherwise avoidable. 2013 WL 1609154, at *1, *10 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"). In the Complaint, the Trustee sufficiently pleaded Sentry's—the relevant transferee for purposes of a Section 546(e) analysis—actual knowledge of the Madoff fraud by incorporating the Fairfield Amended Complaint. *See Multi-Strategy*, 2022 WL 2137073, at *9 ("This Court determined that the Fairfield Complaint is replete with allegations demonstrating that Fairfield Sentry had actual knowledge that BLMIS was not trading securities."); *Banque Syz*, 2022 WL 2135019, at *9 (same). Indeed, spanning nearly two pages, the Court identified the allegations in the Fairfield Amended Complaint that sufficiently "defeat the safe harbor defense on a Rule 12(b)(6) motion." *Multi-Strategy*, 2022 WL 2137073, at *8 (citing *Fairfield Inv. Fund*, 2021 WL 3477479, at *4); *Banque Syz*, 2022 WL 2135019, at *9 (citing *Fairfield Inv. Fund*, 2021 WL 3477479, at *4). Section 546(e) does not provide a basis to dismiss the Complaint. As discussed below, the Barfield Defendants' Section 546(e) argument (1) is based on tortured misreadings of Section 546(e) and *Cohmad*, and (2) has already been rejected by the Court in other adversary proceedings.

### A.    Sentry Had Actual Knowledge of Madoff's Fraud.

The Section 546(e) safe harbor applies to the *avoidance* of certain *initial* transfers.  It does not apply to the *recovery* of such transfers, or their value, from a subsequent transferee.  The Court previously found that the Trustee sufficiently pleaded that the initial transferee, Sentry, had actual knowledge of Madoff's fraud and that such initial transfers are avoidable.  *Fairfield Inv. Fund*, 2021 WL 3477479, at *4.

No sufficient reason exists to deviate from the established law of this SIPA liquidation proceeding.[7]  Because the Trustee adequately pleaded Sentry's actual knowledge of fraud, Section 546(e) does not bar the avoidance of initial transfers to Sentry.[8]

### B.    The Barfield Defendants Are Bound by the Actual Knowledge Exception Established in *Cohmad*.

The Barfield Defendants are bound by the actual knowledge exception in *Cohmad*.  *See, e.g.*, *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 466 (Bankr. S.D.N.Y. 2015); *Picard v. Lowrey*, 596 B.R. at 463 (S.D.N.Y. 2019).  The Barfield Defendants cannot relitigate whether actual knowledge bars application of Section 546(e).  *Cohmad* was issued in connection with consolidated proceedings before the District Court as to the application of Section 546(e).  The District Court then remanded the relevant cases back to the Court, and the Court has since applied the actual knowledge "exception" on several occasions.[9]  The Barfield Defendants

---

[7] *See Picard v. BAM L.P.*, 624 B.R. 55, 61 (Bankr. S.D.N.Y. 2020) ("The prior decisions within this SIPA proceeding constitute law of the case."); *Picard v. Legacy Cap. Ltd.*, 603 B.R. 682, 700 (Bankr. S.D.N.Y. 2019) (holding that the law of the case doctrine applies across adversary proceedings within the same bankruptcy case), *aff'd*, 943 F.3d 125 (2d Cir. 2019).

[8] Though not necessary to the Court's analysis, the Barfield Defendants' argument that the Trustee is in privity with the Fairfield liquidators and therefore bound by any rulings in the Fairfield liquidation is incorrect.  *See* Memorandum at 28 n.13.  The Barfield Defendants cite no relevant authority for this argument because none exists.  For example, *New Hampshire v. Maine*, 532 U.S. 742 (2001) does not even involve non-party preclusion.  And if *Taylor v. Sturgell*, 553 U.S. 880 (2008) "stands for anything, it is for the need to narrow and regularize the use of preclusion against nonparties."  *In re Refco Inc. Sec. Litig.*, No. 07-MD-1902 (JSR), 2013 WL 12191844, at *11 (S.D.N.Y. Mar. 25, 2013).

