# EXHIBIT A

**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1000
Fax: (212) 262-1215
Howard L. Simon (hsimon@windelsmarx.com)
Antonio J. Casas (acasas@windelsmarx.com)
Brian W. Kreutter (bkreutter@windelsmarx.com)

*Special Counsel for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and Bernard L. Madoff*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff-Applicant, | SIPA Liquidation (Substantively Consolidated) |
| v. | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant, | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | Adv. Pro. No. 12-01676 (BRL) |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| v. | |
| CREDIT SUISSE AG, as successor-in-interest to Clariden Leu AG and Bank Leu AG; | |
| Defendant. | |

Plaintiff Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of New York-based Bernard L. Madoff Investment Securities LLC ("BLMIS") and the estate of Bernard L. Madoff under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa *et seq.*, alleges the following for this First Amended Complaint against Credit Suisse AG ("Credit Suisse"), the named defendant as successor-in-interest to Clariden Leu AG (*f/k/a* Clariden Bank AG) ("Clariden Leu") and Bank Leu AG ("Bank Leu"):

## I.   NATURE OF THE ACTION

1.      This adversary proceeding is part of the Trustee's continuing efforts to recover BLMIS Customer Property[1] that was stolen as part of the massive Ponzi scheme perpetrated by Bernard L. Madoff ("Madoff") and others.

2.      The Trustee seeks to recover from Credit Suisse subsequent transfers of Customer Property from BLMIS feeder funds Fairfield Sentry Limited ("Fairfield Sentry"), Fairfield Sigma Limited ("Fairfield Sigma") and Fairfield Lambda Limited ("Fairfield Lambda") (together, the "Fairfield Funds") and Kingate Global Fund, Ltd. ("Kingate") totaling $49,135,288.  Charts setting forth the subsequent transfers are attached here as Exhibits E, G, I and M.

3.      The subsequent transfers followed avoidable initial transfers from BLMIS to the Fairfield Funds or Kingate.  The Trustee has filed separate actions to avoid the initial transfers, namely *Picard v. Fairfield Sentry Ltd., et al.*, Adv. Pro. No. 09-01239 (BRL) as to the Fairfield Funds and *Picard v. Kingate Global Fund, Ltd., et al.*, Adv. Pro. No. 09-01161 (BRL), Case Nos. 11-CV-07256 (JSR) and 11-CV-07134 (JSR) as to Kingate.  The Fairfield and Kingate complaints are attached here as Exhibits A and J, respectively.

---

[1] SIPA § 78*lll*(4) defines "Customer Property" as cash and securities at any time received, acquired, or held by, or for the account of, a debtor from, or for, the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted.

## II.    THE TRANSFEREES AND CREDIT SUISSE

4.      Initial transferee Fairfield Sentry Limited ("Fairfield Sentry") maintained customer accounts at BLMIS and was one of BLMIS' largest feeder funds.  Fairfield Sentry invested all or substantially all of its assets with BLMIS and was managed by New York-based parent Fairfield Greenwich Group ("FGG").

5.      Fairfield Sigma and Fairfield Lambda, affiliates of Fairfield Sentry, acted as foreign currency feeder funds, facilitating Euro (Fairfield Sigma) or Swiss Franc (Fairfield Lambda) investments with BLMIS.  Each fund invested 100% of its assets with Fairfield Sentry and was a subsequent transferee of BLMIS transfers by virtue of this relationship.  Fairfield Sigma and Fairfield Lambda were both managed by FGG.

6.      Initial transferee Kingate maintained a customer account at BLMIS and was a large BLMIS feeder fund.  Kingate invested all or substantially all of its assets with BLMIS.

7.      The Fairfield Funds and Kingate are currently in liquidation.

8.      Clariden Leu, formerly a wholly-owned subsidiary of Credit Suisse, entered into one or more subscription agreements with Fairfield Sentry, Fairfield Sigma and Fairfield Lambda and received subsequent transfers from the feeder funds.  Clariden Leu was an *aktiengesellschaft* organized under the laws of Switzerland, and its registered address was Bahnhofstrasse 32, CH-8001, Zurich, Switzerland.

9.      Bank Leu, another formerly wholly-owned subsidiary of Credit Suisse, entered into one or more subscription agreements with Fairfield Sentry, Fairfield Sigma and Kingate and received subsequent transfers from the feeder funds.  Bank Leu was an *aktiengesellschaft* organized under the laws of Switzerland until it merged with Clariden Bank AG and others in January 2007.  Clariden Leu, the renamed entity after the merger, then became Bank Leu's successor- in-interest.

10.     Credit Suisse became Clariden Leu's and Bank Leu's successor-in-interest when it legally merged with Clariden Leu on April 2, 2012 (the "Merger"), acquiring all of Clariden Leu's assets and liabilities and assuming all of Clariden Leu's rights and obligations. Credit Suisse is an *aktiengesellschaft* organized under the laws of Switzerland, and its registered address is Paradeplatz 8, 8070 Zurich, Switzerland.

## III.    <u>JURISDICTION AND VENUE</u>

11.     The Trustee brings this adversary proceeding pursuant to his statutory authority and power to avoid and recover transfers under SIPA §§ 78fff(b), 78fff-1(a) and 78fff-2(c)(3); 11 U.S.C. §§ 101 *et. seq.* (the "Bankruptcy Code"), including Sections 105(a), 323(b), 544, 548, 550(a), 551 and 704(a)(1); New York Debtor & Creditor Law ("NYDCL") §§ 273-279 and N.Y. C.P.L.R. 203(g) and 213(8).

12.     The main, underlying substantively-consolidated SIPA case, Adv. Pro. No. 08-01789 (BRL) (the "SIPA Case"), is pending in this Court. The SIPA Case was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC, et al.*, Case No. 08-CV-10791 (LLS) (the "District Court Proceeding").

13.     This Court has jurisdiction over the instant adversary proceeding under 28 U.S.C. § 1334(b) and 15 U.S.C. § 78eee(b)(2)(A), (b)(4).

14.     This Court has personal jurisdiction over Credit Suisse pursuant to N.Y. C.P.L.R. 301 and 302 and Bankruptcy Rule 7004. Where a federal statute provides for nationwide service of process, as does Rule 7004, a federal court has personal jurisdiction over any defendant with minimum contacts with the United States.

15.     Credit Suisse has the required minimum contacts with the United States under Bankruptcy Rule 7004 either through its own contacts or business dealings, or contacts or business

dealings that can be attributed or imputed to it as a successor-in-interest to Clariden Leu and Bank Leu.

16.     Credit Suisse, through the attributable or imputable acts of Clariden Leu or Bank Leu, purposely availed itself of the laws and protections of the United States and the State of New York by, among other things, knowingly directing funds to be invested with New York-based BLMIS through the Fairfield Funds or Kingate, and then receiving transfers from these funds (the subsequent transfers).

17.     Through Clariden Leu's or Bank Leu's Fairfield Fund or Kingate investments and redemptions, Credit Suisse: (i) knowingly accepted the rights, benefits and privileges of conducting business or transactions in the United States and New York; (ii) derived significant revenue from the United States and New York; and (iii) maintained minimum contacts or general business contacts with the United States and New York.

18.     Clariden Leu and Bank Leu entered into one or more subscription agreements with the Fairfield Funds agreeing not only that New York law would govern their dealings, but also that any related suit, action or proceeding would be brought in New York.  Thus, they agreed to irrevocably submit to the jurisdiction of the New York courts and to forego any claim that the New York courts are an inconvenient forum.

19.     Clariden Leu and Bank Leu certified that they were professional investors when they entered into subscription agreements with the Fairfield Funds.  The subscription agreements, as well as Fairfield Fund private placement memoranda, also confirmed that substantially all of the funds' assets would be invested with New York-based BLMIS, a United States-registered broker-dealer that used a non-traditional options trading strategy described as a "split-strike conversion."  These documents deemed BLMIS and its personnel, who were located in New York, "essential" to the Fairfield Funds and their profitability.    Fairfield Sentry instructed its subscribers to send

subscription monies to a bank account in New York.  Clariden Leu also communicated regularly with FGG account representatives located in New York City.

20.    Bank Leu entered into one or more subscription agreements with Kingate, and sent subscription monies to a New York bank account, as Kingate instructed.  The Kingate subscription agreements and associated information memoranda did not mention New York-based BLMIS or Madoff by name, but the memoranda confirmed that the fund would have an "Investment Advisor" that was based in New York, invested "primarily" in the United States and used a non-traditional "split-strike conversion" trading strategy -- a reference to BLMIS and Madoff.

21.    Credit Suisse has other strong ties to the United States and New York apart from the attributable or imputable contacts specific to the causes of action in this First Amended Complaint. Credit Suisse maintains a branch at Eleven Madison Avenue, New York, New York 10010 and, along with its subsidiaries, has thousands of employees in the United States and is regulated by several United States and New York agencies.  Credit Suisse files forms annually with the U.S. Securities and Exchange Commission (the "SEC"), issues publicly registered debt securities that trade on the New York Stock Exchange, holds warrants in the United States, is licensed as a foreign banking organization by the New York Department of Financial Services and is subject to examination by the Federal Reserve Bank.

22.    Clariden Leu has also filed forms with the SEC.

23.    This Court has personal jurisdiction over Credit Suisse based on all of these specific and general contacts with the United States and New York.  Credit Suisse should reasonably expect to be subject to jurisdiction based on these contacts.

24.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H), and (O).

25.     Pursuant to Local Bankruptcy Rule 7008-1, the Trustee consents to the entry of final orders or judgment by this Court if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

26.     Venue in this District is proper under 28 U.S.C. § 1409.

## IV.     BACKGROUND

### A.     THE MAIN CASE

27.     Madoff was arrested by federal agents on December 11, 2008 (the "Filing Date") for violation of the criminal securities laws, including for, among other things, securities fraud, investment adviser fraud and mail and wire fraud.  At about the same time, the SEC commenced the District Court Proceeding against Madoff and BLMIS.  The SEC complaint alleges that Madoff and BLMIS engaged in fraud through the investment adviser activities of BLMIS.  The District Court Proceeding is still pending.

28.     The Honorable Louis L. Stanton of the District Court entered an order on December 12, 2008 appointing Lee S. Richards as receiver for the assets of BLMIS.

29.     On December 15, 2008, under SIPA § 78eee(a)(4)(A), the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC") under SIPA § 78eee(a)(4)(B).  The SIPC application alleged, among other things, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

30.     Judge Stanton granted the SIPC application and included in the order a SIPA decree (known as the "Protective Decree"), which, in pertinent part:

> a.      removed the receiver and appointed the Trustee for the liquidation of the business of BLMIS under SIPA § 78eee(b)(3);

       b.       appointed Baker & Hostetler LLP as counsel[2] to the Trustee under SIPA § 78eee(b)(3); and

       c.       removed the case to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under SIPA § 78eee(b)(4).

31.     By orders dated December 23, 2008 and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

32.     At a plea hearing on March 12, 2009 in the criminal case captioned *United States v. Madoff*, Case No. 09-CR-213 (DC) (S.D.N.Y. Mar. 12, 2009) (Docket No. 50), Madoff pled guilty to an eleven-count criminal information filed against him by the United States Attorney's Office for the Southern District of New York. Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." *Id.* at 23. He further admitted, "[A]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal." *Id.* Then District Court Judge Denny Chin sentenced Madoff on June 29, 2009 to 150 years in prison.

33.     Former BLMIS employee Frank DiPascali is awaiting sentencing after pleading guilty on August 11, 2009 to participating in and conspiring to perpetuate the Ponzi scheme. In the case, entitled *United States v. DiPascali*, Case No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009), DiPascali admitted that, among other things, the Ponzi scheme had been ongoing at BLMIS since at least the 1980s. *Id.* at 46.

34.     Former BLMIS trader David Kugel is awaiting sentencing after pleading guilty on November 21, 2011 to charges that he participated in the Ponzi scheme. See *United States v. Kugel*, Case No. 10-CR-00228 (LTS) (S.D.N.Y. Nov. 21, 2011). Kugel stated under oath that the scheme

---

[2] This Court later entered an order, on July 16, 2009, also approving the retention of Windels Marx Lane & Mittendorf, LLP as special counsel to the Trustee.

began in the early 1970s, and he admitted that he worked with two other BLMIS employees, JoAnn Crupi and Annette Bongiorno, to create false trades.

### B.    TRUSTEE'S POWERS AND STANDING

35.    The Trustee has a responsibility under SIPA to recover and pay out Customer Property to BLMIS customers, assess claims and liquidate any other assets of BLMIS for the benefit of the estate and its creditors. The Trustee is in the process of marshaling BLMIS's assets, and this liquidation is well underway. However, the estate's present assets will not be sufficient to reimburse BLMIS customers for the billions of dollars they invested with BLMIS over the years and lost. Consequently, the Trustee must use his broad authority under SIPA and the Bankruptcy Code to pursue recoveries, including those from individuals and entities that received preferences and fraudulent transfers to the detriment of defrauded customers whose money was consumed by the Ponzi scheme. Absent the instant case and other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA § 78fff-2(c)(1).

36.    Under SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code, in addition to the powers granted by SIPA under § 78fff-1(b). Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this case to the extent consistent with SIPA.

37.    Under SIPA §§ 78fff(b) and 78*lll*(7)(B), the Filing Date is deemed to be the date of the filing of the petition within the meaning of Section 548 of the Bankruptcy Code and the date of commencement of the case within the meaning of Section 544 of the Bankruptcy Code.

38.    The Trustee has standing to bring the claims in this adversary proceeding pursuant to his statutory authority and power to avoid and recover transfers under SIPA §§ 78fff(b), 78fff-1(a) and 78fff-2(c)(3); Bankruptcy Code Sections 105(a), 323(b), 544, 547, 548, 550(a), 551 and 704(a)(1); NYDCL §§ 273-279; and N.Y. C.P.L.R. 203(g) and 213(8).

## V.   THE PONZI SCHEME

39.     BLMIS was founded by Madoff in 1959 and, for most of its existence, operated from its principal place of business at 885 Third Avenue, New York, New York.  Madoff, as founder, chairman, chief executive officer and sole owner, operated BLMIS together with several of his friends and family members.  BLMIS was registered with the SEC as a securities broker-dealer under Section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78*o*(b).  By virtue of that registration, BLMIS was a member of SIPC.  BLMIS had three business units: market making, proprietary trading and the investment advisory business (the "IA Business").

40.     Outwardly, Madoff ascribed the consistent success of the IA Business to the so-called split-strike conversion strategy (the "SSC Strategy").  Under this strategy, Madoff purported to invest BLMIS customer funds in a basket of common stocks within the Standard & Poor's 100 Index ("S&P 100") -- a collection of the 100 largest publicly-traded companies.  Madoff claimed that his basket of stocks would mimic the movement of the S&P 100.  He also claimed he would carefully time purchases and sales to maximize value, and BLMIS customer funds would, intermittently, be out of the equity markets.

41.     The second part of the SSC Strategy was a hedge of Madoff's stock purchases with options contracts.  Those option contracts acted as a "collar" to limit both the potential gains and losses on the basket of stocks.  Madoff purported to use proceeds from the sale of S&P 100 call options to finance the cost of purchasing S&P 100 put options.

42.     Madoff told BLMIS customers that, when he exited the market, he would close out all equity and option positions and invest all the resulting cash in United States Treasury bills or in mutual funds holding Treasury bills.  Madoff also told customers that he would enter and exit the market between six and ten times each year.

43.     BLMIS's IA Business customers received fabricated monthly or quarterly statements showing that securities were held in, or had been traded through, their accounts.  The securities purchases and sales shown in the account statements never occurred, and the profits reported were entirely fictitious.  Madoff admitted at his plea hearing that he never made the investments he promised clients, who believed they were invested with him in the SSC Strategy.  He further admitted (as later confirmed by Frank DiPascali and David Kugel) that he never purchased any of the securities he claimed to have purchased for the IA Business's customer accounts.  In fact, there is no record of BLMIS having cleared a single purchase or sale of securities in connection with the SSC Strategy on any trading platform on which BLMIS reasonably could have traded securities.  Instead, investors' funds were principally deposited into the BLMIS account at JPMorgan Chase & Co., Account #xxxxxxxxxxxx703.

44.     Madoff assured clients and regulators prior to his arrest that he purchased and sold the put and call options on the over-the-counter ("OTC") market after hours, rather than through any listed exchange.  Based on the Trustee's investigation to date, there is no evidence that the IA Business ever entered into any OTC options trades on behalf of IA Business account holders.

45.     For all relevant periods, the IA Business was operated as a Ponzi scheme.  The money received from investors was not invested in stocks and options; rather it was used to pay withdrawals and to make other avoidable transfers.  Madoff also used his customers' investments to enrich himself and his associates and family.

46.     The falsified monthly account statements reported that the accounts of the IA Business customers had made substantial gains, but in reality, due to the siphoning and diversion of new investments to fulfill payment requests or withdrawals from other BLMIS accountholders, BLMIS did not have the funds to pay investors for those new investments.  BLMIS only survived as long as it did by using the stolen principal invested by customers to pay other customers.

47.     It was essential for BLMIS to honor requests for payments in accordance with the falsely inflated account statements, because failure to do so promptly could have resulted in a demand, investigation, the filing of a claim and disclosure of the fraud.

48.     Madoff's scheme continued until December 2008, when the requests for withdrawals overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

49.     It now appears based upon the Trustee's ongoing investigation that there were more than 8,000 customer accounts at BLMIS over the life of the scheme. BLMIS generated account statements in early December 2008 for its approximately 4,900 open customer accounts. When added together, these statements purportedly showed that BLMIS customers had approximately $65 billion invested through BLMIS. In reality, BLMIS had assets on hand worth only a fraction of that amount. Customer accounts had not accrued any real profits because virtually no investments were ever made. By the time the Ponzi scheme came to light on December 11, 2008, with Madoff's arrest, investors had already lost approximately $20 billion in principal.

50.     Thus, at all relevant times, the liabilities of BLMIS were billions of dollars greater than its assets. BLMIS was insolvent in that: (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of all transfers, BLMIS was left with insufficient capital.

## VI.    THE TRANSFERS

51.     Fairfield Sentry and Kingate each received initial transfers of Customer Property from BLMIS. Some or all of those initial transfers were subsequently transferred to, or for the benefit of, Credit Suisse, as successor-in-interest to Clariden Leu or Bank Leu, either directly or through Fairfield Sigma or Fairfield Lambda as set forth in more detail below. Credit Suisse, acting in its capacity as successor-in-interest to Clariden Leu or Bank Leu, will be referred to below as the "Defendant."

### A.   FAIRFIELD

#### *The Fairfield Action*

52.    The Trustee filed a complaint in which he sought to avoid and recover initial and subsequent transfers of Customer Property from BLMIS to Fairfield Sentry, Fairfield Sigma, Fairfield Lambda and others.  See *Picard v. Fairfield Sentry Ltd., et al.*, Adv. Pro. No. 09-01239 (BRL) (the "Fairfield Action").  The Trustee incorporates by reference the allegations in the Fairfield complaint as if fully set forth in this First Amended Complaint.  A copy of the Fairfield Amended Complaint (without exhibits) is attached here as Exhibit A.

53.    Pursuant to orders dated June 7 and June 10, 2011, the Bankruptcy Court approved a settlement among the Trustee, Fairfield Sentry, Fairfield Sigma and Fairfield Lambda (the "Settlement Agreement").  As part of the approved resolution, the Bankruptcy Court entered consent judgments for the Trustee in the amount of $3,054,000,000 against Fairfield Sentry, $752,300,000 against Fairfield Sigma and $52,900,000 against Fairfield Lambda.  The judgments represented the settled amounts of the Trustee's "Avoiding Power Claims."  See Settlement Agreement (without exhibits), attached here as Exhibit B, at p. 4, section 1.

#### *Initial Transfers from BLMIS to Fairfield Sentry*

54.    During the six years preceding the Filing Date, BLMIS made transfers to Fairfield Sentry of $2,985,136,619 (the "Fairfield Sentry Six Year Initial Transfers").  The Fairfield Sentry Six Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), and are avoidable and recoverable under Sections 544, 550 and 551 of the Bankruptcy Code; §§ 273-279 of the NYDCL; and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

55.    The Fairfield Sentry Six Year Initial Transfers include $1,614,067,088 that BLMIS transferred to Fairfield Sentry during the two years preceding the Filing Date (the "Fairfield Sentry

Two Year Initial Transfers"). The Fairfield Sentry Two Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), and are avoidable and recoverable under Sections 548, 550 and 551 of the Bankruptcy Code; §§ 273-279 of the NYDCL; and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

56.     The Fairfield Sentry Two Year Initial Transfers include $1,134,628,244 that BLMIS transferred to Fairfield Sentry during the 90 days preceding the Filing Date (the "Fairfield Sentry Preference Period Initial Transfers"). The Fairfield Sentry Preference Period Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4), and are avoidable and recoverable under Sections 547, 550 and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

57.     The Fairfield Sentry Six Year Initial Transfers, Fairfield Sentry Two Year Initial Transfers and Fairfield Sentry Preference Period Initial Transfers are collectively defined as the "Fairfield Sentry Initial Transfers." A chart setting forth the BLMIS accounts from which the Fairfield Sentry Initial Transfers were made is attached here as Exhibit C. A chart setting forth the transfers is attached here as Exhibit D.

### Subsequent Transfers from Fairfield Sentry to the Defendant

58.     A portion of the Fairfield Sentry Initial Transfers was subsequently transferred to, or for the benefit of, the Defendant. The subsequent transfers are recoverable from the Defendant pursuant to Section 550 of the Bankruptcy Code and § 278 of the NYDCL. Based on the Trustee's investigation to date, $35,838,401 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to, or for the benefit of, the Defendant (the "Fairfield Sentry Subsequent Transfers"). A chart setting forth the presently known Fairfield Sentry Subsequent Transfers is attached here as Exhibit E.

**Subsequent Transfers from Fairfield Sentry to Fairfield Sigma and then to the Defendant**

59.     A portion of the Fairfield Sentry Initial Transfers was subsequently transferred through Fairfield Sigma to, or for the benefit of, the Defendant.  The subsequent transfers are recoverable from the Defendant pursuant to Section 550 of the Bankruptcy Code and § 278 of the NYDCL.  Based on the Trustee's investigation to date, $752,273,917 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Fairfield Sigma.  A chart setting forth those transfers is attached here as Exhibit F.  Fairfield Sigma, in turn, transferred the equivalent of $10,992,932 of the money it received from Fairfield Sentry to, or for the benefit of, the Defendant (the "Fairfield Sigma Subsequent Transfers").  A chart setting forth the presently known Fairfield Sigma Subsequent Transfers is attached here as Exhibit G.

**Subsequent Transfer from Fairfield Sentry to Fairfield Lambda and then to the Defendant**

60.     A portion of the Fairfield Sentry Initial Transfers was subsequently transferred through Fairfield Lambda to, or for the benefit of, the Defendant.  The subsequent transfer is recoverable from the Defendant pursuant to Section 550 of the Bankruptcy Code and § 278 of the NYDCL.  Based on the Trustee's investigation to date, $52,935,000 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Fairfield Lambda.  A chart setting forth those transfers is attached here as Exhibit H.  Fairfield Lambda, in turn, transferred the equivalent of $68,983 it received from Fairfield Sentry to, or for the benefit of, the Defendant (the "Fairfield Lambda Subsequent Transfer").  A chart setting forth the presently known Fairfield Lambda Subsequent Transfer is attached here as Exhibit I.

61.     The Trustee's investigation is ongoing, and he reserves the right to: (i) supplement the information on the Fairfield Sentry Initial Transfers, Fairfield Sentry Subsequent Transfers,

Fairfield Sigma Subsequent Transfers and Fairfield Lambda Subsequent Transfer; and (ii) seek the recovery of any additional transfers.

B.    **KINGATE**

*The Kingate Action*

62.    The Trustee filed a complaint in which he sought to avoid and recover initial transfers of Customer Property from BLMIS to Kingate and others.  See *Picard v. Kingate Global Fund, Ltd., et al.*, Adv. Pro. No. 09-01161 (BRL) (the "Kingate Action"); see also District Court Case Nos. 11-CV-07256 (JSR) and 11-CV-07134 (JSR).  The Trustee incorporates by reference the allegations in the Kingate complaint as if fully set forth in this First Amended Complaint.  A copy of the Kingate Third Amended Complaint (without exhibits) is attached here as Exhibit J.  The Kingate Action is still pending.

*Initial Transfers from BLMIS to Kingate*

63.    Over the lifetime of Kingate's account with BLMIS, from its inception to the Filing Date, BLMIS made transfers to Kingate in the amount of $437,501,112 (the "Kingate Lifetime Initial Transfers").  The Kingate Lifetime Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4) and are avoidable and recoverable under Sections 544, 550 and 551 of the Bankruptcy Code; §§ 273-279 of the NYDCL; applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3); and N.Y. C.P.L.R. 203(g) and 213(8).

64.    The Kingate Lifetime Initial Transfers include $398,704,065 that BLMIS transferred to Kingate during the six years preceding the Filing Date (the "Kingate Six Year Initial Transfers").  The Kingate Six Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4) and are avoidable and recoverable under Sections 544, 550 and 551 of the Bankruptcy Code; §§ 273-279 of the NYDCL; and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

65. The Kingate Six Year Initial Transfers include $163,447,509 that BLMIS transferred to Kingate during the two years preceding the Filing Date (the "Kingate Two Year Initial Transfers"). The Kingate Two Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78*lll*(4) and are avoidable and recoverable under Sections 544, 548, 550 and 551 of the Bankruptcy Code; §§ 273-279 of the NYDCL; and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

66. The Kingate Two Year Initial Transfers include $101,753,145 that BLMIS transferred to Kingate during the 90 days preceding the Filing Date (the "Kingate Preference Period Initial Transfers"). The Kingate Preference Period Initial Transfers were and are Customer Property within the meaning of SIPA § 78*lll*(4) and are avoidable and recoverable under Sections 547, 550 and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

67. The Kingate Lifetime Initial Transfers, Kingate Six Year Initial Transfers, Kingate Two Year Initial Transfers and Kingate Preference Period Initial Transfers are collectively defined as the "Kingate Initial Transfers." A chart setting forth the BLMIS account from which the Kingate Initial Transfers were made is attached here as Exhibit K. A chart setting forth the transfers is attached here as Exhibit L.

### *Subsequent Transfers from Kingate to the Defendant*

68. A portion of the Kingate Initial Transfers was subsequently transferred directly or indirectly to, or for the benefit of, the Defendant. The subsequent transfers are recoverable from the Defendant pursuant to Section 550 of the Bankruptcy Code and § 278 of the NYDCL. Based on the Trustee's investigation to date, $2,234,972 of the money transferred from BLMIS to Kingate was subsequently transferred by Kingate to, or for the benefit of, the Defendant (the "Kingate

Subsequent Transfers").  A chart setting forth the presently known Kingate Subsequent Transfers is

attached here as Exhibit M.

69.     The Trustee's investigation is ongoing, and the Trustee reserves the right to:

(i) supplement the information on the Kingate Initial Transfers and Kingate Subsequent Transfers;

and (ii) seek the recovery of any additional transfers.

**COUNT ONE**
**RECOVERY OF FAIRFIELD SENTRY SUBSEQUENT TRANSFERS–**
**11 U.S.C. §§ 550 AND 551 AND NYDCL § 278**

70.     The Trustee incorporates by reference the allegations contained in the previous

paragraphs of this First Amended Complaint as if fully rewritten here.

71.     The Defendant received the Fairfield Sentry Subsequent Transfers, which totaled at

least $35,838,401 and are recoverable by the Trustee under Section 550(a) of the Bankruptcy Code

and § 278 of the NYDCL.

72.     Each of the Fairfield Sentry Subsequent Transfers was made to, or for the benefit of,

the Defendant.

73.     The Defendant is an immediate or mediate transferee of the Fairfield Sentry Initial

Transfers, which are avoidable and recoverable as set forth in the Fairfield Action.

74.     As a result of the foregoing, pursuant to Sections 550(a) and 551 of the Bankruptcy

Code, § 278 of the NYDCL and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against

the Defendant recovering the Fairfield Sentry Subsequent Transfers, or the value thereof, for the

benefit of the estate of BLMIS.

## COUNT TWO
## RECOVERY OF FAIRFIELD SIGMA SUBSEQUENT TRANSFERS–
## 11 U.S.C. §§ 550 AND 551 AND NYDCL § 278

75.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this First Amended Complaint as if fully rewritten here.

76.     The Defendant received the Fairfield Sigma Subsequent Transfers, which totaled at least $10,992,932 and are recoverable by the Trustee under Section 550(a) of the Bankruptcy Code and § 278 of the NYDCL.

77.     Each of the Fairfield Sigma Subsequent Transfers was made to, or for the benefit of, the Defendant.

78.     The Defendant is an immediate or mediate transferee of the Fairfield Sentry Initial Transfers, which are avoidable and recoverable as set forth in the Fairfield Action.

79.     As a result of the foregoing, pursuant to Sections 550(a) and 551 of the Bankruptcy Code, § 278 of the NYDCL and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against the Defendant recovering the Fairfield Sigma Subsequent Transfers, or the value thereof, for the benefit of the estate of BLMIS.

## COUNT THREE
## RECOVERY OF FAIRFIELD LAMBDA SUBSEQUENT TRANSFER–
## 11 U.S.C. §§ 550 AND 551 AND NYDCL § 278

80.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this First Amended Complaint as if fully rewritten here.

81.     The Defendant received the Fairfield Lambda Subsequent Transfer, which totaled at least $68,983 and is recoverable by the Trustee under Section 550(a) of the Bankruptcy Code and § 278 of the NYDCL.

82.     The Fairfield Lambda Subsequent Transfer was made to, or for the benefit of, the Defendant.

83.     The Defendant is an immediate or mediate transferee of the Fairfield Sentry Initial Transfers, which are avoidable and recoverable as set forth in the Fairfield Action.

84.     As a result of the foregoing, pursuant to Sections 550(a) and 551 of the Bankruptcy Code, § 278 of the NYDCL and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against the Defendant recovering the Fairfield Lambda Subsequent Transfer, or the value thereof, for the benefit of the estate of BLMIS.

## COUNT FOUR
## RECOVERY OF KINGATE SUBSEQUENT
## TRANSFERS–11 U.S.C. §§ 550 AND 551 AND NYDCL § 278

85.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this First Amended Complaint as if fully rewritten herein.

86.     The Defendant received the Kingate Subsequent Transfers, which totaled at least $2,234,972 and are recoverable by the Trustee under Section 550(a) of the Bankruptcy Code and § 278 of the NYDCL.

87.     Each of the Kingate Subsequent Transfers was made to, or for the benefit of, the Defendant.

88.     The Defendant is an immediate or mediate transferee of the Kingate Initial Transfers, which are avoidable and recoverable as set forth in the Kingate Action.

89.     As a result of the foregoing, pursuant to Sections 550(a) and 551 of the Bankruptcy Code, § 278 of the NYDCL and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against the Defendant recovering the Kingate Subsequent Transfers, or the value thereof, for the benefit of the estate of BLMIS.

**WHEREFORE**, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against the Defendant as follows:

(a)      On the First Claim for Relief, pursuant to Sections 550 and 551 of the Bankruptcy Code, § 278 of the NYDCL and SIPA § 78fff-2(c)(3), a judgment against the Defendant recovering the Fairfield Sentry Subsequent Transfers, or the value thereof, in an amount to be proven at trial, but no less than $35,838,401, for the benefit of the estate of BLMIS;

(b)      On the Second Claim for Relief, pursuant to Sections 550 and 551 of the Bankruptcy Code, § 278 of the NYDCL and SIPA § 78fff-2(c)(3), a judgment against the Defendant recovering the Fairfield Sigma Subsequent Transfers, or the value thereof, in an amount to be proven at trial, but no less than $10,992,932, for the benefit of the estate of BLMIS;

(c)      On the Third Claim for Relief, pursuant to Sections 550 and 551 of the Bankruptcy Code, § 278 of the NYDCL and SIPA § 78fff-2(c)(3), a judgment against the Defendant recovering the Fairfield Lambda Subsequent Transfer, or the value thereof, in an amount to be proven at trial, but no less than $68,983, for the benefit of the estate of BLMIS;

(d)      On the Fourth Claim for Relief, pursuant to Sections 550 and 551 of the Bankruptcy Code, § 278 of the NYDCL and SIPA § 78fff-2(c)(3), a judgment against the Defendant recovering the Kingate Subsequent Transfers, or the value thereof, in an amount to be proven at trial, but no less than $2,234,972, for the benefit of the estate of BLMIS;

(e)      Awarding the Trustee all applicable fees, interest, costs, and disbursements of this action; and

(f)      Granting the Trustee such other, further and different relief as the Court deems just,

proper and equitable.

Dated: New York, New York
      July 30, 2012

                    **WINDELS MARX LANE & MITTENDORF, LLP**

                    /s/ Howard L. Simon
                    Howard L. Simon (hsimon@windelsmarx.com)
                    Antonio J. Casas (acasas@windelsmarx.com)
                    Brian W. Kreutter (bkreutter@windelsmarx.com)
                    156 West 56th Street
                    New York, New York 10019
                    Telephone: (212) 237-1000
                    Facsimile: (212) 262-1215

                    *Special Counsel for Irving H. Picard, Trustee for the*
                    *Substantively Consolidated SIPA Liquidation of*
                    *Bernard L. Madoff Investment Securities LLC and*
                    *Bernard L. Madoff*

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
E-mail: dsheehan@bakerlaw.com
Marc E. Hirschfield
E-mail: mhirschfield@bakerlaw.com
Mark A. Kornfeld
E-mail: mkornfeld@bakerlaw.com

*Attorneys for Irving H. Picard, Esq., Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and Bernard L. Madoff*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (BRL) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | **AMENDED COMPLAINT** |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 09-01239 (BRL) |
| v. | |
| FAIRFIELD SENTRY LIMITED, | |

GREENWICH SENTRY, L.P.,
GREENWICH SENTRY PARTNERS, L.P.,
FAIRFIELD SIGMA LIMITED, FAIRFIELD
LAMBDA LIMITED, CHESTER GLOBAL
STRATEGY FUND LIMITED, CHESTER
GLOBAL STRATEGY FUND, IRONGATE
GLOBAL STRATEGY FUND LIMITED,
FAIRFIELD GREENWICH FUND
(LUXEMBOURG), FAIRFIELD
INVESTMENT FUND LIMITED,
FAIRFIELD INVESTORS (EURO)
LIMITED, FAIRFIELD INVESTORS
(SWISS FRANC) LIMITED, FAIRFIELD
INVESTORS (YEN) LIMITED, FAIRFIELD
INVESTMENT TRUST, FIF ADVANCED,
LTD., SENTRY SELECT LIMITED,
STABLE FUND, FAIRFIELD
GREENWICH LIMITED, FAIRFIELD
GREENWICH (BERMUDA), LTD.,
FAIRFIELD GREENWICH ADVISORS
LLC, FAIRFIELD GREENWICH GP, LLC,
FAIRFIELD GREENWICH PARTNERS,
LLC, FAIRFIELD HEATHCLIFF CAPITAL
LLC, FAIRFIELD INTERNATIONAL
MANAGERS, INC., FAIRFIELD
GREENWICH (UK) LIMITED,
GREENWICH BERMUDA LIMITED,
CHESTER MANAGEMENT CAYMAN
LIMITED, WALTER NOEL, JEFFREY
TUCKER, ANDRÉS PIEDRAHITA, MARK
MCKEEFRY, DANIEL LIPTON, AMIT
VIJAYVERGIYA, GORDON MCKENZIE,
RICHARD LANDSBERGER, PHILIP
TOUB, CHARLES MURPHY, ROBERT
BLUM, ANDREW SMITH, HAROLD
GREISMAN, GREGORY BOWES,
CORINA NOEL PIEDRAHITA, LOURDES
BARRENECHE, CORNELIS BOELE,
SANTIAGO REYES, JACQUELINE
HARARY

                    Defendants.

MADC1345_00000440

I.    NATURE OF THE ACTION .................................................................... 1

II.   JURISDICTION AND VENUE ............................................................... 4

III.  BACKGROUND ...................................................................................... 5

IV.   TRUSTEE'S POWERS AND STANDING ............................................ 10

V.    DEFENDANTS ....................................................................................... 12

      A.    The Feeder Funds.......................................................................... 12

      B.    FGG Affiliates ............................................................................. 16

VI.   FGG AND ITS HISTORICAL RELATIONSHIP WITH FGG ........... 79

      A.    Noel and Tucker Meet Madoff and Make Their First Investments
            With BLMIS .................................................................................. 81

      B.    Noel and Tucker Expand FGG's Offerings to U.S. Investors and
            Piedrahita Joins the Partnership ................................................... 81

      C.    FGG's Operations ......................................................................... 83

VII.  THE DEFENDANTS' ROLE IN FACILITATING THE FRAUD ..... 84

      A.    The Defendants' Investment Strategy........................................... 85

      B.    The Defendants Facilitate the Scheme Through Marketing and
            Sales .............................................................................................. 87

      C.    The Defendants Serve as a Gatekeeper for Madoff to Ensure
            Investors Would Not Find Out the Truth...................................... 87

      D.    FGG Conspires with Madoff to Hide from the SEC Madoff's True
            Involvement with the Feeder Funds.............................................. 90

      E.    The Defendants Deceive Their Investors by Telling Them They
            Were Performing Extensive and Top of the Line Due Diligence,
            But They Were Doing No Such Thing .......................................... 94

VIII. THE DEFENDANTS WERE CONSTANTLY FACED WITH
      EVIDENCE OF A FRAUD, BUT CHOSE NOT TO REVEAL THAT
      EVIDENCE.............................................................................................. 98

      A.    The Defendants Learn that BLMIS's Auditor is a Single Person in
            a Strip Mall Office ....................................................................... 99

      B.    The Defendants Regularly Received Information That Made It
            Clear Madoff Was Lying About His Alleged Trades and
            Performance ................................................................................ 105

IX.   THE DEFENDANTS WERE WILLING TO IGNORE THE RED
      FLAGS; THEIR INVESTORS AND CONSULTANT WERE NOT .............. 130

      A.    FGG Does Everything It Can to Mollify Investor Concerns as
            Opposed to Performing Independent Inquiry Into the Possibility of
            Fraud ........................................................................................... 131

i

B.    FGG's Consultant Tells the Defendants Madoff May Be a Fraud ........ 133

X.    DESPITE YEARS OF SEEING INDICIA OF FRAUD, THE
      DEFENDANTS CONTINUED TO FUNNEL BILLIONS TO MADOFF ....... 136

      A.    2006:  GS Is Expanded and GSP Is Created ......................................... 136

      B.    2007:  Leveraged Note Programs ......................................................... 136

      C.    2008:  The Emerald Funds .................................................................. 137

XI.   THE AFTERMATH ........................................................................................ 139

XII.  PEOPLE WILL TELL:  OH THIS WAS FRAUD, THERE IS NOTHING
      WE COULD HAVE DONE ............................................................................ 141

      A.    The Barron's and MAR/Hedge Articles Are Published in 2001 .......... 142

      B.    Tightening Industry Standards ............................................................. 144

      C.    It Was All Over the Street:  Madoff Was Suspected of Being a
            Fraud ................................................................................................... 146

XIII. THE DEFENDANTS' MOTIVATION WAS BOUNDLESS AVARICE ....... 154

XIV.  THE TRANSFERS ......................................................................................... 156

      A.    Transfers from BLMIS to the Feeder Funds ......................................... 156

      B.    Transfers from the Feeder Funds to the FGG Affiliates,
            Management Defendants, and Sales Defendants ................................... 158

COUNT ONE:  TURNOVER AND ACCOUNTING – 11 U.S.C. § 542 .................... 160

COUNT TWO:  PREFERENTIAL TRANSFERS (INITIAL TRANSFEREE)
      – 11 U.S.C. §§ 547(b), 550(a)(1), AND 551 ..................................................... 161

COUNT THREE:  PREFERENTIAL TRANSFERS (INITIAL TRANSFEREE)
      – 11 U.S.C. §§ 547(b), 550(a)(1), AND 551 ..................................................... 162

COUNT FOUR:  PREFERENTIAL TRANSFERS (SUBSEQUENT
      TRANSFEREE) – 11 U.S.C. §§ 547(b), 550(a)(2), AND 551 ......................... 164

COUNT FIVE:  FRAUDULENT TRANSFERS (INITIAL TRANSFEREE)
      – 11 U.S.C. §§ 548(a)(1)(A), 550(a)(1), AND 551 .......................................... 166

COUNT SIX:  FRAUDULENT TRANSFERS (INITIAL TRANSFEREE)
      – 11 U.S.C. §§ 548(a)(1)(A), 550(a)(1), AND 551 .......................................... 167

COUNT SEVEN:  FRAUDULENT TRANSFERS (SUBSEQUENT
      TRANSFEREE) – 11 U.S.C. §§ 548(a)(1)(A), 550(a)(2), AND 551 ............... 168

COUNT EIGHT:  FRAUDULENT TRANSFER (INITIAL TRANSFEREE)
      – 11 U.S.C. §§ 548(a)(1)(B) , 550(a)(1), AND 551 .......................................... 170

COUNT NINE:  FRAUDULENT TRANSFER (INITIAL TRANSFEREE)
      – 11 U.S.C. §§ 548(a)(1)(B) , 550(a)(1), AND 551 .......................................... 171

MADC1345_00000442

COUNT TEN:  FRAUDULENT TRANSFER (SUBSEQUENT TRANSFEREE)
– 11 U.S.C. §§ 548(a)(1)(B) , 550(a)(2), AND 551............................................ 172

COUNT ELEVEN:  FRAUDULENT TRANSFER (INITIAL TRANSFEREE)
– NEW YORK DEBTOR AND CREDITOR LAW §§ 276, 276-a, 278
AND/OR 279, AND 11 U.S.C. §§ 544, 550(a)(1), AND 551 ........................... 174

COUNT TWELVE:  FRAUDULENT TRANSFER (INITIAL TRANSFEREE)
– NEW YORK DEBTOR AND CREDITOR LAW §§ 276, 276-a, 278
AND/OR 279, AND 11 U.S.C. §§ 544, 550(a)(1), AND 551 ........................... 175

COUNT THIRTEEN:  FRAUDULENT TRANSFER (SUBSEQUENT
TRANSFEREE) – NEW YORK DEBTOR AND CREDITOR LAW §§
276, 276-a, 278 AND/OR 279, AND 11 U.S.C. §§ 544, 550(a)(2), AND
551.................................................................................................................... 177

COUNT FOURTEEN:  FRAUDULENT TRANSFER (INITIAL TRANSFEREE)
– NEW YORK DEBTOR AND CREDITOR LAW §§ 273 AND 278
AND/OR 279, AND 11 U.S.C. §§ 544, 550(a)(1), AND 551 ........................... 178

COUNT FIFTEEN:  FRAUDULENT TRANSFER (INITIAL TRANSFEREE)
– NEW YORK DEBTOR AND CREDITOR LAW §§ 273 AND 278
AND/OR 279, AND 11 U.S.C. §§ 544, 550(a)(1), AND 551 ........................... 179

COUNT SIXTEEN:  FRAUDULENT TRANSFER (SUBSEQUENT
TRANSFEREE) –NEW YORK DEBTOR AND CREDITOR LAW §§
273 AND 278 AND/OR 279, AND 11 U.S.C. §§ 544, 550(a)(2), AND
551.................................................................................................................... 180

COUNT SEVENTEEN: FRAUDULENT TRANSFERS (INITIAL
TRANSFEREE) – NEW YORK DEBTOR AND CREDITOR LAW §§
274, 278, AND/OR 279, AND 11 U.S.C. §§ 544, 550(a)(1), AND 551 ........... 181

COUNT EIGHTEEN:  FRAUDULENT TRANSFERS (INITIAL
TRANSFEREE) – NEW YORK DEBTOR AND CREDITOR LAW §§
274, 278, AND/OR 279, AND 11 U.S.C. §§ 544, 550(a)(1), AND 551 ........... 182

COUNT NINETEEN:  FRAUDULENT TRANSFERS (SUBSEQUENT
TRANSFEREE) – NEW YORK DEBTOR AND CREDITOR LAW §§
274, 278, AND/OR 279, AND 11 U.S.C. §§ 544, 550(a)(2), AND 551 ........... 183

COUNT TWENTY:  FRAUDULENT TRANSFERS (INITIAL TRANSFEREE)
– NEW YORK DEBTOR AND CREDITOR LAW §§ 275, 278, AND/OR
279, AND 11 U.S.C. §§ 544, 550(a)(1), AND 551 ......................................... 185

COUNT TWENTY-ONE:  FRAUDULENT TRANSFERS (INITIAL
TRANSFEREE) – NEW YORK DEBTOR AND CREDITOR LAW §§
275, 278, AND/OR 279, AND 11 U.S.C. §§ 544, 550(a)(1), AND 551 ........... 186

COUNT TWENTY-TWO:  FRAUDULENT TRANSFERS (SUBSEQUENT
TRANSFEREE) – NEW YORK DEBTOR AND CREDITOR LAW §§
275, 278, AND/OR 279, AND 11 U.S.C. §§ 544, 550(a)(2), 551.................... 187

MADC1345_00000443

COUNT TWENTY-THREE:  UNDISCOVERED FRAUDULENT TRANSFERS
(INITIAL TRANSFEREE) – NEW YORK CIVIL PROCEDURE LAW
AND RULES 203(g), 213(8), NEW YORK DEBTOR AND CREDITOR
LAW §§ 276, 276-a, 278, AND/OR 279, AND 11 U.S.C. §§ 544,
550(a)(1), AND 551 ........................................................................................ 188

COUNT TWENTY-FOUR:  UNDISCOVERED FRAUDULENT TRANSFERS
(INITIAL TRANSFEREE) – NEW YORK CIVIL PROCEDURE LAW
AND RULES 203(g), 213(8), NEW YORK DEBTOR AND CREDITOR
LAW §§ 276, 276-a, 278, AND/OR 279, AND 11 U.S.C. §§ 544,
550(a)(1), AND 551 ........................................................................................ 190

COUNT TWENTY-FIVE:  UNDISCOVERED FRAUDULENT TRANSFERS
(SUBSEQUENT TRANSFEREE) – NEW YORK CIVIL PROCEDURE
LAW AND RULES 203(g), 213(8), NEW YORK DEBTOR AND
CREDITOR LAW §§ 276, 276-a, 278, AND/OR 279, AND 11 U.S.C. §§
544, 550(a)(2), AND 551 ................................................................................ 191

COUNT TWENTY-SIX:  OBJECTION TO THE DEFENDANTS' CUSTOMER
CLAIMS ......................................................................................................... 193

COUNT TWENTY-SEVEN:  UNJUST ENRICHMENT ........................................... 194

COUNT TWENTY-EIGHT:  CONVERSION.............................................................. 195

COUNT TWENTY-NINE:  MONEY HAD AND RECEIVED ................................... 196

COUNT THIRTY:  AIDING AND ABETTING FRAUD........................................... 197

COUNT THIRTY-ONE:  AIDING AND ABETTING BREACH OF
FIDUCIARY DUTY ........................................................................................ 208

MADC1345_00000444

1.      Irving H. Picard, Esq. (the "Trustee"), as trustee for the substantively consolidated

liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") and

Bernard L. Madoff ("Madoff"), under the Securities Investor Protection Act §§ 78aaa *et seq.*, by

and through his undersigned counsel, for this Amended Complaint, states as follows:

## I.      NATURE OF THE ACTION

2.      The Defendants named in this Amended Complaint worked in conjunction with

BLMIS and Madoff to commit, and exponentially expand, the single largest financial fraud in

history.  Serving as one of Madoff's largest marketing and investor relations arms, the

Defendants were active participants in, and substantially aided, enabled, and helped sustain

Madoff's Ponzi scheme.  Every dollar the Defendants purportedly "earned," and every dollar

they kept to unjustly enrich themselves, was *stolen money*.  Every asset the Defendants own that

originated from the purported management and performance fees drawn from fictitious returns is

in fact *Customer Property*, as defined by statute,[1] and must be returned to the Trustee for

equitable distribution to BLMIS customers.

3.      This is a case in which sophisticated hedge fund investment advisers and

promoters engaged in a systematic, purposeful enterprise with Madoff to maintain and profit

from a fraud and wrongly enrich themselves.  The Defendants had actual and constructive

knowledge of Madoff's fraud and cannot deny their knowledge of many "red flags" indicating

the likelihood of that fraud.  This case goes well beyond "red flags."

---

[1] SIPA § 78*lll*(4) defines "Customer Property" as "cash and securities . . . at any time received, acquired, or held by or for the account of a debtor from or for the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted."

MADC1345_00000445

4.      The Defendants did not properly, independently, and reasonably perform due diligence into the many red flags strongly indicating Madoff was a fraud.  The Defendants did exactly the opposite.  The Defendants misled regulators, investors, and potential investors and generally looked the other way, focusing only on self-interest and profit.  Among many other things, the Defendants:

a.      failed to perform as independent investment advisers and fiduciaries, serving by their own admission as an extension of BLMIS's marketing and customer relations operation;

b.      knowingly and explicitly conspired with Madoff to deceive the Securities Exchange Commission (the "SEC") by misrepresenting the true nature of their respective investment advisory roles and by intentionally misstating Madoff's role;

c.      ascribed inconsistent roles to Madoff depending on the circumstances. Sometimes the Defendants claimed Madoff was merely a broker-dealer executing the Defendants' own investment strategy.  At other times, the Defendants said Madoff was an investment adviser acting as an agent. And still at other times, the Defendants claimed BLMIS was acting as a principal in performing investment adviser functions;

d.      provided false security to their investors through false marketing materials, and shielded Madoff from direct inquiries.  The Defendants discouraged customers, potential customers, and others from performing direct due diligence on Madoff, intentionally removed references to him from their offering memoranda and marketing materials, and in all respects served as a "gatekeeper" in order to prevent unwanted inquiries;

e.      performed no real due diligence on Madoff's one-person auditing firm before or even after one of their investors likened BLMIS to another Ponzi scheme.  Some of the individual Defendants not only ignored the fact that Madoff's auditing firm lied to them, but perpetrated their own fraud by knowingly misleading investors and potential investors about the auditing firm's size, reputation, and capabilities;

f.      ignored basic, standard industry statistical analyses of Madoff's consistent returns over nearly two decades that should have led them to reasonably conclude the returns were manufactured.  The lack of any volatility ever, even in often volatile markets, was an obvious sign of fraud.  The Defendants utilized the consistent lack of volatility as a banner to promote the success of their own funds;

2

MADC1345_00000446

g.     regularly received Madoff's trade confirmations reflecting implausible equities trading volumes and percentages, as well as options trading volumes that were impossible, as they greatly exceeded the entire volume of reported options trading on the relevant exchanges. The Defendants never questioned how trading at such massive volumes could not leave a "footprint" in the market or otherwise impact pricing;

h.     represented that the massive options trading that was part of Madoff's purported strategy was made through over-the-counter trades with individual counterparties, even though the trade confirmations the Defendants received from BLMIS reflected exchange traded options, not over-the-counter trades. The Defendants never knew the identity of a single options trade counterparty, nor did they investigate the counterparties' ability to perform their obligations under the trade agreements;

i.     willingly entered into an investment relationship with Madoff that prevented all of the traditional, independent checks and balances seen in the investment advisory business. Madoff served as investment adviser, prime broker, valuation agent, sub-custodian, as well as executing broker, and all compliance and supervisory functions at BLMIS were performed by Madoff's family. This structure was tailor-made for perpetrating fraud – Madoff could readily misappropriate assets without any independent oversight – but the Defendants never questioned it;

j.     despite representing Madoff's investment strategy as their own for nearly two decades, the Defendants' internal communications indicate they never understood the strategy;

k.     knew for many years that their investors, market experts, due diligence experts, and even their own consultant (hired to review BLMIS transactions) had grave suspicions Madoff and the investment strategy were a sham;

l.     touted and marketed their due diligence process as being the best, as well as the "value added" service that justified fees greater than those of many of their competitors, when, in fact, the Defendants failed to perform even a modicum of reasonable due diligence;

m.    turned a blind eye to Madoff's fraudulent activities for the simple reason that the Defendants' continued prosperity and very existence was directly and exclusively tied to Madoff – if he was exposed as a fraud, their vast empire would collapse; and

n.     acted as Madoff's *de facto* partners by failing to act as fiduciaries and by lending their resources, marketing, reputation, protection, and undying allegiance to Madoff. The Defendants, along with many others,

3

MADC1345_00000447

knowingly and actively aided Madoff, causing a catastrophic growth of
the fraud and deepening of BLMIS's insolvency, the result of which was
billions in damages to thousands of customers.

5.      Through this Amended Complaint the Trustee seeks the return of all Customer

Property belonging to the BLMIS estate, in the form of redemptions, fees, compensation, and

assets; as well as all damages, including but not limited to compensatory and punitive damages,

caused by the Defendants' misconduct; and the disgorgement of all funds and properties by

which the Defendants were unjustly enriched at the expense of BLMIS's customers.

## II.      JURISDICTION AND VENUE

6.      The Trustee brings this adversary proceeding pursuant to his statutory authority

under SIPA §§ 78fff(b) and 78fff-2(c)(3), sections 105(a), 502(d), 542, 544, 547, 548(a), 550(a),

and 551 of 11 U.S.C. §§ 101 (the "Bankruptcy Code"), the New York Fraudulent Conveyance

Act (N.Y. Debt. & Cred. § 270 (McKinney 2001)), New York Civil Practice Law and Rules

(McKinney 2001), and other applicable law, for turnover, accounting, preferences, fraudulent

conveyances, unjust enrichment, conversion, money had and received, aiding and abetting fraud,

aiding and abetting breach of fiduciary duty, consequential and punitive damages, and objection

to the customer claims filed by some of the Defendants.  The Trustee seeks, among other things,

to set aside all avoidable transfers, collect damages caused by the Defendants, preserve the stolen

Customer Property for the benefit of BLMIS customers, and recover *all* stolen Customer

Property from the Defendants, in whatever form it may now or in the future exist.

7.      This is an adversary proceeding brought in the Court in which the main

underlying SIPA proceeding, No. 08-01789 (BRL) (the "SIPA Proceeding") is pending.  The

Securities Investor Protection Corporation ("SIPC") originally brought the SIPA Proceeding in

the United States District Court for the Southern District of New York as *Securities Exchange*

4

*Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08 CV 10791 (the

"District Court Proceeding"). This Court has jurisdiction over this adversary proceeding under

28 U.S.C. § 1334(b) and SIPA §§ 78eee(b)(2)(A), (b)(4).

8.        This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (C), (E), (F), (H),

and (O).

9.        Venue in this district is proper under 28 U.S.C. § 1409.

## III.    BACKGROUND

10.       On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents

for violations of the criminal securities laws, including, *inter alia*, securities fraud, investment

adviser fraud, and mail and wire fraud. Contemporaneously, the SEC filed the District Court

Proceeding against Madoff, which remains pending. The SEC complaint alleges that Madoff

and BLMIS engaged in fraud through the BLMIS Investment Advisory business (the "BLMIS

IA Business").

11.       On December 12, 2008, The Honorable Louis L. Stanton entered an order

appointing Lee S. Richards, Esq. as receiver for the assets of BLMIS (the "Receiver").

12.       On December 15, 2008, pursuant to SIPA § 78eee(a)(4)(B), SIPC filed an

application in the District Court alleging, *inter alia*, BLMIS was not able to meet its obligations

to securities customers as they came due and, accordingly, its customers needed the protections

afforded by SIPA. On that same date, pursuant to SIPA § 78eee(a)(4)(A), the SEC consented to

a combination of its own action with SIPC's application.

MADC1345_00000449

13.     Also on December 15, 2008, Judge Stanton granted SIPC's application and entered an order pursuant to SIPA (the "Protective Decree"), which, in pertinent part:

      a.     Appointed the Trustee for the liquidation of the business of BLMIS pursuant to SIPA § 78eee(b)(3);

      b.     Appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to SIPA § 78eee(b)(3);

      c.     Removed the case to this Bankruptcy Court pursuant to SIPA § 78eee(b)(4); and

      d.     Removed the Receiver for BLMIS.

14.     Pursuant to SIPA § 78*lll*(7)(B), the Filing Date is deemed to be the date of the filing of the petition within the meaning of sections 547 and 548 of the Bankruptcy Code and the date of the commencement of the case within the meaning of section 544 of the Bankruptcy Code.

15.     By orders dated December 23, 2008 and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

16.     By virtue of his appointment under SIPA, the Trustee has the responsibility to recover and pay out Customer Property to BLMIS customers, assess claims, and liquidate any other assets of BLMIS for the benefit of the estate and its creditors. The Trustee is in the process of marshalling BLMIS's assets, but such assets will not be sufficient to fully reimburse BLMIS customers for the billions of dollars they invested through BLMIS. Consequently, the Trustee

MADC1345_00000450

must use his broad authority as expressed and intended by both SIPA and the Bankruptcy Code to pursue recovery for BLMIS accountholders.

17.     Based upon the Trustee's ongoing investigation, it now appears there were more than 8,000 customer accounts at BLMIS over the life of the scheme.  In early December 2008, BLMIS generated account statements for its approximately 4,900 open customer accounts. When added together, these statements purportedly showed that BLMIS customers had approximately $65 billion invested through BLMIS.  In reality, BLMIS had assets on hand worth a fraction of that amount.  Customer accounts had not accrued any real profits because no investments were ever made.  By the time the Ponzi scheme came to light on December 11, 2008, investors had already lost approximately $20 billion in principal.

18.     As Madoff admitted at his Plea Hearing, he never purchased any of the securities, options, or Treasurys for the BLMIS IA Business and the returns he reported to customers were entirely fictitious.  Based on the Trustee's investigation to date, there is no record of BLMIS having cleared a single purchase or sale of securities on any exchange in connection with the SSC Strategy.[2]

19.     For years, prior to his arrest, Madoff repeatedly represented that he conducted his options trading on the over-the-counter ("OTC") market rather than through any listed exchange. Based on the Trustee's investigation to date, there is no evidence that the BLMIS IA Business ever entered into any OTC options trades on behalf of BLMIS account holders.

---

[2]     Madoff did a *de minimus* amount of securities trading outside of the SSC Strategy – such trading is not at issue in the Trustee's allegations here.

7

20.     In connection with his efforts to recoup billions of dollars of stolen Customer Property, on May 18, 2009, the Trustee filed the Complaint in this action against the three Fairfield Greenwich Group ("FGG") entities that maintained accounts with BLMIS:  Fairfield Sentry Limited ("Fairfield Sentry"), Greenwich Sentry, L.P. ("GS"), and Greenwich Sentry Partners, L.P. ("GSP") (collectively, the "Feeder Funds").  Each of the Feeder Funds maintained one or more customer accounts at BLMIS, were collectively among Madoff's largest sources of investor principal.  The Feeder Funds withdrew billions of dollars from the BLMIS accounts. The Trustee initially filed suit against the Feeder Funds in order to recover all avoidable transfers BLMIS made to them.

21.     FGG is a trade name used to refer to a number of affiliated entities, including both domestic and foreign corporations, general partnerships, limited partnerships, trusts, and limited liability companies.  Internally, those formal business structures were ignored.  According to FGG's own documents, the profits earned by the myriad of FGG entities were distributed to individuals and entities based upon their "partnership" percentages in FGG.

22.     Fairfield Sentry is currently in liquidation.  On July 21, 2009, the Eastern Caribbean Supreme Court in the High Court of Justice of the British Virgin Islands appointed Kenneth Krys and Christopher Stride as Joint Official Liquidators of Defendant Fairfield Sentry. Defendant Fairfield Sigma Limited ("Sigma") and Defendant Fairfield Lambda Limited ("Lambda") are two other FGG funds whose sole purpose was to invest all of their respective funds in Fairfield Sentry.  Like Fairfield Sentry, both Sigma and Lambda are subject to liquidation proceedings in the British Virgin Islands.  Mr. Krys and Mr. Stride were appointed by the Eastern Caribbean Supreme Court as Joint Official Liquidators of Sigma on the same day

8

they were appointed as liquidators of Fairfield Sentry. On April 23, 2009, the Eastern Caribbean Supreme Court appointed Mr. Stride as the Official Liquidator of Lambda.

23.     This Amended Complaint includes new allegations and causes of action against the Feeder Funds, as well as claims against additional Defendants. The Feeder Funds are no longer directly in possession of the majority of the billions of dollars in transfers they received from BLMIS. They have transferred over one billion dollars to other FGG entities as payments for purported management, performance, and administrative fees. Those FGG entities then used hundreds of millions of those dollars to pay percentage distributions to each of FGG's partners. In addition, the Feeder Funds have transferred funds to their investors, which include other FGG entities, which redeemed shares or limited partnership interests in the Feeder Funds.

24.     The newly named Defendants include additional FGG affiliated hedge funds that invested in the Feeder Funds to benefit from their investments with Madoff, and the investment managers and related affiliates that received over a billion dollars of management and performance fees for supposedly monitoring the funds' investments with BLMIS (the "FGG Affiliates"). Three of the FGG Affiliates, Fairfield Greenwich (Bermuda), Ltd. ("FGB"), Fairfield Greenwich Limited ("FGL"), and Greenwich Bermuda Limited ("GBL"), served as general partners to GS and GSP and are liable for all avoidable transfers received by GS and GSP during the periods in which FGB, FGL, and GBL served as general partners.

25.     The Amended Complaint also names as Defendants individual partners and principal wrongdoers within the FGG organization who received hundreds of millions of dollars for orchestrating FGG's extraordinary role in the scheme. These individuals fall into two categories: those in management positions (the "Management Defendants") and those involved

9

MADC1345_00000453

in marketing the funds (the "Sales Defendants") (collectively the "FGG Individuals"). The Feeder Funds, the FGG Affiliates, the Management Defendants, and the Sales Defendants are referred to, collectively, as the "Defendants."

26. The Trustee brings this action against the Defendants to, among other things, recover all funds received, directly or indirectly, from the BLMIS IA Business.

27. BLMIS was insolvent at all times relevant to this proceeding. BLMIS's liabilities were billions of dollars greater than its assets. Because BLMIS could not meet its obligations as they came due, BLMIS was insolvent at the time it made each of the transfers.

28. This Amended Complaint and similar complaints are being filed to recapture stolen monies as well as damages caused to customers through wrongful acts, and to require the Defendants to disgorge the illegal profits by which they were unjustly enriched at the expense of the customers. All Customer Property recovered by the BLMIS estate shall first be distributed pro rata among BLMIS customers in accordance with SIPA § 78fff-2(c)(1).

## IV. <u>TRUSTEE'S POWERS AND STANDING</u>

29. Pursuant to SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code. Chapters 1, 3, 5, and subchapters I and II of chapter 7 of the Bankruptcy Code are applicable to this case to the extent consistent with SIPA §§ 8fff(b).

30. In addition to the powers of a bankruptcy trustee, the Trustee has broader powers granted by SIPA.

MADC1345_00000454

31.     The Trustee is a real party in interest and has standing to bring these claims

pursuant to SIPA § 78fff-1 and the Bankruptcy Code, including sections 323(b) and 704(a)(1),

because, among other reasons:

a.     the Defendants received "Customer Property" as defined in SIPA

§ 78*lll*(4);

b.     BLMIS incurred losses as a result of the conduct set forth herein;

c.     BLMIS customers were injured as a result of the conduct detailed herein;

d.     SIPC cannot by statute advance funds to the Trustee to fully reimburse all

customers for all of their losses;

e.     the Trustee will not be able to fully satisfy all claims;

f.     the Trustee, as bailee of Customer Property, can sue on behalf of the

customer-bailors;

g.     as of this date, the Trustee has received multiple, express assignments of

certain claims of the applicable accountholders, which they could have asserted.  As assignee,

the Trustee stands in the shoes of persons who have suffered injury-in-fact, and a distinct and

palpable loss for which the Trustee is entitled to reimbursement in the form of monetary

damages;

h.     SIPC is the subrogee of claims paid, and to be paid, to customers of

BLMIS who have filed claims in the liquidation proceeding.  SIPC has expressly conferred upon

11

the Trustee enforcement of its rights of subrogation with respect to payments it has made and is

making to customers of BLMIS from SIPC funds; and

       i.     the Trustee has the power and authority to avoid and recover transfers

pursuant to sections 544, 547, 548, 550(a), and 551 of the Bankruptcy Code and SIPA § 78fff-

2(c)(3).

## V.    **DEFENDANTS**

### A.   *The Feeder Funds*

32.    **Fairfield Sentry**:  Defendant Fairfield Sentry is a hedge fund, currently in

liquidation, that is part of the FGG organization, and which maintained accounts at BLMIS.  The

fund is organized as an international business company under the laws of the British Virgin

Islands.  Its registered agent is Codan Trust Company (B.V.I.) Ltd., Romasco Place, Wickhams

Cay 1, P.O. Box 3140, Road Town, Tortola, B.V.I.

33.    Fairfield Sentry opened its first account at BLMIS in November 1990 (Account

No. 1FN012) and a second account in October 1992 (Account No. 1FN045).  The fund also

opened corresponding options accounts (Account Nos. 1FN069 and 1FN070).  (A true and

accurate copy of exemplar account agreements for Fairfield Sentry is attached hereto as Ex. 1.)[3]

All accounts were still open when Madoff was arrested on December 11, 2008.  Prior to

Madoff's arrest, Fairfield Sentry deposited almost $4.3 billion and withdrew approximately $3.3

billion from those accounts.  (A summary chart of Fairfield Sentry's withdrawals from its

BLMIS accounts is attached hereto as Ex. 2.)

---

[3]    All references to exhibits attached to this Amended Complaint will be indicated as "Ex. ___."

MADC1345_00000456

34.     Fairfield Sentry is subject to personal jurisdiction in this judicial district as it

routinely conducted business in New York, New York and entered into agreements in New York,

New York including agreements relating to its BLMIS accounts, which it delivered to BLMIS

headquarters in New York, New York.

35.     At all relevant times, Fairfield Sentry was a customer of BLMIS, which operated

its principal place of business in New York, New York and maintained Fairfield Sentry's

account in New York, New York.  At least one of Fairfield Sentry's account agreements

contained a choice of law provision indicating the agreement was made in New York and would

be construed pursuant to New York law.  (*See* Ex. 1.)  Fairfield Sentry utilized New York banks

when it redeemed funds distributed to it by BLMIS and when it invested additional funds with

BLMIS.  Specifically, Fairfield Sentry wired funds to BLMIS's account at JPMorgan Chase

Account # 000000140081703 (the "703 Account"), in New York, New York, for application to

its accounts and for the conducting of trading activities.  (Prior to 2008, the 703 Account's

complete account number was 140-081703.)

36.     On May 12, 2009,  FGG issued a press release stating that FGG professionals

actively monitored FGG's investments through Madoff and conducted due diligence both in

Bermuda and New York.  (A true and accurate copy of the May 12, 2009 press release is

attached hereto as Ex. 3.)

37.     In addition, Fairfield Sentry filed customer claims seeking to recover funds it

allegedly lost on its investments through BLMIS.  By filing its customer claims, Fairfield Sentry

submitted to the jurisdiction of this Court.

MADC1345_00000457

38.     Finally, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over Fairfield Sentry based on the fund's contacts with the U.S.

39.     **GS**:  Defendant GS is a hedge fund that is part of the FGG organization and that maintained an account at BLMIS.  GS is a limited partnership organized under the laws of the State of Delaware.  Its registered agent is Corporation Service Company, 2711 Centreville Road, Suite 400, Wilmington, Delaware 19808.

40.     GS opened its account at BLMIS in November 1992 (Account No. 1G0092). This account was still open when Madoff was arrested on December 11, 2008.  (A true and accurate copy of exemplar account agreements for GS is attached hereto as Ex. 4.)  Prior to Madoff's arrest, GS deposited approximately $420.6 million into this account and withdrew $281.1 million from this account.  (A summary chart of GS's withdrawals from its BLMIS account is attached hereto as Ex. 5.)

41.     GS is subject to personal jurisdiction in this judicial district as it routinely conducted business in New York, New York and entered into agreements in New York, New York, which it delivered to BLMIS headquarters in New York, New York.  At all relevant times, GS was a customer of BLMIS, which operated its principal place of business in New York, New York.  GS utilized New York banks when it redeemed funds distributed to it by BLMIS and when it invested additional funds with BLMIS.  Specifically, GS wired funds to the 703 Account in New York, New York, for application to its account and for the conducting of trading activities.

14

42.     As previously noted, on May 12, 2009, FGG issued a press release stating FGG professionals actively monitored FGG's investments through BLMIS and conducted due diligence both in Bermuda and New York City.  (*See* Ex. 3.)

43.     In addition, GS filed a customer claim seeking to recover funds it allegedly lost on its investments through BLMIS, whereby it submitted to the jurisdiction of this Court.

44.     Finally, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over GS based on the fund's contacts with the U.S.

45.     **GSP**:  Defendant GSP is a hedge fund that is part of the FGG organization, and which maintained an account at BLMIS.  GSP is a limited partnership organized under the laws of the State of Delaware.  Its registered agent is Corporation Service Company, 2711 Centreville Road, Suite 400, Wilmington, Delaware 19808.

46.     GSP opened its account at BLMIS in May 2006 (Account No. 1G0371).  (A true and accurate copy of exemplar account agreements for GSP is attached hereto as Ex. 6.)  This account was still open when Madoff was arrested on December 11, 2008.  Prior to Madoff's arrest, GSP deposited nearly $9.5 million into this account and withdrew almost $6.0 million from this account.  (A summary chart of GSP's withdrawals from its BLMIS account is attached hereto as Ex. 7.)

47.     GSP is subject to personal jurisdiction in this judicial district as it routinely conducted business in New York, New York, and entered into agreements in New York, New

MADC1345_00000459

York, which it delivered to BLMIS headquarters in New York, New York.  At all relevant times,

GSP was a customer of BLMIS, which operated its principal place of business in New York,

New York.  GSP utilized New York banks when it redeemed funds distributed to it by BLMIS

and when it invested additional funds with BLMIS.  Specifically, GSP wired funds to the 703

Account in New York, New York, for application to its account and for the conducting of trading

activities.

48.      As previously noted, on May 12, 2009,  FGG issued a press release stating FGG

professionals actively monitored FGG's investment through BLMIS and conducted due diligence

both in Bermuda and New York.  (*See* Ex. 3.)

49.      In addition, GSP filed a customer claim seeking to recover funds it allegedly lost

on its investments through BLMIS, whereby it submitted to the jurisdiction of this Court.

50.      Finally, where a federal statute provides for nationwide service of process, as does

Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal

jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has

personal jurisdiction over GSP based on the fund's contacts with the U.S.

## B.      *FGG Affiliates*

### 1.      **Other FGG Funds**

51.      **Sigma**:  Defendant Sigma is an FGG fund wholly invested in Fairfield Sentry.

The fund was organized on November 20, 1990 under the British Virgin Islands' International

Business Companies Act, and began operations in 1997.  Its registered office is c/o Codan Trust

Company (B.V.I.) Ltd., Romasco Place, Wickhams Cay 1, P.O. Box 3140, Road Town, Tortola,

B.V.I.

16

MADC1345_00000460

52.    Sigma accepted investments in Euros, which it converted to U.S. Dollars and invested in Fairfield Sentry.  Fairfield Sentry then invested at least 95% of its assets in BLMIS. Through its investment in Fairfield Sentry, Sigma was an indirect investor through BLMIS.

53.    Between 2003 and 2008, Sigma redeemed approximately $752.3 million from Fairfield Sentry.  (A true and accurate copy of Sigma's redemption confirmations is attached hereto as Ex. 8.)  Upon information and belief, in order to pay these redemptions, Fairfield Sentry withdrew funds from its BLMIS accounts.  As such, Sigma's redemptions constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

54.    Sigma is subject to personal jurisdiction in this judicial district because Sigma filed a customer claim to recover funds it allegedly lost on its investments in Sentry, whereby it submitted to the jurisdiction of this Court.

55.    Finally, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over Sigma based on the fund's contacts with the U.S.

56.    **Lambda**:  Defendant Lambda is an FGG fund wholly invested in Fairfield Sentry. The fund was organized on December 7, 1990 under the British Virgin Islands' International Business Companies Act, and began operations in 1999.  Its registered office is c/o Codan Trust Company (B.V.I.) Ltd., Romasco Place, Wickhams Cay 1, P.O. Box 3140, Road Town, Tortola, B.V.I.

17

57.     Lambda accepted investments in Swiss francs, which it converted to U.S. Dollars
and invested in Fairfield Sentry.  Fairfield Sentry then invested at least 95% of its assets in
BLMIS.  Through its investment in Fairfield Sentry, Lambda was an indirect investor through
BLMIS.

58.     Between 2003 and 2008, Lambda redeemed over $52.9 million from Fairfield
Sentry.  (A true and accurate copy of Lambda's redemption confirmations are attached hereto as
Ex. 9.)  Upon information and belief, in order to pay these redemptions, Fairfield Sentry
withdrew funds from its BLMIS accounts.  As such, Lambda's redemptions constitute Customer
Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS
recoverable by the Trustee.

59.     Lambda is subject to personal jurisdiction in this judicial district because Lambda
filed a customer claim to recover funds it allegedly lost on its investments in Sentry, whereby it
submitted to the jurisdiction of this Court.

60.     Finally, where a federal statute provides for nationwide service of process, as does
Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal
jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has
personal jurisdiction over Lambda based on the fund's contacts with the U.S.

61.     **Chester Global Strategy Fund Limited ("Chester")**:  Defendant Chester is an
FGG fund partially invested in Fairfield Sentry.  Chester was created as a fund of funds, and
placed its investors' money with other hedge funds.  The fund is organized as a limited liability
company under the laws of the Cayman Islands and began operations on March 1, 2003.
Defendant Andrés Piedrahita ("Piedrahita") is one of the fund's directors.

18

62.    Union Bancaire Privée ("UBP") acted as the fund's investment adviser and custodian.  Chester borrowed 30–40% of the net asset value of the fund from UBP for the purpose of making leveraged investments.

63.    Between 2005 and 2007, Chester redeemed over $71.7 million from Fairfield Sentry.  Chester liquidated its remaining position in Fairfield Sentry on July 19, 2007 by redeeming over $10.6 million.  (A true and accurate copy of Chester's redemption confirmations is attached hereto as Ex. 10.)  Upon information and belief, in order to pay these redemptions, Fairfield Sentry withdrew funds from its BLMIS accounts.  As such, Chester's redemptions are Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

64.    Chester is subject to personal jurisdiction in this judicial district as it routinely conducted business in New York, New York, purposely availed itself of the laws of the State of New York by undertaking significant commercial activity in New York, New York, and derived significant revenue from New York, New York.  Specifically, Chester was managed out of FGG's New York City office.

65.    Finally, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over Chester based on the fund's contacts with the U.S.

66.    **Chester Global Strategy Fund, LP ("Chester LP")**:  Defendant Chester LP is an FGG fund partially invested in GS.  Chester LP was created as a fund of funds, and placed its

19

MADC1345_00000463

investors' money with other hedge funds.  The fund is organized as a Delaware limited partnership and maintained its principal place of business in New York, New York.

67.     In November 2008, Chester LP redeemed over $853,000 from GS.  (A true and accurate copy of Chester LP's redemption confirmation is attached hereto as Ex. 11.)  Upon information and belief, in order to pay this redemption, GS withdrew funds from its BLMIS account.  As such, Chester LP's redemption is Customer Property subject to turnover to the Trustee and/or an avoidable subsequent transfer from BLMIS recoverable by the Trustee.

68.     Chester LP is subject to personal jurisdiction in this judicial district as it routinely conducted business in New York, New York, purposely availed itself of the laws of the State of New York by undertaking significant commercial activity in New York, New York, and derived significant revenue from New York, New York.  Specifically, Chester LP was managed out of FGG's New York City office.

69.     Finally, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over Chester LP based on the fund's contacts with the U.S.

70.     **Irongate Global Strategy Fund Limited ("Irongate")**:  Defendant Irongate is an FGG fund partially invested in Fairfield Sentry.  Irongate was created as a fund of funds, and placed its investors' money with other hedge funds.  It was created as a limited liability company under the laws of the Cayman Islands and began operations on July 1, 2004.  The fund's registered office is c/o Citco Fund Services (Cayman Islands) Limited, Corporate Centre, West

MADC1345_00000464

Bay Road, P.O. Box 31106SMB, George Town, Cayman Islands.  Piedrahita is one of the fund's directors.

71.     In 2007, Irongate redeemed over $36.3 million from Fairfield Sentry.  Irongate liquidated its remaining position in Fairfield Sentry on July 19, 2007 by redeeming over $31.3 million.  (A true and accurate copy of Irongate's redemption confirmations is attached hereto as Ex. 12.)  Upon information and belief, in order to pay these redemptions, Fairfield Sentry withdrew funds from its BLMIS accounts.  As such, Irongate's redemptions constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

72.     Irongate is subject to personal jurisdiction in this judicial district as it routinely conducted business in New York, New York, purposely availed itself of the laws of the State of New York by undertaking significant commercial activities in New York, New York, and derived significant revenue from New York, New York.  Specifically, Irongate was managed out of FGG's New York City office.

73.     Finally, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over Irongate based on the fund's contacts with the U.S.

74.     **Fairfield Greenwich Fund (Luxembourg) ("FGF")**:  Defendant FGF is an FGG fund partially invested in Fairfield Sentry.  The fund was incorporated as a Société d'Investissement à Capital Variable in Luxembourg on October 22, 2002.  Its registered office is

21

located at 28 Avenue Monterey, L-2163 Luxembourg.  Defendant Walter Noel ("Noel") serves

as Chairman of the Board of Directors.

75.     FGF was created as an umbrella fund that would provide investors with a choice

of investment in several sub-funds.  As of December 31, 2005, FGF had only one sub-fund,

Fairfield Guardian Fund ("Fairfield Guardian").  FGF was invested in Fairfield Sentry both

directly and through Fairfield Guardian.

76.     Between 2004 and 2006, FGF redeemed approximately $2.8 million from

Fairfield Sentry.  (A true and accurate copy of FGF's redemption confirmations is attached

hereto as Ex. 13.)  In addition, Fairfield Guardian redeemed from Fairfield Sentry throughout

2005.  (A true and accurate copy of an internal FGG chart showing Fairfield Guardian's

redemptions from Fairfield Sentry is attached hereto as Ex. 14.)  Upon information and belief, in

order to pay these redemptions, Fairfield Sentry withdrew funds from its BLMIS accounts.  As

such, FGF's and Fairfield Guardian's redemptions constitute Customer Property subject to

turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the

Trustee.

77.     FGF is subject to personal jurisdiction in this judicial district as it routinely

conducted business in New York, New York, purposely availed itself of the laws of the State of

New York by undertaking significant commercial activities in New York, New York, and

derived significant revenue from New York, New York.  Specifically, FGF was managed out of

FGG's New York City office.

78.     Finally, where a federal statute provides for nationwide service of process, as does

Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal

MADC1345_00000466

jurisdiction over any defendant with minimum contacts with the U.S. Thus, this Court has personal jurisdiction over FGF based on the fund's contacts with the U.S.

79.      **Fairfield Investment Fund Limited ("FIFL")**: Defendant FIFL is an FGG fund partially invested in Fairfield Sentry and GS. FIFL was created as a fund of funds which invested in other funds. It was created as a British Virgin Islands International Business Company on July 27, 2000, and began operations on July 1, 2004. Its registered office is c/o Codan Trust Company (B.V.I.) Ltd., Romasco Place, Wickhams Cay 1, P.O. Box 3140, Road Town, Tortola, B.V.I. Noel and Defendant Jeffrey Tucker ("Tucker") serve on the fund's Board of Directors.

80.      Between 2003 and 2008, FIFL redeemed approximately $288.1 million from Fairfield Sentry. FIFL redeemed approximately $9.0 million in October 2008, which constituted a liquidation of FIFL's entire remaining position in Fairfield Sentry. (A true and accurate copy of FIFL's redemption confirmations is attached hereto as Ex. 15.) Upon information and belief, in order to pay these redemptions, Fairfield Sentry withdrew funds from its BLMIS accounts. As such, FIFL's redemptions constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

81.      FIFL is subject to personal jurisdiction in this judicial district as it routinely conducted business in New York, New York, purposely availed itself of the laws of the State of New York by undertaking significant commercial activities in New York, New York, and derived significant revenue from New York. Specifically, FIFL was managed out of FGG's New York City office.

23

MADC1345_00000467

82.     Finally, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over FIFL based on the fund's contacts with the U.S.

83.     **Fairfield Investors (Euro) Limited ("FIL-Euro")**:  Defendant FIL-Euro is an FGG fund created as an international business company under the laws of the British Virgin Islands.  Its principal business office is c/o Codan Trust Company (B.V.I.) Ltd., Romasco Place, Wickhams Cay 1, Road Town, Tortola, B.V.I.  Defendant Cornelis Boele ("Boele") serves on the fund's Board of Directors.

84.     FIL-Euro was created to invest in and trade both securities and other financial instruments.  The fund allocated its assets principally to the purchase of shares of FIFL.  As explained above, FIFL invested assets in Fairfield Sentry and GS.

85.     FIFL, the fund through which FIL-Euro invested in Fairfield Sentry and GS, redeemed approximately $288.1 million from Fairfield Sentry between 2003 and 2008.  (*See* Ex. 15.)  Upon information and belief, in order to pay FIFL's redemptions, Fairfield Sentry withdrew funds from its BLMIS accounts.  FIFL then transferred the funds to FIL-Euro when FIL-Euro redeemed its shares of FIFL.  As such, FIL-Euro's redemptions from FIFL constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

86.     FIL-Euro is subject to personal jurisdiction in this judicial district as it routinely conducted business in New York, New York, purposely availed itself of the laws of the State of New York by conducting significant commercial activities in New York, New York, and derived

24

MADC1345_00000468

significant revenue from New York, New York.  Specifically, FIL-Euro was managed out of FGG's New York City office.

87.    Finally, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over FIL-Euro based on the fund's contacts with the U.S.

88.    **Fairfield Investors (Swiss Franc) Limited ("FIL-Swiss")**:  Defendant FIL-Swiss is an FGG fund incorporated as an international business company under the laws of the British Virgin Islands on June 6, 1996.  Its registered office is located at Codan Trust Company (B.V.I.) Ltd., P.O. Box 3140, Romasco Place, Wickhams Cay 1, Road Town, Tortola, B.V.I. Boele serves on the fund's Board of Directors.

89.    FIL-Swiss was created to allocate its assets principally to the purchase of shares of FIFL.  As explained above,  FIFL invested funds in Fairfield Sentry and GS.

90.    FIFL, the fund through which FIL-Swiss invested in Fairfield Sentry and GS, redeemed approximately $288.1 million from Fairfield Sentry between 2003 and 2008.  (*See* Ex. 15.)  Upon information and belief, to pay FIFL's redemptions, Fairfield Sentry withdrew funds from BLMIS.  FIFL then transferred the funds to FIL-Swiss when FIL-Swiss redeemed its shares of FIFL.  As such, FIL-Swiss's redemptions from FIFL constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

25

MADC1345_00000469

91.     FIL-Swiss is subject to personal jurisdiction in this judicial district as it routinely conducted business in New York, New York, purposely availed itself of the laws of the State of New York by conducting significant commercial activities in New York, New York, and derived significant revenue from New York, New York.  Specifically, FIL-Swiss was managed out of FGG's New York City office, and the fund's investment manager, Fairfield Greenwich Advisors LLC (*see infra* ¶¶148-157), is located in New York, New York.

92.     Finally, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over FIL-Swiss based on the fund's contacts with the U.S.

93.     **Fairfield Investors (Yen) Limited ("FIL-Yen")**:  Defendant FIL-Yen is an FGG fund incorporated as an international business company under the laws of the British Virgin Islands on January 1, 2004.  Its registered office is located at Codan Trust Company (B.V.I.) Ltd., P.O. Box 3140, Romasco Place, Wickhams Cay 1, Road Town, Tortola, B.V.I.  Tucker serves on the fund's Board of Directors.

94.     FIL-Yen was created to allocate its assets principally to the purchase of shares of FIFL.  As explained above, FIFL invested funds in Fairfield Sentry and GS.

95.     FIFL, the fund through which FIL-Yen invested in Fairfield Sentry and GS, redeemed approximately $288.1 million from Fairfield Sentry between 2003 and 2008.  (*See* Ex. 15.)  Upon information and belief, to pay FIFL's redemptions, Fairfield Sentry withdrew funds from its BLMIS accounts.  FIFL then transferred the funds to FIL-Yen when FIL-Yen redeemed its shares of FIFL.  As such, FIL-Yen's redemptions from FIFL constitute Customer Property

26

MADC1345_00000470

subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

96.     FIL-Yen is subject to personal jurisdiction in this judicial district as it routinely conducted business in New York, New York, and purposely availed itself of the laws of the State of New York by conducting significant commercial activities in New York, New York, and derived significant revenue from New York, New York.  Specifically, FIL-Yen was managed out of FGG's New York City office, and the fund's investment manager, FGA, is located in New York, New York.

97.     Finally, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over FIL-Yen based on the fund's contacts with the U.S.

98.     **Fairfield Investment Trust ("FIT")**:  Defendant FIT is a multi-series unit trust established under the Trusts Law of the Cayman Islands on December 12, 2001.  Citco Trustees (Cayman) Limited acts as FIT's trustee, and the trust's registered office is located at Corporate Center, Windward One, West Bay Road, P.O. Box 31106 SMB, Grand Cayman, Cayman Islands, B.W.I.

99.     FIT has established at least two series trusts:  Fairfield GCI (USD) Fund and Fairfield GCI (JPY) Fund (the "FIT Funds").  The FIT Funds were created as funds of funds, and placed their investors' money with other hedge funds.  One of the hedge funds the FIT Funds invested in was Fairfield Sentry.

27

MADC1345_00000471

100.     Through Fairfield GCI (USD), FIT redeemed over $5.2 million from Fairfield

Sentry between 2003 and 2008.  (A true and accurate copy of Fairfield GCI (USD)'s redemption

confirmations is attached hereto as Ex. 16.)  Through Fairfield GCI (JPY), FIT redeemed

approximately $5.2 million from Fairfield Sentry between 2003 and 2007.  (A true and accurate

copy of Fairfield GCI (JPY)'s redemption confirmations is attached hereto as Ex. 17.)  Upon

information and belief, in order to pay these redemptions, Fairfield Sentry withdrew funds from

its BLMIS accounts.  As such, Fairfield GCI's redemptions constitute Customer Property subject

to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the

Trustee.

101.     FIT is subject to personal jurisdiction in this judicial district as it routinely

conducted business in New York, New York, purposely availed itself of the laws of the State of

New York by conducting significant commercial activities in New York, New York, and derived

significant revenue from New York, New York.  Specifically, FIT was managed out of FGG's

New York City office.

102.     Finally, where a federal statute provides for nationwide service of process, as does

Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal

jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has

personal jurisdiction over FIT based on the trust's contacts with the U.S.

103.     **FIF Advanced, Ltd. ("FIFA")**:  Defendant FIFA is an FGG fund partially

invested in Fairfield Sentry.  FIFA was created as a fund of funds, and placed its investors'

money with other hedge funds.  FIFA was incorporated as an international business company

under the laws of the British Virgin Islands.  Its registered office is located at Romasco Place,

28

MADC1345_00000472

Wickhams Cay 1, P.O. Box 3140, Road Town, Tortola, B.V.I. Noel sits on the fund's Board of Directors.

104.     Between 2004 and 2007, FIFA redeemed over $45.2 million from Fairfield Sentry. Its redemption of $4.6 million in October 2007 constituted a complete liquidation of its shares. (A true and accurate copy of FIFA's redemption confirmations is attached hereto as Ex. 18.) Upon information and belief, in order to pay these redemptions, Fairfield Sentry withdrew funds from its BLMIS accounts and then transferred the funds to FIFA. As such, FIFA's redemptions constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

105.     FIFA is subject to personal jurisdiction in this judicial district as it routinely conducted business in New York, New York, purposely availed itself of the laws of the State of New York by conducting significant commercial activities in New York, New York, and derived significant revenue from New York, New York. Specifically, FIFA was managed out of FGG's New York City office, and the fund's investment manager, FGA, is located in New York, New York.

106.     Finally, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S. Thus, this Court has personal jurisdiction over FIFA based on the fund's contacts with the U.S.

107.     **Sentry Select Limited ("SSL")**: Defendant SSL is an FGG fund partially invested in Fairfield Sentry. It was created as an international business company under the laws of the British Virgin Islands. Its principal business office is c/o Citco B.V.I. Limited, P.O. Box

29

662, Road Town, Tortola, B.V.I.  Noel serves on the fund's Board of Directors.

108.    SSL was created to allocate assets between two other FGG funds, Fairfield Sentry and Arlington International Fund ("AIF").  Eighty percent of the fund's assets were invested in Fairfield Sentry, and the remaining 20% went to AIF.

109.    SSL redeemed at least $60,000 from Fairfield Sentry in 2004, and may have redeemed additional shares in other years.  (A true and accurate copy of SSL's redemption request is attached hereto as Ex. 19.)  Upon information and belief, in order to pay these redemptions, Fairfield Sentry withdrew funds from its BLMIS accounts and then transferred the funds to SSL.  As such, SSL's redemptions constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

110.    SSL is subject to personal jurisdiction in this judicial district as it routinely conducted business in New York, New York, purposely availed itself of the laws of the State of New York by conducting significant commercial activities in New York, New York, and derived significant revenue from New York, New York.  Specifically, SSL was managed out of FGG's New York City office.

111.    Finally, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over SSL based on the fund's contacts with the U.S.

112.    **Stable Fund LP ("Stable Fund")**:  Defendant Stable Fund was an FGG fund partially invested in GS.  Stable Fund was created as a fund of funds, and placed its investors'

30

money with other hedge funds.  Stable Fund was a Delaware limited partnership with its registered office located at Fairfield Greenwich Partners, LLC, 919 Third Avenue, 11th Floor, New York, New York 10022.

113.    Upon information and belief, the only investors allowed to purchase limited partnership interests in Stable Fund were FGG partners and employees, and their respective spouses.

114.    In October 2008, Stable Fund redeemed $4.4 million from GS.  (A true and accurate copy of Stable Fund's redemption confirmation is attached hereto as Ex. 20.)  Upon information and belief, in order to pay this redemption, GS withdrew funds from its BLMIS accounts and then transferred the funds to Stable Fund.  As such, Stable Fund's redemption constitutes Customer Property subject to turnover to the Trustee and/or an avoidable subsequent transfer from BLMIS recoverable by the Trustee.

115.    Stable Fund is subject to personal jurisdiction in this judicial district as it routinely conducted business in New York, New York, purposely availed itself of the laws of the State of New York by conducting significant commercial activities in New York, New York, and derived significant revenue from New York, New York.  Specifically, Stable Fund was managed out of FGG's New York City office, and Stable Fund's general partner, Fairfield Greenwich Partners, LLC ("FGP") (*see infra* ¶¶163-167), is located in New York, New York.

116.    Finally, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over Stable Fund based on the fund's contacts with the U.S.

MADC1345_00000475

## 2.  FGG Investment Managers and Other Administrative Entities

117.  By marketing Madoff's strategy, the FGG investment managers and other FGG administrative entities received large sums of money.

118.  According to FGG's records, its assets under management increased as follows:

### Assets Under Management by FGG

| Year | AUM |
|------|------|
| 2002 | $5 billion |
| 2003 | $5 billion |
| 2004 | $8 billion |
| 2005 | $9 billion |
| 2006 | $10 billion |
| 2007 | $16 billion |
| 2008 | $14 billion |

119.  This growth in assets under management resulted in increasing fees to the various FGG investment managers and administration entities.  FGG later modified its fee structure to be among the most aggressive in the hedge fund industry.

120.  The Defendants established a broad network of investment managers and administrative entities in order to maximize fee revenue derived from BLMIS.  Those entities passed monies through two principal entities – FGB and FGL.  The FGG entities generated fees from their relationships with BLMIS totaling in excess of one billion dollars.

121.  **Fairfield Greenwich (Bermuda) Ltd. ("FGB")**:  Along with FGL, Defendant FGB is one of the two principal FGG operating entities.  FGB is a company incorporated in Bermuda on June 13, 2003, with its principal place of business at 131 Front Street, First Floor,

32

MADC1345_00000476

Hamilton, Bermuda, HM 11.  FGB's mailing address is 12 Church Street, Suite 606, Hamilton, Bermuda, HM 11.

122.    Prior to 2003, FGL served as the investment manager to Fairfield Sentry, Sigma, and Lambda.  In 2003 FGL assigned these management agreements to FGB.  A potential investor communicated his belief that the change in management structure was an "attempt by Madoff to avoid SEC scrutiny of his firm and market making activities.  This concern seems to be prevalent in Switzerland and has been expressed by a good number of other investor or potential investors in Fairfield Sentry."  (A true and accurate copy of the July 2, 2003 email to Tucker and Boele is attached hereto as Ex. 21.)

123.    FGB was, until 2007, a wholly-owned subsidiary of FGL.  In 2007, ownership of FGB was transferred from FGL to FGL's shareholders.  The shareholders included Fairfield International Managers, Inc. ("FIM") (36.8%) − co-owned by Noel and Tucker, Safehand Investment (27.5%) – owned exclusively by Piedrahita, and many of the other Management Defendants and Sales Defendants.  (A true and accurate copy of an excerpt from an FGG chart that contains the proposed shareholder register for FGL is attached hereto as Ex. 22.)

124.    FGB has been registered with the SEC as an investment adviser since at least 2003.  As a registered investment adviser, FGB filed Form 13Fs with the SEC.  FGB's 13Fs were signed by Defendant Mark McKeefry ("McKeefry"), as FGB's general counsel, from FGG's New York offices.

125.    FGB acted as the investment manager to Fairfield Sentry from July 1, 2003 to December 11, 2008.  As compensation for these services, FGB received a management fee equal to 1% of the net asset value of the fund, as well as a performance fee equal to 20% of net profits

MADC1345_00000477

from the fund. Unlike other hedge funds that paid fees on an annual basis, to increase the fees paid to FGB, Fairfield Sentry paid the management fee monthly and the performance fee quarterly.

126.    According to Fairfield Sentry's financial statements, between 2003 and the first half of 2008, FGB received the following fees from Fairfield Sentry:

**Fees Earned by FGB for Serving as Investment Manager to Fairfield Sentry[4]**

| Year | Management Fees | Performance Fees | Total Fees |
|------|----------------|-----------------|-----------|
| 2003 | $5,221,000 | $80,515,000 | $85,736,000 |
| 2004 | $21,549,000 | $81,278,000 | $102,827,000 |
| 2005 | $51,127,000 | $87,225,000 | $138,352,000 |
| 2006 | $50,465,000 | $107,779,000 | $158,244,000 |
| 2007 | $67,322,000 | $116,157,000 | $183,479,000 |
| 2008 | $36,134,000 | $46,070,000 | $82,204,000 |
| **TOTAL** | **$231,818,000** | **$519,024,000** | **$750,842,000** |

127.    Upon information and belief, in order to pay FGB's fees, Fairfield Sentry withdrew funds from BLMIS and then transferred the funds to FGB; as such, the fee payments constitute Customer Property subject to turnover to the Trustee and/or are avoidable subsequent transfers from BLMIS recoverable by the Trustee.

128.    FGB acted as manager to Irongate, for which it received a 0.8% management fee and 10% performance fee.  Irongate's financial statements indicate these fees totaled:

---

[4]      All fees described herein have been rounded here to the nearest thousand.

34

MADC1345_00000478

**Fees Earned by FGB While Serving as Manager to Irongate**

| Year | Management Fees | Performance Fees | Total Fees |
|------|-----------------|------------------|------------|
| 2005 | $2,387,000 | $2,532,000 | $4,918,000 |
| 2006 | $7,493,000 | $7,986,000 | $15,479,000 |
| 2007 | $14,189,000 | $18,012,000 | $32,201,000 |
| **TOTAL** | **$24,069,000** | **$28,529,000** | **$52,599,000** |

129.    Upon information and belief, in order to pay FGB's fees, Irongate redeemed shares of Fairfield Sentry.  In order to pay Irongate's redemptions, Fairfield Sentry withdrew funds from BLMIS and transferred the funds to Irongate, which in turn transferred the funds to FGB to pay its fees.  As such, the Irongate redemptions and FGB fee payments constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

130.    FGB also served as general partner to GS and GSP.  In its role as general partner, FGB was responsible for directing GS's and GSP's investment and trading activities.  FGB began serving as general partner to GS on June 13, 2003, and continued to serve in that capacity until 2004.  GBL served as GS's general partner between 2004 and 2006.  FGB then resumed as general partner in 2006.  The performance fees for 2004 and 2006 were split between GBL and FGB based upon when each served as general partner.  FGB has served as general partner to GSP since the fund commenced operations on May 1, 2006.

131.    FGB earned management and performance fees from GS and GSP.  In 2003, as general partner to GS, FGB earned a performance fee equal to 20% of capital appreciation and a management fee equal to 0.1% of assets under management.  The management fee was removed in 2004, and the 0.1% fee was instead passed along to FGA for expense reimbursement.  After GSP was created in 2006, FGB returned as GS's general partner and began charging an increased

35

management fee equal to 1% of the assets under management, in addition to the 20%

performance fee, for both GS and GSP.  GS's and GSP's financial statements indicate FGB

earned the following fees while serving as general partner to GS and GSP:

**Fees Earned by FGB While Serving as General Partner to GS**

| Year | Management Fees | Performance Fees | Total Fees |
|------|----------------|------------------|------------|
| 2003 | $59,000 | $2,620,000 | $2,679,000 |
| 2004 | N/A | $2,644,000 | $2,644,000 |
| 2005 | N/A | N/A | N/A |
| 2006 | $282,000 | $2,929,000 | $3,211,000 |
| 2007 | $987,000 | $3,054,000 | $4,041,000 |
| **TOTAL** | **$1,328,000** | **$11,247,000** | **$12,575,000** |

**Fees Earned by FGB While Serving as General Partner to GSP**

| Year | Management Fees | Performance Fees | Total Fees |
|------|----------------|------------------|------------|
| 2006 | $16,000 | $93,000 | $109,000 |
| 2007 | $57,000 | $186,000 | $243,000 |
| **TOTAL** | **$73,000** | **$278,000** | **$351,000** |

132.    Upon information and belief, FGB received the management fees and

performance fees in the form of limited partnership interests.  During the years in which FGB

served as general partner to GS and GSP, FGB redeemed limited partnership interests worth:

**Redemptions from GS by FGB**

| Year | Redemptions by FGB |
|------|--------------------|
| 2003 | $2,500,000 |
| 2004 | $4,000,000 |
| 2005 | $0 |
| 2006 | $4,200,000 |
| 2007 | $3,304,000 |
| 2008 | $259,000 |
| **TOTAL** | **$14,263,000** |

MADC1345_00000480

**Redemptions from GSP by FGB**

| Year | Redemptions by FGB |
|------|-------------------|
| 2006 | $0 |
| 2007 | $248,000 |
| 2008 | $40,000 |
| **TOTAL** | **$288,000** |

133.    Upon information and belief, in order to pay FGB's fees and redemptions, GS and GSP withdrew funds from BLMIS and transferred the funds to FGB.  As such, FGB's redemptions and fee payments constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.  In addition, as the general partner to GS and GSP, FGB is liable for the repayment of GS's and GSP's debts and obligations.  During the years in which FGB acted as general partner, GS withdrew more than $124.0 million from BLMIS, and GSP withdrew more than $6.0 million.  FGB is directly liable for the repayment of these withdrawals which constitute Customer Property subject to turnover to the Trustee and/or avoidable transfers recoverable by the Trustee.

134.    FGB is subject to personal jurisdiction in this judicial district as it routinely conducted business in New York, New York, purposely availed itself of the laws of the State of New York by conducting significant commercial activities in New York, New York, and derived significant revenue from New York, New York.  Specifically, FGB was managed out of FGG's New York City office.  In addition, FGB filed customer claims, whereby it submitted to the jurisdiction of this Court.

135.    Finally, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal

37

MADC1345_00000481

jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over FGB based on the entity's contacts with the U.S.

136.   **Fairfield Greenwich Limited ("FGL")**:  Defendant FGL was originally incorporated under the laws of Ireland in 1997 and was reorganized as a Cayman Islands limited liability company on January 1, 2002.  FGL's mailing address is c/o Charles, Adams, Ritchie & Duckworth, Second Floor, Zephyr House, P.O. Box 709, George Town, Grand Cayman, Cayman Islands, B.W.I.  FGL is registered to do business in the State of New York and lists its principal executive office as FGG's offices in New York, New York.

137.   FGL owned 100% of FGA and, until 2007, owned 100% of FGB.  FGL was also a 100% owner of Fairfield Heathcliff Capital LLC ("FHC") (*see infra* ¶¶168-172).  As owner of these entities, FGL received the benefit of fees these entities earned through their association with the Feeder Funds.

138.   FGL served as investment manager and placement agent to a number of FGG funds.  Between 1999 and 2003, FGL acted as investment manager to Fairfield Sentry.  In this capacity, FGL received a 20% performance fee.  In 2002 and 2003, FGL also received a 1% management fee.  In total, according to Fairfield Sentry's financial statements, FGL received the following fees:

MADC1345_00000482

**Fees Earned by FGL While Serving as Investment Manager to Fairfield Sentry**

| Year | Management Fees | Performance Fees | Total Fees |
|------|-----------------|------------------|------------|
| 1999 | N/A | $68,833,000 | $68,833,000 |
| 2000 | N/A | $73,575,000 | $73,575,000 |
| 2001 | N/A | $84,664,000 | $84,664,000 |
| 2002 | $3,844,000 | $83,591,000 | $87,435,000 |
| 2003 | $5,221,000 | $80,515,000 | $85,736,000 |
| **TOTAL** | **$9,065,000** | **$391,178,000** | **$400,243,000** |

139.    Based upon information and belief, in order to pay FGL's fees, Fairfield Sentry

withdrew funds from its BLMIS account and then transferred the funds to FGL.  As such, FGL's

fees constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent

transfers from BLMIS recoverable by the Trustee.

140.    In addition, FGL served as the investment adviser to the FIT Funds, for which it

received a 0.1% expense reimbursement, and as the placement agent to FIFL and FIFA, for

which it received a 1% placement fee.  FIFL's financial statements show FGL earned placement

fees totaling:

**Fees Earned by FGL While Serving as Placement Agent to FIFL**

| Year | Placement Fees |
|------|----------------|
| 2005 | $9,070,000 |
| 2006 | $5,409,000 |
| 2007 | $4,985,000 |
| **TOTAL** | **$19,464,000** |

141.    Based upon information and belief, in order to pay FGL's fees, FIFL redeemed

shares of Fairfield Sentry.  In order to pay FIFL's redemptions, Fairfield Sentry withdrew funds

from BLMIS and then transferred the funds to FIFL, which in turn transferred the funds to FGL.

39

MADC1345_00000483

As such, FIFL's redemptions and FGL's fees constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

142.    FGL also served as general partner to GS from 1999 to 2003, for which it earned a 20% performance fee.  Financial statements for GS indicate these fees totaled:

**Fees Earned by FGL While Serving as General Partner to GS**

| Year | Performance Fees |
|------|------------------|
| 1999 | $3,406,000 |
| 2000 | $3,252,000 |
| 2001 | $3,144,000 |
| 2002 | $2,736,000 |
| 2003 | $2,620,000 |
| **TOTAL** | **$15,158,000** |

143.    FGL and FGB each acted as general partner of GS for half of 2003.  The fees paid in 2003 were split between FGL and FGB based upon when each served as general partner.

144.    FGL received its performance fees in the form of limited partnership interests, of which it redeemed the following amounts:

**Redemptions from GS by FGL**

| Year | Redemptions by FGL |
|------|--------------------|
| 1999 | $1,725,000 |
| 2000 | $1,850,000 |
| 2001 | $12,129,000 |
| 2002 | $895,000 |
| 2003 | $2,500,000 |
| **TOTAL** | **$19,099,000** |

145.    Upon information and belief, in order to pay FGL's redemptions, GS withdrew funds from BLMIS and transferred the funds to FGL.  As such, FGL's redemptions constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from

MADC1345_00000484

BLMIS recoverable by the Trustee.  In addition, as general partner to GS, FGL is directly liable for the repayment of GS's withdrawals from 1999 to 2003, totaling in excess of $58.0 million, which constitute Customer Property subject to turnover to the Trustee and/or avoidable transfers recoverable by the Trustee.

146.    FGL is subject to personal jurisdiction in this judicial district as it routinely conducted business in New York, New York, purposely availed itself of the laws of the State of New York by undertaking significant commercial activities in New York, New York, and derived significant revenue from New York, New York.  Specifically, FGL was managed out of FGG's New York City office.  In addition, FGL is licensed to do business in the State of New York and maintained its principal executive office in New York, New York.

147.    Finally, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over FGL based on the entity's contacts with the U.S.

148.    **Fairfield Greenwich Advisors LLC ("FGA")**:  Defendant FGA is a Delaware limited liability company and a wholly-owned subsidiary of FGL.  FGA is also registered as an investment adviser with the SEC.  Its offices are located in New York, New York.

149.    FGA provided administrative services and back-office support to GS, GSP, Sigma, and Lambda.  According to financial statements issued by those funds, FGA received the following fees:

41

**Fees Earned by FGA for Providing Administrative Services to GS**

| Year | Fees |
|---|---|
| 2004 | $41,000 |
| 2005 | $171,000 |
| 2006 | $137,000 |
| 2007 | $109,000 |
| **TOTAL** | **$458,000** |

150.    Based upon information and belief, in order to pay FGA's fees, GS withdrew funds from its BLMIS account and then transferred the funds from BLMIS to FGA.  As such, GS's withdrawals and FGA's fees constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

**Fees Earned by FGA for Providing Administrative Services to GSP**

| Year | Fees |
|---|---|
| 2006 | $4,000 |
| 2007 | $7,000 |
| **TOTAL** | **$11,000** |

151.    Based upon information and belief, in order to pay FGA's fees, GSP withdrew funds from its BLMIS account and then transferred the funds from BLMIS to FGA.  As such, FGA's fees constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

**Fees Earned by FGA for Providing Administrative Services to Sigma**

| Year | Fees |
|---|---|
| 2003 | € 247,200 |
| 2004 | € 247,000 |
| 2005 | € 459,000 |
| 2006 | € 562,000 |
| 2007 | € 960,000 |
| **TOTAL** | **€ 2,273,000** |

42

**Fees Earned by FGA for Providing Administrative Services to Lambda**

| Year | Fees |
|------|------|
| 2004 | CHF 59,000 |
| 2005 | CHF 72,000 |
| 2006 | CHF 61,000 |
| 2007 | CHF 61,000 |
| **TOTAL** | **CHF 254,000** |

152.    Upon information and belief, in order to pay FGA's fees, Sigma and Lambda redeemed shares of Fairfield Sentry.  Upon information and belief, in order to pay Sigma's and Lambda's redemptions, Fairfield Sentry withdrew funds from BLMIS and transferred the funds to Sigma and Lambda.  In turn, Sigma and Lambda transferred the funds to FGA.  As such, Sigma's and Lambda's redemptions and FGA's fees constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

153.    FGA provided similar services to SSL, for which it received a fee equal to 0.1% of assets under management.

154.    FGA also served as investment manager to a number of FGG funds.  These funds included:  Chester LP, for which FGA received a management fee equal to 0.8%; Stable Fund, for which FGA received a 1% management fee; FIL-Yen, for which FGA received a 0.1% expense reimbursement; FIL-Swiss, for which FGA received a 0.1% expense reimbursement; and FIFL and FIFA, for which FGA received an expense reimbursement of 0.15% and 0.1%, respectively.

155.    Upon information and belief, some if not all of these fees were paid with funds originally withdrawn from the Feeder Funds' accounts at BLMIS.  As such, these fees constitute

43

MADC1345_00000487

Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

156.     FGA is subject to personal jurisdiction in this judicial district as it routinely conducted business in New York, New York, purposely availed itself of the laws of the State of New York by undertaking significant commercial activities in New York, New York, and derived significant revenue from New York, New York.  Specifically, FGA's principal place of business is located in New York, New York.

157.     Finally, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over FGA based on the entity's contacts with the U.S.

158.     **Fairfield Greenwich GP, LLC ("FGGP")**:  Defendant FGGP is a Delaware limited liability company.  Its principal office is located at 575 Madison Avenue, New York, New York 10022.  FGGP is a wholly-owned subsidiary of FGL.

159.     FGGP acted as general partner to Chester LP, for which it earned a 10% performance fee in the form of limited partnership interests in Chester LP.  Upon information and belief, FGGP redeemed some of the limited partner interests it received as payment from Chester LP.  Chester LP was invested in Fairfield Sentry.  In order to pay FGGP's redemptions, Chester LP redeemed shares of Fairfield Sentry.  Upon information and belief, to pay Chester LP's redemptions Fairfield Sentry withdrew funds from BLMIS and then Chester transferred the funds to FGGP.  As such, the redemptions FGGP received from Chester LP constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS

44

MADC1345_00000488

recoverable by the Trustee.

160.    Because FGGP served as general partner to Chester LP, it is directly liable for all avoidable transfers from BLMIS to Chester LP.

161.    FGGP is subject to personal jurisdiction in this judicial district as it routinely conducted business in New York, New York, purposely availed itself of the laws of the State of New York by undertaking significant commercial activities in New York, New York, and derived significant revenue from New York, New York.  Specifically, FGGP's principal place of business is located in New York, New York.

162.    Finally, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over FGGP based on the entity's contacts with the U.S.

163.    **Fairfield Greenwich Partners, LLC ("FGP")**:  Defendant FGP is a Delaware limited liability company organized in 2003.  Its principal office is located at 575 Madison Avenue, New York, New York.

164.    FGP acted as general partner to Stable Fund, for which it received a 10% performance fee in the form of limited partnership interests in Stable Fund.  Upon information and belief, FGP redeemed some of the limited partnership interests it received as payment from the Stable Fund.  As explained above, Stable Fund was partially invested in GS.  Upon information and belief, in order to pay the Stable Fund redemptions, GS withdrew funds from BLMIS and then Stable Fund transferred the funds to FGP.  As such, FGP's redemptions

45

MADC1345_00000489

constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

165.   Because FGP served as general partner to Stable Fund, it is directly liable for all amounts Stable Fund redeemed from GS.  Upon information and belief, some if not all of those redemptions were paid by funds withdrawn from GS's accounts at BLMIS.  As such, they constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

166.   FGP is subject to personal jurisdiction in this judicial district as it routinely conducted business in New York, New York, purposely availed itself of the laws of the State of New York by undertaking significant commercial activities in New York, New York, and derived significant revenue from New York, New York.  Specifically, FGP was managed out of FGG's New York City office and maintained its principal place of business in New York, New York.

167.   Finally, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over FGP based on the entity's contacts with the U.S.

168.   **Fairfield Heathcliff Capital LLC ("FHC")**:  Defendant FHC is a Delaware limited liability company and a broker-dealer registered with the SEC.  It is also an affiliate of FGGP.

46

169.    FHC served as placement agent to Chester LP and oversaw the marketing of the

fund's limited partnership interests.  As placement agent, FHC received a fee equal to 5% of the

capital contributions it solicited.

170.    Upon information and belief, some if not all of these fees were paid with funds

that were originally withdrawn from the Feeder Funds' accounts at BLMIS.  As such, FHC's

fees constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent

transfers from BLMIS recoverable by the Trustee.

171.    FHC is subject to personal jurisdiction in this judicial district as it routinely

conducted business in New York, New York, purposely availed itself of the laws of the State of

New York by undertaking significant commercial activities in New York, New York, and

derived significant revenue from New York, New York.  Specifically, FHC was managed out of

FGG's New York City office.

172.    Finally, where a federal statute provides for nationwide service of process, as does

Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal

jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has

personal jurisdiction over FHC based on the entity's contacts with the U.S.

173.    **Fairfield International Managers, Inc. ("FIM")**:  Defendant FIM is a Delaware

corporation formed on January 4, 1988.  The purpose of FIM is to act as an investment manager

and to engage in all phases of the securities business.

47

174.    The original directors of FIM were Noel, Tucker, and Kolber, who later left FIM. As of 2003, Defendants Noel and Tucker each owned 50% of the shares of FIM.  FIM owns significant shares in both FGB and FGL.

175.    FIM received funds from the Feeder Funds' BLMIS accounts through its direct and indirect ownership of FGB and FGL.  Upon information and belief, some, if not all, of the monies paid to FIM were paid with funds that were originally withdrawn from the Feeder Funds' accounts at BLMIS.  As such, they constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

176.    FIM is subject to personal jurisdiction in this judicial district as it routinely conducted business in New York, New York, purposely availed itself of the laws of the State of New York by undertaking significant commercial activities in New York, New York, and derived significant revenue from New York, New York.  Specifically, FIM was managed out of FGG's New York City office.

177.    Finally, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over FIM based on the entity's contacts with the U.S.

178.    **Fairfield Greenwich (UK) Limited ("Fairfield-UK")**:  Defendant Fairfield-UK is an FGG entity incorporated in England and Wales in 1997.  Its registered office is located at Fifth Floor, 32 Dover Street, London W1X 3RA, England.

MADC1345_00000492

179.     Fairfield-UK served as investment manager to Chester, for which it received fees

from Chester Management.  Fairfield-UK also served as investment manager to FGF.

Depending on the FGF share class Fairfield-UK received a management fee of between 0.55%

and 1%, a performance fee of between 0% and 10%, and an expense reimbursement equal to

0.1%.

180.     Upon information and belief, some if not all of Fairfield-UK's fees were paid with

funds that were originally withdrawn from the Feeder Funds' accounts at BLMIS.  As such, they

constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent

transfers from BLMIS recoverable by the Trustee.

181.     Fairfield-UK is subject to personal jurisdiction in this judicial district as it

routinely conducted business in New York, New York, purposely availed itself of the laws of the

State of New York by undertaking significant commercial activities in New York, New York,

and derived significant revenue from New York, New York.  Specifically, Fairfield-UK was

managed out of FGG's New York City office.

182.     Finally, where a federal statute provides for nationwide service of process, as does

Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal

jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has

personal jurisdiction over Fairfield-UK based on the entity's contacts with the U.S.

183.     **Greenwich Bermuda Limited ("GBL")**:  Defendant GBL is a Bermuda

corporation.  GBL served as the general partner of GS from December 23, 2004 to March 1,

2006.  GS's financial statements indicate that, during that time, GBL earned the following

performance fees:

49

**Fees Earned by GBL While Serving as General Partner to GS**

| Year | Performance Fees |
|---|---|
| 2004 | $2,644,000 |
| 2005 | $2,451,000 |
| 2006 | $2,929,000 |
| **TOTAL** | **$8,024,000** |

184.    The performance fees for 2004 and 2006 were split between GBL and FGB based upon when each served as general partner.

185.    GBL received its fees in the form of limited partnership interests in GS.  Upon information and belief, GBL redeemed some of its GS limited partnership interests.  Upon information and belief, in order to pay GBL's redemptions, GS withdrew funds from its BLMIS account and then transferred the funds to GBL.  As such, they constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

186.    GBL is subject to personal jurisdiction in this judicial district as it routinely conducted business in New York, New York, purposely availed itself of the laws of the State of New York by undertaking significant commercial activities in New York, New York, and derived significant revenue from New York, New York.  Specifically, GBL was managed out of FGG's New York City office.

187.    Finally, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over GBL based on the entity's contacts with the U.S.

MADC1345_00000494

188.    **Chester Management (Cayman) Limited ("Chester Management")**:

Defendant Chester Management is an FGG entity incorporated in the Cayman Islands on

February 12, 2003 as a limited liability company.  Its registered office is located at P.O. Box 309,

Ugland House, George Town, Cayman Islands, B.W.I.

189.    Chester Management served as manager to Chester, for which it received a 0.8%

management fee and 10% performance fee.   According to Chester's financial statements,

between 2003 and 2007, these fees totaled:

**Fees Earned by Chester Management While Serving as Manager to Chester**

| Year | Management Fees | Performance Fees | Total Fees |
|------|-----------------|------------------|------------|
| 2003 | $1,322,000 | $1,404,000 | $2,726,000 |
| 2004 | $6,017,000 | $4,788,000 | $10,804,000 |
| 2005 | $8,292,000 | $8,997,000 | $17,289,000 |
| 2006 | $13,442,000 | $14,004,000 | $27,446,000 |
| 2007 | $18,400,000 | $20,330,000 | $38,730,000 |
| **TOTAL** | **$47,472,000** | **$49,523,000** | **$96,995,000** |

190.    Upon information and belief, some if not all of these fees were paid with funds

that were originally withdrawn from the Feeder Funds' accounts at BLMIS.  As such, they

constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent

transfers from BLMIS recoverable by the Trustee.

191.    Chester Management is subject to personal jurisdiction in this judicial district as it

routinely conducted business in New York, New York, purposely availed itself of the laws of the

State of New York by undertaking significant commercial activities in New York, New York,

and derived significant revenue from New York, New York.  Specifically, Chester Management

was managed out of FGG's New York City office.

51

MADC1345_00000495

192.     Finally, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over Chester Management based on the entity's contacts with the U.S.

### 3.        Management Defendants

193.     **Walter Noel**:  Defendant Noel is a founding partner of FGG and sat on its Board of Directors.  He also served as a director of Fairfield Sentry, Sigma, and FGB and as a general partner to GS from 1992 to 1998.  Noel is also an indirect shareholder in FGB.

194.     As one of FGG's founding partners, Noel was intimately involved with its operations.  Noel made day-to-day management decisions regarding the Feeder Funds and the FGG Affiliates.  He was also involved in marketing the Feeder Funds, as well as the preparation and review of sales and marketing materials.

195.     As further described below, Noel was acutely aware of many facts and red flags, that put him on actual and/or inquiry notice that BLMIS was engaging in fraud, and yet failed to conduct any proper, independent and reasonable due diligence or follow up.

196.     Noel and his immediate and extended family became exceptionally wealthy due to FGG's *de facto* partnership with Madoff.  Noel took for himself and his family hundreds of millions of dollars of Customer Property in the form of fees and profits.  This unjust enrichment enabled him, and his family, to live what has been publicly described as a life of grandeur, including a mansion in Greenwich, Connecticut, a tropical retreat in Mustique, and extravagant vacation homes in Palm Beach and Southampton.  (A true and accurate copy of the April 2009 Vanity Fair article entitled, "Greenwich Mean Time," is attached hereto as Ex. 23.)

MADC1345_00000496

197.    Partners of FGG received three types of compensation.  In addition to standard salaries and bonuses, they also received "partnership distributions."  Each partner was assigned a specific percentage of the profits earned from all of the FGG entities.  When the profits were gathered, they were then distributed to the partners based on their percentage allocation.

198.    As a founding partner, Noel received some of the largest distributions.  Between 2002 and 2008 alone, Noel received the following partnership distributions:  $11.4 million in 2002, $10.6 million in 2003, $21.7 million in 2004, $25.4 million in 2005, $29.7 million in 2006, $28.2 million in 2007, and $12.3 million in 2008, for a total of approximately $114 million between 2002 and 2008.  Upon information and belief, Noel received these distributions, as well as additional compensation in the form of salary and bonuses, during each year the Feeder Funds maintained accounts at BLMIS.

199.    Upon information and belief, Noel and his family also received the benefit of redemptions from GS made by the Walter M. Noel Jr. IRA and the Noel Family, LLC.  Upon information and belief, the former redeemed $2.5 million in 2006, and the latter redeemed $400,000 in 2008.  In addition, as an indirect shareholder in FGL and FGB, Noel received the benefit of many payments to FGL and FGB, which were paid by funds withdrawn from the Feeder Funds' BLMIS accounts.

200.    Upon information and belief, some if not all of the above-referenced payments and distributions were made with funds that were originally withdrawn from the Feeder Funds' accounts at BLMIS.  As such, they constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

MADC1345_00000497

201.     Noel is also personally responsible for repayment to the Trustee of all avoidable
transfers received by GS while he was the general partner.  During that time, between 1992 and
1998, GS redeemed approximately $37 million from its BLMIS account.

202.     Noel is subject to personal jurisdiction in this judicial district as he routinely
conducted business in New York, New York, purposely availed himself of the laws of the State
of New York by conducting significant commercial activities in New York, New York, and
derived significant income from New York, New York.  In addition, Noel filed customer claims,
whereby he submitted to the jurisdiction of this Court.  Finally, where a federal statute provides
for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy
Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts
with the U.S.  Thus, this Court has personal jurisdiction over Noel based on his contacts with the
U.S.

203.     **Jeffrey Tucker**:  Defendant Tucker is a founding partner of FGG and sits on its
Board of Directors.  He served as a director of FGB and FGL, and as a principal of FGL.  He
also served, along with Noel, as general partner of GS from 1992 to 1998.  Tucker is an indirect
shareholder in FGB.

204.     Tucker was intimately involved with FGG's operations, including the operation of
the Feeder Funds.  As a director, Tucker was involved in making day-to-day management
decisions regarding the Feeder Funds and the FGG Affiliates.  He also reviewed and helped
prepare sales and marketing materials.

54

MADC1345_00000498

205.    As further described below, Tucker was acutely aware of many facts and red flags, that put him on actual and/or inquiry notice that BLMIS was engaging in fraud, and yet failed to conduct any proper, independent and reasonable due diligence or follow up.

206.    Tucker and his immediate and extended family became exceptionally wealthy due to FGG's *de facto* partnership with Madoff.  Prized racehorses, private jets, and luxurious mansions were just a few of the riches amassed by Tucker from management and partnership fees received for facilitating the fraud.

207.    Tucker received substantial partnership distributions, including $11.4 million in 2002, $10.6 million in 2003, $21.7 million in 2004, $25.4 million in 2005, $29.7 million in 2006, $28.2 million in 2007, and $12.3 million in 2008, for a total of approximately $114 million between 2002 and 2008.  Upon information and belief, Tucker received these distributions, as well as additional compensation in the form of salaries and bonuses, during each year FGG maintained accounts with BLMIS beginning from 1990 forward.

208.    In addition, as an indirect shareholder in FGL and FGB, Tucker received the benefit of many payments to FGL and FGB which were paid by funds withdrawn from the Feeder Funds' BLMIS accounts.  Tucker is also personally responsible for repayment to the Trustee of any avoidable transfers received by GS while he was the general partner.

209.    Upon information and belief, some if not all of the above-referenced payments and distributions were made with funds that were originally withdrawn from the Feeder Funds' accounts at BLMIS.  As such, they constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

55

MADC1345_00000499

210.    Tucker is subject to personal jurisdiction in this judicial district as he routinely conducted business in New York, New York, purposely availed himself of the laws of the State of New York by conducting significant commercial activities in New York, New York, and derived significant income from New York, New York.  In addition, Tucker is subject to personal jurisdiction in this judicial district as he is a resident of New York, New York, and Tucker filed a customer claim, whereby he submitted to the jurisdiction of this Court.  Finally, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over Tucker based on his contacts with the U.S.

211.    **Andrés Piedrahita**:  Defendant Piedrahita is a founding partner of FGG, a member of the Board of Directors, and Chairman of its Executive Committee.  He has served on FGG's Executive Committee since its inception in 2007.   He also served as Director and President of FGB and owned, directly or indirectly, between 10% and 25% of FGB.  In 2007 and 2008, Piedrahita was the highest paid partner at FGG.

212.    Piedrahita was intimately involved with FGG's operations, including the operations of the Feeder Funds.  As a member of the Executive Committee and Chairman of the Board of Directors, Piedrahita was deeply involved in making day-to-day management decisions regarding the FGG entities.

213.    As further described below, Piedrahita was acutely aware of many facts and red flags, that put him on actual and/or inquiry notice that BLMIS was engaging in fraud, and yet failed to conduct any proper, independent and reasonable due diligence or follow up.

56

214.    Piedrahita became exorbitantly rich by serving as a Madoff globetrotting salesman.  According to published reports, he lived a whirlwind lifestyle of Gulfstream jets, multi-million dollar yachts, extravagant parties, pheasant hunting with royalty, and spent tens of millions of dollars on homes around the world.  (A true and accurate copy of the March 31, 2009 Wall Street Journal article entitled, "The Charming Mr. Piedrahita Finds Himself Caught in the Madoff Storm," is attached hereto as Ex. 24.)  Public comments attributed to Piedrahita such as "[my job was] 'to live better than any of my clients,'" (*id.*) manifest his prevailing motivation – do nothing that might upset the Madoff relationship that made his lavish lifestyle possible.  His motivation was one of limitless greed, without regard for any interest other than his own.

215.    Piedrahita received substantial partnership distributions including approximately $9.4 million in 2002, $12.3 million in 2003, $21.3 million in 2004, $25.1 million in 2005, $31.6 million in 2006, $36.0 million in 2007, and $26.4 million in 2008, for a total of approximately $162 million between 2002 and 2008.  Upon information and belief, Piedrahita has received these distributions, as well as additional compensation in the form of salaries and bonuses, every year since he joined FGG in 1997.

216.    As a direct or indirect shareholder of FGL and FGB, Piedrahita received the benefit of many payments to FGL and FGB which were paid by funds withdrawn from the Feeder Funds' BLMIS account.

217.    Upon information and belief, some if not all of the above-referenced payments and distributions were made with funds that were originally withdrawn from the Feeder Funds' BLMIS accounts.  As such, they constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

MADC1345_00000501

218.    Piedrahita is subject to personal jurisdiction in this judicial district as he routinely conducted business in New York, New York, purposely availed himself of the laws of the State of New York by conducting significant commercial activities in New York, New York, and derived significant income from New York, New York.  In addition, Piedrahita routinely received payments from FGG's New York City office and regularly attended meetings of FGG's Executive Committee and Board of Directors in New York, New York.  Finally, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over Piedrahita based on his contacts with the U.S.

219.    **Mark McKeefry**:  Defendant McKeefry joined FGG in 2003.  He became a partner in 2005 and served on FGG's Executive Committee since its inception in 2007.  He also acted as FGG's Chief Compliance Officer; FGB's Chief Legal Officer ("CLO"), Assistant Secretary, and Director; FGL's Executive Director, Chief Operating Officer, President, and Vice President; FGA's President; and Director of Fairfield-UK.  As FGG's CLO, McKeefry was responsible for legal and compliance issues.  He was also responsible for maintaining FGG's relationship with Madoff in 2007 and 2008.

220.    In his role as CLO, as well as in his numerous other roles within the FGG entities, McKeefry was responsible for approving and signing various documents on FGG's behalf.  Such documents included:  letters to investors;  Form 13F filings with the SEC; agreements with BLMIS, including customer agreements and option-trading agreements; Form ADV Applications for Investment Adviser Registration; subscription agreements; confidentiality agreements;

MADC1345_00000502

distribution agreements; letters of understanding; written resolutions; delegation agreements; selling agreements; and certificates of incumbency.

221.    As further described below, McKeefry was acutely aware of many facts and red flags, that put him on actual and/or inquiry notice that BLMIS was engaging in fraud, and yet failed to conduct any proper, independent and reasonable due diligence or follow up.

222.    McKeefry benefited greatly from FGG's *de facto* partnership with Madoff. McKeefry received approximately $600,000 in partnership distributions in 2005, $1.6 million in 2006, $3.4 million in 2007, and $3.4 million in 2008, for a total of $9.0 million between 2005 and 2008. Upon information and belief, McKeefry also received significant salary and bonuses.

223.    Upon information and belief, some if not all of the above-referenced payments and distributions were made with funds originally withdrawn from the Feeder Funds' BLMIS accounts. As such, they constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

224.    McKeefry is subject to personal jurisdiction in this judicial district as he routinely conducted business in New York, New York, purposely availed himself of the laws of the State of New York by conducting significant commercial activities in New York, New York, and derived significant income from New York, New York. In addition, upon information and belief, McKeefry is a resident of New York, New York. Finally, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S. Thus, this Court has personal jurisdiction over McKeefry based on his contacts with the U.S.

59

MADC1345_00000503

225.   **Daniel Lipton ("Lipton")**:  Defendant Lipton joined FGG in 2002.  During his employment with FGG, he served as Chief Financial Officer ("CFO") and Assistant Secretary of FGB, and Vice President and CFO of FGA.  Lipton has been a partner of FGG since 2005.

226.   As CFO, Lipton was principally responsible for overseeing the annual FGG audits.  Lipton also assisted in managing FGG's operations, including:  authorizing and requesting wire transfers into FGG accounts; communicating with FGG investors regarding audits of FGG's financial statements; and approving and signing numerous documents on FGG's behalf.  Such documents included:  letters to clients regarding amendments to their agreements with FGG and their statements for various FGG funds; the Feeder Funds' customer, option, and trading authorization agreements with BLMIS; numerous loan requests on behalf of FGG; agreements establishing FGG entities as investment managers and placement agents; requests for wire transfers redeeming money from the Feeder Funds' BLMIS accounts; and letters requesting a confirmation of assets in a number of the Funds.

227.   As further described below, Lipton was acutely aware of many facts and red flags, that put him on actual and/or inquiry notice that BLMIS was engaging in fraud, and yet failed to conduct any proper, independent and reasonable due diligence or follow up.

228.   As a partner, Lipton was compensated handsomely due to FGG's relationship with Madoff.  Lipton received partnership distributions of $200,000 in 2005, $757,000 in 2006, $1.8 million in 2007, and $1.1 million in 2008, for a total of approximately $3.8 million between 2005 and 2008.  Upon information and belief, Lipton also received significant salary and bonuses.

60

MADC1345_00000504

229.    Upon information and belief, some if not all of the above-referenced payments and distributions were made with funds that were originally withdrawn from the Feeder Funds' BLMIS accounts.  As such, they constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

230.    Lipton is subject to personal jurisdiction in this judicial district as he routinely conducted business in New York, New York, purposely availed himself of the laws of the State of New York by conducting significant commercial activities in New York, New York, and derived significant income from New York, New York.  In addition, upon information and belief, Lipton is a resident of New York, New York.  Finally, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over Lipton based on his contacts with the U.S.

231.    **Amit Vijayvergiya ("Vijayvergiya")**:  Defendant Vijayvergiya joined FGG on June 9, 2003 as FGB's Risk Manager.  He quickly became a key player at FGB, and held the title of Vice President and Head of Risk Management in 2005, where he focused primarily on hedge fund manager selection and risk management.  On January 1, 2007, Vijayvergiya became a partner and Head of FGG's Risk Management Division in the Investment Group, reporting directly to the Executive Committee.

232.    Vijayvergiya was responsible for conducting due diligence, initial risk modeling and ongoing risk analysis on investments, fund operations services, supervising staff, and shareholder communications.  He was also charged with assessing the risk of the Feeder Fund

61

investments.  (A true and accurate copy of Vijayvergiya's employment offer letter is attached hereto as Ex. 25.)

233.    As further described below, Vijayvergiya was acutely aware of many facts and red flags, that put him on actual and/or inquiry notice that BLMIS was engaging in fraud, and yet failed to conduct any proper, independent and reasonable due diligence or follow up.

234.    FGG's *de facto* partnership with Madoff proved lucrative for Vijayvergiya.  After becoming a partner, Vijayvergiya received partnership distributions of $1.8 million in 2007 and $800,000 in 2008.  Upon information and belief, Vijayvergiya also received significant salary and bonuses.

235.    Upon information and belief, some if not all of the above-referenced payments and distributions were made with funds that were originally withdrawn from the Feeder Funds' BLMIS accounts.  As such, they constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

236.    Vijayvergiya is subject to personal jurisdiction in this judicial district as he routinely conducted business in New York, New York, purposely availed himself of the laws of the State of New York by conducting significant commercial activities in New York, New York, and derived significant income from New York, New York.  In addition, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over Vijayvergiya based on his contacts with the U.S.

MADC1345_00000506

237.    **Gordon McKenzie ("McKenzie")**:  Defendant McKenzie was a Director and

Controller at FGB, and a member of the Fund Accounting Division in FGG's Operations Group.

McKenzie joined FGG in 2003.

238.    McKenzie was responsible for accounting and back-office operations for Fairfield

Sentry, Sigma, Lambda, Chester, and Irongate.  He joined FGG as a Finance Associate and was

eventually elevated to Controller of FGB.  McKenzie was also part of FGG's Finance Group,

whose core duties included conducting mini-audits of monthly financial statements and

preparing and coordinating audits.  He worked closely with PricewaterhouseCoopers ("PwC")

when it conducted audits of FGG's funds and reviewed the financial statements PwC prepared.

239.    As further described below, McKenzie was acutely aware of many facts and red

flags, that put him on actual and/or inquiry notice that BLMIS was engaging in fraud, and yet

failed to conduct any proper, independent and reasonable due diligence or follow up.

240.    McKenzie received significant salary and bonuses during his employment at

FGB.  For instance, in 2007, he received a $180,000 bonus, in 2008, McKenzie received a salary

of over $150,000 and a bonus of over $200,000.  He also received over $100,000 in deferred

compensation.  Upon information and belief, McKenzie received comparable amounts each year

since he joined FGG in 2003.

241.    Upon information and belief, some if not all of these payments were made with

funds originally withdrawn from the Feeder Funds' BLMIS accounts.  As such, they constitute

Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from

BLMIS recoverable by the Trustee.

MADC1345_00000507

242.    McKenzie is subject to personal jurisdiction in this judicial district as he routinely conducted business in New York, New York, purposely availed himself of the laws of the State of New York by conducting significant commercial activities in New York, New York, and derived significant income from New York, New York.  In addition, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over McKenzie based on his contacts with the U.S.

243.    **Richard Landsberger ("Landsberger")**:  Defendant Landsberger joined FGG in 2001, and became an FGG partner in 2002.  He was a member of FGG's Executive Committee, Director of Fairfield-UK, and Head of Sales of FIFL.

244.    As further described below, Landsberger was acutely aware of many facts and red flags, that put him on actual and/or inquiry notice that BLMIS was engaging in fraud, and yet failed to conduct any proper, independent and reasonable due diligence or follow up.

245.    Landsberger received substantial partner distributions, including $32,000 in 2002, $690,000 in 2003, $1.6 million in 2004, $2.7 million in 2005, $3.9 million in 2006, $5.4 million in 2007, and $4.0 million in 2008, for a total of approximately $18.3 million.  Upon information and belief, Landsberger also received significant salary and bonuses.

246.    Upon information and belief, these payments and distributions were paid with funds that were originally withdrawn from the Feeder Funds' BLMIS accounts.  As such, they constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

64

247.     Landsberger is subject to personal jurisdiction in this judicial district as he routinely conducted business in New York, New York, purposely availed himself of the laws of the State of New York by conducting significant commercial activities in New York, New York, and derived significant income from New York, New York.  In addition, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over Landsberger based on his contacts with the U.S.

248.     **Philip Toub ("Toub")**:  Defendant Toub, one of Noel's sons-in-law, joined FGG in 1997 in its New York office.  Toub was a partner and member of FGG's Executive Committee.  Throughout his employment with FGG, Toub served as a Director of FGL and as a member of FGG's Client Development Group.

249.     Toub's responsibilities included developing new products and marketing FGG's offshore funds.  His product development activities focused on markets in Brazil and the Middle East.  These activities necessarily required Toub to establish relationships with a number of FGG investors and thereafter respond to customer inquiries related to Madoff.

250.     As further described below, Toub was acutely aware of many facts and red flags, that put him on actual and/or inquiry notice that BLMIS was engaging in fraud, and yet failed to conduct any proper, independent and reasonable due diligence or follow up.

251.     After becoming a partner on January 1, 2001, Toub received the following partnership distributions, totaling over $25 million:  $822,000 in 2002, $892,000 in 2003, $1.5

65

MADC1345_00000509

million in 2004, $3.9 million in 2005, $7.5 million in 2006, $8.4 million in 2007, and $3.3 million in 2008.  Upon information and belief, Toub also received significant salary and bonuses.

252.    Upon information and belief, some if not all of the payments and distributions were made with funds that were originally withdrawn from the Feeder Funds' BLMIS accounts. As such, they constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

253.    Toub is subject to personal jurisdiction in this judicial district as he routinely conducted business in New York, New York, purposely availed himself of the laws of the State of New York by conducting significant commercial activities in New York, New York, and derived significant income from New York, New York.  In addition, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over Toub based on his contacts with the U.S.

254.    **Charles Murphy ("Murphy")**:  Defendant Murphy joined FGG as a partner on April 1, 2007.  Based in FGG's New York office, Murphy served on FGG's Executive Committee and focused on strategy and capital markets for FGG.

255.    Murphy was heavily involved in important strategic decisions involving Madoff. Such decisions included the amount of money FGG should invest through BLMIS, which FGG funds should invest through BLMIS, and whether FGG should leverage its investor funds by borrowing cash in order to increase investments through BLMIS.  Murphy also was often

MADC1345_00000510

involved in email correspondence about Madoff, which included discussions about important client redemptions that were requested due to client concerns about Madoff risks.

256.　As further described below, Murphy was acutely aware of many facts and red flags, that put him on actual and/or inquiry notice that BLMIS was engaging in fraud, and yet failed to conduct any proper, independent and reasonable due diligence or follow up.

257.　Murphy received approximately $2.4 million in partnership distributions in 2007 and $2.7 million in 2008, for a total of approximately $5.1 million.  Upon information and belief, Murphy also received significant salary and bonuses.

258.　Upon information and belief, some if not all of these payments and distributions were made with funds that were originally withdrawn from the Feeder Funds' BLMIS accounts. As such, they constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

259.　Murphy is subject to personal jurisdiction in this judicial district as he routinely conducted business in New York, New York, purposely availed himself of the laws of the State of New York by conducting significant commercial activities in New York, New York, and derived significant income from New York, New York.  In addition, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over Murphy based on his contacts with the U.S.

67

MADC1345_00000511

260.    **Robert Blum ("Blum")**:  Defendant Blum served as a Managing Partner at FGG and the Chief Operating Officer of FGB and FGA.  He started at FGG in 2000 and made partner on January 1, 2002.  Blum resigned from his FGG positions in June of 2005.  Because Blum's partnership interest had fully vested at the time of his departure, he will continue to receive distributions through 2010.

261.    While serving as a Managing Partner of FGG, Blum oversaw or assisted in all aspects of FGG's activities.  Blum was involved in making day-to-day management decisions related to the Feeder Funds and FGG Affiliates.  He also reviewed FGG sales and marketing materials, including webcasts and monthly commentaries.

262.    As further described below, Blum was acutely aware of many facts and red flags, that put him on actual and/or inquiry notice that BLMIS was engaging in fraud, and yet failed to conduct any proper, independent and reasonable due diligence or follow up.

263.    Blum received substantial profit distributions and other compensation, including approximately $605,000 in 2002, $1.5 million in 2003, $2.8 million in 2004, $4.2 million in 2005, $3.7 million in 2006, $4.3 million in 2007, and $3.8 million in 2008, for a total of approximately $21 million.  Upon information and belief, Blum also received significant salary and bonuses.

264.    Upon information and belief, some if not all of these payments and distributions were paid with funds that were originally withdrawn from the Feeder Funds' BLMIS accounts. As such, they constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

68

MADC1345_00000512

265.     Blum is subject to personal jurisdiction in this judicial district as he routinely conducted business in New York, New York, purposely availed himself of the laws of the State of New York by conducting significant commercial activities in New York, New York, and derived significant income from New York, New York.  In addition, Blum filed customer claims, whereby he submitted to the jurisdiction of this Court.  Finally, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over Blum based on his contacts with the U.S.

266.     **Andrew Smith ("Smith")**:  Defendant Smith was an Executive Director and partner at FGG in the Fund of Funds Division of the Investment Group.  Smith also served as a Portfolio Manager and oversaw all operations for Chester and Irongate.  Smith became a partner on January 1, 2006.  He left FGG in April 2009 and joined Sciens, the company now managing Chester, Chester LP, and Irongate, as a member of the Sciens Investment Committee and a Portfolio Manager.

267.     As a member of FGG's Executive Committee, Smith worked closely with Piedrahita, McKeefry, Landsberger, Toub, and Murphy to make day-to-day management decisions regarding the Feeder Funds and FGG Affiliates.  As the representative from FGG's Investment Group on the Executive Committee, Smith played an integral role in making decisions regarding investor and potential investor requests for information about BLMIS and Madoff.

69

MADC1345_00000513

268. As further described below, Smith was acutely aware of many facts and red flags, that put him on actual and/or inquiry notice that BLMIS was engaging in fraud, and yet failed to conduct any proper, independent and reasonable due diligence or follow up.

269. Smith received substantial compensation as a result of his partnership position at FGG, including approximately $1.1 million in partnership distributions in 2006, $3.8 million in 2007, and $785,000 in 2008, totaling approximately $5.6 million. Upon information and belief, Smith also received significant salary and bonuses.

270. Upon information and belief, some if not all of these payments and distributions were made with funds that were originally withdrawn from the Feeder Funds' BLMIS accounts. As such, they constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

271. Smith is subject to personal jurisdiction in this judicial district as he routinely conducted business in New York, New York, purposely availed himself of the laws of the State of New York by conducting significant commercial activities in New York, New York, and derived significant income from New York, New York. In addition, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S. Thus, this Court has personal jurisdiction over Smith based on his contacts with the U.S.

272. **Harold Greisman ("Greisman")**: Defendant Greisman joined FGG in 1990 in the New York office. He served as FGG's Chief Investment Officer and was a member of the Executive Committee. Beginning on January 1, 2002, Greisman was a partner of FGG.

MADC1345_00000514

273.    Greisman was responsible for overseeing the day-to-day investment activities of FGG.  This required him to monitor the investment decision-making process, from initial manager search and selection to research and ongoing manager oversight.  Greisman utilized Vijayvergiya and Smith, as well as additional FGG employees, to assist him in his duties as Chief Investment Officer.  Both Vijayvergiya and Smith reported directly to Greisman.

274.    As further described below, Greisman was acutely aware of many facts and red flags, that put him on actual and/or inquiry notice that BLMIS was engaging in fraud, and yet failed to conduct any proper, independent and reasonable due diligence or follow up.

275.    Greisman received partnership distributions of approximately $600,000 in 2002, $900,000 in 2003, $ 1.6 million in 2004, $2.3 million in 2005, $3.7 million in 2006, $3.9 million in 2007, and $2.5 million in 2008 for a total of over $15 million.  Upon information and belief, Greisman also received significant salary and bonuses.

276.    Upon information and belief, some if not all of these payments and distributions were made with funds that were originally withdrawn from the Feeder Funds' BLMIS accounts. As such, they constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

277.    Greisman is subject to personal jurisdiction in this judicial district as he routinely conducted business in New York, New York, purposely availed himself of the laws of the State of New York by conducting significant commercial activities in New York, New York, and derived significant income from New York, New York.  In addition, upon information and belief, Greisman is a resident of New York, New York.  Finally, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy

71

MADC1345_00000515

Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S. Thus, this Court has personal jurisdiction over Greisman based on his contacts with the U.S.

278. **Gregory Bowes ("Bowes")**: Defendant Bowes was a partner of FGG and served on FGG's Executive Committee. He joined FGG in 2000 and became partner in 2002. Bowes resigned from his FGG position in 2003. But because his partnership interest had already vested, he continued to receive multi-million dollar partnership distributions.

279. As further described below, Bowes was acutely aware of many facts and red flags, that put him on actual and/or inquiry notice that BLMIS was engaging in fraud, and yet failed to conduct any proper, independent and reasonable due diligence or follow up.

280. While he was still at FGG, Bowes received partnership distributions of $605,000 in 2002 and $1.5 million in 2003. After leaving FGG, he received partnership distributions of $2.8 million in 2004, $4.2 million in 2005, $3.8 million in 2006, $4.3 million in 2007, and $3.8 million in 2008. Upon information and belief, Bowes also received significant salary and bonuses.

281. Upon information and belief, some if not all of these payments and distributions were made with funds that were originally withdrawn from the Feeder Funds' BLMIS accounts. As such, they constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

282. Bowes is subject to personal jurisdiction in this judicial district as he routinely conducted business in New York, New York, purposely availed himself of the laws of the State

MADC1345_00000516

of New York by conducting significant commercial activities in New York, New York, and derived significant income from New York, New York. In addition, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S. Thus, this Court has personal jurisdiction over Bowes based on his contacts with the U.S.

283. **Corina Noel Piedrahita ("Noel Piedrahita")**: Defendant Noel Piedrahita, daughter of Defendant Noel and wife of Defendant Piedrahita, joined FGG as a partner on January 1, 2002. Noel Piedrahita was Head of Client Services and Investor Relations and was part of FGG's Corporate Center before she retired in 2007.

284. Noel Piedrahita was intimately involved with FGG's enterprise, including the operation of its Feeder Funds. Among other things, she was responsible for approving subscriptions in and redemptions from various FGG funds, and worked closely with Tucker on a variety of issues, including how much money was to be funneled to BLMIS.

285. As further described below, Noel Piedrahita was acutely aware of many facts and red flags, that put him on actual and/or inquiry notice that BLMIS was engaging in fraud, and yet failed to conduct any proper, independent and reasonable due diligence or follow up.

286. Independent of her husband's earnings, Noel Piedrahita received approximately $300,000 in 2002, $325,000 in 2003, $800,000 in 2004, $800,000 in 2005, $1 million in 2006, $900,000 in 2007, and $1.1 million 2008, totaling over $5 million. Upon information and belief, Noel Piedrahita also received significant salary and bonuses.

MADC1345_00000517

287.    Upon information and belief, some if not all of these payments and distributions were made with funds that were originally withdrawn from the Feeder Funds' BLMIS accounts. As such, they constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

288.    Noel Piedrahita is subject to personal jurisdiction in this judicial district as she routinely conducted business in New York, New York, purposely availed herself of the laws of the State of New York by conducting significant commercial activities in New York, New York, and derived significant income from New York, New York.  In addition, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over Noel Piedrahita based on her contacts with the U.S.

### 4.    Sales Defendants

289.    **Lourdes Barreneche ("Barreneche")**:  Defendant Barreneche joined FGG in 1997, and became an FGG partner in 2002.  She was based in FGG's New York office, and worked in FGG's Business Development Group.  She was an international sales specialist who coordinated FGG's sales efforts in Latin America, Spain, Portugal, and Switzerland.

290.    As further described below, Barreneche was acutely aware of many facts and red flags, that put him on actual and/or inquiry notice that BLMIS was engaging in fraud, and yet failed to conduct any proper, independent and reasonable due diligence or follow up.

291.    As a partner of FGG, Barreneche received substantial profit distributions including $1.0 million in 2002, $1.2 million in 2003, $1.9 million in 2004, $2.8 million in 2005,

74

MADC1345_00000518

$6.6 million in 2006, $7.8 million in 2007, and $5.6 million in 2008, or approximately $27 million.  Upon information and belief, Barreneche also received significant salary and bonuses.

292.    Upon information and belief, some if not all of these payments and distributions were made with funds that were originally withdrawn from the Feeder Funds' BLMIS accounts. As such, they constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

293.    Barreneche is subject to personal jurisdiction in this judicial district as she routinely conducted business in New York, New York, purposely availed herself of the laws of the State of New York by conducting significant commercial activities in New York, New York, and derived significant income from New York, New York.  In addition, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over Barreneche based on her contacts with the U.S.

294.    **Cornelis Boele**:  Defendant Boele joined FGG in 1997, and became an FGG partner in 2002.  Boele oversaw FGG's marketing efforts for offshore funds in Belgium, the Netherlands, Luxembourg, and throughout Europe.  He was responsible for structuring and raising assets, and worked for FGG's Business Development Group.

295.    As further described below, Boele was acutely aware of many facts and red flags, that put him on actual and/or inquiry notice that BLMIS was engaging in fraud, and yet failed to conduct any proper, independent and reasonable due diligence or follow up.

75

MADC1345_00000519

296.     Boele received approximately $493,000 in partnership distributions in 2002, $986,000 in 2003, $2.0 million in 2004, $3.7 million in 2005, $5.4 million in 2006, $5.2 million in 2007, and $4.7 million in 2008, for a total of approximately $23.5 million.  Upon information and belief, Boele also received significant salary and bonuses.

297.     Upon information and belief, some if not all of these payments and distributions were made with funds that were originally withdrawn from the Feeder Funds' BLMIS accounts. As such, they constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

298.     Boele is subject to personal jurisdiction in this judicial district as he routinely conducted business in New York, New York, purposely availed himself of the laws of the State of New York by conducting significant commercial activities in New York, New York, and derived significant income from New York, New York.  In addition, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over Boele based on his contacts with the U.S.

299.     **Santiago Reyes ("Reyes")**:  Defendant Reyes joined FGG in 1996, and became a partner on January 1, 2002.  Reyes was the head of FGG's Miami office where he was responsible for marketing FGG's offshore funds worldwide.  Reyes was in charge of business development and held a position on FGG's sales team, where he was responsible for communicating with clients and convincing them and prospective investors to invest in FGG's products, including those funds invested in BLMIS, such as Fairfield Sentry.

MADC1345_00000520

300.     Reyes was responsible for communicating with clients and convincing them and prospective investors to invest in FGG's products, including those funds invested in BLMIS, such as Fairfield Sentry.  Reyes often asked Vijayvergiya and other FGG employees for advice on how to field client questions or respond to client concerns about Madoff and Fairfield Sentry. In fact, Reyes worked closely with Vijayvergiya, requesting information on Madoff's investment strategy and Fairfield Sentry's performance.

301.     As further described below, Reyes was acutely aware of many facts and red flags, that put him on actual and/or inquiry notice that BLMIS was engaging in fraud, and yet failed to conduct any proper, independent and reasonable due diligence or follow up.

302.     Reyes received partnership distributions of approximately $300,000 in 2002, $550,000 in 2003, $1.2 million in 2004, $1.5 million in 2005, $2.3 million in 2006, $2.2 million in 2007, and $2.0 million in 2008, for a total of approximately $10 million.  Upon information and belief, Reyes also received significant salary and bonuses.

303.     Upon information and belief, some if not all of these payments and distributions were made with funds that were originally withdrawn from the Feeder Funds' BLMIS accounts. As such, they constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS recoverable by the Trustee.

304.     Reyes is subject to personal jurisdiction in this judicial district as he routinely conducted business in New York, New York, purposely availed himself of the laws of the State of New York by conducting significant commercial activities in New York, New York, and derived significant income from New York, New York.  In addition, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of

77

MADC1345_00000521

Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S. Thus, this Court has personal jurisdiction over Reyes based on his contacts with the U.S.

305. **Jacqueline Harary ("Harary")**: Defendant Harary was a partner at FGG who marketed the Feeder Funds worldwide, focusing on Latin America. She joined FGG in 1997 as part of FGG's merger with Littlestone Associates and became partner on January 1, 2002.

306. Harary's role combined both sales responsibilities and projects related to manager selection and project development. She also coordinated FGG's relationship with investors that were charitable, as well as non-profit organizations. Having been a member of the FGG team for over ten years, Harary was very familiar with FGG policies, procedures, and politics, especially related to Madoff.

307. Harary worked very closely with Vijayvergiya, communicating with him on a frequent basis regarding her client inquiries and concerns about Madoff and BLMIS. Vijayvergiya worked with Harary to craft responses to the due diligence inquires she received - responses designed to deflect straightforward questions about the lack of transparency and potential conflicts of interest at BLMIS.

308. Harary also fielded and responded to investor concerns after Madoff's arrest. Harary had knowledge about how much money was lost and how much damage was done to the Feeder Funds that had invested directly or indirectly in BLMIS.

MADC1345_00000522

309.    As further described below, Harary was acutely aware of many facts and red flags, that put him on actual and/or inquiry notice that BLMIS was engaging in fraud, and yet failed to conduct any proper, independent and reasonable due diligence or follow up.

310.    As an FGG partner, Harary received substantial partnership distributions, including approximately $100,000 in 2002, $200,000 in 2003, $700,000 in 2004, $1.1 million in 2005, $1.5 million in 2006, $1.6 million in 2007, and $1.1 in 2008, totaling approximately $6.3 million.  Upon information and belief, Harary also received significant salary and bonuses.

311.    Upon information and belief, some if not all of these payments and distributions were made with funds that were originally withdrawn from the Feeder Funds' accounts at BLMIS.  As such, they constitute Customer Property subject to turnover to the Trustee and/or avoidable subsequent transfers from BLMIS and are recoverable by the Trustee.

312.    Harary is subject to personal jurisdiction in this judicial district as she routinely conducted business in New York, New York, purposely availed herself of the laws of the State of New York by conducting significant commercial activities in New York, New York, and derived significant income from New York, New York.  In addition, Harary filed a customer claim, whereby she submitted to the jurisdiction of this Court.  In addition, where a federal statute provides for nationwide service of process, as does Rule 7004 of the Federal Rules of Bankruptcy Procedure, a federal court has personal jurisdiction over any defendant with minimum contacts with the U.S.  Thus, this Court has personal jurisdiction over Harary based on her contacts with the U.S.

## VI.    FGG AND ITS HISTORICAL RELATIONSHIP WITH FGG

313.    Prior to forming FGG, Noel worked in the management consulting and

79

MADC1345_00000523

international private banking businesses. He created the international private banking group at Chemical Bank and helped establish a network of offices around the world focused on asset management. In 1983, Noel left Chemical Bank to start his own consulting firm to advise foreign investors regarding U.S.-based alternative investments. Noel acted as a third-party marketer of investment products to wealthy individuals located around the world.

314.     Tucker worked as an attorney for the SEC from 1970 to 1978, after which he entered the private practice of law as a partner at Tucker, Globermand & Feinsand. While in private practice, Tucker represented Fred Kolber ("Kolber") on securities related matters. In 1987, Tucker became a general partner of Fred Kolber & Co., a registered broker-dealer. In his position as general partner, Tucker was responsible for developing and administering the firm's private investment funds. After Tucker became a general partner, Tucker and Kolber launched a domestic hedge fund, the Greenwich Options Fund ("GOF"). Kolber handled the money management and Tucker helped administer and market the fund. During this time, Tucker and Kolber sublet their offices from Noel. Through this landlord-tenant relationship, Noel became acquainted with Tucker and Kolber.

315.     In 1988, Noel, Tucker, and Kolber joined forces to create an offshore counterpart to GOF, the Fairfield Investment Fund, Ltd. Through this association, Noel and Tucker decided to become partners in what became FGG. FGG started providing marketing services for Fred Kolber & Co., and the firms merged.

316.     Eventually, Noel, Tucker, and Kolber decided to outsource the management of some portion of their funds. Tucker and Kolber started the search for a fund manager.

80

MADC1345_00000524

### A. Noel and Tucker Meet Madoff and Make Their First Investments With BLMIS

317.     In 1989, Tucker's father-in-law, Norman Schneider, introduced Madoff to Noel and Tucker.  Madoff explained that his returns were more modest than some competitors, such as George Soros and Julian Robertson, but that he provided low volatility.  In July of that year, Noel, Tucker, and Kolber pooled $1.5 million and invested it with BLMIS on behalf of an entity called the Fairfield Strategies Ltd.  The fund then invested another $1 million with BLMIS in January 1990.

318.     Based on the returns from their initial investments, Noel and Tucker decided to place more money with Madoff and, in 1990, created Fairfield Sentry.  Fairfield Sentry made its first deposit of $4 million into its account at BLMIS on November 29, 1990.  Noel and Tucker offered shares of Fairfield Sentry to non-U.S. investors at a minimum initial investment of $100,000.  Pursuant to the fund's offering memorandum, Fairfield Sentry's investment manager was required to invest no less than 95% of the fund's assets directly through BLMIS, which supposedly would manage the fund's money according to BLMIS's self-proclaimed "split-strike conversion strategy" ("SSC Strategy"), described in detail below.

319.     Over the next eighteen years, as a result of additional investments by Fairfield Sentry and alleged profits produced by BLMIS, Fairfield Sentry's assets grew exponentially.  According to Fairfield Sentry's account statements, between November 1990 and December 2008, the fund's assets invested through BLMIS increased from $4 million to approximately $6 billion.

### B. Noel and Tucker Expand FGG's Offerings to U.S. Investors and Piedrahita Joins the Partnership

81

320.     Shortly after Fairfield Sentry was established, Noel and Tucker formed Aspen/Greenwich Limited Partners ("Aspen/Greenwich"), a Delaware limited partnership, in order to provide a domestic vehicle to funnel U.S. investor monies into BLMIS. Aspen/Greenwich eventually changed its name to GS, gave its first deposit to BLMIS on November 20, 1992, and began operations in January 1993.

321.     In 1997, FGG acquired Littlestone Associates ("Littlestone"), founded by Piedrahita, Noel's son-in-law.  With this acquisition, Piedrahita became a partner in FGG and Littlestone's clients became clients of FGG.

322.     Noel, Tucker, and Piedrahita essentially shared the responsibilities of managing and supervising the business of FGG.  Tucker emphasized operations and was considered the founder and engineer of FGG's Madoff investments, and the person responsible for FGG's direct relationship with Madoff.  Noel and Piedrahita traveled the world marketing and securing billions of dollars from investors to invest through BLMIS.  Noel carried with him short summaries of the SSC Strategy to assist him in touting the Feeder Funds' consistent returns.  (A true and accurate copy of an SSC Strategy summary sheet is attached hereto as Ex. 26.)

323.     Seeking to expand the reach of its funds to foreign currency investors, FGG launched Sigma in 1997 and Lambda in 1999.  These funds accepted investments in Euros and Swiss francs, respectively, and then invested those funds in Fairfield Sentry, which in turn gave the money to BLMIS.

324.     Based on what FGG determined to be certain legal restrictions limiting the number of U.S. investors in GS, FGG formed a Delaware limited partnership, GSP, in 2006. GSP opened its BLMIS account with a deposit on May 1, 2006.

82

MADC1345_00000526

325.    As late as December 2008, Tucker and Piedrahita were working to gather additional funds to invest through BLMIS.  The so-called "Emerald Funds" were supposed to apply a higher volatility, high return strategy, and were to be marketed for BLMIS exclusively by FGG.

## C.    FGG's Operations

326.    On paper, FGG appeared to be a group of discrete entities.  In reality, FGG operated as one cohesive unit with Noel, Tucker, and Piedrahita at the helm.  Along with a core group of other individuals at FGG, Noel, Tucker, and Piedrahita oversaw all of FGG's operations.

327.    The compensation structure at FGG was similarly consolidated.  The profits "earned" by all FGG entities passed through FGB and FGL, and then were distributed to the various partners.  Compensation documents called "Partner Comp Worksheets 2008," contained details of partnership distributions for each Defendant that was an FGG partner.  (A true and accurate copy of such worksheets is attached hereto as Ex. 27.)

328.    The inter-relations among the FGG entities is clear from the multiple roles played by individuals across the entities.  For instance, Tucker was a director of FGB, and general partner of GS and FGL.  Tucker also sat on the Management Committee and the Board of Directors of these entities.  In addition, he co-owned FIM, the legal entity through which Tucker and Noel owned between 25-50% of FGB.  Likewise, Tucker was extensively involved in operations at Fairfield Sentry.  He participated in countless discussions within FGG regarding the fund, responded to investors' inquiries relating to the fund, and was for many years Fairfield Sentry's principal contact with Madoff.

83

329.    The Feeder Funds and FGG Affiliates are similarly interconnected.  For example, FGL served as placement agent to Defendants Fairfield Sentry, Sigma, and Lambda; general partner to GS (from January 1, 2002 to June 30, 2003); investment manager to Fairfield Sentry (from December 31, 2001 to June 1, 2003); and investment adviser and placement agent to other FGG funds further discussed below.

330.    Each FGG entity had its own roster of officers drawn from the same group of FGG employees and operations.  All of the entities were run by the same group of individuals: Noel, Tucker, and Piedrahita, the FGG "Founding Partners;" McKeefry, FGG's Chief Legal Officer and Chief Operating Officer; Lipton, FGG's Chief Financial Officer; Vijayvergiya, FGG's Head of Risk Management; McKenzie, Controller for FGB; Blum, FGG's Chief Operating Officer until 2005; Greisman, FGG's Chief Investment Officer; Noel Piedrahita, FGG's Head of Client Services and Investor Relations; and the remaining members of the Executive Committee, Landsberger, Toub, Murphy, Smith, and Bowes.  With the exception of Defendant McKenzie, all of the Management Defendants were partners of FGG and received partnership distributions.  These individuals constitute the Management Defendants.

331.    The Sales Division of FGG was responsible for marketing the Feeder Funds to potential investors and then directing that money to BLMIS.  The Sales Division was headed by the following FGG partners:  Barreneche, Boele, Reyes, and Harary.  These individuals constitute the Sales Defendants.

332.    Each of these individuals was assigned a title at a number of FGG entities, but those were distinctions in name only.

## VII.    THE DEFENDANTS' ROLE IN FACILITATING THE FRAUD

84

333.     Madoff initially operated by luring in individual investors.  His early success came through money deposited from individuals as well as the efforts of various feeder entities such as Avellino & Bienes, a small Fort Lauderdale-based accounting firm that sold to investors notes that were backed by BLMIS's returns.

334.     For BLMIS to survive as a Ponzi scheme it needed massive, regular injections of cash to fuel the scheme.  Madoff could have raised money directly from U.S. institutional investors but he knew that such an approach might have subjected BLMIS to strict regulatory scrutiny applicable to banks and pension funds.   By contrast, the hedge fund arena, in which the Feeder Funds operated, was largely unregulated.  This friendlier regulatory environment led Madoff to turn to "intermediaries" – hedge funds and funds of funds, like the Feeder Funds, which could, and did, deliver large amounts of cash.

335.     The relationship between FGG and Madoff was a *de facto* partnership.  FGG and the Defendants procured billions of dollars that Madoff stole over many years, and the alleged returns generated by the Feeder Funds' BLMIS accounts were the engine that drove FGG's success.  Simply put, BLMIS needed FGG and other large investors to help it survive and FGG needed BLMIS to make the Defendants their ill-gotten fortunes.

### A.     *The Defendants' Investment Strategy*

336.     Outwardly, Madoff attributed the consistent investment success of the BLMIS IA Business to the SSC Strategy.  Madoff promised customers such as Fairfield Sentry that: (a) their funds would be invested in a basket of approximately 35 to 50 common stocks selected from the S&P 100 Index which consists of publicly listed stocks of the 100 largest companies in terms of their market capitalization traded on the New York Stock Exchange ("NYSE") and NASDAQ;

MADC1345_00000529

(b) the basket of stocks would closely mimic the price movements of the S&P 100; (c) the investments would be hedged by option contracts related to the S&P 100 Index, thereby limiting potential losses caused by unpredictable changes in stock prices; (d) he would opportunistically time the entry and exit from the strategy; and (e) when account funds were not invested in the basket of stocks and options described above, they would be invested in money market funds and Treasurys.

337.    Beyond the purchases of equities, the other key component of the SSC Strategy was the hedge of the purchased basket of stocks with S&P 100 Index option contracts.  Madoff purported to purchase out-of-the-money S&P 100 put options, and sell out-of-the-money S&P 100 call options, corresponding to the notional amount of the stocks in the basket he claimed he was buying.  The put options would theoretically control the downside risk of price changes in the basket of stocks.  The call options he purported to sell would likewise limit the potential upside gain in the basket, but were sold so that the premium from their sale could be used to finance the cost of purchasing the put options.  Madoff represented that when he believed or sensed it was time to exit the market, he would sell the basket of stocks, close out the options positions, and invest the resulting cash in Treasurys or mutual funds holding Treasurys.  BLMIS would purportedly enter and exit the market a few times a year.

338.    FGG embraced the SSC Strategy as its own and went to great lengths to downplay, and, in fact, conceal Madoff's key role in its business.  For nearly two decades, the Feeder Funds, with the help and complicity of the Management and Sales Defendants, raised billions of dollars for Madoff's scheme while making hundreds of millions of dollars for themselves in management and performance fees for selling a fraudulent scheme.  The Defendants knew, and/or should have known, that all aspects of the strategy were a fabrication.

86

B.     *The Defendants Facilitate the Scheme Through Marketing and Sales*

339.     The Defendants repeatedly told investors and potential investors they actively monitored Madoff, his auditor, the execution of the SSC Strategy, and BLMIS's performance. The Defendants claimed to have verified that trading actually occurred and that the assets in BLMIS custody actually existed.  Nothing could have been further from the truth.

340.     In exchange for the hundreds of millions of dollars in fees, partnership interests, distributions, and other earnings the Defendants garnered from their *de facto* partnership with Madoff, the Defendants provided extraordinary marketing and customer relations services, as well as important cover and legitimacy to Madoff's operations.

C.     *The Defendants Serve as a Gatekeeper for Madoff to Ensure Investors Would Not Find Out the Truth*

341.     Madoff could not have survived, much less prospered for as long as he did without the Defendants' substantial assistance.  While securing money from new investors for Madoff with one hand, with the other, the Defendants needed to prevent their investors, new and old, from communicating directly with Madoff.  The reason for the Defendants' actions was simple:  the more people who contacted Madoff directly, the more likely it was one of them might realize that Madoff and FGG were frauds.

342.     The Defendants went to great lengths to keep their investors far away from Madoff.  They determined early on that they had to keep their clients away from Madoff because requests to meet and conduct real due diligence on him were bound to "end up in a standoff."  (A true and accurate copy of the May 22, 2003 email from Landsberger to Tucker is attached hereto as Ex. 28.)  The Defendants told investors they were "monitoring" Madoff so as "to avoid them

87

feeling the need to go see Madoff" themselves. (A true and accurate copy of the July 15, 2004 email from Toub to Vijayvergiya is attached hereto as Ex. 29.)

343. Defendant Blum advised his colleagues at FGG that just because investors wanted information, did not mean that FGG had to give it to them. Giving out more detail would upset Madoff. (A true and accurate copy of the March 25, 2003 email from Blum to Tucker, Bowes, and Greisman is attached hereto as Ex. 30.) He also directed FGG personnel, "**always keep in mind the prime directive and downplay Madoff's role – never to have his name within 30 words of the word 'manage'. . . . He is extremely sensitive to this and wants to be referred to merely as our broker and custodian.**" (A true and accurate copy of the August 22, 2003 email from Blum to Vijayvergiya and Landsberger is attached hereto as Ex. 31 (emphasis added).)

344. The Defendants also misled investors by making false excuses when the investors requested meetings with Madoff. By way of example, after explaining that Madoff did not meet with clients, FGG would reassure investors, "if there is a window of opportunity in the future we shall give priority to [you]." (A true and accurate copy of the April 5, 2004 email to Tucker is attached hereto as Ex. 32.) The Defendants gave these types of assurances knowing full well that there would never be any such "window of opportunity."

345. The Defendants' refusal to allow their clients or prospective investors to contact Madoff was just one of many elements they employed to hide the inner workings of BLMIS from investors. The Defendants always knew and understood that BLMIS exercised discretion in managing their accounts, and was not simply an "executing broker."

88

MADC1345_00000532

346. In 2002, the Defendants decided that it would be best to just remove all references to BLMIS from their marketing materials. This strategy started with the deletion of all mentions of both Madoff and BLMIS from the investment adviser description on FGG's website and quickly grew into something broader. (A true and accurate copy of the June 24, 2004 email from Vijayvergiya to Lipton and McKeefry is attached hereto as Ex. 33.) The Defendants went on to remove all references to BLMIS from their offering memoranda. They also refused to provide their customers with the Feeder Funds' BLMIS Trading Authorization agreements. (A true and accurate copy of the August 7, 2004 email from Vijayvergiya to Landsberger and McKenzie is attached hereto as Ex. 34.)

347. "[I]n sensitivity to various issues regarding Bernie" the Defendants made the conscious decision to serve as a gatekeeper, declaring that "**Bernie investors do not need transparency.**" (A true and accurate copy of the January 14, 2003 email from Blum to Tucker, Bowes and Greisman is attached hereto as Ex. 35 (emphasis added).) They held strategy meetings to discuss, among other things, the need to "**haze up the details**" for investors and hold "**heavily scripted**" investor teleconferences. (A true and accurate copy of the March 25, 2003 email from Blum to Lipton and Tucker is attached hereto as Ex. 36 (emphasis added).)

348. FGG actively and repeatedly "blocked" investors wishing to obtain more information about the Funds' investments with BLMIS, as well as preventing such investors from accessing key BLMIS employees. Aware of investor concerns that Madoff was "churning the portfolio" (a true and accurate copy of the April 9, 2004 email to Boele, Vijayvergiya, Tucker, Blum, Greisman, Lipton, and Smith is attached hereto as Ex. 37), FGG ignored all such concerns and continued to aggressively market the Feeder Funds which had direct or indirect investments in BLMIS.

89

MADC1345_00000533

349.     When Fairfield Sentry was told by institutional investors that FGG was

mysterious, that FGG had little transparency, and that there were numerous concerns about

Madoff's family, BLMIS's auditor, the lack of incentive fees for Madoff, and his self-custodying

of assets, the Defendants chose not to address or investigate the concerns, instead focusing on

"**how to spin**" a response.  (A true and accurate copy of the March 15, 2008 email from

Landsberger to Smith, Toub, della Schiava, Vijayvergiya, Tucker, and the Executive Committee

is attached hereto as Ex. 38 (emphasis added).)

> **D.     FGG Conspires with Madoff to Hide from the SEC Madoff's True
> Involvement with the Feeder Funds**

350.     From inception until 2006, because registration would mean greater regulatory

scrutiny, Madoff did not register BLMIS with the SEC as an investment adviser even though

BLMIS was required to register.  The Defendants went to great lengths to attempt to cover up

Madoff's actual role with the FGG funds.

351.     In 2006, the SEC began an investigation into allegations that BLMIS may have

been a Ponzi scheme or illegally front-running the market.[5]  In connection with its investigation,

the SEC contacted FGG.  The SEC sought an interview regarding, among other things, the

Feeder Funds' actual relationship with BLMIS, transparency as to BLMIS's actual role in the

Feeder Funds' operations, as well as who was making investment decisions and implementing

the SSC Strategy on behalf of the Feeder Funds.

352.     Throughout 2006, the Defendants helped Madoff try to deceive the SEC.

Individual Defendants McKeefry and Vijayvergiya worked directly with Madoff to script false

---

[5] Front-running occurs when a broker-dealer "runs in front" of customers by executing transactions for itself that are
pending and unexecuted for customers, thereby unlawfully taking for itself market gain that would have accrued to

90

MADC1345_00000534

responses to the SEC to throw the investigators off the trail of the fraud. After being contacted

by the SEC, Vijayvergiya and McKeefry called Madoff to inform him of the upcoming

interview. They then forwarded Madoff some of FGG's marketing materials and a list of

potential issues they felt they should discuss before the interview. Madoff, McKeefry, and

Vijayvergiya agreed to defraud the SEC and then had a strategic conference call to work out the

details. Vijayvergiya recorded the call.

353. The parties first agreed that no one was ever to know they were scripting their

responses:

> Mr. Madoff: Obviously, first of all, this conversation never took place, Mark, okay?
>
> Mr. Vijayvergiya: Yes, of course.
>
> Mr. Madoff: All right. There are a couple of things that, you know, could come [up with the SEC] . . . number one . . . we never want to be looked at as the investment manager . . . .
>
> Mr. Vijayvergiya: Right.
>
> ***************************
>
> Mr. Madoff: So the -- you know, the less that you know about how we execute, and so on and so forth, the better you are . . . if they asked do you know . . . if Madoff has Chinese walls, and you say, yes, look -- you know, your position is say, listen, Madoff has been in business for 45 years . . . you know, he's a well known broker. You know, we make the assumption that he's -- he's doing everything properly.
>
> ***************************

---

customers had their transactions been executed first.

MADC1345_00000535

Mr. Madoff:        [O]ur role has always been defined as the executing
                   broker for our clients . . . .

                   ****************************

Mr. Madoff:        The objective of the fund is to achieve capital
                   appreciation . . . but don't say -- consistent monthly
                   returns.

Mr. Vijayvergiya:        Okay.  You can delete that, yeah.

(A true and accurate copy of the transcript of the call between McKeefry, Vijayvergiya, and

Madoff is attached hereto as Ex. 39.)

        354.    Madoff then gave *precise instructions* on how to respond to the SEC's questions

in order to mislead the SEC as to the true nature of Feeder Funds' accounts, as to whom the

actual investment adviser was, and anything else that might have allowed the SEC to potentially

discover that BLMIS and the Defendants were perpetrating a fraud.  Madoff specifically told

McKeefry and Vijayvergiya to tell the SEC he was merely "the executing broker," and all

investment decisions were made by FGG.  All participants to the conversation knew this to be

false.

        355.    The Feeder Funds' account agreements explicitly characterized their BLMIS

accounts as discretionary accounts.  In June 2001, in a letter to investors, FGG described

Fairfield Sentry's account with Madoff as a "discretionary cash account."  (A true and accurate

copy of the June 2001 letter to Fairfield Sentry's investors is attached hereto as Ex. 40.)  Madoff

had unfettered discretion as to when to trade, what to trade, with whom to trade, when to leave

the market, and when to shift customer investments to Treasurys.  The Defendants never knew

with whom Madoff was contracting or trading purportedly on their behalf and could not, and did

92

MADC1345_00000536

not, understand the SSC Strategy.  As late as August 2008, Vijayvergiya acknowledged that BLMIS's operations remained somewhat of a mystery to FGG.  (A true and accurate copy of the August 2008 emails from Vijayvergiya to Murphy, Piedrahita, Landsberger, Toub, Tucker, and the Executive Committee is attached hereto as Ex. 41.)

356.    The Defendants knew that the fewer people who knew about the true nature of their partnership with Madoff, especially the SEC, the better it would be for the Defendants' financial interests.  The Defendants also knew that if based on FGG's responses, the SEC grasped Madoff's true discretion over FGG's accounts and inquired further, Madoff could become very angry, which could upset the Feeder Funds' preferred status.

357.    The Defendants were also concerned that if the SEC knew the true nature of the relationship, the SEC would require Madoff to register, expose him to heightened regulation, and remove the secrecy that allowed the fraud to flourish for so many years.  For these and other reasons, Defendants Vijayvergiya and McKeefry knowingly agreed to conspire with Madoff to deceive the SEC.

358.    The day after the three spoke, the SEC interviewed Vijayvergiya and McKeefry by telephone, with Vijayvergiya providing nearly all of the responses.  At the beginning of the interview, the SEC personnel requested the interview be kept confidential.  Vijayvergiya dutifully fed the SEC the false information Madoff required.  Two days after the interview, in order to keep their false stories straight – and despite the SEC's express request for confidentiality – someone at FGG transmitted to Madoff detailed notes of the interview.  (A true and accurate copy of the notes dated December 21, 2005 found by the Trustee in BLMIS's files is attached hereto as Ex. 42.)

93

359.    During the first half of 2006 the SEC continued a dialogue with McKeefry, Madoff, and other individuals relevant to their investigation.  (A true and accurate copy of the SEC phone log is attached hereto as Ex. 43.)  Like the confidential interview, FGG continued to share the information from its SEC calls directly with Madoff.

360.    Ultimately, despite FGG's and Madoff's coordinated efforts in 2006, the SEC required BLMIS to register as an investment adviser.  The SEC also determined FGG had to modify its Feeder Funds' marketing materials – which had previously been revised to remove all mention of both Madoff and BLMIS – to make clear that the strategy the Feeder Funds were selling was being managed and executed in all respects by Madoff.  The SEC required the Feeder Funds and BLMIS to execute new customer agreements because the existing agreements did not limit Madoff to acting merely as an executing broker, as had been for years, falsely claimed by FGG.

361.    The scheme to defraud the SEC succeeded insofar as, apart from these requirements, the SEC closed any further investigation of BLMIS.  (A true and accurate copy of the SEC Case Closing Recommendation is attached hereto as Ex. 44.)

E.    ***The Defendants Deceive Their Investors by Telling Them They Were Performing Extensive and Top of the Line Due Diligence, But They Were Doing No Such Thing***

362.    The Defendants deceived their investors and the investment community, in order to enhance the fraud, enrich themselves, and protect their status as a leading BLMIS feeder fund. The Defendants sold the false assurance that they conducted superior due diligence, far beyond any due diligence performed by their peers.  The Defendants justified their extraordinary fees based upon this allegedly superior due diligence.  The Defendants conveyed these falsehoods for

94

MADC1345_00000538

nearly 20 years throughout FGG's sales, offering, and marketing materials, as well as in direct responses to questions from their investors and prospective investors.

363.    FGG claimed among other things that it had full transparency into its investments, conducted monthly quantitative analyses, and only used counterparties for the OTC options they identified on an approved list.  (A true and accurate copy of FGG's October 2002 marketing brochure for Fairfield Sentry is attached hereto as Ex. 45.)  All of these claims were false.

364.    The Defendants never knew who any of their OTC options counterparties were.  It was also impossible for the Defendants to accurately reconcile trades on a same-day basis because they did not receive paper trade confirmations until three or four days after the alleged trades supposedly had been executed, a delay which permitted back-dating – itself another red flag of possible fraud.  Had the Defendants accurately reconciled Madoff's trade confirmations, they also would have discovered any number of anomalies concerning the volumes and prices at which Madoff supposedly purchased stocks and options.

365.    The Defendants' sales pitch about their due diligence process, their knowledge of Madoff and his operations, conflicted with the reality of how little they actually knew.  (A true and accurate copy of the December 19, 2003 email from Vijayvergiya is attached hereto as Ex. 46.)  The Defendants did not know the exact amount of Madoff's assets under management, and admitted that "**there [was] no check on the amount of money he manages.**"  (A true and accurate copy of the September 19, 2003 email from Blum to Tucker is attached hereto as Ex. 47 (emphasis added).)

366.    FGG also emphasized to investors it confirmed the adequacy of FGG's investment managers, staff, as well as the investment manager's technological capabilities.  FGG

95

did not know the names of Madoff's alleged traders or how many traders were responsible for executing their SSC Strategy.  They also did not perform independent, reasonable due diligence or follow up on the viability or adequacy of BLMIS's technology.  Had the Defendants meaningfully investigated the technological capabilities of BLMIS, they would, or should have, been suspicious because there were strong indications of fraud – the BLMIS IA Business computers lacked the ability to send real-time electronic trade confirmations to its customers.

367.    The Defendants never investigated the contradiction between Madoff's market-making business, well-known for cutting-edge technology, and the more primitive back-office systems used by the BLMIS IA Business.  The BLMIS IA Business could not generate electronic trade tickets, had no website where investors could view their accounts and assets in real-time, and could only deliver paper confirmations by mail days after trades were supposedly executed. These attributes were commonly recognized in the investment advisory industry to be rife with the risk of fraud, yet the Defendants ignored all of them.

368.    Candid internal FGG discussions in 2003 revealed a far different due diligence picture than the "rigorous" processes the Defendants' touted:

> **[T]here is an enormous amount that we have to do to meet the higher level of diligence and documentation and fulfillment of the investment process/risk monitoring and portfolio allocation aspects that even the most lazy of institutional and family office investors require to see . . .**
>
> **This industry is moving to higher levels of perceived quality of process fast, and we are going to have to sprint to keep up. trying [*sic*] to bullshit clients will only result in our bs-ing ourselves . . . .**

96

(A true and accurate copy of the November 24, 2003 email from Blum to Landsberger,

Greisman, Tucker, and Piedrahita is attached hereto as Ex. 48 (emphasis added).)

369.     In May of 2005, as part of "sales training," Lipton and Vijayvergiya conducted a

mock investor phone interview.  Lipton played the role of a potential or existing Fairfield Sentry

investor and Vijayvergiya acted as an FGG sales person.  Lipton questioned Vijayvergiya as to

the due diligence advertised by Fairfield Sentry.  In particular, Lipton asked about the due

diligence completed by FGG before investing in BLMIS, as well as the ongoing monitoring and

diligence of its portfolio manager, Madoff.

370.     In response to certain questions posed by Lipton and other audience members,

Vijayvergiya made misstatements about FGG's knowledge of Madoff and his operations,

including:  (i) "we have a number of options counterparties;" (ii) for options-trading there is a

"very well capitalized, well established series of counterparties, which number between 8 to 12";

(iii) FGG is the investment manager; (iv) from time-to-time FGG representatives visit BLMIS,

verify that trades are on Depository Trust & Clearing Corporation ("DTCC"), and verify the

existence of the Feeder Funds' assets; and (v) Madoff has no discretion except with respect to the

price and timing of trade execution, for which he has limited discretion.  (A true and accurate

copy of the transcript of the training session led by Vijayvergiya is attached hereto as Ex. 49.)

371.     Each one of those statements, disguised as verified due diligence, was false.  The

Defendants knew *nothing* about Madoff's imaginary options counterparties except for Madoff's

claim they were a group of large European financial institutions – a claim which the Defendants

never tried to independently verify.  The Defendants never reviewed any counterparty's option

agreement and there was no list of counterparties.  The Defendants never called anyone at any

97

reputable financial institution, *or anyone at all,* to learn more, even though they stated they had done so.  The Defendants also knew BLMIS was the investment adviser and that Madoff exercised all investment discretion.  The Defendants never asked Madoff for permission to independently confirm their holdings with the DTCC, nor did they conduct any independent and reasonable due diligence, or follow up, to verify the actual existence of their assets.

372.    In response to an audience query wondering how, over the last three years, there were times when FGG made money when to the questioner it seemed like they should not have, Vijayvergiya stated, "***I can honestly say that, hand on heart that . . . we know what is going***
***on***." (*Id.* (emphasis added).)  This statement contradicted Vijayvergiya's admission three years later that many things at BLMIS remained a mystery to him.  (*See* Ex. 41.)

373.    When speaking to an investor in May 2008, Vijayvergiya and McKenzie admitted they still did not know many basic things about Madoff's operations.  They expressed concerns about credit risks due to the options and option counterparty exposure, as well as the fact that "**they ultimately do not really know whether Madoff has the proper systems and controls,**
**segregation of duties, etc.**"  (A true and accurate copy of a memorandum summarizing the May 7, 2008 meeting is attached hereto as Ex. 50 (emphasis added).)

## VIII.   THE DEFENDANTS WERE CONSTANTLY FACED WITH EVIDENCE OF A FRAUD, BUT CHOSE NOT TO REVEAL THAT EVIDENCE

374.    It did not require an extraordinary due diligence process for the Defendants to discover that Madoff was operating an illegitimate enterprise.  Ordinary, independent, and reasonable due diligence by investment professionals would have, and should have, revealed the likelihood of fraud.  The Defendants knew of, and were presented with significant red flags from many sources, including, but not limited to: financial and quantifiable information; performance

98

MADC1345_00000542

and trade information; market rumors; industry articles; publicly stated investor concerns; market and industry experts who expressed the possibility of fraud; FGG customers who communicated that Madoff was possibly a fraud; FGG's own internal statements and serious doubts; their years of hedge fund experience; and their own common sense.

375.  The totality of the information known and available to the Defendants pointed to the strong likelihood that they were enabling a fraud.  At a minimum, the Defendants knew of countless red flags which required proper, independent, and reasonable due diligence and follow up investigation.  Not only did the Defendants fail to conduct the required due diligence, they willfully ignored information that was right in front of them, and then lied about it.

376.  The Defendants also knew what other highly reputable institutions were saying directly about them.  One representative of Credit Suisse told Fairfield Sentry that it "**would never do business with FGG as a firm" because FGG was "not going 'by the rules' and soon[er] or later . . . will wind up in jail!!**"  (A true and accurate copy of the December 2, 2003 email from della Schiava to Noel, Piedrahita, Tucker, and Blum is attached hereto as Ex. 51 (emphasis added).)

> **A.**  ***The Defendants Learn that BLMIS's Auditor is a Single Person in a Strip Mall Office.  Instead of Treating This Red Flag as an Indicator of Fraud, They Lie to Comfort Their Investors and Sell Their Superior Diligence***

377.  Madoff had false audit reports prepared by Friehling & Horowitz ("Friehling"). Those audits were filed with the SEC and copies were given to the Defendants.  Friehling was a one-man firm from Rockland County, New York consisting of David Friehling, a Certified Public Accountant.  The other two employees were an administrative assistant and a semi-retired accountant living in Florida.

99

378.     On November 3, 2009, David Friehling pled guilty to seven counts of securities

fraud, investment adviser fraud, obstructing or impeding the administration of Internal Revenue

laws, and making false filings with the SEC, in connection with the services he performed for

BLMIS.

379.     By 2005 the Feeder Funds had invested billions of dollars with BLMIS.  From

1990 to 2005, the Defendants accepted Friehling as a bona fide auditor without conducting any

meaningful, independent due diligence or inquiry.

380.     During 2005, the Defendants were confronted about Friehling when the $400

million Bayou Group hedge fund Ponzi scheme became public.  In the early part of the decade,

Bayou rode the rise in the stock market following the burst of the dot-com bubble.  Bayou also

displayed a number of major red flags similar to those exhibited by BLMIS.  Both Bayou and

BLMIS delivered steady annual returns with almost no volatility.  Neither Bayou nor Madoff

charged a management fee based on the assets under management.  This fee structure was

atypical of hedge fund and other alternative investment managers.  Finally, both Bayou and

BLMIS had obscure, non-independent auditors – Bayou an in-house accountant and BLMIS,

Friehling.

381.     When the Bayou fraud came to light in 2005, a Fairfield Sentry investor raised

parallels between Madoff and Bayou, questioning FGG about "the risk [of] investing in Sentry"

in light of "certain similarities with Bayou."  The investor expressly identified the conflict of

interest in Madoff acting as the self-clearing broker and receiving commission-based fees, and

pointed out that BLMIS employed a small auditor rather than using one of the "big four."  (A

MADC1345_00000544

true and accurate copy of the September 5, 2005 email from Capital Research to Castillo is attached hereto as Ex. 52.)

382.    An investor relations employee for FGG, Carla Castillo ("Castillo"), forwarded information regarding Bayou to Vijayvergiya, joking "**[d]oes this 'perceived conflict of interest with the two relationships (brokerage and auditing)' sound familiar?  Hehehe.**"  (A true and accurate copy of the September 1, 2005 email from Castillo to Vijayvergiya is attached hereto as Ex. 53 (emphasis added).)  At the same time, Castillo was telling the investor there were important differences between Fairfield Sentry and Bayou.  (*See* Ex. 52.)  With regard to the potential conflict of interest, Castillo responded that FGB, not BLMIS, was Fairfield Sentry's investment manager, FGB maintained an arm's-length relationship with BLMIS, and Bayou used a very small accounting firm, whereas PwC conducted audits of Fairfield Sentry.  (*Id.*)

383.    The investor pressed for direct answers to the questions about Madoff and BLMIS's auditor.  At that point the investor's questions were escalated within FGG to Tucker, McKeefry, Lipton, and McKenzie.  Tucker, despite having served as the Madoff relationship partner for fifteen years, could not answer the investor's question regarding BLMIS's auditor. He asked Lipton and McKenzie to investigate so he could respond to the investor's concerns.  (A true and accurate copy of the September 12, 2005 email from Castillo to Lipton is attached hereto as Ex. 54.)

384.    At the time of Tucker's request, Lipton had been FGG's CFO for over three years. Lipton was a nine-year veteran of a Big Four accounting firm, Ernst & Young.  Lipton placed a call to Friehling's office.  Lipton also contacted the State of New York and learned David

101

MADC1345_00000545

Friehling was licensed in New York and there were no disciplinary actions against him.  Based

on the short call with Friehling's office, Lipton subsequently reported to Tucker:

> Frehling [*sic*] & Horowitz, CPAs are a small to medium size
> financial services audit and tax firm, specializing in broker-dealers
> and other financial services firms.  They are located in Rockland
> County, NY.  They have [hundreds] of clients and are well
> respected in the local community.

(*Id.*)

385.    Lipton never made any attempt to independently verify this information.  While

under oath before the Office of the Secretary of the Commonwealth of Massachusetts, Lipton

could not remember with whom he spoke when he called the auditor.  He claimed all he could

remember is that he spoke with someone who "said they were a partner in the firm."  (A true and

accurate copy of excerpts from the transcript of Lipton's testimony is attached hereto as Ex. 55.)

386.    Following Lipton's call with Friehling, the next day Tucker somehow "addressed

all the clients' questions, and gave them the comfort they were seeking."  (*See* Ex. 52.)

387.    Later on the same day that Tucker spoke with the investor, McKenzie obtained

and distributed internally a Dun & Bradstreet report on Friehling that validated the investor's

concerns.  The report, reflecting information provided by Friehling, showed Friehling only had

one employee and annual receipts of $180,000.  Tucker's response upon learning that Lipton had

been lied to and that BLMIS's auditor was similar to Bayou's auditor was  "thank you."  (*See* Ex.

54.)

388.    McKenzie then called Frank DiPascali ("DiPascali") at BLMIS to ask about

Friehling.  DiPascali was unable, or unwilling, to answer any questions about Friehling, and

directed McKenzie to Madoff.  Because DiPascali was often the principal source of information

102

regarding the Feeder Funds' accounts and BLMIS's operations, his inability and/or

unwillingness to answer simple questions about BLMIS's auditor was a major red flag.

McKenzie, knowing Madoff would not speak to him, sent an email to Tucker asking him to bring

up the topic the next time Tucker spoke with Madoff.  (*See id.*)

389.    The Defendants did <u>nothing</u> to independently confirm if Friehling was equipped

or capable of performing large scale domestic and international auditing services at a time when

they were estimating Madoff was managing approximately $10 billion.

390.    Tucker, Lipton, and McKenzie all knew that false information regarding Friehling

had been communicated to the investor that had raised the concern.  They did not communicate

truthfully to investors or prospective investors about Madoff's auditor.  They did not disclose

what they learned about Madoff's auditor, or that DiPascali had been unwilling or

unknowledgeable about Friehling.

391.    Basic due diligence would have further revealed Madoff's auditor was a fraud.

Lipton knew or should have known that all accounting firms that perform audit work must enroll

in the American Institute of Certified Public Accountants' ("AICPA") peer review program.

This program involves having experienced auditors assess a firm's audit quality each year.

Friehling, while a member of the AICPA, had not been peer reviewed since 1993.  The results of

these peer reviews are on public file with the AICPA.  Friehling never appeared on the public

peer review list because he had notified the AICPA he did not perform audits.  His absence on

the list was another major red flag.

392.    The Defendants were not satisfied to hide the unknown auditor red flag of fraud

from investors and potential investors.  The Defendants chose to **market** around the Bayou

103

scandal, stressing to their investors how a Bayou fraud could never happen to FGG's investors due to its impressive due diligence and risk management processes.

393. Beginning in late 2005 through 2008, FGG generated and distributed marketing materials profiling the Bayou fraud as "Due Diligence: Headlines to Avoid." The Defendants highlighted the falsehood that a Bayou-like fraud could never happen to FGG because, unlike the misguided funds that invested with Bayou, FGG would have "**question[ed] Bayou's obscure auditing firm.**" (A true and accurate copy of the November 2, 2005 FGG Investment Team Presentation is attached hereto as Ex. 56 (emphasis added).)

394. The Defendants also misled potential investors about Madoff's auditor in direct communications with them. For example, in 2006, when a consultant performing due diligence for a client considering an investment in Fairfield Sentry questioned Vijayvergiya about BLMIS's auditor, Vijayvergiya lied, stating that Friehling had twenty partners and focused on broker-dealers. (A true and accurate copy of notes taken during the meeting is attached hereto as Ex. 57.) McKenzie participated in this discussion. He remained silent when Vijayvergiya described Friehling. He did not disclose that Friehling was the same firm he had confirmed had only one employee, and not twenty partners.

395. FGG also reassured its investors by falsely suggesting that Friehling was not the only firm auditing BLMIS. PwC did not conduct a single independent audit of BLMIS.

396. FGG also represented to investors that PwC (who conducted audits of the Feeder Funds), accompanied by Lipton, performed biannual visits to BLMIS. (A true and accurate copy of the 2007 Fairfield Sentry Due Diligence Questionnaire is attached hereto as Ex. 58.) These representations were also false. PwC briefly visited BLMIS twice over the course of many

104

MADC1345_00000548

years, attending information gathering sessions at BLMIS in 2002 and 2004, in connection with

its engagements for several Madoff feeder funds.  After each visit, PwC summarized its findings

and explained in writing that it had not conducted audits of BLMIS.  After 2004, PwC did not

conduct any visit, inquiry, or investigation of BLMIS in association with any Fairfield Sentry

engagement.  Lipton only accompanied PwC during its visit of BLMIS on one occasion, in 2002.

(*See* Ex. 55.)

397.    The facts about PwC's actual involvement with Madoff did not prevent FGG from

falsely representing PwC's role.  FGG told investors in an October 2007 Due Diligence

Questionnaire for Fairfield Sentry – a document it routinely gave to prospective investors or

consultants – that, "[t]he CFO has accompanied PwC's auditors on a bi-annual basis to review

BLMIS's internal accounts for the Sentry fund."  (*See* Ex. 58.)

398.    In August 2008, in response to a detailed "HSBC Sentry Operational Due

Diligence" questionnaire, Lipton confirmed the Defendants' failure to conduct proper,

independent, and reasonable due diligence on BLMIS's auditor.  Lipton asked Vijayvergiya:

"**[d]o we know any of the other client of BLM's auditors? Or how big they are?  I**

**remember we called over there a while ago.**"  (A true and accurate copy of the August 20,

2008 email from Lipton to Vijayvergiya is attached hereto as Ex. 59 (emphasis added).)

**B.**      ***The Defendants Regularly Received Information That Made It Clear***
***Madoff Was Lying About His Alleged Trades and Performance***

105

MADC1345_00000549

399.     The Defendants had access to vast amounts of information about Madoff that was not available to the public.  The account statements and trade confirmations they received from Madoff showed that Madoff was likely a fraud.  The Defendants knew, among other things, that Madoff's returns were so consistent they were virtually impossible; Madoff alone traded suspiciously large percentages of the total amount of securities that were reported as trading on the entire NYSE, NASDAQ and CBOE, and, did so without any impact on the prices of those securities; Madoff was supposedly executing billion-dollar options transactions on the Feeder Funds' behalf with anonymous counterparties who never asked for the Feeder Funds' identity or collateral and the Feeder Funds never asked for theirs; Madoff often provided FGG with contradictory and sometimes nonsensical explanations of his market transactions on its behalf; and quantitative information the Defendants trumpeted in their sales, offering, and other marketing materials demonstrated that Madoff's consistent returns were so improbable they appeared impossible.

## 1.     FGG's Returns Were Too Consistent for Too Many Years

400.     Both FGG and BLMIS appeared immune from any number of market catastrophes, enjoying steady rates of return at times when the rest of the market was experiencing financial crises.  FGG and BLMIS maintained consistent and seemingly impossible positive rates of return during events that otherwise devastated the S&P 100 – the performance of which formed the core tenet of the Defendants' SSC Strategy.  In fact, between 1996 and 2008, the Feeder Funds did not experience a single quarter of negative returns.

401.     During the burst of the dotcom "bubble" in 2000, the September 11, 2001 terrorists attacks, and the recession and housing crisis of 2008, the SSC Strategy purported to

106

MADC1345_00000550

produce **positive returns, outperforming the S&P 100 by 20 to 40 percent in each instance where the S&P 100 suffered double-digit losses.**

402.    FGG's own marketing materials contain the following rates of returns:

| Year | Fairfield Sentry Rate of Return | S&P 100 Rate of Return |
|---|---|---|
| 1990 | 2.77% | (5.74%) |
| 1991 | 17.64% | 24.19% |
| 1992 | 13.72% | 2.87% |
| 1993 | 10.75% | 8.28% |
| 1994 | 10.57% | (0.19%) |
| 1995 | 12.04% | 36.69% |
| 1996 | 12.08% | 22.88% |
| 1997 | 13.10% | 27.677% |
| 1998 | 12.52% | 31.33% |
| 1999 | 13.29% | 31.26% |
| 2000 | **10.67%** | (13.42%) |
| 2001 | **9.82%** | (14.88%) |
| 2002 | **8.43%** | (23.88%) |
| 2003 | 7.27% | 23.84% |
| 2004 | 6.44% | 4.45% |
| 2005 | **7.26%** | (0.92%) |
| 2006 | 9.38% | 15.86% |
| 2007 | 7.34% | 3.82% |
| 2008[6] | **4.50%** | (32.30%) |

(A true and accurate copy of Fairfield Sentry's October 2008 marketing tear sheet is attached hereto as Ex. 60.)

403.    These consistent rates of return enabled FGG to attract many more investors and dramatically expand investments into BLMIS, including by accepting investments in foreign currencies through Sigma and Lambda into Fairfield Sentry.  FGG also directed that the

---

[6]    Through October 2008.

MADC1345_00000551

remaining 5% of "discretionary" Sentry funds be indirectly invested back into Fairfield Sentry and other FGG funds with direct or indirect BLMIS accounts.

404.    The FGG Affiliates and the Management Defendants failed to conduct proper, independent, and reasonable due diligence or follow up as to how such returns could be achieved legally, or in accordance with their SSC Strategy.  The Defendants knowingly and purposefully turned a blind eye to the fact that this strategy, dependent in large part on how stocks in the S&P 100 performed, continued to yield positive returns without any correlation to the S&P 100.  The Defendants simply marketed to the world FGG's extraordinary and consistent performance.

## 2.    The Defendants' Account Statements Showed the Likelihood of Fraudulent Activity

405.    The Defendants repeatedly claimed they verified that all trades were consistent with the SSC Strategy and that all trades were legitimate.  The Defendants justified their large management and performance fees based, in part, on their alleged daily monitoring of trade activity.

406.    The Defendants knew or should have known of multiple red flags in the trade confirmations and account statements they received.  First, Madoff was known as a pioneer of electronic record-keeping in the BLMIS market-making business.  For clients of the BLMIS IA Business, Madoff never sent one electronic trade confirmation, and for many years, did not provide electronic account statements.  Second, the volumes of securities reported on the Feeder Funds trade confirmations, as well as the month-end account statements, so exceeded reported exchange volumes that they were a strong and recurrent indicia of fraud.

108

MADC1345_00000552

407.    The Defendants understood BLMIS did not make separate trades for each of the BLMIS IA Business customer accounts.  Madoff purchased large baskets of stocks and options, and proportionately allocated them to each account.  For many years, Madoff did not tell the Defendants the amount of assets under his management.  The Defendants estimated as early as 2003 that Madoff was managing approximately $10 billion.  In August 2003, in response to a due diligence query being performed on Fairfield Sentry by a prospective investor, Vijayvergiya told the investor, who had heard Madoff was managing close to $20 billion, that FGG estimated that Madoff was managing about $8-10 billion.  (A true and accurate copy of the August 6, 2003 email from Vijayvergiya is attached hereto as Ex. 61.)

408.    When BLMIS was forced to register as an investment adviser in August 2006, it reported that it had $11.7 billion under management at the end of July 2006.  Later filings stated that BLMIS was managing $13.2 billion at the end of 2006, and $17.1 billion at the end of 2007.  At the same time, the Feeder Funds' accounts reported balances of $4.9 billion through July 2006, $5.5 billion at the end of 2006, and $7.2 billion at the end of 2007, or approximately 42% of the assets BLMIS reported it was managing.  Because the Defendants knew that Madoff allocated his baskets of stocks and options proportionately, the Defendants reasonably should have calculated or estimated the amounts of stocks and options that BLMIS would have had to purchase or sell for all its IA customer accounts.

409.    The Feeder Funds' account statements regularly indicated that BLMIS's trades in a particular stock for Feeder Funds' accounts alone accounted for a large percentage of that stock's trading volume on the listed markets.  This meant that BLMIS's trades for all of its IA customers often approached, or exceeded the entire volume of trades on the listed markets.

109

MADC1345_00000553

410.    Each time Madoff supposedly entered the market, he purportedly purchased between 35 and 50 S&P 100 stocks for the Feeder Funds' accounts.  There were over 150 occasions on which the stocks Madoff purchased for Fairfield Sentry alone accounted for over 20% of the trading volume for those stocks **on the entire NYSE**.  BLMIS, as a single investment adviser, was by itself purportedly trading for all of the BLMIS IA Business customers nearly 50% of all market trading in those stocks.  There were also 50 instances in which Fairfield Sentry's account was responsible for over 25% of market trading in a particular stock (meaning trading for all of the BLMIS IA Business customers rising to over 60%), and 19 times when Fairfield Sentry accounted for over 30% of the trading in a particular stock (meaning the BLMIS IA Business customer trading constituting over 75% of market activity).  On at least 3 occasions, **BLMIS would have had to engage in more trading than occurred on the entire exchange for a particular stock to execute the purported trades for Fairfield Sentry and the other customers of the BLMIS IA Business**.

411.    Even using the OTC market, a single investment adviser could not ever reasonably be responsible for over half of the reported trading of a particular S&P 100 stock. That Madoff could be responsible for more trading than occurred on an entire trading exchange was seemingly impossible.  Sophisticated hedge fund professionals such as the Defendants, seeing such extraordinary percentages in trading patterns by their investment manager – with billions of dollars under his management – were required to undertake proper, independent, and reasonable due diligence or follow up into such indicia of fraud.  The Defendants chose not to investigate these trading patterns.

110

MADC1345_00000554

### 3. Madoff's Extraordinary Trading Volumes Never Affected the Market

412.    The SSC Strategy marketed by FGG involved moving money into the market over the course of one or more days, and then selling off all of those securities over a similar time span.  According to the Defendants, over the course of many years, tens of billions of dollars moved into and then out of the U.S. stock and options markets over the course of just a few days, six-to-eight times a year.  The Defendants never independently investigated how these trades could be accomplished without any impact on the price of the securities bought and sold, without any market footprint, and without anyone "on the Street" knowing or even hearing about Madoff's alleged trading activity.

413.    The sale of tens of billions of dollars of stocks in a short period of time would result in a decreased price of those stocks, cutting into the alleged profits from the sales of such stock.  The Defendants did not conduct independent or reasonable due diligence into the non-impact of Madoff's large trading.

414.    When Madoff exited the market, he claimed to have placed his customers' assets in Treasurys or mutual funds invested in Treasurys.  The movement of tens of billions of dollars in and out of the market should have materially affected the price of Treasurys.  Lipton even remarked how BLMIS had "every angle covered" and was "playing over my head" when he attempted to explain how Madoff "rolled 6-7BN of Tbills on the last day of the year" with "the cost and the market value of investments . . . the exact same" in consecutive years.  (A true and accurate copy of April 2008 emails between Lipton and McKenzie is attached hereto as Ex. 62.) The Defendants did not conduct independent or reasonable due diligence into the Treasurys aspect of the SSC Strategy.

111

MADC1345_00000555

4. **The Feeder Funds' Account Statements Showed That BLMIS Was Trading More Options Than Were Available on the CBOE**

415.   The Defendants could have applied the same calculation they used to determine the universe of BLMIS's equities trading to determine the number of options BLMIS was trading for all of its customers.  S&P 100 Index options are traded on the Chicago Board of Exchange ("CBOE") under the symbol OEX100.  BLMIS **nearly always** traded more OEX100 options than were traded on the entire CBOE.

416.   From 2001 to 2008, when comparing the volume of OEX100 options that BLMIS was purportedly trading on behalf of the Feeder Funds, with the CBOE volume, BLMIS traded more OEX100 options than the entire volume of the CBOE **97.6% of the time**.  During those eight years, BLMIS traded fewer options than were traded on the options exchange on a given day **only 18 times**.

417.   A comparison between the volume of OEX100 put options BLMIS traded on behalf of the Feeder Funds and the volume of those same put options traded on the entire exchange is striking, as demonstrated on the next page.

112

EXHIBIT A



Fairfield Greenwich Group - Historic Option Activity compared to CBOE 2001-2008 (Puts Only)

Red line indicates Fairfield Greenwich Group Option Volume
Black line indicates CBOE Option Volume

113

MADC1345_00000557

418.    The volume of OEX100 put options BLMIS traded on behalf of the Feeder Funds (the red line) **completely dwarfs** the volume of OEX100 put options traded on the entire CBOE (the black line).  Almost every time BLMIS entered the market to trade put options for the Feeder Funds, it traded more OEX100 put options than all trades on the CBOE **combined**.

419.    Based upon FGG's belief that the Feeder Funds accounted for 42% of BLMIS's trading, BLMIS would have been executing for all of its customers approximately 2.4 times as many trades as he was executing for the Feeder Funds alone.  This means that FGG must have believed that, for instance, when BLMIS was trading 140,000 options for the Feeder Funds' accounts in late 2008, BLMIS was trading over 300,000 options for all of his accounts.

420.    The amount by which BLMIS's trading overshadows the trades made by every other person who traded OEX100 put options on the CBOE is unbelievable, as shown below.

114

MADC1345_00000558



Estimated Option Activity for all BLMIS Accounts compared to CBOE 2001-2008 (Puts Only)

Red line indicates Estimated BLMIS Option Volume (based on a 2.4x multiplier of Fairfield Greenwich Group Option Volume)
Black line indicates CBOE Option Volume

115

MADC1345_00000559

421.    The Defendants did not perform independent and reasonable due diligence or follow up concerning the put option trading BLMIS purportedly conducted on their behalf.

422.    As shown below, the volume of OEX100 call options BLMIS traded on behalf of the Feeder Funds, and on behalf of all of BLMIS's customers, versus the volume of those same call options traded on the entire exchange, is equally telling.  There was rarely a time when BLMIS traded **fewer** OEX100 call options than were traded on the CBOE.

MADC1345_00000560



Fairfield Greenwich Group - Historic Option Activity compared to CBOE 2001-2008 (Calls Only)

Blue line indicates Fairfield Greenwich Group Option Volume
Black line indicates CBOE Option Volume

117

MADC1345_00000561



Estimated Option Activity for all BLMIS Accounts compared to CBOE 2001-2008 (Calls Only)

Blue line indicates Estimated BLMIS Option Volume (based on a 2.4x multiple of Fairfield Greenwich Group Option Volume)
Black line indicates CBOE Option Volume

118

MADC1345_00000562

423.    The Defendants did not perform independent and reasonable due diligence or follow up as to the trading volume for their accounts.  Had the Defendants conducted proper due diligence they would have confirmed that their account statements, their strategy, and BLMIS were all a sham.

### 5.    The Defendants Agreed to Enter into Billions of Dollars in Options Contracts With Unidentified Counterparties

424.    In the OTC marketplace, where Madoff claimed to be trading, each transaction requires a private contract between the two parties.  In order to allegedly perform the options trades, Madoff had the Feeder Funds execute a Master Agreement for OTC Options.  (A true and accurate copy of an excerpt from BLMIS's Master Agreement for OTC Options is attached hereto as Ex. 63.)  Under that agreement, Madoff served as the Feeder Funds' agent in executing any options trade.  The agreement explicitly states the Feeder Funds could not look to Madoff if the counterparty failed to perform.  (*See id.*)  Thus, unless the counterparties were reliable, sufficiently capitalized, and liquid, the options could be rendered useless in hedging the Feeder Funds' investments.  As a result, under the Master Agreement, if a counterparty failed to perform, **it was the Feeder Funds, and not Madoff, who were exposed**.

425.    The Defendants did not review, comment, modify, negotiate, or reject any form of draft or final counterparty agreement or OTC transaction confirmation.  Despite bearing the risk of the counterparties' failure to perform, the Defendants had no knowledge of the counterparties' identities.  Madoff refused to identify the counterparties claiming he had to prevent his clients from dealing directly with the counterparties, and that the names of parties were proprietary.  Madoff would eventually state that the counterparties were large European financial institutions.

MADC1345_00000563

426.     Vijayvergiya and Tucker knew Madoff's counterparty explanations were
suspicious.  In response to a financial institution that told Vijayvergiya "**that his contacts at two
of the largest investment firms on Wall Street had no knowledge of the options business
(Citi and CSFB)**." Vijayvergiya told Tucker that the investor "seemed fine with my response re:
options counterparties."  He noted the investor was "**OK for now** - but I may still pose the casual
question to Frank [DiPascali] at some point . . . ."  (A true and accurate copy of Vijayvergiya's
May 26, 2005 email to Tucker is attached hereto as Ex. 64 (emphasis added).)

427.     After Bear Stearns collapsed in February 2008, inquiries regarding counterparty
risk under the SSC Strategy intensified.  Investors wanted to know what counterparties were
trading options with Madoff, and whether those counterparties were stable and reliable.  In the
nearly 20 years FGG had been invested with Madoff it had never been provided the name of a
single counterparty that bought options from or sold options to BLMIS.  The Defendants failed
to perform any proper, independent, or reasonable due diligence or follow up to understand and
verify any aspect of the options counterparty component of their SSC Strategy.

428.     As the stock market continued to weaken, and FGG was threatened with hundreds
of millions of dollars in investor redemptions, Vijayvergiya contacted Madoff in June 2008.
During the call, Vijayvergiya asked Madoff about BLMIS's counterparties.  Madoff told
Vijayvergiya that the options counterparties with whom BLMIS were required to post Treasurys
as a performance assurance, and that no one counterparty accounted for more than 10% of the
options trades.  Madoff reiterated that he did not want FGG providing their investors with too
much information regarding BLMIS.  (A true and accurate copy of the June 4, 2008
memorandum summarizing the meeting is attached hereto as Ex. 65.)

MADC1345_00000564

429.     The Defendants never inquired of Madoff as to why <u>past</u> counterparties needed to be concealed to protect operations or execution of the strategy.  The Defendants also never sought to independently confirm, outside of Madoff himself, what exactly were the options "performance assurance," or where, when, or by whom the assurances were posted.  The Defendants instead chose to accept Madoff's suspicious explanations.

430.     Noel, Tucker, McKeefry, and Vijayvergiya met with Madoff in October 2008 and asked him to provide additional information about his options counterparties.  Madoff told them his options counterparties were large institutions and that he performed credit checks on each of them.  **<u>Even though they were FGG's counterparties and not his</u>**, Madoff again refused to provide the names of any counterparties.  The Defendants continued to do nothing to independently verify any of Madoff's statements, taking Madoff solely at his word.  The Defendants did not see or review a single document for these contractual relationships on their own accounts.

431.     With the massive purported volume of BLMIS-related options trades, there were only a limited number of institutions that could have satisfied Madoff's and FGG's trading needs.  The Defendants regularly communicated with many large European financial institutions – Madoff's alleged counterparties.  Despite their regular contacts with institutions which fit Madoff's options counterparts profile, the Defendants never asked any of these institutions if they were trading options with Madoff.  In fact, FGG never independently contacted any institutions to determine if they were trading S&P 100 options with Madoff.

**6.     The Supposed Options Trading Structure Under the SSC Strategy Was Inconsistent With Industry Practice**

121

MADC1345_00000565

432.    The purported BLMIS-Feeder Funds options trading was inconsistent with industry practice.  Both Madoff and FGG claimed the options counterparties entered into agreements that were identical to the agreements the Feeder Funds entered into with BLMIS serving as each parties' agent.  As a result, any resulting OTC trade would result in a contract between the options counterparty and the Feeder Fund.

433.    FGG and Madoff claimed Madoff traded large blocks of options contracts and then allocated them proportionately to each of the BLMIS IA Business customers, like the Feeder Funds.  Under normal industry practice, a block trade and allocation process requires the broker to trade as a principal and not an agent, with all transactions consisting of two trades:  one between the one party and broker and then a second trade between broker and the other party. The two-trade process is required for block trade and later allocation transactions because OTC option trades are contracts between the two parties and the identity of the customer being allocated the option agreement is unknown at the time of the trade.  In order that the SSC Strategy be consistent with industry practice, BLMIS would have been the principal in the two trades, one with the counterparty and the second with the BLMIS customer.

434.    Other structural issues which were readily apparent included the alleged collateralization of the options trading.  Madoff told the Defendants that he limited each counterparty's exposure to 10% of his overall position, and required each counterparty to post Treasurys in escrow accounts to serve as collateral to guarantee performance of the put options. When asked what collateral the counterparties required of the Feeder Funds in order to guarantee the performance of the call option sold to them, Madoff claimed none was required because his customers held the equities.

122

MADC1345_00000566

435.    Madoff's explanation was facially false for several reasons:  (1) the basket of the 35 to 50 equities did not perfectly match the entire S&P 100 Index – the basis of the call option; (2) Madoff was free to sell the equities, which he did on occasion, prior to the expiration of the call, leaving the counterparty with no collateral at all; and (3) Madoff stated that the option counterparty had no lien against its allocated equities which, if true, meant the counterparties had no collateral protecting their position.

436.    Madoff's purported options trading structure, leaving the BLMIS IA Business customer's counterparty exposed to large credit risk without ever knowing the identity of the BLMIS IA Business customer, was irregular and inconsistent with industry practice.  FGG never conducted independent or reasonable due diligence about this aspect of its own SSC Strategy, accepting instead Madoff's implausible explanations without asking any questions.

### 7.    The Options Trade Confirmations the Defendants Received From BLMIS Did Not Comply With Industry Standards

437.    The Feeder Funds' options trade confirmations contained certain abnormalities. The options trade under the SSC Strategy was supposed to be a private contract between two parties in the OTC market and the counterparty should have been expressly identified on the confirmation statement.  None of Madoff's options trade confirmations identified the counterparty.

438.    By contract, options traded on the CBOE have an identifier number known as a "CUSIP" (Committee on Uniform Security Identification Procedures).  The CUSIP allows traders to quickly access electronic information regarding a particular option by simply inputting the CUSIP number into data terminals.  Because OTC options are private transactions, the

MADC1345_00000567

options are not assigned any CUSIP number.  Madoff's trade confirmations – reviewed by FGG – included a CUSIP indicating that they were traded on the CBOE.

439.    The master options agreement stated Madoff was acting as the agent of the Feeder Funds when he entered into options trades, however each confirmation indicated BLMIS was trading as a principal.  More importantly, once BLMIS was registered as an investment adviser with the SEC in 2006, SEC regulations prevented BLMIS from trading for a customer account as a principal without written authorization from the customer for each trade.  The Feeder Funds never transmitted any authorizations permitting BLMIS to trade as a principal.  Nevertheless, every trading confirmation the Feeder Funds received from BLMIS indicated BLMIS acted as a principal, even after he registered as an investment adviser.

440.    The Defendants knew of and ignored these red flags.  Simply put, the Defendants did not perform independent or reasonable due diligence into their own trading confirmations.

### 8.    Madoff's Inconsistent Stories Were Ignored by the Defendants

441.    Madoff's explanations about the SSC Strategy often changed according to circumstances, and with whom he was talking.  The Defendants knew Madoff made inconsistent statements about the SSC Strategy but did nothing in response.

### a.    Options Trading

442.    When Madoff first began trading options pursuant to the purported SSC Strategy, he claimed he traded the options contracts on the CBOE.  When confronted by customers questioning whether the volume of his options trading activity was too large for the CBOE, Madoff shifted his story and claimed he had moved to OTC trades without telling his customers.

124

MADC1345_00000568

The Defendants never investigated Madoff's statements. Instead, the Defendants falsely
repeated whatever Madoff told them about where he was trading options.

443. When FGG's investors expressed concern that Madoff could purchase equities but
might not find counterparties from whom to purchase the put options to protect the equities
purchases from a market drop, Madoff reassured FGG by claiming that he spoke to option
counterparties to determine option availability before he purchased any equities. (A true and
accurate copy of the Vijayvergiya's July 23, 2008 email to Barreneche is attached hereto as Ex.
66.)

444. By contrast, during the 2006 SEC investigation Madoff expressed concern that the
SEC would conclude that the SSC Strategy would promote front-running. During the "scripting"
call with Vijayvergiya and McKenzie, Madoff discussed the need not to say anything that might
allow the SEC to conclude one party could front-run the trades. When Vijayvergiya asked
Madoff whether he spoke to counterparties to assure puts were available before he purchased
equities, Madoff replied that he did not contact the options counterparties ahead of time because
it would be too easy for them to front-run his trades. (*See* Ex. 39.) As was customary, the
Defendants did not perform independent or reasonable due diligence or follow up when Madoff
made these contradictory statements.

b. **Madoff's Auditor**

445. The Defendants knew that Madoff told changing stories about the relationship
between BLMIS and its auditor. When questioned about Friehling, Madoff sometimes told
customers, including FGG, that he did not change auditors because there was a family
connection to Friehling. Internal FGG communications discussed the fact that BLMIS's auditor

125

was a member of Madoff's family.  (*See* Ex. 38.)  This lack of independence between the auditor

and audit client would be a conflict of interest and itself a huge red flag of fraud.  The

Defendants did not conduct due diligence as to this conflict of interest.  Later when the so-called

"family auditor" conflict of interest issue arose, Madoff claimed he had no family ties to

Friehling.  The Defendants conducted no due diligence into this changing story.

### c.      Number of People at BLMIS Executing the Strategy

446.      At times, FGG repeated Madoff's claims of having dozens of PhD traders and

administrative personnel involved in executing the SSC Strategy.  However, in 2006, when

BLMIS filed its ADV form as independent advisor, BLMIS reported it had only five employees

in the BLMIS IA Business.  After obtaining the ADV form, the Defendants took no action to

reconcile Madoff's prior representations and the information he provided to the SEC.  Instead,

the Defendants simply repeated what Madoff told them about the traders in  the BLMIS IA

Business operation.

### 9.      The Defendants' Own Due Diligence Procedures Should Have Uncovered Anomalies in Madoff's Trading

447.      The Defendants told their investors that as part of their due diligence procedures

they reconciled trade confirmations immediately.  The Defendants knew or should have known

of certain trading anomalies through their trade reconciliation efforts.

448.      There were days when the Feeder Funds' trade confirmations indicated Madoff

traded stocks at prices that were outside the daily ranges of prices for those stocks.  As an

example, Fairfield Sentry's account statements for October 2003 reported purchases of Intel

Corporation (INTC) of 1,082,543 shares, 1,097,173 shares, and 67,837 shares.  BLMIS's records

126

indicate these stocks were purchased on October 2, 2003 for $27.63 per share. The daily price range for Intel Corporation stock purchased and sold on October 2, 2003 in fact ranged from a low of $28.41 to a high of $28.95.

449.    Fairfield Sentry's and GSP's account statements for December 2006 reported sales of Merck (MRK) of 267,035 shares, 261,266 shares, 15,386 shares, and 786 shares. BLMIS's records and the Feeder Funds' trade confirmations reflect that these stocks were sold on December 22, 2006 for $44.61. The price range for Merck stock in fact bought and sold on December 22, 2006 was between $42.78 and $43.42.

450.    According to the Defendants, they created procedures and employed them every day for the specific purpose of catching such indicators of fraudulent behavior. That in fact never occurred.

**10.    The Quantitative Analysis the Defendants Touted to Their Own Investors Proved Madoff's Returns Were Virtually Impossible.**

451.    Quantitative analysis that is standard in the hedge fund industry revealed that Madoff's positive, consistent returns were, statistically, highly improbable. FGG told its investors that it performed such analysis, but refused to recognize the implications of their findings – BLMIS was a fraud.

452.    FGG's marketing materials emphasized that Vijayvergiya and his risk management team performed exacting quantitative analysis of the Feeder Funds' investments. This analysis included utilizing an industry standard known as the Sharpe ratio to gauge portfolio performance. The Sharpe ratio, developed by William Sharpe, winner of the Nobel Prize in Economic Sciences, measures how well a trading strategy compensates the investor for the risk

127

MADC1345_00000571

taken. A higher Sharpe ratio indicates the strategy provides a higher return relative the associated risk. For funds with monthly net asset values ("NAV"), such as the Feeder Funds, the Sharpe ratio is calculated as follows:

$$\frac{\text{(The Fund's Average Monthly Rate of Return)} - \text{(That Month's Risk-Free Rate)}}{\text{Standard Deviation of the Fund's Monthly Returns}}$$

453. BLMIS's Sharpe ratio was remarkable. When compared to the over 800 other hedge funds that reported data to major hedge fund databases, the probability Madoff could maintain such high Sharpe ratios by providing positive returns with very little volatility, was **less than 1%**. When compared to funds that employed comparable strategies to Madoff's SSC Strategy, that probability drops to **less than 0.1%**. In selling his services to FGG, Madoff noted that other star managers might have higher returns, but he produced steady returns without the volatility of those star managers. In fact, for a 13-year period, Fairfield Sentry had a higher Sharpe ratio than Warren Buffett, George Soros, Bruce Kovner, and John Paulson in all but six of 52 quarters between 1995 and 2007. The probability of Fairfield Sentry's Sharpe ratio outperforming these star money managers in almost every quarter for nearly 13 years is approximately **1 in 200,000,000**.

454. Such an understanding and detailed analysis of the Sharpe ratio was what Defendants touted to be part of their exceptional due diligence procedures. The Feeder Funds' nearly impossible Sharpe ratio was in fact one of the factors that led quantitative analysts, such as Edward Thorp and Harry Markopolos to conclude that Madoff was operating a Ponzi scheme.

455. Independent analysts viewed the Feeder Funds' Sharpe ratio with a great deal of skepticism because the Feeder Funds' Sharpe ratio **always** remained high. The Feeder Funds' year-over-year Sharpe ratio was driven by the low volatility of the Feeder Funds' performance in

128

often highly volatile markets, and without any meaningful correlation between the two. The Defendants did not perform any reasonable or independent due diligence into the fact that it was nearly impossible for the Feeder Funds to have retained such a consistently high Sharpe ratio.

456. FGG claimed that Madoff had great market timing based on his "feel" for the flow of the market, premised on short-term market timing. Vijayvergiya responded to critics of Madoff's market timing abilities by claiming Madoff had unique access to market flow information through his market-making business.

457. Independent analysts rejected the Defendants' explanations about Madoff's ability to perfectly time the market for over 20 years. Many analysts viewed Madoff's perfect timing based on market flow as indicative of illegal front-running. The Defendants knew that front-running was a "[t]ypical Madoff rumor[]," but they never tried to investigate. (A true and accurate copy of the February 27, 2004 email from Vijayvergiya to FGG's Marco Musciacco is attached hereto as Ex. 67.)

458. Moreover, despite employing a market timing strategy, Madoff would artificially take his customers' cash out of the market near the end of the quarter for reasons having nothing to do with the SSC Strategy. Madoff claimed to move his customers' funds, like the Feeder Funds, in order to avoid what he understood to be the disclosure requirements of a Form 13F filing under the SEC rules requiring those who exercise discretion over accounts having more than $100 million in exchange-traded or NASDAQ securities to report their holdings.

459. The Defendants knew Madoff's desire to avoid reporting requirements was the reason for his end-of-quarter positions. The Defendants also knew that Madoff's reason for

129

going to cash would raise concerns among institutional investors. Vijayvergiya and other FGG

sales personnel were directed to provide other reasons for the end-of-quarter cash positions.

460. After Yanko della Schiava, another Noel son-in-law, asked Vijayvergiya why

Madoff moved all customer accounts out of the market at the end of the year, Vijayvergiya gave

two nonsensical responses based on purported trading strategy. Della Schiava responded, "I

remember Jeffrey [Tucker] once specifically mentioning about the last days of the year to be in

cash so he [Madoff] did not have to fill certain tax forms . . [*sic*] or something similar."

Vijayvergiya then responded, "Yes – that is a third possible reason but I have been advised not to

emphasize this." Vijayvergiya went on to write, "I am told that the rule to which Jeffrey

[Tucker] is referring requires that if Madoff ends the year invested on December 31, then they

are required by law to report their holdings in these same positions for the next four quarters. I

am further told that Madoff has been reluctant to do this . . . ." (A true and accurate copy of the

December 11, 2003 email from Vijayvergiya to della Schiava is attached hereto as Ex. 68.)

461. The Defendants performed no independent or reasonable due diligence as to why

a strategy based on market timing would pull itself out of the market for reasons having nothing

to do with market timing and instead gave cover to Madoff's real reason he was out of the

market – avoiding 13F filings that would lead sophisticated investors to conclude he was a fraud.

## IX.   THE DEFENDANTS WERE WILLING TO IGNORE THE RED FLAGS; THEIR INVESTORS AND CONSULTANT WERE NOT

462. The Defendants looked away when faced with red flags about BLMIS. The

Feeder Funds' investors, who paid the Defendants to conduct proper, independent, and

reasonable due diligence on BLMIS, and the funds' potential investors were far more concerned

than the Defendants when they learned of Friehling; BLMIS's unusual fee structure; the fact that

130

BLMIS was the investment manager, self-clearing prime broker, and custodian; and the

Defendants' own lack of transparency and limited understanding of their own investment

strategy.

463.    For example, in February 2005 one investment group explained that it had

"decided to NOT invest in the Fairfield Sentry fund" due to the non pure independence between

the true manager of the fund and the prime broker/Custodian of the fund."  One of Fairfield-

UK's employees told Tucker, Landsberger, and Vijayvergiya, "at least their reason was was [*sic*]

a good one."  (A true and accurate copy of the February 1, 2005 email to Tucker is attached

hereto as Ex. 69.)  Instead of investigating the issue further, Piedrahita was still saying over two

years later that "there is absolutely nothing we can do about it . . . ."  (A true and accurate copy

of the June 21, 2007 email from Piedrahita to Landsberger, Vijavergiya, Lipton, and the

Executive Committee is attached hereto as Ex. 70.)

### A.    *FGG Does Everything It Can to Mollify Investor Concerns as Opposed to Performing Independent Inquiry Into the Possibility of Fraud*

464.    Throughout the 2000s and increasingly in the 2006–08 period, the Defendants

knew that "concerns about lack of transparency" troubled the Feeder Funds' investors and

potential investors, causing them to redeem from the Feeder Funds.  (A true and accurate copy of

the June 10, 2008 email from Vijayvergiya to McKenzie is attached hereto as Ex. 71.)  The

Defendants tried to stem the tide of redemptions, and tried to convince investors there was

nothing about which to be concerned, rather than independently or reasonably investigate or

follow up to determine whether Madoff's lack of transparency was an indicia of fraud.

131

MADC1345_00000575

465.    To respond to concerns about Madoff's lack of transparency, the Feeder Funds'
sales force was provided with "talking points." Vijayvergiya sent an e-mail to McKenzie and
others in which he suggested that Fairfield Sentry personnel ask its customers whether
redemptions from the fund were related specifically to the lack of transparency or any other
concerns over BLMIS. The Feeder Funds' sales force was to try to convince investors not to
redeem their interests in Fairfield Sentry by emphasizing FGG's knowledge, monitoring and
insight into Madoff, his operations, the performance, and the SSC Strategy.

466.    In May 2008, the Defendants received basic questions from an institutional client
asking the Defendants to confirm how Fairfield Sentry's accounts were segregated at BLMIS.
(A true and accurate copy of FGG's May 2008 internal notes in response to investor questions is
attached hereto as Ex. 72.) The Defendants could not answer these basic questions because they
had never independently confirmed that any trades were being made or that BLMIS was in fact
holding their assets. Murphy recommended that, "**we confirm, but not sure we answer
directly their questions on how our account is segregated and how this can be confirmed?**"
(*See* Ex. 41 (emphasis added).) Murphy also admitted that he did not know whether the
Defendants had copies of the audit reports for BLMIS or whether "**we get to talk with the
auditors?**" (*Id.* (emphasis added).)

467.    As of May 2008, FGG had invested billions of dollars into Madoff and received
over a billion in fees from the Feeder Funds, yet the Defendants still did not know **whether
client funds were segregated** or whether anyone knew anything about Madoff's auditor.
Vijayvergiya also admitted that "**there are certain aspects of BLM'S operations that remain
unclear. . . .**" (*Id.* (emphasis added).) In internal email discussions that followed the investor's

132

redemption, Vijayvergiya stated that the client may have heard "certain rumors," which caused it to backpedal on its Fairfield Sentry investments. (*Id.*)

468.     In June 2008, FGG partner and Chief Global Strategist of FGG, David Horn, emailed Vijayvergiya about a prospective client. The email stated that the client "**has always heard about Madoff, but hears things that scare her . . . so neutralize the scare with our transparency . . . this will be a piece of cake . . . .**" (A true and accurate copy of the June 2, 2008 email from Horn to Vijayvergiya is attached hereto as Ex. 73 (emphasis added) (alteration in original).) The Defendants' stated objective was to neutralize investor or prospective investor fears. The Defendants did not conduct proper, independent, and reasonable due diligence in connection with the red flags raised by potential investors.

469.     In October 2008, Fairfield Sentry sought an investment from Merrill Lynch ("ML"). ML declined, explaining that BLMIS's unwillingness "to sit down with our due diligence team and open the books and operations" kept ML from investing. The ML representative stated, "I realize the track record speaks for itself, but ML has a process and it involves a lot of due diligence and learning. So I admire you[r] track record but it does not help me do business with your fund." (A true and accurate copy of the October 21, 2008 email from ML to Barreneche is attached hereto as Ex. 74.)

### B.     *FGG's Consultant Tells the Defendants Madoff May Be a Fraud*

470.     FGG's investors, industry experts, other fiduciaries, and money managers were not the only ones flagging indicia that Madoff was a fraud. An FGG consultant, Gil Berman ("Berman"), also told the Defendants Madoff might be a fraud. On several occasions Berman raised serious concerns regarding BLMIS and Madoff.

133

MADC1345_00000577

471.     When reviewing the trade tickets and account statements, Berman noticed that Madoff was at times taking actions inconsistent with the SSC Strategy he was required to execute.  The Feeder Funds' Options Agreement with BLMIS indicated that BLMIS would "only write (sell) covered calls against long stock positions, and buy stock index puts or puts on the individual stocks that the account owns."  Berman noticed that Madoff was occasionally purchasing double the notional amount of put options to cover a single basket of stocks, a trade not consistent with the SSC Strategy.  Doubling the put option position would actually be detrimental because BLMIS had to pay for put options, and thus was wasting money by purchasing excess puts.

472.     In May of 2008, this over-hedging strategy accounted for approximately $95 million of Sentry's total earnings.  (A true and accurate copy of the spreadsheet accompanying Berman's report is attached hereto as Ex. 75.)  In a June 13, 2008 email to Vijayvergiya, Berman stated that "there were several unusual transactions" in May 2008 and that "[a]ll of the [options] trades produced excess profits . . . ."  (A true and accurate copy of the June 13, 2008 email from Berman to Vijayvergiya is attached hereto as Ex. 76.)

473.     Later that month, in a telephone call with FGG, Berman noted plainly that **<u>even Madoff could not win 100% of the trades</u>**.  Berman expressed concern that Madoff might be backdating trade confirmations.  He recommended the Defendants require same-day trading tickets, obtain information on the options counterparties, and **verify that BLMIS was actually holding all of the assets purportedly in the Feeder Funds' accounts**.  (A true and accurate copy of Berman's notes from the June 25, 2008 call with FGG is attached hereto as Ex. 77.)

134

MADC1345_00000578

474.     However, the Defendants did not take any of Berman's due diligence recommendations – all of which should have been done regularly for years and any one of which would have disclosed the fraud.  The Defendants ignored Berman's recommendation.

475.     At another point in time Berman also noticed at least one risky "naked call position," where BLMIS had sold an S&P 100 call option but did not hold the underlying stock. A naked call position occurs when the seller of the call does not own the shares underlying the call option.  In Madoff's SSC Strategy this would occur if he sold a call option for the S&P 100 Index but did not own the basket of stocks correlated to the index.  If the index rose, the call would be exercised by the buyer and the Feeder Funds would be exposed to significant losses because they would not have hedged the risk.

476.     Berman brought these activities to Tucker's and Vijayvergiya's attention because they were inconsistent with the SSC Strategy, and, depending on how the market moved, potentially harmful to the Feeder Funds' positions.  The real reason the Feeder Funds' statements showed these unusual positions was that during certain down months, it was extremely difficult, even for Madoff, to fabricate trades that could justify his returns.  Madoff created fictitious options trades inconsistent with his mandate and trading authority in order to create a consistently positive returns.

477.     This type of options speculation violated the terms of BLMIS's investment agreement with the Feeder Funds, where Madoff agreed to invest all of the Feeder Funds' money pursuant to the SSC Strategy.

478.     Armed with Berman's analysis and recommendations, and even though their own documents showed otherwise, when Noel, Tucker, McKeefry, and Vijayvergiya met with

135

MADC1345_00000579

Madoff in October 2008, they did not question Madoff's responses when he stated the value of the options would never exceed the notional amount of the equities.

479.     The Defendants did not independently or reasonably investigate or follow up on any of these indicia of fraud made known to them by Berman.

## X.     DESPITE YEARS OF SEEING INDICIA OF FRAUD, THE DEFENDANTS CONTINUED TO FUNNEL BILLIONS TO MADOFF

480.     For years, the Defendants had overwhelming evidence that Madoff was not a legitimate investment manager.  Instead of performing as fiduciaries and protecting investors from fraud, the Defendants employed a number of ways to raise capital for Madoff, in order to enrich themselves, including, *inter alia*, creating new funds that would then invest a portion of their assets back into Fairfield Sentry; forming GSP to accommodate new investors; working with JPMorgan Chase & Co. ("JPMC"), Natixis, Nomura, BBVA, and many other financial institutions to create leveraged note programs based on Feeder Funds' returns, fully expecting the financial institutions to hedge their exposure by investing directly in Feeder Funds; and finally, when massive redemptions were pushing Madoff to the brink, agreeing to serve as the exclusive marketers for a "new" BLMIS strategy.

### A.     *2006:  GS Is Expanded and GSP Is Created*

481.     The Defendants created GS to accommodate U.S. investors that wished to invest their money with BLMIS.  By 2006, FGG decided it wanted to further accommodate U.S. investors and on May 1, 2006 created GSP for those investors that did not qualify to invest in GS.

### B.     *2007:  Leveraged Note Programs*

136

482.    More money invested with Madoff translated to more FGG fees and, in 2007, the Defendants expanded aggressively into many types of leveraged products.  Madoff's commercial banker, JPMC, for example, structured about $250 million in leveraged notes based on the returns of Fairfield Sentry and Sigma.  Others such as Natixis, Nomura, and BBVA did the same.

483.    Purchasers of these notes would be entitled to receive returns based on a multiple of the returns of the underlying Feeder Fund.  As an example, in February 2007, JPMC offered a 3x leveraged certificate on Sigma.  Individual investors who purchased a note for this product would invest a specific sum (e.g., $100), and would earn returns as if they had actually invested three times that sum (e.g.,  $300).  Each of these products was time restricted.  Investors who purchased a note from JPMC in 2007 would not have been able to collect their profits until the note matured, generally sometime between five and eight years after the initial investment.

484.    The benefit to the Feeder Funds of these note programs was the potential investment from the financial institutions structuring the notes.  For instance, if JPMC structured a note on Sigma, and thereby guaranteed returns based on Sigma's performance, JPMC would be expected to hedge that exposure by purchasing shares of Sigma.  And that is what happened.  The financial institutions invested hundreds of millions of dollars in the Feeder Funds and Sigma, from which the Defendants reaped even greater fees.

### C.    *2008:  The Emerald Funds*

485.    In late 2008, the Defendants were still working with Madoff to inject additional funds into BLMIS.  In November 2008, Madoff contacted the Defendants about setting up new Madoff feeder funds.  In a short telephone conversation with Tucker, Madoff stated without

137

much specificity he had a new strategy which would be similar to the SSC Strategy, but would

produce higher volatility with higher returns.

486.    Madoff offered this new strategy to the Defendants, who would serve as the

exclusive marketer.  In order to launch the new strategy, Madoff asked that the Defendants raise

$500 million, with $200 million to be raised by the end of 2008.  The Defendants agreed.

487.    After nothing more than a brief telephone conversation describing the new

strategy and a one-page performance report purporting to show the strategy's simulated *pro

forma* performance over the previous year, the Defendants began raising money for the new

funds BBHF Emerald and Greenwich Emerald ("the Emerald Funds").  The Defendants tried to

raise this capital even though they had not issued a private placement memoranda, offering

documents, or other fund documentation, and had not received any details regarding, nor

conducted any due diligence on, this new strategy.

488.    On December 10, 2008, Tucker drafted a letter to Madoff outlining the steps FGG

was taking to slow withdrawals from BLMIS:

> We have taken a number of steps with our other funds in order to
> put all of our investable capital in Sentry and the new split strike
> strategy which we call Emerald.  While the full results of this
> strategy will take a few months to take effect, they will include:
>
> - investments in Sentry by existing Fairfield funds
>   (~$100mm)
>
> - liquidating other Fairfield funds and transferring the
>   assets to Sentry and Emerald (up to ~$150mm)
>
> - purchases by the firm of Sentry positions from
>   clients rather than having them redeem from Sentry
>   (~$150mm)
>
> - investments by individual partners of the firm in

138

MADC1345_00000582

Sentry and Emerald (~$50mm)

> We are, as would be expected, aggressively cutting fees for new
> subscriptions and offering significant fee-sharing incentives to our
> agents and finders.

(A true and accurate copy of the December 10, 2008 draft letter from Tucker to Madoff is attached hereto as Ex. 78.)

489.    The Defendants and Madoff were partners until the bitter end.

## XI.    THE AFTERMATH

490.    On December 11, 2008, the world's largest Ponzi scheme was uncovered and Madoff was arrested. The Defendants' failure to conduct proper, independent, and reasonable due diligence and follow up on Madoff, and their willful ignorance of information readily available to them for nearly two decades helped facilitate the scheme and allow billions to be lost as a result.

491.    By the time Madoff was arrested, the Management Defendants had only a few million dollars invested with Madoff. Piedrahita had no investments with Madoff, Tucker had approximately $900,000 and Noel had a slight percentage of his wealth, $9 million, invested through Madoff. The Defendants retained every other cent of the fees, partnership distributions, and other monies they unjustly "earned" and had collected over nearly two decades. They have to-date kept millions of dollars of stolen Customer Property.

492.    On December 12, 2008, the day after Madoff's arrest, Tucker faxed withdrawal notices to BLMIS for all of the Feeder Funds' monies. The small fraction of assets left in BLMIS's account was not sufficient to fulfill the redemptions. The result of the FGG Affiliates and Management and Sales Defendants' actions was a precipitous drop in the Net Asset Value

MADC1345_00000583

("NAV") of the Feeder Funds. The NAV of the Feeder Funds is defined as the value of their

cash, stocks, and options, less any liabilities. When Madoff admitted he had never purchased

any stocks or options with the money his customers gave him, the NAV of the Feeder Funds

dropped to almost nothing. The Feeder Funds and their investors lost billions. The remaining

Defendants, on the other hand, whose fees and profits were based directly on the previous,

wrongly calculated NAVs, had already walked away with over a billion dollars.

493.    Shortly after the Madoff scheme collapsed, the Defendants publicly claimed they

were innocent and had no reason to suspect anything was amiss at BLMIS. (A true and accurate

copy of the December 12, 2008 FGG press release is attached hereto as Ex. 79.) These

statements were false.

494.    As alleged support for their claims of innocence, certain Management Defendants

proclaimed FGG had created a new feeder fund and funded it with $10 million of personal funds

sent to Madoff days before his arrest. However, their statement was not the complete story.

495.    These Management Defendants did not mention the Stable Fund, which was

limited to the FGG partners and their spouses. In October 2008, the Stable Fund liquidated and

redeemed its remaining $4.4 million in assets out of Fairfield Sentry. On December 8, 2008, the

Defendants informed Madoff that it would be forwarding another major redemption. Madoff

reacted to this news by suggesting that the Defendants were not a suitable partner for his

investment services. When faced with Madoff's threat, through their new Emerald Funds, the

Management Defendants put back the $4.4 million they had taken out of BLMIS through the

Stable Fund.

140

MADC1345_00000584

496.    After the scheme was revealed, Lipton immediately emailed his personal broker and asked that a new account be set up in his wife's name, where he transferred all of his municipal bonds and treasury investments.  Piedrahita and his wife sold their U.S. residence and moved from country to country after Piedrahita took delivery of a $12 million yacht.

497.    Even after Madoff was arrested, the Defendants continued to lie about the due diligence they purportedly had performed.  As late as February 2009, FGG proclaimed that it regularly reviewed DTCC records.  (A true and accurate copy of the February 5, 2009 Wall Street Journal article entitled, "Markopolos Testifies Fairfield Knew Little About Madoff," is attached hereto as Ex. 80.)  The Defendants' statements were not and could not be true.  If any of the Defendants had examined a DTCC record, they would have immediately discovered not a single security had ever been traded on their behalf.

## XII.    **"PEOPLE WILL TELL:  OH THIS WAS FRAUD, THERE IS NOTHING WE COULD HAVE DONE.  BUT THIS IS SIMPLY NOT TRUE!  YOU SHOULD HAVE DONE DUE DILIGENCE!"**[7]

498.    There was nothing special about the kind of due diligence that needed to be done to unearth signs that Madoff was possibly a fraud.  Many fund managers, due diligence research and consulting firms, consultants, banks, and other industry professionals, with far less access to BLMIS than the Defendants, concluded many years prior to Madoff's arrest that the consistency of his returns was virtually impossible and likely the result of fraud.  The FGG Affiliates, Management Defendants, and Sales Defendants knew this too.  Because these Defendants were earning millions of dollars year after year based solely on their relationship with Madoff, they knowingly chose to ignore the likelihood of fraud.

---

[7]        (A true and accurate copy of the December 14, 2008 Salus Alpha Group press release is attached hereto as Ex. 81.)

MADC1345_00000585

499.    The claim that no one saw signs that Madoff was a fraud or that the Defendants were not on actual and/or constructive notice of fraud, is false.  The Defendants saw the signs and they summarily ignored them.

### A.    *The Barron's and MAR/Hedge Articles Are Published in 2001*

500.    During 2001, two industry analysts published articles that called into question the legitimacy of BLMIS's operations.  A May 2001 MAR/Hedge newsletter entitled, "Madoff tops charts; skeptics ask how," reported on Fairfield Sentry's consistent returns stating that experts were bewildered as to how such returns could be achieved so consistently and for so long.  The article observed that "others who use or have used the strategy . . . are known to have had nowhere near the same degree of success."  (A true and accurate copy of the May 2001 MAR/Hedge article entitled, "Madoff tops charts; skeptics ask how," is attached hereto as Ex. 82.)  The MAR/Hedge newsletter is widely read by participants in the fund of funds and hedge fund industry.

501.    Barron's published a similar article on May 7, 2001.  The article, entitled "Don't Ask, Don't Tell, Bernie Madoff is so secretive, he even asks investors to keep mum," noted the heavy skepticism on Wall Street surrounding Madoff, as well as the lack of transparency around the BLMIS IA Business as a result of Madoff's unwillingness to answer basic questions about his SSC Strategy.  (A true and accurate copy of the May 7, 2001 Barron's article entitled, "Don't Ask, Don't Tell," is attached hereto as Ex. 83.)  Noel and Tucker testified in the proceeding brought by the Commonwealth of Massachusetts against certain FGG entities that they read the articles questioning BLMIS's very legitimacy, but were not concerned.  Noel testified that the author of the Barron's article had mischaracterized the strategy.  He explained, "I mean, anyone who knew what he was doing, like we did, would have said that was not an accurate description,

142

MADC1345_00000586

but nothing came of it afterwards." (A true and accurate copy of excerpts from the transcript of Noel's testimony is attached hereto as Ex. 84.) Tucker described the Barron's article as "just irresponsible journalism . . . ." (A true and accurate copy of excerpts from the transcript of Tucker's testimony is attached hereto as Ex. 85.)

502.    Despite having responsibility for billions under management in their Feeder Funds, the Defendants performed no meaningful, independent inquiry or due diligence in response to the dramatic assertions made in these articles. The Defendants did not call the authors to better understand the red flags being raised. The Defendants did not speak to other institutions. The Defendants did nothing to see if there were OTC counterparties. Instead, the Defendants sent a newsletter to the Feeder Funds' investors claiming the articles were wrong. (*See* Ex. 40.)

503.    The Defendants simply went about their business of aggressively touting, marketing, and effectively co-opting Madoff's "fool-proof" strategy as their own. The reason was simple – without Madoff, the Defendants would not continue to reap the hundreds of millions paid to them as Madoff's *de facto* partners. The Defendants consistently did whatever they felt they needed to in order to keep their lucrative relationship with Madoff.

504.    The Defendants marketed the Feeder Funds in the face of investor skepticism. For instance, after reviewing Fairfield Sentry's performance information, one analyst warned a potential Fairfield Sentry investor: "along with many other investment professionals in business, we are skeptical regarding the source and repeatability of [Fairfield Sentry's] returns . . . Therefore, by definition, we have no quantitative or qualitative rationale for believing in the persistence of this strategy." The Defendants became aware of the analyst's assessment when it

MADC1345_00000587

was forwarded to them.  (A true and accurate copy of the May 23, 2005 email to Vijayvergiya is attached hereto as Ex. 86.)

505.    FGG internally joked about red flags suggesting Madoff was a fraud.  Years after the Barron's article questioned both Fairfield Sentry's and Madoff's legitimacy, FGG's Yanko della Schiava responded to an investor's inquiries by stating that the investor was "probably a reader of Barrons!"  (A true and accurate copy of the September 24, 2003 email from della Schiava is attached hereto as Ex. 87.)

### B.    *Tightening Industry Standards*

506.    During the late 1990s and early 2000s, hedge fund frauds and other financial scandals like Barings, Daiwa, Allied Irish Bank, Lipper, Manhattan Investment Fund, and Bayou, confirmed the recognized need for initial and ongoing reviews of operational risk factors among investment managers.  Reasonable investment professionals knew and market events drove home the fact that a high proportion of hedge fund failures resulted from operational problems.

507.    By 2002, according to a well-known industry report, approximately 50% of all hedge fund failures resulted in full or in part from poor operational controls, and 91% of these failures had one or more of the following problems in common:

- Misappropriation of funds and outright fraud by investment managers who knowingly took money for personal use or to cover trading or other losses;

- Misrepresentation of investments through false account reports, valuations and other misleading information;

- Unauthorized trading by making investments outside of stated portfolio strategies; and

144

MADC1345_00000588

- Infrastructure insufficiency and inadequate technology or personnel that are not able to accommodate or handle the types of investments and supporting activities engaged in by the investment manager.

(A true and accurate copy of the March 2003 article entitled, "Understanding and Mitigating Operational Risk in Hedge Fund Investments," is attached hereto as Ex. 88.)

508.    Additional industry articles, "Valuation issues and operational risk in hedge funds" (a true and accurate copy of the 2004 article is attached hereto as Ex. 89), and "Hedge fund operational risk:  meeting the demand for higher transparency and best practice" (a true and accurate copy of the 2006 article is attached hereto as Ex. 90), stressed important due diligence standards and processes.  Key operational standards included:  (i) robust internal controls and procedures over each stage of the trading cycle; (ii) adequate segregation of duties between those who are responsible for trading and those who are responsible for recording trade activities; and (iii) segregation of signing authority and authority over cash and securities transfers, deposits and withdrawals.  Independent checks and balances throughout the trading cycle, the movement of cash, and the custody process were all seen as critical areas of inquiry for those performing independent and reasonable due diligence on investment managers.

509.    FGG and the Defendants failed to adhere to these due diligence standards, or virtually any other sound industry practices, when it came to the due diligence and follow up it was required to perform on BLMIS.  When it came to Madoff, the FGG Individuals simply made up their own, self-serving rules in order to maintain FGG's preferred status and its hundreds of millions of dollars in fees.

145

MADC1345_00000589

### C. It Was All Over the Street: Madoff Was Suspected of Being a Fraud

510.     The Barron's and Mar/HEDGE articles were based on publicly available information and their authors were not outliers.  They were among a large group of industry experts who reviewed public information about the SSC Strategy, saw that it did not make any sense, and then advised their clients to keep their money far away from BLMIS, and far away from funds like the Feeder Funds.  For many years – well before Madoff was arrested – many industry professionals spotted the likelihood of fraud.

511.     Edward Thorp, "the grandfather of quantitative analysis," concluded over the course of a single day, as far back as 1991, Madoff's claimed returns were nearly impossible, and he was likely a fraud.  All Thorp needed to do was check the number of listed options in the account of one BLMIS customer against the number of the same options traded on the CBOE.

512.     Later, in 2001, in response to the MAR/Hedge and Barron's articles, Thorp wrote to a fund manager friend expressing serious concerns about Madoff, and about his friend's fund being invested in BLMIS:

> **Just read the Barron's article.  All it does is reinforce my previous suspicions.  Do you have access to the "actual" trades done in any one account?  If so, can you establish that they could be real?  That means checking to see if they are reported on a timely basis, rather than substantially delayed, that they are on listed options, that those options could have traded at those prices and in the volumes reported on the exchanges where the confirms said the trades occurred, and ditto with the stocks.**
>
> **What if you scale up your representative account to 7bn$. Could the volume of imputed trading in the options markets, in the "universe" traded, actually have been done?**
>
> **Hope you don't have a major position, or that you are trading**

146

MADC1345_00000590

on "profits".

(A true and accurate copy of the May 11, 2001 email from Thorp is attached hereto as Ex. 91 (emphasis added).)

513.    Thorp laid out simple, independent, and reasonable due diligence queries that the Defendants could have, and should have, undertaken.  The Defendants did no such due diligence, asked no such questions, and instead defended Madoff.

514.    As early as 1998, Cambridge Associates recommended that clients stay away from Madoff and Madoff-related feeders due to lack of transparency, a fear of front-running the market, and a general inability to understand how the strategy could produce cash-like, bond-like consistency of returns, in an equity strategy.  In 2004, Cambridge was more pointed in its discomfort, stating: "**it 'felt illegal' and that Madoff gave no transparency**," suggesting that "**[i]t might be interesting to compile some historic hedge fund fraud/scams for them to mull over**."  (A true and accurate copy of the redacted public version of the November 11, 2004 Cambridge Associates internal email is attached hereto as Ex. 92 (emphasis added).)

515.    In 2003, a team from Société Génerale's investment bank was sent to New York to perform due diligence on BLMIS.  What Société Génerale discovered was that BLMIS's numbers simply "did not add up."  Madoff explained to the Société Génerale team how his investment strategy worked, but when the team tested the strategy, they could not match Madoff's returns.  Another red flag made the due diligence team anxious - Madoff's brother, Peter, was serving as chief compliance officer of BLMIS.  Société Génerale immediately forbade its investment bank from doing business with BLMIS and discouraged its private banking clients from investing with Madoff.  After uncovering obvious red flags during its due diligence visit,

147

MADC1345_00000591

Société Génerale blacklisted Madoff. (A true and accurate copy of the December 17, 2008 New York Times article entitled, "European Banks Tally Losses Linked to Fraud," is attached hereto as Ex. 93.)

516.    Shortly after Madoff's arrest, Robert Rosenkranz of Acorn Partners, a fund of funds, and an investment adviser to high net worth individuals, reflected in email that Acorn had done due diligence on Madoff and concluded "that fraudulent activity was highly likely." (A true and accurate copy of the December 15, 2008 email from Rosenkranz is attached hereto as Ex. 94.)

517.    Acorn succinctly described the indicia of fraud that led it to conclude years prior that Madoff was a fraud.

> We had considered investing in a Madoff managed account, and decided to pass for reasons that give a useful insight into our due diligence process.
>
> First, we ascertained that the description of the strategy (purchase of large cap stocks versus sale of out of the money calls) appeared to be inconsistent with the pattern of returns in the track record, which showed no monthly losses.
>
> Second, we persuaded a Madoff investor to share with us several months of his account statements with Madoff. These revealed a pattern of purchases at or close to daily lows and sales at or close to daily highs, which is virtually impossible to achieve. Moreover, the trading volumes reflected in the account (projected to reflect his account's share [of] Madoff's purported assets under management at the time) were vastly in excess of actually reported trading volumes.
>
> Third, we noted that Madoff operated through managed accounts, rather than by setting up a hedge fund of his own. That was suspicious inasmuch as hedge fund fees are typically much higher than the brokerage commissions Madoff was meant to be charging. We suspected the requirement for annual hedge fund audits was the reason he wanted to avoid that approach. We knew that when his clients are audited, their auditors simply look at the account

148

statements and transaction reports generated by the brokerage firm;
they don't investigate the books of the brokerage firm itself.

Fourth, although brokerage firms are required to provide annual
audit reports, the investor appeared not to have received any. With
considerable perseverance, we obtained audit reports filed with the
SEC, which were prepared by an utterly obscure accounting firm
located in Rockland County New York.

Fifth, we reviewed the audit report itself, which showed no
evidence of customer activity whatsoever, neither accounts
payables to or accounts receivable from customers. They appeared
to be the reports of a market maker, not of a firm that at the time
was meant to have some $20 billion of customer accounts.

**Taken together, these were not merely warning lights, but a
smoking gun.** The only plausible explanation we could conceive
was that the account statements and trade confirmations were not
bona fide but were generated as part of some sort of fraudulent or
improper activity.

(A true and accurate copy of the December 12, 2008 email from Acorn to its investors is attached

hereto as Ex. 95 (emphasis added).)

518.    All of the information flagged by Acorn through proper, independent, and

reasonable due diligence, was information that was known or should have been known by the

Defendants. The Defendants did not conduct the type of due diligence performed by Acorn. In

fact they conducted no reasonable or independent due diligence at all, even when on both actual

and inquiry notice of possible fraud.

519.    Media reports following Madoff's arrest, as well as emails between FGG

employees, indicate that in 2004, Mr. Oswald Gruebel, formerly of Credit Suisse and now of

UBS, felt uncomfortable with Madoff and Fairfield Sentry after a meeting between FGG

personnel and Credit Suisse representatives. (A true and accurate copy of the February 25, 2004

email from Noel to Piedrahita, Tucker, Toub and Landsberger is attached hereto as Ex. 96.)

MADC1345_00000593

During that meeting, Mr. Gruebel raised serious concerns about Madoff's obscure auditor who

had only one client, BLMIS, and the fact that BLMIS was the self-custodian of its investment

clients, such as the Feeder Funds. After Madoff refused to provide answers to such basic

questions as to how much money he was managing in the SSC Strategy or further, who worked

with him to implement the strategy, Gruebel quickly urged customers to withdraw their funds

from BLMIS and redeem their shares from feeder funds, like the FGG funds.  (A true and

accurate copy of the January 7, 2009 Bloomberg article entitled, "Credit Suisse Urged Clients to

Dump Madoff Funds," is attached hereto as Ex. 97.)

520.    In 2005, ML continued its long-standing policy of not investing in Fairfield

Sentry or any other Madoff feeder fund.  ML identified major red flags associated with Fairfield

Sentry and stated conclusively that "the prime broker [Madoff] was an affiliate of the company,

the custodian wasn't independent," published articles stated the fund's "affiliated broker was

subsidizing the fund," and "[t]he fund manager refuses to meet potential clients."  (A true and

accurate copy of the June 15, 2005 internal ML email is attached hereto as Ex. 98.)  A year later,

ML once again expressed its discomfort with Madoff and Fairfield Sentry stating, "Madoff is

known for keeping the source of his returns a secret. This caused a lot of speculation on Wall

Street about the true sources of the admittedly impressive returns."  ML also commented

internally that "Fairfield is a fund that is unusually opaque to its investors and doesn't accept

detailed due diligence which automatically disqualif[ies] it. . . ."  (A true and accurate copy of

the December 2006 internal ML emails is attached hereto as Ex. 99.)  ML emphasized that they

were not the only company refusing to get involved with Fairfield Sentry or other Madoff feeder

funds.  Most of their competitors had taken similar positions.  (A true and accurate copy of the

February 6, 2008 internal ML email is attached hereto as Ex. 100.)

MADC1345_00000594

521.    In 2007, Aksia, LLC, an independent hedge fund research and advisory firm, advised clients against investing with BLMIS, Madoff, or any of his feeder funds.  (A true and accurate copy of Aksia's 2007 report is attached hereto as Ex. 101.)  Jim Vos, Chief Operating Officer and head of research at Aksia, concluded that the stock holdings reported in the quarterly statements BLMIS filed with the SEC appeared too small to support the size of the assets BLMIS claimed to be managing.  (A true and accurate copy of the December 11, 2008 letter from Vos to his clients and friends is attached hereto as Ex. 102.)  Aksia also spoke with Mr. Michael Ocrant (the author of the 2001 MAR/Hedge article), who reaffirmed that Madoff was "definitely a Ponzi," is as "bogus as a three dollar bill," and that "[i]t's rather easy to come out looking good when you're a Ponzi."  (A true and accurate copy of the August 14, 2007 email from Ocrant to Vos is attached hereto as Ex. 103.)

522.    Aksia made the simple effort as part of its due diligence to do a background check on BLMIS's auditor, as well as having Friehling's office physically inspected.  What was discovered was a simple, closed office in a strip mall with what appeared to be a conference room, secretary space, and two offices.  Friehling's office neighbors told Aksia's investigator the office did not have regular hours.  (A true and accurate copy of the August 23, 2007 email to Vos is attached hereto as Ex. 104.)

523.    In a post-Madoff arrest letter to clients Aksia summarized why its due diligence led it to not recommend Madoff feeders:

> [T]here were a host of red flags, which taken together made us concerned about the safety of client assets should they invest in these feeders.  Consequently, every time we were asked by clients, we waved them away from the Madoff feeder funds.
>
> . . .

151

**As a research firm we are forced to make difficult judgments about the hedge funds we evaluate for clients.  This was not the case with the Madoff feeder funds.  Our judgment was swift given the extensive list of red flags.**  Some of these red flags were as follows:

. . .

- It seemed implausible that the S&P100 options market that Madoff purported to trade could handle the size of the combined feeder funds' assets which we estimated to be $13 billion.

- The feeder funds had recognized administrators and auditors but substantially all of the assets were custodied with Madoff Securities.  This necessitated Aksia checking the auditor of Madoff Securities, Friehling & Horowitz . . .  After some investigating, we concluded that Friehling & Horowitz had three employees, of which one was 78 years old and living in Florida, one was a secretary, and one was an active 47 year old accountant (and the office in Rockland County, NY was only 13ft x 18ft large).  This operation appeared small given the scale and scope of Madoff's activities.

- There was at least $13 billion in all the feeder funds, but our standard 13F review showed scatterings of small positions in small (non-S&P100) equities.  The explanation provided by the feeder fund managers was that the strategy is 100% cash at every quarter end.

- Madoff's website claimed that the firm was technologically advanced ("the clearing and settlement process is rooted in advanced technology") and the feeder managers claimed 100% transparency.  But when we asked to see the transparency during our onsite visits, we were shown paper tickets that were sent via U.S. mail daily to the managers.  The managers had no demonstrated electronic access to their funds accounts at Madoff.  Paper copies provide a hedge fund manager with the end of the day ability to manufacture trade tickets that confirm the investment results.

- Conversations with former employees indicated a high degree of secrecy surrounding the trading of these feeder fund accounts.  Key Madoff family members (brother, daughter, two sons) seemed to control all the key positions at the firm.  Aksia is consistently negative on firms where key and control positions are held by family members.

- Madoff Securities, through discretionary brokerage agreements, initiated trades in the accounts, executed the trades, and custodied and administered the assets.  This seemed to be a clear conflict of interest and a lack of segregation of duties is high on our list of red flags.

(*See* Ex. 102 (emphasis added).)

152

524.     In 2007, David Giampaolo, the chief executive of Pi Capital, a money-management firm based in the United Kingdom, met with Piedrahita and other potential investors in London to discuss an FGG Madoff-related fund.  During this meeting, Piedrahita stressed the "longevity and the consistency" of the fund's returns, but was unable to give substantive details regarding the strategy of the fund.  When questions arose regarding how the fund generated its performance, Giampaolo recalls "there was no deep scientific or intellectual response" from Piedrahita.  (A true and accurate copy of the December 19, 2008 email summarizing the meeting is attached hereto as Ex. 105.)

525.     In 2007, Neil Chelo, a portfolio manager at Benchmark Plus Partners,  a hedge fund with its headquarters in Washington State, conducted due diligence on FGG.  Chelo and Vijayvergiya had a 45-minute conference call.  During this call, Chelo asked Vijayvergiya a list of due diligence questions and concluded that FGG "was **not asking any of [the] questions one would expect of a firm purporting to conduct due diligence.**"  (A true and accurate copy of the February 4, 2009 summary of the call is attached hereto as Ex. 106 (emphasis added).)  Specifically, Chelo asked multiple risk management questions that Vijayvergiya was unable to answer in a satisfactory manner.

526.     London due diligence firm Albourne Partners ("Albourne") stated publicly that it had long-standing concerns about Madoff's investment strategy and consistent returns, and had been urging clients for a decade to avoid Madoff-related funds.  (A true and accurate copy of the December 31, 2008 Bloomberg Businessweek article entitled, "The Madoff Case Could Reel in Former Investors," is attached hereto as Ex. 107.)  Albourne emphasized that the consistency of Madoff's returns was "too good to be true," Madoff refused to meet with investors, and Madoff charged no management or performance fees for his services, resulting in his leaving hundreds of

153

millions of dollars of money on the table each year. (A true and accurate copy of the December 15, 2008 Albourne press release entitled, "Albourne on Madoff," is attached hereto as Ex. 108.) Like others, Albourne flagged as possible fraud the fact that Madoff required that his investors never reveal to anyone that they invested with him. (*See* Ex. 83.)

527. The above are some of the many illustrations showing that "the street" fully and openly suspected Madoff was a fraud. These Defendants – who represented nearly half of Madoff's billions of dollars of reported assets under management – chose to ignore these well-recognized suspicions.

## XIII.   THE DEFENDANTS' MOTIVATION WAS BOUNDLESS AVARICE

528. For years the Defendants looked away when faced with repeated signs that Madoff's operations and performance could not be legitimate. The reason was simple: greed.

529. The Defendants had an extraordinary and lucrative financial arrangement with BLMIS. Their sole job was to sell a fund that had returns that were so consistently positive, they were seemingly impossible. In exchange for selling Madoff's strategy, the Defendants received in the aggregate over a billion dollars in fees. The Defendants in their role as fiduciaries had no desire to perform their duties based on known information because if they did, they knew it could and would result in an abrupt end to this lucrative financial relationship.

530. The Defendants also knew that without Madoff they could not survive. The funds the Defendants tried to create without Madoff's assistance, making their own choices about which investment managers to place money, were all failures.

154

MADC1345_00000598

531.    The Defendants repeatedly lied about why Madoff would personally leave
hundreds of millions of dollars in management and performance fees for FGG Affiliates and
Individual Defendants.  Hedge funds typically collect management fees of approximately 1% of
assets under management and performance fees of 20%.

532.    Unlike virtually everyone in the money-management world, Madoff charged *no
fees* for his investment management services.  Madoff sometimes explained his decision not
charge fees by stating they he was "perfectly happy to just earn commissions."  In reality,
Madoff was happy to forgo typical performance and management fees, and only earn
commissions, as long as his investors remained mum about the source of their inflated returns.
And hedge funds like the Defendant Feeder Funds kept procuring billions of dollars to prolong
and prop up the Ponzi scheme so they could continue to reap their enormous fees.

533.    A number of professional investors noticed Madoff's failure to charge fees, in
addition to the multitude of other red flags, and made the decision to invest their money
elsewhere.  (A true and accurate copy of excerpts from the August 2009 SEC Office of Inspector
General's report on Madoff is attached hereto as Ex. 109.)  Madoff's decision to not collect
traditional investment manager's fees should have raised red flags with FGG given the sheer
amount of money that Madoff was foregoing.  Madoff could easily have earned an additional
$200 to $400 million plus in annualized management and performance fees.  Investment
professionals reasonably concluded that a fee structure where the true investment manager
voluntarily chose to pass on massive amount of fees was a major red flag of fraud.  Defendants
knew that the very compensation structure from their relationship with Madoff, which permitted
them to be so unjustly enriched, was itself a massive sign of fraud.

155

MADC1345_00000599

534.    The Defendants were <u>not</u> victims.  They were enablers.  They were facilitators.

They deepened the pain of Madoff's customers and their own investors.  The effect of their

actions was a catastrophic continuation of the Ponzi scheme, the worsening of the BLMIS

insolvency, and billions of dollars in additional damages.  They cannot be allowed to keep the

many hundreds of millions of dollars in stolen Customer Property they received from BLMIS.

## XIV.  <u>THE TRANSFERS</u>

### A.    *Transfers from BLMIS to the Feeder Funds*

535.    Prior to the Filing Date, the Feeder Funds invested approximately $4.7 billion

with BLMIS through over 300 separate transfers via check and wire directly into the 703

Account.

536.    During the six years preceding the Filing Date, BLMIS made transfers to the

Feeder Funds in the collective amount of approximately $3.2 billion (the "Six Year Initial

Transfers").  The Six Year Initial Transfers included transfers of approximately $3.0 billion to

Fairfield Sentry (the "Fairfield Six Year Initial Transfers"), $206.0 million to GS, and $6.0

million to GSP (collectively, the "Greenwich Six Year Initial Transfers").  (*See* Exs. 2, 5, 7.)

The Six Year Initial Transfers were and continue to be Customer Property within the meaning of

SIPA § 78*lll*(4) and are subject to turnover to the Trustee pursuant to SIPA § 78fff-2(c)(3) and

section 542 of the Bankruptcy Code.  The Six Year Initial Transfers are avoidable and

recoverable under sections 544, 550, and 551 of the Bankruptcy Code, applicable provisions of

SIPA, particularly SIPA §78fff-2(c)(3), and sections 273-279 of New York Debtor and Creditor

Law.

156

MADC1345_00000600

537.     The Six Year Initial Transfers include approximately $1.7 billion BLMIS transferred to the Feeder Funds during the two years preceding the Filing Date, (the "Two Year Initial Transfers").  The Two Year Initial Transfers included transfers of approximately $1.6 billion to Fairfield Sentry (the "Fairfield Two Year Initial Transfers"), $81.7 million to GS, and $5.4 million to GSP (collectively, the "Greenwich Two Year Initial Transfers").  (*See* Exs. 2, 5, 7.)  The Two Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA §78*lll*(4) and are subject to turnover to the Trustee pursuant to SIPA §78fff-2(c)(3) and section 542 of the Bankruptcy Code.  The Two Year Initial Transfers are avoidable and recoverable under sections 548(a)(1), 550, and 551 of the Bankruptcy Code, and applicable provisions of SIPA, particularly SIPA §78fff-2(c)(3).

538.     The Six Year Initial Transfers and Two Year Initial Transfers include $1.2 billion BLMIS transferred to the Feeder Funds during the 90 days preceding the Filing Date (the "Preference Period Initial Transfers").  The Preference Period Initial Transfers included transfers of approximately $1.1 billion to Fairfield Sentry (the "Fairfield Preference Period Transfers") and $23.0 million to GS (the "Greenwich Preference Period Transfers").  (*See* Exs. 2, 5.)  The Preference Period Initial Transfers were and are Customer Property subject to turnover to the Trustee pursuant to SIPA §78fff-2(c)(3) and Section 542 of the Bankruptcy Code.  The Preference Period Initial Transfers are avoidable and recoverable under sections 547, 550(a)(1), and 551 of the Bankruptcy Code, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

539.     The Trustee has filed this action against the Feeder Funds to avoid and recover the Initial Transfers and/or seek the turnover of Customer Property to the Trustee.

157

540.    The Trustee may recover the transfers to GS and GSP from all entities and individuals that served as general partner at the time the transfers were made.  GS's and GSP's April, 2006 partnership agreements provide that the general partner "shall have unlimited liability for the repayment and discharge of all debts and obligations of the Partnership attributable to any fiscal year during which they are or were General Partners of the Partnership." (True and accurate copies of GS's and GSP's Partnership Agreements are attached hereto as Exs. 110, 111.)  Upon information and belief, prior and preceding limited partnership agreements of GS and GSP contained similar provisions regarding the liability of the general partner.

541.    Both GS and GSP were formed as limited partnerships under the laws of the State of Delaware.  The entities and individuals that served as general partner are also liable under the Delaware Code provisions governing limited partnerships.  Under Delaware law, general partners of limited partnerships have the same liability as partners in general partnerships.  Del. Code Ann. tit. 6, § 17-403(b).  Partners in general partnerships are "liable jointly and severally for all obligations of the partnership." Del. Code Ann. tit. 6, § 15-306(a).

542.    Noel and Tucker served as general partners of GS from 1990 to 1998, FGL served as general partner from 1998 to 2003, FGB served as general partner from 2003 to 2004, and then again from 2006 to the present, and GBL served as general partner from 2004 to 2006. FGB has served as GSP's general partner since its inception in 2006.

> ### B.    *Transfers from the Feeder Funds to the FGG Affiliates, Management Defendants, and Sales Defendants*

543.    Much of the money transferred from BLMIS to the Feeder Funds was subsequently transferred by the Feeder Funds to the FGG Affiliates, Management Defendants, and Sales Defendants.  These payments from the Feeder Funds constitute subsequent transfers of

MADC1345_00000602

the Initial Transfers from BLMIS to the Feeder Funds.  Because the FGG Affiliates, Management Defendants, and Sales Defendants did not take the funds in good faith or without knowledge of the voidability of the initial transfers, all transfers from BLMIS to the Feeder Funds, which the Feeder Funds subsequently transferred, either directly or indirectly, to the FGG Affiliates, Management Defendants, and Sales Defendants (the "Subsequent Transfers"), were and remain Customer Property subject to turnover to the Trustee and/or are avoidable and recoverable by the Trustee.

544.    The portion of the Six Year Initial Transfers that the Feeder Funds subsequently transferred to the FGG Affiliates and FGG Individuals will be referred to as the "Six Year Subsequent Transfers."

545.    The portion of the Two Year Initial Transfers that the Feeder Funds subsequently transferred to the FGG Affiliates, Management Defendants, and Sales Defendants will be referred to as the "Two Year Subsequent Transfers."

546.    The portion of the Preference Period Initial Transfers that the Feeder Funds subsequently transferred to the FGG Affiliates, Management Defendants, and Sales Defendants will be referred to as the "Preference Period Subsequent Transfers."

547.    To the extent that any of the recovery counts may be inconsistent with each other, they are to be treated as being pled in the alternative.

548.    The Trustee's investigation is on-going and the Trustee reserves the right to (i) supplement the information on the Initial Transfers, Subsequent Transfers, and any additional transfers, and (ii) seek recovery of such additional transfers.

MADC1345_00000603

## COUNT ONE:  TURNOVER AND ACCOUNTING – 11 U.S.C. § 542

### *Against All the Defendants*

549.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

550.    The Initial Transfers and the Subsequent Transfers constitute Customer Property of the estate to be recovered and administered by the Trustee pursuant to sections 541 and 542 of the Bankruptcy Code and SIPA § 78fff-2(c)(3) and § 78lll(4).

551.    The Trustee has filed a case on behalf of BLMIS's estate.

552.    As recipients of the Initial Transfers and the Subsequent Transfers, the Defendants are in possession, custody or control of property the Trustee may use, sell, or lease under section 363 of the Bankruptcy Code, or that BLMIS may exempt under section 522 of the Bankruptcy Code.

553.    The Defendants are not custodians of the Initial Transfers or the Subsequent Transfers.

554.    The Initial Transfers and the Subsequent Transfers are not of inconsequential value or benefit to the estate.

555.    As a result of the foregoing, pursuant to section 542 of the Bankruptcy Code and SIPA § 78fff-2(c)(3), the Trustee is entitled to the immediate payment and turnover from the Defendants of any and all Initial Transfers and Subsequent Transfers made, directly or indirectly, to the Defendants.

MADC1345_00000604

556.    As a result of the foregoing, pursuant to section 542 of the Bankruptcy Code and SIPA § 78fff-2(c)(3), the Trustee is also entitled to an accounting of any and all Initial Transfers and Subsequent Transfers made, directly or indirectly, to the Defendants.

## COUNT TWO:  PREFERENTIAL TRANSFERS (INITIAL TRANSFEREE) – 11 U.S.C. §§ 547(b), 550(a)(1), AND 551

### *Against the Feeder Funds*

557.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

558.    At the time of each of the Preference Period Initial Transfers, the Feeder Funds were each a "creditor" of BLMIS within the meaning of section 101(10) of the Bankruptcy Code and pursuant to SIPA § 78fff-2(c)(3).

559.    Each of the Preference Period Initial Transfers constitutes a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to SIPA § 78fff-2(c)(3).

560.    Each of the Preference Period Initial Transfers was to or for the benefit of the Feeder Funds.

561.    Each of the Preference Period Initial Transfers was made for or on account of an antecedent debt owed by BLMIS before such transfer was made.

562.    Each of the Preference Period Initial Transfers was made while BLMIS was insolvent.

161

563.     Each of the Preference Period Initial Transfers was made during the preference period under section 547(b)(4) of the Bankruptcy Code.

564.     Each of the Preference Period Initial Transfers enabled Fairfield Sentry, GS, and/or GSP to receive more than each of the Feeder Funds would receive if (i) this case was a case under chapter 7 of the Bankruptcy Code, (ii) the transfers had not been made, and (iii) the applicable fund received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

565.     Each of the Preference Period Initial Transfers constitutes a preferential transfer avoidable by the Trustee pursuant to section 547(b) of the Bankruptcy Code and recoverable from the Feeder Funds as initial transferees or the entities for whose benefit such transfers were made pursuant to section 550(a)(1) of the Bankruptcy Code.

566.     As a result of the foregoing, pursuant to sections 547(b), 550(a)(1), and 551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), and sections 15-306(a) and 17-403(b) of Title 6 of the Delaware Code, the Trustee is entitled to a judgment:  (a) avoiding and preserving the Preference Period Initial Transfers, (b) directing that the Preference Period Initial Transfers be set aside, and (c) recovering the Preference Period Initial Transfers, or the value thereof, from the Feeder Funds for the benefit of the estate of BLMIS.

## COUNT THREE:  PREFERENTIAL TRANSFERS (INITIAL TRANSFEREE) – 11 U.S.C. §§ 547(b), 550(a)(1), AND 551

### *Against FGB*

567.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

162

MADC1345_00000606

568.    At the time of each of the Greenwich Preference Period Initial Transfers, GS was a "creditor" of BLMIS within the meaning of section 101(10) of the Bankruptcy Code and pursuant to SIPA § 78fff-2(c)(3).

569.    Each of the Greenwich Preference Period Initial Transfers constitutes a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to SIPA § 78fff-2(c)(3).

570.    Each of the Greenwich Preference Period Initial Transfers was to or for the benefit of GS.

571.    Each of the Greenwich Preference Period Initial Transfers was made for or on account of an antecedent debt owed by BLMIS before such transfer was made.

572.    Each of the Greenwich Preference Period Initial Transfers was made while BLMIS was insolvent.

573.    Each of the Greenwich Preference Period Initial Transfers was made during the preference period under section 547(b)(4) of the Bankruptcy Code.

574.    Each of the Greenwich Preference Period Initial Transfers enabled GS to receive more than it would receive if (i) this case was a case under chapter 7 of the Bankruptcy Code, (ii) the transfers had not been made, and (iii) GS received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

575.    Each of the Greenwich Preference Period Initial Transfers constitutes a preferential transfer avoidable by the Trustee pursuant to section 547(b) of the Bankruptcy Code

MADC1345_00000607

and recoverable from GS as a direct transferee pursuant to section 550(a)(1) of the Bankruptcy Code.

576.    FGB served as general partner to GS during the Preference Period.  As general partner to GS, FGB is liable, pursuant to sections 15-306(a) and 17-403(b) of Title 6 of the Delaware Code, for all obligations GS incurred while FGB was serving as general partner.

577.    FGB did not take the Preference Period Initial Transfers for value, in good faith, or without knowledge of the voidability of the Preference Period Initial Transfers.

578.    As a result of the foregoing, pursuant to sections 547(b), 550(a)(1), and 551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), and sections 15-306(a) and 17-403(b) of the Delaware Code, the Trustee is entitled to a judgment:  (a) avoiding and preserving the Greenwich Preference Period Initial Transfers, (b) directing that the Greenwich Preference Period Initial Transfers be set aside, and (c) recovering the Greenwich Preference Period Initial Transfers, or the value thereof, from FGB for the benefit of the estate of BLMIS, and to return to injured customers.

## COUNT FOUR:  PREFERENTIAL TRANSFERS (SUBSEQUENT TRANSFEREE) – 11 U.S.C. §§ 547(b), 550(a)(2), AND 551

### *Against the FGG Affiliates, Management Defendants, and Sales Defendants*

579.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

580.    At the time of each of the Preference Period Initial Transfers, Fairfield Sentry and GS were each a "creditor" of BLMIS within the meaning of section 101(10) of the Bankruptcy Code and pursuant to SIPA § 78fff-2(c)(3).

164

581.    Each of the Preference Period Initial Transfers constitutes a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to SIPA § 78fff-2(c)(3).

582.    Each of the Preference Period Initial Transfers was to or for the benefit of Fairfield Sentry or GS.

583.    Each of the Preference Period Initial Transfers was made for or on account of an antecedent debt owed by BLMIS before such transfer was made.

584.    Each of the Preference Period Initial Transfers was made while BLMIS was insolvent.

585.    Each of the Preference Period Initial Transfers was made during the preference period under section 547(b)(4) of the Bankruptcy Code.

586.    Each of the Preference Period Initial Transfers enabled Fairfield Sentry and/or GS to receive more than each of the funds would receive if (i) this case was a case under chapter 7 of the Bankruptcy Code, (ii) the transfers had not been made, and (iii) the applicable fund received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

587.    Each of the Preference Period Initial Transfers constitutes a preferential transfer avoidable by the Trustee pursuant to section 547(b) of the Bankruptcy Code.

588.    The Trustee has filed a lawsuit against Fairfield Sentry and GS to avoid the Preference Period Initial Transfers pursuant to section 547 of the Bankruptcy Code, and to

165

MADC1345_00000609

recover the Preference Period Initial Transfers from Fairfield Sentry and GS pursuant to section 550(a)(1) of the Bankruptcy Code.

589.     The FGG Affiliates, Management Defendants, and Sales Defendants were immediate or mediate transferees of some portion of the Preference Period Initial Transfers pursuant to section 550(a)(2) of the Bankruptcy Code.

590.     As a result of the foregoing, the Trustee is entitled to a judgment pursuant to sections 547(b), 550(a)(2), and 551 of the Bankruptcy Code and SIPA § 78fff-2(c)(3) recovering the Preference Period Subsequent Transfers, or the value thereof, from the FGG Affiliates and FGG Individuals for the benefit of the estate of BLMIS.

591.     As a result of the foregoing, pursuant to sections 547(b), 550(a)(2), and 551 of the Bankruptcy Code and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment:  (a) avoiding and preserving the Preference Period Initial Transfers, (b) directing that the Preference Period Initial Transfers be set aside and (c) recovering the Preference Period Subsequent Transfers, or the value thereof, from the FGG Affiliates, Management Defendants, and Sales Defendants for the benefit of the estate of BLMIS, and to return to injured customers.

## COUNT FIVE:  FRAUDULENT TRANSFERS (INITIAL TRANSFEREE) – 11 U.S.C. §§ 548(a)(1)(A), 550(a)(1), AND 551

### *Against the Feeder Funds*

592.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

593.     The Two Year Initial Transfers were made on or within two years before the Filing Date.

166

MADC1345_00000610

594.     The Two Year Initial Transfers were made by BLMIS with the actual intent to hinder, delay, or defraud some or all of BLMIS's then existing or future creditors.

595.     Each of the Two Year Initial Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from Fairfield Sentry, GS, and GSP as direct transferees pursuant to section 550(a)(1) of the Bankruptcy Code and SIPA § 78fff-2(c)(3).

596.     As a result of the foregoing, pursuant to sections 548(a)(1)(A), 550(a)(1), and 551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), and sections 15-306(a) and 17-403(b) of Title 6 of the Delaware Code, the Trustee is entitled to a judgment:  (a) avoiding and preserving the Two Year Initial Transfers, (b) directing that the Two Year Initial Transfers be set aside, and (c) recovering the Two Year Initial Transfers, or the value thereof, from the Feeder Funds for the benefit of the estate of BLMIS, and to return to injured customers.

## COUNT SIX:  FRAUDULENT TRANSFERS (INITIAL TRANSFEREE) – 11 U.S.C. §§ 548(a)(1)(A), 550(a)(1), AND 551

### *Against FGB*

597.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

598.     The Greenwich Two Year Initial Transfers were made on or within two years before the Filing Date.

599.     The Greenwich Two Year Initial Transfers were made by BLMIS with the actual intent to hinder, delay, or defraud some or all of BLMIS's then existing or future creditors.

167

MADC1345_00000611

600.     Each of the Greenwich Two Year Initial Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from GS and GSP as direct transferees pursuant to section 550(a)(1) of the Bankruptcy Code and SIPA § 78fff-2(c)(3).

601.     FGB served as general partner to GS and GSP during the two years preceding the Filing Date.  As general partner of GS and GSP, FGB is liable, pursuant to sections 15-306(a) and 17-403(b) of the Delaware Code, for all obligations GS and GSP incurred while FGB was serving as general partner.

602.     As a result of the foregoing, pursuant to sections 548(a)(1)(A), 550(a)(1), and 551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), and sections 15-306(a) and 17-403(b) of the Delaware Code, the Trustee is entitled to a judgment:  (a) avoiding and preserving the Greenwich Two Year Initial Transfers, (b) directing that the Greenwich Two Year Initial Transfers be set aside, and (c) recovering the Greenwich Two Year Initial Transfers, or the value thereof, from FGB for the benefit of the estate of BLMIS, and to return to injured customers.

### COUNT SEVEN:  FRAUDULENT TRANSFERS (SUBSEQUENT TRANSFEREE) – 11 U.S.C. §§ 548(a)(1)(A), 550(a)(2), AND 551

#### *Against the FGG Affiliates, Management Defendants, and Sales Defendants*

603.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

604.     The Two Year Initial Transfers were made on or within two years before the Filing Date.

168

MADC1345_00000612

605.     The Two Year Initial Transfers were made by BLMIS with the actual intent to
hinder, delay, or defraud some or all of BLMIS's then existing or future creditors.

606.     Each of the Two Year Initial Transfers constitutes a fraudulent transfer avoidable
by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from
the FGG Affiliates and FGG Individuals pursuant to section 550(a)(2) and SIPA § 78fff-2(c)(3).

607.     The Trustee has filed a lawsuit against Fairfield Sentry, GS, and GSP to avoid the
Two Year Initial Transfers pursuant to section 548(a)(1)(A) of the Bankruptcy Code, and to
recover the Two Year Initial Transfers from Fairfield Sentry, GS, and GSP pursuant to section
550(a)(1) of the Bankruptcy Code.

608.     The FGG Affiliates, Management Defendants, and Sales Defendants were
immediate or mediate transferees of some portion of the Two Year Initial Transfers pursuant to
section 550(a)(2) of the Bankruptcy Code.

609.     As a result of the foregoing, pursuant to sections 548(a)(1)(A), 550(a)(2), and 551
of the Bankruptcy Code and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment:  (a)
avoiding and preserving the Two Year Initial Transfers, (b) directing that the Two Year Initial
Transfers be set aside, and (c) recovering the Two Year Subsequent Transfers, or the value
thereof, from the FGG Affiliates, Management Defendants, and Sales Defendants for the benefit
of the estate of BLMIS, and to return to injured customers.

169

MADC1345_00000613

## COUNT EIGHT: FRAUDULENT TRANSFER (INITIAL TRANSFEREE) – 11 U.S.C. §§ 548(a)(1)(B) , 550(a)(1), AND 551

### *Against the Feeder Funds*

610.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

611.    The Two Year Initial Transfers were made on or within two years before the Filing Date.

612.    BLMIS received less than a reasonably equivalent value in exchange for each of the Two Year Initial Transfers.

613.    At the time of each of the Two Year Initial Transfers, BLMIS was insolvent, or became insolvent as a result of the Two Year Initial Transfer in question.

614.    At the time of each of the Two Year Initial Transfers, BLMIS was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with BLMIS was an unreasonably small capital.

615.    At the time of each of the Two Year Initial Transfers, BLMIS intended to incur, or believed that it would incur, debts that would be beyond BLMIS's ability to pay as such debts matured.

616.    Each of the Two Year Initial Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(B) of the Bankruptcy Code and recoverable from Fairfield Sentry, GS, and GSP pursuant to section 550(a)(1) of the Bankruptcy Code and SIPA § 78fff-2(c)(3).

MADC1345_00000614

617.    As a result of the foregoing, pursuant to sections 548(a)(1)(B), 550(a)(1), and 551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), and sections 15-306(a) and 17-403(b) of Title 6 of the Delaware Code, the Trustee is entitled to a judgment:  (a) avoiding and preserving the Two Year Initial Transfers, (b) directing that the Two Year Initial Transfers be set aside, and (c) recovering the Two Year Initial Transfers, or the value thereof, from the Feeder Funds for the benefit of the estate of BLMIS, and to return to injured customers.

## COUNT NINE:  FRAUDULENT TRANSFER (INITIAL TRANSFEREE) – 11 U.S.C. §§ 548(a)(1)(B) , 550(a)(1), AND 551

### *Against FGB*

618.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

619.    The Greenwich Two Year Initial Transfers were made on or within two years before the Filing Date.

620.    BLMIS received less than a reasonably equivalent value in exchange for each of the Greenwich Two Year Initial Transfers.

621.    At the time of each of the Greenwich Two Year Initial Transfers, BLMIS was insolvent, or became insolvent as a result of the Greenwich Two Year Initial Transfer in question.

622.    At the time of each of the Greenwich Two Year Initial Transfers, BLMIS was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with BLMIS was an unreasonably small capital.

171

MADC1345_00000615

623.     At the time of each of the Greenwich Two Year Initial Transfers, BLMIS

intended to incur, or believed that it would incur, debts that would be beyond BLMIS's ability to

pay as such debts matured.

624.     Each of the Greenwich Two Year Initial Transfers constitutes a fraudulent

transfer avoidable by the Trustee pursuant to section 548(a)(1)(B) of the Bankruptcy Code and

recoverable from GS and GSP pursuant to section 550(a)(1) of the Bankruptcy Code and SIPA §

78fff-2(c)(3).

625.     FGB served as general partner to GS and GSP during the two years preceding the

Filing Date.  As general partner of GS and GSP, FGB is liable, pursuant to sections 15-306(a)

and 17-403(b) of Title 6 of the Delaware Code, for all obligations GS and GSP incurred while

FGB was serving as general partner.

626.     As a result of the foregoing, pursuant to sections 548(a)(1)(B), 550(a)(1), and 551

of the Bankruptcy Code, SIPA § 78fff-2(c)(3), and sections 15-306(a) and 17-403(b) of Title 6 of

the Delaware Code, the Trustee is entitled to a judgment:  (a) avoiding and preserving the

Greenwich Two Year Initial Transfers, (b) directing that the Greenwich Two Year Initial

Transfers be set aside, and (c) recovering the Greenwich Two Year Initial Transfers, or the value

thereof, from FGB for the benefit of the estate of BLMIS, and to return to injured customers.

**COUNT TEN:  FRAUDULENT TRANSFER (SUBSEQUENT TRANSFEREE) – 11 U.S.C.
§§ 548(a)(1)(B) , 550(a)(2), AND 551**

***Against the FGG Affiliates, Management Defendants, and Sales Defendants***

627.     The Trustee incorporates by reference the allegations contained in the previous

paragraphs of this Amended Complaint as if fully rewritten herein.

172

MADC1345_00000616

EXHIBIT A

628.    The Two Year Initial Transfers were made on or within two years before the Filing Date.

629.    BLMIS received less than a reasonably equivalent value in exchange for each of the Two Year Initial Transfers.

630.    At the time of each of the Two Year Initial Transfers, BLMIS was insolvent, or became insolvent as a result of the Two Year Initial Transfers in question.

631.    At the time of each of the Two Year Initial Transfers, BLMIS was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with BLMIS was an unreasonably small capital.

632.    At the time of each of the Two Year Initial Transfers, BLMIS intended to incur, or believed that it would incur, debts that would be beyond BLMIS's ability to pay as such debts matured.

633.    Each of the Two Year Initial Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(B) of the Bankruptcy Code and recoverable from the FGG Affiliates and FGG Individuals pursuant to section 550(a)(2) and SIPA § 78fff-2(c)(3).

634.    The Trustee has filed a lawsuit against Fairfield Sentry, GS, and GSP to avoid the Two Year Initial Transfers pursuant to section 548(a)(1)(B) of the Bankruptcy Code, and to recover the Two Year Initial Transfers from Fairfield Sentry, GS, and GSP pursuant to section 550(a)(1) of the Bankruptcy Code and SIPA § 78fff-2(c)(3).

MADC1345_00000617

635.    The FGG Affiliates, Management Defendants, and Sales Defendants were immediate or mediate transferees of some portion of the Two Year Initial Transfers pursuant to section 550(a)(2) of the Bankruptcy Code.

636.    As a result of the foregoing, pursuant to sections 548(a)(1)(B), 550(a)(2), and 551 of the Bankruptcy Code and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment:  (a) avoiding and preserving the Two Year Initial Transfers, (b) directing that the Two Year Initial Transfers be set aside, and (c) recovering the Two Year Subsequent Transfers, or the value thereof, from the FGG Affiliates, Management Defendants, and Sales Defendants for the benefit of the estate of BLMIS, and to return to injured customers.

## COUNT ELEVEN:  FRAUDULENT TRANSFER (INITIAL TRANSFEREE) – NEW YORK DEBTOR AND CREDITOR LAW §§ 276, 276-a, 278 AND/OR 279, AND 11 U.S.C. §§ 544, 550(a)(1), AND 551

### *Against the Feeder Funds*

637.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

638.    At all times relevant to the Six Year Initial Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

639.    The Six Year Initial Transfers were made by BLMIS and transferees with the actual intent to hinder, delay, or defraud the creditors of BLMIS.  BLMIS made the Six Year Initial Transfers to or for the benefit of Fairfield Sentry, GS, and/or GSP in furtherance of a fraudulent investment scheme.

174

MADC1345_00000618

640.    The Six Year Initial Transfers were received by the Feeder Funds with actual intent to hinder, delay, or defraud creditors of BLMIS at the time of each of the transfers and/or future creditors of BLMIS.

641.    As a result of the foregoing, pursuant to sections 276, 276-a, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a)(1), and 551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), and sections 15-306(a) and 17-403(b) of the Delaware Code, the Trustee is entitled to a judgment:  (a) avoiding and preserving the Six Year Initial Transfers, (b) directing that the Six Year Initial Transfers be set aside, (c) recovering the Six Year Initial Transfers, or the value thereof, from the Feeder Funds for the benefit of the estate of BLMIS, , and to return to injured customers, and (d) recovering attorneys' fees from the Feeder Funds.

**COUNT TWELVE:  FRAUDULENT TRANSFER (INITIAL TRANSFEREE) – NEW YORK DEBTOR AND CREDITOR LAW §§ 276, 276-a, 278 AND/OR 279, AND 11 U.S.C. §§ 544, 550(a)(1), AND 551**

*Against FGB, FGL, and GBL*

642.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

643.    At all times relevant to the Greenwich Six Year Initial Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

644.    The Greenwich Six Year Initial Transfers were made by BLMIS and the transferees with the actual intent to hinder, delay, or defraud the creditors of BLMIS.  BLMIS

175

made the Greenwich Six Year Initial Transfers to or for the benefit of GS and/or GSP in

furtherance of a fraudulent investment scheme.

645.    The Greenwich Six Year Initial Transfers were received by GS and GSP with the

actual intent to hinder, delay, or defraud creditors of BLMIS at the time of each of the transfers

and/or future creditors of BLMIS.

646.    FGB, FGL, and GBL each served as general partner to GS and/or GSP during the

six years preceding the Filing Date.  As general partner of GS and GSP, FGB, FGL, and GBL are

each liable, pursuant to sections 15-306(a) and 17-403(b) of the Delaware Code, for all

obligations GS and GSP incurred while FGB, FGL, and GBL were each serving as general

partner.

647.    As a result of the foregoing, pursuant to sections 276, 276-a, 278, and/or 279 of

the New York Debtor and Creditor Law, sections 544(b), 550(a)(1), and 551 of the Bankruptcy

Code, SIPA § 78fff-2(c)(3), and sections 15-306(a) and 17-403(b) of the Delaware Code, the

Trustee is entitled to a judgment:  (a) avoiding and preserving the Greenwich Six Year Initial

Transfers, (b) directing that the Greenwich Six Year Initial Transfers be set aside, (c) recovering

the Greenwich Six Year Initial Transfers, or the value thereof, from FGB, FGL, and GBL for the

benefit of the estate of BLMIS, and to return to injured customers, and (d) recovering attorneys'

fees from FGB, FGL and GBL.

176

MADC1345_00000620

**COUNT THIRTEEN:  FRAUDULENT TRANSFER (SUBSEQUENT TRANSFEREE) –
NEW YORK DEBTOR AND CREDITOR LAW §§ 276, 276-a, 278 AND/OR 279, AND 11
U.S.C. §§ 544, 550(a)(2), AND 551**

*Against the FGG Affiliates, Management Defendants, and Sales Defendants*

648.     The Trustee incorporates by reference the allegations contained in the previous

paragraphs of this Amended Complaint as if fully rewritten herein.

649.     At all times relevant to the Six Year Initial Transfers, there have been one or more

creditors who have held and still hold matured or unmatured unsecured claims against BLMIS

that were and are allowable under section 502 of the Bankruptcy Code or that were and are not

allowable only under section 502(e).

650.     The Six Year Initial Transfers were made by BLMIS and the transferees with the

actual intent to hinder, delay, or defraud the creditors of BLMIS.  BLMIS made the Six Year

Initial Transfers to or for the benefit of Fairfield Sentry, GS, and/or GSP in furtherance of a

fraudulent investment scheme.

651.     The Trustee has filed a lawsuit against Fairfield Sentry, GS, and GSP to avoid the

Six Year Initial Transfers pursuant to section 544 of the Bankruptcy Code, and sections 276-9 of

the New York Debtor and Creditor Law, and to recover the Six Year Initial Transfers from

Fairfield Sentry, GS, and GSP pursuant to section 550(a)(1) of the Bankruptcy Code and SIPA §

78fff-2(c)(3).

652.     The FGG Affiliates, Management Defendants, and Sales Defendants were

immediate or mediate transferees of some portion of the Six Year Initial Transfers pursuant to

section 550(a)(2) of the Bankruptcy Code.

177

MADC1345_00000621

653.     As a result of the foregoing, pursuant to sections 276, 276-a, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a)(2), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment:  (a) avoiding and preserving the Six Year Initial Transfers, (b) directing that the Six Year Initial Transfers be set aside, (c) recovering the Six Year Subsequent Transfers, or the value thereof, from the FGG Affiliates, Management Defendants, and Sales Defendants for the benefit of the estate of BLMIS, and to return to injured customers, and (d) recovering attorneys' fees from the FGG Affiliates, Management Defendants, and Sales Defendants.

## COUNT FOURTEEN:  FRAUDULENT TRANSFER (INITIAL TRANSFEREE) – NEW YORK DEBTOR AND CREDITOR LAW §§ 273 AND 278 AND/OR 279, AND 11 U.S.C. §§ 544, 550(a)(1), AND 551

### *Against the Feeder Funds*

654.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of the Amended Complaint as if fully rewritten herein.

655.     At all relevant times there was and is at least one or more creditors who held and hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

656.     BLMIS did not receive fair consideration for the Six Year Initial Transfers.

657.     BLMIS was insolvent at the time it made each of the Six Year Initial Transfers or, in the alterative, BLMIS became insolvent as a result of each of the Six Year Initial Transfers.

658.     As a result of the foregoing, pursuant to sections 273, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a)(1), 551 of the Bankruptcy Code, SIPA

178

MADC1345_00000622

§ 78fff-2(c)(3), and sections 15-306(a) and 17-403(b) of the Delaware Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the Six Year Initial Transfers, (b) directing that the Six Year Initial Transfers be set aside, and (c) recovering the Six Year Initial Transfers, or the value thereof, from the Feeder Funds for the benefit of the estate of BLMIS, and to return to injured customers.

## COUNT FIFTEEN: FRAUDULENT TRANSFER (INITIAL TRANSFEREE) – NEW YORK DEBTOR AND CREDITOR LAW §§ 273 AND 278 AND/OR 279, AND 11 U.S.C. §§ 544, 550(a)(1), AND 551

### *Against the FGB, FGL, and GBL*

659.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of the Amended Complaint as if fully rewritten herein.

660.     At all relevant times there was and is at least one or more creditors who held and hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

661.     BLMIS did not receive fair consideration for the Greenwich Six Year Initial Transfers.

662.     BLMIS was insolvent at the time it made each of the Greenwich Six Year Initial Transfers or, in the alterative, BLMIS became insolvent as a result of each of the Greenwich Six Year Initial Transfers.

663.     FGB, FGL and GBL each served as general partner to GS and/or GSP during the six years preceding the Filing Date. As general partner of GS and GSP, FGB, FGL, and GBL are each liable, pursuant to sections 15-306(a) and 17-403(b) of the Delaware Code, for all

179

MADC1345_00000623

obligations GS and GSP incurred while FGB, FGL, and GBL were each serving as general partner.

664.     As a result of the foregoing, pursuant to sections 273, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a)(1), 551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), and sections 15-306(a) and 17-403(b) of the Delaware Code, the Trustee is entitled to a judgment:  (a) avoiding and preserving the Greenwich Six Year Initial Transfers, (b) directing that the Greenwich Six Year Initial Transfers be set aside, and (c) recovering the Greenwich Six Year Initial Transfers, or the value thereof, from FGB, FGL, and GBL for the benefit of the estate of BLMIS, and to return to injured customers.

## COUNT SIXTEEN:  FRAUDULENT TRANSFER (SUBSEQUENT TRANSFEREE) – NEW YORK DEBTOR AND CREDITOR LAW §§ 273 AND 278 AND/OR 279, AND 11 U.S.C. §§ 544, 550(a)(2), AND 551

### Against the FGG Affiliates, Management Defendants, and Sales Defendants

665.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of the Amended Complaint as if fully rewritten herein.

666.     At all relevant times there was and is at least one or more creditors who held and hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

667.     BLMIS did not receive fair consideration for the Six Year Initial Transfers.

668.     BLMIS was insolvent at the time it made each of the Six Year Initial Transfers or, in the alterative, BLMIS became insolvent as a result of each of the Six Year Initial Transfers.

180

MADC1345_00000624

669. The Trustee has filed a lawsuit against Fairfield Sentry, GS, and GSP to avoid the Six Year Initial Transfers pursuant to section 544 of the Bankruptcy Code, and sections 273, 278, and/or 279 of the New York Debtor and Creditor Law, and to recover the Six Year Initial Transfers from Fairfield Sentry, GS, and GSP pursuant to section 550(a)(1) of the Bankruptcy Code.

670. The FGG Affiliates, Management Defendants, and Sales Defendants were immediate or mediate transferees of some portion of the Six Year Initial Transfers pursuant to section 550(a)(2) of the Bankruptcy Code.

671. As a result of the foregoing, pursuant to sections 273, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a)(2), 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment: (a) avoiding and preserving the Six Year Initial Transfers, (b) directing that the Six Year Initial Transfers be set aside, and (c) recovering the Six Year Subsequent Transfers, or the value thereof, from the FGG Affiliates, Management Defendants, and Sales Defendants for the benefit of the estate of BLMIS, and to return to injured customers.

## COUNT SEVENTEEN:  FRAUDULENT TRANSFERS (INITIAL TRANSFEREE) – NEW YORK DEBTOR AND CREDITOR LAW §§ 274, 278, AND/OR 279, AND 11 U.S.C. §§ 544, 550(a)(1), AND 551

### *Against the Feeder Funds*

672. The Trustee incorporates by reference the allegations contained in the previous paragraphs of the Amended Complaint as if fully rewritten herein.

673. At all relevant times there was and is at least one or more creditors who held and hold matured or unmatured unsecured claims against BLMIS that were and are allowable under

181

section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

674.    BLMIS did not receive fair consideration for the Six Year Initial Transfers.

675.    At the time BLMIS made each of the Six Year Initial Transfers, BLMIS was engaged or was about to engage in a business or transaction for which the property remaining in its hands after each of the Six Year Initial Transfers was an unreasonably small capital.

676.    As a result of the foregoing, pursuant to §§ 274, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a)(1) and 551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), and sections 15-306(a) and 17-403(b) of the Delaware Code, the Trustee is entitled to a judgment:  (a) avoiding and preserving the Six Year Initial Transfers, (b) directing that the Six Year Initial Transfers be set aside, and (c) recovering the Six Year Initial Transfers, or the value thereof, from the Feeder Funds for the benefit of the estate of BLMIS, and to return to injured customers.

## COUNT EIGHTEEN:  FRAUDULENT TRANSFERS (INITIAL TRANSFEREE) – NEW YORK DEBTOR AND CREDITOR LAW §§ 274, 278, AND/OR 279, AND 11 U.S.C. §§ 544, 550(a)(1), AND 551

### *Against FGB, FGL, and GBL*

677.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of the Amended Complaint as if fully rewritten herein.

678.    At all relevant times there was and is at least one or more creditors who held and hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

182

MADC1345_00000626

679.    BLMIS did not receive fair consideration for the Greenwich Six Year Initial
Transfers.

680.    At the time BLMIS made each of the Greenwich Six Year Initial Transfers,
BLMIS was engaged or was about to engage in a business or transaction for which the property
remaining in its hands after each of the Greenwich Six Year Initial Transfers was an
unreasonably small capital.

681.    FGB, FGL, and GBL each served as general partner to GS and/or GSP during the
six years preceding the Filing Date.  As general partner of GS and GSP, FGB, FGL, and GBL are
each liable, pursuant to sections 15-306(a) and 17-403(b) of the Delaware Code, for all
obligations GS and GSP incurred while FGB, FGL, and GBL were each serving as general
partner.

682.    As a result of the foregoing, pursuant to sections 274, 278, and/or 279 of the New
York Debtor and Creditor Law, sections 544(b), 550(a)(1), and 551 of the Bankruptcy Code,
SIPA § 78fff-2(c)(3), and sections 15-306(a) and 17-403(b) of the Delaware Code, the Trustee is
entitled to a judgment:  (a) avoiding and preserving the Greenwich Six Year Initial Transfers, (b)
directing that the Greenwich Six Year Initial Transfers be set aside, and (c) recovering the
Greenwich Six Year Initial Transfers, or the value thereof, from FGB, FGL, and GBL for the
benefit of the estate of BLMIS, and to return to injured customers.

**COUNT NINETEEN:  FRAUDULENT TRANSFERS (SUBSEQUENT TRANSFEREE) –
NEW YORK DEBTOR AND CREDITOR LAW §§ 274, 278, AND/OR 279, AND 11 U.S.C.
§§ 544, 550(a)(2), AND 551**

*Against the FGG Affiliates, Management Defendants, and Sales Defendants*

683.    The Trustee incorporates by reference the allegations contained in the previous

MADC1345_00000627

paragraphs of the Amended Complaint as if fully rewritten herein.

684.    At all relevant times there was and is at least one or more creditors who held and hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

685.    BLMIS did not receive fair consideration for the Six Year Initial Transfers.

686.    At the time BLMIS made each of the Six Year Initial Transfers, BLMIS was engaged or was about to engage in a business or transaction for which the property remaining in its hands after each of the Six Year Initial Transfers was an unreasonably small capital.

687.    The Trustee has filed a lawsuit against Fairfield Sentry, GS, and GSP to avoid the Six Year Initial Transfers pursuant to section 544 of the Bankruptcy Code, and sections 274, 278, and/or 279 of the New York Debtor and Creditor Law, and to recover the Six Year Initial Transfers from Fairfield Sentry, GS, and GSP pursuant to section 550(a)(1) of the Bankruptcy Code and SIPA § 78fff-2(c)(3).

688.    The FGG Affiliates, Management Defendants, and Sales Defendants were immediate or mediate transferees of some portion of the Six Year Initial Transfers pursuant to section 550(a)(2) of the Bankruptcy Code.

689.    As a result of the foregoing, pursuant to sections 274, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a)(2), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment:  (a) avoiding and preserving the Six Year Initial Transfers, (b) directing that the Six Year Initial Transfers be set aside, and (c)

184

MADC1345_00000628

recovering the Six Year Subsequent Transfers, or the value thereof, from the FGG Affiliates, Management Defendants, and Sales Defendants for the benefit of the estate of BLMIS, and to return to injured customers.

**COUNT TWENTY: FRAUDULENT TRANSFERS (INITIAL TRANSFEREE) – NEW YORK DEBTOR AND CREDITOR LAW §§ 275, 278, AND/OR 279, AND 11 U.S.C. §§ 544, 550(a)(1), AND 551**

### *Against the Feeder Funds*

690.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of the Amended Complaint as if fully rewritten herein.

691.     At all relevant times there was and is at least one or more creditors who held and hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

692.     BLMIS did not receive fair consideration for the Six Year Initial Transfers.

693.     At the time BLMIS made each of the Six Year Initial Transfers, BLMIS had incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay them as the debts matured.

694.     As a result of the foregoing, pursuant to sections 275, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a)(1), and 551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), and sections 15-306(a) and 17-403(b) of the Delaware Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the Six Year Initial Transfers, (b) directing that the Six Year Initial Transfers be set aside, and (c) recovering the Six Year Initial Transfers,

185

MADC1345_00000629

or the value thereof, from the Feeder Funds for the benefit of the estate of BLMIS, and to return

to injured customers.

## COUNT TWENTY-ONE: FRAUDULENT TRANSFERS (INITIAL TRANSFEREE) – NEW YORK DEBTOR AND CREDITOR LAW §§ 275, 278, AND/OR 279, AND 11 U.S.C. §§ 544, 550(a)(1), AND 551

### Against FGB, FGL, and GBL

695.    The Trustee incorporates by reference the allegations contained in the previous

paragraphs of the Amended Complaint as if fully rewritten herein.

696.    At all relevant times there was and is at least one or more creditors who held and

hold matured or unmatured unsecured claims against BLMIS that were and are allowable under

section 502 of the Bankruptcy Code or that were and are not allowable only under section

502(e).

697.    BLMIS did not receive fair consideration for the Greenwich Six Year Initial

Transfers.

698.    At the time BLMIS made each of the Greenwich Six Year Initial Transfers,

BLMIS had incurred, was intending to incur, or believed that it would incur debts beyond its

ability to pay them as the debts matured.

699.    FGB, FGL, and GBL each served as general partner to GS and/or GSP during the

six years preceding the Filing Date.  As general partner of GS and GSP, FGB, FGL and GBL are

each liable, pursuant to sections 15-306(a) and 17-403(b) of the Delaware Code, for all

obligations GS and GSP incurred while FGB, FGL, and GBL were each serving as general

partner.

186

MADC1345_00000630

700.     As a result of the foregoing, pursuant to sections 275, 278, and/or 279 of the New

York Debtor and Creditor Law, sections 544(b), 550(a)(1), and 551 of the Bankruptcy Code,

SIPA § 78fff-2(c)(3), and sections 15-306(a) and 17-403(b) of the Delaware Code, the Trustee is

entitled to a judgment:  (a) avoiding and preserving the Greenwich Six Year Initial Transfers, (b)

directing that the Greenwich Six Year Initial Transfers be set aside, and (c) recovering the

Greenwich Six Year Initial Transfers, or the value thereof, from FGB, FGL, and GBL for the

benefit of the estate of BLMIS, and to return to injured customers.

## COUNT TWENTY-TWO:  FRAUDULENT TRANSFERS (SUBSEQUENT TRANSFEREE) – NEW YORK DEBTOR AND CREDITOR LAW §§ 275, 278, AND/OR 279, AND 11 U.S.C. §§ 544, 550(a)(2), 551

### Against the FGG Affiliates, Management Defendants, and Sales Defendants

701.     The Trustee incorporates by reference the allegations contained in the previous

paragraphs of the Amended Complaint as if fully rewritten herein.

702.     At all relevant times there was and is at least one or more creditors who held and

hold matured or unmatured unsecured claims against BLMIS that were and are allowable under

section 502 of the Bankruptcy Code or that were and are not allowable only under section

502(e).

703.     BLMIS did not receive fair consideration for the Six Year Initial Transfers.

704.     At the time BLMIS made each of the Six Year Initial Transfers, BLMIS had

incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay

them as the debts matured.

705.     The Trustee has filed a lawsuit against Fairfield Sentry, GS, and GSP to avoid the

Six Year Initial Transfers pursuant to section 544 of the Bankruptcy Code, and sections 275, 278,

MADC1345_00000631

and/or 279 of the New York Debtor and Creditor Law, and to recover the Six Year Initial

Transfers from Fairfield Sentry, GS, and GSP pursuant to section 550(a)(1) of the Bankruptcy

Code and SIPA § 78fff-2(c)(3).

706.   The FGG Affiliates, Management Defendants, and Sales Defendants were

immediate or mediate transferees of some portion of the Six Year Initial Transfers pursuant to

section 550(a)(2) of the Bankruptcy Code.

707.   As a result of the foregoing, pursuant to sections 275, 278, and/or 279 of the New

York Debtor and Creditor Law, sections 544(b), 550(a)(2), and 551 of the Bankruptcy Code, and

SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment:  (a) avoiding and preserving the Six

Year Initial Transfers, (b) directing that the Six Year Initial Transfers be set aside, and (c)

recovering the Six Year Subsequent Transfers, or the value thereof, from the FGG Affiliates,

Management Defendants, and Sales Defendants for the benefit of the estate of BLMIS, and to

return to injured customers.

## COUNT TWENTY-THREE:  UNDISCOVERED FRAUDULENT TRANSFERS (INITIAL TRANSFEREE) – NEW YORK CIVIL PROCEDURE LAW AND RULES 203(g), 213(8), NEW YORK DEBTOR AND CREDITOR LAW §§ 276, 276-a, 278, AND/OR 279, AND 11 U.S.C. §§ 544, 550(a)(1), AND 551

### *Against the Feeder Funds*

708.   The Trustee incorporates by reference the allegations contained in the previous

paragraphs of this Amended Complaint as if fully rewritten herein.

709.   At all times relevant to the Initial Transfers, the fraudulent scheme perpetrated by

BLMIS was not reasonably discoverable by at least one unsecured creditor of BLMIS.

MADC1345_00000632

710.    At all times relevant to the Initial Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

711.    The Initial Transfers were made by BLMIS and the transferees with the actual intent to hinder, delay, or defraud the creditors of BLMIS.  BLMIS made the Initial Transfers to or for the benefit of Fairfield Sentry, GS, and GSP in furtherance of a fraudulent investment scheme.

712.    Fairfield Sentry, GS, and GSP received the Initial Transfer with actual intent to hinder, delay, or defraud creditors of BLMIS at the time of each of the transfers and/or future creditors of BLMIS.

713.    As a result of the foregoing, pursuant to NY CPLR 203(g), 213(8), sections 276, 276-a, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a)(1), and 551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), and sections 15-306(a) and 17-403(b) of the Delaware Code, the Trustee is entitled to a judgment:  (a) avoiding and preserving the Initial Transfers, (b) directing that the Initial Transfers be set aside, (c) recovering the Initial Transfers, or the value thereof, from the Feeder Funds for the benefit of the estate of BLMIS, and to return to injured customers, and (d) recovering attorneys' fees from the Feeder Funds.

189

**COUNT TWENTY-FOUR: UNDISCOVERED FRAUDULENT TRANSFERS (INITIAL TRANSFEREE) – NEW YORK CIVIL PROCEDURE LAW AND RULES 203(g), 213(8), NEW YORK DEBTOR AND CREDITOR LAW §§ 276, 276-a, 278, AND/OR 279, AND 11 U.S.C. §§ 544, 550(a)(1), AND 551**

*Against FGB, FGL, GBL, Noel, and Tucker*

714.  The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

715.  At all times relevant to the Greenwich Initial Transfers, the fraudulent scheme perpetrated by BLMIS was not reasonably discoverable by at least one unsecured creditor of BLMIS.

716.  At all times relevant to the Greenwich Initial Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

717.  The Greenwich Initial Transfers were made by BLMIS and the transferees with the actual intent to hinder, delay, or defraud the creditors of BLMIS. BLMIS made the Greenwich Initial Transfers to or for the benefit of GS and GSP in furtherance of a fraudulent investment scheme.

718.  GS and GSP received the Greenwich Initial Transfers with actual intent to hinder, delay, or defraud creditors of BLMIS at the time of each of the transfers and/or future creditors of BLMIS.

719.  FGB, FGL, GBL, Noel, and Tucker each served as general partner to GS and/or GSP during the six years preceding the Filing Date. As general partner of GS and GSP, FGB,

190

FGL, GBL, Noel, and Tucker are each liable, pursuant to sections 15-306(a) and 17-403(b) of

the Delaware Code, for all obligations GS and GSP incurred while FGB, FGL, GBL, Noel, and

Tucker were each serving as general partner.

720.    As a result of the foregoing, pursuant to NY CPLR 203(g), 213(8), sections 276,

276-a, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a)(1),

and 551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), and sections 15-306(a) and 17-403(b) of

the Delaware Code, the Trustee is entitled to a judgment:  (a) avoiding and preserving the

Greenwich Initial Transfers, (b) directing that the Greenwich Initial Transfers be set aside, (c)

recovering the Greenwich Initial Transfers, or the value thereof, from FGB, FGL, GBL, Noel,

and Tucker for the benefit of the estate of BLMIS, and to return to injured customers, and (d)

recovering attorneys' fees from FGB, FGL, GBL, Noel, and Tucker.

### COUNT TWENTY-FIVE:  UNDISCOVERED FRAUDULENT TRANSFERS (SUBSEQUENT TRANSFEREE) – NEW YORK CIVIL PROCEDURE LAW AND RULES 203(g), 213(8), NEW YORK DEBTOR AND CREDITOR LAW §§ 276, 276-a, 278, AND/OR 279, AND 11 U.S.C. §§ 544, 550(a)(2), AND 551

*Against the FGG Affiliates, Management Defendants, and Sales Defendants*

721.    The Trustee incorporates by reference the allegations contained in the previous

paragraphs of this Amended Complaint as if fully rewritten herein.

722.    At all times relevant to the Initial Transfers, the fraudulent scheme perpetrated by

BLMIS was not reasonably discoverable by at least one unsecured creditor of BLMIS.

723.    At all times relevant to the Initial Transfers, there have been one or more creditors

who have held and still hold matured or unmatured unsecured claims against BLMIS that were

and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable

only under section 502(e).

191

724.    The Initial Transfers were made by BLMIS and the transferees with the actual intent to hinder, delay, or defraud the creditors of BLMIS.  BLMIS made the Initial Transfers to or for the benefit of Fairfield Sentry, GS, and GSP in furtherance of a fraudulent investment scheme.

725.    The Trustee has filed a lawsuit against Fairfield Sentry, GS, and GSP to avoid the Initial Transfers pursuant to section 544 of the Bankruptcy Code, sections 275, 278, and/or 279 of the New York Debtor and Creditor Law, and Rule 203(g) of the New York Civil Procedure Law and Rules, and to recover the Initial Transfers from Fairfield Sentry, GS, and GSP pursuant to section 550(a)(1) of the Bankruptcy Code.

726.    The FGG Affiliates, Management Defendants, and Sales Defendants were immediate or mediate transferees of some portion of the Initial Transfers pursuant to section 550(a)(2) of the Bankruptcy Code.

727.    As a result of the foregoing, pursuant to NY CPLR 203(g) and 213(8), sections 276, 276-a, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a)(2), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment:  (a) avoiding and preserving the Initial Transfers, (b) directing that the Initial Transfers be set aside, (c) recovering the Subsequent Transfers, or the value thereof, from the FGG Affiliates, Management Defendants, and Sales Defendants for the benefit of the estate of BLMIS, and to return to injured customers, and (d) recovering attorneys' fees from the FGG Affiliates, Management Defendants, and Sales Defendants.

192

MADC1345_00000636

## COUNT TWENTY-SIX:  OBJECTION TO THE DEFENDANTS' CUSTOMER CLAIMS

### *Against Fairfield Sentry, GS, GSP, Sigma, Lambda, FGB, Noel, Tucker, Blum, and Harary*

728.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

729.    Fairfield Sentry, GS, GSP, Sigma, Lambda, FGB, Noel, Tucker, Blum, and Harary have filed customer claims.

730.    These claims (the "Claims") are not supported by the books and records of BLMIS nor the claim materials submitted by the claimants, and, therefore, should be disallowed pursuant to sections 502(d) of the Bankruptcy Code.

731.    The Claims also should not be allowed as customer claims or as general unsecured claims.  Fairfield Sentry, GS, GSP, Sigma, Lambda, FGB, Noel, Tucker, Blum, and Harary are the recipients, as direct, immediate, and/or mediate transferees, of transfers of customers' property that are available and recoverable under sections 502(a), 544(b), 547, 548, and 550 of the Bankruptcy Code, NY Debtor and Creditor Law 270 *et seq*., NYCPLR 203(g) and 213(8), and applicable sections of SIPA, including § 78fff-2(c)(3), and Fairfield Sentry, GS, GSP, Sigma, Lambda, FGB, Noel, Tucker, Blum, and Harary have not returned the Initial Transfers or the Subsequent Transfers to the Trustee.  As a result, pursuant to section 502(d), the Claims must be disallowed unless and until Fairfield Sentry, GS, GSP, Sigma, Lambda, FGB, Noel, Tucker, Blum, and Harary return the Initial Transfers and the Subsequent Transfers to the Trustee.

MADC1345_00000637

732.     As a result of the foregoing, the Trustee is entitled to an order disallowing the

Claims and/or that Fairfield Sentry, GS, GSP, Sigma, Lambda, FGB, Noel, Tucker, Blum, and

Harary are not entitled to customer status.

## COUNT TWENTY-SEVEN:  UNJUST ENRICHMENT

### *Against the FGG Affiliates, Management Defendants, and Sales Defendants ("Non-Feeder Fund Defendants")*

733.     The Trustee incorporates by reference the allegations contained in the previous

paragraphs of this Amended Complaint as if fully rewritten herein.

734.     The Non-Feeder Funds Defendants have all been unjustly enriched.  They have

wrongfully and unconscionably benefited from the receipt of stolen money from BLMIS and

from the Feeder Funds' investors, for which they did not in good faith provide fair value.  These

Defendants were further unjustly enriched as a result of aiding, abetting, enabling, and

substantially participating in a fraudulent scheme.

735.     The FGG Affiliates earned over a billion dollars in fees.  The Management

Defendants and Sales Defendants received hundreds of millions of dollars in partnership

distributions, salaries, bonuses, and other compensation.  None of this money has been returned

to the Trustee for equitable distribution to BLMIS customers who lost billions of dollars in the

Ponzi scheme.

736.     As described above, the Non-Feeder Fund Defendants were constantly faced with

evidence that BLMIS was a fraud.  For example, in 2005 they confirmed Madoff's auditor lied

about his capacities and ability to audit the billions of dollars in BLMIS's customer accounts.

(*See supra* ¶¶377-398.)  They also knew the consistency of Madoff's returns were, statistically,

194

MADC1345_00000638

too good to be true. (*See supra* ¶¶400-404, 451-461.) They knew Madoff's purported trading

structure was inconsistent with industry practices and produced trading volumes that were

virtually impossible. (*See supra* ¶¶412-440.) Their own investors and paid consultants, along

with numerous industry professionals, raised these concerns over and over again. (*See supra*

¶¶462-479, 498-527.)

737.    Instead of warning their investors and Madoff's other customers, and reporting

Madoff to regulators, the Non-Feeder Fund Defendants helped Madoff market BLMIS to their

own investors, helped shield him from FGG investors who wanted to meet with him, and

protected him by making misrepresentations to the SEC. (*See supra* ¶¶350-361.) Confronted

with a plethora of red flags, these Defendants continued to try to raise billions of dollars from

investors to enrich themselves. (*See supra* ¶¶480-489.)

738.    Faced with the prospect of losing hundreds of millions of dollars in fees, the Non-

Feeder Fund Defendants chose to cover up the compelling evidence of Madoff's fraud. As a

result, they have been unjustly enriched by over one billion dollars that rightfully belongs to

BLMIS customers.

739.    Equity and good conscience require full restitution of the monies received by the

Non-Feeder Fund Defendants, directly and indirectly, from BLMIS and any assets derived from

that money.

## COUNT TWENTY-EIGHT:  CONVERSION

*Against Noel, Tucker, Piedrahita, McKeefry, Lipton, Vijayvergiya, McKenzie, Landsberger,
Toub, Blum, and Smith*

195

MADC1345_00000639

740.    The Trustee incorporates by reference the allegations in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

741.    The Trustee has the possessory right and interest to all property in the Defendants' possession that went to the Defendants by virtue of the Ponzi scheme.  This property reflects money and other interests, which originated from and were co-mingled with other BLMIS customer accounts.

742.    The Trustee's possessory interest in this Customer Property is governed by SIPA. The Trustee has the superior right of possession to all fees, distributions, and other monies that the Defendants possess and that originated from BLMIS.  The Defendants' dominion over and interference with the Trustee's interest in the Customer Property is in derogation of the Trustee's right and obligation to return this property on an equitable basis to BLMIS customers.

743.    The Defendants are not authorized, and have never been authorized, to exercise dominion and control over Customer Property.  These specifically identified funds have been wrongfully converted by the Defendants.

744.    As a result of the foregoing, the Defendants are liable to the Trustee for having wrongfully converted this Customer Property and are obligated to return all such monies.

## COUNT TWENTY-NINE:  MONEY HAD AND RECEIVED

745.    The Trustee incorporates by reference the allegations of the preceding paragraphs of this Amended Complaint as if fully rewritten herein.

746.    The Defendants are currently in possession of, or have control over, money that originated from BLMIS.  These monies are Customer Property and belong to the customer fund

196

MADC1345_00000640

under the Trustee's control.  The Defendants have no lawful or equitable right to these monies, having obtained the monies through fraud, deceit, and/or mistake.

747.    In equity and good conscience, the Defendants may not retain possession or control of these monies, which rightfully belong to the customer fund under the Trustee's control.  The Defendants are obligated to return all such monies to the Trustee.

## COUNT THIRTY:  AIDING AND ABETTING FRAUD

### *Against Noel, Tucker, Piedrahita, McKeefry, Lipton, Vijayvergiya, McKenzie, Landsberger, Toub, Blum, and Smith*

748.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

749.    By virtue of their individual functions and responsibilities within FGG, their communications with investors, and all of the information of which they had knowledge, each of Defendants Noel, Tucker, Piedrahita, McKeefry, Lipton, Vijayvergiya, McKenzie, Landsberger, Toub, Blum, and Smith knew Madoff was engaged in fraudulent behavior.  Noel, Tucker, Piedrahita, McKeefry, Lipton, Vijayvergiya, McKenzie, Landsberger, Toub, Blum, and Smith actively and substantially assisted Madoff in perpetrating the fraud by, among other things, providing marketing; protection from due diligence inquiries; credibility; sales support; and an influx of billions of dollars to keep the Ponzi scheme going.  (*See supra* ¶¶333-489.)  These individual Defendants each knew of material information that demonstrated Madoff was engaged in fraudulent activities.  (*See id.*)  Instead of reporting Madoff's fraudulent activities to the SEC or their investors, Noel, Tucker, Piedrahita, McKeefry, Lipton, Vijayvergiya, McKenzie, Landsberger, Toub, Blum, and Smith substantially assisted Madoff in continuing to grow the fraud.  Each of these Defendants intentionally and knowingly helped Madoff deceive the SEC

197

MADC1345_00000641

for many years, and repeatedly misled investors, prospective investors, and others, all of which directly and substantially aided Madoff in maintaining the fraud. (*See supra* ¶¶333-373.)

750.    Noel, Tucker, Piedrahita, McKeefry, Lipton, Vijayvergiya, McKenzie, Landsberger, Toub, Blum, and Smith each knew that Madoff's returns were statistically too good to be true. (*See supra* ¶¶400-404, 451-461.) These Defendants also knew that Madoff's purported trading structure was inconsistent with industry practices and produced trading volumes that were virtually impossible. (*See supra* ¶¶412-440.)

751.    In addition, Noel, Tucker, Piedrahita, McKeefry, Lipton, Vijayvergiya, McKenzie, Landsberger, Blum, Toub, and Smith conspired to enter into explicit and implicit agreements with BLMIS to help perpetuate Madoff's fraud. These agreements were corrupt in their purpose to raise billions of dollars in the face of fraudulent activity. Each of these Defendants took intentional and overt actions pursuant to these agreements and participated in the fraud, causing billions of dollars in damages to BLMIS customers.

752.    Noel, Tucker, Piedrahita, McKeefry, Lipton, Vijayvergiya, McKenzie, Landsberger, Toub, Blum, and Smith explicitly agreed to market BLMIS, and the market the SSC Strategy as their own investment scheme, resulting in billions of dollars of capital to maintain the Ponzi scheme. They each explicitly agreed to protect Madoff from direct inquiries from the Feeder Funds' investors, and to provide the investors with misleading information where necessary. They also each explicitly agreed to help mislead the SEC in order to protect Madoff from having to register as an investment adviser. (*See supra* ¶¶350-361.)

753.    Noel, Tucker, Piedrahita, McKeefry, Lipton, Vijayvergiya, McKenzie, Landsberger, Toub, Blum, and Smith acted pursuant to these implicit and explicit agreements by

198

traveling the world to market BLMIS and the Feeder Funds and by providing false and

misleading responses to customer concerns that Madoff might be a fraud.  (*See supra* ¶¶339-349,

362-373.)  Noel, Tucker, Piedrahita, McKeefry, Lipton, Vijayvergiya, McKenzie, Landsberger,

Toub, Blum, and Smith purposely and knowingly discouraged investors from performing due

diligence and helped Madoff by working to remove all references to BLMIS from the Feeder

Funds' marketing materials.  (*See id.*)

754.    Defendant Noel is a founding partner of FGG and was involved in the day-to-day

management decisions that resulted in FGG falsely marketing the Feeder Funds.  He procured

billions of dollars from investors to hand to Madoff; deceived the Feeder Funds' investors by

providing them with information about BLMIS that was untrue; and made misrepresentations to

the SEC about how BLMIS and the Feeder Funds operated.  (*See supra* ¶¶193-202.)

755.    Noel substantially assisted Madoff by leading and engineering FGG's global

marketing efforts to sell Madoff.  Noel traveled around with his Feeder Funds summary sheets,

convincing investors to give Madoff billions of dollars.  Noel knew those summary sheets

contained false and misleading information regarding BLMIS and he knowingly misled investors

when he parroted the misstatements contained on those sheets.  (*See supra* ¶¶193-202, 339-349,

362-373.)

756.    Noel also knew of the inconsistent and contradictory information Madoff

provided during FGG's "due diligence" visits.  He knew Madoff refused to provide critical

information including the identity of the options counterparties.  He also knew FGG trained its

sales force to provide false answers to investor queries.  (*See supra* ¶¶339-349, 362-373.)

199

MADC1345_00000643

757.    All of Noel's intentional and overt actions concerning Madoff and BLMIS substantially assisted Madoff in perpetrating a fraud.

758.    Defendant Tucker is a founding partner of FGG and was involved in the day-to-day management decisions that resulted in FGG falsely marketing the Feeder Funds.  He procured billions of dollars from investors to hand to Madoff; deceived the Feeder Funds investors by providing them with information about BLMIS that was untrue; and made misrepresentations to the SEC about how BLMIS and the Feeder Funds operated.  (*See supra* ¶¶203-210.)

759.    Tucker frequently fielded investor questions and provided them with misleading responses.  Tucker also knew Madoff's auditor was a sham and never disclosed this information to investors or the SEC, which substantially aided Madoff in perpetrating the fraud.  By intentionally lying to the Feeder Funds' investors, Tucker substantially assisted Madoff in maintaining the fraud.  (*See supra* ¶¶350-361.)

760.    Tucker also intentionally and overtly instigated the cover-up of damning information showing BLMIS's auditor lied to FGG's CFO and was not capable of performing proper audits on the billions of dollars under Madoff's management.  Tucker specifically directed others to provide false answers to investors when they questioned Madoff's market timing strategy.  Tucker also readily assisted Madoff by deflecting criticism, claiming PwC reviewed BLMIS, and by hiding Madoff's options trading structure, which was not in accord with industry practices.  (*See supra* ¶¶333-373, 412-440.)

761.    All of Tucker's intentional and overt actions concerning Madoff and BLMIS substantially assisted Madoff in perpetrating a fraud.

200

MADC1345_00000644

762.     Defendant Piedrahita is a founding partner and Chairman of the Board of Directors of FGG.  He was involved in the day-to-day management decisions that resulted in FGG falsely marketing the Feeder Funds; procuring billions of dollars from investors to hand to Madoff; deceiving the Feeder Funds' investors by providing them with information about BLMIS that was untrue; and making misrepresentations to the SEC about how BLMIS and the Feeder Funds operated.  (*See supra* ¶¶211-218.)

763.     Piedrahita substantially assisted Madoff by directing all of FGG's operations as the Chairman of the Board of Directors and head of the Executive Committee.  Piedrahita had knowledge of fraud evidenced by Madoff's trade confirmations, his auditor's lies, and the statistical improbability of the returns reported to the Feeder Funds.  Despite his knowledge of fraud, Piedrahita substantially assisted Madoff by selling Madoff to any and all would-be investors.  (*See supra* ¶¶211-218.)

764.     Piedrahita also entered into explicit and implicit agreements with Madoff to provide false and misleading information to investors.  The information Piedrahita provided helped convince investors to give billions of dollars to the Feeder Funds, which then sent the money to Madoff.  Piedrahita also agreed with Madoff to do everything he could to provide billions of dollars to Madoff, which allowed Madoff to further the Ponzi scheme for his own and the Defendants' benefit.  Piedrahita acted pursuant to these agreements in routinely providing false information about Madoff to potential Feeder Funds investors during his global marketing trips.  (*See supra* ¶¶333-373.)

765.     All of Piedrahita's intentional and overt actions concerning Madoff and BLMIS substantially assisted Madoff in perpetrating a fraud.

MADC1345_00000645

766.     Defendant McKeefry served as FGG's COO and CLO, is a member of the
Executive Committee of FGG, and was involved in the day-to-day management decisions that
resulted in FGG falsely marketing the Feeder Funds.  He procured billions of dollars from
investors to hand to Madoff; deceived the Feeder Funds' investors by providing them with
information about BLMIS that was untrue; and made misrepresentations to the SEC about how
BLMIS and the Feeder Funds operated.  (*See supra* ¶¶219-224.)

767.     As COO, McKeefry was responsible for reviewing and approving FGG's
marketing materials.  McKeefry approved FGG's marketing materials with knowledge they
contained false and misleading information.  As CLO, he reviewed the regulatory filings for the
Feeder Funds and the FGG Affiliates, as well as the Feeder Funds' agreements with Madoff.
With full knowledge of the terms of the agreements with BLMIS, McKeefry agreed to make
misrepresentations to the SEC about the nature of the Feeder Funds' relationship with BLMIS in
an attempt to stop the SEC from applying additional regulations to BLMIS, and thereby,
delaying any discovery of the fraud.  (*See supra* ¶¶219-224, 350-361.)

768.     McKeefry entered into explicit and implicit agreements with Madoff to provide
false and misleading information to investors.  The information McKeefry provided helped
convince investors to invest billions of dollars in the Feeder Funds, which was then delivered to
Madoff.  McKeefry also agreed to conspire with Madoff to provide false and misleading
information to the SEC about the true role BLMIS and Madoff played in managing the Feeder
Funds' investments.  McKeefry acted pursuant to these agreements when he approved the
publication of marketing materials that contained erroneous information; approved fund
agreements that contained similarly erroneous information; and misled the SEC.  (*See supra*
¶¶219-224, 350-361.)

202

769.    All of McKeefry's intentional and overt actions concerning Madoff and BLMIS substantially assisted Madoff in perpetrating a fraud.

770.    Defendant Lipton acted as FGG's CFO and, in that capacity, was involved in upper-level management decisions regarding investor redemptions.  Lipton was frequently involved in discussions about how to respond to investor concerns about Madoff, and intentionally devised ways to provide investors false and misleading responses.  (*See supra* ¶¶225-230, 339-349, 362-373.)

771.    When faced with the knowledge he had been lied to about the real nature of Madoff's auditing firm, as well as the capabilities of that firm, Lipton did not inform FGG's investors or the SEC that BLMIS's auditor was a sham.  By protecting Madoff's fraud from the SEC and FGG's own investors, Lipton substantially assisted Madoff in perpetrating the fraud. (*See supra* ¶¶350-361.)

772.    Lipton also entered into explicit and implicit agreements with Madoff to conspire with him to hide the fact that BLMIS's auditor, Friehling, was a sham.  He intentionally acted pursuant to these agreements when he provided false information regarding the auditor to other FGG personnel that Lipton knew would distribute the same false information to the Feeder Funds' investors.  Lipton also purposely did not disclose to investors or regulatory authorities that Madoff's auditor had lied to Lipton about the firm's size and reputation.  (*See supra* ¶¶377-398.)

773.    All of Lipton's intentional and overt actions concerning Madoff and BLMIS substantially assisted Madoff in perpetrating a fraud.

203

774.    Defendant Vijayvergiya knowingly and intentionally assisted Madoff in
perpetrating his fraud by routinely providing false and misleading information to investors about
FGG's knowledge of Madoff's operations and FGG's own due diligence process.  Vijayvergiya
lied stating Madoff's auditors had twenty partners.  He also conspired with Madoff to purposely
deceive the SEC in 2006 by knowingly providing false information to the SEC regarding the
Feeder Funds' relationship with BLMIS.  (*See supra* ¶¶231-236, 333-373, 377-398.)

775.    Vijayvergiya intentionally and overtly provided false answers to investors
regarding Madoff's market timing strategy.  He also personally trained FGG's sales personnel to
provide false statements about the Feeder Funds' relationship with BLMIS including, among
other things, telling the sales personnel that FGG had a list of approved options trade
counterparties for Madoff's trades, that FGG verified trades at the DTCC, and that PwC
reviewed BLMIS.  (*See supra* ¶¶333-373.)

776.    All of Vijayvergiya's intentional and overt actions concerning Madoff and
BLMIS substantially assisted Madoff in perpetrating a fraud.

777.    Defendant McKenzie knowingly participated in misleading investors.  His
intentional acts substantially assisted Madoff in perpetrating the fraud and helped prevent others
from uncovering Madoff's fraud.  McKenzie knew Madoff's auditor had provided false
information to CFO Lipton and then allowed Vijayvergiya to provide false and misleading
information about Madoff's auditor.  By his actions, McKenzie shielded Madoff from due
diligence or investigations by third parties that could have uncovered the fraud.  (*See supra*
¶¶237-242, 377-398.)

778.    McKenzie also entered into explicit and implicit agreements with Madoff to hide

204

MADC1345_00000648

the fact that Madoff's auditor was a sham. He acted pursuant to these agreements when he did

not inform investors or regulatory authorities that he knew that the auditor was a fraud. (*See supra* ¶¶377-398.)

779. All of McKenzie's intentional and overt actions concerning Madoff and BLMIS substantially assisted Madoff in perpetrating a fraud.

780. Defendant Landsberger is a member of the Executive Committee of FGG and was involved in the day-to-day management decisions that resulted in FGG falsely marketing the Feeder Funds. He procured billions of dollars from investors to hand to Madoff; deceived the Feeder Funds' investors by providing them with information about BLMIS that was untrue; and made misrepresentations to the SEC about how BLMIS and the Feeder Funds operated. (*See supra* ¶¶243-247.)

781. Landsberger addressed investor concerns about possible fraud at BLMIS by working with his colleagues to provide answers that were not only careful not disclose the fraud, but were designed to bury the fraud from inquiry or discovery. Landsberger substantially assisted Madoff by allowing him to avoid additional due diligence investigations that could have led to the discovery of the fraud well before December 2008. (*See supra* ¶¶339-349, 362-373.)

782. Landsberger also entered into explicit and implicit agreements with Madoff to provide false and misleading information to investors. These agreements served two primary purposes. They allowed Landsberger to help raise billions of dollars for Madoff to replenish the Ponzi scheme and they prevented investors from conducting additional, independent due diligence that might have uncovered the fraud. Landsberger intentionally and overtly acted

MADC1345_00000649

pursuant to these agreements when he allowed other FGG personnel to provide information to investors which Landsberger knew to be false. (*See supra* ¶¶339-349, 362-373.)

783. All of Landsberger's intentional and overt actions concerning Madoff and BLMIS substantially assisted Madoff in perpetrating a fraud.

784. Defendant Toub is a member of the Executive Committee of FGG and was involved in the day-to-day management decisions that resulted in FGG marketing the Feeder Funds. He procured billions of dollars from investors to hand to Madoff; deceived the Feeder Funds' investors by providing them with information about BLMIS that was untrue; and made misrepresentations to the SEC about how BLMIS and the Feeder Funds operated. (*See supra* ¶¶248-253.)

785. Toub also substantially assisted Madoff in perpetrating a fraud by falsely addressing investor concerns that BLMIS was involved in fraudulent activities and by working with his colleagues to prevent the fraud from being discovered. Toub substantially assisted Madoff by purposely shielding him from additional due diligence investigations that could have led to the discovery of the fraud well before December, 2008. (*See supra* ¶¶339-349, 362-373.)

786. Toub entered into explicit and implicit agreements with Madoff to provide false and misleading information to investors. These agreements served two purposes. They allowed Toub to help procure billions of dollars for Madoff to use in the Ponzi scheme and they prevented investors from conducting additional, independent due diligence that might have uncovered the fraud. Toub also acted pursuant to these agreements when he allowed other FGG personnel to provide information to investors which Toub knew to be false. (*See supra* ¶¶339-349, 362-373.)

MADC1345_00000650

787.     All of Toub's intentional and overt actions concerning Madoff and BLMIS substantially assisted Madoff in perpetrating a fraud.

788.     Defendant Blum was involved in marketing the funds and responding to investor concerns about Madoff.  Blum reviewed FGG's marketing materials and approved the publication of those materials even though he knew they contained false or misleading statements.  Blum also substantially assisted Madoff in perpetrating a fraud by working with his colleagues at FGG to limit transparency to Madoff and to avoid delivering to investors accurate information about Madoff.  (*See supra* ¶¶260-265, 339-349, 362-373.)

789.     Blum entered into explicit and implicit agreements with Madoff to limit transparency into BLMIS and to limit investors' access to Madoff.  He intentionally and overtly acted pursuant to these agreements.  All of Blum's activities concerning Madoff substantially assisted in Madoff perpetrating the fraud.  (*See supra* ¶¶339-349, 362-373.)

790.     All of Blum's intentional and overt actions concerning Madoff and BLMIS substantially assisted Madoff in perpetrating a fraud.

791.     Defendant Smith actively responded to investors concerns about Madoff.  Like his fellow partners, Smith substantially assisted Madoff in perpetrating a fraud by devising schemes to appease investors' concerns about Madoff being a fraud.  Smith intentionally and overtly assisted Madoff in escaping due diligence and investigation that could have uncovered the fraudulent activities.  (*See supra* ¶¶266-271, 339-349, 362-373.)

792.     Smith also entered into explicit and implicit agreements with Madoff to provide false and misleading information to investors.  These agreements served two primary purposes.

207

MADC1345_00000651

They allowed Smith to help deliver billions of dollars to Madoff to use in the Ponzi scheme and they prevented investors from conducting additional, independent due diligence that might have uncovered the fraud. Smith purposely acted pursuant to these agreements when he misled investors regarding Madoff's lack of transparency by providing false information. (*See supra* ¶¶339-349, 362-373.)

793. All of Smith's intentional and overt actions concerning Madoff and BLMIS substantially assisted Madoff in perpetrating a fraud.

## COUNT THIRTY-ONE: AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

### *Against Noel, Tucker, Piedrahita, McKeefry, Lipton, Vijayvergiya, McKenzie, Landsberger, Toub, Blum, and Smith*

794. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

795. BLMIS owed a fiduciary duty to its customers. BLMIS breached that fiduciary duty by perpetrating a massive Ponzi scheme. Noel, Tucker, Piedrahita, McKeefry, Lipton, Vijayvergiya, McKenzie, Landsberger, Toub, Blum, and Smith knowingly participated in that breach, which resulted in billions of dollars of damage to BLMIS customers.

796. BLMIS owed a fiduciary duty to act in the best interests of investors. In this role, BLMIS held a superior position over investors in the Feeder Funds, which required investors to repose trust and confidence with BLMIS. (*See supra* ¶6.)

797. Noel, Tucker, Piedrahita, McKeefry, Lipton, Vijayvergiya, McKenzie, Landsberger, Toub, Blum, and Smith knew of Madoff's fraudulent activity that was breaching BLMIS's fiduciary duties. They substantially assisted Madoff in breaching his duties by, among

208

other things:  traveling the world to market BLMIS and the Feeder Funds; avoiding customer

inquiries and providing false answers that all knew would discourage investors from asking

additional questions; removing references to BLMIS from their marketing materials; and

providing the SEC with answers Madoff gave them, knowing that those answers were not true,

but would serve to protect Madoff from further regulatory scrutiny.  (*See supra* ¶¶333-489.)

798.    The intentional and overt actions by Noel, Tucker, Piedrahita, McKeefry, Lipton,

Vijayvergiya, McKenzie, Landsberger, Toub, Blum, and Smith to substantially assist Madoff in

breaching his fiduciary duties to customers exacerbated BLMIS's monumental insolvency.  The

intentional and overt actions of Noel, Tucker, Piedrahita, McKeefry, Lipton, Vijayvergiya,

McKenzie, Landsberger, Toub, Blum, and Smith to substantially assist Madoff in breaching his

fiduciary duties to customers was a proximate cause of loss of billions of dollars of Customer

Property.

**WHEREFORE**, the Trustee respectfully requests that this Court enter judgment in favor

of the Trustee and against the Defendants as follows:

i.      On the First Claim for Relief, pursuant to section 542 of the Bankruptcy Code and

SIPA § 78fff-2(c)(3), the Trustee is also entitled to an accounting of any and all Initial Transfers

and Subsequent Transfers made, directly or indirectly, to the Defendants;

ii.     On the Second Claim for Relief, pursuant to sections 547(b), 550(a)(1), and 551

of the Bankruptcy Code, SIPA § 78fff-2(c)(3), and sections 15-306(a) and 17-403(b) of the

Delaware Code, the Trustee is entitled to a judgment:  (a) avoiding and preserving the Preference

Period Initial Transfers, (b) directing that the Preference Period Initial Transfers be set aside, and

(c) recovering the Preference Period Initial Transfers, or the value thereof, from the Feeder

Funds for the benefit of the estate of BLMIS;

MADC1345_00000653

iii.        On the Third Claim for Relief, pursuant to sections 547(b), 550(a)(1), and 551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), and sections 15-306(a) and 17-403(b) of the Delaware Code, the Trustee is entitled to a judgment:  (a) avoiding and preserving the Greenwich Preference Period Initial Transfers, (b) directing that the Greenwich Preference Period Initial Transfers be set aside, and (c) recovering the Greenwich Preference Period Initial Transfers, or the value thereof, from FGB for the benefit of the estate of BLMIS;

iv.        On the Fourth Claim for Relief, pursuant to sections 547(b), 550(a)(2), and 551 of the Bankruptcy Code and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment:  (a) avoiding and preserving the Preference Period Initial Transfers, (b) directing that the Preference Period Initial Transfers be set aside and (c) recovering the Preference Period Subsequent Transfers, or the value thereof, from the FGG Affiliates and FGG Individuals for the benefit of the estate of BLMIS;

v.        On the Fifth Claim for Relief, pursuant to sections 548(a)(1)(A), 550(a)(1), and 551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), and sections 15-306(a) and 17-403(b) of the Delaware Code, the Trustee is entitled to a judgment:  (a) avoiding and preserving the Two Year Initial Transfers, (b) directing that the Two Year Initial Transfers be set aside, and (c) recovering the Two Year Initial Transfers, or the value thereof, from the Feeder Funds for the benefit of the estate of BLMIS;

vi.        On the Sixth Claim for Relief, pursuant to sections 548(a)(1)(A), 550(a)(1), and 551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), and sections 15-306(a) and 17-403(b) of the Delaware Code, the Trustee is entitled to a judgment:  (a) avoiding and preserving the Greenwich Two Year Initial Transfers, (b) directing that the Greenwich Two Year Initial Transfers be set

210

aside, and (c) recovering the Greenwich Two Year Initial Transfers, or the value thereof, from

FGB for the benefit of the estate of BLMIS;

    vii.      On the Seventh Claim for Relief, pursuant to sections 548(a)(1)(A), 550(a)(2),

and 551 of the Bankruptcy Code and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment:

(a) avoiding and preserving the Two Year Initial Transfers, (b) directing that the Two Year

Initial Transfers be set aside, and (c) recovering the Two Year Subsequent Transfers, or the value

thereof, from the FGG Affiliates and FGG Individuals for the benefit of the estate of BLMIS;

    viii.      On the Eighth Claim for Relief, pursuant to sections 548(a)(1)(B), 550(a)(1), and

551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), and sections 15-306(a) and 17-403(b) of the

Delaware Code, the Trustee is entitled to a judgment:  (a) avoiding and preserving the Two Year

Initial Transfers, (b) directing that the Two Year Initial Transfers be set aside, and (c) recovering

the Two Year Initial Transfers, or the value thereof, from the Feeder Funds for the benefit of the

estate of BLMIS;

    ix.      On the Ninth Claim for Relief, pursuant to sections 548(a)(1)(B), 550(a)(1), and

551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), and sections 15-306(a) and 17-403(b) of the

Delaware Code, the Trustee is entitled to a judgment:  (a) avoiding and preserving the Greenwich

Two Year Initial Transfers, (b) directing that the Greenwich Two Year Initial Transfers be set

aside, and (c) recovering the Greenwich Two Year Initial Transfers, or the value thereof, from

FGB for the benefit of the estate of BLMIS;

    x.      On the Tenth Claim for Relief, pursuant to sections 548(a)(1)(B), 550(a)(2), and

551 of the Bankruptcy Code and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment:  (a)

avoiding and preserving the Two Year Initial Transfers, (b) directing that the Two Year Initial

211

MADC1345_00000655

Transfers be set aside, and (c) recovering the Two Year Subsequent Transfers, or the value thereof, from the FGG Affiliates and FGG Individuals for the benefit of the estate of BLMIS;

xi.        On the Eleventh Claim for Relief, pursuant to sections 276, 276-a, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a)(1), and 551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), and sections 15-306(a) and 17-403(b) of the Delaware Code, the Trustee is entitled to a judgment:  (a) avoiding and preserving the Six Year Initial Transfers, (b) directing that the Six Year Initial Transfers be set aside, (c) recovering the Six Year Initial Transfers, or the value thereof, from the Feeder Funds for the benefit of the estate of BLMIS, and (d) recovering attorneys' fees from the Feeder Funds;

xii.       On the Twelfth Claim for Relief, pursuant to sections 276, 276-a, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a)(1), and 551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), and sections 15-306(a) and 17-403(b) of the Delaware Code, the Trustee is entitled to a judgment:  (a) avoiding and preserving the Greenwich Six Year Initial Transfers, (b) directing that the Greenwich Six Year Initial Transfers be set aside, (c) recovering the Greenwich Six Year Initial Transfers, or the value thereof, from FGB, FGL, and GBL for the benefit of the estate of BLMIS, and (d) recovering attorneys' fees from FGB, FGL, and GBL;

xiii.      On the Thirteenth Claim for Relief, pursuant to sections 276, 276-a, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a)(2), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment:  (a) avoiding and preserving the Six Year Initial Transfers, (b) directing that the Six Year Initial Transfers be set aside, (c) recovering the Six Year Subsequent Transfers, or the value thereof, from the FGG

212

Affiliates and FGG Individuals for the benefit of the estate of BLMIS, and (d) recovering

attorneys' fees from the FGG Affiliates and FGG Individuals;

    xiv.        On the Fourteenth Claim for Relief, pursuant to sections 273, 278, and 279 of the

New York Debtor and Creditor Law, sections 544(b), 550(a)(1), 551 of the Bankruptcy Code,

SIPA § 78fff-2(c)(3), and sections 15-306(a) and 17-403(b) of the Delaware Code, the Trustee is

entitled to a judgment:  (a) avoiding and preserving the Six Year Initial Transfers, (b) directing

that the Six Year Initial Transfers be set aside, and (c) recovering the Six Year Initial Transfers,

or the value thereof, from the Feeder Funds for the benefit of the estate of BLMIS;

    xv.        On the Fifteenth Claim for Relief, pursuant to sections 273, 278, and 279 of the

New York Debtor and Creditor Law, sections 544(b), 550(a)(1), 551 of the Bankruptcy Code,

SIPA § 78fff-2(c)(3), and sections 15-306(a) and 17-403(b) of the Delaware Code, the Trustee is

entitled to a judgment:  (a) avoiding and preserving the Greenwich Six Year Initial Transfers, (b)

directing that the Greenwich Six Year Initial Transfers be set aside, and (c) recovering the

Greenwich Six Year Initial Transfers, or the value thereof, from FGB, FGL, and GBL for the

benefit of the estate of BLMIS;

    xvi.        On the Sixteenth Claim for Relief, pursuant to sections 273, 278, and 279 of the

New York Debtor and Creditor Law, sections 544(b), 550(a)(2), 551 of the Bankruptcy Code,

and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment:  (a) avoiding and preserving the

Six Year Initial Transfers, (b) directing that the Six Year Initial Transfers be set aside, and (c)

recovering the Six Year Subsequent Transfers, or the value thereof, from the FGG Affiliates and

FGG Individuals for the benefit of the estate of BLMIS;

    xvii.        On the Seventeenth Claim for Relief, pursuant to sections 274, 278, and/or 279 of

the New York Debtor and Creditor Law, sections 544(b) and 550(a)(1) of the Bankruptcy Code,

213

SIPA § 78fff-2(c)(3), and sections 15-306(a) and 17-403(b) of the Delaware Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the Six Year Initial Transfers, (b) directing that the Six Year Initial Transfers be set aside, and (c) recovering the Six Year Initial Transfers, or the value thereof, from the Feeder Funds for the benefit of the estate of BLMIS;

xviii.    On the Eighteenth Claim for Relief, pursuant to sections 274, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b) and 550(a)(1) of the Bankruptcy Code, SIPA § 78fff-2(c)(3), and sections 15-306(a) and 17-403(b) of the Delaware Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the Greenwich Six Year Initial Transfers, (b) directing that the Greenwich Six Year Initial Transfers be set aside, and (c) recovering the Greenwich Six Year Initial Transfers, or the value thereof, from FGB, FGL, and GBL for the benefit of the estate of BLMIS;

xix.    On the Nineteenth Claim for Relief, pursuant to sections 274, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b) and 550(a)(2) of the Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment: (a) avoiding and preserving the Six Year Initial Transfers, (b) directing that the Six Year Initial Transfers be set aside, and (c) recovering the Six Year Subsequent Transfers, or the value thereof, from the FGG Affiliates and FGG Individuals for the benefit of the estate of BLMIS;

xx.    On the Twentieth Claim for Relief, pursuant to sections 275, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a)(1), and 551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), and sections 15-306(a) and 17-403(b) of the Delaware Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the Six Year Initial Transfers, (b) directing that the Six Year Initial Transfers be set aside, and (c) recovering the Six Year Initial Transfers, or the value thereof, from the Feeder Funds for the benefit of the estate of BLMIS;

214

MADC1345_00000658

xxi.      On the Twenty-First Claim for Relief, pursuant to sections 275, 278, and/or 279
of the New York Debtor and Creditor Law, sections 544(b), 550(a)(1), and 551 of the
Bankruptcy Code, SIPA § 78fff-2(c)(3), and sections 15-306(a) and 17-403(b) of the Delaware
Code, the Trustee is entitled to a judgment:  (a) avoiding and preserving the Greenwich Six Year
Initial Transfers, (b) directing that the Greenwich Six Year Initial Transfers be set aside, and (c)
recovering the Greenwich Six Year Initial Transfers, or the value thereof, from FGB, FGL and
GBL for the benefit of the estate of BLMIS;

xxii.      On the Twenty-Second Claim for Relief, pursuant to sections 275, 278, and/or
279 of the New York Debtor and Creditor Law, sections 544(b), 550(a)(2), and 551 of the
Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment:  (a) avoiding
and preserving the Six Year Initial Transfers, (b) directing that the Six Year Initial Transfers be
set aside, and (c) recovering the Six Year Subsequent Transfers, or the value thereof, from the
FGG Affiliates and FGG Individuals for the benefit of the estate of BLMIS;

xxiii.      On the Twenty-Third Claim for Relief, pursuant to NY CPLR 203(g), sections
276, 276-a, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b),
550(a)(1), and 551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), and sections 15-306(a) and 17-
403(b) of the Delaware Code, the Trustee is entitled to a judgment:  (a) avoiding and preserving
the Initial Transfers, (b) directing that the Initial Transfers be set aside, (c) recovering the Initial
Transfers, or the value thereof, from the Feeder Funds for the benefit of the estate of BLMIS, and
(d) recovering attorneys' fees from the Feeder Funds;

xxiv.      On the Twenty-Fourth Claim for Relief, pursuant to NY CPLR 203(g), sections
276, 276-a, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b),
550(a)(1), and 551 of the Bankruptcy Code, SIPA § 78fff-2(c)(3), and sections 15-306(a) and 17-

MADC1345_00000659

403(b) of the Delaware Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the Greenwich Initial Transfers, (b) directing that the Greenwich Initial Transfers be set aside, (c) recovering the Greenwich Initial Transfers, or the value thereof, from FGB, FGL, GBL, Noel, and Tucker for the benefit of the estate of BLMIS, and (d) recovering attorneys' fees from FGB, FGL, GBL, Noel, and Tucker;

 xxv.  On the Twenty-Fifth Claim for Relief, pursuant to NY CPLR 203(g), sections 276, 276-a, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a)(2), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment: (a) avoiding and preserving the Initial Transfers, (b) directing that the Initial Transfers be set aside, (c) recovering the Subsequent Transfers, or the value thereof, from the FGG Affiliates and FGG Individuals for the benefit of the estate of BLMIS, and (d) recovering attorneys' fees from the FGG Affiliates and FGG Individuals;

 xxvi.  On the Twenty-Sixth Claim for Relief, a judgment that the SIPA claims filed by Fairfield Sentry, GS, GSP, Sigma, Lambda, FGB, Noel, and Tucker be disallowed;

 xxvii.  On all Claims for Relief, a judgment pursuant to common law and NY CPLR 5001 and 5004, awarding the Trustee prejudgment interest from the date on which the Subsequent Transfers were received by the Defendants;

 xxviii.  On all Claims for Relief, establishment of a constructive trust over the proceeds of the Initial Transfers, Subsequent Transfers and unjust enrichment to the Defendants in favor of the Trustee for the benefit of BLMIS's estate;

 xxix.  On all Claims for Relief, assignment of the Defendants' right to seek refunds from the government for federal, state, and local taxes paid on Fictitious Profits during the course of the scheme;

216

xxx.        On the Twenty-Seventh, Twenty-Eighth, Twenty-Ninth, Thirtieth, and Thirty-First Claims for Relief, compensatory, exemplary, and punitive damages in excess of $3.6 billion, with the specific amount to be determined at trial;

xxxi.       Awarding the Trustee all applicable interest, costs, and disbursements of this action; and

xxxii.      Granting Plaintiff such other, further, and different relief as the Court deems just, proper, and equitable.

Date:   New York, New York
        July 20, 2010

                                    s/Marc E. Hirschfield
                                   Baker & Hostetler LLP
                                   45 Rockefeller Plaza
                                   New York, New York 10111
Of Counsel:                        Telephone: (212) 589-4200
                                   Facsimile: (212) 589-4201
Thomas L. Long                     David J. Sheehan
Jessie M. Gabriel                  E-mail: dsheehan@bakerlaw.com
Baker & Hostetler LLP              Marc E. Hirschfield
65 East State Street, Suite 2100   E-mail: mhirschfield@bakerlaw.com
Columbus, Ohio 43215               Mark A. Kornfeld
Telephone: (614) 228-1541          E-mail: mkornfeld@bakerlaw.com
Facsimile: (614) 462-2616
Thomas L. Long                     *Attorneys for Irving H. Picard, Esq., Trustee*
E-mail: tlong@bakerlaw.com         *for the Substantively Consolidated SIPA*
Jessie M. Gabriel                  *Liquidation of Bernard L. Madoff Investment*
E-mail: jgabriel@bakerlaw.com      *Securities LLC and Bernard L. Madoff*

MADC1345_00000661

## AGREEMENT

This Agreement, dated as of May 9, 2011 ("Agreement"), is made by and among Irving H. Picard, in his capacity as Trustee for the liquidation under the Securities Investor Protection Act of 1970, as amended ("SIPA"), of Bernard L. Madoff Investment Securities LLC (the "Trustee"), on the one hand, and Kenneth Krys and Joanna Lau (together with their predecessors, the "Liquidators" or the "Joint Liquidators"), solely in their respective capacities as the Foreign Representatives for and Joint Liquidators of Fairfield Sentry Limited, a British Virgin Islands corporation ("Fairfield Sentry"), Fairfield Sigma Limited, a British Virgin Islands corporation ("Fairfield Sigma"), and Fairfield Lambda Limited, a British Virgin Islands corporation ("Fairfield Lambda" and, together with Fairfield Sentry and Fairfield Sigma, the "Fairfield Funds"), on the other hand (each of the Trustee, the Liquidators, Fairfield Sentry, Fairfield Sigma and Fairfield Lambda, a "Party" and, collectively, the "Parties").

## BACKGROUND

A.     Bernard L. Madoff Investment Securities LLC ("BLMIS") was a registered broker-dealer and a member of the Securities Investor Protection Company ("SIPC").

B.     On December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission (the "SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Bernard L. Madoff ("Madoff"). On December 12, 2008, the District Court entered an order which among other things appointed a receiver for the assets of BLMIS (No. 08-CV-10791(LSS)).

C.     On December 15, 2008, pursuant to section 5(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with the application of SIPC. Thereafter, SIPC filed an application in the District Court under section 5(a)(3) of SIPA alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA. On December 15, 2008, the District Court granted the SIPC application and entered an order under SIPA, which, in pertinent part, appointed the Trustee for the liquidation of the business of BLMIS under section 5(b)(3) of SIPA and removed the case to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under section 5(b)(4) of SIPA, where it is currently pending as Case No. 08-01789 (BRL) (the "SIPA Proceeding"). The Trustee is duly qualified to serve and act on behalf of the estate of BLMIS (the "BLMIS Estate").

D.     Fairfield Sentry is a British Virgin Islands ("BVI") company that at all relevant times, was a customer of BLMIS.

E.     Fairfield Sigma and Fairfield Lambda are BVI companies that at all relevant times, had as their respective sole purposes to invest funds in Fairfield Sentry.

F.     Pursuant to an Order entered on April 23, 2009, the Eastern Caribbean Supreme Court in the High Court of Justice of the Virgin Islands (the "BVI Court") appointed Christopher Stride to be the Liquidator for Fairfield Lambda, which appointment commenced the winding up of Fairfield Lambda pursuant to the British Virgin Islands Insolvency Act 2003 (the "Lambda Proceeding").

G.    Pursuant to an Order entered on July 21, 2009, the BVI Court (i) permitted the commencement of the winding up of Fairfield Sentry in accordance with the British Virgin Islands Insolvency Act 2003 (the "Sentry Proceeding"), and (ii) appointed Kenneth Krys and Christopher Stride as the Joint Liquidators for Fairfield Sentry.

H.    Pursuant to an Order entered on July 21, 2009, the BVI Court (i) permitted the commencement of the winding up of Fairfield Sigma in accordance with the British Virgin Islands Insolvency Act 2003 (the "Sigma Proceeding" and, together with the Lambda Proceeding and the Sentry Proceeding, the "BVI Proceedings"), and (ii) appointed Kenneth Krys and Christopher Stride to be the Joint Liquidators for Fairfield Sigma.

I.    On July 22, 2010, in proceedings commenced by the Liquidators pursuant to Chapter 15 of the Bankruptcy Code (the "Chapter 15 Proceedings"), the Bankruptcy Court entered an order recognizing the BVI Proceedings as foreign main proceedings and granting related relief to the Liquidators.

J.    On or about September 6, 2010, the BVI Court issued notices acknowledging Christopher Stride's resignation and Joanna Lau's appointment as Joint Liquidator with Kenneth Krys of each of the Fairfield Funds.

K.    Fairfield Sentry was a customer of BLMIS and maintained customer accounts, Accounts 1FN012, 1FN045, 1FN069, 1FN070 with BLMIS (the "Fairfield Sentry Accounts") commencing in or about 1990. The Fairfield Sentry Accounts are listed as Exhibit A to this Agreement. According to the Trustee, between then and the Filing Date, on an overall basis Fairfield Sentry deposited into the Fairfield Sentry Accounts a total of one billion, one hundred ninety-two million, five hundred thirty-six thousand, three hundred forty-two dollars ($1,192,536,342) in excess of the amount of withdrawals that Fairfield Sentry made from the accounts (the "Sentry Net Loss"). According to the Trustee, Fairfield Sentry withdrew one billion one hundred thirty million dollars ($1,130,000,000) from the Fairfield Sentry Accounts within ninety days before the Filing Date ("90 Day Withdrawals") and an additional one billion nine hundred twenty four million dollars ($1,924,000,000) from the Fairfield Sentry Accounts, during the period more than 90 days, but less than six years, before the Filing Date (the "Pre 90-Day Withdrawals" and, together with the 90 Day Withdrawals, the "Withdrawals").

L.    Prior to the appointment of the Liquidators, Fairfield Sentry filed three customer claims in the SIPA Proceeding (assigned claim numbers 008037, 007898 and 11251, later amended by claim numbers 011234 and 11429) (such claims, collectively, the "Sentry SIPA Claim") alleging aggregate losses from the Fairfield Sentry Accounts of six billion, two hundred eighty-four million, three hundred twenty-one thousand, five hundred eighty-one dollars ($6,284,321,581) (the "Last Statement Amount"). The Sentry SIPA Claim, including the relevant BLMIS Account Numbers 1FN012, 1FN045, 1FN069, 1FN070, is included as Exhibit B to this Agreement. The Sentry SIPA Claim, as filed, asserts that Fairfield Sentry is entitled to allowance of a customer claim in the SIPA proceeding in an amount reflected on Fairfield Sentry's BLMIS account statements for the period ending November 30, 2008, i.e., the Last Statement Amount.

MADC1345_00000663

M.   The Trustee has disputed that Fairfield Sentry is entitled to allowance of a customer claim in the amount of the Last Statement Amount. On March 1, 2010, the Honorable Burton R. Lifland, of the Bankruptcy Court, issued an opinion applying the Trustee's "net equity" calculation of customer claims as the difference between investment into BLMIS and amounts withdrawn (the "Net Equity Method"). On March 8, 2010 Judge Lifland entered an order implementing the decision and certifying it for immediate appeal for the United States Court of Appeals for the Second Circuit. According to the Trustee, the amount of the Sentry SIPA Claim based on the Net Equity Method is the Sentry Net Loss, i.e., One Billion, One Hundred Ninety-Two Million, Five Hundred Thirty-Six Thousand, Three Hundred Forty-Two Dollars ($1,192,536,342) (the "Sentry SIPA Net Equity Claim").

N.   Prior to the appointment of the Liquidators, Fairfield Sigma filed four customer claims in the SIPA Proceeding (assigned claim numbers 011250, 011744, 011240 and 011249) claiming aggregate losses of seven hundred seventy-three million, six hundred thirty-five thousand, one hundred eighty-eight dollars ($773,635,188) (such claims, collectively, the "Sigma SIPA Claim"). On or about December 8, 2009, the Trustee issued a notice of denial of the Sigma SIPA Claim on the asserted basis that Sigma is not a customer of BLMIS within the meaning of 15 U.S.C. § 78*lll*(2) (the "Sigma Denial Notice"). On or about January 7, 2010, the Liquidators filed a timely objection to the Sigma Denial Notice in the SIPA Proceeding, and that objection remains pending.   The Sigma SIPA Claim, the Sigma Denial Notice and the Liquidators' objection to the Sigma Denial Notice are included as Exhibit C to this Agreement.

O.   Prior to the appointment of the Liquidators, Fairfield Lambda filed four customer claims in the SIPA Proceeding (assigned claim numbers 014661, 014761, 014762 and 014795) claiming aggregate losses of thirty-six million, six hundred seventy-six thousand, two hundred and five dollars ($36,676,205) (such claims, collectively, the "Lambda SIPA Claim" and, together with the Sentry SIPA Claim and the Sigma SIPA Claim, the "Fairfield SIPA Claims"). On or about December 8, 2009, the Trustee issued a notice of denial of the Lambda SIPA Claim on the asserted basis that Lambda is not a customer of BLMIS within the meaning of 15 U.S.C. § 78*lll*(2) (the "Lambda Denial Notice"). On or about January 7, 2010, the Liquidators filed a timely objection to the Lambda Denial Notice in the SIPA Proceeding, and that objection remains pending. The Lambda SIPA Claim, the Lambda Denial Notice and the Liquidators' objection to the Lambda Denial Notice are included as Exhibit D to this Agreement.

P.   The Trustee has brought an adversary proceeding against Fairfield Sentry, Fairfield Sigma, Fairfield Lambda and other defendants in the Bankruptcy Court under the caption *Picard v. Fairfield Sentry Ltd. et al.*, Adv. Pro. No. 09-01239 (BRL) (the "Adversary Proceeding"). In the Adversary Proceeding, the Trustee asserts that the Fairfield Funds are liable to the BLMIS Estate under 11 U.S.C. §§ 544, 547, 548, 550, SIPA § 78fff-(2)(c)(3) and the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law §§ 270-281) for the Withdrawals made by Fairfield Sentry from BLMIS, and Fairfield Sentry's subsequent transfer of approximately Seven Hundred Fifty-Two Million, Three Hundred Thousand Dollars ($752,300,000) and Fifty-Two Million, Nine Hundred Thousand Dollars ($52,900,000) of the Withdrawals to Fairfield Sigma and Fairfield Lambda, respectively; specifically, the Trustee seeks, inter alia, recovery from the Fairfield Funds of an amount totaling Three Billion, Fifty-Four Million Dollars ($3,054,000,000). The Trustee has also asserted claims for turnover and accounting of the Withdrawals, and for disallowance of the Fairfield SIPA Claims.

3

Q.    All claims of the Trustee against the Fairfield Funds under 11 U.S.C. §§ 544, 547, 548 or 550, applicable provisions of SIPA, including § 78fff-(2)(c)(3), and the New York Debtor and Creditor Law §§ 270-281 shall be referred to herein as the "Avoiding Power Claims."

R.    The Liquidators, on behalf of each of the Fairfield Funds, have disputed any liability to the BLMIS Estate in connection with the Adversary Proceeding and the Avoiding Power Claims alleged therein.

S.    The Trustee, on the one hand, and the Liquidators, for each of the estates that they represent, on the other hand, desire to settle their disputes about the matters described above without the expense, delay and uncertainty of litigation.

## AGREEMENT

1.    Judgments Regarding the Trustee's Avoiding Power Claims. The Trustee and the Liquidators agree they shall jointly request the Bankruptcy Court to (i) enter a judgment against Fairfield Sentry in the amount of Three Billion, Fifty Four Million Dollars ($3,054,000,000), representing the settled amount of the Trustee's Avoiding Power Claims against Fairfield Sentry (the "Sentry Judgment"), (ii) enter a judgment against Fairfield Sigma in the amount of Seven Hundred Fifty Two Million, Three Hundred Thousand Dollars ($752,300,000), representing the settled amount of the Trustee's Avoiding Power Claims against Fairfield Sigma (the "Sigma Judgment") and (iii) enter a judgment against Fairfield Lambda in the amount of Fifty Two Million, Nine Hundred Thousand Dollars ($52,900,000), representing the settled amount of the Trustee's Avoiding Power Claims against Fairfield Lambda (the "Lambda Judgment" and, together with the Sentry Judgment and the Sigma Judgment, the "Judgments"), each Judgment in the form attached hereto as Exhibit E. By virtue of the mutual covenants and agreements contained in, and the consideration provided by, this Agreement, including (i) the cash payment to be made by the Liquidators to the Trustee as set forth below at Paragraph 2, infra, and (ii) the mutually agreed to reduction of the Sentry SIPA Net Equity Claim from One Billion, One Hundred Ninety-Two Million, Five Hundred Thirty-Six Thousand, Three Hundred Forty-Two Dollars ($1,192,536,432) to an allowed SIPA claim of Two Hundred Thirty Million Dollars ($230,000,000) as set forth below at Paragraph 13, infra, the Trustee agrees to forbear exercising any right to collect One Billion, One Hundred Thirty Million Dollars ($1,130,000,000) on the Sentry Judgment from Liquidators, the Fairfield Funds or their estates, leaving a non-forbearance amount of One Billion, Nine Hundred Twenty Four Million ($1,924,000,000) (the "Non-Forbearance Amount"). The Trustee shall have (i) an admitted claim in Fairfield Sentry's estate that is provable in the Sentry Proceeding for the full amount of the Sentry Judgment (the "Sentry Admitted Claim"), (ii) an admitted claim in Fairfield Sigma's estate that is provable in the Sigma Proceeding for the full amount of the Sigma Judgment (the "Sigma Admitted Claim"), and (iii) an admitted claim in Fairfield Lambda's estate that is provable in the Lambda Proceeding for the full amount of the Lambda Judgment (the "Lambda Admitted Claim" and, together with the Sentry Admitted Claim and the Sigma Admitted Claim, the "Admitted Claims"). Notwithstanding the foregoing, the Trustee's rights to enforce, collect on and/or satisfy the Judgments or any claims against the Liquidators and/or as against any of the Fairfield Funds, including, without limitation, the Admitted Claims, shall be limited solely to the

4

rights, remedies and considerations expressly provided in, under and by this Agreement (and such rights, remedies and considerations shall be the dividends paid to the Trustee on account of the Admitted Claims). For the avoidance of doubt, the Trustee shall not be entitled to, nor shall he seek, any distributions on account of the Admitted Claims in the BVI Proceedings or in any other proceedings. Interest shall not accrue on the Judgments. The Judgments shall be filed and entered by the Trustee on or after the Effective Date, defined below at Paragraph 18. The Judgments and the Admitted Claims shall not be assignable.

2.     Payment of Cash. The Liquidators shall pay to the Trustee a total of Seventy Million Dollars ($70,000,000) (the "Settlement Payment") of Fairfield Sentry's cash as outlined in this Paragraph 2. On the Closing, as defined below at Paragraph 20, the Liquidators shall pay to the Trustee the sum of Twenty Four Million Dollars ($24,000,000). The Liquidators shall pay to the Trustee the balance of the Settlement Payment totaling Forty Six Million Dollars ($46,000,000) three (3) Business Days (as identified below) following the first to occur of (a) the first date when Fairfield Sentry's account at Citco Bank Nederland N.V.-Dublin branch (the "Citco Account") is no longer subject to an order of attachment; (b) the sale by the Liquidators of any Allowed Claim as defined in Paragraph 13; or (c) the aggregate receipt by the Liquidators of funds belonging to Fairfield Sentry equal to Forty Six Million Dollars ($46,000,000) from any source, other than from a Sharing Claim (as defined below), after the Closing (as defined below). Notwithstanding the foregoing, the Liquidators, in their sole discretion, may elect to pay the entire Settlement Payment to the Trustee prior to the occurrences outlined above. For the avoidance of doubt, none of Fairfield Sigma's cash shall be used to pay the Settlement Amount. For purposes of this Agreement, the term "Business Day" shall mean any day other than Saturday, Sunday, or a day that is a legal holiday in either New York City or the British Virgin Islands.

3.     Termination of Escrow Agreements. The escrow agreements between the Trustee and the Liquidators dated as of September 24, 2009 and June 8, 2010, respectively (the "Escrow Agreements") (attached hereto as Exhibit F to this Agreement), shall terminate and be of no further force or effect upon receipt by the Trustee of the full amount of the Settlement Payment. Upon the termination of the Escrow Agreements, the Trustee shall have no interest in, rights to or control over any cash or cash equivalents or other property of the Liquidators or any of the Fairfield Funds, including, without limitation, the Fairfield Funds' non-BLMIS investments and the proceeds thereof, except as otherwise provided herein. Upon the receipt by the Trustee of the full amount of the Settlement Payment, the Parties shall jointly instruct the respective escrow agents under the Escrow Agreements to release all property that is subject thereto to the Liquidators. The Trustee hereby consents to (i) the transfer of all unattached funds of the Fairfield Funds in the Citco Account to Fairfield Sentry's accounts, and/or, as applicable, to Fairfield Sigma's or Fairfield Lambda's accounts, in the BVI at Scotiabank British Virgin Islands and/or VP Bank and Trust Company (BVI) (such accounts, collectively, the "Fairfield BVI Accounts"), (ii) the transfer of all funds of the Fairfield Funds in their Clydesdale Bank account in Great Britain, established pursuant to September 24, 2009 Escrow Agreement between the Parties to the applicable Fairfield BVI Accounts of the Fairfield Funds and (iii) the transfer of all proceeds of the Fairfield Funds' non-BLMIS investments to the applicable Fairfield BVI Accounts.

MADC1345_00000666

4.     Redeemer Action Recoveries.  So long as the Non-Forbearance Amount of the Sentry Judgment, the Sigma Judgment and the Lambda Judgment have not been satisfied in full, the Liquidators shall pay to the Trustee fifteen percent (15%) of the Liquidators' Net Recoveries from all claims and causes of actions, asserted by the Liquidators (either on their behalf or on behalf of any of the Fairfield Funds) in any jurisdiction (including, without limitation, the State of New York and the British Virgin Islands) and based on any law (including, without limitation, the statutory and common law of the British Virgin Islands), seeking to recover payments made by or behalf any of the Fairfield Funds in connection with the redemption of shares in the Fairfield Funds ("Redeemer Actions"), and the Liquidators shall retain eighty-five percent (85%) of such Net Recoveries.  The Redeemer Actions include, but are not limited to, those pending actions identified on Exhibit G attached hereto.  The Liquidators shall provide reasonable notice to, and reasonably confer in good faith with, the Trustee prior to commencing any Redeemer Action not identified on Exhibit G.  The Liquidators shall retain one-hundred percent (100%) of the Net Recoveries from Redeemer Actions that the Liquidators receive once the Non-Forbearance Amount of the Sentry Judgment, the Sigma Judgment and the Lambda Judgment are satisfied in full.  Except as otherwise provided herein, the Liquidators shall prosecute the Redeemer Actions at their sole expense, and the Trustee shall not, and shall have no right to, (i) intervene in or otherwise interfere with the Liquidators' prosecution of any Redeemer Actions, other than the Trustee's pursuit of the Subsequent Transferee Claims pursuant to Paragraphs 7, 8 and 9 below, or (ii) file, assert, pursue or prosecute any claims or causes of action against any shareholder of any of the Fairfield Funds, or any beneficiary thereof, seeking to recover payments made by or on behalf of any of the Fairfield Funds in connection with the redemption of shares in the Fairfield Funds, other than the Subsequent Transferee Claims pursuant to Paragraphs 7, 8 and 9 below.  For purposes of this Agreement, the term "Net Recoveries" shall mean the consideration of cash or a cash equivalent that is paid to the Liquidators pursuant to a settlement, judgment or other resolution of a claim or cause of action, and less the amount of the Liquidators' reasonable costs and/or expenses (including professional fees and expenses) incurred in connection with such claim or cause of action other than and expressly excluding any contingency or success fees of the Liquidators' attorneys (the "Liquidator Expenses").  The Liquidator Expenses (other than attorneys' contingency fees) shall be reasonably allocated to a particular claim or cause of action.  The Trustee shall have no right to object to or challenge the Liquidators' payment of any Liquidator Expenses reasonably incurred and properly allocated.  Further, for the avoidance of doubt, the Liquidators shall not be required to pay any amounts to the Trustee, or provide any credit to the Trustee, on account of the waiver, disallowance or reduction in amount of any claims against the Fairfield Funds, and any such waiver, disallowance or reduction in amount will not be credited against the Judgments.

5.     Management Claim Recoveries.  The Trustee, solely at the Trustee's expense, shall prosecute all claims and causes of action he has asserted in the Adversary Proceeding against the Fairfield Funds' former investment managers, investment advisors, managing entities, directors, partners, and officers, including but not limited to Fairfield Greenwich Group, Fairfield Greenwich (Bermuda) Limited, Fairfield Greenwich Advisors, LLC, Fairfield Risk Services Limited, Fairfield Greenwich Limited, Fairfield International Managers, Inc., Walter M. Noel, Jr., Jeffrey Tucker, and all other individual persons named as defendants in the Adversary Proceeding (the "Adversary Proceeding Claims").  At the Closing, the Liquidators shall unconditionally and irrevocably assign to the Trustee any and all claims asserted by, or on behalf of, the Fairfield Funds against Fairfield Greenwich Group, Fairfield Greenwich

6

MADC1345_00000667

(Bermuda) Limited, Fairfield Greenwich Advisors, LLC, Fairfield Greenwich Limited, Fairfield Investment Mangers, Inc., Walter M. Noel, Jr., Jeffrey Tucker, Andres Piedrahita, Amit Vijayvergiya, Brain Francouer, Lourdes Barrenche, Cornelius Boele, Philip Toub, Richard Landsberger, Charles Murphy, Andrew Smith, Daniel Lipton, Mark McKeffrey, Harold Greisman, Santiago Reyes, Jacqueline Harrary, Robert Blum, Corina Noel-Piedrahita and Maria Teresa Pulido Mendoza in the action entitled *Fairfield Sentry Limited v. Fairfield Greenwich Group, et al.*, currently pending in the Bankruptcy Court, Adv. Pro. No. 10-03800 (BRL) (the "Liquidators' New York Action"), including but not limited to the Fairfield Funds' claims for Breach of Fiduciary Duty, Breach of Contract, Unjust Enrichment, Constructive Trust, Rescission of Investment Manager Contract based on Mutual Mistake, and Accounting (the "Assigned Claims" and, together with the Adversary Proceeding Claims, the "Management Claims"). For avoidance of doubt, the Management Claims shall not include claims or causes of action, if any, against the Liquidators or their agents, attorneys, employees, representatives or professionals.

In prosecuting the Assigned Claims, the Trustee shall assert only those substantive law claims and allegations set forth and contained in the Liquidators' New York Action and shall not assert any other substantive law claims or allegations as part of the Assigned Claims without the Liquidators' reasonable, written approval. Prior to the assignment of the Management Claims to the Trustee, the Liquidators, in their discretion, may amend their pleadings in the Liquidators' New York Action and shall confer in good faith with the Trustee with respect to the amendment in advance thereof. The Trustee shall retain one-hundred percent (100%) of the consideration received by the Trustee from the prosecution of the Management Claims until the Trustee recovers a gross amount of Two Hundred Million Dollars ($200,000,000) in the aggregate from such claims. The Trustee shall pay to the Liquidators fifteen percent (15%) of the gross consideration received by the Trustee from prosecution of the Management Claims in excess of Two Hundred Million Dollars ($200,000,000) in the aggregate, and the Trustee shall retain the remaining eighty five percent (85%) of the gross consideration received by the Trustee from the Management Claims in excess of Two Hundred Million Dollars ($200,000,000) in the aggregate. Except as otherwise provided in this Paragraph 5, the Liquidators shall not, and shall have no right to, intervene in or otherwise interfere with the Trustee's prosecution of the Management Claims, and the Trustee shall prosecute the Management Claims at his sole expense. The Trustee shall seek, in good faith, as part of any full or partial settlement of the Management Claims, a release of all claims by any settling party against the Fairfield Funds and the Liquidators.

6. Service Provider Claim Recoveries. So long as the Non-Forbearance Amount of the Sentry Judgment, the Sigma Judgment and the Lambda Judgment have not been satisfied in full, (i) the Liquidators shall retain one-hundred percent (100%) of the Net Recoveries from all claims and causes of action against the Fairfield Funds' custodians, administrators, accountants and auditors, including but not limited to PricewaterhouseCoopers LLP (Canada), PricewaterhouseCoopers Accountants N.V., Citco Fund Services (Europe) BV, Citco Bank Nederland N.V., Citco Global Custody N.V., Citco Global Custody (NA) N.V., Citco (Canada) Inc. and all affiliates of the foregoing entities (the "Service Provider Claims"), until the Liquidators collect Three Hundred Million Dollars ($300,000,000) in the aggregate from such claims, and (ii) the Liquidators shall pay to the Trustee fifteen percent (15%) of the Net Recoveries from Service Provider Claims in excess of Three Hundred Million Dollars

MADC1345_00000668

($300,000,000) in the aggregate, and the Liquidators shall retain the remaining eighty-five percent (85%) of such Net Recoveries. The Liquidators shall retain one-hundred percent (100%) of the Net Recoveries they receive from the Service Provider Claims once the Non-Forbearance Amount of the Sentry Judgment, the Sigma Judgment and the Lambda Judgment are satisfied in full. The Liquidators shall prosecute the Service Provider Claims at their sole expense, and the Trustee shall not, and shall have no right to, intervene in or otherwise interfere with the Liquidators' prosecution of such actions.

7.      Designated Subsequent Transferee Claim Recoveries.  The Trustee in his sole discretion has commenced certain actions and may choose to commence additional actions against individuals and entities identified on Exhibit H hereto (the "Designated Subsequent Transferees" and "Designated Subsequent Transferee Claims") to recover transfers from BLMIS to Fairfield Sentry, and subsequently transferred to other individuals and/or entities (the "Subsequent Transferee Claims"). Said Exhibit H, attached and incorporated by reference hereto, is not, and is not intended to be, an exhaustive or inclusive list of all Subsequent Transferee Claims commenced, or to be commenced by the Trustee; provided, however, and except as otherwise provided in the last sentence of this Paragraph 7, that only the Subsequent Transferee Claims against the Designated Subsequent Transferees identified on Exhibit H shall be treated as provided in this Paragraph 7. The Trustee in his discretion has commenced and/or may commence Subsequent Transferee Claims against individuals and/or entities that are not Designated Subsequent Transferees to recover transfers from BLMIS to Fairfield Sentry, Fairfield Sigma, or Fairfield Lambda and subsequently transferred to such individuals and/or entities ("Non-Designated Subsequent Transferees" and "Non-Designated Subsequent Transferee Claims"), upon the Trustee's determination, in the exercise of his sole discretion, that his statutory duties require him to commence such Non-Designated Subsequent Transferee Claims; provided, however, that, with respect to Non-Designated Subsequent Transferee Claims not yet commenced, the Trustee shall provide reasonable notice to, and reasonably confer in good faith with, the Liquidators prior to commencing a Non-Designated Subsequent Transferee Claim; and provided, further, that the Trustee shall not commence a Non-Designated Subsequent Transferee Claim against Fairfield Sigma or Fairfield Lambda. Once the Trustee commences a Non-Designated Subsequent Transferee Claim, the case shall become a Subsequent Transferee Claim for purposes of this Agreement which shall, except as otherwise provided in the last sentence of this Paragraph 7, be treated as provided in either Paragraphs 8 or 9 of this Agreement, as applicable. The Trustee shall pay to the Liquidators forty percent (40%) of Subsequent Transferee Recoveries (as defined below) in connection with Designated Subsequent Transferee Claims, and the Trustee shall retain all other Subsequent Transferee Recoveries from such Designated Subsequent Transferee Claims. The Trustee shall prosecute all Subsequent Transferee Claims solely at his expense.

Pursuant to the cooperation and joint interest provisions set forth and contemplated by Paragraph 14 below, the Trustee and Liquidators shall be in regular communication about the commencement of any Subsequent Transferee Claims. As soon as is reasonably practicable following the Effective Date (defined below), the Liquidators shall take reasonable steps to enable the Trustee to prosecute Subsequent Transferee Claims against the Designated Subsequent Transferees that are subject to an existing action commenced by the Liquidators to the extent the parties mutually agree that any action by the Liquidators is required.

MADC1345_00000669

For purposes of this Agreement generally and Paragraphs 7, 8 and 9 herein specifically, the term "Subsequent Transferee Recoveries" shall mean the gross consideration that is paid to the Trustee pursuant to a settlement, judgment or other resolution of a Subsequent Transferee Claim; provided that if, in a particular action, the Trustee asserts a Subsequent Transferee Claim against an individual or entity and in the same action seeks to recover transfers made to or for the benefit of the defendant from one or more entities other than any of the Fairfield Funds, and the entire action is resolved without a judicially determined allocation of the total recoveries therein, the Subsequent Transferee Recoveries shall be deemed to be the gross amount of the Trustee's recoveries from such action, multiplied by a fraction, the numerator of which shall be the amounts claimed by the Trustee on account of transfers made to or for the benefit of the defendant from the Fairfield Funds, and the denominator of which shall be the total amount claimed by the Trustee in such action; provided, further, that any allocation of recoveries set forth in a settlement agreement resolving a Subsequent Transferee Claim shall have no effect on the amount of Subsequent Transferee Recoveries under this Agreement unless the Liquidators consent to such allocation in writing, which consent shall not be unreasonably withheld. To the extent that the Trustee commences a Subsequent Transferee Claim against a Non-Designated Subsequent Transferee and that action is neither a Common Defendant Claim as provided in and by Paragraph 8 below nor a Separately Treated Common Defendant Claim as provided in and by Paragraph 9 below, this Paragraph 7 shall apply to any such action.

8.    Common Defendant Claim Recoveries.    The Parties expressly acknowledge that the Liquidators have commenced or will commence certain Redeemer Actions, and the Trustee has commenced or will commence certain Subsequent Transferee Claims, against the same individuals or entities ("Common Defendants"), and the Trustee and the Liquidators expressly agree that a Redeemer Action and a Subsequent Transferee Claim may be prosecuted against a Common Defendant unless the Parties mutually determine in writing, in good faith, that only the Liquidators' Redeemer Action or only the Trustee's Subsequent Transferee Claim should proceed. Notwithstanding Paragraphs 4 and 7 above, and except as otherwise provided in this Paragraph 8 and in Paragraph 9 below, in the event that the Liquidators have commenced and are actively prosecuting a Redeemer Action and the Trustee has commenced and is actively prosecuting a Subsequent Transferee Claim against one or more Common Defendants ("Common Defendant Claims"), any and all Net Recoveries paid to the Liquidators and Subsequent Transferee Recoveries paid to the Trustee by or on behalf of Common Defendants in connection with any Common Defendant Claims (collectively, "Common Defendant Recoveries") shall be deemed to be pooled and aggregated by the Parties with respect to each such Common Defendant and allocated among the Parties as follows:

(i)    The Liquidators shall be paid or retain (as applicable) Eighty-Five Percent (85%) of the Fictitious Profit Component (as defined below), if any, and the Trustee shall be paid or retain (as applicable) Fifteen Percent (15%) of the Fictitious Profit Component, if any;

(ii)    The Liquidators shall be paid or retain (as applicable) Sixty-Five Percent (65%) of the BVI Vulnerability Period Component (as defined below), if any, and the Trustee shall be paid or retain (as applicable) Thirty-Five Percent (35%) of the BVI Vulnerability Period Component, if any; and

9

    (iii)    The Liquidators shall be paid or retain (as applicable) Forty Percent (40%) of the Other Principal Component (as defined below), if any, and the Trustee shall be paid or retain (as applicable) Sixty Percent (60%) of the Other Principal Component, if any.

Notwithstanding the foregoing, the allocation set forth in this Paragraph 8 shall not apply to (i) Subsequent Transferee Recoveries from the Designated Subsequent Transferees identified on Exhibit H hereto, and such Subsequent Transferee Recoveries shall, in all such Designated Subsequent Transferee Claims, be allocated among the Parties pursuant to Paragraph 7 above, or (ii) Non-Designated Subsequent Transferees identified on Exhibit I hereto, and such Subsequent Transferee Recoveries shall, in all such Non-Designated Subsequent Transferee Claims, be allocated among the Parties pursuant to Paragraph 9 below.

For purposes of this Agreement, (x) the term "Fictitious Profit Component" shall mean and include the first Common Defendant Recoveries up to and including the total amounts claimed by the Liquidators in the applicable Redeemer Action on account of payments made to or for the benefit of the applicable Common Defendant from each Fairfield Fund in excess of the amounts such Common Defendant invested in each such Fairfield Fund (directly or indirectly) as determined according to the Fairfield Funds' books and records (if and to the extent there is such excess); (y) the term "BVI Vulnerability Period Redemptions" shall mean the amounts claimed by the Liquidators in the applicable Redeemer Action on account of payments made to or for the benefit of each Common Defendant in connection with the redemption of shares in the Fairfield Funds (i) from and including April 21, 2007 and thereafter, in the case of redemption of shares in Fairfield Sentry, (ii) from and including April 23, 2007 and thereafter, in the case of redemption of shares in Fairfield Sigma and (iii) from and including February 27, 2007 and thereafter, in the case of redemption of shares in Fairfield Lambda, in all cases, less the Fictitious Profit Component for such Common Defendant, if any; and (z) the term "Other Principal Redemptions" shall mean the total amounts claimed by the Trustee in the applicable Subsequent Transferee Claim on account of payments made to or for the benefit of each Common Defendant in connection with the redemption of shares in the Fairfield Funds, less the BVI Vulnerability Period Redemptions, if any; and (xx) the term "BVI Vulnerability Period Pro Rata Share" shall mean a fraction, the numerator of which is the BVI Vulnerability Period Redemptions, and the denominator of which is the BVI Vulnerability Period Redemptions plus the Other Principal Redemptions; (yy) the term "BVI Vulnerability Period Component" shall mean the amount of the Common Defendant Recoveries less the Fictitious Profit Component, if any, multiplied by the BVI Vulnerability Period Pro Rata Share; and (zz) the term "Other Principal Component" shall mean the amount of the Common Defendant Recoveries less (i) the Fictitious Profit Component, if any, and (ii) the BVI Vulnerability Period Component, if any.

Notwithstanding the foregoing: (a) in the event that all of the Liquidators' claims against a Common Defendant asserted pursuant to the British Virgin Islands Insolvency Act 2003 are dismissed with prejudice prior to the payment of the applicable Common Defendant Recoveries to the Trustee and/or the Liquidators (as applicable), then (i) the BVI Vulnerability Period Component as to such Common Defendant Recoveries shall be zero and (ii) the Other Principal Component as to such Common Defendant Recoveries shall be the amount of Common Defendant Recoveries less the Fictitious Profit Component, if any; (b) in the event that a Subsequent Transferee Claim against a Common Defendant is dismissed with prejudice prior to

10

the resolution of a Redeemer Action against such Common Defendant, then the Liquidators' Net Recoveries from such Redeemer Action shall not constitute Common Defendant Recoveries, and such Net Recoveries shall be allocated among the Parties in accordance with Paragraph 4; and (c) in the event that the Fictitious Profit Component, BVI Vulnerability Period Component, and/or Other Principal Component of any Common Defendant Recoveries are determined pursuant to a settlement agreement mutually agreed to in writing by the Parties hereto, judgment, jury verdict form, jury interrogatories or other judicial adjudication with respect to the applicable Common Defendant Claim, such determination shall control and be used for purposes of determining the allocation of such Common Defendant Recoveries pursuant to this Paragraph 8.

9. <u>Separately Treated Common Defendant Claim Recoveries</u>. Notwithstanding Paragraph 8 above, unallocated Common Defendant Recoveries from Common Defendant Claims against the Non-Designated Subsequent Transferees identified on <u>Exhibit I</u> hereto ("<u>Separately Treated Common Defendants</u>" and "<u>Separately Treated Common Defendant Claims</u>") shall be deemed to be pooled and aggregated by the Parties with respect to each such Separately Treated Common Defendant and allocated among the Parties as follows:

(i) The Liquidators shall be paid or retain (as applicable) Eighty-Five Percent (85%) of the Pro Rata Fictitious Profit Component (as defined below), if any, and the Trustee shall be paid or retain (as applicable) Fifteen Percent (15%) of the Pro Rata Fictitious Profit Component, if any; and

(ii) The Liquidators shall be paid or retain (as applicable) Forty Percent (40%) of the Pro Rata Principal Component (as defined below), if any, and the Trustee shall be paid or retain (as applicable) Sixty Percent (60%) of the Pro Rata Principal Component, if any.

For purposes of this Agreement, (x) the term "Pro Rata Fictitious Profit Component" shall mean the applicable Common Defendant Recoveries multiplied by a fraction, the numerator of which shall be the total amounts claimed by the Liquidators in the applicable Redeemer Action on account of payments made to or for the benefit of the applicable Common Defendant from each Fairfield Fund in excess of the amounts such Common Defendant invested in each such Fairfield Fund (directly or indirectly) as determined according to the Fairfield Funds' books and records (if and to the extent there is such excess), and the denominator of which shall be the total amounts claimed by the Trustee in the applicable Subsequent Transferee Claim on account of payments made to or for the benefit of such Common Defendant in connection with the redemption of shares in the Fairfield Funds; and (y) the term "Pro Rata Principal Component" shall mean the applicable Common Defendant Recoveries less the Pro Rata Fictitious Profit Component. Notwithstanding the foregoing, in the event that the Pro Rata Fictitious Profit Component and/or Pro Rata Principal Component of any Common Defendant Recoveries are determined pursuant to a settlement agreement mutually agreed to in writing by the Parties hereto, judgment, jury verdict form, jury interrogatories or other judicial adjudication with respect to the applicable Separately Treated Common Defendant Claim, such determination shall control and be used for purposes of determining the allocation of such Common Defendant Recoveries with respect to Separately Treated Common Defendant Claims pursuant to this Paragraph 9.

MADC1345_00000672

10. <u>JPMC Claim Recoveries</u>. The Trustee shall pay to the Liquidators Thirty-Three and Two-Tenths percent (33.2%) of the first gross consideration the Trustee receives from any of the Trustee's and/or BLMIS Estate's claims or causes of action against JPMorgan Chase, N.A. and/or any of its affiliates in an adversary proceeding entitled, *Picard v. JP Morgan Chase & Co.*, which claims were initially filed in the Bankruptcy Court and, following decision on a motion to withdraw the reference, are currently pending in the United States District Court for the Southern District of New York, Case No. 11-cv-00913 (the "<u>JPMC Claims</u>"), until the Liquidators are paid Eighty Eight Million Dollars ($88,000,000) from such consideration. The Trustee shall prosecute the JPMC Claims solely at his expense, and the Liquidators shall not, and shall have no right to, intervene in or otherwise interfere with the Trustee's prosecution of the JPMC Claims, except if, and only to extent that, the Trustee expressly agrees in writing otherwise. The Liquidators shall have no right to any consideration received by the Trustee in connection with the JPMC Claims once the Liquidators are paid Eighty Eight Million Dollars ($88,000,000) in accordance with the terms hereof; provided, however, that each dollar the Trustee recovers from the JPMC Claims in excess of $88,000,000 shall be credited to the Judgments pursuant to Paragraph 11 below, until the Trustee recovers Two-Hundred Sixty-Five Million Dollars ($265,000,000) in the aggregate from such claims. Within five (5) Business Days after the Effective Date (defined below), the Liquidators shall dismiss with prejudice all claims and causes of action they have asserted against JPMorgan Bank, N.A., JPMorgan (Suisse) S.A., JPMorgan Securities Limited and JPMorgan Trust Company (Cayman).

11. <u>Application of Recoveries to the Judgments</u>. Any and all recoveries of monies from the Redeemer Actions, Management Claims, Service Provider Claims, Designated Subsequent Transferee Claims, Non-Designated Subsequent Transferee Claims, Common Defendant Claims, Separately Treated Common Defendant Claims and the JPMC Claims (with respect to the JPMC Claims, as provided in Paragraph 10 above) (collectively, the "<u>Sharing Claims</u>") that are paid, turned over or credited to, or otherwise retained or received by, the Trustee hereunder ("<u>Judgment Reducing Recoveries</u>") shall reduce, on a dollar-for-dollar basis, each of (i) the outstanding amount to be paid by Fairfield Sentry towards satisfying the Non-Forbearance Amount of the Sentry Judgment, and (ii) the outstanding amount to be paid by either (x) Fairfield Sigma towards satisfying the Sigma Judgment or (y) Fairfield Lambda towards satisfying the Lambda Judgment, to be determined by the Liquidators in their sole discretion. For the sake of clarity, each dollar of Judgment Reducing Recoveries shall reduce the outstanding amounts owing on the Non-Forbearance Amount of the Sentry Judgment by one dollar and, at the same time and at the Liquidators' discretion, either the Sigma Judgment or the Lambda Judgment, by one dollar.

12. <u>Allocation of Shared Recoveries</u>. On the date that is three (3) months from the Effective Date of this Agreement, and every three (3) months thereafter (each such date, a "<u>Reconciliation Date</u>"), the Trustee and the Liquidators shall jointly and in good faith determine and reconcile the consideration (cash or otherwise) that is payable to each from the Sharing Claims. If the Trustee is entitled to payment from the Liquidators in connection with the Sharing Claims, the Liquidators shall make a cash payment to the Trustee, to an account identified by the Trustee, of the amount owed to the Trustee, plus any interest that has been earned on and is specifically allocable to such amount, within five (5) Business Days after the applicable Reconciliation Date. If the Liquidators are entitled to payment from the Trustee in connection with the Sharing Claims, the Trustee shall make a cash payment to the Liquidators, to

12

one or more of the Fairfield BVI Accounts as identified by the Liquidators, of the amount owed to the Liquidators, plus any interest that has been earned on and is specifically allocable to such amount, within five (5) Business Days after the applicable Reconciliation Date. Any amounts recovered by a Party that are subject to payment, turnover or allocation to another Party hereunder shall be held in trust for the benefit of such Party. If a dispute arises between the Parties as to the amounts payable to any Party from recoveries on the Sharing Claims, and such dispute is not resolved within thirty (30) days following a Reconciliation Date, the Parties consent to the jurisdiction of the Bankruptcy Court to resolve such dispute. For the avoidance of doubt, the Trustee shall not be entitled to share in any recoveries from claims or causes of action prosecuted by the Liquidators, and the Liquidators shall not be entitled to share in any recoveries from claims or causes of action prosecuted by the Trustee, except for recoveries from the Sharing Claims.

         13.    Allowance of a Fairfield Sentry Customer Claim. Upon the occurrence of the making of the Twenty Four Million Dollar ($24,000,000) partial payment of the Settlement Payment as set forth in Paragraph 2 above, and notwithstanding Section 502(d) of the Bankruptcy Code, the Trustee shall allow a Fairfield Sentry customer claim pursuant to 15 U.S.C. § 78*lll* (11) equal in priority to other allowed customer claims against the BLMIS Estate (the "Allowed Claim"), in the initial amount of Seventy Eight Million Dollars ($78,000,000). Upon the payment of the balance of the Settlement Payment as set forth in Paragraph 2 above, the Trustee shall increase the amount of the Allowed Claim by the amount of One Hundred Fifty Two Million Dollars ($152,000,000) resulting in an Allowed Claim in a final amount of Two Hundred Thirty Million Dollars ($230,000,000) (the "Final Amount"). The amount of the Allowed Claim represents Nineteen and Two-Tenths percent (19.2%) (the "Settlement Percentage") of the Sentry SIPA Net Equity Claim. The Liquidators shall receive the full benefit of any SIPC customer advances under Section 9 of SIPA. The payment of any sums to the Trustee by the Liquidators and/or the Fairfield Funds or via recoveries of monies from the Sharing Claims shall not serve to increase the Allowed Claim. Notwithstanding any other language in this Agreement, in the event that, as a result of a final, non-appealable judicial determination and order of the Net Equity Method issue, allowed customer claims against BLMIS are ultimately calculated based on the amounts reflected on a customer's BLMIS account statement for the period ending November 30, 2008 (the "Last Statement Method"), or to include other amounts beyond the Net Equity Method (including, for example, if customers are entitled to receive interest on their deposits with BLMIS) (together with the Last Statement Method, the "Modified Net Equity Method"), the amount of the Allowed Claim shall be calculated in the same manner as other allowed customer claims are calculated pursuant to the Modified Net Equity Method, provided that, in such event, the allowed amount of the Allowed Claim shall equal the product of multiplying the Settlement Percentage of nineteen and two-tenths percent (.192) times the amount of the Sentry SIPA Claim as calculated pursuant to the Modified Net Equity Method (the "Adjusted Allowed Claim"). The Trustee shall not seek to subordinate, under principles of equitable subordination or any other basis (including, but not limited to, pursuant to Section 510(c) of the Bankruptcy Code), the Allowed Claim or the Adjusted Allowed Claim (as applicable) below allowed customer claims in the SIPA Proceeding. For the avoidance of doubt, in the event that valid customer claims against BLMIS are ultimately calculated using the Last Statement Method without any other adjustments, the Adjusted Allowed Claim would total One Billion Two Hundred Six Million Five Hundred Eighty Nine Thousand Seven Hundred Forty Three Dollars ($1,206,589,743), which amount is calculated by

MADC1345_00000674

multiplying the Last Statement Amount of Six Billion Two Hundred Eighty Four Million Three Hundred Twenty One Thousand Five Hundred Eighty One Dollars ($6,284,321,581) times Nineteen and Two Tenths Percent (.192). The Bankruptcy Court's order approving this Agreement shall provide for the allowance of the initial amount of the Allowed Claim and the increase of the Allowed Claim as provided in this Paragraph 13.

14. <u>Cooperation in Pursuing and Resolving the Sharing Claims</u>. Through a separate joint interest agreement, to be entered into by the Parties as soon as reasonably practicable following the Effective Date, the Trustee and the Liquidators each agree to provide reasonable access to the other's documents, data, and other information relating to, or beneficial to the pursuit of, the Sharing Claims. The Trustee and the Liquidators each agree to provide reasonable cooperation and assistance to the other Party in connection with the prosecution of the Sharing Claims, provide the other with a reasonable opportunity to consider the terms for resolving any Sharing Claims and confer in good faith regarding such terms; provided, however, that the Party authorized under this Agreement with the right and/or responsibility of prosecuting a Sharing Claim (such Party, the "<u>Prosecuting Party</u>") shall not be required to obtain the consent of the other Party to resolve or settle the Prosecution Party's claim. Within five (5) Business Days following the settlement or other resolution of a Sharing Claim, the Prosecuting Party shall (i) notify the other Party of the amounts, if any, paid or to be paid to the Prosecuting Party in connection therewith and (ii) provide the other Party with a copy of the applicable settlement agreement, if any, subject to compliance with any applicable confidentiality obligations. If the Liquidators request that the Trustee, on behalf of himself, BLMIS and/or its estate, release claims against a person or entity in connection with the settlement of any of the Sharing Claims prosecuted by the Liquidators against such person or entity, the Trustee agrees that he shall not unreasonably refuse to provide such release. If the Trustee requests that the Liquidators, on behalf of themselves, any of the Fairfield Funds and/or their estates, release claims against a person or entity in connection with the settlement of any of the Sharing Claims prosecuted by the Trustee against such person or entity, the Liquidators agree that they shall not unreasonably refuse to provide such release. The Trustee and the Liquidators agree and stipulate that a joint interest exists between them with respect to the Sharing Claims. The Trustee and the Liquidators further agree and stipulate that neither this Agreement nor any action taken thereunder constitutes the waiver of any privilege or immunity of the Trustee or the Liquidators or their respective counsel.

15. <u>Release by the Trustee</u>. In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Trustee, on behalf of himself, BLMIS and its estate hereby releases, acquits and forever discharges each of the Fairfield Funds, the Liquidators, individually and in their capacities as Liquidators, and all of the Liquidators' agents, representatives, attorneys, employees and professionals from any and all Trustee Released Claims (as defined below). The Trustee and the Liquidators expressly agree this release shall not affect or encompass any claims by the Trustee against any third party, including but not limited to, the Fairfield Funds' respective former officers, directors, custodians, administrators, accountants, auditors, investment advisors and management companies, and the Fairfield Funds' former and present investors or shareholders. For purposes of this Agreement, the term "Trustee Released Claims" shall mean any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages,

MADC1345_00000675

judgments, and claims whatsoever, asserted or unasserted, known or unknown, now existing or arising in the future (including, without limitation, the claims asserted against the Fairfield Funds in the Adversary Proceeding), except for any and all claims and rights (and the enforcement thereof) of the Trustee and obligations of the Liquidators arising under this Agreement.

16.      Release by the Liquidators and the Fairfield Funds.  In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Liquidators, on behalf of themselves, each of the Fairfield Funds and their respective estates, hereby release, acquit and forever discharge the Trustee and all of the Trustee's agents, representatives, attorneys, employees and professionals from any and all Liquidator Released Claims (as defined below). The Trustee and the Liquidators expressly agree this release shall not affect or encompass (i) any claims by the Liquidators or any of the Fairfield Funds against any third party, including, but not limited to, the Fairfield Funds' investors and shareholders and former directors, auditors, managers, investment advisors, administrators, custodians and other service providers, (ii) any claims by any creditors or shareholders of, or investors in, any the Fairfield Funds against BLMIS or the BLMIS Estate, or (iii) the status or resolution of the Sigma SIPA Claim or the Lambda SIPA Claim, which shall be determined in a manner consistent with the customer claims asserted by other indirect investors in BLMIS.  For purposes of this Agreement, (i) the term "Liquidator Released Claims" shall mean any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims whatsoever, asserted or unasserted, known or unknown, now existing or arising in the future, except for the Fairfield SIPA Claims, the Allowed Claim, the Adjusted Allowed Claim (if applicable), and/or any and all claims and rights (and the enforcement thereof) of the Fairfield Funds and obligations of the Trustee arising under this Agreement; and (ii) the term "Released Claims" shall mean, collectively, the Trustee Released Claims and the Liquidator Released Claims.

17.      Unknown Claims.  Unknown Claims shall mean any Released Claim, as defined herein, that the Trustee and/or the Liquidators do not know or suspect to exist in their favor at the time of giving the release in this Agreement that if known by them, might have affected their settlement and release in this Agreement.  With respect to any and all Released Claims in Paragraphs 15 and 16 of this Agreement, the Trustee and the Liquidators shall expressly waive or be deemed to have waived, the provisions, rights and benefits of California Civil Code section 1542 (to the extent it applies herein), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

The Trustee and the Liquidators expressly waive, and shall be deemed to have waived, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable or equivalent in effect to California Civil Code section 1542.  The Trustee and/or the Liquidators may hereafter

15

MADC1345_00000676

discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Released Claims, but the Trustee and the Liquidators shall expressly have and shall be deemed to have fully, finally and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or noncontingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence or such different or additional facts. Each of the Trustee and the Liquidators acknowledge and shall be deemed to have acknowledged that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

18.    Bankruptcy Court and BVI Court Approval; Effective Date; Termination. This Agreement is subject to, and shall become effective and binding on the Parties upon, and only upon, the later of both, (i) fourteen days following the Bankruptcy Court's entry of an order approving this Agreement in the SIPA Proceeding that is not subject to a timely stay by any court of competent jurisdiction and (ii) fourteen days following the BVI Court's entry of an order approving this Agreement that is not subject to a timely stay by any court of competent jurisdiction (the date when this Agreement becomes effective and binding on the Parties, the "Effective Date"). The form of the approval order in the SIPA Proceeding shall be subject to the Liquidators' reasonable approval. The Trustee shall use his reasonable efforts to obtain approval of the Agreement in the SIPA Proceeding as promptly as practicable after the date of this Agreement. The form of the approval order in the BVI Proceedings shall be subject to the Trustee's reasonable approval. The Liquidators shall use their reasonable efforts to obtain approval of the Agreement in the BVI Proceedings as promptly as practicable after the date of this Agreement. If this Agreement has not become effective as provided in this Paragraph 18 within Three Hundred Sixty (360) days after the date of this Agreement (or within such additional time as mutually agreed upon by the Parties), then (a) this Agreement (other than this Paragraph 18) shall terminate and be void, (b) all of the statements, concessions, consents and agreements contained in the Agreement (other than this Paragraph 18) shall be void; and (c) none of the Trustee, the Liquidators, or any of the Fairfield Funds may use or rely on any such statements, concessions, consents or agreements in any public statement or litigation involving the SIPA Proceeding, the BVI Proceedings or the Chapter 15 Proceedings, any case or proceeding relating to the SIPA Proceeding, the BVI Proceedings or the Chapter 15 Proceedings or any case or proceeding relating to any of the Fairfield Funds, BLMIS or Madoff.

19.    Use of Complaint. The Parties agree and acknowledge that the Liquidators, on behalf of themselves and each of the Fairfield Funds, deny any liability to the BLMIS Estate, do not admit to any of the allegations in the complaint or the amended complaint filed in the Adversary Proceeding, and none of the allegations in such complaints shall be binding on or admissible against the Liquidators or any of the Fairfield Funds in any proceeding.

20.    Closing. There shall be a closing ("Closing") on the Effective Date of this Agreement. On the date when the Settlement Payment is paid in full pursuant to Paragraph 2 hereof, whether on the date of the Closing or some later date, (a) the Trustee shall pay Fairfield Sentry $500,000 from SIPC advances under Section 9 of SIPA to one or more of the Fairfield BVI Accounts as identified by the Liquidators, which amount may, prior to the payment in full

16

of the Settlement Payment, and with the mutual written consent of the Parties, such consent not to be reasonably withheld, be paid by setoff against the Settlement Payment; (b) the amount of the Allowed Claim shall be increased to the Final Amount without any further action by any of the Parties (subject to the adjustment of such amount as provided for in Paragraph 13); (c) the releases contained in Paragraphs 15 and 17 in favor of the Liquidators and the Fairfield Funds shall become effective without any further action by any of the Parties; and (d) the Escrow Agreements referenced in Paragraph 3 of this Agreement shall terminate without any further action by any of the Parties.

      21.    <u>Liquidators' and Trustee's Authority</u>.  The Liquidators represent and warrant to the Trustee that, as of the date hereof, and subject to the approval of the BVI Court as set forth in Paragraph 18 above, each of them has the full power, authority and legal right to execute and deliver, and to perform his or her respective obligations under, this Agreement and has taken all necessary action to authorize the execution, delivery, and performance of his or her respective obligations under this Agreement.  The Trustee represents and warrants to the Liquidators that, as of the date hereof, and subject to the approval of the Bankruptcy Court as set forth in Paragraph 18 above, he has the full power, authority and legal right to execute and deliver, and to perform his obligations under, this Agreement and has taken all necessary action to authorize the execution, delivery, and performance of his respective obligations under this Agreement.

      22.    <u>Further Assurances</u>.  The Trustee and the Liquidators shall execute and deliver any document or instrument reasonably requested by either of them after the date of this Agreement to effectuate the intent of this Agreement.

      23.    <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement and understanding between and among the Parties and supersedes all prior agreements, representations and understandings concerning the subject matter hereof.

      24.    <u>No admission</u>.  This Agreement and all negotiations, statements, and proceedings in connection therewith are not, will not be argued to be, and will not be deemed to be a presumption, concession or admission by any Party of any fault, liability or wrongdoing whatsoever.  This Agreement and any matter relating thereto may not be offered or received in evidence or otherwise referred to in any civil, criminal, or administrative action or proceeding as evidence of any wrongdoing or liability.  Notwithstanding the foregoing, the Judgments may be used by the Trustee to prosecute a Subsequent Transferee Claim, and then for the purpose of establishing the avoidance of the Withdrawals.

      25.    <u>Amendments, Waiver</u>.  This Agreement may not be terminated, waived, amended or modified in any way except in a writing signed by all the Parties.  No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

      26.    <u>Assignability</u>.  No Party hereto may assign his or her rights under this Agreement to a third party without the prior written consent of each of the other Parties hereto.

MADC1345_00000678

27.    Successors Bound. This Agreement shall be binding upon and inure to the benefit of each of the Parties and their successors and permitted assigns.

28.    No Third Party Beneficiary. The Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

29.    Applicable Law. This Agreement shall be construed and enforced in accordance with the laws of the State of New York (without regard to its conflict of laws provisions); provided, however, that the BVI Court's approval of this Agreement pursuant to Paragraph 18 hereof shall be in accordance with the law of the BVI.

30.    Exclusive Jurisdiction. The Parties agree that the Bankruptcy Court shall have exclusive jurisdiction over any action to enforce this Agreement, or any provision thereof, and the Parties hereby consent to and submit to the jurisdiction of the Bankruptcy Court for any such action. The Parties agree that no Party shall bring, institute, prosecute or maintain any action to enforce this Agreement, or any provision thereof, in any court other than the Bankruptcy Court except for the limited purpose of enforcing a final award or judgment entered by the BVI Court or Bankruptcy Court in connection with this Agreement.

31.    Captions and Rules of Construction. The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit or describe the scope of this Agreement or the scope or content of any of its provisions. Any reference in this Agreement to a Paragraph is to a Paragraph of this Agreement. "Includes" and "including" are not limiting.

32.    Recitals. Any facts set forth in any sentence in the Background section hereto preceded by the phrase "according to the Trustee" are those provided by the Trustee, and none of such facts shall be binding on or admissible against the Liquidators or any of the Fairfield Funds in any proceeding.

33.    Counterparts; Electronic Copy of Signatures. This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document. The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature.

34.    Notices. Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax or by electronic transmission to:

MADC1345_00000679

If to the Trustee, c/o:

Mark Kornfeld, Esq.
Baker & Hostetler LLP
45 Rockefeller Center, Suite 1100
New York, NY 10111
F: (212) 589-4201
mkornfeld@bakerlaw.com

If to the Liquidators, c/o:

William Hare
Forbes Hare
Palm Grove House
P.O. Box 4649
Tortola VG 1110
British Virgin Islands
F: (284) 494-1316
whare@forbeshare.com

With copies to:

Kenneth M. Krys and Joanna Lau
c/o KRyS Global
Commerce House, 2nd Floor
P.O. Box 930
Tortola VG 1110
British Virgin Islands
F: (284) 494-7169
kenneth.krys@krys-global.com
joanna.lau@krys-global.com

-and-

David J. Molton, Esq.
Brown Rudnick LLP
Seven Times Square
New York, NY 10036
F: (212) 938-2822
dmolton@brownrudnick.com

[*Signature page follows*]

19

MADC1345_00000680

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

_____

Irving H. Picard, Trustee


_____

Kenneth Krys, as Joint Liquidator for and on behalf of Fairfield Sentry Limited, Fairfield Sigma Limited and Fairfield Lambda Limited


_____

Joanna Lau, as Joint Liquidator for and on behalf of Fairfield Sentry Limited, Fairfield Sigma Limited and Fairfield Lambda Limited

MADC1345_00000681

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

_____
Irving H. Picard, Trustee


_____
Kenneth Krys, as Joint Liquidator for and on behalf
of Fairfield Sentry Limited, Fairfield Sigma Limited
and Fairfield Lambda Limited (without personal
liability)


_____
Joanna Lau, as Joint Liquidator for and on behalf of
Fairfield Sentry Limited, Fairfield Sigma Limited
and Fairfield Lambda Limited

MADC1345_00000682

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

_____

Irving H. Picard, Trustee


_____

Kenneth Krys, as Joint Liquidator for and on behalf
of Fairfield Sentry Limited, Fairfield Sigma Limited
and Fairfield Lambda Limited


_____

Joanna Lau, as Joint Liquidator for and on behalf of
Fairfield Sentry Limited, Fairfield Sigma Limited
and Fairfield Lambda Limited *(without personal liability)*

MADC1345_00000683

| BLMIS Account Name | BLMIS Account Number |
|---|---|
| CITCO GLOBAL CUSTODY N V FBO FAIRFIELD SENTRY LTD | 1FN012 |
| CITCO GLOBAL CUSTODY N V FBO FAIRFIELD SENTRY LTD | 1FN045 |
| FAIRFIELD SENTRY LIMITED C/O FAIRFIELD GREENWICH GROUP 55 EAST 52ND STREET  33RD FL | 1FN069 |
| FAIRFIELD SENTRY LIMITED C/O FAIRFIELD GREENWICH GROUP 55 EAST 52ND STREET  33RD FL | 1FN070 |

MADC1345_00000684

Exhibit D

**BLMIS ACCOUNT NO. 1FN012 - CTB SHORT TERM MELLO 1 FBO FAIRFIELD SENTRY LTD**

| Column 1<br>Date | Column 2<br>Transaction<br>Description | Column 3<br>Transaction Amount<br>Reported in<br>Customer Statement | Column 4<br>Cash<br>Deposits | Column 5<br>Cash<br>Withdrawals | Column 6<br>Transfers of<br>Principal In | Column 7<br>Transfers of<br>Principal Out | Column 8<br>Balance of<br>Principal | Column 9<br>Preference<br>Period Initial<br>Transfers | Column 10<br>Two Year<br>Initial<br>Transfers | Column 11<br>Six Year<br>Initial<br>Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/29/1990 | CHECK WIRE | 4,355,000 | 4,355,000 | - | - | - | 4,355,000 | - | - | - |
| 1/11/1991 | CHECK WIRE | 5,850,000 | 5,850,000 | - | - | - | 10,205,000 | - | - | - |
| 1/22/1991 | CHECK WIRE | 2,308,000 | 2,308,000 | - | - | - | 12,513,000 | - | - | - |
| 5/8/1991 | CHECK WIRE | 1,300,000 | 1,300,000 | - | - | - | 13,813,000 | - | - | - |
| 5/14/1991 | CHECK WIRE | 450,000 | 450,000 | - | - | - | 14,263,000 | - | - | - |
| 7/9/1991 | CHECK WIRE | 4,750,000 | 4,750,000 | - | - | - | 19,013,000 | - | - | - |
| 10/9/1991 | CHECK WIRE | 4,500,000 | 4,500,000 | - | - | - | 23,513,000 | - | - | - |
| 11/15/1991 | W/H TAX DIV BMY | (5,886) | - | (5,886) | - | - | 23,507,114 | - | - | - |
| 11/15/1991 | W/H TAX DIV BELL ATL | (510) | - | (510) | - | - | 23,506,604 | - | - | - |
| 11/15/1991 | W/H TAX DIV AT & T | (535) | - | (535) | - | - | 23,506,069 | - | - | - |
| 12/16/1991 | W/H TAX DIV IBM | (6,229) | - | (6,229) | - | - | 23,499,840 | - | - | - |
| 12/16/1991 | W/H TAX DIV MOBIL | (2,746) | - | (2,746) | - | - | 23,497,094 | - | - | - |
| 12/16/1991 | W/H TAX DIV GEN MOTORS | (3,070) | - | (3,070) | - | - | 23,494,025 | - | - | - |
| 12/16/1991 | W/H TAX DIV AMOCO | (2,360) | - | (2,360) | - | - | 23,491,665 | - | - | - |
| 12/16/1991 | W/H TAX DIV EXXON | (7,984) | - | (7,984) | - | - | 23,483,682 | - | - | - |
| 12/16/1991 | W/H TAX DIV JOHNSON & JOHNSON | (1,535) | - | (1,535) | - | - | 23,482,147 | - | - | - |
| 12/16/1991 | W/H TAX DIV BOEING | (1,073) | - | (1,073) | - | - | 23,481,074 | - | - | - |
| 12/16/1991 | W/H TAX DIV DU PONT | (3,223) | - | (3,223) | - | - | 23,477,851 | - | - | - |
| 1/15/1992 | CHECK WIRE | 5,100,000 | 5,100,000 | - | - | - | 28,577,851 | - | - | - |
| 2/18/1992 | W/H TAX DIV AT & T | (4,356) | - | (4,356) | - | - | 28,573,495 | - | - | - |
| 2/18/1992 | W/H TAX DIV BRISTOL MYERS | (4,968) | - | (4,968) | - | - | 28,568,527 | - | - | - |
| 3/16/1992 | W/H DIV IBM | (12,197) | - | (12,197) | - | - | 28,556,330 | - | - | - |
| 3/16/1992 | W/H TAX DIV EXXON | (12,542) | - | (12,542) | - | - | 28,543,788 | - | - | - |
| 3/16/1992 | W/H TAX DIV MOBIL | (4,608) | - | (4,608) | - | - | 28,539,180 | - | - | - |
| 3/16/1992 | W/H TAX DIV DU PONT | (16,834) | - | (16,834) | - | - | 28,522,346 | - | - | - |
| 3/16/1992 | W/H TAX DIV GEN MOTORS | (16,416) | - | (16,416) | - | - | 28,505,930 | - | - | - |
| 3/16/1992 | W/H TAX DIV BOEING | (1,080) | - | (1,080) | - | - | 28,504,850 | - | - | - |
| 3/23/1992 | W/H TAX DIV FIDELITY | (762) | - | (762) | - | - | 28,504,089 | - | - | - |
| 3/23/1992 | W/H TAX DIV FIDELITY | (2) | - | (2) | - | - | 28,504,087 | - | - | - |
| 4/10/1992 | CHECK WIRE | 4,299,980 | 4,299,980 | - | - | - | 32,804,067 | - | - | - |
| 4/15/1992 | W/H TAX WALMART DIV | (869) | - | (869) | - | - | 32,803,198 | - | - | - |
| 4/15/1992 | W/H TAX EASTMAN KODAK DIV | (3,360) | - | (3,360) | - | - | 32,799,838 | - | - | - |
| 4/15/1992 | W/H TAX GENL ELECTRIC DIV | (7,128) | - | (7,128) | - | - | 32,792,710 | - | - | - |
| 4/15/1992 | W/H TAX COCA COLA DIV | (2,923) | - | (2,923) | - | - | 32,789,786 | - | - | - |
| 5/15/1992 | W/H TAX DIV AMER EXP | (975) | - | (975) | - | - | 32,788,811 | - | - | - |
| 5/15/1992 | W/H TAX DIV BRISTOL MYERS | (4,037) | - | (4,037) | - | - | 32,784,775 | - | - | - |
| 5/15/1992 | W/H TAX DIV DISNEY | (113) | - | (113) | - | - | 32,784,661 | - | - | - |
| 5/20/1992 | W/H TAX DIV AT&T | (5,346) | - | (5,346) | - | - | 32,779,315 | - | - | - |
| 5/21/1992 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (307) | - | (307) | - | - | 32,779,009 | - | - | - |
| 6/15/1992 | W/H TAX DIV XON | (14,256) | - | (14,256) | - | - | 32,764,753 | - | - | - |
| 6/15/1992 | W/H TAX DIV MOB | (4,824) | - | (4,824) | - | - | 32,759,929 | - | - | - |
| 6/15/1992 | W/H TAX DIV BA | (1,125) | - | (1,125) | - | - | 32,758,804 | - | - | - |
| 6/15/1992 | W/H TAX DIV F | (4,680) | - | (4,680) | - | - | 32,754,124 | - | - | - |
| 6/30/1992 | W/H TAX DIV GM | (17,238) | - | (17,238) | - | - | 32,736,886 | - | - | - |
| 6/30/1992 | W/H TAX DIV AIG | (28) | - | (28) | - | - | 32,736,857 | - | - | - |
| 7/15/1992 | W/H TAX DIV WMT | (893) | - | (893) | - | - | 32,735,964 | - | - | - |
| 7/15/1992 | W/H TAX DIV EK | (3,855) | - | (3,855) | - | - | 32,732,109 | - | - | - |
| 7/15/1992 | W/H TAX DIV KO | (2,986) | - | (2,986) | - | - | 32,729,123 | - | - | - |
| 7/15/1992 | W/H TAX DIV GE | (7,689) | - | (7,689) | - | - | 32,721,434 | - | - | - |
| 7/17/1992 | CHECK WIRE | 8,799,985 | 8,799,985 | - | - | - | 41,521,419 | - | - | - |
| 7/21/1992 | CHECK WIRE | (100,000) | - | (100,000) | - | - | 41,421,419 | - | - | - |
| 7/30/1992 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (580) | - | (580) | - | - | 41,420,839 | - | - | - |
| 8/17/1992 | W/H TAX DIV DIS | (113) | - | (113) | - | - | 41,420,726 | - | - | - |
| 8/17/1992 | W/H TAX DIV BMY | (4,140) | - | (4,140) | - | - | 41,416,586 | - | - | - |
| 8/17/1992 | W/H TAX DIV T | (5,495) | - | (5,495) | - | - | 41,411,091 | - | - | - |
| 8/17/1992 | W/H TAX DIV AXP | (1,050) | - | (1,050) | - | - | 41,410,041 | - | - | - |
| 8/25/1992 | FIDELITY CASH RESERVES SBIW/H TAX DIV FCRXX | (22) | - | (22) | - | - | 41,410,019 | - | - | - |
| 9/15/1992 | W/H TAX DIV DD | (1,346) | - | (1,346) | - | - | 41,408,672 | - | - | - |
| 9/15/1992 | W/H TAX DIV BA | (1,508) | - | (1,508) | - | - | 41,407,165 | - | - | - |
| 9/15/1992 | W/H TAX DIV JNJ | (4,292) | - | (4,292) | - | - | 41,402,873 | - | - | - |
| 9/15/1992 | W/H TAX DIV MOB | (6,288) | - | (6,288) | - | - | 41,396,585 | - | - | - |
| 9/15/1992 | W/H TAX DIV XON | (18,274) | - | (18,274) | - | - | 41,378,311 | - | - | - |
| 9/30/1992 | W/H TAX DIV AIG | (321) | - | (321) | - | - | 41,377,990 | - | - | - |
| 10/15/1992 | W/H TAX DIV GE | (10,691) | - | (10,691) | - | - | 41,367,299 | - | - | - |
| 10/15/1992 | W/H TAX DIV EK | (6,270) | - | (6,270) | - | - | 41,361,029 | - | - | - |
| 10/15/1992 | W/H TAX DIV WMT | (1,110) | - | (1,110) | - | - | 41,359,919 | - | - | - |
| 10/15/1992 | W/H TAX DIV KO | (3,759) | - | (3,759) | - | - | 41,356,160 | - | - | - |
| 11/16/1992 | W/H TAX DIV DIS | (113) | - | (113) | - | - | 41,356,047 | - | - | - |

MADC1345_00000685

BLMIS ACCOUNT NO. 1FN012 - CTR 1 (RYE) (WEBSTER) INV FBO FAIRFIELD SENTRY LTD

| Date | Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 Preference Period Initial Transfers | Column 10 Two Year Initial Transfers | Column 11 Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/16/1992 | W/H TAX DIV BMY | (6,044) | - | (6,044) | - | - | 41,350,002 | - | - | - |
| 11/16/1992 | W/H TAX DIV AXP | (1,568) | - | (1,568) | - | - | 41,348,435 | - | - | - |
| 11/16/1992 | W/H TAX DIV T | (6,861) | - | (6,861) | - | - | 41,341,574 | - | - | - |
| 12/15/1992 | W/H TAX DIV XON | (26,287) | - | (26,287) | - | - | 41,315,287 | - | - | - |
| 12/15/1992 | W/H TAX DIV F | (5,724) | - | (5,724) | - | - | 41,309,563 | - | - | - |
| 12/15/1992 | W/H TAX DIV DO | (4,145) | - | (4,145) | - | - | 41,305,418 | - | - | - |
| 12/15/1992 | W/H TAX DIV MOB | (6,288) | - | (6,288) | - | - | 41,299,130 | - | - | - |
| 12/15/1992 | W/H TAX DIV JNJ | (7,583) | - | (7,583) | - | - | 41,291,547 | - | - | - |
| 12/15/1992 | W/H TAX DIV BA | (2,303) | - | (2,303) | - | - | 41,289,244 | - | - | - |
| 12/30/1992 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (588) | - | (588) | - | - | 41,288,656 | - | - | - |
| 12/31/1992 | W/H TAX DIV AIG | (989) | - | (989) | - | - | 41,287,667 | - | - | - |
| 12/31/1992 | W/H TAX DIV KO | (3,759) | - | (3,759) | - | - | 41,283,908 | - | - | - |
| 1/15/1993 | W/H TAX DIV EK | (11,835) | - | (11,835) | - | - | 41,272,073 | - | - | - |
| 1/15/1993 | W/H TAX DIV WMT | (1,611) | - | (1,611) | - | - | 41,270,462 | - | - | - |
| 1/15/1993 | W/H TAX DIV MRK | (1,988) | - | (1,988) | - | - | 41,268,475 | - | - | - |
| 1/15/1993 | W/H TAX DIV GE | (17,426) | - | (17,426) | - | - | 41,251,049 | - | - | - |
| 2/16/1993 | W/H TAX DIV T | (9,484) | - | (9,484) | - | - | 41,241,565 | - | - | - |
| 2/16/1993 | W/H TAX DIV BMY | (12,031) | - | (12,031) | - | - | 41,229,533 | - | - | - |
| 3/1/1993 | W/H TAX DIV F | (5,756) | - | (5,756) | - | - | 41,223,777 | - | - | - |
| 3/5/1993 | W/H TAX DIV BA | (2,316) | - | (2,316) | - | - | 41,221,461 | - | - | - |
| 3/9/1993 | W/H TAX DIV JNJ | (7,608) | - | (7,608) | - | - | 41,213,853 | - | - | - |
| 3/10/1993 | W/H TAX DIV GM | (22) | - | (22) | - | - | 41,213,831 | - | - | - |
| 3/10/1993 | W/H TAX DIV IBM | (44) | - | (44) | - | - | 41,213,788 | - | - | - |
| 3/10/1993 | W/H TAX DIV DO | (6,331) | - | (6,331) | - | - | 41,207,456 | - | - | - |
| 3/10/1993 | W/H TAX DIV XON | (26,423) | - | (26,423) | - | - | 41,181,033 | - | - | - |
| 3/15/1993 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (600) | - | (600) | - | - | 41,180,433 | - | - | - |
| 3/15/1993 | W/H TAX DIV DD | (4,180) | - | (4,180) | - | - | 41,176,252 | - | - | - |
| 3/19/1993 | W/H TAX DIV AIG | (1,181) | - | (1,181) | - | - | 41,175,071 | - | - | - |
| 3/31/1993 | W/H TAX DIV PEP | (454) | - | (454) | - | - | 41,174,617 | - | - | - |
| 4/1/1993 | W/H TAX DIV EK | (12,870) | - | (12,870) | - | - | 41,161,747 | - | - | - |
| 4/1/1993 | W/H TAX DIV KO | (5,511) | - | (5,511) | - | - | 41,156,236 | - | - | - |
| 4/1/1993 | W/H TAX DIV S | (559) | - | (559) | - | - | 41,155,677 | - | - | - |
| 4/5/1993 | CHECK WIRE | 6,000,000 | 6,000,000 | - | - | - | 47,155,677 | - | - | - |
| 4/12/1993 | W/H TAX DIV WMT | (1,178) | - | (1,178) | - | - | 47,154,499 | - | - | - |
| 4/20/1993 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (69) | - | (69) | - | - | 47,154,430 | - | - | - |
| 4/26/1993 | W/H TAX DIV GE | (19,628) | - | (19,628) | - | - | 47,134,802 | - | - | - |
| 5/3/1993 | W/H TAX DIV T | (11,321) | - | (11,321) | - | - | 47,123,481 | - | - | - |
| 5/10/1993 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (134) | - | (134) | - | - | 47,123,348 | - | - | - |
| 5/20/1993 | W/H TAX DIV DIS | (173) | - | (173) | - | - | 47,123,175 | - | - | - |
| 6/1/1993 | W/H TAX DIV AXP | (524) | - | (524) | - | - | 47,122,650 | - | - | - |
| 6/1/1993 | W/H TAX DIV F | (6,832) | - | (6,832) | - | - | 47,115,819 | - | - | - |
| 6/8/1993 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (191) | - | (191) | - | - | 47,115,628 | - | - | - |
| 6/14/1993 | W/H TAX DIV MMM | (3,884) | - | (3,884) | - | - | 47,111,744 | - | - | - |
| 6/18/1993 | W/H TAX DIV MCD | (755) | - | (755) | - | - | 47,110,989 | - | - | - |
| 6/30/1993 | W/H TAX DIV PEP | (2,995) | - | (2,995) | - | - | 47,107,994 | - | - | - |
| 7/1/1993 | W/H TAX DIV EK | (3,510) | - | (3,510) | - | - | 47,104,484 | - | - | - |
| 7/1/1993 | W/H TAX DIV S | (2,808) | - | (2,808) | - | - | 47,101,676 | - | - | - |
| 7/1/1993 | W/H TAX DIV MRK | (5,850) | - | (5,850) | - | - | 47,095,826 | - | - | - |
| 7/1/1993 | W/H TAX DIV KO | (5,236) | - | (5,236) | - | - | 47,090,590 | - | - | - |
| 7/2/1993 | W/H TAX DIV SLB | (2,106) | - | (2,106) | - | - | 47,088,484 | - | - | - |
| 7/9/1993 | W/H TAX DIV WMT | (1,693) | - | (1,693) | - | - | 47,086,791 | - | - | - |
| 7/22/1993 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (426) | - | (426) | - | - | 47,086,365 | - | - | - |
| 7/26/1993 | W/H TAX DIV GE | (10,319) | - | (10,319) | - | - | 47,076,045 | - | - | - |
| 8/2/1993 | W/H TAX DIV AIT | (4,355) | - | (4,355) | - | - | 47,071,690 | - | - | - |
| 8/2/1993 | W/H TAX DIV SEL | (6,344) | - | (6,344) | - | - | 47,065,346 | - | - | - |
| 8/2/1993 | W/H TAX DIV T | (9,391) | - | (9,391) | - | - | 47,055,955 | - | - | - |
| 8/2/1993 | W/H TAX DIV BMY | (6,817) | - | (6,817) | - | - | 47,049,138 | - | - | - |
| 8/10/1993 | W/H TAX DIV AXP | (2,360) | - | (2,360) | - | - | 47,046,778 | - | - | - |
| 8/16/1993 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (33) | - | (33) | - | - | 47,046,745 | - | - | - |
| 8/20/1993 | W/H TAX DIV DIS | (740) | - | (740) | - | - | 47,046,005 | - | - | - |
| 9/1/1993 | W/H TAX DIV F | (4,914) | - | (4,914) | - | - | 47,041,091 | - | - | - |
| 9/10/1993 | W/H TAX DIV MOB | (7,862) | - | (7,862) | - | - | 47,033,229 | - | - | - |
| 9/10/1993 | W/H TAX DIV XON | (21,228) | - | (21,228) | - | - | 47,012,000 | - | - | - |
| 9/10/1993 | W/H TAX DIV AN | (6,757) | - | (6,757) | - | - | 47,005,243 | - | - | - |
| 9/10/1993 | W/H TAX DIV IBM | (3,071) | - | (3,071) | - | - | 47,002,172 | - | - | - |
| 9/13/1993 | W/H TAX DIV DD | (6,486) | - | (6,486) | - | - | 46,995,686 | - | - | - |
| 9/15/1993 | W/H TAX DIV ARC | (6,596) | - | (6,596) | - | - | 46,989,090 | - | - | - |
| 9/17/1993 | W/H TAX DIV AIG | (718) | - | (718) | - | - | 46,988,372 | - | - | - |

MADC1345_00000686

BLMIS ACCOUNT NO. 1FN012 - CTF GLOBAL FUND LTD V FBO FAIRFIELD SENTRY LTD

Exhibit D

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | Preference Period Initial Transfers | Two Year Initial Transfers | Six Year Initial Transfers |
| 9/17/1993 | W/H TAX DIV MCD | (772) | - | (772) | - | - | 46,987,599 | - | - | - |
| 9/24/1993 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (162) | - | (162) | - | - | 46,987,437 | - | - | - |
| 9/30/1993 | W/H TAX DIV PEP | (2,681) | - | (2,681) | - | - | 46,984,756 | - | - | - |
| 10/1/1993 | W/H TAX DIV MRK | (7,374) | - | (7,374) | - | - | 46,977,383 | - | - | - |
| 10/1/1993 | W/H TAX DIV S | (2,873) | - | (2,873) | - | - | 46,974,510 | - | - | - |
| 10/1/1993 | W/H TAX DIV EK | (3,591) | - | (3,591) | - | - | 46,970,919 | - | - | - |
| 10/1/1993 | W/H TAX DIV KO | (4,884) | - | (4,884) | - | - | 46,966,035 | - | - | - |
| 10/4/1993 | W/H TAX DIV WMT | (1,400) | - | (1,400) | - | - | 46,964,635 | - | - | - |
| 10/13/1994 | W/H TAX DIV HWP | (1,197) | - | (1,197) | - | - | 46,963,438 | - | - | - |
| 10/25/1993 | W/H TAX DIV GE | (12,066) | - | (12,066) | - | - | 46,951,372 | - | - | - |
| 11/1/1993 | W/H TAX DIV BEL | (6,444) | - | (6,444) | - | - | 46,944,928 | - | - | - |
| 11/1/1993 | W/H TAX DIV AIT | (6,617) | - | (6,617) | - | - | 46,938,311 | - | - | - |
| 11/1/1993 | W/H TAX DIV BMY | (8,656) | - | (8,656) | - | - | 46,929,654 | - | - | - |
| 11/1/1993 | W/H TAX DIV T | (9,522) | - | (9,522) | - | - | 46,920,133 | - | - | - |
| 11/10/1993 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (443) | - | (443) | - | - | 46,919,690 | - | - | - |
| 11/19/1993 | W/H TAX DIV DIS | (751) | - | (751) | - | - | 46,918,939 | - | - | - |
| 12/1/1993 | W/H TAX DIV F | (483) | - | (483) | - | - | 46,918,455 | - | - | - |
| 12/1/1993 | W/H TAX DIV INTC | (4,833) | - | (4,833) | - | - | 46,913,622 | - | - | - |
| 12/7/1993 | W/H TAX DIV JNJ | (4,398) | - | (4,398) | - | - | 46,909,224 | - | - | - |
| 12/10/1993 | W/H TAX DIV S | (2,921) | - | (2,921) | - | - | 46,906,303 | - | - | - |
| 12/10/1993 | W/H TAX DIV IBM | (3,021) | - | (3,021) | - | - | 46,903,282 | - | - | - |
| 12/10/1993 | W/H TAX DIV GM | (1,936) | - | (1,936) | - | - | 46,901,347 | - | - | - |
| 12/10/1993 | W/H TAX DIV XON | (19,139) | - | (19,139) | - | - | 46,882,208 | - | - | - |
| 12/10/1993 | W/H TAX DIV MOB | (8,216) | - | (8,216) | - | - | 46,873,992 | - | - | - |
| 12/10/1993 | W/H TAX DIV AN | (5,316) | - | (5,316) | - | - | 46,868,676 | - | - | - |
| 12/13/1993 | W/H TAX DIV MMM | (4,056) | - | (4,056) | - | - | 46,864,619 | - | - | - |
| 12/14/1993 | W/H TAX DIV DD | (7,443) | - | (7,443) | - | - | 46,857,177 | - | - | - |
| 12/14/1993 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (38) | - | (38) | - | - | 46,857,139 | - | - | - |
| 12/15/1993 | W/H TAX DIV ARC | (3,360) | - | (3,360) | - | - | 46,853,779 | - | - | - |
| 12/15/1993 | W/H TAX DIV KO | (4,985) | - | (4,985) | - | - | 46,848,794 | - | - | - |
| 12/17/1993 | W/H TAX DIV AIG | (733) | - | (733) | - | - | 46,848,061 | - | - | - |
| 12/17/1993 | W/H TAX DIV MCD | (788) | - | (788) | - | - | 46,847,273 | - | - | - |
| 1/3/1994 | W/H TAX DIV MRK | (7,526) | - | (7,526) | - | - | 46,839,747 | - | - | - |
| 1/3/1994 | W/H TAX DIV EK | (3,665) | - | (3,665) | - | - | 46,836,082 | - | - | - |
| 1/3/1994 | W/H TAX DIV S | (2,921) | - | (2,921) | - | - | 46,833,161 | - | - | - |
| 1/3/1994 | W/H TAX DIV PEP | (2,737) | - | (2,737) | - | - | 46,830,424 | - | - | - |
| 1/5/1994 | W/H TAX DIV WMT | (1,429) | - | (1,429) | - | - | 46,828,995 | - | - | - |
| 1/11/1994 | CHECK WIRE | 9,000,000 | 9,000,000 | - | - | - | 55,828,995 | - | - | - |
| 1/11/1994 | FIDELITY CASH RESERVES SBI | (101) | - | (101) | - | - | 55,828,894 | - | - | - |
| 1/20/1994 | CHECK WIRE | 500,000 | 500,000 | - | - | - | 56,328,894 | - | - | - |
| 1/31/1994 | CXL 12/10/93 | 2,921 | - | 2,921 | - | - | 56,331,815 | - | - | - |
| 2/1/1994 | W/H TAX DIV BEL | (6,443) | - | (6,443) | - | - | 56,325,373 | - | - | - |
| 2/10/1994 | CHECK WIRE | 2,500,000 | 2,500,000 | - | - | - | 58,825,373 | - | - | - |
| 2/15/1994 | FIDELITY CASH RESERVES SBI | (15) | - | (15) | - | - | 58,825,358 | - | - | - |
| 2/18/1994 | W/H TAX DIV DIS | (664) | - | (664) | - | - | 58,824,693 | - | - | - |
| 3/1/1994 | W/H TAX DIV INTC | (519) | - | (519) | - | - | 58,824,174 | - | - | - |
| 3/1/1994 | W/H TAX DIV F | (4,615) | - | (4,615) | - | - | 58,819,559 | - | - | - |
| 3/8/1994 | W/H TAX DIV JNJ | (4,050) | - | (4,050) | - | - | 58,815,509 | - | - | - |
| 3/8/1994 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (148) | - | (148) | - | - | 58,815,361 | - | - | - |
| 3/10/1994 | W/H TAX DIV IBM | (3,173) | - | (3,173) | - | - | 58,812,188 | - | - | - |
| 3/10/1994 | W/H TAX DIV AN | (6,346) | - | (6,346) | - | - | 58,805,842 | - | - | - |
| 3/10/1994 | W/H TAX DIV XON | (21,184) | - | (21,184) | - | - | 58,784,659 | - | - | - |
| 3/10/1994 | W/H TAX DIV MOB | (7,846) | - | (7,846) | - | - | 58,776,813 | - | - | - |
| 3/10/1994 | W/H TAX DIV GM | (3,346) | - | (3,346) | - | - | 58,773,467 | - | - | - |
| 3/14/1994 | W/H TAX DIV BAC | (3,381) | - | (3,381) | - | - | 58,770,086 | - | - | - |
| 3/14/1994 | W/H TAX DIV DD | (6,854) | - | (6,854) | - | - | 58,763,232 | - | - | - |
| 3/14/1994 | W/H TAX DIV MMM | (4,719) | - | (4,719) | - | - | 58,758,514 | - | - | - |
| 3/15/1994 | W/H TAX DIV ARC | (4,915) | - | (4,915) | - | - | 58,753,598 | - | - | - |
| 3/18/1994 | W/H TAX DIV MCD | (961) | - | (961) | - | - | 58,752,638 | - | - | - |
| 3/18/1994 | W/H TAX DIV AIG | (775) | - | (775) | - | - | 58,751,863 | - | - | - |
| 3/31/1994 | W/H TAX DIV PEP | (3,146) | - | (3,146) | - | - | 58,748,717 | - | - | - |
| 4/4/1994 | W/H TAX DIV KO | (6,077) | - | (6,077) | - | - | 58,742,640 | - | - | - |
| 4/4/1994 | W/H TAX DIV S | (3,813) | - | (3,813) | - | - | 58,738,827 | - | - | - |
| 4/4/1994 | W/H TAX DIV MRK | (8,508) | - | (8,508) | - | - | 58,730,319 | - | - | - |
| 4/8/1994 | CHECK WIRE | 3,000,000 | 3,000,000 | - | - | - | 61,730,319 | - | - | - |
| 4/13/1994 | W/H TAX DIV HWP | (1,529) | - | (1,529) | - | - | 61,728,790 | - | - | - |
| 4/18/1994 | CHECK WIRE | 2,500,000 | 2,500,000 | - | - | - | 64,228,790 | - | - | - |
| 4/20/1994 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (108) | - | (108) | - | - | 64,228,683 | - | - | - |

MADC1345_00000687

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | Preference Period Initial Transfers | Two Year Initial Transfers | Six Year Initial Transfers |
| 4/25/1994 | CHECK | 350,000 | 350,000 | - | - | - | 64,578,683 | - | - | - |
| 4/28/1994 | W/H TAX DIV GE | (14,585) | - | (14,585) | - | - | 64,564,097 | - | - | - |
| 4/29/1994 | W/H TAX DIV DOW | (4,751) | - | (4,751) | - | - | 64,559,346 | - | - | - |
| 5/2/1994 | W/H TAX DIV BMY | (9,858) | - | (9,858) | - | - | 64,549,488 | - | - | - |
| 5/2/1994 | W/H TAX DIV BEL | (8,084) | - | (8,084) | - | - | 64,541,404 | - | - | - |
| 5/2/1994 | W/H TAX DIV AIT | (6,482) | - | (6,482) | - | - | 64,534,923 | - | - | - |
| 5/2/1994 | W/H TAX DIV T | (11,796) | - | (11,796) | - | - | 64,523,127 | - | - | - |
| 5/10/1994 | W/H TAX DIV AXP | (3,139) | - | (3,139) | - | - | 64,519,988 | - | - | - |
| 5/19/1994 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (61) | - | (61) | - | - | 64,519,927 | - | - | - |
| 5/20/1994 | W/H TAX DIV DIS | (968) | - | (968) | - | - | 64,518,959 | - | - | - |
| 6/1/1994 | W/H TAX DIV F | (6,565) | - | (6,565) | - | - | 64,512,394 | - | - | - |
| 6/3/1994 | CHECK WIRE | 3,250,000 | 3,250,000 | - | - | - | 67,762,394 | - | - | - |
| 6/3/1994 | W/H TAX DIV BA | (347) | - | (347) | - | - | 67,762,048 | - | - | - |
| 6/7/1994 | W/H TAX DIV JNJ | (5,555) | - | (5,555) | - | - | 67,756,493 | - | - | - |
| 6/10/1994 | W/H TAX DIV MOB | (9,621) | - | (9,621) | - | - | 67,746,871 | - | - | - |
| 6/10/1994 | W/H TAX DIV GM | (4,168) | - | (4,168) | - | - | 67,742,703 | - | - | - |
| 6/10/1994 | W/H TAX DIV IBM | (4,044) | - | (4,044) | - | - | 67,738,659 | - | - | - |
| 6/10/1994 | W/H TAX DIV AN | (7,861) | - | (7,861) | - | - | 67,730,798 | - | - | - |
| 6/10/1994 | W/H TAX DIV XON | (26,368) | - | (26,368) | - | - | 67,704,430 | - | - | - |
| 6/13/1994 | W/H TAX DIV MMM | (4,893) | - | (4,893) | - | - | 67,699,537 | - | - | - |
| 6/13/1994 | W/H TAX DIV DD | (8,516) | - | (8,516) | - | - | 67,691,021 | - | - | - |
| 6/14/1994 | W/H TAX DIV BAC | (4,054) | - | (4,054) | - | - | 67,686,967 | - | - | - |
| 6/14/1994 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (60) | - | (60) | - | - | 67,686,907 | - | - | - |
| 6/15/1994 | W/H TAX DIV ARC | (5,868) | - | (5,868) | - | - | 67,681,038 | - | - | - |
| 6/17/1994 | W/H TAX DIV AIG | (923) | - | (923) | - | - | 67,680,115 | - | - | - |
| 6/17/1994 | W/H TAX DIV MCD | (1,286) | - | (1,286) | - | - | 67,678,829 | - | - | - |
| 6/30/1994 | W/H TAX DIV PEP | (4,252) | - | (4,252) | - | - | 67,674,577 | - | - | - |
| 7/1/1994 | W/H TAX DIV EK | (594) | - | (594) | - | - | 67,673,983 | - | - | - |
| 7/1/1994 | W/H TAX DIV KO | (7,219) | - | (7,219) | - | - | 67,666,764 | - | - | - |
| 7/1/1994 | W/H TAX DIV S | (4,486) | - | (4,486) | - | - | 67,662,278 | - | - | - |
| 7/1/1994 | W/H TAX DIV MCIC | (669) | - | (669) | - | - | 67,661,609 | - | - | - |
| 7/1/1994 | W/H TAX DIV MRK | (10,448) | - | (10,448) | - | - | 67,651,161 | - | - | - |
| 7/8/1994 | CHECK WIRE | 3,000,000 | 3,000,000 | - | - | - | 70,651,161 | - | - | - |
| 7/8/1994 | W/H TAX DIV WMT | (3,235) | - | (3,235) | - | - | 70,647,926 | - | - | - |
| 7/11/1994 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (114) | - | (114) | - | - | 70,647,811 | - | - | - |
| 7/13/1994 | W/H TAX DIV HWP | (2,174) | - | (2,174) | - | - | 70,645,638 | - | - | - |
| 7/25/1994 | W/H TAX DIV GE | (18,408) | - | (18,408) | - | - | 70,627,230 | - | - | - |
| 7/29/1994 | W/H TAX DIV DOW | (5,667) | - | (5,667) | - | - | 70,621,562 | - | - | - |
| 8/1/1994 | W/H TAX DIV T | (14,234) | - | (14,234) | - | - | 70,607,328 | - | - | - |
| 8/1/1994 | W/H TAX DIV BEL | (9,824) | - | (9,824) | - | - | 70,597,504 | - | - | - |
| 8/1/1994 | W/H TAX DIV AIT | (7,796) | - | (7,796) | - | - | 70,589,708 | - | - | - |
| 8/1/1994 | W/H TAX DIV BMY | (11,804) | - | (11,804) | - | - | 70,577,904 | - | - | - |
| 8/15/1994 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (83) | - | (83) | - | - | 70,577,820 | - | - | - |
| 8/17/1994 | W/H TAX DIV CCI | (175) | - | (175) | - | - | 70,577,645 | - | - | - |
| 8/19/1994 | W/H TAX DIV DIS | (1,187) | - | (1,187) | - | - | 70,576,458 | - | - | - |
| 9/1/1994 | W/H TAX DIV INTC | (5) | - | (5) | - | - | 70,576,453 | - | - | - |
| 9/1/1994 | W/H TAX DIV INTC | (58) | - | (58) | - | - | 70,576,395 | - | - | - |
| 9/1/1994 | W/H TAX DIV F | (7,364) | - | (7,364) | - | - | 70,569,032 | - | - | - |
| 9/2/1994 | W/H TAX DIV BA | (612) | - | (612) | - | - | 70,568,420 | - | - | - |
| 9/6/1994 | W/H TAX DIV JNJ | (6,184) | - | (6,184) | - | - | 70,562,236 | - | - | - |
| 9/8/1994 | CHECK WIRE | 3,500,000 | 3,500,000 | - | - | - | 74,062,236 | - | - | - |
| 9/12/1994 | W/H TAX DIV XON | (29,371) | - | (29,371) | - | - | 74,032,865 | - | - | - |
| 9/12/1994 | W/H TAX DIV MOB | (10,707) | - | (10,707) | - | - | 74,022,158 | - | - | - |
| 9/12/1994 | W/H TAX DIV IBM | (4,565) | - | (4,565) | - | - | 74,017,592 | - | - | - |
| 9/12/1994 | W/H TAX DIV GM | (4,701) | - | (4,701) | - | - | 74,012,891 | - | - | - |
| 9/12/1994 | W/H TAX DIV AN | (8,778) | - | (8,778) | - | - | 74,004,113 | - | - | - |
| 9/12/1994 | W/H TAX DIV MMM | (5,342) | - | (5,342) | - | - | 73,998,771 | - | - | - |
| 9/12/1994 | W/H TAX DIV DD | (10,219) | - | (10,219) | - | - | 73,988,553 | - | - | - |
| 9/12/1994 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (45) | - | (45) | - | - | 73,988,507 | - | - | - |
| 9/15/1994 | W/H TAX DIV BAC | (4,478) | - | (4,478) | - | - | 73,984,029 | - | - | - |
| 9/15/1994 | W/H TAX DIV ARC | (6,556) | - | (6,556) | - | - | 73,977,473 | - | - | - |
| 9/16/1994 | W/H TAX DIV AIG | (1,173) | - | (1,173) | - | - | 73,976,300 | - | - | - |
| 9/16/1994 | W/H TAX DIV MCD | (78) | - | (78) | - | - | 73,976,221 | - | - | - |
| 9/30/1994 | W/H TAX DIV PEP | (4,737) | - | (4,737) | - | - | 73,971,484 | - | - | - |
| 10/3/1994 | W/H TAX DIV WMT | (3,583) | - | (3,583) | - | - | 73,967,901 | - | - | - |
| 10/3/1994 | W/H TAX DIV EK | (1,072) | - | (1,072) | - | - | 73,966,829 | - | - | - |
| 10/3/1994 | W/H TAX DIV MRK | (12,544) | - | (12,544) | - | - | 73,954,285 | - | - | - |
| 10/3/1994 | W/H TAX DIV KO | (8,090) | - | (8,090) | - | - | 73,946,195 | - | - | - |

MADC1345_00000688

Exhibit D

**BLMIS ACCOUNT NO. 1FN012 - CTF6 (CONT'D) FBO FAIRFIELD SENTRY LTD**

| Column 1<br>Date | Column 2<br>Transaction<br>Description | Column 3<br>Transaction Amount<br>Reported in<br>Customer Statement | Column 4<br>Cash<br>Deposits | Column 5<br>Cash<br>Withdrawals | Column 6<br>Transfers of<br>Principal In | Column 7<br>Transfers of<br>Principal Out | Column 8<br>Balance of<br>Principal | Column 9<br>Preference<br>Period Initial<br>Transfers | Column 10<br>Two Year<br>Initial<br>Transfers | Column 11<br>Six Year<br>Initial<br>Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 10/11/1994 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (119) | - | (119) | - | - | 73,946,076 | - | - | - |
| 10/12/1994 | W/H TAX DIV HWP | (2,556) | - | (2,556) | - | - | 73,943,520 | - | - | - |
| 10/14/1994 | W/H TAX DIV C | (332) | - | (332) | - | - | 73,943,188 | - | - | - |
| 10/25/1994 | W/H TAX DIV GE | (20,714) | - | (20,714) | - | - | 73,922,475 | - | - | - |
| 10/28/1994 | CHECK WIRE A/O 10/26/94 | 500,000 | 500,000 | - | - | - | 74,422,475 | - | - | - |
| 10/28/1994 | W/H TAX DIV DOW | (6,313) | - | (6,313) | - | - | 74,416,162 | - | - | - |
| 11/1/1994 | W/H TAX DIV BEL | (11,051) | - | (11,051) | - | - | 74,405,111 | - | - | - |
| 11/1/1994 | W/H TAX DIV AIT | (8,794) | - | (8,794) | - | - | 74,396,316 | - | - | - |
| 11/1/1994 | W/H TAX DIV S | (4,955) | - | (4,955) | - | - | 74,391,362 | - | - | - |
| 11/1/1994 | W/H TAX DIV T | (15,988) | - | (15,988) | - | - | 74,375,373 | - | - | - |
| 11/1/1994 | W/H TAX DIV BMY | (13,185) | - | (13,185) | - | - | 74,362,188 | - | - | - |
| 11/15/1994 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (79) | - | (79) | - | - | 74,362,110 | - | - | - |
| 11/17/1994 | W/H TAX DIV CCI | (1,784) | - | (1,784) | - | - | 74,360,326 | - | - | - |
| 12/1/1994 | W/H TAX DIV F | (7,834) | - | (7,834) | - | - | 74,352,492 | - | - | - |
| 12/1/1994 | W/H TAX DIVINTC | (761) | - | (761) | - | - | 74,351,731 | - | - | - |
| 12/6/1994 | W/H TAX DIV JNJ | (5,749) | - | (5,749) | - | - | 74,345,982 | - | - | - |
| 12/12/1994 | W/H TAX DIV MMM | (5,618) | - | (5,618) | - | - | 74,340,364 | - | - | - |
| 12/12/1994 | W/H TAX DIV XON | (27,950) | - | (27,950) | - | - | 74,312,414 | - | - | - |
| 12/12/1994 | W/H TAX DIV IBM | (4,361) | - | (4,361) | - | - | 74,308,053 | - | - | - |
| 12/12/1994 | W/H TAX DIV AN | (8,286) | - | (8,286) | - | - | 74,299,768 | - | - | - |
| 12/12/1994 | W/H TAX DIV MCIC | (496) | - | (496) | - | - | 74,299,272 | - | - | - |
| 12/12/1994 | W/H TAX DIV GM | (4,599) | - | (4,599) | - | - | 74,294,673 | - | - | - |
| 12/12/1994 | W/H TAX DIV MOB | (10,783) | - | (10,783) | - | - | 74,283,890 | - | - | - |
| 12/14/1994 | W/H TAX DIV DD | (11,553) | - | (11,553) | - | - | 74,272,337 | - | - | - |
| 12/14/1994 | W/H TAX DIV BAC | (4,469) | - | (4,469) | - | - | 74,267,868 | - | - | - |
| 12/15/1994 | W/H TAX DIV ARC | (6,541) | - | (6,541) | - | - | 74,261,327 | - | - | - |
| 12/15/1994 | W/H TAX DIV KO | (7,777) | - | (7,777) | - | - | 74,253,550 | - | - | - |
| 12/15/1994 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (17) | - | (17) | - | - | 74,253,534 | - | - | - |
| 12/16/1994 | W/H TAX DIV MCD | (1,292) | - | (1,292) | - | - | 74,252,242 | - | - | - |
| 12/16/1994 | W/H TAX DIV AIG | (1,101) | - | (1,101) | - | - | 74,251,141 | - | - | - |
| 1/3/1995 | W/H TAX DIV EK | (4,152) | - | (4,152) | - | - | 74,246,989 | - | - | - |
| 1/3/1995 | W/H TAX DIV MRK | (11,725) | - | (11,725) | - | - | 74,235,264 | - | - | - |
| 1/3/1995 | W/H TAX DIV S | (4,150) | - | (4,150) | - | - | 74,231,114 | - | - | - |
| 1/3/1995 | W/H TAX DIV PEP | (4,307) | - | (4,307) | - | - | 74,226,808 | - | - | - |
| 1/5/1995 | W/H TAX DIV WMT | (2,916) | - | (2,916) | - | - | 74,223,892 | - | - | - |
| 1/12/1995 | CHECK WIRE | (5,000,000) | - | (5,000,000) | - | - | 69,223,892 | - | - | - |
| 1/13/1995 | W/H TAX DIV C | (1,378) | - | (1,378) | - | - | 69,222,514 | - | - | - |
| 1/13/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (30) | - | (30) | - | - | 69,222,483 | - | - | - |
| 1/25/1995 | W/H TAX DIV GE | (9,507) | - | (9,507) | - | - | 69,212,977 | - | - | - |
| 1/25/1995 | CHECK WIRE | (1,000,000) | - | (1,000,000) | - | - | 68,212,977 | - | - | - |
| 1/30/1995 | W/H TAX DIV DOW | (2,299) | - | (2,299) | - | - | 68,210,678 | - | - | - |
| 1/31/1995 | TRANS TO 1FN06940 *(1FN069)* | (1,197,585) | - | - | - | (1,197,585) | 67,013,093 | - | - | - |
| 1/31/1995 | TRANS FROM 1FN04530 *(1FN045)* | 350,000 | - | - | 350,000 | - | 67,363,093 | - | - | - |
| 2/1/1995 | W/H TAX DIV T | (7,263) | - | (7,263) | - | - | 67,355,830 | - | - | - |
| 2/1/1995 | W/H TAX DIV BMY | (5,526) | - | (5,526) | - | - | 67,350,305 | - | - | - |
| 2/1/1995 | W/H TAX DIV AIT | (3,734) | - | (3,734) | - | - | 67,346,571 | - | - | - |
| 2/1/1995 | W/H TAX DIV BEL | (4,339) | - | (4,339) | - | - | 67,342,232 | - | - | - |
| 2/3/1995 | CHECK WIRE | 6,000,000 | 6,000,000 | - | - | - | 73,342,232 | - | - | - |
| 2/8/1995 | CHECK WIRE | 550,000 | 550,000 | - | - | - | 73,892,232 | - | - | - |
| 2/10/1995 | W/H TAX DIV AXP | (1,592) | - | (1,592) | - | - | 73,890,641 | - | - | - |
| 2/13/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXXX | (9) | - | (9) | - | - | 73,890,632 | - | - | - |
| 2/17/1995 | W/H TAX DIV DIS | (560) | - | (560) | - | - | 73,890,072 | - | - | - |
| 2/17/1995 | W/H TAX DIV CCI | (3,301) | - | (3,301) | - | - | 73,886,770 | - | - | - |
| 2/17/1995 | TRANS TO 1FN04530 *(1FN045)* | (500,000) | - | - | - | (500,000) | 73,386,770 | - | - | - |
| 2/28/1995 | TRANS TO 1FN06940 *(1FN069)* | (1,256,608) | - | - | - | (1,256,608) | 72,130,162 | - | - | - |
| 3/1/1995 | W/H TAX DIV F | (7,970) | - | (7,970) | - | - | 72,122,192 | - | - | - |
| 3/1/1995 | W/H TAX DIV INTC | (755) | - | (755) | - | - | 72,121,438 | - | - | - |
| 3/3/1995 | W/H TAX DIV BA | (2,358) | - | (2,358) | - | - | 72,119,080 | - | - | - |
| 3/6/1995 | W/H TAX DIV SO | (5,993) | - | (5,993) | - | - | 72,113,087 | - | - | - |
| 3/7/1995 | W/H TAX DIV JNJ | (5,243) | - | (5,243) | - | - | 72,107,844 | - | - | - |
| 3/7/1995 | CHECK WIRE | (1,800,000) | - | (1,800,000) | - | - | 70,307,844 | - | - | - |
| 3/10/1995 | W/H TAX DIV XON | (27,117) | - | (27,117) | - | - | 70,280,727 | - | - | - |
| 3/10/1995 | W/H TAX DIV GM | (4,402) | - | (4,402) | - | - | 70,276,325 | - | - | - |
| 3/10/1995 | W/H TAX DIV AN | (8,489) | - | (8,489) | - | - | 70,267,837 | - | - | - |
| 3/10/1995 | W/H TAX DIV IBM | (4,127) | - | (4,127) | - | - | 70,263,710 | - | - | - |
| 3/10/1995 | W/H TAX DIV MOB | (10,022) | - | (10,022) | - | - | 70,253,689 | - | - | - |
| 3/13/1995 | W/H TAX DIV MMM | (5,798) | - | (5,798) | - | - | 70,247,891 | - | - | - |
| 3/14/1995 | W/H TAX DIV BAC | (4,921) | - | (4,921) | - | - | 70,242,970 | - | - | - |

MADC1345_00000689

BLMIS ACCOUNT NO. 1FN012 - CTIF (AKA GERAINT) (FINANCE) LTD IV FBO FAIRFIELD SENTRY LTD

| Column 1<br>Date | Column 2<br>Transaction Description | Column 3<br>Transaction Amount Reported in Customer Statement | Column 4<br>Cash Deposits | Column 5<br>Cash Withdrawals | Column 6<br>Transfers of Principal In | Column 7<br>Transfers of Principal Out | Column 8<br>Balance of Principal | Column 9<br>Preference Period Initial Transfers | Column 10<br>Two Year Initial Transfers | Column 11<br>Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 3/14/1995 | W/H TAX DIV DD | (9,236) | - | (9,236) | - | - | 70,233,734 | - | - | - |
| 3/15/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (53) | - | (53) | - | - | 70,233,681 | - | - | - |
| 3/15/1995 | W/H TAX DIV ARC | (6,485) | - | (6,485) | - | - | 70,227,197 | - | - | - |
| 3/17/1995 | W/H TAX DIV MCD | (1,282) | - | (1,282) | - | - | 70,225,915 | - | - | - |
| 3/31/1995 | W/H TAX DIV PEP | (4,146) | - | (4,146) | - | - | 70,221,769 | - | - | - |
| 3/31/1995 | TRANS TO 1FN069 40 (1FN069) | (1,617,935) | - | - | - | (1,617,935) | 68,603,834 | - | - | - |
| 4/3/1995 | W/H TAX DIV KO | (8,676) | - | (8,676) | - | - | 68,595,158 | - | - | - |
| 4/3/1995 | W/H TAX DIV S | (4,279) | - | (4,279) | - | - | 68,590,879 | - | - | - |
| 4/3/1995 | W/H TAX DIV EK | (3,950) | - | (3,950) | - | - | 68,586,928 | - | - | - |
| 4/3/1995 | W/H TAX DIV AIG | (1,042) | - | (1,042) | - | - | 68,585,887 | - | - | - |
| 4/3/1995 | W/H TAX DIV MRK | (11,350) | - | (11,350) | - | - | 68,574,537 | - | - | - |
| 4/7/1995 | W/H TAX DIV SLB | (2,246) | - | (2,246) | - | - | 68,572,291 | - | - | - |
| 4/11/1995 | CHECK WIRE | 1,950,000 | 1,950,000 | - | - | - | 70,522,291 | - | - | - |
| 4/12/1995 | W/H TAX DIV HWP | (2,235) | - | (2,235) | - | - | 70,520,056 | - | - | - |
| 4/17/1995 | W/H TAX DIV WMT | (3,611) | - | (3,611) | - | - | 70,516,446 | - | - | - |
| 4/17/1995 | W/H TAX DIV C | (4,265) | - | (4,265) | - | - | 70,512,181 | - | - | - |
| 4/24/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (92) | - | (92) | - | - | 70,512,089 | - | - | - |
| 4/25/1995 | W/H TAX DIV GE | (19,967) | - | (19,967) | - | - | 70,492,122 | - | - | - |
| 4/28/1995 | W/H TAX DIV DOW | (4,848) | - | (4,848) | - | - | 70,487,274 | - | - | - |
| 4/28/1995 | TRANS TO 1FN069 40 (1FN069) | (4,314,060) | - | - | - | (4,314,060) | 66,173,214 | - | - | - |
| 5/1/1995 | W/H TAX DIV BMY | (11,571) | - | (11,571) | - | - | 66,161,642 | - | - | - |
| 5/1/1995 | W/H TAX DIV T | (15,244) | - | (15,244) | - | - | 66,146,399 | - | - | - |
| 5/1/1995 | W/H TAX DIV AIT | (7,819) | - | (7,819) | - | - | 66,138,580 | - | - | - |
| 5/1/1995 | W/H TAX DIV BEL | (9,197) | - | (9,197) | - | - | 66,129,383 | - | - | - |
| 5/12/1995 | CHECK WIRE | 3,100,000 | 3,100,000 | - | - | - | 69,229,383 | - | - | - |
| 5/17/1995 | W/H TAX DIV CCI | (3,294) | - | (3,294) | - | - | 69,226,089 | - | - | - |
| 5/19/1995 | W/H TAX DIV DIS | (1,414) | - | (1,414) | - | - | 69,224,675 | - | - | - |
| 5/23/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FORXX | (41) | - | (41) | - | - | 69,224,635 | - | - | - |
| 5/31/1995 | TRANS TO 1FN069 40 (1FN069) | (2,163,460) | - | - | - | (2,163,460) | 67,061,175 | - | - | - |
| 6/1/1995 | W/H TAX DIV F | (9,077) | - | (9,077) | - | - | 67,052,098 | - | - | - |
| 6/1/1995 | W/H TAX DIV INTC | (703) | - | (703) | - | - | 67,051,395 | - | - | - |
| 6/2/1995 | W/H TAX DIV BA | (2,379) | - | (2,379) | - | - | 67,049,016 | - | - | - |
| 6/6/1995 | W/H TAX DIV SD | (5,582) | - | (5,582) | - | - | 67,043,434 | - | - | - |
| 6/6/1995 | W/H TAX DIV JNJ | (6,039) | - | (6,039) | - | - | 67,037,395 | - | - | - |
| 6/12/1995 | CHECK WIRE | 2,700,000 | 2,700,000 | - | - | - | 69,737,395 | - | - | - |
| 6/12/1995 | W/H TAX DIV XON | (26,352) | - | (26,352) | - | - | 69,711,043 | - | - | - |
| 6/12/1995 | W/H TAX DIV AN | (8,345) | - | (8,345) | - | - | 69,702,699 | - | - | - |
| 6/12/1995 | W/H TAX DIV MMM | (5,505) | - | (5,505) | - | - | 69,697,194 | - | - | - |
| 6/12/1995 | W/H TAX DIV MOB | (10,157) | - | (10,157) | - | - | 69,687,038 | - | - | - |
| 6/12/1995 | W/H TAX DIV GM | (6,368) | - | (6,368) | - | - | 69,680,669 | - | - | - |
| 6/12/1995 | W/H TAX DIV IBM | (4,209) | - | (4,209) | - | - | 69,676,460 | - | - | - |
| 6/12/1995 | W/H TAX DIV DD | (7,993) | - | (7,993) | - | - | 69,668,467 | - | - | - |
| 6/14/1995 | W/H TAX DIV BAC | (4,714) | - | (4,714) | - | - | 69,663,753 | - | - | - |
| 6/15/1995 | W/H TAX DIV ARC | (6,039) | - | (6,039) | - | - | 69,657,714 | - | - | - |
| 6/16/1995 | W/H TAX DIV AIG | (1,066) | - | (1,066) | - | - | 69,656,647 | - | - | - |
| 6/16/1995 | W/H TAX DIV MCD | (1,405) | - | (1,405) | - | - | 69,655,242 | - | - | - |
| 6/19/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FORXX | (21) | - | (21) | - | - | 69,655,221 | - | - | - |
| 6/23/1995 | W/H TAX DIV MCIC | (519) | - | (519) | - | - | 69,654,702 | - | - | - |
| 6/30/1995 | W/H TAX DIV PEP | (4,778) | - | (4,778) | - | - | 69,649,923 | - | - | - |
| 6/30/1995 | TRANS TO 1FN069 40 (1FN069) | (3,467,241) | - | - | - | (3,467,241) | 66,182,682 | - | - | - |
| 7/3/1995 | W/H TAX DIV SLB | (2,611) | - | (2,611) | - | - | 66,180,071 | - | - | - |
| 7/3/1995 | W/H TAX DIV KO | (8,481) | - | (8,481) | - | - | 66,171,590 | - | - | - |
| 7/3/1995 | W/H TAX DIV MRK | (11,554) | - | (11,554) | - | - | 66,160,037 | - | - | - |
| 7/10/1995 | W/H TAX DIV WMT | (3,503) | - | (3,503) | - | - | 66,156,533 | - | - | - |
| 7/12/1995 | CHECK WIRE | (5,000,000) | - | (5,000,000) | - | - | 61,156,533 | - | - | - |
| 7/14/1995 | W/H TAX DIV C | (5,387) | - | (5,387) | - | - | 61,151,147 | - | - | - |
| 7/19/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (235) | - | (235) | - | - | 61,150,912 | - | - | - |
| 7/25/1995 | W/H TAX DIV GE | (21,704) | - | (21,704) | - | - | 61,129,209 | - | - | - |
| 7/28/1995 | W/H TAX DIV DOW | (5,955) | - | (5,955) | - | - | 61,123,253 | - | - | - |
| 7/31/1995 | TRANS TO 1FN069-40 (1FN069) | (1,094,562) | - | - | - | (1,094,562) | 60,028,691 | - | - | - |
| 8/1/1995 | W/H TAX DIV T | (15,920) | - | (15,920) | - | - | 60,012,771 | - | - | - |
| 8/1/1995 | W/H TAX DIV AIT | (8,306) | - | (8,306) | - | - | 60,004,465 | - | - | - |
| 8/1/1995 | W/H TAX DIV BMY | (11,696) | - | (11,696) | - | - | 59,992,769 | - | - | - |
| 8/1/1995 | W/H TAX DIV BEL | (9,382) | - | (9,382) | - | - | 59,983,387 | - | - | - |
| 8/8/1995 | CHECK WIRE | (700,000) | - | (700,000) | - | - | 59,283,387 | - | - | - |
| 8/10/1995 | W/H TAX DIV AXP | (3,383) | - | (3,383) | - | - | 59,280,004 | - | - | - |
| 8/16/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (108) | - | (108) | - | - | 59,279,895 | - | - | - |
| 8/18/1995 | W/H TAX DIV DIS | (1,426) | - | (1,426) | - | - | 59,278,470 | - | - | - |

MADC1345_00000690

BLMIS ACCOUNT NO. 1FN012 - CTP FUND MANAGEMENT LTD FBO FAIRFIELD SENTRY LTD

| Column 1<br><br>Date | Column 2<br>Transaction<br>Description | Column 3<br>Transaction Amount<br>Reported in<br>Customer Statement | Column 4<br>Cash<br>Deposits | Column 5<br>Cash<br>Withdrawals | Column 6<br>Transfers of<br>Principal In | Column 7<br>Transfers of<br>Principal Out | Column 8<br>Balance of<br>Principal | Column 9<br>Preference<br>Period Initial<br>Transfers | Column 10<br>Two Year<br>Initial<br>Transfers | Column 11<br>Six Year<br>Initial<br>Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 8/28/1995 | TRANS FROM 1FN04530 *(1FN045)* | 150,000 | - | - | 150,000 | - | 59,428,470 | - | - | - |
| 8/28/1995 | TRANS FROM 1FN06940 *(1FN069)* | 5,913 | - | - | 5,913 | - | 59,434,383 | - | - | - |
| 9/1/1995 | W/H TAX DIV BA | (2,576) | - | (2,576) | - | - | 59,431,806 | - | - | - |
| 9/1/1995 | W/H TAX DIV INTC | (1,015) | - | (1,015) | - | - | 59,430,791 | - | - | - |
| 9/1/1995 | W/H TAX DIV F | (9,800) | - | (9,800) | - | - | 59,420,991 | - | - | - |
| 9/5/1995 | W/H TAX DIV JNJ | (6,523) | - | (6,523) | - | - | 59,414,469 | - | - | - |
| 9/6/1995 | CHECK WIRE | 3,600,000 | 3,600,000 | - | - | - | 63,014,469 | - | - | - |
| 9/6/1995 | W/H TAX DIV SO | (6,029) | - | (6,029) | - | - | 63,008,440 | - | - | - |
| 9/11/1995 | W/H TAX DIV IBM | (4,547) | - | (4,547) | - | - | 63,003,892 | - | - | - |
| 9/11/1995 | W/H TAX DIV MOB | (10,974) | - | (10,974) | - | - | 62,992,919 | - | - | - |
| 9/11/1995 | W/H TAX DIV XON | (28,467) | - | (28,467) | - | - | 62,964,452 | - | - | - |
| 9/11/1995 | W/H TAX DIV GM | (6,887) | - | (6,887) | - | - | 62,957,564 | - | - | - |
| 9/11/1995 | W/H TAX DIV AN | (9,022) | - | (9,022) | - | - | 62,948,543 | - | - | - |
| 9/11/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (59) | - | (59) | - | - | 62,948,484 | - | - | - |
| 9/12/1995 | W/H TAX DIV DD | (8,639) | - | (8,639) | - | - | 62,939,845 | - | - | - |
| 9/12/1995 | W/H TAX DIV MMM | (5,964) | - | (5,964) | - | - | 62,933,881 | - | - | - |
| 9/14/1995 | CHECK WIRE | 3,100,000 | 3,100,000 | - | - | - | 66,033,881 | - | - | - |
| 9/15/1995 | W/H TAX DIV ARC | (473) | - | (473) | - | - | 66,033,408 | - | - | - |
| 9/15/1995 | W/H TAX DIV MCD | (1,439) | - | (1,439) | - | - | 66,031,969 | - | - | - |
| 9/15/1995 | W/H TAX DIV ARC | (6,504) | - | (6,504) | - | - | 66,025,464 | - | - | - |
| 9/22/1995 | W/H TAX DIV AIG | (1,213) | - | (1,213) | - | - | 66,024,251 | - | - | - |
| 9/29/1995 | W/H TAX DIV PEP | (4,896) | - | (4,896) | - | - | 66,019,355 | - | - | - |
| 9/29/1995 | TRANS TO 1FN06940 *(1FN069)* | (2,373,896) | - | - | - | (2,373,896) | 63,645,460 | - | - | - |
| 10/2/1995 | W/H TAX DIV KO | (8,937) | - | (8,937) | - | - | 63,636,523 | - | - | - |
| 10/2/1995 | W/H TAX DIV SLB | (2,675) | - | (2,675) | - | - | 63,633,848 | - | - | - |
| 10/2/1995 | W/H TAX DIV MRK | (13,416) | - | (13,416) | - | - | 63,620,433 | - | - | - |
| 10/3/1995 | W/H TAX DIV WMT | (3,591) | - | (3,591) | - | - | 63,616,842 | - | - | - |
| 10/12/1995 | CHECK WIRE | (10,300,000) | - | (10,300,000) | - | - | 53,316,842 | - | - | - |
| 10/16/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (3) | - | (3) | - | - | 53,316,839 | - | - | - |
| 10/19/1995 | TRANS FROM 1FN04530 *(1FN045)* | 5,000,000 | - | - | 5,000,000 | - | 58,316,839 | - | - | - |
| 10/25/1995 | W/H TAX DIV GE | (20,505) | - | (20,505) | - | - | 58,296,334 | - | - | - |
| 10/27/1995 | TRANS TO 1FN06940 *(1FN069)* | (271,194) | - | - | - | (271,194) | 58,025,140 | - | - | - |
| 10/30/1995 | W/H TAX DIV DOW | (5,811) | - | (5,811) | - | - | 58,019,329 | - | - | - |
| 11/1/1995 | W/H TAX DIV AIT | (8,101) | - | (8,101) | - | - | 58,011,228 | - | - | - |
| 11/1/1995 | W/H TAX DIV BEL | (8,875) | - | (8,875) | - | - | 58,002,353 | - | - | - |
| 11/1/1995 | W/H TAX DIV NYN | (7,065) | - | (7,065) | - | - | 57,995,287 | - | - | - |
| 11/1/1995 | W/H TAX DIV BMY | (10,946) | - | (10,946) | - | - | 57,984,341 | - | - | - |
| 11/1/1995 | W/H TAX DIV T | (15,342) | - | (15,342) | - | - | 57,968,999 | - | - | - |
| 11/8/1995 | CHECK WIRE | 400,000 | 400,000 | - | - | - | 58,368,999 | - | - | - |
| 11/10/1995 | W/H TAX DIV AXP | (3,170) | - | (3,170) | - | - | 58,365,829 | - | - | - |
| 11/17/1995 | W/H TAX DIV DIS | (1,331) | - | (1,331) | - | - | 58,364,498 | - | - | - |
| 11/17/1995 | W/H TAX DIV CCI | (3,381) | - | (3,381) | - | - | 58,361,117 | - | - | - |
| 11/20/1995 | FIDELITY CASH RESERVS W/H TAX DIV FRCXX | (4) | - | (4) | - | - | 58,361,113 | - | - | - |
| 11/24/1995 | TRANS TO 1FN06940 *(1FN069)* | (487,914) | - | - | - | (487,914) | 57,873,199 | - | - | - |
| 11/24/1995 | TRANS TO 1FN04530 *(1FN045)* | (125,000) | - | - | - | (125,000) | 57,748,199 | - | - | - |
| 12/1/1995 | W/H TAX DIV BA | (2,465) | - | (2,465) | - | - | 57,745,734 | - | - | - |
| 12/1/1995 | W/H TAX DIV INTC | (930) | - | (930) | - | - | 57,744,804 | - | - | - |
| 12/1/1995 | W/H TAX DIV F | (10,848) | - | (10,848) | - | - | 57,733,956 | - | - | - |
| 12/5/1995 | W/H TAX DIV JNJ | (6,044) | - | (6,044) | - | - | 57,727,913 | - | - | - |
| 12/7/1995 | CHECK WIRE | 5,500,000 | 5,500,000 | - | - | - | 63,227,913 | - | - | - |
| 12/11/1995 | W/H TAX DIV MOB | (10,425) | - | (10,425) | - | - | 63,217,487 | - | - | - |
| 12/11/1995 | W/H TAX DIV IBM | (4,050) | - | (4,050) | - | - | 63,213,437 | - | - | - |
| 12/11/1995 | W/H TAX DIV AN | (8,453) | - | (8,453) | - | - | 63,204,984 | - | - | - |
| 12/11/1995 | W/H TAX DIV GM | (6,340) | - | (6,340) | - | - | 63,198,645 | - | - | - |
| 12/11/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (3) | - | (3) | - | - | 63,198,642 | - | - | - |
| 12/12/1995 | W/H TAX DIV XON | (26,943) | - | (26,943) | - | - | 63,171,699 | - | - | - |
| 12/12/1995 | W/H TAX DIV MMM | (5,628) | - | (5,628) | - | - | 63,166,070 | - | - | - |
| 12/14/1995 | W/H TAX DIV KO | (8,425) | - | (8,425) | - | - | 63,157,646 | - | - | - |
| 12/14/1995 | W/H TAX DIV BAC | (4,860) | - | (4,860) | - | - | 63,152,785 | - | - | - |
| 12/15/1995 | W/H TAX DIV KO | (8,213) | - | (8,213) | - | - | 63,144,572 | - | - | - |
| 12/15/1995 | W/H TAX DIV MCD | (1,331) | - | (1,331) | - | - | 63,143,241 | - | - | - |
| 12/22/1995 | W/H TAX DIV AIG | (1,138) | - | (1,138) | - | - | 63,142,103 | - | - | - |
| 12/29/1995 | TRANS TO 1FN06940 *(1FN069)* | (5,770,514) | - | - | - | (5,770,514) | 57,371,590 | - | - | - |
| 1/2/1996 | W/H TAX DIV PEP | (4,649) | - | (4,649) | - | - | 57,366,941 | - | - | - |
| 1/2/1996 | W/H TAX DIV EK | (3,945) | - | (3,945) | - | - | 57,362,996 | - | - | - |
| 1/2/1996 | W/H TAX DIV MRK | (12,454) | - | (12,454) | - | - | 57,350,542 | - | - | - |
| 1/5/1996 | W/H TAX DIV WMT | (3,346) | - | (3,346) | - | - | 57,347,196 | - | - | - |
| 1/5/1996 | CHECK WIRE | (6,400,000) | - | (6,400,000) | - | - | 50,947,196 | - | - | - |

MADC1345_00000691

Exhibit D

BLMIS ACCOUNT NO. 1FN012 - CITCO GLOBAL CUSTODY NV FBO FAIRFIELD SENTRY LTD

| Column 1<br>Date | Column 2<br>Transaction<br>Description | Column 3<br>Transaction Amount<br>Reported in<br>Customer Statement | Column 4<br>Cash<br>Deposits | Column 5<br>Cash<br>Withdrawals | Column 6<br>Transfers of<br>Principal In | Column 7<br>Transfers of<br>Principal Out | Column 8<br>Balance of<br>Principal | Column 9<br>Preference<br>Period Initial<br>Transfers | Column 10<br>Two Year<br>Initial<br>Transfers | Column 11<br>Six Year<br>Initial<br>Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 1/12/1996 | W/H TAX DIV C | (6,619) | - | (6,619) | - | - | 50,940,577 | - | - | - |
| 1/18/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (6) | - | (6) | - | - | 50,940,572 | - | - | - |
| 1/22/1996 | CHECK WIRE | 229,598 | 229,598 | - | - | - | 51,170,170 | - | - | - |
| 1/25/1996 | CANCEL CHECK WIRE 1/22/96 | (229,598) | (229,598) | - | - | - | 50,940,572 | - | - | - |
| 1/31/1996 | TRANS TO 1FN06940 (1FN069) | (66,792) | - | - | - | (66,792) | 50,873,780 | - | - | - |
| 2/7/1996 | CHECK WIRE | (3,100,000) | - | (3,100,000) | - | - | 47,773,780 | - | - | - |
| 2/20/1996 | W/H TAX DIV CCI | (5,136) | - | (5,136) | - | - | 47,768,644 | - | - | - |
| 2/20/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (50) | - | (50) | - | - | 47,768,594 | - | - | - |
| 2/29/1996 | TRANS TO 1FN06940 (1FN069) | (7,803,681) | - | - | - | (7,803,681) | 39,964,913 | - | - | - |
| 3/1/1996 | W/H TAX DIV INTC | (871) | - | (871) | - | - | 39,964,041 | - | - | - |
| 3/1/1996 | W/H TAX DIV F | (9,865) | - | (9,865) | - | - | 39,954,176 | - | - | - |
| 3/1/1996 | W/H TAX DIV COL | (342) | - | (342) | - | - | 39,953,834 | - | - | - |
| 3/1/1996 | W/H TAX DIV BA | (2,310) | - | (2,310) | - | - | 39,951,524 | - | - | - |
| 3/11/1996 | W/H TAX DIV GM | (7,734) | - | (7,734) | - | - | 39,943,790 | - | - | - |
| 3/11/1996 | W/H TAX DIV MOB | (9,768) | - | (9,768) | - | - | 39,934,022 | - | - | - |
| 3/11/1996 | W/H TAX DIV IBM | (3,795) | - | (3,795) | - | - | 39,930,227 | - | - | - |
| 3/11/1996 | W/H TAX DIV XON | (24,400) | - | (24,400) | - | - | 39,905,827 | - | - | - |
| 3/11/1996 | W/H TAX DIV AN | (8,277) | - | (8,277) | - | - | 39,897,550 | - | - | - |
| 3/12/1996 | W/H TAX DIV BAC | (5,346) | - | (5,346) | - | - | 39,892,204 | - | - | - |
| 3/12/1996 | W/H TAX DIV JNJ | (5,919) | - | (5,919) | - | - | 39,886,285 | - | - | - |
| 3/14/1996 | W/H TAX DIV DD | (7,550) | - | (7,550) | - | - | 39,878,735 | - | - | - |
| 3/15/1996 | CHECK WIRE | 1,600,000 | 1,600,000 | - | - | - | 41,478,735 | - | - | - |
| 3/15/1996 | W/H TAX DIV MCD | (439) | - | (439) | - | - | 41,478,296 | - | - | - |
| 3/15/1996 | W/H TAX DIV ARC | (5,445) | - | (5,445) | - | - | 41,472,851 | - | - | - |
| 3/21/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (34) | - | (34) | - | - | 41,472,817 | - | - | - |
| 3/22/1996 | W/H TAX DIV AIG | (728) | - | (728) | - | - | 41,472,089 | - | - | - |
| 3/29/1996 | W/H TAX DIV PEP | (2,857) | - | (2,857) | - | - | 41,469,232 | - | - | - |
| 3/29/1996 | TRANS FROM 1FN06940 (1FN069) | 1,851,654 | - | - | 1,851,654 | - | 43,320,885 | - | - | - |
| 4/1/1996 | W/H TAX DIV S | (831) | - | (831) | - | - | 43,320,054 | - | - | - |
| 4/1/1996 | W/H TAX DIV EK | (1,253) | - | (1,253) | - | - | 43,318,802 | - | - | - |
| 4/1/1996 | W/H TAX DIV KO | (7,600) | - | (7,600) | - | - | 43,311,202 | - | - | - |
| 4/1/1996 | W/H TAX DIV MRK | (7,690) | - | (7,690) | - | - | 43,303,512 | - | - | - |
| 4/2/1996 | W/H TAX DIV C | (5,482) | - | (5,482) | - | - | 43,298,030 | - | - | - |
| 4/8/1996 | W/H TAX DIV WMT | (2,932) | - | (2,932) | - | - | 43,295,097 | - | - | - |
| 4/10/1996 | W/H TAX DIV HWP | (2,501) | - | (2,501) | - | - | 43,292,596 | - | - | - |
| 4/15/1996 | CHECK WIRE | (450,000) | - | (450,000) | - | - | 42,842,596 | - | - | - |
| 4/17/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (20) | - | (20) | - | - | 42,842,577 | - | - | - |
| 4/25/1996 | W/H TAX DIV GE | (7,203) | - | (7,203) | - | - | 42,835,374 | - | - | - |
| 4/30/1996 | W/H TAX DIV DOW | (4,826) | - | (4,826) | - | - | 42,830,547 | - | - | - |
| 4/30/1996 | TRANS FROM 1FN06940 (1FN069) | 883,204 | - | - | 883,204 | - | 43,713,751 | - | - | - |
| 5/1/1996 | W/H TAX DIV BEL | (7,756) | - | (7,756) | - | - | 43,705,995 | - | - | - |
| 5/1/1996 | W/H TAX DIV T | (13,082) | - | (13,082) | - | - | 43,692,913 | - | - | - |
| 5/1/1996 | W/H TAX DIV AIT | (7,162) | - | (7,162) | - | - | 43,685,751 | - | - | - |
| 5/1/1996 | W/H TAX DIV NYN | (6,075) | - | (6,075) | - | - | 43,679,676 | - | - | - |
| 5/1/1996 | W/H TAX DIV BMY | (9,458) | - | (9,458) | - | - | 43,670,218 | - | - | - |
| 5/2/1996 | W/H TAX DIV PNU | (3,365) | - | (3,365) | - | - | 43,666,853 | - | - | - |
| 5/8/1996 | CHECK WIRE | 7,000,000 | 7,000,000 | - | - | - | 50,666,853 | - | - | - |
| 5/10/1996 | W/H TAX DIV AXP | (2,747) | - | (2,747) | - | - | 50,664,106 | - | - | - |
| 5/14/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (61) | - | (61) | - | - | 50,664,046 | - | - | - |
| 5/17/1996 | W/H TAX DIV DIS | (1,428) | - | (1,428) | - | - | 50,662,618 | - | - | - |
| 5/17/1996 | W/H TAX DIV CCI | (5,318) | - | (5,318) | - | - | 50,657,300 | - | - | - |
| 5/21/1996 | W/H TAX DIV AIG | (985) | - | (985) | - | - | 50,656,315 | - | - | - |
| 5/31/1996 | TRANS FROM 1FN06940 (1FN069) | 1,795,328 | - | - | 1,795,328 | - | 52,451,643 | - | - | - |
| 6/3/1996 | AMERICAN INTL GROUP INC CXL W/H TAX DIV 5/07/96 AIG | 985 | - | 985 | - | - | 52,452,627 | - | - | - |
| 6/3/1996 | W/H TAX DIV INTC | (823) | - | (823) | - | - | 52,451,804 | - | - | - |
| 6/3/1996 | W/H TAX DIV F | (9,280) | - | (9,280) | - | - | 52,442,524 | - | - | - |
| 6/3/1996 | W/H TAX DIV COL | (324) | - | (324) | - | - | 52,442,201 | - | - | - |
| 6/7/1996 | CHECK WIRE | 13,300,000 | 13,300,000 | - | - | - | 65,742,201 | - | - | - |
| 6/7/1996 | W/H TAX DIV BA | (1,201) | - | (1,201) | - | - | 65,740,999 | - | - | - |
| 6/10/1996 | W/H TAX DIV AN | (7,935) | - | (7,935) | - | - | 65,733,064 | - | - | - |
| 6/10/1996 | W/H TAX DIV IBM | (5,037) | - | (5,037) | - | - | 65,728,027 | - | - | - |
| 6/10/1996 | W/H TAX DIV MOB | (9,671) | - | (9,671) | - | - | 65,718,356 | - | - | - |
| 6/11/1996 | W/H TAX DIV JNJ | (3,260) | - | (3,260) | - | - | 65,715,096 | - | - | - |
| 6/12/1996 | W/H TAX DIV BAC | (2,495) | - | (2,495) | - | - | 65,712,601 | - | - | - |
| 6/12/1996 | W/H TAX DIV MMM | (4,674) | - | (4,674) | - | - | 65,707,927 | - | - | - |
| 6/14/1996 | W/H TAX DIV MCD | (1,293) | - | (1,293) | - | - | 65,706,634 | - | - | - |
| 6/21/1996 | W/H TAX DIV AIG | (958) | - | (958) | - | - | 65,705,676 | - | - | - |
| 6/25/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (18) | - | (18) | - | - | 65,705,658 | - | - | - |

MADC1345_00000692

Exhibit D

| Column 1<br><br>Date | Column 2<br>Transaction<br>Description | Column 3<br>Transaction Amount<br>Reported in<br>Customer Statement | Column 4<br>Cash<br>Deposits | Column 5<br>Cash<br>Withdrawals | Column 6<br>Transfers of<br>Principal In | Column 7<br>Transfers of<br>Principal Out | Column 8<br>Balance of<br>Principal | Column 9<br>Preference<br>Period Initial<br>Transfers | Column 10<br>Two Year<br>Initial<br>Transfers | Column 11<br>Six Year<br>Initial<br>Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/28/1996 | W/H TAX DIV PEP | (4,575) | - | (4,575) | - | - | 65,701,083 | - | - | - |
| 6/28/1996 | TRANS FROM 1FN06940 *(1FN069)* | 93,190 | - | - | 93,190 | - | 65,794,273 | - | - | - |
| 7/1/1996 | W/H TAX DIV MRK | (10,595) | - | (10,595) | - | - | 65,783,679 | - | - | - |
| 7/1/1996 | W/H TAX DIV KO | (8,122) | - | (8,122) | - | - | 65,775,557 | - | - | - |
| 7/1/1996 | W/H TAX DIV WMT | (3,028) | - | (3,028) | - | - | 65,772,529 | - | - | - |
| 7/2/1996 | CHECK WIRE | 35,000,000 | 35,000,000 | - | - | - | 100,772,529 | - | - | - |
| 7/5/1996 | W/H TAX DIV SLB | (2,238) | - | (2,238) | - | - | 100,770,291 | - | - | - |
| 7/10/1996 | W/H TAX DIV HWP | (3,182) | - | (3,182) | - | - | 100,767,109 | - | - | - |
| 7/15/1996 | W/H TAX DIV C | (6,497) | - | (6,497) | - | - | 100,760,611 | - | - | - |
| 7/22/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (44) | - | (44) | - | - | 100,760,568 | - | - | - |
| 7/23/1996 | CHECK WIRE | 2,250,000 | 2,250,000 | - | - | - | 103,010,568 | - | - | - |
| 7/25/1996 | W/H TAX DIV GE | (21,113) | - | (21,113) | - | - | 102,989,455 | - | - | - |
| 7/30/1996 | W/H TAX DIV DOW | (4,475) | - | (4,475) | - | - | 102,984,980 | - | - | - |
| 7/31/1996 | TRANS FROM 1FN06940 *(1FN069)* | 8,597,785 | - | - | 8,597,785 | - | 111,582,764 | - | - | - |
| 8/1/1996 | W/H TAX DIV BEL | (8,427) | - | (8,427) | - | - | 111,574,337 | - | - | - |
| 8/1/1996 | W/H TAX DIV EK | (3,448) | - | (3,448) | - | - | 111,570,889 | - | - | - |
| 8/1/1996 | W/H TAX DIV AIT | (7,746) | - | (7,746) | - | - | 111,563,144 | - | - | - |
| 8/1/1996 | W/H TAX DIV NYN | (6,906) | - | (6,906) | - | - | 111,556,238 | - | - | - |
| 8/1/1996 | W/H TAX DIV PNU | (3,749) | - | (3,749) | - | - | 111,552,488 | - | - | - |
| 8/1/1996 | W/H TAX DIV T | (14,645) | - | (14,645) | - | - | 111,537,844 | - | - | - |
| 8/1/1996 | W/H TAX DIV BMY | (10,367) | - | (10,367) | - | - | 111,527,477 | - | - | - |
| 8/9/1996 | W/H TAX DIV AXP | (2,961) | - | (2,961) | - | - | 111,524,516 | - | - | - |
| 8/12/1996 | CHECK WIRE | 3,000,000 | 3,000,000 | - | - | - | 114,524,516 | - | - | - |
| 8/16/1996 | W/H TAX DIV DIS | (2,008) | - | (2,008) | - | - | 114,522,508 | - | - | - |
| 8/19/1996 | W/H TAX DIV CCI | (8,010) | - | (8,010) | - | - | 114,514,499 | - | - | - |
| 8/19/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (54) | - | (54) | - | - | 114,514,444 | - | - | - |
| 8/30/1996 | TRANS TO 1FN06940 *(1FN069)* | (5,922,892) | - | - | - | (5,922,892) | 108,591,552 | - | - | - |
| 9/3/1996 | W/H TAX DIV INTC | (1,555) | - | (1,555) | - | - | 108,589,998 | - | - | - |
| 9/3/1996 | W/H TAX DIV F | (16,673) | - | (16,673) | - | - | 108,573,324 | - | - | - |
| 9/3/1996 | W/H TAX DIV COL | (503) | - | (503) | - | - | 108,572,821 | - | - | - |
| 9/6/1996 | W/H TAX DIV BA | (3,605) | - | (3,605) | - | - | 108,569,216 | - | - | - |
| 9/10/1996 | W/H TAX DIV XON | (36,516) | - | (36,516) | - | - | 108,532,700 | - | - | - |
| 9/10/1996 | W/H TAX DIV IBM | (7,374) | - | (7,374) | - | - | 108,525,326 | - | - | - |
| 9/10/1996 | W/H TAX DIV AN | (12,117) | - | (12,117) | - | - | 108,513,209 | - | - | - |
| 9/10/1996 | W/H TAX DIV MOB | (14,820) | - | (14,820) | - | - | 108,498,389 | - | - | - |
| 9/10/1996 | W/H TAX DIV GM | (11,537) | - | (11,537) | - | - | 108,486,852 | - | - | - |
| 9/10/1996 | W/H TAX DIV JNJ | (9,635) | - | (9,635) | - | - | 108,477,217 | - | - | - |
| 9/12/1996 | W/H TAX DIV DD | (12,185) | - | (12,185) | - | - | 108,465,032 | - | - | - |
| 9/12/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (12) | - | (12) | - | - | 108,465,020 | - | - | - |
| 9/12/1996 | W/H TAX DIV BAC | (7,478) | - | (7,478) | - | - | 108,457,542 | - | - | - |
| 9/13/1996 | W/H TAX DIV ARC | (2,015) | - | (2,015) | - | - | 108,455,527 | - | - | - |
| 9/13/1996 | W/H TAX DIV MCD | (1,983) | - | (1,983) | - | - | 108,453,544 | - | - | - |
| 9/20/1996 | W/H TAX DIV AIG | (1,754) | - | (1,754) | - | - | 108,451,790 | - | - | - |
| 9/27/1996 | W/H TAX DIV PEP | (6,944) | - | (6,944) | - | - | 108,444,847 | - | - | - |
| 9/30/1996 | TRANS TO 1FN06940 *(1FN069)* | (4,241,880) | - | - | - | (4,241,880) | 104,202,967 | - | - | - |
| 10/1/1996 | W/H TAX DIV KO | (12,212) | - | (12,212) | - | - | 104,190,755 | - | - | - |
| 10/1/1996 | W/H TAX DIV MRK | (18,981) | - | (18,981) | - | - | 104,171,774 | - | - | - |
| 10/1/1996 | W/H TAX DIV EK | (5,288) | - | (5,288) | - | - | 104,166,486 | - | - | - |
| 10/7/1996 | W/H TAX DIV WMT | (4,613) | - | (4,613) | - | - | 104,161,873 | - | - | - |
| 10/15/1996 | W/H TAX DIV C | (9) | - | (9) | - | - | 104,161,864 | - | - | - |
| 10/15/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (2) | - | (2) | - | - | 104,161,862 | - | - | - |
| 10/31/1996 | TRANS TO 1FN06940 *(1FN069)* | (1,019,940) | - | - | - | (1,019,940) | 103,141,922 | - | - | - |
| 11/1/1996 | W/H TAX DIV T | (20,257) | - | (20,257) | - | - | 103,121,665 | - | - | - |
| 11/8/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (32) | - | (32) | - | - | 103,121,633 | - | - | - |
| 11/12/1996 | CHECK WIRE | 11,300,000 | 11,300,000 | - | - | - | 114,421,633 | - | - | - |
| 11/19/1996 | W/H TAX DIV CCI | (3,919) | - | (3,919) | - | - | 114,417,713 | - | - | - |
| 11/29/1996 | TRANS TO 1FN06940 *(1FN069)* | (3,469,645) | - | - | - | (3,469,645) | 110,948,068 | - | - | - |
| 12/2/1996 | W/H TAX DIV INTC | (825) | - | (825) | - | - | 110,947,243 | - | - | - |
| 12/2/1996 | W/H TAX DIV F | (8,471) | - | (8,471) | - | - | 110,938,772 | - | - | - |
| 12/6/1996 | W/H TAX DIV BA | (3,530) | - | (3,530) | - | - | 110,935,242 | - | - | - |
| 12/10/1996 | W/H TAX DIV GM | (10,814) | - | (10,814) | - | - | 110,924,428 | - | - | - |
| 12/10/1996 | W/H TAX DIV AN | (5,959) | - | (5,959) | - | - | 110,918,469 | - | - | - |
| 12/10/1996 | W/H TAX DIV XON | (35,574) | - | (35,574) | - | - | 110,882,895 | - | - | - |
| 12/10/1996 | W/H TAX DIV MOB | (7,334) | - | (7,334) | - | - | 110,875,561 | - | - | - |
| 12/10/1996 | W/H TAX DIV IBM | (3,369) | - | (3,369) | - | - | 110,872,191 | - | - | - |
| 12/10/1996 | W/H TAX DIV JNJ | (9,153) | - | (9,153) | - | - | 110,863,038 | - | - | - |
| 12/12/1996 | CHECK WIRE | 24,500,000 | 24,500,000 | - | - | - | 135,363,038 | - | - | - |
| 12/12/1996 | W/H TAX DIV BAC | (7,056) | - | (7,056) | - | - | 135,355,982 | - | - | - |

MADC1345_00000693

Exhibit D

BLMIS ACCOUNT NO. 1FN012 - CTB REALTY VENTURES II, N.V. FBO FAIRFIELD SENTRY LTD

| Column 1<br>Date | Column 2<br>Transaction<br>Description | Column 3<br>Transaction Amount<br>Reported in<br>Customer Statement | Column 4<br>Cash<br>Deposits | Column 5<br>Cash<br>Withdrawals | Column 6<br>Transfers of<br>Principal In | Column 7<br>Transfers of<br>Principal Out | Column 8<br>Balance of<br>Principal | Column 9<br>Preference<br>Period Initial<br>Transfers | Column 10<br>Two Year<br>Initial<br>Transfers | Column 11<br>Six Year<br>Initial<br>Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/12/1996 | W/H TAX DIV MMM | (7,502) | - | (7,502) | - | - | 135,348,480 | - | - | - |
| 12/12/1996 | W/H TAX DIV MTC | (3,178) | - | (3,178) | - | - | 135,345,302 | - | - | - |
| 12/13/1996 | W/H TAX DIV MCD | (1,892) | - | (1,892) | - | - | 135,343,410 | - | - | - |
| 12/16/1996 | W/H TAX DIV DD | (11,807) | - | (11,807) | - | - | 135,331,603 | - | - | - |
| 12/16/1996 | W/H TAX DIV KO | (11,143) | - | (11,143) | - | - | 135,320,460 | - | - | - |
| 12/18/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (5) | - | (5) | - | - | 135,320,455 | - | - | - |
| 12/20/1996 | W/H TAX DIV AIG | (1,711) | - | (1,711) | - | - | 135,318,744 | - | - | - |
| 12/31/1996 | TRANS TO 1FN069 (1FN069) | (606,404) | - | - | - | (606,404) | 134,712,340 | - | - | - |
| 1/2/1997 | W/H TAX DIV PEP | (6,474) | - | (6,474) | - | - | 134,705,866 | - | - | - |
| 1/2/1997 | W/H TAX DIV EK | (5,043) | - | (5,043) | - | - | 134,700,822 | - | - | - |
| 1/2/1997 | W/H TAX DIV MRK | (17,829) | - | (17,829) | - | - | 134,682,994 | - | - | - |
| 1/10/1997 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 134,682,992 | - | - | - |
| 1/15/1997 | W/H TAX DIV C | (10,637) | - | (10,637) | - | - | 134,672,355 | - | - | - |
| 1/17/1997 | W/H TAX DIV WMT | (4,350) | - | (4,350) | - | - | 134,668,005 | - | - | - |
| 1/31/1997 | TRANS TO 1FN06940 (1FN069) | (4,329,623) | - | - | - | (4,329,623) | 130,338,382 | - | - | - |
| 2/11/1997 | CHECK WIRE | 32,750,000 | 32,750,000 | - | - | - | 163,088,382 | - | - | - |
| 2/18/1997 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (15) | - | (15) | - | - | 163,088,368 | - | - | - |
| 2/20/1997 | W/H TAX DIV CCI | (10,076) | - | (10,076) | - | - | 163,078,292 | - | - | - |
| 2/28/1997 | TRANS TO 1FN06940 (1FN069) | (3,442,160) | - | - | - | (3,442,160) | 159,636,132 | - | - | - |
| 3/3/1997 | W/H TAX DIV INTC | (1,632) | - | (1,632) | - | - | 159,634,500 | - | - | - |
| 3/3/1997 | W/H TAX DIV COL | (532) | - | (532) | - | - | 159,633,969 | - | - | - |
| 3/3/1997 | W/H TAX DIV F | (18,278) | - | (18,278) | - | - | 159,615,691 | - | - | - |
| 3/5/1997 | CHECK WIRE | 39,500,000 | 39,500,000 | - | - | - | 199,115,691 | - | - | - |
| 3/7/1997 | W/H TAX DIV BA | (3,960) | - | (3,960) | - | - | 199,111,732 | - | - | - |
| 3/7/1997 | CHECK WIRE | (400,000) | - | (400,000) | - | - | 198,711,732 | - | - | - |
| 3/10/1997 | W/H TAX DIV AN | (14,141) | - | (14,141) | - | - | 198,697,590 | - | - | - |
| 3/10/1997 | W/H TAX DIV GM | (14,804) | - | (14,804) | - | - | 198,682,786 | - | - | - |
| 3/10/1997 | W/H TAX DIV IBM | (7,291) | - | (7,291) | - | - | 198,675,495 | - | - | - |
| 3/10/1997 | W/H TAX DIV MOB | (17,131) | - | (17,131) | - | - | 198,658,364 | - | - | - |
| 3/10/1997 | W/H TAX DIV XON | (39,350) | - | (39,350) | - | - | 198,619,014 | - | - | - |
| 3/11/1997 | W/H TAX DIV JNJ | (11,405) | - | (11,405) | - | - | 198,607,609 | - | - | - |
| 3/11/1997 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 198,607,608 | - | - | - |
| 3/12/1997 | W/H TAX DIV BAC | (9,925) | - | (9,925) | - | - | 198,597,683 | - | - | - |
| 3/12/1997 | W/H TAX DIV MMM | (9,832) | - | (9,832) | - | - | 198,587,851 | - | - | - |
| 3/14/1997 | W/H TAX DIV DD | (12,846) | - | (12,846) | - | - | 198,575,005 | - | - | - |
| 3/19/1997 | CHECK WIRE | 91,552 | 91,552 | - | - | - | 198,666,557 | - | - | - |
| 3/31/1997 | W/H TAX DIV PEP | (2,269) | - | (2,269) | - | - | 198,664,288 | - | - | - |
| 3/31/1997 | TRANS FROM 1FN06940 (1FN069) | 2,575,151 | - | - | 2,575,151 | - | 201,239,439 | - | - | - |
| 4/1/1997 | W/H TAX DIV KO | (4,392) | - | (4,392) | - | - | 201,235,047 | - | - | - |
| 4/4/1997 | W/H TAX DIV SLB | (4,274) | - | (4,274) | - | - | 201,230,773 | - | - | - |
| 4/9/1997 | W/H TAX DIV WMT | (1,965) | - | (1,965) | - | - | 201,228,809 | - | - | - |
| 4/15/1997 | W/H TAX DIV C | (3,751) | - | (3,751) | - | - | 201,225,057 | - | - | - |
| 4/16/1997 | CHECK WIRE | 17,000,000 | 17,000,000 | - | - | - | 218,225,057 | - | - | - |
| 4/16/1997 | W/H TAX DIV HWP | (3,419) | - | (3,419) | - | - | 218,221,639 | - | - | - |
| 4/24/1997 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (17) | - | (17) | - | - | 218,221,622 | - | - | - |
| 4/30/1997 | TRANS FROM 1FN06940 (1FN069) | 10,483,139 | - | - | 10,483,139 | - | 228,704,760 | - | - | - |
| 5/1/1997 | W/H TAX DIV BMY | (10,973) | - | (10,973) | - | - | 228,693,787 | - | - | - |
| 5/1/1997 | W/H TAX DIV BEL | (8,959) | - | (8,959) | - | - | 228,684,827 | - | - | - |
| 5/1/1997 | W/H TAX DIV T | (14,913) | - | (14,913) | - | - | 228,669,914 | - | - | - |
| 5/1/1997 | W/H TAX DIV AIT | (8,853) | - | (8,853) | - | - | 228,661,061 | - | - | - |
| 5/9/1997 | W/H TAX DIV AXP | (3,045) | - | (3,045) | - | - | 228,658,017 | - | - | - |
| 5/12/1997 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (28) | - | (28) | - | - | 228,657,989 | - | - | - |
| 5/16/1997 | W/H TAX DIV DIS | (2,548) | - | (2,548) | - | - | 228,655,441 | - | - | - |
| 5/19/1997 | W/H TAX DIV CCI | (3,141) | - | (3,141) | - | - | 228,652,300 | - | - | - |
| 5/30/1997 | TRANS TO 1FN06940 (1FN069) | (3,868,028) | - | - | - | (3,868,028) | 224,784,272 | - | - | - |
| 6/2/1997 | W/H TAX DIV F | (6,562) | - | (6,562) | - | - | 224,777,710 | - | - | - |
| 6/2/1997 | W/H TAX DIV COL | (180) | - | (180) | - | - | 224,777,531 | - | - | - |
| 6/2/1997 | W/H TAX DIV INTC | (548) | - | (548) | - | - | 224,776,982 | - | - | - |
| 6/4/1997 | CHECK WIRE | 25,000,000 | 25,000,000 | - | - | - | 249,776,982 | - | - | - |
| 6/10/1997 | W/H TAX DIV IBM | (2,925) | - | (2,925) | - | - | 249,774,057 | - | - | - |
| 6/10/1997 | W/H TAX DIV AN | (4,421) | - | (4,421) | - | - | 249,769,636 | - | - | - |
| 6/10/1997 | W/H TAX DIV MOB | (5,285) | - | (5,285) | - | - | 249,764,351 | - | - | - |
| 6/11/1997 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (63) | - | (63) | - | - | 249,764,289 | - | - | - |
| 6/13/1997 | CHECK WIRE A/O 6/12/97 | 45,000 | 45,000 | - | - | - | 249,809,289 | - | - | - |
| 6/13/1997 | CHECK WIRE A/O 6/12/97 | 1,200,000 | 1,200,000 | - | - | - | 251,009,289 | - | - | - |
| 6/13/1997 | CHECK WIRE | 4,750,000 | 4,750,000 | - | - | - | 255,759,289 | - | - | - |
| 6/30/1997 | TRANS TO 1FN06940 (1FN069) | (4,530,779) | - | - | - | (4,530,779) | 251,228,510 | - | - | - |
| 7/9/1997 | W/H TAX DIV HWP | (7,580) | - | (7,580) | - | - | 251,220,930 | - | - | - |

MADC1345_00000694

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 Preference Period Initial Transfers | Column 10 Two Year Initial Transfers | Column 11 Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 7/14/1997 | CHECK WIRE | 725,000 | 725,000 | - | - | - | 251,945,930 | - | - | - |
| 7/14/1997 | CHECK WIRE | 450,000 | 450,000 | - | - | - | 252,395,930 | - | - | - |
| 7/14/1997 | W/H TAX DIV WMT | (8,389) | - | (8,389) | - | - | 252,387,541 | - | - | - |
| 7/18/1997 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (52) | - | (52) | - | - | 252,387,489 | - | - | - |
| 7/25/1997 | W/H TAX DIV GE | (45,850) | - | (45,850) | - | - | 252,341,638 | - | - | - |
| 7/31/1997 | TRANS TO 1FN06940 (1FN069) | (7,291,554) | - | - | - | (7,291,554) | 245,050,084 | - | - | - |
| 8/1/1997 | W/H TAX DIV BMY | (20,313) | - | (20,313) | - | - | 245,029,771 | - | - | - |
| 8/1/1997 | W/H TAX DIV AIT | (16,477) | - | (16,477) | - | - | 245,013,294 | - | - | - |
| 8/1/1997 | W/H TAX DIV BEL | (17,470) | - | (17,470) | - | - | 244,995,824 | - | - | - |
| 8/1/1997 | W/H TAX DIV T | (28,639) | - | (28,639) | - | - | 244,967,185 | - | - | - |
| 8/5/1997 | CHECK WIRE | 30,000,000 | 30,000,000 | - | - | - | 274,967,185 | - | - | - |
| 8/8/1997 | W/H TAX DIV AXP | (5,624) | - | (5,624) | - | - | 274,961,561 | - | - | - |
| 8/20/1997 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (121) | - | (121) | - | - | 274,961,440 | - | - | - |
| 8/22/1997 | W/H TAX DIV DIS | (4,784) | - | (4,784) | - | - | 274,956,656 | - | - | - |
| 8/29/1997 | TRANS FROM 1FN06940 (1FN069) | 67,056 | - | - | 67,056 | - | 275,023,712 | - | - | - |
| 9/12/1997 | W/H TAX DIV MCD | (3,097) | - | (3,097) | - | - | 275,020,614 | - | - | - |
| 9/12/1997 | W/H TAX DIV MMM | (7,985) | - | (7,985) | - | - | 275,012,629 | - | - | - |
| 9/19/1997 | W/H TAX DIV AIG | (2,816) | - | (2,816) | - | - | 275,009,813 | - | - | - |
| 9/23/1997 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (5) | - | (5) | - | - | 275,009,808 | - | - | - |
| 9/26/1997 | W/H TAX DIV NB | (12,872) | - | (12,872) | - | - | 274,996,936 | - | - | - |
| 9/30/1997 | TRANS TO 1FN06940 (1FN069) | (363,475) | - | - | - | (363,475) | 274,633,461 | - | - | - |
| 10/1/1997 | W/H TAX DIV S | (4,140) | - | (4,140) | - | - | 274,629,321 | - | - | - |
| 10/1/1997 | W/H TAX DIV MRK | (28,940) | - | (28,940) | - | - | 274,600,381 | - | - | - |
| 10/1/1997 | W/H TAX DIV KO | (18,007) | - | (18,007) | - | - | 274,582,374 | - | - | - |
| 10/7/1997 | W/H TAX DIV PEP | (10,163) | - | (10,163) | - | - | 274,572,212 | - | - | - |
| 10/10/1997 | W/H TAX DIV SLB | (4,933) | - | (4,933) | - | - | 274,567,279 | - | - | - |
| 10/14/1997 | W/H TAX DIV WMT | (8,090) | - | (8,090) | - | - | 274,559,189 | - | - | - |
| 10/15/1997 | W/H TAX DIV HWP | (7,366) | - | (7,366) | - | - | 274,551,822 | - | - | - |
| 10/15/1997 | W/H TAX DIV C | (14,616) | - | (14,616) | - | - | 274,537,206 | - | - | - |
| 10/21/1997 | CHECK WIRE | 12,000,000 | 12,000,000 | - | - | - | 286,537,206 | - | - | - |
| 10/22/1997 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (114) | - | (114) | - | - | 286,537,093 | - | - | - |
| 10/27/1997 | W/H TAX DIV GE | (44,556) | - | (44,556) | - | - | 286,492,537 | - | - | - |
| 10/31/1997 | TRANS FROM 1FN06940 (1FN069) | 1,865,080 | - | - | 1,865,080 | - | 288,357,617 | - | - | - |
| 11/3/1997 | W/H TAX DIV AIT | (16,682) | - | (16,682) | - | - | 288,340,935 | - | - | - |
| 11/3/1997 | W/H TAX DIV T | (28,412) | - | (28,412) | - | - | 288,312,522 | - | - | - |
| 11/3/1997 | W/H TAX DIV BEL | (31,852) | - | (31,852) | - | - | 288,280,671 | - | - | - |
| 11/3/1997 | W/H TAX DIV BMY | (20,207) | - | (20,207) | - | - | 288,260,464 | - | - | - |
| 11/10/1997 | W/H TAX DIV AXP | (5,650) | - | (5,650) | - | - | 288,254,814 | - | - | - |
| 11/20/1997 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | 288,254,810 | - | - | - |
| 11/21/1997 | W/H TAX DIV DIS | (4,699) | - | (4,699) | - | - | 288,250,112 | - | - | - |
| 11/28/1997 | TRANS TO 1FN06940 (1FN069) | (5,861,410) | - | - | - | (5,861,410) | 282,388,702 | - | - | - |
| 12/10/1997 | CHECK WIRE | 16,000,000 | 16,000,000 | - | - | - | 298,388,702 | - | - | - |
| 12/12/1997 | W/H TAX DIV MCD | (2,388) | - | (2,388) | - | - | 298,386,313 | - | - | - |
| 12/15/1997 | W/H TAX DIV KO | (14,591) | - | (14,591) | - | - | 298,371,722 | - | - | - |
| 12/17/1997 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | 298,371,720 | - | - | - |
| 12/19/1997 | W/H TAX DIV AIG | (2,171) | - | (2,171) | - | - | 298,369,548 | - | - | - |
| 12/24/1997 | W/H TAX DIV NB | (11,441) | - | (11,441) | - | - | 298,358,107 | - | - | - |
| 12/31/1997 | TRANS FROM 1FN06940 (1FN069) | 4,085,810 | - | - | 4,085,810 | - | 302,443,917 | - | - | - |
| 1/2/1998 | W/H TAX DIV PEP | (8,106) | - | (8,106) | - | - | 302,435,811 | - | - | - |
| 1/2/1998 | W/H TAX DIV MRK | (22,928) | - | (22,928) | - | - | 302,412,883 | - | - | - |
| 1/15/1998 | W/H TAX DIV C | (11,117) | - | (11,117) | - | - | 302,401,766 | - | - | - |
| 1/20/1998 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 302,401,764 | - | - | - |
| 1/30/1998 | TRANS FROM 1FN06940 (1FN069) | 1,767,892 | - | - | 1,767,892 | - | 304,169,655 | - | - | - |
| 2/4/1998 | CHECK WIRE | 45,000,000 | 45,000,000 | - | - | - | 349,169,655 | - | - | - |
| 2/19/1998 | W/H TAX DIV CCI | (10,172) | - | (10,172) | - | - | 349,159,483 | - | - | - |
| 2/24/1998 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (45) | - | (45) | - | - | 349,159,438 | - | - | - |
| 2/25/1998 | W/H TAX DIV MER | (2,654) | - | (2,654) | - | - | 349,156,785 | - | - | - |
| 2/27/1998 | TRANS FROM 1FN06940 (1FN069) | (24,537,558) | - | - | - | (24,537,558) | 324,619,226 | - | - | - |
| 3/2/1998 | W/H TAX DIV INTC | (1,957) | - | (1,957) | - | - | 324,617,269 | - | - | - |
| 3/2/1998 | W/H TAX DIV F | (19,969) | - | (19,969) | - | - | 324,597,300 | - | - | - |
| 3/6/1998 | W/H TAX DIV BA | (8,789) | - | (8,789) | - | - | 324,588,512 | - | - | - |
| 3/10/1998 | W/H TAX DIV GM | (22,669) | - | (22,669) | - | - | 324,565,843 | - | - | - |
| 3/10/1998 | W/H TAX DIV AN | (23,541) | - | (23,541) | - | - | 324,542,302 | - | - | - |
| 3/10/1998 | W/H TAX DIV JNJ | (18,414) | - | (18,414) | - | - | 324,523,888 | - | - | - |
| 3/10/1998 | W/H TAX DIV XON | (39,894) | - | (39,894) | - | - | 324,483,994 | - | - | - |
| 3/10/1998 | W/H TAX DIV IBM | (7,518) | - | (7,518) | - | - | 324,476,476 | - | - | - |
| 3/10/1998 | W/H TAX DIV MOB | (17,646) | - | (17,646) | - | - | 324,458,830 | - | - | - |
| 3/11/1998 | CHECK WIRE | 8,300,000 | 8,300,000 | - | - | - | 332,758,830 | - | - | - |

MADC1345_00000695

BLMIS ACCOUNT NO. 1FN012 - CTF FRANCE FBO FAIRFIELD SENTRY LTD

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Transaction Amount Reported in | Cash | Cash | Transfers of | Transfers of | Balance of | Preference Period Initial | Two Year Initial | Six Year Initial |
| Date | Transaction Description | Customer Statement | Deposits | Withdrawals | Principal In | Principal Out | Principal | Transfers | Transfers | Transfers |
| 3/11/1998 | W/H TAX DIV BAC | (15,261) | - | (15,261) | - | - | 332,743,569 | - | - | - |
| 3/12/1998 | W/H TAX DIV MMM | (13,427) | - | (13,427) | - | - | 332,730,142 | - | - | - |
| 3/13/1998 | W/H TAX DIV ARC | (9,453) | - | (9,453) | - | - | 332,720,689 | - | - | - |
| 3/16/1998 | W/H TAX DIV DD | (21,971) | - | (21,971) | - | - | 332,698,717 | - | - | - |
| 3/17/1998 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (41) | - | (41) | - | - | 332,698,676 | - | - | - |
| 3/31/1998 | TRANS TO 1FN06940 (1FN069) | (4,469,534) | - | - | - | (4,469,534) | 328,229,143 | - | - | - |
| 4/3/1998 | W/H TAX DIV SLB | (5,885) | - | (5,885) | - | - | 328,223,257 | - | - | - |
| 4/6/1998 | CHECK WIRE | 40,000,000 | 40,000,000 | - | - | - | 368,223,257 | - | - | - |
| 4/6/1998 | W/H TAX DIV WMT | (5,219) | - | (5,219) | - | - | 368,218,038 | - | - | - |
| 4/15/1998 | W/H TAX DIV HWP | (8,488) | - | (8,488) | - | - | 368,209,551 | - | - | - |
| 4/22/1998 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (14) | - | (14) | - | - | 368,209,536 | - | - | - |
| 4/30/1998 | TRANS TO 1FN06940 (1FN069) | (16,781,901) | - | - | - | (16,781,901) | 351,427,635 | - | - | - |
| 5/1/1998 | W/H TAX DIV T | (31,902) | - | (31,902) | - | - | 351,395,733 | - | - | - |
| 5/1/1998 | W/H TAX DIV AIT | (20,154) | - | (20,154) | - | - | 351,375,579 | - | - | - |
| 5/1/1998 | W/H TAX DIV BEL | (35,325) | - | (35,325) | - | - | 351,340,254 | - | - | - |
| 5/1/1998 | W/H TAX DIV BMY | (23,004) | - | (23,004) | - | - | 351,317,250 | - | - | - |
| 5/7/1998 | CHECK WIRE | 30,000,000 | 30,000,000 | - | - | - | 381,317,250 | - | - | - |
| 5/8/1998 | W/H TAX DIV AXP | (6,268) | - | (6,268) | - | - | 381,310,982 | - | - | - |
| 5/19/1998 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (43) | - | (43) | - | - | 381,310,939 | - | - | - |
| 5/22/1998 | W/H TAX DIV DIS | (6,193) | - | (6,193) | - | - | 381,304,746 | - | - | - |
| 5/27/1998 | TRANS FROM 1FN06940 (1FN069) | 2,274,650 | - | - | 2,274,650 | - | 383,579,396 | - | - | - |
| 5/29/1998 | TRANS TO 1FN06940 (1FN069) | (1,456) | - | - | - | (1,456) | 383,577,940 | - | - | - |
| 6/4/1998 | CHECK WIRE | 30,000,000 | 30,000,000 | - | - | - | 413,577,940 | - | - | - |
| 6/5/1998 | W/H TAX DIV BA | (9,117) | - | (9,117) | - | - | 413,568,822 | - | - | - |
| 6/9/1998 | W/H TAX DIV JNJ | (21,704) | - | (21,704) | - | - | 413,547,118 | - | - | - |
| 6/10/1998 | W/H TAX DIV IBM | (4,514) | - | (4,514) | - | - | 413,542,604 | - | - | - |
| 6/10/1998 | W/H TAX DIV GM | (16,205) | - | (16,205) | - | - | 413,526,399 | - | - | - |
| 6/10/1998 | W/H TAX DIV XON | (44,974) | - | (44,974) | - | - | 413,481,426 | - | - | - |
| 6/10/1998 | W/H TAX DIV MOB | (9,097) | - | (9,097) | - | - | 413,472,328 | - | - | - |
| 6/10/1998 | W/H TAX DIV AN | (32,641) | - | (32,641) | - | - | 413,439,688 | - | - | - |
| 6/11/1998 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | 413,439,684 | - | - | - |
| 6/11/1998 | W/H TAX DIV BAC | (15,760) | - | (15,760) | - | - | 413,423,924 | - | - | - |
| 6/12/1998 | W/H TAX DIV MCD | (4,019) | - | (4,019) | - | - | 413,419,906 | - | - | - |
| 6/12/1998 | W/H TAX DIV DD | (26,592) | - | (26,592) | - | - | 413,393,314 | - | - | - |
| 6/12/1998 | W/H TAX DIV MMM | (13,929) | - | (13,929) | - | - | 413,379,384 | - | - | - |
| 6/19/1998 | W/H TAX DIV AIG | (3,536) | - | (3,536) | - | - | 413,375,849 | - | - | - |
| 6/26/1998 | W/H TAX DIV NB | (23,427) | - | (23,427) | - | - | 413,352,422 | - | - | - |
| 6/29/1998 | TRANS FROM 1FN06940 (1FN069) | 7,877,200 | - | - | 7,877,200 | - | 421,229,622 | - | - | - |
| 6/30/1998 | W/H TAX DIV PEP | (12,730) | - | (12,730) | - | - | 421,216,892 | - | - | - |
| 6/30/1998 | W/H TAX DIV NT | (2,081) | - | (2,081) | - | - | 421,214,812 | - | - | - |
| 7/1/1998 | AMOCO CORP CANCEL W/H | 32,641 | - | 32,641 | - | - | 421,247,452 | - | - | - |
| 7/1/1998 | W/H TAX DIV KO | (24,307) | - | (24,307) | - | - | 421,223,145 | - | - | - |
| 7/1/1998 | AMOCO CORP W/H TAX DIV | (16,320) | - | (16,320) | - | - | 421,206,825 | - | - | - |
| 7/1/1998 | W/H TAX DIV MRK | (34,882) | - | (34,882) | - | - | 421,171,943 | - | - | - |
| 7/7/1998 | CHECK WIRE | 50,000,000 | 50,000,000 | - | - | - | 471,171,943 | - | - | - |
| 7/10/1998 | W/H TAX DIV SLB | (6,120) | - | (6,120) | - | - | 471,165,823 | - | - | - |
| 7/13/1998 | W/H TAX DIV WMT | (11,330) | - | (11,330) | - | - | 471,154,493 | - | - | - |
| 7/15/1998 | W/H TAX DIV C | (16,957) | - | (16,957) | - | - | 471,137,537 | - | - | - |
| 7/15/1998 | W/H TAX DIV HWP | (11,024) | - | (11,024) | - | - | 471,126,512 | - | - | - |
| 7/20/1998 | CHECK WIRE | 10,000,000 | 10,000,000 | - | - | - | 481,126,512 | - | - | - |
| 7/22/1998 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (5) | - | (5) | - | - | 481,126,508 | - | - | - |
| 7/27/1998 | W/H TAX DIV GE | (63,848) | - | (63,848) | - | - | 481,062,660 | - | - | - |
| 7/29/1998 | TRANS TO 1FN06940 (1FN069) | (49,971,792) | - | - | - | (49,971,792) | 431,090,868 | - | - | - |
| 8/3/1998 | W/H TAX DIV BEL | (39,093) | - | (39,093) | - | - | 431,051,775 | - | - | - |
| 8/3/1998 | W/H TAX DIV AIT | (21,421) | - | (21,421) | - | - | 431,030,354 | - | - | - |
| 8/3/1998 | W/H TAX DIV BMY | (25,457) | - | (25,457) | - | - | 431,004,897 | - | - | - |
| 8/3/1998 | W/H TAX DIV HWP | (34,707) | - | (34,707) | - | - | 430,970,190 | - | - | - |
| 8/5/1998 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | 430,970,187 | - | - | - |
| 8/6/1998 | CHECK WIRE | 40,000,000 | 40,000,000 | - | - | - | 470,970,187 | - | - | - |
| 8/10/1998 | W/H TAX DIV AXP | (7,085) | - | (7,085) | - | - | 470,963,102 | - | - | - |
| 8/31/1998 | TRANS TO 1FN06940 (1FN069) | (1,478,466) | - | - | - | (1,478,466) | 469,484,636 | - | - | - |
| 9/8/1998 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (0) | - | - | - | - | 469,484,636 | - | - | - |
| 9/8/1998 | CHECK WIRE | 17,000,000 | 17,000,000 | - | - | - | 486,484,636 | - | - | - |
| 9/11/1998 | W/H TAX DIV MCD | (3,628) | - | (3,628) | - | - | 486,481,008 | - | - | - |
| 9/30/1998 | W/H TAX DIV PEP | (4,085) | - | (4,085) | - | - | 486,476,922 | - | - | - |
| 9/30/1998 | TRANS FROM 1FN06940 (1FN069) | 68,798,924 | - | - | 68,798,924 | - | 555,275,846 | - | - | - |
| 10/8/1998 | CHECK WIRE | (35,000,000) | - | (35,000,000) | - | - | 520,275,846 | - | - | - |
| 10/15/1998 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (14) | - | (14) | - | - | 520,275,832 | - | - | - |

MADC1345_00000696

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | Preference Period Initial Transfers | Two Year Initial Transfers | Six Year Initial Transfers |
| 11/12/1998 | CHECK WIRE | (55,000,000) | - | (55,000,000) | - | - | 465,275,832 | - | - | - |
| 11/23/1998 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (15) | - | (15) | - | - | 465,275,817 | - | - | - |
| 11/30/1998 | TRANS TO 1FN06940 (1FN069) | (45,246,050) | - | - | - | (45,246,050) | 420,029,768 | - | - | - |
| 12/8/1998 | CHECK WIRE | 20,000,000 | 20,000,000 | - | - | - | 440,029,768 | - | - | - |
| 12/11/1998 | W/H TAX DIV MCD | (2,285) | - | (2,285) | - | - | 440,027,483 | - | - | - |
| 12/15/1998 | CHECK WIRE | 7,000,000 | 7,000,000 | - | - | - | 447,027,483 | - | - | - |
| 12/15/1998 | W/H TAX DIV KO | (13,493) | - | (13,493) | - | - | 447,013,989 | - | - | - |
| 12/18/1998 | W/H TAX DIV AIG | (2,133) | - | (2,133) | - | - | 447,011,857 | - | - | - |
| 12/22/1998 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (21) | - | (21) | - | - | 447,011,835 | - | - | - |
| 12/23/1998 | W/H TAX DIV BAC | (28,565) | - | (28,565) | - | - | 446,983,271 | - | - | - |
| 12/31/1998 | TRANS FROM 1FN06940 (1FN069) | 5,538,063 | - | - | 5,538,063 | - | 452,521,334 | - | - | - |
| 1/4/1999 | W/H TAX DIV PEP | (7,017) | - | (7,017) | - | - | 452,514,316 | - | - | - |
| 1/4/1999 | W/H TAX DIV ONE | (16,081) | - | (16,081) | - | - | 452,498,235 | - | - | - |
| 1/4/1999 | W/H TAX DIV MRK | (23,991) | - | (23,991) | - | - | 452,474,244 | - | - | - |
| 1/6/1999 | CHECK WIRE | 30,000,000 | 30,000,000 | - | - | - | 482,474,244 | - | - | - |
| 1/11/1999 | W/H TAX DIV WMT | (6,231) | - | (6,231) | - | - | 482,468,013 | - | - | - |
| 1/22/1999 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 482,468,013 | - | - | - |
| 1/29/1999 | TRANS TO 1FN04530 (1FN045) | (20,000) | - | - | - | (20,000) | 482,448,013 | - | - | - |
| 1/29/1999 | TRANS TO 1FN06940 (1FN069) | (124,848) | - | - | - | (124,848) | 482,323,165 | - | - | - |
| 2/11/1999 | CHECK WIRE | 13,000,000 | 13,000,000 | - | - | - | 495,323,165 | - | - | - |
| 2/16/1999 | W/H TAX DIV TXN | (2,376) | - | (2,376) | - | - | 495,320,788 | - | - | - |
| 2/16/1999 | W/H TAX DIV PG | (19,380) | - | (19,380) | - | - | 495,301,408 | - | - | - |
| 2/24/1999 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (21) | - | (21) | - | - | 495,301,387 | - | - | - |
| 2/24/1999 | TRANS FROM 1FN06940 (1FN069) | 10,177,298 | - | - | 10,177,298 | - | 505,478,685 | - | - | - |
| 2/26/1999 | W/H TAX DIV C | (28,090) | - | (28,090) | - | - | 505,450,595 | - | - | - |
| 3/1/1999 | W/H TAX DIV INTC | (4,589) | - | (4,589) | - | - | 505,446,005 | - | - | - |
| 3/1/1999 | W/H TAX DIV F | (38,302) | - | (38,302) | - | - | 505,407,703 | - | - | - |
| 3/1/1999 | W/H TAX DIV WFC | (20,461) | - | (20,461) | - | - | 505,387,242 | - | - | - |
| 3/3/1999 | W/H TAX DIV BA | (9,256) | - | (9,256) | - | - | 505,377,986 | - | - | - |
| 3/4/1999 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (31) | - | (31) | - | - | 505,377,955 | - | - | - |
| 3/8/1999 | TRANS FROM 1FN06940 (1FN069) | 359,492 | - | - | 359,492 | - | 505,737,447 | - | - | - |
| 3/9/1999 | W/H TAX DIV JNJ | (22,727) | - | (22,727) | - | - | 505,714,720 | - | - | - |
| 3/10/1999 | W/H TAX DIV XON | (43,634) | - | (43,634) | - | - | 505,671,086 | - | - | - |
| 3/10/1999 | W/H TAX DIV GM | (22,727) | - | (22,727) | - | - | 505,648,359 | - | - | - |
| 3/10/1999 | W/H TAX DIV IBM | (14,678) | - | (14,678) | - | - | 505,633,680 | - | - | - |
| 3/10/1999 | TRANS TO 1FN06940 (1FN069) | (2,093,212) | - | - | - | (2,093,212) | 503,540,468 | - | - | - |
| 3/11/1999 | CHECK WIRE | 40,000,000 | 40,000,000 | - | - | - | 543,540,468 | - | - | - |
| 3/11/1999 | TRANS FROM 1FN06940 (1FN069) | 2,057,094 | - | - | 2,057,094 | - | 545,597,562 | - | - | - |
| 3/15/1999 | W/H TAX DIV DD | (26,923) | - | (26,923) | - | - | 545,570,640 | - | - | - |
| 3/18/1999 | CHECK WIRE | 5,000,000 | 5,000,000 | - | - | - | 550,570,640 | - | - | - |
| 3/26/1999 | TRANS TO 1FN06940 (1FN069) | (26,060,708) | - | - | - | (26,060,708) | 524,509,932 | - | - | - |
| 3/31/1999 | W/H TAX DIV MCD | (4,291) | - | (4,291) | - | - | 524,505,641 | - | - | - |
| 3/31/1999 | W/H TAX DIV PEP | (12,800) | - | (12,800) | - | - | 524,492,841 | - | - | - |
| 4/1/1999 | W/H TAX DIV KO | (26,478) | - | (26,478) | - | - | 524,466,364 | - | - | - |
| 4/1/1999 | W/H TAX DIV ONE | (33,427) | - | (33,427) | - | - | 524,432,936 | - | - | - |
| 4/14/1999 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (27) | - | (27) | - | - | 524,432,909 | - | - | - |
| 4/19/1999 | W/H TAX DIV WMT | (15,292) | - | (15,292) | - | - | 524,417,617 | - | - | - |
| 4/22/1999 | TRANS TO 1FN06940 (1FN069) | (475,508) | - | - | - | (475,508) | 523,942,109 | - | - | - |
| 4/26/1999 | W/H TAX DIV GE | (13,517) | - | (13,517) | - | - | 523,928,592 | - | - | - |
| 4/30/1999 | TRANS TO 1FN06940 (1FN069) | (3,067,262) | - | - | - | (3,067,262) | 520,861,330 | - | - | - |
| 5/5/1999 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (8) | - | (8) | - | - | 520,861,322 | - | - | - |
| 5/7/1999 | TRANS FROM 1FN06940 (1FN069) | 5,532,468 | - | - | 5,532,468 | - | 526,393,790 | - | - | - |
| 5/10/1999 | CHECK WIRE | 45,000,000 | 45,000,000 | - | - | - | 571,393,790 | - | - | - |
| 5/13/1999 | TRANS TO 1FN06940 (1FN069) | (887,476) | - | - | - | (887,476) | 570,506,314 | - | - | - |
| 5/14/1999 | W/H TAX DIV PG | (4,227) | - | (4,227) | - | - | 570,502,087 | - | - | - |
| 5/24/1999 | W/H TAX DIV TXN | (360) | - | (360) | - | - | 570,501,727 | - | - | - |
| 5/25/1999 | CHECK WIRE | 9,000,000 | 9,000,000 | - | - | - | 579,501,727 | - | - | - |
| 5/26/1999 | TRANS FROM 1FN06940 (1FN069) | 4,377,813 | - | - | 4,377,813 | - | 583,879,540 | - | - | - |
| 5/28/1999 | W/H TAX DIV C | (5,339) | - | (5,339) | - | - | 583,874,201 | - | - | - |
| 6/1/1999 | W/H TAX DIV F | (6,172) | - | (6,172) | - | - | 583,868,029 | - | - | - |
| 6/1/1999 | W/H TAX DIV INTC | (3,447) | - | (3,447) | - | - | 583,864,581 | - | - | - |
| 6/1/1999 | W/H TAX DIV WFC | (11,065) | - | (11,065) | - | - | 583,853,516 | - | - | - |
| 6/1/1999 | W/H TAX DIV LU | (1,130) | - | (1,130) | - | - | 583,852,386 | - | - | - |
| 6/4/1999 | W/H TAX DIV BA | (9,070) | - | (9,070) | - | - | 583,843,316 | - | - | - |
| 6/8/1999 | W/H TAX DIV JNJ | (24,839) | - | (24,839) | - | - | 583,818,477 | - | - | - |
| 6/10/1999 | W/H TAX DIV MOB | (30,107) | - | (30,107) | - | - | 583,788,370 | - | - | - |
| 6/10/1999 | W/H TAX DIV GM | (21,832) | - | (21,832) | - | - | 583,766,538 | - | - | - |
| 6/10/1999 | W/H TAX DIV XON | (66,687) | - | (66,687) | - | - | 583,699,851 | - | - | - |

MADC1345_00000697

BLMIS ACCOUNT NO. 1FN012 - CTR FBO FAIRFIELD SENTRY LTD

| Column 1<br><br>Date | Column 2<br><br>Transaction<br>Description | Column 3<br>Transaction Amount<br>Reported in<br>Customer Statement | Column 4<br><br>Cash<br>Deposits | Column 5<br><br>Cash<br>Withdrawals | Column 6<br><br>Transfers of<br>Principal In | Column 7<br><br>Transfers of<br>Principal Out | Column 8<br><br>Balance of<br>Principal | Column 9<br>Preference<br>Period Initial<br>Transfers | Column 10<br>Two Year<br>Initial<br>Transfers | Column 11<br>Six Year<br>Initial<br>Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/10/1999 | W/H TAX DIV IBM | (7,491) | - | (7,491) | - | - | 583,692,360 | - | - | - |
| 6/14/1999 | W/H TAX DIV DD | (27,347) | - | (27,347) | - | - | 583,665,013 | - | - | - |
| 6/15/1999 | TRANS FROM 1FN06930 (1FN069) | 15,000,000 | - | - | 15,000,000 | - | 598,665,013 | - | - | - |
| 6/16/1999 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (30) | - | (30) | - | - | 598,664,983 | - | - | - |
| 6/30/1999 | TRANS TO 1FN06940 (1FN069) | (14,400,796) | - | - | - | (14,400,796) | 584,264,187 | - | - | - |
| 7/12/1999 | W/H TAX DIV WMT | (8,396) | - | (8,396) | - | - | 584,255,791 | - | - | - |
| 7/13/1999 | CHECK WIRE | 12,500,000 | 12,500,000 | - | - | - | 596,755,791 | - | - | - |
| 7/14/1999 | W/H TAX DIV HWP | (6,141) | - | (6,141) | - | - | 596,749,650 | - | - | - |
| 7/21/1999 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (16) | - | (16) | - | - | 596,749,634 | - | - | - |
| 7/26/1999 | W/H TAX DIV GE | (44,498) | - | (44,498) | - | - | 596,705,136 | - | - | - |
| 7/28/1999 | TRANS TO 1FN06940 (1FN069) | (35,014,484) | - | - | - | (35,014,484) | 561,690,652 | - | - | - |
| 7/30/1999 | TRANS TO 1FN06940 (1FN069) | (431,292) | - | - | - | (431,292) | 561,259,360 | - | - | - |
| 8/2/1999 | W/H TAX DIV BEL | (23,088) | - | (23,088) | - | - | 561,236,272 | - | - | - |
| 8/2/1999 | W/H TAX DIV BMY | (15,988) | - | (15,988) | - | - | 561,220,284 | - | - | - |
| 8/2/1999 | W/H TAX DIV T | (26,387) | - | (26,387) | - | - | 561,193,897 | - | - | - |
| 8/2/1999 | W/H TAX DIV AIT | (12,948) | - | (12,948) | - | - | 561,180,949 | - | - | - |
| 8/9/1999 | CHECK WIRE | 13,000,000 | 13,000,000 | - | - | - | 574,180,949 | - | - | - |
| 8/10/1999 | W/H TAX DIV AXP | (3,778) | - | (3,778) | - | - | 574,177,171 | - | - | - |
| 8/16/1999 | W/H TAX DIV TXN | (520) | - | (520) | - | - | 574,176,652 | - | - | - |
| 8/24/1999 | CHECK WIRE | 9,000,000 | 9,000,000 | - | - | - | 583,176,652 | - | - | - |
| 8/24/1999 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (183) | - | (183) | - | - | 583,176,469 | - | - | - |
| 8/27/1999 | W/H TAX DIV C | (7,417) | - | (7,417) | - | - | 583,169,052 | - | - | - |
| 8/30/1999 | TRANS TO 1FN06940 (1FN069) | (8,336,760) | - | - | - | (8,336,760) | 574,832,292 | - | - | - |
| 9/1/1999 | CHECK WIRE | 8,000,000 | 8,000,000 | - | - | - | 582,832,292 | - | - | - |
| 9/1/1999 | W/H TAX DIV WFC | (5,298) | - | (5,298) | - | - | 582,826,994 | - | - | - |
| 9/1/1999 | W/H TAX DIV INTC | (1,650) | - | (1,650) | - | - | 582,825,344 | - | - | - |
| 9/1/1999 | W/H TAX DIV F | (8,904) | - | (8,904) | - | - | 582,816,439 | - | - | - |
| 9/1/1999 | W/H TAX DIV LU | (978) | - | (978) | - | - | 582,815,461 | - | - | - |
| 9/3/1999 | W/H TAX DIV BA | (2,139) | - | (2,139) | - | - | 582,813,322 | - | - | - |
| 9/7/1999 | W/H TAX DIV JNJ | (12,203) | - | (12,203) | - | - | 582,801,118 | - | - | - |
| 9/10/1999 | W/H TAX DIV MOB | (6,969) | - | (6,969) | - | - | 582,794,150 | - | - | - |
| 9/10/1999 | W/H TAX DIV XON | (15,873) | - | (15,873) | - | - | 582,778,277 | - | - | - |
| 9/10/1999 | W/H TAX DIV GM | (5,094) | - | (5,094) | - | - | 582,773,183 | - | - | - |
| 9/10/1999 | W/H TAX DIV IBM | (3,423) | - | (3,423) | - | - | 582,769,760 | - | - | - |
| 9/13/1999 | W/H TAX DIV MMM | (6,973) | - | (6,973) | - | - | 582,762,786 | - | - | - |
| 9/13/1999 | W/H TAX DIV DD | (6,418) | - | (6,418) | - | - | 582,756,368 | - | - | - |
| 9/15/1999 | W/H TAX DIV MCD | (4,809) | - | (4,809) | - | - | 582,751,559 | - | - | - |
| 9/16/1999 | CHECK WIRE | 9,000,000 | 9,000,000 | - | - | - | 591,751,559 | - | - | - |
| 9/17/1999 | W/H TAX DIV AIG | (5,728) | - | (5,728) | - | - | 591,745,830 | - | - | - |
| 9/24/1999 | W/H TAX DIV BAC | (57,553) | - | (57,553) | - | - | 591,688,278 | - | - | - |
| 9/30/1999 | W/H TAX DIV PEP | (14,586) | - | (14,586) | - | - | 591,673,691 | - | - | - |
| 9/30/1999 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (15) | - | (15) | - | - | 591,673,676 | - | - | - |
| 9/30/1999 | TRANS FROM 1FN06940 (1FN069) | 6,338,833 | - | - | 6,338,833 | - | 598,012,509 | - | - | - |
| 10/1/1999 | W/H TAX DIV KO | (29,151) | - | (29,151) | - | - | 597,983,358 | - | - | - |
| 10/1/1999 | W/H TAX DIV MRK | (51,177) | - | (51,177) | - | - | 597,932,182 | - | - | - |
| 10/1/1999 | W/H TAX DIV ONE | (35,339) | - | (35,339) | - | - | 597,896,842 | - | - | - |
| 10/7/1999 | CHECK WIRE | 8,000,000 | 8,000,000 | - | - | - | 605,896,842 | - | - | - |
| 10/12/1999 | W/H TAX DIV WMT | (16,342) | - | (16,342) | - | - | 605,880,501 | - | - | - |
| 10/13/1999 | W/H TAX DIV HWP | (12,026) | - | (12,026) | - | - | 605,868,475 | - | - | - |
| 10/18/1999 | TRANS FROM 1FN06940 (1FN069) | 75,554,675 | - | - | 75,554,675 | - | 681,423,150 | - | - | - |
| 10/20/1999 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (5) | - | (5) | - | - | 681,423,145 | - | - | - |
| 10/25/1999 | W/H TAX DIV GE | (84,582) | - | (84,582) | - | - | 681,338,563 | - | - | - |
| 11/1/1999 | W/H TAX DIV AIT | (25,356) | - | (25,356) | - | - | 681,313,207 | - | - | - |
| 11/1/1999 | W/H TAX DIV BMY | (31,530) | - | (31,530) | - | - | 681,281,677 | - | - | - |
| 11/1/1999 | W/H TAX DIV BEL | (43,814) | - | (43,814) | - | - | 681,237,863 | - | - | - |
| 11/1/1999 | W/H TAX DIV T | (51,099) | - | (51,099) | - | - | 681,186,765 | - | - | - |
| 11/2/1999 | CHECK WIRE | 13,000,000 | 13,000,000 | - | - | - | 694,186,765 | - | - | - |
| 11/10/1999 | W/H TAX DIV AXP | (7,399) | - | (7,399) | - | - | 694,179,366 | - | - | - |
| 11/10/1999 | TRANS TO 1FN06940 (1FN069) | (177,606) | - | - | - | (177,606) | 694,001,760 | - | - | - |
| 11/12/1999 | CHECK WIRE | 11,500,000 | 11,500,000 | - | - | - | 705,501,760 | - | - | - |
| 11/17/1999 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (31) | - | (31) | - | - | 705,501,729 | - | - | - |
| 11/18/1999 | TRANS FROM 1FN06940 (1FN069) | 842,304 | - | - | 842,304 | - | 706,344,033 | - | - | - |
| 11/22/1999 | TRANS FROM 1FN06940 (1FN069) | 1,031,662 | - | - | 1,031,662 | - | 707,375,695 | - | - | - |
| 11/29/1999 | TRANS TO 1FN06940 (1FN069) | (30,479,600) | - | - | - | (30,479,600) | 676,896,095 | - | - | - |
| 12/1/1999 | CHECK WIRE | 3,000,000 | 3,000,000 | - | - | - | 679,896,095 | - | - | - |
| 12/3/1999 | W/H TAX DIV BA | (3,868) | - | (3,868) | - | - | 679,892,227 | - | - | - |
| 12/7/1999 | W/H TAX DIV JNJ | (11,051) | - | (11,051) | - | - | 679,881,176 | - | - | - |
| 12/10/1999 | W/H TAX DIV IBM | (6,631) | - | (6,631) | - | - | 679,874,546 | - | - | - |

MADC1345_00000698

Exhibit D

| Column 1<br>Date | Column 2<br>Transaction Description | Column 3<br>Transaction Amount Reported in Customer Statement | Column 4<br>Cash Deposits | Column 5<br>Cash Withdrawals | Column 6<br>Transfers of Principal In | Column 7<br>Transfers of Principal Out | Column 8<br>Balance of Principal | Column 9<br>Preference Period Initial Transfers | Column 10<br>Two Year Initial Transfers | Column 11<br>Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/10/1999 | W/H TAX DIV MOB | (13,498) | - | (13,498) | - | - | 679,861,047 | - | - | - |
| 12/10/1999 | W/H TAX DIV GM | (9,867) | - | (9,867) | - | - | 679,851,180 | - | - | - |
| 12/10/1999 | W/H TAX DIV XON | (32,127) | - | (32,127) | - | - | 679,819,054 | - | - | - |
| 12/13/1999 | W/H TAX DIV MMM | (16,753) | - | (16,753) | - | - | 679,802,301 | - | - | - |
| 12/14/1999 | W/H TAX DIV DD | (10,360) | - | (10,360) | - | - | 679,791,940 | - | - | - |
| 12/17/1999 | W/H TAX DIV DD | (12,432) | - | (12,432) | - | - | 679,779,508 | - | - | - |
| 12/31/1999 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (17) | - | (17) | - | - | 679,779,491 | - | - | - |
| 1/11/2000 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 679,779,490 | - | - | - |
| 1/18/2000 | CHECK WIRE | 15,000,000 | 15,000,000 | - | - | - | 694,779,490 | - | - | - |
| 1/25/2000 | TRANS TO 1FN06940 *(1FN069)* | (14,385,564) | - | - | - | (14,385,564) | 680,393,926 | - | - | - |
| 1/25/2000 | TRANS TO 1FN04530 *(1FN045)* | (1,564,379) | - | - | - | (1,564,379) | 678,829,547 | - | - | - |
| 2/1/2000 | W/H TAX DIV BEL | (17,103) | - | (17,103) | - | - | 678,812,444 | - | - | - |
| 2/14/2000 | W/H TAX DIV TXN | (2,474) | - | (2,474) | - | - | 678,809,971 | - | - | - |
| 2/15/2000 | CHECK WIRE | 13,000,000 | 13,000,000 | - | - | - | 691,809,971 | - | - | - |
| 2/15/2000 | W/H TAX DIV PG | (30,735) | - | (30,735) | - | - | 691,779,235 | - | - | - |
| 2/24/2000 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (44) | - | (44) | - | - | 691,779,192 | - | - | - |
| 2/25/2000 | W/H TAX DIV C | (39,430) | - | (39,430) | - | - | 691,739,761 | - | - | - |
| 2/25/2000 | TRANS FROM 1FN06940 *(1FN069)* | 82,963,688 | - | - | 82,963,688 | - | 774,703,449 | - | - | - |
| 3/1/2000 | W/H TAX DIV LU | (4,371) | - | (4,371) | - | - | 774,699,078 | - | - | - |
| 3/1/2000 | W/H TAX DIV F | (44,587) | - | (44,587) | - | - | 774,654,492 | - | - | - |
| 3/1/2000 | W/H TAX DIV WFC | (26,041) | - | (26,041) | - | - | 774,628,450 | - | - | - |
| 3/1/2000 | W/H TAX DIV INTC | (7,305) | - | (7,305) | - | - | 774,621,145 | - | - | - |
| 3/3/2000 | W/H TAX DIV BA | (9,507) | - | (9,507) | - | - | 774,611,639 | - | - | - |
| 3/7/2000 | W/H TAX DIV JNJ | (28,520) | - | (28,520) | - | - | 774,583,118 | - | - | - |
| 3/10/2000 | W/H TAX DIV IBM | (15,367) | - | (15,367) | - | - | 774,567,751 | - | - | - |
| 3/10/2000 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (17) | - | (17) | - | - | 774,567,734 | - | - | - |
| 3/10/2000 | W/H TAX DIV XOM | (110,963) | - | (110,963) | - | - | 774,456,772 | - | - | - |
| 3/10/2000 | W/H TAX DIV GM | (23,263) | - | (23,263) | - | - | 774,433,509 | - | - | - |
| 3/14/2000 | W/H TAX DIV HD | (26,827) | - | (26,827) | - | - | 774,406,683 | - | - | - |
| 3/14/2000 | TRANS FROM 1FN06940 *(1FN069)* | 9,411,572 | - | - | 9,411,572 | - | 783,818,254 | - | - | - |
| 3/23/2000 | W/H TAX DIV HD | (2,268) | - | (2,268) | - | - | 783,815,986 | - | - | - |
| 3/28/2000 | TRANS TO 1FN06940 *(1FN069)* | (41,660,628) | - | - | - | (41,660,628) | 742,155,358 | - | - | - |
| 3/31/2000 | W/H TAX DIV PEP | (9,974) | - | (9,974) | - | - | 742,145,385 | - | - | - |
| 4/3/2000 | W/H TAX DIV KO | (31,319) | - | (31,319) | - | - | 742,114,066 | - | - | - |
| 4/10/2000 | W/H TAX DIV WMT | (20,234) | - | (20,234) | - | - | 742,093,832 | - | - | - |
| 4/10/2000 | CHECK WIRE | (20,000,000) | - | (20,000,000) | - | - | 722,093,832 | - | - | - |
| 4/17/2000 | CHECK WIRE | (5,000,000) | - | (5,000,000) | - | - | 717,093,832 | - | - | - |
| 4/20/2000 | TRANS FROM 1FN06940 *(1FN069)* | 23,954,634 | - | - | 23,954,634 | - | 741,048,466 | - | - | - |
| 4/25/2000 | W/H TAX DIV GE | (33,812) | - | (33,812) | - | - | 741,014,654 | - | - | - |
| 4/28/2000 | W/H TAX DIV MWD | (4,136) | - | (4,136) | - | - | 741,010,518 | - | - | - |
| 4/28/2000 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (59) | - | (59) | - | - | 741,010,459 | - | - | - |
| 5/11/2000 | TRANS FROM 1FN06940 *(1FN069)* | 20,052,096 | - | - | 20,052,096 | - | 761,062,555 | - | - | - |
| 5/12/2000 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (25) | - | (25) | - | - | 761,062,530 | - | - | - |
| 5/24/2000 | TRANS FROM 1FN06940 *(1FN069)* | 1,874,736 | - | - | 1,874,736 | - | 762,937,266 | - | - | - |
| 6/1/2000 | W/H TAX DIV WFC | (11,513) | - | (11,513) | - | - | 762,925,753 | - | - | - |
| 6/1/2000 | W/H TAX DIV INTC | (3,140) | - | (3,140) | - | - | 762,922,614 | - | - | - |
| 6/6/2000 | CHECK WIRE | 30,000,000 | 30,000,000 | - | - | - | 792,922,614 | - | - | - |
| 6/12/2000 | W/H TAX DIV GM | (10,238) | - | (10,238) | - | - | 792,912,375 | - | - | - |
| 6/12/2000 | W/H TAX DIV XOM | (112,389) | - | (112,389) | - | - | 792,799,986 | - | - | - |
| 6/12/2000 | W/H TAX DIV IBM | (7,394) | - | (7,394) | - | - | 792,792,592 | - | - | - |
| 6/12/2000 | W/H TAX DIV DD | (26,502) | - | (26,502) | - | - | 792,766,090 | - | - | - |
| 6/13/2000 | W/H TAX DIV JNJ | (17,780) | - | (17,780) | - | - | 792,748,310 | - | - | - |
| 6/19/2000 | TRANS TO 1FN06940 *(1FN069)* | (2,189,589) | - | - | - | (2,189,589) | 790,558,721 | - | - | - |
| 6/21/2000 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (23) | - | (23) | - | - | 790,558,698 | - | - | - |
| 7/7/2000 | CHECK WIRE | 15,000,000 | 15,000,000 | - | - | - | 805,558,698 | - | - | - |
| 7/10/2000 | W/H TAX DIV WMT | (5,829) | - | (5,829) | - | - | 805,552,869 | - | - | - |
| 7/18/2000 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (17) | - | (17) | - | - | 805,552,852 | - | - | - |
| 7/31/2000 | TRANS FROM 1FN06940 *(1FN069)* | 6,484,782 | - | - | 6,484,782 | - | 812,037,634 | - | - | - |
| 8/3/2000 | W/H TAX DIV AIG | (12) | - | (12) | - | - | 812,037,623 | - | - | - |
| 8/8/2000 | CHECK WIRE | 20,000,000 | 20,000,000 | - | - | - | 832,037,623 | - | - | - |
| 8/15/2000 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (20) | - | (20) | - | - | 832,037,602 | - | - | - |
| 8/15/2000 | W/H TAX DIV PG | (16,422) | - | (16,422) | - | - | 832,021,180 | - | - | - |
| 8/15/2000 | TRANS FROM 1FN06940 *(1FN069)* | 430,348 | - | - | 430,348 | - | 832,451,527 | - | - | - |
| 8/21/2000 | W/H TAX DIV TXN | (2,325) | - | (2,325) | - | - | 832,449,202 | - | - | - |
| 8/24/2000 | W/H TAX DIV MER | (8,338) | - | (8,338) | - | - | 832,440,864 | - | - | - |
| 8/25/2000 | W/H TAX DIV C | (42,800) | - | (42,800) | - | - | 832,398,064 | - | - | - |
| 9/1/2000 | W/H TAX DIV LU | (4,742) | - | (4,742) | - | - | 832,393,322 | - | - | - |
| 9/1/2000 | W/H TAX DIV WFC | (24,648) | - | (24,648) | - | - | 832,368,675 | - | - | - |

MADC1345_00000699

BLMIS ACCOUNT NO. 1FN012 - CITCO GLOBAL CUSTODY NV FBO FAIRFIELD SENTRY LTD

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 Preference Period Initial Transfers | Column 10 Two Year Initial Transfers | Column 11 Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 9/1/2000 | W/H TAX DIV INTC | (9,276) | - | (9,276) | - | - | 832,359,399 | - | - | - |
| 9/11/2000 | W/H TAX DIV IBM | (16,258) | - | (16,258) | - | - | 832,343,141 | - | - | - |
| 9/11/2000 | W/H TAX DIV XOM | (59,269) | - | (59,269) | - | - | 832,283,871 | - | - | - |
| 9/14/2000 | TRANS TO 1FN06940 (1FN069) | (98,711) | - | - | - | (98,711) | 832,185,161 | - | - | - |
| 9/15/2000 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (122) | - | (122) | - | - | 832,185,039 | - | - | - |
| 9/18/2000 | TRANS FROM 1FN06940 (1FN069) | 21,979,842 | - | - | 21,979,842 | - | 854,164,881 | - | - | - |
| 9/26/2000 | CHECK WIRE | 26,000,000 | 26,000,000 | - | - | - | 880,164,881 | - | - | - |
| 10/2/2000 | W/H TAX DIV KO | (17,402) | - | (17,402) | - | - | 880,147,479 | - | - | - |
| 10/5/2000 | W/H TAX DIV AV | (2) | - | (2) | - | - | 880,147,477 | - | - | - |
| 10/10/2000 | W/H TAX DIV WMT | (11,145) | - | (11,145) | - | - | 880,136,332 | - | - | - |
| 10/11/2000 | W/H TAX DIV HWP | (11,562) | - | (11,562) | - | - | 880,124,770 | - | - | - |
| 10/16/2000 | TRANS FROM 1FN06940 (1FN069) | 125,504,546 [1] | - | - | 7,220,660 | - | 887,345,430 | - | - | - |
| 10/18/2000 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (5) | - | (5) | - | - | 887,345,425 | - | - | - |
| 10/25/2000 | W/H TAX DIV GE | (98,132) | - | (98,132) | - | - | 887,247,293 | - | - | - |
| 10/27/2000 | W/H TAX DIV MWD | (16,582) | - | (16,582) | - | - | 887,230,710 | - | - | - |
| 10/31/2000 | TRANS TO 1FN06940 (1FN069) | (9,804,037) | - | - | - | (9,804,037) | 877,426,673 | - | - | - |
| 11/1/2000 | W/H TAX DIV T | (60,748) | - | (60,748) | - | - | 877,365,926 | - | - | - |
| 11/1/2000 | W/H TAX DIV PHA | (11,136) | - | (11,136) | - | - | 877,354,789 | - | - | - |
| 11/1/2000 | W/H TAX DIV VZ | (76,139) | - | (76,139) | - | - | 877,278,650 | - | - | - |
| 11/1/2000 | W/H TAX DIV BMY | (35,223) | - | (35,223) | - | - | 877,243,428 | - | - | - |
| 11/3/2000 | CHECK WIRE | 26,000,000 | 26,000,000 | - | - | - | 903,243,428 | - | - | - |
| 11/10/2000 | W/H TAX DIV AXP | (7,728) | - | (7,728) | - | - | 903,235,700 | - | - | - |
| 11/17/2000 | CHECK WIRE | 26,000,000 | 26,000,000 | - | - | - | 929,235,700 | - | - | - |
| 11/30/2000 | TRANS FROM 1FN06940 (1FN069) | 439,340 | - | - | 439,340 | - | 929,675,040 | - | - | - |
| 12/4/2000 | CHECK WIRE | 26,000,000 | 26,000,000 | - | - | - | 955,675,040 | - | - | - |
| 12/12/2000 | W/H TAX DIV JNJ | (7,285) | - | (7,285) | - | - | 955,667,755 | - | - | - |
| 12/18/2000 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (83) | - | (83) | - | - | 955,667,672 | - | - | - |
| 12/29/2000 | TRANS FROM 1FN06940 (1FN069) | 8,553,224 | - | - | 8,553,224 | - | 964,220,896 | - | - | - |
| 1/8/2001 | CHECK WIRE | 15,000,000 | 15,000,000 | - | - | - | 979,220,896 | - | - | - |
| 1/18/2001 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (7) | - | (7) | - | - | 979,220,889 | - | - | - |
| 1/30/2001 | W/H TAX DIV MWD | (9,464) | - | (9,464) | - | - | 979,211,425 | - | - | - |
| 1/30/2001 | TRANS FROM 1FN06940 (1FN069) | 2,334,215 [1] | - | - | 811,473 | - | 980,022,898 | - | - | - |
| 2/1/2001 | W/H TAX DIV PHA | (5,996) | - | (5,996) | - | - | 980,016,903 | - | - | - |
| 2/1/2001 | W/H TAX DIV VZ | (39,604) | - | (39,604) | - | - | 979,977,298 | - | - | - |
| 2/12/2001 | W/H TAX DIV TXN | (3,364) | - | (3,364) | - | - | 979,973,934 | - | - | - |
| 2/15/2001 | W/H TAX DIV PG | (24,956) | - | (24,956) | - | - | 979,948,978 | - | - | - |
| 2/22/2001 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | 979,948,975 | - | - | - |
| 2/23/2001 | W/H TAX DIV C | (62,643) | - | (62,643) | - | - | 979,886,332 | - | - | - |
| 2/23/2001 | TRANS FROM 1FN06940 (1FN069) | 47,006,454 [2] | - | - | - | - | 979,886,332 | - | - | - |
| 3/1/2001 | W/H TAX DIV LU | (3,461) | - | (3,461) | - | - | 979,882,871 | - | - | - |
| 3/1/2001 | W/H TAX DIV WFC | (35,931) | - | (35,931) | - | - | 979,846,940 | - | - | - |
| 3/1/2001 | W/H TAX DIV INTC | (12,465) | - | (12,465) | - | - | 979,834,475 | - | - | - |
| 3/8/2001 | W/H TAX DIV PFE | (64,488) | - | (64,488) | - | - | 979,769,987 | - | - | - |
| 3/9/2001 | W/H TAX DIV XOM | (134,243) | - | (134,243) | - | - | 979,635,744 | - | - | - |
| 3/12/2001 | W/H TAX DIV IBM | (21,267) | - | (21,267) | - | - | 979,614,477 | - | - | - |
| 3/13/2001 | W/H TAX DIV JNJ | (17,163) | - | (17,163) | - | - | 979,597,314 | - | - | - |
| 3/19/2001 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (15) | - | (15) | - | - | 979,597,300 | - | - | - |
| 3/22/2001 | W/H TAX DIV HD | (1,780) | - | (1,780) | - | - | 979,595,520 | - | - | - |
| 3/30/2001 | W/H TAX DIV PEP | (4,081) | - | (4,081) | - | - | 979,591,439 | - | - | - |
| 3/30/2001 | TRANS FROM 1FN06930 (1FN069) | 36,491,978 [2] | - | - | - | - | 979,591,439 | - | - | - |
| 4/2/2001 | W/H TAX DIV MRK | (14,606) | - | (14,606) | - | - | 979,576,834 | - | - | - |
| 4/2/2001 | W/H TAX DIV KO | (8,561) | - | (8,561) | - | - | 979,568,273 | - | - | - |
| 4/9/2001 | W/H TAX DIV WMT | (23,292) | - | (23,292) | - | - | 979,544,981 | - | - | - |
| 4/11/2001 | W/H TAX DIV HWP | (12,209) | - | (12,209) | - | - | 979,532,772 | - | - | - |
| 4/24/2001 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (16) | - | (16) | - | - | 979,532,756 | - | - | - |
| 4/25/2001 | TRANS TO 40 ACCT (1FN069) | (83,174,850) | - | - | - | (83,174,850) | 896,357,906 | - | - | - |
| 4/27/2001 | W/H TAX DIV MWD | (19,063) | - | (19,063) | - | - | 896,338,843 | - | - | - |
| 4/30/2001 | W/H TAX DIV JPM | (47,937) | - | (47,937) | - | - | 896,290,906 | - | - | - |
| 5/1/2001 | W/H TAX DIV PHA | (11,670) | - | (11,670) | - | - | 896,279,236 | - | - | - |
| 5/1/2001 | W/H TAX DIV VZ | (78,299) | - | (78,299) | - | - | 896,200,937 | - | - | - |
| 5/1/2001 | W/H TAX DIV BMY | (39,949) | - | (39,949) | - | - | 896,160,988 | - | - | - |
| 5/1/2001 | W/H TAX DIV T | (10,574) | - | (10,574) | - | - | 896,150,414 | - | - | - |
| 5/2/2001 | W/H TAX DIV TYC | (1,671) | - | (1,671) | - | - | 896,148,743 | - | - | - |
| 5/10/2001 | W/H TAX DIV AXP | (7,903) | - | (7,903) | - | - | 896,140,841 | - | - | - |
| 5/15/2001 | W/H TAX DIV PG | (34,037) | - | (34,037) | - | - | 896,106,804 | - | - | - |
| 6/20/2001 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (49) | - | (49) | - | - | 896,106,755 | - | - | - |
| 6/29/2001 | TRANS FROM 1FN06940 (1FN069) | 3,496,736 | - | - | 3,496,736 | - | 899,603,491 | - | - | - |

MADC1345_00000700

BLMIS ACCOUNT NO. 1FN012 - CITCO GLOBAL CUSTODY NV FBO FAIRFIELD SENTRY LTD

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Transaction Amount Reported in | | | | | | Preference | Two Year | Six Year |
| | Transaction | Reported in Customer Statement | Cash | Cash | Transfers of | Transfers of | Balance of | Period Initial | Initial | Initial |
| Date | Description | Customer Statement | Deposits | Withdrawals | Principal In | Principal Out | Principal | Transfers | Transfers | Transfers |
| 7/9/2001 | W/H TAX DIV WMT | (19,404) | - | (19,404) | - | - | 899,584,087 | - | - | - |
| 7/11/2001 | W/H TAX DIV HWP | (4,209) | - | (4,209) | - | - | 899,579,877 | - | - | - |
| 7/11/2001 | W/H TAX DIV XOM | (1,885) | - | (1,885) | - | - | 899,577,992 | - | - | - |
| 7/23/2001 | W/H TAX DIV MWD | (26,224) | - | (26,224) | - | - | 899,551,768 | - | - | - |
| 7/25/2001 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (17) | - | (17) | - | - | 899,551,751 | - | - | - |
| 7/25/2001 | W/H TAX DIV GE | (159,099) | - | (159,099) | - | - | 899,392,652 | - | - | - |
| 7/25/2001 | TRANS FROM 1FN06940 *(1FN069)* | 15,998,436 | - | - | 15,998,436 | - | 915,391,088 | - | - | - |
| 7/31/2001 | W/H TAX DIV JPM | (68,160) | - | (68,160) | - | - | 915,322,928 | - | - | - |
| 8/1/2001 | W/H TAX DIV PHA | (17,799) | - | (17,799) | - | - | 915,305,128 | - | - | - |
| 8/1/2001 | W/H TAX DIV VZ | (103,818) | - | (103,818) | - | - | 915,201,310 | - | - | - |
| 8/1/2001 | W/H TAX DIV TYC | (2,345) | - | (2,345) | - | - | 915,198,965 | - | - | - |
| 8/1/2001 | W/H TAX DIV BMY | (52,345) | - | (52,345) | - | - | 915,146,620 | - | - | - |
| 8/10/2001 | W/H TAX DIV AXP | (10,786) | - | (10,786) | - | - | 915,135,834 | - | - | - |
| 8/15/2001 | W/H TAX DIV PG | (22,597) | - | (22,597) | - | - | 915,113,237 | - | - | - |
| 8/24/2001 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 915,113,237 | - | - | - |
| 8/31/2001 | TRANS TO 1FN06940 *(1FN069)* | (13,885,633) | - | - | - | (13,885,633) | 901,227,604 | - | - | - |
| 9/13/2001 | W/H TAX DIV HD | (10,188) | - | (10,188) | - | - | 901,217,416 | - | - | - |
| 9/28/2001 | W/H TAX DIV BAC | (97,208) | - | (97,208) | - | - | 901,120,208 | - | - | - |
| 9/28/2001 | W/H TAX DIV PEP | (28,118) | - | (28,118) | - | - | 901,092,090 | - | - | - |
| 9/28/2001 | TRANS FROM 1FN06940 *(1FN069)* | 249,318,951 [1] | - | - | 77,565,311 | - | 978,657,401 | - | - | - |
| 10/1/2001 | W/H TAX DIV MRK | (88,095) | - | (88,095) | - | - | 978,569,306 | - | - | - |
| 10/1/2001 | W/H TAX DIV KO | (48,430) | - | (48,430) | - | - | 978,520,876 | - | - | - |
| 10/9/2001 | W/H TAX DIV WMT | (34,232) | - | (34,232) | - | - | 978,486,644 | - | - | - |
| 10/10/2001 | W/H TAX DIV HWP | (17,141) | - | (17,141) | - | - | 978,469,503 | - | - | - |
| 10/15/2001 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (16) | - | (16) | - | - | 978,469,487 | - | - | - |
| 10/25/2001 | W/H TAX DIV GE | (175,017) | - | (175,017) | - | - | 978,294,469 | - | - | - |
| 10/26/2001 | W/H TAX DIV MWD | (28,635) | - | (28,635) | - | - | 978,265,835 | - | - | - |
| 10/31/2001 | W/H TAX DIV JPM | (73,774) | - | (73,774) | - | - | 978,192,061 | - | - | - |
| 10/31/2001 | TRANS TO 1FN06940 *(1FN069)* | (103,803,788) | - | - | - | (103,803,788) | 874,388,273 | - | - | - |
| 11/1/2001 | W/H TAX DIV VZ | (113,612) | - | (113,612) | - | - | 874,274,661 | - | - | - |
| 11/1/2001 | W/H TAX DIV PHA | (18,747) | - | (18,747) | - | - | 874,255,913 | - | - | - |
| 11/1/2001 | W/H TAX DIV TYC | (2,678) | - | (2,678) | - | - | 874,253,235 | - | - | - |
| 11/1/2001 | W/H TAX DIV BMY | (58,848) | - | (58,848) | - | - | 874,194,387 | - | - | - |
| 11/1/2001 | W/H TAX DIV T | (14,219) | - | (14,219) | - | - | 874,180,168 | - | - | - |
| 11/9/2001 | W/H TAX DIV AXP | (11,586) | - | (11,586) | - | - | 874,168,582 | - | - | - |
| 11/15/2001 | W/H TAX DIV PG | (52,770) | - | (52,770) | - | - | 874,115,812 | - | - | - |
| 11/19/2001 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (9) | - | (9) | - | - | 874,115,803 | - | - | - |
| 11/19/2001 | W/H TAX DIV TXN | (4,121) | - | (4,121) | - | - | 874,111,682 | - | - | - |
| 11/21/2001 | W/H TAX DIV C | (88,441) | - | (88,441) | - | - | 874,023,241 | - | - | - |
| 11/26/2001 | TRANS TO 1FN06940 *(1FN069)* | (84,767,207) | - | - | - | (84,767,207) | 789,256,034 | - | - | - |
| 12/3/2001 | W/H TAX DIV MCD | (30,594) | - | (30,594) | - | - | 789,225,440 | - | - | - |
| 12/3/2001 | W/H TAX DIV WFC | (48,938) | - | (48,938) | - | - | 789,176,502 | - | - | - |
| 12/3/2001 | W/H TAX DIV INTC | (14,993) | - | (14,993) | - | - | 789,161,509 | - | - | - |
| 12/6/2001 | W/H TAX DIV PFE | (49,996) | - | (49,996) | - | - | 789,111,513 | - | - | - |
| 12/10/2001 | W/H TAX DIV IBM | (26,732) | - | (26,732) | - | - | 789,084,780 | - | - | - |
| 12/10/2001 | W/H TAX DIV XOM | (175,101) | - | (175,101) | - | - | 788,909,680 | - | - | - |
| 12/14/2001 | W/H TAX DIV DD | (38,668) | - | (38,668) | - | - | 788,871,012 | - | - | - |
| 12/28/2001 | TRANS FROM 1FN06940 *(1FN069)* | 2,773,386 | - | - | 2,773,386 | - | 791,644,398 | - | - | - |
| 12/31/2001 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (16) | - | (16) | - | - | 791,644,382 | - | - | - |
| 1/7/2002 | W/H TAX DIV WMT | (6,331) | - | (6,331) | - | - | 791,638,051 | - | - | - |
| 1/10/2002 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | 791,638,048 | - | - | - |
| 1/25/2002 | W/H TAX DIV MWD | (20,392) | - | (20,392) | - | - | 791,617,656 | - | - | - |
| 1/31/2002 | TRANS FROM 1FN06940 *(1FN069)* | 42,571,270 | - | - | 42,571,270 | - | 834,188,926 | - | - | - |
| 2/1/2002 | W/H TAX DIV VZ | (82,978) | - | (82,978) | - | - | 834,105,948 | - | - | - |
| 2/1/2002 | W/H TAX DIV SBC | (68,688) | - | (68,688) | - | - | 834,037,260 | - | - | - |
| 2/1/2002 | W/H TAX DIV PHA | (13,811) | - | (13,811) | - | - | 834,023,449 | - | - | - |
| 2/11/2002 | W/H TAX DIV TXN | (3,918) | - | (3,918) | - | - | 834,019,531 | - | - | - |
| 2/15/2002 | W/H TAX DIV PG | (51,958) | - | (51,958) | - | - | 833,967,573 | - | - | - |
| 2/21/2002 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (14) | - | (14) | - | - | 833,967,559 | - | - | - |
| 2/21/2002 | TRANS FROM 1FN06940 *(1FN069)* | 34,813,654 | - | - | 34,813,654 | - | 868,781,213 | - | - | - |
| 2/22/2002 | W/H TAX DIV C | (86,638) | - | (86,638) | - | - | 868,694,575 | - | - | - |
| 2/28/2002 | TRANS TO 1FN06940 *(1FN069)* | (3,582,374) | - | - | - | (3,582,374) | 865,112,201 | - | - | - |
| 3/1/2002 | W/H TAX DIV WFC | (47,401) | - | (47,401) | - | - | 865,064,800 | - | - | - |
| 3/1/2002 | W/H TAX DIV INTC | (14,618) | - | (14,618) | - | - | 865,050,182 | - | - | - |
| 3/6/2002 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 865,050,182 | - | - | - |
| 3/7/2002 | W/H TAX DIV PFE | (86,890) | - | (86,890) | - | - | 864,963,292 | - | - | - |
| 3/11/2002 | W/H TAX DIV IBM | (25,523) | - | (25,523) | - | - | 864,937,769 | - | - | - |
| 3/11/2002 | W/H TAX DIV BUD | (18,683) | - | (18,683) | - | - | 864,919,085 | - | - | - |

MADC1345_00000701

BLMIS ACCOUNT NO. 1FN012 - CITCO GLOBAL CUSTODY NV FBO FAIRFIELD SENTRY LTD

Exhibit D

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | Preference Period Initial Transfers | Two Year Initial Transfers | Six Year Initial Transfers |
| 3/11/2002 | W/H TAX DIV XOM | (167,310) | - | (167,310) | - | - | 864,751,775 | - | - | - |
| 3/12/2002 | W/H TAX DIV JNJ | (36,392) | - | (36,392) | - | - | 864,715,383 | - | - | - |
| 3/14/2002 | W/H TAX DIV DD | (38,285) | - | (38,285) | - | - | 864,677,098 | - | - | - |
| 3/15/2002 | W/H TAX DIV AIG | (5,306) | - | (5,306) | - | - | 864,671,792 | - | - | - |
| 3/22/2002 | W/H TAX DIV BAC | (46,323) | - | (46,323) | - | - | 864,625,468 | - | - | - |
| 3/25/2002 | TRANS TO 1FN06940 (1FN069) | (68,101,206) | - | - | - | (68,101,206) | 796,524,262 | - | - | - |
| 3/28/2002 | W/H TAX DIV HD | (12,981) | - | (12,981) | - | - | 796,511,282 | - | - | - |
| 4/1/2002 | W/H TAX DIV ONE | (15,197) | - | (15,197) | - | - | 796,496,085 | - | - | - |
| 4/1/2002 | W/H TAX DIV KO | (56,362) | - | (56,362) | - | - | 796,439,723 | - | - | - |
| 4/1/2002 | W/H TAX DIV PEP | (28,181) | - | (28,181) | - | - | 796,411,542 | - | - | - |
| 4/1/2002 | W/H TAX DIV MRK | (90,357) | - | (90,357) | - | - | 796,321,185 | - | - | - |
| 4/10/2002 | W/H TAX DIV MO | (140,905) | - | (140,905) | - | - | 796,180,279 | - | - | - |
| 4/12/2002 | TRANS FROM 1FN06940 (1FN069) | 51,497,008 | - | - | 51,497,008 | - | 847,677,287 | - | - | - |
| 4/18/2002 | W/H TAX DIV WMT | (37,692) | - | (37,692) | - | - | 847,639,596 | - | - | - |
| 4/23/2002 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (10) | - | (10) | - | - | 847,639,586 | - | - | - |
| 4/23/2002 | TRANS FROM 1FN06940 (1FN069) | 58,627,549 | - | - | 58,627,549 | - | 906,267,135 | - | - | - |
| 4/25/2002 | W/H TAX DIV GE | (88,181) | - | (88,181) | - | - | 906,178,954 | - | - | - |
| 4/26/2002 | W/H TAX DIV MWD | (28,410) | - | (28,410) | - | - | 906,150,544 | - | - | - |
| 4/26/2002 | W/H TAX DIV MDT | (7,823) | - | (7,823) | - | - | 906,142,721 | - | - | - |
| 4/30/2002 | W/H TAX DIV JPM | (75,992) | - | (75,992) | - | - | 906,066,729 | - | - | - |
| 5/1/2002 | W/H TAX DIV TYC | (2,846) | - | (2,846) | - | - | 906,063,884 | - | - | - |
| 5/1/2002 | W/H TAX DIV PHA | (19,678) | - | (19,678) | - | - | 906,044,205 | - | - | - |
| 5/1/2002 | W/H TAX DIV VZ | (118,658) | - | (118,658) | - | - | 905,925,548 | - | - | - |
| 5/1/2002 | W/H TAX DIV SBC | (102,706) | - | (102,706) | - | - | 905,822,842 | - | - | - |
| 5/1/2002 | W/H TAX DIV BMY | (61,415) | - | (61,415) | - | - | 905,761,427 | - | - | - |
| 5/1/2002 | W/H TAX DIV T | (14,941) | - | (14,941) | - | - | 905,746,486 | - | - | - |
| 5/10/2002 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 905,746,486 | - | - | - |
| 5/15/2002 | W/H TAX DIV PG | (29,248) | - | (29,248) | - | - | 905,717,237 | - | - | - |
| 5/24/2002 | W/H TAX DIV C | (57,863) | - | (57,863) | - | - | 905,659,374 | - | - | - |
| 5/29/2002 | TRANS TO 1FN06940 (1FN069) | (48,624,357) | - | - | - | (48,624,357) | 857,035,017 | - | - | - |
| 6/3/2002 | W/H TAX DIV WFC | (59,784) | - | (59,784) | - | - | 856,975,233 | - | - | - |
| 6/3/2002 | W/H TAX DIV INTC | (8,207) | - | (8,207) | - | - | 856,967,026 | - | - | - |
| 6/6/2002 | W/H TAX DIV PFE | (104,104) | - | (104,104) | - | - | 856,862,921 | - | - | - |
| 6/10/2002 | W/H TAX DIV BUD | (14,678) | - | (14,678) | - | - | 856,848,243 | - | - | - |
| 6/10/2002 | W/H TAX DIV XOM | (198,890) | - | (198,890) | - | - | 856,649,353 | - | - | - |
| 6/10/2002 | W/H TAX DIV IBM | (33,262) | - | (33,262) | - | - | 856,616,091 | - | - | - |
| 6/11/2002 | W/H TAX DIV JNJ | (28,557) | - | (28,557) | - | - | 856,587,534 | - | - | - |
| 6/12/2002 | W/H TAX DIV DD | (33,147) | - | (33,147) | - | - | 856,554,387 | - | - | - |
| 6/25/2002 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (4) | - | (4) | - | - | 856,554,383 | - | - | - |
| 6/28/2002 | TRANS TO 1FN06940 (1FN069) | (2,608,492) | - | - | - | (2,608,492) | 853,945,891 | - | - | - |
| 7/10/2002 | W/H TAX DIV MO | (24,100) | - | (24,100) | - | - | 853,921,791 | - | - | - |
| 7/15/2002 | W/H TAX DIV USB | (7,765) | - | (7,765) | - | - | 853,914,026 | - | - | - |
| 7/17/2002 | TRANS FROM 1FN06940 (1FN069) | 23,707,268 | - | - | 23,707,268 | - | 877,621,294 | - | - | - |
| 7/19/2002 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (6) | - | (6) | - | - | 877,621,288 | - | - | - |
| 7/25/2002 | W/H TAX DIV GE | (37,084) | - | (37,084) | - | - | 877,584,204 | - | - | - |
| 7/26/2002 | W/H TAX DIV MDT | (1,515) | - | (1,515) | - | - | 877,582,689 | - | - | - |
| 7/26/2002 | W/H TAX DIV MWD | (5,177) | - | (5,177) | - | - | 877,577,512 | - | - | - |
| 7/26/2002 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 877,577,510 | - | - | - |
| 7/31/2002 | W/H TAX DIV JPM | (14,127) | - | (14,127) | - | - | 877,563,383 | - | - | - |
| 7/31/2002 | TRANS TO 1FN06940 (1FN069) | (11,956,702) | - | - | - | (11,956,702) | 865,606,681 | - | - | - |
| 8/1/2002 | W/H TAX DIV VZ | (21,330) | - | (21,330) | - | - | 865,585,351 | - | - | - |
| 8/1/2002 | W/H TAX DIV PHA | (3,506) | - | (3,506) | - | - | 865,581,845 | - | - | - |
| 8/1/2002 | W/H TAX DIV BMY | (11,150) | - | (11,150) | - | - | 865,570,696 | - | - | - |
| 8/1/2002 | W/H TAX DIV T | (2,922) | - | (2,922) | - | - | 865,567,774 | - | - | - |
| 8/1/2002 | W/H TAX DIV SBC | (18,231) | - | (18,231) | - | - | 865,549,543 | - | - | - |
| 8/9/2002 | W/H TAX DIV AXP | (2,078) | - | (2,078) | - | - | 865,547,466 | - | - | - |
| 8/19/2002 | W/H TAX DIV TXN | (5,904) | - | (5,904) | - | - | 865,541,562 | - | - | - |
| 8/19/2002 | W/H TAX DIV MON | (2) | - | (2) | - | - | 865,541,559 | - | - | - |
| 8/21/2002 | TRANS TO 1FN06940 (1FN069) | (227,903,245) | - | - | - | (227,903,245) | 637,638,314 | - | - | - |
| 8/23/2002 | W/H TAX DIV C | (153,876) | - | (153,876) | - | - | 637,484,438 | - | - | - |
| 8/26/2002 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (8) | - | (8) | - | - | 637,484,430 | - | - | - |
| 9/3/2002 | W/H TAX DIV INTC | (21,641) | - | (21,641) | - | - | 637,462,789 | - | - | - |
| 9/3/2002 | W/H TAX DIV WFC | (77,794) | - | (77,794) | - | - | 637,384,995 | - | - | - |
| 9/5/2002 | W/H TAX DIV PFE | (132,507) | - | (132,507) | - | - | 637,252,488 | - | - | - |
| 9/5/2002 | W/H TAX DIV G | (27,089) | - | (27,089) | - | - | 637,225,399 | - | - | - |
| 9/6/2002 | W/H TAX DIV BA | (22,759) | - | (22,759) | - | - | 637,202,641 | - | - | - |
| 9/9/2002 | W/H TAX DIV BUD | (27,089) | - | (27,089) | - | - | 637,175,552 | - | - | - |
| 9/10/2002 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (7) | - | (7) | - | - | 637,175,544 | - | - | - |

MADC1345_00000702

BLMIS ACCOUNT NO. 1FN012 - CTB REAL ESTATE PARTNERSHIP LP C/O RUSSELL S. REYNOLDS JR SOLELY FBO FAIRFIELD SENTRY LTD

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Transaction Amount Reported in | Cash | Cash | Transfers of | Transfers of | | Preference Period Initial | Two Year Initial | Six Year Initial |
| Date | Transaction Description | Customer Statement | Deposits | Withdrawals | Principal In | Principal Out | Balance of Principal | Transfers | Transfers | Transfers |
| 9/10/2002 | W/H TAX DIV XOM | (250,379) | - | (250,379) | - | - | 636,925,165 | - | - | - |
| 9/10/2002 | W/H TAX DIV JNJ | (32,342) | - | (32,342) | - | - | 636,892,823 | - | - | - |
| 9/10/2002 | W/H TAX DIV IBM | (40,919) | - | (40,919) | - | - | 636,851,904 | - | - | - |
| 9/12/2002 | W/H TAX DIV DD | (55,298) | - | (55,298) | - | - | 636,796,607 | - | - | - |
| 10/17/2002 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (23) | - | (23) | - | - | 636,796,584 | - | - | - |
| 10/29/2002 | TRANS TO 1FN06940 (1FN069) | (40,110,476) | - | - | - | (40,110,476) | 596,686,108 | - | - | - |
| 11/15/2002 | W/H TAX DIV CL | (9,217) | - | (9,217) | - | - | 596,676,891 | - | - | - |
| 11/15/2002 | W/H TAX DIV PG | (31,976) | - | (31,976) | - | - | 596,644,915 | - | - | - |
| 11/18/2002 | W/H TAX DIV TXN | (3,272) | - | (3,272) | - | - | 596,641,644 | - | - | - |
| 11/18/2002 | TRANS TO 1FN06940 (1FN069) | (11,639,472) | - | - | - | (11,639,472) | 585,002,172 | - | - | - |
| 11/22/2002 | W/H TAX DIV C | (81,541) | - | (81,541) | - | - | 584,920,631 | - | - | - |
| 11/25/2002 | W/H TAX DIV GS | (5,120) | - | (5,120) | - | - | 584,915,511 | - | - | - |
| 11/27/2002 | W/H TAX DIV MER | (12,763) | - | (12,763) | - | - | 584,902,748 | - | - | - |
| 1/6/2003 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (32) | - | (32) | - | - | 584,902,716 | - | - | (32) |
| 1/6/2003 | W/H TAX DIV BUD | (15,489) | - | (15,489) | - | - | 584,887,227 | - | - | (15,489) |
| 1/6/2003 | W/H TAX DIV DD | (22,676) | - | (22,676) | - | - | 584,864,551 | - | - | (22,676) |
| 1/6/2003 | W/H TAX DIV G | (15,681) | - | (15,681) | - | - | 584,848,870 | - | - | (15,681) |
| 1/6/2003 | W/H TAX DIV INTC | (12,184) | - | (12,184) | - | - | 584,836,685 | - | - | (12,184) |
| 1/6/2003 | W/H TAX DIV PFE | (51,990) | - | (51,990) | - | - | 584,784,696 | - | - | (51,990) |
| 1/6/2003 | W/H TAX DIV WFC | (43,746) | - | (43,746) | - | - | 584,740,949 | - | - | (43,746) |
| 1/6/2003 | W/H TAX DIV UTX | (7,423) | - | (7,423) | - | - | 584,733,527 | - | - | (7,423) |
| 1/6/2003 | W/H TAX DIV HCA | (1,024) | - | (1,024) | - | - | 584,732,502 | - | - | (1,024) |
| 1/6/2003 | W/H TAX DIV BA | (9,271) | - | (9,271) | - | - | 584,723,232 | - | - | (9,271) |
| 1/6/2003 | W/H TAX DIV XOM | (141,247) | - | (141,247) | - | - | 584,581,985 | - | - | (141,247) |
| 1/6/2003 | W/H TAX DIV JNJ | (14,954) | - | (14,954) | - | - | 584,567,031 | - | - | (14,954) |
| 1/6/2003 | W/H TAX DIV IBM | (23,093) | - | (23,093) | - | - | 584,543,938 | - | - | (23,093) |
| 1/10/2003 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (5) | - | (5) | - | - | 584,543,936 | - | - | (5) |
| 1/22/2003 | TRANS FROM 1FN06940 (1FN069) | 17,086,180 | - | - | 17,086,180 | - | 601,630,116 | - | - | - |
| 1/31/2003 | W/H TAX DIV MWD | (19,845) | - | (19,845) | - | - | 601,610,271 | - | - | (19,845) |
| 2/3/2003 | W/H TAX DIV SBC | (71,836) | - | (71,836) | - | - | 601,538,434 | - | - | (71,836) |
| 2/3/2003 | W/H TAX DIV PHA | (24,873) | - | (24,873) | - | - | 601,513,561 | - | - | (24,873) |
| 2/3/2003 | W/H TAX DIV VZ | (84,435) | - | (84,435) | - | - | 601,429,126 | - | - | (84,435) |
| 2/10/2003 | W/H TAX DIV TXN | (5,223) | - | (5,223) | - | - | 601,423,904 | - | - | (5,223) |
| 2/14/2003 | W/H TAX DIV PFE | (132,136) | - | (132,136) | - | - | 601,291,768 | - | - | (132,136) |
| 2/14/2003 | W/H TAX DIV CL | (14,173) | - | (14,173) | - | - | 601,277,594 | - | - | (14,173) |
| 2/14/2003 | W/H TAX DIV PG | (75,541) | - | (75,541) | - | - | 601,202,053 | - | - | (75,541) |
| 2/24/2003 | TRANS FROM 1FN06940 (1FN069) | 115,334,062 | - | - | 115,334,062 | - | 716,536,115 | - | - | - |
| 2/27/2003 | W/H TAX DIV GS | (7,874) | - | (7,874) | - | - | 716,528,241 | - | - | (7,874) |
| 2/28/2003 | W/H TAX DIV C | (148,119) | - | (148,119) | - | - | 716,380,122 | - | - | (148,119) |
| 2/28/2003 | W/H TAX DIV MER | (19,475) | - | (19,475) | - | - | 716,360,647 | - | - | (19,475) |
| 3/3/2003 | W/H TAX DIV WFC | (72,984) | - | (72,984) | - | - | 716,287,663 | - | - | (72,984) |
| 3/3/2003 | W/H TAX DIV INTC | (19,071) | - | (19,071) | - | - | 716,268,592 | - | - | (19,071) |
| 3/5/2003 | W/H 1/31/03G | (24,493) | - | (24,493) | - | - | 716,244,100 | - | - | (24,493) |
| 3/7/2003 | W/H TAX DIV MSFT | (96,055) | - | (96,055) | - | - | 716,148,044 | - | - | (96,055) |
| 3/7/2003 | W/H TAX DIV BA | (20,079) | - | (20,079) | - | - | 716,127,965 | - | - | (20,079) |
| 3/10/2003 | W/H TAX DIV IBM | (36,074) | - | (36,074) | - | - | 716,091,891 | - | - | (36,074) |
| 3/10/2003 | W/H TAX DIV XOM | (221,611) | - | (221,611) | - | - | 715,870,280 | - | - | (221,611) |
| 3/10/2003 | W/H TAX DIV UTX | (16,076) | - | (16,076) | - | - | 715,854,204 | - | - | (16,076) |
| 3/10/2003 | W/H TAX DIV BUD | (23,099) | - | (23,099) | - | - | 715,831,105 | - | - | (23,099) |
| 3/11/2003 | W/H TAX DIV JNJ | (86,903) | - | (86,903) | - | - | 715,744,202 | - | - | (86,903) |
| 3/12/2003 | W/H TAX DIV MMM | (27,113) | - | (27,113) | - | - | 715,717,089 | - | - | (27,113) |
| 3/14/2003 | W/H TAX DIV DD | (50,670) | - | (50,670) | - | - | 715,666,419 | - | - | (50,670) |
| 3/17/2003 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (46) | - | (46) | - | - | 715,666,372 | - | - | (46) |
| 3/18/2003 | TRANS FROM 1FN06940 (1FN069) | 1,886,554 | - | - | 1,886,554 | - | 717,552,926 | - | - | - |
| 3/24/2003 | TRANS TO 1FN06940 (1FN069) | (153,207,842) | - | - | - | (153,207,842) | 564,345,084 | - | - | - |
| 4/7/2003 | W/H TAX DIV WMT | (63,644) | - | (63,644) | - | - | 564,281,441 | - | - | (63,644) |
| 4/9/2003 | W/H TAX DIV HPQ | (40,133) | - | (40,133) | - | - | 564,241,308 | - | - | (40,133) |
| 4/15/2003 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (24) | - | (24) | - | - | 564,241,285 | - | - | (24) |
| 5/9/2003 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (23) | - | (23) | - | - | 564,241,262 | - | - | (23) |
| 5/9/2003 | CHECK WIRE | (40,000,000) | - | (40,000,000) | - | - | 524,241,262 | - | - | (40,000,000) |
| 5/9/2003 | TRANS TO 1FN06940 (1FN069) | (3,098,704) | - | - | - | (3,098,704) | 521,142,558 | - | - | - |
| 5/21/2003 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 521,142,557 | - | - | (1) |
| 5/21/2003 | TRANS TO 1FN06940 (1FN069) | (12,730,124) | - | - | - | (12,730,124) | 508,412,433 | - | - | - |
| 5/28/2003 | W/H TAX DIV MER | (15,678) | - | (15,678) | - | - | 508,396,755 | - | - | (15,678) |
| 5/30/2003 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 508,396,755 | - | - | (0) |
| 5/30/2003 | TRANS TO 1FN06940 (1FN069) | (2,839,638) | - | - | - | (2,839,638) | 505,557,117 | - | - | - |
| 6/2/2003 | W/H TAX DIV INTC | (8,484) | - | (8,484) | - | - | 505,548,632 | - | - | (8,484) |
| 6/2/2003 | W/H TAX DIV WFC | (58,793) | - | (58,793) | - | - | 505,489,839 | - | - | (58,793) |

MADC1345_00000703

BLMIS ACCOUNT NO. 1FN012 - CTIX XXXXXX1 FBO FAIRFIELD SENTRY LTD

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | **Transaction Amount** | | | | | | **Preference** | | |
| | **Transaction** | **Reported in** | **Cash** | **Cash** | **Transfers of** | **Transfers of** | **Balance of** | **Period Initial** | **Two Year** | **Six Year** |
| **Date** | **Description** | **Customer Statement** | **Deposits** | **Withdrawals** | **Principal In** | **Principal Out** | **Principal** | **Transfers** | **Initial Transfers** | **Initial Transfers** |
| 6/5/2003 | W/H TAX DIV PFE | (140,766) | - | (140,766) | - | - | 505,349,073 | - | - | (140,766) |
| 6/9/2003 | W/H TAX DIV BUD | (19,108) | - | (19,108) | - | - | 505,329,966 | - | - | (19,108) |
| 6/10/2003 | W/H TAX DIV JNJ | (83,617) | - | (83,617) | - | - | 505,246,349 | - | - | (83,617) |
| 6/10/2003 | W/H TAX DIV IBM | (31,356) | - | (31,356) | - | - | 505,214,992 | - | - | (31,356) |
| 6/10/2003 | W/H TAX DIV XOM | (197,226) | - | (197,226) | - | - | 505,017,767 | - | - | (197,226) |
| 6/10/2003 | W/H TAX DIV UTX | (14,698) | - | (14,698) | - | - | 505,003,069 | - | - | (14,698) |
| 6/12/2003 | W/H TAX DIV DD | (41,917) | - | (41,917) | - | - | 504,961,151 | - | - | (41,917) |
| 6/12/2003 | W/H TAX DIV MMM | (28,743) | - | (28,743) | - | - | 504,932,408 | - | - | (28,743) |
| 6/19/2003 | TRANS TO 1FN06940 (1FN069) | (55,138,378) | - | - | - | (55,138,378) | 449,794,030 | - | - | - |
| 6/20/2003 | W/H TAX DIV AIG | (17,269) | - | (17,269) | - | - | 449,776,761 | - | - | (17,269) |
| 6/20/2003 | TRANS TO 1FN06940 (1FN069) | (16,056,865) | - | - | - | (16,056,865) | 433,719,896 | - | - | - |
| 6/24/2003 | TRANS TO 1FN06940 (1FN069) | (20,093,123) | - | - | - | (20,093,123) | 413,626,773 | - | - | - |
| 6/25/2003 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (15) | - | (15) | - | - | 413,626,758 | - | - | (15) |
| 6/26/2003 | W/H TAX DIV HD | (19,723) | - | (19,723) | - | - | 413,607,035 | - | - | (19,723) |
| 6/27/2003 | W/H TAX DIV BAC | (134,744) | - | (134,744) | - | - | 413,472,291 | - | - | (134,744) |
| 6/30/2003 | W/H TAX DIV PEP | (39,003) | - | (39,003) | - | - | 413,433,287 | - | - | (39,003) |
| 7/1/2003 | W/H TAX DIV ONE | (34,930) | - | (34,930) | - | - | 413,398,357 | - | - | (34,930) |
| 7/1/2003 | W/H TAX DIV MRK | (112,964) | - | (112,964) | - | - | 413,285,394 | - | - | (112,964) |
| 7/1/2003 | W/H TAX DIV ALL | (20,033) | - | (20,033) | - | - | 413,265,360 | - | - | (20,033) |
| 7/1/2003 | W/H TAX DIV KO | (77,552) | - | (77,552) | - | - | 413,187,809 | - | - | (77,552) |
| 7/3/2003 | W/H TAX DIV SLB | (12,249) | - | (12,249) | - | - | 413,175,560 | - | - | (12,249) |
| 7/7/2003 | W/H TAX DIV WMT | (26,141) | - | (26,141) | - | - | 413,149,420 | - | - | (26,141) |
| 7/8/2003 | W/H TAX DIV MO | (186,943) | - | (186,943) | - | - | 412,962,476 | - | - | (186,943) |
| 7/9/2003 | W/H TAX DIV HPQ | (34,557) | - | (34,557) | - | - | 412,927,919 | - | - | (34,557) |
| 7/10/2003 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (4) | - | (4) | - | - | 412,927,915 | - | - | (4) |
| 7/10/2003 | TRANS FROM 1FN06940 (1FN069) | 1,052,588 | - | - | 1,052,588 | - | 413,980,503 | - | - | - |
| 7/11/2003 | CHECK WIRE | (55,000,000) | - | (55,000,000) | - | - | 358,980,503 | - | - | (55,000,000) |
| 7/15/2003 | TRANS FROM 1FN06940 (1FN069) | 13,369,798 | - | - | 13,369,798 | - | 372,350,301 | - | - | - |
| 7/21/2003 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 372,350,300 | - | - | (1) |
| 7/21/2003 | TRANS TO 1FN06940 (1FN069) | (15,852,973) | - | - | - | (15,852,973) | 356,497,327 | - | - | - |
| 7/22/2003 | CHECK WIRE | (25,000,000) | - | (25,000,000) | - | - | 331,497,327 | - | - | (25,000,000) |
| 7/30/2003 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 331,497,326 | - | - | (1) |
| 7/31/2003 | W/H TAX DIV MWD | (33,315) | - | (33,315) | - | - | 331,464,010 | - | - | (33,315) |
| 8/1/2003 | W/H TAX DIV VZ | (139,418) | - | (139,418) | - | - | 331,324,592 | - | - | (139,418) |
| 8/1/2003 | W/H TAX DIV SBC | (166,215) | - | (166,215) | - | - | 331,158,378 | - | - | (166,215) |
| 8/15/2003 | W/H TAX DIV CL | (17,382) | - | (17,382) | - | - | 331,140,996 | - | - | (17,382) |
| 8/15/2003 | W/H TAX DIV PG | (76,891) | - | (76,891) | - | - | 331,064,105 | - | - | (76,891) |
| 8/15/2003 | TRANS FROM 1FN06940 (1FN069) | 25,229,678 | - | - | 25,229,678 | - | 356,293,783 | - | - | - |
| 8/18/2003 | W/H TAX DIV TXN | (4,798) | - | (4,798) | - | - | 356,288,984 | - | - | (4,798) |
| 8/22/2003 | W/H TAX DIV C | (237,977) | - | (237,977) | - | - | 356,051,007 | - | - | (237,977) |
| 8/27/2003 | W/H TAX DIV MER | (19,313) | - | (19,313) | - | - | 356,031,694 | - | - | (19,313) |
| 8/28/2003 | W/H TAX DIV GS | (15,089) | - | (15,089) | - | - | 356,016,605 | - | - | (15,089) |
| 9/2/2003 | W/H TAX DIV INTC | (17,208) | - | (17,208) | - | - | 355,999,397 | - | - | (17,208) |
| 9/2/2003 | W/H TAX DIV WFC | (97,773) | - | (97,773) | - | - | 355,901,624 | - | - | (97,773) |
| 9/4/2003 | W/H TAX DIV PFE | (95,941) | - | (95,941) | - | - | 355,805,683 | - | - | (95,941) |
| 9/5/2003 | W/H TAX DIV G | (21,577) | - | (21,577) | - | - | 355,784,107 | - | - | (21,577) |
| 9/5/2003 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (9) | - | (9) | - | - | 355,784,097 | - | - | (9) |
| 9/5/2003 | W/H TAX DIV BA | (11,450) | - | (11,450) | - | - | 355,772,647 | - | - | (11,450) |
| 9/5/2003 | TRANS TO 1FN06940 (1FN069) | (6,434,520) | - | - | - | (6,434,520) | 349,338,127 | - | - | - |
| 9/9/2003 | W/H TAX DIV BUD | (23,900) | - | (23,900) | - | - | 349,314,227 | - | - | (23,900) |
| 9/10/2003 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 349,314,227 | - | - | (0) |
| 9/10/2003 | W/H TAX DIV IBM | (36,695) | - | (36,695) | - | - | 349,277,531 | - | - | (36,695) |
| 9/10/2003 | W/H TAX DIV XOM | (219,560) | - | (219,560) | - | - | 349,057,971 | - | - | (219,560) |
| 9/10/2003 | TRANS TO 1FN06940 (1FN069) | (647,856) | - | - | - | (647,856) | 348,410,115 | - | - | - |
| 9/12/2003 | W/H TAX DIV DD | (28,813) | - | (28,813) | - | - | 348,381,302 | - | - | (28,813) |
| 9/19/2003 | W/H TAX DIV AIG | (7,237) | - | (7,237) | - | - | 348,374,065 | - | - | (7,237) |
| 9/22/2003 | TRANS TO 1FN06940 (1FN069) | (4,359,818) | - | - | - | (4,359,818) | 344,014,247 | - | - | - |
| 9/23/2003 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (33) | - | (33) | - | - | 344,014,214 | - | - | (33) |
| 9/26/2003 | W/H TAX DIV BAC | (52,212) | - | (52,212) | - | - | 343,962,002 | - | - | (52,212) |
| 9/30/2003 | W/H TAX DIV PEP | (28,266) | - | (28,266) | - | - | 343,933,737 | - | - | (28,266) |
| 10/1/2003 | W/H TAX DIV ONE | (30,218) | - | (30,218) | - | - | 343,903,518 | - | - | (30,218) |
| 10/1/2003 | W/H TAX DIV MRK | (35,512) | - | (35,512) | - | - | 343,868,007 | - | - | (35,512) |
| 10/1/2003 | W/H TAX DIV KO | (56,074) | - | (56,074) | - | - | 343,811,933 | - | - | (56,074) |
| 10/1/2003 | W/H TAX DIV VIA.B | (8,532) | - | (8,532) | - | - | 343,803,401 | - | - | (8,532) |
| 10/6/2003 | TRANS TO 1FN06940 (1FN069) | (2,136,968) | - | - | - | (2,136,968) | 341,666,433 | - | - | - |
| 10/8/2003 | W/H TAX DIV HPQ | (25,290) | - | (25,290) | - | - | 341,641,143 | - | - | (25,290) |
| 10/9/2003 | W/H TAX DIV MO | (145,419) | - | (145,419) | - | - | 341,495,724 | - | - | (145,419) |
| 10/10/2003 | TRANS TO 1FN06940 (1FN069) | (3,271,212) | - | - | - | (3,271,212) | 338,224,512 | - | - | - |

MADC1345_00000704

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Transaction Amount Reported in | | | | | | Preference | | |
| | Transaction | Reported in Customer Statement | Cash | Cash | Transfers of | Transfers of | Balance of | Period Initial | Two Year Initial | Six Year Initial |
| Date | Description | | Deposits | Withdrawals | Principal In | Principal Out | Principal | Transfers | Transfers | Transfers |
| 10/14/2003 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (11) | - | (11) | - | - | 338,224,501 | - | - | (11) |
| 10/14/2003 | TRANS TO 1FN06940 (1FN069) | (680,368) | - | - | - | (680,368) | 337,544,133 | - | - | - |
| 10/17/2003 | TRANS FROM 1FN06940 (1FN069) | 316,624 | - | - | 316,624 | - | 337,860,757 | - | - | - |
| 10/31/2003 | W/H TAX DIV MWD | (22,389) | - | (22,389) | - | - | 337,838,368 | - | - | (22,389) |
| 11/3/2003 | W/H TAX DIV VZ | (96,817) | - | (96,817) | - | - | 337,741,551 | - | - | (96,817) |
| 11/3/2003 | W/H TAX DIV SBC | (30,014) | - | (30,014) | - | - | 337,711,537 | - | - | (30,014) |
| 11/3/2003 | W/H TAX DIV SBC | (84,791) | - | (84,791) | - | - | 337,626,746 | - | - | (84,791) |
| 11/7/2003 | W/H TAX DIV MSFT | (233,092) | - | (233,092) | - | - | 337,393,654 | - | - | (233,092) |
| 11/14/2003 | W/H TAX DIV PG | (78,449) | - | (78,449) | - | - | 337,315,205 | - | - | (78,449) |
| 11/17/2003 | W/H TAX DIV TXN | (5,032) | - | (5,032) | - | - | 337,310,173 | - | - | (5,032) |
| 11/18/2003 | TRANS FROM 1FN06940 (1FN069) | 7,640,784 | - | - | 7,640,784 | - | 344,950,957 | - | - | - |
| 11/19/2003 | TRANS FROM 1FN06940 (1FN069) | 5,343,966 | - | - | 5,343,966 | - | 350,294,923 | - | - | - |
| 11/20/2003 | TRANS FROM 1FN06940 (1FN069) | 4,885,971 | - | - | 4,885,971 | - | 355,180,894 | - | - | - |
| 11/21/2003 | TRANS FROM 1FN06940 (1FN069) | 4,579,536 | - | - | 4,579,536 | - | 359,760,430 | - | - | - |
| 11/24/2003 | W/H TAX DIV GS | (15,047) | - | (15,047) | - | - | 359,745,383 | - | - | (15,047) |
| 11/25/2003 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (9) | - | (9) | - | - | 359,745,374 | - | - | (9) |
| 11/26/2003 | W/H TAX DIV MER | (20,557) | - | (20,557) | - | - | 359,724,817 | - | - | (20,557) |
| 11/26/2003 | W/H TAX DIV C | (242,879) | - | (242,879) | - | - | 359,481,938 | - | - | (242,879) |
| 12/1/2003 | W/H TAX DIV INTC | (17,911) | - | (17,911) | - | - | 359,464,027 | - | - | (17,911) |
| 12/1/2003 | W/H TAX DIV WFC | (102,918) | - | (102,918) | - | - | 359,361,109 | - | - | (102,918) |
| 12/1/2003 | W/H TAX DIV MCD | (67,408) | - | (67,408) | - | - | 359,293,701 | - | - | (67,408) |
| 12/4/2003 | W/H TAX DIV PFE | (156,453) | - | (156,453) | - | - | 359,137,248 | - | - | (156,453) |
| 12/5/2003 | W/H TAX DIV G | (21,517) | - | (21,517) | - | - | 359,115,731 | - | - | (21,517) |
| 12/9/2003 | W/H TAX DIV JNJ | (95,335) | - | (95,335) | - | - | 359,020,397 | - | - | (95,335) |
| 12/9/2003 | W/H TAX DIV BUD | (23,834) | - | (23,834) | - | - | 358,996,563 | - | - | (23,834) |
| 12/10/2003 | W/H TAX XOM | (223,662) | - | (223,662) | - | - | 358,772,901 | - | - | (223,662) |
| 12/10/2003 | W/H TAX DIV UTX | (21,065) | - | (21,065) | - | - | 358,751,836 | - | - | (21,065) |
| 12/10/2003 | W/H TAX DIV IBM | (36,593) | - | (36,593) | - | - | 358,715,243 | - | - | (36,593) |
| 12/12/2003 | W/H TAX DIV MMM | (18,994) | - | (18,994) | - | - | 358,696,249 | - | - | (18,994) |
| 12/12/2003 | TRANS FROM 1FN06940 (1FN069) | 329,916 | - | - | 329,916 | - | 359,026,165 | - | - | - |
| 12/15/2003 | W/H TAX DIV DD | (46,343) | - | (46,343) | - | - | 358,979,821 | - | - | (46,343) |
| 12/22/2003 | TRANS TO 1FN06940 (1FN069) | (8,083,452) | - | - | - | (8,083,452) | 350,896,369 | - | - | - |
| 12/31/2003 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (11) | - | (11) | - | - | 350,896,358 | - | - | (11) |
| 1/2/2004 | W/H TAX DIV PEP | (7,918) | - | (7,918) | - | - | 350,888,440 | - | - | (7,918) |
| 1/2/2004 | W/H TAX DIV ONE | (7,814) | - | (7,814) | - | - | 350,880,627 | - | - | (7,814) |
| 1/5/2004 | W/H TAX DIV WMT | (11,252) | - | (11,252) | - | - | 350,869,375 | - | - | (11,252) |
| 1/6/2004 | W/H TAX DIV DIS | (12,580) | - | (12,580) | - | - | 350,856,794 | - | - | (12,580) |
| 1/7/2004 | W/H TAX DIV HPQ | (7,085) | - | (7,085) | - | - | 350,849,710 | - | - | (7,085) |
| 1/8/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 350,849,708 | - | - | (2) |
| 1/8/2004 | TRANS TO 1FN06940 (1FN069) | (890,072) | - | - | - | (890,072) | 349,959,636 | - | - | - |
| 1/9/2004 | W/H TAX DIV MO | (40,736) | - | (40,736) | - | - | 349,918,900 | - | - | (40,736) |
| 1/9/2004 | TRANS TO 1FN06940 (1FN069) | (2,155,062) | - | - | - | (2,155,062) | 347,763,838 | - | - | - |
| 1/15/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 347,763,837 | - | - | (1) |
| 1/15/2004 | TRANS TO 1FN06940 (1FN069) | (616,616) | - | - | - | (616,616) | 347,147,221 | - | - | - |
| 1/21/2004 | CHECK WIRE | 50,000,000 | 50,000,000 | - | - | - | 397,147,221 | - | - | - |
| 1/22/2004 | TRANS TO 1FN06940 (1FN069) | (10,739,925) | - | - | - | (10,739,925) | 386,407,296 | - | - | - |
| 1/30/2004 | W/H TAX DIV MWD | (12,920) | - | (12,920) | - | - | 386,394,376 | - | - | (12,920) |
| 2/2/2004 | W/H TAX DIV VZ | (51,402) | - | (51,402) | - | - | 386,342,974 | - | - | (51,402) |
| 2/2/2004 | W/H TAX DIV SBC | (49,797) | - | (49,797) | - | - | 386,293,177 | - | - | (49,797) |
| 2/17/2004 | W/H TAX DIV PG | (77,918) | - | (77,918) | - | - | 386,215,259 | - | - | (77,918) |
| 2/24/2004 | TRANS TO 1FN06940 (1FN069) | (6,352,435) | - | - | - | (6,352,435) | 379,862,824 | - | - | - |
| 2/26/2004 | W/H TAX DIV GS | (14,271) | - | (14,271) | - | - | 379,848,554 | - | - | (14,271) |
| 2/27/2004 | W/H TAX DIV C | (264,863) | - | (264,863) | - | - | 379,583,691 | - | - | (264,863) |
| 2/27/2004 | W/H TAX DIV MER | (20,093) | - | (20,093) | - | - | 379,563,598 | - | - | (20,093) |
| 3/1/2004 | W/H TAX DIV WFC | (97,611) | - | (97,611) | - | - | 379,465,987 | - | - | (97,611) |
| 3/1/2004 | W/H TAX DIV INTC | (33,194) | - | (33,194) | - | - | 379,432,793 | - | - | (33,194) |
| 3/5/2004 | W/H TAX DIV PFE | (165,572) | - | (165,572) | - | - | 379,267,220 | - | - | (165,572) |
| 3/5/2004 | W/H TAX DIV BA | (17,467) | - | (17,467) | - | - | 379,249,753 | - | - | (17,467) |
| 3/5/2004 | W/H TAX DIV G | (20,407) | - | (20,407) | - | - | 379,229,346 | - | - | (20,407) |
| 3/9/2004 | W/H TAX DIV JNJ | (91,272) | - | (91,272) | - | - | 379,138,074 | - | - | (91,272) |
| 3/9/2004 | W/H TAX DIV BUD | (22,605) | - | (22,605) | - | - | 379,115,469 | - | - | (22,605) |
| 3/10/2004 | CHECK WIRE | 50,000,000 | 50,000,000 | - | - | - | 429,115,469 | - | - | - |
| 3/10/2004 | W/H TAX DIV IBM | (34,706) | - | (34,706) | - | - | 429,080,763 | - | - | (34,706) |
| 3/10/2004 | W/H TAX DIV UTX | (12,587) | - | (12,587) | - | - | 429,068,176 | - | - | (12,587) |
| 3/10/2004 | W/H TAX DIV XOM | (212,093) | - | (212,093) | - | - | 428,856,083 | - | - | (212,093) |
| 3/12/2004 | W/H TAX DIV MMM | (23,303) | - | (23,303) | - | - | 428,832,779 | - | - | (23,303) |
| 3/15/2004 | W/H TAX DIV DD | (43,954) | - | (43,954) | - | - | 428,788,826 | - | - | (43,954) |
| 4/6/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (68) | - | (68) | - | - | 428,788,758 | - | - | (68) |

MADC1345_00000705

BLMIS ACCOUNT NO. 1FN012 - CTR... FBO FAIRFIELD SENTRY LTD

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Transaction Amount Reported in | | | | | | Preference | Two Year | Six Year |
| | Transaction | Reported in | Cash | Cash | Transfers of | Transfers of | Balance of | Period Initial | Initial | Initial |
| Date | Description | Customer Statement | Deposits | Withdrawals | Principal In | Principal Out | Principal | Transfers | Transfers | Transfers |
| 4/8/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (0) | - | (0) | - | | 428,788,758 | - | - | (0) |
| 4/8/2004 | TRANS TO 1FN06940 (1FN069) | (3,437,800) | - | - | - | (3,437,800) | 425,350,958 | - | - | |
| 4/19/2004 | TRANS FROM 1FN06940 (1FN069) | 3,852,430 | - | - | 3,852,430 | | 429,203,388 | - | - | |
| 4/26/2004 | TRANS FROM 1FN06940 (1FN069) | 9,618,770 | - | - | 9,618,770 | | 438,822,158 | - | - | |
| 4/30/2004 | W/H TAX DIV JPM | (22,135) | - | (22,135) | - | | 438,800,024 | - | - | (22,135) |
| 4/30/2004 | W/H TAX DIV MWD | (28,823) | - | (28,823) | - | | 438,771,201 | - | - | (28,823) |
| 5/3/2004 | W/H TAX DIV VZ | (110,967) | - | (110,967) | - | | 438,660,235 | - | - | (110,967) |
| 5/3/2004 | W/H TAX DIV SBC | (109,179) | - | (109,179) | - | | 438,551,056 | - | - | (109,179) |
| 5/14/2004 | W/H TAX DIV PG | (84,872) | - | (84,872) | - | | 438,466,184 | - | - | (84,872) |
| 5/17/2004 | W/H TAX DIV TXN | (4,949) | - | (4,949) | - | | 438,461,235 | - | - | (4,949) |
| 5/18/2004 | TRANS FROM 1FN06940 (1FN069) | 99,542,145 | - | - | 99,542,145 | | 538,003,380 | - | - | |
| 5/24/2004 | TRANS TO 1FN06940 (1FN069) | (2,534,880) | - | - | - | (2,534,880) | 535,468,500 | - | - | |
| 5/26/2004 | W/H TAX DIV MER | (21,339) | - | (21,339) | - | | 535,447,161 | - | - | (21,339) |
| 5/27/2004 | W/H TAX DIV GS | (15,156) | - | (15,156) | - | | 535,432,006 | - | - | (15,156) |
| 5/28/2004 | W/H TAX DIV C | (276,439) | - | (276,439) | - | | 535,155,567 | - | - | (276,439) |
| 6/1/2004 | W/H TAX DIV WFC | (103,664) | - | (103,664) | - | | 535,051,903 | - | - | (103,664) |
| 6/1/2004 | W/H TAX DIV INTC | (34,534) | - | (34,534) | - | | 535,017,368 | - | - | (34,534) |
| 6/4/2004 | W/H TAX DIV PFE | (172,657) | - | (172,657) | - | | 534,844,712 | - | - | (172,657) |
| 6/4/2004 | W/H TAX DIV G | (21,673) | - | (21,673) | - | | 534,823,039 | - | - | (21,673) |
| 6/7/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (15) | - | (15) | - | | 534,823,024 | - | - | (15) |
| 6/7/2004 | W/H TAX DIV WMT | (50,907) | - | (50,907) | - | | 534,772,117 | - | - | (50,907) |
| 6/8/2004 | W/H TAX DIV JNJ | (113,224) | - | (113,224) | - | | 534,658,893 | - | - | (113,224) |
| 6/8/2004 | TRANS TO 1FN06940 (1FN069) | (11,281,522) | - | - | - | (11,281,522) | 523,377,371 | - | - | |
| 6/9/2004 | W/H TAX DIV BUD | (24,007) | - | (24,007) | - | | 523,353,365 | - | - | (24,007) |
| 6/10/2004 | W/H TAX DIV UTX | (17,314) | - | (17,314) | - | | 523,336,051 | - | - | (17,314) |
| 6/10/2004 | W/H TAX DIV IBM | (41,466) | - | (41,466) | - | | 523,294,585 | - | - | (41,466) |
| 6/10/2004 | W/H TAX DIV XOM | (235,700) | - | (235,700) | - | | 523,058,885 | - | - | (235,700) |
| 6/11/2004 | W/H TAX DIV BA | (14,840) | - | (14,840) | - | | 523,044,044 | - | - | (14,840) |
| 6/14/2004 | W/H TAX DIV MMM | (26,713) | - | (26,713) | - | | 523,017,332 | - | - | (26,713) |
| 6/14/2004 | W/H TAX DIV DD | (46,679) | - | (46,679) | - | | 522,970,652 | - | - | (46,679) |
| 6/16/2004 | TRANS FROM 1FN06940 (1FN069) | 23,618,008 | - | - | 23,618,008 | | 546,588,660 | - | - | |
| 6/18/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (1) | - | (1) | - | | 546,588,660 | - | - | (1) |
| 6/18/2004 | TRANS TO 1FN06940 (1FN069) | (9,522,049) | - | - | - | (9,522,049) | 537,066,611 | - | - | |
| 6/24/2004 | W/H TAX DIV HD | (26,508) | - | (26,508) | - | | 537,040,103 | - | - | (26,508) |
| 6/24/2004 | TRANS FROM 1FN06940 (1FN069) | 892,934 | - | - | 892,934 | | 537,933,037 | - | - | |
| 6/25/2004 | TRANS TO 1FN06940 (1FN069) | (1,668,096) | - | - | - | (1,668,096) | 536,264,941 | - | - | |
| 6/30/2004 | W/H TAX DIV PEP | (54,513) | - | (54,513) | - | | 536,210,428 | - | - | (54,513) |
| 7/1/2004 | W/H TAX DIV KO | (84,202) | - | (84,202) | - | | 536,126,227 | - | - | (84,202) |
| 7/7/2004 | W/H TAX DIV HPQ | (33,930) | - | (33,930) | - | | 536,092,297 | - | - | (33,930) |
| 7/9/2004 | W/H TAX DIV MO | (192,130) | - | (192,130) | - | | 535,900,166 | - | - | (192,130) |
| 7/26/2004 | W/H TAX DIV GE | (31,145) | - | (31,145) | - | | 535,869,021 | - | - | (31,145) |
| 8/18/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (65) | - | (65) | - | | 535,868,956 | - | - | (65) |
| 8/18/2004 | TRANS TO 1FN06940 (1FN069) | (2,743,400) | - | - | - | (2,743,400) | 533,125,556 | - | - | |
| 8/19/2004 | TRANS FROM 1FN06940 (1FN069) | 1,292,976 | - | - | 1,292,976 | | 534,418,532 | - | - | |
| 8/23/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (1) | - | (1) | - | | 534,418,531 | - | - | (1) |
| 8/23/2004 | TRANS TO 1FN06940 (1FN069) | (23,690,004) | - | - | - | (23,690,004) | 510,728,527 | - | - | |
| 8/31/2004 | CHECK WIRE | 100,000,000 | 100,000,000 | - | - | | 610,728,527 | - | - | |
| 9/7/2004 | W/H TAX DIV WMT | (60,643) | - | (60,643) | - | | 610,667,884 | - | - | (60,643) |
| 9/10/2004 | W/H TAX DIV UTX | (20,409) | - | (20,409) | - | | 610,647,475 | - | - | (20,409) |
| 9/13/2004 | W/H TAX DIV MMM | (31,488) | - | (31,488) | - | | 610,615,987 | - | - | (31,488) |
| 9/14/2004 | W/H TAX DIV MSFT | (127,191) | - | (127,191) | - | | 610,488,796 | - | - | (127,191) |
| 9/16/2004 | W/H TAX DIV HD | (28,284) | - | (28,284) | - | | 610,460,512 | - | - | (28,284) |
| 9/17/2004 | W/H TAX DIV AIG | (28,949) | - | (28,949) | - | | 610,431,563 | - | - | (28,949) |
| 9/20/2004 | TRANS TO 1FN06940 (1FN069) | (21,179,685) | - | - | - | (21,179,685) | 589,251,878 | - | - | |
| 9/24/2004 | W/H TAX DIV BAC | (275,519) | - | (275,519) | - | | 588,976,359 | - | - | (275,519) |
| 9/30/2004 | W/H TAX DIV PEP | (58,165) | - | (58,165) | - | | 588,918,194 | - | - | (58,165) |
| 10/1/2004 | W/H TAX DIV VIA.B | (15,613) | - | (15,613) | - | | 588,902,580 | - | - | (15,613) |
| 10/1/2004 | W/H TAX DIV KO | (89,843) | - | (89,843) | - | | 588,812,737 | - | - | (89,843) |
| 10/1/2004 | W/H TAX DIV MRK | (126,446) | - | (126,446) | - | | 588,686,291 | - | - | (126,446) |
| 10/6/2004 | W/H TAX DIV HPQ | (36,203) | - | (36,203) | - | | 588,650,088 | - | - | (36,203) |
| 10/12/2004 | W/H TAX DIV INV | (223,477) | - | (223,477) | - | | 588,426,611 | - | - | (223,477) |
| 11/3/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (77) | - | (77) | - | | 588,426,535 | - | - | (77) |
| 11/4/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (0) | - | (0) | - | | 588,426,535 | - | - | (0) |
| 11/4/2004 | TRANS TO 1FN06940 (1FN069) | (2,962,832) | - | - | - | (2,962,832) | 585,463,703 | - | - | |
| 11/5/2004 | TRANS FROM 1FN06940 (1FN069) | 112,728 | - | - | 112,728 | | 585,576,431 | - | - | |
| 11/9/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (1) | - | (1) | - | | 585,576,430 | - | - | (1) |
| 11/15/2004 | TRANS TO 1FN06940 (1FN069) | (42,036,784) | - | - | - | (42,036,784) | 543,539,646 | - | - | |
| 11/24/2004 | W/H TAX DIV MER | (11,867) | - | (11,867) | - | | 543,527,778 | - | - | (11,867) |

MADC1345_00000706

Exhibit D

BLMIS ACCOUNT NO. 1FN012 - CTD ... V FBO FAIRFIELD SENTRY LTD

| | Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | **Transaction Amount Reported in Customer Statement** | | | | | | **Preference Period Initial Transfers** | **Two Year Initial Transfers** | **Six Year Initial Transfers** |
| | **Date** | **Transaction Description** | | **Cash Deposits** | **Cash Withdrawals** | **Transfers of Principal In** | **Transfers of Principal Out** | **Balance of Principal** | | | |
| | 12/1/2004 | W/H TAX DIV WFC | (61,494) | - | (61,494) | - | - | 543,466,284 | - | - | (61,494) |
| | 12/1/2004 | W/H TAX DIV INTC | (19,535) | - | (19,535) | - | - | 543,446,749 | - | - | (19,535) |
| | 12/3/2004 | W/H TAX DIV PFE | (157,508) | - | (157,508) | - | - | 543,289,241 | - | - | (157,508) |
| | 12/3/2004 | W/H TAX DIV BA | (19,746) | - | (19,746) | - | - | 543,269,495 | - | - | (19,746) |
| | 12/7/2004 | W/H TAX DIV JNJ | (39,726) | - | (39,726) | - | - | 543,229,769 | - | - | (39,726) |
| | 12/10/2004 | W/H TAX DIV XOM | (216,221) | - | (216,221) | - | - | 543,013,548 | - | - | (216,221) |
| | 12/10/2004 | W/H TAX DIV IBM | (37,518) | - | (37,518) | - | - | 542,976,030 | - | - | (37,518) |
| | 12/13/2004 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (63) | - | (63) | - | - | 542,975,968 | - | - | (63) |
| | 12/14/2004 | W/H TAX DIV DD | (42,235) | - | (42,235) | - | - | 542,933,733 | - | - | (42,235) |
| | 12/14/2004 | TRANS FROM 1FN06940 (1FN069) | 90,648 | - | - | 90,648 | - | 543,024,381 | - | - | - |
| | 12/16/2004 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | 543,024,378 | - | - | (3) |
| | 12/20/2004 | TRANS TO 1FN06940 (1FN069) | (4,430,421) | - | - | - | (4,430,421) | 538,593,957 | - | - | - |
| | 12/31/2004 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (13) | - | (13) | - | - | 538,593,944 | - | - | (13) |
| | 1/3/2005 | W/H TAX DIV WMT | (21,212) | - | (21,212) | - | - | 538,572,732 | - | - | (21,212) |
| | 1/28/2005 | TRANS TO 1FN06940 (1FN069) | (4,587,226) | - | - | - | (4,587,226) | 533,985,506 | - | - | - |
| | 1/28/2005 | TRANS FROM 1FN06940 (1FN069) | 90,968 | - | - | 90,968 | - | 534,076,474 | - | - | - |
| | 2/14/2005 | W/H TAX DIV TXN | (6,454) | - | (6,454) | - | - | 534,070,020 | - | - | (6,454) |
| | 2/16/2005 | TRANS TO 1FN06940 (1FN069) | (58,943,400) | - | - | - | (58,943,400) | 475,126,620 | - | - | - |
| | 2/24/2005 | W/H TAX DIV GS | (2,690) | - | (2,690) | - | - | 475,123,930 | - | - | (2,690) |
| | 2/25/2005 | W/H TAX DIV C | (340,792) | - | (340,792) | - | - | 474,783,138 | - | - | (340,792) |
| | 2/28/2005 | W/H TAX DIV MER | (21,741) | - | (21,741) | - | - | 474,761,397 | - | - | (21,741) |
| | 3/1/2005 | W/H TAX DIV WFC | (123,924) | - | (123,924) | - | - | 474,637,472 | - | - | (123,924) |
| | 3/1/2005 | W/H TAX DIV INTC | (75,821) | - | (75,821) | - | - | 474,561,651 | - | - | (75,821) |
| | 3/4/2005 | W/H TAX DIV G | (24,289) | - | (24,289) | - | - | 474,537,362 | - | - | (24,289) |
| | 3/4/2005 | W/H TAX DIV BA | (30,573) | - | (30,573) | - | - | 474,506,789 | - | - | (30,573) |
| | 3/8/2005 | W/H TAX DIV PFE | (214,286) | - | (214,286) | - | - | 474,292,503 | - | - | (214,286) |
| | 3/8/2005 | W/H TAX DIV JNJ | (126,825) | - | (126,825) | - | - | 474,165,678 | - | - | (126,825) |
| | 3/8/2005 | TRANS FROM 1FN06940 (1FN069) | 9,874,092 | - | - | 9,874,092 | - | 484,039,770 | - | - | - |
| | 3/9/2005 | W/H TAX DIV BUD | (29,962) | - | (29,962) | - | - | 484,009,808 | - | - | (29,962) |
| | 3/10/2005 | W/H TAX DIV MSFT | (129,901) | - | (129,901) | - | - | 483,879,907 | - | - | (129,901) |
| | 3/10/2005 | W/H TAX DIV UTX | (35,873) | - | (35,873) | - | - | 483,844,034 | - | - | (35,873) |
| | 3/10/2005 | W/H TAX DIV XOM | (260,486) | - | (260,486) | - | - | 483,583,548 | - | - | (260,486) |
| | 3/10/2005 | W/H TAX DIV IBM | (44,026) | - | (44,026) | - | - | 483,539,522 | - | - | (44,026) |
| | 3/14/2005 | W/H TAX DIV MMM | (51,363) | - | (51,363) | - | - | 483,488,159 | - | - | (51,363) |
| | 3/14/2005 | W/H TAX DIV DD | (52,315) | - | (52,315) | - | - | 483,435,844 | - | - | (52,315) |
| | 3/14/2005 | TRANS FROM 1FN06940 (1FN069) | 6,271,556 | - | - | 6,271,556 | - | 489,707,400 | - | - | - |
| | 3/15/2005 | TRANS FROM 1FN06940 (1FN069) | 4,246,471 | - | - | 4,246,471 | - | 493,953,871 | - | - | - |
| | 3/17/2005 | TRANS FROM 1FN06940 (1FN069) | 3,328,560 | - | - | 3,328,560 | - | 497,282,431 | - | - | - |
| | 3/18/2005 | W/H TAX DIV AIG | (49,257) | - | (49,257) | - | - | 497,233,174 | - | - | (49,257) |
| | 3/24/2005 | W/H TAX DIV HD | (32,612) | - | (32,612) | - | - | 497,200,562 | - | - | (32,612) |
| | 3/28/2005 | W/H TAX DIV BAC | (272,094) | - | (272,094) | - | - | 496,928,468 | - | - | (272,094) |
| | 3/31/2005 | W/H TAX DIV PEP | (59,380) | - | (59,380) | - | - | 496,869,088 | - | - | (59,380) |
| | 4/1/2005 | CHECK WIRE | (175,000,000) | - | (175,000,000) | - | - | 321,869,088 | - | - | (175,000,000) |
| | 4/1/2005 | W/H TAX DIV KO | (80,127) | - | (80,127) | - | - | 321,788,961 | - | - | (80,127) |
| | 4/1/2005 | W/H TAX DIV MRK | (123,924) | - | (123,924) | - | - | 321,665,037 | - | - | (123,924) |
| | 4/1/2005 | W/H TAX DIV VIA.B | (18,072) | - | (18,072) | - | - | 321,646,964 | - | - | (18,072) |
| | 4/5/2005 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (151) | - | (151) | - | - | 321,646,814 | - | - | (151) |
| | 4/7/2005 | W/H TAX DIV HPQ | (17,908) | - | (17,908) | - | - | 321,628,906 | - | - | (17,908) |
| | 4/11/2005 | W/H TAX DIV MO | (177,954) | - | (177,954) | - | - | 321,450,952 | - | - | (177,954) |
| | 4/13/2005 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (7) | - | (7) | - | - | 321,450,945 | - | - | (7) |
| | 4/25/2005 | W/H TAX DIV GE | (347,510) | - | (347,510) | - | - | 321,103,435 | - | - | (347,510) |
| | 5/20/2005 | TRANS TO 1FN06940 (1FN069) | (1,873,088) | - | - | - | (1,873,088) | 319,230,347 | - | - | - |
| | 5/23/2005 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (56) | - | (56) | - | - | 319,230,290 | - | - | (56) |
| | 5/23/2005 | TRANS TO 1FN06940 (1FN069) | (7,249,018) | - | - | - | (7,249,018) | 311,981,272 | - | - | - |
| | 6/6/2005 | W/H TAX DIV WMT | (20,919) | - | (20,919) | - | - | 311,960,353 | - | - | (20,919) |
| | 6/10/2005 | W/H TAX DIV UTX | (9,951) | - | (9,951) | - | - | 311,950,403 | - | - | (9,951) |
| | 6/13/2005 | W/H TAX DIV MMM | (14,248) | - | (14,248) | - | - | 311,936,155 | - | - | (14,248) |
| | 6/17/2005 | W/H TAX DIV AIG | (34,728) | - | (34,728) | - | - | 311,901,427 | - | - | (34,728) |
| | 6/20/2005 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (35) | - | (35) | - | - | 311,901,392 | - | - | (35) |
| | 6/23/2005 | W/H TAX DIV HD | (23,264) | - | (23,264) | - | - | 311,878,129 | - | - | (23,264) |
| | 6/24/2005 | W/H TAX DIV BAC | (193,999) | - | (193,999) | - | - | 311,684,130 | - | - | (193,999) |
| | 6/24/2005 | TRANS FROM 1FN06940 (1FN069) | 232,432 | - | - | 232,432 | - | 311,916,562 | - | - | - |
| | 6/27/2005 | TRANS FROM 1FN06940 (1FN069) | 10,030,316 | - | - | 10,030,316 | - | 321,946,878 | - | - | - |
| | 6/28/2005 | TRANS FROM 1FN06940 (1FN069) | 8,731,968 | - | - | 8,731,968 | - | 330,678,846 | - | - | - |
| | 6/30/2005 | W/H TAX DIV PEP | (47,326) | - | (47,326) | - | - | 330,631,519 | - | - | (47,326) |
| | 7/1/2005 | W/H TAX DIV ALL | (23,533) | - | (23,533) | - | - | 330,607,986 | - | - | (23,533) |
| | 7/1/2005 | W/H TAX DIV KO | (67,061) | - | (67,061) | - | - | 330,540,925 | - | - | (67,061) |
| | 7/1/2005 | W/H TAX DIV MRK | (87,371) | - | (87,371) | - | - | 330,453,553 | - | - | (87,371) |

MADC1345_00000707

BLMIS ACCOUNT NO. 1FN012 - CTF MUTUAL ARBITRAGE & CO. AS MLY FBO FAIRFIELD SENTRY LTD

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 Preference Period Initial Transfers | Column 10 Two Year Initial Transfers | Column 11 Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 7/1/2005 | W/H TAX DIV VIA B | (12,742) | - | (12,742) | - | - | 330,440,812 | - | - | (12,742) |
| 7/6/2005 | W/H TAX DIV HPQ | (25,044) | - | (25,044) | - | - | 330,415,768 | - | - | (25,044) |
| 7/8/2005 | W/H TAX DIV SLB | (14,083) | - | (14,083) | - | - | 330,401,685 | - | - | (14,083) |
| 7/11/2005 | W/H TAX DIV MO | (160,852) | - | (160,852) | - | - | 330,240,834 | - | - | (160,852) |
| 7/25/2005 | W/H TAX DIV GE | (248,020) | - | (248,020) | - | - | 329,992,814 | - | - | (248,020) |
| 9/2/2005 | CHECK WIRE | (30,000,000) | - | (30,000,000) | - | - | 299,992,814 | - | - | (30,000,000) |
| 9/6/2005 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (288) | - | (288) | - | - | 299,992,525 | - | - | (288) |
| 9/8/2005 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 299,992,525 | - | - | (0) |
| 9/8/2005 | TRANS FROM 1FN06940 (1FN069) | 470,608 | - | - | 470,608 | - | 300,463,133 | - | - | - |
| 9/9/2005 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 300,463,132 | - | - | (1) |
| 9/9/2005 | TRANS TO 1FN06940 (1FN069) | (1,678,644) | - | - | - | (1,678,644) | 298,784,488 | - | - | - |
| 9/12/2005 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 298,784,488 | - | - | (1) |
| 9/13/2005 | TRANS TO 1FN06940 (1FN069) | (1,354,848) | - | - | - | (1,354,848) | 297,429,640 | - | - | - |
| 9/19/2005 | TRANS FROM 1FN06940 (1FN069) | 1,948,164 | - | - | 1,948,164 | - | 299,377,804 | - | - | - |
| 9/22/2005 | TRANS FROM 1FN06940 (1FN069) | 10,720,645 | - | - | 10,720,645 | - | 310,098,449 | - | - | - |
| 9/23/2005 | TRANS FROM 1FN06940 (1FN069) | 16,778,475 | - | - | 16,778,475 | - | 326,876,924 | - | - | - |
| 9/27/2005 | TRANS FROM 1FN06940 (1FN069) | 11,399,736 | - | - | 11,399,736 | - | 338,276,660 | - | - | - |
| 9/30/2005 | W/H TAX DIV S | (5,543) | - | (5,543) | - | - | 338,271,117 | - | - | (5,543) |
| 9/30/2005 | W/H TAX DIV PEP | (33,191) | - | (33,191) | - | - | 338,237,926 | - | - | (33,191) |
| 10/3/2005 | W/H TAX DIV KO | (92,079) | - | (92,079) | - | - | 338,145,847 | - | - | (92,079) |
| 10/5/2005 | W/H TAX DIV HPQ | (33,389) | - | (33,389) | - | - | 338,112,458 | - | - | (33,389) |
| 10/7/2005 | TRANS FROM 1FN06940 (1FN069) | 3,035,448 | - | - | 3,035,448 | - | 341,147,906 | - | - | - |
| 10/11/2005 | W/H TAX DIV MO | (237,481) | - | (237,481) | - | - | 340,910,425 | - | - | (237,481) |
| 10/11/2005 | TRANS FROM 1FN06940 (1FN069) | 927,968 | - | - | 927,968 | - | 341,838,393 | - | - | - |
| 10/12/2005 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (193) | - | (193) | - | - | 341,838,199 | - | - | (193) |
| 10/13/2005 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 341,838,199 | - | - | (0) |
| 10/14/2005 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 341,838,198 | - | - | (1) |
| 10/14/2005 | TRANS TO 1FN06940 (1FN069) | (107,160) | - | - | - | (107,160) | 341,731,038 | - | - | - |
| 10/17/2005 | TRANS FROM 1FN06940 (1FN069) | 2,661,812 | - | - | 2,661,812 | - | 344,392,850 | - | - | - |
| 10/19/2005 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 344,392,848 | - | - | (2) |
| 10/21/2005 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 344,392,846 | - | - | (2) |
| 10/21/2005 | TRANS FROM 1FN06940 (1FN069) | 11,377,356 | - | - | 11,377,356 | - | 355,770,202 | - | - | - |
| 10/25/2005 | W/H TAX DIV GE | (246,958) | - | (246,958) | - | - | 355,523,243 | - | - | (246,958) |
| 10/31/2005 | W/H TAX DIV MWD | (29,172) | - | (29,172) | - | - | 355,494,072 | - | - | (29,172) |
| 11/15/2005 | W/H TAX DIV ABT | (44,568) | - | (44,568) | - | - | 355,449,504 | - | - | (44,568) |
| 11/15/2005 | W/H TAX DIV PG | (147,309) | - | (147,309) | - | - | 355,302,195 | - | - | (147,309) |
| 11/16/2005 | CHECK WIRE | (185,000,000) | - | (185,000,000) | - | - | 170,302,195 | - | - | (185,000,000) |
| 11/17/2005 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (27) | - | (27) | - | - | 170,302,168 | - | - | (27) |
| 11/17/2005 | TRANS TO 1FN06940 (1FN069) | (33,005,044) | - | - | - | (33,005,044) | 137,297,124 | - | - | - |
| 11/17/2005 | TRANS FROM 1FN06940 (1FN069) | (635,694) | - | - | - | (635,694) | 136,661,430 | - | - | - |
| 11/21/2005 | W/H TAX DIV GS | (16,862) | - | (16,862) | - | - | 136,644,568 | - | - | (16,862) |
| 11/21/2005 | W/H TAX DIV TXN | (7,564) | - | (7,564) | - | - | 136,637,003 | - | - | (7,564) |
| 11/23/2005 | W/H TAX DIV MER | (26,980) | - | (26,980) | - | - | 136,610,024 | - | - | (26,980) |
| 11/23/2005 | W/H TAX DIV C | (344,260) | - | (344,260) | - | - | 136,265,764 | - | - | (344,260) |
| 11/30/2005 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (8) | - | (8) | - | - | 136,265,756 | - | - | (8) |
| 12/1/2005 | W/H TAX DIV INTC | (73,772) | - | (73,772) | - | - | 136,191,984 | - | - | (73,772) |
| 12/1/2005 | W/H TAX DIV WFC | (133,279) | - | (133,279) | - | - | 136,058,705 | - | - | (133,279) |
| 12/2/2005 | W/H TAX DIV BA | (30,352) | - | (30,352) | - | - | 136,028,353 | - | - | (30,352) |
| 12/6/2005 | W/H TAX DIV PFE | (214,445) | - | (214,445) | - | - | 135,813,908 | - | - | (214,445) |
| 12/8/2005 | W/H TAX DIV MSFT | (104,045) | - | (104,045) | - | - | 135,709,863 | - | - | (104,045) |
| 12/9/2005 | W/H TAX DIV XOM | (278,730) | - | (278,730) | - | - | 135,431,133 | - | - | (278,730) |
| 12/12/2005 | W/H TAX DIV CVX | (145,042) | - | (145,042) | - | - | 135,286,091 | - | - | (145,042) |
| 12/12/2005 | W/H TAX DIV MMM | (47,422) | - | (47,422) | - | - | 135,238,669 | - | - | (47,422) |
| 12/12/2005 | W/H TAX DIV IBM | (48,563) | - | (48,563) | - | - | 135,190,106 | - | - | (48,563) |
| 12/12/2005 | W/H TAX DIV UTX | (32,202) | - | (32,202) | - | - | 135,157,904 | - | - | (32,202) |
| 12/13/2005 | W/H TAX DIV JNJ | (140,306) | - | (140,306) | - | - | 135,017,598 | - | - | (140,306) |
| 12/15/2005 | W/H TAX DIV TWX | (33,037) | - | (33,037) | - | - | 134,984,560 | - | - | (33,037) |
| 12/15/2005 | W/H TAX DIV HD | (30,109) | - | (30,109) | - | - | 134,954,451 | - | - | (30,109) |
| 12/15/2005 | CHECK WIRE | (85,000,000) | - | (85,000,000) | - | - | 49,954,451 | - | - | (85,000,000) |
| 12/15/2005 | W/H TAX DIV KO | (81,179) | - | (81,179) | - | - | 49,873,272 | - | - | (81,179) |
| 12/16/2005 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (5) | - | (5) | - | - | 49,873,267 | - | - | (5) |
| 12/16/2005 | W/H TAX DIV AIG | (54,573) | - | (54,573) | - | - | 49,818,694 | - | - | (54,573) |
| 12/16/2005 | TRANS TO 1FN06940 (1FN069) | (32,110,560) | - | - | - | (32,110,560) | 17,708,134 | - | - | - |
| 12/19/2005 | TRANS TO 1FN06940 (1FN069) | (8,333,073) | - | - | - | (8,333,073) | 9,375,061 | - | - | - |
| 12/22/2005 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (8) | - | (8) | - | - | 9,375,053 | - | - | (8) |
| 12/23/2005 | W/H TAX DIV BAC | (282,274) | - | (282,274) | - | - | 9,092,779 | - | - | (282,274) |
| 12/30/2005 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (11) | - | (11) | - | - | 9,092,768 | - | - | (11) |
| 12/30/2005 | W/H TAX DIV S | (10,350) | - | (10,350) | - | - | 9,082,418 | - | - | (10,350) |

MADC1345_00000708

**Exhibit D**

BLMIS ACCOUNT NO. 1FN012 - CTEG ... FBO FAIRFIELD SENTRY LTD

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 Preference Period Initial Transfers | Column 10 Two Year Initial Transfers | Column 11 Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 1/3/2006 | W/H TAX DIV MRK | (119,182) | - | (119,182) | - | - | 8,963,236 | - | - | (119,182) |
| 1/3/2006 | W/H TAX DIV PEP | (61,975) | - | (61,975) | - | - | 8,901,261 | - | - | (61,975) |
| 1/3/2006 | W/H TAX DIV WMT | (34,776) | - | (34,776) | - | - | 8,866,485 | - | - | (34,776) |
| 1/3/2006 | W/H TAX DIV VIA.B | (15,807) | - | (15,807) | - | - | 8,850,677 | - | - | (15,807) |
| 1/4/2006 | W/H TAX DIV HPQ | (32,477) | - | (32,477) | - | - | 8,818,200 | - | - | (32,477) |
| 1/6/2006 | W/H TAX DIV DIS | (77,908) | - | (77,908) | - | - | 8,740,293 | - | - | (77,908) |
| 1/10/2006 | TRANS FROM 1FN06940 *(1FN069)* | 3,584,938 | - | - | 3,584,938 | - | 12,325,231 | - | - | - |
| 1/11/2006 | TRANS TO 1FN06940 *(1FN069)* | (1,234,334) | - | - | - | (1,234,334) | 11,090,897 | - | - | - |
| 1/13/2006 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (11) | - | (11) | - | - | 11,090,886 | - | - | (11) |
| 1/13/2006 | TRANS TO 1FN06940 *(1FN069)* | (3,297) | - | - | - | (3,297) | 11,087,589 | - | - | - |
| 1/23/2006 | TRANS FROM 1FN06940 *(1FN069)* | 13,497,124 | - | - | 13,497,124 | - | 24,584,713 | - | - | - |
| 1/31/2006 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (4) | - | (4) | - | - | 24,584,709 | - | - | (4) |
| 1/31/2006 | W/H TAX DIV MS | (38,477) | - | (38,477) | - | - | 24,546,232 | - | - | (38,477) |
| 1/31/2006 | TRANS FROM 1FN06940 *(1FN069)* | 6,452,192 | - | - | 6,452,192 | - | 30,998,424 | - | - | - |
| 2/1/2006 | W/H TAX DIV VZ | (34,795) | - | (34,795) | - | - | 30,963,629 | - | - | (34,795) |
| 2/1/2006 | W/H TAX DIV T | (39,993) | - | (39,993) | - | - | 30,923,636 | - | - | (39,993) |
| 2/13/2006 | W/H TAX DIV TXN | (6,280) | - | (6,280) | - | - | 30,917,356 | - | - | (6,280) |
| 2/15/2006 | W/H TAX DIV ABT | (55,520) | - | (55,520) | - | - | 30,861,836 | - | - | (55,520) |
| 2/15/2006 | W/H TAX DIV PG | (123,036) | - | (123,036) | - | - | 30,738,800 | - | - | (123,036) |
| 2/16/2006 | TRANS FROM 1FN06940 *(1FN069)* | 14,685,664 | - | - | 14,685,664 | - | 45,424,464 | - | - | - |
| 2/23/2006 | W/H TAX DIV GS | (14,836) | - | (14,836) | - | - | 45,409,628 | - | - | (14,836) |
| 2/24/2006 | W/H TAX DIV C | (322,360) | - | (322,360) | - | - | 45,087,268 | - | - | (322,360) |
| 2/28/2006 | W/H TAX DIV MER | (29,690) | - | (29,690) | - | - | 45,057,579 | - | - | (29,690) |
| 2/28/2006 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (24) | - | (24) | - | - | 45,057,555 | - | - | (24) |
| 3/1/2006 | W/H TAX DIV INTC | (78,133) | - | (78,133) | - | - | 44,979,422 | - | - | (78,133) |
| 3/1/2006 | W/H TAX DIV WFC | (111,162) | - | (111,162) | - | - | 44,868,261 | - | - | (111,162) |
| 3/3/2006 | W/H TAX DIV BA | (32,046) | - | (32,046) | - | - | 44,836,215 | - | - | (32,046) |
| 3/7/2006 | W/H TAX DIV UPS | (54,156) | - | (54,156) | - | - | 44,782,059 | - | - | (54,156) |
| 3/7/2006 | W/H TAX DIV PFE | (230,273) | - | (230,273) | - | - | 44,551,786 | - | - | (230,273) |
| 3/8/2006 | TRANS FROM 1FN06940 *(1FN069)* | 4,195,904 | - | - | 4,195,904 | - | 48,747,690 | - | - | - |
| 3/9/2006 | W/H TAX DIV MSFT | (107,695) | - | (107,695) | - | - | 48,639,994 | - | - | (107,695) |
| 3/10/2006 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (4) | - | (4) | - | - | 48,639,990 | - | - | (4) |
| 3/10/2006 | W/H TAX DIV XOM | (257,788) | - | (257,788) | - | - | 48,382,203 | - | - | (257,788) |
| 3/10/2006 | W/H TAX DIV IBM | (40,846) | - | (40,846) | - | - | 48,341,357 | - | - | (40,846) |
| 3/10/2006 | W/H TAX DIV TGT | (11,869) | - | (11,869) | - | - | 48,329,488 | - | - | (11,869) |
| 3/10/2006 | W/H TAX DIV CVX | (131,663) | - | (131,663) | - | - | 48,197,825 | - | - | (131,663) |
| 3/10/2006 | W/H TAX DIV UTX | (28,723) | - | (28,723) | - | - | 48,169,102 | - | - | (28,723) |
| 3/10/2006 | TRANS FROM 1FN06940 *(1FN069)* | 34,176 | - | - | 34,176 | - | 48,203,278 | - | - | - |
| 3/13/2006 | W/H TAX DIV MMM | (43,678) | - | (43,678) | - | - | 48,159,601 | - | - | (43,678) |
| 3/14/2006 | W/H TAX DIV JNJ | (129,329) | - | (129,329) | - | - | 48,030,272 | - | - | (129,329) |
| 3/15/2006 | W/H TAX DIV TWX | (30,401) | - | (30,401) | - | - | 47,999,871 | - | - | (30,401) |
| 3/16/2006 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (4) | - | (4) | - | - | 47,999,867 | - | - | (4) |
| 3/16/2006 | TRANS TO 1FN06940 *(1FN069)* | (886,512) | - | - | - | (886,512) | 47,113,355 | - | - | - |
| 3/17/2006 | W/H TAX DIV AIG | (50,229) | - | (50,229) | - | - | 47,063,125 | - | - | (50,229) |
| 3/23/2006 | W/H TAX DIV HD | (40,972) | - | (40,972) | - | - | 47,022,151 | - | - | (40,972) |
| 3/24/2006 | W/H TAX DIV BAC | (302,840) | - | (302,840) | - | - | 46,719,313 | - | - | (302,840) |
| 3/27/2006 | TRANS TO 1FN06940 *(1FN069)* | (7,019,942) | - | - | - | (7,019,942) | 39,699,371 | - | - | - |
| 3/28/2006 | TRANS TO 1FN06940 *(1FN069)* | (7,394,926) | - | - | - | (7,394,926) | 32,304,445 | - | - | - |
| 3/29/2006 | TRANS TO 1FN06940 *(1FN069)* | (6,928,176) | - | - | - | (6,928,176) | 25,376,269 | - | - | - |
| 3/30/2006 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (7) | - | (7) | - | - | 25,376,262 | - | - | (7) |
| 3/30/2006 | TRANS TO 1FN06940 *(1FN069)* | (2,955,558) | - | - | - | (2,955,558) | 22,420,704 | - | - | - |
| 3/31/2006 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 22,420,703 | - | - | (1) |
| 3/31/2006 | W/H TAX DIV PEP | (56,664) | - | (56,664) | - | - | 22,364,039 | - | - | (56,664) |
| 3/31/2006 | W/H TAX DIV S | (9,874) | - | (9,874) | - | - | 22,354,165 | - | - | (9,874) |
| 4/3/2006 | W/H TAX DIV KO | (84,928) | - | (84,928) | - | - | 22,269,238 | - | - | (84,928) |
| 4/3/2006 | W/H TAX DIV MRK | (110,379) | - | (110,379) | - | - | 22,158,859 | - | - | (110,379) |
| 4/3/2006 | W/H TAX DIV WMT | (56,349) | - | (56,349) | - | - | 22,102,510 | - | - | (56,349) |
| 4/5/2006 | W/H TAX DIV HPQ | (1) | - | (1) | - | - | 22,102,509 | - | - | (1) |
| 4/5/2006 | W/H TAX DIV HPQ | (30,405) | - | (30,405) | - | - | 22,072,104 | - | - | (30,405) |
| 4/5/2006 | TRANS TO 1FN06940 *(1FN069)* | (3,410,568) | - | - | - | (3,410,568) | 18,661,536 | - | - | - |
| 4/6/2006 | TRANS TO 1FN06940 *(1FN069)* | (3,601,568) | - | - | - | (3,601,568) | 15,059,968 | - | - | - |
| 4/7/2006 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 15,059,967 | - | - | (0) |
| 4/7/2006 | W/H TAX DIV SLB | (18,397) | - | (18,397) | - | - | 15,041,570 | - | - | (18,397) |
| 4/7/2006 | TRANS TO 1FN06940 *(1FN069)* | (3,121,480) | - | - | - | (3,121,480) | 11,920,090 | - | - | - |
| 4/10/2006 | W/H TAX DIV MO | (222,705) | - | (222,705) | - | - | 11,697,385 | - | - | (222,705) |
| 4/13/2006 | CANCEL CHECK WIRE | 120,000 | - | 120,000 | - | - | 11,817,385 | - | - | - |
| 4/13/2006 | CHECK WIRE | (120,000,000) | - | (120,000,000) | - | - | (108,182,615) | - | - | (120,000,000) |
| 4/13/2006 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | (108,182,616) | - | - | (1) |

MADC1345_00000709

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Transaction Amount | | | | | | Preference | | |
| | Transaction | Reported in | Cash | Cash | Transfers of | Transfers of | Balance of | Period Initial | Two Year Initial | Six Year Initial |
| Date | Description | Customer Statement | Deposits | Withdrawals | Principal In | Principal Out | Principal | Transfers | Transfers | Transfers |
| 4/13/2006 | CHECK WIRE | (120,000) | - | (120,000) | - | - | (108,302,616) | - | - | - |
| 4/13/2006 | TRANS FROM 1FN06940 *(1FN069)* | 757,134 | - | - | 757,134 | - | (107,545,482) | - | - | - |
| 4/21/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | (107,545,483) | - | - | (1) |
| 4/21/2006 | TRANS FROM 1FN06940 *(1FN069)* | 27,818,065 | - | - | 27,818,065 | - | (79,727,418) | - | - | - |
| 4/25/2006 | W/H TAX DIV GE | (343,909) | - | (343,909) | - | - | (80,071,327) | - | - | (343,909) |
| 4/28/2006 | CXL W/H TAX DIV SLB | 18,397 | - | 18,397 | - | - | (80,052,930) | - | - | - |
| 4/28/2006 | W/H TAX DIV MS | (36,688) | - | (36,688) | - | - | (80,089,618) | - | - | (36,688) |
| 4/28/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (6) | - | (6) | - | - | (80,089,623) | - | - | (6) |
| 4/28/2006 | W/H TAX DIV MDT | (15,229) | - | (15,229) | - | - | (80,104,852) | - | - | (15,229) |
| 5/1/2006 | W/H TAX DIV T | (170,489) | - | (170,489) | - | - | (80,275,341) | - | - | (170,489) |
| 5/1/2006 | W/H TAX DIV VZ | (157,725) | - | (157,725) | - | - | (80,433,067) | - | - | (157,725) |
| 5/1/2006 | W/H TAX DIV JPM | (115,593) | - | (115,593) | - | - | (80,548,659) | - | - | (115,593) |
| 5/4/2006 | TRANS TO 1FN06940 *(1FN069)* | (68,586) [3] | - | - | - | - | (80,548,659) | - | - | - |
| 5/5/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (10) | - | (10) | - | - | (80,548,670) | - | - | (10) |
| 5/10/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (6) | - | (6) | - | - | (80,548,676) | - | - | (6) |
| 5/10/2006 | W/H TAX DIV AXP | (20,033) | - | (20,033) | - | - | (80,568,709) | - | - | (20,033) |
| 5/10/2006 | TRANS TO 1FN06940 *(1FN069)* | (10,342,130) [3] | - | - | - | - | (80,568,709) | - | - | - |
| 5/15/2006 | W/H TAX DIV ABT | (56,787) | - | (56,787) | - | - | (80,625,496) | - | - | (56,787) |
| 5/15/2006 | W/H TAX DIV PG | (129,881) | - | (129,881) | - | - | (80,755,377) | - | - | (129,881) |
| 5/19/2006 | TRANS TO 1FN06940 *(1FN069)* | (879,244) [3] | - | - | - | - | (80,755,377) | - | - | - |
| 5/22/2006 | W/H TAX DIV CAT | (21,782) | - | (21,782) | - | - | (80,777,159) | - | - | (21,782) |
| 5/22/2006 | W/H TAX DIV TXN | (6,115) | - | (6,115) | - | - | (80,783,274) | - | - | (6,115) |
| 5/22/2006 | TRANS FROM 1FN06940 *(1FN069)* | 34,366,972 | - | - | 34,366,972 | - | (46,416,302) | - | - | - |
| 5/24/2006 | W/H TAX DIV MER | (28,671) | - | (28,671) | - | - | (46,444,973) | - | - | (28,671) |
| 5/25/2006 | W/H TAX DIV GS | (19,816) | - | (19,816) | - | - | (46,464,789) | - | - | (19,816) |
| 5/26/2006 | W/H TAX DIV C | (310,717) | - | (310,717) | - | - | (46,775,505) | - | - | (310,717) |
| 5/31/2006 | W/H TAX DIV UPS | (52,296) | - | (52,296) | - | - | (46,827,801) | - | - | (52,296) |
| 5/31/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (19) | - | (19) | - | - | (46,827,820) | - | - | (19) |
| 6/1/2006 | W/H TAX DIV INTC | (74,545) | - | (74,545) | - | - | (46,902,365) | - | - | (74,545) |
| 6/1/2006 | W/H TAX DIV WFC | (113,308) | - | (113,308) | - | - | (47,015,673) | - | - | (113,308) |
| 6/2/2006 | W/H TAX DIV BA | (30,965) | - | (30,965) | - | - | (47,046,637) | - | - | (30,965) |
| 6/5/2006 | W/H TAX DIV WMT | (53,787) | - | (53,787) | - | - | (47,100,424) | - | - | (53,787) |
| 6/6/2006 | W/H TAX DIV BMY | (73,454) | - | (73,454) | - | - | (47,173,878) | - | - | (73,454) |
| 6/6/2006 | W/H TAX DIV PFE | (225,698) | - | (225,698) | - | - | (47,399,576) | - | - | (225,698) |
| 6/8/2006 | W/H TAX DIV MSFT | (102,183) | - | (102,183) | - | - | (47,501,760) | - | - | (102,183) |
| 6/9/2006 | W/H TAX DIV XOM | (250,579) | - | (250,579) | - | - | (47,752,339) | - | - | (250,579) |
| 6/12/2006 | W/H TAX DIV MMM | (42,204) | - | (42,204) | - | - | (47,794,542) | - | - | (42,204) |
| 6/12/2006 | W/H TAX DIV IBM | (59,929) | - | (59,929) | - | - | (47,854,472) | - | - | (59,929) |
| 6/12/2006 | W/H TAX DIV UTX | (16,715) | - | (16,715) | - | - | (47,871,187) | - | - | (16,715) |
| 6/13/2006 | W/H TAX DIV JNJ | (141,921) | - | (141,921) | - | - | (48,013,108) | - | - | (141,921) |
| 6/15/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (11) | - | (11) | - | - | (48,013,120) | - | - | (11) |
| 6/15/2006 | W/H TAX DIV TWX | (28,678) | - | (28,678) | - | - | (48,041,798) | - | - | (28,678) |
| 6/15/2006 | TRANS FROM 1FN06940 *(1FN069)* | 22,017,300 | - | - | 22,017,300 | - | (26,024,498) | - | - | - |
| 6/16/2006 | TRANS FROM 1FN06940 *(1FN069)* | 33,017,592 | - | - | 33,017,592 | - | 6,993,094 | - | - | - |
| 6/19/2006 | TRANS FROM 1FN06940 *(1FN069)* | 33,404,902 | - | - | 33,404,902 | - | 40,397,996 | - | - | - |
| 6/22/2006 | W/H TAX DIV HD | (41,286) | - | (41,286) | - | - | 40,356,710 | - | - | (41,286) |
| 6/23/2006 | W/H TAX DIV BAC | (298,178) | - | (298,178) | - | - | 40,058,531 | - | - | (298,178) |
| 6/30/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (98) | - | (98) | - | - | 40,058,434 | - | - | (98) |
| 6/30/2006 | W/H TAX DIV S | (9,461) | - | (9,461) | - | - | 40,048,973 | - | - | (9,461) |
| 6/30/2006 | W/H TAX DIV PEP | (61,973) | - | (61,973) | - | - | 39,987,000 | - | - | (61,973) |
| 7/3/2006 | W/H TAX DIV CVX | (149,089) | - | (149,089) | - | - | 39,837,910 | - | - | (149,089) |
| 7/3/2006 | W/H TAX DIV KO | (56,421) | - | (56,421) | - | - | 39,781,489 | - | - | (56,421) |
| 7/3/2006 | W/H TAX DIV MRK | (104,592) | - | (104,592) | - | - | 39,676,898 | - | - | (104,592) |
| 7/3/2006 | W/H TAX DIV AIG | (49,888) | - | (49,888) | - | - | 39,627,010 | - | - | (49,888) |
| 7/5/2006 | W/H TAX DIV HPQ | (29,103) | - | (29,103) | - | - | 39,597,907 | - | - | (29,103) |
| 7/7/2006 | W/H TAX DIV SLB | (20,052) | - | (20,052) | - | - | 39,577,856 | - | - | - |
| 7/10/2006 | W/H TAX DIV MO | (145,603) | - | (145,603) | - | - | 39,432,253 | - | - | (145,603) |
| 7/14/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (29) | - | (29) | - | - | 39,432,224 | - | - | (29) |
| 7/14/2006 | TRANS TO 1FN06940 *(1FN069)* | (2,734,112) | - | - | - | (2,734,112) | 36,698,112 | - | - | - |
| 7/21/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 36,698,110 | - | - | (2) |
| 7/31/2006 | TRANS FROM 1FN06940 *(1FN069)* | 19,839,884 | - | - | 19,839,884 | - | 56,537,994 | - | - | - |
| 7/31/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (11) | - | (11) | - | - | 56,537,984 | - | - | (11) |
| 7/31/2006 | W/H TAX DIV MS | (15,451) | - | (15,451) | - | - | 56,522,533 | - | - | (15,451) |
| 8/4/2006 | CHECK WIRE | 160,000,000 | 160,000,000 | - | - | - | 216,522,533 | - | - | - |
| 8/7/2006 | CXL W/H TAX DIV SLB | 20,052 | - | 20,052 | - | - | 216,542,584 | - | - | - |
| 8/15/2006 | W/H TAX DIV ABT | (23,916) | - | (23,916) | - | - | 216,518,669 | - | - | (23,916) |
| 8/15/2006 | W/H TAX DIV PG | (96,795) | - | (96,795) | - | - | 216,421,873 | - | - | (96,795) |

MADC1345_00000710

BLMIS ACCOUNT NO. 1FN012 - CITCO GLOBAL CUSTODY NV FBO FAIRFIELD SENTRY LTD

| Column 1<br><br>Date | Column 2<br>Transaction<br>Description | Column 3<br>Transaction Amount<br>Reported in<br>Customer Statement | Column 4<br>Cash<br>Deposits | Column 5<br>Cash<br>Withdrawals | Column 6<br>Transfers of<br>Principal In | Column 7<br>Transfers of<br>Principal Out | Column 8<br>Balance of<br>Principal | Column 9<br>Preference<br>Period Initial<br>Transfers | Column 10<br>Two Year<br>Initial<br>Transfers | Column 11<br>Six Year<br>Initial<br>Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 8/17/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (18) | - | (18) | - | - | 216,421,855 | - | - | (18) |
| 8/17/2006 | TRANS TO 1FN06090 (1FN069) | (38,509,970) | - | - | - | (38,509,970) | 177,911,885 | - | - | - |
| 8/21/2006 | W/H TAX DIV CAT | (10,014) | - | (10,014) | - | - | 177,901,870 | - | - | (10,014) |
| 8/21/2006 | W/H TAX DIV TXN | (4,414) | - | (4,414) | - | - | 177,897,456 | - | - | (4,414) |
| 8/23/2006 | W/H TAX DIV MER | (21,098) | - | (21,098) | - | - | 177,876,359 | - | - | (21,098) |
| 8/24/2006 | W/H TAX DIV GS | (14,768) | - | (14,768) | - | - | 177,861,591 | - | - | (14,768) |
| 8/25/2006 | W/H TAX DIV C | (229,768) | - | (229,768) | - | - | 177,631,823 | - | - | (229,768) |
| 9/1/2006 | W/H TAX DIV INTC | (55,221) | - | (55,221) | - | - | 177,576,602 | - | - | (55,221) |
| 9/1/2006 | W/H TAX DIV BA | (22,785) | - | (22,785) | - | - | 177,553,817 | - | - | (22,785) |
| 9/1/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (6) | - | (6) | - | - | 177,553,811 | - | - | (6) |
| 9/1/2006 | W/H TAX DIV WFC | (89,791) | - | (89,791) | - | - | 177,464,020 | - | - | (89,791) |
| 9/5/2006 | W/H TAX DIV WMT | (39,579) | - | (39,579) | - | - | 177,424,441 | - | - | (39,579) |
| 9/5/2006 | W/H TAX DIV PFE | (166,343) | - | (166,343) | - | - | 177,258,098 | - | - | (166,343) |
| 9/6/2006 | W/H TAX DIV UPS | (38,482) | - | (38,482) | - | - | 177,219,616 | - | - | (38,482) |
| 9/11/2006 | W/H TAX DIV CVX | (109,707) | - | (109,707) | - | - | 177,109,909 | - | - | (109,707) |
| 9/11/2006 | W/H TAX DIV IBM | (43,039) | - | (43,039) | - | - | 177,066,870 | - | - | (43,039) |
| 9/11/2006 | W/H TAX DIV UTX | (24,600) | - | (24,600) | - | - | 177,042,271 | - | - | (24,600) |
| 9/11/2006 | W/H TAX DIV XOM | (182,107) | - | (182,107) | - | - | 176,860,164 | - | - | (182,107) |
| 9/12/2006 | W/H TAX DIV JNJ | (104,433) | - | (104,433) | - | - | 176,755,731 | - | - | (104,433) |
| 9/12/2006 | W/H TAX DIV MMM | (31,056) | - | (31,056) | - | - | 176,724,676 | - | - | (31,056) |
| 9/14/2006 | W/H TAX DIV MSFT | (74,861) | - | (74,861) | - | - | 176,649,815 | - | - | (74,861) |
| 9/15/2006 | W/H TAX DIV TWX | (22,541) | - | (22,541) | - | - | 176,627,273 | - | - | (22,541) |
| 9/15/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 176,627,273 | - | - | (1) |
| 9/15/2006 | W/H TAX DIV AIG | (40,381) | - | (40,381) | - | - | 176,586,892 | - | - | (40,381) |
| 9/15/2006 | TRANS TO 1FN06940 (1FN069) | (24,585,620) | - | - | - | (24,585,620) | 152,001,272 | - | - | - |
| 9/21/2006 | W/H TAX DIV HD | (29,115) | - | (29,115) | - | - | 151,972,157 | - | - | (29,115) |
| 9/22/2006 | W/H TAX DIV BAC | (241,018) | - | (241,018) | - | - | 151,731,139 | - | - | (241,018) |
| 9/26/2006 | TRANS TO 1FN06940 (1FN069) | (9,592,330) | - | - | - | (9,592,330) | 142,138,809 | - | - | - |
| 9/27/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (13) | - | (13) | - | - | 142,138,796 | - | - | (13) |
| 9/27/2006 | TRANS TO 1FN06940 (1FN069) | (4,950,880) | - | - | - | (4,950,880) | 137,187,916 | - | - | - |
| 9/29/2006 | W/H TAX DIV S | (7,081) | - | (7,081) | - | - | 137,180,835 | - | - | (7,081) |
| 9/29/2006 | W/H TAX DIV PEP | (46,672) | - | (46,672) | - | - | 137,134,163 | - | - | (46,672) |
| 10/2/2006 | W/H TAX DIV MRK | (76,964) | - | (76,964) | - | - | 137,057,200 | - | - | (76,964) |
| 10/2/2006 | W/H TAX DIV KO | (60,170) | - | (60,170) | - | - | 136,997,029 | - | - | (60,170) |
| 10/4/2006 | W/H TAX DIV HPQ | (20,929) | - | (20,929) | - | - | 136,976,101 | - | - | (20,929) |
| 10/5/2006 | CHECK WIRE | 100,000,000 | 100,000,000 | - | - | - | 236,976,101 | - | - | - |
| 10/10/2006 | W/H TAX DIV MO | (170,080) | - | (170,080) | - | - | 236,806,021 | - | - | (170,080) |
| 10/17/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (19) | - | (19) | - | - | 236,806,002 | - | - | (19) |
| 10/25/2006 | W/H TAX DIV GE | (245,923) | - | (245,923) | - | - | 236,560,079 | - | - | (245,923) |
| 10/26/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (6) | - | (6) | - | - | 236,560,073 | - | - | (6) |
| 10/26/2006 | TRANS TO 1FN06940 (1FN069) | (3,616,086) | - | - | - | (3,616,086) | 232,943,987 | - | - | - |
| 10/27/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 232,943,986 | - | - | (1) |
| 10/27/2006 | TRANS TO 1FN06940 (1FN069) | (778,700) | - | - | - | (778,700) | 232,165,286 | - | - | - |
| 10/30/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 232,165,285 | - | - | (1) |
| 10/30/2006 | TRANS FROM 1FN06940 (1FN069) | 933,300 | - | - | 933,300 | - | 233,098,585 | - | - | - |
| 10/31/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 233,098,585 | - | - | (0) |
| 11/20/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (8) | - | (8) | - | - | 233,098,576 | - | - | (8) |
| 11/20/2006 | W/H TAX DIV TXN | (8,471) | - | (8,471) | - | - | 233,090,106 | - | - | (8,471) |
| 11/20/2006 | TRANS TO 1FN06940 (1FN069) | (15,321,987) | - | - | - | (15,321,987) | 217,768,119 | - | - | - |
| 11/22/2006 | W/H TAX DIV GE | (323,506) | - | (323,506) | - | - | 217,444,613 | - | - | (323,506) |
| 11/22/2006 | W/H TAX DIV MER | (31,142) | - | (31,142) | - | - | 217,413,471 | - | - | (31,142) |
| 11/27/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | 217,413,468 | - | - | (3) |
| 11/30/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 217,413,465 | - | - | (2) |
| 11/30/2006 | TRANS FROM 1FN06940 (1FN069) | 4,080 | - | - | 4,080 | - | 217,417,545 | - | - | - |
| 12/26/2006 | TRANS TO 1FN06940 (1FN069) | (17,335,418) | - | - | - | (17,335,418) | 200,082,127 | - | - | - |
| 12/27/2006 | TRANS TO 1FN06940 (1FN069) | (8,941,332) | - | - | - | (8,941,332) | 191,140,795 | - | - | - |
| 12/28/2006 | TRANS TO 1FN06940 (1FN069) | (4,950,288) | - | - | - | (4,950,288) | 186,190,507 | - | - | - |
| 1/2/2007 | W/H TAX DIV PEP | (68,093) | - | (68,093) | - | - | 186,122,414 | - | (68,093) | (68,093) |
| 1/2/2007 | W/H TAX DIV WMT | (56,276) | - | (56,276) | - | - | 186,066,138 | - | (56,276) | (56,276) |
| 1/2/2007 | W/H TAX DIV MRK | (111,672) | - | (111,672) | - | - | 185,954,466 | - | (111,672) | (111,672) |
| 1/3/2007 | W/H TAX DIV MCD | (161,940) | - | (161,940) | - | - | 185,792,526 | - | (161,940) | (161,940) |
| 1/3/2007 | W/H TAX DIV BA | (33,634) | - | (33,634) | - | - | 185,758,892 | - | (33,634) | (33,634) |
| 1/3/2007 | W/H TAX DIV XOM | (256,348) | - | (256,348) | - | - | 185,502,544 | - | (256,348) | (256,348) |
| 1/3/2007 | W/H TAX DIV TGT | (13,453) | - | (13,453) | - | - | 185,489,090 | - | (13,453) | (13,453) |
| 1/3/2007 | W/H TAX DIV UTX | (36,312) | - | (36,312) | - | - | 185,452,779 | - | (36,312) | (36,312) |
| 1/3/2007 | W/H TAX DIV INTC | (77,617) | - | (77,617) | - | - | 185,375,161 | - | (77,617) | (77,617) |
| 1/3/2007 | W/H TAX DIV EXC | (34,879) | - | (34,879) | - | - | 185,340,282 | - | (34,879) | (34,879) |
| 1/3/2007 | W/H TAX DIV PFE | (237,261) | - | (237,261) | - | - | 185,103,021 | - | (237,261) | (237,261) |

MADC1345_00000711

BLMIS ACCOUNT NO. 1FN012 - CTF/S FFR BIENAL ??? FBO FAIRFIELD SENTRY LTD

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | Preference Period Initial Transfers | Two Year Initial Transfers | Six Year Initial Transfers |
| 1/3/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 185,103,019 | - | (2) | (2) |
| 1/3/2007 | W/H TAX DIV TWX | (30,516) | - | (30,516) | - | - | 185,072,503 | - | (30,516) | (30,516) |
| 1/3/2007 | W/H TAX DIV S | (10,088) | - | (10,088) | - | - | 185,062,415 | - | (10,088) | (10,088) |
| 1/3/2007 | W/H TAX DIV HPQ | (29,922) | - | (29,922) | - | - | 185,032,493 | - | (29,922) | (29,922) |
| 1/3/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (5) | - | (5) | - | - | 185,032,488 | - | (5) | (5) |
| 1/3/2007 | W/H TAX DIV WB | (148,207) | - | (148,207) | - | - | 184,884,281 | - | (148,207) | (148,207) |
| 1/3/2007 | W/H TAX DIV KO | (86,000) | - | (86,000) | - | - | 184,798,281 | - | (86,000) | (86,000) |
| 1/3/2007 | W/H TAX DIV IBM | (60,947) | - | (60,947) | - | - | 184,737,334 | - | (60,947) | (60,947) |
| 1/3/2007 | W/H TAX DIV BAC | (345,930) | - | (345,930) | - | - | 184,391,404 | - | (345,930) | (345,930) |
| 1/3/2007 | W/H TAX DIV WFC | (126,643) | - | (126,643) | - | - | 184,264,761 | - | (126,643) | (126,643) |
| 1/3/2007 | W/H TAX DIV MSFT | (116,234) | - | (116,234) | - | - | 184,148,528 | - | (116,234) | (116,234) |
| 1/3/2007 | W/H TAX DIV MMM | (45,841) | - | (45,841) | - | - | 184,102,686 | - | (45,841) | (45,841) |
| 1/3/2007 | W/H TAX DIV JNJ | (149,483) | - | (149,483) | - | - | 183,953,203 | - | (149,483) | (149,483) |
| 1/3/2007 | W/H TAX DIV HD | (62,419) | - | (62,419) | - | - | 183,890,784 | - | (62,419) | (62,419) |
| 1/3/2007 | W/H TAX DIV AIG | (58,258) | - | (58,258) | - | - | 183,832,527 | - | (58,258) | (58,258) |
| 1/3/2007 | W/H TAX DIV CVX | (155,462) | - | (155,462) | - | - | 183,677,065 | - | (155,462) | (155,462) |
| 1/4/2007 | W/H TAX DIV UPS | (56,803) | - | (56,803) | - | - | 183,620,261 | - | (56,803) | (56,803) |
| 1/10/2007 | W/H TAX DIV MO | (67,055) | - | (67,055) | - | - | 183,553,206 | - | (67,055) | (67,055) |
| 1/12/2007 | W/H TAX DIV DIS | (88,585) | - | (88,585) | - | - | 183,464,621 | - | (88,585) | (88,585) |
| 1/25/2007 | W/H TAX DIV GE | (227,936) | - | (227,936) | - | - | 183,236,685 | - | (227,936) | (227,936) |
| 1/29/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (38) | - | (38) | - | - | 183,236,647 | - | (38) | (38) |
| 1/31/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 183,236,646 | - | (1) | (1) |
| 2/6/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (4) | - | (4) | - | - | 183,236,642 | - | (4) | (4) |
| 2/12/2007 | CHECK WIRE | 175,000,000 | 175,000,000 | - | - | - | 358,236,642 | - | - | - |
| 2/13/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 358,236,641 | - | (2) | (2) |
| 2/16/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 358,236,639 | - | (2) | (2) |
| 2/16/2007 | TRANS TO 1FN06940 (1FN069) | (1,917,300) | - | - | - | (1,917,300) | 356,319,339 | - | - | - |
| 2/20/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (7) | - | (7) | - | - | 356,319,332 | - | (7) | (7) |
| 2/20/2007 | TRANS TO 1FN06940 (1FN069) | (1,395,070) | - | - | - | (1,395,070) | 354,924,262 | - | - | - |
| 2/22/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 354,924,261 | - | (2) | (2) |
| 2/22/2007 | TRANS TO 1FN06940 (1FN069) | (2,281,635) | - | - | - | (2,281,635) | 352,642,626 | - | - | - |
| 2/23/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 352,642,624 | - | (2) | (2) |
| 2/23/2007 | TRANS TO 1FN06940 (1FN069) | (1,008,928) | - | - | - | (1,008,928) | 351,633,696 | - | - | - |
| 2/28/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 351,633,695 | - | (1) | (1) |
| 3/1/2007 | W/H TAX DIV COP | (52,547) | - | (52,547) | - | - | 351,581,148 | - | (52,547) | (52,547) |
| 3/6/2007 | W/H TAX DIV UPS | (34,830) | - | (34,830) | - | - | 351,546,318 | - | (34,830) | (34,830) |
| 3/9/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 351,546,316 | - | (2) | (2) |
| 3/9/2007 | TRANS FROM 1FN06940 (1FN069) | 92,721,384 | - | - | 92,721,384 | - | 444,267,700 | - | - | - |
| 3/12/2007 | W/H TAX DIV UTX | (11,976) | - | (11,976) | - | - | 444,255,724 | - | (11,976) | (11,976) |
| 3/12/2007 | W/H TAX DIV MMM | (43,124) | - | (43,124) | - | - | 444,212,600 | - | (43,124) | (43,124) |
| 3/12/2007 | W/H TAX DIV CVX | (49,138) | - | (49,138) | - | - | 444,163,462 | - | (49,138) | (49,138) |
| 3/12/2007 | W/H TAX DIV TGT | (8,142) | - | (8,142) | - | - | 444,155,320 | - | (8,142) | (8,142) |
| 3/12/2007 | TRANS FROM 1FN06940 (1FN069) | 22,235,796 | - | - | 22,235,796 | - | 466,391,116 | - | - | - |
| 3/13/2007 | W/H TAX DIV JNJ | (130,551) | - | (130,551) | - | - | 466,260,565 | - | (130,551) | (130,551) |
| 3/15/2007 | W/H TAX DIV TWX | (25,942) | - | (25,942) | - | - | 466,234,623 | - | (25,942) | (25,942) |
| 3/15/2007 | W/H TAX DIV WB | (125,778) | - | (125,778) | - | - | 466,108,845 | - | (125,778) | (125,778) |
| 3/16/2007 | W/H TAX DIV AIG | (50,031) | - | (50,031) | - | - | 466,058,815 | - | (50,031) | (50,031) |
| 3/19/2007 | TRANS FROM 1FN06940 (1FN069) | 17,581,608 | - | - | 17,581,608 | - | 483,640,423 | - | - | - |
| 3/20/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (29) | - | (29) | - | - | 483,640,394 | - | (29) | (29) |
| 3/20/2007 | TRANS TO 1FN06940 (1FN069) | (12,165,052) | - | - | - | (12,165,052) | 471,475,342 | - | - | - |
| 3/22/2007 | W/H TAX DIV HD | (55,589) | - | (55,589) | - | - | 471,419,752 | - | (55,589) | (55,589) |
| 3/23/2007 | W/H TAX DIV BAC | (295,579) | - | (295,579) | - | - | 471,124,173 | - | (295,579) | (295,579) |
| 3/26/2007 | TRANS TO 1FN06940 (1FN069) | (31,851,227) | - | - | - | (31,851,227) | 439,272,946 | - | - | - |
| 3/27/2007 | TRANS FROM 1FN06940 (1FN069) | 3,716,001 | - | - | 3,716,001 | - | 442,988,947 | - | - | - |
| 3/28/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (11) | - | (11) | - | - | 442,988,936 | - | (11) | (11) |
| 3/28/2007 | TRANS FROM 1FN06940 (1FN069) | 3,516,480 | - | - | 3,516,480 | - | 446,505,416 | - | - | - |
| 3/30/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (7) | - | (7) | - | - | 446,505,409 | - | (7) | (7) |
| 3/30/2007 | W/H TAX DIV S | (9,950) | - | (9,950) | - | - | 446,495,459 | - | (9,950) | (9,950) |
| 3/30/2007 | W/H TAX DIV PEP | (67,929) | - | (67,929) | - | - | 446,427,530 | - | (67,929) | (67,929) |
| 4/2/2007 | W/H TAX DIV KO | (97,522) | - | (97,522) | - | - | 446,330,009 | - | (97,522) | (97,522) |
| 4/2/2007 | W/H TAX DIV WMT | (75,375) | - | (75,375) | - | - | 446,254,634 | - | (75,375) | (75,375) |
| 4/2/2007 | W/H TAX DIV MRK | (116,412) | - | (116,412) | - | - | 446,138,222 | - | (116,412) | (116,412) |
| 4/4/2007 | W/H TAX DIV HPQ | (30,901) | - | (30,901) | - | - | 446,107,321 | - | (30,901) | (30,901) |
| 4/10/2007 | W/H TAX DIV MO | (252,003) | - | (252,003) | - | - | 445,855,318 | - | (252,003) | (252,003) |
| 4/19/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (22) | - | (22) | - | - | 445,855,296 | - | (22) | (22) |
| 4/19/2007 | TRANS TO 1FN06940 (1FN069) | (1,128,240) | - | - | - | (1,128,240) | 444,727,056 | - | - | - |
| 4/20/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 444,727,055 | - | (1) | (1) |
| 4/20/2007 | TRANS TO 1FN06940 (1FN069) | (1,334,235) | - | - | - | (1,334,235) | 443,392,820 | - | - | - |

MADC1345_00000712

**Exhibit D**

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Transaction Amount Reported in | | | | | | Preference | Two Year | Six Year |
| | Transaction | Reported in Customer Statement | Cash | Cash | Transfers of | Transfers of | Balance of | Period Initial | Initial | Initial |
| Date | Description | | Deposits | Withdrawals | Principal In | Principal Out | Principal | Transfers | Transfers | Transfers |
| 4/25/2007 | W/H TAX DIV GE | (342,746) | - | (342,746) | - | - | 443,050,075 | - | (342,746) | (342,746) |
| 4/25/2007 | TRANS FROM 1FN06940 *(1FN069)* | 11,421,944 | - | - | 11,421,944 | - | 454,472,019 | - | - | - |
| 4/30/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (14) | - | (14) | - | - | 454,472,005 | - | (14) | (14) |
| 5/3/2007 | CHECK WIRE | 100,000,000 | 100,000,000 | - | - | - | 554,472,005 | - | - | - |
| 5/4/2007 | W/H TAX DIV CVS | (9,004) | - | (9,004) | - | - | 554,463,001 | - | (9,004) | (9,004) |
| 5/15/2007 | W/H TAX DIV PG | (159,536) | - | (159,536) | - | - | 554,303,465 | - | (159,536) | (159,536) |
| 5/21/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (25) | - | (25) | - | - | 554,303,439 | - | (25) | (25) |
| 5/21/2007 | TRANS TO 1FN06940 *(1FN069)* | (37,493,232) | - | - | - | (37,493,232) | 516,810,207 | - | - | - |
| 5/23/2007 | W/H TAX DIV MER | (42,230) | - | (42,230) | - | - | 516,767,977 | - | (42,230) | (42,230) |
| 5/24/2007 | W/H TAX DIV GS | (12,359) | - | (12,359) | - | - | 516,755,619 | - | (12,359) | (12,359) |
| 5/25/2007 | W/H TAX DIV C | (376,452) | - | (376,452) | - | - | 516,379,167 | - | (376,452) | (376,452) |
| 5/31/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 516,379,166 | - | (1) | (1) |
| 6/1/2007 | W/H TAX DIV INTC | (93,510) | - | (93,510) | - | - | 516,285,657 | - | (93,510) | (93,510) |
| 6/1/2007 | W/H TAX DIV BA | (38,982) | - | (38,982) | - | - | 516,246,674 | - | (38,982) | (38,982) |
| 6/1/2007 | W/H TAX DIV WFC | (135,137) | - | (135,137) | - | - | 516,111,538 | - | (135,137) | (135,137) |
| 6/1/2007 | W/H TAX DIV COP | (97,062) | - | (97,062) | - | - | 516,014,476 | - | (97,062) | (97,062) |
| 6/4/2007 | W/H TAX DIV WMT | (76,685) | - | (76,685) | - | - | 515,937,791 | - | (76,685) | (76,685) |
| 6/5/2007 | W/H TAX DIV PFE | (295,477) | - | (295,477) | - | - | 515,642,314 | - | (295,477) | (295,477) |
| 6/5/2007 | W/H TAX DIV UPS | (61,938) | - | (61,938) | - | - | 515,580,377 | - | (61,938) | (61,938) |
| 6/6/2007 | W/H TAX DIV TYC | (28,566) | - | (28,566) | - | - | 515,551,811 | - | - | - |
| 6/7/2007 | CHECK WIRE | 100,000,000 | 100,000,000 | - | - | - | 615,551,811 | - | - | - |
| 6/11/2007 | W/H TAX DIV UTX | (39,080) | - | (39,080) | - | - | 615,512,731 | - | (39,080) | (39,080) |
| 6/11/2007 | W/H TAX DIV IBM | (85,801) | - | (85,801) | - | - | 615,426,930 | - | (85,801) | (85,801) |
| 6/11/2007 | W/H TAX DIV CVX | (178,841) | - | (178,841) | - | - | 615,248,089 | - | (178,841) | (178,841) |
| 6/11/2007 | W/H TAX DIV XOM | (284,624) | - | (284,624) | - | - | 614,963,465 | - | (284,624) | (284,624) |
| 6/12/2007 | W/H TAX DIV MMM | (51,481) | - | (51,481) | - | - | 614,911,984 | - | (51,481) | (51,481) |
| 6/12/2007 | W/H TAX DIV JNJ | (170,761) | - | (170,761) | - | - | 614,741,223 | - | (170,761) | (170,761) |
| 6/14/2007 | W/H TAX DIV MSFT | (124,222) | - | (124,222) | - | - | 614,617,002 | - | (124,222) | (124,222) |
| 6/15/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (12) | - | (12) | - | - | 614,616,990 | - | (12) | (12) |
| 6/15/2007 | W/H TAX DIV AIG | (61,938) | - | (61,938) | - | - | 614,555,052 | - | (61,938) | (61,938) |
| 6/15/2007 | W/H TAX DIV TWX | (30,458) | - | (30,458) | - | - | 614,524,594 | - | (30,458) | (30,458) |
| 6/15/2007 | W/H TAX DIV WB | (150,152) | - | (150,152) | - | - | 614,374,442 | - | (150,152) | (150,152) |
| 6/15/2007 | TRANS TO 1FN06940 *(1FN069)* | (4,647,552) | - | - | - | (4,647,552) | 609,726,890 | - | - | - |
| 6/21/2007 | W/H TAX DIV HD | (66,362) | - | (66,362) | - | - | 609,660,528 | - | (66,362) | (66,362) |
| 6/21/2007 | TRANS TO 1FN06940 *(1FN069)* | (14,977,242) | - | - | - | (14,977,242) | 594,683,286 | - | - | - |
| 6/21/2007 | TRANS FROM 1FN06940 *(1FN069)* | 14,977,242 | - | - | 14,977,242 | - | 594,683,286 | - | - | - |
| 6/21/2007 | CXL TRANS FR 1FN06940 *(1FN069)* | (14,977,242) | - | - | - | - | 594,683,286 | - | - | - |
| 6/22/2007 | W/H TAX DIV BAC | (360,364) | - | (360,364) | - | - | 594,322,922 | - | (360,364) | (360,364) |
| 6/22/2007 | TRANS TO 1FN06940 *(1FN069)* | (10,313,424) | - | - | - | (10,313,424) | 584,009,498 | - | - | - |
| 6/25/2007 | TRANS TO 1FN06940 *(1FN069)* | (13,833,270) | - | - | - | (13,833,270) | 570,176,228 | - | - | - |
| 6/29/2007 | W/H TAX DIV S | (10,390) | - | (10,390) | - | - | 570,165,838 | - | (10,390) | (10,390) |
| 6/29/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (22) | - | (22) | - | - | 570,165,817 | - | (22) | (22) |
| 6/29/2007 | W/H TAX DIV PEP | (88,776) | - | (88,776) | - | - | 570,077,041 | - | (88,776) | (88,776) |
| 7/2/2007 | W/H TAX DIV KO | (97,320) | - | (97,320) | - | - | 569,979,720 | - | (97,320) | (97,320) |
| 7/2/2007 | W/H TAX DIV MRK | (117,172) | - | (117,172) | - | - | 569,862,549 | - | (117,172) | (117,172) |
| 7/5/2007 | W/H TAX DIV HPQ | (31,103) | - | (31,103) | - | - | 569,831,446 | - | (31,103) | (31,103) |
| 7/10/2007 | W/H TAX DIV MO | (206,356) | - | (206,356) | - | - | 569,625,089 | - | (206,356) | (206,356) |
| 7/17/2007 | CXL W/H TAX DIV TYC | 28,566 | - | 28,566 | - | - | 569,653,655 | - | - | - |
| 7/17/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (7) | - | (7) | - | - | 569,653,649 | - | (7) | (7) |
| 8/6/2007 | CHECK WIRE | 100,000,000 | 100,000,000 | - | - | - | 669,653,649 | - | - | - |
| 8/6/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (42) | - | (42) | - | - | 669,653,607 | - | (42) | (42) |
| 8/6/2007 | TRANS TO 1FN06940 *(1FN069)* | (5,453,034) | - | - | - | (5,453,034) | 664,200,573 | - | - | - |
| 8/21/2007 | TRANS FROM 1FN06940 *(1FN069)* | 45,035,873 | - | - | 45,035,873 | - | 709,236,446 | - | - | - |
| 8/24/2007 | W/H TAX DIV C | (166,027) | - | (166,027) | - | - | 709,070,418 | - | (166,027) | (166,027) |
| 9/4/2007 | W/H TAX DIV INTC | (41,115) | - | (41,115) | - | - | 709,029,303 | - | (41,115) | (41,115) |
| 9/4/2007 | W/H TAX DIV WFC | (64,740) | - | (64,740) | - | - | 708,964,563 | - | (64,740) | (64,740) |
| 9/4/2007 | W/H TAX DIV WMT | (33,182) | - | (33,182) | - | - | 708,931,380 | - | (33,182) | (33,182) |
| 9/5/2007 | W/H TAX DIV PFE | (127,856) | - | (127,856) | - | - | 708,803,524 | - | (127,856) | (127,856) |
| 9/6/2007 | CHECK WIRE | (65,000,000) | - | (65,000,000) | - | - | 643,803,524 | - | (65,000,000) | (65,000,000) |
| 9/6/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (29) | - | (29) | - | - | 643,803,495 | - | (29) | (29) |
| 9/7/2007 | W/H TAX DIV BA | (16,243) | - | (16,243) | - | - | 643,787,252 | - | (16,243) | (16,243) |
| 9/10/2007 | W/H TAX DIV UTX | (20,420) | - | (20,420) | - | - | 643,766,832 | - | (20,420) | (20,420) |
| 9/10/2007 | W/H TAX DIV IBM | (34,807) | - | (34,807) | - | - | 643,732,026 | - | (34,807) | (34,807) |
| 9/10/2007 | W/H TAX DIV CVX | (77,387) | - | (77,387) | - | - | 643,654,639 | - | (77,387) | (77,387) |
| 9/10/2007 | W/H TAX DIV XOM | (123,853) | - | (123,853) | - | - | 643,530,786 | - | (123,853) | (123,853) |
| 9/13/2007 | W/H TAX DIV MSFT | (52,790) | - | (52,790) | - | - | 643,477,996 | - | (52,790) | (52,790) |
| 9/14/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (5) | - | (5) | - | - | 643,477,990 | - | (5) | (5) |
| 9/14/2007 | TRANS FROM 1FN06940 *(1FN069)* | 4,242,624 | - | - | 4,242,624 | - | 647,720,614 | - | - | - |

MADC1345_00000713

BLMIS ACCOUNT NO. 1FN012 - CTP MANAGEMENT LTD C/O FFC FBO FAIRFIELD SENTRY LTD

| Column 1<br><br>Date | Column 2<br><br>Transaction<br>Description | Column 3<br>Transaction Amount<br>Reported in<br>Customer Statement | Column 4<br><br>Cash<br>Deposits | Column 5<br><br>Cash<br>Withdrawals | Column 6<br><br>Transfers of<br>Principal In | Column 7<br><br>Transfers of<br>Principal Out | Column 8<br><br>Balance of<br>Principal | Column 9<br>Preference<br>Period Initial<br>Transfers | Column 10<br>Two Year<br>Initial<br>Transfers | Column 11<br>Six Year<br>Initial<br>Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 9/17/2007 | TRANS TO 1FN06940 (1FN069) | (2,942,534) | - | - | - | (2,942,534) | 644,778,080 | - | - | - |
| 9/18/2007 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 644,778,080 | - | (0) | (0) |
| 9/18/2007 | TRANS FROM 1FN06940 (1FN069) | 3,268,762 | - | - | 3,268,762 | - | 648,046,842 | - | - | - |
| 9/24/2007 | TRANS TO 1FN06940 (1FN069) | (42,476,389) | - | - | - | (42,476,389) | 605,570,453 | - | - | - |
| 9/25/2007 | TRANS TO 1FN06940 (1FN069) | (30,404,772) | - | - | - | (30,404,772) | 575,165,681 | - | - | - |
| 9/26/2007 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (18) | - | (18) | - | - | 575,165,663 | - | (18) | (18) |
| 9/26/2007 | TRANS TO 1FN06940 (1FN069) | (28,915,450) | - | - | - | (28,915,450) | 546,250,213 | - | - | - |
| 10/1/2007 | W/H TAX DIV KO | (39,858) | - | (39,858) | - | - | 546,210,354 | - | (39,858) | (39,858) |
| 10/10/2007 | W/H TAX DIV MO | (92,110) | - | (92,110) | - | - | 546,118,245 | - | (92,110) | (92,110) |
| 10/25/2007 | W/H TAX DIV GE | (243,244) | - | (243,244) | - | - | 545,875,001 | - | (243,244) | (243,244) |
| 10/31/2007 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (85) | - | (85) | - | - | 545,874,916 | - | (85) | (85) |
| 10/31/2007 | TRANS FROM 1FN06940 (1FN069) | 470,972 | - | - | 470,972 | - | 546,345,888 | - | - | - |
| 11/7/2007 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (15) | - | (15) | - | - | 546,345,874 | - | (15) | (15) |
| 11/7/2007 | TRANS TO 1FN06940 (1FN069) | (6,333,334) | - | - | - | (6,333,334) | 540,012,540 | - | - | - |
| 11/8/2007 | TRANS FROM 1FN06940 (1FN069) | 21,057,406 | - | - | 21,057,406 | - | 561,069,946 | - | - | - |
| 11/13/2007 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (12) | - | (12) | - | - | 561,069,933 | - | (12) | (12) |
| 11/15/2007 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (4) | - | (4) | - | - | 561,069,929 | - | (4) | (4) |
| 11/15/2007 | TRANS TO 1FN06940 (1FN069) | (5,374,844) | - | - | - | (5,374,844) | 555,695,085 | - | - | - |
| 11/21/2007 | W/H TAX DIV C | (110,431) | - | (110,431) | - | - | 555,584,655 | - | (110,431) | (110,431) |
| 11/21/2007 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 555,584,654 | - | (1) | (1) |
| 11/21/2007 | W/H TAX DIV MER | (13,014) | - | (13,014) | - | - | 555,571,640 | - | (13,014) | (13,014) |
| 11/21/2007 | TRANS FROM 1FN06940 (1FN069) | 5,214,610 | - | - | 5,214,610 | - | 560,786,250 | - | - | - |
| 11/29/2007 | TRANS TO 1FN06940 (1FN069) | (24,491,805) | - | - | - | (24,491,805) | 536,294,445 | - | - | - |
| 11/30/2007 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (4) | - | (4) | - | - | 536,294,441 | - | (4) | (4) |
| 11/30/2007 | TRANS FROM 1FN06940 (1FN069) | 79,064,709 | - | - | 79,064,709 | - | 615,359,150 | - | - | - |
| 12/3/2007 | W/H TAX DIV COP | (27,440) | - | (27,440) | - | - | 615,331,710 | - | (27,440) | (27,440) |
| 12/3/2007 | W/H TAX DIV MCD | (107,681) | - | (107,681) | - | - | 615,224,029 | - | (107,681) | (107,681) |
| 12/10/2007 | W/H TAX DIV EXC | (17,008) | - | (17,008) | - | - | 615,207,021 | - | (17,008) | (17,008) |
| 12/10/2007 | W/H TAX DIV UTX | (19,438) | - | (19,438) | - | - | 615,187,583 | - | (19,438) | (19,438) |
| 12/10/2007 | W/H TAX DIV CVX | (73,665) | - | (73,665) | - | - | 615,113,918 | - | (73,665) | (73,665) |
| 12/11/2007 | W/H TAX DIV JNJ | (139,301) | - | (139,301) | - | - | 614,974,617 | - | (139,301) | (139,301) |
| 12/11/2007 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (13) | - | (13) | - | - | 614,974,604 | - | (13) | (13) |
| 12/11/2007 | TRANS TO 1FN06940 (1FN069) | (1,702,722) | - | - | - | (1,702,722) | 613,271,882 | - | - | - |
| 12/11/2007 | CANCEL TRANS TO 1FN06940 (1FN069) | 1,702,722 | - | - | - | - | 613,271,882 | - | - | - |
| 12/11/2007 | CANCEL TRANS TO 1FN06940 (1FN069) | (1,702,722) | - | - | - | - | 613,271,882 | - | - | - |
| 12/12/2007 | W/H TAX DIV MMM | (41,579) | - | (41,579) | - | - | 613,230,303 | - | (41,579) | (41,579) |
| 12/13/2007 | W/H TAX DIV MSFT | (53,454) | - | (53,454) | - | - | 613,176,849 | - | (53,454) | (53,454) |
| 12/20/2007 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 613,176,848 | - | (1) | (1) |
| 12/20/2007 | TRANS FROM 1FN06940 (1FN069) | 12,326,748 | - | - | 12,326,748 | - | 625,503,596 | - | - | - |
| 12/31/2007 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (20) | - | (20) | - | - | 625,503,576 | - | (20) | (20) |
| 1/2/2008 | W/H TAX DIV HPQ | (8,058) | - | (8,058) | - | - | 625,495,518 | - | (8,058) | (8,058) |
| 1/2/2008 | W/H TAX DIV WMT | (20,577) | - | (20,577) | - | - | 625,474,941 | - | (20,577) | (20,577) |
| 1/3/2008 | W/H TAX DIV UPS | (25,512) | - | (25,512) | - | - | 625,449,429 | - | (25,512) | (25,512) |
| 1/28/2008 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (15) | - | (15) | - | - | 625,449,414 | - | (15) | (15) |
| 1/28/2008 | TRANS TO 1FN06940 (1FN069) | (7,077,370) | - | - | - | (7,077,370) | 618,372,044 | - | - | - |
| 2/20/2008 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | 618,372,041 | - | (3) | (3) |
| 2/20/2008 | TRANS TO 1FN06940 (1FN069) | (32,855,870) | - | - | - | (32,855,870) | 585,516,171 | - | - | - |
| 2/21/2008 | TRANS FROM 1FN06940 (1FN069) | 7,217,980 | - | - | 7,217,980 | - | 592,734,151 | - | - | - |
| 2/22/2008 | W/H TAX DIV C | (121,487) | - | (121,487) | - | - | 592,612,664 | - | (121,487) | (121,487) |
| 2/28/2008 | W/H TAX DIV GS | (9,843) | - | (9,843) | - | - | 592,602,822 | - | (9,843) | (9,843) |
| 3/3/2008 | W/H TAX DIV WFC | (80,640) | - | (80,640) | - | - | 592,522,182 | - | (80,640) | (80,640) |
| 3/3/2008 | W/H TAX DIV INTC | (56,472) | - | (56,472) | - | - | 592,465,709 | - | (56,472) | (56,472) |
| 3/3/2008 | W/H TAX DIV COP | (56,174) | - | (56,174) | - | - | 592,409,536 | - | (56,174) | (56,174) |
| 3/4/2008 | W/H TAX DIV PFE | (161,983) | - | (161,983) | - | - | 592,247,553 | - | (161,983) | (161,983) |
| 3/4/2008 | W/H TAX DIV UPS | (34,801) | - | (34,801) | - | - | 592,212,752 | - | (34,801) | (34,801) |
| 3/5/2008 | W/H TAX DIV MER | (22,146) | - | (22,146) | - | - | 592,190,606 | - | (22,146) | (22,146) |
| 3/7/2008 | W/H TAX DIV BA | (22,498) | - | (22,498) | - | - | 592,168,108 | - | (22,498) | (22,498) |
| 3/10/2008 | W/H TAX DIV XOM | (147,641) | - | (147,641) | - | - | 592,020,468 | - | (147,641) | (147,641) |
| 3/10/2008 | W/H TAX DIV EXC | (24,607) | - | (24,607) | - | - | 591,995,861 | - | (24,607) | (24,607) |
| 3/10/2008 | W/H TAX DIV CVX | (93,787) | - | (93,787) | - | - | 591,902,074 | - | (93,787) | (93,787) |
| 3/10/2008 | W/H TAX DIV UTX | (24,747) | - | (24,747) | - | - | 591,877,327 | - | (24,747) | (24,747) |
| 3/10/2008 | W/H TAX DIV IBM | (42,183) | - | (42,183) | - | - | 591,835,144 | - | (42,183) | (42,183) |
| 3/11/2008 | W/H TAX DIV JNJ | (90,447) | - | (90,447) | - | - | 591,744,696 | - | (90,447) | (90,447) |
| 3/12/2008 | W/H TAX DIV MMM | (28,122) | - | (28,122) | - | - | 591,716,574 | - | (28,122) | (28,122) |
| 3/13/2008 | CHECK WIRE | 60,000,000 | 60,000,000 | - | - | - | 651,716,574 | - | - | - |
| 3/13/2008 | W/H TAX DIV MSFT | (67,282) | - | (67,282) | - | - | 651,649,292 | - | (67,282) | (67,282) |
| 3/17/2008 | W/H TAX DIV MCD | (34,274) | - | (34,274) | - | - | 651,615,019 | - | (34,274) | (34,274) |
| 3/17/2008 | W/H TAX DIV WB | (98,989) | - | (98,989) | - | - | 651,516,029 | - | (98,989) | (98,989) |

MADC1345_00000714

Exhibit D

**BLMIS ACCOUNT NO. 1FN012 - CTE & CO C/O FGG FBO FAIRFIELD SENTRY LTD**

| Column 1<br>Date | Column 2<br>Transaction Description | Column 3<br>Transaction Amount Reported in Customer Statement | Column 4<br>Cash Deposits | Column 5<br>Cash Withdrawals | Column 6<br>Transfers of Principal In | Column 7<br>Transfers of Principal Out | Column 8<br>Balance of Principal | Column 9<br>Preference Period Initial Transfers | Column 10<br>Two Year Initial Transfers | Column 11<br>Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 3/17/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (13) | - | (13) | - | - | 651,516,016 | - | (13) | (13) |
| 3/17/2008 | W/H TAX DIV TWX | (17,137) | - | (17,137) | - | - | 651,498,879 | - | (17,137) | (17,137) |
| 3/17/2008 | TRANS FROM 1FN06940 *(1FN069)* | 29,246,880 | - | - | 29,246,880 | - | 680,745,759 | - | - | - |
| 3/19/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 680,745,759 | - | (0) | (0) |
| 3/24/2008 | W/H TAX DIV AIG | (39,371) | - | (39,371) | - | - | 680,706,388 | - | (39,371) | (39,371) |
| 3/27/2008 | W/H TAX DIV HD | (28,474) | - | (28,474) | - | - | 680,677,914 | - | (28,474) | (28,474) |
| 3/28/2008 | W/H TAX DIV BAC | (215,977) | - | (215,977) | - | - | 680,461,938 | - | (215,977) | (215,977) |
| 3/31/2008 | W/H TAX DIV PEP | (44,819) | - | (44,819) | - | - | 680,417,118 | - | (44,819) | (44,819) |
| 4/1/2008 | W/H TAX DIV KO | (58,775) | - | (58,775) | - | - | 680,358,343 | - | (58,775) | (58,775) |
| 4/1/2008 | W/H TAX DIV MRK | (64,118) | - | (64,118) | - | - | 680,294,225 | - | (64,118) | (64,118) |
| 4/2/2008 | W/H TAX DIV HPQ | (15,748) | - | (15,748) | - | - | 680,278,477 | - | (15,748) | (15,748) |
| 4/4/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 680,278,475 | - | (1) | (1) |
| 4/4/2008 | W/H TAX DIV KFT | (32,270) | - | (32,270) | - | - | 680,246,205 | - | (32,270) | (32,270) |
| 4/4/2008 | TRANS TO 1FN06940 *(1FN069)* | (18,562,670) | - | - | - | (18,562,670) | 661,683,535 | - | - | - |
| 4/7/2008 | W/H TAX DIV WMT | (41,744) | - | (41,744) | - | - | 661,641,792 | - | (41,744) | (41,744) |
| 4/7/2008 | TRANS FROM 1FN06940 *(1FN069)* | 36,640,730 | - | - | 36,640,730 | - | 698,282,522 | - | - | - |
| 4/23/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (6) | - | (6) | - | - | 698,282,516 | - | (6) | (6) |
| 4/23/2008 | TRANS TO 1FN06940 *(1FN069)* | (84,280) | - | - | - | (84,280) | 698,198,236 | - | - | - |
| 4/25/2008 | W/H TAX DIV GE | (237,561) | - | (237,561) | - | - | 697,960,675 | - | (237,561) | (237,561) |
| 4/25/2008 | W/H TAX DIV MDT | (9,482) | - | (9,482) | - | - | 697,951,194 | - | (9,482) | (9,482) |
| 4/30/2008 | W/H TAX DIV JPM | (86,471) | - | (86,471) | - | - | 697,864,722 | - | (86,471) | (86,471) |
| 4/30/2008 | W/H TAX DIV MS | (18,773) | - | (18,773) | - | - | 697,845,949 | - | (18,773) | (18,773) |
| 5/1/2008 | W/H TAX DIV VZ | (84,259) | - | (84,259) | - | - | 697,761,690 | - | (84,259) | (84,259) |
| 5/1/2008 | W/H TAX DIV T | (164,346) | - | (164,346) | - | - | 697,597,344 | - | (164,346) | (164,346) |
| 5/2/2008 | W/H TAX DIV CVS | (6,068) | - | (6,068) | - | - | 697,591,276 | - | (6,068) | (6,068) |
| 5/2/2008 | W/H TAX DIV BK | (18,204) | - | (18,204) | - | - | 697,573,071 | - | (18,204) | (18,204) |
| 5/5/2008 | CHECK WIRE | (80,000,000) | - | (80,000,000) | - | - | 617,573,071 | (80,000,000) | (80,000,000) | (80,000,000) |
| 5/9/2008 | W/H TAX DIV AXP | (13,653) | - | (13,653) | - | - | 617,559,418 | - | (13,653) | (13,653) |
| 5/9/2008 | TRANS TO 1FN06940 *(1FN069)* | (881,140) | - | - | - | (881,140) | 616,678,278 | - | - | - |
| 5/15/2008 | W/H TAX DIV PG | (85,966) | - | (85,966) | - | - | 616,592,312 | - | (85,966) | (85,966) |
| 5/15/2008 | W/H TAX DIV ABT | (38,685) | - | (38,685) | - | - | 616,553,628 | - | (38,685) | (38,685) |
| 5/16/2008 | TRANS TO 1FN06940 *(1FN069)* | (22,355,270) | - | - | - | (22,355,270) | 594,198,358 | - | - | - |
| 5/19/2008 | TRANS FROM 1FN06940 *(1FN069)* | 12,278,930 | - | - | 12,278,930 | - | 606,477,288 | - | - | - |
| 5/20/2008 | W/H TAX DIV CAT | (15,929) | - | (15,929) | - | - | 606,461,359 | - | (15,929) | (15,929) |
| 5/23/2008 | W/H TAX DIV C | (109,227) | - | (109,227) | - | - | 606,352,132 | - | (109,227) | (109,227) |
| 5/27/2008 | TRANS TO 1FN06940 *(1FN069)* | (18,119,599) | - | - | - | (18,119,599) | 588,232,533 | - | - | - |
| 5/28/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (31) | - | (31) | - | - | 588,232,502 | - | (31) | (31) |
| 5/28/2008 | TRANS FROM 1FN06940 *(1FN069)* | 57,883,559 | - | - | 57,883,559 | - | 646,116,061 | - | - | - |
| 5/29/2008 | W/H TAX DIV GS | (8,849) | - | (8,849) | - | - | 646,107,212 | - | (8,849) | (8,849) |
| 6/2/2008 | W/H TAX DIV WMT | (70,423) | - | (70,423) | - | - | 646,036,789 | - | (70,423) | (70,423) |
| 6/2/2008 | W/H TAX DIV COP | (30,982) | - | (30,982) | - | - | 646,005,808 | - | (30,982) | (30,982) |
| 6/2/2008 | W/H TAX DIV WFC | (125,315) | - | (125,315) | - | - | 645,880,493 | - | (125,315) | (125,315) |
| 6/2/2008 | W/H TAX DIV INTC | (55,751) | - | (55,751) | - | - | 645,824,742 | - | (55,751) | (55,751) |
| 6/3/2008 | W/H TAX DIV UPS | (56,452) | - | (56,452) | - | - | 645,768,290 | - | (56,452) | (56,452) |
| 6/3/2008 | W/H TAX DIV PFE | (270,059) | - | (270,059) | - | - | 645,498,231 | - | (270,059) | (270,059) |
| 6/6/2008 | W/H TAX DIV BA | (36,494) | - | (36,494) | - | - | 645,461,737 | - | (36,494) | (36,494) |
| 6/10/2008 | W/H TAX DIV JNJ | (55,294) | - | (55,294) | - | - | 645,406,443 | - | (55,294) | (55,294) |
| 6/10/2008 | W/H TAX DIV CVX | (170,497) | - | (170,497) | - | - | 645,235,946 | - | (170,497) | (170,497) |
| 6/10/2008 | W/H TAX DIV EXC | (39,916) | - | (39,916) | - | - | 645,196,030 | - | (39,916) | (39,916) |
| 6/10/2008 | W/H TAX DIV IBM | (85,534) | - | (85,534) | - | - | 645,110,496 | - | (85,534) | (85,534) |
| 6/10/2008 | W/H TAX DIV UTX | (40,144) | - | (40,144) | - | - | 645,070,352 | - | (40,144) | (40,144) |
| 6/10/2008 | W/H TAX DIV XOM | (267,113) | - | (267,113) | - | - | 644,803,240 | - | (267,113) | (267,113) |
| 6/12/2008 | W/H TAX DIV MMM | (45,618) | - | (45,618) | - | - | 644,757,622 | - | (45,618) | (45,618) |
| 6/12/2008 | W/H TAX DIV MSFT | (109,141) | - | (109,141) | - | - | 644,648,480 | - | (109,141) | (109,141) |
| 7/21/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (38) | - | (38) | - | - | 644,648,442 | - | (38) | (38) |
| 7/21/2008 | TRANS TO 1FN06940 *(1FN069)* | (13,277,313) | - | - | - | (13,277,313) | 631,371,129 | - | - | - |
| 7/22/2008 | TRANS FROM 1FN06940 *(1FN069)* | 31,153,617 | - | - | 31,153,617 | - | 662,524,746 | - | - | - |
| 7/23/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 662,524,745 | - | (1) | (1) |
| 7/23/2008 | TRANS TO 1FN06940 *(1FN069)* | (38,922,534) | - | - | - | (38,922,534) | 623,602,211 | - | - | - |
| 8/1/2008 | W/H TAX DIV CVS | (8,606) | - | (8,606) | - | - | 623,593,606 | - | (8,606) | (8,606) |
| 8/8/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 623,593,604 | - | (2) | (2) |
| 8/8/2008 | TRANS TO 1FN06940 *(1FN069)* | (20,812,383) | - | - | - | (20,812,383) | 602,781,221 | - | - | - |
| 8/11/2008 | TRANS FROM 1FN06940 *(1FN069)* | 38,948,517 | - | - | 38,948,517 | - | 641,729,738 | - | - | - |
| 8/13/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 641,729,737 | - | (0) | (0) |
| 8/13/2008 | TRANS TO 1FN06940 *(1FN069)* | (3,738,696) | - | - | - | (3,738,696) | 637,991,041 | - | - | - |
| 8/18/2008 | TRANS TO 1FN06940 *(1FN069)* | (26,006,133) | - | - | - | (26,006,133) | 611,984,908 | - | - | - |
| 8/20/2008 | W/H TAX DIV CAT | (22,917) | - | (22,917) | - | - | 611,961,991 | - | (22,917) | (22,917) |
| 8/22/2008 | W/H TAX DIV C | (147,168) | - | (147,168) | - | - | 611,814,824 | - | (147,168) | (147,168) |

MADC1345_00000715

BLMIS ACCOUNT NO. 1FN012 - CTP FUND MGMT FBO FAIRFIELD SENTRY LTD

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Transaction Amount Reported in | | | | | | Preference | Two Year | Six Year |
| | Transaction | Reported in Customer Statement | Cash | Cash | Transfers of | Transfers of | Balance of | Period Initial | Initial | Initial |
| Date | Description | Customer Statement | Deposits | Withdrawals | Principal In | Principal Out | Principal | Transfers | Transfers | Transfers |
| 8/28/2008 | W/H TAX DIV GS | (10,913) | - | (10,913) | - | - | 611,803,911 | - | (10,913) | (10,913) |
| 9/10/2008 | TRANS TO 1FN06940 *(1FN069)* | (4,024,396) | - | - | - | (4,024,396) | 607,779,515 | - | - | - |
| 9/11/2008 | TRANS FROM 1FN06940 *(1FN069)* | 19,324,694 | - | - | 19,324,694 | - | 627,104,209 | - | - | - |
| 9/15/2008 | TRANS FROM 1FN06940 *(1FN069)* | 57,001,728 | - | - | 57,001,728 | - | 684,105,937 | - | - | - |
| 9/19/2008 | TRANS FROM 1FN06940 *(1FN069)* | 56,776,950 | - | - | 56,776,950 | - | 740,882,887 | - | - | - |
| 10/2/2008 | W/H TAX DIV QCOM | (10,353) | - | (10,353) | - | - | 740,872,533 | (10,353) | (10,353) | (10,353) |
| 10/2/2008 | W/H TAX DIV MCD | (52,602) | - | (52,602) | - | - | 740,819,931 | (52,602) | (52,602) | (52,602) |
| 10/2/2008 | W/H TAX DIV XOM | (262,805) | - | (262,805) | - | - | 740,557,126 | (262,805) | (262,805) | (262,805) |
| 10/2/2008 | W/H TAX DIV CVX | (167,941) | - | (167,941) | - | - | 740,389,185 | (167,941) | (167,941) | (167,941) |
| 10/2/2008 | W/H TAX DIV PFE | (184,583) | - | (184,583) | - | - | 740,204,602 | (184,583) | (184,583) | (184,583) |
| 10/2/2008 | W/H TAX DIV UPS | (56,380) | - | (56,380) | - | - | 740,148,222 | (56,380) | (56,380) | (56,380) |
| 10/2/2008 | W/H TAX DIV PEP | (82,291) | - | (82,291) | - | - | 740,065,931 | (82,291) | (82,291) | (82,291) |
| 10/2/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 740,065,930 | (1) | (1) | (1) |
| 10/2/2008 | W/H TAX DIV TWX | (28,212) | - | (28,212) | - | - | 740,037,718 | (28,212) | (28,212) | (28,212) |
| 10/2/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (18) | - | (18) | - | - | 740,037,701 | (18) | (18) | (18) |
| 10/2/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (8) | - | (8) | - | - | 740,037,693 | (8) | (8) | (8) |
| 10/2/2008 | W/H TAX DIV EXC | (39,864) | - | (39,864) | - | - | 739,997,828 | (39,864) | (39,864) | (39,864) |
| 10/2/2008 | W/H TAX DIV MSFT | (109,858) | - | (109,858) | - | - | 739,887,971 | (109,858) | (109,858) | (109,858) |
| 10/2/2008 | W/H TAX DIV BUD | (23,073) | - | (23,073) | - | - | 739,864,898 | (23,073) | (23,073) | (23,073) |
| 10/2/2008 | W/H TAX DIV INTC | (67,660) | - | (67,660) | - | - | 739,797,238 | (67,660) | (67,660) | (67,660) |
| 10/2/2008 | W/H TAX DIV COP | (62,281) | - | (62,281) | - | - | 739,734,957 | (62,281) | (62,281) | (62,281) |
| 10/2/2008 | W/H TAX DIV WMT | (67,627) | - | (67,627) | - | - | 739,667,330 | (67,627) | (67,627) | (67,627) |
| 10/2/2008 | W/H TAX DIV JNJ | (160,765) | - | (160,765) | - | - | 739,506,565 | (160,765) | (160,765) | (160,765) |
| 10/2/2008 | W/H TAX DIV UTX | (40,092) | - | (40,092) | - | - | 739,466,473 | (40,092) | (40,092) | (40,092) |
| 10/2/2008 | W/H TAX DIV AIG | (73,458) | - | (73,458) | - | - | 739,393,015 | (73,458) | (73,458) | (73,458) |
| 10/2/2008 | W/H TAX DIV WFC | (82,158) | - | (82,158) | - | - | 739,310,857 | (82,158) | (82,158) | (82,158) |
| 10/2/2008 | W/H TAX DIV IBM | (58,462) | - | (58,462) | - | - | 739,252,395 | (58,462) | (58,462) | (58,462) |
| 10/2/2008 | W/H TAX DIV MMM | (45,559) | - | (45,559) | - | - | 739,206,836 | (45,559) | (45,559) | (45,559) |
| 10/2/2008 | W/H TAX DIV BA | (24,944) | - | (24,944) | - | - | 739,181,892 | (24,944) | (24,944) | (24,944) |
| 10/2/2008 | W/H TAX DIV BAC | (354,496) | - | (354,496) | - | - | 738,827,396 | (354,496) | (354,496) | (354,496) |
| 10/2/2008 | W/H TAX DIV HD | (15,368) | - | (15,368) | - | - | 738,812,028 | (15,368) | (15,368) | (15,368) |
| 10/3/2008 | CHECK WIRE | (150,000,000) | - | (150,000,000) | - | - | 588,812,028 | (150,000,000) | (150,000,000) | (150,000,000) |
| 11/4/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 588,812,027 | (1) | (1) | (1) |
| 11/4/2008 | CHECK WIRE | (450,000,000) | - | (450,000,000) | - | - | 138,812,027 | (450,000,000) | (450,000,000) | (450,000,000) |
| 11/4/2008 | W/H TAX DIV PM | (45,268) | - | (45,268) | - | - | 138,766,760 | (45,268) | (45,268) | (45,268) |
| 11/4/2008 | W/H TAX DIV MO | (18,359) | - | (18,359) | - | - | 138,748,401 | (18,359) | (18,359) | (18,359) |
| 11/4/2008 | W/H TAX DIV KO | (30,470) | - | (30,470) | - | - | 138,717,931 | (30,470) | (30,470) | (30,470) |
| 11/4/2008 | W/H TAX DIV BAX | (17,341) | - | (17,341) | - | - | 138,700,590 | (17,341) | (17,341) | (17,341) |
| 11/4/2008 | W/H TAX DIV HPQ | (24,314) | - | (24,314) | - | - | 138,676,276 | (24,314) | (24,314) | (24,314) |
| 11/4/2008 | W/H TAX DIV MRK | (99,547) | - | (99,547) | - | - | 138,576,729 | (99,547) | (99,547) | (99,547) |
| 11/4/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 138,576,728 | (0) | (0) | (0) |
| 11/6/2008 | TRANS TO 1FN06940 *(1FN069)* | (578,138) | - | - | - | (578,138) | 137,998,590 | - | - | - |
| 11/7/2008 | TRANS FROM 1FN06940 *(1FN069)* | 14,881,874 | - | - | 14,881,874 | - | 152,880,464 | - | - | - |
| 11/10/2008 | TRANS TO 1FN06940 *(1FN069)* | (9,848,202) | - | - | - | (9,848,202) | 143,032,262 | - | - | - |
| 11/19/2008 | TRANS FROM 1FN06940 *(1FN069)* | 295,937,598 | - | - | 295,937,598 | - | 438,969,860 | - | - | - |
| 11/25/2008 | TRANS FROM 1FN06940 *(1FN069)* | 11,384,758 | - | - | 11,384,758 | - | 450,354,618 | - | - | - |
| 12/3/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 450,354,618 | (0) | (0) | (0) |
| 12/3/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (1) | - | - | 450,354,617 | (1) | (1) | (1) |
| 12/3/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 450,354,617 | (0) | (0) | (0) |
| 12/3/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 450,354,616 | (1) | (1) | (1) |
| 12/3/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 450,354,616 | (0) | (0) | (0) |
| 12/3/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 450,354,616 | (0) | (0) | (0) |
| | Total: | $ 2,113,474,517 | $ (1,667,458,620) | $ 2,383,923,515 | $ (2,379,584,797) | | $ 450,354,616 | $ (602,306,161) | $ (761,803,339) | $ (1,504,703,414) |

[1] Although BLMIS statements reflect that a larger transfer was made into the account on this date, a portion of the "transferred" funds consisted of fictitious profits which were never achieved and thus could not have been transferred.  Accordingly, only the principal remaining in the originating account was transferred into this account on this date.

[2] Although BLMIS statements reflect that funds were transferred into this account on this date, these funds consisted entirely of fictitious profits which were never achieved and thus no funds were actually transferred into the account on this date.  Accordingly, the account balance has remained unchanged.

[3] Although BLMIS statements reflect that funds were transferred out of this account on this date, these funds consisted entirely of fictitious profits which were never achieved and thus no funds were actually transferred out of the account on this date.  Accordingly, the account balance has remained unchanged.

MADC1345_00000716

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 Preference Period Initial Transfers | Column 10 Two Year Initial Transfers | Column 11 Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 10/19/1992 | CHECK WIRE | 15,000,000 | 15,000,000 | - | - | - | 15,000,000 | - | - | - |
| 11/3/1992 | CHECK WIRE | 5,799,985 | 5,799,985 | - | - | - | 20,799,985 | - | - | - |
| 11/5/1992 | FIDELITY CASH RESERVES SBI W/H TAX DIV FORXX | (5) | - | (5) | - | - | 20,799,980 | - | - | - |
| 12/15/1992 | W/H TAX DIV BA | (594) | - | (594) | - | - | 20,799,386 | - | - | - |
| 12/15/1992 | W/H TAX DIV JNJ | (2,459) | - | (2,459) | - | - | 20,796,927 | - | - | - |
| 12/15/1992 | W/H TAX DIV DD | (2,091) | - | (2,091) | - | - | 20,794,836 | - | - | - |
| 12/15/1992 | W/H TAX DIV XON | (6,843) | - | (6,843) | - | - | 20,787,993 | - | - | - |
| 12/30/1992 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (53) | - | (53) | - | - | 20,787,940 | - | - | - |
| 12/31/1992 | W/H TAX DIV AIG | (499) | - | (499) | - | - | 20,787,441 | - | - | - |
| 1/15/1993 | W/H TAX DIV EK | (3,564) | - | (3,564) | - | - | 20,783,877 | - | - | - |
| 1/15/1993 | W/H TAX DIV MRK | (1,485) | - | (1,485) | - | - | 20,782,392 | - | - | - |
| 1/15/1993 | W/H TAX DIV GE | (4,491) | - | (4,491) | - | - | 20,777,901 | - | - | - |
| 1/15/1993 | W/H TAX DIV WMT | (374) | - | (374) | - | - | 20,777,527 | - | - | - |
| 1/22/1993 | CHECK WIRE | 2,100,000 | 2,100,000 | - | - | - | 22,877,527 | - | - | - |
| 1/29/1993 | CHECK WIRE | 1,750,000 | 1,750,000 | - | - | - | 24,627,527 | - | - | - |
| 1/29/1993 | CHECK WIRE | 14,807 | 14,807 | - | - | - | 24,642,334 | - | - | - |
| 2/16/1993 | W/H TAX DIV BMY | (4,277) | - | (4,277) | - | - | 24,638,057 | - | - | - |
| 2/16/1993 | W/H TAX DIV T | (1,960) | - | (1,960) | - | - | 24,636,097 | - | - | - |
| 3/1/1993 | W/H TAX DIV F | (4,633) | - | (4,633) | - | - | 24,631,464 | - | - | - |
| 3/5/1993 | W/H TAX DIV BA | (960) | - | (960) | - | - | 24,630,504 | - | - | - |
| 3/9/1993 | W/H TAX DIV JNJ | (3,133) | - | (3,133) | - | - | 24,627,371 | - | - | - |
| 3/10/1993 | W/H TAX DIV IBM | (1,186) | - | (1,186) | - | - | 24,626,186 | - | - | - |
| 3/10/1993 | W/H TAX DIV XON | (10,532) | - | (10,532) | - | - | 24,615,653 | - | - | - |
| 3/10/1993 | W/H TAX DIV GM | (586) | - | (586) | - | - | 24,615,068 | - | - | - |
| 3/10/1993 | W/H TAX DIV MOB | (1,171) | - | (1,171) | - | - | 24,613,897 | - | - | - |
| 3/15/1993 | W/H TAX DIV DD | (3,057) | - | (3,057) | - | - | 24,610,840 | - | - | - |
| 3/15/1993 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (382) | - | (382) | - | - | 24,610,458 | - | - | - |
| 3/19/1993 | W/H TAX DIV AIG | (705) | - | (705) | - | - | 24,609,753 | - | - | - |
| 3/31/1993 | W/H TAX DIV PEP | (716) | - | (716) | - | - | 24,609,038 | - | - | - |
| 4/1/1993 | W/H TAX DIV KO | (1,151) | - | (1,151) | - | - | 24,607,887 | - | - | - |
| 4/1/1993 | W/H TAX DIV EK | (4,850) | - | (4,850) | - | - | 24,603,037 | - | - | - |
| 4/1/1993 | W/H TAX DIV S | (881) | - | (881) | - | - | 24,602,156 | - | - | - |
| 4/1/1993 | TRANS TO 1G009230 (1G0092) | (14,807) | - | - | - | (14,807) | 24,587,349 | - | - | - |
| 4/12/1993 | W/H TAX DIV WMT | (494) | - | (494) | - | - | 24,586,855 | - | - | - |
| 4/20/1993 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (35) | - | (35) | - | - | 24,586,820 | - | - | - |
| 4/22/1993 | CHECK WIRE | 1,499,985 | 1,499,985 | - | - | - | 26,086,805 | - | - | - |
| 4/26/1993 | W/H TAX DIV GE | (7,959) | - | (7,959) | - | - | 26,078,846 | - | - | - |
| 5/3/1993 | W/H TAX DIV T | (4,625) | - | (4,625) | - | - | 26,074,221 | - | - | - |
| 5/10/1993 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (72) | - | (72) | - | - | 26,074,149 | - | - | - |
| 5/20/1993 | W/H TAX DIV DIS | (230) | - | (230) | - | - | 26,073,920 | - | - | - |
| 6/1/1993 | W/H TAX DIV F | (5,746) | - | (5,746) | - | - | 26,068,174 | - | - | - |
| 6/1/1993 | W/H TAX DIV AXP | (826) | - | (826) | - | - | 26,067,348 | - | - | - |
| 6/8/1993 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (66) | - | (66) | - | - | 26,067,282 | - | - | - |
| 6/14/1993 | W/H TAX DIV MMM | (1,773) | - | (1,773) | - | - | 26,065,509 | - | - | - |
| 6/18/1993 | W/H TAX DIV MCD | (344) | - | (344) | - | - | 26,065,165 | - | - | - |
| 6/30/1993 | W/H TAX DIV PEP | (1,367) | - | (1,367) | - | - | 26,063,798 | - | - | - |
| 7/1/1993 | W/H TAX DIV MRK | (2,670) | - | (2,670) | - | - | 26,061,128 | - | - | - |
| 7/1/1993 | W/H TAX DIV KO | (2,382) | - | (2,382) | - | - | 26,058,746 | - | - | - |
| 7/1/1993 | W/H TAX DIV EK | (1,602) | - | (1,602) | - | - | 26,057,144 | - | - | - |
| 7/1/1993 | W/H TAX DIV S | (1,282) | - | (1,282) | - | - | 26,055,863 | - | - | - |
| 7/1/1993 | TRANS FROM 1FN01130 (1FN011) | 2,857,020 [1] | - | - | 42,195 | - | 26,098,057 | - | - | - |
| 7/2/1993 | W/H TAX DIV SLB | (961) | - | (961) | - | - | 26,097,096 | - | - | - |
| 7/9/1993 | W/H TAX DIV WMT | (770) | - | (770) | - | - | 26,096,326 | - | - | - |
| 7/13/1993 | CHECK WIRE | 17,000,000 | 17,000,000 | - | - | - | 43,096,326 | - | - | - |
| 7/16/1993 | CHECK WIRE | 999,985 | 999,985 | - | - | - | 44,096,311 | - | - | - |
| 7/22/1993 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (201) | - | (201) | - | - | 44,096,110 | - | - | - |
| 7/26/1993 | W/H TAX DIV GE | (4,710) | - | (4,710) | - | - | 44,091,400 | - | - | - |
| 7/28/1993 | TRANS FROM 1FN01130 (1FN011) | 912 [2] | - | - | - | - | 44,091,400 | - | - | - |
| 8/2/1993 | W/H TAX DIV AIT | (1,982) | - | (1,982) | - | - | 44,089,418 | - | - | - |
| 8/2/1993 | W/H TAX DIV BMY | (3,404) | - | (3,404) | - | - | 44,086,014 | - | - | - |
| 8/2/1993 | W/H TAX DIV T | (4,271) | - | (4,271) | - | - | 44,081,743 | - | - | - |
| 8/2/1993 | W/H TAX DIV BEL | (3,168) | - | (3,168) | - | - | 44,078,575 | - | - | - |
| 8/10/1993 | W/H TAX DIV AXP | (1,179) | - | (1,179) | - | - | 44,077,396 | - | - | - |
| 8/16/1993 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (14) | - | (14) | - | - | 44,077,382 | - | - | - |
| 8/20/1993 | W/H TAX DIV DIS | (369) | - | (369) | - | - | 44,077,012 | - | - | - |
| 8/31/1993 | TRANS FROM 1FN01130 (1FN011) | 3,260 [2] | - | - | - | - | 44,077,012 | - | - | - |
| 9/1/1993 | W/H TAX DIV F | (3,807) | - | (3,807) | - | - | 44,073,205 | - | - | - |

MADC1345_00000717

BLMIS ACCOUNT NO. 1FN045 - CTF FBO FAIRFIELD SENTRY LTD FBO FAIRFIELD SENTRY LTD

| Column 1<br>Date | Column 2<br>Transaction<br>Description | Column 3<br>Transaction Amount<br>Reported in<br>Customer Statement | Column 4<br>Cash<br>Deposits | Column 5<br>Cash<br>Withdrawals | Column 6<br>Transfers of<br>Principal In | Column 7<br>Transfers of<br>Principal Out | Column 8<br>Balance of<br>Principal | Column 9<br>Preference<br>Period Initial<br>Transfers | Column 10<br>Two Year<br>Initial<br>Transfers | Column 11<br>Six Year<br>Initial<br>Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 9/10/1993 | W/H TAX DIV MOB | (6,091) | - | (6,091) | - | - | 44,067,114 | - | - | - |
| 9/10/1993 | W/H TAX DIV AN | (5,235) | - | (5,235) | - | - | 44,061,880 | - | - | - |
| 9/10/1993 | W/H TAX DIV XON | (16,446) | - | (16,446) | - | - | 44,045,433 | - | - | - |
| 9/10/1993 | W/H TAX DIV IBM | (2,379) | - | (2,379) | - | - | 44,043,054 | - | - | - |
| 9/13/1993 | W/H TAX DIV DD | (5,025) | - | (5,025) | - | - | 44,038,029 | - | - | - |
| 9/15/1993 | W/H TAX DIV ARC | (4,228) | - | (4,228) | - | - | 44,033,801 | - | - | - |
| 9/17/1993 | W/H TAX DIV MCD | (606) | - | (606) | - | - | 44,033,194 | - | - | - |
| 9/17/1993 | W/H TAX DIV AIG | (564) | - | (564) | - | - | 44,032,631 | - | - | - |
| 9/24/1993 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (123) | - | (123) | - | - | 44,032,507 | - | - | - |
| 9/30/1993 | W/H TAX DIV PEP | (2,105) | - | (2,105) | - | - | 44,030,402 | - | - | - |
| 10/1/1993 | W/H TAX DIV MRK | (5,789) | - | (5,789) | - | - | 44,024,614 | - | - | - |
| 10/1/1993 | W/H TAX DIV S | (2,255) | - | (2,255) | - | - | 44,022,358 | - | - | - |
| 10/1/1993 | W/H TAX DIV EK | (2,819) | - | (2,819) | - | - | 44,019,539 | - | - | - |
| 10/1/1993 | W/H TAX DIV KO | (3,834) | - | (3,834) | - | - | 44,015,705 | - | - | - |
| 10/4/1993 | W/H TAX DIV WMT | (1,100) | - | (1,100) | - | - | 44,014,605 | - | - | - |
| 10/6/1993 | CHECK WIRE | 9,000,000 | 9,000,000 | - | - | - | 53,014,605 | - | - | - |
| 10/13/1993 | CHECK WIRE | 4,800,000 | 4,800,000 | - | - | - | 57,814,605 | - | - | - |
| 10/13/1993 | W/H TAX DIV HWP | (940) | - | (940) | - | - | 57,813,665 | - | - | - |
| 10/14/1993 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (79) | - | (79) | - | - | 57,813,586 | - | - | - |
| 10/15/1993 | CHECK WIRE | 5,800,000 | 5,800,000 | - | - | - | 63,613,586 | - | - | - |
| 10/25/1993 | W/H TAX DIV GE | (9,473) | - | (9,473) | - | - | 63,604,114 | - | - | - |
| 11/1/1993 | W/H TAX DIV T | (7,473) | - | (7,473) | - | - | 63,596,641 | - | - | - |
| 11/1/1993 | W/H TAX DIV BMY | (6,793) | - | (6,793) | - | - | 63,589,848 | - | - | - |
| 11/1/1993 | W/H TAX DIV BEL | (5,057) | - | (5,057) | - | - | 63,584,791 | - | - | - |
| 11/1/1993 | W/H TAX DIV AIT | (5,194) | - | (5,194) | - | - | 63,579,596 | - | - | - |
| 11/10/1993 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (27) | - | (27) | - | - | 63,579,570 | - | - | - |
| 11/19/1993 | W/H TAX DIV DIS | (590) | - | (590) | - | - | 63,578,980 | - | - | - |
| 12/1/1993 | W/H TAX DIV INTC | (528) | - | (528) | - | - | 63,578,452 | - | - | - |
| 12/1/1993 | W/H TAX DIV F | (5,280) | - | (5,280) | - | - | 63,573,172 | - | - | - |
| 12/7/1993 | W/H TAX DIV JNJ | (4,805) | - | (4,805) | - | - | 63,568,367 | - | - | - |
| 12/10/1993 | W/H TAX DIV XON | (20,909) | - | (20,909) | - | - | 63,547,459 | - | - | - |
| 12/10/1993 | W/H TAX DIV MOB | (8,976) | - | (8,976) | - | - | 63,538,483 | - | - | - |
| 12/10/1993 | W/H TAX DIV IBM | (3,300) | - | (3,300) | - | - | 63,535,183 | - | - | - |
| 12/10/1993 | W/H TAX DIV AN | (5,808) | - | (5,808) | - | - | 63,529,375 | - | - | - |
| 12/10/1993 | W/H TAX DIV S | (3,178) | - | (3,178) | - | - | 63,526,197 | - | - | - |
| 12/10/1993 | W/H TAX DIV GM | (2,263) | - | (2,263) | - | - | 63,523,934 | - | - | - |
| 12/13/1993 | W/H TAX DIV MMM | (4,402) | - | (4,402) | - | - | 63,519,532 | - | - | - |
| 12/14/1993 | W/H TAX DIV DD | (8,131) | - | (8,131) | - | - | 63,511,401 | - | - | - |
| 12/14/1993 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (29) | - | (29) | - | - | 63,511,372 | - | - | - |
| 12/15/1993 | W/H TAX DIV ARC | (3,647) | - | (3,647) | - | - | 63,507,726 | - | - | - |
| 12/15/1993 | W/H TAX DIV KO | (5,410) | - | (5,410) | - | - | 63,502,315 | - | - | - |
| 12/17/1993 | W/H TAX DIV AIG | (796) | - | (796) | - | - | 63,501,520 | - | - | - |
| 12/17/1993 | W/H TAX DIV MCD | (855) | - | (855) | - | - | 63,500,665 | - | - | - |
| 1/3/1994 | W/H TAX DIV MRK | (8,168) | - | (8,168) | - | - | 63,492,496 | - | - | - |
| 1/3/1994 | W/H TAX DIV PEP | (2,970) | - | (2,970) | - | - | 63,489,526 | - | - | - |
| 1/3/1994 | W/H TAX DIV S | (3,178) | - | (3,178) | - | - | 63,486,349 | - | - | - |
| 1/3/1994 | W/H TAX DIV EK | (3,978) | - | (3,978) | - | - | 63,482,371 | - | - | - |
| 1/5/1994 | W/H TAX DIV WMT | (1,551) | - | (1,551) | - | - | 63,480,819 | - | - | - |
| 1/11/1994 | CHECK WIRE | 4,000,000 | 4,000,000 | - | - | - | 67,480,819 | - | - | - |
| 1/11/1994 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (58) | - | (58) | - | - | 67,480,761 | - | - | - |
| 1/31/1994 | CXL 12/10/93 | 3,178 | 3,178 | - | - | - | 67,483,939 | - | - | - |
| 1/31/1994 | CORRECTION ADJ 1/31/94 | 3,178 | - | 3,178 | - | - | 67,487,116 | - | - | - |
| 1/31/1994 | CXL DIV ADJ 12/10 S | (3,178) | (3,178) | - | - | - | 67,483,939 | - | - | - |
| 2/1/1994 | W/H TAX DIV BEL | (6,970) | - | (6,970) | - | - | 67,476,969 | - | - | - |
| 2/15/1994 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (14) | - | (14) | - | - | 67,476,955 | - | - | - |
| 2/18/1994 | W/H TAX DIV DIS | (719) | - | (719) | - | - | 67,476,236 | - | - | - |
| 3/1/1994 | W/H TAX DIV F | (4,637) | - | (4,637) | - | - | 67,471,599 | - | - | - |
| 3/1/1994 | W/H TAX DIV INTC | (522) | - | (522) | - | - | 67,471,078 | - | - | - |
| 3/2/1994 | CHECK WIRE | 3,450,000 | 3,450,000 | - | - | - | 70,921,078 | - | - | - |
| 3/8/1994 | FIDELITY CASH RESERVES SBI W/H TAX DIV FORXX | (141) | - | (141) | - | - | 70,920,937 | - | - | - |
| 3/8/1994 | W/H TAX DIV JNJ | (4,069) | - | (4,069) | - | - | 70,916,868 | - | - | - |
| 3/10/1994 | W/H TAX DIV AN | (6,376) | - | (6,376) | - | - | 70,910,493 | - | - | - |
| 3/10/1994 | W/H TAX DIV MOB | (7,883) | - | (7,883) | - | - | 70,902,610 | - | - | - |
| 3/10/1994 | W/H TAX DIV IBM | (3,188) | - | (3,188) | - | - | 70,899,422 | - | - | - |
| 3/10/1994 | W/H TAX DIV GM | (3,362) | - | (3,362) | - | - | 70,896,061 | - | - | - |
| 3/10/1994 | W/H TAX DIV XON | (21,283) | - | (21,283) | - | - | 70,874,778 | - | - | - |
| 3/14/1994 | W/H TAX DIV BAC | (3,248) | - | (3,248) | - | - | 70,871,530 | - | - | - |
| 3/14/1994 | W/H TAX DIV MMM | (4,593) | - | (4,593) | - | - | 70,866,937 | - | - | - |

MADC1345_00000718

| Column 1<br>Date | Column 2<br>Transaction<br>Description | Column 3<br>Transaction Amount<br>Reported in<br>Customer Statement | Column 4<br>Cash<br>Deposits | Column 5<br>Cash<br>Withdrawals | Column 6<br>Transfers of<br>Principal In | Column 7<br>Transfers of<br>Principal Out | Column 8<br>Balance of<br>Principal | Column 9<br>Preference<br>Period Initial<br>Transfers | Column 10<br>Two Year<br>Initial<br>Transfers | Column 11<br>Six Year<br>Initial<br>Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 3/14/1994 | W/H TAX DIV DD | (6,886) | - | (6,886) | - | - | 70,860,051 | - | - | - |
| 3/15/1994 | W/H TAX DIV ARC | (4,784) | - | (4,784) | - | - | 70,855,267 | - | - | - |
| 3/18/1994 | W/H TAX DIV AIG | (754) | - | (754) | - | - | 70,854,513 | - | - | - |
| 3/18/1994 | W/H TAX DIV MCD | (935) | - | (935) | - | - | 70,853,578 | - | - | - |
| 3/31/1994 | W/H TAX DIV PEP | (3,062) | - | (3,062) | - | - | 70,850,516 | - | - | - |
| 4/4/1994 | W/H TAX DIV KO | (6,168) | - | (6,168) | - | - | 70,844,348 | - | - | - |
| 4/4/1994 | W/H TAX DIV S | (3,711) | - | (3,711) | - | - | 70,840,637 | - | - | - |
| 4/4/1994 | W/H TAX DIV MRK | (8,281) | - | (8,281) | - | - | 70,832,356 | - | - | - |
| 4/8/1994 | CHECK WIRE | 3,000,000 | 3,000,000 | - | - | - | 73,832,356 | - | - | - |
| 4/13/1994 | W/H TAX DIV HWP | (1,553) | - | (1,553) | - | - | 73,830,803 | - | - | - |
| 4/20/1994 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (107) | - | (107) | - | - | 73,830,696 | - | - | - |
| 4/25/1994 | W/H TAX DIV GE | (14,196) | - | (14,196) | - | - | 73,816,500 | - | - | - |
| 4/29/1994 | W/H TAX DIV DOW | (4,817) | - | (4,817) | - | - | 73,811,683 | - | - | - |
| 5/2/1994 | W/H TAX DIV BEL | (8,228) | - | (8,228) | - | - | 73,803,455 | - | - | - |
| 5/2/1994 | W/H TAX DIV BMY | (9,975) | - | (9,975) | - | - | 73,793,481 | - | - | - |
| 5/2/1994 | W/H TAX DIV AIT | (6,559) | - | (6,559) | - | - | 73,786,922 | - | - | - |
| 5/2/1994 | W/H TAX DIV T | (11,996) | - | (11,996) | - | - | 73,774,926 | - | - | - |
| 5/3/1994 | CHECK WIRE | 300,000 | 300,000 | - | - | - | 74,074,926 | - | - | - |
| 5/10/1994 | W/H TAX DIV AXP | (2,562) | - | (2,562) | - | - | 74,072,364 | - | - | - |
| 5/19/1994 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (104) | - | (104) | - | - | 74,072,259 | - | - | - |
| 5/20/1994 | W/H TAX DIV DIS | (981) | - | (981) | - | - | 74,071,278 | - | - | - |
| 6/1/1994 | W/H TAX DIV F | (6,531) | - | (6,531) | - | - | 74,064,747 | - | - | - |
| 6/3/1994 | CHECK WIRE | 3,250,000 | 3,250,000 | - | - | - | 77,314,747 | - | - | - |
| 6/3/1994 | W/H TAX DIV BA | (284) | - | (284) | - | - | 77,314,464 | - | - | - |
| 6/7/1994 | W/H TAX DIV JNJ | (5,480) | - | (5,480) | - | - | 77,308,984 | - | - | - |
| 6/10/1994 | W/H TAX DIV MOB | (9,565) | - | (9,565) | - | - | 77,299,420 | - | - | - |
| 6/10/1994 | W/H TAX DIV AN | (7,768) | - | (7,768) | - | - | 77,291,651 | - | - | - |
| 6/10/1994 | W/H TAX DIV IBM | (4,035) | - | (4,035) | - | - | 77,287,616 | - | - | - |
| 6/10/1994 | W/H TAX DIV GM | (4,121) | - | (4,121) | - | - | 77,283,495 | - | - | - |
| 6/10/1994 | W/H TAX DIV XON | (26,016) | - | (26,016) | - | - | 77,257,479 | - | - | - |
| 6/13/1994 | W/H TAX DIV MMM | (4,991) | - | (4,991) | - | - | 77,252,487 | - | - | - |
| 6/13/1994 | W/H TAX DIV DD | (8,449) | - | (8,449) | - | - | 77,244,038 | - | - | - |
| 6/14/1994 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (41) | - | (41) | - | - | 77,243,997 | - | - | - |
| 6/14/1994 | W/H TAX DIV BAC | (3,974) | - | (3,974) | - | - | 77,240,023 | - | - | - |
| 6/15/1994 | W/H TAX DIV ARC | (5,764) | - | (5,764) | - | - | 77,234,260 | - | - | - |
| 6/17/1994 | W/H TAX DIV CCI | (194) | - | (194) | - | - | 77,234,065 | - | - | - |
| 6/17/1994 | W/H TAX DIV MCD | (1,271) | - | (1,271) | - | - | 77,232,794 | - | - | - |
| 6/17/1994 | W/H TAX DIV AIG | (904) | - | (904) | - | - | 77,231,890 | - | - | - |
| 6/30/1994 | W/H TAX DIV PEP | (4,185) | - | (4,185) | - | - | 77,227,705 | - | - | - |
| 7/1/1994 | W/H TAX DIV S | (4,437) | - | (4,437) | - | - | 77,223,268 | - | - | - |
| 7/1/1994 | W/H TAX DIV KO | (7,109) | - | (7,109) | - | - | 77,216,159 | - | - | - |
| 7/1/1994 | W/H TAX DIV MRK | (10,357) | - | (10,357) | - | - | 77,205,801 | - | - | - |
| 7/1/1994 | W/H TAX DIV EK | (486) | - | (486) | - | - | 77,205,315 | - | - | - |
| 7/1/1994 | W/H TAX DIV MCIC | (607) | - | (607) | - | - | 77,204,708 | - | - | - |
| 7/8/1994 | CHECK WIRE | 3,000,000 | 3,000,000 | - | - | - | 80,204,708 | - | - | - |
| 7/8/1994 | W/H TAX DIV WMT | (3,179) | - | (3,179) | - | - | 80,201,529 | - | - | - |
| 7/11/1994 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (95) | - | (95) | - | - | 80,201,434 | - | - | - |
| 7/13/1994 | W/H TAX DIV HWP | (2,143) | - | (2,143) | - | - | 80,199,291 | - | - | - |
| 7/25/1994 | W/H TAX DIV GE | (18,134) | - | (18,134) | - | - | 80,181,157 | - | - | - |
| 7/29/1994 | W/H TAX DIV DOW | (5,593) | - | (5,593) | - | - | 80,175,564 | - | - | - |
| 8/1/1994 | W/H TAX DIV BMY | (11,621) | - | (11,621) | - | - | 80,163,943 | - | - | - |
| 8/1/1994 | W/H TAX DIV AIT | (7,668) | - | (7,668) | - | - | 80,156,275 | - | - | - |
| 8/1/1994 | W/H TAX DIV BEL | (9,707) | - | (9,707) | - | - | 80,146,568 | - | - | - |
| 8/1/1994 | W/H TAX DIV T | (14,056) | - | (14,056) | - | - | 80,132,512 | - | - | - |
| 8/15/1994 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (75) | - | (75) | - | - | 80,132,437 | - | - | - |
| 8/17/1994 | W/H TAX DIV CCI | (366) | - | (366) | - | - | 80,132,071 | - | - | - |
| 8/18/1994 | CHECK WIRE | 1,200,000 | 1,200,000 | - | - | - | 81,332,071 | - | - | - |
| 8/19/1994 | W/H TAX DIV DIS | (1,166) | - | (1,166) | - | - | 81,330,905 | - | - | - |
| 9/1/1994 | W/H TAX DIV F | (7,310) | - | (7,310) | - | - | 81,323,595 | - | - | - |
| 9/1/1994 | W/H TAX DIV INTC | (5) | - | (5) | - | - | 81,323,590 | - | - | - |
| 9/1/1994 | W/H TAX DIV INTC | (58) | - | (58) | - | - | 81,323,532 | - | - | - |
| 9/2/1994 | W/H TAX DIV BA | (260) | - | (260) | - | - | 81,323,272 | - | - | - |
| 9/6/1994 | W/H TAX DIV JNJ | (6,095) | - | (6,095) | - | - | 81,317,177 | - | - | - |
| 9/12/1994 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (48) | - | (48) | - | - | 81,317,129 | - | - | - |
| 9/12/1994 | W/H TAX DIV AN | (8,666) | - | (8,666) | - | - | 81,308,463 | - | - | - |
| 9/12/1994 | W/H TAX DIV IBM | (4,545) | - | (4,545) | - | - | 81,303,917 | - | - | - |
| 9/12/1994 | W/H TAX DIV GM | (4,641) | - | (4,641) | - | - | 81,299,276 | - | - | - |
| 9/12/1994 | W/H TAX DIV MMM | (5,438) | - | (5,438) | - | - | 81,293,838 | - | - | - |

MADC1345_00000719

| Column 1<br>Date | Column 2<br>Transaction Description | Column 3<br>Transaction Amount Reported in Customer Statement | Column 4<br>Cash Deposits | Column 5<br>Cash Withdrawals | Column 6<br>Transfers of Principal In | Column 7<br>Transfers of Principal Out | Column 8<br>Balance of Principal | Column 9<br>Preference Period Initial Transfers | Column 10<br>Two Year Initial Transfers | Column 11<br>Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 9/12/1994 | W/H TAX DIV MOB | (10,626) | - | (10,626) | - | - | 81,283,212 | - | - | - |
| 9/12/1994 | W/H TAX DIV DD | (10,123) | - | (10,123) | - | - | 81,273,089 | - | - | - |
| 9/12/1994 | W/H TAX DIV XON | (28,953) | - | (28,953) | - | - | 81,244,136 | - | - | - |
| 9/15/1994 | W/H TAX DIV BAC | (4,390) | - | (4,390) | - | - | 81,239,745 | - | - | - |
| 9/15/1994 | W/H TAX DIV ARC | (6,437) | - | (6,437) | - | - | 81,233,308 | - | - | - |
| 9/16/1994 | W/H TAX DIV MCD | (92) | - | (92) | - | - | 81,233,216 | - | - | - |
| 9/16/1994 | W/H TAX DIV AIG | (1,162) | - | (1,162) | - | - | 81,232,054 | - | - | - |
| 9/30/1994 | W/H TAX DIV PEP | (4,718) | - | (4,718) | - | - | 81,227,336 | - | - | - |
| 10/3/1994 | W/H TAX DIV EK | (1,002) | - | (1,002) | - | - | 81,226,334 | - | - | - |
| 10/3/1994 | W/H TAX DIV MRK | (12,572) | - | (12,572) | - | - | 81,213,762 | - | - | - |
| 10/3/1994 | W/H TAX DIV KO | (8,065) | - | (8,065) | - | - | 81,205,698 | - | - | - |
| 10/7/1994 | CHECK WIRE | 1,000,000 | 1,000,000 | - | - | - | 82,205,698 | - | - | - |
| 10/7/1994 | W/H TAX DIV WMT | (3,558) | - | (3,558) | - | - | 82,202,140 | - | - | - |
| 10/11/1994 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (107) | - | (107) | - | - | 82,202,033 | - | - | - |
| 10/12/1994 | W/H TAX DIV HWP | (2,475) | - | (2,475) | - | - | 82,199,557 | - | - | - |
| 10/14/1994 | W/H TAX DIV C | (359) | - | (359) | - | - | 82,199,198 | - | - | - |
| 10/25/1994 | W/H TAX DIV GE | (20,034) | - | (20,034) | - | - | 82,179,164 | - | - | - |
| 10/28/1994 | W/H TAX DIV DOW | (6,130) | - | (6,130) | - | - | 82,173,035 | - | - | - |
| 11/1/1994 | W/H TAX DIV BEL | (10,702) | - | (10,702) | - | - | 82,162,333 | - | - | - |
| 11/1/1994 | W/H TAX DIV S | (4,957) | - | (4,957) | - | - | 82,157,376 | - | - | - |
| 11/1/1994 | W/H TAX DIV BMY | (12,771) | - | (12,771) | - | - | 82,144,605 | - | - | - |
| 11/1/1994 | W/H TAX DIV AIT | (8,497) | - | (8,497) | - | - | 82,136,108 | - | - | - |
| 11/1/1994 | W/H TAX DIV T | (15,464) | - | (15,464) | - | - | 82,120,643 | - | - | - |
| 11/8/1994 | CHECK WIRE | 2,840,000 | 2,840,000 | - | - | - | 84,960,643 | - | - | - |
| 11/15/1994 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (95) | - | (95) | - | - | 84,960,549 | - | - | - |
| 11/17/1994 | W/H TAX DIV CCI | (1,736) | - | (1,736) | - | - | 84,958,812 | - | - | - |
| 12/1/1994 | W/H TAX DIV F | (7,623) | - | (7,623) | - | - | 84,951,189 | - | - | - |
| 12/1/1994 | W/H TAX DIV INTC | (741) | - | (741) | - | - | 84,950,448 | - | - | - |
| 12/6/1994 | W/H TAX DIV JNJ | (5,594) | - | (5,594) | - | - | 84,944,854 | - | - | - |
| 12/9/1994 | W/H TAX DIV MCIC | (482) | - | (482) | - | - | 84,944,372 | - | - | - |
| 12/12/1994 | W/H TAX DIV MOB | (10,494) | - | (10,494) | - | - | 84,933,878 | - | - | - |
| 12/12/1994 | W/H TAX DIV AN | (8,063) | - | (8,063) | - | - | 84,925,815 | - | - | - |
| 12/12/1994 | W/H TAX DIV MMM | (5,600) | - | (5,600) | - | - | 84,920,215 | - | - | - |
| 12/12/1994 | W/H TAX DIV GM | (4,475) | - | (4,475) | - | - | 84,915,739 | - | - | - |
| 12/12/1994 | W/H TAX DIV IBM | (4,244) | - | (4,244) | - | - | 84,911,495 | - | - | - |
| 12/12/1994 | W/H TAX DIV XON | (27,199) | - | (27,199) | - | - | 84,884,297 | - | - | - |
| 12/14/1994 | W/H TAX DIV BAC | (4,456) | - | (4,456) | - | - | 84,879,841 | - | - | - |
| 12/14/1994 | W/H TAX DIV DD | (11,242) | - | (11,242) | - | - | 84,868,598 | - | - | - |
| 12/15/1994 | W/H TAX DIV KO | (7,738) | - | (7,738) | - | - | 84,860,860 | - | - | - |
| 12/15/1994 | W/H TAX DIV ARC | (6,366) | - | (6,366) | - | - | 84,854,495 | - | - | - |
| 12/15/1994 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (9) | - | (9) | - | - | 84,854,485 | - | - | - |
| 12/16/1994 | W/H TAX MCD | (1,284) | - | (1,284) | - | - | 84,853,202 | - | - | - |
| 12/16/1994 | W/H TAX DIV AIG | (1,096) | - | (1,096) | - | - | 84,852,106 | - | - | - |
| 12/19/1994 | CHECK WIRE | 3,000,000 | 3,000,000 | - | - | - | 87,852,106 | - | - | - |
| 1/3/1995 | W/H TAX DIV MRK | (11,667) | - | (11,667) | - | - | 87,840,439 | - | - | - |
| 1/3/1995 | W/H TAX DIV EK | (4,147) | - | (4,147) | - | - | 87,836,292 | - | - | - |
| 1/3/1995 | W/H TAX DIV PEP | (4,284) | - | (4,284) | - | - | 87,832,008 | - | - | - |
| 1/3/1995 | W/H TAX DIV S | (4,138) | - | (4,138) | - | - | 87,827,870 | - | - | - |
| 1/3/1995 | W/H TAX DIV WMT | (2,904) | - | (2,904) | - | - | 87,824,965 | - | - | - |
| 1/13/1995 | W/H TAX DIV C | (1,366) | - | (1,366) | - | - | 87,823,599 | - | - | - |
| 1/13/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (2) | - | (2) | - | - | 87,823,596 | - | - | - |
| 1/25/1995 | W/H TAX DIV GE | (9,216) | - | (9,216) | - | - | 87,814,380 | - | - | - |
| 1/30/1995 | W/H TAX DIV DOW | (2,229) | - | (2,229) | - | - | 87,812,151 | - | - | - |
| 1/31/1995 | TRANS TO 1FN07040 *(1FN070)* | (1,249,275) | - | - | - | (1,249,275) | 86,562,876 | - | - | - |
| 1/31/1995 | TRANS TO 1FN01230 *(1FN012)* | (350,000) | - | - | - | (350,000) | 86,212,876 | - | - | - |
| 2/1/1995 | W/H TAX DIV BEL | (4,206) | - | (4,206) | - | - | 86,208,670 | - | - | - |
| 2/1/1995 | W/H TAX DIV T | (7,041) | - | (7,041) | - | - | 86,201,629 | - | - | - |
| 2/1/1995 | W/H TAX DIV AIT | (3,620) | - | (3,620) | - | - | 86,198,010 | - | - | - |
| 2/1/1995 | W/H TAX DIV BMY | (5,357) | - | (5,357) | - | - | 86,192,653 | - | - | - |
| 2/10/1995 | W/H TAX DIV AXP | (1,543) | - | (1,543) | - | - | 86,191,110 | - | - | - |
| 2/13/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (16) | - | (16) | - | - | 86,191,094 | - | - | - |
| 2/17/1995 | W/H TAX DIV DIS | (543) | - | (543) | - | - | 86,190,551 | - | - | - |
| 2/17/1995 | W/H TAX DIV CCI | (3,528) | - | (3,528) | - | - | 86,187,023 | - | - | - |
| 2/17/1995 | TRANS FROM 1FN01230 *(1FN012)* | 500,000 | - | - | 500,000 | - | 86,687,023 | - | - | - |
| 2/28/1995 | TRANS TO 1FN07040 *(1FN070)* | (1,376,200) | - | - | - | (1,376,200) | 85,310,823 | - | - | - |
| 3/1/1995 | W/H TAX DIV F | (8,518) | - | (8,518) | - | - | 85,302,305 | - | - | - |
| 3/1/1995 | W/H TAX DIV INTC | (806) | - | (806) | - | - | 85,301,499 | - | - | - |
| 3/3/1995 | W/H TAX DIV BA | (2,520) | - | (2,520) | - | - | 85,298,979 | - | - | - |

MADC1345_00000720

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 Preference Period Initial Transfers | Column 10 Two Year Initial Transfers | Column 11 Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 3/6/1995 | W/H TAX DIV SO | (6,405) | - | (6,405) | - | - | 85,292,574 | - | - | - |
| 3/7/1995 | W/H TAX DIV JNJ | (5,603) | - | (5,603) | - | - | 85,286,971 | - | - | - |
| 3/10/1995 | W/H TAX DIV IBM | (4,410) | - | (4,410) | - | - | 85,282,561 | - | - | - |
| 3/10/1995 | W/H TAX DIV AN | (9,072) | - | (9,072) | - | - | 85,273,489 | - | - | - |
| 3/10/1995 | W/H TAX DIV XON | (28,980) | - | (28,980) | - | - | 85,244,509 | - | - | - |
| 3/10/1995 | W/H TAX DIV MOB | (10,710) | - | (10,710) | - | - | 85,233,799 | - | - | - |
| 3/10/1995 | W/H TAX DIV GM | (4,704) | - | (4,704) | - | - | 85,229,095 | - | - | - |
| 3/13/1995 | W/H TAX DIV MMM | (5,922) | - | (5,922) | - | - | 85,223,173 | - | - | - |
| 3/14/1995 | W/H TAX DIV BAC | (5,023) | - | (5,023) | - | - | 85,218,150 | - | - | - |
| 3/14/1995 | W/H TAX DIV DD | (9,870) | - | (9,870) | - | - | 85,208,280 | - | - | - |
| 3/15/1995 | W/H TAX DIV ARC | (6,930) | - | (6,930) | - | - | 85,201,350 | - | - | - |
| 3/15/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (60) | - | (60) | - | - | 85,201,290 | - | - | - |
| 3/17/1995 | W/H TAX DIV MCD | (1,310) | - | (1,310) | - | - | 85,199,979 | - | - | - |
| 3/31/1995 | W/H TAX DIV PEP | (4,234) | - | (4,234) | - | - | 85,195,746 | - | - | - |
| 3/31/1995 | TRANS TO 1FN07040 (1FN070) | (1,692,380) | - | - | - | (1,692,380) | 83,503,366 | - | - | - |
| 4/3/1995 | W/H TAX DIV AIG | (1,063) | - | (1,063) | - | - | 83,502,303 | - | - | - |
| 4/3/1995 | W/H TAX DIV KO | (8,870) | - | (8,870) | - | - | 83,493,433 | - | - | - |
| 4/3/1995 | W/H TAX DIV EK | (4,032) | - | (4,032) | - | - | 83,489,401 | - | - | - |
| 4/3/1995 | W/H TAX DIV S | (4,368) | - | (4,368) | - | - | 83,485,033 | - | - | - |
| 4/3/1995 | W/H TAX DIV MRK | (11,592) | - | (11,592) | - | - | 83,473,441 | - | - | - |
| 4/7/1995 | W/H TAX DIV SLB | (2,268) | - | (2,268) | - | - | 83,471,173 | - | - | - |
| 4/12/1995 | W/H TAX DIV HWP | (2,268) | - | (2,268) | - | - | 83,468,905 | - | - | - |
| 4/17/1995 | W/H TAX DIV WMT | (3,696) | - | (3,696) | - | - | 83,465,209 | - | - | - |
| 4/17/1995 | W/H TAX DIV C | (4,368) | - | (4,368) | - | - | 83,460,841 | - | - | - |
| 4/24/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (92) | - | (92) | - | - | 83,460,748 | - | - | - |
| 4/25/1995 | W/H TAX DIV GE | (20,320) | - | (20,320) | - | - | 83,440,429 | - | - | - |
| 4/28/1995 | W/H TAX DIV DOW | (4,916) | - | (4,916) | - | - | 83,435,513 | - | - | - |
| 4/28/1995 | TRANS TO 1FN07040 (1FN070) | (4,362,250) | - | - | - | (4,362,250) | 79,073,263 | - | - | - |
| 5/1/1995 | W/H TAX DIV T | (15,529) | - | (15,529) | - | - | 79,057,733 | - | - | - |
| 5/1/1995 | W/H TAX DIV BMY | (11,815) | - | (11,815) | - | - | 79,045,918 | - | - | - |
| 5/1/1995 | W/H TAX DIV AIT | (7,983) | - | (7,983) | - | - | 79,037,935 | - | - | - |
| 5/1/1995 | W/H TAX DIV BEL | (9,412) | - | (9,412) | - | - | 79,028,523 | - | - | - |
| 5/17/1995 | W/H TAX DIV CCI | (3,362) | - | (3,362) | - | - | 79,025,162 | - | - | - |
| 5/19/1995 | W/H TAX DIV DIS | (1,437) | - | (1,437) | - | - | 79,023,725 | - | - | - |
| 5/23/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FORXX | (65) | - | (65) | - | - | 79,023,659 | - | - | - |
| 5/31/1995 | TRANS TO 1FN07040 (1FN070) | (2,204,436) | - | - | - | (2,204,436) | 76,819,223 | - | - | - |
| 6/1/1995 | W/H TAX DIV F | (9,263) | - | (9,263) | - | - | 76,809,961 | - | - | - |
| 6/1/1995 | W/H TAX DIV INTC | (717) | - | (717) | - | - | 76,809,244 | - | - | - |
| 6/2/1995 | W/H TAX DIV BA | (2,428) | - | (2,428) | - | - | 76,806,816 | - | - | - |
| 6/6/1995 | W/H TAX DIV JNJ | (6,163) | - | (6,163) | - | - | 76,800,653 | - | - | - |
| 6/6/1995 | W/H TAX DIV SO | (5,696) | - | (5,696) | - | - | 76,794,957 | - | - | - |
| 6/12/1995 | W/H TAX DIV GM | (6,499) | - | (6,499) | - | - | 76,788,458 | - | - | - |
| 6/12/1995 | W/H TAX DIV IBM | (4,295) | - | (4,295) | - | - | 76,784,163 | - | - | - |
| 6/12/1995 | W/H TAX DIV MMM | (5,617) | - | (5,617) | - | - | 76,778,546 | - | - | - |
| 6/12/1995 | W/H TAX DIV MOB | (10,365) | - | (10,365) | - | - | 76,768,181 | - | - | - |
| 6/12/1995 | W/H TAX DIV AN | (8,516) | - | (8,516) | - | - | 76,759,665 | - | - | - |
| 6/12/1995 | W/H TAX DIV DD | (8,157) | - | (8,157) | - | - | 76,751,508 | - | - | - |
| 6/12/1995 | W/H TAX DIV XON | (26,892) | - | (26,892) | - | - | 76,724,616 | - | - | - |
| 6/14/1995 | W/H TAX DIV BAC | (4,811) | - | (4,811) | - | - | 76,719,805 | - | - | - |
| 6/15/1995 | W/H TAX DIV ARC | (6,163) | - | (6,163) | - | - | 76,713,643 | - | - | - |
| 6/16/1995 | W/H TAX DIV AIG | (1,059) | - | (1,059) | - | - | 76,712,583 | - | - | - |
| 6/16/1995 | W/H TAX DIV MCD | (1,397) | - | (1,397) | - | - | 76,711,186 | - | - | - |
| 6/19/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (5) | - | (5) | - | - | 76,711,182 | - | - | - |
| 6/23/1995 | W/H TAX DIV MCIC | (517) | - | (517) | - | - | 76,710,665 | - | - | - |
| 6/30/1995 | W/H TAX DIV PEP | (4,752) | - | (4,752) | - | - | 76,705,912 | - | - | - |
| 6/30/1995 | TRANS TO 1FN07040 (1FN070) | (3,460,484) | - | - | - | (3,460,484) | 73,245,428 | - | - | - |
| 7/3/1995 | W/H TAX DIV KO | (8,433) | - | (8,433) | - | - | 73,236,995 | - | - | - |
| 7/3/1995 | W/J TAX DIV SLB | (2,592) | - | (2,592) | - | - | 73,234,403 | - | - | - |
| 7/3/1995 | W/H TAX DIV MRK | (11,494) | - | (11,494) | - | - | 73,222,909 | - | - | - |
| 7/10/1995 | W/H TAX DIV WMT | (3,486) | - | (3,486) | - | - | 73,219,423 | - | - | - |
| 7/14/1995 | W/H TAX DIV C | (5,361) | - | (5,361) | - | - | 73,214,062 | - | - | - |
| 7/19/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (238) | - | (238) | - | - | 73,213,824 | - | - | - |
| 7/25/1995 | W/H TAX DIV GE | (21,123) | - | (21,123) | - | - | 73,192,702 | - | - | - |
| 7/28/1995 | W/H TAX DIV DOW | (5,778) | - | (5,778) | - | - | 73,186,923 | - | - | - |
| 7/31/1995 | TRANS TO 1FN070-40 (1FN070) | (1,066,657) | - | - | - | (1,066,657) | 72,120,267 | - | - | - |
| 8/1/1995 | W/H TAX DIV AIT | (8,078) | - | (8,078) | - | - | 72,112,189 | - | - | - |
| 8/1/1995 | W/H TAX DIV T | (15,482) | - | (15,482) | - | - | 72,096,708 | - | - | - |
| 8/1/1995 | W/H TAX DIV BEL | (9,143) | - | (9,143) | - | - | 72,087,565 | - | - | - |

MADC1345_00000721

BLMIS ACCOUNT NO. 1FN045 - CTR ... FBO FAIRFIELD SENTRY LTD

| Column 1<br>Date | Column 2<br>Transaction Description | Column 3<br>Transaction Amount Reported in Customer Statement | Column 4<br>Cash Deposits | Column 5<br>Cash Withdrawals | Column 6<br>Transfers of Principal In | Column 7<br>Transfers of Principal Out | Column 8<br>Balance of Principal | Column 9<br>Preference Period Initial Transfers | Column 10<br>Two Year Initial Transfers | Column 11<br>Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 8/1/1995 | W/H TAX DIV BMY | (11,385) | - | (11,385) | - | - | 72,076,180 | - | - | - |
| 8/3/1995 | W/H TAX DIV AIG | (11) | - | (11) | - | - | 72,076,169 | - | - | - |
| 8/10/1995 | W/H TAX DIV AXP | (3,289) | - | (3,289) | - | - | 72,072,879 | - | - | - |
| 8/16/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (121) | - | (121) | - | - | 72,072,758 | - | - | - |
| 8/17/1995 | W/H TAX DIV CCI | (3,464) | - | (3,464) | - | - | 72,069,294 | - | - | - |
| 8/18/1995 | W/H TAX DIV DIS | (1,385) | - | (1,385) | - | - | 72,067,909 | - | - | - |
| 8/28/1995 | TRANS TO 1FN01230 (1FN012) | (150,000) | - | - | - | (150,000) | 71,917,909 | - | - | - |
| 8/28/1995 | TRANS FROM 1FN07040 (1FN070) | 5,762 | - | - | 5,762 | - | 71,923,671 | - | - | - |
| 9/1/1995 | W/H TAX DIV F | (9,534) | - | (9,534) | - | - | 71,914,136 | - | - | - |
| 9/1/1995 | W/H TAX DIV INTC | (985) | - | (985) | - | - | 71,913,151 | - | - | - |
| 9/1/1995 | W/H TAX DIV BA | (2,502) | - | (2,502) | - | - | 71,910,649 | - | - | - |
| 9/5/1995 | W/H TAX DIV JNJ | (6,346) | - | (6,346) | - | - | 71,904,303 | - | - | - |
| 9/6/1995 | W/H TAX DIV SO | (5,784) | - | (5,784) | - | - | 71,898,520 | - | - | - |
| 9/11/1995 | W/H TAX DIV GM | (6,692) | - | (6,692) | - | - | 71,891,828 | - | - | - |
| 9/11/1995 | W/H TAX DIV MOB | (10,678) | - | (10,678) | - | - | 71,881,150 | - | - | - |
| 9/11/1995 | W/H TAX DIV XON | (27,691) | - | (27,691) | - | - | 71,853,459 | - | - | - |
| 9/11/1995 | W/H TAX DIV IBM | (4,423) | - | (4,423) | - | - | 71,849,036 | - | - | - |
| 9/11/1995 | W/H TAX DIV AN | (8,771) | - | (8,771) | - | - | 71,840,265 | - | - | - |
| 9/11/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (71) | - | (71) | - | - | 71,840,194 | - | - | - |
| 9/12/1995 | W/H TAX DIV MMM | (5,789) | - | (5,789) | - | - | 71,834,405 | - | - | - |
| 9/12/1995 | W/H TAX DIV DD | (8,401) | - | (8,401) | - | - | 71,826,004 | - | - | - |
| 9/15/1995 | W/H TAX DIV ARC | (6,338) | - | (6,338) | - | - | 71,819,666 | - | - | - |
| 9/15/1995 | W/H TAX DIV MCD | (1,402) | - | (1,402) | - | - | 71,818,264 | - | - | - |
| 9/15/1995 | W/H TAX DIV ARC | (461) | - | (461) | - | - | 71,817,803 | - | - | - |
| 9/15/1995 | W/H TAX DIV BAC | (4,959) | - | (4,959) | - | - | 71,812,845 | - | - | - |
| 9/22/1995 | W/H TAX DIV AIG | (1,178) | - | (1,178) | - | - | 71,811,666 | - | - | - |
| 9/29/1995 | W/H TAX DIV PEP | (4,767) | - | (4,767) | - | - | 71,806,899 | - | - | - |
| 9/29/1995 | TRANS TO 1FN07040 (1FN070) | (2,301,677) | - | - | - | (2,301,677) | 69,505,222 | - | - | - |
| 10/2/1995 | W/H TAX DIV SLB | (2,600) | - | (2,600) | - | - | 69,502,622 | - | - | - |
| 10/2/1995 | W/H TAX DIV EK | (14) | - | (14) | - | - | 69,502,608 | - | - | - |
| 10/2/1995 | W/H TAX DIV MRK | (13,068) | - | (13,068) | - | - | 69,489,540 | - | - | - |
| 10/2/1995 | W/H TAX DIV KO | (8,529) | - | (8,529) | - | - | 69,481,011 | - | - | - |
| 10/3/1995 | W/H TAX DIV WMT | (3,497) | - | (3,497) | - | - | 69,477,514 | - | - | - |
| 10/16/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (5) | - | (5) | - | - | 69,477,509 | - | - | - |
| 10/19/1995 | TRANS TO 1FN01230 (1FN012) | (5,000,000) | - | - | - | (5,000,000) | 64,477,509 | - | - | - |
| 10/25/1995 | W/H TAX DIV GE | (19,806) | - | (19,806) | - | - | 64,457,703 | - | - | - |
| 10/27/1995 | TRANS TO 1FN07040 (1FN070) | (261,954) | - | - | - | (261,954) | 64,195,749 | - | - | - |
| 10/30/1995 | W/H TAX DIV DOW | (5,613) | - | (5,613) | - | - | 64,190,135 | - | - | - |
| 11/1/1995 | W/H TAX DIV AIT | (7,825) | - | (7,825) | - | - | 64,182,311 | - | - | - |
| 11/1/1995 | W/H TAX DIV NYN | (6,824) | - | (6,824) | - | - | 64,175,486 | - | - | - |
| 11/1/1995 | W/H TAX DIV T | (14,819) | - | (14,819) | - | - | 64,160,667 | - | - | - |
| 11/1/1995 | W/H TAX DIV BMY | (10,573) | - | (10,573) | - | - | 64,150,094 | - | - | - |
| 11/1/1995 | W/H TAX DIV BEL | (8,573) | - | (8,573) | - | - | 64,141,521 | - | - | - |
| 11/10/1995 | W/H TAX DIV AXP | (3,062) | - | (3,062) | - | - | 64,138,459 | - | - | - |
| 11/17/1995 | W/H TAX DIV DIS | (1,286) | - | (1,286) | - | - | 64,137,173 | - | - | - |
| 11/17/1995 | W/H TAX DIV CCI | (3,266) | - | (3,266) | - | - | 64,133,907 | - | - | - |
| 11/20/1995 | FIDELITY CAS RESERVES SBI W/H TAX DIV FCRXX | (9) | - | (9) | - | - | 64,133,898 | - | - | - |
| 11/24/1995 | TRANS TO 1FN07040 (1FN070) | (471,634) | - | - | - | (471,634) | 63,662,264 | - | - | - |
| 11/24/1995 | TRANS FROM 1FN01230 (1FN012) | 125,000 | - | - | 125,000 | - | 63,787,264 | - | - | - |
| 12/1/1995 | W/H TAX DIV BA | (2,381) | - | (2,381) | - | - | 63,784,883 | - | - | - |
| 12/1/1995 | W/H TAX DIV F | (10,478) | - | (10,478) | - | - | 63,774,405 | - | - | - |
| 12/1/1995 | W/H TAX DIV INTC | (898) | - | (898) | - | - | 63,773,507 | - | - | - |
| 12/5/1995 | W/H TAX DIV JNJ | (5,838) | - | (5,838) | - | - | 63,767,669 | - | - | - |
| 12/11/1995 | W/H TAX DIV IBM | (3,912) | - | (3,912) | - | - | 63,763,756 | - | - | - |
| 12/11/1995 | W/H TAX DIV GM | (6,124) | - | (6,124) | - | - | 63,757,633 | - | - | - |
| 12/11/1995 | W/H TAX DIV AN | (8,165) | - | (8,165) | - | - | 63,749,468 | - | - | - |
| 12/11/1995 | W/H TAX DIV XON | (26,025) | - | (26,025) | - | - | 63,723,443 | - | - | - |
| 12/11/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (2) | - | (2) | - | - | 63,723,441 | - | - | - |
| 12/11/1995 | W/H TAX DIV MOB | (10,070) | - | (10,070) | - | - | 63,713,371 | - | - | - |
| 12/12/1995 | W/H TAX DIV MMM | (5,436) | - | (5,436) | - | - | 63,707,935 | - | - | - |
| 12/14/1995 | W/H TAX DIV BAC | (4,695) | - | (4,695) | - | - | 63,703,240 | - | - | - |
| 12/14/1995 | W/H TAX DIV DD | (8,138) | - | (8,138) | - | - | 63,695,103 | - | - | - |
| 12/15/1995 | W/H TAX DIV MCD | (1,286) | - | (1,286) | - | - | 63,693,817 | - | - | - |
| 12/15/1995 | W/H TAX DIV KO | (7,933) | - | (7,933) | - | - | 63,685,883 | - | - | - |
| 12/22/1995 | W/H TAX DIV AIG | (1,099) | - | (1,099) | - | - | 63,684,784 | - | - | - |
| 12/29/1995 | TRANS TO 1FN07040 (1FN070) | (5,577,776) | - | - | - | (5,577,776) | 58,107,009 | - | - | - |
| 1/2/1996 | W/H TAX DIV PEP | (4,491) | - | (4,491) | - | - | 58,102,518 | - | - | - |
| 1/2/1996 | W/H TAX DIV EK | (3,810) | - | (3,810) | - | - | 58,098,708 | - | - | - |

MADC1345_00000722

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Transaction Amount Reported in | | | | | | Preference | Two Year | Six Year |
| | Transaction | Reported in | Cash | Cash | Transfers of | Transfers of | Balance of | Period Initial | Initial | Initial |
| Date | Description | Customer Statement | Deposits | Withdrawals | Principal In | Principal Out | Principal | Transfers | Transfers | Transfers |
| 1/2/1996 | W/H TAX DIV MRK | (12,029) | - | (12,029) | - | - | 58,086,678 | - | - | - |
| 1/5/1996 | W/H TAX DIV WMT | (3,232) | - | (3,232) | - | - | 58,083,447 | - | - | - |
| 1/12/1996 | W/H TAX DIV C | (6,124) | - | (6,124) | - | - | 58,077,323 | - | - | - |
| 1/18/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (2) | - | (2) | - | - | 58,077,321 | - | - | - |
| 1/31/1996 | TRANS TO 1FN07040 (1FN070) | (71,650) | - | - | - | (71,650) | 58,005,671 | - | - | - |
| 2/20/1996 | W/H TAX DIV CCI | (4,993) | - | (4,993) | - | - | 58,000,678 | - | - | - |
| 2/20/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (44) | - | (44) | - | - | 58,000,634 | - | - | - |
| 2/29/1996 | TRANS TO 1FN07040 (1FN070) | (7,585,905) | - | - | - | (7,585,905) | 50,414,729 | - | - | - |
| 3/1/1996 | W/H TAX DIV INTC | (847) | - | (847) | - | - | 50,413,882 | - | - | - |
| 3/1/1996 | W/H TAX DIV COL | (333) | - | (333) | - | - | 50,413,550 | - | - | - |
| 3/1/1996 | W/H TAX DIV F | (9,586) | - | (9,586) | - | - | 50,403,963 | - | - | - |
| 3/1/1996 | W/H TAX DIV BA | (2,245) | - | (2,245) | - | - | 50,401,718 | - | - | - |
| 3/11/1996 | W/H TAX DIV GM | (7,517) | - | (7,517) | - | - | 50,394,202 | - | - | - |
| 3/11/1996 | W/H TAX DIV IBM | (3,688) | - | (3,688) | - | - | 50,390,514 | - | - | - |
| 3/11/1996 | W/H TAX DIV XON | (23,715) | - | (23,715) | - | - | 50,366,799 | - | - | - |
| 3/11/1996 | W/H TAX DIV AN | (8,046) | - | (8,046) | - | - | 50,358,753 | - | - | - |
| 3/11/1996 | W/H TAX DIV MOB | (9,493) | - | (9,493) | - | - | 50,349,261 | - | - | - |
| 3/12/1996 | W/H TAX DIV BAC | (5,195) | - | (5,195) | - | - | 50,344,065 | - | - | - |
| 3/12/1996 | W/H TAX DIV JNJ | (5,755) | - | (5,755) | - | - | 50,338,310 | - | - | - |
| 3/14/1996 | W/H TAX DIV DD | (7,338) | - | (7,338) | - | - | 50,330,972 | - | - | - |
| 3/15/1996 | W/H TAX DIV ARC | (5,292) | - | (5,292) | - | - | 50,325,681 | - | - | - |
| 3/15/1996 | W/H TAX DIV MCD | (441) | - | (441) | - | - | 50,325,240 | - | - | - |
| 3/21/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (10) | - | (10) | - | - | 50,325,229 | - | - | - |
| 3/22/1996 | W/H TAX DIV AIG | (724) | - | (724) | - | - | 50,324,505 | - | - | - |
| 3/29/1996 | W/H TAX DIV PEP | (2,840) | - | (2,840) | - | - | 50,321,665 | - | - | - |
| 3/29/1996 | TRANS FROM 1FN07040 (1FN070) | 1,828,882 | - | - | 1,828,882 | - | 52,150,547 | - | - | - |
| 4/1/1996 | W/H TAX DIV KO | (7,568) | - | (7,568) | - | - | 52,142,979 | - | - | - |
| 4/1/1996 | W/H TAX DIV EK | (1,259) | - | (1,259) | - | - | 52,141,720 | - | - | - |
| 4/1/1996 | W/H TAX DIV MRK | (7,647) | - | (7,647) | - | - | 52,134,073 | - | - | - |
| 4/1/1996 | W/H TAX DIV S | (835) | - | (835) | - | - | 52,133,237 | - | - | - |
| 4/2/1996 | W/H TAX DIV C | (5,457) | - | (5,457) | - | - | 52,127,780 | - | - | - |
| 4/8/1996 | W/H TAX DIV WMT | (2,920) | - | (2,920) | - | - | 52,124,860 | - | - | - |
| 4/10/1996 | W/H TAX DIV HWP | (2,490) | - | (2,490) | - | - | 52,122,370 | - | - | - |
| 4/17/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (3) | - | (3) | - | - | 52,122,367 | - | - | - |
| 4/25/1996 | W/H TAX DIV GE | (7,239) | - | (7,239) | - | - | 52,115,128 | - | - | - |
| 4/30/1996 | W/H TAX DIV DOW | (4,748) | - | (4,748) | - | - | 52,110,381 | - | - | - |
| 4/30/1996 | TRANS FROM 1FN07040 (1FN070) | 868,793 | - | - | 868,793 | - | 52,979,173 | - | - | - |
| 5/1/1996 | W/H TAX DIV T | (12,871) | - | (12,871) | - | - | 52,966,302 | - | - | - |
| 5/1/1996 | W/H TAX DIV BEL | (7,633) | - | (7,633) | - | - | 52,958,669 | - | - | - |
| 5/1/1996 | W/H TAX DIV NYN | (5,976) | - | (5,976) | - | - | 52,952,693 | - | - | - |
| 5/1/1996 | W/H TAX DIV BMY | (9,306) | - | (9,306) | - | - | 52,943,388 | - | - | - |
| 5/1/1996 | W/H TAX DIV AIT | (7,045) | - | (7,045) | - | - | 52,936,342 | - | - | - |
| 5/2/1996 | W/H TAX DIV PNU | (3,310) | - | (3,310) | - | - | 52,933,033 | - | - | - |
| 5/10/1996 | W/H TAX DIV AXP | (2,704) | - | (2,704) | - | - | 52,930,329 | - | - | - |
| 5/14/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (81) | - | (81) | - | - | 52,930,248 | - | - | - |
| 5/17/1996 | W/H TAX DIV DIS | (1,400) | - | (1,400) | - | - | 52,928,848 | - | - | - |
| 5/17/1996 | W/H TAX DIV CCI | (5,231) | - | (5,231) | - | - | 52,923,617 | - | - | - |
| 5/21/1996 | W/H TAX DIV ABS | (968) | - | (968) | - | - | 52,922,648 | - | - | - |
| 5/31/1996 | TRANS FROM 1FN07040 (1FN070) | 1,758,480 | - | - | 1,758,480 | - | 54,681,128 | - | - | - |
| 6/3/1996 | AMERICAN INTL GROUP INC CXL W/H TAX DIV 5/07/96 AIG | 968 | - | 968 | - | - | 54,682,097 | - | - | - |
| 6/3/1996 | W/H TAX DIV INTC | (810) | - | (810) | - | - | 54,681,287 | - | - | - |
| 6/3/1996 | W/H TAX DIV F | (9,132) | - | (9,132) | - | - | 54,672,155 | - | - | - |
| 6/3/1996 | W/H TAX DIV COL | (318) | - | (318) | - | - | 54,671,836 | - | - | - |
| 6/7/1996 | W/H TAX DIV BA | (1,136) | - | (1,136) | - | - | 54,670,701 | - | - | - |
| 6/10/1996 | W/H TAX DIV MOB | (9,506) | - | (9,506) | - | - | 54,661,195 | - | - | - |
| 6/10/1996 | W/H TAX DIV AN | (7,811) | - | (7,811) | - | - | 54,653,385 | - | - | - |
| 6/10/1996 | W/H TAX DIV IBM | (4,955) | - | (4,955) | - | - | 54,648,430 | - | - | - |
| 6/11/1996 | W/H TAX DIV JNJ | (3,083) | - | (3,083) | - | - | 54,645,347 | - | - | - |
| 6/12/1996 | W/H TAX DIV MMM | (4,378) | - | (4,378) | - | - | 54,640,969 | - | - | - |
| 6/12/1996 | W/H TAX DIV BAC | (2,359) | - | (2,359) | - | - | 54,638,610 | - | - | - |
| 6/14/1996 | W/H TAX DIV MCD | (1,211) | - | (1,211) | - | - | 54,637,399 | - | - | - |
| 6/21/1996 | W/H TAX DIV AIG | (897) | - | (897) | - | - | 54,636,502 | - | - | - |
| 6/25/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (10) | - | (10) | - | - | 54,636,492 | - | - | - |
| 6/28/1996 | W/H TAX DIV PEP | (4,285) | - | (4,285) | - | - | 54,632,207 | - | - | - |
| 6/28/1996 | TRANS FROM 1FN07040 (1FN070) | 70,676 | - | - | 70,676 | - | 54,702,883 | - | - | - |
| 7/1/1996 | W/H TAX DIV MRK | (9,924) | - | (9,924) | - | - | 54,692,959 | - | - | - |
| 7/1/1996 | W/H TAX DIV KO | (7,607) | - | (7,607) | - | - | 54,685,352 | - | - | - |
| 7/1/1996 | W/H TAX DIV WMT | (2,836) | - | (2,836) | - | - | 54,682,515 | - | - | - |

MADC1345_00000723

| Column 1<br><br>Date | Column 2<br><br>Transaction Description | Column 3<br>Transaction Amount Reported in Customer Statement | Column 4<br><br>Cash Deposits | Column 5<br><br>Cash Withdrawals | Column 6<br><br>Transfers of Principal In | Column 7<br><br>Transfers of Principal Out | Column 8<br><br>Balance of Principal | Column 9<br>Preference Period Initial Transfers | Column 10<br>Two Year Initial Transfers | Column 11<br>Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 7/5/1996 | W/H TAX DIV SLB | (2,096) | - | (2,096) | - | - | 54,680,420 | - | - | - |
| 7/10/1996 | W/H TAX DIV HWP | (2,981) | - | (2,981) | - | - | 54,677,439 | - | - | - |
| 7/15/1996 | W/H TAX DIV C | (6,086) | - | (6,086) | - | - | 54,671,353 | - | - | - |
| 7/22/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (21) | - | (21) | - | - | 54,671,332 | - | - | - |
| 7/25/1996 | W/H TAX DIV GE | (18,058) | - | (18,058) | - | - | 54,653,273 | - | - | - |
| 7/30/1996 | W/H TAX DIV DOW | (4,192) | - | (4,192) | - | - | 54,649,082 | - | - | - |
| 7/31/1996 | TRANS FROM 1FN07040 (1FN070) | 7,437,859 | - | - | 7,437,859 | - | 62,086,940 | - | - | - |
| 8/1/1996 | W/H TAX DIV EK | (3,229) | - | (3,229) | - | - | 62,083,711 | - | - | - |
| 8/1/1996 | W/H TAX DIV PNU | (3,197) | - | (3,197) | - | - | 62,080,514 | - | - | - |
| 8/1/1996 | W/H TAX DIV BMY | (8,879) | - | (8,879) | - | - | 62,071,635 | - | - | - |
| 8/1/1996 | W/H TAX DIV AIT | (6,606) | - | (6,606) | - | - | 62,065,029 | - | - | - |
| 8/1/1996 | W/H TAX DIV T | (12,543) | - | (12,543) | - | - | 62,052,486 | - | - | - |
| 8/1/1996 | W/H TAX DIV BEL | (7,180) | - | (7,180) | - | - | 62,045,306 | - | - | - |
| 8/1/1996 | W/H TAX DIV NYN | (5,883) | - | (5,883) | - | - | 62,039,423 | - | - | - |
| 8/9/1996 | W/H TAX DIV AXP | (2,524) | - | (2,524) | - | - | 62,036,899 | - | - | - |
| 8/16/1996 | W/H TAX DIV DIS | (1,714) | - | (1,714) | - | - | 62,035,185 | - | - | - |
| 8/19/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (42) | - | (42) | - | - | 62,035,143 | - | - | - |
| 8/19/1996 | W/H TAX DIV CCI | (5,589) | - | (5,589) | - | - | 62,029,554 | - | - | - |
| 8/30/1996 | TRANS TO 1FN07040 (1FN070) | (4,182,376) | - | - | - | (4,182,376) | 57,847,178 | - | - | - |
| 9/3/1996 | W/H TAX DIV COL | (352) | - | (352) | - | - | 57,846,826 | - | - | - |
| 9/3/1996 | W/H TAX DIV INTC | (1,098) | - | (1,098) | - | - | 57,845,728 | - | - | - |
| 9/3/1996 | W/H TAX DIV F | (11,677) | - | (11,677) | - | - | 57,834,051 | - | - | - |
| 9/5/1996 | CHECK WIRE | 32,000,000 | 32,000,000 | - | - | - | 89,834,051 | - | - | - |
| 9/6/1996 | W/H TAX DIV BA | (2,516) | - | (2,516) | - | - | 89,831,534 | - | - | - |
| 9/10/1996 | W/H TAX DIV MOB | (10,359) | - | (10,359) | - | - | 89,821,175 | - | - | - |
| 9/10/1996 | W/H TAX DIV AN | (8,517) | - | (8,517) | - | - | 89,812,658 | - | - | - |
| 9/10/1996 | W/H TAX DIV GM | (8,211) | - | (8,211) | - | - | 89,804,448 | - | - | - |
| 9/10/1996 | W/H TAX DIV JNJ | (6,793) | - | (6,793) | - | - | 89,797,654 | - | - | - |
| 9/10/1996 | W/H TAX DIV IBM | (5,262) | - | (5,262) | - | - | 89,792,392 | - | - | - |
| 9/10/1996 | W/H TAX DIV XON | (25,588) | - | (25,588) | - | - | 89,766,804 | - | - | - |
| 9/12/1996 | CHECK WIRE | 1,400,000 | 1,400,000 | - | - | - | 91,166,804 | - | - | - |
| 9/12/1996 | W/H TAX DIV DD | (8,607) | - | (8,607) | - | - | 91,158,197 | - | - | - |
| 9/12/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (2) | - | (2) | - | - | 91,158,195 | - | - | - |
| 9/12/1996 | W/H TAX DIV BAC | (5,223) | - | (5,223) | - | - | 91,152,972 | - | - | - |
| 9/13/1996 | W/H TAX DIV ARC | (522) | - | (522) | - | - | 91,152,449 | - | - | - |
| 9/13/1996 | W/H TAX DIV MCD | (1,348) | - | (1,348) | - | - | 91,151,102 | - | - | - |
| 9/20/1996 | W/H TAX DIV AIG | (1,180) | - | (1,180) | - | - | 91,149,922 | - | - | - |
| 9/27/1996 | W/H TAX DIV PEP | (4,751) | - | (4,751) | - | - | 91,145,171 | - | - | - |
| 9/30/1996 | TRANS TO 1FN07040 (1FN070) | (3,647,768) | - | - | - | (3,647,768) | 87,497,403 | - | - | - |
| 10/1/1996 | W/H TAX DIV MRK | (12,956) | - | (12,956) | - | - | 87,484,447 | - | - | - |
| 10/1/1996 | W/H TAX DIV KO | (10,225) | - | (10,225) | - | - | 87,474,222 | - | - | - |
| 10/1/1996 | W/H TAX DIV EK | (3,595) | - | (3,595) | - | - | 87,470,628 | - | - | - |
| 10/2/1996 | CHECK WIRE | 50,000,000 | 50,000,000 | - | - | - | 137,470,628 | - | - | - |
| 10/7/1996 | W/H TAX DIV WMT | (3,149) | - | (3,149) | - | - | 137,467,479 | - | - | - |
| 10/15/1996 | CHECK WIRE | 6,000,000 | 6,000,000 | - | - | - | 143,467,479 | - | - | - |
| 10/15/1996 | W/H TAX DIV C | (1,499) | - | (1,499) | - | - | 143,465,980 | - | - | - |
| 10/15/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (12) | - | (12) | - | - | 143,465,968 | - | - | - |
| 10/31/1996 | TRANS TO 1FN07040 (1FN070) | (1,122,735) | - | - | - | (1,122,735) | 142,343,233 | - | - | - |
| 11/1/1996 | W/H TAX DIV GE | (13,859) | - | (13,859) | - | - | 142,329,374 | - | - | - |
| 11/8/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (27) | - | (27) | - | - | 142,329,347 | - | - | - |
| 11/19/1996 | W/H TAX DIV CCI | (4,314) | - | (4,314) | - | - | 142,325,033 | - | - | - |
| 11/29/1996 | TRANS TO 1FN07040 (1FN070) | (3,870,921) | - | - | - | (3,870,921) | 138,454,112 | - | - | - |
| 12/2/1996 | W/H TAX DIV INTC | (908) | - | (908) | - | - | 138,453,204 | - | - | - |
| 12/2/1996 | W/H TAX DIV F | (9,325) | - | (9,325) | - | - | 138,443,879 | - | - | - |
| 12/6/1996 | W/H TAX DIV BA | (3,962) | - | (3,962) | - | - | 138,439,917 | - | - | - |
| 12/10/1996 | W/H TAX DIV AN | (6,560) | - | (6,560) | - | - | 138,433,357 | - | - | - |
| 12/10/1996 | W/H TAX DIV MOB | (8,074) | - | (8,074) | - | - | 138,425,283 | - | - | - |
| 12/10/1996 | W/H TAX DIV IBM | (3,709) | - | (3,709) | - | - | 138,421,575 | - | - | - |
| 12/10/1996 | W/H TAX DIV XON | (39,923) | - | (39,923) | - | - | 138,381,652 | - | - | - |
| 12/10/1996 | W/H TAX DIV JNJ | (10,274) | - | (10,274) | - | - | 138,371,378 | - | - | - |
| 12/10/1996 | W/H TAX DIV GM | (12,128) | - | (12,128) | - | - | 138,359,250 | - | - | - |
| 12/12/1996 | W/H TAX DIV MTC | (3,562) | - | (3,562) | - | - | 138,355,688 | - | - | - |
| 12/12/1996 | W/H TAX DIV BAC | (7,913) | - | (7,913) | - | - | 138,347,775 | - | - | - |
| 12/12/1996 | W/H TAX DIV MMM | (8,419) | - | (8,419) | - | - | 138,339,355 | - | - | - |
| 12/13/1996 | W/H TAX DIV MCD | (2,122) | - | (2,122) | - | - | 138,337,233 | - | - | - |
| 12/16/1996 | W/H TAX DIV DD | (13,250) | - | (13,250) | - | - | 138,323,983 | - | - | - |
| 12/16/1996 | W/H TAX DIV KO | (12,508) | - | (12,508) | - | - | 138,311,475 | - | - | - |
| 12/18/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (23) | - | (23) | - | - | 138,311,452 | - | - | - |

MADC1345_00000724

BLMIS ACCOUNT NO. 1FN045 - CITCO GLOBAL CUSTODY NV FBO FAIRFIELD SENTRY LTD

| Column 1<br>Date | Column 2<br>Transaction<br>Description | Column 3<br>Transaction Amount<br>Reported in<br>Customer Statement | Column 4<br>Cash<br>Deposits | Column 5<br>Cash<br>Withdrawals | Column 6<br>Transfers of<br>Principal In | Column 7<br>Transfers of<br>Principal Out | Column 8<br>Balance of<br>Principal | Column 9<br>Preference<br>Period Initial<br>Transfers | Column 10<br>Two Year<br>Initial<br>Transfers | Column 11<br>Six Year<br>Initial<br>Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/20/1996 | W/H TAX DIV AIG | (1,920) | - | (1,920) | - | - | 138,309,532 | - | - | - |
| 12/31/1996 | TRANS TO 1FN07040 (1FN070) | (680,538) | - | - | - | (680,538) | 137,628,994 | - | - | - |
| 1/2/1997 | W/H TAX DIV MRK | (20,012) | - | (20,012) | - | - | 137,608,982 | - | - | - |
| 1/2/1997 | W/H TAX DIV EK | (5,660) | - | (5,660) | - | - | 137,603,322 | - | - | - |
| 1/2/1997 | W/H TAX DIV PEP | (7,264) | - | (7,264) | - | - | 137,596,058 | - | - | - |
| 1/10/1997 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | 137,596,055 | - | - | - |
| 1/15/1997 | CHECK WIRE | 14,700,000 | 14,700,000 | - | - | - | 152,296,055 | - | - | - |
| 1/15/1997 | W/H TAX DIV C | (11,325) | - | (11,325) | - | - | 152,284,729 | - | - | - |
| 1/17/1997 | W/H TAX DIV WMT | (4,882) | - | (4,882) | - | - | 152,279,848 | - | - | - |
| 1/31/1997 | TRANS TO 1FN07040 (1FN070) | (4,183,823) | - | - | - | (4,183,823) | 148,096,025 | - | - | - |
| 2/18/1997 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 148,096,023 | - | - | - |
| 2/20/1997 | W/H TAX DIV CCI | (10,255) | - | (10,255) | - | - | 148,085,768 | - | - | - |
| 2/28/1997 | TRANS TO 1FN07040 (1FN070) | (3,551,975) | - | - | - | (3,551,975) | 144,533,793 | - | - | - |
| 3/3/1997 | W/H TAX DIV INTC | (1,664) | - | (1,664) | - | - | 144,532,129 | - | - | - |
| 3/3/1997 | W/H TAX DIV COL | (542) | - | (542) | - | - | 144,531,587 | - | - | - |
| 3/3/1997 | W/H TAX DIV F | (18,603) | - | (18,603) | - | - | 144,512,984 | - | - | - |
| 3/7/1997 | W/H TAX DIV BA | (4,030) | - | (4,030) | - | - | 144,508,954 | - | - | - |
| 3/10/1997 | W/H TAX DIV IBM | (7,458) | - | (7,458) | - | - | 144,501,495 | - | - | - |
| 3/10/1997 | W/H TAX DIV MOB | (17,437) | - | (17,437) | - | - | 144,484,059 | - | - | - |
| 3/10/1997 | W/H TAX DIV GM | (15,094) | - | (15,094) | - | - | 144,468,965 | - | - | - |
| 3/10/1997 | W/H TAX DIV AN | (14,393) | - | (14,393) | - | - | 144,454,571 | - | - | - |
| 3/10/1997 | W/H TAX DIV XON | (40,093) | - | (40,093) | - | - | 144,414,478 | - | - | - |
| 3/11/1997 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (18) | - | (18) | - | - | 144,414,460 | - | - | - |
| 3/11/1997 | W/H TAX DIV JNJ | (10,303) | - | (10,303) | - | - | 144,404,158 | - | - | - |
| 3/12/1997 | W/H TAX DIV MMM | (8,919) | - | (8,919) | - | - | 144,395,239 | - | - | - |
| 3/12/1997 | W/H TAX DIV BAC | (9,010) | - | (9,010) | - | - | 144,386,229 | - | - | - |
| 3/14/1997 | W/H TAX DIV DD | (13,105) | - | (13,105) | - | - | 144,373,123 | - | - | - |
| 3/20/1997 | CHECK WIRE | 403,925 | 403,925 | - | - | - | 144,777,048 | - | - | - |
| 3/20/1997 | CHECK WIRE | 115,425 | 115,425 | - | - | - | 144,892,473 | - | - | - |
| 3/31/1997 | W/H TAX DIV PEP | (2,050) | - | (2,050) | - | - | 144,890,424 | - | - | - |
| 3/31/1997 | TRANS FROM 1FN07040 (1FN070) | 2,325,993 | - | - | 2,325,993 | - | 147,216,417 | - | - | - |
| 4/1/1997 | W/H TAX DIV KO | (3,968) | - | (3,968) | - | - | 147,212,448 | - | - | - |
| 4/2/1997 | CHECK WIRE | 35,000,000 | 35,000,000 | - | - | - | 182,212,448 | - | - | - |
| 4/4/1997 | W/H TAX DIV SLB | (3,857) | - | (3,857) | - | - | 182,208,592 | - | - | - |
| 4/9/1997 | CHECK WIRE | 205,000 | 205,000 | - | - | - | 182,413,592 | - | - | - |
| 4/9/1997 | W/H TAX DIV WMT | (1,775) | - | (1,775) | - | - | 182,411,817 | - | - | - |
| 4/15/1997 | W/H TAX DIV C | (3,390) | - | (3,390) | - | - | 182,408,427 | - | - | - |
| 4/16/1997 | W/H TAX DIV HWP | (3,082) | - | (3,082) | - | - | 182,405,346 | - | - | - |
| 4/24/1997 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (15) | - | (15) | - | - | 182,405,331 | - | - | - |
| 4/30/1997 | TRANS FROM 1FN07040 (1FN070) | 9,453,364 | - | - | 9,453,364 | - | 191,858,695 | - | - | - |
| 5/1/1997 | W/H TAX DIV BMY | (9,891) | - | (9,891) | - | - | 191,848,804 | - | - | - |
| 5/1/1997 | W/H TAX DIV T | (13,444) | - | (13,444) | - | - | 191,835,360 | - | - | - |
| 5/1/1997 | W/H TAX DIV BEL | (8,076) | - | (8,076) | - | - | 191,827,284 | - | - | - |
| 5/1/1997 | W/H TAX DIV AIT | (7,980) | - | (7,980) | - | - | 191,819,303 | - | - | - |
| 5/6/1997 | CHECK WIRE | 30,000,000 | 30,000,000 | - | - | - | 221,819,303 | - | - | - |
| 5/7/1997 | CHECK WIRE | 110,025 | 110,025 | - | - | - | 221,929,328 | - | - | - |
| 5/7/1997 | CHECK WIRE | 18,025 | 18,025 | - | - | - | 221,947,353 | - | - | - |
| 5/9/1997 | W/H TAX DIV AXP | (2,745) | - | (2,745) | - | - | 221,944,609 | - | - | - |
| 5/12/1997 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (22) | - | (22) | - | - | 221,944,587 | - | - | - |
| 5/13/1997 | CHECK WIRE | 8,000,000 | 8,000,000 | - | - | - | 229,944,587 | - | - | - |
| 5/16/1997 | W/H TAX DIV DIS | (2,297) | - | (2,297) | - | - | 229,942,290 | - | - | - |
| 5/19/1997 | W/H TAX DIV CCI | (2,702) | - | (2,702) | - | - | 229,939,588 | - | - | - |
| 5/30/1997 | TRANS TO 1FN07040 (1FN070) | (3,326,923) | - | - | - | (3,326,923) | 226,612,665 | - | - | - |
| 6/2/1997 | W/H TAX DIV COL | (154) | - | (154) | - | - | 226,612,511 | - | - | - |
| 6/2/1997 | W/H TAX DIV F | (5,644) | - | (5,644) | - | - | 226,606,867 | - | - | - |
| 6/2/1997 | W/H TAX DIV INTC | (472) | - | (472) | - | - | 226,606,395 | - | - | - |
| 6/10/1997 | W/H TAX DIV MOB | (4,546) | - | (4,546) | - | - | 226,601,849 | - | - | - |
| 6/10/1997 | W/H TAX DIV AN | (3,802) | - | (3,802) | - | - | 226,598,047 | - | - | - |
| 6/10/1997 | W/H TAX DIV IBM | (2,516) | - | (2,516) | - | - | 226,595,531 | - | - | - |
| 6/11/1997 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (56) | - | (56) | - | - | 226,595,475 | - | - | - |
| 6/30/1997 | TRANS TO 1FN07040 (1FN070) | (4,080,019) | - | - | - | (4,080,019) | 222,515,456 | - | - | - |
| 7/2/1997 | CHECK WIRE | 40,000,000 | 40,000,000 | - | - | - | 262,515,456 | - | - | - |
| 7/9/1997 | W/H TAX DIV HWP | (6,747) | - | (6,747) | - | - | 262,508,709 | - | - | - |
| 7/14/1997 | W/H TAX DIV WMT | (7,465) | - | (7,465) | - | - | 262,501,244 | - | - | - |
| 7/18/1997 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (5) | - | (5) | - | - | 262,501,238 | - | - | - |
| 7/22/1997 | CHECK WIRE | 14,000,000 | 14,000,000 | - | - | - | 276,501,238 | - | - | - |
| 7/25/1997 | W/H TAX DIV GE | (40,804) | - | (40,804) | - | - | 276,460,434 | - | - | - |
| 7/31/1997 | TRANS TO 1FN07040 (1FN070) | (6,006,758) | - | - | - | (6,006,758) | 270,453,676 | - | - | - |

MADC1345_00000725

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Transaction Amount | | | | | | Preference | Two Year | Six Year |
| | Transaction | Reported in | Cash | Cash | Transfers of | Transfers of | Balance of | Period Initial | Initial | Initial |
| Date | Description | Customer Statement | Deposits | Withdrawals | Principal In | Principal Out | Principal | Transfers | Transfers | Transfers |
| 8/1/1997 | W/H TAX DIV T | (25,487) | - | (25,487) | - | - | 270,428,190 | - | - | - |
| 8/1/1997 | W/H TAX DIV AIT | (14,662) | - | (14,662) | - | - | 270,413,528 | - | - | - |
| 8/1/1997 | W/H TAX DIV BEL | (15,545) | - | (15,545) | - | - | 270,397,983 | - | - | - |
| 8/1/1997 | W/H TAX DIV BMY | (18,079) | - | (18,079) | - | - | 270,379,904 | - | - | - |
| 8/8/1997 | W/H TAX DIV AXP | (5,005) | - | (5,005) | - | - | 270,374,899 | - | - | - |
| 8/13/1997 | CHECK WIRE | 13,000,000 | 13,000,000 | - | - | - | 283,374,899 | - | - | - |
| 8/13/1997 | CHECK WIRE | 872,840 | 872,840 | - | - | - | 284,247,739 | - | - | - |
| 8/20/1997 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (108) | - | (108) | - | - | 284,247,632 | - | - | - |
| 8/22/1997 | W/H TAX DIV DIS | (4,257) | - | (4,257) | - | - | 284,243,375 | - | - | - |
| 8/29/1997 | TRANS FROM 1FN07040 (1FN070) | 92,008 | - | - | 92,008 | - | 284,335,383 | - | - | - |
| 9/10/1997 | CHECK WIRE | 17,000,000 | 17,000,000 | - | - | - | 301,335,383 | - | - | - |
| 9/12/1997 | W/H TAX DIV MMM | (7,723) | - | (7,723) | - | - | 301,327,660 | - | - | - |
| 9/12/1997 | W/H TAX DIV MCD | (3,048) | - | (3,048) | - | - | 301,324,612 | - | - | - |
| 9/19/1997 | W/H TAX DIV AIG | (2,771) | - | (2,771) | - | - | 301,321,842 | - | - | - |
| 9/23/1997 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (13) | - | (13) | - | - | 301,321,829 | - | - | - |
| 9/26/1997 | W/H TAX DIV NB | (12,665) | - | (12,665) | - | - | 301,309,163 | - | - | - |
| 9/30/1997 | TRANS TO 1FN07040 (1FN070) | (428,150) | - | - | - | (428,150) | 300,881,013 | - | - | - |
| 10/1/1997 | W/H TAX DIV MRK | (28,488) | - | (28,488) | - | - | 300,852,525 | - | - | - |
| 10/1/1997 | W/H TAX DIV S | (4,140) | - | (4,140) | - | - | 300,848,385 | - | - | - |
| 10/1/1997 | W/H TAX DIV KO | (17,726) | - | (17,726) | - | - | 300,830,659 | - | - | - |
| 10/7/1997 | W/H TAX DIV PEP | (10,009) | - | (10,009) | - | - | 300,820,650 | - | - | - |
| 10/10/1997 | W/H TAX DIV SLB | (4,856) | - | (4,856) | - | - | 300,815,794 | - | - | - |
| 10/14/1997 | W/H TAX DIV WMT | (7,964) | - | (7,964) | - | - | 300,807,831 | - | - | - |
| 10/15/1997 | W/H TAX DIV C | (14,388) | - | (14,388) | - | - | 300,793,443 | - | - | - |
| 10/15/1997 | W/H TAX DIV HWP | (7,252) | - | (7,252) | - | - | 300,786,191 | - | - | - |
| 10/22/1997 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (111) | - | (111) | - | - | 300,786,080 | - | - | - |
| 10/27/1997 | W/H TAX DIV GE | (45,648) | - | (45,648) | - | - | 300,740,432 | - | - | - |
| 10/31/1997 | TRANS FROM 1FN07040 (1FN070) | 1,887,720 | - | - | 1,887,720 | - | 302,628,152 | - | - | - |
| 11/3/1997 | W/H TAX DIV BEL | (32,635) | - | (32,635) | - | - | 302,595,517 | - | - | - |
| 11/3/1997 | W/H TAX DIV T | (29,054) | - | (29,054) | - | - | 302,566,463 | - | - | - |
| 11/3/1997 | W/H TAX DIV AIT | (17,048) | - | (17,048) | - | - | 302,549,415 | - | - | - |
| 11/3/1997 | W/H TAX DIV BMY | (20,692) | - | (20,692) | - | - | 302,528,723 | - | - | - |
| 11/5/1997 | CHECK WIRE | 23,500,000 | 23,500,000 | - | - | - | 326,028,723 | - | - | - |
| 11/10/1997 | W/H TAX DIV AXP | (5,787) | - | (5,787) | - | - | 326,022,936 | - | - | - |
| 11/20/1997 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (5) | - | (5) | - | - | 326,022,931 | - | - | - |
| 11/21/1997 | W/H TAX DIV DIS | (4,816) | - | (4,816) | - | - | 326,018,115 | - | - | - |
| 11/28/1997 | TRANS TO 1FN07040 (1FN070) | (6,228,887) | - | - | - | (6,228,887) | 319,789,228 | - | - | - |
| 12/12/1997 | W/H TAX DIV MCD | (2,538) | - | (2,538) | - | - | 319,786,690 | - | - | - |
| 12/15/1997 | W/H TAX DIV KO | (15,506) | - | (15,506) | - | - | 319,771,184 | - | - | - |
| 12/17/1997 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (14) | - | (14) | - | - | 319,771,171 | - | - | - |
| 12/19/1997 | W/H TAX DIV AIG | (2,307) | - | (2,307) | - | - | 319,768,863 | - | - | - |
| 12/24/1997 | W/H TAX DIV NB | (12,158) | - | (12,158) | - | - | 319,756,705 | - | - | - |
| 12/31/1997 | TRANS FROM 1FN07040 (1FN070) | 4,341,967 | - | - | 4,341,967 | - | 324,098,672 | - | - | - |
| 1/2/1998 | W/H TAX DIV MRK | (24,366) | - | (24,366) | - | - | 324,074,306 | - | - | - |
| 1/2/1998 | W/H TAX DIV PEP | (8,614) | - | (8,614) | - | - | 324,065,692 | - | - | - |
| 1/15/1998 | W/H TAX DIV C | (11,814) | - | (11,814) | - | - | 324,053,878 | - | - | - |
| 1/20/1998 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (4) | - | (4) | - | - | 324,053,874 | - | - | - |
| 1/30/1998 | TRANS FROM 1FN07040 (1FN070) | 1,791,004 | - | - | 1,791,004 | - | 325,844,878 | - | - | - |
| 2/12/1998 | CHECK WIRE | 15,500,000 | 15,500,000 | - | - | - | 341,344,878 | - | - | - |
| 2/19/1998 | W/H TAX DIV CCI | (10,304) | - | (10,304) | - | - | 341,334,573 | - | - | - |
| 2/24/1998 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (22) | - | (22) | - | - | 341,334,551 | - | - | - |
| 2/25/1998 | W/H TAX DIV MER | (2,688) | - | (2,688) | - | - | 341,331,863 | - | - | - |
| 2/27/1998 | TRANS TO 1FN07040 (1FN070) | (24,281,577) | - | - | - | (24,281,577) | 317,050,286 | - | - | - |
| 3/2/1998 | W/H TAX DIV INTC | (1,983) | - | (1,983) | - | - | 317,048,304 | - | - | - |
| 3/2/1998 | W/H TAX DIV F | (20,229) | - | (20,229) | - | - | 317,028,074 | - | - | - |
| 3/6/1998 | CHECK WIRE | 35,000,000 | 35,000,000 | - | - | - | 352,028,074 | - | - | - |
| 3/6/1998 | W/H TAX DIV BA | (8,189) | - | (8,189) | - | - | 352,019,885 | - | - | - |
| 3/10/1998 | W/H TAX DIV XON | (40,414) | - | (40,414) | - | - | 351,979,472 | - | - | - |
| 3/10/1998 | W/H TAX DIV IBM | (7,616) | - | (7,616) | - | - | 351,971,856 | - | - | - |
| 3/10/1998 | W/H TAX DIV MOB | (17,876) | - | (17,876) | - | - | 351,953,980 | - | - | - |
| 3/10/1998 | W/H TAX DIV AN | (21,935) | - | (21,935) | - | - | 351,932,045 | - | - | - |
| 3/10/1998 | W/H TAX DIV JNJ | (17,158) | - | (17,158) | - | - | 351,914,887 | - | - | - |
| 3/10/1998 | W/H TAX DIV GM | (21,122) | - | (21,122) | - | - | 351,893,764 | - | - | - |
| 3/11/1998 | W/H TAX DIV BAC | (14,189) | - | (14,189) | - | - | 351,879,576 | - | - | - |
| 3/12/1998 | W/H TAX DIV MMM | (12,511) | - | (12,511) | - | - | 351,867,065 | - | - | - |
| 3/13/1998 | W/H TAX DIV ARC | (9,576) | - | (9,576) | - | - | 351,857,488 | - | - | - |
| 3/16/1998 | W/H TAX DIV DD | (20,472) | - | (20,472) | - | - | 351,837,016 | - | - | - |
| 3/17/1998 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (37) | - | (37) | - | - | 351,836,979 | - | - | - |

MADC1345_00000726

BLMIS ACCOUNT NO. 1FN045 - CITCO GLOBAL CUSTODY NV FBO FAIRFIELD SENTRY LTD

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Transaction Amount | | | | | | Preference | Two Year | Six Year |
| | Transaction | Reported in | Cash | Cash | Transfers of | Transfers of | Balance of | Period Initial | Initial | Initial |
| Date | Description | Customer Statement | Deposits | Withdrawals | Principal In | Principal Out | Principal | Transfers | Transfers | Transfers |
| 3/31/1998 | TRANS TO 1FN07040 *(1FN070)* | (4,492,195) | - | - | - | (4,492,195) | 347,344,784 | - | - | - |
| 4/3/1998 | W/H TAX DIV SLB | (5,484) | - | (5,484) | - | - | 347,339,301 | - | - | - |
| 4/6/1998 | W/H TAX DIV WMT | (5,246) | - | (5,246) | - | - | 347,334,055 | - | - | - |
| 4/13/1998 | CHECK WIRE | 18,000,000 | 18,000,000 | - | - | - | 365,334,055 | - | - | - |
| 4/15/1998 | W/H TAX DIV HWP | (8,532) | - | (8,532) | - | - | 365,325,523 | - | - | - |
| 4/22/1998 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (12) | - | (12) | - | - | 365,325,511 | - | - | - |
| 4/30/1998 | TRANS TO 1FN07040 *(1FN070)* | (16,869,760) | - | - | - | (16,869,760) | 348,455,751 | - | - | - |
| 5/1/1998 | W/H TAX DIV AIT | (20,259) | - | (20,259) | - | - | 348,435,491 | - | - | - |
| 5/1/1998 | W/H TAX DIV BMY | (23,124) | - | (23,124) | - | - | 348,412,368 | - | - | - |
| 5/1/1998 | W/H TAX DIV BEL | (35,509) | - | (35,509) | - | - | 348,376,858 | - | - | - |
| 5/1/1998 | W/H TAX DIV T | (32,068) | - | (32,068) | - | - | 348,344,790 | - | - | - |
| 5/7/1998 | CHECK WIRE | 30,000,000 | 30,000,000 | - | - | - | 378,344,790 | - | - | - |
| 5/8/1998 | W/H TAX DIV AXP | (6,301) | - | (6,301) | - | - | 378,338,489 | - | - | - |
| 5/14/1998 | CHECK WIRE | 33,000,000 | 33,000,000 | - | - | - | 411,338,489 | - | - | - |
| 5/19/1998 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (62) | - | (62) | - | - | 411,338,427 | - | - | - |
| 5/22/1998 | W/H TAX DIV DIS | (6,226) | - | (6,226) | - | - | 411,332,201 | - | - | - |
| 5/27/1998 | TRANS FROM 1FN07040 *(1FN070)* | 2,204,588 | - | - | 2,204,588 | - | 413,536,789 | - | - | - |
| 5/29/1998 | TRANS TO 1FN07040 *(1FN070)* | (32,916) | - | - | - | (32,916) | 413,503,873 | - | - | - |
| 6/4/1998 | CHECK WIRE | 14,999,980 | 14,999,980 | - | - | - | 428,503,853 | - | - | - |
| 6/5/1998 | W/H TAX DIV BA | (8,850) | - | (8,850) | - | - | 428,495,003 | - | - | - |
| 6/9/1998 | W/H TAX DIV JNJ | (21,070) | - | (21,070) | - | - | 428,473,933 | - | - | - |
| 6/10/1998 | W/H TAX DIV MOB | (8,812) | - | (8,812) | - | - | 428,465,121 | - | - | - |
| 6/10/1998 | W/H TAX DIV GM | (15,731) | - | (15,731) | - | - | 428,449,390 | - | - | - |
| 6/10/1998 | W/H TAX DIV IBM | (4,373) | - | (4,373) | - | - | 428,445,017 | - | - | - |
| 6/10/1998 | W/H TAX DIV AN | (31,685) | - | (31,685) | - | - | 428,413,333 | - | - | - |
| 6/10/1998 | W/H TAX DIV XON | (43,659) | - | (43,659) | - | - | 428,369,674 | - | - | - |
| 6/11/1998 | W/H TAX DIV BAC | (15,298) | - | (15,298) | - | - | 428,354,376 | - | - | - |
| 6/11/1998 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (5) | - | (5) | - | - | 428,354,371 | - | - | - |
| 6/12/1998 | CHECK WIRE | 23,000,000 | 23,000,000 | - | - | - | 451,354,371 | - | - | - |
| 6/12/1998 | W/H TAX DIV DD | (25,814) | - | (25,814) | - | - | 451,328,557 | - | - | - |
| 6/12/1998 | W/H TAX DIV MMM | (13,522) | - | (13,522) | - | - | 451,315,036 | - | - | - |
| 6/12/1998 | W/H TAX DIV MCD | (4,114) | - | (4,114) | - | - | 451,310,922 | - | - | - |
| 6/19/1998 | W/H TAX DIV AIG | (3,609) | - | (3,609) | - | - | 451,307,313 | - | - | - |
| 6/26/1998 | W/H TAX DIV NB | (23,915) | - | (23,915) | - | - | 451,283,398 | - | - | - |
| 6/29/1998 | TRANS FROM 1FN07040 *(1FN070)* | 8,041,000 | - | - | 8,041,000 | - | 459,324,398 | - | - | - |
| 6/30/1998 | W/H TAX DIV PEP | (13,019) | - | (13,019) | - | - | 459,311,379 | - | - | - |
| 6/30/1998 | W/H TAX DIV NT | (2,124) | - | (2,124) | - | - | 459,309,255 | - | - | - |
| 7/1/1998 | AMOCO CORP CANCEL W/H | 31,685 | - | 31,685 | - | - | 459,340,940 | - | - | - |
| 7/1/1998 | W/H TAX DIV KO | (24,823) | - | (24,823) | - | - | 459,316,117 | - | - | - |
| 7/1/1998 | W/H TAX DIV MRK | (35,661) | - | (35,661) | - | - | 459,280,455 | - | - | - |
| 7/1/1998 | AMOCO CORP W/H TAX DIV | (15,842) | - | (15,842) | - | - | 459,264,613 | - | - | - |
| 7/7/1998 | CHECK WIRE | 30,000,000 | 30,000,000 | - | - | - | 489,264,613 | - | - | - |
| 7/10/1998 | W/H TAX DIV SLB | (6,247) | - | (6,247) | - | - | 489,258,366 | - | - | - |
| 7/13/1998 | W/H TAX DIV WMT | (11,576) | - | (11,576) | - | - | 489,246,790 | - | - | - |
| 7/15/1998 | W/H TAX DIV C | (17,333) | - | (17,333) | - | - | 489,229,457 | - | - | - |
| 7/15/1998 | W/H TAX DIV HWP | (11,254) | - | (11,254) | - | - | 489,218,203 | - | - | - |
| 7/20/1998 | CHECK WIRE | 7,000,000 | 7,000,000 | - | - | - | 496,218,203 | - | - | - |
| 7/22/1998 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (5) | - | (5) | - | - | 496,218,198 | - | - | - |
| 7/27/1998 | W/H TAX DIV GE | (65,251) | - | (65,251) | - | - | 496,152,947 | - | - | - |
| 7/29/1998 | TRANS TO 1FN07040 *(1FN070)* | (51,013,560) | - | - | - | (51,013,560) | 445,139,387 | - | - | - |
| 8/3/1998 | W/H TAX DIV BMY | (25,988) | - | (25,988) | - | - | 445,113,399 | - | - | - |
| 8/3/1998 | W/H TAX DIV T | (35,491) | - | (35,491) | - | - | 445,077,908 | - | - | - |
| 8/3/1998 | W/H TAX DIV BEL | (39,908) | - | (39,908) | - | - | 445,038,001 | - | - | - |
| 8/3/1998 | W/H TAX DIV AIT | (21,884) | - | (21,884) | - | - | 445,016,116 | - | - | - |
| 8/5/1998 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 445,016,115 | - | - | - |
| 8/6/1998 | CHECK WIRE | 40,000,000 | 40,000,000 | - | - | - | 485,016,115 | - | - | - |
| 8/10/1998 | W/H TAX DIV AXP | (7,205) | - | (7,205) | - | - | 485,008,910 | - | - | - |
| 8/31/1998 | TRANS TO 1FN07040 *(1FN070)* | (1,583,810) | - | - | - | (1,583,810) | 483,425,100 | - | - | - |
| 9/4/1998 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | 483,425,097 | - | - | - |
| 9/8/1998 | CHECK WIRE | 18,000,000 | 18,000,000 | - | - | - | 501,425,097 | - | - | - |
| 9/11/1998 | W/H TAX DIV MCD | (3,610) | - | (3,610) | - | - | 501,421,487 | - | - | - |
| 9/30/1998 | W/H TAX DIV PEP | (4,085) | - | (4,085) | - | - | 501,417,402 | - | - | - |
| 9/30/1998 | TRANS FROM 1FN07040 *(1FN070)* | 68,294,974 | - | - | 68,294,974 | - | 569,712,376 | - | - | - |
| 10/8/1998 | CHECK WIRE | (36,000,000) | - | (36,000,000) | - | - | 533,712,376 | - | - | - |
| 10/15/1998 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (11) | - | (11) | - | - | 533,712,365 | - | - | - |
| 11/23/1998 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (4) | - | (4) | - | - | 533,712,361 | - | - | - |
| 11/30/1998 | TRANS TO 1FN07040 *(1FN070)* | (45,133,096) | - | - | - | (45,133,096) | 488,579,266 | - | - | - |
| 12/8/1998 | CHECK WIRE | 20,000,000 | 20,000,000 | - | - | - | 508,579,266 | - | - | - |

MADC1345_00000727

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 Preference Period Initial Transfers | Column 10 Two Year Initial Transfers | Column 11 Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/11/1998 | W/H TAX DIV MCD | (2,590) | - | (2,590) | - | - | 508,576,676 | - | - | - |
| 12/15/1998 | CHECK WIRE | 7,000,000 | 7,000,000 | - | - | - | 515,576,676 | - | - | - |
| 12/15/1998 | W/H TAX DIV KO | (15,273) | - | (15,273) | - | - | 515,561,402 | - | - | - |
| 12/18/1998 | W/H TAX DIV AIG | (2,417) | - | (2,417) | - | - | 515,558,985 | - | - | - |
| 12/22/1998 | FIDELITY SPARTAN US TREASURY MONEY MARKET | (32) | - | (32) | - | - | 515,558,953 | - | - | - |
| 12/23/1998 | W/H TAX DIV BAC | (32,376) | - | (32,376) | - | - | 515,526,577 | - | - | - |
| 12/31/1998 | TRANS FROM 1FN07040 (1FN070) | 6,598,356 | - | - | 6,598,356 | - | 522,124,933 | - | - | - |
| 1/4/1999 | W/H TAX DIV MRK | (27,188) | - | (27,188) | - | - | 522,097,745 | - | - | - |
| 1/4/1999 | W/H TAX DIV PEP | (7,935) | - | (7,935) | - | - | 522,089,810 | - | - | - |
| 1/4/1999 | W/H TAX DIV ONE | (18,226) | - | (18,226) | - | - | 522,071,584 | - | - | - |
| 1/6/1999 | CHECK WIRE | 30,000,000 | 30,000,000 | - | - | - | 552,071,584 | - | - | - |
| 1/11/1999 | W/H TAX DIV WMT | (7,063) | - | (7,063) | - | - | 552,064,521 | - | - | - |
| 1/22/1999 | FIDELITY SPARTAN US TREASURY MONEY MARKET | (7) | - | (7) | - | - | 552,064,514 | - | - | - |
| 1/29/1999 | TRANS TO 1FN07040 (1FN070) | (161,399) | - | - | - | (161,399) | 551,903,115 | - | - | - |
| 1/29/1999 | TRANS FROM 1FN01230 (1FN012) | 20,000 | - | - | 20,000 | - | 551,923,115 | - | - | - |
| 2/11/1999 | CHECK WIRE | 13,000,000 | 13,000,000 | - | - | - | 564,923,115 | - | - | - |
| 2/16/1999 | W/H TAX DIV TXN | (2,535) | - | (2,535) | - | - | 564,920,580 | - | - | - |
| 2/16/1999 | W/H TAX DIV PG | (20,727) | - | (20,727) | - | - | 564,899,853 | - | - | - |
| 2/24/1999 | FIDELITY SPARTAN US TREASURY MONEY MARKET | (21) | - | (21) | - | - | 564,899,832 | - | - | - |
| 2/24/1999 | TRANS FROM 1FN07040 (1FN070) | 10,852,082 | - | - | 10,852,082 | - | 575,751,914 | - | - | - |
| 2/26/1999 | W/H TAX DIV C | (29,954) | - | (29,954) | - | - | 575,721,960 | - | - | - |
| 3/1/1999 | W/H TAX DIV INTC | (4,894) | - | (4,894) | - | - | 575,717,066 | - | - | - |
| 3/1/1999 | W/H TAX DIV F | (40,848) | - | (40,848) | - | - | 575,676,218 | - | - | - |
| 3/1/1999 | W/H TAX DIV WFC | (21,819) | - | (21,819) | - | - | 575,654,399 | - | - | - |
| 3/3/1999 | W/H TAX DIV BA | (9,870) | - | (9,870) | - | - | 575,644,529 | - | - | - |
| 3/4/1999 | FIDELITY SPARTAN US TREASURY MONEY MARKET | (32) | - | (32) | - | - | 575,644,498 | - | - | - |
| 3/8/1999 | TRANS FROM 1FN07040 (1FN070) | 377,252 | - | - | 377,252 | - | 576,021,750 | - | - | - |
| 3/9/1999 | W/H TAX DIV JNJ | (24,234) | - | (24,234) | - | - | 575,997,516 | - | - | - |
| 3/10/1999 | W/H TAX DIV GM | (24,234) | - | (24,234) | - | - | 575,973,283 | - | - | - |
| 3/10/1999 | W/H TAX DIV IBM | (15,654) | - | (15,654) | - | - | 575,957,628 | - | - | - |
| 3/10/1999 | W/H TAX DIV XON | (46,573) | - | (46,573) | - | - | 575,911,055 | - | - | - |
| 3/10/1999 | TRANS TO 1FN07040 (1FN070) | (2,236,948) | - | - | - | (2,236,948) | 573,674,107 | - | - | - |
| 3/11/1999 | CHECK WIRE | 40,000,000 | 40,000,000 | - | - | - | 613,674,107 | - | - | - |
| 3/11/1999 | TRANS FROM 1FN07040 (1FN070) | 2,198,048 | - | - | 2,198,048 | - | 615,872,155 | - | - | - |
| 3/15/1999 | W/H TAX DIV DD | (28,705) | - | (28,705) | - | - | 615,843,450 | - | - | - |
| 3/18/1999 | CHECK WIRE | 5,000,000 | 5,000,000 | - | - | - | 620,843,450 | - | - | - |
| 3/26/1999 | TRANS TO 1FN07040 (1FN070) | (27,692,044) | - | - | - | (27,692,044) | 593,151,407 | - | - | - |
| 3/31/1999 | W/H TAX DIV MCD | (4,570) | - | (4,570) | - | - | 593,146,837 | - | - | - |
| 3/31/1999 | W/H TAX DIV PEP | (13,634) | - | (13,634) | - | - | 593,133,202 | - | - | - |
| 4/1/1999 | W/H TAX DIV KO | (28,204) | - | (28,204) | - | - | 593,104,998 | - | - | - |
| 4/1/1999 | W/H TAX DIV ONE | (35,608) | - | (35,608) | - | - | 593,069,390 | - | - | - |
| 4/9/1999 | CHECK WIRE | (55,000,000) | - | (55,000,000) | - | - | 538,069,390 | - | - | - |
| 4/14/1999 | FIDELITY SPARTAN US TREASURY MONEY MARKET | (24) | - | (24) | - | - | 538,069,366 | - | - | - |
| 4/19/1999 | W/H TAX DIV WMT | (16,289) | - | (16,289) | - | - | 538,053,077 | - | - | - |
| 4/22/1999 | TRANS TO 1FN07040 (1FN070) | (475,508) | - | - | - | (475,508) | 537,577,569 | - | - | - |
| 4/26/1999 | W/H TAX DIV GE | (14,185) | - | (14,185) | - | - | 537,563,384 | - | - | - |
| 4/30/1999 | TRANS TO 1FN07040 (1FN070) | (3,067,262) | - | - | - | (3,067,262) | 534,496,122 | - | - | - |
| 5/5/1999 | FIDELITY SPARTAN US TREASURY MONEY MARKET | (5) | - | (5) | - | - | 534,496,117 | - | - | - |
| 5/7/1999 | TRANS FROM 1FN07040 (1FN070) | 5,553,562 | - | - | 5,553,562 | - | 540,049,679 | - | - | - |
| 5/10/1999 | CHECK WIRE | 45,000,000 | 45,000,000 | - | - | - | 585,049,679 | - | - | - |
| 5/13/1999 | TRANS TO 1FN07040 (1FN070) | (887,603) | - | - | - | (887,603) | 584,162,076 | - | - | - |
| 5/14/1999 | W/H TAX DIV PG | (4,227) | - | (4,227) | - | - | 584,157,850 | - | - | - |
| 5/24/1999 | W/H TAX DIV TXN | (360) | - | (360) | - | - | 584,157,490 | - | - | - |
| 5/25/1999 | CHECK WIRE | 9,000,000 | 9,000,000 | - | - | - | 593,157,490 | - | - | - |
| 5/26/1999 | TRANS FROM 1FN07040 (1FN070) | 4,387,293 | - | - | 4,387,293 | - | 597,544,782 | - | - | - |
| 5/28/1999 | W/H TAX DIV C | (5,339) | - | (5,339) | - | - | 597,539,443 | - | - | - |
| 6/1/1999 | W/H TAX DIV WFC | (11,148) | - | (11,148) | - | - | 597,528,296 | - | - | - |
| 6/1/1999 | W/H TAX DIV LU | (1,130) | - | (1,130) | - | - | 597,527,166 | - | - | - |
| 6/1/1999 | W/H TAX DIV F | (6,172) | - | (6,172) | - | - | 597,520,993 | - | - | - |
| 6/1/1999 | W/H TAX DIV INTC | (3,474) | - | (3,474) | - | - | 597,517,520 | - | - | - |
| 6/4/1999 | W/H TAX DIV BA | (9,106) | - | (9,106) | - | - | 597,508,413 | - | - | - |
| 6/8/1999 | W/H TAX DIV JNJ | (24,934) | - | (24,934) | - | - | 597,483,479 | - | - | - |
| 6/10/1999 | W/H TAX DIV IBM | (7,548) | - | (7,548) | - | - | 597,475,931 | - | - | - |
| 6/10/1999 | W/H TAX DIV XON | (66,946) | - | (66,946) | - | - | 597,408,985 | - | - | - |
| 6/10/1999 | W/H TAX DIV GM | (21,921) | - | (21,921) | - | - | 597,387,064 | - | - | - |
| 6/10/1999 | W/H TAX DIV MOB | (30,227) | - | (30,227) | - | - | 597,356,837 | - | - | - |
| 6/14/1999 | W/H TAX DIV DD | (27,449) | - | (27,449) | - | - | 597,329,388 | - | - | - |
| 6/15/1999 | TRANS FROM 1FN07030 (1FN070) | 10,000,000 | - | - | 10,000,000 | - | 607,329,388 | - | - | - |

MADC1345_00000728

BLMIS ACCOUNT NO. 1FN045 - CTB REM DIRECT TT FBO FAIRFIELD SENTRY LTD

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 Preference Period Initial Transfers | Column 10 Two Year Initial Transfers | Column 11 Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/16/1999 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (44) | - | (44) | - | - | 607,329,344 | - | - | - |
| 6/30/1999 | TRANS TO 1FN07040 (1FN070) | (14,364,776) | - | - | - | (14,364,776) | 592,964,568 | - | - | - |
| 7/12/1999 | W/H TAX DIV WMT | (8,375) | - | (8,375) | - | - | 592,956,193 | - | - | - |
| 7/13/1999 | CHECK WIRE | 12,500,000 | 12,500,000 | - | - | - | 605,456,193 | - | - | - |
| 7/14/1999 | W/H TAX DIV HWP | (6,126) | - | (6,126) | - | - | 605,450,067 | - | - | - |
| 7/21/1999 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (39) | - | (39) | - | - | 605,450,028 | - | - | - |
| 7/26/1999 | W/H TAX DIV GE | (44,386) | - | (44,386) | - | - | 605,405,642 | - | - | - |
| 7/28/1999 | TRANS TO 1FN07040 (1FN070) | (34,926,904) | - | - | - | (34,926,904) | 570,478,738 | - | - | - |
| 7/30/1999 | TRANS TO 1FN07040 (1FN070) | (431,292) | - | - | - | (431,292) | 570,047,446 | - | - | - |
| 8/2/1999 | W/H TAX DIV AIT | (12,915) | - | (12,915) | - | - | 570,034,531 | - | - | - |
| 8/2/1999 | W/H TAX DIV BEL | (23,031) | - | (23,031) | - | - | 570,011,500 | - | - | - |
| 8/2/1999 | W/H TAX DIV BMY | (15,948) | - | (15,948) | - | - | 569,995,552 | - | - | - |
| 8/2/1999 | W/H TAX DIV T | (26,321) | - | (26,321) | - | - | 569,969,231 | - | - | - |
| 8/9/1999 | CHECK WIRE | 13,000,000 | 13,000,000 | - | - | - | 582,969,231 | - | - | - |
| 8/10/1999 | W/H TAX DIV AXP | (3,769) | - | (3,769) | - | - | 582,965,463 | - | - | - |
| 8/16/1999 | W/H TAX DIV TXN | (520) | - | (520) | - | - | 582,964,943 | - | - | - |
| 8/24/1999 | CHECK WIRE | 9,000,000 | 9,000,000 | - | - | - | 591,964,943 | - | - | - |
| 8/24/1999 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (177) | - | (177) | - | - | 591,964,766 | - | - | - |
| 8/27/1999 | W/H TAX DIV C | (7,417) | - | (7,417) | - | - | 591,957,349 | - | - | - |
| 8/30/1999 | TRANS TO 1FN07040 (1FN070) | (8,332,720) | - | - | - | (8,332,720) | 583,624,629 | - | - | - |
| 9/1/1999 | W/H TAX DIV WFC | (5,298) | - | (5,298) | - | - | 583,619,332 | - | - | - |
| 9/1/1999 | W/H TAX DIV F | (8,904) | - | (8,904) | - | - | 583,610,427 | - | - | - |
| 9/1/1999 | W/H TAX DIV INTC | (1,650) | - | (1,650) | - | - | 583,608,777 | - | - | - |
| 9/1/1999 | W/H TAX DIV LU | (978) | - | (978) | - | - | 583,607,799 | - | - | - |
| 9/3/1999 | W/H TAX DIV BA | (2,139) | - | (2,139) | - | - | 583,605,659 | - | - | - |
| 9/7/1999 | W/H TAX DIV JNJ | (12,203) | - | (12,203) | - | - | 583,593,456 | - | - | - |
| 9/10/1999 | W/H TAX DIV XON | (15,873) | - | (15,873) | - | - | 583,577,583 | - | - | - |
| 9/10/1999 | W/H TAX DIV MOB | (6,969) | - | (6,969) | - | - | 583,570,615 | - | - | - |
| 9/10/1999 | W/H TAX DIV IBM | (3,423) | - | (3,423) | - | - | 583,567,191 | - | - | - |
| 9/10/1999 | W/H TAX DIV GM | (5,094) | - | (5,094) | - | - | 583,562,097 | - | - | - |
| 9/13/1999 | W/H TAX DIV MMM | (6,973) | - | (6,973) | - | - | 583,555,124 | - | - | - |
| 9/13/1999 | W/H TAX DIV DD | (6,418) | - | (6,418) | - | - | 583,548,706 | - | - | - |
| 9/15/1999 | W/H TAX DIV MCD | (4,803) | - | (4,803) | - | - | 583,543,902 | - | - | - |
| 9/16/1999 | CHECK WIRE | 9,000,000 | 9,000,000 | - | - | - | 592,543,902 | - | - | - |
| 9/17/1999 | W/H TAX DIV AIG | (5,721) | - | (5,721) | - | - | 592,538,181 | - | - | - |
| 9/24/1999 | W/H TAX DIV BAC | (57,480) | - | (57,480) | - | - | 592,480,702 | - | - | - |
| 9/30/1999 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (27) | - | (27) | - | - | 592,480,675 | - | - | - |
| 9/30/1999 | W/H TAX DIV PEP | (14,568) | - | (14,568) | - | - | 592,466,107 | - | - | - |
| 9/30/1999 | TRANS FROM 1FN07040 (1FN070) | 6,330,788 | - | - | 6,330,788 | - | 598,796,895 | - | - | - |
| 10/1/1999 | W/H TAX DIV MRK | (51,110) | - | (51,110) | - | - | 598,745,784 | - | - | - |
| 10/1/1999 | W/H TAX DIV KO | (29,113) | - | (29,113) | - | - | 598,716,671 | - | - | - |
| 10/1/1999 | W/H TAX DIV ONE | (35,291) | - | (35,291) | - | - | 598,681,380 | - | - | - |
| 10/12/1999 | W/H TAX DIV WMT | (16,321) | - | (16,321) | - | - | 598,665,059 | - | - | - |
| 10/13/1999 | W/H TAX DIV HWP | (12,011) | - | (12,011) | - | - | 598,653,048 | - | - | - |
| 10/18/1999 | TRANS FROM 1FN07040 (1FN070) | 75,458,175 | - | - | 75,458,175 | - | 674,111,223 | - | - | - |
| 10/20/1999 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (7) | - | (7) | - | - | 674,111,216 | - | - | - |
| 10/25/1999 | W/H TAX DIV GE | (84,475) | - | (84,475) | - | - | 674,026,742 | - | - | - |
| 11/1/1999 | W/H TAX DIV BEL | (43,758) | - | (43,758) | - | - | 673,982,984 | - | - | - |
| 11/1/1999 | W/H TAX DIV T | (51,034) | - | (51,034) | - | - | 673,931,950 | - | - | - |
| 11/1/1999 | W/H TAX DIV AIT | (25,323) | - | (25,323) | - | - | 673,906,626 | - | - | - |
| 11/1/1999 | W/H TAX DIV BMY | (31,490) | - | (31,490) | - | - | 673,875,136 | - | - | - |
| 11/2/1999 | CHECK WIRE | 13,000,000 | 13,000,000 | - | - | - | 686,875,136 | - | - | - |
| 11/10/1999 | W/H TAX DIV AXP | (7,389) | - | (7,389) | - | - | 686,867,747 | - | - | - |
| 11/10/1999 | TRANS TO 1FN07040 (1FN070) | (175,338) | - | - | - | (175,338) | 686,692,409 | - | - | - |
| 11/12/1999 | CHECK WIRE | 11,500,000 | 11,500,000 | - | - | - | 698,192,409 | - | - | - |
| 11/17/1999 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (30) | - | (30) | - | - | 698,192,378 | - | - | - |
| 11/18/1999 | TRANS FROM 1FN07040 (1FN070) | 827,544 | - | - | 827,544 | - | 699,019,922 | - | - | - |
| 11/22/1999 | TRANS FROM 1FN07040 (1FN070) | 1,018,419 | - | - | 1,018,419 | - | 700,038,341 | - | - | - |
| 11/29/1999 | TRANS TO 1FN07040 (1FN070) | (30,027,250) | - | - | - | (30,027,250) | 670,011,091 | - | - | - |
| 12/3/1999 | W/H TAX DIV BA | (3,818) | - | (3,818) | - | - | 670,007,273 | - | - | - |
| 12/7/1999 | W/H TAX DIV JNJ | (10,910) | - | (10,910) | - | - | 669,996,363 | - | - | - |
| 12/9/1999 | CHECK WIRE | 20,000,000 | 20,000,000 | - | - | - | 689,996,363 | - | - | - |
| 12/10/1999 | W/H TAX DIV GM | (9,741) | - | (9,741) | - | - | 689,986,622 | - | - | - |
| 12/10/1999 | W/H TAX DIV XON | (31,717) | - | (31,717) | - | - | 689,954,905 | - | - | - |
| 12/10/1999 | W/H TAX DIV IBM | (6,546) | - | (6,546) | - | - | 689,948,359 | - | - | - |
| 12/10/1999 | W/H TAX DIV MOB | (13,326) | - | (13,326) | - | - | 689,935,033 | - | - | - |
| 12/13/1999 | W/H TAX DIV MMM | (16,506) | - | (16,506) | - | - | 689,918,527 | - | - | - |
| 12/14/1999 | W/H TAX DIV DD | (10,228) | - | (10,228) | - | - | 689,908,299 | - | - | - |

MADC1345_00000729

BLMIS ACCOUNT NO. 1FN045 - CITCO GLOBAL CUSTODY NV FBO FAIRFIELD SENTRY LTD

| Column 1<br>Date | Column 2<br>Transaction Description | Column 3<br>Transaction Amount Reported in Customer Statement | Column 4<br>Cash Deposits | Column 5<br>Cash Withdrawals | Column 6<br>Transfers of Principal In | Column 7<br>Transfers of Principal Out | Column 8<br>Balance of Principal | Column 9<br>Preference Period Initial Transfers | Column 10<br>Two Year Initial Transfers | Column 11<br>Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/17/1999 | W/H TAX DIV DIS | (12,274) | - | (12,274) | - | - | 689,896,026 | - | - | - |
| 12/31/1999 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (31) | - | (31) | - | - | 689,895,995 | - | - | - |
| 1/4/2000 | CHECK WIRE | 6,000,000 | 6,000,000 | - | - | - | 695,895,995 | - | - | - |
| 1/11/2000 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (6) | - | (6) | - | - | 695,895,989 | - | - | - |
| 1/25/2000 | TRANS TO 1FN07040 (1FN070) | (14,403,016) | - | - | - | (14,403,016) | 681,492,973 | - | - | - |
| 1/25/2000 | TRANS FROM 1FN01230 (1FN012) | 1,564,379 | - | - | 1,564,379 | - | 683,057,353 | - | - | - |
| 2/1/2000 | W/H TAX DIV BEL | (17,087) | - | (17,087) | - | - | 683,040,266 | - | - | - |
| 2/4/2000 | CHECK WIRE | 11,000,000 | 11,000,000 | - | - | - | 694,040,266 | - | - | - |
| 2/14/2000 | W/H TAX DIV TXN | (2,460) | - | (2,460) | - | - | 694,037,806 | - | - | - |
| 2/15/2000 | CHECK WIRE | 13,000,000 | 13,000,000 | - | - | - | 707,037,806 | - | - | - |
| 2/15/2000 | W/H TAX DIV PG | (30,866) | - | (30,866) | - | - | 707,006,940 | - | - | - |
| 2/24/2000 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (9) | - | (9) | - | - | 707,006,931 | - | - | - |
| 2/25/2000 | W/H TAX DIV C | (39,201) | - | (39,201) | - | - | 706,967,729 | - | - | - |
| 2/25/2000 | TRANS FROM 1FN07040 (1FN070) | 82,774,692 | - | - | 82,774,692 | - | 789,742,421 | - | - | - |
| 3/1/2000 | W/H TAX DIV F | (44,369) | - | (44,369) | - | - | 789,698,052 | - | - | - |
| 3/1/2000 | W/H TAX DIV WFC | (25,890) | - | (25,890) | - | - | 789,672,163 | - | - | - |
| 3/1/2000 | W/H TAX DIV LU | (4,343) | - | (4,343) | - | - | 789,667,820 | - | - | - |
| 3/1/2000 | W/H TAX DIV INTC | (7,266) | - | (7,266) | - | - | 789,660,554 | - | - | - |
| 3/3/2000 | W/H TAX DIV BA | (9,454) | - | (9,454) | - | - | 789,651,100 | - | - | - |
| 3/7/2000 | W/H TAX DIV JNJ | (28,363) | - | (28,363) | - | - | 789,622,736 | - | - | - |
| 3/8/2000 | CHECK WIRE | (20,000,000) | - | (20,000,000) | - | - | 769,622,736 | - | - | - |
| 3/10/2000 | W/H TAX DIV IBM | (15,284) | - | (15,284) | - | - | 769,607,453 | - | - | - |
| 3/10/2000 | W/H TAX DIV XOM | (110,351) | - | (110,351) | - | - | 769,497,102 | - | - | - |
| 3/10/2000 | W/H TAX DIV GM | (23,154) | - | (23,154) | - | - | 769,473,948 | - | - | - |
| 3/10/2000 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (21) | - | (21) | - | - | 769,473,927 | - | - | - |
| 3/14/2000 | W/H TAX DIV DD | (26,669) | - | (26,669) | - | - | 769,447,258 | - | - | - |
| 3/14/2000 | TRANS FROM 1FN07040 (1FN070) | 9,473,827 | - | - | 9,473,827 | - | 778,921,085 | - | - | - |
| 3/23/2000 | W/H TAX DIV HD | (2,284) | - | (2,284) | - | - | 778,918,801 | - | - | - |
| 3/28/2000 | TRANS TO 1FN07040 (1FN070) | (41,062,072) | - | - | - | (41,062,072) | 737,856,729 | - | - | - |
| 3/31/2000 | W/H TAX DIV PEP | (10,043) | - | (10,043) | - | - | 737,846,686 | - | - | - |
| 4/3/2000 | W/H TAX DIV KO | (30,946) | - | (30,946) | - | - | 737,815,740 | - | - | - |
| 4/10/2000 | CHECK WIRE | (20,000,000) | - | (20,000,000) | - | - | 717,815,740 | - | - | - |
| 4/10/2000 | W/H TAX DIV WMT | (19,987) | - | (19,987) | - | - | 717,795,752 | - | - | - |
| 4/20/2000 | TRANS FROM 1FN07040 (1FN070) | 23,687,730 | - | - | 23,687,730 | - | 741,483,482 | - | - | - |
| 4/25/2000 | W/H TAX DIV GE | (34,048) | - | (34,048) | - | - | 741,449,434 | - | - | - |
| 4/28/2000 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (59) | - | (59) | - | - | 741,449,375 | - | - | - |
| 4/28/2000 | W/H TAX DIV MWD | (4,090) | - | (4,090) | - | - | 741,445,285 | - | - | - |
| 5/11/2000 | TRANS FROM 1FN07040 (1FN070) | 19,885,524 | - | - | 19,885,524 | - | 761,330,809 | - | - | - |
| 5/12/2000 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (16) | - | (16) | - | - | 761,330,793 | - | - | - |
| 5/24/2000 | TRANS FROM 1FN07040 (1FN070) | 1,858,970 | - | - | 1,858,970 | - | 763,189,763 | - | - | - |
| 6/1/2000 | W/H TAX DIV WFC | (11,417) | - | (11,417) | - | - | 763,178,346 | - | - | - |
| 6/1/2000 | W/H TAX DIV INTC | (3,114) | - | (3,114) | - | - | 763,175,232 | - | - | - |
| 6/6/2000 | CHECK WIRE | 30,000,000 | 30,000,000 | - | - | - | 793,175,232 | - | - | - |
| 6/12/2000 | W/H TAX DIV DD | (26,275) | - | (26,275) | - | - | 793,148,957 | - | - | - |
| 6/12/2000 | W/H TAX DIV XOM | (111,429) | - | (111,429) | - | - | 793,037,528 | - | - | - |
| 6/12/2000 | W/H TAX DIV GM | (10,153) | - | (10,153) | - | - | 793,027,375 | - | - | - |
| 6/12/2000 | W/H TAX DIV IBM | (7,333) | - | (7,333) | - | - | 793,020,042 | - | - | - |
| 6/13/2000 | W/H TAX DIV JNJ | (17,625) | - | (17,625) | - | - | 793,002,417 | - | - | - |
| 6/19/2000 | TRANS TO 1FN07040 (1FN070) | (2,174,646) | - | - | - | (2,174,646) | 790,827,771 | - | - | - |
| 6/21/2000 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (24) | - | (24) | - | - | 790,827,747 | - | - | - |
| 7/7/2000 | CHECK WIRE | 15,000,000 | 15,000,000 | - | - | - | 805,827,747 | - | - | - |
| 7/7/2000 | CXL CHECK | (15,000,000) | (15,000,000) | - | - | - | 790,827,747 | - | - | - |
| 7/10/2000 | W/H TAX DIV WMT | (5,789) | - | (5,789) | - | - | 790,821,957 | - | - | - |
| 7/18/2000 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (18) | - | (18) | - | - | 790,821,940 | - | - | - |
| 7/31/2000 | TRANS FROM 1FN07040 (1FN070) | 6,258,353 | - | - | 6,258,353 | - | 797,080,293 | - | - | - |
| 8/8/2000 | CHECK WIRE | 20,000,000 | 20,000,000 | - | - | - | 817,080,293 | - | - | - |
| 8/15/2000 | W/H TAX DIV PG | (15,893) | - | (15,893) | - | - | 817,064,400 | - | - | - |
| 8/15/2000 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (37) | - | (37) | - | - | 817,064,362 | - | - | - |
| 8/15/2000 | TRANS FROM 1FN07040 (1FN070) | 322,414 | - | - | 322,414 | - | 817,386,776 | - | - | - |
| 8/21/2000 | W/H TAX DIV TXN | (2,279) | - | (2,279) | - | - | 817,384,496 | - | - | - |
| 8/24/2000 | W/H TAX DIV MER | (8,178) | - | (8,178) | - | - | 817,376,319 | - | - | - |
| 8/25/2000 | W/H TAX DIV C | (41,992) | - | (41,992) | - | - | 817,334,326 | - | - | - |
| 8/28/2000 | CHECK WIRE | 14,000,000 | 14,000,000 | - | - | - | 831,334,326 | - | - | - |
| 9/1/2000 | W/H TAX DIV WFC | (24,183) | - | (24,183) | - | - | 831,310,144 | - | - | - |
| 9/1/2000 | W/H TAX DIV INTC | (9,096) | - | (9,096) | - | - | 831,301,047 | - | - | - |
| 9/1/2000 | W/H TAX DIV LU | (4,649) | - | (4,649) | - | - | 831,296,398 | - | - | - |
| 9/11/2000 | W/H TAX DIV IBM | (15,947) | - | (15,947) | - | - | 831,280,452 | - | - | - |
| 9/11/2000 | W/H TAX DIV XOM | (58,150) | - | (58,150) | - | - | 831,222,302 | - | - | - |

MADC1345_00000730

BLMIS ACCOUNT NO. 1FN045 - CITCO GLOBAL CUSTODY NV FBO FAIRFIELD SENTRY LTD

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Transaction Amount Reported in Customer Statement | | | | | | Preference Period Initial | Two Year Initial | Six Year Initial |
| Date | Transaction Description | | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | Transfers | Transfers | Transfers |
| 9/13/2000 | CHECK WIRE | 26,000,000 | 26,000,000 | - | - | - | 857,222,302 | - | - | - |
| 9/14/2000 | TRANS TO 1FN07040 (1FN070) | (96,815) | - | - | - | (96,815) | 857,125,487 | - | - | - |
| 9/15/2000 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (92) | - | (92) | - | - | 857,125,395 | - | - | - |
| 9/18/2000 | TRANS FROM 1FN07040 (1FN070) | 22,063,234 | - | - | 22,063,234 | - | 879,188,629 | - | - | - |
| 9/29/2000 | TRANS TO 1FN07040 (1FN070) | (10) | - | - | - | (10) | 879,188,619 | - | - | - |
| 10/2/2000 | W/H TAX DIV KO | (17,061) | - | (17,061) | - | - | 879,171,558 | - | - | - |
| 10/10/2000 | CHECK WIRE | 26,000,000 | 26,000,000 | - | - | - | 905,171,558 | - | - | - |
| 10/10/2000 | W/H TAX DIV WMT | (10,926) | - | (10,926) | - | - | 905,160,632 | - | - | - |
| 10/11/2000 | W/H TAX DIV HWP | (11,678) | - | (11,678) | - | - | 905,148,954 | - | - | - |
| 10/16/2000 | TRANS FROM 1FN07040 (1FN070) | 126,650,554 [1] | - | - | 6,586,335 | - | 911,735,289 | - | - | - |
| 10/18/2000 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (15) | - | (15) | - | - | 911,735,274 | - | - | - |
| 10/25/2000 | W/H TAX DIV GE | (99,010) | - | (99,010) | - | - | 911,636,264 | - | - | - |
| 10/27/2000 | W/H TAX DIV MWD | (16,747) | - | (16,747) | - | - | 911,619,517 | - | - | - |
| 10/31/2000 | TRANS TO 1FN07040 (1FN070) | (9,919,992) | - | - | - | (9,919,992) | 901,699,525 | - | - | - |
| 11/1/2000 | W/H TAX DIV VZ | (76,826) | - | (76,826) | - | - | 901,622,700 | - | - | - |
| 11/1/2000 | W/H TAX DIV PHA | (11,230) | - | (11,230) | - | - | 901,611,470 | - | - | - |
| 11/1/2000 | W/H TAX DIV T | (61,273) | - | (61,273) | - | - | 901,550,196 | - | - | - |
| 11/1/2000 | W/H TAX DIV BMY | (35,544) | - | (35,544) | - | - | 901,514,652 | - | - | - |
| 11/10/2000 | W/H TAX DIV AXP | (7,796) | - | (7,796) | - | - | 901,506,856 | - | - | - |
| 11/30/2000 | TRANS FROM 1FN07040 (1FN070) | 444,510 | - | - | 444,510 | - | 901,951,366 | - | - | - |
| 12/12/2000 | W/H TAX DIV JNJ | (7,371) | - | (7,371) | - | - | 901,943,995 | - | - | - |
| 12/18/2000 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (38) | - | (38) | - | - | 901,943,957 | - | - | - |
| 12/29/2000 | TRANS FROM 1FN07040 (1FN070) | 8,653,884 | - | - | 8,653,884 | - | 910,597,841 | - | - | - |
| 1/18/2001 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 910,597,840 | - | - | - |
| 1/30/2001 | W/H TAX DIV MWD | (9,071) | - | (9,071) | - | - | 910,588,769 | - | - | - |
| 1/30/2001 | TRANS FROM 1FN07040 (1FN070) | 2,375,234 [1] | - | - | 821,598 | - | 911,410,366 | - | - | - |
| 2/1/2001 | CHECK WIRE | 11,000,000 | 11,000,000 | - | - | - | 922,410,366 | - | - | - |
| 2/1/2001 | W/H TAX DIV PHA | (5,747) | - | (5,747) | - | - | 922,404,620 | - | - | - |
| 2/1/2001 | W/H TAX DIV VZ | (37,959) | - | (37,959) | - | - | 922,366,661 | - | - | - |
| 2/12/2001 | W/H TAX DIV TXN | (3,195) | - | (3,195) | - | - | 922,363,466 | - | - | - |
| 2/15/2001 | W/H TAX DIV PG | (23,575) | - | (23,575) | - | - | 922,339,891 | - | - | - |
| 2/22/2001 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (12) | - | (12) | - | - | 922,339,879 | - | - | - |
| 2/23/2001 | W/H TAX DIV C | (59,452) | - | (59,452) | - | - | 922,280,428 | - | - | - |
| 2/23/2001 | TRANS FROM 1FN07040 (1FN070) | 44,625,508 [2] | - | - | - | - | 922,280,428 | - | - | - |
| 3/1/2001 | W/H TAX DIV LU | (3,264) | - | (3,264) | - | - | 922,277,164 | - | - | - |
| 3/1/2001 | W/H TAX DIV WFC | (34,106) | - | (34,106) | - | - | 922,243,058 | - | - | - |
| 3/1/2001 | W/H TAX DIV INTC | (11,839) | - | (11,839) | - | - | 922,231,218 | - | - | - |
| 3/8/2001 | W/H TAX DIV PFE | (61,241) | - | (61,241) | - | - | 922,169,978 | - | - | - |
| 3/9/2001 | W/H TAX DIV XOM | (127,446) | - | (127,446) | - | - | 922,042,532 | - | - | - |
| 3/12/2001 | W/H TAX DIV IBM | (20,201) | - | (20,201) | - | - | 922,022,331 | - | - | - |
| 3/13/2001 | W/H TAX DIV JNJ | (16,293) | - | (16,293) | - | - | 922,006,037 | - | - | - |
| 3/19/2001 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (10) | - | (10) | - | - | 922,006,027 | - | - | - |
| 3/22/2001 | W/H TAX DIV HD | (1,704) | - | (1,704) | - | - | 922,004,323 | - | - | - |
| 3/30/2001 | W/H TAX DIV PEP | (3,908) | - | (3,908) | - | - | 922,000,415 | - | - | - |
| 3/30/2001 | TRANS FROM 1FN07030 (1FN070) | 34,941,619 [2] | - | - | - | - | 922,000,415 | - | - | - |
| 4/2/2001 | W/H TAX DIV KO | (8,198) | - | (8,198) | - | - | 921,992,218 | - | - | - |
| 4/2/2001 | W/H TAX DIV MRK | (13,986) | - | (13,986) | - | - | 921,978,232 | - | - | - |
| 4/9/2001 | W/H TAX DIV WMT | (22,301) | - | (22,301) | - | - | 921,955,931 | - | - | - |
| 4/11/2001 | W/H TAX DIV HWP | (11,690) | - | (11,690) | - | - | 921,944,241 | - | - | - |
| 4/24/2001 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (33) | - | (33) | - | - | 921,944,209 | - | - | - |
| 4/25/2001 | TRANS TO 40 ACCT (1FN070) | (79,636,436) | - | - | - | (79,636,436) | 842,307,773 | - | - | - |
| 4/27/2001 | W/H TAX DIV WMT | (18,252) | - | (18,252) | - | - | 842,289,520 | - | - | - |
| 4/30/2001 | W/H TAX DIV JPM | (45,898) | - | (45,898) | - | - | 842,243,623 | - | - | - |
| 5/1/2001 | W/H TAX DIV PHA | (11,173) | - | (11,173) | - | - | 842,232,449 | - | - | - |
| 5/1/2001 | W/H TAX DIV T | (10,124) | - | (10,124) | - | - | 842,222,325 | - | - | - |
| 5/1/2001 | W/H TAX DIV BMY | (38,249) | - | (38,249) | - | - | 842,184,076 | - | - | - |
| 5/1/2001 | W/H TAX DIV VZ | (74,968) | - | (74,968) | - | - | 842,109,108 | - | - | - |
| 5/2/2001 | W/H TAX DIV TYC | (1,600) | - | (1,600) | - | - | 842,107,508 | - | - | - |
| 5/10/2001 | W/H TAX DIV AXP | (7,566) | - | (7,566) | - | - | 842,099,942 | - | - | - |
| 5/15/2001 | W/H TAX DIV PG | (32,589) | - | (32,589) | - | - | 842,067,353 | - | - | - |
| 6/20/2001 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (26) | - | (26) | - | - | 842,067,327 | - | - | - |
| 6/29/2001 | TRANS FROM 1FN07040 (1FN070) | 3,343,654 | - | - | 3,343,654 | - | 845,410,981 | - | - | - |
| 7/9/2001 | W/H TAX DIV WMT | (18,551) | - | (18,551) | - | - | 845,392,430 | - | - | - |
| 7/11/2001 | W/H TAX DIV HWP | (4,025) | - | (4,025) | - | - | 845,388,405 | - | - | - |
| 7/11/2001 | W/H TAX DIV XOM | (1,803) | - | (1,803) | - | - | 845,386,602 | - | - | - |
| 7/23/2001 | W/H TAX DIV MWD | (25,074) | - | (25,074) | - | - | 845,361,528 | - | - | - |
| 7/25/2001 | W/H TAX DIV GE | (152,124) | - | (152,124) | - | - | 845,209,404 | - | - | - |

MADC1345_00000731

BLMIS ACCOUNT NO. 1FN045 - CITCO GLOBAL CUSTODY NV FBO FAIRFIELD SENTRY LTD

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 Preference Period Initial Transfers | Column 10 Two Year Initial Transfers | Column 11 Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 7/25/2001 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 845,209,403 | - | - | - |
| 7/25/2001 | TRANS FROM 1FN07040 *(1FN070)* | 15,298,179 | - | - | 15,298,179 | - | 860,507,582 | - | - | - |
| 7/31/2001 | W/H TAX DIV JPM | (65,172) | - | (65,172) | - | - | 860,442,410 | - | - | - |
| 8/1/2001 | W/H TAX DIV BMY | (50,050) | - | (50,050) | - | - | 860,392,360 | - | - | - |
| 8/1/2001 | W/H TAX DIV TYC | (2,242) | - | (2,242) | - | - | 860,390,118 | - | - | - |
| 8/1/2001 | W/H TAX DIV PHA | (17,019) | - | (17,019) | - | - | 860,373,099 | - | - | - |
| 8/1/2001 | W/H TAX DIV VZ | (99,267) | - | (99,267) | - | - | 860,273,832 | - | - | - |
| 8/10/2001 | W/H TAX DIV AXP | (10,313) | - | (10,313) | - | - | 860,263,519 | - | - | - |
| 8/15/2001 | W/H TAX DIV PG | (21,606) | - | (21,606) | - | - | 860,241,913 | - | - | - |
| 8/24/2001 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (15) | - | (15) | - | - | 860,241,898 | - | - | - |
| 8/31/2001 | TRANS TO 1FN07040 *(1FN070)* | (13,323,140) | - | - | - | (13,323,140) | 846,918,758 | - | - | - |
| 9/13/2001 | W/H TAX DIV HD | (9,762) | - | (9,762) | - | - | 846,908,996 | - | - | - |
| 9/28/2001 | W/H TAX DIV BAC | (93,139) | - | (93,139) | - | - | 846,815,857 | - | - | - |
| 9/28/2001 | W/H TAX DIV PEP | (26,940) | - | (26,940) | - | - | 846,788,917 | - | - | - |
| 9/28/2001 | TRANS FROM 1FN07040 *(1FN070)* | 238,964,272 [1] | - | - | 74,317,743 | - | 921,106,660 | - | - | - |
| 10/1/2001 | W/H TAX DIV KO | (46,403) | - | (46,403) | - | - | 921,060,257 | - | - | - |
| 10/1/2001 | W/H TAX DIV MRK | (84,407) | - | (84,407) | - | - | 920,975,850 | - | - | - |
| 10/9/2001 | W/H TAX DIV WMT | (32,800) | - | (32,800) | - | - | 920,943,050 | - | - | - |
| 10/10/2001 | W/H TAX DIV HWP | (16,424) | - | (16,424) | - | - | 920,926,626 | - | - | - |
| 10/15/2001 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (14) | - | (14) | - | - | 920,926,612 | - | - | - |
| 10/25/2001 | W/H TAX DIV GE | (167,694) | - | (167,694) | - | - | 920,758,918 | - | - | - |
| 10/26/2001 | W/H TAX DIV MWD | (27,439) | - | (27,439) | - | - | 920,731,479 | - | - | - |
| 10/31/2001 | W/H TAX DIV JPM | (70,686) | - | (70,686) | - | - | 920,660,793 | - | - | - |
| 10/31/2001 | TRANS TO 1FN07040 *(1FN070)* | (99,528,972) | - | - | - | (99,528,972) | 821,131,821 | - | - | - |
| 11/1/2001 | W/H TAX DIV VZ | (108,856) | - | (108,856) | - | - | 821,022,965 | - | - | - |
| 11/1/2001 | W/H TAX DIV TYC | (2,566) | - | (2,566) | - | - | 821,020,398 | - | - | - |
| 11/1/2001 | W/H TAX DIV T | (13,624) | - | (13,624) | - | - | 821,006,775 | - | - | - |
| 11/1/2001 | W/H TAX DIV BMY | (56,382) | - | (56,382) | - | - | 820,950,392 | - | - | - |
| 11/1/2001 | W/H TAX DIV PHA | (17,963) | - | (17,963) | - | - | 820,932,430 | - | - | - |
| 11/9/2001 | W/H TAX DIV AXP | (11,102) | - | (11,102) | - | - | 820,921,328 | - | - | - |
| 11/15/2001 | W/H TAX DIV PG | (50,561) | - | (50,561) | - | - | 820,870,767 | - | - | - |
| 11/19/2001 | W/H TAX DIV TXN | (3,949) | - | (3,949) | - | - | 820,866,818 | - | - | - |
| 11/19/2001 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (4) | - | (4) | - | - | 820,866,815 | - | - | - |
| 11/21/2001 | W/H TAX DIV C | (84,740) | - | (84,740) | - | - | 820,782,075 | - | - | - |
| 11/26/2001 | TRANS TO 1FN07040 *(1FN070)* | (81,219,230) | - | - | - | (81,219,230) | 739,562,845 | - | - | - |
| 12/3/2001 | W/H TAX DIV INTC | (14,366) | - | (14,366) | - | - | 739,548,479 | - | - | - |
| 12/3/2001 | W/H TAX DIV WFC | (46,891) | - | (46,891) | - | - | 739,501,588 | - | - | - |
| 12/3/2001 | W/H TAX DIV MCD | (29,313) | - | (29,313) | - | - | 739,472,275 | - | - | - |
| 12/6/2001 | W/H TAX DIV PFE | (47,904) | - | (47,904) | - | - | 739,424,371 | - | - | - |
| 12/10/2001 | W/H TAX DIV XOM | (167,772) | - | (167,772) | - | - | 739,256,599 | - | - | - |
| 12/10/2001 | W/H TAX DIV IBM | (25,613) | - | (25,613) | - | - | 739,230,985 | - | - | - |
| 12/14/2001 | W/H TAX DIV DD | (37,049) | - | (37,049) | - | - | 739,193,936 | - | - | - |
| 12/28/2001 | TRANS FROM 1FN07040 *(1FN070)* | 2,651,946 | - | - | 2,651,946 | - | 741,845,882 | - | - | - |
| 12/31/2001 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (17) | - | (17) | - | - | 741,845,865 | - | - | - |
| 1/7/2002 | W/H TAX DIV WMT | (6,053) | - | (6,053) | - | - | 741,839,812 | - | - | - |
| 1/10/2002 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | 741,839,809 | - | - | - |
| 1/25/2002 | W/H TAX DIV MWD | (19,491) | - | (19,491) | - | - | 741,820,319 | - | - | - |
| 1/31/2002 | TRANS FROM 1FN07040 *(1FN070)* | 40,708,836 | - | - | 40,708,836 | - | 782,529,155 | - | - | - |
| 2/1/2002 | W/H TAX DIV SBC | (65,651) | - | (65,651) | - | - | 782,463,503 | - | - | - |
| 2/1/2002 | W/H TAX DIV VZ | (79,309) | - | (79,309) | - | - | 782,384,194 | - | - | - |
| 2/1/2002 | W/H TAX DIV PHA | (13,200) | - | (13,200) | - | - | 782,370,993 | - | - | - |
| 2/11/2002 | W/H TAX DIV TXN | (3,747) | - | (3,747) | - | - | 782,367,247 | - | - | - |
| 2/15/2002 | W/H TAX DIV PG | (49,689) | - | (49,689) | - | - | 782,317,557 | - | - | - |
| 2/21/2002 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (6) | - | (6) | - | - | 782,317,551 | - | - | - |
| 2/21/2002 | TRANS FROM 1FN07040 *(1FN070)* | 33,292,967 | - | - | 33,292,967 | - | 815,610,518 | - | - | - |
| 2/22/2002 | W/H TAX DIV C | (82,855) | - | (82,855) | - | - | 815,527,663 | - | - | - |
| 2/28/2002 | TRANS TO 1FN07040 *(1FN070)* | (3,425,696) | - | - | - | (3,425,696) | 812,101,967 | - | - | - |
| 3/1/2002 | W/H TAX DIV WFC | (45,330) | - | (45,330) | - | - | 812,056,636 | - | - | - |
| 3/1/2002 | W/H TAX DIV INTC | (13,980) | - | (13,980) | - | - | 812,042,657 | - | - | - |
| 3/6/2002 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 812,042,656 | - | - | - |
| 3/7/2002 | W/H TAX DIV PFE | (83,096) | - | (83,096) | - | - | 811,959,560 | - | - | - |
| 3/11/2002 | W/H TAX DIV XOM | (160,005) | - | (160,005) | - | - | 811,799,556 | - | - | - |
| 3/11/2002 | W/H TAX DIV IBM | (24,409) | - | (24,409) | - | - | 811,775,147 | - | - | - |
| 3/11/2002 | W/H TAX DIV BUD | (17,868) | - | (17,868) | - | - | 811,757,279 | - | - | - |
| 3/12/2002 | W/H TAX DIV JNJ | (34,803) | - | (34,803) | - | - | 811,722,476 | - | - | - |
| 3/14/2002 | W/H TAX DIV DD | (36,613) | - | (36,613) | - | - | 811,685,863 | - | - | - |
| 3/15/2002 | W/H TAX DIV AIG | (5,074) | - | (5,074) | - | - | 811,680,789 | - | - | - |
| 3/22/2002 | W/H TAX DIV BAC | (44,297) | - | (44,297) | - | - | 811,636,492 | - | - | - |

MADC1345_00000732

| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | Preference Period Initial Transfers | Two Year Initial Transfers | Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 3/25/2002 | TRANS TO 1FN07040 *(1FN070)* | (65,122,070) | - | - | - | (65,122,070) | 746,514,422 | - | - | - |
| 3/28/2002 | W/H TAX DIV HD | (12,413) | - | (12,413) | - | - | 746,502,010 | - | - | - |
| 4/1/2002 | W/H TAX DIV PEP | (26,948) | - | (26,948) | - | - | 746,475,061 | - | - | - |
| 4/1/2002 | W/H TAX DIV MRK | (86,405) | - | (86,405) | - | - | 746,388,657 | - | - | - |
| 4/1/2002 | W/H TAX DIV KO | (53,897) | - | (53,897) | - | - | 746,334,760 | - | - | - |
| 4/1/2002 | W/H TAX DIV ONE | (14,532) | - | (14,532) | - | - | 746,320,229 | - | - | - |
| 4/10/2002 | W/H TAX DIV MO | (134,741) | - | (134,741) | - | - | 746,185,487 | - | - | - |
| 4/12/2002 | TRANS FROM 1FN07040 *(1FN070)* | 49,242,954 | - | - | 49,242,954 | - | 795,428,441 | - | - | - |
| 4/18/2002 | W/H TAX DIV WMT | (36,043) | - | (36,043) | - | - | 795,392,399 | - | - | - |
| 4/23/2002 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (7) | - | (7) | - | - | 795,392,391 | - | - | - |
| 4/23/2002 | TRANS FROM 1FN07040 *(1FN070)* | 56,064,462 | - | - | 56,064,462 | - | 851,456,853 | - | - | - |
| 4/25/2002 | W/H TAX DIV GE | (84,324) | - | (84,324) | - | - | 851,372,529 | - | - | - |
| 4/26/2002 | W/H TAX DIV MWD | (27,168) | - | (27,168) | - | - | 851,345,362 | - | - | - |
| 4/26/2002 | W/H TAX DIV MDT | (7,480) | - | (7,480) | - | - | 851,337,881 | - | - | - |
| 4/30/2002 | W/H TAX DIV JPM | (72,667) | - | (72,667) | - | - | 851,265,214 | - | - | - |
| 5/1/2002 | W/H TAX DIV TYC | (2,721) | - | (2,721) | - | - | 851,262,493 | - | - | - |
| 5/1/2002 | W/H TAX DIV PHA | (18,817) | - | (18,817) | - | - | 851,243,676 | - | - | - |
| 5/1/2002 | W/H TAX DIV VZ | (113,467) | - | (113,467) | - | - | 851,130,208 | - | - | - |
| 5/1/2002 | W/H TAX DIV BMY | (58,728) | - | (58,728) | - | - | 851,071,480 | - | - | - |
| 5/1/2002 | W/H TAX DIV T | (14,287) | - | (14,287) | - | - | 851,057,193 | - | - | - |
| 5/1/2002 | W/H TAX DIV SBC | (98,213) | - | (98,213) | - | - | 850,958,980 | - | - | - |
| 5/10/2002 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (8) | - | (8) | - | - | 850,958,972 | - | - | - |
| 5/15/2002 | W/H TAX DIV PG | (27,968) | - | (27,968) | - | - | 850,931,004 | - | - | - |
| 5/24/2002 | W/H TAX DIV C | (55,329) | - | (55,329) | - | - | 850,875,675 | - | - | - |
| 5/29/2002 | TRANS TO 1FN07040 *(1FN070)* | (46,500,011) | - | - | - | (46,500,011) | 804,375,664 | - | - | - |
| 6/3/2002 | W/H TAX DIV INTC | (7,848) | - | (7,848) | - | - | 804,367,816 | - | - | - |
| 6/3/2002 | W/H TAX DIV WFC | (57,170) | - | (57,170) | - | - | 804,310,646 | - | - | - |
| 6/6/2002 | W/H TAX DIV PFE | (99,553) | - | (99,553) | - | - | 804,211,093 | - | - | - |
| 6/10/2002 | W/H TAX DIV BUD | (14,036) | - | (14,036) | - | - | 804,197,057 | - | - | - |
| 6/10/2002 | W/H TAX DIV IBM | (31,808) | - | (31,808) | - | - | 804,165,250 | - | - | - |
| 6/10/2002 | W/H TAX DIV XOM | (190,194) | - | (190,194) | - | - | 803,975,056 | - | - | - |
| 6/11/2002 | W/H TAX DIV JNJ | (27,308) | - | (27,308) | - | - | 803,947,747 | - | - | - |
| 6/12/2002 | W/H TAX DIV DD | (31,697) | - | (31,697) | - | - | 803,916,051 | - | - | - |
| 6/25/2002 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | 803,916,048 | - | - | - |
| 6/28/2002 | TRANS TO 1FN07040 *(1FN070)* | (2,494,588) | - | - | - | (2,494,588) | 801,421,460 | - | - | - |
| 7/10/2002 | W/H TAX DIV MO | (23,047) | - | (23,047) | - | - | 801,398,412 | - | - | - |
| 7/15/2002 | W/H TAX DIV USB | (7,426) | - | (7,426) | - | - | 801,390,987 | - | - | - |
| 7/17/2002 | TRANS FROM 1FN07040 *(1FN070)* | 22,672,052 | - | - | 22,672,052 | - | 824,063,039 | - | - | - |
| 7/19/2002 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (4) | - | (4) | - | - | 824,063,034 | - | - | - |
| 7/25/2002 | W/H TAX DIV GE | (35,465) | - | (35,465) | - | - | 824,027,569 | - | - | - |
| 7/26/2002 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 824,027,569 | - | - | - |
| 7/26/2002 | W/H TAX DIV MDT | (1,449) | - | (1,449) | - | - | 824,026,120 | - | - | - |
| 7/26/2002 | W/H TAX DIV MWD | (4,951) | - | (4,951) | - | - | 824,021,170 | - | - | - |
| 7/31/2002 | W/H TAX DIV JPM | (13,511) | - | (13,511) | - | - | 824,007,659 | - | - | - |
| 7/31/2002 | TRANS TO 1FN07040 *(1FN070)* | (11,434,184) | - | - | - | (11,434,184) | 812,573,475 | - | - | - |
| 8/1/2002 | W/H TAX DIV BMY | (10,663) | - | (10,663) | - | - | 812,562,812 | - | - | - |
| 8/1/2002 | W/H TAX DIV SBC | (17,435) | - | (17,435) | - | - | 812,545,378 | - | - | - |
| 8/1/2002 | W/H TAX DIV PHA | (3,353) | - | (3,353) | - | - | 812,542,025 | - | - | - |
| 8/1/2002 | W/H TAX DIV T | (2,794) | - | (2,794) | - | - | 812,539,231 | - | - | - |
| 8/1/2002 | W/H TAX DIV VZ | (20,398) | - | (20,398) | - | - | 812,518,833 | - | - | - |
| 8/9/2002 | W/H TAX DIV AXP | (1,987) | - | (1,987) | - | - | 812,516,846 | - | - | - |
| 8/19/2002 | W/H TAX DIV MON | (2) | - | (2) | - | - | 812,516,844 | - | - | - |
| 8/19/2002 | W/H TAX DIV TXN | (5,646) | - | (5,646) | - | - | 812,511,198 | - | - | - |
| 8/21/2002 | TRANS TO 1FN07040 *(1FN070)* | (217,941,363) | - | - | - | (217,941,363) | 594,569,835 | - | - | - |
| 8/23/2002 | W/H TAX DIV C | (147,150) | - | (147,150) | - | - | 594,422,684 | - | - | - |
| 8/26/2002 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 594,422,683 | - | - | - |
| 9/3/2002 | W/H TAX DIV INTC | (20,695) | - | (20,695) | - | - | 594,401,988 | - | - | - |
| 9/3/2002 | W/H TAX DIV WFC | (74,394) | - | (74,394) | - | - | 594,327,594 | - | - | - |
| 9/5/2002 | W/H TAX DIV G | (25,905) | - | (25,905) | - | - | 594,301,689 | - | - | - |
| 9/5/2002 | W/H TAX DIV PFE | (126,715) | - | (126,715) | - | - | 594,174,974 | - | - | - |
| 9/6/2002 | W/H TAX DIV BA | (21,764) | - | (21,764) | - | - | 594,153,210 | - | - | - |
| 9/9/2002 | W/H TAX DIV BUD | (25,905) | - | (25,905) | - | - | 594,127,305 | - | - | - |
| 9/10/2002 | W/H TAX DIV IBM | (39,130) | - | (39,130) | - | - | 594,088,175 | - | - | - |
| 9/10/2002 | W/H TAX DIV XOM | (239,435) | - | (239,435) | - | - | 593,848,740 | - | - | - |
| 9/10/2002 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (7) | - | (7) | - | - | 593,848,732 | - | - | - |
| 9/10/2002 | W/H TAX DIV JNJ | (30,929) | - | (30,929) | - | - | 593,817,803 | - | - | - |
| 9/12/2002 | W/H TAX DIV DD | (52,881) | - | (52,881) | - | - | 593,764,923 | - | - | - |
| 10/17/2002 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (29) | - | (29) | - | - | 593,764,894 | - | - | - |

MADC1345_00000733

BLMIS ACCOUNT NO. 1FN045 - CITCO GLOBAL CUSTODY NV FBO FAIRFIELD SENTRY LTD

| Column 1<br>Date | Column 2<br>Transaction<br>Description | Column 3<br>Transaction Amount<br>Reported in<br>Customer Statement | Column 4<br>Cash<br>Deposits | Column 5<br>Cash<br>Withdrawals | Column 6<br>Transfers of<br>Principal In | Column 7<br>Transfers of<br>Principal Out | Column 8<br>Balance of<br>Principal | Column 9<br>Preference<br>Period Initial<br>Transfers | Column 10<br>Two Year<br>Initial<br>Transfers | Column 11<br>Six Year<br>Initial<br>Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 10/29/2002 | TRANS TO 1FN07040 (1FN070) | (38,357,496) | - | - | - | (38,357,496) | 555,407,398 | - | - | - |
| 11/15/2002 | W/H TAX DIV PG | (30,578) | - | (30,578) | - | - | 555,376,820 | - | - | - |
| 11/15/2002 | W/H TAX DIV CL | (8,814) | - | (8,814) | - | - | 555,368,007 | - | - | - |
| 11/18/2002 | W/H TAX DIV TXN | (3,128) | - | (3,128) | - | - | 555,364,878 | - | - | - |
| 11/18/2002 | TRANS TO 1FN07040 (1FN070) | (11,130,830) | - | - | - | (11,130,830) | 544,234,048 | - | - | - |
| 11/22/2002 | W/H TAX DIV C | (77,975) | - | (77,975) | - | - | 544,156,073 | - | - | - |
| 11/25/2002 | W/H TAX DIV GS | (4,897) | - | (4,897) | - | - | 544,151,177 | - | - | - |
| 11/27/2002 | W/H TAX DIV MER | (12,205) | - | (12,205) | - | - | 544,138,972 | - | - | - |
| 1/6/2003 | W/H TAX DIV JNJ | (14,300) | - | (14,300) | - | - | 544,124,672 | - | - | (14,300) |
| 1/6/2003 | W/H TAX DIV DD | (21,684) | - | (21,684) | - | - | 544,102,987 | - | - | (21,684) |
| 1/6/2003 | W/H TAX DIV IBM | (22,083) | - | (22,083) | - | - | 544,080,904 | - | - | (22,083) |
| 1/6/2003 | W/H TAX DIV WFC | (41,833) | - | (41,833) | - | - | 544,039,071 | - | - | (41,833) |
| 1/6/2003 | W/H TAX DIV UTX | (7,098) | - | (7,098) | - | - | 544,031,973 | - | - | (7,098) |
| 1/6/2003 | W/H TAX DIV INTC | (11,652) | - | (11,652) | - | - | 544,020,321 | - | - | (11,652) |
| 1/6/2003 | W/H TAX DIV HCA | (979) | - | (979) | - | - | 544,019,342 | - | - | (979) |
| 1/6/2003 | W/H TAX DIV G | (14,995) | - | (14,995) | - | - | 544,004,346 | - | - | (14,995) |
| 1/6/2003 | W/H TAX DIV BA | (8,865) | - | (8,865) | - | - | 543,995,481 | - | - | (8,865) |
| 1/6/2003 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (46) | - | (46) | - | - | 543,995,435 | - | - | (46) |
| 1/6/2003 | W/H TAX DIV PFE | (49,716) | - | (49,716) | - | - | 543,945,719 | - | - | (49,716) |
| 1/6/2003 | W/H TAX DIV BUD | (14,812) | - | (14,812) | - | - | 543,930,908 | - | - | (14,812) |
| 1/6/2003 | W/H TAX DIV XOM | (135,070) | - | (135,070) | - | - | 543,795,838 | - | - | (135,070) |
| 1/10/2003 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | 543,795,835 | - | - | (3) |
| 1/22/2003 | TRANS FROM 1FN07040 (1FN070) | 16,339,217 | - | - | 16,339,217 | - | 560,135,052 | - | - | - |
| 1/31/2003 | W/H TAX DIV MWD | (18,977) | - | (18,977) | - | - | 560,116,075 | - | - | (18,977) |
| 2/3/2003 | W/H TAX DIV PHA | (23,786) | - | (23,786) | - | - | 560,092,289 | - | - | (23,786) |
| 2/3/2003 | W/H TAX DIV SBC | (68,695) | - | (68,695) | - | - | 560,023,594 | - | - | (68,695) |
| 2/3/2003 | W/H TAX DIV VZ | (80,743) | - | (80,743) | - | - | 559,942,851 | - | - | (80,743) |
| 2/10/2003 | W/H TAX DIV TXN | (4,994) | - | (4,994) | - | - | 559,937,856 | - | - | (4,994) |
| 2/14/2003 | W/H TAX DIV PFE | (126,361) | - | (126,361) | - | - | 559,811,496 | - | - | (126,361) |
| 2/14/2003 | W/H TAX DIV CL | (13,554) | - | (13,554) | - | - | 559,797,942 | - | - | (13,554) |
| 2/14/2003 | W/H TAX DIV PG | (72,239) | - | (72,239) | - | - | 559,725,702 | - | - | (72,239) |
| 2/24/2003 | TRANS FROM 1FN07040 (1FN070) | 110,293,149 | - | - | 110,293,149 | - | 670,018,851 | - | - | - |
| 2/27/2003 | W/H TAX DIV GS | (7,530) | - | (7,530) | - | - | 670,011,321 | - | - | (7,530) |
| 2/28/2003 | W/H TAX DIV MER | (18,624) | - | (18,624) | - | - | 669,992,697 | - | - | (18,624) |
| 2/28/2003 | W/H TAX DIV C | (141,645) | - | (141,645) | - | - | 669,851,052 | - | - | (141,645) |
| 3/3/2003 | W/H TAX DIV WFC | (69,794) | - | (69,794) | - | - | 669,781,259 | - | - | (69,794) |
| 3/3/2003 | W/H TAX DIV INTC | (18,237) | - | (18,237) | - | - | 669,763,021 | - | - | (18,237) |
| 3/5/2003 | W/H 1/31/03G | (23,422) | - | (23,422) | - | - | 669,739,599 | - | - | (23,422) |
| 3/7/2003 | W/H TAX DIV BA | (19,201) | - | (19,201) | - | - | 669,720,398 | - | - | (19,201) |
| 3/7/2003 | W/H TAX DIV MSFT | (91,857) | - | (91,857) | - | - | 669,628,540 | - | - | (91,857) |
| 3/10/2003 | W/H TAX DIV XOM | (211,925) | - | (211,925) | - | - | 669,416,616 | - | - | (211,925) |
| 3/10/2003 | W/H TAX DIV UTX | (15,374) | - | (15,374) | - | - | 669,401,242 | - | - | (15,374) |
| 3/10/2003 | W/H TAX DIV BUD | (22,089) | - | (22,089) | - | - | 669,379,153 | - | - | (22,089) |
| 3/10/2003 | W/H TAX DIV IBM | (34,497) | - | (34,497) | - | - | 669,344,655 | - | - | (34,497) |
| 3/11/2003 | W/H TAX DIV JNJ | (83,105) | - | (83,105) | - | - | 669,261,550 | - | - | (83,105) |
| 3/12/2003 | W/H TAX DIV MMM | (25,928) | - | (25,928) | - | - | 669,235,623 | - | - | (25,928) |
| 3/14/2003 | W/H TAX DIV DD | (48,456) | - | (48,456) | - | - | 669,187,167 | - | - | (48,456) |
| 3/17/2003 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (19) | - | (19) | - | - | 669,187,148 | - | - | (19) |
| 3/18/2003 | TRANS FROM 1FN07040 (1FN070) | 1,804,150 | - | - | 1,804,150 | - | 670,991,298 | - | - | - |
| 3/24/2003 | TRANS TO 1FN07040 (1FN070) | (146,512,229) | - | - | - | (146,512,229) | 524,479,069 | - | - | - |
| 4/7/2003 | W/H TAX DIV WMT | (60,863) | - | (60,863) | - | - | 524,418,206 | - | - | (60,863) |
| 4/9/2003 | W/H TAX DIV HPQ | (38,379) | - | (38,379) | - | - | 524,379,827 | - | - | (38,379) |
| 4/15/2003 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (19) | - | (19) | - | - | 524,379,809 | - | - | (19) |
| 5/9/2003 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (17) | - | (17) | - | - | 524,379,791 | - | - | (17) |
| 5/9/2003 | TRANS TO 1FN07040 (1FN070) | (2,963,200) | - | - | - | (2,963,200) | 521,416,591 | - | - | - |
| 5/19/2003 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (7) | - | (7) | - | - | 521,416,584 | - | - | (7) |
| 5/21/2003 | TRANS TO 1FN07040 (1FN070) | (12,173,621) | - | - | - | (12,173,621) | 509,242,963 | - | - | - |
| 5/28/2003 | W/H TAX DIV MER | (14,993) | - | (14,993) | - | - | 509,227,970 | - | - | (14,993) |
| 5/30/2003 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 509,227,969 | - | - | (1) |
| 5/30/2003 | TRANS TO 1FN07040 (1FN070) | (3,055,702) | - | - | - | (3,055,702) | 506,172,267 | - | - | - |
| 6/2/2003 | W/H TAX DIV WFC | (56,222) | - | (56,222) | - | - | 506,116,045 | - | - | (56,222) |
| 6/2/2003 | W/H TAX DIV INTC | (8,113) | - | (8,113) | - | - | 506,107,932 | - | - | (8,113) |
| 6/5/2003 | W/H TAX DIV PFE | (134,610) | - | (134,610) | - | - | 505,973,322 | - | - | (134,610) |
| 6/9/2003 | W/H TAX DIV BUD | (18,272) | - | (18,272) | - | - | 505,955,050 | - | - | (18,272) |
| 6/10/2003 | W/H TAX DIV IBM | (29,985) | - | (29,985) | - | - | 505,925,064 | - | - | (29,985) |
| 6/10/2003 | W/H TAX DIV XOM | (188,601) | - | (188,601) | - | - | 505,736,463 | - | - | (188,601) |
| 6/10/2003 | W/H TAX DIV JNJ | (79,960) | - | (79,960) | - | - | 505,656,503 | - | - | (79,960) |
| 6/10/2003 | W/H TAX DIV UTX | (14,056) | - | (14,056) | - | - | 505,642,447 | - | - | (14,056) |

MADC1345_00000734

**BLMIS ACCOUNT NO. 1FN045 - CTR SPECIAL ACCT FBO FAIRFIELD SENTRY LTD**

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Transaction Amount Reported in | | | | | | Preference | Two Year | Six Year |
| | Transaction | Reported in | Cash | Cash | Transfers of | Transfers of | Balance of | Period Initial | Initial | Initial |
| Date | Description | Customer Statement | Deposits | Withdrawals | Principal In | Principal Out | Principal | Transfers | Transfers | Transfers |
| 6/12/2003 | W/H TAX DIV DD | (40,084) | - | (40,084) | - | - | 505,602,363 | - | - | (40,084) |
| 6/12/2003 | W/H TAX DIV MMM | (27,486) | - | (27,486) | - | - | 505,574,877 | - | - | (27,486) |
| 6/19/2003 | TRANS TO 1FN07040 (1FN070) | (53,945,624) | - | - | - | (53,945,624) | 451,629,253 | - | - | - |
| 6/20/2003 | W/H TAX DIV AIG | (16,867) | - | (16,867) | - | - | 451,612,386 | - | - | (16,867) |
| 6/20/2003 | TRANS TO 1FN07040 (1FN070) | (15,725,146) | - | - | - | (15,725,146) | 435,887,240 | - | - | - |
| 6/24/2003 | TRANS TO 1FN07040 (1FN070) | (19,679,159) | - | - | - | (19,679,159) | 416,208,081 | - | - | - |
| 6/25/2003 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (14) | - | (14) | - | - | 416,208,067 | - | - | (14) |
| 6/26/2003 | W/H TAX DIV HD | (19,267) | - | (19,267) | - | - | 416,188,800 | - | - | (19,267) |
| 6/27/2003 | W/H TAX DIV BAC | (131,639) | - | (131,639) | - | - | 416,057,162 | - | - | (131,639) |
| 6/30/2003 | W/H TAX DIV PEP | (38,072) | - | (38,072) | - | - | 416,019,090 | - | - | (38,072) |
| 7/1/2003 | W/H TAX DIV ONE | (34,114) | - | (34,114) | - | - | 415,984,976 | - | - | (34,114) |
| 7/1/2003 | W/H TAX DIV KO | (75,704) | - | (75,704) | - | - | 415,909,273 | - | - | (75,704) |
| 7/1/2003 | W/H TAX DIV MRK | (110,288) | - | (110,288) | - | - | 415,798,985 | - | - | (110,288) |
| 7/1/2003 | W/H TAX DIV ALL | (19,157) | - | (19,157) | - | - | 415,779,827 | - | - | (19,157) |
| 7/3/2003 | W/H TAX DIV SLB | (11,713) | - | (11,713) | - | - | 415,768,114 | - | - | (11,713) |
| 7/7/2003 | W/H TAX DIV WMT | (25,526) | - | (25,526) | - | - | 415,742,588 | - | - | (25,526) |
| 7/8/2003 | W/H TAX DIV MO | (182,639) | - | (182,639) | - | - | 415,559,949 | - | - | (182,639) |
| 7/9/2003 | W/H TAX DIV HPQ | (33,743) | - | (33,743) | - | - | 415,526,207 | - | - | (33,743) |
| 7/10/2003 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 415,526,206 | - | - | (0) |
| 7/10/2003 | TRANS FROM 1FN07040 (1FN070) | 1,026,368 | - | - | 1,026,368 | - | 416,552,574 | - | - | - |
| 7/15/2003 | TRANS FROM 1FN07040 (1FN070) | 13,037,548 | - | - | 13,037,548 | - | 429,590,122 | - | - | - |
| 7/21/2003 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 429,590,121 | - | - | (2) |
| 7/21/2003 | TRANS TO 1FN07040 (1FN070) | (15,458,963) | - | - | - | (15,458,963) | 414,131,158 | - | - | - |
| 7/31/2003 | W/H TAX DIV MWD | (32,487) | - | (32,487) | - | - | 414,098,670 | - | - | (32,487) |
| 8/1/2003 | W/H TAX DIV SBC | (162,084) | - | (162,084) | - | - | 413,936,587 | - | - | (162,084) |
| 8/1/2003 | W/H TAX DIV VZ | (135,953) | - | (135,953) | - | - | 413,800,634 | - | - | (135,953) |
| 8/15/2003 | W/H TAX DIV PG | (74,980) | - | (74,980) | - | - | 413,725,654 | - | - | (74,980) |
| 8/15/2003 | W/H TAX DIV CL | (16,950) | - | (16,950) | - | - | 413,708,704 | - | - | (16,950) |
| 8/15/2003 | TRANS FROM 1FN07040 (1FN070) | 24,602,658 | - | - | 24,602,658 | - | 438,311,362 | - | - | - |
| 8/18/2003 | W/H TAX DIV TXN | (4,679) | - | (4,679) | - | - | 438,306,683 | - | - | (4,679) |
| 8/22/2003 | W/H TAX DIV C | (232,063) | - | (232,063) | - | - | 438,074,620 | - | - | (232,063) |
| 8/27/2003 | W/H TAX DIV MER | (18,833) | - | (18,833) | - | - | 438,055,787 | - | - | (18,833) |
| 8/28/2003 | W/H TAX DIV GS | (14,714) | - | (14,714) | - | - | 438,041,073 | - | - | (14,714) |
| 9/2/2003 | W/H TAX DIV WFC | (95,343) | - | (95,343) | - | - | 437,945,730 | - | - | (95,343) |
| 9/2/2003 | W/H TAX DIV INTC | (16,780) | - | (16,780) | - | - | 437,928,950 | - | - | (16,780) |
| 9/4/2003 | W/H TAX DIV PFE | (93,556) | - | (93,556) | - | - | 437,835,393 | - | - | (93,556) |
| 9/5/2003 | W/H TAX DIV BA | (11,166) | - | (11,166) | - | - | 437,824,228 | - | - | (11,166) |
| 9/5/2003 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (12) | - | (12) | - | - | 437,824,216 | - | - | (12) |
| 9/5/2003 | W/H TAX DIV G | (21,040) | - | (21,040) | - | - | 437,803,176 | - | - | (21,040) |
| 9/5/2003 | TRANS TO 1FN07040 (1FN070) | (6,521,444) | - | - | - | (6,521,444) | 431,281,732 | - | - | - |
| 9/9/2003 | W/H TAX DIV BUD | (23,306) | - | (23,306) | - | - | 431,258,425 | - | - | (23,306) |
| 9/10/2003 | W/H TAX DIV IBM | (35,783) | - | (35,783) | - | - | 431,222,642 | - | - | (35,783) |
| 9/10/2003 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 431,222,642 | - | - | (1) |
| 9/10/2003 | W/H TAX DIV XOM | (214,103) | - | (214,103) | - | - | 431,008,538 | - | - | (214,103) |
| 9/10/2003 | TRANS TO 1FN07040 (1FN070) | (656,568) | - | - | - | (656,568) | 430,351,970 | - | - | - |
| 9/12/2003 | W/H TAX DIV DD | (28,097) | - | (28,097) | - | - | 430,323,873 | - | - | (28,097) |
| 9/19/2003 | W/H TAX DIV AIG | (7,335) | - | (7,335) | - | - | 430,316,539 | - | - | (7,335) |
| 9/22/2003 | TRANS TO 1FN07040 (1FN070) | (4,418,719) | - | - | - | (4,418,719) | 425,897,820 | - | - | - |
| 9/23/2003 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (34) | - | (34) | - | - | 425,897,785 | - | - | (34) |
| 9/26/2003 | W/H TAX DIV BAC | (52,918) | - | (52,918) | - | - | 425,844,868 | - | - | (52,918) |
| 9/30/2003 | W/H TAX DIV PEP | (28,647) | - | (28,647) | - | - | 425,816,221 | - | - | (28,647) |
| 10/1/2003 | W/H TAX DIV KO | (56,830) | - | (56,830) | - | - | 425,759,390 | - | - | (56,830) |
| 10/1/2003 | W/H TAX DIV ONE | (30,626) | - | (30,626) | - | - | 425,728,765 | - | - | (30,626) |
| 10/1/2003 | W/H TAX DIV MRK | (35,992) | - | (35,992) | - | - | 425,692,773 | - | - | (35,992) |
| 10/1/2003 | W/H TAX DIV VIA.B | (8,320) | - | (8,320) | - | - | 425,684,453 | - | - | (8,320) |
| 10/6/2003 | TRANS TO 1FN07040 (1FN070) | (2,165,848) | - | - | - | (2,165,848) | 423,518,605 | - | - | - |
| 10/8/2003 | W/H TAX DIV HPQ | (25,631) | - | (25,631) | - | - | 423,492,974 | - | - | (25,631) |
| 10/9/2003 | W/H TAX DIV MO | (147,380) | - | (147,380) | - | - | 423,345,594 | - | - | (147,380) |
| 10/10/2003 | TRANS TO 1FN07040 (1FN070) | (3,315,060) | - | - | - | (3,315,060) | 420,030,534 | - | - | - |
| 10/14/2003 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (8) | - | (8) | - | - | 420,030,525 | - | - | (8) |
| 10/14/2003 | TRANS TO 1FN07040 (1FN070) | (689,468) | - | - | - | (689,468) | 419,341,057 | - | - | - |
| 10/17/2003 | TRANS FROM 1FN07040 (1FN070) | 320,558 | - | - | 320,558 | - | 419,661,615 | - | - | - |
| 10/23/2003 | CHECK WIRE | 20,000,000 | 20,000,000 | - | - | - | 439,661,615 | - | - | - |
| 10/31/2003 | W/H TAX DIV MWD | (22,691) | - | (22,691) | - | - | 439,638,925 | - | - | (22,691) |
| 11/3/2003 | W/H TAX DIV SBC | (85,932) | - | (85,932) | - | - | 439,552,993 | - | - | (85,932) |
| 11/3/2003 | W/H TAX DIV SBC | (30,418) | - | (30,418) | - | - | 439,522,574 | - | - | (30,418) |
| 11/3/2003 | W/H TAX DIV VZ | (98,120) | - | (98,120) | - | - | 439,424,454 | - | - | (98,120) |
| 11/7/2003 | W/H TAX DIV MSFT | (236,223) | - | (236,223) | - | - | 439,188,231 | - | - | (236,223) |

MADC1345_00000735

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 Preference Period Initial Transfers | Column 10 Two Year Initial Transfers | Column 11 Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/14/2003 | CHECK WIRE | 50,000,000 | 50,000,000 | - | - | - | 489,188,231 | | | |
| 11/14/2003 | W/H TAX DIV PG | (79,503) | - | (79,503) | - | - | 489,108,728 | - | - | (79,503) |
| 11/17/2003 | W/H TAX DIV TXN | (5,100) | - | (5,100) | - | - | 489,103,628 | - | - | (5,100) |
| 11/18/2003 | TRANS FROM 1FN07040 *(1FN070)* | 7,743,456 | - | - | 7,743,456 | - | 496,847,084 | - | - | - |
| 11/19/2003 | TRANS FROM 1FN07040 *(1FN070)* | 5,415,948 | - | - | 5,415,948 | - | 502,263,032 | - | - | - |
| 11/20/2003 | TRANS FROM 1FN07040 *(1FN070)* | 4,951,866 | - | - | 4,951,866 | - | 507,214,898 | - | - | - |
| 11/21/2003 | TRANS FROM 1FN07040 *(1FN070)* | 4,640,754 | - | - | 4,640,754 | - | 511,855,652 | - | - | - |
| 11/24/2003 | W/H TAX DIV GS | (15,249) | - | (15,249) | - | - | 511,840,404 | - | - | (15,249) |
| 11/25/2003 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (22) | - | (22) | - | - | 511,840,382 | - | - | (22) |
| 11/26/2003 | W/H TAX DIV C | (246,142) | - | (246,142) | - | - | 511,594,240 | - | - | (246,142) |
| 11/26/2003 | W/H TAX DIV MER | (20,834) | - | (20,834) | - | - | 511,573,407 | - | - | (20,834) |
| 12/1/2003 | W/H TAX DIV MCD | (68,314) | - | (68,314) | - | - | 511,505,093 | - | - | (68,314) |
| 12/1/2003 | W/H TAX DIV WFC | (104,301) | - | (104,301) | - | - | 511,400,792 | - | - | (104,301) |
| 12/1/2003 | W/H TAX DIV INTC | (18,152) | - | (18,152) | - | - | 511,382,640 | - | - | (18,152) |
| 12/4/2003 | W/H TAX DIV PFE | (158,554) | - | (158,554) | - | - | 511,224,086 | - | - | (158,554) |
| 12/5/2003 | W/H TAX DIV G | (21,806) | - | (21,806) | - | - | 511,202,280 | - | - | (21,806) |
| 12/9/2003 | W/H TAX DIV JNJ | (96,615) | - | (96,615) | - | - | 511,105,665 | - | - | (96,615) |
| 12/9/2003 | W/H TAX DIV BUD | (24,154) | - | (24,154) | - | - | 511,081,511 | - | - | (24,154) |
| 12/10/2003 | W/H TAX DIV UTX | (21,348) | - | (21,348) | - | - | 511,060,163 | - | - | (21,348) |
| 12/10/2003 | W/H TAX DIV XOM | (226,666) | - | (226,666) | - | - | 510,833,497 | - | - | (226,666) |
| 12/10/2003 | W/H TAX DIV IBM | (37,085) | - | (37,085) | - | - | 510,796,412 | - | - | (37,085) |
| 12/12/2003 | W/H TAX DIV MMM | (19,249) | - | (19,249) | - | - | 510,777,163 | - | - | (19,249) |
| 12/12/2003 | TRANS FROM 1FN07040 *(1FN070)* | 345,382 | - | - | 345,382 | - | 511,122,545 | - | - | - |
| 12/15/2003 | W/H TAX DIV DD | (46,966) | - | (46,966) | - | - | 511,075,579 | - | - | (46,966) |
| 12/16/2003 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (6) | - | (6) | - | - | 511,075,573 | - | - | (6) |
| 12/22/2003 | TRANS TO 1FN07040 *(1FN070)* | (8,462,329) | - | - | - | (8,462,329) | 502,613,244 | - | - | - |
| 12/31/2003 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 502,613,242 | - | - | (2) |
| 1/2/2004 | W/H TAX DIV PEP | (8,289) | - | (8,289) | - | - | 502,604,953 | - | - | (8,289) |
| 1/2/2004 | W/H TAX DIV ONE | (8,180) | - | (8,180) | - | - | 502,596,773 | - | - | (8,180) |
| 1/5/2004 | W/H TAX DIV WMT | (11,779) | - | (11,779) | - | - | 502,584,994 | - | - | (11,779) |
| 1/6/2004 | W/H TAX DIV DIS | (13,170) | - | (13,170) | - | - | 502,571,824 | - | - | (13,170) |
| 1/7/2004 | W/H TAX DIV HPQ | (7,417) | - | (7,417) | - | - | 502,564,407 | - | - | (7,417) |
| 1/8/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 502,564,406 | - | - | (1) |
| 1/8/2004 | TRANS TO 1FN07040 *(1FN070)* | (931,922) | - | - | - | (931,922) | 501,632,484 | - | - | - |
| 1/9/2004 | W/H TAX DIV MO | (42,646) | - | (42,646) | - | - | 501,589,838 | - | - | (42,646) |
| 1/9/2004 | TRANS TO 1FN07040 *(1FN070)* | (2,256,254) | - | - | - | (2,256,254) | 499,333,584 | - | - | - |
| 1/15/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 499,333,583 | - | - | (1) |
| 1/15/2004 | TRANS TO 1FN07040 *(1FN070)* | (645,372) | - | - | - | (645,372) | 498,688,211 | - | - | - |
| 1/22/2004 | TRANS TO 1FN07040 *(1FN070)* | (11,243,827) | - | - | - | (11,243,827) | 487,444,384 | - | - | - |
| 1/30/2004 | W/H TAX DIV MWD | (13,528) | - | (13,528) | - | - | 487,430,856 | - | - | (13,528) |
| 2/2/2004 | W/H TAX DIV VZ | (53,819) | - | (53,819) | - | - | 487,377,038 | - | - | (53,819) |
| 2/2/2004 | W/H TAX DIV SBC | (52,139) | - | (52,139) | - | - | 487,324,899 | - | - | (52,139) |
| 2/17/2004 | W/H TAX DIV PG | (81,570) | - | (81,570) | - | - | 487,243,329 | - | - | (81,570) |
| 2/24/2004 | TRANS TO 1FN07040 *(1FN070)* | (6,650,303) | - | - | - | (6,650,303) | 480,593,026 | - | - | - |
| 2/26/2004 | W/H TAX DIV GS | (14,940) | - | (14,940) | - | - | 480,578,086 | - | - | (14,940) |
| 2/27/2004 | W/H TAX DIV MER | (21,035) | - | (21,035) | - | - | 480,557,051 | - | - | (21,035) |
| 2/27/2004 | W/H TAX DIV C | (277,279) | - | (277,279) | - | - | 480,279,772 | - | - | (277,279) |
| 3/1/2004 | W/H TAX DIV INTC | (34,750) | - | (34,750) | - | - | 480,245,021 | - | - | (34,750) |
| 3/1/2004 | W/H TAX DIV WFC | (102,187) | - | (102,187) | - | - | 480,142,834 | - | - | (102,187) |
| 3/5/2004 | W/H TAX DIV BA | (18,286) | - | (18,286) | - | - | 480,124,548 | - | - | (18,286) |
| 3/5/2004 | W/H TAX DIV PFE | (173,334) | - | (173,334) | - | - | 479,951,214 | - | - | (173,334) |
| 3/5/2004 | W/H TAX DIV G | (21,364) | - | (21,364) | - | - | 479,929,850 | - | - | (21,364) |
| 3/9/2004 | W/H TAX DIV JNJ | (95,551) | - | (95,551) | - | - | 479,834,299 | - | - | (95,551) |
| 3/9/2004 | W/H TAX DIV BUD | (23,664) | - | (23,664) | - | - | 479,810,635 | - | - | (23,664) |
| 3/10/2004 | W/H TAX DIV IBM | (36,333) | - | (36,333) | - | - | 479,774,302 | - | - | (36,333) |
| 3/10/2004 | W/H TAX DIV XOM | (222,036) | - | (222,036) | - | - | 479,552,265 | - | - | (222,036) |
| 3/10/2004 | W/H TAX DIV UTX | (13,177) | - | (13,177) | - | - | 479,539,089 | - | - | (13,177) |
| 3/12/2004 | W/H TAX DIV MMM | (24,396) | - | (24,396) | - | - | 479,514,693 | - | - | (24,396) |
| 3/15/2004 | W/H TAX DIV DD | (46,014) | - | (46,014) | - | - | 479,468,679 | - | - | (46,014) |
| 4/6/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (34) | - | (34) | - | - | 479,468,645 | - | - | (34) |
| 4/8/2004 | TRANS TO 1FN07040 *(1FN070)* | (3,438,623) | - | - | - | (3,438,623) | 476,030,022 | - | - | - |
| 4/19/2004 | TRANS FROM 1FN07040 *(1FN070)* | 3,853,373 | - | - | 3,853,373 | - | 479,883,395 | - | - | - |
| 4/26/2004 | TRANS FROM 1FN07040 *(1FN070)* | 9,620,912 | - | - | 9,620,912 | - | 489,504,307 | - | - | - |
| 4/30/2004 | W/H TAX DIV MWD | (28,829) | - | (28,829) | - | - | 489,475,478 | - | - | (28,829) |
| 4/30/2004 | W/H TAX DIV JPM | (22,139) | - | (22,139) | - | - | 489,453,339 | - | - | (22,139) |
| 5/3/2004 | W/H TAX DIV SBC | (109,203) | - | (109,203) | - | - | 489,344,136 | - | - | (109,203) |
| 5/3/2004 | W/H TAX DIV VZ | (110,991) | - | (110,991) | - | - | 489,233,145 | - | - | (110,991) |
| 5/14/2004 | W/H TAX DIV PG | (84,890) | - | (84,890) | - | - | 489,148,254 | - | - | (84,890) |

MADC1345_00000736

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | Preference Period Initial Transfers | Two Year Initial Transfers | Six Year Initial Transfers |
| 5/17/2004 | W/H TAX DIV TXN | (4,950) | - | (4,950) | - | - | 489,143,305 | - | - | (4,950) |
| 5/18/2004 | TRANS FROM 1FN07040 *(1FN070)* | 99,564,312 | - | - | 99,564,312 | - | 588,707,617 | - | - | - |
| 5/24/2004 | TRANS TO 1FN07040 *(1FN070)* | (2,535,408) | - | - | - | (2,535,408) | 586,172,209 | - | - | - |
| 5/26/2004 | W/H TAX DIV MER | (21,344) | - | (21,344) | - | - | 586,150,865 | - | - | (21,344) |
| 5/27/2004 | W/H TAX DIV GS | (15,159) | - | (15,159) | - | - | 586,135,706 | - | - | (15,159) |
| 5/28/2004 | W/H TAX DIV C | (276,500) | - | (276,500) | - | - | 585,859,206 | - | - | (276,500) |
| 6/1/2004 | W/H TAX DIV WFC | (103,688) | - | (103,688) | - | - | 585,755,518 | - | - | (103,688) |
| 6/1/2004 | W/H TAX DIV INTC | (34,542) | - | (34,542) | - | - | 585,720,976 | - | - | (34,542) |
| 6/4/2004 | W/H TAX DIV G | (21,677) | - | (21,677) | - | - | 585,699,299 | - | - | (21,677) |
| 6/4/2004 | W/H TAX DIV PFE | (172,695) | - | (172,695) | - | - | 585,526,604 | - | - | (172,695) |
| 6/7/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (8) | - | (8) | - | - | 585,526,596 | - | - | (8) |
| 6/7/2004 | W/H TAX DIV WMT | (50,918) | - | (50,918) | - | - | 585,475,678 | - | - | (50,918) |
| 6/8/2004 | W/H TAX DIV JNJ | (113,249) | - | (113,249) | - | - | 585,362,428 | - | - | (113,249) |
| 6/8/2004 | TRANS TO 1FN07040 *(1FN070)* | (11,283,738) | - | - | - | (11,283,738) | 574,078,690 | - | - | - |
| 6/9/2004 | W/H TAX DIV BUD | (24,012) | - | (24,012) | - | - | 574,054,678 | - | - | (24,012) |
| 6/10/2004 | W/H TAX DIV XOM | (235,753) | - | (235,753) | - | - | 573,818,925 | - | - | (235,753) |
| 6/10/2004 | W/H TAX DIV UTX | (17,318) | - | (17,318) | - | - | 573,801,608 | - | - | (17,318) |
| 6/10/2004 | W/H TAX DIV IBM | (41,475) | - | (41,475) | - | - | 573,760,133 | - | - | (41,475) |
| 6/11/2004 | W/H TAX DIV BA | (14,844) | - | (14,844) | - | - | 573,745,289 | - | - | (14,844) |
| 6/14/2004 | W/H TAX DIV MMM | (26,719) | - | (26,719) | - | - | 573,718,570 | - | - | (26,719) |
| 6/14/2004 | W/H TAX DIV DD | (46,690) | - | (46,690) | - | - | 573,671,881 | - | - | (46,690) |
| 6/16/2004 | TRANS FROM 1FN07040 *(1FN070)* | 23,622,552 | - | - | 23,622,552 | - | 597,294,433 | - | - | - |
| 6/18/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 597,294,432 | - | - | (0) |
| 6/18/2004 | TRANS TO 1FN07040 *(1FN070)* | (9,523,881) | - | - | - | (9,523,881) | 587,770,551 | - | - | - |
| 6/24/2004 | W/H TAX DIV HD | (26,513) | - | (26,513) | - | - | 587,744,038 | - | - | (26,513) |
| 6/24/2004 | TRANS FROM 1FN07040 *(1FN070)* | 893,170 | - | - | 893,170 | - | 588,637,208 | - | - | - |
| 6/25/2004 | TRANS TO 1FN07040 *(1FN070)* | (1,668,458) | - | - | - | (1,668,458) | 586,968,750 | - | - | - |
| 6/30/2004 | W/H TAX DIV PEP | (54,523) | - | (54,523) | - | - | 586,914,227 | - | - | (54,523) |
| 7/1/2004 | W/H TAX DIV KO | (84,218) | - | (84,218) | - | - | 586,830,010 | - | - | (84,218) |
| 7/7/2004 | W/H TAX DIV HPQ | (33,937) | - | (33,937) | - | - | 586,796,073 | - | - | (33,937) |
| 7/9/2004 | W/H TAX DIV IBM | (192,167) | - | (192,167) | - | - | 586,603,906 | - | - | (192,167) |
| 7/26/2004 | W/H TAX DIV GE | (31,151) | - | (31,151) | - | - | 586,572,755 | - | - | (31,151) |
| 8/18/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (105) | - | (105) | - | - | 586,572,649 | - | - | (105) |
| 8/18/2004 | TRANS TO 1FN07040 *(1FN070)* | (2,743,784) | - | - | - | (2,743,784) | 583,828,865 | - | - | - |
| 8/19/2004 | TRANS FROM 1FN07040 *(1FN070)* | 1,293,192 | - | - | 1,293,192 | - | 585,122,057 | - | - | - |
| 8/23/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 585,122,057 | - | - | (0) |
| 8/23/2004 | TRANS TO 1FN07040 *(1FN070)* | (23,694,810) | - | - | - | (23,694,810) | 561,427,247 | - | - | - |
| 9/7/2004 | W/H TAX DIV WMT | (60,657) | - | (60,657) | - | - | 561,366,591 | - | - | (60,657) |
| 9/10/2004 | W/H TAX DIV UTX | (20,413) | - | (20,413) | - | - | 561,346,177 | - | - | (20,413) |
| 9/13/2004 | W/H TAX DIV MMM | (31,495) | - | (31,495) | - | - | 561,314,683 | - | - | (31,495) |
| 9/14/2004 | W/H TAX DIV MSFT | (127,216) | - | (127,216) | - | - | 561,187,466 | - | - | (127,216) |
| 9/16/2004 | W/H TAX DIV HD | (28,290) | - | (28,290) | - | - | 561,159,177 | - | - | (28,290) |
| 9/17/2004 | W/H TAX DIV AIG | (28,955) | - | (28,955) | - | - | 561,130,221 | - | - | (28,955) |
| 9/20/2004 | TRANS TO 1FN07040 *(1FN070)* | (21,183,971) | - | - | - | (21,183,971) | 539,946,250 | - | - | - |
| 9/24/2004 | W/H TAX DIV BAC | (275,575) | - | (275,575) | - | - | 539,670,675 | - | - | (275,575) |
| 9/30/2004 | W/H TAX DIV PEP | (58,177) | - | (58,177) | - | - | 539,612,498 | - | - | (58,177) |
| 10/1/2004 | W/H TAX DIV KO | (89,861) | - | (89,861) | - | - | 539,522,637 | - | - | (89,861) |
| 10/1/2004 | W/H TAX DIV MRK | (126,472) | - | (126,472) | - | - | 539,396,165 | - | - | (126,472) |
| 10/1/2004 | W/H TAX DIV VIA.B | (15,616) | - | (15,616) | - | - | 539,380,549 | - | - | (15,616) |
| 10/6/2004 | W/H TAX DIV HPQ | (36,211) | - | (36,211) | - | - | 539,344,338 | - | - | (36,211) |
| 10/12/2004 | W/H TAX DIV MO | (223,522) | - | (223,522) | - | - | 539,120,816 | - | - | (223,522) |
| 11/3/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (98) | - | (98) | - | - | 539,120,718 | - | - | (98) |
| 11/4/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 539,120,718 | - | - | (0) |
| 11/4/2004 | TRANS TO 1FN07040 *(1FN070)* | (2,843,704) | - | - | - | (2,843,704) | 536,277,014 | - | - | - |
| 11/5/2004 | TRANS FROM 1FN07040 *(1FN070)* | 108,192 | - | - | 108,192 | - | 536,385,206 | - | - | - |
| 11/9/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 536,385,205 | - | - | (1) |
| 11/15/2004 | TRANS TO 1FN07040 *(1FN070)* | (40,346,532) | - | - | - | (40,346,532) | 496,038,673 | - | - | - |
| 11/24/2004 | W/H TAX DIV MER | (11,390) | - | (11,390) | - | - | 496,027,283 | - | - | (11,390) |
| 12/1/2004 | W/H TAX DIV INTC | (18,749) | - | (18,749) | - | - | 496,008,534 | - | - | (18,749) |
| 12/1/2004 | W/H TAX DIV WFC | (59,021) | - | (59,021) | - | - | 495,949,513 | - | - | (59,021) |
| 12/3/2004 | W/H TAX DIV BA | (18,952) | - | (18,952) | - | - | 495,930,561 | - | - | (18,952) |
| 12/3/2004 | W/H TAX DIV PFE | (151,172) | - | (151,172) | - | - | 495,779,389 | - | - | (151,172) |
| 12/7/2004 | W/H TAX DIV JNJ | (38,128) | - | (38,128) | - | - | 495,741,261 | - | - | (38,128) |
| 12/10/2004 | W/H TAX DIV IBM | (36,009) | - | (36,009) | - | - | 495,705,252 | - | - | (36,009) |
| 12/10/2004 | W/H TAX DIV XOM | (207,523) | - | (207,523) | - | - | 495,497,730 | - | - | (207,523) |
| 12/13/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (73) | - | (73) | - | - | 495,497,657 | - | - | (73) |
| 12/14/2004 | W/H TAX DIV DD | (40,536) | - | (40,536) | - | - | 495,457,121 | - | - | (40,536) |
| 12/14/2004 | TRANS FROM 1FN07040 *(1FN070)* | 87,000 | - | - | 87,000 | - | 495,544,121 | - | - | - |

MADC1345_00000737

BLMIS ACCOUNT NO. 1FN045 - CITCO GLOBAL CUSTODY N V FBO FAIRFIELD SENTRY LTD

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Transaction Amount Reported in | | | | | | Preference | Two Year | Six Year |
| | Transaction | Reported in | Cash | Cash | Transfers of | Transfers of | Balance of | Period Initial | Initial | Initial |
| Date | Description | Customer Statement | Deposits | Withdrawals | Principal In | Principal Out | Principal | Transfers | Transfers | Transfers |
| 12/16/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | 495,544,118 | - | - | (3) |
| 12/20/2004 | TRANS TO 1FN07040 *(1FN070)* | (4,252,125) | - | - | - | (4,252,125) | 491,291,993 | - | - | - |
| 12/28/2004 | CHECK WIRE | 100,000,000 | 100,000,000 | - | - | - | 591,291,993 | - | - | - |
| 12/28/2004 | CHECK WIRE | 100,000 | 100,000 | - | - | - | 591,391,993 | - | - | - |
| 12/28/2004 | CXL CHECK WIRE | (100,000) | (100,000) | - | - | - | 591,291,993 | - | - | - |
| 12/31/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (16) | - | (16) | - | - | 591,291,977 | - | - | (16) |
| 1/3/2005 | W/H TAX DIV WMT | (20,358) | - | (20,358) | - | - | 591,271,619 | - | - | (20,358) |
| 1/28/2005 | TRANS TO 1FN07040 *(1FN070)* | (4,585,124) | - | - | - | (4,585,124) | 586,686,495 | - | - | - |
| 1/28/2005 | TRANS FROM 1FN07040 *(1FN070)* | 90,920 | - | - | 90,920 | - | 586,777,415 | - | - | - |
| 2/14/2005 | W/H TAX DIV TXN | (6,451) | - | (6,451) | - | - | 586,770,964 | - | - | (6,451) |
| 2/16/2005 | TRANS TO 1FN07040 *(1FN070)* | (58,914,536) | - | - | - | (58,914,536) | 527,856,428 | - | - | - |
| 2/24/2005 | W/H TAX DIV GS | (2,689) | - | (2,689) | - | - | 527,853,739 | - | - | (2,689) |
| 2/25/2005 | W/H TAX DIV C | (340,627) | - | (340,627) | - | - | 527,513,113 | - | - | (340,627) |
| 2/28/2005 | W/H TAX DIV MER | (21,731) | - | (21,731) | - | - | 527,491,382 | - | - | (21,731) |
| 3/1/2005 | W/H TAX DIV WFC | (123,864) | - | (123,864) | - | - | 527,367,518 | - | - | (123,864) |
| 3/1/2005 | W/H TAX DIV INTC | (75,784) | - | (75,784) | - | - | 527,291,734 | - | - | (75,784) |
| 3/4/2005 | W/H TAX DIV G | (24,277) | - | (24,277) | - | - | 527,267,457 | - | - | (24,277) |
| 3/4/2005 | W/H TAX DIV BA | (30,559) | - | (30,559) | - | - | 527,236,898 | - | - | (30,559) |
| 3/8/2005 | W/H TAX DIV JNJ | (126,763) | - | (126,763) | - | - | 527,110,135 | - | - | (126,763) |
| 3/8/2005 | W/H TAX DIV PFE | (214,182) | - | (214,182) | - | - | 526,895,953 | - | - | (214,182) |
| 3/8/2005 | TRANS FROM 1FN07040 *(1FN070)* | 9,869,296 | - | - | 9,869,296 | - | 536,765,249 | - | - | - |
| 3/9/2005 | W/H TAX DIV BUD | (29,947) | - | (29,947) | - | - | 536,735,302 | - | - | (29,947) |
| 3/10/2005 | W/H TAX DIV XOM | (260,359) | - | (260,359) | - | - | 536,474,942 | - | - | (260,359) |
| 3/10/2005 | W/H TAX DIV UTX | (35,855) | - | (35,855) | - | - | 536,439,087 | - | - | (35,855) |
| 3/10/2005 | W/H TAX DIV MSFT | (129,838) | - | (129,838) | - | - | 536,309,248 | - | - | (129,838) |
| 3/10/2005 | W/H TAX DIV IBM | (44,004) | - | (44,004) | - | - | 536,265,244 | - | - | (44,004) |
| 3/14/2005 | W/H TAX DIV MMM | (51,338) | - | (51,338) | - | - | 536,213,906 | - | - | (51,338) |
| 3/14/2005 | W/H TAX DIV DD | (52,289) | - | (52,289) | - | - | 536,161,616 | - | - | (52,289) |
| 3/14/2005 | TRANS FROM 1FN07040 *(1FN070)* | 6,268,538 | - | - | 6,268,538 | - | 542,430,154 | - | - | - |
| 3/15/2005 | TRANS FROM 1FN07040 *(1FN070)* | 4,244,280 | - | - | 4,244,280 | - | 546,674,434 | - | - | - |
| 3/17/2005 | TRANS FROM 1FN07040 *(1FN070)* | 3,327,088 | - | - | 3,327,088 | - | 550,001,522 | - | - | - |
| 3/18/2005 | W/H TAX DIV AIG | (49,233) | - | (49,233) | - | - | 549,952,289 | - | - | (49,233) |
| 3/24/2005 | W/H TAX DIV HD | (32,596) | - | (32,596) | - | - | 549,919,693 | - | - | (32,596) |
| 3/28/2005 | W/H TAX DIV BAC | (271,962) | - | (271,962) | - | - | 549,647,731 | - | - | (271,962) |
| 3/31/2005 | W/H TAX DIV PEP | (59,352) | - | (59,352) | - | - | 549,588,380 | - | - | (59,352) |
| 4/1/2005 | W/H TAX DIV MRK | (123,864) | - | (123,864) | - | - | 549,464,515 | - | - | (123,864) |
| 4/1/2005 | W/H TAX DIV KO | (80,088) | - | (80,088) | - | - | 549,384,427 | - | - | (80,088) |
| 4/1/2005 | W/H TAX DIV VIA.B | (18,064) | - | (18,064) | - | - | 549,366,364 | - | - | (18,064) |
| 4/7/2005 | W/H TAX DIV HPQ | (17,899) | - | (17,899) | - | - | 549,348,465 | - | - | (17,899) |
| 4/11/2005 | W/H TAX DIV MO | (177,867) | - | (177,867) | - | - | 549,170,597 | - | - | (177,867) |
| 4/13/2005 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (245) | - | (245) | - | - | 549,170,352 | - | - | (245) |
| 4/25/2005 | W/H TAX DIV GE | (347,342) | - | (347,342) | - | - | 548,823,010 | - | - | (347,342) |
| 5/11/2005 | CHECK WIRE | 50,000,000 | 50,000,000 | - | - | - | 598,823,010 | - | - | - |
| 5/20/2005 | TRANS TO 1FN07040 *(1FN070)* | (2,046,868) | - | - | - | (2,046,868) | 596,776,142 | - | - | - |
| 5/23/2005 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (50) | - | (50) | - | - | 596,776,093 | - | - | (50) |
| 5/23/2005 | TRANS TO 1FN07040 *(1FN070)* | (7,922,073) | - | - | - | (7,922,073) | 588,854,020 | - | - | - |
| 6/6/2005 | W/H TAX DIV WMT | (22,860) | - | (22,860) | - | - | 588,831,159 | - | - | (22,860) |
| 6/10/2005 | W/H TAX DIV UTX | (10,874) | - | (10,874) | - | - | 588,820,285 | - | - | (10,874) |
| 6/13/2005 | W/H TAX DIV MMM | (15,570) | - | (15,570) | - | - | 588,804,715 | - | - | (15,570) |
| 6/17/2005 | W/H TAX DIV AIG | (37,953) | - | (37,953) | - | - | 588,766,763 | - | - | (37,953) |
| 6/20/2005 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (28) | - | (28) | - | - | 588,766,735 | - | - | (28) |
| 6/23/2005 | W/H TAX DIV HD | (25,424) | - | (25,424) | - | - | 588,741,312 | - | - | (25,424) |
| 6/24/2005 | W/H TAX DIV BAC | (212,011) | - | (212,011) | - | - | 588,529,300 | - | - | (212,011) |
| 6/24/2005 | TRANS FROM 1FN07040 *(1FN070)* | 253,938 | - | - | 253,938 | - | 588,783,238 | - | - | - |
| 6/27/2005 | TRANS FROM 1FN07040 *(1FN070)* | 10,962,018 | - | - | 10,962,018 | - | 599,745,256 | - | - | - |
| 6/28/2005 | TRANS FROM 1FN07040 *(1FN070)* | 9,542,580 | - | - | 9,542,580 | - | 609,287,836 | - | - | - |
| 6/30/2005 | W/H TAX DIV PEP | (51,720) | - | (51,720) | - | - | 609,236,116 | - | - | (51,720) |
| 7/1/2005 | W/H TAX DIV ALL | (25,718) | - | (25,718) | - | - | 609,210,398 | - | - | (25,718) |
| 7/1/2005 | W/H TAX DIV MRK | (95,484) | - | (95,484) | - | - | 609,114,914 | - | - | (95,484) |
| 7/1/2005 | W/H TAX DIV VIA.B | (13,925) | - | (13,925) | - | - | 609,100,989 | - | - | (13,925) |
| 7/1/2005 | W/H TAX DIV KO | (73,288) | - | (73,288) | - | - | 609,027,701 | - | - | (73,288) |
| 7/6/2005 | W/H TAX DIV HPQ | (27,369) | - | (27,369) | - | - | 609,000,332 | - | - | (27,369) |
| 7/6/2005 | CHECK WIRE | (85,000,000) | - | (85,000,000) | - | - | 524,000,332 | - | - | (85,000,000) |
| 7/8/2005 | W/H TAX DIV SLB | (15,390) | - | (15,390) | - | - | 523,984,942 | - | - | (15,390) |
| 7/11/2005 | W/H TAX DIV MO | (175,786) | - | (175,786) | - | - | 523,809,156 | - | - | (175,786) |
| 7/13/2005 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (29) | - | (29) | - | - | 523,809,127 | - | - | (29) |
| 7/25/2005 | W/H TAX DIV GE | (271,048) | - | (271,048) | - | - | 523,538,079 | - | - | (271,048) |
| 9/8/2005 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (122) | - | (122) | - | - | 523,537,957 | - | - | (122) |

MADC1345_00000738

BLMIS ACCOUNT NO. 1FN045 - CTP HOLDINGS LLC FBO FAIRFIELD SENTRY LTD

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | Preference Period Initial Transfers | Two Year Initial Transfers | Six Year Initial Transfers |
| 9/8/2005 | TRANS FROM 1FN07040 *(1FN070)* | 498,048 | - | - | 498,048 | - | 524,036,005 | - | - | - |
| 9/9/2005 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 524,036,005 | - | - | (1) |
| 9/9/2005 | TRANS TO 1FN07040 *(1FN070)* | (1,776,492) | - | - | - | (1,776,492) | 522,259,513 | - | - | - |
| 9/12/2005 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (5) | - | (5) | - | - | 522,259,508 | - | - | (5) |
| 9/13/2005 | TRANS TO 1FN07040 *(1FN070)* | (1,506,780) | - | - | - | (1,506,780) | 520,752,728 | - | - | - |
| 9/19/2005 | TRANS FROM 1FN07040 *(1FN070)* | 2,145,759 | - | - | 2,145,759 | - | 522,898,487 | - | - | - |
| 9/22/2005 | TRANS FROM 1FN07040 *(1FN070)* | 11,483,966 | - | - | 11,483,966 | - | 534,382,453 | - | - | - |
| 9/23/2005 | TRANS FROM 1FN07040 *(1FN070)* | 17,971,611 | - | - | 17,971,611 | - | 552,354,064 | - | - | - |
| 9/27/2005 | TRANS FROM 1FN07040 *(1FN070)* | 12,210,114 | - | - | 12,210,114 | - | 564,564,178 | - | - | - |
| 9/30/2005 | W/H TAX DIV S | (5,866) | - | (5,866) | - | - | 564,558,312 | - | - | (5,866) |
| 9/30/2005 | W/H TAX DIV PEP | (35,125) | - | (35,125) | - | - | 564,523,187 | - | - | (35,125) |
| 10/3/2005 | W/H TAX DIV KO | (98,652) | - | (98,652) | - | - | 564,424,535 | - | - | (98,652) |
| 10/3/2005 | CHECK WIRE | (90,000,000) | - | (90,000,000) | - | - | 474,424,535 | - | - | (90,000,000) |
| 10/3/2005 | CHECK WIRE | (90,000,000) | - | (90,000,000) | - | - | 384,424,535 | - | - | (90,000,000) |
| 10/3/2005 | CHECK WIRE | (70,000,000) | - | (70,000,000) | - | - | 314,424,535 | - | - | (70,000,000) |
| 10/5/2005 | W/H TAX DIV HPQ | (35,759) | - | (35,759) | - | - | 314,388,775 | - | - | (35,759) |
| 10/7/2005 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (131) | - | (131) | - | - | 314,388,645 | - | - | (131) |
| 10/7/2005 | TRANS FROM 1FN07040 *(1FN070)* | 2,943,328 | - | - | 2,943,328 | - | 317,331,973 | - | - | - |
| 10/11/2005 | W/H TAX DIV MO | (254,373) | - | (254,373) | - | - | 317,077,600 | - | - | (254,373) |
| 10/11/2005 | TRANS FROM 1FN07040 *(1FN070)* | 899,768 | - | - | 899,768 | - | 317,977,368 | - | - | - |
| 10/12/2005 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | 317,977,365 | - | - | (3) |
| 10/13/2005 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 317,977,364 | - | - | (1) |
| 10/14/2005 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 317,977,364 | - | - | (0) |
| 10/14/2005 | TRANS TO 1FN07040 *(1FN070)* | (103,908) | - | - | - | (103,908) | 317,873,456 | - | - | - |
| 10/17/2005 | TRANS FROM 1FN07040 *(1FN070)* | 2,580,822 | - | - | 2,580,822 | - | 320,454,278 | - | - | - |
| 10/19/2005 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 320,454,275 | - | - | (2) |
| 10/21/2005 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 320,454,274 | - | - | (2) |
| 10/21/2005 | TRANS FROM 1FN07040 *(1FN070)* | 11,032,060 | - | - | 11,032,060 | - | 331,486,334 | - | - | - |
| 10/25/2005 | W/H TAX DIV GE | (264,546) | - | (264,546) | - | - | 331,221,787 | - | - | (264,546) |
| 10/31/2005 | W/H TAX DIV MWD | (28,286) | - | (28,286) | - | - | 331,193,501 | - | - | (28,286) |
| 11/15/2005 | W/H TAX DIV ABT | (43,215) | - | (43,215) | - | - | 331,150,286 | - | - | (43,215) |
| 11/15/2005 | W/H TAX DIV PG | (142,834) | - | (142,834) | - | - | 331,007,452 | - | - | (142,834) |
| 11/17/2005 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (23) | - | (23) | - | - | 331,007,429 | - | - | (23) |
| 11/17/2005 | TRANS TO 1FN07040 *(1FN070)* | (32,002,400) | - | - | - | (32,002,400) | 299,005,029 | - | - | - |
| 11/21/2005 | W/H TAX DIV GS | (16,350) | - | (16,350) | - | - | 298,988,679 | - | - | (16,350) |
| 11/21/2005 | W/H TAX DIV TXN | (7,335) | - | (7,335) | - | - | 298,981,345 | - | - | (7,335) |
| 11/23/2005 | W/H TAX DIV C | (333,802) | - | (333,802) | - | - | 298,647,543 | - | - | (333,802) |
| 11/23/2005 | W/H TAX DIV MER | (26,160) | - | (26,160) | - | - | 298,621,383 | - | - | (26,160) |
| 11/30/2005 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 298,621,382 | - | - | (1) |
| 12/1/2005 | W/H TAX DIV INTC | (71,531) | - | (71,531) | - | - | 298,549,851 | - | - | (71,531) |
| 12/1/2005 | W/H TAX DIV WFC | (129,230) | - | (129,230) | - | - | 298,420,620 | - | - | (129,230) |
| 12/2/2005 | W/H TAX DIV BA | (29,430) | - | (29,430) | - | - | 298,391,190 | - | - | (29,430) |
| 12/6/2005 | W/H TAX DIV PFE | (207,930) | - | (207,930) | - | - | 298,183,260 | - | - | (207,930) |
| 12/8/2005 | W/H TAX DIV MSFT | (108,478) | - | (108,478) | - | - | 298,074,782 | - | - | (108,478) |
| 12/9/2005 | W/H TAX DIV XOM | (270,263) | - | (270,263) | - | - | 297,804,520 | - | - | (270,263) |
| 12/12/2005 | W/H TAX DIV MMM | (49,442) | - | (49,442) | - | - | 297,755,077 | - | - | (49,442) |
| 12/12/2005 | W/H TAX DIV UTX | (33,574) | - | (33,574) | - | - | 297,721,503 | - | - | (33,574) |
| 12/12/2005 | W/H TAX DIV CVX | (151,221) | - | (151,221) | - | - | 297,570,282 | - | - | (151,221) |
| 12/12/2005 | W/H TAX DIV IBM | (47,088) | - | (47,088) | - | - | 297,523,194 | - | - | (47,088) |
| 12/13/2005 | W/H TAX DIV JNJ | (146,284) | - | (146,284) | - | - | 297,376,910 | - | - | (146,284) |
| 12/15/2005 | W/H TAX DIV HD | (31,392) | - | (31,392) | - | - | 297,345,518 | - | - | (31,392) |
| 12/15/2005 | W/H TAX DIV KO | (84,637) | - | (84,637) | - | - | 297,260,881 | - | - | (84,637) |
| 12/15/2005 | W/H TAX DIV TWX | (34,445) | - | (34,445) | - | - | 297,226,436 | - | - | (34,445) |
| 12/16/2005 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 297,226,436 | - | - | (1) |
| 12/16/2005 | W/H TAX DIV AIG | (56,898) | - | (56,898) | - | - | 297,169,538 | - | - | (56,898) |
| 12/16/2005 | TRANS TO 1FN07040 *(1FN070)* | (33,478,098) | - | - | - | (33,478,098) | 263,691,440 | - | - | - |
| 12/19/2005 | TRANS TO 1FN07040 *(1FN070)* | (8,687,817) | - | - | - | (8,687,817) | 255,003,623 | - | - | - |
| 12/22/2005 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (17) | - | (17) | - | - | 255,003,606 | - | - | (17) |
| 12/23/2005 | W/H TAX DIV BAC | (294,300) | - | (294,300) | - | - | 254,709,306 | - | - | (294,300) |
| 12/30/2005 | W/H TAX DIV S | (10,791) | - | (10,791) | - | - | 254,698,515 | - | - | (10,791) |
| 12/30/2005 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (7) | - | (7) | - | - | 254,698,508 | - | - | (7) |
| 1/3/2006 | W/H TAX DIV PEP | (64,615) | - | (64,615) | - | - | 254,633,893 | - | - | (64,615) |
| 1/3/2006 | W/H TAX DIV VIA.B | (16,481) | - | (16,481) | - | - | 254,617,412 | - | - | (16,481) |
| 1/3/2006 | W/H TAX DIV WMT | (36,258) | - | (36,258) | - | - | 254,581,155 | - | - | (36,258) |
| 1/3/2006 | W/H TAX DIV MRK | (124,260) | - | (124,260) | - | - | 254,456,895 | - | - | (124,260) |
| 1/4/2006 | W/H TAX DIV HPQ | (33,861) | - | (33,861) | - | - | 254,423,034 | - | - | (33,861) |
| 1/6/2006 | W/H TAX DIV DIS | (81,227) | - | (81,227) | - | - | 254,341,807 | - | - | (81,227) |
| 1/10/2006 | CHECK WIRE | (60,000,000) | - | (60,000,000) | - | - | 194,341,807 | - | - | (60,000,000) |

MADC1345_00000739

BLMIS ACCOUNT NO. 1FN045 - CITI ... FBO FAIRFIELD SENTRY LTD

| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | Preference Period Initial Transfers | Two Year Initial Transfers | Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 1/10/2006 | CHECK WIRE | (55,000,000) | - | (55,000,000) | - | - | 139,341,807 | - | - | (55,000,000) |
| 1/10/2006 | TRANS FROM 1FN07040 *(1FN070)* | 3,889,552 | - | - | 3,889,552 | - | 143,231,359 | - | - | - |
| 1/11/2006 | TRANS TO 1FN07040 *(1FN070)* | (1,030,077) | - | - | - | (1,030,077) | 142,201,282 | - | - | - |
| 1/13/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (11) | - | (11) | - | - | 142,201,271 | - | - | (11) |
| 1/13/2006 | TRANS TO 1FN07040 *(1FN070)* | (2,826) | - | - | - | (2,826) | 142,198,445 | - | - | - |
| 1/23/2006 | TRANS FROM 1FN07040 *(1FN070)* | 13,593,644 | - | - | 13,593,644 | - | 155,792,089 | - | - | - |
| 1/31/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | 155,792,087 | - | - | (3) |
| 1/31/2006 | W/H TAX DIV MS | (39,827) | - | (39,827) | - | - | 155,752,259 | - | - | (39,827) |
| 1/31/2006 | TRANS FROM 1FN07040 *(1FN070)* | 6,678,599 | - | - | 6,678,599 | - | 162,430,858 | - | - | - |
| 2/1/2006 | W/H TAX DIV T | (43,391) | - | (43,391) | - | - | 162,387,468 | - | - | (43,391) |
| 2/1/2006 | W/H TAX DIV VZ | (37,751) | - | (37,751) | - | - | 162,349,717 | - | - | (37,751) |
| 2/13/2006 | W/H TAX DIV TXN | (6,494) | - | (6,494) | - | - | 162,343,222 | - | - | (6,494) |
| 2/15/2006 | W/H TAX DIV PG | (127,352) | - | (127,352) | - | - | 162,215,871 | - | - | (127,352) |
| 2/15/2006 | W/H TAX DIV ABT | (57,468) | - | (57,468) | - | - | 162,158,403 | - | - | (57,468) |
| 2/16/2006 | TRANS FROM 1FN07040 *(1FN070)* | 15,200,983 | - | - | 15,200,983 | - | 177,359,386 | - | - | - |
| 2/23/2006 | W/H TAX DIV GS | (15,358) | - | (15,358) | - | - | 177,344,028 | - | - | (15,358) |
| 2/24/2006 | W/H TAX DIV C | (333,492) | - | (333,492) | - | - | 177,010,536 | - | - | (333,492) |
| 2/28/2006 | W/H TAX DIV MER | (30,731) | - | (30,731) | - | - | 176,979,805 | - | - | (30,731) |
| 2/28/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (32) | - | (32) | - | - | 176,979,773 | - | - | (32) |
| 3/1/2006 | W/H TAX DIV INTC | (80,802) | - | (80,802) | - | - | 176,898,971 | - | - | (80,802) |
| 3/1/2006 | W/H TAX DIV WFC | (115,061) | - | (115,061) | - | - | 176,783,910 | - | - | (115,061) |
| 3/3/2006 | W/H TAX DIV BA | (33,174) | - | (33,174) | - | - | 176,750,737 | - | - | (33,174) |
| 3/7/2006 | W/H TAX DIV UPS | (56,055) | - | (56,055) | - | - | 176,694,682 | - | - | (56,055) |
| 3/7/2006 | W/H TAX DIV PFE | (238,179) | - | (238,179) | - | - | 176,456,503 | - | - | (238,179) |
| 3/8/2006 | TRANS FROM 1FN07040 *(1FN070)* | 4,343,138 | - | - | 4,343,138 | - | 180,799,641 | - | - | - |
| 3/9/2006 | W/H TAX DIV MSFT | (111,460) | - | (111,460) | - | - | 180,688,181 | - | - | (111,460) |
| 3/10/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (9) | - | (9) | - | - | 180,688,172 | - | - | (9) |
| 3/10/2006 | W/H TAX DIV XOM | (266,799) | - | (266,799) | - | - | 180,421,373 | - | - | (266,799) |
| 3/10/2006 | W/H TAX DIV CVX | (136,184) | - | (136,184) | - | - | 180,285,189 | - | - | (136,184) |
| 3/10/2006 | W/H TAX DIV UTX | (29,733) | - | (29,733) | - | - | 180,255,455 | - | - | (29,733) |
| 3/10/2006 | W/H TAX DIV IBM | (42,302) | - | (42,302) | - | - | 180,213,154 | - | - | (42,302) |
| 3/10/2006 | W/H TAX DIV TGT | (12,287) | - | (12,287) | - | - | 180,200,867 | - | - | (12,287) |
| 3/10/2006 | TRANS FROM 1FN07040 *(1FN070)* | 34,944 | - | - | 34,944 | - | 180,235,811 | - | - | - |
| 3/13/2006 | W/H TAX DIV MMM | (45,214) | - | (45,214) | - | - | 180,190,597 | - | - | (45,214) |
| 3/14/2006 | W/H TAX DIV JNJ | (133,866) | - | (133,866) | - | - | 180,056,731 | - | - | (133,866) |
| 3/15/2006 | W/H TAX DIV TWX | (31,473) | - | (31,473) | - | - | 180,025,258 | - | - | (31,473) |
| 3/16/2006 | CHECK WIRE | (50,000,000) | - | (50,000,000) | - | - | 130,025,258 | - | - | (50,000,000) |
| 3/16/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 130,025,257 | - | - | (1) |
| 3/16/2006 | TRANS TO 1FN07040 *(1FN070)* | (917,422) | - | - | - | (917,422) | 129,107,835 | - | - | - |
| 3/17/2006 | W/H TAX DIV AIG | (52,009) | - | (52,009) | - | - | 129,055,826 | - | - | (52,009) |
| 3/23/2006 | W/H TAX DIV HD | (42,409) | - | (42,409) | - | - | 129,013,417 | - | - | (42,409) |
| 3/24/2006 | W/H TAX DIV BAC | (313,462) | - | (313,462) | - | - | 128,699,954 | - | - | (313,462) |
| 3/27/2006 | CHECK WIRE | (50,000,000) | - | (50,000,000) | - | - | 78,699,954 | - | - | (50,000,000) |
| 3/27/2006 | CHECK WIRE | (50,000,000) | - | (50,000,000) | - | - | 28,699,954 | - | - | (50,000,000) |
| 3/27/2006 | TRANS TO 1FN07040 *(1FN070)* | (7,264,974) | - | - | - | (7,264,974) | 21,434,980 | - | - | - |
| 3/28/2006 | TRANS TO 1FN07040 *(1FN070)* | (7,652,722) | - | - | - | (7,652,722) | 13,782,258 | - | - | - |
| 3/29/2006 | TRANS TO 1FN07040 *(1FN070)* | (7,169,712) | - | - | - | (7,169,712) | 6,612,546 | - | - | - |
| 3/30/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (16) | - | (16) | - | - | 6,612,530 | - | - | (16) |
| 3/30/2006 | TRANS TO 1FN07040 *(1FN070)* | (3,058,404) | - | - | - | (3,058,404) | 3,554,126 | - | - | - |
| 3/31/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 3,554,125 | - | - | (1) |
| 3/31/2006 | W/H TAX DIV S | (10,213) | - | (10,213) | - | - | 3,543,913 | - | - | (10,213) |
| 3/31/2006 | W/H TAX DIV PEP | (58,638) | - | (58,638) | - | - | 3,485,275 | - | - | (58,638) |
| 4/3/2006 | W/H TAX DIV KO | (87,820) | - | (87,820) | - | - | 3,397,455 | - | - | (87,820) |
| 4/3/2006 | W/H TAX DIV MRK | (114,225) | - | (114,225) | - | - | 3,283,231 | - | - | (114,225) |
| 4/3/2006 | W/H TAX DIV WMT | (58,392) | - | (58,392) | - | - | 3,224,838 | - | - | (58,392) |
| 4/5/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (4) | - | (4) | - | - | 3,224,835 | - | - | (4) |
| 4/5/2006 | W/H TAX DIV HPQ | (31,436) | - | (31,436) | - | - | 3,193,399 | - | - | (31,436) |
| 4/5/2006 | TRANS TO 1FN07040 *(1FN070)* | (3,309,516) [3] | - | - | - | (3,193,399) | - | - | - | - |
| 4/6/2006 | TRANS TO 1FN07040 *(1FN070)* | (3,494,848) [4] | - | - | - | - | - | - | - | - |
| 4/7/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | (1) | - | - | (1) |
| 4/7/2006 | W/H TAX DIV SLB | (19,072) | - | (19,072) | - | - | (19,073) | - | - | - |
| 4/7/2006 | TRANS TO 1FN07040 *(1FN070)* | (3,028,624) [4] | - | - | - | - | (19,073) | - | - | - |
| 4/10/2006 | W/H TAX DIV MO | (230,465) | - | (230,465) | - | - | (249,538) | - | - | (230,465) |
| 4/21/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | (249,541) | - | - | (3) |
| 4/21/2006 | TRANS FROM 1FN07040 *(1FN070)* | 28,425,353 | - | - | 28,425,353 | - | 28,175,812 | - | - | - |
| 4/25/2006 | W/H TAX DIV GE | (355,947) | - | (355,947) | - | - | 27,819,865 | - | - | (355,947) |
| 4/28/2006 | CXL W/H TAX DIV SLB | 19,072 | - | 19,072 | - | - | 27,838,937 | - | - | - |

MADC1345_00000740

| Column 1<br>Date | Column 2<br>Transaction Description | Column 3<br>Transaction Amount Reported in Customer Statement | Column 4<br>Cash Deposits | Column 5<br>Cash Withdrawals | Column 6<br>Transfers of Principal In | Column 7<br>Transfers of Principal Out | Column 8<br>Balance of Principal | Column 9<br>Preference Period Initial Transfers | Column 10<br>Two Year Initial Transfers | Column 11<br>Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 4/28/2006 | W/H TAX DIV MDT | (14,777) | - | (14,777) | - | - | 27,824,159 | - | - | (14,777) |
| 4/28/2006 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (439) | - | (439) | - | - | 27,823,721 | - | - | (439) |
| 4/28/2006 | W/H TAX DIV MS | (37,489) | - | (37,489) | - | - | 27,786,232 | - | - | (37,489) |
| 5/1/2006 | W/H TAX DIV JPM | (112,168) | - | (112,168) | - | - | 27,674,064 | - | - | (112,168) |
| 5/1/2006 | W/H TAX DIV T | (165,432) | - | (165,432) | - | - | 27,508,632 | - | - | (165,432) |
| 5/1/2006 | W/H TAX DIV VZ | (153,047) | - | (153,047) | - | - | 27,355,585 | - | - | (153,047) |
| 5/4/2006 | TRANS TO 1FN070 *(1FN070)* | (74,408) | - | - | - | (74,408) | 27,281,177 | - | - | - |
| 5/5/2006 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (5) | - | (5) | - | - | 27,281,172 | - | - | (5) |
| 5/10/2006 | W/H TAX DIV AXP | (19,439) | - | (19,439) | - | - | 27,261,734 | - | - | (19,439) |
| 5/10/2006 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (6) | - | (6) | - | - | 27,261,727 | - | - | (6) |
| 5/10/2006 | TRANS TO 1FN070 *(1FN070)* | (10,567,906) | - | - | - | (10,567,906) | 16,693,821 | - | - | - |
| 5/15/2006 | W/H TAX DIV ABT | (58,027) | - | (58,027) | - | - | 16,635,794 | - | - | (58,027) |
| 5/15/2006 | W/H TAX DIV PG | (132,716) | - | (132,716) | - | - | 16,503,078 | - | - | (132,716) |
| 5/19/2006 | TRANS TO 1FN07040 *(1FN070)* | (899,139) | - | - | - | (899,139) | 15,603,939 | - | - | - |
| 5/22/2006 | W/H TAX DIV CAT | (22,156) | - | (22,156) | - | - | 15,581,783 | - | - | (22,156) |
| 5/22/2006 | W/H TAX DIV TXN | (6,248) | - | (6,248) | - | - | 15,575,535 | - | - | (6,248) |
| 5/22/2006 | TRANS FROM 1FN07040 *(1FN070)* | 35,144,607 | - | - | 35,144,607 | - | 50,720,142 | - | - | - |
| 5/24/2006 | W/H TAX DIV MER | (29,320) | - | (29,320) | - | - | 50,690,822 | - | - | (29,320) |
| 5/25/2006 | W/H TAX DIV GS | (20,249) | - | (20,249) | - | - | 50,670,573 | - | - | (20,249) |
| 5/26/2006 | W/H TAX DIV C | (317,500) | - | (317,500) | - | - | 50,353,073 | - | - | (317,500) |
| 5/31/2006 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (33) | - | (33) | - | - | 50,353,040 | - | - | (33) |
| 5/31/2006 | W/H TAX DIV UPS | (53,479) | - | (53,479) | - | - | 50,299,561 | - | - | (53,479) |
| 6/1/2006 | W/H TAX DIV WFC | (115,872) | - | (115,872) | - | - | 50,183,689 | - | - | (115,872) |
| 6/1/2006 | W/H TAX DIV INTC | (76,231) | - | (76,231) | - | - | 50,107,458 | - | - | (76,231) |
| 6/2/2006 | W/H TAX DIV BA | (31,665) | - | (31,665) | - | - | 50,075,792 | - | - | (31,665) |
| 6/5/2006 | W/H TAX DIV WMT | (55,004) | - | (55,004) | - | - | 50,020,788 | - | - | (55,004) |
| 6/6/2006 | W/H TAX DIV BMY | (71,276) | - | (71,276) | - | - | 49,949,513 | - | - | (71,276) |
| 6/6/2006 | W/H TAX DIV PFE | (230,805) | - | (230,805) | - | - | 49,718,708 | - | - | (230,805) |
| 6/8/2006 | W/H TAX DIV MSFT | (104,496) | - | (104,496) | - | - | 49,614,212 | - | - | (104,496) |
| 6/9/2006 | W/H TAX DIV XOM | (256,195) | - | (256,195) | - | - | 49,358,017 | - | - | (256,195) |
| 6/12/2006 | W/H TAX DIV MMM | (43,159) | - | (43,159) | - | - | 49,314,859 | - | - | (43,159) |
| 6/12/2006 | W/H TAX DIV IBM | (61,215) | - | (61,215) | - | - | 49,253,644 | - | - | (61,215) |
| 6/12/2006 | W/H TAX DIV UTX | (17,093) | - | (17,093) | - | - | 49,236,550 | - | - | (17,093) |
| 6/13/2006 | W/H TAX DIV JNJ | (145,133) | - | (145,133) | - | - | 49,091,417 | - | - | (145,133) |
| 6/15/2006 | W/H TAX DIV TWX | (29,328) | - | (29,328) | - | - | 49,062,090 | - | - | (29,328) |
| 6/15/2006 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (13) | - | (13) | - | - | 49,062,077 | - | - | (13) |
| 6/15/2006 | TRANS FROM 1FN07040 *(1FN070)* | 22,515,244 | - | - | 22,515,244 | - | 71,577,321 | - | - | - |
| 6/16/2006 | TRANS FROM 1FN07040 *(1FN070)* | 33,763,988 | - | - | 33,763,988 | - | 105,341,309 | - | - | - |
| 6/19/2006 | TRANS FROM 1FN07040 *(1FN070)* | 34,161,977 | - | - | 34,161,977 | - | 139,503,286 | - | - | - |
| 6/22/2006 | W/H TAX DIV HD | (42,220) | - | (42,220) | - | - | 139,461,065 | - | - | (42,220) |
| 6/23/2006 | W/H TAX DIV BAC | (304,925) | - | (304,925) | - | - | 139,156,140 | - | - | (304,925) |
| 6/30/2006 | W/H TAX DIV PEP | (63,378) | - | (63,378) | - | - | 139,092,762 | - | - | (63,378) |
| 6/30/2006 | W/H TAX DIV S | (9,676) | - | (9,676) | - | - | 139,083,087 | - | - | (9,676) |
| 6/30/2006 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (163) | - | (163) | - | - | 139,082,923 | - | - | (163) |
| 7/3/2006 | W/H TAX DIV MRK | (106,958) | - | (106,958) | - | - | 138,975,965 | - | - | (106,958) |
| 7/3/2006 | W/H TAX DIV AIG | (51,016) | - | (51,016) | - | - | 138,924,949 | - | - | (51,016) |
| 7/3/2006 | W/H TAX DIV CVX | (152,463) | - | (152,463) | - | - | 138,772,486 | - | - | (152,463) |
| 7/3/2006 | W/H TAX DIV KO | (57,698) | - | (57,698) | - | - | 138,714,788 | - | - | (57,698) |
| 7/5/2006 | W/H TAX DIV HPQ | (29,775) | - | (29,775) | - | - | 138,685,014 | - | - | (29,775) |
| 7/7/2006 | W/H TAX DIV SLB | (20,504) | - | (20,504) | - | - | 138,664,510 | - | - | (20,504) |
| 7/10/2006 | W/H TAX DIV MO | (148,897) | - | (148,897) | - | - | 138,515,612 | - | - | (148,897) |
| 7/14/2006 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (14) | - | (14) | - | - | 138,515,598 | - | - | (14) |
| 7/14/2006 | TRANS TO 1FN07040 *(1FN070)* | (2,795,688) | - | - | - | (2,795,688) | 135,719,910 | - | - | - |
| 7/21/2006 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 135,719,908 | - | - | (2) |
| 7/21/2006 | TRANS FROM 1FN07040 *(1FN070)* | 20,286,770 | - | - | 20,286,770 | - | 156,006,678 | - | - | - |
| 7/31/2006 | W/H TAX DIV MS | (15,799) | - | (15,799) | - | - | 155,990,879 | - | - | (15,799) |
| 7/31/2006 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (12) | - | (12) | - | - | 155,990,868 | - | - | (12) |
| 8/7/2006 | CXL W/H TAX DIV SLB | 20,504 | - | 20,504 | - | - | 156,011,372 | - | - | - |
| 8/15/2006 | W/H TAX DIV ABT | (24,454) | - | (24,454) | - | - | 155,986,918 | - | - | (24,454) |
| 8/15/2006 | W/H TAX DIV PG | (98,973) | - | (98,973) | - | - | 155,887,944 | - | - | (98,973) |
| 8/17/2006 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (28) | - | (28) | - | - | 155,887,916 | - | - | (28) |
| 8/17/2006 | TRANS TO 1FN07040 *(1FN070)* | (39,376,547) | - | - | - | (39,376,547) | 116,511,369 | - | - | - |
| 8/21/2006 | W/H TAX DIV TXN | (4,513) | - | (4,513) | - | - | 116,506,856 | - | - | (4,513) |
| 8/21/2006 | W/H TAX DIV CAT | (10,240) | - | (10,240) | - | - | 116,496,616 | - | - | (10,240) |
| 8/23/2006 | W/H TAX DIV MER | (21,572) | - | (21,572) | - | - | 116,475,044 | - | - | (21,572) |
| 8/24/2006 | W/H TAX DIV GS | (15,101) | - | (15,101) | - | - | 116,459,943 | - | - | (15,101) |
| 8/25/2006 | W/H TAX DIV C | (234,938) | - | (234,938) | - | - | 116,225,005 | - | - | (234,938) |
| 9/1/2006 | W/H TAX DIV WFC | (91,812) | - | (91,812) | - | - | 116,133,193 | - | - | (91,812) |

MADC1345_00000741

BLMIS ACCOUNT NO. 1FN045 - CITCO GLOBAL CUSTODY NV FBO FAIRFIELD SENTRY LTD

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Transaction Amount Reported in Customer Statement | | | | | | Preference Period Initial | Two Year Initial | Six Year Initial |
| Date | Transaction Description | | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | Transfers | Transfers | Transfers |
| 9/1/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (8) | - | (8) | - | - | 116,133,185 | - | - | (8) |
| 9/1/2006 | W/H TAX DIV INTC | (56,463) | - | (56,463) | - | - | 116,076,722 | - | - | (56,463) |
| 9/1/2006 | W/H TAX DIV BA | (23,298) | - | (23,298) | - | - | 116,053,424 | - | - | (23,298) |
| 9/5/2006 | W/H TAX DIV PFE | (170,086) | - | (170,086) | - | - | 115,883,338 | - | - | (170,086) |
| 9/5/2006 | W/H TAX DIV WMT | (40,470) | - | (40,470) | - | - | 115,842,868 | - | - | (40,470) |
| 9/6/2006 | CHECK WIRE | 150,000,000 | 150,000,000 | - | - | - | 265,842,868 | - | - | - |
| 9/6/2006 | W/H TAX DIV UPS | (39,348) | - | (39,348) | - | - | 265,803,520 | - | - | (39,348) |
| 9/11/2006 | W/H TAX DIV UTX | (25,153) | - | (25,153) | - | - | 265,778,367 | - | - | (25,153) |
| 9/11/2006 | W/H TAX DIV IBM | (44,007) | - | (44,007) | - | - | 265,734,360 | - | - | (44,007) |
| 9/11/2006 | W/H TAX DIV XOM | (186,204) | - | (186,204) | - | - | 265,548,155 | - | - | (186,204) |
| 9/11/2006 | W/H TAX DIV CVX | (112,176) | - | (112,176) | - | - | 265,435,980 | - | - | (112,176) |
| 9/12/2006 | W/H TAX DIV JNJ | (106,783) | - | (106,783) | - | - | 265,329,197 | - | - | (106,783) |
| 9/12/2006 | W/H TAX DIV MMM | (31,754) | - | (31,754) | - | - | 265,297,443 | - | - | (31,754) |
| 9/14/2006 | W/H TAX DIV MSFT | (76,546) | - | (76,546) | - | - | 265,220,897 | - | - | (76,546) |
| 9/15/2006 | W/H TAX DIV TWX | (23,048) | - | (23,048) | - | - | 265,197,848 | - | - | (23,048) |
| 9/15/2006 | W/H TAX DIV AIG | (41,289) | - | (41,289) | - | - | 265,156,559 | - | - | (41,289) |
| 9/15/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (13) | - | (13) | - | - | 265,156,546 | - | - | (13) |
| 9/15/2006 | TRANS TO 1FN07040 (1FN070) | (25,138,862) | - | - | - | (25,138,862) | 240,017,684 | - | - | - |
| 9/21/2006 | W/H TAX DIV HD | (29,770) | - | (29,770) | - | - | 239,987,914 | - | - | (29,770) |
| 9/22/2006 | W/H TAX DIV BAC | (246,441) | - | (246,441) | - | - | 239,741,473 | - | - | (246,441) |
| 9/26/2006 | TRANS TO 1FN07040 (1FN070) | (9,807,842) | - | - | - | (9,807,842) | 229,933,631 | - | - | - |
| 9/27/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (10) | - | (10) | - | - | 229,933,621 | - | - | (10) |
| 9/27/2006 | TRANS TO 1FN07040 (1FN070) | (5,062,464) | - | - | - | (5,062,464) | 224,871,157 | - | - | - |
| 9/29/2006 | W/H TAX DIV PEP | (47,722) | - | (47,722) | - | - | 224,823,435 | - | - | (47,722) |
| 9/29/2006 | W/H TAX DIV S | (7,241) | - | (7,241) | - | - | 224,816,195 | - | - | (7,241) |
| 10/2/2006 | W/H TAX DIV KO | (61,524) | - | (61,524) | - | - | 224,754,670 | - | - | (61,524) |
| 10/2/2006 | W/H TAX DIV MRK | (78,696) | - | (78,696) | - | - | 224,675,975 | - | - | (78,696) |
| 10/4/2006 | W/H TAX DIV HPQ | (21,400) | - | (21,400) | - | - | 224,654,575 | - | - | (21,400) |
| 10/10/2006 | W/H TAX DIV MO | (173,907) | - | (173,907) | - | - | 224,480,668 | - | - | (173,907) |
| 10/17/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (6) | - | (6) | - | - | 224,480,662 | - | - | (6) |
| 10/25/2006 | W/H TAX DIV GE | (251,457) | - | (251,457) | - | - | 224,229,205 | - | - | (251,457) |
| 10/26/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (4) | - | (4) | - | - | 224,229,201 | - | - | (4) |
| 10/26/2006 | TRANS TO 1FN07040 (1FN070) | (3,537,972) | - | - | - | (3,537,972) | 220,691,229 | - | - | - |
| 10/27/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 220,691,228 | - | - | (2) |
| 10/27/2006 | TRANS TO 1FN07040 (1FN070) | (761,852) | - | - | - | (761,852) | 219,929,376 | - | - | - |
| 10/30/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | 219,929,373 | - | - | (3) |
| 10/30/2006 | TRANS FROM 1FN07040 (1FN070) | 913,104 | - | - | 913,104 | - | 220,842,477 | - | - | - |
| 10/31/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 220,842,476 | - | - | (1) |
| 11/20/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | 220,842,474 | - | - | (3) |
| 11/20/2006 | W/H TAX DIV TXN | (8,288) | - | (8,288) | - | - | 220,834,186 | - | - | (8,288) |
| 11/20/2006 | TRANS TO 1FN07040 (1FN070) | (14,990,625) | - | - | - | (14,990,625) | 205,843,561 | - | - | - |
| 11/22/2006 | W/H TAX DIV MER | (30,469) | - | (30,469) | - | - | 205,813,092 | - | - | (30,469) |
| 11/22/2006 | W/H TAX DIV C | (316,509) | - | (316,509) | - | - | 205,496,583 | - | - | (316,509) |
| 11/27/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 205,496,582 | - | - | (1) |
| 11/30/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 205,496,581 | - | - | (1) |
| 11/30/2006 | TRANS FROM 1FN07040 (1FN070) | 4,000 | - | - | 4,000 | - | 205,500,581 | - | - | - |
| 12/26/2006 | TRANS TO 1FN07040 (1FN070) | (16,961,204) | - | - | - | (16,961,204) | 188,539,377 | - | - | - |
| 12/27/2006 | TRANS TO 1FN07040 (1FN070) | (8,748,264) | - | - | - | (8,748,264) | 179,791,113 | - | - | - |
| 12/28/2006 | TRANS TO 1FN07040 (1FN070) | (4,843,152) | - | - | - | (4,843,152) | 174,947,961 | - | - | - |
| 1/2/2007 | W/H TAX DIV PEP | (66,623) | - | (66,623) | - | - | 174,881,338 | - | (66,623) | (66,623) |
| 1/2/2007 | W/H TAX DIV MRK | (109,260) | - | (109,260) | - | - | 174,772,078 | - | (109,260) | (109,260) |
| 1/2/2007 | W/H TAX DIV WMT | (55,060) | - | (55,060) | - | - | 174,717,018 | - | (55,060) | (55,060) |
| 1/3/2007 | W/H TAX DIV TGT | (13,163) | - | (13,163) | - | - | 174,703,856 | - | (13,163) | (13,163) |
| 1/3/2007 | W/H TAX DIV HPQ | (29,276) | - | (29,276) | - | - | 174,674,580 | - | (29,276) | (29,276) |
| 1/3/2007 | W/H TAX DIV HD | (61,071) | - | (61,071) | - | - | 174,613,509 | - | (61,071) | (61,071) |
| 1/3/2007 | W/H TAX DIV PFE | (232,130) | - | (232,130) | - | - | 174,381,379 | - | (232,130) | (232,130) |
| 1/3/2007 | W/H TAX DIV MSFT | (113,720) | - | (113,720) | - | - | 174,267,659 | - | (113,720) | (113,720) |
| 1/3/2007 | W/H TAX DIV KO | (84,142) | - | (84,142) | - | - | 174,183,517 | - | (84,142) | (84,142) |
| 1/3/2007 | W/H TAX DIV INTC | (75,939) | - | (75,939) | - | - | 174,107,579 | - | (75,939) | (75,939) |
| 1/3/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 174,107,578 | - | (0) | (0) |
| 1/3/2007 | W/H TAX DIV EXC | (34,125) | - | (34,125) | - | - | 174,073,453 | - | (34,125) | (34,125) |
| 1/3/2007 | W/H TAX DIV TWX | (29,857) | - | (29,857) | - | - | 174,043,597 | - | (29,857) | (29,857) |
| 1/3/2007 | W/H TAX DIV JNJ | (146,250) | - | (146,250) | - | - | 173,897,347 | - | (146,250) | (146,250) |
| 1/3/2007 | W/H TAX DIV UTX | (35,527) | - | (35,527) | - | - | 173,861,820 | - | (35,527) | (35,527) |
| 1/3/2007 | W/H TAX DIV S | (9,870) | - | (9,870) | - | - | 173,851,950 | - | (9,870) | (9,870) |
| 1/3/2007 | W/H TAX DIV MMM | (44,850) | - | (44,850) | - | - | 173,807,100 | - | (44,850) | (44,850) |
| 1/3/2007 | W/H TAX DIV WFC | (123,904) | - | (123,904) | - | - | 173,683,196 | - | (123,904) | (123,904) |
| 1/3/2007 | W/H TAX DIV MCD | (158,438) | - | (158,438) | - | - | 173,524,759 | - | (158,438) | (158,438) |

MADC1345_00000742

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 Preference Period Initial Transfers | Column 10 Two Year Initial Transfers | Column 11 Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 1/3/2007 | W/H TAX DIV AIG | (56,999) | - | (56,999) | - | - | 173,467,759 | - | (56,999) | (56,999) |
| 1/3/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (58) | - | (58) | - | - | 173,467,701 | - | (58) | (58) |
| 1/3/2007 | W/H TAX DIV WB | (145,005) | - | (145,005) | - | - | 173,322,696 | - | (145,005) | (145,005) |
| 1/3/2007 | W/H TAX DIV BAC | (338,457) | - | (338,457) | - | - | 172,984,239 | - | (338,457) | (338,457) |
| 1/3/2007 | W/H TAX DIV IBM | (59,629) | - | (59,629) | - | - | 172,924,610 | - | (59,629) | (59,629) |
| 1/3/2007 | W/H TAX DIV BA | (32,906) | - | (32,906) | - | - | 172,891,704 | - | (32,906) | (32,906) |
| 1/3/2007 | W/H TAX DIV CVX | (152,100) | - | (152,100) | - | - | 172,739,604 | - | (152,100) | (152,100) |
| 1/3/2007 | W/H TAX DIV XOM | (250,804) | - | (250,804) | - | - | 172,488,799 | - | (250,804) | (250,804) |
| 1/4/2007 | CHECK WIRE | 500,000,000 | 500,000,000 | - | - | - | 672,488,799 | - | - | - |
| 1/4/2007 | W/H TAX DIV UPS | (55,575) | - | (55,575) | - | - | 672,433,224 | - | (55,575) | (55,575) |
| 1/10/2007 | W/H TAX DIV WMT | (65,607) | - | (65,607) | - | - | 672,367,617 | - | (65,607) | (65,607) |
| 1/12/2007 | W/H TAX DIV DIS | (86,671) | - | (86,671) | - | - | 672,280,946 | - | (86,671) | (86,671) |
| 1/25/2007 | W/H TAX DIV GE | (223,012) | - | (223,012) | - | - | 672,057,934 | - | (223,012) | (223,012) |
| 1/29/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (31) | - | (31) | - | - | 672,057,903 | - | (31) | (31) |
| 1/31/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 672,057,902 | - | (1) | (1) |
| 2/6/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | 672,057,899 | - | (3) | (3) |
| 2/13/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (19) | - | (19) | - | - | 672,057,880 | - | (19) | (19) |
| 2/16/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (8) | - | (8) | - | - | 672,057,872 | - | (8) | (8) |
| 2/16/2007 | TRANS TO 1FN07040 (1FN070) | (2,094,120) | - | - | - | (2,094,120) | 669,963,752 | - | - | - |
| 2/20/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (5) | - | (5) | - | - | 669,963,747 | - | (5) | (5) |
| 2/20/2007 | TRANS TO 1FN07040 (1FN070) | (1,523,780) | - | - | - | (1,523,780) | 668,439,967 | - | - | - |
| 2/22/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 668,439,967 | - | (0) | (0) |
| 2/22/2007 | TRANS TO 1FN07040 (1FN070) | (2,492,082) | - | - | - | (2,492,082) | 665,947,885 | - | - | - |
| 2/23/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 665,947,884 | - | (0) | (0) |
| 2/23/2007 | TRANS TO 1FN07040 (1FN070) | (1,101,916) | - | - | - | (1,101,916) | 664,845,968 | - | - | - |
| 2/28/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (6) | - | (6) | - | - | 664,845,962 | - | (6) | (6) |
| 3/1/2007 | W/H TAX DIV COP | (57,394) | - | (57,394) | - | - | 664,788,568 | - | (57,394) | (57,394) |
| 3/6/2007 | W/H TAX DIV UPS | (38,043) | - | (38,043) | - | - | 664,750,526 | - | (38,043) | (38,043) |
| 3/9/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (11) | - | (11) | - | - | 664,750,514 | - | (11) | (11) |
| 3/9/2007 | TRANS FROM 1FN07040 (1FN070) | 101,271,736 | - | - | 101,271,736 | - | 766,022,250 | - | - | - |
| 3/12/2007 | W/H TAX DIV CVX | (53,669) | - | (53,669) | - | - | 765,968,581 | - | (53,669) | (53,669) |
| 3/12/2007 | W/H TAX DIV UTX | (13,081) | - | (13,081) | - | - | 765,955,500 | - | (13,081) | (13,081) |
| 3/12/2007 | W/H TAX DIV TGT | (8,893) | - | (8,893) | - | - | 765,946,607 | - | (8,893) | (8,893) |
| 3/12/2007 | W/H TAX DIV MMM | (47,101) | - | (47,101) | - | - | 765,899,506 | - | (47,101) | (47,101) |
| 3/12/2007 | TRANS FROM 1FN07040 (1FN070) | 24,286,284 | - | - | 24,286,284 | - | 790,185,790 | - | - | - |
| 3/13/2007 | W/H TAX DIV JNJ | (142,590) | - | (142,590) | - | - | 790,043,200 | - | (142,590) | (142,590) |
| 3/15/2007 | W/H TAX DIV WB | (137,377) | - | (137,377) | - | - | 789,905,823 | - | (137,377) | (137,377) |
| 3/15/2007 | W/H TAX DIV TWX | (28,334) | - | (28,334) | - | - | 789,877,489 | - | (28,334) | (28,334) |
| 3/16/2007 | W/H TAX DIV AIG | (54,644) | - | (54,644) | - | - | 789,822,845 | - | (54,644) | (54,644) |
| 3/19/2007 | TRANS FROM 1FN07040 (1FN070) | 19,202,832 | - | - | 19,202,832 | - | 809,025,677 | - | - | - |
| 3/20/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (13) | - | (13) | - | - | 809,025,664 | - | (13) | (13) |
| 3/20/2007 | TRANS TO 1FN07040 (1FN070) | (13,286,808) | - | - | - | (13,286,808) | 795,738,856 | - | - | - |
| 3/22/2007 | W/H TAX DIV HD | (60,716) | - | (60,716) | - | - | 795,678,140 | - | (60,716) | (60,716) |
| 3/23/2007 | W/H TAX DIV BAC | (322,836) | - | (322,836) | - | - | 795,355,304 | - | (322,836) | (322,836) |
| 3/26/2007 | TRANS TO 1FN07040 (1FN070) | (34,788,568) | - | - | - | (34,788,568) | 760,566,736 | - | - | - |
| 3/27/2007 | TRANS FROM 1FN07040 (1FN070) | 4,058,892 | - | - | 4,058,892 | - | 764,625,628 | - | - | - |
| 3/28/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (16) | - | (16) | - | - | 764,625,612 | - | (16) | (16) |
| 3/28/2007 | TRANS FROM 1FN07040 (1FN070) | 3,840,672 | - | - | 3,840,672 | - | 768,466,284 | - | - | - |
| 3/30/2007 | W/H TAX DIV KO | (10,867) | - | (10,867) | - | - | 768,455,417 | - | (10,867) | (10,867) |
| 3/30/2007 | W/H TAX DIV PEP | (74,193) | - | (74,193) | - | - | 768,381,224 | - | (74,193) | (74,193) |
| 3/30/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | 768,381,221 | - | (3) | (3) |
| 4/2/2007 | W/H TAX DIV WMT | (82,325) | - | (82,325) | - | - | 768,298,896 | - | (82,325) | (82,325) |
| 4/2/2007 | W/H TAX DIV KO | (106,515) | - | (106,515) | - | - | 768,192,381 | - | (106,515) | (106,515) |
| 4/2/2007 | W/H TAX DIV MRK | (127,146) | - | (127,146) | - | - | 768,065,235 | - | (127,146) | (127,146) |
| 4/4/2007 | W/H TAX DIV HPQ | (33,750) | - | (33,750) | - | - | 768,031,485 | - | (33,750) | (33,750) |
| 4/10/2007 | W/H TAX DIV MO | (275,241) | - | (275,241) | - | - | 767,756,244 | - | (275,241) | (275,241) |
| 4/19/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (40) | - | (40) | - | - | 767,756,204 | - | (40) | (40) |
| 4/19/2007 | TRANS TO 1FN07040 (1FN070) | (1,232,280) | - | - | - | (1,232,280) | 766,523,924 | - | - | - |
| 4/20/2007 | TRANS TO 1FN07040 (1FN070) | (1,457,231) | - | - | - | (1,457,231) | 765,066,693 | - | - | - |
| 4/25/2007 | W/H TAX DIV GE | (374,352) | - | (374,352) | - | - | 764,692,341 | - | (374,352) | (374,352) |
| 4/25/2007 | TRANS FROM 1FN07040 (1FN070) | 12,475,662 | - | - | 12,475,662 | - | 777,168,003 | - | - | - |
| 4/30/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (11) | - | (11) | - | - | 777,167,991 | - | (11) | (11) |
| 5/4/2007 | W/H TAX DIV CVS | (9,834) | - | (9,834) | - | - | 777,158,157 | - | (9,834) | (9,834) |
| 5/15/2007 | W/H TAX DIV PG | (174,252) | - | (174,252) | - | - | 776,983,905 | - | (174,252) | (174,252) |
| 5/21/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (11) | - | (11) | - | - | 776,983,894 | - | (11) | (11) |
| 5/21/2007 | TRANS TO 1FN07040 (1FN070) | (40,951,590) | - | - | - | (40,951,590) | 736,032,304 | - | - | - |
| 5/23/2007 | W/H TAX DIV MER | (46,125) | - | (46,125) | - | - | 735,986,179 | - | (46,125) | (46,125) |
| 5/24/2007 | W/H TAX DIV GS | (13,498) | - | (13,498) | - | - | 735,972,681 | - | (13,498) | (13,498) |

MADC1345_00000743

**Exhibit D**

BLMIS ACCOUNT NO. 1FN045 - CITCO GLOBAL CUSTODY N V FBO FAIRFIELD SENTRY LTD

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | **Transaction Amount** | | | | | | **Preference** | | |
| | **Transaction** | **Reported in** | **Cash** | **Cash** | **Transfers of** | **Transfers of** | **Balance of** | **Period Initial** | **Two Year Initial** | **Six Year Initial** |
| **Date** | **Description** | **Customer Statement** | **Deposits** | **Withdrawals** | **Principal In** | **Principal Out** | **Principal** | **Transfers** | **Transfers** | **Transfers** |
| 5/25/2007 | W/H TAX DIV C | (411,175) | - | (411,175) | - | - | 735,561,506 | - | (411,175) | (411,175) |
| 5/31/2007 | FIDELITY SPARTAN US TREASURY MONEY MARKET | (4) | - | (4) | - | - | 735,561,501 | - | (4) | (4) |
| 6/1/2007 | W/H TAX DIV WFC | (147,601) | - | (147,601) | - | - | 735,413,900 | - | (147,601) | (147,601) |
| 6/1/2007 | W/H TAX DIV COP | (106,015) | - | (106,015) | - | - | 735,307,885 | - | (106,015) | (106,015) |
| 6/1/2007 | W/H TAX DIV BA | (42,578) | - | (42,578) | - | - | 735,265,307 | - | (42,578) | (42,578) |
| 6/1/2007 | W/H TAX DIV INTC | (102,135) | - | (102,135) | - | - | 735,163,172 | - | (102,135) | (102,135) |
| 6/4/2007 | W/H TAX DIV WMT | (83,758) | - | (83,758) | - | - | 735,079,414 | - | (83,758) | (83,758) |
| 6/5/2007 | W/H TAX DIV PFE | (322,732) | - | (322,732) | - | - | 734,756,683 | - | (322,732) | (322,732) |
| 6/5/2007 | W/H TAX DIV UPS | (67,651) | - | (67,651) | - | - | 734,689,032 | - | (67,651) | (67,651) |
| 6/6/2007 | W/H TAX DIV TYC | (31,201) | - | (31,201) | - | - | 734,657,831 | - | | |
| 6/11/2007 | W/H TAX DIV IBM | (93,715) | - | (93,715) | - | - | 734,564,116 | - | (93,715) | (93,715) |
| 6/11/2007 | W/H TAX DIV UTX | (42,684) | - | (42,684) | - | - | 734,521,431 | - | (42,684) | (42,684) |
| 6/11/2007 | W/H TAX DIV CVX | (195,338) | - | (195,338) | - | - | 734,326,094 | - | (195,338) | (195,338) |
| 6/11/2007 | W/H TAX DIV XOM | (310,877) | - | (310,877) | - | - | 734,015,216 | - | (310,877) | (310,877) |
| 6/12/2007 | W/H TAX DIV MMM | (56,229) | - | (56,229) | - | - | 733,958,987 | - | (56,229) | (56,229) |
| 6/12/2007 | W/H TAX DIV JNJ | (186,512) | - | (186,512) | - | - | 733,772,475 | - | (186,512) | (186,512) |
| 6/14/2007 | W/H TAX DIV MSFT | (135,680) | - | (135,680) | - | - | 733,636,796 | - | (135,680) | (135,680) |
| 6/15/2007 | W/H TAX DIV TWX | (33,268) | - | (33,268) | - | - | 733,603,528 | - | (33,268) | (33,268) |
| 6/15/2007 | W/H TAX DIV AIG | (67,651) | - | (67,651) | - | - | 733,535,877 | - | (67,651) | (67,651) |
| 6/15/2007 | W/H TAX DIV WB | (164,002) | - | (164,002) | - | - | 733,371,876 | - | (164,002) | (164,002) |
| 6/15/2007 | FIDELITY SPARTAN US TREASURY MONEY MARKET | (3) | - | (3) | - | - | 733,371,872 | - | (3) | (3) |
| 6/15/2007 | TRANS TO 1FN07040 *(1FN070)* | (5,076,240) | - | - | - | (5,076,240) | 728,295,632 | - | - | - |
| 6/21/2007 | W/H TAX DIV HD | (72,483) | - | (72,483) | - | - | 728,223,149 | - | (72,483) | (72,483) |
| 6/21/2007 | TRANS TO 1FN07040 *(1FN070)* | (16,358,454) | - | - | - | (16,358,454) | 711,864,695 | - | - | - |
| 6/21/2007 | TRANS FROM 1FN07040 *(1FN070)* | 16,358,454 | - | - | - | - | 711,864,695 | - | - | - |
| 6/21/2007 | CXL TRANS FR 1FN07040 *(1FN070)* | (16,358,454) | - | - | - | - | 711,864,695 | - | - | - |
| 6/22/2007 | W/H TAX DIV BAC | (393,604) | - | (393,604) | - | - | 711,471,091 | - | (393,604) | (393,604) |
| 6/22/2007 | TRANS TO 1FN07040 *(1FN070)* | (11,264,616) | - | - | - | (11,264,616) | 700,206,475 | - | - | - |
| 6/25/2007 | TRANS TO 1FN07040 *(1FN070)* | (15,109,680) | - | - | - | (15,109,680) | 685,096,795 | - | - | - |
| 6/29/2007 | FIDELITY SPARTAN US TREASURY MONEY MARKET | (17) | - | (17) | - | - | 685,096,778 | - | (17) | (17) |
| 6/29/2007 | W/H TAX DIV S | (11,348) | - | (11,348) | - | - | 685,085,430 | - | (11,348) | (11,348) |
| 6/29/2007 | W/H TAX DIV PEP | (96,965) | - | (96,965) | - | - | 684,988,465 | - | (96,965) | (96,965) |
| 7/2/2007 | W/H TAX DIV KO | (106,297) | - | (106,297) | - | - | 684,882,168 | - | (106,297) | (106,297) |
| 7/2/2007 | W/H TAX DIV MRK | (127,980) | - | (127,980) | - | - | 684,754,189 | - | (127,980) | (127,980) |
| 7/5/2007 | W/H TAX DIV HPQ | (33,972) | - | (33,972) | - | - | 684,720,217 | - | (33,972) | (33,972) |
| 7/10/2007 | W/H TAX DIV MO | (225,391) | - | (225,391) | - | - | 684,494,826 | - | (225,391) | (225,391) |
| 7/17/2007 | CXL W/H TAX DIV TYC | 31,201 | - | 31,201 | - | - | 684,526,027 | - | - | - |
| 7/17/2007 | FIDELITY SPARTAN US TREASURY MONEY MARKET | (21) | - | (21) | - | - | 684,526,007 | - | (21) | (21) |
| 8/6/2007 | FIDELITY SPARTAN US TREASURY MONEY MARKET | (27) | - | (27) | - | - | 684,525,980 | - | (27) | (27) |
| 8/6/2007 | TRANS TO 1FN07040 *(1FN070)* | (5,588,112) | - | - | - | (5,588,112) | 678,937,868 | - | - | - |
| 8/21/2007 | TRANS FROM 1FN07040 *(1FN070)* | 46,151,464 | - | - | 46,151,464 | - | 725,089,332 | - | - | - |
| 8/24/2007 | W/H TAX DIV C | (170,140) | - | (170,140) | - | - | 724,919,192 | - | (170,140) | (170,140) |
| 9/4/2007 | W/H TAX DIV WMT | (34,004) | - | (34,004) | - | - | 724,885,188 | - | (34,004) | (34,004) |
| 9/4/2007 | W/H TAX DIV WFC | (66,344) | - | (66,344) | - | - | 724,818,844 | - | (66,344) | (66,344) |
| 9/4/2007 | W/H TAX DIV INTC | (42,134) | - | (42,134) | - | - | 724,776,710 | - | (42,134) | (42,134) |
| 9/5/2007 | W/H TAX DIV PFE | (131,023) | - | (131,023) | - | - | 724,645,686 | - | (131,023) | (131,023) |
| 9/7/2007 | W/H TAX DIV BA | (16,645) | - | (16,645) | - | - | 724,629,041 | - | (16,645) | (16,645) |
| 9/10/2007 | W/H TAX DIV CVX | (79,304) | - | (79,304) | - | - | 724,549,737 | - | (79,304) | (79,304) |
| 9/10/2007 | W/H TAX DIV IBM | (35,669) | - | (35,669) | - | - | 724,514,069 | - | (35,669) | (35,669) |
| 9/10/2007 | W/H TAX DIV UTX | (20,926) | - | (20,926) | - | - | 724,493,143 | - | (20,926) | (20,926) |
| 9/10/2007 | W/H TAX DIV XOM | (126,921) | - | (126,921) | - | - | 724,366,221 | - | (126,921) | (126,921) |
| 9/13/2007 | W/H TAX DIV MSFT | (54,098) | - | (54,098) | - | - | 724,312,124 | - | (54,098) | (54,098) |
| 9/14/2007 | FIDELITY SPARTAN US TREASURY MONEY MARKET | (61) | - | (61) | - | - | 724,312,063 | - | (61) | (61) |
| 9/14/2007 | TRANS FROM 1FN07040 *(1FN070)* | 4,300,764 | - | - | 4,300,764 | - | 728,612,827 | - | - | - |
| 9/17/2007 | TRANS TO 1FN07040 *(1FN070)* | (2,982,934) | - | - | - | (2,982,934) | 725,629,893 | - | - | - |
| 9/18/2007 | FIDELITY SPARTAN US TREASURY MONEY MARKET | (1) | - | (1) | - | - | 725,629,892 | - | (1) | (1) |
| 9/18/2007 | TRANS FROM 1FN07040 *(1FN070)* | 3,313,760 | - | - | 3,313,760 | - | 728,943,652 | - | - | - |
| 9/24/2007 | TRANS TO 1FN07040 *(1FN070)* | (43,058,543) | - | - | - | (43,058,543) | 685,885,109 | - | - | - |
| 9/25/2007 | TRANS TO 1FN07040 *(1FN070)* | (30,822,432) | - | - | - | (30,822,432) | 655,062,677 | - | - | - |
| 9/26/2007 | FIDELITY SPARTAN US TREASURY MONEY MARKET | (12) | - | (12) | - | - | 655,062,664 | - | (12) | (12) |
| 9/26/2007 | TRANS TO 1FN07040 *(1FN070)* | (29,312,521) | - | - | - | (29,312,521) | 625,750,143 | - | - | - |
| 10/1/2007 | W/H TAX DIV KO | (40,405) | - | (40,405) | - | - | 625,709,739 | - | (40,405) | (40,405) |
| 10/3/2007 | CHECK WIRE | (95,000,000) | - | (95,000,000) | - | - | 530,709,739 | - | (95,000,000) | (95,000,000) |
| 10/3/2007 | FIDELITY SPARTAN US TREASURY MONEY MARKET | (12) | - | (12) | - | - | 530,709,726 | - | (12) | (12) |
| 10/10/2007 | W/H TAX DIV MO | (93,372) | - | (93,372) | - | - | 530,616,355 | - | (93,372) | (93,372) |
| 10/25/2007 | W/H TAX DIV GE | (246,583) | - | (246,583) | - | - | 530,369,772 | - | (246,583) | (246,583) |
| 10/31/2007 | FIDELITY SPARTAN US TREASURY MONEY MARKET | (15) | - | (15) | - | - | 530,369,757 | - | (15) | (15) |
| 10/31/2007 | TRANS FROM 1FN07040 *(1FN070)* | 464,170 | - | - | 464,170 | - | 530,833,927 | - | - | - |

MADC1345_00000744

**BLMIS ACCOUNT NO. 1FN045 - CITCO GLOBAL CUSTODY N V FBO FAIRFIELD SENTRY LTD**

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 Preference Period Initial Transfers | Column 10 Two Year Initial Transfers | Column 11 Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/6/2007 | CHECK WIRE | 110,000,000 | 110,000,000 | - | - | - | 640,833,927 | - | - | - |
| 11/7/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (11) | - | (11) | - | - | 640,833,915 | - | (11) | (11) |
| 11/7/2007 | TRANS TO 1FN07040 (1FN070) | (6,241,865) | - | - | - | (6,241,865) | 634,592,050 | - | - | - |
| 11/8/2007 | TRANS FROM 1FN07040 (1FN070) | 20,753,285 | - | - | 20,753,285 | - | 655,345,335 | - | - | - |
| 11/13/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (16) | - | (16) | - | - | 655,345,319 | - | (16) | (16) |
| 11/15/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (6) | - | (6) | - | - | 655,345,314 | - | (6) | (6) |
| 11/15/2007 | TRANS TO 1FN07040 (1FN070) | (5,471,788) | - | - | - | (5,471,788) | 649,873,526 | - | - | - |
| 11/21/2007 | W/H TAX DIV MER | (12,826) | - | (12,826) | - | - | 649,860,700 | - | (12,826) | (12,826) |
| 11/21/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (4) | - | (4) | - | - | 649,860,696 | - | (4) | (4) |
| 11/21/2007 | W/H TAX DIV S | (108,836) | - | (108,836) | - | - | 649,751,860 | - | (108,836) | (108,836) |
| 11/21/2007 | TRANS FROM 1FN07040 (1FN070) | 5,308,646 | - | - | 5,308,646 | - | 655,060,506 | - | - | - |
| 11/29/2007 | TRANS TO 1FN07040 (1FN070) | (24,932,895) | - | - | - | (24,932,895) | 630,127,611 | - | - | - |
| 11/30/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (12) | - | (12) | - | - | 630,127,599 | - | (12) | (12) |
| 11/30/2007 | TRANS FROM 1FN07040 (1FN070) | 80,488,599 | - | - | 80,488,599 | - | 710,616,198 | - | - | - |
| 12/3/2007 | W/H TAX DIV MCD | (109,623) | - | (109,623) | - | - | 710,506,575 | - | (109,623) | (109,623) |
| 12/3/2007 | W/H TAX DIV COP | (27,044) | - | (27,044) | - | - | 710,479,531 | - | (27,044) | (27,044) |
| 12/10/2007 | W/H TAX DIV EXC | (17,315) | - | (17,315) | - | - | 710,462,216 | - | (17,315) | (17,315) |
| 12/10/2007 | W/H TAX DIV CVX | (74,993) | - | (74,993) | - | - | 710,387,223 | - | (74,993) | (74,993) |
| 12/10/2007 | W/H TAX DIV UTX | (19,788) | - | (19,788) | - | - | 710,367,434 | - | (19,788) | (19,788) |
| 12/11/2007 | W/H TAX DIV JNJ | (141,810) | - | (141,810) | - | - | 710,225,625 | - | (141,810) | (141,810) |
| 12/11/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (27) | - | (27) | - | - | 710,225,597 | - | (27) | (27) |
| 12/11/2007 | TRANS TO 1FN07040 (1FN070) | (1,733,394) | - | - | - | (1,733,394) | 708,492,203 | - | - | - |
| 12/11/2007 | TRANS TO 1FN07040 (1FN070) | 1,733,394 | - | - | - | - | 708,492,203 | - | - | - |
| 12/11/2007 | CANCEL TRANS TO 1FN07040 (1FN070) | (1,733,394) | - | - | - | - | 708,492,203 | - | - | - |
| 12/12/2007 | W/H TAX DIV MMM | (42,328) | - | (42,328) | - | - | 708,449,876 | - | (42,328) | (42,328) |
| 12/13/2007 | W/H TAX DIV MSFT | (54,418) | - | (54,418) | - | - | 708,395,457 | - | (54,418) | (54,418) |
| 12/20/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 708,395,456 | - | (2) | (2) |
| 12/20/2007 | TRANS FROM 1FN07040 (1FN070) | 12,548,796 | - | - | 12,548,796 | - | 720,944,252 | - | - | - |
| 12/31/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (14) | - | (14) | - | - | 720,944,238 | - | (14) | (14) |
| 1/2/2008 | W/H TAX DIV WMT | (20,947) | - | (20,947) | - | - | 720,923,291 | - | (20,947) | (20,947) |
| 1/2/2008 | W/H TAX DIV HPQ | (8,203) | - | (8,203) | - | - | 720,915,088 | - | (8,203) | (8,203) |
| 1/3/2008 | W/H TAX DIV UPS | (25,972) | - | (25,972) | - | - | 720,889,115 | - | (25,972) | (25,972) |
| 1/11/2008 | CHECK WIRE | (70,000,000) | - | (70,000,000) | - | - | 650,889,115 | - | (70,000,000) | (70,000,000) |
| 1/28/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (31) | - | (31) | - | - | 650,889,085 | - | (31) | (31) |
| 1/28/2008 | TRANS TO 1FN07040 (1FN070) | (7,061,062) | - | - | - | (7,061,062) | 643,828,023 | - | - | - |
| 2/20/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (11) | - | (11) | - | - | 643,828,012 | - | (11) | (11) |
| 2/20/2008 | TRANS TO 1FN07040 (1FN070) | (32,780,162) | - | - | - | (32,780,162) | 611,047,850 | - | - | - |
| 2/21/2008 | TRANS FROM 1FN07040 (1FN070) | 7,201,348 | - | - | 7,201,348 | - | 618,249,198 | - | - | - |
| 2/22/2008 | W/H TAX DIV C | (121,207) | - | (121,207) | - | - | 618,127,991 | - | (121,207) | (121,207) |
| 2/28/2008 | W/H TAX DIV GS | (9,820) | - | (9,820) | - | - | 618,118,171 | - | (9,820) | (9,820) |
| 3/3/2008 | W/H TAX DIV INTC | (56,342) | - | (56,342) | - | - | 618,061,828 | - | (56,342) | (56,342) |
| 3/3/2008 | W/H TAX DIV WFC | (80,454) | - | (80,454) | - | - | 617,981,374 | - | (80,454) | (80,454) |
| 3/3/2008 | W/H TAX DIV COP | (56,044) | - | (56,044) | - | - | 617,925,330 | - | (56,044) | (56,044) |
| 3/4/2008 | W/H TAX DIV PFE | (161,609) | - | (161,609) | - | - | 617,763,721 | - | (161,609) | (161,609) |
| 3/4/2008 | W/H TAX DIV UPS | (34,721) | - | (34,721) | - | - | 617,729,000 | - | (34,721) | (34,721) |
| 3/5/2008 | W/H TAX DIV MER | (22,095) | - | (22,095) | - | - | 617,706,905 | - | (22,095) | (22,095) |
| 3/7/2008 | W/H TAX DIV BA | (22,446) | - | (22,446) | - | - | 617,684,459 | - | (22,446) | (22,446) |
| 3/10/2008 | W/H TAX DIV UTX | (24,690) | - | (24,690) | - | - | 617,659,769 | - | (24,690) | (24,690) |
| 3/10/2008 | W/H TAX DIV IBM | (42,086) | - | (42,086) | - | - | 617,617,683 | - | (42,086) | (42,086) |
| 3/10/2008 | W/H TAX DIV EXC | (24,550) | - | (24,550) | - | - | 617,593,133 | - | (24,550) | (24,550) |
| 3/10/2008 | W/H TAX DIV CVX | (93,571) | - | (93,571) | - | - | 617,499,562 | - | (93,571) | (93,571) |
| 3/10/2008 | W/H TAX DIV XOM | (147,300) | - | (147,300) | - | - | 617,352,262 | - | (147,300) | (147,300) |
| 3/11/2008 | W/H TAX DIV JNJ | (90,239) | - | (90,239) | - | - | 617,262,023 | - | (90,239) | (90,239) |
| 3/12/2008 | W/H TAX DIV MMM | (28,057) | - | (28,057) | - | - | 617,233,966 | - | (28,057) | (28,057) |
| 3/13/2008 | W/H TAX DIV MSFT | (67,127) | - | (67,127) | - | - | 617,166,839 | - | (67,127) | (67,127) |
| 3/17/2008 | W/H TAX DIV MCD | (34,195) | - | (34,195) | - | - | 617,132,644 | - | (34,195) | (34,195) |
| 3/17/2008 | W/H TAX DIV WMT | (17,097) | - | (17,097) | - | - | 617,115,547 | - | (17,097) | (17,097) |
| 3/17/2008 | W/H TAX DIV T | (98,761) | - | (98,761) | - | - | 617,016,785 | - | (98,761) | (98,761) |
| 3/17/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (22) | - | (22) | - | - | 617,016,764 | - | (22) | (22) |
| 3/17/2008 | TRANS FROM 1FN07040 (1FN070) | 29,179,488 | - | - | 29,179,488 | - | 646,196,252 | - | - | - |
| 3/19/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 646,196,251 | - | (1) | (1) |
| 3/24/2008 | W/H TAX DIV AIG | (39,280) | - | (39,280) | - | - | 646,156,971 | - | (39,280) | (39,280) |
| 3/27/2008 | W/H TAX DIV HD | (28,408) | - | (28,408) | - | - | 646,128,563 | - | (28,408) | (28,408) |
| 3/28/2008 | W/H TAX DIV BAC | (215,479) | - | (215,479) | - | - | 645,913,084 | - | (215,479) | (215,479) |
| 3/31/2008 | W/H TAX DIV PEP | (44,716) | - | (44,716) | - | - | 645,868,368 | - | (44,716) | (44,716) |
| 4/1/2008 | W/H TAX DIV MRK | (63,970) | - | (63,970) | - | - | 645,804,397 | - | (63,970) | (63,970) |
| 4/1/2008 | W/H TAX DIV KO | (58,640) | - | (58,640) | - | - | 645,745,758 | - | (58,640) | (58,640) |
| 4/2/2008 | W/H TAX DIV HPQ | (15,712) | - | (15,712) | - | - | 645,730,046 | - | (15,712) | (15,712) |

MADC1345_00000745

BLMIS ACCOUNT NO. 1FN045 - CITCO GLOBAL CUSTODY NV FBO FAIRFIELD SENTRY LTD

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | Preference Period Initial Transfers | Two Year Initial Transfers | Six Year Initial Transfers |
| 4/4/2008 | W/H TAX DIV KFT | (32,196) | - | (32,196) | - | - | 645,697,850 | - | (32,196) | (32,196) |
| 4/4/2008 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 645,697,848 | - | (2) | (2) |
| 4/4/2008 | TRANS TO 1FN07040 (1FN070) | (18,207,627) | - | - | - | (18,207,627) | 627,490,221 | - | - | - |
| 4/7/2008 | W/H TAX DIV WMT | (41,647) | - | (41,647) | - | - | 627,448,574 | - | (41,647) | (41,647) |
| 4/7/2008 | TRANS FROM 1FN07040 (1FN070) | 35,939,913 | - | - | 35,939,913 | - | 663,388,487 | - | - | - |
| 4/23/2008 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | 663,388,484 | - | (3) | (3) |
| 4/23/2008 | TRANS TO 1FN07040 (1FN070) | (82,668) | - | - | - | (82,668) | 663,305,816 | - | - | - |
| 4/25/2008 | W/H TAX DIV GE | (237,013) | - | (237,013) | - | - | 663,068,802 | - | (237,013) | (237,013) |
| 4/25/2008 | W/H TAX DIV MDT | (9,300) | - | (9,300) | - | - | 663,059,502 | - | (9,300) | (9,300) |
| 4/30/2008 | W/H TAX DIV JPM | (84,817) | - | (84,817) | - | - | 662,974,685 | - | (84,817) | (84,817) |
| 4/30/2008 | W/H TAX DIV MS | (18,414) | - | (18,414) | - | - | 662,956,271 | - | (18,414) | (18,414) |
| 5/1/2008 | W/H TAX DIV VZ | (82,647) | - | (82,647) | - | - | 662,873,623 | - | (82,647) | (82,647) |
| 5/1/2008 | W/H TAX DIV T | (161,203) | - | (161,203) | - | - | 662,712,421 | - | (161,203) | (161,203) |
| 5/2/2008 | W/H TAX DIV CVS | (5,952) | - | (5,952) | - | - | 662,706,468 | - | (5,952) | (5,952) |
| 5/2/2008 | W/H TAX DIV BK | (17,856) | - | (17,856) | - | - | 662,688,612 | - | (17,856) | (17,856) |
| 5/9/2008 | W/H TAX DIV AXP | (13,392) | - | (13,392) | - | - | 662,675,220 | - | (13,392) | (13,392) |
| 5/9/2008 | TRANS TO 1FN07040 (1FN070) | (895,700) | - | - | - | (895,700) | 661,779,520 | - | - | - |
| 5/15/2008 | W/H TAX DIV ABT | (37,945) | - | (37,945) | - | - | 661,741,575 | - | (37,945) | (37,945) |
| 5/15/2008 | W/H TAX DIV PG | (84,321) | - | (84,321) | - | - | 661,657,254 | - | (84,321) | (84,321) |
| 5/16/2008 | TRANS TO 1FN07040 (1FN070) | (21,927,687) | - | - | - | (21,927,687) | 639,729,567 | - | - | - |
| 5/19/2008 | TRANS FROM 1FN07040 (1FN070) | 12,325,586 | - | - | 12,325,586 | - | 652,055,153 | - | - | - |
| 5/20/2008 | W/H TAX DIV CAT | (15,624) | - | (15,624) | - | - | 652,039,529 | - | (15,624) | (15,624) |
| 5/23/2008 | W/H TAX DIV C | (107,138) | - | (107,138) | - | - | 651,932,391 | - | (107,138) | (107,138) |
| 5/27/2008 | TRANS TO 1FN07040 (1FN070) | (18,061,096) | - | - | - | (18,061,096) | 633,871,295 | - | - | - |
| 5/28/2008 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (16) | - | (16) | - | - | 633,871,279 | - | (16) | (16) |
| 5/28/2008 | TRANS FROM 1FN07040 (1FN070) | 57,696,344 | - | - | 57,696,344 | - | 691,567,623 | - | - | - |
| 5/29/2008 | W/H TAX DIV GS | (8,680) | - | (8,680) | - | - | 691,558,943 | - | (8,680) | (8,680) |
| 6/2/2008 | W/H TAX DIV COP | (30,881) | - | (30,881) | - | - | 691,528,062 | - | (30,881) | (30,881) |
| 6/2/2008 | W/H TAX DIV WFC | (124,940) | - | (124,940) | - | - | 691,403,121 | - | (124,940) | (124,940) |
| 6/2/2008 | W/H TAX DIV WMT | (70,195) | - | (70,195) | - | - | 691,332,926 | - | (70,195) | (70,195) |
| 6/2/2008 | W/H TAX DIV INTC | (54,685) | - | (54,685) | - | - | 691,278,241 | - | (54,685) | (54,685) |
| 6/3/2008 | W/H TAX DIV UPS | (56,270) | - | (56,270) | - | - | 691,221,972 | - | (56,270) | (56,270) |
| 6/3/2008 | W/H TAX DIV PFE | (269,185) | - | (269,185) | - | - | 690,952,787 | - | (269,185) | (269,185) |
| 6/6/2008 | W/H TAX DIV BA | (36,376) | - | (36,376) | - | - | 690,916,411 | - | (36,376) | (36,376) |
| 6/10/2008 | W/H TAX DIV XOM | (266,208) | - | (266,208) | - | - | 690,650,202 | - | (266,208) | (266,208) |
| 6/10/2008 | W/H TAX DIV CVX | (169,946) | - | (169,946) | - | - | 690,480,257 | - | (169,946) | (169,946) |
| 6/10/2008 | W/H TAX DIV EXC | (39,787) | - | (39,787) | - | - | 690,440,470 | - | (39,787) | (39,787) |
| 6/10/2008 | W/H TAX DIV JNJ | (55,115) | - | (55,115) | - | - | 690,385,355 | - | (55,115) | (55,115) |
| 6/10/2008 | W/H TAX DIV IBM | (85,257) | - | (85,257) | - | - | 690,300,098 | - | (85,257) | (85,257) |
| 6/12/2008 | W/H TAX DIV UTX | (40,014) | - | (40,014) | - | - | 690,260,084 | - | (40,014) | (40,014) |
| 6/12/2008 | W/H TAX DIV MMM | (45,470) | - | (45,470) | - | - | 690,214,614 | - | (45,470) | (45,470) |
| 6/12/2008 | W/H TAX DIV MSFT | (108,788) | - | (108,788) | - | - | 690,105,826 | - | (108,788) | (108,788) |
| 7/10/2008 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (21) | - | (21) | - | - | 690,105,805 | - | (21) | (21) |
| 7/10/2008 | CHECK WIRE | (20,000,000) | - | (20,000,000) | - | - | 670,105,805 | - | (20,000,000) | (20,000,000) |
| 7/21/2008 | TRANS FROM 1FN07040 (1FN070) | (2) | - | (2) | - | - | 670,105,803 | - | (2) | (2) |
| 7/21/2008 | TRANS TO 1FN07040 (1FN070) | (13,243,076) | - | - | - | (13,243,076) | 656,862,727 | - | - | - |
| 7/22/2008 | TRANS FROM 1FN07040 (1FN070) | 31,073,284 | - | - | 31,073,284 | - | 687,936,011 | - | - | - |
| 7/23/2008 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 687,936,010 | - | (0) | (0) |
| 7/23/2008 | TRANS TO 1FN07040 (1FN070) | (38,822,168) | - | - | - | (38,822,168) | 649,113,842 | - | - | - |
| 8/1/2008 | CHECK WIRE | 80,000,000 | 80,000,000 | - | - | - | 729,113,842 | - | - | - |
| 8/1/2008 | W/H TAX DIV CVS | (8,583) | - | (8,583) | - | - | 729,105,259 | - | (8,583) | (8,583) |
| 8/8/2008 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (4) | - | (4) | - | - | 729,105,255 | - | (4) | (4) |
| 8/8/2008 | TRANS TO 1FN07040 (1FN070) | (20,758,716) | - | - | - | (20,758,716) | 708,346,539 | - | - | - |
| 8/11/2008 | TRANS FROM 1FN07040 (1FN070) | 38,848,084 | - | - | 38,848,084 | - | 747,194,623 | - | - | - |
| 8/13/2008 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 747,194,623 | - | (0) | (0) |
| 8/13/2008 | TRANS TO 1FN07040 (1FN070) | (3,869,736) | - | - | - | (3,869,736) | 743,324,887 | - | - | - |
| 8/18/2008 | TRANS TO 1FN07040 (1FN070) | (25,981,007) | - | - | - | (25,981,007) | 717,343,880 | - | - | - |
| 8/20/2008 | W/H TAX DIV CAT | (22,858) | - | (22,858) | - | - | 717,321,022 | - | (22,858) | (22,858) |
| 8/22/2008 | W/H TAX DIV C | (146,788) | - | (146,788) | - | - | 717,174,234 | - | (146,788) | (146,788) |
| 8/28/2008 | W/H TAX DIV GS | (10,885) | - | (10,885) | - | - | 717,163,349 | - | (10,885) | (10,885) |
| 9/4/2008 | CHECK WIRE | (120,000,000) | - | (120,000,000) | - | - | 597,163,349 | - | (120,000,000) | (120,000,000) |
| 9/10/2008 | TRANS TO 1FN07040 (1FN070) | (4,061,814) | - | - | - | (4,061,814) | 593,101,535 | - | - | - |
| 9/11/2008 | TRANS FROM 1FN07040 (1FN070) | 19,504,371 | - | - | 19,504,371 | - | 612,605,906 | - | - | - |
| 9/15/2008 | TRANS FROM 1FN07040 (1FN070) | 57,531,648 | - | - | 57,531,648 | - | 670,137,554 | - | - | - |
| 9/19/2008 | TRANS FROM 1FN07040 (1FN070) | 57,304,999 | - | - | 57,304,999 | - | 727,442,553 | - | - | - |
| 10/2/2008 | W/H TAX DIV PEP | (83,056) | - | (83,056) | - | - | 727,359,497 | (83,056) | (83,056) | (83,056) |
| 10/2/2008 | W/H TAX DIV CVX | (169,442) | - | (169,442) | - | - | 727,190,055 | (169,442) | (169,442) | (169,442) |
| 10/2/2008 | W/H TAX DIV JNJ | (162,217) | - | (162,217) | - | - | 727,027,838 | (162,217) | (162,217) | (162,217) |

MADC1345_00000746

Exhibit D

**BLMIS ACCOUNT NO. 1FN045 - CITI... [illegible] ... FBO FAIRFIELD SENTRY LTD**

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | Preference Period Initial Transfers | Two Year Initial Transfers | Six Year Initial Transfers |
| 10/2/2008 | W/H TAX DIV MMM | (45,983) | - | (45,983) | - | - | 726,981,855 | (45,983) | (45,983) | (45,983) |
| 10/2/2008 | W/H TAX DIV EXC | (40,235) | - | (40,235) | - | - | 726,941,620 | (40,235) | (40,235) | (40,235) |
| 10/2/2008 | W/H TAX DIV UPS | (56,904) | - | (56,904) | - | - | 726,884,716 | (56,904) | (56,904) | (56,904) |
| 10/2/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 726,884,715 | (1) | (1) | (1) |
| 10/2/2008 | W/H TAX DIV BA | (24,879) | - | (24,879) | - | - | 726,859,836 | (24,879) | (24,879) | (24,879) |
| 10/2/2008 | W/H TAX DIV IBM | (58,311) | - | (58,311) | - | - | 726,801,525 | (58,311) | (58,311) | (58,311) |
| 10/2/2008 | W/H TAX DIV COP | (62,121) | - | (62,121) | - | - | 726,739,404 | (62,121) | (62,121) | (62,121) |
| 10/2/2008 | W/H TAX DIV UTX | (40,465) | - | (40,465) | - | - | 726,698,939 | (40,465) | (40,465) | (40,465) |
| 10/2/2008 | W/H TAX DIV BUD | (23,013) | - | (23,013) | - | - | 726,675,926 | (23,013) | (23,013) | (23,013) |
| 10/2/2008 | W/H TAX DIV MSFT | (110,869) | - | (110,869) | - | - | 726,565,057 | (110,869) | (110,869) | (110,869) |
| 10/2/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 726,565,054 | (2) | (2) | (2) |
| 10/2/2008 | W/H TAX DIV WMT | (68,256) | - | (68,256) | - | - | 726,496,799 | (68,256) | (68,256) | (68,256) |
| 10/2/2008 | W/H TAX DIV MCD | (53,126) | - | (53,126) | - | - | 726,443,673 | (53,126) | (53,126) | (53,126) |
| 10/2/2008 | W/H TAX DIV BAC | (357,911) | - | (357,911) | - | - | 726,085,762 | (357,911) | (357,911) | (357,911) |
| 10/2/2008 | W/H TAX DIV QCOM | (10,716) | - | (10,716) | - | - | 726,075,046 | (10,716) | (10,716) | (10,716) |
| 10/2/2008 | W/H TAX DIV AIG | (74,161) | - | (74,161) | - | - | 726,000,885 | (74,161) | (74,161) | (74,161) |
| 10/2/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 726,000,883 | (1) | (1) | (1) |
| 10/2/2008 | W/H TAX DIV PFE | (184,107) | - | (184,107) | - | - | 725,816,776 | (184,107) | (184,107) | (184,107) |
| 10/2/2008 | W/H TAX DIV WFC | (81,946) | - | (81,946) | - | - | 725,734,830 | (81,946) | (81,946) | (81,946) |
| 10/2/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (5) | - | (5) | - | - | 725,734,825 | (5) | (5) | (5) |
| 10/2/2008 | W/H TAX DIV XOM | (265,212) | - | (265,212) | - | - | 725,469,613 | (265,212) | (265,212) | (265,212) |
| 10/2/2008 | W/H TAX DIV INTC | (67,485) | - | (67,485) | - | - | 725,402,128 | (67,485) | (67,485) | (67,485) |
| 10/2/2008 | W/H TAX DIV HD | (15,907) | - | (15,907) | - | - | 725,386,221 | (15,907) | (15,907) | (15,907) |
| 10/2/2008 | W/H TAX DIV TWX | (28,486) | - | (28,486) | - | - | 725,357,735 | (28,486) | (28,486) | (28,486) |
| 10/23/2008 | CHECK WIRE | (130,000,000) | - | (130,000,000) | - | - | 595,357,735 | (130,000,000) | (130,000,000) | (130,000,000) |
| 11/4/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 595,357,734 | (1) | (1) | (1) |
| 11/4/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 595,357,734 | (0) | (0) | (0) |
| 11/4/2008 | W/H TAX DIV HPQ | (24,533) | - | (24,533) | - | - | 595,333,201 | (24,533) | (24,533) | (24,533) |
| 11/4/2008 | W/H TAX DIV MRK | (100,472) | - | (100,472) | - | - | 595,232,729 | (100,472) | (100,472) | (100,472) |
| 11/4/2008 | W/H TAX DIV KO | (30,753) | - | (30,753) | - | - | 595,201,975 | (30,753) | (30,753) | (30,753) |
| 11/4/2008 | CHECK WIRE | (400,000,000) | - | (400,000,000) | - | - | 195,201,975 | (400,000,000) | (400,000,000) | (400,000,000) |
| 11/4/2008 | W/H TAX DIV BAX | (17,502) | - | (17,502) | - | - | 195,184,473 | (17,502) | (17,502) | (17,502) |
| 11/4/2008 | W/H TAX DIV MO | (18,311) | - | (18,311) | - | - | 195,166,162 | (18,311) | (18,311) | (18,311) |
| 11/4/2008 | W/H TAX DIV PM | (45,689) | - | (45,689) | - | - | 195,120,473 | (45,689) | (45,689) | (45,689) |
| 11/6/2008 | TRANS TO 1FN07040 *(1FN070)* | (582,032) | - | - | - | (582,032) | 194,538,441 | - | - | - |
| 11/7/2008 | TRANS FROM 1FN07040 *(1FN070)* | 14,981,670 | - | - | 14,981,670 | - | 209,520,111 | - | - | - |
| 11/10/2008 | TRANS TO 1FN07040 *(1FN070)* | (9,914,944) | - | - | - | (9,914,944) | 199,605,167 | - | - | - |
| 11/19/2008 | TRANS FROM 1FN07040 *(1FN070)* | 297,933,758 [1] | - | - | 296,621,825 | - | 496,226,992 | - | - | - |
| 11/25/2008 | TRANS FROM 1FN07040 *(1FN070)* | 11,458,744 [2] | - | - | - | - | 496,226,992 | - | - | - |
| 12/3/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 496,226,992 | (0) | (0) | (0) |
| 12/3/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 496,226,992 | (0) | (0) | (0) |
| 12/3/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 496,226,991 | (1) | (1) | (1) |
| 12/3/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 496,226,991 | (0) | (0) | (0) |
| 12/3/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 496,226,990 | (1) | (1) | (1) |
| 12/3/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 496,226,989 | (0) | (0) | (0) |
| | **Total:** | **$ 2,113,629,982** | **$ (1,624,139,760)** | **$ 2,368,197,938** | **$ (2,361,461,171)** | **$ 496,226,989** | | **$ (532,322,083)** | **$ (852,263,749)** | **$ (1,480,433,205)** |

[1] Although BLMIS statements reflect that a larger transfer was made into the account on this date, a portion of the "transferred" funds consisted of fictitious profits which were never achieved and thus could not have been transferred. Accordingly, only the principal remaining in the originating account was transferred into this account on this date.

[2] Although BLMIS statements reflect that funds were transferred into this account on this date, these funds consisted entirely of fictitious profits which were never achieved and thus no funds were actually transferred into the account on this date. Accordingly, the account balance has remained unchanged.

[3] Although BLMIS statements reflect that a larger transfer was made out of the account on this date, a portion of the "transferred" funds consisted of fictitious profits which were never achieved and thus could not have been transferred. Accordingly, only the principal remaining in the account was transferred out of the account on this date.

[4] Although BLMIS statements reflect that funds were transferred out of this account on this date, these funds consisted entirely of fictitious profits which were never achieved and thus no funds were actually transferred out of the account on this date. Accordingly, the account balance has remained unchanged.

MADC1345_00000747

BLMIS ACCOUNT NO. 1FN069 - FAIRFIELD SENTRY LIMITED C/O CITCO FUND SERVICES GREENWICH GROUP 55 EAST 52ND STREET 33RD FL

| | | Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | Preference Period Initial Transfers | Two Year Initial Transfers | Six Year Initial Transfers |
| | | 1/31/1995 | TRANS FROM 1FN01230 *(1FN012)* | 1,197,585 | - | - | 1,197,585 | - | 1,197,585 | - | - | - |
| | | 2/28/1995 | TRANS FROM 1FN01230 *(1FN012)* | 1,256,608 | - | - | 1,256,608 | - | 2,454,193 | - | - | - |
| | | 3/31/1995 | TRANS FROM 1FN01230 *(1FN012)* | 1,617,935 | - | - | 1,617,935 | - | 4,072,128 | - | - | - |
| | | 4/28/1995 | TRANS FROM 1FN01230 *(1FN012)* | 4,314,060 | - | - | 4,314,060 | - | 8,386,188 | - | - | - |
| | | 5/31/1995 | TRANS FROM 1FN01230 *(1FN012)* | 2,163,460 | - | - | 2,163,460 | - | 10,549,648 | - | - | - |
| | | 6/30/1995 | TRANS FROM 1FN01230 *(1FN012)* | 3,467,241 | - | - | 3,467,241 | - | 14,016,889 | - | - | - |
| | | 7/31/1995 | TRANS FROM 1FN012-30 *(1FN012)* | 1,094,562 | - | - | 1,094,562 | - | 15,111,451 | - | - | - |
| | | 8/28/1995 | TRANS TO 1FN01230 *(1FN012)* | (5,913) | - | - | - | (5,913) | 15,105,538 | - | - | - |
| | | 9/29/1995 | TRANS FROM 1FN01230 *(1FN012)* | 2,373,896 | - | - | 2,373,896 | - | 17,479,434 | - | - | - |
| | | 10/27/1995 | TRANS FROM 1FN01230 *(1FN012)* | 271,194 | - | - | 271,194 | - | 17,750,628 | - | - | - |
| | | 11/24/1995 | TRANS FROM 1FN01230 *(1FN012)* | 487,914 | - | - | 487,914 | - | 18,238,542 | - | - | - |
| | | 12/29/1995 | TRANS FROM 1FN01230 *(1FN012)* | 5,770,514 | - | - | 5,770,514 | - | 24,009,055 | - | - | - |
| | | 1/31/1996 | TRANS FROM 1FN01230 *(1FN012)* | 66,792 | - | - | 66,792 | - | 24,075,847 | - | - | - |
| | | 2/29/1996 | TRANS FROM 1FN01230 *(1FN012)* | 7,803,681 | - | - | 7,803,681 | - | 31,879,528 | - | - | - |
| | | 3/29/1996 | TRANS TO 1FN01230 *(1FN012)* | (1,851,654) | - | - | - | (1,851,654) | 30,027,875 | - | - | - |
| | | 4/30/1996 | TRANS TO 1FN01230 *(1FN012)* | (883,204) | - | - | - | (883,204) | 29,144,671 | - | - | - |
| | | 5/31/1996 | TRANS TO 1FN01230 *(1FN012)* | (1,795,328) | - | - | - | (1,795,328) | 27,349,343 | - | - | - |
| | | 6/28/1996 | TRANS TO 1FN01230 *(1FN012)* | (93,190) | - | - | - | (93,190) | 27,256,153 | - | - | - |
| | | 7/31/1996 | TRANS TO 1FN01230 *(1FN012)* | (8,597,785) | - | - | - | (8,597,785) | 18,658,369 | - | - | - |
| | | 8/30/1996 | TRANS FROM 1FN01230 *(1FN012)* | 5,922,892 | - | - | 5,922,892 | - | 24,581,261 | - | - | - |
| | | 9/30/1996 | TRANS FROM 1FN01230 *(1FN012)* | 4,241,880 | - | - | 4,241,880 | - | 28,823,141 | - | - | - |
| | | 10/31/1996 | TRANS FROM 1FN01230 *(1FN012)* | 1,019,940 | - | - | 1,019,940 | - | 29,843,081 | - | - | - |
| | | 11/29/1996 | TRANS FROM 1FN01230 *(1FN012)* | 3,469,645 | - | - | 3,469,645 | - | 33,312,726 | - | - | - |
| | | 12/31/1996 | TRANS FROM 1FN01230 *(1FN012)* | 606,404 | - | - | 606,404 | - | 33,919,130 | - | - | - |
| | | 1/31/1997 | TRANS FROM 1FN01230 *(1FN012)* | 4,329,623 | - | - | 4,329,623 | - | 38,248,753 | - | - | - |
| | | 2/28/1997 | TRANS FROM 1FN01230 *(1FN012)* | 3,442,160 | - | - | 3,442,160 | - | 41,690,912 | - | - | - |
| | | 3/31/1997 | TRANS TO 1FN01230 *(1FN012)* | (2,575,151) | - | - | - | (2,575,151) | 39,115,761 | - | - | - |
| | | 4/30/1997 | TRANS TO 1FN01230 *(1FN012)* | (10,483,139) | - | - | - | (10,483,139) | 28,632,623 | - | - | - |
| | | 5/30/1997 | TRANS FROM 1FN01230 *(1FN012)* | 3,868,028 | - | - | 3,868,028 | - | 32,500,651 | - | - | - |
| | | 6/30/1997 | TRANS FROM 1FN01230 *(1FN012)* | 4,530,779 | - | - | 4,530,779 | - | 37,031,430 | - | - | - |
| | | 7/31/1997 | TRANS FROM 1FN01230 *(1FN012)* | 7,291,554 | - | - | 7,291,554 | - | 44,322,984 | - | - | - |
| | | 8/29/1997 | TRANS TO 1FN01230 *(1FN012)* | (67,056) | - | - | - | (67,056) | 44,255,928 | - | - | - |
| | | 9/30/1997 | TRANS FROM 1FN01230 *(1FN012)* | 363,475 | - | - | 363,475 | - | 44,619,403 | - | - | - |
| | | 10/31/1997 | TRANS TO 1FN01230 *(1FN012)* | (1,865,080) | - | - | - | (1,865,080) | 42,754,323 | - | - | - |
| | | 11/28/1997 | TRANS FROM 1FN01230 *(1FN012)* | 5,861,410 | - | - | 5,861,410 | - | 48,615,733 | - | - | - |
| | | 12/31/1997 | TRANS TO 1FN01230 *(1FN012)* | (4,085,810) | - | - | - | (4,085,810) | 44,529,923 | - | - | - |
| | | 1/30/1998 | TRANS TO 1FN01230 *(1FN012)* | (1,767,892) | - | - | - | (1,767,892) | 42,762,031 | - | - | - |
| | | 2/27/1998 | TRANS FROM 1FN01230 *(1FN012)* | 24,537,558 | - | - | 24,537,558 | - | 67,299,590 | - | - | - |
| | | 3/31/1998 | TRANS FROM 1FN01230 *(1FN012)* | 4,469,534 | - | - | 4,469,534 | - | 71,769,123 | - | - | - |
| | | 4/30/1998 | TRANS FROM 1FN01230 *(1FN012)* | 16,781,901 | - | - | 16,781,901 | - | 88,551,024 | - | - | - |
| | | 5/27/1998 | TRANS TO 1FN01230 *(1FN012)* | (2,274,650) | - | - | - | (2,274,650) | 86,276,374 | - | - | - |
| | | 5/29/1998 | TRANS FROM 1FN01230 *(1FN012)* | 1,456 | - | - | 1,456 | - | 86,277,830 | - | - | - |
| | | 6/29/1998 | TRANS TO 1FN01230 *(1FN012)* | (7,877,200) | - | - | - | (7,877,200) | 78,400,630 | - | - | - |
| | | 7/29/1998 | TRANS FROM 1FN01230 *(1FN012)* | 49,971,792 | - | - | 49,971,792 | - | 128,372,422 | - | - | - |
| | | 8/31/1998 | TRANS FROM 1FN01230 *(1FN012)* | 1,478,466 | - | - | 1,478,466 | - | 129,850,888 | - | - | - |
| | | 9/30/1998 | TRANS TO 1FN01230 *(1FN012)* | (68,798,924) | - | - | - | (68,798,924) | 61,051,964 | - | - | - |
| | | 11/30/1998 | TRANS FROM 1FN01230 *(1FN012)* | 45,246,050 | - | - | 45,246,050 | - | 106,298,014 | - | - | - |
| | | 12/31/1998 | TRANS TO 1FN01230 *(1FN012)* | (5,538,063) | - | - | - | (5,538,063) | 100,759,951 | - | - | - |
| | | 1/29/1999 | TRANS FROM 1FN01230 *(1FN012)* | 124,848 | - | - | 124,848 | - | 100,884,799 | - | - | - |
| | | 2/24/1999 | TRANS TO 1FN01230 *(1FN012)* | (10,177,298) | - | - | - | (10,177,298) | 90,707,501 | - | - | - |
| | | 3/8/1999 | TRANS TO 1FN01230 *(1FN012)* | (359,492) | - | - | - | (359,492) | 90,348,009 | - | - | - |
| | | 3/10/1999 | TRANS FROM 1FN01230 *(1FN012)* | 2,093,212 | - | - | 2,093,212 | - | 92,441,221 | - | - | - |
| | | 3/11/1999 | TRANS TO 1FN01230 *(1FN012)* | (2,057,094) | - | - | - | (2,057,094) | 90,384,127 | - | - | - |
| | | 3/26/1999 | TRANS FROM 1FN01230 *(1FN012)* | 26,060,708 | - | - | 26,060,708 | - | 116,444,835 | - | - | - |
| | | 4/22/1999 | TRANS FROM 1FN01230 *(1FN012)* | 475,508 | - | - | 475,508 | - | 116,920,343 | - | - | - |
| | | 4/30/1999 | TRANS FROM 1FN01230 *(1FN012)* | 3,067,262 | - | - | 3,067,262 | - | 119,987,605 | - | - | - |
| | | 5/7/1999 | TRANS TO 1FN01230 *(1FN012)* | (5,532,468) | - | - | - | (5,532,468) | 114,455,137 | - | - | - |
| | | 5/13/1999 | TRANS FROM 1FN01230 *(1FN012)* | 887,476 | - | - | 887,476 | - | 115,342,613 | - | - | - |
| | | 5/26/1999 | TRANS TO 1FN01230 *(1FN012)* | (4,377,813) | - | - | - | (4,377,813) | 110,964,800 | - | - | - |
| | | 6/14/1999 | CHECK WIRE | 15,000,000 | 15,000,000 | - | - | - | 125,964,800 | - | - | - |

MADC1345_00000748

**BLMIS ACCOUNT NO. 1FN069 - FAIRFIELD SENTRY LIMITED C/O CITCO FUND SERVICES GREENWICH GROUP 55 EAST 52ND STREET 33RD FL**

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 Preference Period Initial Transfers | Column 10 Two Year Initial Transfers | Column 11 Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/15/1999 | TRANS TO 1FN01230 (1FN012) | (15,000,000) | - | - | - | (15,000,000) | 110,964,800 | - | - | - |
| 6/30/1999 | TRANS FROM 1FN01230 (1FN012) | 14,400,796 | - | - | 14,400,796 | - | 125,365,596 | - | - | - |
| 7/28/1999 | TRANS FROM 1FN01230 (1FN012) | 35,014,484 | - | - | 35,014,484 | - | 160,380,080 | - | - | - |
| 7/30/1999 | TRANS FROM 1FN01230 (1FN012) | 431,292 | - | - | 431,292 | - | 160,811,372 | - | - | - |
| 8/30/1999 | TRANS FROM 1FN01230 (1FN012) | 8,336,760 | - | - | 8,336,760 | - | 169,148,132 | - | - | - |
| 9/30/1999 | TRANS FROM 1FN01230 (1FN012) | (6,338,833) | - | - | - | (6,338,833) | 162,809,300 | - | - | - |
| 10/18/1999 | TRANS FROM 1FN01230 (1FN012) | (75,554,675) | - | - | - | (75,554,675) | 87,254,625 | - | - | - |
| 11/10/1999 | TRANS FROM 1FN01230 (1FN012) | 177,606 | - | - | 177,606 | - | 87,432,231 | - | - | - |
| 11/18/1999 | TRANS FROM 1FN01230 (1FN012) | (842,304) | - | - | - | (842,304) | 86,589,927 | - | - | - |
| 11/22/1999 | TRANS TO 1FN01230 (1FN012) | (1,031,662) | - | - | - | (1,031,662) | 85,558,265 | - | - | - |
| 11/29/1999 | TRANS FROM 1FN01230 (1FN012) | 30,479,600 | - | - | 30,479,600 | - | 116,037,865 | - | - | - |
| 1/25/2000 | TRANS FROM 1FN01230 (1FN012) | 14,385,564 | - | - | 14,385,564 | - | 130,423,429 | - | - | - |
| 2/25/2000 | TRANS TO 1FN01230 (1FN012) | (82,963,688) | - | - | - | (82,963,688) | 47,459,741 | - | - | - |
| 3/14/2000 | TRANS TO 1FN01230 (1FN012) | (9,411,572) | - | - | - | (9,411,572) | 38,048,170 | - | - | - |
| 3/28/2000 | TRANS FROM 1FN01230 (1FN012) | 41,660,628 | - | - | 41,660,628 | - | 79,708,798 | - | - | - |
| 4/20/2000 | TRANS TO 1FN01230 (1FN012) | (23,954,634) | - | - | - | (23,954,634) | 55,754,164 | - | - | - |
| 5/11/2000 | TRANS TO 1FN01230 (1FN012) | (20,052,096) | - | - | - | (20,052,096) | 35,702,068 | - | - | - |
| 5/24/2000 | TRANS TO 1FN01230 (1FN012) | (1,874,736) | - | - | - | (1,874,736) | 33,827,332 | - | - | - |
| 6/19/2000 | TRANS FROM 1FN01230 (1FN012) | 2,189,589 | - | - | 2,189,589 | - | 36,016,921 | - | - | - |
| 7/31/2000 | TRANS TO 1FN01230 (1FN012) | (6,484,782) | - | - | - | (6,484,782) | 29,532,138 | - | - | - |
| 8/15/2000 | TRANS TO 1FN01230 (1FN012) | (430,348) | - | - | - | (430,348) | 29,101,791 | - | - | - |
| 9/14/2000 | TRANS FROM 1FN01230 (1FN012) | 98,711 | - | - | 98,711 | - | 29,200,501 | - | - | - |
| 9/18/2000 | TRANS TO 1FN01230 (1FN012) | (21,979,842) | - | - | - | (21,979,842) | 7,220,660 | - | - | - |
| 10/16/2000 | TRANS TO 1FN01230 (1FN012) [1] | (125,504,546) | - | - | - | (7,220,660) | - | - | - | - |
| 10/31/2000 | TRANS FROM 1FN01230 (1FN012) | 9,804,037 | - | - | 9,804,037 | - | 9,804,037 | - | - | - |
| 11/30/2000 | TRANS TO 1FN01230 (1FN012) | (439,340) | - | - | - | (439,340) | 9,364,697 | - | - | - |
| 12/29/2000 | TRANS TO 1FN01230 (1FN012) | (8,553,224) | - | - | - | (8,553,224) | 811,473 | - | - | - |
| 1/30/2001 | TRANS TO 1FN01230 (1FN012) | (2,334,215) [1] | - | - | - | (811,473) | - | - | - | - |
| 2/23/2001 | TRANS TO 1FN01230 (1FN012) | (47,006,454) [2] | - | - | - | - | - | - | - | - |
| 3/30/2001 | TRANS TO 1FN01230 (1FN012) | (36,491,978) [2] | - | - | - | - | - | - | - | - |
| 4/25/2001 | TRANS FROM 30 ACCT (1FN012) | 83,174,850 | - | - | 83,174,850 | - | 83,174,850 | - | - | - |
| 6/29/2001 | TRANS FROM 1FN01230 (1FN012) | (3,496,736) | - | - | - | (3,496,736) | 79,678,114 | - | - | - |
| 7/25/2001 | TRANS TO 1FN01230 (1FN012) | (15,998,436) | - | - | - | (15,998,436) | 63,679,678 | - | - | - |
| 8/31/2001 | TRANS FROM 1FN01230 (1FN012) | 13,885,633 | - | - | 13,885,633 | - | 77,565,311 | - | - | - |
| 9/28/2001 | TRANS TO 1FN01230 (1FN012) | (249,318,951) [1] | - | - | - | (77,565,311) | - | - | - | - |
| 10/31/2001 | TRANS FROM 1FN01230 (1FN012) | 103,803,788 | - | - | 103,803,788 | - | 103,803,788 | - | - | - |
| 11/26/2001 | TRANS FROM 1FN01230 (1FN012) | 84,767,207 | - | - | 84,767,207 | - | 188,570,995 | - | - | - |
| 12/28/2001 | TRANS TO 1FN01230 (1FN012) | (2,773,386) | - | - | - | (2,773,386) | 185,797,609 | - | - | - |
| 1/31/2002 | TRANS TO 1FN01230 (1FN012) | (42,571,270) | - | - | - | (42,571,270) | 143,226,339 | - | - | - |
| 2/21/2002 | TRANS TO 1FN01230 (1FN012) | (34,813,654) | - | - | - | (34,813,654) | 108,412,685 | - | - | - |
| 2/28/2002 | TRANS FROM 1FN01230 (1FN012) | 3,582,374 | - | - | 3,582,374 | - | 111,995,059 | - | - | - |
| 3/25/2002 | TRANS FROM 1FN01230 (1FN012) | 68,101,206 | - | - | 68,101,206 | - | 180,096,265 | - | - | - |
| 4/12/2002 | TRANS TO 1FN01230 (1FN012) | (51,497,008) | - | - | - | (51,497,008) | 128,599,257 | - | - | - |
| 4/23/2002 | TRANS TO 1FN01230 (1FN012) | (58,627,549) | - | - | - | (58,627,549) | 69,971,708 | - | - | - |
| 5/29/2002 | TRANS FROM 1FN01230 (1FN012) | 48,624,357 | - | - | 48,624,357 | - | 118,596,065 | - | - | - |
| 6/28/2002 | TRANS FROM 1FN01230 (1FN012) | 2,608,492 | - | - | 2,608,492 | - | 121,204,557 | - | - | - |
| 7/17/2002 | TRANS TO 1FN01230 (1FN012) | (23,707,268) | - | - | - | (23,707,268) | 97,497,289 | - | - | - |
| 7/31/2002 | TRANS FROM 1FN01230 (1FN012) | 11,956,702 | - | - | 11,956,702 | - | 109,453,991 | - | - | - |
| 8/21/2002 | TRANS FROM 1FN01230 (1FN012) | 227,903,245 | - | - | 227,903,245 | - | 337,357,236 | - | - | - |
| 10/29/2002 | TRANS FROM 1FN01230 (1FN012) | 40,110,476 | - | - | 40,110,476 | - | 377,467,712 | - | - | - |
| 11/18/2002 | TRANS FROM 1FN01230 (1FN012) | 11,639,472 | - | - | 11,639,472 | - | 389,107,184 | - | - | - |
| 1/22/2003 | TRANS TO 1FN01230 (1FN012) | (17,086,180) | - | - | - | (17,086,180) | 372,021,004 | - | - | - |
| 2/24/2003 | TRANS TO 1FN01230 (1FN012) | (115,334,062) | - | - | - | (115,334,062) | 256,686,942 | - | - | - |
| 3/18/2003 | TRANS TO 1FN01230 (1FN012) | (1,886,554) | - | - | - | (1,886,554) | 254,800,388 | - | - | - |
| 3/24/2003 | TRANS FROM 1FN01230 (1FN012) | 153,207,842 | - | - | 153,207,842 | - | 408,008,230 | - | - | - |
| 5/9/2003 | TRANS FROM 1FN01230 (1FN012) | 3,098,704 | - | - | 3,098,704 | - | 411,106,934 | - | - | - |
| 5/21/2003 | TRANS FROM 1FN01230 (1FN012) | 12,730,124 | - | - | 12,730,124 | - | 423,837,058 | - | - | - |
| 5/30/2003 | TRANS FROM 1FN01230 (1FN012) | 2,839,638 | - | - | 2,839,638 | - | 426,676,696 | - | - | - |

MADC1345_00000749

BLMIS ACCOUNT NO. 1FN069 - FAIRFIELD SENTRY LIMITED C/O CITCO (WHITES GREENWICH GROUP 55 EAST 52ND STREET 33RD FL

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | Preference Period Initial Transfers | Two Year Initial Transfers | Six Year Initial Transfers |
| 6/19/2003 | TRANS FROM 1FN01230 *(1FN012)* | 55,138,378 | - | - | 55,138,378 | - | 481,815,074 | - | - | - |
| 6/20/2003 | TRANS FROM 1FN01230 *(1FN012)* | 16,056,865 | - | - | 16,056,865 | - | 497,871,939 | - | - | - |
| 6/24/2003 | TRANS FROM 1FN01230 *(1FN012)* | 20,093,123 | - | - | 20,093,123 | - | 517,965,062 | - | - | - |
| 7/10/2003 | TRANS TO 1FN01230 *(1FN012)* | (1,052,588) | - | - | - | (1,052,588) | 516,912,474 | - | - | - |
| 7/15/2003 | TRANS TO 1FN01230 *(1FN012)* | (13,369,798) | - | - | - | (13,369,798) | 503,542,676 | - | - | - |
| 7/21/2003 | TRANS FROM 1FN01230 *(1FN012)* | 15,852,973 | - | - | 15,852,973 | - | 519,395,649 | - | - | - |
| 8/15/2003 | TRANS TO 1FN01230 *(1FN012)* | (25,229,678) | - | - | - | (25,229,678) | 494,165,971 | - | - | - |
| 9/5/2003 | TRANS FROM 1FN01230 *(1FN012)* | 6,434,520 | - | - | 6,434,520 | - | 500,600,491 | - | - | - |
| 9/10/2003 | TRANS FROM 1FN01230 *(1FN012)* | 647,856 | - | - | 647,856 | - | 501,248,347 | - | - | - |
| 9/22/2003 | TRANS FROM 1FN01230 *(1FN012)* | 4,359,818 | - | - | 4,359,818 | - | 505,608,165 | - | - | - |
| 10/6/2003 | TRANS FROM 1FN01230 *(1FN012)* | 2,136,968 | - | - | 2,136,968 | - | 507,745,133 | - | - | - |
| 10/10/2003 | TRANS FROM 1FN01230 *(1FN012)* | 3,271,212 | - | - | 3,271,212 | - | 511,016,345 | - | - | - |
| 10/14/2003 | TRANS FROM 1FN01230 *(1FN012)* | 680,368 | - | - | 680,368 | - | 511,696,713 | - | - | - |
| 10/17/2003 | TRANS TO 1FN01230 *(1FN012)* | (316,624) | - | - | - | (316,624) | 511,380,089 | - | - | - |
| 11/18/2003 | TRANS TO 1FN01230 *(1FN012)* | (7,640,784) | - | - | - | (7,640,784) | 503,739,305 | - | - | - |
| 11/19/2003 | TRANS TO 1FN01230 *(1FN012)* | (5,343,966) | - | - | - | (5,343,966) | 498,395,339 | - | - | - |
| 11/20/2003 | TRANS TO 1FN01230 *(1FN012)* | (4,885,971) | - | - | - | (4,885,971) | 493,509,368 | - | - | - |
| 11/21/2003 | TRANS TO 1FN01230 *(1FN012)* | (4,579,536) | - | - | - | (4,579,536) | 488,929,832 | - | - | - |
| 12/12/2003 | TRANS TO 1FN01230 *(1FN012)* | (329,916) | - | - | - | (329,916) | 488,599,916 | - | - | - |
| 12/22/2003 | TRANS FROM 1FN01230 *(1FN012)* | 8,083,452 | - | - | 8,083,452 | - | 496,683,368 | - | - | - |
| 1/8/2004 | TRANS FROM 1FN01230 *(1FN012)* | 890,072 | - | - | 890,072 | - | 497,573,440 | - | - | - |
| 1/9/2004 | TRANS FROM 1FN01230 *(1FN012)* | 2,155,062 | - | - | 2,155,062 | - | 499,728,502 | - | - | - |
| 1/15/2004 | TRANS FROM 1FN01230 *(1FN012)* | 616,616 | - | - | 616,616 | - | 500,345,118 | - | - | - |
| 1/22/2004 | TRANS FROM 1FN01230 *(1FN012)* | 10,739,925 | - | - | 10,739,925 | - | 511,085,043 | - | - | - |
| 2/24/2004 | TRANS FROM 1FN01230 *(1FN012)* | 6,352,435 | - | - | 6,352,435 | - | 517,437,478 | - | - | - |
| 4/8/2004 | TRANS FROM 1FN01230 *(1FN012)* | 3,437,800 | - | - | 3,437,800 | - | 520,875,278 | - | - | - |
| 4/19/2004 | TRANS TO 1FN01230 *(1FN012)* | (3,852,430) | - | - | - | (3,852,430) | 517,022,848 | - | - | - |
| 4/26/2004 | TRANS TO 1FN01230 *(1FN012)* | (9,618,770) | - | - | - | (9,618,770) | 507,404,078 | - | - | - |
| 5/18/2004 | TRANS TO 1FN01230 *(1FN012)* | (99,542,145) | - | - | - | (99,542,145) | 407,861,933 | - | - | - |
| 5/24/2004 | TRANS FROM 1FN01230 *(1FN012)* | 2,534,880 | - | - | 2,534,880 | - | 410,396,813 | - | - | - |
| 6/8/2004 | TRANS FROM 1FN01230 *(1FN012)* | 11,281,522 | - | - | 11,281,522 | - | 421,678,335 | - | - | - |
| 6/16/2004 | TRANS TO 1FN01230 *(1FN012)* | (23,618,008) | - | - | - | (23,618,008) | 398,060,327 | - | - | - |
| 6/18/2004 | TRANS FROM 1FN01230 *(1FN012)* | 9,522,049 | - | - | 9,522,049 | - | 407,582,376 | - | - | - |
| 6/24/2004 | TRANS TO 1FN01230 *(1FN012)* | (892,934) | - | - | - | (892,934) | 406,689,442 | - | - | - |
| 6/25/2004 | TRANS FROM 1FN01230 *(1FN012)* | 1,668,096 | - | - | 1,668,096 | - | 408,357,538 | - | - | - |
| 8/18/2004 | TRANS FROM 1FN01230 *(1FN012)* | 2,743,400 | - | - | 2,743,400 | - | 411,100,938 | - | - | - |
| 8/19/2004 | TRANS TO 1FN01230 *(1FN012)* | (1,292,976) | - | - | - | (1,292,976) | 409,807,962 | - | - | - |
| 8/23/2004 | TRANS FROM 1FN01230 *(1FN012)* | 23,690,004 | - | - | 23,690,004 | - | 433,497,966 | - | - | - |
| 9/20/2004 | TRANS FROM 1FN01230 *(1FN012)* | 21,179,685 | - | - | 21,179,685 | - | 454,677,651 | - | - | - |
| 11/4/2004 | TRANS FROM 1FN01230 *(1FN012)* | 2,962,832 | - | - | 2,962,832 | - | 457,640,483 | - | - | - |
| 11/5/2004 | TRANS TO 1FN01230 *(1FN012)* | (112,728) | - | - | - | (112,728) | 457,527,755 | - | - | - |
| 11/15/2004 | TRANS FROM 1FN01230 *(1FN012)* | 42,036,784 | - | - | 42,036,784 | - | 499,564,539 | - | - | - |
| 12/14/2004 | TRANS TO 1FN01230 *(1FN012)* | (90,648) | - | - | - | (90,648) | 499,473,891 | - | - | - |
| 12/20/2004 | TRANS FROM 1FN01230 *(1FN012)* | 4,430,421 | - | - | 4,430,421 | - | 503,904,312 | - | - | - |
| 1/28/2005 | TRANS TO 1FN01230 *(1FN012)* | (90,968) | - | - | - | (90,968) | 503,813,344 | - | - | - |
| 1/28/2005 | TRANS FROM 1FN01230 *(1FN012)* | 4,587,226 | - | - | 4,587,226 | - | 508,400,570 | - | - | - |
| 2/16/2005 | TRANS FROM 1FN01230 *(1FN012)* | 58,943,400 | - | - | 58,943,400 | - | 567,343,970 | - | - | - |
| 3/8/2005 | TRANS TO 1FN01230 *(1FN012)* | (9,874,092) | - | - | - | (9,874,092) | 557,469,878 | - | - | - |
| 3/14/2005 | TRANS TO 1FN01230 *(1FN012)* | (6,271,556) | - | - | - | (6,271,556) | 551,198,322 | - | - | - |
| 3/15/2005 | TRANS TO 1FN01230 *(1FN012)* | (4,246,471) | - | - | - | (4,246,471) | 546,951,851 | - | - | - |
| 3/17/2005 | TRANS TO 1FN01230 *(1FN012)* | (3,328,560) | - | - | - | (3,328,560) | 543,623,291 | - | - | - |
| 5/20/2005 | TRANS FROM 1FN01230 *(1FN012)* | 1,873,088 | - | - | 1,873,088 | - | 545,496,379 | - | - | - |
| 5/23/2005 | TRANS FROM 1FN01230 *(1FN012)* | 7,249,018 | - | - | 7,249,018 | - | 552,745,397 | - | - | - |
| 6/24/2005 | TRANS TO 1FN01230 *(1FN012)* | (232,432) | - | - | - | (232,432) | 552,512,965 | - | - | - |
| 6/27/2005 | TRANS TO 1FN01230 *(1FN012)* | (10,030,316) | - | - | - | (10,030,316) | 542,482,649 | - | - | - |
| 6/28/2005 | TRANS TO 1FN01230 *(1FN012)* | (8,731,968) | - | - | - | (8,731,968) | 533,750,681 | - | - | - |
| 9/8/2005 | TRANS TO 1FN01230 *(1FN012)* | (470,608) | - | - | - | (470,608) | 533,280,073 | - | - | - |
| 9/9/2005 | TRANS FROM 1FN01230 *(1FN012)* | 1,678,644 | - | - | 1,678,644 | - | 534,958,717 | - | - | - |
| 9/13/2005 | TRANS FROM 1FN01230 *(1FN012)* | 1,354,848 | - | - | 1,354,848 | - | 536,313,565 | - | - | - |
| 9/19/2005 | TRANS TO 1FN01230 *(1FN012)* | (1,948,164) | - | - | - | (1,948,164) | 534,365,401 | - | - | - |

MADC1345_00000750

**BLMIS ACCOUNT NO. 1FN069 - FAIRFIELD SENTRY LIMITED C/O CITCO FUND SERVICES GREENWICH GROUP 55 EAST 52ND STREET 33RD FL**

| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | Preference Period Initial Transfers | Two Year Initial Transfers | Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 9/22/2005 | TRANS TO 1FN01230 *(1FN012)* | (10,720,645) | - | - | - | (10,720,645) | 523,644,756 | - | - | - |
| 9/23/2005 | TRANS TO 1FN01230 *(1FN012)* | (16,778,475) | - | - | - | (16,778,475) | 506,866,281 | - | - | - |
| 9/27/2005 | TRANS TO 1FN01230 *(1FN012)* | (11,399,736) | - | - | - | (11,399,736) | 495,466,545 | - | - | - |
| 10/7/2005 | TRANS TO 1FN01230 *(1FN012)* | (3,035,448) | - | - | - | (3,035,448) | 492,431,097 | - | - | - |
| 10/11/2005 | TRANS TO 1FN01230 *(1FN012)* | (927,968) | - | - | - | (927,968) | 491,503,129 | - | - | - |
| 10/14/2005 | TRANS FROM 1FN01230 *(1FN012)* | 107,160 | - | - | 107,160 | - | 491,610,289 | - | - | - |
| 10/17/2005 | TRANS TO 1FN01230 *(1FN012)* | (2,661,812) | - | - | - | (2,661,812) | 488,948,477 | - | - | - |
| 10/21/2005 | TRANS TO 1FN01230 *(1FN012)* | (11,377,356) | - | - | - | (11,377,356) | 477,571,121 | - | - | - |
| 11/17/2005 | TRANS FROM 1FN01230 *(1FN012)* | 635,694 | - | - | 635,694 | - | 478,206,815 | - | - | - |
| 11/17/2005 | TRANS FROM 1FN01230 *(1FN012)* | 33,005,044 | - | - | 33,005,044 | - | 511,211,859 | - | - | - |
| 12/16/2005 | TRANS FROM 1FN01230 *(1FN012)* | 32,110,560 | - | - | 32,110,560 | - | 543,322,419 | - | - | - |
| 12/19/2005 | TRANS FROM 1FN01230 *(1FN012)* | 8,333,073 | - | - | 8,333,073 | - | 551,655,492 | - | - | - |
| 1/10/2006 | TRANS TO 1FN01230 *(1FN012)* | (3,584,938) | - | - | - | (3,584,938) | 548,070,554 | - | - | - |
| 1/11/2006 | TRANS FROM 1FN01230 *(1FN012)* | 1,234,334 | - | - | 1,234,334 | - | 549,304,888 | - | - | - |
| 1/13/2006 | TRANS FROM 1FN01230 *(1FN012)* | 3,297 | - | - | 3,297 | - | 549,308,185 | - | - | - |
| 1/23/2006 | TRANS TO 1FN01230 *(1FN012)* | (13,497,124) | - | - | - | (13,497,124) | 535,811,061 | - | - | - |
| 1/31/2006 | TRANS TO 1FN01230 *(1FN012)* | (6,452,192) | - | - | - | (6,452,192) | 529,358,869 | - | - | - |
| 2/16/2006 | TRANS TO 1FN01230 *(1FN012)* | (14,685,664) | - | - | - | (14,685,664) | 514,673,205 | - | - | - |
| 3/8/2006 | TRANS TO 1FN01230 *(1FN012)* | (4,195,904) | - | - | - | (4,195,904) | 510,477,301 | - | - | - |
| 3/10/2006 | TRANS TO 1FN01230 *(1FN012)* | (34,176) | - | - | - | (34,176) | 510,443,125 | - | - | - |
| 3/16/2006 | TRANS FROM 1FN01230 *(1FN012)* | 886,512 | - | - | 886,512 | - | 511,329,637 | - | - | - |
| 3/27/2006 | TRANS FROM 1FN01230 *(1FN012)* | 7,019,942 | - | - | 7,019,942 | - | 518,349,579 | - | - | - |
| 3/28/2006 | TRANS FROM 1FN01230 *(1FN012)* | 7,394,926 | - | - | 7,394,926 | - | 525,744,505 | - | - | - |
| 3/29/2006 | TRANS FROM 1FN01230 *(1FN012)* | 6,928,176 | - | - | 6,928,176 | - | 532,672,681 | - | - | - |
| 3/30/2006 | TRANS FROM 1FN01230 *(1FN012)* | 2,955,558 | - | - | 2,955,558 | - | 535,628,239 | - | - | - |
| 4/5/2006 | TRANS FROM 1FN01230 *(1FN012)* | 3,410,568 | - | - | 3,410,568 | - | 539,038,807 | - | - | - |
| 4/6/2006 | TRANS FROM 1FN01230 *(1FN012)* | 3,601,568 | - | - | 3,601,568 | - | 542,640,375 | - | - | - |
| 4/7/2006 | TRANS FROM 1FN01230 *(1FN012)* | 3,121,480 | - | - | 3,121,480 | - | 545,761,855 | - | - | - |
| 4/13/2006 | TRANS TO 1FN01230 *(1FN012)* | (757,134) | - | - | - | (757,134) | 545,004,721 | - | - | - |
| 4/21/2006 | TRANS TO 1FN01230 *(1FN012)* | (27,818,065) | - | - | - | (27,818,065) | 517,186,656 | - | - | - |
| 5/4/2006 | TRANS FROM 1FN01230 *(1FN012)* | 68,586 [1] | - | - | - | - | 517,186,656 | - | - | - |
| 5/10/2006 | TRANS FROM 1FN01230 *(1FN012)* | 10,342,130 [1] | - | - | - | - | 517,186,656 | - | - | - |
| 5/19/2006 | TRANS FROM 1FN01230 *(1FN012)* | 879,244 [1] | - | - | - | - | 517,186,656 | - | - | - |
| 5/22/2006 | TRANS TO 1FN01230 *(1FN012)* | (34,366,972) | - | - | - | (34,366,972) | 482,819,684 | - | - | - |
| 6/15/2006 | TRANS TO 1FN01230 *(1FN012)* | (22,017,300) | - | - | - | (22,017,300) | 460,802,384 | - | - | - |
| 6/16/2006 | TRANS TO 1FN01230 *(1FN012)* | (33,017,592) | - | - | - | (33,017,592) | 427,784,792 | - | - | - |
| 6/19/2006 | TRANS TO 1FN01230 *(1FN012)* | (33,404,902) | - | - | - | (33,404,902) | 394,379,890 | - | - | - |
| 7/14/2006 | TRANS FROM 1FN01230 *(1FN012)* | 2,734,112 | - | - | 2,734,112 | - | 397,114,002 | - | - | - |
| 7/21/2006 | TRANS TO 1FN01230 *(1FN012)* | (19,839,884) | - | - | - | (19,839,884) | 377,274,118 | - | - | - |
| 8/17/2006 | TRANS FROM 1FN01230 *(1FN012)* | 38,509,970 | - | - | 38,509,970 | - | 415,784,088 | - | - | - |
| 9/15/2006 | TRANS FROM 1FN01230 *(1FN012)* | 24,585,620 | - | - | 24,585,620 | - | 440,369,708 | - | - | - |
| 9/26/2006 | TRANS FROM 1FN01230 *(1FN012)* | 9,592,330 | - | - | 9,592,330 | - | 449,962,038 | - | - | - |
| 9/27/2006 | TRANS FROM 1FN01230 *(1FN012)* | 4,950,880 | - | - | 4,950,880 | - | 454,912,918 | - | - | - |
| 10/26/2006 | TRANS FROM 1FN01230 *(1FN012)* | 3,616,086 | - | - | 3,616,086 | - | 458,529,004 | - | - | - |
| 10/27/2006 | TRANS FROM 1FN01230 *(1FN012)* | 778,700 | - | - | 778,700 | - | 459,307,704 | - | - | - |
| 10/30/2006 | TRANS TO 1FN01230 *(1FN012)* | (933,300) | - | - | - | (933,300) | 458,374,404 | - | - | - |
| 11/20/2006 | TRANS FROM 1FN01230 *(1FN012)* | 15,321,987 | - | - | 15,321,987 | - | 473,696,391 | - | - | - |
| 11/30/2006 | TRANS TO 1FN01230 *(1FN012)* | (4,080) | - | - | - | (4,080) | 473,692,311 | - | - | - |
| 12/26/2006 | TRANS FROM 1FN01230 *(1FN012)* | 17,335,418 | - | - | 17,335,418 | - | 491,027,729 | - | - | - |
| 12/27/2006 | TRANS FROM 1FN01230 *(1FN012)* | 8,941,332 | - | - | 8,941,332 | - | 499,969,061 | - | - | - |
| 12/28/2006 | TRANS FROM 1FN01230 *(1FN012)* | 4,950,288 | - | - | 4,950,288 | - | 504,919,349 | - | - | - |
| 2/16/2007 | TRANS FROM 1FN01230 *(1FN012)* | 1,917,300 | - | - | 1,917,300 | - | 506,836,649 | - | - | - |
| 2/20/2007 | TRANS FROM 1FN01230 *(1FN012)* | 1,395,070 | - | - | 1,395,070 | - | 508,231,719 | - | - | - |
| 2/22/2007 | TRANS FROM 1FN01230 *(1FN012)* | 2,281,635 | - | - | 2,281,635 | - | 510,513,354 | - | - | - |
| 2/23/2007 | TRANS FROM 1FN01230 *(1FN012)* | 1,008,928 | - | - | 1,008,928 | - | 511,522,282 | - | - | - |
| 3/9/2007 | TRANS TO 1FN01230 *(1FN012)* | (92,721,384) | - | - | - | (92,721,384) | 418,800,898 | - | - | - |
| 3/12/2007 | TRANS TO 1FN01230 *(1FN012)* | (22,235,796) | - | - | - | (22,235,796) | 396,565,102 | - | - | - |
| 3/19/2007 | TRANS TO 1FN01230 *(1FN012)* | (17,581,608) | - | - | - | (17,581,608) | 378,983,494 | - | - | - |
| 3/20/2007 | TRANS FROM 1FN01230 *(1FN012)* | 12,165,052 | - | - | 12,165,052 | - | 391,148,546 | - | - | - |

MADC1345_00000751

**BLMIS ACCOUNT NO. 1FN069 - FAIRFIELD SENTRY LIMITED C/O CITCO (GREENWICH GROUP 55 EAST 52ND STREET 33RD FL**

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 Preference Period Initial Transfers | Column 10 Two Year Initial Transfers | Column 11 Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 3/26/2007 | TRANS FROM 1FN01230 (1FN012) | 31,851,227 | - | - | 31,851,227 | | 422,999,773 | - | - | - |
| 3/27/2007 | TRANS TO 1FN01230 (1FN012) | (3,716,001) | - | - | | (3,716,001) | 419,283,772 | - | - | - |
| 3/28/2007 | TRANS TO 1FN01230 (1FN012) | (3,516,480) | - | - | | (3,516,480) | 415,767,292 | - | - | - |
| 4/19/2007 | TRANS FROM 1FN01230 (1FN012) | 1,128,240 | - | - | 1,128,240 | | 416,895,532 | - | - | - |
| 4/20/2007 | TRANS FROM 1FN01230 (1FN012) | 1,334,235 | - | - | 1,334,235 | | 418,229,767 | - | - | - |
| 4/25/2007 | TRANS TO 1FN01230 (1FN012) | (11,421,944) | - | - | | (11,421,944) | 406,807,823 | - | - | - |
| 5/21/2007 | TRANS FROM 1FN01230 (1FN012) | 37,493,232 | - | - | 37,493,232 | | 444,301,055 | - | - | - |
| 6/15/2007 | TRANS FROM 1FN01230 (1FN012) | 4,647,552 | - | - | 4,647,552 | | 448,948,607 | - | - | - |
| 6/21/2007 | TRANS TO 1FN01230 (1FN012) | (14,977,242) | - | - | | - | 448,948,607 | - | - | - |
| 6/21/2007 | TRANS FROM 1FN01230 (1FN012) | 14,977,242 | - | - | 14,977,242 | | 463,925,849 | - | - | - |
| 6/21/2007 | CXL TRANS TO 1FN01230 (1FN012) | 14,977,242 | - | - | | - | 463,925,849 | - | - | - |
| 6/22/2007 | TRANS FROM 1FN01230 (1FN012) | 10,313,424 | - | - | 10,313,424 | | 474,239,273 | - | - | - |
| 6/25/2007 | TRANS FROM 1FN01230 (1FN012) | 13,833,270 | - | - | 13,833,270 | | 488,072,543 | - | - | - |
| 8/6/2007 | TRANS FROM 1FN01230 (1FN012) | 5,453,034 | - | - | 5,453,034 | | 493,525,577 | - | - | - |
| 8/21/2007 | TRANS TO 1FN01230 (1FN012) | (45,035,873) | - | - | | (45,035,873) | 448,489,704 | - | - | - |
| 9/14/2007 | TRANS TO 1FN01230 (1FN012) | (4,242,624) | - | - | | (4,242,624) | 444,247,080 | - | - | - |
| 9/17/2007 | TRANS FROM 1FN01230 (1FN012) | 2,942,534 | - | - | 2,942,534 | | 447,189,614 | - | - | - |
| 9/18/2007 | TRANS TO 1FN01230 (1FN012) | (3,268,762) | - | - | | (3,268,762) | 443,920,852 | - | - | - |
| 9/24/2007 | TRANS FROM 1FN01230 (1FN012) | 42,476,389 | - | - | 42,476,389 | | 486,397,241 | - | - | - |
| 9/25/2007 | TRANS FROM 1FN01230 (1FN012) | 30,404,772 | - | - | 30,404,772 | | 516,802,013 | - | - | - |
| 9/26/2007 | TRANS FROM 1FN01230 (1FN012) | 28,915,450 | - | - | 28,915,450 | | 545,717,463 | - | - | - |
| 10/31/2007 | TRANS TO 1FN01230 (1FN012) | (470,972) | - | - | | (470,972) | 545,246,491 | - | - | - |
| 11/7/2007 | TRANS FROM 1FN01230 (1FN012) | 6,333,334 | - | - | 6,333,334 | | 551,579,825 | - | - | - |
| 11/8/2007 | TRANS TO 1FN01230 (1FN012) | (21,057,406) | - | - | | (21,057,406) | 530,522,419 | - | - | - |
| 11/15/2007 | TRANS FROM 1FN01230 (1FN012) | 5,374,844 | - | - | 5,374,844 | | 535,897,263 | - | - | - |
| 11/21/2007 | TRANS TO 1FN01230 (1FN012) | (5,214,610) | - | - | | (5,214,610) | 530,682,653 | - | - | - |
| 11/29/2007 | TRANS FROM 1FN01230 (1FN012) | 24,491,805 | - | - | 24,491,805 | | 555,174,458 | - | - | - |
| 11/30/2007 | TRANS TO 1FN01230 (1FN012) | (79,064,709) | - | - | | (79,064,709) | 476,109,749 | - | - | - |
| 12/11/2007 | TRANS FROM 1FN01230 (1FN012) | (1,702,722) | - | - | | - | 476,109,749 | - | - | - |
| 12/11/2007 | TRANS FROM 1FN01230 (1FN012) | 1,702,722 | - | - | 1,702,722 | | 477,812,471 | - | - | - |
| 12/11/2007 | CANCEL TRANS FROM 1FN01230 (1FN012) | 1,702,722 | - | - | | - | 477,812,471 | - | - | - |
| 12/20/2007 | TRANS TO 1FN01230 (1FN012) | (12,326,748) | - | - | | (12,326,748) | 465,485,723 | - | - | - |
| 1/28/2008 | TRANS FROM 1FN01230 (1FN012) | 7,077,370 | - | - | 7,077,370 | | 472,563,093 | - | - | - |
| 2/20/2008 | TRANS FROM 1FN01230 (1FN012) | 32,855,870 | - | - | 32,855,870 | | 505,418,963 | - | - | - |
| 2/21/2008 | TRANS TO 1FN01230 (1FN012) | (7,217,980) | - | - | | (7,217,980) | 498,200,983 | - | - | - |
| 3/17/2008 | TRANS FROM 1FN01230 (1FN012) | (29,246,880) | - | - | | (29,246,880) | 468,954,103 | - | - | - |
| 4/4/2008 | TRANS FROM 1FN01230 (1FN012) | 18,562,670 | - | - | 18,562,670 | | 487,516,773 | - | - | - |
| 4/7/2008 | TRANS TO 1FN01230 (1FN012) | (36,640,730) | - | - | | (36,640,730) | 450,876,043 | - | - | - |
| 4/23/2008 | TRANS FROM 1FN01230 (1FN012) | 84,280 | - | - | 84,280 | | 450,960,323 | - | - | - |
| 5/9/2008 | TRANS FROM 1FN01230 (1FN012) | 881,140 | - | - | 881,140 | | 451,841,463 | - | - | - |
| 5/16/2008 | TRANS FROM 1FN01230 (1FN012) | 22,355,270 | - | - | 22,355,270 | | 474,196,733 | - | - | - |
| 5/19/2008 | TRANS TO 1FN01230 (1FN012) | (12,278,930) | - | - | | (12,278,930) | 461,917,803 | - | - | - |
| 5/27/2008 | TRANS FROM 1FN01230 (1FN012) | 18,119,599 | - | - | 18,119,599 | | 480,037,402 | - | - | - |
| 5/28/2008 | TRANS TO 1FN01230 (1FN012) | (57,883,559) | - | - | | (57,883,559) | 422,153,843 | - | - | - |
| 7/21/2008 | TRANS FROM 1FN01230 (1FN012) | 13,277,313 | - | - | 13,277,313 | | 435,431,156 | - | - | - |
| 7/22/2008 | TRANS TO 1FN01230 (1FN012) | (31,153,617) | - | - | | (31,153,617) | 404,277,539 | - | - | - |
| 7/23/2008 | TRANS FROM 1FN01230 (1FN012) | 38,922,534 | - | - | 38,922,534 | | 443,200,073 | - | - | - |
| 8/8/2008 | TRANS FROM 1FN01230 (1FN012) | 20,812,383 | - | - | 20,812,383 | | 464,012,456 | - | - | - |
| 8/11/2008 | TRANS TO 1FN01230 (1FN012) | (38,948,517) | - | - | | (38,948,517) | 425,063,939 | - | - | - |
| 8/13/2008 | TRANS FROM 1FN01230 (1FN012) | 3,738,696 | - | - | 3,738,696 | | 428,802,635 | - | - | - |
| 8/18/2008 | TRANS FROM 1FN01230 (1FN012) | 26,006,133 | - | - | 26,006,133 | | 454,808,768 | - | - | - |
| 9/10/2008 | TRANS FROM 1FN01230 (1FN012) | 4,024,396 | - | - | 4,024,396 | | 458,833,164 | - | - | - |
| 9/11/2008 | TRANS TO 1FN01230 (1FN012) | (19,324,694) | - | - | | (19,324,694) | 439,508,470 | - | - | - |
| 9/15/2008 | TRANS TO 1FN01230 (1FN012) | (57,001,728) | - | - | | (57,001,728) | 382,506,742 | - | - | - |
| 9/19/2008 | TRANS TO 1FN01230 (1FN012) | (56,776,950) | - | - | | (56,776,950) | 325,729,792 | - | - | - |
| 11/6/2008 | TRANS FROM 1FN01230 (1FN012) | 578,138 | - | - | 578,138 | | 326,307,930 | - | - | - |
| 11/7/2008 | TRANS TO 1FN01230 (1FN012) | (14,881,874) | - | - | | (14,881,874) | 311,426,056 | - | - | - |
| 11/10/2008 | TRANS FROM 1FN01230 (1FN012) | 9,848,202 | - | - | 9,848,202 | | 321,274,258 | - | - | - |
| 11/19/2008 | TRANS TO 1FN01230 (1FN012) | (295,937,598) | - | - | | (295,937,598) | 25,336,660 | - | - | - |
| 11/25/2008 | TRANS TO 1FN01230 (1FN012) | (11,384,758) | - | - | | (11,384,758) | 13,951,902 | - | - | - |

MADC1345_00000752

BLMIS ACCOUNT NO. 1FN069 - FAIRFIELD SENTRY LIMITED C/O CITCO FUND SERVICES GREENWICH GROUP 55 EAST 52ND STREET  33RD FL

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | Preference Period Initial Transfers | Two Year Initial Transfers | Six Year Initial Transfers |
| | | Total: | $ 15,000,000 | $ - | $ 2,377,375,418 | $ (2,378,423,515) | $ 13,951,902 | $ - | $ - | $ - |

[1] Although BLMIS statements reflect that a larger transfer was made out of the account on this date, a portion of the "transferred" funds consisted of fictitious profits which were never achieved and thus could not have been transferred.  Accordingly, only the principal remaining in the account was transferred out of the account on this date.

[2] Although BLMIS statements reflect that funds were transferred out of this account on this date, these funds consisted entirely of fictitious profits which were never achieved and thus no funds were actually transferred out of the account on this date. Accordingly, the account balance has remained unchanged.

[3] Although BLMIS statements reflect that funds were transferred into this account on this date, these funds consisted entirely of fictitious profits which were never achieved and thus no funds were actually transferred into the account on this date. Accordingly, the account balance has remained unchanged.

MADC1345_00000753

**BLMIS ACCOUNT NO. 1FN070 - FAIRFIELD SENTRY LIMITED C/O WALTER NOEL GREENWICH GROUP 55 EAST 52ND STREET 33RD FL**

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 Preference Period Initial Transfers | Column 10 Two Year Initial Transfers | Column 11 Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 1/31/1995 | TRANS FROM 1FN04530 (1FN045) | 1,249,275 | - | - | 1,249,275 | - | 1,249,275 | - | - | - |
| 2/28/1995 | TRANS FROM 1FN04530 (1FN045) | 1,376,200 | - | - | 1,376,200 | - | 2,625,475 | - | - | - |
| 3/31/1995 | TRANS FROM 1FN04530 (1FN045) | 1,692,380 | - | - | 1,692,380 | - | 4,317,855 | - | - | - |
| 4/28/1995 | TRANS FROM 1FN04530 (1FN045) | 4,362,250 | - | - | 4,362,250 | - | 8,680,105 | - | - | - |
| 5/31/1995 | TRAN FROM 1FN04530 (1FN045) | 2,204,436 | - | - | 2,204,436 | - | 10,884,541 | - | - | - |
| 6/30/1995 | TRANS FROM 1FN04530 (1FN045) | 3,460,484 | - | - | 3,460,484 | - | 14,345,025 | - | - | - |
| 7/31/1995 | TRANS FROM 1FN045-30 (1FN045) | 1,066,657 | - | - | 1,066,657 | - | 15,411,682 | - | - | - |
| 8/28/1995 | TRANS TO 1FN04530 (1FN045) | (5,762) | - | - | - | (5,762) | 15,405,919 | - | - | - |
| 9/29/1995 | TRANS FROM 1FN04530 (1FN045) | 2,301,677 | - | - | 2,301,677 | - | 17,707,596 | - | - | - |
| 10/27/1995 | TRANS FROM 1FN04530 (1FN045) | 261,954 | - | - | 261,954 | - | 17,969,550 | - | - | - |
| 11/24/1995 | TRANS FROM 1FN04530 (1FN045) | 471,634 | - | - | 471,634 | - | 18,441,184 | - | - | - |
| 12/29/1995 | TRANS FROM 1FN04530 (1FN045) | 5,577,776 | - | - | 5,577,776 | - | 24,018,960 | - | - | - |
| 1/31/1996 | TRANS FROM 1FN04530 (1FN045) | 71,650 | - | - | 71,650 | - | 24,090,610 | - | - | - |
| 2/29/1996 | TRANS FROM 1FN04530 (1FN045) | 7,585,905 | - | - | 7,585,905 | - | 31,676,515 | - | - | - |
| 3/29/1996 | TRANS TO 1FN04530 (1FN045) | (1,828,882) | - | - | - | (1,828,882) | 29,847,633 | - | - | - |
| 4/30/1996 | TRANS TO 1FN04530 (1FN045) | (868,793) | - | - | - | (868,793) | 28,978,840 | - | - | - |
| 5/31/1996 | TRANS TO 1FN04530 (1FN045) | (1,758,480) | - | - | - | (1,758,480) | 27,220,360 | - | - | - |
| 6/28/1996 | TRANS TO 1FN04530 (1FN045) | (70,676) | - | - | - | (70,676) | 27,149,684 | - | - | - |
| 7/31/1996 | TRANS TO 1FN04530 (1FN045) | (7,437,859) | - | - | - | (7,437,859) | 19,711,826 | - | - | - |
| 8/30/1996 | TRANS FROM 1FN04530 (1FN045) | 4,182,376 | - | - | 4,182,376 | - | 23,894,202 | - | - | - |
| 9/30/1996 | TRANS FROM 1FN04530 (1FN045) | 3,647,768 | - | - | 3,647,768 | - | 27,541,970 | - | - | - |
| 10/31/1996 | TRANS FROM 1FN04530 (1FN045) | 1,122,735 | - | - | 1,122,735 | - | 28,664,705 | - | - | - |
| 11/29/1996 | TRANS FROM 1FN04530 (1FN045) | 3,870,921 | - | - | 3,870,921 | - | 32,535,625 | - | - | - |
| 12/31/1996 | TRANS FROM 1FN04530 (1FN045) | 680,538 | - | - | 680,538 | - | 33,216,163 | - | - | - |
| 1/31/1997 | TRANS FROM 1FN04530 (1FN045) | 4,183,823 | - | - | 4,183,823 | - | 37,399,986 | - | - | - |
| 2/28/1997 | TRANS FROM 1FN04530 (1FN045) | 3,551,975 | - | - | 3,551,975 | - | 40,951,961 | - | - | - |
| 3/31/1997 | TRANS TO 1FN04530 (1FN045) | (2,325,993) | - | - | - | (2,325,993) | 38,625,968 | - | - | - |
| 4/30/1997 | TRANS TO 1FN04530 (1FN045) | (9,453,364) | - | - | - | (9,453,364) | 29,172,604 | - | - | - |
| 5/30/1997 | TRANS FROM 1FN04530 (1FN045) | 3,326,923 | - | - | 3,326,923 | - | 32,499,527 | - | - | - |
| 6/30/1997 | TRANS FROM 1FN04530 (1FN045) | 4,080,019 | - | - | 4,080,019 | - | 36,579,546 | - | - | - |
| 7/31/1997 | TRANS FROM 1FN04530 (1FN045) | 6,006,758 | - | - | 6,006,758 | - | 42,586,304 | - | - | - |
| 8/29/1997 | TRANS TO 1FN04530 (1FN045) | (92,008) | - | - | - | (92,008) | 42,494,296 | - | - | - |
| 9/30/1997 | TRANS FROM 1FN04530 (1FN045) | 428,150 | - | - | 428,150 | - | 42,922,446 | - | - | - |
| 10/31/1997 | TRANS TO 1FN04530 (1FN045) | (1,887,720) | - | - | - | (1,887,720) | 41,034,726 | - | - | - |
| 11/28/1997 | TRANS FROM 1FN04530 (1FN045) | 6,228,887 | - | - | 6,228,887 | - | 47,263,613 | - | - | - |
| 12/31/1997 | TRANS TO 1FN04530 (1FN045) | (4,341,967) | - | - | - | (4,341,967) | 42,921,646 | - | - | - |
| 1/30/1998 | TRANS TO 1FN04530 (1FN045) | (1,791,004) | - | - | - | (1,791,004) | 41,130,643 | - | - | - |
| 2/27/1998 | TRANS FROM 1FN04530 (1FN045) | 24,281,577 | - | - | 24,281,577 | - | 65,412,220 | - | - | - |
| 3/31/1998 | TRANS FROM 1FN04530 (1FN045) | 4,492,195 | - | - | 4,492,195 | - | 69,904,414 | - | - | - |
| 4/30/1998 | TRANS FROM 1FN04530 (1FN045) | 16,869,760 | - | - | 16,869,760 | - | 86,774,174 | - | - | - |
| 5/27/1998 | TRANS TO 1FN04530 (1FN045) | (2,204,588) | - | - | - | (2,204,588) | 84,569,586 | - | - | - |
| 5/29/1998 | TRANS FROM 1FN04530 (1FN045) | 32,916 | - | - | 32,916 | - | 84,602,502 | - | - | - |
| 6/29/1998 | TRANS TO 1FN04530 (1FN045) | (8,041,000) | - | - | - | (8,041,000) | 76,561,502 | - | - | - |
| 7/29/1998 | TRANS FROM 1FN04530 (1FN045) | 51,013,560 | - | - | 51,013,560 | - | 127,575,062 | - | - | - |
| 8/31/1998 | TRANS FROM 1FN04530 (1FN045) | 1,583,810 | - | - | 1,583,810 | - | 129,158,872 | - | - | - |
| 9/30/1998 | TRANS TO 1FN04530 (1FN045) | (68,294,974) | - | - | - | (68,294,974) | 60,863,898 | - | - | - |
| 11/30/1998 | TRANS FROM 1FN04530 (1FN045) | 45,133,096 | - | - | 45,133,096 | - | 105,996,994 | - | - | - |
| 12/31/1998 | TRANS TO 1FN04530 (1FN045) | (6,598,356) | - | - | - | (6,598,356) | 99,398,638 | - | - | - |
| 1/29/1999 | TRANS FROM 1FN04530 (1FN045) | 161,399 | - | - | 161,399 | - | 99,560,037 | - | - | - |
| 2/24/1999 | TRANS TO 1FN04530 (1FN045) | (10,852,082) | - | - | - | (10,852,082) | 88,707,955 | - | - | - |
| 3/8/1999 | TRANS TO 1FN04530 (1FN045) | (377,252) | - | - | - | (377,252) | 88,330,703 | - | - | - |
| 3/10/1999 | TRANS FROM 1FN04530 (1FN045) | 2,236,948 | - | - | 2,236,948 | - | 90,567,651 | - | - | - |
| 3/11/1999 | TRANS TO 1FN04530 (1FN045) | (2,198,048) | - | - | - | (2,198,048) | 88,369,603 | - | - | - |
| 3/26/1999 | TRANS FROM 1FN04530 (1FN045) | 27,692,044 | - | - | 27,692,044 | - | 116,061,646 | - | - | - |
| 4/22/1999 | TRANS FROM 1FN04530 (1FN045) | 475,508 | - | - | 475,508 | - | 116,537,154 | - | - | - |
| 4/30/1999 | TRANS FROM 1FN04530 (1FN045) | 3,067,262 | - | - | 3,067,262 | - | 119,604,416 | - | - | - |
| 5/7/1999 | TRANS TO 1FN04530 (1FN045) | (5,553,562) | - | - | - | (5,553,562) | 114,050,854 | - | - | - |
| 5/13/1999 | TRANS FROM 1FN04530 (1FN045) | 887,603 | - | - | 887,603 | - | 114,938,457 | - | - | - |
| 5/26/1999 | TRANS TO 1FN04530 (1FN045) | (4,387,293) | - | - | - | (4,387,293) | 110,551,165 | - | - | - |
| 6/14/1999 | CHECK WIRE | 10,000,000 | 10,000,000 | - | - | - | 120,551,165 | - | - | - |

MADC1345_00000754

**BLMIS ACCOUNT NO. 1FN070 - FAIRFIELD SENTRY LIMITED C/O CITCO FUND SERVICES (EUROPE) GREENWICH GROUP 55 EAST 52ND STREET 33RD FL**

| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | Preference Period Initial Transfers | Two Year Initial Transfers | Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
| 6/15/1999 | TRANS TO 1FN045 *(1FN045)* | (10,000,000) | - | - | | (10,000,000) | 110,551,165 | - | - | - |
| 6/30/1999 | TRANS FROM 1FN04530 *(1FN045)* | 14,364,776 | - | - | 14,364,776 | - | 124,915,941 | - | - | - |
| 7/28/1999 | TRANS FROM 1FN04530 *(1FN045)* | 34,926,904 | - | - | 34,926,904 | - | 159,842,845 | - | - | - |
| 7/30/1999 | TRANS FROM 1FN04530 *(1FN045)* | 431,292 | - | - | 431,292 | - | 160,274,137 | - | - | - |
| 8/30/1999 | TRANS FROM 1FN04530 *(1FN045)* | 8,332,720 | - | - | 8,332,720 | - | 168,606,857 | - | - | - |
| 9/30/1999 | TRANS TO 1FN04530 *(1FN045)* | (6,330,788) | - | - | - | (6,330,788) | 162,276,069 | - | - | - |
| 10/18/1999 | TRANS TO 1FN04530 *(1FN045)* | (75,458,175) | - | - | - | (75,458,175) | 86,817,894 | - | - | - |
| 11/10/1999 | TRANS FROM 1FN04530 *(1FN045)* | 175,338 | - | - | 175,338 | - | 86,993,232 | - | - | - |
| 11/18/1999 | TRANS TO 1FN04530 *(1FN045)* | (827,544) | - | - | - | (827,544) | 86,165,688 | - | - | - |
| 11/22/1999 | TRANS TO 1FN04530 *(1FN045)* | (1,018,419) | - | - | - | (1,018,419) | 85,147,269 | - | - | - |
| 11/29/1999 | TRANS FROM 1FN04530 *(1FN045)* | 30,027,250 | - | - | 30,027,250 | - | 115,174,519 | - | - | - |
| 1/25/2000 | TRANS FROM 1FN04530 *(1FN045)* | 14,403,016 | - | - | 14,403,016 | - | 129,577,535 | - | - | - |
| 2/25/2000 | TRANS TO 1FN04530 *(1FN045)* | (82,774,692) | - | - | - | (82,774,692) | 46,802,843 | - | - | - |
| 3/14/2000 | TRANS TO 1FN04530 *(1FN045)* | (9,473,827) | - | - | - | (9,473,827) | 37,329,016 | - | - | - |
| 3/28/2000 | TRANS FROM 1FN04530 *(1FN045)* | 41,062,072 | - | - | 41,062,072 | - | 78,391,088 | - | - | - |
| 4/20/2000 | TRANS TO 1FN04530 *(1FN045)* | (23,687,730) | - | - | - | (23,687,730) | 54,703,358 | - | - | - |
| 5/11/2000 | TRANS TO 1FN04530 *(1FN045)* | (19,885,524) | - | - | - | (19,885,524) | 34,817,834 | - | - | - |
| 5/24/2000 | TRANS TO 1FN04530 *(1FN045)* | (1,858,970) | - | - | - | (1,858,970) | 32,958,865 | - | - | - |
| 6/19/2000 | TRANS FROM 1FN04530 *(1FN045)* | 2,174,646 | - | - | 2,174,646 | - | 35,133,511 | - | - | - |
| 7/31/2000 | TRANS TO 1FN04530 *(1FN045)* | (6,258,353) | - | - | - | (6,258,353) | 28,875,157 | - | - | - |
| 8/15/2000 | TRANS TO 1FN04530 *(1FN045)* | (322,414) | - | - | - | (322,414) | 28,552,744 | - | - | - |
| 9/14/2000 | TRANS FROM 1FN04530 *(1FN045)* | 96,815 | - | - | 96,815 | - | 28,649,558 | - | - | - |
| 9/18/2000 | TRANS TO 1FN04530 *(1FN045)* | (22,063,234) | - | - | - | (22,063,234) | 6,586,325 | - | - | - |
| 9/29/2000 | TRANS FROM 1FN04530 *(1FN045)* | 10 | - | - | 10 | - | 6,586,335 | - | - | - |
| 10/16/2000 | TRANS TO 1FN04530 *(1FN045)* | (126,650,554) [1] | - | - | - | (6,586,335) | - | - | - | - |
| 10/31/2000 | TRANS FROM 1FN04530 *(1FN045)* | 9,919,992 | - | - | 9,919,992 | - | 9,919,992 | - | - | - |
| 11/30/2000 | TRANS TO 1FN04530 *(1FN045)* | (444,510) | - | - | - | (444,510) | 9,475,482 | - | - | - |
| 12/29/2000 | TRANS TO 1FN04530 *(1FN045)* | (8,653,884) | - | - | - | (8,653,884) | 821,598 | - | - | - |
| 1/30/2001 | TRANS TO 1FN04530 *(1FN045)* | (2,375,234) [1] | - | - | - | (821,598) | - | - | - | - |
| 2/23/2001 | TRANS TO 1FN04530 *(1FN045)* | (44,625,508) [2] | - | - | - | - | - | - | - | - |
| 3/30/2001 | TRANS TO 1FN04530 *(1FN045)* | (34,941,619) [2] | - | - | - | - | - | - | - | - |
| 4/25/2001 | TRANS FROM 30 ACCT *(1FN045)* | 79,636,436 | - | - | 79,636,436 | - | 79,636,436 | - | - | - |
| 6/29/2001 | TRANS TO 1FN04530 *(1FN045)* | (3,343,654) | - | - | - | (3,343,654) | 76,292,782 | - | - | - |
| 7/25/2001 | TRANS TO 1FN04530 *(1FN045)* | (15,298,179) | - | - | - | (15,298,179) | 60,994,603 | - | - | - |
| 8/31/2001 | TRANS FROM 1FN04530 *(1FN045)* | 13,323,140 | - | - | 13,323,140 | - | 74,317,743 | - | - | - |
| 9/28/2001 | TRANS TO 1FN04530 *(1FN045)* | (238,964,272) [1] | - | - | - | (74,317,743) | - | - | - | - |
| 10/31/2001 | TRANS FROM 1FN04530 *(1FN045)* | 99,528,972 | - | - | 99,528,972 | - | 99,528,972 | - | - | - |
| 11/26/2001 | TRANS FROM 1FN04530 *(1FN045)* | 81,219,230 | - | - | 81,219,230 | - | 180,748,202 | - | - | - |
| 12/28/2001 | TRANS TO 1FN04530 *(1FN045)* | (2,651,946) | - | - | - | (2,651,946) | 178,096,256 | - | - | - |
| 1/31/2002 | TRANS TO 1FN04530 *(1FN045)* | (40,708,836) | - | - | - | (40,708,836) | 137,387,420 | - | - | - |
| 2/21/2002 | TRANS TO 1FN04530 *(1FN045)* | (33,292,967) | - | - | - | (33,292,967) | 104,094,453 | - | - | - |
| 2/28/2002 | TRANS FROM 1FN04530 *(1FN045)* | 3,425,696 | - | - | 3,425,696 | - | 107,520,149 | - | - | - |
| 3/25/2002 | TRANS FROM 1FN04530 *(1FN045)* | 65,122,070 | - | - | 65,122,070 | - | 172,642,219 | - | - | - |
| 4/12/2002 | TRANS TO 1FN04530 *(1FN045)* | (49,242,954) | - | - | - | (49,242,954) | 123,399,265 | - | - | - |
| 4/23/2002 | TRANS TO 1FN04530 *(1FN045)* | (56,064,462) | - | - | - | (56,064,462) | 67,334,803 | - | - | - |
| 5/29/2002 | TRANS FROM 1FN04530 *(1FN045)* | 46,500,011 | - | - | 46,500,011 | - | 113,834,814 | - | - | - |
| 6/28/2002 | TRANS FROM 1FR00 *(1FN045)* | 2,494,588 | - | - | 2,494,588 | - | 116,329,402 | - | - | - |
| 7/17/2002 | TRANS TO 1FN04530 *(1FN045)* | (22,672,052) | - | - | - | (22,672,052) | 93,657,350 | - | - | - |
| 7/31/2002 | TRANS FROM 1FN04530 *(1FN045)* | 11,434,184 | - | - | 11,434,184 | - | 105,091,534 | - | - | - |
| 8/21/2002 | TRANS FROM 1FN04530 *(1FN045)* | 217,941,363 | - | - | 217,941,363 | - | 323,032,897 | - | - | - |
| 10/29/2002 | TRANS FROM 1FN04530 *(1FN045)* | 38,357,496 | - | - | 38,357,496 | - | 361,390,393 | - | - | - |
| 11/18/2002 | TRANS FROM 1FN04530 *(1FN045)* | 11,130,830 | - | - | 11,130,830 | - | 372,521,223 | - | - | - |
| 1/22/2003 | TRANS TO 1FN04530 *(1FN045)* | (16,339,217) | - | - | - | (16,339,217) | 356,182,006 | - | - | - |
| 2/24/2003 | TRANS TO 1FN04530 *(1FN045)* | (110,293,149) | - | - | - | (110,293,149) | 245,888,857 | - | - | - |
| 3/18/2003 | TRANS TO 1FN04530 *(1FN045)* | (1,804,150) | - | - | - | (1,804,150) | 244,084,707 | - | - | - |
| 3/24/2003 | TRANS FROM 1FN04530 *(1FN045)* | 146,512,229 | - | - | 146,512,229 | - | 390,596,936 | - | - | - |
| 5/9/2003 | TRANS FROM 1FN04530 *(1FN045)* | 2,963,200 | - | - | 2,963,200 | - | 393,560,136 | - | - | - |
| 5/21/2003 | TRANS FROM 1FN04530 *(1FN045)* | 12,173,621 | - | - | 12,173,621 | - | 405,733,757 | - | - | - |

MADC1345_00000755

BLMIS ACCOUNT NO. 1FN070 - FAIRFIELD SENTRY LIMITED C/O FORTIS PRIME FUND GREENWICH GROUP 55 EAST 52ND STREET  33RD FL

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | Preference Period Initial Transfers | Two Year Initial Transfers | Six Year Initial Transfers |
| 5/30/2003 | TRANS FROM 1FN04530 *(1FN045)* | 3,055,702 | - | - | 3,055,702 | - | 408,789,459 | - | - | - |
| 6/19/2003 | TRANS FROM 1FN04530 *(1FN045)* | 53,945,624 | - | - | 53,945,624 | - | 462,735,083 | - | - | - |
| 6/20/2003 | TRANS FROM 1FN04530 *(1FN045)* | 15,725,146 | - | - | 15,725,146 | - | 478,460,229 | - | - | - |
| 6/24/2003 | TRANS FROM 1FN04530 *(1FN045)* | 19,679,159 | - | - | 19,679,159 | - | 498,139,388 | - | - | - |
| 7/10/2003 | TRANS TO 1FN04530 *(1FN045)* | (1,026,368) | - | - | - | (1,026,368) | 497,113,020 | - | - | - |
| 7/15/2003 | TRANS TO 1FN04530 *(1FN045)* | (13,037,548) | - | - | - | (13,037,548) | 484,075,472 | - | - | - |
| 7/21/2003 | TRANS FROM 1FN04530 *(1FN045)* | 15,458,963 | - | - | 15,458,963 | - | 499,534,435 | - | - | - |
| 8/15/2003 | TRANS TO 1FN04530 *(1FN045)* | (24,602,658) | - | - | - | (24,602,658) | 474,931,777 | - | - | - |
| 9/5/2003 | TRANS FROM 1FN04530 *(1FN045)* | 6,521,444 | - | - | 6,521,444 | - | 481,453,221 | - | - | - |
| 9/10/2003 | TRANS FROM 1FN04530 *(1FN045)* | 656,568 | - | - | 656,568 | - | 482,109,789 | - | - | - |
| 9/22/2003 | TRANS FROM 1FN04530 *(1FN045)* | 4,418,719 | - | - | 4,418,719 | - | 486,528,508 | - | - | - |
| 10/6/2003 | TRANS FROM 1FN04530 *(1FN045)* | 2,165,848 | - | - | 2,165,848 | - | 488,694,356 | - | - | - |
| 10/10/2003 | TRANS FROM 1FN04530 *(1FN045)* | 3,315,060 | - | - | 3,315,060 | - | 492,009,416 | - | - | - |
| 10/14/2003 | TRANS FROM 1FN04530 *(1FN045)* | 689,468 | - | - | 689,468 | - | 492,698,884 | - | - | - |
| 10/17/2003 | TRANS TO 1FN04530 *(1FN045)* | (320,558) | - | - | - | (320,558) | 492,378,326 | - | - | - |
| 11/18/2003 | TRANS TO 1FN04530 *(1FN045)* | (7,743,456) | - | - | - | (7,743,456) | 484,634,870 | - | - | - |
| 11/19/2003 | TRANS TO 1FN04530 *(1FN045)* | (5,415,948) | - | - | - | (5,415,948) | 479,218,922 | - | - | - |
| 11/20/2003 | TRANS TO 1FN04530 *(1FN045)* | (4,951,866) | - | - | - | (4,951,866) | 474,267,056 | - | - | - |
| 11/21/2003 | TRANS TO 1FN04530 *(1FN045)* | (4,640,754) | - | - | - | (4,640,754) | 469,626,302 | - | - | - |
| 12/12/2003 | TRANS TO 1FN04530 *(1FN045)* | (345,382) | - | - | - | (345,382) | 469,280,920 | - | - | - |
| 12/22/2003 | TRANS FROM 1FN04530 *(1FN045)* | 8,462,329 | - | - | 8,462,329 | - | 477,743,249 | - | - | - |
| 1/8/2004 | TRANS FROM 1FN04530 *(1FN045)* | 931,922 | - | - | 931,922 | - | 478,675,171 | - | - | - |
| 1/9/2004 | TRANS FROM 1FN04530 *(1FN045)* | 2,256,254 | - | - | 2,256,254 | - | 480,931,425 | - | - | - |
| 1/15/2004 | TRANS FROM 1FN04530 *(1FN045)* | 645,372 | - | - | 645,372 | - | 481,576,797 | - | - | - |
| 1/22/2004 | TRANS FROM 1FN04530 *(1FN045)* | 11,243,827 | - | - | 11,243,827 | - | 492,820,624 | - | - | - |
| 2/24/2004 | TRANS FROM 1FN04530 *(1FN045)* | 6,650,303 | - | - | 6,650,303 | - | 499,470,927 | - | - | - |
| 4/8/2004 | TRANS FROM 1FN04530 *(1FN045)* | 3,438,623 | - | - | 3,438,623 | - | 502,909,550 | - | - | - |
| 4/19/2004 | TRANS TO 1FN04530 *(1FN045)* | (3,853,373) | - | - | - | (3,853,373) | 499,056,177 | - | - | - |
| 4/26/2004 | TRANS TO 1FN04530 *(1FN045)* | (9,620,912) | - | - | - | (9,620,912) | 489,435,265 | - | - | - |
| 5/18/2004 | TRANS TO 1FN04530 *(1FN045)* | (99,564,312) | - | - | - | (99,564,312) | 389,870,953 | - | - | - |
| 5/24/2004 | TRANS FROM 1FN04530 *(1FN045)* | 2,535,408 | - | - | 2,535,408 | - | 392,406,361 | - | - | - |
| 6/8/2004 | TRANS FROM 1FN04530 *(1FN045)* | 11,283,738 | - | - | 11,283,738 | - | 403,690,099 | - | - | - |
| 6/16/2004 | TRANS TO 1FN04530 *(1FN045)* | (23,622,552) | - | - | - | (23,622,552) | 380,067,547 | - | - | - |
| 6/18/2004 | TRANS FROM 1FN04530 *(1FN045)* | 9,523,881 | - | - | 9,523,881 | - | 389,591,428 | - | - | - |
| 6/24/2004 | TRANS TO 1FN04530 *(1FN045)* | (893,170) | - | - | - | (893,170) | 388,698,258 | - | - | - |
| 6/25/2004 | TRANS FROM 1FN04530 *(1FN045)* | 1,668,458 | - | - | 1,668,458 | - | 390,366,716 | - | - | - |
| 8/18/2004 | TRANS FROM 1FN04530 *(1FN045)* | 2,743,784 | - | - | 2,743,784 | - | 393,110,500 | - | - | - |
| 8/19/2004 | TRANS TO 1FN04530 *(1FN045)* | (1,293,192) | - | - | - | (1,293,192) | 391,817,308 | - | - | - |
| 8/23/2004 | TRANS FROM 1FN04530 *(1FN045)* | 23,694,810 | - | - | 23,694,810 | - | 415,512,118 | - | - | - |
| 9/20/2004 | TRANS FROM 1FN04530 *(1FN045)* | 21,183,971 | - | - | 21,183,971 | - | 436,696,089 | - | - | - |
| 11/4/2004 | TRANS FROM 1FN04530 *(1FN045)* | 2,843,704 | - | - | 2,843,704 | - | 439,539,793 | - | - | - |
| 11/5/2004 | TRANS TO 1FN04530 *(1FN045)* | (108,192) | - | - | - | (108,192) | 439,431,601 | - | - | - |
| 11/15/2004 | TRANS FROM 1FN04530 *(1FN045)* | 40,346,532 | - | - | 40,346,532 | - | 479,778,133 | - | - | - |
| 12/14/2004 | TRANS TO 1FN04530 *(1FN045)* | (87,000) | - | - | - | (87,000) | 479,691,133 | - | - | - |
| 12/20/2004 | TRANS FROM 1FN04530 *(1FN045)* | 4,252,125 | - | - | 4,252,125 | - | 483,943,258 | - | - | - |
| 1/28/2005 | TRANS TO 1FN04530 *(1FN045)* | (90,920) | - | - | - | (90,920) | 483,852,338 | - | - | - |
| 1/28/2005 | TRANS FROM 1FN04530 *(1FN045)* | 4,585,124 | - | - | 4,585,124 | - | 488,437,462 | - | - | - |
| 2/16/2005 | TRANS FROM 1FN04530 *(1FN045)* | 58,914,536 | - | - | 58,914,536 | - | 547,351,998 | - | - | - |
| 3/8/2005 | TRANS TO 1FN04530 *(1FN045)* | (9,869,296) | - | - | - | (9,869,296) | 537,482,702 | - | - | - |
| 3/14/2005 | TRANS TO 1FN04530 *(1FN045)* | (6,268,538) | - | - | - | (6,268,538) | 531,214,164 | - | - | - |
| 3/15/2005 | TRANS TO 1FN04530 *(1FN045)* | (4,244,280) | - | - | - | (4,244,280) | 526,969,884 | - | - | - |
| 3/17/2005 | TRANS TO 1FN04530 *(1FN045)* | (3,327,088) | - | - | - | (3,327,088) | 523,642,796 | - | - | - |
| 5/20/2005 | TRANS FROM 1FN04530 *(1FN045)* | 2,046,868 | - | - | 2,046,868 | - | 525,689,664 | - | - | - |
| 5/23/2005 | TRANS FROM 1FN04530 *(1FN045)* | 7,922,073 | - | - | 7,922,073 | - | 533,611,737 | - | - | - |
| 6/24/2005 | TRANS TO 1FN04530 *(1FN045)* | (253,938) | - | - | - | (253,938) | 533,357,799 | - | - | - |
| 6/27/2005 | TRANS TO 1FN04530 *(1FN045)* | (10,962,018) | - | - | - | (10,962,018) | 522,395,781 | - | - | - |
| 6/28/2005 | TRANS TO 1FN04530 *(1FN045)* | (9,542,580) | - | - | - | (9,542,580) | 512,853,201 | - | - | - |
| 9/8/2005 | TRANS TO 1FN04530 *(1FN045)* | (498,048) | - | - | - | (498,048) | 512,355,153 | - | - | - |
| 9/9/2005 | TRANS FROM 1FN04530 *(1FN045)* | 1,776,492 | - | - | 1,776,492 | - | 514,131,645 | - | - | - |
| 9/13/2005 | TRANS FROM 1FN04530 *(1FN045)* | 1,506,780 | - | - | 1,506,780 | - | 515,638,425 | - | - | - |

MADC1345_00000756

BLMIS ACCOUNT NO. 1FN070 - FAIRFIELD SENTRY LIMITED C/O FAIRFIELD GREENWICH GROUP 55 EAST 52ND STREET 33RD FL

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | Preference Period Initial Transfers | Two Year Initial Transfers | Six Year Initial Transfers |
| 9/19/2005 | TRANS TO 1FN04530 (1FN045) | (2,145,759) | - | - | - | (2,145,759) | 513,492,666 | - | - | - |
| 9/22/2005 | TRANS TO 1FN04530 (1FN045) | (11,483,966) | - | - | - | (11,483,966) | 502,008,700 | - | - | - |
| 9/23/2005 | TRANS TO 1FN04530 (1FN045) | (17,971,611) | - | - | - | (17,971,611) | 484,037,089 | - | - | - |
| 9/27/2005 | TRANS TO 1FN04530 (1FN045) | (12,210,114) | - | - | - | (12,210,114) | 471,826,975 | - | - | - |
| 10/7/2005 | TRANS TO 1FN04530 (1FN045) | (2,943,328) | - | - | - | (2,943,328) | 468,883,647 | - | - | - |
| 10/11/2005 | TRANS TO 1FN04530 (1FN045) | (899,768) | - | - | - | (899,768) | 467,983,879 | - | - | - |
| 10/14/2005 | TRANS FROM 1FN04530 (1FN045) | 103,908 | - | - | 103,908 | - | 468,087,787 | - | - | - |
| 10/17/2005 | TRANS TO 1FN04530 (1FN045) | (2,580,822) | - | - | - | (2,580,822) | 465,506,965 | - | - | - |
| 10/21/2005 | TRANS TO 1FN04530 (1FN045) | (11,032,060) | - | - | - | (11,032,060) | 454,474,905 | - | - | - |
| 11/17/2005 | TRANS FROM 1FN04530 (1FN045) | 32,002,400 | - | - | 32,002,400 | - | 486,477,305 | - | - | - |
| 12/16/2005 | TRANS FROM 1FN04530 (1FN045) | 33,478,098 | - | - | 33,478,098 | - | 519,955,403 | - | - | - |
| 12/19/2005 | TRANS FROM 1FN04530 (1FN045) | 8,687,817 | - | - | 8,687,817 | - | 528,643,220 | - | - | - |
| 1/10/2006 | TRANS TO 1FN04530 (1FN045) | (3,889,552) | - | - | - | (3,889,552) | 524,753,668 | - | - | - |
| 1/11/2006 | TRANS FROM 1FN04530 (1FN045) | 1,030,077 | - | - | 1,030,077 | - | 525,783,745 | - | - | - |
| 1/13/2006 | TRANS FROM 1FN04530 (1FN045) | 2,826 | - | - | 2,826 | - | 525,786,571 | - | - | - |
| 1/23/2006 | TRANS TO 1FN04530 (1FN045) | (13,593,644) | - | - | - | (13,593,644) | 512,192,927 | - | - | - |
| 1/31/2006 | TRANS TO 1FN04530 (1FN045) | (6,678,599) | - | - | - | (6,678,599) | 505,514,328 | - | - | - |
| 2/16/2006 | TRANS TO 1FN04530 (1FN045) | (15,200,983) | - | - | - | (15,200,983) | 490,313,345 | - | - | - |
| 3/8/2006 | TRANS TO 1FN04530 (1FN045) | (4,343,138) | - | - | - | (4,343,138) | 485,970,207 | - | - | - |
| 3/10/2006 | TRANS TO 1FN04530 (1FN045) | (34,944) | - | - | - | (34,944) | 485,935,263 | - | - | - |
| 3/16/2006 | TRANS FROM 1FN04530 (1FN045) | 917,422 | - | - | 917,422 | - | 486,852,685 | - | - | - |
| 3/27/2006 | TRANS FROM 1FN04530 (1FN045) | 7,264,974 | - | - | 7,264,974 | - | 494,117,659 | - | - | - |
| 3/28/2006 | TRANS FROM 1FN04530 (1FN045) | 7,652,722 | - | - | 7,652,722 | - | 501,770,381 | - | - | - |
| 3/29/2006 | TRANS FROM 1FN04530 (1FN045) | 7,169,712 | - | - | 7,169,712 | - | 508,940,093 | - | - | - |
| 3/30/2006 | TRANS FROM 1FN04530 (1FN045) | 3,058,404 | - | - | 3,058,404 | - | 511,998,497 | - | - | - |
| 4/5/2006 | TRANS FROM 1FN04530 (1FN045) | 3,309,516 [3] | - | - | 3,193,399 | - | 515,191,896 | - | - | - |
| 4/6/2006 | TRANS FROM 1FN04530 (1FN045) | 3,494,848 [4] | - | - | - | - | 515,191,896 | - | - | - |
| 4/7/2006 | TRANS FROM 1FN04530 (1FN045) | 3,028,624 [4] | - | - | - | - | 515,191,896 | - | - | - |
| 4/21/2006 | TRANS TO 1FN04530 (1FN045) | (28,425,353) | - | - | - | (28,425,353) | 486,766,543 | - | - | - |
| 5/4/2006 | TRANS FROM 1FN04530 (1FN045) | 74,408 | - | - | 74,408 | - | 486,840,951 | - | - | - |
| 5/10/2006 | TRANS FROM 1FN04530 (1FN045) | 10,567,906 | - | - | 10,567,906 | - | 497,408,857 | - | - | - |
| 5/19/2006 | TRANS FROM 1FN04530 (1FN045) | 899,139 | - | - | 899,139 | - | 498,307,996 | - | - | - |
| 5/22/2006 | TRANS TO 1FN04530 (1FN045) | (35,144,607) | - | - | - | (35,144,607) | 463,163,389 | - | - | - |
| 6/15/2006 | TRANS TO 1FN04530 (1FN045) | (22,515,244) | - | - | - | (22,515,244) | 440,648,145 | - | - | - |
| 6/16/2006 | TRANS TO 1FN04530 (1FN045) | (33,763,988) | - | - | - | (33,763,988) | 406,884,157 | - | - | - |
| 6/19/2006 | TRANS TO 1FN04530 (1FN045) | (34,161,977) | - | - | - | (34,161,977) | 372,722,180 | - | - | - |
| 7/14/2006 | TRANS FROM 1FN04530 (1FN045) | 2,795,688 | - | - | 2,795,688 | - | 375,517,868 | - | - | - |
| 7/21/2006 | TRANS TO 1FN04530 (1FN045) | (20,286,770) | - | - | - | (20,286,770) | 355,231,098 | - | - | - |
| 8/17/2006 | TRANS FROM 1FN04530 (1FN045) | 39,376,547 | - | - | 39,376,547 | - | 394,607,645 | - | - | - |
| 9/15/2006 | TRANS FROM 1FN04530 (1FN045) | 25,138,862 | - | - | 25,138,862 | - | 419,746,507 | - | - | - |
| 9/26/2006 | TRANS FROM 1FN04530 (1FN045) | 9,807,842 | - | - | 9,807,842 | - | 429,554,349 | - | - | - |
| 9/27/2006 | TRANS FROM 1FN04530 (1FN045) | 5,062,464 | - | - | 5,062,464 | - | 434,616,813 | - | - | - |
| 10/26/2006 | TRANS FROM 1FN04530 (1FN045) | 3,537,972 | - | - | 3,537,972 | - | 438,154,785 | - | - | - |
| 10/27/2006 | TRANS FROM 1FN04530 (1FN045) | 761,852 | - | - | 761,852 | - | 438,916,637 | - | - | - |
| 10/30/2006 | TRANS TO 1FN04530 (1FN045) | (913,104) | - | - | - | (913,104) | 438,003,533 | - | - | - |
| 11/20/2006 | TRANS FROM 1FN04530 (1FN045) | 14,990,625 | - | - | 14,990,625 | - | 452,994,158 | - | - | - |
| 11/30/2006 | TRANS TO 1FN04530 (1FN045) | (4,000) | - | - | - | (4,000) | 452,990,158 | - | - | - |
| 12/26/2006 | TRANS FROM 1FN04530 (1FN045) | 16,961,204 | - | - | 16,961,204 | - | 469,951,362 | - | - | - |
| 12/27/2006 | TRANS FROM 1FN04530 (1FN045) | 8,748,264 | - | - | 8,748,264 | - | 478,699,626 | - | - | - |
| 12/28/2006 | TRANS FROM 1FN04530 (1FN045) | 4,843,152 | - | - | 4,843,152 | - | 483,542,778 | - | - | - |
| 2/16/2007 | TRANS FROM 1FN04530 (1FN045) | 2,094,120 | - | - | 2,094,120 | - | 485,636,898 | - | - | - |
| 2/20/2007 | TRANS FROM 1FN04530 (1FN045) | 1,523,780 | - | - | 1,523,780 | - | 487,160,678 | - | - | - |
| 2/22/2007 | TRANS FROM 1FN04530 (1FN045) | 2,492,082 | - | - | 2,492,082 | - | 489,652,760 | - | - | - |
| 2/23/2007 | TRANS FROM 1FN04530 (1FN045) | 1,101,916 | - | - | 1,101,916 | - | 490,754,676 | - | - | - |
| 3/9/2007 | TRANS TO 1FN04530 (1FN045) | (101,271,736) | - | - | - | (101,271,736) | 389,482,940 | - | - | - |
| 3/12/2007 | TRANS TO 1FN04530 (1FN045) | (24,286,284) | - | - | - | (24,286,284) | 365,196,656 | - | - | - |
| 3/19/2007 | TRANS TO 1FN04530 (1FN045) | (19,202,832) | - | - | - | (19,202,832) | 345,993,824 | - | - | - |
| 3/20/2007 | TRANS FROM 1FN04530 (1FN045) | 13,286,808 | - | - | 13,286,808 | - | 359,280,632 | - | - | - |
| 3/26/2007 | TRANS FROM 1FN04530 (1FN045) | 34,788,568 | - | - | 34,788,568 | - | 394,069,200 | - | - | - |

**BLMIS ACCOUNT NO. 1FN070 - FAIRFIELD SENTRY LIMITED C/O WALTER NOEL GREENWICH GROUP 55 EAST 52ND STREET 33RD FL**

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 Preference Period Initial Transfers | Column 10 Two Year Initial Transfers | Column 11 Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 3/27/2007 | TRANS TO 1FN04530 (1FN045) | (4,058,892) | - | - | - | (4,058,892) | 390,010,308 | - | - | - |
| 3/28/2007 | TRANS FROM 1FN04530 (1FN045) | (3,840,672) | - | - | - | (3,840,672) | 386,169,636 | - | - | - |
| 4/19/2007 | TRANS FROM 1FN04530 (1FN045) | 1,232,280 | - | - | 1,232,280 | - | 387,401,916 | - | - | - |
| 4/20/2007 | TRANS FROM 1FN04530 (1FN045) | 1,457,231 | - | - | 1,457,231 | - | 388,859,147 | - | - | - |
| 4/25/2007 | TRANS TO 1FN04530 (1FN045) | (12,475,662) | - | - | - | (12,475,662) | 376,383,485 | - | - | - |
| 5/21/2007 | TRANS FROM 1FN04530 (1FN045) | 40,951,590 | - | - | 40,951,590 | - | 417,335,075 | - | - | - |
| 6/15/2007 | TRANS FROM 1FN04530 (1FN045) | 5,076,240 | - | - | 5,076,240 | - | 422,411,315 | - | - | - |
| 6/21/2007 | TRANS FROM 1FN04530 (1FN045) | (16,358,454) | - | - | - | - | 422,411,315 | - | - | - |
| 6/21/2007 | TRANS FROM 1FN04530 (1FN045) | 16,358,454 | - | - | 16,358,454 | - | 438,769,769 | - | - | - |
| 6/21/2007 | CXL TRANS TO 1FN04530 (1FN045) | 16,358,454 | - | - | - | - | 438,769,769 | - | - | - |
| 6/22/2007 | TRANS FROM 1FN04530 (1FN045) | 11,264,616 | - | - | 11,264,616 | - | 450,034,385 | - | - | - |
| 6/25/2007 | TRANS FROM 1FN04530 (1FN045) | 15,109,680 | - | - | 15,109,680 | - | 465,144,065 | - | - | - |
| 8/6/2007 | TRANS FROM 1FN04530 (1FN045) | 5,588,112 | - | - | 5,588,112 | - | 470,732,177 | - | - | - |
| 8/21/2007 | TRANS TO 1FN04530 (1FN045) | (46,151,464) | - | - | - | (46,151,464) | 424,580,713 | - | - | - |
| 9/14/2007 | TRANS FROM 1FN04530 (1FN045) | (4,300,764) | - | - | - | (4,300,764) | 420,279,949 | - | - | - |
| 9/17/2007 | TRANS FROM 1FN04530 (1FN045) | 2,982,934 | - | - | 2,982,934 | - | 423,262,883 | - | - | - |
| 9/18/2007 | TRANS TO 1FN04530 (1FN045) | (3,313,760) | - | - | - | (3,313,760) | 419,949,123 | - | - | - |
| 9/24/2007 | TRANS FROM 1FN04530 (1FN045) | 43,058,543 | - | - | 43,058,543 | - | 463,007,666 | - | - | - |
| 9/25/2007 | TRANS FROM 1FN04530 (1FN045) | 30,822,432 | - | - | 30,822,432 | - | 493,830,098 | - | - | - |
| 9/26/2007 | TRANS FROM 1FN04530 (1FN045) | 29,312,521 | - | - | 29,312,521 | - | 523,142,619 | - | - | - |
| 10/31/2007 | TRANS TO 1FN04530 (1FN045) | (464,170) | - | - | - | (464,170) | 522,678,449 | - | - | - |
| 11/7/2007 | TRANS FROM 1FN04530 (1FN045) | 6,241,865 | - | - | 6,241,865 | - | 528,920,314 | - | - | - |
| 11/8/2007 | TRANS TO 1FN04530 (1FN045) | (20,753,285) | - | - | - | (20,753,285) | 508,167,029 | - | - | - |
| 11/15/2007 | TRANS FROM 1FN04530 (1FN045) | 5,471,788 | - | - | 5,471,788 | - | 513,638,817 | - | - | - |
| 11/21/2007 | TRANS TO 1FN04530 (1FN045) | (5,308,646) | - | - | - | (5,308,646) | 508,330,171 | - | - | - |
| 11/29/2007 | TRANS FROM 1FN04530 (1FN045) | 24,932,895 | - | - | 24,932,895 | - | 533,263,066 | - | - | - |
| 11/30/2007 | TRANS TO 1FN04530 (1FN045) | (80,488,599) | - | - | - | (80,488,599) | 452,774,467 | - | - | - |
| 12/11/2007 | TRANS FROM 1FN04530 (1FN045) | (1,733,394) | - | - | - | - | 452,774,467 | - | - | - |
| 12/11/2007 | TRANS FROM 1FN04530 (1FN045) | 1,733,394 | - | - | 1,733,394 | - | 454,507,861 | - | - | - |
| 12/11/2007 | CANCEL TRANS FROM 1FN04530 (1FN045) | 1,733,394 | - | - | - | - | 454,507,861 | - | - | - |
| 12/20/2007 | TRANS TO 1FN04530 (1FN045) | (12,548,796) | - | - | - | (12,548,796) | 441,959,065 | - | - | - |
| 1/28/2008 | TRANS FROM 1FN04530 (1FN045) | 7,061,062 | - | - | 7,061,062 | - | 449,020,127 | - | - | - |
| 2/20/2008 | TRANS FROM 1FN04530 (1FN045) | 32,780,162 | - | - | 32,780,162 | - | 481,800,289 | - | - | - |
| 2/21/2008 | TRANS TO 1FN04530 (1FN045) | (7,201,348) | - | - | - | (7,201,348) | 474,598,941 | - | - | - |
| 3/17/2008 | TRANS TO 1FN04530 (1FN045) | (29,179,488) | - | - | - | (29,179,488) | 445,419,453 | - | - | - |
| 4/4/2008 | TRANS FROM 1FN04530 (1FN045) | 18,207,627 | - | - | 18,207,627 | - | 463,627,080 | - | - | - |
| 4/7/2008 | TRANS TO 1FN04530 (1FN045) | (35,939,913) | - | - | - | (35,939,913) | 427,687,167 | - | - | - |
| 4/23/2008 | TRANS FROM 1FN04530 (1FN045) | 82,668 | - | - | 82,668 | - | 427,769,835 | - | - | - |
| 5/9/2008 | TRANS FROM 1FN04530 (1FN045) | 895,700 | - | - | 895,700 | - | 428,665,535 | - | - | - |
| 5/16/2008 | TRANS FROM 1FN04530 (1FN045) | 21,927,687 | - | - | 21,927,687 | - | 450,593,222 | - | - | - |
| 5/19/2008 | TRANS TO 1FN04530 (1FN045) | (12,325,586) | - | - | - | (12,325,586) | 438,267,636 | - | - | - |
| 5/27/2008 | TRANS FROM 1FN04530 (1FN045) | 18,061,096 | - | - | 18,061,096 | - | 456,328,732 | - | - | - |
| 5/28/2008 | TRANS TO 1FN04530 (1FN045) | (57,696,344) | - | - | - | (57,696,344) | 398,632,388 | - | - | - |
| 7/21/2008 | TRANS FROM 1FN04530 (1FN045) | 13,243,076 | - | - | 13,243,076 | - | 411,875,464 | - | - | - |
| 7/22/2008 | TRANS TO 1FN04530 (1FN045) | (31,073,284) | - | - | - | (31,073,284) | 380,802,180 | - | - | - |
| 7/23/2008 | TRANS FROM 1FN04530 (1FN045) | 38,822,168 | - | - | 38,822,168 | - | 419,624,348 | - | - | - |
| 8/8/2008 | TRANS FROM 1FN04530 (1FN045) | 20,758,716 | - | - | 20,758,716 | - | 440,383,064 | - | - | - |
| 8/11/2008 | TRANS TO 1FN04530 (1FN045) | (38,848,084) | - | - | - | (38,848,084) | 401,534,980 | - | - | - |
| 8/13/2008 | TRANS FROM 1FN04530 (1FN045) | 3,869,736 | - | - | 3,869,736 | - | 405,404,716 | - | - | - |
| 8/18/2008 | TRANS FROM 1FN04530 (1FN045) | 25,981,007 | - | - | 25,981,007 | - | 431,385,723 | - | - | - |
| 9/10/2008 | TRANS FROM 1FN04530 (1FN045) | 4,061,814 | - | - | 4,061,814 | - | 435,447,537 | - | - | - |
| 9/11/2008 | TRANS TO 1FN04530 (1FN045) | (19,504,371) | - | - | - | (19,504,371) | 415,943,166 | - | - | - |
| 9/15/2008 | TRANS TO 1FN04530 (1FN045) | (57,531,648) | - | - | - | (57,531,648) | 358,411,518 | - | - | - |
| 9/19/2008 | TRANS TO 1FN04530 (1FN045) | (57,304,999) | - | - | - | (57,304,999) | 301,106,519 | - | - | - |
| 11/6/2008 | TRANS FROM 1FN04530 (1FN045) | 582,032 | - | - | 582,032 | - | 301,688,551 | - | - | - |
| 11/7/2008 | TRANS TO 1FN04530 (1FN045) | (14,981,670) | - | - | - | (14,981,670) | 286,706,881 | - | - | - |
| 11/10/2008 | TRANS FROM 1FN04530 (1FN045) | 9,914,944 | - | - | 9,914,944 | - | 296,621,825 | - | - | - |
| 11/19/2008 | TRANS TO 1FN04530 (1FN045) | (297,933,758) [1] | - | - | - | (296,621,825) | - | - | - | - |
| 11/25/2008 | TRANS TO 1FN04530 (1FN045) | (11,458,744) [2] | - | - | - | - | - | - | - | - |

MADC1345_00000758

BLMIS ACCOUNT NO. 1FN070 - FAIRFIELD SENTRY LIMITED C/O CITCO FUND SERVICES GREENWICH GROUP 55 EAST 52ND STREET  33RD FL

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | Preference Period Initial Transfers | Two Year Initial Transfers | Six Year Initial Transfers |
| | | Total: | $ 10,000,000 | $    - | $ 2,355,946,364 | $ (2,365,946,364) | $    - | $    - | $    - | $    - |

[1] Although BLMIS statements reflect that a larger transfer was made out of the account on this date, a portion of the "transferred" funds consisted of fictitious profits which were never achieved and thus could not have been transferred.  Accordingly, only the principal remaining in the account was transferred out of the account on this date.

[2] Although BLMIS statements reflect that funds were transferred out of this account on this date, these funds consisted entirely of fictitious profits which were never achieved and thus no funds were actually transferred out of the account on this date. Accordingly, the account balance has remained unchanged.

[3] Although BLMIS statements reflect that a larger transfer was made into the account on this date, a portion of the "transferred" funds consisted of fictitious profits which were never achieved and thus could not have been transferred.  Accordingly, only the principal remaining in the originating account was transferred into this account on this date.

[4] Although BLMIS statements reflect that funds were transferred into this account on this date, these funds consisted entirely of fictitious profits which were never achieved and thus no funds were actually transferred into the account on this date. Accordingly, the account balance has remained unchanged.

MADC1345_00000759

**SUBSEQUENT TRANSFERS FROM FAIRFIELD SENTRY TO THE DEFENDANT**

| Column 1 | Column 2 | Column 3 |
|----------|----------|----------|
| **Date** | **Transferee** | **Amount** |
| 5/14/2003 | Clariden [1] | (84,331) |
| 6/16/2003 | Bank Leu [2] | (51,868) |
| 8/15/2003 | Clariden | (63,113) |
| 9/17/2003 | Clariden | (750,000) |
| 9/17/2003 | Clariden | (46,398) |
| 9/17/2003 | Clariden | (35,000) |
| 10/14/2003 | Clariden | (100,000) |
| 10/14/2003 | Clariden | (99,961) |
| 1/21/2004 | Clariden | (36,000) |
| 3/18/2004 | Clariden | (401,444) |
| 3/18/2004 | Clariden | (333,442) |
| 6/17/2004 | Bank Leu | (184,787) |
| 6/17/2004 | Clariden | (168,157) |
| 6/17/2004 | Clariden | (132,693) |
| 7/16/2004 | Clariden | (55,698) |
| 10/19/2004 | Bank Leu | (507,445) |
| 10/19/2004 | Bank Leu | (304,467) |
| 11/16/2004 | Clariden | (50,718) |
| 7/15/2005 | Clariden | (44,071) |
| 9/15/2005 | Clariden | (30,830) |
| 11/17/2005 | Clariden | (636,415) |
| 11/17/2005 | Bank Leu | (520,405) |
| 11/17/2005 | Clariden | (488,552) |
| 1/19/2006 | Clariden | (171,689) |
| 2/15/2006 | Clariden | (321,207) |
| 2/15/2006 | Clariden | (83,082) |
| 3/17/2006 | Clariden | (624,484) |
| 3/17/2006 | Clariden | (62,157) |
| 4/20/2006 | Clariden | (204,998) |
| 4/20/2006 | Clariden | (106,935) |
| 4/20/2006 | Clariden | (105,743) |
| 4/20/2006 | Clariden | (101,200) |
| 5/15/2006 | Clariden | (181,609) |
| 5/15/2006 | Bank Leu | (128,522) |
| 6/16/2006 | Clariden | (205,745) |
| 6/16/2006 | Bank Leu | (108,199) |
| 6/16/2006 | Clariden | (53,619) |
| 7/20/2006 | Clariden | (109,140) |
| 7/20/2006 | Clariden | (103,396) |
| 9/14/2006 | Clariden | (121,551) |
| 9/14/2006 | Clariden | (31,613) |
| 10/12/2006 | Bank Leu | (161,037) |
| 10/12/2006 | Bank Leu | (34,160) |
| 11/14/2006 | Clariden | (712,615) |
| 11/14/2006 | Clariden | (459,008) |
| 11/14/2006 | Clariden | (132,487) |
| 11/14/2006 | Clariden | (40,740) |
| 2/15/2007 | Clariden | (463,100) |
| 2/15/2007 | Clariden | (301,678) |
| 2/15/2007 | Clariden | (108,604) |
| 4/17/2007 | Clariden | (200,925) |
| 4/17/2007 | Clariden | (117,419) |

MADC1345_00000760

**SUBSEQUENT TRANSFERS FROM FAIRFIELD SENTRY TO THE DEFENDANT**

| Column 1 | Column 2 | Column 3 |
|----------|----------|----------|
| **Date** | **Transferee** | **Amount** |
| 5/16/2007 | Clariden | (854,976) |
| 5/16/2007 | Clariden | (432,987) |
| 6/15/2007 | Clariden | (6,273,490) |
| 6/15/2007 | Clariden | (588,017) |
| 6/15/2007 | Clariden | (305,545) |
| 7/19/2007 | Clariden | (1,129,676) |
| 7/19/2007 | Clariden | (707,048) |
| 7/19/2007 | Clariden | (125,141) |
| 7/19/2007 | Clariden | (73,383) |
| 7/19/2007 | Clariden | (55,062) |
| 8/17/2007 | Clariden | (1,053,882) |
| 8/17/2007 | Clariden | (117,829) |
| 8/17/2007 | Clariden | (82,731) |
| 8/17/2007 | Clariden | (68,316) |
| 8/17/2007 | Clariden | (43,873) |
| 8/17/2007 | Clariden | (10,028) |
| 9/19/2007 | Clariden | (369,297) |
| 9/19/2007 | Clariden | (346,614) |
| 9/19/2007 | Clariden | (127,425) |
| 9/19/2007 | Clariden | (65,234) |
| 9/19/2007 | Clariden | (52,459) |
| 9/19/2007 | Clariden | (47,781) |
| 9/19/2007 | Clariden | (26,669) |
| 9/19/2007 | Clariden | (10,059) |
| 10/16/2007 | Clariden | (32,234) |
| 11/19/2007 | Clariden | (537,717) |
| 11/19/2007 | Clariden | (441,553) |
| 11/19/2007 | Clariden | (132,513) |
| 11/19/2007 | Clariden | (40,812) |
| 11/19/2007 | Clariden | (5,102) |
| 11/23/2007 | Clariden | (600,000) |
| 12/19/2007 | Clariden | (61,017) |
| 1/17/2008 | Clariden | (55,492) |
| 2/15/2008 | Clariden | (55,551) |
| 3/18/2008 | Clariden | (110,549) |
| 3/18/2008 | Clariden | (39,017) |
| 3/18/2008 | Clariden | (36,416) |
| 4/14/2008 | Clariden | (200,000) |
| 5/15/2008 | Clariden | (394,515) |
| 5/15/2008 | Clariden | (79,324) |
| 5/15/2008 | Clariden | (70,921) |
| 5/15/2008 | Clariden | (64,021) |
| 6/17/2008 | Clariden | (840,997) |
| 6/17/2008 | Clariden | (106,721) |
| 6/17/2008 | Clariden | (103,406) |
| 7/15/2008 | Clariden | (239,653) |
| 7/15/2008 | Clariden | (193,731) |
| 8/18/2008 | Clariden | (26,688) |
| 9/16/2008 | Clariden | (161,270) |
| 9/16/2008 | Clariden | (149,242) |
| 9/16/2008 | Clariden | (23,209) |
| 10/15/2008 | Clariden | (1,091,753) |

MADC1345_00000761

Exhibit E

## SUBSEQUENT TRANSFERS FROM FAIRFIELD SENTRY TO THE DEFENDANT

| Column 1 | Column 2 | Column 3 |
|---|---|---|
| **Date** | **Transferee** | **Amount** |
| 10/15/2008 | Clariden | (821,628) |
| 10/15/2008 | Clariden | (18,031) |
| 11/19/2008 | Clariden | (663,092) |
| 11/19/2008 | Clariden | (642,913) |
| 11/19/2008 | Clariden | (590,191) |
| 11/19/2008 | Clariden | (436,424) |
| 11/19/2008 | Clariden | (318,467) |
| 11/19/2008 | Clariden | (274,801) |
| 11/19/2008 | Clariden | (247,057) |
| 11/19/2008 | Clariden | (236,061) |
| 11/19/2008 | Clariden | (215,965) |
| 11/19/2008 | Clariden | (192,933) |
| 11/19/2008 | Clariden | (183,791) |
| 11/19/2008 | Clariden | (153,472) |
| 11/19/2008 | Clariden | (128,364) |
| 11/19/2008 | Clariden | (112,032) |
| 11/19/2008 | Clariden | (108,185) |
| 11/19/2008 | Clariden | (105,832) |
| 11/19/2008 | Clariden | (105,742) |
| 11/19/2008 | Clariden | (103,591) |
| 11/19/2008 | Clariden | (102,583) |
| 11/19/2008 | Clariden | (101,875) |
| 11/19/2008 | Clariden | (100,073) |
| 11/19/2008 | Clariden | (69,433) |
| 11/19/2008 | Clariden | (62,913) |
| 11/19/2008 | Clariden | (52,371) |
| 11/19/2008 | Clariden | (50,937) |
| 11/19/2008 | Clariden | (36,377) |
| 11/19/2008 | Clariden | (33,744) |
| 11/19/2008 | Clariden | (26,125) |
| **Total:** | | **$ (35,838,401)** |

[1] All of the transfers to Clariden were also to, or for the benefit of, the Defendant.  See Complaint ¶ 58.

[2] All of the transfers to Bank Leu were also to, or for the benefit of, the Defendant.  See Complaint ¶ 58.

MADC1345_00000762

**SUBSEQUENT TRANSFERS FROM FAIRFIELD SENTRY TO FAIRFIELD SIGMA**

| Column 1 | Column 2 |
|----------|----------|
| Date | Amount |
| 5/14/2003 | (1,800,000) |
| 7/16/2003 | (3,000,000) |
| 8/15/2003 | (700,000) |
| 9/17/2003 | (2,600,000) |
| 9/17/2003 | (10,500,000) |
| 10/14/2003 | (600,000) |
| 11/19/2003 | (2,150,000) |
| 1/21/2004 | (8,650,000) |
| 2/18/2004 | (2,150,000) |
| 3/24/2004 | (7,350,000) |
| 4/20/2004 | (4,700,000) |
| 4/20/2004 | (8,400,000) |
| 5/17/2004 | (7,700,000) |
| 6/17/2004 | (2,500,000) |
| 8/13/2004 | (3,200,000) |
| 9/15/2004 | (850,000) |
| 6/15/2005 | (9,450,000) |
| 7/15/2005 | (8,300,000) |
| 10/14/2005 | (16,450,000) |
| 11/17/2005 | (19,200,000) |
| 12/19/2005 | (8,250,000) |
| 1/19/2006 | (1,500,000) |
| 3/17/2006 | (24,350,000) |
| 4/20/2006 | (1,600,000) |
| 6/26/2006 | (11,850,000) |
| 12/14/2006 | (650,000) |
| 6/15/2007 | (3,750,000) |
| 9/19/2007 | (12,500,000) |
| 9/28/2007 | (2,255,802) |
| 11/23/2007 | (1,850,000) |
| 1/17/2008 | (37,600,000) |
| 5/15/2008 | (28,000,000) |
| 5/31/2008 | (147,049) |
| 6/30/2008 | (161,054) |
| 6/30/2008 | (1,960,013) |
| 7/15/2008 | (44,000,000) |
| 9/16/2008 | (62,100,000) |
| 10/15/2008 | (41,500,000) |
| 10/24/2008 | (130,000,000) |
| 11/19/2008 | (218,000,000) |

|  | Total: | $ | (752,273,917) |

Page 1 of 1

**SUBSEQUENT TRANSFERS FROM FAIRFIELD SIGMA TO THE DEFENDANT**

| Column 1 | Column 2 | Column 3 |
|---|---|---|
| **Date** | **Transferee** | **Amount** |
| 4/17/2003 | Bank Leu [1] | (11,133) |
| 9/25/2003 | Clariden [2] | (84,146) |
| 12/22/2003 | Bank Leu | (107,700) |
| 12/21/2005 | Bank Leu | (12,913) |
| 1/27/2006 | Clariden | (136,006) |
| 2/15/2006 | Clariden | (499,366) |
| 3/24/2006 | Clariden | (600,179) |
| 3/24/2006 | Clariden | (154,059) |
| 4/21/2006 | Clariden | (71,582) |
| 6/20/2006 | Clariden | (467,044) |
| 10/17/2006 | Bank Leu | (50,155) |
| 11/17/2006 | Clariden | (1,523,609) |
| 11/17/2006 | Clariden | (184,963) |
| 3/15/2007 | Clariden | (46,273) |
| 4/17/2007 | Clariden | (143,150) |
| 5/16/2007 | Clariden | (334,658) |
| 5/16/2007 | Clariden | (110,791) |
| 6/19/2007 | Clariden | (120,895) |
| 6/19/2007 | Clariden | (116,059) |
| 8/17/2007 | Clariden | (106,437) |
| 11/20/2007 | Clariden | (1,049,178) |
| 3/18/2008 | Clariden | (317,886) |
| 3/18/2008 | Clariden | (94,026) |
| 5/20/2008 | Clariden | (2,978,044) |
| 5/20/2008 | Clariden | (29,404) |
| 8/15/2008 | Clariden | (276,224) |
| 9/19/2008 | Clariden | (878,379) |
| 10/20/2008 | Clariden | (398,036) |
| 11/21/2008 | Clariden | (64,506) |
| 11/21/2008 | Clariden | (26,129) |
| **Total:** | | **$ (10,992,932)** |

[1] All of the transfers to Bank Leu were also to, or for the benefit of, the Defendant.  See Complaint ¶ 59.

[2] All of the transfers to Clariden were also to, or for the benefit of, the Defendant.  See Complaint ¶ 59.

MADC1345_00000764

## SUBSEQUENT TRANSFERS FROM FAIRFIELD SENTRY TO FAIRFIELD LAMBDA

| Column 1 | Column 2 |
|---|---|
| **Date** | **Amount** |
| 5/14/2003 | (1,100,000) |
| 7/16/2003 | (250,000) |
| 8/15/2003 | (1,700,000) |
| 9/17/2003 | (1,300,000) |
| 9/17/2003 | (2,100,000) |
| 10/14/2003 | (250,000) |
| 12/18/2003 | (175,000) |
| 1/21/2004 | (275,000) |
| 2/18/2004 | (100,000) |
| 3/18/2004 | (750,000) |
| 4/20/2004 | (3,170,000) |
| 5/17/2004 | (4,700,000) |
| 6/17/2004 | (850,000) |
| 8/13/2004 | (900,000) |
| 9/15/2004 | (115,000) |
| 2/16/2005 | (1,400,000) |
| 4/14/2005 | (1,300,000) |
| 6/15/2005 | (3,050,000) |
| 7/15/2005 | (4,125,000) |
| 8/16/2005 | (1,400,000) |
| 10/14/2005 | (1,850,000) |
| 11/17/2005 | (2,900,000) |
| 12/19/2005 | (875,000) |
| 1/19/2006 | (700,000) |
| 3/17/2006 | (1,300,000) |
| 4/19/2006 | (200,000) |
| 7/20/2006 | (1,100,000) |
| 8/14/2006 | (150,000) |
| 11/14/2006 | (800,000) |
| 2/15/2007 | (1,000,000) |
| 5/22/2007 | (150,000) |
| 6/15/2007 | (800,000) |
| 7/19/2007 | (900,000) |
| 9/19/2007 | (100,000) |
| 1/17/2008 | (2,100,000) |
| 5/15/2008 | (1,600,000) |
| 7/15/2008 | (900,000) |
| 9/16/2008 | (2,100,000) |
| 11/19/2008 | (4,400,000) |
| **Total:** | **$ (52,935,000)** |

MADC1345_00000765

**SUBSEQUENT TRANSFER FROM FAIRFIELD LAMBDA TO THE DEFENDANT**

| Column 1 Date | Column 2 Transferee | Column 3 Amount |
|---|---|---|
| 6/18/2008 | Clariden [1] | (68,983) |
| **Total:** | | $ (68,983) |

[1] The transfer to Clariden was also to, or for the benefit of, the Defendant.  See Complaint ¶ 60.

MADC1345_00000766

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Oren J. Warshavsky
Timothy S. Pfeifer
Keith R. Murphy
Geraldine Ponto
Michelle R. Kaplan

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (BRL) |
| Plaintiff-Applicant, | |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 09-1161 (BRL) |
| v. | |
| FEDERICO CERETTI, CARLO GROSSO, KINGATE GLOBAL FUND, LTD., KINGATE EURO FUND, LTD., KINGATE MANAGEMENT | **THIRD AMENDED COMPLAINT** |

Exhibit A

LIMITED, FIM ADVISERS LLP, FIM LIMITED,
CITI HEDGE FUND SERVICES LIMITED,
FIRST PENINSULA INDIVIDUALLY AND AS
TRUSTEES OF THE ASHBY TRUST, THE
ASHBY TRUST, ASHBY INVESTMENT
SERVICES LIMITED INDIVIDUALLY AND AS
TRUSTEES OF THE ASHBY TRUST, ALPINE
TRUSTEES LIMITED INDIVIDUALLY AND AS
TRUSTEES OF THE EL PRELA TRUST, PORT
OF HERCULES LTD. INDIVIDUALLY AND AS
TRUSTEE OF THE EL PRELA TRUST, EL
PRELA TRUST, EL PRELA GROUP HOLDING
SERVICES, ASHBY HOLDING SERVICES
LIMITED, AND EL PRELA TRADING
INVESTMENTS LIMITED AND HSBC BANK
BERMUDA LIMITED,

Defendants.

Plaintiff Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of

Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated

estate of Bernard L. Madoff ("Madoff"), under the Securities Investor Protection Act, 15 U.S.C.

§§ 78aaa, *et seq.* ("SIPA"), by his undersigned counsel, under Rule 15 of the Federal Rules of

Civil Procedure for his Third Amended Complaint, states as follows:

I.  **FEDERICO CERETTI AND CARLO GROSSO FEED BLMIS THROUGH
    KINGATE**

**Madoff's Ponzi Scheme**

1. As is now well-known, Madoff masterminded a Ponzi scheme of breathtaking

scale, scope, and duration. For at least two decades before he confessed on December 11, 2008

(the "Filing Date"), Madoff stole approximately $20 billion from the customers of his fraudulent

brokerage BLMIS.

2. Madoff did not invest any of the $20 billion that he stole. Rather, he gave old

"investors" some of the money that new "investors" injected into his Ponzi scheme.

3. By the Filing Date, BLMIS fabricated account statements for its nearly 4,900

-2-

customer accounts that purported to show approximately $65 billion invested with BLMIS. These customer accounts, however, had not accrued any real profits because no investments had ever been made.

4.    All Ponzi schemes must collapse eventually. The world's supply of money is finite. Madoff, however, sustained his Ponzi scheme for so long with capital from around the globe. Madoff could not and did not accomplish this alone.

5.    The Trustee has identified a complex web of interconnected people and financial institutions that solicited billions of dollars for BLMIS in Europe, Russia, the Middle East, and elsewhere. Defendants Federico Ceretti ("Ceretti") and Carlo Grosso ("Grosso"), Italian nationals operating from England and reaching into continental Europe, were an important part of Madoff's de facto global sales force.

6.    Both Ceretti and Grosso had close and long-lasting business and personal relationships with Madoff. Both regularly met with Madoff in New York and elsewhere for over a decade. Moreover, Ceretti and Grosso worked together with the principals of certain other BLMIS "feeder funds" that also fed hundreds of millions into BLMIS.

7.    Like any sales force that sells only one product, Ceretti and Grosso fought with these other feeder funds over territory and over what they earned off of Madoff's victims.

### Ceretti and Grosso

8.    Ceretti and Grosso established and operated two large feeder funds that together fed approximately $1.7 billion of other people's money into BLMIS: Defendants Kingate Global Fund, Ltd. ("Kingate Global") beginning in 1994, and its offshoot Kingate Euro Fund, Ltd. ("Kingate Euro") beginning in 2000 (together, the "Kingate Funds"). The Kingate Funds were both 100 percent invested in BLMIS.

9.    As alleged fully herein, Ceretti and Grosso shielded the Kingate Funds from

-3-

MADC1345_00000769

**Exhibit A**

outside scrutiny and, consistent with Madoff's pattern of secrecy, permitted no genuine due diligence.

10.     Since their inception, the Kingate Funds redeemed nearly a billion dollars from BLMIS under circumstances that put Ceretti, Grosso, the Kingate Funds (and, as set forth fully herein, certain of the other Defendants) on notice of fraudulent activity at BLMIS.  These avoidable transfers to the Kingate Funds are Customer Property that must be returned to the estate.[1]

### Ceretti and Grosso Work with Tremont to Exploit European Capital

11.     In the early 1990s, Ceretti and Grosso were introduced to Madoff by Sandra Manzke ("Manzke"), a hedge fund manager then affiliated with Tremont (Bermuda) Limited ("Tremont") and a key player in feeding primarily U.S.-based capital into BLMIS.[2]

12.     Ceretti and Grosso sought to establish a BLMIS feeder fund that targeted primarily European investors.  With the assistance of Manzke and Tremont, Ceretti and Grosso formed Kingate Global in 1994.

13.     Around the same time, Ceretti and Grosso created Kingate Management Limited ("Kingate Management") to act as "co-manager" of Kingate Global with Tremont.  Manzke also acted as a vice-president of Kingate Global.

14.     Kingate Management, in fact, had only three employees who, as alleged fully herein, were unclear about the scope of their duties.

15.     Neither Kingate Management nor Tremont "managed" anything about the

---

[1] Under SIPA § 78lll, "The term 'customer property' means cash and securities (except customer name securities delivered to the customer) at any time received, acquired, or held by or for the account from a debtor or for the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted."
[2] The Trustee has filed a separate action in this Court against Manzke and Tremont in adversary proceeding No. 10-5310.

-4-

MADC1345_00000770

Kingate Funds.

16.    Rather, Kingate Management and Tremont began taking fees for feeding

hundreds of millions of dollars of other people's money into BLMIS through the Kingate Funds.

17.    Initially, Ceretti and Grosso received a fee of 1 percent of the assets that they

introduced to the Kingate Funds.  Tremont would receive a 0.5 percent fee on these same assets.

Reciprocally, if Tremont introduced the assets to the Kingate Funds, it would receive the 1

percent fee and Kingate Management would receive the 0.5 percent fee.  This lucrative

arrangement lasted in several configurations for over a decade until the day Madoff confessed,

although Tremont's role diminished over time.

**Ceretti and Grosso Contrive to Insulate BLMIS and the Kingate Funds from Scrutiny**

18.    Ceretti and Grosso enriched themselves on the back of the Kingate Funds'

investors through Kingate Management and their other companies, Defendants FIM Limited and

its affiliate FIM Advisers LLP ("FIM Advisers" and together "FIM").

19.    Kingate Management and FIM (together, the "Management Defendants"), owned

(directly or beneficially) and controlled by Ceretti and Grosso, purported to "advise," "consult,"

and "manage" the Kingate Funds and received millions of dollars in management and consulting

fees simply for feeding money into BLMIS.

20.    The Management Defendants further purported to conduct "due diligence" on the

Kingate Funds, but no genuine due diligence took place.  Moreover, Ceretti and Grosso took

active measures to prevent any due diligence on BLMIS and the Kingate Funds.  Ceretti and

Grosso repeatedly and staunchly suppressed the concerns of investors (and even FIM employees)

regarding the lack of transparency of the Kingate Funds and BLMIS.  Ceretti and Grosso

expressly directed that no such diligence be performed.

21.    The Management Defendants collected hundreds of millions of dollars in fees

MADC1345_00000771

from investors in the Kingate Funds who were, of course, 100 percent invested in BLMIS. Most

of this money went to Ceretti and Grosso personally.

## Citi Hedge Fails to Properly Examine BLMIS and the Kingate Funds

22.      Citi Hedge Fund Services Limited ("Citi Hedge") acted as the administrator for

the Kingate Funds. Despite its commitment to do so, Citi Hedge failed to independently verify

the pricing information provided by Madoff. Rather, it relied solely on information provided by

Madoff to calculate and disseminate the Kingate Funds' Net Asset Value ("NAV").

23.      Ceretti and Grosso, the Management Defendants, and Citi Hedge did not perform

any meaningful, substantive, or reasonable due diligence on the Kingate Funds or BLMIS's

operations, its returns, or the basis for its consistency. As alleged fully herein, Ceretti, Grosso,

and the Management Defendants knowingly and purposely ignored countless red flags of

fraudulent activity at BLMIS.

24.      Ceretti, Grosso, the Management Defendants, and Citi Hedge consistently

disregarded the red flags raised by the BLMIS account statements, trade confirmations, market

activity, and external and internal sources that indicated BLMIS's fraudulent activity. In fact,

many of the account statements and trade confirmations reviewed by Ceretti, Grosso, the

Management Defendants, and Citi Hedge reflected trades that were facially impossible.

25.      Every dollar received by Ceretti, Grosso, the Management Defendants, and Citi

Hedge is Customer Property and must be returned to the estate for equitable distribution.

## Ceretti and Grosso's Shell Companies

26.      Ceretti and Grosso also established and controlled a complex network of trusts

and shell companies to ensure that Ceretti and Grosso were the ultimate beneficiaries of the

monies collected by Kingate Management.

-6-

Exhibit A

### Ceretti's Shell Companies

27.     Ceretti is the ultimate beneficiary of Defendant El Prela Trust ("El Prela Trust"). Ceretti set up and acted as principal for Defendant El Prela Trading Investments Limited, as Trustee of El Prela Trust ("El Prela Trading"), Defendant Port of Hercules Trustees Ltd., as Trustee of El Prela Trust ("Port of Hercules"), and Defendant Alpine Trustees Limited, as Trustee of El Prela Trust ("Alpine Trustees"). Ceretti also created Defendant El Prela Group Holding Services ("El Prela Group") as the holding company for these Ceretti entities.

28.     At least $87 million was transferred from Kingate Management into, and among, bank accounts belonging to these entities since at least 2001. These entities, on behalf of Ceretti and Grosso, also actively bought and sold securities, including self-dealing in shares of Kingate Global.

### Grosso's Shell Companies

29.     Grosso is the ultimate beneficiary of Defendant Ashby Trust ("Ashby Trust"). Grosso set up and acted as principal for Defendant First Peninsula, as Trustee of the Ashby Trust ("First Peninsula") and Defendant Ashby Investments, as Trustee of the Ashby Trust ("Ashby Investments"). Grosso also created Defendant Ashby Holding Services Limited ("Ashby Holding") as the holding company for these Grosso entities.

30.     At least $87 million was transferred from Kingate Management into, and among, bank accounts belonging to these entities since at least 2001. These entities, on behalf of Ceretti and Grosso, also actively bought and sold securities.

31.     Together, the Ashby Trust, First Peninsula, Ashby Investments, Alpine Trustees, Port of Hercules, El Prela Trading, El Prela Trust, El Prela Group, and Ashby Holding shall be referred to as the "Ceretti and Grosso Shell Company Defendants."

32.     An organizational chart depicting the network of entities and shell companies

-7-

Ceretti and Grosso used to funnel funds from BLMIS to themselves is attached hereto as Exhibit C.

## II.  NATURE OF PROCEEDING

33.    BLMIS made avoidable and recoverable initial transfers to, or for the benefit of, the Kingate Funds in the amount of at least $975,541,729.  A number of defendants received subsequent transfers in the form of fees, which are recoverable subsequent transfers.  This action is brought to recover these avoidable transfers so that this Customer Property can be equitably distributed by the Trustee in accordance with his statutory authority.

34.    The Trustee brings this adversary proceeding under the statutory authority afforded to him by SIPA §§ 78fff(b), 78fff-1(a), and 78fff-2(c)(3), sections 105(a), 502(d), 510(c), 544, 547, 548(a), 550(a), and 551 of Title 11, United States Code (the "Bankruptcy Code"), the New York Fraudulent Conveyance Act (N.Y. Debt. & Cred. § 270, et seq. (McKinney 2001)) ("DCL"), NY C.P.L.R. § § 203(g) and 213(8), and other applicable law, for avoidance and recovery of preferential transfers and fraudulent transfers, recovery of subsequent transfers, disallowance of customer claims, equitable subordination, unjust enrichment, conversion, and money had and received.

## III.  JURISDICTION AND VENUE

35.    This is an adversary proceeding commenced before the same Court before which the main underlying SIPA Proceeding, No. 08-01789 (BRL) (the "SIPA Proceeding"), is pending.  The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York as Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC, et al., No. 08-CV-10791 (the "District Court Proceeding") and has been referred to this Court.  This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and 15 U.S.C. §§ 78eee(b)(2)(A), (b)(4).

-8-

36.     This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O).

37.     Venue in this district is proper under 28 U.S.C. § 1409.

IV.     **BACKGROUND**

38.     On the Filing Date, Madoff was arrested by federal agents for violation of the criminal securities laws, including, inter alia, securities fraud, investment adviser fraud, and mail and wire fraud. Contemporaneously, the Securities and Exchange Commission ("SEC") commenced a District Court Proceeding against Madoff and BLMIS. The SEC complaint alleges that Madoff and BLMIS engaged in fraud through the investment adviser activities of BLMIS. The District Court Proceeding remains pending.

39.     On December 12, 2008 The Honorable Louis L. Stanton of the District Court entered an order appointing Lee S. Richards, Esq. (the "Receiver") as receiver for the assets of BLMIS.

40.     On December 15, 2008 under section 78eee(a)(4)(A), the SEC consented to a combination of its own action with an application of SIPC. Thereafter, under section 78eee(a)(4)(B) of SIPA, SIPC filed an application in the District Court alleging, inter alia, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

41.     Also on December 15, 2008 Judge Stanton granted the SIPC application and entered an order under SIPA (known as the "Protective Decree"), which, in pertinent part:

a.     appointed the Trustee for the liquidation of the business of BLMIS under SIPA section 78eee(b)(3);

b.     appointed Baker & Hostetler LLP as counsel to the Trustee under SIPA section 78eee(b)(3); and

c.     removed the case to this Bankruptcy Court under section 78eee(b)(4) of SIPA.

By this protective Decree, the Receiver was removed as Receiver for BLMIS.

-9-

MADC1345_00000775

42.     By orders dated December 23, 2008 and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

43.     At a plea hearing (the "Plea Hearing") on March 12, 2009 in the case captioned United States v. Madoff, Case No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50), Madoff pleaded guilty to an eleven-count criminal information filed against him by the United States Attorney's Office for the Southern District of New York. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisery side of [BLMIS]." Id. at 23. Additionally, Madoff admitted "[a]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal." Id. On June 29, 2009 Madoff was sentenced to 150 years in prison.

44.     On August 11, 2009 a former BLMIS employee, Frank DiPascali, pled guilty to participating in and conspiring to perpetuate the Ponzi scheme. At a plea hearing on August 11, 2009 in the case entitled United States v. DiPascali, Case No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009), DiPascali pleaded guilty to a ten-count criminal information. Among other things, DiPascali admitted that the Ponzi scheme had been ongoing at BLMIS since at least the 1980s. Id. at 46.

## V.     THE TRUSTEE'S POWER AND STANDING

45.     As Trustee appointed under SIPA, the Trustee is charged with recovering and paying out Customer Property to BLMIS customers, assessing claims, and liquidating any other assets of BLMIS for the benefit of the estate and its creditors. The Trustee is in the process of marshalling BLMIS's assets, and this liquidation is well underway. However, the estate's present assets will not be sufficient to reimburse BLMIS customers for the billions of dollars they invested with BLMIS over the years. Consequently, the Trustee must use his broad

MADC1345_00000776

authority under SIPA and the Bankruptcy Code to pursue recovery from customers who received preferences and fraudulent transfers to the detriment of other defrauded customers whose money was consumed by the Ponzi scheme. Absent this and other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA section 78fff-2(c)(1).

46.   Under SIPA section 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code, in addition to the powers granted by SIPA under section 78fff-1(b). Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this case to the extent consistent with SIPA.

47.   Under SIPA sections 78fff(b) and 78lll(7)(B), the Filing Date is deemed to be the date of the filing of the petition within the meaning of section 548 of the Bankruptcy Code and the date of commencement of the case within the meaning of section 544 of the Bankruptcy Code.

48.   The Trustee has standing to bring these claims under section 78fff-1(a) of SIPA and the Bankruptcy Code, including sections 323(b), 544 and 704(a)(1), because, among other reasons:

a.   the Defendants received Customer Property;

b.   BLMIS incurred losses as a result of the claims set forth herein;

c.   BLMIS customers were injured as a result of the conduct detailed herein;

d.   SIPC has not reimbursed, and statutorily cannot fully reimburse, all customers for their losses;

e.   the Trustee will not be able to fully satisfy all claims;

f.   the Trustee, as bailee of Customer Property, can sue on behalf of the customer-bailors;

g.   the Trustee is the assignee of claims paid, and to be paid, to customers of

-11-

MADC1345_00000777

BLMIS who have filed claim in the liquidation proceeding (such claim-filing customers, collectively, "Accountholders"). As of this date, the Trustee has received multiple, express unconditional assignments of applicable Accountholders' causes of action, which actions could have been asserted against Defendants. As assignee, the Trustee stands in the shoes of persons who have suffered injury in fact and a distinct loss for which the Trustee is entitled to reimbursement in the form of monetary damages; the Trustee brings this action on behalf of, among others, those defrauded customers of BLMIS who invested more money in BLMIS than they withdrew;

h.  SIPC is the subrogee of claims paid, and to be paid, to customers of BLMIS who filed claims in the liquidation proceeding. SIPC has expressly conferred upon the Trustee enforcement of its rights of subrogation with respect to payments it has made and is making to customers of BLMIS from SIPC funds; and

i.  the Trustee has the power and authority to avoid and recover transfers under §§ 544, 547, 548, 550(a), and 551 of the Bankruptcy Code and SIPA §§ 78fff-1(a) and 78fff-2(c)(3).

## VI.  DEFENDANTS

### A.  *The Masterminds*

49.  **Federico Ceretti:** Ceretti is a resident of the United Kingdom and maintains an address at 37 Queens Gate Gardens, London, SW7 5RR, United Kingdom.

50.  **Carlo Grosso:** Grosso is a resident of the United Kingdom and maintains an address at 22 Cathcart Road, London SW10 9NN, United Kingdom.

51.  Grosso founded FIM Limited in 1981 and remains its Executive Chairman.

52.  Ceretti and Grosso established the Kingate Funds in 1994 and 2000 and created Kingate Management in 1994.

53.  Ceretti and Grosso co-founded FIM Advisers in 2004. Grosso is acting Executive Chairman and Chief Investment Officer while Ceretti holds the position of Chief Executive Officer.

54.  Ceretti and Grosso have operating authority over Kingate Management, and FIM's business operations, and had operating authority over the Kingate Funds, including the

-12-

MADC1345_00000778

**Exhibit A**

Kingate Funds' investments with BLMIS in New York.

55.     On information and belief, Ceretti and Grosso controlled and dominated all aspects of the Kingate Funds' business operations and Kingate Management and FIM, including the transfer of millions of dollars in fees collected by Kingate Management for "managing" the Kingate Funds to Ceretti and Grosso's Shell Company Defendants, ultimately for their own benefit.

56.     Ceretti and Gross communicated regularly with persons in New York regarding BLMIS.

### B.     The BLMIS Feeder Funds

57.     **Kingate Global:** Kingate Global is an international business company organized under the laws of the British Virgin Islands with a registered address at Bison Court, P.O. Box 3460, Road Town, Tortola, British Virgin Islands.

58.     Ceretti and Grosso commenced Kingate Global operations in 1994 and shares in Kingate Global were first sold on March 1, 1995.  Since its inception, all or substantially all of Kingate Global's assets were invested through BLMIS.

59.     According to BLMIS's records, Kingate Global maintained an account with BLMIS designated 1FN061 (the "Kingate Global Account").  The Kingate Global Account was opened on or about March 2, 1994 when a Customer Agreement, an Option Agreement, and a Trading Authorization Limited to Purchases and Sales of Securities and Options (the "Kingate Global Account Opening Documents") were executed and delivered to BLMIS at its headquarters at 885 Third Avenue, New York, New York.  This account was still open when Madoff was arrested on December 11, 2008.

60.     Kingate Global used New York banks to transfer funds into BLMIS, transferring investor funds to, as well as receiving monies and receipts from, the BLMIS account at

-13-

MADC1345_00000779

JPMorgan Chase & Co., Account #xxxxxxxxxxxx703 ("the 703 Account").

61.  **Kingate Euro:** Defendant Kingate Euro is an international business company organized under the laws of the British Virgin Islands with a registered address at Bison Court, P.O. Box 3460, Road Town, Tortola, British Virgin Islands.

62.  According to BLMIS's records, Kingate Euro maintained an account with BLMIS designated 1FN086 (the "Kingate Euro Account"). The account that came to be known as the Kingate Euro Account was opened originally on or about January 4, 1996 for a sub-fund of Kingate Global created to handle investments that were made in Deutsche Marks. In May 2000, that sub-fund became a separate legal entity, Kingate Euro, which handled investments denominated in Euros and assumed the rights to the old sub-fund's account at BLMIS. A Customer Agreement, an Option Agreement, and a Trading Authorization Limited to Purchases and Sales of Securities and Options (the "Kingate Euro Account Opening Documents") were executed and delivered on behalf of Kingate Euro to BLMIS at its headquarters at 885 Third Avenue, New York, New York.

63.  Kingate Euro used New York banks to transfer funds into BLMIS, transferring investor funds to, as well as receiving monies and receipts from, the 703 Account.

64.  The Kingate Funds are currently in liquidation. On June 4, 2009 the Eastern Caribbean Supreme Court in the High Court of Justice of the Virgin Islands appointed Joint Liquidators of the Kingate Funds. On October 5, 2009 the Supreme Court of Bermuda appointed the same Joint Liquidators. The Joint Liquidators have filed several actions in Bermuda, including an action against HSBC Bank Bermuda Limited f/k/a Bank Bermuda Limited ("Bank Bermuda") seeking the release of the proceeds of the transfers at issue in this action which are held in the Kingate Funds' accounts.

MADC1345_00000780

### C.    *The Management Defendants*

65.    <u>Kingate Management</u>:  Defendant Kingate Management is a corporation organized, controlled, and beneficially owned by Ceretti and Grosso under the laws of Bermuda on February 24, 1994 with a registered address at 2 Reid Street, Hamilton HM11, Bermuda.

66.    Kingate Management's purported purpose was to manage the Kingate Funds.  Its duties included selecting the Kingate Funds' sole investment adviser (BLMIS) and arranging accounting and administrative services for the Kingate Funds.

67.    As manager of the Kingate Funds, Kingate Management directed that the Kingate Funds transact and conduct business in New York, by inter alia, investing all of the assets of the Kingate Funds through BLMIS in New York.

68.    <u>FIM Limited</u>:  FIM Limited is an asset management company incorporated by Grosso under the laws of the United Kingdom with a registered address at Buchanan House, 1st Floor, 3 St. James's Square, London, SW1Y4JU, United Kingdom.  Ceretti and Grosso control and beneficially own FIM Limited.

69.    FIM Limited provided consultancy services to Kingate Management from 1995 until 2005, when Ceretti and Grosso created FIM Advisers, an affiliate which assumed the contract for consultancy services for Kingate Management.  Kingate Management paid fees to FIM Limited at its account with Brown Brothers Harriman & Co. in New York, New York.

70.    <u>FIM Advisers</u>:  FIM Advisers is a limited liability partnership formed, controlled, and beneficially owned by Ceretti and Grosso under the laws of the United Kingdom with a registered address at 20 St. James Square, London, SW1A 1ES, United Kingdom.

71.    FIM Advisers entered into a contract with Kingate Management on August 1, 2005 whereby FIM Advisers would render consulting advice and services for the Kingate Funds.

72.    FIM Advisers and its New York affiliate, FIM (USA), Inc. ("FIM (USA)"),

MADC1345_00000781

actively marketed FIM Advisers' services in the United States. FIM (USA) also performed research functions in New York on behalf and under the direction of FIM Advisers, FIM Limited, Kingate Management, and Ceretti and Grosso.

**D.** *The Administrator*

73. **Citi Hedge**: Citi Hedge, formerly known as BISYS Hedge Fund Services Limited and previously known as Hemisphere Management Limited ("Hemisphere"), is incorporated under the laws of Bermuda with a registered address at 9 Church Street, PO Box HM 951, Hamilton HM11, Bermuda.

74. Citi Hedge is an affiliate of Citigroup, Inc. and Citi Hedge Fund Services, Inc., a Delaware corporation registered to do business in New York with a registered address at 3435 Stelzer Road, Columbus, OH 43219. The Kingate Funds paid Citi Hedge via accounts at J.P. Morgan Chase in New York.

**E.** *The Ceretti and Grosso Shell Companies*

75. Ceretti and Grosso moved hundreds of millions of dollars in fraudulent transfers from the Kingate Funds through Kingate Management to shell companies that they owned and controlled.

76. The Ceretti and Grosso Shell Company Defendants routinely received funds originating from New York and derived substantial revenue from the receipt of these funds.

77. **Ashby Holding**: Ashby Holding is a limited liability company organized under the laws of the British Virgin Islands with a registered address at Palm Grove House, P.O. Box 3186, Road Town, Tortola, British Virgin Islands and its registered agent is Moore Stephens International Services (BVI) Limited. It also has an administrative office located at c/o Moore Stephens Services SAM, L'Estoril, Bloc C, 31 Avenue Princess Grace, MC 38000 Monaco. Ashby Holding received tens of millions of dollars in fraudulent transfers from Kingate

-16-

Management from April to December 2008. At all material times, Ashby Holding was the owner of 50 percent of the issued share capital in Kingate Management.

78. **First Peninsula**: First Peninsula is a limited liability company incorporated under the laws of Liberia with a registered address of 80 Broad Street, Monrovia, Liberia. First Peninsula received tens of millions of dollars in fraudulent transfers from Kingate Management from 2001 to 2008. First Peninsula was a registered holder of the issued share capital in Ashby Holding, which it held in trust for the beneficiaries of the Ashby Trust, including Grosso.

79. **Ashby Investment**: Ashby Investment is a limited liability company incorporated under the laws of the British Virgin Islands with a registered address at Palm Grove House, P.O. Box 3186, Road Town, Tortola, British Virgin Islands and its registered agent is Moore Stephens International Services (BVI) Limited. It also has an administrative office located at c/o Moore Stephens Services SAM, L'Estoril, Bloc C, 31 Avenue Princess Grace, MC 38000 Monaco. Ashby Investment received millions of dollars in fraudulent transfers from Kingate Management in 2008. Ashby Investment was a registered holder of the issued share capital in Ashby Holding, which it held in trust for the beneficiaries of the Ashby Trust, including Grosso.

80. **Ashby Trust**: On information and belief, Ashby Trust is a trust company formed in either Tortola, British Virgin Islands or Monrovia, Liberia and hundreds of millions of dollars in fraudulent transfers were funneled from Kingate Management through certain of the Ceretti and Grosso Shell Company Defendants and into the Ashby Trust for its beneficiaries, including Grosso.

81. **El Prela Group**: El Prela Group is a limited liability company incorporated under the laws of the British Virgin Islands with a registered address at Palm Grove House, P.O. Box 3186, Road Town, Tortola, British Virgin Islands and its registered agent is Moore Stephens

-17-

MADC1345_00000783

International Services (BVI) Limited. It also has an administrative office located at c/o Moore Stephens Services SAM, L'Estoril, Bloc C, 31 Avenue Princess Grace, MC 38000 Monaco. El Prela Group received millions of dollars in fraudulent transfers from Kingate Management from April to December 2008. At all material times, El Prela Group was the owner of 50 percent of the issued share capital in Kingate Management.

82. **Alpine Trustees**: Alpine Trustees is a limited liability company incorporated under the laws of Liberia with a registered address at 80 Broad Street, Monrovia, Liberia. Alpine Trustee received tens of millions of dollars in fraudulent transfers from Kingate Management from 2001 to 2008. At all material times, Alpine was a registered holder of the issued share capital in El Prela Group.

83. **Port of Hercules**: Port of Hercules is a limited liability company incorporated under the laws of the British Virgin Islands with a registered address at Palm Grove House, P.O. Box 3186, Road Town, Tortola, British Virgin Islands and its registered agent is Moore Stephens International Services (BVI) Limited. Port of Hercules received millions of dollars in fraudulent transfers from Kingate Management from 2001 to 2008. At all material times, Port of Hercules was a registered holder of the issued share capital in El Prela Group, which it held in trust for the beneficiaries of El Prela Trust, including Ceretti.

84. **El Prela Trading**: El Prela Trading is a limited liability company organized under the laws of the British Virgin Islands with a registered address located at Palm Grove House, P.O. Box 3186, Road Town, Tortola, British Virgin Islands and its registered agent is Moore Stephens International Services (BVI) Limited. It also has an administrative office located at c/o Moore Stephens Services SAM, L'Estoril, Bloc C, 31 Avenue Princess Grace, MC 38000 Monaco. El Prela Trading received tens of millions of dollars in fraudulent transfers from Kingate Management during 2008. At all material times, El Prela Trading was a registered

-18-

MADC1345_00000784

holder of the issued share capital in El Prela Group, which it held in trust for the beneficiaries of the El Prela Trust, including Ceretti.

85.   **El Prela Trust:**  On information and belief, El Prela Trust is a trust company formed in either Tortola, British Virgin Islands or Monrovia, Liberia and hundreds of millions of dollars in fraudulent transfers were funneled from Kingate Management through certain of the Ceretti and Grosso Shell Company Defendants and into the El Prela Trust for its beneficiaries, including Ceretti.

86.   On information and belief, the Ceretti and Grosso Shell Company Defendants transferred funds to New York bank accounts at the request of and for the benefit of Ceretti and Grosso.  For example, on or about March 31, 2008, Ashby Holding transferred $5 million to a bank account in New York at the request of Grosso.

*F.*   *The Custodian*

87.   **Bank Bermuda:**  Bank Bermuda is a banking institution with a registered address at 9 Bermudiana Road, Compass Point, 5th Floor, Pembroke, Bermuda.

88.   On March 1, 1994 and May 1, 2000, Kingate Global and Kingate Euro, respectively, entered into Custodian Agreements with Bank Bermuda whereby Bank Bermuda would serve as custodian for the Kingate Funds as the repository for the assets of the Kingate Funds.

89.   Bank Bermuda used New York banks to transfer funds into BLMIS, transferring investor funds into, and receiving monies and receipts from, the 703 Account.

*G.*   *This Court Has Personal Jurisdiction Over All Defendants*

90.   This Court has personal jurisdiction over all defendants named herein under New York Civil Practice Law Rule 302 and Bankruptcy Rule 7004 because each defendant has intentionally taken full advantage of the rights, benefits and privileges of conducting business

-19-

MADC1345_00000785

and/or transactions in the State of New York, purposely availed itself of the laws of the State of

New York by undertaking significant commercial activities in New York, and by receiving

Customer Property to its benefit, derived significant revenue from New York and maintained

minimum contacts with New York in connection with the claims alleged herein. Additionally,

the defendants have committed tortious acts both within and without New York, causing injury

in New York and to customers and creditors of BLMIS, derived substantial revenue from direct

or indirect investments with BLMIS and Madoff and expect or should reasonably expect that

their conduct would have consequences in New York.

## VII. THE PONZI SCHEME

91.     BLMIS was founded by Madoff in 1959 and, for most of its existence, operated

from its principal place of business at 885 Third Avenue, New York, New York. Madoff, as

founder, chairman, chief executive officer, and sole owner, operated BLMIS together with

several of his friends and family members. BLMIS was registered with the SEC as a securities

broker-dealer under Section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b).

By virtue of that registration, BLMIS was a member of SIPC. BLMIS had three business units:

market making, proprietary trading, and investment advisery (the "IA Business").

92.     Outwardly, Madoff ascribed the consistent success of the IA Business to the so-

called split-strike conversion strategy ("SSC Strategy"). Under that strategy, Madoff purported

to invest BLMIS customers' funds in a basket of common stocks within the Standard & Poor's

100 Index ("S&P 100") – a collection of the 100 largest publicly traded companies. Madoff

claimed that his basket of stocks would mimic the movement of the S&P 100. He also asserted

that he would carefully time purchases and sales to maximize value, and BLMIS customers'

funds would, intermittently, be out of the equity markets.

93.     The second part of the SSC Strategy was the hedge of Madoff's stock purchases

MADC1345_00000786

with options contracts. Those option contracts acted as a "collar" to limit both the potential

gains and losses on the basket of stocks. Madoff purported to use proceeds from the sale of S&P

100 call options to finance the cost of purchasing S&P 100 put options. Madoff told BLMIS

customers that when he exited the market, he would close out all equity and option positions and

invest all the resulting cash in United States Treasury bills or in mutual funds holding Treasury

bills. Madoff also told customers, including Ceretti and Grosso and certain of the other

Defendants named herein, that these "round-trips" into the market would occur between six and

ten times each year.

94.     BLMIS's IA Business customers received fabricated monthly or quarterly

statements showing that securities were held in, or had been traded through, their accounts. The

securities purchases and sales shown in the account statements never occurred, and the profits

reported were entirely fictitious. At the Plea Hearing, Madoff admitted that he never made the

investments he promised clients, who believed they were invested with him in the split strike

conversion strategy. He further admitted that he never purchased any of the securities he

claimed to have purchased for IA Business' customer accounts. In fact, there is no record of

BLMIS having cleared a single purchase or sale of securities in connection with the SSC

Strategy on any trading platform on which BLMIS reasonably could have traded securities.

Instead, investors' funds were principally deposited into the 703 Account.

95.     Prior to his arrest, Madoff assured clients and regulators that he purchased and

sold the put and call options on the over-the-counter ("OTC") market after hours, rather than

through any listed exchange. Based on the Trustee's investigation to date, there is no evidence

that the IA Business ever entered into any OTC options trades on behalf of IA Business account

holders.

96.     For all periods relevant hereto, the IA Business was operated as a Ponzi scheme.

MADC1345_00000787

The money received from investors was not invested in stocks and options, but rather used to pay withdrawals and to make other avoidable transfers. Madoff also used his customers' investments to enrich himself, his associates, and his family.

97.     The falsified monthly account statements reported that the accounts of the IA Business customers had made substantial gains, but in reality, due to the siphoning and diversion of new investments to fulfill payment requests or withdrawals from other BLMIS Accountholders, BLMIS did not have the funds to pay investors for those new investments. BLMIS only survived as long as it did by using the stolen principal invested by customers to pay other customers. Almost ten percent of this stolen principal was fed into the Ponzi scheme by Ceretti and Grosso's Kingate Funds.

98.     . It was essential for BLMIS to honor requests for payments in accordance with the falsely inflated account statements, because failure to do so promptly could have resulted in demand, investigation, the filing of a claim, and disclosure of the fraud.

99.     In an effort to hinder, delay or defraud authorities from detecting the fraud, BLMIS did not register as an investment adviser until August 2006. In or about January 2008, BLMIS filed with the SEC an amended Uniform Application for Investment Adviser Registration. The application represented, inter alia, that BLMIS had 23 customer accounts and assets under management of approximately $17.1 billion. In fact, in January 2008, BLMIS had approximately 4,900 active client accounts with a purported value of approximately $65 billion under management.

100.    Madoff's scheme continued until December 2008 when the requests for withdrawals overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

101.    Based upon the Trustee's ongoing investigation, there were more than 8,000

-22-

MADC1345_00000788

customer accounts at BLMIS over the life of the scheme. In early December 2008, BLMIS

generated account statements for its approximately 4,900 open customer accounts. When added

together, these statements purportedly showed that BLMIS customers had approximately $65

billion invested through BLMIS. In reality, BLMIS had assets on hand worth only a fraction of

that amount. Customer accounts had not accrued any real profits because virtually no

investments were ever made. By the time the Ponzi scheme came to light on December 11,

2008, with Madoff's arrest, investors had already lost approximately $20 billion in principal.

102.    Thus, at all times relevant hereto, the liabilities of BLMIS were billions of dollars

greater than its assets. BLMIS was insolvent in that: (i) its assets were worth less than the value

of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the

transfers, BLMIS was left with insufficient capital.

## VIII.   THE KINGATE FUNDS AND DEFENDANTS' ROLE IN PERPETUATING THE FRAUD

### A.    *Ceretti and Grosso Create The Kingate Funds*

103.    With over 60 years of experience in the financial industry between them, Ceretti

and Grosso used their expertise to induce investors to hand over millions of dollars to BLMIS

through the Kingate Funds, all the while collecting staggering "fees" from management and

consulting companies specifically instructed to turn a blind eye.

104.    Ceretti and Grosso orchestrated a complex network of funds, fund managers, and

shell companies to launder the money they siphoned from the Kingate Funds' investors.

105.    Manzke, a U.S. hedge fund manager then affiliated with Tremont and a key player

in funneling billions of dollars into the Ponzi scheme, personally introduced Grosso and Ceretti

to Madoff in the early 1990s.

106.    Following a 1993 investigation of BLMIS by the SEC, Madoff informed fund

MADC1345_00000789

managers, including Manzke, that going forward BLMIS would only accept funds for its IA

Business, rather than individual accounts.  Manzke proceeded to form a domestic fund, the

Tremont Broad Market Fund, and Ceretti and Grosso joined with Manzke to create Kingate

Global as the foreign fund counterpart.

107.    Ceretti and Grosso were the founders of Kingate Global and Manzke was a

director of Kingate Global.  Ceretti, Grosso, and Manzke used the Kingate Funds as vehicles to

funnel investments directly and exclusively into BLMIS.

108.    Around the same time, Ceretti and Grosso created Kingate Management,

incorporated in Bermuda in 1994.  Ceretti and Grosso formed Kingate Management to act as co-

manager of Kingate Global with Tremont.  Kingate Management and Tremont executed a Co-

Manager Agreement with Kingate Global on or about December 1, 1995.

109.    Under these agreements, Kingate Management and Tremont were to evaluate and

monitor the "Investment Adviser" (i.e., BLMIS) and to provide all necessary management

services to the funds.  Kingate Management and Tremont set up a fee structure whereby each co-

manager divided the fees earned and calculated based on the NAV of the Kingate Funds.

110.    Thereafter, Kingate Management and Tremont began placing hundreds of

millions, if not billions of dollars, with BLMIS through Kingate Global.

111.    Unlike other BLMIS feeder funds, Kingate Global did not charge performance

fees.  This enticed even those already invested with BLMIS through other funds.  In fact, Madoff

himself instructed Manzke that Kingate Global could no longer accept investors already invested

with the BLMIS feeder fund Fairfield Sentry.[3]  Fairfield Sentry was managed by Madoff's

friend, Walter Noel, who was losing fees to Kingate Global.

---

[3] The Trustee has filed a separate action in this Court against Fairfield Sentry in adversary proceeding No. 09-1239.

-24-

MADC1345_00000790

112.    Still, Ceretti and Grosso were not content to share the millions of dollars in fees coming in from the Kingate Funds.  Ceretti and Grosso forced Manzke to resign as director of Kingate Global and terminated the co-manager relationship with Tremont.  Tremont, however, continued to earn fees from Kingate Management pursuant to a 2006 consulting agreement.

113.    In 2000, Ceretti and Grosso created as a separate entity the Euro-denominated Kingate Euro, which had previously been a sub-fund of Kingate Global.  Ceretti and Grosso operated this fund identically to Kingate Global and Kingate Management executed a Manager Agreement with Kingate Euro on or about May 1, 2000.

*B.    Ceretti and Grosso Honor Madoff's Request for Secrecy*

114.    Ceretti and Grosso maintained strong personal relationships with Madoff.  Grosso also held face-to-face meetings with Madoff in New York and London about twice per year and spoke to him frequently by telephone.  During these meetings and telephone conversations, Grosso spoke to Madoff about his SSC Strategy and the performance of BLMIS and the Kingate Funds.  Ceretti and Grosso also frequently met with Madoff for dinners in London, accompanied by their wives.  On information and belief, Ceretti and Grosso relied on Madoff for information concerning his performance on behalf of the Kingate Funds.

115.    Madoff refused to be publicly associated with the Kingate Funds.  Neither Kingate Global nor Kingate Euro identified BLMIS or Madoff by name in their Information Memoranda.  Instead, they referred to BLMIS as a "New York based NASD registered broker-dealer."  Ceretti and Grosso allowed Madoff to maintain his charade.

116.    The Kingate Funds' Information Memoranda stated that they were "open-ended" investment companies that sought long-term capital growth by allocating their shares to a selected investment adviser (i.e., BLMIS) to execute the Kingate Funds' investment objectives.  The Kingate Funds' investment objectives were to obtain capital appreciation through a non-

-25-

traditional stock/options trading strategy.

117.    Ceretti and Grosso recruited investors for their scheme primarily from continental

Europe with a particular concentration in Italy and Switzerland.  Major financial institutions such

as HSBC, Grupo BBVA, Banque Privee Edmond de Rothschild, and Anglo Irish Bank invested

with BLMIS through the Kingate Funds.

### C.    *FIM Managed the Kingate Funds While Kingate Management Collected the Bulk of the Fees*

118.    Kingate Management operated as an alter ego of Ceretti and Grosso.  It was

simply a shell company with only three employees, yet it collected hundreds of millions in fees

from the Kingate Funds, its sole source of revenue.

119.    Kingate Management's contracts with the Kingate Funds specified that it was to

be paid 1.5 percent of the Kingate Funds' NAV annually.  This fee was calculated and paid to

Kingate Management on a monthly basis.  The NAV was, of course, calculated based upon the

false statements of the accounts prepared by BLMIS.  For example, Kingate Global paid Kingate

Management over $38 million in 2007, and Kingate Euro paid Kingate Management over €9

million for the same year.  These fees were based on an "asset value" that did not exist.

120.    The Information Memoranda for both Kingate Funds stated that Kingate

Management would make all decisions related to the general management of the Kingate Funds

and would have complete authority and discretion in the management and control of the business

of each fund.  In fact, Kingate Management played a minimal role in managing the Kingate

Funds.

121.    Even though Kingate Management received the bulk of the fees from the Kingate

Funds, Ceretti and Grosso enlisted FIM to perform the work of a typical fund manager.

Critically, however, Ceretti and Grosso prevented FIM from undertaking genuine due diligence

-26-

**Exhibit A**

on BLMIS or the Kingate Funds.

122. In place of such diligence, Ceretti and Grosso "vouched" for Madoff.

123. On December 1, 1995 Kingate Management signed a Consulting Services
Agreement with FIM Limited. FIM Limited was retained to provide consulting advice with
respect to Kingate Management's financial and operational decisions related to the Kingate
Funds. Under the Consulting Services Agreements, FIM Limited's fees were paid by Kingate
Management out of the fees Kingate Management received from the Kingate Funds.

124. On August 1, 2005 FIM Limited was replaced as the consultant for Kingate
Management by FIM Advisers under two Consulting Services Agreements between FIM
Advisers, Kingate Management, and the Kingate Funds. It has been recently reported that
Ceretti and Grosso intend to close FIM Advisers and FIM Limited.

125. Among other things, FIM Limited identified and solicited investors for the
Kingate Funds, prepared marketing materials, and reviewed the funds' structure and operating
procedures.

126. According to the Kingate Global Information Memorandum, FIM Advisers
"renders consulting advice to [Kingate Management] with respect to certain aspects of the
Fund's operational, administrative, marketing, accounting and legal matters." FIM Advisers'
website, before it was taken down within the past year, stated that FIM Advisers is:

> a leading alternative investment company specializing in the creation and
> management of portfolios of hedge funds for institutional and private clients. The
> company has more than twenty five years of experience in asset management,
> with almost fifteen years of advising and managing portfolios of hedge funds.
> Today, FIM has 30 employees based in London and Bermuda.

The website further stated that:

> FIM's investment model is based upon a disciplined and structured approach to
> research, portfolio management, and risk management. The model gives FIM a
> clear edge in the sourcing of new managers, in conducting in-depth due-diligence,

-27-

and in structuring portfolios. At the foundation of the company's approach to investment is a highly experienced team of investment professionals, who have operated in a variety of market cycles and environments.

127. Despite these statements about expertise, disciplined and structured research, and clear fund management duties made by Kingate Management and FIM, neither company actually performed any meaningful research or due diligence on the Kingate Funds or BLMIS.

128. In fact, an email exchange between two FIM employees shows how even FIM employees were unclear about the structure of FIM and Kingate Management and the role they played vis-à-vis the Kingate Funds.

129. In November 2008, Eric Lazear ("Lazear"), FIM's Head of Operational Due Diligence, instructs FIM employee, Jose Verde, to contact Shazieh Salahuddin, Director of Kingate Management, for issues regarding the Kingate Funds. Verde responds, "But isn't she working for FIM in the Bermuda office? I am a bit Confused." Lazear responds, "Yes, but she handles all kingate [sic] questions."

**D.    *Ceretti and Grosso Conceal Their Profits***

130. Ceretti and Grosso set up an intricate network of shell companies to conceal that they personally received the fees collected on the Kingate Funds' investments with BLMIS. Various bank accounts were set up in each of the Ceretti and Grosso Shell Company Defendants' names to facilitate these transfers.

131. El Prela Group, whose beneficial owner is Ceretti, received millions of dollars in transfers from the Kingate Funds during 2008. El Prela Group received approximately $18 million in transfers from Kingate Management from April through December 2008. Using those funds, El Prela Group transferred out at least $18 million to Port of Hercules.

132. Port of Hercules, whose beneficial owner is Ceretti, received millions of dollars in transfers from the Kingate Funds since 2001. For example, from 2006 through 2008, Port of

MADC1345_00000794

Hercules' HSBC account received approximately $60 million in transfers from Kingate Management, El Prela Group, and El Prela Trading. Using some of those funds, Port of Hercules transferred out at least $50 million to Ceretti's personal bank account, El Prela Trading, and other accounts held by Port of Hercules at Fortis Bank.

133. Alpine Investments, whose beneficial owner is Ceretti, received millions of dollars in transfers from the Kingate Funds since 2001. For example, from 2006 through 2008, Alpine Investments received approximately $16 million in transfers from Kingate Management. Using those funds, El Prela transferred out at least $7 million to Ceretti's personal bank account.

134. El Prela Trading, whose beneficial owner is Ceretti, received millions of dollars in transfers from Port of Hercules during 2008. El Prela Trading received approximately $3 million in transfers from Port of Hercules. Using those funds, El Prela Trading transferred out at least $3 million back to Port of Hercules.

135. Upon information and belief, El Prela Trust, whose beneficial owner is Ceretti, received millions of dollars in transfers ultimately originating from Kingate Management.

136. Ashby Holding, whose beneficial owner is Grosso, received millions of dollars in transfers from the Kingate Funds during 2008. Ashby Holding received approximately $18 million in transfers from Kingate Management from April through December 2008. Using those funds, Ashby Holding transferred out at least $18 million to First Peninsula.

137. First Peninsula, whose beneficial owner is Grosso, received millions of dollars in transfers from the Kingate Funds since 2001. For example, from 2006 through 2008, First Peninsula's HSBC account received approximately $61 million in transfers from Kingate Management, Ashby Investment, and Ashby Holding. Using some of those funds, First Peninsula transferred out at least $23 million to other accounts held by First Peninsula at Fortis Bank.

-29-

MADC1345_00000795

138.   Ashby Investment, whose beneficial owner is Grosso, received millions of dollars in transfers from the Kingate Funds during 2008. Ashby Investment transferred approximately $7 million between its own bank accounts in October 2008. Using those funds, Ashby Investments transferred out at least $7 million to First Peninsula.

139.   Upon information and belief, Ashby Trust, whose beneficial owner is Grosso, received millions of dollars in transfers ultimately originating from Kingate Management.

**E.    *Citi Hedge Failed to Perform Its Duties as an Administrator***

140.   Citi Hedge and its predecessors served as the purported administrator of the Kingate Funds at all relevant times. Specifically, from the inception of the Kingate Funds through 2002, the administrator was Bermuda-based Hemisphere. In 2003, BISYS Group, Inc. (BISYS's parent) acquired Hemisphere and renamed it BISYS Hedge Fund Services Ltd. (Bermuda). In 2007, Citigroup acquired BISYS Group, Inc. and gave the administrator its present name, Citi Hedge.

141.   Citi Hedge was purportedly responsible for performing day-to-day administrative services for the Kingate Funds, including preparing and distributing monthly reports to the investors setting forth their NAV, the amounts of any distributions from the funds, accounting and legal fees, and all other fees and expenses of the Kingate Funds.

142.   Citi Hedge, however, failed to: (i) take reasonable, industry-standard steps to calculate the Kingate Funds' NAV; (ii) independently confirm and verify the pricing information provided by Madoff; (iii) reconcile information provided by Madoff as the Kingate Funds' prime broker with information provided by the Kingate Funds' managers; (iv) prepare the monthly financial statements in accordance with generally accepted accounting principles; or (v) relay accurate information to investors.

143.   As administrator, Citi Hedge was subject to the Administration Agreement, as

MADC1345_00000796

amended and restated effective June 1, 2007 (the "Administration Agreement"), and the

Registrar Agreement, as amended and restated effective January 1, 2002.

144.    Under these agreements, one of Citi Hedge's critical responsibilities included the

calculation of the Kingate Funds' NAV:

> The Administrator will determine the net asset value of the Fund's portfolio assets
> attributable to the USD shares of the close of business on the last Business Day of
> each calendar month.  The Administrator verifies the prices attributed to the
> securities held by the USD shares of the Fund by reference to pricing sources
> independent of the Investment Adviser whenever reasonably possible.

145.    The information Memoranda further explained that the NAV "is the market value

of the Fund[s'] total assets, calculated as described below, less all accrued debts and liabilities . .

. The Fund[s'] total assets include: (i) all cash and cash equivalent, including bank deposits and

interest bearing obligations; (ii) all securities positions; and (iii) all options positions."

146.    Although the securities and options positions were reported and purportedly

custodied by Madoff, Citi Hedge failed to independently verify the pricing information provided

by Madoff.  Rather, Citi Hedge relied solely on information provided by Madoff to calculate and

disseminate the Kingate Funds' NAV.

147.    Citi Hedge failed to verify the prices provided by Madoff in at least 185 separate

instances where the prices were not possible based on market prices.  In all instances, the

information necessary for Citi Hedge to verify the prices of the securities traded by Madoff –

consisting of S&P 100 stocks – was readily available through private financial services, such as

Bloomberg, as well as on the Internet.  Citi Hedge either did not verify Madoff's reported prices

or ignored the inconsistencies with market prices.

148.    Citi Hedge received millions of dollars in fees for its failed duties as administrator

to the Kingate Funds.  Between 2000 and 2007, Citi Hedge received $4,177,479 for serving as

the administrator to Kingate Global.  Between 2000 and 2007, Citi Hedge received €926,640 for

-31-

serving as the administrator to Kingate Euro.  These payments were based on the illusory NAV of the Kingate Funds, as calculated by Citi Hedge itself.

### F.    Bank Bermuda as Custodian

149.    Bank Bermuda served as the custodian for the Kingate Funds from 1994 through 2008.  As such, over $975,541,729 was improperly transferred from BLMIS to the Kingate Funds through Bank Bermuda.

150.    The Kingate Funds maintain at least three accounts at Bank Bermuda, including Account # 010-503324-511, Account # 010-5033324-512, and Account # 010-424174-561 (collectively, the "Bank Bermuda Accounts").

151.    Bank Bermuda currently holds the remainder of monies not paid out to the Kingate Funds in the Bank Bermuda Accounts.  The Bank Bermuda Account statements collectively reflect ending balances of approximately $133 million as of December 2008, of which approximately $108 million originated from BLMIS.[4]

### G.    The Kingate Funds as a Gateway to Madoff

152.    Ceretti and Grosso further profited from the Kingate Funds by offering them to other fund managers as a gateway to BLMIS.  Certain of the Kingate Fund's investors invested with BLMIS through multiple channels.

153.    For example, Reliance Management (BVI) Limited, which was the manager of Defender Fund,[5] first gained access to BLMIS in 1999 through investments it was managing in Kingate Global for its flagship fund, Reliance Multi-Adviser Fund Limited.

154.    The Kingate Funds also provided another avenue for fund managers such as Pioneer Alternative Investments Ltd. ("Pioneer") to reach BLMIS.  Pioneer is owned by

MADC1345_00000798

UniCredit S.p.A. (which also owns Bank Austria and Sonja Kohn's Bank Medici)[6]. Pioneer, through at least nine of the funds within its Momentum Group funds, was a substantial investor in Kingate from 2000 through 2008. Pioneer also invested in BLMIS through Fairfield Sentry and certain Bank Medici related funds.

## IX. CERETTI, GROSSO, AND THE MANAGEMENT DEFENDANTS REPEATEDLY FAILED TO CONDUCT DUE DILIGENCE ON BLMIS AND THE KINGATE FUNDS

155.    FIM Limited and its successor, FIM Advisers, were paid due diligence experts. When it came to Madoff, however, FIM did nothing at all. Rather than perform meaningful, independent, and reasonable due diligence, FIM, directed by Ceretti and Grosso (and Kingate Management), turned a knowing blind eye to all the indicia of fraud at BLMIS.

### A.    *Contrary to Its Practice and Policy, FIM Conducted No Meaningful Due Diligence on BLMIS or the Kingate Funds*

156.    Ceretti and Grosso enlisted their own Management Defendants to pretend that they performed due diligence on their own Kingate Funds. This structure avoided all independence and allowed Ceretti and Grosso to maintain the façade of a legitimate investment fund.

157.    FIM claimed that it undertook extensive due diligence by regular reviews of markets, strategies, managers, and peer groups and that research specialists conducted in-depth analysis into every aspect of every potential investment. Moreover, FIM stated that each portfolio is subject to continuous analysis to ensure all risk factors are identified and controlled and all internal and external management portfolio policies are followed. Additionally, FIM

---

[4] Approximately $15 million in subscription money that came into the Bank Bermuda Accounts in December 2008 was returned to the subscribers as a result of an order of the Supreme Court of Bermuda.
[5] The Trustee has filed a separate action in this Court against Defender in adversary proceeding No. 10-05229.
[6] The Trustee has filed a separate action in this Court against Kohn, Pioneer, and HSBC in adversary proceeding No. 09-1364 and against Sonja Kohn and Pioneer in adversary proceeding No. 10-5411.

MADC1345_00000799

claimed that the Kingate Funds were actively monitored by research teams, the investment committee, and risk management to ensure accuracy.

158.    Grosso claimed in November 2008 that FIM had "transparency" with respect to BLMIS and its operations. Ceretti, Grosso, and the Management Defendants routinely represented that they would exercise the proper care in selecting and monitoring the investment adviser (i.e., BLMIS).

159.    Grosso admitted that the requisite due diligence was not performed on the Kingate Funds, writing in November 2008 that "[w]e have never done much [due diligence on Kingate], as it will be impossible to go inside Madoff to do a proper D[ue]D[iligence]." He went on to claim, however, that he "knew enough about Madoff" to suffice as due diligence.

160.    No genuine due diligence on BLMIS or the Kingate Funds ever took place. When confronted in 2005 by an investor asking that a due diligence questionnaire be completed on Kingate Global, Grosso responded that due to Kingate Global's uniqueness, it "has never completed a due diligence questionnaire." Grosso continued that he would not be able to give her all the information she wants but the information she will get represents "all the information that will be available." Grosso knew enough not to share.

161.    Ceretti and Grosso directed that FIM's due diligence procedures should not be applied to BLMIS or the Kingate Funds and FIM obeyed.

162.    FIM recognized the disparate treatment given to BLMIS and the Kingate Funds when it came to due diligence. In an email to Grosso after news of the fraud broke, Lazear stated:

> I know we have to do what is right for FIM, but we need to be cognizant of how this portrays our (FIM) process. [Kingate] is not a fund that went through our normal diligence process and I think it should not be depicted as if it had. We all worked hard to build our process to be the best in the industry, which I think it is, and I do not want it to get out there that one slipped past us when it did not.

-34-

163.    Ceretti, Grosso, and the Management Defendants treated the Kingate Funds with the kid gloves that Madoff demanded and conducted no proper due diligence.

**B.    *Certain FIM Employees Actively Suppressed Investigations by Other FIM Employees***

164.    As early as 2004, senior FIM employees knew of serious fraud risks at BLMIS.

165.    In January 2004, Brendan Robertson ("Robertson") joined FIM as director in the research and investment department.

166.    Scott Dragoo ("Dragoo") joined FIM as its head of research in January 2005.

167.    Prior to their employment with FIM, both Dragoo and Robertson worked for Ivy Asset Management ("Ivy"), a fund manager.  Dragoo worked for Ivy as a research analyst while Robertson was a senior research analyst.[7]

168.    By 2002, Ivy had developed such strong suspicions about BLMIS and Madoff that it instituted a company policy of refusing to invest with BLMIS.  On information and belief, Dragoo and Robertson, by virtue of their employment at Ivy, were aware of the basis for Ivy's policy.

169.    A February 2008 email from Dragoo to another FIM employee demonstrates that Dragoo nonetheless actively dissuaded investigation into the Kingate Funds.  In response to the FIM employee's statement that he could try to get information from Madoff about Kingate at a dinner event, Dragoo made his fellow employee "promise not to push Bernie for any information."  When the employee questioned whether he could "even mention FIM or Carlo [Grosso]," Dragoo directed that the employee discuss the matter with him in person.

170.    On information and belief, based on their prior employment, these senior FIM

---

[7] The Trustee has filed a separate action in this Court against Ivy in adversary proceeding No. 10-05356.

MADC1345_00000801

officers had actual or constructive knowledge of indicia of fraudulent activity at BLMIS. FIM

nonetheless ignored these and other red flags and continued to actively solicit and oversee the

investment of hundreds of millions of dollars with BLMIS.

### C. *Ceretti and Grosso Suppressed Their Employee's Concerns and Requests to Conduct Proper Due Diligence on BLMIS and the Kingate Funds*

171. Certain FIM personnel urged Ceretti and Grosso to allow FIM to conduct

extensive and independent due diligence into BLMIS. Instead of acting on these

recommendations, Ceretti and Grosso expressly directed FIM due diligence personnel to refrain

from conducting any due diligence on BLMIS.

172. In June 2008, HSBC issued a warning on the Kingate Funds due to the lack of

communication and information coming from Madoff. Grosso suppressed these warnings and

dismissed the HSBC analyst as a "junior guy" and a "joker" for "rehashing old arguments"

against Madoff. Grosso admitted that such concerns about Madoff were "not new" and that

"[t]his has been going on for 20 years."

173. In November 2008, another analyst's caution regarding the Kingate Funds was

passed along to Grosso. The analyst cited BLMIS's lack of transparency, Madoff's possible

conflict of interest, and other due diligence concerns. Grosso attacked the analyst's

professionalism and experience and dismissed the analyst's concerns stating that it was "quite

evident that he [the analyst] has only a very limited knowledge of options strategies, as well as a

very imperfect understanding of the Kingate structure, and possibly a poor understanding of the

U.S. broker-dealer industry, its structure, functioning, and regulation."

174. When discussing Madoff's remarkably consistent returns with one of his own

analysts, Grosso rejected the analyst's conclusion that Madoff's returns were impossible.

175. Lazear repeatedly tried to convince Ceretti and Grosso that the Kingate Funds

MADC1345_00000802

should have nothing to do with BLMIS. In e-mails sent from Lazear in the aftermath of Madoff's arrest, he expressed great frustration that his analysis and recommendations had been rejected despite their merit. Lazear stated that he had believed BLMIS was a "scam" and had emailed Grosso "all the details" to support his beliefs before Madoff confessed. He recounted telling Grosso that if Grosso did not own FIM and the Kingate Funds, Lazear would "veto" FIM's involvement with Madoff.

176. Additionally, as FIM prepared communications to the Kingate Funds investors in early 2009, Lazear expressed concerns over how FIM's due diligence process was presented. Lazear was concerned that FIM represented to investors that it had conducted the standard due diligence for the Kingate Funds when in fact, it had not.

177. Thus, Ceretti and Grosso prevented the Management Defendants and their employees from conducting any meaningful due diligence into the Kingate Funds or BLMIS.

**D.** ***Grosso and FIM Rationalized BLMIS's Remarkably Consistent Performance as a Result of Illegal Front-Running***

178. In 2001, an investment industry analyst published an article that called into question the legitimacy of BLMIS's operations. A May 2001 MAR/Hedge newsletter entitled "Madoff Tops Charts; Skeptics Ask How" reported on Fairfield Sentry's consistent returns and stated that experts were bewildered how Madoff achieved such returns so consistently and for so long. The article observed that "others who use or used the strategy are known to have had nowhere near the same degree of success."

179. In response to the article, Grosso prepared a "question and answer" document for FIM employees marked "INTERNAL NOTE – NOT FOR DISTRIBUTION" purporting to explain the numerous "red flags" raised in the article, including the following:

(i) "How can there be such a relative complete lack of volatility in reported monthly returns?"

-37-

(ii) "How can Madoff have the ability to time the market and to turn to cash before market conditions become negative?"

(iii) "How can Madoff have the ability to buy and sell stocks without noticeably affecting the market?"

(iv) "Why has no-one been able to duplicate similar results?"

(v) "How come other Wall Street firms have not become aware of the strategy and traded against it?"

(vi) "Why is Madoff willing to earn commissions on trades, but not set up a separate asset management division to offer hedge funds directly to investors?" and

(vii) "Why doesn't Madoff borrow money and manage funds on a proprietary basis?"

180.    Grosso's stated explanation to his own employees was that Madoff was illegally front running his own market-making business. In response to "[h]ow can Madoff have the ability to time the market and turn to cash before market conditions become negative," Grosso wrote that "Madoff benefits from unique market intelligence derived from the massive amount of order flow it handles daily."

181.    In response to "Why has no one been able to duplicate similar results," Grosso wrote that "[b]eing such a large market maker (Madoff currently accounts for about 15 percent of all equity transactions in the United States), he sees the flows."

182.    Remarkably, Grosso was stating that Madoff saw the pending orders that were due to be executed by the market-making department of BLMIS and was able to generate high returns for feeder funds by taking advantage of this insider knowledge. This illegal insider trading relies on material, non-public information that is acted on for the benefit of one of his clients to the detriment of his other Madoff client.

183.    In this case, Grosso's justification for Madoff's readily apparent fraudulent activity simply substituted another kind of illegal activity.

-38-

E. *Ceretti, Grosso, the Kingate Funds, and the Management Defendants Exploited PricewaterhouseCoopers' Deficient Audits*

184. Grosso and Kingate Management knew that PricewaterhouseCoopers ("PwC") relied heavily on reports from Madoff's auditors and did not perform any independent verification of the money flowing in and out of BLMIS's accounts. In fact, Grosso knew that all PwC did was check "the testing at Madoff" against the Kingate Funds' records (also provided by BLMIS) and found no need to "double audit."

185. Further, as Grosso stated in an email in February 2008, Grosso was cautious about how the Kingate Funds portrayed PwC's auditing to investors fearing that PwC might actually "start to ask all sort of questions next time they visit Madoff."

## X. CERETTI, GROSSO, THE KINGATE FUNDS, THE MANAGEMENT DEFENDANTS, AND CITI HEDGE WERE ON NOTICE OF INDICIA OF FRAUDULENT ACTIVITY AT BLMIS

186. Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge are sophisticated investors and/or financial institutions that had regular access to the trade confirmations and account statements for the Kingate Funds' BLMIS accounts. Also, Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge accepted fees in consideration for the independent, meaningful, and reasonable due diligence they were expected to exercise, but did not, in selecting and monitoring BLMIS as their investment manager.

187. Not only did Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge fail to inquire further, Ceretti, Grosso, and certain FIM employees suppressed any attempt by FIM to do so.

188. Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge each regularly received false account statements and trade confirmations from BLMIS that demonstrated (among other things):

-39-

a.  The Kingate Funds' returns were consistent over too many years;

b.  Impossible options volume trading;

c.  Numerous instances where BLMIS reported selling securities outside the daily price ranges;

d.  BLMIS traded more equities than were available on the relevant exchanges;

e.  The Kingate Funds frequently had a negative cash balance;

f.  BLMIS purchased Treasurys before selling the securities from which the cash for the purchases originated;

g.  The options trades could not have been conducted in the Over-The-Counter Market;

h.  Madoff's options trades were inconsistent with the SSC strategy; and

i.  Settlement anomalies in options transactions.

189.  Moreover, Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge were on inquiry notice of BLMIS's fraud based on knowledge that:

j.  Purported excessive trading volumes never impacted the market;

k.  Madoff had supernatural timing when buying and selling stocks;

l.  The Kingate Funds entered into risky options contracts with unidentified counterparties;

m.  The structure of BLMIS was opaque, secretive, and lacked independent oversight and customary internal controls;

n.  BLMIS, known as high-technology firm, provided only paper statements;

o.  A capable auditor was absent; and

p.  BLMIS did not charge management fees.

**The Kingate Funds Account Statements Reflected
Substantial Quantitative Evidence of Fraud**

190.  Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge had access to vast amounts of information about BLMIS that was not available to the public.

-40-

They received account statements and trade confirmations that demonstrated (among many other things): (1) impossibly consistent rates of returns that seemed to have no correlation to the S&P 100; (2) the inexplicable volume of trades of stocks, and options that BLMIS was allegedly executing; and (3) options trades that had no relation to the SSC Strategy.

### A. The Kingate Funds' Returns Were Consistent over Too Many Years

191.  Ceretti, Grosso, the Kingate Funds, and the Management Defendants promoted the Kingate Funds by highlighting their number of positive months of returns and their rare draw-downs. Like BLMIS, the Kingate Funds did not report unconscionably high returns but instead relied on their steady performance regardless of volatility in the market.

192.  Both the Kingate Funds and BLMIS were effectively immune from any number of market catastrophes, enjoying steady rates of return at times when the rest of the market was experiencing financial crises. For example, from 2000 until 2008, the Kingate Funds averaged annual returns with BLMIS of approximately 11.7 percent. BLMIS purported to achieve these results with only four months of negative returns during a 98 month period from October 2000 through November 2008, while the S&P 100 experienced 46 months of negative returns over the same period.

193.  The Kingate Funds and BLMIS maintained suspiciously and consistently positive rates of return during events that otherwise devastated financial markets such as: (i) the burst of the "dot com" bubble in 2000; (ii) the 2000-2002 bear market, including the disastrous market impact of the 2001 September 11th tragedy; and (iii) the dramatic recession and housing crisis of 2008. BLMIS continued to generate positive returns even during the last 14 months of BLMIS's existence, when the S&P fell no less than 39.4 percent. Madoff's SSC strategy purported to track the performance of the S&P 100 and its results were not credible. Such consistently positive returns have no correlation with the historical fluctuations of the S&P 100 Index, on

MADC1345_00000807

Exhibit A

which BLMIS's trading activity was purportedly based.

Figure 1
Kingate Funds Rates of Return v. S&P Rates of Return
2000-2008

| YEAR | KINGATE EURO RATE OF RETURN | KINGATE GLOBAL RATE OF RETURN | S&P 100 RATE OF RETURN |
|------|------|------|------|
| 2000 | 14.8% | 14.6% | (13.4%) |
| 2001 | 13.7% | 13.7% | (14.9%) |
| 2002 | 12.1% | 12.2% | (23.9%) |
| 2003 | 10.9% | 10.8% | 23.8% |
| 2004 | 9.9% | 10.0% | 4.5% |
| 2005 | 10.3% | 10.5% | (0.9%) |
| 2006 | 13.4% | 13.2% | 15.9% |
| 2007 | 10.8% | 10.9% | 3.8% |
| 2008[8] | 9.3% | 9.4% | (36.9%) |

194. Despite the Kingate Funds' abnormally consistent positive returns, Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge took no meaningful, reasonable or independent action to inquire further as to how such results could be achieved in accordance with Madoff's SSC Strategy.

**B.** *The Kingate Funds' Account Statements from BLMIS Reflected Impossible Options Volume Trading*

195. Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge frequently reviewed the Kingate Funds' BLMIS account statements and trade confirmations. These account statements and trade confirmations demonstrated that Madoff was claiming to engage in impossible option transactions. BLMIS would have had to execute massive numbers of options trades to implement its purported SSC strategy. To implement this strategy, BLMIS pretended to trade S&P 100 ("OEX") options to hedge the investment in a representative basket

---

[8] The 2008 numbers are as of November 30, 2008 because that is the last date for which BLMIS generated customer account statements.

-42-

of stocks. On many occasions, through the Kingate Funds' history of investment with BLMIS,

the options volume BLMIS reported to have engaged in on behalf of the Kingate Funds exceeded

the total number of OEX options traded on the Chicago Board Options Exchange ("CBOE") for

that contract on that day. The following charts demonstrates this point with respect to the call

options BLMIS purported traded for the Kingate Funds over the last two years of its existence:

### Call Options Traded on Behalf of the Kingate Funds in 2007-2008



196. In fact, since 2001, BLMIS had reported volumes for the Kingate Funds' calls

options that were many times over the total number of call options executed on the CBOE, with

the same purchase date, strike price, and expiration date. The following chart illustrates this

MADC1345_00000809

point:



197.    For a specific example, on June 15, 2001 BLMIS purportedly bought on Kingate

Global's behalf a total of 6,271 OEX put options (with July expiration and a strike price of 625),

when the total volume traded on the CBOE for those OEX put options for that day was 1,149.

Similarly, on the same day, BLMIS purportedly sold on Kingate Global's behalf a total of 6,271

OEX call options (with July expiration and a strike price of 630), when the total volume traded

on the CBOE for those OEX call options for that day was 490.  It would have been impossible

for BLMIS's volume to exceed that of the CBOE for the identical contract on the same day.

198.    The same results are demonstrated by looking at the put option volume

purportedly traded by the Kingate Funds compared to the CBOE.  Specifically, the last two years

-44-

MADC1345_00000810

**Exhibit A**

of the Kingate Funds' existence is demonstrated below:

### Put Options Traded on Behalf of the Kingate Funds in 2007-2008



199.    Similarly, since 2001, BLMIS had reported volumes for the put options that were many times over the total number of put options executed on the CBOE with the same purchase date, strike price, and expiration date. The following chart illustrates this point:

MADC1345_00000811

**Exhibit A**



200.     As a specific example, on January 16, 2004 BLMIS purportedly bought on Kingate Euro's behalf a total of 9,088 OEX put options (with February expiration and a strike price of 560), when the total volume traded on the CBOE for those OEX put options for that day was 2,324. Also on that day, BLMIS purportedly sold on Kingate Euro's behalf a total of 9,088 OEX call options (with February expiration and a strike price of 570) when the total volume traded on the CBOE for those OEX call options for that day was 1,515. Ceretti, Grosso, the Management Defendants, and Citi Hedge knew or should have known that these option trading volumes reported by BLMIS were impossible if exchange traded.

201.     In total, there were at least 1,162 instances of option trades exceeding the volume traded on the CBOE on the Kingate Funds Accounts.

-46-

MADC1345_00000812

C.     *Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi*
       *Hedge Ignored Numerous Instances Where BLMIS Reported Selling Securities*
       *Outside the Daily Price Ranges*

202.    Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge

told the Kingate Funds' investors that they reviewed the BLMIS trade confirmations on a

monthly basis. This "analysis" included reviewing the price paid or received on the purchase or

sale of stocks and options to ensure that such price was within the range of prices for such stocks

and options on the date of the trade.

203.    FIM knew that Madoff's trading activity often reflected average trade values that

were outside the daily range of prices for such securities. Spreadsheets prepared by FIM

identified whether a given BLMIS trade was "within range" (i.e., whether the trade was within

the daily price range for the high and low that day). FIM knew that a significant number of

BLMIS's purported trades were impossible. FIM identified these "out of range" trades in a

spreadsheet. In review of BLMIS records, BLMIS purported to make at least 320 "out of range"

equity and options trades on behalf of the Kingate Funds from 1998 to 2008.

204.    For example, the Kingate Funds' account statements for October 2003 reported

purchases of 984,137 shares and 240,240 shares respectively for Intel Corporation (INTC), with

a settlement date of October 7, 2003. BLMIS's records indicate these stocks were purchased on

October 2, 2003 for $27.63 per share. However, the daily price range for Intel Corporation stock

purchased on October 2, 2003 ranged from a low of $28.41 to a high of $28.95. Ceretti, Grosso,

the Management Defendants, and Citi Hedge supposedly reviewed these confirmations and took

no action in response to this anomaly.

205.    In an illustration of another purported sale, the Kingate Funds' account statements

for December 2006 reported sales of 233,281 shares and 60,449 shares, respectively, for Merck

(MRK) with a settlement date of December 28, 2006. BLMIS's records and the Kingate Funds'

-47-

MADC1345_00000813

trade confirmations reflect that these stocks were sold on December 22, 2006 for $44.61. This purported trade was not possible. The price range for Merck stock sold on December 22, 2006 was between $42.78 and $43.42.

206. The sales and purchases of securities and options outside the publicly-reported trading ranges was a huge red flag, requiring further independent inquiry. Even though Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge knew of these facially impossible anomalies and specifically identified them as red flags, they chose to ignore them.

### D. *BLMIS Traded More Equities Than Were Available on the Relevant Exchanges*

207. As sophisticated financial professionals, Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge were, or should have been, on notice that the volume of shares being traded on behalf of the Kingate Funds was impossible as compared to the total assets under management by BLMIS and the total shares available on the market.

208. In 2006, Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge could have easily deduced that BLMIS was trading in impossible volumes. When BLMIS was forced to register as an investment adviser in August 2006, it represented in the ADV Form filed with the SEC that BLMIS had approximately $11.7 billion of assets under management at the end of July 2006. Later filings stated that BLMIS managed $13.2 billion at the end of 2006. The Kingate Funds' account statements from BLMIS reported balances of approximately $2.8 billion as of July 2006 and $3.0 billion as of December 2006. Hence, Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge knew that the Kingate Funds comprised about 23 percent of the publicly disclosed BLMIS assets under management.

209. Between 2006 and 2008, despite knowing that the Kingate Funds constituted approximately 23 percent of the investments under management by BLMIS, Ceretti, Grosso, the

-48-

Kingate Funds, the Management Defendants, and Citi Hedge completely ignored at least five separate transactions where BLMIS alone purportedly represented over 50 percent of the market trading for a particular security on that day.

210.    The Kingate Funds' account statements regularly indicated that BLMIS's trades in a particular stock accounted for more than 10 percent of that stock's trading on the entire composite tape, which includes all listed and unlisted market volumes.  On information and belief, from 1998 through 2008, individual stock trades for just the Kingate Funds exceeded 10 percent of the market at least 236 times.

211.    For example, on September 22, 2006 the Kingate Funds purportedly traded 618,792 shares of Wells Fargo & Company, which made up 17.4 percent of the shares of that security traded on the whole composite tape, which includes all listed and unlisted market volumes for that day.  As such, Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge knew or should have known that BLMIS alone was purportedly trading over 70 percent of the shares of Wells Fargo & Company traded that day – an implausible percentage for one manager to be trading.

E.    *The Kingate Funds Frequently Had a Negative Cash Balance with BLMIS*

212.    Between 1998 and 2008, the Kingate Funds' cash accounts with BLMIS had a negative balance on 225 separate occasions for a total of approximately 724 days.  Certain of the negative balances resulted from either the purchase of equities that exceeded the value of the Treasurys sold to fund the purchase, the purchase of put options prior to selling the call options they were meant to fund, or cash being withdrawn prior to the sale of equities to fund the withdrawal.  Normally, when a customer purchases assets prior to the funds being available in the customer's account, the customer is buying on "margin."

213.    The Kingate Funds did not have a margin account with BLMIS and could not

-49-

have traded on margin. The fact that the Kingate Funds had a negative cash balance with BLMIS on 255 separate occasions put Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge on inquiry notice of fraudulent activity at BLMIS.

214.   Even if BLMIS was buying on margin with the permission of the Kingate Funds, Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge knew or should have known that BLMIS was acting in a suspiciously irregular if not unlawful manner. When buying on margin, customers incur and are generally charged margin interest because buying on margin is effectively buying the underlying security with a loan from the investment adviser/broker dealer. On information and belief, BLMIS never charged the Kingate Funds any margin interest for this extension of credit, effectively giving millions of dollars to the Kingate Funds as a tax-free gift. These extensions of credit were not trivial.

215.   The table below illustrates a sample of the numerous of instances the Kingate Funds had negative cash balances.

**Figure 2**
**Kingate Funds Negative Cash Balances**
**2000-2008**

| DATE | KINGATE GLOBAL AVERAGE BALANCE | KINGATE EURO AVERAGE BALANCE | NUMBER OF DAYS |
|---|---|---|---|
| 7/19/1999 | (28,421,606) | (5,272,252) | 2 |
| 6/14/2000 | (1,449,661) | (286,613) | 2 |
| 7/25/2002 | (5,082,198) | (1,051,713) | 6 |
| 6/3/2004 | (13,815,039) | (3,742,508) | 6 |
| 5/22/2008 | (23,015,541) | (7,848,209) | 1 |

*F.   BLMIS Purchased Treasurys Before Selling the Securities from Which the Cash for the Purchases Originated*

216.   As part of the SSC Strategy, Madoff would allegedly move the Kingate Funds' money into Treasurys when it was no longer advantageous to be in the market. When market conditions improved, Madoff would sell the Treasurys and use the proceeds to purchase a new

-50-

**Exhibit A**

basket of stocks.

217.    In reviewing the Kingate Funds' account statements, Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge should have noted the impossible transactions ostensibly taking place with regard to BLMIS's purported SSC Strategy.  The account statements reflected occasions where BLMIS purchased securities before selling the Treasurys, an implausible scenario since the Kingate Funds' cash was supposedly tied up in Treasurys with no cash available to settle the equities purchases.  Likewise, the trading confirmations would show a move from equities back into Treasurys before the Kingate Funds would have obtained cash from the sale of the equities.

218.    Despite these clear indicia of fraudulent activity at BLMIS, Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge made no further inquiry and took no action.

**G.    The Options Trades Could Not Have Been Conducted in the Over-The-Counter Market**

219.    At times, when questioned about the availability of sufficient exchange traded options for the SSC Strategy, Madoff often responded that he traded in the OTC Market.  This claim was facially implausible, as the options purportedly traded on the Kingate Funds' behalf could not have been sold in the OTC market.  Trading options in the OTC market would have been more expensive than trading on the CBOE, yet on information and belief, those costs were not incurred by BLMIS or passed on to its investors.  The absence of such costs, together with BLMIS's representation that it was trading in the OTC market, should have prompted sophisticated investors like Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge to request verification of the trades and demand more concrete information about the operations of BLMIS.

MADC1345_00000817

220.    Also, in the OTC market, option counterparties are typically expressly identified on trade confirmations. On information and belief, as was typical for all BLMIS accounts, none of the options trade confirmations sent on behalf of the Kingate Funds ever identified the counterparty.

221.    Finally, options traded on the CBOE have a unique identifier known as a "CUSIP" number that allows traders to quickly access electronic information regarding a particular transaction. OTC options are not assigned a CUSIP number. Despite this fundamental difference, the Madoff confirmations reviewed by Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge included a CUSIP number, even though the ostensible trades were private OTC transactions.

### H.    *Madoff's Options Trades Were Inconsistent with the SSC Strategy*

222.    As part of the SSC Strategy, BLMIS claimed to buy puts and write calls to hedge gains and losses of the underlying equities. Upon information and belief, on a number of occasions, account statements purported to show gains on behalf of the Kingate Funds, resulting from transactions inconsistent with the SSC Strategy. Certain of these transactions involved short term option trading that resulted in substantial gains for the Kingate Funds. For example, in 2008, Kingate Global and Kingate Euro each participated in two of these trades, which generated gains of approximately $25.5 million and $8.8 million, respectively. These transactions represented approximately 11% of the total return for Kingate Global and Kingate Euro in 2008. These gains were purportedly achieved through speculation in the options market, which would contradict the premise of the SSC Strategy. Between 1996 and 2008, Kingate Global and Kingate Euro benefitted in excess of $136 million and $33 million, respectively, from such trades.

223.    Additionally, the SSC Strategy required that the hedge be adjusted to reflect a

-52-

change in the equities being hedged if some of the underlying equities were sold early. BLMIS, however, often sold out of an equity prior to liquidation of the entire basket and did not adjust the hedge for that partial sale of the underlying equities. Between January 2000 and November 2008, the underlying equities for the Kingate Funds changed without a corresponding adjustment to the hedge approximately 79 times.

224. All of these occurrences should have pointed Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge to the fact that BLMIS's options trades were inconsistent with Madoff's SSC Strategy and served as an indicia of fraud. Yet, despite Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge's sophistication, no investigation was conducted.

### I. The Kingate Funds' Trade Confirmations Frequently Contained Settlement Anomalies in Options Transactions

225. Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge ignored options transactions made on behalf of the Kingate Funds that settled in a time range outside of industry norms. According to industry standards, the settlement date for listed options is the business day following the trade date, referred to as T+1. However, BLMIS's statements for the Kingate Funds showed that a high percentage of options contracts settled as late as three days after the trade date.

226. Demonstrably, at least 555 out of the 2,149 total options contracts transacted on behalf of the Kingate Funds settled outside the normal period of T+1. Therefore, almost 26 percent of all purported options activity in the Kingate Funds' BLMIS accounts did not comply with standard trading practices.

227. Anyone performing verification or monitoring should have raised this settlement date anomaly as a red flag. Ceretti, Grosso, the Kingate Funds, the Management Defendants,

MADC1345_00000819

and Citi Hedge were either aware of these irregularities and ignored them, or failed to reasonably and meaningfully investigate them on behalf of their investors.

**Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge Were on Inquiry Notice of Fraudulent Activity at BLMIS**

### J.    The Purported Excessive Trading Volumes Never Impacted the Market

228.    Madoff told Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge that the SSC Strategy involved moving all assets into the market over the span of a few days. Then, when Madoff's computer model so indicated, BLMIS purportedly sold those securities over a similar period. Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge knew that BLMIS had over $13.6 billion under management as of 2006.

229.    Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge, therefore, understood that BLMIS purported to move over $13 billion into and out of the market over the course of just a few days numerous times every year. This enormous volume should have caused significant market reactions and price displacement. Such displacement was never observed because the trading did not occur. Based on the lack of observable market reaction, Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge knew or should have known that Madoff's trades were not happening as he claimed.

### K.    Madoff's Supernatural Timing When Buying and Selling Stocks

230.    Pricing reflected on the Kingate Funds' trade confirmations and account statements further demonstrated the implausibility of Madoff's trades, which almost always occurred at precisely the right time of the day. With remarkable consistency, when Madoff was purchasing shares, the reported average price was in the lower half of the daily trade range, and when selling shares, the sale price was in the upper half of the daily trade range.

MADC1345_00000820

231.    Madoff's success rate alone was a red flag.  Madoff also represented to investors that he was time-slicing (entering the market at specific intervals over the course of a trading day), and thus the reported price was an average.  In purchasing or selling a stock several times during the trading day, Madoff's reported prices should have gravitated toward the daily midpoint.  Instead, they gravitated toward Madoff's optimal price point—a statistical impossibility.

232.    For example, the Kingate Funds' account statements and trade confirmations indicate that, from 1998 to 2008, 77 percent of equity buys occurred in the lower half of the daily price range and 70 percent of equity sells occurred in the upper half of the daily price range.  For example, the Kingate Global March 2000 BLMIS account statement indicated that 42 of 66 purported equity sells occurred in the upper half of the daily price range.

233.    As further example, BLMIS reported that on March 3, 2000, it bought for the Kingate Funds 68,244 shares of Texas Instruments at a price of $178.50.  The low for Texas Instruments that day was $178 while the high was $188.13.  The Volume Weighted Average Price was $182.32.  Considering that the Kingate Funds share alone would have been roughly 10 percent of the market transactions that day for Texas Instruments (6,605,600 shares were bought and sold that day), it would not have been possible for BLMIS to have purchased that many shares of Texas Instruments on that day for that extremely low average price.

234.    Because Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge are sophisticated financial professionals and had access to the Kingate Funds' account statements and trade confirmations, they should have known that these purported trades were statistically impossible.  Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge accepted that BLMIS's purported trading activity defied laws of supply and demand, common sense and industry practice.

MADC1345_00000821

**L.** **The Kingate Funds Entered Into Risky Options Contracts with Unidentified Counterparties**

235.    Trading OTC options would have required BLMIS to enter into private, individually negotiated contracts with willing counterparties. The Kingate Funds executed a Master Agreement for OTC Options. Under the agreement, BLMIS served as the agent to the Kingate Funds in entering into any options trades. Those trades are private contracts between the Kingate Funds and the counterparty. If the counterparty failed to perform, it was the Kingate Funds, not BLMIS, that were exposed.

236.    BLMIS was supposed to act only as an agent for the Kingate Funds. Indeed, the Master Agreement explicitly states that the Kingate Funds could not seek recourse from BLMIS if the counterparty failed to perform. On information and belief, BLMIS refused to identify these counterparties to its clients. The fact that the Kingate Funds' options contracts contained unidentified counterparties put Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge on inquiry notice of fraudulent activity at BLMIS.

237.    Madoff claimed the options counterparties entered into agreements identical to ones executed by BLMIS's investors. Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge never reviewed such an agreement, undoubtedly because such an agreement is likely impossible. Because BLMIS allegedly traded options in large blocks, dividing contracts proportionally among its investors, an options counterparty would not know which party it was relying on to perform the agreement. Options dealers handling the volumes claimed by BLMIS do not expose themselves to such credit risks without knowing the other party.

238.    Madoff knew that such lack of transparency would concern investors in BLMIS and its feeder funds. Thus he claimed to force the options counterparties to deposit Treasurys to

-56-

ensure performance. Despite Madoff's claim, Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge never received any evidence of where and how these imaginary Treasurys were posted.

239.    Madoff also claimed that because the investors were holding the basket of stocks, the counterparty used the stocks as collateral. Such a claim leads to further inconsistencies. First, Madoff claimed the option counterparty could not seize the investors' equities, which would make the entire "collateral" claim illusory. Second, there was no restriction on Madoff's investors closing out or partially withdrawing from their accounts, creating the possibility that an account could quickly become null and again leave no collateral for an option trader. Again, despite this flawed logic, Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge blindly accepted Madoff's explanation.

240.    On information and belief, Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge never questioned Madoff about these matters. Nor did they perform any independent due diligence. Sophisticated financial professionals like Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge should have easily detected the flawed structure and recognized it as yet another indicia of fraudulent activity at BLMIS.

**M.      The Structure of BLMIS Was Opaque, Secretive, and Lacked Independent Oversight and Customary Internal Controls**

241.    Madoff purportedly held positions at BLMIS that would normally be occupied by four separate entities – he was the investment adviser, custodian, and administrator of the 703 Account, as well as the broker-dealer who initiated and executed the phantom trades. This meant that there was neither an independent custodian to assure the proper segregation of assets, nor was there an independent third-party to verify the existence and value of BLMIS's investments or transactions. This "self-custody" structure eliminated a critical internal control, widely

-57-

recognized as basic in both the brokerage and investment management industry, that prevents fraud by having an independent custodian hold and confirm the actual existence of securities for investors.

242.    In 2006, Grosso asked that certain statements in the Kingate Funds' disclosure to investors regarding such conflicts of interests be removed because he claimed it would "bother" investors.

243.    On information and belief, Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge did not reasonably or independently verify that the securities purportedly bought, sold, or held for the Kingate Funds existed.  On information and belief, Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge accepted Madoff's explanation for this facially suspicious practice.  Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge did not perform any independent, meaningful, or reasonable due diligence despite being on notice of this red flag.

*N.    BLMIS, Known as High-Technology Firm, Provided Only Paper Statements*

244.    Despite being a technological pioneer of electronic trading, Madoff did not provide his customers with real-time electronic access to their accounts, which was and is customary in the industry for hedge fund and fund of fund investors.  Indeed, BLMIS used outmoded technology and provided only printed account statements and paper trading confirmations that were sent via U.S. mail, three to four days after the trades occurred, a practice that enabled Madoff and BLMIS to pick trades for the statements using hindsight.

245.    Even though Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge knew that Madoff and BLMIS were technologically savvy and Grosso himself called Madoff a "technology addict," Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge accepted without protest paper copies of Kingate Funds' trade

MADC1345_00000824

confirmations. This was a practice plainly rife with the risk of fraud.

### O.    *Absence of a Capable Auditor*

246.    Even the one institutional check on the IA Business's activities – the fact that it was audited by an independent auditor – was itself a major warning sign for investors. BLMIS ostensibly had tens of billions of dollars under management, yet was audited by Friehling & Horowitz C.P.A. P.C. ("F&H"), an accounting firm with only two accountants, one of whom was semi-retired and living Florida. The firm's offices were located in a strip mall and FIM knew that the BLMIS auditor for BLMIS was a "small one in Rockland county [sic] NY."

247.    On November 3, 2009, David Friehling pleaded guilty to seven counts of securities fraud, investment adviser fraud, obstructing or impeding the administration of Internal Revenue laws, and making false filings with the SEC, all in connection with Madoff and BLMIS.

248.    On information and belief, Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge did not independently confirm whether F&H was adequately staffed, technically equipped, or professionally qualified, or even capable of performing large scale domestic and international auditing services at a time when Madoff was reporting over $13 billion under management.

249.    The size and lack of professional qualification of F&H and the nature of the services they provided were readily accessible to Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge. All accounting firms that perform audit work must enroll in the peer review program of the American Institute of Certified Public Accountants' ("AICPA"). This program involves the assessment by experienced auditors of a firm's audit quality. F&H, while a member of the AICPA, had not been peer reviewed since 1993. The firm avoided the requirement by stating, in writing, that it did not actually perform any auditing work. The results of these peer reviews are a matter of public record and on file with the AICPA.

-59-

250.    That BLMIS, with billions of dollars under management, relied on an auditor like F&H, should have been a red flag to Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge. Instead, Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge ignored this red flag, did not inquire further, and continued to develop their relationships with BLMIS.

### P.    *Management Fees*

251.    BLMIS gave Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge a powerful incentive to turn a blind eye to its numerous indicia of fraud. Madoff, contrary to industry standards, agreed to a compensation structure that left hundreds of millions, if not billions, of dollars on the table. Madoff purported to be satisfied with simply earning a trading commission of four-cents per share and one dollar per option contract. The standard investment advisory fee charged by a hedge fund manager ranges from 1 percent to 2 percent of assets under management plus a performance fee of 10 percent to 20 percent of any profits earned by the investment. Fees normally run higher for investment advisers with a history of success. By contrast, Ceretti, Grosso, the Kingate Funds, the Management Defendants, and Citi Hedge, whose only role was to feed money to BLMIS, received substantial management and administrative fees and a share of the profits that would normally go to the entity in the position of BLMIS.

### XI.    <u>THE TRANSFERS</u>

252.    According to BLMIS's records, Kingate Global and Kingate Euro maintained accounts 1FN061 and 1FN086, respectively, with BLMIS set forth on <u>Exhibit A</u> (the "Accounts"). For their respective accounts, Kingate Global and Kingate Euro executed a Customer Agreement, an Option Agreement, and/or a Trading Authorization Limited to Purchases and Sales of Securities and Options (collectively, the "Account Agreements"), and

-60-

delivered such documents to BLMIS at its headquarters at 885 Third Avenue, New York, New York.

253.    The Account Agreements were to be performed in New York, New York through securities trading activities that would take place in New York, New York. The Accounts were held in New York, New York, and Kingate Global and Kingate Euro sent funds to BLMIS in New York, New York for application to the Accounts and for the purported conducting of trading activities.

254.    Prior to the Filing Date, BLMIS transferred at least $975,541,729 to, or for the benefit of, Kingate Global and Kingate Euro in the form of withdrawals from their accounts (the "Transfers"), as set forth in Exhibit B, under circumstances that should have put Kingate Global and Kingate Euro on actual or inquiry notice that the purported account activity was inconsistent with legitimate trading activity and credible returns, that Ceretti, Grosso, the Kingate Funds, the Management Defendants, the Ceretti and Grosso Shell Company Defendants, and Citi Hedge were benefitting from fraudulent transactions in the Kingate Global and Kingate Euro accounts, that the IA Business was predicated on fraudulent activities, and/or that the transfers were fraudulent.

255.    Of the Transfers, avoidable and recoverable initial transfers in the approximate total amount of $437,501,112 were transferred to, or for the benefit of, Kingate Global (the "Kingate Global Transfers"). See Exhibit B, Column 5. Of the Transfers, avoidable and recoverable initial transfers in the total amount of $538,040,617 were transferred to, or for the benefit of, Kingate Euro (the "Kingate Euro Transfers"). See Exhibit B, Column 5. Kingate Global and Kingate Euro were initial transferees of the avoidable transfers set forth above.

256.    The Kingate Global Transfers and the Kingate Euro Transfers were and continue to be Customer Property within the meaning of section 78*lll*(4) of SIPA, and are avoidable and

MADC1345_00000827

recoverable under sections 544, 547, 548, 550(a), and 551 of the Bankruptcy Code, applicable

provisions of SIPA, particularly section 78fff-2(c)(3), and applicable provisions of N.Y. CPLR

203(g) and 213(8) (McKinney 2001) and DCL sections 273 – 279 (McKinney 2001).

257.    Of the Transfers, BLMIS made payments or other transfers to, or for the benefit

of, Kingate Global totaling at least $101,753,145 during the 90 days prior to the Filing Date (the

"Kingate Global Preference Period Transfers"). See Exhibit B, Column 9.

258.    Of the Transfers, BLMIS made payments or other transfers to, or for the benefit

of, Kingate Euro totaling at least $155,606,833 during the 90 days prior to the Filing Date (the

"Kingate Euro Preference Period Transfers"). See Exhibit B, Column 9.

259.    The Kingate Global Preference Period Transfers and Kingate Euro Preference

Period Transfers were and continue to be Customer Property within the meaning of section

78lll(4) of SIPA, and are avoidable and recoverable under sections 547, 550(a) and 551 of the

Bankruptcy Code and applicable provisions of SIPA, particularly section 78fff-2(c)(3).

260.    Of the Transfers, BLMIS made transfers to, or for the benefit of, Kingate Global

totaling at least $163,447,509 during the two years prior to the Filing Date (the "Kingate Global

Two-Year Transfers"). See Exhibit B, Column 10.

261.    Of the Transfers, BLMIS made transfers to, or for the benefit of, Kingate Euro

totaling at least $248,979,674 during the two years prior to the Filing Date (the "Kingate Euro

Two-Year Transfers"). See Exhibit B, Column 10.

262.    The Kingate Global Two-Year Transfers and the Kingate Euro Two-Year

Transfers were and continue to be Customer Property within the meaning of section 78lll(4) of

SIPA, and are avoidable and recoverable under sections 548, 550(a) and 551 of the Bankruptcy

Code and applicable provisions of SIPA, particularly section 78fff-2(c)(3).

263.    Of the Transfers, BLMIS made transfers to Kingate Global totaling at least

-62-

MADC1345_00000828

$398,704,065 during the six years prior to the Filing Date (the "Kingate Global Six-Year

Transfers). See Exhibit B, Column 11.

264.    Of the Transfers, BLMIS made transfers to, or for the benefit of, Kingate Euro

totaling at least $475,485,759 during the six years prior to the Filing Date (the "Kingate Euro

Six-Year Transfers"). See Exhibit B, Column 11.

265.    The Kingate Global Six-Year Transfers and Kingate Euro Six-Year Transfers

were and continue to be Customer Property within the meaning of section 78*lll*(4) of SIPA, and

are avoidable and recoverable under sections 544, 550(a) and 551 of the Bankruptcy Code,

applicable provisions of SIPA, particularly 78fff-2(c)(3), and applicable provisions of DCL

sections 273 – 279.

266.    On information and belief, the Management Defendants received subsequent

transfers of the avoidable transfers in the form of fees from Kingate Euro and Kingate Global,

which are recoverable under section 550(a) of the Bankruptcy Code (the "Management

Defendants Subsequent Transfers").

267.    On information and belief, the Ceretti and Grosso Shell Company Defendants

received subsequent transfers of avoidable and recoverable transfers in the form of fees from the

Management Defendants, which are recoverable under section 550(a) of the Bankruptcy Code

(the "Ceretti and Grosso Shell Company Defendant Subsequent Transfers").

268.    On information and belief, Ceretti and Grosso received subsequent transfers of

avoidable and recoverable transfers in the form of fees from the Ceretti and Grosso Shell

Company Defendants and/or the Management Defendants, which are recoverable under section

550(a) of the Bankruptcy Code (the "Ceretti and Grosso Subsequent Transfers").

269.    On information and belief, Citi Hedge received subsequent transfers of the

avoidable and recoverable transfers in the form of fees from Kingate Euro and Kingate Global,

MADC1345_00000829

which are recoverable under section 550(a) of the Bankruptcy Code (the "Citi Hedge Subsequent Transfers").

270.     The Management Defendants Subsequent Transfers, the Ceretti and Grosso Shell Company Defendant Subsequent Transfers, Ceretti and Grosso Subsequent Transfers, and Citi Hedge Subsequent Transfers (collectively the "Subsequent Transfers") were made to, or for the benefit of, the Management Defendants, the Ceretti and Grosso Shell Company Defendants, Cerretti, Grosso, and Citi Hedge (collectively the "Subsequent Transferee Defendants").

271.     The Subsequent Transfers, or the value thereof, are recoverable from the Subsequent Transferee Defendants under section 550(a) of the Bankruptcy Code.

272.     To the extent that any of the recovery counts may be inconsistent with each other, they are to be treated as being pleaded in the alternative.

273.     The Trustee's investigation is ongoing and the Trustee reserves the right to:  (i) supplement the information regarding the Transfers and any additional transfers; and (ii) seek recovery of such additional transfers.

## CUSTOMER CLAIMS

274.     Kingate Global filed Customer Claim No. 15359 on or about July 2, 2009 and Kingate Euro filed Customer Claim No. 15358 on or about July 2, 2009, (collectively, the "Customer Claims").  To date, the Trustee has yet to determine the Customer Claims.

275.     On December 23, 2008, this Court entered an Order on Application for Entry of an Order Approving Form and Manner of Publication and Mailing of Notices, Specifying Procedures for Filing, Determination, and Adjudication of Claim, and Providing Other Relief ("Claims Procedures Order"; Docket No. 12).  The Claims Procedures Order includes a process for determination and allowance of claims under which the Trustee has been operating.  The Trustee intends to pursue resolution of the Customer Claims, their objections and any other

-64-

MADC1345_00000830

related objections to the Trustee's determination of such claims through a separate hearing as contemplated by the Claims Procedures Order.

**COUNT ONE**
**PREFERENTIAL TRANSFERS**
**11 U.S.C. §§ 547(b), 550(a), AND 551**

*(Against Kingate Global and Kingate Euro)*

276. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

277. At the time of each of the Kingate Global Preference Period Transfers and Kingate Euro Preference Period Transfers, Kingate Global and Kingate Euro were "creditors" of BLMIS within the meaning of section 101(10) of the Bankruptcy Code and under SIPA § 78fff-2(c)(3).

278. Each of the Kingate Global Preference Period Transfers and Kingate Euro Preference Period Transfers constitutes a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and under SIPA § 78fff-2(c)(3).

279. Each of the Kingate Global Preference Period Transfers and Kingate Euro Preference Period Transfers was to, or for the benefit of, Kingate Global and Kingate Euro.

280. Each of the Kingate Global Preference Period Transfers and Kingate Euro Preference Period Transfers was made for, or on account of, an antecedent debt owed by BLMIS before such transfer was made.

281. Each of the Kingate Global Preference Period Transfers and Kingate Euro Preference Period Transfers was made while BLMIS was insolvent.

282. Each of the Kingate Global Preference Period Transfers and Kingate Euro Preference Period Transfers was made during the 90-day preference period under section

-65-

547(b)(4) of the Bankruptcy Code.

283.    Each of the Kingate Global Preference Period Transfers and Kingate Euro Preference Period Transfers enabled Kingate Global and Kingate Euro to receive more than Kingate Global or Kingate Euro would receive if: (i) this case was a case under chapter 7 of the Bankruptcy Code; (ii) the transfers had not been made; and (iii) such transferee received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

284.    Each of the Kingate Global Preference Period Transfers and Kingate Euro Preference Period Transfers constitutes a preferential transfer avoidable by the Trustee under section 547(b) of the Bankruptcy Code and recoverable from Kingate Global and Kingate Euro as initial transferees or the entities for whose benefit such transfers were made under section 550(a) of the Bankruptcy Code.

285.    As a result of the foregoing, under sections 547(b), 550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment: (i) avoiding and preserving the Kingate Global Preference Period Transfers and the Kingate Euro Preference Period Transfers; (ii) directing that the Kingate Global Preference Period Transfers and Kingate Euro Preference Period Transfers be set aside; and (iii) recovering the Kingate Global Preference Period Transfers and the Kingate Euro Preference Period Transfers, or the value thereof, from Kingate Global and Kingate Euro for the benefit of the estate of BLMIS.

### COUNT TWO
### ACTUAL FRAUDULENT TRANSFER
### 11 U.S.C. §§ 548(a)(1)(A), 550(a), AND 551

*(Against Kingate Global and Kingate Euro)*

286.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

MADC1345_00000832

287.     Each of the Kingate Global Two-Year Transfers and the Kingate Euro Two-Year Transfers was made on or within two years before the Filing Date.

288.     Each of the Kingate Global Two-Year Transfers and the Kingate Euro Two-Year Transfers constituted a transfer of an interest of BLMIS in property within the meaning of sections 101(54) and 548(a) of the Bankruptcy Code and under SIPA § 78fff-2(c)(3).

289.     Each of the Kingate Global Two-Year Transfers and the Kingate Euro Two-Year Transfers were made by BLMIS with the actual intent to hinder, delay, or defraud some or all of BLMIS's then existing or future creditors.  BLMIS made the Kingate Global Two-Year Transfers and the Kingate Euro Two-Year Transfers to, or for the benefit of, Kingate Global and Kingate Euro in furtherance of a fraudulent investment scheme.

290.     Each of the Kingate Global Two-Year Transfers and the Kingate Euro Two-Year Transfers constitute a fraudulent transfer avoidable by the Trustee under section 548(a)(1)(A) of the Bankruptcy Code and recoverable from Kingate Global and Kingate Euro under section 550(a) of the Bankruptcy Code and SIPA § 78fff-(2)(c)(3).

291.     As a result of the foregoing, under sections 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code, the Trustee is entitled to a judgment:  (i) avoiding and preserving the Kingate Global Two-Year Transfers and the Kingate Euro Two-Year Transfers; (ii) directing that the Kingate Global Two-Year Transfers and the Kingate Euro Two-Year Transfers be set aside; and (iii) recovering the Kingate Global Two-Year Transfers and the Kingate Euro Two-Year Transfers, or the value thereof, from Kingate Global and Kingate Euro for the benefit of the estate of BLMIS.

MADC1345_00000833

## COUNT THREE
## CONSTRUCTIVE FRAUDULENT TRANSFER
## 11 U.S.C. §§ 548(a)(1)(B), 550(a), AND 551

### *(Against Kingate Global and Kingate Euro)*

292.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

293.    Each of the Kingate Global Two-Year Transfers and the Kingate Euro Two-Year Transfers was made on or within two years before the Filing Date.

294.    Each of the Kingate Global Two-Year Transfers and the Kingate Euro Two-Year Transfers constitutes a transfer of an interest of BLMIS in property within the meaning of sections 101(54) and 548(a) of the Bankruptcy Code and under SIPA § 78fff-2(c)(3).

295.    BLMIS received less than a reasonably equivalent value in exchange for each of the Kingate Global Two-Year Transfers and the Kingate Euro Two-Year Transfers.

296.    At the time of each of the Kingate Global Two-Year Transfers and the Kingate Euro Two-Year Transfers, BLMIS was insolvent, or became insolvent as a result of the Kingate Global Two-Year Transfers and the Kingate Euro Two-Year Transfers.

297.    At the time of each of the Kingate Global Two-Year Transfers and the Kingate Euro Two-Year Transfers, BLMIS was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with BLMIS was an unreasonably small capital.

298.    At the time of each of the Kingate Global Two-Year Transfers and the Kingate Euro Two-Year Transfers, BLMIS intended to incur, or believed that it would incur, debts that would be beyond BLMIS's ability to pay as such debts matured.

299.    Each of the Kingate Global Two-Year Transfers and the Kingate Euro Two-Year Transfers constitute fraudulent transfers avoidable by the Trustee under section 548(a)(1)(B) of

-68-

MADC1345_00000834

the Bankruptcy Code and recoverable from Kingate Global and Kingate Euro under section 550(a) and SIPA § 78fff-(2)(c)(3).

300.    As a result of the foregoing, under sections 548(a)(1)(B), 550(a), and 551 of the Bankruptcy Code, the Trustee is entitled to a judgment against Kingate Global and Kingate Euro: (i) avoiding and preserving the Kingate Global Two-Year Transfers and the Kingate Euro Two-Year Transfers; (ii) directing that the Kingate Global Two-Year Transfers and the Kingate Euro Two-Year Transfers; and (iii) recovering the Two-Year Transfers, or the value thereof, from Kingate Global and Kingate Euro for the benefit of the estate of BLMIS.

### COUNT FOUR
### ACTUAL FRAUDULENT TRANSFER –
### NEW YORK DEBTOR AND CREDITOR LAW
### §§ 276, 276-a, 278, AND/OR 279, AND 11 U.S.C. §§ 544, 550(a), AND 551

*(Against Kingate Global and Kingate Euro)*

301.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

302.    At all times relevant to the Kingate Global Transfers and the Kingate Euro Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that are allowable under section 502 of the Bankruptcy Code or that are not allowable only under section 502(e) of the Bankruptcy Code.

303.    Each of the Kingate Global Six-Year Transfers and Kingate Euro Six-Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

304.    Each of the Kingate Global Six-Year Transfers and Kingate Euro Six-Year Transfers was made by BLMIS with the actual intent to hinder, delay, or defraud the creditors of BLMIS. BLMIS made the Kingate Global Six-Year Transfers and Kingate Euro Six-Year Transfers to or for the benefit of Kingate Global and Kingate Euro in furtherance of a fraudulent

MADC1345_00000835

investment scheme.

305. Each of the Kingate Global Six-Year Transfers and Kingate Euro Six-Year Transfers was received by Kingate Global and Kingate Euro with actual intent to hinder, delay or defraud creditors of BLMIS at the time of each of the Kingate Global Six-Year Transfers and Kingate Euro Six-Year Transfers, and/or future creditors of BLMIS.

306. As a result of the foregoing, under DCL sections 276, 276-a, 278, and/or 279, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against Kingate Global and Kingate Euro: (i) avoiding and preserving the Kingate Global Six-Year Transfers and Kingate Euro Six-Year Transfers; (ii) directing that the Kingate Global Six-Year Transfers and Kingate Euro Six-Year Transfers be set aside; (iii) recovering the Kingate Global Six-Year Transfers and Kingate Euro Six-Year Transfers, or the value thereof, from Kingate Global and Kingate Euro for the benefit of the estate of BLMIS; and (iv) recovering attorneys' fees from Kingate Global and Kingate Euro.

## COUNT FIVE
## CONSTRUCTIVE FRAUDULENT TRANSFER –
## NEW YORK DEBTOR AND CREDITOR LAW
## §§ 273 AND 278, AND/OR 279, AND 11 U.S.C. §§ 544, 550(a), AND 551

*(Against Kingate Global and Kingate Euro)*

307. The Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

308. At all relevant times there was and is at least one or more creditors who held and hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

309. Each of the Kingate Global Six-Year Transfers and Kingate Euro Six-Year

MADC1345_00000836

**Exhibit A**

Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

310.    BLMIS did not receive fair consideration for the Kingate Global Six-Year Transfers and Kingate Euro Six-Year Transfers.

311.    BLMIS was insolvent at the time it made each of the Kingate Global Six-Year Transfers and Kingate Euro Six-Year Transfers or, in the alternative, BLMIS became insolvent as a result of each of the Kingate Global Six-Year Transfers and Kingate Euro Six-Year Transfers.

312.    As a result of the foregoing, under DCL sections 273, 278, and/or 279, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against Kingate Global and Kingate Euro:  (i) avoiding and preserving the Kingate Global Six-Year Transfers and Kingate Euro Six-Year Transfers; (ii) directing that the Kingate Global Six-Year Transfers and Kingate Euro Six-Year Transfers be set aside; and (iii) recovering the Kingate Global Six-Year Transfers and Kingate Euro Six-Year Transfers, or the value thereof, from Kingate Global and Kingate Euro for the benefit of the estate of BLMIS.

## COUNT SIX
### CONSTRUCTIVE FRAUDULENT TRANSFER –
### NEW YORK DEBTOR AND CREDITOR LAW
### §§274, 278 AND/OR 279, AND 11 U.S.C. §§ 544, 550(a), AND 551

*(Against Kingate Global and Kingate Euro)*

313.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

314.    At all relevant times there was and is at least one or more creditors who held and hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

-71-

MADC1345_00000837

315.    Each of the Kingate Global Six-Year Transfers and Kingate Euro Six-Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

316.    BLMIS did not receive fair consideration for the Kingate Global Six-Year Transfers and Kingate Euro Six-Year Transfers.

317.    At the time BLMIS made each of the Kingate Global Six-Year Transfers and Kingate Euro Six-Year Transfers, BLMIS was engaged or was about to engage in a business or transaction for which the property remaining in its hands after each of the Kingate Global Six-Year Transfers and Kingate Euro Six-Year Transfers was an unreasonably small capital.

318.    As a result of the foregoing, under DCL sections 274, 278, and/or 279, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against Kingate Global and Kingate Euro:  (i) avoiding and preserving the Kingate Global Six-Year Transfers and Kingate Euro Six-Year Transfers; (ii) directing that the Kingate Global Six-Year Transfers and Kingate Euro Six-Year Transfers be set aside; and (iii) recovering the Kingate Global Six-Year Transfers and Kingate Euro Six-Year Transfers, or the value thereof, from Kingate Global and Kingate Euro for the benefit of the estate of BLMIS.

### COUNT SEVEN
### CONSTRUCTIVE FRAUDULENT TRANSFER –
### NEW YORK DEBTOR AND CREDITOR LAW
### §§ 275, 278 AND/OR 279, AND 11 U.S.C. §§ 544, 550(a), AND 551

*(Against Kingate Global and Kingate Euro)*

319.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

320.    At all relevant times there was and is at least one or more creditors who held and hold matured or unmatured unsecured claims against BLMIS that are allowable under section 502 of the Bankruptcy Code or that are not allowable only under section 502(e) of the

-72-

MADC1345_00000838

Bankruptcy Code.

321.    Each of the Kingate Global Six-Year Transfers and Kingate Euro Six-Year

Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

322.    BLMIS did not receive fair consideration for the Kingate Global Six-Year

Transfers and Kingate Euro Six-Year Transfers.

323.    At the time BLMIS made each of the Kingate Global Six-Year Transfers and

Kingate Euro Six-Year Transfers, BLMIS had incurred, was intending to incur, or believed that

it would incur debts beyond its ability to pay them as the debts matured.

324.    As a result of the foregoing, under DCL sections 275, 278, and/or 279, sections

544(b), 550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled

to a judgment against Kingate Global and Kingate Euro:  (i) avoiding and preserving the Kingate

Global Six-Year Transfers and Kingate Euro Six-Year Transfers; (ii) directing that the Kingate

Global Six-Year Transfers and Kingate Euro Six-Year Transfers be set aside; and (iii) recovering

the Kingate Global Six-Year Transfers and Kingate Euro Six-Year Transfers, or the value

thereof, from the Kingate Global and Kingate Euro for the benefit of the estate of BLMIS.

## COUNT EIGHT
### RECOVERY OF ALL FRAUDULENT TRANSFERS – NEW YORK CIVIL PROCEDURE LAW AND RULES 203(g), 213(8) AND NEW YORK DEBTOR AND CREDITOR LAW §§ 276, 276-a, 278, AND/OR 279, 11 U.S.C. §§ 544, 550(a), AND 551

*(Against Kingate Global and Kingate Euro)*

325.    The Trustee incorporates by reference the allegations contained in the previous

paragraphs of this Complaint as if fully rewritten herein.

326.    At all times relevant to the Kingate Global Transfers and the Kingate Euro

Transfers, the fraudulent scheme perpetrated by BLMIS was not reasonably discoverable by at

least one unsecured creditor of BLMIS.

-73-

MADC1345_00000839

327.     Each of the Kingate Global Transfers and Kingate Euro Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

328.     Each of the Kingate Global Transfers and the Kingate Euro Transfers was made by BLMIS with the actual intent to hinder, delay, or defraud the creditors of BLMIS.  BLMIS made the Transfers to or for the benefit of Kingate Global and Kingate Euro in furtherance of a fraudulent investment scheme.

329.     Each of the Kingate Global Transfers and the Kingate Euro Transfers was received by Kingate Global and Kingate Euro with actual intent to hinder, delay or defraud creditors of BLMIS at the time of each of the Kingate Global Transfers and the Kingate Euro Transfers, and/or future creditors of BLMIS.

330.     As a result of the foregoing, under NY CPLR 203(g), 213(8), DCL sections 276, 276-a, 278, and/or 279, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against Kingate Global and Kingate Euro:  (i) avoiding and preserving the Kingate Global Transfers and the Kingate Euro Transfers; (ii) directing that the Kingate Global Transfers and the Kingate Euro Transfers be set aside; (iii) recovering the Kingate Global Transfers and the Kingate Euro Transfers, or the value thereof, from Kingate Global and Kingate Euro for the benefit of the estate of BLMIS; and (iv) recovering attorneys' fees from Kingate Global and Kingate Euro.

## COUNT NINE
### RECOVERY OF SUBSEQUENT TRANSFERS – NEW YORK DEBTOR AND CREDITOR LAW §§ 273 – 279 AND 11 U.S.C. §§ 544, 547(b), 548, 550(a), AND 551

*(Against the Subsequent Transferee Defendants)*

331.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

332.     Each of the Kingate Global Transfers and Kingate Euro Transfers is avoidable

-74-

MADC1345_00000840

under section 78fff-2(c)(3) of SIPA, DCL sections 273, 274, 275, 276, 276-a, 277, 278 and/or
279, and sections 544, 547, 548(a), 550(a), and 551 of the Bankruptcy Code and constitutes a
transfer of an interest of BLMIS in property within the meaning of section 101(54) of the
Bankruptcy Code and under SIPA § 78fff-2(c)(3).

333. On information and belief, the Subsequent Transferee Defendants received
Subsequent Transfers, which are recoverable under section 550(a) of the Bankruptcy Code.

334. The Subsequent Transferee Defendants were immediate or mediate transferees of
some or all of the Kingate Global Transfers and Kingate Euro Transfers under section 550(a) of
the Bankruptcy Code.

335. Each of the Subsequent Transfers was made directly or indirectly to, or for the
benefit of, the Subsequent Transferee Defendants.

336. Each of the Subsequent Transfers was received by the Subsequent Transferee
Defendants with actual intent to hinder, delay, or defraud creditors of BLMIS at the time of each
of the Subsequent Transfers, and/or future creditors of BLMIS.

337. As a result of the foregoing and the avoidance of the within Transfers, pursuant to
DCL sections 273 - 279, sections 544, 547(b), 548(a), 550(a), and 551 of the Bankruptcy Code
and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against the Subsequent Transferee
Defendants recovering the Subsequent Transfers, or the value thereof, from the Subsequent
Transferee Defendants for the benefit of the estate of BLMIS and recovering attorneys' fees from
the Subsequent Transferee Defendants.

## COUNT TEN
## DISALLOWANCE OF CUSTOMER CLAIMS

*(Against Kingate Global and Kingate Euro)*

338. The Trustee incorporates by reference the allegations contained in the previous

MADC1345_00000841

paragraphs of this Complaint as if fully rewritten herein.

339.    Kingate Global and Kingate Euro filed Customer Claims, which have not yet been determined.

340.    Such Customer Claims should not be allowed pursuant to section 502(d) of the Bankruptcy Code, as Kingate Global and Kingate Euro, who filed the Customer Claims are the recipient(s) of transfers of BLMIS's property which are avoidable and recoverable under sections 544, 547, 548 and/or 550(a) of the Bankruptcy Code, DCL sections 273, 274, 275 and 276 and section 78fff-2(c)(3) as set forth above, and Kingate Global and Kingate Euro have not returned the transfers to the Trustee.

341.    The Claims Procedures Order includes a process for determination and allowance of claims under which the Trustee has been operating.  As a result of the foregoing, the Trustee intends to resolve the Customer Claims of Kingate Global and Kingate Euro, the Claims Objections, and any related objections through the mechanisms contemplated by the Claims Procedures Order.

**COUNT ELEVEN**
**EQUITABLE SUBORDINATION OF CUSTOMER CLAIMS**

*(Against Kingate Global and Kingate Euro)*

342.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

343.    Kingate Global and Kingate Euro, engaged in inequitable conduct, including behavior described in this Complaint, that has resulted in injury to the customers and creditors of the estate and has conferred an unfair advantage on Kingate Global and Kingate Euro.

344.    Based on the inequitable conduct of Kingate Global and Kingate Euro, the customers of BLMIS have been misled as to the true financial condition of the debtor, customers

-76-

have been induced to invest without knowledge of the actual facts regarding BLMIS's financial

condition, and/or customers and creditors are less likely to recover the full amounts due to them

because of the conduct of Kingate Global and Kingate Euro.

345. The Court should exercise the full extent of its equitable powers to ensure that

claims, payments, or benefits, of whatever kind or nature, which are asserted or sought by

Kingate Global and Kingate Euro directly or indirectly against the estate – and only to the extent

such claims are allowed – are subordinated for distribution purposes pursuant to sections

510(c)(1) and 105(a) of the Bankruptcy Code.

346. Equitable subordination as requested herein is consistent with the provisions and

purposes of the Bankruptcy Code.

**COUNT TWELVE**
**UNJUST ENRICHMENT**

***(Against Ceretti, Grosso, the Management Defendants, the Ceretti and Grosso Shell Company***
***Defendants, and Citi Hedge)***

347. The Trustee incorporates by reference the allegations contained in the previous

paragraphs of this Complaint as if fully rewritten herein.

348. Ceretti, Grosso, the Management Defendants, the Ceretti and Grosso Shell

Company Defendants, and Citi Hedge have been unjustly enriched by profiting from Madoff's

Ponzi scheme. They have wrongfully and unconscionably benefited from the receipt of

Customer Property from BLMIS, for which they did not, in good faith, provide fair value.

349. These proceeds took the form of, among other things, retrocession fees,

management fees, consulting fees, advisory fees, incentive fees, and interest payments. None of

this money has been returned to the Trustee for distribution in the liquidation of the BLMIS

estate.

350. Accordingly, equity and good conscience require full restitution of all proceeds of

-77-

MADC1345_00000843

the illegal scheme, all of which should rightfully be returned to the Trustee for distribution in the liquidation of the BLMIS estate.

### COUNT THIRTEEN
### CONVERSION

*(Against Ceretti, Grosso, the Management Defendants, the Ceretti and Grosso Shell Company Defendants, and Citi Hedge)*

351. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

352. BLMIS customers have the possessory right to and interest in the billions of dollars they personally invested with BLMIS.

353. Ceretti, Grosso, the Management Defendants, the Ceretti and Grosso Shell Company Defendants, and Citi Hedge have intentionally exercised dominion and control over Customer Property in a manner inconsistent with and in willful disregard of the solvency of the BLMIS estate. These Defendants are therefore liable for having wrongfully converted these monies and are now obligated to return all such monies to the Trustee for distribution in the liquidation of the BLMIS estate.

### COUNT FOURTEEN
### MONEY HAD AND RECEIVED

*(Against All Defendants)*

354. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

355. The Defendants are currently in possession of, or have control over, Customer Property. These monies belong to the customer fund under the Trustee's control. The Defendants have no lawful or equitable right to these monies, having obtained the monies through fraud, deceit, or mistake.

-78-

MADC1345_00000844

356.     In equity and good conscience, the Defendants may not retain possession or control of these monies, which rightfully belong to the customer fund under the Trustee's control.  The Defendants are obligated to return all such monies to the Trustee for distribution in the liquidation of the BLMIS estate.

<u>COUNT FIFTEEN</u>
<u>DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201</u>

*(Against Bank Bermuda)*

357.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

358.     Bank Bermuda is currently in possession of, or has control over, Customer Property.

359.     The specific monies currently remaining in the Bank Bermuda Accounts constitute improper transfers to those accounts by BLMIS.  These monies belong to the customer fund under the Trustee's control.  The Trustee is entitled to a judgment pursuant to 28 U.S.C. § 2201 declaring that Bank Bermuda is obligated to return all remaining monies to the Trustee for distribution in the liquidation of the BLMIS estate.

**WHEREFORE**, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendants as follows:

i.     On the First Count, under sections 547(b), 550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment:  (i) avoiding and preserving the Kingate Global Preference Period Transfers and the Kingate Euro Preference Period Transfers; (ii) directing that the Kingate Global Preference Period Transfers and Kingate Euro Preference Period Transfers be set aside; and (iii) recovering the Kingate Global Preference Period Transfers and the Kingate Euro Preference Period Transfers, or the value thereof, from

-79-

MADC1345_00000845

Kingate Global and Kingate Euro for the benefit of the estate of BLMIS;

      ii.      On the Second Count, under sections 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code, the Trustee is entitled to a judgment: (i) avoiding and preserving the Kingate Global Two-Year Transfers and the Kingate Euro Two-Year Transfers; (ii) directing that the Kingate Global Two-Year Transfers and the Kingate Euro Two-Year Transfers be set aside; and (iii) recovering the Kingate Global Two-Year Transfers and the Kingate Euro Two-Year Transfers, or the value thereof, from Kingate Global and Kingate Euro for the benefit of the estate of BLMIS;

      iii.      On the Third Count, under sections 548(a)(1)(B), 550(a), and 551 of the Bankruptcy Code, the Trustee is entitled to a judgment against Kingate Global and Kingate Euro: (i) avoiding and preserving the Kingate Global Two-Year Transfers and the Kingate Euro Two-Year Transfers; (ii) directing that the Kingate Global Two-Year Transfers and the Kingate Euro Two-Year Transfers; and (iii) recovering the Two-Year Transfers, or the value thereof, from Kingate Global and Kingate Euro for the benefit of the estate of BLMIS;

      iv.      On the Fourth Count, under DCL sections 276, 276-a, 278 and/or 279, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment against Kingate Global and Kingate Euro: (i) avoiding and preserving the Kingate Global Six-Year Transfers and Kingate Euro Six-Year Transfers; (ii) directing that the Kingate Global Six-Year Transfers and Kingate Euro Six-Year Transfers be set aside; (iii) recovering the Kingate Global Six-Year Transfers and Kingate Euro Six-Year Transfers, or the value thereof, from Kingate Global and Kingate Euro for the benefit of the estate of BLMIS; and (iv) recovering attorneys' fees from Kingate Global and Kingate Euro;

      v.      On the Fifth Count, under DCL sections 273, 278 and/or 279, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a

MADC1345_00000846

judgment against Kingate Global and Kingate Euro:  (i) avoiding and preserving the Kingate
Global Six-Year Transfers and Kingate Euro Six-Year Transfers; (ii) directing that the Kingate
Global Six-Year Transfers and Kingate Euro Six-Year Transfers be set aside; and (iii) recovering
the Kingate Global Six-Year Transfers and Kingate Euro Six-Year Transfers, or the value
thereof, from Kingate Global and Kingate Euro for the benefit of the estate of BLMIS;

      vi.     On the Sixth Count, under DCL sections 274, 278 and/or 279, sections 544(b),
550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a
judgment against Kingate Global and Kingate Euro:  (i) avoiding and preserving the Kingate
Global Six-Year Transfers and Kingate Euro Six-Year Transfers; (ii) directing that the Kingate
Global Six-Year Transfers and Kingate Euro Six-Year Transfers be set aside; and (iii) recovering
the Kingate Global Six-Year Transfers and Kingate Euro Six-Year Transfers, or the value
thereof, from Kingate Global and Kingate Euro for the benefit of the estate of BLMIS;

      vii.     On the Seventh Count, under DCL sections 275, 278 and/or 279, sections 544(b),
550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-2(c)(3), the Trustee is entitled to a
judgment against Kingate Global and Kingate Euro:  (i) avoiding and preserving the Kingate
Global Six-Year Transfers and Kingate Euro Six-Year Transfers; (ii) directing that the Kingate
Global Six-Year Transfers and Kingate Euro Six-Year Transfers be set aside; and (iii) recovering
the Kingate Global Six-Year Transfers and Kingate Euro Six-Year Transfers, or the value
thereof, from the Kingate Global and Kingate Euro for the benefit of the estate of BLMIS;

      viii.     On the Eighth Count, under NY CPLR 203(g), 213(8), DCL sections 276, 276-a,
278 and/or 279, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and SIPA § 78fff-
2(c)(3), the Trustee is entitled to a judgment against Kingate Global and Kingate Euro:  (i)
avoiding and preserving the Kingate Global Transfers and the Kingate Euro Transfers; (ii)
directing that the Kingate Global Transfers and the Kingate Euro Transfers be set aside; (iii)

-81-

MADC1345_00000847

**Exhibit A**

recovering the Kingate Global Transfers and the Kingate Euro Transfers, or the value thereof, from Kingate Global and Kingate Euro for the benefit of the estate of BLMIS; and (iv) recovering attorneys' fees from Kingate Global and Kingate Euro;

ix.     On the Ninth Count, under DCL sections 273 - 279, 544, 547(b), 548(a), 550(a), and 551 of the Bankruptcy Code and SIPA § 78fff-2(c)(3), the Trustee is entitled to a judgment recovering the Subsequent Transfers, or the value thereof, from the Subsequent Transferee Defendants for the benefit of the estate of BLMIS and recovery attorneys' fees from the Subsequent Transferee Defendants;

x.     On the Tenth Count, that the Customer Claims shall be disallowed pursuant to section 502(d) of the Bankruptcy Code;

xi.     On the Eleventh Count, that the Customer Claims, to the extent allowed, shall be subordinated for distribution purposes pursuant to sections 510(c)(1) and 105(a) of the Bankruptcy Code.

xii.     On the Twelfth Count, that defendants to this count be found liable for unlawfully converting the investors' assets and be held liable for the restitution of such assets;

xiii.     On the Thirteenth Count, that defendants to this count return and all monies received as a result from any and all of their business associated with the Kingate Funds;

xiv.     On the Fourteenth Count, such compensatory, consequential, general, and punitive damages in an amount to be determined at trial;

xv.     On the Fifteenth Count, a declaratory judgment pursuant to 28 U.S.C. § 2201 that Bank Bermuda shall return all monies remaining in the Bank Bermuda Accounts to the Trustee for the benefit of the customer fund.

xvi.     On all Counts, under federal common law and N.Y. CPLR 5001, 5004, awarding the Trustee prejudgment interest from the date on which the Initial or Subsequent Transfers were

-82-

MADC1345_00000848

received by Defendants;

xvii.    On all Counts, establishment of a constructive trust over the proceeds of the Initial

and Subsequent Transfers in favor of the Trustee for the benefit of BLMIS's estate;

xviii.    On all Counts, assignment of Defendants' right to seek refunds from the

government for federal, state, and local taxes paid on fictitious profits during the course of the

scheme;

xix.    Awarding the Trustee all applicable interest, costs, and disbursements of this

action; and

xx.    Granting Plaintiff such other, further, and different relief as the Court deems just,

proper, and equitable.

Dated: May 20, 2011

/s/ David J. Sheehan
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Oren J. Warshavsky
Timothy S. Pfeifer
Keith R. Murphy
Geraldine Ponto
Michelle R. Kaplan


*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and Bernard L. Madoff*

Of Counsel:

Frederick W. Chockley, III
John J. Burke
Loura L. Alaverdi
Adam J. Smith

-83-

MADC1345_00000849

| BLMIS Account Name | BLMIS Account Number |
|---|---|
| KINGATE GLOBAL FUND LTD C/O BANK OF BERMUDA LTD A/C/F KINGATE GLOBAL FUND | 1FN061 |

**BLMIS ACCOUNT NO. 1FN061 - KINGATE GLOBAL FUND LTD C/O BANK OF BERMUDA LTD A/C/F KINGATE GLOBAL FUND**

Exhibit L

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported on Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 Preference Period Initial Transfers | Column 10 Two Year Initial Transfers | Column 11 Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 3/2/1994 | CHECK WIRE | 2,000,000 | 2,000,000 | - | - | - | 2,000,000 | - | - | - |
| 9/1/1994 | W/H TAX DIV INTC | (1) | - | (1) | - | - | 1,999,999 | - | - | - |
| 9/1/1994 | W/H TAX DIV F | (189) | - | (189) | - | - | 1,999,810 | - | - | - |
| 9/1/1994 | W/H TAX DIV INTC | (0) | - | (0) | - | - | 1,999,810 | - | - | - |
| 9/2/1994 | W/H TAX DIV BA | (7) | - | (7) | - | - | 1,999,803 | - | - | - |
| 9/6/1994 | W/H TAX DIV JNJ | (125) | - | (125) | - | - | 1,999,678 | - | - | - |
| 9/12/1994 | W/H TAX DIV GM | (103) | - | (103) | - | - | 1,999,576 | - | - | - |
| 9/12/1994 | W/H TAX DIV DD | (238) | - | (238) | - | - | 1,999,337 | - | - | - |
| 9/12/1994 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (15) | - | (15) | - | - | 1,999,322 | - | - | - |
| 9/12/1994 | W/H TAX DIV IBM | (107) | - | (107) | - | - | 1,999,215 | - | - | - |
| 9/12/1994 | W/H TAX DIV MMM | (137) | - | (137) | - | - | 1,999,078 | - | - | - |
| 9/12/1994 | W/H TAX DIV MOB | (219) | - | (219) | - | - | 1,998,859 | - | - | - |
| 9/12/1994 | W/H TAX DIV XON | (619) | - | (619) | - | - | 1,998,240 | - | - | - |
| 9/12/1994 | W/H TAX DIV AN | (188) | - | (188) | - | - | 1,998,052 | - | - | - |
| 9/15/1994 | W/H TAX DIV BAC | (102) | - | (102) | - | - | 1,997,950 | - | - | - |
| 9/15/1994 | W/H TAX DIV ARC | (120) | - | (120) | - | - | 1,997,830 | - | - | - |
| 9/16/1994 | W/H TAX DIV AIG | (29) | - | (29) | - | - | 1,997,801 | - | - | - |
| 9/16/1994 | W/H TAX DIV MCD | (1) | - | (1) | - | - | 1,997,800 | - | - | - |
| 9/30/1994 | W/H TAX DIV PEP | (94) | - | (94) | - | - | 1,997,706 | - | - | - |
| 10/3/1994 | W/H TAX DIV MRK | (305) | - | (305) | - | - | 1,997,401 | - | - | - |
| 10/3/1994 | W/H TAX DIV EK | (12) | - | (12) | - | - | 1,997,389 | - | - | - |
| 10/3/1994 | W/H TAX DIV KO | (169) | - | (169) | - | - | 1,997,220 | - | - | - |
| 10/3/1994 | W/H TAX DIV WMT | (67) | - | (67) | - | - | 1,997,153 | - | - | - |
| 10/11/1994 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (4) | - | (4) | - | - | 1,997,149 | - | - | - |
| 10/12/1994 | W/H TAX DIV HWP | (53) | - | (53) | - | - | 1,997,096 | - | - | - |
| 10/14/1994 | W/H TAX DIV S | (8) | - | (8) | - | - | 1,997,088 | - | - | - |
| 10/25/1994 | W/H TAX DIV GE | (441) | - | (441) | - | - | 1,996,647 | - | - | - |
| 10/28/1994 | W/H TAX DIV DOW | (114) | - | (114) | - | - | 1,996,533 | - | - | - |
| 11/1/1994 | W/H TAX DIV AIT | (169) | - | (169) | - | - | 1,996,363 | - | - | - |
| 11/1/1994 | W/H TAX DIV S | (102) | - | (102) | - | - | 1,996,261 | - | - | - |
| 11/1/1994 | W/H TAX DIV BEL | (238) | - | (238) | - | - | 1,996,023 | - | - | - |
| 11/1/1994 | W/H TAX DIV BMY | (255) | - | (255) | - | - | 1,995,767 | - | - | - |
| 11/1/1994 | W/H TAX DIV T | (343) | - | (343) | - | - | 1,995,424 | - | - | - |
| 11/15/1994 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (9) | - | (9) | - | - | 1,995,415 | - | - | - |
| 11/17/1994 | W/H TAX DIV CCI | (37) | - | (37) | - | - | 1,995,378 | - | - | - |
| 12/1/1994 | W/H TAX DIV INTC | (16) | - | (16) | - | - | 1,995,362 | - | - | - |
| 12/1/1994 | W/H TAX DIV F | (163) | - | (163) | - | - | 1,995,199 | - | - | - |
| 12/6/1994 | W/H TAX DIV JNJ | (120) | - | (120) | - | - | 1,995,080 | - | - | - |
| 12/9/1994 | W/H TAX DIV MCIC | (10) | - | (10) | - | - | 1,995,069 | - | - | - |
| 12/12/1994 | W/H TAX DIV GM | (96) | - | (96) | - | - | 1,994,974 | - | - | - |
| 12/12/1994 | W/H TAX DIV MOB | (224) | - | (224) | - | - | 1,994,749 | - | - | - |
| 12/12/1994 | W/H TAX DIV IBM | (91) | - | (91) | - | - | 1,994,659 | - | - | - |
| 12/12/1994 | W/H TAX DIV XON | (582) | - | (582) | - | - | 1,994,077 | - | - | - |
| 12/12/1994 | W/H TAX DIV MMM | (116) | - | (116) | - | - | 1,993,961 | - | - | - |
| 12/12/1994 | W/H TAX DIV AN | (172) | - | (172) | - | - | 1,993,788 | - | - | - |
| 12/14/1994 | W/H TAX DIV BAC | (92) | - | (92) | - | - | 1,993,696 | - | - | - |
| 12/14/1994 | W/H TAX DIV DD | (240) | - | (240) | - | - | 1,993,456 | - | - | - |
| 12/15/1994 | W/H TAX DIV KO | (161) | - | (161) | - | - | 1,993,295 | - | - | - |
| 12/15/1994 | W/H TAX DIV ARC | (136) | - | (136) | - | - | 1,993,159 | - | - | - |
| 12/15/1994 | FIDELITY CASH RESERVES SBI | (46) | - | (46) | - | - | 1,993,113 | - | - | - |
| 12/15/1994 | W/H TAX DIV AIG | (23) | - | (23) | - | - | 1,993,090 | - | - | - |
| 12/16/1994 | W/H TAX DIV MCD | (27) | - | (27) | - | - | 1,993,063 | - | - | - |
| 1/3/1995 | W/H TAX DIV S | (86) | - | (86) | - | - | 1,992,978 | - | - | - |
| 1/3/1995 | W/H TAX DIV PEP | (89) | - | (89) | - | - | 1,992,889 | - | - | - |
| 1/3/1995 | W/H TAX DIV EK | (86) | - | (86) | - | - | 1,992,803 | - | - | - |
| 1/3/1995 | W/H TAX DIV MRK | (243) | - | (243) | - | - | 1,992,560 | - | - | - |
| 1/5/1995 | W/H TAX DIV WMT | (60) | - | (60) | - | - | 1,992,500 | - | - | - |
| 1/13/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (16) | - | (16) | - | - | 1,992,484 | - | - | - |
| 2/13/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (5) | - | (5) | - | - | 1,992,480 | - | - | - |
| 2/17/1995 | W/H TAX DIV CCI | (77) | - | (77) | - | - | 1,992,403 | - | - | - |
| 3/1/1995 | W/H TAX DIV F | (165) | - | (165) | - | - | 1,992,238 | - | - | - |
| 3/1/1995 | W/H TAX DIV INTC | (15) | - | (15) | - | - | 1,992,223 | - | - | - |
| 3/3/1995 | W/H TAX DIV BA | (51) | - | (51) | - | - | 1,992,171 | - | - | - |
| 3/6/1995 | W/H TAX DIV SO | (125) | - | (125) | - | - | 1,992,046 | - | - | - |
| 3/7/1995 | W/H TAX DIV JNJ | (119) | - | (119) | - | - | 1,991,927 | - | - | - |

MADC1345_00000851

Exhibit L

BLMIS ACCOUNT NO. 1FN061 - KINGATE GLOBAL FUND LTD C/O BANK OF BERMUDA LTD A/C/F KINGATE GLOBAL FUND

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 Preference Period Initial Transfers | Column 10 Two Year Initial Transfers | Column 11 Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 3/9/1995 | CHECK WIRE | 1,300,000 | 1,300,000 | - | - | - | 3,291,927 | - | - | - |
| 3/10/1995 | W/H TAX DIV XON | (590) | - | (590) | - | - | 3,291,337 | - | - | - |
| 3/10/1995 | W/H TAX DIV MOB | (203) | - | (203) | - | - | 3,291,134 | - | - | - |
| 3/10/1995 | W/H TAX DIV GM | (96) | - | (96) | - | - | 3,291,038 | - | - | - |
| 3/10/1995 | W/H TAX DIV IBM | (90) | - | (90) | - | - | 3,290,948 | - | - | - |
| 3/10/1995 | W/H TAX DIV AN | (195) | - | (195) | - | - | 3,290,753 | - | - | - |
| 3/13/1995 | W/H TAX DIV MMM | (129) | - | (129) | - | - | 3,290,625 | - | - | - |
| 3/14/1995 | W/H TAX DIV BAC | (102) | - | (102) | - | - | 3,290,522 | - | - | - |
| 3/14/1995 | W/H TAX DIV DD | (201) | - | (201) | - | - | 3,290,322 | - | - | - |
| 3/15/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (6) | - | (6) | - | - | 3,290,316 | - | - | - |
| 3/15/1995 | W/H TAX DIV ARC | (141) | - | (141) | - | - | 3,290,175 | - | - | - |
| 3/17/1995 | W/H TAX DIV MCD | (27) | - | (27) | - | - | 3,290,148 | - | - | - |
| 3/31/1995 | W/H TAX DIV PEP | (95) | - | (95) | - | - | 3,290,052 | - | - | - |
| 4/3/1995 | W/H TAX DIV AIG | (22) | - | (22) | - | - | 3,290,031 | - | - | - |
| 4/3/1995 | W/H TAX DIV KO | (188) | - | (188) | - | - | 3,289,843 | - | - | - |
| 4/3/1995 | W/H TAX DIV MRK | (246) | - | (246) | - | - | 3,289,597 | - | - | - |
| 4/3/1995 | W/H TAX DIV EK | (82) | - | (82) | - | - | 3,289,514 | - | - | - |
| 4/3/1995 | W/H TAX DIV S | (82) | - | (82) | - | - | 3,289,432 | - | - | - |
| 4/11/1995 | CHECK WIRE | 2,450,000 | 2,450,000 | - | - | - | 5,739,432 | - | - | - |
| 4/12/1995 | W/H TAX DIV HWP | (65) | - | (65) | - | - | 5,739,367 | - | - | - |
| 4/17/1995 | W/H TAX DIV WMT | (101) | - | (101) | - | - | 5,739,266 | - | - | - |
| 4/17/1995 | W/H TAX DIV C | (82) | - | (82) | - | - | 5,739,184 | - | - | - |
| 4/24/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (42) | - | (42) | - | - | 5,739,142 | - | - | - |
| 4/25/1995 | W/H TAX DIV GE | (442) | - | (442) | - | - | 5,738,700 | - | - | - |
| 4/28/1995 | W/H TAX DIV DOW | (173) | - | (173) | - | - | 5,738,527 | - | - | - |
| 5/1/1995 | W/H TAX DIV T | (531) | - | (531) | - | - | 5,737,996 | - | - | - |
| 5/1/1995 | W/H TAX DIV BYM | (363) | - | (363) | - | - | 5,737,633 | - | - | - |
| 5/1/1995 | W/H TAX DIV AIT | (267) | - | (267) | - | - | 5,737,366 | - | - | - |
| 5/1/1995 | W/H TAX DIV BEL | (301) | - | (301) | - | - | 5,737,065 | - | - | - |
| 5/2/1995 | CHECK WIRE | 500,000 | 500,000 | - | - | - | 6,237,065 | - | - | - |
| 5/5/1995 | CHECK | 250,000 | 250,000 | - | - | - | 6,487,065 | - | - | - |
| 5/5/1995 | CHECK WIRE | 250,000 | 250,000 | - | - | - | 6,737,065 | - | - | - |
| 5/5/1995 | CANCEL CHECK | (250,000) | (250,000) | - | - | - | 6,487,065 | - | - | - |
| 5/17/1995 | W/H TAX DIV CCI | (178) | - | (178) | - | - | 6,486,887 | - | - | - |
| 5/19/1995 | W/H TAX DIV DIS | (47) | - | (47) | - | - | 6,486,840 | - | - | - |
| 5/23/1995 | FIDELITY CASH RESERVE SBI W/H TAX DIV FOR FCRXX | (50) | - | (50) | - | - | 6,486,790 | - | - | - |
| 6/1/1995 | W/H TAX DIV INTC | (38) | - | (38) | - | - | 6,486,752 | - | - | - |
| 6/1/1995 | W/H TAX DIV F | (491) | - | (491) | - | - | 6,486,261 | - | - | - |
| 6/2/1995 | W/H TAX DIV BA | (129) | - | (129) | - | - | 6,486,132 | - | - | - |
| 6/6/1995 | CHECK WIRE | 1,900,000 | 1,900,000 | - | - | - | 8,386,132 | - | - | - |
| 6/6/1995 | W/H TAX DIV SO | (302) | - | (302) | - | - | 8,385,830 | - | - | - |
| 6/6/1995 | W/H TAX DIV JNJ | (327) | - | (327) | - | - | 8,385,504 | - | - | - |
| 6/12/1995 | W/H TAX DIV MOB | (549) | - | (549) | - | - | 8,384,954 | - | - | - |
| 6/12/1995 | W/H TAX DIV GM | (345) | - | (345) | - | - | 8,384,610 | - | - | - |
| 6/12/1995 | W/H TAX DIV IBM | (228) | - | (228) | - | - | 8,384,382 | - | - | - |
| 6/12/1995 | W/H TAX DIV DD | (432) | - | (432) | - | - | 8,383,949 | - | - | - |
| 6/12/1995 | W/H TAX DIV MMM | (298) | - | (298) | - | - | 8,383,652 | - | - | - |
| 6/12/1995 | W/H TAX DIV AN | (451) | - | (451) | - | - | 8,383,200 | - | - | - |
| 6/12/1995 | W/H TAX DIV XON | (1,426) | - | (1,426) | - | - | 8,381,775 | - | - | - |
| 6/14/1995 | W/H TAX DIV BAC | (255) | - | (255) | - | - | 8,381,520 | - | - | - |
| 6/15/1995 | W/H TAX DIV ARC | (327) | - | (327) | - | - | 8,381,193 | - | - | - |
| 6/16/1995 | W/H TAX DIV AIG | (62) | - | (62) | - | - | 8,381,131 | - | - | - |
| 6/16/1995 | W/H TAX DIV MCD | (81) | - | (81) | - | - | 8,381,050 | - | - | - |
| 6/19/1995 | FIDELITY ASH RESERVES SBI W/H TAX DIV FORXX | (29) | - | (29) | - | - | 8,381,020 | - | - | - |
| 6/23/1995 | W/H TAX DIV MCIC | (30) | - | (30) | - | - | 8,380,990 | - | - | - |
| 6/30/1995 | W/H TAX DIV PEP | (276) | - | (276) | - | - | 8,380,714 | - | - | - |
| 7/3/1995 | W/H TAX DIV EK | (233) | - | (233) | - | - | 8,380,481 | - | - | - |
| 7/3/1995 | W/H TAX DIV MRK | (667) | - | (667) | - | - | 8,379,814 | - | - | - |
| 7/3/1995 | W/H TAX DIV KO | (491) | - | (491) | - | - | 8,379,323 | - | - | - |
| 7/3/1995 | W/H TAX DIV SLB | (152) | - | (152) | - | - | 8,379,172 | - | - | - |
| 7/5/1995 | CHECK WIRE | 2,350,000 | 2,350,000 | - | - | - | 10,729,172 | - | - | - |
| 7/10/1995 | W/H TAX DIV WMT | (202) | - | (202) | - | - | 10,728,970 | - | - | - |
| 7/14/1995 | W/H TAX DIV C | (311) | - | (311) | - | - | 10,728,659 | - | - | - |
| 7/19/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (36) | - | (36) | - | - | 10,728,622 | - | - | - |
| 7/25/1995 | W/H TAX DIV GE | (1,555) | - | (1,555) | - | - | 10,727,068 | - | - | - |

MADC1345_00000852

BLMIS ACCOUNT NO. 1FN061 - KINGATE GLOBAL FUND LTD C/O BANK OF BERMUDA LTD A/C/F KINGATE GLOBAL FUND

| Column 1<br><br>Date | Column 2<br>Transaction<br>Description | Column 3<br>Transaction Amount<br>Reported in<br>Customer Statement | Column 4<br><br>Cash<br>Deposits | Column 5<br><br>Cash<br>Withdrawals | Column 6<br>Transfers of<br>Principal In | Column 7<br>Transfers of<br>Principal Out | Column 8<br><br>Balance of<br>Principal | Column 9<br>Preference Period<br>Initial<br>Transfers | Column 10<br>Two Year<br>Initial<br>Transfers | Column 11<br>Six Year<br>Initial<br>Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 7/28/1995 | W/H TAX DIV DOW | (433) | - | (433) | - | - | 10,726,635 | - | - | - |
| 8/1/1995 | W/H TAX DIV AIT | (597) | - | (597) | - | - | 10,726,037 | - | - | - |
| 8/1/1995 | W/H TAX DIV BEL | (668) | - | (668) | - | - | 10,725,370 | - | - | - |
| 8/1/1995 | W/H TAX DIV T | (1,148) | - | (1,148) | - | - | 10,724,222 | - | - | - |
| 8/1/1995 | W/H TAX DIV BMY | (834) | - | (834) | - | - | 10,723,388 | - | - | - |
| 8/2/1995 | CHECK WIRE | 4,760,000 | 4,760,000 | | - | - | 15,483,388 | - | - | - |
| 8/3/1995 | W/H TAX DIV AIG | (11) | - | (11) | - | - | 15,483,377 | - | - | - |
| 8/10/1995 | W/H TAX DIV AXP | (244) | - | (244) | - | - | 15,483,133 | - | - | - |
| 8/16/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (14) | - | (14) | - | - | 15,483,119 | - | - | - |
| 8/17/1995 | W/H TAX DIV CCI | (326) | - | (326) | - | - | 15,482,793 | - | - | - |
| 8/18/1995 | W/H TAX DIV DIS | (104) | - | (104) | - | - | 15,482,690 | - | - | - |
| 9/1/1995 | W/H TAX DIV BA | (234) | - | (234) | - | - | 15,482,456 | - | - | - |
| 9/1/1995 | W/H TAX DIV INTC | (92) | - | (92) | - | - | 15,482,364 | - | - | - |
| 9/1/1995 | W/H TAX DIV F | (880) | - | (880) | - | - | 15,481,484 | - | - | - |
| 9/5/1995 | W/H TAX DIV JNJ | (584) | - | (584) | - | - | 15,480,900 | - | - | - |
| 9/6/1995 | CHECK WIRE | 800,000 | 800,000 | | - | - | 16,280,900 | - | - | - |
| 9/6/1995 | W/H TAX DIV SO | (544) | - | (544) | - | - | 16,280,356 | - | - | - |
| 9/11/1995 | W/H TAX DIV GM | (622) | - | (622) | - | - | 16,279,735 | - | - | - |
| 9/11/1995 | W/H TAX DIV IBM | (404) | - | (404) | - | - | 16,279,330 | - | - | - |
| 9/11/1995 | W/H TAX DIV AN | (811) | - | (811) | - | - | 16,278,519 | - | - | - |
| 9/11/1995 | W/H TAX DIV MOB | (983) | - | (983) | - | - | 16,277,536 | - | - | - |
| 9/11/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (23) | - | (23) | - | - | 16,277,513 | - | - | - |
| 9/11/1995 | W/H TAX DIV XON | (2,561) | - | (2,561) | - | - | 16,274,952 | - | - | - |
| 9/12/1995 | W/H TAX DIV MMM | (771) | - | (771) | - | - | 16,274,182 | - | - | - |
| 9/12/1995 | W/H TAX DIV DD | (783) | - | (783) | - | - | 16,273,399 | - | - | - |
| 9/15/1995 | W/H TAX DIV BAC | (664) | - | (664) | - | - | 16,272,735 | - | - | - |
| 9/15/1995 | W/H TAX DIV ARC | (59) | - | (59) | - | - | 16,272,676 | - | - | - |
| 9/15/1995 | W/H TAX DIV ARC | (809) | - | (809) | - | - | 16,271,867 | - | - | - |
| 9/15/1995 | W/H TAX DIV MCD | (183) | - | (183) | - | - | 16,271,684 | - | - | - |
| 9/22/1995 | W/H TAX DIV AIG | (155) | - | (155) | - | - | 16,271,529 | - | - | - |
| 9/29/1995 | W/H TAX DIV PEP | (618) | - | (618) | - | - | 16,270,912 | - | - | - |
| 10/2/1995 | W/H TAX DIV MRK | (1,674) | - | (1,674) | - | - | 16,269,238 | - | - | - |
| 10/2/1995 | W/H TAX DIV EK | (533) | - | (533) | - | - | 16,268,705 | - | - | - |
| 10/2/1995 | W/H TAX DIV KO | (1,157) | - | (1,157) | - | - | 16,267,548 | - | - | - |
| 10/2/1995 | W/H TAX DIV SLB | (237) | - | (237) | - | - | 16,267,311 | - | - | - |
| 10/3/1995 | W/H TAX DIV WMT | (455) | - | (455) | - | - | 16,266,856 | - | - | - |
| 10/6/1995 | CHECK WIRE | 800,000 | 800,000 | | - | - | 17,066,856 | - | - | - |
| 10/16/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (45) | - | (45) | - | - | 17,066,811 | - | - | - |
| 10/25/1995 | W/H TAX DIV GE | (2,795) | - | (2,795) | - | - | 17,064,017 | - | - | - |
| 10/30/1995 | W/H TAX DIV DOW | (792) | - | (792) | - | - | 17,063,225 | - | - | - |
| 11/1/1995 | W/H TAX DIV BMY | (1,492) | - | (1,492) | - | - | 17,061,733 | - | - | - |
| 11/1/1995 | W/H TAX DIV NYN | (963) | - | (963) | - | - | 17,060,770 | - | - | - |
| 11/1/1995 | W/H TAX DIV AIT | (1,104) | - | (1,104) | - | - | 17,059,666 | - | - | - |
| 11/1/1995 | W/H TAX DIV BEL | (1,210) | - | (1,210) | - | - | 17,058,456 | - | - | - |
| 11/1/1995 | W/H TAX DIV T | (2,091) | - | (2,091) | - | - | 17,056,365 | - | - | - |
| 11/3/1995 | CHECK WIRE | 7,300,000 | 7,300,000 | | - | - | 24,356,365 | - | - | - |
| 11/10/1995 | W/H TAX DIV AXP | (432) | - | (432) | - | - | 24,355,933 | - | - | - |
| 11/17/1995 | W/H TAX DIV DIS | (181) | - | (181) | - | - | 24,355,752 | - | - | - |
| 11/17/1995 | W/H TAX DIV CCI | (481) | - | (481) | - | - | 24,355,271 | - | - | - |
| 11/20/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (63) | - | (63) | - | - | 24,355,208 | - | - | - |
| 12/1/1995 | W/H TAX DIV BA | (351) | - | (351) | - | - | 24,354,858 | - | - | - |
| 12/1/1995 | W/H TAX DIV INTC | (132) | - | (132) | - | - | 24,354,725 | - | - | - |
| 12/1/1995 | W/H TAX DIV F | (1,543) | - | (1,543) | - | - | 24,353,182 | - | - | - |
| 12/5/1995 | W/H TAX DIV JNJ | (860) | - | (860) | - | - | 24,352,322 | - | - | - |
| 12/6/1995 | CHECK WIRE | 3,200,000 | 3,200,000 | | - | - | 27,552,322 | - | - | - |
| 12/8/1995 | W/H TAX DIV MCIC | (70) | - | (70) | - | - | 27,552,252 | - | - | - |
| 12/11/1995 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (8) | - | (8) | - | - | 27,552,244 | - | - | - |
| 12/11/1995 | W/H TAX DIV MOB | (1,483) | - | (1,483) | - | - | 27,550,762 | - | - | - |
| 12/11/1995 | W/H TAX DIV IBM | (576) | - | (576) | - | - | 27,550,185 | - | - | - |
| 12/11/1995 | W/H TAX DIV AN | (1,202) | - | (1,202) | - | - | 27,548,983 | - | - | - |
| 12/11/1995 | W/H TAX DIV F | (902) | - | (902) | - | - | 27,548,081 | - | - | - |
| 12/11/1995 | W/H TAX DIV XON | (3,830) | - | (3,830) | - | - | 27,544,252 | - | - | - |
| 12/12/1995 | W/H TAX DIV MMM | (801) | - | (801) | - | - | 27,543,451 | - | - | - |
| 12/14/1995 | W/H TAX DIV BAC | (691) | - | (691) | - | - | 27,542,760 | - | - | - |
| 12/14/1995 | W/H TAX DIV DD | (1,198) | - | (1,198) | - | - | 27,541,561 | - | - | - |

MADC1345_00000853

Exhibit L

BLMIS ACCOUNT NO. 1FN061 - KINGATE GLOBAL FUND LTD. C/O BANK OF BERMUDA LTD A/C/F KINGATE GLOBAL FUND

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 Preference Period Initial Transfers | Column 10 Two Year Initial Transfers | Column 11 Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/15/1995 | W/H TAX DIV MCD | (267) | - | (267) | - | - | 27,541,294 | - | - | - |
| 12/15/1995 | W/H TAX DIV ARC | (35) | - | (35) | - | - | 27,541,260 | - | - | - |
| 12/15/1995 | W/H TAX DIV KO | (1,620) | - | (1,620) | - | - | 27,539,640 | - | - | - |
| 12/22/1995 | W/H TAX DIV AIG | (226) | - | (226) | - | - | 27,539,414 | - | - | - |
| 1/2/1996 | W/H TAX DIV MRK | (2,442) | - | (2,442) | - | - | 27,536,973 | - | - | - |
| 1/2/1996 | W/H TAX DIV EK | (781) | - | (781) | - | - | 27,536,191 | - | - | - |
| 1/2/1996 | W/H TAX DIV PEP | (914) | - | (914) | - | - | 27,535,277 | - | - | - |
| 1/4/1996 | CHECK WIRE | 4,000,000 | 4,000,000 | - | - | - | 31,535,277 | - | - | - |
| 1/5/1996 | W/H TAX DIV WMT | (664) | - | (664) | - | - | 31,534,614 | - | - | - |
| 1/12/1996 | W/H TAX DIV C | (1,440) | - | (1,440) | - | - | 31,533,173 | - | - | - |
| 1/18/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (6) | - | (6) | - | - | 31,533,167 | - | - | - |
| 2/5/1996 | CHECK WIRE | 4,450,000 | 4,450,000 | - | - | - | 35,983,167 | - | - | - |
| 2/20/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (21) | - | (21) | - | - | 35,983,146 | - | - | - |
| 2/20/1996 | W/H TAX DIV CCI | (1,352) | - | (1,352) | - | - | 35,981,794 | - | - | - |
| 3/1/1996 | W/H TAX DIV F | (2,596) | - | (2,596) | - | - | 35,979,198 | - | - | - |
| 3/1/1996 | W/H TAX DIV INTC | (229) | - | (229) | - | - | 35,978,969 | - | - | - |
| 3/1/1996 | W/H TAX DIV BA | (608) | - | (608) | - | - | 35,978,361 | - | - | - |
| 3/1/1996 | W/H TAX DIV COL | (90) | - | (90) | - | - | 35,978,271 | - | - | - |
| 3/11/1996 | W/H TAX DIV IBM | (999) | - | (999) | - | - | 35,977,272 | - | - | - |
| 3/11/1996 | W/H TAX DIV XON | (6,422) | - | (6,422) | - | - | 35,970,850 | - | - | - |
| 3/11/1996 | W/H TAX DIV MOB | (2,571) | - | (2,571) | - | - | 35,968,279 | - | - | - |
| 3/11/1996 | W/H TAX DIV AN | (2,179) | - | (2,179) | - | - | 35,966,100 | - | - | - |
| 3/11/1996 | W/H TAX DIV GM | (2,036) | - | (2,036) | - | - | 35,964,065 | - | - | - |
| 3/12/1996 | W/H TAX DIV BAC | (1,407) | - | (1,407) | - | - | 35,962,658 | - | - | - |
| 3/12/1996 | W/H TAX DIV JNJ | (1,558) | - | (1,558) | - | - | 35,961,099 | - | - | - |
| 3/14/1996 | W/H TAX DIV DD | (1,987) | - | (1,987) | - | - | 35,959,112 | - | - | - |
| 3/15/1996 | W/H TAX DIV ARC | (1,433) | - | (1,433) | - | - | 35,957,679 | - | - | - |
| 3/15/1996 | W/H TAX DIV MCD | (69) | - | (69) | - | - | 35,957,610 | - | - | - |
| 3/21/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (27) | - | (27) | - | - | 35,957,583 | - | - | - |
| 3/22/1996 | W/H TAX DIV AIG | (179) | - | (179) | - | - | 35,957,405 | - | - | - |
| 3/29/1996 | W/H TAX DIV PEP | (700) | - | (700) | - | - | 35,956,705 | - | - | - |
| 4/1/1996 | W/H TAX DIV S | (130) | - | (130) | - | - | 35,956,574 | - | - | - |
| 4/1/1996 | W/H TAX DIV EK | (197) | - | (197) | - | - | 35,956,378 | - | - | - |
| 4/1/1996 | W/H TAX DIV MRK | (1,878) | - | (1,878) | - | - | 35,954,500 | - | - | - |
| 4/1/1996 | W/H TAX DIV KO | (2,321) | - | (2,321) | - | - | 35,952,179 | - | - | - |
| 4/2/1996 | W/H TAX DIV C | (1,697) | - | (1,697) | - | - | 35,950,481 | - | - | - |
| 4/3/1996 | CHECK WIRE | 2,400,000 | 2,400,000 | - | - | - | 38,350,481 | - | - | - |
| 4/8/1996 | W/H TAX DIV WMT | (900) | - | (900) | - | - | 38,349,581 | - | - | - |
| 4/10/1996 | W/H TAX DIV HWP | (764) | - | (764) | - | - | 38,348,816 | - | - | - |
| 4/17/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (67) | - | (67) | - | - | 38,348,750 | - | - | - |
| 4/25/1996 | W/H TAX DIV GE | (1,130) | - | (1,130) | - | - | 38,347,620 | - | - | - |
| 4/30/1996 | W/H TAX DIV DOW | (1,454) | - | (1,454) | - | - | 38,346,166 | - | - | - |
| 5/1/1996 | W/H TAX DIV T | (3,938) | - | (3,938) | - | - | 38,342,228 | - | - | - |
| 5/1/1996 | W/H TAX DIV BEL | (2,317) | - | (2,317) | - | - | 38,339,911 | - | - | - |
| 5/1/1996 | W/H TAX DIV BMY | (2,877) | - | (2,877) | - | - | 38,337,035 | - | - | - |
| 5/1/1996 | W/H TAX DIV AIT | (2,157) | - | (2,157) | - | - | 38,334,878 | - | - | - |
| 5/1/1996 | W/H TAX DIV NYN | (1,829) | - | (1,829) | - | - | 38,333,048 | - | - | - |
| 5/2/1996 | W/H TAX DIV PNU | (1,016) | - | (1,016) | - | - | 38,332,033 | - | - | - |
| 5/3/1996 | CHECK WIRE | 700,000 | 700,000 | - | - | - | 39,032,033 | - | - | - |
| 5/10/1996 | W/H TAX DIV AXP | (828) | - | (828) | - | - | 39,031,205 | - | - | - |
| 5/14/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (40) | - | (40) | - | - | 39,031,164 | - | - | - |
| 5/17/1996 | W/H TAX DIV CCI | (1,734) | - | (1,734) | - | - | 39,029,430 | - | - | - |
| 5/17/1996 | W/H TAX DIV DIS | (428) | - | (428) | - | - | 39,029,002 | - | - | - |
| 5/21/1996 | W/H TAX DIV AIG | (321) | - | (321) | - | - | 39,028,681 | - | - | - |
| 6/3/1996 | AMERICAN INTL GROUP INC CXL W/H TAX 5/07/96 AIG | 321 | - | 321 | - | - | 39,029,002 | - | - | - |
| 6/3/1996 | W/H TAX DIV INTC | (105) | - | (105) | - | - | 39,028,898 | - | - | - |
| 6/3/1996 | W/H TAX DIV INTC | (268) | - | (268) | - | - | 39,028,629 | - | - | - |
| 6/3/1996 | W/H TAX DIV F | (3,040) | - | (3,040) | - | - | 39,025,589 | - | - | - |
| 6/5/1996 | CHECK WIRE | 7,300,000 | 7,300,000 | - | - | - | 46,325,589 | - | - | - |
| 6/7/1996 | W/H TAX DIV BA | (437) | - | (437) | - | - | 46,325,153 | - | - | - |
| 6/10/1996 | W/H TAX DIV MOB | (3,148) | - | (3,148) | - | - | 46,322,004 | - | - | - |
| 6/10/1996 | W/H TAX DIV IBM | (1,642) | - | (1,642) | - | - | 46,320,362 | - | - | - |
| 6/10/1996 | W/H TAX DIV AN | (2,588) | - | (2,588) | - | - | 46,317,774 | - | - | - |
| 6/11/1996 | W/H TAX DIV JNJ | (1,186) | - | (1,186) | - | - | 46,316,588 | - | - | - |
| 6/12/1996 | W/H TAX DIV BAC | (907) | - | (907) | - | - | 46,315,681 | - | - | - |

MADC1345_00000854

| Column 1<br>Date | Column 2<br>Transaction<br>Description | Column 3<br>Transaction Amount<br>Reported in<br>Customer Statement | Column 4<br>Cash<br>Deposits | Column 5<br>Cash<br>Withdrawals | Column 6<br>Transfers of<br>Principal In | Column 7<br>Transfers of<br>Principal Out | Column 8<br>Balance of<br>Principal | Column 9<br>Preference Period<br>Initial<br>Transfers | Column 10<br>Two Year<br>Initial<br>Transfers | Column 11<br>Six Year<br>Initial<br>Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/12/1996 | W/H TAX DIV MMM | (1,438) | - | (1,438) | - | - | 46,314,243 | - | - | - |
| 6/14/1996 | W/H TAX DIV MCD | (398) | - | (398) | - | - | 46,313,845 | - | - | - |
| 6/21/1996 | W/H TAX DIV AIG | (295) | - | (295) | - | - | 46,313,550 | - | - | - |
| 6/25/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (51) | - | (51) | - | - | 46,313,499 | - | - | - |
| 6/28/1996 | W/H TAX DIV PEP | (1,408) | - | (1,408) | - | - | 46,312,092 | - | - | - |
| 7/1/1996 | W/H TAX DIV WMT | (932) | - | (932) | - | - | 46,311,160 | - | - | - |
| 7/1/1996 | W/H TAX DIV KO | (2,499) | - | (2,499) | - | - | 46,308,661 | - | - | - |
| 7/1/1996 | W/H TAX DIV MRK | (3,260) | - | (3,260) | - | - | 46,305,401 | - | - | - |
| 7/3/1996 | CHECK WIRE | 6,500,000 | 6,500,000 | - | - | - | 52,805,401 | - | - | - |
| 7/5/1996 | W/H TAX DIV SLB | (689) | - | (689) | - | - | 52,804,712 | - | - | - |
| 7/8/1996 | CHECK WIRE | 1,500,000 | 1,500,000 | - | - | - | 54,304,712 | - | - | - |
| 7/10/1996 | W/H TAX DIV HWP | (979) | - | (979) | - | - | 54,303,733 | - | - | - |
| 7/15/1996 | W/H TAX DIV C | (1,999) | - | (1,999) | - | - | 54,301,734 | - | - | - |
| 7/22/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (40) | - | (40) | - | - | 54,301,694 | - | - | - |
| 7/25/1996 | W/H TAX DIV GE | (6,989) | - | (6,989) | - | - | 54,294,704 | - | - | - |
| 7/30/1996 | W/H TAX DIV DOW | (1,377) | - | (1,377) | - | - | 54,293,327 | - | - | - |
| 8/1/1996 | W/H TAX DIV T | (2,798) | - | (2,798) | - | - | 54,290,529 | - | - | - |
| 8/1/1996 | W/H TAX DIV T | (4,843) | - | (4,843) | - | - | 54,285,686 | - | - | - |
| 8/1/1996 | W/H TAX DIV EK | (1,061) | - | (1,061) | - | - | 54,284,625 | - | - | - |
| 8/1/1996 | W/H TAX DIV PNU | (1,244) | - | (1,244) | - | - | 54,283,381 | - | - | - |
| 8/1/1996 | W/H TAX DIV NYN | (2,293) | - | (2,293) | - | - | 54,281,088 | - | - | - |
| 8/1/1996 | W/H TAX DIV AIT | (2,570) | - | (2,570) | - | - | 54,278,519 | - | - | - |
| 8/1/1996 | W/H TAX DIV BMY | (3,429) | - | (3,429) | - | - | 54,275,090 | - | - | - |
| 8/7/1996 | CHECK WIRE | 4,500,000 | 4,500,000 | - | - | - | 58,775,090 | - | - | - |
| 8/9/1996 | W/H TAX DIV AXP | (983) | - | (983) | - | - | 58,774,107 | - | - | - |
| 8/16/1996 | W/H TAX DIV DIS | (666) | - | (666) | - | - | 58,773,442 | - | - | - |
| 8/19/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (51) | - | (51) | - | - | 58,773,390 | - | - | - |
| 8/19/1996 | W/H TAX DIV CCI | (2,504) | - | (2,504) | - | - | 58,770,886 | - | - | - |
| 9/3/1996 | W/H TAX DIV INTC | (486) | - | (486) | - | - | 58,770,400 | - | - | - |
| 9/3/1996 | W/H TAX DIV COL | (157) | - | (157) | - | - | 58,770,244 | - | - | - |
| 9/3/1996 | W/H TAX DIV F | (5,206) | - | (5,206) | - | - | 58,765,038 | - | - | - |
| 9/6/1996 | W/H TAX DIV BA | (1,123) | - | (1,123) | - | - | 58,763,915 | - | - | - |
| 9/9/1996 | CHECK WIRE | 11,200,000 | 11,200,000 | - | - | - | 69,963,915 | - | - | - |
| 9/10/1996 | W/H TAX DIV MOB | (4,617) | - | (4,617) | - | - | 69,959,298 | - | - | - |
| 9/10/1996 | W/H TAX DIV XON | (11,401) | - | (11,401) | - | - | 69,947,897 | - | - | - |
| 9/10/1996 | W/H TAX DIV AN | (3,767) | - | (3,767) | - | - | 69,944,131 | - | - | - |
| 9/10/1996 | W/H TAX DIV GM | (3,603) | - | (3,603) | - | - | 69,940,527 | - | - | - |
| 9/10/1996 | W/H TAX DIV IBM | (2,303) | - | (2,303) | - | - | 69,938,224 | - | - | - |
| 9/10/1996 | W/H TAX DIV JNJ | (3,005) | - | (3,005) | - | - | 69,935,220 | - | - | - |
| 9/12/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (33) | - | (33) | - | - | 69,935,187 | - | - | - |
| 9/12/1996 | W/H TAX DIV DD | (3,807) | - | (3,807) | - | - | 69,931,380 | - | - | - |
| 9/12/1996 | W/H TAX DIV BAC | (2,329) | - | (2,329) | - | - | 69,929,051 | - | - | - |
| 9/13/1996 | W/H TAX DIV ARC | (520) | - | (520) | - | - | 69,928,531 | - | - | - |
| 9/13/1996 | W/H TAX DIV MCD | (646) | - | (646) | - | - | 69,927,885 | - | - | - |
| 9/20/1996 | W/H TAX DIV AIG | (573) | - | (573) | - | - | 69,927,312 | - | - | - |
| 9/27/1996 | W/H TAX DIV PEP | (2,265) | - | (2,265) | - | - | 69,925,047 | - | - | - |
| 10/1/1996 | W/H TAX DIV KO | (4,616) | - | (4,616) | - | - | 69,920,431 | - | - | - |
| 10/1/1996 | W/H TAX DIV EK | (1,723) | - | (1,723) | - | - | 69,918,708 | - | - | - |
| 10/1/1996 | W/H TAX DIV MRK | (6,199) | - | (6,199) | - | - | 69,912,509 | - | - | - |
| 10/7/1996 | W/H TAX DIV WMT | (1,506) | - | (1,506) | - | - | 69,911,003 | - | - | - |
| 10/8/1996 | CHECK WIRE | 6,500,000 | 6,500,000 | - | - | - | 76,411,003 | - | - | - |
| 10/15/1996 | W/H TAX DIV C | (523) | - | (523) | - | - | 76,410,480 | - | - | - |
| 10/15/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (7) | - | (7) | - | - | 76,410,473 | - | - | - |
| 11/1/1996 | W/H TAX DIV T | (6,617) | - | (6,617) | - | - | 76,403,856 | - | - | - |
| 11/7/1996 | CHECK WIRE | 9,000,000 | 9,000,000 | - | - | - | 85,403,856 | - | - | - |
| 11/8/1996 | FIDELITY CASH RESERVES SBI W/H TAX DIV FCRXX | (16) | - | (16) | - | - | 85,403,840 | - | - | - |
| 11/19/1996 | W/H TAX DIV CCI | (1,752) | - | (1,752) | - | - | 85,402,088 | - | - | - |
| 12/2/1996 | W/H TAX DIV INTC | (369) | - | (369) | - | - | 85,401,720 | - | - | - |
| 12/2/1996 | W/H TAX DIV F | (3,787) | - | (3,787) | - | - | 85,397,933 | - | - | - |
| 12/5/1996 | CHECK WIRE | 9,500,000 | 9,500,000 | - | - | - | 94,897,933 | - | - | - |
| 12/6/1996 | W/H TAX DIV BA | (1,615) | - | (1,615) | - | - | 94,896,318 | - | - | - |
| 12/10/1996 | W/H TAX DIV JNJ | (4,187) | - | (4,187) | - | - | 94,892,131 | - | - | - |
| 12/10/1996 | W/H TAX DIV IBM | (1,506) | - | (1,506) | - | - | 94,890,625 | - | - | - |
| 12/10/1996 | W/H TAX DIV AN | (2,664) | - | (2,664) | - | - | 94,887,962 | - | - | - |
| 12/10/1996 | W/H TAX DIV XON | (16,270) | - | (16,270) | - | - | 94,871,692 | - | - | - |

MADC1345_00000855

BLMIS ACCOUNT NO. 1FN061 - KINGATE GLOBAL FUND LTD C/O BANK OF BERMUDA LTD A/C/F KINGATE GLOBAL FUND

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Transaction Amount | | | | | | Preference Period | Two Year | Six Year |
| | Transaction | Reported in | Cash | Cash | Transfers of | Transfers of | Balance of | Initial | Initial | Initial |
| Date | Description | Customer Statement | Deposits | Withdrawals | Principal In | Principal Out | Principal | Transfers | Transfers | Transfers |
| 12/10/1996 | W/H TAX DIV GM | (4,942) | - | (4,942) | - | - | 94,866,750 | - | - | - |
| 12/10/1996 | W/H TAX DIV MOB | (3,278) | - | (3,278) | - | - | 94,863,471 | - | - | - |
| 12/12/1996 | W/H TAX DIV BAC | (3,225) | - | (3,225) | - | - | 94,860,247 | - | - | - |
| 12/12/1996 | W/H TAX DIV MTC | (1,451) | - | (1,451) | - | - | 94,858,795 | - | - | - |
| 12/12/1996 | W/H TAX DIV MMM | (3,431) | - | (3,431) | - | - | 94,855,364 | - | - | - |
| 12/13/1996 | W/H TAX DIV MCD | (865) | - | (865) | - | - | 94,854,499 | - | - | - |
| 12/16/1996 | W/H TAX DIV DD | (5,400) | - | (5,400) | - | - | 94,849,099 | - | - | - |
| 12/16/1996 | W/H TAX DIV KO | (5,098) | - | (5,098) | - | - | 94,844,002 | - | - | - |
| 12/18/1996 | FIDELITY CASH RESERVES SBI  W/H TAX DIV FCRXX | (22) | - | (22) | - | - | 94,843,980 | - | - | - |
| 12/20/1996 | W/H TAX DIV AIG | (783) | - | (783) | - | - | 94,843,197 | - | - | - |
| 1/2/1997 | W/H TAX DIV MRK | (8,156) | - | (8,156) | - | - | 94,835,041 | - | - | - |
| 1/2/1997 | W/H TAX DIV PEP | (2,960) | - | (2,960) | - | - | 94,832,081 | - | - | - |
| 1/2/1997 | W/H TAX DIV EK | (2,307) | - | (2,307) | - | - | 94,829,774 | - | - | - |
| 1/9/1997 | WIRE | 11,000,000 | 11,000,000 | - | - | - | 105,829,774 | - | - | - |
| 1/10/1997 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 105,829,772 | - | - | - |
| 1/15/1997 | W/H TAX DIV C | (4,619) | - | (4,619) | - | - | 105,825,153 | - | - | - |
| 1/17/1997 | W/H TAX DIV WMT | (1,989) | - | (1,989) | - | - | 105,823,164 | - | - | - |
| 2/6/1997 | CHECK WIRE | 13,000,000 | 13,000,000 | - | - | - | 118,823,164 | - | - | - |
| 2/18/1997 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (40) | - | (40) | - | - | 118,823,124 | - | - | - |
| 2/20/1997 | W/H TAX DIV CCI | (4,830) | - | (4,830) | - | - | 118,818,294 | - | - | - |
| 3/3/1997 | W/H TAX DIV F | (8,762) | - | (8,762) | - | - | 118,809,532 | - | - | - |
| 3/3/1997 | W/H TAX DIV COL | (252) | - | (252) | - | - | 118,809,280 | - | - | - |
| 3/3/1997 | W/H TAX DIV INTC | (775) | - | (775) | - | - | 118,808,506 | - | - | - |
| 3/7/1997 | W/H TAX DIV BA | (1,898) | - | (1,898) | - | - | 118,806,608 | - | - | - |
| 3/10/1997 | CHECK WIRE | 3,200,000 | 3,200,000 | - | - | - | 122,006,608 | - | - | - |
| 3/10/1997 | W/H TAX DIV GM | (7,022) | - | (7,022) | - | - | 121,999,585 | - | - | - |
| 3/10/1997 | W/H TAX DIV MOB | (8,212) | - | (8,212) | - | - | 121,991,373 | - | - | - |
| 3/10/1997 | W/H TAX DIV XON | (18,745) | - | (18,745) | - | - | 121,972,628 | - | - | - |
| 3/10/1997 | W/H TAX DIV AN | (6,779) | - | (6,779) | - | - | 121,965,849 | - | - | - |
| 3/10/1997 | W/H TAX DIV IBM | (3,391) | - | (3,391) | - | - | 121,962,458 | - | - | - |
| 3/11/1997 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (5) | - | (5) | - | - | 121,962,453 | - | - | - |
| 3/11/1997 | W/H TAX DIV INJ | (5,301) | - | (5,301) | - | - | 121,957,152 | - | - | - |
| 3/12/1997 | W/H TAX DIV MMM | (4,542) | - | (4,542) | - | - | 121,952,610 | - | - | - |
| 3/12/1997 | W/H TAX DIV BAC | (4,575) | - | (4,575) | - | - | 121,948,035 | - | - | - |
| 3/14/1997 | W/H TAX DIV BA | (6,073) | - | (6,073) | - | - | 121,941,962 | - | - | - |
| 3/17/1997 | TRANS TO 1FN08630 (1FN086) | (3,200,000) | - | - | - | (3,200,000) | 118,741,962 | - | - | - |
| 3/31/1997 | W/H TAX DIV PEP | (1,204) | - | (1,204) | - | - | 118,740,758 | - | - | - |
| 4/1/1997 | W/H TAX DIV KO | (2,330) | - | (2,330) | - | - | 118,738,428 | - | - | - |
| 4/4/1997 | W/H TAX DIV SLB | (2,008) | - | (2,008) | - | - | 118,736,419 | - | - | - |
| 4/8/1997 | CHECK WIRE | 15,000,000 | 15,000,000 | - | - | - | 133,736,419 | - | - | - |
| 4/9/1997 | W/H TAX DIV WMT | (1,042) | - | (1,042) | - | - | 133,735,377 | - | - | - |
| 4/15/1997 | W/H TAX DIV C | (1,991) | - | (1,991) | - | - | 133,733,386 | - | - | - |
| 4/16/1997 | W/H TAX DIV HWP | (1,604) | - | (1,604) | - | - | 133,731,782 | - | - | - |
| 4/24/1997 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (42) | - | (42) | - | - | 133,731,740 | - | - | - |
| 5/1/1997 | W/H TAX DIV BMY | (5,142) | - | (5,142) | - | - | 133,726,598 | - | - | - |
| 5/1/1997 | W/H TAX DIV T | (7,005) | - | (7,005) | - | - | 133,719,593 | - | - | - |
| 5/1/1997 | W/H TAX DIV BEL | (4,204) | - | (4,204) | - | - | 133,715,389 | - | - | - |
| 5/1/1997 | W/H TAX DIV AIT | (4,154) | - | (4,154) | - | - | 133,711,235 | - | - | - |
| 5/9/1997 | CHECK WIRE | 20,000,000 | 20,000,000 | - | - | - | 153,711,235 | - | - | - |
| 5/9/1997 | W/H TAX DIV AXP | (1,429) | - | (1,429) | - | - | 153,709,806 | - | - | - |
| 5/12/1997 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (12) | - | (12) | - | - | 153,709,795 | - | - | - |
| 5/16/1997 | W/H TAX DIV DIS | (1,196) | - | (1,196) | - | - | 153,708,599 | - | - | - |
| 5/19/1997 | W/H TAX DIV CCI | (2,900) | - | (2,900) | - | - | 153,705,699 | - | - | - |
| 6/2/1997 | W/H TAX DIV F | (6,058) | - | (6,058) | - | - | 153,699,641 | - | - | - |
| 6/2/1997 | W/H TAX DIV INTC | (506) | - | (506) | - | - | 153,699,134 | - | - | - |
| 6/2/1997 | W/H TAX DIV COL | (166) | - | (166) | - | - | 153,698,969 | - | - | - |
| 6/9/1997 | CHECK WIRE | 27,000,000 | 27,000,000 | - | - | - | 180,698,969 | - | - | - |
| 6/10/1997 | W/H TAX DIV AN | (4,082) | - | (4,082) | - | - | 180,694,887 | - | - | - |
| 6/10/1997 | W/H TAX DIV IBM | (2,701) | - | (2,701) | - | - | 180,692,186 | - | - | - |
| 6/10/1997 | W/H TAX DIV MOB | (4,880) | - | (4,880) | - | - | 180,687,306 | - | - | - |
| 6/11/1997 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (33) | - | (33) | - | - | 180,687,273 | - | - | - |
| 7/8/1997 | CHECK WIRE | 27,000,000 | 27,000,000 | - | - | - | 207,687,273 | - | - | - |
| 7/9/1997 | W/H TAX DIV HWP | (3,959) | - | (3,959) | - | - | 207,683,313 | - | - | - |
| 7/14/1997 | W/H TAX DIV WMT | (4,381) | - | (4,381) | - | - | 207,678,933 | - | - | - |
| 7/18/1997 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (43) | - | (43) | - | - | 207,678,889 | - | - | - |

MADC1345_00000856

BLMIS ACCOUNT NO. 1FN061 - KINGATE GLOBAL FUND LTD C/O BANK OF BERMUDA LTD A/C/F KINGATE GLOBAL FUND

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Transaction Amount Reported in Customer Statement | | | | | | Preference Period | Two Year | Six Year |
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | Initial Transfers | Initial Transfers | Initial Transfers |
| 7/25/1997 | W/H TAX DIV GE | (23,944) | - | (23,944) | - | - | 207,654,946 | - | - | - |
| 8/1/1997 | W/H TAX DIV BEL | (9,122) | - | (9,122) | - | - | 207,645,824 | - | - | - |
| 8/1/1997 | W/H TAX DIV T | (14,956) | - | (14,956) | - | - | 207,630,869 | - | - | - |
| 8/1/1997 | W/H TAX DIV AIT | (8,603) | - | (8,603) | - | - | 207,622,265 | - | - | - |
| 8/1/1997 | W/H TAX DIV BMY | (10,609) | - | (10,609) | - | - | 207,611,657 | - | - | - |
| 8/8/1997 | W/H TAX DIV AXP | (2,937) | - | (2,937) | - | - | 207,608,720 | - | - | - |
| 8/11/1997 | CHECK WIRE | 12,000,000 | 12,000,000 | - | - | - | 219,608,720 | - | - | - |
| 8/20/1997 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (65) | - | (65) | - | - | 219,608,655 | - | - | - |
| 8/22/1997 | W/H TAX DIV DIS | (2,498) | - | (2,498) | - | - | 219,606,157 | - | - | - |
| 9/8/1997 | CHECK WIRE | 7,000,000 | 7,000,000 | - | - | - | 226,606,157 | - | - | - |
| 9/12/1997 | W/H TAX DIV MCD | (1,782) | - | (1,782) | - | - | 226,604,375 | - | - | - |
| 9/12/1997 | W/H TAX DIV MMM | (4,539) | - | (4,539) | - | - | 226,599,836 | - | - | - |
| 9/19/1997 | W/H TAX DIV AIG | (1,620) | - | (1,620) | - | - | 226,598,216 | - | - | - |
| 9/23/1997 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 226,598,216 | - | - | - |
| 9/26/1997 | W/H TAX DIV NB | (7,406) | - | (7,406) | - | - | 226,590,810 | - | - | - |
| 10/1/1997 | W/H TAX DIV KO | (10,364) | - | (10,364) | - | - | 226,580,446 | - | - | - |
| 10/1/1997 | W/H TAX DIV MRK | (16,656) | - | (16,656) | - | - | 226,563,790 | - | - | - |
| 10/1/1997 | W/H TAX DIV S | (2,709) | - | (2,709) | - | - | 226,561,082 | - | - | - |
| 10/7/1997 | W/H TAX DIV PEP | (5,851) | - | (5,851) | - | - | 226,555,231 | - | - | - |
| 10/8/1997 | CHECK WIRE | 7,000,000 | 7,000,000 | - | - | - | 233,555,231 | - | - | - |
| 10/10/1997 | W/H TAX DIV SLB | (2,839) | - | (2,839) | - | - | 233,552,392 | - | - | - |
| 10/14/1997 | W/H TAX DIV WMT | (4,656) | - | (4,656) | - | - | 233,547,736 | - | - | - |
| 10/15/1997 | W/H TAX DIV HWP | (4,240) | - | (4,240) | - | - | 233,543,496 | - | - | - |
| 10/15/1997 | W/H TAX DIV C | (8,412) | - | (8,412) | - | - | 233,535,084 | - | - | - |
| 10/22/1997 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (48) | - | (48) | - | - | 233,535,036 | - | - | - |
| 10/27/1997 | W/H TAX DIV GE | (26,193) | - | (26,193) | - | - | 233,508,843 | - | - | - |
| 11/3/1997 | W/H TAX DIV BMY | (11,876) | - | (11,876) | - | - | 233,496,967 | - | - | - |
| 11/3/1997 | W/H TAX DIV T | (16,686) | - | (16,686) | - | - | 233,480,281 | - | - | - |
| 11/3/1997 | W/H TAX DIV AIT | (9,794) | - | (9,794) | - | - | 233,470,487 | - | - | - |
| 11/3/1997 | W/H TAX DIV BEL | (18,725) | - | (18,725) | - | - | 233,451,762 | - | - | - |
| 11/10/1997 | W/H TAX DIV AXP | (3,321) | - | (3,321) | - | - | 233,448,441 | - | - | - |
| 11/13/1997 | CHECK WIRE | 27,500,000 | 27,500,000 | - | - | - | 260,948,441 | - | - | - |
| 11/20/1997 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (16) | - | (16) | - | - | 260,948,425 | - | - | - |
| 11/21/1997 | W/H TAX DIV DIS | (2,763) | - | (2,763) | - | - | 260,945,662 | - | - | - |
| 12/12/1997 | W/H TAX DIV MCD | (1,576) | - | (1,576) | - | - | 260,944,086 | - | - | - |
| 12/15/1997 | W/H TAX DIV KO | (9,628) | - | (9,628) | - | - | 260,934,458 | - | - | - |
| 12/17/1997 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (11) | - | (11) | - | - | 260,934,448 | - | - | - |
| 12/19/1997 | W/H TAX DIV AIG | (1,433) | - | (1,433) | - | - | 260,933,015 | - | - | - |
| 12/24/1997 | W/H TAX DIV NB | (7,549) | - | (7,549) | - | - | 260,925,466 | - | - | - |
| 1/2/1998 | W/H TAX DIV MRK | (15,129) | - | (15,129) | - | - | 260,910,336 | - | - | - |
| 1/2/1998 | W/H TAX DIV PEP | (5,349) | - | (5,349) | - | - | 260,904,988 | - | - | - |
| 1/9/1998 | CHECK WIRE | 19,000,000 | 19,000,000 | - | - | - | 279,904,988 | - | - | - |
| 1/15/1998 | W/H TAX DIV C | (7,335) | - | (7,335) | - | - | 279,897,652 | - | - | - |
| 1/20/1998 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (4) | - | (4) | - | - | 279,897,648 | - | - | - |
| 2/9/1998 | CHECK WIRE | 25,000,000 | 25,000,000 | - | - | - | 304,897,648 | - | - | - |
| 2/19/1998 | W/H TAX DIV CCI | (6,765) | - | (6,765) | - | - | 304,890,883 | - | - | - |
| 2/24/1998 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (28) | - | (28) | - | - | 304,890,856 | - | - | - |
| 2/25/1998 | W/H TAX DIV MER | (1,765) | - | (1,765) | - | - | 304,889,091 | - | - | - |
| 3/2/1998 | W/H TAX DIV INTC | (1,302) | - | (1,302) | - | - | 304,887,789 | - | - | - |
| 3/2/1998 | W/H TAX DIV F | (13,280) | - | (13,280) | - | - | 304,874,509 | - | - | - |
| 3/6/1998 | CHECK WIRE | 21,000,000 | 21,000,000 | - | - | - | 325,874,509 | - | - | - |
| 3/6/1998 | W/H TAX DIV BA | (5,374) | - | (5,374) | - | - | 325,869,135 | - | - | - |
| 3/10/1998 | W/H TAX DIV IBM | (5,000) | - | (5,000) | - | - | 325,864,135 | - | - | - |
| 3/10/1998 | W/H TAX DIV AN | (14,396) | - | (14,396) | - | - | 325,849,739 | - | - | - |
| 3/10/1998 | W/H TAX DIV GM | (13,863) | - | (13,863) | - | - | 325,835,877 | - | - | - |
| 3/10/1998 | W/H TAX DIV MOB | (11,735) | - | (11,735) | - | - | 325,824,141 | - | - | - |
| 3/10/1998 | W/H TAX DIV XON | (26,531) | - | (26,531) | - | - | 325,797,610 | - | - | - |
| 3/10/1998 | W/H TAX DIV JNJ | (11,261) | - | (11,261) | - | - | 325,786,350 | - | - | - |
| 3/11/1998 | W/H TAX DIV BAC | (9,312) | - | (9,312) | - | - | 325,777,038 | - | - | - |
| 3/12/1998 | W/H TAX DIV MMM | (8,211) | - | (8,211) | - | - | 325,768,827 | - | - | - |
| 3/13/1998 | W/H TAX DIV ARC | (6,287) | - | (6,287) | - | - | 325,762,540 | - | - | - |
| 3/16/1998 | W/H TAX DIV DD | (13,436) | - | (13,436) | - | - | 325,749,104 | - | - | - |
| 3/17/1998 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (50) | - | (50) | - | - | 325,749,054 | - | - | - |
| 4/3/1998 | W/H TAX DIV SLB | (3,599) | - | (3,599) | - | - | 325,745,455 | - | - | - |
| 4/6/1998 | W/H TAX DIV WMT | (3,563) | - | (3,563) | - | - | 325,741,891 | - | - | - |

MADC1345_00000857

BLMIS ACCOUNT NO. 1FN061 - KINGATE GLOBAL LTD C/O BANK OF BERMUDA LTD A/C/F KINGATE GLOBAL FUND

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Transaction Amount | | | | | | Preference Period | Two Year | Six Year |
| | Transaction | Reported in | Cash | Cash | Transfers of | Transfers of | Balance of | Initial | Initial | Initial |
| Date | Description | Customer Statement | Deposits | Withdrawals | Principal In | Principal Out | Principal | Transfers | Transfers | Transfers |
| 4/8/1998 | CHECK WIRE | 45,000,000 | 45,000,000 | - | - | - | 370,741,891 | - | - | - |
| 4/15/1998 | W/H TAX DIV HWP | (5,796) | - | (5,796) | - | - | 370,736,095 | - | - | - |
| 4/22/1998 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (25) | - | (25) | - | - | 370,736,071 | - | - | - |
| 5/1/1998 | W/H TAX DIV BEL | (24,122) | - | (24,122) | - | - | 370,711,948 | - | - | - |
| 5/1/1998 | W/H TAX DIV T | (21,785) | - | (21,785) | - | - | 370,690,163 | - | - | - |
| 5/1/1998 | W/H TAX DIV BMY | (15,709) | - | (15,709) | - | - | 370,674,455 | - | - | - |
| 5/1/1998 | W/H TAX DIV AIT | (13,763) | - | (13,763) | - | - | 370,660,692 | - | - | - |
| 5/8/1998 | CHECK WIRE | 30,000,000 | 30,000,000 | - | - | - | 400,660,692 | - | - | - |
| 5/8/1998 | W/H TAX DIV AXP | (4,280) | - | (4,280) | - | - | 400,656,412 | - | - | - |
| 5/19/1998 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (26) | - | (26) | - | - | 400,656,386 | - | - | - |
| 5/22/1998 | W/H TAX DIV DIS | (4,229) | - | (4,229) | - | - | 400,652,157 | - | - | - |
| 6/5/1998 | CHECK WIRE | 18,000,000 | 18,000,000 | - | - | - | 418,652,157 | - | - | - |
| 6/5/1998 | W/H TAX DIV BA | (6,618) | - | (6,618) | - | - | 418,645,539 | - | - | - |
| 6/9/1998 | W/H TAX DIV JNJ | (15,754) | - | (15,754) | - | - | 418,629,785 | - | - | - |
| 6/10/1998 | W/H TAX DIV GM | (11,881) | - | (11,881) | - | - | 418,617,904 | - | - | - |
| 6/10/1998 | W/H TAX DIV XON | (32,975) | - | (32,975) | - | - | 418,584,928 | - | - | - |
| 6/10/1998 | W/H TAX DIV MOB | (6,476) | - | (6,476) | - | - | 418,578,452 | - | - | - |
| 6/10/1998 | W/H TAX DIV IBM | (3,214) | - | (3,214) | - | - | 418,575,239 | - | - | - |
| 6/10/1998 | W/H TAX DIV AN | (23,914) | - | (23,914) | - | - | 418,551,325 | - | - | - |
| 6/11/1998 | W/H TAX DIV BAC | (11,428) | - | (11,428) | - | - | 418,539,897 | - | - | - |
| 6/11/1998 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 418,539,895 | - | - | - |
| 6/12/1998 | W/H TAX DIV MCD | (2,913) | - | (2,913) | - | - | 418,536,982 | - | - | - |
| 6/12/1998 | W/H TAX DIV DD | (19,303) | - | (19,303) | - | - | 418,517,680 | - | - | - |
| 6/12/1998 | W/H TAX DIV MMM | (10,111) | - | (10,111) | - | - | 418,507,569 | - | - | - |
| 6/19/1998 | W/H TAX DIV AIG | (2,565) | - | (2,565) | - | - | 418,505,004 | - | - | - |
| 6/26/1998 | W/H TAX DIV NB | (16,992) | - | (16,992) | - | - | 418,488,012 | - | - | - |
| 6/30/1998 | W/H TAX DIV NT | (1,509) | - | (1,509) | - | - | 418,486,503 | - | - | - |
| 6/30/1998 | W/H TAX DIV PEP | (9,233) | - | (9,233) | - | - | 418,477,269 | - | - | - |
| 7/1/1998 | AMOCO CORP  CANCEL W/H | 23,914 | - | 23,914 | - | - | 418,501,184 | - | - | - |
| 7/1/1998 | W/H TAX DIV KO | (17,633) | - | (17,633) | - | - | 418,483,550 | - | - | - |
| 7/1/1998 | AMOCO CORP  W/H TAX DIV | (11,957) | - | (11,957) | - | - | 418,471,593 | - | - | - |
| 7/1/1998 | W/H TAX DIV MRK | (25,317) | - | (25,317) | - | - | 418,446,277 | - | - | - |
| 7/9/1998 | CHECK WIRE | 3,000,000 | 3,000,000 | - | - | - | 421,446,277 | - | - | - |
| 7/9/1998 | CHECK WIRE | 52,000,000 | 52,000,000 | - | - | - | 473,446,277 | - | - | - |
| 7/10/1998 | W/H TAX DIV SLB | (4,439) | - | (4,439) | - | - | 473,441,838 | - | - | - |
| 7/13/1998 | W/H TAX DIV WMT | (8,216) | - | (8,216) | - | - | 473,433,621 | - | - | - |
| 7/15/1998 | W/H TAX DIV C | (12,307) | - | (12,307) | - | - | 473,421,315 | - | - | - |
| 7/15/1998 | W/H TAX DIV HWP | (7,996) | - | (7,996) | - | - | 473,413,318 | - | - | - |
| 7/22/1998 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (40) | - | (40) | - | - | 473,413,278 | - | - | - |
| 7/27/1998 | W/H TAX DIV GE | (46,316) | - | (46,316) | - | - | 473,366,962 | - | - | - |
| 8/3/1998 | W/H TAX DIV BMY | (18,465) | - | (18,465) | - | - | 473,348,497 | - | - | - |
| 8/3/1998 | W/H TAX DIV BEL | (28,356) | - | (28,356) | - | - | 473,320,141 | - | - | - |
| 8/3/1998 | W/H TAX DIV T | (25,174) | - | (25,174) | - | - | 473,294,967 | - | - | - |
| 8/3/1998 | W/H TAX DIV AIT | (15,543) | - | (15,543) | - | - | 473,279,424 | - | - | - |
| 8/5/1998 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (4) | - | (4) | - | - | 473,279,420 | - | - | - |
| 8/7/1998 | CHECK WIRE | 47,000,000 | 47,000,000 | - | - | - | 520,279,420 | - | - | - |
| 8/10/1998 | W/H TAX DIV AXP | (5,143) | - | (5,143) | - | - | 520,274,277 | - | - | - |
| 9/4/1998 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 520,274,277 | - | - | - |
| 9/9/1998 | CHECK WIRE | 15,000,000 | 15,000,000 | - | - | - | 535,274,277 | - | - | - |
| 9/11/1998 | W/H TAX DIV MCD | (2,700) | - | (2,700) | - | - | 535,271,577 | - | - | - |
| 9/30/1998 | W/H TAX DIV PEP | (3,079) | - | (3,079) | - | - | 535,268,498 | - | - | - |
| 10/15/1998 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (12) | - | (12) | - | - | 535,268,486 | - | - | - |
| 10/21/1998 | CHECK WIRE | 8,000,000 | 8,000,000 | - | - | - | 543,268,486 | - | - | - |
| 11/13/1998 | CHECK WIRE | 10,000,000 | 10,000,000 | - | - | - | 553,268,486 | - | - | - |
| 11/23/1998 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (4) | - | (4) | - | - | 553,268,482 | - | - | - |
| 12/1/1998 | W/H TAX DIV MCD | (1,935) | - | (1,935) | - | - | 553,266,547 | - | - | - |
| 12/15/1998 | W/H TAX DIV KO | (11,436) | - | (11,436) | - | - | 553,255,111 | - | - | - |
| 12/18/1998 | W/H TAX DIV AIG | (1,806) | - | (1,806) | - | - | 553,253,305 | - | - | - |
| 12/22/1998 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (22) | - | (22) | - | - | 553,253,283 | - | - | - |
| 12/23/1998 | W/H TAX DIV BAC | (24,187) | - | (24,187) | - | - | 553,229,097 | - | - | - |
| 1/4/1999 | W/H TAX DIV MRK | (20,251) | - | (20,251) | - | - | 553,208,845 | - | - | - |
| 1/4/1999 | W/H TAX DIV PEP | (5,936) | - | (5,936) | - | - | 553,202,909 | - | - | - |
| 1/4/1999 | W/H TAX DIV ONE | (13,616) | - | (13,616) | - | - | 553,189,293 | - | - | - |
| 1/11/1999 | W/H TAX DIV WMT | (5,276) | - | (5,276) | - | - | 553,184,017 | - | - | - |
| 1/14/1999 | CHECK WIRE | 7,000,000 | 7,000,000 | - | - | - | 560,184,017 | - | - | - |

MADC1345_00000858

Exhibit L

BLMIS ACCOUNT NO. 1FN061 - KINGATE GLOBAL FUND LTD C/O BANK OF BERMUDA LTD A/C/F KINGATE GLOBAL FUND

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Transaction Amount | | | | | | Preference Period | Two Year | Six Year |
| | Transaction | Reported in | Cash | Cash | Transfers of | Transfers of | Balance of | Initial | Initial | Initial |
| Date | Description | Customer Statement | Deposits | Withdrawals | Principal In | Principal Out | Principal | Transfers | Transfers | Transfers |
| 1/22/1999 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | 560,184,014 | - | - | - |
| 2/1/1999 | CHECK WIRE | 8,000,000 | 8,000,000 | - | - | - | 568,184,014 | - | - | - |
| 2/9/1999 | CHECK WIRE | 15,000,000 | 15,000,000 | - | - | - | 583,184,014 | - | - | - |
| 2/16/1999 | W/H TAX DIV TXN | (1,959) | - | (1,959) | - | - | 583,182,055 | - | - | - |
| 2/16/1999 | W/H TAX DIV PG | (16,320) | - | (16,320) | - | - | 583,165,735 | - | - | - |
| 2/24/1999 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (11) | - | (11) | - | - | 583,165,724 | - | - | - |
| 2/26/1999 | W/H TAX DIV C | (23,101) | - | (23,101) | - | - | 583,142,623 | - | - | - |
| 3/1/1999 | W/H TAX DIV F | (31,527) | - | (31,527) | - | - | 583,111,096 | - | - | - |
| 3/1/1999 | W/H TAX DIV WFC | (16,830) | - | (16,830) | - | - | 583,094,266 | - | - | - |
| 3/1/1999 | W/H TAX DIV INTC | (3,775) | - | (3,775) | - | - | 583,090,491 | - | - | - |
| 3/3/1999 | W/H TAX DIV BA | (7,608) | - | (7,608) | - | - | 583,082,882 | - | - | - |
| 3/4/1999 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (28) | - | (28) | - | - | 583,082,854 | - | - | - |
| 3/9/1999 | CHECK WIRE | 15,000,000 | 15,000,000 | - | - | - | 598,082,854 | - | - | - |
| 3/9/1999 | W/H TAX DIV JNJ | (18,681) | - | (18,681) | - | - | 598,064,173 | - | - | - |
| 3/10/1999 | W/H TAX DIV XON | (36,170) | - | (36,170) | - | - | 598,028,003 | - | - | - |
| 3/10/1999 | W/H TAX DIV IBM | (12,086) | - | (12,086) | - | - | 598,015,917 | - | - | - |
| 3/10/1999 | W/H TAX DIV GM | (18,681) | - | (18,681) | - | - | 597,997,235 | - | - | - |
| 3/15/1999 | W/H TAX DIV DD | (22,119) | - | (22,119) | - | - | 597,975,116 | - | - | - |
| 3/31/1999 | W/H TAX DIV PEP | (10,710) | - | (10,710) | - | - | 597,964,406 | - | - | - |
| 3/31/1999 | W/H TAX DIV MCD | (3,590) | - | (3,590) | - | - | 597,960,816 | - | - | - |
| 4/1/1999 | W/H TAX DIV ONE | (27,972) | - | (27,972) | - | - | 597,932,845 | - | - | - |
| 4/1/1999 | W/H TAX DIV KO | (22,155) | - | (22,155) | - | - | 597,910,690 | - | - | - |
| 4/8/1999 | CHECK WIRE | 15,000,000 | 15,000,000 | - | - | - | 612,910,690 | - | - | - |
| 4/14/1999 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (23) | - | (23) | - | - | 612,910,667 | - | - | - |
| 4/19/1999 | W/H TAX DIV WMT | (12,795) | - | (12,795) | - | - | 612,897,872 | - | - | - |
| 4/26/1999 | W/H TAX DIV GE | (11,152) | - | (11,152) | - | - | 612,886,719 | - | - | - |
| 5/5/1999 | CHECK WIRE | 15,000,000 | 15,000,000 | - | - | - | 627,886,719 | - | - | - |
| 5/5/1999 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 627,886,717 | - | - | - |
| 5/11/1999 | CHECK WIRE | 7,000,000 | 7,000,000 | - | - | - | 634,886,717 | - | - | - |
| 5/14/1999 | W/H TAX DIV PG | (3,508) | - | (3,508) | - | - | 634,883,209 | - | - | - |
| 5/14/1999 | TRANS TO 1FN08630 A/O 5/11/99 (1FN086) | (7,000,000) | - | - | - | (7,000,000) | 627,883,209 | - | - | - |
| 5/24/1999 | W/H TAX DIV TXN | (299) | - | (299) | - | - | 627,882,910 | - | - | - |
| 5/28/1999 | W/H TAX DIV C | (4,432) | - | (4,432) | - | - | 627,878,478 | - | - | - |
| 6/1/1999 | W/H TAX DIV LU | (938) | - | (938) | - | - | 627,877,540 | - | - | - |
| 6/1/1999 | W/H TAX DIV WFC | (9,132) | - | (9,132) | - | - | 627,868,408 | - | - | - |
| 6/1/1999 | W/H TAX DIV INTC | (2,845) | - | (2,845) | - | - | 627,865,563 | - | - | - |
| 6/1/1999 | W/H TAX DIV F | (5,123) | - | (5,123) | - | - | 627,860,439 | - | - | - |
| 6/2/1999 | CHECK WIRE | 15,000,000 | 15,000,000 | - | - | - | 642,860,439 | - | - | - |
| 6/4/1999 | W/H TAX DIV BA | (7,653) | - | (7,653) | - | - | 642,852,786 | - | - | - |
| 6/8/1999 | W/H TAX DIV JNJ | (20,970) | - | (20,970) | - | - | 642,831,816 | - | - | - |
| 6/10/1999 | W/H TAX DIV IBM | (6,182) | - | (6,182) | - | - | 642,825,634 | - | - | - |
| 6/10/1999 | W/H TAX DIV GM | (18,417) | - | (18,417) | - | - | 642,807,217 | - | - | - |
| 6/10/1999 | W/H TAX DIV MOB | (25,395) | - | (25,395) | - | - | 642,781,822 | - | - | - |
| 6/10/1999 | W/H TAX DIV XON | (56,285) | - | (56,285) | - | - | 642,725,537 | - | - | - |
| 6/14/1999 | W/H TAX DIV DD | (23,102) | - | (23,102) | - | - | 642,702,435 | - | - | - |
| 6/16/1999 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (35) | - | (35) | - | - | 642,702,401 | - | - | - |
| 7/2/1999 | CHECK WIRE | 15,000,000 | 15,000,000 | - | - | - | 657,702,401 | - | - | - |
| 7/12/1999 | W/H TAX DIV WMT | (6,825) | - | (6,825) | - | - | 657,695,576 | - | - | - |
| 7/14/1999 | W/H TAX DIV HWP | (4,992) | - | (4,992) | - | - | 657,690,584 | - | - | - |
| 7/21/1999 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (36) | - | (36) | - | - | 657,690,548 | - | - | - |
| 7/26/1999 | W/H TAX DIV GE | (36,173) | - | (36,173) | - | - | 657,654,375 | - | - | - |
| 7/29/1999 | CHECK WIRE | 15,000,000 | 15,000,000 | - | - | - | 672,654,375 | - | - | - |
| 8/2/1999 | W/H TAX DIV BEL | (18,769) | - | (18,769) | - | - | 672,635,607 | - | - | - |
| 8/2/1999 | W/H TAX DIV AIT | (10,525) | - | (10,525) | - | - | 672,625,081 | - | - | - |
| 8/2/1999 | W/H TAX DIV BMY | (12,997) | - | (12,997) | - | - | 672,612,085 | - | - | - |
| 8/2/1999 | W/H TAX DIV T | (21,450) | - | (21,450) | - | - | 672,590,635 | - | - | - |
| 8/5/1999 | W/H TAX DIV AIG | (14) | - | (14) | - | - | 672,590,621 | - | - | - |
| 8/10/1999 | CHECK WIRE | 15,000,000 | 15,000,000 | - | - | - | 687,590,621 | - | - | - |
| 8/10/1999 | W/H TAX DIV AXP | (3,071) | - | (3,071) | - | - | 687,587,550 | - | - | - |
| 8/16/1999 | W/H TAX DIV TXN | (420) | - | (420) | - | - | 687,587,130 | - | - | - |
| 8/24/1999 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (111) | - | (111) | - | - | 687,587,019 | - | - | - |
| 8/27/1999 | W/H TAX DIV C | (5,995) | - | (5,995) | - | - | 687,581,024 | - | - | - |
| 9/1/1999 | W/H TAX DIV WFC | (4,282) | - | (4,282) | - | - | 687,576,742 | - | - | - |
| 9/1/1999 | W/H TAX DIV F | (7,197) | - | (7,197) | - | - | 687,569,544 | - | - | - |
| 9/1/1999 | W/H TAX DIV LU | (791) | - | (791) | - | - | 687,568,754 | - | - | - |

MADC1345_00000859

**BLMIS ACCOUNT NO. 1FN061 - KINGATE GLOBAL FUND LTD C/O BANK OF BERMUDA LTD A/C/F KINGATE GLOBAL FUND**

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Transaction Amount Reported in | | | | | | Preference Period | Two Year | Six Year |
| | Transaction | Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | Initial Transfers | Initial Transfers | Initial Transfers |
| Date | Description | | | | | | | | | |
| 9/1/1999 | W/H TAX DIV INTC | (1,334) | - | (1,334) | - | - | 687,567,420 | - | - | - |
| 9/3/1999 | W/H TAX DIV BA | (1,729) | - | (1,729) | - | - | 687,565,690 | - | - | - |
| 9/7/1999 | W/H TAX DIV JNJ | (9,995) | - | (9,995) | - | - | 687,555,696 | - | - | - |
| 9/8/1999 | CHECK WIRE | 20,000,000 | 20,000,000 | - | - | - | 707,555,696 | - | - | - |
| 9/10/1999 | W/H TAX DIV MOB | (5,633) | - | (5,633) | - | - | 707,550,063 | - | - | - |
| 9/10/1999 | W/H TAX DIV XON | (12,830) | - | (12,830) | - | - | 707,537,233 | - | - | - |
| 9/10/1999 | W/H TAX DIV GM | (4,118) | - | (4,118) | - | - | 707,533,115 | - | - | - |
| 9/10/1999 | W/H TAX DIV IBM | (2,767) | - | (2,767) | - | - | 707,530,348 | - | - | - |
| 9/13/1999 | W/H TAX DIV DD | (5,188) | - | (5,188) | - | - | 707,525,160 | - | - | - |
| 9/13/1999 | W/H TAX DIV MMM | (5,711) | - | (5,711) | - | - | 707,519,449 | - | - | - |
| 9/15/1999 | W/H TAX DIV MCD | (3,968) | - | (3,968) | - | - | 707,515,480 | - | - | - |
| 9/17/1999 | W/H TAX DIV AIG | (4,727) | - | (4,727) | - | - | 707,510,753 | - | - | - |
| 9/24/1999 | W/H TAX DIV BAC | (47,491) | - | (47,491) | - | - | 707,463,262 | - | - | - |
| 9/30/1999 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | 707,463,258 | - | - | - |
| 9/30/1999 | W/H TAX DIV PEP | (12,036) | - | (12,036) | - | - | 707,451,222 | - | - | - |
| 10/1/1999 | W/H TAX DIV KO | (24,056) | - | (24,056) | - | - | 707,427,166 | - | - | - |
| 10/1/1999 | W/H TAX DIV ONE | (29,151) | - | (29,151) | - | - | 707,398,015 | - | - | - |
| 10/1/1999 | W/H TAX DIV MRK | (42,232) | - | (42,232) | - | - | 707,355,783 | - | - | - |
| 10/5/1999 | CHECK WIRE | 15,000,000 | 15,000,000 | - | - | - | 722,355,783 | - | - | - |
| 10/12/1999 | W/H TAX DIV WMT | (13,485) | - | (13,485) | - | - | 722,342,299 | - | - | - |
| 10/13/1999 | W/H TAX DIV HWP | (9,923) | - | (9,923) | - | - | 722,332,375 | - | - | - |
| 10/20/1999 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (9) | - | (9) | - | - | 722,332,367 | - | - | - |
| 10/25/1999 | W/H TAX DIV GE | (69,796) | - | (69,796) | - | - | 722,262,571 | - | - | - |
| 11/1/1999 | W/H TAX DIV T | (42,166) | - | (42,166) | - | - | 722,220,405 | - | - | - |
| 11/1/1999 | W/H TAX DIV BEL | (36,154) | - | (36,154) | - | - | 722,184,251 | - | - | - |
| 11/1/1999 | W/H TAX DIV BMY | (26,018) | - | (26,018) | - | - | 722,158,233 | - | - | - |
| 11/1/1999 | W/H TAX DIV AIT | (20,922) | - | (20,922) | - | - | 722,137,310 | - | - | - |
| 11/10/1999 | CHECK WIRE | 10,000,000 | 10,000,000 | - | - | - | 732,137,310 | - | - | - |
| 11/10/1999 | W/H TAX DIV AXP | (6,105) | - | (6,105) | - | - | 732,131,205 | - | - | - |
| 11/17/1999 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (6) | - | (6) | - | - | 732,131,199 | - | - | - |
| 12/3/1999 | W/H TAX DIV BA | (3,223) | - | (3,223) | - | - | 732,127,976 | - | - | - |
| 12/7/1999 | W/H TAX DIV JNJ | (9,210) | - | (9,210) | - | - | 732,118,766 | - | - | - |
| 12/8/1999 | CHECK WIRE | 15,000,000 | 15,000,000 | - | - | - | 747,118,766 | - | - | - |
| 12/10/1999 | W/H TAX DIV GM | (8,223) | - | (8,223) | - | - | 747,110,543 | - | - | - |
| 12/10/1999 | W/H TAX DIV IBM | (5,526) | - | (5,526) | - | - | 747,105,017 | - | - | - |
| 12/10/1999 | W/H TAX DIV XON | (26,774) | - | (26,774) | - | - | 747,078,243 | - | - | - |
| 12/10/1999 | W/H TAX DIV MOB | (11,249) | - | (11,249) | - | - | 747,066,994 | - | - | - |
| 12/13/1999 | W/H TAX DIV MMM | (13,778) | - | (13,778) | - | - | 747,053,216 | - | - | - |
| 12/14/1999 | W/H TAX DIV DD | (8,634) | - | (8,634) | - | - | 747,044,582 | - | - | - |
| 12/17/1999 | W/H TAX DIV DIS | (10,361) | - | (10,361) | - | - | 747,034,221 | - | - | - |
| 12/31/1999 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (32) | - | (32) | - | - | 747,034,189 | - | - | - |
| 1/11/2000 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 747,034,187 | - | - | - |
| 1/12/2000 | CHECK WIRE | 15,000,000 | 15,000,000 | - | - | - | 762,034,187 | - | - | - |
| 2/1/2000 | W/H TAX DIV BEL | (14,236) | - | (14,236) | - | - | 762,019,950 | - | - | - |
| 2/14/2000 | W/H TAX DIV TXN | (2,068) | - | (2,068) | - | - | 762,017,883 | - | - | - |
| 2/15/2000 | W/H TAX DIV PG | (25,595) | - | (25,595) | - | - | 761,992,288 | - | - | - |
| 2/24/2000 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (43) | - | (43) | - | - | 761,992,245 | - | - | - |
| 2/25/2000 | W/H TAX DIV C | (32,961) | - | (32,961) | - | - | 761,959,284 | - | - | - |
| 3/1/2000 | W/H TAX DIV LU | (3,655) | - | (3,655) | - | - | 761,955,629 | - | - | - |
| 3/1/2000 | W/H TAX DIV WFC | (21,769) | - | (21,769) | - | - | 761,933,861 | - | - | - |
| 3/1/2000 | W/H TAX DIV INTC | (6,106) | - | (6,106) | - | - | 761,927,755 | - | - | - |
| 3/1/2000 | W/H TAX DIV F | (37,257) | - | (37,257) | - | - | 761,890,498 | - | - | - |
| 3/3/2000 | CHECK WIRE | 15,000,000 | 15,000,000 | - | - | - | 776,890,498 | - | - | - |
| 3/3/2000 | W/H TAX DIV BA | (7,946) | - | (7,946) | - | - | 776,882,552 | - | - | - |
| 3/7/2000 | W/H TAX DIV JNJ | (23,839) | - | (23,839) | - | - | 776,858,713 | - | - | - |
| 3/10/2000 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (44) | - | (44) | - | - | 776,858,670 | - | - | - |
| 3/10/2000 | W/H TAX DIV IBM | (12,844) | - | (12,844) | - | - | 776,845,826 | - | - | - |
| 3/10/2000 | W/H TAX DIV XOM | (92,740) | - | (92,740) | - | - | 776,753,086 | - | - | - |
| 3/10/2000 | W/H TAX DIV GM | (19,440) | - | (19,440) | - | - | 776,733,646 | - | - | - |
| 3/14/2000 | W/H TAX DIV DD | (22,424) | - | (22,424) | - | - | 776,711,222 | - | - | - |
| 3/23/2000 | W/H TAX DIV HD | (1,874) | - | (1,874) | - | - | 776,709,348 | - | - | - |
| 3/31/2000 | W/H TAX DIV PEP | (8,243) | - | (8,243) | - | - | 776,701,105 | - | - | - |
| 4/3/2000 | W/H TAX DIV KO | (26,272) | - | (26,272) | - | - | 776,674,833 | - | - | - |
| 4/10/2000 | W/H TAX DIV WMT | (16,977) | - | (16,977) | - | - | 776,657,856 | - | - | - |
| 4/25/2000 | W/H TAX DIV GE | (27,944) | - | (27,944) | - | - | 776,629,913 | - | - | - |

MADC1345_00000860

BLMIS ACCOUNT NO. 1FN061 - KINGATE GLOBAL FUND LTD C/O BANK OF BERMUDA LTD A/C/F KINGATE GLOBAL FUND

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Transaction Amount Reported in | Cash | Cash | Transfers of | Transfers of | Balance of | Preference Period Initial | Two Year Initial | Six Year Initial |
| Date | Transaction Description | Customer Statement | Deposits | Withdrawals | Principal In | Principal Out | Principal | Transfers | Transfers | Transfers |
| 4/28/2000 | W/H TAX DIV MWD | (3,680) | - | (3,680) | - | - | 776,626,233 | - | - | - |
| 4/28/2000 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (41) | - | (41) | - | - | 776,626,192 | - | - | - |
| 5/12/2000 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (16) | - | (16) | - | - | 776,626,175 | - | - | - |
| 5/12/2000 | CHECK WIRE | (30,000,000) | - | (30,000,000) | - | - | 746,626,175 | - | - | - |
| 6/1/2000 | W/H TAX DIV WFC | (9,861) | - | (9,861) | - | - | 746,616,315 | - | - | - |
| 6/1/2000 | W/H TAX DIV INTC | (2,689) | - | (2,689) | - | - | 746,613,625 | - | - | - |
| 6/12/2000 | W/H TAX DIV GM | (8,770) | - | (8,770) | - | - | 746,604,856 | - | - | - |
| 6/12/2000 | W/H TAX DIV DD | (22,026) | - | (22,026) | - | - | 746,582,829 | - | - | - |
| 6/12/2000 | W/H TAX DIV IBM | (6,334) | - | (6,334) | - | - | 746,576,496 | - | - | - |
| 6/12/2000 | W/H TAX DIV XOM | (93,444) | - | (93,444) | - | - | 746,483,052 | - | - | - |
| 6/13/2000 | W/H TAX DIV JNJ | (14,450) | - | (14,450) | - | - | 746,468,602 | - | - | - |
| 6/19/2000 | TRANS FROM 1FN08630 (1FN086) | 8,000,000 | - | - | 8,000,000 | - | 754,468,602 | - | - | - |
| 6/21/2000 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (34) | - | (34) | - | - | 754,468,568 | - | - | - |
| 7/10/2000 | W/H TAX DIV WMT | (4,838) | - | (4,838) | - | - | 754,463,730 | - | - | - |
| 7/18/2000 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (13) | - | (13) | - | - | 754,463,717 | - | - | - |
| 8/15/2000 | W/H TAX DIV PG | (13,156) | - | (13,156) | - | - | 754,450,561 | - | - | - |
| 8/15/2000 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (46) | - | (46) | - | - | 754,450,514 | - | - | - |
| 8/21/2000 | W/H TAX DIV TXN | (1,883) | - | (1,883) | - | - | 754,448,631 | - | - | - |
| 8/24/2000 | W/H TAX DIV MER | (6,756) | - | (6,756) | - | - | 754,441,875 | - | - | - |
| 8/25/2000 | W/H TAX DIV C | (34,690) | - | (34,690) | - | - | 754,407,185 | - | - | - |
| 9/1/2000 | W/H TAX DIV LU | (3,841) | - | (3,841) | - | - | 754,403,344 | - | - | - |
| 9/1/2000 | W/H TAX DIV INTC | (7,515) | - | (7,515) | - | - | 754,395,829 | - | - | - |
| 9/1/2000 | W/H TAX DIV WFC | (19,977) | - | (19,977) | - | - | 754,375,851 | - | - | - |
| 9/8/2000 | CHECK WIRE | 20,000,000 | 20,000,000 | - | - | - | 774,375,851 | - | - | - |
| 9/11/2000 | W/H TAX DIV IBM | (13,174) | - | (13,174) | - | - | 774,362,677 | - | - | - |
| 9/11/2000 | W/H TAX DIV XOM | (48,038) | - | (48,038) | - | - | 774,314,639 | - | - | - |
| 9/15/2000 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (106) | - | (106) | - | - | 774,314,533 | - | - | - |
| 10/2/2000 | W/H TAX DIV KO | (13,902) | - | (13,902) | - | - | 774,300,631 | - | - | - |
| 10/3/2000 | CHECK WIRE | 20,000,000 | 20,000,000 | - | - | - | 794,300,631 | - | - | - |
| 10/5/2000 | W/H TAX DIV AV | (2) | - | (2) | - | - | 794,300,629 | - | - | - |
| 10/10/2000 | W/H TAX DIV WMT | (8,903) | - | (8,903) | - | - | 794,291,726 | - | - | - |
| 10/11/2000 | W/H TAX DIV HWP | (9,404) | - | (9,404) | - | - | 794,282,321 | - | - | - |
| 10/18/2000 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (6) | - | (6) | - | - | 794,282,315 | - | - | - |
| 10/25/2000 | W/H TAX DIV GE | (79,768) | - | (79,768) | - | - | 794,202,547 | - | - | - |
| 10/27/2000 | W/H TAX DIV MWD | (13,487) | - | (13,487) | - | - | 794,189,060 | - | - | - |
| 11/1/2000 | W/H TAX DIV PHA | (9,049) | - | (9,049) | - | - | 794,180,011 | - | - | - |
| 11/1/2000 | W/H TAX DIV VZ | (61,893) | - | (61,893) | - | - | 794,118,118 | - | - | - |
| 11/1/2000 | W/H TAX DIV T | (49,371) | - | (49,371) | - | - | 794,068,747 | - | - | - |
| 11/1/2000 | W/H TAX DIV BMY | (28,634) | - | (28,634) | - | - | 794,040,113 | - | - | - |
| 11/6/2000 | CHECK WIRE | 20,000,000 | 20,000,000 | - | - | - | 814,040,113 | - | - | - |
| 11/10/2000 | W/H TAX DIV AXP | (6,281) | - | (6,281) | - | - | 814,033,832 | - | - | - |
| 11/17/2000 | CHECK WIRE | 20,000,000 | 20,000,000 | - | - | - | 834,033,832 | - | - | - |
| 12/12/2000 | W/H TAX DIV JNJ | (5,904) | - | (5,904) | - | - | 834,027,928 | - | - | - |
| 12/18/2000 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (71) | - | (71) | - | - | 834,027,857 | - | - | - |
| 12/26/2000 | CHECK WIRE | 20,000,000 | 20,000,000 | - | - | - | 854,027,857 | - | - | - |
| 1/4/2001 | CHECK WIRE | 30,000,000 | 30,000,000 | - | - | - | 884,027,857 | - | - | - |
| 1/18/2001 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (22) | - | (22) | - | - | 884,027,835 | - | - | - |
| 1/26/2001 | CHECK WIRE | 60,000,000 | 60,000,000 | - | - | - | 944,027,835 | - | - | - |
| 1/30/2001 | W/H TAX DIV MWD | (7,665) | - | (7,665) | - | - | 944,020,170 | - | - | - |
| 2/1/2001 | W/H TAX DIV VZ | (32,077) | - | (32,077) | - | - | 943,988,093 | - | - | - |
| 2/1/2001 | W/H TAX DIV PHA | (4,856) | - | (4,856) | - | - | 943,983,236 | - | - | - |
| 2/12/2001 | W/H TAX DIV TXN | (2,765) | - | (2,765) | - | - | 943,980,472 | - | - | - |
| 2/15/2001 | W/H TAX DIV PG | (20,719) | - | (20,719) | - | - | 943,959,753 | - | - | - |
| 2/22/2001 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (6) | - | (6) | - | - | 943,959,747 | - | - | - |
| 2/23/2001 | W/H TAX DIV C | (51,536) | - | (51,536) | - | - | 943,908,211 | - | - | - |
| 3/1/2001 | W/H TAX DIV LU | (2,875) | - | (2,875) | - | - | 943,905,336 | - | - | - |
| 3/1/2001 | W/H TAX DIV WFC | (29,552) | - | (29,552) | - | - | 943,875,784 | - | - | - |
| 3/1/2001 | W/H TAX DIV INTC | (10,241) | - | (10,241) | - | - | 943,865,543 | - | - | - |
| 3/8/2001 | W/H TAX DIV PFE | (53,000) | - | (53,000) | - | - | 943,812,544 | - | - | - |
| 3/9/2001 | W/H TAX DIV XOM | (110,378) | - | (110,378) | - | - | 943,702,165 | - | - | - |
| 3/12/2001 | W/H TAX DIV IBM | (17,469) | - | (17,469) | - | - | 943,684,697 | - | - | - |
| 3/13/2001 | W/H TAX DIV JNJ | (14,112) | - | (14,112) | - | - | 943,670,585 | - | - | - |
| 3/19/2001 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (10) | - | (10) | - | - | 943,670,575 | - | - | - |
| 3/22/2001 | W/H TAX DIV HD | (1,530) | - | (1,530) | - | - | 943,669,045 | - | - | - |
| 3/30/2001 | W/H TAX DIV PEP | (3,508) | - | (3,508) | - | - | 943,665,537 | - | - | - |

MADC1345_00000861

Exhibit L

BLMIS ACCOUNT NO. 1FN061 - KINGATE GLOBAL FUND LTD C/O BANK OF BERMUDA LTD A/C/F KINGATE GLOBAL FUND

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Transaction Amount Reported in | | | | | | Preference Period | Two Year | Six Year |
| | Transaction | Reported in | Cash | Cash | Transfers of | Transfers of | Balance of | Initial | Initial | Initial |
| Date | Description | Customer Statement | Deposits | Withdrawals | Principal In | Principal Out | Principal | Transfers | Transfers | Transfers |
| 4/2/2001 | W/H TAX DIV KO | (7,359) | - | (7,359) | - | - | 943,658,178 | - | - | - |
| 4/2/2001 | W/H TAX DIV MRK | (12,555) | - | (12,555) | - | - | 943,645,623 | - | - | - |
| 4/9/2001 | W/H TAX DIV WMT | (20,021) | - | (20,021) | - | - | 943,625,602 | - | - | - |
| 4/11/2001 | W/H TAX DIV HWP | (10,494) | - | (10,494) | - | - | 943,615,108 | - | - | - |
| 4/24/2001 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (23) | - | (23) | - | - | 943,615,085 | - | - | - |
| 4/27/2001 | FIDELITY SPARTAN MWD | (16,386) | - | (16,386) | - | - | 943,598,699 | - | - | - |
| 4/30/2001 | W/H TAX DIV JPM | (41,205) | - | (41,205) | - | - | 943,557,493 | - | - | - |
| 5/1/2001 | W/H TAX DIV BMY | (34,339) | - | (34,339) | - | - | 943,523,155 | - | - | - |
| 5/1/2001 | W/H TAX DIV VZ | (67,304) | - | (67,304) | - | - | 943,455,851 | - | - | - |
| 5/1/2001 | W/H TAX DIV T | (9,089) | - | (9,089) | - | - | 943,446,762 | - | - | - |
| 5/1/2001 | W/H TAX DIV PHA | (10,031) | - | (10,031) | - | - | 943,436,731 | - | - | - |
| 5/2/2001 | W/H TAX DIV TYC | (1,436) | - | (1,436) | - | - | 943,435,295 | - | - | - |
| 5/10/2001 | W/H TAX DIV AXP | (6,793) | - | (6,793) | - | - | 943,428,502 | - | - | - |
| 5/15/2001 | W/H TAX DIV PG | (29,257) | - | (29,257) | - | - | 943,399,245 | - | - | - |
| 6/20/2001 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (20) | - | (20) | - | - | 943,399,225 | - | - | - |
| 7/9/2001 | W/H TAX DIV WMT | (16,647) | - | (16,647) | - | - | 943,382,578 | - | - | - |
| 7/11/2001 | W/H TAX DIV HWP | (3,612) | - | (3,612) | - | - | 943,378,966 | - | - | - |
| 7/11/2001 | W/H TAX DIV XOM | (1,618) | - | (1,618) | - | - | 943,377,348 | - | - | - |
| 7/23/2001 | W/H TAX DIV MWD | (23,101) | - | (23,101) | - | - | 943,354,247 | - | - | - |
| 7/25/2001 | W/H TAX DIV GE | (140,021) | - | (140,021) | - | - | 943,214,225 | - | - | - |
| 7/25/2001 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (21) | - | (21) | - | - | 943,214,205 | - | - | - |
| 7/31/2001 | W/H TAX DIV JPM | (59,963) | - | (59,963) | - | - | 943,154,242 | - | - | - |
| 8/1/2001 | W/H TAX DIV PHA | (15,648) | - | (15,648) | - | - | 943,138,594 | - | - | - |
| 8/1/2001 | W/H TAX DIV BMY | (46,063) | - | (46,063) | - | - | 943,092,531 | - | - | - |
| 8/1/2001 | W/H TAX DIV VZ | (91,358) | - | (91,358) | - | - | 943,001,173 | - | - | - |
| 8/1/2001 | W/H TAX DIV TYC | (2,064) | - | (2,064) | - | - | 942,999,109 | - | - | - |
| 8/10/2001 | W/H TAX DIV AXP | (9,492) | - | (9,492) | - | - | 942,989,617 | - | - | - |
| 8/15/2001 | W/H TAX DIV PG | (19,884) | - | (19,884) | - | - | 942,969,733 | - | - | - |
| 8/24/2001 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (4) | - | (4) | - | - | 942,969,728 | - | - | - |
| 9/13/2001 | W/H TAX DIV HD | (8,762) | - | (8,762) | - | - | 942,960,967 | - | - | - |
| 9/28/2001 | W/H TAX DIV PEP | (24,181) | - | (24,181) | - | - | 942,936,786 | - | - | - |
| 9/28/2001 | W/H TAX DIV BAC | (83,600) | - | (83,600) | - | - | 942,853,186 | - | - | - |
| 10/1/2001 | W/H TAX DIV KO | (41,651) | - | (41,651) | - | - | 942,811,535 | - | - | - |
| 10/1/2001 | W/H TAX DIV MRK | (75,763) | - | (75,763) | - | - | 942,735,772 | - | - | - |
| 10/9/2001 | W/H TAX DIV WMT | (29,441) | - | (29,441) | - | - | 942,706,332 | - | - | - |
| 10/10/2001 | W/H TAX DIV HWP | (14,742) | - | (14,742) | - | - | 942,691,590 | - | - | - |
| 10/15/2001 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (20) | - | (20) | - | - | 942,691,570 | - | - | - |
| 10/25/2001 | W/H TAX DIV GE | (150,520) | - | (150,520) | - | - | 942,541,050 | - | - | - |
| 10/26/2001 | W/H TAX DIV MWD | (24,629) | - | (24,629) | - | - | 942,516,422 | - | - | - |
| 10/31/2001 | W/H TAX DIV JPM | (63,447) | - | (63,447) | - | - | 942,452,975 | - | - | - |
| 11/1/2001 | W/H TAX DIV TYC | (2,303) | - | (2,303) | - | - | 942,450,672 | - | - | - |
| 11/1/2001 | W/H TAX DIV T | (12,229) | - | (12,229) | - | - | 942,438,443 | - | - | - |
| 11/1/2001 | W/H TAX DIV BMY | (50,607) | - | (50,607) | - | - | 942,387,836 | - | - | - |
| 11/1/2001 | W/H TAX DIV PHA | (16,123) | - | (16,123) | - | - | 942,371,713 | - | - | - |
| 11/1/2001 | W/H TAX DIV VZ | (97,708) | - | (97,708) | - | - | 942,274,005 | - | - | - |
| 11/9/2001 | W/H TAX DIV AXP | (9,965) | - | (9,965) | - | - | 942,264,041 | - | - | - |
| 11/15/2001 | W/H TAX DIV PG | (45,383) | - | (45,383) | - | - | 942,218,658 | - | - | - |
| 11/19/2001 | W/H TAX DIV TXN | (3,544) | - | (3,544) | - | - | 942,215,113 | - | - | - |
| 11/19/2001 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (5) | - | (5) | - | - | 942,215,108 | - | - | - |
| 11/21/2001 | W/H TAX DIV C | (76,061) | - | (76,061) | - | - | 942,139,047 | - | - | - |
| 12/3/2001 | W/H TAX DIV MCD | (26,310) | - | (26,310) | - | - | 942,112,737 | - | - | - |
| 12/3/2001 | W/H TAX DIV INTC | (12,895) | - | (12,895) | - | - | 942,099,843 | - | - | - |
| 12/3/2001 | W/H TAX DIV WFC | (42,089) | - | (42,089) | - | - | 942,057,754 | - | - | - |
| 12/6/2001 | W/H TAX DIV PFE | (42,998) | - | (42,998) | - | - | 942,014,756 | - | - | - |
| 12/10/2001 | W/H TAX DIV IBM | (22,990) | - | (22,990) | - | - | 941,991,766 | - | - | - |
| 12/10/2001 | W/H TAX DIV XOM | (150,590) | - | (150,590) | - | - | 941,841,176 | - | - | - |
| 12/14/2001 | W/H TAX DIV DD | (33,253) | - | (33,253) | - | - | 941,807,923 | - | - | - |
| 12/31/2001 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (14) | - | (14) | - | - | 941,807,909 | - | - | - |
| 1/7/2002 | W/H TAX DIV WMT | (5,432) | - | (5,432) | - | - | 941,802,477 | - | - | - |
| 1/10/2002 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (6) | - | (6) | - | - | 941,802,471 | - | - | - |
| 1/25/2002 | W/H TAX DIV MWD | (17,463) | - | (17,463) | - | - | 941,785,008 | - | - | - |
| 2/1/2002 | W/H TAX DIV VZ | (11,827) | - | (11,827) | - | - | 941,773,181 | - | - | - |
| 2/1/2002 | W/H TAX DIV PHA | (71,057) | - | (71,057) | - | - | 941,702,124 | - | - | - |
| 2/1/2002 | W/H TAX DIV SBC | (58,820) | - | (58,820) | - | - | 941,643,304 | - | - | - |
| 2/11/2002 | W/H TAX DIV TXN | (3,362) | - | (3,362) | - | - | 941,639,943 | - | - | - |

MADC1345_00000862

BLMIS ACCOUNT NO. 1FN061 - KINGATE GLOBAL FUND LTD C/O BANK OF BERMUDA LTD A/C/F KINGATE GLOBAL FUND

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Transaction Amount | | | | | | Preference Period | Two Year | Six Year |
| | Transaction | Reported in | Cash | Cash | Transfers of | Transfers of | Balance of | Initial | Initial | Initial |
| Date | Description | Customer Statement | Deposits | Withdrawals | Principal In | Principal Out | Principal | Transfers | Transfers | Transfers |
| 2/15/2002 | W/H TAX DIV PG | (44,587) | - | (44,587) | - | - | 941,595,356 | - | - | - |
| 2/21/2002 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (18) | - | (18) | - | - | 941,595,338 | - | - | - |
| 2/22/2002 | W/H TAX DIV C | (74,348) | - | (74,348) | - | - | 941,520,991 | - | - | - |
| 3/1/2002 | W/H TAX DIV INTC | (12,544) | - | (12,544) | - | - | 941,508,446 | - | - | - |
| 3/1/2002 | W/H TAX DIV WFC | (40,675) | - | (40,675) | - | - | 941,467,771 | - | - | - |
| 3/6/2002 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 941,467,770 | - | - | - |
| 3/7/2002 | W/H TAX DIV PFE | (74,564) | - | (74,564) | - | - | 941,393,206 | - | - | - |
| 3/11/2002 | W/H TAX DIV IBM | (21,902) | - | (21,902) | - | - | 941,371,304 | - | - | - |
| 3/11/2002 | W/H TAX DIV XOM | (143,577) | - | (143,577) | - | - | 941,227,727 | - | - | - |
| 3/11/2002 | W/H TAX DIV BUD | (16,033) | - | (16,033) | - | - | 941,211,694 | - | - | - |
| 3/12/2002 | W/H TAX DIV JNJ | (31,229) | - | (31,229) | - | - | 941,180,465 | - | - | - |
| 3/14/2002 | W/H TAX DIV DD | (32,853) | - | (32,853) | - | - | 941,147,611 | - | - | - |
| 3/15/2002 | W/H TAX DIV AIG | (4,553) | - | (4,553) | - | - | 941,143,058 | - | - | - |
| 3/22/2002 | W/H TAX DIV BAC | (39,749) | - | (39,749) | - | - | 941,103,309 | - | - | - |
| 3/28/2002 | W/H TAX DIV HD | (11,143) | - | (11,143) | - | - | 941,092,166 | - | - | - |
| 4/1/2002 | W/H TAX DIV ONE | (13,040) | - | (13,040) | - | - | 941,079,126 | - | - | - |
| 4/1/2002 | W/H TAX DIV KO | (48,381) | - | (48,381) | - | - | 941,030,746 | - | - | - |
| 4/1/2002 | W/H TAX DIV MRK | (77,562) | - | (77,562) | - | - | 940,953,183 | - | - | - |
| 4/1/2002 | W/H TAX DIV PEP | (24,190) | - | (24,190) | - | - | 940,928,993 | - | - | - |
| 4/10/2002 | W/H TAX DIV MO | (120,952) | - | (120,952) | - | - | 940,808,041 | - | - | - |
| 4/18/2002 | W/H TAX DIV WMT | (32,354) | - | (32,354) | - | - | 940,775,687 | - | - | - |
| 4/23/2002 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (11) | - | (11) | - | - | 940,775,676 | - | - | - |
| 4/25/2002 | W/H TAX DIV GE | (75,667) | - | (75,667) | - | - | 940,700,009 | - | - | - |
| 4/26/2002 | W/H TAX DIV MWD | (24,387) | - | (24,387) | - | - | 940,675,622 | - | - | - |
| 4/26/2002 | W/H TAX DIV MDT | (6,715) | - | (6,715) | - | - | 940,668,907 | - | - | - |
| 4/30/2002 | W/H TAX DIV JPM | (65,231) | - | (65,231) | - | - | 940,603,677 | - | - | - |
| 5/1/2002 | W/H TAX DIV VZ | (101,855) | - | (101,855) | - | - | 940,501,821 | - | - | - |
| 5/1/2002 | W/H TAX DIV SBC | (88,162) | - | (88,162) | - | - | 940,413,660 | - | - | - |
| 5/1/2002 | W/H TAX DIV T | (12,825) | - | (12,825) | - | - | 940,400,835 | - | - | - |
| 5/1/2002 | W/H TAX DIV TYC | (2,443) | - | (2,443) | - | - | 940,398,392 | - | - | - |
| 5/1/2002 | W/H TAX DIV BMY | (52,718) | - | (52,718) | - | - | 940,345,674 | - | - | - |
| 5/1/2002 | W/H TAX DIV PHA | (16,892) | - | (16,892) | - | - | 940,328,782 | - | - | - |
| 5/10/2002 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (5) | - | (5) | - | - | 940,328,778 | - | - | - |
| 5/15/2002 | W/H TAX DIV PG | (25,106) | - | (25,106) | - | - | 940,303,671 | - | - | - |
| 5/24/2002 | W/H TAX DIV C | (49,647) | - | (49,647) | - | - | 940,254,024 | - | - | - |
| 6/3/2002 | W/H TAX DIV INTC | (7,042) | - | (7,042) | - | - | 940,246,982 | - | - | - |
| 6/3/2002 | W/H TAX DIV WFC | (51,300) | - | (51,300) | - | - | 940,195,682 | - | - | - |
| 6/6/2002 | W/H TAX DIV PFE | (89,331) | - | (89,331) | - | - | 940,106,350 | - | - | - |
| 6/10/2002 | W/H TAX DIV IBM | (28,542) | - | (28,542) | - | - | 940,077,808 | - | - | - |
| 6/10/2002 | W/H TAX DIV BUD | (12,594) | - | (12,594) | - | - | 940,065,214 | - | - | - |
| 6/10/2002 | W/H TAX DIV XOM | (170,666) | - | (170,666) | - | - | 939,894,549 | - | - | - |
| 6/11/2002 | W/H TAX DIV JNJ | (24,505) | - | (24,505) | - | - | 939,870,044 | - | - | - |
| 6/12/2002 | W/H TAX DIV DD | (28,441) | - | (28,441) | - | - | 939,841,603 | - | - | - |
| 6/25/2002 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (6) | - | (6) | - | - | 939,841,597 | - | - | - |
| 7/10/2002 | W/H TAX DIV MO | (20,680) | - | (20,680) | - | - | 939,820,918 | - | - | - |
| 7/15/2002 | W/H TAX DIV USB | (6,663) | - | (6,663) | - | - | 939,814,255 | - | - | - |
| 7/19/2002 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 939,814,253 | - | - | - |
| 7/25/2002 | W/H TAX DIV GE | (31,822) | - | (31,822) | - | - | 939,782,431 | - | - | - |
| 7/26/2002 | W/H TAX DIV MDT | (1,300) | - | (1,300) | - | - | 939,781,131 | - | - | - |
| 7/26/2002 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 939,781,131 | - | - | - |
| 7/26/2002 | W/H TAX DIV MWD | (4,442) | - | (4,442) | - | - | 939,776,689 | - | - | - |
| 7/31/2002 | W/H TAX DIV JPM | (12,123) | - | (12,123) | - | - | 939,764,567 | - | - | - |
| 8/1/2002 | W/H TAX DIV SBC | (15,643) | - | (15,643) | - | - | 939,748,923 | - | - | - |
| 8/1/2002 | W/H TAX DIV T | (2,507) | - | (2,507) | - | - | 939,746,416 | - | - | - |
| 8/1/2002 | W/H TAX DIV PHA | (3,008) | - | (3,008) | - | - | 939,743,408 | - | - | - |
| 8/1/2002 | W/H TAX DIV BMY | (9,567) | - | (9,567) | - | - | 939,733,841 | - | - | - |
| 8/1/2002 | W/H TAX DIV VZ | (18,303) | - | (18,303) | - | - | 939,715,538 | - | - | - |
| 8/9/2002 | W/H TAX DIV AXP | (1,783) | - | (1,783) | - | - | 939,713,755 | - | - | - |
| 8/19/2002 | W/H TAX DIV TXN | (5,066) | - | (5,066) | - | - | 939,708,689 | - | - | - |
| 8/19/2002 | W/H TAX DIV MON | (3) | - | (3) | - | - | 939,708,686 | - | - | - |
| 8/23/2002 | W/H TAX DIV C | (132,031) | - | (132,031) | - | - | 939,576,655 | - | - | - |
| 8/26/2002 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (10) | - | (10) | - | - | 939,576,645 | - | - | - |
| 9/3/2002 | W/H TAX DIV INTC | (18,570) | - | (18,570) | - | - | 939,558,076 | - | - | - |
| 9/3/2002 | W/H TAX DIV WFC | (66,753) | - | (66,753) | - | - | 939,491,323 | - | - | - |
| 9/5/2002 | W/H TAX DIV G | (23,244) | - | (23,244) | - | - | 939,468,078 | - | - | - |

MADC1345_00000863

BLMIS ACCOUNT NO. 1FN061 - KINGATE GLOBAL FUND LTD C/O ... BERMUDA LTD A/C/F KINGATE GLOBAL FUND

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 Preference Period Initial Transfers | Column 10 Two Year Initial Transfers | Column 11 Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 9/5/2002 | W/H TAX DIV PFE | (113,699) | - | (113,699) | - | - | 939,354,379 | - | - | - |
| 9/6/2002 | W/H TAX DIV BA | (19,526) | - | (19,526) | - | - | 939,334,854 | - | - | - |
| 9/9/2002 | W/H TAX DIV BUD | (23,244) | - | (23,244) | - | - | 939,311,609 | - | - | - |
| 9/10/2002 | W/H TAX DIV XOM | (214,848) | - | (214,848) | - | - | 939,096,762 | - | - | - |
| 9/10/2002 | W/H TAX DIV JNJ | (27,751) | - | (27,751) | - | - | 939,069,011 | - | - | - |
| 9/10/2002 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (6) | - | (6) | - | - | 939,069,005 | - | - | - |
| 9/10/2002 | W/H TAX DIV IBM | (35,109) | - | (35,109) | - | - | 939,033,896 | - | - | - |
| 9/12/2002 | W/H TAX DIV JNJ | (47,444) | - | (47,444) | - | - | 938,986,453 | - | - | - |
| 10/17/2002 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (22) | - | (22) | - | - | 938,986,430 | - | - | - |
| 11/15/2002 | W/H TAX DIV CL | (7,909) | - | (7,909) | - | - | 938,978,521 | - | - | - |
| 11/15/2002 | W/H TAX DIV PG | (27,438) | - | (27,438) | - | - | 938,951,083 | - | - | - |
| 11/18/2002 | W/H TAX DIV TXN | (2,807) | - | (2,807) | - | - | 938,948,276 | - | - | - |
| 11/22/2002 | W/H TAX DIV C | (69,969) | - | (69,969) | - | - | 938,878,307 | - | - | - |
| 11/25/2002 | W/H TAX DIV GS | (4,394) | - | (4,394) | - | - | 938,873,913 | - | - | - |
| 11/25/2002 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (8) | - | (8) | - | - | 938,873,905 | - | - | - |
| 11/27/2002 | W/H TAX DIV DD | (10,952) | - | (10,952) | - | - | 938,862,953 | - | - | - |
| 1/6/2003 | W/H TAX DIV DD | (19,458) | - | (19,458) | - | - | 938,843,495 | - | - | (19,458) |
| 1/6/2003 | W/H TAX DIV BUD | (13,291) | - | (13,291) | - | - | 938,830,204 | - | - | (13,291) |
| 1/6/2003 | W/H TAX DIV BA | (7,955) | - | (7,955) | - | - | 938,822,249 | - | - | (7,955) |
| 1/6/2003 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 938,822,247 | - | - | (1) |
| 1/6/2003 | W/H TAX DIV UTX | (6,369) | - | (6,369) | - | - | 938,815,878 | - | - | (6,369) |
| 1/6/2003 | W/H TAX DIV XOM | (121,202) | - | (121,202) | - | - | 938,694,676 | - | - | (121,202) |
| 1/6/2003 | W/H TAX DIV IBM | (19,816) | - | (19,816) | - | - | 938,674,860 | - | - | (19,816) |
| 1/6/2003 | W/H TAX DIV HCA | (879) | - | (879) | - | - | 938,673,982 | - | - | (879) |
| 1/6/2003 | W/H TAX DIV G | (13,456) | - | (13,456) | - | - | 938,660,526 | - | - | (13,456) |
| 1/6/2003 | W/H TAX DIV PFE | (44,612) | - | (44,612) | - | - | 938,615,914 | - | - | (44,612) |
| 1/6/2003 | W/H TAX DIV WFC | (37,538) | - | (37,538) | - | - | 938,578,376 | - | - | (37,538) |
| 1/6/2003 | W/H TAX DIV JNJ | (12,832) | - | (12,832) | - | - | 938,565,544 | - | - | (12,832) |
| 1/6/2003 | W/H TAX DIV INTC | (10,455) | - | (10,455) | - | - | 938,555,089 | - | - | (10,455) |
| 1/10/2003 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 938,555,087 | - | - | (2) |
| 1/31/2003 | W/H TAX DIV MWD | (17,029) | - | (17,029) | - | - | 938,538,058 | - | - | (17,029) |
| 2/3/2003 | W/H TAX DIV PHA | (21,283) | - | (21,283) | - | - | 938,516,774 | - | - | (21,283) |
| 2/3/2003 | W/H TAX DIV VZ | (72,453) | - | (72,453) | - | - | 938,444,321 | - | - | (72,453) |
| 2/3/2003 | W/H TAX DIV SBC | (61,643) | - | (61,643) | - | - | 938,382,678 | - | - | (61,643) |
| 2/10/2003 | W/H TAX DIV TXN | (4,481) | - | (4,481) | - | - | 938,378,197 | - | - | (4,481) |
| 2/14/2003 | W/H TAX DIV CL | (12,162) | - | (12,162) | - | - | 938,366,035 | - | - | (12,162) |
| 2/14/2003 | W/H TAX DIV PG | (64,639) | - | (64,639) | - | - | 938,301,396 | - | - | (64,639) |
| 2/14/2003 | W/H TAX DIV PFE | (113,064) | - | (113,064) | - | - | 938,188,332 | - | - | (113,064) |
| 2/27/2003 | W/H TAX DIV GS | (6,757) | - | (6,757) | - | - | 938,181,575 | - | - | (6,757) |
| 2/28/2003 | W/H TAX DIV C | (126,744) | - | (126,744) | - | - | 938,054,832 | - | - | (126,744) |
| 2/28/2003 | W/H TAX DIV MER | (16,711) | - | (16,711) | - | - | 938,038,120 | - | - | (16,711) |
| 3/3/2003 | W/H TAX DIV WFC | (62,449) | - | (62,449) | - | - | 937,975,672 | - | - | (62,449) |
| 3/3/2003 | W/H TAX DIV INTC | (16,318) | - | (16,318) | - | - | 937,959,354 | - | - | (16,318) |
| 3/5/2003 | W/H 1/31/03G | (21,017) | - | (21,017) | - | - | 937,938,337 | - | - | (21,017) |
| 3/7/2003 | W/H TAX DIV MSFT | (82,191) | - | (82,191) | - | - | 937,856,146 | - | - | (82,191) |
| 3/7/2003 | W/H TAX DIV BA | (17,229) | - | (17,229) | - | - | 937,838,916 | - | - | (17,229) |
| 3/10/2003 | W/H TAX DIV XOM | (189,623) | - | (189,623) | - | - | 937,649,293 | - | - | (189,623) |
| 3/10/2003 | W/H TAX DIV UTX | (13,795) | - | (13,795) | - | - | 937,635,498 | - | - | (13,795) |
| 3/10/2003 | W/H TAX DIV BUD | (19,763) | - | (19,763) | - | - | 937,615,735 | - | - | (19,763) |
| 3/10/2003 | W/H TAX DIV IBM | (30,866) | - | (30,866) | - | - | 937,584,869 | - | - | (30,866) |
| 3/11/2003 | W/H TAX DIV JNJ | (74,358) | - | (74,358) | - | - | 937,510,511 | - | - | (74,358) |
| 3/12/2003 | W/H TAX DIV MMM | (23,189) | - | (23,189) | - | - | 937,487,322 | - | - | (23,189) |
| 3/14/2003 | W/H TAX DIV DD | (43,355) | - | (43,355) | - | - | 937,443,967 | - | - | (43,355) |
| 3/17/2003 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (61) | - | (61) | - | - | 937,443,906 | - | - | (61) |
| 4/7/2003 | W/H TAX DIV WMT | (54,596) | - | (54,596) | - | - | 937,389,310 | - | - | (54,596) |
| 4/9/2003 | W/H TAX DIV HPQ | (34,427) | - | (34,427) | - | - | 937,354,882 | - | - | (34,427) |
| 4/15/2003 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (23) | - | (23) | - | - | 937,354,860 | - | - | (23) |
| 5/9/2003 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (18) | - | (18) | - | - | 937,354,842 | - | - | (18) |
| 5/19/2003 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (5) | - | (5) | - | - | 937,354,836 | - | - | (5) |
| 5/28/2003 | W/H TAX DIV MER | (13,449) | - | (13,449) | - | - | 937,341,388 | - | - | (13,449) |
| 5/30/2003 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 937,341,387 | - | - | (1) |
| 6/2/2003 | W/H TAX DIV INTC | (7,278) | - | (7,278) | - | - | 937,334,109 | - | - | (7,278) |
| 6/5/2003 | W/H TAX DIV WFC | (50,432) | - | (50,432) | - | - | 937,283,677 | - | - | (50,432) |
| 6/5/2003 | W/H TAX DIV PFE | (120,748) | - | (120,748) | - | - | 937,162,929 | - | - | (120,748) |
| 6/9/2003 | W/H TAX DIV BUD | (16,390) | - | (16,390) | - | - | 937,146,539 | - | - | (16,390) |

MADC1345_00000864

Exhibit L

BLMIS ACCOUNT NO. 1FN061 - KINGATE GLOBAL FUND LTD C/O BANK OF BERMUDA LTD A/C/F KINGATE GLOBAL FUND

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Transaction Amount Reported in | | | | | | Preference Period | Two Year | Six Year |
| | Transaction | Reported in Customer Statement | Cash | Cash | Transfers of | Transfers of | Balance of | Initial | Initial | Initial |
| Date | Description | Customer Statement | Deposits | Withdrawals | Principal In | Principal Out | Principal | Transfers | Transfers | Transfers |
| 6/10/2003 | W/H TAX DIV IBM | (26,897) | - | (26,897) | - | - | 937,119,642 | - | - | (26,897) |
| 6/10/2003 | W/H TAX DIV XOM | (169,179) | - | (169,179) | - | - | 936,950,463 | - | - | (169,179) |
| 6/10/2003 | W/H TAX DIV UTX | (12,608) | - | (12,608) | - | - | 936,937,855 | - | - | (12,608) |
| 6/10/2003 | W/H TAX DIV JNJ | (71,726) | - | (71,726) | - | - | 936,866,129 | - | - | (71,726) |
| 6/12/2003 | W/H TAX DIV MMM | (24,656) | - | (24,656) | - | - | 936,841,473 | - | - | (24,656) |
| 6/12/2003 | W/H TAX DIV DD | (35,956) | - | (35,956) | - | - | 936,805,517 | - | - | (35,956) |
| 6/20/2003 | W/H TAX DIV AIG | (15,130) | - | (15,130) | - | - | 936,790,387 | - | - | (15,130) |
| 6/25/2003 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (9) | - | (9) | - | - | 936,790,378 | - | - | (9) |
| 6/26/2003 | W/H TAX DIV HD | (17,283) | - | (17,283) | - | - | 936,773,095 | - | - | (17,283) |
| 6/27/2003 | W/H TAX DIV BAC | (118,085) | - | (118,085) | - | - | 936,655,011 | - | - | (118,085) |
| 6/30/2003 | W/H TAX DIV PEP | (34,152) | - | (34,152) | - | - | 936,620,859 | - | - | (34,152) |
| 7/1/2003 | W/H TAX DIV KO | (67,909) | - | (67,909) | - | - | 936,552,950 | - | - | (67,909) |
| 7/1/2003 | W/H TAX DIV MRK | (98,932) | - | (98,932) | - | - | 936,454,018 | - | - | (98,932) |
| 7/1/2003 | W/H TAX DIV ONE | (30,601) | - | (30,601) | - | - | 936,423,416 | - | - | (30,601) |
| 7/1/2003 | W/H TAX DIV ALL | (17,184) | - | (17,184) | - | - | 936,406,232 | - | - | (17,184) |
| 7/3/2003 | W/H TAX DIV SLB | (10,507) | - | (10,507) | - | - | 936,395,725 | - | - | (10,507) |
| 7/7/2003 | W/H TAX DIV WMT | (22,898) | - | (22,898) | - | - | 936,372,827 | - | - | (22,898) |
| 7/8/2003 | W/H TAX DIV MO | (163,833) | - | (163,833) | - | - | 936,208,994 | - | - | (163,833) |
| 7/9/2003 | W/H TAX DIV HPQ | (30,268) | - | (30,268) | - | - | 936,178,726 | - | - | (30,268) |
| 7/10/2003 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | 936,178,723 | - | - | (3) |
| 7/21/2003 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | 936,178,719 | - | - | (3) |
| 7/31/2003 | W/H TAX DIV MWD | (29,141) | - | (29,141) | - | - | 936,149,578 | - | - | (29,141) |
| 8/1/2003 | W/H TAX DIV SBC | (145,391) | - | (145,391) | - | - | 936,004,187 | - | - | (145,391) |
| 8/1/2003 | W/H TAX DIV VZ | (121,951) | - | (121,951) | - | - | 935,882,236 | - | - | (121,951) |
| 8/15/2003 | W/H TAX DIV PG | (67,258) | - | (67,258) | - | - | 935,814,979 | - | - | (67,258) |
| 8/15/2003 | W/H TAX DIV CL | (15,204) | - | (15,204) | - | - | 935,799,774 | - | - | (15,204) |
| 8/18/2003 | W/H TAX DIV TXN | (4,197) | - | (4,197) | - | - | 935,795,577 | - | - | (4,197) |
| 8/22/2003 | W/H TAX DIV C | (208,162) | - | (208,162) | - | - | 935,587,415 | - | - | (208,162) |
| 8/27/2003 | W/H TAX DIV MER | (16,894) | - | (16,894) | - | - | 935,570,521 | - | - | (16,894) |
| 8/28/2003 | W/H TAX DIV GS | (13,198) | - | (13,198) | - | - | 935,557,323 | - | - | (13,198) |
| 9/2/2003 | W/H TAX DIV WFC | (85,524) | - | (85,524) | - | - | 935,471,800 | - | - | (85,524) |
| 9/2/2003 | W/H TAX DIV INTC | (15,052) | - | (15,052) | - | - | 935,456,748 | - | - | (15,052) |
| 9/4/2003 | W/H TAX DIV PFE | (83,921) | - | (83,921) | - | - | 935,372,827 | - | - | (83,921) |
| 9/5/2003 | W/H TAX DIV G | (18,873) | - | (18,873) | - | - | 935,353,954 | - | - | (18,873) |
| 9/5/2003 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (12) | - | (12) | - | - | 935,353,941 | - | - | (12) |
| 9/5/2003 | W/H TAX DIV BA | (10,016) | - | (10,016) | - | - | 935,343,925 | - | - | (10,016) |
| 9/9/2003 | W/H TAX DIV BUD | (20,906) | - | (20,906) | - | - | 935,323,019 | - | - | (20,906) |
| 9/10/2003 | W/H TAX DIV XOM | (192,052) | - | (192,052) | - | - | 935,130,967 | - | - | (192,052) |
| 9/10/2003 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 935,130,967 | - | - | (0) |
| 9/10/2003 | W/H TAX DIV IBM | (32,098) | - | (32,098) | - | - | 935,098,869 | - | - | (32,098) |
| 9/12/2003 | W/H TAX DIV DD | (25,203) | - | (25,203) | - | - | 935,073,666 | - | - | (25,203) |
| 9/19/2003 | W/H TAX DIV AIG | (6,579) | - | (6,579) | - | - | 935,067,087 | - | - | (6,579) |
| 9/23/2003 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (31) | - | (31) | - | - | 935,067,056 | - | - | (31) |
| 9/26/2003 | W/H TAX DIV BAC | (47,467) | - | (47,467) | - | - | 935,019,589 | - | - | (47,467) |
| 9/30/2003 | W/H TAX DIV PEP | (25,697) | - | (25,697) | - | - | 934,993,893 | - | - | (25,697) |
| 10/1/2003 | W/H TAX DIV MRK | (32,284) | - | (32,284) | - | - | 934,961,608 | - | - | (32,284) |
| 10/1/2003 | W/H TAX DIV ONE | (27,472) | - | (27,472) | - | - | 934,934,137 | - | - | (27,472) |
| 10/1/2003 | W/H TAX DIV KO | (50,977) | - | (50,977) | - | - | 934,883,159 | - | - | (50,977) |
| 10/8/2003 | W/H TAX DIV VIA.B | (7,463) | - | (7,463) | - | - | 934,875,697 | - | - | (7,463) |
| 10/8/2003 | W/H TAX DIV HPQ | (22,992) | - | (22,992) | - | - | 934,852,705 | - | - | (22,992) |
| 10/9/2003 | W/H TAX DIV MO | (132,202) | - | (132,202) | - | - | 934,720,503 | - | - | (132,202) |
| 10/14/2003 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | 934,720,500 | - | - | (3) |
| 10/31/2003 | W/H TAX DIV MWD | (20,354) | - | (20,354) | - | - | 934,700,146 | - | - | (20,354) |
| 11/3/2003 | W/H TAX DIV SBC | (27,286) | - | (27,286) | - | - | 934,672,860 | - | - | (27,286) |
| 11/3/2003 | W/H TAX DIV SBC | (77,083) | - | (77,083) | - | - | 934,595,777 | - | - | (77,083) |
| 11/3/2003 | W/H TAX DIV VZ | (88,016) | - | (88,016) | - | - | 934,507,761 | - | - | (88,016) |
| 11/7/2003 | W/H TAX DIV MSFT | (211,900) | - | (211,900) | - | - | 934,295,861 | - | - | (211,900) |
| 11/14/2003 | W/H TAX DIV PG | (71,316) | - | (71,316) | - | - | 934,224,545 | - | - | (71,316) |
| 11/17/2003 | W/H TAX DIV TXN | (4,575) | - | (4,575) | - | - | 934,219,970 | - | - | (4,575) |
| 11/24/2003 | W/H TAX DIV GS | (13,679) | - | (13,679) | - | - | 934,206,291 | - | - | (13,679) |
| 11/25/2003 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (15) | - | (15) | - | - | 934,206,276 | - | - | (15) |
| 11/26/2003 | W/H TAX DIV MER | (18,688) | - | (18,688) | - | - | 934,187,588 | - | - | (18,688) |
| 11/26/2003 | W/H TAX DIV C | (220,797) | - | (220,797) | - | - | 933,966,791 | - | - | (220,797) |
| 12/1/2003 | W/H TAX DIV MCD | (61,280) | - | (61,280) | - | - | 933,905,511 | - | - | (61,280) |
| 12/1/2003 | W/H TAX DIV WFC | (93,561) | - | (93,561) | - | - | 933,811,950 | - | - | (93,561) |

MADC1345_00000865

BLMIS ACCOUNT NO. 1FN061 - KINGATE GLOBAL FUND LTD C/O BANK OF BERMUDA LTD A/C/F KINGATE GLOBAL FUND

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 Preference Period Initial Transfers | Column 10 Two Year Initial Transfers | Column 11 Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/1/2003 | W/H TAX DIV INTC | (16,283) | - | (16,283) | - | - | 933,795,668 | - | - | (16,283) |
| 12/4/2003 | W/H TAX DIV PFE | (142,228) | - | (142,228) | - | - | 933,653,439 | - | - | (142,228) |
| 12/5/2003 | W/H TAX DIV G | (19,560) | - | (19,560) | - | - | 933,633,879 | - | - | (19,560) |
| 12/9/2003 | W/H TAX DIV JNJ | (86,667) | - | (86,667) | - | - | 933,547,212 | - | - | (86,667) |
| 12/9/2003 | W/H TAX DIV BUD | (21,667) | - | (21,667) | - | - | 933,525,545 | - | - | (21,667) |
| 12/10/2003 | W/H TAX DIV UTX | (19,150) | - | (19,150) | - | - | 933,506,396 | - | - | (19,150) |
| 12/10/2003 | W/H TAX DIV XOM | (203,327) | - | (203,327) | - | - | 933,303,069 | - | - | (203,327) |
| 12/10/2003 | W/H TAX DIV IBM | (33,266) | - | (33,266) | - | - | 933,269,803 | - | - | (33,266) |
| 12/12/2003 | W/H TAX DIV MMM | (17,267) | - | (17,267) | - | - | 933,252,535 | - | - | (17,267) |
| 12/15/2003 | W/H TAX DIV DD | (42,130) | - | (42,130) | - | - | 933,210,405 | - | - | (42,130) |
| 12/31/2003 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (9) | - | (9) | - | - | 933,210,396 | - | - | (9) |
| 1/2/2004 | W/H TAX DIV ONE | (7,104) | - | (7,104) | - | - | 933,203,293 | - | - | (7,104) |
| 1/2/2004 | W/H TAX DIV PEP | (7,198) | - | (7,198) | - | - | 933,196,094 | - | - | (7,198) |
| 1/5/2004 | W/H TAX DIV WMT | (10,229) | - | (10,229) | - | - | 933,185,865 | - | - | (10,229) |
| 1/6/2004 | W/H TAX DIV DIS | (11,437) | - | (11,437) | - | - | 933,174,428 | - | - | (11,437) |
| 1/7/2004 | W/H TAX DIV HPQ | (6,441) | - | (6,441) | - | - | 933,167,987 | - | - | (6,441) |
| 1/8/2004 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 933,167,987 | - | - | (0) |
| 1/9/2004 | W/H TAX DIV MO | (37,034) | - | (37,034) | - | - | 933,130,953 | - | - | (37,034) |
| 1/15/2004 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 933,130,953 | - | - | (0) |
| 1/30/2004 | W/H TAX DIV MWD | (11,746) | - | (11,746) | - | - | 933,119,207 | - | - | (11,746) |
| 2/2/2004 | W/H TAX DIV VZ | (46,729) | - | (46,729) | - | - | 933,072,478 | - | - | (46,729) |
| 2/2/2004 | W/H TAX DIV SBC | (45,271) | - | (45,271) | - | - | 933,027,207 | - | - | (45,271) |
| 2/17/2004 | W/H TAX DIV PG | (70,835) | - | (70,835) | - | - | 932,956,372 | - | - | (70,835) |
| 2/26/2004 | W/H TAX DIV GS | (12,974) | - | (12,974) | - | - | 932,943,398 | - | - | (12,974) |
| 2/27/2004 | W/H TAX DIV MER | (18,267) | - | (18,267) | - | - | 932,925,132 | - | - | (18,267) |
| 2/27/2004 | W/H TAX DIV C | (240,788) | - | (240,788) | - | - | 932,684,343 | - | - | (240,788) |
| 3/1/2004 | W/H TAX DIV WFC | (88,739) | - | (88,739) | - | - | 932,595,605 | - | - | (88,739) |
| 3/1/2004 | W/H TAX DIV INTC | (30,177) | - | (30,177) | - | - | 932,565,428 | - | - | (30,177) |
| 3/5/2004 | W/H TAX DIV G | (18,552) | - | (18,552) | - | - | 932,546,876 | - | - | (18,552) |
| 3/5/2004 | W/H TAX DIV BA | (15,880) | - | (15,880) | - | - | 932,530,996 | - | - | (15,880) |
| 3/5/2004 | W/H TAX DIV PFE | (150,523) | - | (150,523) | - | - | 932,380,473 | - | - | (150,523) |
| 3/9/2004 | W/H TAX DIV JNJ | (82,976) | - | (82,976) | - | - | 932,297,497 | - | - | (82,976) |
| 3/9/2004 | W/H TAX DIV BUD | (20,550) | - | (20,550) | - | - | 932,276,947 | - | - | (20,550) |
| 3/10/2004 | W/H TAX DIV IBM | (31,552) | - | (31,552) | - | - | 932,245,396 | - | - | (31,552) |
| 3/10/2004 | W/H TAX DIV XOM | (192,815) | - | (192,815) | - | - | 932,052,580 | - | - | (192,815) |
| 3/10/2004 | W/H TAX DIV UTX | (11,443) | - | (11,443) | - | - | 932,041,138 | - | - | (11,443) |
| 3/12/2004 | W/H TAX DIV MMM | (21,185) | - | (21,185) | - | - | 932,019,952 | - | - | (21,185) |
| 3/15/2004 | W/H TAX DIV DD | (39,958) | - | (39,958) | - | - | 931,979,994 | - | - | (39,958) |
| 4/6/2004 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (53) | - | (53) | - | - | 931,979,941 | - | - | (53) |
| 4/8/2004 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 931,979,941 | - | - | (0) |
| 4/30/2004 | W/H TAX DIV MWD | (25,035) | - | (25,035) | - | - | 931,954,906 | - | - | (25,035) |
| 4/30/2004 | W/H TAX DIV JPM | (19,225) | - | (19,225) | - | - | 931,935,681 | - | - | (19,225) |
| 5/3/2004 | W/H TAX DIV SBC | (94,833) | - | (94,833) | - | - | 931,840,847 | - | - | (94,833) |
| 5/3/2004 | W/H TAX DIV VZ | (96,386) | - | (96,386) | - | - | 931,744,461 | - | - | (96,386) |
| 5/14/2004 | W/H TAX DIV PG | (73,721) | - | (73,721) | - | - | 931,670,741 | - | - | (73,721) |
| 5/17/2004 | W/H TAX DIV TXN | (4,299) | - | (4,299) | - | - | 931,666,442 | - | - | (4,299) |
| 5/26/2004 | W/H TAX DIV MER | (18,535) | - | (18,535) | - | - | 931,647,907 | - | - | (18,535) |
| 5/27/2004 | W/H TAX DIV GS | (13,164) | - | (13,164) | - | - | 931,634,743 | - | - | (13,164) |
| 5/28/2004 | W/H TAX DIV C | (240,118) | - | (240,118) | - | - | 931,394,624 | - | - | (240,118) |
| 6/1/2004 | W/H TAX DIV WFC | (90,044) | - | (90,044) | - | - | 931,304,580 | - | - | (90,044) |
| 6/1/2004 | W/H TAX DIV INTC | (29,997) | - | (29,997) | - | - | 931,274,583 | - | - | (29,997) |
| 6/4/2004 | W/H TAX DIV PFE | (149,972) | - | (149,972) | - | - | 931,124,611 | - | - | (149,972) |
| 6/4/2004 | W/H TAX DIV G | (18,825) | - | (18,825) | - | - | 931,105,786 | - | - | (18,825) |
| 6/7/2004 | W/H TAX DIV WMT | (44,219) | - | (44,219) | - | - | 931,061,568 | - | - | (44,219) |
| 6/7/2004 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (18) | - | (18) | - | - | 931,061,550 | - | - | (18) |
| 6/8/2004 | W/H TAX DIV JNJ | (98,348) | - | (98,348) | - | - | 930,963,202 | - | - | (98,348) |
| 6/9/2004 | W/H TAX DIV BUD | (20,852) | - | (20,852) | - | - | 930,942,349 | - | - | (20,852) |
| 6/10/2004 | W/H TAX DIV UTX | (15,039) | - | (15,039) | - | - | 930,927,310 | - | - | (15,039) |
| 6/10/2004 | W/H TAX DIV XOM | (204,732) | - | (204,732) | - | - | 930,722,578 | - | - | (204,732) |
| 6/10/2004 | W/H TAX DIV IBM | (36,018) | - | (36,018) | - | - | 930,686,560 | - | - | (36,018) |
| 6/11/2004 | W/H TAX DIV BA | (12,891) | - | (12,891) | - | - | 930,673,669 | - | - | (12,891) |
| 6/14/2004 | W/H TAX DIV MMM | (23,203) | - | (23,203) | - | - | 930,650,466 | - | - | (23,203) |
| 6/14/2004 | W/H TAX DIV DD | (40,546) | - | (40,546) | - | - | 930,609,920 | - | - | (40,546) |
| 6/18/2004 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 930,609,919 | - | - | (1) |
| 6/24/2004 | W/H TAX DIV HD | (23,024) | - | (23,024) | - | - | 930,586,895 | - | - | (23,024) |

MADC1345_00000866

BLMIS ACCOUNT NO. 1FN061 - KINGATE GLOBAL FUND LTD C/O BANK OF BERMUDA LTD A/C/F KINGATE GLOBAL FUND

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Transaction Amount Reported in Customer Statement | | | | | | Preference Period | Two Year | Six Year |
| Date | Transaction Description | | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | Initial Transfers | Initial Transfers | Initial Transfers |
| 6/30/2004 | W/H TAX DIV PEP | (47,348) | - | (47,348) | - | - | 930,539,547 | - | - | (47,348) |
| 7/1/2004 | W/H TAX DIV KO | (73,135) | - | (73,135) | - | - | 930,466,412 | - | - | (73,135) |
| 7/7/2004 | W/H TAX DIV HPQ | (29,471) | - | (29,471) | - | - | 930,436,941 | - | - | (29,471) |
| 7/9/2004 | W/H TAX DIV MO | (166,879) | - | (166,879) | - | - | 930,270,063 | - | - | (166,879) |
| 7/26/2004 | W/H TAX DIV GE | (27,051) | - | (27,051) | - | - | 930,243,011 | - | - | (27,051) |
| 8/18/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (78) | - | (78) | - | - | 930,242,933 | - | - | (78) |
| 8/23/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 930,242,932 | - | - | (1) |
| 9/7/2004 | W/H TAX DIV WMT | (52,672) | - | (52,672) | - | - | 930,190,259 | - | - | (52,672) |
| 9/10/2004 | W/H TAX DIV UTX | (17,726) | - | (17,726) | - | - | 930,172,533 | - | - | (17,726) |
| 9/13/2004 | W/H TAX DIV MMM | (27,349) | - | (27,349) | - | - | 930,145,184 | - | - | (27,349) |
| 9/14/2004 | W/H TAX DIV MSFT | (110,474) | - | (110,474) | - | - | 930,034,709 | - | - | (110,474) |
| 9/16/2004 | W/H TAX DIV HD | (24,567) | - | (24,567) | - | - | 930,010,143 | - | - | (24,567) |
| 9/17/2004 | W/H TAX DIV AIG | (25,145) | - | (25,145) | - | - | 929,984,998 | - | - | (25,145) |
| 9/24/2004 | W/H TAX DIV BAC | (239,309) | - | (239,309) | - | - | 929,745,689 | - | - | (239,309) |
| 9/30/2004 | W/H TAX DIV PEP | (50,521) | - | (50,521) | - | - | 929,695,169 | - | - | (50,521) |
| 10/1/2004 | W/H TAX DIV VIA.B | (13,561) | - | (13,561) | - | - | 929,681,607 | - | - | (13,561) |
| 10/1/2004 | W/H TAX DIV KO | (78,035) | - | (78,035) | - | - | 929,603,572 | - | - | (78,035) |
| 10/1/2004 | W/H TAX DIV MRK | (109,828) | - | (109,828) | - | - | 929,493,744 | - | - | (109,828) |
| 10/6/2004 | W/H TAX DIV HPQ | (31,445) | - | (31,445) | - | - | 929,462,299 | - | - | (31,445) |
| 10/12/2004 | W/H TAX DIV MO | (194,106) | - | (194,106) | - | - | 929,268,193 | - | - | (194,106) |
| 11/3/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (71) | - | (71) | - | - | 929,268,122 | - | - | (71) |
| 11/4/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 929,268,122 | - | - | (0) |
| 11/9/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 929,268,122 | - | - | (0) |
| 11/24/2004 | W/H TAX DIV MER | (9,891) | - | (9,891) | - | - | 929,258,231 | - | - | (9,891) |
| 12/1/2004 | W/H TAX DIV INTC | (16,281) | - | (16,281) | - | - | 929,241,949 | - | - | (16,281) |
| 12/1/2004 | W/H TAX DIV WFC | (51,253) | - | (51,253) | - | - | 929,190,696 | - | - | (51,253) |
| 12/3/2004 | W/H TAX DIV PFE | (131,276) | - | (131,276) | - | - | 929,059,419 | - | - | (131,276) |
| 12/3/2004 | W/H TAX DIV BA | (16,458) | - | (16,458) | - | - | 929,042,962 | - | - | (16,458) |
| 12/7/2004 | W/H TAX DIV JNJ | (33,110) | - | (33,110) | - | - | 929,009,852 | - | - | (33,110) |
| 12/10/2004 | W/H TAX DIV IBM | (31,269) | - | (31,269) | - | - | 928,978,582 | - | - | (31,269) |
| 12/10/2004 | W/H TAX DIV XOM | (180,211) | - | (180,211) | - | - | 928,798,372 | - | - | (180,211) |
| 12/13/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (85) | - | (85) | - | - | 928,798,287 | - | - | (85) |
| 12/14/2004 | W/H TAX DIV DD | (35,201) | - | (35,201) | - | - | 928,763,086 | - | - | (35,201) |
| 12/16/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 928,763,083 | - | - | (2) |
| 12/31/2004 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (15) | - | (15) | - | - | 928,763,068 | - | - | (15) |
| 1/3/2005 | W/H TAX DIV WMT | (17,679) | - | (17,679) | - | - | 928,745,389 | - | - | (17,679) |
| 2/14/2005 | W/H TAX DIV TXN | (5,380) | - | (5,380) | - | - | 928,740,009 | - | - | (5,380) |
| 2/24/2005 | W/H TAX DIV GS | (2,242) | - | (2,242) | - | - | 928,737,767 | - | - | (2,242) |
| 2/25/2005 | W/H TAX DIV C | (284,046) | - | (284,046) | - | - | 928,453,721 | - | - | (284,046) |
| 2/28/2005 | W/H TAX DIV MER | (18,121) | - | (18,121) | - | - | 928,435,600 | - | - | (18,121) |
| 3/1/2005 | W/H TAX DIV WFC | (103,289) | - | (103,289) | - | - | 928,332,311 | - | - | (103,289) |
| 3/1/2005 | W/H TAX DIV INTC | (63,196) | - | (63,196) | - | - | 928,269,115 | - | - | (63,196) |
| 3/4/2005 | W/H TAX DIV G | (20,245) | - | (20,245) | - | - | 928,248,870 | - | - | (20,245) |
| 3/4/2005 | W/H TAX DIV BA | (25,483) | - | (25,483) | - | - | 928,223,388 | - | - | (25,483) |
| 3/7/2005 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (60) | - | (60) | - | - | 928,223,328 | - | - | (60) |
| 3/8/2005 | W/H TAX DIV JNJ | (105,707) | - | (105,707) | - | - | 928,117,621 | - | - | (105,707) |
| 3/8/2005 | W/H TAX DIV PFE | (178,605) | - | (178,605) | - | - | 927,939,016 | - | - | (178,605) |
| 3/9/2005 | W/H TAX DIV BUD | (24,973) | - | (24,973) | - | - | 927,914,043 | - | - | (24,973) |
| 3/10/2005 | W/H TAX DIV UTX | (29,900) | - | (29,900) | - | - | 927,884,144 | - | - | (29,900) |
| 3/10/2005 | W/H TAX DIV IBM | (36,695) | - | (36,695) | - | - | 927,847,449 | - | - | (36,695) |
| 3/10/2005 | W/H TAX DIV XOM | (217,112) | - | (217,112) | - | - | 927,630,337 | - | - | (217,112) |
| 3/10/2005 | W/H TAX DIV MSFT | (108,271) | - | (108,271) | - | - | 927,522,066 | - | - | (108,271) |
| 3/14/2005 | W/H TAX DIV MMM | (42,811) | - | (42,811) | - | - | 927,479,255 | - | - | (42,811) |
| 3/14/2005 | W/H TAX DIV DD | (43,604) | - | (43,604) | - | - | 927,435,651 | - | - | (43,604) |
| 3/18/2005 | W/H TAX DIV AIG | (41,055) | - | (41,055) | - | - | 927,394,596 | - | - | (41,055) |
| 3/24/2005 | W/H TAX DIV HD | (27,181) | - | (27,181) | - | - | 927,367,415 | - | - | (27,181) |
| 3/28/2005 | W/H TAX DIV BAC | (226,787) | - | (226,787) | - | - | 927,140,627 | - | - | (226,787) |
| 3/31/2005 | W/H TAX DIV PEP | (49,493) | - | (49,493) | - | - | 927,091,134 | - | - | (49,493) |
| 4/1/2005 | W/H TAX DIV MRK | (103,289) | - | (103,289) | - | - | 926,987,845 | - | - | (103,289) |
| 4/1/2005 | W/H TAX DIV KO | (66,785) | - | (66,785) | - | - | 926,921,060 | - | - | (66,785) |
| 4/1/2005 | W/H TAX DIV VIA.B | (15,063) | - | (15,063) | - | - | 926,905,997 | - | - | (15,063) |
| 4/7/2005 | W/H TAX DIV HPQ | (14,926) | - | (14,926) | - | - | 926,891,071 | - | - | (14,926) |
| 4/11/2005 | W/H TAX DIV MO | (148,322) | - | (148,322) | - | - | 926,742,749 | - | - | (148,322) |
| 4/13/2005 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (56) | - | (56) | - | - | 926,742,693 | - | - | (56) |
| 4/25/2005 | W/H TAX DIV GE | (289,646) | - | (289,646) | - | - | 926,453,047 | - | - | (289,646) |

MADC1345_00000867

BLMIS ACCOUNT NO. 1FN061 - KINGATE GLOBAL FUND LTD C/O BANK OF BERMUDA LTD A/C/F KINGATE GLOBAL FUND

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | Preference Period Initial Transfers | Two Year Initial Transfers | Six Year Initial Transfers |
| 5/23/2005 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (44) | - | (44) | - | - | 926,453,003 | - | - | (44) |
| 6/6/2005 | W/H TAX DIV WMT | (18,703) | - | (18,703) | - | - | 926,434,300 | - | - | (18,703) |
| 6/10/2005 | W/H TAX DIV VTX | (8,897) | - | (8,897) | - | - | 926,425,404 | - | - | (8,897) |
| 6/13/2005 | W/H TAX DIV MMM | (12,738) | - | (12,738) | - | - | 926,412,666 | - | - | (12,738) |
| 6/17/2005 | W/H TAX DIV AIG | (31,049) | - | (31,049) | - | - | 926,381,617 | - | - | (31,049) |
| 6/20/2005 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (27) | - | (27) | - | - | 926,381,589 | - | - | (27) |
| 6/23/2005 | W/H TAX DIV HD | (20,799) | - | (20,799) | - | - | 926,360,790 | - | - | (20,799) |
| 6/24/2005 | W/H TAX DIV BAC | (173,447) | - | (173,447) | - | - | 926,187,343 | - | - | (173,447) |
| 6/30/2005 | W/H TAX DIV PEP | (42,313) | - | (42,313) | - | - | 926,145,030 | - | - | (42,313) |
| 7/1/2005 | W/H TAX DIV KO | (59,957) | - | (59,957) | - | - | 926,085,073 | - | - | (59,957) |
| 7/1/2005 | W/H TAX DIV VIA.B | (11,392) | - | (11,392) | - | - | 926,073,681 | - | - | (11,392) |
| 7/1/2005 | W/H TAX DIV ALL | (21,040) | - | (21,040) | - | - | 926,052,641 | - | - | (21,040) |
| 7/1/2005 | W/H TAX DIV MRK | (78,116) | - | (78,116) | - | - | 925,974,526 | - | - | (78,116) |
| 7/6/2005 | W/H TAX DIV HPQ | (22,391) | - | (22,391) | - | - | 925,952,135 | - | - | (22,391) |
| 7/8/2005 | W/H TAX DIV SLB | (12,591) | - | (12,591) | - | - | 925,939,544 | - | - | (12,591) |
| 7/11/2005 | W/H TAX DIV MO | (143,811) | - | (143,811) | - | - | 925,795,733 | - | - | (143,811) |
| 7/25/2005 | W/H TAX DIV GE | (221,745) | - | (221,745) | - | - | 925,573,987 | - | - | (221,745) |
| 9/8/2005 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (359) | - | (359) | - | - | 925,573,628 | - | - | (359) |
| 9/12/2005 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (5) | - | (5) | - | - | 925,573,623 | - | - | (5) |
| 9/30/2005 | W/H TAX DIV S | (4,956) | - | (4,956) | - | - | 925,568,667 | - | - | (4,956) |
| 9/30/2005 | W/H TAX DIV PEP | (29,677) | - | (29,677) | - | - | 925,538,990 | - | - | (29,677) |
| 10/3/2005 | W/H TAX DIV KO | (83,350) | - | (83,350) | - | - | 925,455,640 | - | - | (83,350) |
| 10/5/2005 | W/H TAX DIV HPQ | (30,212) | - | (30,212) | - | - | 925,425,428 | - | - | (30,212) |
| 10/11/2005 | W/H TAX DIV MO | (214,916) | - | (214,916) | - | - | 925,210,512 | - | - | (214,916) |
| 10/12/2005 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (170) | - | (170) | - | - | 925,210,342 | - | - | (170) |
| 10/13/2005 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 925,210,341 | - | - | (1) |
| 10/14/2005 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 925,210,340 | - | - | (1) |
| 10/19/2005 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 925,210,337 | - | - | (2) |
| 10/25/2005 | W/H TAX DIV GE | (223,511) | - | (223,511) | - | - | 924,986,826 | - | - | (223,511) |
| 10/31/2005 | W/H TAX DIV MWD | (26,402) | - | (26,402) | - | - | 924,960,424 | - | - | (26,402) |
| 11/15/2005 | W/H TAX DIV PG | (133,320) | - | (133,320) | - | - | 924,827,103 | - | - | (133,320) |
| 11/15/2005 | W/H TAX DIV ABT | (40,337) | - | (40,337) | - | - | 924,786,766 | - | - | (40,337) |
| 11/17/2005 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (56) | - | (56) | - | - | 924,786,711 | - | - | (56) |
| 11/21/2005 | W/H TAX DIV TXN | (6,846) | - | (6,846) | - | - | 924,779,865 | - | - | (6,846) |
| 11/21/2005 | W/H TAX DIV GS | (15,261) | - | (15,261) | - | - | 924,764,604 | - | - | (15,261) |
| 11/23/2005 | W/H TAX DIV MER | (24,418) | - | (24,418) | - | - | 924,740,186 | - | - | (24,418) |
| 11/23/2005 | W/H TAX DIV C | (311,569) | - | (311,569) | - | - | 924,428,617 | - | - | (311,569) |
| 11/28/2005 | CHECK WIRE | (40,000,000) | - | (40,000,000) | - | - | 884,428,617 | - | - | (40,000,000) |
| 11/30/2005 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (7) | - | (7) | - | - | 884,428,611 | - | - | (7) |
| 12/1/2005 | W/H TAX DIV INTC | (66,767) | - | (66,767) | - | - | 884,361,844 | - | - | (66,767) |
| 12/1/2005 | W/H TAX DIV WFC | (120,623) | - | (120,623) | - | - | 884,241,221 | - | - | (120,623) |
| 12/2/2005 | W/H TAX DIV BA | (27,470) | - | (27,470) | - | - | 884,213,751 | - | - | (27,470) |
| 12/6/2005 | W/H TAX DIV PFE | (194,081) | - | (194,081) | - | - | 884,019,670 | - | - | (194,081) |
| 12/8/2005 | W/H TAX DIV MSFT | (101,252) | - | (101,252) | - | - | 883,918,418 | - | - | (101,252) |
| 12/9/2005 | W/H TAX DIV XOM | (252,262) | - | (252,262) | - | - | 883,666,156 | - | - | (252,262) |
| 12/12/2005 | W/H TAX DIV UTX | (31,338) | - | (31,338) | - | - | 883,634,818 | - | - | (31,338) |
| 12/12/2005 | W/H TAX DIV CVX | (141,149) | - | (141,149) | - | - | 883,493,669 | - | - | (141,149) |
| 12/12/2005 | W/H TAX DIV IBM | (43,952) | - | (43,952) | - | - | 883,449,717 | - | - | (43,952) |
| 12/12/2005 | W/H TAX DIV MMM | (46,149) | - | (46,149) | - | - | 883,403,568 | - | - | (46,149) |
| 12/13/2005 | W/H TAX DIV JNJ | (136,540) | - | (136,540) | - | - | 883,267,028 | - | - | (136,540) |
| 12/14/2005 | CHECK WIRE | (45,000,000) | - | (45,000,000) | - | - | 838,267,028 | - | - | (45,000,000) |
| 12/15/2005 | W/H TAX DIV TWX | (32,150) | - | (32,150) | - | - | 838,234,878 | - | - | (32,150) |
| 12/15/2005 | W/H TAX DIV HD | (29,301) | - | (29,301) | - | - | 838,205,576 | - | - | (29,301) |
| 12/15/2005 | W/H TAX DIV KO | (79,000) | - | (79,000) | - | - | 838,126,576 | - | - | (79,000) |
| 12/16/2005 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (6) | - | (6) | - | - | 838,126,571 | - | - | (6) |
| 12/16/2005 | W/H TAX DIV AIG | (53,108) | - | (53,108) | - | - | 838,073,462 | - | - | (53,108) |
| 12/22/2005 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (7) | - | (7) | - | - | 838,073,456 | - | - | (7) |
| 12/23/2005 | W/H TAX DIV BAC | (274,698) | - | (274,698) | - | - | 837,798,758 | - | - | (274,698) |
| 12/30/2005 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 837,798,758 | - | - | (0) |
| 12/30/2005 | W/H TAX DIV S | (10,072) | - | (10,072) | - | - | 837,788,685 | - | - | (10,072) |
| 1/3/2006 | W/H TAX DIV PEP | (60,311) | - | (60,311) | - | - | 837,728,374 | - | - | (60,311) |
| 1/3/2006 | W/H TAX DIV WMT | (33,843) | - | (33,843) | - | - | 837,694,531 | - | - | (33,843) |
| 1/3/2006 | W/H TAX DIV VIA.B | (15,383) | - | (15,383) | - | - | 837,679,148 | - | - | (15,383) |
| 1/3/2006 | W/H TAX DIV MRK | (115,984) | - | (115,984) | - | - | 837,563,164 | - | - | (115,984) |
| 1/4/2006 | W/H TAX DIV HPQ | (31,605) | - | (31,605) | - | - | 837,531,559 | - | - | (31,605) |

MADC1345_00000868

Exhibit L

BLMIS ACCOUNT NO. 1FN061 - KINGATE GLOBAL FUND LTD C/O BANK OF BERMUDA LTD A/C/F KINGATE GLOBAL FUND

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Transaction Amount | | | | | | Preference Period | Two Year | Six Year |
| | Transaction | Reported in | Cash | Cash | Transfers of | Transfers of | Balance of | Initial | Initial | Initial |
| Date | Description | Customer Statement | Deposits | Withdrawals | Principal In | Principal Out | Principal | Transfers | Transfers | Transfers |
| 1/6/2006 | W/H TAX DIV DIS | (46,657) | - | (46,657) | - | - | 837,484,902 | - | - | (46,657) |
| 1/13/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (19) | - | (19) | - | - | 837,484,883 | - | - | (19) |
| 1/20/2006 | CHECK WIRE | (35,000,000) | - | (35,000,000) | - | - | 802,484,883 | - | - | (35,000,000) |
| 1/25/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (6) | - | (6) | - | - | 802,484,877 | - | - | (6) |
| 1/31/2006 | W/H TAX DIV MS | (37,505) | - | (37,505) | - | - | 802,447,373 | - | - | (37,505) |
| 2/1/2006 | W/H TAX DIV T | (39,004) | - | (39,004) | - | - | 802,374,433 | - | - | (39,004) |
| 2/13/2006 | W/H TAX DIV TXN | (6,125) | - | (6,125) | - | - | 802,368,309 | - | - | (6,125) |
| 2/15/2006 | W/H TAX DIV PG | (119,922) | - | (119,922) | - | - | 802,248,387 | - | - | (119,922) |
| 2/15/2006 | W/H TAX DIV ABT | (54,115) | - | (54,115) | - | - | 802,194,271 | - | - | (54,115) |
| 2/21/2006 | CHECK WIRE | (30,000,000) | - | (30,000,000) | - | - | 772,194,271 | - | - | (30,000,000) |
| 2/21/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (10) | - | (10) | - | - | 772,194,261 | - | - | (10) |
| 2/23/2006 | W/H TAX DIV GS | (14,469) | - | (14,469) | - | - | 772,179,792 | - | - | (14,469) |
| 2/24/2006 | W/H TAX DIV C | (314,201) | - | (314,201) | - | - | 771,865,591 | - | - | (314,201) |
| 2/28/2006 | W/H TAX DIV MER | (28,939) | - | (28,939) | - | - | 771,836,652 | - | - | (28,939) |
| 3/1/2006 | W/H TAX DIV INTC | (76,156) | - | (76,156) | - | - | 771,760,496 | - | - | (76,156) |
| 3/1/2006 | W/H TAX DIV WFC | (108,347) | - | (108,347) | - | - | 771,652,150 | - | - | (108,347) |
| 3/3/2006 | W/H TAX DIV BA | (31,254) | - | (31,254) | - | - | 771,620,896 | - | - | (31,254) |
| 3/7/2006 | W/H TAX DIV UPS | (52,784) | - | (52,784) | - | - | 771,568,112 | - | - | (52,784) |
| 3/7/2006 | W/H TAX DIV PFE | (224,445) | - | (224,445) | - | - | 771,343,666 | - | - | (224,445) |
| 3/9/2006 | W/H TAX DIV MSFT | (104,970) | - | (104,970) | - | - | 771,238,696 | - | - | (104,970) |
| 3/10/2006 | W/H TAX DIV CVX | (128,331) | - | (128,331) | - | - | 771,110,366 | - | - | (128,331) |
| 3/10/2006 | W/H TAX DIV IBM | (39,812) | - | (39,812) | - | - | 771,070,554 | - | - | (39,812) |
| 3/10/2006 | W/H TAX DIV UTX | (28,013) | - | (28,013) | - | - | 771,042,541 | - | - | (28,013) |
| 3/10/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (4) | - | (4) | - | - | 771,042,538 | - | - | (4) |
| 3/10/2006 | W/H TAX DIV TGT | (11,576) | - | (11,576) | - | - | 771,030,962 | - | - | (11,576) |
| 3/10/2006 | W/H TAX DIV XOM | (251,264) | - | (251,264) | - | - | 770,779,698 | - | - | (251,264) |
| 3/13/2006 | W/H TAX DIV MDM | (42,598) | - | (42,598) | - | - | 770,737,100 | - | - | (42,598) |
| 3/14/2006 | W/H TAX DIV JNJ | (126,057) | - | (126,057) | - | - | 770,611,043 | - | - | (126,057) |
| 3/15/2006 | W/H TAX DIV TWX | (29,631) | - | (29,631) | - | - | 770,581,412 | - | - | (29,631) |
| 3/16/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 770,581,410 | - | - | (2) |
| 3/17/2006 | W/H TAX DIV AIG | (48,958) | - | (48,958) | - | - | 770,532,451 | - | - | (48,958) |
| 3/23/2006 | W/H TAX DIV HD | (39,935) | - | (39,935) | - | - | 770,492,516 | - | - | (39,935) |
| 3/24/2006 | W/H TAX DIV BAC | (295,175) | - | (295,175) | - | - | 770,197,341 | - | - | (295,175) |
| 3/30/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (12) | - | (12) | - | - | 770,197,328 | - | - | (12) |
| 3/31/2006 | W/H TAX DIV PEP | (54,313) | - | (54,313) | - | - | 770,143,015 | - | - | (54,313) |
| 3/31/2006 | W/H TAX DIV S | (9,468) | - | (9,468) | - | - | 770,133,547 | - | - | (9,468) |
| 3/31/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 770,133,546 | - | - | (1) |
| 4/3/2006 | W/H TAX DIV WMT | (54,039) | - | (54,039) | - | - | 770,079,507 | - | - | (54,039) |
| 4/3/2006 | W/H TAX DIV KO | (81,434) | - | (81,434) | - | - | 769,998,073 | - | - | (81,434) |
| 4/3/2006 | W/H TAX DIV MRK | (105,836) | - | (105,836) | - | - | 769,892,237 | - | - | (105,836) |
| 4/5/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | 769,892,234 | - | - | (3) |
| 4/5/2006 | W/H TAX DIV HPQ | (29,148) | - | (29,148) | - | - | 769,863,086 | - | - | (29,148) |
| 4/7/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 769,863,084 | - | - | (2) |
| 4/7/2006 | W/H TAX DIV SLB | (17,932) | - | (17,932) | - | - | 769,845,153 | - | - | (17,932) |
| 4/10/2006 | W/H TAX DIV MO | (213,530) | - | (213,530) | - | - | 769,631,622 | - | - | (213,530) |
| 4/21/2006 | CHECK WIRE | (20,000,000) | - | (20,000,000) | - | - | 749,631,622 | - | - | (20,000,000) |
| 4/21/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (5) | - | (5) | - | - | 749,631,618 | - | - | (5) |
| 4/25/2006 | W/H TAX DIV GE | (335,206) | - | (335,206) | - | - | 749,296,412 | - | - | (335,206) |
| 4/28/2006 | CXL W/H TAX DIV SLB | 17,932 | - | 17,932 | - | - | 749,314,343 | - | - | 17,932 |
| 4/28/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (6) | - | (6) | - | - | 749,314,337 | - | - | (6) |
| 4/28/2006 | W/H TAX DIV MDT | (14,409) | - | (14,409) | - | - | 749,299,928 | - | - | (14,409) |
| 4/28/2006 | W/H TAX DIV MS | (36,555) | - | (36,555) | - | - | 749,263,373 | - | - | (36,555) |
| 5/1/2006 | W/H TAX DIV VZ | (149,233) | - | (149,233) | - | - | 749,114,140 | - | - | (149,233) |
| 5/1/2006 | W/H TAX DIV T | (161,310) | - | (161,310) | - | - | 748,952,830 | - | - | (161,310) |
| 5/1/2006 | W/H TAX DIV JPM | (109,375) | - | (109,375) | - | - | 748,843,455 | - | - | (109,375) |
| 5/5/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (10) | - | (10) | - | - | 748,843,444 | - | - | (10) |
| 5/10/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (8) | - | (8) | - | - | 748,843,436 | - | - | (8) |
| 5/10/2006 | W/H TAX DIV AXP | (18,954) | - | (18,954) | - | - | 748,824,481 | - | - | (18,954) |
| 5/15/2006 | W/H TAX DIV PG | (129,409) | - | (129,409) | - | - | 748,695,072 | - | - | (129,409) |
| 5/15/2006 | W/H TAX DIV ABT | (56,581) | - | (56,581) | - | - | 748,638,491 | - | - | (56,581) |
| 5/16/2006 | CHECK WIRE | (10,000,000) | - | (10,000,000) | - | - | 738,638,491 | - | - | (10,000,000) |
| 5/22/2006 | W/H TAX DIV TXN | (6,093) | - | (6,093) | - | - | 738,632,398 | - | - | (6,093) |
| 5/22/2006 | W/H TAX DIV CAT | (21,604) | - | (21,604) | - | - | 738,610,794 | - | - | (21,604) |
| 5/24/2006 | W/H TAX DIV MER | (28,336) | - | (28,336) | - | - | 738,582,458 | - | - | (28,336) |

MADC1345_00000869

BLMIS ACCOUNT NO. 1FN061 - KINGATE GLOBAL FUND LTD C/O FORTIS PRIME FUND SOLUTIONS (BERMUDA) LTD A/C/F KINGATE GLOBAL FUND

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | Preference Period Initial Transfers | Two Year Initial Transfers | Six Year Initial Transfers |
| Date | Transaction Description | | | | | | | | | |
| 5/25/2006 | W/H TAX DIV GS | (19,744) | - | (19,744) | - | - | 738,562,714 | - | - | (19,744) |
| 5/26/2006 | W/H TAX DIV C | (309,589) | - | (309,589) | - | - | 738,253,125 | - | - | (309,589) |
| 5/31/2006 | W/H TAX DIV UPS | (51,684) | - | (51,684) | - | - | 738,201,441 | - | - | (51,684) |
| 5/31/2006 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (46) | - | (46) | - | - | 738,201,395 | - | - | (46) |
| 6/1/2006 | W/H TAX DIV INTC | (73,673) | - | (73,673) | - | - | 738,127,722 | - | - | (73,673) |
| 6/1/2006 | W/H TAX DIV WFC | (111,983) | - | (111,983) | - | - | 738,015,739 | - | - | (111,983) |
| 6/2/2006 | W/H TAX DIV BA | (30,603) | - | (30,603) | - | - | 737,985,136 | - | - | (30,603) |
| 6/5/2006 | W/H TAX DIV WMT | (53,158) | - | (53,158) | - | - | 737,931,978 | - | - | (53,158) |
| 6/6/2006 | W/H TAX DIV PFE | (223,059) | - | (223,059) | - | - | 737,708,919 | - | - | (223,059) |
| 6/6/2006 | W/H TAX DIV BMY | (69,500) | - | (69,500) | - | - | 737,639,420 | - | - | (69,500) |
| 6/8/2006 | W/H TAX DIV MSFT | (100,989) | - | (100,989) | - | - | 737,538,431 | - | - | (100,989) |
| 6/9/2006 | W/H TAX DIV XOM | (247,605) | - | (247,605) | - | - | 737,290,826 | - | - | (247,605) |
| 6/12/2006 | W/H TAX DIV UTX | (16,520) | - | (16,520) | - | - | 737,274,306 | - | - | (16,520) |
| 6/12/2006 | W/H TAX DIV IBM | (59,143) | - | (59,143) | - | - | 737,215,164 | - | - | (59,143) |
| 6/12/2006 | W/H TAX DIV MMM | (41,710) | - | (41,710) | - | - | 737,173,454 | - | - | (41,710) |
| 6/13/2006 | W/H TAX DIV JNJ | (140,262) | - | (140,262) | - | - | 737,033,192 | - | - | (140,262) |
| 6/15/2006 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (18) | - | (18) | - | - | 737,033,174 | - | - | (18) |
| 6/15/2006 | W/H TAX DIV TWX | (28,338) | - | (28,338) | - | - | 737,004,836 | - | - | (28,338) |
| 6/16/2006 | CHECK WIRE | (30,000,000) | - | (30,000,000) | - | - | 707,004,836 | - | - | (30,000,000) |
| 6/22/2006 | W/H TAX DIV HD | (40,803) | - | (40,803) | - | - | 706,964,032 | - | - | (40,803) |
| 6/23/2006 | W/H TAX DIV BAC | (294,692) | - | (294,692) | - | - | 706,669,340 | - | - | (294,692) |
| 6/30/2006 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (72) | - | (72) | - | - | 706,669,268 | - | - | (72) |
| 6/30/2006 | W/H TAX DIV S | (9,351) | - | (9,351) | - | - | 706,659,917 | - | - | (9,351) |
| 6/30/2006 | W/H TAX DIV PEP | (61,221) | - | (61,221) | - | - | 706,598,696 | - | - | (61,221) |
| 7/3/2006 | W/H TAX DIV AIG | (49,304) | - | (49,304) | - | - | 706,549,392 | - | - | (49,304) |
| 7/3/2006 | W/H TAX DIV KO | (55,761) | - | (55,761) | - | - | 706,493,631 | - | - | (55,761) |
| 7/3/2006 | W/H TAX DIV MRK | (103,369) | - | (103,369) | - | - | 706,390,262 | - | - | (103,369) |
| 7/3/2006 | W/H TAX DIV CVX | (147,346) | - | (147,346) | - | - | 706,242,916 | - | - | (147,346) |
| 7/5/2006 | W/H TAX DIV HPQ | (28,773) | - | (28,773) | - | - | 706,214,143 | - | - | (28,773) |
| 7/7/2006 | W/H TAX DIV SLB | (19,829) | - | (19,829) | - | - | 706,194,314 | - | - | |
| 7/10/2006 | W/H TAX DIV MO | (143,900) | - | (143,900) | - | - | 706,050,414 | - | - | (143,900) |
| 7/14/2006 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (31) | - | (31) | - | - | 706,050,383 | - | - | (31) |
| 7/21/2006 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 706,050,383 | - | - | (0) |
| 7/31/2006 | W/H TAX DIV MS | (14,999) | - | (14,999) | - | - | 706,035,384 | - | - | (14,999) |
| 7/31/2006 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (34) | - | (34) | - | - | 706,035,350 | - | - | (34) |
| 8/7/2006 | CXL W/H TAX DIV SLB | 19,829 | - | 19,829 | - | - | 706,055,178 | - | - | |
| 8/15/2006 | W/H TAX DIV PG | (87,949) | - | (87,949) | - | - | 705,967,230 | - | - | (87,949) |
| 8/15/2006 | W/H TAX DIV ABT | (23,216) | - | (23,216) | - | - | 705,944,014 | - | - | (23,216) |
| 8/17/2006 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (16) | - | (16) | - | - | 705,943,998 | - | - | (16) |
| 8/21/2006 | W/H TAX DIV CAT | (9,722) | - | (9,722) | - | - | 705,934,276 | - | - | (9,722) |
| 8/21/2006 | W/H TAX DIV TXN | (4,002) | - | (4,002) | - | - | 705,930,274 | - | - | (4,002) |
| 8/23/2006 | W/H TAX DIV MER | (19,169) | - | (19,169) | - | - | 705,911,105 | - | - | (19,169) |
| 8/24/2006 | W/H TAX DIV GS | (13,418) | - | (13,418) | - | - | 705,897,687 | - | - | (13,418) |
| 8/25/2006 | W/H TAX DIV C | (208,913) | - | (208,913) | - | - | 705,688,774 | - | - | (208,913) |
| 9/1/2006 | W/H TAX DIV WFC | (81,584) | - | (81,584) | - | - | 705,607,190 | - | - | (81,584) |
| 9/1/2006 | W/H TAX DIV INTC | (50,144) | - | (50,144) | - | - | 705,557,046 | - | - | (50,144) |
| 9/1/2006 | W/H TAX DIV BA | (20,703) | - | (20,703) | - | - | 705,536,343 | - | - | (20,703) |
| 9/1/2006 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (17) | - | (17) | - | - | 705,536,326 | - | - | (17) |
| 9/5/2006 | W/H TAX DIV WMT | (35,962) | - | (35,962) | - | - | 705,500,365 | - | - | (35,962) |
| 9/5/2006 | W/H TAX DIV PFE | (151,282) | - | (151,282) | - | - | 705,349,083 | - | - | (151,282) |
| 9/6/2006 | W/H TAX DIV UPS | (34,965) | - | (34,965) | - | - | 705,314,118 | - | - | (34,965) |
| 9/11/2006 | W/H TAX DIV UTX | (22,351) | - | (22,351) | - | - | 705,291,767 | - | - | (22,351) |
| 9/11/2006 | W/H TAX DIV CVX | (99,680) | - | (99,680) | - | - | 705,192,087 | - | - | (99,680) |
| 9/11/2006 | W/H TAX DIV XOM | (165,368) | - | (165,368) | - | - | 705,026,719 | - | - | (165,368) |
| 9/11/2006 | W/H TAX DIV IBM | (39,105) | - | (39,105) | - | - | 704,987,613 | - | - | (39,105) |
| 9/12/2006 | W/H TAX DIV JNJ | (94,888) | - | (94,888) | - | - | 704,892,726 | - | - | (94,888) |
| 9/12/2006 | W/H TAX DIV MMM | (28,217) | - | (28,217) | - | - | 704,864,509 | - | - | (28,217) |
| 9/14/2006 | W/H TAX DIV MSFT | (68,046) | - | (68,046) | - | - | 704,796,463 | - | - | (68,046) |
| 9/15/2006 | W/H TAX DIV TWX | (20,497) | - | (20,497) | - | - | 704,775,965 | - | - | (20,497) |
| 9/15/2006 | W/H TAX DIV AIG | (36,690) | - | (36,690) | - | - | 704,739,275 | - | - | (36,690) |
| 9/15/2006 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 704,739,274 | - | - | (1) |
| 9/21/2006 | W/H TAX DIV HD | (26,454) | - | (26,454) | - | - | 704,712,820 | - | - | (26,454) |
| 9/22/2006 | W/H TAX DIV BAC | (218,990) | - | (218,990) | - | - | 704,493,831 | - | - | (218,990) |
| 9/27/2006 | FIDELITY SPARTAN U S TREASURY MONEY MARKET | (12) | - | (12) | - | - | 704,493,819 | - | - | (12) |
| 9/29/2006 | W/H TAX DIV PEP | (42,317) | - | (42,317) | - | - | 704,451,502 | - | - | (42,317) |

MADC1345_00000870

| Column 1 Date | Column 2 Transaction Description | Column 3 Transaction Amount Reported in Customer Statement | Column 4 Cash Deposits | Column 5 Cash Withdrawals | Column 6 Transfers of Principal In | Column 7 Transfers of Principal Out | Column 8 Balance of Principal | Column 9 Preference Period Initial Transfers | Column 10 Two Year Initial Transfers | Column 11 Six Year Initial Transfers |
|---|---|---|---|---|---|---|---|---|---|---|
| 9/29/2006 | W/H TAX DIV S | (6,442) | - | (6,442) | - | - | 704,445,060 | - | - | (6,442) |
| 10/2/2006 | W/H TAX DIV KO | (54,671) | - | (54,671) | - | - | 704,390,390 | - | - | (54,671) |
| 10/2/2006 | W/H TAX DIV MRK | (69,929) | - | (69,929) | - | - | 704,320,460 | - | - | (69,929) |
| 10/4/2006 | W/H TAX DIV HPQ | (19,016) | - | (19,016) | - | - | 704,301,444 | - | - | (19,016) |
| 10/10/2006 | W/H TAX DIV MO | (154,280) | - | (154,280) | - | - | 704,147,164 | - | - | (154,280) |
| 10/17/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (13) | - | (13) | - | - | 704,147,151 | - | - | (13) |
| 10/25/2006 | W/H TAX DIV GE | (223,521) | - | (223,521) | - | - | 703,923,631 | - | - | (223,521) |
| 10/26/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (6) | - | (6) | - | - | 703,923,625 | - | - | (6) |
| 10/27/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 703,923,623 | - | - | (1) |
| 10/30/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 703,923,622 | - | - | (1) |
| 10/31/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 703,923,622 | - | - | (1) |
| 11/20/2006 | W/H TAX DIV TXN | (7,400) | - | (7,400) | - | - | 703,916,222 | - | - | (7,400) |
| 11/20/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (13) | - | (13) | - | - | 703,916,209 | - | - | (13) |
| 11/22/2006 | W/H TAX DIV C | (282,603) | - | (282,603) | - | - | 703,633,606 | - | - | (282,603) |
| 11/22/2006 | W/H TAX DIV MER | (27,205) | - | (27,205) | - | - | 703,606,401 | - | - | (27,205) |
| 11/27/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | 703,606,398 | - | - | (3) |
| 11/30/2006 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 703,606,396 | - | - | (2) |
| 1/2/2007 | W/H TAX DIV PEP | (59,486) | - | (59,486) | - | - | 703,546,910 | - | (59,486) | (59,486) |
| 1/2/2007 | W/H TAX DIV MRK | (97,557) | - | (97,557) | - | - | 703,449,353 | - | (97,557) | (97,557) |
| 1/2/2007 | W/H TAX DIV WMT | (49,163) | - | (49,163) | - | - | 703,400,190 | - | (49,163) | (49,163) |
| 1/3/2007 | W/H TAX DIV CVX | (135,806) | - | (135,806) | - | - | 703,264,384 | - | (135,806) | (135,806) |
| 1/3/2007 | W/H TAX DIV WFC | (110,631) | - | (110,631) | - | - | 703,153,754 | - | (110,631) | (110,631) |
| 1/3/2007 | W/H TAX DIV WB | (129,473) | - | (129,473) | - | - | 703,024,281 | - | (129,473) | (129,473) |
| 1/3/2007 | W/H TAX DIV MSFT | (101,538) | - | (101,538) | - | - | 702,922,743 | - | (101,538) | (101,538) |
| 1/3/2007 | W/H TAX DIV BAC | (302,204) | - | (302,204) | - | - | 702,620,539 | - | (302,204) | (302,204) |
| 1/3/2007 | W/H TAX DIV S | (8,813) | - | (8,813) | - | - | 702,611,726 | - | (8,813) | (8,813) |
| 1/3/2007 | W/H TAX DIV INTC | (67,804) | - | (67,804) | - | - | 702,543,922 | - | (67,804) | (67,804) |
| 1/3/2007 | W/H TAX DIV MCD | (141,465) | - | (141,465) | - | - | 702,402,458 | - | (141,465) | (141,465) |
| 1/3/2007 | W/H TAX DIV AIG | (50,894) | - | (50,894) | - | - | 702,351,564 | - | (50,894) | (50,894) |
| 1/3/2007 | W/H TAX DIV TWX | (26,659) | - | (26,659) | - | - | 702,324,905 | - | (26,659) | (26,659) |
| 1/3/2007 | W/H TAX DIV IBM | (53,241) | - | (53,241) | - | - | 702,271,664 | - | (53,241) | (53,241) |
| 1/3/2007 | W/H TAX DIV HPQ | (26,140) | - | (26,140) | - | - | 702,245,524 | - | (26,140) | (26,140) |
| 1/3/2007 | W/H TAX DIV UTX | (31,721) | - | (31,721) | - | - | 702,213,803 | - | (31,721) | (31,721) |
| 1/3/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (30) | - | (30) | - | - | 702,213,773 | - | (30) | (30) |
| 1/3/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 702,213,772 | - | (1) | (1) |
| 1/3/2007 | W/H TAX DIV PFE | (207,263) | - | (207,263) | - | - | 702,006,510 | - | (207,263) | (207,263) |
| 1/3/2007 | W/H TAX DIV EXC | (30,469) | - | (30,469) | - | - | 701,976,040 | - | (30,469) | (30,469) |
| 1/3/2007 | W/H TAX DIV HD | (54,529) | - | (54,529) | - | - | 701,921,511 | - | (54,529) | (54,529) |
| 1/3/2007 | W/H TAX DIV BA | (29,381) | - | (29,381) | - | - | 701,892,130 | - | (29,381) | (29,381) |
| 1/3/2007 | W/H TAX DIV JNJ | (130,583) | - | (130,583) | - | - | 701,761,547 | - | (130,583) | (130,583) |
| 1/3/2007 | W/H TAX DIV MMM | (40,045) | - | (40,045) | - | - | 701,721,502 | - | (40,045) | (40,045) |
| 1/3/2007 | W/H TAX DIV XOM | (223,937) | - | (223,937) | - | - | 701,497,565 | - | (223,937) | (223,937) |
| 1/3/2007 | W/H TAX DIV KO | (75,129) | - | (75,129) | - | - | 701,422,436 | - | (75,129) | (75,129) |
| 1/3/2007 | W/H TAX DIV TGT | (11,752) | - | (11,752) | - | - | 701,410,683 | - | (11,752) | (11,752) |
| 1/4/2007 | W/H TAX DIV UPS | (49,621) | - | (49,621) | - | - | 701,361,062 | - | (49,621) | (49,621) |
| 1/10/2007 | W/H TAX DIV MO | (58,579) | - | (58,579) | - | - | 701,302,483 | - | (58,579) | (58,579) |
| 1/12/2007 | W/H TAX DIV DIS | (77,387) | - | (77,387) | - | - | 701,225,095 | - | (77,387) | (77,387) |
| 1/25/2007 | W/H TAX DIV GE | (199,125) | - | (199,125) | - | - | 701,025,971 | - | (199,125) | (199,125) |
| 1/29/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (45) | - | (45) | - | - | 701,025,925 | - | (45) | (45) |
| 1/31/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 701,025,925 | - | (0) | (0) |
| 2/6/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | 701,025,922 | - | (3) | (3) |
| 2/13/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (8) | - | (8) | - | - | 701,025,914 | - | (8) | (8) |
| 2/16/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (3) | - | (3) | - | - | 701,025,911 | - | (3) | (3) |
| 2/20/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (5) | - | (5) | - | - | 701,025,905 | - | (5) | (5) |
| 2/22/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 701,025,904 | - | (1) | (1) |
| 2/23/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 701,025,903 | - | (1) | (1) |
| 2/28/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (7) | - | (7) | - | - | 701,025,896 | - | (7) | (7) |
| 3/1/2007 | W/H TAX DIV COP | (43,144) | - | (43,144) | - | - | 700,982,752 | - | (43,144) | (43,144) |
| 3/6/2007 | W/H TAX DIV UPS | (28,597) | - | (28,597) | - | - | 700,954,155 | - | (28,597) | (28,597) |
| 3/9/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (13) | - | (13) | - | - | 700,954,143 | - | (13) | (13) |
| 3/12/2007 | W/H TAX DIV UTX | (9,833) | - | (9,833) | - | - | 700,944,310 | - | (9,833) | (9,833) |
| 3/12/2007 | W/H TAX DIV MMM | (35,407) | - | (35,407) | - | - | 700,908,903 | - | (35,407) | (35,407) |
| 3/12/2007 | W/H TAX DIV CVX | (40,343) | - | (40,343) | - | - | 700,868,559 | - | (40,343) | (40,343) |
| 3/12/2007 | W/H TAX DIV TGT | (6,685) | - | (6,685) | - | - | 700,861,874 | - | (6,685) | (6,685) |
| 3/13/2007 | W/H TAX DIV JNJ | (107,188) | - | (107,188) | - | - | 700,754,686 | - | (107,188) | (107,188) |

MADC1345_00000871

BLMIS ACCOUNT NO. 1FN061 - KINGATE GLOBAL FUND LTD C/O BANK OF BERMUDA LTD A/C/F KINGATE GLOBAL FUND

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Transaction Amount Reported in | | | | | | Preference Period | Two Year | Six Year |
| | Transaction | Reported in Customer Statement | Cash | Cash | Transfers of | Transfers of | Balance of | Initial | Initial | Initial |
| Date | Description | | Deposits | Withdrawals | Principal In | Principal Out | Principal | Transfers | Transfers | Transfers |
| 3/15/2007 | W/H TAX DIV TWX | (21,299) | - | (21,299) | - | - | 700,733,387 | - | (21,299) | (21,299) |
| 3/15/2007 | W/H TAX DIV WB | (103,270) | - | (103,270) | - | - | 700,630,117 | - | (103,270) | (103,270) |
| 3/16/2007 | W/H TAX DIV AIG | (41,077) | - | (41,077) | - | - | 700,589,040 | - | (41,077) | (41,077) |
| 3/20/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (27) | - | (27) | - | - | 700,589,013 | - | (27) | (27) |
| 3/22/2007 | W/H TAX DIV HD | (45,641) | - | (45,641) | - | - | 700,543,371 | - | (45,641) | (45,641) |
| 3/23/2007 | W/H TAX DIV BAC | (242,684) | - | (242,684) | - | - | 700,300,688 | - | (242,684) | (242,684) |
| 3/28/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (17) | - | (17) | - | - | 700,300,671 | - | (17) | (17) |
| 3/30/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (5) | - | (5) | - | - | 700,300,666 | - | (5) | (5) |
| 3/30/2007 | W/H TAX DIV S | (8,169) | - | (8,169) | - | - | 700,292,497 | - | (8,169) | (8,169) |
| 3/30/2007 | W/H TAX DIV PEP | (55,773) | - | (55,773) | - | - | 700,236,724 | - | (55,773) | (55,773) |
| 4/2/2007 | W/H TAX DIV KO | (80,070) | - | (80,070) | - | - | 700,156,653 | - | (80,070) | (80,070) |
| 4/2/2007 | W/H TAX DIV MRK | (95,580) | - | (95,580) | - | - | 700,061,074 | - | (95,580) | (95,580) |
| 4/2/2007 | W/H TAX DIV WMT | (61,887) | - | (61,887) | - | - | 699,999,187 | - | (61,887) | (61,887) |
| 4/4/2007 | W/H TAX DIV HPQ | (25,371) | - | (25,371) | - | - | 699,973,816 | - | (25,371) | (25,371) |
| 4/10/2007 | W/H TAX DIV MO | (206,907) | - | (206,907) | - | - | 699,766,908 | - | (206,907) | (206,907) |
| 4/19/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (27) | - | (27) | - | - | 699,766,881 | - | (27) | (27) |
| 4/20/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 699,766,881 | - | (0) | (0) |
| 4/25/2007 | W/H TAX DIV GE | (281,410) | - | (281,410) | - | - | 699,485,471 | - | (281,410) | (281,410) |
| 4/30/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (15) | - | (15) | - | - | 699,485,456 | - | (15) | (15) |
| 5/4/2007 | W/H TAX DIV CVS | (7,393) | - | (7,393) | - | - | 699,478,064 | - | (7,393) | (7,393) |
| 5/15/2007 | W/H TAX DIV PG | (130,987) | - | (130,987) | - | - | 699,347,077 | - | (130,987) | (130,987) |
| 5/21/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (19) | - | (19) | - | - | 699,347,057 | - | (19) | (19) |
| 5/23/2007 | W/H TAX DIV MER | (34,673) | - | (34,673) | - | - | 699,312,384 | - | (34,673) | (34,673) |
| 5/24/2007 | W/H TAX DIV GS | (10,147) | - | (10,147) | - | - | 699,302,238 | - | (10,147) | (10,147) |
| 5/25/2007 | W/H TAX DIV C | (309,085) | - | (309,085) | - | - | 698,993,153 | - | (309,085) | (309,085) |
| 5/31/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 698,993,152 | - | (0) | (0) |
| 6/1/2007 | W/H TAX DIV COP | (79,692) | - | (79,692) | - | - | 698,913,460 | - | (79,692) | (79,692) |
| 6/1/2007 | W/H TAX DIV WFC | (110,954) | - | (110,954) | - | - | 698,802,506 | - | (110,954) | (110,954) |
| 6/1/2007 | W/H TAX DIV BA | (32,006) | - | (32,006) | - | - | 698,770,500 | - | (32,006) | (32,006) |
| 6/1/2007 | W/H TAX DIV INTC | (76,776) | - | (76,776) | - | - | 698,693,724 | - | (76,776) | (76,776) |
| 6/4/2007 | W/H TAX DIV WMT | (62,962) | - | (62,962) | - | - | 698,630,763 | - | (62,962) | (62,962) |
| 6/5/2007 | W/H TAX DIV PFE | (242,601) | - | (242,601) | - | - | 698,388,162 | - | (242,601) | (242,601) |
| 6/5/2007 | W/H TAX DIV UPS | (50,854) | - | (50,854) | - | - | 698,337,308 | - | (50,854) | (50,854) |
| 6/6/2007 | W/H TAX DIV TYC | (23,454) | - | (23,454) | - | - | 698,313,854 | - | - | - |
| 6/11/2007 | W/H TAX DIV CVX | (146,837) | - | (146,837) | - | - | 698,167,016 | - | (146,837) | (146,837) |
| 6/11/2007 | W/H TAX DIV UTX | (32,086) | - | (32,086) | - | - | 698,134,930 | - | (32,086) | (32,086) |
| 6/11/2007 | W/H TAX DIV XOM | (233,690) | - | (233,690) | - | - | 697,901,240 | - | (233,690) | (233,690) |
| 6/11/2007 | W/H TAX DIV IBM | (70,447) | - | (70,447) | - | - | 697,830,793 | - | (70,447) | (70,447) |
| 6/12/2007 | W/H TAX DIV MMM | (42,268) | - | (42,268) | - | - | 697,788,525 | - | (42,268) | (42,268) |
| 6/12/2007 | W/H TAX DIV JNJ | (140,203) | - | (140,203) | - | - | 697,648,322 | - | (140,203) | (140,203) |
| 6/14/2007 | W/H TAX DIV MSFT | (101,992) | - | (101,992) | - | - | 697,546,331 | - | (101,992) | (101,992) |
| 6/15/2007 | W/H TAX DIV WB | (123,282) | - | (123,282) | - | - | 697,423,049 | - | (123,282) | (123,282) |
| 6/15/2007 | W/H TAX DIV TWX | (25,008) | - | (25,008) | - | - | 697,398,041 | - | (25,008) | (25,008) |
| 6/15/2007 | W/H TAX DIV AIG | (50,854) | - | (50,854) | - | - | 697,347,187 | - | (50,854) | (50,854) |
| 6/15/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (14) | - | (14) | - | - | 697,347,174 | - | (14) | (14) |
| 6/21/2007 | W/H TAX DIV HD | (54,486) | - | (54,486) | - | - | 697,292,688 | - | (54,486) | (54,486) |
| 6/22/2007 | W/H TAX DIV BAC | (295,876) | - | (295,876) | - | - | 696,996,811 | - | (295,876) | (295,876) |
| 6/29/2007 | W/H TAX DIV PEP | (72,889) | - | (72,889) | - | - | 696,923,922 | - | (72,889) | (72,889) |
| 6/29/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (10) | - | (10) | - | - | 696,923,912 | - | (10) | (10) |
| 6/29/2007 | W/H TAX DIV S | (8,531) | - | (8,531) | - | - | 696,915,381 | - | (8,531) | (8,531) |
| 7/2/2007 | W/H TAX DIV KO | (79,904) | - | (79,904) | - | - | 696,835,477 | - | (79,904) | (79,904) |
| 7/2/2007 | W/H TAX DIV MRK | (96,204) | - | (96,204) | - | - | 696,739,273 | - | (96,204) | (96,204) |
| 7/5/2007 | W/H TAX DIV HPQ | (25,537) | - | (25,537) | - | - | 696,713,736 | - | (25,537) | (25,537) |
| 7/10/2007 | W/H TAX DIV MO | (169,428) | - | (169,428) | - | - | 696,544,307 | - | (169,428) | (169,428) |
| 7/17/2007 | CXL W/H TAX DIV TYC | 23,454 | - | 23,454 | - | - | 696,567,761 | - | - | - |
| 7/17/2007 | W/H TAX DIV TYC | (9) | - | (9) | - | - | 696,567,752 | - | (9) | (9) |
| 8/6/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (20) | - | (20) | - | - | 696,567,732 | - | (20) | (20) |
| 8/24/2007 | W/H TAX DIV C | (127,897) | - | (127,897) | - | - | 696,439,835 | - | (127,897) | (127,897) |
| 9/4/2007 | W/H TAX DIV WFC | (49,872) | - | (49,872) | - | - | 696,389,963 | - | (49,872) | (49,872) |
| 9/4/2007 | W/H TAX DIV WMT | (25,562) | - | (25,562) | - | - | 696,364,402 | - | (25,562) | (25,562) |
| 9/4/2007 | W/H TAX DIV INTC | (31,673) | - | (31,673) | - | - | 696,332,729 | - | (31,673) | (31,673) |
| 9/5/2007 | W/H TAX DIV PFE | (98,492) | - | (98,492) | - | - | 696,234,237 | - | (98,492) | (98,492) |
| 9/7/2007 | W/H TAX DIV BA | (12,513) | - | (12,513) | - | - | 696,221,724 | - | (12,513) | (12,513) |
| 9/10/2007 | W/H TAX DIV CVX | (59,614) | - | (59,614) | - | - | 696,162,110 | - | (59,614) | (59,614) |
| 9/10/2007 | W/H TAX DIV UTX | (15,730) | - | (15,730) | - | - | 696,146,380 | - | (15,730) | (15,730) |

MADC1345_00000872

BLMIS ACCOUNT NO. 1FN061 - KINGATE GLOBAL FUND LTD C/O BANK OF BERMUDA LTD A/C/F KINGATE GLOBAL FUND

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Transaction Amount Reported in Customer Statement | | | | | | Preference Period Initial | Two Year Initial | Six Year Initial |
| Date | Transaction Description | | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | Transfers | Transfers | Transfers |
| 9/10/2007 | W/H TAX DIV IBM | (26,813) | - | (26,813) | - | - | 696,119,567 | - | (26,813) | (26,813) |
| 9/10/2007 | W/H TAX DIV XOM | (95,409) | - | (95,409) | - | - | 696,024,159 | - | (95,409) | (95,409) |
| 9/13/2007 | W/H TAX DIV MSFT | (40,666) | - | (40,666) | - | - | 695,983,492 | - | (40,666) | (40,666) |
| 9/14/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (21) | - | (21) | - | - | 695,983,472 | - | (21) | (21) |
| 9/18/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 695,983,470 | - | (2) | (2) |
| 9/26/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (16) | - | (16) | - | - | 695,983,454 | - | (16) | (16) |
| 10/1/2007 | W/H TAX DIV KO | (30,374) | - | (30,374) | - | - | 695,953,081 | - | (30,374) | (30,374) |
| 10/10/2007 | W/H TAX DIV MO | (70,191) | - | (70,191) | - | - | 695,882,890 | - | (70,191) | (70,191) |
| 10/25/2007 | W/H TAX DIV GE | (185,364) | - | (185,364) | - | - | 695,697,526 | - | (185,364) | (185,364) |
| 10/31/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (41) | - | (41) | - | - | 695,697,484 | - | (41) | (41) |
| 11/7/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (6) | - | (6) | - | - | 695,697,479 | - | (6) | (6) |
| 11/13/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (16) | - | (16) | - | - | 695,697,462 | - | (16) | (16) |
| 11/15/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (6) | - | (6) | - | - | 695,697,457 | - | (6) | (6) |
| 11/21/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 695,697,456 | - | (1) | (1) |
| 11/21/2007 | W/H TAX DIV C | (84,155) | - | (84,155) | - | - | 695,613,301 | - | (84,155) | (84,155) |
| 11/21/2007 | W/H TAX DIV MER | (9,917) | - | (9,917) | - | - | 695,603,383 | - | (9,917) | (9,917) |
| 11/30/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (8) | - | (8) | - | - | 695,603,375 | - | (8) | (8) |
| 12/3/2007 | W/H TAX DIV COP | (20,911) | - | (20,911) | - | - | 695,582,464 | - | (20,911) | (20,911) |
| 12/3/2007 | W/H TAX DIV MCD | (82,058) | - | (82,058) | - | - | 695,500,406 | - | (82,058) | (82,058) |
| 12/10/2007 | W/H TAX DIV CVX | (56,136) | - | (56,136) | - | - | 695,444,270 | - | (56,136) | (56,136) |
| 12/10/2007 | W/H TAX DIV UTX | (14,813) | - | (14,813) | - | - | 695,429,457 | - | (14,813) | (14,813) |
| 12/10/2007 | W/H TAX DIV EXC | (12,961) | - | (12,961) | - | - | 695,416,496 | - | (12,961) | (12,961) |
| 12/11/2007 | W/H TAX DIV JNJ | (106,156) | - | (106,156) | - | - | 695,310,341 | - | (106,156) | (106,156) |
| 12/11/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (11) | - | (11) | - | - | 695,310,330 | - | (11) | (11) |
| 12/12/2007 | W/H TAX DIV MMM | (31,686) | - | (31,686) | - | - | 695,278,644 | - | (31,686) | (31,686) |
| 12/13/2007 | W/H TAX DIV MSFT | (40,734) | - | (40,734) | - | - | 695,237,910 | - | (40,734) | (40,734) |
| 12/20/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (4) | - | (4) | - | - | 695,237,906 | - | (4) | (4) |
| 12/31/2007 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (20) | - | (20) | - | - | 695,237,886 | - | (20) | (20) |
| 1/2/2008 | W/H TAX DIV HPQ | (6,141) | - | (6,141) | - | - | 695,231,745 | - | (6,141) | (6,141) |
| 1/2/2008 | W/H TAX DIV WMT | (15,681) | - | (15,681) | - | - | 695,216,064 | - | (15,681) | (15,681) |
| 1/3/2008 | W/H TAX DIV UPS | (19,441) | - | (19,441) | - | - | 695,196,623 | - | (19,441) | (19,441) |
| 1/28/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (4) | - | (4) | - | - | 695,196,619 | - | (4) | (4) |
| 2/20/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (19) | - | (19) | - | - | 695,196,600 | - | (19) | (19) |
| 2/22/2008 | W/H TAX DIV C | (92,581) | - | (92,581) | - | - | 695,104,019 | - | (92,581) | (92,581) |
| 2/28/2008 | W/H TAX DIV GS | (7,501) | - | (7,501) | - | - | 695,096,518 | - | (7,501) | (7,501) |
| 3/3/2008 | W/H TAX DIV INTC | (43,036) | - | (43,036) | - | - | 695,053,482 | - | (43,036) | (43,036) |
| 3/3/2008 | W/H TAX DIV COP | (42,808) | - | (42,808) | - | - | 695,010,674 | - | (42,808) | (42,808) |
| 3/3/2008 | W/H TAX DIV WFC | (61,453) | - | (61,453) | - | - | 694,949,221 | - | (61,453) | (61,453) |
| 3/4/2008 | W/H TAX DIV UPS | (26,521) | - | (26,521) | - | - | 694,922,701 | - | (26,521) | (26,521) |
| 3/4/2008 | W/H TAX DIV PFE | (123,441) | - | (123,441) | - | - | 694,799,259 | - | (123,441) | (123,441) |
| 3/5/2008 | W/H TAX DIV MER | (16,877) | - | (16,877) | - | - | 694,782,382 | - | (16,877) | (16,877) |
| 3/7/2008 | W/H TAX DIV BA | (17,145) | - | (17,145) | - | - | 694,765,238 | - | (17,145) | (17,145) |
| 3/10/2008 | W/H TAX DIV CVX | (71,472) | - | (71,472) | - | - | 694,693,766 | - | (71,472) | (71,472) |
| 3/10/2008 | W/H TAX DIV IBM | (32,146) | - | (32,146) | - | - | 694,661,620 | - | (32,146) | (32,146) |
| 3/10/2008 | W/H TAX DIV XOM | (112,512) | - | (112,512) | - | - | 694,549,108 | - | (112,512) | (112,512) |
| 3/10/2008 | W/H TAX DIV UTX | (18,859) | - | (18,859) | - | - | 694,530,249 | - | (18,859) | (18,859) |
| 3/10/2008 | W/H TAX DIV EXC | (18,752) | - | (18,752) | - | - | 694,511,497 | - | (18,752) | (18,752) |
| 3/11/2008 | W/H TAX DIV JNJ | (68,927) | - | (68,927) | - | - | 694,442,570 | - | (68,927) | (68,927) |
| 3/12/2008 | W/H TAX DIV MMM | (21,431) | - | (21,431) | - | - | 694,421,139 | - | (21,431) | (21,431) |
| 3/13/2008 | W/H TAX DIV MSFT | (51,273) | - | (51,273) | - | - | 694,369,866 | - | (51,273) | (51,273) |
| 3/17/2008 | W/H TAX DIV TWX | (13,059) | - | (13,059) | - | - | 694,356,807 | - | (13,059) | (13,059) |
| 3/17/2008 | W/H TAX DIV WB | (75,436) | - | (75,436) | - | - | 694,281,370 | - | (75,436) | (75,436) |
| 3/17/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (19) | - | (19) | - | - | 694,281,352 | - | (19) | (19) |
| 3/17/2008 | W/H TAX DIV MCD | (26,119) | - | (26,119) | - | - | 694,255,233 | - | (26,119) | (26,119) |
| 3/19/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 694,255,232 | - | (0) | (0) |
| 3/24/2008 | W/H TAX DIV AIG | (30,003) | - | (30,003) | - | - | 694,225,229 | - | (30,003) | (30,003) |
| 3/27/2008 | W/H TAX DIV HD | (21,699) | - | (21,699) | - | - | 694,203,531 | - | (21,699) | (21,699) |
| 3/28/2008 | W/H TAX DIV BAC | (164,589) | - | (164,589) | - | - | 694,038,942 | - | (164,589) | (164,589) |
| 3/31/2008 | W/H TAX DIV PEP | (34,155) | - | (34,155) | - | - | 694,004,787 | - | (34,155) | (34,155) |
| 4/1/2008 | W/H TAX DIV MRK | (48,862) | - | (48,862) | - | - | 693,955,925 | - | (48,862) | (48,862) |
| 4/1/2008 | W/H TAX DIV KO | (44,790) | - | (44,790) | - | - | 693,911,134 | - | (44,790) | (44,790) |
| 4/2/2008 | W/H TAX DIV HPQ | (12,001) | - | (12,001) | - | - | 693,899,133 | - | (12,001) | (12,001) |
| 4/4/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (4) | - | (4) | - | - | 693,899,129 | - | (4) | (4) |
| 4/4/2008 | W/H TAX DIV KFT | (24,592) | - | (24,592) | - | - | 693,874,537 | - | (24,592) | (24,592) |
| 4/7/2008 | W/H TAX DIV WMT | (31,811) | - | (31,811) | - | - | 693,842,726 | - | (31,811) | (31,811) |

MADC1345_00000873

Exhibit L

BLMIS ACCOUNT NO. 1FN061 - KINGATE GLOBAL FUND LTD C/O BANK OF BERMUDA LTD A/C/F KINGATE GLOBAL FUND

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | Preference Period Initial Transfers | Two Year Initial Transfers | Six Year Initial Transfers |
| Date | Transaction Description | | | | | | | | | |
| 4/23/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (7) | - | (7) | - | - | 693,842,719 | - | (7) | (7) |
| 4/25/2008 | W/H TAX DIV MDT | (7,104) | - | (7,104) | - | - | 693,835,615 | - | (7,104) | (7,104) |
| 4/25/2008 | W/H TAX DIV GE | (181,037) | - | (181,037) | - | - | 693,654,578 | - | (181,037) | (181,037) |
| 4/30/2008 | W/H TAX DIV MS | (14,065) | - | (14,065) | - | - | 693,640,513 | - | (14,065) | (14,065) |
| 4/30/2008 | W/H TAX DIV JPM | (64,786) | - | (64,786) | - | - | 693,575,727 | - | (64,786) | (64,786) |
| 5/1/2008 | W/H TAX DIV VZ | (63,128) | - | (63,128) | - | - | 693,512,599 | - | (63,128) | (63,128) |
| 5/1/2008 | W/H TAX DIV T | (123,131) | - | (123,131) | - | - | 693,389,468 | - | (123,131) | (123,131) |
| 5/2/2008 | W/H TAX DIV CVS | (4,546) | - | (4,546) | - | - | 693,384,922 | - | (4,546) | (4,546) |
| 5/2/2008 | W/H TAX DIV BK | (13,639) | - | (13,639) | - | - | 693,371,283 | - | (13,639) | (13,639) |
| 5/9/2008 | W/H TAX DIV AXP | (10,229) | - | (10,229) | - | - | 693,361,054 | - | (10,229) | (10,229) |
| 5/15/2008 | W/H TAX DIV ABT | (28,983) | - | (28,983) | - | - | 693,332,070 | - | (28,983) | (28,983) |
| 5/15/2008 | W/H TAX DIV PG | (64,407) | - | (64,407) | - | - | 693,267,664 | - | (64,407) | (64,407) |
| 5/20/2008 | W/H TAX DIV CAT | (11,934) | - | (11,934) | - | - | 693,255,729 | - | (11,934) | (11,934) |
| 5/23/2008 | W/H TAX DIV C | (81,835) | - | (81,835) | - | - | 693,173,895 | - | (81,835) | (81,835) |
| 5/28/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (14) | - | (14) | - | - | 693,173,880 | - | (14) | (14) |
| 5/29/2008 | W/H TAX DIV GS | (6,630) | - | (6,630) | - | - | 693,167,250 | - | (6,630) | (6,630) |
| 6/2/2008 | W/H TAX DIV INTC | (41,770) | - | (41,770) | - | - | 693,125,480 | - | (41,770) | (41,770) |
| 6/2/2008 | W/H TAX DIV WFC | (95,433) | - | (95,433) | - | - | 693,030,047 | - | (95,433) | (95,433) |
| 6/2/2008 | W/H TAX DIV WMT | (53,617) | - | (53,617) | - | - | 692,976,430 | - | (53,617) | (53,617) |
| 6/2/2008 | W/H TAX DIV COP | (23,588) | - | (23,588) | - | - | 692,952,842 | - | (23,588) | (23,588) |
| 6/3/2008 | W/H TAX DIV PFE | (205,611) | - | (205,611) | - | - | 692,747,231 | - | (205,611) | (205,611) |
| 6/3/2008 | W/H TAX DIV UPS | (42,980) | - | (42,980) | - | - | 692,704,251 | - | (42,980) | (42,980) |
| 6/6/2008 | W/H TAX DIV BA | (27,785) | - | (27,785) | - | - | 692,676,466 | - | (27,785) | (27,785) |
| 6/10/2008 | W/H TAX DIV CVX | (129,809) | - | (129,809) | - | - | 692,546,656 | - | (129,809) | (129,809) |
| 6/10/2008 | W/H TAX DIV JNJ | (42,098) | - | (42,098) | - | - | 692,504,558 | - | (42,098) | (42,098) |
| 6/10/2008 | W/H TAX DIV IBM | (65,122) | - | (65,122) | - | - | 692,439,436 | - | (65,122) | (65,122) |
| 6/10/2008 | W/H TAX DIV XOM | (203,338) | - | (203,338) | - | - | 692,236,099 | - | (203,338) | (203,338) |
| 6/10/2008 | W/H TAX DIV UTX | (30,564) | - | (30,564) | - | - | 692,205,535 | - | (30,564) | (30,564) |
| 6/10/2008 | W/H TAX DIV EXC | (30,390) | - | (30,390) | - | - | 692,175,145 | - | (30,390) | (30,390) |
| 6/12/2008 | W/H TAX DIV MSFT | (34,732) | - | (34,732) | - | - | 692,140,413 | - | (34,732) | (34,732) |
| 7/18/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (25) | - | (25) | - | - | 692,057,293 | - | (25) | (25) |
| 7/18/2008 | CHECK WIRE | (50,000,000) | - | (50,000,000) | - | - | 642,057,293 | - | (50,000,000) | (50,000,000) |
| 7/21/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 642,057,293 | - | (0) | (0) |
| 7/23/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 642,057,293 | - | (0) | (0) |
| 8/1/2008 | W/H TAX DIV CVS | (6,593) | - | (6,593) | - | - | 642,050,700 | - | (6,593) | (6,593) |
| 8/8/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 642,050,698 | - | (2) | (2) |
| 8/13/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 642,050,698 | - | (0) | (0) |
| 8/20/2008 | W/H TAX DIV CAT | (17,557) | - | (17,557) | - | - | 642,033,141 | - | (17,557) | (17,557) |
| 8/22/2008 | W/H TAX DIV C | (112,748) | - | (112,748) | - | - | 641,920,393 | - | (112,748) | (112,748) |
| 8/28/2008 | W/H TAX DIV GS | (8,361) | - | (8,361) | - | - | 641,912,033 | - | (8,361) | (8,361) |
| 10/2/2008 | W/H TAX DIV MSFT | (83,356) | - | (83,356) | - | - | 641,828,677 | (83,356) | (83,356) | (83,356) |
| 10/2/2008 | W/H TAX DIV WMT | (51,309) | - | (51,309) | - | - | 641,777,368 | (51,309) | (51,309) | (51,309) |
| 10/2/2008 | W/H TAX DIV PFE | (141,412) | - | (141,412) | - | - | 641,635,956 | (141,412) | (141,412) | (141,412) |
| 10/2/2008 | W/H TAX DIV BUD | (17,677) | - | (17,677) | - | - | 641,618,279 | (17,677) | (17,677) | (17,677) |
| 10/2/2008 | W/H TAX DIV HD | (11,413) | - | (11,413) | - | - | 641,606,866 | (11,413) | (11,413) | (11,413) |
| 10/2/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (12) | - | (12) | - | - | 641,606,854 | (12) | (12) | (12) |
| 10/2/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (16) | - | (16) | - | - | 641,606,838 | (16) | (16) | (16) |
| 10/2/2008 | W/H TAX DIV UTX | (30,418) | - | (30,418) | - | - | 641,576,420 | (30,418) | (30,418) | (30,418) |
| 10/2/2008 | W/H TAX DIV BAC | (268,884) | - | (268,884) | - | - | 641,307,536 | (268,884) | (268,884) | (268,884) |
| 10/2/2008 | W/H TAX DIV PEP | (62,435) | - | (62,435) | - | - | 641,245,101 | (62,435) | (62,435) | (62,435) |
| 10/2/2008 | W/H TAX DIV UPS | (42,775) | - | (42,775) | - | - | 641,202,325 | (42,775) | (42,775) | (42,775) |
| 10/2/2008 | W/H TAX DIV COP | (47,715) | - | (47,715) | - | - | 641,154,610 | (47,715) | (47,715) | (47,715) |
| 10/2/2008 | W/H TAX DIV WFC | (62,943) | - | (62,943) | - | - | 641,091,668 | (62,943) | (62,943) | (62,943) |
| 10/2/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 641,091,666 | (2) | (2) | (2) |
| 10/2/2008 | W/H TAX DIV JNJ | (122,000) | - | (122,000) | - | - | 640,969,666 | (122,000) | (122,000) | (122,000) |
| 10/2/2008 | W/H TAX DIV MMM | (34,566) | - | (34,566) | - | - | 640,935,100 | (34,566) | (34,566) | (34,566) |
| 10/2/2008 | W/H TAX DIV TWX | (21,397) | - | (21,397) | - | - | 640,913,703 | (21,397) | (21,397) | (21,397) |
| 10/2/2008 | W/H TAX DIV EXC | (30,245) | - | (30,245) | - | - | 640,883,457 | (30,245) | (30,245) | (30,245) |
| 10/2/2008 | W/H TAX DIV QCOM | (7,689) | - | (7,689) | - | - | 640,875,769 | (7,689) | (7,689) | (7,689) |
| 10/2/2008 | W/H TAX DIV CVX | (127,455) | - | (127,455) | - | - | 640,748,313 | (127,455) | (127,455) | (127,455) |
| 10/2/2008 | W/H TAX DIV AIG | (55,720) | - | (55,720) | - | - | 640,692,593 | (55,720) | (55,720) | (55,720) |
| 10/2/2008 | W/H TAX DIV IBM | (44,789) | - | (44,789) | - | - | 640,647,805 | (44,789) | (44,789) | (44,789) |
| 10/2/2008 | W/H TAX DIV XOM | (199,415) | - | (199,415) | - | - | 640,448,390 | (199,415) | (199,415) | (199,415) |
| 10/2/2008 | W/H TAX DIV MCD | (39,888) | - | (39,888) | - | - | 640,408,502 | (39,888) | (39,888) | (39,888) |

MADC1345_00000874

Exhibit L

BLMIS ACCOUNT NO. 1FN061 - KINGATE GLOBAL FUND LTD. C/O BANK OF BERMUDA LTD A/C/F KINGATE GLOBAL FUND

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 | Column 8 | Column 9 | Column 10 | Column 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Transaction Description | Transaction Amount Reported in Customer Statement | Cash Deposits | Cash Withdrawals | Transfers of Principal In | Transfers of Principal Out | Balance of Principal | Preference Period Initial Transfers | Two Year Initial Transfers | Six Year Initial Transfers |
| 10/2/2008 | W/H TAX DIV BA | (19,110) | - | (19,110) | - | - | 640,389,392 | (19,110) | (19,110) | (19,110) |
| 10/2/2008 | W/H TAX DIV INTC | (51,835) | - | (51,835) | - | - | 640,337,557 | (51,835) | (51,835) | (51,835) |
| 10/17/2008 | CHECK WIRE | (50,000,000) | - | (50,000,000) | - | - | 590,337,557 | (50,000,000) | (50,000,000) | (50,000,000) |
| 11/4/2008 | W/H TAX DIV PM | (34,345) | - | (34,345) | - | - | 590,303,212 | (34,345) | (34,345) | (34,345) |
| 11/4/2008 | W/H TAX DIV KO | (23,118) | - | (23,118) | - | - | 590,280,094 | (23,118) | (23,118) | (23,118) |
| 11/4/2008 | W/H TAX DIV MRK | (75,527) | - | (75,527) | - | - | 590,204,568 | (75,527) | (75,527) | (75,527) |
| 11/4/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (14,065) | - | (14,065) | - | - | 590,190,503 | (14,065) | (14,065) | (14,065) |
| 11/4/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (2) | - | (2) | - | - | 590,190,500 | (2) | (2) | (2) |
| 11/4/2008 | W/H TAX DIV BAX | (13,157) | - | (13,157) | - | - | 590,177,343 | (13,157) | (13,157) | (13,157) |
| 11/4/2008 | W/H TAX DIV HPQ | (18,452) | - | (18,452) | - | - | 590,158,891 | (18,452) | (18,452) | (18,452) |
| 11/28/2008 | CHECK WIRE | (50,000,000) | - | (50,000,000) | - | - | 540,158,891 | (50,000,000) | (50,000,000) | (50,000,000) |
| 12/3/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 540,158,890 | (1) | (1) | (1) |
| 12/3/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (0) | - | (0) | - | - | 540,158,889 | (0) | (0) | (0) |
| 12/3/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 540,158,888 | (1) | (1) | (1) |
| 12/3/2008 | FIDELITY SPARTAN  U S TREASURY MONEY MARKET | (1) | - | (1) | - | - | 540,158,888 | (1) | (1) | (1) |
| | **Total:** | **$ 979,860,000** | **$ (437,501,112)** | **$ 8,000,000** | **$ (10,200,000)** | **$ 540,158,888** | | **$ (101,753,145)** | **$ (163,447,509)** | **$ (398,704,065)** |

MADC1345_00000875

**SUBSEQUENT TRANSFERS FROM KINGATE TO THE DEFENDANT**

| Column 1 | Column 2 | Column 3 |
|----------|----------|----------|
| **Date** | **Transferee** | **Amount** |
| 9/1/2003 | Bank Leu [1] | (194,120) |
| 3/1/2004 | Bank Leu | (1,070,599) |
| 9/1/2005 | Bank Leu | (970,253) |
| **Total:** | | **$ (2,234,972)** |

[1] All of the transfers to Bank Leu were also to, or for the benefit of, the Defendant.  See Complaint ¶ 68.

MADC1345_00000876