**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff, | Adv. Pro. No. 10-05286 (CGM) |
| Plaintiff, | |
| v. | |
| LEGACY CAPITAL LTD. and KHRONOS LLC, | |
| Defendants. | |

## AMENDED ANSWER OF LEGACY CAPITAL LTD. TO AMENDED COMPLAINT

Legacy Capital Ltd. ("Legacy"), by its undersigned counsel, hereby files this amended answer[1] to the amended complaint, dated July 2, 2015 (the "Amended Complaint"), of Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa-*lll* ("SIPA"), and the substantively consolidated estate of Bernard L. Madoff (individually "Madoff," and collectively with BLMIS, the "Debtors"),[2] as follows:

1. Legacy lacks knowledge and information sufficient to form a belief as to what "[t]he world now knows" about the BLMIS fraud. Legacy admits that, at some points in time, Rafael Mayer was an officer of Legacy and a managing member of Khronos LLC ("Khronos"). Legacy further admits that Rafael Mayer sat on a committee for Meritage Fund Ltd., and that in 2003, Renaissance Technologies,[3] LLC ("Renaissance") conducted an analysis of BLMIS's strategy. Legacy otherwise denies the allegations contained in paragraph 1 of the Amended Complaint.

2. Legacy admits that, prior to the Filing Date, BLMIS transferred $213,180,068 from the Legacy Capital Account – $126,180,068 to Legacy and $87,000,000 to BNP Paribas, and Khronos received accounting services fees from Legacy. Legacy otherwise denies the allegations contained in paragraph 2 of the Amended Complaint.

---

[1] This amended answer supersedes the prior answer filed by Legacy on May 16, 2016 (ECF Doc. No. 139), which did not address allegations in the Amended Complaint concerning Counts that, at the time the initial answer was filed, had been dismissed from the action pursuant to the Bankruptcy Court's April 12, 2016 Order Granting Legacy Capital Ltd.'s and Khronos LLC's Motions to Dismiss the Amended Complaint Under Bankruptcy Rule 7012(b) and Federal Rule of Civil Procedure 12(b)(6) (ECF Doc. No. 137).

[2] Capitalized terms not otherwise defined herein have the meanings ascribed thereto in the Amended Complaint.

[3] All claims against Khronos have been dismissed with prejudice and are no longer part of this action. ECF Doc. No. 253.

3.  Legacy states that paragraph 3 of the Amended Complaint contains legal conclusions to which no responsive pleading is required, and otherwise admits the allegations contained in paragraph 3 of the Amended Complaint.

4.  Legacy states that paragraph 4 of the Amended Complaint contains legal conclusions to which no responsive pleading is required, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 4 of the Amended Complaint.  Legacy does not consent to the entry of final orders or judgment by this Court.

5.  Legacy states that paragraph 5 of the Amended Complaint contains legal conclusions to which no responsive pleading is required.

6.  Legacy states that paragraph 6 of the Amended Complaint contains legal conclusions to which no responsive pleading is required, but admits that this adversary proceeding was originally brought under the statutes cited in paragraph 6 of the Amended Complaint, and denies that any such statutes are currently relevant other than 11 U.S.C. § 548(a)(1)(A).

7.  Admits the allegations contained in paragraph 7 of the Amended Complaint.

8.  Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8 of the Amended Complaint.

9.  Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of the Amended Complaint.

10.  Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 of the Amended Complaint.

11.  Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11 of the Amended Complaint.

12.  Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 of the Amended Complaint.

13.  Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of the Amended Complaint.

14.  Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14 of the Amended Complaint.

15.  Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15 of the Amended Complaint.

16.  Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of the Amended Complaint.

17.  Legacy states that paragraph 17 of the Amended Complaint contains legal conclusions to which no responsive pleading is required.

18.  Legacy states that paragraph 18 of the Amended Complaint contains legal conclusions to which no responsive pleading is required.

19.  Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 of the Amended Complaint.

20.  Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20 of the Amended Complaint.

21.  Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 of the Amended Complaint.

22.  Legacy denies that there is no record of BLMIS clearing a single purchase or sale of securities at the Depository Trust & Clearing Corporation, and denies having knowledge or

information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 22 of the Amended Complaint.

23.  Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of the Amended Complaint.

24.  Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of the Amended Complaint.

25.  Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25 of the Amended Complaint.

26.  Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 26 of the Amended Complaint.

27.  Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 of the Amended Complaint.

28.  Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28 of the Amended Complaint.

29.  Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29 of the Amended Complaint.

30.  Paragraph 30 contains legal conclusions to which no response is required.  To the extent a response is required, Legacy admits that Khronos is a New York limited liability company, and otherwise denies the remaining allegations contained in paragraph 30 of the Amended Complaint.

