Hearing Date:  **August 10, 2022 at 10:00 a.m.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (CGM) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 12-01019 (CGM) |
| v. | |
| BANCO ITAÚ EUROPA LUXEMBOURG S.A., and BANCO ITAÚ EUROPA INTERNATIONAL, | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**ITAÚ DEFENDANTS' MOTION TO DISMISS**

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT .........................................................................................................3

I.    THE TRUSTEE HAS FAILED TO ESTABLISH PERSONAL JURISDICTION
      OVER BANCO ITAÚ ....................................................................................3

      A.    Banco Itaú Was Facilitating Client Investments In the Fairfield Funds and
            So Cannot Be Subject to Jurisdiction Under the Holdings of *BLI* or *BNPP* ..........3

      B.    Banco Itaú's Own Suit-Related Contacts Are Not Sufficient To Create
            Jurisdiction ........................................................................................6

            1.    The Trustee's New Evidence and Allegations Concerning Limited
                  Communications Between Itaú Private Bank and the Fairfield
                  Funds Are Inadequate to Establish Jurisdiction ........................................6

                  a)    The Trustee's New Theories and Evidence Are Procedurally
                        Improper ...................................................................................... 7

                  b)    The Trustee Has Not Adequately Alleged or Established That Itaú
                        Private Bank Was An Agent for Banco Itaú ................................... 8

                  c)    The Communications and Single Meeting Relied On by the
                        Trustee Are Not Sufficient to Establish Jurisdiction. ................... 10

            2.    The Incidental Use of U.S. Bank Accounts to Effectuate Foreign
                  Banking Transactions for Foreign Parties Is Not Enough to
                  Establish Jurisdiction ...............................................................................12

                  a)    The Opposition and Supporting Declaration Introduce Entirely
                        New Theories That Are Procedurally Improper and Should Not be
                        Considered ................................................................................ 12

                  b)    The Incidental Use of Correspondent U.S. Accounts To Effectuate
                        Predominantly Foreign Banking Transactions Does Not Support
                        Specific Jurisdiction.................................................................... 12

                  c)    The Trustee Ignores His Obligation to Establish Jurisdiction With
                        Respect to Each Separate Transaction or Redemption ................. 14

            3.    The Sentry Subscription Agreement Is Not a Relevant
                  Jurisdictional Contact.................................................................................15

C.    The Assertion of Jurisdiction Over Banco Itaú Would Not be Fair or
Reasonable ........................................................................................................17

II.    THE TRUSTEE SHOULD BE DENIED LEAVE TO AMEND AND DOES NOT
NEED JURISDICTIONAL DISCOVERY .......................................................................19

III.    THE TRUSTEE'S OPPOSITION TO THE ITAÚ DEFENDANTS' OTHER
ARGUMENTS ARE UNPERSUASIVE...........................................................................20

CONCLUSION........................................................................................................................20

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779 (2d Cir. 1999)............11

*Berdeaux v. OneCoin Ltd.*, 2021 WL 4267693 (S.D.N.Y. Sept. 20, 2021)..................................14

*Chase Manhattan Bank v. Banque Generale Du Commerce*, No. 96 CIV 5184 (KMW),
    1997 WL 266968 (S.D.N.Y 1997).......................................................................................16

*Fagan v. Republic of Austria*, 2011 WL 1197677 (S.D.N.Y. Mar. 25, 2011)................................8

*Fairfield Sentry Ltd. v. Migani*, [2014].................................................................................15, 16

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)...............................................................16

*Int'l Customs Assocs., Inc. v. Ford Motor Co.*, 893 F. Supp. 1252 (S.D.N.Y. 1995) ..................11

*Neewra, Inc. v. Manakh Al Khaleej Gen. Trading & Contracting Co.*, No. 03 Civ. 2936
    (MBM), 2004 WL 1620874 (S.D.N.Y. July 20, 2004)..........................................................14

*Picard v. BNP Paribas S.A. (In re Madoff),* 594 B.R. 167 (Bankr. S.D.N.Y. 2018)............. *passim*

*Picard v. Bureau of Labor Insurance (In re Madoff)*, 480 B.R. 501 (Bankr. S.D.N.Y.
    2012) ................................................................................................................................ *passim*

*Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17 (2d Cir. 2004)...................................................16

*In re Trib. Co. Fraudulent Conveyance Litig.*, 11-MD-2296 (RJS), 2017 WL 82391
    (S.D.N.Y. Jan. 6, 2017), *aff'd,* 10 F.4th 147 (2d Cir. 2021) .....................................................19

*Universal Trading & Inv. Co. v. Tymoshenko*, No. 11 CIV. 7877 (PAC), 2012 WL
    6186471 (S.D.N.Y. 2012).................................................................................................7, 14

*Walden v. Fiore*, 571 U.S. 277 (2014).......................................................................................5, 6

*Waldman v. PLO*, 835 F. 3d 371 (2d Cir. 2016)..........................................................................18

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)...............................................18

*Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998).......................................................7, 8

Defendants Itaú BBA International (Cayman) Ltd., f/k/a Itaú Europa Luxembourg, S.A., f/k/a Banco Itaú Europa Luxembourg, S.A. ("Banco Itaú") and Banco Itaú Europa International ("Itaú International") (collectively, the "Itaú Defendants") respectfully submit this reply brief, together with the accompanying Supplemental Declaration of Randall Martin ("Martin Decl."), in response to the Trustee's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Opposition") and in further support of their Memorandum of Law in Support of Itaú Defendants' Motion to Dismiss  ("Opening Brief").[1]

