**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 11-02763 (CGM) |
| Plaintiff, | |
| v. | |
| INTELIGO BANK LTD., F/K/A BLUBANK LTD, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**INTELIGO BANK DEFENDANTS' MOTION TO DISMISS**

Heather Lamberg (HLamberg@winston.com)
Christopher D. Man (CMan@winston.com)
WINSTON & STRAWN
1901 L Street, NW
Washington, DC 200036
(202) 282-5274 (phone)
(202) 282-5100 (fax)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ...................................................................................................1

ARGUMENT ..........................................................................................................2

I.    THE COURT LACKS PERSONAL JURISDICTION OVER INTELIGO BANK ....2

A.   General Jurisdiction Does Not Exist Over Inteligo Bank .............................................2

B.   Specific Jurisdiction Does Not Exist Over Inteligo Bank .............................................3

1.   The Trustee Improperly Relies Upon Inteligo Bank's Relationships With Third
Parties To Assert Personal Jurisdiction....................................................................4

2.   Inteligo Bank's Subscription Agreement With Sentry Does Not Create Personal
Jurisdiction................................................................................................................7

3.   The Transfer Of Funds Through New York And Other Incidental Contacts Are
Insufficient To Confer Personal Jurisdiction Over Inteligo Bank ........................11

II.   THE TRUSTEE'S CLAIM IS BARRED BY THE MERE CONDUIT DEFENSE OR
SECTION 546(e) SAFE HARBOR .............................................................................14

A.   Inteligo Bank Is Either Subject To The Mere Conduit Defense Or Is The Initial
Transferee For Purposes Of The Section 546(e) Safe Harbor ....................................14

B.   Inteligo Bank Is Entitled To Section 546(e)'s Safe Harbor Even If It Were A Subsequent
Tranferee .....................................................................................................................20

C.   Inteligo Bank Has An Alternative Basis For Invoking Section 546(e)'s
Safe Harbor ................................................................................................................23

CONCLUSION ....................................................................................................25

i

# TABLE OF AUTHORITIES

**Statutes**

11 U.S.C. § 546(e) ......................................................................................................1-2, 14- 25

11 U.S.C. § 101(22)(A) .................................................................................................... 17

NY CPLR § 302(a)(1) ...............................................................................................9, 12, 13

Fed. R. Civ. P. 12(b)(2) & (6) ........................................................................................ 1

Section 550.........................................................................................................................15

Section 550(a)(1) ...............................................................................................................15

Section 550(b) ....................................................................................................................23


**Court Documents**

Dkt. 1 (Complaint)...................................................................2, 4, 7, 9-11, 13, 15, 17, 19, 23-24

*In re BLMIS (Banque Lombard Odier)*, No. 12-01693, Tr. at 104 (Bankr. S.D.N.Y. June 15, 2022) ....................................................................................................................................16


**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .........................................................................13

*Beacon Enters., Inc. v. Menzies*, 715 F.2d 757 (2d Cir. 1983) .......................................9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .........................................................13

*Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379 (S.D.N.Y. 2021).................................12

*Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017).................................2-3, 5-8

*Buchwald Capital Advisors LLC v. JP Morgan Chase Bank, N.A. (In re Fabrikant & Sons, Inc.)*, 480 B.R. 480 (S.D.N.Y. 2012)...............................................................................................19

*Burger King v. Rudzewicz*, 471 U.S. 462 (1985) ............................................................ 3, 7-8

*Citizens United v. Schneiderman*, 882 F.3d 374 (2d Cir. 2018) .......................................13-14

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ................................................................2-3

*Dean St. Cap. Advisors, LLC v. Otoka Energy Corp.*, 2017 WL 476720 (S.D.N.Y. Feb. 2, 2017)...............................................................................................................10

*Fairfield Sentry Ltd. (In Liquidation) v. Migani*, [2014] UKPC 9 ................................10

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ................................................................................10

*Ferrante Equip. Co. v. Lasker-Goldman Corp.*, 26 N.Y.2d 280 ................................8

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021) ................................. 3-7

*Giuliano v. Barch*, 2017 WL 1234042 (S.D.N.Y. Mar. 31, 2017) ..................................................8

*Hau Yin To v. HSBC Holdings, PLC*, 700 F. App'x 66 (2d Cir. 2017) ................................... 11-12

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ...................................5

*Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016) .....................................................12

*In re Banco Santander Securities-Optimal Litig.*, 732 F. Supp. 2d 1305 (S.D. Fla. 2010) ...........13

*In re Bicom NY, LLC*, 2022 WL 1419997 (2d Cir. May 5, 2022) ..................................................16

*In re BLMIS (Ira Fishman Revocable Trust)*, 773 F.3d 411 (2d Cir. 2014) ..................... 14, 17-19

*In re BLMIS*, 548 B.R. 13 (Bankr. S.D.N.Y. 2016) ....................................................................19

*In re BLMIS*, 594 B.R. 197 (Bankr. S.D.N.Y. 2018) ..................................................................19

*In re BLMIS*, 976 F.3d 184 (2d Cir. 2020) .................................................................................14

*In re Fairfield Sentry Ltd.*, 2020 WL 7345988 (S.D.N.Y. Dec. 14, 2020) ...................................10

*In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 130 F.3d 52 (2d
Cir. 1997) ..................................................................................................................14, 16

*In re Nine West LBO Sec. Litig.*, 482 F. Supp. 3d 187 (S.D.N.Y. 2020) .......................................16

*Int'l Customs Assocs. v. Ford Motor Co.*, 893 F. Supp. 1251 (S.D.N.Y. 1995)......................... 8-9

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945).....................................................................3

*Johnson v. UBS AG*, 791 F. App'x 240 (2d Cir. 2019)................................................................10

*Jonas v. Estate of Leven*, 116 F. Supp. 3d 314 (S.D.N.Y. 2015) ...................................................8

*Kimco Exch. Place Corp. v. Thomas Benz, Inc.*, 34 A.D.3d 433 (2d Dep't 2006) .........................9

*Maranga v. Vira*, 386 F. Supp. 2d 299 (S.D.N.Y. 2005) .............................................................9

*McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377 (1967) ...............................................13

*Merit Management Group LP v. FTI Consulting, Inc.*, 138 S. Ct. 883 (2018)....................... 14-16

*Metals Alliance Corp. v. Beshay*, 1998 WL 811788 (S.D.N.Y. Nov. 19, 1998) ............................9

*Mortg. Funding Corp. v. Boyer Lake Pointe, LC*, 379 F. Supp. 2d 282 (E.D.N.Y. 2005) .............8

*Picard v. Bureau of Labor Insurance (In re Bernard L. Madoff Inv. Sec. LLC)*, 480 B.R. 501
(Bankr. S.D.N.Y. 2012) ...........................................................................................................5

*RBC Cap. Mkts., LLC v. Garcia Hamilton & Assocs., LP*, 2021 WL 230194 (S.D.N.Y. Jan. 22,
2021) .....................................................................................................................................9

*Roper Starch Worldwide, Inc. v. Reymer & Assocs.*, 2 F. Supp. 2d 470 (S.D.N.Y. 1998).............8

