**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (CGM) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | |
| Plaintiff, | Adv. Pro. No. 11-02541 (CGM) |
| v. | |
| FIRST GULF BANK, | |
| Defendant. | |

## FIRST GULF BANK'S REPLY MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      PRELIMINARY STATEMENT…………………………………………  1

II.     SECTION 546(E) BARS THE PLAINTIFF'S CLAIMS BECAUSE
        AN INNOCENT SUBSEQUENT TRANSFEREE IS ENTITLED TO
        SAFE-HARBOR PROTECTION EVEN IF THE INITIAL
        TRANSFEREE IS NOT.................................................................................  2

III.    THE TRUSTEE HAS NOT JUSTIFIED THE FAILURE TO
        PLAUSIBLY ALLEGE THAT FGB RECEIVED CUSTOMER
        PROPERTY…………………………………………………………  5

    A.  The Trustee Failed to Meet His Pleading Burden…………………………...  6

    B.  Tracing Analysis is Unnecessary Where Pleadings Negate Commingling..  7

    C.  The Trustee Has All Records Needed…………………………………………  8

    D.  The Trustee Has No Claims Against Defendants
        Who are Not "Transferees"…………………………………………………  8

    CONCLUSION ……………………………………………………………… 9

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>Cases</u>

*45 John Lofts, LLC v. Meridian Capital Group LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730
(Bankr. S.D.N.Y. 2019)…………………………………………………………………………6

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)……………...………………………………………………..………….5

*CNB International Inc. v. Kelleher (In re CNB International, Inc.),*
393 B.R. 306 (Bankr. W.D.N.Y. 2008)…………………………………………………………9

*Edmondson v. RCI Hospitality Holdings, Inc.,*
No. 16-CV-2242, 2020 WL 1503452 (S.D.N.Y. Mar. 30, 2020)…………………………………..8

*In re UBS AG Sec. Litig.,* No. 07 Civ. 11225, 2012 WL 4471265 (S.D.N.Y. 2012),
*aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. V. UBS AG,*
752 F.3d 173 (2d Cir. 2014)…………………………………………………………..…………3

*Picard v. Banque Lombard Odier & Cie SA,*
12-ap-1693 (CGM), ECF 115……………………………………………………………………2

*Picard v. BNP Paribas S.A. (In re Madoff),*
594 B.R. 167 (Bankr. S.D.N.Y. 2018) ("*BNP*")………………………………..………..………5

*Picard v. Charles Ellerin Rev. Tr. (In re Bernard L. Madoff Inv. Sec. LLC),*
No. 08–01789, 2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012)…………………….………...7

*Picard v. Cohmad Sec. Corp. (In re BLMIS),*
454 B.R. 317 (Bankr. S.D.N.Y. 2011)…………………………………………………………6, 8

*Picard v. Mayer (In re Bernard L. Madoff Inv. Sec. LLC),*
No. 08-01789, 2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021)…………………………………8

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC),*
515 B.R. 117 (Bankr. S.D.N.Y. 2014)……………………………………………..………6, 8, 9

*Picard v. Merkin (In re BLMIS),*
581 B.R. 370 (Bankr. S.D.N.Y. 2017) ("*Merkin II*")……………………………………………..7

*Picard v. Multi-Strategy Fund Limited,*
12 cv 01205 (CGM), ECF Dkt. # 122 *("Multi-Strategy")*……………………….…………..……1, 2

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC),*
542 B.R. 100 (Bankr. S.D.N.Y. 2015)……………………………………………...…………….…5, 7

*Picard v. Banque Syz & Co. SA,*
11 cv 02149 (CGM), ECF Dkt. # 167 ("*Syz*")……………………………………………..…..1, 2

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib., Inc.),*
379 B.R. 5 (Bankr. E.D.N.Y. 2007)……………………………………………………………..…6

*SIPC v. Bernard L. Madoff Inv. Sec. LLC,*
2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) *("Cohmad II")* ………………………..…………2-4

*SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.),*
620 B.R. 505 (Bankr. S.D.N.Y. 2020)……………………………………………..……………5

*United States v. Henshaw,*
388 F.3d 738 (10th Cir. 2004) .............................................................................................7

**Statutes**

11 U.S.C. § 546(e)…………………………………………………………..………..…*passim*

11 U.S.C. § 550(b)……………………………………………………………………………2

**Rules**

Fed. R. Civ. P. 8(a)…………………………………………………..………..………1, 2

Fed. R. Civ. P. 12(b)(2)…………………………..………………………………...………1

Fed. R. Civ. P. 12(b)(6)……………………………………………………....………………1

COMES NOW, Defendant First Gulf Bank[1] ("FGB"), by its undersigned counsel, and respectfully submits this reply memorandum of law in support of its motion to dismiss the Complaint (the "Complaint" No. 11-02541, ECF 1) filed by Plaintiff Irving H. Picard, Trustee (the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## PRELIMINARY STATEMENT

FGB has fully reviewed this Court's June 13 and 14 decisions in the *Multi-Strategy* and *Syz* actions,[2] which were issued after FGB brought and the Trustee opposed the motion to dismiss. FGB respectfully requests the Court give full consideration to the arguments in FGB's opening memorandum concerning the entitlement to the safe harbor provided by §546(e) contained in FGB's Opening Memo at point I.A- I.F **and** FGB's challenge that the complaint fails to adequately plead that FGB received BLMIS customer property contained in FGB's Opening Memo at Point II. Respectfully, full consideration of the motion to dismiss on these two (2) points is warranted despite the other orders of the Court, as there are additional legal arguments related to controlling precedent on the safe harbor defense for the Court to consider and the argument concerning alleged receipt of customer property is distinct from previous orders of this Court.

Defendant FGB recognizes that this Honorable Court will deny dismissal of the complaint on Points III – V of the Opening Brief (lack of personal jurisdiction, failure to adequately plead pursuant to FRCP Rule 8(a), and the good faith defense under §550(b), respectively), for the

---

[1] For the sake of consistency and convenience of the Court, FGB has used its former name as referenced in the Complaint. FGB is currently known as First Abu Dhabi Bank.

[2] *Picard v Multi-Strategy Fund Limited*, 12-ap-01205 (CGM), ECF 122 ("*Multi-Strategy*"); *Picard v Banque Syz & Co. SA*, 11-ap-02149 (CGM), ECF 167 ("*Syz*").

reasons set out by the Court in other orders.[3]    Accordingly, Defendant maintains that this case

should be dismissed for any of the five (5) grounds set forth in the Opening Memorandum (or all

of them), however for the sake of brevity and judicial efficiency, Defendant will simply rely on

the Opening Memorandum for Points III – V and this Reply will focus on the §546(e) safe harbor

argument and the failure of the complaint to adequately plead that FGB received BLMIS customer

property.

## I.    SECTION 546(e) BARS THE PLAINTIFF'S CLAIMS BECAUSE AN INNOCENT SUBSEQUENT TRANSFEREE IS ENTITLED TO SAFE-HARBOR PROTECTION EVEN IF THE INITIAL TRANSFEREE IS NOT.[4]

FGB's Opening Memo establishes that all statutory criteria for entitlement to the §546(e)

safe harbor protection for all the subsequent transfers the Trustee seeks to recover from it.

Trustee's opposition does not actually contest the statutory criteria (and those facts are

---

[3] *See, e.g., Picard v. Banque Lombard Odier & Cie SA*, 12-ap-1693 (CGM), ECF 115, at 7-10 ("*Lombard Odier*"), holding that Plaintiff has established *prima facie* evidence of personal jurisdiction based on, *inter alia*, purposeful availment, forum conduct, and reasonableness; *see also Syz*. 11-ap-02149, ECF 167, at 13-16 and 22-24 denying dismissal under FRCP 8(a) and § 550(b) respectively.

