PROSKAUER ROSE LLP
Ehud Barak, Esq.
Russell T. Gorkin, Esq.
Elliot R. Stevens, Esq.
Eleven Times Square
New York, NY 10036-8299
Telephone:  212-969-3000
Facsimile:  212-969-2900
Email:  ebarak@proskauer.com
        rgorkin@proskauer.com
        estevens@proskauer.com

*Attorneys for Defendant Lion Global Investors Limited*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (BRL) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br> Plaintiff, <br><br> v. <br><br> LION GLOBAL INVESTORS LIMITED, <br><br> Defendant. | Adv. Pro. No. 11-02540 (CGM) |

**DEFENDANT LION GLOBAL INVESTORS LIMITED'S REPLY IN FURTHER
SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT ..........................................................................................................2

I.  THE TRUSTEE HAS NOT ESTABLISHED A PRIMA FACIE CASE OF
    PERSONAL JURISDICTION OVER LGI ..............................................2

    A.  The Trustee Fails to Allege Facts Showing LGI Is Subject to
        Personal Jurisdiction .................................................................2

    B.  The Trustee's Other Personal Jurisdiction Arguments Fail ..............7

II.  THE LGI COMPLAINT DOES NOT COMPLY WITH RULES 8(a)
     AND 10(c) ...................................................................................10

III.  SECTION 546(e) REQUIRES DISMISSAL OF THE TRUSTEE'S
      COMPLAINT ...............................................................................11

    A.  The Knowledge Exception Violates the Text of Bankruptcy Code
        Section 546(e) ...........................................................................12

    B.  Even if Applied by this Court, the Knowledge Exception Does Not
        Prohibit LGI From Invoking Section 546(e) to Show the Initial
        Transfers Cannot Be Avoided ....................................................13

        1.  The Knowledge Exception Prohibits Only Defendants Who
            Had Actual Knowledge of the Fraud From Invoking
            Section 546(e) .....................................................................13

        2.  The Initial Transfers Are Not Avoidable Because They
            Were Made in Connection with Real Settlement Payments
            and Securities Contracts ......................................................16

IV.  THE LGI COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS
     TO PLAUSIBLY ALLEGE LGI RECEIVED BLMIS PROPERTY ...................17

    A.  The Trustee Has Not Alleged Facts Supporting the Inference the
        Funds He Alleges LGI Received Originated With BLMIS ...............17

    B.  The Trustee's Tracing and Commingling Arguments Lack
        Relevance ..................................................................................18

    C.  The Trustee Has All of the Records He Needs. ...........................20

CONCLUSION ......................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC* (*In re 45 John Lofts, LLC*),
    599 B.R. 730 (Bankr. S.D.N.Y. 2019) ....................................................................17

*Am. Casein Co. v. Geiger (In re Geiger)*,
    446 B.R. 670 (Bankr. E.D. Pa. 2010) ....................................................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..............................................................................................19

*Bonano v. Doe*,
    628 F. App'x 25 (2d Cir. 2015) .............................................................................11

*Brecht v. Abrahamson*,
    507 U.S. 619 (1993) ................................................................................................7

*Burlington Indus., Inc. v. Salem Int'l Co.*,
    645 F. Supp. 872 (S.D.N.Y. 1986) .........................................................................6

*Daval Steel Prods., Div. of Francosteel Corp. v. M.V. Juraj Dalmatinac*,
    718 F. Supp. 159 (S.D.N.Y. 1989) .........................................................................5

*Deutsche Bank Trust Co. Ams. v. Large Private Ben. Owners (In re Tribune Co.
    Fraudulent Conveyance Litig.)*,
    946 F.3d 66 (2d Cir. 2019),
    *cert. denied*, 141 S. Ct. 2552 (2021) ...................................................................13

*Druck Corp. v. Macro Fund (U.S.) Ltd.*,
    102 F. App'x 192 (2d Cir. 2004) ............................................................................6

*Ellicott Mach. Corp. v. John Holland Party, Ltd.*,
    995 F.2d 474 (4th Cir. 1993) ..................................................................................9

*Energy Intelligence Grp., Inc. v. Cowen & Co., LLC*,
    2016 WL 3939747 (S.D.N.Y. July 15, 2016) .........................................................5

*Fiore v. Walden*,
    688 F.3d 558 (9th Cir. 2012) ..................................................................................7

*Ford Motor Co. v. Montana Eighth Judicial Dist. Court*,
    141 S. Ct. 1017 (2021) ............................................................................................6

*Foxglenn Investors Ltd. Partnership v. Cisneros*,
    35 F.3d 947 (4th Cir. 1994) ...............................................................12

*Helicopteros Nacionales de Colombia v. Hall*,
    466 U.S. 408 (1984)........................................................................4, 6

*Helms v. Metro. Life Ins. Co.* (*In re O'Malley*),
    601 B.R. 629 (Bankr. N.D. Ill. 2019) ...................................................19

*Law v. Siegel*,
    571 U.S. 415 (2014)..........................................................................12

*MacDermid, Inc. v. Deiter*,
    702 F.3d 725 (2d Cir. 2012).................................................................3

*McKee Electric Co. v. Rauland-Borg Corp.*,
    20 N.Y.2d 377 ( 1967) ........................................................................6

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996)...................................................................5

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
    2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010) .......................................10

*Picard v. BNP Paribas S.A.* (*In re Madoff*),
    594 B.R. 167 (Bankr. S.D.N.Y. 2018) ("*BNP Paribas*") ...................6, 15

*Picard v. Bureau of Labor Ins.* (*In re Madoff*),
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) ("*BLI*")........................................6

*Picard v. Charles Ellerin Rev. Tr.*,
    2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012) ...............................18

*Picard v. Cohmad Sec. Corp.* (*In re Bernard L. Madoff Inv. Sec. LLC*),
    454 B.R. 317 (Bankr. S.D.N.Y. 2011) ("*Cohmad I*").........................17, 20

*Picard v. Ida Fishman Recoverable Tr.* (*In re Bernard L. Madoff Inv. Sec. LLC*),
    773 F.3d 411 (2d Cir. 2014) .....................................................11, 12, 16

*Picard v. JPMorgan Chase & Co.* (*In re BLMIS*),
    2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10, 2014) ...............................6

*Picard v. Mayer*,
    2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021) .........................17, 20

*Picard v. Merkin* (*In re BLMIS*),
    515 B.R. 117 (Bankr. S.D.N.Y. 2014) ("*Merkin I*")...........................17, 20

*Picard v. Shapiro* (*In re Bernard L. Madoff Inv. Sec. LLC*),
    542 B.R. 100 (Bankr. S.D.N.Y. 2015) ("*Shapiro*") ................................................18

*Scott v. JPMorgan Chase & Co.*,
    2014 WL 338753 (S.D.N.Y. Jan. 30, 2014) .........................................................8, 11

