**BAKER & HOSTETLER LLP**

45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 10-05345 (CGM) |
| Plaintiff, | |
| v. | |
| Citibank N.A., Citicorp North America, Inc., and Citigroup Global Markets Limited, | |
| Defendants. | |

**TRUSTEE'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................................1

STATEMENT OF FACTS ............................................................................................................3

I.      THE PONZI SCHEME..........................................................................................................3

II.     THE BLMIS FEEDER FUNDS ...........................................................................................4

III.    DEFENDANTS' TRANSFERS FROM THE BLMIS FEEDER FUNDS.........................5

        A.      Defendants ..............................................................................................................5

        B.      Defendants' Receipt of BLMIS Customer Property ................................................6

IV.     THE TREMONT AND FAIRFIELD SETTLEMENTS .....................................................6

ARGUMENT .................................................................................................................................7

I.      BLMIS'S INITIAL TRANSFERS TO PRIME FUND AND SENTRY ARE
        AVOIDABLE AS INTENTIONALLY FRAUDULENT CONVEYANCES UNDER
        SECTIONS 544 AND 548(a)(1)(A) OF THE BANKRUPTCY CODE AND NEW
        YORK DEBTOR AND CREDITOR LAW SECTION 276..................................................7

        A.      The Ponzi Scheme Presumption Establishes Fraudulent Intent With Respect
                to Transfers Made in Furtherance of BLMIS's Ponzi Scheme...............................8

                1.      The Ponzi Scheme Presumption is an Appropriate Indicator of
                        Fraudulent Intent .......................................................................................8

                2.      *Sharp* is Inapplicable and Distinguishable from the Facts Here................12

        B.      The Trustee Has Alleged That the Transfers to Prime Fund and Sentry Were
                Made in Furtherance of the Ponzi Scheme ...........................................................15

        C.      The Trustee Has Alleged Fraudulent Intent Through Badges of Fraud.................16

II.     THE TRUSTEE HAS PLED THE AVOIDABILITY OF THE $475 MILLION
        INITIAL TRANSFER TO PRIME FUND ........................................................................19

III.    THE TRUSTEE'S AMENDED COMPLAINT PLAUSIBLY ALLEGES THAT
        DEFENDANTS RECEIVED BLMIS CUSTOMER PROPERTY UNDER
        SECTION 550(a) ..............................................................................................................25

        A.      The Trustee Has Plausibly Alleged that All of the Subsequent Transfers
                Defendants Received Contained Stolen BLMIS Customer Property ...................26

B.       Defendants Misstate the Trustee's Pleading Burden ..............................................27

C.       Defendants' Tracing Arguments Fail at the Pleading Stage..................................29

CONCLUSION.......................................................................................................................34

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 1031 Tax Grp., LLC*,
  439 B.R. 47 (Bankr. S.D.N.Y. 2010), *supplemented*, 439 B.R. 78 (Bankr. S.D.N.Y. 2010) ....9

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
  599 B.R. 730 (Bankr. S.D.N.Y. 2019) ..............................................................................26, 27

*In re Agape World, Inc.*,
  467 B.R. 556 (Bankr. E.D.N.Y. 2012) ..............................................................................10, 14

*Angell v. Ber Care, Inc. (In re Careamerica, Inc.)*,
  409 B.R. 737 (Bankr. E.D.N.C. 2009) ....................................................................................29

*Armstrong v. Collins*,
  No. 01-cv-2437, 2010 WL 1141158 (S.D.N.Y. Mar. 24, 2010) .............................................14

*Balaber-Strauss v. Lawrence*,
  264 B.R. 303 (S.D.N.Y. 2001) .................................................................................................11

*In re Bayou Grp., LLC*,
  439 B.R. 284 (S.D.N.Y. 2010) ...........................................................................................14, 15

*Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P.*,
  362 B.R. 624 (Bankr. S.D.N.Y. 2007) .....................................................................................15

*Bear, Stearns Secs. Corp. v. Gredd (In re. Manhattan Inv. Fund Ltd.)*,
  397 B.R. 1 (S.D.N.Y. 2007)...................................................................................11, 13, 14, 15

*Bear, Stearns Securities Corporation v. Gredd*,
  275 B.R. 190 (S.D.N.Y. 2002)..................................................................................................22

*In re Bernard L. Madoff Investment Securities, LLC*,
  654 F.3d 229 (2d Cir. 2011)........................................................................................2, 21, 23

*Buchwald v. Di Lido Beach Resort, Ltd. (In re McCann, Inc.)*,
  318 B.R. 276 (Bankr. S.D.N.Y. 2004) .....................................................................................22

*In re Churchill Mortgage Investment Corp.*, 256 B.R. 664, 680-81 (Bankr. S.D.N.Y. 2000), *aff'd
  sub nom. Balaber-Strauss v. Lawrence*, 264 B.R. 303 (S.D.N.Y. 2001) ...............................11

*Citibank, N.A. v. Bombshell Taxi LLC (In re Hypnotic Taxi LLC)*,
  543 B.R. 365 (Bankr. E.D.N.Y 2016).......................................................................................16

*CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*,
     393 B.R. 306 (Bankr. W.D.N.Y. 2008) ................................................................31

*Cohen v. UBS Fin. Servs., Inc.*,
     No. 12-CV-02147, 2014 WL 240324 (S.D.N.Y. Jan. 22, 2014) ...........................12

*In re Consolidated Pioneer Mortgage Entities*,
     211 B.R. 704 (S.D. Cal. 1997), *aff'd in part, rev'd in part*, 166 F.3d 342 (9th Cir. 1999) .....23

*Daly v. Deptula* (*In re Carrozzella & Richardson*),
     286 B.R. 480 (D. Ct. 2002) ..................................................................................11

*Dery v. United States (In re Bridge)*,
     90 B.R. 839 (E.D. Mich. 1988)..............................................................................34

*Devon Mobile Communications Liquidating Trust v. Adelphia Communications Corp. (In re
     Adelphia Communications Corp.)*,
     2006 WL 687153 (Bankr. S.D.N.Y. Mar. 6, 2006) ...............................................24

*Drenis v. Haligiannis*,
     452 F. Supp. 2d 418 (S.D.N.Y. 2006)....................................................................14

*Finn v. Alliance Bank*,
     860 N.W.2d 638 (Minn. 2015)...............................................................................10

*Fowler v. Caliber Home Loans, Inc.*,
     277 F. Supp. 3d 1324 (S.D. Fla 2016) ...................................................................29

*Gowan v. Amaranth Advisors, LLC (In re Dreier LLP)*,
     Adv. Pro. Nos. 10-03493 (SMB), 10-05447 (SMB), 2014 WL 47774 (Bankr. S.D.N.Y. Jan.
     3. 2014) ...........................................................................................................32, 33

*Gowan v. The Patriot Group, LLC (In re Dreier LLP)*,
     452 B.R. 391 (Bankr. S.D.N.Y. 2011).................................................9, 10, 13, 14

*Gredd v. Bear, Stearns Secs. Corp. (In re Manhattan Inv. Fund Ltd.)*,
     310 B.R. 500 (Bankr. S.D.N.Y. 2002)..............................................................9, 14

*Helms v. Metro. Life Ins. Co. (In re O'Malley)*,
     601 B.R. 629 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021)............31

*IBT Int'l, Inc. v. Northern (In re Int'l Admin Servs., Inc.)*,
     408 F.3d 689 (11th Cir. 2005) ...............................................................................34

*Intercontinental Metals Corp. v. Erlanger & Co.*,
     902 F.2d 1565 (4th Cir. 1990) ...............................................................................24

*Ivey v. First-Citizens Bank and Tr. Co. (In re Whitley)*,
    No. 10-10426, 2014 WL 6910837 (Bankr. M.D.N.C. Dec. 8, 2014), *aff'd sub nom. Ivey v. First Citizens Bank & Tr. Co.*, 539 B.R. 77 (M.D.N.C. 2015), *aff'd but criticized sub nom. In re Whitley*, 848 F.3d 205, 210 (4th Cir. 2017)........................................................23

*Johnson v. Holder*,
    564 F.3d 95 (2d Cir. 2009)........................................................12

*Kelley v. Westford Special Situations Master Fund*,
    No. 19-cv-1073, 2020 WL 3077151 (D. Minn. Jun. 10, 2020) ........................................28, 33

*Kramer v. Warner, Inc.*,
    937 F.2d 767 (2d Cir. 1991)........................................................31

*Lustig v. Weisz & Assocs., Inc. (In re Unified Com. Cap., Inc.)*,
    260 B.R. 343 (Bankr. W.D.N.Y. 2001) ........................................................10

*Malinowski v. N.Y. State Dep't of Labor (In re Malinowski)*,
    156 F.3d 131 (2d Cir. 1998)........................................................24

*Merrill v. Abbott (In re Indep. Clearing House Co.)*,
    77 B.R. 843 (D. Utah 1987)........................................................9

*Pereira v. WWRD US, LLC (In re Waterford Wedgwood USA, Inc.)*,
    500 B.R. 371 (Bankr. S.D.N.Y. 2013)........................................................23

*Picard v. Banca Carige S.P.A. (In re BLMIS)*,
    Adv. Pro. No. 11-02570 (CGM) (Bankr. S.D.N.Y. Jun. 30, 2022), ECF No. 123 ................31

*Picard v. Banque Lombard Odier & Cie SA (In re BLMIS)*,
    Adv. Pro. No. 12-01693 (CGM) (Bankr. S.D.N.Y. Jun. 30, 2022), ECF No. 115 ................31

*Picard v. Banque SYZ & Co., SA*,
    Adv. Pro. No. 11-02149 (CGM), ECF No. 167 (Main Case ECF No. 21741) (Bankr. S.D.N.Y. June 14, 2022) ........................................................25, 27

*Picard v. Bordier & Cie (In re BLMIS)*,
    Adv. Pro. No. 12-01695 (CGM) (Bankr. S.D.N.Y. Jun. 30, 2022), ECF No. 105 ................31

*Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*,
    Adv. Pro. Nos. 10-04398 (BRL), 2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012)
    ........................................................26, 28, 33

*Picard v. Citibank, N.A.*,
    12 F.4th 171 (2d Cir. 2021) ........................................................ *passim*

*Picard v. Cohmad Sec. Corp. (In re BLMIS)*,
    454 B.R. 317 (Bankr. S.D.N.Y. 2011)........................................................26, 33

*Picard v. Est. of Seymour Epstein*,
No. 1:21-cv-02334-CM, 2022 WL 493734 (S.D.N.Y. Feb. 17, 2022)....................................8

*Picard v. Fairfield Pagma Assocs., LP*,
Adv. Pro. No. 10-05169 (CGM) (Bankr. S.D.N.Y. April 13, 2022), ECF No. 137 .................8

*Picard v. Gerald & Barbara Keller Fam. Trust*,
634 B.R. 39 (Bankr. S.D.N.Y. 2021)........................................................................................8

*Picard v. Gettinger*,
976 F.3d 184 (Bankr. S.D.N.Y. 2020) ....................................................................8, 12, 13, 14

*Picard v. JABA Assocs. LP (In re BLMIS)*,
528 F. Supp. 3d 219 (S.D.N.Y. 2021).....................................................................................18

*Picard v. Ken-Wen Fam. Ltd. P'ship*,
Adv. Pro. No. 10-04468 (CGM), 2022 WL 709768 (Bankr. S.D.N.Y. Mar. 9, 2022)..............8

*Picard v. Lisa Beth Nissenbaum Trust*,
No. 20 cv. 3140, 2021 WL 1141638 (S.D.N.Y. Mar. 24, 2021) .........................................8, 18

