ROPES & GRAY LLP
Martin J. Crisp
Andrew G. Devore
1211 Avenue of the Americas
New York, New York 10036
(212) 596-9193

*Counsel for Defendant Schroder & Co.*
*Bank AG*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro.  No.  08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | Adv. Pro. No. 12-01210 (CGM) |
| Plaintiff, | |
| v. | |
| SCHRODER & CO. BANK AG, | |
| Defendant. | |

**SCHRODER & CO. BANK AG'S REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

I.    THE COMPLAINT FAILS TO ALLEGE SUFFICIENT FACTS TO SUPPORT PERSONAL JURISDICTION ........................................................................................... 1

   A.    The Trustee Fails to Establish that Schroder AG Purposefully Availed Itself of the Laws of New York ..................................................................................... 1

      1.    Schroder AG Did Not Have Sufficient Contacts with BLMIS to Support Personal Jurisdiction ........................................................................................... 2

      2.    Schroder AG's Incidental Use of a U.S. Bank Account Does Not Establish Personal Jurisdiction ..................................................................................... 3

      3.    Schroder AG's Subscription Agreements Do Not Establish or Support Specific Jurisdiction ................................................................................... 5

   B.    Personal Jurisdiction Over Schroder AG Would Not Comply With Constitutional Due Process ........................................................................................ 6

   C.    The Trustee is Not Entitled to Jurisdictional Discovery ........................................... 6

II.    THE TRUSTEE HAS NOT PLAUSIBLY ALLEGED THAT SCHRODER AG RECEIVED CUSTOMER PROPERTY ........................................................................... 7

III.    SECTION 546(e) BARS THE RECOVERY OF THE ALLEGED SUBSEQUENT TRANSFERS WHERE THE FAIRFIELD INITIAL TRANSFERS WERE MADE OUTSIDE THE TWO-YEAR LOOKBACK PERIOD .................................................. 11

   A.    The Trustee Misconstrues *Cohmad* ..................................................................... 12

      1.    *Cohmad* is Clear That it is the Actual Knowledge of the Subsequent Transferee, Not the Initial Transferee, that Matters for the Equitable Exception to the Safe Harbor ........................................................................................................ 12

      2.    *Cohmad* Does Not Preclude Application of the Safe Harbor in Section 550 Recovery Actions ........................................................................................ 14

      3.    *Cohmad* is Also Clear that the Separate Securities Contracts Among Fairfield Sentry, Fairfield Sigma, and Schroder AG Satisfy the Safe Harbor Where Schroder AG Had No Actual Knowledge of Fraud ............................................... 15

   B.    The Complaint Does Not Allege Actual Knowledge of Fairfield Sentry ................. 17

      1.    The Trustee's Attempt to Incorporate the Fairfield Amended Complaint is Improper ............................................................................................... 17

      2.    Judicial Notice Does Not Remedy the Deficiencies of the Complaint ................. 18

IV.    THE COMPLAINT ESTABLISHES SCHRODER AG'S SECTION 550(b) GOOD FAITH FOR VALUE DEFENSE ................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*45 John Lofts LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
  599 B.R. 730 (Bankr. S.D.N.Y. 2019) ........................................................................8

*Al Rushaid v. Pictet & Cie,*
  28 N.Y.3d 316 (N.Y. 2016) ........................................................................................4

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................................7, 8

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................................................7, 8

*Berdeaux v. OneCoin Ltd.,*
  561 F. Supp. 3d 379 (S.D.N.Y. 2021) ....................................................................3, 4

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462 (1985) ....................................................................................................5

*Chase Manhattan Bank v. Banque Generale du Commerce,*
  1997 WL 266968 (S.D.N.Y. May 20, 1997) ..............................................................5

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.,*
  397 F. Supp. 3d 323 (S.D.N.Y. 2019) ........................................................................4

*Fairfield Sentry Ltd. v. Amsterdam (In re Fairfield Sentry Ltd.),*
  2018 WL 3756343 (Bankr. S.D.N.Y., Aug. 6, 2018) .................................................5

*Hau Yin To v. HSBC Holdings PLC,*
  2017 WL 816136 (S.D.N.Y. 2017), *aff'd*, 700 F. App'x 66, (2d Cir. 2017) ..............4

*Helms v. Metro. Life Ins. Co. (In re O'Malley),*
  601 B.R. 629 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021) .............9

*Jazini v. Nissan Motor Co.,*
  148 F.3d 181 (2d Cir. 1998) ........................................................................................6

*Kiobel v. Royal Dutch Petroleum Co.,*
  No. 02 Civ. 7618 KMWHBP, 2009 WL 3817590 (S.D.N.Y. Nov. 16, 2009) ..........6

*Lowden v. William M. Mercer, Inc.,*
  903 F. Supp. 212 (D. Mass. 1995) ............................................................................17

*Motors Liquidation Co. Avoidance Action Tr. v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.),*
565 B.R. 275 (Bankr. S.D.N.Y. 2017)........................................................................5

*Picard v. ABN AMRO Bank N.A. (In re Bernard L. Madoff),*
2020 WL 1584491 (Bankr. S.D.N.Y., Mar. 31, 2020) ...........................................19

*Picard v. Banque SYZ & Co. (In re Bernard L. Madoff),*
Adv. Pro. No. 11-02149 (Bankr. S.D.N.Y., June 14, 2022) ...............................2, 19

*Picard v. BNP Paribas S.A. (In re Bernard L. Madoff Inv. Secs. LLC),*
594 B.R. 167 (Bankr. S.D.N.Y. 2018)....................................................................13

*Picard v. Bureau of Labor Ins. (In re Bernard L. Madoff),*
480 B.R. 501 (Bankr. S.D.N.Y. 2012)......................................................................3

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Secs. LLC),*
12 F.4th 171 (2d Cir. 2021) ....................................................................................20

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC),*
454 B.R. 317 (Bankr. S.D.N.Y. 2011).............................................................. passim

