ROPES & GRAY LLP
Martin J. Crisp
Andrew G. Devore
1211 Avenue of the Americas
New York, New York 10036
(212) 596-9193

*Counsel for Defendant Schroder & Co.*
*Bank AG*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SECURITIES INVESTOR PROTECTION
CORPORATION,

        Plaintiff-Applicant,

v.

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

        Defendant.

Adv. Pro.  No.  08-01789 (CGM)

SIPA LIQUIDATION

(Substantively Consolidated)

---

In re

BERNARD L. MADOFF,

        Debtor.

---

IRVING H. PICARD, Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC
and Bernard L. Madoff,

        Plaintiff,

v.

 SCHRODER & CO. BANK AG,

        Defendant.

Adv. Pro. No. 12-01210 (CGM)

---

**SCHRODER & CO. BANK AG'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 2

I.     THE TRUSTEE'S ACTIONS AGAINST THE FAIRFIELD FUNDS ............................ 3

II.    THE COMPLAINT AGAINST SCHRODER AG ........................................................... 5

ARGUMENT .......................................................................................................................... 9

I.     THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT
      SCHRODER AG RECEIVED BLMIS CUSTOMER PROPERTY ............................... 10

II.    SECTION 546(e) BARS THE RECOVERY OF THE ALLEGED SUBSEQUENT
      TRANSFERS WHERE THE FAIRFIELD INITIAL TRANSFERS WERE MADE
      OUTSIDE THE TWO-YEAR LOOKBACK PERIOD.................................................. 13

      A.   The Fairfield Initial Transfers Were Made By, To, and For the Benefit of, a Covered
          Entity ................................................................................................................... 17

      B.   The Fairfield Initial Transfers Were Both Settlement Payments and Transfers Made
          "In Connection With" a Securities Contract ......................................................... 19

      C.   No "Knowledge" Exception Saves the Trustee's Claims from Section 546(e) ........ 20

          1. The Complaint Does Not Allege Actual Knowledge of Fairfield Sentry ............. 20

          2. The Complaint Does Not Allege That the Separate Securities Contracts Among
            Fairfield Sentry, Fairfield Sigma, and Schroder AG Were Tainted by Fraud, Much
            Less Allege "Actual Knowledge" of Fraud ......................................................... 22

III.   THE COMPLAINT ESTABLISHES SCHRODER AG'S GOOD FAITH DEFENSE... 24

      A.   The Fairfield Subsequent Transfers Were for Value................................................. 24

      B.   In Good Faith............................................................................................................ 25

      C.   Without Knowledge of Voidability .......................................................................... 27

IV.   THE COMPLAINT DOES NOT ADEQUATELY ALLEGE PERSONAL
      JURISDICTION OVER SCHRODER AG, A FOREIGN BANK................................. 27

      A.   Schroder AG Did Not Have Sufficient Contacts with BLMIS to Establish Personal
          Jurisdiction ........................................................................................................... 29

      B.   Schroder AG's Maintenance of a U.S. Bank Account Did Not Establish Personal
          Jurisdiction ........................................................................................................... 30

      C.   Schroder AG's Subscription Agreement with Fairfield Sentry Cannot Establish
          Personal Jurisdiction in This Case........................................................................ 31

      D.   Personal Jurisdiction Over Schroder AG in This Case Would Not Comport With Due
          Process.................................................................................................................. 32

CONCLUSION....................................................................................................................... 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Angell  v. Ber Care, Inc. (In re Caremerica, Inc.)*,
    409 B.R. 737, 750-51 (Bankr. E.D.N.C. 2009)........................................................12

*Am. Casein Co. v. Geiger (In re Geiger)*,
    446 B.R. 670 (Bankr. E.D. Pa. 2010) .........................................................21, 22, 26

*Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cty.*,
    480 U.S. 102 (1987)....................................................................................30

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................9, 11, 12

*Atherton v. F.D.I.C.*,
    519 U.S. 213 (1997)....................................................................................25

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).......................................................................9, 11, 12

*Brandt v. Horseshoe Hammond, LLC (In re Equip. Acq. Res., Inc.)*,
    803 F.3d 835 (7th Cir. 2015) ..........................................................................27

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)....................................................................................29

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)....................................................................................28

*Davis v. Bifani*,
    No. 07CV00122MEHBNB, 2007 WL 1216518 (D. Colo. Apr. 24, 2007) ............................21

*DiStefano v. Carozzi N. Am., Inc.*,
    286 F.3d 81 (2d Cir. 2001)..............................................................................28

*Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*,
    323 B.R. 857 (Bankr. S.D.N.Y. 2005)...................................................................18

*Fairfield Sentry Ltd. v. Migani,*,
    [2014] UKPC 9 ...........................................................................................25

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
    No. 10-13164, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec.14, 2021) .................................18

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.),*
    No. 10-13164, 2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018) ..........................32

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.,*
    141 S. Ct. 1017 (2021) ...............................................................................................29

*Hill v. HSBC Bank plc,*
    207 F. Supp. 3d 333 (S.D.N.Y. 2016) ........................................................................31

*Lavazza Premium Coffees Corp. v. Prime Line Distributors Inc.,*
    No. 20 CIV. 9993, 2021 WL 5909976 (S.D.N.Y. Dec. 10, 2021) ...........................31

*Leema Enters., Inc. v. Willi,*
    575 F. Supp. 1533 (S.D.N.Y. 1983) ...........................................................................31

*Lowden v. William M. Mercer, Inc.,*
    903 F. Supp. 212 (D. Mass. 1995) .............................................................................22

*Muth v. Dechert, Price & Rhoads,*
    391 F. Supp. 935 (E.D. Pa. 1975) ..............................................................................21

*Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.,*
    No. 13 CIV. 6705 DLC, 2014 WL 1673351 (S.D.N.Y. Apr. 28, 2014) ..................21

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank,*
    549 B.R. 56 (S.D.N.Y. 2016) .....................................................................................28

*O'Toole v. MyPlace Dev. SP. Z O.O., (In re Sledziejowski),*
    2016 WL 6155929 (Bankr. S.D.N.Y. Oct. 21, 2016) ...............................................30

*Picard v. Citibank N.A. (In re Bernard L. Madoff Inv. Secs. LLC),*
    12 F.4th 171 (2d Cir. 2021) ........................................................................................26

*Picard v. Fairfield Inv. Fund Ltd.,*
    2021 WL 3477479 ......................................................................................................13

*Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC),*
    773 F.3d 411 (2d Cir. 2014) ......................................................................2, 14, 19, 20

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC),*
    515 B.R. 117 (Bankr. S.D.N.Y. 2014) .......................................................................11

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC),*
    542 B.R. 100 (Bankr. S.D.N.Y. 2015) .................................................................11, 12

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
    476 B.R. 715 (S.D.N.Y. 2012) ...................................................................................17

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    505 B.R. 135 (S.D.N.Y. 2013) ........................................................................19

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    No. 12 MC 115 JSR, 2013 WL 160915 (S.D.N.Y. Apr. 15, 2013) ............................... *passim*

*Sec. Inv. Protect. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
    516 B.R. 18 (S.D.N.Y. 2014) ..........................................................................27

*Shaffer v. Heitner*,
    433 U.S. 186 (1977) ...................................................................................28

*SPV Osus Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018) .......................................................................28, 31

*Strandberg v. State Farm Mutual Auto Ins. Co.*,
    2016 WL 614401 (D. Nev. Feb. 16, 2016) ............................................................11

*Tex. Water Supply Corp. v. R.F.C.*,
    204 F.2d 190 (5th Cir. 1953) ...........................................................................21

*To v. HSBC Holdings PLC*,
    No. 15-CV-3590 (LTS), 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) ...............................31

*Toberman v. Copas*,
    800 F. Supp. 1239 (M.D. Pa. 1992) ...................................................................22

*U.S. v. Space Hunters, Inc.*,
    429 F.3d 416 (2d Cir. 2005) ...........................................................................10

*Walden v. Fiore*,
    571 U.S. 277 (2014) ............................................................................29, 30, 33

*Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*,
    543 B.R. 127, 138-39 (Bankr. S.D.N.Y. 2016) .......................................................28

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ...................................................................................32

**Statutes**

11 U.S.C. § 101(22)(A) ............................................................................18, 23

11 U.S.C. § 101(53A)(B) ...............................................................................17

11 U.S.C. § 546(e) ................................................................................ *passim*

11 U.S.C. § 548(a)(1)(A) ...............................................................................14

11 U.S.C. § 550.................................................................................................................5, 24

15 U.S.C. § 78fff-2(c)(3) ..................................................................................................10

N.Y. C.P.L.R. § 302.........................................................................................................28

N.Y. D.C.L § 278..............................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 8..............................................................................................................21

Fed. R. Civ. P. 10(c) .......................................................................................................20

Fed. R. Civ. P. 12(b)(6)..................................................................................................1, 9

Fed. R. Ev. 201(b)(2) ......................................................................................................18

Fed. R. Bankr. P. 7004....................................................................................................28

Fed. R. Bankr. P. 7012(b) ................................................................................................1

Defendant Schroder & Co. Bank AG ("Schroder AG" or "Defendant") respectfully submits this memorandum of law in support of its motion to dismiss the Complaint (the "Complaint") of Irving Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC (the "Trustee"), pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), as made applicable pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.

