**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | Adv. Pro. No. 12-01210 (CGM) |
| Plaintiff, | |
| v. | |
| SCHRODER & CO. BANK AG, | |
| Defendant. | |

**DECLARATION OF ANDREW G. DEVORE IN**
**SUPPORT OF SCHRODER & CO. BANK AG'S MEMORANDUM**
**OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

I, Andrew G. Devore, hereby declare, under penalty of perjury under the laws of the United

States:

1.      I am a member of the law firm of Ropes & Gray LLP, counsel to Schroder & Co.

Bank AG ("Schroder AG") in above-captioned action.  I am admitted to practice before this Court.

2.      I submit this declaration in connection with Schroder AG's Motion to Dismiss the

Complaint (the "<u>Motion</u>").  Capitalized terms used herein shall have the meaning given in the

Motion.

3.      Attached hereto as Exhibits A through B, to the best of my knowledge and belief,

are true and correct copies of the following documents:

| Exhibit | Description |
|---------|-------------|
| A | Commercial Register of the Canton of Zurich, Ref. No. CHE-105.947.172 and its English translation, as filed in *Fairfield Sentry Ltd. v. Schroder & Co. Bank AG (In re Fairfield Sentry Limited)*, Adv. Pro. No. 11-01249 |
| B | Fairfield Sentry Ltd. v. Migani, [2014] UKPC 9 Judgment |

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed at Boston, Massachusetts, this 11th day of March, 2022.

*/s/ Andrew G. Devore*
Andrew G. Devore

## EXHIBIT A

**Commercial Register of the Canton of Zurich, Ref. No. CHE-105.947.172
and its English translation**



# Commercial register of canton Zurich

| Identification number | Legal status | | Entry | Cancelled | Carried CH-020.3.923.094-0 from: CH-020.3.923.094-0/b on: | 1 |
|---|---|---|---|---|---|---|
| **CHE-105.947.172** | **Limited or Corporation** | | 22.02.1967 | | | |

All datas

| In | Ca | Business name | Ref | Legal seat |
|---|---|---|---|---|
| 1 | | **Schroder & Co Bank AG** | 1 | Zürich |
| 1 | | (Schroder & Co Banque SA) (Schroder & Co Banca SA) (Schroder & Co Bank Ltd) (Schroder & Co Banco SA) | | |

| In | Ca | Share capital (CHF) | Paid in (CHF) | Shares | In | Ca | Company address |
|---|---|---|---|---|---|---|---|
| 1 | | 60'000'000.00 | 60'000'000.00 | 60'000 Namenaktien zu CHF 1'000.00 | 1 | | Central 2 8001 Zürich |

| In | Ca | Purpose | In | Ca | Other addresses |
|---|---|---|---|---|---|
| 1 | | Zweck der Gesellschaft ist der Betrieb einer Bank mit internationaler Orientierung. Im Rahmen dieser Zielsetzung erstreckt sich die Tätigkeit der Bank insbesondere auf folgende Geschäftszweige: 1. Passivgeschäft in allen banküblichen Formen unter Ausschluss von Spareinlagen; 2. Aktivgeschäft in allen banküblichen Formen; 3. Devisengeschäft und Edelmetallhandel für eigene und fremde Rechnung; 4. Wertpapierverwaltungs- und Handelsgeschäft für eigene und fremde Rechnung, einschliesslich Anlagen in ausländischen Wertpapieren; 5. Vermögensverwaltung und Anlageberatung, einschliesslich Beratung beim Kauf und Verkauf von Kunstgegenständen; 6. Errichtung von Anlagefonds sowie Erbringung sämtlicher banküblichen Finanzdienstleistungen; 7. Kautionsgeschäft und Akkreditive; 8. Emissionsgeschäft einschliesslich Beteiligung an Syndikaten; 9. Durchführung aller banküblichen Treuhandgeschäfte; 10. Aufbewahrung von Wertpapieren und Wertgegenständen aller Art; 11. Erbringung von Dienstleistungen zur Unterstützung des Bank- und Vermögensverwaltungsgeschäfts von Gesellschaften der Schroders Gruppe. Die Gesellschaft kann im weiteren Beteiligungen und Grundstücke erwerben, verwalten und veräussern, Unternehmungen gründen, vertreten und beraten und alle Geschäfte durchführen, die zur Erreichung des Gesellschaftszweckes geeignet sind. Die Gesellschaft kann im In- und Ausland Zweigniederlassungen und Tochtergesellschaften sowie Vertretungen errichten. | | | |

| In | Ca | Remarks | Ref | Date of the acts |
|---|---|---|---|---|
| 1 | | Mitteilungen an Aktionäre erfolgen schriftlich an die im Aktienbuch eingetragene Adresse. | 1 | 16.07.1971 |
| 1 | | Die Übertragbarkeit der Namenaktien ist nach Massgabe der Statuten beschränkt. | 1 | (5326/1971) |
| 1 | | Die ordentliche Kapitalerhöhung vom 24.06.2008 erfolgt durch Umwandlung von frei verwendbarem Eigenkapital. | 1 | 19.11.1993 |
| | | | 1 | 09.11.2000 |
| | | | 1 | 24.06.2008 |
| | | | 11 | 16.04.2015 |

| In | Ca | Qualified facts | Ref | Official publication |
|---|---|---|---|---|
| 25 | | Vermögensübertragung: Die Gesellschaft überträgt gemäss Vertrag vom 30.11.2018 Aktiven von CHF 135'121'683.62 und Passiven (Fremdkapital) von CHF 134'121'683.62 auf die CBH Compagnie Bancaire Helvétique SA, in Genf (CHE-107.993.131). Gegenleistung: CHF 1'000'000.00 | 1 | SHAB |

| In | Ca | Branch offices | In | Ca | Branch offices |
|---|---|---|---|---|---|
| 1 | 10 | Genf | | | |
| 10 | | Genf (CHE-266.175.281) | | | |

| Vis | Ref | Journal | Date | SOGC | Date SOGC | Page / Id | Vis | Ref | Journal | Date | SOGC | Date SOGC | Page / Id |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 0 | (Transfer) | | | (Transfer) | | | 17 | 10606 | 19.03.2018 | 57 | 22.03.2018 | 4128079 |
| | 1 | 31542 | 03.10.2013 | 194 | 08.10.2013 | 1115429 | | 18 | 11193 | 22.03.2018 | 60 | 27.03.2018 | 4135973 |
| | 2 | 39994 | 11.12.2013 | 243 | 16.12.2013 | 1237047 | | 19 | 19636 | 04.06.2018 | 108 | 07.06.2018 | 4274657 |
| | 3 | B 40568 | 16.12.2013 | B 246 | 19.12.2013 | 1245677 | | 20 | 23042 | 27.06.2018 | 125 | 02.07.2018 | 4327489 |
| | 4 | 2460 | 20.01.2014 | 15 | 23.01.2014 | 1303691 | | 21 | 26563 | 20.07.2018 | 142 | 25.07.2018 | 4380287 |
| | 5 | 9314 | 13.03.2014 | 53 | 18.03.2014 | 1402469 | | 22 | 27944 | 02.08.2018 | 150 | 07.08.2018 | 4400507 |
| | 6 | 17313 | 22.05.2014 | 101 | 27.05.2014 | 1523393 | | 23 | 31798 | 05.09.2018 | 174 | 10.09.2018 | 1004451960 |

# Commercial register of canton Zurich

| CHE-105.947.172 | Schroder & Co Bank AG | Zürich | 2 |
|---|---|---|---|

All datas

| Vis | Ref | Journal | Date | SOGC | Date SOGC | Page / Id | Vis | Ref | Journal | Date | SOGC | Date SOGC | Page / Id |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 7 | 31211 | 23.09.2014 | 186 | 26.09.2014 | 1735611 | | 24 | 36169 | 09.10.2018 | 198 | 12.10.2018 | 1004475271 |
| | 8 | 1476 | 12.01.2015 | 9 | 15.01.2015 | 1931593 | | 25 | 43118 | 30.11.2018 | 235 | 04.12.2018 | 1004511497 |
| | 9 | 2362 | 16.01.2015 | 13 | 21.01.2015 | 1942383 | | 26 | 46799 | 20.12.2018 | 250 | 27.12.2018 | 1004530436 |
| | 10 | 19937 | 05.06.2015 | 109 | 10.06.2015 | 2197329 | | 27 | B 20764 | 28.05.2019 | B 105 | 03.06.2019 | 1004642524 |
| | 11 | 30537 | 31.08.2015 | 170 | 03.09.2015 | 2353669 | | 28 | 23428 | 18.06.2019 | 118 | 21.06.2019 | 1004656583 |
| | 12 | 35107 | 07.10.2015 | 197 | 12.10.2015 | 2420413 | | 29 | 35883 | 16.09.2019 | 181 | 19.09.2019 | 1004719303 |
| | 13 | 2801 | 20.01.2016 | 16 | 25.01.2016 | 2615815 | | 30 | 41174 | 23.10.2019 | 208 | 28.10.2019 | 1004745820 |
| | 14 | 32978 | 21.09.2016 | 186 | 26.09.2016 | 3072791 | | 31 | B 41744 | 28.10.2019 | B 211 | 31.10.2019 | 1004748841 |
| | 15 | 2419 | 16.01.2018 | 13 | 19.01.2018 | 4001447 | | 32 | 42725 | 04.11.2019 | 216 | 07.11.2019 | 1004753973 |
| | 16 | 9620 | 09.03.2018 | 51 | 14.03.2018 | 4110759 | | 33 | N 43316 | 07.11.2019 | N 219 | 12.11.2019 | 1004757111 |

