# EXHIBIT C

## EXHIBIT A

### FORM OF AGREEMENT BETWEEN
### THE TRUSTEE AND KENNETH KRYS AND JOANNA LAU, SOLELY IN THEIR
### RESPECTIVE CAPACITIES AS THE FOREIGN REPRESENTATIVES FOR AND
### JOINT LIQUIDATORS OF FAIRFIELD SENTRY LIMITED,
### FAIRFIELD SIGMA LIMITED, AND FAIRFIELD LAMBDA LIMITED

## AGREEMENT

This Agreement, dated as of May 9, 2011 ("Agreement"), is made by and among Irving H. Picard, in his capacity as Trustee for the liquidation under the Securities Investor Protection Act of 1970, as amended ("SIPA"), of Bernard L. Madoff Investment Securities LLC (the "Trustee"), on the one hand, and Kenneth Krys and Joanna Lau (together with their predecessors, the "Liquidators" or the "Joint Liquidators"), solely in their respective capacities as the Foreign Representatives for and Joint Liquidators of Fairfield Sentry Limited, a British Virgin Islands corporation ("Fairfield Sentry"), Fairfield Sigma Limited, a British Virgin Islands corporation ("Fairfield Sigma"), and Fairfield Lambda Limited, a British Virgin Islands corporation ("Fairfield Lambda" and, together with Fairfield Sentry and Fairfield Sigma, the "Fairfield Funds"), on the other hand (each of the Trustee, the Liquidators, Fairfield Sentry, Fairfield Sigma and Fairfield Lambda, a "Party" and, collectively, the "Parties").

## BACKGROUND

A.    Bernard L. Madoff Investment Securities LLC ("BLMIS") was a registered broker-dealer and a member of the Securities Investor Protection Company ("SIPC").

B.    On December 11, 2008 (the "Filing Date"), the Securities and Exchange Commission (the "SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Bernard L. Madoff ("Madoff"). On December 12, 2008, the District Court entered an order which among other things appointed a receiver for the assets of BLMIS (No. 08-CV-10791(LSS)).

C.    On December 15, 2008, pursuant to section 5(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with the application of SIPC. Thereafter, SIPC filed an application in the District Court under section 5(a)(3) of SIPA alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA. On December 15, 2008, the District Court granted the SIPC application and entered an order under SIPA, which, in pertinent part, appointed the Trustee for the liquidation of the business of BLMIS under section 5(b)(3) of SIPA and removed the case to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under section 5(b)(4) of SIPA, where it is currently pending as Case No. 08-01789 (BRL) (the "SIPA Proceeding"). The Trustee is duly qualified to serve and act on behalf of the estate of BLMIS (the "BLMIS Estate").

D.    Fairfield Sentry is a British Virgin Islands ("BVI") company that at all relevant times, was a customer of BLMIS.

E.    Fairfield Sigma and Fairfield Lambda are BVI companies that at all relevant times, had as their respective sole purposes to invest funds in Fairfield Sentry.

F.    Pursuant to an Order entered on April 23, 2009, the Eastern Caribbean Supreme Court in the High Court of Justice of the Virgin Islands (the "BVI Court") appointed Christopher Stride to be the Liquidator for Fairfield Lambda, which appointment commenced the winding up of Fairfield Lambda pursuant to the British Virgin Islands Insolvency Act 2003 (the "Lambda Proceeding").

G.    Pursuant to an Order entered on July 21, 2009, the BVI Court (i) permitted the commencement of the winding up of Fairfield Sentry in accordance with the British Virgin Islands Insolvency Act 2003 (the "Sentry Proceeding"), and (ii) appointed Kenneth Krys and Christopher Stride as the Joint Liquidators for Fairfield Sentry.

H.    Pursuant to an Order entered on July 21, 2009, the BVI Court (i) permitted the commencement of the winding up of Fairfield Sigma in accordance with the British Virgin Islands Insolvency Act 2003 (the "Sigma Proceeding" and, together with the Lambda Proceeding and the Sentry Proceeding, the "BVI Proceedings"), and (ii) appointed Kenneth Krys and Christopher Stride to be the Joint Liquidators for Fairfield Sigma.

I.    On July 22, 2010, in proceedings commenced by the Liquidators pursuant to Chapter 15 of the Bankruptcy Code (the "Chapter 15 Proceedings"), the Bankruptcy Court entered an order recognizing the BVI Proceedings as foreign main proceedings and granting related relief to the Liquidators.

J.    On or about September 6, 2010, the BVI Court issued notices acknowledging Christopher Stride's resignation and Joanna Lau's appointment as Joint Liquidator with Kenneth Krys of each of the Fairfield Funds.

K.    Fairfield Sentry was a customer of BLMIS and maintained customer accounts, Accounts 1FN012, 1FN045, 1FN069, 1FN070 with BLMIS (the "Fairfield Sentry Accounts") commencing in or about 1990. The Fairfield Sentry Accounts are listed as Exhibit A to this Agreement. According to the Trustee, between then and the Filing Date, on an overall basis Fairfield Sentry deposited into the Fairfield Sentry Accounts a total of one billion, one hundred ninety-two million, five hundred thirty-six thousand, three hundred forty-two dollars ($1,192,536,342) in excess of the amount of withdrawals that Fairfield Sentry made from the accounts (the "Sentry Net Loss"). According to the Trustee, Fairfield Sentry withdrew one billion one hundred thirty million dollars ($1,130,000,000) from the Fairfield Sentry Accounts within ninety days before the Filing Date ("90 Day Withdrawals") and an additional one billion nine hundred twenty four million dollars ($1,924,000,000) from the Fairfield Sentry Accounts, during the period more than 90 days, but less than six years, before the Filing Date (the "Pre 90-Day Withdrawals" and, together with the 90 Day Withdrawals, the "Withdrawals").

L.    Prior to the appointment of the Liquidators, Fairfield Sentry filed three customer claims in the SIPA Proceeding (assigned claim numbers 008037, 007898 and 11251, later amended by claim numbers 011234 and 11429) (such claims, collectively, the "Sentry SIPA Claim") alleging aggregate losses from the Fairfield Sentry Accounts of six billion, two hundred eighty-four million, three hundred twenty-one thousand, five hundred eighty-one dollars ($6,284,321,581) (the "Last Statement Amount"). The Sentry SIPA Claim, including the relevant BLMIS Account Numbers 1FN012, 1FN045, 1FN069, 1FN070, is included as Exhibit B to this Agreement. The Sentry SIPA Claim, as filed, asserts that Fairfield Sentry is entitled to allowance of a customer claim in the SIPA proceeding in an amount reflected on Fairfield Sentry's BLMIS account statements for the period ending November 30, 2008, i.e., the Last Statement Amount.

2

M.    The Trustee has disputed that Fairfield Sentry is entitled to allowance of a customer claim in the amount of the Last Statement Amount. On March 1, 2010, the Honorable Burton R. Lifland, of the Bankruptcy Court, issued an opinion applying the Trustee's "net equity" calculation of customer claims as the difference between investment into BLMIS and amounts withdrawn (the "Net Equity Method"). On March 8, 2010 Judge Lifland entered an order implementing the decision and certifying it for immediate appeal for the United States Court of Appeals for the Second Circuit. According to the Trustee, the amount of the Sentry SIPA Claim based on the Net Equity Method is the Sentry Net Loss, i.e., One Billion, One Hundred Ninety-Two Million, Five Hundred Thirty-Six Thousand, Three Hundred Forty-Two Dollars ($1,192,536,342) (the "Sentry SIPA Net Equity Claim").

