# EXHIBIT D

UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

# Minutes of Proceedings

_____

Date: Sept 22, 2011

------------------------------------------------------------------X
SECURITIES INVESTOR PROTECTION
CORPORATION,

        Plaintiff-Applicant      Adv. Pro. No. 08-01789 (BRL)
                                                                           SIPA LIQUIDATION

    v.                                                                 (Substantively Consolidated)

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,
        Debtor.
------------------------------------------------------------------X
In re:

BERNARD L. MADOFF
        Debtor.
------------------------------------------------------------------X
IRVING H. PICARD, AS TRUSTEE FOR THE
LIQUIDATION OF BERNARD L. MADOFF
INVESTMENT SECURITIES LLC,

        Plaintiff,

    v.                                                            Adv. Pro. No. 10-05310 (BRL)

TREMONT GROUP HOLDINGS, INC., *et al*,

        Defendants.
------------------------------------------------------------------X

| Present: | Hon. Burton R. Lifland<br>Bankruptcy Judge | Monica Saenz de Viteri<br>Courtroom Deputy | ECRO<br>Court Reporter |
|---|---|---|---|

**Proceedings:**
    ☒ Trustee's Motion Approving a Settlement Agreement

**Orders:**    ☒ **Relief sought in the Motion:**
                ¤ Denied   ☒ Granted   ¤ Dismissed      ¤ Awarded by Default
              ¤ Matter taken under advisement
              ¤ Formal order or Judgment to enter
              ¤ Confirmation/modification of plan      ¤ granted      ¤ denied
              ☒ As per the record of the hearing held on September 22, 2011, the Motion is hereby GRANTED. Attached hereto is the Bench Memorandum Granting Trustee's Motion for Entry of an Order Approving Settlement Agreement. It So Ordered.

**BY THE COURT**                                        **FOR THE COURT:** Vito Genna, Clerk

/s/ Burton R. Lifland                **Sept. 22, 2011**      By: /s/ Monica Saenz de Viteri
**United States Bankruptcy Judge**        **Date**                **Deputy Clerk**

# BENCH MEMORANDUM AND ORDER GRANTING TRUSTEE'S MOTION FOR ENTRY OF ORDER APPROVING AGREEMENT

Before the Court is the Motion of the Trustee of the SIPA liquidation of BLMIS seeking approval of a Settlement of the Trustee's instant adversary proceeding (the "Action") as between the Trustee and The Settling Tremont Defendants,[1] pursuant to, *inter alia*, Bankruptcy Rule 9019.

The issue presented by this Motion for approval of the settlement is solely whether the proposed Settlement is fair and equitable, above "the lowest point in the range of reasonableness," and in the best interests of *the BLMIS estate*. *Liu v. Silverman (in re Liu)*, 166 F.3d 1200, at *1 (2d Cir. 1998) (citing *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)). In determining reasonableness, courts consider a number of factors, including (i) the probability of success in the litigation; (ii) the difficulties associated with collection; (iii) the complexity of the litigation and attendant expense, inconvenience, and delay; and (iv) the paramount interests of creditors. *In re Refco, Inc.*, No. 06-CIV-5596, 2006 WL 3409088, at *7 (S.D.N.Y. Nov. 16, 2006), *aff'd*, 505 F.3d 109 (2d Cir. 2007); *Air Line Pilots Assoc., Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere*

