KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, New York 10020
(212) 940-8800
*Attorneys for Defendants*

Hearing Date: December 14, 2022
Opposition Date: September 9, 2022
Reply Date: October 10, 2022

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | ) ) ) |
| Plaintiff-Applicant, | ) |
| v. | ) ) |
| BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, | ) ) ) ) |
| Defendant. | ) |
| In re: | ) ) |
| BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, | ) ) ) ) |
| Debtor. | ) |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff | ) ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| ROYAL BANK OF CANADA, individually and as successor in interest to Royal Bank of Canada (Asia) Limited; GUERNROY LIMITED; RBC TRUST COMPANY (JERSEY) LIMITED; BANQUE SYZ S.A., as successor in interest to Royal Bank of Canada (Suisse) S.A.; RBC DOMINION SECURITIES INC.; and RBC ALTERNATIVE ASSETS, L.P., | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

Adv. Pro. No. 08-01789 (CGM)

**SIPA Liquidation**
**(Substantively Consolidated)**

Adv. Pro. No. 12-01699 (CGM)

**DEFENDANTS' MEMORANDUM OF LAW IN**
**SUPPORT OF THEIR MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND ................................................................................ 3

    a.    The Defendants Alleged Contacts with the United States ...................................... 4

ARGUMENT ........................................................................................................ 5

POINT I: THE TRUSTEE'S ALLEGATIONS ARE INSUFFICIENT TO ESTABLISH
JURISDICTION OVER THE FOREIGN DEFENDANTS ............................................. 5

    a.    The Trustee's Allegations Fail to Establish General Jurisdiction Over the
Foreign Defendants ............................................................................................ 6

    b.    The Foreign Defendants Lack Sufficient Minimum Contacts Comporting
with Traditional Notions of Fair Play and Substantial Justice .............................. 7

            i.    Awareness of the Foreign Funds Subsequent Investment into
BLMIS in New York ...................................................................... 9

            ii.    Use of Correspondent Bank Accounts ............................................ 11

            iii.    Use of New York Bank Accounts .................................................... 13

            iv.    Subscription Agreement Choice of Venue Provisions .......................... 14

            v.    Customer Claims ............................................................................ 15

            vi.    Due Diligence and Risk Management in New York ............................ 16

    c.    The Exercise of Personal Jurisdiction over the Foreign Defendants Would
Not Comport with Due Process ............................................................................ 16

POINT II: THE COMPLAINT FAILS UNDER RULE 12(b)(6) ................................... 17

    a.    The Statute of Limitations Bars the Trustee from Recovering Newly
Pleaded Transfers in the Amended Complaint ...................................................... 18

    b.    The Trustee's Claim Is Barred by 11 U.S.C. § 546(e) .......................................... 21

            i.    The Alleged Initial Transfer Was Made by or to a Covered Entity .......... 23

            ii.    The Alleged Initial Transfer Was Made by a Stockbroker ..................... 23

            iii.    The Fairfield Initial Transfers, and Perhaps All Initial Transfers,
Were Made to (or for the Benefit of) a "Financial Institutions" .............. 24

            iv.    The Alleged Initial Transfers Were Settlement Payments and Made
in Connection with a Securities Contract ........................................... 25

            v.    The Judicially-Created "Actual Knowledge" Exception to the
Section 546(e)'s Application Should Not Apply Here ............................ 27

    c.    The Trustee Does Not Adequately Plead the Avoidability of the Fairfield or
Rye Initial Transfers because Adopting the Entire Fairfield Second
Amended Complaint and Tremont Complaint by Reference Is Improper ............ 33

i.    Fairfield ....................................................................................................34
ii.    Rye Select Funds ........................................................................................38

CONCLUSION.....................................................................................................................39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Rushaid v. Pictet & Cie,*
28 N.Y.3d 316 (2016) ..................................................................................... 12

*Alibaba Grp. Holding Ltd. v. Alibabacoin Found.,*
No. 18-CV-2897 (JPO), 2018 WL 2022626 (S.D.N.Y. Apr. 30, 2018) ................................ 7

*Am. Casein Co. v. Geiger (In re Geiger),*
446 B.R. 670 (Bankr. E.D. Pa. 2010) ................................................................. 35

*Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal., Solano Cnty.,*
480 U.S. 102 (1987) .............................................................................. 10, 16

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .............................................................................. 17, 34

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .......................................................................... 17, 18, 34

*Best Van Lines, Inc. v. Walker,*
490 F.3d 239 (2d Cir. 2007) ............................................................................ 7

*Brause v. Travelers Fire Ins. Co.,*
19 F.R.D. 231 (S.D.N.Y. 1956) ....................................................................... 34

*Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.,*
651 F.3d 329 (2d Cir. 2011) .......................................................................... 29

*D&R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro,*
29 N.Y.3d 292 (2017) .................................................................................. 7

*Daimler AG v. Bauman,*
571 U.S. 117 (2014) ................................................................................... 6

*Davis v. Bifani,*
No. 07-cv-00122-MEH-BN, 2007 WL 1216518 (D. Colo. Apr. 24, 2007) ........................... 35

*Dozier v. Deutsche Bank Tr. Co. Americas,*
No. 09-cv-9865 (LMM), 2011 WL 4058100 (S.D.N.Y. Sept. 1, 2011) ................................ 3

*Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.),*
323 B.R. 857 (Bankr. S.D.N.Y. 2005) ............................................................. 24, 29

*Fairfield Sentry Limited (In Liquidation) v. Citibank NA London*,
  No. 19-cv-03911 (VSB) 24 (S.D.N.Y. July 21, 2021) .................................................. 12, 13

*Fairfield Sentry Ltd. (In Liquidation) v. Migani*,
  [2014] UKPC 9 ................................................................................................ 15, 26

*Fairfield Sentry Ltd. v. ABN AMRO Schwiz AG, et al.*,
  Adv. Pro. No. 10-03636 (Bankr. S.D.N.Y. Oct. 26, 2016) .................................... 26

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*,
  2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) .................................... 24, 25

*Fremay, Inc. v. Modern Plastic Mach.*,
  15 A.D. 2d 235, 222 N.Y.S. 2d 694 (1st Dep't 1961) ........................................ 14

*Ghazzaoui v. Anne Arundel Cnty.*,
  No. ELH-14-1410, 2014 WL 3973037 (D. Md. Aug. 11, 2014) .......................... 36

*Grove Valve & Regulator Co. v. Iranian Oil Servs. Ltd.*,
  87 F.R.D. 93 (S.D.N.Y. 1980) ........................................................................ 14

*Gucci Am. Inc. v. Weixing Li*,
  768 F.3d 122 (2d Cir. 2014) ............................................................................. 6

*Hastings v. Piper Aircraft Corp.*,
  274 A.D. 435, 84 N.Y.S.2d 580 (1st Dep't 1948) .............................................. 14

*Hau Yin To v. HSBC Holdings PLC*,
  No. 15-cv-3590, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F.
  App'x 66 (2d Cir. 2017) ......................................................... 7, 11, 12, 16

*Heinert v. Bank of Am. N.A.*,
  835 F. App'x 627 (2d Cir. 2020) ................................................................ 27, 31

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984) ........................................................................................ 9

*Hill v. HSBC Bank plc*,
  207 F. Supp. 3d 333 (S.D.N.Y. 2016)] .............................................................. 11

*Hinton v. Trans Union, LLC*,
  654 F. Supp. 2d 440 (E.D. Va. 2009), *aff'd*, 382 F. App'x 256 (4th Cir. 2010) .................. 36

*In re Banco Santander Sec.-Optimal Litig.*,
  732 F. Supp. 2d 1305 (S.D. Fla. 2010) .............................................................. 12

*In re Bernard L. Madoff Investment Securities LLC*,
  525 B.R. 871 (Bankr. S.D.N.Y. 2015) ............................................................... 15

*In re Fairfield Sentry*,
   10-13164 (SMB), 10-03496, 596 B.R. 275 (Bankr. S.D.N.Y. 2018) ................................... 21

*In re Fairfield Sentry Ltd.*,
   2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ..................................................... *passim*

*In re Lehman Brothers Holdings, Inc.*,
   544 B.R. 16 (Bankr. S.D.N.Y. 2015) ................................................................. 15

*In re Lyondell Chem. Co.*,
   543 B.R. 127 (Bankr. S.D.N.Y. 2016) ................................................................. 7

*In re Terrorist Attacks on Sept. 11, 2001*,
   714 F.3d 659 (2d Cir. 2013) ..................................................................... 5, 11

*In re Trib. Co. Fraudulent Conv. Litig.*,
   10 F.4th 147 (2d Cir. 2021) ......................................................................... 26

*In re Tribune Co. Fraudulent Conv. Litig.*,
   946 F.3d 66 (2d Cir. 2019) .................................................................. 22, 24, 26

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ............................................................................. 6, 17

*Intel Corp. Inv. Policy Comm. v. Sulyma*,
   140 S. Ct. 768 (2020) .......................................................................... 27, 31

*Jazini v. Nissan Motor Co.*,
   148 F. 3d 181 (2d Cir. 1998) ......................................................................... 5

*Lavazza Premium Coffees Corp. v. Prime Line Distribs. Inc.*,
   No. 20-cv-9993, 2021 WL 5909976 (S.D.N.Y. Dec. 10, 2021) ........................................... 14

*Law v. Siegel*,
   571 U.S. 415 (2014) .................................................................................. 32

*Letom Mgmt. Inc. v. Centaur Gaming, LLC*,
   17-cv-3793 (PAE), 2017 WL 4877426 (S.D.N.Y. Oct. 27, 2017) ........................................... 13

*Licci v. Lebanese Canadian Bank, SAL*,
   20 N.Y.3d 327 (2012) ................................................................................. 7

*Lowden v. William M. Mercer, Inc.*,
   903 F. Supp. 212 (D. Mass. 1995) ..................................................................... 36

*Maranga v. Vira*,
   386 F. Supp. 2d 299 (S.D.N.Y. 2005) .................................................................. 16

*Marie v. Altshuler*,
    817 N.Y.S.2d 261 (1st Dep't 2006) .......................................................................7

*Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*,
    12 N.E. 3d 456 (N.Y. 2014) ...............................................................................13

*Mayle v. Felix*,
    545 U.S. 644 (2005).................................................................................... 19, 20

*Melnick v. Adelson-Melnick*,
    346 F. Supp. 2d 499 (S.D.N.Y. 2004) ...................................................................5

*Merit Mgmt. Grp., LP v. FTI Consulting Inc.*,
    138 S. Ct. 883 (2018)..........................................................................................33

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996) .............................................................................6, 17

*Muhammad v. Bethel-Muhammad*,
    No. 11-0690-WS-B, 2012 WL 1854676 (S.D. Ala. May 21, 2012) .....................36

*Muth v. Dechert, Price & Rhoads*,
    391 F. Supp. 935 (E.D. Pa. 1975) .......................................................................35

*Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*,
    No. 13-cv-6705 (DLC), 2014 WL 1673351 (S.D.N.Y. Apr. 28, 2014) ...............34

*National Am. Corp. v. Federal Republic of Nigeria*,
    425 F. Supp. 1365 (S.D.N.Y. 1977)......................................................................14

*Norex Petroleum Ltd. v. Blavatnik*,
    48 Misc. 3d 1226(A), (Sup. Ct., N.Y. Cnty. 2015)................................................6

*Nycomed U.S., Inc. v. Glenmark Generics Ltd.*,
    No. 08-cv-5023 (CBA)(RLM), 2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010) ....36

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
    549 B.R. 56 (S.D.N.Y. 2016) ...............................................................................7

*Papasan v. Allain*,
    478 U.S. 265 (1986)............................................................................................17

*Picard v. Banque SYZ & Co., SA*,
    2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022)............................... 8, 28, 32

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    12 F.4th 171 (2d Cir. 2021) ................................................................................32

*Picard v. Fairfield Inv. Fund Ltd.*,
No. 09-01239, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) .............................*passim*

*Picard v. Fairfield Sentry Ltd.*,
Adv. Pr. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Aug. 28, 2020) ................................. 29, 34

*Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*,
773 F.3d 411 (2d Cir. 2014) .....................................................................................*passim*

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC) (Merkin)*,
515 B.R. 117 (Bankr. S.D.N.Y. 2014)....................................................................... 3, 27, 31

*Picard v. Multi-Strategy Fund Ltd.*, -- B.R. --,
2022 WL 2137073 (Bankr. S.D.N.Y. June 13, 2022)....................................................*passim*

