**WUERSCH & GERING LLP**
Gregory F. Hauser
Joshua A. Dachs
100 Wall Street, 10th Floor
New York, New York 10005
Telephone: (212) 509-5050
Gregory.Hauser@WG-Law.com
Joshua.Dachs@WG-Law.com
*Counsel for Defendants Bank Vontobel AG f/k/a Bank J.*
*Vontobel & Co. AG and Vontobel Asset Management Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | **Adv. Pro. No. 08-01789 (CGM)** |
| *Plaintiff-Applicant*, | **SIPA Liquidation** |
| -v- | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | **(Substantively Consolidated)** |
| *Defendant.* | |
| In re: | |
| BERNARD L. MADOFF, | |
| *Debtor.* | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | **Adv. Pro. No. 12-01202 (CGM)** |
| *Plaintiff,* | |
| -v- | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS BANK VONTOBEL AG f/k/a BANK J. VONTOBEL & CO. AG AND VONTOBEL ASSET MANAGEMENT, INC.'S MOTION TO DISMISS THE COMPLAINT** |
| BANK VONTOBEL AG f/k/a BANK J. VONTOBEL & CO. AG and VONTOBEL ASSET MANAGEMENT, INC., | |
| *Defendants*. | |

# **Table of Contents**

Preliminary Statement................................................................................................................ 1

Procedural And Factual Background ......................................................................................... 4

Argument ................................................................................................................................... 6

I.     Standard Of Review. ...................................................................................................... 6

II.    The Complaint Should Be Dismissed As Against Bank Vontobel For Lack Of
       Jurisdiction, Pursuant To Fed. R. Civ. P. § 12(B)(2). ................................................. 7

    A.   This Court Lacks General Jurisdiction Over Bank Vontobel...................................... 8

    B.   This Court Lacks Specific Jurisdiction over Bank Vontobel. ..................................... 9

III.   The Complaint Fails To Meet The Pleading Standards Set Forth In Fed. R. Civ. P.
       Rules 8(a) And 9(b). .................................................................................................... 16

IV.    The Majority of The Trustee's Claims Are Barred By Bankruptcy Code § 546(e)... 20

V.     The Complaint Fails To Plausibly Allege That The Subsequent Transfers To The
       Vontobel Defendants Were Of BLMIS Customer Property....................................... 23

VI.    The Vontobel Defendants Are Entitled To The Good Faith Defense. ........................ 26

Conclusion ............................................................................................................................... 29

Certificate Of Service ............................................................................................................. 30

# Table of Authorities

**Page(s)**

**Cases**

*Alki Partners, L.P. v. Vatas Holding GmbH*,
769 F. Supp. 2d 478 (S.D.N.Y. 2011)................................................................................. 15, 16

*Allied Dynamics Corp. v. Kennametal, Inc.*,
965 F. Supp. 2d 276 (E.D.N.Y. 2013).................................................................................... 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................ 14, 15, 24, 33

*Atherton v. F.D.I.C.*,
519 U.S. 213 (1997) ............................................................................................................... 34

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................................................... 14, 24

*Bodum U.S.A., Inc. v. Hantover, Inc.*,
No. 11 CIV. 8702 SAS, 2012 WL 1309176 (S.D.N.Y. Apr. 16, 2012).................................... 17

*Charles Schwab Corp. v. Bank of Am. Corp.*,
883 F.3d 68 (2d Cir. 2018).................................................................................................... 21

*Contemporary Indus. Corp. v. Frost*,
564 F.3d 981 (8th Cir.2009).................................................................................................. 31

*Cooper v. Parsky*,
1997 WL 242534 (S.D.N.Y. Jan. 8, 1997)............................................................................ 21

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014) ............................................................................................................ 17

*Dean St. Cap. Advisors, LLC v. Otoka Energy Corp.*,
2017 WL 476720 (S.D.N.Y. Feb. 2, 2017)............................................................................. 22

*Fairfield III*,
2020 WL 7345988.................................................................................................................. 30

*Fairfield Inv. Fund*,
2021 WL 3477479.................................................................................................................. 29

*Fishman*,
773 F.3d.......................................................................................................................... 29, 30

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
141 S. Ct. 1017 (2021) ............................................................................................................ 17

*Giuliano v. Barch*,
No. 16-cv-0859 (NSR), 2017 WL 1234042 (S.D.N.Y. Mar. 31, 2017)..................................... 23

*Hau Yin To v. HSBC Holds., PLC*,
2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) .............................................................................. 22

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984) ................................................................................................................. 19

*Hill v. HSBC Bank plc*,
207 F. Supp. 3d 333 (S.D.N.Y. 2016)....................................................................................... 23

*Hinton v. Trans Union, LLC*,
654 F. Supp. 2d 440 (E.D. Va. 2009)........................................................................................ 27

*In re Amaranth Natural Gas Commodities Litig.*,
587 F. Supp. 2d 513 (S.D.N.Y. 2008).................................................................................. 19, 20

*In re Dreier LLP*,
452 B.R. 391 (Bankr. S.D.N.Y. 2011) ...................................................................................... 26

*In re Fairfield Sentry Ltd.*,
2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ............................................. 12, 13, 21, 24

*In re Flutie New York Corp.*,
310 B.R. 31 (Bankr. S.D.N.Y. 2004) ........................................................................................ 26

*In re Lehman Bros. Holdings Inc.*,
535 B.R. 608 (Bankr. S.D.N.Y. 2015) ...................................................................................... 15

*In re Lyondell Chem. Co.*,
543 B.R. 127 (Bankr. S.D.N.Y. 2016) ...................................................................................... 15

*In re Old Carco LLC*,
454 B.R. 38 (Bankr. S.D.N.Y. 2011) ........................................................................................ 33

*In re PXRE Grp., Ltd., Sec. Litig.*,
600 F. Supp. 2d 510 (S.D.N.Y. 2009)........................................................................................ 24

*In re Robert Plan of N.Y. Corp.*,
456 B.R. 150 (Bankr. E.D.N.Y. 2011)....................................................................................... 26

*In re Sharp Int'l Corp.*,
403 F.3d 43 (2d Cir. 2005).................................................................................................. 26, 28

*In re Sledziejowski*,
No. 13-22050 (RDD*)*, 2016 WL 6155929 (Bankr. S.D.N.Y. Oct. 21, 2016) .......................... 23

*In re Terrorist Attacks on Sept. 11, 2001*,
715 F.3d 659 (2d Cir. 2013) ..................................................................................................... 17

*Int'l Customs Assocs. v. Ford Motor Co.*,
893 F. Supp. 1251 (S.D.N.Y. 1995) ......................................................................................... 23

*Int'l Shoe Co. v. Washington*
326 U.S. 310 (1945) ................................................................................................................. 16

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006) ..................................................................................................... 24

*New Hampshire v. Maine*,
532 U.S. 742 (2001) ................................................................................................................. 22

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010) .......................................................................... 27

*Ortiz v. Guitian Music Bros.*,
No. 07 CIV. 3897, 2009 WL 2252107 (S.D.N.Y. July 28, 2009) .............................................. 34

*Papasan v. Allain*,
478 U.S. 265 (1986) ................................................................................................................. 15

*Parker Waichman Alonso LLP v. Orlando Firm, P.C.*,
No. 09 CIV. 7401(CM), 2010 WL 1956871 (S.D.N.Y. May 14, 2010) ..................................... 16

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013) ..................................................................................................... 32

*Pettaway v. Nat'l Recovery Sols., LLC*,
955 F.3d 299 (2d Cir. 2020) ..................................................................................................... 26

*Picard v. Bureau of Labor Ins.*,
480 B.R. 501 (Bankr. S.D.N.Y. 2012) ...................................................................................... 16

*Picard v. Citibank, N.A. (In re BLMIS)*,
12 F.4th 171 (2d Cir. 2021) ......................................................................................... 12, 28, 29, 35

*Picard v. Legacy Capital Ltd. (In re BLMIS)*,
548 B.R. 13 (Bankr. S.D.N.Y. 2016) ........................................................................... 12,28, 29, 35

*RBC Cap. Markets, LLC v. Garcia Hamilton & Assocs., LP*,
No. 19-cv-10247 (NRB), 2021 WL 230194 (S.D.N.Y. Jan. 22, 2021) ..................................... 23

*Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*,
   151 F.Supp.2d 371 (S.D.N.Y. 2001) ........................................................................................ 15

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004) .................................................................................................... 24

*Roper Starch Worldwide, Inc. v. Reymer & Assocs.*,
   2 F. Supp. 2d 470 (S.D.N.Y. 1998) .......................................................................................... 23

