SHEPPARD MULLIN RICHTER &
HAMPTON LLP
Michael T. Driscoll
Blanka K. Wolfe
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 653-8700
mdriscoll@sheppardmullin.com
bwolfe@sheppardmullin.com

Hearing Date: August 10, 2022
Opposition Date: June 10, 2022
Reply Date: July 11, 2022

*Counsel for Defendant Meritz Fire & Marine Insurance Co., Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>           Plaintiff,<br><br>   v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>       Defendant, | Adv. Pro. No. 08-01789 (cgm)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>       Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>          Plaintiff,<br><br>   v.<br><br>MERITZ FIRE & MARINE INSURANCE CO., LTD.,<br><br>       Defendant. | Adv. Pro. No. 11-02539 (CGM)<br><br>**DEFENDANT MERITZ FIRE & MARINE INSURANCE CO., LTD.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO <u>DISMISS THE COMPLAINT</u>** |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .........................................................................................................................2

I.    The Trustee Has Failed to Plausibly Plead that the Subsequent Transfers to Meritz Were of BLMIS Customer Property ......................................................2

II.    Section 546(e) Bars the Avoidance of the Fairfield Initial Transfers ....................4

    A.    Fairfield Sentry's Alleged Knowledge of BLMIS's Fraud Does Not Bar Meritz from Raising the Safe Harbor Defense ...............................4

    B.    The Trustee Has Failed to Allege Actual Fraudulent Intent .......................8

III.    The Trustee Cannot Establish Personal  Jurisdiction Over Meritz ......................10

    A.    Meritz's Incidental Use of Correspondent Bank Accounts is Insufficient to Establish Personal Jurisdiction ..........................................10

    B.    Meritz Intentional Investment in Fairfield Sentry Does Not Establish Minimum Contacts ....................................................................13

    C.    Meritz's Alleged So-Called "Contacts" with New York Do Not Establish Minimum Contacts ....................................................................15

    D.    The Exercise of Personal Jurisdiction Over Meritz is Not Reasonable ................................................................................................16

CONCLUSION ....................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

Federal Cases

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)..................................................................................................4

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007)..................................................................................................4

*Brecht v. Abrahamson*
    507 U.S. 619 (1993)................................................................................................14

*Burger King v. Rudzewicz*
    471 U.S. 462 (1985)........................................................................................... 16-17

*Charles Ellerin Revocable Trust*, No. 08-01789, 2012 WL 892514, at *3
    (Bankr. S.D.N.Y. Mar. 14, 2012)..............................................................................2

*Daly v. Deptula (In re Carrozella & Richardson)*
    286 B.R. 480 (D. Conn. 2002)..................................................................................9

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*
    No. 10-13164 (SMB), 2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018)......... 15-16

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*
    141 S. Ct. 1017 (2021)............................................................................................15

*Garfinkle v. Conference on Jewish Material Claims against Ger., Inc.*
    19-CV-7007 (JPO), 2020 WL 6323462 (S.D.N.Y. Oct. 28, 2020) ............................................3

*Hau Yin To v. HSBC Holdings, PLC*
    No. 15CV3590-LTS-SN, 2017 WL 816136 (S.D.N.Y.),
    aff'd, 700 F. App'x 66 (2d Cir. 2017) ...................................................................12

*Hill v. HSBC Bank*
    *plc*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016)............................................................12

*Off. Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic Bank*
    549 B.R. 56 (S.D.N.Y. 2016)..................................................................................11

*Official Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp.*
    *(In re Verestar, Inc.)*
    343 B.R. 444 (Bankr. S.D.N.Y. 2006)......................................................................9

*Picard v. ABN AMRO Bank (Ireland) Ltd.*
    505 B.R. 135 (S.D.N.Y. 2013).................................................................................6

*Picard v. BNP Paribas S.A. (In re BLMIS)*
  594 B.R. 167 (Bankr. S.D.N.Y. 2018) ............................................................7, 11

*Picard v. Bureau of Labor Insurance (In re BLMIS)*
  480 B.R. 501 (Bankr. S.D.N.Y. 2012) ...........................................................13, 14

*Picard v. Citibank, N.A. (In re BLMIS)*
  12 Fed. 4th 171 (2d Cir. 2021) (Menashi, J., concurring),
  cert. denied, 142 S. Ct. 1209 (2022). ...................................................................9

*Picard v. Estate of Igoin (In re BLMIS)*
  525 B.R. 871 (Bankr. S.D.N.Y. 2015) ..................................................................11

*Picard v. Fairfield Inv. Fund ltd.*
  *(Sec. Inv. Prot. Corp. v. Bernard L. Madoff lnv. Sec. LLC)*
  No. 09-01239, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug 6. 2021).....................7, 8

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*
  515 B.R. 117 (Bankr. S.D.N.Y. 2014) ...................................................................2

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*
  542 B.R. 100 (Bankr. S.D.N.Y. 2015) ...............................................................3, 4

*In re Picard*
  917 F.3d 85 (2d Cir. 2019)..................................................................................13

