HERBERT SMITH FREEHILLS
NEW YORK LLP
Scott S. Balber
Jonathan C. Cross
450 Lexington Avenue
New York, New York 10017
Telephone: (917) 542-7600
scott.balber@hsf.com
jonathan.cross@hsf.com

**Hearing Date: September 14, 2022**
**Opposition Date: June 9, 2022**
**Reply Date: July 13, 2022**

*Attorneys for Defendants Bank Hapoalim (Switzerland) Ltd. and Bank Hapoalim B.M.*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 12-01216 (CGM) |
| Plaintiff, | |
| v. | **DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT** |
| BANK HAPOALIM B.M. and BANK HAPOALIM (SWITZERLAND) LTD., | |
| Defendants. | |

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ............................................................................................................... 2

    I.    THE TRUSTEE'S CLAIMS SHOULD BE DISMISSED FOR LACK OF
    PERSONAL JURISDICTION ............................................................................ 2

        A.    The Trustee Concedes that The Defendants Are Not Subject To The General
        Jurisdiction Of This Court ................................................................ 2

        B.    There is No Basis to Assert Specific Jurisdiction Over Either Defendant ....... 2

            1.    Forum Selection and Choice of Law Clauses in Subscription
               Agreements are Insufficient Grounds to Establish Specific Jurisdiction
               over Either Defendant ......................................................... 3

            2.    The Trustee Fails to Allege that the Correspondent Accounts Were Used
               in Connection with Redemptions at Issue in the Complaint .................... 4

            3.    Unrelated and Unalleged Contacts Cannot Support Specific Jurisdiction
               .................................................................................... 6

            4.    The Trustee's Alleged Jurisdictional Contacts Do Not Establish
               Jurisdiction ....................................................................... 7

            5.    Defendant's Alleged Knowing Investment in BLMIS Via Fairfield
               Sentry Does Not Confer Jurisdiction ...................................... 10

    II.    THE TRUSTEE FAILS TO ADEQUATELY PLEAD THAT DEFENDANTS
    RECEIVED CUSTOMER PROPERTY ............................................................ 11

        A.    The Trustee Has Failed to Carry His Pleading Burden ................................ 11

        B.    The Trustee's Pleading Failure is Not Excused by Any Lack of Information 14

        C.    The Trustee Fails to Justify Seeking Recovery from Defendants Who Are Not
        "Transferees" of Customer Property ............................................... 14

    III.    THE TRUSTEE ALSO FAILS TO MEET HIS RULE 8 PLEADING BURDEN
    MORE BROADLY ............................................................................................. 15

    IV.    THE TRUSTEE'S CLAIMS ARE BARRED BY SECTION 546(E) OF THE
    BANKRUPTCY CODE ..................................................................................... 17

        A.    The Trustee Fails to Dispute that the Elements of the Safe Harbor are
        Satisfied ........................................................................................ 17

        B.    *Cohmad II* Does Not Preclude Defendants from Invoking the Safe Harbor .. 18

CONCLUSION ........................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Pages**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC*,
   599 B.R. 730 (Bankr. S.D.N.Y. 2019) ...................................................................................... 12

*Allianz Global Investors GMBH v. Bank of Am. Corp.*,
   2021 WL 3192814 (S.D.N.Y. July 28, 2021) ............................................................................ 8

*Am. Casein Co. v. Geiger (In re Geiger)*,
   446 B.R. 670 (Bankr. E.D. Pa. 2010) ...................................................................................... 16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................ 11, 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................................. 12

*Bourdeau Bos., Inc. v. Montagne (In re Montagne)*,
   2010 WL 271347 (Bankr. D. Vt. Jan. 22, 2010) ...................................................................... 13

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) .................................................................................................................... 4

*Cal Distributor, Inc. v. Cadbury Schweppes Ams. Beverages, Inc.*,
   2007 WL 54534 (S.D.N.Y. Jan. 5, 2007) ................................................................................. 5

*Chase Manhattan Bank v. Banque Generale du Commerce*,
   1997 WL 266968 (S.D.N.Y. May 20, 1997) ............................................................................ 4

*Colliton v. Bunt*,
   709 F. App'x 82 (2d Cir. 2018) ................................................................................................. 5

*CutCo Indus., Inc. v. Naughton*,
   806 F.2d 361 (2d Cir. 1986) ...................................................................................................... 7

*Edmondson v. RCI Hosp. Holdings, Inc.*,
   2020 WL 1503452 (S.D.N.Y. Mar. 30, 2020) ........................................................................ 14

*Eldesouky v. Aziz*,
   2014 WL 7271219 (S.D.N.Y. Dec. 19, 2014) .......................................................................... 5

*Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
   397 F. Supp. 3d 323 (S.D.N.Y. 2019) ................................................................................... 5, 6

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
    141 S.Ct. 1017 (2021) ............................................................................................ 8

*Gucci Am. v. Weixing Li*,
    135 F. Supp. 3d 87 (S.D.N.Y. 2015) ...................................................................... 6

*Helms v. Metro. Life Ins. Co. (In re O'Malley)*,
    601 B.R. 629 (Bankr. N.D. Ill. 2019) .................................................................. 15

*Hill v. HSBC Bank plc*,
    207 F. Supp. 3d 333 (S.D.N.Y. 2016) .................................................................. 9

*HSH Nordbank AG N.Y. Branch v. Street*,
    2012 WL 2921874 (S.D.N.Y. July 18, 2012) .................................................... 5, 6

*In re Fairfield Sentry Ltd.*,
    2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) .......................................... 3, 4

*In re Jumei Int'l Holding Ltd. Secs. Litig.*,
    2017 WL 95176 n.4 (S.D.N.Y. Jan. 10, 2017) ................................................ 2, 16

*In re Lifetrade Litig.*,
    2021 WL 1178087 (S.D.N.Y. Mar. 29, 2021) ...................................................... 8

*In re Motors Liquidation Co.*,
    565 B.R. 275 (Bankr. S.D.N.Y. 2017) .................................................................. 4

*In re Picard*,
    917 F.3d 85 (2d Cir. 2019) .............................................................................. 10, 11

*In re Terrestar Corp.*,
    2017 WL 1040448 (S.D.N.Y. Mar. 16, 2017) .................................................... 13

*In re UBS AG Sec. Litig.*,
    2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) .................................................... 16

*Kelley v. Safe Harbor Managed Acct. 101, Ltd.*,
    31 F.4th 1058 (8th Cir. 2022) .............................................................................. 19

*Liberatore v. Calvino*,
    293 A.D. 217 (1st Dep't 2002) ............................................................................ 7

