**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (BRL) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 12-01004 (CGM) |
| Plaintiff, | |
| v. | |
| FULLERTON CAPITAL PTE. LTD., | |
| Defendant. | |

**FULLERTON CAPITAL PTE, LTD.'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

FACTS ................................................................................................................. 2

PROCEDURAL POSTURE .................................................................................... 4

APPLICABLE PLEADING STANDARD.................................................................. 4

ARGUMENT ........................................................................................................ 5

I.      SECTION 546(e) PROHIBITS THE TRUSTEE FROM RECOVERING THE
        TRANSFER AT ISSUE HERE, WHICH TOOK PLACE MORE THAN TWO
        YEARS BEFORE DECEMBER 8, 2008 ............................................................ 5

        A.      The Alleged Initial Transfers Were Made By or To Covered Entities ....... 7

        B.      The Alleged Initial Transfers Were "Settlement Payments" and Made
                "in Connection with Securities Contracts" .................................................. 9

        C.      The Trustee Has Not Alleged that Fullerton Had Actual Knowledge of
                the Madoff Fraud ...................................................................................... 11

II.     THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE TRUSTEE
        FAILS TO ALLEGE THE ELEMENTS NECESSARY TO RECOVER
        UNDER § 550(a). ........................................................................................... 15

III.    THE TRUSTEE HAS FAILED TO ADEQUATELY PLEAD
        AVOIDABILITY OF THE ALLEGED INITIAL TRANSFERS, AND
        ADOPTION OF THE ENTIRE FAIRFIELD AMENDED COMPLAINT BY
        REFERENCE IS  IMPROPER .......................................................................... 22

IV.     THIS COURT LACKS PERSONAL JURISDICTION OVER FULLERTON ... 25

CONCLUSION……………………………………………………………………..29

## TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page(s)**

*Aguas Lenders Recovery Grp. v. Suez, S.A.*,
    585 F.3d 696 (2d Cir. 2009)......................................................................................19, 26

*Angell v. Ber Care, Inc.* (*In re Caremerica, Inc.*),
    409 B.R. 737 (Bankr. E.D.N.C. 2009).................................................................................16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................... *passim*

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................4, 5, 16

*Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
    369 F.3d 212 (2d Cir. 2004)........................................................................................2

*Buchwald Capital Advisors LLC v. JP Morgan Chase Bank, N.A.* (*In re M. Fabrikant & Sons*),
    No. 06-12737 (SMB), 2009 WL 3806683 (Bankr. S.D.N.Y. Nov. 10, 2009)...................17, 18

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)...............................................................................................27, 29

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014).......................................................................................................25

*David v. Bifani*,
    No. 07-cv-00122-MEH-BNB, 2007 WL 1216518 (D. Colo. Apr. 24, 2007).........................24

*Dean St. Cap. Advisors, LLC v. Otoka Energy Corp.*,
    No. 15-cv-824 (RJS), 2017 WL 476720 (S.D.N.Y. Feb. 2, 2017) .........................................25

*Enron Corp. v. Bear, Stearns Int'l Ltd.* (*In re Enron Corp.*),
    323 B.R. 857 (Bankr. S.D.N.Y. 2005)................................................................................8

*Fairfield Sentry Ltd. v. Citco Global Custody NV*,
    No. 19-1122 (SMB) (Bankr. S.D.N.Y. Nov. 26, 2019).........................................................20

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam* (*In re Fairfield Sentry Ltd.*),
    Adv. No. 10-03496, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) .................6, 7, 8, 9

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam* (*In re Fairfield Sentry Ltd.*),
    No. 10-13164 (SMB), 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018)................9, 25, 26

*Ferrante Equip. Co. v. Lasker-Goldman Corp.*,
    26 N.Y.2d 280 (1970)....................................................................................................27

*Goldberg v. Bank of Alex Brown (In re Goldberg)*,
 168 B.R. 382 (B.A.P. 9th Cir. 1994) ..................................................................16

*Gowan v. Novator Credit Management (In re Dreier LLP)*,
 452 B.R. 467 (Bankr. S.D.N.Y. 2011) .................................................................16

*Hau Yin To v. HSBC Holdings, PLC*, No. 15-CV-3590-LTS-SN, 2017 WL
 816136, . (S.D.N.Y. Mar. 1, 2017) .....................................................................27

*Heinert v. Bank of Am. N.A.*,
 835 F. App'x 627 (2d Cir. 2020) ...................................................................11, 19

*In re Bozel S.A.*,
 434 B.R. 86 (Bankr. S.D.N.Y.) ...........................................................................29

*In re Enron Creditors Recovery Corp.*,
 651 F.3d 329 (2d Cir. 2011) ............................................................................7, 12

*In re Int'l Admin. Servs., Inc.*,
 408 F.3d 689 (11th Cir. 2005) .............................................................................15

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
 917 F.3d 85 (2d Cir. 2019) ...............................................................................4, 22

*In re Tribune Co. Fraudulent Conveyance Litig.*,
 10 F.4th 147 (2d Cir. 2021) .................................................................................10

*In re Tribune Co. Fraudulent Conveyance Litig.*,
 946 F.3d 66 (2d Cir. 2019) ...............................................................................6, 8

*Intel Corp. Inv. Policy Comm. v. Sulyma*,
 140 S. Ct. 768 (2020) ...........................................................................................11

*Kundrat v. BMC Indus., Inc. (In re BMC Indus Inc.).*,
 359 B.R. 725 (Bankr. D. Minn. 2007) .................................................................16

*Lavazza Premium Coffees Corp. v. Prime Line Distrib. Inc.*,
 No. 20 Civ. 9993 (KPF), 2021 WL 5909976 (S.D.N.Y. Dec. 10, 2021)..............26

*Law v. Siegel*,
 571 U.S. 415 (2014) .............................................................................................14

*Letom Mgmt. Inc. v. Centaur Gaming, LLC*,
 No. 17 Civ. 3793 (PAE), 2017 WL 4877426 (S.D.N.Y. Oct. 27, 2017) ..............28

*Lyon v. Forbes (In re Forbes)*,
 372 B.R. 321 (B.A.P. 6th Cir. 2007).....................................................................15

*Merit Mgmt. Grp., LP v. FTI Consulting Inc.*,
    138 S. Ct. 883 (2018) ................................................................................14

*NCUA Bd. v. Morgan Stanley & Co.*,
    No. 13 Civ. 6705 (DLC), 2014 WL 1673351 (S.D.N.Y. Apr. 28, 2014) ...............................24

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ................................................................................9

*Nycomed US, Inc. v. Glenmark Generics, Ltd.*,
    No. 08-CV-5023 (CBA)(RLM), 2010 U.S. Dist. LEXIS 29267 (E.D.N.Y. Mar. 26, 2010)...23

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1998) ...........................................................................5

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013) ..........................................................................22

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    12 F.4th 171 (2d Cir. 2021) ......................................................................14, 22

*Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*,
    773 F.3d 411 (2d Cir. 2014) ........................................................................ *passim*

*Picard v. Katz*,
    462 B.R. 447 (S.D.N.Y. 2011) ........................................................................7

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
    515 B.R. 117 (Bankr. S.D.N.Y. 2014) ..........................................................11, 21

*Picard v. Merkin (In re Bernard L. Madoff Inv. Secs. LLC)*,
    440 B.R. 243 (Bankr. S.D.N.Y. 2010) ..................................................................21

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Secs. LLC)*,
    542 B.R. 100 (Bankr. S.D.N.Y. 2015) ..................................................................16

*Pramer S.C.A. v. Abaplus Int'l Corp.*,
    76 A.D.3d 89 (1st Dep't 2010) ........................................................................28

*Roper Starch Worldwide, Inc. v. Reymer & Assocs., Inc.*,
    2 F. Supp. 2d 470 (S.D.N.Y. 1998) ....................................................................27

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir. 2007) ...........................................................................2

*Sapia v. Home Box Office, Inc.*,
    No. 18 Civ. 1317 (CM), 2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018)................................22

*Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Madoff Sec.*)
  501 B.R. 26 (S.D.N.Y. 2013) ...................................................................................23

*Silverman v. Actrade Cap., Inc.* (*In re Actrade Fin. Techs. Ltd.*),
  337 B.R. 791 (Bankr. S.D.N.Y. 2005) ....................................................................14

*Silverman v. K.E.R.U. Realty Corp.* (*In re Allou Distribs., Inc.*),
  379 B.R. 5 (S.D.N.Y. 2007) ....................................................................................15

*SIPC v. Bernard L. Madoff Inv. Sec. LLC* (*In re Madoff Sec.*),
  490 B.R. 46 (S.D.N.Y. 2013) ....................................................................................2

