**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Proc. No. 08-01789 (CGM) |
| *Plaintiff-Applicant*, | |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| *Defendant*. | |
| In re | |
| BERNARD L. MADOFF, | |
| *Debtor*. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Proc. No. 11-02730 (CGM) |
| *Plaintiff*, | |
| v. | |
| ASB BANK CORP., | |
| *Defendant*. | |

**ASB BANK CORP'S MEMORANDUM OF LAW IN**
**SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

i

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ..........................................................................................................................3

STANDARD ON MOTION TO DISMISS...................................................................................5

ARGUMENT ...............................................................................................................................6

I.    The Trustee's Claims are Barred by the Safe Harbor of Section 546(E) ........................6

    A.    The Alleged Initial Transfers Were Made More Than Two Years Before
the Filing Date, Making the Section 548(a)(1)(A) Exception Inapplicable ........8

    B.    The Alleged Initial Transfers Were Made by, to, or for the Benefit, of
Covered Entities..................................................................................................9

        1.    The Alleged Initial Transfers Were Made by a Stockbroker..................9

        2.    The Alleged Initial Transfers Were Made to (or for the Benefit
of) a "Financial Institution." .................................................................10

    C.    The Alleged Initial Transfers Were "Settlement Payments" and Made "in
Connection with Securities Contracts"...........................................................12

    D.    The Trustee Has Not Alleged that ASB Had Actual Knowledge of the
Madoff/ BLMIS Fraud......................................................................................15

II.    The Trustee's Claims Must Be Dismissed for Failure to Plead That ASB
Received BLMIS Customer Property ...........................................................................19

III.    The Trustee Has Failed to Adequately Plead the Avoidability of the Alleged
Initial Transfers and Adoption of the Entire Fairfield Amended Complaint by
Reference is Improper...................................................................................................26

IV.    The Complaint Does Not Adequately Allege Facts Showing That ASB Is
Subject To Personal Jurisdiction..................................................................................29

CONCLUSION...........................................................................................................................35

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Aguas Lenders Recovery Grp. v. Suez, S.A.*,
  585 F.3d 696 (2d Cir. 2009)...................................................34

*Al Rushaid v. Pictet & Cie*,
  28 N.Y.3d 316 (2016) .......................................................32

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................5, 20, 27

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................5, 20, 25

*Burger King v. Rudzewicz*,
  471 U.S. 462 (1985)...........................................................35

*Charles Schwab Corp. v. Bank of Am. Corp.*,
  883 F.3d 68 (2d Cir. 2018)..................................................29

*Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
  651 F.3d 329 (2d Cir. 2011)...............................................17

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)...........................................................29

*David v. Bifani*,
  No. 07-cv-00122-MEH-BNB, 2007 WL 1216518 (D. Colo. Apr. 24, 2007).........................28

*Dean St. Cap. Advisors, LLC v. Otoka Energy Corp.*,
  No. 15-cv-824 (RJS), 2017 WL 476720 (S.D.N.Y. Feb. 2, 2017) .........................34

*Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*,
  323 B.R. 857 (Bankr. S.D.N.Y. 2005) ....................................10, 12, 17

*Fairfield Sentry Ltd. (In Liquidation) v. Migani et al*,
  [2014]..............................................................................13

*Fairfield Sentry Ltd. v. Citco Global Custody NV*,
  No. 19-1122 (Bankr. S.D.N.Y. Nov. 26, 2019) ....................................25

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
  No. 10-13164 (SMB), 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018)...............13, 34, 35

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
No. 10-13164 (SMB), 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ................ *passim*

*Garfinkle v. Conf. on Jewish Material Claims Against Germany, Inc.*,
No. 19-CV-7007 (JPO), 2020 WL 6323462 (S.D.N.Y. Oct. 28, 2020)...................................25

*Hau Yin To v. HSBC Holdings, PLC*,
No. 15-CV-3590-LTS-SN, 2017 WL 816136, (S.D.N.Y. Mar. 1, 2017) .........................32, 33

*Heinert v. Bank of Am. N.A.*,
835 F. App'x 627 (2d Cir. 2020) .........................................................................................15

*In re Bozel S.A.*,
434 B.R. 86 (Bankr. S.D.N.Y. 2010) ...................................................................................35

*In re Caremerica, Inc.*,
409 B.R. 737 (Bankr. E.D.N.C. 2009) .................................................................................20

*In re Fairfield Sentry Ltd.*,
596 B.R. 275 (Bankr. S.D.N.Y. 2018) ..................................................................................14

*In re Int'l Admin. Servs., Inc.*,
408 F.3d 689 (11th Cir. 2005) .............................................................................................19

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
917 F.3d 85 (2d Cir. 2019)...............................................................................................5, 26

*In re Tribune Co. Fraudulent Conv. Litig.*,
10 F.4th 147 (2d Cir. 2021) ................................................................................................13

*In re Tribune Co. Fraudulent Conveyance Litig.*,
946 F.3d 66 (2d Cir. 2019)........................................................................................... *passim*

*Intel Corp. Inv. Policy Comm. v. Sulyma*,
140 S. Ct. 768 (2020)...........................................................................................................15

*Kimco Exch. Place Corp. v. Thomas Benz, Inc.*,
34 A.D.3d 433 (2d Dep't 2006) ..........................................................................................34

*LaMonica v. CEVA Grp. PLC (In re CIL Ltd.)*,
582 B.R. 46 (Bankr. S.D.N.Y. 2018) .....................................................................................6

*Lavazza Premium Coffees Corp. v. Prime Line Distribs. Inc.*,
No. 20 Civ. 9993 (KPF), 2021 WL 5909976 (S.D.N.Y. Dec. 10, 2021)................................34

*Law v. Siegel*,
571 U.S. 415 (2014).............................................................................................................18

*Lehman Bros. Special Fin. Inc. v. Bank of Am. N.A. (In re Lehman Bros. Holdings Inc.)*,
 535 B.R. 608 (Bankr. S.D.N.Y. 2015) ......................................................................6

*Letom Mgmt. Inc. v. Centaur Gaming, LLC*,
 No. 17 Civ. 3793 (PAE), 2017 WL 4877426 (S.D.N.Y. Oct. 27, 2017) ................................33

*Lyon v. Forbes (In re Forbes)*,
 372 B.R. 321 (B.A.P. 6th Cir. 2007) ........................................................................19

*Manko Window Sys., Inc. v. Prestik*,
 No. 16-2818-JAR-JPO, 2017 WL 4355580 (D. Kan. Sept. 29, 2017) ................................35

*McKee Elec. Co. v. Rauland-Borg Corp.*,
 20 N.Y.2d 377 (1967) .........................................................................................31

*Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*,
 138 S. Ct. 883 (2018) ......................................................................................7, 18

*NCUA Bd. v. Morgan Stanley & Co.*,
 No. 13 Civ. 6705 (DLC), 2014 WL 1673351 (S.D.N.Y. Apr. 28, 2014) ..............................28

*New Hampshire v. Maine*,
 532 U.S. 742 (2001) ..........................................................................................11

*Nycomed US, Inc. v. Glenmark Generics, Ltd.*,
 No. 08-CV-5023 (CBA)(RLM), 2010 U.S. Dist. LEXIS 29267 ...........................................27

*O'Connor v. DL-DW Holdings, L.L.C. (In re Extended Stay, Inc.)*,
 No. 09-13764-JLG, 2020 WL 10762310 (Bankr. S.D.N.Y. Aug. 8, 2020) .............................21

*Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
 322 F.3d 147 (2d Cir. 2003) .................................................................................15

*Pani v. Empire Blue Cross Blue Shield*,
 152 F.3d 67 (2d Cir. 1998) ....................................................................................6

*Papasan v. Allain*,
 478 U.S. 265 (1986) .............................................................................................5

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
 712 F.3d 705 (2d Cir. 2013) .................................................................................25

*Picard v. BNP Paribas S.A. (In re Madoff)*,
 594 B.R. 167 (Bankr. S.D.N.Y. 2018) ...................................................................30, 32

*Picard v. Bureau of Labor Insurance (In re Securities Investor Protection SIPA Liquidation Corp.)*,
 480 B.R. 501 (Bankr. S.D.N.Y. 2012) ...................................................................30, 31

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   12 F.4th 171 (2d Cir. 2021), ................................................................18, 26

*Picard v. Crédit Agricole (Suisse) S.A.*,
   No. 12-1022 (CGM) (Bankr. S.D.N.Y. Feb. 24, 2022) ........................................21

*Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*,
   773 F.3d 411 (2d Cir. 2014)................................................................ *passim*

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
   515 B.R. 117 (Bankr. S.D.N.Y. 2014) ..............................................................16, 23

*Picard v. Quilvest Fin. Ltd.*,
   No. 11-2538 (CGM) (Bankr. S.D.N.Y. Mar. 1, 2022).....................................21

*Picard v. Schroder & Co. Bank AG*,
   No. 12-1210 (CGM) (Bankr. S.D.N.Y. Feb. 22, 2022)...................................21

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Secs. LLC)*,
   542 B.R. 100 (Bankr. S.D.N.Y. 2015) ...........................................................19, 20

*Pramer S.C.A. v. Abaplus Int'l Corp.*,
   76 A.D.3d 89 (1st Dep't 2010) ...........................................................................33

*Rajala v. Spencer Fane LLP (In re Generation Res. Holding Co, LLC)*,
   964 F.3d 958 (10th Cir. 2020) ............................................................................19

*Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*,
   151 F.Supp.2d 371 (S.D.N.Y. 2001)....................................................................6

*Rothman v. Gregor*,
   220 F.3d 81 (2d Cir. 2000)..................................................................................15

*Sapia v. Home Box Office, Inc.*,
   No. 18 Civ. 1317 (CM), 2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018)..................26

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   454 B.R. 285 (Bankr. S.D.N.Y. 2011) ................................................................31

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   501 B.R. 26 (S.D.N.Y. 2013).............................................................................27

*Shaffer v. Heitner*,
   433 U.S. 186 (1977).............................................................................................29

*Silverman v. Actrade Cap., Inc. (In re Actrade Fin. Techs. Ltd.)*,
   337 B.R. 791 (Bankr. S.D.N.Y. 2005) ..............................................................18

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
   379 B.R. 5 (S.D.N.Y. 2007)................................................................................19

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
   490 B.R. 46 (S.D.N.Y. 2013)................................................................................1

*SIPC v. Bernard L. Madoff Inv. Sec. LLC* (*Picard v. Fairfield Inv. Fund Ltd.*),
   No. 08-01789, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) (Morris, C.J.) ........ *passim*

*SIPC v. Bernard L. Madoff Inv. Sec.*
   No. 12 MC 115 (JSR) ........................................................................................11

*SIPC v. Bernard L. Madoff Inv. Secs. LLC*,
   476 B.R. 715 (S.D.N.Y. 2012), *aff'd*, 773 F.3d 411 (2d Cir. 2014) .........................9

*SPV Osus Ltd. v. UBS AG*,
   114 F. Supp. 3d 161 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018) ...........31

