UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>   Plaintiff-Applicant,<br><br>   v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>   Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>FULLERTON CAPITAL PTE. LTD.,<br><br>Defendant. | Adv. Pro. No. 12-01004 (CGM) |

**FULLERTON CAPITAL PTE, LTD.'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................... 1

ARGUMENT ............................................................................ 2

    I.    THE SAFE HARBOR IN SECTION 546(E) BARS THE TRUSTEE'S
    CLAIMS AGAINST FULLERTON, AN INNOCENT SUBSEQUENT
    TRANSFEREE ................................................................... 2

        A.    The Alleged Initial Transfers Indisputably Qualify for the Statutory
            Safe Harbor ............................................................... 2

        B.    The Trustee's Attempt to Strip Innocent Subsequent Transferee
            Defendants of Statutory Safe Harbor Protections is Contrary to Law ........ 3

        C.    Fullerton is Separately Entitled to the Statutory Safe Harbor's
            Protection Based on Securities Contracts with Fairfield Sentry ................. 8

    II.    THE TRUSTEE HAS NOT JUSTIFIED HIS FAILURE TO PLAUSIBLY
    ALLEGE THAT FULLERTON RECEIVED CUSTOMER PROPERTY .......... 10

    III.    THE COMPLAINT DOES NOT COMPLY WITH RULE 8(A)(2) .................... 12

    IV.    THE TRUSTEE FAILS TO ESTABLISH PERSONAL JURISDICTION ......... 14

CONCLUSION ........................................................................ 17

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*45 John Lofts LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
    599 B.R. 730 (Bankr. S.D.N.Y. 2019) ...................................................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................................11

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................................................11

*Berdeaux v. OneCoin Ltd.*,
    2021 WL 4267693 (S.D.N.Y. Sept. 20, 2021) ..........................................................16

*Burger King v. Rudzewicz*,
    471 U.S. 462 (1985) .......................................................................................................15

*Francis v. Accubanc Mortg. Corp.*,
    No. 19-CV-902 (AJN), 2020 WL 2086038 (S.D.N.Y. Apr. 30, 2020) ...................14

*Glob. Network Commc'ns, Inc. v. City of N.Y.*,
    458 F.3d 150 (2d Cir. 2006)...........................................................................................13

*In re Geiger*,
    446 B.R. 670 (Bankr. E.D. Pa. 2010) ..........................................................................13

*In re Madoff Sec.*,
    No. 12-MC-115 (S.D.N.Y. May 16, 2012), ECF No. 119.........................................3

*In re Morrison*,
    375 B.R. 179 (Bankr. W.D. Pa. 2007) ........................................................................13

*In re Tribune Co. Fraudulent Conveyance Litig.*,
    946 F.3d 66 (2d Cir. 2019)..............................................................................................7

*Kelley v. Safe Harbor Managed Acct. 101, Ltd.*,
    31 F.4th 1058 (8th Cir. 2022) .........................................................................................5

*McKee Elec. Co. v. Rauland-Borg Corp.*,
    20 N.Y.2d 377 (1967) ....................................................................................................15

*Peterson v. Enhanced Investing Corp. (Cayman) Ltd. (In re Lancelot Invs. Fund)*,
    467 B.R. 643 (Bankr. N.D. Ill. 2012) ............................................................................8

*Picard v. ABN AMRO Bank (Ir.) Ltd. (Sec. Inv. Protection Corp. v. Bernard L.*
    *Madoff Inv. Sec. LLC)*, 505 B.R. 135 (S.D.N.Y. 2013) .......................................7, 9

*Picard v. Banca Carige S.P.A.,*
    11-ap-02570 (CGM), ECF 123 ...................................................................................1, 14

*Picard v. Banque Lombard Odier & Cie SA,*
    12-ap-1693 (CGM), ECF 115 ............................................................................................1

*Picard v Banque Syz & Co. SA,*
    11-ap-02149 (CGM), ECF 167 ..........................................................................................1

*Picard v. BNP Paribas S.A. (In re BLMIS),*
    594 B.R. 167 (Bankr. S.D.N.Y. 2018) ..............................................................................6

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC),*
    454 B.R. 317 (Bankr. S.D.N.Y. 2011) ..................................................................... *passim*

*Picard v. Greiff (In re Madoff Sec.),*
    476 B.R. 715 (S.D.N.Y. 2012) .........................................................................................8

*Picard v. Mayer (In re BLMIS),*
    No. 08-01789, 2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021) ..................................12

*Picard v. Merkin (In re Bernard L. Madoff Investment Securities LLC),*
    515 B.R. 117 (Bankr. S.D.N.Y. 2014) ....................................................................6, 11, 12

*Picard v Multi-Strategy Fund Limited,*
    12-ap-01205 (CGM), ECF 122 ..........................................................................................1

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC),*
    542 B.R. 100 (Bankr. S.D.N.Y. 2015) ............................................................................10

