**EXHIBIT E**

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Irving H. Picard
Email: ipicard@bakerlaw.com
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Heather R. Wlodek
Email: hwlodek@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the*
*Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (CGM) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |

**TRUSTEE'S TWENTY-SIXTH INTERIM REPORT**
**FOR THE PERIOD APRIL 1, 2021 THROUGH SEPTEMBER 30, 2021**

# TABLE OF CONTENTS

**Page**

I.     EXECUTIVE SUMMARY ............................................................................................1

II.    BACKGROUND .......................................................................................................3

III.   FINANCIAL CONDITION OF THE ESTATE ......................................................3

IV.   CLAIMS ADMINISTRATION...............................................................................4

     A.      Claims Processing .......................................................................................4

         i.        Customer Claims ...........................................................................4

         ii.       General Creditor Claims ...............................................................5

         iii.     The Trustee Has Kept Claimants Informed Of The Status Of The Claims Process ..........................................................................5

         iv.     The Hardship Program ...................................................................6

     B.      Objections To Claims Determinations.........................................................6

     C.      Settlements Of Customer Claims Disputes...................................................7

V.     PROCEEDINGS RELATED TO THE INTERPRETATION OF SIPA ...........................8

     A.      Net Equity Dispute ......................................................................................8

     B.      Time-Based Damages ................................................................................10

     C.      "Customer" Definition ..............................................................................11

     D.      Inter-Account Transfers ............................................................................12

     E.      Profit-Withdrawal Issue ............................................................................13

VI.   LITIGATION..........................................................................................................16

     A.      The District Court—Motions to Dismiss Heard by Judge Rakoff......................16

     B.      Good Faith Actions ...................................................................................16

         i.        Resolution of Good Faith Avoidance Actions ............................16

         ii.       Trial-Related Motion Practice .....................................................17

             (a)      Michael Mann Action ..................................................17

             (b)      James Greiff Action .....................................................20

         iii.     Summary Judgment Motions .......................................................22

             (a)      South Ferry/Lowrey Actions........................................22

             (b)      RAR Entrepreneurial Fund Ltd. Action.......................24

             (c)      Estate of Seymour Epstein Action ...............................26

             (d)      Zieses Investment Partnership Action .........................29

             (e)      Lisa Beth Nissenbaum Action .....................................29

             (f)      JABA Associates LP Action ........................................30

             (g)      Stanley T. Miller Action ..............................................31

             (h)      Gerald and Barbara Keller Family Trust Action..........................32

     C.      Bad Faith Actions .....................................................................................33

|  |  |  | i. | Picard v. Avellino & Bienes | 33 |
|  |  | D. | Appeals Relating to BLMIS Feeder Funds and Subsequent Transferees | | 34 |
|  |  |  | i. | Extraterritoriality | 34 |
|  |  |  | ii. | Good Faith Appeal | 35 |
|  |  |  |  | (a) Procedural Background on Good Faith Defense Under Sections 548(c) and 550 | 35 |
|  |  | E. | BLMIS Feeder Fund Actions | | 42 |
|  |  |  | i. | Picard v. Fairfield Greenwich | 42 |
|  |  |  | ii. | The HSBC Action | 50 |
|  |  |  | iii. | The UBS Action | 51 |
|  |  |  | iv. | Picard v. Square One | 54 |
|  |  |  | v. | Picard v. Legacy | 55 |
|  |  | F. | Subsequent Transfer Actions | | 58 |
|  |  |  | i. | Picard v. Natixis, et al. | 60 |
|  |  |  | ii. | Picard v. Nomura International PLC | 61 |
| VII. | INTERNATIONAL INVESTIGATION AND LITIGATION | | | | 63 |
|  | A. | Austria | | | 64 |
|  | B. | BVI | | | 64 |
|  | C. | Cayman Islands | | | 64 |
|  | D. | England | | | 64 |
|  | E. | France | | | 65 |
|  | F. | Ireland | | | 65 |
|  | G. | Israel | | | 65 |
|  |  | i. | Picard v. Magnify Inc. | | 65 |
|  | H. | Liechtenstein | | | 67 |
|  | I. | Switzerland and Luxembourg | | | 68 |
| VIII. | RECOVERIES AND CONTINGENCIES | | | | 68 |
|  | A. | Recoveries Accomplished During Prior Report Periods | | | 68 |
|  | B. | Recoveries Accomplished During This Report Period | | | 68 |
| IX. | THE TRUSTEE'S ALLOCATION OF FUNDS AND DISTRIBUTIONS TO CUSTOMERS | | | | 69 |
|  | A. | The Customer Fund | | | 69 |
|  | B. | The General Estate | | | 70 |
| X. | FEE APPLICATIONS AND RELATED APPEALS | | | | 71 |
|  | A. | Objections to Prior Fee Applications | | | 71 |

B.    Thirty-Fifth Fee Application...................................................................71

C.    Thirty-Sixth Fee Application ..................................................................72

XI.    CONCLUSION...........................................................................................73

TO THE HONORABLE CECELIA G. MORRIS
CHIEF UNITED STATES BANKRUPTCY JUDGE:

Irving H. Picard, Esq. (the "Trustee"), as Trustee for the substantively consolidated

liquidation proceeding of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the

Securities Investor Protection Act ("SIPA"),[1] 15 U.S.C. §§ 78aaa *et seq.*, and the Chapter 7

estate of Bernard L. Madoff ("Madoff," and together with BLMIS, each a "Debtor" and

collectively, the "Debtors"), respectfully submits his Twenty-Sixth Interim Report (this

"Report") pursuant to SIPA § 78fff-1(c) and this Court's Order on Application for an Entry of an

Order Approving Form and Manner of Publication and Mailing of Notices, Specifying

Procedures For Filing, Determination, and Adjudication of Claims; and Providing Other Relief

entered on December 23, 2008 (the "Claims Procedures Order") (ECF No. 12).[2] Pursuant to the

Claims Procedures Order, the Trustee shall file additional interim reports every six months. This

Report covers the period between April 1, 2021 and September 30, 2021 (the "Report Period").

## I.     EXECUTIVE SUMMARY

1.     The Trustee has worked tirelessly for nearly thirteen years to recover customer

property and distribute it to BLMIS customers who have not fully recovered the money they

deposited with BLMIS. Through pre-litigation and other settlements, the Trustee has

successfully recovered approximately $14.493 billion through September 30, 2021.

2.     On January 19, 2021, this Court approved the Trustee's twelfth allocation and

distribution to customers, in which the Trustee allocated approximately $74.325 million to the

Customer Fund.  On February 26, 2021, the Trustee distributed approximately $231.411 million

on allowed claims relating to 813 accounts, or 1.240% of each customer's allowed claim, unless

---

[1] For convenience, subsequent references to SIPA will omit "15 U.S.C."

[2] All ECF references refer to pleadings filed in the main adversary proceeding pending before this Court, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. No. 08-01789 (BRL) (Bankr. S.D.N.Y.), unless otherwise noted.

the claim was fully satisfied. When combined with the prior eleven distributions, and $849.9 million in advances paid or committed to be paid by the Securities Investor Protection Corporation ("SIPC"), the Trustee has distributed over $14.16 billion to BLMIS customers through the Report Period, with 1,498 BLMIS accounts fully satisfied. The 1,498 fully satisfied accounts represent more than 65% of accounts with allowed claims, demonstrating that the Trustee has made significant progress in returning customer property to BLMIS customers. All allowed customer claims up to approximately $1.655 million have been fully satisfied.

3.      The Trustee and his counsel (including, but not limited to, Baker & Hostetler LLP ("B&H"), Windels Marx Lane & Mittendorf, LLP ("Windels Marx"), and various special counsel retained by the Trustee ("Special Counsel") (collectively, "Counsel"), continued to litigate hundreds of individual cases before this Court, the United States District Court for the Southern District of New York (the "District Court"), the United States Court of Appeals for the Second Circuit (the "Second Circuit"), the Supreme Court, and dozens of international courts.

4.      This Report is meant to provide an overview of the efforts of the Trustee and his team of professionals in unwinding the largest Ponzi scheme in history. This fraud involved many billions of dollars and thousands of people and entities located across the world. The Trustee continues to work diligently to coordinate the administration, investigation, and litigation to maximize recoveries and efficiencies and reduce costs.

5.      All Interim Reports, along with a docket and substantial information about this liquidation proceeding, are located on the Trustee's website, www.madofftrustee.com (the "Trustee Website").

## II.  BACKGROUND

6.      The Trustee's prior interim reports, each of which is fully incorporated herein, have detailed the circumstances surrounding the filing of this case and the events that have taken place during prior phases of this proceeding.[3]

## III.  FINANCIAL CONDITION OF THE ESTATE

7.      No administration costs, including the compensation of the Trustee, his counsel, and his consultants, are being, or have been, paid out of recoveries obtained by the Trustee for the benefit of BLMIS customers with allowed claims. Rather, the fees and expenses of the Trustee, his counsel and consultants, and administrative costs incurred by the Trustee are paid through administrative advances from SIPC. These costs are chargeable to the general estate and have no impact on recoveries that the Trustee has obtained or will obtain. Thus, recoveries from litigation, settlements, and other means are available in their entirety for the satisfaction of allowed customer claims.

---

[3] Prior reports cover the periods from December 11, 2008 to June 30, 2009 (the "First Interim Report") (ECF No. 314); July 1, 2009 to October 31, 2009 (the "Second Interim Report") (ECF No. 1011); November 1, 2009 to March 31, 2010 (the "Amended Third Interim Report") (ECF No. 2207); April 1, 2010 to September 30, 2010 (the "Fourth Interim Report") (ECF No. 3038); October 1, 2010 to March 31, 2011 (the "Fifth Interim Report") (ECF No. 4072); April 1, 2011 to September 30, 2011 (the "Sixth Interim Report") (ECF No. 4529); October 1, 2011 to March 31, 2012 (the "Seventh Interim Report") (ECF No. 4793); April 1, 2012 to September 30, 2012 (the "Eighth Interim Report") (ECF No. 5066); October 1, 2012 to March 31, 2013 (the "Ninth Interim Report") (ECF No. 5351); April 1, 2013 to September 30, 2013 (the "Tenth Interim Report") (ECF No. 5554); October 1, 2013 to March 31, 2014 (the "Eleventh Interim Report") (ECF No. 6466); April 1, 2014 to September 30, 2014 (the "Twelfth Interim Report") (ECF No. 8276); October 1, 2014 through March 31, 2015 (the "Thirteenth Interim Report") (ECF No. 9895); April 1, 2015 through September 30, 2015 (the "Fourteenth Interim Report") (ECF No. 11912); October 1, 2015 through March 31, 2016 (the "Fifteenth Interim Report") (ECF No. 13184); April 1, 2016 through September 30, 2016 (the "Sixteenth Interim Report") (ECF No. 14347); October 1, 2016 through March 31, 2017 (the "Seventeenth Interim Report") (ECF No. 15922); April 1, 2017 through September 30, 2017 (the "Eighteenth Interim Report") (ECF No. 16862); October 1, 2017 through March 31, 2018 (the "Nineteenth Interim Report") (ECF No. 17555); April 1, 2018 through September 30, 2018 (the "Twentieth Interim Report") (ECF No. 18146); October 1, 2018 through March 31, 2019 (the "Twenty-First Interim Report") (ECF No. 18716); April 1, 2019 through September 30, 2019 (the "Twenty-Second Interim Report") (ECF No. 19097); October 1, 2019 through March 31, 2020 (the "Twenty-Third Interim Report") (ECF No. 19502); April 1, 2020 through September 30, 2020 (the "Twenty-Fourth Interim Report") (ECF No. 19896); and October 1, 2021 through March 31, 2021 (the "Twenty-Fifth Interim Report") (ECF No. 20480).

8.      A summary of the financial condition of the estate as of September 30, 2021 is provided in Exhibit A attached hereto.

9.      This summary reflects cash of $39,305,257.17, short term investments, money market funds, savings accounts and other investments, including alternative investments of $706,235,646, and short-term United States Treasuries in the principal amount of $160,016,469. *See* Exhibit A, page 3, note (3) and page 5, notes (4) and (5).

10.     As detailed in Exhibit A, as of September 30, 2021, the Trustee requested and SIPC advanced $2,950,402,180.13, of which $849,443,412.47 was used to pay allowed customer claims up to the maximum SIPA statutory limit of $500,000 per account, and $2,100,958,767.66 was used for administrative expenses. *See* Exhibit A, page 1.

## IV.     CLAIMS ADMINISTRATION

### A.     <u>Claims Processing</u>

#### i.      <u>Customer Claims</u>

11.     During the Report Period, the Trustee allowed $30,000.00 in customer claims, bringing the total amount of allowed claims as of September 30, 2021 to $19,416,279,866.92. The Trustee has paid or committed to pay $849,868,412.47 in cash advances from SIPC through September 30, 2021. This is the largest commitment of SIPC funds of any SIPA liquidation proceeding and greatly exceeds the total aggregate payments made in all other SIPA liquidations to date.

12.     As of September 30, 2021, there were 11 claims relating to 7 accounts that were "deemed determined," meaning the Trustee has instituted litigation against those accountholders and related parties. The complaints filed by the Trustee in those litigations set forth the express grounds for disallowance of customer claims under §502(d) of the Bankruptcy Code. Accordingly, such claims will not be allowed until the avoidance actions are resolved by

settlement or otherwise and the judgments rendered against the claimants in the avoidance actions are satisfied.

### ii. General Creditor Claims

13. As of September 30, 2021, the Trustee had received 428 timely and 22 untimely filed secured and unsecured priority and non-priority general creditor claims totaling approximately $1.7 billion. The claimants include vendors, taxing authorities, employees, and customers filing claims on non-customer proof of claim forms. Of these 428 claims and $1.7 billion, the Trustee has received 95 general creditor claims and 49 broker-dealer claims totaling approximately $265.4 million. At this time, the BLMIS estate has no funds from which to make distributions to priority/non-priority general creditors and/or broker dealers.

### iii. The Trustee Has Kept Claimants Informed Of The Status Of The Claims Process

14. Throughout the liquidation proceeding, the Trustee has kept claimants, general creditors, interested parties, and the public informed of his efforts by maintaining the Trustee Website, a toll-free customer hotline, conducting a Bankruptcy Code § 341(a) meeting of creditors on February 20, 2009, and responding in a timely manner to the multitude of phone calls, e-mails, and letters received on a daily basis, from both claimants and their representatives.

15. The Trustee Website (www.madofftrustee.com) allows the Trustee to share information with claimants, their representatives, and the general public regarding the ongoing recovery efforts and the overall liquidation. In addition to court filings, media statements, and weekly information on claims determinations, the Trustee Website includes up-to-date information on the status of Customer Fund recoveries, an "Ask the Trustee" page where questions of interest are answered and updated, a letter from the Trustee's Chief Counsel on

litigation matters, a detailed distribution page, an FAQs page, and a timeline of important events. The Trustee Website is monitored and updated on a daily basis.

16.     In addition, the Trustee Website allows claimants to e-mail their questions directly to the Trustee's professionals, who follow up with a return e-mail or telephone call to the claimants. As of September 30, 2021, the Trustee and his professionals had received and responded to more than 7,100 e-mails via the Trustee Website from BLMIS customers and their representatives and fielded thousands of calls from claimants and their representatives.

17.     In sum, the Trustee and his team have endeavored to respond in a timely manner to every customer inquiry and ensure that customers are as informed as possible about various aspects of the BLMIS proceeding.

### iv.     The Hardship Program

18.     This liquidation had offered two different Hardship Programs to former BLMIS customers, both of which are detailed in prior reports along with statistics regarding how many customers have availed themselves of the program. *See* Trustee's Twentieth Interim Report, ECF No. 18146. As of September 30, 2021, there were 7 Hardship Applications still under review and 186 that were resolved because they were either withdrawn by the applicant, deemed withdrawn for failure of the applicant to pursue the application, denied for lack of hardship or referred for consideration of settlement. After nearly 12 years, the Hardship Program was officially terminated.

### B.     Objections To Claims Determinations

19.     As of September 30, 2021, 1,750 docketed objections (which exclude withdrawn objections and include duplicates, amendments, and supplements) had been filed with the Court. These objections relate to 3,270 unique claims and 715 accounts. As of September 30, 2021, 119 docketed objections (related to 120 unique claims and 103 accounts) remained.

20.     The following objections, among others, have been asserted: Congress intended a broad interpretation of the term "customer" and the statute does not limit the definition to those who had a direct account with BLMIS, the Trustee should determine claims based upon the BLMIS November 30, 2008 statement as opposed to the court-approved cash in-cash out or "Net Investment Method," claimants should receive interest on deposited amounts, the Trustee must commence an adversary proceeding against each claimant in order to avoid paying gains on claimants' investments, claimants paid income taxes on distributions and their claims should be adjusted by adding all amounts they paid as income taxes on fictitious profits, each person with an interest in an account should be entitled to the SIPC advance despite sharing a single BLMIS account, and there is no legal basis for requiring the execution of a Assignment and Release prior to prompt payment of a SIPC advance.

21.     The Trustee departed from past practice in SIPA proceedings and paid or committed to pay the undisputed portion of any disputed claim in order to expedite payment of SIPC protection to customers, while preserving their right to dispute the total amount of their claim.

22.     As part of his ongoing efforts to resolve pending objections, the Trustee has continued investigating and analyzing objections of claimants to the Trustee's determination of their claims. During this extensive review of the facts unique to each claimant, the Trustee has identified circumstances that require resolution by the Bankruptcy Court. Prior disputes are described in the Trustee's previous reports.

## C.     Settlements Of Customer Claims Disputes

23.     As of September 30, 2021, the Trustee had reached agreements relating to 1,155 accounts and with the IRS (which did not have a BLMIS account). These litigation, pre-

litigation, and avoidance action settlements allowed the Trustee to avoid the litigation costs that would have otherwise been necessary.

## V.  PROCEEDINGS RELATED TO THE INTERPRETATION OF SIPA

### A.  Net Equity Dispute

24.  For purposes of determining each customer's Net Equity, as that term is defined under SIPA, the Trustee credited the amount of cash deposited by the customer into his BLMIS account, less any amounts already withdrawn from that BLMIS customer account, also known as the Net Investment Method. Some claimants argued that the Trustee was required to allow customer claims in the amounts shown on the November 30, 2008 customer statements (the "Net Equity Dispute").

25.  On August 16, 2011, the Second Circuit affirmed this Court's decision and the Trustee's Net Investment Method, holding that it would have been "legal error" for the Trustee to discharge claims for securities under SIPA "upon the false premise that customers' securities positions are what the account statements purport them to be." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 241 (2d Cir. 2011) (the "Net Equity Decision"). Any calculation other than the Net Investment Method would "aggravate the injuries caused by Madoff's fraud." *Id.* at 235. Instead, the Net Investment Method prevents the "whim of the defrauder" from controlling the process of unwinding the fraud. *Id.*

26.  Under the *Net Equity Decision*, the relative position of each BLMIS customer account must be calculated based on "unmanipulated withdrawals and deposits" from its opening date through December 2008. *Id.* at 238. If an account has a positive cash balance, that accountholder is owed money from the estate. As a corollary, if an account has a negative cash balance, the accountholder owes money to the estate. Both the recovery and distribution of customer property in this case are centered on the principle that the Trustee cannot credit

"impossible transactions." *Id*. at 241. If he did, then "those who had already withdrawn cash deriving from imaginary profits in excess of their initial investment would derive additional benefit at the expense of those customers who had not withdrawn funds before the fraud was exposed." *Id*. at 238.

27.     The Second Circuit found, "in the context of this Ponzi scheme—the Net Investment Method is . . . more harmonious with provisions of the Bankruptcy Code that allow a trustee to avoid transfers made with the intent to defraud . . . and 'avoid[s] placing some claims unfairly ahead of others.'" *Id*. at 242 n.10 (quoting *Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.)*, 263 B.R. 406, 463 (S.D.N.Y. 2001)). Thus, the Trustee is obligated to use the avoidance powers granted by SIPA and the Bankruptcy Code to prevent one class of customers—the "net winners" or those with avoidance liability—from having the benefit of Madoff's fictitious trades at the expense of the other class of customers—the "net losers," or those who have yet to recover their initial investment.

28.     Finally, the Second Circuit explained that "notwithstanding the BLMIS customer statements, there were no securities purchased and there were no proceeds from the money entrusted to Madoff for the purpose of making investments." *Id*. at 240. Therefore any "[c]alculations based on made-up values of fictional securities would be 'unworkable' and would create 'potential absurdities.'" *Id*. at 241 (quoting *In re New Times Sec. Serv., Inc.*, 371 F.3d 68, 88 (2d Cir. 2004)). Thus, the Second Circuit rejected reliance upon the BLMIS account statements, finding that, to do otherwise, "would have the absurd effect of treating fictitious and arbitrarily assigned paper profits as real and would give legal effect to Madoff's machinations." *Id*. at 235.

29.     A petition for panel rehearing, or, in the alternative, for rehearing en banc was denied. *Sterling Equities Assoc. v. Picard*, Adv. No. 10-2378 (2d Cir.) (ECF Nos. 505, 537, 551). Three petitions for certiorari were filed with the Supreme Court, which were denied. *Ryan v. Picard*, 133 S. Ct. 24 (2012); *Velvel v. Picard*, 133 S. Ct. 25 (2012). Certiorari was also dismissed with respect to one appeal. *Sterling Equities Assoc. v. Picard,* 132 S. Ct. 2712 (2012).

