**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (CGM) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 12-01566 (CGM) |
| v. | |
| UKFP (ASIA) NOMINEES LIMITED, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ................................................................................................... 3

ARGUMENT ....................................................................................................... 4

I.    THE COMPLAINT MUST BE DISMISSED PURSUANT TO RULE 12(B)(2)
      FOR LACK OF PERSONAL JURISDICTION. ................................................ 4

      A.   The Trustee Fails to Allege that this Court Has General Jurisdiction Over
           UKFP. ................................................................................................ 6

      B.   The Trustee Fails to Establish Specific Jurisdiction Over UKFP. ............ 6

           1.   Fairfield Sentry's Contacts with New York Are Insufficient to
                Establish Personal Jurisdiction Over UKFP. ................................ 7

           2.   The Foreseeability of Fairfield Sentry's Investments Cannot Be
                Imputed to UKFP to Establish Jurisdiction Over UKFP. ............. 9

           3.   The Subscription Agreement Does Not Subject UKFP to Personal
                Jurisdiction. .......................................................................... 11

           4.   The Trustee's Remaining Jurisdictional Allegations Do Not
                Establish Specific Jurisdiction. ............................................... 13

           5.   The Jurisdictional Allegations in this Case Are Distinguishable
                from this Court's Recent Decisions Involving Other Subsequent
                Transferees. ........................................................................... 14

II.   THE TRUSTEE'S CLAIMS TO RECOVER ALLEGED SUBSEQUENT
      TRANSFERS TO UKFP ARE BARRED BY SECTION 546(E) OF THE
      BANKRUPTCY CODE ........................................................................... 16

      A.   The Fairfield Sentry Initial Transfers Were Made by and to an Entity
           Covered Under Section 546(e) ............................................................ 17

           1.   The Fairfield Sentry Initial Transfers Were Made by a
                Stockbroker. .......................................................................... 17

           2.   The Fairfield Sentry Initial Transfers Were Made to or for the
                Benefit of a Financial Institution. ........................................... 18

      B.   The Fairfield Sentry Initial Transfers Were Settlement Payments and
           Made in Connection with a Securities Contract. ................................... 19

           1.   The Fairfield Sentry Initial Transfers Were "Settlement Payments"
                and Made "in Connection with" the Securities Contract Between
                BLMIS and Fairfield Sentry. ................................................... 19

           2.   The Fairfield Sentry Initial Transfers Were Made "in Connection
                with" the Securities Contract Between Fairfield Sentry and UKFP. ....... 20

**TABLE OF CONTENTS**
(continued)

3.    The Conclusion that the Fairfield Sentry Initial Transfers Were
Made in Connection with a Securities Contract Does Not Change
even if the Initial Transferee, Fairfield Sentry, Allegedly Knew of
Madoff's Fraud. ...................................................................................... 22

CONCLUSION................................................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Am. Boat Co., LLC*,
2012 WL 527209 (S.D.N.Y. Feb. 17, 2012) ................................................................ 11

*In re Amaranth Natural Gas Commodities Litig.*,
587 F. Supp. 2d 513 (S.D.N.Y. 2008) ......................................................................... 8

*In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Citibank, N.A.)*,
12 F.4th 171 (2d Cir. 2021) ....................................................................................... 22

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2007) ....................................................................................... 7

*Brown v. Lockheed Martin Corp.*,
814 F.3d 619 (2d Cir. 2016) ....................................................................................... 5

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .................................................................................................... 7

*Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
651 F.3d 329 (2d Cir. 2011) ....................................................................................... 22

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ................................................................................................. 5, 6

*Dean St. Cap. Advisors LLC v. Otoka Energy Corp.*,
2017 WL 476720 (S.D.N.Y. Feb. 2, 2017) ............................................................... 13

*Fabius v. Gardère*,
2021 WL 6797293 (E.D.N.Y. Sept. 22, 2021) .......................................................... 13

*Fairfield III*, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) .............................. 18

*Fairfield Sentry Limited (In Liquidation) v. Citibank NA London*,
No. 19-cv-03911-VSB 24 (S.D.N.Y. July 21, 2021), ECF No. 440 ............... 1, 8, 21

*In re Fairfield Sentry Ltd.*,
2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) .......................................... 12, 18

*Fairfield Sentry Ltd. (In Liquidation) v. Migani*,
[2014] UKPC 9 .......................................................................................................... 21

*Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*,
141 S. Ct. 1017 (2021) ................................................................................................ 9

*Hanson v. Denckla,*
   357 U.S. 235 (1958)........................................................................................................7

*Hau Yin To v. HSBC Holds., PLC,*
   2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd* 700 F. App'x 66 (2d Cir.
   2017) ................................................................................................................11, 14

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
   466 U.S. 408 (1984)...................................................................................................7, 9

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.,*
   84 F.3d 560 (2d Cir. 1996)............................................................................................5

*New Hampshire v. Maine,*
   532 U.S. 742 (2001)..............................................................................................12, 19

*Picard v. BNP Paribas S.A. (Secs. Inv. Protection Corp. v. Bernard L. Madoff Inv.
   Secs. LLC),*
   594 B.R. 167 (Bankr. S.D.N.Y. 2018) ..........................................................................5

*Picard v. Chais (In re Bernard L. Madoff Inv. Sec. LLC),*
   440 B.R. 274 (Bankr. S.D.N.Y. 2010) ..........................................................................5

*Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC),*
   773 F.3d 411 (2d Cir. 2014).............................................................16, 19, 20, 22

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC,*
   917 F.3d 85 (2d Cir. 2019)............................................................................................4

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
   No. 12 MC 115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ........................20, 21, 22

*Sec. Inv'r Prot. SIPA Liquidation Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
   480 B.R. 501 (Bankr. S.D.N.Y. 2012) ....................................................................9, 10

*Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.),*
   337 B.R. 791 (Bankr. S.D.N.Y. 2005) ........................................................................23

*SIPC v. Bernard L. Madoff Inv. Sec. LLC,*
   476 B.R. 715 (S.D.N.Y. 2012), *aff'd sub nom. SIPC v. Fishman*, 773 F.3d 411
   (2d Cir. 2014)..............................................................................................................17

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Fairfield Inv. Fund Ltd.),*
   2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) (Morris, J.) ................16, 17, 18

*SPV Osus Ltd. v. UBS AG,*
   882 F.3d 333 (2d Cir. 2018)..............................................................................4, 5, 11

iv

*Steinberg v. A Analyst Ltd.*,
   2009 WL 838989 (S.D. Fla. Mar. 26, 2009) ..................................................................8

*Suber v. VVP Servs., LLC*,
   2021 WL 4429237 (S.D.N.Y. Sept. 27, 2021) ...............................................................10

*Taylor v. Sturgell*,
   553 U.S. 880 (2008) ................................................................................................12, 19

*Tymoshenko v. Firtash*,
   2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013) ...............................................................10

*Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*,
   477 F. Supp. 3d 241 (S.D.N.Y. 2020) ...........................................................................13

*Walden v. Fiore*,
   571 U.S. 277 (2014) .................................................................................................5, 8, 9

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) ........................................................................................................5

*Yak v. Biggerpockets, L.L.C.*,
   2022 WL 67740 (2d Cir. Jan. 7, 2022) .........................................................................11

**Statutes**

11 U.S.C. § 101(22) ...............................................................................................................17

11 U.S.C. § 101(22)(A) ..........................................................................................................18

11 U.S.C. § 101(53A) .............................................................................................................17

11 U.S.C. § 741(7)(A)(i) .........................................................................................................20

11 U.S.C. § 544 .........................................................................................................................4

11 U.S.C. § 546(e) ........................................................................................................... *passim*

11 U.S.C. § 548(a)(1)(A) ..................................................................................................16, 17

11 U.S.C. § 550 .........................................................................................................................4

11 U.S.C. § 550(a) ....................................................................................................................3

11 U.S.C. § 551 ......................................................................................................................3, 4

N.Y. C.P.L.R. § 302 .................................................................................................................7

N.Y. D.C.D. § 278 ...................................................................................................................3

Securities Investor Protection Act (SIPA) § 78fff-2(c)(3)...........................................................3, 4

**Other Authorities**

Fed. R. Bankr. P. 7004(f)...............................................................................................5

Fed. R. Bankr. P. 7012(b) .............................................................................................1

Fed. R. Civ. P. 12(b)(2)......................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)..................................................................................................1

Defendant UKFP (Asia) Nominees Limited ("UKFP" or "Defendant"), by its undersigned counsel, respectfully submits this memorandum of law, together with the accompanying declaration of Joaquin M. C de Baca (the "C de Baca Declaration"), in support of its motion to dismiss the Complaint, ECF No. 1 (the "Complaint")[1] filed on April 26, 2012, by plaintiff Irving H. Picard, Trustee (the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated estate of Bernard L. Madoff, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), made applicable here by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.

## PRELIMINARY STATEMENT

The Trustee has asserted a single claim against UKFP, seeking to recover approximately $5.18 million in purported BLMIS customer property that UKFP allegedly subsequently received from Fairfield Sentry Limited ("Fairfield Sentry"). The Trustee does not allege that UKFP was a BLMIS customer. Instead, the Trustee's claim is predicated on the allegedly avoidable initial transfers from BLMIS to Fairfield Sentry (the "Fairfield Sentry Initial Transfers"). In pursuing his claim, the Trustee fails to plead that the Court has personal jurisdiction over UKFP and also disregards the statutory safe harbor under Section 546(e) of Title 11 of the United States Code (the "Bankruptcy Code"), either of which is a sufficient basis to dismiss the Complaint.

As a threshold matter, the Complaint must be dismissed pursuant to Rule 12(b)(2) because the Trustee fails to make a *prima facie* showing to support the exercise of personal jurisdiction over UKFP. The Trustee has not and cannot allege that UKFP had any meaningful contacts with

---

[1] The Stipulation and Order entered March 15, 2022, ECF No. 79, dismissed the Trustee's claims as to seven alleged subsequent transfers identified therein, reducing the amount sought by the Trustee by $2,829,858. The Trustee did not file an amended complaint reflecting this change. This memorandum refers to the Complaint as originally filed, except for the dismissed subsequent transfers. Capitalized terms used herein but not defined shall have the meaning ascribed to those terms in the Complaint. Unless otherwise noted, all docket citations refer to Adv. Proc. No. 12-01566 (CGM).

New York and instead relies on Fairfield Sentry's contacts with New York and UKFP's alleged knowledge of such contacts to establish jurisdiction. However, controlling law makes clear that a third party's (here, Fairfield Sentry's) connection to the forum state cannot be used to establish jurisdiction over a defendant; thus, the foreseeability of Fairfield Sentry's contacts with BLMIS in New York cannot be imputed to UKFP. Furthermore, the alleged subscription agreement between UKFP and Fairfield Sentry does not subject UKFP to specific jurisdiction because, among other things, (1) forum selection clauses do not confer specific jurisdiction over a nonresident defendant such as UKFP, an entity organized under the laws of the British Virgin Islands, (2) this Court has already held that the subscription agreement does not provide a basis for jurisdiction when the suit is not one "with respect to" the subscription agreement, (3) the Trustee is not a party to or an intended third-party beneficiary of the agreement, and (4) the allegation is made "upon information and belief," which is insufficient. Finally, the Trustee's sparse other jurisdictional allegations are conclusory at best and are insufficient to satisfy the Trustee's burden of making a *prima facie* showing of personal jurisdiction.

Even assuming *arguendo* that this Court has jurisdiction over UKFP, the Trustee's claim must still be dismissed because it is barred by Section 546(e) of the Bankruptcy Code. Section 546(e) prohibits the Trustee from exercising avoidance powers with respect to transfers that were either made by or to certain specified entities (such as stockbrokers and financial institutions) and that were either "settlement payment[s]" or were made in "connection with a securities contract." 11 U.S.C. § 546(e). As discussed below, the alleged initial transfers from BLMIS to Fairfield Sentry fall squarely within Section 546(e)'s safe harbor, barring the Trustee from recovering from UKFP on account of such transfers. Despite the statutory safe harbor, and despite the Trustee's failure to allege that UKFP had any knowledge of the Madoff/BLMIS Ponzi scheme, the Trustee

seeks to recover transfers as far back as 2003, which, if allowed, would undermine the certainty and finality in securities markets Congress intended to protect. For these reasons, and as explained further below, UKFP respectfully requests that the Complaint be dismissed in its entirety with prejudice.

## BACKGROUND

On April 26, 2012, the Trustee commenced this adversary proceeding to recover transfers that UKFP allegedly received not from BLMIS itself, but instead from a foreign investment fund (Fairfield Sentry) that invested in BLMIS. In his single-count Complaint, the Trustee seeks to recover $8,012,183 in alleged subsequent transfers of "Customer Property" that was purportedly transferred from BLMIS to Fairfield Sentry, then transferred from Fairfield Sentry to UKFP (the "Fairfield Sentry Subsequent Transfers"). *See* Compl. ¶¶ 2, 41, Exhibit C. The Complaint alleges that the Fairfield Sentry Subsequent Transfers are recoverable pursuant to Sections 550(a) and 551 of the Bankruptcy Code, Section 278 of the New York Debtor and Creditor Law (the "NYDCL"), and Section 78fff-2(c)(3) of the Securities Investor Protection Act ("SIPA"). Compl. ¶ 47. Notably, the Trustee does *not* allege that UKFP knew about or was willfully blind to the Madoff/BLMIS Ponzi scheme or that UKFP received the alleged subsequent transfers from Fairfield Sentry in bad faith.

