**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff,<br><br>Plaintiff,<br><br>v.<br><br>KOREA EXCHANGE BANK, individually and as Trustee for Korea Global All Asset Trust I-1, and as Trustee for Tams Rainbow Trust III,<br><br>Defendant. | Adv. Pro. No. 11-02572 (CGM) |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT KOREA EXCHANGE BANK'S MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................1

STATEMENT OF FACTS ....................4

I. THE BLMIS PONZI SCHEME....................4

II. THE INITIAL TRANSFEREE ACTION AND SETTLEMENT ....................4

III. KEB AND ITS INVESTMENTS IN SENTRY ....................5

ARGUMENT....................7

I. THIS COURT HAS PERSONAL JURISDICTION OVER KEB ....................7

A. KEB Purposefully Availed Itself of the Laws and Privileges of Conducting Business in New York by Investing in Sentry ....................9

1. KEB's Investments in BLMIS Through Sentry Establish Minimum Contacts....................9

a. *BLI* and Recent Decisions in *Multi-Strategy*, *SYZ*, *Lombard*, and *Carige* Establish Personal Jurisdiction.......10

b. The PPM Makes Sentry's Connection with New York Obvious ....................12

2. KEB's Subscription Agreements Include New York Choice of Law and Forum Selection Clauses and Relate to the Trustee's Claims ....................14

3. KEB's Purposeful Use of New York Bank Accounts Establishes Specific Personal Jurisdiction ....................18

4. KEB's Filing of Customer Claims Is Another Jurisdictional Contact ....................20

B. The Exercise of Personal Jurisdiction Is Reasonable ....................22

C. At Minimum, the Trustee Is Entitled to Jurisdictional Discovery ....................23

II. SECTION 546(e) DOES NOT BAR RECOVERY FROM DEFENDANT .........24

III. THE TRUSTEE'S COMPLAINT ADEQUATELY PLEADS THAT KEB RECEIVED BLMIS CUSTOMER PROPERTY ....................28

IV. THE TRUSTEE SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE SENTRY TRANSFERS....................32

A. The Incorporated Material Complies with Rules 10 and 8 ........................33

B. The Court Can Take Judicial Notice of the *Fairfield Inv. Fund* Decision ........................35

CONCLUSION ........................36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730 (Bankr. S.D.N.Y. 2019)....28, 29

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25 (2d Cir. 1996)....8

*Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316 (2016)....19, 20

*Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670 (Bankr. E.D. Pa. 2010)....33

*Ayyash v. Bank Al-Madina*, No. 04 Civ. 9201(GEL), 2006 WL 587342 (S.D.N.Y. Mar. 9, 2006)....23-24

*Bahrain Islamic Bank, BisB v. Arcapita Bank, B.S.C.(C) (In re Arcapita Bank, B.S.C.(C))*, 21 Civ. 8296 (AKH), 2022 WL 1620307 (S.D.N.Y. May 22, 2022)....19-20

*In re Bernard L. Madoff Inv. Secs. LLC (Picard v. Ida Fishman Recoverable Trust)*, 773 F.3d 411 (2d Cir. 2014)....26

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)....8, 9, 16, 22

*In re Caremerica*, 409 B.R. 737 (E.D.N.C. 2009)....30

*Chase Manhattan Bank v. Banque Generale Du Com.*, No. 96-cv-5184 (KMW), 1997 WL 266968 (S.D.N.Y. May 20, 1997)....16

*Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010)....7, 8, 22

*Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452 (S.D.N.Y. 2001)....7

*Davis v. Bifani*, No. 07-cv-00122-MEH-BNB, 2007 WL 1216518 (D. Colo. Apr. 24, 2007)....35

*DeMasi v. Benefico*, 567 F. Supp. 2d 449 (S.D.N.Y. 2008)....36

*Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*,
722 F.3d 81 (2d Cir. 2013)....................7

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
397 F. Supp. 3d 323 (S.D.N.Y. 2019)....................9

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
No. 10-13164, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018)....................17

*Ferrari v. Cnty. of Suffolk*,
790 F. Supp. 2d 34 (E.D.N.Y. 2011)....................36

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
141 S. Ct. 1017 (2020)....................16, 18

*Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*,
No. 08-15051 (SMB), Adv. Pro. Nos. 10-03493 (SMB), 10-05447 (SMB),
2014 WL 47774 (Bankr. S.D.N.Y. Jan. 3, 2014)....................32

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
425 F.3d 158 (2d Cir. 2005)....................8

*Hanson v. Denckla*,
357 U.S. 235 (1958)....................15

*Hill v. HSBC Bank plc*,
207 F. Supp. 3d 333 (S.D.N.Y. 2016)....................17, 18

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945)....................8

*Jesner v. Arab Bank, PLC*,
138 S. Ct. 1386 (2018)....................19

*Katchen v. Landy*,
382 U.S. 323 (1966)....................20

*Kelley v. Safe Harbor Managed Acct. 101, Ltd.*,
No. 20-3330, 2022 WL 1177748 (8th Cir. Apr. 21, 2022)....................26, 27

*Kelley v. Westford Special Situations Master Fund, L.P.*,
No. 19-cv-1073, 2020 WL 3077151 (D. Minn. June 10, 2020)....................31

*Kiobel v. Royal Dutch Petroleum Co.*,
No. 02 Civ. 7618 (KMW)(HBP), 2009 WL 3817590
(S.D.N.Y. Nov. 16, 2009)....................23

*Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*,
No. 07-MD-1902 (JSR), 2013 WL 12191844 (S.D.N.Y. Mar. 25, 2013) ..............................25

*Langenkamp v. C.A. Culp*,
498 U.S. 42 (1990) ..............................20

*Licci v. Lebanese Canadian Bank, SAL*,
20 N.Y.3d 327 (2012) .............................. 18-19

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
732 F.3d 161 (2d Cir. 2013) ..............................19

*Liveo v. Hausman*,
61 Misc. 3d 1043 (N.Y. Sup. Ct. 2018) ..............................12

*Lowden v. William M. Mercer, Inc.*,
903 F. Supp. 212 (D. Mass. 1995) ..............................35

*Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC*,
843 F. Supp. 2d 191 (D. Mass. 2012) ..............................34

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996) ..............................9

*Motors Liquidation Co. Avoidance Action Trust v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*,
565 B.R. 275 (Bankr. S.D.N.Y. 2017) ..............................16

*Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*,
No. 13 CIV. 6705 (DLC), 2014 WL 1673351 (S.D.N.Y. Apr. 28, 2014) ..............................35

*New Hampshire v. Maine*,
532 U.S. 742 (2001) ..............................25

*Off. Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic Bank*,
549 B.R. 56 (S.D.N.Y. 2016) ..............................19

*Picard v. Bam L.P.*,
612 B.R. 257 (S.D.N.Y. 2020) ..............................20

*Picard v. Banca Carige S.P.A.*,
Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522
(Bankr. S.D.N.Y. June 30, 2022) .............................. *passim*

*Picard v. Banque Lombard Odier & Cie SA*,
Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523
(Bankr. S.D.N.Y. June 30, 2022) .............................. *passim*

*Picard v. Banque SYZ & Co., SA*,
Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019
(Bankr. S.D.N.Y. June 14, 2022) ........ *passim*

*Picard v. BNP Paribas, S.A.*,
594 B.R. 167 (Bankr. S.D.N.Y. 2018) ........ *passim*

*Picard v. Bordier & Cie*,
Adv. Pro. No. 12-01695 (CGM), 2022 WL 2390556
(Bankr. S.D.N.Y. June 30, 2022) ........ *passim*

*Picard v. Bureau of Labor Ins. (In re BLMIS)*,
480 B.R. 501 (Bankr. S.D.N.Y. 2012) ........ 10, 11, 14, 16

*Picard v. Charles Ellerin Revocable Tr. (In re BLMIS)*,
Adv. Pro. No. 10-04398 (BRL), 2012 WL 892514
(Bankr. S.D.N.Y. Mar. 14, 2012) ........ 28, 31

*Picard. v. Citibank, N.A. (In re BLMIS)*,
12 F.4th 171 (2d. Cir. 2021) ........ 4, 35

*Picard v. Cohen*,
Adv. Pro. No. 10-04311 (SMB), 2016 WL 1695296
(Bankr. S.D.N.Y. Apr. 25, 2016) ........ 26

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*,
627 B.R. 546 (Bankr. S.D.N.Y. 2021) ........ 8, 9

*Picard v. Fairfield Inv. Fund Ltd. (In re BLMIS)*,
Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479
(Bankr. S.D.N.Y. Aug. 6, 2021) ........ 3, 25, 35, 36

*Picard v. The Gerald and Barbara Keller Family Tr. (In re BLMIS)*,
634 B.R. 39 (Bankr. S.D.N.Y. 2021) ........ 12

*Picard v. JPMorgan Chase & Co. (In re BLMIS)*,
Adv. Pro. No. 08-99000 (SMB), 2014 WL 5106909
(Bankr. S.D.N.Y. Oct. 10, 2014) ........ 11

*Picard v. Lloyds TSB Bank PLC*,
Adv. Pro. No. 12-01207 (CGM), 2022 WL 2390551
(Bankr. S.D.N.Y. June 30, 2022) ........ *passim*

*Picard v. Maxam Absolute Return Fund, L.P.*,
460 B.R. 106 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012) ........ 8, 23

*Picard v. Mayer (In re BLMIS)*,
Adv Pro. No. 20-01316 (CGM), 2021 WL 4994435
(Bankr. S.D.N.Y. Oct. 27, 2021) ....7

*Picard v. Merkin (In re BLMIS)*,
515 B.R. 117 (Bankr. S.D.N.Y. 2014) ....28, 29, 32

*Picard v. Multi-Strategy Fund Ltd.*,
Adv. Pro. No. 12-01205 (CGM), 2022 WL 2137073
(Bankr. S.D.N.Y. June 13, 2022) .... *passim*

*Picard v. Shapiro (In re BLMIS)*,
542 B.R. 100 (Bankr. S.D.N.Y. 2015) ....29, 30

*In re Picard*,
917 F.3d 85 (2d Cir. 2019) ....12, 22-23, 27

*Porina v. Marward Shipping Co.*,
521 F.3d 122 (2d Cir. 2008) ....7

*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000) ....36

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
624 F.3d 123 (2d Cir. 2010) ....7

