PROSKAUER ROSE LLP
Ehud Barak, Esq.
Russell T. Gorkin, Esq.
Elliot R. Stevens, Esq.
Eleven Times Square
New York, NY 10036-8299
Telephone:  212-969-3000
Facsimile:  212-969-2900
Email:  ebarak@proskauer.com
          rgorkin@proskauer.com
          estevens@proskauer.com

*Attorneys for Defendants Grosvenor Investment Management Ltd.,*
*Grosvenor Private Reserve Fund Limited,*
*Grosvenor Balanced Growth Fund Limited and*
*Grosvenor Aggressive Growth Fund Limited*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>               Plaintiff-Applicant,<br><br>    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>               Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF<br><br>               Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>               Plaintiff,<br><br>    v.<br><br>GROSVENOR INVESTMENT MANAGEMENT LTD., GROSVENOR PRIVATE RESERVE FUND LIMITED (in liquidation), GROSVENOR BALANCED GROWTH FUND LIMITED (in liquidation) AND GROSVENOR AGGRESSIVE GROWTH FUND LIMITED (in liquidation),<br><br>               Defendants. | Adv. Pro. No. 12-01021 (BRL)<br><br>**DEFENDANTS' REPLY TO THE TRUSTEE'S OPPOSITION TO THE MOTION TO DISMISS THE COMPLAINT** |

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................1

ARGUMENT .......................................................................................2

I.     THE TRUSTEE HAS NOT ESTABLISHED A PRIMA FACIE CASE OF PERSONAL JURISDICTION OVER THE GROSVENOR DEFENDANTS ..............................................................................2

      A.     The Trustee's Knowledge-and-Intent Theory Does Not Suffice to Impute Sentry's or BLMIS's Contacts to the Grosvenor Defendants ...........................................................................3

      B.     The Subscription Agreements Do Not Provide a Basis for Jurisdiction..........................................................................5

      C.     The Use of Correspondent Bank Accounts Cannot Support Jurisdiction Here .................................................................6

      D.     Assorted Communications and Unrelated Transactions Cannot Ground Jurisdiction...........................................................8

      E.     The Exercise of Jurisdiction Would Not Be Reasonable...........10

II.     THE COMPLAINT DOES NOT COMPLY WITH RULES 8(a) AND 10(c) ................................................................................11

III.     SECTION 546(e) REQUIRES DISMISSAL OF THE TRUSTEE'S COMPLAINT .......................................................................12

      A.     The Knowledge Exception Violates the Text of Bankruptcy Code Section 546(e) ........................................................12

      B.     Even if Applied, the Knowledge Exception Does Not Prohibit the Grosvenor Defendants From Invoking Section 546(e) To Show the Initial Transfers Cannot Be Avoided ......................................14

           1.     The Knowledge Exception Only Prohibits *Defendants* With Knowledge of the Fraud from Invoking Section 546(e)................14

           2.     The Initial Transfers Are Not Avoidable Because They Were Made in Connection with Real Settlement Payments and Securities Contracts...............................................16

IV.   THE COMPLAINT MUST BE DISMISSED AS IT FAILS TO
PLAUSIBLY ALLEGE THE GROSVENOR DEFENDANTS
RECEIVED BLMIS PROPERTY ........................................................................17

A.   The Trustee Has Not Alleged Facts Supporting the Inference the
Funds He Alleges the Grosvenor Defendants Received Originated
With BLMIS .............................................................................................18

B.   The Trustee's Tracing and Commingling Arguments Lack
Relevance ..................................................................................................18

C.   The Trustee Has All of the Records He Needs .........................................20

CONCLUSION.........................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
    599 B.R. 730 (Bankr. S.D.N.Y. 2019).......................................................................18

*American Casein Co. v. Geiger (In re Geiger)*,
    446 B.R. 670 (Bankr. E.D. Pa. 2010) ......................................................................11

*Baines v. City of New York*,
    2015 WL 3555758 (S.D.N.Y. June 8, 2015) ...........................................................19

*Berdeaux v. OneCoin Ltd.*,
    561 F. Supp. 3d 379 (S.D.N.Y. 2021)........................................................................8

*Brecht v. Abrahamson*,
    507 U.S. 619 (1993)....................................................................................................3

*Deutsche Bank Trust Co. Ams. v. Large Private Ben. Owners (In re Tribune Co.
    Fraudulent Conveyance Litig.)*,
    946 F.3d 66 (2d Cir. 2019),
    *cert. denied*, 141 S. Ct. 2552 (2021) .....................................................................14

*ESI, Inc. v. Coastal Corp.*,
    61 F. Supp. 2d 35 (S.D.N.Y. 1999) ...........................................................................9

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
    397 F. Supp. 3d 323 (S.D.N.Y. 2019) .......................................................................7

*Fiore v. Walden*,
    688 F.3d 558 (9th Cir. 2012) .....................................................................................4

*Foxglenn Investors Ltd. Partnership v. Cisneros*,
    35 F.3d 947 (4th Cir. 1994) .....................................................................................13

*Golden Archer Invs., LLC v. Skynet Fin. Sys.*,
    2012 WL 123989 (S.D.N.Y. Jan. 3, 2012) ................................................................9

*Helms v. Metro. Life Ins. Co. (In re O'Malley)*,
    601 B.R. 629 (Bankr. N.D. Ill. 2019) ......................................................................19

*Homeschool Buyers Club, Inc. v. Brave Writer, LLC*,
    No. 19-CV-6046 (VSB), 2020 WL 1166053 (S.D.N.Y. Mar. 11, 2020 .....................4

*In re Artimm, S.r.L.*,
    335 B.R. 149 (Bankr. C.D. Cal. 2005)....................................................................10

*In re Atlas Shipping A/S,*
    404 B.R. 726 (Bankr. S.D.N.Y. 2009) ...................................................................10

*In re Energy Coal S.P.A.,*
    582 B.R. 619 (Bankr. D. Del. 2018) ....................................................................10

*Law v. Siegel,*
    571 U.S. 415 (2014) ...........................................................................................13

*Licci v. Lebanese Can. Bank, SAL,*
    984 N.E.2d 893 (N.Y. 2012) .................................................................................6

*Motors Liquid. Co. Avoidance Action Tr. ex rel. Wilmington Tr. Co. v. JPMorgan Chase Bank, N.A. (In re Motors Liquid. Co.),*
    565 B.R. 275, 279 (Bankr. S.D.N.Y. 2017) ...........................................................7

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.,*
    2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010) .......................................................11

*OneWest Bank, N.A. v. Guerrero,*
    2018 WL 2727891 (S.D.N.Y. June 6, 2018) ..........................................................2

*Official Comm. of Unsecured Creditors of Arcapita, Bank. B.S.C. v. Bahrain Islamic Bank,*
    549 B.R. 56 (S.D.N.Y. 2016) ................................................................................7

*Picard v. Bureau of Labor Ins. (In re Madoff),*
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) ("*BLI*") ...................................................3, 6

*Picard v. Chais (In re Bernard L. Madoff Inv. Sec. LLC),*
    440 B.R. 274 (Bankr. S.D.N.Y. 2010) ...................................................................8

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC),*
    454 B.R. 317 (Bankr. S.D.N.Y. 2011) ("*Cohmad I*") ............................................18

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC),*
    418 B.R. 75, 80 (Bankr. S.D.N.Y. 2009) ...............................................................8

