**Hearing Date: Nov. 16, 2022 at 10:00 a.m.**
**Objection Date: Sept. 15, 2022**
**Reply Date: Oct. 17, 2022**

**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 12-01565 (CGM) |
| Plaintiff, | |
| v. | |
| STANDARD CHARTERED FINANCIAL SERVICES (LUXEMBOURG) S.A. (f/k/a AMERICAN EXPRESS FINANCIAL SERVICES (LUXEMBOURG) S.A. and f/k/a AMERICAN EXPRESS BANK | |

(LUXEMBOURG) S.A.), as represented by its
Liquidator HANSPETER KRÄMER,
HANSPETER KRÄMER, in his capacities as
liquidator and representative of STANDARD
CHARTERED FINANCIAL SERVICES
(LUXEMBOURG) S.A., STANDARD
CHARTERED BANK INTERNATIONAL
(AMERICAS) LTD., f/k/a AMERICAN
EXPRESS BANK INTERNATIONAL, and
STANDARD CHARTERED HOLDINGS INC.
(as successor in interest to STANDARD
CHARTERED INTERNATIONAL (USA)
LTD., f/k/a AMERICAN EXPRESS BANK
LTD.),

              Defendants.

# MEMORANDUM OF LAW IN SUPPORT OF
# STANDARD CHARTERED DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ............................................................................1

BACKGROUND ...............................................................................................4

    A.    The Standard Chartered Defendants ..........................................4

    B.    The Fairfield Funds..................................................................4

    C.    The Amended Complaint ..........................................................8

ARGUMENT ....................................................................................................9

    I.    THE TRUSTEE FAILS TO ALLEGE FACTS
ESTABLISHING ANY STANDARD CHARTERED
DEFENDANT WAS A "MEDIATE OR IMMEDIATE
TRANSFEREE" OF ANY INITIAL TRANSFEREE.......................10

    II.    THE TRUSTEE'S AMENDED COMPLAINT SHOULD BE
DISMISSED FOR ADDITIONAL REASONS.................................18

CONCLUSION ...............................................................................................25

# TABLE OF AUTHORITIES

*Page(s)*

## Cases

*Picard* v. *ABN Amro N.A. (In re BLMIS)*,
    2020 WL 1584491 (Bankr. S.D.N.Y. Mar. 31, 2020) ......................................20

*Anwar* v. *Fairfield Greenwich Ltd.*,
    826 F. Supp. 2d 578 (S.D.N.Y. 2011) .................................................16

*Ashcroft* v. *Iqbal*,
    556 U.S. 662 (2009).................................................................15, 24

*Authentic Fitness Corp.* v. *Dobbs Temp. Help Servs., Inc. (In re
    Warnaco Group, Inc.)*,
    2006 WL 278152 (S.D.N.Y. Feb. 2, 2006) .........................................12

*B.T. Produce Co.* v. *Robert A. Johnson Sales, Inc.*,
    354 F. Supp. 2d 284 (S.D.N.Y. 2004) ...............................................22

*Bear, Stearns Secs. Corp.* v. *Gredd (In re Manhattan Inv. Fund Ltd.)*,
    397 B.R. 1 (S.D.N.Y. 2007)..........................................................12

*Bell Atl. Corp.* v. *Twombly*,
    550 U.S. 544 (2007).............................................................14, 15, 24

*BLD Prods., LLC* v. *Viacom, Inc.*,
    2011 WL 1327340 (S.D.N.Y. Mar. 31, 2011)......................................22

*Bonded Fin. Servs., Inc.* v. *European Am. Bank*,
    838 F.2d 890 (7th Cir. 1988) ...............................................11, 12, 15

*Christy* v. *Alexander & Alexander of N.Y. Inc. (In re Finley, Kumble,
    Wagner, Heine, Underberg, Manley, Myerson and Casey)*,
    130 F.3d 52 (2d Cir. 1997) ...............................................2, 10, 11, 15

*Geltzer* v. *D'Antona (In re Cassandra Group)*,
    312 B.R. 491 (Bankr. S.D.N.Y. 2004)...............................................16

*Hadar* v. *Concordia Yacht Builders*,
    886 F. Supp. 1082 (S.D.N.Y. 1995) .................................................14

# TABLE OF AUTHORITIES
(*continued*)

*Page(s)*

*Isaiah* v. *JPMorgan Chase Bank, N.A.*,
    960 F.3d 1296 (11th Cir. 2020) ............................................................................14

*Jalbert* v. *Gryaznova (In re Bicom NY, LLM)*,
    2022 WL 1419997 (2d Cir. May 5, 2022) ..........................................................17

*Malloy* v. *Citizens Bank of Sapulpa (In re First Sec. Mortg. Co.)*,
    33 F.3d 42 (10th Cir. 1994) .................................................................................13

*Meoli* v. *Huntington Nat'l Bank*,
    848 F.3d 716 (6th Cir. 2017) ...............................................................................13

*Menotte* v. *United States (In re Custom Contractors, LLC)*,
    745 F.3d 1342 (11th Cir. 2014) ...........................................................................13

*Mervyn's LLC* v. *Lubert-Adler Group IV, LLC (In re Mervyn's*
    *Holdings, LLC)*,
    426 B.R. 96 (Bankr. Del. 2010) ..........................................................................14

*Nordberg* v. *Societe Generale (In re Chase & Sanborn Corp.)*,
    848 F.2d 1196 (11th Cir. 1988) ...........................................................................13

*Picard* v. *Banque SYZ & Co., SA*,
    2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) .............................22, 23, 24

*Picard* v. *BNP Paribas S.A.* (*In re BLMIS*),
    594 B.R. 167 (Bankr. S.D.N.Y. 2018)......................................................10, 18, 19

*Picard* v. *Bureau of Labor Ins. (In re BLMIS)*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012)..................................................................18

