# Exhibit 11

# EXHIBIT F



No 36356

## The International Business Companies Act, 1984

### MEMORANDUM OF ASSOCIATION
### ARTICLES OF ASSOCIATION

of

### FAIRFIELD SENTRY LIMITED

### An International Business Company

Incorporated the 30th day of October, 1990
Amendment registered the 24th day of August, 2000
Amendment registered the 12th day of March, 2002
Amendment registered the 5th day of March, 2003
Amendment registered the 4th day of June, 2003
Amendment registered this the 10th day of October, 2003

### CITCO B.V.I. LIMITED
CITCO Building, Wickhams Cay
Road Town, Tortola
British Virgin Islands
Tel: 1(284) 494-2217 Fax: 1(284) 494-3917



# TERRITORY OF THE BRITISH VIRGIN ISLANDS
## THE INTERNATIONAL BUSINESS COMPANIES ACT
## AMENDED AND RESTATED MEMORANDUM OF ASSOCIATION
### of
## FAIRFIELD SENTRY LIMITED

1. NAME

   The name of the Company is Fairfield Sentry Limited.

2. REGISTERED OFFICE

   The Registered Office of the Company will be Citco Building, Wickhams Cay, P.O. Box 662, Road Town, Tortola, British Virgin Islands.

3. REGISTERED AGENT

   The Registered Agent of the Company will be Citco B.V.I. Limited, Wickhams Cay, P.O. Box 662, Road Town, Tortola, British Virgin Islands.

4. GENERAL OBJECTS AND POWERS

   (1) The object of the company is to engage in any act or activity that is not prohibited under any law for the time being in force in the British Virgin Islands.

   (2) The Company may not:

   (a) carry on business with persons resident in the British Virgin Islands;

   (b) own an interest in real property situate in the British Virgin Islands, other than a lease referred to in paragraph (e) of subclause (3);

   (c) carry on banking or trust business, unless it is licensed under the Banks and Trust Companies Act, 1990;

   (d) carry on business as an insurance or reinsurance company, insurance agent or insurance broker, unless it is licensed under an enactment authorising it to carry on that business;

   (e) carry on the business of company management unless it is licensed under the Company Management Act, 1990; and

Fairfield Sentry Limited                                                        Page 2

---

    (f)    carry on the business of providing the registered office or the registered agent for companies incorporated in the British Virgin Islands.

(3)    For purposes of paragraph (a) of subclause (2), the Company shall not be treated as carrying on business with persons resident in the British Virgin Islands if:

    (a)    it makes or maintains deposits with a person carrying on banking business within the British Virgin Islands;

    (b)    it makes or maintains professional contact with solicitors, barristers, accountants, bookkeepers, trust companies, administration companies, investment advisers or other similar persons carrying on business within the British Virgin Islands;

    (c)    it prepares or maintains books and records within the British Virgin Islands;

    (d)    it holds, within the British Virgin Islands, meetings of its Directors or members;

    (e)    it holds a lease of property for use as an office from which to communicate with members or where books and records of the Company are prepared or maintained;

    (f)    it holds shares, debt obligations or other securities in a company incorporated under The International Business Companies Ordinance or under The Companies Act; or

    (g)    shares, debt obligations or other securities in the Company are owned by any person resident in the British Virgin Islands or by any company incorporated under The International Business Companies Ordinance or under the Companies Act.

(4)    The Company shall have all such powers as are permitted by law for the time being in force in the British Virgin Islands which are necessary or conducive to the conduct, promotion or attainment of the object of the Company.

5.    CURRENCY

Shares in the Company shall be issued in the currency of the United States of America.

6.    AUTHORISED CAPITAL

The authorised capital of the Company is US$100,000.00.



35864

Fairfield Sentry Limited

7.     CLASSES, NUMBER AND PAR VALUE OF SHARES

The authorised capital shall be divided into two classes, being 6,000,000 Class A Shares of US$0.01 par value each, and 4,000,000 Class B Shares of US$0.01 par value each. Shares will not be issued in series.

8.     DESIGNATIONS, POWERS, PREFERENCES, ETC. OF SHARES

The shares of the Company shall have the following rights and restrictions:

(1)     the holders of Class A Shares shall, subject to the provisions of the Articles:

    (a)     be entitled to one vote per Class A Share;

    (b)     be entitled to such dividends as the Directors may from time to time declare;

    (c)     in the event of a winding-up or dissolution of the Company, whether voluntary or involuntary or for the purposes of a reorganisation or otherwise or upon any distribution of capital, be entitled, subject to the provisions of the Articles, to share pro rata in the surplus assets of the Fund; and

    (d)     be entitled, and subject, to redemption or repurchase of such Class A Shares  as provided in the Articles.

(2)     the holders of Class B Shares shall, subject to the provisions of the Articles:

    (a)     be entitled to one vote per Class B Share;

    (b)     be entitled to such dividends as the Directors may from time to time declare;

    (c)     in the event of a winding-up or dissolution of the Company, whether voluntary or involuntary or for the purposes of a reorganisation or otherwise or upon any distribution of capital, be entitled, subject to the provisions of the Articles, to share pro rata in the surplus assets of the Fund; and

    (d)     be entitled, and subject, to redemption or repurchase of such Class B Shares  as provided in the Articles.

Except as provided in this Memorandum of Association and the Articles of Association, the designations, powers, preferences, rights, qualifications, limitations and restrictions of each share that the Company is authorised to issue shall be fixed by resolution of the Directors, but the Directors shall not allocate different rights as to voting, dividends

35864

Fairfield Sentry Limited                                                    Page 4

_____

distributions on liquidation or redemption unless the Memorandum of Association shall have been amended.

9.    SHARE ISSUANCE

Shares in the Company shall be issued as registered shares.

10.    TRANSFER OF REGISTERED SHARES

Registered shares in the Company may be transferred subject to the prior approval of the Directors of the Company as evidenced by a resolution of Directors.

11.    AMENDMENT OF MEMORANDUM AND ARTICLES OF ASSOCIATION

The Company may amend its Memorandum of Association and Articles of Association by a resolution of the Directors or by a resolution of the Members.

12.    DEFINITIONS

The meanings of words in this Memorandum of Association are as defined in the Articles of Association annexed hereto.


We, Caribbean Corporation Company Limited of Citco Building, P.O. Box 662, Road Town, Tortola, British Virgin Islands for the purposes of incorporating an International Business Company under the laws of the British Virgin Islands hereby subscribe our name to this Memorandum of Association the 30th day of October, 1990 in the presence of:


Witness                                           Subscriber


(Sgd. L. Hanley)                                  (Sgd. B. d'Ancona/D.Muys)
Road Town, Tortola                                For and on behalf of
Secretary                                         Caribbean Corporation Company Limited



35864

# TERRITORY OF THE BRITISH VIRGIN ISLANDS

## THE INTERNATIONAL BUSINESS COMPANIES ACT

## AMENDED AND RESTATED ARTICLES OF ASSOCIATION

### of

## FAIRFIELD SENTRY LIMITED

## INTERPRETATION

1.　　　　In these Articles unless there is something in the subject or context inconsistent therewith:-

"Accounting Date" means, subject to the provisions of these Articles, the 31st day of December;

"Act" means the International Business Companies Act as amended from time to time;

"Articles" means these Articles of Association as herein contained or as the same may from time to time be altered or amended;

"Auditor" means the person or firm for the time being appointed as Auditor of the Company;

"Base Currency" means dollars in the currency of the United States of America;

"business day" means any day which is not a Saturday or a Sunday and that is not a public holiday or a day on which banks are generally authorised or obliged by law or regulation to close in the Netherlands, the Republic of Ireland or the United States of America;

"Company" means Fairfield Sentry Limited;

"Custodian" means the person or persons for the time being appointed as custodian, joint custodians or prime broker pursuant to the Articles;

"Dealing Day" means with respect to subscriptions the first business day following a Valuation Day, and with respect to redemptions a Valuation Day, and/or, in either case, such other day or days in addition thereto or in substitution therefor as may from time to time be determined by the Directors either in any particular case or generally;

"Dealing Time" means the time by which an application for subscription or a request for redemption must be received, which in relation to subscriptions is 5:00 pm (Amsterdam time) on the third to the last business day of a month and in relation to redemptions is

Fairfield Sentry Limited                                                    Page 2

5:00 pm (Amsterdam time) on the day fifteen business days before a Dealing Day, or, in either case, such other time or day as the Directors may from time to time determine either in any particular case or generally;

"Director" means a person who is a director of the Company;

"duties and charges" includes all stamp and other duties, taxes, Governmental charges, brokerage, bank charges, transfer fees and registration fees;

"Fund" means the assets and liabilities of the Company as a whole;

"Initial Charge" means an amount as agreed between the Directors and the Manager but not exceeding 5% of the Subscription Price payable to the Manager, an affiliate of the Manager or an unaffiliated placement agent;

"Investment" means any right or interest in any share, stock, bond, debenture, debenture stock, unit, sub-unit, or other security or any loan of money or any currency or interest in any currency and includes any financial stock market index, interest rate or currency futures or similar financial or other instruments and any rights in or options over any of the aforesaid, issued by or under the guarantee of anybody, whether incorporated or unincorporated, or of any governmental body and whether paying interest or dividends or not and whether fully paid, partly paid or nil paid and includes any participation as a limited partner or participant in any partnership or unincorporated association;

"in writing" and "written" includes printing, lithography, photography, and other modes of representing or reproducing words in visible form;

"Manager" means the person for the time being appointed and acting as manager of the Company;

"Member" has the same meaning as member given in the Act and means the person or body corporate registered in the Register as the holder of shares in the Company, and, when two or more persons are so registered as joint holders of shares, means the person whose name stands first in the Register as one of such joint holders;

"Memorandum" means the Memorandum of Association of the Company;

"month" means calendar month;

"Net Asset Value" means the net asset value per Share determined in accordance with Article 11;

Fairfield Sentry Limited

"notice" means written notice unless otherwise specifically stated;

"Office" means the registered office of the Company for the time being;

"Paid up" means paid up and/or credited as paid up;

"Principal Market" with reference to any Investment, means such market which in the opinion of the Directors is the sole or principal securities market upon which such Investment is listed, quoted or traded or in respect of which permission to deal is effective and the expression "market" shall include any over-the-counter market or recognised exchange;

"Record Date" in respect of any dividend means the date as of which the persons entitled to participate therein fall to be determined and in respect of any general meeting of the Company means the date as of which the persons entitled to receive notice of and vote threat fall to be determined;

"Redemption Price" means the price at which Shares may be redeemed, determined in accordance with these Articles;

"Register" means the Register of Members maintained by the Company in Amsterdam, The Netherlands, or such other place as the Directors may determine, with a copy kept at the registered office of the Company in the British Virgin Islands;

"Seal" means the Common Seal of the Company and includes any duplicate common seal which the Directors may by resolution approve or adopt;

"Secretary" means (subject to the provisions of the Act) the person for the time being appointed to perform the duties of the Secretary of the Company and includes an Assistant, Acting or Deputy Secretary;

"Share" means a share of any class in the capital of the Company of a par value of US$0.01 having the rights and being subject to the restrictions specified in the Memorandum and these Articles with respect to such shares and shall where the context so permits include a fraction of a Share and "Shares" shall be construed accordingly;

"Subscription Price" means the price at which Shares may be subscribed, determined in accordance with the Articles; and

"Valuation Day" means the last business day of a month and/or such other day or days in addition thereto or in substitution therefor as may from time to time be determined by the

39831

08-01353-smb Doc 972-1 Filed 02/18/22 Entered 02/18/22 22:58:30 Exhibit 71
Sentrys Memorandum and Articles of Association    Pg 10 of 50

Directors either in any particular case or generally but so that there shall be at least one Valuation Day in each month.

