**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| Plaintiff-Applicant, | Adv. Pro. No. 08-01789 (CGM) |
| v. | SIPA Liquidation |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 12-1022 (CGM) |
| CRÉDIT AGRICOLE (SUISSE) S.A., and CRÉDIT AGRICOLE S.A., a/k/a BANQUE DU CRÉDIT AGRICOLE, | |
| Defendants. | |

**CRÉDIT AGRICOLE (SUISSE) S.A.'S MEMORANDUM OF LAW IN**
**SUPPORT OF THE MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS .................................................................................... 3

    A.    Background .............................................................................. 3

    B.    The Trustee's Fairfield Action ................................................ 5

    C.    The Fairfield Liquidator's Actions ......................................... 6

    D.    The Trustee's Complaints in the Other Fairfield Subsequent Transfer Actions ................................................... 7

    E.    The Trustee's Complaint against C.A. Suisse ......................... 7

        i.    The Trustee's Claims ...................................................... 7

        ii.    The Trustee's Insufficient Jurisdictional Allegations ........ 8

ARGUMENT ...................................................................................................... 9

    I.    THE COMPLAINT FAILS TO PLEAD ADEQUATELY THAT C.A. SUISSE RECEIVED CUSTOMER PROPERTY ......................................................................... 9

        A.    Standard on Motion to Dismiss ...................................... 9

        B.    The Trustee Fails to Plead the Avoidability of the Initial Transfers by Improperly Incorporating Another Complaint ............................................................. 10

        C.    The Trustee's Own Pleadings Establish the Implausibility of His Conclusory Allegations .................... 11

        D.    The Trustee Has Failed to Carry His Pleading Burden ........ 12

        E.    It Is Implausible that Alleged Initial Transfers to Fairfield Sentry of $3 Billion Resulted in Alleged Subsequent Transfers of $5 Billion ................................... 13

        F.    The Trustee's Complaint Seeks to Recover Transfers Made by Sentry at Times When the Trustee Alleges There was no Money Left From BLMIS .............................. 14

II.     RECOVERY OF ALLEGED SUBSEQUENT
        TRANSFERS OF INITIAL TRANSFERS IS BARRED
        BY THE SAFE HARBOR OF 11 U.S.C. § 546(E) .................................... 17

        A.   The Alleged Initial Transfers Were Made by, to, or for
             the Benefit of a Covered Entity .......................................... 20

             i.    The Alleged Initial Transfers Were Made by a
                   Stockbroker .................................................................. 20

             ii.   The Alleged Initial Transfers Were Made to a
                   Financial Institution ..................................................... 20

             iii.  The Alleged Initial Transfers Were Allegedly
                   Made for the Benefit of a Financial Institution,
                   C.A. Suisse .................................................................. 21

        B.   The Alleged Initial Transfers Were Settlement
             Payments and Made "in Connection With" a Securities
             Contract ........................................................................... 22

III.    THE COMPLAINT DOES NOT ESTABLISH
        PERSONAL JURISDICTION OVER C.A. SUISSE ................................ 25

        A.   The Trustee Does Not Allege that C.A. Suisse
             Transacted Business in New York ...................................... 26

        B.   The Alleged Foreseeability of the Fairfield Funds'
             Investment in BLMIS Does Not Establish Personal
             Jurisdiction over C.A. Suisse .............................................. 29

        C.   The Subscription Agreement Cannot be the Basis for
             Personal Jurisdiction Over C.A. Suisse .............................. 30

        D.   The Trustee's Miscellaneous Jurisdictional Arguments
             Also Fail ........................................................................... 31

        E.   The Exercise of Personal Jurisdiction over C.A. Suisse
             Would Not Comport with Due Process ................................ 32

CONCLUSION .................................................................................... 33

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Actrade Fin. Techs. Ltd. (Silverman v. Actrade Cap., Inc.)*,
  337 B.R. 791 (Bankr. S.D.N.Y. 2005) ...............................................................19, 24

*Al Rushaid v. Pictet & Cie*,
  28 N.Y.3d 316 (2016) ...............................................................................................31

*Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal., Solano Cnty.*,
  480 U.S. 102 (1987) ..................................................................................................30

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................9, 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................ *passim*

*In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Chais)*,
  440 B.R. 274 (Bankr. S.D.N.Y. 2010) ......................................................................26

*In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Revocable Trust)*,
  773 F.3d 411 (2d Cir. 2014) ............................................................................ *passim*

*In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Merkin)*,
  515 B.R. 117 (Bankr. S.D.N.Y. 2014) ...............................................................15, 16

*In re Bernard L. Madoff Inv. Secs. LLC (Picard v. Estate of Chais)*,
  445 B.R. 206 (Bankr. S.D.N.Y. 2011) ......................................................................16

*Davis v. Bifani*,
  No. 07CV00122MEHBNB, 2007 WL 1216518 (D. Colo. Apr. 24, 2007) .............10

*In re Fairfield Sentry Ltd.*,
  596 B.R. 275 (Bankr. S.D.N.Y. 2018) .......................................................................7

*In re Fairfield Sentry Ltd.*,
  No. 10-13164 (SMB), 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018)................... *passim*

*In re Fairfield Sentry Ltd.*,
  No. 10-13164 (SMB), 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ..............7, 20, 25

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984) ..................................................................................................29

*Homeschool Buyers Club, Inc. v. Brave Writer, LLC*,
No. 19-CV-6046 (VSB), 2020 WL 1166053 (S.D.N.Y. Mar. 11, 2020)................................27

*JCorps Int'l, Inc. v. Charles & Lynn Schusterman Fam. Found.*,
828 F. App'x 740 (2d Cir. 2020) ...........................................................26

*Kramer v. Time Warner Inc.*,
937 F.2d 767 (2d Cir. 1991)..................................................................4

*Law v. Siegel*,
571 U.S. 415 (2014)...........................................................................19

*In re Lehman Bros. Holdings Inc.*,
535 B.R. 608 (Bankr. S.D.N.Y. 2015)...................................................25

*In re Livent, Inc. Noteholders Sec. Litig. (Rieger v. Drabinsky)*,
151 F. Supp. 2d 371 (S.D.N.Y. 2001)....................................................9

*In re Madoff (Picard v. Shapiro)*,
542 B.R. 100 (Bankr. S.D.N.Y. 2015).......................................11, 12, 13

*In re Manhattan Inv. Fund Ltd. (Gredd v. Bear, Stearns Secs. Corp.)*,
310 B.R. 500 (Bankr. S.D.N.Y. 2002)...................................................19

*Muth v. Dechert, Price & Rhoads*,
391 F. Supp. 935 (E.D. Pa. 1975) .........................................................10

*N.H. v. Maine*,
532 U.S. 742 (2001)...........................................................................21

*NCUA Bd. v. Morgan Stanley & Co.*,
2014 U.S. Dist. LEXIS 58751 (S.D.N.Y. Apr. 28, 2014)........................10

*Neewra, Inc. v. Manakh Al Khaleej Gen. Trading & Contracting Co.*,
No. 03 Civ. 2936 (MBM), 2004 WL 1620874 (S.D.N.Y. July 20, 2004)..............27

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
549 B.R. 56 (S.D.N.Y. 2016)................................................................26

*Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
322 F.3d 147 (2d Cir. 2003).................................................................22

*Papasan v. Allain*,
478 U.S. 265 (1986).............................................................................9

*Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
480 B.R. 501 (2012).....................................................................27, 29

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
 2013 U.S. Dist. LEXIS 56042 (S.D.N.Y. Apr. 15, 2013)......................................................10

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*
 (*Picard v. Fairfield Inv. Fund Ltd.*),
 No. 08-01789 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ...............3, 17, 23

*Shaffer v. Heitner*,
 433 U.S. 186 (1977)...............................................................................................................26

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*,
 No. 12 MC 115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ........................... *passim*

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Banca Carige S.P.A.)*,
 No. 08-01789 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022).........................18

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Banque SYZ & Co. SA)*,
 No. 08-01789, 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) . C.A. ....................18, 28

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Multi-Strategy Fund Ltd.)*,
 No. 09-01789 (CGM), 2022 WL 2137073 (Bankr. S.D.N.Y. June 13, 2022)..................18, 28

*SPV Osus Ltd. v. UBS AG*,
 882 F.3d 333 (2d Cir. 2018).......................................................................................26, 29, 31

*Texas Water Supply Corp. v. R.F.C.*,
 204 F.2d 190 (5th Cir. 1953) ...............................................................................................10

*In re Trib. Co. Fraudulent Conv. Litig.*,
 10 F.4th 147 (2d Cir. 2021) ..................................................................................................22

*Walden v. Fiore*,
 571 U.S. 277 (2014)................................................................................................... *passim*

*Waldman v. Palestine Liberation Org.*,
 835 F.3d 317 (2d Cir. 2016)...................................................................................................30

*World-Wide Volkswagen Corp. v. Woodson*,
 444 U.S. 286 (1980)...............................................................................................................32

*Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC*,
 No. 19-cv-3444 (VSB), 2020 WL 5503557 (S.D.N.Y. Sept. 10, 2020)...........................26, 31

**Statutes**

11 U.S.C. § 101(22)(A)..................................................................................................20, 21

11 U.S.C. § 101(53A)(B)(i) ...................................................................................................20

