DAVIS POLK & WARDWELL LLP
Elliot Moskowitz
Andrew Ditchfield
450 Lexington Avenue
New York, New York 10017
Tel: (212) 450-4000
Fax: (212) 701-5800
elliot.moskowitz@davispolk.com
andrew.ditchfield@davispolk.com

**Hearing Date: September 14, 2022**
**Opposition Date: June 14, 2022**
**Reply Date: July 14, 2022**

*Attorneys for the Eurizon Defendants*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, | Adv. Pro. No. 12-01680 (CGM) |
| Plaintiff, | |
| v. | |
| INTESA SANPAOLO SPA (AS SUCCESSOR IN INTEREST TO BANCA INTESA SPA), EURIZON CAPITAL SGR SPA (AS SUCCESSOR IN INTEREST TO EURIZON INVESTIMENTI SGR SPA, F/K/A NEXTRA INVESTMENT MANAGEMENT SGR SPA, AND EURIZON | |

ALTERNATIVE INVESTMENTS SGR SPA,
F/K/A NEXTRA ALTERNATIVE INVESTMENTS
SGR SPA), EURIZON LOW VOLATILITY F/K/A
NEXTRA LOW VOLATILITY, EURIZON LOW
VOLATILITY II F/K/A NEXTRA LOW
VOLATILITY II, EURIZON LOW VOLATILITY
PB F/K/A NEXTRA LOW VOLATILITY PB,
EURIZON MEDIUM VOLATILITY F/K/A
NEXTRA MEDIUM VOLATILITY, EURIZON
MEDIUM VOLATILITY II F/K/A NEXTRA
MEDIUM VOLATILITY II, EURIZON TOTAL
RETURN F/K/A NEXTRA TOTAL RETURN,

      Defendants.

## THE EURIZON DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

PAGE(S)

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ............................................................................................................................... 2

I.     THE TRUSTEE'S CLAIMS ARE BARRED BY SECTION 546(e) .............................. 2

     A.     The "Knowledge" Exception Violates the Plain Text of Bankruptcy Code
           Section 546(e) ......................................................................................................... 3

     B.     Even If Applied by This Court, the "Knowledge" Exception Does Not
           Divest Innocent Subsequent Transferee Defendants of the Protections of
           the Statutory Safe Harbor ....................................................................................... 4

           1.     The "Knowledge" Exception Prohibits Only Defendants Who Had
                  Knowledge of the Fraud from Invoking Section 546(e) ............................ 5

           2.     The Eurizon Defendants Are Also Separately Entitled to the
                  Statutory Safe Harbor's Protection Based on Securities Contracts
                  with Fairfield Sentry ................................................................................ 11

II.    THE TRUSTEE HAS FAILED TO PLEAD THE AVOIDABILITY OF THE
      ALLEGED INITIAL TRANSFERS, AND HIS ATTEMPTED WHOLESALE
      INCORPORATION OF THE FAIRFIELD AMENDED COMPLAINT IS
      IMPROPER ................................................................................................................... 14

III.   THE TRUSTEE'S CLAIMS MUST BE DISMISSED FOR FAILURE TO
      ADEQUATELY PLEAD THAT THE EURIZON DEFENDANTS ARE
      SUBSEQUENT TRANSFEREES OF CUSTOMER PROPERTY ................................ 16

CONCLUSION ........................................................................................................................... 19

## TABLE OF AUTHORITIES

PAGE(S)

CASES

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
     599 B.R. 730 (Bankr. S.D.N.Y. 2019) ...................................................................... 16

*Am. Casein Co. v. Geiger (In re Geiger)*,
     446 B.R. 670 (Bankr. E.D. Pa. 2010) ...................................................................... 14

*AP Servs., LLP v. Silva*,
     483 B.R. 63 (S.D.N.Y. 2012) .................................................................................. 7

*Ashcroft v. Iqbal*,
     556 U.S. 662 (2009) .............................................................................................. 16

*Bonano v. Doe*,
     628 F. App'x 25 (2d Cir. 2015) .............................................................................. 3

*In re Boston Generating LLC (Holliday v. K Rd. Power Mgmt., LLC)*,
     617 B.R. 442 (Bankr. S.D.N.Y. 2020) .................................................................... 7

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
     752 F.3d 173 (2d Cir. 2014) .................................................................................. 2

*Deutsche Bank Tr. Co. Ams. v. Large Priv. Ben. Owners (In re Tribune Co. Fraudulent Conv. Litig.)*,
     946 F.3d 66 (2d Cir. 2019), *cert. denied*, 141 S. Ct. 2552 (2021)............................ 4

*Foxglenn Invs. Ltd. P'ship v. Cisneros*,
     35 F.3d 947 (4th Cir. 1994) .................................................................................. 4

*Helms v. Metro. Life Ins. Co. (In re O'Malley)*,
     601 B.R. 629 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021) ...........17

*Kelley v. Safe Harbor Managed Acct. 101, Ltd.*,
     31 F.4th 1058 (8th Cir. 2022) ................................................................................ 7

*Law v. Siegel*,
     571 U.S. 415 (2014) .............................................................................................. 4

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
     2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010) ...................................................... 15

*Picard v. ABN AMRO Bank (Ir.) Ltd. (SIPC v. Bernard L. Madoff Inv. Sec. LLC)*,
     505 B.R. 135 (S.D.N.Y. 2013) .............................................................................. 13

*Picard v. BNP Paribas S.A.*,
     594 B.R. 167 (Bankr. S.D.N.Y. 2018) .................................................................... 9

PAGE(S)

*Picard v. Citibank (In re Bernard L. Madoff Inv. Secs. LLC)*,
    12 F.4th 171 (2d Cir. 2021) ............................................................ 3

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    454 B.R. 317 (Bankr. S.D.N.Y. 2011) ............................................ 16

*Picard v. Ida Fishman Revocable Tr. (In re Bernard L. Madoff Inv. Secs. LLC)*,
    773 F.3d 411 (2d Cir. 2014) ........................................................ 3, 4

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
    515 B.R. 117 (Bankr. S.D.N.Y. 2014) .................................. 10, 11, 16

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Secs. .LC)*,
    542 B.R. 100 (Bankr. S.D.N.Y. 2015) ............................................ 16

*Salahuddin v. Cuomo*,
    861 F.2d 40 (2d Cir. 1988) ............................................................ 15

