# ATTACHMENT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br>　　　　　Plaintiff-Applicant,<br>v.<br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br>　　　　　Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br>BERNARD L. MADOFF,<br>　　　　　Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br>　　　　　Plaintiff,<br>v.<br><br>THE ESTATE OF ROBERT SHERVYN SAVIN, and BARBARA L. SAVIN, in her capacity as Personal Representative of the Estate of Robert Shervyn Savin,<br>　　　　　Defendants. | Adv. Pro. No. 10-04889 (SMB) |

**EXPERT REPORT OF**
**LISA M. COLLURA, CPA, CFE, CFF**

**Proof of Transfers**
**To the Savin Defendants**

**June 5, 2019**

## TABLE OF CONTENTS

I. PROFESSIONAL BACKGROUND ................................................................................................2

II. SCOPE OF ASSIGNMENT........................................................................................................2

III. METHODOLOGY....................................................................................................................4

IV. SUMMARY OF FINDINGS .....................................................................................................5

V. RECONCILIATION OF CASH TRANSACTIONS FOR THE ROBERT SAVIN ACCOUNT .............6

    A.    OVERVIEW    6
    B.    BLMIS BANK ACCOUNTS    6
    C.    BLMIS CUSTOMER FILES    7
    D.    DOCUMENTS RECEIVED BY THE TRUSTEE RELATED TO THE ROBERT SAVIN ACCOUNT    8
    E.    RESULTS OF RECONCILIATION    9

VI. TRACING CASH WITHDRAWALS FROM THE ROBERT SAVIN ACCOUNT ...............................9

    A.    OVERVIEW    9
    B.    RESULTS OF TRACING    10

VII. SIGNATURE AND RIGHT TO MODIFY................................................................................11

VIII. LIST OF EXHIBITS..............................................................................................................12

## I. PROFESSIONAL BACKGROUND

1. I am a Senior Managing Director in the Forensic and Litigation Consulting practice of FTI Consulting, Inc. ("FTI"), with 25 years of experience in accounting, auditing and litigation consulting services. I specialize in providing forensic accounting and financial fraud investigative services in connection with internal investigations on behalf of trustees, boards of directors and audit committees of companies.

2. I have extensive experience in conducting large-scale, fact-finding investigations into fraudulent financial transactions, including tracing significant flows of funds between accounts and entities. During my career at FTI, I have assisted in the investigation of several of the largest fraud cases in the United States.

3. I am a Certified Public Accountant (CPA), a Certified Fraud Examiner (CFE), a member of the American Institute of Certified Public Accountants (AICPA), and am Certified in Financial Forensics (CFF) by the AICPA. My curriculum vitae, attached as **Exhibit 1** to this report, further describes my professional credentials, experience, and qualifications, including my testimony in the last four years.

## II. SCOPE OF ASSIGNMENT

4. Bernard L. Madoff Investment Securities LLC ("BLMIS") was an investment firm owned and operated by Bernard L. Madoff ("Madoff"). On December 11, 2008, Madoff was arrested for violating multiple securities laws in connection with running a Ponzi scheme through the investment advisory business of BLMIS (the "IA Business"). On December 15, 2008, Irving H. Picard was appointed as the Trustee for the liquidation of the business of BLMIS, and Baker & Hostetler LLP was retained as his counsel. Shortly thereafter, FTI was retained by Baker & Hostetler LLP, on behalf of the Trustee, to analyze, among other things, the financial affairs of BLMIS and to assist the Trustee with the liquidation of BLMIS. As part of our engagement, FTI was tasked with the exercise of reconstructing the books and records of

BLMIS, including all records of the cash transactions related to the BLMIS IA Business customer accounts as far back as the records allow.

5.  This report should be read in conjunction with my Expert Report regarding the Reconciliation of Cash Transactions for All BLMIS Customers and Analysis of IA Business Cash Activity dated January 16, 2019 (the "Collura January 2019 Report").[1]

6.  For this report, I was specifically tasked with performing forensic analyses to determine the following:

- Whether the cash deposit and withdrawal transactions reflected on the customer statements for the Savin Defendants'[2] customer account at BLMIS that is at issue in this matter (the "Robert Savin Account"[3]) reconciled to available documentation;

- Whether, based on my review of available bank records, the cash withdrawals (*i.e.*, transfers from BLMIS) reflected on the customer statements for the Robert Savin Account during the period between and including December 11, 2006 and December 11, 2008 (the "Two Year Period") could be traced to bank accounts held by, or for the benefit of, the Savin Defendants.

