**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA Liquidation |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L. MADOFF INVESTMENT SECURITIES LLC, AND BERNARD L. MADOFF, | Adv. Pro. No. 11-02551 (CGM) |
| Plaintiff, | |
| v. | |
| DELTA NATIONAL BANK AND TRUST COMPANY, | |
| Defendant. | |

**DEFENDANT DELTA NATIONAL BANK AND TRUST**
**COMPANY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION TO DISMISS PLAINTIFF IRVING H. PICARD'S COMPLAINT**

July 25, 2022

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT .......................................................................................................................2

I.   **SECTION 546(e)'S SAFE HARBOR APPLIES TO ANY ALLEGED
     INITIAL TRANSFERS THAT WERE SUBSEQUENTLY TRANSFERRED
     TO DELTA BANK.** ...............................................................................................2

    A.   The Alleged Initial Transfers Qualify for the Section 546(e) Safe Harbor. ............3

    B.   Allegations as to Fairfield Sentry's Knowledge Do Not Preclude Delta
     Bank from Relying on the Section 546(e) Safe Harbor. .........................................5

        1.   The Section 546(e) Safe Harbor Serves to Protect Reliance, Not Create a
          Blanket Fraud Exception...........................................................................6

        2.   Delta Bank Relied Upon Its Redemption Requests With Fairfield Sentry,
          Which Provide a Basis for the Safe Harbor Under Section 546(e)..............8

        3.   Delta Bank Should Also Receive Section 546(e) Protection Based on the
          Contract Between BLMIS and Fairfield Sentry..........................................9

II.  **ALTERNATIVELY, THE COMPLAINT FAILS TO STATE A CLAIM
     AGAINST DELTA BANK UNDER SECTION 550.**.............................................10

    A.   The Complaint Does Not Allege that Any Transfers Were Avoided. ....................10

    B.   The Absence of Factual Allegations as to Delta Bank Combined With the
     Allegations as to the Madoff Fraud Establish Delta Bank's Good Faith...............11

    C.   The Trustee's Allegations Could Not Establish that Delta Bank Received
     Customer Property. ...........................................................................................14

III. **THE TRUSTEE'S CLAIM SHOULD BE DISMISSED WITH PREJUDICE.**.........15

CONCLUSION...................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Direct Access Partners, LLC*,
  602 B.R. 495 (Bankr. S.D.N.Y. 2019) ........................................................................................11

*In re JVJ Pharmacy, Inc.*,
  630 B.R. 388 (S.D.N.Y. 2021) .................................................................................................11

*Picard* v. *ABN AMRO Bank (Ireland) Ltd.*,
  2022 WL 1304589 (S.D.N.Y. May 2, 2022) ...........................................................................13

*Picard* v. *ABN AMRO Bank N.A.*,
  2020 WL 1584491 (Bankr. S.D.N.Y. Mar. 31, 2020) .............................................................12

*Picard* v. *Avellino*,
  557 B.R. 89 (Bankr. S.D.N.Y. 2016) ..........................................................................................6

*Picard* v. *Banque Syz & Co. SA*,
  2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022)..........................................................2, 11

*Picard* v. *Barclays Bank (Suisse) S.A.*,
  2022 WL 2799924 (Bankr. S.D.N.Y. July 15, 2022) .................................................................2

*Picard* v. *Ceretti*,
  2015 WL 4734749 (Bankr. S.D.N.Y. Aug. 11, 2015) ................................................................6

*Picard* v. *Citibank, N.A.*,
  12 F.4th 171 (2d Cir. 2021) ................................................................................................10, 14

*Picard* v. *Fairfield Inv. Fund Ltd.*,
  2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ................................................................12

*Picard* v. *Greiff*,
  476 B.R. 715 (S.D.N.Y. 2012).................................................................................................3, 7

*Picard* v. *Ida Fishman Revocable Trust*,
  773 F.3d 411 (2d Cir. 2014)..............................................................................................3, 4, 8

*Picard* v. *Multi-Strategy Fund Ltd.*,
  2022 WL 2137073 (Bankr. S.D.N.Y. June 13, 2022)..................................................... *passim*

*Picard* v. *Shapiro*,
  542 B.R. 100 (Bankr. S.D.N.Y. 2015) ........................................................................................6

*SIPC* v. *Bernard L. Madoff Inv. Sec. LLC*,
    2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)...................................................... *passim*

*In re Tribune Co. Fraudulent Conveyance Litig.*,
    946 F.3d 66 (2d Cir. 2019)................................................................................6

