**Return Date: November 16, 2022**

**ORRICK, HERRINGTON & SUTCLIFFE LLP**
Jonathan P. Guy
James W. Burke (admitted *pro hac vice*)
1152 15th Street, N.W.
Washington, D.C. 20005
Telephone: (202) 339-8400
Facsimile:  (202) 339-8500

*Attorneys for Koch Industries, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (BRL) <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff, <br><br> Plaintiff, <br><br> v. <br><br> KOCH INDUSTRIES, INC., as successor in interest to Koch Investment (UK) Company, <br><br> Defendant. | Adv. Pro. No. 12-01047 (BRL) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**OF KOCH INDUSTRIES, INC. TO DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................................... 1

RELEVANT BACKGROUND ........................................................................................................ 3

STANDARD OF REVIEW .............................................................................................................. 5

ARGUMENT ..................................................................................................................................... 6

I.    DEFENDANT'S SECTION 546(**e**) DEFENSE IS APPARENT ON THE FACE
      OF THE COMPLAINT ......................................................................................................... 6

      A.    Section 546(e) Bars Avoidance of the Initial Transfers from BLMIS to
            Fairfield Sentry on Which the Recovery Claim in This Action Is
            Predicated.................................................................................................................. 6

      B.    Section 546(e) Bars Avoidance of BLMIS's Initial Transfers
            Notwithstanding Fairfield Sentry's Alleged Knowledge of BLMIS's Fraud ........ 8

II.   THE ALLEGATIONS IN THE COMPLAINT ALSO ESTABLISH
      DEFENDANT'S SECTION 550(b) DEFENSE ............................................................. 12

      A.    KIUK Was Not on Inquiry Notice of BLMIS's Fraud and Received Any
            Subsequent Transfers from Fairfield Sentry in Good Faith ................................ 13

      B.    KIUK Received Fairfield Sentry's Redemption Payments "For Value" ............. 14

      C.    Defendant Is a Good Faith Transferee of KIUK ................................................. 15

III.  THIS ACTION IS UNTIMELY ...................................................................................... 16

CONCLUSION ............................................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)......................................................................................5

*Cassirer v. Sterling Nat'l Bank & Trust Co. of N.Y. (In re Schick),*
  223 B.R. 661 (Bankr. S.D.N.Y. 1998).........................................................13

*Doe v. E. Lyme Bd. of Educ.,*
  962 F.3d 649 (2d Cir. 2020).........................................................................9

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.),*
  No. 10-03496, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ..................7, 8

*Maraschiello v. City of Buffalo Police Dep't,*
  709 F.3d 87 (2d Cir. 2013)...........................................................................9

*Mercer v. Gupta,*
  712 F.3d 756 (2d Cir. 2013).........................................................................5

*Pani v. Empire Blue Cross Blue Shield,*
  152 F.3d 67 (2d Cir. 1998).........................................................................15

*Picard v. Bureau of Labor Ins.,*
  480 B.R. 501 (Bankr. S.D.N.Y. 2012).......................................................5, 16

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Investment Secs. LLC),*
  12 F.4th 171 (2d Cir. 2021) .......................................................2, 6, 13, 16

*Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Secs. LLC),*
  773 F.3d 411 (2d Cir. 2014)................................................................ *passim*

*Picard v. Katz,*
  462 B.R. 447 (S.D.N.Y. 2011)......................................................................7

*Picard v. Legacy Capital Ltd.,*
  548 B.R. 13 (Bankr. S.D.N.Y. 2016)...........................................................14

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC,*
  516 B.R. 18 (S.D.N.Y. 2014).......................................................................13

*Secs. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC,*
  501 B.R. 26 (S.D.N.Y. 2013).........................................................................2

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Secs. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC,*
   594 B.R. 167 (Bankr. S.D.N.Y. 2018) ..................................................................6

*Secs. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC*
   *(In re Consolidated Proceedings on 11 U.S.C. § 546(e)),*
   No. 12 MC 115(JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ............................ *passim*

*Secs. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC,*
   No. 10-05354, 2020 WL 1584491 (Bankr. S.D.N.Y. Mar. 31, 2020) ....................................14

*In re Tribune Company Fraudulent Conveyance Litig.,*
   10 4th 147 (2d Cir. 2021)..................................................................................2

*In re Tribune Company Fraudulent Conveyance Litig.,*
   946 F.3d 66 (2d Cir. 2019).................................................................................15

*U.S. v. Int'l Longshoremen's Ass'n,*
   518 F. Supp. 2d 422 (E.D.N.Y. 2007) ......................................................................3