[9] *See, e.g.*, *Fairfield Inv. Fund*, 2021 WL 3477479, at *4 (applying the actual knowledge exception); *Picard v.*

participated in those District Court proceedings and are bound by the *Cohmad* decision.[10]   The

Second Circuit's decision in *Ida Fishman*, upon which the Barfield Defendants rely heavily, also

does not warrant reconsideration of *Cohmad*'s actual knowledge exception.  *See Picard v. Ida*

*Fishman Rev. Tr. (In re BLMIS)*, 773 F.3d 411 (2d Cir. 2014) ("*Ida Fishman*").  As the Court

recognized, *Ida Fishman* did not address the actual knowledge exception.  *See Picard v. Cohen*,

Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296, at \*10 n.16 (Bankr. S.D.N.Y. Apr. 25, 2016).

### C.    The Barfield Defendants Are Also Precluded From Arguing That Section 546(e) Applies Independently to Recovery Actions.

The Trustee is not required to allege the Barfield Defendants' actual knowledge to invoke

the actual knowledge exception to Section 546(e).

Section 546(e) applies to the avoidance of *initial* transfers, not the recovery from

subsequent transferees under Section 550 as the Court ruled in *Multi-Strategy* and *Banque Syz*.

*See Multi-Strategy*, 2022 WL 2137073, at \*8 ("By its terms, the safe harbor is a defense to the

avoidance of the **initial** transfer.") (emphasis in original); *Banque Syz*, 2022 WL 2022 WL

2135019, at \*8 (same); *see also* 11 U.S.C. § 546(e) ("Notwithstanding sections 544, 545, 547,

548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer* . . . except under section

548(a)(1)(A) of this title.") (emphasis added).

The Eighth Circuit made this point clear in a recent decision involving a trustee's attempt

to recover a subsequent transfer from a feeder fund in the Petters Ponzi scheme.  *See Kelley as Tr.*

*of PCI Liquidating Tr. v. Safe Harbor Managed Acct. 101, Ltd.*, 31 F.4th 1058, 1064 n.5 (8th Cir.

2022).  As expressed in *Kelley*, "[t]hough [the trustee] is seeking to claw back the subsequent

---

*Magnify, Inc. (In re BLMIS)*, 583 B.R. 829, 841 (Bankr. S.D.N.Y. 2018) (same).

[10] *See* Motion to Withdraw the Reference, *Picard v. Barfield Nominees Ltd. and Northern Tr. Corp.*, Adv. Pro. No. 12-1669 (Bankr. S.D.N.Y. Jun. 29, 2012), ECF No. 7 (raising Section 546(e) as a ground for withdrawal).

transfers made by [the feeder fund] to [the subsequent transferee] through this adversary proceeding, the focus of the § 546(e) analysis is the initial transfers made by [the initial transferor/debtor] to [the initial transferee/feeder fund]." *Id.*  In other words, the transfers to consider here are the transfers from BLMIS to Sentry.  "[A] subsequent transferee is protected *indirectly* to the extent that the initial transfer is not avoidable because of the safe harbor." *Id.* (emphasis added) (quoting *BNP*, 594 B.R. at 197).

This safe harbor limitation is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct." *In re Madoff Sec.*, 501 B.R. at 30 (quoting *In re AVI, Inc.*, 389 B.R. 721, 733 (9th Cir. BAP 2008)).  The Bankruptcy Code's avoidance provisions protect against depletion of a debtor's estate, while Section 550 is merely a "utility provision," intended to help execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place." *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 98 (2d Cir. 2019) (quoting Edward R. Morrison, *Extraterritorial Avoidance Actions: Lessons from Madoff*, 9 Brook. J. Corp. Fin. & Com. L. 268, 273 (2014)).  The Barfield Defendants simply repackage the argument previously rejected by the Court that the Section 546(e) safe harbor should independently apply to recovery actions under Section 550.  *BNP*, 594 B.R. at 197.  The Court should reject the Barfield Defendants' attempt to muddle the law by conflating avoidance and recovery under Section 550.

*Cohmad* does not require the Court to look solely to the *subsequent transferee's* actual knowledge to determine whether the initial transfer is avoidable.  *Cohmad* held that Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees.  In *Cohmad*, the Court specifically limited the safe harbor to avoidance claims based on the plain language of Section 546(e).  *See Cohmad*, 2013 WL 1609154, at *4, *9 (applying the

25

"plain terms" of Section 546(e)), at *7 (recognizing that subsequent transferees can raise initial

transferees' defenses to *avoidance*), and at *10 ("[B]oth initial transferees and subsequent

transferees are entitled to raise a defense based on the application of Section 546(e) to the *initial*