31.  Legacy admits that Khronos was co-founded by Rafael Mayer and David Mayer, that Rafael Mayer and David Mayer are the sons of Isaac Jimmy Mayer, and that there was a period

when Rafael Mayer and David Mayer were managing members of Khronos.  Legacy otherwise denies the remaining allegations contained in paragraph 31 of the Amended Complaint.

32.  Admits the allegations contained in paragraph 32 of the Amended Complaint.

33.  Legacy admits that it commenced operations in September 2000 and was a single purpose vehicle, which invested solely with BLMIS through Account No. 1FR071.  Legacy further admits that, at certain points in time, Rafael Mayer was an officer of Legacy, and Herbert M. Selzer was an officer of Legacy, and otherwise states that paragraph 33 of the Amended Complaint contains legal conclusions to which no responsive pleading is required, and denies the remaining allegations in paragraph 33 of the Amended Complaint.

34.  Admits the allegations contained in paragraph 34 of the Amended Complaint.

35.  Legacy admits that Khronos provided accounting services to Legacy and that, at all times relevant to this complaint, Khronos also acted as a service provider to Montpellier Resources Ltd (n/k/a Khronos Group Ltd.) and other funds.  Legacy otherwise denies the remaining allegations contained in paragraph 35 of the Amended Complaint.

36.  The allegations contained in paragraph 36 state legal conclusions to which no response is required.  To the extent a response is required, Legacy admits that Khronos is a New York limited liability company.

37.  Admits the allegations contained in paragraph 37 of the Amended Complaint.

38.  Legacy admits that Renaissance is a company founded by James Simons and that Isaac Jimmy Mayer and James Simons are longtime friends, and otherwise denies the allegations contained in paragraph 38 of the Amended Complaint.

39.   Legacy admits that Renaissance's Meritage fund invested in Legacy through a swap agreement with HCH Capital Ltd. f/k/a HCH Management Company Ltd. ("HCH Capital"), and otherwise denies the allegations contained in paragraph 39 of the Amended Complaint.

40.   Legacy admits that Meritage's investment activities were reviewed by a committee (the "Meritage Committee") that included James Simons, Paul Broder, Peter Brown, Henry Laufer, and Nathaniel Simons, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 40 of the Amended Complaint.

41.   Legacy admits that Rafael Mayer served on the Meritage Committee and attended certain Meritage Committee meetings, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 41 of the Amended Complaint.

42.   Denies the allegations contained in paragraph 42 of the Amended Complaint.

43.   Denies the allegations contained in paragraph 43 of the Amended Complaint.

44.   Denies the allegations contained in paragraph 44 of the Amended Complaint.

45.   Legacy denies that individuals at Renaissance expressed concerns about "BLMIS's consistent positive returns despite increased market volatility caused by the Internet stock market bubble burst and the contraction of the market due to economic concerns," and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 45 of the Amended Complaint.

46.   Legacy admits that in 2003, Renaissance analyzed BLMIS's trading activity utilizing BLMIS account statements provided by Legacy and publicly available financial information "to see if [Renaissance could] benefit from some analogous strategy," respectfully refers the Court to

the Renaissance Proposal (as defined in paragraph 47 below) for a complete and accurate statement of its contents, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 46 of the Amended Complaint.

47.  Legacy admits that the results of Renaissance's analysis were summarized in a document titled "Madoff-Proposal" (the "Renaissance Proposal"), respectfully refers the Court to the Renaissance Proposal for a complete and accurate statement of its contents, and otherwise denies the allegations contained in paragraph 47 of the Amended Complaint.

48.  Legacy admits that there was a November 2003 email exchange among the members of the Meritage Committee regarding the BLMIS investment, respectfully refers the Court to the email exchange for a complete and accurate statement of its contents, and otherwise denies the allegations contained in paragraph 48 of the Amended Complaint.

49.  In response to the allegations contained in paragraph 49 of the Amended Complaint, Legacy states that there was a November 2003 email exchange among the members of the Meritage Committee regarding the BLMIS investment, and respectfully refers the Court to the email exchange for a complete and accurate statement of its contents.

50.  In response to the allegations contained in paragraph 50 of the Amended Complaint, Legacy states that there was a November 2003 email exchange among the members of the Meritage Committee regarding the BLMIS investment, and respectfully refers the Court to the email exchange for a complete and accurate statement of its contents.

51.  In response to the allegations contained in paragraph 51 of the Amended Complaint, Legacy states that there was a November 2003 email exchange among the members of the

Meritage Committee regarding the BLMIS investment, and respectfully refers the Court to the email exchange for a complete and accurate statement of its contents.

52.  Denies the allegations contained in paragraph 52 of the Amended Complaint.

53.  Paragraph 53 contains legal conclusions to which no response is required.  To the extent a response is required, Legacy admits that Khronos provided accounting services to Legacy, and otherwise denies the remaining allegations contained in paragraph 53 of the Amended Complaint.