## PRELIMINARY STATEMENT

The Trustee's assertion that the Court has jurisdiction over Banco Itaú is quite extraordinary, because, unlike many or most other defendants in these cases, the Trustee has now introduced evidence that disproves his allegation that Banco Itaú invested in BLMIS through the Fairfield Funds in order to generate profits from what the Trustee contends was a U.S. based investment.  The truth—now revealed through documents the Trustee himself has introduced—is that Banco Itaú was investing money on behalf of *clients*, in exchange for fees generated in Europe, and that it was Banco Itaú's clients, if anyone, who were seeking returns by indirectly investing in BLMIS through the Fairfield Funds.

That critical factual distinction means that the Trustee's reliance on cases such as *Picard v. Bureau of Labor Insurance (In re Madoff)*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012) ("*BLI*"), or *Picard v. BNP Paribas S.A. (In re Madoff),* 594 B.R. 167 (Bankr. S.D.N.Y. 2018) ("*BNP*"), is misplaced as to Banco Itaú, because Banco Itaú was not availing itself of the benefits of making an indirect investment in the United States.  Instead, Banco Itaú was engaged in and generating

---

[1] Capitalized terms used but not defined herein have the meaning ascribed to such terms in the Opposition or Opening Brief.

revenues in *Europe*, by providing banking services for clients who were investing money in the overseas Fairfield Funds. That brings Banco Itaú well outside of the rationale and holdings of *BLI* and *BNP*. And although the Trustee offers two primary additional arguments as to why this Court should exercise jurisdiction over Banco Itaú, neither is persuasive.

*First*, the Trustee argues that Banco Itaú was represented by Itaú Private Bank, and has introduced more than a half-dozen documents that he claims establish this agency relationship. But the alleged agent does not even exist as a separate corporate entity. And documents that the Trustee has, improperly, introduced in support of this previously unpled jurisdictional theory, do not prove anything. The sole piece of evidence that actually relates to Banco Itaú is a single e-mail, sent from Brazil, by an individual who is not identified as working for Banco Itaú, and who made a one-off request to allow a Banco Itaú client to make a $200,000 subscription in the BVI-based Fairfield. That single e-mail comes nowhere close to meeting the test for showing a sufficient quality and quantity of jurisdictional contacts with the forum that could allow this Court to assert jurisdiction over the approximately $60 million of redemptions that were completely unrelated to that single e-mail. (*See*, Section I.B.1, below).

*Second*, the Trustee argues that the Court should assert jurisdiction over Banco Itaú because, when Luxembourg-based Banco Itaú sent or received payments to or from the BVI-based Fairfield Funds, through entirely foreign banks and bank accounts located in the Netherlands, Ireland, and Switzerland, the funds passed—for an instant in time—through United States correspondent bank accounts that are routinely used to process U.S. dollar denominated transactions between foreign entities using foreign banks to conduct foreign business. The District Courts for the Southern District of New York have never held that this type of peripheral contact can support jurisdiction other than in cases where the correspondent account was the

2

bank's own, and usually where the account was used in connection with some wrongdoing by the bank controlling the account. (*See*, Section I.B.2, below).

A jurisdictional ruling in favor of the Trustee based on the facts of this case would have far reaching consequences. Foreign banks, money managers, and brokers, having made no investment of their own, could be rendered subject to the jurisdiction of the United States federal courts, anytime they facilitate for a customer an investment in an entity that was known to make substantial investment in the United States. This is not and should not be the law.[2]

## ARGUMENT

I.    **THE TRUSTEE HAS FAILED TO ESTABLISH PERSONAL JURISDICTION OVER BANCO ITAÚ**

A.    **Banco Itaú Was Facilitating Client Investments In the Fairfield Funds and So Cannot Be Subject to Jurisdiction Under the Holdings of *BLI* or *BNPP***

The Trustee's primary argument as to why this Court has jurisdiction over Banco Itaú is that Banco Itaú was supposedly "investing in BLMIS through BLMIS feeder funds." Opposition at 11. According to the Trustee, this allegation "alone establishes personal jurisdiction." *Id*. The Trustee also calls this case "indistinguishable" from cases like *BLI*, where a defendant was held to be subject to personal jurisdiction on the basis of having knowingly made investments in BLMIS with the intention and goal of profiting from investments in the U.S. securities markets. *Id*. But as this Court has correctly cautioned the parties to these cases many times over, the facts of each individual case can matter greatly. That is critically true in the present case. Banco Itaú's facts are readily distinguishable from those in *BLI*, and from most of the other redeemer

_____

[2] The Itaú Defendants submit this reply to the Opposition following a number of important prior rulings by this Court on arguments that were substantially identical to arguments made in their Opening Brief. In light of those rulings, this reply focuses primarily on the Trustee's assertion that this Court may assert personal jurisdiction over Banco Itaú.

actions presently before the Court, because Banco Itaú was an intermediary for other investors, and did not itself target BLMIS for investment as the Trustee has improperly alleged.