*SIPC v. BLMIS (Cohmad)*, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)................. 18, 20, 21-25

*SIPC v. BLMIS*, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021).........................15-18, 21-22

*SIPC v. BLMIS*, 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) .................14-15, 17-18, 20

*SIPC v. BLMIS*, 2022 WL 2137073 (Bankr. S.D.N.Y. June 13, 2022) .......................................20

*SIPC v. BLMIS*, 476 B.R. 715 (S.D.N.Y. 2012) ...........................................................................24

*SIPC v. BLMIS*, 505 B.R. 135 (S.D.N.Y. 2013) ..........................................................................17

*SPV Osus Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018) .............................................................12

*SunLight Gen. Cap. LLC v. CJS Invs. Inc.*, 114 A.D.3d 521 (1st Dep't 2014) ..............................8

*Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720 (S.D.N.Y. 2010) ..............................................12

*Universal Trading & Inv. Co. v. Tymoshenko*, 2012 WL 6186471 (S.D.N.Y. Dec. 12, 2012) .....12

*Walden v. Fiore*, 571 U.S. 277 (2014) .................................................................................. 3, 5-7, 11

*World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ...........................................3, 7

## INTRODUCTION

Inteligo Bank moves to dismiss the Complaint for lack of personal jurisdiction and failure to state a claim pursuant to the mere conduit defense and 11 U.S.C. § 546(e) safe harbor. *See* Fed. R. Civ. P. 12(b)(2) & (6). The Trustee of Bernard L. Madoff Investment Securities LLC (BLMIS) seeks to claw-back nearly $11 million that BLMIS sent to two British Virgin Islands (BVI) companies, Fairfield Sentry Ltd. (Sentry) and Fairfield Sigma Ltd. (Sigma), which Sentry and Sigma transferred to Inteligo Bank, and that Inteligo Bank then deposited in its customers' accounts. But personal jurisdiction is lacking because Inteligo Bank is a Panamanian business that does no business in New York or the United States. Inteligo Bank did not invest its own money in Sentry or Sigma, but rather operated in an execution only function: directed by non-U.S. customers to execute such investments on their behalf. Inteligo Bank's role was limited to that of an intermediary, as it invested only at the direction of its customers' and did not receive or directly benefit from any of its customer's investments, immediately transferring all fund redemptions to its customers' accounts. Inteligo Bank's execution only-investments with two BVI companies on behalf of non-U.S. customers fail to create jurisdiction over Inteligo Bank in New York. Likewise, given that Inteligo Bank was just a mere conduit for the funds, it cannot qualify as a transferee and the Trustee's claims against it fail in their entirety.

Additionally, the Trustee's six-year claims fall within the safe harbor of Section 546(e) for three reasons: (1) if not a mere conduit itself, Inteligo Bank would be the initial transferee because Sentry and Sigma were merely conduits, and Inteligo Bank satisfies the elements of Section 546(e) and was unaware of the BLMIS fraud; (2) even if viewed as a subsequent transferee, Inteligo Bank can challenge the initial transfer because it was unaware of the BLMIS

fraud; and (3) Inteligo Bank has an alternative basis for invoking Section 546(e) because it is a bank and it had a securities contract with Sentry.

## ARGUMENT

## I.   THE COURT LACKS PERSONAL JURISDICTION OVER INTELIGO BANK

This federal court in New York has no personal jurisdiction over Inteligo Bank because Inteligo Bank's ties to New York are virtually non-existent.  The Trustee acknowledges that Inteligo Bank is a Panamanian company, which only had places of business in Panama and the Bahamas.  (Dkt. 1 ¶2.)   At the direction of its non-U.S. customers, Inteligo Bank executed investments in funds managed by two BVI companies (Sentry and Sigma) by sending non-U.S. customer funds from Inteligo Bank's bank in the Bahamas to the two BVI companies' bank in Ireland.  The Trustee now seeks to recover payments requested by Inteligo Bank's customers from those BVI companies made from their bank in Ireland to Inteligo Bank's bank in the Bahamas, which Inteligo Bank in turn deposited in its customers' accounts.  None of the funds at issue belonged to Inteligo Bank.   Accordingly, this Court lacks personal jurisdiction over Inteligo Bank because Inteligo Bank never personally availed itself of the privilege of doing business in New York either generally or with respect to these specific transactions.

### A.   General Jurisdiction Does Not Exist Over Inteligo Bank

It is not clear whether the Trustee even asserts that there is general jurisdiction over Inteligo Bank, but any such suggestion would surely fail.  The Supreme Court's decision in *Daimler AG v. Bauman*, 571 U.S. 117 (2014), "imposed substantial curbs on the exercise of general jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1784 (2017) (Sotomayor, J., dissenting).  Indeed, the Supreme Court recently addressed that test, explaining that "general jurisdiction [may exist] only when a defendant is 'essentially at home' in the State"

and that such "forums for a corporation are its place of incorporation and principal place of business." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (internal citation omitted). Inteligo Bank plainly is not incorporated in the United States and it maintains no place of business in the United States.

### B.    Specific Jurisdiction Does Not Exist Over Inteligo Bank

The Supreme Court explains that "to exercise specific jurisdiction, 'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'" *Bristol-Myers*, 137 S. Ct. at 1780 (quoting *Daimler*, 571 U.S. at 127). "[T]he 'primary concern' is 'the burden on the defendant.'" *Id.* (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). The personal jurisdiction inquiry is to "principally protect the liberty of the nonresident defendant— not the convenience of plaintiffs or third parties." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). That is because the exercise of personal jurisdiction over a defendant must comport with "traditional notions of fair play and substantial justice." *Walden*, 571 U.S. at 283 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Accordingly, due process only permits a "defendant [to] be haled into court in a forum State based on his own affiliation with the State," *Walden*, 571 U.S. at 286, which allows a defendant to "'structure [its] primary conduct' to lessen or avoid exposure to a given State's courts," *Ford*, 141 S. Ct. at 1025 (quoting *Volkswagen*, 444 U.S. at 297).

Obviously, to empower a defendant to make an intelligent choice about submitting to jurisdiction, "the defendant's suit-related conduct must create a *substantial connection* with the forum," and "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 571 U.S. at 284 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985) (first emphasis added, second emphasis in *Walden*). To be clear, "[t]hat does not

mean anything goes.  In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real

limits, as it must to adequately protect defendants foreign to a forum." *Ford*, 141 S. Ct. at 1026.

This is where the Trustee's theory of personal jurisdiction goes off the rails.  Rather than

focus upon Inteligo Bank's actions in New York, it improperly focuses on Inteligo Bank's

relationships with third parties who took actions in New York.