[4] This court held in *Multi-Strategy* and *Syz* that § 546(e) does not apply to subsequent transfers and transferees; and that it did not reach a different result in *Picard v. Fairfield Inv. Fund Ltd. (Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC)*, No. 09-012239, (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*"). *Multi-Strategy*, 12-ap-01205, ECF 122, at 19-21; *Syz* 11-ap-02149, ECF 167, at 20-22. Respectfully, Defendant submits that the *Multi-Strategy* and *Syz* decisions are at odds with the District Court's controlling precedent in *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 12-mc-115, 2013 WL 1609154 (S.D.N.Y. Apr. 16, 2013) and that the properly applied controlling precedent in its *Fairfield Inv. Fund* decision, which follows *SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 12 MC 115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad II's*"), *Cohmad II's* reasoning and quotes a key *Cohmad II* holding, stating "if the Trustee sufficiently alleges that the transferee from who he seeks to recover a fraudulent transfer knew of Madoff Securities' fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor." *Id.*, at *4 (emphasis added); quoting *Cohmad II*). The court examined whether the plaintiff sufficiently alleged facts establishing actual knowledge as to each defendant. *Id.*, at *5 - *7, and concluded that the plaintiff had done so for all except the one defendant who was only a subsequent transferee, *Id.*, at *4-6, *15. As to the defendant, the court found the plaintiff had "failed to plead individualized factual allegations demonstrating that [she] had independent actual knowledge of the BLMIS fraud" and dismissed all claims against her. *Id.*, at *6. FGB respectfully requests the court to consider the argument and dismiss the claims against it under the safe harbor.

established),[5] rather it instead relies on a misread of the District Court's controlling decision *Cohmad II*. That decision rejects the Trustee's position and compels dismissal of the claims.

Innocent subsequent transferees like FGB are entitled to the safe harbor even if the initial transferor and transferee had actual knowledge of fraud. *Cohmad II* is precedential and not *dicta*, because the court directed it to be applied to many adversary proceedings besides the case pending before it. *See, e.g. Cohmad II*, supra, at *10. Specifically, *Cohmad II* holds that the relevant "actual knowledge" that would defeat application of § 546(e) safe harbor is the knowledge of the named party from which the Trustee seeks to recover (not some other entity):

> (1) Where the Trustee has sought to avoid transfers to an <u>initial transferee</u>, the avoidance of which would otherwise be barred by Section 546(e) …, the <u>initial transferee</u> will not be able to prevail on a motion to dismiss some or all of the Trustee's avoidance claims simply on the basis of the Section 546(e) "safe harbor" if the Trustee has alleged that the <u>initial transferee</u> had actual knowledge of Madoff Securities' fraud; and

> (2) Where the Trustee has sought to recover transfers made to a <u>subsequent transferee</u>, the avoidance of which would otherwise be barred by Section 546(e) as to the initial transferee, the <u>subsequent transferee</u> will not be able to prevail on a motion to dismiss some or all of the Trustee's avoidance claims simply on the basis of the Section 546(e) "safe harbor" *if* the Trustee has alleged that the <u>subsequent transferee</u> had actual knowledge of Madoff Securities' fraud.

*Cohmad II*, 2013 WL 1609154, at *1 (emphasis added, except "*if*").

The second of the two paragraphs is directed to a subsequent transferee with actual knowledge of Madoff's fraud, not a subsequent transferee without said knowledge. In implementing the Order, the court included the quoted language and underlined the word "subsequent" at the end, showing that the decision was directed to the subsequent transferee's state of actual knowledge, not something that was inferred or informed through the initial transferee. Order, *Cohmad*, No. 12-MC-00115 (S.D.N.Y. Feb. 12, 2013), ECF 439, at 3. The district court's

---

[5] *In re UBS AG Sec. Litig.*, No. 07 Civ 11335, 2012 WL 4471265 (S.D.N.Y. 2012), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. V. UBS AG,* 752 F.3d 173 (2d Cir. 2014).