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
    476 B.R. 715 (S.D.N.Y. 2012),
    *aff'd*, 773 F.3d 411 (2d Cir. 2014) ..........................................................................15

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*,
    460 B.R. 106 (Bankr. S.D.N.Y. 2011) ("*Maxam*") ...................................................6

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
    501 B.R. 26 (S.D.N.Y. 2013) ....................................................................................11

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs. Inc.)*,
    379 B.R. 5 (Bankr. E.D.N.Y. 2007) ..........................................................................17

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
    2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad 2013*") ...............11, 14, 16

*SPV OSUS Ltd. v. UBS AG*,
    114 F. Supp. 3d 161 (S.D.N.Y. 2015),
    *aff'd*, 882 F.3d 333 (2d Cir. 2018) ............................................................................6

*SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*,
    620 B.R. 505 (Bankr. S.D.N.Y. 2020) ......................................................................15

*United States v. Int'l Longshoremen's Ass'n*,
    518 F. Supp. 2d 422 (E.D.N.Y. 2007) ......................................................................10

*Walden v. Fiore*,
    571 U.S. 277 (2014) ...................................................................................................7

**STATUTES**

11 U.S.C. § 548(a)(1)(A) ...................................................................................................12

11 U.S.C. § 546(e) ....................................................................................................*passim*

11 U.S.C. § 550 ................................................................................................12, 19, 20

Defendant Lion Global Investors Limited ("LGI"), by its undersigned counsel,

respectfully submits this reply (the "Reply") to the *Trustee's Memorandum of Law in Opposition*

*to Defendant's Motion to Dismiss the Complaint* (ECF No. 119) (the "Opposition" or "Opp.") in

further support of the motion to dismiss (ECF No. 108) (the "Motion"), the accompanying

memorandum of law (ECF No. 109) (the "Memorandum" or "MOL"),[1] the Declaration of James

Tan Thian Peng and its exhibits (ECF No. 110) (the "Tan Decl."), and the Declaration of Ehud

Barak and its exhibits (ECF No. 111) (the "Barak Decl.").

## PRELIMINARY STATEMENT

Not only has the Trustee failed to make even a *prima facie* showing that this Court has

personal jurisdiction over LGI, a Singaporean corporation with no material contacts with the

United States, he has failed to rebut LGI's showing that it was not a party to the relevant

transactions.  Instead, the Trustee asserts new jurisdictional allegations in his brief, such as that

LGI's non-defendant *affiliates* allegedly conducted business with non-transferee FGG, in an

apparent attempt to create the specter of factual issues that preclude dismissal.  Wholly lacking

from the Trustee's submission is any authority to attribute any of those affiliates' alleged

jurisdictional contacts to the actual defendant in this case.  The Trustee admits he is not relying

on any alter ego theory and, incredibly, attempts to excuse his failure to make out a plausible

*prima facie* case for jurisdiction by blaming LGI for not affirmatively denying successor liability

even though neither successor liability nor *any of the entities which now form the basis of the*

*Trustee's personal jurisdiction allegations were even mentioned in the LGI Complaint.*  Simply

stated, it is the Trustee's burden to affirmatively plead a *prima facie* case of personal jurisdiction,

not LGI's burden to refute allegations or theories totally absent from the LGI Complaint.  The

---

[1] Capitalized terms used but not defined herein have the meaning given them in the Memorandum.

Trustee's attempt to shift the burden onto LGI should be taken for what it is: a concession that he cannot satisfy his pleading burden of establishing personal jurisdiction.

The Trustee has also failed to successfully refute the other bases for dismissal. Instead, he has ignored arguments to which he has no adequate response, and refuted various straw-man arguments that LGI has not even made. As discussed in more detail below, the Trustee (1) fails to explain how the supposed wholesale incorporation of the (no longer extant) Fairfield Amended Complaint complies with Rule 8(a) (it does not), (2) does not dispute, and thus concedes, the initial transfers between BLMIS and LGI fall within the wording of Section 546(e), and (3) ignores the inherent contradictions in the allegations asserted against various subsequent transferees and those asserted against LGI here (rendering them implausible). As a result, the Trustee has not met his pleading burden and the LGI Complaint must be dismissed.

## ARGUMENT

## I. THE TRUSTEE HAS NOT ESTABLISHED A PRIMA FACIE CASE OF PERSONAL JURISDICTION OVER LGI

### A. The Trustee Fails to Allege Facts Showing LGI Is Subject to Personal Jurisdiction

In support of the Motion, James Tan declared (1) OCBC-SIMBL Investment Management Limited was formed in 1989 (¶¶ 1–2); (2) its name was subsequently changed to Lion Capital Management in 2005 and LGI in 2008 (¶¶ 3–5); (3) LGI has never had any operations, bank accounts, or employees located in the United States or regularly conducted business there (¶¶ 6–7); and (4) LGI has never been a member of Sentry, and was not a party to the relevant transactions (¶ 8). Those facts are unrefuted. Instead of refuting them, the Trustee has lobbed a hodgepodge of new purported jurisdictional allegations about links that *other* entities in LGI's corporate family tree (including Straits Lion Asset Management ("SLAM") and Fairfield Straits Lion Asset Management ("F-SLAM")) purportedly have to (non-party, non-

transferee) FGG that are *unrelated* to the Trustee's claims here to recover specific BLMIS property. (*See, e.g.*, Opp. at 5–6, 7–8, 11.) Tellingly, the Trustee abandons various allegations he relied on in the LGI Complaint (such as the wiring of funds through New York, (Compl. ¶ 7)). The Trustee's failure to stick to the allegations contained in the Complaint, and the fact he instead felt the need to rely on jurisdictional contacts of non-defendant entities, show the weakness of the Trustee's case.