*Picard v. Lloyds TSB Bank PLC (In re. BLMIS),*
Adv. Pro. No. 12-01207 (CGM) (Bankr. S.D.N.Y), ECF No. 105.........................................31

*Picard v. Lowrey*,
596 B.R. 451 (S.D.N.Y. 2019), *aff'd sub nom. Picard v. Gettinger*, 976 F.3d 184 (2d Cir.
2020), *cert. denied sub nom. Gettinger v. Picard*, 141 S. Ct. 2603 (2021) .............................17

*Picard v. Lustig (In re BLMIS)*,
568 B.R. 481 (Bankr. S.D.N.Y. 2017)..................................................................................2, 20

*Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*,
458 B.R. 87 (Bankr. S.D.N.Y. 2011)................................................................................8, 9, 15

*Picard v. Mayer (In re BLMIS)*,
Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021).........27

*Picard v. Merkin (In re BLMIS)*,
515 B.R. 117 (Bankr. S.D.N.Y. 2014)......................................................................26, 27, 32

*Picard v. Merkin (In re BLMIS)*,
581 B.R. 370 (Bankr. S.D.N.Y. 2017)..................................................................................30

*Picard v. Multi-Strategy Fund Ltd.*,
Adv. Pro. No. 12-01205 (CGM), ECF No. 122 (Main Case ECF No. 21729) (Bankr.
S.D.N.Y. June 13, 2022) ................................................................................................ *passim*

*Picard v. Nelson (In re BLMIS)*,
    610 B.R. 197 (Bankr. S.D.N.Y. 2019) ..............................................................8, 18

*Picard v. Sage Realty*,
    No. 20-CV-10109 (JFK), 2022 WL 1125643 (S.D.N.Y. Apr. 15, 2022) ...........8, 11

*Picard v. Shapiro (In re BLMIS)*,
    542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) ...................................................28, 29

*In re Polaroid Corp.*,
    472 B.R. 22 (Bankr. D. Minn. 2012) ......................................................................10

*Salomon v. Kaiser (In re Kaiser)*,
    722 F.2d 1574 (2d Cir. 1983)..................................................................................16

*Sass v. Barclays Bank PLC (In re Am. Home Mortg. Holdings, Inc.)*,
    501 B.R. 44 (Bankr. D. Del. 2013) .........................................................................29

*Schneider v. Barnard*,
    508 B.R. 533 (E.D.N.Y. 2014) ................................................................................9

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    505 B.R. 135 (S.D.N.Y. 2013)......................................................................6, 24, 25

*Sharp International Corp. v. State Street Bank & Trust Co.*,
    403 F.3d 43 (2d Cir. 2005)..........................................................................12, 13, 14

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
    379 B.R. 5 (Bankr. E.D.N.Y. 2007).......................................................................28

*SIPC v. BLMIS (In re BLMIS)*,
    522 B.R. 41 (Bankr. S.D.N.Y. 2014).....................................................................22

*SIPC v. BLMIS (In re BLMIS)*,
    No. 08-01789 (SMB), 2016 WL 1695296 (Bankr. S.D.N.Y. Apr. 25, 2016) ........23

*Solution Tr. V. 2100 Grand LLC (In re AWTR Liquidaiton Inc.)*,
    548 B.R. 300 (Bankr. C.D. Cal. 2016)....................................................................29

*Southmark Corp v. Schulte Roth & Zabel (In re Southmark Corp.)*,
    239 F.3d 365, 2000 WL 1741550 (5th Cir. Dec. 11, 2000)....................................33

*Taylor v. Vt. Dep't of Educ.*,
    313 F.3d 768 (2d Cir. 2002)....................................................................................31

*United States v. Henshaw*,
    388 F.3d 738 (10th Cir. 2004) ..........................................................................30, 34

*United States v. McCombs*,
   30 F.3d 310 (2d Cir. 1994)..............................................................................13

*United States v. Quintieri*,
   306 F.3d 1217 (2d Cir. 2002).........................................................................12

*Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.)*,
   973 F.2d 1065 (3d Cir. 1992).........................................................................24

*Weisfelner v. Hofmann (In re Lyondell Chem. Co.)*,
   554 B.R. 635 (S.D.N.Y. 2016)........................................................................16

*Westinghouse Credit Corp. v. D'Urso*,
   278 F.3d 138 (2d. Cir. 2002)..........................................................................24

*Williams v. Time Warner Inc.*,
   440 F. App'x 7 (2d Cir. 2011) .......................................................................30

*Zucker v. Oconee Reg'l Healthcare Found., Inc. (In re Oconee Reg'l Health Sys., Inc.)*,
   621 B.R. 64 (Bankr. M.D. Ga. 2020) .............................................................29

**Statutes**

11 U.S.C. § 544 ......................................................................................... *passim*

11 U.S.C. § 548(a)(1)(A) ........................................................................... *passim*

11 U.S.C. § 548(c) ...................................................................................2, 11, 14, 20

11 U.S.C. § 550(a) ...................................................................................26, 31

11 U.S.C. § 550(b) ...................................................................................14

11 U.S.C. § 550(d) ...................................................................................31

11. U.S.C. § 548 ......................................................................................11

New York Debtor and Creditor Law Section 276 ................................. *passim*

Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-lll.............................1

Securities Investor Protection Act, 15 U.S.C. § 78lll(4)................................6

UFTA § 4(b) ...............................................................................................16

**Other Authorities**

Fed. R. Civ. P. 8(a) ...............................................................................26, 29

Fed. R. Civ. P. 9(b) .................................................................................................................7, 16

Fed. R. Civ. P. 12(b)(6)..................................................................................................29, 30, 31

USCS Bankr. R. § 7008(a)(2) ..............................................................................................29

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff"), respectfully submits this memorandum of law in opposition to the motion to dismiss (ECF No. 224)[1] (the "Motion") of defendants Citibank, N.A. ("Citibank"), Citicorp North America, Inc. ("Citicorp"), and Citigroup Global Markets Limited ("CGML") (collectively, "Defendants").

## PRELIMINARY STATEMENT

As part of the Trustee's continuing efforts to recover BLMIS customer property that was stolen as part of Madoff's Ponzi scheme, this action seeks to recover approximately $443,084,590 from Defendants, including $343,084,590 that Citibank and Citicorp received from Rye Select Broad Market Prime Fund, L.P. ("Prime Fund") and $100,000,000 that CGML received from Fairfield Sentry Limited ("Sentry"). Defendants have moved to dismiss the Amended Complaint on three grounds, each of which is meritless.

*First*, relying on Judge Menashi's concurring opinion in *Picard v. Citibank, N.A.*, 12 F.4th 171 (2d Cir. 2021), Defendants argue that the "Ponzi scheme presumption" is overbroad and inconsistent with Bankruptcy Code Section 548(a)(1)(A) because it empowers a trustee to avoid "any and all payments made by a Ponzi scheme operator." Contrary to Defendants' assertions, the Ponzi scheme presumption applies to transfers made in furtherance of the Ponzi scheme, such as those here. And this Court and the District Court have repeatedly recognized that the Trustee can rely on the Ponzi scheme presumption to demonstrate BLMIS's fraudulent

---

[1] Unless otherwise indicated, all ECF references herein refer to the case captioned *Picard v. Citibank, et. al. (In re BLMIS)*, Adv. Pro. No. 10-05345 (CGM) (Bankr. S.D.N.Y.).

intent under Bankruptcy Code Sections 544, 548(a)(1)(A), and New York Debtor and Creditor Law Section 276 where, as here, the Trustee has alleged the initial transfers at issue were made in furtherance of Madoff's Ponzi scheme.  In any event, numerous courts have found that BLMIS's actual fraudulent intent has been established independent of the presumption based on the same "badges of fraud" alleged in the Amended Complaint here.

*Second*, Defendants argue that the Trustee cannot recover $301 million in subsequent transfers Citibank and Citicorp received from Prime Fund because a third party later invested different funds in a separate BLMIS account held by a different feeder fund, Rye Select Broad Market XL Fund, LP ("Broad Market Fund").  Putting aside that there are no facts suggesting these transactions were in any way connected, Defendants ignore the simple fact that the $301 million they received never returned to BLMIS.  Even if it had, this Court has already rejected the argument that fraudulent transfer liability can be offset by subsequent deposits into a different BLMIS account because doing so is inconsistent with the Section 548(c) value defense, deprives the third parties who later made the deposits of their rights, and harms BLMIS customers by forcing the BLMIS estate to credit the same deposits against the customer property fund twice. *See Picard v. Lustig (In re BLMIS)*, 568 B.R. 481, 490 (Bankr. S.D.N.Y. 2017).  It would also contravene the Second Circuit's decision upholding the Trustee's "Net Investment Method." *See In re Bernard L. Madoff Investment Securities, LLC*, 654 F.3d 229 (2d Cir. 2011).

*Third*, Defendants argue that the Trustee has not plausibly alleged that some of the subsequent transfers they received contained stolen BLMIS customer property.  But the Trustee has alleged the relevant pathways through which customer property was transferred from BLMIS to Prime Fund and Sentry and subsequently to Defendants, and the necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer Defendants received.  At this

stage of the litigation, nothing more is required.  Nevertheless, Defendants argue that some of the

transfers are "completely untraceable" under a fact-based and undisclosed tracing methodology.

As this Court has recognized, this is plainly inappropriate on a motion to dismiss.

Because these arguments lack merit, the Trustee respectfully requests that this Court deny

Defendants' Motion in its entirety.

## STATEMENT OF FACTS

### I.    THE PONZI SCHEME

Madoff founded and operated BLMIS out of New York, New York until its collapse in

2008.  (Am. Compl. ¶¶ 56, 58, ECF. No. 214.)  BLMIS had three principal units: (i) a proprietary

trading desk; (ii) a broker-dealer operation; and (iii) an investment advisory business (the "IA

Business").  (*Id.* ¶ 58.)  For its IA Business customers, BLMIS purportedly executed a split-

strike conversion strategy (the "SSC Strategy"), which involved: (a) investing in a basket of

common stocks from the S&P 100 Index, (b) buying put options and selling call options to hedge

against price changes in the underlying basket of stocks, and (c) purchasing U.S. Treasury bills

when the money was out of the market.  (*Id.* ¶¶ 69-74, 79.)  In reality, BLMIS operated a Ponzi

scheme through its IA Business using money deposited by customers that BLMIS claimed to

invest in securities.  (*Id.* ¶ 62.)  The IA Business had no legitimate business operations and

produced no profits or earnings.  (*Id.*)  All funds received from BLMIS customers were

commingled in a single BLMIS account at JP Morgan Chase Bank.  (*Id.* ¶ 67.)  These

commingled funds were not used to trade securities, but rather to make distributions to, or

payments for, other customers, to benefit Madoff and his family, and to prop up BLMIS's

proprietary trading business.  (*Id.*)  BLMIS reported falsified trades using backdated trade data

on monthly account statements sent to BLMIS customers that typically reflected impossibly

consistent gains on the customers' principal investments.  (*Id.* ¶ 70.)

The Ponzi scheme collapsed in December 2008, when BLMIS customers' requests for redemptions overwhelmed the flow of new investments.  (*Id.* ¶ 85.)  On December 11, 2008, Madoff's fraud was publicly revealed, and he was arrested for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. (*Id.* ¶ 10.)  At a plea hearing on March 12, 2009, in the case captioned *United States v. Madoff*, Case No. 09-CR-213 (DC), Madoff pleaded guilty to an 11-count criminal information filed against him by the United States Attorney for the Southern District of New York.  (*Id.* ¶ 15.) Madoff admitted he "operated a Ponzi scheme through the investment advisory side of [BLMIS]" and that BLMIS purchased none of the securities listed on the BLMIS customers' fraudulent statements.  (*Id.* ¶¶ 15, 86.)  Madoff was assisted by employees and family members, including Frank DiPascali, Irvin Lipkin, David Kugel, Annette Bongiorno, JoAnn Crupi, and others, who pleaded to, or were found guilty of, assisting Madoff in carrying out the Ponzi scheme.  (*Id.* ¶ 62.)