*Picard v. Fairfield Inv. Fund ((In re Bernard L. Madoff Inv. Secs. LLC),*
2021 WL 3477479 (Bankr. S.D.N.Y., Aug. 6, 2021) ...................................... passim

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC),*
515 B.R. 117 (Bankr. S.D.N.Y. 2014)......................................................................8

*Picard v. Multi-Strategy Fund Ltd. (In re Bernard L Madoff),*
Adv. Pro. No. 12-01205 (Bankr. S.D.N.Y., June 13, 2022) ...............................2, 19

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC),*
542 B.R. 100 (Bankr. S.D.N.Y. 2015)..................................................................7, 19

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
516 B.R. 18 (S.D.N.Y. 2014)..................................................................................20

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib. Inc.),*
379 B.R. 5 (Bankr. E.D.N.Y. 2007)..........................................................................8

*SIPC v. Bernard L. Madoff Inv. Sec. LLC,*
No. 12 MC 115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) .......... passim

*SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.),*
620 B.R. 505 (Bankr. S.D.N.Y. 2020).................................................................13, 14

*Toberman v. Copas,*
800 F. Supp. 1239 (M.D. Pa. 1992).......................................................................17

*Universal Trading & Inv. Co. v. Tymoshenko*,
    2012 WL 6186471 (S.D.N.Y. Dec. 12, 2012) ..........................................................................4

*Vasquez v. H.K. & Shanghai Banking Corp.*,
    477 F. Supp. 3d 241 (S.D.N.Y. 2020)......................................................................................4

*Walden v. Fiore*,
    571 U.S. 277 (2014).............................................................................................................2, 3, 6

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)..................................................................................................................6

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998)...................................................................................................18

**Statutes**

N.Y. C.P.L.R. § 302................................................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 8(a) ..........................................................................................................................17, 18

Fed. R. Civ. P. 10(c) ..............................................................................................................................17

Fed. R. Civ. P. 12(b)(2)............................................................................................................................6

Fed. R. Civ. P. 15 ...................................................................................................................................18

## ARGUMENT

The Trustee's Memorandum of Law (the "Opposition Brief" or "Opp. Br.") in Opposition to Defendant Schroder & Co. Bank AG's ("Schroder AG") Motion to Dismiss fails to rebut any of the bases for dismissal set forth in Schroder AG's motion to dismiss. Accordingly, for the reasons stated in Schroder AG's motion to dismiss and as set forth below, this Court should grant Schroder AG's motion to dismiss.[1]

## I.    THE COMPLAINT FAILS TO ALLEGE SUFFICIENT FACTS TO SUPPORT PERSONAL JURISDICTION

### A.    The Trustee Fails to Establish that Schroder AG Purposefully Availed Itself of the Laws of New York

Unlike in certain other actions filed by the Trustee against foreign financial institutions that invested in the Fairfield Funds, the Trustee's personal jurisdiction allegations against Schroder AG are both boilerplate and limited. The Trustee does not allege that Schroder AG had direct contact with BLMIS, or any facts specific to Schroder AG or its investments in the Fairfield Funds, instead relying only on generic allegations that Schroder AG intended to avail itself of New York's "laws and protections" when it invested in the Fairfield Funds on behalf of its customers and, on "information and belief," at times used New York bank accounts in connection therewith. Compl. ¶¶ 6-8. Such unexceptional allegations do not satisfy the Trustee's pleading burden to establish personal jurisdiction in the United States over a Swiss bank based on transactions with BVI investment funds.

---

[1]    Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Trustee's Complaint or Schroder AG's Opening Brief in Support of its Motion to Dismiss (the "Opening Brief" or "Br.").

1.    ***Schroder AG Did Not Have Sufficient Contacts with BLMIS to Support Personal Jurisdiction***

Schroder AG bought shares in Fairfield Sentry, and Fairfield Sentry—not Schroder AG—invested in New York-based BLMIS.  Unlike in this Court's recent decisions in *Banque SYZ* and *Multi-Strategy Fund*, the Trustee does not allege that Schroder AG held in-person meetings with FGG, solicited its own clients to invest in Madoff feeder funds, was a "Madoff addict," or filed a customer claim in this SIPA proceeding.  *See Picard v. Banque SYZ & Co.* (*In re: Bernard L. Madoff*), Adv. Pro. No. 11-02149, Memorandum Decision Denying Defendant's Motion to Dismiss, at 6-7 (Bankr. S.D.N.Y., June 14, 2022); *Picard v. Multi-Strategy Fund Ltd.* (*In re: Bernard L Madoff*), Adv. Pro. No. 12-01205, Memorandum Decision Denying Defendant's Motion to Dismiss, at 6-8 (Bankr. S.D.N.Y., June 13, 2022).  Instead, the Trustee relies solely on Schroder AG's investment in Fairfield Sentry and mischaracterizes that investment as equivalent to investing with BLMIS in New York.  Opp. Br. 12-14.  But the Trustee cites no precedent to conflate Schroder AG's investment in Fairfield Sentry with a non-existent direct investment in BLMIS.

The Supreme Court's post-*BLI* decision in *Walden v. Fiore*, 571 U.S. 277 (2014), makes clear that specific jurisdiction must be based on the defendant's own contacts with the forum, *not* on the defendant's contacts with persons who reside in the forum, and *not* on the plaintiff's or a third party's contacts with the forum.  *Id*. at 284-85.  As such, Fairfield Sentry's contacts with BLMIS cannot establish that Schroder AG "accepted the rights, benefits, and privileges of conducting business and/or transactions in the United States and New York," Compl. ¶ 7, and settled Supreme Court precedent has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between . . . third parties and the forum." *Walden*, 571 U.S. at 284.