## PRELIMINARY STATEMENT

Count One of the Complaint—the only remaining count in this action—seeks to recover allegedly subsequent transfers of supposed Bernard L. Madoff Investment Securities LLC ("BLMIS") customer property initially made to Fairfield Sentry Limited ("Fairfield Sentry"). Yet, the Trustee pleads no facts to support the required connection between the initial transfers from BLMIS to Fairfield Sentry and the allegedly subsequent transfers from Fairfield Sentry to Schroder AG. The Trustee's own allegations demonstrate the implausibility and mathematical impossibility of these required—but absent—allegations. The Trustee has alleged in his various complaints relating to Fairfield Sentry that after May 9, 2003 (the date of the earliest possibly avoidable Fairfield Initial Transfer), Fairfield Sentry made outgoing transfers of more than $7 billion. Yet, the Trustee admits that only $2.895 billion in alleged avoidable initial transfers of BLMIS customer property were made by BLMIS to Fairfield Sentry during this period. This means that more than $4 billion of the transfers out of Fairfield Sentry that were made during this period— more than half of those alleged transfers—could not possibly have been subsequent transfers of avoidable initial customer property transfers. The Complaint cannot stand on the Trustee's conclusory and unsupported allegations to the contrary.

The Complaint should also be dismissed because the Complaint establishes Schroder AG's good faith defense and because Schroder AG is not subject to personal jurisdiction in this action. The Complaint establishes on its face that any transfers Schroder AG received were received for

value, in good faith, and without knowledge of the voidability of the initial transfers.  Specifically, Schroder's redemption of shares in Fairfield Sentry and Fairfield Sigma Limited ("Fairfield Sigma" and, together with Fairfield Sentry, the "Fairfield Funds") was done in exchange for value under applicable British Virgin Islands ("BVI") law in a manner sufficient to sustain a good faith defense.  And the Trustee's allegations demonstrate that a diligent inquiry would not—and in fact did not—reveal Madoff's fraud.  The Complaint therefore demonstrates that Schroder AG has a good faith defense with respect to the transfers at issue in this action.  As to personal jurisdiction, the Complaint fails to plead facts sufficient to meet the Trustee's pleading burden to show that Schroder AG had the required minimum contacts with the United States such that it can be subject to jurisdiction in this action.

Additionally, any claims relating to more than $20.5 million of the approximately $28.5 million of transfers at issue in this action must be dismissed pursuant to 11 U.S.C. § 546(e) based on binding precedent in *Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*), 773 F.3d 411 (2d Cir. 2014) ("*Fishman*").  *See also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 12 MC 115 JSR, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*").

## BACKGROUND

The Complaint alleges that BLMIS transferred cash to two BVI incorporated feeder funds, Fairfield Sentry and Fairfield Sigma; the cash was customer property as defined in the Securities Investor Protection Act ("SIPA"); and those feeder funds thereafter directly or indirectly transferred the customer property to Schroder AG, a private bank headquartered in Switzerland.  *See* Compl. ¶¶ 22, 36.  The Trustee seeks to recover from Schroder AG approximately $28.5 million that it is alleged to have received in redemptions from the Fairfield Funds as subsequent transfers of allegedly avoidable transfers by BLMIS to the Fairfield Funds.  *See id.* ¶¶ 60-64.  The

Trustee's claims against Schroder AG are substantively identical to the claims he asserts against dozens of other foreign financial institution subsequent transferees, all of which attempt to recover alleged BLMIS customer property.

## I.    THE TRUSTEE'S ACTIONS AGAINST THE FAIRFIELD FUNDS

In December 2008, the public discovered the extent to which BLMIS was a fraud, and BLMIS entered into receivership shortly thereafter.  In May 2009, the Trustee filed actions against a host of defendants, including the Fairfield Funds, seeking the avoidance and recovery of over $3.5 billion of initial transfers received from BLMIS.  *See* Trustee's Twenty-Sixth Interim Report for the Period April 1, 2021 through September 30, 2021, *Secs. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re Bernard L. Madoff Inv. Sec. LLC),* Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y.), Dkt. No. 20821 ¶ 167.  Two months later, the Trustee filed an amended complaint ("Fairfield Amended Complaint") in *Picard v. Fairfield Sentry Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)* ("Fairfield Action"), which asserted claims against several additional defendants, including entities and individuals associated with the Fairfield Greenwich Group ("FGG"), which formed, managed, and marketed the Fairfield Funds.  *See* Fairfield Am. Compl., Fairfield Action, Adv. Pro. No. 09-01239, Dkt. No. 23 ¶ 536.

The Fairfield Amended Complaint, which sought to avoid approximately $3 billion in Fairfield Initial Transfers from BLMIS to Fairfield Sentry, alleges that Fairfield Sentry "is organized as an international business company under the laws of the British Virgin Islands," and that Fairfield Sentry was one of BLMIS's largest feeder funds. *Id.* ¶¶ 2, 20, 32–34, 536.  Regarding BLMIS, the Fairfield Amended Complaint alleges that BLMIS was operated under a shroud of secrecy and lack of transparency.  *Id.* ¶¶ 501, 520.  It asserts that some potential Fairfield investors decided not to invest because of a lack of independence at BLMIS, concerns about transparency, and BLMIS's unwillingness to submit to a due diligence process.  *Id.* ¶¶ 463-464, 469.  It further

alleges that Fairfield Sentry's management "went to great lengths to keep their investors far away from Madoff," going as far to mislead investors and "remov[ing] all references to BLMIS from their marketing materials." *Id.* ¶¶ 342, 346. The Fairfield Amended Complaint also alleges that the SEC began an investigation in 2006 into whether BLMIS was a Ponzi scheme or engaged in other illegal activity but could not determine BLMIS's fraudulent purpose. *Id.* ¶¶ 351, 360–61.

The Trustee settled his action against the Fairfield Funds over ten years ago. *See* Settlement Agreement, Fairfield Action, Dkt. No. 69-2; Consent Judgment, Fairfield Action, Dkt. No. 109; Consent Judgment, Fairfield Action, Dkt. No. 110. As part of the settlement, the Trustee received full access to all of the Fairfield Funds' records: "[T]he Trustee and the Liquidators each agree to provide reasonable access to the other's documents, data, and other information relating to, or beneficial to the pursuit of, the Sharing Claims." Settlement Agreement, Fairfield Action ¶ 14. The Fairfield Settlement Agreement also provided for full cooperation between the Trustee and the liquidators of the Fairfield Funds in pursuing claims against alleged subsequent transferees. Accordingly, the Trustee possessed all of the relevant facts (the "who," "what," "where," "when," and "how") concerning the transactions of the Fairfield Funds, and should have been able to—but did not—plead facts sufficient to establish that the alleged subsequent transfers were, in fact, subsequent transfers of the Fairfield Initial Transfers.

The Trustee has filed over 80 adversary proceedings in this SIPA case seeking to avoid transfers from the Fairfield Funds to their investors. *See* Trustee's Twenty-Sixth Interim Report for The Period April 21, 2021 through September 3, 2021 ¶ 229. The total amount the Trustee seeks to recover in those adversary proceedings as subsequent transfers made by Fairfield Sentry to its investors is at least $3.211 billion. The Trustee also alleges in the Complaint that Fairfield Sentry made $752 million in transfers to Fairfield Sigma after May 9, 2003 (the date of the earliest

possibly avoidable Fairfield Initial Transfer) and in the Fairfield Amended Complaint alleges that Fairfield Sentry made $1.035 billion in subsequent transfers of BLMIS customer property to Fairfield management entities and other funds, all of which he claims are avoidable.  *See* Compl. ¶ 43, Ex. D and E; Fairfield Am. Compl. ¶ 536.  Thus, the Trustee claims that Fairfield Sentry made more than $5.018 billion in subsequent transfers of avoidable initial transfers from BLMIS.  The Trustee also alleges that Fairfield Sentry transferred $2.055 billion to BLMIS as deposits during this period, for a total of more than $7 billion in outgoing transfers made by Fairfield Sentry during the six-year prepetition period.  *See* Compl., Ex. B.

## II.    THE COMPLAINT AGAINST SCHRODER AG

The Trustee brings this proceeding under his statutory authority under SIPA.  *See* Compl. ¶ 4.  The Complaint alleges that Schroder AG is a Swiss limited partnership based in Zurich.  *See id.* ¶¶ 3, 22.  The Trustee contends that Schroder AG received approximately $28.5 million in redemptions from the Fairfield Funds, which the Trustee characterizes as "subsequent transfers" of BLMIS "customer property."  *Id.* ¶ 2.[1]  The Trustee seeks to avoid such transfers under section 550 of the Bankruptcy Code and section 278 of the New York Debtor & Creditor Law ("NYDCL").  *See id.* ¶¶ 41, 43; *see also* 11 U.S.C. § 550; N.Y.D.C.L § 278.

The Trustee alleges that BLMIS made numerous initial transfers to Fairfield Sentry during the six-year prepetition period totaling "approximately $3 billion" and that Sentry, on certain days during those six years, transferred $25,143,816 in total to Schroder AG.  *Id.* ¶¶ 36, 41, Ex. B.  However, nothing in the Trustee's allegations attempts to identify which portions of these initial

---

[1]    The Trustee also initially sought recovery of certain alleged redemption payments Schroder AG received from Kingate Global Fund and Kingate Euro (collectively "Kingate"), but those claims were dismissed due to a June 26, 2019 settlement between the Trustee and Kingate's joint liquidators. *See Picard v. Ceretti*, Adv. Pro. No. 09-01161 (CGM) (Bankr. S.D.N.Y. Aug. 6, 2019), Dkt. No. 417.  That dismissal precipitated the entry of the stipulated order entered by this court on February 22, 2022, which dismissed Counts II and III of the Complaint. *See* Dkt. No. 89.

transfers from BLMIS to Fairfield Sentry were supposedly subsequently transferred to Schroder

AG as redemptions.  Instead, the Trustee conclusorily provides these limited allegations:

> 36.    During the six years preceding the Filing Date, BLMIS made transfers to Fairfield Sentry of approximately $3 billion (the "Fairfield Sentry Six-Year Initial Transfers") . . . .