| In | Mo | Ca | Personal Data | Function | Signature |
|---|---|---|---|---|---|
| 1 | | 15 | von Mallinckrodt, Philip S., deutscher Staatsangehöriger, in London (GB) | president of the board of directors | joint signature at two |
| 1 | | 14 | Bochud, Dr. François Romain, von Basel, in Zürich | member of the board of directors | joint signature at two |
| 1 | | 15 | Rütimann, Markus, von Meilen und Basadingen, in London (UK) | member of the board of directors | joint signature at two |
| 1 | | | Eckert, Dr. Martin, von Zürich und Thalwil, in Zürich | member of the board of directors | joint signature at two |
| 1 | | | Marchand, Jean Claude, von Sonvilier, in Collonge-Bellerive | member of the board of directors | joint signature at two |
| 1 | | 14 | Roguet, Jean-Charles, von Genf, in Collonge-Bellerive | member of the board of directors | joint signature at two |
| 1 | | 5m | PricewaterhouseCoopers AG (CH-020.3.020.876-5), in Zürich | auditor | |
| 1 | | | Basler, Karin, von Wiesendangen, in Arni AG | | joint signature at two |
| 1 | | 14 | Borsari, Andreas, von Lugano, in Uetikon am See | | joint signature at two |
| 1 | | | Brander, Jonathan, von Hemberg, in Winterthur | | joint signature at two |
| 1 | | | Charles, Dragana, von Luzern, in Kilchberg ZH | | joint signature at two |
| 1 | | 23 | Cymberg, Romain, französischer Staatsangehöriger, in Genève | | joint signature at two |
| 1 | | | D'Andrea, Sergio, italienischer Staatsangehöriger, in Dübendorf | | joint signature at two |
| 1 | | 13 | De Fratis, Simone, von Aarau, in Aarau | | joint signature at two |
| 1 | | | Diyenis, Leonidas, griechischer Staatsangehöriger, in Oberglatt | | joint signature at two |
| 1 | | | Ducry, Pascal, von Zürich, in Meilen | | joint signature at two |
| 1 | | 8 | Egli, Jürg, von Alt St. Johann, in Zürich | | joint signature at two |
| 1 | | | Fadda, Fabio, italienischer Staatsangehöriger, in Egg | | joint signature at two |
| 1 | | 10 | Favre, Pierre Louis, von Chamoson, in Adliswil | | joint signature at two |
| 1 | | 14 | Fehrensen, Benjamin, von Langenthal, in Langenthal | | joint signature at two |
| 1 | | 12 | Giger, Claudia, von Winterthur, in Herrliberg | | joint signature at two |
| 1 | | 8 | Hähnlein, Anja, deutsche Staatsangehörige, in Altendorf | | joint signature at two |
| 1 | | 12 | Hollenstein, Sandra, von Mosnang, in Hittnau | | joint signature at two |
| 1 | | 10 | Hunn, Roland, von Sarmenstorf, in Zürich | | joint signature at two |
| 1 | | 10 | Hunziker, Jean Jacques, von Kirchleerau, in Zürich | | joint signature at two |
| 1 | | | Jäggi, Patrick, von Zürich und Wiesendangen, in Zürich | | joint signature at two |
| 1 | | | Kiepert, Michael, von Balsthal, in Erlenbach ZH | | joint signature at two |
| 1 | | 12 | Kristínová, Blanka, slowakische Staatsangehörige, in Muri bei Bern | | joint signature at two |
| 1 | | 10 | Liebi, Martin, von Thun, in Porza | | joint signature at two |
| 1 | | | Mikusi, Peter, von Pfäffikon, in Lachen | | joint signature at two |
| 1 | | 23 | Missura Bürki, Stephan, von Bettlach, in Flaach | | joint signature at two |
| 1 | | 13 | Mühlinghaus, Matthias, von Kilchberg ZH, in Regensdorf | | joint signature at two |
| 1 | | | Nösberger, Adrian, von St. Antoni, in Zollikon | | joint signature at two |
| 1 | | | Pierrel Hutin, Cynthia, von Dardagny, in Bernex | | joint signature at two |

Continuation on the following page

# Commercial register of canton Zurich

| CHE-105.947.172 | Schroder & Co Bank AG | Zürich | 3 |
|---|---|---|---|

All datas

| In | Mo | Ca | Personal Data | Function | Signature |
|---|---|---|---|---|---|
| 1 | | | Pobuda, Jan, von Zürich, in Wangen-Brüttisellen | | joint signature at two |
| 1 | | | Podany, Martin, von Baar, in Zürich | | joint signature at two |
| 1 | | 23 | ~~Resetar, Kristina, von Dietikon, in Zürich~~ | | ~~joint signature at two~~ |
| 1 | | | Richener, Carole, von Signau, in Wil SG | | joint signature at two |
| 1 | | 12 | ~~Riviera, Roberta, von Collonge-Bellerive, in Collonge-Bellerive~~ | | ~~joint signature at two~~ |
| 1 | | | Rossi, Michel, von Mendrisio, in Hombrechtikon | | joint signature at two |
| 1 | | 8 | ~~Scheiwiller, Heinz, von Waldkirch, in Küsnacht ZH~~ | | ~~joint signature at two~~ |
| 1 | | 22 | ~~Spörndli, Michael, von Schaffhausen, in Otelfingen~~ | | ~~joint signature at two~~ |
| 1 | | | Tschuor, Daniel, von Sumvitg, in Oberrieden | | joint signature at two |
| 1 | | | Ullrich, Tobias, von Stäfa, in Sarmenstorf | | joint signature at two |
| 1 | | | Ungricht, Andreas, von Zürich, in Maur | | joint signature at two |
| 1 | | | Urena Almonte-Espinola, Alexandra, von Hasle bei Burgdorf, in Opfikon | | joint signature at two |
| 1 | | | Vuagnat, Alexandra, von Jussy, in Gaillard (FR) | | joint signature at two |
| 1 | | 14 | ~~Wetter, Rosmarie, von Appenzell, in Zürich~~ | | ~~joint signature at two~~ |
| 1 | | | Wohnlich, Sandra, von Basel und Salmsach, in Uster | | joint signature at two |
| 1 | | 23m | ~~Wunderlin, Lea, von Zeiningen, in Pfeffikon~~ | | ~~joint signature at two~~ |
| 1 | | 12 | ~~Zaglia, Paolo, italienischer Staatsangehöriger, in Monaco (MC)~~ | | ~~joint signature at two~~ |
| 1 | | | Bachmann, Rolf, von Bülach, in Hütten | | joint signature at two limited to the main office |
| 1 | | | Birrer, Markus Beat, von Grosswangen, in Rapperswil-Jona | | joint signature at two limited to the main office |
| 1 | | 10 | ~~Bochsler, Beat B., von Winterthur, in Winterthur~~ | | ~~joint signature at two limited to the main office~~ |
| 1 | | | Brack, Andreas, von Elfingen, in Riniken | | joint signature at two limited to the main office |
| 1 | | | Brändle, Walter, von Mosnang, in Rüti ZH | | joint signature at two limited to the main office |
| 1 | | 8m | ~~Brechbühl, Isabelle, von Trubschachen, in Rüschlikon~~ | | ~~joint signature at two limited to the main office~~ |
| 1 | | | Brestel, Norbert, deutscher Staatsangehöriger, in Zollikon | | joint signature at two limited to the main office |
| 1 | | | Briggen, Monica, von Spiez, in Adliswil | | joint signature at two limited to the main office |
| 1 | | | Bühler, Christian, von Rothrist, in Buchs ZH | | joint signature at two limited to the main office |
| 1 | | | Christen, Alfred, von Oberdorf NW, in Brugg | | joint signature at two limited to the main office |
| 1 | | 9m | ~~Dowse, David Paul, amerikanischer Staatsangehöriger, in Diepflingen~~ | | ~~joint signature at two limited to the main office~~ |
| 1 | | 10 | ~~Engel, Dietmar, deutscher Staatsangehöriger, in Affoltern am Albis~~ | | ~~joint signature at two limited to the main office~~ |
| 1 | | 28 | ~~Engeler, Markus, von Bischofszell, in Langnau am Albis~~ | | ~~joint signature at two limited to the main office~~ |
| 1 | | 12 | ~~Enz-Keller, Gisela, von Zürich, in Herrliberg~~ | | ~~joint signature at two limited to the main office~~ |
| 1 | | | Eugster, Bernhard, von Bühler, in Zürich | | joint signature at two limited to the main office |
| 1 | | 18 | ~~Fischer, Rolf, von Oftringen, in Zofingen~~ | | ~~joint signature at two limited to the main office~~ |
| 1 | | 12 | ~~Foiada, Andrea, von Contone, in Bonstetten~~ | | ~~joint signature at two limited to the main office~~ |
| 1 | | | Gnos, Andreas, von Silenen, in Zürich | | joint signature at two limited to the main office |