N.    Prior to the appointment of the Liquidators, Fairfield Sigma filed four customer claims in the SIPA Proceeding (assigned claim numbers 011250, 011744, 011240 and 011249) claiming aggregate losses of seven hundred seventy-three million, six hundred thirty-five thousand, one hundred eighty-eight dollars ($773,635,188) (such claims, collectively, the "Sigma SIPA Claim"). On or about December 8, 2009, the Trustee issued a notice of denial of the Sigma SIPA Claim on the asserted basis that Sigma is not a customer of BLMIS within the meaning of 15 U.S.C. § 78*lll*(2) (the "Sigma Denial Notice"). On or about January 7, 2010, the Liquidators filed a timely objection to the Sigma Denial Notice in the SIPA Proceeding, and that objection remains pending. The Sigma SIPA Claim, the Sigma Denial Notice and the Liquidators' objection to the Sigma Denial Notice are included as Exhibit C to this Agreement.

O.    Prior to the appointment of the Liquidators, Fairfield Lambda filed four customer claims in the SIPA Proceeding (assigned claim numbers 014661, 014761, 014762 and 014795) claiming aggregate losses of thirty-six million, six hundred seventy-six thousand, two hundred five dollars ($36,676,205) (such claims, collectively, the "Lambda SIPA Claim" and, together with the Sentry SIPA Claim and the Sigma SIPA Claim, the "Fairfield SIPA Claims"). On or about December 8, 2009, the Trustee issued a notice of denial of the Lambda SIPA Claim on the asserted basis that Lambda is not a customer of BLMIS within the meaning of 15 U.S.C. § 78*lll*(2) (the "Lambda Denial Notice"). On or about January 7, 2010, the Liquidators filed a timely objection to the Lambda Denial Notice in the SIPA Proceeding, and that objection remains pending. The Lambda SIPA Claim, the Lambda Denial Notice and the Liquidators' objection to the Lambda Denial Notice are included as Exhibit D to this Agreement.

P.    The Trustee has brought an adversary proceeding against Fairfield Sentry, Fairfield Sigma, Fairfield Lambda and other defendants in the Bankruptcy Court under the caption *Picard v. Fairfield Sentry Ltd. et al.*, Adv. Pro. No. 09-01239 (BRL) (the "Adversary Proceeding"). In the Adversary Proceeding, the Trustee asserts that the Fairfield Funds are liable to the BLMIS Estate under 11 U.S.C. §§ 544, 547, 548, 550, SIPA § 78fff-(2)(c)(3) and the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law §§ 270-281) for the Withdrawals made by Fairfield Sentry from BLMIS, and Fairfield Sentry's subsequent transfer of approximately Seven Hundred Fifty-Two Million, Three Hundred Thousand Dollars ($752,300,000) and Fifty-Two Million, Nine Hundred Thousand Dollars ($52,900,000) of the Withdrawals to Fairfield Sigma and Fairfield Lambda, respectively; specifically, the Trustee seeks, inter alia, recovery from the Fairfield Funds of an amount totaling Three Billion, Fifty-Four Million Dollars ($3,054,000,000). The Trustee has also asserted claims for turnover and accounting of the Withdrawals, and for disallowance of the Fairfield SIPA Claims.

Q.    All claims of the Trustee against the Fairfield Funds under 11 U.S.C. §§ 544, 547, 548 or 550, applicable provisions of SIPA, including § 78fff-(2)(c)(3), and the New York Debtor and Creditor Law §§ 270-281 shall be referred to herein as the "Avoiding Power Claims."

R.    The Liquidators, on behalf of each of the Fairfield Funds, have disputed any liability to the BLMIS Estate in connection with the Adversary Proceeding and the Avoiding Power Claims alleged therein.

S.    The Trustee, on the one hand, and the Liquidators, for each of the estates that they represent, on the other hand, desire to settle their disputes about the matters described above without the expense, delay and uncertainty of litigation.

## AGREEMENT

1.    Judgments Regarding the Trustee's Avoiding Power Claims. The Trustee and the Liquidators agree they shall jointly request the Bankruptcy Court to (i) enter a judgment against Fairfield Sentry in the amount of Three Billion, Fifty Four Million Dollars ($3,054,000,000), representing the settled amount of the Trustee's Avoiding Power Claims against Fairfield Sentry (the "Sentry Judgment"), (ii) enter a judgment against Fairfield Sigma in the amount of Seven Hundred Fifty Two Million, Three Hundred Thousand Dollars ($752,300,000), representing the settled amount of the Trustee's Avoiding Power Claims against Fairfield Sigma (the "Sigma Judgment") and (iii) enter a judgment against Fairfield Lambda in the amount of Fifty Two Million, Nine Hundred Thousand Dollars ($52,900,000), representing the settled amount of the Trustee's Avoiding Power Claims against Fairfield Lambda (the "Lambda Judgment" and, together with the Sentry Judgment and the Sigma Judgment, the "Judgments"), each Judgment in the form attached hereto as Exhibit E. By virtue of the mutual covenants and agreements contained in, and the consideration provided by, this Agreement, including (i) the cash payment to be made by the Liquidators to the Trustee as set forth below at Paragraph 2, infra, and (ii) the mutually agreed to reduction of the Sentry SIPA Net Equity Claim from One Billion, One Hundred Ninety-Two Million, Five Hundred Thirty-Six Thousand, Three Hundred Forty-Two Dollars ($1,192,536,432) to an allowed SIPA claim of Two Hundred Thirty Million Dollars ($230,000,000) as set forth below at Paragraph 13, infra, the Trustee agrees to forbear exercising any right to collect One Billion, One Hundred Thirty Million Dollars ($1,130,000,000) on the Sentry Judgment from Liquidators, the Fairfield Funds or their estates, leaving a non-forbearance amount of One Billion, Nine Hundred Twenty Four Million ($1,924,000,000) (the "Non-Forbearance Amount"). The Trustee shall have (i) an admitted claim in Fairfield Sentry's estate that is provable in the Sentry Proceeding for the full amount of the Sentry Judgment (the "Sentry Admitted Claim"), (ii) an admitted claim in Fairfield Sigma's estate that is provable in the Sigma Proceeding for the full amount of the Sigma Judgment (the "Sigma Admitted Claim"), and (iii) an admitted claim in Fairfield Lambda's estate that is provable in the Lambda Proceeding for the full amount of the Lambda Judgment (the "Lambda Admitted Claim" and, together with the Sentry Admitted Claim and the Sigma Admitted Claim, the "Admitted Claims"). Notwithstanding the foregoing, the Trustee's rights to enforce, collect on and/or satisfy the Judgments or any claims against the Liquidators and/or as against any of the Fairfield Funds, including, without limitation, the Admitted Claims, shall be limited solely to the

4

rights, remedies and considerations expressly provided in, under and by this Agreement (and such rights, remedies and considerations shall be the dividends paid to the Trustee on account of the Admitted Claims). For the avoidance of doubt, the Trustee shall not be entitled to, nor shall he seek, any distributions on account of the Admitted Claims in the BVI Proceedings or in any other proceedings. Interest shall not accrue on the Judgments. The Judgments shall be filed and entered by the Trustee on or after the Effective Date, defined below at Paragraph 18. The Judgments and the Admitted Claims shall not be assignable.