---

[1] Tremont Group Holdings, Inc. ("Tremont Group"); Tremont Partners, Inc. ("Tremont Partners"); Tremont (Bermuda) Limited ("Tremont Bermuda"); Rye Select Broad Market Fund, L.P. ("Broad Market Fund"), Rye Select Broad Market Prime Fund, L.P. ("Prime Fund"), Rye Select Broad Market Portfolio Limited ("Portfolio limited") (Broad Market Fund, Prime Fund, and Portfolio Limited collectively shall be referred to herein as the "Rye Funds"); Rye Select Broad Market Insurance Fund, L.P. ("Rye Insurance"); Rye Select Broad Market XL Fund, L.P. ("XL LP"); Tremont Arbitrage Fund, L.P., Tremont Arbitrage Fund Ireland, Tremont Emerging Markets Fund – Ireland, Tremont Equity Fund – Ireland, Tremont International Insurance Fund, L.P., Tremont Long/Short Equity Fund, L.P., Tremont Market Neutral Fund, L.P., Tremont Market Neutral Fund II, L.P., Tremont Market Neutral Fund Limited, Tremont Opportunity Fund Limited, Tremont Opportunity Fund II, L.P., Tremont Opportunity Fund III, L.P., Rye Select Equities Fund, Tremont Multimanager Fund, and LifeInvest Opportunity Fund LDC (the foregoing entities not otherwise defined collectively shall be referred to herein as the "Tremont Funds"); Oppenheimer Acquisition Corp. ("Oppenheimer"); MassMutual Holding LLC ("MassMutual Holding"); Massachusetts Mutual Life Insurance Company ("MassMutual") (Oppenheimer, MassMutual Holding, and MassMutual collectively shall be referred to herein as the "Parent Defendants"); Robert I. Schulman ("Schulman") (Tremont Group, Tremont Partners, Tremont Bermuda, the Rye Funds, Rye Insurance, XL LP, the Tremont Funds, and Schulman shall be referred to herein as the "Tremont Defendants"); and Rye Select Broad Market Insurance Portfolio LDC ("Insurance Portfolio LDC"). (Collectively "The Settling Defendants").

1

*Clubs, Inc.)*, 156 B.R. 414, 428 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994); *see also In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992).

The Court finds that the Settlement represents a complete, good faith compromise of the Trustee's claims, is above the lowest rung of reasonableness, and in fact offers significant value to the BLMIS estate for the distribution to victims of the Madoff Ponzi scheme. The Trustee has submitted, in his good faith business judgment, that continued litigation would be costly and complex. In particular the Trustee has asserted that he believes that litigating the claims would be time consuming and would involve the risks associated with all litigation and collection. *See* Affidavit of Irving H. Picard, Dkt. No. 17, Exhibit D, ¶ 4. In contrast, the proposed Settlement ensures judgments against the Settling Defendants, which include five BLMIS feeder funds that were some of the largest BLMIS customers, in favor of the BLMIS estate. Indeed the Settlement is the largest to date with any of the Madoff feeder funds and will enable the estate to immediately recover $1.025 billion for the eventual return to defrauded BLMIS customers. In return the Trustee will release all the settling defendants from causes of action he has brought against them and allow the customer claims of the Broad Market Fund in the amount of $1,647,687,625.00, the Portfolio Limited Fund in the amount of $498,490,000.88, and the Rye Insurance in the amount of $40,000,000.00, all net losers pursuant to this Courts calculation of net equity. In addition, the Broad Market Fund and the Portfolio Limited Fund will be granted a claim of $800 million pursuant to section 502(h) of the Code ("Section 502(h)").

Only two objections were filed, the first of which is a limited objection made by "the Carriers"[2] and the second by "XL LP/Prime Investors"[3] (collectively, the "Objectors"). Both

---

[2] A handful of insurance companies, including John Hancock Life Insurance Company (U.S.A.), Nationwide Life Insurance Company, New York Life Insurance & Annuity Corporation, Pacific Life Insurance Company, Pruco Life Insurance Company, Security Life of Denver Insurance Company, and Sun Life Assurance Company of Canada

Objectors are non-BLMIS customers who only invested in funds that are among the Settling Defendants. Nonetheless, they filed objections which essentially assert that the Settlement is unfair to certain of the Funds participating in the Settlement and by extension to the investors in those Funds. Both parties argue that the $800 Million Section 502(h) claim should be apportioned between all parties contributing to the settlement not just the Broad Market Fund and the Portfolio Limited Fund. The XL LP/Prime Investors have two additional objections. First, they argue that because the Tremont Group, Tremont Partners, Tremont Bermuda, The Parent defendants and Schulman are not contributing toward the Proposed Settlement the release of the trustee's claims against them is unfair and inequitable. Secondly, they argue that section 550(d) of the Code ("Section 550(d)") precludes the Trustee from collecting the remainder of his claims from subsequent transferees of the Settling Defendants and it is, therefore, unfair to release those claims without receiving any contribution from such subsequent transferees.

As neither Objector is a customer or creditor of BLMIS, but are investors in Funds that are direct customers of BLMIS; at best, they are creditors of BLMIS's creditors. Therefore, as a threshold matter, the Objectors are "not directly and adversely affected pecuniarily . . . because they do not hold a direct interest in the Debtor, [BLMIS]," and lack standing to object to the Trustee's Motion. *In re Refco Inc.*, 2006 WL 3409088, at *2, *6 (holding that "interest holders in and, perhaps, creditors of the non-debtor parties to the settlement" lacked standing to object to the settlement under Bankruptcy Rule 9019).