*Picard v. Tremont Group Holdings, Inc., et al. (In re Bernard L. Madoff Inv.
Secs., LLC)*,
Adv. Pro. No. 10-05310, ECF No. 1 (Bankr. S.D.N.Y. Dec. 7, 2010).................................30

*Reich v. Lopez*,
858 F.3d 55 (2d Cir. 2017) .....................................................................................................6

*Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*,
151 F. Supp. 2d 371 (S.D.N.Y. 2001) .................................................................................17

*Rodriguez v. City of N. Y.*,
10-cv-1849, 2011 WL 4344057 (S.D.N.Y. Sept. 7, 2011) ...................................................18

*Roper Starch Worldwide, Inc. v. Reymer & Assocs*,
2 F. Supp. 2d 470 (S.D.N.Y. 1998) .....................................................................................11

*Rosenblatt v. Coutts & Co. AG*,
No. 17-cv-3528 (AKH), 2017 WL 3493245 (S.D.N.Y. Aug. 14, 2017) ..............................11

*Rosner v. Bank of China*,
349 F. App'x 637 (2d Cir. 2009) .................................................................................. 27, 31

*Ryan v. Hunton & Williams*,
No. 99-cv-5938 (JG), 2000 WL 1375265 (E.D.N.Y. Sept. 20, 2000)............................ 27, 31

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
594 B.R. 167 (Bankr. S.D.N.Y. 2018).................................................................3, 5, 18, 20

*Silverman v. Actrade Cap., Inc. (In re Actrade Fin. Techs. Ltd.)*,
337 B.R. 791 (Bankr. S.D.N.Y. 2005).................................................................................32

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*,
476 B.R. 715 (S.D.N.Y. 2012) ...........................................................................................24

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*,
   No. 12 MC 115(JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ........................... *passim*

*SPV OSUS Ltd. v. UBS AG*,
   114 F. Supp. 3d 161 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018) ................. 5, 9, 12

*Tamam v. Fransabank SAL*,
   677 F. Supp. 2d 720 (S.D.N.Y. 2010) .................................................................5

*Texas Water Supply Corp. v. Reconstruction Fin. Corp.*,
   204 F.2d 190 (5th Cir. 1953) .......................................................................34

*Toberman v. Copas*,
   800 F. Supp. 1239 (M.D. Pa. 1992) ..............................................................35

*Toppel v. Marriott Int'l, Inc.*,
   No. 03-cv-3042, 2006 WL 2466247 (S.D.N.Y. Aug. 24, 2006) ...........................5

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
   916 F.3d 143 (2d Cir. 2019) ......................................................................16

*United States ex rel. Kolchinsky v. Moody's Corp.*,
   162 F. Supp. 3d 186 (S.D.N.Y. 2016) ...........................................................18

*United States v. Int'l Longshoremen's Ass'n*,
   518 F. Supp. 2d 422 (E.D.N.Y. 2007) ......................................................36, 37

*Universal Trading & Inv. Co. v. Tymoshenko*,
   No. 11-cv-7877, 2012 WL 6186471 (S.D.N.Y. Dec. 12, 2012) ...........................13

*Vasquez v. Hong Kong and Shanghai Banking Corp, Ltd.*,
   477 F. Supp. 3d 241 (S.D.N.Y. 2020) ..........................................................12

*Walden v. Fiore*,
   571 U.S. 277 (2014) ............................................................................10, 17

*Wallert v. Atlan*,
   141 F. Supp. 3d 258 (S.D.N.Y. 2015) .............................................................5

*Weinberg v. Colonial Williamsburg, Inc.*,
   215 F. Supp. 633 (E.D.N.Y. 1963) ...............................................................14

*Wolfe v. Charter Forest Behav. Health Sys., Inc.*,
   185 F.R.D. 225 (W.D. La. 1999) .................................................................35

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) .................................................................................16

*Xiu Feng Li v. Hock*,
  371 Fed. Appx. 171 (2nd Cir. 2010) ............................................................... 6

*Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC*,
  No. 19-cv-3444, 2020 WL 5503557 (S.D.N.Y. Sept. 10, 2020) ............................................ 7

**Statutes**

11 U.S.C. § 101(22)(A) ............................................................................ 24

11 U.S.C. § 101(53)(A) ............................................................................ 23

11 U.S.C. § 544 ............................................................................... 2, 23

11 U.S.C. § 546(e) ........................................................................... *passim*

11 U.S.C. § 547 ............................................................................... 2, 23

11 U.S.C. § 548(a)(1)(A) .................................................................. 2, 21 32, 33

11 U.S.C. § 548(a)(1)(B) ........................................................................ 2, 23

11 U.S.C. § 550(a) ............................................................................ 3, 21, 3

11 U.S.C. § 550(f) ................................................................................ 18

11 U.S.C. § 741(7)(A)(i) ......................................................................... 26

11 U.S.C. § 741(7)(A)(vii) ....................................................................... 26

28 U.S.C. § 1334(a) .............................................................................. 35

28 U.S.C.  § 1334(b) ............................................................................. 35

**Rules**

Fed. R. Bankr. P. 7004 ........................................................................... 7

Fed. R. Bankr. P. 7004(f) ........................................................................ 7

Fed. R. Bankr. P. 7008 .......................................................................... 35

Fed. R. Civ. P. 8(a) ......................................................................... *passim*

Fed. R. Civ. P. 10(c) ................................................................... 1, 34, 35, 36

N.Y. C.P.L.R. § 302 (McKinney 2001) .............................................................. 7

**Other Authorities**

Central Bank of Ireland, *Financial Service Provider Profile: Citco Bank
    Nederland NV Dublin Branch*,
    http://registers.centralbank.ie/FirmDataPage.aspx?firmReferenceNumber=C2
    7278 ....................................................................................................................24

De Nederlandsche Bank, *Information Detail: Citco Bank Nederland N.V.*,
    https://www.dnb.nl/en/public-register/information-
    detail/?registerCode=WFTKF&relationNumber=B0275....................................................24

Moore's Federal Practice-Civil § 10.04[1] (2021)..............................................................34, 35

Defendants Royal Bank of Canada, individually and as successor in interest to Royal Bank of Canada (Asia) Limited, Guernroy Limited, RBC Trust Company (Jersey) Limited, Banque SYZ S.A., as successor in interest to Royal Bank of Canada (Suisse) S.A., RBC Dominion Securities Inc., and RBC Alternative Assets, L.P. (collectively, "Defendants" or "RBC") respectfully submit this memorandum of law in support of their motion to dismiss with prejudice the Amended Complaint, ECF No. 145 (the "Amended Complaint" or "Am. Compl.")[1] filed by plaintiff Irving H. Picard, Trustee (the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), pursuant to the Federal Civil Procedure Rules 8(a), 10(c), 12(b)(2), and 12(b)(6) (the "Motion to Dismiss").

## PRELIMINARY STATEMENT

Nearly ten years after filing his Complaint[2] against the Defendants, the Trustee filed the Amended Complaint that is at the center of this motion. That pleading, however, fails to contain allegations necessary to establish this Court's personal jurisdiction over certain Defendants. Certain of the Defendants (the "Foreign Defendants") — who are foreign entities that invested in foreign funds using foreign bank accounts — rightly move to dismiss the Amended Complaint for lack of personal jurisdiction.[3] There are no allegations that any agreement governing the redemptions at issue in this case was made in the United States, or governed by U.S. law. Instead, the Amended Complaint contains allegations relating to personal jurisdiction that do not bear on actual U.S. contacts that the Foreign Defendants had in connection with the transfers and

---

[1] The Amended Complaint is attached as Exhibit A to the Declaration of Anthony L. Paccione in Support of Defendants' Motion to Dismiss the Amended Complaint ("Paccione Decl."). Unless otherwise noted, all ECF citations refer to Adv. Proc. No. 12-01699 (CGM).

[2] *Picard v. Royal Bank of Canada (In re Madoff)*, Adv. Pro. No. 12-01699 (BRL) (Bankr. S.D.N.Y. June 6, 2012), ECF No. 1 (the "Complaint" or "Compl."). A copy of the Complaint is attached as Paccione Decl. Ex. B.

[3] The "Foreign Defendants" are Guernroy Limited, RBC Trust Company (Jersey) Limited, Royal Bank of Canada, as successor in interest to RBC Asia, Banque SYZ SA, as successor to Royal Bank of Canada (Suisse) SA, and RBC Dominion Securities Inc.

redemptions at issue in this case. Accordingly, this Court cannot extend its jurisdiction over the Foreign Defendants.

Second, the Amended Complaint on its face suffers from statute of limitations violations. The Trustee has attempted to include over $30 million of additional transfers that were not alleged in the original Complaint. The Trustee will likely argue that the newly alleged transfers relate back to the original Complaint, but that is not so. The original Complaint provided no notice whatsoever that these newly added transfers could be at issue. Moreover, this Court held in other Madoff-related proceedings that transfers do not relate back when they involve different transactions from different time periods, as these do here. Indeed, each transfer is a separate transaction and occurrence that will require independent and unique factual proof. Accordingly, the new transfers added to the Amended Complaint do not relate back.

Third, as to all Defendants, the Trustee's cause of action is barred by Section 546(e)'s safe harbor as it concerns all transfers pre-dating December 11, 2006. The Second Circuit and District Court have made this clear time and time again. The Trustee presents no allegations of each Defendant's actual knowledge of the Madoff Ponzi scheme at the time of the transfers at issue. Consequently, the Section 546(e) safe harbor applies, foreclosing any claims for recovery under state law and Sections 544, 547, and 548(a)(1)(B). The Trustee may argue that the Defendants' knowledge, or lack thereof, is irrelevant to the application of the Section 546(e) safe harbor because the initial transferee's knowledge is the focus of the inquiry. While Defendants disagree with that construct for reasons set forth below and in other prior subsequent transferee motions, even if that were the case, the Trustee has not sufficiently pleaded the actual knowledge of at least some of the initial transferees. The Amended Complaint attempts to incorporate allegations from complaints in other actions. Still, those incorporated allegations demonstrate that alleged initial transferees Rye Select Broad Market Prime Fund LP ("Rye Prime"), Rye Select Broad Market

2

Portfolio Limited ("Rye Portfolio Limited"), and Rye Select Broad Market Fund LP ("Rye Broad") (collectively, the "Rye Select Funds"), had no knowledge of the Madoff Ponzi scheme. The incorporated pleading actually shows that the Rye Select Funds were true believers in Madoff's investing genius, the opposite of being aware of his criminal enterprise.

Fourth, Section 550(a) is clear that the Trustee cannot recover from subsequent transferees like the Defendants unless the initial transfers are "avoided." The Trustee has not adequately alleged that the transfers from BLMIS to the feeder funds, Fairfield Sentry Limited ("Sentry") and the Rye Select Funds, are avoided, or even avoidable. Instead, the Trustee improperly attempts to incorporate in their entirety complaints from separate proceedings, an endeavor that violates Federal Rule of Civil Procedure pleading standards and should be rejected by this Court.

For these reasons, the Court should grant the Defendants' Motion to Dismiss.