*Rosenblatt v. Coutts & Co. AG*,
   2017 WL 3493245 (S.D.N.Y. Aug. 14, 2017) .......................................................................... 18

*Sapia v. Home Box Off., Inc.*,
   2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018) (dismissing ...................................................... 33

*Secs. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC)*,
   594 B.R. 167 (Bankr. S.D.N.Y. 2018) ............................................................................... 18, 28

*Secs. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
   2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ..................................................................... 25, 28

*Shapiro*,
   542 B.R (Bankr. S.D.N.Y. 2015). ..................................................................................... 25, 32

*Shields v. Citytrust Bancorp, Inc.*,
   25 F.3d 1124 (2d Cir. 1994) .................................................................................................... 24

*SPV Osus Ltd. V. UBS AG*,
   882 F.3d 333 (2d Cir. 2018) .................................................................................................... 17

*Steinberg v. A Analyst Ltd.*,
   2009 WL 838989 (S.D. Fla. Mar. 26, 2009) ........................................................................... 20

*Suber v. VVP Servs., LLC*,
   2021 WL 4429237 (S.D.N.Y. Sept. 27, 2021) ......................................................................... 20

*Taylor v. Sturgell*,
   553 U.S. 880 (2008) ................................................................................................................ 21

*Theraplant, LLC v. Makarechi*,
   2016 WL 7839186 (S.D.N.Y. Dec. 23, 2016) .......................................................................... 20

*Tymoshenko v. Firtash*,
   2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013) ................................................................... 20, 21

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
   916 F.3d 143 (2d Cir. 2019) .................................................................................................... 17

*U.S. v. Int'l Longshoremen's Ass'n*,
   518 F. Supp. 2d 422 (E.D.N.Y. 2007)......................................................................................... 27

*Walden v. Fiore*,
   571 U.S. 277 (2014) ...................................................................................................... 17, 19

**Statutes**

1 U.S.C. § 741(7)(A)(i)-(vii).......................................................................................................... 29

11 U.S.C. § 101(22)(A).......................................................................................................... 30, 31

11 U.S.C. § 550............................................................................................................................. 32

11 U.S.C. § 550(a) ............................................................................................................ 28, 31, 34

11 U.S.C. § 550(b) ....................................................................................................................... 34

Bankruptcy Code § 548(a)(1)(B)(i) ............................................................................................. 26

Bankruptcy Code § 101(22).......................................................................................................... 30

Bankruptcy Code § 544 .......................................................................................................... 25, 28

Bankruptcy Code § 546(e) ..................................................................................................... passim

Bankruptcy Code § 547(b)............................................................................................................ 26

Bankruptcy Code § 548(a)(1)(A).............................................................................................. 26, 29

Bankruptcy Code 550(a)(2) .......................................................................................................... 25

Bankruptcy Code § 550(b).............................................................................................. 12, 34, 35

Bankruptcy Code § 551 ................................................................................................................. 25

NYDCL §§ 273-279 ................................................................................................................ 25, 26

NYDCL § 276................................................................................................................................. 26

**Rules**

Fed. R. Bankr. P. § 7004(f)............................................................................................................ 18

Fed. R. Bankr. P. § 7012(b) ............................................................................................................ 9

Fed. R. Civ. P. Rules 8(a) ................................................................................................ 2, 11, 24, 27

Fed. R. Civ. P. 8(a)(2) ................................................................................................. 14, 24, 27

Fed. R. Civ. P. Rules 9(b) ................................................................................................. passim

Fed. R. Civ. P. 10(c) ................................................................................................................. 27

Fed. R. Civ. P. Rule 12(b)(2) ................................................................................................... 9

Fed. R. Civ. P. Rule 12(b)(6) ................................................................................................... 9

Fed. R. Civ. P. Rule 8(a) ......................................................................................... 2, 11, 24, 27

N.Y. CPLR § 302 ............................................................................................................... 18, 19

N.Y. CPLR § 302(a)(3) ............................................................................................................. 20

Defendant Bank Vontobel AG f/k/a Bank J. Vontobel & Co. AG ("Bank Vontobel"), pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and Defendant Vontobel Asset Management Inc. ("VAMUS") (together, with Bank Vontobel, "Defendants" or the "Vontobel Defendants"), pursuant to Fed. R. Civ. P. Rule 12(b)(6),[1] made applicable by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, hereby submit this Memorandum of Law and the accompanying Declaration of Gregory Hauser (the "Hauser Decl.") in support of their Motion to Dismiss the Complaint (the "Complaint" or "Compl.")[2] of Plaintiff Irving H. Picard, Trustee (the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS").

For the foregoing reasons, the Complaint should be dismissed in its entirety and with prejudice.

## Preliminary Statement

Plaintiff, the Trustee for the bankruptcy estates of BLMIS and Bernard Madoff, initiated this adversary proceeding by filing the Complaint, originally asserting three claims against the Vontobel Defendants, seeking the recovery of roughly $29.75 million in purported subsequent transfers of "customer property" from BLMIS to Madoff "Feeder Funds" - Fairfield Sentry Limited ("Fairfield Sentry"), Fairfield Sigma Limited ("Fairfield Sigma"), Kingate Global Fund Ltd. ("Kingate Global") and Kingate Euro Fund Ltd. ("Kingate Euro") (together, with Kingate Global, the "Kingate Funds"). Following the Court's approval of a settlement agreement by and

---

[1]   Defendant Vontobel Absolute Return Fund was voluntarily dismissed from this action on May 13, 2013. *See* Dkt. 34.

[2]   The Complaint, attached as Ex. A to the Hauser Decl., was filed on March 22, 2012. *See* Dkt. 1. Unless otherwise specified, all citations to "Dkt. __" refer to the docket in this adversary proceeding, Adv. Pro. No. 12-01202.

1

among the Trustee and the Kingate Funds on August 6, 2019 (the "Settlement Agreement"), which included a release by the Trustee of any claims for funds transferred to the Kingate Funds' shareholders, such as Bank Vontobel, the Trustee agreed to voluntarily dismiss (with prejudice) Counts One and Two of the Complaint, *i.e.* the claims for the recovery of subsequent transfers allegedly received by Bank Vontobel from the Kingate Funds. *See Picard v. Ceretti*, Adv. Pro. No. 09-01161 (CGM) (Bankr. S.D.N.Y. Aug. 6, 2019), Dkt. Nos. 413-2, 417; *see also* Hauser Decl., Ex. B, ¶¶ 1-2.[3]   Additionally, the Trustee agreed to voluntarily dismiss (with prejudice) the portion of Count Three which seeks to recover subsequent transfers that VAMUS allegedly received from Fairfield Sentry on or about March 14, 2003 and April 14, 2003, in the amounts of $325,000 and $330,000, respectively. *See* Hauser Decl., Ex. B ¶ 3.   As it currently stands, the Trustee seeks to recover from the Vontobel Defendants the remaining subsequent transfers that were allegedly received from Fairfield Sentry totaling $25,737,379 and from Fairfield Sigma totaling $1,163,932. *Id.* ¶ 4.

As set forth in greater detail below, the Complaint should be dismissed in its entirety for at least five, equally cogent, reasons.

***First***, the Complaint should be dismissed as against Bank Vontobel for lack of personal jurisdiction.  Due process prohibits federal courts from adjudicating claims against a defendant where it does not have specific or general jurisdiction over that defendant.  Here, the Court does not have personal jurisdiction over Bank Vontobel, a foreign bank, because Bank Vontobel did not avail itself of the privileges and benefits of New York or, more broadly, the United States. The Complaint fails to allege any facts that Bank Vontobel has sufficient contacts with the United

---

[3]      Attached as **Exhibit B** to the Hauser Decl. is a true and correct copy of the Stipulation and Order, So-Ordered by the Honorable Cecelia G. Morris on April 25, 2022, dismissing Counts One and Two of the Complaint, among other relief. *See* Dkt. 109.

2

States such that this Court may exercise jurisdiction over it. Rather, the Trustee seeks to assert jurisdiction over Bank Vontobel based on a third-party's connections to the forum state, in direct contravention of well-settled precedent.

*Second,* the Complaint fails to adequately allege the avoidability of the initial transfers, as required under Rules 8(a) and 9(b). As plead, the Complaint contains little more than conclusory allegations that the initial transfers are avoidable and, thus, recoverable under the Bankruptcy Code. To the extent the Trustee relies upon the pleading in a related matter, such reliance is wholly unavailing as the pleading upon which the Trustee relies has been superseded by amendment and, thus, rendered moot. Accordingly, as plead, the Complaint utterly fails to plead sufficient factual information to satisfy both the Rule 8(a) and the heightened standard set forth in Rule 9(b).