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*
  No. 12-MC-115, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)...................5, 6, 7, 8

*SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*
  620 B.R. 505 (Bankr. S.D.N.Y. 2020) ...................................................................7

*Walden v. Fiore*
  571 U.S. 277 (2014)....................................................................................14, 16

*World-Wide Volkswagen Corp. v. Woodson*
  444 U.S. 286 (1980).................................................................................. 14-15

State Cases

*Al Rushaid v. Pictet & Cie*
  28 N.Y. 3d 316 (2016) .......................................................................................11

*Licci v. Lebanese Can. Bank, SAL*
  20 N.Y. 3d 327 (2013) .......................................................................................11

Docketed Cases

*Picard v. Banque Lombard Odier & Cie S.A.*
    No. 12-cv-01693 (CGM) ..........................................................16

*Picard v. Banque Syz & Co. SA*
    11-cv-02149 (CGM) ...........................................1, 5, 10, 16

*Picard v. Multi-Strategy Fund Limited*
    12-cv-01205 (CGM) ...........................................1, 5, 10, 16

Federal: Statutes, Rules, Regulations, Constitutional Provisions

Bankruptcy Code
    § 546(e) ........................................................ *passim*
    § 548.............................................................2
    § 548(a)(1)(A)..............................................7, 9
    § 550(a) .......................................................7

Federal Rule
    Rule 9(b) ......................................................9
    Rules 8(a) and l0(c)........................................1
    Rule 12(b)(2)...............................................17
    Rule 12(b)(6)..............................................3

Defendant Meritz Fire & Marine Insurance Co., Ltd. ("Meritz") respectfully submits this reply memorandum of law in support of its Motion to Dismiss, dated April 11, 2022 [Dk. 119] (the "Motion to Dismiss")[1] and in response to the *Trustee's Memorandum of Law in Opposition to Defendant Meritz Fire & Marine Insurance Co., Ltd's Motion to Dismiss*, dated June 10, 2022 [Dk. 126] (the "Opposition").

## PRELIMINARY STATEMENT

Meritz is one of the "subsequent transferees" from whom the Trustee is seeking to recover transfers of alleged customer property made by BLMIS to Fairfield Sentry Ltd. ("Fairfield Sentry").   Meritz reviewed the Court's recent decisions in other "subsequent transferee" cases, including *Picard v. Multi-Strategy Fund Limited*, 12-cv-01205 (CGM) [Dk. 122] ("Multi-Strategy") and *Picard v. Banque Syz & Co. SA*, 11-cv-02149 (CGM) [Dk. 167] ("Banque Syz").   Meritz maintains that the Complaint should be dismissed for each of the reasons set forth in its Motion to Dismiss; however, in light of the *Multi-Strategy* and *Banque Syz* decisions, and in order to promote judicial efficiency and brevity, Meritz will not address arguments that the Complaint should be dismissed under FRCP 8(a) and 10(c) in this Reply.[2] Instead, in this Reply, Meritz respectfully requests that the Court give full consideration to the arguments in its Motion to Dismiss that (1) the Complaint is fatally flawed because it fails to adequately plead that the transfers allegedly made to Meritz by Fairfield Sentry can be linked to BLMIS customer property; (2) the claim asserted by the Trustee is barred by section 546(e) of the Bankruptcy Code; and (3) the Court lacks personal jurisdiction over Meritz.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion to Dismiss and the *Memorandum of Law in Support of Motion to Dismiss*, filed concurrently therewith [Dk. 120] (hereinafter, "MTD").

[2] While Meritz is not addressing the FRCP 8(a) and 10(c) argument in this Reply, the absence of this argument does not constitute a waiver of such argument and Meritz expressly reserves its rights with respect to that argument.

-1-

## ARGUMENT

I.    **The Trustee Has Failed to Plausibly Plead that the Subsequent
Transfers to Meritz Were of BLMIS Customer Property**

In light of the Court's recent decisions, Meritz seeks to clarify and narrow the scope of its argument about the Trustee's failure to plausibly plead that the subsequent transfers made by Fairfield Sentry to it consisted of transfers made by BLMIS to Fairfield Sentry.  Contrary to the Trustee's arguments in the Opposition, Meritz is not arguing that the Trustee must provide a "'dollar-for-dollar accounting' of 'the exact funds' at issue" to satisfy its pleading requirements.  Opp. at 29.   However, and as the Trustee admits, and as required by section 548 of the Bankruptcy Code, he must plausibly allege that the redemption payments received by Meritz came from the initial, avoidable transfers from BLMIS to Fairfield Sentry.  He fails to do so.