*Licci v. Lebanese Can. Bank, SAL*,
    20 N.Y.3d 327 (2012) ............................................................................................ 6

*Neewra, Inc. v. Manakh Al Khaleej Gen. Trading and Contracting Co.*,
    2004 WL 1620874 (S.D.N.Y. July 20, 2004) ................................................... 6, 7

*O'Brien v. Nat'l Prop. Analysts Partners*,
   719 F. Supp. 222 (S.D.N.Y. 1989) ........................................................................ 5

*Official Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic Bank*,
   549 B.R. 56 (S.D.N.Y. 2016)................................................................................ 6

*Pettaway v. Nat'l Recovery Sols., LLC*,
   955 F.3d 299 (2d Cir. 2020)................................................................................ 16

*Picard v. BNP Paribas S.A. (In re Bernard L. Madoff)*,
   594 B.R. 167 (Bankr. S.D.N.Y. 2018)........................................................... passim

*Picard v. Bureau of Labor Insurance (In re BLMIS)*,
   480 B.R. 501 (Bankr. S.D.N.Y. 2012)............................................................. 10, 11

*Picard v. Chais (In re BLMIS)*,
   440 B.R. 274 (Bankr. S.D.N.Y. 2010)................................................................. 11

*Picard v. Charles Ellerin Revocable Tr.*,
   2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012) ............................................ 12

*Picard v. Cohmad Secs. Corp.*,
   454 B.R. 317 (S.D.N.Y. 2011)................................................................. 12, 13, 14

*Picard v. Fairfield Inv. Fund Ltd. (In re BLMIS)*,
   2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ...................................... 17, 19

*Picard v. JPMorgan Chase & Co. (In re BLMIS)*,
   2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10, 2014) ........................................... 11

*Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*,
   460 B.R. 106 (Bankr. S.D.N.Y. 2011)................................................................. 11

*Picard v. Merkin (In re BLMIS)*,
   515 B.R. 117 (Bankr. S.D.N.Y. 2014)...................................................... 11, 12, 14

*Picard v. Shapiro (In re BLMIS)*,
   542 B.R. 100 (Bankr. S.D.N.Y. 2015)............................................................ 11, 12

*Regan v. Vill. of Pelham*,
   2021 WL 1063320 (S.D.N.Y. Mar. 19, 2021) ...................................................... 5

*Rushaid v. Pictet & Cie*,
   28 N.Y.3d 316 (2016) ......................................................................................... 6

*Secs. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
   501 B.R. 26 (S.D.N.Y. 2011).............................................................................. 16

*Secs. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
    2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ....................................................... 18, 19

*Secs. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    531 B.R. 439 (Bankr. S.D.N.Y. 2015) ........................................................................ 17

*Secs. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC)*,
    505 B.R. 135 (S.D.N.Y. 2013) ................................................................................... 19

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
    379 B.R. 5 (Bankr. E.D.N.Y. 2007) ........................................................................... 12

*SPV Osus Ltd.* v. *UBS AG*,
    882 F.3d 333 (2d Cir. 2018) ................................................................................... 8, 10

*SunEdison Litig. Tr. V. Seller Note, LLC (In re SunEdison, Inc.)*,
    620 B.R. 505 (Bankr. S.D.N.Y. 2020) ....................................................................... 19

*U.S. v. Sepulveda-Hernandez*,
    752 F.3d 22 (1st Cir. 2014) ....................................................................................... 14

*Walden v. Fiore*,
    571 U.S. 277 ............................................................................................................ 8, 10

## Statutes

15 U.S.C. § 78fff-2 ............................................................................................................ 15

Bankruptcy Code § 546 ..................................................................................... 17, 18, 19, 20

Bankruptcy Code §550 ................................................................................................. 17, 19

## Rules

Fed. R. Civ. P. 12 ................................................................................................................ 1

Fed. R. Bankr. P. 7012 ........................................................................................................ 1

Defendants Bank Hapoalim (Switzerland) Ltd. ("Hapoalim Switzerland") and Bank Hapoalim B.M. ("Hapoalim B.M.") (each, a "Defendant," and collectively, the "Hapoalim Defendants" or "Defendants") submit the following reply memorandum of law in further support of their motion to dismiss the Complaint[1] (Ex. 1[2]) of plaintiff Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") (the "Trustee"), pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, made applicable here by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.

## PRELIMINARY STATEMENT

The Trustee's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint (ECF No. 118) ("Opp.") fails to demonstrate that his allegations are sufficient to survive Defendants' motion. At the threshold, the Trustee fails to adequately allege a sufficient basis upon which to subject Defendants to the personal jurisdiction of this Court. Because each redemption constitutes a separate "claim" requiring its own jurisdictional showing, the Trustee must plead sufficient jurisdictional contacts by Defendants which "gave rise to" or relate to each individual redemption; this he has not done.

The Trustee also fails to plausibly plead that Defendants received redemptions that consisted of BLMIS customer property. The Complaint fails to allege the necessary linkage between redemptions from BLMIS by Fairfield and redemptions from Fairfield by Defendants. Nor can such a link plausibly be assumed, because the Trustee alleges that Fairfield transferred funds greatly in excess of any alleged avoidable transfers to Fairfield by BLMIS. Moreover, the Trustee fails to adequately allege that the initial transfers to Fairfield Sentry were themselves

---

[1] Citations in the form of "ECF No. __" refer to Adv. Pro. No. 12-01216 (Bankr. S.D.N.Y.), unless otherwise indicated. Capitalized terms not defined herein have the same meanings ascribed thereto in Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Complaint (ECF No. 115) ("Mem" or the "Memorandum").

[2] Citations in the form of "Ex. __" refer to exhibits to the Declarations of Scott S. Balber, filed March 22, 2022, and concurrently herewith ("Balber Decl.").

avoidable because the methodology he employs to do so is improper under the Federal Rules. Moreover, the Complaint fails to allege that recovery of the alleged subsequent transfer that falls outside of the two-year lookback window is excluded from the purview of the Bankruptcy Code safe harbor. Accordingly, the Complaint should be dismissed in its entirety.

## ARGUMENT

### I.    THE TRUSTEE'S CLAIMS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

#### A.    The Trustee Concedes that The Defendants Are Not Subject To The General Jurisdiction Of This Court

The Trustee fails to respond to Defendants' arguments for why the Court cannot exercise general jurisdiction over them (see Mem. at 10-11), instead asserting that "there is no need to reach the issue of general jurisdiction at this time." (Opp. at 6 n.3.) The Trustee therefore concedes the point. *See In re Jumei Int'l Holding Ltd. Secs. Litig.*, 2017 WL 95176, at *5 n.4 (S.D.N.Y. Jan. 10, 2017) ("arguments not addressed in [the] opposition brief are conceded").