*SIPC v. Bernard L. Madoff Inv. Sec. LLC* (*Picard v. Fairfield Inv. Fund Ltd.*),
  No. 08-01789, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ...................6, 11

*SIPC v. Bernard L. Madoff Inv. Secs. LLC*,
  476 B.R. 715 (S.D.N.Y. 2012) ..................................................................................7

*SIPC v. Bernard L. Madoff Inv. Secs. LLC*,
  No. 12 MC 115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ........... *passim*

*SunLight Gen. Cap. LLC v. CJS Invs. Inc.*,
  114 A.D.3d 521 (1st Dep't 2014) ............................................................................27

*Tamam v. Fransabank Sal*,
  677 F. Supp. 2d 720 (S.D.N.Y. 2010) .....................................................................28

*Taylor v. Sturgell*,
  553 U.S. 880 (2008) ..................................................................................................8

*U.S. v. Int'l Longshoremen's Ass'n*,
  518 F. Supp. 2d 422 (E.D.N.Y. 2007) ...............................................................24, 25

*Universal Trading & Inv. Co. v. Tymoshenko*,
  No. 11 Civ 7877 (PAC), 2012 WL 6186471 (S.D.N.Y. 2012) ...............................28

*Walden v. Fiore*,
  571 U.S. 277 (2014) ................................................................................................27

**Statutes**

11 U.S.C. § 101(53A)(B) ..............................................................................................7

11 U.S.C. § 550 ........................................................................................................4, 15

11 U.S.C. § 550(a) ............................................................................................ *passim*

11 U.S.C. § 741(7)(A)(i) .............................................................................................10

11 U.S.C. § 741(8) ....................................................................................................14

**Other Authorities**

Austen Wakeman Scott, *et al., Scott and Ascher on Trusts,* § 24.6 (5th ed. 2006) ...............16

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357
    (3d ed. 2004) ...................................................................................................5

*Collier on Bankruptcy* § 541.28 (2011) ....................................................................17

Fed. R. Civ. P. 10(c) ...............................................................................................24

Fed. R. Bankr. P. 7012(b) .........................................................................................4

Fed. R. Civ. P. 12(b)(6) ........................................................................................4, 5

Fed. R. Civ. P. 8(a) ................................................................................................25

## PRELIMINARY STATEMENT

Defendant Fullerton Capital Pte. Ltd. ("Fullerton") is one of dozens of "subsequent trans-

ferees" against whom the Trustee has filed a cookie-cutter complaint to recover purportedly

fraudulent transfers originating with Madoff Securities.

Fullerton never had an account with Madoff Securities.  Instead, Fullerton bought shares

in a mutual fund called Fairfield Sentry Limited ("Fairfield"), which allegedly entrusted most,

but not all, of its money to Madoff Securities.  In October of 2005, Fullerton redeemed, in full,

its investments in Fairfield.

The Trustee does not allege that Fullerton was in league with Madoff.  He does not allege

that Fullerton knew Madoff was operating a Ponzi scheme, willfully turned a blind eye to his

Ponzi scheme, or was even on inquiry notice of the Ponzi scheme.  And he does not allege that

Fullerton breached any duty to anyone.  The Complaint does not even provide a justification for

demanding that Fullerton forfeit anything.  The Court should dismiss the Complaint for four in-

dependent reasons.

*First*, the Trustee cannot overcome the bar imposed by Section 546(e) of the Code,[1]

which provides that the court's avoidance powers are unavailable to unwind securities settlement

payments such as those at issue here, except in cases controlled by Section 548(a)(1)(A) for ac-

tual fraud.  This legal obstacle is an independent bar to the Trustee's sole claim for relief, be-

cause Fullerton's redemptions occurred in 2005, more than two years before the commencement

of the SIPA liquidation of Madoff Securities, and thus beyond Section 548(a)(1)(A)'s lookback

period.

---

[1] Unless otherwise specified, section references are to the Bankruptcy Code.

*Second*, the Trustee cannot meet the requirements of Section 550(a). To survive a motion to dismiss, the Trustee must plead sufficient facts to trace avoided (or at least avoidable) transfers into the hands of Fullerton to demonstrate that the Fullerton redemption was actually "property" of the estate. The Trustee must at least allege "the who, when, and how much" of the purported transfers from Madoff Securities to Fairfield and thence to Fullerton without simply lumping all transfers from a multi-year period. The Complaint does not do this.

*Third*, the Trustee improperly relies on allegations contained in a 217-page, 798-paragraph, now-superseded complaint filed in a separate action against nonparties to this adversary case.

*Fourth*, the Trustee has not even met his burden of pleading a prime facie case of jurisdiction over Fullerton, a foreign entity that invested with a foreign fund.

Accordingly, the Complaint should be dismissed.[2]

## FACTS[3]

Fullerton is a Singapore-based limited liability entity organized under the laws of Singapore. Compl. ¶ 22.

Fullerton never had an account with Bernard L. Madoff Investment Securities ("BLMIS" or "Madoff Securities"). Compl. ¶¶ 43-47 (alleging liability based solely on subsequent transfers of BLMIS funds). Instead, Fullerton bought mutual fund shares issued by Fairfield. Fullerton fully redeemed in October 2005. Compl. ¶ 41 Ex. C.

---

[2] By making this motion to dismiss, Fullerton is not waiving—and expressly reserves—its right to have an Article III court enter a final judgment in this proceeding. *See SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 490 B.R. 46, 58 (S.D.N.Y. 2013).

[3] The statement of facts is taken assuming the allegations in the Complaint are true, together with documents on which the Complaint relies and facts of which the Court may take judicial notice. *See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

According to the Trustee, Fairfield invested "at least 95% of its assets in BLMIS." Bernstein Decl. ¶ 3, Ex. B at ¶ 52.[4] Madoff Securities was a registered broker-dealer. Compl. ¶ 23. However, Madoff Securities was operated as a Ponzi scheme, made no real investments, falsified all its monthly account statements, and used money received from investors to pay withdrawals to other customers rather than to invest in stocks and options. Compl. ¶ 28.

The Trustee purports to incorporate by reference and attaches to the Complaint his 217-page Complaint against Fairfield and its principals. Compl. ¶ 35. In the Fairfield Complaint, the Trustee explains that Fairfield "worked in conjunction with BLMIS and Madoff to commit, and exponentially expand, the single largest financial fraud in history." Bernstein Decl. ¶ 3, Ex. B at ¶ 2.

Fairfield had the trappings of legitimacy. It retained PricewaterhouseCoopers, a Big Four auditor, to review its financial statements. Bernstein Decl. ¶ 3, Ex. B at ¶ 362. Fairfield and its principals "repeatedly told investors and potential investors they actively monitored Madoff, his auditor, the execution of the [Split Strike Conversion] Strategy, and BLMIS'' performance. [Fairfield] claimed to have verified that trading actually occurred and that the assets in BLMIS custody actually existed." Bernstein Decl. ¶ 3, Ex. B at ¶ 339.

Fullerton fully redeemed its shares on October 14, 2005, receiving redemption proceeds of approximately $10,290,445. Compl. Ex. C. The Complaint does not allege, under any legal standard, that Fullerton had knowledge at any time that Madoff Securities was a Ponzi scheme. The Complaint does not provide a single fact to suggest that Fullerton knew Madoff Securities was a Ponzi scheme.

---

[4] The Fairfield Complaint is purportedly incorporated by reference to the Complaint at issue on this motion. Compl. ¶ 35.

- 3 -

## PROCEDURAL POSTURE

SIPC commenced this SIPA liquidation proceeding on December 11, 2008.  Fullerton has

not filed a proof of claim or otherwise participated in that proceeding.

On January 5, 2012, the Trustee filed a Complaint against Fullerton containing one count,

invoking 11 U.S.C. § 550.  Fullerton initially filed a motion to dismiss on April 2, 2012.  That

motion was never fully briefed or decided; instead, the Bankruptcy Court decided a consolidated

motion to dismiss, which Fullerton joined, asserting that the Trustee's claim is an improper ex-

traterritorial application of the Bankruptcy Code.  By decision dated March 3, 2017, the Bank-

ruptcy Court granted the extraterritoriality motion and this action was dismissed.  On February

25, 2019, *In re Picard*, *Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC,* 917 F.3d 85 (2d

Cir. 2019), *cert denied*, 140 S. Ct. 2824 (2020), the Second Circuit reversed and following the

denial of a petition for certiorari in June 2020, the Second Circuit issued its mandate vacating the

judgment, with the case returned to this Court.