*SPV Osus Ltd. v. UBS AG*,
   882 F.3d 333 (2d Cir. 2018)...............................................................................29

*Tamam v. Fransabank Sal*,
   677 F. Supp. 2d 720 (S.D.N.Y. 2010)................................................................33

*Taylor v. Sturgell*,
   553 U.S. 880 (2008)............................................................................................11

*U.S. v. Int'l Longshoremen's Ass'n*,
   518 F. Supp. 2d 422 (E.D.N.Y. 2007) ..........................................................28, 29

*Universal Trading & Inv. Co. v. Tymoshenko*,
   No. 11 Civ. 7877 (PAC), 2012 WL 6186471 (S.D.N.Y. Dec. 12, 2012) ...............33

*Walden v. Fiore*,
   571 U.S. 277 (2014)......................................................................................30, 31

*Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Tech. LLC*,
   No. 19-cv-3444 (VSB), 2020 WL 5503557 (S.D.N.Y., 2020) ..............................31

## **Statutes**

11 U.S.C. § 101(22)(A)..........................................................................................10

11 U.S.C. § 101(53A)(B) ..........................................................................................9

11 U.S.C. § 546(e) .........................................................................................*passim*

11 U.S.C. § 550(a) .........................................................................6, 19, 21, 26

11 U.S.C. § 550(a)(1), (2) ..................................................................................6

11 U.S.C. § 741(7) .................................................................................7, 14, 18

11 U.S.C. § 741(7)(A)(i) ............................................................................13, 14

11 U.S.C. § 741(8) ...........................................................................................18

11 U.S.C. § 551 .................................................................................................3

11 U.S.C. § 544 .................................................................................................3

NYDCL §§ 273-279 .........................................................................................21

15 U.S.C. § 78aaa *et seq.* ................................................................................3

15 U.S.C. § 78fff-2(c)(3) ...................................................................................4

## **Other Authorities**

5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
1357 (3d ed. 2004) ......................................................................................6

CPLR § 302(a)(1) ...........................................................................................31

Fed. R. Civ. P. 10(c) .......................................................................................28

Fed. R. Civ. P. 12(b)(6) ...............................................................................5, 6

Fed. R. Civ. P. 12(b)(2) ...................................................................................1

Fed. R. Civ. P. 8(a) .......................................................................................29

Fed. R. Civ. P. 10(c) .......................................................................................29

Defendant ASB Bank Corp. ("**ASB**")[1] submits this memorandum of law and the accompanying declaration of Lucas B. Barrett (the "**Barrett Declaration**") in support of its motion to dismiss the Complaint, ECF 1 (the "**Complaint**"),[2] filed by plaintiff Irving H. Picard, Trustee (the "**Trustee**") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("**BLMIS**") and the Estate of Bernard L. Madoff, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## PRELIMINARY STATEMENT

The Trustee has asserted a single cause of action under Section 550 of Title 11 of the United States Code (the "**Bankruptcy Code**") to recover from ASB, a foreign bank, purportedly avoidable transfers that originated with BLMIS and that ASB allegedly received from Fairfield Sentry Limited ("**Sentry**") more than three years before BLMIS filed for bankruptcy. The Complaint should be dismissed in its entirety for the following independent reasons:

*First*, the Complaint fails to state a subsequent transferee claim against ASB, because Section 546(e)'s safe harbor protects the alleged transfers from avoidance. Under this Circuit's controlling law, the alleged initial transfers to Sentry are covered by Section 546(e), because they were made by or to (or for the benefit of) a stockbroker or financial institution and were a settlement payment or transfer in connection with a securities contract. No exception to the safe harbor applies here: the transfers were made outside Section 548(a)(1)(A)'s two-year lookback period, and ASB is not alleged to have had knowledge of BLMIS's fraud. As a result, Section 546(e) bars the Trustee's sole claim for relief.

---

[1] Following commencement of this adversary proceeding, ASB Bank Corp., became the successor by merger to original defendant, Atlantic Security Bank. The caption for this adversary was amended to reflect that change pursuant to that certain Stipulation and Order (ECF 103) entered on December 27, 2021. By making this motion to dismiss, ASB is not waiving — and expressly reserves — its right to have an Article III court enter a final judgment in this proceeding. *See SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 490 B.R. 46, 58 (S.D.N.Y. 2013).

[2] Unless otherwise noted, all ECF citations refer to Adv. Proc. No. 11-02730 (CGM).

*Second*, the Complaint should be dismissed for lack of plausible allegations that the funds ASB received from Sentry are BLMIS customer property. The Complaint does not plead sufficient facts tracing ASB's redemptions to avoidable transfers of BLMIS customer property. Indeed, the alleged amount of customer property received at any one time by Sentry was dwarfed by the sums transferred out of Sentry back to BLMIS and to investors. Thus, even if the Complaint contained factual allegations as to the avoidability of initial transfers—which it does not—the Complaint still is bereft of plausible allegations that the transfers from Sentry to ASB contained any BLMIS customer property.

*Third*, the Complaint fails to plead the avoidability of the alleged initial transfers and instead improperly seeks to incorporate by reference allegations contained in a separate complaint against numerous nonparties to this adversary case. This wholesale incorporation of a separate (not to mention, superseded) complaint violates the Federal Rules of Civil Procedure.

*Fourth*, the Complaint fails to allege facts sufficient to support personal jurisdiction over ASB, a foreign bank that invested with a foreign fund.[3] ASB is not alleged to have maintained an office in New York, executed any contracts in New York, or regularly visited New York. Nor can jurisdiction be based on the Trustee's conclusory, cookie-cutter allegations that ASB purposely availed itself of the benefits and privileges of doing business in the State through Sentry, a third party. Accordingly, the Complaint should be dismissed for lack of personal jurisdiction, as well as for failure to state a claim upon which relief can be granted.[4]

---

[3] The original defendant, Atlantic Security Bank, was incorporated in the Cayman Islands with its principal place of business in Panama City, Panama. Comp. ¶21. ASB, as the successor to Atlantic Security Bank, is incorporated in the Republic of Panama. *See* Barrett Decl. Ex. I & J; ¶¶ 10, 11.

[4] ASB is aware there are a number of pending motions to dismiss filed by other subsequent transferee defendants. To the extent that the Court decides to dismiss other subsequent transferee cases pending before the Court that present similar arguments—e.g., the Section 546(e), avoidability, and/or customer property issues —and do not present a jurisdictional challenge, this Court has the discretion to decide those issues in those cases and apply its rulings to this one without having to reach ASB's jurisdictional defense.

# BACKGROUND

This action is one of many in which the Trustee, appointed under the Securities Investor Protection Act ("**SIPA**"), 15 U.S.C. § 78aaa *et seq.*, seeks to recover subsequent transfers that foreign defendants received from foreign investment funds, such as Sentry. Sentry is currently in liquidation in the British Virgin Islands ("**BVI**"). Compl. ¶ 2.

ASB is not alleged to have been a BLMIS customer, but instead to have invested in Sentry, which allegedly entrusted most, but not all, of its money to BLMIS. The Trustee alleges that Sentry transferred to ASB funds that were previously transferred by BLMIS to Sentry. *Id.* ¶¶ 33, 40. According to the Trustee, all of these alleged subsequent transfers to ASB occurred on or before June 15, 2005, more than three years before BLMIS's filing date. *Id.*, Ex. D.

The sums at issue in the alleged subsequent transfers here are supposedly part of approximately $3 billion that BLMIS paid to Sentry over six years before BLMIS's filing date, representing the proceeds of those fund's redemptions of BLMIS shares. Compl. ¶ 35. In a separate adversary proceeding filed in the Bankruptcy Court, *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. 2009) ("***Picard v. Fairfield***"), the Trustee claimed that these transfers were "avoidable, and recoverable under sections 544, 550 and 551 of the Bankruptcy Code, §§ 273-279 of the New York Debtor and Creditor Law, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3)." Compl. ¶¶ 34-35.[5] The Trustee purports to incorporate by reference each of the allegations in a 217-page, 798-paragraph, now superseded

---

[5] Certain of the background facts set forth herein, and assumed to be truth merely for purposes of this motion, are taken in part from the allegations contained in the Complaint and the filings in *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-01239.

3

Amended Complaint (the "**Fairfield First Amended Complaint**) filed in that other proceeding. *Id*.[6]

The Trustee and the Fairfield Liquidators entered into a settlement agreement (the "**Fairfield Settlement Agreement**") on or about May 9, 2011, that among other things, provides for the sharing of recoveries on the Trustee and Fairfield Liquidators' claims for recovery of property that Sentry transferred, cooperation and consultation on bringing those claims, and a joint interest agreement. *See Picard v. Fairfield,* (Adv. Pro. No. 09-01239) (ECF 69-2); Barrett Decl. Ex. D.

On September 22, 2011, the Trustee commenced this action against ASB, seeking to recover transfers it allegedly received from Sentry. The Trustee's complaint contains a single claim under SIPA and Sections 550 and 551 of the Bankruptcy Code for "Recovery of Subsequent Transfers," in an amount of "approximately $120,168,691." Compl. ¶ 40. While alleging "Recovery of Subsequent Transfers," the Complaint does not allege the date or amount of ASB's investment with Sentry, or the date or amount of ASB' investment with Sentry that ultimately went to BLMIS. The Trustee does not allege that ASB knew Madoff was operating a Ponzi scheme, willfully turned a blind eye to his Ponzi scheme, or was even on inquiry notice of the Ponzi scheme. Nor does the Trustee plead that ASB received the alleged subsequent transfer from Sentry in bad faith.[7]

---

[6] In July 2010, the Trustee filed the Fairfield First Amended Complaint in *Picard v. Fairfield* (ECF 23). On August 28, 2020, the Trustee filed a Second Amended Complaint in *Picard v. Fairfield* (ECF 286) (the "**Fairfield Second Amended Complaint**").

[7] The Fairfield Liquidators also filed actions in the Bankruptcy Court against many of the same parties sued by the Madoff Trustee, including against ASB in 2012. *See* Adv. Pro. No. 12-01550 (CGM). The complaint filed by the Fairfield Liquidators against ASB has been dismissed, subject to appeal. In the Fairfield action against ASB, the Fairfield Liquidators never asserted that ASB was a "Knowledge Defendant" and, in fact, stipulated that they had "not asserted that [ASB] is a 'Knowledge Defendant,' as defined in the December 2018 Decision" in the Stipulated Final Order of Dismissal that was "so ordered" by the Bankruptcy Court on April 2, 2019. (ECF 34) at 4, 7. Accordingly, neither the Fairfield Liquidators nor the Trustee has ever alleged that ASB had any knowledge of Madoff's fraud.