*Salahuddin v. Cuomo,*
    861 F.2d 40 (2d Cir. 1988) ...........................................................................................13

*Sec. Inv. Protec. Corp. v. Bernard L. Madoff Inv. Secs. LLC,*
    501 B.R. 26 (S.D.N.Y. 2013) .........................................................................................14

*Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities
    LLC (In re Bernard L. Madoff),*
    No. 08-1789 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) .....................5, 10

*Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities
    LLC (In re Madoff Securities),*
    No. 12 MC 115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ......................... *passim*

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib. Inc.),*
    379 B.R. 5 (Bankr. E.D.N.Y. 2007) ...............................................................................11

*SPV Osus Ltd. v. UBS AG*,
    114 F. Supp. 3d 161 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018) .............................15

*SunEdison Litigation Trust v. Seller Note, LLC (In re SunEdison, LLC)*,
    620 B.R. 505 (Bankr. S.D.N.Y. 2020) .......................................................................................6

*Walden v. Fiore*,
    571 U.S. 277 (2014) ................................................................................................................14

**Statutes**

Bankruptcy Code ...................................................................................................... *passim*

**Other Authorities**

Wright & Miller, 5 Federal Practice and Procedure (4th ed. 2021) ................................................13

CPLR § 302 ................................................................................................................15

Federal Rule of Civil Procedure 8 ...................................................................................12, 13, 14

Federal Rule of Civil Procedure 10 ...................................................................................12, 14

iv

# PRELIMINARY STATEMENT

Defendant Fullerton Capital Pte. Ltd. ("Fullerton") respectfully submits this reply memorandum of law in further support of its motion to dismiss the Complaint.

Fullerton has reviewed the Court's June 2022 decisions denying various motions to dismiss brought by other subsequent-transferee defendants.[1] Those decisions were handed down after Fullerton brought its motion and the Trustee filed his response. Fullerton asks the Court to give consideration to the arguments in Fullerton's opening memorandum. Consideration is warranted insofar as Fullerton's motion presents individualized allegations concerning jurisdiction and the receipt of customer property, and insofar as controlling precedent supports Fullerton's arguments concerning pleading requirements and the application of the safe harbor defense under Section 546 of the Bankruptcy Code.

Nothing in the Trustee's response to Fullerton's motion can salvage his barebones pleading. The Trustee does not dispute that Fullerton is a Singaporean defendant, which invested in a foreign feeder fund and received a single transfer from that fund, pursuant to a legitimate securities contract, more than two years before the petition date. Fullerton is not alleged to have had any knowledge of Madoff's fraud. Nor is Fullerton alleged to have breached any duty to anyone. The Trustee has had more than a decade to plead sufficient facts to survive a motion to dismiss but has failed to do so. Accordingly, the Complaint against Fullerton must be dismissed.[2]

---

[1] *See, e.g., Picard v Multi-Strategy Fund Limited*, 12-ap-01205 (CGM), ECF 122; *Picard v Banque Syz & Co. SA*, 11-ap-02149 (CGM), ECF 167; *Picard v. Banque Lombard Odier & Cie SA*, 12-ap-1693 (CGM), ECF 115; *Picard v. Banca Carige S.P.A.*, 11-ap-02570 (CGM), ECF 123; *Picard v Lloyds TSB Bank PLC*, 12-ap-01207 (CGM), ECF 105; *Picard v Bordier & Cie,* 12-ap-01695 (CGM), ECF 105.

[2] Unless otherwise specified, citations to "ECF No. _" refer to Adv. Pro. No. 12-01004. Capitalized terms not defined herein have the meanings ascribed to them in Fullerton's initial memorandum of law in support of its motion to dismiss, ECF No. 104. Fullerton's initial memorandum is cited herein as "Mem." The Trustee's opposition memorandum in response to Fullerton's motion, ECF No. 108, is cited herein as "Opp."

## ARGUMENT

### I.   THE SAFE HARBOR IN SECTION 546(E) BARS THE TRUSTEE'S CLAIMS AGAINST FULLERTON, AN INNOCENT SUBSEQUENT TRANSFEREE

As Fullerton explained in its opening brief, it is entitled to protection under the Section 546(e) safe harbor for the subsequent transfer the Trustee seeks to recover from it. The court's avoidance powers are unavailable to unwind securities settlement payments, except in cases controlled by Section 548(a)(1)(A) for actual fraud. This legal obstacle is an independent bar to the Trustee's sole claim for relief, because Fullerton's redemption occurred in 2005, more than two years before the commencement of the SIPA liquidation of Madoff Securities, and thus beyond Section 548(a)(1)(A)'s lookback period.