**B.      Time-Based Damages**

30.     Following the litigation regarding the Net Investment Method, the Trustee filed a motion to affirm his net equity calculations and denying requests for "time-based damages." (ECF Nos. 5038, 5039). The Trustee took the position that customers were not entitled to an inflation-based adjustment to their allowed customer claims. This Court agreed. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Bernard L. Madoff)*, 496 B.R. 744 (Bankr. S.D.N.Y. 2013) (the "Time-Based Damages Decision"); *see also* ECF No. 5463.

31.     On February 20, 2015, the Second Circuit affirmed the Bankruptcy Court's decision, holding that "SIPA's scheme disallows an inflation adjustment as a matter of law." *See In re Bernard L. Madoff Inv. Sec. LLC*, 779 F.3d 74, 80, 82 (2d Cir. 2015). The Court also held that "an interest adjustment to customer net equity claims is impermissible under SIPA's scheme." *Id*. at 83.

32.     Under the Second Circuit's decision, a customer's net equity claim, calculated in accordance with the *Time-Based Damages Decision*, will not be adjusted for inflation or interest. The Second Circuit explained that "an inflation adjustment goes beyond the scope of SIPA's intended protections and is inconsistent with SIPA's statutory framework." *Id*. at 79. Nor does SIPA provide for compensation related to any opportunity cost of the use of such money during the pendency of the liquidation proceedings. *Id*. at 80. While SIPA operates to "facilitate the proportional distribution of customer property actually held by the broker," *id*. at 81, "the Act . . .

restores investors to what their position would have been in the absence of liquidation." *Id*. at 79. For similar reasons, the Second Circuit rejected the request of one claimant who sought an adjustment for interest, in addition to inflation. *Id*. at 83.

33.     The Supreme Court denied the petition for certiorari filed. *Peshkin v. Picard*, 136 S. Ct. 218 (2015).

## C.     "Customer" Definition

34.     In this liquidation, the Trustee discovered that many claimants did not invest directly with BLMIS, but through an intermediary such as a "feeder fund." The Trustee's position consistently has been that only those claimants who maintained an account at BLMIS constitute "customers" of BLMIS, as defined in § 78lll(2) of SIPA. Where it appeared that claimants did not have an account in their names at BLMIS, the Trustee denied their claims for securities and/or a credit balance on the ground that they were not customers of BLMIS under SIPA.

35.     On June 28, 2011, the Court issued a decision affirming the Trustee's denial of these claims. (ECF Nos. 3018, 4193, 4209); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 454 B.R. 285 (Bankr. S.D.N.Y. 2011). The Court found that the objecting claimants invested in, not through, the feeder funds, and had no individual accounts at BLMIS. It was the feeder funds who entrusted their monies with BLMIS for the purpose of trading or investing in securities—the touchstone of "customer" status—whereas the objecting claimants purchased ownership interests in the feeder funds. The Court held that, absent a direct broker-dealer relationship with BLMIS, the objecting claimants sought a definition of "customer" that stretched the term beyond its limits.

36.     Judge Lifland put it succinctly: the objecting-claimants who invested in sixteen feeder funds did not qualify as "customers" because they "had no securities accounts at BLMIS,

were not known to BLMIS, lacked privity and any financial relationship with BLMIS, lacked

property interests in any Feeder Fund account assets at BLMIS, entrusted no cash or securities to

BLMIS, had no investment discretion over Feeder Fund assets invested with BLMIS, received

no account statements or other communications from BLMIS and had no transactions reflected

on the books and records of BLMIS . . . ." *Id.* at 290.

37.     On January 4, 2012, Judge Cote affirmed the Bankruptcy Court decision. *See
Aozora Bank Ltd. v. Sec. Inv'r Prot. Corp.*, 480 B.R. 117 (S.D.N.Y. 2012). In that decision,

Judge Cote determined in light of SIPA, the "most natural reading of the 'customer' definition

excludes persons like the appellants who invest in separate third-party corporate entities like

their feeder funds that in turn invest their assets with the debtor." *Id.* at 123.

38.     On February 22, 2013, the Second Circuit affirmed the decisions of the District

Court and the Bankruptcy Court. *See Kruse v. Sec. Inv'r Prot. Corp., Irving H. Picard,* 708 F.3d

422 (2d Cir. 2013). No petitions for certiorari were filed.

**D.      Inter-Account Transfers**

39.     The Trustee has maintained, and the Second Circuit affirmed, that the "cash-in,

cash-out" methodology is appropriate for calculating a customer's net equity in this case. *The
Net Equity Decision*, however, did not expressly address the treatment of transfers between

BLMIS accounts, which the Trustee refers to as "Inter-Account Transfers." Many customers

maintained more than one BLMIS account and transferred funds between such accounts. Other

customers transferred funds to the accounts of other BLMIS customers.

40.     On December 8, 2014, the Bankruptcy Court issued a decision upholding the

Trustee's methodology for calculating inter-account transfers. ECF No. 8680; *see Sec. Inv'r
Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 522 B.R. 41 (Bankr.

S.D.N.Y. 2014). Judge Bernstein explained that if he adopted the objecting parties' arguments,

"computing the balance in the transferor's account bloated by fictitious profits increases the transferee's claim to the customer property pool allocable to all Madoff victims by artificially increasing the transferee's net equity. This result aggravates the injury to those net losers who did not receive transfers of fictitious profits by diminishing the amount available for distribution from the limited pool of customer property." *Id*. at 53. The order memorializing Judge Bernstein's written decision was entered on December 22, 2014. (ECF No. 8857).

41. On January 14, 2016, the District Court affirmed. Judge Engelmayer held that the Inter-Account Transfer Method "properly applies the Second Circuit's Net Equity Decision and is not otherwise prohibited by law;" in fact, he found that "the method is superior as a matter of law, and not 'clearly inferior,'" to the alternatives proposed by the appellants. *In re BLMIS*, 2016 WL 183492 *1, at *26 (S.D.N.Y. Jan. 14, 2016) (citing *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 654 F.3d at 238 n.7 (2d Cir. 2011).

42. On June 1, 2017, the Second Circuit issued a summary order agreeing with the lower courts. Rejecting each of the appellants' arguments in turn, and citing its Net Equity Decision, the Order confirms that the Second Circuit "continue[s] to refuse . . . to 'treat[] fictitious and arbitrarily assigned paper profits as real' and to give 'legal effect to Madoff's machinations.'" *In re Bernard L. Madoff Inv. Sec., LLC*, 2017 WL 2376567, *3 (2d Cir. Jun. 1, 2017).

43. No petitions for certiorari were filed.

**E.      Profit-Withdrawal Issue**

44. Several customers, including claimant Mr. Aaron Blecker, objected to the Trustee's denial of their net equity claims because they disputed whether they received funds that appear to be identified on BLMIS customer account statements as "PW," or "Profit Withdrawals."

45. Upon further review and analysis, the Trustee discovered that several hundred accounts contained "PW" transactions. Accordingly, the Trustee instituted an omnibus proceeding to resolve the question of whether the Trustee's treatment of "PW" transactions as cash withdrawals for the purposes of a customer's net equity calculation is proper. (ECF No. 10266).

46. Following extensive briefing, discovery, and motion practice, the Court held a trial on the matter on January 19, 2018. After hearing testimony from the Trustee's professionals, Mr. Blecker's son, and BLMIS employees, and consideration of the BLMIS books and records offered into evidence, the Court found that absent credible evidence to the contrary offered by a claimant related to that claimant's case, a "PW" notation appearing on a BLMIS customer statement indicated that the customer received a cash distribution in the amount of the PW Transaction. Because claimant Mr. Blecker failed to provide any credible, contrary evidence that the "PW" Transactions on his customer statements were not received, he failed to sustain his burden of proving the amount of his customer claims. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 592 B.R. 513 (Bankr. SDNY 2018). The Court entered its Order Affirming the Trustee's Determinations Denying Claims and Overruling the Objections of Participating Claimant Aaron Blecker on August 3, 2018. (ECF No. 17878).

47. An appeal was taken to the District Court and was fully briefed by January 18, 2019. (ECF Nos. 18, 19, 20, 23, 24). Appellants challenged this Court's application of the Federal Rules of Evidence in admitting and relying on the BLMIS books and records in finding that the profit withdrawal transactions were properly treated as debits under the Net Investment Method. On August 16, 2019, the District Court affirmed the Bankruptcy Court's decision. *Blecker v. Picard*, 2019 WL 3886721 (Aug. 16, 2019) 18 Civ. 7449 (PAE). The District Court

found no abuse of discretion in the decision; specifically, it found that this Court rigorously and properly applied the Federal Rules of Evidence and its admission of BLMIS's books and records as business records was proper. The District Court further held that the burden to overcome the Trustee's claim determination was Mr. Blecker's and he failed to do so.

48.     On September 13, 2019, an appeal of the District Court's decision was taken to the Second Circuit. *Blecker v. Picard*, Docket No. 19-2988. On December 27, 2019, appellants filed their opening brief repeating their claims that this Court failed to apply the Federal Rules of Evidence, improperly shifted the burden of proof to Mr. Blecker, and that Mr. Blecker could not have ratified the transactions in his BLMIS account that occurred before 1992.

49.     The Trustee and SIPC's opposition briefs were filed on April 17, 2020. Appellants filed their reply on May 27, 2020, and oral argument was held on September 21, 2020.

50.     On October 6, 2020, the Second Circuit issued its Summary Order upholding the District Court's judgment affirming this Court's decision that the Trustee properly treated PW transactions as debits to BLMIS customer accounts. Summary Order, *In re: Bernard L. Madoff Investment Securities LLC*, 830 Fed.Appx. 669 (2020). The Second Circuit found that the District Court properly upheld this Court's admission of the BLMIS books and records as within the "permissible bounds of its discretion." *Id*. at 4. Further, the Second Circuit found no clear error as to this Court's factual determination that Blecker "ratified the PW Transactions whether as a result of the 10-day clause in the 1992 customer agreements (for PW Transactions postdating those agreements), or through his 23 years-long, knowing acceptance of the PW Transactions and the corresponding reductions to his BLMIS accounts" prior to the 1992

customer agreements. *Id*. The Second Circuit found all other arguments by Mr. Blecker without merit and rejected them without discussion. *Id*. at 5.

51.     No petitions for certiorari were filed.

## VI.     LITIGATION

52.     The Trustee is actively involved in dozens of litigations and appeals. This Report does not discuss each of them in detail but instead summarizes those matters with the most activity during the Report Period.

### A.     The District Court—Motions to Dismiss Heard by Judge Rakoff

53.     Upon the motions of hundreds of defendants, the District Court withdrew the reference in numerous cases and heard numerous motions to dismiss. A total of 485 motions to withdraw and 424 joinders were filed, altogether implicating a total of 807 adversary proceedings. The District Court (Rakoff, J.) consolidated briefing and argument on certain common issues raised in the motions to withdraw (the "Common Briefing"). *See* Trustee's Twentieth Interim Report, ECF No. 18146. The District Court has since decided the Common Briefing issues and returned all proceedings to the Bankruptcy Court.

### B.     Good Faith Actions

#### i.     Resolution of Good Faith Avoidance Actions

54.     As of September 30, 2021, the Trustee has 40 good faith actions pending, as set forth in the attached Exhibit B. In certain avoidance actions, the Trustee entered into mediations, considered settlement offers, and where appropriate, agreed to dismiss certain defendants from the actions. The Trustee's professionals engaged in settlement negotiations, which led to 15 cases entering into documented settlements during the Report Period. In addition, as a result of the Trustee obtaining judgments, six cases were closed during the Report Period.

ii.  **Trial-Related Motion Practice**

(a)  **Michael Mann Action**

55.     Prior to the Report Period, on September 28, 2018, the Bankruptcy Court issued an Order setting the trial in the *Picard v. BAM, L.P.*, Adv. Pro. No. 10-04390 (CGM) matter (the "Mann Action") to start on December 3, 2018. *See* Adv. Pro. No. 10-04390, ECF No. 108. In response, on October 26, 2018, Defendants filed a motion to withdraw the reference to the Bankruptcy Court (the "Mann Motion to Withdraw") on their asserted right to a jury trial before the District Court, and on December 27, 2018, the Trustee filed his opposition brief to the Mann Motion to Withdraw. *See* No. 18-cv-09916, ECF Nos. 1, 17. On January 16, 2019, the Defendants filed their reply brief in further support of the Mann Motion to Withdraw. *See* No. 18-cv-09916, ECF No. 22.

56.     Separately, on November 20, 2018, Defendants moved to stay the December 3, 2018 trial, pending a ruling from the District Court on the Mann Motion to Withdraw. *See* Adv. Pro. No. 10-04390, ECF Nos. 114, 121-122. On November 27, 2018, the Trustee filed his opposition to Defendants' motion to stay the trial, and oral argument was held on November 28, 2018. *See* Adv. Pro. No. 10-04390, ECF Nos. 127-28, 130.

57.     At the November 28, 2018 hearing, the Bankruptcy Court offered Defendants the opportunity to make an oral motion to withdraw their customer claims and objections to the Trustee's determinations of those claims, and the Court granted the motion, which was memorialized in the subsequent Order Withdrawing Claims and Objections With Prejudice And Finally Determining Net Equity filed on December 20, 2018. *See* Adv. Pro. No. 10-04390, ECF No. 138. However, the order did not determine the Bankruptcy Court's jurisdiction over the Mann Action, for which the parties provided separate briefing on December 5, 2018 and December 12, 2018, respectively. *See* Adv. Pro. No. 10-04390, ECF Nos. 132, 137. On January

18, 2019, the Bankruptcy Court issued its Memorandum Decision and Order holding that the Court has equitable jurisdiction over the Mann Action despite Defendants' withdrawal of their customer claims and objections (the "Jurisdictional Decision"). *See* Adv. Pro. No. 10-04390, ECF No. 148.

58.     On January 25, 2019, Defendants moved for leave to appeal the *Jurisdictional Decision* (the "Motion for Leave"). *See* Adv. Pro. No. 10-04390, ECF Nos. 149-150. The Trustee opposed the motion on February 8, 2019. *See* Adv. Pro. No. 10-04390, ECF Nos. 155-156. On February 19, 2019, Defendants filed their reply brief in further support of their Motion for Leave. *See* No. 19-cv-00812, ECF Nos. 6-7.

59.     On December 21, 2018, the Trustee filed his Motion for Summary Judgment in the Mann Action. *See* Adv. Pro. No. 10-04390, ECF Nos. 140-143. On February 22, 2019, Defendants filed their opposition brief to the Motion for Summary Judgment. *See* Adv. Pro. No. 10-04390, ECF Nos. 158-160. On March 27, 2019, the Trustee filed his reply brief in further support of his Motion for Summary Judgment. *See* Adv. Pro. No. 10-04390, ECF Nos. 164, 166-167. Oral argument before the Bankruptcy Court was held on April 24, 2019. *See* Adv. Pro. No. 10-04390, ECF No. 173. On September 11, 2019, the Bankruptcy Court issued its Memorandum Decision Granting Relief Under Federal Rule of Civil Procedure 56(g). *See* Adv. Pro. No. 10-04390, ECF No. 174.

60.     On February 26, 2020, District Judge Vernon S. Broderick entered an Opinion and Order denying the Mann Motion to Withdraw and Motion for Leave and directing the Clerk of Court to close the motions. *See* No. 18-cv-09916, ECF No. 28; No. 19-cv-00812, ECF No. 10).

61. On March 24, 2020, after conferring with counsel and the Court, the Trustee filed a notice of adjournment of the final pre-trial conference from March 25, 2020 to May 27, 2020 given the uncertainty created by COVID-19. *See* Adv. Pro. No. 10-04390, ECF Nos. 189, 191. The parties subsequently agreed to complete all pre-trial matters by the final pre-trial conference, which had been adjourned until July 1, 2020. *See* Adv. Pro. No. 10-04390, ECF No. 194.

62. On June 17, 2020, the Trustee filed his motion *in limine* to exclude testimony and exhibits related to Defendants' tax obligations to governmental taxing authorities and accrued interest on principal deposits. *See* Adv. Pro. No. 10-04390, ECF No. 198-99.

63. At the July 1, 2020 conference, the Court granted the Trustee's motion *in limine* and adjourned for one week to allow Defendants to secure access to their offices, which were closed due to COVID-19 concerns, and provide the Court with an update by the next scheduled conference on July 9, 2020. *See* Hr'g Tr. at 22:13-24; 24:18-25:6; Adv. Pro. No. 10-04390, ECF No. 204.

64. At the July 9, 2020 follow-up conference, Defendants confirmed they were able to secure access to their offices, and the Bankruptcy Court adjourned until August 4, 2020 to finalize the Pretrial Joint Order. *See* Hr'g Tr. at 6:14-23; Adv. Pro. No. 10-04390, ECF No. 205. The Bankruptcy Court further adjourned the matter until August 11, 2020, after which the parties submitted their finalized Joint Pretrial Order. *See id.*, ECF No. 209.

65. On August 19, 2020, the matter was reassigned from Judge Bernstein to Chief Judge Cecelia G. Morris and the trial was held virtually on September 14, 2020 pursuant to the Order Establishing Procedures For Remote Evidentiary Hearing/Trial. *See* Adv. Pro. No. 10-04390, ECF Nos. 213-214, 216.

66.    On December 11, 2020, Judge Morris issued her Memorandum Decision determining that the IA Business and the three commercial business accounts that Madoff used for customer deposits and withdrawals were transferred to BLMIS on January 12, 2001 and contains customer property that the Trustee can claw back. As a result, Judge Morris ordered Defendants to turn over the fraudulent transfers made within two years and pay prejudgment interest. *Picard v. BAM L.P.*, 624 B.R. 55 (Bankr. S.D.N.Y. 2020).

67.    On December 23, 2020, the Bankruptcy Court entered the Trustee's form of Order entering judgment against Michael and Meryl Mann in the amount of $3,139,200.00, and against BAM L.P. in the amount of $785,497.60, both of which included prejudgment interest of 4% from the filing of the complaint on November 30, 2010 through October 15, 2020. *See* Adv. Pro. No. 10-04390, ECF No. 254.

68.    On January 5, 2021, Defendants appealed the judgment entered by Judge Morris. *See* Adv. Pro. No. 10-04390, ECF Nos. 257-58.

69.    On February 10, 2021, Defendants filed a stipulation of voluntary dismissal of the appeal with prejudice. *See* No. 21-cv-00395 (PGG), ECF No. 7.

70.    The Defendants paid the judgment in full by April 7, 2021, and a Satisfaction of Judgment was filed on April 8, 2021. *See* Adv. Pro. No. 10-04390 (CGM), ECF No. 263.

**(b)    James Greiff Action**

71.    During the pre-trial conference held on February 20, 2020, this Court set trial to start on April 7, 2020. *See* Hearing Re Pre-Trial Conference, at 5:21-6:4; Adv. Pro. No. 10-04387, February 20, 2020, ECF No. 111.

72.    On March 4, 2020, Defendant James Greiff filed a motion to withdraw the reference. *See* No. 20-cv-02560, ECF Nos. 1, 3. The Trustee filed his opposition on April 20,

2020, and Defendant filed his reply brief in further support of his motion to withdraw the reference on April 27, 2020. *See* No. 20-cv-02560, ECF Nos. 5-8.

73.     On March 10, 2020, Defendant filed an order to show cause why the Bankruptcy Court should not grant his motion for stay of trial pursuant to Rule 5011(c) pending ruling by the District Court on Defendant's motion to withdraw the reference. *See* Adv. Pro. No. 10-04357, ECF Nos. 116-117. On that same day, the Bankruptcy Court entered a signed order to show cause, scheduling oral argument to be held on March 18, 2020. *See* Adv. Pro. No. 10-04357, ECF No. 118.

74.     On March 17, 2020, the Trustee filed his opposition, and on April 1, 2020, Defendant filed his reply brief in further support of his motion for a stay. *See* Adv. Pro. No. 10-04357, ECF Nos. 121-122, 126-27.

75.     On June 4, 2020, the District Court denied the Defendant's motion to withdraw the reference. *See* 20-cv-02560, ECF Nos. 9-10.

76.     On November 25, 2020, the Bankruptcy Court so ordered pre-trial deadlines and scheduled the parties' final pre-trial conference for January 27, 2021. *See* Adv. Pro. No. 10-04357, ECF No. 138.

77.     On January 27, 2021, the Trustee and Defendant entered into a Stipulation for Entry of Judgment, and the Bankruptcy Court entered a Consent Judgment with respect to the Trustee's claims against Defendant for avoidance and recovery of the disputed transfers. *See* Adv. Pro. No. 10-04357, ECF Nos. 142, 143.

78.     In furtherance of enforcing the Consent Judgment, on May 6, 2021, the Trustee recorded a transcript of the judgment with supporting affidavits with the Bay County Clerk of Court in Florida to place liens on real property held by Defendant within the state.

### iii. Summary Judgment Motions

### (a) South Ferry/Lowrey Actions

79.     Prior to the Report Period, the Trustee entered into separate stipulations with (1) Defendants South Ferry Building Company, Emmanuel Gettinger, Abraham Wolfson, and Zev Wolfson, (2) Defendants South Ferry #2 LP, Emmanuel Gettinger, Aaron Wolfson, and Abraham Wolfson, (3) Defendant United Congregations Mesora, and (4) James Lowrey, setting a schedule for summary judgment motion practice (collectively, the "South Ferry/Lowrey Actions"). *See* Adv. Pro. No. 10-04488, ECF No. 77; Adv. Pro. No. 10-04350, ECF No. 86; Adv. Pro. No. 10-05110, ECF No. 53; Adv. Pro. No. 10-04387, ECF No. 71.