Fairfield Sentry is a hedge fund that is organized under the laws of the British Virgin Islands. *See* Compl. ¶ 2. Fairfield Sentry is currently in liquidation in the British Virgin Islands. *See id.* UKFP is organized under the laws of the British Virgin Islands, and its principal place of business is in Hong Kong. Compl. ¶ 22. UKFP is not alleged to have been a BLMIS customer but rather an investor in Fairfield Sentry. Compl. ¶ 2. Specifically, the Trustee alleges that UKFP made its investment in Fairfield Sentry by wiring funds to Fairfield Sentry through an unnamed bank in New York. Compl. ¶ 7. The Trustee further alleges that Fairfield Sentry "subsequently

transferred directly or indirectly to" UKFP funds that were previously transferred by BLMIS to Fairfield Sentry.  Compl. ¶ 34.

The Trustee alleges that the payments to UKFP were part of approximately $3 billion that BLMIS paid to Fairfield Sentry over six years prior to the Filing Date.  Compl. ¶ 36.  In an adversary proceeding filed in the U.S. Bankruptcy Court for the Southern District of New York (the "Court"), *Picard v. Fairfield Sentry Ltd.,* Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. 2009) (the "Fairfield Action")*,* the Trustee claimed that the transfers from BLMIS to Fairfield Sentry were "avoidable and recoverable under sections 544, 550, and 551 of the Bankruptcy Code, §§ 273-279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3)." Compl. ¶¶ 35-38.

Following the filing of the Trustee's Complaint, UKFP, in conjunction with the other alleged subsequent transfer defendants, moved to dismiss this action on the grounds that, among other things, the Trustee's claim is an improper extraterritorial application of the Bankruptcy Code. By decision dated March 3, 2017, the Court granted the motion to dismiss based on extraterritoriality, and the instant action was dismissed.  *See* ECF No. 65.  By decision dated February 25, 2019, *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85 (2d Cir. 2019), the Second Circuit reversed the Court's decision.  Following the denial of a petition for writ of certiorari to the U.S. Supreme Court in June 2020, the Second Circuit issued its mandate vacating the Court's judgment, and the case returned to this Court.  *See* ECF No. 74.

## ARGUMENT

### I.    The Complaint Must Be Dismissed Pursuant to Rule 12(b)(2) for Lack of Personal Jurisdiction.

The Trustee bears the burden of making a *prima facie* showing that this Court has personal jurisdiction over UKFP.  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018);

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). The Complaint's sparse and conclusory allegations regarding UKFP's alleged contacts with New York are insufficient to satisfy the Trustee's burden.

A bankruptcy court may exercise personal jurisdiction over a defendant in a proceeding arising in or related to a case under the Bankruptcy Code if doing so is consistent with due process under the U.S. Constitution. Fed. R. Bankr. P. 7004(f); *Picard v. Chais (In re Bernard L. Madoff Inv. Sec. LLC)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010). To exercise personal jurisdiction over a nonresident defendant, due process requires that the plaintiff allege that: (1) "a defendant has 'certain minimum contacts' with the relevant forum;" and (2) "the exercise of jurisdiction is reasonable in the circumstances." *Osus,* 882 F.3d at 343 (citing *In re Terrorist Attacks on Sept. 11, 2001,* 714 F.3d 659, 674 (2d Cir. 2013) (internal citation and quotation marks omitted)). In other words, due process requires "that the defendant's conduct and connection with the forum . . . are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

To subject UKFP to general jurisdiction, the Trustee must establish that UKFP is "at home" in this forum. *Daimler AG v. Bauman,* 571 U.S. 117, 136-37 (2014). Aside from exceptional circumstances, a defendant is subject to general jurisdiction only in its place of incorporation or where it maintains its principal place of business. *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016).

To be subject to specific jurisdiction, "[t]he defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Further, the Trustee must establish the Court's jurisdiction over UKFP with respect to each individual alleged Fairfield Sentry Subsequent Transfer that he seeks to recover. *See Picard v. BNP Paribas*

5

*S.A. (Secs. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC),* 594 B.R. 167, 190 (Bankr.

S.D.N.Y. 2018) ("Each transfer is a separate claim . . . and the Trustee must establish the court's

jurisdiction with respect to each claim asserted.") (internal punctuation omitted).

For the reasons described below, the Trustee fails to make a *prima facie* showing to support

the exercise of personal jurisdiction over UKFP, so the Complaint must be dismissed pursuant to

Rule 12(b)(2).

### A.     The Trustee Fails to Allege that this Court Has General Jurisdiction Over UKFP.

General jurisdiction over a defendant exists only when the defendant is "at home" in the

forum. *Daimler,* 571 U.S. at 136-37. The Trustee alleges that UKFP is a British Virgin Islands

company and maintains its principal place of business in Hong Kong. *See* Compl. ¶ 22

("Defendant UKFP is a BVI company with its registered office located at Beaufort House, P.O.

Box 438, Road Town, Tortola, BVI. Defendant UKFP maintains its principal place of business at

Level 28, Three Pacific Place, 1 Queen's Road East, Hong Kong."). Thus, UKFP is not "at home"

in New York, and the Court cannot exercise general jurisdiction over it.

Because the Trustee does not allege that the Court has general jurisdiction over UKFP and

pleads no facts supporting such an argument, he must plead facts supporting the exercise of specific

jurisdiction over UKFP. *See Daimler,* 571 U.S. at 136-37 (finding that defendant's limited

contacts with forum state "hardly render[ed] it at home there" and that *Goodyear Dunlop Tires*

*Oper. v. Brown* "made clear that only a limited set of affiliations with a forum will render a

defendant amenable to all-purpose jurisdiction there."). The Trustee has failed to do so.

### B.     The Trustee Fails to Establish Specific Jurisdiction Over UKFP.

Specific jurisdiction over a nonresident defendant is consistent with due process only if:

(1) the defendant "purposefully availed itself of the privilege of conducting activities within the

forum State, thus invoking the benefits and protections of its laws," *Hanson v. Denckla,* 357 U.S. 235, 253 (1958); (2) the plaintiff's claim "arise[s] out of or relate[s] to the foreign corporation's activities in the forum State," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); and (3) the exercise of jurisdiction is reasonable under the circumstances. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-78 (1985). To determine the existence of jurisdiction under N.Y. C.P.L.R. § 302 (New York's long-arm statute), "a court must decide (1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action arises from such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (internal quotations and alteration omitted). Courts look to "the totality of the defendant's activities within the forum" to determine whether a defendant has "transact[ed] business" in such a way that it constitutes "purposeful activity." *Best Van Lines*, 490 F.3d at 246 (quoting *Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortgage Investors,* 510 F.2d 870, 873 (2d Cir. 1975) (internal quotation marks and citation omitted)).

Well aware that UKFP lacks any meaningful contacts with New York, the Trustee's jurisdictional allegations instead focus almost exclusively on UKFP's purported contacts with Fairfield Sentry. However, as discussed below, these contacts are grossly insufficient to establish personal jurisdiction over UKFP.