*Sawtelle v. Farrell*,
70 F.3d 1381 (1st Cir. 1995) ....22

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
531 B.R. 439 (Bankr. S.D.N.Y. 2015) ....25, 26

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Secs.)*,
501 B.R. 26 (S.D.N.Y. Oct. 28, 2013) ....27, 33

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Securities)*,
No. 12-MC-115 (JSR), 2013 WL 1609154
(S.D.N.Y. Apr. 15, 2013) ....24, 25, 26, 27

*Sherman v. A.J. Pegno Constr. Corp.*,
528 F. Supp. 2d 320 (S.D.N.Y. 2007) ....34

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
379 B.R. 5 (Bankr. E.D.N.Y. 2007) ....28, 29

*SPV Osus Ltd. v. UBS AG*,
882 F.3d 333 (2d Cir. 2018) ....17, 18

*SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*,
620 B.R. 505 (Bankr. S.D.N.Y. 2020)....27

*Sunward Elecs., Inc. v. McDonald*,
362 F.3d 17 (2d Cir. 2004)....16

*Taylor v. Sturgell*,
553 U.S. 880 (2008)....25

*Taylor v. Vt. Dep't of Educ.*,
313 F.3d 768 (2d Cir. 2002)....31

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
916 F.3d 143 (2d Cir. 2019)....8

*U.S. v. Int'l Longshoremen's Assn.*,
518 F. Supp. 2d 422 (E.D.N.Y. 2007)....34

*Waldman v. Palestine Liberation Org.*,
835 F.3d 317 (2d Cir. 2016)....22

*Whitaker Secs., LLC v. Rosenfeld (In re Rosenfeld)*,
543 B.R. 60 (Bankr. S.D.N.Y. 2015)....34

*Williams v. Time Warner Inc.*,
440 Fed. App'x 7 (2d Cir. 2011)....31

**Statutes**

11 U.S.C. § 546(e).... *passim*

11 U.S.C. § 548(a)....35

11 U.S.C. § 548(a)(1)....33

11 U.S.C. § 548(a)(1)(A)....24

11 U.S.C. § 550....24, 26, 27

11 U.S.C. § 550(a)....2, 26, 33, 35

**Rules**

Fed. R. Civ. P. 8....2, 33, 34

Fed. R. Civ. P. 8(a)(2)....32

Fed. R. Civ. P. 10....2, 33

Fed. R. Civ. P. 10(c) ....................32, 33, 34

Fed. R. Civ. P. 12(b)(2)....................1

Fed. R. Civ. P. 12(b)(6)....................1, 3, 25

Fed. R. Civ. P. 17(b) ....................12

**Other Authorities**

5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure 3d § 1326 (4th ed. 2008)....................34

Plaintiff Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa-*lll* ("SIPA"), and the substantively consolidated chapter 7 estate of Bernard L. Madoff ("Madoff"), by and through the Trustee's undersigned counsel, respectfully submits this memorandum of law and the supporting declaration of Eric R. Fish ("Fish Decl.") in opposition to Korea Exchange Bank's ("KEB") motion to dismiss the First Amended Complaint ("Motion" or "Mot.").

**PRELIMINARY STATEMENT**

This adversary proceeding is part of the Trustee's continuing efforts in this SIPA liquidation proceeding to recover BLMIS customer property that was stolen as part of Madoff's Ponzi scheme. The Trustee's First Amended Complaint (ECF No. 30) ("Complaint" or "Compl.") seeks to recover more than $33.5 million in subsequent transfers that KEB received—individually and as Trustee for Korea Global All Asset Trust I-1 and Tams Rainbow Trust III—from New York-centric Fairfield Sentry Limited ("Sentry"), the largest of the BLMIS feeder funds.[1] KEB moves to dismiss the Trustee's Complaint on the grounds that this Court does not have personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). KEB also moves to dismiss the Trustee's Complaint pursuant to Rule 12(b)(6) on the grounds that: (i) the safe harbor under Section 546(e) bars recovery; (ii) the Complaint fails to plead that KEB received transfers of customer property; and (iii) the Complaint does not adequately allege the avoidability of the initial transfers. All of these arguments lack merit.

*First,* this Court has personal jurisdiction over KEB because KEB's contacts are the type that establish and support the exercise of personal jurisdiction in this Circuit. Specifically, the

[1] Korea Investment Trust Management Corp. ("KITMC"), who was also named as a defendant, was voluntarily dismissed on December 21, 2022. ECF No. 130.

Trustee alleges that KEB (individually and on behalf of multiple trusts) invested in Sentry knowing that it was managed by Fairfield Greenwich Group ("FGG") in New York, which placed virtually all of Sentry's assets with BLMIS in New York. Although KEB attempts to cast itself as a stranger to BLMIS making a fully foreign investment in Sentry, the Trustee plausibly alleges that KEB purposefully invested in Sentry knowing and intending that BLMIS would be the effective manager, broker-dealer, and custodian of Sentry's (and KEB's and the trusts') assets. KEB's subscription documents disclosed the nature of the investment and, in executing a subscription agreement, KEB agreed to the jurisdiction and venue of New York courts and the application of New York law. KEB also utilized bank accounts in New York to receive the very transfers at issue in this case and filed customer claims with the Trustee on behalf of the trusts.

*Second*, Section 546(e)'s safe harbor is no bar to recovery from KEB because the Trustee has plausibly alleged avoidability of the initial transfers to Sentry. Thus, the plain language of Section 546(e), applicable precedent, and law of the case in this SIPA liquidation proceeding make the safe harbor inapplicable here.

*Third*, the Trustee plausibly alleges that KEB received customer property under Section 550(a) by outlining the relevant pathways through which customer property was transferred from BLMIS to Sentry and subsequently to KEB. KEB challenges the nature of the transfers by contending that the Trustee does not tie together the subsequent transfers with the initial transfers and that BLMIS was not the exclusive source of the transfers from Sentry. But these are fact-based arguments inappropriate at this stage of the litigation and contrary to established law.

*Finally*, the Complaint adequately alleges the avoidability of the initial transfers. KEB asserts that the Trustee violates Rules 8 and 10 by incorporating by reference his complaint against

Sentry (the "Fairfield Amended Complaint"),[2] but this argument conflicts with applicable precedent and the purpose of the rules. Moreover, this Court may take judicial notice of the operative complaint—the Fairfield SAC—and its opinion in *Picard v. Fairfield Investment Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*"), in which this Court held that the Trustee plausibly alleged the avoidability of the initial transfers.

KEB's arguments are similar to those made by other subsequent transferee defendants—including Multi-Strategy Fund Ltd., Banque SYZ & Co., Banque Lombard Odier & Cie, S.A., Bordier & Cie, Banca Carige S.P.A., and Lloyds TSB Bank PLC—in their motions to dismiss. In six separate Memoranda Decisions issued on June 13, June 14, and June 30, 2022, this Court denied all of these motions in their entirety. *See Picard v. Multi-Strategy Fund Ltd.*, Adv. Pro. No. 12-01205 (CGM), 2022 WL 2137073 (Bankr. S.D.N.Y. June 13, 2022) ("*Multi-Strategy*"); *Picard v. Banque SYZ & Co., SA*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ("*SYZ*"); *Picard v. Banque Lombard Odier & Cie SA*, Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ("*Lombard*"); *Picard v. Bordier & Cie*, Adv. Pro. No. 12-01695 (CGM), 2022 WL 2390556 (Bankr. S.D.N.Y. June 30, 2022) ("*Bordier*"); *Picard v. Banca Carige S.P.A.*, Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022) ("*Carige*"); *Picard v. Lloyds TSB Bank PLC*, Adv. Pro. No. 12-01207 (CGM), 2022 WL 2390551 (Bankr. S.D.N.Y. June 30, 2022) ("*Lloyds TSB*").[3]

---

[2] After the Trustee filed his Complaint against KEB, the Trustee filed a Second Amended Complaint ("Fairfield SAC") in the initial transfer action. *See* Fairfield SAC, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286.

[3] The day before the filing of this Opposition, the Court denied another motion to dismiss filed by Banque Cantonale Vaudoise based on the same Rule 12(b)(6) issues raised in the other motions and here. *See* Memorandum Decision Denying Defendant's Motion to Dismiss, *Picard v. Banque Cantonale Vaudoise*, Adv. Pro. No. 12-01694 (CGM), ECF No. 107, Main Case ECF No. 21926.

For the reasons articulated in the Court's Memoranda Decisions and for the reasons set forth herein, the Trustee respectfully requests that the Court deny KEB's Motion.

## STATEMENT OF FACTS

### I.    THE BLMIS PONZI SCHEME

Madoff founded and operated BLMIS in New York until its collapse in 2008.  *See* Compl. ¶¶ 23, 31, ECF No. 30.   BLMIS had three principal business units: (i) a proprietary trading business; (ii) a market-making business; and (iii) an investment advisory business (the "IA Business").  *Id.* ¶ 23.  For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy, which involved (a) investing in a basket of common stocks from the Standard & Poor's 100 Index; (b) buying put options and selling call options to hedge against price changes in the underlying basket of stocks; and (c) purchasing U.S. treasury bills when the money was out of the market.  *Id.* ¶¶ 24–25.  In reality, BLMIS operated a Ponzi scheme through its IA Business. *Id.* ¶ 15-16, 26, 28.  On December 11, 2008, Madoff's fraud was publicly revealed and he was arrested for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud.  *Id.* ¶ 10.

The extent of damage Madoff caused was made possible by BLMIS "feeder funds"—large investment funds created for the express purpose of funneling investors' funds into BLMIS.  *See Picard. v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 179 (2d. Cir. 2021).  KEB invested in one of these feeder funds, Sentry, a fund operated by FGG in New York that invested more than 95% of its assets with BLMIS.  *See* Compl. ¶¶ 2, 5.

### II.    THE INITIAL TRANSFEREE ACTION AND SETTLEMENT

Following BLMIS's collapse and the commencement of the SIPA liquidation proceeding, the Trustee filed an adversary proceeding against Sentry and related defendants to avoid and recover fraudulent transfers of stolen customer property in the amount of approximately $3 billion.