*Picard v. Estate (Succession) of Igoin (In re Bernard L. Madoff Inv. Sec. LLC),* 525 B.R.
    871 (Bankr. S.D.N.Y. 2015) .................................................................................8

*Picard v. Ida Fishman Recoverable Tr. (In re Bernard L. Madoff Inv. Sec. LLC),*
    773 F.3d 411 (2d Cir. 2014) ...........................................................................13, 17

*Picard v. JPMorgan Chase & Co. (In re BLMIS),*
    2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10, 2014) ..............................................3

*Picard v. Mayer (In re Bernard L. Madoff)*,
  2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021) ............................................................18

*Picard v. Merkin* (*In re BLMIS*),
  515 B.R. 117 (Bankr. S.D.N.Y. 2014) ..................................................................................18

*Picard v. Multi-Strategy Fund Ltd.*,
  Adv. Pro. No. 12-01205 (CGM), ECF No. 122 (Main Case ECF No. 21729) (Bankr.
  S.D.N.Y. June 13, 2022) ("*Multi-Strategy*") ........................................................4, 5, 7, 12, 20

*Premier Funding Grp. LLC v. Aviva Life & Annuity Co.*,
  2014 U.S. Dist. LEXIS 169335 (D. Ariz. Dec. 8, 2014) ........................................................4

*Rubinbaum, L.L.P. v. Related Corporate Partners V, L.P.*,
  154 F. Supp. 2d 481 (S.D.N.Y. 2001) ....................................................................................9

*Rushaid v. Pictet & Cie*,
  68 N.E.3d 1 (N.Y. 2016) ...................................................................................................6-7

*Scott v. JPMorgan Chase & Co.*,
  2014 WL 338753 (S.D.N.Y. Jan. 30, 2014) ..........................................................................12

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
  476 B.R. 715 (S.D.N.Y. 2012),
  *aff'd*, 773 F.3d 411 (2d Cir. 2014) ......................................................................................16

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re Madoff)*,
  594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("*BNP Paribas*") ...........................................9, 16

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*,
  460 B.R. 106 (Bankr. S.D.N.Y. 2011) ("*Maxam*") .................................................................3

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
  501 B.R. 26 (S.D.N.Y. 2013) ...............................................................................................12

*Serrano v. Cablevision Sys. Corp.*,
  863 F. Supp. 2d 157 (E.D.N.Y. 2012) .....................................................................................2

*Silverman v. K.E.R.U. Realty Corp.* (*In re Allou Distribs. Inc.*),
  379 B.R. 5 (Bankr. E.D.N.Y. 2007) ......................................................................................18

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
  2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad 2013*") ....................................15, 17

*United States v. Int'l Longshoremen's Ass'n*,
  518 F. Supp. 2d 422 (E.D.N.Y. 2007) ...................................................................................11

*Univ. Trading & Inv. Co. v. Tymoshenko*,
    2012 WL 6186471 (S.D.N.Y. Dec. 12, 2012) ........................................................8

*U.S. Bank. Nat'l Ass'n v. Bank of Am. N.A.*,
    916 F.3d 143 (2d Cir. 2019).................................................................................9

*Walden v. Fiore*,
    571 U.S. 277 (2014)........................................................................................3, 4

*Wilson v. JPMorgan Chase Bank*, N.A.,
    2021 WL 5179914 (S.D.N.Y. Nov. 8, 2021)........................................................19

STATUTES

11 U.S.C. § 548(a)(1)(A) ...........................................................................................13

11 U.S.C. § 546(e) .......................................................................................... *passim*

11 U.S.C. § 550...................................................................................................13, 20

The Grosvenor Defendants submit this reply (the "Reply") to the *Trustee's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint* (ECF No. 115) (the "Opposition" or "Opp.") in support of the motion to dismiss (ECF No. 108) (the "Motion").[1]

## PRELIMINARY STATEMENT

In opposition to the Motion, the Trustee hurls a kaleidoscope of jurisdictional and other arguments at the Court in an attempt to stave off dismissal.  Time after time, however, the Trustee fails to respond to key arguments made by the Grosvenor Defendants, instead refuting various straw-man arguments the Grosvenor Defendants never raised.

The Trustee cannot make out a *prima facie* case for personal jurisdiction.  The Trustee alleges the Grosvenor Defendants knew of Sentry's connections to New York, intended for their funds to be sent to BLMIS, and therefore purposefully availed themselves of New York law.  But this "knowledge and intent" theory has been rejected by the Supreme Court and cannot be used to establish jurisdiction here.  With that argument foreclosed, the Trustee is reduced to arguing jurisdiction is justified based on actions taken by non-defendant *banks*—not the Grosvenor Defendants—as well as a grab-bag of other allegations relating to different transactions not relevant to the Trustee's claims or merely documenting ministerial acts.  Neither together nor separately do these alleged contacts establish personal jurisdiction.

The Trustee has also failed to refute the other bases for dismissal set forth in the Motion.  Indeed, the Trustee has simply chosen to ignore arguments to which he has no adequate response.  As discussed in more detail below, the Trustee (1) fails to explain how the supposed wholesale incorporation of the (no longer extant) Fairfield Amended Complaint complies with

---

[1]  Capitalized terms used but not defined herein have the meaning given them in the Grosvenor Defendants' memorandum of law (ECF No. 109) (the "Memorandum" or "MOL").

Rule 8(a) (it does not), (2) does not dispute, and thus concedes, the initial transfers between

BLMIS and the Grosvenor Defendants fall within Section 546(e) as written (so they cannot be

avoided), and (3) ignores the inherent contradictions in its allegations against various subsequent

transferees (making its allegations against the Grosvenor Defendants implausible, and in some

instances impossible).  As a result, the Grosvenor Complaint must be dismissed.

## ARGUMENT

### I.    THE TRUSTEE HAS NOT ESTABLISHED A PRIMA FACIE CASE OF PERSONAL JURISDICTION OVER THE GROSVENOR DEFENDANTS

In support of the Motion, Michael A. Morrison declared (1) the Grosvenor Defendants

were all incorporated in Bermuda, where they are undergoing liquidation, (Morrison Decl. ¶¶ 4–

15); (2) the Grosvenor Defendants maintained offices only in Bermuda, where they conducted all

of their business (*id.* ¶ 16); (3) the Grosvenor Defendants have never had any offices, investors

or employees in the United States, or been registered to conduct business in the United States (*id.*

¶¶ 16–19); and (4) the Grosvenor Defendants only maintained bank accounts in Bermuda with

Bermuda banks, and never maintained any bank accounts in the United States (*id.* ¶¶ 20–21).[2]

The Trustee does not attempt to refute any of these facts, but instead hurls a hodgepodge of

attenuated connections between the Grosvenor Defendants, Sentry, FGG, and BLMIS in the

hopes that something will justify the exercise of jurisdiction.  None of this is sufficient to

establish personal jurisdiction over the Grosvenor Defendants.

---

[2]    While the Trustee does not challenge the Morrison Declaration, he says it is "incredibl[e]" Mr. Morrison bases some of his testimony on his review of business records.  (*See* Opp. at 35 n.27.)  It is unclear what is incredible about this, as courts in this circuit regularly permit testimony based on a review of business records.  *See, e.g.*, *OneWest Bank, N.A. v. Guerrero*, 2018 WL 2727891, at *5 (S.D.N.Y. June 6, 2018) (admitting affiant's testimony because the testimony was based on business records that the affiant had reviewed in her official capacity); *Serrano v. Cablevision Sys. Corp.*, 863 F. Supp. 2d 157, 163–64 (E.D.N.Y. 2012) (concluding the affiant's testimony was admissible because the testimony was "based on business records maintained by [the defendant] and reviewed by [the affiant] himself").