*Picard* v. *Citibank, N.A. (In re BLMIS)*,
    12 F.4th 171 (2d Cir. 2021) ..........................................................................20, 21

*Picard* v. *Fairfield Inv. Fund Ltd.*,
    2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021)...............................................6

# TABLE OF AUTHORITIES
*(continued)*

*Page(s)*

*Picard* v. *The Gerald and Barbara Keller Family Trust (In re BLMIS)*,
    634 B.R. 39 (Bankr. S.D.N.Y. 2021)............................................................2, 11

*Picard* v. *Katz*,
    462 B.R. 447 (S.D.N.Y. 2011) ......................................................................21

*Picard* v. *Multi-Strategy Fund Ltd.*,
    2022 WL 2137073 (Bankr. S.D.N.Y. June 13, 2022) .................................23, 24

*Picard* v. *Shapiro (In re BLMIS)*,
    542 B.R. 100 (Bankr. S.D.N.Y. 2015)............................................................24

*Rupp* v. *Markgraf*,
    95 F.3d 936 (10th Cir. 1996) ............................................................13

*Sec. Inv. Prot. Corp.* v. *Bernard L. Madoff Inv. Sec. LLC (In re Consolidated Proceedings on 11 U.S.C. § 546(e))*,
    2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ............................................10, 23

*Sec. Inv. Prot. Corp.* v. *Stratton Oakmont, Inc.*,
    234 B.R. 293 (Bankr. S.D.N.Y. 1999)..........................................................11, 13

*Super Vision Int'l, Inc.* v. *Mega Int'l Commer. Bank Co.*,
    534 F. Supp. 2d 1326 (S.D. Fla. 2008) ............................................14

*Tellabs, Inc.* v. *Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)........................................................................6

*Tese-Milner* v. *Moon (In re Moon)*,
    385 B.R. 541 (Bankr. S.D.N.Y. 2008)............................................16

*Weisfelner* v. *Fund 1 (In re Lyondell Chem. Co.)*,
    503 B.R. 348 (Bankr. S.D.N.Y. 2014)............................................13

## Statutes

11 U.S.C. § 546(e) ........................................................................3, 22, 23

# TABLE OF AUTHORITIES
*(continued)*

*Page(s)*

11 U.S.C. § 550(a) ...............................................................................*passim*

11 U.S.C. § 550(b) .........................................................................................20

11 U.S.C. § 550(f)(1) ..............................................................................3, 18, 19

15 U.S.C. § 78fff-2(c)(3) ...............................................................................8

## Rules

Fed. R. Civ. P. 8(a)............................................................................................10

Fed. R. Civ. P. 9(b) ........................................................................................10

Fed. R. Civ. P. 12(b)(6)..................................................................................6

Fed. R. Evid. 201(b)........................................................................................22

## Treatise

COLLIER ON BANKRUPTCY (16th ed. 2021) .............................................................12

## PRELIMINARY STATEMENT

This case is among a series of adversary proceedings initiated by Irving H. Picard, the trustee ("Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), against financial institutions seeking to claw back payments made by two British Virgin Island investment funds, Fairfield Sentry Ltd. and Fairfield Sigma Ltd. (together, the "Fairfield Funds"), to the Fairfield Funds' shareholders prior to the collapse of BLMIS in December 2008. In the Amended Complaint (ECF No. 147), the Trustee asserts a single undifferentiated claim against three entities affiliated with Standard Chartered Bank (the "Standard Chartered Defendants") under Securities Investor Protection Act ("SIPA") and Section 550(a) of the Bankruptcy Code, on the theory that those entities were subsequent transferees of a portion of approximately $3 billion in initial transfers the Fairfield Funds allegedly received from accounts held at BLMIS.

The Trustee has failed to state a plausible claim under Section 550(a) against any Standard Chartered Defendant for several reasons:

*First*, the Amended Complaint establishes that the Standard Chartered Defendants were, at most, mere conduits and not transferees of any alleged transfer. Section 550(a) limits the Trustee's recovery of avoided transfers to a "transferee." 11 U.S.C. § 550(a). Relying on Second Circuit precedent, this Court has held that a party is considered a transferee only when it exercises "dominion over the money or

other asset, the right to put the money to one's own purpose." *Picard* v. *The Gerald and Barbara Keller Family Trust (In re BLMIS)*, 634 B.R. 39, 49–50 (Bankr. S.D.N.Y. 2021) (Morris, J.) (quoting *Christy* v. *Alexander & Alexander of N.Y., Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson and Casey)*, 130 F.3d 52, 57 (2d Cir. 1997)).    Here, there is no allegation that any Standard Chartered Defendant determined whether or when to invest or redeem clients' shares in the Fairfield Funds, or otherwise controlled any of the amounts received from those funds.    Rather, the Trustee alleges only that one Defendant—Standard Chartered Financial Services (Luxembourg) S.A. ("SCFS")—received money from the Fairfield Funds, (Am. Compl. ¶ 3, *see also* Exs. C & E to Am. Compl.), and that the other Standard Chartered Defendants (Standard Chartered Bank International (Americas) Ltd. ("SCBI"), and Standard Chartered International (USA) Ltd. ("SCI")) "promoted" and sold shares in the Fairfield Funds to non-party clients. (*See* Am. Compl. ¶ 79.)  But the "mere receipt" of money, even if traceable to an initial avoidable transfer, is insufficient to establish liability under Section 550(a).  *In re Finley*, 130 F.3d at 57.

And, while the Amended Complaint alleges in a conclusory manner that, in 2003, a non-party entity affiliated with the Standard Chartered Defendants "initially purchased the Fairfield Sentry shares for its own use in creating" a fund of funds, (Am. Compl. ¶ 85), there is no allegation that any of the transfers sought to

be recovered are associated with those shares.  In fact, agreements with the Fairfield

Funds managers, on which the Trustee relies to plead his claim, make clear that the

Standard Chartered Defendants were at most acting as a nominee bank for clients

and did not control their clients' investments in the funds.  Because the Amended

Complaint does not allege facts that plausibly establish any Standard Chartered

Defendant was a "transferee," the Trustee's claim under Section 550(a) fails as a

matter of law.