The word "may" shall be construed as permissive and the word "shall" shall be construed as imperative.

Words importing the singular number only include the plural number and vice versa.
Words importing the masculine gender only include the feminine gender.
Words importing persons include companies or associations or bodies of persons, whether corporate or unincorporate.

Reference herein to any act is to an act of the British Virgin Islands legislature.

Save as aforesaid any words or expressions defined in the Act shall, if not inconsistent with the subject or context, bear the same meaning in these Articles.

## BUSINESS

2.        The meetings of the Members and of the Directors and of any committee appointed by the Directors shall be held in the British Virgin Islands or such other place as the Directors may from time to time determine.

3.        Any branch or kind of business which the Company is either expressly or by implication authorised to undertake may be undertaken by the Directors at such time or times as they may think fit, and further may be suffered by them to be in abeyance, whether such branch or kind of business may have been actually commenced or not, so long as the Directors may deem it expedient not to commence or proceed with the same.

## SHARE CAPITAL

4.    (1)    Subject to the provisions of these Articles, the unissued Shares of the Company shall be available for issue by the Directors who may offer, allot, grant options over or otherwise dispose of them to such persons, at such times and for such consideration and upon such terms and conditions as they may determine.

       (2)    Each class of Shares shall have in common with all other classes of Shares the same investment objectives and policies and underlying assets of the Fund, but in addition thereto the Shares of each class may have different dividend and distribution policies and additional assets and liabilities solely for the account of such class as the Directors may determine.

Fairfield Sentry Limited                                              Page 5

(3)    Except where the context otherwise requires, the provisions of these Articles shall apply, mutatis mutandis, separately and independently to each class of Shares as if any such class of Shares were the sole class of Shares created and established pursuant to these Articles.

5.    (1)    Notwithstanding anything herein contained, fully paid shares of the Company shall be free and clear of all and any liens and charges in favour of the Company.

(2)    Subject to the provisions of these Articles, the Directors may by notice to a Member (the "Converter") convert all or a portion of the existing shares (the "Existing Shares") held by the Converter comprised in a share certificate into Shares of another class (the "New Shares") and the following provisions of this Article shall apply:

> (a)    the rate at which all or any part of the holding of Existing Shares shall be converted into New Shares, shall be determined in accordance with the following formula:

$$A = \frac{(B \times RP)}{SP}$$

> where:
>
> A is the number of New Shares to be allotted
>
> B is the number of Existing Shares to be converted
>
> RP is the redemption price of the Existing Shares determined on the Valuation Day which precedes the day on which the conversion is to be effected
>
> SP is the subscription price of the New Shares determined on the Valuation Day which precedes the day on which the conversion is to be effected.

PROVIDED THAT:

> (b)    the conversion of Shares pursuant to this Article shall be made on the Dealing Day specified in the notice;
>
> (c)    no conversion of part only of the holding of any Member shall be made if as a result thereof such Member would hold less than the minimum number of Existing Shares and/or New Shares as specified from time to time by the Directors;

39831

(d)   no Shares shall be converted during any period when the determination of Net Asset Value is suspended pursuant to paragraph (4) of Article 11 hereof.

(3)   Where a certificate has been issued in respect of any Shares to be converted:

(a)   the Converter shall lodge with the Company or its authorised agent such certificate and subject as hereinafter mentioned no certificate for the New Shares shall be issued under this Article until such certificate shall have been received;

(b)   the Directors may at their option dispense with the production of any certificate which shall have become lost or destroyed on compliance by the Converter with the like requirements for those applying in the case of an application by him for replacement of a lost or destroyed certificate under these Articles;

(c)   on a conversion of part only of the Existing Shares registered in the Converter's name, the Converter shall be entitled without payment to a balance certificate for the balance of Existing Shares held by him.

6.        Without prejudice to any special rights for the time being conferred on the holders of any shares or class of shares (which special rights shall not be varied or abrogated, except with such consent or sanction as is provided by the next following Article) any share in the Company may be issued with such preferred deferred or other special rights, or such restrictions, whether in regard to dividend, return of capital, redemption, voting or otherwise as the Company may from time to time in general meeting determine.

7.   (1)   Whenever the capital of the Company is divided into different classes of shares all or any of the special rights for the time being attached to any class of share for the time being issued may (unless otherwise provided by the terms of issue of the shares of that class) be altered or abrogated, either whilst the Company is a going concern or during or in contemplation of a winding up, with the consent in writing of the holders of not less than fifty percent of the issued shares of the class and of the holders of not less than fifty percent of the issued shares of any other class of shares which may be affected by such variation, but not otherwise.

(2)   The special rights conferred upon the holders of any shares or class of shares issued with preferred or other special rights shall not (unless otherwise expressly provided by the conditions of issue of such shares) be deemed to be varied by the creation, allotment or issue of further shares ranking pari passu therewith or subsequent thereto.

39831

8.          The Company shall be entitled to treat the registered holder of any share as the absolute owner thereof and accordingly shall not be bound to recognise any equitable or other claim to, or interest in, such share on the part of any other person.

## ISSUE OF SHARES

9.    (1)    Subject as hereinafter provided, the Company may on receipt by it or its authorised agent of an application in such form as the Directors may from time to time determine issue and allot Shares PROVIDED THAT:

(a)    the issue of Shares pursuant to this Article shall be made on the Dealing Day on which, or immediately following the day on which, the application is received provided that the application is received on or before the Dealing Time;

(b)    the issue of Shares pursuant to this Article shall be effected at not less than the Subscription Price determined in accordance with paragraph (2) of this Article but in no event shall a Share be allotted or issued at a price less than its par value;

(c)    payment shall be made in the Base Currency at such time and place and in such manner as the Directors may from time to time determine failing which any allotment of Shares for which payment is due may be canceled by the Directors;

(d)    the Company shall not issue any of its Shares or securities (i) for services, or (ii) for property other than cash or securities (including securities of which the Company is the issuer) except that it may issue fully paid Shares as a distribution to its Members or in connection with a reorganisation;

(e)    no Share shall be allotted or issued (except those for which applications have been previously received and accepted by the Company or its agent) during any period when the determination of the Net Asset Value is suspended pursuant to paragraph (4) of Article 11;

(f)    the Directors may satisfy any such application for Shares by procuring the transfer to the applicant of fully paid Shares at the appropriate Subscription Price. If in lieu of issuing Shares the Company shall procure a transfer of Shares to the person making such application, any duties and charges payable in connection with such transfer shall be discharged by or on account of the transferor out of the price payable for such Shares;

39831

Fairfield Sentry Limited                                                                    Page 8

---

     (g)    Shares shall be issued in such minimum numbers as the Directors may specify either generally or in any particular case;

     (h)    fractions of a Share, of not less than one-thousandth of a Share, may be issued.

     (2)    The Subscription Price for each Share shall be the Net Asset Value of each Share (as determined in accordance with Article 11) as at the close of business in Amsterdam, The Netherlands on the Valuation Day immediately preceding the Dealing Day on which such issue is made in each case rounded to the nearest minimum integral unit of the Base Currency PROVIDED THAT in the case of an initial issue of Shares (that is, an issue of Shares at a time when there are no Shares of the relevant class in issue), the Directors shall, at their discretion, fix a Subscription Price which shall apply for the purposes of such initial issue of Shares. In addition to the foregoing the Directors may require any applicant for Shares to pay to the Manager or to an unaffiliated placement agent ,or to the Company on behalf of the Manager or an unaffiliated placement agent, the Initial Charge and the Manager or the unaffiliated placement agent may differentiate between such persons as to the amount of such Initial Charge (within the permitted limit).

     (3)    Share certificates in respect of Shares allotted, if requested, as aforesaid shall not be issued or delivered unless and until the subscription moneys have been paid over to the Custodian.

     (4)    The Company may on any issue of Shares pay such brokerage or commission as may be lawful.

## REDEMPTION OF SHARES

10.    (1)    Subject to the provisions of the Memorandum, these Articles and the Act and subject as hereinafter provided, the Company shall on receipt by it or its authorised agent of a request in writing (or in such other form as the Directors may determine) by a Member (the "Applicant") specifying the number and class of Shares to be redeemed redeem or purchase all or any portion of the Shares registered in the Applicant's name PROVIDED THAT:

     (a)    subject as hereinafter provided, the redemption or purchase of Shares pursuant to this Article shall be made on the Dealing Day on which, or immediately following the day on which, the written request is received provided that the said request is received on or before the Dealing Time;

(b)    the redemption or purchase of Shares pursuant to this Article shall be effected at the Redemption Price determined in accordance with paragraph (2) of this Article less a charge of 2% of the Redemption Price which charge shall only be applied where Shares are redeemed at the option of the Directors as a result of any actual or attempted assignment, pledge, mortgage, or other prohibited dealing by a Member which is not otherwise consented to by the Directors, or as a result of any application to record a transfer of Shares, including an application to record a transfer by operation of law, if not approved by the Directors within thirty (30) days;

(c)    subject as hereinafter provided, payment shall be made to the Applicant in the Base Currency in respect of the redemption or purchase of Shares. Any amount payable as aforesaid to the Applicant shall be payable as soon as practicable after the relevant Dealing Day, being normally thirty (30) days, plus (i) any period after the receipt of the request for redemption and before such payment during which the determination of the Net Asset Value has been suspended by declaration of the Directors pursuant to Article 11 and (ii) any period during which the relevant share certificate, if any, has not been lodged as provided in this Article 10. Payment for Shares redeemed or purchased hereunder shall be made to the Applicant by a cheque, draft, wire transfer or other means of payment posted (at the risk of the Applicant) or otherwise paid to the Applicant in the manner determined by the Directors from time to time. If an Applicant shall require payment in a currency other than the Base Currency, the Directors may, subject to receipt of any necessary exchange control or other governmental consent and at the risk of the Applicant and on his paying any costs thereby involved, arrange for the conversion of the sum to which the Applicant is entitled into such currency as the Applicant may require at such exchange rate as the Directors shall consider appropriate;

(d)    on any redemption or purchase the Directors shall have the power to divide in specie the whole or any part of the assets of the Company and appropriate such assets in satisfaction or part satisfaction of the Redemption Price and any other sums payable on redemption as is herein provided;

(e)    no Shares shall be redeemed or purchased during any period when the determination of the Net Asset Value is suspended pursuant to Article 11, the right of the Applicant to have his Shares redeemed or purchased pursuant to this Article shall be similarly suspended and during the period of suspension he may withdraw his request for redemption and his certificate. Any withdrawal of a request for redemption under the provisions of this Article shall be made in writing and shall only be effective if actually

Fairfield Sentry Limited                                                                                    Page 10

received by the Company or its duly authorised agent before termination of the said period of suspension. If the request is not so withdrawn the redemption or purchase of the said Shares shall be made on the Dealing Day next following the end of the said suspension;

(f)     instead of redeeming or purchasing the Applicant's Shares, the Directors may procure the purchase thereof at not less than such Redemption Price and at the same time and under the same conditions as apply to redemption under the provisions of these Articles;

(g)     subject as hereinafter in this Article provided, the Applicant shall not be entitled to withdraw a request duly made in accordance with this Article without the consent of the Directors; and

(h)     no redemption or purchase of part only of the holding of any Member may be made if as a result thereof such Member would hold less than the minimum number of Shares as specified from time to time by the Directors.