11 U.S.C. § 546(E) ......................................................................................... *passim*

11 U.S.C. § 550(a) ..................................................................................10, 17, 25

11 U.S.C. § 741(7)(A)(i) ..............................................................................23

15 U.S.C. § 78fff-2(c)(3) ............................................................................4, 11

Bankruptcy Code (the "Code) .......................................................................... *passim*

Securities Investor Protection Act ........................................................................4, 7, 11

**Other Authorities**

Amy J. Sepinwall, *Righting Others' Wrongs: A Critical Look at Clawbacks in the
   Madoff-Type Ponzi Schemes and Other Frauds*,
   78 BROOK. L. REV. 1, 23–24 (2012) ..................................................................11

CPLR § 302(a)(1) ........................................................................................27

Fed. R. Civ. P. 8(a) .....................................................................................10

Fed. R. Civ. P. 10(c) ...................................................................................10

Fed. R. Civ. P. 12(b)(2) ..............................................................................1, 25

Fed. R. Civ. P. 12(b)(6) .......................................................................1, 3, 9, 19

Fed. R. Bankr. P. 7004(f) .............................................................................25

Fed. R. Bankr. P. 7012(b) ..............................................................................1

Defendant Crédit Agricole (Suisse) S.A. ("C.A. Suisse" or "Defendant"), by its

undersigned counsel, respectfully submits this memorandum of law in support of its motion to

dismiss the Complaint, as amended (the "Complaint" or "Compl.")[1] of plaintiff Irving Picard,

Trustee (the "Trustee" or "Plaintiff") for the Liquidation of Bernard L. Madoff Investment

Securities LLC ("BLMIS"), pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6),

made applicable here by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.

## PRELIMINARY STATEMENT

In the Complaint, the Trustee has asserted a single claim under Section 550 of the U.S.

Bankruptcy Code (the "Code") against C.A. Suisse, as an alleged subsequent transferee, to

recover approximately $16 million of purportedly avoidable initial transfers from BLMIS to

Fairfield Sentry Limited ("Fairfield Sentry") and Fairfield Sigma Limited ("Sigma" together

with Sentry, the "Fairfield Funds"). C.A. Suisse did not invest its own money or provide

guidance on why others should invest in the Fairfield Funds, but rather operated in an

execution-only function, directed by non-U.S. customers to execute such investments on their

behalf. The Complaint, which contains no allegations that C.A. Suisse acted in bad faith,

should be dismissed because it is fatally flawed on the following three grounds.

*First*, the Complaint contains a fundamental flaw – the Trustee fails to plead the

avoidability of the transfers from BLMIS to the Fairfield Funds. The Trustee attempts to

incorporate the entire 217-page, 798-paragraph long (and now – importantly – superseded)

pleading in another action, but the Federal Rules of Civil Procedure prohibit such a runaround.

---

[1] The Complaint (Vicens Decl. Ex. 1), ECF No. 1, was filed January 12, 2012. It was amended by stipulation and order entered on February 24, 2022 (Vicens Decl. Ex. 2), ECF No. 110. The February 2022 Stipulation and Order amended the Complaint to: (i) dismiss the transfers that were dismissed pursuant to the Kingate Settlement, reducing the amount sought by the Trustee to $16,002,424.10; and (ii) dismiss all claims against Crédit Agricole S.A. a/k/a Banque du Crédit Agricole. Unless otherwise specified, all "ECF No. __" citations refer to Adv. Pro. No. 12-01022.

The Complaint further alleges in a conclusory fashion that the monies received by C.A. Suisse are actually traceable to BLMIS. The Complaint lacks fundamental factual allegations which, if proven, would establish that essential first element of this cause of action. Through pleadings filed in this Court, the Trustee has sought to recover approximately *$5 billion* in subsequent transfers originating from Fairfield Sentry, even though the supposed underlying initial transfers to Fairfield Sentry total only *$3 billion*. This outsized recovery is inconsistent with the doctrine governing fraudulent recovery and basic math. Courts routinely dismiss complaints based on allegations that cannot possibly be true as failing to meet basic pleading standards.

*Second*, the securities safe harbor of the U.S. Bankruptcy Code's Section 546(e), which was created to ensure certainty, speed and finality in the securities markets, precludes the Trustee from avoiding the alleged initial transfers, thereby providing a complete defense to the Trustee's attempt to recover from C.A. Suisse as a subsequent transferee. The Complaint establishes that the alleged initial transfers at issue qualify for this safe harbor because: (i) they were made "in connection with a securities contract" and constituted "settlement payments" within the meaning of Section 546(e), either of which would render them qualified transactions under Section 546(e); and (ii) they were made by, to, and for the benefit of "covered entities", including a stockbroker and financial institutions, any of which would suffice under Section 546(e). Further, the Trustee has not alleged that C.A. Suisse had actual knowledge – let alone *any* knowledge – of the fraud committed by Bernard L. Madoff ("Madoff") through BLMIS. By failing to include any allegations of knowledge or bad faith, the Trustee has eliminated the only possible safe harbor exception, rendering irrelevant decisions treating allegations of an alleged subsequent transferee's actual knowledge as

2

disqualifying it from invoking Section 546(e).  The Trustee, moreover, has failed to plead that

the alleged initial transfers were made with the intent required by Section 548(a)(1)(A) of the

Code, so even claims based on alleged initial transfers within that provision's two-year

lookback period must be dismissed.

*Third*, the Complaint fails to establish personal jurisdiction over C.A. Suisse.  The

Trustee has failed to establish specific jurisdiction over the Defendant – a Swiss *société*

*anonyme* with no connections to New York.  Moreover, the Trustee has failed to allege

minimum contacts sufficient to prove specific jurisdiction over C.A. Suisse, where the

contacts occurred entirely abroad.  The Trustee would have this court disavow precedent

holding that a third party's connections to the forum state, such as Sentry's, cannot be used to

establish personal jurisdiction over a foreign defendant, such as C.A. Suisse.  None of the

Complaint's other vague and speculative allegations support jurisdiction over C.A. Suisse for

the Trustee's claim.

**STATEMENT OF FACTS**

### A. Background

The Trustee's complaint, as amended, outlines that from the 1990s through BLMIS's

collapse in December 2008, Fairfield Sentry Limited ("Sentry") sold shares directly to foreign

investors.  *See* Complaint (the "Trustee's Fairfield Complaint"), *Picard v. Fairfield Sentry Ltd.,*

Adv. Pro. 12-01022 (Bankr. S.D.N.Y. Jan. 12, 2012) (the "Fairfield Action"), ECF No. 1 ¶¶ 35,

33 (Vicens Decl. Ex. 1).[2]  Fairfield Sigma was a "feeder fund" for Sentry that also accepted

---

[2] These facts are taken from allegations in the Complaint – which Defendant neither admits nor concedes – and
documents incorporated by reference therein, as well as the Trustee's pleadings in other Madoff proceedings and
other items of which the Court may take judicial notice.  *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec.
LLC* (*Picard v. Fairfield Inv. Fund Ltd.*), No. 08-01789 (CGM), 2021 WL 3477479, at *2 (Bankr. S.D.N.Y. Aug. 6,
2021)) (on motion under Rule 12(b)(6), "'courts must consider . . . matters of which a court may take judicial
notice,'" quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)).  Here, the Court may take
judicial notice of the Trustee's pleadings in other adversary proceedings, and C.A. Suisse respectfully requests that it

3

investments and then invested those funds in Sentry. Sentry in turn, invested with BLMIS. *See Id.* ¶ 2. This action is one of more than six dozen proceedings in which the Trustee seeks to recover from the defendants' alleged payments they received when they redeemed shares in the Fairfield Funds; here, the Trustee seeks to recover approximately $16 million that C.A. Suisse purportedly received in redemptions from Sentry and Sigma. *Id.* ¶ 74.

The Complaint alleges that all transfers from BLMIS to Sentry and Sigma made within six years before the "Filing Date,"[3] referred to collectively as the "Fairfield Initial Transfers," "are avoidable and recoverable under sections 544, 550, and 551 of the Bankruptcy Code, §§ 273–279 of the NYDCL, and applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3)," as to the "Fairfield Six Year Initial Transfers," *id.* ¶¶ 58, 61, or under section 548 of the Bankruptcy Code as to the "Fairfield Sentry Two Year Initial Transfers," *id.* ¶ 59, and that under section 550, the transferred property is recoverable from C.A. Suisse as a "mediate or intermediate" transferee. *Id.* ¶¶ 71, 76.

To support that wholly conclusory allegation of avoidability, the Complaint alleges only that the Trustee "filed an adversary proceeding against Fairfield Sentry, Fairfield Sigma, and other defendants in Bankruptcy Court under the caption *Picard v. Fairfield Sentry Ltd., et al.*, Adv. Proc. No. 09-01239 (BRL), in which, in part, the Trustee sought to avoid and recover the initial transfers of Customer Property from BLMIS to Fairfield Sentry in the amount of approximately $3 billion (the 'Fairfield Amended Complaint')" and "incorporates by reference

---

do so. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

[3] Capitalized terms in this Memorandum that are defined in the Complaint are used with the same meaning as in the Complaint.

the allegations contained in the Fairfield Amended Complaint as if fully set forth herein." *Id*.

¶ 57.