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib. Inc.)*,
    379 B.R. 5 (Bankr. E.D.N.Y. 2007) .............................................. 16

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
    501 B.R. 26 (S.D.N.Y. 2013) ........................................................ 15

*SIPC v. Bernard L. Madoff Inv. Sec. LLC, (In re Madoff Sec.)*,
    2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ........................... *passim*

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Fairfield Inv. Fund Ltd.)*,
    No. 08-1789 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) .............. 7, 8, 9, 13

*SunEdison Litig. Tr. v. Seller Note, L.L.C.  (In re SunEdison, Inc.)*,
    620 B.R. 505 (Bankr. S.D.N.Y. 2020) .......................................... 10

*In re UBS AG Sec. Litig.*,
    2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City of Pontiac Policemen's &
    Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014) ................................. 2

*U.S. v. Int'l Longshoremen's Ass'n*,
    518 F. Supp. 2d 422 (E.D.N.Y. 2007) ...................................... 14, 15

*U.S. Bank N.A. v. Verizon Commc'ns Inc.*,
    892 F. Supp. 2d 805 (N.D. Tex. 2012) .......................................... 7

PAGE(S)

## STATUTES & RULES

11 U.S.C. § 546(e) .................................................................................................. *passim*

11 U.S.C. § 548(a)(1)(A) .................................................................................. 3, 4, 10

11 U.S.C. § 550(a) ................................................................................................4, 7

11 U.S.C. § 550(a)(2) ........................................................................................... 17

11 U.S.C. § 550(b) ................................................................................................ 9

Fed. R. Civ. P. 8(a) ......................................................................................... 1, 15

Fed. R. Civ. P. 10(c) ............................................................................................ 15

The Eurizon Defendants respectfully submit this reply (the "Reply") in further support of their motion to dismiss the Complaint.[1]

## PRELIMINARY STATEMENT

The Trustee fails to refute the multiple, independent grounds for dismissal of his claims against the Eurizon Defendants.

*First*, the Trustee does not dispute that the initial transfers between BLMIS and Fairfield Sentry fall squarely within the statutory language of the Section 546(e) safe harbor, thereby precluding recovery under the section's plain language. The Trustee nevertheless argues that innocent subsequent transferee defendants cannot invoke the protection of Section 546(e) under a judicially created "knowledge" exception to the safe harbor. But that argument fails because (i) the "knowledge" exception violates the plain text of the Bankruptcy Code, and (ii) even if it were to exist, which it does not, it does not preclude an innocent subsequent transferee without actual knowledge of the fraud, such as the Eurizon Defendants, from invoking the safe harbor.

*Second*, the Trustee's complaint is entirely devoid of allegations pleading the avoidability of the initial transfers. The Trustee attempts to cure this facial deficiency by relying entirely on allegations in the (superseded) Fairfield Amended Complaint, but ignores that the *wholesale* incorporation of voluminous pleadings from another matter blatantly violates Rule 8(a).

*Third*, the Trustee's claim that the Eurizon Defendants are subsequent transferees of the initial transfers is facially implausible, as it requires concluding that (i) *$5 billion* in subsequent transfers was somehow magically funded by only *$3 billion* of initial transfers and (ii) the Eurizon Defendants received subsequent transfers of BLMIS customer property when there was

---

[1] Unless otherwise specified, capitalized terms not defined herein have the meanings ascribed to them in the Eurizon Defendants' initial memorandum of law, ECF No. 96, cited as "Mem." Citations to "Opp." refer to the Trustee's opposition memorandum (the "Opposition"), ECF No. 99.

1

no BLMIS customer property in Fairfield Sentry's accounts.  Contrary to the Trustee's assertion, pleading some connection between the alleged initial and subsequent transfers does not require him to perform a "tracing analysis" at this stage, but it does require him to allege a *plausible* connection, which he has failed to do.

As explained further below, each of these three reasons independently requires dismissing the Complaint.[2]

## ARGUMENT

## I.    THE TRUSTEE'S CLAIMS ARE BARRED BY SECTION 546(e)

As the Eurizon defendants previously demonstrated, each of the elements necessary to invoke the Section 546(e) safe harbor have been met.  Mem. 13–21.  The Trustee does not even attempt to challenge these facts, thereby conceding that the alleged initial transfers satisfy Section 546(e)'s requirements and thus are unavoidable as a matter of law.  *See In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014) (plaintiff "concede[d] through silence" defendant's assertion by failing to respond to it in opposition brief).

Instead, the Trustee's sole argument is that a judicially created "knowledge" exception to Section 546(e) applies—not because the Eurizon Defendants knew anything about BLMIS's Ponzi scheme, but because the *initial transferee*, Fairfield Sentry, allegedly did.  Opp 7–9.  But this purported "knowledge" exception was created by Judge Rakoff in *SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*") and is not found in the text of Section 546(e). The Trustee's attempt to bypass that

---

[2] Although several of these issues have been decided in the Trustee's favor in recent decisions issued by this Court, *see, e.g.*, *Picard v. Multi-Strategy Fund Ltd.*, Adv. Pro. No. 12-01205 (CGM) (Bankr. S.D.N.Y. June 13, 2022), ECF No. 122, the Eurizon Defendants respectfully disagree with those decisions and continue to advance the arguments herein to preserve the issues for appeal.

section's plain language should not be countenanced.  Moreover, even if a "knowledge"

exception did apply, the Trustee misapplies it here.

### A.    The "Knowledge" Exception Violates the Plain Text of Bankruptcy Code Section 546(e)

The Trustee argues that the transfers to Fairfield Sentry are avoidable, and thus the

Trustee may recover from the Eurizon Defendants, because Fairfield Sentry allegedly knew of

Madoff's fraud.  The Trustee does not, however, rely on anything in the *text* of Section 546(e) to

make that argument.  Instead, he argues that a *judicially created* "knowledge" exception prevents

the Eurizon Defendants from invoking Section 546(e).  Opp. 7–10.