7.  For purposes of this report, I use the term "reconciled" to indicate when I have matched, agreed and/or determined consistency between cash deposits and withdrawals reflected on BLMIS customer statements to information or data per another source (*e.g.*,

---

[1] My findings and conclusions rendered in the Collura January 2019 Report, along with the accompanying Exhibits to that report are all incorporated by reference herein. All capitalized terms that are defined in the Collura January 2019 Report shall have the same meaning in this report.

[2] The defendants in this matter are the Estate of Robert Shervyn Savin and Barbara L. Savin (collectively, the "Savin Defendants"). The original defendant in this adversary proceeding, Robert S. Savin, died on December 18, 2014. The Estate of Robert Shervyn and Barbara L. Savin, in her capacity as personal representative of the Estate of Robert Shervyn Savin, were substituted in place of Robert S. Savin on January 13, 2017.

[3] The Savin Defendants maintained BLMIS customer account 1S0412 under the name "ROBERT S SAVIN."

3

amounts on BLMIS bank records, correspondence between the customer and BLMIS regarding incoming deposits and/or requests for withdrawals, or documents received by the Trustee related to the Robert Savin Account). For purposes of this report, I use the term "traced" to indicate when I have followed the flow of funds from one bank account (*e.g.*, BLMIS's bank account) to another bank account (*e.g.*, the Savin Defendants' bank account).

8. This report has been prepared in connection with the above-captioned litigation and is to be used only for the specific purposes of this lawsuit. It is not to be used for any other purpose without the express written consent of FTI. If called upon to testify in this matter, I intend to provide testimony regarding my analyses and conclusions consistent with this report.

9. FTI is being compensated at a rate of $670 per hour for my professional time incurred in performing the work necessary to prepare this report. FTI's fees are not contingent on the conclusions reached in this report or the outcome of the above-captioned litigation.

### III. METHODOLOGY

10. To determine whether the cash transactions reflected on the customer statements for the Robert Savin Account reconciled to available documentation, I used the results of the forensic analysis of the available BLMIS bank records as described in the Collura January 2019 Report. In addition, I reviewed and analyzed other documents and records maintained at BLMIS, including documents contained in BLMIS customer files, as well as documents received by the Trustee related to the Robert Savin Account. Based on my review and analysis of these materials, I identified the cash transactions related to the Robert Savin Account that reconciled to these documents.

11. Next, to determine whether the cash withdrawals reflected on the customer statements for the Robert Savin Account during the Two Year Period could be traced to bank accounts held by, or for the benefit of, the Savin Defendants, I again used the available information from BLMIS bank records. In addition, I reviewed bank records produced to the Trustee by third-party financial institutions related to bank accounts held by Robert S. Savin

4

and defendant Barbara L. Savin. Using these available bank records, I identified the recipients of the transfers from BLMIS.

12.  The documents and data that I considered in connection with this report are listed in **Exhibit 2**. I reserve the right to supplement my report based on any additional documents or information received.

### IV. SUMMARY OF FINDINGS

13.  Based on the forensic analyses performed, as described above and throughout this report, as well as my skills, knowledge, experience, education and training that I applied to the documents and information available to me as of the date of this report, my findings are summarized as follows:

- For my reconciliation analysis, I analyzed the cash transactions in the Robert Savin Account from March 2000 to December 2008. During this time period, the customer statements for the Robert Savin Account reflected 90 cash deposit and withdrawal transactions. I reconciled 100% of the 90 cash transactions reflected on the customer statements for the Robert Savin Account to available BLMIS bank records, documentation contained in BLMIS customer files, and/or documents received by the Trustee related to the Robert Savin Account. In addition, based on my review of documents contained in the customer files maintained at BLMIS for the Robert Savin Account, I have not found any instance of the Savin Defendants or Robert S. Savin communicating to BLMIS any disagreement with respect to the accuracy of any cash transaction reflected on the customer statements for the Robert Savin Account.

- For my tracing analysis, I analyzed the cash withdrawals from the Robert Savin Account during the Two Year Period, totaling $450,500. Based on available bank records from BLMIS and records produced to the Trustee by a third-party financial institution, JPMorgan Chase Bank, N.A., and by the Savin Defendants, I traced 100% of the total amount of cash withdrawals reflected on the customer statements for the

5

Robert Savin Account during the Two Year Period to bank accounts held by defendant Barbara L. Savin and/or Robert S. Savin.