**Statutes**

11 U.S.C. § 101(22) ............................................................................................3

11 U.S.C. § 546(e) ...................................................................................... *passim*

11 U.S.C. § 550................................................................................10, 11, 12

**Other Authorities**

COLLIER ON BANKRUPTCY ¶ 550.03[1] (Richard Levin & Henry J. Sommer
    eds., 16th ed. 2022) ...................................................................................12

Complaint, *Picard* v. *ABN Amro Bank (Ireland) Ltd.*,
    No. 10-05355 (Bankr. S.D.N.Y. Dec. 8, 2010), ECF No. 1 ........................13

Complaint, *Picard* v. *Banque Syz & Co. SA*,
    No. 11-02149 (Bankr. S.D.N.Y. May 20, 2011), ECF No. 1 ......................12

Motion to Dismiss Brief, *Picard* v. *Banque Syz & Co. SA*,
    No. 11-02149 (Bankr. S.D.N.Y. Jan. 28, 2022), ECF No. 150 ..................11

Amended Complaint, *Picard* v. *Multi-Strategy Fund Ltd.*,
    No. 12-01205 (Bankr. S.D.N.Y. Feb. 18, 2022), ECF No. 97....................13

Motion to Dismiss Brief, *Picard* v. *Multi-Strategy Fund Ltd.*,
    No. 12-01205 (Bankr. S.D.N.Y. March 4, 2022), ECF No. 102 .................11

Fed. R. Civ. P. 8 ...............................................................................................10

Defendant Delta National Bank and Trust Company ("Delta Bank") respectfully submits this reply memorandum in further support of its motion to dismiss the Complaint filed by Plaintiff, Irving H. Picard, trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the estate of Bernard L. Madoff.

## PRELIMINARY STATEMENT

The Opposition confirms that the claim against Delta Bank should be dismissed under the Section 546(e) safe harbor with respect to pre-December 2006 transfers. The Trustee's proposed rule that the alleged knowledge of the initial transferee (Fairfield Sentry) with respect to the initial transfers (from BLMIS to Fairfield Sentry) precludes an alleged subsequent transferee's (Delta Bank) reliance on the Section 546(e) safe harbor undercuts the safe harbor's purpose: promoting the ability of innocent parties (such as Delta Bank) to rely on the securities contracts they enter so as to support stable financial markets. Applying Section 546(e) based on the reliance (or lack thereof) of the transferee raising the defense furthers the statutory purpose. By contrast, the Trustee's proposed "actual knowledge exception"—a broad one specifically rejected by the District Court—creates greater market instability. Only transferees who had actual knowledge of fraud are barred from invoking the safe harbor's protections.

The Trustee does not dispute that the alleged initial transfers meet each of the three statutory elements of Section 546(e). Because the Trustee has not alleged that Delta Bank had *any* knowledge of the Madoff fraud, and because Delta Bank relied upon two separate sets of securities contracts that related to the alleged initial transfers at issue in this action, the Trustee cannot avoid or recover alleged transfers beyond the two-year statute of limitations.

Further, for the reasons set forth in Delta Bank's memorandum in support of its motion to dismiss, ECF No. 98 ("Mem."), the Trustee fails to state a claim for recovery under Section 550. First, the Trustee has not avoided initial transfers, which the Second Circuit

unambiguously explained is required to recover subsequent transfers.  Second, Delta Bank's good

faith defense is an affirmative defense that can be established from the face of the Complaint, such

that the Trustee's claim should be dismissed under Section 550(b).  Finally, the Trustee fails to

allege that Delta Bank received customer property because the Complaint did not tie the alleged

subsequent transfers to any alleged initial transfers made to Fairfield Sentry.[1]

## ARGUMENT

I.    **SECTION 546(e)'S SAFE HARBOR APPLIES TO ANY ALLEGED INITIAL TRANSFERS THAT WERE SUBSEQUENTLY TRANSFERRED TO DELTA BANK.**

The Opposition does not refute that the alleged initial transfers satisfy each element

of the Section 546(e) safe harbor.  Instead, the Trustee argues that all subsequent transferees that

received money through Fairfield Sentry cannot seek the safe harbor's protection, regardless of

the specific allegations pled against them or how far removed they are from BLMIS and Fairfield

Sentry's activity.   However, the District Court's *Cohmad* decision distinguishes between

transferees with actual knowledge of the fraud—who are not protected—and transferees who

relied upon what they believed to be valid securities contracts—who are protected.  *SIPC* v.

*Bernard L. Madoff Inv. Sec. LLC*, 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*").