**Statutes**

11 U.S.C. § 546(a) .....................................................................................2, 16

11 U.S.C. § 546(e) ....................................................................................... *passim*

11 U.S.C. § 548(a) .........................................................................................8

11 U.S.C. § 550.........................................................................................1, 16

11 U.S.C. § 550(a) .........................................................................................6

11 U.S.C. § 550(b) .................................................................................2, 9, 12, 13

**Rules**

Fed. R. Bankr. P. 7008.....................................................................................3

Fed. R. Bankr. P. 7010.....................................................................................3

Fed. R. Bankr. P. 7012.....................................................................................5

Fed. R. Civ. P. 8(a) .......................................................................................3

Fed. R. Civ. P. 10(c) ......................................................................................3

Fed. R. Civ. P. 12(b)(6)....................................................................................5

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Fed. R. Evid. 201 ...................................................................................................................15

**Other Authorities**

22 N.Y. Jur. 2d Contracts § 28 (2d ed. May 2022 update) ...........................................................10

## PRELIMINARY STATEMENT

This action concerns a single claim under section 550 of the Bankruptcy Code seeking recovery of transfers that Bernard L. Madoff Investment Securities LLC ("BLMIS") allegedly made to Fairfield Sentry Limited ("Fairfield Sentry"), one of BLMIS's "feeder funds," *more than two years before* the commencement of BLMIS's liquidation under the Securities Investor Protection Act ("SIPA"), from a defendant *at least three steps removed from BLMIS.* The complaint alleges that (1) BLMIS made initial transfers to Fairfield Sentry, (2) in 2005, Fairfield Sentry made two subsequent transfers totaling $21.5 million to Koch Investment (UK) Company ("KIUK") in redemption of its investments in Fairfield Sentry, and (3) when KIUK was dissolved in 2009 by third-party liquidators in accordance with United Kingdom law, Defendant Koch Industries, Inc. received transfers of the same total amount from KIUK.[1]

This action should be dismissed.[2]  Section 550 of the Bankruptcy Code only authorizes recovery of transfers that have been avoided.  The initial transfers on which the recovery claim in this action is predicated have not been avoided and are shielded from avoidance by section 546(e) of the Bankruptcy Code ("Section 546(e)").  Indeed, the initial transfers from BLMIS to Fairfield Sentry are customer account withdrawals that are substantively indistinguishable from BLMIS account withdrawals that the United States Court of Appeals for the Second Circuit held were both (i) made "in connection with a securities contract" and (ii) "settlement payments" for purposes of Section 546(e), and thus not subject to avoidance.  *See Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Secs. LLC)*, 773 F.3d 411, 419, 422 (2d Cir. 2014).  Defendant already has been forced to litigate for 10-plus years regarding initial transfers

---

[1]    The caption in this action refers to Defendant as "successor in interest" to KIUK, but the complaint contains no factual allegations that Defendant is a successor to KIUK in any respect, other than as an alleged recipient of subsequent transfers from KIUK.

[2]    Defendant does not consent to the entry of final orders or judgment by this Court.

from or before *2005*—a result antithetical to the finality concerns animating Section 546(e).  *See id.* at 423 (Section 546(e) reflects a "careful balance[ ] between the need for an equitable result for the debtor and its creditors[ ] and the need for finality" and courts "are obliged to respect the balance Congress struck among these complex competing considerations").[3]  It is time for this action to end, not begin.

While Section 546(e) is dispositive of this action, two other provisions of the Bankruptcy Code also compel dismissal here.  First, section 550(b) of the Bankruptcy Code ("Section 550(b)") provides Defendant a complete defense, even under the legal standards the Second Circuit announced in *Picard v. Citibank, N.A. (In re Bernard L. Madoff Investment Secs. LLC)*, 12 F.4th 171 (2d Cir. 2021).  On its face, the complaint in this action establishes that KIUK received any transfers from Fairfield Sentry in good faith and for value (the redemption of its investment), and that Defendant received any further transfers from KIUK in good faith.  Second, insofar as this action seeks to avoid the initial transfers from BLMIS to Fairfield Sentry as a legal element of the recovery claim against Defendant, section 546(a) of the Bankruptcy Code prescribes the statute of limitations applicable to this action.  This action was filed more than two years after the commencement of BLMIS's SIPA proceeding.  It is therefore untimely.[4]

---

[3]     *Cf. In re Tribune Company Fraudulent Conveyance Litig.*, 10 4th 147, 176 (2d Cir. 2021) (affirming denial of motion to amend complaint where transfers at issue occurred "more than twelve years ago" because prolonged litigation would prevent "certainty, speed, finality, and stability" in the market) (quotation omitted).