*transfer* from Madoff Securities.") (emphasis added).  And though the *Cohmad* court hypothesized,

in *dicta*, that a subsequent transferee's subscription agreements with the initial transferee feeder

fund might qualify as "financial institutions" or "financial participants," the decision is clear that

the focus of the safe harbor is still on the initial transfers.  *See id.* at *9 ("[T]he question . . . is

whether the Trustee has alleged that the *initial transfer* was made in connection with (*i.e.*, related

to) a covered securities contract . . . .") (emphasis added).[11]

Consistent with *Cohmad*, the Court held in *BNP* that Section 546(e) is applicable only to

avoidance, not recovery, and most notably that a subsequent transferee cannot assert the

protections of Section 546(e) where the Trustee has adequately pleaded the initial transferee's

actual knowledge.  *See BNP*, 594 B.R. at 197; *see also In re SunEdison, Inc.*, 620 B.R. 505, 514

(Bankr. S.D.N.Y. 2020) ("[T]he safe harbor defense only applies by its terms to the initial

transfer.").   In *BNP*, the Court explicitly rejected the argument being made by the Barfield

Defendants here—that the "*only* way the Trustee can escape the application of Section 546(e) here

is by pleading with particularity and plausibility that the [subsequent transferee defendants]

actually knew of the Madoff Ponzi scheme."  *BNP*, 594 B.R. at 196–97 (emphasis in original).

Like *Cohmad*, *BNP* is law of the case.  The Barfield Defendants are bound by both decisions.  *See*

*Picard v. Est. of Seymour Epstein (In re BLMIS)*, No. 21-CV-02334 (CM), 2022 WL 493734, at

*12 (S.D.N.Y. Feb. 17, 2022), *appeal withdrawn*, 2022 WL 2125334 (2d Cir. May 20, 2022)

---

[11] For this same reason, *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 339 (2d Cir. 2011), which the District Court cited in *Cohmad* solely to support its reading of what constitutes a "securities contract," does not change this outcome.   The focus is still on the initial transfers, which for purposes of Section 546(e) are the transfers from BLMIS to its feeder funds.  *Ida Fishman*, 773 F.3d at 422–23.

(finding "in a SIPA liquidation like this one," where different adversary proceedings arise within the same liquidation, that law of the case applies when "prior decisions in an ongoing case either expressly resolve[] an issue or necessarily resolve[] it by implication").

The Barfield Defendants nevertheless seek to relitigate this point, arguing that, to the extent the Court relies on the feeder fund agreements as the relevant "securities agreements" in accordance with *Cohmad*, it must then look only to the actual knowledge of the subsequent transferee. *See* Memorandum at 31–32. Such an interpretation would eliminate the point of the actual knowledge exception—to restrict any transferee with actual knowledge from hiding behind the safe harbor. *See Cohmad*, 2013 WL 1609154, at *3 (explaining that defendants who knew BLMIS was a Ponzi scheme "must have known that the transfers they received directly or indirectly from Madoff Securities were not 'settlement payments'"). Adopting the Barfield Defendants' position would mean that the safe harbor would apply even where the initial transferee feeder fund *knew* there were no securities transactions in need of protection. This would allow an initial transferee who had knowledge of the fraud to place fraudulently transferred monies with a subsequent transferee and out of the reach of a trustee.

The Barfield Defendants misconstrue *Cohmad*'s holding that a subsequent transferee with actual knowledge cannot benefit from the safe harbor. *See* Memorandum at 33. The *Cohmad* case does not mean that to recover from a subsequent transferee, the Trustee must plead the Barfield Defendants' actual knowledge. To the contrary, it ensures that a subsequent transferee with actual knowledge cannot step into the shoes of an innocent initial transferee to assert the initial transferee's defense to avoidance under Section 546(e). *See Cohmad*, 2013 WL 1609154, at *1, *7 ("A defendant cannot be permitted to in effect launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of Section 546(e).").

27

Evident from the *Multi-Strategy* and *Banque Syz* opinions, the Barfield Defendants' reading of *Cohmad* is wrong. *See Multi-Strategy*, 2022 WL 2137073, at \*8–10; *Banque Syz*, 2022 WL 2135019, at \*9–10.