54.  Paragraph 54 contains legal conclusions to which no response is required.  To the extent a response is required, Legacy admits that, at some points in time, Rafael Mayer was an officer of Legacy Capital and a co-founder and managing member of Khronos, and otherwise denies the remaining allegations contained in paragraph 54 of the Amended Complaint.

55.  Denies the allegations contained in paragraph 55 of the Amended Complaint.

56.  Legacy admits that BLMIS purported to use an SSC strategy and respectfully refers the Court to the Legacy BLMIS account statements for a complete and accurate statement of their contents, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 56 of the Amended Complaint.

57.  In response to the allegations contained in paragraph 57 of the Amended Complaint, Legacy respectfully refers the Court to the Legacy BLMIS statements for a complete and accurate statement of their contents, and otherwise denies the allegations contained in paragraph 57 of the Amended Complaint.

58.  In response to the allegations contained in paragraph 58 of the Amended Complaint, Legacy respectfully refers the Court to the Renaissance Proposal for a complete and accurate statement of its contents, and otherwise denies having knowledge or information sufficient to

form a belief as to the truth of the allegations contained in paragraph 58 of the Amended

Complaint.

59.  In response to the allegations contained in paragraph 59 of the Amended Complaint,

Legacy respectfully refers the Court to the December 11, 2003 email exchange between Rafael

Mayer and Paul Broder for a complete and accurate statements of its contents, and otherwise

denies the allegations contained in paragraph 59 of the Amended Complaint.

60.  In response to the allegations contained in paragraph 60 of the Amended Complaint,

Legacy respectfully refers the Court to the December 11, 2003 email exchange between Rafael

Mayer and Paul Broder for a complete and accurate statement of its contents, and otherwise

denies the allegations contained in paragraph 60 of the Amended Complaint.

61.  In response to the allegations contained in paragraph 61 of the Amended Complaint,

Legacy respectfully refers the Court to the Renaissance Proposal for a complete and accurate

statement of its contents, and otherwise denies the allegations contained in paragraph 61 of the

Amended Complaint.

62.  In response to the allegations contained in paragraph 62 of the Amended Complaint,

Legacy respectfully refers the Court to the November 21, 2003 email exchange among the

members of the Meritage Committee, and otherwise denies the allegations contained in

paragraph 62 of the Amended Complaint.

63.  In response to the allegations contained in paragraph 63 of the Amended Complaint,

Legacy respectfully refers the Court to the November 21, 2003 email exchange among the

members of the Meritage Committee, and otherwise denies the allegations contained in

paragraph 63 of the Amended Complaint.

64.  In response to the allegations contained in paragraph 64 of the Amended Complaint, Legacy respectfully refers the Court to the November 21, 2003 email exchange among the members of the Meritage Committee, and otherwise denies the allegations contained in paragraph 64 of the Amended Complaint.

65.  In response to the allegations contained in paragraph 65 of the Amended Complaint, Legacy respectfully refers the Court to the Legacy BLMIS statements for a complete and accurate statement of their contents, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 65 of the Amended Complaint.

66.  In response to the allegations contained in paragraph 66 of the Amended Complaint, Legacy respectfully refers the Court to the Legacy BLMIS statements for a complete and accurate statement of their contents, and otherwise denies the allegations contained in paragraph 66 of the Amended Complaint.

67.  In response to the allegations contained in paragraph 67 of the Amended Complaint, Legacy respectfully refers the Court to the Legacy BLMIS statement for a complete and accurate statement of its contents, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 67 of the Amended Complaint.

68.  In response to the allegations contained in paragraph 68 of the Amended Complaint, Legacy respectfully refers the Court to the Legacy BLMIS account statement for a complete and accurate statement of its contents, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 68 of the Amended Complaint.

69. Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 69 of the Amended Complaint.

70. Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 70 of the Amended Complaint.

71. Denies the allegations contained in paragraph 71 of the Amended Complaint.

72. Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 72 of the Amended Complaint.

73. Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 73 of the Amended Complaint.

74. In response to the allegations contained in paragraph 74 of the Amended Complaint, Legacy respectfully refers the Court to the Renaissance Proposal for a complete and accurate statement of its contents, and otherwise denies the allegations contained in paragraph 74 of the Amended Complaint.

75. In response to the allegations contained in paragraph 75 of the Amended Complaint, Legacy respectfully refers the Court to the December 11, 2003 email exchange between Rafael Mayer and Paul Broder for a complete and accurate statement of its contents, and otherwise denies the allegations contained in paragraph 75 of the Amended Complaint.

76. In response to the allegations contained in paragraph 76 of the Amended Complaint, Legacy respectfully refers the Court to the transcript of Laufer's testimony before the SEC for a complete and accurate statement of its contents, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 76 of the Amended Complaint.