Documents that the Trustee has introduced for the first time in connection with his Opposition brief now indisputably show what the Trustee has presumably long known but failed to disclose to the Court:  Banco Itaú was not investing its own money, as the Trustee originally alleged, but rather facilitating investments on behalf of and at the direction of its overseas clients. *See*, *e.g.*, Shifrin Dec., Ex. 18 (discussing a "new client" of Itaú on whose behalf a new subscription was being made); Ex. 20 (discussing Itaú "clients" invested in Fairfield); Ex. 16 (reference to Itaú "client" question).  This is a critical difference and plainly brings Banco Itaú outside of the scope of the holding of *BLI*.

The Trustee argues that Banco Itaú should be presumed to have "invest[ed]…in Fairfield Sentry with the specific goal of having funds invested in BLMIS in New York, with intent to profit therefrom."  Opposition at 11 (quoting *BLI*, 480 B.R. at 506.).  But the documents now relied on by the Trustee to establish jurisdiction in this case prove that this is not true (and that it is certainly not plausible).  Banco Itaú was not investing its own money, and it was not seeking to "profit" from the returns available at BLMIS.  Rather, Banco Itaú was an overseas entity, whose commercial activity involved implementing investment orders placed by overseas clients, some of whom wanted to invest in the foreign Fairfield Funds.

This distinction is critical.  When this Court has applied cases like *BLI* and *BNP* to find jurisdiction over other redeemer defendants in other cases, the Court has focused on such defendants' "investment activities" and their intention to "reap the benefits" from investing in the "Madoff money orchard."  *See*, *e.g.*, Memorandum Decision Denying Defendant's Motion to Dismiss, Adv. Proc. No. 12-1205, Case No. 08-1789, Docket No. 21,729, at 8-9 (quoting *BLI*)

("Multi-Strategy Decision"). In other words, *BLI* and *BNP* essentially turned on the Court's

view that jurisdiction was proper where foreign defendants were, as the Court saw it, indirectly

investing in and hoping to profit from Madoff's own purported investments in the U.S. capital

markets.[3] But that is decidedly *not* what Banco Itaú was doing. Banco Itaú was a Luxembourg-

based financial institution that directed its commercial activities at the European market, seeking

to profit *in Europe* from acting as an intermediary to facilitate investments selected by its clients.

This is not remotely akin to other cases in which defendants took affirmative actions to invest in

and generate profits from their own investments in Madoff.

    This Court, in cases like *BLI* and *BNPP*, has held that such investment activity can

subject a defendant to personal jurisdiction. But extending that reasoning even further—*i.e.*, by

imposing personal jurisdiction over overseas brokers or money managers who, with no

independent investment in BLMIS, merely facilitated investments on behalf of their clients—

would require a staggering expansion of the power of the federal courts. The Trustee has not

cited a single precedent that supports such a result.[4]

---

[3] Notably, *BNP* also appears to have recognized, likely due to the intervening Supreme Court decision *Walden v. Fiore*, 571 U.S. 277 (2014), that additional jurisdictional contacts were also required in order to adequately ground specific jurisdiction. Thus, Judge Bernstein's finding of personal jurisdiction in *BNP* was premised on several strong jurisdictional contacts, including the presence of numerous employees and offices in New York, admissions by defendants that they were based in New York, and the conclusion that the redemptions "arose, for the most part" from those New York contacts and employees. *BNP* at *190-91. Neither the quality or quantity of Banco Itaú's jurisdictional contacts are remotely similar to the facts in *BNP*, as discussed below.

[4] The Trustee's Opposition brief contains gratuitous suggestions that Banco Itaú has "trie[d] to understate" its awareness of the Fairfield Funds' investments in Madoff, or that it has made "disingenuous argument[s] to the Court" on this topic. Opposition at 11 and 14. But Banco Itaú has never pretended that it did not know that the Fairfield Funds were investing in Madoff, or that such investments were unexpected or random in nature. Rather, Banco Itaú has clearly and consistently argued that this knowledge does not, on its own, justify the assertion of personal jurisdiction over it.

B.    **Banco Itaú's Own Suit-Related Contacts Are Not Sufficient To Create Jurisdiction**

As an alternative to relying on *BLI* the Trustee also argues that Banco Itaú had other jurisdictionally-adequate contacts with New York.  But none of these purported contacts provide an adequate basis for jurisdiction, whether considered individually or in the aggregate.

1.    **The Trustee's New Evidence and Allegations Concerning Limited Communications Between Itaú Private Bank and the Fairfield Funds Are Inadequate to Establish Jurisdiction**

The Trustee's primary attempt to draw connections between Banco Itaú and the United States rests on the flawed premise that a small handful of largely inconsequential communications by a purported entity that the Trustee calls "Itaú Private Bank" can be attributed to Banco Itaú.  *See, e.g.*, Opposition at 6.  There are several problems with this theory of attribution by agency, including that no such entity even exists.