> **1.  The Trustee Improperly Relies Upon Inteligo Bank's Relationships With Third Parties To Assert Personal Jurisdiction**

The Trustee's personal jurisdiction argument is misdirected to the conduct of third

parties.  In pointing to the actions that took place in New York, the Trustee points to the actions

of Sentry and Sigma with respect to BLMIS.  The Trustee is seeking to recover BLMIS transfers

to Sentry and Sigma, which Sentry and Sigma later sent to Inteligo Bank to have deposited in its

customers' accounts.  None of this money belonged to Inteligo Bank.  The Trustee tells us that

Sentry had "direct customer accounts" with BLMIS (and Sigma invested all its funds in Sentry),

which highlights an important distinction as Inteligo Bank did not have "direct customer

accounts" with BLMIS.  (Dkt. 1 ¶2.)  Nevertheless, the Trustee treats Sentry and Sigma the same

as Inteligo Bank because Inteligo Bank invested its customer's money in Sentry and Sigma, and

Sentry and Sigma in turn invested the majority of their funds in BLMIS.  Further, Inteligo

Bank's customers requested redemptions from Sigma and Sentry, so Inteligo Bank immediately

transferred any and all redemptions for those funds into its customer's accounts.  In other words,

Inteligo Bank was a mere conduit for funds that third-parties invested in BLMIS and that its

customers ultimately received through redemptions.  Inteligo Bank did not receive any direct

benefit from its customers investment in BLMIS.

The Trustee's argument seems premised on a test for personal jurisdiction that turns upon

who is the ultimate beneficial owner of the funds, but that is neither the applicable test nor does

it fit the facts concerning Inteligo Bank. Personal jurisdiction focuses on the defendant's substantial contacts with the forum, not the tracing history of a defendant's funds. And the tracing of the funds here would show that Inteligo Bank deposited the funds in its customers' accounts, as they are the beneficial owner of the funds. Inteligo Bank was only a conduit.

Here, Inteligo Bank's contacts with New York are far from substantial. BLMIS's transactions in New York took place with Sentry, not Inteligo Bank. The Trustee's effort to leapfrog over Sentry and Sigma in an effort to make an attenuated connection between Inteligo Bank and BLMIS appear more direct than it is runs afoul of the Supreme Court's recent and repeated admonition that "a defendant's relationship with a ... third party, standing alone, is an insufficient basis for jurisdiction." *Bristol-Myers*, 137 S. Ct at 1781 (quoting *Walden*, 571 U.S. at 286); *see, e.g.*, *Walden*, 571 U.S. at 284 ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction") (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). Thus, "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State," *Walden*, 571 U.S. at 291, and here the Trustee is focusing on the contacts between the plaintiff (BLMIS) and third parties (Sentry).

Prior to *Walden*, *Bristol-Myers*, and *Ford*, it is true that one Court found personal jurisdiction over a defendant who "intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom," but that is no longer good law and, again, it does not fit the facts of this case. *Picard v. Bureau of Labor Insurance (In re Bernard L. Madoff Inv. Sec. LLC)*, 480 B.R. 501, 506 (Bankr. S.D.N.Y. 2012) (*BLI*). The test is not whether a defendant purposefully availed himself of the

5

benefits and protections of New York laws but, as the Supreme Court explained just last year, whether a defendant "'exercises the privilege of *conducting activities within a state*'—thus 'enjoy[ing] the benefits and protection of [its] laws.'" *Ford*, 141 S. Ct. at 1025 (internal citations omitted) (emphasis added).   The *BLI* decision jumped over the inquiry into whether the defendant's conduct in the forum conferred such benefits, and instead just inquired whether it was foreseeable that the defendant would benefit from the forum.

*Walden* made clear that such foreseeability is not conclusive, as the defendant in *Walden* knowingly engaged in conduct outside the forum that he knew would harm the plaintiff in the forum state.   571 U.S. at 289-90.   But the Supreme Court reversed the lower court there, which followed similar analysis to the court in *BLI*, because "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."   *Id.* at 290.   The Supreme Court reiterated that same point in *Bristol-Myers*, explaining that *Walden* "held that the Nevada courts lacked specific jurisdiction even though the plaintiffs were Nevada residents and 'suffered foreseeable harm in Nevada.'   Because the '*relevant* conduct occurred entirely in Georgi[a] ... the mere fact that [this] conduct affected plaintiffs with connections to the forum State d[id] not suffice to authorize jurisdiction.'"   137 S. Ct. at 1781-82 (quoting *Walden*, 571 U.S. at 289, 291) (emphasis and alterations in *Bristol-Myers*).   *Walden* made clear that the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, *not the defendant's contacts with persons who reside there*."   571 U.S. at 285 (emphasis added).

In other words, *Walden* made clear that this focus upon a defendant's "own contacts" with the forum is controlling, even when a defendant has "knowledge" of the plaintiff's strong connections to the forum and the defendant's own conduct from abroad may cause "foreseeable

harm" in the forum. *Walden*, 571 U.S. at 289. The Trustee's claim that it was foreseeable that, after Inteligo Bank invested its customers' funds with Sentry and Sigma, those funds would later be invested invest with BLMIS in New York and thereafter a seed will foreseeably grow, is far too attenuated to create personal jurisdiction over Inteligo Bank.

The *BLI* analysis also fails because Inteligo Bank did not toss that seed – it was tossed by Sentry (on behalf of Inteligo Bank's customers) and that makes a difference. Crediting the Trustee's theory would undermine a defendant's ability to "'structure [its] primary conduct' to lessen or avoid exposure to a given State's courts," *Ford*, 141 S. Ct. at 1025 (quoting *Volkswagen*, 444 U.S. at 297), by shifting the personal jurisdiction focus away from the place or defendant's "primary conduct" to wherever the effects of that conduct could conceivably be felt. In the world of modern international business, foreseeable impacts around the globe can readily be imagined, so such a test would deprive Inteligo Bank of any meaningful way to structure its primary conduct to avoid being haled into court in distant forums. The appropriate test focuses on whether Inteligo Bank, "the defendant[,] purposefully avails itself of the privilege of *conducting activities within the forum* State," *Burger King*, 471 U.S at 475 (emphasis added), not whether it was foreseeable to Inteligo Bank that by investing in Sentry, it would cause Sentry would conduct activities in New York with BLMIS.

### 2. Inteligo Bank's Subscription Agreement With Sentry Does Not Create Personal Jurisdiction

The Trustee's argument that Inteligo Bank's subscription agreement with Sentry creates personal jurisdiction in New York is just a different way of framing its improper third-party personal jurisdiction argument. (Dkt. 1 ¶7.) In *Bristol-Myers*, the Supreme Court rejected the plaintiff's similar "last ditch" effort to establish personal jurisdiction. 137 S. Ct. at 1783. There, the plaintiff argued that the defendant had submitted to personal jurisdiction in the California

7

forum through its "decision to contract with a California company" to distribute the defendant's products. *Id.* The Supreme Court rejected that theory of personal jurisdiction because looking to the acts of the third party with whom the defendant contracted shifts the focus from a defendant's acts to the acts of third parties. *Id.* As the Supreme Court earlier explained: "If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." *Burger King*, 471 U.S. at 478.