explanation of its ruling makes the position clear by focusing on the knowledge of a subsequent

transferee from whom recovery is sought:

> [I]f the allegations adequately allege that a <u>defendant</u> had actual knowledge of
> Madoff's scheme, <u>such a transferee stands in a different posture from an innocent
> transferee, even as concerns the application of Section 546(e)</u> …. [T]he purpose of
> this section is "Minimiz[ing] the displacement caused in the commodities and
> securities markets in the event of a major bankruptcy affecting those industries. . .
> . In the context of Madoff Securities' fraud, that goal is best achieved by protecting
> the reasonable expectations of investors who believed they were signing a securities
> contract; but a transferee who had actual knowledge of the Madoff "Ponzi" scheme
> did not have any such expectations, but was simply obtaining moneys while he
> could.  Neither law nor equity permits such a person to profit from a safe harbor
> intended to promote the legitimate workings of the securities markets and the
> reasonable expectations of legitimate investors.
> * * *
> [T]o the extent that an innocent customer transferred funds to a <u>subsequent
> transferee who had actual knowledge of Madoff Securities' fraud</u>, that subsequent
> transferee cannot prevail on a motion to dismiss on the basis of Section 546(e)'s
> safe harbor.  Again, this follows from the general principles enunciated earlier in
> this Opinion.  A defendant cannot be permitted to in effect launder what he or she
> knows to be fraudulently transferred funds through a nominal third party and still
> obtain the protections of Section 546(e)… In sum, if the Trustee sufficiently alleges
> that <u>the transferee from whom he seeks to recover a fraudulent transfer **_knew_**</u> of
> Madoff Securities' fraud, that <u>transferee</u> cannot claim the protections of Section
> 546(e)'s safe harbor.

*Id.*, at *4, 7 (emphasis added; citations omitted).  In effect, the subsequent transferees' rights are

parallel to, but do not exceed initial transferees' rights and that subsequent transferees may not

rely on § 546(e) if the subsequent transferee has actual knowledge that the funds received had been

fraudulently transferred.  Where, as in FGB's case, there is no actual allegation of knowledge, the

safe harbor is available.  The reasoning of *Cohmad II* is clear.  An initial transferee with actual

knowledge of the fraud knows there was no *bona fide* settlement payment or securities contract,

and the same is true for a subsequent transferee with that knowledge.  *Cohmad II*, 2013 WL

1609154, at *10.  Similarly, a non-innocent subsequent transferee with actual knowledge of the

fraud cannot claim that the initial transfer was in connection with a *bona fide* securities settlement

because the subsequent transferee actually knows the contrary. *Id.*, at *8. However, a subsequent transferee without actual knowledge has a "reasonable expectation" that it is receiving a securities settlement payment pursuant to a securities contract. That is the reasonable expectation Congress intends to protect by § 546(e). *Id.* at *4.

The Trustee says, incorrectly, that its position is supported by *Picard v. BNP Paribas S.A. (In re Madoff)*, 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) and *SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*, 620 B.R. 505 (Bankr. S.D.N.Y. 2020). That is not so, and cannot be so, because neither decision discusses this issue. *BNP*, 594 B.R. at 197; *SunEdison*, 620 B.R. at 514. BNP would conflict impermissibly with *Cohmad II* if it excluded innocent subsequent transferees such as FGB from the safe harbor. The statute, its purpose, *Cohmad II* (and *Fairfield Inv. Fund*) entitle FGB to dismissal of the claims against it.