The Trustee's brand-new allegations do not make out a "prima facie" case or "threshold showing" of personal jurisdiction over LGI. As noted, the Trustee does not dispute any of the key facts declared in the Tan Declaration—including that LGI never subscribed to or was a member of Sentry, nor was party to any of the transactions at issue here. The facts contained in the Tan Declaration must therefore be taken as true. *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (plaintiff's allegations taken as true only "to the extent they are uncontroverted by the defendant's affidavits"). Because the Trustee's entire basis for asserting personal jurisdiction over LGI turns on it having invested in Sentry (Compl. ¶ 7, Opp. at 11), and those allegations have been refuted, the Trustee's case for asserting personal jurisdiction over LGI has crumbled and the Complaint must be dismissed.[2]

The only new factual allegation asserted by the Trustee that purportedly relates to LGI itself is based on a document from 2009—*i.e.*, after BLMIS had already been exposed as a Ponzi scheme—purporting to show that transfers made four years earlier were sent to an account in the

---

[2]    The Trustee half-heartedly asserts that a factual dispute exists as to "what year [LGI] was created" based on a supposed "discrepancy" between "the website of Lion Global's parent company, OCBC" and paragraph 8 of the Tan Declaration. (Opp. at 7.) But the Trustee does not cite the website he refers to, and, notably, paragraph 8 of the Tan Declaration does not represent that LGI was formed in 2008. Instead, the Tan Declaration states that Lion Capital Management's name was changed to LGI in 2008 (Tan Decl. ¶ 4). Moreover, the Trustee does not attempt to explain how resolving any purported factual dispute over when LGI was created would establish a basis for asserting personal jurisdiction over LGI. The Trustee's attempt to fabricate a non-existent and irrelevant factual dispute obviously does not provide a basis for asserting jurisdiction over LGI, either.

name of "Lion Global Investors" held on behalf of various *other* parties. *See Declaration of Robertson D. Beckerlegge In Support of The Trustee's Opposition to Defendant's Motion to Dismiss*, ECF No. 120 (the "Beckerlegge Declaration"), Ex. 5. The Trustee does not explain why he did not produce any contemporaneous documents from 2005 evidencing the alleged transfers, despite having had access to Sentry's files for more than 10 years (MOL at 39–40). Nor does his attorney (through whose declaration the document was submitted) explain the context in which this document was created. LGI disputes any probative value of Exhibit 5 and the inferences drawn from it by the Trustee. This *post hoc* document was created four years after the transactions in question, after various corporate name changes noted in the Tan Declaration, and is not a probative substitute for the contemporaneous documents available to the Trustee.[3]

In any event, even if credited, all Exhibit 5 suggests is that LGI might have received transfers from Sentry on behalf of *other* entities. The Trustee does not, and cannot, argue that the mere receipt of (allegedly) fraudulently transferred property for the defendant's own account is legally sufficient to establish personal jurisdiction over the recipient. *See, e.g.*, *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 416 (1984) (holding that foreign defendant's receipt of funds by cashing check drawn on Texas bank was "of negligible significance" and did not suffice to establish personal jurisdiction"). Here, the Trustee's evidence (even if credited) does not show that. The transfers purportedly recorded in Exhibit 5 were clearly sent to non-defendant entities' accounts for the non-defendant entities' benefit. And, indeed, LGI is only alleged to have managed other's investments, not acted as custodian of their funds. (*See* Compl. ¶ 22.) Since that is the only assertion the Trustee makes pertaining to LGI itself, he has failed to

---

[3] Indeed, there was no entity known as LGI until 2008—three years *after* the transfers reflected in Exhibit 5 were purportedly made. (Tan Decl. ¶ 4.)

carry his pleading burden, and the LGI Complaint must be dismissed.

Instead of supporting his case for personal jurisdiction with factual allegations relating to *LGI*, the Trustee focuses on contacts certain LGI *affiliates* allegedly had with the United States, including investments those affiliates allegedly made with Sentry and FGG, trips representatives of those affiliates took to New York, and a joint venture entered into by those affiliates and FGG. (*See* Opp. at 7–8, 14–17.)  But, fatally, the Trustee does not even attempt to demonstrate the alleged jurisdictional contacts of those *other* corporate entities can be attributed to LGI.  The Trustee makes conclusory assertions in his brief that LGI is a "successor" to some or all (the Trustee does not specify) of those entities (*see, e.g.*, Opp. at 8, 12), but, critically, does not provide any factual or legal basis for the Court to find that LGI is, in fact, a "successor" to any of them under Singaporean law.[4]  All the Trustee says is that "[LGI] has not argued that it is not a successor-in-interest to [SLAM]" (Opp. at 8), an astonishing statement given that (1) it is the Trustee's burden to establish personal jurisdiction, not LGI's to negate it, *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996), and (2) neither SLAM nor any other affiliate of LGI's was so much as mentioned until the Trustee introduced them in his Opposition.  Regardless, LGI had already cited binding case law holding that an entity's affiliate's connections to a forum state cannot be attributed to that entity unless the affiliate is an alter ego of or acting as an agent for the entity.  (*See* MOL at 14.)  The Trustee's only (non-)response is to say he "is not alleging jurisdiction exists due to alter ego liability" or "imputation."  (Opp. at 15.)  The Trustee's self-confessed failure to argue a theory of attribution,

---

[4]   Singaporean law governs whether LGI is a successor to any or all of the other Singaporean entities mentioned by the Trustee.  *See, e.g., Energy Intelligence Grp., Inc. v. Cowen & Co., LLC*, 2016 WL 3939747, at *11 (S.D.N.Y. July 15, 2016) ("Under the internal affairs doctrine, issues involving the rights and liabilities of a corporation are generally governed by the law of the state of incorporation . . . .").

or to respond to LGI's case law, is a concession the LGI Complaint must be dismissed.[5]

Moreover, even if the Court were to attribute those other entities' contacts to LGI despite the Trustee not providing any legal or factual basis to do so, they still would not suffice to establish personal jurisdiction because they do not relate to the Trustee's claims.[6]  Allegations that another entity (SLAM) entered into a joint venture with FGG in an entirely separate transaction have nothing to do with the redemptions that form the basis for the Trustee's claims here.  *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414 (plaintiff's claim must "arise out of or relate to the foreign corporation's activities in the forum State").[7]  The Trustee's claim to recover voidably transferred money does not arise out of or relate to a separate joint venture.[8]

---

[5]  Since the Trustee fails to allege any cognizable jurisdictional contacts actually attributable to LGI and fails to even attempt to explain how the jurisdictional contacts relating to LGI's affiliates are attributable to LGI, the Trustee does not even make out a "colorable claim of jurisdiction" sufficient to entitle him to jurisdictional discovery, either.  *See Daval Steel Prods., Div. of Francosteel Corp. v. M.V. Juraj Dalmatinac*, 718 F. Supp. 159, 162 (S.D.N.Y. 1989) ("[p]laintiff must, at the least, allege facts that would support a colorable claim of jurisdiction" to obtain discovery).

[6]  For this reason, *Druck Corp. v. Macro Fund (U.S.) Ltd.*, 102 F. App'x 192, 193–94 (2d Cir. 2004) and *Burlington Indus., Inc. v. Salem Int'l Co.*, 645 F. Supp. 872, 874 (S.D.N.Y. 1986), cited by the Trustee, (*see* Opp. at 16), are inapposite.  There, the in-forum meetings gave rise directly to the basis for the cause of action.  This case falls within the holdings of *McKee Electric Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 382–83 (1967) and *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 170 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018), which held various jurisdictional contacts connected to different contracts with the defendant could not generate *in personam* jurisdiction because the plaintiff's action did not arise from or relate to those specific contacts.  *SPV OSUS Ltd.*, 114 F. Supp. 3d at 170.  The same is true here and necessitates dismissal.  Contrary to the Trustee's undeveloped argument (Opp. at 17 n.11), *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1026–30 (2021) does not cast doubt on *SPV OSUS Ltd.*  Although *Ford* held that the jurisdictional analysis did not "always" require causation, *id.* at 1026, LGI has none of the "systematic" and longstanding contacts with New York that Ford Motor Company had with Montana and Minnesota, and which justified a finding there of jurisdiction without direct causation.  *Id.* at 1028.