## II.    THE BLMIS FEEDER FUNDS

Among BLMIS's customers were BLMIS "feeder funds"—large investment funds created for the express purpose of funneling their investors' money into BLMIS.  *See Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 179 (2d Cir. 2021).  The Trustee seeks to recover subsequent transfers that Defendants received from two such funds, Prime Fund and Sentry. (Am. Compl. ¶¶ 2-5, 36.)

Prime Fund was a Delaware limited partnership organized in May 1997 with its registered office in Rye, New York.[2]  (*Id.* ¶ 53.)  Prime Fund was operated and controlled by

---

[2] Prime Fund's original name was "American Masters Broad Market Prime Fund, LP."  It was renamed "American Masters Broad Market Prime Fund, LP" in or around 1999, and then took its current name, "Rye Select Broad Market Prime Fund, LP," in or around 2006.  (Am. Compl. ¶ 53 n.2.)

Tremont Partners, Inc., a Connecticut corporation, which served as Prime Fund's general partner and investment manager. (*Id.* ¶ 52.) Prime Fund invested substantially all of its assets with the IA Business. (*Id.* ¶ 53.)

Sentry was a fund incorporated in the British Virgin Islands and had its headquarters and primary business operations in New York. (*Id.* ¶ 55.) Sentry was created, managed, and controlled by Fairfield Greenwich Group, a *de facto* partnership headquartered in New York. (*Id.* ¶¶ 36, 54.) Sentry invested substantially all of its assets with the IA Business. It was the largest BLMIS feeder fund and filed a SIPA customer claim against the BLMIS estate for over $6.2 billion. (*Id.* ¶¶ 5, 55.)

As customers of the IA Business, Prime Fund and Sentry received initial transfers of stolen BLMIS customer property that were based on fraudulent and non-existent securities transactions. (*Id.* ¶¶ 69-70, 85-87.)

## III. DEFENDANTS' TRANSFERS FROM THE BLMIS FEEDER FUNDS

### A. Defendants

Defendant Citibank is a commercial bank and has its principal place of business at 399 Park Avenue, New York, NY 10022. (Am. Compl. ¶ 22.) Citibank is a wholly owned subsidiary of Citigroup Inc. ("Citigroup"), which is also the ultimate parent corporation to Defendants. (*Id.* ¶ 27.)

Defendant Citicorp is a Delaware corporation and has its principal place of business at 388 Greenwich Street, New York, NY 10013. (*Id.* ¶ 28.) Citicorp is a non-banking holding company and subsidiary of Citicorp Banking Corporation. (*Id.*)

Defendant CGML is an investment banking and securities brokerage company with principal offices at Citigroup Centre, 33 Canada Square, Canary Wharf, London E14 5LB, United Kingdom. (*Id.* ¶ 32.) CGML is a subsidiary of Citigroup Global Markets Europe

Limited, a subsidiary of Citigroup Global Markets Europe Finance Limited, which is owned by

Citigroup Global Markets Switzerland Holdings GmbH, which is owned by Citigroup Financial

Products, Inc., a wholly owned subsidiary of Citigroup Global Markets Holding, Inc., a wholly

owned subsidiary of Citigroup.  (*Id.* ¶ 33.)

### B.    Defendants' Receipt of BLMIS Customer Property

With the Amended Complaint, the Trustee seeks to recover at least $443,084,590 of

BLMIS customer property, as defined by SIPA § 78*lll*(4), that was stolen as part of the massive

Ponzi scheme perpetrated by Madoff and others.  (Am. Compl. ¶ 2.)

Defendants Citibank and Citicorp received at least $343,084,590 in subsequent transfers

of stolen BLMIS customer property from Prime Fund between June 2005 and March 2008.[3]  (*Id.*

¶ 3.)  Citibank and Citicorp received these subsequent transfers in connection with a credit

agreement they entered into with Prime Fund on or about June 15, 2005.  (*Id.*)

Defendant CGML received at least $130,000,000 in subsequent transfers of stolen

BLMIS customer property from Sentry between October 2005 and November 2008,

$100,000,000 of which the Trustee seeks to recover with the Amended Complaint.[4]  (*Id.* ¶ 4.)

## IV.    THE TREMONT AND FAIRFIELD SETTLEMENTS

On December 7, 2010, the Trustee commenced an adversary proceeding against Prime

Fund and other Tremont funds and entities seeking to avoid and recover fraudulent transfers of

customer property in the amount of approximately $2.1 billion.  (Am. Compl. ¶ 88.)  In 2011, the

Trustee settled with Prime Fund and others.  (*Id.* ¶ 90.)  As part of the settlement, Prime Fund

---

[3] In his Amended Complaint, the Trustee alleges that both Citibank and Citicorp received the subsequent transfers from Prime Fund.  In the Motion, Defendants only challenge the Trustee's allegations regarding Citibank's receipt of these transfers without any mention of Citicorp.

[4] The original complaint sought $130,000,000 from CGML.  The District Court (Rakoff, J.) previously dismissed the Trustee's claim to recover a $30,000,000 transfer CGML received on or around October 14, 2005.  *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 505 B.R. 135, 150-51 (S.D.N.Y. 2013).

and other defendants paid $1.025 billion to the BLMIS customer property estate.  (*Id.*)  The

Trustee then commenced a number of adversary proceedings against subsequent transferees of

Prime Fund and other Tremont funds, like Citibank and Citicorp, to recover the approximately

$1.075 billion in stolen customer property.

On May 18, 2009, the Trustee filed an adversary proceeding against Sentry and related

defendants to avoid and recover fraudulent transfers of customer property in the amount of

approximately $3 billion.  (*Id.* ¶ 162.)  In 2011, the Trustee settled with Sentry and others.  (*Id.* ¶

163.)  As part of the settlement, Sentry consented to a judgment in the amount of $3.054 billion.

(*Id.*)  The Trustee then commenced a number of adversary proceedings against Sentry's

subsequent transferees, like CGML, to recover the approximately $3 billion in stolen customer

property.

## **ARGUMENT**

I.   **BLMIS'S INITIAL TRANSFERS TO PRIME FUND AND SENTRY ARE
     AVOIDABLE AS INTENTIONALLY FRAUDULENT CONVEYANCES UNDER
     SECTIONS 544 AND 548(a)(1)(A) OF THE BANKRUPTCY CODE AND NEW
     YORK DEBTOR AND CREDITOR LAW SECTION 276**

Defendants argue that the initial transfers from BLMIS to Prime Fund and Sentry are not

avoidable because the Trustee has failed to adequately allege BLMIS's "actual intent to hinder,

delay, or defraud" creditors under Section 548(a)(1)(A) of the Bankruptcy Code.  Defendants

incorrectly contend that the Trustee fails to plead transfer-specific facts related to the transferor's

intent with the specificity required under Rule 9(b) and that the Trustee cannot rely on the

existence of a Ponzi scheme to establish actual fraudulent intent as to each specific initial

transfer.  (*See* Motion at 10.)

Contrary to Defendants' arguments, this Court and the District Court have repeatedly

determined that the Trustee can rely on the Ponzi scheme presumption to demonstrate BLMIS's

actual intent to hinder, delay, or defraud creditors.[5]  The Amended Complaint alleges numerous

facts establishing that BLMIS was a Ponzi scheme, including that the money received from

investors was used to pay off other investors—the *sine qua non* of a Ponzi scheme.  (Am. Compl.

¶¶ 62-87.)  Importantly, Defendants fail to appreciate that the Ponzi scheme presumption applies

here because BLMIS made the initial transfers to its IA Business customers, Prime Fund and

Sentry, in furtherance of the Ponzi scheme.  (Am. Compl. ¶¶ 5, 53, 62-65, 67-70, 85.)  In any

case, the Trustee adequately alleges badges of fraud sufficient to establish BLMIS's fraudulent

intent independent of the Ponzi scheme presumption.

### A.    The Ponzi Scheme Presumption Establishes Fraudulent Intent With Respect to Transfers Made in Furtherance of BLMIS's Ponzi Scheme

#### 1.    The Ponzi Scheme Presumption is an Appropriate Indicator of Fraudulent Intent

It is well-established in this Circuit that "[a]s a matter of law, the 'Ponzi scheme

presumption' establishes the debtors' fraudulent intent as required" under Bankruptcy Code

Sections 544 and 548(a)(1)(A) and New York Debtor and Creditor Law ("DCL") Section 276.

---

[5] *See, e.g.*, *Picard v. Sage Realty*, No. 20-CV-10109 (JFK), 2022 WL 1125643, at *27-28 (S.D.N.Y. Apr. 15, 2022) (concluding that the Trustee has established BLMIS's actual intent to defraud under Section 548(a)(1)(A) through the Ponzi scheme presumption); *Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87, 104 (Bankr. S.D.N.Y. 2011) (finding that the Trustee satisfied the actual intent to defraud element under Section 548(a)(1)(A) and DCL Section 276 through the Ponzi scheme presumption); Mem. Decision at 7, *Picard v. Fairfield Pagma Assocs., LP*, Adv. Pro. No. 10-05169 (CGM) (Bankr. S.D.N.Y. April 13, 2022), ECF No. 137 (finding actual "intent to defraud is established as BLMIS operated a Ponzi scheme," at summary judgment stage); *Picard v. Est. of Seymour Epstein*, No. 1:21-cv-02334-CM, 2022 WL 493734, at *17-18 (S.D.N.Y. Feb. 17, 2022) (holding that the "Trustee is entitled to the benefit of the Ponzi scheme presumption, and so can prove fraudulent intent as a matter of law"); *Picard v. Lisa Beth Nissenbaum Trust*, No. 20 cv. 3140 (JGK), 2021 WL 1141638, at *15 (S.D.N.Y. Mar. 24, 2021) ("There is no genuine dispute of material fact that BLMIS operated a Ponzi scheme.  The breadth and notoriety of the Madoff Ponzi scheme leave no basis for disputing the application of the Ponzi scheme presumption to the facts of this case, particularly in light of Madoff's criminal admission.") (cleaned up); *Picard v. Ken-Wen Fam. Ltd. P'ship*, Adv. Pro. No. 10-04468 (CGM), 2022 WL 709768, at *3 (Bankr. S.D.N.Y. Mar. 9, 2022) ("Intent to defraud is established as Madoff operated a Ponzi scheme."); *Picard v. Gerald & Barbara Keller Fam. Trust*, 634 B.R. 39, 47 (Bankr. S.D.N.Y. 2021) (same); *Picard v. Nelson (In re BLMIS)*, 610 B.R. 197, 235 (Bankr. S.D.N.Y. 2019) ("[T]he Trustee has established that the Two-Year Transfers were made with actual intent to defraud under the Ponzi scheme presumption."); *see also Picard v. Gettinger*, 976 F.3d 184, 187-88 (Bankr. S.D.N.Y. 2020) (in which the Second Circuit noted that the case "arises out of the infamous Ponzi scheme perpetrated by Bernard L. Madoff") (cleaned up).

*Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87, 104 (Bankr. S.D.N.Y.

2011) (citing *Gowan v. The Patriot Group, LLC (In re Dreier LLP)*, 452 B.R. 391, 428 (Bankr.

S.D.N.Y. 2011); *see also Picard v. Citibank (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th

171, 181 (2d Cir. 2021) (applying the Ponzi Scheme presumption to transfers avoided under

Section 548(a)(1)(A)), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L.