2

The Trustee urges this Court to follow *Picard v. Bureau of Labor Insurance* (*In re Bernard L. Madoff*), 480 B.R. 501, 516-18 (Bankr. S.D.N.Y. 2012) ("*BLI*"), a decision the Supreme Court abrogated in *Walden*, and which focused only on whether the funds at issue were indirectly invested in BLMIS "as a result of happenstance."  *See BLI*, 408 B.R. at 517.  It was in that context that Judge Lifland held that the defendants were subject to personal jurisdiction.  But *BLI* did not address the argument, raised here by Schroder AG, that the Fairfield Funds' intent to invest funds with BLMIS cannot be imputed to a third party such as Schroder AG, a result foreclosed by the Supreme Court's intervening *Walden* decision,.  *See Walden*, 571 U.S. at 284 ("[O]ur 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.").

2.      ***Schroder AG's Incidental Use of a U.S. Bank Account Does Not Establish Personal Jurisdiction***

The Trustee argues that Schroder AG's use of a U.S. correspondent bank account to facilitate the subscription agreements with the Fairfield Funds is sufficient to establish personal jurisdiction.  This argument, however, relies on factually distinguishable cases (*Licci*, *Al Rushaid*, and *Arcapita*) involving more extensive use and contacts than here, where Schroder AG's use of New York bank accounts was incidental to foreign investment contracts that were negotiated and performed entirely abroad.

The *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379 (S.D.N.Y. 2021), decision is instructive.  In *Berdeaux*, Judge Caproni held that the fact that a transfer at issue passed through a New York correspondent account did not show a non-bank defendant's "purposeful" use of the account within the meaning of *Licci*, "even if [he] not only knew that a New York correspondent account was being used but actually coordinated [its] use," where he did not maintain the account and the money only passed through it en route to a foreign bank account.  *Berdeaux*, 561 F. Supp.

3

3d at 403 (citations and footnote omitted); *see also Universal Trading & Inv. Co. v. Tymoshenko*, 2012 WL 6186471, at *3 (S.D.N.Y. Dec. 12, 2012) (finding no personal jurisdiction where "a foreign individual holding foreign accounts . . . moved money through New York via a correspondent account.").[2]

As to deliberateness, courts have considered various factors, including "the necessity of the correspondent account to the alleged scheme." *Vasquez v. H.K. & Shanghai Banking Corp.*, 477 F. Supp. 3d 241, 258 (S.D.N.Y. 2020). Thus, where use of a New York correspondent bank was an "essential step" in and "integral" to the money laundering scheme in *Al Rushaid*, the court found the defendant bank's use of the account to be "volitional." *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 327, 328 (N.Y. 2016). In cases where the correspondent account "does not appear to have been necessary to the Ponzi scheme's success," courts have not found use of the account to be purposeful. *Vasquez*, 477 F. Supp. 3d at 262; *see, e.g., Hau Yin To v. HSBC Holdings PLC*, 2017 WL 816136, at *7 n.6 (S.D.N.Y. 2017) ("The wiring of funds through New York . . . was passive, rather than 'integral' to the alleged Ponzi scheme."), *aff'd*, 700 F. App'x 66, 67–68 (2d Cir. 2017). Here, as in *Vasquez* and *Hau Yin To*, the fraudulent transfer claims and subsequent transferee claims do not turn on whether the transfers were wired through a New York correspondent bank. The use of correspondent accounts here was not integral to the claims to qualify as "purposeful" and does not support exercise of specific jurisdiction over Schroder AG.

---

[2]    The Trustee's reliance on *Esso Exploration & Production Nigeria Ltd. v. Nigerian National Petroleum Corp.*, 397 F. Supp. 3d 323 (S.D.N.Y. 2019) (Opp. Br. 9, 11) is misplaced. The defendant in that action maintained three relevant U.S. bank accounts and deliberately directed transfers to and from those accounts. *Id.* at 338-39, 345.

### 3.    *Schroder AG's Subscription Agreements Do Not Establish or Support Specific Jurisdiction*

In his Opposition Brief, the Trustee attempts to sidestep Judge Bernstein's dispositive rulings in *Fairfield Sentry Ltd. v. Amsterdam (In re Fairfield Sentry Ltd.)* that the Fairfield Sentry subscription agreements are "irrelevant" to claims to recover redemption payments. *See* 2018 WL 3756343, at *11-12 (Bankr. S.D.N.Y., Aug. 6, 2018) ("*Fairfield I*"); Br. at 31-32. Instead, the Trustee argues that Schroder AG's entrance into agreements with New York forum clauses with Fairfield Sentry shows purposeful availment of New York law. *See* Opp. Br. 15. But those agreements do not relate to the claim that the Trustee has asserted, as required under both CPLR § 302(a)(1) and due process. As Judge Bernstein held, claims to recover redemptions do not relate to the subscription agreements. *Fairfield I*, at *11. Nor did Schroder AG agree to have New York law govern redemptions. Ineed, the Privy Council and Judge Bernstein held that redemptions are governed by BVI law and Fairfield Sentry's Articles of Association. *Id*. at *3, 4, 11. The Trustee's argument is directly contrary to Judge Bernstein's conclusion in *Fairfield I*.

The cases cited by the Trustee for this argument are inapposite. *See* Opp. Br. 16. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), found personal jurisdiction because, unlike here, the defendant entered into an agreement that envisioned "continuing and wide-reaching contacts" with the forum. *Id*. at 479-80. In *Chase Manhattan Bank v. Banque Generale du Commerce*, 1997 WL 266968 (S.D.N.Y. May 20, 1997), the contractual choice-of-law clause broadly governed "the parties' relationship." *Id*. at *2. Similarly, the forum selection clause in *Motors Liquidation Co. Avoidance Action Tr. v. JPMorgan Chase Bank, N.A.* (*In re Motors Liquidation Co.*), 565 B.R. 275 (Bankr. S.D.N.Y. 2017), governed the relevant transaction. *Id*. at 288.