> 37.    The Fairfield Sentry Six-Year Initial Transfers include approximately $1.6 billion which BLMIS transferred to Fairfield Sentry during the two years preceding the Filing Date (the "Fairfield Sentry Two Year Initial Transfers") . . . .

> 38.    The Fairfield Sentry Two Year Initial Transfers include approximately $1.1 billion which BLMIS transferred to Fairfield Sentry during the 90 days preceding the Filing Date (the "Fairfield Sentry Preference Period Initial Transfers") . . . .

> 41.    A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Schroder . . . .  Based on the Trustee's investigation to date, approximately $25,143,816 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Schroder (the "Fairfield Sentry Subsequent Transfers") . . . .

Compl. ¶¶ 36-38, 41.

The Trustee similarly alleges that approximately $750 million of the initial transfers

Fairfield Sentry received from BLMIS was transferred by Fairfield Sentry to Fairfield Sigma, and

that Fairfield Sigma transferred approximately $3,419,198 of that amount to Schroder AG as

redemption payments:

> 43.    A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Schroder through Fairfield Sigma and is recoverable from Defendant Schroder pursuant to section 550 of the Bankruptcy Code and § 278 of the NYDCL.  Based on the Trustee's investigation, approximately $752,273,917 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Fairfield Sigma.  After that, the equivalent of about $3,419,198 was transferred by Fairfield Sigma to Defendant Schroder (the "Fairfield Sigma Subsequent Transfers").

Compl. ¶ 43.  As with his allegation regarding the Fairfield Sentry transfers, the Trustee fails to offer any details about the source of the funds that constitute these alleged transfers from Fairfield Sigma to Schroder AG.

Exhibit B to the Complaint is a spreadsheet in which the Trustee sets forth the "Fairfield Sentry Initial Transfers."  *Id.* ¶ 39; Ex. B.  However, Exhibit B lists all activity in the accounts Fairfield Sentry maintained with BLMIS without specifying which transactions constituted the Fairfield Initial Transfers.  Exhibit C to the Complaint lists payments from Fairfield Sentry to Schroder AG.  *See id.* Ex. C.  Exhibits D and E list payments from Fairfield Sentry to Fairfield Sigma that the Trustee alleges were customer property of BLMIS and subsequently transferred to Schroder AG.  *See id.* Exs. D, E.  Giving the exhibits the reading most favorable to the Trustee, it would appear that the Fairfield Initial Transfers[2] were those labeled on Exhibit B as "CHECK WIRE" (that is, not inter-account transfers, transfers to the IRS, or transfers to a money market fund).  If so, then (i) the Fairfield Initial Transfers; (ii) the Fairfield Sentry deposits into its BLMIS accounts; (iii) the Fairfield Sentry transfers to Fairfield Sigma; and (iv) the amounts the Trustee alleges are recoverable from Schroder AG as subsequent transfers are listed in **Exhibit I** hereto.[3]

The sole allegations in the Complaint that the Fairfield Initial Transfers are avoidable are:

> 35.  The Trustee filed an adversary proceeding against Fairfield Sentry, Fairfield Sigma, and other defendants in the Bankruptcy Court under the caption *Picard v. Fairfield Sentry Limited, et al*., , Adv. Proc. No. 09-01239 (BRL), in which, in part, the Trustee sought to avoid and recover initial transfers of Customer Property from BLMIS to Fairfield Sentry in the amount of approximately $3 billion (the "Fairfield Amended Complaint").  The Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein.

---

[2]    Although the spreadsheets include all transactions since the opening of the accounts, the Fairfield Initial Transfers include only those made within six years before the December 11, 2008 Filing Date.

[3]    Pursuant to the stipulated order entered by this court on February 22, 2022, the Trustee determined that one transfer from Fairfield Sentry to Defendant, totaling $27,014, and one transfer from Fairfield Sigma to Defendant, totaling $3,268, should be dismissed. Accordingly, these transfers are not reflected in **Exhibit I**.

36.    During the six years preceding the Filing Date, BLMIS made transfers to Fairfield Sentry of approximately $3 billion (the "Fairfield Sentry Six-Year Initial Transfers"). The Fairfield Sentry Six-Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4) and are avoidable and recoverable under sections 544, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

37.    The Fairfield Sentry Six-Year Initial Transfers include approximately $1.6 billion that BLMIS transferred to Fairfield Sentry during the two years preceding the Filing Date (the "Fairfield Sentry Two Year Initial Transfers"). The Fairfield Sentry Two Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4) and are avoidable and recoverable under sections 544, 548, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

38.    The Fairfield Sentry Two Year Initial Transfers include approximately $1.1 billion which BLMIS transferred to Fairfield Sentry during the 90 days preceding the Filing Date (the "Fairfield Sentry Preference Period Initial Transfers"). The Fairfield Sentry Preference Period Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4), and are avoidable and recoverable under sections 547, 550, and 551 of the Bankruptcy Code, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3).

*Id.* ¶¶ 35-38.

The sole allegations in the Complaint that the transfers from Fairfield Sentry to Schroder

AG and the transfers from Fairfield Sigma to Schroder AG were of BLMIS customer property are:

41.    A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Schroder and is recoverable from Defendant Schroder pursuant to section 550 of the Bankruptcy Code and § 278 of the NYDCL. Based on the Trustee's investigation to date, approximately $25,143,816 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Schroder (the "Fairfield Sentry Subsequent Transfers"). A chart setting forth the presently known Fairfield Sentry Subsequent Transfers is attached as Exhibit C.

43.    A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Schroder through Fairfield Sigma and is recoverable from Defendant Schroder pursuant to section 550 of the Bankruptcy Code and § 278 of the NYDCL. Based on the Trustee's investigation to date, approximately

$752,273,917 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Fairfield Sigma. Thereafter, the equivalent of at least $3,419,198 was transferred by Fairfield Sigma to Defendant Schroder (the "Fairfield Sigma Subsequent Transfers"). Charts setting forth the presently known Fairfield Sigma Subsequent Transfers are attached as Exhibits D and E.

61. Defendant Schroder received the Fairfield Sentry Subsequent Transfers, totaling approximately $25,143,816; and the Fairfield Sigma Subsequent Transfers, totaling the equivalent of at least $3,419,198; (collectively, the "Fairfield Subsequent Transfers"). The Fairfield Subsequent Transfers, totaling approximately $28,563,014, are recoverable pursuant to section 550(a) of the Bankruptcy Code and § 278 of the NYDCL.

62. Each of the Fairfield Subsequent Transfers was made directly or indirectly to, or for the benefit of, Defendant Schroder.

63. Defendant Schroder is an immediate or mediate transferee of the Fairfield Sentry Initial Transfers.

*Id.* ¶¶ 41, 43, 61–63.

## **ARGUMENT**

The Court must dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). A claimant's allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A plausible claim pleads facts "that allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the Court must accept well-pleaded factual allegations as true, it need not accept assertions that are unsupported by factual allegations. *Id.* at 678–79. A motion to dismiss may rely on an affirmative defense if the facts necessary for the defense appear on the face of the complaint. *See U.S. v. Space Hunters, Inc.*, 429 F.3d 416, 426 (2d Cir. 2005).

## I.    THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT SCHRODER AG RECEIVED BLMIS CUSTOMER PROPERTY

The Trustee's remaining claim against Schroder AG must be dismissed for failing to meet fundamental pleading standards. In order to state a claim against Schroder AG under SIPA, the Trustee must plausibly allege that each individual transfer that Schroder AG received from Fairfield Sentry and Fairfield Sigma was a subsequent transfer of BLMIS customer property fraudulently transferred from BLMIS to Fairfield Sentry. *See* 15 U.S.C. § 78fff-2(c)(3) ("[T]he trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property if and to the extent that such transfer is voidable or void under the provisions of Title 11").

The Complaint utterly fails to meet this basic pleading burden. All the Complaint alleges is that during the six years preceding the petition date, BLMIS transferred approximately $3 billion to Fairfield Sentry, approximately $750 million of which was subsequently transferred to Fairfield Sigma, and that "[a] portion of [those transfers] was subsequently transferred either directly or indirectly to, or for the benefit of" Schroder AG. Compl. ¶¶ 41, 43, 61. Despite possessing a ledger of thousands of transactions recorded in Fairfield Sentry's accounts at BLMIS, the Complaint fails to identify which transactions constituted initial transfers of BLMIS customer property that were allegedly subsequently transferred to Schroder AG. Instead, the Trustee is asking the Court to infer that because BLMIS transferred a large amount of money to Fairfield Sentry over a long period of time, to the extent Fairfield Sentry transferred money during that time to Schroder AG, either directly or indirectly through Fairfield Sigma, all of that money must have come from BLMIS.

Such a leap requires pure speculation, which the Federal Rules of Civil Procedure do not permit. To survive a motion to dismiss, a claim must not merely be possible, but must be plausible.

*See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-57, 570. To be so in this case, *Iqbal* and *Twombly* require the Trustee to plead facts, not conclusions of law or statements of the elements of the cause of action, that create the plausible inference that the redemption payments were subsequent transfers of BLMIS customer property—not the billions of dollars of unrelated amounts that Fairfield Sentry transferred to its investors—and that "liability necessarily, not only possibly, follows." *Strandberg v. State Farm Mutual Auto Ins. Co.*, 2016 WL 614401, at *1 (D. Nev. Feb. 16, 2016).

In *Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R. 100 (Bankr. S.D.N.Y. 2015), Judge Bernstein held that conclusory and speculative allegations that customer funds were transferred to the subsequent transferee do not suffice to make a claim plausible. As Judge Bernstein ruled:

> The Trustee must allege facts that support the inference that the funds at issue originated with the BLMIS and contain the "necessary vital statistics"—the "who, when, and how much" of the transfers to establish that an entity was a subsequent transferee of the funds. At the pleading stage, the Trustee is not required to provide a "dollar-for-dollar accounting" of the exact funds at issue. However, barebones allegations that the funds at issue were transferred to the Subsequent Transferees, without more detail, are insufficient.