Zürich, 20.11.2019

Continuation on the following page

# Commercial register of canton Zurich

| CHE-105.947.172 | Schroder & Co Bank AG | | Zürich | 4 |
|---|---|---|---|---|

All datas

| In | Mo | Ca | Personal Data | Function | Signature |
|---|---|---|---|---|---|
| 1 | | | Gut, Thomas, von Dübendorf und Grossdietwil, in Bülach | | joint signature at two limited to the main office |
| 1 | | 12 | ~~Heil, Michael, von Zürich, in Glarus~~ | | ~~joint signature at two limited to the main office~~ |
| 1 | | | Heule, Roland, von Widnau, in Adliswil | | joint signature at two limited to the main office |
| 1 | | 17 | ~~Isaak, Marco, von Luzern, in Rafz~~ | | ~~joint signature at two limited to the main office~~ |
| 1 | | 15 | ~~Keller, Jürg, von Sommeri, in Zürich~~ | | ~~joint signature at two limited to the main office~~ |
| 1 | | | Klingler, Jürg, von Oberbüren, in Richterswil | | joint signature at two limited to the main office |
| 1 | | | Knöpfli, Barbara, von Lengwil, in Schwerzenbach | | joint signature at two limited to the main office |
| 1 | | | Kräuchi, Markus, von Niederösch, in Opfikon | | joint signature at two limited to the main office |
| 1 | | | Kuratle, Christoph, von St. Gallen, in Bauma | | joint signature at two limited to the main office |
| 1 | | | Lampart, Yvonne, von Fischbach, in Thalwil | | joint signature at two limited to the main office |
| 1 | | 12 | ~~Mahmud, Rifat, von Zürich und Biel/Bienne, in Zürich~~ | | ~~joint signature at two limited to the main office~~ |
| 1 | | | Mayor, Laurent, von Evolène und Saint-Martin VS, in Zürich | | joint signature at two limited to the main office |
| 1 | | 30 | ~~Nacario, Geraldine, philippinische Staatsangehörige, in Seuzach~~ | | ~~joint signature at two limited to the main office~~ |
| 1 | | | Perschl, Andreas, von Walenstadt, in Dällikon | | joint signature at two limited to the main office |
| 1 | | 8 | ~~Petritz, Anja, österreichische Staatsangehörige, in Wädenswil~~ | | ~~joint signature at two limitted to the main office~~ |
| 1 | | | Piscitelli, Antonio, italienischer Staatsangehöriger, in Embrach | | joint signature at two limited to the main office |
| 1 | | | Rechberger, Günter, von Dürnten, in Zürich | | joint signature at two limited to the main office |
| 1 | | 8 | ~~Riedl, Bettina, deutsche Staatsangehörige, in Dietlikon~~ | | ~~joint signature at two limitted to the main office~~ |
| 1 | | | Rigoni, Sacha, von Gorduno, in Zürich | | joint signature at two limited to the main office |
| 1 | | 26 | ~~Rihner, Alfred, von Zürich, in Baden~~ | | ~~joint signature at two limited to the main office~~ |
| 1 | | 2 | ~~Rüede, Reto, von Zürich, in Wallisellen~~ | | ~~joint signature at two limited to the main office~~ |
| 1 | | 2 | ~~Rüegg, Rainer, von Zürich, in Zürich~~ | | ~~joint signature at two limited to the main office~~ |
| 1 | | 23 | ~~Saiti, Erika, von Muhen, in Zürich~~ | | ~~joint signature at two limited to the main office~~ |
| 1 | | 13 | ~~Saly, Katrin, von Fislisbach, in Horgen~~ | | ~~joint signature at two limitted to the main office~~ |
| 1 | | | Scanzoni, Stefano, von Regensdorf, in Rorbas | | joint signature at two limited to the main office |
| 1 | | 13 | ~~Schenkel, Brigitte, von Diemerswil, in Zürich~~ | | ~~joint signature at two limited to the main office~~ |
| 1 | | | Schenker, Liliane, von Däniken, in Buchs ZH | | joint signature at two limited to the main office |

# Commercial register of canton Zurich

| CHE-105.947.172 | Schroder & Co Bank AG | | Zürich | 5 |
|---|---|---|---|---|

All datas

| In | Mo | Ca | Personal Data | Function | Signature |
|---|---|---|---|---|---|
| 1 | | | Scherer, Esther, von Illnau-Effretikon und Basel, in Jona | | joint signature at two limited to the main office |
| 1 | | 15 | ~~Schmid, Christian, von Niederwil AG, in Russikon~~ | | ~~joint signature at two limited to the main office~~ |
| 1 | | 26 | ~~Spahni, Daniel, von Niedermuhlern, in Niederhasli~~ | | ~~joint signature at two limited to the main office~~ |
| 1 | | 14 | ~~Stähli, Daniel, von Rapperswil BE, in Zürich~~ | | ~~joint signature at two limited to the main office~~ |
| 1 | | 8 | ~~Strampfer, Tania, von Sumvitg, in Wettingen~~ | | ~~joint signature at two limited to the main office~~ |
| 1 | | | Ursprung, Marcel Andreas, von Ueken, in Dietikon | | joint signature at two limited to the main office |
| 1 | | | Vonwyl, Liza, von Menznau, in Zürich | | joint signature at two limited to the main office |
| 1 | | | Wachholz, Andreas, deutscher Staatsangehöriger, in Niederhasli | | joint signature at two limited to the main office |
| 1 | | 2 | ~~Weber, Johannes Paul, von Basel, in Zürich~~ | | ~~joint signature at two limited to the main office~~ |
| 1 | | | Weber, Alexander, von Heiden, in Birmensdorf ZH | | joint signature at two limited to the main office |
| 1 | | | Weber, Reto, von Menzingen, in Affoltern am Albis | | joint signature at two limited to the main office |
| 1 | | | West, Alice, von Nesslau-Krummenau, in Thalwil | | joint signature at two limited to the main office |
| 1 | | | Winiger, Urs, von Zürich, in Zug | | joint signature at two limited to the main office |
| 1 | | | Wyss, Remo, von Wynigen, in Oberengstringen | | joint signature at two limited to the main office |
| 1 | | | Yudkin, Mark, britischer Staatsangehöriger, in Zürich | | joint signature at two limited to the main office |
| 1 | | | Zampatti Radtke, Domenica, von Brusio, in Schübelbach | | joint signature at two limited to the main office |
| 2 | | | Alig, Alois Rudolf, von Obersaxen, in Steinmaur | | joint signature at two |
| 2 | | 23 | ~~Balhaut, Daniel Raymond Maria, belgischer Staatsangehöriger, in Wallisellen~~ | | ~~joint signature at two~~ |
| 2 | | | Blatter, René Fritz, von Walzenhausen, in Wangen SZ | | joint signature at two |
| 2 | | 8 | ~~Fischer, Fabian Guido, von Zürich, in Zürich~~ | | ~~joint signature at two~~ |
| 2 | | | Ligtenberg, Jacobus Louis, von Lauperswil, in Adliswil | | joint signature at two |
| 2 | | | Pamay, Ugur, von Winterthur, in Wädenswil | | joint signature at two |
| 2 | | 3m | ~~Scacchi-Schupp, Karin BarbaraMaur, von Maur, in Maur~~ | | ~~joint signature at two~~ |
| 2 | | 14 | ~~Sinn, Martin Alexander, deutscher Staatsangehöriger, in Freienbach~~ | | ~~joint signature at two~~ |
| 2 | | | Wohlgensinger, Marc Erich, von Mosnang, in Volketswil | | joint signature at two |
| 2 | | | Worpa, Tseten Pasang, von Horgen, in Horgen | | joint signature at two |
| | 3 | | Scacchi-Schupp, Karin Barbara, von Maur, in Maur | | joint signature at two |
| 4 | | | Bannwart, Fabian Yves, von Luzern, in Zürich | | joint signature at two |
| 4 | | 6 | ~~Vetsch, Martin, von Zürich, in Hedingen~~ | | ~~joint signature at two~~ |
| 4 | | | Zeugin, Patrick Michel, von Duggingen, in Illnau-Effretikon | | joint signature at two |
| | 5 | 18 | ~~PricewaterhouseCoopers AG (CHE-106.839.438), in Zürich~~ | ~~auditor~~ | |
| 5 | | 8 | ~~Ackermann, Gabriela, von Hendschiken, in Bubikon~~ | | ~~joint signature at two~~ |
| 5 | | 30 | ~~Domig, Joni, deutsche Staatsangehörige, in Stein AG~~ | | ~~joint signature at two~~ |
| 5 | | 23m | ~~Edhemi, Isak, von Greifensee, in Greifensee~~ | | ~~joint signature at two~~ |
| 5 | | | Lorenz, Benjamin, von Oberhelfenschwil, in Böttstein | | joint signature at two |
| 5 | | 30 | ~~Moser, Bruno, von Rothenthurm, in Rothenthurm~~ | | ~~joint signature at two~~ |