      2.    Payment of Cash. The Liquidators shall pay to the Trustee a total of Seventy Million Dollars ($70,000,000) (the "Settlement Payment") of Fairfield Sentry's cash as outlined in this Paragraph 2. On the Closing, as defined below at Paragraph 20, the Liquidators shall pay to the Trustee the sum of Twenty Four Million Dollars ($24,000,000). The Liquidators shall pay to the Trustee the balance of the Settlement Payment totaling Forty Six Million Dollars ($46,000,000) three (3) Business Days (as identified below) following the first to occur of (a) the first date when Fairfield Sentry's account at Citco Bank Nederland N.V.-Dublin branch (the "Citco Account") is no longer subject to an order of attachment; (b) the sale by the Liquidators of any Allowed Claim as defined in Paragraph 13; or (c) the aggregate receipt by the Liquidators of funds belonging to Fairfield Sentry equal to Forty Six Million Dollars ($46,000,000) from any source, other than from a Sharing Claim (as defined below), after the Closing (as defined below). Notwithstanding the foregoing, the Liquidators, in their sole discretion, may elect to pay the entire Settlement Payment to the Trustee prior to the occurrences outlined above. For the avoidance of doubt, none of Fairfield Sigma's cash shall be used to pay the Settlement Amount. For purposes of this Agreement, the term "Business Day" shall mean any day other than Saturday, Sunday, or a day that is a legal holiday in either New York City or the British Virgin Islands.

      3.    Termination of Escrow Agreements. The escrow agreements between the Trustee and the Liquidators dated as of September 24, 2009 and June 8, 2010, respectively (the "Escrow Agreements") (attached hereto as Exhibit F to this Agreement), shall terminate and be of no further force or effect upon receipt by the Trustee of the full amount of the Settlement Payment. Upon the termination of the Escrow Agreements, the Trustee shall have no interest in, rights to or control over any cash or cash equivalents or other property of the Liquidators or any of the Fairfield Funds, including, without limitation, the Fairfield Funds' non-BLMIS investments and the proceeds thereof, except as otherwise provided herein. Upon the receipt by the Trustee of the full amount of the Settlement Payment, the Parties shall jointly instruct the respective escrow agents under the Escrow Agreements to release all property that is subject thereto to the Liquidators. The Trustee hereby consents to (i) the transfer of all unattached funds of the Fairfield Funds in the Citco Account to Fairfield Sentry's accounts, and/or, as applicable, to Fairfield Sigma's or Fairfield Lambda's accounts, in the BVI at Scotiabank British Virgin Islands and/or VP Bank and Trust Company (BVI) (such accounts, collectively, the "Fairfield BVI Accounts"), (ii) the transfer of all funds of the Fairfield Funds in their Clydesdale Bank account in Great Britain, established pursuant to September 24, 2009 Escrow Agreement between the Parties to the applicable Fairfield BVI Accounts of the Fairfield Funds and (iii) the transfer of all proceeds of the Fairfield Funds' non-BLMIS investments to the applicable Fairfield BVI Accounts.

4.     _Redeemer Action Recoveries._  So long as the Non-Forbearance Amount of the Sentry Judgment, the Sigma Judgment and the Lambda Judgment have not been satisfied in full, the Liquidators shall pay to the Trustee fifteen percent (15%) of the Liquidators' Net Recoveries from all claims and causes of actions, asserted by the Liquidators (either on their behalf or on behalf of any of the Fairfield Funds) in any jurisdiction (including, without limitation, the State of New York and the British Virgin Islands) and based on any law (including, without limitation, the statutory and common law of the British Virgin Islands), seeking to recover payments made by or behalf any of the Fairfield Funds in connection with the redemption of shares in the Fairfield Funds ("_Redeemer Actions_"), and the Liquidators shall retain eighty-five percent (85%) of such Net Recoveries. The Redeemer Actions include, but are not limited to, those pending actions identified on _Exhibit G_ attached hereto. The Liquidators shall provide reasonable notice to, and reasonably confer in good faith with, the Trustee prior to commencing any Redeemer Action not identified on _Exhibit G_.  The Liquidators shall retain one-hundred percent (100%) of the Net Recoveries from Redeemer Actions that the Liquidators receive once the Non-Forbearance Amount of the Sentry Judgment, the Sigma Judgment and the Lambda Judgment are satisfied in full.  Except as otherwise provided herein, the Liquidators shall prosecute the Redeemer Actions at their sole expense, and the Trustee shall not, and shall have no right to, (i) intervene in or otherwise interfere with the Liquidators' prosecution of any Redeemer Actions, other than the Trustee's pursuit of the Subsequent Transferee Claims pursuant to Paragraphs 7, 8 and 9 below, or (ii) file, assert, pursue or prosecute any claims or causes of action against any shareholder of any of the Fairfield Funds, or any beneficiary thereof, seeking to recover payments made by or on behalf of any of the Fairfield Funds in connection with the redemption of shares in the Fairfield Funds, other than the Subsequent Transferee Claims pursuant to Paragraphs 7, 8 and 9 below. For purposes of this Agreement, the term "_Net Recoveries_" shall mean the consideration of cash or a cash equivalent that is paid to the Liquidators pursuant to a settlement, judgment or other resolution of a claim or cause of action, and less the amount of the Liquidators' reasonable costs and/or expenses (including professional fees and expenses) incurred in connection with such claim or cause of action other than and expressly excluding any contingency or success fees of the Liquidators' attorneys (the "_Liquidator Expenses_"). The Liquidator Expenses (other than attorneys' contingency fees) shall be reasonably allocated to a particular claim or cause of action. The Trustee shall have no right to object to or challenge the Liquidators' payment of any Liquidator Expenses reasonably incurred and properly allocated. Further, for the avoidance of doubt, the Liquidators shall not be required to pay any amounts to the Trustee, or provide any credit to the Trustee, on account of the waiver, disallowance or reduction in amount of any claims against the Fairfield Funds, and any such waiver, disallowance or reduction in amount will not be credited against the Judgments.

5.     _Management Claim Recoveries._  The Trustee, solely at the Trustee's expense, shall prosecute all claims and causes of action he has asserted in the Adversary Proceeding against the Fairfield Funds' former investment managers, investment advisors, managing entities, directors, partners, and officers, including but not limited to Fairfield Greenwich Group, Fairfield Greenwich (Bermuda) Limited, Fairfield Greenwich Advisors, LLC, Fairfield Risk Services Limited, Fairfield Greenwich Limited, Fairfield International Managers, Inc., Walter M. Noel, Jr., Jeffrey Tucker, and all other individual persons named as defendants in the Adversary Proceeding (the "_Adversary Proceeding Claims_"). At the Closing, the Liquidators shall unconditionally and irrevocably assign to the Trustee any and all claims asserted by, or on behalf of, the Fairfield Funds against Fairfield Greenwich Group, Fairfield Greenwich

6

(Bermuda) Limited, Fairfield Greenwich Advisors, LLC, Fairfield Greenwich Limited, Fairfield Investment Mangers, Inc., Walter M. Noel, Jr., Jeffrey Tucker, Andres Piedrahita, Amit Vijayvergiya, Brain Francouer, Lourdes Barrenche, Cornelius Boele, Philip Toub, Richard Landsberger, Charles Murphy, Andrew Smith, Daniel Lipton, Mark McKeffrey, Harold Greisman, Santiago Reyes, Jacqueline Harrary, Robert Blum, Corina Noel-Piedrahita and Maria Teresa Pulido Mendoza in the action entitled *Fairfield Sentry Limited v. Fairfield Greenwich Group, et al.*, currently pending in the Bankruptcy Court, Adv. Pro. No. 10-03800 (BRL) (the "Liquidators' New York Action"), including but not limited to the Fairfield Funds' claims for Breach of Fiduciary Duty, Breach of Contract, Unjust Enrichment, Constructive Trust, Rescission of Investment Manager Contract based on Mutual Mistake, and Accounting (the "Assigned Claims" and, together with the Adversary Proceeding Claims, the "Management Claims"). For avoidance of doubt, the Management Claims shall not include claims or causes of action, if any, against the Liquidators or their agents, attorneys, employees, representatives or professionals.