---

(U.S.) (collectively the "Carriers"). The Carriers are purportedly investors in Tremont Opportunity Fund III ("Opportunity III"), an alleged subsequent transferee of customer property.

[3] Phoenix Lake Partners, Inc., Lakeview Investment, LP, 2005 Tomchin Family Charitable Trust, Edward White (for himself and on behalf of White Trust dated May 3, 2002), and Rigdon O. Dees, III (collectively, the "XL LP/Prime Investors"). The XL/Prime Investors are purportedly investors in defendant Prime Fund (a direct BLMIS customer) and/or defendant XL LP (an indirect investor alleged to have received subsequent transfers).

Furthermore, even assuming the Objectors did have standing, most of the objections fail to argue that the Settlement is not in the best interest of BLMIS or its creditors; rather they contest the fairness of the settlement in light of their own financial interests—for example, questioning the allocation of the Section 502(h) claim. However, when reviewing settlement agreements the responsibility of the Bankruptcy court is to ensure the terms are fair and reasonable to the debtor's estate. *See In re Refco*, 505 F.3d at 119 ("[A] bankruptcy court's obligation is to determine whether a settlement is in the best interests of *the estate*." (emphasis in original)); *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994); *Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994). Bankruptcy courts need not evaluate a Settlement's impact upon the settling parties nor are they responsible to correct perceived inequities between the parties in a settlement. *See In re Refco*, 505 F.3d at 118 ("Bankruptcy court is a forum where creditors and debtors can settle their disputes with each other. Any internal dispute between a creditor and that creditor's investors belongs elsewhere."). Indeed the class action suit entitled *In re Tremont Securities Law, State Law, and Insurance Litigation*, No. 08-CV-11117 (TPG) (S.D.N.Y), being presided over by Judge Griesa is the more appropriate forum to raise these objections. In fact, the allocation of the proceeds recovered by the Settling Defendants pursuant to their allowed customer claims has yet to be determined; the Settlement agreement specifies that "for purposes of this agreement, the Tremont Defendants covenant that they will cause all payments received from the Trustee in respect of the Total Allowed Claims Amount to be fairly and equitably allocated among Broad Market Fund, Portfolio Limited, Rye Insurance, and their respective partners and/or investors." Settlement Agreement ¶ 5c. Thus, any objection to such

4

allocation is premature, as the parties will have the chance to litigate any distribution issues in the proceeding pending in the Southern District of New York.

Even if the above did not apply the Objector's arguments are legally incorrect. Both objectors argue that it is unfair that Prime Fund, the fund they ultimately invested in, is contributing toward the settlement payment and not receiving any allocation from the 502(h) claim. However, the Prime Fund's customer claim was disallowed by the Trustee due to its status as a "net winner" and thus would be entitled to a Section 502(h) claim. *See In re Gurley*, 311 B.R. 910, 918 (Bankr. M.D. Fla. 2001) (explaining that under Section 502(h) "[t]he obligation for which the payment was made is revived and may be asserted against the debtor's estate because the creditor has lost the value of the payment received"); *Aargus Polybag Co. v. Commonwealth Edison Co. (In re Aargus Polybag Co.)*, 172 B.R. 586, 589 (Bankr. N.D. Ill. 1994) ("The effect of § 502(h) is to restore the creditor to the status it would have had if the avoided payment had not been made - a pre-petition creditor.").[4] On the other hand, the Broad Market Fund and the Portfolio Limited Fund are net losers of over $2 billion combined and are entitled to a Section 502(h) claim for any transfers avoided by the Trustee.