## FACTUAL BACKGROUND

For the purpose of this Motion to Dismiss, the facts set forth below are drawn from allegations contained in the Amended Complaint, which the Defendants neither admit nor concede. As explained below, however, many of the Trustee's allegations are contradicted by documents the Trustee expressly relies on or by the Trustee's own admissions in the Complaint he filed in this Action. This Court is not bound by the Trustee's false version of events, and can and should consider the inconsistencies and contradictions between the Complaint and the Amended Complaint, as well as full versions of documents the Trustee cites (and often mischaracterizes).[4]

---

[4]  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018) (Bernstein, J.) ("*BNP Paribas*"), ("court may consider prior iterations of pleadings containing statements inconsistent with the latest version."); *Dozier v. Deutsche Bank Tr. Co. Americas*, No. 09-cv-9865 (LMM), 2011 WL 4058100, at *2 (S.D.N.Y. Sept. 1, 2011) (court "need not accept as true allegations that conflict with a plaintiff's prior allegations."); *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC) (Merkin)*, 515 B.R. 117, 137 (Bankr. S.D.N.Y. 2014) ("Where the complaint cites or quotes from excerpts of a document, the court may consider other parts of the same document submitted by the parties on a motion to dismiss.") (citations omitted).

a.      **The Defendants Alleged Contacts with the United States**

Royal Bank of Canada is a Canadian financial services firm and bank. The other Defendants are alleged to be indirect subsidiaries of Royal Bank of Canada. Am. Compl. ¶ 49. Alternative Assets is the only defendant organized or headquartered in the United States. Am Compl. ¶ 74. While the Trustee alleges that Royal Bank of Canada often conducted its "BLMIS feeder fund business" through its New York subsidiary, RBC Capital Markets, LLC ("RBCCM"), there is no allegation that any of the Foreign Defendants conducted any portion of their trades in the alleged feeder funds domestically. Am. Compl. ¶ 77. Indeed, based on the Trustee's own allegations, there is little doubt that the Foreign Defendants are truly foreign: (i) Guernroy Limited is a limited company incorporated, and with its principal place of business, in Guernsey, Channel Islands, UK (Am. Compl. ¶ 52); RBC Trust Company (Jersey) Limited, is a private limited company incorporated, and with its principal place of business, in Jersey, Channel Islands, UK (Am. Compl. ¶ 53); (iii) both Banque Syz and its predecessor in interest Royal Bank of Canada (Suisse) are/were a *société anonyme* incorporated in Switzerland, with their principal places of business in Geneva, Switzerland, (Am. Compl. ¶ 54); (iv) RBC Dominion Securities is a federal corporation incorporated in Canada, with its principal place of business in Toronto (Am. Compl. ¶ 55); and (v) Royal Bank of Canada, as successor in interest to RBC Asia is organized in Canada, with its principal place of business in Toronto (while RBC Asia was organized in Asia). Am. Compl. ¶ 50. The Amended Complaint contains no allegations that any Defendant was aware of, or had suspicions of, any irregularity concerning BLMIS.

The Trustee group-pleads that his claims against all Defendants "arise from business they transacted within New York." Am. Compl. ¶ 62. All Defendants made investments into, (a) Sentry, which is alleged to be an entity organized in the British Virgin Islands (Compl. Ex. B ¶ D), and/or

(b) the Rye Select Funds, one of which—Rye Portfolio Limited—is organized in the Cayman Islands and has a registered office in Bermuda. Compl. Ex. J ¶ 39.

## ARGUMENT

### POINT I: THE TRUSTEE'S ALLEGATIONS ARE INSUFFICIENT TO ESTABLISH JURISDICTION OVER THE FOREIGN DEFENDANTS

"To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Trustee 'must make a *prima facie* showing that jurisdiction exists.'" *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (Bernstein, J.) ("*BNP Paribas*") (quoting *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018)).

A *prima facie* showing requires more than "some evidence" that jurisdiction over the defendant is proper – the plaintiff must instead plead "facts which, if true, are sufficient in themselves to establish jurisdiction." *Tamam v. Fransabank SAL*, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010) (internal citation omitted). Accordingly, the Trustee cannot rely on "[c]onclusory non-fact-specific jurisdictional allegations," (*id.*), nor is the Court required to accept as true a "legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)); *Wallert v. Atlan*, 141 F. Supp. 3d 258, 276 (S.D.N.Y. 2015) ("A party … 'may not rely on 'conclusory non-fact-specific jurisdictional allegations' to overcome a [Rule 12(b)(2)] motion to dismiss.'") (internal quotations omitted). Instead, the plaintiff must plead specific facts showing jurisdiction. *Toppel v. Marriott Int'l, Inc.*, No. 03-cv-3042, 2006 WL 2466247, at *2-4 (S.D.N.Y. Aug. 24, 2006); *Melnick v. Adelson-Melnick*, 346 F. Supp. 2d 499, 503 (S.D.N.Y. 2004). The Court should dismiss the Amended Complaint unless the "assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable under

the circumstances of the particular case." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

a.    **The Trustee's Allegations Fail to Establish General Jurisdiction Over the Foreign Defendants**

In New York, general jurisdiction may be established only if (1) the defendant is domiciled, incorporated in, or has its principal place of business in the forum state or (2) in exceptional cases, the defendant's contacts with a forum are so extensive as to support general jurisdiction notwithstanding domicile elsewhere. *Daimler AG v. Bauman*, 571 U.S. 117, 137-38 (2014); *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017); *see also Norex Petroleum Ltd. v. Blavatnik,* 48 Misc. 3d 1226(A), at *20 (Sup. Ct., N.Y. Cnty. 2015) (*Daimler* "brought an end to 'doing business' jurisdiction"). Rather, *Daimler* premised invocation of general jurisdiction on a corporation's in-state place of incorporation and principal place of business in all but exceptional cases. *See* 571 U.S. at 139, n.19

The allegations in the Amended Complaint fail to plead that the Foreign Defendants are subject to general jurisdiction in New York; as noted above, the Foreign Defendants are domiciled outside of the United States. *See supra* p. 4. Moreover, there is no allegation that the Foreign Defendants do business in New York or the United States "with a fair measure of permanence and continuity." *Xiu Feng Li v. Hock*, 371 Fed. Appx. 171, 174 (2nd Cir. 2010). And this is not an exceptional case where the Trustee has pled that the Foreign Defendants had contacts in New York or the United States sufficient to establish general jurisdiction. *Gucci Am. Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (finding the bank's activities in New York "plainly [did] not approach" the required level of contact required by *Daimler*) (citing *Daimler*, 571 U.S. at 139 n.19). Accordingly, the Court cannot exercise general jurisdiction over the Foreign Defendants. *See Daimler*, 571 U.S. at 136-42.

b.    **The Foreign Defendants Lack Sufficient Minimum Contacts Comporting with Traditional Notions of Fair Play and Substantial Justice**

To establish specific jurisdiction under New York's long-arm statute,[5] the Trustee must satisfy two exacting pleading requirements: (1) the Foreign Defendants must have transacted business within the state; and (2) the claims asserted must arise from their separate business activity. *See Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC*, No. 19-cv-3444, 2020 WL 5503557, at *4 (S.D.N.Y. Sept. 10, 2020) (Broderick, J.) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)). The Trustee also must demonstrate that the exercise of personal jurisdiction over all of the Foreign Defendants "would comport with due process." *Zim Integrated Shipping Servs. Ltd.*, 2020 WL 5503557, at *3 (internal quotations omitted); *Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*, No. 18-CV-2897 (JPO), 2018 WL 2022626, at *3 (S.D.N.Y. Apr. 30, 2018).

Exercise of long-arm jurisdiction also requires an "articulable nexus" or "substantial relationship" between a New York transaction and the legal claim asserted. *Licci v. Lebanese Canadian Bank*, *SAL*, 20 N.Y.3d 327, 339 (2012) (internal citations omitted); *see also Marie v. Altshuler*, 817 N.Y.S.2d 261, 272 (1st Dep't 2006) ("situs of the injury for long-arm [jurisdiction] purposes is where the event giving rise to the injury occurred, not where the resultant damages occurred"). The defendant must "seek[] out and initiate[] contact with New York, solicit[] business in New York, and establish[] a continuing relationship." *Hau Yin To v. HSBC Holdings, PLC*, 700 Fed. App'x 66, 67 (2d Cir. 2017) (quoting *D&R Glob. Selections, S.L. v. Bodega Olegario Falcon*

---

[5] The Trustee bases personal jurisdiction on New York's long-arm statute, N.Y. C.P.L.R. § 302 (McKinney 2001), and Federal Rule of Bankruptcy Procedure 7004. Am. Compl. ¶ 8. Under Federal Rule of Bankruptcy Procedure 7004(f), the Trustee can establish personal jurisdiction by demonstrating sufficient minimum contacts with the United States as a whole. *See In re Lyondell Chem. Co.*, 543 B.R. 127, 138-39 (Bankr. S.D.N.Y. 2016). The federal jurisdictional analysis "closely resemble[s]" New York's long-arm statute and due process requirements, so the analyses are largely interchangeable, but Rule 7004(f) accounts for contacts throughout the United States. *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 68 (S.D.N.Y. 2016).

*Pineiro*, 29 N.Y.3d 292, 298 (2017)) (internal citation omitted). At a minimum, the defendant must "on his or her own initiative . . . project himself or herself into the state to engage in a sustained and substantial transaction of business." *Id.* Such a projection does not exist here.

The Trustee alleges here that the Foreign Defendants invested in the foreign feeder funds, Sentry and Rye Portfolio Limited, but he fails to allege that the Foreign Defendants had sufficient New York contacts with respect to these transfers.[6] Am. Compl. ¶ 2.

Indeed, this case is markedly different from *Picard v. Multi-Strategy Fund Ltd.*, Adv. Pro. No. 12-01205 (CGM) -- B.R. --, 2022 WL 2137073 (Bankr. S.D.N.Y. June 13, 2022) ("*Multi-Strategy Fund Ltd.*") and *Picard v. Banque SYZ & Co., SA*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque Syz*"), in which the Court recently held that it had personal jurisdiction over certain subsequent transferee defendants. In *Multi-Strategy*, the defendant was alleged to be a "Madoff addict" that "asked about additional capacity for Fairfield Sentry on at least seven occasions." *Multi-Strategy*, 2022 WL 2137073 at *3 (citing *Multi-Strategy Fund Ltd.* Complaint). Moreover, persons associated with the defendant asked about how Madoff made money and invested. *Id.*; *Multi-Strategy Fund Ltd.* Complaint at ¶ 93. And critically to the Court's analysis, the defendant's President and other employees met with Fairfield Greenwich Group in New York, and provided bank instructions in New York to receive redemptions. *Id.* at *4. Likewise, in *Banque SYZ*, the Trustee alleged that the defendant had solicited its own clients to invest in New York-based BLMIS, and maintained its own bank accounts in New York to receive redemptions. *Banque SYZ*, 2022 WL 2135019 at *3. None of these facts is present in this case. Indeed, there is no allegation that the Foreign Defendants ever

---

[6] Royal Bank of Canada, as successor to RBC Asia, is not asserting a lack of personal jurisdiction as it concerns transfers made from Rye Prime to it. All other transfers made to the Foreign Defendants are the subject of their Rule 12(b)(2) motion.

entered New York or the United States, except to use correspondent bank accounts. *See generally* Am. Compl. ¶¶ 61-79.

Here, the Trustee attempts to suggest that personal jurisdiction is proper over the Foreign Defendants on five different grounds: (1) the Foreign Defendants separately invested in Fairfield or Rye Portfolio Limited and were aware that those foreign entities were transacting business in New York through their investments into BLMIS (Am. Compl. ¶¶ 71, 72); (2) each Foreign Defendant used a correspondent bank account in an affiliate's name at a New York bank (*id*. ¶ 78); (3) the Fairfield Subscription Agreement includes choice of venue provisions for New York (*id*. ¶ 66); (4) Guernroy and Banque Syz submitted customer claims with the Trustee in connection with the BLMIS SIPA liquidation proceeding (*id*. ¶ 65); and (5) an undefined group identified in the Amended Complaint as "[t]he RBC Capital Markets/Alternative Assets group" performed due diligence and risk management for the Foreign Defendants from New York. *Id*. ¶ 74. None of these allegations, collectively or individually, create a basis to impose personal jurisdiction over the Foreign Defendants.

### i.    Awareness of the Foreign Funds Subsequent Investment into BLMIS in New York

The allegation that the Foreign Defendants allegedly knew that a non-U.S. fund (Sentry and/or the Rye Select Funds), in which the Foreign Defendants' banking customers invested, would invest in BLMIS (Am. Compl. ¶¶ 71, 72) does not give rise to this litigation and thus does not support jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."); *SPV Osus Ltd.*, 882 F.3d at 344 (substantial connection "depends on the relationship among the defendant, the forum, and the litigation"). The Trustee's claims do not focus on the decision to *invest* with Sentry or Rye Portfolio Limited as the basis for

9

liability. *See In re Fairfield Sentry Ltd.,* Adv. Pro. No. 10-03496 (SMB), 2018 WL 3756343, at *8-12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*") (subscription agreements irrelevant to claim not based on subscription). Instead, the Trustee's claim to recover the transfers the Foreign Defendants received from Sentry and the Rye Portfolio Limited outside the United States relates to and arises out of those foreign transfers. *See, e.g.*, Am. Compl. ¶¶ 71, 72. As the Fairfield Liquidators themselves maintain, every element of the transaction (i.e., redemptions to shareholders) is "purely foreign." Plaintiff-Appellants' Opening Brief for Second-Round Appeal ("Liquidators' Appeal") at 24, *Fairfield Sentry Limited (In Liquidation) v. Citibank NA London*, No. 19-cv-03911 (VSB) 24 (S.D.N.Y. July 21, 2021), ECF. No. 440, at 24.