*Third,* the Trustee's claim is barred by Section 546(e) of the Bankruptcy Code, which prevents the Trustee from avoiding a transfer that was (1) either a settlement payment or a transfer in connection with a securities contract, and (2) made by or to (or for the benefit of) a covered entity, such as a stockbroker, financial institution, or financial participant. As discussed in greater detail below, the transfers at issue in the Complaint fall within the plain text of Section 546(e)'s safe harbor, thus barring the Trustee from recovering redemptions more than two years before the petition date, December 11, 2008.

*Fourth,* the Trustee fails to plausibly allege that the subsequent transfers it seeks to recover are BLMIS "customer property," a prerequisite for such relief. Rather, the allegations set forth in the Complaint propose a mathematical impossibility in that the Trustee seeks to recover more than two billion dollars more from the subsequent transferees than from the initial transferees. Where, as here, the allegations in a complaint do not give rise to a plausible claim for relief, the pleading must be dismissed.

3

*Fifth,* the Trustee's claim is similarly barred by the good-faith defense, under Bankruptcy Code § 550(b), because the Vontobel Defendants acted in good faith and provided value in exchange for their receipt of redemption payments. In *Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021), the Second Circuit recently held that, to lose the protections afforded by the good faith defense, a defendant must have been able to reasonably discover the Madoff fraud, even if that defendant was on inquiry notice of suspicious facts. As alleged, the Complaint offers no facts that the Vontobel Defendants could reasonably have discovered Madoff's underlying fraud. In fact, the Second Amended Fairfield Complaint makes clear that Madoff and Fairfield masterminded an incredibly complex scheme which duped not only thousands of individual investors but also the federal government, including the SEC. There is no reasonable basis to conclude that the Vontobel Defendants could, or should, have discovered the underlying fraud, and they must, therefore, have proceeded in good faith.

## PROCEDURAL AND FACTUAL BACKGROUND

In connection with the arrest of Bernard Madoff, on December 11, 2008, the U.S. Securities and Exchange Commission ("SEC") commenced proceedings in the U.S. District Court for the Southern District of New York against Madoff and his company, BLMIS. Compl. ¶ 12. The following day, on December 12, 2008, the Court entered an Order appointing a receiver for the assets of BLMIS. *Id.* ¶ 13. Thereafter, on December 15, 2008, the Court granted the application of the Securities Investor Protection Corporation ("SIPC") to combine its own action with the SEC's action. *Id.* ¶ 14. In a Protective Decree, the Court removed the receiver and instead appointed the Trustee for the liquidation of BLMIS and removed the action to the Bankruptcy Court for the Southern District of New York. *Id.*

On or around May 18, 2009, the Trustee commenced an adversary proceeding in the Bankruptcy Court against Fairfield Sentry, styled as *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-

4

01239 (the "Fairfield Action"), seeking to avoid and recover approximately $3 billion in transfers of alleged customer property from BLMIS to Fairfield Sentry (the "Initial Transfers"). *See* Compl. ¶ 52-53. On July 20, 2010, the Trustee amended the complaint in the Fairfield Action to, among other things, seek to recover approximately $752.3 million in subsequent transfers from Fairfield Sentry to Fairfield Sigma Limited ("Fairfield Sigma") and approximately $52.9 million in subsequent transfers from Fairfield Sentry to Fairfield Lambda Limited ("Fairfield Lambda")(collectively, with Fairfield Sentry, the "Fairfield Funds"). *See Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239, Dkt. 23 (the "Fairfield Amended Complaint").[4]

As alleged in the Fairfield Action, Fairfield Sentry was an investment fund organized under the laws of the British Virgin Islands, which sold shares directly to foreign investors. Fairfield Am. Compl., ¶ 32. Fairfield Sigma and Fairfield Lambda were both British Virgin Islands International Business Companies wholly invested in Fairfield Sentry. *Id.,* ¶¶ 51, 56.

On May 9, 2011, the Trustee settled with liquidators of the Fairfield Funds (the "Fairfield Settlement Agreement) and, on July 13, 2011, this Court entered consent judgments in favor of the Trustee against Fairfield Sentry for $3.054 billion and against Fairfield Sigma for $752.3 million. *See* Fairfield Action, Dkts. 69-2, 109 and 110.

On March 22, 2012, the Trustee commenced this adversary proceeding against Bank Vontobel AG f/k/a Bank J. Vontobel & Co. AG, Vontobel Absolute Return Fund and Vontobel Asset Management, by filing the Complaint in the United States Bankruptcy Court for the Southern District of New York. In the Complaint, the Trustee originally alleged that the Vontobel Defendants, collectively, received approximately $27,556,311 million of purported BLMIS

---

[4]     On August 28, 2020, the Trustee amended the Fairfield Amended Complaint. *See Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239, Dkt. 286 (the "Fairfield Second Amended Complaint").

customer property from Fairfield Sentry and Fairfield Sigma. *See* Compl. ¶ 76 (improperly numbered as ¶ 7 on pp. 18-19). The vast majority of the Complaint is dedicated to allegations related to the Madoff Ponzi scheme, including the transfers from BLMIS to the Fairfield Funds. *Id.* ¶¶ 26-64. As related to Vontobel, specifically, the Complaint alleges that the BLMIS funds were transferred to Fairfield and that "a portion" of those funds were "subsequently transferred directly or indirectly to the Vontobel Defendants." *Id.* ¶ 37. The Complaint does not allege which portions of the initial transfers to the Fairfield Funds were transferred to the Vontobel Defendants. *Id., generally*. While the Complaint alleges the amounts alleged transferred to the Vontobel Defendants, it does not explain how those amounts were calculated, how to trace those amounts from BLMIS to the Vontobel Defendants, or any other factual basis for its allegations, despite the fact that the Trustee has had more than a decade to investigate. The exhibits attached to the Complaint show the dates and amounts of alleged payments from the Fairfield Funds to the Vontobel Defendants but offer no other factual information to substantiate its allegations, such as the source of the funds at issue. *Id.,* Exs. G, H, I, J, K, & L.

## Argument

### I.    Standard Of Review.

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" and must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). Under Rule 12(b)(6), "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," the Court must dismiss the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). A plausible claim pleads

facts "that allow … the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the Court must accept well-pleaded factual allegations as true, it need not accept assertions that are unsupported by factual allegations, *id.* at 678–79, nor "legal conclusion couched as a factual allegation[,]" *Papasan v. Allain*, 478 U.S. 265, 286 (1986), nor "conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely." *Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*, 151 F.Supp.2d 371, 405 (S.D.N.Y. 2001).

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Lyondell Chem. Co.*, 543 B.R. 127, 136 (Bankr. S.D.N.Y. 2016); *see also In re Lehman Bros. Holdings Inc.*, 535 B.R. 608, 618 (Bankr. S.D.N.Y. 2015) (to survive a motion to dismiss under Rule 12(b)(2), "the plaintiff bears the burden to make a *prima facie* showing that jurisdiction exists."). "Conclusory allegations lacking factual specificity [] do not satisfy plaintiff's burden" of showing a *prima facie* case for exercising personal jurisdiction. *Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 487 (S.D.N.Y. 2011), *aff'd sub nom. Alki Partners, L.P. v. Windhorst*, 472 F. App'x 7 (2d Cir. 2012).

## II.    The Complaint Should Be Dismissed As Against Bank Vontobel For Lack Of Jurisdiction, Pursuant To Fed. R. Civ. P. § 12(B)(2).

It is well-established that a court may exercise personal jurisdiction over out-of-state defendants only where doing so is consistent with the due process of law. *See Allied Dynamics Corp. v. Kennametal, Inc.*, 965 F. Supp. 2d 276, 288–89 (E.D.N.Y. 2013).  For personal jurisdiction to comport with due process, a defendant must have "minimum contacts" with the forum, and the exercise of personal jurisdiction must be reasonable, "such that the maintenance of

7

the suit does not offend traditional notions of fair play and substantial justice." *Picard v. Bureau of Labor Ins.,* 480 B.R. 501, 516 (Bankr. S.D.N.Y. 2012) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)); *see also Alki Partners, L.P.*, 769 F. Supp. 2d at 488; *see also Parker Waichman Alonso LLP v. Orlando Firm, P.C.*, No. 09 CIV. 7401(CM), 2010 WL 1956871, at *6 (S.D.N.Y. May 14, 2010). There are two circumstances in which courts may exercise personal jurisdiction over a defendant: (i) when the defendant's contacts with the forum have been continuous and systematic so as to establish the court's *general* jurisdiction over him; or (ii) when the defendant has purposefully directed its activities toward the forum and the litigation arises out of or is related to its contact with the forum so that the court may exercise *specific* jurisdiction. *See Alki Partners, L.P.*, 769 F. Supp. 2d at 488.