Specifically, as the Trustee admits, "[t]o plead a subsequent transfer claim, the Trustee must allege facts that support an inference 'that the funds at issue originated with the debtor.'"  *Id.* (citing *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117, 149-50 (Bankr. S.D.N.Y. 2014)).   The Trustee tries to satisfy that pleading requirement by showing the redemption payments made by Fairfield Sentry to Meritz, Compl. at Ex. C, and showing the payments made between BLMIS and Fairfield Sentry, Compl. at Ex. B.  But the Complaint does not contain any allegations that link the two.[3]

---

[3] Ultimately, the parties do not disagree as to the Trustee's pleading standard, but differ on whether the Trustee has satisfied that burden.  The Trustee states that he "need only allege sufficient facts to show the relevant pathways through which the funds were transferred from BLMIS to [the subsequent transferee]."  Opp. at 29-30 (citing *Charles Ellerin Revocable Trust*, No. 08-01789, 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012)).  However, the Trustee has not plead facts to show the pathway through which the funds were transferred from BLMIS to Meritz because the transfers from BLMIS to Fairfield Sentry do not match up with the transfers from Fairfield Sentry to Meritz.  Similarly, the Trustee states that the Trustee must allege only "the necessary vital statistics—the who, when, and how much of the purported transfers to establish an entity as a subsequent transferee of the funds." Opp. at 29-30 (*citing Merkin*, 515 B.R. at 150).  However, again, the Trustee fails to allege how much of the transfers from BLMIS to Fairfield Sentry establish Meritz as a subsequent transferee.

Instead, the Complaint assumes that the subsequent transfers made to Meritz was BLMIS "Customer Property" because "Sentry invested substantially all of its funds with BLMIS." Opp. at 30. For purposes of this Reply, Meritz does not dispute that Fairfield Sentry invested most of its funds with BLMIS. However, and respectfully, the fact that Fairfield Sentry invested most of its funds with BLMIS does not mean that Fairfield Sentry could only use BLMIS customer property to make its redemption payments. Fairfield Sentry received funds from additional investors, which funds could just as easily have been used to make redemption payments without those funds ever being transferred to BLMIS.[4] *See* MTD at 15-16. In fact, it is a matter of arithmetic – more was paid out by Fairfield Sentry in redemption payments than was paid into Fairfield Sentry by BLMIS. *Id*.

Thus, without the need to conduct a tracing analysis, it is clear that some portion of Fairfield Sentry redemption payments were not made from BLMIS customer property. The Complaint itself admits as much - it alleges that during the six years preceding the petition date, BLMIS transferred approximately $3 billion to Fairfield Sentry, and that "***a portion of [those transfers]*** was subsequently transferred either directly or indirectly to, or for the benefit of," Meritz. Compl. at ¶¶ 35, 41 (emphasis added). Beyond the conclusory statement that a portion of BLMIS transfers were transferred to Meritz, the Complaint contains no allegations of fact that the subsequent transfers to Meritz actually contained BLMIS customer property. The Trustee should not be permitted to rely on vague and conclusory allegations that fail to "tie any initial transfer to any subsequent transfer or Subsequent Transferee." *Picard v. Shapiro (In re Bernard*

---

[4] The Trustee takes exception with this "alternative explanation" for the source of Fairfield Sentry's redemption payments, arguing that it is an attempt "to interject improper expert testimony into a Rule 12(b)(6) context." Opp. at 34 (citation omitted). The Trustee misses the point. It is not the burden of Meritz to identify the source of the transfers. It is the Trustee's. And the Trustee's failure to explain an "obvious alternative explanation" leaves its allegation of the source of the redemption payments deficient. *Garfinkle v. Conference on Jewish Material Claims against Ger., Inc*., 19-CV-7007 (JPO), 2020 WL 6323462, at *8 (S.D.N.Y. Oct. 28, 2020) ("There is an 'obvious alternative explanation' for the [defendant's] conduct - that it sought to ensure the proper use of its funds - and that explanation renders [plaintiff's] competing explanation 'conceivable [but not] plausible.'" (citation omitted)).

*L. Madoff Inv. Sec. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015).   Thus, based on the

allegations in the Complaint, it is equally plausible that the subsequent transfers to Meritz did not

come from the $3 billion that BLMIS transferred to Fairfield Sentry.

This fails to satisfy the Trustee's pleading requirements.   The Supreme Court has made it

clear that the mere possibility that the Trustee may have a claim against Meritz is insufficient.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (a complaint must be dismissed if a

plaintiff "ha[s] not nudged the[]claims across the line from conceivable to plausible . . . .").

Specifically:

> The plausibility standard is not akin to a "probability requirement,"
> but it asks for more than a sheer possibility that a defendant has
> acted unlawfully. *Ibid.* Where a complaint pleads facts that are
> "merely consistent with" a defendant's liability, it "stops short of
> the line between possibility and plausibility of 'entitlement to
> relief.'

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*, 550 U.S. at 557 (brackets

omitted)); *accord Shapiro*, 542 B.R. at 119.   Here, the Complaint fails to allege more than a

sheer possibility that the subsequent transfers to Meritz originated with BLMIS, and thus must be

dismissed.