#### B.    There is No Basis to Assert Specific Jurisdiction Over Either Defendant

As set forth in the Memorandum, the Complaint fails to state a *prima facie* case for personal jurisdiction over Defendants based on the standard laid out by Judge Bernstein in *Picard v. BNP Paribas S.A. (In re Bernard L. Madoff)*, 594 B.R. 167 (Bankr. S.D.N.Y. 2018) ("*BNP*").[3] In *BNP*, an action brought by the Trustee, Judge Bernstein held that the Trustee is required to establish jurisdiction based on "the Defendants' U.S. contacts related to the receipt of the fifty-nine subsequent transfers at issue," noting specifically that "[e]ach transfer is a separate claim" and "the Trustee must establish the court's jurisdiction with respect to each claim asserted." *BNP*, 594 B.R. at 190 (internal punctuation omitted).

---

[3] The Trustee concedes that "*BNP* is law of the case." (Opp. at 38.) Defendants agree.

The Trustee now makes three arguments for the exercise of specific jurisdiction, claiming that Defendants: "(1) purposefully targeted the New York securities market by investing in Sentry and other BLMIS feeder funds, knowing that their assets were managed and custodied by BLMIS in New York; (2) agreed to New York jurisdiction, forum selection, service of process, and choice of law provisions related to their Sentry investments; and (3) designated and used New York bank accounts to transact with Sentry in connection with their investments and redemptions." (Opp. at 8.) None is adequately supported, because no allegations in the Complaint connect these purported "contacts" to the redemptions at issue in this case. Knowing that he has failed to allege jurisdictionally sufficient contacts with respect to the redemption payments *at issue* in the case, the Trustee makes a number of arguments regarding purported contacts involving *other* Madoff feeder funds or the purported contacts of entities that are not Defendants. (*See* Opp. at 6-21.) These arguments are unavailing.

### 1.     Forum Selection and Choice of Law Clauses in Subscription Agreements are Insufficient Grounds to Establish Specific Jurisdiction over Either Defendant

The Trustee claims that forum selection and choice of law clauses in subscription agreements between Defendants and Fairfield Sentry are "strong jurisdictional contacts," citing specifically to two such agreements, one executed by each Defendant.[4] (*See* Murphy Decl. Exs. A, B.)[5] He concedes that these provisions do not demonstrate Defendants' consent to jurisdiction, but nonetheless claims they are relevant as a "jurisdictional contact." (Opp. at 14.) But this Court has previously held that those subscription agreements are entirely "irrelevant" to claims to recover redemption payments. *In re Fairfield Sentry Ltd.*, 2018 WL 3756343, at *11-12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*").

---

[4] The Complaint does not allege this as a basis for jurisdiction with respect to Hapoalim B.M. (*See* Compl. ¶¶ 6-9.)
[5] Citations to "Murphy Decl." are to the Declaration of Keith R. Murphy in Opposition to the Motion to Dismiss the Complaint, filed June 9, 2022.

The Trustee does not claim that the agreements constituting this purported "jurisdictional contact" were made in New York, were executed in New York, or were sent to New York.  (*See* Opp. at 14-15.)   Indeed, the two agreements cited by Defendants instead were addressed to Fairfield Sentry Ltd. in the Netherlands.  (*See* Murphy Decl. Exs. A, B.)  Moreover, this Court has already held that the forum selection and choice of law clauses are "irrelevant" to claims to recover redemption payments (*Fairfield I*, at *11-12).[6]  Contacts which are "irrelevant" to a claim cannot "give rise" or "relate" to such a claim.

## 2.    The Trustee Fails to Allege that the Correspondent Accounts Were Used in Connection with Redemptions at Issue in the Complaint

The Complaint fails to allege that Defendants used any New York-based correspondent accounts to receive any of the redemption payments at issue in *this* case.  (Mem. at 17.)   In an effort to obscure this deficiency, the Trustee expounds at length about the purported use of New York bank accounts to receive redemption payments in the abstract (Opp. at 5, 16-19), but avoids confronting the very question raised by Defendants, failing to point to a single allegation or supporting document going to the question of whether such redemption payments were the ones *at issue* in this Complaint.  The Trustee instead alleges that:  (i) Defendants sent subscription payments to and received redemptions from Sentry's account in New York (Opp. at 5, 18); (ii) subscription payments were deposited in BLMIS' account at JPMorgan Chase Bank in New York (*id.* at 5); (iii) Hapoalim Switzerland used a correspondent bank account at JPMorgan Chase in New York to receive redemption payments (*id.* at 5, 17, 18); (iv) Hapoalim BM used a bank

---

[6] The Trustee's cited cases are inapposite.  *Chase Manhattan Bank v. Banque Generale du Commerce*, 1997 WL 266968 (S.D.N.Y. May 20, 1997), *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), and *In re Motors Liquidation Co.*, 565 B.R. 275 (Bankr. S.D.N.Y. 2017) all involved circumstances where the existence of a choice of law provision was among potentially relevant contacts where the agreements at issue envisioned extensive ongoing contacts and relationships between the parties in the jurisdiction.  No such facts with respect to Defendants, Fairfield Sentry, and New York are alleged here.

account at its New York branch to receive redemption payments (*id.* at 5, 17)[7].  The Trustee separately argues that "Hapoalim Switzerland received at least 25 redemption payments from Sentry and Hapoalim BM received at least three, which redemptions together constitute all of the transfers being sought from it in the Trustee's Complaint" (*id.* at 5), but the Trustee fails to link Defendants' alleged contacts with New York to the actual redemptions enumerated in the Complaint and Murphy Decl. Exs. A, B, and G.

The only reference to Defendants' argument is a conclusory line in a different sub-section of the Opposition that "the Trustee is seeking to recover the very transfers that came through the U.S. bank accounts in New York analyzed above."  (Opp. at 19.)[8]  But because "[e]ach transfer is a separate claim" and "the Trustee must establish the court's jurisdiction with respect to each claim asserted" (*BNP*, 594 B.R. at 190 (internal punctuation omitted)), connecting the alleged redemption payments actually at issue to the use of New York bank accounts is crucial, as the Trustee's own authorities acknowledge.  *See* Opp. at 16 (citing *Eldesouky v. Aziz*, 2014 WL 7271219, at *6-7 (S.D.N.Y. Dec. 19, 2014) as "finding jurisdiction under New York long-arm statute based solely on defendant's use of a New York account to receive fraudulent conveyances *at issue*" (emphasis added) and *HSH Nordbank AG N.Y. Branch v. Street*, 2012 WL 2921874, at *4 (S.D.N.Y. July 18, 2012) as "finding jurisdiction under New York long-arm statute based solely on defendants' use of New York accounts to receive fraudulent conveyances *at issue*" (emphasis added)); Opp. at 18 (quoting *Esso Exploration & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 397 F. Supp. 3d 323, 346 (S.D.N.Y. 2019) as recognizing as the key point whether

---

[7] The Complaint does not allege this as a basis for jurisdiction with respect to Hapoalim B.M.  (Compl. ¶¶ 6-9.)