## APPLICABLE PLEADING STANDARD

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure

12(b)(6),[5] a complaint must "state a claim to relief that is *plausible on its face*."  *Ashcroft v. Iq-

bal*, 556 U.S. 662, 663, 678 (2009).  This requires more than "labels and conclusions," and a

claim for relief cannot stand when it is merely possible or conceivable.  *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 555-56, 570 (2007).  Indeed, "[w]here a complaint pleads facts that are

'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

---

[5] Federal Rule of Bankruptcy Procedure 7012(b) makes Federal Rule of Civil Procedure 12(b)(6) applica-
ble in adversary proceedings.

- 4 -

plausibility,'" and the complaint must be dismissed. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"Determining whether a complaint states a plausible claim" is context-specific, requiring "the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679. (citation omitted). Allegations that are consistent with "routine market conduct" or an "obvious alternative explanation" do not give rise to a plausible inference of misconduct. *Twombly*, 550 U.S. at 566-68.

Defenses that appear on the face of the complaint are properly before the Court on a motion to dismiss. *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint."); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 708-13 (3d ed. 2004) (explaining that a litigant may plead himself out of court by unintentionally alleging facts that, taken as true, establish an affirmative defense).

## ARGUMENT

### I. SECTION 546(E) PROHIBITS THE TRUSTEE FROM RECOVERING THE TRANSFER AT ISSUE HERE, WHICH TOOK PLACE MORE THAN TWO YEARS BEFORE DECEMBER 8, 2008

The Trustee's sole count should be dismissed pursuant to Sections 546(e) and 548(a)(1)(A). Section 546(e) states in part:

> [T]he trustee may not avoid a transfer that is a . . . settlement payment, as defined in section 101 or 741 of this title, made by or to (or for the benefit of) a . . . stockbroker, financial institution, financial participant, . . . or that is a transfer made by or to (or for the benefit of) a . . . stockbroker, financial institution, [or] financial participant . . . in connection with a securities contract, as defined in section 741(7) . . . except under section 548(a)(1)(A)….

- 5 -

The Section 548(a)(1)(A) exception applies only to transfers within two years of the petition date and therefore is irrelevant where, as here, the subsequent transfer at issue took place more than two years before the petition filing date. And Section 550(a) permits the Trustee to seek recovery from a subsequent transferee "to the extent that a transfer is avoided under" section 548.

Section 546(e)'s safe harbor is available as a defense to a subsequent transferee such as Fullerton. *See SIPC v. Bernard L. Madoff Inv. Sec. LLC* (*Picard v. Fairfield Inv. Fund Ltd.*), No. 08-01789, 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021) (Morris, C.J.) ("Where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, . . . the subsequent transferee is nonetheless entitled to raise a § 546(e) defense against recovery of those funds."). As the Second Circuit has explained, "by enacting §546(e), Congress provided that, for a very broad range of securities-related transfers, the interest in finality is sufficiently important that they cannot be avoided by a bankruptcy trustee at all, except as actual fraudulent transfers under § 548(a)(1)(A)." *Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411, 423 (2d Cir. 2014) ("*Fishman*") (internal citation omitted). "Permitting the clawback of millions, if not billions, of dollars from BLMIS clients— many of whom are institutional investors and feeder funds—would likely cause the very 'displacement' that Congress hoped to minimize in enacting § 546(e)." *Id.* at 420 (citation omitted). *See also In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 90 (2d Cir. 2019) ("*Tribune I*") ("Unwinding settled securities transactions . . . would seriously undermine . . . markets in which certainty, speed, finality, and stability are necessary to attract capital."). "[T]he application of Section 546(e) presents a straightforward question of statutory interpretation of the type that is appropriately resolved on the pleadings." *Fairfield Sentry Ltd. v. Theodoor GGC*

- 6 -

*Amsterdam (In re Fairfield Sentry Ltd.)*, Adv. No. 10-03496, 2020 WL 7345988 (Bankr.

S.D.N.Y. Dec. 14, 2020) ("*Fairfield II*") (quotation marks and citation omitted)).

Under applicable Second Circuit law, the alleged initial transfers were made by or to covered entities and qualify as both "settlement payments" and transfers "in connection with securities contracts." Since Fullerton is not alleged to received any transfers within the two-year lookback or alleged to have actual knowledge of fraud, no exception to the safe harbor applies. Accordingly, Section 546(e) is a complete defense to the Complaint against Fullerton.

### A.  The Alleged Initial Transfers Were Made By or To Covered Entities

Section 546(e) shields "settlement payments" and transfers made "in connection with a securities contract," where the transfers are made by or to a covered entity. Here, both Madoff Securities (a "stockbroker") and Fairfield (a "financial institution") are covered entities.

The Code defines "stockbroker" to include entities "engaged in the business of effecting transactions in securities." 11 U.S.C. § 101(53A)(B). Madoff Securities falls within this definition, as Judge Rakoff concluded a decade ago in *SIPC v. Bernard L. Madoff Inv. Secs. LLC*, 476 B.R. 715, 719 (S.D.N.Y. 2012), *aff'd* , 773 F.3d 411 (2d Cir. 2014). *See also Picard v. Katz*, 462 B.R. 447, 452 (S.D.N.Y.  2011) (finding that "all payments made by [Madoff Securities] to its customers" fell within the "'extremely broad' definition" of "settlement payment" under Section 546(e) (quoting *In re Enron Creditors Recovery Corp.*, 651 F.3d 329, 334 (2d Cir. 2011)). As the Second Circuit subsequently observed, "[i]t is not disputed [by the Trustee] that BLMIS was a 'stockbroker' for the purposes of § 546(e)." *Fishman*, 773 F.3d at 417. This Court can—and should—end its "covered entity" analysis here.

The alleged initial transfers from Madoff Securities to Fairfield also constitute transfers made to a "financial institution."  In *Fairfield II*, this Court held that the Fairfield Funds were

- 7 -

"financial institutions" because they were customers of a financial institution, Citco Bank Neder-

land N.V. Dublin Branch ("Citco Bank"), a bank regulated by the Central Bank of the Nether-

lands and registered with the Central Bank of Ireland,[6] which acted as their agent in connection

with the securities contracts pursuant to which the redemption payments were made.  *Fairfield II*,

2020 WL 7345988, at *6-7 & n.11.  As this Court explained:

> [T]he [Fairfield] Liquidators' admission that redemptions were paid by
> Citco Bank establishes the necessary agency. It is implausible to infer that
> Citco Bank made the redemption payments to specific redeemers in spe-
> cific amounts absent the [Fairfield] Funds' directions to do so. Moreover,
> Citco Bank accepted those directions by executing the redemption pay-
> ments. Based on the foregoing, the Funds were customers of Citco Bank
> who acted as their agents in connection with the securities contracts pursu-
> ant to which the redemption payments were made, and the Funds were,
> therefore "financial institutions" within the meaning of 11 U.S.C. §
> 546(e).

2020 WL 7345988, at *7 (footnote omitted).

The holding in *Fairfield II* is equally applicable here and, indeed, is binding on the Trus-

tee, because he was in privity with the Fairfield Liquidators, who were litigating that action

partly for the Trustee's benefit.[7]  Accordingly, Sentry is a covered entity under Section 546(e).

---

[6] *See* De Nederlandsche Bank, *Information Detail: Citco Bank Nederland N.V.*,
https://www.dnb.nl/en/public-register/information-detail/?registerCode=WFTDG&relation Num-
ber=B0275 (last visited Mar. 15, 2022) (identifying Citco Bank Nederland N.V. as "[c]arrying on the
business of a bank," including "[a]cceptance of deposits and other repayable funds"); Central Bank of Ire-
land, *Financial Service Provider Profile: Citco Bank Nederland NV Dublin Branch*, http://registers.cen-
tralbank.ie/FirmDataPage.aspx?firmReferenceNumber=C27278 (last visited Mar. 14, 2022) (classifying
Citco Bank as a "Credit Institution … whose business is to receive deposits or other repayable funds from
the public and to grant credits for its own account").  This Court can take judicial notice of information
from such public registries.  *See Tribune I*, 946 F.3d at 78; *Enron Corp. v. Bear, Stearns Int'l Ltd. (In re
Enron Corp.)*, 323 B.R. 857, 869 (Bankr. S.D.N.Y. 2005).