4

Soon after the Complaint was filed, the District Court withdrew the reference of this action, along with numerous others for the purpose of addressing various gating issues. After addressing those issues, the District Court referred this case back to the Bankruptcy Court in July 2014. ASB subsequently moved to dismiss this action on the ground that the Trustee's claim is an improper extraterritorial application of the Bankruptcy Code. Similar motions were made in approximately 90 other cases presenting the same issue. By decision dated March 3, 2017 (ECF. 85), the Bankruptcy Court granted the extraterritoriality motion and this action was dismissed. On February 25, 2019, the Second Circuit reversed, (*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85 (2d Cir. 2019)), and following the denial of a petition for certiorari in June 2020, the Second Circuit issued its mandate vacating the judgment, with the case returned to this Court. (ECF. 93).

## STANDARD ON MOTION TO DISMISS

The Court must dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). A claimant's allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) *cert. granted*, 132 S. Ct. 472 (2011) (quoting *Twombly*, 550 U.S. at 570). A plausible claim pleads facts "that allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

While the Court must accept well-pleaded factual allegations as true, it need not accept assertions that are unsupported by factual allegations, (*Iqbal*, 556 U.S. at 678–79), nor "legal conclusion couched as a factual allegation[,]" (*Papasan v. Allain*, 478 U.S. 265, 286 (1986)), nor "conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings

5

rely." *Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*, 151 F.Supp.2d 371, 405 (S.D.N.Y. 2001).

Defenses that appear on the face of the complaint are properly before the Court on a motion to dismiss. *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint."); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 708-13 (3d ed. 2004) (explaining that a complaint may be dismissed if the plaintiff alleges facts that, taken as true, establish an affirmative defense).

To survive a motion to dismiss under Rule 12(b)(2), "the plaintiff bears the burden to make a prima facie showing that jurisdiction exists." *Lehman Bros. Special Fin. Inc. v. Bank of Am. N.A., (In re Lehman Bros. Holdings Inc.)*, 535 B.R. 608, 618 (Bankr. S.D.N.Y. 2015).

## ARGUMENT

### I.   THE TRUSTEE'S CLAIMS ARE BARRED BY THE SAFE HARBOR OF SECTION 546(E)

The Trustee's sole cause of action against ASB is asserted under Section 550(a), which provides that, to the extent a transfer is avoided under enumerated Bankruptcy Code provisions, "the trustee may recover, for the benefit of the estate, the property transferred," or its value, from "the initial transferee" or any subsequent "transferee of such initial transferee." 11 U.S.C. § 550(a)(1), (2).[8]  However, "[t]he Code sets out a number of limits on the exercise of these

---

[8] The Trustee also invokes Section 551, *see* Compl. ¶ 46, but that section of the Code "does not provide for an independent cause of action." *LaMonica v. CEVA Grp. PLC, (In re CIL Ltd.)*, 582 B.R. 46, 97 (Bankr. S.D.N.Y. 2018), *amended on reconsideration on other grounds*, No. 13-11272, 2018 WL 3031094 (Bankr. S.D.N.Y. June 15, 2018).

avoiding powers," including the safe harbor of Section 546(e). *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 138 S. Ct. 883, 889 (2018) ("***Merit***"). Section 546(e) applies here. [9]

Specifically, Section 546(e) of the Bankruptcy Code *bars* a trustee from avoiding a transfer (other than under Section 548(a)(1)(A), which has only a two-year lookback period) if that transfer, (1) was made "by or to (or for the benefit of)" a covered entity, such as a stockbroker or financial institution; and (2) was either a settlement payment or a transfer in connection with a securities contract. 11 U.S.C. § 546(e).[10]   The Section 546(e) safe harbor is available as a defense to subsequent transferees.  *See SIPC v. Bernard L. Madoff Inv. Sec. LLC* (*Picard v. Fairfield Inv. Fund Ltd.*), No. 08-01789, 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021) (Morris, C.J.) ("Where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, . . . the subsequent transferee is nonetheless entitled to raise a § 546(e) defense against recovery of those funds.").

The Second Circuit has instructed courts to enforce Section 546(e)'s safe harbor whenever it applies by its terms.  In construing Section 546(e) in the context of avoidance actions brought by the Trustee, the Second Circuit has explained that "in enacting the Bankruptcy Code, Congress struck careful balances between the need for an equitable result for the debtor and its creditors,

---

[9] Section 546(e) also preempts state law claims seeking to unwind redemptions. *Tribune I,* 946 F.3d, at 81, 90.
[10] Section 546(e) provides:

> Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not avoid a transfer that is a margin payment, as defined in section 101, 741, or 761 of this title, or settlement payment, as defined in section 101 or 741 of this title, made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, or that is a transfer made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, in connection with a securities contract, as defined in section 741(7), commodity contract, as defined in section 761(4), or forward contract, that is made before the commencement of the case, except under section 548(a)(1)(A) of this title.

As discussed in more detail below, all of the alleged transfers to ASB are outside of the two-year look back period under Section 548(a)(1)(A).

and the need for finality." *Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411, 423 (2d Cir. 2014) (citation omitted). In particular, "by enacting §546(e), Congress provided that, for a very broad range of securities-related transfers, the interest in finality is sufficiently important that they cannot be avoided by a bankruptcy trustee at all, except as actual fraudulent transfers under § 548(a)(1)(A)." *Id.* "Unwinding settled securities transactions . . . would seriously undermine . . . markets in which certainty, speed, finality, and stability are necessary to attract capital." *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 90 (2d Cir. 2019) ("***Tribune I***"). "Permitting the clawback of millions, if not billions, of dollars from BLMIS clients—many of whom are institutional investors and feeder funds—would likely cause the very 'displacement' that Congress hoped to minimize in enacting § 546(e)." *Fishman*, 773 F.3d at 420 (citation omitted).

"[T]he application of Section 546(e) presents a straightforward question of statutory interpretation of the type that is appropriately resolved on the pleadings." *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, No. 10-13164 (SMB), 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ("***Fairfield II***") (quotation marks and citation omitted).

As shown below, BLMIS's transfers to Sentry relevant to this adversary proceeding are protected from avoidance by Section 546(e), which is a complete defense to the Complaint against ASB.

## A. The Alleged Initial Transfers Were Made More Than Two Years Before the Filing Date, Making the Section 548(a)(1)(A) Exception Inapplicable

The only statutory exception to Section 546(e) is under Section 548(a)(1)(A), which has a two-year lookback period. All of the alleged redemption payments from Fairfield to ASB occurred during or prior to 2005, with the most recent (and final) transfer alleged from Fairfield to ASB in the Complaint on June 15, 2005. Compl, Ex. D. Accordingly, all of the subsequent transfers

8

alleged against ASB in the Complaint occurred more than *three years* before the December 11, 2008 "Filing Date." *Id.* ¶10. This means that any purported BLMIS transfer of "customer property" to Fairfield to fund the redemption payments to ASB would have been before June 15, 2005. Therefore, since all the alleged initial transfers from BLIMS to Sentry referenced in paragraph 34 of the Complaint (the "**Initial Transfers**") were more than three years before the filing date, the exception in Section 546(e) for claims avoidable under Section 548(a)(1) is not applicable.

### B. The Alleged Initial Transfers Were Made by, to, or for the Benefit, of Covered Entities

The Initial Transfers were made by or to (or for the benefit of) an entity covered by Section 546(e), because they were made by a stockbroker (BLMIS) and *also* because they were made to or for the benefit of a financial institution (Sentry, Citco, and/or ASB itself).

### 1. The Alleged Initial Transfers Were Made by a Stockbroker.

The Code defines "stockbroker" to include entities "engaged in the business of effecting transactions in securities." 11 U.S.C. § 101(53A)(B). BLMIS falls within this definition, as Judge Rakoff concluded a decade ago in *SIPC v. Bernard L. Madoff Inv. Secs. LLC*, 476 B.R. 715, 719 (S.D.N.Y. 2012), *aff'd*, 773 F.3d 411 (2d Cir. 2014). In that decision, the District Court explained:

> Overall, Madoff Securities, which was registered as a stockbroker with the SEC, clearly engaged in securities transactions.… [E]ven assuming the truth of the allegation that Madoff Securities' investment advisory division never traded securities on behalf of clients, Madoff Securities nonetheless qualifies as a stockbroker by virtue of the trading conducted by its market making and proprietary trading divisions.

*Id.* As the Second Circuit subsequently observed, "[i]t is not disputed [by the Trustee] that BLMIS was a 'stockbroker' for the purposes of § 546(e)." *Fishman*, 773 F.3d at 417. This Court can—

9

and should—end its "covered entity" analysis here. The fact that the Initial Transfer was made by

a stockbroker satisfies the Section 546(e) requirement.

### 2. The Alleged Initial Transfers Were Made to (or for the Benefit of) a "Financial Institution."

The covered entity requirement is further satisfied here because the alleged Initial Transfers

were "made to (or for the benefit of)" a "financial institution." Indeed, the "financial institution"

element is met in at least two different ways.

*First*, the alleged initial transfers from BLMIS to Sentry constitute transfers made to a

"financial institution." There is no dispute that Sentry, the initial transferee, is a "financial

institution" under the Code, which defines "financial institution" to include both "an entity that is

a commercial or savings bank," and the bank's customer "when [the bank] entity is acting as agent

or custodian for a customer . . . in connection with a securities contract." 11 U.S.C. § 101(22)(A).

In *Fairfield II*, this Court held that the Fairfield Funds were "financial institutions" because they

were customers of a financial institution, Citco Bank Nederland N.V. Dublin Branch ("**Citco**

**Bank**"), a bank regulated by the Central Bank of the Netherlands and registered with the Central

Bank of Ireland,[11] which acted as their agent in connection with the securities contracts pursuant

to which the redemption payments were made. *Fairfield II*, 2020 WL 7345988, at *6-7 & n.11.

As this Court explained:

> [T]he [Fairfield] Liquidators' admission that redemptions were paid by
> Citco Bank establishes the necessary agency. It is implausible to infer that
> Citco Bank made the redemption payments to specific redeemers in specific

---

[11] *See* De Nederlandsche Bank, *Information Detail: Citco Bank Nederland N.V.*, https://www.dnb.nl/en/public-register/information-detail/?registerCode=WFTDG&relation Number=B0275 (last visited Mar. 15, 2022) (identifying Citco Bank Nederland N.V. as "[c]arrying on the business of a bank," including "[a]cceptance of deposits and other repayable funds"); Central Bank of Ireland, *Financial Service Provider Profile: Citco Bank Nederland NV Dublin Branch*, http://registers.centralbank.ie/FirmDataPage.aspx?firmReferenceNumber=C27278 (last visited Mar. 14, 2022) (classifying Citco Bank as a "Credit Institution … whose business is to receive deposits or other repayable funds from the public and to grant credits for its own account"). This Court can take judicial notice of information from such public registries. *See Tribune I*, 946 F.3d at 78; *Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*, 323 B.R. 857, 869 (Bankr. S.D.N.Y. 2005).

amounts absent the [Fairfield] Funds' directions to do so. Moreover, Citco
Bank accepted those directions by executing the redemption payments.
Based on the foregoing, the Funds were customers of Citco Bank who acted
as their agents in connection with the securities contracts pursuant to which
the redemption payments were made, and the Funds were, therefore
"financial institutions" within the meaning of 11 U.S.C. § 546(e).