The Trustee argues that *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC (In re Madoff Securities)*, No. 12 MC 115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*") prohibits an ***innocent subsequent transferee*** from invoking the safe harbor in Section 546(e) merely because the Trustee alleges that the ***initial*** transferee had actual knowledge of the underlying fraud. But the Trustee misconstrues *Cohmad*, which precludes only transferee defendants having such actual knowledge from relying on Section 546(e). Fullerton had no such knowledge. Accepting the Trustee's interpretation of Section 546(e) would eliminate the safe harbor in the subsequent transfer context, contrary to *Cohmad* and admonitions of the Second Circuit.

#### A. The Alleged Initial Transfers Indisputably Qualify for the Statutory Safe Harbor

Fullerton has established that the alleged initial transfers from BLMIS to Fairfield Sentry qualify for the Section 546(e) safe harbor because: (a) they are transfers and settlement payments made "in connection with a securities contract" (indeed, two separate securities contracts— BLMIS's customer agreements with Fairfield Sentry and the Fairfield Sentry Articles of

Association (the "Articles"), which govern redemptions from Fairfield Sentry (*see* Mem. at 9-10));
and (b) they were made by, to, and/or for the benefit of covered entities, including a stockbroker
and financial institution. The Trustee does not contest any of this. He therefore has conceded that
the alleged initial transfers satisfy Section 546(e)'s requirements.

### B. The Trustee's Attempt to Strip Innocent Subsequent Transferee Defendants of Statutory Safe Harbor Protections is Contrary to Law

The Trustee dismissively asserts that "[n]one of this matters," because he has pleaded Fair-
field Sentry's, *not* Fullerton's, actual knowledge of fraud. Opp. 8. According to the Trustee, Sec-
tion 546(e)'s safe harbor is inapplicable to subsequent transferee defendants that are ***not*** alleged
to have had actual knowledge of the Madoff/BLMIS fraud and that did ***not*** actually know BLMIS
was not trading securities ("Innocent Subsequent Transferee Defendants") where the ***initial*** trans-
feree allegedly had such actual knowledge. *See* Opp. at 7-10. That is not the law. Neither *Cohmad*
nor other governing authority deprives an Innocent Subsequent Transferee Defendant of Section
546(e) statutory protections based on an unrelated initial transferee's alleged knowledge.[3]

The Trustee's contention—that an Innocent Subsequent Transferee Defendant loses its
ability to assert a Section 546(e) defense based on the happenstance of an unrelated initial trans-
feree's knowledge—cannot survive a close reading of *Cohmad*. *Cohmad* resulted from the District
Court's withdrawal of the reference in many adversary proceedings to address "whether applica-
tion of Section 546(e) to an initial or mediate Transfer bars recovery by the Trustee of any subse-
quent Transfer pursuant to Section 550." Section 546(e) Briefing Order, *In re Madoff Sec.*, No. 12-
MC-115 (S.D.N.Y. May 16, 2012), ECF No. 119 ("Briefing Order"). Judge Rakoff held that an

---

[3] Fullerton dealt with Fairfield Sentry and related funds at arm's length, and the Trustee does not allege otherwise. Nor does the Trustee argue that Fairfield Sentry's alleged knowledge of the BLMIS/Madoff fraud may be imputed to Fullerton.

*initial transferee* defendant cannot obtain dismissal "simply on the basis of Section 546(e)'s 'safe harbor' if the Trustee has alleged that the initial transferee had actual knowledge of the Madoff Securities' fraud." *Cohmad*, 2013 WL 1609154, at *1 (emphasis in original). The court's rationales for denying such defendants the benefit of the safe harbor were that: (i) if they signed "account agreements" with BLMIS **with actual knowledge of its fraud**, they "must have known that the transfers they received" from BLMIS "were not 'settlement payments'"; and (ii) transferees with actual knowledge that BLMIS was not trading securities "must [also] have known that the transfers could not have been made in connection with an actual 'securities contract.'" *Id*. at *3.

For this reason, Judge Rakoff explained, if the Trustee's pleading "adequately alleges[s] that a defendant had actual knowledge of Madoff's scheme, such a transferee stands in a different posture from an innocent transferee, even as concerns the application of Section 546(e)." *Id*. at *4. The court pointed out that the "purpose" of Section 546(e) is to minimize "the displacement caused in the commodities and securities markets in the event of a major bankruptcy affecting those industries"—a "goal [that] is best achieved by protecting the reasonable expectations of investors who believed they were signing a securities contract." *Id*. An innocent investor—*i.e.*, one without actual knowledge of the fraud—has such "reasonable expectations" and is entitled to Section 546(e)'s protections. *Id*. By contrast, "a transferee who had actual knowledge of the Madoff 'Ponzi' scheme did not have such expectations, but was simply obtaining moneys while he could." *Id*. Accordingly, the court in *Cohmad* drew a clear, bright line as to the availability of Section 546(e) on motions to dismiss, based solely on whether the "defendant"— *i.e.*, the transferee being sued—allegedly had such actual knowledge of the underlying fraud. *Id*.