80.     Prior to the Report Period, from July 2017 through September 2017, the parties in the South Ferry/Lowrey Actions filed and briefed motions for summary judgment. *See* Adv. Pro. No. 10-04488, ECF Nos. 86-93, 96-97, 100, 103; Adv. Pro. No. 10-04350, ECF Nos. 95-102, 105-106, 109, 112; Adv. Pro. No. 10-05110, ECF Nos. 60-69, 70-71, 74, 77; Adv. Pro. No. 10-04387, ECF Nos. 78-81, 83-84, 86-87, 91-92. On December 6, 2017, oral argument was held on the parties' motions for summary judgment.

81.     On March 22, 2018, the Bankruptcy Court issued its Report and Recommendation to the District Court granting the Trustee's motion for summary judgment and denying the South Ferry/Lowrey Actions' motions for summary judgment. *See In re Bernard L. Madoff [Good Faith Summary Judgment]*, Adv. Pro. No. 08-01789 (CGM), 2018 WL 1442312 (Bankr. S.D.N.Y. March 22, 2018).

82.     On April 26, 2018, counsel for the South Ferry/Lowrey actions filed their Rule 9003 Objections to the Bankruptcy Court's Report and Recommendation. *See* Adv. Pro. No. 10-04387, ECF No. 116. On June 1, 2018, the Trustee filed his Response to Defendants' Rule 9033

Objections. *See* Adv. Pro. No. 10-04387, ECF No. 119. As of June 14, 2018, the case was assigned to District Judge Paul Engelmayer for his review and approval.

83.     On February 7, 2019, Judge Engelmayer issued his ruling adopting the Bankruptcy Court's Report and Recommendation, granting summary judgment to the Trustee, and denying summary judgment to the Defendants in the South Ferry/Lowrey Actions. *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (CGM), 2019 WL 479185 (S.D.N.Y. Feb. 7, 2019).

84.     Defendants filed their notices of appeal to the Second Circuit on February 19, 2019. *See* No. 18-cv-05381, ECF No. 32. Defendants subsequently posted the requisite bond on April 9, 2019. *See* No. 18-cv-05381, ECF No. 37. Defendants filed their appellate brief with the Second Circuit on June 4, 2019. *See* No. 19-429, ECF No. 82. The Trustee filed his appellee brief on September 3, 2019. *See* No. 19-429, ECF No. 102. The Defendants filed their reply brief on October 4, 2019. *See* No. 19-419, ECF No. 138. Oral arguments were heard telephonically on March 31, 2020. *See* No. 19-419, ECF No. 170.

85.     On September 24, 2020, the Second Circuit affirmed the District Court's judgment, concluding that to the extent § 548(c) applies in this SIPA liquidation, the transfers were not "for value" for purposes of that provision, and that recovery would not violate the two-year limitation in § 548(a)(1). *In re Bernard L. Madoff Inv. Sec. LLC*, No. 19-0429-BK(L), 2020 WL 5666677 (2d Cir. Sept. 24, 2020).

86.     On October 8, 2020, Defendants filed a petition for panel rehearing, or in the alternative, for rehearing *en banc*. On November 16, 2020, that request was denied. *See* No. 19-429, ECF Nos. 193, 197.

87. On November 23, 2020, the Second Circuit issued its judgment mandate, affirming the judgments of the District Court. *See* No. 19-429, ECF No. 198-1.

88. On March 30, 2021, Defendants filed a petition for a writ of certiorari before the Supreme Court, and it was placed on the docket on April 1, 2021. *See* No. 20-1382. On May 3, 2021, the Supreme Court denied the writ of certiorari. *See* No. 19-429, ECF No. 201.

89. As of May 19, 2021, Defendants paid in full and complete satisfaction the judgment of the District Court, including post-judgment interest of 2.58% from February 8, 2019. The Trustee recovered approximately $41 million from the Defendants. *See, e.g.*, No. 18-cv-05452, ECF No. 42; No. 18-cv-05453, ECF No. 39; No. 18-cv-05381, ECF No. 40; No. 18-cv-05430, ECF No. 38.

### (b) RAR Entrepreneurial Fund Ltd. Action

90. On January 31, 2020, counsel for Defendant RAR Entrepreneurial Fund Ltd. moved for permissive withdrawal of the reference. *See* No. 20-cv-01029, ECF No. 1.

91. On February 18, 2020, the Trustee filed a letter with the court consenting to the withdrawal of the reference and proposing a briefing schedule for summary judgment, which Defendants' counsel agreed to, and the Court so ordered on March 5, 2020. *See* No. 20-cv-01029, ECF Nos. 5, 7.

92. On April 1, 2020, the Trustee filed his motion for summary judgment. *See* No. 20-cv-01029, ECF Nos. 12-20.

93. On June 5, 2020, Defendant filed its memorandum of law in opposition to the Trustee's motion for summary judgment and in support of its cross-motion for summary judgment dismissing the case in its entirely. On June 9, 2020, Defendant filed its notice of cross-motion for summary judgment. *See* No. 20-cv-01029, ECF Nos. 25-29.

94.     On June 23, 2020, the Trustee filed his brief in reply to Defendant's cross-motion and Defendant's opposition to his motion for summary judgment. *See* No. 20-cv-01029, ECF Nos. 33-35.

95.     Defendant filed its reply brief in support of its cross-motion on June 30, 2020. *See* No. 20-cv-01029, ECF No. 36.

96.     On March 3, 2021, District Judge Jesse M. Furman granted in part and denied the Trustee's motion for summary judgment and denied in full Defendant's cross-motion, finding that the Trustee did have standing to pursue the Two-Year Transfers and established the elements of his claim except that there were issues of fact with respect to whether the transfers were made by the LLC or Madoff personally, despite finding "RAR faces an uphill battle and that the Trustee is ultimately likely to prevail on its claim." *See* No. 20-cv-01029, 2021 WL 827195, at *10 (S.D.N.Y. Mar. 3, 2021).

97.     On March 18, 2021, Judge Furman held a telephonic conference, in which the parties agreed to go to mediation before proceeding with trial.  *See* No. 20-cv-01029, ECF no. 45.

98.     On April 29, 2021, the parties filed a joint letter to notify the District Court that mediation concluded unsuccessfully and request a conference to discuss next steps. *See* No. 20-cv-01029, ECF No. 46.

99.     On May 6, 2021, the court held a telephonic conference with the parties, during which the trial was scheduled to begin on July 19, 2021.  *See* No. 20-cv-01029, ECF No. 49.

100.     On June 2, 2021, the court issued an order rescheduling the trial to begin on July 20, 2021.  *See* No. 20-cv-01029, ECF No. 59.

101.    On July 16, 2021, the trial was adjourned and subsequently rescheduled to be held

on October 18, 2021.  *See* No. 20-cv-01029, ECF Nos. 98, 104. On October 13, 2021, the trial

was adjourned *sine die*. *See* No. 20-cv-01029, ECF No. 110.

102.    On July 21, 2021, Defendant filed a letter motion seeking leave to take a

deposition *de bene esse* of identified fact witness, Mr. Ned Zachar, a former trader at BLMIS.

On July 26, 2021, the Trustee opposed Defendant's letter motion.  On July 28, 2021, the court

denied the letter motion given that Defendant already took a deposition of Mr. Zachar, and any

speculation that he may not be available on whatever dates the court sets for trial is not a basis

for another deposition.  *See* No. 20-cv-01029, ECF Nos. 97, 101, 103.

**(c)    Estate of Seymour Epstein Action**

103.    On February 14, 2020, counsel for Defendants Estate of Seymour Epstein,

Shelburne Shirt Company, Inc., and Muriel Epstein moved for permissive withdrawal of the

reference. *See* No. 20-cv-01377, ECF No. 1.

104.    On March 6, 2020, the parties filed a letter with the District Court consenting to

the withdrawal of the reference and attaching a proposed order, as previously done in *Picard v.

Meisels,* No. 20-cv-01278 (GW). *See* No. 20-cv-01377, ECF Nos. 5, 9.

105.    On June 8, 2020, the District Court issued an order denying the motion for

withdrawal of the reference, referring the case back to the Bankruptcy Court to adjudicate over

the Trustee's proposed motion for summary judgment. *See* No. 20-cv-01377, ECF Nos. 8-9.

106.    On June 15, 2020, the Trustee filed a letter with the Bankruptcy Court referring to

the District Court's denial of the Defendant's motion to withdraw the reference and requesting a

pre-motion conference to be held on July 29, 2020. *See* Adv. Pro. No. 04438, ECF No. 5.

107.    On July 22, 2020, Defendant filed a letter with the District Court requesting

permission to file a motion to dismiss for lack of subject matter jurisdiction, despite the July 8,

2020 order denying his motion to withdraw the reference. *See* No. 20-cv-01377, ECF No. 10. Judge Gregory H. Woods "directed [defendants] to submit a pre-motion conference letter more fully setting out the bases for the proposed motion . . . address[ing] why the Court should not refer the proposed motion to dismiss to the bankruptcy court for a report and recommendation," and inviting the Trustee to submit a responsive letter. *See id.*, ECF No. 11. On July 24, 2020, Defendant filed his pre-motion conference letter with the District Court, and the Trustee filed his response on July 27, 2020. *See* No. 20-cv-01377, ECF Nos. 12-13. During a telephone conference, Judge Woods directed Defendant to file a motion to withdraw the reference by August 10, 2020. However, Defendant notified the court on August 12, 2020 of his decision not to file a motion at that time. *Id.*, ECF Nos. 14-17.

108.    After the parties appeared at the July 29, 2020 hearing, the Bankruptcy Court entered an order setting the deadlines for the Trustee's motion for summary judgment and Defendant's cross-motion to dismiss for lack of subject matter jurisdiction. *See* Adv. Pro. No. 10-04438, ECF No. 109.

109.    On September 4, 2020, the Trustee filed his motion for summary judgment. *See* Adv. Pro. No. 10-04438, ECF Nos. 113-119.

110.    Defendant filed his combined opposition to the Trustee's motion for summary judgment and cross-motion to dismiss for lack of subject matter jurisdiction on October 9, 2020, the Trustee filed his combined reply in further support of his motion for summary judgment and opposition to Defendant's cross-motion to dismiss for lack of subject matter jurisdiction on October 30, 2020, and Defendant filed his reply in further support of his cross-motion to dismiss for lack of subject matter jurisdiction on November 6, 2020. *See* Adv. Pro. No. 10-04438, ECF No. 109.

111.    Oral argument on the Trustee's motion for summary judgment and Defendants' cross-motion to dismiss for lack of subject matter jurisdiction was adjourned to January 27, 2021 before the Bankruptcy Court. *See* Adv. Pro. No. 10-04438, ECF Nos. 138-145.

112.    On January 27, 2021, the Bankruptcy Court entered its Memorandum Decision granting summary judgment in favor of the Trustee, determining funds held in the bank accounts are customer property, and awarding prejudgment interest at the rate of 4% from November 30, 2010 through February 1, 2021. *See* Adv. Pro. No. 10-04438, ECF Nos. 155, 158. A Notice of Appeal was filed on March 15, 2021. *See id.*, ECF No. 20349.

113.    On February 5, 2021, Defendants moved to vacate the Judgment, sought entry of a proposed counter order, and requested a stay of enforcement of the Judgment pending appeal to an Article III Court (the "Reconsideration Motion"). On March 3, 2021, the Bankruptcy Court heard oral arguments and subsequently denied Defendants' motion in its entirety. *See* Adv. Pro. No. 10-04348, ECF Nos. 160–162, 168–169.

114.    On March 15, 2021, Defendants filed their notice of appeal to the District Court, where it was assigned to District Judge Colleen McMahon under case docket no. 21-cv-02334. *See* Adv. Pro. No. 10-04348, ECF No. 172.

115.    On May 5, 2021, Defendants-Appellants filed their opening brief, and refiled it again on May 28, 2021, after the District Court approved their motion to amend the record to add additional documents. The Trustee's brief was filed on June 14, 2021, and Defendants-Appellants' reply brief was filed on July 12, 2021. *See* No. 21-cv-02334, ECF Nos. 20-21, 27-28, 30.

### (d)   Zieses Investment Partnership Action

116.   On April 3, 2020, counsel for Defendants Zieses Investment Partnership, Barry Inger, Susan B. Alswanger, Caryn Zieses, Marshall Zieses, Neil R. Zieses, Debra S. Zieses, and Allan Inger moved for permissive withdrawal of the reference. *See* No. 20-cv-02872, ECF No. 1.

117.   On May 27, 2020, the Trustee filed a letter with the court consenting to the withdrawal of the reference and proposing a briefing schedule for summary judgment, which Defendants' counsel agreed to, and the Court so ordered on June 4, 2020. *See* No. 20-cv-02872, ECF Nos. 3-4.

118.   The Trustee's motion for summary judgment was filed on June 30, 2020. *See* No. 20-cv-02872, ECF Nos. 9-15. Defendant's opposition to the Trustee's motion and cross-motion for summary judgment was filed on August 4, 2020. *See id.*, ECF No. 16-20. The Trustee's reply on his motion and opposition on the cross-motion was filed on August 24, 2020. *See id.*, ECF No. 24-26. Defendant's reply on the cross-motion was filed on September 1, 2020. *See id.*, ECF No. 27. The matter is pending.

### (e)   Lisa Beth Nissenbaum Action

119.   On April 17, 2020, counsel for Defendants Neal Kurn, in his capacity as Trustee for the Lisa Beth Nissenbaum Trust, Lisa Beth Nissenbaum Trust, and Lisa B. Nissenbaum moved for permissive withdrawal of the reference. *See* No. 20-cv-03140, ECF No. 1.

120.   On April 29, 2020, the Trustee filed a letter with the court consenting to the withdrawal of the reference and proposing a briefing schedule for summary judgment, which Defendants' counsel agreed to, and the Court so ordered on April 30, 2020. *See* No. 20-cv-03140, ECF Nos. 4-6.

121.   The Trustee's motion for summary judgment was filed on June 22, 2020. *See* No. 20-cv-03140, ECF Nos. 15-18, 20-22. Defendant's opposition to the Trustee's motion and cross-

motion for summary judgment was filed on July 20, 2020. *See id.*, ECF No. 23-28. The Trustee's reply on his motion and opposition on the cross-motion was filed on August 13, 2020. *See id.*, ECF No. 31-33. Defendant's reply on the cross-motion was filed on August 20, 2020. *See id.*, ECF No. 36.

122.    On March 24, 2021, District Court Judge John G. Koeltl granted summary judgment in favor of the Trustee, finding no issues of disputed material fact, and awarded prejudgment interest.  *See* No. 20-cv-03140, 2021 WL 1141638 (S.D.N.Y. Mar. 24, 2021), ECF No. 46.

123.    On March 25, 2021, Judge Koeltl entered judgment in favor of the Trustee to recover avoidable transfers in the amount of $625,551, plus prejudgment interest at a rate of 4%, from November 12, 2010 through the date of entry of judgment in the amount of $259,543.68 for a total sum of $885,094.68.  The judgment is now final and non-appealable.  *See* No. 20-cv-03140, ECF No. 47.

### (f)      **JABA Associates LP Action**

124.    On May 15, 2020, counsel for Defendants Audrey M. Goodman, Goodman Charitable Foundation, in its capacity as a limited partner of JABA Associates LP, Audrey Goodman, in her capacity as a general and limited partner of JABA Associates LP, Bruce Goodman, in his capacity as a general Partner of JABA Associates LP, Andrew Goodman, in his capacity as a general partner of JABA Associates LP, JABA Associates LP, and The Estate of James Goodman moved for permissive withdrawal of the reference. *See* No. 20-cv-03836, ECF No. 1.

125.    On May 27, 2020, the Trustee filed a letter with the court consenting to the withdrawal of the reference and proposing a briefing schedule for summary judgment, which

Defendants' counsel agreed to, and the Court so ordered on June 4, 2020. *See* No. 20-cv-03836, ECF Nos. 3-5.

126.    The Trustee's motion for summary judgment was filed on July 14, 2020. *See* No. 20-cv-02872, ECF Nos. 11-17. Defendant's opposition to the Trustee's motion and cross-motion for summary judgment was filed on August 18, 2020. *See id.*, ECF No. 20-24. The Trustee's reply on his motion and opposition on the cross-motion was filed on September 8, 2020. *See id.*, ECF No. 31-33. Defendant's reply on the cross-motion was filed on September 15, 2020. *See id.*, ECF No. 34.

127.    On March 24, 2021, District Judge John G. Koeltl granted summary judgment in favor of the Trustee to recover avoidable transfers in the amount of $2,925,000, plus prejudgment interest at a rate of 4%, from November 12, 2010 through the date of entry of judgment in the amount of $1,213,273.97 for a total sum of $4,138,273.97. *See* No. 20-cv-0386, 2021 WL 1112342 (S.D.N.Y. Mar. 24, 2021, ECF Nos. 41-42.

128.    On April 6, 2021, Defendants filed their Notice of Appeal of the District Court's judgment against them. *See* No. 20-cv-0386, ECF No. 43.

129.    In furtherance of enforcing the Judgment, the Trustee received the transcript of the Judgment from the District Court, which was docketed with the New York County Clerk's Office on May 20, 2021, to place liens on real property held by Defendants within the state.

130.    On July 30, 2021, Defendants filed their appellant brief before the Second Circuit. Case No. 21-872, ECF No. 62. The Trustee's appellee brief was filed on October 22, 2021. Case No. 21-872, ECF No. 75.

**(g)    <u>Stanley T. Miller Action</u>**

131.    On April 14, 2021, the Trustee filed his motion for summary judgment. *See* No. 10-04921, ECF Nos. 92-99. On May 12, 2021, Defendant filed his memorandum of law in

opposition to the Trustee's motion for summary judgment and in support of his cross-motion for summary judgment dismissing the case in its entirely. *See id.*, ECF Nos. 104-07. On May 26, 2021, the Trustee filed his brief in reply to Defendant's cross-motion and Defendant's opposition to his motion for summary judgment. *See id.*, ECF Nos. 108-09. Defendant filed his reply brief in support of his cross-motion on June 16, 2021. *See id.*, ECF No. 112. On June 16, 2021, oral arguments were held before Judge Morris in the Bankruptcy Court. *See id.*, ECF No. 122.

132.    On July 2, 2021, Judge Morris granted summary judgment in favor of the Trustee to recover avoidable transfers in the amount of $669,793, plus prejudgment interest at a rate of 4%, from December 2, 2010 through July 13, 2021 in the amount of $284,333.51 for a total sum of $954,126.50. *See* No. 10-04921, 2021 WL 2787604 (CGM) (Bankr. S.D.N.Y. July 2, 2021), ECF Nos. 121-22.

### (h)    Gerald and Barbara Keller Family Trust Action

133.    On July 22, 2021, the Trustee filed his motion for summary judgment. *See* No. 10-04539, ECF Nos. 99-105. On August 17, 2021, Defendants filed their memorandum of law in opposition to the Trustee's motion for summary judgment and in support of their cross-motion for summary judgment dismissing the case in its entirely. *See id.*, ECF Nos. 110-15. On September 1, 2021, the Trustee filed his brief in reply to Defendants' cross-motion and Defendants' opposition to his motion for summary judgment. *See id.*, ECF Nos. 119-21. Defendants filed their reply brief in support of their cross-motion on September 13, 2021. *See id.*, ECF Nos. 124-26. On September 15, 2021, oral arguments were held before Judge Morris in the Bankruptcy Court.

134.    On September 30, 2021, Judge Morris granted summary judgment in favor of the Trustee to recover avoidable transfers in the amount of $1,896,148, plus prejudgment interest at a

rate of 4%, from December 1, 2010 through the date of the entry of judgment in this case. *See* No. 10-04539, 2021 WL 4476811 (CGM) (Bankr. S.D.N.Y. Sept. 30, 2021), ECF No. 136.

135.  On October 13, 2021, the Defendants filed a Notice of Appeal to the District Court. *See* No. 10-04539, ECF No. 140.

## C.  **Bad Faith Actions**

136.  The Trustee has one bad faith action still pending as of the end of the Report Period, as set forth on the attached Exhibit C.

### i.  **Picard v. Avellino & Bienes**

137.  On December 10, 2010, the Trustee commenced an avoidance action against Avellino & Bienes, Frank J. Avellino, Michael S. Bienes, Nancy C. Avellino, Dianne K. Bienes, Thomas G. Avellino, and numerous other trusts and entities (collectively, the "A&B Defendants") seeking the return of over $904 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the A&B Defendants. *Picard v. Frank J. Avellino*, Adv. No. 10-05421 (CGM) (Bankr. S.D.N.Y.) (the "A&B Action").

138.  During the Report Period, the Trustee focused on developing his affirmative partial summary judgment motion relating to the two-year transfers and preparing for defendants' anticipated motion, which included drafting the Trustee's memorandum of law in support of his motion for summary judgment and the Trustee's Rule 56.1 statement of material facts, as well as analyzing testimony of defendants and third parties (including former BLMIS employees and experts) and reviewing and identifying key documents and testimony.

139.  The Trustee also performed overall case management and prepared for trial.

## D.    Appeals Relating to BLMIS Feeder Funds and Subsequent Transferees

### i.    Extraterritoriality

140.    On July 6, 2014, the District Court held that certain of the Trustee's claims were barred by the presumption against extraterritoriality, stating that "section 550(a) does not apply extraterritorially to allow for the recovery of subsequent transfers received abroad by a foreign transferee from a foreign transferor," and directing further proceedings related thereto to be returned to the Bankruptcy Court. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222 (S.D.N.Y. 2014) (the "District Court ET Decision").