> 1.  Fairfield Sentry's Contacts with New York Are Insufficient to Establish Personal Jurisdiction Over UKFP.

Because BLMIS did not conduct any business with UKFP directly, the Trustee attempts to base jurisdiction over UKFP on its scant alleged interactions with Fairfield Sentry, including UKFP's purported direction of funds to be invested with BLMIS through Fairfield Sentry and UKFP's purported withdrawal of funds from Fairfield Sentry. Compl. ¶ 6. However, Fairfield

Sentry's alleged contacts with New York are insufficient to establish personal jurisdiction over UKFP.

Rather, to give rise to specific jurisdiction, a defendant's relationship with the forum and the claim at issue "must arise out of contacts that the 'defendant *himself*' creates with the forum." *Walden,* 571 U.S. at 284. Accordingly, various courts have held that a court cannot assert jurisdiction over a foreign defendant based solely on that defendant's ownership of shares in a fund that either engaged in New York-based conduct or was based in New York. *See Steinberg v. A Analyst Ltd.*, 2009 WL 838989, at *5 (S.D. Fla. Mar. 26, 2009) (refusing to find jurisdiction over defendant based on facts that: it was an investor in funds managed in New York; had assets, records, and accounts in New York; and invested in U.S. securities on U.S. exchanges); *In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 536-37 (S.D.N.Y. 2008) (rejecting assertion of specific jurisdiction where "only connection between Amaranth International and the forum is that the company invested in a foreign hedge fund located in the Cayman Islands but managed by plaintiffs.").

Moreover, as the liquidators for Fairfield Sentry (the "Fairfield Liquidators") made clear, the redemption transfers—*i.e.*, the alleged Fairfield Sentry Subsequent Transfers—occurred entirely outside the United States.[2] Thus, even if Fairfield Sentry's alleged contacts with New York were relevant, it is undisputed that the very redemptions at issue here have no connection to New York. Accordingly, the Trustee has not met his burden of pleading a factual basis for this

---

[2] "***The redemption transfers at issue here were purely foreign.*** The Citco Administrator (a foreign entity) managed the share register and processed the redemption requests abroad, and the Funds (also foreign entities) transferred redemption payments to Defendants (also chiefly foreign entities). ***[E]very relevant component of the transactions at issue here occurred outside the territorial jurisdiction of the United States.***" Pl.-Appellants' Opening Br. for Second-Round Appeal, *Fairfield Sentry Limited (In Liquidation) v. Citibank NA London*, No. 19-cv-03911-VSB 24 (S.D.N.Y. July 21, 2021), ECF No. 440, at 24 (emphasis added).

Court to exercise specific jurisdiction over UKFP with respect to each of the alleged Fairfield Sentry Subsequent Transfers.

        2.    <u>The Foreseeability of Fairfield Sentry's Investments Cannot Be Imputed to UKFP to Establish Jurisdiction Over UKFP.</u>

In a similar vein, the Trustee also erroneously implies that the foreseeability of Fairfield Sentry's contacts with BLMIS in New York should be imputed to UKFP. *See* Compl. ¶ 6 ("Defendant UKFP . . . knowingly direct[ed] funds to be invested with New York-based BLMIS through Fairfield Sentry . . . and knowingly received subsequent transfers from BLMIS by withdrawing money from Fairfield Sentry."). This is not a proper basis upon which the Trustee can assert specific jurisdiction.

In *Walden,* the Supreme Court squarely rejected the same "knowledge and imputation" theory on which the Trustee relies, and it has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." 571 U.S. at 286 ("[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.") (internal citation omitted). That is because, as noted previously, the plaintiff's claims "must arise out of or relate to *the defendant's contacts* with the forum." *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (internal quotation marks omitted) (emphasis added); *see also Helicopteros Nacionales*, 466 U.S. at 417 ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."). Furthermore, *Sec. Inv'r Prot. SIPA Liquidation Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012) ("<u>*BLI*</u>"), which the Trustee has urged the Court to follow, fails to cite any precedent or authority

to support the exercise of specific jurisdiction over a nonresident defendant based on this knowledge and imputation theory.[3]

Under the Trustee's knowledge and imputation theory, the scope of U.S. personal jurisdiction would drastically expand and render every investor in any foreign company subject to litigation anywhere in the United States that the company, *not* the investor, does business. This is not the law. *See Suber v. VVP Servs., LLC*, 2021 WL 4429237, at *9 (S.D.N.Y. Sept. 27, 2021) ("[I]f offering securities in New York, or owning shares managed by a fund in New York were sufficient to establish personal jurisdiction over a foreign company under § 302(a)(3), then New York courts would have jurisdiction over every company that accesses New York's capital markets or invests in a New York managed fund so long as that company also committed a tort that harmed a New Yorker, which would be a reach too far.") (quoting *Theraplant, LLC v. Makarechi*, 2016 WL 7839186, at *4 (S.D.N.Y. Dec. 23, 2016)); *Tymoshenko v. Firtash*, 2013 WL 1234943, at *4 (S.D.N.Y. Mar. 27, 2013) (rejecting as insufficient basis for specific jurisdiction allegation that defendant purportedly invested in various "shell companies" in the U.S. because, "[a]lthough the companies in which [defendant] purportedly invested may have engaged in more extensive activities within the United States, the AC fails to allege that [defendant] controlled, directed, or even knew about these acts. Moreover, even if [defendant] were more involved in these corporations' investment decisions, that would not, in and of itself, suffice to show that [defendant] has the 'requisite continuous and systematic contact' with the United States").

---

[3] The issue in *BLI* was whether the Trustee adequately alleged that the defendant knew that Fairfield Sentry's investment strategy consisted of placing funds in BLMIS or whether the defendant's investment ended up with BLMIS "merely … as a result of happenstance or coincidence." *BLI*, 480 B.R. at 517. It was only in the context of responding to that limited argument before it that the *BLI* court held that personal jurisdiction would be found because the defendant knew *and intended* that Fairfield Sentry would invest its money with BLMIS in New York. The Trustee fails to allege that UKFP knew and intended that Fairfield Sentry would invest UKFP's money with BLMIS in New York.

3.    The Subscription Agreement Does Not Subject UKFP to Personal Jurisdiction.

Among the Trustee's sparse jurisdictional allegations is the assertion, on information and belief, that UKFP "entered into a subscription agreement with Fairfield Sentry under which it submitted to New York jurisdiction."  Compl. ¶ 7.  However, like the other purported Fairfield Sentry-related "contacts," the alleged subscription agreement between UKFP and Fairfield Sentry does not subject UKFP to specific jurisdiction or establish that UKFP projected itself into New York sufficiently to confer personal jurisdiction over UKFP.  *See, e.g.*, *Hau Yin To v. HSBC Holds., PLC,* 2017 WL 816136, at *5 (S.D.N.Y. Mar. 1, 2017), *aff'd* 700 F. App'x 66 (2d Cir. 2017) ("[C]ommunications with and payments to New York merely to ensure compliance with contract terms negotiated and executed outside of New York do not 'project' a defendant into the state sufficiently to confer personal jurisdiction over it . . ."); *see also Osus,* 882 F.3d at 345 (finding "handful of communications and transfer of funds . . . are insufficient to allow the exercise of specific personal jurisdiction over [foreign] Defendants").  This is true for several reasons.