*Id.* ¶ 35. In 2011, the Trustee settled with Sentry and others. *Id.* ¶ 40. As part of the settlement, Sentry consented to a judgment in the amount of $3.054 billion but repaid only $70 million to the BLMIS estate. *Id.* The Trustee then commenced a number of adversary proceedings against defendants like KEB to recover the approximately $3 billion in missing customer property.

**III. KEB AND ITS INVESTMENTS IN SENTRY**

KEB, a Korean bank, invested substantial sums with Sentry, which, in turn, invested nearly all its funds with BLMIS. *Id.* ¶¶ 2, 21. Between November 2004 and April 2008, KEB received at least twenty-two transfers from Sentry totaling at least $33.5 million. *Id.* ¶ 41, Ex. C. For each transfer, the Trustee's Complaint sets forth the subsequent transferor (Sentry), the subsequent transferee ("Defendants," meaning KEB), the date of the subsequent transfer, and the amount of the subsequent transfer. *Id.*, Ex. C.

KEB comments in the introduction to its Motion that the "complaint makes allegations against 'Defendants,' a word it defines to mean both KEB and non-defendant KITMC" and that this "makes it impossible to know what acts the complaint asserts were done by KEB rather than by non-defendant KITMC." Mot. at 1. For clarity, because KITMC has been dismissed from this action, the only "Defendants" remaining are KEB, individually, and as trustee of the various trusts. *See supra*, n.1. The Trustee's allegations as to "Defendants" are thus properly ascribed to KEB in these capacities. KEB acknowledges that "only one entity could have taken the alleged actions" and admits that it invested with Sentry. Mot. at 1; Decl. of Richard A. Cirillo, Exs. A & B, ECF No. 137 ("Cirillo Decl."). KEB does not—and cannot—dispute that it received the transfers at issue from Sentry. Indeed, KEB's arguments regarding the receipt of customer property show that

it understands the Trustee's allegations that all of the transfers listed on Exhibit C to the Complaint were made from Sentry to KEB.[4]  *See* Mot. at 23-26.

Investors in Sentry, including KEB, were required to execute subscription agreements in which the investors acknowledged that they had "such knowledge and experience in financial and business matters that [they were] capable of evaluating the risks of this investment."  *See* Cirillo Decl., Ex. A at 13, 24, 35 ¶ 8 and  Ex. B at 19 ¶ 8.[5]  The subscription agreements also incorporated Sentry's Private Placement Memorandum ("PPM"); and by signing, investors warranted that they "received and read a copy of the [PPM]."  *Id.* ¶ 7.  KEB signed at least four Sentry subscription agreements: one in August 2005, two in December 2005, and one in November 2006.  Cirillo Decl., Ex. A at 10-20, 21-31, 32-42 and Ex. B at 16-26.  In each subscription agreement, KEB acknowledged receiving and reading a PPM.  Cirillo Decl., Ex. A at 13, 24, 35  ¶ 7 and Ex. B at 19 ¶ 7.  KEB therefore was aware of BLMIS's role as a custodian of 95% of Sentry's assets.  *See* Fish Decl., Ex. 1 (attaching the October 1, 2004 PPM referenced in KEB's subscription agreements).  The subscription agreements and PPMs clearly spelled out that an investment in Sentry was a New York-based investment, containing multiple references to the United States and New York throughout.  As KEB acknowledges, each subscription agreement it entered into contained a New York choice of law provision and forum selection clause in which KEB consented to jurisdiction in New York.  Mot. at 7; Compl. ¶ 5; Cirillo Decl., Ex. A at 14-15, 25-26, 36-37 ¶¶ 16, 19 and Ex. B at 20-21 ¶¶ 16, 19.  KEB also agreed to send its subscription payments to Sentry's HSBC bank account in New York (the "HSBC NY Account").  Compl. ¶ 5; Cirillo Decl., Ex. A at 10-11, 21-22, 32-33 ¶ 3 and Ex. B at 16-17 ¶ 3.  In addition, KEB utilized a bank account at

---

[4] The Trustee could easily amend the Complaint to replace "Defendants" with KEB for housekeeping purposes, should the Court request it.

[5] References to specific pages of the exhibits attached to the Cirillo Decl. are to ECF page numbers.  References to specific pages of exhibits to the Fish Decl. are to the page numbers as specified in the documents themselves.

Deutsche Bank Trust Co., Americas New York ("Deutsche Bank NY Account") for its redemption payments. Compl. ¶ 5; Cirillo Decl., Ex. A at 20, 31, 42 ¶ 30.g and Ex. B at 26 ¶ 30.g.

As a result of investing with BLMIS through Sentry, KEB filed multiple customer claims with the Trustee as an "Indirect Investor" of BLMIS. *See* Cirillo Decl., Exs. A and B; Compl. ¶ 6; Mot. at 13-17.

**ARGUMENT**

**I. THIS COURT HAS PERSONAL JURISDICTION OVER KEB**

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only show a *prima facie* case that personal jurisdiction exists. *Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013). A *prima facie* showing of jurisdiction "may be established solely by allegations." *Id.* at 84-85 ("Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction."). A plaintiff may also establish a *prima facie* case of jurisdiction through affidavits and supporting materials that contain averments of fact outside the pleadings. *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010); *Picard v. Mayer (In re BLMIS)*, Adv Pro. No. 20-01316 (CGM), 2021 WL 4994435, at *3 (Bankr. S.D.N.Y. Oct. 27, 2021). These pleadings and affidavits are to be construed "in the light most favorable to the plaintiffs, resolving all doubts in their favor." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)).

Depending on the nature of a defendant's contacts with the forum, a court may exercise general or specific jurisdiction. *Cromer Fin. Ltd. v. Berger,* 137 F. Supp. 2d 452, 473 (S.D.N.Y. 2001). Relevant here, specific jurisdiction exists where the defendant purposely directs its activities into the forum and the underlying cause of action arises out of or relates to those

activities. *See Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 566 (Bankr. S.D.N.Y. 2021).

The specific jurisdiction analysis is a two-step inquiry. First, the court assesses whether the defendant established "minimum contacts" in the forum, such that the defendant purposely availed itself of the privilege of conducting activity in the forum. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985). The defendant's activities need not have taken place within the forum, "and a single transaction with the forum will suffice." *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012). Moreover, minimum contacts may be found when a "defendant's allegedly culpable conduct involves at least in part financial transactions that touch the forum." *See In re Fairfield Sentry Ltd.*, 627 B.R. at 566 (quoting *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 151 (2d Cir. 2019)).

In determining whether a defendant's contacts establish personal jurisdiction, the court must look at the "totality of the circumstances" rather than analyze each contact in isolation. *See Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996); *see also Chloé*, 616 F.3d at 164 (analyzing totality of defendants' contacts to determine jurisdiction under New York's long-arm statute and Due Process Clause); *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005) ("No single event or contact connecting defendant to the forum state need be demonstrated; rather, the totality of all defendant's contacts with the forum state must indicate that the exercise of jurisdiction would be proper." (citation omitted)).

Second, the Court conducts a "reasonableness" inquiry to determine that its exercise of jurisdiction will not offend traditional notions of "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 320. To determine whether jurisdiction is reasonable, courts consider the following:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996). Where the plaintiff has alleged purposeful availment, however, the burden shifts to the defendant to present a "compelling case" that jurisdiction would be unreasonable. *In re Fairfield Sentry Ltd.*, 627 B.R. at 567 (citing *Burger King*, 471 U.S. at 472-73).

### A. KEB Purposefully Availed Itself of the Laws and Privileges of Conducting Business in New York by Investing in Sentry

KEB had numerous and significant contacts with New York that establish this Court's jurisdiction. KEB: (i) invested in Sentry, whose assets KEB and/or the trusts knew to be effectively managed by Madoff from BLMIS's offices in New York, custodied by BLMIS in New York, and purportedly placed in U.S. investments; (ii) used New York banks to transact with Sentry; (iii) had direct connections with New York through its Sentry subscription agreements; and (iv) filed customer claims in this SIPA liquidation proceeding. KEB's investment in Sentry alone supports jurisdiction, and its contacts in their totality leave no doubt that KEB purposefully directed its activities to the United States and New York specifically. *See Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 397 F. Supp. 3d 323, 344 (S.D.N.Y. 2019) ("When all [defendant]'s Agreement-related contacts are considered together, it is clear [the defendant] purposely availed itself of the forum.").

#### 1. KEB's Investments in BLMIS Through Sentry Establish Minimum Contacts

The allegation that KEB knowingly directed funds to be invested with BLMIS alone is sufficient to establish a *prima facie* showing of jurisdiction over KEB. *Lombard*, 2022 WL

2387523, at *2; *Carige*, 2022 WL 2387522, at *2. Regardless of KEB's other New York contacts supporting this Court's assertion of personal jurisdiction, KEB's deliberate targeting of BLMIS and the New York securities market—through entities expressly constituted for that purpose—is dispositive.

#### a. *BLI* and Recent Decisions in *Multi-Strategy*, *SYZ*, *Lombard*, and *Carige* Establish Personal Jurisdiction

Based on the demonstrated intention to invest with BLMIS in New York through Sentry, this Court has already concluded that Sentry investors like KEB are subject to personal jurisdiction in New York. *See Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 516-18 (Bankr. S.D.N.Y. 2012) (Lifland, J.) ("*BLI*"). In *BLI*, as here, the Trustee's suit was "based upon [the subsequent transferee's] investment of tens of millions of dollars in Fairfield Sentry with the specific goal of having funds invested in BLMIS in New York, with intent to profit therefrom." *Id.* at 506. There, as here, the subsequent transferee was provided with a PPM and executed similar subscription agreements. *Id.* at 507–08. For instance, "the PPMs set forth that BLMIS would retain custody of at least 95% of the Fund's assets" and that the investments would be placed in S&P stocks. *See id.* at 508. The subsequent transferee in *BLI* also argued that the foreseeability of its investment ending up in a BLMIS account was insufficient to support personal jurisdiction. *Id.* at 516 n.14. Not only did the Court reject this argument, Judge Lifland called it "disingenuous," explaining that:

> BLI's investments in Fairfield Sentry did not merely "end up" in an account at BLMIS as a result of happenstance or coincidence. Rather, BLI purposefully availed itself of the benefits and protections of New York laws by knowing, intending, and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market.