A.      **The Trustee's Knowledge-and-Intent Theory Does Not Suffice to Impute Sentry's or BLMIS's Contacts to the Grosvenor Defendants**

As his primary argument, the Trustee asserts personal jurisdiction exists because the Grosvenor Defendants "invested in Sentry with the specific purpose of having their funds invested with BLMIS in New York."  (Opp. at 11; *see also* Compl. ¶ 7.)  The Trustee dedicates pages of his brief to referencing documents the Grosvenor Defendants allegedly represented they read and which allegedly discussed Sentry's close ties to BLMIS, BLMIS's control over Sentry's investment strategies, and the fact that funds invested in Sentry would be invested in the New York stock market through BLMIS.  (Opp. at 4–6.)  The Trustee draws from all of this that the Grosvenor Defendants invested in Sentry (a BVI entity) "knowing and intending" Sentry would invest their funds with BLMIS in New York.  (*Id.* at 11.)  According to the Trustee, such knowledge of Sentry's contacts to New York, and intent that a consequence occur with BLMIS in New York, gives rise to personal jurisdiction.  (*Id.* at 11, 15–18.)

The Trustee relies primarily on *Picard v. Bureau of Labor Insurance (In re Madoff)*, 480 B.R. 501, 516–18 (Bankr. S.D.N.Y. 2012) ("*BLI*") and *Securities Investor Protector Corp. v. Bernard L. Madoff Investment Securities, LLC*, 460 B.R. 106, 116–20 (Bankr. S.D.N.Y. 2011) ("*Maxam*").  (Opp. at 11, 15–18.)[3]  The Trustee's argument falls flat, however, because it ignores that the Grosvenor Defendants' arguments were not decided in *BLI* or *Maxam*.  *See, e.g.*, *Brecht v. Abrahamson*, 507 U.S. 619, 630–31 (1993) (decision not precedent for issues not "squarely addressed").  Moreover, *BLI* and *Maxam* are inconsistent with subsequent Supreme Court and other binding case law, including *Walden v. Fiore*, 571 U.S. 277 (2014), which makes clear simply knowing of and intending a consequence with respect to an entity in the forum state

---

[3]  The Trustee also cites *Picard v. JPMorgan Chase & Co. (In re BLMIS)*, 2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014), (Opp. at 11), but that case did not decide anything with respect to personal jurisdiction; it approved a settlement and noted personal jurisdiction had previously been found to exist over certain transferees.

does not give rise to jurisdiction. (*See* MOL at 12–15.)

The Trustee attempts to avoid the implications of *Walden* by citing this Court's decision in *Picard v. Multi-Strategy Fund Ltd.*, Adv. Pro. No. 12-01205 (CGM), ECF No. 122 (Main Case ECF No. 21729) (Bankr. S.D.N.Y. June 13, 2022) ("*Multi-Strategy*"). The Court in *Multi-Strategy*, however, did not address *Walden*'s key holding. In *Walden*, the Ninth Circuit had upheld personal jurisdiction precisely because the defendant "must have known and intended that his actions" would have an impact in Nevada. *Fiore v. Walden*, 688 F.3d 558, 578 (9th Cir. 2012); *see also id.* at 580 ("the critical factor is whether Walden, knowing of [plaintiffs'] significant connections to Nevada, should be taken to have intended that the consequences of his actions would be felt by them in that state."). That is, the Ninth Circuit endorsed a theory that is almost word-for-word identical to the theory the Trustee relies on to establish jurisdiction here. (*See, e.g.*, Opp. at 11.) Unfortunately for the Trustee, the Supreme Court granted certiorari in *Walden* and rejected the "knowledge and intent" theory outright. *Walden*, 571 U.S. at 289 ("Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections."). So, while *Walden* did recognize a defendant's own actions could render him subject to personal jurisdiction (as recognized in *Multi-Strategy* (at 8)), it expressly foreclosed the "knowledge and intent" theory propounded by the Trustee here.[4] *See also Premier Funding Grp. LLC v. Aviva Life & Annuity Co.*, 2014 WL 6885732, at *5 (D. Ariz. Dec. 8, 2014) ("*Walden* held, however,

---

[4] The Trustee's reliance on *Homeschool Buyers Club, Inc. v. Brave Writer, LLC*, 2020 WL 1166053, at *5 (S.D.N.Y. Mar. 11, 2020), (Opp. at 18), is misplaced. There, the court held personal jurisdiction could not be exercised against a defendant who had allegedly entered direct transactions with over 240 different people in New York in connection with the causes of action asserted against it, where it did not have a "commercial presence" in New York, nor engaged in any direct marketing in New York. *Id.* at *5. Here, the Grosvenor Defendants did not enter into *any* transactions with New York residents that form the basis of the Grosvenor Complaint—instead, they are alleged to be subject to New York jurisdiction solely because they knew another party they contracted with had New York connections. *Homeschool Buyers Club, Inc.* does not support jurisdiction.

that [defendant's] tortious conduct combined with his knowledge that the injury would be felt by [plaintiff] in Arizona is not sufficient for personal jurisdiction.").

The Trustee has also failed to respond to the Grosvenor Defendants' argument that a corporation's (here, Sentry's) contacts cannot be attributed to a shareholder (here, the Grosvenor Defendants) unless that corporation is the shareholder's agent or alter ego. (*See* MOL at 13–14.) While the Trustee alleges there were close connections between BLMIS and Sentry, (*see, e.g.*, Opp. at 6), the Trustee makes no allegations the Grosvenor Defendants and Sentry were alter egos of each other. Nor does the Trustee respond to the argument that New York courts refuse to base jurisdiction on allegations the defendant contracted with a New York plaintiff who then performed that contract in New York (*see* MOL at 14), and here the Grosvenor Defendants' contacts are even *further* removed from New York than that: they contracted with a BVI entity (*id.* at 14–15). The Trustee's failure to respond to these arguments is fatal to his case.

**B.    The Subscription Agreements Do Not Provide a Basis for Jurisdiction**

The Trustee also contends jurisdiction can be exercised here based on the Grosvenor Defendants' execution of subscription agreements, asserting the Grosvenor Defendants argument to the contrary is "specious[]." (Opp. at 12–13.) Yet the Trustee fails to mention, let alone distinguish, the case law cited in the Memorandum expressly holding that jurisdiction could *not* be exercised based on the subscription agreements. (MOL at 11–12, 15.)[5] And, indeed, the Trustee cites no relevant case law. (Opp. at 13.) The Trustee's failure even to address the controlling cases cited by the Grosvenor Defendants holding neither the execution of subscription agreements nor the terms of those agreements can be used to establish jurisdiction

---

[5]  The Trustee cites *Multi-Strategy* at 10 (Opp. at 12), but ignores that the Court in *Multi-Strategy* did not base its personal jurisdiction holding on the subscription agreements. Rather, the Court cited the subscription agreements as one factor in assessing the "reasonableness" of asserting jurisdiction *after* determining there were sufficient contacts.

against subsequent transferees only confirms the Trustee cannot establish jurisdiction here.