*Second*, the Trustee is barred by Section 550(f)(1) from adding alleged

transfers from Fairfield Sigma that were never alleged or referenced in his original

complaint filed in 2012.

*Third*, the allegations of the Amended Complaint establish that the

Standard Chartered Defendants received the transfers in good faith and for value.

The Trustee's own allegations demonstrate that the Standard Chartered Defendants

conducted initial and ongoing due diligence of the Fairfield Funds and BLMIS, but

*did not* discover or know of the Ponzi scheme.

*Fourth*, Section 546(e) of the Bankruptcy Code bars claims for transfers

prior to December 2006, because the transfers at issue were part of securities

contracts made by, to, or for the benefit of a "financial participant" or a "financial

institution" and there is no allegation that any Standard Chartered Defendant had

actual knowledge of the BLMIS fraud.

*Finally*, the Trustee has failed to plead that any amounts received by SCFS are plausibly traceable to voidable initial transfers from BLMIS.

## BACKGROUND

### A.    The Standard Chartered Defendants

Prior to February 2008, Defendant SCI was called American Express Bank Ltd., and is referred to in the Amended Complaint as "AEB New York." (Am. Compl. ¶ 56)  SCI wholly owned Defendant SCBI, which was a U.S. bank based in Miami that operated under the federal Edge Act and engaged "in international banking and financial operations." (Am. Compl. ¶ 57.)  SCBI is referred to in the Amended Complaint as "AEB Miami." (Am. Compl. ¶ 57.)  SCFS was a Luxembourg affiliate of SCI and SCBI, and is referred to in the Amended Complaint as "AEB Lux." (Am. Compl. ¶ 61.)  According to the Amended Complaint, SCI "managed" SCBI and SCFS. (Am. Compl. ¶ 61.)  Among other things, all three entities engaged in private banking services for clients outside of the United States. (*See* Am. Compl. ¶¶ 3, 55, 57, 61, 67, 68, 74, 86.)  In February 2008, Standard Chartered PLC acquired SCI, and the three Defendants became subsidiaries of Standard Chartered Bank. (Am. Compl. ¶¶ 56, 61.)

### B.    The Fairfield Funds

Prior to December 2008, Fairfield Sentry operated as an investment fund formed in the British Virgin Islands and invested "in excess of 95% of its assets in its BLMIS customer accounts." (Am. Compl. ¶ 2.)  "Fairfield Sigma was a Euro-

-4-

denominated currency fund that" purchased shares in Fairfield Sentry—*i.e.*, it was a feeder fund into Fairfield Sentry. (Am. Compl. ¶ 2.) The Fairfield Funds were managed by non-party Fairfield Greenwich Ltd. ("FGL"). (Am. Compl. ¶ 2.) FGL charged Fairfield Funds' investors certain management and performance fees. (*See* Am. Compl. ¶ 67.) None of the Standard Chartered Defendants are alleged to have had any control or influence over the Fairfield Funds or FGL, including how or when those entities decided to invest with or withdraw money from BLMIS.

The Amended Complaint alleges that SCI and/or SCBI "promoted" the Fairfield Funds to private banking clients initially in 2003 through the Concentrated Elite Fund, a non-party "fund of funds that allocated 25% of its assets to purchase Fairfield Sentry shares," (Am. Compl. ¶ 79), and "[l]ater AEB expanded the purchase of Fairfield Sentry for clients." (Am. Compl. ¶ 85.)[1] The Trustee claims that "in creating the Concentrated Elite Fund" some unidentified Standard Chartered Defendant "purchased the Fairfield Sentry shares for its own use." (Am. Compl. ¶ 85.) The Trustee does not allege any of those shares were redeemed or led to any transfer sought to be recovered here. In fact, the Amended Complaint does not allege

---

[1]    The Amended Complaint repeatedly refers to "AEB," defined as "American Express Bank" but not as any particular Defendant. (*See, e.g.*, Am. Compl. ¶¶ 6, 71–74, 85–87.)

that any Standard Chartered Defendant received any transfers from the Fairfield Funds for its own account at any time.

Rather, the Amended Complaint alleges that SCI and SCBI "negotiated and entered into distribution agreements with" FGL to distribute the Fairfield Funds to private banking clients at unspecified times.[2] (Am. Compl. ¶ 67.) The Amended Complaint, however, omits that those agreements provide that SCI or its affiliates or subsidiaries would distribute shares of the Fairfield Funds and several non-BLMIS related funds managed by FGL to private banking clients.[3] For example, a 2006 distribution agreement, which was novated in 2008 after Standard Chartered PLC acquired the Defendant entities, makes clear that SCI only "provide[d] nominee services with respect to" the ultimate clients who decided to invest in the Fairfield

---

[2]    The Amended Complaint also alleges that SCFS entered into a similar agreement. (Am. Compl. ¶ 61.)

[3]    As this Court has recognized, on a Rule 12(b)(6) motion, "courts must consider," in addition to "the complaint in its entirety" (including exhibits), "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Picard* v. *Fairfield Inv. Fund Ltd.*, 2021 WL 3477479, at *2 (Bankr. S.D.N.Y. Aug. 6, 2021) (Morris, J.) (quoting *Tellabs, Inc.* v. *Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)). Because the Trustee explicitly refers to and relies upon distribution agreements between one or more of the Standard Chartered Defendants and FGL to plead his claim, (Am. Compl. ¶¶ 61, 67–68), the Court may consider the terms of those agreements on a motion to dismiss. *Fairfield Inv. Fund Ltd*, 2021 WL 3477479, at *2.