(2)     The Redemption Price for each Share shall be the Net Asset Value per Share (as determined in accordance with Article 11) as at the close of business in Amsterdam, The Netherlands on the Dealing Day on which such redemption is effected less such sum (if any) as the Directors may consider represents the appropriate provision for fiscal and sale charges which would be incurred on the sale of assets of the Company, in each case rounded to the nearest minimum integral unit of the Base Currency.

(3)     Where a certificate has been issued in respect of any Shares to be redeemed or purchased:

(a)     the Applicant shall lodge with the Company or its authorised agent such certificate and subject as hereinafter mentioned no payment shall be made under this Article until such certificate shall have been received;

(b)     the Directors may at their option dispense with the production of any certificate which shall have become lost or destroyed upon compliance by the Applicant with the like requirements to those applying in the case of an application by him for replacement of a lost or destroyed certificate under these Articles;

(c)     on redemption or purchase of part only of the Shares registered in the Applicant's name the Applicant shall be entitled by written request without payment to a balance certificate for the balance of such Shares.

39831

(4)    Upon the redemption or purchase of a Share being effected pursuant to this Article, the Member shall cease to be entitled to any rights in respect of that Share (excepting always the right to receive a dividend which has been declared in respect thereof prior to such redemption or repurchase being effected) and accordingly his name shall be removed from the Register with respect thereto.

(5)    Subject to the provisions of the Memorandum, these Articles and the Act and subject as hereinafter provided, the Directors shall have the power exercisable by resolution to redeem or purchase all or any portion of the Shares registered in the name of any Member (the "Relevant Member") where the holding of such Shares may result in regulatory, pecuniary, legal, taxation or material administrative disadvantages for the Company or its members as a whole and the provisions of this Article 10 shall apply to any such redemption or purchase EXCEPT THAT:

> (a)    the Company shall give notice to the Relevant Member of its intention to redeem or purchase such Relevant Member's Shares specifying the class, if applicable, and the number of such Shares;
>
> (b)    subject as hereinafter provided, the redemption or purchase of Shares pursuant to this Article shall be made on the Dealing Day immediately following the day on which such notice is received or deemed received by virtue of the provisions of these Articles;
>
> (c)    if a certificate in respect of any Shares the subject of redemption or purchase under this paragraph of this Article is outstanding then, upon receipt of the notice as aforesaid, the Relevant Member shall be bound forthwith to deliver to the Company or its duly authorised agents the certificate for such Shares. Payment of the redemption or purchase proceeds shall be deposited by the Company with or to the order of the Custodian in the name of the Company for payment to the Relevant Member against surrender of the certificate representing such Shares previously held by such Relevant Member. Upon the deposit of such redemption or purchase monies as aforesaid, the Relevant Member shall have no further interest in such Shares or any of them or any claim against the Company in respect thereof except the right to receive the money so deposited (without interest) from the Company upon surrender of the said certificate;
>
> (d)    no Shares shall be redeemed or purchased under this Article during any period when the determination of the Net Asset Value is suspended pursuant to Article 11.

39831

Fairfield Sentry Limited                                                    Page 12

---

## DETERMINATION OF NET ASSET VALUE

11.    (1)    The Net Asset Value per Share of each class shall be determined by the Directors as at the close of business on each Valuation Day (except when determination of the Net Asset Value per Share has been suspended under the provisions of paragraph (4) of this Article), on such other occasions as may be required by these Articles and on such other occasions as the Directors may from time to time determine.

The Net Asset Value per Share shall be calculated at the time of each determination by dividing the value of the net assets of the Fund by the number of Shares then in issue or deemed to be in issue and by adjusting for each class of Shares such resultant number to take into account any dividends, distributions, assets or liabilities attributable to such class of Shares pursuant to paragraph (2) of Article 4, all determined and calculated as hereinafter provided.

Any certificate as to the Net Asset Value per Share or as to the Subscription Price or Redemption Price therefor given in good faith by or on behalf of the Directors shall be binding on all parties.

(2)    The net assets of the Fund shall comprise the aggregate of:-

(a)    Investments owned or contracted to be acquired by the Company for the account of the Fund;

(b)    cash on hand or on deposit including accrued interest relating to the Fund;

(c)    cash payments outstanding on any Shares of the class allotted;

(d)    bills and demand notes and amounts receivable including net amounts receivable in respect of investments of the Fund contracted to be realised;

(e)    interest accrued on interest bearing investments of the Fund except that accrued on securities which is included in the quoted price; and

(f)    other property and assets of the Fund of any kind and nature including prepaid expenses and unamortised preliminary expenses as valued and defined from time to time by the Directors;

from which shall be deducted:-

(i)    Investments of the Fund contracted to be sold;

39831

---

    (ii)    bills and accounts payable for the account of the Fund;

    (iii)   management and administrative expenses payable and/or accrued (the latter on a day-to-day basis);

    (iv)   the gross acquisition consideration of Investments or other property contracted to be purchased for the Fund;

    (v)    reserves authorised or approved by the Directors for duties and charges or taxes or contingencies (accrued where appropriate on a day-to-day basis);

    (vi)   the aggregate amount of all borrowings and interest, commitment fee, and other charges arising in connection therewith (accrued where appropriate on a day-to-day basis); and

    (vii)  liabilities of the Company relating to the Fund of whatsoever nature (which shall, where appropriate, be deemed to accrue from day-to-day) including outstanding payments on any Shares of the relevant class previously redeemed. For the purposes of these articles, the amount of any distribution or dividend shall be a liability of the Fund from the day when the distribution or dividend is declared until it is paid.

For the purpose of calculating the number of Shares in issue or deemed to be in issue, Shares for which applications have been duly made shall be deemed to be not in issue on the relevant Valuation Day and Shares to be redeemed or purchased in accordance with Article 10 hereof shall be deemed to be in issue on the relevant Valuation Day.

    (3)    For the purpose of calculating the value of the net assets of the Fund:

    (a)    the value of any cash on hand or on deposit, bills and demand notes and accounts receivable, prepaid expenses, cash dividends and interest declared or accrued as aforesaid and not yet received shall be deemed to be the full amount thereof, unless in any case the same is unlikely to be paid or received in full, in which case the value thereof shall be arrived at after making such discount as the Directors may consider appropriate in such case to reflect the true value thereof;

    (b)    the value of securities which are listed on a securities exchange (which term shall include any interdealer quotation system which provides for reporting of last sale price) shall be valued at their last sales prices on the last business day of the month on the largest securities exchange on which such securities shall have traded on such date, or, if trading in such securities on such

exchange was reported on the consolidated tape, the last sales price on the consolidated tape (or, in the event that the last business day of the month is not a date upon which a securities exchange on which such securities are listed was open for trading, on the last prior date on which such a securities exchange was so open). If no sales of such securities occurred on either of such dates, such securities shall be valued at the reported last "bid" price (in the case of a security held long) and the last reported "asked" prices (in case of a security sold short) on the largest securities exchange on which such securities are traded, on the last business day of the month. Securities which are not listed shall be valued at their last "bid" prices on the last business day of the month if held "long" by the Company and their last "asked" prices on the last business day of the month if held "short" by the Company, as determined from representative dealers quotations. Securities for which no "bid" and "asked" prices are available shall be valued at such value as the Directors may determine. Securities which are commodities or commodity contracts shall be valued at their last prior sales prices on the principal board of trade or other contracts market in which dealings are made or by quotations from the contra-party bank in the case of a forward contract. All other securities and other assets of the Company (other than goodwill, which shall not be taken into account) shall be assigned such value as the Directors may determine. If the Directors determine that the valuation of any security pursuant to the foregoing does not fairly represent its market value, the Directors shall value such security as they determine and shall set forth the basis of such valuation in writing in the Company's records;

(c)    the value of any shares of stock held by the Company in an investment company shall be valued in accordance with the manner in which such shares are valued by such investment company; provided, however, that the Directors may make such adjustments in such valuation as the Directors may from time to time consider appropriate;

(d)    the value of any investment or security as aforesaid or other property for which no price quotations are available as above provided shall be determined in such manner, consistent with generally accepted accounting procedures, as the Directors may from time to time consider appropriate;

(e)    notwithstanding the foregoing, where on the last business of the month any cash or other asset of the Company has been realised or contracted to be realised there shall be included in the assets of the Company, in place of such cash or other asset, the assets receivable by the Company in respect

39831

thereof, provided that if the value of such assets is not then known exactly then its value shall be as estimated by the Directors; and

(f)     notwithstanding the foregoing, in the case of extraordinary circumstances which, in the Directors' sole discretion, warrant a different valuation of any securities, such securities will be valued at such prices as the Directors shall determine.

(4)     The Directors may suspend the determination of the Net Asset Value per Share of any class for the whole or any part of a period:-

(a)     during which any stock exchange or over-the-counter market on which any significant portion of the investments of the Fund are listed, quoted, traded or dealt in is closed (other than customary weekend and holiday closing) or trading on any such stock exchange or over-the-counter market is restricted; or

(b)     when circumstances exist as a result of which in the opinion of the Directors it is not reasonably practicable for the Company to dispose of investments comprised in the Fund or as a result of which any such disposal would be materially prejudicial to Members; or

(c)     when a breakdown occurs in any of the means normally employed in ascertaining the value of investments or when for any other reason the value of any of the investments or other assets of the Fund cannot reasonably or fairly be ascertained; or

(d)     during which the Company is unable to repatriate funds required for the purpose of making payments due on redemption of shares of the relevant class or during which any transfer of funds involved in the realisation or acquisition of investments or payments due on redemptions of shares of the relevant class cannot in the opinion of the Directors be effected at normal rates of exchange.