### B. The Trustee's Fairfield Action

On or about May 18, 2009, the Trustee commenced an action against the Fairfield Funds

and others seeking the avoidance and recovery of over $3.5 billion of initial transfers they

received from BLMIS.  Trustee's Twenty-Sixth Interim Report for the Period April 1, 2021

through September 30, 2021, *In re Bernard L. Madoff Inv. Secs. LLC,* Adv. Pro. No. 08-01789

(Bankr. S.D.N.Y. Oct. 29, 2021), ECF No. 20821 ¶ 167 (Vicens Decl. Ex. 3).  The Trustee

settled his action against Sentry and Sigma, as well as some of the other Fairfield funds over 10

years ago.  Settlement Agreement, *Picard v. Fairfield Sentry Ltd.*, Adv. Proc. No. 09-01239-cgm

(Bankr. S.D.N.Y. May 9, 2011), ECF No. 69-2 (the "Fairfield Settlement Agreement") (Vicens

Decl. Ex. 4).  Among other things, the Fairfield Settlement Agreement gave the Trustee full

access to all of Sentry's and Sigma's records: "[T]he Trustee and the Liquidators each agree to

provide reasonable access to the other's documents, data, and other information relating to, or

beneficial to the pursuit of, the Sharing Claims." *Id.* ¶ 14.  The Fairfield Settlement Agreement

also provided for full cooperation between the Trustee and the Fairfield Liquidators in pursuing

clawback claims against the same alleged subsequent transferees.  It requires "regular

communication[s] about the commencement of any Subsequent Transferee Claims," *id.* ¶ 7,

sharing of recoveries on any such claims, *id.* ¶¶ 7, 8, 9, and for a joint interest agreement and

"cooperation and assistance to the other Party in connection with the prosecution of the Sharing

Claims," as well as consultation regarding settlements, *id.* ¶ 14.  Thus, the Trustee has had access

to all of Fairfield's documents along with its required full cooperation (including, presumably,

the documents pursuant to which the Trustee brought many of the Fairfield Redeemer Actions,

including this one filed in 2012) for over ten years, since 2011.

5

## C. The Fairfield Liquidator's Actions

Shortly after Madoff's fraud was revealed, the Fairfield Funds entered liquidation proceedings before the Eastern Caribbean Supreme Court in the High Court of Justice of the Virgin Islands.  Fairfield Settlement Agreement at 2–3 (Vicens Decl. Ex. 4).  The Fairfield Liquidators commenced actions in the British Virgin Islands ("BVI") against a number of the Fairfield Funds' alleged investors, seeking repayment of redemptions payments made by the Funds to these investors prior to BLMIS's collapse.  *See* Exhibit G to the Fairfield Settlement Agreement, Fairfield Action, ECF No. 69-9, at 6–7 (Vicens Decl. Ex. 5); *see also Fairfield Sentry Ltd. (In Liquidation) v. Migani and others*, [2014] UKPC 9 ("*Migani*") (Vicens Decl Ex. 6).  The Fairfield Liquidators discontinued their claims in the BVI litigation following a final appellate decision in April 2014 issued by the U.K. Privy council in favor of defendants.  *See Migani* (Vicens Decl. Ex. 6).

Starting in or about April 2010, the Fairfield Liquidators had separately commenced actions in New York against hundreds of the Funds' shareholders, including many that had been sued unsuccessfully in the BVI.  *See* Exhibit G to the Fairfield Settlement Agreement at 1–5 (Vicens Decl. Ex. 5) (listing 209 actions seeking to recover redemption payments against Sentry investors brought by the Fairfield Liquidators and pending as of May 9, 2011).  C.A. Suisse is also named as a defendant in one of these actions.  Third Amended Complaint, *Fairfield Sentry Ltd. (In Liquidation), et al. v. CA Indosuez (Switzerland) SA*, Adv. Pro. No. 11-01244-cgm (Bankr. S.D.N.Y. Aug. 26, 2019), ECF No. 70 (Vicens Decl. Ex. 7).  In their agreement with the Trustee, the Fairfield Liquidators agreed to share recoveries on their respective "clawback" claims, including those brought against Credit Agricole Miami; the Fairfield Liquidators must pay the Trustee 15 percent of their net recoveries from all such claims until the Trustee has been paid $1.924 billion.  *See* Fairfield Settlement Agreement at ¶¶ 4, 14 (Vicens Decl. Ex. 4).

6

Pursuant to a series of decisions by this Court (which are currently subject to appeal), the

Fairfield Liquidators' claims against C.A. Suisse have been dismissed.  *In re Fairfield Sentry*

*Ltd.*, 596 B.R. 275, at 282, 305, 316 (Bankr. S.D.N.Y. 2018) ("*Fairfield II*"); *In re Fairfield*

*Sentry Ltd.*, No. 10-13164 (SMB), 2020 WL 7345988, at 22–35 (Bankr. S.D.N.Y. Dec. 14, 2020)

("*Fairfield III*").

### D.  The Trustee's Complaints in the Other Fairfield Subsequent Transfer Actions

In short, the Trustee is trying to recover roughly *$5 billion* in alleged "subsequent

transfers" that flowed out of Sentry, even though he simultaneously alleges that BLMIS made

initial transfers of only *$3 billion* that flowed in to the Funds.  Besides the claims in this Action

against C.A. Suisse, the Trustee has also filed approximately six dozen actions against other

Sentry, Sigma, and Lambda investors.  In those actions, the Trustee seeks to recover, in the

aggregate, alleged subsequent transfers of BLMIS customer property totaling approximately $4

billion from defendants who allegedly received redemption payments.  *See* Exhibit G to the

Fairfield Settlement Agreement at 1–5 (Vicens Decl. Ex. 5) (listing the Fairfield Liquidator's

actions pending in this Court as of May 9, 2011).  And on top of that $4 billion in supposed

"subsequent transfers," the Trustee also seeks to recover another approximately $1 billion in

amounts paid by Sentry to the FGG Defendants.  *See* Fairfield Action, ECF Nos. 286-8, 286-10,

286-12, 286-13, 286-14, 286-21 (Vicens Decl. Ex. 9).  This outsized recovery by the Trustee is

not merely implausible; it is mathematically impossible.

### E.  The Trustee's Complaint against C.A. Suisse

i.    The Trustee's Claims

The Trustee brings this proceeding pursuant to his statutory authority under the Securities

Investor Protection Act ("SIPA").  Compl. ¶ 4 (Vicens Decl. Ex. 1).  The Complaint alleges that

C.A. Suisse is a *société anonyme* based in Geneva, Switzerland that "provided private banking

services." *Id*. ¶¶ 3, 22.  According to the Complaint, C.A. Suisse received from Sentry and

Sigma $16,251,791 in redemptions, which the Trustee attempts to characterize as supposed

"subsequent transfers" of BLMIS "customer property." *Id*. ¶¶ 2, 74.  To do this, the Trustee

invokes Section 550 of the Bankruptcy Code and Section 278 of the New York Debtor &

Creditor Law ("NYDCL").  *Id*. ¶¶ 63, 65.  Yet, the Trustee fails to identify in detail any of the

specific portion of the Initial Transfers that were allegedly part of the transfers to C.A. Suisse, or

plead any specific facts indicating that *any* portion of the Subsequent Transfers originated from

BLMIS.  *See id*. ¶ 63 ("A portion of the Fairfield Sentry Initial Transfers was subsequently

transferred either directly or indirectly to, or for the benefit of [C.A. Suisse].").  Further, there are

*no* allegations that C.A. Suisse had any knowledge of the Madoff Ponzi Scheme.  *See Id*. ¶¶ 24–

34.

These deficient and vague generalities persist despite the Trustee's investigation, which

has been "ongoing" for over a decade with full access to the records of the Fairfield Funds.  *See*

Compl. ¶ 66; Fairfield Settlement Agreement ¶ 14 (Vicens Decl. Ex. 4).  Despite numerous

opportunities to do so, the Trustee tellingly has never attempted to amend its allegations against

C.A. Suisse to assert allegations of bad faith, knowledge of the underlying fraud or any, in fact,

any involvement in the transfers at issue beyond an administrative role.

ii.    The Trustee's Insufficient Jurisdictional Allegations

The Trustee alleges three primary bases of personal jurisdiction over C.A. Suisse.  *First*,

C.A. Suisse "purposely availed [itself] of the laws and protections of the United States and the

state of New York by . . . knowingly directing funds to be invested with New York-based

BLMIS through Feeder Funds."  Compl. ¶ 6.  *Second*, C.A. Suisse "entered into a subscription

agreement with Fairfield Sentry under which it submitted to New York jurisdiction [.]"  *Id*. ¶ 7.

*Third*, C.A. Suisse "sent a copy of the subscription agreement to FGG's [Fairfield Greenwich

8

Group's] New York city office, and wired funds to Fairfield Sentry through a bank in New

York." *Id*. ¶ 7.  As set forth below, none of these bases establish this Court's personal

jurisdiction over C.A. Suisse because none are relevant to the supposed subsequent transfers that

the Trustee seeks to recover, as the supposed subsequent transfers were received in foreign

accounts and have no connection to the U.S.