This "knowledge" exception should be rejected as contrary to Section 546(e)'s plain

language.[3]  Section 546(e) sets forth detailed requirements defining the transactions that fall

under its safe harbor, and contains only a single exception: intentional fraudulent claims asserted

under 11 U.S.C. § 548(a)(1)(A).  That should end the matter, as the Trustee does not assert a

cause of action under that section.  Nor could he, given that he has not brought a claim within the

two-year limitations period applicable to that section or otherwise pleaded fraudulent intent.[4]

---

[3] The Trustee's argument, Opp. 9–10, that the "knowledge" exception is "law of the case" because it was applied in Judge Rakoff's decision in *Cohmad* ignores the Second Circuit's subsequent opinion in *Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411 (2d Cir. 2014).  In *Fishman*, the Second Circuit consistently rejected the same Trustee's attempts to limit the applicability of Section 546(e) by adding language that Congress did not include.  *See* 773 F.3d at 419–23.  Thus, while not directly addressing the issue, the clear import of *Fishman* is that courts should not interpret Section 546(e) to create a knowledge exception that does not exist in the text.  The Trustee's argument also ignores that prior decisions of this Court are not binding, because "the law of the case . . . doctrine is 'discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment.'"  *Bonano v. Doe*, 628 F. App'x 25, 27 (2d Cir. 2015).

[4] The Trustee argues that he pleaded fraudulent intent via the "Ponzi scheme presumption."  Opp. 16–19.  But it is far from clear if that presumption is even available here, *see Picard v. Citibank (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171, 202 (2d Cir. 2021) (Menashi, J., concurring), as the Trustee fails to address.  The Trustee alternatively pleads that he has sufficiently pleaded fraudulent intent by alleging certain "badges of fraud"— specifically, "the concealment of facts by BLMIS, BLMIS's insolvency, and the lack of consideration provided for BLMIS's transfers to customers" generally.  Opp. 18–19.  But the cited paragraphs of the Complaint (¶¶ 32–42) do not specifically relate to any transfers at issue here.  For example, the Trustee does not allege, much less with particularity, that any of the initial transfers were made without consideration.  The Trustee instead relies on conclusory and generic allegations that BLMIS operated as a Ponzi scheme and made transfers to Fairfield Sentry.

The Trustee's insistence that there is nevertheless an unwritten "knowledge" exception is contrary to well-established case law regarding the Bankruptcy Code's interpretation.  As the Supreme Court has cautioned, "[t]he [Bankruptcy] Code's meticulous—not to say mind-numbingly detailed—enumeration of exemptions and exceptions to those exemptions confirms that courts are not authorized to create additional exceptions."  *Law v. Siegel*, 571 U.S. 415, 424 (2014).  Indeed, the "knowledge" exception here is particularly inappropriate given that Congress knew how to include "mental state" limitations and did so in several sections of the Bankruptcy Code, *see, e.g.*, 11 U.S.C. §§ 548(a)(1)(A), 550(a), but declined to do so in Section 546(e).  *See, e.g.*, *Foxglenn Investors Ltd. Partnership v. Cisneros*, 35 F.3d 947, 950 (4th Cir. 1994) (refusing to create limitation where "Congress incorporated precisely such a limitation in a different provision within the very same section").  Moreover, as discussed above, the Second Circuit has already rejected similar attempts by the same Trustee to modify the Bankruptcy Code through judicial fiat rather than the legislative process.  *See Fishman*, 773 F.3d at 420 (finding that the Trustee's argument "does not engage with" the Bankruptcy Code's actual language).

The "knowledge" exception not only ignores Congress's statutory language, but also its intent when enacting Section 546(e), which was to ensure finality and stability in the securities markets.  *See, e.g.*, *Deutsche Bank Tr. Co. Ams. v. Large Private Ben. Owners (In re Tribune Co. Fraudulent Conv. Litig.)*, 946 F.3d 66, 90 (2d Cir. 2019), *cert. denied*, 141 S. Ct. 2552 (2021). Indeed, the "knowledge" exception would destabilize the very markets Congress sought to insulate.  It should be rejected.

> **B.      Even If Applied by This Court, the "Knowledge" Exception Does Not Divest Innocent Subsequent Transferee Defendants of the Protections of the Statutory Safe Harbor**

The Trustee concedes that the Eurizon Defendants did not know of Madoff's fraud. Instead, he argues that no subsequent transferee can invoke Section 546(e) because *Fairfield*

*Sentry* knew of the fraud.  Opp. 7–10.  But there is no basis for that assertion—either in Section

546(e)'s plain text or *Cohmad's* "knowledge" exception, on which the Trustee purports to rely.

Rather, both Section 546(e) and *Cohmad* make clear that innocent subsequent transferees such as

the Eurizon Defendants can invoke Section 546(e) to show that the initial transfers are not

avoidable even if Fairfield Sentry had knowledge of Madoff's fraud.

> 1. *The "Knowledge" Exception Prohibits Only Defendants Who Had
>    Knowledge of the Fraud from Invoking Section 546(e)*

When Judge Rakoff created the "knowledge" exception in *Cohmad*, he made clear that it

does not render the initial transfers categorically avoidable.  Rather, it only prohibits *certain*

*defendants*—specifically, those with actual "knowledge" of the fraud—from invoking the

Section 546(e) defense because they should not be permitted to profit from their own wrong.  Put

differently, the "knowledge" exception was meant to be *transferee*-specific, not *transfer*-specific.

Thus, while *Fairfield Sentry* was not permitted to invoke Section 546(e) because it allegedly

knew of BLMIS's fraud, nothing precludes *other* subsequent transferees who are *not* alleged to

have had knowledge of the fraud, such as the Eurizon Defendants, from invoking the safe harbor

on a motion to dismiss.

As Judge Rakoff explained in *Cohmad*, "[w]here the Trustee has sought to recover

transfers made to a subsequent transferee, the avoidance of which would otherwise be barred by

Section 546(e) as to the initial transferee, the subsequent transferee will not be able to prevail on

a motion to dismiss . . . the Trustee's avoidance claims simply on the basis of the Section 546(e)

'safe harbor' *if the Trustee has alleged that the subsequent transferee had actual knowledge of*

*Madoff Securities' fraud*."  *Cohmad*, 2013 WL 1609154, at *1 (emphasis added).  Where, as here,

the Trustee has *not* alleged such actual knowledge by the *subsequent transferee defendant*, it

logically follows that the defendant *is* "able to prevail on a motion to dismiss" based on Section

546(e).  *Id.*  The Trustee's contrary contention—that an innocent subsequent transferee loses its

ability to assert a Section 546(e) defense based on the happenstance of an unrelated initial

transferee's knowledge—does not survive a close reading of *Cohmad*.