**V. RECONCILIATION OF CASH TRANSACTIONS FOR THE ROBERT SAVIN ACCOUNT**

*A. OVERVIEW*

14.     The chronological listings of all cash and principal transactions for every BLMIS customer account compiled by FTI, as described in the Principal Balance Calculation Report, included the cash transactions for the Robert Savin Account. From March 2000 to December 2008, the customer statements for the Robert Savin Account reflected 90 cash transactions, which consisted of four cash deposits into the Robert Savin Account totaling $1,633,462 and 86 cash withdrawals from the Robert Savin Account totaling $2,166,500.[4] I was tasked with reconciling these 90 cash transactions to available BLMIS bank records, documents contained in BLMIS customer files, and/or documents received by the Trustee related to the Robert Savin Account. *See* **Exhibit 3** for a list of these cash deposit and withdrawal transactions; *see also* **Exhibit 6** – "Reconciliation and Tracing Results – Robert Savin Account."

*B. BLMIS BANK ACCOUNTS*

15.     All 90 cash transactions reflected on the customer statements for the Robert Savin Account occurred in the ten-year period for which there were available bank records for the three BLMIS bank accounts described in the Collura January 2019 Report. I reconciled 89 of the

---

[4] The BLMIS Checkbook File reflected a cash withdrawal via check from the Robert Savin Account for $20,000 dated 12/10/2008. Based on my review of documents related to the activity in the 703 Account and the 509 Account during December 2008, this check was not funded and is therefore excluded from the total amount of withdrawals.

6

90 cash transactions reflected on the customer statements for the Robert Savin Account during the period December 1998 to December 2008 to available BLMIS bank records, including monthly bank statements, copies of deposited checks and deposit slips, and copies of cancelled checks. The 89 cash transactions were reconciled to the BLMIS bank accounts as follows:

- 703 Account – four transactions (three deposits via wire and one deposit via check)
- 509 Account – 85 transactions (withdrawals via check)

16. The remaining transaction, which occurred during the time period for which BLMIS bank records were available, could not be reconciled because the cancelled check related to the cash withdrawal transaction from the Robert Savin Account could not be located.[5] Based on the results of my reconciliation, I can reasonably infer that had a copy of this cancelled check been available, I could have completed my reconciliation of the cash transactions recorded in the Robert Savin Account.

C. <u>BLMIS CUSTOMER FILES</u>

17. In addition to reconciling the cash deposit and withdrawal transactions for the Robert Savin Account to the available BLMIS bank records as described above, I also reviewed customer files from BLMIS's records to identify correspondence related to the cash transactions reflected on the customer statements for the Robert Savin Account.

---

[5] *See* **Exhibit 3** (transaction dated 9/23/2002). As discussed further in the next section of this report and as shown on **Exhibit 3**, this cash withdrawal transaction was reconciled to documents contained in the BLMIS customer file related to the Robert Savin Account, as well as documents received by the Trustee related to the Robert Savin Account.

7

18. Customer files related to customer accounts were maintained in BLMIS's records and were generally organized by BLMIS account number. These customer files contained documents including, but not limited to, correspondence between the customer and BLMIS employees regarding incoming deposits and/or requests for withdrawals, customer contact information, BLMIS customer agreements, as well as trust and other agreements.

19. As part of my analysis, I identified the customer file for the Robert Savin Account within BLMIS's records. I reviewed the documents contained in this customer file to identify correspondence that related to the cash transactions reflected on the customer statements for the Robert Savin Account. I identified letters and/or other correspondence in this customer file that support 86 of the 90 cash transactions in the Robert Savin Account. One of these letters, which is a request for a cash withdrawal from the Robert Savin Account, is attached as **Exhibit 4** and is described further below:

- In a facsimile dated July 22, 2008, Robert S. Savin requests, "Please send me a check in the amount of 10,000.00 ten thousand . . . from my account 1-S0412-3."

20. Furthermore, based on my review of the documents contained in the customer file for the Robert Savin Account, I have not found any instance of the Savin Defendants or Robert S. Savin communicating to BLMIS any disagreement with respect to the accuracy of any cash transaction reflected on the customer statements for the Robert Savin Account.