*Cohmad* explains that the safe harbor was designed to promote reliance and stability, neither of

which is aided by making Section 546(e) unavailable to innocent subsequent transferees.  Based

---

[1] Delta Bank recognizes this Court's recent decisions in related BLMIS subsequent transfer proceedings.  *See, e.g.*, *Picard* v. *Banque Syz & Co. SA*, 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022); *Picard* v. *Multi-Strategy Fund Ltd.*, 2022 WL 2137073 (Bankr. S.D.N.Y. June 13, 2022); *Picard* v. *Barclays Bank (Suisse) S.A.*, 2022 WL 2799924 (Bankr. S.D.N.Y. July 15, 2022). Delta Bank continues to argue that its defenses apply in this proceeding for the additional and unique reasons highlighted in this reply brief, as well as for the express purpose of preserving its arguments.

on *Cohmad*'s guidance, the safe harbor applies here to transfers predating December 2006, and the Trustee cannot recover the alleged subsequent transfers prior to that point.[2]

### A.   The Alleged Initial Transfers Qualify for the Section 546(e) Safe Harbor.

Delta Bank established in its motion to dismiss that the alleged initial transfers meet Section 546(e)'s three requirements:  (i) the payments were made by a stockbroker or for the benefit of a financial institution; (ii) there are valid securities contracts; and (iii) the alleged initial transfers were made in connection with securities contracts.  *See* 11 U.S.C. § 546(e).  The Trustee does not contest that the alleged transfers fulfill these requirements, and instead argues that "[n]one of this matters."  ECF No. 100 ("Opp.") at 23.  This is simply not the case.  Section 546(e)'s requirements do matter, and they are plainly satisfied here.

*First*, the alleged initial transfers are both (i) payments from a stockbroker and (ii) payments for the benefit of a financial institution.  The Trustee contests neither that "BLMIS was a 'stockbroker' for the purposes of § 546(e)," *Picard* v. *Ida Fishman Revocable Trust*, 773 F.3d 411, 417 (2d Cir. 2014); *Picard* v. *Greiff*, 476 B.R. 715, 719-20 (S.D.N.Y. 2012), *aff'd*, 773 F.3d 411 (2d Cir. 2014), nor that Delta Bank is a financial institution as defined in the Bankruptcy Code, 11 U.S.C. § 101(22).  The initial transfers alleged here all involved payment from BLMIS.  *See* Compl. ¶¶ 34-37, 39.  And the Trustee alleges that "[a] portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or *for the benefit of*, Defendant Delta Bank."  Compl. ¶ 39 (emphasis added).

*Second*, Delta Bank identified two classes of "securities contracts":  (i) the account agreement between BLMIS and Fairfield Sentry, and (ii) the separate redemption requests by Delta

---

[2] The Trustee incorrectly states that "the majority of the transfers at issue . . . took place well within the two-year period."  Opp. at 23.  The Complaint shows that 35 out of 52 alleged transfers, representing $12,244,735 out of $20,634,958, occurred prior to December 2006.  Compl. Ex. D.

Bank to Fairfield Sentry. In *Cohmad*, Judge Rakoff explained that both the immediate contract between BLMIS and its investors (here, Fairfield Sentry) *and* separate contracts between those investors and third parties (here, Delta Bank) can fit within the statutory definition of "securities contract." 2013 WL 1609154, at *8-9. Specifically, the District Court noted that "the definition of a securities contract is in fact much broader [than account agreements] and includes, inter alia, investment fund *subscription agreements and redemption requests*." *Id.* at *8 (emphasis added). Similarly, in *Fishman*, the Second Circuit endorsed a "broad definition of 'securities contracts'" and observed "that Congress intended § 546(e) to sweep broadly." 773 F.3d at 419.

*Third*, the alleged initial transfers from BLMIS to Fairfield Sentry were made "in connection with" both sets of securities contracts set forth above. The definition of "in connection with" is "broad" and simply means "related to." *Cohmad*, 2013 WL 1609154, at *9. The Second Circuit has instructed that "Section 546(e) sets a low bar for the required relationship between the securities contract and the transfer sought to be avoided." *Fishman*, 773 F.3d at 422. "Congress could have raised the bar by requiring that the transfer be made 'pursuant to,' or 'in accordance with the terms of,' or 'as required by,' the securities contract, but it did not. Instead, Congress merely required that the transfer have a connection to the securities contract." *Id.*