[4]     Defendant acknowledges that District Court Judge Rakoff, in a prior decision in this case on withdrawal of the reference, held that section 546(a) of the Bankruptcy Code was satisfied by a separate avoidance complaint filed against Fairfield Sentry within the two-year limitations period.  *Secs. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 501 B.R. 26 (S.D.N.Y. 2013).  Defendant reasserts its statute of limitations argument in Section III *infra* for preservation purposes.

## RELEVANT BACKGROUND[5]

Prior to his arrest, Bernard L. Madoff ("Madoff") was the chief executive officer of BLMIS.  Complaint ¶ 21.  BLMIS was a duly registered securities broker-dealer under the Securities Exchange Act.  *Id.*

Madoff operated BLMIS's investment advisory business as a Ponzi scheme until December 2008.  *Id.* ¶¶ 26, 29.  On December 11, 2008, Madoff was arrested by federal agents for violating federal securities laws.  *Id.* ¶ 9.

On December 15, 2008, this Court entered an order under SIPA granting an application for the liquidation of BLMIS and appointing Irving Picard as Trustee for the Liquidation of BLMIS and the substantively consolidated estate of Bernard L. Madoff (the "Trustee").  *Id.* ¶ 12.

Fairfield Sentry was a customer of BLMIS's investment advisory business.  *Id.* ¶ 2. Fairfield Sentry opened its first account at BLMIS in November 1990 and a second account in October 1992.  Amended Complaint ¶ 33, ECF No. 23, *Picard v. Fairfield Sentry Limited*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. filed July 20, 2010) ("Fairfield Amended Complaint")[6]; *see also* Complaint ¶ 33 (incorporating by reference allegations in Fairfield Amended Complaint).[7]  In so doing, Fairfield Sentry executed account opening agreements with BLMIS.

---

[5]    The factual recitations herein are based on the allegations in the complaint in this action [ECF No. 1] (the "Complaint").  Defendant does not admit any of the allegations referenced herein or in the Complaint.

[6]    For convenience, a copy of the Fairfield Amended Complaint (exclusive of its exhibits) is attached as Exhibit A to the Declaration of Jonathan P. Guy ("Guy Decl."), submitted herewith.

[7]    Although Defendant recognizes this Court has upheld such incorporation in other actions, Defendant respectfully submits that the Complaint's incorporation by reference of the entirety of the Fairfield Amended Complaint is improper under Federal Rules of Civil Procedure 8(a) and 10(c), made applicable here by Federal Rules of Bankruptcy Procedure 7008 and 7010.  *See U.S. v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 462-64 (E.D.N.Y. 2007).  Regardless, as discussed herein, dismissal of the Complaint in this action is required even if the Fairfield Amended Complaint is incorporated into the Complaint.

Fairfield Amended Complaint ¶ 33. Fairfield Sentry maintained its customer accounts with BLMIS for the purpose of investing assets with BLMIS, and BLMIS's payments to Fairfield Sentry were made through withdrawals from those customer accounts. Complaint ¶¶ 2, 34-37 & Exs. A & B; *see also* Fairfield Amended Complaint ¶¶ 20, 33.

When its investors redeemed shares or limited partnership interests, Fairfield Sentry transferred funds to its investors. Fairfield Amended Complaint ¶ 23. KIUK was an investor in Fairfield Sentry and received two distribution payments on May 11, 2005, and September 20, 2005—each more than three years before the commencement of BLMIS's SIPA liquidation (December 15, 2008). Complaint ¶ 39 & Exhibit C.[8] Although the Complaint does not specify from which initial transfers BLMIS made to Fairfield Sentry the payments to KIUK allegedly were derived, those initial transfers must have predated the alleged payments from Fairfield Sentry to KIUK.

On May 18, 2009, the Trustee filed an action against Fairfield Sentry seeking to avoid transfers BLMIS allegedly made within the six years preceding the commencement of BLMIS's SIPA liquidation. *See generally* Fairfield Amended Complaint. Defendant was not a party to that action. *See generally id.*

This Court approved a settlement between the Trustee and Fairfield Sentry (among others) pursuant to two orders dated June 7 and 10, 2011, and entered a consent judgment against Fairfield Sentry on July 13, 2011. Complaint ¶ 38. None of the Court's orders or the consent

---

[8]     As part of the chapter 15 case in this Court for Fairfield Sentry, the foreign representatives and liquidators of Fairfield Sentry previously filed a separate action against KIUK. *See* Complaint, ECF No. 1, Adv. Pro. No. 11-01606 (Bankr. S.D.N.Y. filed Feb. 9, 2012). That action was voluntarily dismissed. *See* Notice of Dismissal, ECF No. 49, Adv. Pro. No. 11-01606 (Bankr. S.D.N.Y. filed Apr. 26, 2017).

judgment provides for "formal avoidance" of any alleged transfers from BLMIS to Fairfield

Sentry. *See Picard v. Bureau of Labor Ins.*, 480 B.R. 501, 502 (Bankr. S.D.N.Y. 2012).