Finally, the Court's *Fairfield Inv. Fund* decision does not demand a different result. The "focus" of the Section 546(e) argument in *Fairfield Inv. Fund* was on the initial transfer and whether the Trustee had sufficiently pleaded the *initial transferee's* actual knowledge. The Court did not analyze the issue of whether a subsequent transferee's actual knowledge is separately required to defeat the application of Section 546(e). In fact, during a recent oral argument on this issue, the Court confirmed that it dismissed the claims against Corina Noel Piedrahita (the fifth subsequent transferee defendant) in the *Fairfield Inv. Fund* case on good faith grounds, not because Ms. Piedrahita lacked actual knowledge of the Madoff fraud. *See* May 18, 2022 Hr'g Tr. at 75:18–76:7 ("I think you're misreading it. That's not correct. I dismissed on good faith."). The Court confirmed this ruling in *Multi-Strategy* and *Banque Syz*, holding that "[t]he Court never considered whether the safe harbor could be raised by a subsequent transferee in that case" because Section 546(e) "is inapplicable to subsequent transferees." *Multi-Strategy*, 2022 WL 2137073, at \*10; *Banque Syz*, 2022 WL 2135019, at \*10.

For all of these reasons, the Court should reject the Barfield Defendants' argument that Section 546(e) bars recovery of the fraudulent transfers they received from Sentry.

## IV.    THE TRUSTEE'S COMPLAINT SUFFICIENTLY PLEADS RECOVERY OF STOLEN BLMIS CUSTOMER PROPERTY UNDER SECTION 550(A).

The Complaint plausibly alleges that Barfield received subsequent transfers of stolen BLMIS customer property. To plead a subsequent transfer claim, the Trustee must allege facts that support an inference "that the funds at issue originated with the debtor." *Picard v. Merkin* (*In re BLMIS*), 515 B.R. 117, 149–50 (Bankr. S.D.N.Y. 2014) ("*Merkin I*") (quoting *In re Allou*

*Distribs., Inc.*, 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007)). As the Court held in *Multi-Strategy* and

*Banque Syz*, the Trustee is not required to perform a tracing analysis or to present a "'dollar-for-

dollar accounting' of 'the exact funds' at issue." *Multi-Strategy*, 2022 WL 2137073, at *6 (citing

*BNP*, 594 B.R. at 195); *Banque Syz*, 2022 WL 2135019, at *7 (same). Rather, "the Trustee need

only allege sufficient facts to show the relevant pathways through which the funds were transferred

from BLMIS to [the subsequent transferee]." *Charles Ellerin Revocable Tr.*, Adv. Pro. No.

0801789, 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012); *see also In re 45 John Lofts,*

*LLC*, 599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019). Specifically, the Trustee must allege the

"'necessary vital statistics—the who, when, and how much' of the purported transfers to establish

an entity as a subsequent transferee of the funds." *Merkin I*, 515 B.R. at 150 (quoting *Allou*, 379

B.R. at 32).

## A.    The Trustee's Complaint Meets the Pleading Requirements.

The Complaint provides the necessary vital statistics for each of the subsequent transfers,

alleging that: (1) Barfield received six transfers, totaling $16,178,329 from Sentry, and (2) that

Sentry invested substantially all of its funds with BLMIS. *See* Compl. ¶¶ 53–62; Compl., Exs. C

and F.; *see also Multi-Strategy*, 2022 WL 2137073, at *6. Similar to *Multi-Strategy*, these exhibits

provide the Barfield Defendants with the who, when, and how much of each transfer. *Id.*; *see also*

*Banque Syz*, 2022 WL 2135019, at *7 (same). By incorporating the Fairfield Amended Complaint,

the Trustee plausibly alleged that Sentry possessed only assets that were customer property. *Id.*

## B.    The Barfield Defendants Misstate the Trustee's Pleading Burden.

The Trustee is not required to tie each subsequent transfer Barfield received to a specific

initial transfer from BLMIS. In *Merkin I*, the Court refused to dismiss subsequent transfer claims

even though the complaint "d[id] not connect each of the subsequent transfers with an initial,

voidable transfer emanating from BLMIS." 515 B.R. at 150; *see also 45 John Lofts*, 599 B.R. at

29

747 (finding no "requirement to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss"). The Trustee is not required to detail what portion of each subsequent transfer comprises stolen customer property. *See Merkin I*, 515 B.R. at 152–53 (refusing to dismiss a complaint where "at least some of the subsequent transfers . . . may be recoverable"); *see also Allou*, 379 B.R. at 30 (finding "if dollar-for-dollar accounting is not required at the proof stage, then surely it is not required at the pleading stage either"). Any argument to the contrary is wrong and disregards the law of this SIPA liquidation proceeding.