77.  In response to the allegations contained in paragraph 77 of the Amended Complaint, Legacy respectfully refers the Court to the transcript of Laufer's testimony before the SEC for a complete and accurate statement of its contents, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 77 of the Amended Complaint.

78.  In response to the allegations contained in paragraph 78 of the Amended Complaint, Legacy respectfully refers the Court to the transcript of Broder's testimony before the SEC for a complete and accurate statement of its contents, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 78 of the Amended Complaint.

79.  In response to the allegations contained in paragraph 79 of the Amended Complaint, Legacy respectfully refers the Court to the Legacy BLMIS statements for a complete and accurate statement of their contents, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 79 of the Amended Complaint.

80.  Denies the allegations contained in paragraph 80 of the Amended Complaint.

81.  Denies the allegations contained in paragraph 81 of the Amended Complaint.

82.  Denies that it was customary for a broker dealer to charge management and performance fees based on AUM and profits, respectfully refers the Court to the Legacy BLMIS statements for a complete and accurate statement of their contents, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 82 of the Amended Complaint.

83.  In response to the allegations contained in paragraph 83 of the Amended Complaint, Legacy respectfully refers the Court to the Legacy BLMIS trade confirmations for a complete and accurate statement of their contents, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 83 of the Amended Complaint.

84.  In response to the allegations contained in paragraph 84 of the Amended Complaint, Legacy respectfully refers the Court to the December 11, 2003 email exchange between Rafael Mayer and Paul Broder for a complete and accurate statement of its contents, and otherwise denies the allegations in paragraph 84 of the Amended Complaint.

85.  In response to the allegations contained in paragraph 85 of the Amended Complaint, Legacy respectfully refers the Court to the November 13, 2003 email exchange among the members of the Meritage Committee, and otherwise denies the allegations in paragraph 85 of the Amended Complaint.

86.  Denies the allegations contained in paragraph 86 of the Amended Complaint.

87.  Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 87 of the Amended Complaint.

88.  In response to the allegations contained in paragraph 88 of the Amended Complaint, Legacy respectfully refers the Court to the Legacy BLMIS statements for a complete and accurate statement of their contents, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 88 of the Amended Complaint.

89.  Denies the allegations contained in paragraph 89 of the Amended Complaint.

90. Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 90 of the Amended Complaint.

91. In response to the allegations contained in paragraph 91 of the Amended Complaint, Legacy respectfully refers the Court to the December 11, 2003 email exchange between Rafael Mayer and Paul Broder for a complete and accurate statement of its contents, and otherwise denies the allegations in paragraph 91 of the Amended Complaint.

92. In response to the allegations contained in paragraph 92 of the Amended Complaint, Legacy respectfully refers the Court to the December 11, 2003 email exchange between Rafael Mayer and Paul Broder for a complete and accurate statement of its contents, and otherwise denies the allegations in paragraph 92 of the Amended Complaint.

93. Denies the allegations contained in paragraph 93 of the Amended Complaint.

94. Legacy admits that Madoff purported to use the SSC Strategy, and otherwise denies the truth of the allegations contained in paragraph 94 of the Amended Complaint.

95. Legacy denies the allegations in paragraph 95 of the Amended Complaint as to Legacy, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 95 of the Amended Complaint.

96. Denies the allegations contained in paragraph 96 of the Amended Complaint.

97. In response to the allegations contained in paragraph 97 of the Amended Complaint, Legacy respectfully refers the Court to the Legacy BLMIS statements for a complete and accurate statement of their contents, and otherwise denies the allegations contained in paragraph 97 of the Amended Complaint.

98. In response to the allegations contained in paragraph 98 of the Amended Complaint, Legacy respectfully refers the Court to the Legacy BLMIS statements for a complete and

accurate statement of their contents, and otherwise denies the allegations contained in paragraph 98 of the Amended Complaint.

99.  Legacy admits that Madoff told customers that he was intermittently entering and exiting the market and, when out of the market, the balance was invested in U.S. Treasury Bills, respectfully refers the Court to the Legacy BLMIS statements for a complete and accurate statement of their contents, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 99 of the Amended Complaint.

100.  Legacy respectfully refers the Court to the Renaissance Proposal for a complete and accurate statement of its contents, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 100 of the Amended Complaint.

101.  Denies the allegations contained in paragraph 101 of the Amended Complaint.

102.  Denies the allegations contained in paragraph 102 of the Amended Complaint.

103.  Legacy admits that Renaissance estimated that BLMIS had between $5 and $15 billion under management, and otherwise denies the allegations contained in paragraph 103 of the Amended Complaint.

104.  Denies the allegations contained in paragraph 104 of the Amended Complaint.

105.  In response to the allegations contained in paragraph 105 of the Amended Complaint, Legacy respectfully refers the Court to the November 2003 email exchange among the members of the Meritage Committee, and otherwise denies the allegations contained in paragraph 105 of the Amended Complaint.