The Trustee's Complaint originally included an allegation that "[t]he Itaú Defendants also regularly communicated with their FGG representatives in FGG's New York City and Miami, Florida offices."  Compl. at ¶7.  Banco Itaú explained in its Opening Brief that this allegation was deficient in multiple regards, including because it reflects impermissible group pleading (*i.e.*, by failing to specify which Itaú Defendant was being discussed).[5]  Banco Itaú also explained that, because of the lack of detail concerning matters such as the number, nature, medium, participants, and content of the alleged communications, it would be impossible for this Court to assess whether the alleged contacts were jurisdictionally meaningful.  Opening Brief at

---

[5] As noted in the Complaint and Opening Brief, the Trustee is also suing Miami-based Itaú International in this action, and Itaú International is *not* contesting personal jurisdiction.  But it is therefore critically important that the Trustee properly identify which of the specific Itaú Defendants supposedly made any given communication, or attended alleged meetings, because the Trustee must separately establish jurisdiction over each defendant based on their own contacts.  *Walden* 571 U.S. at 284 (jurisdiction "must arise out of contacts that the 'defendant *himself*' creates with the forum State.").

32-34. The Trustee has attempted to address these arguments by introducing new evidence that is procedurally improper, substantively unconvincing, and just does not show what the Trustee claims it does.

### a)    The Trustee's New Theories and Evidence Are Procedurally Improper

The Trustee's Complaint alleged that Banco Itaú "regularly" communicated with representatives of the Fairfield Funds. But now that he has been pressed to provide details about those communications, it is clear the Trustee cannot show any support for that allegation (raising questions about whether it was an appropriate allegation in the first place). Indeed, contrary to his allegations, *the Trustee has not been able to identify a single U.S. communication or meeting that was clearly connected to an employee or principal of Banco Itaú*. Instead, the Trustee has sought to make a fundamental change to the theory articulated in the Complaint, and to argue and allege—for the first time in his Opposition and a supporting declaration—that "Banco Itaú managed its business relationships with Sentry through Itaú Private Bank." Opposition at 18. Such a last-minute change in theory is not procedurally appropriate. While parties to a jurisdictional dispute are, of course, permitted to submit declarations and other evidence supporting or contradicting jurisdictional allegations raised in a complaint, a party has no right to fundamentally shift its jurisdictional theory for the first time in an opposition brief. *See*, *e.g.*, *Universal Trading & Inv. Co. v. Tymoshenko*, No. 11 CIV. 7877 (PAC), 2012 WL 6186471 (S.D.N.Y. 2012) (granting motion to dismiss for lack of personal jurisdiction and holding that it would be judicial error to "consider affidavits and exhibits submitted" on jurisdictional arguments that were not raised in the pleadings); *see, also, Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (plaintiff may not add allegations in opposition to

motion to dismiss).  The Court should therefore decline to hear the Trustee's new agency

argument on the basis that is it procedurally improper.  *Id*.

> **b)      The Trustee Has Not Adequately Alleged or Established That Itaú Private Bank Was An Agent for Banco Itaú**

But even if this Court chooses to consider the Trustee's procedurally improper new

theory, neither the Trustee's existing allegations, nor the new documents submitted in support of

those jurisdictional arguments, come anywhere close to showing an agency relationship between

defendant Banco Itaú and Itaú Private Bank (or its employees and representatives).  And in the

absence of an agency (or alter ego) relationship, the jurisdictional contacts of one entity or

person cannot be attributed to a separate legal entity and defendant.  *See*, *e.g.*, *Fagan v. Republic

of Austria*, 2011 WL 1197677 at *17-19 (S.D.N.Y. Mar. 25, 2011) (jurisdictional contacts of

affiliates not attributed to one another "unless factors beyond common ownership suggest that

their separate corporate identities are a mere facade" and dismissal is appropriate where plaintiff

"did not differentiate" between acts and jurisdictional contacts of different defendants).

The Trustee has introduced seven new documents in an attempt to support his new theory

that Itaú Private Bank was an agent of Banco Itaú.  Opposition at 6-8; Shifrin Dec. Ex. 15-20 and

25.  But the Trustee badly mischaracterizes the contents of these documents and they simply do

not show what he says they do, nor do they support his new theories.

In the first place, there is no such entity as Itaú Private Bank.  The Trustee appears to

have conjured up this imaginary entity after seeing that name used in the signature blocks of a

handful of e-mails.  But Itaú Private Bank is a merely a business division or trade name that

covers multiple legal entities, rather than a juridical entity itself, and nothing cited by the Trustee

proves otherwise.  Martin Decl. (organization chart reflects no entity named Itaú Private Bank).

The Trustee is also wrong to claim that he has produced evidence that Itaú Private Bank was regularly acting on behalf of Banco Itaú in the United States. Only one of the seven documents cited by the Trustee even mentions Banco Itaú (which was then known as Banco Itaú Europa Luxembourg S.A.), and it is sheer speculation for the Trustee to suggest that the other documents, communications, or meetings, were in any way related to Banco Itaú, rather to other legal entities, such as the Miami-based Itaú International, which also invested on behalf of clients and is not contesting jurisdiction. Shifrin Dec. Ex. 18.