Accordingly, New York federal and state courts have routinely refused to find specific jurisdiction over a nonresident defendant based on allegations that the defendant contracted with a New York plaintiff that performed or was expected to perform under the contract in New York.[1] The case law makes clear that the pertinent question is, instead, whether and to what extent the defendant performed or was obligated to perform in New York under the contract.[2]

---

[1] *See, e.g., Giuliano v. Barch*, 2017 WL 1234042, at *9 (S.D.N.Y. Mar. 31, 2017) ("Plaintiff's contention that the Court has personal jurisdiction because Plaintiff performed *his* obligations under the Agreements in New York is also unavailing.") (emphasis in original); *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 327 (S.D.N.Y. 2015) (plaintiff's "unilateral activity in the forum state would be insufficient to establish jurisdiction"); *Roper Starch Worldwide, Inc. v. Reymer & Assocs.*, 2 F. Supp. 2d 470, 474 (S.D.N.Y. 1998) (defendant's "knowledge of, and acquiescence in," New York plaintiff's performance in New York of services under the parties' contract did not suffice to establish personal jurisdiction over nonresident corporation); *SunLight Gen. Cap. LLC v. CJS Invs. Inc.*, 114 A.D.3d 521, 522 (1st Dep't 2014) ("Plaintiff's actions within New York" in connection with contract with out-of-state defendant could not "be imputed to [defendant] for jurisdictional purposes"); *see also Ferrante Equip. Co. v. Lasker-Goldman Corp.*, 26 N.Y.2d 280, 285 ("The mere receipt by a nonresident of benefit or profit from a contract performed by others in New York is clearly not an act by the recipient in this State sufficient to confer jurisdiction under our longarm statute.").

[2] *See Mortg. Funding Corp. v. Boyer Lake Pointe, LC*, 379 F. Supp. 2d 282, 288 (E.D.N.Y. 2005) ("Even though the Plaintiff may have expended time, energy and resources in New York . . . carrying out [its] obligations under the alleged contract, the Plaintiff's business interactions with New York are not at issue when assessing personal jurisdiction. Rather, the Court must evaluate the Defendants' activities and conduct [in New York]."); *Int'l Customs Assocs. v. Ford Motor Co.*, 893 F. Supp. 1251, 1262 (S.D.N.Y. 1995) ("contention that the majority of [plaintiff]'s performance under the contract would occur in New York" did not establish

The Trustee highlights that Inteligo Bank sent this agreement to Sentry in New York (Dkt. 1 ¶7), but that isolated contact is insufficient to create personal jurisdiction. The Trustee invokes New York's long-arm statute in claiming personal jurisdiction, but "New York courts have consistently refused to sustain section 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York." *Maranga v. Vira*, 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005) (quoting *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983)); *accord Int'l Customs Assocs.*, 893 F. Supp. at 1261 ("Telephone calls and correspondence sent into New York, by a non-domiciliary defendant who is outside New York, generally are insufficient to establish personal jurisdiction.") (collecting cases); *RBC Cap. Mkts., LLC v. Garcia Hamilton & Assocs., LP*, 2021 WL 230194, at *4 (S.D.N.Y. Jan. 22, 2021) (same).

Instead, "[o]nly in cases where the telephone call or communication clearly shows that the defendant intends to project itself into ongoing New York commerce, such as where a *defendant directly conducts* market activity or securities transactions in New York over the telephone, do New York courts sustain jurisdiction based on telephone calls or facsimile transmissions alone." *Metals Alliance Corp. v. Beshay*, 1998 WL 811788, at *2 (S.D.N.Y. Nov. 19, 1998) (emphasis added). In particular, and as is alleged here, "[t]he defendants' acts of faxing the executed contracts to New York . . . do not qualify as purposeful acts constituting the transacting of business." *See Kimco Exch. Place Corp. v. Thomas Benz, Inc.,* 34 A.D.3d 433, 434 (2d Dep't 2006). And whatever investments Sentry made in BLMIS, those investments certainly were not made directly by Inteligo Bank.

---

jurisdiction, because "appropriate focus . . . is on what the non-domiciliary defendant did in New York and not on what the plaintiffs did"), *aff'd*, 201 F.3d 431 (2d Cir. 1999).

The Trustee also overstates that Inteligo Bank "submitted to New York jurisdiction" in the subscription agreement (Dkt. 1 ¶7), as Paragraph 14 of that agreement submits only disputes under that Sentry-Inteligo Bank subscription agreement to New York jurisdiction. This Court and the UK Privy Council already have concluded that this provision does not apply to redemption actions. *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 2018 WL 3756343, at *11-12 (Bankr. S.D.N.Y. Aug. 6, 2018) (discussing *Fairfield Sentry Ltd. (In Liquidation) v. Migani*, [2014] UKPC 9); *accord In re Fairfield Sentry Ltd.*, 2020 WL 7345988, at *13 (S.D.N.Y. Dec. 14, 2020) ("The Court concluded in connection with the prior motion to dismiss that the U.S. Redeemer Actions were not proceedings with respect to the subscription agreements."). Moreover, the Trustee is not a party to or a third-party beneficiary of those agreements, and therefore is not entitled to invoke that agreement's forum selection clause. *See Dean St. Cap. Advisors, LLC v. Otoka Energy Corp.*, 2017 WL 476720, at *2, 4, 5 (S.D.N.Y. Feb. 2, 2017). Given that the Second Circuit has concluded that a defendant's participation in actual litigation in New York in unrelated cases does not confer specific personal jurisdiction, an agreement to litigate different claims with a third party that never have been brought would be insufficient as well. *Johnson v. UBS AG*, 791 F. App'x 240, 243 (2d Cir. 2019).

Nor does the fact that two foreign entities (Inteligo Bank and Sentry) agreed to submit disputes between them in a neutral forum in New York suggest that the exercise of jurisdiction over Inteligo Bank in other disputes would be reasonable. Litigation in a foreign court is inherently difficult, especially against a local party in that forum. Inteligo Bank's consent to jurisdiction in New York under extremely limited circumstances does not provide a justification for treating that as a broader concession than it was, and thereby eroding its personal jurisdiction

10

protections.  The law of personal jurisdiction does not operate on an in for a penny, in for a pound principle.

### 3.  The Transfer Of Funds Through New York And Other Incidental Contacts Are Insufficient To Confer Personal Jurisdiction Over Inteligo Bank

The Trustee also improperly seeks personal jurisdiction over Inteligo Bank because it "wired funds to Fairfield Sentry through a bank in New York, and met with its Fairfield Sentry account representatives in FGG's New York City office."  (Dkt. 1 ¶7.)  Neither basis provides a "substantial connection with the forum" that would establish personal jurisdiction.  *Walden*, 571 U.S. at 284.

The Second Circuit has rejected these bases for personal jurisdiction in other Madoff-related cases.  In affirming dismissal on personal jurisdiction grounds in *Hau Yin To v. HSBC Holdings, PLC*, 700 F. App'x 66, 67 (2d Cir. 2017), the Second Circuit explained: "The communication and transmission of information to and from Bernard L. Madoff Investment Securities LLC ('BLMIS') in connection with fund administration and custodial duties do not give rise to personal jurisdiction … Nor does the mere maintenance of correspondent bank accounts at an affiliate bank in New York."  The bank defendants in *Hau Yin To* corresponded and sent money directly to BLMIS and, thus, they had a closer relationship to BLMIS than Inteligo Bank.  Inteligo Bank sent money to Sentry and Sigma, which merely passed through a U.S. bank before being deposited in the Sentry and Sigma bank accounts in Ireland.  (Dkt. 1 ¶7 ("wired funds to Fairfield Sentry through a bank in New York").  Sigma, in turn, invested the money in Sentry, and Sentry sent money to BLMIS.  Consequently, the plaintiffs' failure to establish personal jurisdiction in *Hau Yin To* makes the Trustee's attempt to establish personal jurisdiction over Inteligo Bank much more of a stretch.