## II.   THE TRUSTEE HAS NOT JUSTIFIED THE FAILURE TO PLAUSIBLY ALLEGE THAT FGB RECEIVED CUSTOMER PROPERTY.

The Trustee omits the central point in Defendant's brief that the Trustee has alleged billions of dollars more in subsequent transfers of BLMIS customer property from Sentry than he alleges was ever transferred to Sentry. This is not a matter of requiring "dollar-for-dollar accounting" or expert opinion, but a *legal* question to be resolved on a motion to dismiss, before the parties and Court incur the burden of litigating time-consuming, baseless claims not plausibly related to the recovery of customer property. The "possibility" that the Trustee may have a claim against FGB is not enough. The U.S. Supreme Court has said a complaint "must be dismissed" if the plaintiff "ha[s] not nudged the [] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Picard v. Shapiro (in re Bernard L. Madoff Inv. Sec. LLC*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015). Here the complaint only alleges a sheer

possibility that FGB received customer property and, since that is equal to the possibility that it did not, the complaint "stops short" and must be dismissed.

### A.      The Trustee Failed to Meet His Pleading Burden.

The Trustee does not deny that he has failed to tie any of the thousands of alleged initial transfers from BLMIS to Sentry to any of the alleged subsequent transfers to FGB. Instead, he argues he need not do so (Opp. at 29-30, ECF 91), even as his own authorities support this pleading requirement. For example, in *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 454 B.R. 317 (Bankr. S.D.N.Y. 2011) ("*Cohmad I*"), this Court upheld the pleading of the subsequent transfers because, "the Trustee alleges that the amounts of Commissions specified by BLMIS on the Payment Schedules correspond to the amounts paid by BLMIS to Cohmad and, subsequently, to the Cohmad Representatives". *Id*. at 341 (emphasis added).   The Trustee's other cases similarly involved a close correspondence between the initial and subsequent transfers. *See Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib., Inc.)*, 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007) (transfers by initial transferees "were preceded by fraudulent transfers of funds from [debtor] in amounts sufficient to cover the [subsequent] transfers"; emphasis added, citations omitted); *see also id*. at 13 (specifying initial and subsequent transfers during 13-day period); *Picard v. Merkin (in re BLMIS)*, 515 B.R. 117, 150 (Bankr. S.D.N.Y. 2014) ("*Merkin I*") ("several subsequent transfers took place contemporaneously or shortly after an initial transfer . . . , implying linkage"; emphasis added); *45 John Lofts, LLC v. Meridian Capital Group LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 736-37, 747 (Bankr. S.D.N.Y. 2019) (complaint alleged that payments totaling $29.4 million were deposited into account and $29.4 million was transferred out the same day and next business day).

6

Thus, the cases that say that a trustee "need only allege sufficient facts to show the relevant pathways through which the funds were transferred," *e.g., Picard v. Charles Ellerin Rev. Tr. (In re Bernard L. Madoff Inv. Sec. LLC),* No. 08–01789, 2012 WL 892514, at *3, do not (indeed, cannot) relieve the Trustee of his obligation to plead a plausible linkage between the initial and subsequent transfers. None of those cases upholds a pleading where, based on the Trustee's own allegations, the purported pathway is a dead-end, as is the case here, because the Trustee has alleged that earlier Sentry distributions had exhausted all the BLMIS money at Sentry prior to the at-issue redemptions. *See Picard v. Shapiro (In re BLMIS)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (Trustee must "allege facts that support the inference that the funds at issue originated with the BLMIS" and "tie any initial transfer to any subsequent transfer or Subsequent Transferee").

## B. Tracing Analysis is Unnecessary Where Pleadings Negate Commingling.

The Trustee's invocation of "commingling" cannot relieve him of the obligation to allege a plausible linkage between initial and subsequent transfers. Tracing is only an issue where funds are commingled. *See Picard v. Merkin (In re BLMIS)*, 581 B.R. 370, 384-85 (Bankr. S.D.N.Y. 2017) ("*Merkin II*") (tracing necessary where subsequent transfers originated from commingled accounts); *United States v. Henshaw*, 388 F.3d 738, 739 (10th Cir. 2004) (same). Here, the pleadings themselves establish there are significant periods of time where no commingling even could have occurred because there was no customer property left at Sentry. *See* Opening Brief, Point II. Because the Trustee's allegations negate the existence of commingling (or customer property) for extensive time periods, the Trustee's authorities for the proposition that commingling does not defeat tracing or that claims may proceed even though tracing may ultimately prove difficult30 are irrelevant.