[7]  The Trustee also cites *Picard v. JPMorgan Chase & Co. (In re BLMIS)*, 2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014), (Opp. at 13), but this case did not decide anything with respect to personal jurisdiction; it merely noted when approving a settlement that personal jurisdiction had previously been found to exist over certain transferees.

[8]  *Picard v. BNP Paribas S.A. (In re Madoff)*, 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018), cited by the Trustee, *see* Opp. at 16, is not to the contrary, as there the defendant had significantly more connection to New York than LGI is alleged to have here.  *Id.* (noting defendants sent subscription agreements to New York, wired funds to New York (not simply "through" New York), sent redemption payments to New York and received payments from a New York bank, none of which are alleged to be the case here).

**B.     The Trustee's Other Personal Jurisdiction Arguments Fail**

The Trustee also argues jurisdiction exists here because LGI or its predecessors "purposefully invested in Sentry" knowing its money would end up in New York.  (Opp. at 10–14.)  The Trustee's argument—which relies exclusively on *Picard v. Bureau of Labor Ins. (In re Madoff)*, 480 B.R. 501, 516–18 (Bankr. S.D.N.Y. 2012) ("*BLI*") and *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, 460 B.R. 106, 116–20 (Bankr. S.D.N.Y. 2011) ("*Maxam*")—falls flat, however, because it ignores that the arguments raised by LGI were not briefed or decided in *BLI* or *Maxam*.  *See, e.g.*, *Brecht v. Abrahamson*, 507 U.S. 619, 630–31 (1993) (decision not precedent for issues not "squarely addressed").  Moreover, *BLI* and *Maxam* are inconsistent with subsequent Supreme Court and Second Circuit case law, including *Walden v. Fiore*, 571 U.S. 277 (2014), which make clear knowing of or intending a consequence in the forum state cannot give rise to personal jurisdiction.  (*See* MOL at 12–15.)

The Trustee argues *Walden* is inapplicable because *Walden* involved the issue of "foreseeability" and all it held was that jurisdiction could not be premised "solely on a plaintiff's unilateral contacts with the forum state."  (Opp. at 14.)  Not so.  In *Walden*, the Ninth Circuit upheld personal jurisdiction precisely because the defendant "must have known and intended that his actions" would have an impact in Nevada.  *Fiore v. Walden*, 688 F.3d 558, 578 (9th Cir. 2012); *see also id.* at 580 ("the critical factor is whether Walden, knowing of [plaintiffs'] significant connections to Nevada, should be taken to have intended that the consequences of his actions would be felt by them in that state.").  That is, the Ninth Circuit endorsed a theory that is almost word-for-word identical to the theory the Trustee relies on here.  (*See, e.g.*, Opp. at 12 (arguing jurisdiction exists "where defendant knew and intended that funds" would be sent to BLMIS in New York).)  Unfortunately for the Trustee, the Supreme Court rejected that theory outright on appeal.  *Walden*, 571 U.S. at 289 ("Petitioner's actions in Georgia did not create

sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs

whom he knew had Nevada connections.").

Similarly, the Trustee has not responded to LGI's argument that a corporation's (here,

Sentry's) contacts cannot be attributed to a shareholder (here, allegedly, LGI) unless that

corporation is the shareholder's agent or alter ego.  *See* MOL at 13–14.  The Trustee's only

response is (1) to say he is not alleging agency or alter ego and (2) to imply, without any

authority, that the rule does not apply if the shareholder has "knowledge" of the corporation's

U.S. contacts.  (Opp. at 15.)  But the cases cited by LGI make clear that "knowledge" is not the

rule—agency or alter ego is, and the Trustee's failure to plead either is fatal.  (MOL at 13–14).

The Trustee has also conceded New York courts refuse to base personal jurisdiction on

allegations that the defendant contracted with a New York plaintiff who then performed that

contract in New York.  (*See* MOL at 14 n.8; Opp. at 15 n.9.)  The Trustee fails to respond to

LGI's argument, however, that LGI's contacts are even *further* removed from New York than

that.  (MOL at 14–15.)  Here, the Trustee asserts LGI's alleged *predecessor* contracted *not* with a

New York entity, but with a BVI-based entity, knowing *that* entity would go on to contract with

a New York entity that would then perform in New York.  This alleged chain of transactions is

far weaker than the standard scenario in which New York courts *reject* personal jurisdiction.

Further demonstrating the Trustee's inability to put forward a *prima facie* case of

personal jurisdiction, and despite having seven pages to spare in his Opposition, the Trustee fails

to respond to any of the following arguments:  (1) the causes of action at issue here do not arise

from LGI's purported execution of subscription documents (MOL at 12, 15–16), (2) the

allegation that copies of LGI's purported subscription agreements were sent to FGG's office in

New York does not support jurisdiction (MOL at 16–17), and (3) the alleged use of

correspondent bank accounts by LGI's Singaporean banks and/or Citco to effectuate dollar transfers do not provide a basis to assert personal jurisdiction over LGI (MOL at 18–20). The Trustee has thus conceded that none of those allegations are sufficient to assert jurisdiction over LGI. *See Scott v. JPMorgan Chase & Co.*, 2014 WL 338753, at \*10 (S.D.N.Y. Jan. 30, 2014) ("[The] [p]laintiff's opposing [m]emorandum of [l]aw does not respond to this argument, and effectively concedes these arguments by his failure to respond to them." (citation omitted)).