Ed. 2d 217 (2022).  Defendants nevertheless argue that the Ponzi scheme presumption is

overbroad and inconsistent with the text and purpose of section 548(a)(1)(A).[6]  Contrary to

Defendants' assertions, the Ponzi scheme presumption does not empower a trustee to avoid "any

and all payments made by a Ponzi scheme operator."  (Motion at 14.)  Indeed, many courts have

held that the Ponzi scheme presumption applies to transfers related to or in furtherance of the

Ponzi scheme.  *See Schneider v. Barnard*, 508 B.R. 533, 543 (E.D.N.Y. 2014) (discussing

decisions concerning the scope of the Ponzi scheme presumption).  This is "[b]ecause '[t]he

investor pool is a limited resource and will eventually run dry.'"  *Schneider*, 508 B.R. at 542

(quoting *Merrill v. Abbott (In re Indep. Clearing House Co.)*, 77 B.R. 843, 860 (D. Utah 1987)).

"The Ponzi scheme operator 'must know all along, from the very nature of his activities, that

investors at the end of the line will lose their money.'"  *Id*.  Thus, the "only possible inference is

that the debtors had the intent to hinder, delay or defraud future creditors, because they must

have known that future creditors would not be paid."  *Gredd v. Bear, Stearns Secs. Corp. (In re

Manhattan Inv. Fund Ltd.)*, 310 B.R. 500, 507 (Bankr. S.D.N.Y. 2002).  Where this is the case,

the Ponzi scheme presumption applies to transfers related to that scheme.  *See In re 1031 Tax

Grp., LLC*, 439 B.R. 47, 72 (Bankr. S.D.N.Y. 2010), *supplemented*, 439 B.R. 78 (Bankr.

S.D.N.Y. 2010) ("For the Ponzi scheme presumption to apply, the transfers must have been

---

[6] Defendants do not address the Ponzi Scheme presumption's applicability to Section 544 or DCL Section 276. (*See* Motion at 10, 13-14.)

made in connection with [or in furtherance of] a Ponzi scheme."); *see also In re Agape World, Inc.*, 467 B.R. 556, 570 (Bankr. E.D.N.Y. 2012) ("The sole exception to the Ponzi scheme presumption is where the transfers at issue are so unrelated to the Ponzi scheme that the transfers do not serve to further the Ponzi scheme.").

The Ponzi scheme presumption is just that—a presumption that may be rebutted by Defendants.  Indeed, the inference resulting from the presumption, which satisfies the intent requirement of Sections 544 and 548(a)(1)(A) and DCL Section 276 (*see In re Dreier LLP*, 452 B.R. at 428; *In re Agape World, Inc.*, 467 B.R. at 570), can always be rebutted by proof of contrary intent.  *See In re Polaroid Corp.*, 472 B.R. 22, 35 (Bankr. D. Minn. 2012) (once a trustee has proved that the debtor made the transfer in furtherance of a Ponzi scheme, "the defendant in the avoidance action must produce probative, significant evidence that the transferor-debtor *lacked* the intent to take the transferred value away from contemporaneous or future creditors").  The Ponzi scheme presumption creates a rebuttable inference that given the nature of a Ponzi scheme, transfers made in connection with the scheme are made with the requisite fraudulent intent under Sections 544 and 548(a)(1)(A) and DCL Section 276.

Defendants attempt to cast doubt on the validity of the Ponzi scheme presumption by citing several inapplicable cases that focus on whether the presumption conclusively establishes a lack of reasonably equivalent value as an element of a *constructive* fraudulent conveyance, or purely as a question of state law, or both.  *See Finn v. Alliance Bank*, 860 N.W.2d 638, 647-48 (Minn. 2015) (finding that under Minnesota state law the existence of a Ponzi scheme does not conclusively establish lack of reasonably equivalent value and insolvency as elements of a *constructive* fraud claim or preclude a finding that the debtor lacked actual fraudulent intent); *Lustig v. Weisz & Assocs., Inc. (In re Unified Com. Cap., Inc.)*, 260 B.R. 343, 350 (Bankr.

W.D.N.Y. 2001) (addressing recovery of a fraudulent conveyance under a *constructive fraud* theory in connection with a Ponzi scheme, without even mentioning the presumption as it applies to an *actual fraud* theory); *Daly v. Deptula (In re Carrozzella & Richardson)*, 286 B.R. 480, 488-89 (D. Ct. 2002) (considering whether the existence of a Ponzi scheme conclusively establishes a lack of reasonably equivalent value as an element of a *constructive* fraud claim under Connecticut state law). And while the court in *In re Churchill Mortgage Investment Corp.* discussed the presumption's application to both actual and constructive fraud claims under Section 548 and the DCL, it did not question the application of the presumption to establish fraudulent intent under Section 548(a)(1)(A) or DCL Section 276. 256 B.R. 664, 680-81 (Bankr. S.D.N.Y. 2000), *aff'd sub nom. Balaber-Strauss v. Lawrence*, 264 B.R. 303 (S.D.N.Y. 2001). Instead, the court only considered the question of value as it relates to the initial transferee's affirmative defense under Section 548(c). *Id.* at 680-84. None of the foregoing cases rejects the presumption as it applies to Sections 544 and 548(a)(1)(A) of the Bankruptcy Code, or DCL Section 276.

Despite their arguments, Defendants do not challenge that the Ponzi scheme presumption is law of the case, and has been applied by this Court, the District Court, and the Second Circuit in the Trustee's actions in this SIPA liquidation proceeding. Rather, Defendants urge this Court to disregard this settled principle in light of Judge Menashi's concurring opinion in the Second Circuit's decision in this adversary proceeding. *See Citibank*, 12 F.4th at 202 (Menashi, J., concurring). However, the District Court recently confirmed that, "[n]otwithstanding Judge Menashi's concerns, 'the Ponzi scheme presumption remains the law of this Circuit.'" *See Sage Realty*, 2022 WL 1125643, at *28 (citing *Bear, Stearns Secs. Corp. v. Gredd (In re. Manhattan Inv. Fund. Ltd.)*, 397 B.R. 1, 11 (S.D.N.Y. 2007) ("*Gredd*")); *see also supra* note

5.  Moreover, *dicta* in a concurring opinion has no precedential effect, and it certainly does not

constitute an intervening change of controlling law or provide any other "cogent" or

"compelling" reasons to depart from the law of the case.  *See Johnson v. Holder*, 564 F.3d 95,

99-100 (2d Cir. 2009) ("We may depart from the law of the case for 'cogent' or 'compelling'

reasons including an intervening change in law, availability of new evidence, or 'the need to

correct a clear error or prevent manifest injustice.'") (citing *United States v. Quintieri*, 306 F.3d

1217, 1230 (2d Cir. 2002)); *Cohen v. UBS Fin. Servs., Inc.*, No. 12-CV-02147, 2014 WL

240324, at *4 (S.D.N.Y. Jan. 22, 2014) (preceding decision was not considered "intervening

change in controlling law" when relevant finding was "mere dicta").

### 2.  *Sharp* is Inapplicable and Distinguishable from the Facts Here

Defendants cite to *Sharp International Corp. v. State Street Bank & Trust Co.*, 403 F.3d

43 (2d Cir. 2005), to support their argument that it is "absurd" for a debtor's repayment of a loan

to a creditor to amount to a fraudulent transfer.  (Motion at 14.)  However, the instant case does

not involve the repayment of a loan to the debtor.  Rather, BLMIS made the fraudulent transfers

to Prime Fund and Sentry as IA Business customers based on fraudulent and non-existent

securities transactions.  Moreover, the Second Circuit has recently held that *Sharp's* reasoning is

specifically inapplicable in this SIPA liquidation proceeding.  In *Picard v. Gettinger*, the

appellees similarly "urge[d]" the Second Circuit "to equate the [BLMIS] transfers . . . to those in

*Sharp* and rule in their favor on that basis."  976 F.3d 184, 200 (2d Cir. 2020).  "But there exists

no equivalency," the court held, "because *Sharp* involved a bankruptcy liquidation, not a SIPA

liquidation."  *Id.  Sharp* held that "the basic object of fraudulent conveyance law is to see that the

debtor uses his limited assets to satisfy some of his creditors; it normally does not try to choose

between them."  *Id.*  (quoting *Sharp*, 403 F.3d at 54).  But the Second Circuit explained in

*Gettinger* that "defendants-appellants' reliance on *Sharp* is misplaced because the case at bar

involves a SIPA liquidation in which we do 'choose among' creditors." *Id.* at 200-01. For that same reason, Defendants' distinction between preferential and actually fraudulent transfers here does not apply in a SIPA liquidation proceeding like this one.

Multiple other courts have explained why the Ponzi scheme presumption does not contravene the Second Circuit's decision in *Sharp*. *See, e.g.*, *In re Dreier LLP*, 452 B.R. at 425 (rejecting defendants' argument that *Sharp* eliminated the Ponzi scheme presumption because "*Sharp* did not involve a Ponzi scheme and the Second Circuit did not discuss or refer to the Ponzi scheme presumption or Ponzi schemes in general"); *Gredd*, 397 B.R. at 11 ("*Sharp* does not dispose of the Ponzi scheme presumption. At most, it simply means that courts must be sure that the transfers sought to be avoided are related to the scheme.").

Unlike here, *Sharp* involved a loan to the debtor, did not involve a Ponzi scheme, and the court held that such repayment of a loan was not a *constructively* fraudulent transfer under the DCL because the trustee failed to allege a lack of fair consideration. *See Sharp*, 403 F.3d at 53. The court held that the transferee's intent and whether it received the transfer in good faith did not undermine that the repayment of an antecedent debt constituted fair consideration under the DCL. *Id* at 54. However, when considering whether the same transfer constituted an intentional fraudulent conveyance under Section 276 of the DCL, the Second Circuit explained that: "Where actual intent to defraud creditors is proven, the conveyance will be set aside regardless of the adequacy of the consideration given." *Id.* at 56 (quoting *United States v. McCombs*, 30 F.3d 310, 328 (2d Cir. 1994)). And the Second Circuit dismissed the intentional fraudulent conveyance claim because the transfer in question did not relate to the debtor's fraud. *See id.* ("The fraud alleged in the complaint relates to the manner in which Sharp obtained new funding from the Noteholders, not Sharp's subsequent payment of part of the proceeds to State Street.").

Despite the inapplicability of this holding, Defendants contend that the satisfaction of a preexisting debt qualifies as fair consideration for a transfer of property and that customer deposits into BLMIS accounts are valid contractual antecedent debts. However, fair consideration is not an element of Section 548(a)(1)(A). If, as here, the debtor made the transfers with the intent to hinder, delay, or defraud creditors, they are avoidable as actual fraudulent conveyances under Section 548(a)(1)(A), even if they constitute valid antecedent debts. And the presumption applies only to the transferor's intent – "there is no requirement under [548(a)(1)(A)] or under DCL § 276 that the Trustee prove that the transferee acted with fraudulent intent as well." *In re Agape World, Inc.*, 467 B.R. at 570. The validity of a debt and whether a transferee received it in good faith are only relevant to the affirmative defenses under Sections 548(c) and 550(b), not avoidance under Section 548(a)(1)(A). Because a transferee has the opportunity to plead and prove these defenses, there is no basis for Defendants' concern that the Trustee can recover principal from an innocent transferee.