**B.    Personal Jurisdiction Over Schroder AG Would Not Comply With Constitutional Due Process**

The Complaint and Opposition Brief fail to satisfy the Trustee's burden to plead minimum contacts, as explained above.  Indeed, the Trustee has not alleged that Schroder AG had *any* contacts with the United States related to the Trustee's claims to recover the alleged subsequent transfers.  The exercise of personal jurisdiction over Schroder AG would therefore be unreasonable and not comport with due process.  *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("The Due Process Clause . . . gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurances as to where that conduct will and will not render them liable to suit.") (citation omitted); *see also Walden*, 571 U.S. at 286.

**C.    The Trustee is Not Entitled to Jurisdictional Discovery**

The Trustee contends that if this Court finds that he has not yet made a prima facie showing of jurisdiction, he should be granted jurisdictional discovery.  Schroder AG objects to this request because (1) it has based its dismissal motion solely on the Trustee's allegations in the Complaint and has not submitted any evidence; (2) the Trustee has failed to make "a threshold showing" that there is a basis for jurisdictional discovery; and (3) the Trustee has failed to identify how any proposed discovery would uncover facts sufficient to sustain jurisdiction.  *See, e.g.*, *Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618 KMWHBP, 2009 WL 3817590, at *4 (S.D.N.Y. Nov. 16, 2009) ("A court [] is not required to subject a foreign corporation to discovery where the allegations fail to state a basis for the exercise of jurisdiction, or where a plaintiff's proposed discovery, even if permitted, would not uncover facts sufficient to sustain jurisdiction."); *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 186 (2d Cir. 1998) ("The rules governing establishment of jurisdiction over such a foreign corporation are clear and settled, and it would be inappropriate for

6

us to deviate from them or to create an exception to them because of the problems plaintiffs may

have in meeting their somewhat strict standards."). Accordingly, the Trustee is not entitled to

jurisdictional discovery.

## II.    THE TRUSTEE HAS NOT PLAUSIBLY ALLEGED THAT SCHRODER AG RECEIVED CUSTOMER PROPERTY

The Complaint should also be dismissed because it fails to plausibly allege that Schroder

AG is the subsequent transferee of customer property. *See* Br. 10-13. The Trustee has pleaded no

facts connecting the alleged initial transfers to the alleged subsequent transfers as required to state

a claim. *Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R. 100, 119 (Bankr.

S.D.N.Y. 2015) (dismissing complaint that "does not tie any initial transfer to any subsequent

transfer or Subsequent Transferee."). Instead, the Trustee has merely alleged that during the six

years preceding the petition date, BLMIS transferred approximately $3 billion to Fairfield Sentry,

while Fairfield Sentry, in turn, made outgoing transfers of more than $7 billion. *See* Compl. ¶ 43,

Ex. B and C; Fairfield Second Amended Complaint. Simple math shows that—viewing these

allegations in the light most favorable to the Trustee—the Trustee has alleged that there is only an

approximately 43% chance that the challenged transfers to Schroder AG were subsequent transfers

of customer property. *Iqbal* and *Twombly* plainly require more. *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (noting that a

claimant's allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face,'" not merely possible).

The Trustee cannot dispute the mathematical implausibility. Instead, the Trustee disclaims

any obligation to allege more than *potential* "pathways" through which customer property *might*

have flowed. The law demands more. A plaintiff must allege a claim with "facial plausibility" by

"plead[ing] factual content that allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." *Id*. Simply listing alleged initial transfers and subsequent transfers and adding the bare conclusory assertion that the entries in the two lists are sufficiently connected falls "short of the line between possibility and plausibility of entitlement to relief," particularly when the Trustee's own allegations demonstrate the implausibility through simple math. *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557).

The cases cited by the Trustee demonstrate the "linkage" that is required to sufficiently state a claim against a subsequent transferee. In the cases cited by the Trustee, the alleged initial and subsequent transfers were connected both by amount and temporally. *See, e.g.*, *45 John Lofts LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 736–37, 747 (Bankr. S.D.N.Y. 2019) (payments totaling $29.4 million deposited into an account; $29.4 million withdrawn by the next business day); *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117, 150 (Bankr. S.D.N.Y. 2014) ("[S]everal subsequent transfers took place contemporaneously or shortly after an initial transfer . . . , implying linkage."); *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317, 341 (Bankr. S.D.N.Y. 2011) (pleading of subsequent transfers held sufficient where they "correspond[ed] to" initial transfers from BLMIS); *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib. Inc.)*, 379 B.R. 5, 13, 30 (Bankr. E.D.N.Y. 2007) (alleged subsequent transfers "were preceded by fraudulent transfers" from debtor "in amounts sufficient to cover the [subsequent] transfers," all within 13 days). Here, however, there is no such linkage. None of the alleged initial transfers are the same amount as the alleged subsequent transfers to Schroder AG, and the temporal connection is tenuous, at best, with many of the alleged subsequent transfers occurring months after the immediately prior alleged initial transfer.

8

Pleading facts alleging some "linkage," *Merkin*, 515 B.R. at 150, does not mandate a "tracing analysis" or "dollar-for-dollar accounting," as the Trustee asserts. *See* Opp. Br. 21. Rather, it merely requires pleading facts that, if proved, would link initial transfers to subsequent transfers—something the Trustee himself has done in other actions, but not here. Instead, the Trustee is asking the Court to speculate and infer that because BLMIS transferred a large amount of money to Fairfield Sentry over a long period of time, to the extent Fairfield Sentry transferred money during that time to Schroder AG, either directly or indirectly through Fairfield Sigma, all of that money must have come from BLMIS. This is insufficient to survive a motion to dismiss.