*Id.* at 119; *see also Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117, 150-51 (Bankr. S.D.N.Y. 2014) (same).

In *Shapiro*, the Trustee alleged generally that (i) BLMIS transferred funds to certain accounts; and (ii) the "Initial Transferee Defendants subsequently transferred a portion of the $53,778,486 received from BLMIS" to defendants who held an account at BLMIS that was funded largely, if not completely, with subsequent transfers. 542 B.R. at 119. The Court dismissed that complaint because it did not "tie any initial transfer to any subsequent transfer or Subsequent Transferee" and did "not plausibly imply that the initial transferees even made subsequent transfers

to the Subsequent Transferees as opposed to third parties, or that they made the subsequent transfers rather than simply keep the initial transfers for themselves." *Id.* at 119; *accord Angell v. Ber Care, Inc. (In re Caremerica, Inc.)*, 409 B.R. 737, 750-51 (Bankr. E.D.N.C. 2009) (dismissing a preference claim under *Twombly* and *Iqbal* because the trustee's factual allegations included allegations about transfers into and out of an account and amounts received by the supposed transferees, but nothing to tie them together). Here, the Complaint's allegations similarly fail to sufficiently allege factual support for the claims.

Although the Complaint includes an exhibit that includes the BLMIS-to-Fairfield Sentry Initial Transfers, and lists the redemption payments from Fairfield Sentry to Schroder AG, it does not specify which, if any, of the Fairfield Initial Transfers involved the customer property that the Trustee alleges that Fairfield Sentry subsequently transferred to Schroder AG or how those transfers are tied. The Complaint and its exhibits thus do not make any connection between the two and show that it is only potentially possible, not plausible, that some of the Fairfield Sentry redemption payments to Schroder AG might have been made from transferred BLMIS customer property. Thus, the Complaint does not state the "'when, and how much' of the transfers to establish that [Schroder AG] was a subsequent transferee of the funds." *Shapiro*, 542 B.R. at 119. It contains only the "barebones allegations that the funds at issue were transferred" to Schroder AG. *Id.*

Not only does the Trustee fail to meet fundamental pleading obligations, but the Complaint would require this Court to blind itself from economic reality to find that the Trustee plausibly alleges (as he must) that each alleged subsequent transfer was of BLMIS customer property. In the dozens of Fairfield Sentry subsequent transferee recovery actions and the Fairfield Second Amended Complaint, the Trustee alleges that after May 9, 2003 (the date of the earliest

possibly avoidable Fairfield Initial Transfer), the Trustee alleges that after May 9, 2003 (the date

of the earliest possibly avoidable Fairfield Initial Transfer), Fairfield Sentry made outgoing

transfers of more than $7 billion, consisting of $3.211 billion in redemption payments to its

investors, $1.035 billion to its management and affiliates, $2.055 billion to BLMIS as deposits,

and $752 million to Fairfield Sigma.  *See* Compl. ¶ 43, Ex. B and C; Fairfield Second Amended

Complaint.  Yet, the Trustee admits that only $2.895 billion in alleged avoidable initial transfers

of customer property were made by BLMIS to Fairfield Sentry during this period.  *See* Compl.,

Ex. B.  This means that more than $4 billion of the transfers from Fairfield Sentry during this

period—more than half of its outgoing transfers—could not possibly have been subsequent

transfers of avoidable initial customer property transfers.

The Trustee's allegations that the Fairfield Subsequent Transfers were customer property

are thus not only conclusory, but are implausible and mathematically impossible.  The entire

Complaint should be dismissed on this basis.

## II.     SECTION 546(e) BARS THE RECOVERY OF THE ALLEGED SUBSEQUENT TRANSFERS WHERE THE FAIRFIELD INITIAL TRANSFERS WERE MADE OUTSIDE THE TWO-YEAR LOOKBACK PERIOD.

In an action to recover a subsequent transfer, the subsequent transferee may assert any

defenses to avoidability of the initial transfer that the initial transferee could have asserted,

including the safe harbor of section 546(e).  *See Picard v. Fairfield Inv. Fund Ltd.*, 2021 WL

3477479, at *3 (Bankr. S.D.N.Y. 2021) ("Where the initial transferee fails to raise a § 546(e)

defense against the trustee's avoidance of certain transfers, as is the case here . . . the subsequent

transferee is nonetheless entitled to raise a § 546(e) defense against recovery of those funds.").

Section 546(e) bars a trustee from avoiding a transfer if the transfer (1) was made by or to

a covered entity, such as a stockbroker, financial institution, or financial participant; and (2) was

either a settlement payment or a transfer in connection with a securities contract.  The section

546(e) safe harbor has one exception with respect to claims under 11 U.S.C. § 548(a)(1)(A), which allows a trustee to avoid transfers made within two years before the petition date (here, between December 11, 2006 and December 11, 2008) if the debtor made such transfer with actual intent to hinder, delay or defraud its creditors.

The Second Circuit has ruled that payments made by BLMIS to its customers "are the type of securities-related payments that are shielded by § 546(e) from clawback." *Fishman*, 773 F.3d at 415, 417, 418-23. As stated in the Second Circuit's decision in *Fishman*, and as detailed more fully below, the Fairfield Initial Transfers that were made more than two years prior to BLMIS's bankruptcy petition (i.e., initial transfers made before December 11, 2006) are subject to the safe harbor and are therefore unavoidable. As a result, with respect to the Fairfield Initial Transfers that were made before December 11, 2006, any subsequent transfers of such amounts are also subject to the safe harbor of section 546(e).

With respect to the alleged subsequent transfers to Schroder AG from Fairfield Sentry in this action, $19,985,147 of the $25,143,816 (approximately 80%) in alleged subsequent transfers from Fairfield Sentry could only have come from Fairfield Initial Transfers that were made before December 11, 2006. As the chart below demonstrates,[4] these $19,985,147 of alleged subsequent transfers were either (i) themselves made before December 11, 2006, and thus could only be *subsequent* to initial transfers made even earlier; or (ii) with respect to the three alleged subsequent transfers totaling $14,306,822 from January 15, 2017 to August 17, 2007, could only be subsequent

---

[4]   The information in this chart (and the following chart) is taken from Exhibit I hereto, which sets forth the alleged (i) Fairfield Initial Transfers; (ii) Fairfield Sentry deposits into its BLMIS accounts; (iii) Fairfield Sentry transfers to Fairfield Sigma; and (iv) amounts the Trustee alleges are recoverable from Schroder AG as subsequent transfers. *See supra* at 10-12. Exhibit B of the Complaint establishes that the April 13, 2006 Fairfield Initial Transfer of $220 million was the only Fairfield Initial Transfer between such date and the alleged August 17, 2007 subsequent transfer, meaning that the four alleged subsequent transfers between May 15, 2006 and August 17, 2007 could not, in any event, be tied to any Fairfield Initial Transfer within the two-year lookback period.

transfers of the Fairfield Initial Transfer from April 13, 2006 or earlier.  As a result, $19,985,147

of the transfers alleged to have been made to Schroder AG from Fairfield Sentry is subject to the

section 546(e) safe harbor.

| Date | Fairfield Initial Transfer *BLMIS to Fairfield Sentry (USD)* | Subsequent Transfer *Fairfield Sentry to Schroder AG (USD)* |
|---|---|---|
| May 2003–July 2003 | 120,000,000 | |
| July 2004–March 2005 | | 2,687,895 |
| April 1, 2005 | 175,000,000 | |
| May 13, 2005 | | 167,185 |
| July 6, 2005 | 85,000,000 | |
| July 15, 2005 | | 38,029 |
| September 2005–October 3, 2005 | 280,000,000 | |
| October 14, 2015 | | 152,847 |
| November 16, 2005 | 185,000,000 | |
| November 17, 2005 | | 1,396,236 |
| December 15, 2005 | 85,000,000 | |
| December 19,2005 | | 360,349 |
| January 2006–March 16, 2006 | 165,000,000 | |
| March 17, 2006 | | 159,565 |
| April 13, 2006 | 220,000,000 | |
| May 15, 2006 | | 716,219 |
| *Two-Year Lookback Cutoff* | | |
| January 15, 2007 | | 13,889,216 |
| January 16, 2007 | | 264,716 |
| August 17, 2007 | | 152,890 |
| | *Total:* | **$19,985,147** |

Similarly, with respect to the alleged subsequent transfers from Fairfield Sigma, $541,648

of the $3,419,198 in alleged subsequent transfers from Fairfield Sigma could only have come from

Fairfield Initial Transfers that were made before December 11, 2006.  As the chart below

demonstrates, these $541,648 of alleged subsequent transfers were made before December 11,

2006, and thus could only be *subsequent* to initial transfers made even earlier.  As a result,

$541,648 of the transfers alleged to have been made to Schroder AG from Fairfield Sigma is

subject to the section 546(e) safe harbor.