# Commercial register of canton Zurich

| CHE-105.947.172 | Schroder & Co Bank AG | Zürich | 6 |
|---|---|---|---|

All datas

| In | Mo | Ca | Personal Data | Function | Signature |
|---|---|---|---|---|---|
| 5 | | | Restivo, Angelo, italienischer Staatsangehöriger, in Baden | | joint signature at two |
| 5 | | | Stadler, Sven, von Aadorf, in Bubikon | | joint signature at two |
| 5 | | | Wirz, Reinhard, von Zürich, in Buchs ZH | | joint signature at two |
| 6 | | | Hess, Patrizia, von Amriswil, in Maur | | joint signature at two |
| 6 | | | Lenhart, Robert, von Zürich, in Zürich | | joint signature at two |
| 6 | | 8 | ~~Martin, Ulrich Arndt, deutscher Staatsangehöriger, in Fislisbach~~ | | ~~joint signature at two~~ |
| 6 | | | Muffler, Daniela, von Küsnacht ZH, in Reiden | | joint signature at two |
| 6 | | | Tahmaz, Jasmina, von Zürich, in Meilen | | joint signature at two |
| 6 | | | Tipura, Emir, von St. Gallen, in Dübendorf | | joint signature at two |
| 7 | | | Botrugno, Adriano Michele, italienischer Staatsangehöriger, in Zürich | | joint signature at two |
| 7 | | 15 | ~~Paz, Maurizio, von Zürich, in Zürich~~ | | ~~joint signature at two~~ |
| 7 | | 15 | ~~Thüring, Peter, von Schönenbuch, in Wallisellen~~ | | ~~joint signature at two~~ |
| 7 | | 15 | ~~Wyler, Patrick, von Wädenswil, in Wallisellen~~ | | ~~joint signature at two~~ |
| 8 | | | Althaus, Roger, von Olten, in Zufikon | | joint signature at two |
| 8 | | | Capelle, Annette Christine, von Lenzburg, in Volketswil | | joint signature at two |
| 8 | | 14 | ~~Eberl, Adelheid, deutsche Staatsangehörige, in Rapperswil-Jona~~ | | ~~joint signature at two~~ |
| 8 | | 15 | ~~Hrabowski, Regula Irene, von Zürich, in Uetikon am See~~ | | ~~joint signature at two~~ |
| 8 | | | Jucker, Res Marcel, von Zürich, in Zürich | | joint signature at two |
| 8 | | 30 | ~~Mutschlechner, Manuel, italienischer Staatsangehöriger, in Zürich~~ | | ~~joint signature at two~~ |
| 8 | | | Oexl, Oliver, von Schmiedrued, in Ermatingen | | joint signature at two |
| 8 | | | Wernli, Silvia, von Zürich, in Zürich | | joint signature at two |
| 8 | | 13 | ~~Wyss, René Hans, von Landiswil, in Thalwil~~ | | ~~joint signature at two~~ |
| | 8 | | Blöchlinger-Brechbühl, Isabelle, von Trubschachen, in Rüschlikon | | joint signature at two limited to the main office |
| | 9 | 10m | ~~Dowse, David Paul, von Diepflingen, in Diepflingen~~ | | ~~joint signature at two limited to the main office~~ |
| 10 | | | Bellmann, Petra, von Egolzwil, in Schwerzenbach | | joint signature at two |
| 10 | | 23m | ~~Bergomi, Claire, von Onsernone und britische Staatsangehörige, in Onex~~ | | ~~joint signature at two~~ |
| 10 | | | Bonnevier, Sebastian, schwedischer Staatsangehöriger, in Genève | | joint signature at two |
| 10 | | | Brack, Alicia-Maria, von Zug, in Zug | | joint signature at two |
| 10 | | | Brodard, Marc, von La Roche, in Genolier | | joint signature at two |
| 10 | | | Clavijo, Mélanie, von Ecublens VD, in Genève | | joint signature at two |
| 10 | | 28 | ~~D'Elia, Davide, von Mettmenstetten, in Mettmenstetten~~ | | ~~joint signature at two~~ |
| | 10 | | Dowse, David Paul, von Diepflingen, in Diepflingen | | joint signature at two |
| 10 | | | Handschin, Stefan, von Rickenbach BL, in Zürich | | joint signature at two |
| 10 | | | Hunter, Russel, britischer Staatsangehöriger, in Genève | | joint signature at two |
| 10 | | | Karli, Felix, von Bülach, in Küsnacht ZH | | joint signature at two |
| 10 | | | Lanier, Annemarie, von Untervaz, in Untervaz | | joint signature at two |
| 10 | | | Lengacher, Patrik, von Aeschi bei Spiez, in Massagno | | joint signature at two |
| 10 | | | Llanderrozas Chao, Roberto, von Zürich, in Zürich | | joint signature at two |
| 10 | | | Purhooa, Brigitte, von Kandersteg, in Begnins | | joint signature at two |
| 10 | | | Reumer, Patrick, von Zürich, in Bremgarten AG | | joint signature at two |
| 10 | | | Rhyner, Silvia, von Schönenberg ZH, in Gachnang | | joint signature at two |
| 10 | | 12 | ~~Scettrini, Luca, von Corippo, in Kloten~~ | | ~~joint signature at two~~ |
| 10 | | 14 | ~~Thomas, David, britischer Staatsangehöriger, in Marcellaz (FR)~~ | | ~~joint signature at two~~ |
| 10 | | | Toubkin, Andre, britischer Staatsangehöriger, in Echeneveux (FR) | | joint signature at two |
| 12 | | | Annaheim, Lukas, von Lostorf, in Olten | | joint signature at two |
| 12 | | 15 | ~~Delsman, Christopher Edwards, amerikanischer Staatsangehöriger, in Zürich~~ | | ~~joint signature at two~~ |

Continuation on the following page

# Commercial register of canton Zurich

| CHE-105.947.172 | Schroder & Co Bank AG | | Zürich | 7 |
|---|---|---|---|---|

All datas

| In | Mo | Ca | Personal Data | Function | Signature |
|---|---|---|---|---|---|
| 12 | | 14 | ~~Fedorova, Ekaterina, von Sachseln, in Bassersdorf~~ | | ~~joint signature at two~~ |
| 12 | | | Häberling, Rolf, von Ottenbach, in Leuggern | | joint signature at two |
| 12 | | | Leonardo, Giovanni, italienischer Staatsangehöriger, in Rüti ZH | | joint signature at two |
| 12 | | | Makowski, Silvia, von St. Gallen, in Zürich | | joint signature at two |
| 12 | | | Niffenegger Noda, Floriane, von Signau, in Genève | | joint signature at two |
| 12 | | 17 | ~~Oral, Sevban, von Höri, in Rümlang~~ | | ~~joint signature at two~~ |
| 12 | | 26 | ~~Rösch, Andreas, von Schaffhausen, in Nürensdorf~~ | | ~~joint signature at two~~ |
| 12 | | 16 | ~~Schelbert, Lukas, von Ingenbohl, in Schwyz~~ | | ~~joint signature at two~~ |
| 13 | | | Conoci, Mauro, von Zürich, in Wangen-Brüttisellen | | joint signature at two |
| 13 | | | Gökmen, Ariel Sergio, von Zürich, in Zürich | | joint signature at two |
| 13 | | 21 | ~~Hauser, Isabelle, von Wädenswil, in Zürich~~ | | ~~joint signature at two~~ |
| 13 | | 23 | ~~Knecht, Larissa, von Uster, in Illnau-Effretikon~~ | | ~~joint signature at two~~ |
| 13 | | | Kofmehl Hofer, Béatrice, von Lausanne, in Genève | | joint signature at two |
| 13 | | | Koutras, Michael, von Adlikon, in Zürich | | joint signature at two |
| 13 | | 26 | ~~Nemykina, Zhanna, deutsche Staatsangehörige, in Zürich~~ | | ~~joint signature at two~~ |
| 13 | | | Regadera, Aitor, von La Tène, in Opfikon | | joint signature at two |
| 14 | | | Mäder, Stefan, von Opfikon, in Zürich | member of the board of directors | joint signature at two |
| 14 | | | Alsairafi, Salman, bahrainischer Staatsangehöriger, in Genève | | joint signature at two |
| 14 | | | Chardon, Michaela, von Zürich, in Zürich | | joint signature at two |
| 14 | | | Etchepareborda, Nicolas, von Dardagny, in Genève | | joint signature at two |
| 14 | | | Geiger, Sarah, von Basel, in Küsnacht ZH | | joint signature at two |
| 14 | | | Gnanasingamony, Ambrose Eugene, indischer Staatsangehöriger, in Wallisellen | | joint signature at two |
| 14 | | 15 | ~~Hage Hammoud, Tarek, französischer Staatsangehöriger, in Genève~~ | | ~~joint signature at two~~ |
| 14 | | 15 | ~~Hermann, Melanie, deutsche Staatsangehörige, in Wallisellen~~ | | ~~joint signature at two~~ |
| 14 | | | Imhoof, Nicolas Alexandre, von Chêne-Bougeries, in Collonge-Bellerive | | joint signature at two |
| 14 | | 24 | ~~Jaipuriar, Divya Prakash, indischer Staatsangehöriger, in Rümlang~~ | | ~~joint signature at two~~ |
| 14 | | 15 | ~~Kasper, Tina, von Klosters-Serneus, in Kloten~~ | | ~~joint signature at two~~ |
| 14 | | | Liechti, Thanyaporn, thailändische Staatsangehörige, in Zürich | | joint signature at two |
| 14 | | 15 | ~~Lipanov, Vadim, von Egg, in Meilen~~ | | ~~joint signature at two~~ |
| 14 | | | Manser, Ursula, von Appenzell, in Ottenbach | | joint signature at two |
| 14 | | 28m | ~~Memeo, Melanie, von Agno, in Bülach~~ | | ~~joint signature at two~~ |
| 14 | | 23 | ~~Rubli, Yannick, von Dachsen, in Schwerzenbach~~ | | ~~joint signature at two~~ |
| 14 | | | Sewo, Tenzin, von Münchwilen TG, in Erlenbach ZH | | joint signature at two |
| 14 | | | Wikart, Nadia, von Einsiedeln, in Zürich | | joint signature at two |
| 15 | | 28 | ~~Ross, Andrew, britischer Staatsangehöriger, in Ticehurst (GB)~~ | president of the board of directors | ~~joint signature at two~~ |
| 15 | | | Beck, Simon , britischer Staatsangehöriger, in Arzier-Le Muids | | joint signature at two |
| 15 | | | Belser , Simon , von Kienberg, in Gelterkinden | | joint signature at two |
| 15 | | 26 | ~~Bucher, Simon, von Escholzmatt-Marbach, in Fulenbach~~ | | ~~joint signature at two~~ |
| 15 | | 27m | ~~Do, Kim Loan, von Stallikon, in Rapperswil-Jona~~ | | ~~joint signature at two~~ |
| 15 | | | Engel, Dietmar, deutscher Staatsangehöriger, in Uster | | joint signature at two |
| 15 | | | Habegger, Silvia , von Trub, in Herrliberg | | joint signature at two |
| 15 | | | Hill, Jonathan, britischer Staatsangehöriger, in Stäfa | | joint signature at two |
| 15 | | | Kahraman, Semra, von Zürich, in Zürich | | joint signature at two |
| 15 | | | Kamps, Justin, niederländischer Staatsangehöriger, in Stallikon | | joint signature at two |
| 15 | | | Largo Hodgkinsom, Sandra, von Winterthur, in Luzern | | joint signature at two |
| 15 | | | Locher, Andreas, deutscher Staatsangehöriger, in Buchs (ZH) | | joint signature at two |