In prosecuting the Assigned Claims, the Trustee shall assert only those substantive law claims and allegations set forth and contained in the Liquidators' New York Action and shall not assert any other substantive law claims or allegations as part of the Assigned Claims without the Liquidators' reasonable, written approval. Prior to the assignment of the Management Claims to the Trustee, the Liquidators, in their discretion, may amend their pleadings in the Liquidators' New York Action and shall confer in good faith with the Trustee with respect to the amendment in advance thereof. The Trustee shall retain one-hundred percent (100%) of the consideration received by the Trustee from the prosecution of the Management Claims until the Trustee recovers a gross amount of Two Hundred Million Dollars ($200,000,000) in the aggregate from such claims. The Trustee shall pay to the Liquidators fifteen percent (15%) of the gross consideration received by the Trustee from prosecution of the Management Claims in excess of Two Hundred Million Dollars ($200,000,000) in the aggregate, and the Trustee shall retain the remaining eighty five percent (85%) of the gross consideration received by the Trustee from the Management Claims in excess of Two Hundred Million Dollars ($200,000,000) in the aggregate. Except as otherwise provided in this Paragraph 5, the Liquidators shall not, and shall have no right to, intervene in or otherwise interfere with the Trustee's prosecution of the Management Claims, and the Trustee shall prosecute the Management Claims at his sole expense. The Trustee shall seek, in good faith, as part of any full or partial settlement of the Management Claims, a release of all claims by any settling party against the Fairfield Funds and the Liquidators.

      6.    Service Provider Claim Recoveries. So long as the Non-Forbearance Amount of the Sentry Judgment, the Sigma Judgment and the Lambda Judgment have not been satisfied in full, (i) the Liquidators shall retain one-hundred percent (100%) of the Net Recoveries from all claims and causes of action against the Fairfield Funds' custodians, administrators, accountants and auditors, including but not limited to PricewaterhouseCoopers LLP (Canada), PricewaterhouseCoopers Accountants N.V., Citco Fund Services (Europe) BV, Citco Bank Nederland N.V., Citco Global Custody N.V., Citco Global Custody (NA) N.V., Citco (Canada) Inc. and all affiliates of the foregoing entities (the "Service Provider Claims"), until the Liquidators collect Three Hundred Million Dollars ($300,000,000) in the aggregate from such claims, and (ii) the Liquidators shall pay to the Trustee fifteen percent (15%) of the Net Recoveries from Service Provider Claims in excess of Three Hundred Million Dollars

($300,000,000) in the aggregate, and the Liquidators shall retain the remaining eighty-five percent (85%) of such Net Recoveries. The Liquidators shall retain one-hundred percent (100%) of the Net Recoveries they receive from the Service Provider Claims once the Non-Forbearance Amount of the Sentry Judgment, the Sigma Judgment and the Lambda Judgment are satisfied in full. The Liquidators shall prosecute the Service Provider Claims at their sole expense, and the Trustee shall not, and shall have no right to, intervene in or otherwise interfere with the Liquidators' prosecution of such actions.

7.    Designated Subsequent Transferee Claim Recoveries. The Trustee in his sole discretion has commenced certain actions and may choose to commence additional actions against individuals and entities identified on Exhibit H hereto (the "Designated Subsequent Transferees" and "Designated Subsequent Transferee Claims") to recover transfers from BLMIS to Fairfield Sentry, and subsequently transferred to other individuals and/or entities (the "Subsequent Transferee Claims"). Said Exhibit H, attached and incorporated by reference hereto, is not, and is not intended to be, an exhaustive or inclusive list of all Subsequent Transferee Claims commenced, or to be commenced by the Trustee; provided, however, and except as otherwise provided in the last sentence of this Paragraph 7, that only the Subsequent Transferee Claims against the Designated Subsequent Transferees identified on Exhibit H shall be treated as provided in this Paragraph 7. The Trustee in his discretion has commenced and/or may commence Subsequent Transferee Claims against individuals and/or entities that are not Designated Subsequent Transferees to recover transfers from BLMIS to Fairfield Sentry, Fairfield Sigma, or Fairfield Lambda and subsequently transferred to such individuals and/or entities ("Non-Designated Subsequent Transferees" and "Non-Designated Subsequent Transferee Claims"), upon the Trustee's determination, in the exercise of his sole discretion, that his statutory duties require him to commence such Non-Designated Subsequent Transferee Claims; provided, however, that, with respect to Non-Designated Subsequent Transferee Claims not yet commenced, the Trustee shall provide reasonable notice to, and reasonably confer in good faith with, the Liquidators prior to commencing a Non-Designated Subsequent Transferee Claim; and provided, further, that the Trustee shall not commence a Non-Designated Subsequent Transferee Claim against Fairfield Sigma or Fairfield Lambda. Once the Trustee commences a Non-Designated Subsequent Transferee Claim, the case shall become a Subsequent Transferee Claim for purposes of this Agreement which shall, except as otherwise provided in the last sentence of this Paragraph 7, be treated as provided in either Paragraphs 8 or 9 of this Agreement, as applicable. The Trustee shall pay to the Liquidators forty percent (40%) of Subsequent Transferee Recoveries (as defined below) in connection with Designated Subsequent Transferee Claims, and the Trustee shall retain all other Subsequent Transferee Recoveries from such Designated Subsequent Transferee Claims. The Trustee shall prosecute all Subsequent Transferee Claims solely at his expense.

Pursuant to the cooperation and joint interest provisions set forth and contemplated by Paragraph 14 below, the Trustee and Liquidators shall be in regular communication about the commencement of any Subsequent Transferee Claims. As soon as is reasonably practicable following the Effective Date (defined below), the Liquidators shall take reasonable steps to enable the Trustee to prosecute Subsequent Transferee Claims against the Designated Subsequent Transferees that are subject to an existing action commenced by the Liquidators to the extent the parties mutually agree that any action by the Liquidators is required.

For purposes of this Agreement generally and Paragraphs 7, 8 and 9 herein specifically, the term "Subsequent Transferee Recoveries" shall mean the gross consideration that is paid to the Trustee pursuant to a settlement, judgment or other resolution of a Subsequent Transferee Claim; provided that if, in a particular action, the Trustee asserts a Subsequent Transferee Claim against an individual or entity and in the same action seeks to recover transfers made to or for the benefit of the defendant from one or more entities other than any of the Fairfield Funds, and the entire action is resolved without a judicially determined allocation of the total recoveries therein, the Subsequent Transferee Recoveries shall be deemed to be the gross amount of the Trustee's recoveries from such action, multiplied by a fraction, the numerator of which shall be the amounts claimed by the Trustee on account of transfers made to or for the benefit of the defendant from the Fairfield Funds, and the denominator of which shall be the total amount claimed by the Trustee in such action; provided, further, that any allocation of recoveries set forth in a settlement agreement resolving a Subsequent Transferee Claim shall have no effect on the amount of Subsequent Transferee Recoveries under this Agreement unless the Liquidators consent to such allocation in writing, which consent shall not be unreasonably withheld. To the extent that the Trustee commences a Subsequent Transferee Claim against a Non-Designated Subsequent Transferee and that action is neither a Common Defendant Claim as provided in and by Paragraph 8 below nor a Separately Treated Common Defendant Claim as provided in and by Paragraph 9 below, this Paragraph 7 shall apply to any such action.