Similarly, there is no merit to the Objectors argument that Section 502(d) precludes the Trustee from seeking to recover more than $215 million in transfers purportedly made by one or more Funds to subsequent transferees. While Section 550(d) limits a trustee to "a single satisfaction" of an avoidable transfer, 11 U.S.C. § 550(d), the trustee may recover from multiple

---

[4] The XL XP/Prime Objectors also seek clarification whether any settlement payments attributable to Prime Fund will be discounted from their withdrawals in determining its SIPA claim. However, making such determinations as part of settlement approval "needlessly increases the transaction costs of a settlement," and is inappropriate. *Dzikowski v. N. Trust Bank of Fla., N.A. (In re Prudential of Florida Leasing, Inc.)*, 478 F.3d 1291, 1302 (11th Cir. 2007) (discussing a court determining the allocation of settlement payments against subsequent recoveries by a trustee as part of settlement approval). Certainly in this case, where Prime Fund is a net winner by over 210 million, a determination on the impact of settlement payments on its SIPA claim is unnecessary at this point. *See Id.* at 1303 ("It makes much more sense to wait and see if future litigation requires the allocation.").

5

transferees so long as the total recovery does not exceed the value of the avoidable transfer. *See Shapiro v. Art Leather, Inc. (In re Connolly N. Am., LLC)*, 340 B.R. 829, 841 (Bankr. E.D. Mich. 2006) (explaining a transfer beneficiary is provided a defense under Section 550(d) when "the trustee has already received *full satisfaction* from the initial transferee, as a result of a settlement with the initial transferee, or otherwise.") (emphasis added); *see also See* 5 COLLIER ON BANKRUPTCY ¶ 550.05 at 550–27 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011) ("[I]f the trustee recovers from a subsequent bad faith transferee, the trustee may not recover again from the initial transferee of the debtor in an amount that would result in a recovery of more than the property or its value."). Here, the Settlement specifically provides that the Trustee may seek additional recovery from any non-settling defendant or subsequent transferee, and Section 550(d) does not dictate otherwise. *See* Settlement Agreement ¶ 4 ("It is expressly understood between the Parties that the Settlement Payments shall not, and are not, intended to release, waive, prejudice, or limit the Trustee's rights and ability to pursue any actions or claims, including, but not limited to, recovery [from avoidance actions], available to him against any non-party to this Agreement."). Indeed, "double recovery" is an impossibility in this case. In the adversary proceeding, the Trustee alleges that the Funds received avoidable transfers totaling $2.1 billion and the Settlement provides for payment of $1.025 billion. As such, even if the Trustee ultimately succeeds in recovering from the subsequent transferees of the Settling Defendants, the aggregate recovery cannot exceed $2.1 billion.

Likewise, the Objectors' are misplaced in arguing that it is not fair or equitable to release Tremont Holding, Tremont Group, Tremont Bermuda, the Parent Defendants and Schulman from subsequent transferee liability when these defendants are not contributing anything towards the settlement payment of $1 Billion. First, many of these defendants are providing

6

consideration in exchange for their release. For example, The Tremont Group, Tremont Partners, and Tremont Bermuda agree to waive any fees, profits, or expenses for their management or administration of any funds received, directly or indirectly on behalf of, Broad Market Fund, Portfolio Limited, Rye Insurance, or Insurance Portfolio LDC, from the BLMIS estate. In addition, all amounts received from distribution by BLMIS to the Rye Funds, except for the costs of winding up the Tremont Group and its subsidiaries, are to be distributed solely to investors in the Rye Funds and the Tremont Funds and are not retained by Tremont Group, Tremont Partners or Tremont Bermuda. Second, where, as here, the total settlement is fair and reasonable, "the court is not required to supervise how the defendants apportion liability for that compensation among themselves." *Becker v. Warner Commc'ns, Inc. (In re Warner Commc'ns Secs. Litig.)*, 798 F.2d 35, 37 (2d Cir. 1986). As such, "'the release of noncontributing defendants through a settlement agreement is no reason for disapproving the compromise.'" *Duban v. Diversified Mortg. Investors*, 87 F.R.D. 33, 40 (S.D.N.Y. 1980) (citation omitted). While couched in terms of the fairness and equability of the Settlement, this objection is merely an inter-defendant dispute regarding the Settling Defendants' division of responsibility for the settlment payments. If the Objectors have any issues to such apportionment between the settling parties, they should seek relief in accordance to the bylaws of their respective funds in the appropriate forum.

Accordingly, as approval of the Settlement is in the best interests of the BLMIS estate and the Objectors have not established otherwise, the Trustee's Motion is hereby GRANTED, and the objections are overruled.

**IT IS SO ORDERED**.

Dated: New York, New York
      September 22, 2011

                                            /s/ Burton R. Lifland
                                            United States Bankruptcy Judge