Moreover, the knowledge that the foreign Sentry and Rye Portfolio Limited funds would invest with BLMIS in New York is insufficient as a matter of law to support jurisdiction over the Foreign Defendants. The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third-parties) and the forum State." *Walden v. Fiore,* 571 U.S. 277, 284 (2014). As the Supreme Court explained, the foreseeability of a plaintiff's connection to the forum is irrelevant to whether there is jurisdiction over the defendant because it "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id*. Instead, "[t]he substantial connection … between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State*." *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987) (internal quotation omitted) (emphasis in original). Indeed, *Walden* most certainly applies to this case because there is no plausible allegation of meaningful "physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means." 571 U.S. at 285. If the Trustee's theory were upheld, any investment that foreseeably found its way into a U.S.

10

asset would confer personal jurisdiction. There is no precedent for such a sweeping result that would flood U.S. courts with cases against parties with no U.S. contacts. *See, e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d at 674. (noting foreseeability by itself is "insufficient" for the exercise of personal jurisdiction).

### ii.    Use of Correspondent Bank Accounts

The Trustee alleges that it "was Defendants' practice to use New York bank accounts to send subscriptions into and receive redemptions (i.e., the Transfers) from the BLMIS feeder funds," and that "each Defendant designated and used its relevant New York account(s) to send and receive numerous subscriptions and redemptions[.]" Am. Compl. ¶ 78. But the Trustee cannot assert proper jurisdiction over the Defendants based on the Defendants' use of correspondent bank accounts.[7]

It is well-established that foreign affiliates are not subject to jurisdiction in New York simply because they maintain a correspondent bank account in New York. *Hau Yin To v. HSBC Holdings PLC*, 700 Fed. App'x, at 67.[8] Indeed, a foreign defendant is not subject to jurisdiction if it sent or received payment in New York pursuant to a contract executed outside of New York. *Hau Yin To v. HSBC Holdings PLC*, No. 15CV3590-LTS-SN, 2017 WL 816136 at *5 (S.D.N.Y. Mar. 1, 2017) ("foreign defendant's communications with a party in New York or sending of monies into New York are not sufficient to establish personal jurisdiction" if the "communications

---

[7] The following paragraph in the Amended Complaint alleges that the Foreign Defendants sent funds into Sentry and Rye Portfolio Limited's correspondent bank accounts, and only used Rye Portfolio Limited's destination account for transfers totaling $1,039,435 through the fall of 2006. *See* Am Compl. ¶ 79, Ex. L.

[8] *See Rosenblatt v. Coutts & Co. AG*, No. 17-cv-3528 (AKH), 2017 WL 3493245, at *4 (S.D.N.Y. Aug. 14, 2017) (foreign defendant's act of sending payment to plaintiff's New York bank account pursuant to agreement negotiated and executed outside the United States was not purposeful availment); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339-40 (S.D.N.Y. 2016) (allegations that "Foreign Defendants communicated with and transmitted . . . funds to and from BLMIS located in New York" failed to demonstrate purposeful availment because these "communications and payments were incidental consequences of fulfilling a foreign contract"); *Roper Starch Worldwide, Inc. v. Reymer & Assocs*, 2 F. Supp. 2d 470, 474-75 (S.D.N.Y. 1998) ("merely sending payment to New York" pursuant to contract negotiated and executed in Illinois or Michigan "is not sufficient to establish personal jurisdiction").

with and payments to New York were made merely to ensure compliance with contract terms negotiated and executed outside of New York."), *aff'd*, 700 F. App'x at 66 (2d Cir. 2017). The Trustee has not alleged that these correspondent bank accounts were "integral" to the illegal acts in a manner that would create sufficient minimum contacts. *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 328 (2016); *Vasquez v. Hong Kong and Shanghai Banking Corp, Ltd.*, 477 F. Supp. 3d 241, 261-62 (S.D.N.Y. 2020), *on appeal* (rejecting claims of specific jurisdiction over a bank defendant's use of an in-state correspondent account in a Ponzi scheme); *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 166, 169–70 (S.D.N.Y. 2015) (rejecting personal jurisdiction claim where one bank defendant for Madoff "feeder fund" had a New York correspondent account), *aff'd*, 882 F.3d 333, 345 (2d Cir. 2018) ("At bottom, the contacts alleged by [plaintiff] between the [bank defendants], the forum and the litigation amount to a handful of communications and transfers of funds. These limited contacts are insufficient to allow the exercise of personal jurisdiction over [defendants]."); *In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d 1305, 1323-24 (S.D. Fla. 2010) (finding no personal jurisdiction where intermediary bank, not defendant bank, designated the New York correspondent account to receive funds related to the Madoff scheme).[9] New York does not permit asserting personal jurisdiction over the Foreign Defendants' innocent use of a correspondent bank account for lawful transfers regardless of whether the

---

[9] The Liquidators for the Fairfield Sentry fund (the "Fairfield Liquidators") confirmed that virtually all of the Fairfield transfers the Trustee seeks to recover here allegedly occurred entirely outside of the United States and were foreign in nature:

> The redemption transfers at issue here were purely foreign. The Citco Administrator (a foreign entity) managed the share register and processed the redemption requests abroad, and the Funds (also foreign entities) transferred redemption payments to Defendants (also chiefly foreign entities). [E]very relevant component of the transactions at issue here occurred outside the territorial jurisdiction of the United States.

Liquidators' Appeal at 24, *Fairfield Sentry Limited (In Liquidation) v. Citibank NA London*, No. 19-CV-03911-VSB 24 (S.D.N.Y. July 21, 2021), ECF No. 440.

payments passed to, from, or through New York. Accordingly, the Foreign Defendants' use of a correspondent bank account for the Fairfield transfers is insufficient grounds to establish jurisdiction.

Indeed, exercising jurisdiction over the Foreign Defendants' use of correspondent bank accounts would be contrary to federal and state policy. Global transactions are frequently converted or cleared in U.S. dollars in New York. Conferring jurisdiction over foreign entities through their incidental use of U.S.-based accounts to effectuate international transactions would have unintentional but significant ramifications. Virtually any foreign commercial dispute could command New York as a forum. *See Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*, 12 N.E. 3d 456, 459-60 (N.Y. 2014) ("Our state's interest in the integrity of its banks…is not significantly threatened every time one foreign national, effecting what is alleged to be a fraudulent transaction, moves dollars through a bank in New York."); *see also Universal Trading & Inv. Co. v. Tymoshenko*, No. 11-cv-7877, 2012 WL 6186471, at *3 (S.D.N.Y. Dec. 12, 2012) ("[C]ourts have long recognized that there are significant policy reasons which caution against the exercise of personal jurisdiction based only on ... a correspondent bank account.") (internal quotation omitted). For the reasons discussed, the Trustee's allegations concerning the Foreign Defendants' use of correspondent bank accounts are insufficient to establish jurisdiction over the Foreign Defendants in this case.

### iii.    Use of New York Bank Accounts

Even if the Foreign Defendants had sent its subscription money directly into a New York account as its final destination, that still would not have constituted purposeful availment. It is well established that sending "payments to New York merely to ensure compliance with contract terms negotiated and executed outside of New York do not 'project' a defendant into the state sufficiently to confer personal jurisdiction." *Letom Mgmt. Inc. v. Centaur Gaming, LLC*, 17-cv-3793 (PAE),

2017 WL 4877426, at *7 (S.D.N.Y. Oct. 27, 2017) (the fact that the contract required payments to New York bank account did not establish specific jurisdiction).

Courts routinely hold that the mere presence of a physical bank account in New York is not enough to establish jurisdiction over defendants. *Fremay, Inc. v. Modern Plastic Mach.*, 15 A.D. 2d 235, 241, 222 N.Y.S. 2d 694, 700 (1st Dep't 1961); *Grove Valve & Regulator Co. v. Iranian Oil Servs. Ltd.*, 87 F.R.D. 93, 95 (S.D.N.Y. 1980); *National Am. Corp. v. Federal Republic of Nigeria*, 425 F. Supp. 1365, 1370-71 (S.D.N.Y. 1977); *Hastings v. Piper Aircraft Corp.*, 274 A.D. 435, 84 N.Y.S.2d 580, 583 (1st Dep't 1948). Here, the Trustee only alleges that the Foreign Defendants "maintained bank accounts at JP Morgan Chase." Am. Comp. ¶ 78. The Trustee fails to allege that the Foreign Defendants have a physical presence in New York, solicited business in New York, or performed functions relating to the funds in New York. *Weinberg v. Colonial Williamsburg, Inc.*, 215 F. Supp. 633, 639–40 (E.D.N.Y. 1963).

### iv.    Subscription Agreement Choice of Venue Provisions

The Trustee cites a choice of venue provision in the Fairfield subscription agreement in an effort to support his jurisdictional allegations, but that effort is unavailing. Any theory of jurisdiction predicated on the subscription agreement is not applicable because the Trustee cannot invoke a choice of forum clause in a contract to which he is a stranger to establish this Court's jurisdiction over the subsequent transfer claim that he seeks to advance.[10] *See Lavazza Premium Coffees Corp. v. Prime Line Distribs. Inc.*, No. 20-cv-9993, 2021 WL 5909976, at *7 (S.D.N.Y. Dec. 10, 2021) (rejecting enforcement of forum selection clause for a non-party plaintiff).

---

[10] Additionally, the law of the case disposes of this theory of jurisdiction. In the Sentry Liquidators' proceedings, this Court concluded that the execution of certain subscription agreements, without more, did not subject the defendants— including the Foreign Defendants—to personal jurisdiction. *Fairfield I*, 2018 WL 3756343, at *12. Specifically, this Court held that the New York choice of forum provisions in the subscription agreement did not apply to the disputes concerning subsequent transfers because the Fairfield Liquidators' claim is solely based on redemptions and does not arise out of the Subscription Agreements. *Id.*, at *11 (adhering to the Privy Council's holding "that the Subscription Agreement was irrelevant to actions to recover the inflated redemption payments").

Furthermore, the Trustee makes no allegation that Rye Portfolio Limited subscription agreements contain any choice of venue provision relevant to this Court's personal jurisdiction over the Foreign Defendants. *See* Am. Compl. ¶ 67.

As for Sentry, the British Virgin Islands Privy Council rejected the Fairfield Liquidators' arguments that clawback claims were "with respect to" the subscription agreements containing choice of venue provisions. *Fairfield Sentry Ltd. (In Liquidation) v. Migani*, [2014] UKPC 9, at ¶ 20. The Amended Complaint presents no allegation to depart from that ruling. *See* Am. Compl. ¶¶ 66, 67. This Court has accepted the *Migani* court's decision that redemption payments are governed by the Fairfield Amended and Restated Articles of Association, not the subscription agreement. *Fairfield I*, 2018 WL 3756343 at *12.

### v.    Customer Claims

The Trustee alleges Guernroy and Banque Syz's filings of customer claims with the Trustee support a finding of personal jurisdiction over those entities. *See* Am. Compl. ¶¶ 64-65. Those customer claims—both denied—are not relevant contacts for this Court's personal jurisdiction analysis. The Amended Complaint presents a cause of action to recover allegedly avoidable transfers from a subsequent transferee; it has nothing to do with a customer claim, or whether it should or should not be allowed. Only when the customer claim is at issue will the filing of such a claim impact a personal jurisdiction analysis. *See In re Bernard L. Madoff Investment Securities LLC*, 525 B.R. 871, 888 (Bankr. S.D.N.Y. 2015) (where "adversary proceeding does not implicate the claims allowance process," parties will not be found to submit "themselves to personal jurisdiction with respect to the Trustee's fraudulent transfer action by filing SIPA claims."); *In re Lehman Brothers Holdings, Inc.,* 544 B.R. 16, 36 (Bankr. S.D.N.Y. 2015) (Court found that defendant's filing of proof of claim constitutes "submission to the jurisdiction of the Court *only with respect to litigation concerning the claims allowance process*") (emphasis added).