Here, whether examined under the rubric of general or specific jurisdiction, there is no basis for this Court to exercise personal jurisdiction over Bank Vontobel.

### A. This Court Lacks General Jurisdiction Over Bank Vontobel.

In the Complaint, the Trustee fails to satisfactorily allege that the Court has general jurisdiction over Bank Vontobel and pleads no facts to support such a finding. For starters, as alleged in the Complaint, Bank Vontobel is a Swiss bank, and is not "at home" in New York such that this Court could exercise general jurisdiction over it. *See* Compl., ¶ 23 (alleging that Bank Vontobel is a "Swiss private bank with headquarters located at Gotthardstrasse 43, CH-8002, Zurich, Switzerland"). The Complaint does not allege any substantive connection to the State of New York or, more broadly, to the United States, that could justify general jurisdiction in this Court. In fact, Bank Vontobel is not alleged to be a resident of New York, and the Complaint pleads no facts describing any specific connection of Bank Vontobel to New York. *See* Compl. *generally* (pleading no facts as to any physical presence of Bank Vontobel in the State of New

8

York, or even in the United States); *see also Bodum U.S.A., Inc. v. Hantover, Inc.*, No. 11 CIV. 8702 SAS, 2012 WL 1309176 (S.D.N.Y. Apr. 16, 2012) (granting motion to dismiss where the defendant had no physical presence in New York and only a minute fraction of its business was directed to New York); s*ee also Daimler AG v. Bauman,* 134 S. Ct. 746, 760-61 (2014) (providing for general jurisdiction in a corporation's place of incorporation and principal place of business and, in an "***exceptional*** case," where the corporation has sufficient contacts with a forum to establish general jurisdiction) (emphasis added).  Accordingly, there is no proper basis for this Court to assert general jurisdiction here.

### B.  This Court Lacks Specific Jurisdiction over Bank Vontobel.

The Supreme Court has set out three conditions for the exercise of specific jurisdiction over a nonresident defendant: (1) "the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State;" (2) "the plaintiff's claims must arise out of or relate to the defendant's forum conduct;" and, (3) "the exercise of jurisdiction must be reasonable under the circumstances." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.,* 916 F.3d 143, 150 (2d Cir. 2019).

Due process under the Constitution requires that a party seeking to assert jurisdiction over a defendant must adequately allege (1) that the defendant has "certain minimum contacts with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *SPV Osus Ltd. V. UBS AG,* 882 F.3d 333, 343 (2d Cir. 2018) citing *In re Terrorist Attacks on Sept. 11, 2001*, 715 F.3d 659, 674 (2d Cir. 2013).  The relationship with the forum and the claims at issue "must arise out of contacts that the 'defendant himself' creates with the forum." *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *see also Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (the claims "must arise out of or relate to the *defendant's* contacts with the

forum."). Furthermore, it is the Trustee's burden to make a *prima facie* showing of jurisdiction

over each defendant and with respect to *each* claim asserted in the Complaint. *See Rosenblatt v.

Coutts & Co. AG,* 2017 WL 3493245 (S.D.N.Y. Aug. 14, 2017).[5]

In the Complaint, the Trustee seeks to establish jurisdiction over the Defendants under both

New York's long arm statute, N.Y. CPLR § 302, and Fed. R. Bankr. P. § 7004(f).  Under either

statute, however, the Complaint utterly fails to establish that this Court has jurisdiction over Bank

Vontobel.

As set forth above, to establish specific jurisdiction, the Trustee must first demonstrate that

Bank Vontobel purposefully availed itself of the privilege of conducting activities within New

York.  To that end, the Trustee alleges that the "Vontobel Defendants are subject to personal

jurisdiction in this judicial district because they purposefully availed themselves of the laws and

protections of the United States and the state of New York by, among other things": (1) "knowingly

directing funds to be invested with New York-based BLMIS through the Feeder Funds[,]" and (2)

"knowingly received subsequent transfers from BLMIS by withdrawing money from the Feeder

Funds." Compl. ¶ 6.  As against Bank Vontobel specifically, the Trustee further alleges:

> By directing their investments through Fairfield Sentry, a Fairfield Greenwich
> Group ("FGG") managed feeder fund, Bank Vontobel…knowingly accepted the
> rights, benefits, and privileges of conducting business and/or transactions in the
> United States and New York. … Bank Vontobel… entered into a subscription
> agreement with Fairfield Sentry under which they submitted to New York
> jurisdiction, sent a copy of the subscription agreement to FGG's New York City
> office, and wired funds to Fairfield Sentry through a bank in New York.
> Additionally, Bank Vontobel regularly communicated by e-mail with its Fairfield
> Sentry account representatives located in FGG's New York City office. Bank
> Vontobel thus derived significant revenue from New York and maintained

---

[5]     This Court has previously held in a related lawsuit that "each transfer is a separate claim…
and the Trustee must establish the court's jurisdiction with respect to each claim asserted." *See
Picard v. BNP Paribas S.A. (Secs. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC)*,
594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018).

minimum contracts and/or general business contacts with the United States and New York in connection with the claims alleged herein.

*Id.* ¶ 7.  Lastly, the Trustee alleges, in wholly conclusory fashion, that "Bank Vontobel and Vontobel Fund should reasonably expect to be subject to New York jurisdiction, and are subject to personal jurisdiction pursuant to N.Y. CPLR § 302 and Bankruptcy Rule 7004." *Id.* ¶ 9.

The foregoing allegations are wholly insufficient to establish jurisdiction over Bank Vontobel for numerous, equally fatal, reasons.

*First,* the Trustee's allegations focus on Fairfield Sentry's contacts with BLMIS in the forum, *not* Bank Vontobel's.[6]  *See, e.g.,* Compl. ¶ 6 ("By directing their investments through Fairfield Sentry…").  "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation."  *Osus*, 882 F.3d at 344 (quoting *Walden*, 571 U.S. at 283-84) (emphasis added); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.").  A defendant lacks the requisite minimum contacts with the forum where "[t]he only connection between [Defendant] and the forum is that the company invested in a foreign hedge fund located in the Cayman Islands but managed by plaintiffs" and "never allegedly directed any activity toward the United States."  *In re Amaranth Natural Gas Commodities Litig.*, 587 F.

---

[6]     On June 13, 2022, this Court entered a Decision denying Defendant Multi-Strategy Fund Limited's ("MSFL") Motion to Dismiss, finding in relevant part, that the Trustee made a *prima facie* showing of personal jurisdiction by "devot[ing] over five pages of his twenty-seven-page Complaint to [MSFL's] contacts with New York." *Picard v. Multi-Strategy Fund Limited*, Adv. Pro. No. 12-01205(CGM), Dkt. 122, p. 6.  By stark contrast, here, the Trustee has devoted only three paragraphs of his twenty-page complaint to describe the Vontobel Defendants' collective contacts with the forum.  The reason for this is simple – Bank Vontobel does not have sufficient contacts with the forum to justify an assertion of personal jurisdiction.

Supp. 2d 513, 536-37 (S.D.N.Y. 2008); *accord Steinberg v. A Analyst Ltd*., 2009 WL 838989, at

\*5 (S.D. Fla. Mar. 26, 2009) (refusing to find jurisdiction over defendant based on facts that it was

an investor in funds that were managed in New York, had assets, records, and accounts in New

York, and invested in U.S. securities on U.S. exchanges).

Here, this Court lacks jurisdiction over Bank Vontobel, a foreign defendant, based solely

on its ownership of shares in a fund that was primarily managed in New York (*i.e.,* Fairfield Sentry)

and/or engaged in New York-based conduct (*i.e.,* invested with BLMIS). *See, e.g., Steinberg,*

2009 WL 838989, at \*5; *Amaranth*, 587 F. Supp. 2d at 536-37; *Suber v. VVP Servs., LLC,* 2021

WL 4429237, at \*9 (S.D.N.Y. Sept. 27, 2021) ("[I]f offering securities in New York, or owning

shares managed by a fund in New York were sufficient to establish personal jurisdiction over a

foreign company under § 302(a)(3), then New York courts would have jurisdiction over every

company that accesses New York's capital markets or invests in a New York managed fund so

long as that company also committed a tort that harmed a New Yorker, which would be a reach

too far.") (quoting *Theraplant, LLC v. Makarechi*, 2016 WL 7839186, at \*4 (S.D.N.Y. Dec. 23,

2016)) (Nathan, J.); *Tymoshenko v. Firtash*, 2013 WL 1234943, at \*4 (S.D.N.Y. Mar. 27, 2013)

(rejecting as insufficient basis for specific jurisdiction an allegation that defendant purportedly

invested in various "shell companies" in the U.S. because, "[a]lthough the companies in which

[defendant] purportedly invested may have engaged in more extensive activities within the United

States, the AC fails to allege that [defendant] controlled, directed, or even knew about these acts.