## II.   Section 546(e) Bars the Avoidance of the Fairfield Initial Transfers

### A.   Fairfield Sentry's Alleged Knowledge of BLMIS's Fraud Does Not Bar Meritz from Raising the Safe Harbor Defense

The statutory elements of the safe harbor provision of section 546(e) of the Bankruptcy

Code have been met – ie., the Fairfield Initial Transfers were made by, to, or for the benefit of a

covered entity (a stockbroker, financial institution, or financial participant) in connection with a

securities contract or that were comprised of settlement payments.   *See* MTD at 16-22; 11 U.S.C.

546(e).   The Opposition does not dispute this.

Instead, the Trustee relies on a misreading of *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-MC-115, 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*") and argues that the safe harbor provision does not apply to Meritz because "an initial transferee's actual knowledge of Madoff's fraud precludes application of the Section 546(e) safe harbor. . . ." Opp. at 17. In essence, the Trustee argues that the actual knowledge of the subsequent transferee is irrelevant. *Id*. at 17-23. According to the Trustee, "such an interpretation would effectively eliminate the point of the actual knowledge exception—which is to restrict any transferee with actual knowledge from hiding behind the safe harbor." *Id*. at 21. However, this argument misconstrues Judge Rakoff's decision and makes the very point that Meritz seeks to make. It is a transferee without actual knowledge and should be afforded the protections of the safe harbor provision. *See Cohmad*, 2013 WL 1609154, at *3.[5]

Specifically, in *Cohmad*, Judge Rakoff addressed two situations: (1) where an initial transferee seeks to invoke the safe harbor provision but has actual knowledge of BLMIS's fraud; and (2) where a subsequent transferee seeks invoke the safe harbor provision but has actual knowledge of BLMIS's fraud. In those situations, Judge Rakoff held:

> (1) Where the Trustee has sought to avoid transfers to an initial transferee, the avoidance of which would otherwise be barred by Section 546(e) under the Court's rulings in *Katz* and *Greiff*, the initial transferee will not be able to prevail on a motion to dismiss some or all of the Trustee's avoidance claims simply on the basis of the Section 546(e) "safe harbor" if the Trustee has alleged that the initial transferee had actual knowledge of Madoff Securities' fraud; and
>
> (2) Where the Trustee has sought to recover transfers made to a subsequent transferee, the avoidance of which would otherwise be barred by Section 546(e) as to the initial transferee, the subsequent transferee will not be able to prevail on a motion to dismiss some

---

[5] Meritz is aware of this Court's recent decisions, including those in *Multi-Strategy* and *Banque SYZ*, and believe they misinterpret Judge Rakoff's decisions on the applicability of the section 546(e) safe harbor to subsequent transferees. Meritz respectfully requests the Court to consider their argument and dismiss the claims against them under the safe harbor provision of section 546(e) of the Bankruptcy Code.

-5-

or all of the Trustee's avoidance claims simply on the basis of the Section 546(e) "safe harbor" if the Trustee has alleged that the subsequent transferee had actual knowledge of Madoff Securities' fraud.

*Id.* at *l.

Thus, pursuant to *Cohmad*, the "one caveat" to a subsequent transferee's ability to raise the safe harbor defense is if the subsequent transferee had "actual knowledge of Madoff Securities' fraud." *Id.* at *7. This is because "[a] defendant cannot be permitted to in effect launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of Section 546(e)." *Id.* Thus, Judge Rakoff concluded that "if the Trustee sufficiently alleges that the transferee from whom he seeks to recover a fraudulent transfer knew of Madoff Securities' fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor." *Id.*[6]

Nothing in Judge Rakoff's decision in *Cohmad* stands for the proposition that the Trustee is espousing – that an initial transferee's actual knowledge of BLMIS's fraud bars an innocent subsequent transferee from raising the safe harbor defense.[7] In fact, in *Cohmad*, the defendants included subsequent transferees of the very same feeder funds whose alleged knowledge of the BLMIS fraud the Trustee now argues defeats application of the safe harbor. Yet, neither *Cohmad* nor any of the later decisions applying the safe harbor to subsequent transfer claims suggest that an innocent subsequent transferee is deprived of the safe harbor defense because the initial transferee allegedly knew of BLMIS' fraud. *See id.*; *see also Picard v. ABN AMRO Bank (Ireland) Ltd.*, 505 B.R. 135, 142 (S.D.N.Y. 2013) ("[T]he Court has found that, in the majority

---

[6] To be clear, the "transferee" referenced in this quote from *Cohmad* is the subsequent transferee from which the fraudulent transfer is being recovered, and *not* the initial transferee from which the fraudulent transfer is being avoided. The Court's recent opinions add "[initial]" before "transferee," but, respectfully, this changes the meaning of what Judge Rakoff said in his decision.

of cases, section 546(e) requires the dismissal of the Trustee's avoidance claims, except those brought under section 548(a)(1)(A) and related recovery claims under section 550(a)").  This is because a subsequent transferee without actual knowledge has a "reasonable expectation" that it is receiving a securities settlement payment pursuant to a securities contract.  That is the reasonable expectation Congress intended to protect by section 546(e) of the Bankruptcy Code. *Cohmad,* 2013 WL 1609154 at *4.