[8] This factual allegation is not pleaded in the Complaint and "[t]he Court may not… consider[] any factual allegations that were introduced for the first time in either Plaintiff's opposition affidavit or briefs. . . ."  *Regan v. Vill. of Pelham*, 2021 WL 1063320, at *4 (S.D.N.Y. Mar. 19, 2021) (citing *Colliton v. Bunt*, 709 F. App'x 82, 83 (2d Cir. 2018)); *Cal Distributor, Inc. v. Cadbury Schweppes Ams. Beverages, Inc.*, 2007 WL 54534, at *6 (S.D.N.Y. Jan. 5, 2007) ("It is axiomatic that a complaint cannot be amended by the briefs in opposition to a motion to dismiss.") (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989)).

Defendants "made purposeful use of [accounts] *for reasons related to the underlying dispute*" (emphasis added)); Opp. at 19 (quoting *HSH Nordbank*, 2012 WL 2921874, at *4 for the proposition that jurisdiction may be found where "claims against defendants arise directly out of the transfer of funds into defendant's New York accounts"). The Trustee has not made the necessary showing.

The absence of a pled allegation that the accounts were used for each redemption at issue is fatal to the Trustee's position.[9]  *See Neewra, Inc. v. Manakh Al Khaleej Gen. Trading and Contracting Co.*, 2004 WL 1620874, at *3-5 (S.D.N.Y. July 20, 2004).  In *Neewra*, plaintiff alleged jurisdiction over defendant Kuwait Finance House ("KFH") on the basis of a New York correspondent bank account that was allegedly used in connection with a transaction at issue in the case. *Id.* The court rejected plaintiff's argument because there were two separate transactions involved, the first of which used the correspondent account and the second of which did not. *Id.* at *4. Just as the court did in *Neewra*, this Court should disregard purported contacts not alleged to relate to the specific payments at issue in this case, and dismiss for lack of personal jurisdiction.

### 3.    Unrelated and Unalleged Contacts Cannot Support Specific Jurisdiction

The Trustee alleges specific jurisdiction over Hapoalim Switzerland on the basis of purportedly "significant other contacts" that occurred in connection with "other BLMIS feeder funds," specifically citing to the "Primeo" fund and the "Kingate Global" fund. (Opp. at 9-10, 15-

---

[9] The Trustee's cited case authorities are in accord.  *See Licci v. Lebanese Can. Bank, SAL*, 20 N.Y.3d 327, 340 (2012) (crediting allegations that "the alleged breaches occurred when LCB used the New York account"); *Gucci Am. v. Weixing Li*, 135 F. Supp. 3d 87, 94 (S.D.N.Y. 2015) (crediting allegations "that Defendants' use of BOC's correspondent account at Chase and BOC's relationship with Chase in New York to effectuate wire transfers between the United States and China were crucial components of their counterfeiting operation."); *Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 327 (2016) (highlighting that "the Citibank, New York account was used to wire the bribes to a Pictet account in Geneva" and then "Pictet credited the funds in that correspondent bank account to [an account at] TSJ, an essential step in the money-laundering scheme."); *Official Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic Bank*, 549 B.R. 56, 68 (S.D.N.Y. 2016) ("[W]hen a defendant purposely selects and uses a correspondent bank account to effectuate a particular transaction, and a plaintiff later files a lawsuit asserting a cause of action *arising out of that transaction*, the defendant can hardly claim that it could not have foreseen being haled into court in the forum in which the correspondent bank account it had selected is located.") (emphasis added).

16; Murphy Decl. Exs. C, D, H, I, J, K.)  But as the Trustee concedes, his "Complaint seeks to

recover solely transfers out of Sentry."  (Opp. at 4; *see also* Opp. at 1 n.1 (noting the Trustee's

dismissal of all claims pertaining to Kingate Global Fund, Ltd.).)  Because applicable precedent

requires that each relevant contact give rise to each claim to recover each redemption, the Court

should attach no relevance to purported "contacts" involving other funds and investments not at

issue in this case.  Notably, the Trustee does not cite any case law to the contrary, offering only

*CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986) for the unremarkable proposition

that questions of agency for jurisdictional purposes are determined situationally and *Liberatore v.*

*Calvino*, 293 A.D. 217, 221 (1st Dep't 2002) for the unremarkable proposition that written,

telephonic, and electronic communications may be jurisdictionally relevant.  (*See* Opp. at 15-16.)

The Trustee's sole argument that the Primeo contacts "are jurisdictional contacts" is that "all the

feeder funds were interchangeable vehicles for investing with BLMIS."  (Opp. at 16.)  But

interactions with other funds concerning other investments cannot, as a matter of law, support

specific jurisdiction over this action to recover the specific Fairfield Sentry redemptions alleged.

*Neewra*, 2004 WL 1620874, at *4.  Moreover, the Trustee's own submissions note that the various

feeder funds were not interchangeable, but substantially different in practice.  (*See, e.g.*, Murphy

Decl. Ex. K at 2 (noting "difference[s] in the funds" and contrasting Fairfield and Primeo).)

### 4.    The Trustee's Alleged Jurisdictional Contacts Do Not Establish Jurisdiction

Judge Bernstein in *BNP* instructed that the Court must analyze the "relationship among the

defendant, the forum, and the litigation" and that "the relationship must arise out of contacts that

the defendant *himself* creates with the forum State."  *BNP*, 594 B.R. at 189 (quoting *Walden v.*

*Fiore*, 571 U.S. 277, 283-284) (emphasis in original).  Judge Bernstein's "jurisdictional analysis

focuses on the Defendants' U.S. contacts *related to the receipt* of the fifty-nine subsequent

transfers *at issue*" and considers that "[e]ach transfer is a separate claim."  *Id.* at 190 (emphasis

added).  Judge Bernstein also cited Second Circuit precedent acknowledging the need to examine

whether there is a proximate cause connection between the alleged contacts and the plaintiff's

injury.  In sum, the Trustee must plead specific New York contacts which proximately caused the

redemptions at issue; this he has not done.  *See id.* (citing *SPV Osus Ltd.* v. *UBS AG*, 882 F.3d

333, 344 (2d Cir. 2018)).  While the Trustee argues that *Osus* "is questionable following the

Supreme Court's decision in *Ford Motor*" *Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S.Ct. 1017,

1026-30 (2021) (Opp. at 21, n.10), the Second Circuit's *Osus* decision remains a controlling

precedent, as numerous courts in this Circuit have recognized post-*Ford*.  *See, e.g.*, *In re Lifetrade

Litig.*, 2021 WL 1178087, at *4 (S.D.N.Y. Mar. 29, 2021); *Allianz Global Investors GMBH v.