[7] In the Fairfield Settlement Agreement, the Trustee and the Fairfield Liquidators agreed to share recover-
ies on their respective "clawback claims".  Bernstein Decl. Ex. L (the "Fairfield Settlement Agreement").
Among other things, the Fairfield Settlement Agreement provides for the sharing of recoveries on the par-
ties' claims for recovery of property that Sentry transferred, cooperation and consultation on bringing
those claims, and a joint interest agreement.  The Trustee's and the Liquidators' agreed joint interest in
any such recovered BLMIS customer property constitutes a "preexisting 'substantive legal relationship,'"
Footnote continued on next page

**B.  The Alleged Initial Transfers Were "Settlement Payments" and Made "in Connection with Securities Contracts"**

The Second Circuit has concluded that transfers from BLMIS to its account holders within the six-year lookback period were protected from avoidance because they were made "in connection with" securities contracts and because they were "settlement payments."  *Fishman*, 773 F.3d at 417, 418–23.  Specifically, the Second Circuit concluded that the documents governing BLMIS customers' accounts constituted securities contracts and that therefore the payments made to account holders fall within Section 546(e). *Id*. at 418–22.  In addition, the court held that payments BLMIS made to its customers separately constituted "settlement payments" protected by the safe harbor.  *Id*. at 422–23.  Each of these determinations sufficed to invoke the safe harbor. The Second Circuit rejected the Trustee's argument that Section 546(e) did not apply because BLMIS did not actually carry out the promised securities transactions. *See id.* at 417, 419–20.  Thus, under *Fishman*, the Complaint against Fullerton as a subsequent transferee of payments shielded by Section 546(e) should be dismissed.

What is more, the Trustee alleges that "portion[s] of the Fairfield Sentry Initial Transfers w[ere] subsequently transferred, either directly or indirectly to, or for the benefit of" Fullerton. Compl. ¶ 41.  This means that the alleged initial transfers from BLMIS to Fairfield Sentry were made, in part, for the purpose of funding of Fullerton's redemption requests.  Those redemption requests were governed by Fairfield Sentry's Articles of Association.  *See* Bernstein Decl. Ex.

---

focused on a successive or concurrent interest in property, of the kind recognized by the Supreme Court to give rise to non-party issue preclusion. *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008).  Because the Trustee is in privity with the Liquidators in actions to recover alleged BLMIS customer property, such as the actions at issue in *Fairfield II*, and because the issue of Sentry's "financial institution" status was "actually litigated" and "essential" to the final judgments dismissing numerous such actions on the ground of the Section 546(e) safe harbor, this Court's finding in *Fairfield II* that Sentry was a "financial institution" in connection with redemption payments from Sentry to its subscribers is binding on the Trustee.  *See New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001) (stating requirements for issue preclusion).

- 9 -

M, *Fairfield Sentry Ltd. v. Migani*, [2014] UKPC 9 (April 16, 2014), ¶ 10; *see also Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, No. 10-13164 (SMB), 2018 WL 3756343, at *11 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*") (explaining that the Privy Council "concluded that the terms of the redemption of shares were found in the Articles").[8]  And the Fairfield Sentry Articles of Association is a "securities contract" for Section 546(e) purposes.

The definition of "securities contract" § 741(7) of the Bankruptcy Code is "broad."  *Fishman*, 773 F.3d at 419.  It includes not only "a contract for the purchase, sale, or loan of a security," 11 U.S.C. § 741(7)(A)(i), but also "any other agreement or transaction that is similar to an agreement or transaction that is similar to" such a contract, *id.* § 741(7)(A)(vii).  *See Fishman*, 773 F.3d at 419 (noting that Congress intended to "sweep broadly" and that "[f]ew words in the English language are as expansive as 'any' and 'similar'").  A contract providing for redemptions of securities, such as the Fairfield Sentry Articles of Association, surely qualifies.  *See SIPC v. Bernard L. Madoff Inv. Secs. LLC*, No. 12 MC 115 (JSR), 2013 WL 1609154, at *8 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*") (definition of "securities contract" is broad and "includes, *inter alia*, investment fund subscriptions and *redemption requests*") (emphasis added).  Accordingly, the transfers alleged in the Complaint were "in connection with a securities contract."

For all of these reasons, Fullerton is entitled to the protection of the Section 546(e) safe harbor as a matter of law.

---

[8] The Fairfield Sentry Articles of Association, *see* Bernstein Decl. Ex. N, may be considered on this motion because, as the document governing the challenged redemptions, it is integral to the Complaint.  *See, e.g., In re Tribune Co. Fraudulent Conveyance Litig.*, 10 F.4th 147, 176 (2d Cir. 2021), *cert. denied*, No. 21-1006, 2022 WL 161692 (U.S. Jan. 5, 2022).

### C. The Trustee Has Not Alleged that Fullerton Had Actual Knowledge of the Madoff Fraud

The Trustee has not alleged that Fullerton had actual knowledge of the Madoff fraud. As noted by certain other subsequent transferee defendants in their recently filed motions to dismiss, the Trustee nevertheless may argue that the Section 546(e) safe harbor is inapplicable because the initial transferee, Sentry, allegedly knew of Madoff's fraud. But the Trustee should not be permitted to manufacture exceptions to Section 546(e). Whether or not the allegation about Sentry is true, the Trustee would be wrong as a matter of law. There is no carveout in Section 546(e) based on an initial transferee's knowledge outside the two-year lookback. The sole statutory exception to the Section 546(e) safe harbor is for transfers avoidable under Section 548(a)(1)(A), which has a two-year look back from the petition date. As set forth above, the alleged subsequent transfer to Fullerton was more than two years before the petition date.

Any reliance by the Trustee on *Fairfield Investment Fund* would be misplaced. To be sure, in that case the Court accepted that Sentry's knowledge had been adequately pleaded in a later version of the Fairfield complaint than the Fairfield First Amended Complaint that was purportedly incorporated by reference into the instant Complaint against Fullerton. *See* 2021 WL 3477479, at *4-5 (citing Fairfield Second Amended Complaint, No. 09-1239, ECF 286).[9] The Court then quoted Judge Rakoff's statement that "'if the Trustee sufficiently alleges that the

---

[9] Fullerton reserves for a later stage of this action or appeal all arguments that the Trustee has not adequately pleaded Sentry's actual knowledge of Madoff's fraud in the Fairfield Second Amended Complaint or otherwise and/or that Sentry did not in fact have such actual knowledge. *See Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 776-77 (2020) (holding that "to have 'actual knowledge' of a piece of information, one must in fact be aware of it" and distinguishing between actual knowledge and constructive knowledge); *Heinert v. Bank of Am. N.A.*, 835 F. App'x 627, 631 (2d Cir. 2020) ("allegations [of actual knowledge of misrepresentations] do not suffice to show that [the bank] had actual knowledge of the [account holders'] Ponzi scheme, the fraud on which the [plaintiffs'] claim relies"); *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117, 140 (Bankr. S.D.N.Y. 2014) (refusing to equate "strong suspicion" with "actual knowledge").

- 11 -

transferee from whom he seeks to recover a fraudulent transfer knew of Madoff's fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor.'" *Fairfield Inv. Fund*, 2021 WL 3477479, at *4 (quoting *Cohmad*, 2013 WL 1609154, at *7).  This is incorrect, for two reasons: (1) the transfers (including the transfer *to Fullerton*) were made in connection with a securities contract and are therefore independently protected by § 546(e), and (2) Fullerton is not alleged to have had actual knowledge of Madoff's fraud.

*First*, as noted above, even if Sentry's alleged knowledge *could* preclude Sentry from invoking Section 546(e), that would not affect the separate securities contracts between Sentry and its investors, including here, Fullerton.  Nor would Sentry's alleged knowledge of the BLMIS fraud preclude the application of Section 546(e) for the benefit of Fullerton.  In *Cohmad*, Judge Rakoff agreed that securities contracts other than the initial transferee's securities contract with BLMIS could independently satisfy Section 546(e).  2013 WL 1609154, at *8-9.  Judge Rakoff ruled that so long as the initial transferee withdrew funds from BLMIS to make a payment under a securities contract between the initial transferee and a subsequent transferee, then the withdrawal from BLMIS would be a transfer made in connection with a securities contract—namely, the contract between the initial transferee and the subsequent transferee—and would not be avoidable on a subsequent transferee claim:

> Take, for example, a hypothetical situation in which the Trustee alleges that a withdrawal of funds by an investment fund from its Madoff Securities customer account occurred because an investor in that fund sought redemption of its investment under the terms of its investment contract.  Assuming that either the investment fund or the investor qualifies as a financial institution or financial participant, and barring other circumstances that may appear on the facts of a given case, that situation appears to fit within the plain terms of Section 546(e): an initial transfer that was "made by or to (or for the benefit of) a . . . financial institution [or] financial participant . . . in connection with a securities contract."

- 12 -

*Id*. at *9 (footnote omitted).[10]  The logic of Judge Rakoff's hypothetical situation also applies here.