2020 WL 7345988, at *7 (footnote omitted).

The holding in *Fairfield II* is equally applicable here and, indeed, is binding on the Trustee,
because he was in privity with the Fairfield Liquidators, who were litigating that action partly for
the Trustee's benefit.[12]  Additionally, the Trustee has made allegations in judicially noticeable
pleadings filed with the Court that Citco acted as Sentry's agent. *See Tribune I*, 946 F.3d at 79
(applying common-law meaning of agency for purposes of Section 546(e)).  The Trustee's
Complaint against ASB alleges that the Initial Transfers were made from BLIMIS Accounts
entitled "Citco Global Custody NV FBO Fairfield Sentry Ltd" (account numbers IFN012 and
IFN045).  Compl. Ex. B.  Accordingly, Sentry is a covered entity under Section 546(e).

*Second*, under the Trustee's own theory, the initial transfers were made "for the benefit of"
a financial institution.  Insofar as the Complaint alleges that Sentry's redemption payments to ASB
were tied to payments of customer property transferred from BLIMIS to Sentry (implausible as that
may be), the alleged Initial Transfers were settlement payments for the benefit of a financial

---

[12] In the Fairfield Settlement Agreement, the Trustee and the Fairfield Liquidators agreed to share recoveries on their
respective "clawback claims."  Barrett Decl. Ex. D.  Among other things, the Fairfield Settlement Agreement provides
for the sharing of recoveries on the parties' claims for recovery of property that Sentry transferred, cooperation and
consultation on bringing those claims, and a joint interest agreement. The Trustee's and the Liquidators' agreed joint
interest in any such recovered BLIMIS customer property constitutes a "preexisting 'substantive legal relationship,'"
focused on a successive or concurrent interest in property, of the kind recognized by the Supreme Court to give rise
to non-party issue preclusion. *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008).  Because the Trustee is in privity with the
Liquidators in actions to recover alleged BLIMIS customer property, such as the actions at issue in *Fairfield II*, and
because the issue of Sentry's "financial institution" status was "actually litigated" and "essential" to the final
judgments dismissing numerous such actions on the ground of the Section 546(e) safe harbor, this Court's finding in
*Fairfield II* that Sentry was a "financial institution" in connection with redemption payments from Sentry to its
subscribers is binding on the Trustee.  *See New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001) (stating
requirements for issue preclusion).

institution, ASB, and are therefore subject to the Section 546(e) safe harbor. *See SIPC v. Bernard L. Madoff Inv. Sec.* No. 12 MC 115 (JSR), *LLC*, 2013 WL 1609154, at *9 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"). Indeed, according to the Trustee's own allegations, ASB is a "bank." Compl. ¶ 3 (alleging that "ASB provided investment banking, financial advisory, trading and investment services to its clients."). Where, as here, "the Trustee alleges that a defendant is 'a banking institution'. . . the defendant may be deemed to constitute a protected 'financial institution' . . . for the purposes of Section 546(e) on the face of the complaint." *Cohmad*, at *8. Moreover, judicially noticeable public information confirms that Atlantic Security Bank (as the predecessor to ASB) is a bank. *See* Barrett Decl. Ex. I & J.[13] Thus, ASB—for whose benefit, the Trustee has pleaded, the alleged Initial Transfers were made—is clearly a "financial institution."

In sum, the Trustee's own pleadings provide independent bases (any one of which suffices) upon which the "covered entity" requirement in Section 546(e) is satisfied.

### C. The Alleged Initial Transfers Were "Settlement Payments" and Made "in Connection with Securities Contracts"

Also satisfied here is the final Section 546(e) requirement that the Initial Transfers be (1) "settlement payment[s]" or (2) "transfer[s] that were made by or to (or for the benefit of) a . . . stockbroker [or] financial institution . . . in connection with a securities contract." The Initial Transfers were both. As a result, ASB is protected by the Section 546(e) safe harbor.

In analogous circumstances, the Second Circuit concluded that transfers from BLMIS to its account holders within a six-year lookback period were protected from avoidance because they were made "in connection with" securities contracts and because they were "settlement payments."

---

[13] https://www.superbancos.gob.pa/superbancos/documents/laws_regulations/resolutions/2021/Resolution_130-2021_en.pdf?v=1.01 (last visited Mar. 14, 2022) (identifying Atlantic Security Bank as a "foreign corporation established according to the laws of the Cayman Islands" and the "holder of an International Banking License"). Courts can take judicial notice of such records, including for purposes of determining whether entities are covered under Section 546(e). *See Tribune I*, 946 F.3d at 80; *Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*, 323 B.R. 857, 869 (Bankr. S.D.N.Y. 2005); *Fairfield II*, 2020 WL 7345988, at *6.

*In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Revocable Trust)*, 773 F.3d 411,
417, 418–23 (2d Cir. 2014) ("***Fishman***"). Specifically, the Second Circuit concluded that the
documents governing BLMIS customers' accounts constituted securities contracts and that
therefore the payments made to account holders fall within Section 546(e). *Id*. at 418–22. In
addition, the court held that payments BLMIS made to its customers separately constituted
"settlement payments" protected by the safe harbor. *Id*. at 422–23. Each of these determinations
sufficed to invoke the safe harbor. The Second Circuit rejected the Trustee's argument that Section
546(e) did not apply because BLMIS did not actually carry out the promised securities
transactions. *See id*. at 417, 419–20.

The Second Circuit's reasoning in *Fishman* applies to the transfers the Trustee alleges
BLMIS made to Sentry. Those alleged transfers were clearly "in connection with" (a) the securities
contracts Sentry entered into with BLMIS, *see Fishman*, 773 F.3d at 418-23, and (b) the purported
separate securities contract under which investors allegedly made their redemptions, namely,
Sentry's Articles of Association (Barrett Decl. Ex. H) (the "**Articles of Association**").[14] *See
Fairfield Sentry Ltd. (In Liquidation) v. Migani et al*, [2014] UKPC 9 (April 16, 2014) (Barrett
Decl. Ex. G) ("***Migani***") (available at https://www.jcpc.uk/cases/docs/jcpc-2012-0061-
judgment.pdf) at 3, ("the terms of the subscriber's membership of the Fund, which govern the
redemption of its shares . . . are to be found in the Articles of Association of the Fund"); *see also
Fairfield I*, 2018 WL 3756343, at *11 (explaining that the Privy Council "concluded that the terms
of the redemption of shares were found in the Articles).

---

[14] The Articles of Association, *see* Barrett Decl. Ex. H, may be considered on this motion because, as the
document governing the challenged redemption, it is integral to the Complaint. *See In re Tribune Co. Fraudulent
Conv. Litig.,* 10 F.4th 147, 176 (2d Cir. 2021), *cert. denied*, No. 21-1006, 2022 WL 516021 (U.S. Jan. 5, 2022).

The definition of "securities contract" includes "a contract for the purchase, sale, or loan of a security." 11 U.S.C. § 741(7)(A)(i). "The term 'redemption,' in the securities context, means 'repurchase.'" *Tribune I*, 946 F.3d at 80. Accordingly, "the definition of securities contract . . . includes . . . redemption requests." *Cohmad* at *8. A redemption request that Sentry honored under its Articles of Association therefore is itself a securities contract, and the payment of the redemption amount is a settlement payment.

The Second Circuit has made clear that the definition of "securities contract" in 11 U.S.C. § 741(7) is "broad." *Fishman*, 773 F.3d at 419. It includes not only "a contract for the purchase, sale, or loan of a security," (11 U.S.C. § 741(7)(A)(i)), but also "any other agreement or transaction that is similar to" such a contract, *id.* § 741(7)(A)(vii). *See Fishman*, 773 F.3d at 419 (noting that Congress intended to "sweep broadly" and that "[f]ew words in the English language are as expansive as 'any' and 'similar'"); *see also Cohmad*, 2013 WL 1609154, at *8 (noting that the definition of "securities contract" is broad and "includes, *inter alia*, investment fund subscription agreements and *redemption requests*" (emphasis added)); *Tribune I*, 946 F.3d at 80 ("The term 'redemption,' in the securities context, means 'repurchase.'").[15] The law, moreover, does not require "that the securities contract that the transfer is made 'in connection with' must be a securities contract with the debtor." *Cohmad*, 2013 WL 1609154, at *9; *see also Fishman*, 773 F.3d at 422 ("Section 546(e) sets a low bar for the required relationship between the securities contract and the transfer sought to be avoided.").

Implicit in the Trustee's subsequent transfer claim against ASB is the allegation that the funds ASB received from Sentry were transferred from BLMIS to Sentry so that Sentry could then

---

[15] In the Fairfield Liquidators' BVI-law clawback actions, the Liquidators did not dispute, as Judge Bernstein concluded, that redemptions made pursuant to the Articles of Association "were Covered Transactions [under Section 546(e)] because they were settlement payments made in connection with securities contracts." *In re Fairfield Sentry Ltd.*, 596 B.R. 275, 314 (Bankr. S.D.N.Y. 2018).

14

satisfy ASB's redemption request.  Putting aside whether an allegation that Sentry transferred BLMIS "customer property" is plausible (see below at II),[16] such an allegation (if true) would mean the transfers were "in connection with" the securities contract. Accordingly, the Section 546(e) safe harbor applies here and bars recovery of any alleged subsequent transferee claims against ASB.

### D.  The Trustee Has Not Alleged that ASB Had Actual Knowledge of the Madoff/ BLMIS Fraud

The Trustee has not alleged that ASB had actual knowledge of the Madoff/BLMIS fraud. As noted by certain other subsequent transferee defendants in their recently filed motions to dismiss, the Trustee nevertheless may argue that the Section 546(e) safe harbor is inapplicable because the initial transferee, Sentry, allegedly knew of Madoff's fraud.  The Trustee should not be permitted to manufacture exceptions to Section 546(e).  Whether or not the allegation about Sentry is true, the Trustee would be wrong as a matter of law. There is no carveout in Section 546(e) for this situation,[17] and there are no allegations that ASB had actual knowledge of the fraud.

Any reliance by the Trustee on *Fairfield Investment Fund* would be misplaced.  To be sure, in that case the Court accepted that Sentry's knowledge had been adequately pleaded in a later version of the Fairfield complaint than the Fairfield First Amended Complaint that was incorporated by reference into the instant Complaint against ASB.  *See* 2021 WL 3477479, at *4-5

---

[16] ASB denies that it is a subsequent transferee of customer property, and indeed demonstrates in Point II, *infra*, that the Trustee's allegations in support of this theory are implausible and should be dismissed for that reason. Regardless, the Trustee's allegations are admissions that can be used to establish, on this motion, that his claims fail to state a claim upon which relief can be granted.  *See, e.g., Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) ("[T]he allegations in the Second Amended Complaint are 'judicial admission[s]' by which [the plaintiff] was 'bound throughout the course of the proceeding.'" (quoting *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985) (affirming dismissal of claim because plaintiff was bound by assertion of facts in its complaint))); *cf. Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of pleadings filed by defendant in other actions and holding that those pleadings, taken together with plaintiffs' other allegations, "alleged sufficient facts" to support plaintiffs' claim).