This distinction applies to alleged **subsequent transferee** defendants. Judge Rakoff held that "even if the initial (or mediate) transferee failed to raise a Section 546(e) defense" for any reason (including, as here, the Trustee's settlement of claims against the initial transferee), "the subsequent transferee is nonetheless entitled to raise a Section 546(e) defense against recovery of those funds." *Id.* at *7. Judge Rakoff then applied to alleged subsequent transferees the same bright line test applicable to initial transferee defendants. Thus, "if the Trustee sufficiently alleges that **the transferee against whom he seeks to recover a fraudulent transfer** knew of Madoff Securities' fraud, **that transferee** cannot claim the protection of Section 546(e)'s safe harbor." *Id.* (emphasis added).[4]  In other words, *Cohmad* removes from the safe harbor only "actual knowledge" defendants against which the Trustee seeks recovery. It does not affect subsequent transferee defendants **not** alleged to have had such knowledge—*i.e.*, Innocent Subsequent Transferee Defendants. They still may invoke Section 546(e)'s protections, including on motions to dismiss.[5]

---

[4] *Cohmad* thus refutes the Trustee's argument that Judge Rakoff "specifically limited the safe harbor to avoidance claims." Opp. 12. Section 546(e) not only limits a trustee's avoidance powers, but also provides a defense—which may be raised by motion to dismiss—to defendants sued under Section 550(a) for recovery of allegedly fraudulent transfers. In *Cohmad*, Judge Rakoff explained that he had twice previously held that Section 546(e) "required the dismissal" both of the Trustee's avoidance claims and of "related recovery claims under Section 550(a)." *Cohmad*, 2013 WL 1609154, at *3. Similarly, in *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC* (*In re Bernard L. Madoff*), No. 08-1789 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Investment Fund*"), this Court, citing *Cohmad*, explained that a subsequent transferee is "entitled to raise a § 546(e) defense against recovery" of funds sought by the Trustee. *Id.* at *3. Indeed, *Kelley v. Safe Harbor Managed Acct. 101, Ltd.*, 31 F.4th 1058 (8th Cir. 2022), cited at Opp. 11, 14, involved application of the safe harbor to a case where, as here, the trustee alleged that funds an initial transferee subsequently transferred to a defendant were recoverable under Section 550(a). *Id.* at 1064.

[5] The Trustee speculates that accepting Fullerton's position would permit initial transferees with actual knowledge to launder funds to or through innocent subsequent transferees. *See* Opp. 14. But the Trustee has pleaded no such thing. Far from alleging that Fairfield Sentry "placed" funds with Fullerton, *id.*, his theory is that Fullerton initiated and drove the redemption process, "withdrawing money" from Fairfield Sentry. Compl. ¶ 6.

5

The other cases cited by the Trustee provide no support for the proposition that *Cohmad* strips an Innocent Subsequent Transferee Defendant of its ability to obtain dismissal of recovery claims under Section 546(e) merely because an unrelated initial transferee had actual knowledge. In *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167 (Bankr. S.D.N.Y. 2018), cited at Opp. 8, 11, 13, the Trustee did not even advance that argument, and the court's decision did not analyze the issue; neither the Trustee nor the court cited *Cohmad*.[6] Nor was the issue presented in *SunEdison Litigation Trust v. Seller Note, LLC (In re SunEdison, LLC)*, 620 B.R. 505 (Bankr. S.D.N.Y. 2020), cited at Opp. 13, where Judge Bernstein granted defendants' motion to dismiss constructive fraudulent transfer claims based on Section 546(e) without discussing any alleged transferee's knowledge or citing *Cohmad*. *See id*. at 512–17. And none of the decisions string-cited at Opp. 9 n.3 justifies stripping Innocent Subsequent Transferee Defendants of Section 546(e)'s protections by dint of an initial transferee's actual knowledge. On the contrary, in *Picard v. Merkin (In re Bernard L. Madoff Investment Securities LLC)*, 515 B.R. 117 (Bankr. S.D.N.Y. 2014) ("*Merkin*"), Judge Bernstein held that Section 546(e) applied, because the Trustee's complaint "fail[ed] to plausibly allege" that a subsequent transferee defendant "had actual knowledge of Madoff's Ponzi scheme," and he accordingly dismissed the avoidance and recovery claims except under Section 548(a)(1)(A). *Id*. at 141.

Under the Trustee's interpretation of Section 546(e), Fairfield Sentry's alleged actual knowledge would disentitle every Innocent Subsequent Transferee Defendant from invoking the safe harbor. That contravenes Judge Rakoff's stated intention. As he later explained, in *Cohmad*

---

[6] To the extent Judge Bernstein in *BNP Paribas* referred to defendants' knowledge, he appears to have conflated the safe harbor with the entirely separate "good faith for value" defense under Section 550(b), which is not at issue on this motion. *See BNP Paribas*, 594 B.R. at 197 ("[E]ven if the subsequent transferee was unaware of Madoff's Ponzi scheme, it must still prove that it gave value in order to prevail on its defense.").

the court "found that in the majority of cases, section 546(e) requires the dismissal of the Trustee's avoidance claims, except those brought under section 548(a)(1)(A) and related recovery claims under section 550(a)." *Picard v. ABN AMRO Bank (Ir.) Ltd. (Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC)*, 505 B.R. 135, 142 (S.D.N.Y. 2013) ("*ABN AMRO*") (footnote omitted).