141.    On November 22, 2016, this Court issued a decision granting in part and denying in part Defendants' motion to dismiss on extraterritoriality (the "Bankruptcy Court ET Decision"). *Sec. Inv'r Prot. Corp v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (ECF No. 14495).

142.    On February 25, 2019, the Second Circuit reversed the rulings of the District Court and Bankruptcy Court. The Second Circuit held that neither the presumption against exterritoriality nor international comity limits the reach of section 550(a)(2) of the Bankruptcy Code, enabling the Trustee to recover property from certain subsequent transferees. Accordingly, the Second Circuit vacated the judgments of the Bankruptcy Court. *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, No. 17-2992 (L), 2019 WL 903978 (2d Cir. Feb. 25, 2019). Upon Defendants' motion, the Second Circuit then stayed the issuance of the mandate. *Id.*, (ECF No. 1503).

143.    On August 29, 2019, Defendants filed a petition for a writ of certiorari in the Supreme Court of the United States. *HSBC Holdings PLC v. Irving H. Picard*, No. 19-277.

144.    On September 30, 2019, amicus briefs in support of Defendants were filed by the Cayman Islands and the British Virgin Islands; certain British Virgin Islands restructuring

professionals; Cayman Finance and Recovery and Insolvency Specialists Association of the

Cayman Island; Recovery and Insolvency Specialists Association of Bermuda; and the Securities

Industry and Financial Markets Association, the Institute of International Bankers, and the U.S.

Chamber of Commerce.

145.    On October 30, 2019, the Trustee and SIPC filed separate briefs in opposition to

Defendants' petition, and on November 12, 2019, Defendants filed a brief in reply.

146.    On December 9, 2019, the Supreme Court invited the Solicitor General to file a

brief expressing the views of the United States, and on April 10, 2020, the Solicitor General filed

a brief recommending that the Supreme Court deny the petition.

147.    The petition was distributed on April 28, 2020 for consideration at the Court's

May 14, 2020 conference. On June 1, 2020, the Supreme Court denied Defendants' petition.

**ii.     Good Faith Appeal**

  **(a)     Procedural Background on Good Faith Defense Under Sections 548(c)
            and 550**

148.    When the Trustee brought his intentional fraudulent transfer claims under section

548(a)(1)(A), he met his pleading burden under governing case law by alleging that BLMIS was

a Ponzi scheme and that the defendants received transfers from BLMIS. *See Picard v. Merkin (In

re Bernard L. Madoff Inv. Sec. LLC),* 440 B.R. 243, 255–56 (Bankr. S.D.N.Y. 2010) (citing

*Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 8 (S.D.N.Y.

2007)); *see also Bayou Superfund, LLC v. WAM Long/Short Fund II L.P., (In re Bayou Grp.,

LLC)*, 362 B.R. 624, 639 (Bankr. S.D.N.Y. 2007). The burden then shifted to defendants to prove

their affirmative defense, as set forth in section 548(c), that they received the transfers for value

and in good faith. *See Merkin*, 440 B.R. at 256 (citing *Gredd v. Bear, Stearns Sec. Corp. (In re

Manhattan Inv. Fund Ltd.)*, 310 B.R. 500, 508 (Bankr. S.D.N.Y. 2002)).

149.    From 2009 through 2011, bad faith defendants brought motions to dismiss the Trustee's complaints under Federal Rule of Civil Procedure 12(b)(6), claiming, *inter alia*, that the Trustee had not adequately pled a lack of good faith on the part of the defendant. *See, e.g., Merkin*, 440 B.R. at 255–56; *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317, 331 (Bankr. S.D.N.Y. 2011); *Picard v. Estate of Chais (In re Bernard L. Madoff Inv. Sec. LLC)*, 445 B.R. 206, 220–21 (Bankr. S.D.N.Y. 2011).

150.    As to this argument, the Bankruptcy Court (Lifland, J.) denied the motions. *See Merkin*, 440 B.R. at 273; *Cohmad*, 454 B.R. at 342; *Chais*, 445 B.R. at 221. The Bankruptcy Court found that "a trustee need not dispute a transferee's good faith defense upon the face of the Complaint. Rather, the transferee bears the burden of establishing its good faith under section 548(c) of the Code as an *affirmative defense* that 'may be raised and proved by the transferee at trial.'" *Merkin*, 440 B.R. at 256 (citation omitted) (quoting *Bayou Superfund*, 362 B.R. at 639); *see also Cohmad*, 454 B.R. at 331; *Chais*, 445 B.R. at 220–21. Accordingly, the Bankruptcy Court found defendants' arguments regarding section 548(c) of the Code irrelevant to the Trustee's pleading burden.

151.    Beginning in 2011, hundreds of defendants moved the District Court to withdraw its reference to the Bankruptcy Court.[4] The District Court withdrew the reference on numerous issues, including whether SIPA or the securities laws alter the standards for determining good faith under either §§ 548(c) or 550(b) of the Bankruptcy Code. *See* Order, No. 12 MC 0115 (JSR) (S.D.N.Y. June 23, 2012), ECF No. 197.

152.    With regard to the pleading burden, although good faith is an element of the affirmative defense to actions under sections 548 and 550, the District Court held that, in SIPA cases, a SIPA trustee must *plead* the absence of good faith, with particularized allegations, as

---

[4] *See* Common Briefing discussion *supra* Section (VI)(A) and Trustee's Twentieth Interim Report, ECF No. 18146.

part of his *prima facie* case to avoid and recover transfers under the Bankruptcy Code (the "Good Faith Decision"). *SIPC v. BLMIS*, 516 B.R. 18, 23–24 (S.D.N.Y. 2014). The Court reasoned that the usual rule that a defendant bears the burden of pleading an affirmative defense "would totally undercut SIPA's twin goals of maintaining marketplace stability and encouraging investor confidence." *Id*. at 24.

153.    With regard to the standard used to evaluate a transferee's lack of good faith, the District Court discarded the objective "inquiry notice" standard that governed the good faith affirmative defense for over a century. In its place, the District Court held that for purposes of SIPA recovery actions, "'good faith' means that the transferee neither had actual knowledge of the . . . fraud nor willfully blinded himself to circumstances indicating a high probability of such fraud." *Id*. at 23. The District Court reasoned that because a securities investor has no inherent duty to inquire about his stockbroker, the inquiry notice standard that usually applied to avoidance actions was "unfair and unworkable." *Id*. at 22. The District Court then returned the withdrawn actions to the Bankruptcy Court for further proceedings consistent with its ruling. *Id*. at 24.

154.    The Trustee moved for certification of an interlocutory appeal, and numerous defendants opposed. *SIPC v. BLMIS (In re Madoff Sec.)*, No. 12-mc-00115, ECF Nos. 544, 550 (S.D.N.Y. June 23 & July 2, 2014). The District Court denied certification, holding that the Second Circuit should review the Good Faith Decision only after the Bankruptcy Court determined, in individual cases, whether the Trustee sufficiently pleaded a given defendant's willful blindness. *SIPC v. BLMIS*, 516 B.R. at 25–26 (S.D.N.Y. July 21, 2014).

155.    Two months later, the District Court issued the District Court ET Decision, concluding that because section 550(b) does not apply extraterritorially, the Trustee must plead

certain facts to establish that the subsequent transfers he seeks to recover are "domestic" transfers.[5] *SIPC v. BLMIS (In re Madoff)*, 513 B.R. 222, 232 n.4 (S.D.N.Y. 2014). Alternatively, the District Court held that recovery of subsequent transfers received from an entity in foreign liquidation proceedings would violate principles of international comity. *Id.* at 231–32. Following these decisions, the District Court returned the cases to this Court. Order Entered July 10, 2014, *In re Madoff Sec.*, No. 12-mc-115 (JSR) (S.D.N.Y.), ECF No. 552.

156.    In view of the altered pleading standards, the Trustee filed an Omnibus Motion for Leave to Replead Pursuant to Federal Rule Civil Procedure 15(a) and Court Order Authorizing Limited Discovery Pursuant to Federal Rule of Civil Procedure 26(d)(1) (the "Omnibus Motion") in August 2014. Mem. of Law on Omnibus Mot., *SIPC v. BLMIS*, Adv. Pro. No. 08-01789 (CGM), ECF No. 7827. In this motion, the Trustee sought leave to file amended complaints with allegations sufficient to meet the new standards articulated by the District Court and leave to take limited discovery.

157.    In September 2014, at a status conference on the Omnibus Motion, defense counsel argued that pending motions to dismiss based on extraterritoriality should be addressed prior to the Trustee's request for discovery. Hr'g Tr. of Sept. 17, 2014 at 16:14–17, Adv. Pro. No. 08-01789 (CGM) (Bankr. S.D.N.Y. Nov. 11, 2014), ECF No. 8636. In December 2014, this Court agreed, and stayed proceedings on the Omnibus Motion until after the extraterritoriality proceedings concluded. *See* Order at ¶ 14, Adv. Pro. No. 08-01789 (CGM) (Bankr. S.D.N.Y.), ECF No. 8800 (the "December 10 Scheduling Order") (staying proceedings on the Trustee's

---

[5] *See* discussion *supra* Section (VI)(D)(i).

request for discovery and to replead based on good faith until after the Court ruled on the Defendants' motion to dismiss based on extraterritoriality).[6]

158.    In November 2016, this Court issued its ruling on extraterritoriality.[7] *See SIPC v. BLMIS (In re Madoff)*, Adv. Pro. No. 08-01789 (CGM), 2016 WL 6900689, at *36 (Bankr. S.D.N.Y. Nov. 22, 2016). The Bankruptcy Court ET Decision resulted in partial dismissals of the Trustee's claims in approximately 20 actions and a complete dismissal of approximately 70 actions. The Trustee appealed that ruling to the Second Circuit, which reversed the decisions of the District Court and Bankruptcy Court. *In re Picard*, 917 F.3d 85 (2d Cir. 2019). In June 2020, the Supreme Court denied *certiorari*. *HSBC Holdings PLC v. Picard*, 140 S. Ct. 2824 (2020). *See* discussion *supra* Section (VI)(D)(i).

159.    While the Trustee's appeal on extraterritoriality was pending before the Second Circuit, in July 2017, this Court ordered proceedings "solely on the Good Faith Limited Discovery Issue" of the Omnibus Motion for those actions that remained pending. Order at ¶¶ 1, 4, Adv. Pro. No. 08-1789 (CGM) (Bankr. S.D.N.Y. July 24, 2017), (ECF No. 16428). That order deferred proceedings on the issue of leave to replead concerning the Good Faith Issue in the Omnibus Motion until after the Court's disposition on the Trustee's request for limited discovery. In June 2018, the Court denied the Trustee's request for limited discovery concerning good faith. *SIPC v. BLMIS*, 2018 WL 2734825 (Bankr. S.D.N.Y. June 5, 2018).

160.    Thereafter, the Trustee moved for leave to amend his complaints to comport with the new standard articulated in the Good Faith Decision without any additional discovery on that issue. Judge Bernstein denied leave to amend in three separate cases against *Citibank, Fortis,* and

---

[6] The December 10 Scheduling Order was subsequently modified three times. *See* 08-1789, ECF Nos. 8990, 9350, 9720. None of the subsequent orders modified the original paragraph 14 of the December 10 Order concerning discovery and repleading as to good faith. *See also* Hr'g Tr. of Sept. 17, 2014 at 27:17–25, 08-1789 (Nov. 11, 2014), ECF No. 8636.

[7] *See* discussion *supra* Section (VI)(D)(i).

*RBS*, finding that the Trustee did not plead sufficient facts to meet the willful blindness standard. *See Picard v. Citibank, N.A.*, 608 B.R. 181 (Bankr. S.D.N.Y. 2019); *Picard v. ABN Amro Bank (Ireland) Ltd (f/k/a Fortis Prime Fund Solutions Bank (Ireland) Limited)*, Adv. Pro. No. 10-05355 (SMB), 2020 WL 401822 (Bankr. S.D.N.Y. Jan. 23, 2020); *Picard v. ABN AMRO Bank N.A.*, Adv. Pro. No. 10-05354 (SMB), 2020 WL 1584491 (Bankr. S.D.N.Y. March 31, 2020). Because the *Citibank* decision was the first to result in a final judgment, the Trustee was finally able to appeal Judge Rakoff's 2014 ruling on good faith to the Second Circuit.

161.    Proceeding on a slightly different track was the Trustee's case against Legacy Capital and Khronos.[8] Following the return of the cases from Judge Rakoff in 2014, the Trustee filed an amended complaint in the Bankruptcy Court and defendants Legacy and Khronos moved to dismiss, arguing that the Trustee had not adequately alleged willful blindness on the face of his complaint. The Bankruptcy Court agreed, dismissing those counts of the Trustee's complaint for which lack of good faith was an element of the affirmative defense under section 548(c) for initial transferee Legacy and under section 550(b) for subsequent transferee Khronos. *Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, 548 B.R. 13 (Bankr. S.D.N.Y. 2016). The Court did not dismiss counts relating to transfers of fictitious profits to defendants. *See Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, 548 B.R. 13, 35 (Bankr. S.D.N.Y. 2016). After the parties engaged in discovery, in December 2018, the Trustee moved for summary judgment,[9] which was granted in part.[10] Thereafter, the parties stipulated to

---

[8] While the issues against Legacy Capital and Khronos were on appeal, the Trustee continued to litigate against other subsequent transferees in the *Legacy Capital* action, which is discussed in Section (VI)(E)(v) below.
[9] *Picard v. Legacy Capital Ltd*., Adv. Pro. No. 10-5286, ECF No. 192.
[10] *Picard v. Legacy Capital Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, 603 B.R. 682 (Bankr. S.D.N.Y. 2019).

judgment concerning the transfers of fictious profits, and a final judgment was entered on November 12, 2019.[11] *See* discussion *infra* Section (VI)(E)(v).

162.    With two final judgments in hand, the Trustee sought and obtained direct appeals to the Second Circuit on the issues of the good faith defense presented by the *Citibank* and *Legacy* cases. The appeals presented two common issues:

- Whether the District and Bankruptcy Courts erred by holding that transferees on inquiry notice of a broker-dealer's fraud nevertheless are protected by the statutory "good faith" defense so long as they do not willfully blind themselves to the fraud.

- Whether the District and Bankruptcy Courts erred by holding that SIPA shifts the burden of pleading a transferee's affirmative defense of good faith to the plaintiff-trustee.

*See* Appellant Brief at 2, *Picard v. Citibank, N.A.*, No. 20-1333 (2d Cir. Aug. 6, 2020), ECF No. 78; Appellant Brief at 2, *Picard v. Legacy Capital Ltd.*, No. 20-1334 (2d Cir. Aug. 6, 2020), ECF No. 73.

163.    Each appeal also presented the issue of whether, if the District Court did not err with respect to the standard for good faith or the pleading burden, whether the Bankruptcy Court therefore erred by either denying the Trustee leave to amend his complaint (*Citibank*) or dismissing certain claims in the Trustee's amended complaint (*Legacy*) where the Trustee had plausibly pleaded defendants' willful blindness to fraud at BLMIS. *Id.* The Second Circuit heard the appeals in tandem on March 12, 2021 before Circuit Judges Wesley, Sullivan, and Menashi.

164.    On August 30, 2021, the Second Circuit issued a decision, holding that in a SIPA liquidation the good faith defense provided in 11 U.S.C. §§ 548(c) and 550(b) is governed by an inquiry notice standard and that a SIPA trustee does not bear the burden of pleading a transferee's lack of good faith. *See Picard v. Citibank (In re Bernard L. Madoff Inv. Sec. LLC),*

---

[11] *Picard v. Legacy Capital Ltd.*, Adv. Pro. No. 10-5286, ECF No. 231.

12 F.4th 171 (2d. Cir. 2021)) (the "Decision"). The Decision vacated Judge Rakoff's 2014 consolidated good faith decision holding that in a SIPA liquidation good faith is governed by a willful blindness standard and that a SIPA trustee bears the burden of pleading the transferee's lack of good faith.[12] The Decision also vacated Judge Bernstein's decisions in the Trustee's actions against Citibank, N.A. and Legacy Capital applying Judge Rakoff's good faith decision. *See Picard v. Citibank, N.A.*, 601 B.R. 181 (S.D.N.Y. 2019); *Picard v. Legacy Capital Ltd.,* 548 B.R. 13 (S.D.N.Y. 2016).

165.    On October 13, 2021, the Second Circuit issued the mandate, vacating the judgment of the District Court. *Picard v. Citibank, N.A.*, 20-1333 (2d Cir. 2020), ECF No. 197; *Picard v. Legacy Capital Ltd.*, 20-1334 (2d Cir. 2020), ECF No. 187.

**E.    BLMIS Feeder Fund Actions**

166.    There are nine active feeder fund cases, as set forth on the attached Exhibit C. A few of those with activity during the Report Period are discussed herein.

**i.    Picard v. Fairfield Greenwich**

167.    On May 18, 2009, the Trustee commenced an action against Fairfield Sentry Ltd. ("Sentry"), Fairfield Sigma Ltd. ("Sigma), Fairfield Lambda Ltd. ("Lambda") (collectively, the "Fairfield Funds"), Greenwich Sentry, L.P. ("Greenwich Sentry"), Greenwich Sentry Partners, L.P. ("Greenwich Sentry Partners", and together with Greenwich Sentry, the "Greenwich Funds"), and other defendants seeking the return of approximately $3.5 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Fairfield Funds and the Greenwich Funds. *Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv. No. 09-01239 (CGM) (Bankr. S.D.N.Y. May 18,

---

[12] *See SIPC v. BLMIS*, 516 B.R. 18 (S.D.N.Y. 2014).

2009). On July 20, 2010, the Trustee filed an Amended Complaint in the action adding as defendants individuals and entities associated with Fairfield Greenwich Group, a de facto New York partnership, that formed, managed, and marketed Sentry, Sigma, Lambda, Greenwich Sentry, and Greenwich Sentry Partners.

168.    On June 7, 2011, this Court conditionally approved a settlement agreement between the Trustee and the Joint Liquidators for the Fairfield Funds (the "Joint Liquidators"). (ECF No. 95). On June 24, 2011, the Eastern Caribbean Supreme Court in the High Court of Justice of the Virgin Islands approved the settlement agreement between the Trustee and the Joint Liquidators. On July 13, 2011, this Court entered consent judgments between the Trustee and Lambda in the amount of $52.9 million (ECF No. 108), Sentry in the amount of $3.054 billion (ECF No. 109), and Sigma in the amount of $752.3 million (ECF No. 110).

169.    As part of the Fairfield Funds settlement, Sentry agreed to permanently reduce its net equity claim from approximately $960 million to $230 million. Additionally, the Joint Liquidators agreed to make a $70 million payment to the Customer Fund. The Joint Liquidators also agreed to assign to the Trustee all of the Fairfield Funds' claims against the Fairfield Greenwich Group management companies, officers, and partners, and the Trustee retained his own claims against the management defendants. Further, the Trustee and the Joint Liquidators agreed to share future recoveries in varying amounts, depending on the nature of the claims.

170.    On July 7, 2011, this Court approved a settlement between the Trustee and the Greenwich Funds, wherein this Court entered judgment against Greenwich Sentry in an amount over $206 million and against Greenwich Sentry Partners in an amount over $5.9 million. (ECF No. 107). In the settlement, the Greenwich Funds agreed to permanently reduce their net equity claim from approximately $143 million to approximately $37 million, for a combined reduction

of over \$105.9 million. Additionally, the Greenwich Funds assigned to the Trustee all of their claims against Fairfield Greenwich Group management and agreed to share with the Trustee any recoveries they receive against service providers.

171.    On April 2, 2012, the remaining defendants in the Fairfield Sentry action filed motions to withdraw the reference on a number of issues that later became subject to Common Briefing and hearings before Judge Rakoff of the District Court. The Trustee briefed and presented argument at the hearings on these issues before the District Court. The District Court has issued its opinions providing guidance to this Court and remanded the cases for further findings applying the standards set forth in the District Court's opinions. *See* discussion *supra* Section (VI)(A) and Trustee's Twentieth Interim Report, ECF No. 18146.

172.    On June 6, 2012, the Trustee filed additional recovery actions against entities or persons related to Fairfield Greenwich Group employees or partners entitled *Picard v. RD Trust*, Adv. No. 12-01701 (CGM) (Bankr. S.D.N.Y.), *Picard v. Barrenche Inc.*, Adv. No. 12-01702 (BRL) (Bankr. S.D.N.Y.), and *Picard v. Alix Toub*, Adv. No. 12-01703 (CGM) (Bankr. S.D.N.Y.). The parties in the *Toub* action have entered into a stipulated stay as permitted by this Court. None of the defendants in the three actions have responded yet to the Trustee's complaints.

173.    On November 22, 2016, this Court issued its decision on the extraterritoriality motion to dismiss. *See* discussion *supra* Section (VI)(D)(i). Under the decision, some of the claims against the moving defendants in the *Fairfield, Barrenche, and RD Trust* actions were dismissed. Following the extraterritoriality decision, the Trustee and defendants agreed to the joinder of certain non-moving defendants to the extraterritoriality motion to dismiss. The parties agreed to consent to the entry of final judgments on the Court's extraterritoriality decision.

Finally, the parties consented to direct appeal of the extraterritoriality decision to the Second Circuit.