*First*, controlling law in this jurisdiction provides that forum selection clauses do not confer specific jurisdiction over a nonresident defendant.  *Yak v. Biggerpockets, L.L.C.*,  2022 WL 67740, at *3 (2d Cir. Jan. 7, 2022) ("[W]e have consistently held that forum selection and choice-of-law clauses . . . are not broad enough to reach claims that are only incidental to the contractual relationship."); *see also Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Am. Boat Co., LLC*, 2012 WL 527209, at *3 (S.D.N.Y. Feb. 17, 2012) (quoting *Tropp v. Corporation of Lloyd's*, 385 F. App'x 36, 37 (2d Cir. 2010) ("A party seeking to enforce a forum selection clause must demonstrate," *inter alia,* "that . . . the claims and parties involved in the suit are subject to the forum selection clause.")).

*Second*, this Court has already rejected the Trustee's argument that UKFP is subject to this Court's personal jurisdiction based on the subscription agreement. Specifically, in adversary proceedings brought by the Fairfield Liquidators, this Court held that the forum selection clause in the subscription agreements did not apply to a lawsuit seeking to recover a redemption payment from Fairfield Sentry to the defendants, on the basis that such a suit is not one "with respect to" the subscription agreements. *In re Fairfield Sentry Ltd.*, 2018 WL 3756343, at *11-*12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("Fairfield I").

The holding in *Fairfield I* is binding on the Trustee because he was in privity with the Fairfield Liquidators for the following reasons: (1) the Trustee will receive a share of any funds received by the Fairfield Liquidators in any redeemer action; and (2) the Trustee and Fairfield Liquidators explicitly stipulated "that a joint interest exists between them with respect to the Sharing Claims." *See* Fairfield Action, ECF No. 69-2 (the "Fairfield Settlement Agreement," attached as **Exhibit B** to the C de Baca Declaration), Ex. 5 ¶¶ 4, 7, 11, 14. Concurrent and successive property interests constitute the kind of "preexisting 'substantive legal relationship[]' between the person to be bound and a party to the judgment" that non-party issue preclusion covers. *Taylor v. Sturgell,* 553 U.S. 880, 894 (2008). Because the issue of recovering a redemption payment from Fairfield Sentry to the defendants "with respect to" the subscription agreements was "actually litigated" and "essential to the prior judgment" of the same issue with respect to the instant case*,* the doctrine of issue preclusion applies and the Court's judgment in *Fairfield I* bars re-litigation of this argument. *See New Hampshire v. Maine,* 532 U.S. 742, 748-49 (2001) (stating requirements for issue preclusion).

*Third*, even if the *Fairfield I* decision does not have a preclusive effect, the Trustee is not entitled to rely upon the forum selection clause of a contract to which he is not a party or "an

intended third-party beneficiary of the contract under which he seeks to bring suit" as a basis for asserting specific jurisdiction over UKFP. *Dean St. Cap. Advisors LLC v. Otoka Energy Corp.*, 2017 WL 476720, at *4 (S.D.N.Y. Feb. 2, 2017).

*Fourth*, the allegation that UKFP entered into a subscription agreement with Fairfield Sentry is made "upon information and belief." See Compl. ¶ 7. This does not suffice as a basis to establish personal jurisdiction over UKFP because "[c]onclusory allegations showing the presence of jurisdiction, *particularly those stated only upon information and belief*, are insufficient to establish that the court has personal jurisdiction over the defendant." *Fabius v. Gardère*, 2021 WL 6797293, at *1 (E.D.N.Y. Sept. 22, 2021) (internal quotations omitted) (emphasis added). Accordingly, the forum selection clause in the subscription agreement is not a basis for personal jurisdiction.

4.     The Trustee's Remaining Jurisdictional Allegations Do Not Establish Specific Jurisdiction.

Nor do the Trustee's remaining jurisdictional allegations establish this Court's specific jurisdiction over UKFP. Specifically, the Trustee alleges that UKFP "sent a copy of the [subscription] agreement to FGG's New York City office, and wired funds to Fairfield Sentry through a bank in New York." Compl. ¶ 7. But the Trustee provides no explanation as to how these alleged activities relate to his claims (likely because the relation between them is tenuous at best). For example, the Trustee does not allege that UKFP used the (unnamed) New York bank to actually receive any of the redemptions at issue. Rather, the Trustee merely alleges that UKFP "wired funds to Fairfield Sentry through a bank in New York" and thus "derived significant revenue from New York." *Id*. Since the latter allegation does not logically follow the first and is conclusory, it is not sufficient to support the exercise of personal jurisdiction over UKFP. *See, e.g.*, *Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*, 477 F. Supp. 3d 241, 262-64

13

(S.D.N.Y. 2020) (refusing to find personal jurisdiction over foreign bank defendant based on its use of New York correspondent account for transfers at issue, where use of the account was not necessary to alleged Ponzi scheme); *Hau Yin To*, 700 F. App'x 66, 67 (2d Cir. 2017) ("Plaintiffs have not alleged the kind of intentional and repeated use of correspondent accounts that amounts to a transaction of business.").

Moreover, it is well settled that the incidental use of a bank in the United States to facilitate payments to settle a foreign securities transaction does not give rise to specific personal jurisdiction. *See Hau Yin To*, 2017 WL 816136, at *6. (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017) (rejecting personal jurisdiction over foreign defendants because their alleged connection to forum was transmission of information and funds "to and from BLMIS . . . [as an] incidental consequence[] of fulfilling a foreign contract"); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339-40 (S.D.N.Y. 2016) (finding transmission of information and funds to and from BLMIS to be "incidental consequences of fulfilling a foreign contract . . . insufficient to 'project' the Foreign Defendants into New York" and "not amount[ing] to 'purposeful availment' of the laws of New York.").

5.    The Jurisdictional Allegations in this Case Are Distinguishable from this Court's Recent Decisions Involving Other Subsequent Transferees.