*Id.* at 517; *see also Picard v. JPMorgan Chase & Co. (In re BLMIS)*, Adv. Pro. No. 08-99000 (SMB), 2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014) (noting courts in this liquidation have already "confirmed that defendants who invested directly or indirectly with BLMIS and received payments from BLMIS as initial transferees or as subsequent transferees of those initial transferees were subject to the Court's personal jurisdiction").

The Court's recent decisions in *Multi-Strategy*, *SYZ*, *Lombard*, and *Carige* confirm that *BLI* applies to confer personal jurisdiction here. The Trustee in *Multi-Strategy*, *SYZ*, *Lombard*, and *Carige* made similar arguments regarding the purpose of the investment and contacts with FGG and Sentry for ultimate investment in BLMIS. *See Multi-Strategy*, 2022 WL 2137073, at *3-4; *SYZ*, 2022 WL 2135019, at *3-4; *Lombard*, 2022 WL 2387523, at *3-4; *Carige*, 2022 WL 2387522, at *3. As this Court found, "Defendant's alleged contacts with New York [were] not random, isolated, or fortuitous." *Multi-Strategy*, 2022 WL 2137073, at *4; *SYZ*, 2022 WL 2135019, at *4; *Lombard*, 2022 WL 2387523, at *4; *Carige*, 2022 WL 2387522, at *3. This Court further clarified in *Lombard* and *Carige* that the Trustee is deemed to have sufficiently alleged jurisdiction "simply by stating that [defendant] 'knowingly directing funds to be invested with New York-based BLMIS through Fairfield Sentry,'" and that "[t]his allegation alone is sufficient to establish a prima facie showing of jurisdiction over Defendant in the pre-discovery stage of litigation. . . ." *Lombard*, 2022 WL 2387523, at *2; *Carige*, 2022 WL 2137073, at *2. Because KEB is similarly situated to the defendants in *BLI*, *Multi-Strategy*, *SYZ, Lombard*, and *Carige*, those decisions are controlling and confirm this Court's jurisdiction over KEB.

KEB asserts that the Trustee does not allege a "factual basis" for its allegations that KEB "knowingly direct[ed] funds to be invested with New York based BLMIS through Fairfield Sentry" and "knowingly received Customer Property from BLMIS." Mot. at 5 (citing Compl. ¶ 5).

Specifically, KEB contends that "[w]ithout facts, an inference cannot be drawn from this allegation or anything else in the complaint that Korean KEB dealt with or intended to deal with anyone other than Fairfield." Mot. at 5. This argument should be summarily rejected. "At the pre-discovery stage, the allegations need not be factually supported." *Lombard*, 2022 WL 2387523, at *2; *Carige*, 2022 WL 2387522, at *2. KEB's argument also ignores a fundamental fact alleged in the Complaint: KEB invested in a known BLMIS feeder fund. As the Complaint alleges, Sentry "maintained in excess of 95% of its assets in its BLMIS customer accounts." Compl. ¶ 2. The logical inference from these facts is that KEB placed funds with Sentry *knowing*—even *intending*—that those funds would go to BLMIS. As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going." *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019).[6]

**b. The PPM Makes Sentry's Connection with New York Obvious**

Any contention that KEB was unaware of Sentry's ties to BLMIS and New York is not credible. To invest with Sentry, KEB executed the subscription agreements through which it affirmed having received and read Sentry's PPMs and agreed to be bound by the PPMs' terms. *See* Compl. ¶ 5; Cirillo Decl., Ex. A at 13, 24, 35 ¶ 7 and Ex. B at 19 ¶ 7. Moreover, even if KEB was acting as a trustee, Paragraph 27 of the subscription agreements provides that "[i]f subscriber is subscribing as *trustee*, agent, representative, or nominee for another person (the 'Beneficial

[6] KEB is notably silent about its role as trustee and the purpose of the trusts' investment with Sentry. Under Fed. R. Civ. P. 17(b), the capacity of a trust to be sued is determined by the laws of the state where the court is located. And under New York law, an express trust does not have the capacity to be sued in its own name. *Picard v. The Gerald and Barbara Keller Family Tr. (In re BLMIS)*, 634 B.R. 39, 48 (Bankr. S.D.N.Y. 2021); *Liveo v. Hausman*, 61 Misc. 3d 1043, 1044–45 (N.Y. Sup. Ct. 2018) ("A trust . . . is a legal fiction, and cannot sue or be sued itself. . . . Instead, trustees, as representatives of the trust, act on behalf of the trust to bring legal action, and can also be sued in situations where the trust may be liable.").

Shareholder'), Subscriber agrees that the representations and agreements herein are made by Subscriber with respect *to itself* and the Beneficial Shareholder." Cirillo Decl., Ex. A at 17, 28, 39 ¶ 27 and Ex. B at 23 ¶ 27 (emphasis added). KEB thus explicitly agreed to the terms of Sentry's subscription agreements on its own behalf, while also affirming it had read the contents of the PPMs.

Sentry clearly represented in its PPMs that it would be invested in the U.S. securities market and the funds would be custodied with BLMIS. The October 1, 2004 PPM that KEB would have received—based on its known subscription agreements—noted that BLMIS served as Sentry's custodian and held 95% of Sentry's assets. Fish Decl., Ex. 1 at 14–15. In describing the investment, the October 1, 2004 PPM also stated that the investment strategy and typical position entail:

> (i) the purchase of a group or basket of equity securities that are intended to highly correlate to the S&P 100 Index, (ii) the sale of out-of-the-money S&P 100 Index call options in an equivalent contract value dollar amount to the basket of equity securities, and (iii) the purchase of an equivalent number of out-of-the-money S&P 100 Index put options. An index call option is out-of-the-money when its strike price is greater than the current price of the index; an index put option is out-of-the-money when the strike price is lower than the current price of the index. The basket typically consists of approximately 35 to 45 stocks in the S&P 100.

Fish Decl., Ex. 1 at 8. That PPM further provided: "The Fund may invest some of its assets in *short-term U.S. government obligations*, certificates of deposit, short-term high grade commercial paper and other money market instruments, including repurchase agreements with respect to such obligations, money market mutual funds and short term bond funds." *Id.* at 9 (emphasis added).

If BLMIS's custody of the assets and investment strategy centered around U.S. securities were not enough, the October 1, 2004 PPM is replete with further references to the United States and New York:

- The minimum investment and initial offering price are in U.S. Dollars. Fish Decl., Ex. 1 at 1, 10.
- "[Sentry] will maintain its assets in U.S. dollars." *Id*. at 20.
- "The Net Asset Value per Share is determined in U.S. dollars." *Id.*
- Sentry maintains U.S. counsel located in New York. *Id.* at vi.
- The trading risks discuss U.S. government activities. *Id.* at 16.
- Sentry's intermediary bank is in New York. *Id.* at 13.
- FGG maintains its principal office in New York. *Id.* at 6.
- Legal matters in connection with the offering have been passed upon for Sentry in the United States by counsel located in New York. *Id.* at 33.

KEB's argument that the Trustee fails to support his allegations that KEB purposely invested with Sentry for placement of funds in BLMIS in New York thus falls flat and should be rejected as in *BLI*, *Multi-Strategy*, *SYZ*, *Lombard*, and *Carige*. Even if KEB did not know the investment was with BLMIS—which makes little sense in light of BLMIS's control of the fund and Sentry's status as the largest BLMIS feeder fund—there is no doubt that KEB intended for the funds to be placed in U.S. investments with numerous New York connections. It is therefore plausible that KEB "intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom." *BLI*, 480 B.R. at 506.

#### 2. KEB's Subscription Agreements Include New York Choice of Law and Forum Selection Clauses and Relate to the Trustee's Claims

KEB's subscription agreements with Sentry further evidence a "strong nexus with New York" supporting jurisdiction. *See BLI*, 480 B.R. at 517 n.15. In signing the Sentry subscription agreements, KEB submitted to venue in New York, the jurisdiction of the New York courts, and the application of New York law. Cirillo Decl., Ex. A at 14-15, 25-26, 36-37 ¶¶ 16, 19 and Ex. B

at 20-21 ¶¶ 16, 19. Specifically, the subscription agreements were "governed and enforced in accordance with the laws of New York, without giving effect to its conflict of laws provisions." Cirillo Decl., Ex. A at 14, 25, 36 ¶ 16 and Ex. B at 20 ¶ 16. In addition, KEB: (i) "agree[d] that any suit, action or proceeding . . . with respect to this Agreement and the Fund may be brought in New York," (ii) "irrevocably submit[ted] to the jurisdiction of the New York courts with respect to any [p]roceeding," and (iii) agreed that disputes over the agreement "shall be governed and enforced in accordance with the laws of New York," and that if litigating here, "may not claim that a Proceeding has been brought in an inconvenient forum." Cirillo Decl., Ex. A at 14-15, 25-26, 36-37 ¶¶ 16, 19 and Ex. B at 20-21 ¶¶ 16, 19.

KEB argues that these provisions are irrelevant because the Trustee is not a party to the subscription agreements and the Trustee's claims do not arise under the subscription agreements. Mot. at 7. This argument misses the mark. The Trustee is not arguing this Court has jurisdiction solely based on KEB's consent. Rather, KEB's agreements to New York law, New York jurisdiction, and New York venue show that KEB purposefully directed its activities toward New York and provide another jurisdictional contact. KEB also contends that the provision "does not make NY courts an exclusive jurisdiction, but expressly permits Fairfield, and by not limiting KEB, permits KEB to sue the other anywhere in the world it could obtain jurisdiction." Mot. at 7. But such linguistic gymnastics do not change the fact that—in multiple subscription agreements—KEB *consented* to being sued in New York courts with the application of New York law, demonstrating KEB's willingness to have disputes over its Sentry investment decided in this forum. As KEB recognizes, "'[p]urposeful availment' requires a conscious decision to 'invok[e] the benefits and protections of [the forum state's] laws." Mot. at 3 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). KEB made a conscious decision to invoke the benefits and protections

of New York law by entering into an agreement containing New York jurisdiction, forum selection, and choice of law clauses.