## C. The Use of Correspondent Bank Accounts Cannot Support Jurisdiction Here

Next, the Trustee attempts to support jurisdiction based on the allegation "Defendants chose to use New York bank accounts to both subscribe to and redeem from Sentry." (Opp. at 18, 19–23.) But the Trustee does not counter the testimony of Mike Morrison establishing the Grosvenor Defendants only banked with Bermuda banks and never maintained bank accounts in the United States. (Morrison Decl. ¶¶ 20–21.) Instead, the Trustee tries to impute to the Grosvenor Defendants the connections that the Grosvenor Defendants' *Bermudan banks* have with the United States through those Bermudan banks' New York correspondent accounts, as well as, similarly, the correspondent bank accounts of Sentry's bank, Citco. (Opp. at 18–21.)[6]

While the Trustee implicitly concedes these accounts are correspondent accounts, he argues that "purposeful use of a U.S. correspondent account can provide a sufficient basis on its own for jurisdiction." (Opp. at 21, 18–19, 21–22.)[7] The Trustee fails to mention, however, that virtually all the cases he cites that found jurisdiction based on the use of a correspondent bank account, the defendant (1) was either the bank itself that held the correspondent account, or (2) was the alter ego of the owner of that bank. *Licci v. Lebanese Can. Bank, SAL*, 984 N.E.2d 893, 894 (N.Y. 2012) (defendant was foreign bank holding correspondent bank account), *Rushaid v.*

---

[6]   While the Trustee references "Barclays Bank Plc" in a manner that appears intended to suggest the Grosvenor Defendants banked there (Opp. at 21), the uncontroverted Morrison Declaration makes clear the Grosvenor Defendants did not maintain any New York bank accounts (Morrison Decl. ¶ 21) and Exhibit 12 to the Morrison Declaration shows "Barclays Bank Plc" was used as a correspondent bank by Bermuda Commercial Bank Limited. Similarly, the Trustee puts forward no evidence that the "Citibank, N.A." account, referenced in a confirmation email from **1997** (more than 5 years before the earliest transfer the Trustee seeks recovery of any transfer allegedly made to the Grosvenor Defendants) was not a correspondent bank account.

[7]   *BLI* did not find that the use of a correspondent bank account by the defendant's bank gave rise to jurisdiction. Instead, the defendant's knowledge of the use of New York correspondent accounts was used to justify the Court's conclusion that the defendant knew and intended that Sentry would invest in New York. *BLI*, 480 B.R. at 513, 516 n.14. As discussed above, *supra* Section I(A), *BLI*'s "knowledge and intent" theory is directly inconsistent with *Walden* and cannot be followed by this Court.

*Pictet & Cie*, 68 N.E.3d 1, 4 (N.Y. 2016) (same); *Motors Liquid. Co. Avoidance Action Tr. ex rel. Wilmington Tr. Co. v. JPMorgan Chase Bank, N.A. (In re Motors Liquid. Co.)*, 565 B.R. 275, 279 (Bankr. S.D.N.Y. 2017) (same); *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 397 F. Supp. 3d 323, 333–35, 339, 345–46 (S.D.N.Y. 2019) (defendant was "alter ego" of Nigeria that had complete control over Nigerian Central Bank's New York correspondent account).[8]  None of these cases provide any support for jurisdiction here, where the Grosvenor Defendants are alleged to have done no more than write down the details for international wire transfers given them by their Bermudan bank and then fax or e-mail those instructions to Sentry in BVI.[9]

The only case where a bank's use of a correspondent account was attributed to a customer of that bank was *Official Committee of Unsecured Creditors of Arcapita, Bank. B.S.C. v. Bahrain Islamic Bank*, 549 B.R. 56, 70 n.18 (S.D.N.Y. 2016).  The decision, which cites to no case law whatsoever on this point, is based on a misunderstanding of correspondent banking, and barely contains any reasoning, is firmly against the thrust of authority and should not be followed.  On the contrary, other courts have noted there is "no authority" within this district "standing for the principle that a non-domiciliary individual defendant may be subject to specific jurisdiction in New York under Section 302(a)(1) because the non-domiciliary moved money

---

[8]  While this Court in *Multi-Strategy* mentioned that the Trustee made similar allegations against the subsequent transferee in that case, the Court did not consider or discuss any of the case law in the main text demonstrating the use of a correspondent bank account by a defendant's bank cannot be grounds for jurisdiction over the defendant.

[9]  The Trustee argues that the Grosvenor Defendants' agreeing to subscription agreements and other contracts referencing these correspondent bank accounts makes the use of them "purposeful."  (Opp. at 19–21.)  That is a bizarre argument.  The Grosvenor Defendants (just like any customer of any bank) had no control over their Bermudan banks' choices of where they would open a correspondent bank account or how they would route international dollar transfers.  Those Bermudan banks happened to choose to open correspondent accounts in New York (like most foreign banks, (*see* MOL at 18 n.9)).  The Grosvenor Defendants then took the wiring instructions provided by the bank and provided them to Sentry, and those instructions happened to list a New York bank because the Bermudan bank had chosen to bank with that New York bank.  There was no "purpose" on the Grosvenor Defendants' part in selecting the New York bank, any more than it could be said a customer "purposefully" chooses the bank's address, or the bank's routing number.

7

between foreign bank accounts, with the transfer passing through New York via a correspondent

account." *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 404 (S.D.N.Y. 2021); *see also Univ.

Trading & Inv. Co. v. Tymoshenko*, 2012 WL 6186471, at *3 (S.D.N.Y. Dec. 12, 2012) ("courts

have only found the banks themselves to be subject to jurisdiction where they have moved

money through New York").  A holding by this Court that the Grosvenor Defendants are subject

to New York personal jurisdiction because their foreign banks used correspondent bank accounts

in New York to make international transfers in dollars would not only be erroneous, it would

threaten to expand personal jurisdiction radically to cover almost any dollar transaction made

anywhere in the world.  (*See* MOL at 18 n.9.)[10]

### D.    Assorted Communications and Unrelated Transactions Cannot Ground Jurisdiction

Finally, the Trustee also attempts to assert jurisdiction based on (1) alleged

communications via email and phone between representatives of the Grosvenor Defendants and

FGG and/or Sentry, (Opp. at 24–25), (2) letters of understanding ("LOUs") whereby the

Grosvenor Defendants allegedly agreed to solicit investors for Sentry in return for payment (and

which contained a New York choice of law clause), (Opp. at 14–15), and (3) the Grosvenor

Defendants' investment in Kingate Global Fund Limited ("Kingate").  (Opp. at 25.)  None of

those alleged activities can ground jurisdiction against the Grosvenor Defendants.

A foreign defendant's communications from outside the U.S. with persons in New York

do not constitute purposeful availment if they are made pursuant to a contract negotiated and

executed outside the U.S.  (MOL at 16–17.)  The Trustee simply ignores the Grosvenor

---

[10] Neither *Picard v. Estate (Succession) of Igoin (In re Bernard L. Madoff Investment Securities LLC)*, 525 B.R. 871,
884 (Bankr. S.D.N.Y. 2015), *Picard v. Chais (In re Bernard L. Madoff Investment Securities LLC)*, 440 B.R. 274,
279–80 (Bankr. S.D.N.Y. 2010), nor *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Investment Securities
LLC)*, 418 B.R. 75, 80 (Bankr. S.D.N.Y. 2009) help the Trustee because in each of those cases, unlike the facts here,
jurisdiction was found against *direct* investors in BLMIS and involved bank accounts actually held by defendants in
New York, not correspondent accounts held not by the defendant, but merely the defendant's foreign bank.