Funds.[4]  (Ex. E to Declaration of Andrew J. Finn ("Finn Decl.") at 1; *see also* Ex. D

to Finn Decl.)[5]  In other words, SCI was acting on the instructions of clients and not

for its own benefit and account.   Indeed, the Trustee alleges a typical nominee

relationship with a bank acted for its clients.   Namely, the Trustee alleges SCBI

would recommend the Fairfield Funds and sell shares to clients, and that SCI

"directed AEB Lux" (SCFS) "to sign the subscription agreements and hold the

shares in" the Fairfield Funds for SCBI clients.  (Am. Compl. ¶ 86.)  The Trustee

also contends that SCI or SCBI earned unspecified fees both for "managing and

selling" the non-party fund of funds and from FGL for distributing the Fairfield

Funds to its clients.  (Am. Compl. ¶ 90.)

The Amended Complaint further alleges that certain SCI employees

conducted initial due diligence in 2002, (*see* Am. Compl. ¶ 88), and recognized that

there is always "single manager" risk and that due diligence "cannot guarantee

against an individual manager blowing up." (Am. Compl. ¶ 93.) The Trustee alleges

that later, in 2004, two SCI employees "recognized various abnormalities with

---

[4]     A prior letter of understanding, dated December 31, 2002, set forth the terms
by which "subscriptions by clients [would be] introduced by [SCI] directly or
indirectly" to the Fairfield Funds.  (Ex. F to Finn Decl. at 2.)

[5]     The Trustee further alleges that the Standard Chartered Defendants agreed "to
distribute structured notes linked to the performance of the" Fairfield Funds, but
nowhere alleges the amounts distributed or if any of the transfers sought to be
recovered relate to any such notes.  (Am. Compl. ¶ 85.)

BLMIS," and in response the Standard Chartered Defendants continued to conduct ongoing due diligence, including by meeting with Bernard Madoff in 2008. (Am. Compl. ¶¶ 6, 87–101.) There is no allegation that anyone at the Standard Chartered Defendants uncovered or even could have discovered that BLMIS was operating a Ponzi scheme.

## C.    The Amended Complaint

After obtaining discovery from SCI pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure in 2009, the Trustee waited nearly three years to commence this proceeding in April 2012. (*See* ECF No. 1.) After a series of omnibus motions and decisions by this Court, the District Court, and the Second Circuit addressing certain common threshold issues among similarly situated adversary proceedings, the Trustee filed his Amended Complaint on May 17, 2022. (ECF No. 147). The Amended Complaint contains a single count for "Recovery of Subsequent Transfers" under 11 U.S.C. §§ 105(a) and 550(a), and SIPA, 15 U.S.C. § 78fff-2(c)(3). (Am. Compl. ¶ 123.)

The Trustee seeks to recover $289,232,434 of transfers from Fairfield Sentry allegedly made to SCFS, which includes $274,029,164 by Fairfield Sentry and $15,203,270 from Fairfield Sigma. (Am. Compl. ¶¶ 1, 3.)[6] The Trustee ignores

---

[6]    The Amended Complaint also alleges that investments were made in Kingate Global Fund Ltd. ("Kingate"), another BLMIS feeder fund. However, the Trustee

entirely the amounts that SCFS sent to the Fairfield Funds for subscriptions on behalf of clients, which dwarfed the amount sought here.  (*See* Am. Compl. ¶ 100 (noting that "AEB was Fairfield Sentry's largest shareholder, with holdings over $500 million").)

## ARGUMENT

The Trustee's sole count in the Amended Complaint is brought pursuant to Section 550(a) of the Bankruptcy Code, which states in relevant part that "to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a)" of the Bankruptcy Code, "the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee."  11 U.S.C. § 550(a).  The Trustee contends that all of the Standard Chartered Defendants should be deemed "immediate or mediate" transferees of initial transfers from BLMIS to the Fairfield Funds.  (Am. Compl. ¶ 122.)

To plead a claim against an "immediate or mediate" transferee (also referred to as a subsequent transferee), "the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent transferee of that initial

_____

dropped all claims related to Kingate based on the Trustee's full recovery of all initial transfers to Kingate.  (Am. Compl. ¶¶ 4–5.)

transferee, that is, 'that the funds at issue originated with the debtor.'" *Picard* v. *BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018) (Bernstein, J.) (citations omitted); *see also SIPC* v. *BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e))*, 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013). "Federal Civil Rule 9(b) governs the portion of a claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a claim to recover the subsequent transfer." *BNP Paribas S.A.*, 594 B.R. at 195 (citations omitted). To adequately plead a subsequent transfer claim, the Trustee "must allege the 'necessary vital statistics—the who, when, and how much—'of the purported transfers to establish an entity as a subsequent transferee of the funds." *Id*. (citations omitted)

On this standard, the Amended Complaint fails to plead a subsequent transfer claim, and should be dismissed.

## I.    THE TRUSTEE FAILS TO ALLEGE FACTS ESTABLISHING ANY STANDARD CHARTERED DEFENDANT WAS A "MEDIATE OR IMMEDIATE TRANSFEREE" OF ANY INITIAL TRANSFEREE

Section 550(a) of the Bankruptcy Code limits recovery of transfers of property from the debtor estate (here, BLMIS) to "*transferee*[s]" of that property. 11 U.S.C. § 550(a) (emphasis added). As the Second Circuit has long recognized, a mere recipient of money or other assets is not a transferee. *In re Finley*, 130 F.3d at 57. Rather, the Second Circuit has adopted what has become known as the "dominion and control test"—*i.e.*, a transferee must exercise "dominion over the