Any such suspension shall take effect at such time as the Directors shall declare but not later than the close of business on the business day next following the declaration, and thereafter there shall be no determination of the Net Asset Value per Share of the Fund until the Directors shall declare the suspension at an end, except that such suspension shall terminate in any event on the first business day on which (a) the condition giving rise to the suspension shall have ceased to exist; and (b) no other condition under which suspension is authorised under this paragraph shall exist. Each declaration by the Directors pursuant to this paragraph shall be consistent with such official rules and regulations (if any) relating to the subject matter thereof as shall have been

promulgated by any authority having jurisdiction over the Company and as shall be in effect at the time.   To the extent not inconsistent with such official rules and regulations, the determination of the Directors shall be conclusive.   Whenever the Directors shall declare a suspension of the determination of the Net Asset Value per Share, then as soon as may be practicable after any such declaration, the Directors shall give notice to all Members stating that such declaration has been made.   At the end of any period of suspension as aforementioned the Directors shall give notice to all Members stating that the period of suspension has ended.

## INVESTMENT AND BORROWING POWERS

12.      (1)      In carrying on the business of the Company, the Directors shall be entitled to acquire, hold, deal in and dispose of any Investment in such manner at such times and in such amounts as the Directors shall think fit.   The Company will adhere to the general principle of diversification in respect of all of its assets and the following investment restrictions will apply to any Investments (after taking account of any unpaid amounts in respect thereof) to be made or added to by the Company:

(a) no more than 10 percent of the net assets of the Fund will be invested in the securities of any one issuer (exclusive of securities issued or guaranteed by a government, governmental agency or instrumentality of any member state or Organization for Economic Cooperation and Development ("OECD") member state or by any supranational authority of which one or more European Union ("EU") or OECD member states are members);

(b) the Fund may not hold more than 10 percent of the issued securities of any one class of securities in any issuer (exclusive of securities issued or guaranteed by a government, governmental agency or instrumentality of any member state or OECD member state or by any supranational authority of which one or more EU or OECD member states are members);

(c) no more than 10 percent of the gross assets of the Fund may be exposed to the creditworthiness or solvency of a single counterparty (exclusive of governments, governmental agencies or instrumentalities of any member state or OECD member state or any supranational authority of which one or more EU or OECD member states are members), in each case calculated at the time of investment;

(d) no more than 10 percent of the net assets of the Fund may be invested in securities of countries where immediate repatriation rights are not available;

39831

(e)    the Fund will not invest in the securities of any issuer if the directors and officers of the Company and the Manager collectively own in excess of 5 percent of such securities;

(f)    the Fund will not take or seek to take legal or management control of the issuer of underlying investments;

(g)    the Fund will adhere to the general principle of diversification in respect of all of its assets;

(h)    the Fund will not invest directly in real property;

(i)    the Fund will not make any loans (except to the extent that the acquisition of any investment in securities or commodity interests described herein may constitute a loan) except with the consent of the Custodian, however, at no time will the Fund loan more than an amount equal to 10% of the Fund's net assets ( as measured at the time of the loan) to any one issuer (exclusive of securities issued or guaranteed by a government, governmental agency or instrumentality of any member state or OECD member state or by any supranational authority of which one or more EU or OECD member states are members); and

(j)    no more that 10 percent (in the aggregate) of the net assets of the Fund will be invested in physical commodities

The investment restriction set out in (c) above will not apply to transactions with any counterparty which advances full and appropriate collateral to the Fund in respect of such transactions.

(2)    For the purposes of this Article:

(a)    securities shall be deemed to be of the same class if they confer identical rights and (if applicable) are subject to identical restrictions but so that in the case of an issue of securities which are in other respects identical with securities already in issue, any temporary differences in rights as to the dividends or interest between such existing and new securities shall be disregarded;

(b)    nothing shall prevent the beneficial ownership of any entity, including all or part of the issued share capital of any company or companies, which for fiscal or other reasons the Manager considers it necessary or desirable to incorporate or acquire for the purpose of holding certain of the Investments

contained in the Fund.  None of the limitations or restrictions in paragraph (1) of this Article shall apply to Investments in, loans to or deposits with any such entity, and for the purpose of the said paragraph (1) Investments held by any such entity shall be deemed to be held directly by the Company;

(c)    the value of any Investment for the purpose of any limit contained in this Article shall not include any accrued interest in respect thereof, even if such accrued interest is included in the net assets of the Company.

(3)    It shall not be necessary for the Directors to effect changes of Investments merely because, owing to appreciations or depreciations of the value of Investments held by the Fund and/or variations in exchange rates, any of the limitations prescribed by paragraph (1) of this Article shall be exceeded, or by reason of any of the said limits being exceeded as a result of:  (i) the receipt of any rights, bonuses or benefits in the nature of capital, (ii)   any scheme or arrangement for amalgamation, reconstruction, conversion or exchange, (iii)  any realisation of any Investments;  but if and so long as any of the said limits shall be exceeded no purchase shall be made of any type of Investment which would result in any of the said limits being further exceeded.

(4)    The Directors may exercise all the powers of the Company to borrow money and to mortgage or charge its undertaking, property and uncalled capital, or any part thereof, and may issue debentures, debenture stock and other securities whether outright or as security for any debt, liability or obligation of the Company or any third party PROVIDED that, except with the approval by resolution in general meeting or, where there is more than one class of shares in issue, by the holders of the relevant class, the Directors shall not exercise the power to borrow if the total amount for the time being of borrowed moneys exceeds or would exceed an amount equal to the Borrowing Limit at the relevant time, and the Directors shall exercise any powers of control over any subsidiaries so as to secure (so far as may be possible) that the aggregate amount of borrowed moneys (exclusive of intra-group borrowings) shall not exceed the said amount.  For the purposes of this sub-paragraph, the issue of loan capital shall be deemed to constitute a borrowing notwithstanding that the same may be issued in whole or in part for a consideration other than cash.

(5)    The Custodian shall be entitled at any time at its entire discretion and without assigning any reason to give notice to the Directors that it is not prepared to accept any property which in the opinion of the Custodian infringes the terms of this Article and the Custodian shall be entitled to require the Company to replace any such property with other property not infringing the terms of this Article.

39831

## CUSTODIAN

13.         The Directors shall appoint a Custodian who or whose nominee shall hold the assets of the Company and in whose name or in the name of whose nominee the same shall be registered in the case of registered securities and who shall perform such other duties upon such terms as the Directors may from time to time (with the agreement of the Custodian) determine. All moneys, bills and notes belonging to the Company shall be paid to or to the order of or deposited with or to the order of the Custodian to an account to be opened in the name of the Company. The Custodian shall be a corporation having a capital (in stock or shares) for the time being issued of not less than US$1,000,000 (or equivalent in other currency). In the event of the Custodian desiring to retire the Directors shall use their best endeavours to find a corporation having the said qualifications to act as Custodian and upon doing so the Directors shall appoint such corporation to be Custodian in place of the retiring Custodian. The Directors shall not remove the Custodian unless and until a successor corporation shall have been appointed in accordance with this Article to act in the place thereof. The powers of the Directors under this Article shall include a power to appoint joint custodians and/or sub-Custodians.

## SHARE CERTIFICATES

14.    (1)    Every person whose name is entered as a Member in the Register shall, by request in writing, be entitled without payment to one certificate for all his shares, or upon payment of such reasonable out-of-pocket expenses as the Directors shall from time to time determine, to several certificates, each for one or more of his shares. Where a Member transfers part only of his holding of shares he shall be entitled without payment to a balance certificate for the shares retained by him. Every certificate shall be under the Seal or a facsimile thereof or a securities seal of the Company adopted by the Directors for that purpose and shall specify the number and class and distinguishing numbers (if any) of the shares to which it relates, and the amount paid up thereon. The Company shall not be bound to register more than four persons as the joint holders of any share or shares (except in the case of executors or trustees of a deceased Member) and in the case of a share held jointly by two or more persons, the Company shall not be bound to issue more than one certificate therefor, and delivery of a certificate for a share to one of several joint holders shall be sufficient delivery to all. If a share certificate be defaced, lost or destroyed, it may be renewed on such terms (if any) as to evidence and indemnity as the Directors think fit.

         (2)    Notwithstanding the foregoing, unless and until the Company receives a request in writing from the Member requesting a certificate for his shares pursuant to paragraph (1) of this Article, the Company need not issue the certificate to which the Member is otherwise entitled, in which case such Member's holding shall be recorded in the Register alone.

39831

## REGISTER OF MEMBERS

15.    (1)    The Secretary shall enter or procure the entry in the Register of the particulars required by the Act, and the Register shall be kept in such manner as to show at all times the Members of the Company for the time being and the shares respectively held by them.

(2)    Notwithstanding any other provision of these Articles, the Directors may fix any date as the Record Date for:-

(a)    determining the Members entitled to receive any dividend; and

(b)    determining the Members entitled to receive notice of and to vote at any general meeting of the Company.

## TRANSFER OF SHARES

16.    Subject to such of the restrictions of these Articles as may be applicable, any Member may transfer all or any of his shares by instrument in writing in a usual common form or in any other form which the Directors may approve. Such instrument may be on the back of the share certificate (if issued) and need not be under seal. The transferor shall be deemed to remain the holder of such shares until the name of the transferee is entered in the Register in respect thereof. An instrument of transfer need not be signed by or on behalf of the transferee.

17.    (1)    No transfer of Shares may be made if (i) as a result of such transfer either the transferor or the transferee of such Shares would hold less than the minimum number of Shares as the Directors may from time to time specify or (ii) such transfer would in the opinion of the Directors result in Shares being acquired or held by:-

(a)    any person in breach of the law or requirements of any country or governmental authority; or

(b)    any person or persons in circumstances (whether directly or indirectly affecting such person or persons and whether taken alone or in conjunction with any persons, connected or not, or any circumstances appearing to the Directors to be relevant) which in the opinion of the Directors might result in the Company incurring any liability to taxation or suffering any other pecuniary, regulatory, legal or material administrative disadvantage which the Company might not otherwise have incurred or suffered.

(2)    The Directors may decline to recognise any instrument of transfer, unless the instrument of transfer is deposited at the office of the Company or such other place as the

Directors may appoint, accompanied by the certificate, if any, for the shares to which it relates, and such other evidence as the Directors may reasonably require to show the right of the transferor to make the transfer.

(3)    The registration of transfers may be suspended at such times and for such periods as the Directors may from time to time determine provided always that such registration shall not be suspended for more than thirty days in any year.