## ARGUMENT

## I.    THE COMPLAINT FAILS TO PLEAD ADEQUATELY THAT C.A. SUISSE RECEIVED CUSTOMER PROPERTY

### A.    Standard on Motion to Dismiss

The Court must dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) "when the

allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 558 (2007).  Moreover, the plaintiff's allegations "must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A plausible claim

pleads facts "that allow[] . . . the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

While the Court must accept well-pleaded factual allegations as true, it need not accept

assertions that are unsupported by factual allegations, *id.* at 678–79, nor "legal conclusion couched

as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  It also need not accept as

true "conflicting pleadings that make no sense, or that would render a claim incoherent, or that are

contradicted either by statements in the complaint itself or by documents upon which its pleadings

rely." *In re Livent, Inc. Noteholders Sec. Litig. (Rieger v. Drabinsky)*, 151 F. Supp. 2d 371, 405

(S.D.N.Y. 2001).

9

B.  <u>The Trustee Fails to Plead the Avoidability of the Initial Transfers by Improperly
Incorporating Another Complaint</u>

To recover from a mediate (subsequent) transferee, the Trustee must plead and prove,
among other things, an initial transfer that is avoided or at least avoidable.  11 U.S.C. § 550(a);
*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2013 U.S. Dist. LEXIS 56042, at *40–
41 (S.D.N.Y. Apr. 15, 2013).  Paragraphs 58, 59, and 60 of the Complaint assert in conclusory
fashion that the Fairfield Initial Transfers were avoidable—that BLMIS was a Ponzi scheme,
Compl. ¶¶ 1, 16–18, 24–33, BLMIS made transfers to Sentry*, id.* ¶¶ 58–62, and the Sentry Initial
Transfers are avoidable, *id.*—without any supporting factual allegations that would meet the
pleading requirements of *Twombly* and *Iqbal*.  Rule 10(c) of the Federal Rules of Civil Procedure
provides, "[a] statement in a pleading may be adopted by reference elsewhere in the same
pleading or in any other pleading."

However, the authority to incorporate by reference is not unlimited.  Courts have
generally held that a pleading in one action may not adopt by reference the pleadings in a
different action.  *See Texas Water Supply Corp. v. R.F.C.*, 204 F.2d 190, 196 (5th Cir. 1953);
*NCUA Bd. v. Morgan Stanley & Co.*, 2014 U.S. Dist. LEXIS 58751 (S.D.N.Y. Apr. 28, 2014);
*see also Davis v. Bifani*, No. 07CV00122MEHBNB, 2007 WL 1216518 at *1 (D. Colo. Apr. 24,
2007) (noting it is improper "to incorporate by reference wholesale the allegations in a complaint
in a completely separate action, even if that action is between the same parties," but striking the
incorporation by reference for violation of Rule 8(a), rather than Rule 10(c)); *Muth v. Dechert,
Price & Rhoads*, 391 F. Supp. 935, 938 (E.D. Pa. 1975) ("when determining the sufficiency of
the Third-Party Complaints, we can look only to the pleadings in this case").

In this case, the attempt to incorporate by reference all 798 paragraphs of a 217-page
complaint (which itself attaches and refers to 111 exhibits) into what would otherwise be a 21-

10

page complaint against C.A. Suisse, improperly incorporates by reference a pleading from another action; improperly incorporates an entire pleading; and improperly fails to specify the relevant allegations that are being incorporated.  And worse, the Complaint incorporates a pleading that has been superseded by a further amended complaint which removes numerous allegations and claims and renders the incorporated earlier pleading inoperative.

For all these reasons, the Court should reject the Trustee's attempt to incorporate the Amended Fairfield Complaint by reference.

C.  The Trustee's Own Pleadings Establish the Implausibility of His Conclusory Allegations

In order to assert a claim against an alleged subsequent transferee under SIPA, the Trustee is required to allege that each individual redemption payment at issue constituted a subsequent transfer of an initial transfer of BLMIS Customer Property that was fraudulently transferred from BLMIS to Fairfield Sentry.  *See* 15 U.S.C. § 78fff-2(c)(3) ("[T]he trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property if and to the extent that such transfer is voidable or void under the provisions of title 11.").  The purpose of fraudulent transfer law is not to recapture every transfer made by a debtor, but "to prevent the debtor from secreting away his assets, typically for his own benefit, such that they are beyond the reach of his creditors."  *See* Amy J. Sepinwall, *Righting Others' Wrongs: A Critical Look at Clawbacks in the Madoff-Type Ponzi Schemes and Other Frauds*, 78 BROOK. L. REV. 1, 23–24 (2012).  To plead a subsequent transfer under 11 U.S.C. § 550, the Trustee "is not required to provide a 'dollar-for-dollar accounting' of the exact funds at issue. Barebones allegations that the funds at issue were transferred to the Subsequent Transferees, however, without more detail, are insufficient."  *In re Madoff (Picard v. Shapiro)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (*"Shapiro"*).

11

In *Shapiro*, this Court found lacking the same style of barebones pleading present in the Complaint. The *Shapiro* court found that the operative complaint therein "lack[ed] the vital statistics necessary to support a subsequent transfer claim" and failed to "tie any initial transfer to any subsequent transfer or Subsequent Transferee." *Id.* "Moreover, it [did] not plausibly imply that the initial transferees even made subsequent transfers to the Subsequent Transferees as opposed to third parties, or that they made the subsequent transfers rather than simply keep the initial transfers for themselves." *Id.*

The Trustee's barebones allegations against C.A. Suisse are not cured by the voluminous exhibits attached to the Complaint showing: (i) in 75 pages a list of thousands of transactions in Fairfield Sentry's BLMIS accounts, Compl. Exs. H, I; and (ii) exhibits listing alleged subsequent transfers to C.A. Suisse, Compl. Exs. J, L. The Complaint fails to specifically reference any line item on Exhibits H or I or even attempt to identify which line items constitute purported Initial Transfers of Customer Property subsequently transferred to Defendant.[4] Although the Trustee need not provide a "dollar-for-dollar accounting," the Complaint should be dismissed because it "does not tie any initial transfer to any subsequent transfer or [Defendant]. Moreover, it does not plausibly imply that [Fairfield Sentry] even made subsequent transfers to the [Defendant] as opposed to third parties, or that they made the subsequent transfers rather than simply keep the initial transfers for themselves." *Shapiro*, 542 B.R. at 119.

### D.  The Trustee Has Failed to Carry His Pleading Burden

It is the Trustee who has possession of the records necessary to determine which, if any,

---

[4] Indeed, despite characterizing Exhibits H and I to the Complaint as "setting forth" the "Fairfield Sentry Initial Transfers" (defined as transfers of Customer Property from BLMIS to Fairfield Sentry within the six years preceding the Filing Date, *see* Compl. ¶ 61), the exhibit contains myriad line items that are self-evidently not transfers of Customer Property from BLMIS to Fairfield Sentry, and line items dating as far back as 1990. *See generally* Compl. Exs. H and I.

of the redemption payments to Defendant included any Customer Property, and allege the
"necessary vital statistics" required to sustain his pleading burden.  As discussed *supra* at 5, the
Trustee has had access for over a decade, since he settled with the Liquidators of Fairfield Sentry
in 2011, to the documents that gave him the ability to amend his complaint to support the
unfounded allegations that Defendant received subsequent transfers of BLMIS Customer
Property.  He has failed to do so here, although he has moved to amend against other defendants
in numerous actions.

This renders it impossible for Defendant to identify precisely what BLMIS Customer
Property they allegedly received or to discern whether the Trustee's allegations have merit.  As
noted in *Shapiro*, the Trustee cannot maintain a cause of action where the details of the funds
contain merely barebones allegations.  *Shapiro*, 542 B.R. at 119.  The Complaint fails to provide
"fair notice of what the . . . claim is and the grounds upon which it rests," to enable Defendant to
properly respond to the complaint, effectively take discovery, or prepare for trial and should
therefore be dismissed.  *See Twombly*, 550 U.S. at 555 (internal citation omitted).

> ### E. It Is Implausible that Alleged Initial Transfers to Fairfield Sentry of $3 Billion Resulted in Alleged Subsequent Transfers of $5 Billion

Instead of alleging "enough facts to state a claim to relief that is plausible on its face,"
*Twombly*, 550 U.S. at 570, the Trustee has filed pleadings that render his subsequent transfer
claim implausible under basic principles of arithmetic: BLMIS's alleged initial transfers of
*approximately $3 billion to Fairfield Sentry* cannot have produced *over $5 billion* in subsequent
transfers from Fairfield Sentry, as the Trustee contends—i.e., the sum of: (a) $3.238 billion paid
by Fairfield Sentry directly to defendants in the Fairfield Subsequent Transfer Actions; (b) $824
million in alleged Fairfield Sentry payments to Fairfield Sigma and Fairfield Lambda; and (c)
$1.139 billion which the Trustee seeks from FGG Defendants.  *See supra* at 7–8.

13

Further adding to the implausibility of the Complaint, the Trustee's pleadings hint at, but fail to forthrightly acknowledge, the obvious—that transfers from BLMIS were not the exclusive source of funds that Fairfield Sentry could use to satisfy redemption requests and make other payments.  In a related proceeding in this Court, Fairfield Sentry confirmed that it paid redeeming investors with funds that originated from subscribing investors, not from BLMIS.  *See Fairfield Sentry Ltd. v. Citco Global Custody NV*, Adv. Pro. 19-01122-cgm (Bankr. S.D.N.Y. Nov. 26, 2019), ECF No. 19, ¶ 63 (Vicens Decl. Ex. 10), ("From time to time, to make Redemption Payments, Sentry (and Sigma and Lambda through Sentry) made withdrawals from Sentry's BLMIS accounts (or utilized subscription monies of other investors on hand that were directed for investment in BLMIS).").  The Trustee has failed to recognize this fact and avoided pleading how (and to what extent) any alleged subsequent transfers are linked to funds originating with BLMIS, rather than from other sources.  This is further reason to dismiss the Complaint.