In *Cohmad*, Judge Rakoff held that an *initial transferee defendant* cannot obtain

dismissal "simply on the basis of the Section 546(e) 'safe harbor' *if* the Trustee has alleged that

the initial transferee had actual knowledge of Madoff Securities' fraud."  *Cohmad*, 2013 WL

1609154, at *1 (emphasis in original).  The court's rationales for denying such defendants the

benefit of the safe harbor were that: (i) if they signed "account agreements" with BLMIS with

actual knowledge of its fraud, they "must have known that the transfers they received" from

BLMIS "were not 'settlement payments'"; and (ii) transferees with actual knowledge that

BLMIS was not trading securities "must [also] have known that the transfers could not have been

made in connection with an actual 'securities contract.'"  *Id.* at *3.

For this reason, Judge Rakoff explained, if the Trustee's pleading "adequately allege[s]

that a defendant had actual knowledge of Madoff's scheme, *such a transferee stands in a*

*different posture from an innocent transferee, even as concerns the application of Section 546(e)*."

*Id*. at *4 (emphasis added).  The court noted that the "purpose" of Section 546(e) is to minimize

"the displacement caused in the commodities and securities markets in the event of a major

bankruptcy affecting those industries"—a "goal [that] is best achieved by protecting the

reasonable expectations of investors who believed they were signing a securities contract."  *Id*.

An innocent investor—i.e., one without actual knowledge of the fraud—has such "reasonable

expectations" and is entitled to Section 546(e)'s protections.  *Id*.  By contrast, "a transferee who

had actual knowledge of the Madoff 'Ponzi' scheme did not have any such expectations, but was

simply obtaining moneys while he could."  *Id*.  Accordingly, the court in *Cohmad* drew a clear,

bright line as to the availability of Section 546(e) on motions to dismiss, based *solely* on whether

the "defendant"—i.e., *the transferee being sued*—allegedly had such actual knowledge of the

underlying fraud. *Id.*

This distinction fully applies to alleged subsequent transferee defendants. Judge Rakoff

held that, "even if the initial (or mediate) transferee fails to raise a Section 546(e) defense" for

any reason (including, as here, the Trustee's settlement of claims against the initial transferee),

"the subsequent transferee is nonetheless entitled to raise a Section 546(e) defense against

recovery of those funds," *id*. at *7—and then applied to alleged subsequent transferees the same

bright-line test applicable to initial transferee defendants. Thus, "if the Trustee sufficiently

alleges that *the transferee from whom he seeks to recover a fraudulent transfer* knew of Madoff

Securities' fraud, *that transferee* cannot claim the protection of Section 546(e)'s safe harbor." *Id.*

(emphasis added).[5] *Cohmad* therefore precludes *only* "actual knowledge" defendants against

which the Trustee seeks recovery from invoking the safe harbor. It does not affect subsequent

---

[5] *Cohmad* thus refutes the Trustee's argument that Judge Rakoff "specifically limited the safe harbor to avoidance claims." Opp. 12. Section 546(e) not only limits a trustee's avoidance powers, but also provides a defense—which may be raised by motion to dismiss—to defendants sued under Section 550(a) for *recovery* of allegedly fraudulent transfers. In *Cohmad* (in addition to the language quoted in the text *supra*), Judge Rakoff explained that he had twice previously held that Section 546(e) "required the dismissal" both of the Trustee's avoidance claims and of "*related recovery claims under Section 550(a)*." *Cohmad*, 2013 WL 1609154, at *3 (emphasis added). Similarly, in *SIPC v. Bernard L. Madoff Investment Securities LLC (Picard v. Fairfield Inv. Fund Ltd.)*, No. 08-1789 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Investment Fund*"), this Court, citing *Cohmad*, explained that a subsequent transferee is "entitled to raise a § 546(e) defense *against recovery*" of funds sought by the Trustee. *Id.* at *3 (emphasis added). *See also U.S. Bank N.A. v. Verizon Commc'ns Inc*., 892 F. Supp. 2d 805, 815 (N.D. Tex. 2012) ("Section 546(e) bars the plaintiff from recovering the $2.4 billion in cash as a fraudulent transfer."); *AP Servs., LLP v. Silva*, 483 B.R. 63, 71 (S.D.N.Y. 2012) (dismissing a recovery claim under Section 546(e)); *In re Boston Generating LLC (Holliday v. K Rd. Power Mgmt., LLC)*, 617 B.R. 442, 477 (Bankr. S.D.N.Y. 2020) (granting motion to dismiss) ("Pursuant to Section 546(e) of the Bankruptcy Code, certain transfers are excepted from avoidance and recovery."); Section 546(e) Briefing Order, *In re Madoff Sec.*, No. 12-MC-115 (S.D.N.Y. May 16, 2012), ECF No. 119 (addressing whether the safe harbor bars "recovery by the Trustee of any subsequent Transfer pursuant to Section 550"). Indeed, *Kelley v. Safe Harbor Managed Acct. 101, Ltd.*, 31 F.4th 1058 (8th Cir. 2022), cited at Opp. 11, 14, involved application of the safe harbor to a case where, as here, the trustee alleged that funds an initial transferee subsequently transferred to a defendant were recoverable under Section 550(a). *Id.* at 1064.

transferee defendants *not* alleged to have had such knowledge. They still may invoke Section 546(e)'s protections, including on motions to dismiss.[6]

In *Fairfield Investment Fund*, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021), this Court reiterated that, "if the Trustee sufficiently alleges that *the transferee from whom he seeks to recover a fraudulent transfer* knew of Madoff Securities' fraud, *that transferee* cannot claim the protections of Section 546(e)'s safe harbor." *Id.* at *4 (quoting *Cohmad*, 2013 WL 1609154, at *7) (emphasis added). This Court accordingly examined whether the Trustee had sufficiently alleged facts establishing actual knowledge separately as to each individual subsequent transferee defendant, *see id.* at *5–7, and concluded that "[t]he Trustee has failed to plead individualized factual allegations demonstrating that Corina Noel Piedrahita had independent actual knowledge of the BLMIS fraud." *Id.* at *6. This Court therefore dismissed all individual claims against Ms. Piedrahita, *id.* at *15, even though it found that the Trustee had adequately pleaded actual knowledge on the part of both the *initial* transferees and the *other* subsequent transferee defendants, *id.* at *4–6; *see also id.* at *15 (denying motion to dismiss except as to the individual claims against Ms. Piedrahita).[7]

The Trustee argues that the actual knowledge of individual defendants in *Fairfield Investment Fund* was relevant to the motion there only for purposes of imputing it to the initial transferee entities because of their roles with the entities. *See* Opp. 15. But even though the

---

[6] The Trustee speculates that accepting the Eurizon Defendants' position would permit initial transferees with actual knowledge "to place fraudulently transferred monies with a subsequent transferee and out of the reach of a trustee." Opp. 14. But the Trustee has pleaded no such thing. Far from alleging that Fairfield Sentry "place[d]" funds with the Eurizon Defendants, *id.*, his theory is that the Eurizon Defendants initiated and drove the redemption process, "withdrawing money" from Fairfield Sentry. Compl. ¶ 7.