D. *DOCUMENTS RECEIVED BY THE TRUSTEE RELATED TO THE ROBERT SAVIN ACCOUNT*

21. A claim was filed with the Trustee related to the Robert Savin Account, which included, among other things, a schedule of deposits and withdrawals related to the cash

8

transactions in the Robert Savin Account.[6] In addition, defendant Barbara L. Savin has produced to the Trustee documents consisting of, among other things, a copy of a deposited check related to a cash deposit transaction in the Robert Savin Account.

22.     I reconciled 73 of the 90 cash transactions reflected on the customer statements for the Robert Savin Account to these documents received by the Trustee.

E.  *RESULTS OF RECONCILIATION*

23.     In total, based on my analyses described above, I reconciled 100% of the 90 cash transactions reflected on the customer statements for the Robert Savin Account to available BLMIS bank records, documentation contained in BLMIS customer files, and/or documents received by the Trustee related to the Robert Savin Account. **Exhibit 3**, which lists each of the 90 cash transactions for the Robert Savin Account, contains three columns that indicate the results of my reconciliation to each of these sources of information.

24.     In addition, as noted above, I have not found any instance of the Savin Defendants or Robert S. Savin communicating to BLMIS any disagreement with respect to the accuracy of any cash transaction reflected on the customer statements for the Robert Savin Account.

**VI. TRACING CASH WITHDRAWALS FROM THE ROBERT SAVIN ACCOUNT**

A.  *OVERVIEW*

25.     The available BLMIS bank records, as described in the Collura January 2019 Report, were also used to determine whether I could trace the funds that left BLMIS's bank accounts to

---

[6] The Trustee received two copies of a claim related to the Robert Savin Account. *See* MWPTAP00469932-44 and MWPTAP00585521-32.

9

bank accounts held by, or for the benefit of, the Savin Defendants. To determine this, I performed a "Receiving Bank" analysis, which traces transfers from BLMIS's bank accounts to bank accounts that received funds from BLMIS.

26. During the Two Year Period, the customer statements for the Robert Savin Account reflected 27 cash withdrawal transactions totaling $450,500. These cash withdrawal transactions were in the form of checks written from the 509 Account.

27. Tracing withdrawals via check requires a legible copy of a cancelled check. The necessary information to trace the amount to a receiving bank account, including endorser, banking institution and bank account number, is typically included on the back of a cancelled check. Oftentimes, however, not all of this information was available on the copy of the cancelled check written from the 509 Account and/or the available information was often illegible. In any event, when possible, I identified and captured all available and legible information from the cancelled checks written from the 509 Account related to withdrawals from the Robert Savin Account.

28. In addition, to trace the cash withdrawals from BLMIS, I also reviewed documents related to bank accounts held by Robert S. Savin and defendant Barbara L. Savin that were produced to the Trustee by JPMorgan Chase Bank, N.A.[7]

B. *RESULTS OF TRACING*

29. **Exhibit 5** summarizes the results of my Receiving Bank analysis and my review of bank records produced to the Trustee by JPMorgan Chase Bank, N.A.[8] This exhibit lists the

---

[7] I also reviewed documents produced to the Trustee by Merrill Lynch, Pierce, Fenner & Smith. However, these records related to bank accounts held by Robert S. Savin and defendant Barbara L. Savin that did not receive transfers from BLMIS during the Two Year Period.

10

bank accounts I identified by tracing cash withdrawals from BLMIS during the Two Year Period and supports that 100% of the total dollar amount of withdrawals reflected on the customer statements for the Robert Savin Account during the Two Year Period went to bank accounts held by defendant Barbara L. Savin and/or Robert S. Savin.

## VII. SIGNATURE AND RIGHT TO MODIFY

30. This report and the exhibits contained herein present my findings and the bases thereof. To the extent that any additional information is produced by any party, I reserve the right to incorporate such additional information into my report or to modify my report as necessary.

By:

*Lisa M. Collura*

Lisa M. Collura, CPA, CFE, CFF
June 5, 2019

---

[8] *See also* **Exhibit 6**.

**VIII. LIST OF EXHIBITS**

Exhibit 1:  Curriculum Vitae
Exhibit 2:  Documents Considered
Exhibit 3:  List of All Cash Transactions in the Robert Savin Account
Exhibit 4:  Letter from BLMIS Customer File for the Robert Savin Account
Exhibit 5:  Results of Tracing Analysis – Robert Savin Account *(During the Two Year Period)*
Exhibit 6:  Reconciliation and Tracing Results – Robert Savin Account