The Trustee does not dispute that the alleged initial transfers were made in connection with a securities contract between BLMIS and Fairfield Sentry, nor could he. Further, the Complaint alleges facts which establish that the initial transfers "relate to" Delta Bank's redemption requests to Fairfield Sentry. Specifically, the Trustee alleges that Delta Bank "received transfers of Customer Property from BLMIS by *withdrawing money* from Fairfield Sentry." Compl. ¶ 6 (emphasis added); *see also* Compl. ¶ 28 ("It was essential for BLMIS to *honor requests for payments* in accordance with the falsely inflated account statements.") (emphasis added);

-4-

Compl. ¶ 39 ("A portion of the Fairfield Sentry Initial Transfers was subsequently transferred either directly or indirectly to, or *for the benefit of*, Defendant Delta Bank.") (emphasis added). Initial transfers made "for the benefit" of a subsequent transferee relate to the contractual rights pursuant to which the subsequent transferee was entitled to expect payment.[3] The allegations in the Complaint show that Delta Bank had the right to expect payment from Fairfield Sentry pursuant to a contractual agreement. The Trustee does not contest that the alleged initial transfers at issue here have their roots in Delta Bank's redemption requests. This nexus surpasses the "low bar" for the relationship between the initial transfer and the securities contract under Section 546(e).

Thus, Delta Bank has shown in its motion to dismiss that the elements of a Section 546(e) safe harbor defense are applicable here beyond dispute *with respect to the initial transfers*.

**B.      Allegations as to Fairfield Sentry's Knowledge Do Not Preclude Delta Bank from Relying on the Section 546(e) Safe Harbor.**

Fairfield Sentry's alleged knowledge of the Madoff fraud does not eliminate the safe harbor for innocent alleged subsequent transferees like Delta Bank. The purpose of Section 546(e) is to reduce disruption in the securities markets by protecting investors who enter into and rely upon securities contracts. To further this purpose, the safe harbor protects only those transferees who believed they entered into a *valid* securities contract (such as Delta Bank), and not those who knew their contract was *invalid* because it sounded in fraud (such as Fairfield Sentry). Because the Trustee has not alleged Delta Bank had *any* knowledge of the fraud, it is entitled to the protection of the safe harbor through two contracts: (i) its redemption requests to Fairfield Sentry, and (ii) the account agreement between BLMIS and Fairfield Sentry.

---

[3] To the extent this Court considers the Fairfield Amended Complaint's allegations, that complaint further alleges that Fairfield Sentry withdrew funds from its BLMIS account "in order to pay [a customer's] redemptions." (*See* Amended Complaint ¶¶ 53, 58, 63, 67, 76, 85, 100, 114, *Picard* v. *Fairfield Sentry Ltd.*, No. 09-01239 (Bankr. S.D.N.Y. July 20, 2010), ECF No. 23 ("FAC").)

    1.    <u>The Section 546(e) Safe Harbor Serves to Protect Reliance, Not Create a Blanket Fraud Exception.</u>

The purpose of Section 546(e), as explained by both the District Court and the Second Circuit, is promoting reliance on valid financial contracts. *See Cohmad*, 2013 WL 1609154, at \*4 ("[T]he purpose of this section is minimiz[ing] the displacement caused in the commodities and securities market in the event of a major bankruptcy affecting those industries." (internal quotation omitted)); *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 94 (2d Cir. 2019) ("Section 546(e) is in full conflict with the goal of maximizing the assets available to creditors. Its purpose is to protect a national, heavily regulated market by limiting creditors' rights."). Here, specifically "[i]n the context of Madoff Securities' fraud, that goal is best achieved by protecting the reasonable expectations of investors who believed they were signing a securities contract." *Cohmad*, 2013 WL 1609154, at \*4.

In line with this purpose, transferees who had actual knowledge of fraud cannot claim to have relied on a valid securities contract, and thus cannot access the safe harbor. In *Cohmad*, the District Court explained that "where the Trustee has adequately alleged that these defendants had . . . actual knowledge of Madoff's scheme" then "the fact that these defendants signed account agreements is meaningless for purposes of Section 546(e)" because the parties knew "that the transfers could not have been made in connection with an actual 'securities contract.'" [4] *Id.* at \*3.

_____

[4] Delta Bank agrees that *Cohmad* is controlling, binding precedent, but that case does not undermine its safe harbor defense. The cases cited by the Trustee support that knowledge matters in determining whether a securities contract is valid. *See Picard* v. *Avellino*, 557 B.R. 89, 112 (Bankr. S.D.N.Y. 2016) (explaining that a party with actual knowledge has "no reasonable expectation that he was signing a contract with BLMIS for the purpose of trading securities for his account"); *Picard* v. *Shapiro*, 542 B.R. 100, 112 (Bankr. S.D.N.Y. 2015) (same); *Picard* v. *Ceretti*, 2015 WL 4734749, at \*12 (Bankr. S.D.N.Y. Aug. 11, 2015) (same). The Trustee does not allege that Delta Bank had such knowledge.