On February 9, 2012, the Trustee filed this action against Defendant. The Complaint in

this action does not allege that either KIUK or Defendant made any investments directly in or

received any payments directly from BLMIS. Instead, the Trustee seeks to recover certain

monies that BLMIS initially transferred to Fairfield Sentry. Complaint ¶¶ 2, 4, 32, 39.

The Complaint also does not allege that either KIUK or Defendant had any knowledge of

or "red flags" regarding BLMIS's fraud scheme before Madoff's arrest. Instead, the Complaint

merely alleges that Fairfield Sentry transferred a portion of the funds it received from BLMIS to

KIUK and that monies KIUK received from Fairfield were later transferred to Defendant when

KIUK dissolved. Complaint ¶¶ 2, 32, 39.[9]

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6) (made applicable here by Federal Rule of

Bankruptcy Procedure 7012), a complaint must be dismissed where it does not state a plausible

claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("[O]nly a complaint that states a

plausible claim for relief survives a motion to dismiss.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Id.*

In contrast, dismissal is required where the factual allegations on the face of the complaint

establish an affirmative defense. *See Mercer v. Gupta*, 712 F.3d 756, 759 (2d Cir. 2013)

---

[9]    Defendant expects that Fairfield Sentry's account records, including Exhibit B to the
Complaint, will confirm that a substantial portion of the $21.5 million that Fairfield Sentry
allegedly transferred to KIUK could not have been transferred to Fairfield Sentry by BLMIS.
Mindful of this Court's rulings in other actions, however, Defendant defers its "tracing" defense
until a later stage of this action (if any), while reserving all its rights regarding such defense.

- 5 -

(affirming dismissal based on affirmative defense); *see also Ida Fishman*, 773 F.3d at 415

(affirming dismissal of avoidance claim based on Section 546(e)).

## ARGUMENT

I. **DEFENDANT'S SECTION 546(e) DEFENSE IS APPARENT ON THE FACE OF THE COMPLAINT**

A. **Section 546(e) Bars Avoidance of the Initial Transfers from BLMIS to Fairfield Sentry on Which the Recovery Claim in This Action Is Predicated**

The alleged initial transfers in this action—BLMIS's payments to Fairfield Sentry—

occurred more than two years before the commencement of BLMIS's SIPA liquidation.  Section

546(e) thus provides a complete defense to the Trustee's recovery claim against Defendant.

The plain language of the Bankruptcy Code only authorizes the Trustee to recover a

subsequent transfer "to the extent that" the preceding initial transfer made by BLMIS is

"avoided."  11 U.S.C. § 550(a).  Thus, avoidance of the initial transfers that BLMIS allegedly

made to Fairfield Sentry is a required element of any recovery claim against Defendant.

*Citibank*, 12 F.4th at 197.

Here, Section 546(e), again by its plain language, bars the Trustee from avoiding the

initial transfers from BLMIS to Fairfield Sentry and is thus fatal to the Trustee's recovery claim

against Defendant.  *See Secs. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 594

B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (Subsequent transferee "protected indirectly to the extent

that the initial transfer is not avoidable because of the safe harbor.").  Section 546(e) provides

that "the trustee may not avoid a transfer" if the transfer is "made by . . . a . . . stockbroker . . . in

connection with a securities contract, as defined in section 741(7)" or if the transfer is a

"settlement payment, as defined in section 101 or 741 of [the Bankruptcy Code], made by . . .  a

. . . stockbroker."  11 U.S.C. § 546(e).

In *Ida Fishman*, the Second Circuit considered "whether the payments that BLMIS made

to its customers are the type of securities-related payments that are shielded by [section] 546(e)"

and answered that question in the affirmative.  773 F.3d at 415.  After recognizing that BLMIS is

a "stockbroker" for purposes of Section 546(e) (a point the Trustee did not dispute) (*Id.* at 417),[10]

the Second Circuit held that "BLMIS and its customers entered into agreements that satisfy the

broad definition of 'securities contracts' under [section] 741(7)(A)" (773 F.3d at 418)—namely,

three account opening agreements referred to as Customer Agreements, Trading Authorizations,

and Option Agreements—and that "the payments BLMIS made to its customers were made in

connection with the[se] securities contracts," notwithstanding that they "were also 'made in

connection' with a Ponzi scheme" (*id.* at 419, 422).[11]

     *Ida Fishman* is directly controlling in this action because the alleged initial transfers from

BLMIS to Fairfield Sentry that are the predicate for the Trustee's recovery claim against