*Shapiro* did not change the Trustee's pleading burden. *See Picard v. Shapiro* (*In re BLMIS*), 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) ("*Shapiro*"). In *Shapiro*, the Trustee alleged that certain trusts and members of the Shapiro family received approximately $54 million in fraudulent transfers from BLMIS, and "upon information and belief," these defendants subsequently transferred this same amount to other defendants. *See Shapiro*, 542 B.R. at 119. Unlike the Complaint against the Barfield Defendants, the complaint in *Shapiro did not detail any* of the necessary vital statistics of the subsequent transfers. *Id.* There were no allegations regarding the subsequent transferors, the subsequent transferees, or the dates or amounts of the subsequent transfers. *Id.* Here, the Trustee sufficiently pleaded the investment relationship between Barfield and Sentry and the vital statistics of each transfer.

## C. The Barfield Defendants' Tracing Arguments Are Inappropriate for a Motion to Dismiss.

The Barfield Defendants' other fact-based tracing arguments fare no better. First, the Trustee is not required to trace the flow of stolen customer property at the pleading stage. "The law does not place such a difficult burden on trustees. The commingling of legitimate funds with funds transferred from the debtor does not defeat tracing." *Kelley as Tr. of PCI Liquidating Tr. v. Westford Special Situations Master Fund, L.P.*, No. 19-CV-1073, 2020 WL 3077151, at *4 (D.

Minn. June 10, 2020) (citing *Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *2)).

Second, whether Sentry paid other investors with stolen customer property it received from BLMIS prior to making any transfers to Barfield is a fact-intensive inquiry inappropriate for resolution at this stage of the proceedings. The Paccione Declaration is nothing more than a premature "attempt to interject improper expert testimony into a Rule 12(b)(6) context." *Fowler v. Caliber Home Loans, Inc.*, 277 F. Supp. 3d 1324, 1331 (S.D. Fla. 2016), *aff'd sub nom. Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314 (11th Cir. 2018) (declining to consider expert testimony in a motion to dismiss); *see also In re Am. Home Mortg., Holdings, Inc.*, 501 B.R. 44, 64 (Bankr. D. Del. 2013) (holding that matters subject to factual and expert evidence are "inappropriate to decide on a motion to dismiss").

The Barfield Defendants are in effect applying some undefined tracing methodology to contest the subsequent transfers in this proceeding. But it is for the Court to decide—after fact and expert discovery—the appropriate tracing methodology to apply to this case under the circumstances. *See Picard v. Merkin* (*In re BLMIS*), 581 B.R. 370, 386 (Bankr. S.D.N.Y. 2017) ("*Merkin*") ("[T]he Court's selection of an appropriate methodology is committed to the Court's discretion."); *Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *3 n.7 ("Courts have broad discretion to determine which monies of commingled funds derive from fraudulent sources."[12] The argument that every subsequent transfer made prior to the transfers that Barfield received was sourced solely by stolen customer property is also fact intensive and requires fact and expert discovery. Neither the Complaint nor its exhibits establish this, and at this stage of the proceedings, the Trustee is not required to plead, much less establish, that an alleged subsequent

---

[12] The different tracing methodologies include: (1) Last In, First Out (LIFO), (2) First In, First Out (FIFO), (3) Lowest Intermediate Balance Rule (LIBR), (4) Restated Tracing Rules (Restated LIBR), and (5) Proportionality, and these "methodologies reflect legal rules or fictions designed to assist a Court in dealing with an improper transfer from a commingled fund." *Merkin*, 581 B.R. at 385.

transfer is comprised solely of stolen customer property. *See Westford Special Situations*, 2020 WL 3077151, at *4 (holding that where debtors' funds are commingled with "cash from new subscribing investors," a trustee is not required to establish that the transfers "originated solely" with the debtor or even to account for "the exact funds at issue" on summary judgment).