106.  Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 106 of the Amended Complaint.

107.  Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 107 of the Amended Complaint.

108.  In response to the allegations contained in paragraph 108 of the Amended Complaint, Legacy respectfully refers the Court to David Friehling's guilty plea, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 108 of the Amended Complaint.

109.  Denies that information about Friehling & Horowitz's size, lack of professional qualifications, and the nature of the services they provided were readily accessible to Legacy, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 109 of the Amended Complaint.

110.  In response to the allegations contained in paragraph 110 of the Amended Complaint, Legacy respectfully refers the Court to the November 2003 email exchange among the members of the Meritage Committee for a complete and accurate statement of its contents, further notes that the email does not mention Friehling & Horowitz, and otherwise denies the allegations contained in paragraph 110 of the Amended Complaint.

111.  Legacy admits that it received trade confirmations and monthly account statements from its BLMIS account, and that, as part of the accounting services it performed on behalf of Legacy, Khronos recorded certain information reflected in the trade confirmations and account statements, and otherwise denies the allegations contained in paragraph 111 of the Amended Complaint.

112.  In response to the allegations contained in paragraph 112 of the Amended Complaint, Legacy respectfully refers the Court to Legacy's BLMIS trade confirmations, and otherwise denies the allegations contained in paragraph 112 of the Amended Complaint.

113.  In response to the allegations contained in paragraph 113 of the Amended Complaint, Legacy respectfully refers the Court to the Legacy BLMIS account statement and trade confirmation for a complete and accurate statement of their contents, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 113 of the Amended Complaint.

114.  In response to the allegations contained in paragraph 114 of the Amended Complaint, Legacy respectfully refers the Court to the Legacy BLMIS account statement and trade confirmation for a complete and accurate statement of their contents, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 114 of the Amended Complaint.

115.  Denies the allegations contained in paragraph 115 of the Amended Complaint.

116.  Legacy admits that Madoff told customers that he was intermittently entering and exiting the market and, when out of the market, the balance was invested in U.S. Treasury Bills, respectfully refers the Court to the Legacy BLMIS statements for a complete and accurate statement of their contents, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph116 of the Amended Complaint.

117.  In response to the allegations contained in paragraph 117 of the Amended Complaint, Legacy respectfully refers the Court to the Legacy BLMIS statements for a complete and accurate statement of their contents, and otherwise denies having knowledge or information

sufficient to form a belief as to the truth of the allegations contained in paragraph 117 of the Amended Complaint.

118.  In response to the allegations contained in paragraph 118 of the Amended Complaint, Legacy respectfully refers the Court to the Legacy BLMIS statements for a complete and accurate statement of their contents, admits that Khronos, as part of the accounting services it performed on behalf of Legacy,  recorded activity in Legacy's BLMIS account statements, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 118 of the Amended Complaint.

119.  Legacy admits that the simultaneous purchase of puts and sale of calls to hedge a securities position is commonly referred to as a collar and that a collar provides downside protection while limiting the upside, respectfully refers the Court to the Renaissance Proposal for a complete and accurate statement of its contents, and otherwise denies the truth of the allegations contained in paragraph 119 of the Amended Complaint.

120.  In response to the allegations contained in paragraph 120 of the Amended Complaint, Legacy respectfully refers the Court to the Legacy BLMIS statements for a complete and accurate statement of their contents, and otherwise denies the allegations contained in paragraph 120 of the Amended Complaint.

121.  In response to the allegations contained in paragraph 121 of the Amended Complaint, Legacy respectfully refers the Court to the Legacy BLMIS statement for a complete and accurate statement of its contents, and otherwise denies the truth of the allegations contained in paragraph 121 of the Amended Complaint.

122.  Denies the allegations contained in paragraph 122 of the Amended Complaint.

123.  In response to the allegations contained in paragraph 123 of the Amended Complaint, Legacy respectfully refers the Court to the Legacy BLMIS statements, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 123 of the Amended Complaint.

124.  In response to the allegations contained in paragraph 124 of the Amended Complaint, Legacy respectfully refers the Court to the Legacy BLMIS statements, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 124 of the Amended Complaint.

125.  In response to the allegations contained in paragraph 125 of the Amended Complaint, Legacy respectfully refers the Court to the Legacy BLMIS trade confirmation, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 125 of the Amended Complaint.

126.  Legacy admits that Khronos received copies of the Legacy BLMIS trade confirmations, and otherwise denies the allegations contained in paragraph 126 of the Amended Complaint.

127.  In response to the allegations contained in paragraph 127 of the Amended Complaint, Legacy respectfully refers the Court to the Legacy BLMIS statements for a complete and accurate statement of their contents, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 127 of the Amended Complaint.

128.  In response to the allegations contained in paragraph 128 of the Amended Complaint, Legacy respectfully refers the Court to the Legacy BLMIS statements for a complete and

accurate statement of their contents, and otherwise denies the allegations contained in paragraph 128 of the Amended Complaint.