For example, the Trustee represents to this Court that a representative of Itaú Private Bank wrote to FGG to make inquiries about Madoff's investment strategy "on behalf of Banco Itaú." Opposition at 6; Shifrin Dec. Ex. 16. But the actual e-mail states that Itaú Private Bank was asking the question on behalf of an undisclosed "client," and makes no mention whatsoever of Banco Itaú. *Id.*

In another misleading example, the Trustee claims to have identified a document showing that representatives of Itaú Private Bank travelled to the United States, supposedly on behalf of Banco Itaú, and supposedly to meet with a consultant who might answer some questions about Mr. Madoff. Opposition at 7; Shifrin Dec. Ex. 19. But the Trustee's own evidence does not support his claims. The e-mail in question does not mention Banco Itaú, or Itaú Private Bank for that matter, and the employees in question were not based in Europe.[6] Moreover, the contention that a meeting was planned in the United States to discuss Madoff does not withstand scrutiny. The e-mail is clear that the participants were discussing two separate issues: (1) a call to discuss Madoff issues, which was to be handled by the U.K.-based CEO of Albourne and a Miami based

---

[6] The only individual clearly associated with a particular Itaú office is Ms. Grossman, from the Miami office of Itaú International, the defendant that is not contesting jurisdiction in this case.

9

representative of Itaú International, and (2) a completely separate meeting in the U.S. to discuss "other areas" (*i.e.*, matters other than Madoff).  Shifrin Dec. Ex. 19.

That the Trustee is forced to resort to repeated mischaracterization of the numerous documents clearly available to him supports an obvious conclusion:  the Trustee does not have, and has never had, despite substantial prior third-party discovery, any evidence to support his allegation that Luxembourg based Banco Itaú ever had any meaningful contacts with the United States, whether on its own, or through any purported agents.

> **c)**      **The Communications and Single Meeting Relied On by the Trustee Are Not Sufficient to Establish Jurisdiction.**

Finally, even if the Court agrees that all of the communications and meetings cited by the Trustee related to Banco Itaú (even though only one of them does), and even if the Court agrees that Itaú Private Bank can be treated as Banco Itaú's agent (even though no evidence has been introduced to show that the division or its personnel were regularly acting on behalf of Banco Itaú), and even if the Court credits the Trustee's claim that a single meeting to discuss Madoff occurred in Connecticut (when in fact the Madoff discussion occurred in a telephone call to the U.K.), the peripheral contacts supposedly reflected in the documents relied on by the Trustee would not be sufficient to establish jurisdiction.[7]

As explained in Banco Itaú's Opening Brief, precedents in this District consistently hold that a small number of meetings or communications into the forum generally do not support jurisdiction.  Opening Brief at 32-33.  At issue here, are a small handful of e-mails from a representative in Brazil, most regarding incidental administrative details concerning a *de minimis*

---

[7] The sole document identified by the Trustee that does in fact reference Banco Itaú dealt with a single subscription for $200,000 (out of the $60 million of redemptions the Trustee seeks to clawback) and was an e-mail sent from Brazil to the United States.  This simply is not enough to establish jurisdiction over all other transactions between Banco Itaú and the Fairfield Funds.

portion of the aggregate volume of business transacted between Banco Itaú and the Fairfield

Funds. The Trustee also points to a single e-mail, also from Brazil, in which Itaú Private Bank

raised a handful of questions about Madoff's operations. Finally, the Trustee claims (wrongly)

to have evidence of a single meeting in the U.S.—which was with a third-party consultant, and

not with BLMIS or the Fairfield Funds themselves—at which an Itaú Private Bank representative

may have asked some questions about Madoff. These *de minimis* communications and contacts

with the U.S., all made by a representative of Itaú Private Bank, are not sufficient to create

jurisdiction over Banco Itaú. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d

779, 787 (2d Cir. 1999) (when assessing jurisdiction "courts must look at the totality of the

circumstances concerning the party's interactions with, and activities within, the state"); *Int'l

Customs Assocs., Inc. v. Ford Motor Co.*, 893 F. Supp. 1252, 1261 (S.D.N.Y. 1995) ("Telephone

calls and correspondence sent into New York, by a non-domiciliary defendant who is outside

New York, generally are insufficient to establish personal jurisdiction.") (collecting cases).

Finally, and in the alternative, these alleged *de minimis* contacts surely cannot be

adequate as to *all* of the challenged redemption payments. The Trustee must establish

jurisdiction for each separate redemption that is subject to clawback. *BNP* at 190 (trustee "must

establish the court's jurisdiction with respect to each claim asserted"); *see, also,* Tr. May 18,

2022 Hr'g *SIPC v. BLMIS, LLC*, Adv. Pro. No. 12-01205 (Bankr. S.D.N.Y.), Dkt. No. 121, at 130

(admission by Trustee that *BNP* is law of the case). But a single meeting in early 2008, for

example, cannot have created jurisdiction with respect to redemptions that were made many

years before the relevant meeting occurred. At a minimum, such earlier in time redemptions

should be dismissed for want of jurisdiction.