11

In another Madoff-related case, the Second Circuit affirmed dismissal for lack of personal jurisdiction where the defendant's contacts with "the forum and the litigation amount to a handful of communications and transfers of funds," concluding: "These limited contacts are insufficient to allow the exercise of specific personal jurisdiction over the UBS Defendants." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 345 (2d Cir. 2018). Like *Hau Yin To*, the defendants in *SPV* were banks that represented certain BLMIS feeder funds, similar to Sentry in the present case, demonstrating once again that the Second Circuit has rejected claims of personal jurisdiction over defendants with a much closer connection to BLMIS and New York than whatever attenuated connection the Plaintiff claims exists with Inteligo Bank.[3]

---

[3] Most recently, in *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 403 (S.D.N.Y. 2021), Judge Caproni held that the fact that a transfer at issue passed through a New York correspondent account did not show a non-bank defendant's "purposeful" use of the account, "even if [he] not only knew that a New York correspondent account was being used but actually coordinated [its] use," where he did not maintain the account and the money only passed through it in route to a foreign bank account:

> The vast majority of cases in which the issue is whether the use of a correspondent bank account constitutes the transaction of business under Section 302(a)(1) involve a non-domiciliary bank defendant's use of a correspondent account, not an individual's wiring of funds that incidentally pass through a New York-based correspondent account. . . . Plaintiffs have identified no authority, nor is the Court aware of any, standing for the principle that a non-domiciliary individual defendant may be subject to specific jurisdiction in New York under Section 302(a)(1) because the non-domiciliary moved money between foreign bank accounts, with the transfer passing through New York via a correspondent account.

*Id.* at 403-04; *see also Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339–40 (S.D.N.Y. 2016) (finding transmission of information and funds to and from BLMIS to be "incidental consequences of fulfilling a foreign contract . . . insufficient to 'project' the Foreign Defendants into New York" and "not amount[ing] to 'purposeful availment' of the laws of" the forum); *Universal Trading & Inv. Co. v. Tymoshenko*, 2012 WL 6186471, at *3 (S.D.N.Y. Dec. 12, 2012) (finding no case where "foreign individual holding foreign accounts has been found to be subject to jurisdiction in New York because their bank moved money through New York via a correspondent account" and concluding "courts have only found the banks themselves to be subject to jurisdiction where they have moved money through New York"); *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 726–27 (S.D.N.Y. 2010) ("[C]ourts in this district have routinely held that merely maintaining a New York

The Trustee's Complaint also alleges that Inteligo Bank "met with its Fairfield Sentry account representatives in FGG's New York City office," but omits that this meeting occurred in 2008, just a few weeks before Mr. Madoff was arrested, and roughly eight years *after* Inteligo Bank began facilitating its customers' investments in Sentry. Not only is this incidental contact too isolated to establish personal jurisdiction, it occurred too late to have influenced Inteligo Bank's prior investments of its customers' funds in Sentry. *See, e.g.*, *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 380, 382 (1967) (fact that Illinois corporation's representatives traveled to New York and spent one day there conferring with plaintiff over contract dispute did not rise to purposeful availment under NY CPLR § 302(a)(1)).

Finally, while the Trustee's Complaint summarily alleges that Inteligo Bank "derived significant revenue from New York and maintained minimum contacts and/or general business contacts with the United States and New York in connection with the claims alleged herein" (Dkt. 1 ¶7), that is an unsupported conclusory allegation. This assertion is also demonstrably untrue – every single investment in question was an investment of Inteligo Bank's customers, at its customers' direction. As such, all redemptions from these investments were immediately transferred to Inteligo Bank's customers' accounts. Inteligo Bank did not invest any of its own portfolio, nor did it keep any revenue from these investments. While the Trustee might make bare, unsupported assertions, the Court cannot accept a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007)). Moreover, "[a] litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." *Citizens United v.*

---

correspondent bank account is insufficient to subject a foreign bank to personal jurisdiction." (citing cases)); *In re Banco Santander Securities-Optimal Litig.*, 732 F. Supp. 2d 1305, 1320-22 (S.D. Fla. 2010) (finding that HSBC's contacts with New York in connection with obligations as a Madoff feeder fund administrator and custodian were incidental to a foreign contractual relationship and do not meet the New York long arm statute's transacting business requirement).

13

*Schneiderman*, 882 F.3d 374, 384–85 (2d Cir. 2018). As explained above, Inteligo Bank's conduct in New York is virtually non-existent and it would violate fundamental due process for it to be required to defend against suit there.

## II.   THE TRUSTEE'S CLAIM IS BARRED BY THE MERE CONDUIT DEFENSE OR THE SECTION 546(e) SAFE HARBOR

The Trustee's claim is barred because Inteligo Bank was a mere conduit and, as such, cannot be considered a transferee, *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 130 F.3d 52, 57 (2d Cir. 1997), or the Trustee's claim is barred by the Section 546(e) safe harbor. The safe harbor of Section 546(e) has been litigated extensively in the Madoff-related litigation, and the Second Circuit has affirmed the dismissal of the Trustee's claims on this basis in some cases. *In re BLMIS (Ira Fishman Revocable Trust)*, 773 F.3d 411 (2d Cir. 2014) ("*Fishman*"), *accord In re BLMIS*, 976 F.3d 184, 193 (2d Cir. 2020). This Court recently explained: "Section 546(e) is referred to as the safe harbor because it protects a transfer that is a 'settlement payment ... made by or to (or for the benefit of) a ... financial institution [or] financial participant,' or that is 'made by or to (or for the benefit of) a ... financial institution [or] financial participant ... in connection with a securities contract.'" *SIPC v. BLMIS*, 2022 WL 2135019, at *8 (Bankr. S.D.N.Y. June 14, 2022) (alterations in original) (citing 11 U.S.C. § 546(e)). The Second Circuit has emphasized, "Section 546(e) is a very broadly worded safe-harbor provision." *Fishman*, 773 F.3d at 416. There is no doubt that the redemption payments made to Inteligo Bank for the benefit of its customers fall within this safe harbor.

### A. Inteligo Bank Is Either Subject To The Mere Conduit Defense Or The Initial Transferee For Purposes Of The Section 546(e) Safe Harbor

Long after the Trustee brought this claim against Inteligo Bank (and similar claims against others), the Supreme Court's decision in *Merit Management Group LP v. FTI*

*Consulting, Inc.*, 138 S. Ct. 883 (2018), indicated that the Trustee had misidentified the "initial transferee" for purposed on Section 550(a)(1).   The Trustee's complaint alleges that Inteligo Bank invested in Sentry and Sigma, knowing those funds would be invested in BLMIS.  (Dkt. 1 ¶6.)  As this Court recently noted, the Trustee's position is that these "Fairfield Funds were created as conduits" for investing in BLMIS.  *SIPC v. BLMIS*, 2021 WL 3477479, at *7 (Bankr. S.D.N.Y. Aug. 6, 2021).  Thus, the Trustee's Complaint alleges that when Inteligo Bank sought to redeem its customers' investment, "Inteligo knowingly received subsequent transfers from BLMIS by withdrawing money from Fairfield Sentry and Fairfield Sigma, both Fairfield Greenwich Group ('FGG') managed Madoff feeder funds." (Dkt. 1 ¶6.)