7

Contrary to the Trustee's assertion, there is no undisclosed expert methodology here—only arithmetic. The Trustee alleges that every redemption payment from Sentry during the relevant period was comprised entirely of customer property; therefore, each redemption necessarily decreased the amount of customer property left at Sentry by the amount redeemed. All FGB does is subtract those redemptions from the amounts received from BLMIS—hardly the province of experts. *See* Opening Brief, Point II, at 20-21; *see also Edmondson v. RCI Hospitality Holdings, Inc.*, No. 16-CV-2242, 2020 WL 1503452, at *6 (S.D.N.Y. Mar. 30, 2020) ("Simple arithmetic, such as ordinary multiplication, is a paradigmatic example of the type of everyday activity that goes on in the normal course of human existence.") (citations and quotation marks omitted).

### C. The Trustee Has All Records Needed.

In an effort to excuse the pleading failure, the Trustee argues that he "does not have all of the [fund's] books and records (Opp. at 36, ECF 91). This is belied by his own pleadings detailing thousands of alleged transfers from Sentry. *See* Pincus Decl. Ex. 1 at Ex. B. Further, he says nothing about his contractual right to records and cooperation from the Fairfield Liquidators (see Settlement Agreement, *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y.), ECF 69-2, ¶ 14)—who admitted in this Court that they have most of the books and records of the Fairfield Funds. Declaration of K. Krys, *In re Fairfield Sentry Ltd.*, No. 10-13164 (Bankr. S.D.N.Y. July 16, 2010), ECF 40, ¶¶ 15, 19. The Trustee's cases, which offer pleading latitude where subsequent transfers had to be proven with defendants' records,[6] are inapposite.

### D. The Trustee Has No Claims Against Defendants Who are Not "Transferees."

The Trustee contends that it is of no moment that he alleges billions of dollars more in customer property than was ever transferred to Sentry because he can recover from any

---

[6] *See Merkin I*, 515 B.R. at 151; *Cohmad I*, 454 B.R. at 329; *Picard v. Mayer (In re BLMIS)*, No. 08-01789, 2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021).

combination of "transferees" up to the amount avoided. Opp. at 37, ECF 91. This ignores the fact

that for millions of dollars of the Trustee's claims the defendant is not a "transferee" because there

was no BLMIS money at Sentry to transfer. *See* Opening Br., Point II. This case is thus completely

different from those involving re-transfers among subsequent transferees, as in *Merkin I*, 515 B.R.

at 149-50, or allocation of liability among subsequent transferees who indisputably received

money from the debtor, as in *CNB International Inc. v. Kelleher (In re CNB International, Inc.)*,

393 B.R. 306, 332-33 (Bankr. W.D.N.Y. 2008). Here, the Trustee seeks to recover monies received

from Sentry without regard to whether, as to that payment, the defendant was a "transferee" of

BLMIS.  This he may not do, and the Trustee's claims should be dismissed.

## <u>CONCLUSION</u>

For the reasons set forth in Defendant's initial moving papers, the additional arguments set

forth above, and what may be added at oral argument, Defendant FGB respectfully requests that

the Court dismiss the Complaint in its entirety with prejudice.


Dated: June 30, 2022                                      Respectfully Submitted,
        Oyster Bay, New York
                                                          CHALOS & CO, P.C.

                                                          By: */s/ Briton P. Sparkman*
                                                          George M. Chalos, Esq.
                                                          Briton P. Sparkman, Esq.
                                                          55 Hamilton Avenue
                                                          Oyster Bay, New York 11771
                                                          Tel. No.: 516-714-4300
                                                          Email: bsparkman@chaloslaw.com

                                                          *Counsel for Defendant First Gulf Bank*