The Trustee similarly fails to show that the exercise of jurisdiction over LGI would be reasonable. (Opp. at 18–19.) Although the Trustee tries to distinguish *Ellicott Mach. Corp. v. John Holland Party, Ltd.*, 995 F.2d 474, 478-79 (4th Cir. 1993), (Opp. at 18), that attempt falls short. There the defendant "pursued" the Maryland-based plaintiff to its home state to execute a contract. *Id.* at 478. The Supreme Court held the exercise of jurisdiction over the defendant would still be unreasonable despite Maryland's interests in the legal action because (i) the contract was to be performed in Australia, (ii) "there is no indication that Australian trials are any less fair than American ones or that the relief provided by an Australian tribunal is less effective," and (iii) "[l]itigating in Maryland would unquestionably impose a heavy burden on" the Australian defendant. *Id.* at 479–80. Here, LGI is not even alleged to have executed a contract with a U.S.-based entity in the United States. The Supreme Court's reasoning in *Ellicott* that it would be unreasonable to exercise jurisdiction over the foreign defendant there applies with even greater force to LGI under the circumstances here.[9]

---

[9] The Trustee's assertions that (1) the fact LGI has New York counsel and the "conveniences of modern communication and transportation" minimize any burden on the defendant, (2) the U.S. has a strong interest in applying U.S. law, and (3) the "Trustee has a strong interest in litigating in the U.S. (Opp. at 19), do not show jurisdiction would be reasonable here, either. The latter two factors are always true, and if they justified jurisdiction here the "reasonableness" inquiry would essentially be written out of the U.S. Constitution in a bankruptcy case. As to the first, the Trustee has this factor backwards—the fact LGI has had to retain New York counsel to defend this action (and has had to defend this action already for more than 10 years) is a significant burden pointing against a finding of jurisdiction.

## II.    THE LGI COMPLAINT DOES NOT COMPLY WITH RULES 8(a) AND 10(c)

LGI showed in its Motion that the Complaint's incorporation of the 217-page Fairfield

Amended Complaint did not comply with Rule 8(a)'s "short and plain statement" requirement or

Rule 10(c)'s limitations on incorporation by reference.  The Opposition does not address either

of those arguments.  Instead, the Trustee makes the unremarkable statement that incorporation by

reference is permissible, citing *Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670 (Bankr.

E.D. Pa. 2010).  (Opp. at 20–22.)  The Trustee seems to have missed the fact that incorporation

of an entire pleading that fails to specify the relevant allegations violates the limitations on

incorporation by reference imposed by *Geiger* and other case law.[10]  *See United States v. Int'l

Longshoremen's Ass'n,* 518 F. Supp. 2d 422, 461 (E.D.N.Y. 2007) (citation omitted)

("references to prior allegations must be direct and explicit, in order to enable the responding

party to ascertain the nature and extent of the incorporation.").  Accordingly, the Trustee's

incorporation of the Fairfield Complaint violates Rule 10(c).

Likewise, in relying on *Geiger*, the Trustee ignores the fact that the court there *dismissed*

the complaint at issue for failure "to satisfy the pleading requirement of Rule 8," holding that

plaintiffs' wholesale incorporation of a 52-page pleading violated Rule 8(a).  446 B.R. at 679.

Here, the Trustee seeks to incorporate wholesale a complaint that consists of 217 pages and 798

paragraphs, plus 111 exhibits.  The Trustee asserts that responding would not be an undue

burden because "Defendant can either admit the substance of the avoidability of the initial

transfers, deny them, or respond that they do not have sufficient information to admit or deny."

---

[10] The Trustee contends LGI's cited cases are inapposite because those courts' decisions were based on plaintiff's "attempt to add brand new claims" via incorporation.  (Opp. at 21 n.13.)  The Trustee misconstrues the case law. The case law makes clear it is improper for a plaintiff to incorporate a prior pleading wholesale because it "makes it impossible to ascertain precisely which previously asserted facts are being realleged and for what purpose." *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, 2010 WL 1257803, at *4 (E.D.N.Y. Mar. 26, 2010).

(Opp. at 22.)  The Trustee misses the point.  LGI should not be required to absorb all 217 pages

and 111 exhibits, many of which are alleged against a variety of defendants with no apparent

connection to LGI, to determine how to respond to the Trustee's avoidability allegation.  Nor

should it be made to guess which of the plaintiff's allegations apply to avoidability and which do

not.  Such exercises are highly burdensome, inefficient, and directly contrary to Rule 8(a).  It

would certainly be less burdensome for the Trustee to amend the Complaint to clarify what facts

and claims he is in fact asserting against LGI.[11]

## III.    SECTION 546(e) REQUIRES DISMISSAL OF THE TRUSTEE'S COMPLAINT

LGI demonstrated each of the elements necessary to invoke the Section 546(e) safe

harbor have been met.  (MOL at 28–35.)  The Trustee does not even attempt to challenge that

fact.[12]  Instead, he tries to avoid dismissal by arguing the judicially created "knowledge"

exception to Section 546(e) applies—not because *LGI* knew anything about Madoff's Ponzi

scheme, but because *Sentry* allegedly did.  (Opp. at 23–25.)  As a preliminary matter, the

Trustee's attempt to bypass Section 546(e) as written should not be countenanced,[13] but, in any

---

[11]  The Trustee contends that the District Court previously upheld his incorporation of the Fairfield Amended
Complaint, citing *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC (In re
Madoff Securities)*, 501 B.R. 26 (S.D.N.Y. 2013).  (Opp. at 22.)  But that decision did not address the propriety of
the Trustee's incorporation under the Federal Rules; that issue was not even litigated.  Instead, the court addressed
whether the Trustee could recover a subsequent transfer without first having obtained a judgment avoiding the initial
transfer.  *In re Madoff Securities*, 501 B.R. at 37.  The Trustee further contends the Court may take judicial notice of
the Second Amended Complaint ("SAC") in *Fairfield Investment Fund* and its decision in that case.  (*See* Opp. at
20.)  However, Trustee has not purported to incorporate the SAC, and this Court's decision in *Fairfield Investment
Fund* did not address whether the Trustee's wholesale incorporation of an earlier, superseded pleading comports
with Rules 8(a) or 10(c).

[12]  In a footnote, the Trustee states he "does not concede that any agreements or transfers between Sentry and
Defendant activate the safe harbor under Section 546(e)."  (Opp. at 23 n.14.)  But LGI demonstrated that the express
terms of Section 546(e) apply without regard to those agreements or transfers, and implicit in the Trustee's
statement (and the Trustee's failure to argue otherwise) is that the Trustee *does* concede Section 546(e) applies by its
terms to the BLMIS-Sentry transfers, without consideration of the "knowledge" exception.  *See Scott*, 2014 WL
338753, at *2.

[13]  The Trustee's argument (Opp. at 24–25) that LGI is precluded from challenging the "knowledge" exception due to
the "law of the case" doctrine ignores that (i) Judge Rakoff's decision in *SIPC v. Bernard L. Madoff Inv. Sec. LLC
(In re Madoff Sec.)*, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad 2013*") creating the "knowledge"
exception pre-dates *Picard v. Ida Fishman Recoverable Trust (In re Bernard L. Madoff Inv. Secs. LLC)*, 773 F.3d

event, the Trustee misunderstands the scope of the "knowledge" exception.

A.      **The Knowledge Exception Violates the Text of Bankruptcy Code Section 546(e)**

The Trustee argues the transfers to Sentry are avoidable, and thus the Trustee can obtain

recovery from LGI, because Sentry allegedly knew of Madoff's fraud.  The Trustee does not,

however, rely on any portion of Section 546(e) to make that argument—because he cannot.