Accordingly, courts have held that the Ponzi scheme presumption properly establishes fraudulent intent where, as here, the transfers were made in furtherance of the Ponzi scheme and the Second Circuit has held that *Sharp* is misplaced in the context of a SIPA liquidation.[7]

---

[7] *See Picard v. Gettinger*, 976 F.3d 184, 200 (2d Cir. 2020) (holding that *Sharp* is misplaced in the context of a SIPA liquidation); *see also In re Bayou Grp., LLC*, 439 B.R. 284, 307 (S.D.N.Y. 2010) (holding that the Ponzi scheme presumption was "fully applicable" to establish actual fraudulent intent); *Armstrong v. Collins*, No. 01-cv-2437, 2010 WL 1141158, at *20 (S.D.N.Y. Mar. 24, 2010) ("In considering claims of actual fraud, 'courts have widely found that Ponzi scheme operators necessarily act with actual intent to defraud creditors due to the very nature of their schemes.'"); *Bear, Stearns Secs. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 11 (S.D.N.Y. 2007) ("the Ponzi scheme presumption remains law of this Circuit"); *Drenis v. Haligiannis*, 452 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2006) (complaint adequately alleged actual intent under New York state law equivalent of Section 548(a)(1)(A) where complaint alleged defendants perpetrated a Ponzi scheme); *In re Dreier LLP*, 452 B.R. 391, 424-25 (Bankr. S.D.N.Y. 2011) (noting that courts in this jurisdiction and elsewhere have "uniformly recognized" the Ponzi scheme presumption); *In re Manhattan Inv. Fund Ltd.*, 310 B.R. 500, 506-507 (Bankr. S.D.N.Y. 2002) (citing cases holding that debtor operating a Ponzi scheme was presumed to have made transfers with fraudulent intent). Defendants ask this Court to disregard all of the above decisions.

14

**B.      The Trustee Has Alleged That the Transfers to Prime Fund and Sentry Were Made in Furtherance of the Ponzi Scheme**

As discussed above, the intent to hinder, delay, or defraud creditors is established under the Ponzi scheme presumption where, as here, the Trustee has alleged that (1) BLMIS operated a Ponzi scheme; and (2) BLMIS made the initial transfers to Prime Fund and Sentry in furtherance of its fraudulent scheme. *See Citibank*, 12 F.4th at 181.

First, the Trustee has alleged that BLMIS operated as a Ponzi scheme. *See Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. f/k/a WAM Long/Short Fund, L.P. (In re Bayou Grp., LLC)*, 362 B.R. 624, 633 (Bankr. S.D.N.Y. 2007) (finding "the label 'Ponzi scheme' has been applied to any sort of inherently fraudulent arrangement under which the debtor-transferor must utilize after-acquired investment funds to pay off previous investors in order to forestall disclosure of the fraud[]"). The Trustee has alleged that Madoff operated the IA Business as a Ponzi scheme using money deposited by customers that BLMIS claimed to invest in securities. (*Id.* ¶ 62.) The IA Business had no legitimate business operations and produced no profits or earnings. (*Id.* ¶¶ 62-65.) Indeed, Madoff admitted he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." (*Id.* ¶ 15.) And several other BLMIS employees were convicted of crimes in connection with their participation in the Ponzi scheme. (*Id.* ¶¶ 16-18.) These allegations are sufficient to establish that Madoff operated a Ponzi scheme. *See Gredd*, 397 B.R. at 12 (relying on transferor's criminal guilty plea to establish the existence of a Ponzi scheme); *see also Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87, 104 (Bankr. S.D.N.Y. 2011) ("The breadth and notoriety of the Madoff Ponzi scheme leave no basis for disputing the application of the Ponzi scheme presumption to the facts of this case, particularly in light of Madoff's criminal admission.").

Second, the Trustee alleges that BLMIS made the initial transfers to Prime Fund and

Sentry in furtherance of the Ponzi scheme.  Prime Fund and Sentry were IA Business customers

who invested all or substantially all of their assets with BLMIS's IA Business.  (*Id.* ¶¶ 5, 53.)

All funds received from Prime Fund and Sentry were commingled in a single BLMIS account

maintained at JPMorgan Chase Bank and were used to make distributions to, or payments for,

other customers, to benefit Madoff and his family personally, and to prop up BLMIS's

proprietary trading business.  (*Id.* ¶ 67.)  BLMIS reported falsified trades to Prime Fund and

Sentry using backdated trade data on monthly account statements that typically reflected

impossibly consistent gains on the funds' principal investments.  (*Id.* ¶ 70.)  In reality, the initial

transfers to Prime Fund and Sentry were comprised of stolen customer property.  (*Id.* ¶¶ 85-87.)

These allegations are sufficient to establish that BLMIS made the transfers to Prime Fund and

Sentry in furtherance of the Ponzi scheme.

### C.     The Trustee Has Alleged Fraudulent Intent Through Badges of Fraud

Even if the Ponzi presumption did not apply in this case, the Trustee has alleged

BLMIS's fraudulent intent through "badges of fraud" sufficient to satisfy Rule 9(b).  Badges of

fraud may establish fraudulent intent because such intent "is rarely susceptible to direct proof."

*Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582 (2d Cir. 1983).  In recognizing badges of

fraud, the Second Circuit has acknowledged no one size fits all, and that "[f]raudulent acts are as

varied as the fish in the sea." *Id.* at 1583; *see also Citibank, N.A. v. Bombshell Taxi LLC (In re

Hypnotic Taxi LLC)*, 543 B.R. 365, 374 (Bankr. E.D.N.Y 2016) ("any list of the 'badges of

fraud' would be non-exhaustive").  Courts in the Southern District have identified no fewer than

11 separate badges that are indicative of fraudulent intent.  *See Weisfelner v. Hofmann (In re

Lyondell Chem. Co.)*, 554 B.R. 635, 652-53 (S.D.N.Y. 2016) (citing UFTA § 4(b); 5 Collier on

Bankruptcy ¶ 548.04[1])).

16

Defendants present a cherry-picked list of badges of fraud and then attempt to argue that because *some* are not present in this case, the Trustee has failed to meet his pleading burden. Defendants' assertion is baseless and ignores the Trustee's allegations and law of the case in this SIPA liquidation proceeding. *See Picard v. Lowrey*, 596 B.R. 451, 463 (S.D.N.Y. 2019), *aff'd sub nom. Picard v. Gettinger*, 976 F.3d 184 (2d Cir. 2020), *cert. denied sub nom. Gettinger v. Picard*, 141 S. Ct. 2603 (2021) (law of the case doctrine foreclosed relitigation of issue where the district court "considered and rejected the very arguments that defendants now make").

The Trustee alleges that BLMIS was an operation built on the concealment of facts and false pretenses. BLMIS commingled customer funds and used them not to purchase securities, but to make payments to other customers. (Am. Compl. ¶ 67.) Madoff admitted that the IA business operated as a Ponzi scheme and that none of the securities listed on the BLMIS customer statements were ever purchased. (*Id.* ¶ 86.) The sole proprietor of BLMIS's three-person accounting firm pleaded guilty to filing false audit reports for BLMIS and false tax returns for Madoff and others. (*Id.* ¶¶ 64-65.) Prior to its collapse, BLMIS filed numerous false reports with the SEC. (*Id.* ¶¶ 60-61.)

The Amended Complaint also sufficiently alleges BLMIS's insolvency at all relevant times. The IA Business had no legitimate business operations and produced no profits or earnings. (*Id.* ¶ 62.) The proprietary trading business incurred significant losses and required fraudulent infusions of cash from the IA Business to continue operations. (*Id.* ¶¶ 63, 67.) And at all relevant times, BLMIS's assets were worth less than the value of its liabilities, it could not meet its obligations as they became due, and it had insufficient capital at the time of the initial transfers to Prime Fund and Sentry. (*Id.* ¶ 87.)

Numerous courts in this SIPA liquidation proceeding have already found that these facts

demonstrate BLMIS's actual fraudulent intent under section 548(a)(1)(A).  *See Picard v. JABA*

*Assocs. LP (In re BLMIS)*, 528 F. Supp. 3d 219, 240-41 (S.D.N.Y. 2021); *Picard v. Lisa Beth*

*Nissenbaum Tr. (In re BLMIS)*, 2021 WL 1141638, at *14-15 (S.D.N.Y. Mar. 24, 2021); *Picard*

*v. Nelson (In re BLMIS)*, 610 B.R. 197, 235 (Bankr. S.D.N.Y. 2019).  In these cases, the courts

found the Trustee "presented significant evidence" that BLMIS's IA business did not trade

securities on behalf of its customers and it "did not have significant influxes of cash or income

apart from customer funds." *JABA Assocs. LP*, 528 F. Supp. 3d at 240; *Lisa Beth Nissenbaum*

*Tr.*, 2021 WL 1141638, at *15.  As a result, the courts found the circumstantial evidence

presented satisfied the badges of fraud test.  Because the Trustee has alleged precisely the same

badges of fraud here as in those proceedings, he has pled facts to support a finding of BLMIS's

actual fraudulent intent.

In addition to the aforementioned badges of fraud, the Amended Complaint also alleges

that the initial transfers were made to organizations with insider relationships to BLMIS.  The

Amended Complaint alleges that senior leadership at Tremont and Fairfield Greenwich Group

had an unusually close relationship with Madoff, involving frequent, in-person visits, and even

weighing in on hiring decisions at BLMIS.  (Am. Compl. ¶¶ 91-93; Second Am. Compl. ¶¶ 110-

111, *Picard v. Fairfield Inv. Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM) (Bankr.

S.D.N.Y. Aug. 28, 2020), ECF No. 286 ("Sentry SAC").)  They ignored due diligence red flags

and shielded BLMIS from third-party due diligence.  (Am. Compl. ¶¶ 116-150; Sentry SAC

¶¶ 132-213.)  And, perhaps most importantly, they reaped significant financial benefits from the

fraud and their close relationships to BLMIS.  (Am. Compl. ¶¶ 151-55; Sentry SAC ¶¶ 119-120.)

In totality, it is clear the Amended Complaint alleges badges of fraud sufficient to establish Defendants' fraudulent intent.

For the foregoing reasons, the Trustee adequately alleges BLMIS's actual intent to hinder, delay, or defraud creditors under Bankruptcy Code Sections 544 and 548(a)(1)(A), and DCL Section 276 with respect to the initial transfers to Prime Fund and Sentry and those transfers are therefore avoidable.

## II.    THE TRUSTEE HAS PLED THE AVOIDABILITY OF THE $475 MILLION INITIAL TRANSFER TO PRIME FUND

Citing no relevant authority, Defendants contend that four subsequent transfers Citibank and Citicorp received from Prime Fund totaling approximately $301 million are not recoverable because the underlying initial transfer from BLMIS to Prime Fund did not deplete any assets of the BLMIS estate.  Defendants' contention is based entirely on their assertion that an unrelated party, ABN Amro Bank (Ireland) Ltd. ("Fortis"), later invested in a different fund, Broad Market Fund, which in turn invested those funds in its own separate BLMIS account, and that these disparate transactions should be treated as one, integrated transaction.  (*See* Motion at 9 (citing Compl. ¶ 198, *Picard v. Tremont Grp. Holdings, Inc. (In re BLMIS)*, Adv. Pro. No. 10-5310 (BRL) (Bankr. S.D.N.Y. Dec. 7, 2010), ECF No. 1-1 ("Tremont Compl."); Am. Compl. ¶ 57, *Picard v. ABN Amro Bank (Ireland) Ltd. (In re Madoff)*, Adv. Pro. No. 10-05355 (CGM), (Bankr. S.D.N.Y. June 18, 2012), ECF No. 42 ("Fortis Am. Compl.").)  Defendants are wrong on the facts and the law.  The initial transfers to Prime Fund depleted the fund of customer property and are thus avoidable under Bankruptcy Code Sections 544 and 548(a)(1)(A), and DCL Section 276.