The Trustee tries to distract from his insufficient pleading by characterizing this threshold issue as a "premature" "double recovery" argument, asserting that "until the Trustee recovers the full amount of the $3 billion in fraudulent transfers received by Sentry," he may simultaneously seek recovery from Schroder AG and the other defendants. Opp. Br. 25-26. The Trustee's argument entirely misses the mark. To be sure, the Trustee is limited to a single satisfaction, but that does not mean that the Trustee is excused from meeting basic pleading requirements to allege that the transfers to Schroder AG were, in fact, subsequent transfers of customer property. Contrary to the Trustee's argument, the Trustee is not entitled to recover from Schroder AG and every other entity that received the $7 billion of transfers out of Fairfield Sentry simply because $3 billion of transfers from BLMIS went into Fairfield Sentry. Indeed, the suggestion that this overreach is justified under the *Helms* case because the Trustee "'can recover from any combination of [transferees]' up to the amount avoided," Opp. Br. 25 (citing *Helms v. Metro. Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021)), entirely misstates the case. There, the court noted the unremarkable fact that, because Section 550(a) lists the various parties in the chain of transfers that are co-liable (i.e., initial

9

transferees, entities for whose benefit the transfers were made, and subsequent transferees), the trustee could recover from any combination of those entities up to the amount avoided. *Id.* at 656. Whether the Trustee can choose to recover from Fairfield Sentry or subsequent transferees is not at issue here. What *is* at issue is whether the Trustee satisfies his pleading burden by simply alleging that a large amount of customer property was transferred to Fairfield Sentry, when more than twice that amount went out to Fairfield Sentry investors. It simply cannot be the case—as the Trustee's argument implies—that the Trustee could plausibly allege subsequent transferee claims for *$7 billion* when there were only *$3 billion* of initial transfers of customer property. The issue is not one of double recovery, but of plausibility. And the linkage between the alleged initial and subsequent transfers is simply not plausible if, all else being equal, there is only a 43% chance that the alleged subsequent transfers were of customer property.

Finally, the Trustee asks to be excused from pleading facts plausibly showing that Schroder AG received customer property based on an alleged information deficit. *See* Opp. Br. 24-25. But the Trustee does not (and cannot) deny that continuously since his 2011 Fairfield Settlement Agreement, he has had full access to the Fairfield Liquidators' "documents, data and other information relating to, or beneficial to the pursuit of" claims in which the Trustee and the Liquidators agreed to cooperate and share proceeds—including in this action. Br. 4. He denies having all the books and records, yet fails to disclose which books and records he has, which (if any) he is missing and why, what (if anything) he has done to access any missing books and records, or whether (and how) any gaps would justify his pleading failures. The Trustee has failed to justify the deficiencies of his Complaint. It should be dismissed with prejudice.

III.    **SECTION 546(e) BARS THE RECOVERY OF THE ALLEGED SUBSEQUENT TRANSFERS WHERE THE FAIRFIELD INITIAL TRANSFERS WERE MADE OUTSIDE THE TWO-YEAR LOOKBACK PERIOD**

The Complaint should also be dismissed with respect to the $20,526,795 of alleged subsequent transfers to Schroder AG ($19,985,147 of alleged subsequent transfers from Fairfield Sentry, and $541,648 of the alleged subsequent transfers from Fairfield Sigma)—representing more than 70% of Schroder AG's alleged liability—that relate to alleged initial transfers outside the two-year lookback period. The Trustee does not dispute that such initial transfers satisfy the statutory requirements under the Section 546(e) safe harbor to be immune from avoidance, nor that the $20,526,795 in subsequent transfers identified in Schroder AG's motion could only have been subsequent transfers from those initial transfers. The Trustee concedes that the alleged initial transfers (a) were both transfers and settlement payments made "in connection with a securities contract," and (b) that the transfers were by, to, and/or for the benefit of covered entities, including BLMIS (as a stockbroker) and Schroder AG (as a bank). Instead, the Trustee relies solely on the equitable exception in *Cohmad*, where Judge Rakoff held that "[n]either law nor equity permits [a transferee with actual knowledge of the fraud] to profit from a safe harbor intended to promote the legitimate workings of the securities markets and the reasonable expectations of legitimate investors." *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 115 (JSR), 2013 WL 1609154 at *3 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*").

The Trustee does not allege that Schroder AG had actual knowledge of Madoff's fraud. Instead, the Trustee relies solely on allegations (in a different complaint) that Fairfield Sentry had such actual knowledge, and that Fairfield Sentry's knowledge, as an initial transferee, destroys the safe harbor for all subsequent transferees. The Trustee's argument, however, is directly contrary to Judge Rakoff's decision in *Cohmad*, ignores the fact that there were additional, legitimate,

securities contracts with Schroder AG that independently qualify the transfers for the safe harbor regardless of Fairfield Sentry's alleged knowledge, and continues to rely on impermissible incorporation of allegations outside of the complaint.

### A.    The Trustee Misconstrues *Cohmad*

Instead of confronting the clear holding of *Cohmad*, the Trustee asserts that Schroder AG is attempting to relitigate the issue of whether actual knowledge bars the application of the safe harbor.  While Schroder AG certainly reserves its appeal rights on the extra-statutory basis for the *Cohmad* decision, the *Cohmad* decision itself precludes the Trustee's argument that it is the *initial* transferee's knowledge that matters for the *Cohmad* exception instead of, as *Cohmad* actually held, the *subsequent* transferee's knowledge that matters in subsequent transferee claims.