| Date | Fairfield Initial Transfer *BLMIS to Fairfield Sentry (USD)* | Alleged Interim Transfer *Fairfield Sentry to Fairfield Sigma (USD)* | Subsequent Transfer *Fairfield Sigma to Schroder AG (USD)* |
|---|---|---|---|
| May 9, 2003 | 40,000,000 | | |
| May 14, 2003 | | 1,800,000 | |
| July 11, 2003 | 55,000,000 | | |
| July 16, 2003 | | 3,000,000 | |
| July 22, 2003 | 25,000,000 | | |
| August 2003-May 17, 2003 | | 55,000,000 | |
| May 24, 2004 | | | 195,404 |
| June 2004-March 2005 | | 6,550,000 | |
| April 2005 | 175,000,000 | | |
| June 2005 | | 9,450,000 | |
| July 6, 2005 | 85,000,000 | | |
| July 14, 2005 | | | 46,009 |
| July 15, 2005 | | 8,300,000 | |
| September 2005-October 3, 2005 | 280,000,000 | | |
| October 14, 2005 | | 16,450,000 | |
| November 16, 2005 | 185,000,000 | | |
| November 17, 2005 | | 19,200,000 | |
| November 23, 2005 | | | 14,264 |
| December 15, 2005 | 85,000,000 | | |
| December 19, 2005 | | 8,250,000 | |
| January 10, 2006 | 115,000,000 | | |
| January 19, 2006 | | 1,500,000 | |
| March 16, 2006 | 50,000,000 | | |
| March 17, 2006 | | 24,350,000 | |
| March 27, 2006-April 13, 2006 | 220,000,000 | | |
| April 20, 2006 | | 1,600,000 | |
| May 2006 | | | 77,946 |
| June 2006 | | 11,850,000 | |
| August 2006-November 2006 | | | 208,025 |
| ***Two-Year Lookback Cutoff*** | | | |

16

| Date | Fairfield Initial Transfer *BLMIS to Fairfield Sentry (USD)* | Alleged Interim Transfer *Fairfield Sentry to Fairfield Sigma (USD)* | Subsequent Transfer *Fairfield Sigma to Schroder AG (USD)* |
|---|---|---|---|
| | | *Total:* | **$541,648** |

### A.    The Fairfield Initial Transfers Were Made By, To, and For the Benefit of, a Covered Entity

With respect to the first requirement of section 546(e)—that the transfer be made by or to (or for the benefit of) a covered entity—the alleged Fairfield Initial Transfers qualify for three independent reasons because they were (i) made by a stockbroker (i.e. BLMIS); (ii) made to a financial institution (i.e., Fairfield Sentry); and (iii) made for the benefit of a financial institution (i.e., Schroder AG, a bank).

The Code defines "stockbroker" to include entities "engaged in the business of effecting transactions in securities." 11 U.S.C. § 101(53A)(B). As the District Court found, BLMIS "qualifies as a stockbroker by virtue of the trading conducted by its market making and proprietary trading divisions." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 719 (S.D.N.Y. 2012) (footnote and citation omitted), *aff'd sub nom. Fishman*, 773 F.3d at 417 ("It is not disputed [by the Trustee] that BLMIS was a 'stockbroker' for the purposes of § 546(e)."). This alone is enough to satisfy the first requirement of section 546(e).

The first requirement of section 546(e) is also established because Fairfield Sentry, the initial transferee, is a "financial institution" under the Bankruptcy Code, which defines "financial institution" to include both "an entity that is a commercial or savings bank," and the bank's customer "when [the bank] entity is acting as agent or custodian for a customer . . . in connection with a securities contract." 11 U.S.C. § 101(22)(A). In *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.),* No. 10-13164, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec.

17

14, 2020), this Court held that the Fairfield Funds were "financial institutions" because they were customers of a financial institution, Citco Bank Nederland N.V. Dublin Branch, which acted as their agent in connection with the securities contracts pursuant to which the redemption payments were made. 2020 WL 7345988, at *7. This reasoning applies equally in the instant case, thus further satisfying the first requirement of the section 546(e) safe harbor.

Lastly, the first requirement of section 546(e) is also satisfied because the Fairfield Initial Transfers were made for the benefit of Schroder AG, a bank that therefore qualifies as a financial institution.[5] *See* Commercial Register of the Canton of Zurich, Ref. No. CHE-105.947.172 (Ex. A); *see also* Swiss Federal Banking Commission, *Authorised banks and securities dealers*, available at: https://www.finma.ch/FinmaArchiv/ebk/e/institute/pdf/ebeh.pdf. The Fairfield Initial Transfers are alleged to have been "for the benefit of" Schroder AG, a financial institution, because the funds are alleged to have been withdrawn from BLMIS by Fairfield Sentry "in order to pay" redemption payments by Fairfield Sentry to investors, which includes Schroder AG. *See* Fairfield Am. Compl., Adv. Pro. No. 09-01239, ¶ 53; Compl. ¶ 41. For a transfer to be "for the benefit of" a covered entity, "either of the parties to the initial transfer must have contemplated that defendants would benefit from the transfer." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 505 B.R. 135, 149 (S.D.N.Y. 2013). Thus, based on the Trustee's allegations, "the funds' withdrawals were directly caused by the defendants' request for redemptions, [and] these initial transfers were 'for the benefit of' defendants as redeeming investors." *Id.* at 149-50; *see also Cohmad*, 2013 WL 1609154, at *9 (where Trustee alleges withdrawal of funds by investment

---

[5] A court may take judicial notice of a fact if it is "not subject to reasonable dispute" because it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Ev. 201(b)(2). Records from public bodies such as the Canton of Zurich and the Swiss Federal Banking Commission plainly qualify. *See Enron Corp. v. Bear, Stearns Int'l Ltd.* (*In re Enron Corp.*), 323 B.R. 857, 869 (Bankr. S.D.N.Y. 2005).

fund because financial institution sought to redeem its investment, that situation fits within section 546(e)).

## B.   The Fairfield Initial Transfers Were Both Settlement Payments and Transfers Made "In Connection With" a Securities Contract

The Fairfield Initial Transfers also satisfy the second requirement of section 546(e) that they be either a "settlement payment" or a transfer in connection with a securities contract.   They are both.

As the Second Circuit held in *Fishman*, the documents governing BLMIS customer accounts constituted securities contracts even though no securities trades were ever effectuated. *Fishman*, 773 F.3d at 418 ("Were it not for the Account Documents, there would be no basis for a customer to make deposits or request withdrawals . . . . Accordingly, we conclude that they fall within the statute's broad definition of 'securities contract.'").   The Second Circuit further held that the payments BLMIS made to those customers were made "in connection with" those contracts.   *Id.* at 421 ("We similarly have little difficulty concluding that the payments BLMIS made to its customers were made 'in connection with' the securities contracts . . . .").

The Second Circuit also held that transfers from BLMIS to its customers constituted "settlement payments," again rejecting the Trustee's arguments that the lack of actual securities trading precluded the payments from constituting "settlement payments."   *Id.* at 422-23 ("Each time a customer requested a withdrawal from BLMIS, he or she intended that BLMIS dispose of securities and remit payment to the customer . . . . [B]ecause the customer granted BLMIS discretion to liquidate securities in their accounts to the extent necessary to implement their sell orders or withdrawal requests, each transfer in respect of such an order or request constituted a settlement payment.").

*Fishman* is binding precedent, and accordingly the Fairfield Initial Transfers satisfy the second requirement of section 546(e).

### C.    No "Knowledge" Exception Saves the Trustee's Claims from Section 546(e)

The Trustee might respond that the safe harbor does not apply here because the Trustee has alleged, in ***other actions***—not in this case—that the initial transferee, Fairfield Sentry, knew of Madoff's fraud and thus knew that there was no actual "settlement payment" or "securities contract."  Any such argument fails for at least two independent reasons.

#### 1.    The Complaint Does Not Allege Actual Knowledge of Fairfield Sentry

As an initial matter, the Complaint in this action contains no allegations that Fairfield Sentry (and certainly not Schroder AG) "actually knew" of the fraud as required to undermine the safe harbor defense under Judge Rakoff's articulation in *Cohmad*.  *See* 2013 WL 1609154, at *4 & n.2.  Instead, the Trustee would be required to impermissibly rely on the purported incorporation by reference of his allegations in a different action against the Fairfield Funds and other defendants. Compl. ¶ 35.  Here, the Complaint incorporates by reference the Fairfield Amended Complaint— a 217-page complaint with 798 paragraphs.  *See* Compl. ¶ 35.  But the Trustee cannot simply incorporate that pleading here to satisfy his burden to plead plausible facts to support a claim of actual knowledge.

Rule 10(c) of the Federal Rules of Civil Procedure provides that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading." But the authority to incorporate by reference has limits.  For instance, as applicable here, courts generally disallow a pleading in one action adopting by reference the pleadings in a different action.  *See, e.g.*, *Tex. Water Supply Corp. v. R.F.C.*, 204 F.2d 190, 196 (5th Cir. 1953); *Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*, No. 13 CIV. 6705 DLC, 2014 WL 1673351, at *9 (S.D.N.Y. Apr. 28, 2014); *Davis v. Bifani*, No. 07CV00122MEHBNB, 2007 WL 1216518,

at *1 (D. Colo. Apr. 24, 2007) (noting it is improper "to incorporate by reference wholesale the allegations in a complaint in a completely separate action, even if that action is between the same parties"); *Muth v. Dechert, Price & Rhoads*, 391 F. Supp. 935, 938 (E.D. Pa. 1975) ("[W]hen determining the sufficiency of the Third-Party Complaints, we can look only to the pleadings in this case").  Given that Part VII of the Bankruptcy Rules applies to adversary proceedings and treats each adversary proceeding as a separate proceeding, it necessarily follows that the pleadings in one adversary action cannot be wholesale incorporated by reference in a separate adversary action.

*Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670 (Bankr. E.D. Pa. 2010), provides the rare instance in which a bankruptcy court decision has permitted incorporation by reference of pleadings filed in one adversary proceeding in a different adversary proceeding, reasoning that the bankruptcy case itself was a single action because it was the umbrella under which all other proceedings took place.  Despite allowing incorporation by reference, the *Geiger* court still granted the defendant's motion to dismiss the complaint incorporating the other pleading for failure to comply with Rule 8(a)'s requirement that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "[each] allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(a)(2), (d)(1); *Geiger*, 446 B.R. at 679.  Thus, even where adoption by reference is permitted (whether from the same adversary proceeding or another), Rule 8(a) additionally requires that the "reference must be clear and specific and must specifically identify the statements incorporated."  Moore's Federal Practice–Civil § 10.04[1] (2021) (citing *Toberman v. Copas*, 800 F. Supp. 1239, 1243 (M.D. Pa. 1992)); *see also Geiger*, 446 B.R. at 679.  Further, the incorporation "must specifically identify which portions of the prior pleading are adopted."  *Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212, 216 (D. Mass. 1995); *accord*

*Toberman*, 800 F. Supp. at 1243 (plaintiff must "provid[e], at a minimum, direct reference to specific paragraphs relied on").

In this case, the Complaint contains no allegations that Fairfield Sentry (and certainly not Schroder AG) "actually knew" of the fraud.  Any attempt to argue that the Complaint alleges that Fairfield Sentry had "actual knowledge" of the fraud sufficient to defeat a clear section 546(e) safe harbor defense must be rejected because it (i) improperly incorporates by reference a pleading from another action; and (ii) fails to specify the relevant allegations that are being incorporated.

> 2.   The Complaint Does Not Allege That the Separate Securities Contracts Among Fairfield Sentry, Fairfield Sigma, and Schroder AG Were Tainted by Fraud, Much Less Allege "Actual Knowledge" of Fraud

Even if the Trustee is determined to have adequately alleged that Fairfield Sentry had "actual knowledge" that there were no actual securities transactions occurring with respect to the securities contracts between Fairfield Sentry and BLMIS, there are other securities contracts among Fairfield Sentry, Fairfield Sigma, and Schroder AG that independently require application of the section 546(e) safe harbor and for which the Trustee has made no such allegations (by incorporation or otherwise).  *See Cohmad*, 2013 WL 1609154, at *4, *7 (noting it is the Trustee's burden to allege "actual knowledge," and leaving for the bankruptcy court to determine "whether actual knowledge has been adequately alleged").

As Judge Rakoff held in *Cohmad*, even if the Trustee adequately alleged that the initial transferee had actual knowledge that BLMIS was not trading securities in connection with the BLMIS customer contracts as the triggering "securities contracts," in the context of subsequent transferee claims there are other securities contracts that could independently support application of the section 546(e) safe harbor:

> [T]he question at the motion to dismiss stage is whether the Trustee
> has alleged that that initial transfer was made in connection with
> (*i.e.,* related to) a covered securities contract and to or for the benefit

> of a financial participant. Take, for example, a hypothetical
> situation in which the Trustee alleges that a withdrawal of funds by
> an investment fund from its Madoff Securities customer account
> occurred because an investor in that fund sought redemption of its
> investment under the terms of its investment contract. Assuming
> that either the investment fund or the investor qualifies as a financial
> institution or financial participant, and barring other circumstances
> that may appear on the facts of a given case, that situation appears
> to fit within the plain terms of Section 546(e): an initial transfer that
> was "made by or to (or for the benefit of) a . . . financial institution
> [or] financial participant ... in connection with a securities contract."

*Id.* at *9 (footnote omitted); *see also id.* at *10 ("[T]o the extent that a defendant claims protection

under a separate securities contract as a financial participant or financial institution, the

Bankruptcy Court must adjudicate those claims in the first instance consistent with this Opinion.").

As Judge Rakoff ruled, so long as the initial transferee (here, Fairfield Sentry) withdrew funds

from BLMIS to make a payment under a securities contract between the initial transferee and a

subsequent transferee, then the withdrawal from BLMIS would also be a transfer made in

connection with that separate securities contract, namely, the securities contracts between the

initial transferee and the subsequent transferee.

As applied to the facts here, each of these requirements is plainly satisfied. With respect

to the applicable "financial institution," there are two. As noted above, both Fairfield Sentry (as

the initial transferee) is a financial institution and Schroder AG, a bank, independently qualifies as

a financial institution under 11 U.S.C. § 101 (22)(A). And second, the Complaint alleges that the

transfers to Schroder AG were also in connection with securities contracts (other than the BLMIS

account documents) because they were "redemption proceeds." Compl. ¶ 7;[6] *see also Cohmad*,

2013 WL 1609154 at *8 ("[T]he definition of a securities contract is in fact much broader and

includes . . . redemption requests . . . .").

---

[6]    As alleged by the Trustee, Fairfield Sentry paid similar redemptions to Fairfield Sigma that were allegedly from
    BLMIS accounts. *See* Fairfield Am. Compl., Adv. Pro. No. 09-01239, ¶ 53.

The Trustee does not allege that Schroder AG actually knew of Madoff's fraud to preclude the safe harbor defense based on the securities contracts between Schroder AG and Fairfield Sentry and Fairfield Sigma. As a result, the initial transfers from BLMIS to Fairfield Sentry were also in connection with securities contracts entirely separate from the BLMIS account documents—for which there are no allegations of any "actual knowledge" of fraud—and thus the subsequent transfers to Schroder AG are independently shielded from avoidance under section 546(e).[7]

Accordingly, all claims against Schroder AG based on subsequent transfers where the underlying Fairfield Initial Transfers were made more two years before the petition date must be dismissed pursuant to section 546(e), including (i) the $19,985,147 of alleged Fairfield Sentry Subsequent Transfers that were made between April 14, 2003 and August 17, 2007; and (ii) the $541,648 of alleged Fairfield Sigma Subsequent Transfers that were made between May 2006 and November 2006.

## III.    THE COMPLAINT ESTABLISHES SCHRODER AG'S GOOD FAITH DEFENSE

The Complaint should also be dismissed because it establishes Schroder AG has a complete good faith defense. Section 550(b) denies a trustee recovery from a subsequent transferee who took for value, in good faith, and without knowledge of the voidability of the transfer. The allegations of the Complaint establish that Schroder AG meets each element of the good faith affirmative defense, and thus all claims against Schroder AG must be dismissed on this basis.

### A.    The Fairfield Subsequent Transfers Were for Value

The Complaint seeks recovery of transfers from Fairfield Sentry to Schroder AG. Those transfers were all payments by Fairfield Sentry for the redemption of shares in the Fairfield Sentry fund. *See Fairfield v. Schroder AG* Compl. ¶¶ 5, 9, 37, 38. As a BVI company, Fairfield Sentry's

---

[7]    Schroder AG respectfully disagrees with the conclusion that section 546(e) contains an "actual knowledge" exception, and reserves for a later stage of this action or appeal all arguments in this regard.

corporate relationship with its shareholders is governed by BVI law under the internal affairs doctrine. *Atherton v. F.D.I.C.*, 519 U.S. 213, 224 (1997); *see* Ex. B, *Fairfield Sentry Ltd. v. Migani*, [2014] UKPC 9, ¶ 10 ("[T]he terms of the subscriber's membership of the Fund, which govern the redemption of its shares . . . are to be found in the Articles of Association of the Fund"). The Eastern Caribbean Court of Appeal has held that a Fairfield Sentry investor's surrender of Fairfield Sentry shares upon Fairfield Sentry's redemption of the shares for cash gives good consideration to support the exchange. *See* Ex. B ¶ 7. Accordingly, the Complaint and related proceedings show that the "value" element of the affirmative defense is satisfied.

### B.    In Good Faith

To avail itself of a good faith defense in the context of a transfer, a defendant must also take the transfer in good faith. The Second Circuit has established a three-step inquiry for a good faith defense:

1. "[W]hat facts the defendant actually knew; this is a subjective inquiry and not a theory of constructive notice.'"

2. "[W]hether these facts put the transferee on inquiry notice of the fraudulent purpose behind a transaction—that is, whether the facts the transferee knew would have led a reasonable person in the transferee's position to conduct further inquiry into a debtor-transferor's possible fraud."

3. "[W]hether 'diligent inquiry [by the transferee] would have discovered the fraudulent purpose' of the transfer."

*Picard v. Citibank N.A.* (*In re Bernard L. Madoff Inv. Secs. LLC*), 12 F.4th 171, 191-92 (2d Cir. 2021). Thus, even when the transferee knew facts that would put it on inquiry notice of the fraudulent purpose underlying a transaction or transfer, a good faith defense is still available if a diligent inquiry would not have discovered the fraudulent purpose of the transfer. The Trustee's allegations demonstrate that a diligent inquiry would not—and in fact did not—reveal Madoff's fraud. Accordingly, the Complaint establishes Schroder AG's good faith defense on its face.

Even if a reasonable investor suspected that BLMIS was not operating above board, the allegations in the Fairfield Amended Complaint demonstrate that a diligent inquiry could not reasonably have discovered the fraudulent purpose underlying the transfers from BLMIS to Fairfield Sentry. BLMIS operated under a cloak of secrecy and lack of transparency. Fairfield Am. Compl., Adv. Pro. No. 09-01239, ¶¶ 501, 520. Further, Fairfield Sentry's management "went to great lengths to keep their investors far away from Madoff," going so far as to mislead investors and "remov[ing] all references to BLMIS from their marketing materials." *Id.* ¶¶ 342, 346.

The Fairfield Amended Complaint further shows that there were two diligent investigations of the identified "red flags." And, neither of these investigations identified the extent of BLMIS's fraud. For instance, the Fairfield Amended Complaint alleges that the SEC began an investigation in 2006 into whether BLMIS was a Ponzi scheme or engaged in other illegal activity, but that the investigative efforts were hindered by the actions of BLMIS and Fairfield Sentry insiders. *Id.* ¶¶ 351, 360–361. Thus, the investigation did not uncover the fraud prior to the scheme's unraveling in December 2008. The second investigation alleged in the Fairfield Amended Complaint involved Aksia, LLC, a hedge fund research and advisory firm. Aksia's investigation centered on BLMIS and its feeder funds. Although Aksia identified red flags concerning BLMIS, it failed to conclude that BLMIS was a fraud and even went as far as to note that Aksia's "decision to not recommend these feeders was never based on the existence or discovery of a smoking gun." *Id.*, Ex. 102 at 1.