# Commercial register of canton Zurich

| CHE-105.947.172 | Schroder & Co Bank AG | Zürich | 8 |
|---|---|---|---|

All datas

| In | Mo | Ca | Personal Data | Function | Signature |
|---|---|---|---|---|---|
| 15 | | | Mi Schickhofer, Jaclyn, amerikanische Staatsangehörige, in Herrliberg | | joint signature at two |
| 15 | | | Paladini, Nicholas , von Arosa, in Schänis | | joint signature at two |
| 15 | | | Petrov, Nikolay Bochev, bulgarischer Staatsangehöriger, in Zürich | | joint signature at two |
| 15 | | | Rose, Eveline, von Rafz, in Küsnacht (ZH) | | joint signature at two |
| 15 | | | Saly Graf, Katrin, von Oeschenbach, in Stallikon | | joint signature at two |
| 15 | | | Snopek, Jennifer , von Genève, in Thônex | | joint signature at two |
| 15 | | | Sullivan, Michael, von Hallau, in Lachen | | joint signature at two |
| 15 | | | Zwicky, Tiffany, von Meilen, in Zürich | | joint signature at two |
| 17 | | | Borisov, Aleksandar, bulgarischer Staatsangehöriger, in Cham | | joint signature at two |
| 17 | | | Frick, Michel, von Richterswil, in Fehraltorf | | joint signature at two |
| 17 | | | Gosteli, Barbara, von Bolligen, in Oetwil an der Limmat | | joint signature at two |
| 17 | | | Gyr, Manuela, von Einsiedeln, in Meilen | | joint signature at two |
| 17 | | | Huber, Luisa, von Luzern, in Luzern | | joint signature at two |
| 18 | | | Ernst & Young AG (CHE-491.907.686), in Zürich | auditor | |
| 19 | | | Baumann, Raphael, von Neckertal, in Zürich | | joint signature at two |
| 19 | | | Beeler, Markus, von Alpthal, in Schlieren | | joint signature at two |
| 19 | | | Bosshard, Nicole, von Appenzell, in Niederhasli | | joint signature at two |
| 19 | | | Carballo, Elias, von Nyon, in Puplinge | | joint signature at two |
| 19 | | | Dachen, Lhanzee, von Glarus Süd, in Glarus Nord | | joint signature at two |
| 19 | | | Klossner, Claudia, von Diemtigen, in Winterthur | | joint signature at two |
| 19 | | 29 | ~~Motzel, Mikola, deutscher Staatsangehöriger, in Zürich~~ | | ~~joint signature at two~~ |
| 19 | | | Nater, Thomas, von Kemmental, in Cham | | joint signature at two |
| 19 | | | Russegger, Roland, von Stäfa, in Meilen | | joint signature at two |
| 19 | | | Schaltegger, Beatrice, von Winterthur, in Niederhasli | | joint signature at two |
| 19 | | 30 | ~~Shahani, Jitin Haresh, indischer Staatsangehöriger, in Zürich~~ | | ~~joint signature at two~~ |
| 19 | | | Soirat, Valérie, von Chigny, in Chigny | | joint signature at two |
| 19 | | | Spitzli, Sascha, von Jonschwil, in Frauenfeld | | joint signature at two |
| 19 | | | Wyler, Patrick, von Wädenswil, in Wallisellen | | joint signature at two |
| 20 | | | Brandstätter, Walter, österreichischer Staatsangehöriger, in Zürich | | joint signature at two |
| 21 | | 30 | ~~Tejpar, Amyn Lawrence, von Meilen, in Thalwil~~ | | ~~joint signature at two~~ |
| 21 | | | Wetter, Rosmarie, genannt Romy, von Appenzell, in Steinhausen | | joint signature at two |
| | 23 | | Anex dit Chenaud, Claire, britische Staatsangehörige und Onsernone, in Onex | | joint signature at two |
| 23 | | | Dürr, Martin, von Wartau, in Rapperswil-Jona | | joint signature at two |
| | 23 | | Etemi, Isak, von Greifensee, in Greifensee | | joint signature at two |
| 23 | | | Hofer, David, von Brittnau, in Villigen | | joint signature at two |
| 23 | | 30 | ~~Konrad, Vivien, deutsche Staatsangehörige, in Zürich~~ | | ~~joint signature at two~~ |
| | 23 | | Pisa, Lea, von Zeiningen, in Villmergen | | joint signature at two |
| 23 | | | Reichmuth, Patrice, von Oberiberg, in Einsiedeln | | joint signature at two |
| | 27 | | Do, Kim Loan, von Eschenbach (SG), in Rapperswil-Jona | | joint signature at two |
| 28 | | | Hall, Peter, britischer Staatsangehöriger, in London (GB) | president of the board of directors | joint signature at two |
| 28 | | | Blum, Beat, von Romoos, in Zürich | | joint signature at two |
| 28 | | | Forster, Pascal, von Muolen, in Zürich | | joint signature at two |
| | 28 | 31m | ~~Füglister-Memeo, Melanie, von Obersiggenthal, in Bülach~~ | | ~~joint signature at two~~ |
| 28 | | | Holtkamp, Ronald, niederländischer Staatsangehöriger, in Staufen | | joint signature at two |
| 28 | | | Maksymowski, Daniel, polnischer Staatsangehöriger, in Zürich | | joint signature at two |
| 28 | | | Rizzuto, Ivano, von Winterthur, in Wallisellen | | joint signature at two |
| 30 | | | De Fratis, Simone, von Aarau, in Aarau | | joint signature at two |
| 30 | | | Galan, Vincent, französischer Staatsangehöriger, in Genève | | joint signature at two |

Continuation on the following page



# Commercial register of canton Zurich

| CHE-105.947.172 | Schroder & Co Bank AG | Zürich | 9 |

All datas

| In | Mo | Ca | Personal Data | Function | Signature |
|----|----|----|---------------|----------|-----------|
| 30 | | | Hilton, Simon Geoffrey, britischer Staatsangehöriger, in Genève | | joint signature at two |
| 30 | | | Stelzer, Christoph, von Zürich, in Richterswil | | joint signature at two |
| 30 | | | Strassmann, Franzpeter, von Mosnang, in Zürich | | joint signature at two |
| 30 | | | Sundell, Anna Martina, schwedische Staatsangehörige, in Zug | | joint signature at two |
| | 31 | | Füglister, Melanie, von Obersiggenthal, in Bülach | | joint signature at two |
| 32 | | | Mangione, Marco, italienischer Staatsangehöriger, in Etoy | | joint signature at two |
| 32 | | | Romer, Tanja, von Benken (SG), in Altendorf | | joint signature at two |
| 32 | | 33m | ~~Schmid, Beat Edwin, von Dielsdorf, in Erlenbach (ZH)~~ | | |
| | 33 | | Schmid, Beat Edwin, von Dielsdorf, in Erlenbach (ZH) | | joint signature at two |

Zürich, 20.11.2019

The above information is given without commitment and has not legal effect. Only the official company record (extract) issued and certified by the commercial register of Zurich and published in the Swiss Commercial Gazette is legally binding.