8.    Common Defendant Claim Recoveries.    The Parties expressly acknowledge that the Liquidators have commenced or will commence certain Redeemer Actions, and the Trustee has commenced or will commence certain Subsequent Transferee Claims, against the same individuals or entities ("Common Defendants"), and the Trustee and the Liquidators expressly agree that a Redeemer Action and a Subsequent Transferee Claim may be prosecuted against a Common Defendant unless the Parties mutually determine in writing, in good faith, that only the Liquidators' Redeemer Action or only the Trustee's Subsequent Transferee Claim should proceed.  Notwithstanding Paragraphs 4 and 7 above, and except as otherwise provided in this Paragraph 8 and in Paragraph 9 below, in the event that the Liquidators have commenced and are actively prosecuting a Redeemer Action and the Trustee has commenced and is actively prosecuting a Subsequent Transferee Claim against one or more Common Defendants ("Common Defendant Claims"), any and all Net Recoveries paid to the Liquidators and Subsequent Transferee Recoveries paid to the Trustee by or on behalf of Common Defendants in connection with any Common Defendant Claims (collectively, "Common Defendant Recoveries") shall be deemed to be pooled and aggregated by the Parties with respect to each such Common Defendant and allocated among the Parties as follows:

(i)    The Liquidators shall be paid or retain (as applicable) Eighty-Five Percent (85%) of the Fictitious Profit Component (as defined below), if any, and the Trustee shall be paid or retain (as applicable) Fifteen Percent (15%) of the Fictitious Profit Component, if any;

(ii)    The Liquidators shall be paid or retain (as applicable) Sixty-Five Percent (65%) of the BVI Vulnerability Period Component (as defined below), if any, and the Trustee shall be paid or retain (as applicable) Thirty-Five Percent (35%) of the BVI Vulnerability Period Component, if any; and

9

(iii)    The Liquidators shall be paid or retain (as applicable) Forty Percent (40%) of the Other Principal Component (as defined below), if any, and the Trustee shall be paid or retain (as applicable) Sixty Percent (60%) of the Other Principal Component, if any.

Notwithstanding the foregoing, the allocation set forth in this Paragraph 8 shall not apply to (i) Subsequent Transferee Recoveries from the Designated Subsequent Transferees identified on Exhibit H hereto, and such Subsequent Transferee Recoveries shall, in all such Designated Subsequent Transferee Claims, be allocated among the Parties pursuant to Paragraph 7 above, or (ii) Non-Designated Subsequent Transferees identified on Exhibit I hereto, and such Subsequent Transferee Recoveries shall, in all such Non-Designated Subsequent Transferee Claims, be allocated among the Parties pursuant to Paragraph 9 below.

For purposes of this Agreement, (x) the term "Fictitious Profit Component" shall mean and include the first Common Defendant Recoveries up to and including the total amounts claimed by the Liquidators in the applicable Redeemer Action on account of payments made to or for the benefit of the applicable Common Defendant from each Fairfield Fund in excess of the amounts such Common Defendant invested in each such Fairfield Fund (directly or indirectly) as determined according to the Fairfield Funds' books and records (if and to the extent there is such excess); (y) the term "BVI Vulnerability Period Redemptions" shall mean the amounts claimed by the Liquidators in the applicable Redeemer Action on account of payments made to or for the benefit of each Common Defendant in connection with the redemption of shares in the Fairfield Funds (i) from and including April 21, 2007 and thereafter, in the case of redemption of shares in Fairfield Sentry, (ii) from and including April 23, 2007 and thereafter, in the case of redemption of shares in Fairfield Sigma and (iii) from and including February 27, 2007 and thereafter, in the case of redemption of shares in Fairfield Lambda, in all cases, less the Fictitious Profit Component for such Common Defendant, if any; and (z) the term "Other Principal Redemptions" shall mean the total amounts claimed by the Trustee in the applicable Subsequent Transferee Claim on account of payments made to or for the benefit of each Common Defendant in connection with the redemption of shares in the Fairfield Funds, less the BVI Vulnerability Period Redemptions, if any; and (xx) the term "BVI Vulnerability Period Pro Rata Share" shall mean a fraction, the numerator of which is the BVI Vulnerability Period Redemptions, and the denominator of which is the BVI Vulnerability Period Redemptions plus the Other Principal Redemptions; (yy) the term "BVI Vulnerability Period Component" shall mean the amount of the Common Defendant Recoveries less the Fictitious Profit Component, if any, multiplied by the BVI Vulnerability Period Pro Rata Share; and (zz) the term "Other Principal Component" shall mean the amount of the Common Defendant Recoveries less (i) the Fictitious Profit Component, if any, and (ii) the BVI Vulnerability Period Component, if any.

Notwithstanding the foregoing: (a) in the event that all of the Liquidators' claims against a Common Defendant asserted pursuant to the British Virgin Islands Insolvency Act 2003 are dismissed with prejudice prior to the payment of the applicable Common Defendant Recoveries to the Trustee and/or the Liquidators (as applicable), then (i) the BVI Vulnerability Period Component as to such Common Defendant Recoveries shall be zero and (ii) the Other Principal Component as to such Common Defendant Recoveries shall be the amount of Common Defendant Recoveries less the Fictitious Profit Component, if any; (b) in the event that a Subsequent Transferee Claim against a Common Defendant is dismissed with prejudice prior to

the resolution of a Redeemer Action against such Common Defendant, then the Liquidators' Net Recoveries from such Redeemer Action shall not constitute Common Defendant Recoveries, and such Net Recoveries shall be allocated among the Parties in accordance with Paragraph 4; and (c) in the event that the Fictitious Profit Component, BVI Vulnerability Period Component, and/or Other Principal Component of any Common Defendant Recoveries are determined pursuant to a settlement agreement mutually agreed to in writing by the Parties hereto, judgment, jury verdict form, jury interrogatories or other judicial adjudication with respect to the applicable Common Defendant Claim, such determination shall control and be used for purposes of determining the allocation of such Common Defendant Recoveries pursuant to this Paragraph 8.

9. Separately Treated Common Defendant Claim Recoveries. Notwithstanding Paragraph 8 above, unallocated Common Defendant Recoveries from Common Defendant Claims against the Non-Designated Subsequent Transferees identified on Exhibit I hereto ("Separately Treated Common Defendants" and "Separately Treated Common Defendant Claims") shall be deemed to be pooled and aggregated by the Parties with respect to each such Separately Treated Common Defendant and allocated among the Parties as follows:

(i)     The Liquidators shall be paid or retain (as applicable) Eighty-Five Percent (85%) of the Pro Rata Fictitious Profit Component (as defined below), if any, and the Trustee shall be paid or retain (as applicable) Fifteen Percent (15%) of the Pro Rata Fictitious Profit Component, if any; and

(ii)     The Liquidators shall be paid or retain (as applicable) Forty Percent (40%) of the Pro Rata Principal Component (as defined below), if any, and the Trustee shall be paid or retain (as applicable) Sixty Percent (60%) of the Pro Rata Principal Component, if any.

For purposes of this Agreement, (x) the term "Pro Rata Fictitious Profit Component" shall mean the applicable Common Defendant Recoveries multiplied by a fraction, the numerator of which shall be the total amounts claimed by the Liquidators in the applicable Redeemer Action on account of payments made to or for the benefit of the applicable Common Defendant from each Fairfield Fund in excess of the amounts such Common Defendant invested in each such Fairfield Fund (directly or indirectly) as determined according to the Fairfield Funds' books and records (if and to the extent there is such excess), and the denominator of which shall be the total amounts claimed by the Trustee in the applicable Subsequent Transferee Claim on account of payments made to or for the benefit of such Common Defendant in connection with the redemption of shares in the Fairfield Funds; and (y) the term "Pro Rata Principal Component" shall mean the applicable Common Defendant Recoveries less the Pro Rata Fictitious Profit Component. Notwithstanding the foregoing, in the event that the Pro Rata Fictitious Profit Component and/or Pro Rata Principal Component of any Common Defendant Recoveries are determined pursuant to a settlement agreement mutually agreed to in writing by the Parties hereto, judgment, jury verdict form, jury interrogatories or other judicial adjudication with respect to the applicable Separately Treated Common Defendant Claim, such determination shall control and be used for purposes of determining the allocation of such Common Defendant Recoveries with respect to Separately Treated Common Defendant Claims pursuant to this Paragraph 9.