### vi.    Due Diligence and Risk Management in New York

The Trustee alleges that the undefined "RBC Capital Markets/Alternative Assets group" conducted due diligence and risk management in New York for all of Defendants' BLMIS feeder fund investments. *See* Am. Compl. ¶ 74. The Amended Complaint does not even attempt to explain who this "group" is, how or if it is affiliated with the RBC corporate family, or any facts to suggest that this "group's" activities should be imputed to the Foreign Defendants for purposes of a personal jurisdiction analysis. "Thus, although a defendant's contacts with the forum state may be 'intertwined with [its] transactions or interactions with the plaintiff or other parties ... [,] a defendant's relationship with a ... third party, standing alone, is an insufficient basis for jurisdiction.'" *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.,* 916 F.3d 143, 150 (2d Cir. 2019) (citations omitted) (finding jurisdiction on alternative grounds.) But even if this conclusory allegation were credited, and it should not be, New York cases make clear that conducting due diligence is not sufficient to establish jurisdiction — in *Maranga v. Vira*, the Court wrote that, "Plaintiffs' assertion regarding the use of New York banking institutions by Defendants in undertaking due diligence is … not sufficient to establish transaction of business in New York by Defendants." 386 F. Supp. 2d 299, 309 (S.D.N.Y. 2005). *See also Hau Yin To*, 2017 WL 816136 at *5.

### c.    The Exercise of Personal Jurisdiction over the Foreign Defendants Would Not Comport with Due Process

The Court's exercise of jurisdiction must be reasonable under the circumstances for it to be consistent with due process. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). On a motion to dismiss, the Trustee bears the burden of establishing that a defendant has sufficient minimum contacts with the forum state such that each "defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum … thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co.*, 480 U.S. at 109. The Court should dismiss the

16

Complaint unless the "assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is whether it is reasonable under the circumstances of the particular case." *Metro. Life Ins. Co.,* 84 F.3d at 568 (quoting *Int'l Shoe Co.*, 326 U.S. at 316.)

As demonstrated above, the Trustee has not alleged that the Foreign Defendants had sufficient contacts with the United States related to the Trustee's claims to recover the alleged subsequent transfers. Accordingly, personal jurisdiction over the Foreign Defendants would not comport with due process. *See Walden*, 571 U.S. at 286.

**POINT II: THE COMPLAINT FAILS UNDER RULE 12(b)(6)**

The Court must dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Moreover, a claimant's allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A plausible claim pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

While the Court must accept well-pleaded factual allegations as true, it need not accept assertions unsupported by factual allegations, *id.* at 678-79, nor "legal conclusion[s] couched as [] factual allegation[s,]" *Papasan v. Allain*, 478 U.S. 265, 286 (1986), nor "conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its [plaintiff's] pleadings rely." *Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001).

a.    **The Statute of Limitations Bars the Trustee from Recovering Newly Pleaded Transfers in the Amended Complaint**

"Claims to recover subsequent transfers must be commenced no later than the earlier of one year after the initial transfer is avoided or the date that the case is closed or dismissed." *BNP Paribas*, 594 B.R. at 207 (*citing* 11 U.S.C. § 550(f)). "A settlement of an avoidance claim represents finality and triggers the one-year period set forth in § 550(f)." *Id.* (citation omitted). This Court approved the Rye Select Funds' settlement with the Trustee on September 22, 2011. Thus, the statute of limitation to file claims to recover subsequent transfers from the Rye Select funds expired on September 22, 2012. Am. Compl. ¶ 82; 11 U.S.C. § 550(f). Similarly, this Court approved Fairfield's settlement with the Trustee on July 8, 2011, and the statute of limitations to file claims to recover subsequent transfers from Fairfield expired on July 8, 2012. Order, *Picard v. Fairfield Inv. Fund Ltd.*, Ad. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. July 8, 2011), ECF No. 107. If the statute of limitations has expired, then a plaintiff is time-barred from asserting new claims unless those additional claims relate back to the date of an earlier timely pleading. *See Rodriguez v. City of N. Y.*, 10-cv-1849, 2011 WL 4344057, at *6 (S.D.N.Y. Sept. 7, 2011); *United States ex rel. Kolchinsky v. Moody's Corp.*, 162 F. Supp. 3d 186, 198-200 (S.D.N.Y. 2016).

The Amended Complaint in this case—filed on May 3, 2022—alleges 26 newly alleged subsequent transfers totaling $30,687,808. *See* Paccione Decl. Ex. H. All of these transfers are only now alleged for the first time, ten years after the expiration of the statute of limitations. Therefore, these newly alleged 26 transfers are barred under the statute of limitations. Moreover, of the 26 new transfers, six transfers totaling $8,209,298 were made on dates preceding the six-year look-back period available under the New York Debtor Creditor Law, and thus, cannot be

traced to initial transfers that could be avoided.[11] *See* Compl. Exs. C, I; Paccione Decl. Ex. H. For this reason alone, the Trustee cannot allege claims to recover these transfers.

To the extent the Trustee argues that these newly alleged transfers "relate back" to the claims in the original Complaint, "the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479, at *12 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*") (citation and quotation omitted). To relate back to the Complaint, the new claims must arise out of "a common 'core of operative facts' uniting the original and newly asserted claims." *Mayle v. Felix*, 545 U.S. 644, 659 (2005).

In *Fairfield Investment*, this Court held that newly alleged subsequent transfers related back to the previous complaint. There, the Court explained that the prior complaint provided adequate notice that the newly alleged transfers (made from Fairfield Sentry and affiliate funds to the also-affiliated Fairfield Investment Fund and Stable Fund LP) because it alleged, "[b]ecause the FGG Affiliates ... did not take the funds in good faith or without knowledge of the voidability of the initial transfers, all transfers from BLMIS to the Feeder Funds, which the Feeder Funds subsequently transferred, either directly or indirectly, to the FGG Affiliates ... (the "Subsequent Transfers"), were and remain Customer Property subject to turnover to the Trustee and/or are avoidable and recoverable by the Trustee." 2021 WL 3477479, at *12 (quoting prior pleading in case). Here, the Trustee conclusorily alleged in the original Complaint that all transfers made from BLMIS to Sentry and the Rye Select Funds are customer property. Complaint ¶¶ 66, 81. But there

---

[11] The Trustee claims that initial transfers are avoidable under the New York Debtor Creditor Law, which permits the Trustee to avoid transfers dating back six years from the filing of the case, in this instance December 11, 2002. Am. Compl. ¶¶ 158, 167, 176, 185. None of the Trustee's other bases for avoiding the initial transfers date back that far.

was no allegation in the original Complaint, nor is there any allegation in the Amended Complaint, about the Defendants' lack of good faith or knowledge of the voidability of initial transfers. And unlike the original pleading in *Fairfield Investment*, there was no allegation that *all*, or even *any*, unalleged additional subsequent transfers made to Defendants were customer property. Accordingly, there was no basis in the original Complaint for the Defendants to conclude that any additional transfers could be subject to recovery by the Trustee.

In addition, many of the new transfers do not relate to the "common core of operative facts" referred to in *Mayle*. This Court expanded on what a common core of operative facts is in *BNP Paribas*:

> In the context of avoidance actions, "each preferential and fraudulent transaction is treated separately and distinctly," *Fabrikant*, 480 B.R. at 492; *accord Metzeler*, 66 B.R. at 984, because the "[p]roof offered for one transaction does not govern as to another and, as such, relation back cannot be ordered between different transactions merely for being similar or arising from the same conduct." *Fabrikant*, 480 B.R. at 492; *accord 360networks*, 367 B.R. at 434 ("a preference action based on one transfer does not put defendant on notice of claims with respect to any other unidentified transfers"). Furthermore, the "mere allegation" that the previously identified transfers and the newly added transfers are "all ... fraudulent transfers does not make them part of the same conduct." *Metzeler*, 66 B.R. at 983; *see also id*. at 984 ("there is no indication that, merely because different transactions bear the same label, relation back is to be ordered on the ground that they arise from similar conduct").

594 B.R. at 210.

The newly alleged transfers occurred on different dates than the originally pleaded transfers. *See* Am. Compl. Exs. C, F, I, L. All nine newly alleged transfers from the Rye Broad Market fund occurred before the earliest transfer from that fund alleged in the original Complaint, including transfers four, five, and six years earlier. *Compare* Compl. Ex. Q *with* Am. Compl. Ex. F. All but two of the 16 newly alleged transfers from the Rye Prime fund occurred before the earliest transfer alleged in the original Complaint, and 12 of those newly alleged transfers date back several years before the earliest alleged transfer in the original Complaint. *Compare* Compl.

Ex.T *with* Am. Compl. Ex. I. This Court explained in *Fairfield Sentry* that "the different transfers may involve different evidence relating to Citco's bad faith because Citco's knowledge and conduct must be viewed as of the time that it certified the NAV per share." *In re Fairfield Sentry*, 10-13164 (SMB), 10-03496, 596 B.R. 275, 292 (Bankr. S.D.N.Y. 2018). In addition to the different evidence relating to good or bad faith that may be needed to prove the originally pleaded transfers, and the new transfers, evidence to "trace" the redemption payments to an origination payment from BLMIS may differ as well.[12] The "core of operative facts" concerning these much earlier transfers could therefore be significantly different.

For these reasons, the newly alleged transfers—most of which predate the originally pleaded transfers—are different claims that would require separate factual inquiries. Accordingly, they cannot relate back to the original Complaint, and the Trustee is therefore time barred from asserting these new claims.

**b.** **The Trustee's Claim Is Barred by 11 U.S.C. § 546(e)**

Section 550(a) of the Bankruptcy Code provides that to the extent a transfer is avoided under certain sections of the Code, a trustee may recover the property transferred, or its value, from the initial transferee or any subsequent transferee. Section 546(e), however, bars a trustee from avoiding a transfer (other than under Section 548(a)(1)(A), which has only a two-year lookback period) if the transfer, *inter alia*, (1) was made by or to a covered entity such as a stockbroker, financial institution, or financial participant; and (2) was either a settlement payment or a transfer in connection with a securities contract. 11 U.S.C. § 546(e).

---

[12] The Amended Complaint alleges that each Defendant "signed subscription agreements each time they invested." Am. Compl. ¶¶ 71, 72 (emphasis added). There is no allegation that each subscription agreement was identical, or that the documents to which the Defendants "affirmed that they received and read" (*id.*) are identical in each instance. Given the passage of time between most of the newly alleged transfers and the transfers alleged in the Complaint, it is, in fact, highly likely, that the documents are not only different pieces of paper, but different in substance as well.

The Second Circuit has instructed that courts enforce Section 546(e)'s safe harbor whenever it applies by its terms, specifically including in actions brought by the Trustee here. In construing Section 546(e) in the context of avoidance actions by the Trustee, the Second Circuit has explained that, "in enacting the Bankruptcy Code, Congress struck careful balances between the need for an equitable result for the debtor and its creditors, and the need for finality." *Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411, 423 (2d Cir. 2014) (internal citation omitted). In particular, "by enacting § 546(e), Congress provided that, for a very broad range of securities-related transfers, the interest in finality is sufficiently important that they cannot be avoided by a bankruptcy trustee at all, except as actual fraudulent transfers under § 548(a)(1)(A)." *Id*. "Unwinding settled securities transactions . . . would seriously undermine . . . markets in which certainty, speed, finality, and stability are necessary to attract capital." *In re Tribune Co. Fraudulent Conv. Litig.*, 946 F.3d 66, 90 (2d Cir. 2019) ("*Tribune I*"). "Permitting the clawback of millions, if not billions, of dollars from BLMIS clients—many of whom are institutional investors and feeder funds—would likely cause the very 'displacement' that Congress hoped to minimize in enacting § 546(e)." *Fishman*, 773 F.3d at 420 (citation omitted).

When such a clawback action is brought against a subsequent transferee of a BLMIS client, the subsequent transferee can assert any defenses against the Trustee that the initial transferee could have asserted, including Section 546(e). This includes the situation where all of the alleged initial transferees, Sentry and the Rye Select Funds, settled with the Trustee and agreed to a consent judgment.[13] *See Fairfield Inv. Fund.*, 2021 WL 3477479 at *3 ("Where the initial transferee fails

---

[13] On May 9, 2011, the Trustee entered into a Settlement Agreement (the "Fairfield Settlement Agreement") with the Liquidators of Sentry. (Copy attached as Paccione Decl. Ex. C). This Court approved the Fairfield Settlement Agreement on June 7, 2011, *id*. ECF 92, and it was incorporated into the consent judgment entered against Sentry on July 13, 2011 (the "Consent Judgment"), *id*. ECF 109, ¶ 2; Am. Compl. ¶ 154. In a September 22, 2011 order, this Court approved a settlement between the Trustee and more than a dozen of the Tremont Feeder Funds, Tremont and

to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here . . . , the subsequent transferee is nonetheless entitled to raise a § 546(e) defense against recovery of those funds."). Accordingly, because the Trustee is seeking to recover from the Defendants as a subsequent transferee of BLMIS transfers to Sentry and the Rye Select Funds, his claims based on Sections 544, 547, and 548(a)(1)(B) (and thus, all transfers for which recovery is sought dating farther back than December 11, 2006) must be dismissed if BLMIS's transfer to Sentry or the Rye Select Funds was protected by Section 546(e).[14] As shown below, it was.