Moreover, even if [defendant] were more involved in these corporations' investment decisions,

that would not, in and of itself, suffice to show that [defendant] has the 'requisite continuous and

systematic contact' with the United States"). Asserting jurisdiction over Bank Vontobel would be

a drastic expansion of U.S. personal jurisdiction, such that every investor in any foreign company

12

may become amenable to suit in any territory in the U.S. that the company does business. Such

an expansion is not in line with the due process clause of the Constitution.[7]

*Second,* to the extent the Trustee relies on the Subscription Agreement between Bank

Vontobel and Fairfield Sentry to justify an assertion of jurisdiction here, such reliance is wholly

misplaced as this Court has already considered - and rejected - this argument. This Court has

previously held that the forum selection clause in the Fairfield subscription agreements did not

apply to a lawsuit seeking to recover a redemption payment from Fairfield Sentry on the basis that

such a suit is not one "with respect to" the subscription agreements, but rather related to Fairfield

Sentry's Articles of Association. *In re Fairfield Sentry Ltd.*, 2018 WL 3756343, at *11-*12

(Bankr. S.D.N.Y. Aug. 6, 2018) ("Fairfield I"). In so holding, the Court followed the U.K. Privy

Council's determination "that the Subscription Agreement was irrelevant to actions to recover the

inflated redemption payments."[8] *Id.* at *11. Furthermore, even if the Trustee's reliance on the

---

[7]     To the extent the Trustee seeks to attribute the jurisdictional contacts of Fairfield Sentry or
BLMIS to Bank Vontobel, such argument fails as a matter of law as an entity's jurisdictional
contacts may only be attributed to a shareholder under an alter ego or agency theory. *See
Tymoshenko v. Firtash*, 2013 WL 1234943, at *4 (S.D.N.Y. Mar. 27, 2013)*; Cooper v. Parsky*,
1997 WL 242534, at *14 (S.D.N.Y. Jan. 8, 1997) (internal citation omitted) ("Even a controlling
shareholder will not be subject to personal jurisdiction unless the record justifies piercing the
corporate veil"). Here, there are no allegations in the Complaint suggesting grounds for piercing
the corporate veil, a necessary component of an alter ego theory. *See Cooper*, 1997 WL 242534,
at *14 (mere status as "a New York corporation's shareholder[]… does not justify piercing the
corporate veil"). Nor are there any allegations suggesting facts that Defendants had any control at
all over the investment activities of Fairfield Sentry or BLMIS, a necessary element of an agency
theory. *See Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 85 (2d Cir. 2018) (requiring
the alleged agent in New York to have acted "for the benefit of, with the knowledge and consent
of, and under some control by, the nonresident principal").

[8]     The Court's holding in *Fairfield I* is binding because the Trustee was, and currently is, in
privity with Fairfield Sentry's Liquidators, on the basis that: (i) the Trustee will receive a share of
any funds received by the Liquidators in any redeemer, and (ii) the Trustee and Liquidators
stipulated "that a joint interest exists between them with respect to the Sharing Claims." See
Fairfield Action, Dkt. 69-2, Ex. 5 ¶¶ 4, 7, 11, 14. This shared property interest constitutes the kind
of "preexisting 'substantive legal relationship[]' between the person to be bound and a party to the
judgment" sufficient to justify non-party issue preclusion. *See Taylor v. Sturgell*, 553 U.S. 880,

Subscription Agreements to justify jurisdiction was not squarely foreclosed by *Fairfield I*, *which it plainly is,* the Trustee would not be entitled to rely on a forum selection clause to which he is neither a party nor "an intended third- party beneficiary of the contract under which he seeks to bring suit." *See Dean St. Cap. Advisors, LLC v. Otoka Energy Corp.*, 2017 WL 476720, at \*4 (S.D.N.Y. Feb. 2, 2017) (Sullivan, J.).[9]

*Lastly,* the Trustee's remaining allegations regarding Bank Vontobel's alleged communications with Fairfield Sentry and Fairfield Greenwich Group are flatly insufficient to establish specific jurisdiction over Bank Vontobel. In brief, Bank Vontobel's total alleged contact with the forum is that: Bank Vontobel, specifically, (i) "regularly communicated by e-mail with its Fairfield Sentry account representatives located in FGG's New York City office," and that the Vontobel Defendants, collectively, (ii) "sent a copy of the subscription agreement to FGG's New York City office," and (iii) "wired funds to Fairfield Sentry through a bank in New York." Compl., ¶ 7. It is well-settled that a "handful of communications and transfer of funds… are insufficient to allow the exercise of specific personal jurisdiction" over foreign defendants. *Osus*, 882 F.3d at 345; *see also Hau Yin To v. HSBC Holds., PLC*, 2017 WL 816136, at \*5 (S.D.N.Y. Mar. 1, 2017), *aff'd* 700 F. App'x 66 (2d Cir. 2017) ("communications with and payments to New York merely to ensure compliance with contract terms negotiated and executed outside of New York do not 'project' a defendant into the state sufficiently to confer personal jurisdiction over it. .

---

894 (2008). And because the question of whether a lawsuit seeking to recover a redemption payment from Fairfield Sentry to the defendants was a suit "with respect to" the subscription agreements "actually litigated" and "essential to the prior judgment" of *Fairfield I*, the Court's conclusion thereabout has preclusive effect. *See, e.g., N.H. v. Maine*, 532 U.S. 742, 748-49 (2001).

[9]    Additionally, this Court has previously recognized that subscription agreements, such as the ones at issue in this lawsuit, "cannot be used as the sole basis for this Court's exercise of personal jurisdiction." *Picard v. Multi-Strategy Fund Limited*, Adv. Pro. No. 12-01205(CGM), Dkt. 122, p. 10, n.3.

.."); *In re Sledziejowski*, No. 13-22050 (RDD), 2016 WL 6155929, at \*7 (Bankr. S.D.N.Y. Oct. 21, 2016) ("the mere knowing receipt of funds in a bank account is insufficient to establish jurisdiction.") *RBC Cap. Markets, LLC v. Garcia Hamilton & Assocs., LP*, No. 19-cv-10247 (NRB), 2021 WL 230194, at \*4 (S.D.N.Y. Jan. 22, 2021) (quoting *Int'l Customs Assocs. v. Ford Motor Co.*, 893 F. Supp. 1251, 1261 (S.D.N.Y. 1995))("Telephone calls and correspondence sent into New York, by a non-domiciliary defendant who is outside New York, generally are insufficient to establish personal jurisdiction."). The Trustee's jurisdictional allegations utterly fail to establish that Bank Vontobel "project[ed]" itself into New York. *See Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339-40 (S.D.N.Y. 2016) (dismissing the amended complaint for lack of specific jurisdiction, finding claims that foreign defendants "communicated with and transmitted information and funds to and from BLMIS located in New York. . . were incidental consequences of fulfilling a foreign contract and are insufficient to 'project' the Foreign Defendants into New York."); *Giuliano v. Barch*, No. 16-cv-0859 (NSR), 2017 WL 1234042 (S.D.N.Y. Mar. 31, 2017) (holding plaintiff's performance in New York of his contractual obligations was insufficient to establish personal jurisdiction over foreign defendant); *Roper Starch Worldwide, Inc. v. Reymer & Assocs.,* 2 F. Supp. 2d 470, 474 (S.D.N.Y. 1998) ("knowledge or acquiescence" of New York Plaintiff's performance of contractual obligations in New York was insufficient to establish personal jurisdiction over nonresident corporation). The "appropriate focus… is on what the non-domiciliary defendant did in New York and not on what the plaintiffs did." *Int'l Customs Assocs. V. Ford Motor Co.,* 893 F. Supp. 1251, 1262 (S.D.N.Y. 1995). At bottom, Bank Vontobel was a nominal investor in Fairfield who did not, and was not expected to, provide any good, service or other performance in New York or the United States.