In *Picard v. Fairfield Inv. Fund ltd. (Sec. Inv. Prot. Corp. v. Bernard L. Madoff lnv. Sec. LLC)*, No. 09-01239, 2021 WL 3477479, at *1 (Bankr. S.D.N.Y. Aug 6. 2021) ("*Fairfield Inv. Fund*"), the court examined whether the plaintiff sufficiently alleged facts establishing actual knowledge as to each defendant, *id.* at *5-*7, and concluded that the plaintiff had done so for all initial and subsequent transferees except one subsequent transferee defendant. *Id*. at *4-6, *15.  Specifically, the court found the plaintiff had "failed to plead individualized factual allegations demonstrating that [the subsequent transferee] had independent actual knowledge of the BLMIS fraud."  *Id*. at *6.  The Court then dismissed all claims against her, even though it found that the plaintiff had adequately pleaded actual knowledge on the part of both the initial and other subsequent transferees.  *Id*. at *4-6.  If the Trustee's reading of *Cohmad* were correct, once the Court held that the initial transferees had actual knowledge, all defendants' motions to dismiss would have been denied, but that is not what happened.  Thus, the Court's finding that the initial transferee had actual knowledge of BLMIS's fraud did not automatically deprive the subsequent transferees from the safe harbor protections.

The Trustee also incorrectly argues that Meritz cannot even raise the section 546(e) safe harbor defense because it is a subsequent transferee.  Opp. at 23-24.  However, it is undisputed

---

[7] The Trustee also states that his position is supported by *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167 (Bankr. S.D.N.Y. 2018) and *SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*, 620 B.R. 505 (Bankr. S.D.N.Y. 2020).  Opp. at 24.  However, neither decision discusses this issue or even cites *Cohmad*.

that in a clawback action against a subsequent transferee, the subsequent transferee can assert any defenses that the initial transferee could have asserted. Specifically:

> [E]ven if the initial (or mediate) transferee fails to raise a Section 546(e) defense against the Trustee's avoidance of certain transfers—either because the Trustee did not bring an adversary proceeding against that transferee, or because the transferee settled with the Trustee, or simply because that transferee failed to raise the defense—the subsequent transferee is nonetheless entitled to raise a Section 546(e) defense against recovery of those funds.

*Cohmad*, 2013 WL 1609154 at *7; *see also Fairfield Inv. Fund*, 2021 WL 3477479, at *3 ("Where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here where the transferee settled with the Trustee, the subsequent transferee is nonetheless entitled to raise a § 546(e) defense against recovery of those funds." (citations omitted)).

Here, the Fairfield Initial Transfers were made, at the very least, in connection with the securities contract between Fairfield Sentry and Meritz,[8] and the Complaint contains no allegations that Meritz had actual knowledge of BLMIS's fraud. As such, Meritz is entitled to the protections of the safe harbor provisions.

### B.    The Trustee Has Failed to Allege Actual Fraudulent Intent

The statutory exception to the safe harbor defense for transfers made in the two years before the filing date with the actual intent to defraud does not apply because the Complaint fails to plead specific facts that BLMIS acted with the intent to "hinder, delay or defraud" creditors at

---

[8] As Judge Rakoff noted in *Cohmad*, even if the initial transferee knew BLMIS was a fraud and was not trading securities, if the initial transferee withdrew funds from BLMIS to make a payment under a securities contract between the initial transferee and the subsequent transferee, then the withdrawal from BLMIS would be a transfer made in connection with the securities contract between the initial transferee, Fairfield Sentry, and the subsequent transferee, Meritz. *Cohmad*, 2013 WL 1609154 at *7. This separate basis for asserting the protections of the safe harbor provisions does not implicate any securities contract between Fairfield Sentry and BLMIS, and thus Fairfield Sentry's alleged knowledge of BLMIS's fraud (and that its customer agreements with BLMIS were not real securities contracts) would not preclude an innocent subsequent transferee from relying on the safe harbor protections for its separate securities contract.

the time it made each and every one of the Fairfield Initial Transfers that the Trustee seeks to recover from Meritz.  11 U.S.C. § 548(a)(1)(A).

In response, the Trustee argues that he should be allowed to rely on the so-called Ponzi scheme presumption and that, in any event, he has sufficiently alleged BLMIS's actual fraud by alleging certain "badges of fraud."  Opp. at 26-29.  First, contrary to the Trustee's assertion in the Opposition, the Ponzi scheme presumption is not the established "law of this Circuit."  Opp. at 27.  The Second Circuit Court of Appeals has not applied it in a case where the issue was litigated or "held directly that the presumption is well-founded."  *Picard v. Citibank, N.A. (In re BLMIS)*, 12 Fed. 4th 171, 202 n.7 (2d Cir. 2021) (Menashi, J., concurring), *cert. denied*, 142 S. Ct. 1209 (2022).  In addition, courts within this Circuit have recognized that "[s]imply because a debtor conducts its business fraudulently does not make every single payment by the debtor subject to avoidance."  *Daly v. Deptula (In re Carrozella & Richardson)*, 286 B.R. 480, 489 (D. Conn. 2002) (citations omitted).