Bank of Am. Corp.*, 2021 WL 3192814, at *5 (S.D.N.Y. July 28, 2021).  *Osus* recognized that

proximate cause is required when the alleged forum contacts are minimal rather than extensive, as

is the case here, and *Ford* is perfectly consistent with this holding.  *See, Osus*, 882 F.3d at 344; *cf

Ford*, 141 S.Ct. at 1028 ("Ford had advertised, sold, and serviced those two car models [involved

in the accidents at issue in the case] in both states for many years.").

In *BNP*, the contacts related to the redemptions *at issue in the case* that the Court found

sufficient were far greater than those alleged here.  The *BNP* court found that defendants

maintained offices and employees in New York.  594 B.R. at 188-89.  The defendants relied on

their own Fund Derivatives Group in New York and the subsequent transfers at issue in *BNP*

"arose… from the Fund Derivatives Group's New York contacts."  *Id.* at 190.  For additional

redemptions *at issue*, defendants were direct investors in the relevant feeder funds and the

redemptions received therefrom "were the proximate cause of the injuries that the Trustee seeks

to redress."  *Id.* at 191.  As discussed *supra*, at 4-6, the Trustee makes no such showing here.

Similarly, the level of alleged contacts in this case falls short of those that this Court found

sufficient in *Picard v. Banque Syz & Co., SA*, Adv. Pro. No. 11-02149, ECF. No. 167 (CGM) (the

"Syz Ruling") and *Picard v. Multi-Strategy Fund Ltd.*, Adv. Pro. No. 12-01205, ECF. No. 122 (the "Multi-Strategy Ruling").  The Court in the Syz Ruling credited allegations that Banque Syz enticed its customers to increase their investments in the Madoff feeder funds by offering them loans to fund the investments, that Banque Syz maintained its own account with BLMIS in New York, and filed a customer claim in this SIPA proceeding.  (Syz Ruling at 6-7.)  In the Multi-Strategy Ruling, the Court noted that:  (i) the Trustee "devoted over five pages of his twenty-seven-page Complaint to [d]efendant's contacts with New York"; (ii) defendant "was referred to as a 'Madoff addict' by a partner at Fairfield Greenwich Group"; (iii) defendant "asked about additional capacity for Fairfield Sentry on at least seven occasions"; (iv) persons associated with defendant asked specific diligence-related questions regarding Madoff; and (v) defendant's president and other associated persons met with Fairfield Greenwich Group partners in New York. (Multi-Strategy Ruling at 6-8.)  In the instant case, the Trustee makes no such allegations with respect to the redemption payments at issue, and in fact the very subscription and redemption documents that he attaches to the Opposition (setting aside their lack of alleged connection to the redemption payments at issue in the case) show Defendants' redemption and subscription documents being transmitted to Fairfield Sentry via Citco Fund Services (Europe) B.V. in the Netherlands.  (*See, e.g.*, Murphy Decl. Exs. A at 2, B at 2, G at 2, 7.)

Judge Bernstein contrasted the contacts alleged in *BNP* with those found lacking in *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016), also referenced in the Memorandum (*see* Mem. at 17-18).  *BNP*, 594 B.R. at 191-92.  Contrary to the Trustee's claim, *BNP* distinguished *Hill* on its facts, and did not find the case inapplicable to the Trustee's avoidance claims writ large, but rather merely found it inapplicable to the analysis "arising from the Defendants' redemptions as investors in the Tremont Funds *which arose from their New York contacts*" therewith.  *Id.* at 192 (emphasis added).

**5.      Defendant's Alleged Knowing Investment in BLMIS Via Fairfield Sentry Does Not Confer Jurisdiction**

Given the insufficiency of the Trustee's allegations under the *BNP* framework, he falls back on *Picard v. Bureau of Labor Insurance (In re BLMIS)*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012) ("*BLI*") in support of his jurisdictional claims, relying on *Fairfield Sentry's* contacts with BLMIS in New York to assert jurisdiction over Defendants. *BLI* preceded the Supreme Court's articulation in *Walden* of the operative framework for specific jurisdiction and, to the extent it is inconsistent with the analytical framework of *BNP*, the analysis of *BNP* should control. Notably, Judge Bernstein's *BNP* decision does not cite *BLI* in its jurisdictional analysis, relying instead, *inter alia*, on *Walden* and *Osus*, as did the Memorandum. *See BNP*, 594 B.R. at 189-92.

Even if *BLI* remained good law on this point, its facts differ in essential ways from this case. In *BLI*, the Trustee's suit was "based upon [the subsequent transferee's] investment of tens of millions of dollars in Sentry with the specific goal of having funds invested in BLMIS in New York, *with intent to profit therefrom*." (Opp. at 10 (quoting *BLI*, 480 B.R. at 506) (emphasis added).) But in *BLI*, the defendant invested its own money, "intend[ing] to profit from this U.S.-based investment." *BLI*, 480 B.R. at 517. This was the "seed" that defendant "intentionally tossed… from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits" from. *See* Syz Ruling at 7 (quoting *BLI*, 480 B.R. at 506). But here, there is no allegation that Defendants (as opposed to their customers) had any financial stake in the relevant investments, or stood or intended to profit from them.

Absent *BLI*, the Trustee is left to cite only inapposite cases that are easily distinguishable. (*See* Opp. at 9.) In *In re Picard*, 917 F.3d 85, 91, 105 (2d Cir. 2019), the Second Circuit referenced that investors "knew where their money was going" in the context of interpreting a substantive section of the Bankruptcy Code in connection with international comity, not in relation to personal

jurisdiction.  And in *Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*, 460 B.R. 106, 118 (Bankr. S.D.N.Y. 2011) the defendant was itself a BLMIS feeder fund.[10]

As discussed in the Memorandum and above, the Trustee cannot allege sufficient minimum contacts to justify the exercise of personal jurisdiction over either Defendant, and so exercising jurisdiction on the minimal basis put forward would not be reasonable.  And the Trustee's request in the alternative for jurisdictional discovery (Opp. at 22-23) fails as he has not identified any disputed issue of jurisdictional fact that would be illuminated by such discovery.  The Trustee's complaint should be dismissed for lack of personal jurisdiction.