*Second*, importantly here, the Trustee has not pleaded (or even attempted to plead) that Fullerton knew of Madoff's fraud.  Since the applicability of Section 546(e) is clear on the face of the Complaint and documents integral to it, if the Trustee advances a theory of transferee actual knowledge as an exception to the safe harbor, it would have been incumbent on him to plead actual knowledge.  Instead, the Complaint is devoid of any allegations that Fullerton knew of Madoff's fraud.  And "actual knowledge," *Cohmad,* 2013 WL 1609154 at *1—not "mere suspicion," *id*. at *3, or inquiry notice—is what Judge Rakoff repeatedly stated was necessary to defeat the safe harbor.  *See, e.g., id*. at *4 ("the Trustee must show, at a minimum, that the transferee had actual knowledge that there were no actual securities transactions being conducted") (footnote omitted); *id*. at *1, 3, 6, 7, 10.  Because Fullerton is not alleged to have had actual knowledge of the Madoff fraud, the Court can and should, on those grounds alone, apply the Section 546(e) harbor and dismiss the Complaint.

Finally, as stated above, while this Court and the District Court have previously ruled that Section 546(e) cannot be invoked by a transferee with actual knowledge of Madoff's fraud, and while for the reasons discussed above, those rulings are inapplicable here, Fullerton respectfully submits that there is nothing in Section 546(e) that supports creating an exception to its

---

[10] Judge Rakoff also observed that "[t]o the extent that, for example, an initial transfer from Madoff [S]ecurities to an investment fund customer and the subsequent transfer from the investment fund to its redeeming investors may together comprise a 'settlement payment' under *Enron* [*Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 339 (2d Cir. 2011)], that transfer may fall within the purview of Section 546(e), assuming it meets the statute's other requirements." *Cohmad*, 2013 WL 1609154, at *9 n.5.

- 13 -

applicability based on the knowledge of any transferee.[11]  Section 546(e) provides for only one

exception to the safe harbor:  "[T]he trustee *may not* avoid a transfer that is a . . . settlement pay-

ment . . . or that is a transfer made by or to (or for the benefit of) a . . . . stockbroker, financial in-

stitution, [or] financial participant . . . in connection with a securities contract . . . *except under

section 548(a)(1)(A)*."  Section 548(a)(1)(A) has a two-year look-back period.  The plain text of

these two statutory sections make it legally impossible for the Trustee to claw back a settlement

payment or a transfer in connection with a securities contract if the payment occurred before De-

cember 8, 2006.  And nothing in Section 550(a) creates any exception. If anything, Section

550(a) creates a strict standard on its face, because it *only* applies "to the extent that a transfer *is

avoided*." (Emphasis added.)

Nothing in any of these statutes makes anything turn on intent of an immediate or subse-

quent transferee.  *See Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th

171, 181 (2d Cir. 2021) ("Voidability under § 548(a)(1)(A) focuses on the fraudulent intent of

the debtor-transferor."), *cert denied*, 2022 WL 585915 (U.S. Feb. 28, 2022); *Silverman v.

Actrade Cap., Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005)

(under Section 548(a)(1)(A) "it is the intent of the transferor and not the transferee that is rele-

vant") (citations omitted).[12]  Thus, while not relevant for purposes of this motion to dismiss

given that there are no allegations that Fullerton had actual knowledge of Madoff's fraud, Fuller-

ton submits that the exception to the safe harbor articulated in *Cohmad—i.e.*, that if the trans-

feree from whom the Trustee seeks to recover knew of Madoff Securities' fraud, that transferee

---

[11] This is an open question at the Circuit level, and Fullerton expressly preserves it. Although the Second
Circuit in *Fishman* noted that the defendants there had "every reason to believe that BLMIS was actually
engaged in the business of effecting securities transactions," 773 F.3d at 420, it did not state that the result
would have been different had that not been the case.

[12] Nor does transferee knowledge play any role in the definitions of "settlement payment," 11 U.S.C. §
741(8), or "securities contract," *id*. § 741(7).

cannot claim the protections of Section 546(e) (*Cohmad*, 2013 WL 1609154, at *7)—is not sup-

ported by the text of the statute.

Where the Code creates an exemption or safe harbor, and specifies exceptions, courts are

not free to create additional exceptions even when doing so is motivated by a party's alleged

wrongdoing. *See Law v. Siegel*, 571 U.S. 415, 424-25 (2014). The courts must, instead, adhere

to "the plain meaning of the language" of the statute. *Merit Mgmt. Grp., LP v. FTI Consulting

Inc.*, 138 S. Ct. 883, 897 (2018). Considering the Second Circuit's admonitions in *Fishman* that,

in enacting Section 546(e) and its single exception for claims under Section 548(a)(1)(A), Con-

gress struck a balance favoring the securities markets' interest in finality over creditors' interests

in recovery, and that the courts "are obliged to respect the balance Congress struck among these

complex competing considerations," 773 F.3d at 423, the safe harbor should apply here accord-

ing to its plain language, regardless of the initial transferee Sentry's alleged knowledge. The

Complaint therefore should be dismissed.

## II.   THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE TRUSTEE FAILS TO ALLEGE THE ELEMENTS NECESSARY TO RECOVER UNDER § 550(A).

The Complaint relies exclusively on Section 550 for recovery against Fullerton. Section

550(a) provides:

> (a)   Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from
>
> (1)   the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2)   any immediate or mediate transferee of such initial transferee.

- 15 -

The Complaint fails to meet the requirements of 550(a), because it fails to trace the funds sought

to be recovered from Fullerton to any property of the Madoff Securities estate.

In order to state a claim under 11 U.S.C. § 550(a), "the plaintiff has the burden of tracing

funds it claims to be property of the estate." *Silverman v. K.E.R.U. Realty Corp. (In re Allou*

*Distribs., Inc.*), 379 B.R. 5, 30 (S.D.N.Y. 2007) (citing *In re Int'l Admin. Servs., Inc.*, 408 F.3d

689, 708 (11th Cir. 2005)); *see also  Lyon v. Forbes (In re Forbes)*, 372 B.R. 321, 334 (B.A.P.

6th Cir. 2007) ("[I]t is generally the [t]rustee's burden to trace the funds he claims are property

of the estate.").[13]  As Judge Bernstein explained:

> The Trustee must allege facts that support the inference that the funds at issue
> originated with the BLMIS, and contain the "necessary vital statistics"—the
> "who, when, and how much" of the transfers to establish that an entity was a sub-
> sequent transferee of the funds. At the pleading stage, the Trustee is not required
> to provide a "dollar-for-dollar accounting" of the exact funds at issue. However,
> barebones allegations that the funds at issue were transferred to the Subsequent
> Transferees, without more detail, are insufficient.

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Secs. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y.

2015).  In *Shapiro*, the Court dismissed the complaint because it did not "tie any initial transfer

to any subsequent transfer or Subsequent Transferee" and did "not plausibly imply that the initial

transferees even made subsequent transfers to the Subsequent Transferees as opposed to third

parties, or that they made the subsequent transfers rather than simply keep the initial transfers for

themselves."  542 B.R. at 119; *accord Gowan v. Novator Credit Management (In re Dreier*

---

[13] The purpose of the tracing requirement, which is rooted in the law of constructive trusts, is "to treat all
creditors equally."  *Goldberg v. Bank of Alex Brown (In re Goldberg)*, 168 B.R. 382, 385 (B.A.P.  9th Cir.
1994) (stating that when "a constructive trust is sought to be imposed against the property of an insolvent
debtor, strict tracing is required") (citation omitted); *see also* Austen Wakeman Scott, *et al., Scott and
Ascher on Trusts*, § 24.6 (5th ed. 2006) (explaining that if the proceeds of a constructive trust cannot be
traced, the beneficiary will stand in no better position than the trustee's other creditors); *Kundrat v. BMC
Indus., Inc. (In re BMC Indus Inc.)*, 359 B.R. 725, 731 (Bankr. D. Minn. 2007) ("The purpose of tracing
is to identify a particular entrusted asset, not just to identify some assets.  Therefore, a constructive trust
creates a trust in specific property, not an amorphous amount….") (citation omitted).

*LLP*), 452 B.R. 467, 478-80 (Bankr. S.D.N.Y. 2011); *Angell v. Ber Care, Inc.* (*In re Caremerica,*

*Inc.*), 409 B.R. 737, 750–51 (Bankr. E.D.N.C. 2009) (court dismissed a preference claim under

*Twombly* and *Iqbal* because the trustee's factual allegations included allegations about transfers

into and out of an account and amounts received by the supposed transferees, but nothing to tie

them together).

The Trustee may not "lump transfers spanning a two to three year period," but rather

must identify the "date and amount of each transfer." *Buchwald Capital Advisors LLC v. JP*

*Morgan Chase Bank, N.A.* (*In re M. Fabrikant & Sons*), No. 06-12737 (SMB), 2009 WL

3806683, at *16 (Bankr. S.D.N.Y. Nov. 10, 2009). In addition, where, as here, alleged property

of the estate is comingled with non-estate funds, the tracing element also requires that the trustee

satisfy the "lowest intermediate balance test." *Farris, Baker Watts, Inc. (In re MJK Clearing,*

*Inc.*), 371 F.3d 397, 401-402 (8th Cir. 2004); *see also* 5 *Collier on Bankruptcy* § 541.28 (2011).