[17]  The sole statutory exception to the Section 546(e) safe harbor is for transfers avoidable under Section 548(a)(1)(A), which has a two-year look back from the petition date.  As set forth above, the alleged subsequent transfers to ASB were more than three years before the petition date.

(citing Fairfield Second Amended Complaint, No. 09-1239, ECF 286).[18]   The Court then quoted

Judge Rakoff's statement that "'if the Trustee sufficiently alleges that the transferee from whom

he seeks to recover a fraudulent transfer knew of Madoff Securities' fraud, that transferee cannot

claim the protections of Section 546(e)'s safe harbor.'"  *Fairfield Inv. Fund*, 2021 WL 3477479,

at *4 (quoting *Cohmad*, 2013 WL 1609154, at *7).  But none of this changes that (1) the transfers

were a settlement payment and made in connection with a securities contract and are therefore

independently protected by Section 546(e) and (2) ASB is not alleged to have had actual

knowledge of Madoff's fraud.

*First*, as noted above, even if Sentry's alleged knowledge *could* preclude Sentry from

invoking Section 546(e), that would not affect the separate securities contracts between Sentry and

its investors, including here, ASB.  Nor would Sentry's alleged knowledge of the BLMIS fraud

preclude the application of Section 546(e) for the benefit of ASB.  In *Cohmad*, Judge Rakoff agreed

that securities contracts other than the initial transferee's securities contract with BLMIS could

independently satisfy Section 546(e).  2013 WL 1609154, at *8-9.  Judge Rakoff ruled that so long

as the initial transferee withdrew funds from BLMIS to make a payment under a securities contract

between the initial transferee and a subsequent transferee, then the withdrawal from BLMIS would

be a transfer made in connection with a securities contract—namely, the contract between the

initial transferee and the subsequent transferee—and would not be avoidable on a subsequent

transferee claim:

---

[18] ASB respectfully disagrees with that conclusion and reserves for a later stage of this action or appeal all arguments
that the Trustee has not adequately pleaded Sentry's actual knowledge of Madoff's fraud in the Fairfield Second
Amended Complaint or otherwise and/or that Sentry did not in fact have such actual knowledge.  *See Intel Corp. Inv.
Policy Comm. v. Sulyma*, 140 S. Ct. 768, 776-77 (2020) (holding that "to have 'actual knowledge' of a piece of
information, one must in fact be aware of it" and distinguishing between actual knowledge and constructive
knowledge); *Heinert v. Bank of Am. N.A.*, 835 F. App'x 627, 631 (2d Cir. 2020) ("allegations [of actual knowledge of
misrepresentations] do not suffice to show that [the bank] had actual knowledge of the [account holders'] Ponzi
scheme, the fraud on which the [plaintiffs'] claim relies"); *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
515 B.R. 117, 140 (Bankr. S.D.N.Y. 2014) (refusing to equate "strong suspicion" with "actual knowledge").

> Take, for example, a hypothetical situation in which the Trustee alleges that a withdrawal of funds by an investment fund from its Madoff Securities customer account occurred because an investor in that fund sought redemption of its investment under the terms of its investment contract. Assuming that either the investment fund or the investor qualifies as a financial institution or financial participant, and barring other circumstances that may appear on the facts of a given case, that situation appears to fit within the plain terms of Section 546(e): an initial transfer that was "made by or to (or for the benefit of) a . . . financial institution [or] financial participant . . . in connection with a securities contract."

*Id*. at *9 (footnote omitted).[19]  The logic of Judge Rakoff's hypothetical situation also applies here.

*Second*, importantly here, the Trustee has not pleaded (or even attempted to plead) that ASB knew of Madoff's fraud.  Since the applicability of Section 546(e) is clear on the face of the Complaint and documents integral to it, if the Trustee advances a theory of transferee actual knowledge as an exception to the safe harbor, it would have been incumbent on him to plead actual knowledge.  Instead, the Complaint is devoid of any allegations that ASB knew of Madoff's fraud.  And "actual knowledge," *Cohmad*, 2013 WL 1609154 at *1—not "mere suspicion," *id*. at *3, or inquiry notice—is what Judge Rakoff repeatedly stated was necessary to defeat the safe harbor.  *See, e.g., id*. at *4 ("the Trustee must show, at a minimum, that the transferee had actual knowledge that there were no actual securities transactions being conducted") (footnote omitted); *id*. at *1, 3, 6, 7, 10.  Because ASB is not alleged to have had actual knowledge of the Madoff fraud, the Court can and should, on those grounds alone, apply the Section 546(e) harbor and dismiss the Complaint.

Finally, as stated above, while this Court and the District Court have previously ruled that Section 546(e) cannot be invoked by a transferee with actual knowledge of Madoff's fraud, and

---

[19] Judge Rakoff also observed that "[t]o the extent that, for example, an initial transfer from Madoff [S]ecurities to an investment fund customer and the subsequent transfer from the investment fund to its redeeming investors may together comprise a 'settlement payment' under *Enron* [*Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 339 (2d Cir. 2011)], that transfer may fall within the purview of Section 546(e), assuming it meets the statute's other requirements." *Cohmad*, 2013 WL 1609154, at *9 n.5.

17

while for the reasons discussed above, those rulings are inapplicable here, ASB respectfully submits that there is nothing in Section 546(e) that supports creating an exception to its applicability based on the knowledge of any transferee.[20]  Section 546(e) provides for only one exception to the safe harbor:  namely, for a claim under Section 548(a)(1)(A), which has only a two-year lookback.  *See Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171, 181 (2d Cir. 2021) ("Voidability under § 548(a)(1)(A) focuses on the fraudulent intent of the debtor-transferor."), *cert denied*, 2022 WL 585915 (U.S. Feb. 28, 2022); *Silverman v. Actrade Cap., Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005) (under Section 548(a)(1)(A) "it is the intent of the transferor and not the transferee that is relevant") (citations omitted).[21]  Thus, while not relevant for purposes of this motion to dismiss given that there are no allegations that ASB had actual knowledge of Madoff's fraud, ASB submits that the exception to the safe harbor articulated in *Cohmad*—that if the transferee from whom the Trustee seeks to recover knew of Madoff Securities' fraud, that transferee cannot claim the protections of Section 546(e) (*Cohmad*, 2013 WL 1609154, at *7)—is not supported by the text of the statute.

Where the Code creates an exemption or safe harbor, and specifies exceptions, courts are not free to create additional exceptions even when doing so is motivated by a party's alleged wrongdoing.  *See Law v. Siegel*, 571 U.S. 415, 424-25 (2014).  The courts must, instead, adhere to "the plain meaning of the language" of the statute.  *Merit Mgmt. Grp., LP v. FTI Consulting Inc.*, 138 S. Ct. 883, 897 (2018).  Considering the Second Circuit's admonitions in *Fishman* that, in enacting Section 546(e) and its single exception for claims under Section 548(a)(1)(A), Congress

---

[20] This is an open question at the Circuit level, and ASB expressly preserves it. Although the Second Circuit in *Fishman* noted that the defendants there had "every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions," 773 F.3d at 420, it did not state that the result would have been different had that not been the case.

[21] Nor does transferee knowledge play any role in the definitions of "settlement payment," 11 U.S.C. § 741(8), or "securities contract," *id*. § 741(7).

18

struck a balance favoring the securities markets' interest in finality over creditors' interests in recovery, and that the courts "are obliged to respect the balance Congress struck among these complex competing considerations," 773 F.3d at 423, the safe harbor should apply here according to its plain language, regardless of the initial transferee Sentry's alleged knowledge. Under Section 546(e), therefore, the Complaint should be dismissed.

## II. THE TRUSTEE'S CLAIMS MUST BE DISMISSED FOR FAILURE TO PLEAD THAT ASB RECEIVED BLMIS CUSTOMER PROPERTY

The Complaint fails to meet the requirements of Section 550(a), because it fails to tie any BLMIS transfer to Sentry with the transfers that ASB purportedly received.

Under Section 550(a)(2), a trustee may recover from a subsequent transferee only the property or value of the property that was transferred in the initial transfer. *Rajala v. Spencer Fane LLP (In re Generation Res. Holding Co, LLC)*, 964 F.3d 958, 965 (10th Cir. 2020). Thus, in order to state a claim under Section 550(a), "the plaintiff has the burden of tracing funds it claims to be property of the estate." *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.*), 379 B.R. 5, 30 (S.D.N.Y. 2007) (citing *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 708 (11th Cir. 2005)); *see also Lyon v. Forbes (In re Forbes)*, 372 B.R. 321, 334 (B.A.P. 6th Cir. 2007) ("[I]t is generally the [t]rustee's burden to trace the funds he claims are property of the estate."). As Judge Bernstein explained:

> The Trustee must allege facts that support the inference that the funds at issue originated with the BLMIS, and contain the "necessary vital statistics"—the "who, when, and how much" of the transfers to establish that an entity was a subsequent transferee of the funds. At the pleading stage, the Trustee is not required to provide a "dollar-for-dollar accounting" of the exact funds at issue. However, barebones allegations that the funds at issue were transferred to the Subsequent Transferees, without more detail, are insufficient.

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Secs. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015). In *Shapiro*, the Court dismissed the complaint because it did not "tie any initial transfer to

19

any subsequent transfer or Subsequent Transferee" and did "not plausibly imply that the initial transferees even made subsequent transfers to the Subsequent Transferees as opposed to third parties, or that they made the subsequent transfers rather than simply keep the initial transfers for themselves." *Picard v. Shapiro*, 542 B.R. at 119; *accord In re Caremerica, Inc.*, 409 B.R. 737, 750–51 (Bankr. E.D.N.C. 2009) (court dismissed a preference claim under *Twombly* and *Iqbal* because the trustee's factual allegations included allegations about transfers into and out of an account and amounts received by the supposed transferees, but nothing to tie them together).

The Complaint here fails the basic pleading requirements: it does not make the connections required to tie the transfers. Although the Complaint attaches an exhibit that includes the purported BLMIS-to-Sentry Initial Transfers and lists the alleged redemption payments from Sentry to ASB, it does not specify which, if any, of the Initial Transfers involved the customer property that the Trustee alleges Sentry subsequently transferred to ASB, let alone how those transfers are tied. Nothing in the Complaint or its exhibits "tie[s] any initial transfer to any subsequent transfer or Subsequent Transferee." *Shapiro*, 542 B.R. at 119. In other words, the Complaint does not state the "'when, and how much' of the transfers to establish that [ASB] was a subsequent transferee of the funds." It contains only the "barebones allegations that the funds at issue were transferred" to ASB. *See Shapiro*, 542 B.R. at 119. Accordingly, the Trustee's conclusory allegation that "money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant ASB," Compl. ¶ 40, is insufficient to meet the relevant pleading standard under *Twombly* and *Iqbal*.