Indeed, the Trustee's arguments are inconsistent with the Second Circuit's admonitions against subordinating Section 546(e) to the Code's avoidance provisions. While the Trustee naturally would prefer such an approach, Congress rejected it, and courts "are obliged to respect the balance [it] struck." *Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Recoverable Tr.)*, 773 F.3d 411, 423 (2d Cir. 2014) ("*Fishman*"). "Section 546(e) is in full conflict with the goal of maximizing the assets available to creditors. Its purpose is to protect a national, heavily regulated market by limiting creditors' rights." *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 94 (2d Cir. 2019). "Section 546(e) cannot be trumped by the Code's goal of maximizing the return to creditors without thwarting the Section's purposes." *Id*. "Permitting the clawback of millions, if not billions, of dollars from BLMIS clients . . . would likely cause the very 'displacement' that Congress hoped to minimize in enacting § 546(e)." *Fishman*, 773 F.3d at 420. That is no less true when such "clawbacks" are aimed at innocent subsequent transferees.

This is by no means the Trustee's first attempt to gut the safe harbor defense. For example, in *Fishman*, he argued that Section 546(e) "should not apply" to the BLMIS liquidation at all, because that supposedly would "be tantamount to giving legal effect of Madoff's fraud." 773 F.3d at 417. The Second Circuit "rejected these arguments," *id.*, and instead applied the statute as written, *see id.* at 418–23, emphasizing that the Trustee's atextual interpretation "risks the very sort of significant market disruption that Congress was concerned with," and that "[t]he clawback defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting

7

securities transactions, have every right to avail themselves of all the protections" afforded by

Section 546(e). *Id.* at 420. The Second Circuit declined to create a "Ponzi scheme" or general fraud

exception to the safe harbor, beyond the limited and explicit exception under Section 548(a)(1)(A),

which does not apply here. *See id.* at 421–22; *see also Picard v. Greiff (In re Madoff Sec.)*, 476

B.R. 715, 722 (S.D.N.Y. 2012) ("Nothing in the express language of § 546(e) suggests that it is

not designed to protect the legitimate expectations of customers, as well as the securities market

in general, even when the stockbroker is engaged in fraud."); *Peterson v. Enhanced Investing*

*Corp. (Cayman) Ltd. (In re Lancelot Invs. Fund)*, 467 B.R. 643, 652–53 (Bankr. N.D. Ill. 2012)

(holding that "settlement payments" are not ineligible for safe harbor protection "because they

may be tainted by fraud," except as provided in Section 548(a)(1)(A)).

### C. Fullerton is Separately Entitled to the Statutory Safe Harbor's Protection Based on Securities Contracts with Fairfield Sentry

In *Cohmad*, Judge Rakoff recognized a separate, alternative way in which the Section

546(e) safe harbor protects certain subsequent transferees that rely on agreements other than the

BLMIS-Fairfield Sentry account agreements as "securities contracts." After discussing situations

where the "securities contract" was a "Madoff Securities account agreement," the court explained

that the statutory phrase "is in fact much broader and includes, *inter alia*, investment fund sub-

scription agreements and redemption requests." *Cohmad*, 2013 WL 1609154, at *8. Section 546(e)

does not require that "the securities contract that the transfer is made 'in connection with' must be

a securities contract with the debtor"—only "that the transfer relate to that securities contract." *Id.*

at *9. Thus, where a BLMIS customer (such as Fairfield Sentry) made a "withdrawal" from its

BLMIS account that was allegedly "caused by [its] payment obligations to a subsequent transferee

under a securities contract" (such as the Articles), the initial transfer "could qualify" under Section

546(e) "as 'related to' that later transaction under the securities contract." *Id*.; *see also* Mem. at 10.

The Trustee is bound by his allegations that BLMIS's initial transfers were made to Fairfield Sentry (at its request) for the purpose of funding Fullerton's redemption request. *See* Mem. at 9. Accordingly, the facts alleged here "fit within the plain terms of Section 546(e)." *Cohmad*, 2013 WL 1609154, at *9. *Cohmad* therefore provides a separate, second basis for the statutory safe harbor to protect Fullerton, premised on the Articles, rather than the BLMIS-Fairfield Sentry customer agreements, as the relevant "securities contract." And the Trustee concedes, by not contesting Fullerton's showing, that the initial BLMIS-Fairfield Sentry transfers were made "in connection with" the Articles as a "securities contract" for purposes of Section 546(e). Because this second, alternative path to Section 546(e) protection does not implicate any securities contract between Fairfield Sentry and BLMIS, Fairfield Sentry's alleged knowledge of the Madoff/BLMIS fraud (and that its customer agreements with BLMIS were not real securities contracts) could not have the talismanic significance the Trustee ascribes to it.