174.    On March 16, 2017, the Trustee filed his notice of appeal in the *Fairfield, Barrenche, and RD Trust* actions. (ECF Nos. 229, 97, 93). On September 27, 2017, the Second Circuit issued an order granting the parties' request for certification for direct appeal of the appeal of the extraterritoriality decision. *Picard v. Banque Lombard Ordier & Cie SA.*, No. 17-1294 (2d Cir.), (ECF No. 388). On February 25, 2019, the Second Circuit vacated the judgment of the Bankruptcy Court and remanded the cases. *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, No. 17-2992 (L), 2019 WL 903978 (2d Cir. Feb. 25, 2019). After denying Defendants' petition for rehearing and rehearing en banc, on April 23, 2019, the Second Circuit granted Defendants' motion for a stay of the issuance of the mandate pending Defendants' filing of a petition for a writ of certiorari.

175.    On January 24, 2019, in the action filed by the Joint Liquidators against the Fairfield management entities and individuals, *In re Fairfield Sentry Limited, et al.*, Adv. No. 10-13164 (CGM), the parties entered a stipulation substituting the Trustee as the plaintiff. (ECF No. 87). On February 22, 2019, the Trustee filed a motion to amend the complaint with an attached proffered Amended Complaint. (ECF No. 90).

176.    On March 25, 2019, this Court approved a settlement between the Trustee and certain Fairfield management defendants, Lourdes Barrenche, Robert Blum, Cornelius Boele, Gregory Bowes, Howard Griesman, Jacqueline Harary, Richard Landsberger, Daniel Lipton, Mark McKeefry, Gordon McKenzie, Santiago Reyes, Andrew Smith, Barrenche, Inc., Dove Hill Trust, Fortuna Asset Management, Selecta Financial Corporation. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789, Order (S.D.N.Y., March 25, 2019). (ECF No.

270). The Trustee's claims against the remaining Fairfield management defendants remain pending.

177. On June 19, 2019, this Court entered a stipulated order consolidating the *Fairfield, Barreneche, and RD Trust* actions. (ECF No. 274).

178. On September 25, 2019, this Court held a hearing with the Trustee and the remaining defendants in the consolidated actions regarding a future case schedule. At the hearing, the Trustee and the remaining defendants informed this Court they had agreed to enter mediation with Richard Davis as the mediator. The Court ordered the parties to report on the progress of the mediation at a hearing to be held on November 26, 2019 and further ordered all matters held in abeyance until December 31, 2019. (ECF No. 275).

179. On November 18, 2019, this Court entered the Second Order Concerning Mediation in which Richard Davis was appointed to serve as mediator in the action and with all deadlines held in abeyance until March 3, 2020. (ECF No. 276).

180. On November 25, 2019, the pretrial conference scheduled for November 26, 2019 was adjourned until April 29, 2020. (ECF No. 277).

181. On February 19, 2020, this Court entered the Third Order Concerning Mediation whereby the parties are to report on the status of the mediation by May 19, 2020, a status conference is scheduled for May 27, 2020, and all deadlines are held in abeyance until June 30, 2020. (ECF No.279).

182. On May 19, 2020, the Court entered the Fourth Order on Mediation in which the Court ordered the parties to report on the progress of the mediation in writing by August 19, 2020 and further ordered all matters held in abeyance until July 31, 2020. (ECF No. 282).

183. On August 20, 2020, the Court entered the Fifth Order on Mediation in which the Court lifted the stay in actions consolidated under *Picard v. Fairfield Investment Fund Ltd., et al.,* Adv. No. 09-01239. (ECF No. 285). The Court further ordered the Defendants to file their Reply Brief in Support of their Motion to Dismiss in *Picard v. Fairfield Greenwich Group* Adv. No. 10-03800 on or before October 2, 2020. The Court also ordered the Trustee to file an Amended Complaint on or before August 31, 2020 with the parties to provide a proposed briefing schedule in response to the Amended Complaint on or before October 15, 2020.

184. On August 28, 2020, the Trustee filed a Second Amended Complaint in *Picard v. Fairfield Investment Fund Ltd., et al.,* Adv No.09-01239. (ECF No. 286).

185. On October 2, 2020, the Defendants filed their Reply Brief in Support of their Motion to Dismiss in *Picard v. Fairfield Greenwich Group*, Adv. No. 10-03800 (ECF No. 129) with a letter regarding foreign authorities. (ECF No. 130). On October 20, 2020, this adversary proceeding was reassigned to Chief Judge Cecelia G. Morris. (ECF No. 138). On November 18, 2020, Chief Judge Morris held a joint conference with the parties in *Picard v. Fairfield Investment Fund Ltd., et al.* and *Picard v. Fairfield Greenwich Group.* On November 18, 2020, the Court entered a stipulated order providing for supplemental briefing in response to the Defendants' Motion to Dismiss in *Picard v. Fairfield Greenwich Group*, Adv. No. 10-03800, whereby the Trustee was to file his Supplemental Memorandum in Opposition to the Motion to Dismiss by November 25, 2020 and the Defendants were to file their Supplemental Memorandum in Support of the Motion to Dismiss by December 11, 2020. (ECF No. 137).

186. On November 25, 2020, in *Picard v. Fairfield Green Group,* Adv. No. 10-03800*,* the Trustee filed a Supplemental Memorandum in Opposition to the Motion to Dismiss. (ECf No. 141). On December 11, 2020, the *Picard v. Fairfield Greenwich Group* parties submitted a letter

to the Court regarding the parties' position on conflicts of law concerning the Defendants' Motion to Dismiss. (ECF No. 145). On December 11, 2020, the Defendants filed their Supplemental Memorandum in Support of the Motion to Dismiss in *Picard v. Fairfield Greenwich Group,* Adv. No. 10-03800. (ECF No. 146). On December 18, 2020, the parties submitted a letter to the Court regarding the choice of law issues involved in the Motion to Dismiss in *Picard v. Fairfield Greenwich Group,* Adv. No. 10-03800). (ECF No. 149). On January 13, 2021, the Court held a hearing on Defendants' Motion to Dismiss in *Picard v. Fairfield Greenwich Group,* Adv. No. 10-03800.

187.  On March 25, 2021, the Court issued its Memorandum Decision Granting in Part and Denying in Part Defendants' Motion to Dismiss. (ECF No. 161). On April 8, 2021, the Court issued its order Granting in Part and Denying in Part Defendants' Motion to Dismiss. (ECF No. 162). Under the Court's order, the Defendants' Motion to Dismiss count one for breach of contract against defendant Fairfield Greenwich Limited, counts two and three for breach of contract against defendant Fairfield Greenwich Bermuda, and count five for constructive trust against all defendants, were denied. Under the Court's order, Defendants Fairfield Greenwich Limited and Fairfield Greenwich Bermuda's Motion to Dismiss count four for unjust enrichment was granted and was denied for all other defendants. The Court further ordered that the Trustee could proceed with discovery as against defendant Andres Piedrahita to determine the issue of general personal jurisdiction. (ECF No. 162).

188.  *Picard v. Fairfield Investment Fund Limited,* Adv. No. 09-1239, was reassigned to Chief Judge Cecelia G. Morris on October 20, 2020. (ECF No. 288). On October 21, 2020, a scheduling order was entered in the *Picard v. Fairfield Investment Fund Limited* adversary proceeding whereby Defendants were to file a Motion to Dismiss in response to the Second

Amended Complaint by January 15, 2021, the Trustee was to file his Opposition to the Motion to Dismiss by April 15, 2021, and the Defendants were to file their Reply in Support of the Motion to Dismiss by May 31, 2021. (ECF No. 289). On November 18, 2020, the Court held a conference with the parties in the *Picard v. Fairfield Investment Fund Limited* matter in conjunction with the parties in the *Picard v. Fairfield Greenwich Group* matter.

189.  On January 15, 2021, the Defendants filed a Motion to Dismiss in *Picard v. Fairfield Investment Fund Limited,* Adv. No. 09-1239. (ECF No. 305). On April 15, 2021, the Trustee filed his Opposition to the Defendants' Motion to Dismiss in *Picard v. Fairfield Investment Fund Limited,* Adv. No. 09-1239. (ECF No. 311). On May 29, 2021, the Defendants filed their Reply in Support of Motion to Dismiss in *Picard v. Fairfield Investment Fund Limited,* Adv. No. 09-1239. (ECF No. 313). On June 16, 2021, the Court held a hearing on the Defendants' Motion to Dismiss the Trustee's Second Amended Complaint in *Picard v. Fairfield Investment Fund Limited,* Adv. No. 09-1239. (ECF No. 325).

190.  On August 6, 2021, the Court issued its Memorandum Decision Denying the Defendants' Motion to Dismiss in *Picard v. Fairfield Investment Fund Limited,* Adv. No. 09-1239, except for the claims against defendant Corina Noel Piedrahita in her personal capacity. (ECF No. 336). On September 14, 2021, the Court issued its Order Denying the Defendants' Motion to Dismiss in *Picard v. Fairfield Investment Fund Limited,* Adv. No. 09-1239. (ECF No. 339). On September 30, 2021, the Defendants filed separate Answers to the Trustee's Second Amended Complaint in *Picard v. Fairfield Investment Fund Limited,* Adv. No. 09-1239. (ECF Nos. 342, 343, 344, 345, 346, 347). The parties in *Picard v. Fairfield Investment Fund Limited,* Adv. No. 09-1239 have begun the discovery process.

ii.     **The HSBC Action**

191.    On July 15, 2009, the Trustee commenced an adversary proceeding against a handful of HSBC entities and international feeder funds in the financial services industry that transferred funds to and from BLMIS. *Picard v. HSBC Bank plc*, Adv. No. 09-01364 (BRL) (Bankr. S.D.N.Y.) (the "HSBC Action"). After further investigation, the Trustee filed an amended complaint on December 5, 2010, expanding the pool of defendants to thirteen HSBC entities and forty-eight individuals and entities, and alleging that over 33% of all monies invested in Madoff's Ponzi scheme were funneled by and through these defendants into BLMIS. (ECF No. 35).

192.    On December 17, 2014, the Trustee, with the Court's approval, settled his claims against Herald Fund SpC, Herald (Lux) SICAV, Primeo Fund and Senator Fund, which resulted in over $600 million in consideration to the Estate. (ECF Nos. 338, 339, 349, 350, 352, 363).

193.    On July 24, 2017, the Trustee, with the Court's approval, settled his claims against Lagoon Investment Limited and Hermes International Fund Limited, which resulted in over $240 million in consideration to the Estate. (ECF No. 16430).

194.    On July 26, 2017, the Trustee, with the Court's approval, settled his claims against Thema Wise Investments Limited and Thema Fund Limited, which resulted in over $130 million in consideration to the Estate. (ECF No. 16431).

195.    On October 20, 2017, this Court approved a settlement between the Trustee and Thema International Fund plc. (ECF No. 482). Under the settlement, Thema International paid approximately $687 million to the BLMIS Customer Fund.

196.    On March 27, 2018, this Court approved a partial settlement between the Trustee and Alpha Prime Fund, Ltd., which resulted in over $76 million in consideration to the Estate. (ECF No. 497).

197.    On July 27, 2019, Alpha Prime moved for judgment on the pleadings. (ECF No. 545). On August 27, 2019, the Trustee opposed that motion and cross-moved to amend the complaint. (ECF No. 548). Oral argument was heard on September 19, 2019, and on September 23, 2019, the Court denied Alpha Prime's motion to dismiss and granted the Trustee's motion to amend. (ECF No. 566).

198.    On September 24, 2019, the Trustee filed his amended complaint against Alpha Prime. (ECF No. 567). Litigation is ongoing.

### iii.    The UBS Action

199.    On November 23, 2010, the Trustee commenced an adversary proceeding against UBS AG along with several of its affiliated entities, Access International Advisors LLC along with several of its affiliated entities and individuals, Groupement Financier Ltd., and Luxalpha SICAV (collectively, the "Luxalpha Defendants"). The proceeding seeks the return of approximately $1 billion under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Luxalpha Defendants, as well as other relief (the "Luxalpha Action"). *Picard v. UBS AG*, Adv. No. 10-04285 (CGM) (Bankr. S.D.N.Y. Oct. 22, 2012).

200.    On December 7, 2010, the Trustee commenced an adversary proceeding against UBS AG along with several of its affiliated entities, M&B Capital Advisors Sociedad de Valores S.A. along with several of its affiliated entities and individuals (the "M&B Defendants"), Reliance International Research LLC along with several of its affiliated entities and individuals, Landmark Investment Fund Ireland, and Luxembourg Investment Fund along with its affiliated funds (collectively, the "LIF Defendants"). The proceeding seeks the return of approximately $555 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and

other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of the LIF Defendants, as well as other relief (the "LIF Action"). *Picard v. UBS AG*, Adv. No. 10-05311 (CGM) (Bankr. S.D.N.Y. Oct. 22, 2012).

201.   On February 12, 2020, the Trustee filed a Motion for Order Issuing Letter Rogatory to AA Alternative Investment PLC on Behalf of Landmark Investment Fund Ireland in the LIF Action, which the Bankruptcy Court granted by Order dated February 25, 2020.

202.   On March 2, 2020, the Trustee filed a Motion for Leave to File a Second Amended Complaint in the Luxalpha Action. On April 3, 2020, Luxalpha filed its Memorandum Of Law In Opposition To Trustee's Motion For Leave To File A Second Amended Complaint And In Support Of Cross Motion For Claim Determination And Allowance. On May 4, 2020, the Trustee filed his Reply Memorandum of Law in Further Support of the Trustee's Motion for Leave to File a Second Amended Complaint and Opposition to Cross Motion for Claim Determination and Allowance. On May 18, 2020, Luxalpha filed its Reply Memorandum of Law in Support of its Cross-Motion for Claim Determination and Allowance.

203.   On June 18, 2020, the Bankruptcy Court held a telephonic conference with the Trustee and Luxalpha regarding the Trustee's Motion and Luxalpha's Cross-Motion, during which the Bankruptcy Court directed that hearings on the motions will be adjourned *sine die* pending issuance of orders from the United States Court of Appeals for the Second Circuit in the appeals of *Picard v. Citibank, N.A.*, Case No. 20-1333 and *Picard v. Legacy Capital Ltd*., Case No. 20-1334. On June 22, 2020, the Trustee and Luxalpha filed a joint notice adjourning the hearing on the motions accordingly.

204. The Trustee and Luxalpha Liquidators subsequently signed a stipulation agreeing to proceed with discovery and the appointment of a discovery arbitrator, which the court so-ordered on October 27, 2020, as amended by order dated November 24, 2020.

205. With respect to the LIF Action, in October 2020, B&H attorneys, on behalf of the Trustee, finalized settlement terms with Landmark Investment Fund Ireland, and on October 27, 2020 filed a Rule 9019 motion seeking approval of the settlement from the Bankruptcy Court. By order dated November 16, 2020, the Bankruptcy Court approved the motion, authorized the settlement agreement between the Trustee and Landmark Investment Fund Ireland, and ordered that the transfers from BLMIS to Landmark Investment Fund Ireland set forth in Exhibit C of the Complaint filed on December 7, 2010 [ECF No.1] are deemed avoided.

206. During the Report Period, on August 30, 2021, the Second Circuit vacated the Bankruptcy Court's dismissal of the Trustee's actions against Citibank, N.A. and Legacy Capital, holding that in a SIPA liquidation the good faith defense is governed by an inquiry notice standard and that a SIPA trustee need not plead a transferee's lack of good faith. *See Picard v. Citibank (In re Bernard L. Madoff Inv. Sec. LLC),* 12 F.4th 171 (2d. Cir. 2021). *See* discussion *supra* Section (VI)(D)(ii). The Second Circuit's decision governs the Trustee's actions against other defendants, including the Luxalpha Defendants and LIF Defendants.

207. B&H attorneys, on behalf of the Trustee, continued to analyze legal issues in the case and reviewed relevant documents in preparation for drafting amended complaints, which involved analysis of allegations under the pleading burden and good faith standard set forth in the Second Circuit's August 30, 2021 decision. B&H attorneys also engaged in efforts to obtain discovery from relevant parties and third parties, including document requests to Landmark Investment Fund and subpoenas directed to Access International Advisors LLC and UBS AG.

The team also reviewed documents UBS Luxembourg entities produced in response to discovery requests submitted through letters of request under the Hague Evidence Convention to the Luxembourg central authority.

### iv.    Picard v. Square One

208.    On November 29, 2010, the Trustee commenced an action against Square One Fund Ltd. ("Square One"), Luc D. Estenne, Square Asset Management Ltd., Partners Advisers S.A., Circle Partners, and Kathryn R. Siggins (collectively, the "Square One Defendants") seeking the return of approximately $26.2 million under SIPA, the Bankruptcy Code, and the New York Debtor and Creditor Law in connection with certain transfers of property by BLMIS to or for the benefits of the Square One Defendants. *Picard v. Square One Fund Ltd.,* Adv. Pro. No. 10-04330 (CGM) (Bankr. S.D.N.Y. Nov. 29, 2010).

209.    On December 21, 2018, the Trustee filed and served the Amended Complaint. *Id.*, (ECF No. 167-69).

210.    Square One filed a motion to dismiss on February 14, 2019. *Id.*, (ECF No. 170). On May 29, 2019, the Court held a hearing on Square One's motion to dismiss. At the conclusion of the hearing, the Court granted in part and denied in part the motion to dismiss. The Court subsequently entered an order granting in part and denying in part Square One's motion to dismiss on June 13, 2019. *Id.*, (ECF No. 177).

211.    On July 16, 2019, the Court so-ordered a Case Management Plan. *Id.*, (ECF No. 178).

212.    During the Report Period, the Trustee and Square One were engaged in active discovery.

213.    In addition, on June 14, 2021, the Trustee filed a letter requesting a one year extension of all fact discovery deadlines. (ECF No. 205). This matter was noticed for hearing

on July 28, 2021. (ECF No. 207). Square One opposed the Trustee's request (ECF No. 218) and the Trustee appeared on July 28, 2021 in support of his request for a discovery extension. The Bankruptcy Court subsequently granted the Trustee's request and amended the Case Management Plan. (ECF Nos. 227 - 230).

214.    The Trustee also filed and served four Motions for the Issuance of Letters of Request for International Judicial Assistance for the Examination of Witnesses, Mr. Albert Collette, Ms. Melissa Massetta, Mr. Luc Deblue, and Ms. Catherine Lemaitre. (ECF Nos. 209 – 216). Square One opposed the Trustee's motions (ECF No. 217) and the Trustee filed and served a Reply to Square One's opposition (ECF Nos. 220 – 222). The Trustee appeared on July 28, 2021 in support of his motions for the Issuance of Letters of Request for International Judicial Assistance for the Examination of Witnesses. The Bankruptcy Court subsequently granted the Trustee's request for the Issuance of Letters of Request. (ECF Nos. 223 – 226).

v.    **Picard v. Legacy**

215.    On December 6, 2010, the Trustee commenced an action against Legacy Capital Ltd. ("Legacy") seeking the return of over $218 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for fraudulent conveyances and damages in connection with certain transfers of property by BLMIS to or for the benefit of Legacy. *Picard v. Legacy Capital Ltd.*, Adv. No. 10-05286 (CGM) (Bankr. S.D.N.Y. Dec. 6, 2010).

216.    As background, on November 12, 2019, the Bankruptcy Court entered a Stipulation and Order for Entry of Final Judgment ("Stipulated Order"), that included, among other things: (i) the Trustee's and Legacy's consent to the Bankruptcy Court's entry of a final order and judgment in connection with the Trustee's avoidance claim, and (ii) entry of the final order and judgment against Legacy in the amount of $79,125,781.00. The Stipulated Order

further provided that "the Legacy Transfers are avoidable and avoided under § 548(a)(1)(A) and
recoverable from Legacy under §550(a) of the Bankruptcy Code."

217.    On November 11, 2020, and within the time period set forth in §550(f) of the
Bankruptcy Code, the Trustee filed a recovery complaint against Rafael Mayer, David Mayer,
Montpellier International, Ltd., Prince Assets LDC, Khronos Group, Ltd., Montpellier USA
Holdings, LLC, Price Resources LDC, Prince Capital Partners LLC, and Khronos Liquid
Opportunities Fund Ltd. (collectively, the "Subsequent Transfer Defendants").  The complaint
sought recovery of approximately $49,505,850 in subsequent transfers of BLMIS customer
property originally made to Montpellier and Prince by Legacy.  Among the claims were claims
for vicarious liability including alter ego liability, and piercing the corporate veil concerning the
individual defendants.

218.    On March 2, 2021, Subsequent Transfer Defendants Rafael Mayer, David Mayer,
Price Resources LDC, Prince Capital Partners LLC, and Khronos Liquid Opportunities Fund
Ltd. filed Motions to Dismiss the Trustee's recovery complaint.  Pursuant to a stipulated briefing
schedule between the Trustee and the Subsequent Transfer Defendants, the Trustee's Opposition
to the Motions to Dismiss was scheduled to be filed on May 4, 2021, and the Subsequent
Transfer Defendants' reply papers were to be filed by June 1, 2021.

219.    The Court set oral argument on the Motions to Dismiss for June 16, 2021.  By
stipulation, the Trustee and the Subsequent Transfer Defendants agreed to alter the briefing
schedule on the Motions to Dismiss by extending the deadline for reply papers to June 15, 2021
and adjourning the oral argument date to July 28, 2021.