The paucity of well-pled jurisdictional allegations against UKFP distinguishes this case from BLMIS cases involving alleged subsequent transferees in which the Court found a basis to exercise personal jurisdiction. For instance, in this Court's recent decision denying the motion to dismiss filed by Multi-Strategy Fund Limited, the Court summarized numerous specific allegations supporting the exercise of personal jurisdiction over Multi-Strategy Fund. *See generally* Mem. Decision Den. Def.'s Mot. to Dismiss, *Picard v. Multi-Strategy Fund Ltd.*, Adv. Pro. No. 12-01205 (CGM) (Bankr. S.D.N.Y. June 13, 2022), ECF No. 122. Among other things,

14

the Trustee alleged that: (1) Multi-Strategy Fund had "invested in the BLMIS Feeder Funds with

the specific purpose of having funds invested with BLMIS in New York," (*Id*. at 6); (2) Multi-

Strategy Fund affirmed having received and read a private placement memorandum that explained

that approximately 95% of Fairfield Sentry's funds were under BLMIS' custody in New York,

(*Id.)*; (3) Multi-Strategy Fund was referred to as a "Madoff addict" by a partner at Fairfield

Greenwich Group, (*Id*. at 7); (4) Multi-Strategy Fund's president and other associated persons met

with Fairfield Greenwich Group partners in New York, (*Id.*); and (5) Multi-Strategy Fund sent

wiring instructions specifically designating a New York-based bank account to which it directed

Fairfield Greenwich Group to wire Multi-Strategy Fund's redemption payments from Fairfield

Sentry (*Id.*).

In a similar vein, the Court's recent decision denying the motion to dismiss filed by Banque

SYZ & Co., SA, noted that the Trustee alleged that Banque SYZ "solicited its own clients to invest

in Madoff Feeder Funds" and offered those customers loans to fund the investments. *See* Mem.

Decision Den. Def.'s Mot. to Dismiss, *Picard v. Banque SYZ & Co., SA*, Adv. Pro. No. 11-02149

(CGM) (Bankr. S.D.N.Y. June 14, 2022), ECF No. 167, at 6-7. The Trustee also alleged that

Banque SYZ maintained its own account with BLMIS in New York and used a New York bank to

transfer funds into and receive funds from BLMIS.

The Trustee's jurisdictional allegations regarding UKFP fall far short of the detailed

allegations that this Court held supported the exercise of personal jurisdiction over Multi-Strategy

Fund and Banque SYZ. Hence, those decisions do not control the outcome here. To the contrary,

they only serve to highlight the type of detailed jurisdictional allegations that are missing in the

Complaint against UKFP. There is no factual support at all for the conclusory notion that UKFP

directed funds to be invested in New York. Accordingly, the Complaint must be dismissed under Rule 12(b)(2) for lack of personal jurisdiction.

## II.   **The Trustee's Claims to Recover Alleged Subsequent Transfers to UKFP Are Barred by Section 546(e) of the Bankruptcy Code.**

The Trustee's Complaint must be dismissed for an additional reason: the safe harbor set out in Section 546(e) of the Bankruptcy Code. Section 546(e) provides that a trustee may not avoid a transfer (other than an actual fraudulent transfer pursuant to Section 548(a)(1)(A)) if the transfer (1) was made by, to, or for the benefit of one of the entities listed in Section 546(e), such as a stockbroker, financial institution, or financial participant, and (2) was either a settlement payment or a transfer in connection with a securities contract. *See* 11 U.S.C. §546(e).

Both elements are satisfied here because the Fairfield Sentry Initial Transfers were: (1) made by, to, and for the benefit of a stockbroker and multiple financial institutions, and (2) settlement payments and made in connection with multiple securities contracts. Moreover, UKFP, as an alleged subsequent transferee, may assert any defenses to avoidability of the initial transfer that Fairfield Sentry, the alleged initial transferee, could have asserted, including Section 546(e). *See SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Fairfield Inv. Fund Ltd*.), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021) (Morris, J.) ("Fairfield Inv. Fund") ("Where the initial transferee fails to raise a § 546(e) defense against the trustee's avoidance of certain transfers, as is the case here … the subsequent transferee is nonetheless entitled to raise a § 546(e) defense against recovery of those funds.").[4] Where Section 546(e) applies, a trustee may proceed against a subsequent transferee only insofar as the trustee seeks to recover the subsequent transfers

---

[4] Although Section 546(e) is an affirmative defense, a court can dismiss claims based on Section 546(e) if its applicability is established on the face of the complaint or documents incorporated by reference into or integral to the complaint, as is the case here. *See Fairfield Inv. Fund*, 2021 WL 3477479, at *2; *see also, e.g., Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411, 414 (2d Cir. 2014) ("*Fishman*") (affirming dismissal).

under Section 550(a) as to which the trustee could have avoided the initial transfer under Section 548(a)(1)(A).  *Fairfield Inv. Fund*, at *4.

The Trustee could not have avoided the Fairfield Sentry Initial Transfers.  Further, all alleged subsequent transfers from Fairfield Sentry to UKFP in the Trustee's Complaint predate the two-year lookback period of the Section 548(a)(1)(A) exception to the Section 546(e) safe harbor. Compl., Ex. C.  Accordingly, all alleged subsequent transfers to UKFP are covered by the Section 546(e) safe harbor and, for the reasons set forth more fully below, the Trustee's Complaint must be dismissed.

### A.    The Fairfield Sentry Initial Transfers Were Made by and to an Entity Covered Under Section 546(e).

#### 1.    The Fairfield Sentry Initial Transfers Were Made by a Stockbroker.

The Bankruptcy Code defines "stockbroker" to include entities that "engage[] in the business of effecting transactions in securities."  11 U.S.C. § 101(53A).  The U.S. District Court for the Southern District of New York (the "District Court") has already found that BLMIS "qualifies as a stockbroker by virtue of the trading conducted by its market making and proprietary trading divisions."  *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 719 (S.D.N.Y. 2012) (citation omitted), *aff'd sub nom. SIPC v. Fishman*, 773 F.3d 411, 417 (2d Cir. 2014) ("It is not disputed [by the Trustee] that BLMIS was a 'stockbroker' for the purposes of § 546(e).").  Because the Fairfield Sentry Initial Transfers were made by BLMIS, which is a stockbroker, the covered entity element of Section 546(e) is satisfied.

17

2.      The Fairfield Sentry Initial Transfers Were Made to or for the Benefit of a Financial Institution.

The "covered entity" requirement of Section 546(e) is also satisfied because the alleged initial transferee, Fairfield Sentry, is a "financial institution."[5] Section 101(22) of the Bankruptcy Code defines "financial institution" to include not only "an entity that is a commercial or savings bank," but also the customer of such a bank "when [the bank] is acting as agent or custodian for a customer . . . in connection with a securities contract." 11 U.S.C. § 101(22)(A).

In *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)* ("*Fairfield III*"), this Court held that the Fairfield funds, including Fairfield Sentry, were "financial institutions" because they were customers of Citco Bank Nederland N.V. Dublin Branch[6] "who acted as their agents in connection with the securities contracts pursuant to which the redemption payments were made." *Fairfield III*, 2020 WL 7345988, at *7 (Bankr. S.D.N.Y. Dec. 14, 2020) ("[T]he [Fairfield] Liquidators' admission that redemptions were paid by Citco Bank establishes the necessary agency. It is implausible to infer that Citco Bank made the redemption payments to specific redeemers in specific amounts absent the [Fairfield] Funds' directions to do so. Moreover, Citco Bank accepted those directions by executing the redemption payments. Based on the

---

[5] UKFP reserves the right to argue, at the appropriate time, that the alleged transfers were protected under Section 546(e) for other reasons, including, without limitation, that UKFP falls within the definition of a "financial institution." It also reserves for later consideration, if necessary, the question whether the transfer also was "made by or to (or for the benefit of) a . . . financial participant." 11 U.S.C. § 546(e).