"[A] choice of law provision may constitute a 'significant contact' with the forum state" and "is relevant in determining whether a defendant has purposefully availed itself of a particular forum's laws." *Chase Manhattan Bank v. Banque Generale Du Com.*, No. 96-cv-5184 (KMW), 1997 WL 266968, at *2 (S.D.N.Y. May 20, 1997); *see also Burger King*, 471 U.S. at 482 (finding jurisdiction where choice of law provision "reinforced [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there"); *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004) ("A choice of law clause is a significant factor in a personal jurisdiction analysis because the parties, by so choosing, invoke the benefits and protections of New York law."). For example, in *BLI*, the Court, without addressing the issue of whether defendants consented to jurisdiction, found that the clauses in the subscription agreements "further evidenc[e] the strong nexus with New York." 480 B.R. at 517, n.15. Similarly, in *Motors Liquidation Co. Avoidance Action Trust v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, the court held that even if defendant's agreement to New York forum and choice of law provisions did not constitute consent, the provisions helped establish minimum contacts to support specific jurisdiction. 565 B.R. 275, 288–89 (Bankr. S.D.N.Y. 2017) (finding agreement provisions plus a correspondent bank account in New York reflected a relationship "centered in New York").

The subscription agreements also plainly "relate to" the Trustee's claims and evidence a strong nexus between this case and New York. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2020) (finding that plaintiffs' claims related to defendant's in-state activity and rejecting requirement of a "strict causal relationship between the defendant's in-state activity and the litigation."). Because the subscription agreements were necessary predicates to

KEB's receipt of customer property through Sentry, the subscription agreements sufficiently relate to the Trustee's claims to recover that customer property from KEB.

KEB's reliance on the treatment of the subscription agreements in *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, No. 10-13164, 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield Liquidators*") is erroneous. *See* Mot. at 7.[7] In that case, the Fairfield liquidators argued that the defendants had consented to personal jurisdiction because they were bound by the New York provisions in the subscription agreements. *Fairfield Liquidators*, 2018 WL 3756343, at *7, *8. As noted above, the Trustee does not argue that KEB consented to the jurisdiction of this Court solely by virtue of the subscription agreements. Rather, the execution of subscription agreements containing New York choice of law, jurisdiction, and forum provisions serves as an important jurisdictional contact and is persuasive evidence of KEB's purposeful availment of the laws and privileges of New York and the reasonableness of jurisdiction. *See Multi-Strategy*, 2022 WL 2137073, at *5 n.3; *SYZ*, 2022 WL 2135019, at *5 n.4.

Equally unavailing is KEB's reliance on two cases asserting common law claims brought against fund service providers. *See* Mot. at 8 (citing *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018) and *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016)). This Court already has determined that this line of cases is not relevant to the Trustee's actions against defendants like KEB who invested in BLMIS feeder funds. *See Picard v. BNP Paribas, S.A.*, 594 B.R. 167, 192 (Bankr. S.D.N.Y. 2018) ("*BNP*") ("*Hill* has no bearing on the issue of personal jurisdiction arising from the Defendants' redemptions as investors in the Tremont Funds which arose from their New York contacts with the Tremont Fund."). This is not a dispute between two parties stemming from

---

[7] KEB contends that "this provision has been construed by this court to be limited to disputes over Fairfield share purchases but excluding redemptions of Fairfield shares." Mot. at 7. While KEB does not provide a citation for this statement, the Trustee assumes this is a reference to the *Fairfield Liquidators* decision.

services owed under a foreign contracts, like the breach of fiduciary duty and other claims in *SPV*[8] and *Hill*. Here, the subscription agreements and all of KEB's investment activity intentionally directed at New York plainly "relate to" the Trustee's subsequent transfer claims. *See Lombard*, 2022 WL 2387523, at *4; *Carige*, 2022 WL 2387522, at *4.

#### 3. KEB's Purposeful Use of New York Bank Accounts Establishes Specific Personal Jurisdiction

This Court also has jurisdiction over KEB because it purposefully used the New York banking system to subscribe into and redeem from Sentry. *See* Compl. ¶ 5. In accordance with its subscription agreements, KEB wired funds to Sentry's HSBC NY Account. Cirillo Decl., Ex. A at 10-11, 21-22, 32-33 ¶ 3 and Ex. B at 16-17 ¶ 3. KEB also designated its Deutsche Bank NY Account to receive redemptions from Sentry. *See* Cirillo Decl., Ex. A at 20, 31, 42 ¶ 30.g and Ex. B at 26 ¶ 30.g. KEB indeed used this Deutsche Bank NY Account to receive the transfers at issue in this case. *See, e.g.*, Fish Decl., Exs. 2-3.

KEB strains to argue that because these New York bank accounts were "correspondent bank accounts," their use does not constitute a purposeful decision to conduct activities in New York. *See* Mot. at 8-13. Although KEB concedes that New York caselaw holds that the purposeful use of a U.S. correspondent bank account can establish jurisdiction, *see id.*, KEB goes to great lengths to distinguish its reliance on New York bank accounts from the circumstances in the relevant caselaw. These cases, however, are instructive in that they hold that the voluntary, purposeful use of correspondent accounts can confer personal jurisdiction. For example, in *Licci v. Lebanese Canadian Bank, SAL*, the New York Court of Appeals held that a defendant's use of a correspondent bank account in New York supports a finding of jurisdiction "even if no other

---

[8] Any reliance on *SPV*, which found no jurisdiction because defendants' contacts did not cause the injury, is suspect following the Supreme Court's decision in *Ford Motor*, which held that causation is not a prerequisite for jurisdiction. 141 S. Ct. at 1026–30.

contacts between the defendant and New York can be established" provided that such use was "purposeful." 20 N.Y.3d 327, 338 (2012) (cleaned up); *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 165, 171 (2d Cir. 2013) (finding jurisdiction over defendant with "no operations, branches, or employees in the United States" based on repeated use of New York's banking system); *Off. Comm. of Unsecured Creditors of Arcapita, Bank B.S.C. v. Bahrain Islamic Bank*, 549 B.R. 56, 67-69 (S.D.N.Y. 2016) (finding jurisdiction based on designation and use of New York correspondent accounts to receive transfers); *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 322-29 (2016) (same).

KEB argues that the use of the accounts for its redemptions is not "qualitatively meaningful" because "use of correspondent banks to effect international payments is not 'purposeful' activity under the 'purposeful availment' definition but instead a common and unavoidable means to effect a transient and vanishingly brief way to pass dollars between non-US bank accounts." Mot. at 9. KEB, however, misses the point. It does not matter whether the use of these accounts was for commercial transactions, as opposed to terrorism or money laundering. What matters is that KEB's use of these bank accounts was "purposeful" and not coincidental or passive. *See Licci*, 20 N.Y.3d at 338-39; *Al Rushaid*, 28 N.Y. 3d at 328 (choice of the New York correspondent bank made the connection to New York "volitional"). This also is not a case in which a foreign national is suing KEB as a mere recipient of funds through an international transaction without any other purposeful contacts with the forum. *Cf. Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386 (2018) (involving foreign nationals suing foreign banks based on CHIPS transactions in context of Alien Tort Statute). Rather, KEB voluntarily and purposely used the Deutsche Bank NY Account and HSBC NY Account as part of its relationship with a known Madoff feeder fund. This was not passive or merely coincidental. *See Bahrain Islamic Bank, BisB*

*v. Arcapita Bank, B.S.C.(C) (In re Arcapita Bank, B.S.C.(C))*, 21 Civ. 8296 (AKH), 2022 WL 1620307, at *6 (S.D.N.Y. May 22, 2022) (affirming personal jurisdiction on appeal from Bankruptcy Court where defendant in a commercial transaction "designated correspondent bank accounts in New York to receive the fund transfers").

KEB relies on *Al Rushaid* in contending that its bank account was not used for purposes of an illegal scheme, (*see* Mot. at 11-13), but even if that purpose was relevant, KEB's "New York account was integral to the scheme" that Madoff perpetuated in that KEB's account received subsequent transfers of stolen customer property. *See Al Rushaid*, 28 N.Y.3d at 328. KEB's use of this Deutsche Bank NY account was not mere happenstance, but was part of a larger pattern of its New York-based investments. That the use of this account may have been for "lawful commercial transactions" (Mot. at 13) is irrelevant because the transactions included stolen customer property that KEB received in its New York account from Sentry's New York account—which is the very subject matter of this adversary proceeding. This is the type of "quality" of contact discussed in the caselaw KEB cites in its Motion. *See* Mot. at 11-13. KEB's use of New York bank accounts is "directly related to its investment activities with Fairfield and BLMIS." *See Lombard*, 2022 WL 2387523, at *4 (citing *BNP*, 594 B.R. at 191); *Carige*, 2022 WL 2387522, at *4 (same).

**4. KEB's Filing of Customer Claims Is Another Jurisdictional Contact**

KEB spends almost four pages explaining why the filing of its customer claims does not, by itself, confer jurisdiction. Specifically KEB cites precedent on the issue of whether the denial of a customer claim subjected a defendant to a jury trial. *See* Mot. at 14-16 (citing *Langenkamp v. C.A. Culp*, 498 U.S. 42 (1990); *Katchen v. Landy*, 382 U.S. 323 (1966); *Picard v. Bam L.P.*, 612 B.R. 257 (S.D.N.Y. 2020)). According to KEB, "the significance of the jury/non-jury issue to the

personal jurisdiction issue lies in the fact that the availability of a jury turns on the same analysis

of whether filing a bankruptcy claim constitutes submission to the court's power." Mot. at 16.

Whether a defendant is entitled to a jury or a bench trial, however, is different from the

issue here—whether the Trustee may pursue his claims against KEB at all in the Bankruptcy Court.

The crux of KEB's argument is that although it submitted customer claims seeking distributions

from the customer property fund in this SIPA liquidation proceeding based on its investments in

Sentry, it should not be subject to personal jurisdiction based on the same investments. Such a

position is contradictory. KEB's customer claims are yet another substantive contact

demonstrating that this Court has jurisdiction given the totality of the circumstances. *See SYZ*,

2022 WL 2135019, at *4 (noting filing of customer claim as factor in denying motion to dismiss

based on personal jurisdiction). KEB's filing of customer claims as a BLMIS "Indirect Investor"

shows KEB's knowledge that the purpose of its investment with Sentry was really to direct money

to BLMIS. The customer claims state: "It is understood that B[L]MIS was also the sub-custodian

for [Sentry] and implemented the Fund's investment strategy. It is understood that most of the

Fund's assets may have been held in custody by B[L]MIS." Cirillo Decl., Exs. A and B at 6.