Defendants' authorities and cites other cases, which relied on communications that "[went] to the heart of the commercial transaction between the parties" to support jurisdiction. *Golden Archer Invs., LLC v. Skynet Fin. Sys.*, 2012 WL 123989, at *5 (S.D.N.Y. Jan. 3, 2012).[11]  None apply here, where the Trustee fails to allege any material communications between the Grosvenor Defendants and Sentry, let alone ones "go[ing] to the heart" of the transactions at issue.[12] Accordingly, none of the alleged communications support personal jurisdiction.

Furthermore, the LOUs and Kingate investments cannot ground jurisdiction, because the Trustee's action here neither "arise[s] out of [n]or relate[s] to" those alleged contacts. *U.S. Bank. Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019).  The Trustee does not seek recovery of any fees earned under the LOUs, and has agreed to dismiss the claims arising from the Kingate transactions.  (ECF No. 105)  Because "[e]ach transfer is a separate claim . . . and the Trustee 'must establish the court's jurisdiction with respect to each claim asserted,'" *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re Madoff)*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("*BNP Paribas*"), and the transfers at issue had nothing to do with these contacts, the Trustee cannot hinge personal jurisdiction on them.

---

[11]  *See also Rubinbaum, L.L.P. v. Related Corporate Partners V, L.P.*, 154 F. Supp. 2d 481, 493 (S.D.N.Y. 2001) (defendants signed agreements directly with New York entities and directly solicited New York entities for funds critical to cause of action by various means of communication); *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 59 (S.D.N.Y. 1999) (defendant itself held New York bank accounts, solicited business in New York, and agreed to specific performance in New York).

[12]  The communications attached to the *Declaration of Dean D. Hunt* [ECF No. 116] ("Hunt Decl.") and referred to by the Trustee (Opp. at 24–25) either show no connection between the Grosvenor Defendants and New York or appear to be ministerial or informational and thus insufficient to support personal jurisdiction even under the Trustee's own case law.  *See Golden Archer Invs., LLC*, 2012 WL 123989, at *5; (*Compare,* Hunt Decl. Ex. 11 (e-mail from FGG representative stating he is in London but offering meeting in New York in future); Ex. 12 (e-mails asking for information); Ex. 13 (internal e-mails where Sentry representative notes he called the Grosvenor Defendants and call was not received); Ex. 14 (e-mails asking for Sentry's net asset value information); Ex. 15 (redemption confirmation for Citco listing Netherlands and Bermuda addresses and fax numbers); Ex. 16 (sending copy of redemption request by e-mail to Sentry that had been previously sent to Citco); Ex. 17 (referencing, without more, call from representative of "Grosvenor").)

### E.    The Exercise of Jurisdiction Would Not Be Reasonable

The Trustee similarly fails to show the exercise of jurisdiction would be reasonable.

(Opp. at 26–27.)  In fact, the Trustee does not even attempt to distinguish the cases cited in the

Memorandum (at 20–23).  Instead, the Trustee tries to use the fact the Grosvenor Defendants

have had to litigate in this Court for years against them to show there is no burden.  (Opp. at 26.)

But the fact Grosvenor Defendants have had to retain New York counsel to defend this action is

a significant burden pointing *against* jurisdiction.[13]  And while the Trustee attempts to brush off

the fact the Grosvenor Defendants are in liquidation in Bermuda as a "collection" matter (Opp. at

27), he misses the point—the fact the Grosvenor Defendants are in liquidation proceedings in

Bermuda gives them a strong interest in litigating claims against them *in Bermuda*, and heightens

the burden associated with forcing them to litigate in New York.  Just as the Trustee would

oppose letting a claim against BLMIS be litigated in a court in another jurisdiction, it is

unreasonable for the Trustee's (contingent) claim to be litigated in any other jurisdiction other

than Bermuda.  *See, e.g.*, *In re Energy Coal S.P.A.*, 582 B.R. 619, 629 (Bankr. D. Del. 2018)

("U.S. bankruptcy courts have not hesitated to require foreign creditors to file their claims and to

litigate in our courts if they wish a distribution from a U.S. Debtor's estate. It is equally

appropriate to expect U.S. creditors to file and litigate their claims in a foreign main bankruptcy

case." (quoting *In re Artimm, S.r.L.*, 335 B.R. 149, 165 (Bankr. C.D. Cal. 2005)); *In re Atlas

Shipping A/S*, 404 B.R. 726, 733 (Bankr. S.D.N.Y. 2009) ("[C]ourts in the Second Circuit 'have

repeatedly held that U.S. courts should ordinarily decline to adjudicate creditor claims that are

---

[13] The fact the Grosvenor Defendants executed subscription agreements that contained forum selection clauses should not support a finding of reasonableness when precedent in this very bankruptcy case has held jurisdiction cannot be grounded on those agreements.  *See supra* Section I(B).  Similarly, that the U.S. has an interest in applying U.S. law and the Trustee has an interest in litigating in the U.S. (Opp. at 26–27) is always true.  Indeed, the Grosvenor Defendants have the equivalent if not greater interest in *not* litigating in the U.S.

the subject of a foreign bankruptcy proceeding.'").

## II.    THE COMPLAINT DOES NOT COMPLY WITH RULES 8(a) AND 10(c)

The Memorandum showed the Complaint's incorporation of the 217-page Fairfield

Amended Complaint did not comply with Rule 8(a)'s "short and plain statement" requirement or

Rule 10(c)'s limitations on incorporation by reference.  The Opposition does not address either

of those arguments.  Instead, the Trustee makes the unremarkable statement that incorporation by

reference is permissible, citing *American Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670

(Bankr. E.D. Pa. 2010).  (Opp. at 28.)  The Trustee has missed the fact that incorporating an

entire pleading *en masse* without specifying the relevant allegations violates the Federal Rules.[14]

*See United States v. Int'l Longshoremen's Ass'n,* 518 F. Supp. 2d 422, 461 (E.D.N.Y. 2007)

(citation omitted) ("[R]eferences to prior allegations must be direct and explicit, in order to

enable the responding party to ascertain the nature and extent of the incorporation.").

Likewise, in relying on *Geiger*, the Trustee ignores that the court there *dismissed* the

complaint at issue for failure "to satisfy the pleading requirement of Rule 8," holding that

plaintiffs' wholesale incorporation of a 52-page pleading violated Rule 8(a).  446 B.R. at 679.

Here, the Trustee's complaint consists of 217 pages and 798 paragraphs, plus 111 exhibits.  The

Trustee asserts that responding would not be an undue burden because "[t]he Trustee clearly advises

Defendants that the Fairfield Complaint is incorporated to demonstrate the transfers are avoidable."

(Opp. at 28.)[15]  The Trustee misses the point.  The Grosvenor Defendants should not be required to

---

[14] The Trustee contends Grosvenor Defendants' cited cases are inapposite because those courts' decisions were based on plaintiff's "attempt to add new claims" via incorporation.  (Opp. 29 n.19.)  The Trustee misconstrues the case law.  In each case, the court held that it was improper for a plaintiff to incorporate a prior pleading wholesale because it "makes it impossible to ascertain precisely which previously asserted facts are being realleged and for what purpose."  *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, 2010 WL 1257803, at *4 (E.D.N.Y. Mar. 26, 2010) ("[W]holesale incorporation . . . makes it impossible to ascertain precisely which previously asserted facts are being realleged.").