-10-

money or other asset," meaning "the right to put the money to [its] own purposes." *Keller Family Trust*, 634 B.R. at 49–50 (citing *In re Finley*, 130 F.3d at 57). Thus, Section 550(a) is limited in scope and does not reach "every courier, every bank and every escrow agent" that may have touched the assets at issue. *In re Finley*, 130 F.3d at 56. This test applies equally to subsequent transferrees (as the Standard Chartered Defendants are alleged to have been) as it does to initial transferees. *Sec. Inv. Prot. Corp.* v. *Stratton Oakmont, Inc.*, 234 B.R. 293, 313 n.9 (Bankr. S.D.N.Y. 1999) (Brozman, J.) (explaining that "[t]he *Bonded* interpretation of 'transferee' applies not only to initial transferees but to subsequent transferees as well" and that "to qualify as a subsequent transferee, one must have dominion and control over the funds or property one receives" (citing *Bonded Fin. Servs., Inc.* v. *European Am. Bank*, 838 F.2d 890, 896 (7th Cir. 1988))).[7]

Under the dominion and control test, "mere conduits" of money are not transferees because a "'mere conduit' . . . has no dominion or control over the asset; rather, it is a party with actual or constructive possession of the asset before transmitting it to someone else. Mere conduits can do no more than transmit a transferor-debtor's funds to a transferee." *Authentic Fitness Corp.* v. *Dobbs Temp.*

---

[7]    *See also Bonded*, 838 F.2d at 896 (in considering whether a bank was a subsequent transferee, recognizing that "[t]he method we employed . . . to decide that the [b]ank was not an 'initial transferee' governs the question whether entities are subsequent transferees, too").

*Help Servs., Inc. (In re Warnaco Group, Inc.)*, 2006 WL 278152, at *6 (S.D.N.Y. Feb. 2, 2006); *see also Bear, Stearns Secs. Corp.* v. *Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 15 (S.D.N.Y. 2007) ("In other words, just because a party is not a 'mere conduit' in the prototypical sense of the term—*i.e.*, a party that receives the money merely to pass it on to a third-party—does not mean that the party has requisite 'dominion and control' over the funds." (citing *Bonded*, 838 F.2d at 891)); *see also* COLLIER ON BANKRUPTCY ¶ 550.02[4][a] (16th ed. 2021) ("[M]any courts have found that a party acting merely as a conduit who facilitates the transfer from the debtor to a third party is not a 'transferee[.]'").

Rather, in the context of a bank or broker, courts require a showing of (i) receipt of transferred funds; (ii) the legal right to control those transferred funds (*i.e.*, legal control); *and* (iii) the right to use those transferred funds for its own purpose (*i.e.*, actual control). *See In re Manhattan Inv. Fund*, 397 B.R. at 15. Thus, a financial institution that only nominally holds the assets of a client will not be considered a transferee under the statute. *See, e.g.*, *Bonded*, 838 F.2d at 893 (holding bank was not an initial transferee because it was contractually obligated to follow the customer's instructions to deposit funds and "held [the customer's] check only for the purpose of fulfilling an instruction to make the funds available to someone

-12-

else").[8] Even where a bank "use[s] the deposits until the depositor withdraws them,"

courts have found a lack of dominion and control. *Meoli* v. *Huntington Nat'l Bank*,

848 F.3d 716, 726 (6th Cir. 2017) (citation omitted).[9]

Moreover, establishing that a defendant is a "transferee" is an essential

element of a claim to recover under Section 550(a) that courts address at the motion

to dismiss stage. *See Weisfelner* v. *Fund 1 (In re Lyondell Chem. Co.)*, 503 B.R.

348, 381–83 (Bankr. S.D.N.Y. 2014) (Gerber, J.) (dismissing "claims asserted

against [d]efendants that were sued as conduits or as mere 'holders,' and not

beneficial owners, of Lyondell stock"), *abrogated on other grounds by In re Tribune

Co. Fraudulent Conveyance Litig.*, 818 F.3d 98 (2d Cir. 2016).[10] As an element of

---

[8]    *See also Malloy* v. *Citizens Bank of Sapulpa (In re First Sec. Mortg. Co.)*, 33
F.3d 42, 43 (10th Cir. 1994) (holding bank was not an initial transferee where
transferor "exercised complete discretion regarding deposits to and disbursements
from the account, and he was entitled to possession of all account funds upon
demand"); *Rupp* v. *Markgraf*, 95 F.3d 936, 942(10th Cir. 1996) (A bank "must (1)
actually receive the funds, and (2) have full dominion and control over them for [the
bank's] own account, as opposed to receiving them in trust or as agent for someone
else." (citation omitted)).

[9]    *See also Menotte* v. *United States (In re Custom Contractors, LLC)*, 745 F.3d
1342, 1350 n.6 (11th Cir. 2014) ("[A] party who has nearly unlimited ability to use
funds does not, for the purposes of our mere conduit or control test, 'control' those
funds when there exists an obligation to provide those funds to a third party.");
*Nordberg* v. *Societe Generale (In re Chase & Sanborn Corp.)*, 848 F.2d 1196, 1200
(11th Cir. 1988).

[10]    *See also Stratton Oakmont, Inc.*, 234 B.R. at 312–15 (granting motion to
dismiss in part because,"[a]s the Complaint stands, [defendant] was a mere

the claim, the Trustee must plausibly plead facts that would establish that each of the Standard Chartered Defendants qualify as transferees under Section 550(a). *See Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 562 (2007) ("[A] complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory[.]") (citation omitted).[11]  Here, the Amended Complaint's factual allegations fail to plausibly plead that any Standard Chartered Defendant had dominion and control over any alleged subsequent transfers, and thus fails to plausibly plead an essential element of the Trustee's claim.