18.    All instruments of transfer which shall be registered shall be retained by the Company, but any instrument of transfer which the Directors may decline to register shall (except in the case of fraud) be returned to the person depositing the same.

## TRANSMISSION OF SHARES

19.    (1)    In the case of the death of a Member the survivors or survivor where the deceased was a joint holder, and the legal personal representatives of the deceased where he was a sole or only surviving holder, shall be the only persons recognised by the Company as having any title to his interest in the shares, but nothing in this Article shall release the estate of a deceased joint holder from any liability in respect of any share jointly held by him.

(2)    Any person becoming entitled to shares in consequence of the death, incompetence or bankruptcy of a Member or otherwise by operation of law upon producing such evidence as the Directors may deem sufficient, may be registered as a Member in respect of such shares, or may, subject to Article 18, transfer such shares to some other person by executing an instrument of transfer in a usual common form or any other form which the Directors may approve.

(3)    If the person so becoming entitled shall elect to be registered himself, he shall deliver or send to the Company a notice in writing signed by him stating that he so elects. If he shall elect to have another person registered, he shall testify his election by executing to such person a transfer of such share. All the limitations, restrictions and provisions of these presents relating to the right to transfer and the registration of transfers of shares shall be applicable to any such transfer as aforesaid as if the death, incompetence or bankruptcy of the Member had not occurred and the transfer were a transfer executed by such Member.

(4)    A person becoming entitled to a share in consequence of the death, incompetence or bankruptcy or otherwise by operation of law of a Member shall be entitled to receive and may give a discharge for all dividends and other moneys payable on or in respect of the share, but he shall not be entitled to receive notice of or to attend or vote at meetings of the Company, or, save as aforesaid, to any of the rights or privileges of a Member until he shall have become a Member in respect of the share.

Fairfield Sentry Limited                                                                                          Page 22

---

(5)     For the purposes of this Article, what amounts to incompetence on the part of a person is a matter to be determined by the Supreme Court of the British Virgin Islands or a judge thereof after having regard to all the relevant evidence and the circumstances of the case.

## CONVENING OF MEETINGS OF MEMBERS

20.     (1)     The Directors of the Company may convene meetings of the Members at such times and in such manner and places within or outside the British Virgin Islands as the Directors consider necessary or desirable.

(2)     Upon the written request of Members holding more than fifty percent of the votes of the outstanding voting shares in the Company the Directors shall convene a meeting of Members.

21.     A Member shall be deemed to be present at a meeting of Members if he participates by telephone or other electronic means, and all Members participating in the meeting are able to hear each other.

22.     The Directors shall give not less than seven days notice of meetings of Members to those persons whose names on the date the notice is given appear as Members in the share register of the Company and are entitled to vote at the meeting.

23.     A meeting of Members held in contravention of the requirement to give notice pursuant to this Article is valid if a 90% majority of:

(a)     the total number of shares entitled to vote on all matters to be considered at the meeting;

(b)     the votes of each class of shares where Members are entitled to vote thereon as a class together with an absolute majority of the remaining votes;

have waived notice of the meeting and, for this purpose, the presence of a Member at the meeting shall be deemed to constitute waiver on his part.

24.     The inadvertent failure of the Directors to give notice of a meeting to a Member, or the fact that a Member has not received notice, does not invalidate the meeting.

## QUORUM AT GENERAL MEETINGS

08-01357-smb Doc 922-1 Filed 02/18/22 Entered 02/18/22 15:30:42 Exhibit 1
Sentrys Memorandum and Articles of Association    Pg 29 of 50
Pg 30 of 51

25.          No business shall be transacted at any general meeting unless a quorum is present. At a general meeting, subject as in these Articles otherwise provided, two persons present representing in person or by proxy not less than 50 per cent of shares of the Company entitled to vote at general meetings for the time being in issue shall be a quorum for all purposes provided that where there is only one Member, one person representing in person or by proxy such Member shall be a quorum for all purposes. If within thirty minutes from the time appointed for the meeting (including such a general meeting at which a resolution as aforesaid is to be proposed) a quorum is not present, the meeting, if convened on the requisition of or by Members, shall be dissolved. In any other case, it shall stand adjourned for not less than fifteen days at the same place and if at such adjourned meeting a quorum is not present within thirty minutes from the time appointed for holding the meeting, the Members entitled to vote present in person or by proxy, not being less than two, shall be a quorum.

## MAJORITY TO APPROVE RESOLUTIONS

26.     (1)     Subject to the provisions of these Articles, any act or thing which in accordance with these Articles is required to be transacted, made, done, approved, determined, decided or passed by the Company in general meeting shall not be effective except by virtue of a resolution passed by a simple majority of the persons voting thereat upon a show of hands, or, if a poll is duly demanded, by a simple majority of the votes given at such poll.

        (2)     In the case of an equality of votes at a general meeting, whether on a show of hands or on a poll, the chairman of such meeting shall be entitled to a second or casting vote.

27.          Subject to the Act, anything which may be done by resolution of the Company in general meeting or by resolution of a meeting of any class of the Members of the Company, may, without a meeting and without any previous notice being required, be done by resolution in writing signed by, or, in the case of a Member that is a corporation whether or not a company within the meaning of the Act, on behalf of, all the Members who at the date of the resolution would be entitled to attend the meeting and vote on the resolution. A resolution in writing may be signed by, or, in the case of a Member that is a corporation whether or not a company within the meaning of the Act, on behalf of, all the Members, or any class thereof, in as many counterparts as may be necessary.

## PROCEEDINGS AT GENERAL MEETINGS

28.          The Chairman or in his absence the Deputy Chairman of the Company, or in the absence of both of them some other Director nominated by the Directors, shall preside as chairman at every general meeting of the Company, but if at any meeting none of the foregoing persons is present within fifteen minutes after the time appointed for holding the meeting, or if none of them be willing to act as chairman, the Directors present shall choose some Director

39831

present to be chairman, or if no Director is present, or if all the Directors present decline to take the chair, the Members present shall choose some person present to be chairman.

29.        The Chairman may with the consent of any meeting at which a quorum is present (and shall if so directed by the meeting) adjourn the meeting from time to time and from place to place, provided that (a) no business shall be transacted at any adjourned meeting except business which might lawfully have been transacted at the meeting from which the adjournment took place and (b) notice of the adjourned meeting shall, if necessary, be given in accordance with the provisions of these Articles.

30.        At any general meeting a resolution put to the vote of the meeting shall be decided on a show of hands unless (before or on the declaration of the result of the show of hands) a poll be demanded by the chairman or by at least three Members present in person or by proxy and entitled to vote or by any Member or Members present in person or by proxy and representing in the aggregate not less than one-tenth of the total voting rights of all Members having the right to vote at the meeting or holding shares conferring a right to vote at the meeting on which there have been paid up sums in the aggregate equal to not less than one-tenth of the total sum paid on all shares conferring that right.  Unless a poll is so demanded, a declaration by the chairman that a resolution has, on a show of hands, been carried or carried unanimously or by a particular majority or not carried by a particular majority or lost, and an entry to that effect in the book of the proceedings of the Company shall be conclusive evidence of the fact without proof of the number or proportion of the votes recorded in favour of or against such a resolution. If a poll is duly demanded the result of the poll shall be deemed to be the resolution of the meeting at which the poll was demanded.

31.        A poll demanded on the election of a chairman, or on a question of adjournment, shall be taken forthwith.  A poll demanded on any other question shall be taken at such time and place and in such manner as the chairman directs.

32.        If any votes shall be counted which ought not to have been counted, or might have been rejected, the error shall not vitiate the result of the voting unless it is pointed out at the same meeting, or at any adjournment thereof, and not in that case unless it shall in the opinion of the chairman of the meeting be of sufficient magnitude to vitiate the result of the voting.

33.        Each Director of the Company shall be entitled to attend and speak at any general meeting of the Company.

34.        Subject to any special terms as to voting upon which any shares may be issued or may for the time being be held, at any general meeting on a show of hands every Member who (being an individual) is present in person or (being a corporation) is present by a duly authorised representative and every person holding a valid proxy at such meeting shall have one vote, and

Fairfield Sentry Limited                                                                    Page 25

---

on a poll every Member who is present as aforesaid or by proxy shall have one vote for every share of which he is the holder.

35.         On a poll a Member entitled to more than one vote need not, if he votes, use all his votes, or cast all the votes he uses in the same way.

36.         The following apply in respect of joint ownership of shares:

   (a)    if two or more persons hold shares jointly each of them may be present in person or by proxy at a meeting of Members and may speak as a member;

   (b)    if only one of them is present in person or by proxy, he may vote on behalf of all of them; and

   (c)    if two or more are present in person or by proxy, they must vote as one.

37.         A Member of unsound mind, or in respect of whom an order has been made by any court having jurisdiction in lunacy, may vote, whether on a show of hands or on a poll, by his committee, receiver, curator bonis, or other person in the nature of a committee, receiver or curator bonis appointed by such court, and such committee, receiver, curator bonis or other person may on a poll vote by proxy, provided that such evidence as the Directors may require of the authority of the person claiming to vote shall have been deposited at the office of the Company not less than thirty-six hours before the time for holding the meeting or adjourned meeting at which such person claims to vote.

38.         No objection shall be raised to the qualification of any voter except at the meeting or adjourned meeting at which the vote objected to is given or tendered, and every vote not disallowed at such meeting shall be valid for all purposes. Any such objection made in due time shall be referred to the chairman of the meeting, whose decision shall be final and conclusive.

## PROXIES AND REPRESENTATIVES

39.         A Member may be represented at a general meeting by a proxy who may speak and vote on behalf of the Member. The instrument appointing a proxy shall be in writing, under the hand of the appointor or of his attorney, or, if such appointor is a corporation, under its common seal or the hand of a duly authorised officer. The instrument appointing a proxy shall be in such form as the Directors may approve either generally or for a particular instance. A Member may appoint more than one proxy to attend on the same occasion. A proxy need not, unless required by law, himself be a Member.

39831

08-01374-smb Doc 925-17 Filed 02/18/22 Entered 02/18/22 22:58:20 Exhibit 71
Sentrys Memorandum and Articles of Association    Pg 32 of 50

40.         The instrument appointing a proxy and the power of attorney or other authority (if any) under which it is signed, or a notarially certified or office copy of such power of attorney, shall be deposited at the office of the Company or at such other place as is specified in the notice of meeting or in the instrument of proxy issued by the Company before the time appointed for holding the meeting or adjourned meeting at which the person named in the instrument proposes to vote and in default the instrument of proxy shall not be treated as valid.  No instrument appointing a proxy shall be valid after the expiration of twelve months from the date named in it as the date of its execution, except at an adjourned meeting or on a poll demanded at a meeting or an adjourned meeting in cases where the meeting was originally held within twelve months from such date.