> F.  The Trustee's Complaint Seeks to Recover Transfers Made by Sentry at Times When the Trustee Alleges There was no Money Left From BLMIS

The Trustee's Complaint also fails because he has not plausibly made the requisite link between alleged initial and subsequent transfers.  Exhibits to the Complaint confirm that in many instances, he seeks to recover a number of alleged subsequent transfers made to C.A. Suisse ten or more months—as long as nearly a year and a half—after the most recent alleged initial transfer from BLMIS to Fairfield Sentry.  *See* Compl. Exs. H–L.

The time elapsed between alleged initial and subsequent transfers is plainly relevant to the plausibility of the Trustee's "customer property" allegations.  In *Merkin*, this Court denied a motion to dismiss because the alleged subsequent transfers "took place *contemporaneously or shortly after an initial transfer* identified [in the complaint], *implying linkage*."  *In re Bernard L.*

*Madoff Inv. Sec. LLC (Picard v. Merkin)*, 515 B.R. 117, 150 (Bankr. S.D.N.Y. 2014) (*"Merkin"*)

(emphases added).  In *Merkin*, the alleged initial and subsequent transfers occurred between one

and 22 days of each other, and "[g]iven the short amount of time between the first and second

transfers, it [was] reasonable to infer in considering a motion to dismiss that some portion of the

first transfer formed part of the second transfer."  *Id.* at 151.  But the converse is equally true:

given the nature of Fairfield Sentry's business, which involved receiving funds from many

subscribing shareholders and paying funds to many redeeming shareholders, gaps of many

months between alleged initial and subsequent transfers strongly imply a *lack of linkage* that

merits dismissal.

That is particularly so in light of all the information the Trustee has obtained from the

Fairfield Liquidators, enabling him to determine, with respect to any transfer, whether there is a

basis for plausibly alleging the requisite linkage.  *See* Consent Judgement, *Picard v. Fairfield

Sentry Ltd.*, Adv. Proc. No. 09-01239-cgm (Bankr. S.D.N.Y. July 13, 2011), ECF No. 109

(Vicens Decl. Ex. 11).  As a result, the situation here is the polar opposite of *Merkin*, where the

Trustee was faced with a thicket of alleged subsequent transfers between and among defendants

who "commingled their assets, transferring their funds into and out of each other's accounts,"

and the facts were in the exclusive possession of the defendants, whose records were unavailable

to the Trustee when he pleaded his claims.  515 B.R. 117, at 151.  In *Merkin*, that scenario posed

"difficulties" for the Trustee because "[t]he subsequent transfer claim must ultimately be proved

through the books and records of the defendants," in light of "complicated" inter-defendant

transactions "over lengthy periods of time."  *Id.*  In recognition of the Trustee's case-specific

"handicap," the *Merkin* Court was willing to afford the Trustee "'greater latitude'" in "pleading."

*Id.*; *see also In re Bernard L. Madoff Inv. Secs. LLC (Picard v. Estate of Chais)*, 445 B.R. 206,

15

236 (Bankr. S.D.N.Y. 2011) ("Whether [the defendants] additionally received Subsequent

Transfers of BLMIS funds from one another is *a question to which they, and they alone, have the*

*requisite information to respond.*") (emphasis added).

Here, by stark contrast, there were no inter-defendant transfers, and the proof relevant to

the Trustee's subsequent transfer claims is to be found not in "the books and records of the

defendants," but exclusively in the "books and records" of BLMIS and the Fairfield Funds. The

Trustee has had access to all of that data for over a decade pursuant to his 2011 Fairfield

Settlement Agreement. Yet despite this surfeit of time and information, the Trustee has failed to

plead *any* facts plausibly connecting the alleged initial and subsequent transfers, much less to

explain the gap in time between those alleged transfers.

Finally, the implausibility of the Trustee's subsequent transferee claims is confirmed not

just by the length of time that had passed between the transfers but also by the fact that a number

of alleged transfers to C.A. Suisse occurred at times when, according to the Trustee's own

pleadings, Fairfield Sentry held no BLMIS-sourced funds. Because the aggregate amount

Fairfield Sentry had paid to other redeeming shareholders exceeded what it had by then received

from BLMIS, it is impossible that redemptions could have been based on customer property. For

example, the Trustee alleges that from May 9, 2003 through September 30, 2003, Fairfield

Sentry transferred more than $183 million to redeeming shareholders, including Fairfield Sigma

and Fairfield Lambda. *See* Fairfield Action, ECF Nos. 286-5, 286-6 (Vicens Decl. Ex. 8). As a

result, no BLMIS customer property was held by Fairfield Sentry from October 1, 2003, until

April 1, 2005. The Trustee seeks to recover two transfers received in that period by C.A. Suisse

for redeeming their Fairfield Sentry shares, but these could not possibly have included BLMIS

customer property. These examples further showcase the Trustee's failure to plead his claims

with any particularity or care and call into question the plausibility of any of his claims.

## II. RECOVERY OF ALLEGED SUBSEQUENT TRANSFERS OF INITIAL TRANSFERS IS BARRED BY THE SAFE HARBOR OF 11 U.S.C. § 546(E)

In addition to the reasons above, the Trustee's claims against C.A. Suisse also are barred by Section 546(e) of the Bankruptcy Code, which provides a Safe Harbor exception to certain institutions. Section 550(a) of the Bankruptcy Code provides that, to the extent a transfer is avoided under certain sections of the Code, the Trustee may recover the property transferred, or its value, from the initial transferee or any subsequent transferee. Nevertheless, Section 546(e) of the Bankruptcy Code provides a safe harbor and bars the Trustee from avoiding a transfer if that transfer (1) was made "by or to (or for the benefit of)" a covered entity, such as a stockbroker or financial institution; and (2) was either a settlement payment or a transfer in connection with a securities contract. *See* 11 U.S.C. § 546(e). In discussing Section 546(e), the Second Circuit has recognized that "in enacting the Bankruptcy Code, Congress struck careful balances between the need for an equitable result for the debtor and its creditors, and the need for finality." *In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Revocable Trust)*, 773 F.3d 411, 423 (2d Cir. 2014) ("*Fishman*") ("[B]y enacting § 546(e), Congress provided that, for a very broad range of securities-related transfers, the interest in finality is sufficiently important that they cannot be avoided by a bankruptcy trustee at all, except as actual fraudulent transfers under § 548(a)(1)(A) [and courts] are obliged to respect the balance Congress struck among these complex competing considerations."). The safe harbor of Section 546(e) is available as a defense to alleged subsequent transferees, even where, as here, the alleged initial transferee agreed to a consent judgment. *See SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Fairfield Inv. Fund Ltd.)*, No. 08-01789 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021) (Morris, C.J.) ("Where the initial transferee fails to raise a § 546(e) defense against the Trustee's

avoidance of certain transfers, . . . the subsequent transferee is nonetheless entitled to raise a §

546(e) defense against recovery of those funds.").

In recent decisions, this Court held that the safe harbor exception codified at Section

546(e) is inapplicable to subsequent transferees, other than by assertion of an initial transferee's

Section 546(e) defense. *See SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Banca Carige*

*S.P.A.)*, No. 08-01789 (CGM), 2022 WL 2387522, at *6 (Bankr. S.D.N.Y. June 30, 2022)

("*Banca Carige*"); *SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Banque SYZ & Co. SA)*,

No. 08-01789, 2022 WL 2135019, at *12 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque SYZ*");

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Multi-Strategy Fund Ltd.)*, No. 09-01789

(CGM), 2022 WL 2137073, at *11 (Bankr. S.D.N.Y. June 13, 2022) ("*Multi-Strategy*").  C.A.

Suisse respectfully submits that this Court's analysis misinterprets the district court's decisions

on the applicability of the Section 546(e) safe harbor to subsequent transferees, including in

actions brought by this Trustee. *See e.g.*, *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC

115 (JSR), 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*") ("[E]ven if the initial

(or mediate) transferee fails to raise a Section 546(e) defense against the Trustee's avoidance of

certain transfers . . . the subsequent transferee is nonetheless entitled to raise a Section 546(e)

defense against recovery of those funds.").  In *Cohmad*, Judge Rakoff noted that the "one caveat"

to the subsequent transferee's entitlement is where the subsequent transferee itself has "actual

knowledge of Madoff Securities' fraud," which the Trustee has not alleged here. *Id.*  Thus, the

inquiry centers on the subsequent transferee's knowledge, rather than the initial transferee's.

Nowhere did Judge Rakoff in *Cohmad*—or in any of the later decisions applying the safe harbor

to subsequent transfer claims—ever suggest that an innocent subsequent transferee like C.A.