[7] The only claims asserted against Ms. Piedrahita were subsequent transfer claims. *See* Second Am. Compl., Adv. Pro. No. 09-1239 (CGM), ECF No. 286, ¶¶ 366–70, 391–94. The Court discussed the Trustee's failure to allege facts showing that Ms. Piedrahita had "independent actual knowledge of the BLMIS fraud," *Fairfield Inv. Fund*, 2021 WL 3477479, at *6, in Section III(A) of its decision, relating to whether Section 546(e) "BAR[RED] THE TRUSTEE'S SIX-YEAR SUBSEQUENT TRANSFER CLAIMS." *Id.* at *3.

Court found that the Trustee had alleged actual knowledge on the part of the initial transferees, *see Fairfield Inv. Fund*, 2021 WL 3477479, at *4, it did *not*—as the Trustee asks it to do here—automatically deprive all subsequent transferee defendants of the safe harbor's protection. On the Trustee's reading of *Cohmad*, there would have been no reason for the Court to consider whether the Trustee had pleaded facts establishing Ms. Piedrahita's actual knowledge, and no basis to dismiss the individual claims against her. Rather, based on that view, once the Court held that the initial transferees' actual knowledge had been sufficiently pleaded, *all* defendants' motions to dismiss would have been denied—including the motion of Ms. Piedrahita, the lone innocent subsequent transferee defendant.[8] But that is not what happened.

The other cases cited by the Trustee provide no support for the proposition that *Cohmad* strips a transferee defendant without knowledge of its ability to obtain dismissal of recovery claims under Section 546(e) merely because an unrelated initial transferee had actual knowledge. In *Picard v. BNP Paribas S.A.*, 594 B.R. 167 (Bankr. S.D.N.Y. 2018), the subsequent transferee defendants argued that Section 546(e) applied to protect the *subsequent transfers* from Fairfield Sentry to them. *Id.* at 196. This Court rejected that argument.[9] *Id.* at 196–97. However, that is not the argument advanced here—as discussed above, Section 546(e) applies to prevent the

---

[8] The Trustee alternatively suggests that the dismissal as to Ms. Piedrahita may have been based on a finding, for purposes of the defendants' Section 550(b) "good faith for value" defense, that the Trustee had not adequately pleaded a lack of "good faith." *See* Opp. 15. But this ignores: (i) the placement of the discussion of Ms. Piedrahita's lack of knowledge in Section III(A) (i.e., the Section 546(e) portion) of the decision (*see supra* at 8 n.7), rather than in the separate Section III(B) dealing with the Section 550(b) defense, *see Fairfield Inv. Fund*, 2021 WL 3477479, at *7–9; and (ii) the Court's holding that it could not determine on a Rule 12(b) motion whether any defendant "gave value" in surrendering shares in the Fairfield Funds, as a result of which it denied all defendants' motions to dismiss to the extent based on the Section 550(b) defense. *Id.* at *9.

[9] And here, unlike in *BNP Paribas*, the Trustee has conceded that Section 546(e)'s requirements are satisfied as to the initial transfer. *See supra* at 2. The question on this motion is whether *Cohmad* should be interpreted to divest an innocent subsequent transferee defendant of the statute's protection. Moreover, to the extent Judge Bernstein in *BNP Paribas* referred to defendants' knowledge, he appears to have conflated the safe harbor with the entirely separate "good faith for value" defense under Section 550(b), which is not at issue on this motion. *See BNP Paribas*, 594 B.R. at 197 ("[E]ven if the subsequent transferee was unaware of Madoff's Ponzi scheme, it must still prove that it gave value in order to prevail on its defense.").

avoidance of *initial transfers*.  Despite the Trustee's efforts to create a straw man argument to the contrary, the Eurizon Defendants' status as subsequent transferees does not alter the application of the statute and the Eurizon Defendants do not argue otherwise.  *SunEdison Litigation Trust v. Seller Note, LLC (In re SunEdison, Inc.)*, 620 B.R. 505, 514 (Bankr. S.D.N.Y. 2020) does not relate to the "knowledge" exception at all—it simply affirms the proposition that Section 546(e) only applies to initial transfers, which, again, is undisputed here.  And none of the decisions string-cited at Opp. 10 n.9 justifies stripping innocent subsequent transferee defendants of Section 546(e)'s protections by dint of an initial transferee's actual knowledge.  On the contrary, in *Picard v. Merkin (In re Bernard L. Madoff Investment Securities LLC)*, 515 B.R. 117 (Bankr. S.D.N.Y. 2014) ("*Merkin*"), Judge Bernstein held that because the Trustee's complaint "fail[ed] to plausibly allege" that a subsequent transferee defendant "had actual knowledge of Madoff's Ponzi scheme," Section 546(e) applied; the court accordingly dismissed the avoidance and recovery claims except under Section 548(a)(1)(A).  *Id.* at 141.

Finally, the Trustee claims that the Eurizon Defendants' interpretation of *Cohmad's* "knowledge" exception would "expand[] the safe harbor," with "subsequent transferees enjoying more avoidance protection than the initial transferee, which does not reflect Congress' intent."  Opp. 14.  That is incorrect on multiple levels.  *First*, this motion raises no issue concerning the scope of the safe harbor itself.  Congress clearly defined its contours in Section 546(e), and the Trustee concedes that the statutory requirements are all satisfied here.  *See supra* at 2.  What *is* at issue is whether *Cohmad* should be read to deny an innocent subsequent transferee defendant its ability to invoke the safe harbor on a motion to dismiss.  *Second*, the key distinction drawn in *Cohmad* was not between initial and subsequent transferees, but between defendants alleged to have had knowledge of the underlying fraud (and that BLMIS was not trading securities) and

those against which no such allegations were even made. Only "those defendants who claim the

protections of Section 546(e) through a [BLMIS] account agreement but who actually knew that

[BLMIS] was a Ponzi scheme are not entitled to the protections of the Section 546(e) safe

harbor," *Cohmad*, 2013 WL 1609154, at *10—a rule the court applied equally to initial and

subsequent transferees.[10]  *See id*. at *5–8.  *Third*, the Trustee cites no Code provision or

legislative history supporting the proposition that Congress intended to deny innocent subsequent

transferee defendants the benefits of the safe harbor.