Contrary to the Trustee's argument, there is no blanket "exception" to Section 546(e)'s safe harbor based on the alleged "actual knowledge" of an initial transferee. In *Cohmad*, the District Court "reaffirm[ed] its determination that there is no Ponzi scheme or fraud 'exception' to Section 546(e)." 2013 WL 1609154, at *3 (rejecting again "the Trustee's previously-rejected argument in favor of a 'fraud' exception to Section 546(e)"). Such an exception "cannot survive the broad and literal interpretation" of Section 546(e). *Id*. (quoting *Greiff*, 476 B.R. at 721). Therefore, alleging that an initial transferee had knowledge of the fraud does not end the analysis with respect to whether the safe harbor applies in an action against a different transferee.

*Cohmad* directs courts to consider the *knowledge of the party seeking the protection* of Section 546(e). On a motion to dismiss, "if the allegations adequately allege *that a defendant* had actual knowledge of Madoff's scheme, *such a transferee stands in a different posture from an innocent transferee*, even as concerns the application of Section 546(e)." *Id.* at *4 (emphasis added). The structure of Judge Rakoff's opinion is instructive; he describes what a trustee must allege to bring an initial transfer outside the safe harbor, and then conducts separate analyses as to initial and subsequent transferees: "[T]he Trustee must show, at a minimum, that *the transferee* had actual knowledge that there were no actual securities transactions being conducted. Applying these principles, *the Court first turns to the initial transferees and then to subsequent transferees*." *Id.* at *4-5. In its opinion, the District Court described any "exception" to Section 546(e) by reference to the knowledge of the defendant asserting the safe harbor (and only that defendant).

Under the Trustee's proposed interpretation, Opp. at 27-29, *any* subsequent transferee that received money through Fairfield Sentry, including investors several (and potentially, many) steps removed from BLMIS's fraud, is unable to rely on what they understood to be a valid securities contract. They would potentially be forced to undergo discovery

-7-

notwithstanding zero allegations as to their knowledge of or involvement in fraud. The logical

conclusion of the Trustee's argument cannot be reconciled with the purpose of Section 546(e),

including as expressly described by the District Court and the Second Circuit.[5] *See Cohmad*, 2013

WL 1609154, at *4, 7 (thrice referencing "innocent" transferees and customers as distinct from

those alleged to have known about the fraud).

The Trustee's previous attempts to restrict the safe harbor's applicability were

rejected as inconsistent with Section 546(e)'s purpose. *See Fishman*, 773 F.3d at 418-23 (rejecting

the Trustee's argument that Section 546(e) does not apply to the BLMIS liquidation *at all* because

such a restriction "risks the very sort of significant market disruption that Congress was concerned

with"). The same result should obtain here.

2.  Delta Bank Relied Upon Its Redemption Requests With Fairfield Sentry, Which Provide a Basis for the Safe Harbor Under Section 546(e).

Delta Bank's reliance upon its securities contracts with Fairfield Sentry (*i.e.*,

redemption requests) is a basis for dismissing the Trustee's claim against Delta Bank with respect

to alleged pre-December 2006 transfers. The District Court in *Cohmad* expressly contemplated

the situation where, as here, a subsequent transferee raises a Section 546(e) defense based on its

own redemption requests. *Cohmad*, 2013 WL 1609154, at *8-9. The District Court described a

feeder fund's withdrawal of funds from its BLMIS customer account in response to a redemption

request from an investor as a "situation [that] appears to fit within the plain terms of Section

546(e)." *Id.*

---

[5] Delta Bank's interpretation of *Cohmad* does not "provide[] a subsequent transferee with more rights than an initial transferee." Opp. at 28. The Trustee provides no explanation or reasoning in support of this conclusory assertion. Instead, the distinction is between an innocent transferee (Delta Bank) and one with knowledge of fraud (Fairfield Sentry).