Defendant are of the exact same nature as the payments that were at issue in *Ida Fishman*—

payments by BLMIS to a customer (Fairfield Sentry) made "in connection with" BLMIS's and

---

[10]    *See* Complaint ¶ 21; s*ee also Picard v. Katz*, 462 B.R. 447, 451 (S.D.N.Y. 2011)
("Because [BLMIS] was a registered stockbrokerage firm, the liabilities of customers [for
transfers they received from BLMIS] are subject to the 'safe harbor' set forth in section 546(e) of
the Bankruptcy Code.").  Even if BLMIS were not a stockbroker, Section 546(e) still would
apply to BLMIS's transfers to Fairfield Sentry because Section 546(e) also applies to a transfer if
it is made to a "financial institution" in connection with a securities contract or if it is a
settlement payment to a "financial institution," and Fairfield Sentry qualifies as a "financial
institution."  *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
No. 10-03496, 2020 WL 7345988, at *6-7 (Bankr. S.D.N.Y. Dec. 14, 2020).

[11]    Independent of, and in addition to, its "securities contract" holding, the Second Circuit
also held that each payment BLMIS made to a customer "in respect of [a sell] order or
[withdrawal] request constituted a settlement payment."  *Id.* at 419, 422.

Fairfield Sentry's customer account agreements. Just as with the transfers in *Ida Fishman*, therefore, Section 546(e) shields the initial transfers in this action against avoidance.[12]

Section 546(e) contains only one exception that is inapplicable to this action. That exception permits the Trustee to prosecute an avoidance claim if it is brought pursuant to section 548(a)(1)(A) of the Bankruptcy Code, but that section only authorizes a trustee to avoid a transfer "made . . . on or within 2 years before the date of the filing of the petition." 11 U.S.C. § 548(a)(1). Here, the alleged initial transfers from BLMIS to Fairfield Sentry that the Trustee must avoid as a predicate to this recovery action occurred more than two years before the December 2008 commencement of BLMIS's SIPA liquidation. This is irrefutable. The alleged subsequent transfers to KIUK occurred more than two years before December 2008—in May and September of 2005. Complaint Exhibit C. Thus, the Trustee cannot rely on section 548(a)(1)(A) of the Bankruptcy Code, and the related exception to Section 546(e), to avoid the alleged initial transfers from BLMIS to Fairfield Sentry.

## B. Section 546(e) Bars Avoidance of BLMIS's Initial Transfers Notwithstanding Fairfield Sentry's Alleged Knowledge of BLMIS's Fraud

Defendant recognizes that in other actions, this Court has declined to apply Section 546(e) at the dismissal stage to claims predicated on avoidance of transfers from BLMIS to Fairfield Sentry, relying on District Judge Rakoff's decision in *Secs. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re Consolidated Proceedings on 11 U.S.C. § 546(e))*,

---

[12]    Insofar as Fairfield Sentry withdrew funds from its accounts to make redemption payments to its investors, BLMIS's payments to Fairfield Sentry were made "in connection with" other securities contracts in addition to the customer account agreements between BLMIS and Fairfield Sentry: the separate account agreements and redemption agreements between Fairfield Sentry and its investors. *Secs. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re Consolidated Proceedings on 11 U.S.C. § 546(e))*, No. 12 MC 115(JSR), 2013 WL 1609154, at *9 (S.D.N.Y. Apr. 15, 2013); *Theodoor GGC Amsterdam*, 2020 WL 7345988, at *6 (redemption payments made by Fairfield Sentry to its investors were made in connection with securities contracts).

No. 12 MC 115(JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*") (on withdrawal

of the reference in this action and others). But that decision rewrote Section 546(e) to create an

extra-statutory exception to Section 546(e), holding that where the initial transferee is alleged to

have had "actual knowledge of Madoff's scheme," the initial transfers "could not have been

made in connection with an actual 'securities contract.'" *Id.* at *3.[13]

     *Cohmad* is irreconcilable with the plain text of Section 546(e), which, unlike other

provisions of the Bankruptcy Code, expressly does not include any exception tied to an initial

transferee's "knowledge" of the transferor's alleged fraud. *Cf.* 11 U.S.C. § 550(b) (defense to

recovery action not available where transferee has "knowledge of the voidability of the transfer

avoided"). It also is incompatible with *Ida Fishman*, which was issued after *Cohmad* and is

binding authority on this Court.[14] Judge Rakoff himself described his "actual knowledge" ruling

in *Cohmad* as already "implicit in" the district court decision appealed from in *Ida Fishman*.

*Cohmad*, 2013 WL 1609154, at *2. Yet, nothing in *Ida Fishman* suggests that Fairfield Sentry's

alleged knowledge of BLMIS's fraud scheme has any bearing on whether the customer

agreements between Fairfield Sentry and BLMIS constitute "securities contracts" or whether

BLMIS's payments to Fairfield Sentry were made "in connection with" those contracts.