The Trustee is a stranger to the transactions between Sentry and the Barfield Defendants and is entitled to discovery regarding the transactions. "[I]n a case such as this one, where the Trustee's lack of personal knowledge is compounded with complicated issues and transactions [that] extend over lengthy periods of time, the trustee's handicap increases, and even greater latitude should be afforded." *Cohmad*, 454 B.R. at 329 (cleaned up). This is one reason why the Court in *Merkin I* denied defendants' motion to dismiss, finding "[t]he subsequent transfer claim must ultimately be proved through the books and records of the defendants." 515 B.R. at 151.[13] And even after fact and expert discovery, there may be fact disputes that require a trial. For example, in *Merkin*, the Court denied the defendants' motion in limine to exclude the Trustee's accounting expert, finding expert testimony at trial "may assist the Court in making its own determination as to the proper methodology." 581 B.R. at 386; *see also Westford Special Situations*, 2020 WL 3077151, at *5 (denying summary judgment because of a fact dispute after the trustee introduced an expert report and associated documents from which a jury may infer the defendants received subsequent transfers of property from the Petters Ponzi scheme).

Third, the amount of time that elapsed between Sentry's receipt of certain initial transfers from BLMIS and Sentry's subsequent transfers to Barfield is a variation of the Barfield

---

[13] The Trustee does not have all of Sentry's books and records, and discovery in the Trustee's actions against the Fairfield management defendants is continuing. *See, e.g.*, Stipulated Case Mgmt. Order, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Dec. 6, 2021), ECF No. 353 (setting a November 22, 2022 deadline for fact discovery and August 22, 2023 deadline for expert discovery). There is also no doubt that the Barfield Defendants have records they can provide on these same transactions.

Defendants' aforementioned tracing argument that Sentry transferred BLMIS's stolen customer property to other investors before getting to Barfield.  For the reasons stated above, tracing arguments are inappropriate on a motion to dismiss.  And even if it may prove difficult for the Trustee to trace these transfers, this is not grounds for dismissal at the pleading stage.  *See Merkin I*, 515 B.R. at 152 (finding it "premature to cut off the Trustee's opportunity to satisfy his [tracing] burden on a motion to dismiss" merely because the tracing may prove difficult); *In re Dreier LLP*, Adv. Pro. No. 10-03493 (SMB), 2014 WL 47774, at *15 (Bankr. S.D.N.Y. Jan. 3, 2014) ("[T]he [subsequent transferees'] speculation that tracing is 'not likely' to reveal a subsequent transfer . . . hardly justifies granting [their cross-motion for summary judgment].").

### D.    The Barfield Defendants' Claims of Double Recovery Are Premature.

There is no dispute that the Trustee is limited to "a single satisfaction" under Section 550(a).  11 U.S.C. § 550(d).  Indeed, any concern the Barfield Defendants have about the Trustee recovering more than he is entitled "is unfounded."  *Multi-Strategy*, 2022 WL 2137073, at *11.  The Trustee "can recover from any combination of [transferees]" up to the amount avoided.  *In re O'Malley*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021).  And under Section 550(a), "a trustee may recover [an avoided] transfer from a subsequent transferee of those funds, without the necessity for allocation among all the subsequent transferees."  *In re CNB Int'l, Inc.,* 393 B.R. 306, 333 (Bankr. W.D.N.Y. 2008), *aff'd on other grounds*, 440 B.R. 31 (W.D.N.Y. 2010).  Thus, the Trustee may simultaneously seek recovery from the Barfield Defendants in this action and from defendants in other actions, even in an aggregate amount that exceeds associated initial transfers, until the Trustee recovers the full amount of the approximately $3 billion in fraudulent transfers received by Sentry.  *See Fairfield Inv. Fund*, 2021 WL 3477479,

at *12 (holding that the defendant's arguments regarding "double recovery" and the Trustee's

purported limitations under Section 550(d) are "to be determined at a later stage in the litigation").

## <u>CONCLUSION</u>

The Trustee respectfully requests that the Court deny the Motion.

Dated:  June 27, 2022
New York, New York

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**

By: /s/ *Matthew B. Lunn*
Rockefeller Center
1270 Avenue of the Americas, Suite 2210
New York, New York 10020
Telephone: (212) 332-8840
Facsimile: (212) 332-8855
Matthew B. Lunn
Email: mlunn@ycst.com
Michael S. Neiburg (admitted *pro hac vice*)
Email:  mneiburg@ycst.com
Justin P. Duda
Email: jduda@ycst.com
Roxanne M. Eastes
Email: reastes@ycst.com

*Attorneys for Plaintiff Irving H. Picard,
Trustee for the Substantively Consolidated
SIPA Liquidation of Bernard L. Madoff
Investment Securities LLC and the Estate of
Bernard L. Madoff*