129.  Denies that "it was evident" from the Legacy BLMIS statements that BLMIS was not trading in accordance with the SSC strategy, respectfully refers the Court to the Legacy BLMIS statements, and otherwise denies the truth of the allegations contained in paragraph 129 of the Amended Complaint.

130.  In response to the allegations contained in paragraph 130 of the Amended Complaint, Legacy respectfully refers the Court to the Legacy BLMIS statements for a complete and accurate statement of their contents, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 130 of the Amended Complaint.

131.  In response to the allegations contained in paragraph 131 of the Amended Complaint, Legacy respectfully refers the Court to the Legacy BLMIS statements for a complete and accurate statement of their contents, deny that Legacy Capital knew that there were 68 occasions on which any trades BLMIS purported to execute on Legacy's behalf could not have been executed, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 131 of the Amended Complaint.

132.  In response to the allegations contained in paragraph 132 of the Amended Complaint, Legacy respectfully refers the Court to the Legacy BLMIS statements for a complete and accurate statement of their contents, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 132 of the Amended Complaint.

133.  Legacy states that paragraph 133 of the Amended Complaint contains legal conclusions to which no responsive pleading is required, and otherwise denies the allegations contained in paragraph 133 of the Amended Complaint.

134.  Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 134 of the Amended Complaint.

135.  In response to the allegations contained in paragraph 135 of the Amended Complaint, Legacy respectfully refers the Court to BLMIS's marketing materials for a complete and accurate statement of their contents, and otherwise denies the remaining allegations contained in paragraph 135 of the Amended Complaint.

136.  Legacy admits that BLMIS did not provide Legacy with real-time access to their accounts and provided only printed account statements and trade confirmations, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 136 of the Amended Complaint.

137.  Denies the allegations contained in paragraph 137 of the Amended Complaint.

138.  Denies the allegations contained in paragraph 138 of the Amended Complaint.

139.  Legacy admits that it entered into a credit agreement with BNP Paribas, and otherwise denies the allegations contained in paragraph 139 of the Amended Complaint.

140.  Admits the allegations contained in paragraph 140 of the Amended Complaint.

141.  Legacy admits that as part of Legacy's repayment under its credit agreement with BNP Paribas, from September 2007 to June 2008, BLMIS transferred to BNP Paribas $87 million from the Legacy BLMIS Account, and states that the remaining allegations contained in in paragraph 141 of the Amended Complaint are legal conclusions to which no response is

required.  To the extent a response is required, Legacy denies the remaining allegations contained in paragraph 141 of the Amended Complaint.

142.  Legacy admits that, prior to the Filing Date, BLMIS transferred $213,180,068 from the Legacy Capital Account – $126,180,068 to Legacy and $87,000,000 to BNP Paribas.  Legacy further admits that $126,674,218 of the $213,180,068 that BLMIS transferred from the Legacy Capital Account constituted the return of principal. Legacy denies that the circumstances of the transfers put Legacy on notice that the transfers from BLMIS to Legacy were made for fraudulent purposes, and further states that the remainder of paragraph 142 of the Amended Complaint contains legal conclusions to which no responsive pleading is required.  To the extent a response is required, Legacy denies the remaining allegations contained in paragraph 142 of the Amended Complaint.

143.  Legacy admits that during the six years prior to the Filing Date, BLMIS transferred $212,800,000 from the Legacy Capital Account – $125,800,000 to Legacy and $87,000,000 to BNP Paribas.  Legacy further states that the six-year transfers are no longer part of this action following the Second Circuit appeal and that the remainder of paragraph 143 of the Amended Complaint contains legal conclusions to which no responsive pleading is required.  To the extent a response is required, Legacy denies the remaining allegations contained in paragraph 143 of the Amended Complaint.

144.  Legacy admits that, during the two years prior to the Filing Date, BLMIS made transfers from the Legacy Capital Account in the amount of $174,000,000, and further admits that such amount included $87,000,000 transferred directly to Legacy Capital and $87,000,000 transferred to BNP Paribas.  Legacy further states that the remainder of paragraph 144 of the Amended Complaint contains legal conclusions to which no responsive pleading is required.  To

the extent a response is required, Legacy denies the remaining allegations contained in paragraph 144 of the Amended Complaint.

145.  Denies the allegations contained in paragraph 145 of the Amended Complaint.

146.  Legacy respectfully refers the Court to Exhibit A of the Amended Complaint for a complete and accurate statement of its contents.  Legacy further states that paragraph 146 of the Amended Complaint contains legal conclusions to which no responsive pleading is required, and otherwise denies the remaining allegations contained in paragraph 146 of the Amended Complaint.

147.  Legacy states that all subsequent transfer claims against Khronos have been dismissed with prejudice and are no longer part of this action.