11

2.      **The Incidental Use of U.S. Bank Accounts to Effectuate Foreign Banking Transactions for Foreign Parties Is Not Enough to Establish Jurisdiction**

The Trustee's second argument is that jurisdiction is appropriate because Banco Itaú transmitted subscription funds and received some redemption payments through foreign banks that used U.S. correspondent bank accounts to process such payments.  Opposition at 18-22. This argument fails for several reasons.

a)      **The Opposition and Supporting Declaration Introduce Entirely New Theories That Are Procedurally Improper and Should Not be Considered**

As a threshold matter, the Trustee's Opposition is, once again, procedurally improper. As with his arguments concerning the role of alleged agents, the Trustee seeks to shift his legal theory, for the first time, based on new arguments and facts submitted through an opposition brief and supporting declaration, even though such allegations and arguments were not timely raised in the Complaint.  For the reasons discussed above, this is procedurally improper.  The Complaint alleges only that Banco Itaú wired subscription money *to* Fairfield Sentry through a New York correspondent account.  Compl. ¶ 6.  That argument alone is properly before the Court.  But the Trustee's new and untimely arguments and evidence, that Banco Itaú also *received* some (but not all) redemptions through U.S. correspondent accounts of its designated overseas bank, are not procedurally appropriate and should be disregarded.

b)      **The Incidental Use of Correspondent U.S. Accounts To Effectuate Predominantly Foreign Banking Transactions Does Not Support Specific Jurisdiction**

The Trustee makes little effort to defend his original theory that Banco Itaú's transmission of subscription funds through a U.S. correspondent account designated by Sentry creates jurisdiction.  That is unsurprising, because Sentry's choice of that account in connection with predominantly foreign transactions can hardly be said to rise to the level of purposeful

12

availment by Banco Itaú, and for the additional reason that it is redemption payments, not subscriptions, that give rise to this action.

Instead, the Trustee has shifted almost entirely to a new theory that jurisdiction is proper because Banco Itaú allegedly received several (but not all) redemption payments from Sentry through a U.S. correspondent account of the overseas European bank that was the ultimate recipient of those funds. But this argument fails as well.

The Opposition points to a number of supposedly helpful precedents, before quickly admitting that none of them concerned mere correspondent accounts of the type at issue in this action. Opposition, 18-19. The Trustee then tries to bridge this gap in authority by claiming that a trio of precedents also hold that the use of correspondent bank accounts can support specific jurisdiction. *Id.*, 19-20. But this attempted pivot ignores that each of the Trustee's authorities— *i.e.*, *Licci*, *Al Rushaid*, and *Arcapita*—were cases in which a defendant bank was making use of its *own* correspondent bank account in connection with allegedly illegal activity connected to the United States. But that is not the case here.

The economic substance and geographical location of the relevant parties and banks further expose the weakness of the Trustee's position. The Trustee's newly proffered evidence shows that the challenged redemption payments flowed from Sentry, a BVI entity, through its agent Citco, a Netherlands banking entity, via an Irish bank branch, to the Luxembourg-based Banco Itaú, which elected to receive the funds in a bank account held at Switzerland-based UBS. This clearly international chain of payments passed only momentarily and incidentally through correspondent banking accounts in the United States. Shiffrin Decl. Ex. 23 and 24.[8] This simply

---

[8] Subscription payments followed a similar path. The documents that the Trustee now relies on show that subscription payments were sent to the Netherlands-based Citco, through an Irish

cannot constitute purposeful availment by Banco Itaú or create a reasonable basis for the

assertion of jurisdiction.

Judge Caproni recently surveyed and coherently summarized the current state of the law

in this District regarding the jurisdictional significance (or lack thereof) of correspondent

accounts. She held:

> The vast majority of cases in which the issue is whether the use of a
> correspondent bank account constitutes the transaction of business under Section
> 302(a)(1) involve a non-domiciliary bank defendant's use of a correspondent
> account, not an individual's wiring of funds that incidentally pass through a New
> York-based correspondent account. . . . Plaintiffs have identified no authority,
> nor is the Court aware of any, standing for the principle that a non-domiciliary
> individual defendant may be subject to specific jurisdiction in New York under
> Section 302(a)(1) because the non-domiciliary moved money between foreign
> bank accounts, with the transfer passing through New York via a correspondent
> account.

See, Berdeaux v. OneCoin Ltd., 2021 WL 4267693, at *12 (S.D.N.Y. Sept. 20, 2021) (citations

and footnote omitted). Other courts have shared the same view. Trading & Inv. Co. v.

Tymoshenko, 2012 WL 6186471, at *3 (S.D.N.Y. Dec. 12, 2012) ("courts have only found the

banks themselves to be subject to jurisdiction where they have moved money through New

York"). The Trustee is asking this Court to disregard this clear line of District Court authority

and to issue an unprecedented ruling.

c)      **The Trustee Ignores His Obligation to Establish Jurisdiction
With Respect to Each Separate Transaction or Redemption**

Separately, the Trustee has once more disregarded the legal requirement that he establish

a separate factual basis to establish jurisdiction as to *each* of the redemption payments

challenged in this action. *BNP* 594 B.R. at 190; *see, also, Neewra, Inc. v. Manakh Al Khaleej*

---

branch, and only transitorily passed through a U.S. correspondent account at HSBC Bank USA.
*See*, *e.g.*, Shifrin Dec., Ex. 8. at 50.

14

*Gen. Trading & Contracting Co.*, No. 03 Civ. 2936 (MBM), 2004 WL 1620874, at \*4-5

(S.D.N.Y. July 20, 2004) (holding that one transaction involving the use of a U.S. correspondent

account cannot establish jurisdiction over another transaction that did not use a U.S.

correspondent account). The Trustee claims that he has identified "at least 25 transfers"

deposited into Banco Itaú's correspondent account. But the evidence he cites show only two

such transfers actually flowing through such accounts. Shifrin Dec., Ex. 23-34.[9] Yet the Trustee

is challenging more than 150 separate transfers to Banco Itaú. Compl., Ex. F. Because

applicable law requires a showing of jurisdiction for each challenged redemption payment, at a

minimum, all of the redemptions made by Sentry for which the Trustee has not independently

established jurisdiction should be dismissed.