In characterizing those transaction, the Trustee explained that "Fairfield Sentry received initial transfers of BLMIS Customer Property" and he was seeking funds that "were subsequently transferred directly or indirectly to Defendant Inteligo." (Dkt. 1 ¶6.)  Plainly though, the Trustee was not trying to collect what he called the "initial transfers of Customer Property from Fairfield Sentry to BLMIS" in this action, as he already brought a claim for those funds against Sentry.  (Dkt. 1 ¶35.)  This Court noted that Sentry consented to a judgment of more than $3 billion in that action.  *BMLIS*, 2022 WL 2135019, at *2.  Instead, the Trustee made clear he was seeking what he characterized at subsequent transfers from Sentry to Inteligo Bank under Section 550.  (Dkt. 1 ¶36.)

It turned out, however, that the Trustee had mischaracterized how these transactions should be viewed for purposes of Section 546(e).  In *Merit*, the Supreme Court ultimately "determine[d] how the safe harbor operates in the context of a transfer that was executed via one or more transactions, *e.g.,* a transfer from A → D that was executed via B and C as intermediaries, such that the component parts of the transfer include A → B → C → D." 138 S.

15

Ct. at 888. That is essentially the same fact-pattern here, where Inteligo Bank sought the return

on its customers' ultimate investment in BMLIS and those funds were returned to it through a

conduit in Sentry. In *Merit*, "the Supreme Court held that "the relevant transfer for purposes of

the § 546(e) safe-harbor inquiry is the overarching transfer that the trustee seeks to avoid," and

"not any component part of that transfer." *In re Nine West LBO Sec. Litig.*, 482 F. Supp. 3d 187,

206 (S.D.N.Y. 2020) (quoting *Merit*, 138 S. Ct. at 893).[4] As the Second Circuit explained, "the

term 'initial transferee' references something more particular than the initial recipient" and it

accordingly has "held that 'mere conduits' of fraudulent transfers are not 'initial transferees.'"

*In re Bicom NY, LLC*, 2022 WL 1419997, at *1 (2d Cir. May 5, 2022) (quoting *In re Finley,* 130

F.3d at 52). Properly viewed then, the transaction should be views as BLMIS transferring the

funds to Inteligo Bank's customers as the initial transferee, with Sentry, Sigma, and Inteligo

Bank acting as mere conduits in those transactions. As a mere conduit, Inteligo Bank would not

be liable. *In re Finley*, 130 F.3d at 57.

Alternatively, because Sentry is recognized as a mere conduit even by the Trustee, even if

Inteligo Bank were viewed as the initial transferee, Inteligo Bank qualifies for the Section 546(e)

safe harbor. *BLMIS*, 2021 WL 3477479, at *7.[5] Framed in that manner, the other elements of

---

[4] Whether Section 546(e) applies to a transaction may very well depend upon how a transaction is defined. In *Merit*, the defendant pointed to intermediate bank-to-bank transfers that would fall within Section 546(e) in isolation, but the Court viewed the transaction from end-to-end and Section 546(e) did not apply because the recipient was not "a 'financial institution' or other covered entity." 138 S. Ct. at 897.

[5] Even more recently, at the June 15, 2022 hearing, counsel for the Trustee told the Court that "BLMIS was Sentry's de facto investment manager [and] BLMIS made the investment decisions for Sentry and that Sentry had no control over those decisions." *In re BLMIS* (Banque Lombard Odier), No. 12-01693, Tr. at 104 (Bankr. S.D.N.Y. June 15, 2022) (statement of Mr. Calvani). He also said there is not "much daylight between Sentry and BLMIS. Sentry was not an independent and legitimate fund. It was just Madoff's marketing arm. It was wholly dependent upon Madoff and its sole purpose was to feed investors in Madoff." *Id.* at 106. That is a plain acknowledgment that Sentry was just a mere conduit.

Section 546(e) are clearly present.  The Second Circuit already has found that "BLMIS was a 'stockbroker' for the purposes of § 546(e)," and that transactions from BLMIS to its customers were in connection with securities contracts, and that "the transfers constituted 'settlement payments,' which provides another basis to shield the transfers from avoidance under § 546(e)." *Fishman*, 773 F.3d at 417, 422.  More specifically, Judge Rakoff "has held that section 564(e) bars the Trustee's claims. . .  except where a transferee had actual knowledge of Madoff Securities' fraud," such that "in the majority of cases, section 546(e) requires the dismissal of the Trustee's avoidance claims."  *SIPC v. BLMIS*, 505 B.R. 135, 142 (S.D.N.Y. 2013); *see also BLMIS*, 2021 WL 3477479, at *6 (granting FGG employee Corina Noel Piedrahita Section 546(e) safe harbor in her personal capacity due to lack of personal knowledge).  Thus, the cases to date reflect that the BLMIS transfers satisfy the primary elements of Section 546(e), but defendants have a mixed record of success depending on whether the actual knowledge of fraud exception applies.

Just as transfers from BLMIS to Sentry would on their face fall within the protection of Section 546(e), the same is true when Inteligo Bank receives the money it requested from BLMIS via Sentry.  As the Trustee acknowledges, "Defendant Inteligo was a private financial advisory and banking services company" (Dkt. 1 ¶3), so it is a covered entity under Section 546(e) as a "financial institution," 11 U.S.C. § 101(22)(A) (defining "financial institution" to include a "commercial or savings bank").

To be sure, this Court has recognized that if "the Trustee sufficiently alleges that the [initial] transferee from whom he seeks to recover a fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor," and this Court repeatedly has found that Sentry could not invalidate the BLMIS transfers to it because

17

Sentry is alleged to have known of the fraud.  *SIPC v. BLMIS*, 2022 WL 2135019, at *8-9 (Bankr. S.D.N.Y. June 14, 2022) (quoting *BLMIS*, 2021 WL 3477479, at *4) (alterations in 2022 opinion).  But the fact that Sentry allegedly had such knowledge of BLMIS's fraud does not prevent Inteligo Bank, as the initial transferee, from invoking Section 546(e)'s safe harbor.

This "safe harbor [is] intended to promote the legitimate workings of the securities markets and the reasonable expectations of legitimate investors," so the focus must be on the intent of the transferee.  *SIPC v. BLMIS (Cohmad)*, 2013 WL 1609154, at *4 (S.D.N.Y. Apr. 15, 2013).  Despite finding BLMIS permeated with fraud as the sender of funds, Judge Rakoff found that "Madoff Securities' customers, "having every reason to believe that Madoff Securities was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded the customers of stockbrokers, including the protection offered by § 546(e)."  *Id.* at *2 (internal citations omitted).   The Second Circuit agreed. *Fishman*, 773 F.3d at 420, 423.  A legitimate investor's defense under Section 546(e) cannot be defeated simply because Mr. Madoff had the funds delivered by an equally crooked henchman or the funds were passed on to the innocent defendant by others aware of BLMIS' fraud. Otherwise, the protection of Section 546(e)'s safe harbor would not turn on "the reasonable expectations of legitimate investors," but the fortuity of whether the intermediaries chosen by BLMIS to deliver the funds were innocent or crooked.