Indeed, tellingly, the Trustee's only response to the statutory language of Section 546(e) is to say

"[n]one of this matters," because a judicially created "knowledge" exception, nowhere found in

the text of Section 546(e), prevents LGI from invoking Section 546(e).  (Opp. at 23.)

This "knowledge" exception should be rejected as an impermissible gloss on Section

546(e).  Section 546(e) lays down detailed requirements broadly defining the transactions it

protects, and includes only one exception: claims asserted under 11 U.S.C. § 548(a)(1)(A)

(which has only a two-year limitation period and is not applicable here).  The "knowledge"

exception impermissibly rewrites Section 546(e) by creating a novel exception not contained in

the statutory text.  *See, e.g.*, *Law v. Siegel*, 571 U.S. 415, 424 (2014) ("The [Bankruptcy] Code's

meticulous—not to say mind-numbingly detailed—enumeration of exemptions and exceptions to

those exemptions confirms that courts are not authorized to create additional exceptions.").  The

impermissibility of creating a "knowledge" exception here is particularly acute given that

Congress knew how to include "mental state" limitations, did so in several sections of the

Bankruptcy Code, *see, e.g.*, 11 U.S.C. §§ 548(a)(1)(A), 550(a), but chose not to do so in Section

546(e).  *See, e.g.*, *Foxglenn Investors Ltd. Partnership v. Cisneros*, 35 F.3d 947, 950 (4th Cir.

---

411 (2d Cir. 2014), wherein the Second Circuit consistently rejected all of the Trustee's attempts to rewrite the
language of Section 546(e) and add language that Congress did not include, in an effort to limit the applicability of
Section 546(e) and thus implicitly rejected the basis for the "knowledge" exception, and (ii) prior decisions of this
Court are not binding, because "the law of the case . . . doctrine is 'discretionary and does not limit a court's power
to reconsider its own decisions prior to final judgment.'"  *Bonano v. Doe*, 628 F. App'x 25, 27 (2d Cir. 2015).

1994) (refusing to incorporate limitation expressly provided for in one part of statute but not

mentioned in the subsection under consideration because "Congress incorporated precisely such

a limitation in a different provision within the very same section").  Indeed, the Second Circuit

has already rejected similar attempts to modify the Bankruptcy Code through judicial fiat rather

than the legislative process.  *See Fishman*, 773 F.3d at 420 (rejecting similar argument by trustee

because "[i]t does not engage with the language Congress chose for § 741(7) and § 546(e).").

The "knowledge" exception not only ignores Congress's statutory language, but also its

intent when enacting Section 546(e), which was to ensure finality and stability in the securities

markets.  *See, e.g.*, *Deutsche Bank Tr. Co. Ams. v. Large Private Ben. Owners (In re Tribune Co.*

*Fraudulent Conveyance Litig.)*, 946 F.3d 66, 90 (2d Cir. 2019), *cert. denied*, 141 S. Ct. 2552

(2021).  Allowing the "knowledge" of the initial transferee to eliminate the Section 546(e)

defense for all subsequent transferees would destabilize the very markets Congress sought to

insulate.  The "knowledge" exception should be rejected.

**B.     Even if Applied by this Court, the Knowledge Exception Does Not Prohibit LGI
From Invoking Section 546(e) to Show the Initial Transfers Cannot Be Avoided**

The Trustee argues that because Sentry allegedly knew of Madoff's fraud, no subsequent

transferee can invoke Section 546(e).  (Opp. at 22–24.)  The Trustee then spends most of his

Opposition arguing against a straw-man argument that LGI never made: that Section 546(e)

independently applies to recovery actions, instead of actions avoiding the initial transfer.  (Opp.

at 25–28.)  The Trustee misapprehends the "knowledge" exception—LGI can raise the Section

546(e) defense here to show the *initial* transfers are not avoidable even if Sentry had knowledge.

**1.     The Knowledge Exception Prohibits Only Defendants Who Had
Knowledge of the Fraud From Invoking Section 546(e)**

When Judge Rakoff created the "knowledge" exception, he made clear it does not render

the initial transfers avoidable—it just prohibits certain defendants (ones with "knowledge") from

invoking the Section 546(e) defense because *transferees* with knowledge should not be permitted to profit from their own wrong.  Put differently—the "knowledge" exception was meant to be *transferee*-specific, not *transfer*-specific.  Judge Rakoff's decision thus demonstrates the flaw in the Trustee's reasoning: the initial transfers are *not* avoidable under Section 546(e)'s clear terms, and while Sentry was not permitted to invoke Section 546(e) because of Sentry's (alleged) knowledge of BLMIS's fraud, that does not mean other subsequent transferees not alleged to have knowledge are also not entitled to invoke Section 546(e).  By the logic of Judge Rakoff's decision, they are.  In this case, that means the LGI Complaint must be dismissed, because, as LGI demonstrated in its Motion (and left uncontroverted by the Trustee) Section 546(e) applies by its terms to the initial transfers and LGI is not alleged to have knowledge.

In creating the "knowledge" exception Judge Rakoff opined, in relevant part:

> where the Trustee has adequately alleged that *these defendants* had . . . actual knowledge of Madoff's scheme, then, as the Trustee argues, the fact that *these defendants* signed account agreements is meaningless for purposes of Section 546(e)—because if *they* knew that Madoff Securities was a Ponzi scheme, then *they* must have known that the transfers they received directly or indirectly from Madoff Securities were not "settlement payments." Similarly, since *such defendants* are alleged to have known in effect that the account agreements never led to a transaction for the "purchase, sale, or loan of a security," they therefore also must have known that the transfers could not have been made in connection with an actual "securities contract."

> . . . *such a transferee* stands in a different posture from *an innocent transferee,* even *as concerns the application of Section 546(e)*. . . . the purpose of this section is "minimiz[ing] the displacement caused in the commodities and securities markets in the event of a major bankruptcy affecting those industries." . . . In the context of Madoff Securities' fraud, that goal is best achieved by protecting the reasonable expectations of investors who believed they were signing a securities contract; but *a transferee who had actual knowledge of the Madoff "Ponzi" scheme did not have any such expectations*, but was simply obtaining moneys while he could. Neither law nor equity permits *such a person* to profit from a safe harbor intended to

> promote the legitimate workings of the securities markets and the
> reasonable expectations of *legitimate investors*.