The facts do not support Defendants' assertion that a series of separate transactions formed an integrated "round-trip" transaction, whereby the $301 million received by the

Defendants from Prime Fund ended up back at BLMIS.  The Trustee's claims against Citibank

and Citicorp arise from their receipt of subsequent transfers of stolen customer property from

Prime Fund.  Prime Fund received the stolen customer property from BLMIS by withdrawing

$475 million from its own BLMIS account, No. 1C1260, on March 25, 2008.  (*See* Am. Compl.

¶¶ 176-77, Exs. D, E.)  Had Prime Fund not received the initial transfer of $475 million from

BLMIS, it would have become part of the customer property fund available to distribute pro rata

to all customers.  (*Id.*; ¶ 178, Ex. F.)  The $301 million Prime Fund subsequently transferred to

Citibank and Citicorp never returned to BLMIS or the BLMIS estate and thus there is no factual

basis for Defendants' argument.  (Am. Compl ¶ 178.)

Even if the $301 million Prime Fund subsequently transferred to Citibank and Citicorp

had been reinvested with BLMIS by Broad Market Fund, the initial transfer to Prime Fund would

still be avoidable.  Citibank and Citicorp are not the first to argue that a withdrawal from one

BLMIS account and subsequent deposit into a different BLMIS account should offset fraudulent

transfer liability.  This Court has already rejected a similar argument, explaining that it was

inconsistent with Section 548(c) because it would deprive third parties who later made the

deposits of their rights.  *See Picard v. Lustig (In re BLMIS)*, 568 B.R. 481, 490 (Bankr. S.D.N.Y.

2017) ("The Funds gave the value through the deposits that the *Lustig* Defendants are trying to

conscript for their own benefit, and the Funds are entitled to the credit for those deposits under §

548(c).").  Declining to offset defendants' fictitious profits in one BLMIS account against

alleged net losses through a separate BLMIS account, this Court stated that "[e]ven if one

accepted that the credit arises from the Funds' reinvestment of money traceable back to

[defendants'] withdrawals, the reinvestment is still a separate transaction governed by whatever

account agreements the Funds had with BLMIS."  *Id.* at 487.  Likewise, here, Citibank and

Citicorp seek to collapse unrelated transactions across separate customer accounts in an attempt to co-opt value from one BLMIS customer account to another.

Acceding to Defendants' argument would not just affect this case but would upend the entire net equity scheme, the foundation of this SIPA liquidation proceeding, and the law of this case for over a decade.  In *In re Bernard L. Madoff Investment Securities, LLC*, 654 F.3d 229 (2d Cir. 2011), the Second Circuit upheld the "Net Investment Method" which requires "that each customer's net equity should be calculated by . . . crediting the amount of cash deposited by the customer into his or her BLMIS account, less any amounts withdrawn from it." *Id.* at 233.  That net equity is calculated on an account-by-account basis, *i.e.*, that different customers (here, Prime Fund and Broad Market Fund) hold different accounts with different net equities, is a basic tenet of the Net Investment Method.

The net equity in Broad Market Fund's BLMIS account, No. 1T0027, formed the basis for the Trustee's settlement of Broad Market Fund's customer claim.  *See* Mot. to Approve Compromise, Ex. A at 4, *Picard v. Tremont Grp. Holdings, Inc.*, Adv. Pro. No. 10-05310 (BRL), (Bankr. S.D.N.Y. Jul. 28, 2011), ECF No. 17 (acknowledging $1.647 billion net loss in Broad Market Fund's account No. 1T0027); Bench Mem. and Order at 2, *Picard v. Tremont Grp. Holdings, Inc.*, Adv. Pro. No. 10-05310 (BRL), (Bankr. S.D.N.Y. Sept. 22, 2011), ECF No. 38 (approving Tremont settlement).  To now credit that deposit against Prime Fund's withdrawal from its BLMIS account, No. 1C1260, would require this Court to give a second credit to that deposit (for Citibank's and Citicorp's benefit)—a result that would be inequitable to all BLMIS customers, particularly those who have yet to receive their principal back in this SIPA

liquidation proceeding.[8]  By attempting to combine transfers and collapse unrelated transactions

from different entities and accounts, Citibank and Citicorp seek to impermissibly change the net

equity calculation for their own benefit.  Defendants' suggestion that the Prime Fund initial

transfers are not avoidable because Broad Market Fund later deposited other funds into its

separate BLMIS account is baseless and ignores the harm those transfers caused to the customer

property fund in this SIPA liquidation proceeding.

Citibank's and Citicorp's reliance on *Bear, Stearns Securities Corporation v. Gredd*, 275

B.R. 190 (S.D.N.Y. 2002) ("*Bear, Stearns*") is misplaced.  The *Bear, Stearns* court specifically

"decline[d] to make 'diminution of the estate' an element of § 548(a)(1)(A)." *Id.* at 196.

Instead, that court recognized an affirmative defense where, unlike here, "the transferred assets

were never available to any creditors by operation of federal law . . . ."[9]  *Id.*  The property at

issue in *Bear, Stearns* was never "an interest of the debtor in property" because the property was

never in the debtor's possession and control by virtue of Regulation T.  *Id.* at 198.[10]  Likewise, in

*Buchwald v. Di Lido Beach Resort, Ltd. (In re McCann, Inc.)*, the Court explained that assets

were held in trust, unable to be used by the debtor, and were thus unavailable to creditors.  318

B.R. 276, 283 (Bankr. S.D.N.Y. 2004).  Here, Citibank and Citicorp do not argue the transfers at

---

[8] If Citibank and Citicorp believe they are entitled to a credit because of a deal between Broad Market Fund and Fortis, they must recover those funds directly from the co-parties to their allegedly integrated transaction.  The Trustee is not required to mediate between the parties here.  *Cf. SIPC v. BLMIS (In re BLMIS)*, 522 B.R. 41, 61 (Bankr. S.D.N.Y. 2014) (explaining that individuals whose investment in BLMIS was made indirectly through other accounts could not receive a separate customer claim).

[9] The court in *Bear, Stearns* held that "the transferee will bear both the ultimate burden of proof as well as the initial burden of production on this issue" and set forth three elements the transferee must prove: "that the transfer did not (1) reduce the res that would have been available to any creditor or creditors, (2) 'hinder, delay, or defraud' any creditor or creditors, or (3) have any other adverse impact on any creditor or creditors generally."  275 B.R. 190, 196 (S.D.N.Y. 2002).  Defendants Citibank and Citicorp plainly cannot satisfy this test, nor do they even try.

[10] The debtor had shorted stock, and as a result, Regulation T required that the debtor's property remain frozen at Bear, Stearns until the debtor covered the short sale of the stock.  *Id.* at 197.  The court explained that because the debtor never had control of the property, it was never available to pay creditors.  *Id.* at 197-98.

issue were unavailable to any creditors by operation of federal law, or otherwise. Nor can they,

because there is no question the transfers are customer property originating from BLMIS, over

which BLMIS had control. *In re BLMIS*, 654 F.3d 229, 232, 238-39 (2d Cir. 2011). Defendants'

reliance on cases like *Bear, Stearns* and *McCann*, which were not SIPA liquidation proceedings

and which involved property that did not belong to the debtor, is misplaced.[11] The transfers here

are avoidable—to follow through on Defendants' argument would be inequitable to all parties

involved.[12]

Defendants cite a single case, *Pereira v. WWRD US, LLC (In re Waterford Wedgwood*

*USA, Inc.)*, 500 B.R. 371, 379 (Bankr. S.D.N.Y. 2013), for the proposition that the Prime Fund

withdrawal and subsequent Fortis investment through Broad Market Fund should be considered

one integrated transaction. (Motion at 18.) But the facts of that case are readily distinguishable.

In *Waterford*, the Court found it was "clear that the parties intended an integrated transaction"

where the two sales agreements at issue contained express provisions conditioning each

agreement on the contemporaneous consummation of the other. *Id.* at 380. Additionally, the

Court found the effect of the two sales agreements was essentially one transaction—that the

buyer purchased substantially all of the debtor's assets, and that "the assets under both

agreements were sold for one purchase price delivered in a single wire transfer." *Id.* There are

---

[11] This Court has already found that the property unlawfully transferred is an interest of BLMIS in property. *See SIPC v. BLMIS (In re BLMIS)*, No. 08-01789 (SMB), 2016 WL 1695296, at *5 (Bankr. S.D.N.Y. Apr. 25, 2016).

[12] Defendants selectively quote cases without regard for the subsequent history or facts of those cases. For example, the Fourth Circuit narrowed *Ivey v. First-Citizens Bank and Tr. Co. (In re Whitley)*, holding a debtor's deposits into his own checking account were not "transfers" and thus it need not decide whether they diminished the estate. No. 10-10426, 2014 WL 6910837, at *2 (Bankr. M.D.N.C. Dec. 8, 2014), *aff'd sub nom. Ivey v. First Citizens Bank & Tr. Co.*, 539 B.R. 77 (M.D.N.C. 2015), *aff'd but criticized sub nom. In re Whitley*, 848 F.3d 205, 210 (4th Cir. 2017). *In re Consolidated Pioneer Mortgage Entities*, also cited by Defendants, was dismissed for the same reason. 211 B.R. 704, 714 (S.D. Cal. 1997), *aff'd in part, rev'd in part*, 166 F.3d 342 (9th Cir. 1999).

no analogous facts here or evidence in the pleadings to support that Defendants and unrelated

parties intended to treat the transfers at issue here as one integrated transaction.

Moreover, Defendants invoke the "integrated transaction" doctrine but fail to address the

relevant standard.  (Motion at 18.)  The doctrine is an equitable solution that allows for

recoupment—the offsetting of debts arising out of the same transaction.  *See Univ. Med. Ctr. v.*

*Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1079 (3d Cir. 1992).  The Second Circuit has

adopted a narrow view of the "same transaction," ruling that even "discrete and independent

units" of a singular transaction defeat integration.  *Westinghouse Credit Corp. v. D'Urso*, 278

F.3d 138, 147 (2d. Cir. 2002) (quoting *Malinowski v. N.Y. State Dep't of Labor (In re*

*Malinowski)*, 156 F.3d 131, 135 (2d Cir. 1998)).  Notwithstanding this Circuit's narrow

interpretation, Defendants' argument fails because there is no factual basis for asserting these

disparate transfers to and from independent, unrelated parties form a coordinated transaction.[13]

To argue why their subsequent transfer liability should be offset against Fortis's transfers,

Defendants misconstrue *Picard v. ABN Amro Bank (Ireland) Ltd. (In re Madoff Sec.)*, 505 B.R.

135, 147 (S.D.N.Y. 2013).  There, the District Court was addressing issues concerning a

supposedly integrated swap transaction and merely found that withdrawals and collateral

payments governed by the swap agreement were made in connection with that specific swap

---

[13] Citibank mistakenly relies on *Devon Mobile Communications Liquidating Trust v. Adelphia Communications Corp. (In re Adelphia Communications Corp.)* ("*Adelphia*"), the reverse of this situation: funds were transferred to the debtor and from the debtor, with the debtor's transfer the source of the fraudulent transfer.  No. 02-41729 (REG), 2006 WL 687153, at *15 (Bankr. S.D.N.Y. Mar. 6, 2006).  Because the transfers were made to pay service fees, the court found no assets of the debtor were depleted and the transfer was not a fraudulent conveyance.  *Id.*  Here, Prime Fund deposited funds, withdrew funds, and then Broad Market Fund deposited funds; yet Citibank and Citicorp are somehow seeking credit for the Prime Fund withdrawal in addition to credit already granted to the Broad Market Fund deposit.  Moreover, *Adelphia* concerned a constructively fraudulent transfer, requiring inquiry into whether the transfer was made with fair consideration.  *Id.* at *8.  *Adelphia* relies on constructive fraud cases that are similarly inapposite.  Defendants' reliance on *Intercontinental Metals Corp. v. Erlanger & Co.*, 902 F.2d 1565 (4th Cir. 1990), concerning transfers made in good faith in satisfaction of antecedent debt, is similarly misguided.

agreement.  *Id.* at 147 ("The question here is whether the transfers were in any way related to the

swap. . . .").  Here, Defendants are asking this Court to collapse two unrelated transactions

between entirely different parties in an attempt to prevent the Trustee from avoiding and

recovering the $475 million transfer from BLMIS to Prime Fund.  This argument fails on the law

and on the facts.