#### 1.    Cohmad *is Clear That it is the Actual Knowledge of the Subsequent Transferee, Not the Initial Transferee, that Matters for the Equitable Exception to the Safe Harbor*

Judge Rakoff made clear in *Cohmad* that, in subsequent transferee claims, it is the actual knowledge of the *subsequent* transferee, not the *initial* transferee, that matters for the equitable exception to the safe harbor.  In its bottom-line holding, the court first held that, in an initial transferee action, the safe harbor will not apply "*if* the Trustee has alleged that the initial transferee had actual knowledge of Madoff Securities' fraud."  2013 WL 1609154 at *1.  The Court then held that, "[w]here the Trustee has sought to recover transfers made to a subsequent transferee, the avoidance of which would otherwise be barred by Section 546(e) as to the initial transferee, the subsequent transferee will not be able to prevail on a motion to dismiss . . . **if the Trustee has alleged that the subsequent transferee had actual knowledge of Madoff Securities' fraud**." *Id.* (emphasis added).  Judge Rakoff then further explained the holding as to alleged subsequent transferee defendants, stating that "[i]n sum, if the Trustee sufficiently alleges *that the transferee from whom he seeks to recover* a fraudulent transfer knew of Madoff Securities' fraud, *that*

12

*transferee* cannot claim the protection of Section 546(e)'s safe harbor." *Id*. at *7 (emphasis added). The court could not have been clearer that it is the *defendant's* knowledge that matters for the equitable exception, regardless of whether that defendant is the initial transferee or the subsequent transferee. No where in *Cohmad* did Judge Rakoff state that subsequent transferees would lose the safe harbor defense if *either* the initial transferee *or* the subsequent transferee had actual knowledge of the fraud, as the Trustee now argues. *Cohmad* makes clear that, where, as here, the Trustee has not alleged that the subsequent transferee had actual knowledge of the fraud, the extra-statutory exception articulated in *Cohmad* does not apply.

*Fairfield Investment Fund*, which followed *Cohmad*, is instructive. There, this Court emphasized that "if the Trustee sufficiently alleges that the transferee ***from whom he seeks to recover a fraudulent transfer*** knew of Madoff Securities' fraud, ***that transferee*** cannot claim the protections of Section 546(e)'s safe harbor." *Picard v. Fairfield Inv. Fund* (*In re Bernard L. Madoff Inv. Secs. LLC*), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y., Aug. 6, 2021) (quoting *Cohmad*, 2013 WL 1609154, at *7; emphasis added). The Court accordingly examined whether the Trustee had sufficiently alleged facts establishing actual knowledge separately as to each of the individual defendants. *See id.* at *5-*7. In doing so, it dismissed the claims against an individual defendant due to the lack of independent actual knowledge. *See id.* at *6, *15. Thus, although the Court found that the initial transferee had actual knowledge, *see id.* at *4, it did not— as the Trustee asks it to do here—automatically deprive all subsequent transferee defendants of the safe harbor's protection.

The other cases cited by the Trustee fail to support the proposition that an innocent subsequent transferee has no ability to obtain dismissal of subsequent transfer claims merely because the initial transferee had actual knowledge. For instance, in *Picard v. BNP Paribas S.A.*

*(In re Bernard L. Madoff Inv. Secs. LLC)*, 594 B.R. 167 (Bankr. S.D.N.Y. 2018) (cited at Opp. Br. 31-32), the Trustee did not even advance such an argument, and the court did not analyze that issue.  Nor was the issue presented in *SunEdison Litigation Trust v. Seller Note, LLC (In re SunEdison, Inc.)*, 620 B.R. 505 (Bankr. S.D.N.Y. 2020) (cited at Opp. Br. 31), where Judge Bernstein granted defendants' motion to dismiss constructive fraudulent transfer claims based on Section 546(e) without discussing any alleged transferee's knowledge.  *See id*. at 512-17.  Neither *Cohmad* nor the other cases on which the Trustee relies provide support for the notion that the actual knowledge of an initial transferee can vitiate the protections of Section 546(e) for every subsequent transferee that had no knowledge of the fraud.

### 2.    *Cohmad Does Not Preclude Application of the Safe Harbor in Section 550 Recovery Actions*

*Cohmad* itself refutes the Trustee's argument that Judge Rakoff "specifically limited the safe harbor to avoidance claims," and not recovery claims under Section 550.  Opp. Br. 30.  To be certain, Section 546(e) by its terms addresses avoidance of transfers, but the law is clear that where the initial transferee fails to raise the safe harbor defense, subsequent transferees are entitled to raise the defense against *recovery* of those funds.  *Fairfield Inv. Fund*, 2021 WL 3477479, at *3. In *Cohmad*, Judge Rakoff explained that he had twice previously held that Section 546(e) "required the dismissal" both of the Trustee's avoidance claims and of "***related recovery claims under Section 550(a)***."  *Cohmad*, 2013 WL 1609154, at *3 (emphasis added).  Thus, while the initial transfers must satisfy the statutory requirements under Section 546(e) for the safe harbor, Schroder AG is entitled to raise that defense here because Fairfield Sentry has not.

But just because the safe harbor analysis is focused on whether the *initial* transfers meet Section 546(e)'s safe harbor requirements, that does not mean that *Cohmad*'s extra-statutory equitable exception looks to the actual knowledge of Fairfield Sentry as the initial transferee.

14

*Cohmad*'s reasoning for an equitable exception to the safe harbor was premised on the policy that no one should "profit from a safe harbor intended to promote the legitimate workings of the securities markets and the reasonable expectations of legitimate investors" that had actual knowledge of Madoff's Ponzi scheme. *Id.* at *4. Schroder AG is not alleged to have such knowledge, and there is no reason—under *Cohmad* and its policy-based reasoning—to deny Schroder AG of the protections of the safe harbor simply because, unbeknownst to Schroder AG, Fairfield Sentry is alleged to have actual knowledge of the fraud.

### 3.    Cohmad *Is Also Clear that the Separate Securities Contracts Among Fairfield Sentry, Fairfield Sigma, and Schroder AG Satisfy the Safe Harbor Where Schroder AG Had No Actual Knowledge of Fraud*

Even if Fairfield Sentry's alleged knowledge of the fraud precludes application of the safe harbor premised on the securities contacts between Fairfield Sentry and BLMIS, there are other securities contracts among Fairfield Sentry, Fairfield Sigma, and Schroder AG that independently require application of the Section 546(e) safe harbor. *See Cohmad*, 2013 WL 1609154, at *4, *7 (noting it is the Trustee's burden to allege "actual knowledge," and leaving for the bankruptcy court to determine "whether actual knowledge has been adequately alleged"). In *Cohmad*, Judge Rakoff recognized this separate, alternative way in which the Section 546(e) safe harbor protects financial institutions that are subsequent transferees that are parties to other, unquestionably legitimate securities contracts.