Neither the SEC, with its extensive investigative tools, subpoena powers, and broad resources, nor Aksia, with all of the information available to it following on-site meetings with Fairfield Sentry and calls and interviews directly with Madoff and his former employees, found fraud at BLMIS. The suggestion that a once-removed feeder fund investor, which did not even

have a direct relationship with BLMIS, could have done so is belied by the Trustee's own allegations. The Fairfield Amended Complaint demonstrates that Schroder AG as an individual investor would not have been able to discover the fraudulent purpose of the transfers. Thus, the Complaint establishes that Schroder AG satisfies the good faith element of the affirmative defense.

### C.        Without Knowledge of Voidability

The last element of the good faith affirmative defense is that the transferee must take the transfer "without knowledge of the voidability" of the initial transfer. *See Brandt v. Horseshoe Hammond, LLC (In re Equip. Acq. Res., Inc.)*, 803 F.3d 835 (7th Cir. 2015). Because courts construe "without knowledge of the voidability of the transfer" the same as good faith, this element of the defense also has been established, as a transferee who is found to be in good faith is also found to be without knowledge of voidability. *Sec. Inv. Protect. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 516 B.R. 18, 23 n.3 (S.D.N.Y. 2014) ("In light of the legislative history, the most plausible reading is that this third requirement is merely one specific type of subjective knowledge required.").

Taken together, the Complaint and the Fairfield Amended Complaint demonstrate that Schroder AG is a subsequent transferee who took for value, in good faith, and without knowledge of the voidability of the transfer. Thus, the entire Complaint should be dismissed on this basis.

## IV.    THE COMPLAINT DOES NOT ADEQUATELY ALLEGE PERSONAL JURISDICTION OVER SCHRODER AG, A FOREIGN BANK

The Complaint must also be dismissed because it fails to plead facts sufficient to establish personal jurisdiction over Schroder AG. The Trustee bears the pleading burden of showing personal jurisdiction. *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). Because the Complaint does not allege that the Court has general jurisdiction over Schroder AG,

the Trustee must plead facts sufficient to support the exercise of specific jurisdiction in this case. *See Daimler AG v. Bauman*, 571 U.S. 117, 136-40 (2014).

The Trustee attempts to plead personal jurisdiction based on New York's long-arm statute, N.Y. C.P.L.R. § 302, and Federal Rule of Bankruptcy Procedure 7004. *See* Compl. ¶ 8. Under Federal Rule of Bankruptcy Procedure 7004(f), the Trustee can establish personal jurisdiction by pleading facts showing sufficient minimum contacts with the United States as a whole. *See Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, 543 B.R. 127, 138-39 (Bankr. S.D.N.Y. 2016). The federal jurisdictional analysis "closely resemble[s]" New York's long-arm statute and due process requirements, so the analyses are largely interchangeable. *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 68 (S.D.N.Y. 2016).

A bankruptcy court may exercise personal jurisdiction over a defendant in a proceeding arising in or related to a case under the Bankruptcy Code if the exercise is consistent with the U.S. Constitution. *See* Fed. R. Bankr. P. 7004(f). Due process requires allegations "(1) that a defendant has certain minimum contacts with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (citation omitted). The minimum contacts sufficient to support specific jurisdiction focus on "the relationship among the defendant, the forum, and the litigation," *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977), a relationship that "must arise out of ***contacts that the defendant himself creates with the forum***." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quotation marks omitted) (emphasis added).

A court may exercise specific personal jurisdiction only if it finds sufficient contacts initiated by the defendant that directly relate to the action. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) ("The plaintiff 's claims … must arise out of or relate

to the defendant's contacts with the forum."); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76 (1985). A party should not be required to defend claims in a foreign court if they could not reasonably have anticipated being subject to that court's jurisdiction or if they did not purposefully avail themselves of the benefits and protections of the forum's laws. *See Ford*, 141 S. Ct. at 1027. The Complaint fails to satisfy this burden because it does not plead facts sufficient to demonstrate that Schroder AG had contacts that could support the exercise of specific personal jurisdiction over it in this action.

### A.   Schroder AG Did Not Have Sufficient Contacts with BLMIS to Establish Personal Jurisdiction

The Complaint alleges that Schroder AG is subject to specific jurisdiction because it "knowingly direct[ed] funds to be invested with New York-based BLMIS through the Feeder Funds" and "knowingly received subsequent transfers from BLMIS by withdrawing money from the Feeder Funds." Compl. ¶ 6. Yet this boilerplate allegation is not supported by any well-pleaded facts. Indeed, the vast majority of the Trustee's allegations focus on the contacts between *Fairfield Sentry* and BLMIS. Personal jurisdiction, however, is not measured by third-party contacts but instead on contacts that "the Defendant himself creates." *Walden*, 571 U.S. at 284. *Fairfield Sentry's* contacts with BLMIS cannot establish that Schroder AG "accepted the rights, benefits, and privileges of conducting business and/or transactions in the United States and the State of New York," Compl. ¶ 7, and settled Supreme Court precedent has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between … third parties and the forum." *Walden*, 571 U.S. at 284.

Further, the mere knowledge that Fairfield Sentry would invest in New York is insufficient to support jurisdiction. In *Walden*, a Nevada-based plaintiff sued a Georgia police officer in Nevada for an unlawful seizure of money that occurred at a Georgia airport. *Id*. at 288. The police

officer knew that the plaintiff had connections to Nevada and that the seizure would delay the return of the plaintiff's property to Nevada, but the Supreme Court nonetheless held it unconstitutional to exercise personal jurisdiction over the officer in Nevada. *Id.* at 289. As the Supreme Court explained, the foreseeability of a plaintiff's connection to the forum is irrelevant to whether there is jurisdiction over the defendant because it "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* Instead, "[t]he substantial connection . . . between the defendant and the forum [] necessary for a finding of minimum contacts must come about by ***an action of the defendant purposefully directed toward the forum***." *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cty.*, 480 U.S. 102, 112 (1987) (quotation omitted) (emphasis in original). Even if true, the Trustee's allegation that Schroder AG knew that Fairfield Sentry would invest with BLMIS does not satisfy the standard articulated in *Walden*, and it is insufficient to subject a foreign entity to jurisdiction in the United States.

### B.    Schroder AG's Maintenance of a U.S. Bank Account Did Not Establish Personal Jurisdiction

The Complaint alleges that Schroder AG used New York banks to wire funds to Fairfield Sentry and receive redemption payments made by the Fairfield Funds. *See* Compl. ¶ 7. As a primary matter, the "mere maintenance" of a U.S. bank account and the "knowing receipt of funds" through such an account do not establish personal jurisdiction. *See, e.g., O'Toole v. MyPlace Dev. SP. Z O.O., (In re Sledziejowski),* 2016 WL 6155929, at *7 (Bankr. S.D.N.Y. Oct. 21, 2016) ("[T]he mere knowing receipt of funds in a bank account is insufficient to establish jurisdiction"); *Leema Enters., Inc. v. Willi,* 575 F. Supp. 1533, 1537 (S.D.N.Y. 1983) ("Bank's mere maintenance of correspondent bank accounts to facilitate international financial transactions . . . is not enough to confer this court with personal jurisdiction over the defendant.").

Even if accepted as true, allegations that a foreign bank wired money through New York are insufficient to establish that it was transacting business in New York or had minimum contacts with the United States. *See SPV Osus Ltd.*, 882 F.3d at 345 (finding "handful of communications and transfer of funds . . . are insufficient to allow the exercise of specific personal jurisdiction over the [Foreign] Defendants"); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339–40 (S.D.N.Y. 2016) (finding allegations that foreign defendants "communicated with and transmitted information and funds to and from BLMIS located in New York" were insufficient to "project" the foreign defendants into New York) (internal quotations omitted). As such, any use of New York bank accounts by Schroder AG was incidental to foreign investment contracts that were negotiated and performed entirely abroad and did not create the minimum contacts necessary to exercise specific jurisdiction. *See To v. HSBC Holdings PLC*, No. 15-CV-3590 (LTS), 2017 WL 816136, at *6–7 (S.D.N.Y. Mar. 1, 2017) (contact with U.S. banking system pursuant to foreign feeder fund service contracts does not support jurisdiction); *Hill*, 207 F. Supp. 3d at 339–40 (same).

### C.    Schroder AG's Subscription Agreement with Fairfield Sentry Cannot Establish Personal Jurisdiction in This Action

The Complaint alleges that Schroder AG entered into a subscription agreement with Fairfield Sentry, under which Schroder AG allegedly submitted to New York jurisdiction and sent a copy of the agreement to FGG's New York office. *See* Compl. ¶ 7. The Trustee cannot invoke a forum selection clause in a contract to which he is a stranger to establish this Court's jurisdiction over the subsequent transfer claim that he seeks to advance. *See Lavazza Premium Coffees Corp. v. Prime Line Distributors Inc.*, No. 20 CIV. 9993, 2021 WL 5909976, at *7 (S.D.N.Y. Dec. 10, 2021) (rejecting enforcement of forum selection clause for a non-party plaintiff bringing claims outside of the clause's scope). Additionally, the law of the case disposes of this theory of jurisdiction.

In a related case brought by liquidators of the Fairfield Funds, Judge Bernstein concluded that the execution of certain subscription agreements, without more, did not subject the defendants—including Schroder AG—to personal jurisdiction. *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, No. 10-13164, 2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018). Specifically, Judge Bernstein held that the New York choice of forum provisions in the subscription agreement were not applicable to the disputes concerning subsequent transfers because the liquidators' claim was solely based on redemptions and does not arise out of the subscription agreements. *See id.* at *11 (adhering to the Privy Council's holding "that the Subscription Agreement was irrelevant to actions to recover the inflated redemption payments").