# TRANSLATION



# Commercial register of canton Zurich

| Identification number | Legal status | Entry | Cancelled | Carried CH-020.3.923.094-0 from: CH-020.3.923.094-0/b on: | 1 |
|---|---|---|---|---|---|
| **CHE-105.947.172** | **Limited or Corporation** | 22.02.1967 | | | |

 All datas

| In | Ca | Business name | Ref | Legal seat |
|---|---|---|---|---|
| 1 | | **Schroder & Co Bank AG** | 1 | Zürich |
| 1 | | (Schroder & Co Banque SA) (Schroder & Co Banca SA) (Schroder & Co Bank Ltd) (Schroder & Co Banco SA) | | |

| In | Ca | Share capital (CHF) | Paid in (CHF) | Shares | In | Ca | Company address |
|---|---|---|---|---|---|---|---|
| 1 | | 60'000'000.00 | 60'000'000.00 | 60'000 Namenaktien zu CHF 1'000.00 | 1 | | Central 2 8001 Zürich |

| In | Ca | Purpose | In | Ca | Other address |
|---|---|---|---|---|---|
| 1 | | The purpose of the company is to operate a bank with an international orientation. Within the scope of this objective, the bank's activities extend in particular to the following business lines: | | | |
| | | 1. Deposit-taking business in all forms customary in banking, excluding savings deposits; | | | |
| | | 2. Lending business in all forms customary in banking; | | | |
| | | 3. Foreign exchange business and precious metals trading for own and for third party accounts; | | | |
| | | 4. Securities management and trading business for own and for third party accounts, including investments in foreign securities; | | | |
| | | 5. Asset management and investment advice, including advice on the purchase and sale of works of art; | | | |
| | | 6. Establishment of investment funds and provision of all customary banking financial services; | | | |
| | | 7. Surety business and letters of credit; | | | |
| | | 8. Issuing business, including participation in syndicates; | | | |
| | | 9. Performance of all customary banking fiduciary transactions; | | | |
| | | 10. Safekeeping of securities and valuables of all kinds; | | | |
| | | 11. Provision of services in support of the banking and asset management business of Schroders Group companies. | | | |
| | | The Company may also acquire, manage and sell shareholdings and real estate, establish, represent and advise companies and carry out all transactions suitable for achieving the purpose of the Company. The Company may establish branches and subsidiaries as well as representative offices in Switzerland and abroad. | | | |

| In | Ca | Remarks | Ref | Date of the acts |
|---|---|---|---|---|
| 1 | | Notifications to shareholders are made in writing to the address entered in the share register. | 1 | 16.07.1971 |
| | | | 1 | (5326/1971) |
| 1 | | The transferability of registered shares is limited in accordance with the Articles of Association | 1 | 19.11.1993 |
| | | | 1 | 09.11.2000 |
| 1 | | The ordinary capital increase on 24.06.2008 will be effected by conversion of freely disposable equity. | 1 | 24.06.2008 |
| | | | 11 | 16.04.2015 |

| In | Ca | Qualified facts | Ref | Official publication |
|---|---|---|---|---|
| 25 | | Asset Transfer: In accordance with the agreement dated November 30, 2018, the Company is transferring assets of CHF 135,121,683.62 and liabilities of CHF 134,121,683.62 to CBH Compagnie Bancaire Helvétique SA, in Geneva (CHE-107.993.131). Consideration: CHF 1'000'000.00. | 1 | SHAB |

**TRANSLATION FROM GERMAN**

# CERTIFICATE OF TRANSLATION

1. I, Stamatia Soumela, translated a portion of the nine-page German language document entitled "Commercial register of canton Zurich" into the one-page English language document "Commercial register of canton Zurich," both of which are attached hereto.

2. To the best of my knowledge, ability and belief, this translation is a true, accurate and complete translation of the original German language document into the English language.

3. I am fluent in both languages and hereby attest that I am competent to translate and interpret from German to English.

03/19/2020                                         *Stamatia Soumela*
_____                    _____
Date                                                     Stamatia Soumela

## EXHIBIT B

**Fairfield Sentry Ltd. v. Migani, [2014] UKPC 9 Judgment**



[2014] UKPC 9
**Privy Council Appeal No 0061 of 2012
and Nos 0058, 0059, 0060 and 0061 of 2013**

# JUDGMENT

## Fairfield Sentry Limited (in Liquidation) (Appellant) v Migani and others (Respondents)

## Lombard, Odier & Cie and others (Appellants) *v* Fairfield Sentry Limited (in Liquidation) (Respondent)

## Credit Suisse London Nominees Limited and another (Appellants) v Fairfield Sentry Limited (in Liquidation) (Respondent)

## Quilvest Finance Limited and others (Appellants) v Fairfield Sentry Limited (in Liquidation) (Respondent)

## UBS AG New York and others (Appellants) v Fairfield Sentry Limited (in Liquidation) (Respondent)

## From the Court of Appeal of the British Virgin Islands

**before**

**Lord Neuberger**
**Lord Mance**
**Lord Clarke**
**Lord Sumption**
**Lord Toulson**

## JUDGMENT DELIVERED BY

## Lord Sumption

## ON

## 16 April 2014

**Heard on 18 and 19 March 2014**

| | |
|---|---|
| *Lombard, Odier & Cie and others*<br>David Lord QC<br>Robert Christie<br><br>(Instructed by Blake Lapthorn) | *Fairfield Sentry Ltd (in Liquidation)*<br>Jonathan Crow QC<br>Andrew Westwood<br>Stephen Midwinter<br>(Instructed by Macfarlanes LLP) |
| *Credit Suisse London Nominees Ltd and another*<br>Laurence Rabinowitz QC<br>Arabella di Iorio<br>Maximilian Schlote<br>(Instructed by Herbert Smith Freehills LLP) | |
| *UBS AG New York and others*<br>Lord Falconer QC<br>Paul Webster QC<br>(Instructed by Gibson Dunn & Crutcher LLP) | |
| *Quilvest Finance Ltd and others*<br>Mark Hapgood QC<br>Phillip Kite<br>Alan Roxburgh<br>(Instructed by Latham & Watkins) | |

**LORD SUMPTION:**

*Introduction*

1.      Bernard L. Madoff and his company Bernard L. Madoff Investment Securities
LLC ('BLMIS') ostensibly operated as fund managers, principally from New York.
Over a period of at least seventeen years he operated what seems likely to be the largest
Ponzi scheme in history, accepting sums variously estimated between US$17 billion
and US$50 billion for investment. It appears that from at least the early 1990s there had
been no trades and no investments. Returns to investors were fictitious and the
corresponding documentation fabricated. As with any Ponzi scheme, net withdrawals
from funds under management were paid from new money placed with BLMIS for
investment. In December 2008 Madoff was arrested, and in March 2009 he pleaded
guilty in a New York court to a number of counts of fraud. He was later sentenced to
150 years imprisonment.

2.      Fairfield Sentry Ltd is a company incorporated in the British Virgin Islands as a
mutual fund. I shall, like most of the formal documentation, call it "the Fund". From
1997 to 2008, it was the largest of a number of feeder funds which placed money with
BLMIS for investment. Over that period, about 95% of its assets, amounting to some
US$7.2 billion was placed with BLMIS. Investors participated indirectly in these
placements by subscribing for shares in the Fund at a price dependent on the Fund's net
asset value per share ('NAV'), and were entitled to withdraw funds by redeeming their
shares under the provisions of the Fund's Articles of Association. The net addition to
or reduction of its funds arising from subscriptions or withdrawals over any month was
reflected in corresponding additions or reductions of funds placed with BLMIS. The
shares were also transferrable, subject to certain restrictions in the Articles, but we were
told that there was no secondary market in them. On 18 December 2008, shortly after
Madoff's frauds came to light, the Directors of the Fund suspended the determination
of the Fund's NAV per share, thus effectively terminating the redemption of shares. On
21 July 2009, the High Court of the British Virgin Islands ordered the Fund to be wound
up.

3.      It is inherent in a Ponzi scheme that those who withdraw their funds before the
scheme collapses escape without loss, and quite possibly with substantial fictitious
profits. The loss falls entirely on those investors whose funds are still invested when the
money runs out and the scheme fails. Members of the Fund who redeemed their shares
before 18 December 2008 recovered the NAV which the Directors determined to be
attributable to their shares on the basis of fictitious reports from BLMIS. The loss will
in principle be borne entirely by those who were still Members of the Fund at that date.

4.      These proceedings are brought by the Fund at the instance of its liquidators against a number of financial institutions who were Members of the Fund but redeemed some or all of their shares before December 2008. Their purpose is to recover from the Defendants the amounts paid out to them on redemption, on the footing that they were paid out in the mistaken belief that the assets were as stated by BLMIS, when there were in fact no such assets. Any recoveries made on this basis can then be distributed rateably between all Members, irrespective of when or whether they redeemed.

5.      Similar proceedings have been brought by the Fund in other jurisdictions against other Members and former Members to recover redemption payments. They include more than 300 actions in the United States, in which the Fund is claiming more than US$6 billion. The United States actions have been stayed pending the outcome of these proceedings.

6.      On 20 April 2011, Bannister J in the Commercial Division of the High Court of the British Virgin Islands ordered four preliminary issues to be tried. The first three issues have together been called the "Article 11" question.  These issues were all concerned with the question whether certain transaction documents issued to Members of the Fund recording the NAV per share or the redemption price upon redemption were binding on the Fund under Article 11 of its Articles, which deals with the effect of certain "certificates". It is now accepted, and rightly accepted, by the Fund that if they were binding the present claims must fail. The fourth issue was whether the Defendants have a defence on the ground that by their surrendering their shares they gave good consideration for the money that they received on redemption. This has been called the "Good Consideration" question. The two questions were argued separately below and before us. But for reasons which will be explained, they are closely related and have to be considered together.

7.      Bannister J decided the Article 11 question in favour of the Fund. He held that the documents relied upon by the Defendants as binding were not "certificates" for the purpose of Article 11. But he held in favour of the Defendants on the Good Consideration question, and on that basis summarily dismissed the action. He was affirmed on both points by the Eastern Caribbean Court of Appeal.