10.     JPMC Claim Recoveries.  The Trustee shall pay to the Liquidators Thirty-Three and Two-Tenths percent (33.2%) of the first gross consideration the Trustee receives from any of the Trustee's and/or BLMIS Estate's claims or causes of action against JPMorgan Chase, N.A. and/or any of its affiliates in an adversary proceeding entitled, *Picard v. JP Morgan Chase & Co.*, which claims were initially filed in the Bankruptcy Court and, following decision on a motion to withdraw the reference, are currently pending in the United States District Court for the Southern District of New York, Case No. 11-cv-00913 (the "JPMC Claims"), until the Liquidators are paid Eighty Eight Million Dollars ($88,000,000) from such consideration.  The Trustee shall prosecute the JPMC Claims solely at his expense, and the Liquidators shall not, and shall have no right to, intervene in or otherwise interfere with the Trustee's prosecution of the JPMC Claims, except if, and only to extent that, the Trustee expressly agrees in writing otherwise.  The Liquidators shall have no right to any consideration received by the Trustee in connection with the JPMC Claims once the Liquidators are paid Eighty Eight Million Dollars ($88,000,000) in accordance with the terms hereof; provided, however, that each dollar of the Trustee recovers from the JPMC Claims in excess of $88,000,000 shall be credited to the Judgments pursuant to Paragraph 11 below, until the Trustee recovers Two-Hundred Sixty-Five Million Dollars ($265,000,000) in the aggregate from such claims.  Within five (5) Business Days after the Effective Date (defined below), the Liquidators shall dismiss with prejudice all claims and causes of action they have asserted against JPMorgan Bank, N.A., JPMorgan (Suisse) S.A., JPMorgan Securities Limited and JPMorgan Trust Company (Cayman).

11.     Application of Recoveries to the Judgments.  Any and all recoveries of monies from the Redeemer Actions, Management Claims, Service Provider Claims, Designated Subsequent Transferee Claims, Non-Designated Subsequent Transferee Claims, Common Defendant Claims, Separately Treated Common Defendant Claims and the JPMC Claims (with respect to the JPMC Claims, as provided in Paragraph 10 above) (collectively, the "Sharing Claims") that are paid, turned over or credited to, or otherwise retained or received by, the Trustee hereunder ("Judgment Reducing Recoveries") shall reduce, on a dollar-for-dollar basis, each of (i) the outstanding amount to be paid by Fairfield Sentry towards satisfying the Non-Forbearance Amount of the Sentry Judgment, and (ii) the outstanding amount to be paid by either (x) Fairfield Sigma towards satisfying the Sigma Judgment or (y) Fairfield Lambda towards satisfying the Lambda Judgment, to be determined by the Liquidators in their sole discretion. For the sake of clarity, each dollar of Judgment Reducing Recoveries shall reduce the outstanding amounts owing on the Non-Forbearance Amount of the Sentry Judgment by one dollar and, at the same time and at the Liquidators' discretion, either the Sigma Judgment or the Lambda Judgment, by one dollar.

12.     Allocation of Shared Recoveries.  On the date that is three (3) months from the Effective Date of this Agreement, and every three (3) months thereafter (each such date, a "Reconciliation Date"), the Trustee and the Liquidators shall jointly and in good faith determine and reconcile the consideration (cash or otherwise) that is payable to each from the Sharing Claims.  If the Trustee is entitled to payment from the Liquidators in connection with the Sharing Claims, the Liquidators shall make a cash payment to the Trustee, to an account identified by the Trustee, of the amount owed to the Trustee, plus any interest that has been earned on and is specifically allocable to such amount, within five (5) Business Days after the applicable Reconciliation Date. If the Liquidators are entitled to payment from the Trustee in connection with the Sharing Claims, the Trustee shall make a cash payment to the Liquidators, to

one or more of the Fairfield BVI Accounts as identified by the Liquidators, of the amount owed
to the Liquidators, plus any interest that has been earned on and is specifically allocable to such
amount, within five (5) Business Days after the applicable Reconciliation Date. Any amounts
recovered by a Party that are subject to payment, turnover or allocation to another Party
hereunder shall be held in trust for the benefit of such Party. If a dispute arises between the
Parties as to the amounts payable to any Party from recoveries on the Sharing Claims, and such
dispute is not resolved within thirty (30) days following a Reconciliation Date, the Parties
consent to the jurisdiction of the Bankruptcy Court to resolve such dispute. For the avoidance of
doubt, the Trustee shall not be entitled to share in any recoveries from claims or causes of action
prosecuted by the Liquidators, and the Liquidators shall not be entitled to share in any recoveries
from claims or causes of action prosecuted by the Trustee, except for recoveries from the Sharing
Claims.

   13. Allowance of a Fairfield Sentry Customer Claim. Upon the occurrence of
the making of the Twenty Four Million Dollar ($24,000,000) partial payment of the Settlement
Payment as set forth in Paragraph 2 above, and notwithstanding Section 502(d) of the
Bankruptcy Code, the Trustee shall allow a Fairfield Sentry customer claim pursuant to 15
U.S.C. § 78*lll* (11) equal in priority to other allowed customer claims against the BLMIS Estate
(the "Allowed Claim"), in the initial amount of Seventy Eight Million Dollars ($78,000,000).
Upon the payment of the balance of the Settlement Payment as set forth in Paragraph 2 above,
the Trustee shall increase the amount of the Allowed Claim by the amount of One Hundred Fifty
Two Million Dollars ($152,000,000) resulting in an Allowed Claim in a final amount of Two
Hundred Thirty Million Dollars ($230,000,000) (the "Final Amount"). The amount of the
Allowed Claim represents Nineteen and Two-Tenths percent (19.2%) (the "Settlement
Percentage") of the Sentry SIPA Net Equity Claim. The Liquidators shall receive the full benefit
of any SIPC customer advances under Section 9 of SIPA. The payment of any sums to the
Trustee by the Liquidators and/or the Fairfield Funds or via recoveries of monies from the
Sharing Claims shall not serve to increase the Allowed Claim. Notwithstanding any other
language in this Agreement, in the event that, as a result of a final, non-appealable judicial
determination and order of the Net Equity Method issue, allowed customer claims against
BLMIS are ultimately calculated based on the amounts reflected on a customer's BLMIS
account statement for the period ending November 30, 2008 (the "Last Statement Method"), or
to include other amounts beyond the Net Equity Method (including, for example, if customers
are entitled to receive interest on their deposits with BLMIS) (together with the Last Statement
Method, the "Modified Net Equity Method"), the amount of the Allowed Claim shall be
calculated in the same manner as other allowed customer claims are calculated pursuant to the
Modified Net Equity Method, provided that, in such event, the allowed amount of the Allowed
Claim shall equal the product of multiplying the Settlement Percentage of nineteen and two-
tenths percent (.192) times the amount of the Sentry SIPA Claim as calculated pursuant to the
Modified Net Equity Method (the "Adjusted Allowed Claim"). The Trustee shall not seek to
subordinate, under principles of equitable subordination or any other basis (including, but not
limited to, pursuant to Section 510(c) of the Bankruptcy Code), the Allowed Claim or the
Adjusted Allowed Claim (as applicable) below allowed customer claims in the SIPA Proceeding.
For the avoidance of doubt, in the event that valid customer claims against BLMIS are ultimately
calculated using the Last Statement Method without any other adjustments, the Adjusted
Allowed Claim would total One Billion Two Hundred Six Million Five Hundred Eighty Nine
Thousand Seven Hundred Forty Three Dollars ($1,206,589,743), which amount is calculated by

multiplying the Last Statement Amount of Six Billion Two Hundred Eighty Four Million Three Hundred Twenty One Thousand Five Hundred Eighty One Dollars ($6,284,321,581) times Nineteen and Two Tenths Percent (.192). The Bankruptcy Court's order approving this Agreement shall provide for the allowance of the initial amount of the Allowed Claim and the increase of the Allowed Claim as provided in this Paragraph 13.