### i.     The Alleged Initial Transfer Was Made by or to a Covered Entity

Here, the alleged initial transfers were made by or to an entity covered by Section 546(e) because a stockbroker made the alleged initial transfer. For an independent and second reason, the Fairfield initial transfers were made by or to an entity covered by Section 546(e) because they were made to a financial institution.[15]

### ii.     The Alleged Initial Transfer Was Made by a Stockbroker.

There is no dispute that BLMIS made the initial transfers at issue and that BLMIS was a "stockbroker" covered by Section 546(e). *Fishman*, 773 F.3d at 417 (It is uncontested "that BLMIS was a 'stockbroker'" for determining safe harbor). The Code defines "stockbroker" to include entities that "engage[ ] in the business of effecting transactions in securities." 11 U.S.C. § 101(53)(A). As the District Court has noted:

> Overall, Madoff Securities, which was registered as a stockbroker with the SEC, clearly engaged in securities transactions. . . . [E]ven assuming the truth of the allegation that Madoff Securities' investment advisory division never traded

---

its affiliates, and a former Tremont chief executive (the "Tremont Settlement Agreement"). (Copy attached as Paccione Decl. Ex. D.); Am. Compl. ¶ 82.

[14] Although Section 546(e) is an affirmative defense, a court can dismiss based on Section 546(e) if its applicability is established on the face of the complaint or documents incorporated by reference into or integral to the complaint. *See Fairfield Inv. Fund*, 2021 WL 3477479, at *2.

[15] Defendants reserve for later consideration, if necessary, the question of whether the transfer also was "made by or to (or for the benefit of) a . . . financial participant." 11 U.S.C. § 546(e).

securities on behalf of clients, Madoff Securities nonetheless qualifies as a
stockbroker by virtue of the trading conducted by its market making and proprietary
trading divisions.

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 719 (S.D.N.Y. 2012) (citation omitted),

*aff'd sub nom. Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*,

773 F.3d 411 (2d Cir. 2014). As the Second Circuit noted in the ensuing appeal, "It is not disputed

[by the Trustee] that BLMIS was a 'stockbroker' for the purposes of § 546(e)." 773 F.3d at 417;

see Br. for Plaintiff-Appellant Irving H. Picard at i-ii, 5, *In re Bernard L. Madoff Inv. Sec. LLC*,

No. 12-2557-bk(L) (2d Cir. May 15, 2013), ECF No. 145 (not challenging stockbroker finding).

### iii.    The Fairfield Initial Transfers, and Perhaps All Initial Transfers, Were Made to (or for the Benefit of) a "Financial Institutions"

There is also no dispute that BLMIS made the subject Fairfield initial transfers to Sentry,

which was a "financial institution" covered by 546(e). *In re Fairfield Sentry Ltd. (Fairfield Sentry

Ltd. v. Theodoor GGC Amsterdam)*, Adv. Pro. No. 10-13164 (SMB) 2020 WL 7345988, at *7

(Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*"). Section 101(22) defines "financial institution"

to include not only "an entity that is a commercial or savings bank," but also the customer of such

a bank "when [it] is acting as agent or custodian for a customer . . . in connection with a securities

contract." 11 U.S.C. § 101(22)(A). In *Fairfield III*, this Court held that Sentry was a "financial

institution[]" because it was a customer of Citco Bank Nederland N.V. Dublin Branch ("Citco

Bank"), a bank regulated by the Central Bank of the Netherlands and registered with the Central

Bank of Ireland. *Fairfield III*, 2020 WL 7345988, at *6 & n.11.[16] This Court found:

---

[16] *See* De Nederlandsche Bank, *Information Detail: Citco Bank Nederland N.V.*, https://www.dnb.nl/en/public-register/information-detail/?registerCode=WFTKF&relationNumber=B0275 (last visited Jan. 27, 2022) (identifying Citco Bank Nederland N.V. as "[c]arrying on the business of a bank," including "[a]cceptance of deposits and other repayable funds"); Central Bank of Ireland, *Financial Service Provider Profile: Citco Bank Nederland NV Dublin Branch*, http://registers.centralbank.ie/FirmDataPage.aspx?firmReferenceNumber=C27278 (last visited Jan. 27, 2022) (classifying Citco Bank as a "credit institution . . . whose business is to receive deposits or other repayable funds from the public and to grant credits for its own account"). This Court can take judicial notice of information from such public registries. *See Tribune I*, 946 F.3d at 78; *Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*, 323 B.R. 857, 869 (Bankr. S.D.N.Y. 2005).

> [T]he [Fairfield] Liquidators' admission that redemptions were paid by Citco Bank establishes the necessary agency. It is implausible to infer that Citco Bank made the redemption payments to specific redeemers in specific amounts absent the [Fairfield] Funds' directions to do so. Moreover, Citco Bank accepted those directions by executing the redemption payments. Based on the foregoing, the Funds were customers of Citco Bank who acted as their agents in connection with the securities contracts pursuant to which the redemption payments were made, and the Funds were, therefore "financial institutions" within the meaning of 11 U.S.C. § 546(e).

2020 WL 7345988, at *7 (internal footnote omitted). There is no reason for this Court to deviate from Judge Bernstein's well-reasoned *Fairfield III* decision.

In addition, if and to the extent the Amended Complaint alleges that redemption payments to the Defendants were tied to payments of customer property transferred from BLMIS to Sentry or the Rye Select Funds, *all* of the initial transfers were settlement payments for the benefit of a financial institution – namely, the Defendants, which are banks – and are therefore covered by the Section 546(e) safe harbor. *See SIPC v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 115(JSR), 2013 WL 1609154, at *9 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*").

### iv. The Alleged Initial Transfers Were Settlement Payments and Made in Connection with a Securities Contract

In *Fishman*, the Second Circuit held that Section 546(e) shielded transfers from BLMIS to its account holders from the Trustee's avoidance powers during a six-year look-back period. 773 F.3d at 417. The Court of Appeals concluded that the documents governing BLMIS customers' accounts constituted securities contracts, and that the payments BLMIS made to those customers were made "in connection with" those contracts, and also constituted "settlement payments," *id.* at 418-23—though either of those findings would have sufficed to invoke the safe harbor. The Court rejected the Trustee's argument that the safe harbor did not apply because Madoff did not actually carry out the promised securities transactions. *Id.* at 419-20.

The same reasoning and result apply to the transfers that the Trustee alleges BLMIS made to Sentry and the Rye Select Funds for the purpose of funding the Defendants' redemption

requests. Transfers from BLMIS to Sentry and Rye were clearly "in connection with" the securities

contracts Sentry and the Rye Select Funds had separately entered into with BLMIS, as in *Fishman*.

With respect to the Fairfield initial transfers, they were *also* "in connection with" the allegedly

related securities contract the Defendants had with Sentry through Sentry's Articles of

Association,[17] pursuant to which the Defendants made their redemption. *See, e.g.*, *Migani*, [2014]

UKPC 9, ¶ 10, ("the terms of the subscriber's membership of the Fund, which govern the

redemption of its shares . . . are to be found in the Articles of Association of the Fund").[18]

The definition of "securities contract" includes "a contract for the purchase, sale, or loan

of a security," 11 U.S.C. § 741(7)(A)(i), and "[t]he term 'redemption,' in the securities context,

means 'repurchase,'" *Tribune I*, 946 F.3d at 80. The definition of "securities contract" also

includes "any other agreement or transaction that is similar to an agreement or transaction referred

to in this subparagraph." 11 U.S.C. § 741(7)(A)(vii). Accordingly, "the definition of a securities

contract . . . includes . . . redemption requests." *Cohmad*, 2013 WL 1609154, at *8. Furthermore,

Section 546(e) only requires that the transfer be "in connection with *a* securities contract," not in

connection with the securities contract between the transferor and initial transferee. *See Fishman*,

773 F.3d at 422 (holding that "Section 546(e) sets a low bar for the required relationship between

the securities contract and the transfer sought to be avoided" and that "a transfer can be connected

to, and can be made in relation to, multiple documents or purposes simultaneously"); *Cohmad*,

2013 WL 1609154, at *9 (explaining that a transfer from a debtor to an initial transferee may

---

[17] *See* The Declaration of William Hare, counsel for the Fairfield Liquidators, attaching the Memorandum of Association and Articles of Association of Fairfield Sentry Limited, as filed with the Court in *Fairfield Sentry Ltd. v. ABN AMRO Schwiz AG, et al.*, Adv. Pro. No. 10-03636 (Bankr. S.D.N.Y. Oct. 26, 2016), ECF 164 and 164-6 (copy attached as Paccione Decl. Ex. E).

[18] This Court may consider the Fairfield Articles of Association in connection with this memorandum because, as the basis for the challenged transfer, they are integral to the Complaint. *See In re Trib. Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 176 (2d Cir. 2021) ("Here, the documents the district court relied on were the contracts that set forth the relationship between Tribune and CTC, and they were therefore integral to the complaint.").

qualify as having been made "in connection with a securities contract" between the initial

transferee and a subsequent transferee, and thus be covered by the safe harbor on that basis).

Implicit in the Trustee's subsequent transfer claim is the allegation that the funds the

Defendants received were transferred from BLMIS to Sentry and the Rye Select Funds so that

Sentry and the Rye Select Funds could then satisfy the Defendants' redemption requests. That

assertion necessarily involves the allegation of a connection between the initial transfers from

BLMIS to Sentry and the Rye Select Funds, and the Defendants' contract with Sentry or the Rye

Select Funds that authorized the redemption. Accordingly, the Section 546(e) safe harbor applies

to the initial transfer and thus bars recovery of the subsequent transfer.

### v.    The Judicially-Created "Actual Knowledge" Exception to the Section 546(e)'s Application Should Not Apply Here

The Trustee may argue that the safe harbor does not apply here because Sentry and the Rye

Select Funds had actual knowledge of Madoff's fraud. In *Fairfield Investment Fund*, this Court

accepted that Sentry's knowledge had been adequately pleaded in the *Fairfield* Second Amended

Complaint. *See* 2021 WL 3477479, at *4-5 (citing Paccione Decl. Ex. G).[19] The Court then quoted

Judge Rakoff's statement that "'if the Trustee sufficiently alleges that the transferee from whom

he seeks to recover a fraudulent transfer knew of Madoff Securities' fraud, that transferee cannot

claim the protections of Section 546(e)'s safe harbor." *Fairfield Inv. Fund*, 2021 WL 3477479, at

*4 (quoting *Cohmad*, 2013 WL 1609154, at *7). And, in *Multi-Strategy* and *Banque SYZ*, this

---

[19] The Defendants respectfully disagree with that conclusion and reserve for a later stage of this action or appeal all arguments that the Trustee has not adequately pleaded Sentry's actual knowledge of Madoff's fraud either in the Second Amended Complaint or the earlier pleadings in *Fairfield Investment Fund* and/or that Sentry did not in fact have such actual knowledge. *See Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 776-77 (2020) (holding that "to have 'actual knowledge' of a piece of information, one must in fact be aware of it" and distinguishing between actual knowledge and constructive knowledge); *Heinert v. Bank of Am. N.A.*, 835 F. App'x 627, 631 (2d Cir. 2020) ("allegations [of actual knowledge of misrepresentations] do not suffice to show that [the bank] had actual knowledge of the [account holders'] Ponzi scheme, the fraud on which the [plaintiffs'] claim relies"); *Rosner v. Bank of China*, 349 F. App'x 637, 639 (2d Cir. 2009) (similar); *Ryan v. Hunton & Williams*, No. 99-cv-5938 (JG), 2000 WL 1375265, at *9 (E.D.N.Y. Sept. 20, 2000) (similar); *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117, 140 (Bankr. S.D.N.Y. 2014) (refusing to equate "strong suspicion" with "actual knowledge").