15

Furthermore, the allegations in the Complaint fail to explain how any of the alleged communications/contacts with New York relate to the Trustee's claims, and are therefore, insufficient. *See, e.g., Fairfield I*, 2018 WL 3756343, at *11 ("the Subscription Agreement was irrelevant to actions to recover the inflated redemption payments"). Accordingly, for the foregoing reasons, the Complaint should be dismissed as against Bank Vontobel for lack of personal jurisdiction.

**III.    The Complaint Fails To Meet The Pleading Standards Set Forth In Fed. R. Civ. P. Rules 8(a) And 9(b).**

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,' and must offer more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

Where a pleading alleges fraud, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); *see also In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 524 (S.D.N.Y. 2009).  To comply, a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (citation omitted); *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004).  Rule 9(b) does not grant an aggrieved party "license to base claims of fraud on speculation and conclusory allegations."  *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (citation omitted).

To bring a claim against a subsequent transferee under § 550(a)(2) of the Bankruptcy Code, the Trustee is first required to allege the avoidability of an initial transfer. *See, e.g., Shapiro*, 542 B.R. at 119; *Secs. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 2013 WL 1609154, *7 (S.D.N.Y. Apr. 15, 2013) ("Cohmad") ("In order to recover a fraudulent or preferential transfer of debtor property from a subsequent transferee, the Trustee must first show that the initial transfer of that property by the debtor is subject to avoidance under one of the Bankruptcy Code's avoidance provisions."). The question of whether the Trustee properly plead the avoidability of the initial transfer is governed by Rule 9(b), which states "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." *See Picard v. Multi-Strategy Fund Limited*, Adv. Pro. No. 12-01205(CGM), Dkt. 122, p. 13.

Here, the Trustee fails to adequately allege such avoidability under the heightened pleading standard required by Rule 9(b). Rather, the Trustee's only allegations regarding the initial transfers are that: (i) "Fairfield Sentry Six Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4), and are avoidable and recoverable under sections 544, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3)" (Compl. ¶ 53); (ii) "Fairfield Sentry Two Year Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4), and are avoidable and recoverable under sections 544, 548, 550, and 551 of the Bankruptcy Code, §§ 273- 279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3)" (Compl. ¶ 54); and (iii) "Fairfield Sentry Preference Period Initial Transfers were and continue to be Customer Property within the meaning of SIPA § 78lll(4), and are avoidable and recoverable under sections 547, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and

17

applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3)" (Compl. ¶ 55). These conclusory allegations are wholly insufficient, as the Trustee fails to offer any factual allegation showing that: (i) any alleged initial transfer was made without "fair consideration," as required by the former New York Debtor and Creditor Law ("NYDCL") § 273 (*see In re Sharp Int'l Corp.*, 403 F.3d 43, 53 (2d Cir. 2005)); (ii) BLMIS "received less than a reasonably equivalent value in exchange for such transfer," as required by Bankruptcy Code §548(a)(1)(B)(i) (*see In re Dreier LLP*, 452 B.R. 391, 436 (Bankr. S.D.N.Y. 2011)); (iii) any alleged initial transfer was made with actual intent to defraud, as required by former NYDCL § 276 (*see In re Flutie N.Y. Corp.*, 310 B.R. 31, 56 (Bankr. S.D.N.Y. 2004)) and Bankruptcy Code § 548(a)(1)(A) (see Dreier, 452 B.R. at 423); and (iv) any alleged initial transfer made within 90 days of the Filing Date was made to or for the benefit of a creditor on account of an antecedent debt owed by the debtor before the transfer was made or that the purported creditor who received the transfers received more than it would otherwise have under Chapter 7, as required by Bankruptcy Code § 547(b) (*see In re Robert Plan of N.Y. Corp.*, 456 B.R. 150, 155-58 (Bankr. E.D.N.Y. 2011)).

While the Trustee attempts to obviate his clear pleading failure by "incorporate[ing] by reference the allegations contained in the Fairfield Amended Complaint" (Compl. ¶ 52), the purported incorporation is wholly insufficient to state a claim as the allegedly incorporated pleading has itself been superseded by a second amended pleading, and therefore has been "render[ed] of no legal effect." *See, e.g.*, *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020); *see Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239, Dkt. 286. In the more than ten years since the Trustee filed the Complaint, he has left his improper incorporation undisturbed, failing to adequately plead facts under Rule 9(b) suggesting the avoidability of any alleged initial transfers of BLMIS Customer Property to Fairfield Sentry, despite the fact that he

18

has had more than a decade of access to Fairfield Funds' books and records.[10]  The Trustee's improper incorporation imposes an unacceptable burden on Defendants and on the Court.  *See Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446-47 (E.D. Va. 2009) (holding to avoid "confusion and inconvenience" from requiring a party "to take into account a number of other, superseded pleadings… wholesale incorporations—particularly those that seek to incorporate superseded versions of a complaint—must be examined with special care."); *see also, e.g., Longshoremen's Ass'n*, 518 F. Supp. 2d at 464.  ("If Rule 8(a) implies that the Davis court should not be obliged to review a single prior complaint for the purpose of discerning the claims made in the action before it, it follows a fortiori that this Court should not be required to read through six different pleadings, stretching back some seventeen years, in addition to various peripheral documents, in order to decipher the basic elements of the Government's claim in this action, nor should the defendants be expected to undertake such an endeavor in preparing an Answer to the Amended Complaint.").

In light of the foregoing, the Complaint must be dismissed in its entirety.

---

[10]    While Fed. R. Civ. P. 10(c) provides that a "statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion," such wholesale incorporation as attempted by the Trustee is wholly unauthorized by the Federal Rules.  *See U.S. v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 463 (E.D.N.Y. 2007) (the "proposed method of pleading necessary elements of [the] claim by incorporating factual allegations contained in several prior lengthy . . . pleadings is, as this Court noted at oral argument, a blatant violation of Rule 8(a)(2)'s direction that a civil plaintiff provide a short and plain statement of the claim showing that the pleader is entitled to relief") (internal punctuation omitted); *see also Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, 2010 WL 1257803, at *4 (E.D.N.Y. Mar. 26, 2010) ("Although there is no prescribed procedure for referring to incorporated matter, the references to prior allegations must be direct and explicit, in order to enable the responding party to ascertain the nature and extent of the incorporation.  A Rule 10(c) adoption clause that does little more than make wholesale reference to the contents of a prior pleading exemplifies the kind of incorporation that fails to give the requisite "guidance to the responding party.") (internal citations and punctuation omitted).

**IV.    The Majority of The Trustee's Claims Are Barred By Bankruptcy Code § 546(e).**

The Trustee asserts one cause of action against Vontobel under Section 550(a) of the

Bankruptcy Code, which provides that: "to the extent a transfer is avoided under section 544, 545,

547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate,

the property transferred, or, if the court so orders, the value of such property, from—(1) the initial

transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any

immediate or mediate transferee of such initial transferee."  In order to properly plead a subsequent

transfer claim, the Trustee must first sufficiently allege that the initial transfer from BLMIS to

Fairfield Sentry is avoidable.[11]  *See Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195

(Bankr. S.D.N.Y. 2018) ("To plead a subsequent transfer claim, the Trustee must plead that the

initial transfer is avoidable, and the defendant is a subsequent transferee of that initial transferee,

that is, that the funds at issue originated with the debtor."); *see also SIPC v. BLMIS* (*In re

Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at

\*7 (S.D.N.Y. Apr. 15, 2013) (consolidated proceedings on 11 U.S.C. § 546(e)).

With respect to any transfer that constitutes a "settlement payment, as defined in section

101 or 741 of this title, made by or to (or for the benefit of) a… stockbroker [or] financial

institution… or that is a transfer made by or to (or for the benefit of) a… stockbroker [or] financial

institution… in connection with a securities contract," Section 546(e) provides a safe harbor,

barring the Trustee from exercising avoidance powers.  11 U.S.C. § 546(e).  The safe harbor

---

[11]    "Federal Civil Rule 9(b) governs the portion of a claim to avoid an initial intentional
fraudulent transfer and Rule 8(a) governs the portion of a claim to recover the subsequent transfer."
*Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018) (citing
*Sharp Int'l Corp. v. State St. Bank & Trust Co.,* (*In re Sharp Int'l Corp.*), 403 F.3d 43, 56 (2d Cir.
2005) and *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 36 (Bankr. S.D.N.Y. 2016),
*rev'd on other grounds*, *Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021)).

provision applies to any such transfer other than one for which recovery is sought pursuant to §
548(a)(1)(A).  *Id.*  Furthermore, while the safe harbor provision is ordinarily a defense to the
avoidance of an initial transfer, where, as here, "the initial transferee fails to raise a § 546(e)
defense against the Trustee's avoidance of certain transfers… the subsequent transferee is
nonetheless entitled to raise a § 546(e) defense against recovery of those funds."[12]  *Picard v.
Fairfield Inv. Fund (In re BLMIS)*, No. 08-01789 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y.
2021); *See also Picard v. Multi-Strategy Fund Limited*, Adv. Pro. No. 12-01205 (CGM), Dkt. 122,
p. 16 (Bankr. S.D.N.Y. 2022).