Second, the Complaint does not allege any transfer-specific facts relevant to BLMIS's actual intent.  The allegations in the Complaint concerning the "badges of fraud" cited by the Trustee – "the concealment of facts by BLMIS, BLMIS's insolvency, and the lack of consideration provided for BLMIS's fictitious transfers to customers" (Opp. at 29) --  are not linked to any of the transfers at issue in the case.  For example, the Trustee does not allege, much less with particularity, that any of the Fairfield Initial Transfers were made without consideration.  Instead, the Complaint contains only generic and conclusory allegations about (i) BLMIS making payments to Fairfield Sentry and (ii) BLMIS operating as a Ponzi scheme. As fully set forth in the Motion to Dismiss, neither should be found to be sufficient to satisfy the Trustee's pleading burden under Rule 9(b) of the Federal Rules.  *See Official Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp. (In re Verestar, Inc.)*, 343 B.R. 444,

468 (Bankr. S.D.N.Y. 2006) (finding that "conclusory allegations that do not evidence fraudulent intent with respect to the specific transfers challenged do not suffice," even if "combined with . . . allegations [about] an alleged overall 'pattern of inappropriate transfers'. . . .").

## III.    The Trustee Cannot Establish Personal Jurisdiction Over Meritz

In its Opposition, the Trustee asserts that this Court has personal jurisdiction over Meritz because "Meritz: (1) invested in Sentry, with the knowledge and intention that those funds would be invested, managed, and custodied by BLMIS in New York; (2) met with FGG personnel in New York regarding its Sentry investments; (3) had direct connections with New York through its Sentry subscription agreement; and (4) used New York banks to deposit funds with and receive funds from Sentry." Opp. at 7. The Trustee further states that it is "in their totality" that these contacts "establish that Meritz purposefully directed its activities to the United States and New York specifically." *Id*. at 8. (citations omitted). However, a multiple of nothing is still nothing. These purported jurisdictional contacts boil down to incidental transfers of funds through alleged New York-based correspondent bank accounts and other *de minimus* incidental contacts, and they are insufficient to establish personal jurisdiction on their own or in their totality.[9]

### A.    Meritz's Incidental Use of Correspondent Bank Accounts is Insufficient to Establish Personal Jurisdiction[10]

The Trustee alleges that although Meritz's June 26, 2006 subscription agreement lists Standard Chartered First Bank, Korea Limited in Seoul, Korea for subscriptions and redemptions, it also had a U.S. correspondent bank account at Bank of America in New York through which it received redemptions from Sentry, which is sufficient, in and of itself, to

---

[9] Meritz is aware of the other decisions rendered by this Court, including *Multi-Strategy* and *Banque Syz*; however, as recognized by this Court, the facts of each case must be evaluated.

[10] Meritz notes that the Opposition improperly expands the scope of the allegations the Trustee made in the Complaint. Specifically, the Complaint alleges that Meritz "wired funds to Fairfield Sentry through a bank in New York," Compl. at ¶ 6, but the Opposition now claims that Meritz also used New York correspondent accounts to

establish personal jurisdiction.  *See* Opp. at 14-15; *see also* Fish Decl. Exs. A, D & E.  Further, as a separate basis to establish personal jurisdiction, the Trustee also points to Mertiz's consent to send and receive payments to and from Fairfield Sentry's New York correspondent bank account at HSBC Bank USA.  *See* Opp. at 15; *see also* Fish Decl. Exs. A-C.

The significance of these bank accounts is grossly overstated.  Indeed, the Trustee does not dispute that the entirety of this alleged activity amounts to no more than: (i) Meritz wiring funds from Korea to Fairfield Sentry in the BVI, and specifically to Fairfield Sentry's bank account at Citco Bank Nederland N.V. Dublin Branch; and (ii) Fairfield Sentry transferring redemption payment from the BVI back to Meritz in Korea. Because these transfers were denominated in U.S. currency, they allegedly had to pass through a U.S. bank.  However, the Trustee does not and cannot allege that any money was wired to or from a New York bank account.  For that reason, the cases cited by the Trustee are inapposite.  *See Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) ("*BNP*") (defendants wired funds to and received funds from New York); *Picard v. Estate of Igoin (In re BLMIS)*, 525 B.R. 871, 884 (Bankr. S.D.N.Y. 2015) (defendant transferred funds into her BLMIS account in New York).

Furthermore, the Trustee reliance on a trio of cases *Licci v. Lebanese Can. Bank, SAL*, 20 N.Y. 3d 327 (2013), *Off. Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic Bank*, 549 B.R. 56 (S.D.N.Y. 2016), and *Al Rushaid v. Pictet & Cie*, 28 N.Y. 3d 316 (2016) is misplaced.  Each of those cases involved a defendant bank that was knowingly making use of its own bank account in connection with allegedly illegal activity connected to the United States.  In contrast, Meritz, a non-U.S. public company, is alleged to have used a U.S.