## II.    THE TRUSTEE FAILS TO ADEQUATELY PLEAD THAT DEFENDANTS RECEIVED CUSTOMER PROPERTY

### A.    The Trustee Has Failed to Carry His Pleading Burden

The Trustee does not dispute that he has failed to plead facts that "tie any initial transfer to any subsequent transfer or Subsequent Transferee," *Picard v. Shapiro (In re BLMIS)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015), arguing instead that he is not required to do so.  (*See* Opp. at 23-25.)  But *Shapiro,* and other relevant precedent, does indeed require the Trustee to plead facts indicating that the alleged subsequent transfers were derived from recoverable customer property. *See Shapiro*, 542 at 119; *see also Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149-50 (Bankr. S.D.N.Y. 2014) ("[T]he complaint must allege facts that support the inference that the funds at issue originated with the debtor") (internal punctuation omitted); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that a plaintiff is required to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")

---

[10] Similarly, the Court's citation to *Picard v. JPMorgan Chase & Co. (In re BLMIS)*, 2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014) (*see* Opp. at 11) is unavailing, as it relies on *BLI*, *Maxam*, and *Picard v. Chais (In re BLMIS)*, 440 B.R. 274, 279-82 (Bankr. S.D.N.Y. 2010) ("but for transfers of BLMIS funds [that defendant directly maintained with BLMIS], there could be no fraudulent transfer claims against her.").

While the Trustee argues that he "did in fact allege *more* here than in *Shapiro*," he cites only to his identification of "the mediate transferors or transferees" and "the dates or amounts of the subsequent transfers." (Opp. at 25 (emphasis in original).) A mere listing of alleged initial transfers (dating as far back as the 1990s[11]) and alleged subsequent transfers (Compl. Exs. E, F, G) with only conclusory allegations connecting them does not tie any initial transfer to any subsequent transfer, because "barebones allegations that the funds at issue were transferred to the Subsequent Transferees, without more detail, are insufficient" (*Shapiro*, 542 B.R. at 119). Such contentions "stop[] short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

The additional authorities cited by the Trustee demonstrate the inadequacy of his allegations here. *See Merkin*, 515 B.R. at 150 ("[S]everal subsequent transfers took place contemporaneously or shortly after an initial transfer… implying linkage"); *Picard v. Charles Ellerin Revocable Tr.*, 2012 WL 892514 (Bankr. S.D.N.Y. Mar. 14, 2012) (individual defendant received $6,200 check from trust defendant mere two weeks after it received $25,000 from BLMIS); *45 John Lofts, LLC v. Meridian Cap. Grp. LLC*, 599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019) (withdrawal in amount equal to deposits made within one business day); *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 13, 30 (Bankr. E.D.N.Y. 2007) (alleged subsequent transfers "were preceded by fraudulent transfers" "in amounts sufficient to cover the [subsequent] transfers," within two weeks); *Picard v. Cohmad Secs. Corp.*, 454 B.R. 317, 341 (S.D.N.Y. 2011) ("*Cohmad I*") (pleading of subsequent transfers sufficient where "the

---

[11] To the extent that this Court intends to consider monies received by Fairfield Sentry prior to December 11, 2002 (*see* Multi-Strategy Ruling at 21-22), this cannot be squared with applicable law or the Trustee's allegations, which concern only subsequent transfers of allegedly avoidable initial transfers (*i.e.*, those within the six-year lookback period). Moreover, this contention lacks any limiting principle, and taken to its logical conclusion could result in rendering at risk for recovery funds based on initial transfers going as far back in time as monies can theoretically be followed.

Trustee alleges that the amounts of Commissions specified by BLMIS on the Payment Schedules *correspond* to the amounts paid by BLMIS to Cohmad and, subsequently to the Cohmad Representatives") (emphasis added); *see also* Balber Decl. Ex. 14 (*Picard v. Mayer*, Adv. Pro. No. 20-1316, ECF No. 1, Ex. B at 16, Ex. C, Ex. D (initial transfer of $50 million, immediate subsequent transfer of $50 million, and mediate subsequent transfer of $30.65 million all occurred within days)).

Defendants are not asking for a "dollar-for-dollar accounting" or "tracing analysis" (Opp. at 23), but only for the Trustee to plead facts plausibly alleging linkage. Far from having "outlin[ed] the relevant pathways through which customer property was transferred from BLMIS to Sentry and subsequently to Defendants" (Opp. at 24), the Trustee has simply listed redemptions from BLMIS which are temporally disconnected from the Fairfield redemptions and which fail to correlate, even generally, in dollar amount. The Trustee's invocation of "commingling" to avoid his pleading responsibilities (Opp. at 25-27) fares no better where, as shown in the Memorandum, there could not have been any "commingling" because there was no BLMIS customer property remaining at Fairfield Sentry at numerous points when Defendants made redemptions. (Mem. at 23-26.) Defendants are not applying any kind of undisclosed expert methodology (Opp. at 26-27), but rather simple arithmetic accepting the Trustee's own allegations that every redemption payment from Sentry constituted customer property made within adversary proceedings in this SIPA proceeding, which constitute the "same case." [12] Simple arithmetic is not expert analysis.

---

[12] To the extent that the Trustee contends that it is improper to consider his allegations *in toto*, this cannot be squared with the Court's reminder that "[c]ases within this SIPA proceeding are filed in the same 'proceeding'—the SIPA proceeding." (Syz Ruling at 14-15; Multi-Strategies Ruling at 14-15 (each citing, *inter alia*, *In re Terrestar Corp.*, 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."); *Bourdeau Bos., Inc. v. Montagne (In re Montagne)*, 2010 WL 271347, at *6 (Bankr. D. Vt. Jan. 22, 2010) ("[D]ifferent adversary proceedings in the same main case do not constitute different 'cases.'").)

*See, e.g.*, *Edmondson v. RCI Hosp. Holdings, Inc.*, 2020 WL 1503452, at *6 (S.D.N.Y. Mar. 30, 2020) (citing *U.S. v. Sepulveda-Hernandez*, 752 F.3d 22, 34 (1st Cir. 2014)).