Under the lowest intermediate balance test, in order to be able to recover from an alleged subse-

quent transferee, the trustee must follow the transfers at issue and must demonstrate that the

amount on deposit at Fairfield equaled or exceeded the amount of the funds transferred to Fuller-

ton and other subsequent transferees on the dates of redemption. *MJK Clearing, Inc.*, 371 F.3d

at 402. If, however, the amount on deposit at Fairfield was reduced to zero at the time of Fair-

field redemptions, the trustee will be unable to trace any transfers to Fullerton, and therefore, will

be unable to recover against Fullerton. *Id.*

Here, the Trustee relies upon the most conclusory and speculative allegations to support

the assertion that the initial transfers from Madoff Securities to Fairfield were then subsequently

transferred to Fullerton. The totality of the trustee's allegations concerning his efforts to "trace"

Madoff Securities property to Fullerton are as follows:

- 17 -

- "the Trustee seeks to recover approximately $10,290,445 in subsequent transfers of Customer Property made to Defendant Fullerton. The subsequent transfers were derived from investments with BLMIS made by Fairfield Sentry Limited…."  Compl. ¶ 2.

- "During the six years preceding [December 8, 2008], BLMIS made transfers to Fairfield Sentry of approximately $3 billion…."  Compl. ¶ 36.

- "A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or for the benefit of, Defendant Fullerton…."  Compl. ¶ 41.

- "Based on the Trustee's investigation to date, approximately $10,290,445 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Fullerton…."  Compl. ¶ 41.

Thus, while the trustee dutifully lists every transfer from Madoff Securities to Fairfield and the redemption payment from Fairfield to Fullerton, he makes no effort to trace any particular transfer from Madoff Securities through Fairfield to Fullerton—omitting the "when, and how much" from his Complaint.  This is exactly the kind of "lumping" or "aggregating" that the *Fabrikant* court held was prohibited.  *See Fabrikant*, 2009 WL 3806683, at *16 (trustee may not lump transfers made to initial transferees over a two to three year period but rather must "particularize" the individual transfers).

Moreover, as reflected in the following chart, the fact that the trustee attaches the same schedule to multiple Complaints filed against a number of defendants, and attributes the same total to each defendant, suggests that the Trustee has not been able to particularize any transfers made from Madoff Securities to Fairfield to Fullerton:

- 18 -

| Identical Alleged Transfers | Leveraged Note Allegations |
|---|---|
| Identical Schedule of Transfers from Madoff Securities to Fairfield | Compl., Ex. B; Bernstein Decl. ¶ 4, Ex. C[14]; Bernstein Decl. ¶ 5, Ex. D[15]; Bernstein Decl. ¶ 6, Ex. E[16]; Bernstein Decl. ¶ 7, Ex. F[17] |
| Approximately $3 billion transferred six years prior to filing date | Compl. ¶ 36; Bernstein Decl. ¶ 4, Ex. C at ¶ 213; Bernstein Decl. ¶ 5, Ex. D at ¶ 184; Bernstein Decl. ¶ 6, Ex. E at ¶ 118; Bernstein Decl. ¶ 7, Ex. F at ¶ 138 |

The Trustee's pleadings across adversary proceedings, when taken as whole, tell an implausible story under basic principles of arithmetic: BLMIS's alleged initial transfers of approximately $3 billion to Sentry cannot have produced over $5 billion in subsequent transfers from Sentry (i.e., the sum of: (a) $3.238 billion paid by Sentry directly to defendants in the Fairfield Subsequent Transfer Actions; (b) $824 million in alleged Sentry payments to Fairfield Sigma and Fairfield Lambda; and (c) $1.139 billion which the Trustee seeks from FGG Defendants.[18]

[14] Bernstein Decl. ¶ 4, Ex. C (Complaint and Exhibit A in the action *Irving H. Picard v. Natixis*, Adv. Pro. No. 10-5353 filed in the United States Bankruptcy Court in the Southern District of New York on December 8, 2010).

[15] Bernstein Decl. ¶ 5, Ex. D (Complaint and Exhibit C in the action *Irving H. Picard v. Citibank, N.A.*, Adv. Pro. No. 10-5345 filed in the United States Bankruptcy Court in the Southern District of New York on December 8, 2010).

[16] Bernstein Decl. ¶ 6, Ex. E (Complaint and Exhibit A in the action *Irving H. Picard v. Nomura Bank Int'l PLC*, Adv. Pro. No. 10-5348 filed in the United States Bankruptcy Court in the Southern District of New York on December 8, 2010).

[17] Bernstein Decl. ¶ 7, Ex. F (Complaint and Exhibits in the action *Irving H. Picard v. Banco Bilbao Vizcaya Argentina, S.A. ("BBVA")*, Adv. Pro. No. 10-5351 filed in the United States Bankruptcy Court in the Southern District of New York on December 8, 2010).

[18] *See* Bernstein Decl. Exhibit O & ¶ 18 (totaling the subsequent transfers allegedly received by defendants from Sentry in the 81 actions filed by the Trustee); Bernstein Decl. Exhibit H (reflecting consent judgements entered against Sentry for $3.054 billion, Fairfield Sigma for $752.3 million, and Fairfield Lambda for $52.9 million); Bernstein Decl. Exhibit P & ¶19 (totaling the amount sought by the Trustee from certain defendants in in the matter captioned *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. 09-01239 (Bankr. S.D.N.Y.) (the "Fairfield Action")).

- 19 -

How could Sentry have paid out more than it received from BLMIS?  The Trustee's own pleadings highlight that transfers from BLMIS to Sentry were not Sentry's exclusive source of funds.  For example, the Complaint itself provides that alleged subsequent transferees subscribed for Sentry shares over many years and therefore "wired funds to Fairfield Sentry." *See, e.g.*, Compl. ¶ 7.  Additionally, Sentry has stated that "[f]rom time to time, to make Redemption Payments, Sentry . . . utilized subscription monies of other investors on hand that were directed for investment in BLMIS."  Fairfield First Am. Compl. ¶ 63, *Fairfield Sentry Ltd. v. Citco Global Custody NV*, No. 19-1122 (SMB) (Bankr. S.D.N.Y. Nov. 26, 2019), ECF 19.

The Complaint's failure to particularize the transfers is especially troubling here where the Trustee has admitted that Fairfield conducted investment-related activities that were completely unrelated to Madoff Securities or Madoff.  According to the Trustee, Fairfield Sentry invested only 95% of its assets through Madoff Securities, thereby leaving hundreds of millions of dollars to be invested elsewhere.  Bernstein Decl. ¶ 3, Ex. B at ¶¶ 318-19.  According to Fairfield's Private Placement Memorandum, "[t]he Fund may invest some of its assets in short-term U.S. government obligations, certificates of deposit, short-term high grade commercial paper and other money market instruments, including repurchase agreements with respect to such obligations, money market mutual funds and short term bond funds."  Bernstein Decl. ¶ 8, Ex. G, at 9 (Fairfield Sentry Limited's Confidential Private Placement Memorandum, dated October 1, 2004).

Despite this comingling of alleged estate property with non-estate property, the Trustee has not even attempted to allege that the lowest intermediate balance test has been satisfied.  It is certainly plausible that the $10.29 million redeemed by Fullerton came from Fairfield's investment in entities other than Madoff Securities.  At best, then, the trustee's allegations against

Fullerton raise no more than a "mere possibility" that it received funds from Madoff Securities as a subsequent transferee, which is not sufficient to satisfy the *Iqbal* plausibility standard. *Iqbal*, 556 U.S. at 678-79.[19]

The Trustee's failure to allege the "necessary vital statistics" of the transfers he seeks to put at issue is particularly inexcusable in this case, in which the *plaintiff*, rather than the *defendant*, possesses all the records relevant to establishing whether, and to what extent, any alleged transfers to Fullerton included any customer property. As noted above, the Trustee sued and settled with the Liquidators of Sentry and Sigma, who in 2011 stipulated to the entry of a judgment in favor of the BLMIS Estate (in the amount of approximately $3 billion for Sentry and approximately $750 million for Sigma).[20] Fairfield Settlement, Fairfield Action, (ECF No. 69-2) ¶ 1; Compl. ¶ 40. Pursuant to that Settlement Agreement, the Trustee has had access to Sentry and Sigma's records for over a decade. *See* Fairfield Settlement, Fairfield Action, (ECF No. 69-2) ¶ 14.