At best, the Complaint's conclusory allegation gives rise to the mere possibility that ASB's redemptions from Sentry consisted of BLMIS customer property. But, based on information alleged in other pleadings of the Trustee, the conclusory allegation as to ASB strains credulity.

20

It is not plausible that ASB received customer property, because, according to the Trustee's own allegations about the history of transfers to and from Sentry, all such property was exhausted prior to each ASB redemption. Sentry transferred far greater amounts back to BLMIS and to other investors than it ever received from BLMIS during the relevant time period. This is evident from a comparison of (i) the sum of all the transfers from BLMIS *to* Sentry from the earliest transfer within the six-year period before the petition date[22] (that is, the total potentially recoverable customer property held by Sentry) through the date of each of ASB's redemptions, with (ii) the sum of redemptions *from* Sentry alleged in the Trustee's subsequent transferee complaints during the same period (that is, the money that the Trustee has alleged was transferred out of Sentry), it appears that Sentry transferred out, at least approximately $100 million more than it received from BLMIS immediately prior to each alleged ASB redemption. *See* Barrett Decl. Ex. A, K, L; ¶¶ 18-50.[23]

---

[22] Since the statute of limitations under New York Debtor and Creditor Law ("**NYDCL**") for fraudulent conveyances is six years, (CLPR § 213), the Trustee could not recover transfers from BLMIS to Sentry that occurred before December 11, 2002 as initial transfers even if Section 546(e) did not apply. Thus, he cannot recover any subsequent transfers of those transfers under Section 550(a). The only subsequent transfers the Trustee can even potentially recover under Section 550(a) are subsequent transfers of customer property that was initially transferred after December 11, 2002. So, the Court may only consider alleged initial transfers after December 11, 2002 (the first of which was on May 9, 2003) in determining whether an alleged subsequent transfer was a transfer of recoverable customer property; any earlier initial transfers alleged must be excluded from consideration. The Trustee recognized this when in other cases he dismissed claims for subsequent transfers that occurred before May 9, 2003. *See, e.g.*, Stip. & Order ¶ 1, *Picard v. Quilvest Fin. Ltd.*, No. 11-2538 (CGM) (Bankr. S.D.N.Y. Mar. 1, 2022) (ECF 105); Stip. & Order ¶ 1 & Sch. 1, *Picard v. Crédit Agricole (Suisse) S.A.*, No. 12-1022 (CGM) (Bankr. S.D.N.Y. Feb. 24, 2022) (ECF 110); Stip. & Order ¶ 3 & Sch. 1, *Picard v. Schroder & Co. Bank AG*, No. 12-1210 (CGM) (Bankr. S.D.N.Y. Feb. 22, 2022) (ECF 89). Thus, at a minimum, before even addressing the arguments herein with respect to the other alleged transfers, the Trustee's attempt to recover the $513,267.00 redemption payment made by Sentry to ASB on April 14, 2003 (the "**April 14th Redemption**") should be rejected because the April 14th Redemption could not have consisted of avoidable funds, having taken place nearly a month prior to the earliest alleged avoidable Initial Transfer.
[23] These exhibits consist of the Trustee's pleadings in other proceedings in this Court; the Court can take judicial notice of their contents. *See* note 16, *supra*; *O'Connor v. DL-DW Holdings, L.L.C. (In re Extended Stay, Inc.)*, No. 09-13764-JLG, 2020 WL 10762310, at *5 (Bankr. S.D.N.Y. Aug. 8, 2020) ("In the context of bankruptcy litigation, the public records of which the court may take judicial notice include documents filed in a related bankruptcy proceeding, an adversary proceeding and the underlying bankruptcy case.") (citations omitted).

The chart below shows how the customer property supposedly received by Sentry (column 2) already had been transferred out (columns 3 and 4) by the time of each alleged ASB redemption (column 5).

| 1. Date Range | 2. Total Alleged Customer Property Transferred to Sentry (USD) | 3. Total Alleged Transfers Out of Sentry (USD) | 4. Total Alleged Customer Property Transferred Less Alleged Transfers Out (USD) | 5. Alleged ASB Redemptions (USD) |
|---|---|---|---|---|
| 5/9/2003-12/29/2003[24] | 120,000,000.00 | (237,419,198.00) | **(117,419,198.00)** | |
| 12/30/2003 | | | | (990,000.00) |
| 5/9/2003-1/20/2004 | 120,000,000.00 | (307,419,198.00) | (187,419,198.00) | |
| 1/21/2004 | | | | (1,000,000.00) |
| 5/9/2003-3/17/2004 | 120,000,000.00 | (459,839,983.00) | (339,839,983.00) | |
| 3/18/2004 | | | | (1,500,000.00) |
| 5/9/2003-4/20/2004 | 120,000,000.00 | (534,075,346.00) | (414,075,346.00) | |
| 4/21/2004 | | | | (1,000,000.00) |
| 5/9/2003-7/15/2004 | 120,000,000.00 | (588,918,408.00) | (468,918,408.00) | |
| 7/16/2004 | | | | (2,000,000.00) |
| 5/9/2003-8/12/2004 | 120,000,000.00 | (604,000,971.00) | (484,000,971.00) | |
| 8/13/2004 | | | | (2,000,000.00) |
| 5/9/2003-10/18/2004 | 120,000,000.00 | (739,219,557.00) | (619,219,557.00) | |
| 10/19/2004 | | | | (4,000,000.00) |
| 5/9/2003-2/15/2005 | 120,000,000.00 | (878,698,156.00) | (758,698,156.00) | |
| 2/16/2005 | | | | (22,700,784.00) |
| 5/9/2003-3/14/2005 | 120,000,000.00 | (971,559,895.00) | (851,559,895.00) | |
| 3/15/2005 | | | | (20,185,729.00) |
| 5/9/2003-4/13/2005 | 295,000,000.00 | (1,063,714,467.00) | (768,714,467.00) | |
| 4/14/2005 | | | | (20,000,000.00) |
| 5/9/2003-5/12/2005 | 295,000,000.00 | (1,194,873,808.00) | (899,873,808.00) | |
| 5/13/2005 | | | | (20,000,000.00) |

[24] The Complaint lists one redemption of $513,267.00 from April 14, 2003. As stated in fn. 22, *supra*, based on the Trustee's own pleadings, that redemption occurred prior to the receipt by Sentry of any alleged avoidable customer property from BLMIS and thus cannot be recovered by the Trustee. As a result that redemption has been omitted from this chart.

22

| 1. Date Range | 2. Total Alleged Customer Property Transferred to Sentry (USD) | 3. Total Alleged Transfers Out of Sentry (USD) | 4. Total Alleged Customer Property Transferred Less Alleged Transfers Out (USD) | 5. Alleged ASB Redemptions (USD) |
|---|---|---|---|---|
| 5/9/2003-6/14/2005 | 295,000,000.00 | (1,248,571,507.00) | (953,571,507.00) | |
| 6/15/2005 | | | | (24,278,911.00) |

Thus, the alleged redemptions by ASB are not plausibly traceable to customer property, given that Sentry apparently had depleted all the customer property it received by the time ASB made each of the redemptions.

The time elapsed between alleged initial and subsequent transfers is also relevant. In *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117 (Bankr. S.D.N.Y. 2014) ("**Merkin**"), this Court denied a motion to dismiss because the alleged subsequent transfers "took place contemporaneously or shortly after an initial transfer identified [in the complaint], implying linkage." 515 B.R. at 150 (emphasis added). The alleged initial and subsequent transfers there occurred between one and 22 days of each other, and "[g]iven the short amount of time between the first and second transfers, it [was] reasonable to infer in considering a motion to dismiss that some portion of the first transfer formed part of the second transfer." *Id.* at 150-51. But the converse is equally true: given the nature of Sentry's business, which involved receiving funds from many subscribing shareholders and paying funds to many redeeming shareholders, gaps of up to 18 months between alleged initial and subsequent transfers strongly undermine any inference of linkage.

As demonstrated in the chart above, the Trustee's complaints reveal the following transaction history, which contradicts the Trustee's conclusory allegation about ASB's receipt of customer property:

23

- On May 9, 2003, BLMIS transferred $40 million to Sentry. That is the earliest initial transfer alleged by the Trustee after the six-year statute of limitations cutoff date (December 11, 2002), and thus the earliest transferred customer property that could even potentially be recovered by the Trustee.

- On July 11, 2003, BLMIS transferred $55 million to Sentry.

- On July 22, 2003, BLMIS transferred $25 million to Sentry.

- The $120 million in transfers from BLMIS (i.e., the $40 million, plus $55 million, plus $25 million) were more than offset by transfers made by Sentry, between May 9 and December 29, 2003, to (i) other parties in the amount of roughly $237 million and (ii) BLMIS in the amount of $70 million.

- Thus, by December 30, 2003—when Sentry allegedly transferred $990,000 to ASB, more than five months after the most recent transfer of alleged customer property—no customer property remained with Sentry, as the $120 million from BLMIS already had been depleted by the roughly $307 million (i.e., the $237 million plus $70 million) in transfers made to other parties.

- Sentry allegedly made additional transfers to ASB on January 21, 2004, March 18, 2004, April 21, 2004, July 16, 2004, August 13, 2004, October 19, 2004, February 16, 2005, and March 15, 2005. But, according to the Trustee's own filings, at no time between December 29, 2003 and March 15, 2005 did BLMIS transfer any customer property to Sentry. The length of time between the most recent transfer of alleged customer property and these ASB redemptions ranged from just under six months to over a year and a half.

- At the time of each of ASB's redemptions between January 20, 2003 and March 15, 2005 the total amount of transfers of funds out of Sentry dwarfed the total amount of potentially recoverable customer property transferred to Sentry by BLMIS.

- On April 1, 2005 BLMIS transferred $175 million to Sentry. Three days later, on April 4, 2005, Sentry transferred $200 million to a redeeming party. Subsequent to that—at a time when all customer property apparently had been exhausted—Sentry allegedly transferred $20 million to ASB on April 14, 2005, another $20 million to ASB on May 13, 2005, and finally, roughly $25 million to ASB on June 15, 2005.

The Trustee's conclusory assertions about ASB receiving customer property thus fall under the weight of the Trustee's own allegations about the flow of money in and of out Sentry. Indeed, the Trustee's pleadings across adversary proceedings, when taken as whole, tell an implausible story under basic principles of arithmetic: BLMIS's alleged initial transfers of approximately $3

24

billion to Sentry cannot have produced over $5 billion in subsequent transfers from Sentry (i.e.,

the sum of: (a) $3.238 billion paid by Sentry directly to defendants in the Fairfield Subsequent

Transfer Actions; (b) $824 million in alleged Sentry payments to Fairfield Sigma and Fairfield

Lambda; and (c) $1.139 billion which the Trustee seeks from FGG Defendants.[25]

How could Sentry have paid out more than it received from BLMIS? The Trustee's own

pleadings highlight that transfers from BLMIS to Sentry were not Sentry's exclusive source of

funds. For example, the Complaint itself provides that alleged subsequent transferees subscribed

for Sentry shares over many years and therefore "wired funds" to Fairfield Sentry. *See, e.g.*,

Compl. ¶ 6. Additionally, Sentry has stated that "[f]rom time to time, to make Redemption

Payments, Sentry . . . ( . . . utilized subscription monies of other investors on hand that were

directed for investment in BLMIS)." Fairfield First Am. Compl. ¶ 63, *Fairfield Sentry Ltd. v.