Moreover, the Trustee does not contend that the Articles—the relevant "securities contract" in the alternative *Cohmad* analysis—was anything but a real securities contract under which real securities were redeemed and sold. Accordingly, Fairfield Sentry's alleged actual knowledge of the Madoff/BLMIS fraud poses no impediment to Fullerton's motion based on Section 546(e). *Cf. ABN AMRO*, 505 B.R. at 142 n.6 (explaining that "the issue of knowledge was irrelevant to the application of section 546(g), the analogous safe harbor for transfers made in connection with swap agreements, where "there is no dispute that the swap transactions actually occurred, [and] so the mindset of the participants is irrelevant").

9

By choosing not to litigate the Section 546(e) issue in his avoidance action against Fairfield Sentry, the Trustees left it for subsequent transferee defendants "to raise a Section 546(e) defense against recovery of those funds." *Cohmad*, 2013 WL 1609154, at *7; *accord Fairfield Inv. Fund*, 2021 WL 3477479, at *3. Accepting Fullerton's interpretation of *Cohmad* would not, as the Trustee argues, "effectively eliminate the point of the actual knowledge exception—which is to restrict any transferee with actual knowledge from hiding behind the safe harbor." Opp. 13-14. The Trustee has ***not*** alleged that Fullerton had actual knowledge of the Madoff/BLMIS fraud. Far from "hiding" behind anything, Innocent Subsequent Transferee Defendants such as Fullerton merely invoke protections that Congress made available and that *Cohmad* has not taken away. The Trustee's claim based on initial transfers before the two-year lookback period therefore should be dismissed.

## II.  THE TRUSTEE HAS NOT JUSTIFIED HIS FAILURE TO PLAUSIBLY ALLEGE THAT FULLERTON RECEIVED CUSTOMER PROPERTY

The Complaint should also be dismissed because it fails to plausibly allege that Fullerton is the subsequent transferee of customer property. Rather than plead facts connecting the alleged initial transfers to the alleged subsequent transfer as required to state a claim, see *Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015), the Trustee merely has alleged that during the six years preceding the petition date, BLMIS transferred approximately $3 billion to Fairfield Sentry, while Fairfield Sentry, in turn, made outgoing transfers of more than $5 billion. *See* Compl. ¶¶ 35-39, Ex. B and C; Fairfield Second Amended Complaint. The Trustee thus has alleged billions of dollars more in subsequent transfers of BLMIS customer property from Fairfield Sentry than he alleges was ever transferred from BLMIS to Fairfield Sentry. In other words, the Trustee here seeks to recover any money a defendant may have received

from Sentry, without regard to whether, as to that payment, the defendant was a "transferee" of BLMIS.

This is not a matter of requiring "dollar-for-dollar accounting" or expert opinion, but a *legal* question to be resolved on a motion to dismiss, before the parties and Court incur the burden of litigating claims not plausibly related to the recovery of customer property. The mere "possibility" that the Trustee may have a claim against Fullerton is not enough. *Iqbal* and *Twombly* require more than simply listing alleged initial transfers and subsequent transfers and inserting the conclusory assertion that the entries in the two lists are connected. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (noting that a claimant's allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" not merely possible).

The cases cited by the Trustee demonstrate the "linkage" necessary to sufficiently state a claim against a subsequent transferee. In the cases cited by the Trustee, the alleged initial and subsequent transfers were connected both by amount and temporally. *See, e.g.*, *45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 736–37, 747 (Bankr. S.D.N.Y. 2019) (payments totaling $29.4 million deposited into an account; $29.4 million withdrawn by the next business day); *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117, 150 (Bankr. S.D.N.Y. 2014) ("[S]everal subsequent transfers took place contemporaneously or shortly after an initial transfer . . . , implying linkage."); *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317, 341 (Bankr. S.D.N.Y. 2011) (pleading of subsequent transfers held sufficient where they "correspond[ed] to" initial transfers from BLMIS); *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib. Inc.)*, 379 B.R. 5, 13, 30 (Bankr. E.D.N.Y. 2007) (alleged subsequent transfers "were preceded by fraudulent transfers" from debtor "in

11

amounts sufficient to cover the [subsequent] transfers," all within 13 days). Here, however, there

is no such linkage. None of the alleged initial transfers are the same amount as the alleged subse-

quent transfer to Fullerton, and the temporal connection is tenuous, at best.

In a further effort to excuse his pleading failure, the Trustee argues that he "does not have

all of the Fairfield Funds' books and records." Opp. at 21, n.11. But the Trustee does not (and

cannot) deny that for more than a decade, since his 2011 Fairfield Settlement Agreement, he has

had full access to these books and records. *See* Fairfield Settlement, Fairfield Action, (ECF No.