220.    During the Report Period, B&H attorneys, on behalf of the Trustee, prepared
opposition briefs in connection with the Motions to Dismiss filed by Rafael Mayer, David

Mayer, Price Resources LDC, Prince Capital Partners LLC, and Khronos Liquid Opportunities Fund Ltd. Additionally, the Trustee analyzed the reply papers filed by Rafael Mayer, David Mayer, Price Resources LDC, Prince Capital Partners LLC, and Khronos Liquid Opportunities Fund Ltd., and prepared for the June 28, 2021 scheduled oral argument on the Motions to Dismiss.

221. During the Report Period, B&H attorneys, on behalf of the Trustee, continued to evaluate the status of the Trustee's Appeal of the good faith standard under sections 548(c) and 550(b) of the Bankruptcy Code (the "Good Faith Appeal"). *Picard v. Legacy Capital Ltd.*, No. 20-1334 (2d Cir.). *See* discussion *supra* Section (VI)(D)(ii). As the Second Circuit's decision on the Good Faith Appeal was expected in the late summer/early fall of 2021, the Trustee requested a two-month extension of the July 28, 2021 argument date for the Subsequent Transfer Defendants' Motions to Dismiss. At the same time, the Trustee and counsel for Prince Resources LDC and Prince Capital Partners LLC entered in a stipulation whereby these two defendants agreed to withdraw their Motions to Dismiss without prejudice pending the appellate decision. On July 27, 2021, Judge Morris granted the Trustee's request to adjourn the hearings on the Motions to Dismiss and re-set the hearing date for September 15, 2021.

222. On August 30, 2021, the Second Circuit issued a decision concerning the Good Faith Appeal in *Picard v. Citibank, N.A.* and *Picard v. Legacy Capital, Ltd*. *See* discussion *supra* Section (VI)(D)(ii). The Second Circuit remanded the Legacy adversary proceeding to the Bankruptcy Court for the proceedings to continue consistent with the appellate decision.

223. During the Report Period, B&H attorneys, on behalf of the Trustee, considered the impact of the Second Circuit's Good Faith Appeal decision on the remanded Legacy adversary proceeding and began to analyze potential amendments to the pleadings in that matter.

B&H attorneys also began to work on a revised case management and discovery plan for the remanded Legacy adversary proceeding.

224.    During the Report Period, B&H attorneys, on behalf of the Trustee, prepared for oral argument in connection with the Motions to Dismiss filed by Rafael Mayer, David Mayer, and Khronos Liquid Opportunities Fund Ltd.  On September 15, 2021, the Court heard oral argument on the Motions to Dismiss in this adversary proceeding and reserved its opinion.

## F.    Subsequent Transfer Actions

225.    The Trustee and B&H attorneys continue to pursue recovery actions against entities that received subsequent transfers of Customer Property from BLMIS through the Fairfield Funds, the Tremont funds and Harley.

226.    The Trustee settled his claims against the Fairfield Funds in 2011. *Picard v. Fairfield Inv. Fund Ltd., et al.*, Adv. Pro. No. 09-1239 (CGM), ECF No. 107. As part of the settlement, the Bankruptcy Court entered a consent judgment in the amount of approximately $3 billion, and the Fairfield Funds repaid only $70 million to the Trustee. The Trustee then commenced approximately 75 cases to recover the subsequent transfers that defendants received from the Fairfield Funds.

227.    The Trustee also settled his claims against the Tremont Funds in 2011. *Picard v. Tremont Group Holdings, Inc., et al.*, Adv. Pro. No. 10-05310 (SMB), ECF No. 38. As part of this settlement, the Tremont Funds repaid the Trustee $1.025 billion out of the $2.1 billion received from BLMIS. The Trustee has nine actions against defendants who received subsequent transfers from the Tremont Funds. These actions seek to recover a portion of the $1 billion in transfers, which were not recovered as part of the settlement with the Tremont Funds.

228.    The Trustee has eight actions against defendants who received subsequent transfers from Harley. In 2009, the Trustee filed an adversary proceeding against Harley that

sought to avoid and recover approximately $1 billion in initial transfers received from BLMIS. *Picard v. Harley International (Cayman) Limited, Inc.*, Adv. Pro. No. 09-01187 (CGM), ECF No. 1. Harley never responded to the complaint, and on November 10, 2010, the Bankruptcy Court entered a default judgment and summary judgment against Harley. ECF No. 15. The Trustee's actions seek to recover all of the avoided transfers that defendants received from Harley.

229. As of September 30, 2021, the Trustee has 81 subsequent transfer actions pending, as set forth in the attached Exhibit D. A couple of those with activity during the Report Period are discussed herein.

230. All of these cases were affected by the Second Circuit's decision on good faith under sections 548(c) and 550(b) in the Trustee's cases against Citibank, N.A. and Legacy Capital Ltd. *See In re Bernard L. Madoff Investment Securities LLC*, Nos. 20-1333 & 20-1334, 2021 WL 3854761 (2d Cir. Aug. 30, 2021) (the "Citibank Decision"). *See* discussion *supra* Section (VI)(D)(ii).

231. Now that the Second Circuit has issued the Citibank Decision, the Subsequent Transfer cases pending are ready to proceed. Each of the complaints previously filed by the Trustee state a *prima facie* case for recovery under § 550(b) by alleging that BLMIS made transfers of customer property to the Fairfield Funds, the Tremont Funds, and/or Harley in furtherance of Madoff's Ponzi scheme, and that those feeder funds subsequently transferred this customer property to defendants. The Trustee also has pled the "necessary vital statistics—the who, when, and how much" of the transfers at issue.

232. Counsel for the Trustee is now meeting and conferring with counsel for each of the subsequent transfer defendants to discuss a date by which defendants will respond to the

Trustee's complaints and moving these cases into discovery. In approximately fifteen cases, the Trustee will also seek consent from defendants or leave from the Court to amend the Trustee's previously filed complaints based on information now available to the Trustee. Here, the Trustee will seek to add or correct transfers that defendants received from the various feeder funds, or to add a defendant and/or substitute a new defendant for an old one pursuant to Rule 15 of the Federal Rules of Civil Procedure.

i.     **Picard v. Natixis, et al.**

233.    On December 8, 2010, the Trustee commenced an action against Natixis, Natixis Corporate & Investment Bank (f/k/a Ixis Corporate & Investment Bank), Natixis Financial Products, Inc., Bloom Asset Holdings Fund, and Tensyr Ltd. (collectively, the "Natixis Defendants") seeking the return of approximately $430 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent transfers and fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of the Natixis Defendants (the "Natixis Action"). *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y. Dec. 8, 2010).

234.    On February 25, 2019, the Second Circuit issued its opinion regarding extraterritoriality and comity, reversing the Bankruptcy Court's 2016 decision. *In re Picard, Trustee for Liquidation of BLMIS*, 917 F.3d 85 (2d Cir. 2019). *See* discussion *supra* Section (VI)(D)(i). This Second Circuit decision revived claims against all Natixis Defendants. To give the Trustee time to analyze the Second Circuit decision, the parties entered a stipulation on February 27, 2019, staying the action for 30 days. *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y.) (ECF No. 180). On March 28, 2019, the parties then entered a stipulation to stay the action until the mandate issues from the Second Circuit and the Bankruptcy Court's jurisdiction over the case is revived. *Id.* (ECF No. 181).

235.    The Bankruptcy Court so ordered a stipulation on July 1, 2020, staying the Natixis Action pending the issuance of orders from the Second Circuit in the appeals of *Picard v. Citibank, N.A.*, Case No. 20-1333 and *Picard v. Legacy Capital Ltd.*, Case No. 20-1334. *Picard v. Natixis*, Adv. No. 10-05353 (SMB) (Bankr. S.D.N.Y.) (ECF No. 185). *See* discussion *supra* Section (VI)(D)(ii) and *supra* Section (VI)(E)(v).

236.    During the Report Period, in anticipation of that decision, B&H attorneys, on behalf of the Trustee, continued to investigate and analyze the facts of the case and worked on drafting amended pleadings.

237.    Following the Second Circuit's decision in *Picard v. Citibank N.A.* and *Picard v. Legacy Capital, Ltd.*, in *Picard v. Citibank (In re Bernard L. Madoff Inv. Sec. LLC),* 12 F.4th 171 (2d. Cir. 2021),[13] B&H attorneys are analyzing the filed complaint in the Natixis Action, investigating potential amendments, conferring with opposing counsel regarding scheduling, and assessing potential motion practice.

### ii.    Picard v. Nomura International PLC

238.    On December 8, 2010, the Trustee commenced an action against Nomura International plc ("Nomura") seeking the return of approximately $35 million under SIPA, the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable law for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of Nomura (the "Nomura Action"). *Picard v. Nomura Int'l plc*, Adv. Pro. No. 10-05348 (CGM) (Bankr. S.D.N.Y. Dec. 8, 2010). On June 6, 2012, the Trustee filed an Amended Complaint in the Nomura Action.

239.    By orders dated May 15, 2012 and June 7, 2012, the District Court entered orders withdrawing the reference in the Nomura Action to determine whether SIPA and/or the

---

[13] *See* discussion *supra* Section (VI)(D)(ii).

Bankruptcy Code apply extraterritorially, permitting the Trustee to avoid initial transfers that were received abroad or to recover from initial, immediate, or mediate foreign transferees (the "Extraterritoriality Issue"). *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-mc-0115 (JSR), ECF Nos. 97 and 167.

240. On July 7 and 28, 2014, the District Court entered an opinion and order, and a supplemental opinion and order, and returned the Nomura Action to the Bankruptcy Court for further proceedings. *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-mc-0115 (JSR), ECF Nos. 551 and 556.

241. On December 31, 2014, Nomura filed a consolidated memorandum of law in support of a motion to dismiss concerning the Extraterritoriality Issue (the "Extraterritoriality Motion to Dismiss").

242. On November 22, 2016, the Bankruptcy Court issued a Memorandum Decision Regarding Claims to Recover Foreign Subsequent Transfers that granted the Extraterritoriality Motion to Dismiss as to Nomura. *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (SMB), 2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016). *See* discussion *supra* Section (VI)(D)(i).

243. On March 3, 2017, the Bankruptcy Court entered an order granting the Extraterritoriality Motion to Dismiss. *Picard v. Nomura Int'l plc*, Adv. Pro. No. 10-05348 (SMB), ECF No. 108.

244. On April 4, 2017, the Trustee and Nomura filed a Certification to the Court of Appeals by All Parties. *Id.*, ECF No. 113. The Second Circuit subsequently authorized a direct appeal on October 13, 2017.

245.     On February 25, 2019, the Second Circuit issued a decision that vacated the Bankruptcy Court's order. *In re Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Secs. LLC*, 917 F.3d 85 (2d Cir. 2019). *See* discussion *supra* Section (VI)(D)(i).

246.     On August 29, 2019, Nomura filed a petition for writ of certiorari in the United States Supreme Court. On June 1, 2020, the United States Supreme Court denied the petition for writ of certiorari. *See* discussion *supra* Section (VI)(D)(i). Also on June 1, 2020, the Second Circuit issued the mandate, returning the Nomura Action to the Bankruptcy Court.

247.     On August 30, 2021, the Second Circuit vacated the Bankruptcy Court's dismissal of the Trustee's actions against Citibank, N.A. and Legacy Capital, holding that in a SIPA liquidation the good faith defense is governed by an inquiry notice standard and that a SIPA trustee need not plead a transferee's lack of good faith.[14] *See Picard v. Citibank (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171 (2d. Cir. 2021). The Second Circuit's decision governs the Trustee's actions against other subsequent transferee defendants, including Nomura.

248.     During the Report Period, the Trustee continued to investigate and analyze the facts of the case in anticipation of filing an amended complaint against Nomura and moving to consolidate the Nomura Action with a separate adversary proceeding the Trustee filed against Nomura on October 6, 2011, captioned as *Picard v. Nomura Int'l plc*, Adv. Pro. No. 08-01789 (CGM) (Bankr. S.D.N.Y. Oct. 6, 2011)

## VII.    INTERNATIONAL INVESTIGATION AND LITIGATION

249.     The Trustee's international investigation and recovery of BLMIS estate assets involves, among other things: (i) identifying the location and movement of estate assets abroad, (ii) becoming involved in litigation brought by third parties in foreign courts, by appearance or otherwise, to prevent the dissipation of funds properly belonging to the estate, (iii) bringing

---

[14] *See* discussion *supra* Section (VI)(D)(ii).

actions before United States and foreign courts and government agencies to recover customer property for the benefit of the customers and creditors of the BLMIS estate, and (iv) retaining international counsel to assist the Trustee in these efforts, when necessary. More than seventy of the actions filed in this Court have involved international defendants, and the Trustee is involved in actions and investigations in several jurisdictions, including Austria, Cayman Islands, France, Israel, and the United Kingdom, among others.

250.    The following summarizes key litigation involving foreign defendants in the Bankruptcy Court and in foreign courts.

**A.      Austria**

251.    The Trustee continues to actively investigate certain banks, institutions, and individuals located in this jurisdiction. In addition, the Trustee is actively engaged in discovery involving Austrian documents and witnesses.

**B.      BVI**

252.    The Trustee is actively investigating the involvement of several BVI-based feeder funds that funneled money into the Ponzi scheme.

**C.      Cayman Islands**

253.    The Trustee is actively monitoring certain third party BLMIS and HSBC-related proceedings currently pending in the Cayman Islands.

**D.      England**

254.    The Trustee currently has protective claims pending in England against HSBC and related entities. In addition, the Trustee is actively engaged in discovery involving English documents and witnesses.

E.    **France**

255.   The Trustee is actively monitoring certain third-party proceedings relating to BLMIS currently pending in France. In addition, the Trustee is actively engaged in discovery involving French documents and witnesses.

F.    **Ireland**

256.   The Trustee continues to investigate BLMIS-related third-party litigation currently pending in Ireland. In addition, the Trustee is actively engaged in discovery involving Irish documents and witnesses.

G.    **Israel**

    i.    **Picard v. Magnify Inc.**

257.   On December 6, 2010, the Trustee commenced an action against Magnify, Inc. and several related companies holding BLMIS accounts, individuals acting on behalf of these accounts, and several other recipients of transfers from these accounts (collectively, the "Magnify Defendants") seeking the return of more than $154 million under SIPA §§ 78fff(b) and 78fff-2(c)(3), §§ 105(a), 542, 544, 547, 548(a), and 551 of the Bankruptcy Code, the New York Fraudulent Conveyance Act, and other applicable laws for preferences, fraudulent conveyances, and damages in connection with certain transfers of property by BLMIS to or for the benefit of the Magnify Defendants. *Picard v. Magnify Inc.*, Adv. No. 10-05279 (CGM). On September 21, 2011, the Trustee filed an amended complaint in the action. (ECF No. 39). On September 29, 2017, the Trustee filed a second amended complaint. (ECF No. 143).

258.   Following the Court's Order of June 18, 2019 directing the parties to participate in mediation (ECF No. 181) and the July 11, 2019 order appointing Mr. Ted Berkowitz as the mediator (ECF No. 185), the parties engaged in a mediation from September 12-14, 2019 to consider a settlement framework that would involve both the U.S. action and the Trustee's action

in Israel against certain defendants ("Direct Action"). Following the mediation session, discussions among the parties continued, which resulted in terms of a potential settlement.

259.    As a result of those efforts, the Trustee entered into a settlement agreement with the U.S. defendants, which was approved by the Bankruptcy Court on September 28, 2020, and with the defendants in the Direct Action as well.  In addition to a settlement payment of $3.5 million USD, which exceeded the two-year fictitious profits alleged against certain defendants, the settlement avoided the full life to date amount of the initial transfers as fictitious profits pursuant to the Bankruptcy Code. The settlement resulted in consent judgments against Defendants Magnify, Premero, Strand, and YHA for the full amount of the unrecovered liability alleged by the Trustee, among other benefits.  YHA has no assets and did not contribute to the settlement payment.  The consent judgments were entered by the Court on October 22, 2020.

260.    After the settlement was approved by the Bankruptcy Court, the Trustee focused on potential claims against several subsequent transferees.

261.    The Trustee also continued to prosecute his action commenced in 2015 in Israel to recover funds transferred to individuals and entities through the Magnify Defendants' BLMIS accounts ("Indirect Action").  During the Report Period, the Trustee worked with Israeli counsel to analyze strategic issues relating to the case, including working with experts, and navigated various issues related to document discovery, including addressing logistical and strategic issues relating to the production of documents in a foreign country, assessing deficiencies in the defendants' discovery responses, and performing various legal and factual research.

262.    During the Report Period, the Trustee and Israeli co-counsel worked with U.S. and Israeli experts in connection with expert reports and evidence submission in the indirect action consisting of affidavits pertaining to discovery and individual defendants. The evidence

submission and related materials were timely submitted by the Trustee and his Israeli counsel by the August 19, 2021 submission deadline.

263.     The Indirect Action continues to move towards trial, and the Trustee progressed during the Report Period in preparing that case alongside Israeli counsel.  In that regard, the Trustee's counsel engaged in numerous discovery-related projects, including litigation around the Israeli defendants' supplemental document productions.  The Trustee's counsel also coordinated with Israeli counsel on motions to compel better discovery and answers from the Israeli defendants.  In furtherance of those efforts, including the August 19, 2021 submission, the Trustee's counsel, including Israeli counsel, prepared for a conference before the Israeli District Court that was held on September 9, 2021.  That conference resulted in rulings with respect to certain motions by Defendants regarding discovery, with deadlines set for submissions on these motions to occur during October 2021.

264.     The Trustee's counsel separately continued drafting a subsequent transferee complaint to be filed in the United States against various Israeli academic institutions that received transfers from YHA.  In connection with that complaint, Trustee's counsel researched various legal issues, examined the defendants' activities and roles, and confirmed analyses associated with the money received by these defendants. The Trustee filed the subsequent transfer complaint on September 27, 2021 in the U.S. Bankruptcy Court for the Southern District of New York.

**H.     <u>Liechtenstein</u>**

265.     The Trustee is actively monitoring certain third-party proceedings relating to BLMIS currently pending in Liechtenstein.

I.      **Switzerland and Luxembourg**

266.    In 2010, the Trustee filed two lawsuits in this Court against Switzerland-based UBS AG and other UBS and HSBC related entities based in Luxembourg and various feeder funds, management companies, and individuals. The Trustee also continues to monitor certain BLMIS-related third-party actions currently pending in these jurisdictions. In addition, the Trustee is actively engaged in discovery involving Luxembourg documents and witnesses.

## VIII.   RECOVERIES AND CONTINGENCIES

A.      **Recoveries Accomplished During Prior Report Periods**

267.    In the Sixth through Twenty-Fifth Interim Reports, the Trustee reviewed the significant settlements entered into during those periods and prior report periods. Prior to this Report Period, the Trustee had recovered or reached agreements to recover approximately $14.418 billion for the benefit of BLMIS customers.

B.      **Recoveries Accomplished During This Report Period**

268.    During the Report Period, the Trustee settled 21 cases. Additionally, the Trustee received recoveries in connection with settlements totaling $74,745,540.76. As of the end of the Report Period, the Trustee has successfully recovered or reached agreements to recover nearly $14.493 billion.

269.    The Trustee has identified claims in at least eight shareholder class action suits that BLMIS filed before the Trustee's appointment arising out of its proprietary and market making desk's ownership of securities. During the Report Period, the Trustee had received distributions from seven of these class action settlements totaling over $91,000. The Trustee has not and will not receive any distributions from the eighth class action settlement.

270.    In addition, the Trustee has identified claims that BLMIS may have in 201 other class action suits also arising out of its proprietary and market making activities. The Trustee has

filed proofs of claim in 128 of these cases and, based on a review of relevant records, has declined to pursue claims in 73 additional cases. As of September 30, 2021, the Trustee has recovered $2,654,804.95 from settlements relating to 62 of the 128 claims filed directly by the Trustee during the Report Period, of which $803.97 was recovered during this Report Period.

## IX.   THE TRUSTEE'S ALLOCATION OF FUNDS AND DISTRIBUTIONS TO CUSTOMERS

### A.   The Customer Fund

271.    In order to protect customers of an insolvent broker-dealer such as BLMIS, Congress established a statutory framework pursuant to which customers of a debtor in a SIPA liquidation are entitled to preferential treatment in the distribution of assets from the debtor's estate. The mechanism by which customers receive preferred treatment is through the creation of a Customer Fund, as defined in SIPA § 78*lll*(4), which is distinct from a debtor's general estate. Customers holding allowable claims are entitled to share in the Customer Fund based on each customer's net equity as of the filing date, to the exclusion of general creditors. SIPA § 78fff-2(c).

272.    In order to make interim distributions from the Customer Fund, the Trustee must determine or be able to sufficiently estimate: (a) the total value of customer property available for distribution (including reserves for disputed recoveries), and (b) the total net equity of all allowed claims (including reserves for disputed claims). Each element of the equation—the customer property numerator and the net equity claims denominator—is inherently complex in a liquidation of this magnitude.

273.    There are unresolved issues in this liquidation proceeding that require the maintenance of substantial reserves. Nonetheless, the liquidation proceeding progressed to a stage at which it was possible for the Trustee, on an interim basis, to determine: (a) the allocation

of property to the Customer Fund, or the "numerator" (taking reserves into account), (b) the amount of allowable net equity claims, or the "denominator" (also taking reserves into account), and (c) the calculation of each customer's minimum ratable share of the Customer Fund.