[6] Citco Bank is a bank regulated by the Central Bank of the Netherlands and registered with the Central Bank of Ireland. *See Fairfield III*, 2020 WL 7345988, at *6 n.11; *See also* De Nederlandsche Bank, *Information Detail: Citco Bank Nederland N.V.*, https://www.dnb.nl/en/publicregister/information-detail/?registerCode=WFTKF&relationNumber=B0275 (last visited July 14, 2022) (identifying Citco Bank Nederland N.V. as "[c]arrying on the business of a bank," including "[a]cceptance of deposits and other repayable funds"); Central Bank of Ireland, *Financial Service Provider Profile: Citco Bank Nederland NV Dublin Branch*, http://registers.centralbank.ie/FirmDataPage.aspx?firmReferenceNumber=C27278 (last visited July 14, 2022) (classifying Citco Bank as a "credit institution . . . whose business is to receive deposits or other repayable funds from the public and to grant credits for its own account"). This Court can take judicial notice of information from such public registries. *See In re Trib. Co. Fraudulent Conv. Litig.*, 946 F.3d 66, 78 (2d Cir. 2019); *Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*, 323 B.R. 857, 869 (Bankr. S.D.N.Y. 2005).

foregoing, the Funds were customers of Citco Bank who acted as their agents in connection with the securities contracts pursuant to which the redemption payments were made, and the Funds were, therefore "financial institutions" within the meaning of 11 U.S.C. § 546(e)").[7]  *Fairfield III* binds the Trustee because he was in privity with the Fairfield Liquidators who were litigating the consolidated Fairfield redeemer actions partly for the Trustee's benefit.[8]  Because the question of whether Fairfield Sentry was a "financial institution" under the meaning of § 546(e) was "actually litigated" and "essential to the prior judgment" of *Fairfield III*, the Court's conclusion has preclusive effect.  *See New Hampshire v. Maine*, 532 U.S. at 748-49.

**B.      The Fairfield Sentry Initial Transfers Were Settlement Payments and Made in Connection with a Securities Contract.**

1.      The Fairfield Sentry Initial Transfers Were "Settlement Payments" and Made "in Connection with" the Securities Contract Between BLMIS and Fairfield Sentry.

In similar circumstances, the Second Circuit concluded in *Fishman* that Section 546(e) shields transfers from BLMIS to its account holders from the Trustee's avoidance powers.  *See*

---

[7] In *Fairfield III*, the defendants were alleged initial transferees of redemption payments made by Fairfield Sentry. *See Fairfield III*, at *1.  In that case, the Fairfield Liquidators asserted avoidance claims under British Virgin Islands law to recover "unfair preferences" and "undervalue transactions."  *Id.*  The Fairfield Liquidators also asserted constructive trust claims against certain defendants who allegedly knew when they redeemed their interests in Fairfield Sentry that the redemption prices were inflated.  *Id.*  Those facts do not change the outcome of the covered entity analysis under Section 546(e) here.  Nor do they support departing from the proposition articulated in *Fairfield Inv. Fund* that where the initial transferee fails to raise a Section 546(e) defense against the trustee's avoidance of certain transfers, the subsequent transferee is nonetheless entitled to raise a Section 546(e) defense against recovery of those funds.

[8] As described above, pursuant to the Fairfield Settlement Agreement, the Fairfield Liquidators will pay the Trustee 15% of their net recoveries from all claims the Fairfield Liquidators assert against redeemers from the Fairfield funds (included in the definition of "Sharing Claims") until the Trustee has been paid $1.924 billion.  Fairfield Settlement Agreement ¶¶ 1, 4, 11.  The Fairfield Settlement Agreement states that "[t]he Trustee and the Liquidators agree and stipulate that a joint interest exists between them with respect to the Sharing Claims."  *Id.* ¶ 14.  The Trustee and the Fairfield Liquidators' agreed joint interest in any such recovered BLMIS customer property constitutes a "preexisting 'substantive legal relationship,'" focused on a successive or concurrent interest in property of the kind recognized by the Supreme Court as giving rise to nonparty issue preclusion in *Taylor v. Sturgell*.  Because the Trustee is in privity with the Fairfield Liquidators in actions to recover alleged BLMIS customer property, such as the actions at issue in *Fairfield III*, and because the issue of Fairfield Sentry's "financial institution" status was "actually litigated" and "essential" to the final judgments dismissing numerous such actions on ground of the Section 546(e) safe harbor, this Court's finding in *Fairfield III* that Fairfield Sentry was a "financial institution" is binding on the Trustee.  *See New Hampshire v. Maine*, 532 U.S. at 748-49 (stating requirements for issue preclusion).

*Fishman*, 773 F.3d at 418-23.  The court in *Fishman* concluded that (1) the documents governing BLMIS customers' accounts constituted securities contracts and (2) the payments BLMIS made to those customers were made "in connection with" those contracts and constituted "settlement payments."  *Id.*  Either of those findings in and of itself sufficed to satisfy the second element of Section 546(e)'s safe harbor.  Moreover, the *Fishman* court rejected the Trustee's argument that the safe harbor did not apply because Madoff did not actually carry out the promised securities transactions.  *Id.* at 419-20.

The same reasoning and result should apply here.  The Trustee specifically alleges that Fairfield Sentry "had direct customer accounts with BLMIS's investment advisory business," Compl. ¶ 2., and entered into account agreements with BLMIS.  *See*, Fairfield Action, ECF No. 23 (the "Fairfield Amended Complaint," attached as **Exhibit A** to the C de Baca Declaration) ¶ 33.[9]  Therefore, as in *Fishman*, the Fairfield Sentry Initial Transfers were settlement payments and were made in connection with a securities contract, so as to come within the scope of Section 546(e).

> 2.   The Fairfield Sentry Initial Transfers Were Made "in Connection with" the Securities Contract Between Fairfield Sentry and UKFP.