When considered with KEB's other jurisdictional contacts—including the subscription

agreement, PPM disclosures, use of New York bank accounts, and agreement to New York choice

of law and jurisdiction—the customer claims demonstrate that personal jurisdiction was a

foreseeable consequence of KEB placing funds in New York-centric Sentry. The totality of these

contacts show that KEB's assets did not end up at BLMIS by happenstance; the entire reason for

the Sentry investment was to gain access to BLMIS. KEB thus purposely availed itself of the

jurisdiction of New York courts, including this Court, by investing with Sentry. The filing of

customer claims is just one more "quid for a quo that consists of the state's extending protection

or other services to the nonresident." *See* Mot. at 4 (quoting *Sawtelle v. Farrell*, 70 F.3d 1381, 1392 (1st Cir. 1995)).

**B. The Exercise of Personal Jurisdiction Is Reasonable**

KEB fails to present a compelling reason why jurisdiction would be unreasonable. "The reasonableness inquiry requires the court to determine whether the assertion of personal jurisdiction…comports with 'traditional notions of fair play and substantial justice' under the circumstances of the particular case." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (citations omitted). Where a plaintiff has made a threshold showing of minimum contacts, a defendant must present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Chloé*, 616 F.3d at 165 (quoting *Burger King*, 471 U.S. at 477). This Court has found that it would be a 'rare' case where the defendant's minimum contacts with the forum support the exercise of personal jurisdiction but it is unreasonable to force the defendant to defend the action in that forum." *BNP*, 594 B.R. at 188.

This is not that "rare" case. KEB contends that the Complaint "does not allege that KEB a Korean company performing routine transactions in Korea actually foresaw or expected any of the minimal actions alleged here could lead to being forced into NY court and be deprived of its own country's courts, procedures, laws, and customs." Mot. at 17-18. But as noted above, the various contacts were purposeful and also at the heart of the Trustee's claims that KEB received subsequent transfers of stolen customer property. Moreover, any argument that the U.S.'s interest is not greater than that of Korea disregards the interests of the SIPA Trustee and this Court. "The forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court." *Multi-Strategy*, 2022 WL 2137073, at *5; *SYZ*, 2022 WL 2135019, at *5; *Lombard*, 2022 WL 2387523, at *5; *Carige*, 2022 WL 2387522, at *4; *see also In re Picard*, 917 F.3d at 103

(noting the "compelling interest in allowing domestic estates to recover fraudulently transferred property").

On the other hand, the burden on KEB is minimal. Neither litigation costs nor travel inconveniences undermine the strong interest in litigating this matter in this Court. *See Maxam*, 460 B.R. at 119 (finding New York counsel and conveniences of modern communication and transportation minimize any such burden). "Defendant is not burdened by this litigation." *Multi-Strategy*, 2022 WL 2137073, at *5 (noting that the defendant actively participated in the litigation for over ten years, is represented by competent U.S. counsel, and submitted to New York courts in signing subscription agreements); *SYZ*, 2022 WL 2135019, at *5 (same); *Lombard*, 2022 WL 2387523, at *5 (same); *Carige*, 2022 WL 2387522, at *4 (same).

**C. At Minimum, the Trustee Is Entitled to Jurisdictional Discovery**

If this Court finds that the Trustee has not made a *prima facie* showing of jurisdiction, the Trustee respectfully requests jurisdictional discovery. "Such discovery may be authorized where a plaintiff has made a threshold showing that there is some basis for the assertion of jurisdiction." *Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618 (KMW)(HBP), 2009 WL 3817590, at *4 (S.D.N.Y. Nov. 16, 2009) (internal citation marks and quotation omitted). The Trustee has shown how KEB, *inter alia*, (i) knowingly and purposely subscribed to Sentry, which placed funds with BLMIS for the purpose of investing in the U.S. securities markets; (ii) used U.S. bank accounts to transact business with Sentry; and (iii) filed customer claims with the Trustee. At a minimum, these facts establish a "threshold showing" of jurisdiction sufficient for discovery. *Id.* at *6; *see also Ayyash v. Bank Al-Madina*, No. 04 Civ. 9201(GEL), 2006 WL 587342, at *6 (S.D.N.Y. Mar.

9, 2006) (granting discovery because allegations of wire transfers through the United States made

a "sufficient start" toward establishing jurisdiction).[9]

## II.    SECTION 546(e) DOES NOT BAR RECOVERY FROM DEFENDANT

Section 546(e) provides a safe harbor for the avoidance of certain initial transfers made

outside the two-year period referenced in Section 548(a)(1)(A).    *See* 11 U.S.C. § 546(e)

("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may

not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title.") (emphasis added).

However, in *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Securities)*,

the District Court held that a transferee's actual knowledge of Madoff's fraud precluded

application of the Section 546(e) safe harbor in actions to avoid initial transfers, thereby allowing

the Trustee to avoid and recover transfers made prior to the two-year period.    No. 12-MC-115

(JSR), 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*").    KEB buries *Cohmad* in

a footnote and contends that it was wrongly decided, but in any event, the Trustee does not allege

KEB's actual knowledge of fraud.    Mot. at 23 n.16.    *Cohmad*, however, is law of the case and KEB

is bound by it.    Moreover, because this is a recovery action under Section 550, only the initial

transferee's knowledge is relevant.

KEB sets forth at length the requirements of Section 546(e), including how they are

presumably met in this case with respect to the initial transfers to Sentry.    *See* Mot. at 18-23.[10]    But

---

[9] KEB's role as a trustee also raises factual questions requiring discovery.  KEB says nothing about the trusts' contacts with FGG and New York or the trusts' intent to invest with BLMIS through Sentry.  In addition, KEB's subscription agreements list an entity called "Vantage Corp." as its adviser.  *See* Cirillo Decl., Ex. A at 13, 24, 35 ¶ 6 and Ex. B at 19 ¶ 6.  Vantage was listed as an adviser to several funds that invested in Sentry and had many communications with Sentry on behalf of its various clients.  The exact nature of KEB's relationships with the trusts and Vantage is presently unknown, but to the extent the Court finds the Trustee has not made a *prima facie* showing of personal jurisdiction, the Trustee respectfully requests jurisdictional discovery to learn of the nature of these relationships and if the trusts and/or Vantage's contacts may be imputed to KEB.

[10] The Trustee does not concede that any agreements or transfers between Sentry and KEB activate the safe harbor under Section 546(e). See Mot. at 22.  Sentry's agreements with and transfers to KEB are simply not relevant, because whether the initial transfers are avoidable turns on Sentry's actual knowledge of fraud.  Among other things, the

KEB's argument is an exercise in futility because "[t]his Court has already determined that the Fairfield Complaint contains sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule 12(b)(6) motion." *Multi-Strategy*, 2022 WL 2137073, at *8 (citing *Fairfield Inv. Fund*, 2021 WL 3477479, at *4); *SYZ*, 2022 WL 2135019, at *9 (same); *Lombard*, 2022 WL 2387523, at *9 (same); *Bordier*, 2022 WL 2390556, at *5 (same). As such, Section 546(e) does not bar the avoidance of initial transfers made to Sentry, and those transfers may be recovered regardless of whether Sentry or KEB qualify as financial institutions, their agreements qualify as securities contracts, or their transfers qualify as settlement payments.[11]

KEB is precluded from arguing that *Cohmad* is wrong. *Cohmad* was issued in connection with consolidated proceedings before the District Court as to the application of Section 546(e). The District Court then remanded to this Court, and this Court has since applied the actual knowledge exception to the Section 546(e) safe harbor on numerous occasions.[12] KEB participated in the District Court proceedings and is bound by *Cohmad*, which is law of the case.[13]

---

Trustee does not concede—by alleging that the subsequent transfers were customer property—that the initial transfers were "in connection with" the subscription agreements with KEB. The Trustee believes he will prevail on showing that the subsequent transfers are customer property, although a showing that the subsequent transfers can be traced through the "relevant pathways" to the initial transfers is entirely irrelevant to the issue of whether the initial transfers were "in connection with" any transaction or contract between Sentry and KEB for purposes of application of the safe harbor. KEB is also wrong in asserting that the initial transfers were made "for the benefit of" KEB. *See Mot.* at 21, 22. The Complaint plainly alleges that KEB is a subsequent transferee, and it is settled law that a defendant cannot be both a subsequent transferee and a party for whose benefit an initial transfer is made. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 474 (Bankr. S.D.N.Y. 2015) (citing cases).

[11] Though not necessary to the Court's analysis, we note that KEB's argument that the Trustee is in privity with the Chapter 15 Fairfield liquidators and therefore bound by any rulings in the Fairfield liquidation is incorrect. *See* Mot. at 21. The Trustee was not a party to the Fairfield liquidators' action and his interests were not represented. Merely sharing an interest in recovering customer property hardly constitutes the sort of "substantive legal relationship" required under *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008), to establish nonparty issue preclusion. *See Krys v. Sugrue (In re Refco Inc. Sec. Litig.)*, No. 07-MD-1902 (JSR), 2013 WL 12191844, at *13 (S.D.N.Y. Mar. 25, 2013) (emphasizing "preclusion of nonparties is an *exceptional* situation"). KEB's cited case of *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001), (Mot. at 21, n.12), is inapposite, as that case did not involve nonparty issue preclusion.

[12] *See, e.g.*, *Fairfield Inv. Fund*, 2021 WL 3477479, at *4 (applying actual knowledge exception).

[13] *See* Mem. of Law in Supp. of Motion to Withdraw the Reference (April 2, 2012), ECF No. 9 ("incorporate[ing] by reference each of the legal arguments made by . . . other defendants filing similar motions in Related Actions. . . .")