[15] The Trustee contends the District Court previously upheld his incorporation of the Fairfield Amended Complaint, citing *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC (In re Madoff*

11

dissect all 217 pages and 111 exhibits, many of which have no apparent connection to the Grosvenor

Defendants, to determine how to respond to the Trustee's avoidability allegation.  Nor should the

Grosvenor Defendants be made to guess which of the plaintiff's allegations apply to avoidability and

which do not.  Such exercises are highly burdensome, inefficient, and directly contrary to Rule 8(a).

## III.    SECTION 546(e) REQUIRES DISMISSAL OF THE TRUSTEE'S COMPLAINT

The Grosvenor Defendants demonstrated each of the elements necessary to invoke the

Section 546(e) safe harbor have been met.  (MOL at 26–33.)  The Trustee does not even attempt

to challenge that showing.[16]  Instead, he tries to avoid dismissal by arguing the judicially created

"knowledge" exception to Section 546(e) applies—not because the Grosvenor Defendants knew

anything about Madoff's Ponzi scheme, but because *Sentry* allegedly did.[17]  (Opp. at 31.)  The

Trustee's attempt to bypass the application of Section 546(e) as written should not be

countenanced, but, in any event, the Trustee misrepresents the knowledge exception.[18]

### A.    The Knowledge Exception Violates the Text of Bankruptcy Code Section 546(e)

The Trustee argues he can recover from the Grosvenor Defendants because Sentry

---

*Securities)*, 501 B.R. 26 (S.D.N.Y. 2013).  (Opp. at 29.)  But that decision did not address the propriety of the Trustee's incorporation under the Federal Rules.  *In re Madoff Securities*, 501 B.R. at 37.  The Trustee further contends the Court may take judicial notice of the SAC.  (*See* Opp. at 28.)  However, the Trustee has not purported to incorporate the SAC, and this Court's decision in *Fairfield Investment Fund* did not address the arguments raised here.

[16] In a footnote, the Trustee states he "does not concede that any agreements or transfers between Sentry and Defendant activate the safe harbor under Section 546(e)."  (Opp. at 31 n.22.)  But the Grosvenor Defendants demonstrated that the express terms of § 546(e) apply without regard to those agreements or transfers, and implicit in the Trustee's statement (and the Trustee's failure to argue otherwise) is that the Trustee *does* concede Section 546(e) applies by its terms, without consideration of the knowledge exception.  *See Scott v. JPMorgan Chase & Co.*, 2014 WL 338753, at *2 (S.D.N.Y. Jan. 30, 2014).

[17] The Opposition alleges, for the first time, Sentry acted as a mere conduit for and alter ego of BLMIS.  (*See, e.g.*, Opp. at 3 (Sentry's "sole purpose was to funnel money to BLMIS"); *id.* at 6 (all of Sentry's "investment management duties were delegated to BLMIS" and "no arm's length relationship exist[ed] between [Sentry] and BLMIS.").)  Given these new alleged facts, the Grosvenor Defendants reserve the right to argue the transfer from Sentry to the Grosvenor Defendants was the initial transfer, and thus Section 546(e) applies independently to it.  Further, Sentry's knowledge and intent cannot be imputed to the Grosvenor Defendants given the Trustee's new argument that Sentry was nothing more than a conduit for BLMIS.

[18] The Court in *Multi-Strategy* (at 19) did not consider the arguments made in this Reply as to the correct construction of the knowledge exception, and thus the Court is free to adjudicate them *de novo*.

allegedly knew of Madoff's fraud.  The Trustee does not, however, address any portion of

Section 546(e) in making that argument—because he cannot.  Indeed, tellingly, the Trustee's

only response to the controlling language of Section 546(e) is to say "[n]one of this matters,"

because a judicially created "knowledge" exception, nowhere found in the text of Section 546(e),

bars the Grosvenor Defendants from invoking Section 546(e).  (Opp. at 31.)

      This knowledge exception should be rejected as an impermissible gloss on Section

546(e).  Section 546(e) lays down detailed requirements broadly defining the transactions it

protects, and includes only one exception: claims asserted under 11 U.S.C. § 548(a)(1)(A)

(which has only a two-year limitation period and is not applicable here).  The knowledge

exception impermissibly rewrites Section 546(e) by creating a novel exception not contained in the

statutory text.  *See, e.g.*, *Law v. Siegel*, 571 U.S. 415, 424 (2014) ("The [Bankruptcy] Code's

meticulous . . . enumeration of exemptions and exceptions to those exemptions confirms that courts

are not authorized to create additional exceptions.").  The impermissibility of creating a knowledge

exception here is particularly acute given that Congress knew how to include "mental state"

limitations, did so in several sections of the Bankruptcy Code, *see, e.g.*, 11 U.S.C. §§ 548(a)(1)(A),

550(a), but chose not to do so in Section 546(e).  *See, e.g.*, *Foxglenn Investors Ltd. Partnership v.

Cisneros*, 35 F.3d 947, 950 (4th Cir. 1994) (refusing to incorporate limitation expressly provided

for in one part of statute where "Congress incorporated precisely such a limitation in a different

provision within the very same section").  Indeed, the Second Circuit has already rejected similar

attempts to modify the Bankruptcy Code through judicial fiat rather than the legislative process.

*See Picard v. Ida Fishman Revocable Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411,

at 420 (2d Cir. 2014) (rejecting similar argument by trustee because "[i]t does not engage with

the language Congress chose for § 741(7) and § 546(e).").

      The knowledge exception not only ignores the statute's language, but also Congress's

intent when enacting Section 546(e), which was to ensure finality and stability in the securities markets.  *See, e.g.*, *Deutsche Bank Tr. Co. Ams. v. Large Private Ben. Owners (In re Tribune Co. Fraudulent Conveyance Litig.)*, 946 F.3d 66, 90 (2d Cir. 2019), *cert. denied*, 141 S. Ct. 2552 (2021).  Allowing the knowledge of the initial transferee to eliminate the § 546(e) defense for all subsequent transferees would destabilize the very markets Congress sought to insulate.  The knowledge exception should be rejected.

**B.     Even if Applied, the Knowledge Exception Does Not Prohibit the Grosvenor Defendants From Invoking Section 546(e) To Show the Initial Transfers Cannot Be Avoided**

According to the Trustee, because Sentry allegedly knew of Madoff's fraud, no subsequent transferee can invoke Section 546(e).  (Opp. at 31.)  The Trustee then creates and proceeds to dismantle a straw-man argument that Section 546(e) independently applies to recovery actions, instead of actions avoiding the initial transfer.  (Opp. at 32–33.)  The Grosvenor Defendants never made that argument; instead they argue they have a right to raise the Section 546(e) defense here to show the *initial* transfer was not avoidable, irrespective of whether Sentry could invoke the safe harbor.