---

conduit"); *Mervyn's LLC* v. *Lubert-Adler Group IV, LLC (In re Mervyn's Holdings, LLC)*, 426 B.R. 96, 102–04 (Bankr. Del. 2010) (Gross, J.) (finding that there was insufficient pleadings showing that the movant was a "transferee" for the purposes of an avoidance action); *Super Vision Int'l, Inc.* v. *Mega Int'l Commer. Bank Co.*, 534 F. Supp. 2d 1326, 1344 (S.D. Fla. 2008) (finding "that [plaintiff] has not stated a claim for fraudulent transfer against [defendant] because at best, [defendant] was the conduit, not the transferee, and because [defendant] is not alleged to have controlled the funds at issue").

[11]    Although some courts have referred to the "mere conduit" defense as an affirmative defense, *see, e.g.*, *Isaiah* v. *JPMorgan Chase Bank, N.A.*, 960 F.3d 1296, 1304 (11th Cir. 2020), the Second Circuit has not adopted this view.  This is consistent with the understanding that "[a] defense is not affirmative where it 'merely negates an element of the plaintiff's prima facie case.'"  *See Hadar* v. *Concordia Yacht Builders*, 886 F. Supp. 1082, 1089 (S.D.N.Y. 1995) (citations omitted).

*First*, the Amended Complaint does not allege that SCI or SCBI received any funds transferred from the Fairfield Funds.  Rather, the Trustee alleges only that SCFS received funds.  (Am. Compl. ¶¶ 109, 114.)  This alone dooms the Trustee's claims against SCI and SCBI.[12]

*Second*, the Trustee fails to allege facts suggesting any Standard Chartered Defendant held legal title to any of the money that SCFS received from the Fairfield Funds at any time.  There is no allegation that SCFS (or SCBI or SCI) received the alleged subsequent transfers in satisfaction of any debt or obligation, or for any services rendered.  *See Bonded*, 838 F.2d at 894–96 (holding that a bank was a subsequent transferee only after "it obtained dominion over the funds" when the customer instructed the bank to use the deposited funds to reduce the customer's debt to the bank).  Moreover, the Trustee's allegations that SCI or SCBI earned unspecified fees in connection with customer *subscriptions* to the Fairfield Funds (*see* Am. Compl. ¶¶ 67–68, 90) do not suggest any dominion and control over

---

[12]    The Amended Complaint's assertion that "Defendants are immediate or mediate transferees of the Fairfield Subsequent Transfers," (Am. Compl. ¶ 122), is purely conclusory and insufficient to defeat a motion to dismiss.  *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678–79 (2009) (while the Court must accept well-pleaded allegations as true, it need not accept assertions that are unsupported by factual allegations); *see also Twombly*, 550 U.S. at 555–56 (holding that factual allegations in a complaint must be sufficient "to raise a right to relief above the speculative level" and provide more than a "formulaic recitation of the elements of a cause of action").

*redemption* payments SCFS received from the Fairfield Funds. *See, e.g.*, *In re Finley*, 130 F.3d at 59 (finding the existence of a fee arrangement or commission does not weigh against a finding that a party was a mere conduit of the funds if they were received in the ordinary course of such transfers, because "many ordinary and routine transactions entail service fees that may be debited against funds as they pass from hand to hand.").[13]

       *Third*, the Trustee fails to allege that any Standard Chartered Defendant exercised actual control over any transfer received by SCFS. There is no allegation that SCFS, SCI or SCBI had the opportunity to or actually exercised any control over the funds received. Nor is there any allegation that the Standard Chartered Defendants had discretion to use any of the alleged transfers received by SCFS for themselves. To the contrary, all of the Trustee's factual allegations indicate that the

---

[13]    *See also Geltzer* v. *D'Antona (In re Cassandra Group)*, 312 B.R. 491, 496 (Bankr. S.D.N.Y. 2004) (Lifland, J.) (finding attorney who received funds into client trust account was not the "initial transferee" of the funds, even though he paid his own attorney's fees from the funds); *Tese-Milner* v. *Moon (In re Moon)*, 385 B.R. 541, 552–53 (Bankr. S.D.N.Y. 2008) (Gerber, J.) (rejecting the trustee's contention that the attorney was "initial transferee" as to the entirety of settlement proceeds received in client trust account, and holding that the attorney was only the "initial transferee" of the settlement proceeds that the attorney actually retained for his fees and expenses).

funds were received on behalf of banking clients to whom SCI and/or SCBI allegedly recommended investments in the Fairfield Funds.[14]

Accordingly, this case is akin to *Jalbert* v. *Gryaznova (In re Bicom NY, LLM)*, 2022 WL 1419997 (2d Cir. May 5, 2022), in which the Second Circuit recently applied the mere conduit defense, and held that the defendant was not a "transferee" for the purposes of Section 550(a). In that case, the defendant opened a joint bank account with a third party. Without the defendant's knowledge, the joint accountholder routed $1 million from the debtor through the joint account, where it stayed for two days before the joint accountholder transferred it to another entity. After the debtor entered bankruptcy, the trustee sought to recover the $1 million in transferred funds from the defendant as a co-owner of the account that received the money. The trustee contended that as an accountholder the defendant had the legal right and ability to control the funds received, and argued that a transferee "only needs the ability to physically control the funds and need not actually control the

---

[14]    Indeed, many of the Trustee's allegations appear to be lifted from similar allegations made by former SCBI clients who decided not to redeem their Fairfield Funds' shares before Madoff's arrest in 2008 and sued SCI and SCBI for recommending the funds. In those cases, overseen by the Honorable Victor Marrero as part of a multidistrict litigation styled *Anwar* v. *Fairfield Greenwich Ltd*., 826 F. Supp. 2d 578 (S.D.N.Y. 2011), the district court recognized that SCBI "owed only a limited set of duties to [the plaintiff clients] because they held nondiscretionary accounts at SCBI—meaning that SCBI needed authorization prior to making investments on their behalf." *Id*. at 590–91. In other words, SCBI did *not* exercise dominion and control over client funds held in or redeemed from the Fairfield Funds.