41.         The Directors may at the expense of the Company send, by post or otherwise, to the Members instruments of proxy (with or without stamped envelopes for their return) for use at any general meeting or at any meeting of any class of Members of the Company either in blank or nominating in the alternative any one or more of the Directors or any other persons.  If, for the purpose of any meeting invitations to appoint as a proxy a person or one of a number of persons specified in the invitations are issued at the expense of the Company, such invitations shall be issued to all (and not to some only) of the Members entitled to be sent a notice of the meeting and vote thereat by proxy.

42.         A vote given in accordance with the terms of an instrument of proxy shall be valid, notwithstanding the death or insanity of the principal or the revocation of the instrument of proxy, or of the authority under which the instrument of proxy was executed, or the transfer of the share in respect of which the instrument of proxy is given, provided that no intimation in writing of such death, insanity, revocation or transfer shall have been received by the Company at the office of the Company before the commencement of the meeting or adjourned meeting at which the instrument of proxy is used.

43.         Any corporation which is a Member of the Company may authorise such person as it thinks fit to act as its representative at any meeting of the Company, or at any meeting of any class of Members of the Company, and the person so authorised shall be entitled to exercise the same powers on behalf of the corporation which he represents as that corporation could exercise if it were an individual Member of the Company.

## DIRECTORS

44.         The first Director or Directors of the Company shall be elected by the subscriber to the Memorandum and the first Director or Directors may elect any number of additional Directors as it or they may determine up to the maximum number set by Article 45.  Thereafter, the Directors shall be elected by the Members for such term as the Members determine

39831

08-01374696-ggm Doc 22752-1 Filed 02/18/22 Entered 02/18/22 29:38:24:30 Exhibit 11
Sentrys Memorandum and Articles of Association    Pg 33 of 50

45.         The minimum number of Directors shall be one and the maximum number shall be twenty.

46.    (1)    Each Director shall hold office for the term, if any, fixed by resolution of Members or until his earlier death, resignation or removal.

(2)    A Director may be removed from office, with or without cause, by a resolution of Members but not by resolution of Directors.

(3)    A Director may resign his office by giving written notice of his resignation to the Company and the resignation shall have effect from the date the notice is received by the Company or from such later date as may be specified in the notice.

47.         A vacancy in the board of Directors resulting from the death, resignation or removal of a Director may be filled by a resolution of the remaining Directors.

48.    (1)    With the prior or subsequent approval by a resolution of Members, the Directors may, by a resolution of Directors, fix the emoluments of Directors with respect to services to be rendered in any capacity to the Company.

(2)    A Director shall not require a share qualification, and may be an individual or a company.

(3)    Any Director which is a body corporate may appoint any person its duly authorised representative for the purpose of representing it at meetings of the board of Directors or with respect to unanimous written consents.

49.    (1)    A Director may hold any other office or place of profit under the Company (other than the office of Auditor) in conjunction with his office of Director, or may act in a professional capacity to the Company, on such terms as to tenure of office, remuneration and otherwise as the Directors may determine.

(2)    No Director or intending Director shall be disqualified by his office from contracting with the Company either as vendor, purchaser or otherwise, nor shall any such contract or any contract or arrangement entered into by or on behalf of the Company in which any Director is in any way interested be liable to be avoided, nor shall any Director so contracting or being so interested be liable to account to the Company for any profit realised by any such contract or arrangement by reason of such Director holding that office, or of the fiduciary relation thereby established, but the nature of his interest must be declared by him at the meeting of the Directors at which the question of entering into the contract or arrangement is first taken into consideration, or if the Director was not at the date of that meeting interested in the proposed contract or arrangement, then at the next meeting of the Directors held after he

08-01374996-gmm Doc 22751-1 Filed 02/18/22 Entered 02/18/22 29:58:04:20 Exhibit 11
Sentrys Memorandum and Articles of Association    Pg 34 of 50

becomes so interested, and in a case where the Director becomes interested in a contract or arrangement after it is made then at the first meeting of the Directors held after he becomes so interested.

(3)    Save as provided in this Article, a Director shall not vote in respect of any contract or arrangement or any other proposal whatsoever in which he has any material interest (otherwise than by virtue of his interests in shares or debentures or other securities of or otherwise in or through the Company) unless the nature of his interest is declared at the first opportunity at a meeting of the Directors or by writing to the Directors and no other Director objects to the interested Director voting on such arrangement.  A Director shall not be counted in the quorum at a meeting in relation to any resolution on which he is debarred from voting.

(4)    If any question shall arise at any meeting as to the materiality of a Director's interest or as to the entitlement of any Director to vote and such question is not resolved by his voluntarily agreeing to abstain from voting, such question shall be referred to the chairman of the meeting and his ruling in relation to such Director shall be final and conclusive except in a case where the nature or extent of the interests of the Director concerned have not been fairly disclosed.

(5)    The Company in general meeting may suspend or relax the provisions of this Article to any extent or ratify any transaction not duly authorised by reason of a contravention of this Article.

50.    Any Director may continue to be or become a president, vice president, director, managing director, manager or other officer or member of any other company in which this Company may be interested, and no such Director shall be accountable for any remuneration or other benefits received by him as a president, vice president, director, managing director, manager or other officer or member of any such other company.  The Directors may exercise the voting powers conferred by the shares in any other company held or owned by the Company, or exercisable by them as directors of such other company, in such manner in all respects as they think fit (including the exercise thereof in favour of any resolution appointing themselves or any of them presidents, vice presidents, directors, managing directors, managers or other officers of such company, or voting or providing for the payment of remuneration to the presidents, vice presidents, directors, managing directors, managers or other officers of such company), and subject to the provisions of the preceding Article any Director may vote in favour of the exercise of such voting rights in the manner aforesaid, notwithstanding that he may be, or be about to be, appointed a president, vice president, director, managing director, manager or other officer of such other company and as such is or may become interested in the exercise of such voting rights in manner aforesaid.

51.    No person other than a Director retiring at the meeting shall, unless recommended by the Directors for election, be eligible for the office of a Director at any general meeting

unless, not less than six or more than forty-eight days before the day elected for the meeting, there shall have been given to the Company notice in writing by some Member duly qualified to be present and vote at the meeting for which such notice is given of his intention to propose such person for election, and also notice in writing signed by the person to be proposed of his willingness to be elected.

## POWERS OF DIRECTORS

52.        The business of the Company shall be managed by the Directors, who may exercise all such powers of the Company as are not by the Memorandum, these Articles or the Act reserved to the Members, subject nevertheless to any regulations of these Articles, to the provisions of the Memorandum and of the Act, and to such regulations, being not inconsistent with the aforesaid regulations or provisions, as may be prescribed by the Company in general meeting, but no regulation made by the Company in general meeting shall invalidate any prior act of the Directors which would have been valid if such regulation had not been made.  The general powers given by this Article shall not be limited or restricted by any special authority or power given to the Directors by any other Article.

53.    (1)    The Directors may, subject to these Articles, establish any committees (not being committees consisting solely of Directors to which paragraph (2) of this Article applies), local boards or agencies for managing any of the affairs of the Company, either in the British Virgin Islands or elsewhere and may appoint any persons to be members of such committees, local boards or agencies, and may fix their remuneration and may delegate to any such committee, local board or agency any of the powers, authorities and discretions vested in the Directors, with power to sub-delegate, and may authorise the members of any local board, or any of them, to fill any vacancies therein, and to act notwithstanding vacancies, and any such appointment or delegation may be made upon such terms and subject to such conditions as the Directors may think fit, and the Directors may remove any persons so appointed, and may annul or vary any such delegation, but no person dealing in good faith and without notice of any such annulment or variation shall be affected thereby.

(2)    The Directors may, by a resolution of the Directors, designate one or more committees, each consisting of one or more Directors.  Each committee of Directors has such powers and authorities of the Directors, including the power and authority to affix the Seal, as are set forth in the resolution of Directors establishing the committee, except that no committee has any power or authority either to amend the Memorandum or these Articles or with respect to the matters requiring a resolution of Directors under these Articles.  The meetings and proceedings of any such committee consisting of two or more members shall be governed by the provisions of these Articles regulating the meetings and proceedings of the Directors.

(3)    The Directors may from time to time, and at any time, by power of attorney under the Seal, appoint any company, firm or person, or any fluctuating body of persons, whether

Fairfield Sentry Limited                                                    Page 30

---

nominated directly or indirectly by the Directors, to be the attorney or attorneys of the Company for such purposes and with such powers, authorities and discretions (not exceeding those vested in or exercisable by the Directors under these Articles) and for such period and subject to such conditions as they may think fit, and any such power of attorney may contain such provisions for the protection and convenience of persons dealing with any such attorney as the Directors may think fit, and may also authorise any such attorney to sub-delegate all or any of the powers, authorities and discretions vested in him.

54.        The Directors may from time to time appoint any one or more of their body to the office of managing Director, for such period and on such terms as they think fit. A Director appointed to the office of managing Director shall receive such remuneration (whether by way of salary commission or participation in profits or otherwise) as the Directors may determine.

55.        The Directors may entrust to and confer upon any Director appointed to the office of managing Director any of the powers exercisable by them as Directors upon such terms and conditions and with such restrictions as they think fit, and either collaterally with or to the exclusion of their own powers, and may from time to time revoke, withdraw or vary all or any of such powers.

56.        All cheques, promissory notes, drafts, bills of exchange and other negotiable instruments, and all receipts for moneys paid to the Company shall be signed, drawn, accepted, endorsed or otherwise executed, as the case may be, in such manner as the Directors shall from time to time by resolution determine.

## REGISTER OF DIRECTORS

57.   (1)    The Company may keep a register to be known as a register of Directors containing:

    (a)    the names and addresses of the persons who are Directors;

    (b)    the date on which each person whose name is entered on in the register was appointed as a Director; and

    (c)    the date on which each person named as a Director ceased to be a Director.

    (2)    The register of Directors may be in such form as the Directors approve, but if it is in magnetic, electronic or other data storage form, the Company must be able to produce legible evidence of its contents.

39831

Fairfield Sentry Limited                                                                 Page 31

---

(3)    A copy of the register of Directors, commencing from the date of the registration of the Company, shall be kept at the registered office of the Company.

(4)    The register of Directors is prima facie evidence of any matters directed or authorised by the Act to be contained therein.

### THE MANAGER

58.    (1)    The Directors may appoint any person or persons as Manager of the Company to exercise all or any of the duties, powers and discretions exercisable by the Directors upon such terms and conditions and for such period and with such restrictions as the Directors think fit and whether collaterally with or to the exclusion of their own powers.  The Directors shall procure that in any agreement appointing any person as Manager provisions shall be contained restricting the Manager and any investment adviser appointed by the Manager dealing with the Company as beneficial owner on the sale or purchase of investments to or from the Company except on a basis approved by the Directors from time to time or without the consent of the Directors otherwise dealing with the Company as principal.