Suisse would be deprived of the safe harbor defense merely because the initial transferee

18

allegedly knew of Madoff's fraud. *Id.*

Rather, Section 546(e) creates a clear entitlement to a safe harbor if the requirements of the stature are met. The only exception is Section 548(a)(1)(A), which is inapplicable to most of the transfers here. *See In re Actrade Fin. Techs. Ltd. (Silverman v. Actrade Cap., Inc.*), 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005) (under Section 548(a)(1)(A) "it is the intent of the transferor and not the transferee that is relevant") (citations omitted). Where the Code creates an exemption or safe harbor and specifies exceptions, a court is not free to create additional exceptions, even when doing so is motivated by alleged wrongdoing. *See Law v. Siegel*, 571 U.S. 415, 424 (2014) ("The Code's meticulous—not to say mind-numbingly detailed—enumeration of exemptions and exceptions to those exemptions confirms that courts are not authorized to create additional exceptions.").

This is consistent with the purpose of the law. As articulated by Judge Rakoff in *Cohmad*, the purpose of Section 546(e)'s safe harbor is to minimize securities market disruptions by limiting bankruptcy court proceedings and prioritizing finality of settlements. *Cohmad*, 2013 WL 1609154, at *4; *see also In re Manhattan Inv. Fund Ltd. (Gredd v. Bear, Stearns Secs. Corp.)*, 310 B.R. 500, 513 (Bankr. S.D.N.Y. 2002) ("The legislative intent behind section 546(e) was 'to minimize the displacement caused in the commodities and securities markets in the event of a major bankruptcy affecting those industries.'") (quoting H.Rep. No. 420, 97th Cong., 2d Sess. 1 (1982), U.S. Code Cong. & Admin. News 1982, 583, 583)).

As set forth below, both elements of a defense under Section 546(e) are established as a matter of law. Accordingly, any claim by the Trustee against C.A. Suisse as a subsequent transferee must be dismissed. *See Fishman*, 773 F.3d at 417 (affirming dismissal of relevant claims under Rule 12(b)(6) because they were shielded by 11 U.S.C. § 546(e)).

19

A. <u>The Alleged Initial Transfers Were Made by, to, or for the Benefit of a Covered Entity</u>

            *i.    The Alleged Initial Transfers Were Made by a Stockbroker*

The definition of "stockbroker" includes an entity that is "engaged in the business of effecting transactions in securities for the account of others."  11 U.S.C. § 101(53A)(B)(i). BLMIS squarely falls within this definition.  *See, e.g.*, *Cohmad*, 2013 WL 1609154, at *2 (reaffirming prior finding that BLMIS "qualified as a stockbroker either 'by virtue of the trading conducted by its market making and proprietary trading divisions,' or because Madoff Securities' customers, 'having every reason to believe that Madoff Securities was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded the customers of stockbrokers'") (citing *SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Greiff)*, 476 B.R. 715, 719-20 (S.D.N.Y. 2012); *Picard v. Katz*, 462 B.R. 447 (S.D.N.Y. 2011)).  The Trustee long ago abandoned any dispute on this point.  *See Fishman*, 773 F.3d at 417 ("It is not disputed that BLMIS was a 'stockbroker' for the purposes of § 546(e).").  While this alone is sufficient to meet the "covered entity" element of the safe harbor, there are two additional pathways for the Court to reach the same outcome.

            *ii.    The Alleged Initial Transfers Were Made to a Financial Institution*

The definition of "financial institution" is broad, including both "an entity that is a commercial or savings bank" *and* a customer of such institution where the institution "is acting as agent or custodian for a customer (whether or not a "customer", as defined in section 741) in connection with a securities contract."  11 U.S.C. § 101(22)(A).  Fairfield Sentry squarely falls within this definition.  *See Fairfield III*, 2020 WL 7345988, at *4, *6–7 & n.11 (finding that Fairfield Sentry, among other entities, was a financial institution because it was a customer of Citco Bank because it held accounts with Citco Bank Nederland N.V. Dublin Branch, which

acted as the Funds' agent with respect to the redemptions).  The Court's holding in *Fairfield III*

is binding on the Trustee for the same reasons as this Court's holding in *Fairfield I*.  *In re*

*Fairfield Sentry Ltd.*, No. 10-13164 (SMB), 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018)

("*Fairfield I*").  As with *Fairfield I*, because the question of whether Fairfield Sentry was a

financial institution under the meaning of § 546(e) was "actually litigated" and "essential to the

prior judgment" of *Fairfield III*, the Court's conclusion thereabout has preclusive effect.  *See,*

*e.g., N.H. v. Maine*, 532 U.S. 742, 748–49 (2001).

> iii.    *The Alleged Initial Transfers Were Allegedly Made for the Benefit of a*
> *Financial Institution, C.A. Suisse*

The alleged subsequent transferee, C.A. Suisse, is also a financial institution.  The

Complaint alleges that C.A. Suisse is a *société anonyme* maintaining an address in Geneva,

Switzerland that "provided private banking services."  *See* Compl. ¶¶ 3, 22.  These allegations

bring C.A. Suisse within the definition of "financial institution" under the Bankruptcy Code.  *See*

11 U.S.C. § 101(22)(A) (including in the definition of a "commercial or savings bank"); *see also*

*Cohmad*, 2013 WL 1609154, at *8 ("Thus, where the Trustee alleges that a defendant is 'a

banking institution' . . . the defendant may be deemed to constitute a protected 'financial

institution' or 'financial participant' for the purposes of Section 546(e) on the face of the

complaint.").

The Complaint alleges specifically that "[a] portion of the Fairfield Sentry Initial

Transfers was subsequently transferred either directly or indirectly to, or *for the benefit of*" the

Defendant.  *See* Compl. ¶¶ 63, 65 (emphasis added).  Though that allegation fails to meet the

plausibility threshold to survive this motion, it remains binding on the Trustee.  *See Off. Comm.*

*of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d

Cir. 2003) (allegations in complaint are "'judicial admissions'" by which party is "bound

21

throughout the course of the proceeding").  The Trustee has therefore pleaded that the alleged

initial transfers were made for the benefit of Defendant, which was a "financial institution."

> B.  The Alleged Initial Transfers Were Settlement Payments and Made "in
>     Connection With" a Securities Contract

In analogous circumstances, the Second Circuit has concluded that Section 546(e) shields

transfers from BLMIS to its account holders from the Trustee's avoidance powers.  *See Fishman*,

773 F.3d at 415.  The *Fishman* court concluded that the documents governing BLMIS

customers' accounts constituted securities contracts, and that the payments BLMIS made to

those customers were made "in connection with" those contracts, and also constituted

"settlement payments," *id*. at 418–23—either of which findings would have sufficed to invoke

the safe harbor.  The court rejected the Trustee's argument that the safe harbor did not apply

because Madoff did not actually carry out the promised securities transactions.  *Id*. at 419–20.

The same reasoning applies to the transfers that the Trustee alleges BLMIS made to Sentry "in

order to pay" investors' redemption requests.  Those alleged transfers were clearly "in

connection with" both (a) the securities contracts Sentry had entered into with BLMIS, *see*

*Fishman*, 773 F.3d at 418–23, and (b) according to the Trustee (although lacking in plausible

support), the separate securities contract under which C.A. Suisse made its redemptions, *see*

Point III.A.3 above, namely, Sentry's Articles of Association (Vicens Decl. Ex. 12).  *See Migani*

¶ 10 (Vicens Decl. Ex. 6) ("the terms of the subscriber's membership of the Fund, which govern

the redemption of its shares . . . are to be found in the Articles of Association of the Fund").[5]

The definition of "securities contract" includes "a contract for the purchase, sale, or loan

---

[5] This Court may consider the Articles of Association on this motion because, as the basis for the challenged redemption, they are integral to the Complaint.  *See In re Trib. Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 176 (2d Cir. 2021) ("*Tribune II*") ("Here, the documents the district court relied on were the contracts that set forth the relationship between Tribune and CTC, and they were therefore integral to the complaint.").

of a security," 11 U.S.C. § 741(7)(A)(i), and, as relevant here, "includes . . . redemption

requests." *Cohmad*, 2013 WL 1609154 at \*8.  Further, all Section 546(e) requires is that the

transfer be "in connection with *a* securities contract" (emphasis added), even if not the securities

contract between the initial transferor and transferee.  *See Fishman*, 773 F.3d at 422 ("Section

546(e) sets a low bar for the required relationship between the securities contract and the transfer

sought to be avoided"; "a transfer can be connected to, and can be made in relation to, multiple

documents or purposes simultaneously"); *Cohmad*, 2013 WL 1609154, at \*9 (under the safe

harbor, transfer from debtor to initial transferee may qualify as having been made "in connection

with a securities contract" between initial transferee and subsequent transferee).  The conclusion

that the alleged initial transfers were made in connection with a securities contract does not

change even if the initial transferees, Sentry and Sigma, allegedly knew of Madoff's fraud.[6]

*First*, there was a securities contract between Sentry and its investors, even if there was

none between BLMIS and Sentry, and Sentry's alleged knowledge of the BLMIS fraud would

not preclude the straightforward application of Section 546(e) as being "in connection with"

Sentry's agreement with its investors.  In *Cohmad*, Judge Rakoff agreed that securities contracts

other than the initial transferee's securities contract with BLMIS could independently satisfy

Section 546(e).  2013 WL 1609154, at \*8–9.  Judge Rakoff found that so long as the initial

transferee withdrew funds from BLMIS to make a payment under a securities contract between

the initial transferee and the subsequent transferee, then the withdrawal from BLMIS would be a

---

[6] In Fairfield Investment Fund Ltd., the Court accepted that Sentry's knowledge had been adequately pleaded in a later version of the complaint in the Fairfield Action than the one incorporated by reference into the instant Complaint.  *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Fairfield Inv. Fund Ltd.)*, No. 08-01789 (CGM), 2021 WL 3477479, at \*4–5 (Bankr. S.D.N.Y. Aug. 6, 2021) (citing to the Second Amended Complaint, *Fairfield Action*, ECF. No. 286).  Defendant respectfully disagrees with that conclusion and reserves for appeal or a later stage of this action all arguments that the Trustee has not adequately pleaded Sentry's actual knowledge of Madoff's fraud either in the Second Amended Complaint or the earlier pleadings in that action and that Sentry did not in fact have such actual knowledge.