2.  *The Eurizon Defendants Are Also Separately Entitled to the
Statutory Safe Harbor's Protection Based on Securities Contracts
with Fairfield Sentry*

In *Cohmad*, Judge Rakoff recognized a separate, alternative way in which the Section

546(e) safe harbor protects certain subsequent transferees that rely on agreements other than the

BLMIS-Fairfield Sentry account agreements as "securities contracts."  The court explained that

the statutory phrase, "securities contracts," "is in fact much broader and includes, *inter alia*,

investment fund subscription agreements and redemption requests," among others.  *Cohmad*,

2013 WL 1609154, at *8.  Section 546(e) does not require that "the securities contract that the

transfer is made 'in connection with' must be a securities contract with the debtor"—only "that

the transfer relate to that securities contract."  *Id.* at *9.  Thus, where a BLMIS customer (such as

Fairfield Sentry) made a "withdrawal" from its BLMIS account that was allegedly "caused by

[its] payment obligations to a subsequent transferee under a securities contract" (such as the

Fairfield Sentry Articles of Association (the "Articles"), which govern redemptions from

Fairfield Sentry (*see* Mem. at 18–21)), the initial transfer "could qualify" under Section 546(e)

---

[10] *See also Merkin*, 515 B.R. at 138 (under *Cohmad*, if "an initial (or subsequent) transferee had *actual*
knowledge of Madoff's Ponzi scheme, he cannot avail himself of the § 546(e) safe harbor" (emphasis in original)).

"as 'related to' that later transaction under the securities contract." *Cohmad*, 2013 WL 1609154, at *9; *see also* Mem. 18–21.

The Trustee does not dispute that the Eurizon Defendants and Fairfield Sentry are all "financial institutions" based on the Complaint. *See* Mem. 13–15 & n.8. And the Trustee is bound by his allegations that BLMIS's initial transfers were made to Fairfield Sentry (at its request) for the purpose of funding the Eurizon Defendants' redemption requests. *See* Mem. 18–20. Accordingly, the facts alleged here "fit within the plain terms of Section 546(e)." *Cohmad*, 2013 WL 1609154, at *9. Even if *Cohmad* were to apply here, as the Trustee insists, it supplies an independent basis for the statutory safe harbor to protect the Eurizon Defendants, premised on the Articles, rather than the BLMIS-Fairfield Sentry customer agreements, as the relevant "securities contract."

Because this second, alternative path to Section 546(e) protection does not implicate any securities contract between Fairfield Sentry and BLMIS, Fairfield Sentry's alleged knowledge of the Madoff/BLMIS fraud (and that its customer agreements with BLMIS were not real securities contracts) could not logically have the talismanic significance the Trustee ascribes to it. Thus, even if Fairfield Sentry's alleged actual knowledge of the BLMIS/Madoff Fraud would preclude it from "claim[ing] the protections of Section 546(e) through a Madoff Securities account agreement," *Cohmad*, 2013 WL 1609154, at *10, that would not preclude an innocent subsequent transferee that obtained a transfer from Fairfield Sentry from doing so "to the extent that a defendant claims protection under Section 546(e) under a *separate securities contract* as a financial participant or financial institution," *id.* (emphasis added).

Moreover, the Trustee does not contend that the Articles—the relevant "securities contract" in the alternative *Cohmad* analysis—was anything but a real securities contract under

which real securities were redeemed and sold.  Accordingly, Fairfield Sentry's alleged actual

knowledge of the Madoff/BLMIS fraud poses no impediment to the Eurizon Defendants' motion

based on Section 546(e).  *Cf. Picard v. ABN AMRO Bank (Ir.) Ltd. (SIPC v. Bernard L. Madoff*

*Inv. Sec. LLC)*, 505 B.R. 135, 142 n.6 (S.D.N.Y. 2013) (explaining that "the issue of knowledge

was irrelevant to the application of section 546(g), the analogous safe harbor for transfers made

in connection with swap agreements, where "there is no dispute that the swap transactions

actually occurred, [and] so the mindset of the participants is irrelevant").

The Trustee disparages this second *Cohmad* holding as mere "dicta."  Opp. 12.  Not so.

Judge Rakoff explicitly ordered that "to the extent that a defendant claims protection under

Section 546(e) under a separate securities contract as a financial participant or financial

institution, *the Bankruptcy Court must adjudicate those claims in the first instance consistent*

*with this Opinion*."  *Cohmad*, 2013 WL 1609154, at *10 (emphasis added); *see also id.* at *9 n.6

(instructing that the issue must be determined "on the basis of the specific allegations in the

Trustee's complaint in a given adversary proceeding").

\* \* \*

The Trustee's assertion that "Section 546(e) does not provide an independent safe harbor

for Section 550 recovery actions against subsequent transferees," Opp. 12, is a red herring.  By

choosing not to litigate the Section 546(e) issue in his avoidance action against Fairfield Sentry,

the Trustee left it for subsequent transferee defendants "to raise a Section 546(e) defense against

recovery of those funds."  *Cohmad*, 2013 WL 1609154, at *7; *accord Fairfield Inv. Fund*, 2021

WL 3477479, at *3.  And the Trustee has conceded that Section 546(e)'s prerequisites have been

satisfied.  The only question, then, is whether *Cohmad*'s prohibition against defendants with

"actual knowledge" of the fraud invoking the safe harbor (assuming such an exception even

exists) should be extended to innocent subsequent transferee defendants.  Neither logic nor

precedent supports such a jarring result.