08-01789-cgm   Doc 22028   Filed 07/25/22   Entered 07/25/22 17:32:43   Main Document
Pg 13 of 19

The Trustee dismisses the District Court's specific guidance that redemption requests fall within Section 546(e) as "dicta," and offers only that the safe harbor's "focus . . . is still on the *initial* transfers." Opp. at 26. Delta Bank agrees that the analysis relates to initial transfers, but the alleged initial transfers here were still made in connection with the redemption requests. *See supra* pp. 4-5. *Cohmad* held that "to the extent that a defendant claims protection under Section 546(e) *under a separate securities contract* as a financial participant or financial institution, *the Bankruptcy Court must adjudicate those claims* in the first instance consistent with this opinion." *Cohmad*, 2013 WL 1609154, at *10 (emphasis added); *see also Multi-Strategy*, 2022 WL 2137073, at *9 (quoting the same language). Notwithstanding the Trustee's attempts to minimize the impact of *Cohmad*, this key holding is not "dicta." The redemption requests plainly qualify as securities contracts related to the alleged initial transfers, and there is no factual dispute as to whether Delta Bank relied on them.[6]

3.      Delta Bank Should Also Receive Section 546(e) Protection Based on the Contract Between BLMIS and Fairfield Sentry.

The safe harbor also applies based on the initial contract between BLMIS and Fairfield Sentry. The Trustee does not dispute that the account agreements between BLMIS and Fairfield Sentry meet each of the statutory elements of Section 546(e). And because Delta Bank is not alleged to have had any knowledge that these account agreements were fraudulent, these agreements also support the safe harbor in this action. The Trustee urges the Court to view a subsequent transferee's knowledge as a one way street, where a subsequent transferee's knowledge of the fraud can eviscerate the safe harbor, but the same transferee's lack of knowledge cannot

---

[6] The other cases cited by the Trustee, *see* Opp. at 24 n.7 (collecting cases) are inapposite because they did not discuss whether Section 546(e)'s safe harbor was available to a subsequent transferee based upon a separate securities contract to which BLMIS was not a party.

-9-

support it.  Nothing in *Cohmad* stands for this proposition.  In fact, it stands for the opposite. *Cohmad*, 2013 WL 1609154, at *7, 8-9.  *Cohmad* did not proclaim a uniform rule that alleged knowledge of an initial transferee foreclosed every subsequent transferee from relying on the safe harbor.

\*   \*   \*

Each of the Section 546(e) safe harbor requirements is satisfied here, and the statutory purpose is furthered by protecting Delta Bank's reliance on its securities contracts.  As such, the Trustee may not recover any alleged transfers outside of the two-year limitations period.

## II.   ALTERNATIVELY, THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DELTA BANK UNDER SECTION 550.

The complete lack of allegations about Delta Bank makes this Complaint an outlier among cases against subsequent transferee defendants in the broader BLMIS liquidation.  For the reasons set forth in Delta Bank's motion to dismiss, the Trustee has failed to state a claim for recovery under Section 550.[7]

### A.   The Complaint Does Not Allege that Any Transfers Were Avoided.

The Court should dismiss the Trustee's claim because he has not alleged that the initial transfers from BLMIS to Fairfield Sentry were avoided.  The Trustee's collection of older decisions and recent decisions by this Court addressing other issues is insufficient to overcome the Second Circuit's express reading of Section 550 in August 2021: "[B]efore Picard can recover the funds from Appellees, *he must first avoid* BLMIS's transfers to Appellees."  *Picard* v. *Citibank, N.A.*, 12 F.4th 171, 181 (2d Cir. 2021) (emphasis added).

---

[7] Delta Bank also reiterates its arguments that incorporation of the FAC is improper and that this pleading method violates Rule 8, *see* Mem. at 7-9, to preclude inference of waiver or abandonment.

Whereas the Trustee asserts that "existing case law is clear" and that "nearly every court" has been consistent, Opp. at 10-11, he relies on cases predating *Citibank* as proof positive that the Second Circuit did not mean what it said.[8]    But Delta Bank identified in its motion to dismiss multiple cases using the same unambiguous language as the Second Circuit.  *See* Mem. at 10-11; *In re JVJ Pharmacy, Inc.*, 630 B.R. 388, 401 (S.D.N.Y. 2021) ("[T]he Transfers must be avoided under section 548(a)(1) before the Trustee can invoke section 550 to seek recovery."); *In re Direct Access Partners, LLC*, 602 B.R. 495, 518 (Bankr. S.D.N.Y. 2019) ("[S]ection 550 makes clear that a trustee may only recover transfers from subsequent transferees if the initial transfer itself 'is avoided.'").  The Trustee cannot distinguish the Second Circuit's instruction.  His claim should be dismissed because he has not alleged that the initial transfers were avoided here.