---

[13]    *Cohmad* also provides that where the initial transferee is alleged to have had "actual knowledge of Madoff's scheme," "the transfers they received directly or indirectly from Madoff Securities [BLMIS] were not 'settlement payments.'" *Id.*

[14]    A district judge's decision on withdrawal of the reference is not binding precedent but, at most, law of the case that the Court is empowered to reconsider for legal error, especially where, as here, the district court's ruling is abrogated by a subsequent decision from the Second Circuit. *See Doe v. E. Lyme Bd. of Educ.*, 962 F.3d 649, 662-63 (2d Cir. 2020) ("Compelling reasons to revisit a decision include an intervening change in law . . . or the need to correct a clear error or prevent manifest injustice."); *Maraschiello v. City of Buffalo Police Dep't*, 709 F.3d 87, 97 (2d Cir. 2013) ("The doctrine of law of the case is discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment.").

The Second Circuit's holding in *Ida Fishman* that BLMIS customer agreements constitute "securities contracts" was based on the premise that by the agreements "BLMIS customers were required to execute *when opening their accounts*," the customers and BLMIS "'manifest[ed] their mutual assent' that BLMIS would conduct securities transactions on the customers' behalf pursuing a specific investment strategy." 773 F.3d at 418, 421 (emphasis added); *see also id.* at 421 ("BLMIS promised its customers that it would transact securities, and BLIMIS's customers deposited money relying on that promise."). Even if the Trustee alleged that Fairfield Sentry had knowledge of BLMIS's fraud scheme when Fairfield Sentry opened its accounts with BLMIS, those allegations could not overcome the parties' objective manifestation of mutual assent, which, as a matter of law, establishes the nature of their agreements. 22 N.Y. Jur. 2d Contracts § 28 (2d ed. May 2022 update). But here the Trustee does *not* allege that Fairfield Sentry had any knowledge of BLMIS's fraud scheme when Fairfield Sentry opened its accounts with BLMIS (in November 1990 and October 1992). *See* Fairfield Amended Complaint ¶¶ 33, 317-318. Rather, consistent with *Ida Fishman*, the Trustee alleges Fairfield Sentry opened its accounts with BLMIS because "Madoff promised customers *such as Fairfield Sentry*" that he would execute a particular trading strategy. *Id.* ¶ 336 (emphasis added). The Trustee's allegations about supposed knowledge of and/or red flags regarding BLMIS's fraud scheme all postdate the executions of Fairfield Sentry's customer agreements. *See, e.g., id.* ¶ 391 (accountant "had not been peer reviewed since 1993"); ¶ 400 (BLMIS's positive returns "between 1996 and 2008"); ¶ 416 (BLMIS option trading "[f]rom 2001 to 2008"); ¶¶ 500-501 (articles and newsletters published in 2001).[15]

---

[15]     Fairfield Sentry's alleged knowledge of Madoff's fraud likewise cannot transform the nature of the securities contracts between Fairfield Sentry and investors in Fairfield Sentry such

Likewise, Fairfield Sentry's alleged knowledge of BLMIS's fraud scheme does not alter that BLMIS's payments to Fairfield Sentry were made "in connection with" the customer agreements between those parties. The Second Circuit specifically held in *Ida Fishman* that a transfer can qualify as made "in connection with" a securities contract even if it is not made "pursuant to" or "in accordance with the terms of" the securities contract. 773 F.3d at 421. "Section 546(e) sets a low bar for the required relationship between the securities contract and the transfer sought to be avoided," and it is sufficient that the transfer is merely "related to or associated with" the securities contract. *Id.* (quotation omitted). Here, BLMIS's payments to Fairfield Sentry clear that "low bar," regardless of Fairfield Sentry's alleged knowledge, because BLMIS's payments were withdrawals from Fairfield Sentry's customer accounts. *See* Complaint ¶¶ 2, 34-37 & Exs. A & B. As the Second Circuit held in *Ida Fishman*: "Were it not for the Account Documents, there would be no basis for a customer to make deposits or request withdrawals. Thus, the transfers at issue originated with, and could not have been possible but for, the relationship created by the Account Documents." 773 F.3d at 418-419.