148.  Legacy states that all subsequent transfer claims against Khronos have been dismissed with prejudice and are no longer part of this action.

149.  Legacy states that all subsequent transfer claims against Khronos have been dismissed with prejudice and are no longer part of this action.

150.  Legacy states that all subsequent transfer claims against Khronos have been dismissed with prejudice and are no longer part of this action.

151.  Legacy states that all subsequent transfer claims against Khronos have been dismissed with prejudice and are no longer part of this action.

152.  Legacy states that all subsequent transfer claims against Khronos have been dismissed with prejudice and are no longer part of this action.

153.  Denies the allegations contained in paragraph 153 of the Amended Complaint.

154.  Legacy states that paragraph 154 of the Amended Complaint contains legal conclusions to which no responsive pleading is required, and otherwise denies the truth of the allegations contained in paragraph 154 of the Amended Complaint.

155.  Legacy states that paragraph 155 of the Amended Complaint contains legal conclusions to which no responsive pleading is required, and otherwise denies the truth of the allegations contained in paragraph 155 of the Amended Complaint.

## Count One

156.  Repeats and realleges Legacy's responses to paragraph 1 through 155 of the Amended Complaint.

157.  Legacy admits the allegations contained in paragraph 157 of the Amended Complaint.

158.  Legacy states that paragraph 158 of the Amended Complaint contains legal conclusions to which no responsive pleading is required, and otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 158 of the Amended Complaint.

159.  Denies the allegations contained in paragraph 159 of the Amended Complaint.

160.  Legacy states that paragraph 160 of the Amended Complaint contains legal conclusions to which no responsive pleading is required, and otherwise denies the allegations contained in paragraph 160 of the Amended Complaint.

161.  Legacy states that paragraph 161 of the Amended Complaint contains legal conclusions to which no responsive pleading is required, and otherwise denies the allegations contained in paragraph 161 of the Amended Complaint.

### Counts Two Through Eight

162-205.   The allegations contained in paragraphs 162 through 205 of the Amended Complaint concern Counts that have been dismissed from the action.  Therefore, Legacy is not required to respond thereto.

### AFFIRMATIVE DEFENSES

Legacy asserts the following defenses as to all claims without assuming the burden of proof or any other burden if such burdens would otherwise belong to Plaintiff.  Legacy reserves the right to assert any other defenses as discovery in this litigation proceeds and counterclaims not asserted herein of which it may become aware through discovery or other investigation as may be appropriate at a later time.

### First Defense

The Complaint fails to state a claim upon which relief can be granted.

### Second Defense

The Trustee's claims are barred to the extent that Legacy took any transfer for value, in good faith and without knowledge of the voidability of the transfer avoided.  There is no dispute that Legacy provided value for the transfers still at issue because the transfers represent the return of principal invested with BLMIS.  Based on the standard recently articulated by the Second Circuit, Legacy also received the transfers "in good faith."

The facts that Legacy actually knew at or around the time of the transfers at issue were insufficient to have put Legacy on notice that BLMIS was a Ponzi scheme, was not trading securities for managed accounts, or was insolvent.  It is apparent from relevant documents that Rafael Mayer became aware of certain concerns that BLMIS may have been "front-running," "cherry-picking trades," or taking advantage of order flow to gain an "edge" over the market.

All of these concerns necessarily rest on the assumption that BLMIS was actually engaged in trading securities.

In addition, the risk that Madoff was engaged in some kind of fraudulent activity was mitigated by the fact that Madoff had been scrutinized by government and SRO regulators "up and down," there had been no meaningful litigation against him, he had been registered with the NASD since 1960, and had been diligenced by major banks with significant capital at risk. Legacy did not suspect that BLMIS was a Ponzi scheme with no "strategy" and no investments at all. Moreover, reasonably prudent investors like Legacy were not in a position to discover or determine that BLMIS was a Ponzi scheme, was not trading securities for managed accounts, or was insolvent.

Further, in response to facts about BLMIS that came to its attention, Legacy conducted a reasonably diligent investigation that did not conclude that BLMIS was a Ponzi scheme, was not trading securities for managed accounts, or was insolvent.

For example:

- Rafael Mayer, who was an officer of Legacy, served on a committee (the "Meritage Committee") that reviewed the investment activities of Meritage Fund Ltd. ("Meritage"), an investment fund of Renaissance Technologies, LLC ("Renaissance"). In 2003, Renaissance conducted an analysis of BLMIS's strategy, which is summarized in a document titled "Madoff-Proposal" (the "Renaissance Proposal"). The Renaissance Proposal detailed statistical and market research that Renaissance had conducted trying to unpack the various components of the Madoff strategy and creating a simulator to try and replicate Madoff's results. The concerns raised by the Renaissance Report regarding the Madoff strategy included a lack of understanding as to how Madoff "hides his trades" from the market, a lack of transparency as to the total assets Madoff has under management, and "unusual trading advantages" that Madoff may enjoy because of his stock/option order flow.