### 3.    The Sentry Subscription Agreement Is Not a Relevant Jurisdictional Contact

The Trustee's final argument is that a forum selection clause in a subscription agreement

with Sentry is a relevant jurisdictional contact. Opposition, at 16-17. To his credit, the Trustee

acknowledges that he cannot argue that the forum selection clause meant that Banco Itaú

consented to jurisdiction. That argument was foreclosed by Judge Bernstein's well-reasoned

decision in *Fairfield Sentry Ltd. (In Liquidation) v. Theodoor GGC Amsterdam (In re Fairfield*

*Sentry Ltd.),* Adv. Proc. No. 10-03496 (SMB), 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6,

2018) ("*Fairfield I*"), where the forum selection clause was held to be "irrelevant" to actions

---

[9] The Trustee claims that he has additional documents "available upon request" to prove the use
of correspondent accounts for the other 23 transfers. Shifrin Dec. ¶ 28. These are not in
evidence and should not be considered.

involving redemptions, such as this one.[10]  The Trustee's argument is thus a clear collateral

attack on Judge Bernstein's prior ruling.[11]

In prior rulings addressing the same argument, the Court held that the forum selection

clauses did not give rise to consent to litigation over redemptions in this forum.  *See, e.g., Multi-*

*Strategy Decision*, at footnote 3.  This Court then further observed that while the forum selection

clauses could be relevant to the assessment of the reasonableness of asserting jurisdiction based

on *other* contacts, the clause did not itself provide an independent basis for asserting jurisdiction.

*Id.*  This Court was clearly correct in concluding that the forum selection clauses were not

themselves sufficient to establish jurisdiction and should follow that ruling again here.

All of the precedents relied on by the Trustee—*i.e., Burger King Corp. v. Rudzewicz*, 471

U.S. 462, 482 (1985), *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004), and

*Chase Manhattan Bank v. Banque Generale Du Commerce*, No. 96 CIV 5184 (KMW), 1997 WL

266968 (S.D.N.Y 1997)—involved very different fact patterns and contracts.  The most glaring

difference between the present fact pattern and those at-issue in the cases relied on by the

Trustee, is that in this case there are *two* relevant contracts rather than one.  In this case, Banco

Itaú was party to a subscription agreement, which included a forum selection clause, but which

---

[10] The Privy Council came to the same conclusion in *Fairfield Sentry Ltd. v. Migani*, [2014]
UKPC 9.

[11] Seeking to convert this "irrelevant" forum selection clause into a meaningful jurisdictional
contact, the Trustee contends that subscriptions and redemptions are "two side of the same coin."
Opposition, 17.  But that is essentially the very argument already rejected by Judge Bernstein.
*Fairfield I* at *12 (holding that Sentry's Articles alone governed redemptions and rejecting the
argument that the subscription agreement and Articles were "integrated" contracts).  Indeed, if
subscriptions and redemptions were not legally distinct, like the agreements that respectively
govern them, the parties would not be having the present jurisdictional dispute, because Judge
Bernstein would have ruled that the forum selection clause had been triggered and that this Court
had jurisdiction over the parties.  *Id.*

has no bearing on suits related to redemptions. Banco Itaú was also party to Sentry's Articles of

Association, which *do* govern redemptions, but which do *not* include a forum selection clause.

Thus, what the parties to these contracts clearly agreed and intended, was that lawsuits over

*subscriptions* could be litigated in New York under New York law, but that suits regarding

redemptions would be litigated under the laws of the British Virgin Islands, with no agreement or

understanding that they would be litigated in New York. *See, Fairfield I*, at *11-12. Thus,

viewed side-by-side, the subscription agreement and the Articles show exactly the opposite of

what the Trustee suggests: they show that Banco Itaú would *not* have reasonably foreseen

litigation over redemptions in New York.

Furthermore, although the Sentry subscription agreement does not create a meaningful

jurisdictional contact for Sentry redemptions, it is even more clear that it does not create a

relevant jurisdictional contact for Sigma redemptions, which the Trustee has not alleged were

subject to similar subscription agreements with similar forum selection clauses.[12]

### C.     The Assertion of Jurisdiction Over Banco Itaú Would Not be Fair or Reasonable

Even if the Trustee had alleged or established sufficient jurisdictional contacts (and he has

not), the Court's exercise of jurisdiction must also be reasonable under the circumstances for it to

---

[12] Indeed, the Trustee does not even attempt to explain how the forum selection clause in the Sentry agreement could possibly be relevant to the redemptions received from Sigma. It is the law of the case that jurisdiction must be established for each individual redemption. *BNP* at 190. And even assuming, *arguendo*, that the existence of a forum selection clause in the Sentry subscription agreements could offer some reason to think Banco Itaú should have foreseen that it might fairly be hailed into a U.S. court with respect to Sentry transactions, then the absence of such a clause in the Sigma subscription agreements supports the opposite conclusion. Thus, the absence of a similar forum selection clause in any Sigma agreements shows that the Court does not have personal jurisdiction over Banco Itaú with respect to redemptions received from Sigma. The Sigma redemption payments, at a minimum, should be dismissed for lack of jurisdiction.

be consistent with due process.    *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292,

297 (1980).