Although any claim by Sentry to find refuge under Section 546(e) would fail due to the allegations that Sentry was well aware of the BLMIS fraud, there are no comparable allegations that Inteligo Bank was aware of BLMIS' wrongdoing, just the opposite.  This Court has addressed at length the Trustee's claim of Sentry's actual knowledge, *BLMIS*, 2022 WL 2135019, at *9, but the Trustee makes no such allegations against Inteligo Bank.  Instead, the

Trustee alleges that "[o]utwardly" Madoff credited his success to a so-called spilt-strike conversion strategy and "Madoff assured clients and regulators" that he was making genuine transaction.  (Dkt. 1 ¶¶ 24, 26.)  Like the complaint in *Fishman*, the complaint here claims that Madoff "promised" clients that he would make investments, and the Second Circuit credited the defendants with believing that promise.  (*Compare* Dkt. 1 ¶26 *with Fishman*, 773 F.3d at 419.) There is no allegation in the Complaint that Inteligo Bank knew otherwise.[6]  The Second Circuit has highlighted the importance of allowing defendants, such as Inteligo Bank which was unaware of the fraud to seek refuge in Section 546(e)'s safe harbor:

> The magnitude of BLMIS's scheme, which included thousands of customers and billions of dollars under management, is unprecedented.  Permitting the clawback of millions, if not billions, of dollars from BLMIS clients—many of whom are institutional investors and feeder funds—would likely cause the very "displacement" that Congress hoped to minimize in enacting § 546(e).  The clawback defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded to the clients of stockbrokers, including the protection offered by § 546(e).

*Fishman*, 773 F.3d at 420.

---

[6] The Complaint provides this Court no reason to question Inteligo Bank's good faith.  The Complaint details Madoff's success over many years of duping regulators and sophisticated investors, and provides no reason to doubt that Inteligo Bank was not among those duped. Absent some credible factual allegation to the contrary, the Court should presume that Inteligo Bank would not knowingly invest in a Ponzi scheme.  *See, e.g.*, *In re BLMIS*, 548 B.R. 13, 32 (Bankr. S.D.N.Y. 2016) ("While greed may cloud judgment, it is not plausible that the average financial professional owing fiduciary duties to its own clients and investors would knowingly invest their money in a Ponzi scheme that is doomed to collapse."); *In re BLMIS*, 594 B.R. 197, 204 (Bankr. S.D.N.Y. 2018) (finding it "implausible" that defendants would invest "if they subjectively believed that there was a high probability that BLMIS was not actually trading securities"); *Buchwald Capital Advisors LLC v. JP Morgan Chase Bank, N.A. (In re Fabrikant & Sons, Inc.)*, 480 B.R. 480, 489 (S.D.N.Y. 2012) (dismissing allegations that banks would knowingly invest in a debtor they knew was "shuffling money around to meet short term obligations"), *aff'd*, 541 F. App'x 55 (2d Cir. 2013).

Accordingly, Inteligo Bank falls squarely within Section 546(e) and the exception for actual knowledge is inapplicable, so it cannot be jettisoned from this safe harbor. The Trustee's six-year claims should be dismissed.

### B. Inteligo Bank Is Entitled To Section 546(e)'s Safe Harbor Even If It Were A Subsequent Tranferee

Judge Rakoff has made clear that a subsequent transferee can challenge the initial transfer under Section 546(e), *Cohmad*, 2013 WL 1609154, at *4, but the case law is muddled when such challenges are viewed in practice. Inteligo Bank is mindful that this Court has held that a subsequent transferee can use Section 546(e) to challenge the initial transfer, but not to challenge the subsequent transfer received by that defendant. *BLMIS*, 2022 WL 2135019, at *9; *SIPC v. BLMIS*, 2022 WL 2137073, at *10 (Bankr. S.D.N.Y. June 13, 2022). Nevertheless, those decisions require a subsequent defendant to prove the innocent knowledge of a third-party, the initial transferee, rather than their own innocent knowledge with respect to that initial transfer. Respectfully, Inteligo Bank believes those conclusions are inconsistent with Judge Rakoff's prior opinion and the statutory language, and Inteligo Bank encourages this Court to reconsider its opinion and, alternatively, writes to preserve its argument for appeal.

The controlling factor in Judge Rakoff's opinions is the innocence of the defendant transferee, regardless of whether that defendant is the initial or a subsequent transferee. He explains that Section 546(e)'s safe harbor exists for the "protection of the securities markets and of the reasonable expectations of legitimate participants in these markets." *Cohmad*, 2013 WL 1609154, at *4. Where an initial transferee invokes Section 546(e), allowing the initial transferee to point to their own innocence in receiving those funds makes sense and is entirely consistent with the purpose of protecting "the reasonable expectations of legitimate participants."

20

If the defense fails due to the initial transferee's knowing participation in the wrongdoing, fault clearly lies in the hands of the initial transferee.

But that is not true of the way this Court has applied Section 546(e) when invoked by a subsequent transferee. The subsequent transferee should be afforded standing to assert their own innocent knowledge with respect to the initial and subsequent transfers. That would restore parity among all transferees under Section 546(e) and ensure that "the reasonable expectations of legitimate participants" are protected. Placing the burden on a subsequent transferee to prove the innocent knowledge of a third-party, the initial transferee, puts the subsequent transferee in an impossible position of mind reader[7] and one where its own innocent knowledge will not provide it with a safe harbor despite being an innocent "legitimate participant."

That does not appear to be what Judge Rakoff intended. Instead, when it was the subsequent transferee as the defendant, his focus was on the subsequent transferee's intent. Even when the initial transferee had innocent intent and would be entitled to Section 546(e)'s safe harbor, a subsequent transferee who knew of the fraud would not benefit. Quoting Judge Rakoff and then explaining his reasoning, this Court explained:

> 'There is one caveat to this rule: to the extent that an innocent customer transferred funds to a subsequent transferee who had actual knowledge of Madoff Securities' fraud, that subsequent transferee cannot prevail on a motion to dismiss on the basis of Section 546(e)'s safe harbor.' This is because a defendant is not permitted to launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of § 546(e).

---

[7] A subsequent transferee who was aware that the initial transferee believed the funds at issue were tainted would lack the innocent knowledge to seek the safe harbor. Thus, our concern here is with innocent subsequent transferees, like Inteligo Bank, who are faulted for not knowing that the initial transferee secretly thought otherwise.

21

*BLMIS*, 2021 WL 3477479, at *4 (quoting *Cohmad*, 2013 WL 1609154, at *7). That, of course, makes sense, as it ties the availability of Section 546(e)'s safe harbor to the subsequent transferee's own knowledge.