*Cohmad 2013*, 2013 WL 1609154, at *3-4 (emphasis added) (citations omitted).  Judge Rakoff's

decision is clear: the "knowledge" exception prevents particular *transferees* who knew of the

fraud from "profit[ing]" from the safe harbor.  Judge Rakoff does not once state or imply that the

*initial transfer* is not protected by Section 546(e), even though an initial transferee *with*

*knowledge* is precluded from taking advantage of it.  Indeed, nothing in his opinion supports the

conclusion that a subsequent transferee *without* knowledge is precluded from invoking Section

546(e).  As a result, Judge Rakoff's decision requires dismissal of the LGI Complaint because

LGI is not alleged to have knowledge, and Bankruptcy Code Section 546(e) clearly applies by its

terms to the initial transfer.  *Id.* at *10 (emphasis added) ("*those defendants* . . . who actually

knew that Madoff Securities was a Ponzi scheme are not entitled to the protections of the Section

546(e) safe harbor").

Nor does *Picard v. BNP Paribas S.A. (In re Madoff)*, 594 B.R. 167, 196–97 (Bankr.

S.D.N.Y. 2018) ("*BNP Paribas*") compel a different result.  There, the subsequent transferee

defendants argued Section 546(e) applied to protect the *subsequent transfers* from Sentry to

them.  *Id.* at 196 (stating defendants "asserted that their subsequent transfers were also protected

by the safe harbor").  This Court rejected that argument.  *Id.* at 196–97.  But LGI is not arguing

that Section 546(e) protects the alleged subsequent transfers from Sentry to LGI—LGI has

demonstrated Section 546(e) prohibits the avoidance of the *initial* transfers according to its

terms, and, given that LGI has not been alleged to have knowledge of BLMIS's fraud, LGI is

permitted to invoke that defense even if Sentry was not.[14]  This interpretation of the

---

[14] The Trustee also cited *SunEdison Litig. Trust v. Seller Note, LLC (In re SunEdison, Inc.)*, 620 B.R. 505, 514 (Bankr.
S.D.N.Y. 2020) in his brief (*see* Opp. at 27), but that case does not relate to the "knowledge" exception; it simply
affirms the undisputed proposition that Section 546(e) only applies to initial transfers.

"knowledge" exception is the only one that protects "the legitimate expectations of customers"

without knowledge. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff*

*Sec.)*, 476 B.R. 715, 721-22 (S.D.N.Y. 2012), *aff'd*, 773 F.3d 411 (2d Cir. 2014).[15]

### 2.    The Initial Transfers Are Not Avoidable Because They Were Made in Connection with Real Settlement Payments and Securities Contracts

Even if the "knowledge" exception is not transferee-specific, as argued in the last section,

the initial transfers are still not avoidable under Section 546(e), and thus the Trustee cannot

recover from LGI here, because they were made in connection with "real" securities contracts.

In applying the "knowledge" exception, Judge Rakoff reasoned that a knowing transferee must

have known it had not entered into real securities contracts with BLMIS and thus could not

invoke Section 546(e). *Cohmad 2013*, 2013 WL 1609154, at *3. On this construction of the

"knowledge" exception, the defendant's knowledge negates the apparent satisfaction of the

"securities contract" element of Section 546(e). But, as the Trustee concedes (Opp. at 26 n.19),

Judge Rakoff did not consider whether the *initial* transfers were also made in connection with the

securities contracts between Sentry and its investors (rather than just the illegitimate contracts

between Sentry and BLMIS).

Both the Second Circuit and Judge Rakoff have recognized that an initial transfer could

be made "in connection with" a securities contract between the initial transferee and a

subsequent transferee. (*See* MOL at 34–35.)[16] It is implicit in the Trustee's allegations (and

made express in the Fairfield Amended Complaint) that Sentry withdrew funds from BLMIS "in

---

[15] Indeed, adopting the Trustee's position that the knowledge of the initial transferee blocks all subsequent transferees would essentially insert the general "fraud" exception into Section 546(e) that Judge Rakoff expressly rejected. *Id.*

[16] *See, e.g.*, *Cohmad 2013*, 2013 WL 1609154, at *9 (if the "Trustee alleges that a withdrawal of funds by an investment fund from its Madoff Securities customer account occurred because an investor in that fund sought redemption of its investment under the terms of its investment contract . . . that situation appears to fit within the plain terms of Section 546(e): an initial transfer that was 'made by or to (or for the benefit of) a . . . financial institution [or] financial participant . . . in connection with a securities contract.'").

order to" pay redemptions by subsequent transferees under those subsequent transferees' real

"securities contracts." (*See* MOL at 34.)  Indeed, no other conclusion is possible given the

Trustee's (implausible and inherently contradictory (*see* Section IV)) global assertion that

literally every redemption out of Sentry was funded by BLMIS property.  As the *initial* transfers

from BLMIS to Sentry allegedly were made "in order to" fund redemptions by parties like LGI,

and those redemptions were made pursuant to real securities contracts, Section 546(e) applies to

protect the initial transfers from avoidance for this independent reason, as well.[17]

## IV.   THE LGI COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO PLAUSIBLY ALLEGE LGI RECEIVED BLMIS PROPERTY

LGI showed in its Motion the Complaint fails to plausibly allege LGI received BLMIS

property.  (MOL at 35–40.)  The Trustee attempts to wave off this defect without disputing the

point that he has alleged billions of dollars more in subsequent transfers of BLMIS property out

of Sentry than initial transfers into Sentry—an impossibility.  (*See* Opp. at 33.)  But this defect

requires dismissal of the LGI Complaint because the Trustee's global allegations are inherently

contradictory and negate the plausibility of the allegation that LGI received BLMIS property.

### A.   The Trustee Has Not Alleged Facts Supporting the Inference the Funds He Alleges LGI Received Originated With BLMIS

The Trustee does not deny he failed to tie the initial transfer from BLMIS to Sentry to the

alleged subsequent transfers from Sentry to LGI.  Instead, the Trustee asserts he need only

demonstrate an "inference 'that the funds at issue originated with the debtor'" to satisfy his

pleading burden.  (Opp. at 28 (quoting *Picard v. Merkin* (*In re BLMIS*), 515 B.R. 117, 149–150

(Bankr. S.D.N.Y. 2014) ("*Merkin I*").)  But the Trustee's own authorities belie this argument,

since a link between the initial and subsequent transfer was identified in each of those cases.

---

[17] In addition, because the transfer was made in connection with the fulfillment of real securities contracts, it would also constitute a real "settlement payment" under Section 546(e). *See Fishman*, 773 F.3d at 422–23.