III.    **THE TRUSTEE'S AMENDED COMPLAINT PLAUSIBLY ALLEGES THAT
         DEFENDANTS RECEIVED BLMIS CUSTOMER PROPERTY UNDER SECTION
         550(a)**

        Defendants argue the Trustee has failed to allege that certain subsequent transfers

Defendants received contained stolen BLMIS customer property.  (Motion at 19.)  Specifically,

Defendants claim that a single $60 million subsequent transfer CGML received from Sentry and

35 transfers totaling $42,061,207 Citibank and Citicorp received from Prime Fund are

"completely untraceable to BLMIS."[14]  (*Id.*)  On June 13 and 14, 2022, the Court rejected nearly

identical arguments in defendants Multi-Strategy Fund Limited's and Banque SYZ & Co., SA's

motions to dismiss because the Trustee alleged the "vital statistics" of the subsequent transfers

and the defendants' fact-based tracing arguments were premature.  *See* Mem. Decision, 21-23,

*Picard v. Multi-Strategy Fund Ltd.*, Adv. Pro. No. 12-01205 (CGM), ECF No. 122 (Main Case

ECF No. 21729) (Bankr. S.D.N.Y. June 13, 2022) ("*Multi-Strategy*"); Mem. Decision, 24-26,

*Picard v. Banque SYZ & Co., SA*, Adv. Pro. No. 11-02149 (CGM), ECF No. 167 (Main Case

ECF No. 21741) (Bankr. S.D.N.Y. June 14, 2022) ("*Banque SYZ*").  For the same reasons,

Defendants' tracing arguments should be rejected here.

---

[14] Notably, Defendants do not challenge the sufficiency of the Trustee's allegations regarding the remaining
$341,023,383 in subsequent transfers he seeks to recover in this proceeding.  These include a single $40 million
transfer from Sentry to CGML on November 19, 2008, and four transfers totaling $301,023,383 from Prime Fund to
Citibank and Citicorp on March 26, 2008.

**A.    The Trustee Has Plausibly Alleged that All of the Subsequent Transfers Defendants Received Contained Stolen BLMIS Customer Property**

The Amended Complaint states claims under Section 550(a)(2) by plausibly alleging that Defendants received subsequent transfers of stolen BLMIS customer property.  To plead a subsequent transfer claim under the Rule 8(a) notice pleading standard, the Trustee must allege facts that support an inference "that the funds at issue originated with the debtor."  *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149-50 (Bankr. S.D.N.Y. 2014); *see Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 454 B.R. 317, 340 (Bankr. S.D.N.Y. 2011) (under Rule 8(a), the "Trustee must plead a statement of facts that 'adequately apprises' the [Defendants] of the Subsequent Transfers . . . he seeks to recover").  No tracing analysis is required, as the pleading burden "is not so onerous as to require 'dollar-for-dollar accounting' of the 'exact funds' at issue."  *See Merkin*, 515 B.R. at 150 (quoting *Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*, Adv. Pro. Nos. 10-04398 (BRL), 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012) ("*Ellerin*")).  Rather, "the Trustee need only allege sufficient facts to show the relevant pathways through which the funds were transferred from BLMIS to [the subsequent transferee]."  *Ellerin*, 2012 WL 892514, at *3; *accord 45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019) (same).  In addition, the Trustee must "set forth the necessary vital statistics—the who, when, and how much of the purported transfers to establish an entity as a subsequent transferee of the funds."  *Cohmad*, 454 B.R. at 340 (cleaned up).

The Amended Complaint meets those requirements.  The Trustee alleges that CGML received two transfers from Sentry, each identified by date and amount in Exhibits A-C, and that Sentry invested substantially all of its assets with BLMIS.  (Am. Compl. ¶¶ 5, 172; Exs. A-C.)  Likewise, the Trustee alleges that Citibank and Citicorp received 38 transfers from Prime Fund,

each identified by date and amount in Exhibits D-F, and that Prime Fund invested substantially

all of its assets with BLMIS.  (*Id*. ¶¶ 5, 181, Exs. D-F; *see also* Tremont Compl., ¶¶ 8, 38.)  The

Trustee therefore plausibly alleges that Defendants' subsequent transfers originated with BLMIS

by (i) providing the necessary "vital statistics" of the transfers Defendants received and (ii)

outlining the relevant pathways through which customer property was transferred from BLMIS

to Prime Fund and Sentry and subsequently to Defendants.  Nothing more is required.  *See, e.g.*,

*Picard v. Mayer (In re BLMIS)*, Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435, at \*5

(Bankr. S.D.N.Y. Oct. 27, 2021) (rejecting argument that "claim has not been plead with enough

specificity as to how and what Subsequent Transfers [defendant] received" and holding

complaint "contains sufficient information regarding which transfers the Trustee is seeking to

recover.").  As this Court held in *Multi-Strategy* and *Banque SYZ*, the Trustee's transfer

"exhibit[s] provide[] [Defendants] with the 'who, when, and how much' of each transfer."

*Multi-Strategy*, at 22; *Banque SYZ*, at 25.

**B.      Defendants Misstate the Trustee's Pleading Burden**

Unable to argue that the Trustee fails to meet the relevant pleading burden, Defendants

argue for a new one, asserting that the Trustee must tie the subsequent transfers Defendants

received to specific initial transfers from BLMIS.  (*See* Motion at 19.)  However, this Court

rejected this argument in *Merkin* and refused to dismiss subsequent transfer claims even though

the complaint "[did] not connect each of the subsequent transfers with an initial, voidable

transfer emanating from BLMIS."  515 B.R. at 150; *see also 45 John Lofts*, 599 B.R. at 747

(finding no "requirement to trace individual dollar amounts from the transferor to the transferees

to survive a motion to dismiss").  And to the extent Defendants are arguing that the Trustee must

allege more than the "who, when, and how much" of the purported transfer and instead must

detail what portion of the subsequent transfer comprises customer property, this is also wrong.[15]

*See Ellerin*, 2012 WL 892514, at *3 (holding that even at summary judgment, "it is not

necessary for the Trustee to specify what portion of the Subsequent Transfers to [defendant] was

derived from BLMIS"); *see also Kelley v. Westford Special Situations Master Fund*, No. 19-cv-

1073 (ECT/KMM), 2020 WL 3077151, at *4 (D. Minn. Jun. 10, 2020) (a trustee is not required

to establish that the transfers "originated solely" with the debtor or even to account for "the exact

funds at issue" on summary judgment).

Defendants' reliance on *Picard v. Shapiro (In re BLMIS)* for this argument is unavailing

because *Shapiro* did not change the Trustee's pleading burden.  542 B.R. 100, 119 (Bankr.

S.D.N.Y. 2015) (*cited in* Motion at 19).  In *Shapiro*, the Trustee alleged that the initial

transferees received approximately $54 million in fraudulent transfers from BLMIS, and "upon

information and belief," those defendants subsequently transferred this same amount to other

defendants. *Id.*  However, the complaint did not detail *any* of the necessary vital statistics of the

subsequent transfers: there were no allegations regarding the subsequent transferors, the

subsequent transferees, or the dates or amounts of the subsequent transfers.  *Id.*  Thus, the

Bankruptcy Court granted defendants' motion to dismiss the subsequent transfer claim.  *Id.*

Here, where the Trustee has alleged the vital statistics of the transfers Defendants received,

---

[15] Defendants claim without basis that the Trustee has had access to discovery from Sentry for over a decade
(Motion at 23), but the Trustee does not have all of Sentry's books and records, and discovery in the Trustee's
actions against the Fairfield Greenwich Group management defendants is ongoing.  *See, e.g., Picard v. Fairfield Inv.
Fund (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM), ECF No. 353 (setting November 2022 discovery deadline for
fact discovery and August 2023 discovery deadline for expert discovery).  With respect to Prime Fund, Defendants
admit that the Trustee's access to documents is even less extensive.  (Motion at 24.)  The Prime Fund bank records
produced to the Trustee for the time period at issue are substantially incomplete.  Moreover, even if the Trustee had
obtained all of Sentry's and Prime Fund's records, it would not transform his pleading burden.  *See Silverman v.
K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007) (finding "if dollar-for-
dollar accounting is not required at the proof stage, then surely it is not required at the pleading stage either.").

including the transferor, the transferee, and the date and amount of each transfer, *Shapiro*

supports denying the motion to dismiss.[16]

### C.    Defendants' Tracing Arguments Fail at the Pleading Stage

Defendants assert that certain subsequent transfers are "completely untraceable to

BLMIS." (Motion at 19-23.) As this Court recognized in *Multi-Strategy*, these fact-based

tracing arguments are inappropriate on a motion to dismiss. *See Multi-Strategy*, at 22 (rejecting

Defendant's "attempt[] to make a very intricate factual argument about how millions of dollars

might have come from non-BLMIS property" because the "calculation of Fairfield Sentry's

customer property and what funds it used to make redemptions payments are issues of fact better

resolved at a later stage of litigation.").

Despite arguing that certain subsequent transfers are "completely untraceable to BLMIS,"

Defendants do not disclose the tracing methodology or methodologies they rely upon to reach

this conclusion.[17] There is good reason for that: Because it is for this Court to decide—after fact

---

[16] The only other case Defendants cite that dismissed transfer claims at the pleading stage is *Angell v. Ber Care, Inc. (In re Careamerica, Inc.)*, 409 B.R. 737 (Bankr. E.D.N.C. 2009). But like *Shapiro*, Defendants' reliance on *Careamerica* is misplaced. The *Careamerica* court dismissed Section 547 preference claims without prejudice because the plaintiff failed to allege "what entity initiated each transfer." *Id.* at 750-51. *Careamerica* is also distinguishable because it applied a heightened pleading standard that has been rejected by this Court, among other courts. *See id.* at 749 ("the majority of courts which have addressed the pleading requirements for § 547 claims have required something less than the standard implemented in" *Careamerica*). And other courts continue to criticize *Careamerica* for misapplying Rule 8(a). *See Zucker v. Oconee Reg'l Healthcare Found., Inc. (In re Oconee Reg'l Health Sys., Inc.)*, 621 B.R. 64, 71 n.6 (Bankr. M.D. Ga. 2020) (joining other courts in rejecting *Careamerica's* heightened pleading standard "as inconsistent with the liberal fair notice pleading standard of Federal Rule of Bankruptcy Procedure 7008(a)(2)").