The Trustee does not dispute that Schroder AG, a bank, is a financial institution. *See* Br. 22-24. And the Trustee is bound by his allegations that BLMIS's initial transfers were made to Fairfield Sentry (at its request) for the purpose of funding Schroder AG's redemption requests. *See* Fairfield Am. Compl., Adv. Pro. No. 09-01239, ¶ 53; Compl. ¶ 41. Accordingly, the facts alleged here "fit within the plain terms of Section 546(e)." *Cohmad*, 2013 WL 1609154, at *9. As Judge Rakoff held:

> [T]he question at the motion to dismiss stage is whether the Trustee
> has alleged that that initial transfer was made in connection with
> (*i.e.,* related to) a covered securities contract and to or for the benefit
> of a financial participant. Take, for example, a hypothetical
> situation in which the Trustee alleges that a withdrawal of funds by
> an investment fund from its Madoff Securities customer account
> occurred because an investor in that fund sought redemption of its
> investment under the terms of its investment contract. Assuming
> that either the investment fund or the investor qualifies as a financial
> institution or financial participant, and barring other circumstances
> that may appear on the facts of a given case, that situation appears
> to fit within the plain terms of Section 546(e): an initial transfer that
> was "made by or to (or for the benefit of) a ... financial institution
> [or] financial participant ... in connection with a securities contract."

*Id. Cohmad* thus provides a separate, additional basis for the statutory safe harbor premised on

the securities contracts among Fairfield Sentry, Fairfield Sigma, and Schroder AG.

Judge Rakoff's reasoning for the extra-statutory exception to Section 546(e) was premised

on the equitable notion that defendants with actual knowledge of the fraud "must have known that

the transfers could not have been made in connection with an actual 'securities contract.'" *Id.* at

\*3. As Judge Rakoff noted in *Cohmad*, that reasoning—and *Cohmad*'s equitable exception—does

*not* apply where the initial transfers were, as here, also made in connection with separate, legitimate

securities contracts between Fairfield Sentry and its investors. Because this second, alternative

path to Section 546(e) protection does not implicate any securities contract Fairfield Sentry had

with BLMIS, Fairfield Sentry's alleged knowledge of the Madoff/BLMIS fraud (and that its

customer agreements with BLMIS were not real securities contracts) does not bar application of

the safe harbor.

The Trustee attempts to characterize this clear holding as "dicta." Opp. Br. 30. Not so.

Judge Rakoff explicitly ordered that "to the extent a defendant claims protection under Section

546(e) under a separate securities contract as a financial participant or financial institution, the

Bankruptcy Court must adjudicate those claims in the first instance consistent with this Opinion."

16

*Cohmad*, 2013 WL 1609154, at *10; *see also id.* at *9 n.6 (instructing that the issue must be determined "on the basis of the specific allegations in the Trustee's complaint in a given adversary proceeding").   Thus, because the Trustee has *not* alleged that the securities contracts among Fairfield Sentry, Fairfield Sigma, and Schroder AG were anything but legitimate securities contracts, and because the Trustee has not alleged that Schroder AG had actual knowledge of the Madoff/BLMIS Fraud, the initial transfers at issue here fall squarely within the safe harbor and Schroder as a subsequent transferee of safe harbored initial transfers is likewise entitled to its protection.

### B.    The Complaint Does Not Allege Actual Knowledge of Fairfield Sentry

#### 1.    *The Trustee's Attempt to Incorporate the Fairfield Amended Complaint is Improper*

Even if the court accepts the Trustee's reading of *Cohmad*, the Trustee has failed to properly allege the actual knowledge of Fairfield Sentry.  Instead, he seeks to impermissibly rely on the incorporation by reference of the Fairfield Amended Complaint, a 217-page complaint with 798 paragraphs to do so.  As Schroder AG previously explained, the Complaint does not comply with either Rule 8(a)'s requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief" or Rule 10(c)'s limitations on incorporation by reference.  Fed. R. Civ. P. 8(a); Fed. R. Civ. P. 10(c).   The Opposition Brief ignores the significant limitations on incorporation by reference imposed by *Geiger* and cases and instead argues that because he seeks to reference only one other document for an obvious purpose, the allegations to which Schroder AG is required to respond are clear. The Trustee's argument ignores that the incorporation "must specifically identify which portions of the prior pleading are adopted."  *Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212, 216 (D. Mass. 1995); *accord Toberman v. Copas*, 800 F. Supp. 1239, 1243 (M.D. Pa. 1992) (plaintiff must "provid[e], at a minimum, direct reference to specific

paragraphs relied on"). Thus, the Trustee's attempt to incorporate the entire Fairfield Amended Complaint violates Rule 10(c).

The Trustee's Rule 8(a) argument fares no better. The Trustee contends that Schroder AG need only address specific portions of the complaint that he seeks to incorporate. But the Fairfield Amended Complaint alleges far more than avoidability or actual knowledge to meet Rule 8(a)(2)'s requirement of a short and plain statement of the claim showing that the pleader is entitled to relief. Instead, the Trustee puts at issue *all* allegations and *all* claims he asserted against Fairfield Sentry and the other Fairfield defendants, including a plethora of irrelevant allegations and exhibits that have nothing to do with avoidability or actual knowledge. Schroder AG should not be required to respond to the entire complaint against the Fairfield defendants to be able to defend the claim against it. A defendant is not required to guess which of the plaintiff's allegations apply and which do not. The plaintiff is required to state a claim in a short and plain statement of facts entitling the plaintiff to relief, to which the defendant can then respond.