### D.    Personal Jurisdiction Over Schroder AG in This Case Would Not Comply With Constitutional Due Process

The Complaint fails to demonstrate that the exercise of personal jurisdiction over Schroder AG would comport with due process. To be consistent with due process, the Court's exercise of jurisdiction must be reasonable under the circumstances. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("The Due Process Clause . . . gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurances as to where that conduct will and will not render them liable to suit.") (citation omitted). As demonstrated above, the Trustee has not alleged that Schroder AG had any contacts whatsoever with the United States related to the Trustee's claims to recover the alleged subsequent transfers. Accordingly, the exercise of personal jurisdiction over Schroder AG would not comport with due process. *See Walden*, 571 U.S. at 286 ("Due Process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." (quoting *Burger King*, 471 U.S. at 475)).

## <u>CONCLUSION</u>

For the foregoing reasons, Schroder AG respectfully requests that the Court dismiss the

Complaint in its entirety.

Dated:  March 11, 2022
New York, New York

**ROPES & GRAY LLP**

*/s/ Martin J. Crisp*
Martin J. Crisp
Andrew G. Devore
1211 Avenue of the Americas
New York, New York 10036
(212) 596-9193

*Counsel for Defendant Schroder & Co.
Bank AG*

## EXHIBIT I

**BLMIS and Fairfield Funds Transactions Chart**

| Date | BLMIS to Sentry (USD) | Sentry to BLMIS (USD) | Sentry to Sigma (USD) | Sentry to Schroder (USD) | Sigma to Schroder (USD) |
|---|---|---|---|---|---|
| 5/9/2003 | 40,000,000 | | | | |
| 5/14/2003 | | | (1,800,000) | | |
| 7/11/2003 | 55,000,000 | | | | |
| 7/16/2003 | | | (3,000,000) | | |
| 7/22/2003 | 25,000,000 | | | | |
| 8/15/2003 | | | (700,000) | | |
| 9/17/2003 | | | (2,600,000) | | |
| 9/17/2003 | | | (10,500,000) | | |
| 10/14/2003 | | | (600,000) | | |
| 10/23/2003 | | (20,000,000) | | | |
| 11/14/2003 | | (50,000,000) | | | |
| 11/19/2003 | | | (2,150,000) | | |
| 1/21/2004 | | | (8,650,000) | | |
| 1/21/2004 | | (50,000,000) | | | |
| 2/18/2004 | | | (2,150,000) | | |
| 3/10/2004 | | (50,000,000) | | | |
| 3/24/2004 | | | (7,350,000) | | |
| 4/20/2004 | | | (4,700,000) | | |
| 4/20/2004 | | | (8,400,000) | | |
| 5/17/2004 | | | (7,700,000) | | |
| 5/24/2004 | | | | | (195,404) |
| 6/17/2004 | | | (2,500,000) | | |
| 7/16/2004 | | | | (29,865) | |
| 8/13/2004 | | | (3,200,000) | | |
| 8/31/2004 | | (100,000,000) | | | |
| 9/15/2004 | | | (850,000) | | |
| 9/15/2004 | | | | (153,189) | |
| 12/28/2004 | | (100,000,000) | | | |
| 1/14/2005 | | | | (2,443,798) | |
| 3/15/2005 | | | | (61,043) | |
| 4/1/2005 | 175,000,000 | | | | |
| 5/11/2005 | | (50,000,000) | | | |
| 5/13/2005 | | | | (167,185) | |
| 6/15/2005 | | | (9,450,000) | | |
| 7/6/2005 | 85,000,000 | | | | |
| 7/14/2005 | | | | | (46,009) |
| 7/15/2005 | | | (8,300,000) | | |
| 7/15/2005 | | | | (38,029) | |
| 9/2/2005 | 30,000,000 | | | | |

| Date | BLMIS to Sentry (USD) | Sentry to BLMIS (USD) | Sentry to Sigma (USD) | Sentry to Schroder (USD) | Sigma to Schroder (USD) |
|---|---|---|---|---|---|
| 10/3/2005 | 90,000,000 | | | | |
| 10/3/2005 | 90,000,000 | | | | |
| 10/3/2005 | 70,000,000 | | | | |
| 10/14/2005 | | | (16,450,000) | | |
| 10/14/2005 | | | | (11,757) | |
| 10/14/2005 | | | | (141,090) | |
| 11/16/2005 | 185,000,000 | | | | |
| 11/17/2005 | | | (19,200,000) | | |
| 11/17/2005 | | | | (55,388) | |
| 11/17/2005 | | | | (1,340,848) | |
| 11/23/2005 | | | | | (14,264) |
| 12/15/2005 | 85,000,000 | | | | |
| 12/19/2005 | | | (8,250,000) | | |
| 12/19/2005 | | | | (139,728) | |
| 12/19/2005 | | | | (220,621) | |
| 1/10/2006 | 60,000,000 | | | | |
| 1/10/2006 | 55,000,000 | | | | |
| 1/19/2006 | | | (1,500,000) | | |
| 3/16/2006 | 50,000,000 | | | | |
| 3/17/2006 | | | (24,350,000) | | |
| 3/17/2006 | | | | (159,565) | |
| 3/27/2006 | 50,000,000 | | | | |
| 3/27/2006 | 50,000,000 | | | | |
| 4/13/2006 | 120,000,000 | | | | |
| 4/20/2006 | | | (1,600,000) | | |
| 5/15/2006 | | | | (716,219) | |
| 5/24/2006 | | | | | (77,946) |
| 6/26/2006 | | | (11,850,000) | | |
| 8/4/2006 | | (160,000,000) | | | |
| 9/6/2006 | | (150,000,000) | | | |
| 9/18/2006 | | | | | (48,328) |
| 10/5/2006 | | (100,000,000) | | | |
| 10/17/2006 | | | | | (153,703) |
| 11/17/2006 | | | | | (5,994) |
| 12/14/2006 | | | (650,000) | | |
| 1/4/2007 | | (500,000,000) | | | |
| 1/15/2007 | | | | (13,889,216) | |
| 1/16/2007 | | | | (264,716) | |
| 2/12/2007 | | (175,000,000) | | | |

| Date | BLMIS to Sentry (USD) | Sentry to BLMIS (USD) | Sentry to Sigma (USD) | Sentry to Schroder (USD) | Sigma to Schroder (USD) |
|---|---|---|---|---|---|
| 3/15/2007 | | | | | (10,180) |
| 5/3/2007 | | (100,000,000) | | | |
| 6/7/2007 | | (100,000,000) | | | |
| 6/15/2007 | | | (3,750,000) | | |
| 6/19/2007 | | | | | (699,597) |
| 8/6/2007 | | (100,000,000) | | | |
| 8/17/2007 | | | | (152,890) | |
| 9/6/2007 | 65,000,000 | | | | |
| 9/19/2007 | | | (12,500,000) | | |
| 9/28/2007 | | | (2,255,802) | | |
| 10/3/2007 | 95,000,000 | | | | |
| 10/16/2007 | | | | (256,446) | |
| 11/6/2007 | | (110,000,000) | | | |
| 11/19/2007 | | | | (139,017) | |
| 11/19/2007 | | | | (295,763) | |
| 11/19/2007 | | | | (1,014,309) | |
| 11/23/2007 | | | (1,850,000) | | |
| 1/11/2008 | 70,000,000 | | | | |
| 1/17/2008 | | | | (14,208) | |
| 1/17/2008 | | | (37,600,000) | | |
| 2/15/2008 | | | | (133,704) | |
| 3/13/2008 | | (60,000,000) | | | |
| 3/18/2008 | | | | (6,503) | |
| 4/14/2008 | | | | (169,635) | |
| 4/14/2008 | | | | (195,447) | |
| 5/5/2008 | 80,000,000 | | | | |
| 5/15/2008 | | | (28,000,000) | | |
| 5/15/2008 | | | | (35,914) | |
| 5/31/2008 | | | (147,049) | | |
| 6/18/2008 | | | | | (1,797,951) |
| 6/30/2008 | | | (161,054) | | |
| 6/30/2008 | | | (1,960,013) | | |
| 7/10/2008 | 20,000,000 | | | | |
| 7/15/2008 | | | (44,000,000) | | |
| 8/1/2008 | | (80,000,000) | | | |
| 8/15/2008 | | | | | (79,897) |
| 8/18/2008 | | | | (21,350) | |
| 9/4/2008 | 120,000,000 | | | | |

| Date | BLMIS to Sentry (USD) | Sentry to BLMIS (USD) | Sentry to Sigma (USD) | Sentry to Schroder (USD) | Sigma to Schroder (USD) |
|---|---|---|---|---|---|
| 9/16/2008 | | | (62,100,000) | | |
| 10/3/2008 | 150,000,000 | | | | |
| 10/15/2008 | | | (41,500,000) | | |
| 10/23/2008 | 130,000,000 | | | | |
| 10/24/2008 | | | (130,000,000) | | |
| 11/4/2008 | 450,000,000 | | | | |
| 11/4/2008 | 400,000,000 | | | | |
| 11/19/2008 | | | (218,000,000) | | |
| 11/19/2008 | | | | (13,498) | |
| 11/19/2008 | | | | (76,937) | |
| 11/19/2008 | | | | (83,686) | |
| 11/19/2008 | | | | (251,342) | |
| 11/19/2008 | | | | (2,423,894) | |
| 11/21/2008 | | | | | (286,658) |
| **TOTALS** | **2,895,000,000** | **(2,055,000,000)** | **(752,273,918)** | **(25,1116,800)** | **(3,415,931)** |