*The contractual documentation*

8.      Subscribers for shares in the Fund complete a Subscription Agreement, by which they subscribe for shares to be offered by the Fund at the NAV per share as the opening of business on the effective date of purchase "pursuant to the terms herein, the Memorandum, and the Fund's Memorandum of Association and Articles of Association (collectively 'the Fund Documents')": see clause 1.

9.      Of these three documents, the "Memorandum" means the Private Placement Memorandum by which the Fund offers a stated number of shares. Its main function is to convey information about how the Fund is managed and how its assets are invested, and to define certain expressions used in the Subscription Agreement. It describes the investment strategy of the Fund, and explains that it is implemented by BLMIS. A section headed "Transfers, Redemptions and Termination" describes the procedure for redemption.

10.     The Subscription Agreement binds the subscriber to his subscription and to the terms of the Fund Documents, but is otherwise concerned entirely with acknowledgements, representations and warranties as to his understanding of the investment and of associated procedures and risks, mostly for regulatory purposes. For present purposes, what matters is not the subscriber's acknowledgements, representations and warranties, nor the factual statements of the Fund, but the terms of the subscriber's membership of the Fund, which govern the redemption of its shares. These terms are to be found in the Articles of Association of the Fund. The relevant provisions are Articles 9, 10 and 11 and the associated definitions in Article 1. These operate by reference to the "Valuation Day" and the "Dealing Day". A Valuation Day is the last business day of any month (or such other date as the Directors may determine); and with respect to redemptions a Dealing Day is a Valuation Day.

11.     Article 9 deals with the issue and allotment of shares. Article 9(1) provides for shares to be issued to those applying for them on the Dealing Day following the application. Article 9(1)(b) provides:

> "The issue of Shares pursuant to this Article shall be effected at not less than the Subscription Price determined in accordance with paragraph (2) of this Article but in no event shall a Share be allotted or issued at a price less than its par value."

Article 9(2) provides that the Subscription Price per share is to be the

> "Net Asset Value of each Share (as determined in accordance with Article 11) as at the close of business in Amsterdam, The Netherlands, on the Valuation Day immediately preceding the Dealing Day on which such issue is made."

12.     Article 10 deals with redemptions. It is in some respects the mirror image of Article 9. Article 10(1) provides that

"Subject to the provisions of the Memorandum, these Articles and the Act and subject as hereinafter provided, the Company shall on receipt by it or its authorised agent of a request in writing (or in such other form as the Directors may determine) by a Member ('the Applicant') specifying the number and class of Shares to be redeemed redeem or purchase all or any portion of the Shares registered in the Applicant's name, PROVIDED THAT:

(a) subject as hereinafter provided, the redemption or purchase of Shares pursuant to this Article shall be made on the Dealing Day on which, or immediately following the day on which, the written request is received provided that the said request is received on or before the Dealing Time."

Article 10(1)(b) provides (so far as relevant) that

"the redemption or purchase of Shares pursuant to this article shall be effected at the Redemption Price determined in accordance with paragraph (2) of this article."

Article 10(1)(c) provides for the Redemption Price to be paid "as soon as practicable after the Dealing Day", being normally 30 days after the Dealing Day, subject to extension in certain special cases. Article 10(2) deals with the Redemption Price. It provides:

"(2)   The Redemption Price for each Share shall be the Net Asset Value per Share (as determined in accordance with Article 11) as at the close of business in Amsterdam, The Netherlands on the Dealing Day on which such redemption is effected less such sum (if any) as the Directors may consider represents the appropriate provision for fiscal and sale charges which would be incurred on the sale of assets of the Company, in each case rounded to the nearest minimum integral unit of the Base Currency."

13.    Article 11 deals with the determination of the NAV per share for the purpose of both subscriptions and redemptions. Article 11(1) provides:

"[a] The Net Asset Value per Share of each class shall be determined by the Directors as at the close of business on each Valuation Day (except when determination of the Net Asset Value per Share has been suspended under the provisions of paragraph

(4) of this Article), on such other occasions as may be required by these Articles and on such other occasions as the Directors may from time to time determine.

[b] The Net Asset Value per Share shall be calculated at the time of each determination by dividing the value of the net assets of the Fund by the number of Shares then in issue or deemed to be in issue and by adjusting for each class of Shares such resultant number to take into account any dividends, distributions, assets or liabilities attributable to such class of Shares pursuant to paragraph (2) of Article 4, all determined and calculated as hereinafter provided.

[c] Any certificate as to the Net Asset Value per Share or as to the Subscription Price or Redemption Price therefor given in good faith by or on behalf of the Directors shall be binding on all parties."

The sub-paragraph numbers [a], [b] and [c] have been added for ease of reference. Article 11(2) identifies the assets and liabilities to be included in the calculation of the NAV. In effect they are all the assets and liabilities of the Fund. Article 11(3) contains detailed supplementary provisions governing certain aspects of the valuation.

*Redemption procedure*

14.    Since 1999, the Fund's administrator has been Citco Fund Services (Europe) BV, a leading professional administrator of mutual funds based in the Netherlands. The Private Placement Memorandum records that under an administration agreement dated 20 February 2003, the Fund has appointed Citco as the administrator of the Fund under the overall direction of the Directors. Citco is described as having responsibility for day-to-day administrative services including "calculation of Net Asset Value" and "communications with shareholders".

15.    This summary description is borne out by the terms of the agreement of 20 February 2003. Clause 2.1 of the agreement provides for the Administrator (Citco) to provide "the Services", which are defined in Schedule 2 as including the "calculation of the Net Asset Value and the Net Asset Value per Share on a monthly basis in accordance with the Fund Documents", and "publishing the Net Asset Value per Share (of each class if appropriate) as requested by the Fund." Clause 3.4 provides that "the Administrator shall on behalf of the Fund redeem Shares in accordance with the provisions and procedures set out in the applicable Fund Documents", on receipt of the

Member's written request to redeem and the provision of sufficient moneys to satisfy the Redemption Price.

16.    The management of a mutual fund is bound to involve the communication to Members of a substantial volume of routine documentation, including transactional documentation generated upon redemption. It is common ground that in the Fund's case, this included the following documents:

i)    Citco calculated an estimated NAV weekly and a final NAV on each Valuation Day, i.e. on the last business day of each month. All of these figures were posted by Citco on a password-protected website which it maintained and which was accessible to Members.

ii)    The final NAV per share for the last business day of each month was communicated in about the middle of the following month by the Fairfield Group client desk at Citco by e-mail to all Members. The operative part of the representative e-mail before us reads:

"Please be advised that the final net asset value per share of Fairfield Sentry Limited, Class A, is USD 957.8430 as at December 2003.

Should you have any questions or require further information, please do not hesitate to contact us."

iii)    Upon each redemption, the redeeming Member received from Citco in about the middle of the month following the relevant Valuation Day a contract note recording the transaction. The operative part began:

"In accordance with your instructions, we confirm having REDEEMED the following voting shares from FAIRFIELD SENTRY LIMITED."

There followed the relevant Valuation Day, the number of shares redeemed, the Redemption price per share and the total net redemption proceeds.

iv)    Each Member received from Citco in about the middle of each month a monthly statement of his account. This recorded, among other things, the

opening and closing NAV per share for the previous calendar month, and a summary of activity (if any) over the previous calendar month recording subscriptions and redemptions in the month and the NAV per share corresponding to each one.

Each of these documents is said by the Defendants to be a "certificate" for the purpose of Article 11(1) [c] of the Fund's Articles.

*Restitution*

17.    The availability of a claim for restitution arising out of a transaction governed by the Articles of the Fund is governed by the same law which governs the Articles themselves, namely the law of the British Virgin Islands. In every relevant respect, the principles of the law of the British Virgin Islands governing the construction of the Articles and any associated common law right to restitution are the same as those of English law.

18.    The basic principle is not in dispute. The payee of money "cannot be said to have been unjustly enriched if he was entitled to receive the sum paid to him": *Kleinwort Benson Ltd v Lincoln City Council* [1999] 2 AC 349 at 408B (Lord Hope). Or, as Professor Burrows has put it in his *Restatement of the English Law of Unjust Enrichment* (2012) at §3(6), "in general, an enrichment is not unjust if the benefit was owed to the defendant by the claimant under a valid contractual, statutory or other legal obligation." Therefore, to the extent that a payment made under a mistake discharges a contractual debt of the payee, it cannot be recovered, unless (which is not suggested) the mistake is such as to avoid the contract: *Barclays Bank Ltd v W.J. Simms Son & Cooke (Southern) Ltd* [1980] QB 677, 695. So far as the payment exceeds the debt properly due, then the payer is in principle entitled to recover the excess.

19.    It follows that the Fund's claim to recover the redemption payments depends on whether it was bound by the redemption terms to make the payments which it did make. That in turn depends on whether the effect of those terms is that the Fund was obliged upon a redemption to pay (i) the true NAV per share, ascertained in the light of information which subsequently became available about Madoff's frauds, or (ii) the NAV per share which was determined by the Directors at the time of redemption. If (ii) is correct then, the shares having been surrendered in exchange for the amount properly due under the Articles, the redemption payments are irrecoverable.