14. Cooperation in Pursuing and Resolving the Sharing Claims. Through a separate joint interest agreement, to be entered into by the Parties as soon as reasonably practicable following the Effective Date, the Trustee and the Liquidators each agree to provide reasonable access to the other's documents, data, and other information relating to, or beneficial to the pursuit of, the Sharing Claims. The Trustee and the Liquidators each agree to provide reasonable cooperation and assistance to the other Party in connection with the prosecution of the Sharing Claims, provide the other with a reasonable opportunity to consider the terms for resolving any Sharing Claims and confer in good faith regarding such terms; provided, however, that the Party authorized under this Agreement with the right and/or responsibility of prosecuting a Sharing Claim (such Party, the "Prosecuting Party") shall not be required to obtain the consent of the other Party to resolve or settle the Prosecution Party's claim. Within five (5) Business Days following the settlement or other resolution of a Sharing Claim, the Prosecuting Party shall (i) notify the other Party of the amounts, if any, paid or to be paid to the Prosecuting Party in connection therewith and (ii) provide the other Party with a copy of the applicable settlement agreement, if any, subject to compliance with any applicable confidentiality obligations. If the Liquidators request that the Trustee, on behalf of himself, BLMIS and/or its estate, release claims against a person or entity in connection with the settlement of any of the Sharing Claims prosecuted by the Liquidators against such person or entity, the Trustee agrees that he shall not unreasonably refuse to provide such release. If the Trustee requests that the Liquidators, on behalf of themselves, any of the Fairfield Funds and/or their estates, release claims against a person or entity in connection with the settlement of any of the Sharing Claims prosecuted by the Trustee against such person or entity, the Liquidators agree that they shall not unreasonably refuse to provide such release. The Trustee and the Liquidators agree and stipulate that a joint interest exists between them with respect to the Sharing Claims. The Trustee and the Liquidators further agree and stipulate that neither this Agreement nor any action taken thereunder constitutes the waiver of any privilege or immunity of the Trustee or the Liquidators or their respective counsel.

15. Release by the Trustee. In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Trustee, on behalf of himself, BLMIS and its estate hereby releases, acquits and forever discharges each of the Fairfield Funds, the Liquidators, individually and in their capacities as Liquidators, and all of the Liquidators' agents, representatives, attorneys, employees and professionals from any and all Trustee Released Claims (as defined below). The Trustee and the Liquidators expressly agree this release shall not affect or encompass any claims by the Trustee against any third party, including but not limited to, the Fairfield Funds' respective former officers, directors, custodians, administrators, accountants, auditors, investment advisors and management companies, and the Fairfield Funds' former and present investors or shareholders. For purposes of this Agreement, the term "Trustee Released Claims" shall mean any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages,

14

judgments, and claims whatsoever, asserted or unasserted, known or unknown, now existing or arising in the future (including, without limitation, the claims asserted against the Fairfield Funds in the Adversary Proceeding), except for any and all claims and rights (and the enforcement thereof) of the Trustee and obligations of the Liquidators arising under this Agreement.

       16.    Release by the Liquidators and the Fairfield Funds. In consideration for the covenants and agreements in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Liquidators, on behalf of themselves, each of the Fairfield Funds and their respective estates, hereby release, acquit and forever discharge the Trustee and all of the Trustee's agents, representatives, attorneys, employees and professionals from any and all Liquidator Released Claims (as defined below). The Trustee and the Liquidators expressly agree this release shall not affect or encompass (i) any claims by the Liquidators or any of the Fairfield Funds against any third party, including, but not limited to, the Fairfield Funds' investors and shareholders and former directors, auditors, managers, investment advisors, administrators, custodians and other service providers, (ii) any claims by any creditors or shareholders of, or investors in, any the Fairfield Funds against BLMIS or the BLMIS Estate, or (iii) the status or resolution of the Sigma SIPA Claim or the Lambda SIPA Claim, which shall be determined in a manner consistent with the customer claims asserted by other indirect investors in BLMIS. For purposes of this Agreement, (i) the term "Liquidator Released Claims" shall mean any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, damages, judgments, and claims whatsoever, asserted or unasserted, known or unknown, now existing or arising in the future, except for the Fairfield SIPA Claims, the Allowed Claim, the Adjusted Allowed Claim (if applicable), and/or any and all claims and rights (and the enforcement thereof) of the Fairfield Funds and obligations of the Trustee arising under this Agreement; and (ii) the term "Released Claims" shall mean, collectively, the Trustee Released Claims and the Liquidator Released Claims.

       17.    Unknown Claims. Unknown Claims shall mean any Released Claim, as defined herein, that the Trustee and/or the Liquidators do not know or suspect to exist in their favor at the time of giving the release in this Agreement that if known by them, might have affected their settlement and release in this Agreement. With respect to any and all Released Claims in Paragraphs 15 and 16 of this Agreement, the Trustee and the Liquidators shall expressly waive or be deemed to have waived, the provisions, rights and benefits of California Civil Code section 1542 (to the extent it applies herein), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

The Trustee and the Liquidators expressly waive, and shall be deemed to have waived, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable or equivalent in effect to California Civil Code section 1542. The Trustee and/or the Liquidators may hereafter

discover facts in addition to or different from those that they now know or believe to be true with
respect to the subject matter of the Released Claims, but the Trustee and the Liquidators shall
expressly have and shall be deemed to have fully, finally and forever settled and released any
and all Released Claims, known or unknown, suspected or unsuspected, contingent or
noncontingent, whether or not concealed or hidden, that now exist or heretofore have existed,
upon any theory of law or equity now existing or coming into existence in the future, including
conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty,
law or rule, without regard to the subsequent discovery or existence or such different or
additional facts. Each of the Trustee and the Liquidators acknowledge and shall be deemed to
have acknowledged that the foregoing waiver was separately bargained for and a key element of
the settlement of which this release is a part.