Court confirmed its finding that the Fairfield Amended Complaint pleads Sentry's actual knowledge, which precluded subsequent transferees from invoking the Section 546(e) safe harbor, to the extent the initial transfer was made from BLMIS to Sentry.[20] *See Multi-Strategy Fund Ltd.,* 2022 WL 2137073 at *8; *see also Banque SYZ*, 2022 WL 2135019 at *9.

The Trustee's argument does not defeat the application of the safe harbor here for several reasons. *First*, as noted above, even if Sentry had actual knowledge of the BLMIS fraud sufficient to preclude Sentry from invoking Section 546(e), that would not affect the separate securities contracts between Sentry, on the one hand, and its investors, including the Defendants, on the other. Nor would Sentry's alleged knowledge of the BLMIS fraud preclude the application of Section 546(e) for the benefit of a Sentry investor if the initial transfer was "in connection with" Sentry's agreement with a Sentry investor. In *Cohmad*, Judge Rakoff agreed that securities contracts other than the initial transferee's securities contract with BLMIS could independently satisfy Section 546(e)'s requirement that the initial transfer be in connection with a securities contract. 2013 WL 1609154, at *8-9. Accordingly, Judge Rakoff ruled that so long as the initial transferee withdrew funds from BLMIS to make a payment under a securities contract between the initial transferee and a subsequent transferee, then the withdrawal from BLMIS would be a transfer made in connection with a securities contract—namely, the contract between the initial transferee and the subsequent transferee—and would not be avoidable on a subsequent transferee claim:

> Take, for example, a hypothetical situation in which the Trustee alleges that a withdrawal of funds by an investment fund from its Madoff Securities customer account occurred because an investor in that fund sought redemption of its investment under the terms of its investment contract. Assuming that either the

---

[20] The *Cohmad* analysis does not end with an examination of the initial transferee's level of knowledge. In *Cohmad*, Judge Rakoff announced an exception to the safe harbor for subsequent transferees parallel to the one he announced for initial transferees, precluding Section 546(e) from being invoked if a subsequent transferee had "actual knowledge." *Cohmad*, 2013 WL 1609154, at *4, 7.

investment fund or the investor qualifies as a financial institution or financial participant, and barring other circumstances that may appear on the facts of a given case, that situation appears to fit within the plain terms of Section 546(e): an initial transfer that was "made by or to (or for the benefit of) a . . . financial institution [or] financial participant . . . in connection with a securities contract."

*Id.* at *9 (internal footnote omitted).[21] As applied to the facts here, the investment fund was Sentry and the investors were the Defendants. In *Multi-Strategy*, the Court acknowledged that Section 546(e) appropriately barred recovery by the Fairfield Sentry Liquidators when it sought to recover from its shareholders, who were initial transferees in those cases; that same transaction, to which the safe harbor applies, should also bar the Trustee from avoiding the transfers in this case. *See Multi-Strategy Fund Ltd.*, 2022 WL 2137073 at *20.

*Second*, the Trustee has not pleaded that the Defendants actually knew of Madoff's fraud. Since the applicability of Section 546(e) is clear on the face of the Amended Complaint and documents integral to it, if the Trustee advances a theory of transferee actual knowledge as an exception to the safe harbor, it is incumbent on him to plead such actual knowledge. But nothing in the Amended Complaint even suggests that the Defendants had actual knowledge of Madoff's fraud.[22] There is no allegation that the Defendants actually knew of any fraud at Sentry or at the Rye Select Funds either. And "actual knowledge," *Cohmad*, 2013 WL 1609154, at *1—not "mere suspicion[]," *id.* at *3, or inquiry notice—is what Judge Rakoff repeatedly stated was necessary to

---

[21] Judge Rakoff also observed that "[t]o the extent that, for example, an initial transfer from Madoff [S]ecurities to an investment fund customer and the subsequent transfer from the investment fund to its redeeming investors may together comprise a 'settlement payment' under *Enron* [*Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 339 (2d Cir. 2011)], that transfer may fall within the purview of Section 546(e), assuming it meets the statute's other requirements." *Cohmad*, 2013 WL 1609154, at *9 n.5.

[22] This case is unlike *Fairfield Investment Fund*, where this Court found that the allegations against most of the subsequent transferee defendants were sufficient to show they actually knew about Madoff's fraud. *See* 2021 WL 3477479, at *5-6. In that case, many of the subsequent transfers were in connection with management contracts, not securities contracts. *See, e.g.*, Fairfield Am. Compl. ¶ 138 (Fairfield Greenwich Limited received $3,844,000 in management fees and $83,591,000 in performance fees from Sentry in 2002); Am. Complaint, Ex. 12 at 5, *Picard v. Fairfield Sentry Ltd.*, Adv. Pr. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Aug. 28, 2020), ECF 286-12, at 5 (showing these same amounts as subsequent transfers from Sentry).

defeat the safe harbor. *See, e.g.*, *id.* at \*4 ("the Trustee must show, at a minimum, that the transferee had actual knowledge that there were no actual securities transactions being conducted") (internal footnote omitted); *id.* at \*1, 3, 6, 7, 10.

The reasoning behind *Cohmad* is that a subsequent transferee without actual knowledge has a "reasonable expectation" that it is receiving a securities settlement payment pursuant to a securities contract. *Cohmad*, 2013 WL 1609154 at \* 4. Indeed, Congress sought to protect that "reasonable expectation" through § 546(e). *Id.* Because the initial transfers were made in connection with the securities contracts between the feeder funds and the Defendants, and the Defendants are not alleged to have had actual knowledge of the Madoff fraud, the Court can and should, on those grounds alone, apply the safe harbor in Section 546(e) to this case.

*Third*, while this Court ruled that the Fairfield Amended Complaint alleged actual knowledge of Sentry, there is no such finding as it concerns the Rye Select Funds. And the incorporated Tremont Complaint[23] makes clear that the Rye Select Funds did *not* have actual knowledge of the Madoff fraud. Specifically, the Tremont Complaint alleges that the Rye Select Funds were: (i) "ignorant of the fraud" (Tremont Complaint ¶ 4), (ii) failing to "perform independent, meaningful, and reasonable due diligence" on BLMIS (*id.* ¶ 8; *see also id.* ¶¶ 119, 153, 156), (iii) "blindly relying on Madoff" (*id.* ¶ 9), (iv) "wrongly rel[ying] on Madoff's reputation" (*id.* ¶ 85), (v) "provided only vague or inconsistent descriptions by Madoff of the split-strike conversion strategy" (*id.* ¶ 89; *see also id.* ¶ 117), (vi) "blindly accept[ing] Madoff's representations about the purported [investment] strategy" (*id.* ¶ 92), (vii) "ha[ving] very little understanding as to how Madoff was able to capture the extraordinarily consistent returns . . ." (*id.* ¶ 152; *see also id.* ¶ 162), (viii) not concerned with "understanding what Madoff really was doing

---

[23] *Picard v. Tremont Group Holdings, Inc., et al. (In re Bernard L. Madoff Inv. Secs., LLC)*, Adv. Pro. No. 10-05310, ECF No. 1 (Bankr. S.D.N.Y. Dec. 7, 2010) (the "Tremont Complaint") (copy attached as Paccione Decl. Ex. F).

with . . . money" (*id.* ¶ 195), (ix) "bur[ying] their collective heads in the proverbial sand and refus[ing] to reasonably inquire into many red flags well known to them and many others throughout the financial and hedge fund industries" (*id.* ¶ 157), and (x) the Rye Select Funds "should have questioned how Madoff's alleged trades could account for such a high percentage of the total volume traded on the exchanges of a particular stock." *Id.* ¶ 166. Even the Trustee's new allegations in the Amended Complaint reflect that a Rye Select Fund manager was "bragg[ing] internally that he taught Madoff how to trade options" which would only make sense if he believed Madoff was, in fact, trading options. Am. Compl. ¶ 123.

These allegations do not establish the Rye Select Funds as having "actual knowledge" of the Madoff Ponzi scheme; just the opposite, these allegations are clear that the Rye Select Funds had no knowledge at all of the fraud. *See Intel Corp. Inv. Policy Comm*, 140 S. Ct. at 776-77 (2020) (holding that "to have 'actual knowledge' of a piece of information, one must in fact be aware of it" and distinguishing between actual knowledge and constructive knowledge); *Heinert*, 835 F. App'x at 631 (similar); *Rosner,* 349 F. App'x at 639 (similar); *Ryan*, 2000 WL 1375265, at *9 (similar); *Merkin,* 515 B.R. at 140 (similar); *see also Cohmad*, 2013 WL 1609154 at *6 (holding that the relevant "actual knowledge" that would defeat application of § 546(e) is the knowledge of the party from which the plaintiff seeks to recover, and dismissing claims against the subsequent transferee because plaintiff failed to plead individualized factual allegations demonstrating that the subsequent transferee independently had actual knowledge of the BLMIS fraud).

*Finally*, Section 546(e) also applies here for a separate and independently sufficient reason. While we recognize that this Court and the District Court have previously ruled that Section 546(e) cannot be invoked by a transferee with actual knowledge of Madoff's fraud, and while, for the reasons discussed above, this Court does not need to reject that ruling in order to give the Defendants the benefit of the safe harbor, we note that nothing in Section 546(e) supports making

its applicability turn on the knowledge of the transferee, as opposed to the debtor-transferor.[24] That section provides for only one exception to the safe harbor: namely, for a claim under Section 548(a)(1)(A), which requires the Trustee to allege and prove intentional fraud by the *transferor*. *See Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171, 181 (2d Cir. 2021) ("Voidability under § 548(a)(1)(A) focuses on the fraudulent intent of the debtor-transferor.") (internal footnote omitted); *Silverman v. Actrade Cap., Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005) (under Section 548(a)(1)(A) "it is the intent of the transferor and not the transferee that is relevant") (internal citations omitted). Thus, the exception to the safe harbor articulated in *Cohmad*, *i.e.*, that if the transferee from whom the Trustee seeks to recover knew of Madoff securities' fraud, that transferee cannot claim the protections of Section 546(e) (*Cohmad*, 2013 WL 1609154, at *7), is not supported by the text of the statute.

To hold that transferee knowledge defeats the safe harbor for a transferor is thus inconsistent with Section 546(e)'s language. Moreover, where the Bankruptcy Code creates an exemption or safe harbor, and specifies exceptions, a court is not free to create additional exceptions even when doing so is motivated by a party's alleged wrongdoing. *See Law v. Siegel*, 571 U.S. 415, 424-25 (2014). Instead, the courts must adhere to "the plain meaning of the

---

[24] The Defendants here recognize that the Court held in *Multi-Strategy* and *Syz* that § 546(e) does not apply to transfers and transferees at issue in those proceedings, and said that it did not reach an inconsistent result in *Picard v. Fairfield Inv. Fund Ltd.*, No. 09-01239, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021). *See Multi-Strategy Fund Ltd.*, 2022 WL 2137073 at *10; *see also Banque SYZ*, 2022 WL 2135019 at *10. Defendants respectfully urge that the Court's *Multi-Strategy* and *Syz* decisions misread the District Court's controlling precedent in *Cohmad* and improperly applied that controlling precedent in its *Fairfield Inv. Fund* decision, which follows *Cohmad's* reasoning and quotes a key *Cohmad* holding, saying, "'if the Trustee sufficiently alleges that the transferee from whom he seeks to recover a fraudulent transfer knew of Madoff Securities' fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor.'" *Fairfield Inv. Fund*, 2021 WL 3477479 at *4 (emphasis added; quoting *Cohmad*). The court examined whether the plaintiff sufficiently alleged facts establishing actual knowledge as to each defendant, *id.* at *5-*7, and concluded that the plaintiff had done so for all except the one defendant who was only a subsequent transferee. *Id.* at *4, *15. As to that defendant, the court found the plaintiff had "failed to plead individualized factual allegations demonstrating that [she] had independent actual knowledge of the BLMIS fraud" and dismissed all claims against her. *Id.* at *6. Defendants respectfully request the Court consider these arguments and dismiss the claims against them under the safe harbor.

language" of the statute. *Merit Mgmt. Grp., LP v. FTI Consulting Inc.*, 138 S. Ct. 883, 897 (2018). The Second Circuit's admonished in *Fishman* that, in enacting Section 546(e) and its single exception for claims under Section 548(a)(1)(A), Congress struck a balance favoring the securities markets' interest in finality over creditors' interests in recovery, and that the courts "are obliged to respect the balance Congress struck among these complex competing considerations." 773 F.3d at 423. Accordingly, the safe harbor should apply here according to its plain language regardless of the alleged knowledge of the initial transferee, Sentry or the Rye Select Funds.

c. **The Trustee Does Not Adequately Plead the Avoidability of the Fairfield or Rye Initial Transfers because Adopting the Entire Fairfield Second Amended Complaint and Tremont Complaint by Reference Is Improper**

To recover from a subsequent transferee, the Trustee must plead and prove, among other things, an initial transfer that is avoided or at least avoidable. 11 U.S.C. § 550(a); *Cohmad*, 2013 WL 1609154, at *7-8. The Trustee seeks to recover from Defendants under 11 U.S.C. § 550 as a subsequent transferee of an alleged fraudulent conveyance of funds from BLMIS to Sentry and from BLMIS to the Rye Select Funds. *See* Am. Compl. ¶¶ 162, 173, 182, 191. In his Amended Complaint, the Trustee attempts to plead an avoidable initial transfer from BLMIS to the Rye Select Funds, in part by "incorporat[ing] by reference the factual allegations in the Tremont Complaint, as supplemented below." Am. Compl. ¶ 80. The Trustee attempts to plead an avoidable initial transfer from BLMIS to Sentry *solely* with a single, conclusory allegation, "incorporat[ing] by reference the allegations contained in the [Fairfield] Second Amended Complaint as if fully set forth herein, including but not limited to paragraphs 1-10, 79-313, 315-16." Am. Compl. ¶ 157. The allegation as to Fairfield is insufficient on its own to establish the avoidability of the Fairfield transfers. The allegation as to the Rye Select Funds renders the allegations made in the incorporated pleading inconsistent with the claims made within the Amended Complaint. Thus,

the allegations are incoherent and violate Rule 8(a)—accordingly, both attempts at incorporating by reference doom the Amended Complaint.