Under § 546(e), the safe harbor blocks the Trustee from avoiding a transfer (except those
within two years of the Filing Date, pursuant to § 548(a)(1)(A)) if that transfer was:  (i) made "by
or to (or for the benefit of)" a covered entity such as a stockbroker or financial institution; and (ii)
was either a transfer in connection with a securities contract or a settlement payment.  Here, safe
harbor requires the dismissal of the Trustee's claims for any initial transfer made more than two
years before petition date because (i) the initial transfers are settlement payments made in
connection with multiple securities contracts, and (ii) were made by a stockbroker, to, and for the
benefit of, multiple financial institutions.

Regarding the first element, the Second Circuit has previously held that initial transfers
from BLMIS to its customers pursuant to account agreements constitute settlement payments made
in connection with a securities contract, as defined by section 546(e).  *Fishman*, 773 F.3d at 417,
418–23.  The account agreements between BLMIS and its customers plainly qualify as "securities
contracts" under the Bankruptcy Code.  *See* 1 U.S.C. § 741(7)(A)(i)-(vii) (defining "securities

---

[12]      Notably, the safe harbor applies even where, as here, the alleged initial transferee consented
to entry of judgment against it.  *See Fairfield Inv. Fund*, 2021 WL 3477479, at *3.

contract" as "a contract for the purchase, sale, or loan of a security," and "any other agreement or transaction that is similar to an agreement or transaction referred to in this subparagraph"); *see also Fishman*, 773 F.3d at 419 (noting that Congress intended to "sweep broadly" in defining "securities contract" under section 7417(7) of the Bankruptcy Code).

Regarding the second element, there is no dispute that the transactions were made by a "stockbroker," as required under § 546(e). *See* Compl., *generally*; *see also Fishman*, 773 F.3d at 417 ("[i]t is not disputed [by the Trustee] that BLMIS was a 'stockbroker' for the purposes of § 546(e)"); *see also* Br. for Pl.- Appellant Irving H. Picard at i-ii, 5, *In re Bernard L. Madoff Inv. Sec. LLC*, No. 12- 2557 (2d Cir. May 15, 2013), Dkt. 145 (not challenging stockbroker finding on appeal). On that basis alone, the safe harbor applies to the initial transfers at issue in this case.

Yet, further, the safe harbor also applies because the initial transfers were made to, and/or for the benefit of, financial institutions. Under Bankruptcy Code § 101(22) the definition of "financial institution" includes not only "an entity that is a commercial or savings bank," but also the customer of such a bank "when [it] is acting as agent or custodian for a customer . . . in connection with a securities contract." 11 U.S.C. § 101(22)(A). This Court has already held that Fairfield Sentry and Fairfield Sigma are "financial institutions," and thus, fall within the purview of § 546(e). *See Fairfield III*, 2020 WL 7345988, at *6 & n. 11. In reaching its decision to apply safe harbor to redemption payments by Fairfield Sentry, the Court found that Fairfield was a "financial institution" because it was a customer of Citco Bank Nederland N.V. Dublin Branch ("Citco Bank") and Citco Bank acted as Fairfield's agent in connection with the securities contracts under which the BLMIS transfers were made. Similarly, the Vontobel Defendants are also "financial institutions," within the meaning of § 101(22A)(A). Specifically, as alleged in the Complaint, Bank Vontobel has been a registered bank in Switzerland since 1984 and was (/is,

22

currently) authorized to perform banking activities by the Swiss Financial Market Supervisory Authority, FINMA, from which it holds a banking license, during the years of the relevant transfers at issue in this lawsuit. *See* Compl. ¶ 24; *see also* Hauser Decl., ¶¶ 3, 4, 5, Exs. C, D & E; *see also Contemporary Indus. Corp. v. Frost*, 564 F.3d 981, 987 (8th Cir.2009) (finding that "a bank" "is a financial institution").  VAMUS is a New York corporation and an investment adviser registered under the Investment Advisers Act of 1940, as amended, with the U.S. Securities and Exchange Commission, and thus, similarly qualifies as a financial institution under 11 U.S.C. § 101(22)(A).

Lastly, to the extent the Trustee seeks to defeat safe harbor by invoking the exception that applies for a "subsequent transferee who had actual knowledge" of the underlying fraud, such exception does not apply here as the Trustee has failed to allege even a single fact that the Vontobel Defendants had knowledge (constructive, actual, or otherwise) of Madoff's fraud.  While this Court has recently held that there are sufficient allegations in the Fairfield Second Amended Complaint to find that Fairfield Sentry had actual knowledge of the fraudulent scheme, that finding cannot be imputed to infer knowledge on the Vontobel Defendants.  At bottom, the Complaint fails to allege that the Vontobel Defendants were anything other than innocent victims.

Accordingly, the safe harbor applies and the Trustee's claims to recover transfers made more than two years before the Petition Date must be dismissed.

## V.    The Complaint Fails To Plausibly Allege That The Subsequent Transfers To The Vontobel Defendants Were Of BLMIS Customer Property.

To state a claim under either § 550(a) or § 78fff, the Trustee must plausibly plead facts showing that the challenged subsequent transfer was estate property. See 11 U.S.C. § 550(a) (permitting recovery of estate property from subsequent transferee); SIPA § 78fff-2(c)(3) ("trustee may recover any property transferred by the debtor which, except for such transfer, would have

23

been customer property"); *see also Picard v. Stanley Shapiro* (*In re Bernard L. Madoff Inv. Secs. LLC*), 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (to state a claim under 11 U.S.C. § 550, the Trustee "must allege facts that support the inference that the funds at issue originated with the BLMIS, and contain the 'necessary vital statistics'—the 'who, when, and how much' of the transfers to establish that an entity was a subsequent transferee of the funds"). While this Court has held that "at the pleading stage, the Trustee is not required to provide a 'dollar-for-dollar accounting' of the exact funds at issue…" it is nonetheless true that "barebones allegations that the funds at issue were transferred to the s[]ubsequent [t]ransferees, without more detail, are insufficient." *Shapiro*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015).

Here, the Complaint contains only conclusory allegations that the transferees to the Vontobel Defendants were customer property. In fact, the Trustee asserts only that "a portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, [the Vontobel Defendants]." Compl. ¶¶ 58, 60, 62. Nothing in Exhibits G-L substantiates these allegations. Rather, the exhibits upon which the Trustee relies simply list transfers from BLMIS to Sentry, without tying those transfers to the payment of any redemption request from the Vontobel Defendants. [13] The "barebones" allegation that the transfers originated with BLMIS, without specifying which specific transfers to the Vontobel Defendants contained customer property, is wholly insufficient to sustain the Trustee's claim. *See Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc*., 712 F.3d 705, 709, 723 (2d Cir. 2013) (affirming dismissal and finding that "such imprecise pleading is particularly inappropriate here, where the

---

[13]     *See Shapiro*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (holding "[t]he SAC does not tie any initial transfer to any subsequent transfer or Subsequent Transferee. Moreover, it does not plausibly imply that the initial transferees even made subsequent transfers to the Subsequent Transferees as opposed to third parties, or that they made the subsequent transfers rather than simply keep the initial transfers for themselves.").

plaintiffs necessarily have access, without discovery, to plan documents and reports that provide specific information from which to fashion a suitable complaint"); *Sapia v. Home Box Off., Inc.*, 2018 WL 6985223, at *8 (S.D.N.Y. Dec. 17, 2018) (dismissing a claim where plaintiffs failed to precisely plead necessary facts that were "uniquely in [p]laintiffs' possession").

Furthermore, the Trustee's own allegations confirm that it is implausible that the transfers to the Vontobel Defendants include BLMIS customer property. As set forth above, under Rule 8, a Plaintiff is required to plead allegations demonstrating "more than a *sheer possibility* that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *see also* Section III, *supra*. Here, the Trustee's claims, as plead, are mathematically impossible, and thus, fail to meet the requisite pleading standard.[14]

In the Complaint, the Trustee alleges that approximately **$3 billion** of customer property was transferred by BLMIS to Fairfield Sentry within the six years preceding the Petition Date and that **a portion** of those transfers were subsequently transferred to Vontobel. *See* Compl. ¶¶ 53-64. Yet, the Trustee simultaneously seeks to recover **more than $5 billion** of alleged subsequent transfers that Fairfield Sentry made to Fairfield Sigma, Fairfield Lambda, Fairfield Greenwich Group, and others (including Vontobel). *See* Fairfield Second Am. Compl., Exs. 5, 6, 8 , 10, 12, 13, 14, and 21. Ultimately, the Trustee seeks to recover approximately $2 billion more in subsequent transfers from Fairfield Sentry than was originally alleged to have been transferred to Fairfield Sentry by BLMIS. The math does not add up.