---

receive redemption payments from Fairfield Sentry.  *See* Opp. at 14-15.  Meritz reserves all rights with respect to this improper argument.

-11-

correspondent bank account at Bank of America in New York to make routine dollar transfers between two non-U.S. entities.  Meritz is not alleged to, and did not in fact, have knowledge of BLMIS's illegal activity; nor did Meritz use the correspondent bank accounts to facilitate an illegal scheme to which it was a knowing participant.  Thus, these cases are distinguishable.

As fully set forth in the Motion to Dismiss, the incidental use of a bank account in the United States to facilitate U.S. dollar-denominated payments to settle a foreign securities transaction does not, as a matter of controlling law, give rise to personal jurisdiction.  *See Hau Yin To v. HSBC Holdings, PLC*, No. 15CV3590-LTS-SN, 2017 WL 816136, at \*6 (S.D.N.Y.), aff'd, 700 F. App'x 66 (2d Cir. 2017) (rejecting personal jurisdiction over foreign defendants because their alleged connection to the forum was the transmission of information and funds "to and from BLMIS . . . [as an] incidental consequence[] of fulfilling a foreign contract . . . ."); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339-40 (S.D.N.Y. 2016) (finding transmission of information and funds to and from BLMIS to be "incidental consequences of fulfilling a foreign contract . . . insufficient to 'project' the Foreign Defendants into New York" and not amounting "to 'purposeful availment' of the laws of [the forum]").

For example, in affirming dismissal on personal jurisdiction grounds in *Hau Yin To v. HSBC Holdings, PLC*, the Second Circuit explained that "[t]he communication and transmission of information to and from [BLMIS] in connection with fund administration and custodial duties do not give rise to personal jurisdiction … Nor does the mere maintenance of correspondent bank accounts at an affiliate bank in New York."  700 F. App'x at 67 (internal citations omitted). Notably, that case involved bank defendants that corresponded and sent money directly to BLMIS and, thus, had a closer relationship to BLMIS than Meritz.  At most, Meritz sent money to Fairfield Sentry that merely and allegedly passed through a U.S. bank before being deposited

in the Fairfield Sentry's bank account in BVI. *See* Compl. at ¶ 6. Such incidental use of a U.S. bank account is insufficient to establish personal jurisdiction.

The Trustee's reliance on the Second Circuit's extraterritoriality decision in *In re Picard*, 917 F.3d 85, 99 (2d Cir. 2019) to contend that transfers from Fairfield Sentry to subsequent transferees "are domestic activity" is misplaced. Opp. at 19. The Second Circuit did not address subsequent transfers but instead said, "we must decide whether Madoff Securities' transfers [to direct customers, three feeder funds] took place in the United States such that regulating them involves a domestic application of that statute," and held that "a domestic debtor's allegedly fraudulent, hindersome, or delay-causing transfer of property from the United States is domestic activity for the purposes of §§ 548(a)(1)(A) and 550(a)." *In re Picard*, 917 F.3d at 99. In fact, the transfers at issue in this case are between two foreign entities that are alleged to have passed through a New York bank account because they were denominated in U.S. dollars (a decision that was not made by Meritz). The Fairfield Liquidators themselves confirmed that the same transfers the Trustee seeks to recover here occurred entirely outside of the United States. *See* MTD at 26. In the Opposition, the Trustee misconstrues Meritz's reliance on what the Fairfield Liquidators have admitted and argues it is irrelevant. Opp. at 14. However, as BLMIS did not transact any business directly with Meritz, the contacts that the Trustee cites and must rely upon are derivative of the Fairfield Funds' contacts; if the Fairfield Liquidators cannot allege sufficient jurisdictional contacts, neither can the Trustee.

### B.    Meritz's Intentional Investment in Fairfield Sentry Does Not Establish Minimum Contacts

Next, the Trustee asserts that Meritz's intentional investment in Fairfield Sentry alone establishes personal jurisdiction. Opp. at 8. Specifically, relying on *Picard v. Bureau of Labor Insurance (In re BLMIS)*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012) ("*BLI*"), the Trustee alleges that by executing numerous subscription agreements and affirming that they read Fairfield Sentry's

Private Placement Memorandums, Meritz knew, among other things, that Fairfield Sentry invested substantially of its assets with BLMIS, that BLMIS performed all investment management duties for these assets, and that BLMIS was essential to Fairfield Sentry's operation. Opp. at 8-9.

However, the Trustee's reliance on *BLI* is misplaced.  Meritz did not toss the proverbial seed—it was tossed by Fairfield Sentry.  *BLI*, 480 B.R. at 506 ("BLI intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom.").  First, the Trustee's assertion that *BLI* is controlling law is an overstatement.  These issues were not directly briefed or decided in *BLI*.  *See Brecht v. Abrahamson*, 507 U.S. 619, 630-31 (1993) (decision not precedent for issues not "squarely addressed").  Second, *BLI* predates and is inconsistent with the intervening Supreme Court decision of *Walden v. Fiore*, 571 U.S. 277 (2014), which makes clear that knowing of or intending a consequence in the forum state cannot give rise to personal jurisdiction.  In the Opposition, the Trustee tries to downplay the import of *Walden*.  But in *Walden*, the Supreme Court rejected a theory of personal jurisdiction that is virtually identical to the theory the Trustee relies upon here.  *Walden*, 571 U.S. at 289.