**B.      The Trustee's Pleading Failure is Not Excused by Any Lack of Information**

As Defendants demonstrated in the Memorandum (at 20-22), the Trustee is not hampered by a lack of information.  (*Cf* Opp. at 27-28.)  The Trustee does not dispute that he had access to the Fairfield Liquidators' documents for more than a decade.  (Mem. at 20-21.)  While the Trustee denies "hav[ing] *all* of Sentry's books and records" (Opp. at 27 n.13 (emphasis added)), he fails to explain what information he purportedly lacks, any steps he has taken in the intervening decade to obtain the information that he is missing, or how the alleged missing information could cure his pleading failures.[13]  Nor does he explain what "discovery" in this case or from "the Fairfield management defendants" in the Fairfield Action would fill any such information gaps.  (*See* Opp. at 27 & n.13.)  The records of Fairfield Sentry and BLMIS would enable the Trustee to detail which redemption payments (if any) contained BLMIS customer property, and thus his inability to provide such detail is inexcusable.[14]

**C.      The Trustee Fails to Justify Seeking Recovery from Defendants Who Are Not "Transferees" of Customer Property.**

The Trustee does not adequately address Defendants' contention that he has alleged billions of dollars more in subsequent transfers of BLMIS customer property out of Fairfield Sentry than he has alleged in initial transfers of BLMIS customer property into Fairfield Sentry. (*See* Mem. at 22-23; Opp. at 28-29.)  This fundamental misalignment undermines the very plausibility of the Trustee's allegation that the property he is seeking to recover was ever customer

---

[13] The Trustee also fails to acknowledge that the Fairfield Sentry Liquidators conceded to this Court in 2010 that they are in possession of most of the books and records of the Fairfield Funds.  (*See* Decl. of Kenneth Krys, *In re Fairfield Sentry Ltd.*, No. 10-13164 (Bankr. S.D.N.Y. July 16, 2010) ECF. No. 40 ¶¶ 15, 19.)

[14] The Trustee's cited authorities, which support the proposition that pleading deficits may be forgiven where *defendants'* records were necessary to demonstrate the plausibility of plaintiff's allegations, are inapposite. *See, e.g.*, *Merkin*, 515 B.R. at 151; *Cohmad I*, 454 B.R. at 329.

property in the first place.    Contrary to the Trustee's claim, this is not an issue of potential "double

recovery," a "dollar-for-dollar accounting," or expert opinion, but rather an insurmountable flaw

in his pleading.[15]

Potentially duplicative recoveries may be received from "immediate or mediate

transferee[s]" of an initial transferee, which are those "who take[] in a later transfer down the chain

of title or possession." *Helms v. Metro. Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 656 (Bankr.

N.D. Ill. 2019).    However, while the Trustee can pursue potentially duplicative recoveries of the

same initial transfer, he cannot recover sums from subsequent transfers that were never derived

from initial transfers of customer property in the first place.    *Cf* 15 U.S.C. § 78fff-2(c)(3)

(authorizing the SIPA trustee to recover "property transferred by the debtor which, except for such

transfer, *would have been Customer Property*") (emphasis added).    By contrast, the Trustee alleges

across this SIPA proceeding that approximately $3 billion in avoidable initial transfers corresponds

to $5 billion in recoverable subsequent transfers, where the facts of the Trustee's own alleged

initial transfers show the feeder funds did not receive sufficient contemporaneous initial transfers

to fund the bulk of the alleged subsequent redemptions.

The Trustee has failed to adequately plead that Defendants received subsequent transfers

of BLMIS Customer Property.

## III.    THE TRUSTEE ALSO FAILS TO MEET HIS RULE 8 PLEADING BURDEN MORE BROADLY

The Trustee's attempt to plead the avoidability of the initial transfers by doing nothing

more than incorporating wholesale the entirety of his (since superseded) Amended Complaint in

---

[15] If, as this Court has held, "Fairfield Sentry did not have any other property to give" besides BLMIS customer property (Multi-Strategies Ruling at 22; Syz Ruling at 25), then the Trustee is by definition seeking approximately $2 billion to which he has no legal entitlement.    Far from making an "intricate factual argument," Defendants are simply adding up the Trustee's allegations.    (*See* Mem. at 22-23.)

another adversary proceeding is inconsistent with the Federal Rules.  (*See* Mem. at 26-29.)  *See Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670, 680 (Bankr. E.D. Pa. 2010) (even where incorporation may be proper, dismissing complaint for failure to satisfy Rule 8 where the complaint "leaves the reader—the Defendant and the Court—to sift through many pages of attached material trying to figure out which fact goes with which allegation").  Further, in *Secs. Inv. Pro. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 501 B.R. 26, 37 (S.D.N.Y. 2011), the issue of the propriety of incorporation was not actually litigated, and was referenced in only one sentence of an opinion addressing whether the Trustee could recover a subsequent transfer without first having obtained a judgment against the initial transferee that avoided the initial transfer.  To the extent that this Court reads the case otherwise (*see, e.g.*, Multi-Strategies Ruling at 14), the case nevertheless did not address a situation where, as here, the complaint that is sought to be incorporated has since been superseded by an amended pleading, and therefore has been "render[ed] of no legal effect."  *See, e.g.*, *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020); *see also* Mem. at 29.  The Opposition also fails to address Defendants' argument that the Fairfield Amended Complaint has been superseded (*see* Mem. at 29; Opp. at 27-34), thus conceding the point.  *In re Jumei Int'l Holding Ltd. Secs. Litig.*, 2017 WL 95176, at *5 n.4 (S.D.N.Y. Jan. 10, 2017) (citing *In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) for the proposition that "arguments not addressed in opposition brief are conceded").

Arguments that Defendants need only respond to "allegations of the avoidability of the initial transfers" or that "this Court may take judicial notice of the operative Second Amended Complaint against Fairfield and its recent decision" in connection therewith are lacking.  (*See* Opp. at 33-34.)  The former impermissibly seeks to shift the burden to Defendant to determine which of the 798 purportedly incorporated paragraphs requires response and which do not – it is *the*

*Trustee's* burden under the Federal Rules to so identify.  Meanwhile the latter fails because:  (i) the Trustee has not purported to incorporate the Fairfield Second Amended Complaint; and (ii) this Court's decision in *Picard v. Fairfield Inv. Fund Ltd. (In re BLMIS)*, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) did not address the propriety under the Federal Rules of wholesale incorporation of a superseded complaint.

The Complaint must therefore be dismissed.