Thus, the Trustee has had every piece of information he needs to determine whether an alleged subsequent transfer contains customer property, and from which initial transfer that transfer originates, yet he has failed to so allege here. The Trustee's claim therefore should be

---

[19]    The fact that Fullerton's alleged redemptions may have been paid out of non-Madoff directed activities distinguishes this case from *Picard v. Merkin (In re Bernard L. Madoff Inv. Secs. LLC)*, 440 B.R. 243 (Bankr. S.D.N.Y. 2010). In *Merkin*, the trustee sought to recover fees and commissions paid to the defendants as subsequent transferees. *Id.* at 270-71. Importantly, the *Merkin* Complaint alleged that the amount of the fees to be paid was pre-determined based upon the fund's private placement memorandum attached to the Complaint, and there were only one potential source of the fees. *Id.* In contrast, here, the amounts of the alleged subsequent transfers was not pre-determined and there were multiple potential sources of the redemption payments.

[20] This Court approved the Fairfield Settlement Agreement on June 7, 2011, *id*. at Bench Memorandum and Order Granting Trustee's Motion for Entry of Order Approving Agreement, (ECF No. 92), and it was incorporated into the Consent Judgment entered against Sentry on July 13, 2011. Fairfield Action, Adv. Pro. No. 09-01239, Consent Judgment, (ECF No. 109) , ¶ 2; Compl. ¶ 40. The terms of the Fairfield Settlement Agreement show that the Trustee has already recovered most or all of what he should be entitled to recover from Sentry and its investors.

dismissed.  *See Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705,

709, 723 (2d Cir. 2013) (affirming dismissal and finding that "such imprecise pleading is particu-

larly inappropriate here, where the plaintiffs necessarily have access, without discovery, to plan

documents and reports that provide specific information from which to fashion a suitable com-

plaint"); *Sapia v. Home Box Office, Inc.*, No. 18 Civ. 1317 (CM), 2018 WL 6985223, at *8

(S.D.N.Y. Dec. 17, 2018) (dismissing claim where plaintiffs failed to precisely plead necessary

facts that were "uniquely in [p]laintiffs' possession").

## III.   THE TRUSTEE HAS FAILED TO ADEQUATELY PLEAD AVOIDABILITY OF THE ALLEGED INITIAL TRANSFERS, AND ADOPTION OF THE ENTIRE FAIRFIELD AMENDED COMPLAINT BY REFERENCE IS IMPROPER

While the Complaint should be dismissed under Section 546(e) and on the basis that the

Trustee has not plausibly alleged that the alleged subsequent transfer contained "customer prop-

erty," it also should be dismissed for another reason:  It does not contain "a short and plain state-

ment of the claim showing the pleader is entitled to relief" as required under Rule (8)(a)(2) and

instead improperly attempts to incorporate other voluminous, largely irrelevant pleadings by ref-

erence.

As stated recently by the Second Circuit, "Section 550(a) sets out the elements a trustee

must satisfy to recover transferred property: that the transfer was *avoided*, and that the defendant

is an initial or subsequent transferee."  *In re Bernard L. Madoff Inv. Sec. LLC*, 12 F.4th 171, 197

(2d Cir. 2021) (emphasis added).  "Section 550(a) applies only 'to the extent that a transfer is

avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title.' In other words, a

trustee cannot use §550(a) to recover property unless the trustee has first avoided a transfer under

one of these provisions." *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC,*

917 F.3d 85, 97 (2d Cir. 2021) (internal citations omitted).[21]  Rather than allege facts showing

that the relevant transfers were avoided, the Complaint against Fullerton simply makes passing

reference to BLMIS transfers of "Customer Property" to Fairfield that "are avoidable," Compl ¶¶

36-38, and asserts that the Trustee filed an adversary proceeding against Sentry, "in which, in

part, the Trustee sought to avoid and recover initial transfers of Customer Property from BLIMIS

to Sentry." *Id.* at ¶ 35.  The Trustee purports to "incorporate[s] by reference the allegations in

the [First] Fairfield Amended Complaint as if fully set forth herein." *Id.*

The Complaint itself thus fails to allege facts supporting this essential element of the

claim and makes only conclusory assertions that BLMIS made "avoidable" transfers to Fairfield.

Compl. ¶¶ 33-39.  "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

It is improper for the Trustee to rely on a 217-page, 798- paragraph complaint filed in a

separate proceeding.  The Complaint against Fullerton seeks to incorporate by reference *all* of

the Fairfield First Amended Complaint, even though the vast majority of that other complaint de-

scribes events that transpired *after* the Transfers at issue here.  If Fullerton were required to re-

spond to that lengthy pleading, Fullerton would be left responding to allegations outside its

knowledge and well beyond the relevant period at issue in the Complaint.  This is precisely "the

kind of incorporation that fails to give the requisite guidance to the responding party." *Nycomed*

*US, Inc. v. Glenmark Generics, Ltd.*, No. 08-CV-5023 (CBA)(RLM), 2010 U.S. Dist. LEXIS

29267, at *13 (E.D.N.Y. Mar. 26, 2010) (quotation marks and citation omitted).  Requiring

---

[21] Fullerton acknowledges that in a prior decision, the District Court held that "'to the extent that a trans-
fer is avoided' requires the Trustee to show that a given transfer is avoidable and does not require an ac-
tual judgment of avoidance." *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, (*In re
Madoff Sec.*) 501 B.R. 26, 37 (S.D.N.Y. 2013).  Nevertheless, Fullerton notes that the statute, by its own
terms, applies to a transfer that is "avoided."  The statute does not use the word "avoidable."  Fullerton
thus reserves all rights and arguments regarding what showing is required to "avoid" a transfer.

- 23 -

Fullerton to respond to such improper incorporation by reference would also be unfair and un-duly burdensome.  The Trustee's improper incorporation is especially troubling here because the *only* allegation concerning the avoidance or avoidability of the initial transfers is by reference to the Fairfield First Amended Complaint: the Trustee pleaded merely that the Fairfield First Amended Complaint, "in part," "sought to avoid and recover initial transfers of Customer Prop-erty from BLMIS to Fairfield Sentry in the amount of approximately $3 billion."  Compl. ¶ 34.

The Fairfield First Amended Complaint the Trustee purports to incorporate into his pleadings has also since been superseded by a further amended complaint in the Fairfield action.  Thus, Fullerton is left to guess not only which allegations of the incorporated pleading it must respond to, but even which pleading:  the complaint referenced in paragraph 35?  Or the further amended one (i.e., the Fairfield Second Amended Complaint)?  Neither option is acceptable un-der the Federal Rules.  Although "[a] statement in a pleading may be adopted by reference else-where in the same pleading or in any other pleading," (Fed. R. Civ. P. 10(c)),  the rules do not authorize the wholesale incorporation by reference of an entire pleading.  *See NCUA Bd. v. Mor-gan Stanley & Co.*, No. 13 Civ. 6705 (DLC), 2014 WL 1673351, at *9 (S.D.N.Y. Apr. 28, 2014) (striking defense where defendant attempted to "incorporate the affirmative defenses in answers filed by defendants *in other actions* into its answer" (emphasis in original)); *David v. Bifani*, No. 07-cv-00122-MEH-BNB, 2007 WL 1216518, at *1 (D. Colo. Apr. 24, 2007) (striking attempt "to incorporate by reference wholesale the allegations in a complaint in a completely separate ac-tion").

Such wholesale incorporation of mooted pleadings in another action is "a blatant viola-tion of Rule 8(a)(2)'s direction that a civil plaintiff provide a short and plain statement of the claim showing that the pleader is entitled to relief."  *U.S. v. Int'l Longshoremen's Ass'n*, 518 F.

- 24 -

Supp. 2d 422, 463 (E.D.N.Y. 2007) (internal quotations omitted). Indeed, "if all of the allega-

tions in the prior pleadings are deemed to be incorporated into the [Complaint], then the [Com-

plaint] would become an unintelligible morass of self-contradictory allegations" and "would in

itself be grounds for dismissing the [Complaint pursuant] to Rules 12(b)(6) and 8(a)(2)." *Id.*

462, n.72 & 466 (rejecting the attempted incorporation of pleadings from prior proceedings and

holding that the complaint "must be dismissed for failure to comply with Rule 8(a)").

      For the reasons set forth above, the Complaint fails to provide fair notice of the facts

upon which the Trustee relies to establish an essential element of his claims—the avoidance of

the alleged initial transfers—and fails to comply with Rules 8(a) and 10(c).  Accordingly, the

Complaint should be dismissed.