Citco Global Custody NV*, No. 19-1122 (Bankr. S.D.N.Y. Nov. 26, 2019), ECF 19. In fact, Exhibit

C to the Complaint shows that during the period December 11, 2002 to May 11, 2005, Sentry

transferred hundreds of millions of dollars more cash into BLMIS than it withdrew. *See* Barrett

Decl. ¶ 17 (Reflecting $295 million having been transferred into Sentry by BLMIS, but $420

million having been withdrawn from Sentry by BLMIS from May 9, 2003 to May 11, 2005).

The Trustee's conclusory allegation that the money sent by Sentry to ASB came from

BLMIS is implausible in light of the Trustee's own detailed, specific allegations of cash flows into

and out of Sentry. Put another way, because "[t]here is an 'obvious alternative explanation'" for

---

[25] *See* Barrett Decl. Ex. K & ¶ 15 (totaling the subsequent transfers allegedly received by defendants from Sentry in the 81 actions filed by the Trustee); Barrett Decl. Ex. M (Exs. 5 and 6 to Fairfield Second Am. Compl. reflecting subsequent transfers from Sentry to Sigma and Lambda of $772 million and $52 million respectively); Barrett Decl. Ex. C (consent judgements entered against Fairfield Sigma and Fairfield Lambda reflecting similar amounts transferred to Sigma and Lambda of $752.3 million, and $52.9 million); Barrett Decl. Ex. M &¶16 (totaling the amount sought by the Trustee from certain defendants in the matter captioned *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. 09-01239 (Bankr. S.D.N.Y.)).

25

the source of the redemption, namely subscription monies of other investors, "that explanation renders [plaintiff's] competing explanation 'conceivable [but not] plausible.'" *Garfinkle v. Conf. on Jewish Material Claims Against Germany, Inc.*, No. 19-CV-7007 (JPO), 2020 WL 6323462, at *5 (S.D.N.Y. Oct. 28, 2020) (quoting *Twombly*, 550 U.S. at 567, 570).

What is more, the Trustee has every piece of information he needs to determine whether an alleged subsequent transfer contains customer property, and from which initial transfer that transfer originates, yet he has failed to so allege here. The Trustee's claim therefore should be dismissed. *See Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 709, 723 (2d Cir. 2013) (affirming dismissal and finding that "such imprecise pleading is particularly inappropriate here, where the plaintiffs necessarily have access, without discovery, to plan documents and reports that provide specific information from which to fashion a suitable complaint"); *Sapia v. Home Box Office, Inc.*, No. 18 Civ. 1317 (CM), 2018 WL 6985223, at *8 (S.D.N.Y. Dec. 17, 2018) (dismissing claim where plaintiffs failed to precisely plead necessary facts that were "uniquely in [p]laintiffs' possession").

## III. THE TRUSTEE HAS FAILED TO ADEQUATELY PLEAD THE AVOIDABILITY OF THE ALLEGED INITIAL TRANSFERS AND ADOPTION OF THE ENTIRE FAIRFIELD AMENDED COMPLAINT BY REFERENCE IS IMPROPER

While the Complaint should be dismissed under Section 546(e) and on the basis that the Trustee has not plausibly alleged that any of the alleged subsequent transfers contained "customer property," it also should be dismissed for another reason: It does not contain "a short and plain statement of the claim showing the pleader is entitled to relief" as required under Rule (8)(a)(2) and instead improperly attempts to incorporate other voluminous, largely irrelevant pleadings by reference.

As stated recently by the Second Circuit, "Section 550(a) sets out the elements a trustee must satisfy to recover transferred property: *that the transfer was avoided, and that the defendant*

26

*is an initial or subsequent transferee.*"  *In re Bernard L. Madoff Inv. Sec. LLC*, 12 F.4th 171, 197

(2d Cir. 2021) (emphasis added).  "Section 550(a) applies only 'to the extent that a transfer is

avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title.' In other words, a

trustee cannot use §550(a) to recover property unless the trustee has first avoided a transfer under

one of these provisions." *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC,*

917 F.3d 85, 97 (2d Cir. 2021) (internal citations omitted).[26]  Rather than allege facts showing that

the relevant transfers were avoided, the Complaint against ASB simply makes passing reference

to BLMIS transfers of "Customer Property" to Fairfield that "are avoidable," Compl. ¶¶ 35-37,

and asserts that the Trustee filed an adversary proceeding against Sentry, "in which, in part, the

Trustee sought to avoid and recover initial transfers of Customer property from BLIMIS to

Sentry." *Id.* ¶ 34.  The Trustee purports to "incorporate[s] by reference the allegations in the [First]

Fairfield Amended Complaint as if fully set forth herein." *Id.*

It is improper for the Trustee to rely on a 217-page, 798-paragraph complaint filed in a

The Complaint itself thus fails to allege facts supporting an essential element of the claim

and makes only conclusory assertions that BLMIS made "avoidable" transfers to Fairfield.  Compl.

¶¶ 33-39.  The Trustee's "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

It is improper for the Trustee to rely on a 217-page, 798-paragraph complaint filed in a

separate proceeding.  The Complaint against ASB seeks to incorporate by reference *all* of the

Fairfield First Amended Complaint, even though the vast majority of that other complaint

describes events that transpired *after* the Transfers at issue here.  If ASB were required to respond

---

[26] ASB acknowledges that in a prior decision, the District Court held that "'to the extent that a transfer is avoided' requires the Trustee to show that a given transfer is avoidable and does not require an actual judgment of avoidance." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 501 B.R. 26, 37 (S.D.N.Y. 2013).  Nevertheless, ASB notes that the statute, by its own terms, applies to a transfer that is "avoided."  The statute does not use the word "avoidable." ASB thus reserves all rights and arguments regarding what showing is required to "avoid" a transfer.

to that lengthy pleading, ASB would be left responding to allegations outside its knowledge and well beyond the relevant period at issue in the Complaint. This is precisely "the kind of incorporation that fails to give the requisite guidance to the responding party." *Nycomed US, Inc. v. Glenmark Generics, Ltd.*, No. 08-CV-5023 (CBA)(RLM), 2010 U.S. Dist. LEXIS 29267, at *13 (quotation marks and citation omitted). Requiring ASB to respond to such improper incorporation by reference would also be unfair and unduly burdensome. The Trustee's improper incorporation is especially troubling here because the *only* allegation concerning the avoidability of the initial transfers is by reference to the Fairfield First Amended Complaint: the Trustee pleaded merely that the Fairfield First Amended Complaint, "in part," "sought to avoid and recover initial transfers of Customer Property from BLMIS to Fairfield Sentry in the amount of approximately $3 billion." Compl. ¶ 34.

Moreover, the Fairfield First Amended Complaint that the Trustee purports to incorporate into his pleadings has since been superseded by a further amended complaint in the Fairfield action. ASB is thus left to guess not only which allegations of the incorporated pleading it must respond to, but even which pleading: The complaint referenced in paragraph 34? Or the further amended one (i.e., the Fairfield Second Amended Complaint)? Neither option is acceptable under the Federal Rules. Although "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading," (Fed. R. Civ. P. 10(c)), the rules do not authorize the wholesale incorporation by reference of an entire pleading. *See NCUA Bd. v. Morgan Stanley & Co.*, No. 13 Civ. 6705 (DLC), 2014 WL 1673351, at *9 (S.D.N.Y. Apr. 28, 2014) (striking defense where defendant attempted to "incorporate the affirmative defenses in answers filed by defendants *in other actions* into its answer" (emphasis in original)); *David v. Bifani*, No. 07-cv-00122-MEH-

BNB, 2007 WL 1216518, at *1 (D. Colo. Apr. 24, 2007) (striking attempt "to incorporate by reference wholesale the allegations in a complaint in a completely separate action").

Such wholesale incorporation of mooted pleadings in another action is "a blatant violation of Rule 8(a)(2)'s direction that a civil plaintiff provide a short and plain statement of the claim showing that the pleader is entitled to relief." *U.S. v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 463 (E.D.N.Y. 2007) (internal quotations omitted). Indeed, "if all of the allegations in the prior pleadings are deemed to be incorporated into the [Complaint], then the [Complaint] would become an unintelligible morass of self-contradictory allegations" and "would in itself be grounds for dismissing the [Complaint pursuant] to Rules 12(b)(6) and 8(a)(2)." *Id.* 462, n.72 & 466 (rejecting the attempted incorporation of pleadings from prior proceedings and holding that the complaint "must be dismissed for failure to comply with Rule 8(a)").

For the reasons set forth above, the Complaint fails to provide fair notice of the facts upon which the Trustee relies to establish an essential element of his claims—the avoidability of the alleged initial transfers—and fails to comply with Rules 8(a) and 10(c).  Accordingly, the Complaint should be dismissed.

## IV.    THE COMPLAINT DOES NOT ADEQUATELY ALLEGE FACTS SHOWING THAT ASB IS SUBJECT TO PERSONAL JURISDICTION

In addition, the Complaint should be dismissed for failure to plead sufficient facts establishing personal jurisdiction over ASB, a foreign bank that invested in a foreign fund.  At the motion to dismiss stage, the Trustee has the burden of pleading personal jurisdiction and thus "must make a prima facie showing that jurisdiction exists" over ASB, consistent with due process. *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81 (2d Cir. 2018) (internal quotation marks omitted). The Trustee has not satisfied this burden.

There are no statements in the Complaint alleging that ASB is incorporated or headquartered in New York or the United States; nor does the Trustee even attempt allege that the Court has general jurisdiction. Thus, there is no general jurisdiction over ASB. *See Daimler AG v. Bauman*, 571 U.S. 117, 136-37 (2014).

The Court also lacks specific personal jurisdiction over ASB. To exercise specific jurisdiction over a defendant, due process requires allegations "(1) that a defendant has certain minimum contacts with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (citation omitted). The minimum contacts sufficient to support specific jurisdiction focus on "the relationship among the defendant, the forum, and the litigation," *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977), a relationship that "must arise out of contacts that the defendant *himself* creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quotation marks omitted) (emphasis in original). In this case, the Trustee must also establish the Court's jurisdiction over ASB *for each individual transfer* it seeks to recover. *Picard v. BNP Paribas S.A. (In re Madoff)*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Each transfer is a separate claim, and the Trustee must establish the court's jurisdiction with respect to each claim asserted.") (internal quotations and citations omitted).