69-2) ¶ 14. And the cases cited by the Trustee for pleading latitude are inapposite insofar as they

concerned subsequent transfers that had to be proven with *defendants'* records. *See Merkin I*, 515

B.R. at 151; *Cohmad I*, 454 B.R. at 329; *Picard v. Mayer* (*In re BLMIS*), No. 08-01789, 2021 WL

4994435 (Bankr. S.D.N.Y. Oct. 27, 2021).

Accordingly, the Trustee has failed to plead sufficient factual allegations to support the

assertion that the alleged subsequent transfer to Fullerton contained customer property, and the

Complaint therefore should be dismissed.

## III.   THE COMPLAINT DOES NOT COMPLY WITH RULE 8(A)(2)

The Trustee cannot excuse his failure to plead "a short and plain statement of the claim

showing that the pleader is entitled to relief," as required by Federal Rule of Civil Procedure

8(a)(2), simply by pointing to Rule 10(c)'s provision that "[a] statement in a pleading may be

adopted by reference elsewhere in the same pleading or in any other pleading or motion." The

Trustee does not seek to incorporate "[a] statement," but 798 paragraphs from a document filed in

a separate action that is no longer an operative pleading. To make matters worse, the Trustee fails

to specify which of these hundreds of paragraphs are relevant here.

Rule 8 is intended to avoid "plac[ing] an unjustified burden on the [Court] and the party

who must respond to it because they are forced to ferret out the relevant material from a mass of

verbiage." Wright & Miller, 5 Federal Practice and Procedure § 1282, at 422 (4th ed. 2021). When

a complaint fails to comply with the "short and plain" requirement, the court has the authority to

"strike any portions that are redundant or immaterial or to dismiss the complaint." *Salahuddin v.*

*Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

While incorporation by reference is permitted, it is "always accompanied by the require-

ment that it be done with a degree of specificity and clarity which would enable a responding party

to easily determine the nature and extent of the incorporation." *In re Morrison*, 375 B.R. 179, 193

(Bankr. W.D. Pa. 2007). And when a Complaint recklessly incorporates pleadings by reference,

the court has the authority to dismiss the Complaint for violating Rule 8. *See In re Geiger*, 446

B.R. 670, 679–80 (Bankr. E.D. Pa. 2010) (dismissing the complaint at hand for improperly incor-

porating by reference other pleadings). As the bankruptcy court in *In re Geiger* stated:

> [The] most serious problem with the Complaint is that it leaves the
> reader—the Defendant and the Court—to sift through many pages
> of attached material trying to figure out which fact goes with which
> allegation […] Putting together the puzzle of matching the bare-
> bones allegations with the meat of the attached materials is the job
> of the Plaintiffs, not of the Debtor or the Court. For this reason alone,
> the Complaint must be dismissed."

*Id*. at 679–80.

Judicial notice, likewise, cannot save the trustee's Complaint. A court may only take judi-

cial notice of a separate complaint to recognize that those allegations were made, not that they are

true. *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court

may take judicial notice of a document filed in another court not for the truth of the matters as-

serted…, but rather to establish the fact of such litigation and related filings"; (internal citation and

13

quotation marks omitted)); *Francis v. Accubanc Mortg. Corp.*, 19-cv-902 (AJN), 2020 WL 2086038, at *1 (S.D.N.Y. Apr. 30, 2020) (same, on motion to dismiss).[7]

Without incorporation of another pleading, the Complaint is devoid of essential allegations—the avoidability of the alleged initial transfers.[8] And the Trustee's attempt to incorporate a voluminous, superseded pleading fails to comply with Rules 8(a) and 10(c). Accordingly, the Complaint should be dismissed.

## IV.    THE TRUSTEE FAILS TO ESTABLISH PERSONAL JURISDICTION

Fullerton recognizes that this Court recently held that a *prima facie case* of personal jurisdiction can be based on the allegation that a defendant knowingly directed funds to be invested New York-based BLMIS through Fairfield Sentry. *See, e.g.*, *Picard v. Banca Carige S.P.A.*, 11-ap-02570 (CGM), ECF 123. For reasons set forth in its opening brief, Fullerton respectfully disagrees that such an allegation alone can support jurisdiction over a foreign defendant like Fullerton under *Walden v. Fiore*, 571 U.S. 277 (2014) and its progeny. *See* Mem. at 25-29. Fullerton is a Singaporean entity that invested in a foreign feeder fund. Fullerton did not consent to jurisdiction in New York for disputes such as this. Fullerton is not alleged to have any physical presence or employees in the United States, let alone New York. Nor is Fullerton alleged to have had any direct contact with BLMIS.