274.    The Trustee previously filed twelve motions seeking entry of orders approving allocations of property to the Customer Fund and authorizing pro rata interim distributions of Customer Property. This Court entered orders approving those motions:

| No. of Distribution | Date of Distribution | Amount Allocated | Amount Distributed Through 9/30/21 | Percentage Distributed | ECF No. for Motion | ECF No. for Order |
|---|---|---|---|---|---|---|
| 1 | 10/05/2011 | $2.618 billion | $884.6 million | 4.602% | 4048 | 4217 |
| 2 | 09/19/2012 | $5.501 billion | $6.431 billion | 33.556% | 4930 | 4997 |
| 3 | 03/29/2013 | $1.198 billion | $900.7 million | 4.721% | 5230 | 5271 |
| 4 | 05/05/2014 | $477.504 million | $605.9 million | 3.180% | 6024 | 6340 |
| 5 | 02/06/2015 | $756.538 million | $522.2 million | 2.743% | 8860 | 9014 |
| 6 | 12/04/15 | $345.472 million[15] | $1.567 billion | 8.262% | 9807 and 11834 | 12066 |
| 7 | 06/30/16 | $247.013 million | $246.7 million | 1.305% | 13405 | 13512 |
| 8 | 02/02/17 | $342.322 million | $326.4 million | 1.729% | 14662 | 14836 |
| 9 | 02/22/18 | $1.303 billion | $716.3 million | 3.806% | 17033 | 17195 |
| 10 | 02/22/19 | $515.974 million | $512.1 million | 2.729% | 18295 | 18398 |
| 11 | 02/28/20 | $988.770 million | $369.3 million | 1.975% | 19226 | 19245 |
| 12 | 2/26/21 | $74.325 million | $231.4 million | 1.240% | 20066 | 20209 |
| **TOTAL** | N/A | $14.368 billion | $13.314 billion | 69.848% | N/A | N/A |

## B.    The General Estate

275.    If the Trustee is able to fully satisfy the net equity claims of the BLMIS

---

[15] This represents the amount allocated to the Customer Fund in the Supplemental Sixth Allocation and Sixth Interim Distribution Motion filed on October 20, 2015. The original Sixth Allocation and Sixth Interim Motion filed on April 15, 2015 did not allocate any additional recoveries to the Customer Fund; the Trustee simply re-allocated $1,448,717,625.26 of funds that had previously been allocated to the Customer Fund for the Time-Based Damages Reserve.

customers, any funds remaining will be allocated to the general estate and distributed in the order
of priority established in Bankruptcy Code § 726 and SIPA § 78fff(e).

276.  All BLMIS customers who filed claims—whether their net equity customer
claims were allowed or denied—are deemed to be general creditors of the BLMIS estate. The
Trustee is working diligently on behalf of all creditors and will seek to satisfy all creditor claims.

## X.  FEE APPLICATIONS AND RELATED APPEALS

### A.  Objections to Prior Fee Applications

277.  Objections were filed to six of the thirty-six fee applications submitted by the
Trustee and B&H. Discussions of the objections to the first through sixth fee applications, and
related motions for leave to appeal the Court's orders granting the Trustee's and B&H's fee
applications and overruling those objections, are discussed more fully in the Trustee's Amended
Third Interim Report ¶¶ 186–90 (ECF No. 2207); the Trustee's Fourth Interim Report ¶¶ 163–66
(ECF No. 3083); the Trustee's Fifth Interim Report ¶¶ 134–43 (ECF No. 4072); and the
Trustee's Sixth Interim Report ¶¶ 131–42 (ECF No. 4529). No decision has been entered on the
motion for leave to appeal the Second Interim Fee Order, No. M47-b (DAB) (S.D.N.Y.). The
motion for leave to appeal the Sixth Interim Fee Order was withdrawn on September 10, 2014.
*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Case No. 11 MC 00265 (PGG)
(S.D.N.Y.), (ECF No. 9).

### B.  Thirty-Fifth Fee Application

278.  On March 8, 2021, the Trustee and his counsel filed the Thirty-Fifth Application
for Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary
Expenses incurred from August 1, 2020 through and including November 30, 2020 with the
Bankruptcy Court. (ECF No. 20323). Special counsel and international special counsel also filed
applications for Interim Professional Compensation. (ECF Nos. 20328 – 20339). A Certificate of

No Objection was filed on April 16, 2021, and an Order was entered granting the Applications on April 20, 2021. (ECF No. 20451).

## C.    **Thirty-Sixth Fee Application**

279.    On July 6, 2021, the Trustee and his counsel filed the Thirty-Sixth Application for Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses incurred from December 1, 2020 through and including March 31, 2021 with the Bankruptcy Court. (ECF No. 20603). Special counsel and international special counsel also filed applications for Interim Professional Compensation. (ECF Nos. 20604–206017, 20619). A Certificate of No Objection was filed on August 9, 2021, and an Order was entered granting the Applications on August 10, 2021. (ECF No. 20685).

# XI.    CONCLUSION

The foregoing report represents a summary of the status of this proceeding and the material events that have occurred through September 30, 2021, unless otherwise indicated. This Report will be supplemented and updated with further interim reports.

Dated:  New York, New York
        October 29, 2021

Respectfully submitted,

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com
Heather R. Wlodek
Email: hwlodek@bakerlaw.com

*/s/ Irving H. Picard*
Irving H. Picard
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: ipicard@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*

*Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*

# EXHIBIT A

**SECURITIES INVESTOR PROTECTION CORPORATION**

**Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities, LLC**

Period Ended September 30, 2021                    Report No. 154

CASH RECEIPTS:

| General Cash Receipts | Net Change for Period | Prior Period Cumulative | Total Received | Customer Fund | Cumulative Detail General Estate | SIPC | Code |
|---|---|---|---|---|---|---|---|
| Beginning Cash Balance | $41,916,400.74 | | | | | | |
| Transfer from Debtor's Estate - Securities | 0.00 | 289,841,911.70 | 289,841,911.70 | 289,841,911.70 | | | 4011 |
| Transfers from Debtor's Estate - BNY Account | 0.00 | 336,660,934.06 | 336,660,934.06 | 336,660,934.06 | | | 4014 |
| Transfers from Debtor's Estate - Chase Account | 0.00 | 235,156,309.36 | 235,156,309.36 | 235,156,309.36 | | | 4016 |
| Transfers from Debtor's Estate - Other | 0.00 | 4,036,145.08 | 4,036,145.08 | 4,036,145.08 | | | 4018 |
| Interest and Dividends | 0.00 | 1,843,180.59 | 1,843,180.59 | 1,843,180.59 | | | 4040 |
| Closeout Proceeds - Broker Dealers | 0.00 | 37,316,297.78 | 37,316,297.78 | 37,316,297.78 | | | 4030 |
| Closeout Proceeds - NSCC | 0.00 | 21,783,082.40 | 21,783,082.40 | 21,783,082.40 | | | 4031 |
| Closeout Proceeds - DTCC | 0.00 | 18,001,787.96 | 18,001,787.96 | 18,001,787.96 | | | 4032 |
| Sale of Debtor's Assets | 0.00 | 47.26 | 47.26 | 47.26 | | | 4070 |
| - Sports Tickets | 0.00 | 91,037.20 | 91,037.20 | 91,037.20 | | | 4071 |
| - Bank Debt Participations | 0.00 | 7,959,450.94 | 7,959,450.94 | 7,959,450.94 | | | 4072 |
| - DTCC Shares | 0.00 | 204,170.51 | 204,170.51 | 204,170.51 | | | 4073 |
| - Market Making Business | 0.00 | 1,419,801.63 | 1,419,801.63 | 1,419,801.63 | | | 4075 |
| - Abtech | 0.00 | 795,000.00 | 795,000.00 | 795,000.00 | | | 4076 |
| - NSX Shares | 0.00 | 100,734.60 | 100,734.60 | 100,734.60 | | | 4077 |
| - BLM Air Charter | 0.00 | 6,494,631.95 | 6,494,631.95 | 6,494,631.95 | | | 4074 |
| - Auction Sales | 0.00 | 644,579.15 | 644,579.15 | 644,579.15 | | | 4078 |
| - Other | 0.00 | 11,428.57 | 11,428.57 | 11,428.57 | | | 4079 |
| Administrative Subtenant Rent Revenue | 0.00 | 531,078.49 | 531,078.49 | 531,078.49 | | | 4111 |
| Adjusting Administrative Subtenant Rent Revenue | 0.00 | (531,078.49) | -531,078.49 | (531,078.49) | | | 4111a |
| Refunds - Deposits | 0.00 | 9,841.45 | 9,841.45 | 9,841.45 | | | 4091 |
| - Dues/Subscriptions | 0.00 | 177,247.15 | 177,247.15 | 177,247.15 | | | 4092 |
| - Car Registrations | 0.00 | 157.00 | 157.00 | 157.00 | | | 4093 |
| - Vendors | 0.00 | 62,451.27 | 62,451.27 | 62,451.27 | | | 4094 |
| - Transit Cards | 0.00 | 833.61 | 833.61 | 833.61 | | | 4095 |
| - Insurance/Workers Comp | 0.00 | 442,311.56 | 442,311.56 | 442,311.56 | | | 4096 |
| - Ref. - Political Contributions | 0.00 | 144,500.00 | 144,500.00 | 144,500.00 | | | 4097 |
| - Refunds Other | 0.00 | 50.84 | 50.84 | 50.84 | | | 4099 |
| Recoveries - Customer Avoidances | 0.00 | 112,392,379.79 | 112,392,379.79 | 112,392,379.79 | | | 4020 |
| - Pre-Litigation Settlements | 0.00 | 1,903,783,597.98 | 1,903,783,597.98 | 1,903,783,597.98 | | | 4021 |
| - Litigation Settlements | 4,709,922.34 | 11,380,689,737.38 | 11,385,399,659.72 | 11,385,399,659.72 | | | 4022 |
| - Donation Settlements | 0.00 | 875,000.00 | 875,000.00 | 875,000.00 | | | 4023 |
| - Vendor Preferences | 0.00 | 809,850.39 | 809,850.39 | 809,850.39 | | | 4024 |
| - MSIL Liquidation | 0.00 | 1,034,311.82 | 1,034,311.82 | 1,034,311.82 | | | 4025 |
| - Employees | 0.00 | 10,674.74 | 10,674.74 | 10,674.74 | | | 4102 |
| - Taxing Authorities | 0.00 | 12,777.56 | 12,777.56 | 12,777.56 | | | 4103 |
| - Class Actions | 0.00 | 2,746,747.64 | 2,746,747.64 | 2,746,747.64 | | | 4104 |
| - NASDAQ | 0.00 | 308,948.49 | 308,948.49 | 308,948.49 | | | 4105 |
| - NYSE | 0.00 | 183,683.79 | 183,683.79 | 183,683.79 | | | 4106 |
| - Transaction Fees | 0.00 | 96,816.23 | 96,816.23 | 96,816.23 | | | 4107 |
| - Other | 0.00 | 796,298.73 | 796,298.73 | 796,298.73 | | | 4109 |
| Miscellaneous | 0.00 | 0.36 | 0.36 | 0.36 | | | 4110 |
| Earnings on Trustee's Investments | 69.00 | 112,890,411.90 | 112,890,480.90 | 112,890,480.90 | | | 4120 |
| Interest on Trustee's Savings Accounts | 28,674.78 | 8,106,356.09 | 8,135,030.87 | 8,135,030.87 | | | 4140 |
| | $4,738,666.12 | $14,487,935,516.51 | $14,492,674,182.63 | $14,492,674,182.63 | | | |
| Administration - Advances | 0.00 | 2,100,958,767.66 | 2,100,958,767.66 | | | 2,100,958,767.66 | 2901 |
| Securities - Paid Bank Loans | 0.00 | 0.00 | 0.00 | | | 0.00 | 2921 |
| - Cash in Lieu  *See (4) on Page 3 | 0.00 | 849,443,412.47 | 849,443,412.47 | | | 849,443,412.47 | 2922 |
| Sub-total SIPC Advances | $0.00 | $2,950,402,180.13 | $2,950,402,180.13 | | | $2,950,402,180.13 | |
| Funds Transferred from Investment Accounts  *See Note (2) on Page 3 | 0.00 | 12,412,904,815.23 | 12,412,904,815.23 | | | | 1901 |
| Total Cash Receipts | $4,738,666.12 | $29,851,242,511.87 | $29,855,981,177.99 | $14,492,674,182.63 | $0.00 | $2,950,402,180.13 | |

**Period Ended September 30, 2021**                                   **Report No. 154**

*CASH DISBURSEMENTS:*

| *Administrative Disbursements*<br>General Administrative Disbursements | Net Change<br>for Period | Prior Period<br>Cumulative | Cumulative<br>Total Paid | Code |
|---|---|---|---|---|
| **Computer - Rental** | 0.00 | 11,121.59 | 11,121.59 | 5011 |
| - Software Support | 0.00 | 55,159.20 | 55,159.20 | 5012 |
| - Equipment Leases | 0.00 | 204,159.01 | 204,159.01 | 5013 |
| **Employee Related - Salaries-Net** | 0.00 | 4,361,844.80 | 4,361,844.80 | 5020 |
| - FICA-Employer | 0.00 | 318,550.60 | 318,550.60 | 5021 |
| - Fed. & St. Unemploy. | 0.00 | 4,296.08 | 4,296.08 | 5023 |
| - Temporary Help | 0.00 | 29,612.50 | 29,612.50 | 5024 |
| - Employee Medical Plan | 0.00 | 830,103.99 | 830,103.99 | 5025 |
| - Employee LTD | 0.00 | 6,887.03 | 6,887.03 | 5026 |
| - Employee Expense Reimbursement | 0.00 | 1,125.87 | 1,125.87 | 5027 |
| - Employee Life/AD&D | 0.00 | 9,006.83 | 9,006.83 | 5028 |
| - Other | 0.00 | 1,622.90 | 1,622.90 | 5029 |
| **Insurance - Trustee Bond** | 0.00 | 7,200.00 | 7,200.00 | 5030 |
| **Insurance - Surety & Fidelity Bonds** | 0.00 | 37,400.00 | 37,400.00 | 5031 |
| **Insurance Workers Comp** | 0.00 | 12,578.00 | 12,578.00 | 5032 |
| - Other | 0.00 | 62,827.96 | 62,827.96 | 5039 |
| **Fees - Payroll Processing** | 0.00 | 8,195.96 | 8,195.96 | 5045 |
| **Fees - Escrow** | 0.00 | 1,221,698.85 | 1,221,698.85 | 5046 |
| - Other | 0.00 | 24,168.64 | 24,168.64 | 5047 |
| **Expenses for Asset Sales** | 0.00 | 48,429.09 | 48,429.09 | 5048 |
| **Rent - Office** | 0.00 | 3,987,347.17 | 3,987,347.17 | 5050 |
| - *Adjustment for Administrative Subtenant Rent Revenue* | 0.00 | (531,078.49) | (531,078.49) | 5050a |
| - Equipment | 0.00 | 1,695.89 | 1,695.89 | 5051 |
| - Warehouse | 20,024.29 | 2,420,656.90 | 2,440,681.19 | 5052 |
| - Bulova | 0.00 | 310,130.75 | 310,130.75 | 5053 |
| - Other | 0.00 | 69,725.61 | 69,725.61 | 5059 |
| **Costs - Vacating 885 Third Avenue** | 0.00 | 20,179.46 | 20,179.46 | 5111 |
| **Telephone and Telegraph** | 0.00 | 360,456.68 | 360,456.68 | 5060 |
| **Communication Fees** | 0.00 | 670,057.02 | 670,057.02 | 5061 |
| **Utilities - Electricity** | 300.82 | 57,387.69 | 57,688.51 | 5070 |
| **Office Supplies & Expense - Maint. & Repairs** | 0.00 | 79,338.86 | 79,338.86 | 5080 |
| - Moving & Storage | 4,886.60 | 524,037.78 | 528,924.38 | 5081 |
| - Postage/Handling/Preparation | 0.00 | 40,961.12 | 40,961.12 | 5082 |
| - Reproduction | 0.00 | 183,889.65 | 183,889.65 | 5083 |
| - Locksmith | 0.00 | 5,811.39 | 5,811.39 | 5084 |
| - Security | 0.00 | 249,897.70 | 249,897.70 | 5085 |
| - Supplies | 0.00 | 3,865.31 | 3,865.31 | 5086 |
| - Temporary Help | 0.00 | 4,588,642.69 | 4,588,642.69 | 5087 |
| - Process Server - Complaint | 0.00 | 244,026.52 | 244,026.52 | 5088 |
| - Other | 0.00 | 36,250.63 | 36,250.63 | 5089 |
| **Taxes** | 0.00 | 555.51 | 555.51 | 5090 |
| **NYC Commercial Rent Tax** | 0.00 | 154,269.47 | 154,269.47 | 5091 |
| **Claims Related Costs - Mailing Costs** | 0.00 | 23,053.28 | 23,053.28 | 5101 |
| - Publication | 0.00 | 163,961.13 | 163,961.13 | 5102 |
| - Supplies | 0.00 | 16,244.58 | 16,244.58 | 5103 |
| - Printing | 0.00 | 2,207.42 | 2,207.42 | 5104 |
| **Court Related Noticing - Postage/Handling/Preparation  *See Note (1) Below** | 0.00 | 0.00 | 0.00 | 5106 |
| - Reproduction | 0.00 | 0.00 | 0.00 | 5107 |
| - Supplies | 0.00 | 0.00 | 0.00 | 5108 |
| **Scanning - Investigation** | 0.00 | 5,189,846.75 | 5,189,846.75 | 5110 |
| **Foreign Research** | 0.00 | 38,975.00 | 38,975.00 | 5112 |
| **Miscellaneous** | 0.00 | 666.91 | 666.91 | 5115 |
| **Hosting Expense** | 30,352.00 | 62,744,565.44 | 62,774,917.44 | 5244 |
| **Sub-total General Admin. Disbursements** | **$55,563.71** | **$88,913,614.72** | **$88,969,178.43** | |

**Professional Fees and Expenses**

| | | | | |
|---|---|---|---|---|
| **Trustee Fees** | 0.00 | 4,377,662.10 | 4,377,662.10 | 5200 |
| **Trustee Expenses** | 0.00 | 2,549.25 | 2,549.25 | 5201 |
| **Trustee Counsel Fees (Baker)** | 5,562,576.70 | 1,317,254,802.61 | 1,322,817,379.31 | 5210 |
| **Trustee Counsel Expenses (Baker)** | 382,004.79 | 19,650,752.72 | 20,032,757.51 | 5211 |
| **Trustee Counsel Fees (Windels)** | 0.00 | 74,974,037.18 | 74,974,037.18 | 5212 |
| **Trustee Counsel Expenses (Windels)** | 0.00 | 740,647.55 | 740,647.55 | 5213 |
| **Special Counsel Fees** | 0.00 | 99,803,587.95 | 99,803,587.95 | 5220 |
| **Special Counsel Expenses** | 0.00 | 15,013,843.52 | 15,013,843.52 | 5221 |
| **Accountant Fees** | 0.00 | 0.00 | 0.00 | 5230 |
| **Accountant Expenses** | 0.00 | 0.00 | 0.00 | 5231 |
| **Consultant Fees** | 1,254,239.50 | 469,719,617.09 | 470,973,856.59 | 5240 |
| **Consultant Expenses  *See Note (1)  Below** | 29,372.71 | 20,795,968.48 | 20,825,341.19 | 5241 |
| **Investment Banker Fees** | 0.00 | 1,050,000.00 | 1,050,000.00 | 5242 |
| **Sales Tax** | 0.00 | 1,774,347.04 | 1,774,347.04 | 5243 |
| **Mediator Fees** | 7,306.20 | 5,050,180.23 | 5,057,486.43 | 5245 |
| **Mediator Expenses** | 2.30 | 14,097.21 | 14,099.51 | 5246 |
| **Receiver Counsel Fees** | 0.00 | 300,000.00 | 300,000.00 | 5260 |
| **Receiver Counsel Expenses** | 0.00 | 6,449.08 | 6,449.08 | 5261 |
| **Receiver's Consultants Fees** | 0.00 | 316,000.00 | 316,000.00 | 5262 |
| **Receiver's Consultants Expenses** | 0.00 | 15,000.00 | 15,000.00 | 5263 |
| **Sub-total Professional Fees and Expenses** | **$7,235,502.20** | **$2,030,859,542.01** | **$2,038,095,044.21** | |
| **Total Administrative Disbursements** | **$7,291,065.91** | **$2,119,773,156.73** | **$2,127,064,222.64** | |

Page 2

* Note (1) See Supporting Schedule on Page 6

**Period Ended September 30, 2021**                                                                                            **Report No. 154**

| CASH DISBURSEMENTS: | Net Change for Period | Prior Period Cumulative | Total Paid | Cumulative Totals | | | Code |
|---|---|---|---|---|---|---|---|
| Claim Related Disbursements | | | | Customer Fund | General Estate | SIPC | |
| Customer - Paid Bank Loan | | $ | $ | $ | | $ | 6021 |
| - Securities - Cash in Lieu *See Note (4) below | 30,000.00 | 14,163,096,395.56 | 14,163,126,395.56 | 13,313,652,983.09 | | 849,473,412.47 | 6022 |
| - Securities - Purchases | | | | | | | 6023 |
| - Indemnification | | | | | | | 6031 |
| - Cash Balance | | | | | | | 6041 |
| Customer - | | | | | | | 6050 |
| Customer - | | | | | | | 6060 |
| Customer - Trustee Journal Entry | | | | | | | |
| per Allocation | | | | | | | 6000 |
| Other - Contractual Commitments | | | | | | | 6111 |
| - Pd. Bank Loan | | | | | | | 6121 |
| - Indemnification | | | | | | | 6131 |
| Other - | | | | | | | 6140 |
| Other - | | | | | | | 6150 |
| Other - | | | | | | | 6160 |
| Other - Trustee Journal Entry | | | | | | | |
| per Allocation | | | | | | | 6100 |
| General Creditor | | | | | | | 6200 |
| | | | | | | | |
| **Sub-total Claim Disbursements** | **$30,000.00** | **$14,163,096,395.56** | **$14,163,126,395.56** | **$13,313,652,983.09** | **$0.00** | **$849,473,412.47** | |
| | | | | | | | |
| Other Disbursements (except investments) | | | | | | | |
| SIPC - Refunds - Recoupment | | | | | | | 6301 |
| - Indemnification | | | | | | | 6310 |
| - Contr. Commitments | | | | | | | 6311 |
| - Paid Bank Loan | | | | | | | 6321 |
| - Subrogation | 0.00 | 247,932,477.71 | 247,932,477.71 | 247,932,477.71 | | | 6322 |
| Other - | | | | | | | 6400 |
| Other - | | | | | | | 6401 |
| Other - | | | | | | | 6402 |
| Other - | | | | | | | 6403 |
| Other - | | | | | | | 6404 |
| | | | | | | | |
| **Sub-total Other Disbursements** | **$0.00** | **$247,932,477.71** | **$247,932,477.71** | **$247,932,477.71** | **$0.00** | **$0.00** | |
| | | | | | | | |
| **Investments by Trustee - Purchases *See Note (2) Below** | **$28,743.78** | **$13,278,524,081.13** | **$13,278,552,824.91** | | | | 1900 |
| | | | | | | | |
| **Sub-total Administrative Disb. - page 2** | **$7,291,065.91** | **$2,119,773,156.73** | **$2,127,064,222.64** | **$0.00** | **$0.00** | **$2,127,064,222.64** | |
| | | | | | | | |
| **Total Disbursements** | **$7,349,809.69** | **$29,809,326,111.13** | **$29,816,675,920.82** | **$13,561,585,460.80** | **$0.00** | **$2,976,537,635.11** | |
| | | | | | | | |
| **Total Receipts less Disbursements** | **($2,611,143.57)** | **$41,916,400.74** | **$39,305,257.17** | **$931,088,721.83** | **$0.00** | **($26,135,454.98)** | |
| | | | | | | | |
| **Ending Cash Balance *See Note (3) Below** | **$39,305,257.17** | | | | | | |

\* Note (2) Two preferred custody accounts and an insured money market account have been established at Citibank for investment purposes and additional investment accounts are maintained at JP Morgan Chase and Goldman Sachs. The Goldman Sachs Account was established in December 2016 in connection with the Chais Settlement. A Broker's account, which was previously established at Morgan Joseph, was closed in January 2012. Since January 20, 2009, $13,278,552,824.91of recovered funds have been transferred into these investment accounts and $12,412,904,815.23 of these funds have subsequently been used for interim distributions to customers with allowed claims and for operations. (See Page 5 for more details).