Section 546(e) applies to a transfer "in connection with *a* securities contract," not just to a transfer in connection with the securities contract between the transferor (*i.e.*, BLMIS) and the initial transferee (*i.e.*, Fairfield Sentry).  *See Fishman*, 773 F.3d at 422 ("Section 546(e) sets a low

---

[9] On a motion to dismiss, this Court may consider, in addition to the allegations in the Complaint and any exhibits thereto and documents incorporated therein, the Trustee's pleadings in other cases and other items of which the Court may take judicial notice. *Fairfield Inv. Fund*, 2021 WL 3477479, at *2 (Bankr. S.D.N.Y. Aug. 6, 2021) (on R. 12(b)(6) motion, the Court "must consider… matters of which a court may take judicial notice") (quoting *Tellabs, Inc. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)) (Morris, C.J.).  The Court may take judicial notice of materials "integral to the complaint." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).  This is especially so where, as here, the "plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint." Id. at 48. Included in the scope of such judicial notice are admissions in a party's filings in other actions.  *See, e.g., Harris v. N.Y.S. Dep't of Health*, 202 F. Supp. 2d 143, 173 n.13 (S.D.N.Y. 2002). UKFP respectfully requests that the Court take judicial notice of all such materials.

bar for the required relationship between the securities contract and the transfer sought to be avoided"; thus, "a transfer can be connected to, and can be made in relation to, multiple documents or purposes simultaneously."); *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 115 (JSR), 2013 WL 1609154, at *9 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*") (transfer from a debtor to an initial transferee may qualify as having been made "in connection with a securities contract" between the initial transferee and a subsequent transferee for the purpose of Section 546(e)). And the definition of "securities contract" includes "a contract for the purchase, sale, or loan of a security," 11 U.S.C. § 741(7)(A)(i), and, as relevant here, "includes . . . redemption requests." *Cohmad*, 2013 WL 1609154, at *8.

Implicit in the Trustee's Complaint is the allegation that the funds UKFP allegedly received were transferred from BLMIS to Fairfield Sentry "in order to pay" UKFP's redemption requests. *See, e.g.,* Fairfield Am. Compl. ¶¶ 53, 58, 63, 67, 71, 76, 80, 85, 100, 104, 109, 114 (alleging that Fairfield Sentry withdrew funds from its BLMIS account "in order to" pay redemption payments). Although this allegation lacks factual support, accepting it as true for purposes of this Motion, it necessarily connects BLMIS's initial transfer to Fairfield Sentry to UKFP's alleged contract with Fairfield Sentry that authorized the redemption—*i.e.*, Fairfield Sentry's Articles of Association. *See Fairfield Sentry Ltd. (In Liquidation) v. Migani*, [2014] UKPC 9, ¶ 10 ("[T]he terms of the subscriber's membership of the Fund, which govern the redemption of its shares . . . are to be found in the Articles of Association of the Fund") (attached as **Exhibit C** to the C de Baca Declaration). The broad definition of "securities contract" under the Bankruptcy Code includes a contract providing for redemption of securities, such as the Fairfield Sentry Articles of Association. *See Cohmad*, 2013 WL 1609154, at *8.

Thus, the alleged transfers made by BLMIS to Fairfield Sentry satisfy Section 546(e)'s requirements because they were "in connection with" both (a) the securities contracts Fairfield Sentry had entered into with BLMIS and (b) the allegedly related securities contract between Fairfield Sentry and UKFP.

3.      The Conclusion that the Fairfield Sentry Initial Transfers Were Made in Connection with a Securities Contract Does Not Change even if the Initial Transferee, Fairfield Sentry, Allegedly Knew of Madoff's Fraud.

Even if Fairfield Sentry's alleged knowledge that BLMIS was not actually trading securities meant that Fairfield Sentry knew there was no actual "securities contract" between BLMIS and Fairfield Sentry, there still was a "securities contract" between Fairfield Sentry and its investors, and Fairfield Sentry's alleged knowledge of the BLMIS fraud would not preclude the straightforward application of Section 546(e) as being "in connection with" Fairfield Sentry's securities contracts with its investors.

In *Cohmad*, Judge Rakoff agreed that securities contracts other than the initial transferee's securities contract with BLMIS could independently satisfy Section 546(e)'s requirement that the initial transfer be in connection with a securities contract. 2013 WL 1609154, at *8-9. As Judge Rakoff stated:

> Take, for example, a hypothetical situation in which the Trustee alleges that a withdrawal of funds by an investment fund from its Madoff Securities customer account occurred because an investor in that fund sought redemption of its investment under the terms of its investment contract. Assuming that either the investment fund or the investor qualifies as a financial institution or financial participant, and barring other circumstances that may appear on the facts of a given case, that situation appears to fit within the plain terms of Section 546(e): an initial transfer that was "made by or to (or for the benefit of) a … financial institution [or] financial participant … in connection with a securities contract."

*Cohmad*, 2013 WL 1609154 at *9.[10]

---

[10] Judge Rakoff also observed that "[t]o the extent that, for example, an initial transfer from Madoff [S]ecurities to an investment fund customer and the subsequent transfer from the investment fund to its redeeming investors may

Here, the Trustee has not pleaded that UKFP actually knew of the BLMIS fraud or Fairfield Sentry's alleged connection to that fraud. And "actual knowledge," not "mere suspicion," or inquiry notice, is what Judge Rakoff repeatedly stated was necessary to defeat the safe harbor. *See Cohmad*, 2013 WL 1609154, at *1, *3.[11]

The only exception to Section 546(e) is a claim under Section 548(a)(1)(A), which involves actual fraudulent intent by *the transferor*, and there is nothing in the language of Section 546(e) that supports creating an exception to its applicability based on the knowledge of any transferee, as opposed to the debtor-transferor. *See Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005) ("it is the intent of the transferor and not the transferee that is relevant" under § 548(a)(1)(A)) (citations omitted).

Accordingly, the safe harbor applies, and the Trustee's claims to recover transfers made more than two years before BLMIS filed for bankruptcy, which include all of the alleged Fairfield Sentry Subsequent Transfers, must be dismissed.

[*Remainder of page intentionally left blank.*]

---

together comprise a 'settlement payment' under Enron [*Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 339 (2d Cir. 2011)], that transfer may fall within the purview of Section 546(e), assuming it meets the statute's other requirements." *Cohmad*, 2013 WL 1609154, at *9 n.5.

[11] The actual knowledge requirement that has been found to defeat the safe harbor is based on the language of Section 546(e), and thus is unaffected by the Second Circuit's recent decision regarding the good faith defense under Section 550(b) in *In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Citibank, N.A.)*, 12 F.4th 171 (2d Cir. 2021). *Cf. Cohmad* at *4 ("[T]he Trustee must show, at a minimum, that the transferee had actual knowledge that there were no actual securities transactions being conducted").

**CONCLUSION**

For the foregoing reasons, UKFP respectfully requests that the Court dismiss the Complaint

with prejudice.


Dated:  July 15, 2022
     New York, New York

                  Respectfully submitted,

                  MAYER BROWN LLP

                  By: /s/ Joaquin M. C de Baca
                     Joaquin M. C de Baca
                     1221 Avenue of the Americas
                     New York, New York 10020
                     Tel: (212) 506-2500
                     Email: jcdebaca@mayerbrown.com

                  *Counsel for Defendant UKFP (Asia) Nominees Limited*