*See, e.g.*, *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 466 (Bankr.
S.D.N.Y. 2015) ("Those moving defendants that participated in the withdrawal of the reference of
the antecedent debt/value issue have had their day in court and Judge Rakoff's decisions are law
of the case.").   KEB also did not seek leave to appeal the *Cohmad* decision, and the Second
Circuit's decision in *In re Bernard L. Madoff Inv. Secs. LLC (Picard v. Ida Fishman Recoverable
Trust)*, 773 F.3d 411 (2d Cir. 2014) ("*Ida Fishman*") does not warrant reconsideration of *Cohmad's*
actual knowledge exception.   *See Picard v. Cohen*, Adv. Pro. No. 10-04311 (SMB), 2016 WL
1695296, at *10 n.16 (Bankr. S.D.N.Y. Apr. 25, 2016) (noting *Ida Fishman* did not address the
actual knowledge exception).

KEB is also wrong that the Trustee must allege that a subsequent transferee had actual
knowledge in order to invoke the actual knowledge exception to Section 546(e).   Specifically,
KEB contends that even if *Cohmad* was correctly decided, "it would not affect this case because
the complaint does not allege that KEB had knowledge of BLMIS' fraud."   Mot. at 23, n.16.   But
*Cohmad* does not stand for this proposition, as "[t]he safe harbor is not applicable to subsequent
transfers."   *Multi-Strategy*, 2022 WL 2137073, at *9; *SYZ*, 2022 WL 2135019 at *9; *Lombard*,
2022 WL 2387523, at *9; *Bordier*, 2022 WL 2390556, at *5; *Lloyds TSB*, 2022 WL 2390551, at
*5.   By its plain language, Section 546(e) applies to the avoidance of initial transfers, not the
recovery of subsequent transfers under Section 550.   *See* 11 U.S.C. § 546(e) ("[T]he trustee may
not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title." (emphasis added)); *see
also BNP*, 594 B.R. at 197 ("The Trustee does not . . . 'avoid' the subsequent transfer; he recovers
the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a),
and the safe harbor does not refer to the recovery claims under section 550."); *Kelley v. Safe*

*Harbor Managed Acct. 101, Ltd.*, No. 20-3330, 2022 WL 1177748, at *3 n.5 (8th Cir. Apr. 21, 2022) ("*SHMA*") (citing *BNP*).

This limitation on the safe harbor to avoidance actions is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Secs.),* 501 B.R. 26, 30 (S.D.N.Y. Oct. 28, 2013) (Rakoff, J.) (citation omitted). It is also consistent with the understanding that the Code's avoidance provisions protect against depletion of a debtor's estate, while Section 550 is merely a "utility provision," intended to help execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place." *See In re Picard*, 917 F.3d at 98 (internal quotation marks and citation omitted).

Following *Cohmad's* precedent, this Court has confirmed on numerous occasions that Section 546(e) is applicable only to avoidance and not recovery, notably holding on each occasion that a subsequent transferee cannot assert the protections of Section 546(e) where the Trustee has adequately pled the initial transferee's actual knowledge. *See BNP*, 594 B.R. at 197; *Multi-Strategy*, 2022 WL 2137073, at *9; *SYZ*, 2022 WL 2135019, at *9; *Lombard*, 2022 WL 2387523, at *9-10; *Bordier*, 2022 WL 2390556, at *5-6; *Lloyds TSB*, 2022 WL 2390551, at *5-6; *see also SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*, 620 B.R. 505, 514 (Bankr. S.D.N.Y. 2020) ("[T]he safe harbor defense only applies by its terms to the initial transfer."). As explained in *BNP*, a subsequent transferee gets only "indirect" protection from Section 546(e) to the same extent it protects the initial transferee. 594 B.R. at 197; *see also SHMA*, 2022 WL 1177748, at *3 n.5 (citing *BNP* and explaining that "a subsequent transferee is protected *indirectly* [under Section 546(e)] to the extent that the initial transfer is not avoidable because of the safe harbor") (cleaned up; emphasis added). Put simply: "Defendant is not permitted to raise the safe

harbor defense on its own behalf as a subsequent transferee." *Multi-Strategy*, 2022 WL 2137073, at *10; *SYZ*, 2022 WL 2135019, at *10; *Lombard*, 2022 WL 2387523, at *10; *Bordier*, 2022 WL 2390556, at *6; *Lloyds TSB*, 2022 WL 2390551, at *6.

## III. THE TRUSTEE'S COMPLAINT ADEQUATELY PLEADS THAT KEB RECEIVED BLMIS CUSTOMER PROPERTY

The Trustee's Complaint plausibly alleges that KEB received subsequent transfers of stolen BLMIS customer property. To plead a subsequent transfer claim, the Trustee must allege facts that support an inference "that the funds at issue originated with the debtor." *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149-50 (Bankr. S.D.N.Y. 2014) (citation omitted). KEB, however, ignores that this pleading burden "is not so onerous as to require 'dollar-for-dollar accounting' of 'the exact funds' at issue." *Id.* at 150 (quoting *Picard v. Charles Ellerin Revocable Tr. (In re BLMIS)*, Adv. Pro. No. 10-04398 (BRL), 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012)). Rather, "the Trustee need only allege sufficient facts to show the relevant pathways through which the funds were transferred from BLMIS to [the subsequent transferee]." *Charles Ellerin Revocable Tr.*, 2012 WL 892514, at *3; *see also 45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 747 (Bankr. S.D.N.Y. 2019). In addition, the Trustee need only allege the "'necessary vital statistics—the who, when, and how much' of the purported transfers to establish an entity as a subsequent transferee of the funds." *Merkin*, 515 B.R. at 150 (quoting *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 32 (Bankr. E.D.N.Y. 2007)).

The Trustee's Complaint easily meets these requirements. As KEB concedes, the Complaint alleges that KEB received transfers, identified by date and amount, from Sentry, and that Sentry invested substantially all of its funds with BLMIS and received initial transfers from BLMIS. *See* Compl. ¶¶ 2, 34-41; Exs. B & C; Mot. at 24. The Complaint thus plausibly alleges

that KEB received subsequent transfers of customer property by outlining the relevant pathways through which stolen customer property was transferred from BLMIS to Sentry and subsequently to KEB, and provides the necessary vital statistics (i.e., the "who, when, and how much") for each subsequent transfer.  Despite KEB's protestations to the contrary, nothing more is required.  *See Multi-Strategy*, 2022 WL 2137073, at *10; *SYZ*, 2022 WL 2135019, at *12; *Lombard*, 2022 WL 2387523, at *10; *Bordier*, 2022 WL 2390556, at *6; *Carige*, 2022 WL 2387522, at *7; *Lloyds TSB*, 2022 WL 2390551, at *6.

Nevertheless, KEB essentially argues for a new pleading burden, asserting that the Trustee must tie each subsequent transfer KEB received to a specific initial transfer from BLMIS to Sentry. *See* Mot. at 23-24.  In *Merkin*, however, this Court refused to dismiss subsequent transfer claims even though the complaint "d[id] not connect each of the subsequent transfers with an initial, voidable transfer emanating from BLMIS." 515 B.R. at 150; *see also 45 John Lofts, LLC*, 599 B.R. at 747 (finding no "requirement to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss").  And to the extent KEB argues that the Trustee must detail which and what portion of each subsequent transfer comprises customer property, this is also wrong.  *See Merkin*, 515 B.R. at 152-53 (refusing to dismiss complaint where "at least some of the subsequent transfers . . . may be recoverable"); *see also In re Allou Distribs., Inc.*, 379 B.R. at 30 (finding "if dollar-for-dollar accounting is not required at the proof stage, then surely it is not required at the pleading stage either").

KEB's reliance on this Court's decision in *Picard v. Shapiro* is unavailing because *Shapiro* did not change the Trustee's pleading burden and involved far less-specific allegations.  *See* Mot. at 24 (citing *Picard v. Shapiro (In re BLMIS)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015)).  In *Shapiro*, the Trustee alleged that certain trusts and members of the Shapiro family received

approximately $54 million in fraudulent transfers from BLMIS, and "upon information and belief," these defendants subsequently transferred this same amount to other defendants. *See Shapiro*, 542 B.R. at 119.  However, that complaint did not detail any of the necessary vital statistics of the subsequent transfers. *Id.*  There were no allegations regarding the subsequent transferors, the subsequent transferees, or the dates or amounts of the subsequent transfers, and consequently this Court granted defendants' motion to dismiss the subsequent transfer claim. *Id.* By contrast, Exhibit C to the Complaint provides specific details regarding the subsequent transfers at issue, including the date and amount of each transfer that KEB received.  There were no such specific allegations regarding the subsequent transfers at issue in *Shapiro* and there is simply no comparison between *Shapiro* and this case.

KEB's citation to *In re Caremerica*, 409 B.R. 737 (E.D.N.C. 2009) is similarly inapposite. In that case, the plaintiffs failed to allege a reasonable inference that the debtors transferred funds under Section 547 because there were no facts showing the debtors had an interest in the property exchanging hands. *See id.* at 750-51.  The plaintiffs in that case failed to sufficiently allege that the transfer from a non-debtor bank account actually originated from the debtor.  Not so here, where the Trustee sets out the investment relationship between KEB and Sentry and the relationship between Sentry and BLMIS—which held virtually all of Sentry's assets and made a number of transfers to Sentry over time.

KEB's fact-based tracing argument regarding "obvious competing explanations" fares no better and is inappropriate for a motion to dismiss. *See* Mot. at 25-26.  Trying to deflect from the fact that it received more than $33.5 million in transfers, KEB asserts that BLMIS was not the exclusive source of funds that Sentry could use to satisfy redemption requests and make other payments. *See* Mot. at 25-26.  KEB contends that despite Sentry being almost fully invested in

BLMIS, KEB's transfers could have come from other sources such as "existing and new investors," "borrowed money," and "intercompany transfers." Mot. at 26. These theories, however, raise questions of fact outside of the Trustee's well-pleaded allegations that should not defeat the Trustee's claims. *See Williams v. Time Warner Inc.*, 440 Fed. App'x 7, 9 (2d Cir. 2011) (explaining that in deciding a motion under Rule 12(b)(6), courts are "generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference") (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)). The same holds true for any issues related to commingling of funds at Sentry, which is implied in KEB's argument. *Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-cv-1073 (ECT/KMM), 2020 WL 3077151, at *4 (D. Minn. June 10, 2020) (citing *Charles Ellerin Revocable Trust*, 2012 WL 892514, at *2) ("The law does not place such a difficult burden on trustees. The commingling of legitimate funds with funds transferred from the debtor does not defeat tracing."). As this Court has already opined, "[t]he calculation of Fairfield Sentry's customer property and what funds it used to make redemption payments are issues of fact better resolved at a later stage of litigation." *Multi-Strategy*, 2022 WL 2137073, at *10; *SYZ*, 2022 WL 2135019, at *12; *Lombard*, 2022 WL 2387523, at *11; *Bordier*, 2022 WL 2390556, at *7; *Carige*, 2022 WL 2387522, at *8; *Lloyd's TSB*, 2022 WL 2390551, at *7.