**1.     The Knowledge Exception Only Prohibits *Defendants* With Knowledge of the Fraud from Invoking Section 546(e)**

When Judge Rakoff created the knowledge exception, he made clear it does not render the initial transfers avoidable—it just prohibits certain defendants (those with knowledge) from invoking the Section 546(e) defense because *transferees* with knowledge should not be permitted to profit from their own wrong.  Put differently—the knowledge exception was meant to be *transferee*-specific, not *transfer*-specific.  Judge Rakoff's decision thus demonstrates the flaw in the Trustee's reasoning: the initial transfers are *not* avoidable under Section 546(e)'s clear terms, and while Sentry was not permitted to invoke Section 546(e) because of Sentry's (alleged) knowledge, that does not mean other subsequent transferees, not alleged to have knowledge, are

also not entitled to invoke Section 546(e).  By the logic of Judge Rakoff's decision, they are.  In

this case, that means the Grosvenor Complaint must be dismissed because the Grosvenor

Defendants are not alleged to have knowledge of Madoff's fraud.

In creating the knowledge exception Judge Rakoff opined, in relevant part:

> where the Trustee has adequately alleged that *these defendants* had
> . . . actual knowledge of Madoff's scheme, then, as the Trustee
> argues, the fact that *these defendants* signed account agreements is
> meaningless for purposes of Section 546(e)—because if *they* knew
> that Madoff Securities was a Ponzi scheme, then *they* must have
> known that the transfers they received directly or indirectly from
> Madoff Securities were not "settlement payments." Similarly, since
> *such defendants* are alleged to have known in effect that the account
> agreements never led to a transaction for the "purchase, sale, or loan
> of a security," they therefore also must have known that the transfers
> could not have been made in connection with an actual "securities
> contract."
>
> . . . *such a transferee* stands in a different posture from *an innocent
> transferee,* even *as concerns the application of Section 546(e)*. . . .
> the purpose of this section is "minimiz[ing] the displacement caused
> in the commodities and securities markets in the event of a major
> bankruptcy affecting those industries." . . . In the context of Madoff
> Securities' fraud, that goal is best achieved by protecting the
> reasonable expectations of investors who believed they were signing
> a securities contract; but *a transferee who had actual knowledge of
> the Madoff "Ponzi" scheme did not have any such expectations*, but
> was simply obtaining moneys while he could. Neither law nor equity
> permits *such a person* to profit from a safe harbor intended to
> promote the legitimate workings of the securities markets and the
> reasonable expectations of *legitimate investors*.

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 2013 WL 1609154, at *3-4

(S.D.N.Y. Apr. 15, 2013) (*"Cohmad 2013"*) (emphasis added) (citations omitted).  Judge

Rakoff's decision is clear: the knowledge exception applies to particular *transferees* to stop

persons who know of the fraud from "profit[ing]" from the safe harbor.  Judge Rakoff does not

once state the *initial transfer* is not protected by § 546(e)—he stated that a "*transferee*" with

knowledge of BLMIS's fraud "stands in a different posture from an innocent transferee [] as

concerns the application of Section 546(e)." *Id.* at *4. Neither the words Judge Rakoff chose to

use in his decision nor Judge Rakoff's logic support the conclusion that a subsequent transferee

*without* knowledge is also precluded from raising § 546(e). As a result, Judge Rakoff's decision

requires dismissal of the Grosvenor Complaint.

Nor does *BNP Paribas* compel a different result. There, the subsequent transferees

argued Section 546(e) applied to independently protect the *subsequent transfers*. *BNP Paribas*,

594 B.R. at 196 (defendants "asserted that their subsequent transfers were also protected by the

safe harbor"). This Court rejected that argument. *Id.* at 196–97. But (unless the Trustee now

argues that Sentry was a mere conduit) the Grosvenor Defendants are not arguing that Section

546(e) protects the alleged subsequent transfers from Sentry to the Grosvenor Defendants—

Section 546(e) prohibits the avoidance of the *initial* transfers according to its terms, and, given

that the Grosvenor Defendants have not been alleged to have knowledge of BLMIS's fraud, they

are permitted to invoke that defense even if Sentry was not. This interpretation of the knowledge

exception is the only one that protects "the legitimate expectations of customers" without

knowledge. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 476

B.R. 715, 721-22 (S.D.N.Y. 2012), *aff'd*, 773 F.3d 411 (2d Cir. 2014).

### 2. The Initial Transfers Are Not Avoidable Because They Were Made in Connection with Real Settlement Payments and Securities Contracts

Even if the knowledge exception is not transferee-specific, as argued in the last section,

the initial transfers are still not avoidable under Section 546(e), and thus the Trustee cannot

recover from Grosvenor Defendants, because the initial transfer was made *in connection* with

real securities contracts—*i.e.*, the contracts between Sentry and the Grosvenor Defendants. In

applying the knowledge exception, Judge Rakoff reasoned that a knowing transferee must have

known it had not entered into real "securities contracts" with BLMIS and thus could not invoke

Section 546(e).  *Cohmad 2013*, 2013 WL 1609154, at *3.  On this construction of the knowledge

exception, the defendant's knowledge negates the apparent satisfaction of the "securities

contract" element of Section 546(e).  But where, as here, the transfer was made in connection

with *real* securities contracts between Sentry and its investors, the defendant meets the safe

harbor's elements.

Both the Second Circuit and Judge Rakoff have recognized that an initial transfer could

be made "in connection with" a securities contract between the initial transferee and a

subsequent transferee.[19]  (*See* MOL at 32–33.)  It is implicit in the Trustee's allegations (and

made express in the Fairfield Amended Complaint) Sentry withdrew funds from BLMIS "in

order to" pay redemptions to subsequent transferees.  (*See id.*)  Indeed, no other conclusion is

possible given the Trustee's global assertion that literally every redemption out of Sentry was

funded by BLMIS property.  As the transfers from BLMIS to Sentry were made "in order to"

fund redemptions by parties like Grosvenor Defendants, and those redemptions were made

pursuant to legitimate securities contracts, Section 546(e) applies to protect the initial transfers

from avoidance for this independent reason, as well.[20]

## IV.    THE COMPLAINT MUST BE DISMISSED AS IT FAILS TO PLAUSIBLY ALLEGE THE GROSVENOR DEFENDANTS RECEIVED BLMIS PROPERTY

The Memorandum also demonstrated the Complaint fails to plausibly allege the

Grosvenor Defendants received BLMIS property.  (MOL at 34–40.)  The Trustee attempts to

wave off this defect without disputing the central point that he has alleged billions of dollars

---

[19]  *See, e.g.*, *Cohmad 2013*, 2013 WL 1609154, at *9 (if the "Trustee alleges that a withdrawal of funds by an investment fund from its Madoff Securities customer account occurred because an investor in that fund sought redemption of its investment under the terms of its investment contract . . . that situation appears to fit within the plain terms of Section 546(e)").

[20]  As the initial transfer would have been made in connection with the fulfillment of legitimate securities contracts, it would also constitute a "settlement payment" for Section 546(e).  *See Fishman*, 773 F.3d at 422–23.

more in subsequent transfers of BLMIS property out of Sentry than initial transfers into Sentry—

an impossibility. (*See* Opp. at 33.) But this defect means the Complaint must be dismissed.

## A.    The Trustee Has Not Alleged Facts Supporting the Inference the Funds He Alleges the Grosvenor Defendants Received Originated With BLMIS

The Trustee admits he did not tie the initial transfers to the alleged subsequent transfers

but argues he need only demonstrate an "inference 'that the funds at issue originated with the

debtor'" to satisfy the pleading requirements. (Opp. at 33.) The Trustee's own authorities belie

his argument, since each case he relies upon did, in fact, identify a link between the initial and

subsequent transfer. *See, e.g.*, *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149– 150 (Bankr.