-17-

funds." *Id*. at *1.   The Second Circuit rejected that argument, recognizing that "[a]though [the defendant] hypothetically could have exercised control over the funds because they were in the joint account for two days, it is undisputed that she never had 'a realistic opportunity to' use the funds[.]" *Id*.  Here too, the Trustee fails to allege that SCFS (or SCI or SCBI) had any realistic opportunity to use any of the transfers allegedly received by SCFS, let alone actually did so.

In short, the Amended Complaint establishes that the Standard Chartered Defendants were, at most, conduits for the alleged transfers SCFS received.  Accordingly, the Trustee has failed to plausibly plead that any Standard Chartered Defendant was a "transferee" subject to liability under Section 550(a).

## II.    THE TRUSTEE'S AMENDED COMPLAINT SHOULD BE DISMISSED FOR ADDITIONAL REASONS

Even if a Standard Chartered Defendant could be deemed a transferee under Section 550(a) (and there are no well-pleaded allegations that any was), the Amended Complaint fails for several additional reasons:

*First*, the Trustee is barred from adding alleged transfers from Fairfield Sigma that were never alleged or referenced in the original complaint filed in 2012. Section 550(f)(1) of the Bankruptcy Code provides that subsequent transfer actions must be brought within "one year after the avoidance of the transfer on account of which recovery under this section is sought."   11 U.S.C. § 550(f)(1).  This Court previously ruled that the one year limitations period for actions against subsequent

-18-

transferees was triggered by the Bankruptcy Court's June 2011 approval of the Trustee's settlement with Fairfield Sentry, the initial transferee. *Picard* v. *Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 522–23 (Bankr. S.D.N.Y. 2012) (Lifland, J.); *see also BNP Paribas S.A.*, 594 B.R. at 207 ("A settlement of an avoidance claim represents finality and triggers the one-year period set forth in § 550(f).").

Here, the first mention of Fairfield Sigma and the alleged transfers from Fairfield Sigma was in the Trustee's proposed amended complaint in October 2020, approximately eight years after the limitations period expired. (*See* ECF No. 120-1; Ex. B to Finn Decl.) Moreover, there is no indication that these transfers—that were allegedly received between 2006 and 2008 and total $15,203,270—are overlapping transfers relating to Fairfield Sentry that were included in the Trustee's original complaint. (*See* Am. Compl. ¶ 114; ECF No. 1; Ex. C to Finn Decl.) Having nowhere mentioned Fairfield Sigma prior to October 2020, the Standard Chartered Defendants did not have adequate notice of claims related to that fund based on the Trustee's original 2012 pleading and they do not relate back to the Trustee's original pleading. *See BNP Paribas S.A.*, 594 B.R. at 210 ("To relate back, the new claim must arise out of a common core of operative facts uniting the original and newly asserted claims. The central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." (citations

omitted) (internal quotation marks omitted)).  Accordingly, the Trustee cannot add claims related to Fairfield Sigma transfers and those claims should be dismissed.

*Second*, the Trustee cannot recover the funds received in good faith and for value under Section 550(b) of the Bankruptcy Code.  *See* 11 U.S.C. § 550(b). The Trustee's own allegations in the Amended Complaint establish this defense.  In particular, the Amended Complaint contends that the alleged transfers were payments to Fairfield Sentry shareholders who subscribed (*i.e.*, gave value) in those funds pursuant to subscription agreements.[15]  (*See* Am. Compl. ¶¶ 3, 112, 116.)

Moreover, the Trustee fails to plausibly allege that anyone at the Standard Chartered Defendants uncovered or even could have discovered that BLMIS was operating a Ponzi scheme.  In *Picard* v. *Citibank, N.A. (In re BLMIS)*, the Second Circuit established a three-step inquiry for a good faith defense:  (1) what the defendants actually knew; (2) whether "these facts put the transferee on inquiry notice of the fraudulent purpose behind a transaction—that is, whether the facts the transferee knew would have led a reasonable person in the transferee's position to conduct further inquiry into a debtor-transferor's possible fraud"; and (3) whether

---

[15]    *See Picard* v. *ABN Amro N.A. (In re BLMIS)*, 2020 WL 1584491, at *9 (Bankr. S.D.N.Y. Mar. 31, 2020) (Bernstein, J.) ("Surrendering equity interests constitutes value for purposes of section 550(b) because it is consideration sufficient to support a simple contract.").

-20-

the "'diligent inquiry [by the transferee] would have discovered the fraudulent purpose' of the transfer." 12 F.4th 171, 191–92 (2d Cir. 2021) (citations omitted).[16]

Here, the Trustee has failed to allege that any Standard Chartered Defendant had the requisite knowledge of the BLMIS Ponzi scheme under the *Citibank* standard. At most, the Trustee alleges that based on due diligence by an SCI employee in December 2004 the Standard Chartered Defendants identified a risk associated with BLMIS because of "Madoff's secrecy and the inability to independently verify his trades." (Am. Compl. ¶ 87.) But it was this very secrecy risk that, according to the Amended Complaint, allowed the Ponzi scheme to carry on undiscovered for decades. (*See* Am. Compl. ¶¶ 17, 22–36.)

Thereafter, the Trustee alleges that the Standard Chartered Defendants conducted additional and ongoing due diligence into the Fairfield Funds and BLMIS, including meeting with Madoff in April 2008, (Am. Compl. ¶¶ 95–101), but the Trustee does not plausibly allege that those efforts did or should have uncovered BLMIS's long-running Ponzi scheme. *See Picard* v. *Katz*, 462 B.R. 447, 455–56 (S.D.N.Y. 2011). Indeed, the Trustee acknowledges that the SEC even launched an investigation in 2006 to determine whether BLMIS was engaged in illegal activities,

---

[16]    An objective "reasonable person" standard applies to the second and third inquiry. *Citibank*, 12 F.4th at 192.