(2)    The Manager shall be entitled to receive for its services such fees, including a fee on the issue of Shares, as may from time to time be agreed between the Manager and the Company.

### PROCEEDINGS OF DIRECTORS

59.    (1)    The Directors may meet at such times and in such manner and places within or outside the British Virgin Islands as the Directors may determine to be necessary or desirable. Questions arising at any meeting shall be determined by a majority of votes.  In case of an equality of votes the chairman shall have a second or casting vote.

(2)    A Director shall be deemed to be present at a meeting of Directors if he participates by telephone or other electronic means and all Directors participating in the meeting are able to hear each other.

(3)    An action that may be taken by the Directors or a committee of Directors at a meeting may also be taken by a resolution of Directors or a committee of Directors consented to in writing or by telex, telegram, cable or other written electronic communication, without the need for any notice.

39831

08-01749-smb Doc 927-7 Filed 02/18/22 Entered 02/18/22 19:00:30 Exhibit 71
Sentrys Memorandum and Articles of Association    Pg 38 of 50

(4)     A Director may by a written instrument appoint an alternate who need not be a Director and an alternate is entitled to attend meetings in the absence of the Director who appointed him and to vote or consent in place of the Director.

60.     (1)     A Director may, and the Secretary on the requisition of a Director shall, at any time summon a meeting of the Directors.  Notice of every meeting of Directors shall be given to all Directors.

(2)     A Director shall be given not less than three days notice of meetings of Directors. A meeting of Directors held without three days notice having been given to all Directors is valid if a majority of Directors entitled to vote at the meeting waive notice of the meeting and, for this purpose, the presence of a director at a meeting shall be deemed to constitute waiver on his part. The inadvertent failure to give notice of a meeting to a Director, or the fact that a Director has not received the notice, does not invalidate the meeting.

61.     The quorum necessary for the transaction of the business of the Directors may be fixed by the Directors, and unless so fixed at any other number shall be two, unless there is only one Director, in which case a quorum shall be one.  For the purposes of this Article an alternate shall be counted in a quorum, but for the purpose of deciding whether or not there is a quorum for a meeting, an alternate shall only count as one person.

62.     The continuing Directors or a sole continuing Director may act notwithstanding any vacancies in their body, but if and so long as the number of Directors is reduced below the minimum number fixed by or in accordance with these Articles, the continuing Directors or Director may act for the purpose of appointing Directors to fill any vacancy, summoning general meetings of the Company and for preserving the assets of the Company, but not for any other purpose.  If there are no Directors or Director able or willing to act, then any Member may summon a general meeting for the purpose of appointing a Director or Directors.

63.     The Directors may appoint officers of the Company at such times as they may determine.  Such officers may consist of a Chairman, a Deputy Chairman, a President and one or more Vice Presidents and such other officers as they may from time to time determine.  Any number of offices may be held by the same person.

64.     Unless otherwise agreed by a majority of those attending and entitled to attend and vote thereat, the President or Chairman, as the case may be, or in his absence a Vice President or Deputy Chairman, as the case may be, shall preside at all meetings of the Directors, but if at any meeting none of the foregoing be present within five minutes after the time appointed for holding the same, the Directors present may choose one of their number to be chairman of the meeting.

Fairfield Sentry Limited

---

65.       A resolution in writing signed by all the Directors or by all the members of a committee of the Directors for the time being shall be as effective as a resolution passed at a meeting of the Directors or of such committee, duly convened and held, and any such resolution may consist of several documents in the like form each signed by one or more of the Directors.

66.       A meeting of the Directors for the time being at which a quorum is present shall be competent to exercise all powers and discretions for the time being exercisable by the Directors.

67.       All acts done by any meeting of Directors, or of a committee of Directors, or by any person acting as Director, shall notwithstanding that it be afterwards discovered that there was some defect in the appointment of any such Director, or person acting as aforesaid, or that they or any of them were disqualified, or had vacated office, or were not entitled to vote, be as valid as if every such person had been duly appointed, and was qualified and had continued to be a Director and had been entitled to vote

## MINUTES

68.       The Directors shall cause minutes to be made:-

(a)    of all appointments of officers made by the Directors;

(b)    of the names of the Directors present at each meeting of Directors and of any committee of Directors; and

(c)    of all resolutions and proceedings at all meetings of the Company and of the Directors and of committees of Directors.

## THE SECRETARY

69.       A Secretary may be appointed by the Directors and shall hold office during the pleasure of the Directors.  Anything by the Act required or authorised to be done by or to the Secretary may, if the office is vacant or there is for any other reason no Secretary capable of acting, be done by or to any Assistant or Deputy Secretary or if there is no Assistant or Deputy Secretary capable of acting, by or to any officer of the Company authorised generally or specially in that behalf by the Directors.

70.       The Secretary shall attend all meetings of the Company and of the Directors or committee of Directors held in the British Virgin Islands to keep correct minutes of such meetings and enter the same in proper books provided for the purpose.  He shall perform such other duties as are prescribed by the Act or these Articles, or as shall be prescribed by the

39831

08-01789-cgm Doc 2925-1 Filed 02/18/22 Entered 02/18/22 22:58:30 Exhibit 1
Sentrys Memorandum and Articles of Association    Pg 40 of 50

Directors.  The Secretary shall receive such salary or other remuneration as the Directors shall from time to time determine.

71.          Any provisions of the Act or of these Articles requiring or authorising a thing to be done by or to a Director and the Secretary shall not be satisfied by its being done by or to the same person acting both as a Director and as, or in the place of, the Secretary.

## THE SEAL

72.          The Directors shall provide for the safe custody of the Seal which shall only be used by the authority of the Directors or of a committee of Directors authorised by the Directors in that behalf.  Every instrument to which the Seal shall be affixed shall be signed by any two Directors or by a Director and the Secretary or by the Director if there is only one Director or the Seal shall be affixed under the signature of some other person appointed by the Directors for that purpose.  Notwithstanding the foregoing, the Secretary may affix the Seal of the Company over his signature only to any authenticated copies of the Memorandum or these Articles, the minutes of any meetings or any other documents required to be authenticated by him, and  further when the instrument shall be a share certificate it shall be sufficient for the share certificate to bear a facsimile of the Seal or a securities seal (in such form as the Directors shall approve) and the facsimile signature of two Directors or of one Director and the Secretary or of the Director if there is only one Director and be signed by an authorised representative for the time being of the Company or its share registrar.

## DIVIDENDS AND DISTRIBUTIONS

73.          The Company may by a resolution of Directors declare and pay dividends in money, shares, or other property but dividends shall only be declared and paid out of surplus. Dividends shall be paid to the Members in accordance with their respective rights and priorities. The Directors shall have power to declare and pay dividends accordingly and other distributions at such times and at such intervals as they may think fit.  Dividends may be paid in cash or in specie.

74.    (1)    Subject to the rights of persons, if any, entitled to shares with special rights as to dividends, all dividends or other distributions declared or paid to the holders of any class of share shall be declared and paid to such holders in proportion to the shares held by them.

       (2)    All unclaimed dividends or distributions may be invested or otherwise made use of by the Directors for the benefit of the Company until claimed.  No dividend or distribution shall bear interest as against the Company.

(3)     The Directors may deduct from any dividend or other moneys payable to any Member on or in respect of a share all sums of money (if any) presently payable by him to the Company in relation to the shares of the Company.

75.     Any dividends or other moneys payable on or in respect of a share may be paid by cheque or warrant sent through the post to the registered address of the Member or person entitled thereto, and in the case of joint holders to any one of such joint holders, or to such person and such address as the holder or joint holders may direct. Every such cheque or warrant shall be sent at the risk of the person entitled to the money represented thereby and where being sent to an address outside the British Virgin Islands shall as far as may be practicable be forwarded by airmail.

76.     If several persons are registered as joint holders of any share, any one of them may give effectual receipts for any moneys payable on or in respect of the share.

77.     The Directors may carry to reserve out of the profits or gains of the Company (including, if allowed by law, any surplus of the Company) such sums as they think proper as a reserve or reserves which shall at the discretion of the Directors be applicable for any purpose to which the profits or gains of the Company may be properly applied and pending such application may be employed in the business of the Company as the Directors may from time to time think fit.

78.     In the case of a dividend of authorized but unissued shares with par value, an amount equal to the aggregate par value of the shares shall be transferred from surplus to capital at the time of the distribution.

79.     In the case of a dividend of authorized but unissued shares without par value, the amount designated by the Directors shall be transferred from surplus to capital at the time of the distribution, except that the Directors must designate as capital an amount that is at least equal to the amount that the shares are entitled to as a preference, if any, in the assets of the Company upon liquidation of the Company.

## CAPITALISATION OF PROFITS

80.     (1)     The Directors may resolve that it is desirable to capitalise any undivided profits or surplus of the Company (including profits carried and standing to any capital or other reserve or reserves) relating to the Fund,  and accordingly  appropriate the profits or sum resolved to be capitalised to the Members holding shares of relevant class in the proportion in which such profits or sum would have been divisible amongst them had the same been applied or been applicable in making the payment of dividends  and to apply such profits or sum on their behalf, either in or towards paying up the amounts, if any, for the time being unpaid on any shares of the

Fairfield Sentry Limited                                                                            Page 36

relevant class or debentures held by such Members respectively, or in paying up in full unissued shares of the relevant class or debentures of the Company of a nominal amount equal to such profits or sum, such shares or debentures to be allotted and distributed, credited as fully paid up, to and amongst such Members in the proportion aforesaid, or partly in one way and partly in the other provided that a surplus account relating to that class may, for purposes of this Article, only be applied in the paying up of unissued shares of the same class to be issued to Members of the Company holding shares of the relevant class as fully paid shares.

(2)       Whenever such a resolution as aforesaid shall have been passed the Directors shall make all appropriations and applications of the profits or sum resolved to be capitalised thereby, and all allotments and issues of fully paid shares, if any, and generally shall do all acts and things required to give effect thereto, with full power to the Directors to make such provision by the issue of fractional shares  or by payment in cash or otherwise as they think fit for the case of shares becoming distributable in fractions and also to authorise any person to enter on behalf of all the Members entitled to the benefit of such appropriations and applications into an agreement with the Company providing for the allotment to them respectively, credited as fully paid up, of any further shares to which they may be entitled upon such capitalisation, and any agreement made under such authority shall be effective and binding on all such Members.

## ACCOUNTS AND FINANCIAL STATEMENTS

81.       The Directors shall cause to be kept proper accounts with respect to:-

   (a)    all sums of money received and expended by the Company and the matters in respect of which such receipt and expenditure take place;

   (b)    all sales and purchases of assets by the Company; and

   (c)    the assets and liabilities of the Company.

82.       The books of account shall be kept at the office of the Company, or (subject to the provisions of the Act) at such other place as the Directors think fit, and shall always be open to inspection by the Directors.