23

transfer made in connection with the securities contract between the initial transferee and the

subsequent transferee and thus would not be avoidable. The Complaint, as outlined below is

devoid of any allegation that C.A. Suisse, acting as a mere conduit for its clients, knew of

Madoff's fraud.

*Second*, while this Court and the District Court have previously ruled that Section 546(e)

cannot be invoked by a defendant with actual knowledge of Madoff's fraud, and while, as set

forth above, those rulings are inapplicable here, Defendant respectfully submits that there is

nothing in the language of Section 546(e) that supports creating an exception to its applicability

based on the knowledge of any transferee, as opposed to the debtor-transferor. That section

provides for only one exception to the safe harbor: a claim under Section 548(a)(1)(A), which

requires the Trustee to allege and prove intentional fraud by the transferor, and which only has a

two year lookback period. *See In re Actrade Fin. Techs. Ltd. (Silverman v. Actrade Capital,
Inc.)*, 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005) (under § 548(a)(1)(A) "it is the intent of the

transferor and not the transferee that is relevant") (citations omitted). Thus, the exception to the

safe harbor articulated in *Cohmad*, *i.e.*, that if the transferee from whom the Trustee seeks to

recover knew of Madoff Securities' fraud, that transferee cannot claim the protections of Section

546(e) , is not supported by the text of the statute. *Cohmad,* 2013 WL 1609154, at *7.

Thus, the elements of the Section 546(e) safe harbor have been met: the transfers were

made (1) "by or to (or for the benefit of)" a covered entity, such as a stockbroker or financial

institution; and (2) was a settlement payment or a transfer in connection with a securities

contract. *See* 11 U.S.C. § 546(e). Courts have previously found that the alleged initial transfers

made by BLMIS were made by a stockbroker for the purposes of the safe harbor exemption.

*See, e.g.*, *Cohmad*, 2013 WL 1609154, at *2. This Court has also previously affirmed Fairfield

Sentry's status as a financial institution.  *See Fairfield III*, 2020 WL 7345988 at *4, *6–*7 &

n.11.  C.A. Suisse, as an alleged subsequent transferee acting as a conduit for its clients, is

undisputedly a financial institution.  Compl. ¶¶ 3, 22.  As Judge Rakoff hypothesized in *Cohmad*,

the conclusion that the alleged initial transfers were made in connection with a securities contract

does not change even if the initial transferee, Sentry, allegedly knew of Madoff's fraud, and

where, as here, the Complaint is devoid of any allegations of knowledge against C.A. Suisse.

Instead, where there are no allegations of knowledge, this case is more akin to *Jalbert v.*

*Gryaznova (In re Bicom NY, LLM)*, 2022 WL 1419997 at *1 (2d Cir. May 5, 2022), in which the

Second Circuit recently held that the defendant was not a "transferee" for the purposes of Section

550(a) where it was "undisputed that [the defendant] never had 'a realistic opportunity to' use

the funds" that were in her bank account, placed there by a co-owner of the account and

subsequently transferred out.  *Id.*  The Trustee fails to allege bad faith on the part of C.A. Suisse,

or that it had any realistic opportunity to use any of the transfers allegedly received from

Fairfield.  Defendant is thus further entitled to rely on the protection of Section 546(e).

## III.  THE COMPLAINT DOES NOT ESTABLISH PERSONAL JURISDICTION OVER C.A. SUISSE

To survive a motion to dismiss under Rule 12(b)(2), "the plaintiff bears the burden to

make a prima facie showing that jurisdiction exists."  *In re Lehman Bros. Holdings Inc.*, 535

B.R. 608, 618 (Bankr. S.D.N.Y. 2015).

The Complaint should be dismissed for failure to adequately allege facts establishing

personal jurisdiction over C.A. Suisse.  A bankruptcy court may exercise personal jurisdiction

over a defendant in a proceeding arising in or related to a case under the Bankruptcy Code if the

exercise is consistent with the U.S. Constitution.  Fed. R. Bankr. P. 7004(f); *In re Bernard L.*

*Madoff Inv. Sec. LLC (Picard v. Chais),* 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010).[7]  The

Trustee bears the burden of establishing that this Court has personal jurisdiction over C.A.

Suisse.  *See JCorps Int'l, Inc. v. Charles & Lynn Schusterman Fam. Found.*, 828 F. App'x 740,

742 (2d Cir. 2020) (citing *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)).

Due process requires allegations "(1) that a defendant has certain minimum contacts with the

relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances."  *SPV*

*Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (citation omitted).  The minimum

contacts sufficient to support specific jurisdiction focus on "the relationship among the

defendant, the forum, and the litigation," *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977), a

relationship that "must arise out of contacts that the defendant himself creates with the forum

State," *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quotations omitted).  The Trustee must

demonstrate that the exercise of personal jurisdiction over C.A. Suisse "would comport with due

process."  *Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC*, No. 19-cv-3444

(VSB), 2020 WL 5503557, at *3 (S.D.N.Y. Sept. 10, 2020) (internal citation omitted).  Given the

facts and circumstances of this case, the Trustee's complaint fails on all requirements.[8]

    A.  <u>The Trustee Does Not Allege that C.A. Suisse Transacted Business in New York</u>

On its own, the Complaint's failure to allege that the transfers the Trustee seeks to

recover were sent to or even through New York (or any U.S.) accounts defeats jurisdiction over

the Trustee's claims to recover each alleged subsequent transfer.[9]  *See Neewra, Inc. v. Manakh*

---

[7] The federal jurisdictional analysis "closely resemble[s]" New York's long-arm statute and due process requirements, so the analyses are largely interchangeable. *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 68 (S.D.N.Y. 2016).

[8] The Trustee does not allege that the Court has general jurisdiction over C.A. Suisse—which conducts no business operations in the United States and has no office, postal address, telephone listing, agent, employee, property, marketing, sales, or other physical presence in the United States.

[9] As Judge Bernstein already held in these proceedings with respect to this very jurisdictional issue, each subsequent transfer is a separate claim.  Accordingly, the Trustee must establish the Court's jurisdiction over C.A. Suisse for

*Al Khaleej Gen. Trading & Contracting Co.*, No. 03 Civ. 2936 (MBM), 2004 WL 1620874, at *5

(S.D.N.Y. July 20, 2004) (non-U.S. bank did not engage in any jurisdictionally relevant activities

in New York where it did not use its U.S. correspondent account to effect any transactions giving

rise to plaintiff's claims); *see also Homeschool Buyers Club, Inc. v. Brave Writer, LLC*, No. 19-

CV-6046 (VSB), 2020 WL 1166053, at *5 (S.D.N.Y. Mar. 11, 2020) (Broderick, J.) (plaintiff

failed to make a *prima facie* showing under CPLR § 302(a)(1) because plaintiff did not allege

"the existence of a single act directed at New York out of which these claims arise"). This

Complaint is unlike the one at issue in *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,

480 B.R. 501, 517–18 (2012) ("*BLI*"), where the court found that defendants could be subject to

jurisdiction where the defendant hired a third party, "to conduct diligence on Fairfield Sentry and

its investment strategies," and the third party highlighted to the defendants that "the [Fairfield]

Fund's 'strategy is executed by [BLMIS],'" and the PPM highlighted BLMIS's central role in the

investment." *Id.* There are *no* allegations that C.A. Suisse acted in a similar manner as the *BLI*

defendants. The Complaint is absent of a similar level of intent.

Even more, the Fairfield Liquidators, who seek to recover the same transfers, make clear

in their recent appeal briefing that "[t]he redemption transfers at issue here were purely foreign,"

and that "every relevant component of the transactions at issue here occurred outside the

territorial jurisdiction of the United States." *See* Plaintiff-Appellants' Opening Brief for Second-

Round Appeal ("Liquidators' Appeal"), *Fairfield Sentry Limited (In Liquidation) v. Citibank NA

London*, No. 19-cv-03911-VSB (S.D.N.Y. July 21, 2021), ECF No. 440, at 24 (Vicens Decl. Ex.

13). C.A. Suisse did not engage in any transactions with BLMIS, nor does the Trustee make this

---

each individual transfer it seeks to recover. *BNP Paribas*, 594 B.R. at 190 ("Each transfer is a separate claim, and
the Trustee must establish the court's jurisdiction with respect to each claim asserted.") (internal quotations and
citations omitted).

allegation.  Instead, the Trustee must rely on C.A. Suisse's contacts with Fairfield Sentry, a BVI

entity.  *See* Compl. ¶¶ 6, 7.  Based on the Trustee's and Fairfield Liquidators' own allegations in

their complaints, the same transfers they seek to recover occurred completely outside the United

States.  If the Fairfield Liquidators cannot allege sufficient jurisdictional contacts between C.A.