## II.  THE TRUSTEE HAS FAILED TO PLEAD THE AVOIDABILITY OF THE ALLEGED INITIAL TRANSFERS, AND HIS ATTEMPTED WHOLESALE INCORPORATION OF THE FAIRFIELD AMENDED COMPLAINT IS IMPROPER

Nowhere in the Trustee's 27-page Complaint does he actually *plead* that the initial

transfers at issue here are avoidable.  Rather, the Trustee attempts to satisfy his pleading

obligation solely by incorporating the entirety of his Amended Complaint in another adversary

proceeding—the Fairfield Amended Complaint.  That flouts the Federal Rules, including Rule

8's requirement to set forth a short and plain statement of the claim.  *See* Mem. 25–27.

Far from authorizing this tactic, *American Casein Co. v. Geiger (In re Geiger)*, 446 B.R.

670 (Bankr. E.D. Pa. 2010), which the Trustee relies on, *see* Opp. 20, confirms its impropriety.

In *Geiger*, plaintiffs purported to incorporate into their complaint an entire separate 52-page

pleading, and the court dismissed the complaint for failure "to satisfy the pleading requirement

of Rule 8" because "it neither sets forth a short and plain statement of the claim, nor is each

allegation simple, concise, and direct."  *Id.* at 679.  The court explained that this approach

"leaves the reader—the Defendant and the Court—to sift through many pages of attached

material trying to figure out which fact goes with which allegation," while the Complaint itself

was entirely "conclusory and, therefore, wholly insufficient."  *Id.* at 680.

If anything, this is an even stronger case than *Geiger*: in contrast to the 52-page pleading

in *Geiger*, the purportedly incorporated pleading here comprises 217 pages and 798 paragraphs,

plus 111 exhibits.  And as in *Geiger* and *United States v. International Longshoremen's Ass'n*,

518 F. Supp. 2d 422 (E.D.N.Y. 2007) ("*ILA*"),[11] the incorporated pleading is replete with

extraneous allegations, further burdening defendants with "select[ing] the material from the mass

of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Pleading by such

blunderbuss incorporation is in "blatant violation of Rule 8(a)(2)'s direction that a civil plaintiff

provide a 'short and plain statement of the claim.'" *ILA*, 518 F. Supp. 2d at 463.[12]

Finally, the Trustee argues that the Eurizon Defendants' "burden is minimal" because he

"only incorporates the Fairfield Amended Complaint—as part of one paragraph" and Defendants

"can respond [to that paragraph] under the Rules like any other paragraph." Opp. 23. But the

Trustee misses the point. By refusing to identify which of the 798 paragraphs in the extraneous

pleading relate to avoidability (and require a response), the Eurizon Defendants are left to guess

at this information, which it is not the Eurizon Defendants' burden to do. Rather, Rule 8(a)

requires *the Trustee* to provide a short and plain statement of his claim, which he has not.

---

[11] The Trustee strains to distinguish *ILA* and the Eurizon Defendants' other cited cases as inapposite because they were cases of incorporation "in an attempt to add new claims." Opp. 21. That is incorrect. For example, the *ILA* court rejected the Government's attempt to allege "necessary elements of its RICO claim by incorporating factual allegations contained in several prior lengthy criminal and civil RICO pleadings" as a violation of Rule 8(a). *ILA*, 518 F. Supp. 2d at 463 (emphasis added). The cited case law makes clear that "wholesale" incorporation of pleadings is improper because it "makes it impossible to ascertain precisely which previously asserted facts are being realleged and for what purpose." *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, 2010 WL 1257803, at *4 (E.D.N.Y. Mar. 26, 2010). *See* Mem. 25–26 & n.17.

[12] The Trustee contends that the District Court has already upheld his incorporation of the Fairfield Amended Complaint, citing *SIPC v. Bernard L. Madoff Investment Securities LLC (In re Madoff Securities)*, 501 B.R. 26 (S.D.N.Y. 2013). *See* Opp. 19–20. But that decision did not address the propriety of the Trustee's incorporation under the Federal Rules. Instead, Judge Rakoff addressed whether the Trustee could recover a subsequent transfer without first having obtained a judgment against the initial transferee that avoided the initial transfer. *See In re Madoff Securities*, 501 B.R. at 37. The Trustee also argues that the Court may take judicial notice of the Second Amended Complaint ("SAC") in *Fairfield Investment Fund* and its decision in that case. *See* Opp. 24. But he has not purported to incorporate the SAC, and this Court's decision in *Fairfield Investment Fund* did not address whether the Trustee's wholesale incorporation of an earlier and superseded pleading comports with Rules 8(a) and/or 10(c).

### III. THE TRUSTEE'S CLAIMS MUST BE DISMISSED FOR FAILURE TO ADEQUATELY PLEAD THAT THE EURIZON DEFENDANTS ARE SUBSEQUENT TRANSFEREES OF CUSTOMER PROPERTY

The Complaint should be independently dismissed because it fails to plausibly allege that the Eurizon Defendants are subsequent transferees of customer property—i.e., it pleads no facts that plausibly "tie any initial transfer to any subsequent transfer or Subsequent Transferee." *Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015); *see also* Mem. 28–35. Instead, the Trustee simply lists alleged initial and subsequent transfers and makes the bare, conclusory assertion that the entries in the two lists are sufficiently connected to each. That approach falls far short of "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Indeed, the very cases cited by the Trustee—including from other adversary proceedings he has commenced—disprove his position by exemplifying the types of allegations that plausibly tie initial and subsequent transfers at the pleading stage. For example, in *45 John Lofts, LLC v. Meridian Capital Group LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730 (Bankr. S.D.N.Y. 2019), the plaintiff sought to recover subsequent transfers where payments totaling $29.4 million were deposited into an account and $29.4 million was withdrawn the very next business day. *Id.* at 736–37, 747.[13] Such factual allegations are entirely lacking here.[14]

---

[13] *See also Merkin*, 515 B.R. at 150 ("[S]everal subsequent transfers took place contemporaneously or shortly after an initial transfer . . . , implying linkage."); *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317, 341 (Bankr. S.D.N.Y. 2011) (pleading of subsequent transfers held sufficient where they "correspond[ed] to" initial transfers from BLMIS); *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib. Inc.)*, 379 B.R. 5, 13, 30 (Bankr. E.D.N.Y. 2007) (alleged subsequent transfers "were preceded by fraudulent transfers" from debtor "in amounts sufficient to cover the [subsequent] transfers," all within 13 days).