**B.    The Absence of Factual Allegations as to Delta Bank Combined With the Allegations as to the Madoff Fraud Establish Delta Bank's Good Faith.**

The threadbare nature of the Complaint against Delta Bank makes this case different from those against other subsequent transferees.  The parties agree as to the question before the Court—whether the allegations included in the Complaint establish beyond dispute Delta Bank's good faith defense under Section 550.  Three elements are required to establish a subsequent transferee's good faith under Section 550:  (i) taking for value, (ii) in good faith, and (iii) without knowledge of the voidability of the transfers.  11 U.S.C. § 550(b)(1).  The Opposition does not contest any of Delta Bank's arguments as to the specific elements of the defense, and

---

[8] In neither of the cases cited by the Trustee postdating *Citibank*—specifically *Banque Syz*, 2022 WL 2135019 and *Multi-Strategy*, 2022 WL 2137073—did the subsequent transferee raise or the Court reach the argument of whether the Trustee must avoid the initial transfers before proceeding against a subsequent transferee.  Motion to Dismiss Brief at 11, *Banque Syz*, No. 11-02149 (Bankr. S.D.N.Y. Jan. 28, 2022), ECF No. 150; Motion to Dismiss Brief, *Multi-Strategy*, No. 12-01205 (Bankr. S.D.N.Y. March 4, 2022), ECF No. 102.

instead points only to recent decisions by this Court holding that the good faith defense is based

on factual determinations which cannot be resolved on a motion to dismiss. Opp. at 29-30.

However, this is the rare case in which an affirmative defense can be established

based on the face of the Plaintiff's complaint. *See Picard* v. *Fairfield Inv. Fund Ltd.*, 2021 WL

3477479, at *7-8 (Bankr. S.D.N.Y. Aug. 6, 2021) (dismissing claim against Defendant Corina

Noel Piedrahita based on her good faith defense).

***Value.*** Value under Section 550(b) is "merely consideration sufficient to support

a simple contract," COLLIER ON BANKRUPTCY ¶ 550.03[1] (Richard Levin & Henry J.

Sommer eds., 16th ed. 2022), and "[s]urrendering equity interests constitutes value for purposes

of [S]ection 550(b) because it is consideration sufficient to support a simple contract," *Picard* v.

*ABN AMRO Bank N.A.*, 2020 WL 1584491, at *9 (Bankr. S.D.N.Y. Mar. 31, 2020). The Trustee

alleges that the transfers were made to fulfill Delta Bank's redemption requests, *see supra* pp. 4-

5, which demonstrates that Delta Bank gave up equity interests as consideration for transfers and

thus took for value.

***Good Faith & Knowledge of Voidability.*** The Trustee does not dispute that his

Complaint includes no allegations about good faith specific to Delta Bank, or that the Complaint

similarly lacks any allegations that Delta Bank knew any transfers were voidable. Instead, the

Trustee points only to this Court's rejection of good faith defense arguments in *Banque Syz* and

other subsequent transferee cases. Opp. at 29-30. But Delta Bank is differently situated from each

of the defendants in the cases the Trustee cited:

- The *Banque Syz* Complaint alleges that "Banque Syz'[s] . . . substantial investments in the Madoff Feeder Funds, provided it access to information about the operations of BLMIS" and "Banque Syz knew or should have known of numerous irregularities concerning investing through BLMIS." Complaint at ¶ 42, *Banque Syz*, No. 11-02149 (Bankr. S.D.N.Y. May 20, 2011), ECF No. 1.

08-01789-cgm   Doc 22028   Filed 07/25/22   Entered 07/25/22 17:32:43   Main Document
Pg 17 of 19

- The *Multi-Strategy* Complaint alleges that the then-president of the defendant-transferee met with a consulting firm to discuss Madoff's Ponzi scheme and that shortly afterwards the defendant-transferee redeemed all of its holdings in the relevant feeder funds. Amended Complaint at ¶¶ 5-8, *Multi-Strategy*, No. 12-01205 (Bankr. S.D.N.Y. Feb. 18, 2022), ECF No. 97.

- The *ABN Ireland*[9] Complaint alleges that the defendant "was armed with public information, as well as considerable non-public information, which raised red flags of possible fraud at BLMIS, and which gave [the defendant] actual or constructive notice of Madoff's potential fraudulent activity" and was "firmly entrenched in the Madoff-investment world." Complaint at ¶¶ 4, 16, *Picard* v. *ABN AMRO Bank (Ireland) Ltd.*, No. 10-05355 (Bankr. S.D.N.Y. Dec. 8, 2010), ECF No. 1.