In following *Cohmad*, this Court's prior decisions relied on "dicta" in the portion of the *Ida Fishman* decision holding that BLMIS customer agreements constitute "securities contracts." In that "dicta," the Second Circuit rhetorically remarked that the "defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded to the clients of stockbrokers, including the protection offered by [Section] 546(e)." 773 F.3d at 420. In context, however, that rhetoric was part of a broader paragraph refuting the Trustee's argument that allowing the Trustee to avoid BLMIS's payments to its customers would not cause any

---

as KIUK who are not alleged to have had any knowledge of Madoff's fraud. These contracts provide an independent basis for application of Section 546(e). *See* footnote 12 *supra*.

disruption in the securities markets.  The rhetoric reinforced the preceding sentence in which the

Second Circuit stated that avoiding the payments would "likely cause the very 'displacement'

that Congress hoped to minimize in enacting [Section] 546(e)."  *Id.* at 420.  Critically, the

Second Circuit did not say that the initial transferees' knowledge regarding whether BLMIS was

effecting securities transactions was a determinative factor in its Section 546(e) analysis.  To the

contrary, the Second Circuit rejected the Trustee's premise that application of Section 546(e)

should depend at all on whether "Madoff had actually completed the securities transactions he

purported to effectuate," *Ida Fishman*, 773 F.3d at 417.  The "actual knowledge" ruling in

*Cohmad* is just another variation on that premise.

Accordingly, the Second Circuit's decision in *Ida Fishman* and the plain language of

Section 546(e) are controlling here, not *Cohmad*.  The Court should hold that the initial transfers

from BLMIS to Fairfield Sentry are shielded against avoidance and, because a required element

of the recovery claim in this action cannot be met, the action must be dismissed.

## II.    THE ALLEGATIONS IN THE COMPLAINT ALSO ESTABLISH DEFENDANT'S SECTION 550(b) DEFENSE

Section 550(b) is a second, independent basis for dismissal of this action.  Section

550(b)(2) provides a defense to a recovery claim where a subsequent transferee (here, KIUK)

received its transfer "in good faith, and without knowledge of the voidability of the transfer

avoided" and "for value," and the defendant is a "good faith transferee" of that subsequent

transferee.  Here, the Complaint's allegations establish each element of this defense: (1) when

Fairfield Sentry allegedly made subsequent transfers to KIUK, KIUK received them in good

faith and without knowledge of the voidability of the initial transfers,[16] (2) KIUK received the

transfers from Fairfield Sentry "for value," and (3) Defendant is a good faith transferee of KIUK.

> **A.      KIUK Was Not on Inquiry Notice of BLMIS's Fraud and Received Any Subsequent Transfers from Fairfield Sentry in Good Faith**

In *Citibank*, the Second Circuit held that Section 550(b) "does not universally impose an

affirmative duty to investigate" and that whether a transferee received a transfer in good faith

and without knowledge of voidability must be assessed under a "three-step inquiry." 12 F.4th at

188, 191, 195. "First, a court must examine what facts the defendant knew; this is a subjective

inquiry . . . . Second, a court determines whether these facts put the transferee on inquiry notice

of the fraudulent purpose behind a transaction – that is, whether the facts the transferee knew

would have led a reasonable person in the transferee's position to conduct further inquiry into a

debtor-transferor's possible fraud. . . . Third, . . . the court must inquire whether 'diligent inquiry

[by the transferee] would have discovered the fraudulent purpose' of the transfer. . . . An

objective 'reasonable person' standard applies in the second and third steps . . . ." *Id.* at 191-92.

Here, the Complaint contains no allegations about what facts *KIUK* (as opposed to

Fairfield Sentry) subjectively knew—the first step of the Court's inquiry. Accordingly, in the

second step of the Court's analysis, there is no basis to find that KIUK was put on inquiry notice.

*See Cassirer v. Sterling Nat'l Bank & Trust Co. of N.Y. (In re Schick)*, 223 B.R. 661, 663 (Bankr.

S.D.N.Y. 1998) (Initial transferees are generally recognized as having a "greater ability to

monitor [the] debtor" than subsequent transferees.). To the contrary, the Trustee alleges that

---

[16]      Courts construe the requirement in Section 550(b) that a transferee must receive a subsequent transfer "without knowledge of the voidability of the transfer avoided" (*i.e.*, the initial transfer) as of a piece with the broader requirement that the transferee must receive the subsequent transfers in good faith. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 516 B.R. 18, 23 n.3 (S.D.N.Y. 2014).

Fairfield Sentry actively deceived its investors (including KIUK) to prevent them from growing suspicious about BLMIS's activities.  *See* Fairfield Amended Complaint ¶ 362.