- Legacy engaged Khronos LLC ("Khronos") to perform diligence on its BLMIS investment, which involved, among other things, interviews with various stakeholders, and review and discussions regarding diligence performed by major banks. The interviews were extensive and included discussions with, among

others: (i) individuals from Renaissance (Nat Simons, Jim Simons, Peter Brown, Henry Laufer, and Paul Broder); (ii) Frank DiPascali of BLMIS; (iii) individuals from banks such as Deutsche Bank, Goldman Sachs, Santander, and Safra Bank; and (iv) various other industry participants such as fund-of-fund analysts and managers, and broker-dealers for hedge funds. Khronos' investigation concluded that there was a very low risk of fraud because, among other things, there were reasonable explanations in response to the questions posed about options volume, how commissions were charged, and other operational issues that had been raised over the years.

- In 2004, Legacy executed a credit agreement with BNP Paribas Securities Corp. ("BNP"), in which BNP agreed to loan funds to Legacy up to 50% of the value of its BLMIS holdings, on a non-recourse basis. The transaction with BNP provided comfort to Legacy that a large institution was willing to lend against the BLMIS account on a non-recourse basis, which BNP had done several times before.

- Between 2004 and 2008, no new facts came to the attention of Legacy that raised any concerns about BLMIS.

Finally, a hypothetical reasonable investigation would not have uncovered the Ponzi scheme, the fact that BLMIS was not trading any securities, or BLMIS' insolvency. Madoff enjoyed an impeccable reputation in the business and was credited with being one of the major players in developing the market maker business. Moreover, investigations and diligence performed by major financial institutions, with significantly more resources and better access to Madoff than Legacy, failed to uncover the fraud, as did a series of investigations by the SEC with all of the resources and investigative tools available to a regulatory agency of the federal government. If these more sophisticated, well-resourced and far-reaching investigations failed to uncover the fraud, then a reasonable investigation by an investor like Legacy would not have discovered that BLMIS was insolvent and allegedly paid redemptions to investors with "other people's money."

<u>Third Defense</u>

The claims are barred because the alleged transfers may not be avoided under 11 U.S.C. § 548 because they were made to satisfy antecedent debts.

### Fourth Defense

The claims are barred because the alleged transfers may not be avoided under 11 U.S.C. § 548(a)(1)(A) because the debtor did not make the transfers with actual intent to hinder, delay, or defraud.

### Fifth Defense

The claims are barred, in whole or in part, to the extent that the conditions set forth in 15 U.S.C. § 78fff-2(c)(3) have not been met because the Trustee will recover enough property to satisfy creditor claims.

### Sixth Defense

The claims are barred to the extent they have been dismissed by the Court or are based on allegations that have been dismissed by the Court.

### Seventh Defense

Any recovery which might otherwise be had by the Trustee should be reduced and diminished based on recoveries he is seeking from third parties, including, without limitation, any recovery from BNP Paribas.

### Eighth Defense

The claims are barred by the doctrines of estoppel, waiver and/or laches, including, without limitation, because there have been a series of unreasonable delays in the Trustee's adjudication of this action, which has now been pending for twelve years.  As a result of the Trustee's delay, witnesses or evidence may have been lost or are no longer available, witnessses' memories have faded due to the passage of time, and circumstances have changed, all of which will hinder Legacy's defense of the claims asserted against it.

## JURY TRIAL DEMANDED

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 9015 of the Federal Rules of Bankruptcy Procedure, Defendant Legacy hereby demands a jury trial on all claims and issues.

## FINAL ORDER AND WITHDRAWAL OF REFERENCE

In accordance with the Order entered by Judge Rakoff in the United States District Court for the Southern District of New York on January 4, 2013 (Civil Action No. 12-115(JSR), Dkt. No. 427), this Court lacks jurisdiction to enter a final order in this adversary proceeding. Further, pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure, Legacy states that it does not consent to entry of final orders or judgment by this Court and expressly reserves its right to seek withdrawal of the reference at any time before trial.

WHEREFORE, Legacy respectfully requests that this Court dismiss the Amended Complaint with prejudice, award Legacy its costs, including attorneys' fees, incurred in connection with this action, and grant such other and further relief as the Court deems just and proper.

Dated:  June 28, 2022
        New York, New York

Respectfully submitted,

BINDER & SCHWARTZ LLP

/s/ Eric B. Fisher
Eric B. Fisher
Lindsay A. Bush
366 Madison Avenue, 6th Floor
New York, NY 10017
Tel.: (212) 510-7272
Email: efisher@binderschwartz.com
Email: lbush@binderschwartz.com

*Counsel for Legacy Capital Ltd.*