Although the Trustee casually asserts that the "burden on Banco Itaú" will be "minimal"

(Opposition at 23), nothing could be further from the truth.  Nor does the fact that the Trustee has

already subjected Banco Itaú to more than ten years of litigation in this Court before a

jurisdictional defense could be presented show that jurisdiction is reasonable here.  If this case

proceeds to discovery, and beyond, the burdens on Luxembourg-based Banco Itaú will be

substantial.  While mechanisms exist to facilitate access to overseas witnesses, accessing

documents and testimony from European and Brazilian witnesses will be unnecessarily costly

and cumbersome.  Moreover, compliance with the EU General Data Protection Regulation will

impose substantial logistical challenges in defending this case.  So could the need to secure

discovery from individual investors on whose behalf Banco Itaú was facilitating investment

orders.  None of this substantial cost is merited by *de minimis* jurisdictional contacts such as the

incidental use of correspondent banking accounts or a single e-mail sent into the United States.

The Trustee should have brought his suit elsewhere.

Ultimately, as the Trustee concedes, "[t]he reasonableness inquiry requires the court to

determine whether the assertion of personal jurisdiction over the defendant comports with

'traditional notions of fair play and substantial justice' under the circumstances of the particular

case." *Waldman v. PLO*, 835 F. 3d 371, 331 (2d Cir. 2016); Opposition at 22.  The exercise of

personal jurisdiction over Banco Itaú fails to meet this basic test and would be unreasonable in

this case.  The Trustee asserts that Banco Itaú purposefully availed itself of the privileges and

benefits of doing business in New York, but at the same time has consistently taken the position

that Banco Itaú cannot assert a customer claim again BLMIS because Banco Itaú's real legal and

commercial relationship was with the Fairfield Funds, not BLMIS. As a result, while investors who *in fact* availed themselves of U.S. law (*i.e.*, SIPA) have customer claims that will see them keep or have returned at least 70 percent of any principal investment that the Trustee successfully claws back, truly foreign investors such as Banco Itaú will not participate in the ratable distribution scheme established under SIPA because they had no direct relationship with BLMIS. And that is precisely because they did *not* avail themselves of the protections of U.S. law, under SIPA. The Trustee cannot have it both ways—having consistently pointed out that defendants like Banco Itaú have no customer claims against the estate, because they did not in truth invest in BLMIS, the Trustee should not be heard to argue at the same time that investors in the Fairfield Funds were basically investing in Madoff and that it is therefore reasonable to sue them here. It would be fundamentally unfair and unreasonable to exercise personal jurisdiction over Banco Itaú.

## II.    THE TRUSTEE SHOULD BE DENIED LEAVE TO AMEND AND DOES NOT NEED JURISDICTIONAL DISCOVERY

The Trustee should not be granted further jurisdictional discovery or leave to amend. This case has lasted a decade already. The Trustee has complete access to the records of Mr. Madoff and has also completed substantial discovery from the Fairfield Funds (with whom he is cooperating in this litigation), as well as from innumerable other third parties. Any evidence supporting contacts between Banco Itaú and BLMIS or the Fairfield Funds should already be in the Trustee's possession and control. In addition, despite having access to significant discovery, the Trustee has not shown any meaningful meetings, communications, or other contacts between Banco Itaú and the forum, and there is no reason to expect additional discovery will cure this defect. Moreover, the same substantial access to prior discovery also shows that leave to amend would be futile here and should not be granted. *See*, *e.g.*, *In re Trib. Co. Fraudulent Conveyance*

*Litig.*, 11-MD-2296 (RJS), 2017 WL 82391 (S.D.N.Y. Jan. 6, 2017), *aff'd,* 10 F.4th 147 (2d Cir.

2021) (denying leave to amend clawback suit because "Trustee is a sophisticated bankruptcy

professional" who had access to significant prior Rule 2004 discovery and because prejudice to

defendants would be unacceptably high because they had "been in limbo for almost a decade").

### III.    THE TRUSTEE'S OPPOSITION TO THE ITAÚ DEFENDANTS' OTHER ARGUMENTS ARE UNPERSUASIVE

The Itaú Defendants reiterate and reaffirm all of the other arguments and bases for

dismissal asserted in their Opening Brief and respectfully submit that the Trustee's Opposition to

those arguments is unpersuasive.  Respectful, however, of this Court's recent rejection of

substantially similar arguments raised by other defendants in similar cases, the Itaú Defendants

rest on those issues based on the arguments contained in their Opening Brief (and any presented

at oral argument).

### CONCLUSION

For the foregoing reasons the Itaú Defendants respectfully request that the

Trustee's Complaint should be dismissed with prejudice.


Dated: June 27, 2022
       New York, New York

SHEARMAN & STERLING LLP

By: */s/ Jeffrey Resetarits*
    Jeffrey Resetarits
    Randall Martin
    599 Lexington Avenue
    New York, NY 10022-6069
    Telephone: (212) 848-4000
    Facsimile: (646) 848-7174

*Attorneys for Defendants Itaú BBA
International (Cayman) Ltd., f/k/a Itaú
Europa Luxembourg, S.A., f/k/a Banco Itaú
Europa Luxembourg, S.A., and Banco Itaú
Europa International*