It also demonstrates that Judge Rakoff's focus was on the intent of each defendant personally, rather than just the formalism of looking at the transaction between BLMIS and the initial transferee. If the initial transferee was an "innocent customer," the initial transfer would not be avoidable as to the initial transferee, but it would be when challenged by a subsequent transferee who knew better. Thus, where guilty knowledge exists on the part of a transferee, whether initial or subsequent, the loss of the safe harbor makes sense at to that defendant. It makes no sense that an innocent initial transferee can still benefit from the safe harbor, while an equally innocent subsequent transferee could not. If anything, such a rule is a particularly perverse form of guilt by association that does not apply to someone who deals directly with the guilty party, but applies only to those with a more distant connection. That cannot be what either Congress or Judge Rakoff intended.

The statutory language confirms Inteligo Bank's view. There is no explicit "actual knowledge" exception in Section 546(e), but Judge Rakoff did not just invent that limitation. Rather, it is somewhat of a compromise with the position taken by the Trustee in the prior proceeding. Section 546(e) requires that the transaction be "in connection with a securities contract," and the Trustee argued that there was no genuine "securities contract" with BLMIS because it did not actual buy securities. Judge Rakoff and the Second Circuit rejected that argument to the extent that defendants *believed* BLMIS' promises that it would buy securities. But that rationale does not hold where a defendant is aware of BLMIS' fraud and that there is no genuine securities contract and, consequently, has no legitimate investor expectations to protect.

Moreover, there is no disagreement that both the initial transferee and subsequent transferee have standing to invoke Section 546(e) with respect to the initial transfer. The issue when Section 546(e) is invoked by a subsequent transferee is whether the subsequent transferee believed there was a valid securities contract with respect to the initial transfer. Nothing in the statutory language says that a subsequent transferee must prove what the initial transferee did or did not know, and there is no reason that the subsequent and initial transferee must have believed the same thing. Again, parity and good policy are restored to Section 546(e) by holding that a transferee – initial or subsequent – can invoke the safe harbor if they were innocent, but not if they had actual knowledge of the BLMIS fraud.[8]

### C. Inteligo Bank Has An Alternative Basis For Invoking Section 546(e)'s Safe Harbor

Judge Rakoff also blessed an alternative basis for invoking Section 546(e)'s safe harbor in his *Cohmad* decision where "the transfers to these defendants were made in conjunction with agreements that independently satisfy Section 546(e)'s requirements," and that is the case here. 2013 WL 1609154, at *8. Section 546(e) requires that a transfer be "in connection with a securities contract." 11 U.S.C. § 546(e). Those who knew BLMIS was a fraud and that securities were not really being traded would know that any transfer by BLMIS was not in

---

[8] If the Court were to find that Inteligo Bank was a subsequent transferee, Section 550(b) provides Inteligo Bank with a good faith defense that would preclude the Trustee's recovery of that transfer. As noted above, *supra* at 17, the Trustee's Complaint itself acknowledges that BLMIS promised that it was trading in securities and had duped regulators and investors. There is no allegation that Inteligo Bank had any knowledge of BLMIS's fraud and it is non-sensical that it would have knowingly invest in a Ponzi scheme that would "mimic the movement of the S&P 100" (Dkt. 1 ¶24) when there is no shortage of legitimate S&P 100 funds in which it could have invested. Thus, the Complaint itself proves the Section 550(b) defense for Inteligo Bank even under the Trustee's view that this case involves a subsequent transfer.

connection with a securities contract, so the BLMIS agreement could not serve as the "securities contract" hook for a defendant to invoke Section 546(e).[9]

But unlike BLMIS's direct customers and many others, Inteligo Bank can invoke Section 546(e) on an alternative basis, its agreements with Sentry. Judge Rakoff recognized that "a securities contract includes . . . the Madoff Securities account agreements," but he went on to explain that "the definition of a securities contract is in fact much broader and includes, *inter alia,* investment fund subscription agreements." *Cohmad*, 2013 WL 1609154, at *8. Judge Rakoff evaluated the statutory language and concluded that "Section 546(e)'s reach does not depend on the involvement of the debtor in the securities contract at issue." *Id.* at *9. As the Trustee recognizes in the Complaint, "Defendant Inteligo entered into a subscription agreement with Fairfield Sentry." (Dkt. 1 ¶7.)

Judge Rakoff also found that "where the Trustee alleges that a defendant is 'a banking institution,' 'a national bank,' or 'a nationally chartered bank,' . . . the defendant may be deemed to constitute a protected 'financial institution or 'financial participant' for the purposes of Section 546(e) on the face of the complaint." *Cohmad*, 2013 WL 1609154, at *8. And here, the Trustee's Complaint recognizes that Inteligo Bank "was a private financial advisory and banking services company." (Dkt. 1 ¶3.)

Accordingly, Inteligo Bank satisfies the hypothetical Judge Rakoff offered in *Cohmad.*

---

[9] As Judge Rakoff explained in rejecting the Trustee's argument that defendants cannot invoke Section 546(e) because BMILS did not really trade in securities: "Those clients, the defendants here, having every reason to believe that Madoff Securities was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded the customers of stockbrokers, including the protection offered by § 546(e)." *SIPC v. BLMIS*, 476 B.R. 715, 720 (S.D.N.Y. 2012). The controlling factor is "that the defendants invested with Madoff Securities in the expectation that Madoff Securities would perform under the account agreements by purchasing specific securities." *Id*. Again, that rationale holds no force where a defendant is aware of the fraud and that BLMIS was not investing in securities.

24

> Take, for example, a hypothetical situation in which the Trustee alleges that a withdrawal of funds by an investment fund from its Madoff Securities customer account occurred because an investor in that fund sought redemption of its investment under the terms of its investment contract. Assuming that either the investment fund or the investor qualifies as a financial institution or financial participant, and barring other circumstances that may appear on the facts of a given case, that situation appears to fit within the plain terms of Section 546(e): an initial transfer that was 'made by or to (or for the benefit of) a ... financial institution [or] financial participant ... in connection with a securities contract.'

*Cohmad*, 2013 WL 1609154, at *9; *see also id.* at *10 ("[T]o the extent that a defendant claims protection under Section 546(e) under a separate securities contract as a financial participant or financial institution, the Bankruptcy Court must adjudicate those claims in the first instance consistent with this Opinion.") Accordingly, Inteligo Bank's subscription agreement with Sentry provides an alternative basis for it to invoke Section 546(e), and the Trustee's six-year claims should be dismissed.

## CONCLUSION

The Court should dismiss the Complaint against Inteligo Bank in its entirety for lack of personal jurisdiction and, alternatively, for failure to state a claim under either the mere conduit defense or the Section 546(e) safe harbor.[10]

Date: June 27, 2022

/s/ Heather Lamberg
Heather Lamberg (HLamberg@winston.com)
Christopher D. Man (CMan@winston.com)
WINSTON & STRAWN
1901 L Street, NW
Washington, DC 200036
(202) 282-5274 (phone)
(202) 282-5100 (fax)

---

[10] Inteligo Bank also disputes whether the Trustee can prove his claim that all the funds that he seeks can be traced to BLMIS, but that issue becomes moot if the Court dismisses the Complaint. If not, Inteligo Bank will raise this issue in seeking summary judgment.