*See, e.g., Merkin I*, 515 B.R. at 150 ("[S]everal subsequent transfers took place contemporaneously or shortly after an initial transfer . . . implying linkage.").[18]

Here, the Trustee cannot satisfy that requirement because *Iqbal* and *Twombly* require the Trustee to plead a plausible link between the specific initial and subsequent transfers at issue, not just, as the Trustee asserts, "the relevant pathways through which the funds were transferred." (Opp. at 29 (quoting *Picard v. Charles Ellerin Rev. Tr.*, 2012 WL 892514, at \*3 (Bankr. S.D.N.Y. Mar. 14, 2012)).)  Here, the Complaint only lists the dates of alleged subsequent transfers, and, in a 75-page exhibit, every transaction recorded in BLMIS's Sentry accounts.  No "linkage" whatsoever is provided.  On the contrary, the Trustee's *own allegations* against other parties show the allegations LGI received BLMIS property are inherently implausible because there simply was not enough BLMIS money at Sentry to fund all of the subsequent transfers the Trustee alleges originated with BLMIS.  (MOL at 37–38.)  The Trustee's barebones and contradictory allegations do not constitute the required "vital statistics necessary to support a subsequent transfer claim."  *Picard v. Shapiro* (*In re Bernard L. Madoff Inv. Sec. LLC*), 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) ("*Shapiro*").

## B.    The Trustee's Tracing and Commingling Arguments Lack Relevance

The Opposition mentions LGI's acknowledgment that "at the pleading stage a dollar-for-

---

[18] *See also Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317, 341 (Bankr. S.D.N.Y. 2011) ("*Cohmad I*") (refusing to dismiss complaint because "the Trustee alleges that the amounts of Commissions specified by BLMIS on the Payment Schedules correspond to the amounts paid by BLMIS to Cohmad and, subsequently, to the Cohmad Representatives"); *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs. Inc.*), 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007) (complaint pleaded linkage between the initial and subsequent transfers since "[t]he funds . . . were preceded by fraudulent transfers of funds from Allou in amounts sufficient to cover the [subsequent] transfers"); *45 John Lofts, LLC v. Meridian Cap. Grp. LLC* (*In re 45 John Lofts, LLC*), 599 B.R. 730, 736-37, 747 (Bankr. S.D.N.Y. 2019) (the complaint alleged that two payments totaling \$29.4 million were deposited into an account and \$29.4 million was transferred out within a day); *Picard v. Mayer (In re Bernard L. Madoff)*), 2021 WL 4994435, at \*5 (Bankr. S.D.N.Y. Oct. 27, 2021) (emphasis added) (refuting defendant's argument that the subsequent transfer complaint lacked plausibility in part because "[l]edger entries note that these payments were *in connection with*" the initial fraudulent transfers).

dollar-accounting is not required," but argues LGI illegitimately seeks to conduct a "tracing" analysis.  (Opp. at 28 n. 21.)  The Trustee is wrong:  LGI does not make a tracing, commingling, or any other fact-based argument.[19]  Rather, LGI simply relies on the Trustee's own allegations, which render the suggestion that LGI received customer property implausible.  The Trustee's global assertions against all subsequent transferees are inherently contradictory—(1) as a whole, the Trustee alleges billions more in subsequent transfers from Sentry than in initial transfers to Sentry (an impossibility), and (2) with respect to LGI, and similar allegations made against other defendants, the Trustee alleges $85 million in BLMIS property somehow funded $114 million in subsequent transfers (another impossibility).  The Trustee cites nothing to support his contention that the Trustee is free to file numerous, contradictory complaints which negate themselves and somehow survive dismissal as having put forward a plausible case.[20]  He cannot.

The Trustee argues that these mathematical discrepancies and the potential violation of section 550(d) of the Bankruptcy Code are irrelevant since the Trustee "'can recover from any combination of [transferees]' up to the amount avoided."  (Opp. at 33 (modification in original) (quoting *Helms v. Metro. Life Ins. Co.* (*In re O'Malley*), 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019)).)  But those cases make the point that where the debtor transfers property to A, who then transfers it to B, who then transfers it to C, who then transfers it to D, the Trustee can assert claims against A, B, C, and D under 11 U.S.C. § 550(a)(2), as long as he does not recover more than once.  The situation here is entirely different.  Here, the debtor transferred money to A

---

[19]  The Trustee mischaracterizes LGI's argument as one based in tracing and/or commingling.  (Opp. at 31.)  In reality, LGI asserts that for at least $2 billion in alleged subsequent transfers, "Sentry used funds *other than those received from and originating with BLMIS* to make redemption payments."  (MOL at 37 (emphasis in original).)  Such an argument inherently involves no commingling or tracing, since it is premised on Sentry's lack of BLMIS customer property in the first place.

[20]  The Trustee does not refute the Court's ability to consider the Trustee's filings in other adversary proceedings within the same bankruptcy case.  Indeed, any such argument would contradict the Trustee's assertions relating to the incorporation of the Fairfield Amended Complaint.  (*See* Opp. at 20.)

(Sentry), who then *either* transferred it to B, or to C, or to D, but could not have transferred it to all of them.  The Trustee's case law does not support the contention the Trustee can file mutually contradictory suits against B, C, and D alleging they all received the same property.

The Trustee must bring a claim that is more than possible; it must be a plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).  The Complaint does not rise to the level of plausibility given the Trustee's own, contradictory allegations in other proceedings.

## C.    The Trustee Has All of the Records He Needs.

Seeking to excuse his failure to plead a plausible *prima facie* case, the Trustee argues he needs discovery, claiming he "is a stranger to the transactions between Sentry and Defendant" and "does not have all Sentry's books and records."  (Opp. at 32.)  But he does not say what additional records he needs but does not have, gives no reason to believe LGI has them, and his own pleadings detail thousands of alleged transfers from Sentry.  (*See, e.g.*, Compl. Ex. C.) Moreover, the Trustee elides his contractual right to records and cooperation from the Fairfield Liquidators (*see* Fairfield Settlement Agreement ¶ 14)—a right the Trustee has held for over a decade.  The Trustee's decade-long access to the necessary records distinguishes his authorities, which only offer plaintiffs greater latitude where payments had to be proven through defendants' records. *See Merkin I*, 515 B.R. at 151; *Cohmad I*, 454 B.R. at 329; *Picard v. Mayer*, 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021).  Here, LGI's records will not provide any insight into whether there was BLMIS money at Sentry sufficient to cover the alleged transfers at issue here, and no greater latitude should be afforded to a plaintiff who either possesses or has direct access to all the relevant records, yet still fails to plausibly allege that transfers contain BLMIS property.

*[Remainder of page intentionally left blank.]*

20

## **CONCLUSION**

For all the foregoing reasons, as more fully set out in the Motion, the LGI Complaint

should be dismissed in its entirety with prejudice.

Dated:  New York, New York
July 1, 2022

Respectfully submitted,

PROSKAUER ROSE LLP

By:  s/ *Ehud Barak*
Ehud Barak
Russell T. Gorkin
Elliot R. Stevens
Eleven Times Square
New York, New York  10036
Telephone:     212-969-3000
Facsimile:      212-969-2900
Email:  *ebarak@proskauer.com*
        *rgorkin@proskauer.com*
        *estevens@proskauer.com*

*Attorneys for Defendant Lion Global Investors Limited*