[17] The declaration of Defendants' counsel, Carmine D. Boccuzzi, Jr., Esq., includes several calculations of various transfers from BLMIS to Sentry, and from Sentry to its investors and other funds managed by Fairfield Greenwich Group. (*See* Boccuzzi Decl., at 2-6, ECF No. 223.) These calculations add and subtract transfers from over 90 proceedings, amounts that have in some cases changed since the filing of the Trustee's complaints and with no explanation for the methodology behind the calculations. Defendants' undefined tracing methodology, which it uses to contest the subsequent transfers in this proceeding, serves as nothing more than "an attempt to interject improper expert testimony into a Rule 12(b)(6) context." *See Fowler v. Caliber Home Loans, Inc.*, 277 F. Supp. 3d 1324, 1331 (S.D. Fla 2016) (declining to consider expert testimony in a motion to dismiss); *Sass v. Barclays Bank PLC (In re Am. Home Mortg. Holdings, Inc.)*, 501 B.R. 44, 64 (Bankr. D. Del. 2013) (matter subject to fact and expert evidence "is inappropriate to decide on a motion to dismiss"); *see also Solution Tr. V. 2100 Grand LLC (In re AWTR Liquidaiton Inc.)*, 548 B.R. 300, 334 (Bankr. C.D. Cal. 2016) (assessment of valuation that "almost certainly will require expert testimony" is inappropriate for a motion to dismiss).

and expert discovery—the appropriate tracing methodology under the circumstances. *Picard v.*
*Merkin (In re BLMIS)*, 581 B.R. 370, 386 (Bankr. S.D.N.Y. 2017) ("*Merkin II*") ("[T]he Court's
selection of an appropriate methodology is committed to the Court's discretion."); *United States*
*v. Henshaw*, 388 F.3d 738, 741 (10th Cir. 2004) (finding "courts exercise case-specific judgment
to select the method best suited to achieve a fair and equitable result on the facts before them").[18]

Defendants assert that the Trustee has not plausibly alleged that the $60 million
subsequent transfer CGML received from Sentry contained customer property because the
Trustee did not allege that "Sentry kept the money it received from BLMIS in order to pay
CGML three months later." (Motion at 19-20.)  This argument fails because it relies on the
factual assumption that every subsequent transfer Sentry made prior to the $60 million transfer to
CGML was sourced solely by customer property.  In support, Defendants rely entirely on
exhibits the Trustee submitted in other adversary proceedings.  (Motion at 21, Bocuzzi Decl. ¶¶
7-9.)  Those exhibits, however, do not establish this fact.  Indeed, this Court has already rejected
a similar argument in *Multi-Strategy*.  *See Multi-Strategy*, at 23 (rejecting defendants'
mathematical calculations based on the Trustee's transfer exhibits because it was "not convinced
that this is the only method of calculating customer property").

Moreover, the Court cannot consider exhibits filed in other adversary proceedings on a
Rule 12(b)(6) motion where, as here, the Amended Complaint neither relies on them, nor
incorporates them by reference.  *See Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir.
2011) (the court is "limited to the facts as presented within the four corners of the complaint" on

---

[18] This Court has recognized different tracing methodologies offered by the Trustee is in this liquidation to assist the
trier of fact, including: (1) Last In, First Out (LIFO), (2) First In, First Out (FIFO), (3) Lowest Intermediate Balance
Rule (LIBR), and (4) Restated Tracing Rules (Restated LIBR), and (5) Proportionality.  *Merkin II*, 581 B.R. at 385.
These methodologies reflect legal rules or fictions designed to assist a court in determining whether a transfer
contains funds originating with the debtor.  *Id.* at 386.

a motion to dismiss, unless the complaint relies upon or incorporates an external document)

(citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)).  And this Court has

already so held in multiple decisions in this SIPA liquidation proceeding.[19]  Nor can this Court

take judicial notice of the facts contained within those exhibits to establish their truth on this

motion.  *See Kramer v. Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (courts may take judicial

notice of filings in another case, "not for the truth of the matters asserted in the other litigation,

but rather to establish the fact of such litigation and related filings").

CGML also argues that the Trustee's claim to recover the $60 million subsequent transfer

it received from Sentry is not plausible because the Trustee is seeking more money from all

subsequent transferees of Sentry than the fund withdrew from BLMIS.  (*See* Motion at 21-22.)

To the extent CGML is worried the Trustee may recover more than he is entitled, this Court

noted such a fear is unfounded.  *Multi-Strategy*, at 22.  There is no dispute that the Trustee is

limited to "a single satisfaction" under section 550(a).  *See id.*, citing 11.U.S.C. § 550(d).

However, the Trustee "can recover from any combination of [transferees]" up to the amount

avoided.  *Helms v. Metro. Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 656 (Bankr. N.D. Ill.

2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021)  And under 11 U.S.C. § 550(a), "a trustee may

recover [an avoided] transfer from a subsequent transferee of those funds, without the necessity

for allocation among all the subsequent transferees."  *CNB Int'l Inc. v. Kelleher (In re CNB Int'l,*

*Inc.)*, 393 B.R. 306, 333 (Bankr. W.D.N.Y. 2008).  Thus, until the Trustee recovers the full

---

[19] *See* Mem. Decision at 13, *Picard v. Banca Carige S.P.A. (In re. BLMIS)*, Adv. Pro. No. 11-02570 (CGM) (Bankr. S.D.N.Y. Jun. 30, 2022), ECF No. 123 (declining plaintiff's request to consider other complaints filed by the Trustee in this SIPA Proceeding because they were not adopted by reference in the Trustee's complaint and "as such, are not within the Court's power to consider on a Rule 12(b)(6) motion"); Mem. Decision at 22, *Picard v. Banque Lombard Odier & Cie SA (In re. BLMIS)*, Adv. Pro. No. 12-01693 (CGM) (Bankr. S.D.N.Y. Jun. 30, 2022), ECF No. 115 (same); Mem. Decision at 15, *Picard v. Bordier & Cie (In re. BLMIS)*, Adv. Pro. No. 12-01695 (CGM) (Bankr. S.D.N.Y. Jun. 30, 2022), ECF No. 105 (same); Mem. Decision at 7, *Picard v. Lloyds TSB Bank PLC (In re. BLMIS)*, Adv. Pro. No. 12-01207 (CGM) (Bankr. S.D.N.Y), ECF No. 105 (same).

amount of the approximately $3 billion in fraudulent transfers by Sentry, the Trustee may

simultaneously seek recovery from CGML in this action and from defendants in other actions,

even in an aggregate amount that exceeds the initial transfers.  And the "[c]alculation of whether

the Trustee is fully satisfied is a factual finding to be made by this Court at a later stage of the

litigation." *Multi-Strategy*, at 22-23.

Unlike the transfer from Sentry to CGML, Citibank does not argue that Prime Fund

exhausted customer property on hand before paying Citibank and Citicorp the monthly fee

payments totaling $42,061,207.  Nor does it argue that the Trustee is seeking more money than

Prime Fund withdrew from BLMIS.  Instead, it focuses on the amount of time that elapsed

between Prime Fund's receipt of initial transfers from BLMIS and certain subsequent transfers

Prime Fund made to Citibank and Citicorp, arguing that the payments to Citibank are not

recoverable because the initial and subsequent transfers do not "line up."  (Motion at 22-23).

However, Citibank conveniently ignores that many of the alleged monthly payments from Prime

Fund to Citibank and Citicorp were made shortly after Prime Fund received initial transfers, and

that each of the payments were preceded by initial transfers sufficient to cover those payments.

(*See* Am. Compl. Exs. D-F.)  Moreover, that some of the subsequent transfers may prove more

difficult to trace because there are larger gaps between the subsequent transfers and the closest

initial transfers is not a ground for dismissal at the pleading stage.  *See Merkin*, 515 B.R. at 152-

53 (noting that it is "premature to cut off the Trustee's opportunity to satisfy his burden of proof

on a motion to dismiss" where the Trustee's allegations establish that at least "some of the

subsequent transfers alleged . . . may be recoverable"); *Gowan v. Amaranth Advisors, LLC (In re

Dreier LLP)*, Adv. Pro. Nos. 10-03493 (SMB), 10-05447 (SMB), 2014 WL 47774, at *15

(Bankr. S.D.N.Y. Jan. 3. 2014) ("*In re Dreier II*") ("[T]he [subsequent transferees'] speculation

32

that tracing is 'not likely' to reveal a subsequent transfer . . . hardly justifies granting [their cross-motion for summary judgment].").

Defendants' tracing arguments are not only wrong, but also premature.  Courts in this district and in this SIPA liquidation proceeding have denied summary judgment where only an undetermined or small portion of the subsequent transfer was conceivably traceable to the estate. *See Ellerin*, 2012 WL 892514, at *3 (holding that even at summary judgment, "it is not necessary for the Trustee to specify what portion of the Subsequent Transfers to [the subsequent transferees] was derived from BLMIS"); *In re Dreier II*, 2014 WL 47774, at *14-16 (allowing the trustee to proceed to trial where at most 3.5% of the transfers at issue could be traced to the debtor's Ponzi scheme).  And where, as here, the Trustee "has not been afforded the opportunity to conduct discovery," courts only dismiss such claims "in the rarest of cases."[20]  *Ellerin*, 2012 WL 892514, at *2.

This is not a case where the Court should prematurely cut off the Trustee's ability to trace the subsequent transfers at the pleading stage.  The circumstances of the transfers, including the purpose of the transfers and the parties' intent, are relevant to equitable principles applied to tracing.  *See Southmark Corp v. Schulte Roth & Zabel (In re Southmark Corp.)*, 239 F.3d 365, 2000 WL 1741550, at *5 (5th Cir. Dec. 11, 2000) (the court's "task here is to look beyond the particular transfers in question to the entire circumstances of the transactions") (cleaned up).  Because money is fungible, "[t]he goal of tracing is not to trace anything at all in many cases, but rather to serve as an equitable substitute for the impossibility of specific identification."

---

[20] "[I]n a case such as this one, where the trustee's lack of personal knowledge is compounded with complicated issues and transactions that extend over lengthy periods of times, the trustee's handicap increases, and even greater latitude should be afforded."  *Cohmad*, 454 B.R. at 329 (cleaned up).  And even after fact and expert discovery, there may still be fact disputes that require a trial.  *See Kelley*, 2020 WL 3077151, at *5 (denying summary judgment because of a fact dispute after the trustee introduced an expert report and associated documents from which a jury could infer the defendants received subsequent transfers of property from the Petters Ponzi scheme).

*Henshaw*, 388 F.3d at 741 (cleaned up).  And "[i]t is undeniable that equity will follow a fund

through any number of permutations, and preserve it for the owner as long as it can be

identified."  *IBT Int'l, Inc. v. Northern (In re Int'l Admin Servs., Inc.)*, 408 F.3d 689, 709 (11th

Cir. 2005) (quoting *Dery v. United States (In re Bridge)*, 90 B.R. 839, 848 (E.D. Mich. 1988)).

## <u>CONCLUSION</u>

For the foregoing reasons, the Trustee respectfully requests that the Court deny

Defendants' Motion in its entirety.


Dated:  July 1, 2022                                    /s/ *David J. Sheehan*
         New York, New York                   Baker & Hostetler LLP

                                              45 Rockefeller Plaza
                                              New York, New York 10111
                                              Telephone: 212.589.4200
                                              Facsimile: 212.589.4201
                                              David J. Sheehan
                                              Email:  dsheehan@bakerlaw.com
                                              Seanna R. Brown
                                              Email:  sbrown@bakerlaw.com
                                              Matthew D. Feil
                                              Email:  mfeil@bakerlaw.com
                                              Amy Vanderwal
                                              Email:  avanderwal@bakerlaw.com
                                              Frank M. Oliva
                                              Email:  foliva@bakerlaw.com
                                              Elizabeth G. McCurrach
                                              Email: emccurrach@bakerlaw.com
                                              Chardaie C. Charlemagne
                                              Email:  ccharlemagne@bakerlaw.com
                                              Deirdre Farrell
                                              Email:  dfarrell@bakerlaw.com

                                              *Attorneys for Irving H. Picard, Trustee*
                                              *for the substantively consolidated SIPA*
                                              *Liquidation of Bernard L. Madoff*
                                              *Investment Securities LLC and the Chapter 7*
                                              *estate of Bernard L. Madoff*