### 2. *Judicial Notice Does Not Remedy the Deficiencies of the Complaint*

The Trustee argues that even if his incorporation was improper, "this Court may take judicial notice of the Fairfield SAC itself as well as its holding that the Trustee sufficiently alleged the avoidability of the initial transfers." Opp. Br. 36. Judicial notice cannot save the Trustee's Complaint. This Court's *Fairfield* decision to which the Trustee refers addressed the Fairfield Second Amended Complaint, not the Fairfield Amended Complaint that the Trustee's Complaint attempts to incorporate by reference. Moreover, judicial notice of the existence of a document cannot substitute for allegations in a complaint, which the defendant can admit or deny, thus framing the facts and issues in dispute. The Trustee's request that the Court take judicial notice to fill in missing allegations resulting from his failure to properly plead is tantamount to amending the complaint without compliance with Rule 15. *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178

18

(2d Cir. 1998) (plaintiff may not add allegations in her memorandum opposing motion to dismiss).

Judicial notice does not relieve the Trustee of his burden to meet basic pleading requirements.

## IV.    THE COMPLAINT ESTABLISHES SCHRODER AG'S SECTION 550(b) GOOD FAITH FOR VALUE DEFENSE[3]

The Complaint should also be dismissed because it establishes Schroder AG's Section

550(b) affirmative defense.  The Trustee, again quoting from this Court's *Fairfield Investment*

*Fund* decision, asserts that "whether the Defendants 'gave value' in surrendering shares in the

Fairfield Funds, such a determination cannot be made as a matter of law or fact at this stage."  Opp.

Br. 40.  The facts and arguments in that case differed significantly from those here.  The principal

focus of the "for value" defense argued in the *Fairfield* motion to dismiss was whether the Fairfield

insider defendants' services constituted "value" for purposes of Section 550(a), in contrast to, as

here, value that has already been determined to exist as a matter of law.

The Trustee concedes that "value" within the meaning of Section 550(b) is "merely

consideration sufficient to support a simple contract, analogous to the 'value' required under state

law to achieve the status of a bona fide purchaser for value."  *Picard v. ABN AMRO Bank N.A. (In*

*re Bernard L. Madoff)*, Adv. Pro. No. 08-01789 (SMB), 2020 WL 1584491 at *8 (Bankr. S.D.N.Y.,

Mar. 31, 2020).  The Complaint alleges that Fairfield Sentry was a British Virgin Islands fund and

that the subsequent transfers the Complaint seeks to recover were payments for redemption of

shares in Fairfield Sentry.  The internal affairs doctrine governs the relationship between Fairfield

Sentry and its shareholders, such as Schroder AG, and a final decision of the Eastern Caribbean

---

[3]    Schroder AG recognizes that this Court recently held that it cannot make a determination on the good faith affirmative defense at the motion to dismiss stage.  *See Picard v. Banque SYZ & Co. (In re: Bernard L. Madoff)*, Adv. Pro. No. 11-02149, Memorandum Decision Denying Defendant's Motion to Dismiss (June 14, 2022); *Picard v. Multi-Strategy Fund Ltd.. (In re: Bernard L Madoff)*, Adv. Pro. No. 12-01205, Memorandum Decision Denying Defendant's Motion to Dismiss (June 13, 2022).  Schroder AG continues to press its good faith affirmative defense here to preclude any suggestion of waiver of such argument.

Court of Appeal has held as a matter of law that Fairfield Sentry's redemption of its shares from its shareholders was for good consideration. Br. at 24-25. The facts are apparent on the face of the Complaint, and the law has been clearly determined by the appellate court in an authoritative decision in the relevant jurisdiction that the redemption was for value. Thus, this determination can, and should, "be made as a matter of law or fact at this stage," *Fairfield Inv. Fund*, 2021 WL 3477479, at *9, and the court should not waste resources by deferring this issue to trial.

Similarly, with respect to good faith, the Trustee attempts to defer the good faith defense by a desire to take discovery on "myriad unknown facts" purportedly "critical to opposing a good faith defense," Opp. Br. 38, and attempts to brush off as "pure conjecture" Schroder AG's showing that the allegations pled in the Trustee's Complaint and his Fairfield Amended Complaint establish a good faith defense, Opp. Br. at 39. But the Trustee's argument relies on pre-*Citibank* law concerning the transferee's knowledge or suspicions and the investigation the transferee conducted, which *Citibank* reversed. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 516 B.R. 18 (S.D.N.Y. 2014) (good faith is based on the transferee's subjective knowledge), *overruled*, *Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Secs. LLC)*, 12 F.4th 171 (2d Cir. 2021). As the Second Circuit made clear, the key question is whether the defendant upon "'diligent inquiry . . . would have discovered the fraudulent purpose' of the transfer." *Citibank*, 12 F.4th at 192. The Court of Appeals set forth a purely hypothetical test—"*would* have discovered" upon diligent inquiry. Factual discovery from the defendant simply would not shed any light on this hypothetical event. And, as set forth in Schroder AG's motion, the Complaint establishes that no such diligent inquiry would have discovered the fraud. *See* Br. 24-26.

## **CONCLUSION**

For the foregoing reasons, Schroder AG respectfully requests that the Court dismiss the

Complaint in its entirety.

Dated: June 22, 2022                         **ROPES & GRAY LLP**
      New York, New York

                                     */s/ Martin J. Crisp*
                                     Martin J. Crisp
                                     Andrew G. Devore
                                     1211 Avenue of the Americas
                                     New York, New York 10036
                                     (212) 596-9193

                                     *Counsel for Defendant Schroder & Co.*
                                     *Bank AG*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 22, 2022, the foregoing *Schroder & Co. Bank AG's Reply Memorandum of Law in Support of its Motion to Dismiss the Complaint* was served by the Court's electronic-filing system.  Notice of this filing has been sent through the Court's Electronic Case Filing System and via electronic transmission to the email addresses designated for delivery.

*/s/ Martin J. Crisp*
Martin J. Crisp