*What was the Fund obliged to pay upon redemption*

20.    Mr Crow QC, who appeared for the Fund, invited us to stop at the general principle, and not to answer this question. He submitted that the effect of the contractual

provisions governing redemption was not covered by the preliminary issues and ought to be referred back to the High Court. He also suggested that at a further hearing in the High Court, New York law, which is the proper law of the Subscription Agreement, might be relevant. The Board unhesitatingly rejects these submissions. Neither the Article 11 question nor the Good Consideration question, as formulated in the preliminary issues, can be resolved without deciding what is the effect of the Articles. Both courts below proceeded on that basis. The effect of the Articles is therefore properly before the Board. The Board notes that neither the Fund nor the Defendants have pleaded New York law. Nor can the Board discern any basis on which New York law could be relevant, since none of the questions raised by the preliminary issues depends on the terms of the Subscription Agreement. They depend wholly on the construction of the Articles, which is governed by the law of the British Virgin Islands.

21.     The starting point is the scheme of the Articles. Articles 9 and 10 determine the status of investors as Members of the Fund, a question which ought in principle to be capable of definitive resolution at any moment in the Fund's history. Both the Subscription Price under Article 9 and the Redemption Price under Article 10 depend on the NAV per share determined under Article 11. Article 9(1)(a) provides that the issue of shares "shall be made on the Dealing Day". Article 9(1)(b) provides for the Subscription Price to be determined in accordance with Article 9(2), which means that it is to be the NAV per share "determined in accordance with Article 11". Article 9(1)(c) provides for the Subscription Price to be payable at a time fixed by the Directors, failing which any allotment for which payment is due may be cancelled. There are corresponding provisions of Article 10 concerning redemptions. Article 10(1)(a) provides that the redemption of shares "shall be made on the Dealing Day". Article 10(1)(b) provides that the redemption is to be effected at the Redemption Price determined in accordance with Article 10(2), which means the "Redemption Price for each Share shall be the Net Asset Value per Share (as determined in accordance with Article 11)" on the Dealing Day. Under Article 10(1)(c), that price must be paid as soon as practicable after the Dealing Day, being normally thirty days thereafter subject to specified and limited extensions. These provisions determine the amount due and the time of payment. Moreover, once the NAV per share for a given monthly Valuation Day is ascertained, subscriptions and redemptions effected at the corresponding Subscription and Redemption Price will affect the determination of NAV per share on the following monthly Valuation Day. This is because the receipt of subscription moneys and the payment out of redemption moneys will affect the amount of the Fund's assets for the purpose of Article 11(2). It will be apparent from this summary that the whole of this scheme depends upon the price being definitively ascertained by the Dealing Day and known to the parties shortly thereafter. It is unworkable on any other basis.

22.     The Fund's case is that when Article 10(2) defines the Redemption Price as the NAV per share "determined in accordance with Article 11", it means the NAV correctly determined by dividing the NAV of the Fund by the number of shares in issue in accordance with Articles 11(1)[b], 11(2) and 11(3). If this is right, the same must be

true of Article 9(1)(c), which fixes the Subscription Price by reference to the same provisions of Article 11. The Directors' determination of the NAV per share as at the Valuation Day, under Article 11, was not definitive according to this analysis unless a certificate was issued pursuant to Article 11(1)[c], and that would happen only if the Directors chose to issue one.

23.     In the Board's opinion, this is an impossible construction. If it were correct, an essential term of both the subscription for shares and their redemption, namely the price, would not be definitively ascertained at the time when the transaction took effect, nor at the time when the price fell to be paid. Indeed, it would not be definitively ascertained for an indefinite period after the transaction had ostensibly been completed, because unless a certificate was issued it would always be possible to vary the determination of the NAV per share made by the Directors at the time and substitute a different one based on information acquired long afterwards about the existence or value of the assets. This would not only expose Members who had redeemed their shares to an open-ended liability to repay part of the price received if it subsequently appeared that the assets were worth less than was thought at the time. It would confer on them an open-ended right to recover more (at the expense of other Members) if it later appeared that they were worth more. Corresponding problems would arise out of the retrospective variation of the Subscription Price long after the shares had been allotted.  Indeed, it is difficult to see how the Directors could perform their duty under Article 9(1)(b) not to allot or issue a share at less than the Subscription Price if the latter might depend on information coming to light after the allotment had been made.

24.     If, as the Articles clearly envisage, the Subscription Price and the Redemption Price are to be definitively ascertained at the time of the subscription or redemption, then the NAV per share on which those prices are based must be the one determined by the Directors at the time, whether or not the determination was correctly carried out in accordance with Articles 11(2) and (3). That means either (i) that the Directors' determination at the time must be treated as conclusive whether or not there is a certificate under Article 11(1)[c]; or else (ii) that  Article 11(1)[c] must be read as referring to the ordinary transaction documents recording the NAV per share or the Subscription or Redemption Price which will necessarily be generated and communicated to the Member at the time, and not to some special document issued at the discretion of the Directors. The Board considers, for the reasons given below, that in a case where a provision for certification such as Article 11(1)[c] has been included as part of the mechanics of subscription and redemption, the correct approach is the second one.

*Certification*

25.     The Board has been referred to a number of authorities dealing with certification clauses, none of them analogous to Article 11(1)[c]. Their effect, broadly summarised, is that the word "certificate" has no standard meaning and that the question what

constitutes a certificate is dependent on the commercial or legal context in which the certification clause appears.

26.    The Board was invited by the Fund to read the opening words ("Any certificate") as if they said "A certificate, if any". This, it was argued, showed that there would not necessarily be one in every case. For that reason, and because there is nothing in the language of the Articles which obliged the Fund to issue a certificate, it was submitted that the issue of a certificate was wholly in the discretion of the Directors or their delegates and that it could be withheld for any rational and honest reason. A variant of this argument appears to have been accepted by the Court of Appeal. The Board, however, is unable to accept it. In the first place, it places more weight on the word "Any" than it will bear. It seems more likely that the word was used because the rest of the clause refers to a number of different things that may be certified, namely the NAV per share, the Subscription Price and the Redemption Price. Secondly, the problem about the suggestion that certification is a discretionary matter for the Directors, is that it is impossible to discern what purpose such a discretion could rationally be thought to serve. The sole object of certification is to produce finality, and the scheme of the Articles, as the Board has summarised it above, shows that finality is equally important for all determinations of the NAV per share and all Subscription and Redemption Prices. There is no rational ground for regarding finality as desirable in some cases but not in others, according to the discretionary decision of the Directors or their delegates. Such a discretion, if it existed, could only operate capriciously, and is therefore most unlikely to have been intended by the draftsman.

27.    As a matter of language, a "certificate" ordinarily means (i) a statement in writing, (ii) issued by an authoritative source, which (iii) is communicated by whatever method to a recipient or class of recipients intended to rely on it, and (iv) conveys information, (v) in a form or context which shows that it is intended to be definitive. There is no reason to think that a document must satisfy any further formal requirements, unless its purpose or legal context plainly requires them. There is nothing in the context of these Articles which does.

28.    The relevant categories of document generated in the ordinary course of the Fund's relations with Members are listed at paragraph 16. In the Board's opinion the monthly e-mail, the contract notes and the monthly statement of account are all "certificates". They communicate information in documentary form to Members. It follows that the critical questions in the present case are whether transaction documents in the three categories are (i) issued by an authoritative source and (ii) in a form or context which shows that they are intended to be definitive.

29.    The authoritative character of their source can be shortly dealt with. Documents in all three categories were issued by Citco under the authority of the Directors, conferred by the Administration Agreement. The calculation of the monthly NAV per

share was among the functions of Citco included in Schedule 2, Part 1 of the Agreement. Its publication was a function of Citco under Schedule 2, Part 2(e). The communication to Members seeking to redeem their shares of the monthly NAV per share and the Redemption Price is necessarily implicit in clause 3.4 of the Agreement, which delegates to Citco the duty of redeeming shares in accordance with the "provisions and procedures" set out in the Fund Documents. These authorities are general, and not specific to any particular transaction or category of transactions. If the issue of a "certificate" were an exceptional or discretionary step, something more specific by way of authority might have been required. But for the reasons which the Board has already given, the certification procedure under Article 11(1)[c] is neither exceptional nor discretionary.

30.     Turning to the question whether they were intended to be definitive, the context in which they are issued plainly demonstrates that they were. As the Board has already observed, the nature of a redemption transaction and the procedures set out in Article 10 make it essential that the Redemption Price should be definitively ascertained at the time of the transaction and as at the Valuation Day. In that context, any unqualified documentary statement of the Redemption Price or the NAV per share on which it is based must be intended to be definitive. The Articles could not otherwise operate as they are intended to.

31.     This conclusion is borne out by the language of the documents. The emails formally "advising" the monthly NAV per share to Members describe it in terms as the "final" figure. The contract notes formally "confirm" the redemption and record its terms. The monthly Members' statement constitutes a formal record of each transaction during the month and the NAV per share at which it went through. All of this information was plainly intended to be relied upon by Members as a definitive record of the transaction and the values on which it was based.

32.     The Board prefers to express no opinion on the question whether the statements posted on the Citco website are also "certificates". A statement on a website may well have all the characteristics of a "certificate", but that may depend on a variety of considerations on which the Board has little or no evidence, including the permanence of any statement posted on it and what Members are told about the kind of information which they will find there.

*Conclusion*

The Board will humbly advise Her Majesty that the appeals against the decision of Bannister J and the Court of Appeal on Preliminary Issues 1, 2 and 3 should be allowed, save as to information posted on the Citco website, and that the appeal against their decision on Issue 4 should be dismissed. The parties are invited to agree an appropriate form of declaration on all four issues.