18.     Bankruptcy Court and BVI Court Approval; Effective Date; Termination.
This Agreement is subject to, and shall become effective and binding on the Parties upon, and
only upon, the later of both, (i) fourteen days following the Bankruptcy Court's entry of an order
approving this Agreement in the SIPA Proceeding that is not subject to a timely stay by any
court of competent jurisdiction and (ii) fourteen days following the BVI Court's entry of an order
approving this Agreement that is not subject to a timely stay by any court of competent
jurisdiction (the date when this Agreement becomes effective and binding on the Parties, the
"Effective Date"). The form of the approval order in the SIPA Proceeding shall be subject to the
Liquidators' reasonable approval. The Trustee shall use his reasonable efforts to obtain approval
of the Agreement in the SIPA Proceeding as promptly as practicable after the date of this
Agreement. The form of the approval order in the BVI Proceedings shall be subject to the
Trustee's reasonable approval. The Liquidators shall use their reasonable efforts to obtain
approval of the Agreement in the BVI Proceedings as promptly as practicable after the date of
this Agreement. If this Agreement has not become effective as provided in this Paragraph 18
within Three Hundred Sixty (360) days after the date of this Agreement (or within such
additional time as mutually agreed upon by the Parties), then (a) this Agreement (other than this
Paragraph 18) shall terminate and be void, (b) all of the statements, concessions, consents and
agreements contained in the Agreement (other than this Paragraph 18) shall be void; and (c) none
of the Trustee, the Liquidators, or any of the Fairfield Funds may use or rely on any such
statements, concessions, consents or agreements in any public statement or litigation involving
the SIPA Proceeding, the BVI Proceedings or the Chapter 15 Proceedings, any case or
proceeding relating to the SIPA Proceeding, the BVI Proceedings or the Chapter 15 Proceedings
or any case or proceeding relating to any of the Fairfield Funds, BLMIS or Madoff.

19.     Use of Complaint. The Parties agree and acknowledge that the
Liquidators, on behalf of themselves and each of the Fairfield Funds, deny any liability to the
BLMIS Estate, do not admit to any of the allegations in the complaint or the amended complaint
filed in the Adversary Proceeding, and none of the allegations in such complaints shall be
binding on or admissible against the Liquidators or any of the Fairfield Funds in any proceeding.

20.     Closing. There shall be a closing ("Closing") on the Effective Date of this
Agreement. On the date when the Settlement Payment is paid in full pursuant to Paragraph 2
hereof, whether on the date of the Closing or some later date, (a) the Trustee shall pay Fairfield
Sentry $500,000 from SIPC advances under Section 9 of SIPA to one or more of the Fairfield
BVI Accounts as identified by the Liquidators, which amount may, prior to the payment in full

of the Settlement Payment, and with the mutual written consent of the Parties, such consent not to be reasonably withheld, be paid by setoff against the Settlement Payment; (b) the amount of the Allowed Claim shall be increased to the Final Amount without any further action by any of the Parties (subject to the adjustment of such amount as provided for in Paragraph 13); (c) the releases contained in Paragraphs 15 and 17 in favor of the Liquidators and the Fairfield Funds shall become effective without any further action by any of the Parties; and (d) the Escrow Agreements referenced in Paragraph 3 of this Agreement shall terminate without any further action by any of the Parties.

21.    Liquidators' and Trustee's Authority.    The Liquidators represent and warrant to the Trustee that, as of the date hereof, and subject to the approval of the BVI Court as set forth in Paragraph 18 above, each of them has the full power, authority and legal right to execute and deliver, and to perform his or her respective obligations under, this Agreement and has taken all necessary action to authorize the execution, delivery, and performance of his or her respective obligations under this Agreement.    The Trustee represents and warrants to the Liquidators that, as of the date hereof, and subject to the approval of the Bankruptcy Court as set forth in Paragraph 18 above, he has the full power, authority and legal right to execute and deliver, and to perform his obligations under, this Agreement and has taken all necessary action to authorize the execution, delivery, and performance of his respective obligations under this Agreement.

22.    Further Assurances.    The Trustee and the Liquidators shall execute and deliver any document or instrument reasonably requested by either of them after the date of this Agreement to effectuate the intent of this Agreement.

23.    Entire Agreement.    This Agreement constitutes the entire agreement and understanding between and among the Parties and supersedes all prior agreements, representations and understandings concerning the subject matter hereof.

24.    No admission.    This Agreement and all negotiations, statements, and proceedings in connection therewith are not, will not be argued to be, and will not be deemed to be a presumption, concession or admission by any Party of any fault, liability or wrongdoing whatsoever.  This Agreement and any matter relating thereto may not be offered or received in evidence or otherwise referred to in any civil, criminal, or administrative action or proceeding as evidence of any wrongdoing or liability. Notwithstanding the foregoing, the Judgments may be used by the Trustee to prosecute a Subsequent Transferee Claim, and then for the purpose of establishing the avoidance of the Withdrawals.

25.    Amendments, Waiver.    This Agreement may not be terminated, waived, amended or modified in any way except in a writing signed by all the Parties.  No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

26.    Assignability.    No Party hereto may assign his or her rights under this Agreement to a third party without the prior written consent of each of the other Parties hereto.

27.    Successors Bound. This Agreement shall be binding upon and inure to the benefit of each of the Parties and their successors and permitted assigns.

28.    No Third Party Beneficiary. The Parties do not intend to confer any benefit by or under this Agreement upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

29.    Applicable Law. This Agreement shall be construed and enforced in accordance with the laws of the State of New York (without regard to its conflict of laws provisions); provided, however, that the BVI Court's approval of this Agreement pursuant to Paragraph 18 hereof shall be in accordance with the law of the BVI.

30.    Exclusive Jurisdiction. The Parties agree that the Bankruptcy Court shall have exclusive jurisdiction over any action to enforce this Agreement, or any provision thereof, and the Parties hereby consent to and submit to the jurisdiction of the Bankruptcy Court for any such action. The Parties agree that no Party shall bring, institute, prosecute or maintain any action to enforce this Agreement, or any provision thereof, in any court other than the Bankruptcy Court except for the limited purpose of enforcing a final award or judgment entered by the BVI Court or Bankruptcy Court in connection with this Agreement.

31.    Captions and Rules of Construction. The captions in this Agreement are inserted only as a matter of convenience and for reference and do not define, limit or describe the scope of this Agreement or the scope or content of any of its provisions. Any reference in this Agreement to a Paragraph is to a Paragraph of this Agreement. "Includes" and "including" are not limiting.

32.    Recitals. Any facts set forth in any sentence in the Background section hereto preceded by the phrase "according to the Trustee" are those provided by the Trustee, and none of such facts shall be binding on or admissible against the Liquidators or any of the Fairfield Funds in any proceeding.

33.    Counterparts; Electronic Copy of Signatures. This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document. The Parties may evidence their execution of this Agreement by delivery to the other Parties of scanned or faxed copies of their signatures, with the same effect as the delivery of an original signature.

34.    Notices. Any notices under this Agreement shall be in writing, shall be effective when received and may be delivered only by hand, by overnight delivery service, by fax or by electronic transmission to:

If to the Trustee, c/o:

Mark Kornfeld, Esq.
Baker & Hostetler LLP
45 Rockefeller Center, Suite 1100
New York, NY 10111
F:  (212) 589-4201
mkornfeld@bakerlaw.com

If to the Liquidators, c/o:

William Hare
Forbes Hare
Palm Grove House
P.O. Box 4649
Tortola VG 1110
British Virgin Islands
F:  (284) 494-1316
whare@forbeshare.com

With copies to:

Kenneth M. Krys and Joanna Lau
c/o KRyS Global
Commerce House, 2nd Floor
P.O. Box 930
Tortola VG 1110
British Virgin Islands
F:  (284) 494-7169
kenneth.krys@krys-global.com
joanna.lau@krys-global.com

-and-

David J. Molton, Esq.
Brown Rudnick LLP
Seven Times Square
New York, NY 10036
F: (212) 938-2822
dmolton@brownrudnick.com

*[Signature page follows]*

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

_____

Irving H. Picard, Trustee


_____

Kenneth Krys, as Joint Liquidator for and on behalf of Fairfield Sentry Limited, Fairfield Sigma Limited and Fairfield Lambda Limited


_____

Joanna Lau, as Joint Liquidator for and on behalf of Fairfield Sentry Limited, Fairfield Sigma Limited and Fairfield Lambda Limited