### i.    Fairfield

The Amended Complaint asserts in a conclusory manner that the Sentry initial transfers were avoidable without any supporting factual allegations that would meet the pleading requirements of *Twombly* and *Iqbal*. Without more, the Amended Complaint is missing essential factual allegations and must be dismissed for failure to state a claim on which relief may be granted. For example, Section 546(e) bars the Trustee from asserting many claims against transferees, and Judge Rakoff held that only a transferee with "actual knowledge" of BLMIS' fraud can be sued for claims that would otherwise be barred by Section 546(e). Yet, the only allegations that relate at all to Sentry's knowledge about BLMIS are contained in the Fairfield Amended Complaint[25], which the Trustee's Amended Complaint purports to incorporate in its entirety by reference in paragraph 157.

Rule 10(c) of the Federal Rules of Civil Procedure provides, "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading." The rule "eliminates redundancy and repetition." Moore's Federal Practice–Civil § 10.04[1] (2021) (citing *Brause v. Travelers Fire Ins. Co.*, 19 F.R.D. 231, 234 (S.D.N.Y. 1956)). For example, the common practice of adopting by reference the background allegations of a complaint into the specific claims for relief obviates the need to repeat general allegations.

However, the authority to adopt by reference has its limits. Courts have generally held that a pleading in one action may not adopt by reference the pleadings in a different action. *Texas Water Supply Corp. v. Reconstruction Fin. Corp.*, 204 F.2d 190, 196 (5th Cir. 1953); *Nat'l Credit Union*

---

[25] Fairfield Second Amended Complaint, *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. Aug. 28, 2020), ECF 286 (without exhibits) (copy attached as Paccione Decl. Ex. G).

*Admin. Bd. v. Morgan Stanley & Co.*, No. 13-cv-6705 (DLC), 2014 WL 1673351, at *9 (S.D.N.Y. Apr. 28, 2014); *see Davis v. Bifani*, No. 07-cv-00122-MEH-BN, 2007 WL 1216518, at *1 (D. Colo. Apr. 24, 2007) (it is improper "to incorporate by reference wholesale the allegations in a complaint in a completely separate action, even if that action is between the same parties," but striking the incorporation by reference for violation of Rule 8(a), rather than Rule 10(c)); *Muth v. Dechert, Price & Rhoads*, 391 F. Supp. 935, 938 (E.D. Pa. 1975) ("when determining the sufficiency of the Third-Party Complaints, we can look only to the pleadings in this case").

Courts are hesitant to incorporate an entire pleading[26], but if permitted, that incorporation must also comply with Rule 8's requirement that a complaint contains "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1); Fed. R. Bankr. P. 7008. Thus, even where adoption by reference is permitted (whether from the same adversary proceeding or another), Rule 8(a) also requires that a pleading must be clear and concise, and the adoption must be "with a degree of specificity and clarity which would enable the responding party to easily determine the nature and extent of the incorporation." *Wolfe v. Charter Forest Behav. Health Sys., Inc.*, 185 F.R.D. 225, 229 (W.D. La. 1999). "[T]he reference must be clear and explicit and must specifically identify the statements incorporated." Moore's Federal Practice–Civil § 10.04[1] (2021) (citing *Toberman v. Copas*, 800 F. Supp. 1239, 1243 (M.D. Pa. 1992)).

---

[26] The Trustee will likely rely on a reported bankruptcy court decision that has permitted incorporation by reference of pleadings filed in one adversary proceeding in a different adversary proceeding. *Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670 (Bankr. E.D. Pa. 2010). But the reasoning in that case was incorrect because it treated the bankruptcy case itself as a single action. That reading improperly confuses the terminology used in the Federal Rules of Civil Procedure (the "Civil Rules") with different terminology used in the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Part VII of the Bankruptcy Rules applies to adversary proceedings and treats each adversary proceeding as a separate proceeding, analogous to a civil action under the Civil Rules. *Compare* 28 U.S.C. § 1334(a) (jurisdiction over "cases" under title 11) *with id.* § 1334(b) (jurisdiction over "proceedings" arising in or related to cases under title 11). Moreover, the *Geiger* court granted the defendant's motion to dismiss the complaint because its incorporation of the other pleading in its entirety failed to comply with Rule 8(a)'s requirement to plead short plain statements.

Finally, the resulting pleading must be clear, concise, and specific, and the incorporation "must specifically identify which portions of the prior pleading are adopted." *Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212, 216 (D. Mass. 1995) (internal quotation and citation omitted); *accord Toberman*, 800 F. Supp. at 1243 (plaintiff must "provid[e], at a minimum, direct reference to specific paragraphs relied on"). Rule 10(c) permits only adoption by reference of a "statement in a pleading," not of entire pleadings. *Muhammad v. Bethel-Muhammad*, No. 11-0690-WS-B, 2012 WL 1854676, at *6 n.10 (S.D. Ala. May 21, 2012) (condemning "sweeping reference to his 100-page complaint"). The requirement that references be explicit and direct is not merely for form: it "enable[s] the responding party to ascertain the nature and extent of the incorporation." *Ghazzaoui v. Anne Arundel Cnty.*, No. ELH-14-1410, 2014 WL 3973037, at *4 (D. Md. Aug. 11, 2014). *See also*, *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446-47 (E.D. Va. 2009) (internal footnote omitted), *aff'd*, 382 F. App'x 256 (4th Cir. 2010) ("risk of such confusion and inconvenience is particularly high where, as here, a party seeks wholesale incorporation in an amended pleading of a superseded version of that same pleading"). Thus, a "Rule 10(c) adoption clause that does little more than make wholesale reference to the contents of a prior pleading exemplifies the kind of incorporation that fails to give the requisite guidance to the responding party." *Nycomed U.S., Inc. v. Glenmark Generics Ltd.*, No. 08-cv-5023 (CBA)(RLM), 2010 WL 1257803, at *4 (E.D.N.Y. Mar. 26, 2010) (internal quotation and citation omitted).

The District Court for the Eastern District of New York synthesized these requirements in dismissing a complaint that relied on numerous prior pleadings. In *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422 (E.D.N.Y. 2007), the government brought a civil RICO action in a complaint which attached as exhibits pleadings from several prior criminal and civil actions against some of the same defendants. The court rejected the attempt to incorporate the initial pleadings. First, "[t]he Government's failure to specifically identify which portions of

the hundreds of pages of exhibits it intends to incorporate by reference into the Amended Complaint makes it impossible for the Court or the defendants to ascertain the nature and extent of the incorporation, and the purported incorporation is therefore invalid." *Id*. at 462. Second, the wholesale incorporation of the prior pleadings is "a blatant violation of Rule 8(a)(2)'s direction that a civil plaintiff provide a 'short and plain statement of the claim,'" and it would have rendered the complaint, as it does here, "utterly incoherent" and "an unintelligible morass of self-contradictory allegations." *Id*. at 462 n.72, 463. Finally, the court noted that if the incorporation were accepted, the defendants would have been required to respond to the 85-page complaint, and every paragraph in the 400 pages of exhibits. *Id*. at 464.

In this case, the Trustee's attempt to plead the avoidability of the Sentry initial transfers rests solely by incorporating by reference "the allegations contained in the Second Amended Complaints if fully set forth herein, including but not limited to paragraphs 1-10, 79-313, 315-316." Am. Compl. ¶ 157. The attempt to incorporate by reference 798 paragraphs of a 217-page complaint (which itself attaches and refers to 111 exhibits) into what would otherwise be a 48-page complaint against the Defendants violates numerous pleading rules and requirements: it improperly incorporates by reference a pleading from another action; it improperly incorporates an entire pleading, not the statements in a pleading; and it improperly fails to specify the relevant allegations (as opposed to "all" allegations) that are being incorporated.

Permitting the Trustee's incorporation by reference here might require the Defendants to answer all the allegations in all 798 paragraphs in the Fairfield Second Amended Complaint, even those that have nothing to do with the claim in this Adversary Proceeding. Even if the Defendants could respond to the Fairfield Second Amended Complaint, the result would be to expand the scope of this adversary proceeding well beyond the claims asserted in the Complaint for recovery of subsequent transfers of allegedly avoidable transfers of BLMIS customer property and put in

issue here all the other claims for relief in the Second Amended Complaint. The Trustee does not assert liability of the Defendants for any of the Trustee's claims against any of the defendants named in the Fairfield Second Amended Complaint. Defendants should not be required to address those claims, with all the associated discovery and trial time that would likely result, or guess, at its peril, which of the incorporated allegations are relevant and must be addressed.

### ii.     Rye Select Funds

These legal principles apply equally to the same effect with respect to the Rye Select Funds' transfers. The Trustee makes separate allegations relating to the Rye Select Funds' relationship with Madoff. But he also incorporates the entire 467-paragraph, 136-page Tremont Complaint, which contains allegations that contradict the independent allegations in the Amended Complaint, rendering the Trustee's pleading in this case incoherent.[27] The pleading runs afoul of Rule 8(a)'s requirement for "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "[each] allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a); *see supra* Point II.c.i. It also demonstrates the negative effect of incorporating an entire pleading, rather than precisely adopting specific allegations. As it stands, the Trustee has alleged varying levels of knowledge of the Rye Select Funds that could potentially impact the viability of the Trustee's claims. The Tremont Complaint's incorporation, coupled with the Amended Complaint's allegations about the Rye Select Funds, create an incoherent jumble that Rule 8(a) expressly proscribes.

For all these reasons, the Court should reject the Trustee's attempt to incorporate these pleadings by reference. Without the allegations incorporated from the Fairfield Second Amended Complaint, the Amended Complaint pleads avoidability of the Fairfield transfers in only a

---

[27] The Trustee alleges in the Amended Complaint that the Rye Select Funds had actual knowledge of the fraud, which directly contradicts allegations the Trustee seeks to incorporate in the Tremont Complaint. *See supra* Point II.b.v.

conclusory fashion. And, the Trustee must contend with the inconsistent allegations concerning the Rye Select Funds, some of which are fatal to his claims. *See supra* Point II.b.v. Accordingly, the Amended Complaint does not adequately plead an essential element of the claim to recover subsequent transfers—avoidability of the Sentry and Rye initial transfers—and should be dismissed.

## CONCLUSION

For the reasons set forth above, the Defendants respectfully request that the Court grant the Defendants' motion to dismiss the Trustee's Amended Complaint.

Dated: July 8, 2022
     New York, New York

               **KATTEN MUCHIN ROSENMAN LLP**

               /s/ Anthony L. Paccione
               Anthony L. Paccione
               Mark T. Ciani
               50 Rockefeller Plaza
               New York, New York 10020
               Telephone: (212) 940-8800
               anthony.paccione@katten.com
               mark.ciani@katten.com

               *Attorneys for Defendants*