---

[14] *See In re Old Carco LLC*, 454 B.R. 38, 44-47 (Bankr. S.D.N.Y. 2011) (dismissing fraudulent transfer claims based on implausible allegations).

Accordingly, the Complaint fails to state a claim under § 550(a) or § 78fff because it does not plausibly allege an essential element such a claim - the transfer of BLMIS property to the subsequent transferee.

**VI.     The Vontobel Defendants Are Entitled To The Good Faith Defense**.

Under section 550(b), a trustee may not recover from a subsequent transferee who took for value, in good faith, and without knowledge of the voidability of the transfer.  "Although a motion to dismiss is usually not the appropriate vehicle to raise affirmative defenses to a complaint, a complaint can be dismissed for failure to state a claim pursuant to a Rule 12(b)(6) motion raising an affirmative defense if the defense appears on the face of the complaint." *Ortiz v. Guitian Music Bros.*, No. 07 CIV. 3897, 2009 WL 2252107, at *2 (S.D.N.Y. July 28, 2009) (internal citation omitted).  Dismissal is appropriate where "the complaint itself establishes the facts necessary to sustain [a] defendant's [affirmative] defense."  Here, it is readily apparent on the face of the Complaint that the Vontobel Defendants are entitled to the good faith defense under section 550(b) because, as alleged, the Vontobel Defendants took the subsequent transfers for value, in good faith, and without knowledge of the voidability of the initial transfer(s).  *See* 11 U.S.C. § 550(b).

The Complaint seeks recovery of transfers from the Fairfield Funds received by the Vontobel Defendants in exchange for redemption of equity interests as "shareholder[s]" in such funds.  Compl. ¶¶ 7, 52.   In other words, the Vontobel Defendants surrendered interests in the Fairfield Funds in exchange for the redemption payments at issue in this case.  The surrender of those shares constitutes sufficient "value" under § 550(b) of the Bankruptcy Code.  The Fairfield Funds are British Virgin Islands ("BVI") companies, therefore, under the internal affairs doctrine, the corporate relationship with their shareholders is governed by BVI law. *Atherton v. F.D.I.C.*, 519 U.S. 213, 224 (1997); *see Migani*, [2014] UKPC 9, ¶ 10 ("the terms of the subscriber's membership

of the Fund, which govern the redemption of its shares . . . are to be found in the Articles of Association of the Fund").  BVI courts have recently held that the surrender by a Sentry investor of Sentry shares upon Sentry's redemption of the shares for cash is valid consideration to support the exchange.  *Id.* ¶¶ 8, 87; *Quilvest Finance Ltd. v. Fairfield Sentry Ltd.*, Case Nos. HCVAP 2011/041-062.  Therefore, on the face of the Complaint, the "value" element of § 550(b) is satisfied.

Regarding the "good faith" element, the Fairfield Second Amended Complaint establishes that upon a diligent inquiry, neither of the Vontobel Defendants could have reasonably discovered the fraudulent purpose of the transfers.  In evaluating a claim of good faith, the Second Circuit recently held that courts must examine three factors: (1) the actual facts that the defendant knew; (2) whether these facts put the defendant on inquiry notice of the fraudulent purpose underlying a transfer, and (3) whether a diligent inquiry would not have discovered the fraudulent purpose of the transfer.  *Citibank,* (*In re BLMIS*), 12 F.4th at 178.  Courts construe "without knowledge of the voidability of the transfer" the same as good faith.  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 516 B.R.18, 23 n.3 (S.D.N.Y. 2014) (as Judge Rakoff noted, "[i]n light of the legislative history, the most plausible reading is that this third requirement is merely one specific type of subjective knowledge required. . . .").  Accordingly, even if a transferee has actual knowledge of facts that put it on inquiry notice of potential fraud underlying a transfer, the transferee is still entitled to the good faith defense unless a diligent inquiry would have uncovered that fraudulent purpose.

Here, the Complaint utterly fails to allege facts demonstrating that a diligent inquiry would have revealed Madoff's fraud.  In fact, the allegations in the Fairfield Second Amended Complaint show that an inquiry would not have revealed the fraud, as only a very small group of

outliers suspected a Ponzi scheme, while thousands of other market participants, many extremely sophisticated, disagreed with these opinions and invested in BLMIS, either directly or through funds like the Fairfield Funds.

The Fairfield Second Amended Complaint alleges that BLMIS operated under a cloak of secrecy and that Sentry's management: "were willing to lie to protect their relationship" with Madoff (Fairfield Sec. Am. Compl. ¶ 5); "spun information to pacify existing FGG investors," (*id.*); "omitted material information about Madoff from their representations," (*id.*); "covered for Madoff in deliberate efforts to get investors and regulators off the scent," (*id.* ¶ 6); "suppressed . . . observations about BLMIS's inexplicable operations," (*id.* ¶ 7); "protected BLMIS from inquiry," (*id.* ¶ 8); "lied to clients about BLMIS's practices in order to keep the money flowing and their fees growing," (*id.* ¶ 9); "advanced various stories to attempt to defuse investor concerns,"(*id.* ¶ 153); "had privileged access to Madoff,"(*id.* ¶ 162); "prevent[ed] prospective investors from contacting Madoff directly," (*id.* ¶ 164); "downplay[ed] Madoff's role," (*id.* ¶ 165); "evad[ed] investor inquiries" and "deliberately tried to conceal Madoff's role with the FGG feeder funds," (*id.* ¶ 166); "guarded the relationship with Madoff," (*id.* ¶ 166); were "unwilling to release"information, (*id.* ¶ 177); "provided evasive answers,"(*id.* ¶ 183); and in 2004, "scrubbed references to BLMIS from FGG materials to avoid disclosure of Madoff's role" (*id.* ¶ 237).

Even when the SEC began an investigation in 2005, as alleged in the Fairfield Second Amended Complaint, into whether BLMIS was a Ponzi scheme or engaged in other illegal activity, but the SEC itself, with all of its power, was stymied by the efforts of BLMIS and Sentry insiders to hinder the government investigation through false statements and refusal to hand over responsive documents. *Id.* ¶¶ 236– 62. Notably, the Fairfield Second Amended Complaint explicitly argues that these efforts prevented the SEC from "gain[ing] an accurate

understanding of FGG's operations and relationship with BLMIS," (*id.* ¶ 248); gave "the appearance of cooperating with the SEC [without] disclos[ing] information useful to the SEC's investigation," (*id.* ¶ 251); and "mislead[] the SEC to believe that it was FG Bermuda, not BLMIS, that made the investment decisions" (*id.* ¶ 255). The Trustee's allegations that some consultants and market analysts believed that BLMIS *may* have been involved in improper activity is not sufficient evidence that the Vontobel Defendants could or should have known about the underlying fraud. *See* Fairfield Second Amended Compl. ¶¶ 3-4. The fact is that the Vontobel Defendants - which have nowhere near the level of power, information access and other resources of the SEC - could not have reasonably uncovered the underlying fraud.

Based on the Trustee's own allegations, it is apparent that the Vontobel Defendants acted in good faith and thus, are entitled to dismissal as a matter of law.

## Conclusion

For the foregoing reasons, the Court should dismiss the Complaint in its entirety, and with prejudice.

Dated: July 8, 2022                          Respectfully submitted,

                                             **WUERSCH & GERING LLP**

                                             */s/ Gregory F. Hauser*
                                             Gregory F. Hauser
                                             Joshua A. Dachs
                                             100 Wall Street, 10th Floor
                                             New York, New York 10005
                                             Telephone: (212) 509-5050
                                             Gregory.Hauser@WG-Law.com
                                             Joshua.Dachs@WG-Law.com
                                             ***Counsel for Defendants Bank Vontobel***
                                             ***AG f/k/a Bank J. Vontobel & Co. AG and***
                                             ***Vontobel Asset Management Inc.***

29

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of July, 2022, a true and correct PDF copy of the

foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system,

which will send a notice of electronic filing to all counsel of record.


*/s/ Gregory F. Hauser*
Gregory F. Hauser