Exerting personal jurisdiction over Meritz because of where Fairfield Sentry funds were ultimately invested incorrectly shifts the personal jurisdiction focus away from the place of defendant's "primary conduct" to wherever the effects of that conduct could conceivably be felt.  *See id*. at 284 (rejecting "attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.").  This would undermine a defendant's ability to "'structure [its] primary conduct' to lessen or avoid exposure to a given State's courts." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297

(1980)).  Indeed, such a test would deprive Meritz of any meaningful way to structure its conduct to avoid being hauled into court on the other side of the world.  If the Trustee's theory were upheld, any investment that foreseeably found its way into a U.S. asset would confer personal jurisdiction.  There is no precedent for such a result.

### C.    Meritz's Alleged So-Called "Contacts" with New York Do Not Establish Minimum Contacts

Additionally, the Trustee argues that Meritz directed activity into the forum through its contacts with FGG in New York.  *See* Opp. at 11-12.  Specifically, the Trustee points to one visit that one Meritz manager allegedly made to FGG's offices in New York more than 15 years ago; as well as email correspondence referencing a request from a different individual at Meritz to visit FGG's New York offices (nearly a year later) to conduct due diligence on the Fairfield Sentry fund.  *Id.* at 11-12, *see also* Fish Decl. Exs. F-E.  And that "Meritz's subscription agreement with Sentry further evidences a 'strong nexus with New York' that supports jurisdiction" because they contain New York forum selection clauses.  *Id.* at 12-13.  However, none of these alleged contacts are sufficient.

First, other than making a conclusory statement, the Trustee has not alleged any facts that show the Meritz's 2006 visit was for the purpose of transacting business with FGG in New York. The email correspondence relied upon by the Trustee does not establish the purpose of the visit, and by their own terms show that Meritz had already made its investments in Fairfield Sentry prior to that visit.  *See* Fish Decl. Exs. F & G.  Indeed, while the Trustee attempts to bolster this contact by offering email correspondence showing that a different employee at Meritz may have requested to visit FGG's New York office to conduct due diligence nearly a year later (and 15 years ago), there is no evidence or allegation that this visit ever took place.  *Id.* Ex. H.

Second, forum selections clauses are not a relevant jurisdictional contact.  The Trustee's position flies in the face of Judge Bernstein's well-reasoned opinion in *Fairfield Sentry Ltd. v.*

*Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, where he expressly held that a forum selection clause was "irrelevant" to claims to recover redemption payments because "consent to the Subscription Agreement does not constitute consent to personal jurisdiction in the U.S. Redeemer Actions." No. 10-13164 (SMB), 2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018). This Court has also observed that while forum selection clauses could be relevant to the assessment of the reasonableness of asserting jurisdiction based on other contacts, the clause itself does not provide an independent basis for asserting jurisdiction. *Multi-Strategy*, at n.3. The fact that Meritz acquiesced to Fairfield Sentry's choice of forum does not mean that they "purposefully availed" themselves the privilege of conducting business in New York.

### D.        The Exercise of Personal Jurisdiction Over Meritz is Not Reasonable

The Trustee has failed to make the threshold showing of minimum contacts. Meritz's conduct in New York is virtually non-existent. The contacts that exist in other cases involving Fairfield Sentry subsequent transferees are not present in this case:

- Meritz did not maintain its own bank accounts with BLMIS or use New York banks to send money to and receive money from BLMIS;

- Meritz did not make a customer claim in the SIPA proceeding; and

- Meritz did not meet with anyone from BLMIS and they never solicited additional investors or seek out additional investment in BLMIS.

*See Multi-Strategy,* at 6-8; *Banque Syz,* at 6-7; *Picard v. Banque Lombard Odier & Cie S.A.*, No. 12-cv-01693 (CGM) [Dk. 115], at 6-8.

As such, it would violate fundamental principles of due process for this Court to require it to defend against suit here. *See Walden*, 571 U.S. at 286 ("Due Process requires that a defendant be haled [*sic*] into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." (*quoting Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)). As

such, the Complaint should be dismissed for lack of personal jurisdiction over Meritz pursuant to

Rule 12(b)(2) of the Federal Rules.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint.

Dated:    New York, New York
          July 11, 2022

                              By:  */s/ Michael T. Driscoll*

                              SHEPPARD MULLIN RICHTER & HAMPTON LLP
                              Michael T. Driscoll
                              Blanka K. Wolfe
                              30 Rockefeller Plaza
                              New York, New York 10112
                              Telephone: (212) 653-8700
                              mdriscoll@sheppardmullin.com
                              bwolfe@sheppardmullin.com

                              *Counsel for Defendant Meritz Fire & Marine Insurance
                              Co., Ltd.*