## IV.    THE TRUSTEE'S CLAIMS ARE BARRED BY SECTION 546(e) OF THE BANKRUPTCY CODE

### A.    The Trustee Fails to Dispute that the Elements of the Safe Harbor are Satisfied

As discussed in the Memorandum (at 30-38), the alleged initial transfers meet the elements of the statutory safe harbor under Bankruptcy Code § 546(e).  The Trustee does not respond to this argument except to:  (i) assert that "this is all irrelevant" (Opp. at 35); (ii) state that he "does not concede" that these elements are met, without any argument as to why they do not (*id.* at 35 n.18); and (iii) claim that *Secs. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 474 (Bankr. S.D.N.Y. 2015) forecloses an argument that the alleged initial transfers were "for the benefit of" Defendants (*id.*).  But that case (and the authorities cited therein) concerned the interpretation of the phrase "for whose benefit" in the particular context of Bankruptcy Code §550(a)(1) and (2), not with respect to the availability of the § 546(e) safe harbor.  *Sec. Inv. Prot. Corp.*, 531 B.R. at 474.  While § 550(a) draws an explicit distinction between the "entity for whose benefit" an initial transfer was made and "any immediate or mediate transferee of such initial transferee," § 546(e) makes no such distinction.  The construction of §550(a) thus does not bear on the construction of § 546(e), and *Sec. Inv. Prot. Corp.* is inapposite.

### B.    *Cohmad II* Does Not Preclude Defendants from Invoking the Safe Harbor

The Trustee argues flatly that "a subsequent transferee cannot assert Section 546(e) protections where the Trustee has adequately pled the initial transferee's actual knowledge." (Opp. at 36-38 (citing *Secs. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad II*")).)  In *Cohmad II*, Judge Rakoff held that the relevant "knowledge" is that of the party from which the Trustee seeks to recover, holding that:

> (1) Where the Trustee has sought to avoid transfers to an initial transferee, the avoidance of which would otherwise be barred by Section 546(e). . . , the initial transferee will not be able to prevail on a motion to dismiss some or all of the Trustee's avoidance claims simply on the basis of the Section 546(e) "safe harbor" *if* the Trustee has alleged that the initial transferee had actual knowledge of Madoff Securities' fraud; and

> (2) Where the Trustee has sought to recover transfers made to a subsequent transferee, the avoidance of which would otherwise be barred by Section 546(e) as to the initial transferee, the subsequent transferee will not be able to prevail on a motion to dismiss some or all of the Trustee's avoidance claims simply on the basis of the Section 546(e) "safe harbor" *if* the Trustee has alleged that **the subsequent transferee** had actual knowledge of Madoff Securities' fraud.

*Cohmad II*, 2013 WL 1609154, at *1 (italics in original).

*Cohmad II* is clear that it is the subsequent transferee's knowledge, not the initial transferee's, which is dispositive of the availability of the safe harbor in subsequent transfer cases. The line the court drew in *Cohmad II* was thus between defendants with and without actual knowledge of the alleged fraud, not between initial and subsequent transferees. *See, e.g.*, *id.*, at *4 ("[I]f the allegations adequately allege that a *defendant* had actual knowledge of Madoff's scheme, such a transferee stands in a different posture from an innocent transferee, even as concerns the application of Section 546(e)."); *id.* at *7 (applying to subsequent transferees the same test the court outlined with respect to initial transferees, namely that "if the Trustee sufficiently alleges that the transferee from whom he *seeks to recover* a fraudulent transfer knew of Madoff Securities'

18

fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor" as the "one caveat" to the general rule that the Trustee may not proceed against a subsequent transferee where the safe harbor applies (except if he can invoke Section 548(a)(1)(A) (emphasis added)).[16]

This is consistent with the purpose of the safe harbor, "protecting the reasonable expectations of investors who believed they were signing a securities contract." *Id.* at *4; *see also* Opp. at 38 (arguing that "the point of the actual knowledge exception… is to restrict all *bad actors* from hiding behind the safe harbor" (emphasis added)).

By the Trustee's reading of *Cohmad II*, the safe harbor would be inapplicable to *any* action involving a subsequent transferee of Fairfield Sentry. But this is inconsistent with Judge Rakoff's subsequent explanation of his own ruling. *See, e.g.*, *Picard v. ABN AMRO Bank (Ir.) Ltd. (Secs. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC)*, 505 B.R. 135, 142 (S.D.N.Y. 2013) (Rakoff, J.) (explaining that in *Cohmad II* the court "found that in the majority of cases, section 546(e) requires the dismissal of the Trustee's avoidance claims, except those brought under section 548(a)(1)(A) and related recovery claims under section 550(a)"). And neither *BNP* nor *SunEdison Litig. Tr. V. Seller Note, LLC (In re SunEdison, Inc.)*, 620 B.R. 505 (Bankr. S.D.N.Y. 2020), cited by the Trustee's Opposition at 37-38, addressed the proposition that *Cohmad II* bars innocent subsequent transferees from asserting the safe harbor where the initial transferee had actual knowledge of the fraud.

---

[16] Additional commentary from Judge Rakoff in *Cohmad II* supports the proposition that the safe harbor is available as a defense to recovery of allegedly fraudulent transfers, and not that he "specifically limited the safe harbor to avoidance claims" (Opp. at 37). *See Cohmad II*, 2013 WL 1609154, at *3 ("[T]he Court held, both in *Katz* and *Greiff*, that Section 546(e) required the dismissal of the Trustee's avoidance claims except those brought under Section 548(a)(1)(A) and related recovery claims under Section 550(a)."); *see also Fairfield Inv. Fund*, 2021 WL 3477479, at *3 (Morris, C.J.) ("Where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers . . . the subsequent transferee is nonetheless entitled to raise a § 546(e) defense against recovery of those funds.") (citing *Cohmad II*) (emphasis added); *see also Kelley v. Safe Harbor Managed Acct. 101, Ltd.*, 31 F.4th 1058, 1063-64 (8th Cir. 2022) (cited at Opp. at 36, 39) (considering application of safe harbor to case where adversary proceeding alleged that a subsequent transfer "was recoverable under 11 U.S.C. §§ 550(a) and 551").

Lastly, the Trustee's hypothetical worry that Defendants' argument would "allow an initial transferee—who had knowledge of the fraud and was unable to satisfy a judgment (like Sentry)—to place fraudulently transferred monies with a subsequent transferee and out of the reach of a trustee" is a red herring. Defendants are the parties alleged to have caused the redemption payments at issue in this case, not Fairfield Sentry, and Defendants are innocent subsequent transferees.

Defendants are thus entitled to rely on the protection of Section 546(e).

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the Complaint in its entirety.

Dated: New York, New York
     July 13, 2022

**HERBERT SMITH FREEHILLS
NEW YORK LLP**

By:   */s/ Scott S. Balber*
    Scott S. Balber
    Jonathan C. Cross
    450 Lexington Avenue
    New York, New York 10017
    Telephone: (917) 542-7600
    scott.balber@hsf.com
    jonathan.cross@hsf.com

*Attorneys for Defendants Bank Hapoalim (Switzerland) Ltd. and Bank Hapoalim B.M.*