## IV.   THIS COURT LACKS PERSONAL JURISDICTION OVER FULLERTON

      In this action the Trustee seeks to assert jurisdiction over Fullerton, a foreign company

that is not alleged to have any connection to New York or the United States.  Fullerton is based

in and organized under the laws of Singapore.  There are no statements in the Complaint alleging

that Fullerton is incorporated or headquartered in New York or even in the United States.  Thus,

there is no general jurisdiction over Fullerton.  *See Daimler AG v. Bauman*, 571 U.S. 117, 136-

37 (2014).

      The Court also lacks specific personal jurisdiction over Fullerton.  While Trustee alleges,

upon information and belief, that Fullerton and Fairfield entered into a Subscription Agreement

with a New York forum selection clause, the Trustee is not a party to that agreement and cannot

invoke it as a basis for personal jurisdiction over Fullerton.  *See Dean St. Cap. Advisors, LLC v.

Otoka Energy Corp.*, No. 15-cv-824 (RJS), 2017 WL 476720, at *2, 4, 5 (S.D.N.Y. Feb. 2,

2017).  Indeed, in *Fairfield I*, this Court concluded that the execution of certain subscription

- 25 -

agreements, without more, did not subject the defendants—including Fullerton—to personal jurisdiction. *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, No. 10-13164 (SMB), 2018 WL 3756343, at *11-12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*"). Specifically, this Court held that the New York choice-of-forum provisions in the subscription agreement were not applicable to the disputes concerning subsequent transfers because the Fairfield Liquidators' claim is solely based on redemptions and does not arise out of the subscription agreements. *Id,.* at *11 (adhering to the Privy Council's holding "that the Subscription Agreement was irrelevant to actions to recover the inflated redemption payments").

The Trustee has made no factual allegations to suggest that Fullerton should have foreseen that a non-party to the subscription agreement would seek to enforce any of its terms. Nor are the Trustee's claim under the Bankruptcy Code in any way predicated on the terms of the subscription agreement. This is not a dispute regarding Fullerton's performance under the contract, and the Trustee was not and has not alleged he was a third-party beneficiary of subscription agreement. Accordingly, the Trustee may not enforce any forum selection clause against Fullerton. *See Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701–02 (2d Cir. 2009) (finding that non-signatories to an agreement cannot be bound by agreement's forum selection clause absent rare exceptions not applicable here); *Lavazza Premium Coffees Corp. v. Prime Line Distrib. Inc.*, No. 20 Civ. 9993 (KPF), 2021 WL 5909976, at *7 (S.D.N.Y. Dec. 10, 2021) (rejecting enforcement of forum selection clause for a non-party plaintiff bringing claims outside of the clause's scope).

Also unavailing are the Trustee's barebones allegations that Fullerton "knowingly direct[ed] funds to be invested with New York-based BLMIS through Fairfield Sentry" and "knowingly received subsequent transfers from BLMIS by withdrawing money from Fairfield

- 26 -

Sentry." Compl. ¶ 6.  The law is clear that anticipated performance in New York *by a third party* does not show purposeful availment.  Indeed, even when a foreign defendant contracts *directly* with a forum resident, that alone does not suffice to show purposeful availment.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985).  The fact that a third party might take action in New York is the type of "unilateral activity" that cannot establish that the *defendant* had the required contact with the forum.  *See Walden v. Fiore*, 571 U.S. 277, 291 (2014).

Courts have refused to find specific jurisdiction over a nonresident defendant based on allegations that the defendant contracted with a party that performed or was expected to perform under the contract in New York.[22]  As the New York Court of Appeals has explained, "[t]he mere receipt by a nonresident of benefit or profit from a contract performed by others in New York is clearly not an act by the recipient in this State sufficient to confer jurisdiction under our longarm statute." *Ferrante Equip. Co. v. Lasker-Goldman Corp.*, 26 N.Y.2d 280, 285 (1970) (citation omitted).  Thus, whether Fullerton profited from Fairfield or Madoff Securities' activities in New York does nothing to establish that Fullerton purposefully availed itself of the benefits of New York law.

Moreover, the Trustee's allegation, upon mere information and belief, that Fullerton wired funds to Fairfield through a bank account in New York is insufficient to establish specific jurisdiction under New York law.  *See Hau Yin To v. HSBC Holdings, PLC,* No. 15-CV-3590-LTS-SN, 2017 WL 816136, at *6. (S.D.N.Y. Mar. 1, 2017), *aff'd,* 700 F. App'x 66 (2d Cir.

---

[22] *See, e.g.*, *Roper Starch Worldwide, Inc. v. Reymer & Assocs.*, *Inc.,* 2 F. Supp. 2d 470, 474 (S.D.N.Y. 1998) (defendant's "knowledge of, and acquiescence in," New York plaintiff's performance in New York of services under the parties' contract did not suffice to establish personal jurisdiction over nonresident corporation); *SunLight Gen. Cap. LLC v. CJS Invs. Inc.*, 114 A.D.3d 521, 522 (1st Dep't 2014) ("Plaintiff's actions within New York" in connection with contract with out-of-state defendant could not "be imputed to [defendant] for jurisdictional purposes").

2017) (rejecting personal jurisdiction over foreign defendants because their alleged connection to
the forum was the transmission of information and funds "to and from BLMIS . . . [as an] inci-
dental consequence[] of fulfilling a foreign contract"); *Letom Mgmt. Inc. v. Centaur Gaming,
LLC*, No. 17 Civ. 3793 (PAE), 2017 WL 4877426, at *7 (S.D.N.Y. Oct. 27, 2017) (fact that con-
tract negotiated and executed outside New York required payments to New York bank account
did not confer specific jurisdiction); *Hill v. HSBC Bank plc,* 207 F. Supp. 3d 333, 339-40
(S.D.N.Y. 2016) (finding transmission of information and funds to and from BLMIS to be "inci-
dental consequences of fulfilling a foreign contract . . . insufficient to 'project' the Foreign De-
fendants into New York" and not amounting "to 'purposeful availment' of the laws of [the fo-
rum]"); *Pramer S.C.A. v. Abaplus Int'l Corp.*, 76 A.D.3d 89, 96 (1st Dep't 2010) ("[T]he mere
payment into a New York account does not alone provide a basis for New York jurisdiction, es-
pecially when all aspects of the transaction occur out of state, absent more extensive New York
banking relating to the transaction in issue.") (citations omitted); *see also Universal Trading &
Inv. Co. v. Tymoshenko,* No. 11 Civ. 7877 (PAC), 2012 WL 6186471, at *3 (S.D.N.Y. 2012)
("[C]ourts have long recognized that there are significant policy reasons which caution against
the exercise of personal jurisdiction based only on . . . a correspondent bank account.") (internal
quotation marks omitted); *Tamam v. Fransabank Sal,* 677 F. Supp. 2d 720, 727 (S.D.N.Y. 2010)
("[C]ourts in this district have routinely held that merely maintaining a New York correspondent
bank account is insufficient to subject a foreign bank to personal jurisdiction.") (collecting
cases).

      The Trustee's remaining allegations regarding specific jurisdiction are also pled on infor-
mation and belief.  *See* Compl. ¶ 7.  Tellingly, these are general allegations and there are no

- 28 -

specific facts to support the Trustee's conclusory statements.  The Trustee bears the burden of establishing jurisdiction over Fullerton, a burden that cannot be met with mere information and belief.

Finally, the exercise of personal jurisdiction over Fullerton would be unreasonable under the Due Process Clause to the Fifth Amendment to the Constitution. "In addition to the minimum contacts analysis, due process requires courts to consider the reasonableness of subjecting the defendant to personal jurisdiction to ensure that it comports with 'traditional notions of fair play and substantial justice.'" *In re Bozel S.A.*, 434 B.R. 86, 100 (Bankr. S.D.N.Y.) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 476 (1985)).  Here, requiring Fullerton, a Singaporean entity, to defend an action in the United States, with respect to investments in a BVI entity, would be a significant and unreasonable burden.  There is no indication in the Complaint that has Fullerton has a presence or relevant evidence in the United States.  Meanwhile, the Trustee is armed with virtually unlimited resources and has availed himself of the opportunity to sue all over the world. He could have done so here.

Accordingly, there is no basis for asserting jurisdiction over Fullerton, specific or otherwise, and the Complaint should be dismissed.

## CONCLUSION

For the reasons set forth herein, Fullerton respectfully requests that the Court dismiss the Complaint in its entirety, with prejudice, and grant such other relief as is appropriate under the circumstances.

Dated: New York, New York
March 18, 2022

ARNOLD & PORTER KAYE SCHOLER LLP

By:   _/s/ Kent A. Yalowitz_

       Kent A. Yalowitz
       Daniel R. Bernstein
       250 West 55th Street
       New York, New York  10022
       (212) 715-1000

*Counsel for Defendant Fullerton Capital Pte. Ltd.*

- 30 -

US 171553867