The purported jurisdictional facts alleged in the Complaint do not establish specific personal jurisdiction over ASB for one transfer, much less the thirteen separate transfers the Trustee seeks to recover. As an initial matter, the Trustee cannot base jurisdiction on conclusory allegations that ASB "knowingly direct[ed] funds to be invested with New York-based BLMIS through Fairfield Sentry," "knowingly received transfers of Customer Property from BLMIS," and "knowingly accepted the rights, benefits and privileges of conducting business and/or transactions

30

in the United States and New York." (Compl. ¶ 6). Mere knowledge that *Sentry* would invest in BLMIS in New York is insufficient to support personal jurisdiction over *ASB*. The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between . . . third parties and the forum State." *Walden*, 571 U.S. at 284.

*Walden* thus forecloses the theory of jurisdiction endorsed by Judge Lifland a decade ago in *Picard v. Bureau of Labor Insurance (In re Securities Investor Protection SIPA Liquidation Corp.)* ("**BLI**"), 480 B.R. 501, 516-19 (Bankr. S.D.N.Y. 2012). In that case, Judge Lifland held that the defendant's investment with Sentry was sufficient to establish personal jurisdiction with respect to claims arising from the liquidation of BLMIS on the ground that the defendant "purposefully availed itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." 480 B.R. at 517. But as *Walden* makes clear, Sentry's contacts with the forum, even if foreseeable to a defendant, are not in and of themselves sufficient to establish jurisdiction over the defendant.[27]

Moreover, jurisdiction in New York cannot be based on the Trustee's allegation of a visit by ASB representatives to New York. The Trustee asserts that ASB "traveled to New York, to meet with its FGG representatives" and "visited BLMIS's office in New York City and met with Madoff, as well as its FGG representatives, to discuss Madoff's purported investment strategy" (Compl. ¶ 6), though only *after* ASB already had made investments with Fairfield. An alleged

---

[27] The conclusory allegation that ASB obtained the benefit and protections of New York law when Fairfield Sentry made its investment in BLMIS is belied by the fact that this Court has held that parties such as ASB that did not have accounts with BLMIS could not assert claims in the SIPA proceeding. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285, 290–91 (Bankr. S.D.N.Y. 2011), *aff'd sub nom. In re Aozora Bank Ltd. v. Sec. Inv. Prot. Corp.*, 480 B.R. 117 (S.D.N.Y. 2012), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 708 F.3d 422 (2d Cir. 2013).

visit to New York does not establish that ASB purposefully availed itself of the privilege of doing business in New York. *See, e.g., SPV Osus Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 170-71 (S.D.N.Y. 2015) (no personal jurisdiction where defendants had only "sporadic or indirect contacts with the United States"), *aff'd*, 882 F.3d 333 (2d Cir. 2018); *McKee Elec. Co. v. Rauland-Borg Corp.,* 20 N.Y.2d 377, 380, 382 (1967) (fact that Illinois corporation's representatives traveled to New York and spent one day there conferring with plaintiff over contract dispute did not rise to purposeful availment under CPLR § 302(a)(1)).

The Trustee does not allege that the purported meeting with Madoff concerned Fairfield's investment with BLMIS, let alone any of the specific transfers from Fairfield to ASB the Trustee seeks to avoid. For this reason too, the alleged meeting does not establish jurisdiction. *See Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Tech. LLC*, No. 19-cv-3444 (VSB), 2020 WL 5503557, at *5 (S.D.N.Y., 2020) (various contacts with New York insufficient to confer personal jurisdiction where none gave rise to plaintiff's cause of action); *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 323 n.4 (2016) (to establish jurisdiction, "the cause of action must arise from the very transaction[s]" that are "relied upon to provide the contact with the forum").

This case is materially distinguishable from *BNP Paribas*, where Judge Bernstein found that many of the alleged subsequent transfers "were largely the result of" the activities in New York of BNP Paribas's Fund Derivative Group, which "operated from New York." 594 B.R. at 192. Here, by contrast, the Trustee does not allege that ASB engaged in any comparable activities in New York in connection with its redemptions.

Also unavailing is the Trustee's allegation, upon information and belief, that ASB "wired funds through a bank in New York." (Compl. ¶ 6). The mere fact that a redemption payment made by Sentry may have been "wired through" a correspondent bank account in the United States, does

32

not support the exercise of personal jurisdiction. Foreign financial institutions often use correspondent accounts to receive U.S. dollar-denominated payments, and there is ample case law establishing that the incidental use of a bank account in the United States to facilitate U.S. dollar-denominated payments to settle a foreign securities transaction—here, the investment and redemption of shares in a BVI company—does not give rise to personal jurisdiction over a foreign defendant. *See Hau Yin To v. HSBC Holdings, PLC,* No. 15-CV-3590-LTS-SN, 2017 WL 816136, at *6 (S.D.N.Y. Mar. 1, 2017), *aff'd,* 700 F. App'x 66 (2d Cir. 2017) (rejecting personal jurisdiction over foreign defendants because their alleged connection to the forum was the transmission of information and funds "to and from BLMIS . . . [as an] incidental consequence[] of fulfilling a foreign contract"); *Letom Mgmt. Inc. v. Centaur Gaming, LLC*, No. 17 Civ. 3793 (PAE), 2017 WL 4877426, at *7 (S.D.N.Y. Oct. 27, 2017) (fact that contract negotiated and executed outside New York required payments to New York bank account did not confer specific jurisdiction); *Hill v. HSBC Bank plc,* 207 F. Supp. 3d 333, 339-40 (S.D.N.Y. 2016) (finding transmission of information and funds to and from BLMIS to be "incidental consequences of fulfilling a foreign contract...insufficient to 'project' the Foreign Defendants into New York" and not amounting "to 'purposeful availment' of the laws of [the forum]"); *Pramer S.C.A. v. Abaplus Int'l Corp.*, 76 A.D.3d 89, 96 (1st Dep't 2010) ("[T]he mere payment into a New York account does not alone provide a basis for New York jurisdiction, es-pecially when all aspects of the transaction occur out of state, absent more extensive New York banking relating to the transaction in issue.") (citations omitted); *see also Universal Trading & Inv. Co. v. Tymoshenko,* No. 11 Civ. 7877 (PAC), 2012 WL 6186471, at *3 (S.D.N.Y. Dec. 12, 2012) ("[C]ourts have long recognized that there are significant policy reasons which caution against the exercise of personal jurisdiction based only on... a correspondent bank account.") (internal quotation marks omitted); *Tamam v. Fransabank*

33

*Sal*, 677 F. Supp. 2d 720, 727 (S.D.N.Y. 2010) ("[C]ourts in this district have routinely held that merely maintaining a New York correspondent bank account is insufficient to subject a foreign bank to personal jurisdiction.") (collecting cases).

Nor can jurisdiction be based on the Trustee's allegation that, upon information and belief, "ASB entered into a subscription agreement with Fairfield Sentry under which ASB submitted to New York jurisdiction."[28] Compl. ¶ 6.  Neither BLMIS nor the Trustee is a party to the alleged Subscription Agreement.  The Trustee cannot invoke a forum selection clause in a contract to which he is a stranger as a basis for this Court's jurisdiction over ASB.  *See Dean St. Cap. Advisors, LLC v. Otoka Energy Corp.*, No. 15-cv-824 (RJS), 2017 WL 476720, at *2, 4, 5 (S.D.N.Y. Feb. 2, 2017).  There are no allegations in the Complaint that would support a rare exception triggering application of a forum selection clause to a non-party. *See Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701–02 (2d Cir. 2009) (finding that non-signatories to an agreement cannot be bound by agreement's forum selection clause absent rare exceptions not applicable here); *Lavazza Premium Coffees Corp. v. Prime Line Distribs. Inc.*, No. 20 Civ. 9993 (KPF), 2021 WL 5909976, at *7 (S.D.N.Y. Dec. 10, 2021) (rejecting enforcement of forum selection clause for a non-party plaintiff bringing claims outside of the clause's scope).

Indeed, in *Fairfield I*, this Court concluded that the execution of certain subscription agreements, without more, did not subject the defendants—including ASB—to personal jurisdiction.  *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, No. 10-13164 (SMB), 2018 WL 3756343, at *11-12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("***Fairfield I***").

---

[28] The Trustee also makes the unsupported allegation "[u]pon information and belief" that ASB "sent [the Subscription Agreement] to FGG's  New York City office."  Compl. ¶ 6. However, even if true, this allegation would not be a basis for jurisdiction in New York. *See Kimco Exch. Place Corp. v. Thomas Benz, Inc*., 34 A.D.3d 433, 434 (2d Dep't 2006) ("The defendants' acts of faxing the executed contracts to New York . . . do not qualify as purposeful acts constituting the transacting of business.").

Specifically, this Court held that the New York choice of forum provisions in the subscription agreement were not applicable to the disputes concerning subsequent transfers because the Fairfield Liquidators' claim is solely based on redemptions and does not arise out of the subscription agreements. *Id.* at *11 (adhering to the Privy Council's holding "that the Subscription Agreement was irrelevant to actions to recover the inflated redemption payments").

Finally, the exercise of personal jurisdiction over ASB would be unreasonable under the Due Process Clause to the Fifth Amendment to the Constitution. "In addition to the minimum contacts analysis, due process requires courts to consider the reasonableness of subjecting the defendant to personal jurisdiction to ensure that it comports with 'traditional notions of fair play and substantial justice.'" *In re Bozel S.A.*, 434 B.R. 86, 100 (Bankr. S.D.N.Y. 2010) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 476 (1985)). Here, requiring ASB, (previously incorporated in Cayman Islands with its principle place of business in Panama City during the relevant time period of the transfers, and now a Republic of Panama entity), to defend an action in the United States, with respect to investments in a BVI entity, would be a significant and unreasonable burden. The Trustee is armed with virtually unlimited resources and has availed himself of the opportunity to sue all over the world.

Accordingly, there is no basis for asserting jurisdiction over ASB, specific or otherwise, and the Complaint should be dismissed.[29]

## CONCLUSION

For the foregoing reasons, ASB respectfully requests that the Court dismiss the Complaint in its entirety with prejudice.

---

[29] *See Manko Window Sys., Inc. v. Prestik*, No. 16-2818-JAR-JPO, 2017 WL 4355580, at *9 (D. Kan. Sept. 29, 2017) (granting motion to dismiss "because [the defendant's] contacts with [the forum] are weak and because the reasonableness factors discussed above counsel against the exercise of personal jurisdiction").

Dated: New York, New York
      March 25, 2022

                                        */s/Scott B. Schreiber*

                                        Scott B. Schreiber
                                        Rosa J. Evergreen (admitted *pro hac vice*)
                                        ARNOLD & PORTER KAYE SCHOLER LLP
                                        601 Massachusetts Avenue, NW
                                        Washington, D.C. 20001
                                        Telephone: (202) 942-5000
                                        Facsimile: (202) 942-5999

                                          - and -

                                        Kent A. Yalowitz
                                        Daniel R. Bernstein
                                        Lucas B. Barrett
                                        ARNOLD & PORTER KAYE SCHOLER LLP
                                        250 West 55th Street
                                        New York, NY 10019
                                        Telephone: (212) 836-8000
                                        Facsimile: (212) 836-8689

                                        *Attorneys for Defendant ASB Bank Corp.*

36