The Trustee's response points to attenuated contacts that Fullerton allegedly had with the forum. The Trustee asserts, for the first time, that an employee of entities allegedly related to

---

[7] Similarly unavailing is the Trustee's reliance on *Sec. Inv. Protec. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 501 B.R. 26 (S.D.N.Y. 2013). That case addressed a different question (whether the Trustee may avoid a subsequent transfer without first obtaining a judgment against the initial transferee), and defendants did not challenge the propriety or scope of the incorporation. *See id.* at 37 (mentioning incorporation in a single sentence).

[8] Fullerton continues to reserve all rights and arguments regarding what showing is required to "avoid" a transfer under Section 550(a). *See* Mem. at 23 n.21.

14

Fullerton once met with Fairfield Group representatives in New York to discuss investment in

Fairfield Sentry. Opp. at 29-30. But a related party's meeting with Fairfield Group in New York

to discuss an investment in a foreign fund does not create sufficient contacts for the exercise of

jurisdiction over Fullerton in this matter. *See Burger King v. Rudzewicz*, 471 U.S. 462, 476

(1985) ("some single or occasional acts related to the forum may not be sufficient to establish

jurisdiction if their nature and quality and the circumstances of their commission create only an

attenuated affiliation with the forum" (internal quotations omitted)); *see also SPV Osus Ltd. v.

UBS AG*, 114 F. Supp. 3d 161, 170-71 (S.D.N.Y. 2015) (no personal jurisdiction where defend-

ants had only "sporadic or indirect contacts with the United States"), *aff'd*, 882 F.3d 333 (2d Cir.

2018); *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 380, 382 (1967) (fact that Illi-

nois corporation's representatives traveled to New York and spent one day there conferring with

plaintiff over contract dispute did not rise to purposeful availment under CPLR § 302(a)(1)).

While Fullerton is alleged to have used New York's correspondent banking system, *see*

Opp. at 34-46, the incidental use of a correspondent bank account in New York is not enough to

establish jurisdiction, *see* Mem. at 27-28. Judge Caproni recently surveyed and summarized the

current state of the law in this District regarding the jurisdictional significance (or lack thereof)

of correspondent accounts. She explained:

> The vast majority of cases in which the issue is whether the use of a
> correspondent bank account constitutes the transaction of business un-
> der Section 302(a)(1) involve a non-domiciliary bank defendant's use
> of a correspondent account, not an individual's wiring of funds that
> incidentally pass through a New York-based correspondent ac-
> count…. Plaintiffs have identified no authority, nor is the Court aware
> of any, standing for the principle that a non-domiciliary individual de-
> fendant may be subject to specific jurisdiction in New York under
> Section 302(a)(1) because the non-domiciliary moved money between
> foreign bank accounts, with the transfer passing through New York
> via a correspondent account.

*Berdeaux v. OneCoin Ltd.*, 19-CV-0474 (VEC), 2021 WL 4267693, at *12 (S.D.N.Y. Sept. 20, 2021) (citations and footnote omitted).

Even if, *arguendo*, the Trustee has alleged sufficient minimum contacts with New York, exercising jurisdiction over Fullerton still would be unreasonable here. Ultimately, as the Trustee himself concedes, "[t]he reasonableness inquiry requires the court to determine whether the assertion of personal jurisdiction over the defendant comports with 'traditional notions of fair play and substantial justice' under the circumstances of the particular case." *Waldman*, 835 F. 3d at 331; Opp. at 26. The exercise of personal jurisdiction over Fullerton fails to meet this basic test and would be unreasonable in this case.

The Trustee asserts that Fullerton purposefully availed itself of the privileges and benefits of doing business in New York, but at the same time has consistently taken the position that parties such as Fullerton cannot assert a customer claim again BLMIS because their real legal and commercial relationship was with Fairfield—not BLMIS. The Trustee cannot have it both ways—he cannot claim that the Court has jurisdiction over Fullerton for purposes of his clawback claim, while at the same time asserting that foreign defendants who invested indirectly through Fairfield have no statutory right to assert customer claims against BLMIS precisely because of their indirect foreign investment structure. This is fundamentally unfair and serves to highlight that Fullerton did not purposefully avail itself of the privileges and benefits of doing business in New York, and it would be fundamentally unfair to exercise personal jurisdiction over Fullerton.

Accordingly, the Complaint should be dismissed for lack of personal jurisdiction.

16

## <u>CONCLUSION</u>

For the reasons set forth herein and its moving papers, Fullerton respectfully requests that the Court dismiss the Complaint in its entirety, with prejudice, and grant such other relief as is appropriate under the circumstances.


Dated: New York, New York
        July 8, 2022

ARNOLD & PORTER KAYE SCHOLER LLP

By:  */s/ Kent A. Yalowitz*
       Kent A. Yalowitz
       Daniel R. Bernstein
       250 West 55th Street
       New York, New York  10022
       (212) 715-1000

*Counsel for Defendant Fullerton Capital Pte. Ltd.*