\* Note (3) The ending cash balance includes a $ 37,911,702.41 balance in the Citibank Business Checking Account and $ 1,393,554.76 in the Citibank Distribution Account.

\* Note (4) The difference between Customer Claim payments of $849,473,412.47 and SIPC Advances of $849,443,412.47 is the result of timing differences between the date the claim was paid and the date of the advance.

Period Ended September 30, 2021                                    Report No. 154

## SUMMARY INFORMATION ON STATUS OF LIQUIDATION

|  | Customer Claimants | Broker/Dealer Claimants | General Estate Claimants |
|---|---|---|---|
| Claims received | 16,521 | 49 | 95 |
| Claims satisfied by distribution of cash and/or securities: |  |  |  |
| a. As part of the transfer in bulk |  |  |  |
| b. On an account by account basis-Fully Satisfied | 1,728 |  |  |
| c. On an account by account basis-Partially Satisfied | 926 |  |  |
|  | 2,654 | - | - |
|  |  |  |  |
| Claims Determined - no claims | 12 |  |  |
| Claims Deemed Determined - pending litigation | 11 |  |  |
| Claims Determined - withdrawn | 417 |  |  |
| Claims Determined but not yet satisfied | 1 |  |  |
| Claims under review | - | 49 | 95 |
| Claims Denied: |  |  |  |
| a. Other Denials for which no objections were filed | 10,320 |  |  |
| b. Denials for which objections were filed: |  |  |  |
| – Trustee's Determinations Affirmed | 3,000 |  |  |
| – Hearing not yet set | 99 |  |  |
| – Set for Hearing | 7 |  |  |
|  | 13,867 | 49 | 95 |

**Filing Date Value**

| Customer name securities distributed |  |
|---|---|
| Customer fund securities distributed | $ |

_(Trustee's Signature)_ Irving H. Picard / by Denis O'Connor                    October 19, 2021
(Trustee's Signature)                                                          (Date)

William Kingsford                                                              October 19, 2021
(Accountant's Signature)                                                       (Date)

Page 4

Period Ended September 30, 2021

Report No. 154

**IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BLMIS, LLC**
**Investment Accounts**

|  | Citibank Preferred Custody Account | | | | Citibank IMMA Account | |
|  | Cash Assets/Mutual Funds (6) | U.S. Treasury Bills (5) | Accrued Interest (5) | Account Balance | Account Balance (6) | Total Citibank |
|---|---|---|---|---|---|---|
| **Balance August 31, 2021** | 400 | 160,009,128 | - | 160,009,528 | 249,647,345 | 409,656,873 |
| Maturing of U.S. Treasury Bills |  |  |  | - |  |  |
| Purchase of U.S. Treasury Bills |  |  |  | - |  |  |
| Sales of Equity Securities |  |  |  | - |  |  |
| Realized Gains (Losses) |  |  |  | - |  |  |
| Unrealized Gain or (Loss) |  | 7,341 |  | 7,341 |  | 7,341 |
| Interest and Dividends Earned | | | | | | |
| Interest |  |  |  | - | 10,260 | 10,260 |
| Dividends |  |  |  | - |  | - |
| Transfer of Funds from an Escrow Account |  |  |  | - |  |  |
| Transfer of Funds to the Citibank IMMA Account |  |  |  | - |  | - |
| Transfer of Funds from the Citibank Operating Account |  |  |  |  |  | - |
| **Balance September 30, 2021** | 400 | 160,016,469 | - | 160,016,869 | 249,657,605 | 409,674,474 |

|  | JP Morgan Chase | | | | Neuberger Berman | | Goldman Sachs | | |
|  | Cash/Escrow Fund (6) | Savings/Commercial (6) | U.S. Treasury Bills (5) | Account Balance | Alternative Investments (6) | Account Balance | Cash Assets/Mutual Funds (6) | Alternative Investments (6) | Account Balance |
|---|---|---|---|---|---|---|---|---|---|
| **Balance August 31, 2021** | - | 451,350,545 | - | 451,350,545 | 46,342 | 46,342 | 1,820,987 | 3,087,978 | 4,908,965 |
| Maturing of U.S. Treasury Bills |  |  |  |  |  |  |  |  |  |
| Purchase of U.S. Treasury Bills |  |  |  |  |  |  |  |  |  |
| Sale of Securities |  |  |  |  |  |  |  |  |  |
| Distributions Received |  |  |  |  |  |  | 83,334 | (83,334) | - |
| Taxes Withheld on Distributions |  |  |  |  |  |  |  |  |  |
| Unrealized Gain or (Loss) |  |  |  |  |  |  |  | 253,305 | 253,305 |
| Annual Custody Fee |  |  |  |  |  |  |  |  | - |
| Interest and Dividends Earned |  | 18,415 |  | 18,415 |  |  | 69 |  | 69 |
| Transfer of Funds to the Citibank Operating Account |  |  |  |  |  |  |  |  |  |
| **Balance September 30, 2021** | - | 451,368,960 | - | 451,368,960 | 46,342 | 46,342 | 1,904,390 | 3,257,949 | 5,162,339 |

Page 5

* Note (5) The summation of U.S. Treasury Bills is $160,016,469.

* Note (6) The summation of these short-term investments, money market funds, savings accounts, mutual fund accounts and other investments, including alternative investments is $706,235,646.

**IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BLMIS, LLC**
**Consultant Expenses for Court Related Noticing and Interim Distributions**

|  | Net Change for Period | Prior Period Cumulative | Cumulative Total Paid |
|---|---|---|---|
| Postage / Handling / Preparation | 0.00 | 544,869.02 | 544,869.02 |
| Printing | 0.00 | 44,945.40 | 44,945.40 |
| Reproduction Costs | 0.00 | 762,418.30 | 762,418.30 |
| Supplies | 0.00 | 100,129.32 | 100,129.32 |
| **Total  *See Note Below** | **$0.00** | **$1,452,362.04** | **$1,452,362.04** |

**Page 6**

*Note: All of the expenses above were incurred by consultants in connection with court related noticing procedures and Interim Distributions, which are included in the Consultant Expenses line (Account #5241) on Page 2 of the SIPC Form 17.

# EXHIBIT B

## SIPC v. BLMIS

Case No. 08-01789 (CGM)

### ACTIVE GOOD FAITH CASES[1]

| APN | DEFENDANT(S) | CASE STATUS |
|---|---|---|
| 10-04341 | Marden, et al. | Settled in principle |
| 10-04343 | Patrice Auld, et al. | Settled in principle |
| 10-04348 | Marden Family Limited Partnership, et al. | Settled in principle |
| 10-04352 | RAR Entrepreneurial Fund LTD, et al. | Case pending in S.D.N.Y.[2] |
| 10-04362 | Sage Associates, et al. | Case pending in S.D.N.Y.[2] |
| 10-04384 | Lanx BM Investments, LLC, et al. | Settled in principle |
| 10-04394 | Frederic Z. Konigsberg, et al. | |
| 10-04400 | Sage Realty, et al. | Case pending in S.D.N.Y.[2] |
| 10-04438 | Estate of Seymour Epstein, et al. | Appeal pending in S.D.N.Y.[3] |
| 10-04468 | Ken-Wen Family Limited Partnership, et al. | |
| 10-04492 | Stuart Leventhal 2001 Irrevocable Trust, et al. | |
| 10-04503 | Judd Robbins | |
| 10-04538 | James B. Pinto Revocable Trust U/A dtd 12/1/03, et al. | |
| 10-04539 | The Gerald and Barbara Keller Family Trust, et al. | Appeal pending in S.D.N.Y.[3] |
| 10-04562 | Robert F. Ferber | |
| 10-04570 | Jacob M. Dick Rev Living Trust DTD 4/6/01, et al. | Motion to Withdraw the Reference pending in S.D.N.Y.[4] |
| 10-04610 | The Whitman Partnership, et al. | |

---

[1] Three cases were settled and the parties entered into settlement agreements during the Report Period. *See Picard v. Richard G. Eaton*, Adv. Pro. No. 10-05377; *Picard v. Gunther K. Unflat*, Adv. Pro. No. 10-05420; *Picard v. Jaffe Family Investment Partnership, et al.*, Adv. Pro. No. 10-04655. The Bankruptcy Court closed the *Jaffe* and *Eaton* cases on October 6, 2021 and October 22, 2021, respectively.

[2] *See Picard v. Sage Associates*, No. 20-cv-10057 (AJN) (S.D.N.Y.); *Picard v. Sage Realty*, No. 20-cv-10109 (AJN) (S.D.N.Y.); *Picard v. RAR Entrepreneurial Fund LTD*, No. 20-cv-01029 (JMF) (S.D.N.Y.); *Picard v. Zieses Investment Partnership*, No. 20-cv-02872 (VSB) (S.D.N.Y.).

[3] *See Picard v. Estate of Seymour Epstein*, No. 21-cv-02334 (CM) (S.D.N.Y.); *Picard v. The Gerald and Barbara Keller Family Trust*, No. 21-cv-08678 (JPO) (S.D.N.Y.).

[4] *See Picard v. Jacob M. Dick Rev Living Trust DTD 4/6/01*, No. 21-cv-00706 (JPO) (S.D.N.Y.); *Picard v. Goodman*, No. 20-cv-04767 (MKV) (S.D.N.Y.); *Picard v. Goodman*, No. 21-cv-00907 (VSB) (S.D.N.Y.); *Picard v. Estate of James M. Goodman*, No. 21-cv-01763 (ER) (S.D.N.Y.).

| APN | DEFENDANT(S) | CASE STATUS |
|---|---|---|
| 10-04631 | 151797 Canada Inc., Judith Pencer, Samuel Pencer, et al. | |
| 10-04667 | David Gross, et al. | |
| 10-04669 | Zieses Investment Partnership, et al. | Case pending in S.D.N.Y.[2] |
| 10-04702 | S&L Partnership, a New York partnership, et al. | Settled in principle |
| 10-04709 | Andrew M. Goodman | Motion to Withdraw the Reference pending in S.D.N.Y.[4] |
| 10-04750 | Samdia Family L.P., a Delaware Limited Partnership, et al. | Settled in principle |
| 10-04752 | Kuntzman Family LLC, et al. | |
| 10-04762 | James M. Goodman | Motion to Withdraw the Reference pending in S.D.N.Y.[4] |
| 10-04889 | Estate of Robert Shervyn Savin, et al. | |
| 10-04912 | Harry Smith Revocable Living Trust, et al. | |
| 10-04986 | Sharon Knee | |
| 10-05079 | Estate of James M. Goodman, et al. | Motion to Withdraw the Reference pending in S.D.N.Y.[4] |
| 10-05083 | The S. James Coppersmith Charitable Remainder Unitrust, et al. | |
| 10-05118 | Charlotte M. Marden | Settled in principle |
| 10-05124 | The Lawrence J. Ryan and Theresa R. Ryan Revocable Living Trust, et al. | Settled in principle |
| 10-05128 | JABA Associates LP, et al. | Appeal pending in Second Circuit[5] |
| 10-05144 | Estate of Bernard J. Kessel, et al. | |
| 10-05168 | Bernard Marden Profit Sharing Plan,etc.,et al. | Settled in principle |
| 10-05169 | Fairfield Pagma Associates,etc.,et al. | |
| 10-05184 | Laura Ann Smith Revocable Living Trust, et al | |
| 10-05312 | Doron Tavlin Trust U/A 2/4/91, et al. | |
| 10-05380 | Srione, LLC, an Idaho limited liability company, et al. | |
| 10-05394 | Glantz | |
| **Total: 40** | | |

[5] *See JABA Associates LP v. Picard*, 21-872 (2d Cir.).

# EXHIBIT C

### SIPC v. BLMIS

Case No. 08-01789 (CGM)

### ACTIVE BAD FAITH/FEEDER FUND CASES

| APN | DEFENDANT(S) | TYPE |
|---|---|---|
| 10-05421 | Avellino, et al. | Bad Faith |
| 09-01239 | Fairfield Investment Fund Ltd., et al. | Feeder Fund |
| 09-01364 | HSBC Bank PLC, et al. | Feeder Fund |
| 10-04285 | UBS AG, et al. | Feeder Fund |
| 10-04330 | Square One Fund Ltd, et al. | Feeder Fund |
| 10-04457 | Equity Trading Portfolio Ltd., et al. | Feeder Fund |
| 10-04471 | Citrus Investment Holdings Ltd. | Feeder Fund |
| 10-05120 | Oreades SICV, et al. | Feeder Fund |
| 10-05286 | Legacy Capital Ltd., et al.[1] | Feeder Fund |
| 10-05311 | UBS AG, et al. | Feeder Fund |
| **Total: 10** | | |

---

[1] *Picard v. Legacy Capital Ltd., et al.*, Adv. Pro. No. 10-05286 (Bankr. S.D.N.Y.) (CGM), No. 20-1334 (2d Cir.).

# EXHIBIT D

## SIPC v. BLMIS
Case No. 08-01789 (CGM)

## ACTIVE SUBSEQUENT TRANSFEREE CASES

| APN | DEFENDANT(S) |
|---|---|
| 10-05345 | Citibank, N.A., et al.[1] |
| 10-05346 | Merrill Lynch International |
| 10-05348 | Nomura International PLC |
| 10-05351 | Banco Bilbao Vizcaya Argentaria, S.A. |
| 10-05353 | Natixis, et al. |
| 10-05354 | ABN AMRO Bank, N.V.[2] |
| 10-05355 | ABN AMRO Bank (Ireland) Ltd, et al.[3] |
| 11-02149 | Banque Syz & Co., SA |
| 11-02493 | Abu Dhabi Investment Authority |
| 11-02538 | Quilvest Finance Ltd. |
| 11-02539 | Meritz Fire & Insurance Co. Ltd. |
| 11-02540 | Lion Global Investors Limited |
| 11-02541 | First Gulf Bank |
| 11-02542 | Parson Finance Panama S.A. |
| 11-02551 | Delta National Bank and Trust Company |
| 11-02553 | Unifortune Asset Management SGR SpA, et al. |
| 11-02554 | National Bank of Kuwait S.A.K. |
| 11-02568 | Cathay Life Insurance Co. LTD. |
| 11-02569 | Barclays Bank (Suisse) S.A. et al. |
| 11-02570 | Banca Carige S.P.A. |
| 11-02572 | Korea Exchange Bank |
| 11-02573 | The Sumitomo Trust and Banking Co., Ltd. |
| 11-02730 | Atlantic Security Bank |
| 11-02731 | Trincaster Corporation |
| 11-02732 | Bureau of Labor Insurance |
| 11-02733 | Naidot & Co. |
| 11-02758 | Caceis Bank Luxembourg, et al. |
| 11-02759 | Nomura International PLC |
| 11-02760 | ABN Amro Bank N.V., et al. |
| 11-02761 | KBC Investments Limited |
| 11-02762 | Lighthouse Investment Partners LLC, et al. |
| 11-02763 | Inteligo Bank LTD. |

[1] *Picard v. Citibank, N.A.,* Adv. Pro. No. 10-05345 (Bankr. S.D.N.Y.) (CGM), No. 20-1333 (2d Cir.).
[2] *Picard v. ABN AMRO Bank, N.A.,* Adv. Pro. No. 10-05354 (Bankr. S.D.N.Y.) (CGM), No. 20-2291 (2d Cir.).
[3] *Picard v. ABN AMRO Bank (Ireland) Ltd. (f/k/a Fortis Prime Fund Solutions Bank (Ireland) Limited),* Adv. Pro. No. 10-05355 (Bankr. S.D.N.Y.) (CGM), No. 20-1898 (2d Cir.).

| APN | DEFENDANT(S) |
|---|---|
| 11-02784 | Somers Dublin Limited et al. |
| 11-02796 | BNP Paribas Arbitrage SNC |
| 11-02910 | Merrill Lynch Bank (Suisse) SA |
| 11-02922 | Bank Julius Baer & Co. Ltd. |
| 11-02923 | Falcon Private Bank Ltd. |
| 11-02925 | Credit Suisse AG et al. |
| 11-02929 | LGT Bank in Liechtenstein Ltd. |
| 12-01002 | The Public Institution For Social Security |
| 12-01004 | Fullerton Capital PTE Ltd. |
| 12-01005 | SICO LIMITED |
| 12-01019 | Banco Itau Europa Luxembourg S.A., et al. |
| 12-01021 | Grosvenor Investment Management Limited |
| 12-01022 | Credit Agricole (Suisse) SA |
| 12-01023 | Arden Asset Management, et al. |
| 12-01046 | SNS Bank N.V. et al. |
| 12-01047 | KOCH INDUSTRIES, INC., |
| 12-01048 | Banco General S.A. et al. |
| 12-01194 | Kookmin Bank |
| 12-01195 | Six Sis AG |
| 12-01202 | Bank Vontobel AG et. al. |
| 12-01205 | Multi Strategy Fund Ltd., et al. |
| 12-01207 | Lloyds TSB Bank PLC |
| 12-01209 | BSI AG |
| 12-01210 | Schroder & Co. |
| 12-01211 | Union Securities Investment Trust Co., Ltd., et al. |
| 12-01216 | Bank Hapoalim B.M. |
| 12-01273 | Mistral (SPC) |
| 12-01278 | Zephyros Limited |
| 12-01512 | ZCM Asset Holding Co (Bermuda) LLC |
| 12-01565 | Standard Chartered Financial Services (Luxembourg) SA, et al. |
| 12-01566 | UKFP (Asia) Nominees |
| 12-01576 | BNP Paribas S.A. et al |
| 12-01577 | UBS Deutschland AG, et al. |
| 12-01669 | Barfield Nominees Limited et al |
| 12-01670 | Credit Agricole Corporate and Investment Bank et al. |
| 12-01676 | Clariden Leu AG |
| 12-01677 | Societe General Private Banking (Suisse) SA, et al. |
| 12-01680 | Intesa Sanpaolo SpA, et al. |
| 12-01690 | EFG Bank S.A., et al. |
| 12-01693 | Banque Lombard Odier & Cie |
| 12-01694 | Banque Cantonale Vaudoise |
| 12-01695 | Bordier & Cie |
| 12-01697 | ABN AMRO Fund Services (Isle of Man) Nominees Limited, et al. |
| 12-01698 | Banque International a Luxembourg SA, et al. |

| APN | DEFENDANT(S) |
|---|---|
| 12-01699 | Royal Bank of Canada, et al. |
| 12-01700 | Caprice International Group Inc. et al. |
| 12-01701 | RD Trust, et al. (Piedrahita) |
| 20-01316 | Montpellier, et al. |
| 21-01190 | The Hebrew University of Jerusalem, et al. |
| **Total: 81** | |