KEB's assertion that the Trustee does not need discovery to determine which portion of the subsequent transfers originated with BLMIS is similarly without merit. Despite this case still being in the pleading stage, KEB argues that "if the plaintiff does not have the facts by now, where would he look and what would he expect . . . ?" Mot. at 25. The Trustee, however, does not have all of the necessary books and records, and discovery in the Trustee's action against the Fairfield management defendants continues. *See, e.g.*, Stipulated Case Mgmt. Order, *Picard v. Fairfield*

*Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. Dec. 6, 2021), ECF No. 353 (setting future deadlines for fact discovery and expert discovery). And in contending that expert opinion is unnecessary because the "expert will need the same facts that are missing from the complaint," (Mot. at 25), KEB ignores the applicable pleading standard, the relevant discovery rules, and the fact that it is for the Court to determine the relevant tracing methodology. Indeed, that it may appear difficult, or even unlikely, for the Trustee to adequately trace all the subsequent transfers is not grounds for dismissal at the pleading stage. *See Merkin*, 515 B.R. at 152 (finding it "premature to cut off the Trustee's opportunity to satisfy his [tracing] burden on a motion to dismiss" merely because the tracing may prove difficult); *Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP)*, No. 08-15051 (SMB), Adv. Pro. Nos. 10-03493 (SMB), 10-05447 (SMB), 2014 WL 47774, at *15 (Bankr. S.D.N.Y. Jan. 3, 2014) ("[T]he [subsequent transferees'] speculation that tracing is 'not likely' to reveal a subsequent transfer . . . hardly justifies granting [their cross-motion for summary judgment].").

## IV. THE TRUSTEE SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE SENTRY TRANSFERS

KEB argues that the Trustee's incorporation of the Fairfield Amended Complaint[14] violates incorporation by reference under Rule 10(c) and violates Rule 8(a)(2)'s requirement to include "a short and plain statement." Mot. at 26-30. However, the Trustee may incorporate by reference the Fairfield Amended Complaint in appropriately demonstrating the avoidability of the initial transfers from BLMIS to Sentry. The Court also may take judicial notice of its own decision on the avoidability of the initial transfers in the Fairfield SAC.

[14] As noted in Footnote 1, *supra*, the Fairfield Amended Complaint was amended after the filing of the Complaint in this adversary proceeding. The operative complaint in that action is the Fairfield Second Amended Complaint.

### A. The Incorporated Material Complies with Rules 10 and 8

KEB argues that the Trustee may not incorporate by reference the Fairfield Amended Complaint, which details the avoidability of the initial transfers. *See* 11 U.S.C. § 548(a)(1). KEB's main support for this assertion is that courts in other contexts have declined to allow incorporation by reference of pleadings in a different action. *See* Mot. at 28–29. In the bankruptcy context, however, "pleadings filed in the 'same action' may be properly adopted by reference in other pleadings in that action" and the "Fairfield Complaint was filed in the 'same action' as this adversary proceeding for purposes of Rule 10(c)." *Multi-Strategy*, 2022 WL 2137073, at *7 (citing *Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010)); *SYZ*, 2022 WL 2135019, at *7 (same); *Lombard*, 2022 WL 2387523, at *7; *Bordier*, 2022 WL 2390556, at *3; *Carige*, 2022 WL 2387522, at *6; *Lloyds TSB*, 2022 WL 2390551, at *3.

KEB also ignores the District Court's prior opinion on whether under Section 550(a) the Trustee must avoid an initial transfer or plead its avoidability in a subsequent transfer action. *In re Madoff Sec.*, 501 B.R. at 26. In that decision, the District Court found sufficient the Trustee's incorporation by reference of initial transfer complaints, including the Fairfield Amended Complaint:

> [T]he Trustee's complaint against [the subsequent transfer defendant] incorporates by reference the complaints against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. . . . Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).

*Id.* at 36. As this Court has determined, "[t]he district court has already found that adoption by reference of the entire Fairfield Complaint is proper." *Multi-Strategy*, 2022 WL 2137073, at *7; *SYZ*, 2022 WL 2135019, at *7; *Lombard*, 2022 WL 2387523, at *7; *Bordier*, 2022 WL 2390556, at *3; *Carige*, 2022 WL 2387522, at *6; *Lloyds TSB*, 2022 WL 2390551, at *3.

Regardless, Rule 10(c) is not so limited as to prohibit the incorporation of entire pleadings from other actions. *See* Mot. at 27-29.  The Southern District of New York and other federal courts have permitted incorporation by reference of pleadings in separate actions in appropriate circumstances. *See Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 323 n.5 (S.D.N.Y. 2007) (citation omitted) (interpreting Rule 10(c)'s reference to "another pleading" as not being confined to another pleading in the same action, and permitting incorporation of entire pleadings in separate cases); *Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC*, 843 F. Supp. 2d 191, 214 n.15 (D. Mass. 2012) (holding incorporation by reference appropriate where "the court [was] familiar with the filings in the other [] case[], which [were] substantially similar to [that] case, and the usual concerns about inferring arguments from other submissions have less force.").

The Trustee's incorporation of the Fairfield Amended Complaint also satisfies Rule 8. KEB cites to *U.S. v. Int'l Longshoremen's Assn.*, (*see* Mot. at 29), but unlike in that case, the incorporation here does not turn the Complaint into an "unintelligible morass of self-contradictory allegations," make it "redundant," create "mutually inconsistent factual allegations," or involve RICO claims where incorporation by reference is "particularly inappropriate."  518 F. Supp. 2d 422, 462 n.72, 464 n.76, 466 n.77 (E.D.N.Y. 2007).  By contrast, the Trustee's incorporation is explicit and straightforward, with its purpose obvious.  *See* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure 3d § 1326 (4th ed. 2008) ("If the incorporation is clear, less emphasis need be placed on the source of the incorporated material."); *Whitaker Secs., LLC v. Rosenfeld (In re Rosenfeld)*, 543 B.R. 60, 66 (Bankr. S.D.N.Y. 2015) (noting that some courts fear incorporation by reference will not provide adequate notice as to claims or factual allegations, but allowing incorporation because "there is no danger such of prejudice").  There is simply no concern here with confusion or inconvenient results from the incorporation.  *SYZ*, 2022 WL 2135019, at

*8; *Lombard*, 2022 WL 2387523, at *7; *Bordier*, 2022 WL 2390556, at *4; *Carige*, 2022 WL 2387522, at *7; *Lloyds TSB*, 2022 WL 2390551, at *4.[15]

KEB disregards the obvious purpose of the incorporated allegations: to make a *prima facie* showing that the initial transfers are avoidable under Section 548(a) so that the Trustee can recover from KEB under Section 550(a). *See Citibank*, 12 F.4th at 196–97. The Complaint only incorporates the Fairfield Amended Complaint—as part of one paragraph—in pleading the avoidability of the initial transfers. This places no undue burden on KEB, as it can admit the substance of the avoidability of the initial transfers, deny them, or respond that it does not have sufficient information to admit or deny. Repleading the initial transfer allegations would unnecessarily add countless pages to the Complaint. "Through the adoption of the Fairfield Complaint, the Trustee has adequately pleaded, with particularity, the avoidability of the initial transfer due to Fairfield Sentry's knowledge of BLMIS' fraud." *Lombard*, 2022 WL 2387523, at *8; *Bordier*, 2022 WL 2390556, at *4; *Carige*, 2022 WL 2387522, at *7; *Lloyds TSB*, 2022 WL 2390551, at *4; *see also Multi-Strategy*, 2022 WL 2137073, at *7 (holding that avoidability of initial transfer was adequately pleaded by reference); *SYZ*, 2022 WL 2135019, at *8 (same).

### B.    The Court Can Take Judicial Notice of the *Fairfield Inv. Fund* Decision

KEB's arguments about incorporation are really much ado about nothing because this Court may take judicial notice of the operative Fairfield SAC and its prior decision holding that the complaint sufficiently alleges the avoidability of the initial transfers. *See Fairfield Inv. Fund*, 2021 WL 3477479. On a motion to dismiss, "a court may take judicial notice of prior pleadings,

---

[15] Cases cited by KEB are inapposite. *See, e.g., Davis v. Bifani*, No. 07-cv-00122-MEH-BNB, 2007 WL 1216518, at *1 (D. Colo. Apr. 24, 2007) (incorporating pleadings in separate actions in an attempt to add brand new claims); *Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*, No. 13 CIV. 6705 (DLC), 2014 WL 1673351, at *9 (S.D.N.Y. Apr. 28, 2014) (incorporating affirmative defenses in answers filed by defendants in other actions; *Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212, 215 (D. Mass. 1995) (incorporating arguments in a previously filed motion to dismiss).

orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*." *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011).  "Included among such matters are decisions in prior lawsuits." *DeMasi v. Benefico*, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008).  The fact that the Fairfield SAC was filed after the Complaint in this action is of no consequence.  *See Rothman v. Gregor*, 220 F.3d 81, 91–92 (2d Cir. 2000) (taking judicial notice of a subsequently filed complaint in related proceeding).

The Trustee has complied with the Federal Rules in pleading the avoidability of the initial transfers, and regardless, this Court may take judicial notice of its opinion in *Fairfield Investment Fund*.  If this Court holds otherwise, the Trustee respectfully requests the opportunity to replead.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court deny KEB's Motion.

Respectfully submitted,

Dated: July 15, 2022
New York, New York

/s/ *Eric R. Fish*
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York
Tel.: (212) 589-4200
Fax: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Eric R. Fish
Email: efish@bakerlaw.com
Kayley B. Sullivan
Email: kbsullivan@bakerlaw.com
Megan A. Corrigan
mcorrigan@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Chapter 7 Estate of Bernard L. Madoff*