S.D.N.Y. 2014) ("[S]everal subsequent transfers took place contemporaneously or shortly after

an initial transfer . . . implying linkage.").[21] The Trustee cannot satisfy that requirement here.

The Complaint only lists the dates of alleged subsequent transfers, and, in a 75-page exhibit,

every transaction recorded in BLMIS's Sentry accounts. No "linkage" whatsoever is provided.

On the contrary, the Trustee's *own allegations* against other parties render the conclusion that the

Grosvenor Defendants received BLMIS property transfers inherently implausible because there

simply was not enough BLMIS money at Sentry to fund all the subsequent transfers the Trustee

now seeks to claw back. (MOL at 37–38.)

## B.    The Trustee's Tracing and Commingling Arguments Lack Relevance

---

[21] *See also Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317, 341 (Bankr. S.D.N.Y. 2011) ("*Cohmad I*") (upholding the complaint because "the Trustee alleges that the amounts of Commissions specified by BLMIS on the Payment Schedules correspond to the amounts paid by BLMIS to Cohmad and, subsequently, to the Cohmad Representatives); *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs. Inc.*), 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007) (finding the complaint pleaded linkage between the initial and subsequent transfers since "[t]he funds . . . were preceded by fraudulent transfers of funds from Allou in amounts sufficient to cover the [subsequent] transfers"); *45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC*), 599 B.R. 730, 736-37, 747 (Bankr. S.D.N.Y. 2019) (the complaint alleged that two payments totaling $29.4 million were deposited into an account and $29.4 million was transferred out within a day); *Picard v. Mayer (In re Bernard L. Madoff*), 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021) (refuting defendant's argument that the subsequent transfer complaint lacked plausibility in part because "[l]edger entries note that these payments were *in connection with*" the initial fraudulent transfers (emphasis added)).

18

The Opposition mentions that the Grosvenor Defendants have acknowledged that "at the pleading stage a dollar-for-dollar-accounting is not required," but argues they illegitimately seek to conduct a "tracing" analysis. (Opp. at 33 n.24.) The Trustee is wrong: the Grosvenor Defendants do not make a tracing or any other similar argument.[22] Rather, the Grosvenor Defendants merely compare the Trustee's allegations in other adversary proceedings with the Trustee's allegations here and point out that they contradict each other. The Trustee cites nothing to support his contention that the Trustee is free to file numerous, contradictory complaints which negate themselves and somehow survive dismissal.[23] He cannot.

The Trustee argues that these mathematical discrepancies and potential violation of section 550(d) of the Bankruptcy Code are irrelevant since the Trustee "'can recover from any combination of [transferees]' up to the amount avoided." (Opp. at 37 (alteration in original) (quoting *Helms v. Metro. Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019).) But those cases make the point that where the debtor transfers property to A, who then transfers it to B, who then transfers it to C, who then transfers it to D, the Trustee can assert claims against A, B, C, and D under 11 U.S.C. § 550(a)(2), as long as he does not recover more

---

[22] (*See, e.g.*, Opp. at 36 ("Defendants are really saying that, because Sentry commingled stolen Customer Property with other funds, the Trustee cannot trace.").) In reality, the Grosvenor Defendants assert that for at least $2 billion in alleged subsequent transfers, "Sentry used funds *other than those from BLMIS* to make redemption payments." (MOL at 36.) This argument inherently involves no commingling or tracing, since it is premised on Sentry's lack of BLMIS customer property in the first place. Similarly, the Trustee's bluster that the Barak Declaration is "inappropriate testimony" (Opp. at 37), is incorrect. All the Barak Declaration does is record, in one place, all of the allegations the Trustee has made in this and parallel proceedings. As explained in the Memorandum, the analysis in the Barak Declarations "required two items: copies of the adversary proceedings and a calculator. No accounting methodology or expert financial analysis [was] required." (MOL at 35 n.19.) It is not improper testimony—it is simply a compilation of the Trustee's own words.

[23] The Trustee does not refute the Court's ability to consider the Trustee's filings in other adversary proceedings within the same SIPA recovery case. Indeed, any such argument would contradict the Trustee's assertions relating to the incorporation of the Fairfield Amended Complaint. (*See* Opp. at 28.) The Court should, as permitted where an amended complaint presents conflicting statements with the original, "allow the factfinder to consider the earlier pleadings as admissions in due course." *Wilson v. JPMorgan Chase Bank*, N.A., 2021 WL 5179914, at *1 (S.D.N.Y. Nov. 8, 2021) (quoting *Baines v. City of New York*, 2015 WL 3555758, at *1 (S.D.N.Y. June 8, 2015)).

than once.  The situation here is entirely different.  Here, the debtor transferred money to A (Sentry), who then *either* transferred it to B, *or* to C, *or* to D, but could not have transferred it to all of them.  The Trustee's case law does not support the contention the Trustee can file mutually contradictory suits against B, C, and D alleging they all received the same BLMIS property.

The Trustee also relies on *Multi-Strategy* to argue that the allegation the Grosvenor Defendants received BLMIS property is plausible because the Fairfield Amended Complaint plausibly pleads "Sentry did not have other property to give." (Opp. at 36 (quoting *Multi-Strategy* at 21–22).)  The Trustee is wrong.  As noted in the Memorandum, Sentry itself has asserted it used non-BLMIS funds to make payments and the Trustee does not anywhere allege that the only funds Sentry had were BLMIS funds.  (MOL at 36.)  Moreover, the suggestion that money received by Sentry prior to December 11, 2002 can be taken into account is mistaken— that money can never be recovered by the Trustee and so, even if it exists (and the Trustee does not allege that it does), it would essentially constitute non-BLMIS money for the purpose of these adversary proceedings.

## C.    The Trustee Has All of the Records He Needs

The Trustee argues he needs discovery since "the Trustee does not have all of the books and records or the testimony of FGG," (Opp. at 35 n.26.), but he does not say what necessary additional records he's lacking, gives no reason to believe the Grosvenor Defendants have them, and cannot evade the fact he has had access to Sentry's records for over a decade.  (Fairfield Settlement Agreement ¶ 14.)  As explained in the Memorandum, no "greater latitude" should be accorded to him (MOL at 36 n.20)—the Complaint should be dismissed for failure to plausibly allege the Grosvenor Defendants received BLMIS property.

## **CONCLUSION**

For all the foregoing reasons, as more fully set out in the Memorandum, the Grosvenor

Complaint should be dismissed in its entirety with prejudice.

Dated:  New York, New York
        July 15, 2022

                                        Respectfully submitted,

                                        PROSKAUER ROSE LLP

                                        By:  s/ *Ehud Barak*
                                        Ehud Barak
                                        Russell T. Gorkin
                                        Elliot R. Stevens
                                        Eleven Times Square
                                        New York, New York  10036
                                        Telephone:     212-969-3000
                                        Facsimile:     212-969-2900
                                        Email:  *ebarak@proskauer.com*
                                                *rgorkin@proskauer.com*
                                                *estevens@proskauer.com*

                                        *Attorneys for Defendants Grosvenor Investment*
                                        *Management Ltd.,*
                                        *Grosvenor Private Reserve Fund Limited,*
                                        *Grosvenor Balanced Growth Fund Limited and*
                                        *Grosvenor Aggressive Growth Fund Limited*