(Am. Compl. ¶ 25), but did not uncover the fraud.[17]  Although this Court recently

declined to decide the application of the good faith defense at a motion to dismiss

stage in another case,[18] here the good faith defense is apparent on the face of the

Amended Complaint.  The only plausible inference from the allegations here is that

the Standard Chartered Defendants were not on inquiry notice of BLMIS's fraud.[19]

    *Third*, at a minimum, alleged transfers made beyond the two-year

period prior to the filing of the liquidation of BLMIS on December 11, 2008 are

protected by the safe harbor under Section 546(e) of the Bankruptcy Code.  *See* 11

U.S.C. § 546(e).  In particular, payments to BLMIS and to SCFS:  (i) were made "in

---

[17]    Likewise, the fact that the SEC conducted five examinations and investigations based on three substantive complaints and yet did not uncover Madoff's Ponzi scheme is beyond dispute and readily confirmable by reference to the SEC's Office of Inspector General's Report Number OIG-509, entitled Investigation of Failure of the SEC to Uncover Bernard Madoff's Ponzi Scheme, made available through the SEC, http://www.sec.gov/news/studies/2009/oig-509.pdf.  *See B.T. Produce Co.* v. *Robert A. Johnson Sales, Inc.*, 354 F. Supp. 2d 284, 285 n.2 (S.D.N.Y. 2004) (Marrero, J.) ("Courts have frequently taken judicial notice of official government reports as being 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned[.]'" (quoting Fed. R. Evid. 201(b)).).

[18]    *See Banque SYZ*, 2022 WL 2135019, at *11.

[19]    *See also BLD Prods., LLC* v. *Viacom, Inc.*, 2011 WL 1327340, at *10 (S.D.N.Y. Mar. 31, 2011), *aff'd in relevant part, vacated in part, remanded sub nom. BLD Prods., LLC* v. *Remote Prods., Inc.*, 509 F. App'x 81 (2d Cir. 2013) ("[T]his Court need not accept factual allegations that are conclusory, implausible, or contradicted by exhibits to a complaint.").

connection with a securities contract" and/or constituted "settlement payments" within the meaning of Section 546(e); (ii) were made by, to, and/or for the benefit of qualifying entities, including a stockbroker and financial institutions (BLMIS, and the Standard Chartered Defendants, at a minimum); and (iii) the Trustee has not alleged that any of the Standard Chartered Defendants had actual knowledge of Madoff's fraud. Although this Court recently held that the relevant "knowledge" for Section 546(e) is that of FGL, which managed Fairfield Sentry,[20] the Standard Chartered Defendants respectfully submit that these rulings are inconsistent with the District Court's ruling in *Sec. Inv. Prot. Corp.* v. *Bernard L. Madoff Inv. Sec. LLC*, 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013). There, the District Court stated that "even if the initial (or mediate) transferee fails to raise a Section 546(e) defense against the Trustee's avoidance of certain transfers . . . the subsequent transferee is nonetheless entitled to raise a Section 546(e) defense against recovery of those funds" unless the "subsequent transferee" had "actual knowledge of Madoff Securities' fraud." *Id*. The District Court focused on the knowledge of the subsequent transferee (*i.e.*, allegedly one of the Standard Chartered Defendants) and *not* the initial transferee (*i.e.*, Fairfield Sentry). Here, there is no allegation that any

---

[20]    *See Multi-Strategy Fund Ltd.*, 2022 WL 2137073, at *8–9; *Banque SYZ*, 2022 WL 2135019, at *9–10.

-23-

Standard Chartered Defendant was aware of the BLMIS fraud when SCFS received transfers from the Fairfield Funds.

   *Finally*, the Trustee has failed to plead that any amounts allegedly received by SCFS were plausibly traceable to voidable initial transfers from BLMIS. As this Court has recognized, "[t]he Trustee must also plead that the initial transfers (or subsequent transfers of the initial transfers) were transferred to the subsequent transferee." *Picard* v. *Shapiro (In re BLMIS)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (Bernstein, J.). "[B]arebones allegations that the funds at issue were transferred to the [s]ubsequent [t]ransferees, without more detail, are insufficient." *Id*. The Trustee's allegations that money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to SCFS, (Am. Compl. ¶¶ 109, 113–14), are purely conclusory and insufficient under *Iqbal* and *Twombly*. *See supra* n.12. The Court has recently found that exhibits to the Trustee's complaints in related adversary proceedings listing transfers to Fairfield Sentry and transfers from Fairfield Sentry to subsequent transferees may be sufficient at the motion to dismiss stage.[21] However, the Standard Chartered Defendants respectfully submit that the Trustee must allege more where, as here, the Trustee alleges that SCFS had

---

[21]  *Picard* v. *Multi-Strategy Fund Ltd.*, 2022 WL 2137073, at *10–11 (Bankr. S.D.N.Y. June 13, 2022) (Morris, J.); *Picard* v. *Banque SYZ & Co., SA*, 2022 WL 2135019, at *12 (Bankr. S.D.N.Y. June 14, 2022) (Morris, J.).

"holdings over $500 million" in Fairfield Sentry (*i.e.*, at least $500 million in subscriptions) but only $274,029,164 in redemptions from that fund, without ever tracing all subscribed or redeemed amounts to BLMIS.  (*See* Am. Compl. ¶¶ 1, 100.) The Amended Complaint fails to do so.

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

Dated: July 15, 2022
     New York, New York

Respectfully Submitted,

/s/ *Andrew J. Finn*
Andrew J. Finn
Mark A. Makar
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
Email:  finna@sullcrom.com
Email:  makarm@sullcrom.com

Diane L. McGimsey (*pro hac vice*)
1888 Century Park East
Los Angeles, California  90067
Telephone:  (310) 712-6600
Facsimile:  (310) 712-8800
Email:  mcgimseyd@sullcrom.com

*Attorneys for Standard Chartered Defendants*