83.       No Member (other than a Director) shall have any right of inspecting any account or book or document of the Company except as conferred by the Act or authorised by the Directors or by the Company in general meeting.

84.       The financial year end of the Company may be determined by resolution of the Directors and failing such resolution shall be the Accounting Date in each year.

39831

85.        At least once every financial year, the Company shall send to each Member printed copies of the financial statements of the Company made up as of the date of the last financial year end.

86.        Every balance sheet contained in the financial statements sent to each Member shall be signed on behalf of the Board of Directors by two of the Directors.

87.        The Directors' report, if any, and Auditor's report, if any, shall be attached to the financial statements.

88.        Every account of the Directors when audited shall be conclusive except as regards any error discovered therein within three months next after the audit.  Whenever such an error is discovered within that period, the financial statements shall forthwith be corrected and thereupon shall be conclusive.

## AUDIT

89.    (1)    The Directors or Members may appoint an independent representative of the Members as Auditor of the accounts of the Company and such Auditor shall hold office until the Directors or Members shall appoint another Auditor or remove the Auditor, provided that if the Auditor was appointed by the Members only the Members may appoint another Auditor or remove the Auditor.

       (2)    The Auditor may be a Member but no Director or officer of the Company shall, during his continuance in office, be eligible for appointment as Auditor.

       (3)    The remuneration of the Auditor shall be determined by the Members or by the Directors if so authorised by the Members.

90.        If the Auditor's office becomes vacant by the resignation or death of the Auditor or by his becoming incapable of acting by reason of illness or absence from the British Virgin Islands at a time when his services are required, the Directors shall, as early as practicable, appoint an Auditor to fill the vacancy or an acting Auditor to act during the incapacity of the Auditor, or if the Auditor was appointed by the Members the Directors shall, as early as practicable, convene a  general meeting to appoint an Auditor to fill the vacancy or an acting Auditor to act during the incapacity of the Auditor.

91.    (1)    The Auditor shall examine such books, accounts and vouchers as may be necessary for the performance of his duties in accordance with generally accepted auditing standards in the British Virgin Islands or in such other country or jurisdiction as the Directors may determine.

39831

(2)    The Auditor shall be furnished with a list of all books kept by the Company and shall at all times have the right of access to the books and accounts and vouchers of the Company, and shall be entitled to require from the Directors and officers of the Company such information and explanations as may be necessary for the performance of his duties.

(3)    The Auditor shall make a report to the Members on the financial statements examined by him during his tenure of office, and the report shall state whether or not in his opinion the financial statements present fairly, in all material aspects, the financial position of the Company and the results of its operations and the changes in its net assets in accordance with generally accepted accounting principles in the British Virgin Islands or in such other country or jurisdiction as the Directors may determine.

92.    The Auditor shall be entitled to attend any general meeting of the Company at which any financial statements which have been examined or reported on by him are to be laid before the Company and to make any statement or explanations he may desire with respect to the financial statements.

## NOTICES

93.    Any notice or document may be served by the Company on any Member either personally or by sending it through the post in a prepaid letter addressed to such Member at his address as appearing in the Register.  In the case of joint holders of a share, all notices shall be given to that one of the joint holders whose name stands first in the Register in respect of the joint holding, and notice so given shall be sufficient notice to all joint holders.

94.    Any Member present, either personally or by proxy, at any meeting of the Company shall for all purposes be deemed to have received due notice of such meeting, and, where requisite, of the purposes for which such meeting was convened.

95.    (1)    Any notice or other document, if served by post, shall be deemed to have been served at the time when the letter containing the same is posted, and in proving such service it shall be sufficient to prove that the letter containing the notice or document was properly addressed and duly posted.

(2)    All notices or other documents being posted to addresses outside the British Virgin Islands shall so far as may be practicable be forwarded by airmail.

96.    Any notice or document delivered or sent by post to or left at the registered address of any Member in pursuance of these Articles shall, notwithstanding that such Member be then dead or bankrupt, and whether or not the Company had notice of his death or bankruptcy, be deemed to have been duly served in respect of any share registered in the name of such Member as sole or joint holder, unless his name shall, at the time of the service of the notice or

document, have been removed from the Register as the holder of the share, and such service shall for all purposes be deemed a sufficient service of such notice or document on all persons interested (whether jointly with or as claiming through or under him) in that share.

## WINDING UP

97.    (1)    No resolution to wind up the Company shall be deemed passed unless it is passed by a majority of the votes cast at a general meeting in accordance with the provisions of these Articles.

(2)    If the Company shall be wound up, the liquidator shall apply the assets of the Company in satisfaction of creditors' claims in such manner as he thinks fit.

(3)    The surplus assets available for distribution among the Members shall then be applied in the payment to the holders of each class of shares in accordance with the rights and restrictions of each such class and otherwise equally, such payment being made in proportion to the number of shares of the class held.

(4)    If the Company shall be wound up (whether the liquidation is voluntary or by or under the supervision of the Court) the liquidator may, with the authority of a resolution passed in general meeting, divide among the Members in specie the whole or any part of the assets of the Company, and whether or not the assets shall consist of property of one kind or shall consist of properties of different kinds, and may for such purposes set such value as he deems fair upon any one or more class or classes of property, and may determine how such division shall be carried out as between the Members or different classes of Members. The liquidator may, with the like authority, vest any part of the assets in trustees upon such trust for the benefit of Members as the liquidator, with the like authority, shall think fit, and the liquidation of the Company may be closed and the Company dissolved, but so that no Member shall be compelled to accept any shares in respect of which there is a liability.

## FORMS

98.    The forms in the Schedule may be used, subject to such variations or alterations to meet the special circumstances or particular cases as may be necessary and as the Directors may approve.

## INDEMNITY

99.    (1)    Each Director, Secretary or other officer of the Company shall be indemnified by the Company against, and it shall be the duty of the Directors out of the funds of the Company to pay all costs, losses, and expenses which any such Director or officer may incur or become liable for by reason of any contract entered into, or act or thing done by him as such Director or

officer, or in any way in the discharge of his duties, and the amount for which such indemnity is provided shall immediately attach as a lien on the property of the Company, and have priority as between the Members over all other claims but only if any such Director or officer acted honestly and in good faith with a view to the best interests of the Company and, in the case of criminal proceedings, the person had no reasonable cause to believe that his conduct was unlawful.

(2)    No Director, Secretary or other officer of the Company shall be liable for the acts, receipts, neglects or defaults of any other Director or officer, or for joining in any receipt or other act for conformity, or for any loss or expense happening to the Company through the insufficiency or deficiency of title to any property acquired by order of the Directors for or on behalf of the Company, or for the insufficiency or deficiency of any security in or upon which any of the moneys of the Company shall be invested, or for any loss or damage arising from the bankruptcy, insolvency, or tortious act of any person with whom any moneys, securities or effects shall be deposited, or for any loss occasioned by any error of judgment, omission, default, or oversight on his part, or for any other loss, damage, or misfortune whatever which shall happen in relation to the execution of the duties of his office or in relation thereto, to the extent permitted by law.

(3) The decision of the Directors as to whether the person acted honestly and in good faith and with a view to the best interests of the Company and as to whether the person had no reasonable cause to believe that his conduct was unlawful is in the absence of fraud, sufficient for the purposes of this Article, unless a question of law is involved.

## FUNDAMENTAL CHANGES

100.    The Company may by resolution of Members continue as a company incorporated under the laws of a jurisdiction outside the British Virgin Islands in the manner provided under those laws.

101.    Notwithstanding section 80 of the Act, the Directors may sell, transfer, lease, exchange or otherwise dispose of the assets of the Company without the sale, transfer, lease, exchange or other disposition being authorised by a resolution of Members.

We, Caribbean Corporation Company Limited of Citco Building, P.O. Box 662, Road Town, Tortola, British Virgin Islands for the purposes of incorporating an International Business Company under the laws of the British Virgin Islands hereby subscribe our name to this Articles of Association the 30th day of October, 1990 in the presence of:

Witness                                    Subscriber

(Sgd. L. Hanley)                           (Sgd. B. D'Ancona/D/ Muys)
Road Town, Tortola                         For and on behalf of
Secretary                                  Caribbean Corporation Company Limited

Fairfield Sentry Limited                                    Page 42

---

## THE SCHEDULE

### FORM "A"

### TRANSFER OF SHARES

I/We .........................................................................................................................[the transferor]

in consideration of...............................................................................................................[amount]

DO HEREBY TRANSFER TO.......................................................................................[the transferee]

of..................................................................................................................................................[address]

..........................................…...........................................….....................[number and class of shares]
in the Company represented by the attached/within certificate.


AS WITNESS my/our hand(s) the       day of       20  .


SIGNED by the above-named transferor(s)
in the presence of:

                                                    ...............................................................
                                                    (Signature of Transferor(s))


...........................................
(Witness)


                                                    ...............................................................
                                                    (Signature of Transferee(s))


...........................................
(Witness)


39831

Fairfield Sentry Limited

## FORM "B"

### TRANSFER BY PERSONAL REPRESENTATIVES

I/We having become entitled in consequence of the death of (name of deceased Member) ......................................... to (number) ........................ share(s) comprised in certificate(s) numbered ................. standing in the Register of Members of ................................. in the name of the said deceased Member, instead of being registered myself/ourselves in consideration of the sum of (state total consideration) ..................... paid to me/us by name(s) of transferee(s)...........…….......................................................................................................... of (address(es) ...........................................................................................…........................... (hereinafter called "the transferee(s)") do hereby transfer to the transferee(s) (number and class of shares transferred) ................... share(s) in the said Company subject to the several conditions on which the same were held immediately before the execution hereof; and I/We the transferee(s) do hereby agree to take the said share(s) hereby transferred subject to the conditions aforesaid.

AS WITNESS my/our hand(s) the       day of        20   .

SIGNED by the above-named person(s)
entitled in the presence of:

....................................................................

....................................................................
(Signatures of person(s) entitled)

SIGNED by the above-named Transferee(s)
in the presence of:

....................................................................

....................................................................
(Signature(s) of Transferee(s))

Fairfield Sentry Limited                                    Page 44

---

## FORM "C"

## PROXY LIMITED TO ONE MEETING

I/We ........................……………………………………………............................[name]

the holder of ...............................................................................…..............[number] shares

hereby appoint .......................................................................................................[proxy]

of..........................................................................................................................[address]

 or failing whom..................................................................................................[proxy]

of..........................................................................................................................[address]

to be my/our proxy to vote on me/our behalf at the general meeting of the

Members of the company to be held on the ........ day of ............ 20 .., and at any adjournment

thereof.


Unless otherwise instructed with respect to any particular resolution(s) the proxy will vote or abstain as he thinks fit.


AS WITNESS my/our hand(s) this        day of        20   .

SIGNED by


.............................................
(Signature(s) of Member(s))


.............................................
(Witness)


39831