Suisse and New York on the very same transactions, neither can the Trustee.  Since the Trustee

cannot meet his burden of establishing this Court's personal jurisdiction over each of these

transfers, the Complaint must be dismissed.

This Court's recent holdings in *Multi-Strategy* and *Banque SYZ* do not change this

outcome.  In those cases, this Court held that the Trustee "made a *prima facie* showing of

personal jurisdiction with respect to the Fairfield Funds subsequent transfers at issue" through

specific facts alleged in the complaints against those defendants.  *Multi-Strategy Fund Ltd.*, 2022

WL 2137073, at *5; *Banque Syz & Co., SA*, 2022 WL 2135019, at *5.  Here, such a prima facie

showing is lacking, and thus the Trustee has not established jurisdiction.  For example, in *Multi-

Strategy* and *Banque SYZ*, the Court noted that the defendants held meetings in New York

focusing on the Fairfield Funds.  *Multi-Strategy Fund Ltd.*, 2022 WL 2137073, at *3

("Defendant, through its president, director and authorized signatory, asked about additional

capacity for Fairfield Sentry on at least seven occasions."); *Banque Syz & Co., SA*, 2022 WL

2135019, at *3 ("Banque Syz solicited its own clients to invest in Madoff Feeder Funds' and

enticed those customers to increase their investments by offering them loans to fund the

investments.").  C.A. Suisse, which acted as a mere conduit for its investor's decisions, is not

alleged to have held meetings nor solicited clients to invest in the Feeder Funds.  Accordingly,

the Trustee has failed to demonstrate sufficient grounds for jurisdiction, because none exist.

**B.** <u>The Alleged Foreseeability of the Fairfield Funds' Investment in BLMIS Does
Not Establish Personal Jurisdiction over C.A. Suisse</u>

In the absence of allegations that C.A. Suisse conducted business in New York, the

Trustee alternatively alleges that C.A. Suisse purposefully availed itself of the laws of New York

because it knew that by investing in the Fairfield Funds, it was in turn investing in the U.S.-based

BLMIS and could foreseeably be haled into court in New York. *See* Compl. ¶ 6. This argument

too fails for two primary reasons.

*First*, the allegation that C.A. Suisse knew that its customers were investing in non-U.S.

entities (the Fairfield Funds) that would in turn invest in a U.S. entity (BLMIS) is not the basis of

liability at issue in this litigation and thus does not support jurisdiction. *See Helicopteros*

*Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of

another party or a third person is not an appropriate consideration when determining whether a

defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."); *SPV*

*Osus Ltd.*, 882 F.3d at 344 (substantial connection "depends on the relationship among the

defendant, the forum, and the litigation"). The Trustee's claims do not focus on the *decision* to

invest with Sentry as the basis for liability. *See Fairfield I*, 2018 WL 3756343, at *4–12

(subscription agreements irrelevant to claim not based on subscription). Even where the Court

has found that an intent to invest in BLMIS could weigh in favor of finding personal jurisdiction,

as in *BLI*, the factual scenario was very different—the *BLI* complaint alleged that the defendant

had conducted independent diligence into BLMIS. Instead, the Trustee's claim to recover the

transfers C.A. Suisse received from Sentry outside the United States relates to and arises out of

those very transfers. As those transfers are "purely foreign," they cannot be the basis for

jurisdiction.

*Second*, personal jurisdiction is not measured by third-party contacts, but on contacts "the

Defendant *himself* creates." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 335 (2d Cir. 2016) (emphasis in original). Sentry's contacts with BLMIS cannot establish that C.A. Suisse "accepted the rights, benefits, and privileges of conducting business and/or transactions in the United States and New York"—*see* Compl. ¶ 7—and settled Supreme Court precedent has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between . . . third parties and the forum State." *Walden*, 571 U.S. at 284. As the Supreme Court explained in *Walden*, tying personal jurisdiction to foreseeability "impermissibly allows a plaintiff's contacts with the defendant and the forum to drive the jurisdictional analysis." *Id.* at 289. The Court has "consistently rejected attempts to satisfy this defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third-parties) and the forum State." *Id.* at 284; *see also Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987) ("The 'substantial connection' . . . [for] minimum contacts must come about by an action of the defendant purposefully directed toward the forum State.").

      C.   <u>The Subscription Agreement Cannot be the Basis for Personal Jurisdiction Over C.A. Suisse</u>

The Trustee also alleges that by signing the Subscription Agreement with Sentry, it maintained "minimum contacts and/or general business contacts with the United States and New York." *See* Compl. ¶ 7. This theory, it is worth noting, has already been rejected by this Court and the law of the case disposes of it as a basis for jurisdiction. In the Fairfield Liquidators' Proceedings, this Court concluded that the execution of certain subscription agreements, without more, did not subject the defendants—including C.A. Suisse—to personal jurisdiction. *Fairfield I*, 2018 WL 3756343, at *12. Specifically, this Court held that the New York choice of forum provisions in the subscription agreement were not applicable to the disputes concerning

subsequent transfers because the Fairfield Liquidators' claim is solely based on redemptions and

does not arise out of the subscription agreements. *Id.* at *11 (adhering to the Privy Council's

holding in *Migani* "that the Subscription Agreement was irrelevant to actions to recover the

inflated redemption payments").

### D. The Trustee's Miscellaneous Jurisdictional Arguments Also Fail

The Trustee's remaining miscellaneous jurisdictional allegations – that C.A. Suisse "sent

a copy of the subscription agreement to FGG's New York City office, and wired funds to

Fairfield Sentry through a bank in New York," Compl. ¶ 7 – also fail because they are unrelated

to the Trustee's claims, and in any event, are insufficient.

*First*, the Trustee does not allege facts explaining how any of these alleged contacts

purportedly give rise to his claims. Those claims arise from the alleged subsequent transfers he

seeks to recover (*see, e.g.*, Compl. ¶¶ 2, 63); they do not arise from the Subscription Agreement,

investments in Sentry, or alleged communications with account representatives. *See Zim

Integrated Shipping Servs. Ltd.*, 2020 WL 5503557, at *5 (various contacts with New York are

insufficient to confer personal jurisdiction under Section 302(a)(1) where none gave rise to

plaintiff's cause of action); *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 323 n.4 (2016) (to

establish jurisdiction, the cause of action must arise from the very transactions that are relied

upon to provide the contact with the forum).

*Second*, even if accepted as true, allegations that a foreign bank sent contracts or emails

to New York or wired money through New York are insufficient to establish that it was

transacting business in New York or had minimum contacts with the U.S. *See SPV Osus Ltd.*,

882 F.3d at 345 (finding "handful of communications and transfers of funds . . . are insufficient

to allow the exercise of specific personal jurisdiction over the [Foreign] Defendants"); *Hill v.

HSBC Bank plc*, 207 F. Supp. 3d 333, 339–40 (S.D.N.Y. 2016) (finding allegations that foreign

defendants "communicated with and transmitted information and funds to and from BLMIS located in New York" were insufficient to "project" the foreign defendants into New York) (quotations omitted); *see also Walden*, 571 U.S. at 285 (instructing that the relevant analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there").

The Trustee's own statements to this Court in a related action show just how tenuous the claim is in *this* action. In *SIPC v. BLMIS, LLC*, the Trustee argued that defendants should be subject to personal jurisdiction because it was unlike the *Hill* case where the Court found it could not exercise jurisdiction because "there's a foreign plaintiff [as] a foreign administrator of a foreign feeder fund and nobody is present in New York but somebody presses a button and a transfer goes through some … account in New York." *See* Mar. 9, 2018 Hr'g Tr. at 56–57, *Picard v. BNP Paribas S.A.*, Adv. Pro. No. 12-01576 (Bankr. S.D.N.Y.), ECF No. 137. Here, as in *Hill*, C.A. Suisse is similarly foreign and presents the paradigmatic case for a lack of personal jurisdiction.

  E. <u>The Exercise of Personal Jurisdiction over C.A. Suisse Would Not Comport with Due Process</u>

The Court's exercise of jurisdiction must be reasonable under the circumstances for it to be consistent with due process. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("The Due Process Clause . . . gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurances as to where that conduct will and will not render them liable to suit.") (citation omitted). As demonstrated above, the Trustee has not alleged that C.A. Suisse had any contacts with the United States related to the Trustee's claims to recover the alleged subsequent transfers. Accordingly, the exercise of personal jurisdiction over C.A. Suisse would not comport with due

process. *See Walden*, 571 U.S. at 286 ("Due Process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State.") (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

## CONCLUSION

For the foregoing reasons, C.A. Suisse respectfully requests that the Court dismiss the Complaint in its entirety.

Dated:    July 18, 2022
          New York, New York

Respectfully Submitted,

**CLEARY GOTTLIEB STEEN &
HAMILTON LLP**

By: /s/ *Elizabeth Vicens*
One Liberty Plaza
New York, New York 10006
Telephone: 212.225.2000
Facsimile: 212.225.3999
Elizabeth Vicens
Email:  evicens@cgsh.com
Rachel Polan
Email: rpolan@cgsh.com

*Attorneys for Defendant Crédit Agricole
(Suisse) S.A.*