[14] Requiring the Trustee to plead facts alleging some "linkage," *Merkin*, 515 B.R. at 150, does not mandate a "tracing analysis" or "dollar-for-dollar accounting" as the Trustee asserts. *See* Opp. 25–26. Rather, it merely requires pleading facts that, if proved, would link initial transfers to subsequent transfers—something the Trustee himself has clearly been able to do in other actions, but has not done and cannot do here.

To the contrary, the factual allegations demonstrate the *implausibility* of the Trustee's claim. The Trustee implausibly seeks to recover *$2 billion* more in subsequent transfers than the sum of all alleged BLMIS-to-Fairfield Sentry initial transfers. *See* Mem. 29–30. The Trustee tries to justify this overreach because he "'can recover from any combination of [transferees]' up to the amount avoided." Opp. 31 (citing *Helms v. Metro. Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019), *aff'd*, 633 B.R. 332 (N.D. Ill. 2021)). But the only subsequent transferees from whom potentially duplicate recoveries may be obtained—i.e., the "immediate or mediate transferee[s] of [an] initial transferee," to which Section 550(a)(2) refers—are those "who take[] in a later transfer down the chain of title or possession." *Helms*, 601 B.R. at 656. Here, the Trustee does not seek recovery from a series of transferees in a single "chain of title or possession." Instead, he sues to recover various amounts from many defendants in dozens of *different* alleged chains of title or possession, asserting—without alleging facts plausibly supporting the assertion—that *all* the funds they received constitute subsequent transfers of customer property. And he persists in doing so even though the total he seeks exceeds by approximately $2 billion the sum of the initial transfers. Not surprisingly, the Trustee cites no precedent for proceeding in this manner.

In response, the Trustee deems it sufficient that he "outlin[ed] the relevant pathways through which such stolen customer property was transferred from BLMIS to Sentry and subsequently to the Eurizon Defendants," together with the "vital statistics" of the alleged subsequent transfers. Opp. 26. But that mischaracterizes the Complaint and its exhibits, which reveal his "pathways" to be dead ends. For example, for two of the alleged subsequent transfers—involving approximately 91% of the amount at issue—there are gaps of approximately *14 to 20 months* between the most recent alleged initial BLMIS-to-Fairfield

17

Sentry transfer and the next transfer to a Eurizon Defendant, *see* Mem. 30–31, negating any plausible inference of "linkage."[15]  Moreover, all three of the alleged transfers to the Eurizon Defendants occurred at times when, according to the Trustee's own pleadings, *Fairfield Sentry held no BLMIS-sourced funds*, *see* Mem. 32–34, making it impossible for the funds to have come from BLMIS.  Finally, Fairfield Sentry concededly paid redeeming investors with funds from subscribing investors, rather than BLMIS.  *See* Mem. 29.  The Trustee calls this a "commingling" argument, Opp. 28, but his pleadings establish long periods in which no commingling occurred—and the requisite linkage cannot be made—because no customer property remained at Fairfield Sentry; it had already been paid out.[16]

Finally, the Trustee invokes an alleged information deficit as an excuse for not pleading facts plausibly showing that the Eurizon Defendants received customer property.  *See* Opp. 30–31.  But he does not deny that ever since his 2011 Fairfield Settlement Agreement, he has had full access to the Fairfield Liquidators' "documents, data and other information relating to, or beneficial to the pursuit of" claims in which the Trustee and the Liquidators agreed to cooperate and share proceeds—including this action.  Mem. 6.  He coyly denies "hav[ing] *all* of Fairfield Sentry's books and records," Opp. 30 n.18 (emphasis added), without disclosing which books and records he has, which (if any) he is missing and why, what (if anything) he has done to

---

[15] In comparison, the cases the Trustee cites involved subsequent transfers that occurred much closer in time to the initial transfer.

[16] For example, the Trustee alleges that: on July 11 and July 22, 2003, BLMIS transferred a total of $80 million to Fairfield Sentry; the next such transfer (of $175 million) did not occur until April 1, 2005; and from July 16, 2003 through September 17, 2003, Fairfield Sentry transferred more than $133 million to redeeming investors.  *See* Mem. 33.  Fairfield Sentry thus held no BLMIS customer property from September 18, 2003 until April 1, 2005.  The Trustee nevertheless seeks to recover here two redemption payments made during that period.  The Trustee also accuses the Eurizon Defendants of "applying their own undisclosed tracing methodology," Opp. 29, but the Eurizon Defendants presented only basic arithmetic calculations—i.e., adding all the BLMIS-to-Fairfield Sentry transfers and subtracting redemptions by Fairfield Sentry investors—performed on data the Trustee provided in his pleadings.  That is plainly not improper.

access any missing books and records, or whether (and how) any gaps would justify his pleading failures.[17]  The Trustee's suggestion that the Eurizon Defendants "also no doubt have records they can provide on these same transactions," *id.*, and his claimed "entitle[ment] to discovery regarding the above-referenced transactions by and between Fairfield Sentry and the Eurizon Defendants," *id.* at 30, are non sequiturs.  Fairfield Sentry's records, to which the Trustee has had contractual access for over a decade, together with BLMIS's own records, would show whether Fairfield Sentry's redemption payments contained customer property; there is no reason to suppose that the Eurizon Defendants' records would show that, and the Trustee provides none. The Trustee has not justified the Complaint's deficiencies.  It should be dismissed.

## **CONCLUSION**

For the foregoing reasons and those set forth in the Eurizon Defendants' moving papers, the Court should dismiss the Complaint in its entirety.

Dated: July 14, 2022                  Respectfully Submitted,
      New York, New York

                                 DAVIS POLK & WARDWELL LLP

                                 By:   */s/ Andrew Ditchfield*
                                 Elliot Moskowitz
                                 Andrew Ditchfield
                                 450 Lexington Avenue
                                 New York, New York 10017
                                 Tel: (212) 450-4000
                                 Fax: (212) 701-5800
                                 elliot.moskowitz@davispolk.com
                                 andrew.ditchfield@davispolk.com

                                 *Attorneys for the Eurizon Defendants*

---

[17] Although the Trustee fails to acknowledge it, the Liquidators admitted in 2010 that they possessed most of the Fairfield Funds' books and records.  *See* Decl. of Kenneth Krys, *In re Fairfield Sentry Ltd.*, No. 10-13164, ECF No. 40 ¶¶ 15, 19 (Bankr. S.D.N.Y. July 16, 2010).