Whereas the allegations in those proceedings created a factual dispute as to whether the transferee took in good faith or knew the transfers were voidable, there is no such allegation here.[10]

Critically, whereas the Complaint lacks allegations regarding Delta Bank's knowledge, it *does* allege specifics of how BLMIS and Fairfield Sentry concealed fraud from investors. The Complaint alleges that customers received fabricated statements and that Madoff "never made the investments he promised clients, *who believed they were invested with him*," while "assur[ing] clients and regulators" he conducted his activity over-the-counter, such that it could not be observed in listed trading. Compl. ¶¶ 24-25 (emphasis added). The Complaint also alleges that "[i]t was essential for BLMIS to *honor requests for payment* in accordance with the falsely inflated account statements." Compl. ¶ 28 (emphasis added). All of these allegations go

---

[9] The Trustee argues that the District Court "reject[ed]" the good-faith defense in *ABN Ireland*. Opp. at 29. But the holding was limited to whether the Bankruptcy Court erred in denying leave to amend the complaint, not whether a motion to dismiss was properly decided. *Picard* v. *ABN AMRO Bank (Ireland)*, 2022 WL 1304589, at *3 (S.D.N.Y. May 2, 2022).

[10] This Court should not consider the Trustee's statement that "Delta is a sophisticated party that did its own investigations" when assessing the good faith defense. Opp. at 31. The Opposition does not cite to the Complaint for this proposition because the Complaint contains no such allegation.

to a simple premise:  BLMIS and Fairfield Sentry hid their scheme from investors (and thus,

alleged subsequent transferees).

The Fairfield Amended Complaint that the Trustee seeks to incorporate by

reference includes many more allegations of BLMIS and Fairfield Sentry's lack of transparency.

*See, e.g.*, FAC at ¶ 4d ("[T]he Defendants . . . provided false security to their investors through

false marketing materials, and shielded Madoff from direct inquiries."); *id.* at ¶ 345 ("The

Defendants' refusal to allow their clients or prospective investors to contact Madoff was just one

of many elements they employed to hide the inner workings of BLMIS from investors.").  To the

extent this Court finds them properly incorporated, these allegations together with those in the

Complaint demonstrate that BLMIS and Fairfield Sentry obscured the fraud from their investors.

Thus, investors like Delta Bank could not have uncovered the fraud even if they had conducted a

diligent inquiry.  *See Citibank*, 12 F.4th at 192 (explaining that the inquiry notice standard requires

the Trustee to plead "suspicious facts were such that they would have put a reasonable person in

the transferee's position on inquiry notice"); *see also* Mem. at 23-25.

The utter lack of any allegations as to Delta Bank make this specific case different

from those against other subsequent transferees—the unique combination of complete silence as

to what Delta Bank knew and the robust allegations about what investors were prevented from

learning demonstrates beyond dispute that the good faith defense applies here.

**C.    The Trustee's Allegations Could Not Establish that Delta Bank Received Customer Property.**

The Opposition confirms that the Trustee has not pled any facts which connect any

initial transfers from BLMIS to Fairfield Sentry, on the one hand, to any alleged subsequent

transfers from Fairfield Sentry to Delta Bank, on the other.  Exhibits B and C to the Trustee's

Complaint relate only to alleged initial transfers.  Exhibit D relates only to alleged subsequent

-14-

transfers to Delta Bank.  Nothing ties these transfers together, so the Trustee's allegations fall short

of his burden to allege that each subsequent transfer made its way from BLMIS to Fairfield Sentry

to Delta Bank.[11]

## III.    THE TRUSTEE'S CLAIM SHOULD BE DISMISSED WITH PREJUDICE.

The Trustee should not be permitted to amend his Complaint more than ten years

after he first filed it.  *See* Mem. at 25-26.  Regardless of whether he has had access to "all of the

books and records," Opp. at 31, the Trustee has had significant time to identify facts supporting a

claim against Delta Bank.  Still, the Complaint stretches the limit of how little can be alleged about

the sole defendant in an action, and the Trustee should not be permitted to amend his boilerplate

Complaint after over a decade of many opportunities to amend.

### CONCLUSION

Because the Complaint fails to state a claim upon which relief can be granted, Delta

Bank respectfully requests that the Court dismiss the Complaint with prejudice.


Dated: July 25, 2022                                    Respectfully submitted,

                                                       /s/ *James L. Bromley*
                                                       James L. Bromley
                                                       SULLIVAN & CROMWELL LLP
                                                       125 Broad Street
                                                       New York, New York 10004
                                                       (212) 558-4000
                                                       bromleyj@sullcrom.com

                                                       *Counsel to Delta National Bank and Trust*
                                                       *Company*

---

[11] Delta Bank reasserts its argument regarding customer property, *see* Mem. at 13-15, for purposes
of expressly preserving that argument.