Regarding the third step of the Court's inquiry, the Trustee's own allegations further establish that an objective reasonable person in KIUK's position could not have discovered BLMIS's fraud even if it were on inquiry notice.  Indeed, the Complaint details how in 2006 the U.S. Securities Exchange Commission ("SEC") specifically investigated whether BLMIS was a Ponzi scheme.  Fairfield Amended Complaint ¶¶ 351, 361.  Given that the SEC—BLMIS's regulator with direct access to BLMIS and extensive investigative powers and resources—was unable to uncover BLMIS's fraud, there is no plausible basis to find that KIUK, a Fairfield Sentry investor who is not alleged to have had any direct contact with BLIMS whatsoever, could have accomplished what the SEC could not.  *See Picard v. Legacy Capital Ltd.*, 548 B.R. 13, 33-34 (Bankr. S.D.N.Y. 2016) (recognizing Madoff's "proficiency in covering up his scheme and deceiving the SEC and other investment professionals").

**B.    KIUK Received Fairfield Sentry's Redemption Payments "For Value"**

The Complaint also establishes that KIUK gave "value" in exchange for any payments it received from Fairfield Sentry.  The Trustee acknowledges that when Fairfield Sentry made payments to investors such as KIUK, it did so in "redemption" of their investments.  Fairfield Amended Complaint ¶ 23.  Courts, including this one, have repeatedly recognized that when investors "redeem" their investments, the investors give value.  *See Secs. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC*, No. 10-05354, 2020 WL 1584491, *9 (Bankr. S.D.N.Y. Mar. 31, 2020) (Defendant gave value for transfers when it "surrendered its shares in the Tremont [feeder] funds in exchange for the [transfers].").

Defendant respectfully submits that this Court erred in other actions where it declined to reach at the motion to dismiss stage whether recipients of redemption payments made by Fairfield Sentry gave "value." No factual development is required to answer that question. That Fairfield Sentry's payments were "redemptions" necessarily implies the investors transferred their securities to Fairfield Sentry—a form of value. *See In re Tribune Company Fraudulent Conveyance Litig.*, 946 F.3d 66, 80 (2d Cir. 2019) ("The term 'redemption,' in the securities context, means 'repurchase.'").

### C.    Defendant Is a Good Faith Transferee of KIUK

Last, the Trustee's own allegations also establish that any transfers Defendant received from KIUK were on account of KIUK's dissolution (on August 28, 2009). Complaint ¶ 32. Public records show that KPMG LLP served as independent liquidators of KIUK, notice of KIUK's impending dissolution under United Kingdom law was filed more than a year before the final meeting in May 2009, and all creditors were given opportunity to submit notices of claim before the dissolution took effect and KIUK's remaining assets were distributed. Guy Decl. Ex. B (Affidavit of Stephen Edmund Hansen Phillips) ¶¶ 3-6.[17]

At most, then, Defendant was a passive recipient of excess funds from a third-party liquidator in a public proceeding conducted in accordance with applicable insolvency law. In these circumstances, there is no plausible basis to find that Defendant was anything other than a good faith transferee of KIUK.

---

[17]    Defendant requests that the Court take judicial notice of these public records pursuant to Federal Rule of Evidence 201. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6) . . . .").

### III.    THIS ACTION IS UNTIMELY

Section 546(a) of the Bankruptcy Code provides still another independent basis for dismissal of this action.  In relevant part, it provides that an action seeking to avoid a transfer by BLMIS may not be filed more than "2 years after the entry of the order of relief," which occurred upon the commencement of BLMIS's SIPA proceeding.  11 U.S.C. § 546(a).

Although nominally, the complaint in this action includes a single recovery claim under section 550 of the Bankruptcy Code, in substance the Trustee has filed a hybrid complaint because it necessarily also is seeking to avoid the initial transfers from BLMIS to Fairfield Sentry.  Indeed, avoidance of those transfers is a legal element of the recovery claim, *see Citibank*, 12 F.4th at 197, and the transfers have not been avoided in any prior proceeding, *see Bureau of Labor Ins.*, 480 B.R. at 502, let alone in an action to which Defendant was a party.

The Trustee filed this action on February 9, 2012.  *See generally* Complaint.  That is more than three years after the commencement of BLMIS's SIPA liquidation on December 15, 2008 (Complaint ¶ 12), and thus after the two-year statute of limitations for avoidance actions in section 546(a) of the Bankruptcy Code had expired.  The Trustee is thus time-barred from avoiding the initial transfers from BLMIS to Fairfield Sentry.  And because the Trustee is barred from satisfying a necessary element of its recovery claim against Defendant, that claim also fails.

## **CONCLUSION**

Based on the foregoing, Defendant respectfully requests that the Court dismiss the

Complaint with prejudice.

Dated: July 22, 2022                   Respectfully submitted,
      Washington, D.C

*/s/ Jonathan P. Guy*
Jonathan P. Guy
James W. Burke (admitted *pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 339-8400
Facsimile:  (202) 339-8500
Email: jguy@orrick.com; jburke@orrick.com

*Attorneys for Koch Industries, Inc.*