JONES DAY
Thomas E. Lynch
250 Vesey Street
New York, New York 10281
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
telynch@jonesday.com

*Attorneys for QS Finance Ltd.*
*(formerly known as Quilvest Finance Ltd.)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br><br>    v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | Adv. Pro. No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>QUILVEST FINANCE LTD.,<br><br>    Defendant. | Adv. Pro. No. 11-02538 (CGM) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.     SECTION 546(e) BARS AVOIDANCE OF THE ALLEGED INITIAL
TRANSFERS, AND SENTRY'S ALLEGED KNOWLEDGE OF
FRAUD DOES NOT BAR QSF FROM RAISING THE SAFE HARBOR
DEFENSE ................................................................................................... 2

II.    THE TRUSTEE HAS FAILED TO PLAUSIBLY PLEAD THAT
ALLEGED SUBSEQUENT TRANSFERS FROM SENTRY TO QSF
WERE BLMIS CUSTOMER PROPERTY ............................................................ 8

III.   THE COMPLAINT DOES NOT COMPLY WITH RULE 8(a) ........................ 13

IV.   THE TRUSTEE'S ALLEGATIONS DO NOT SUPPORT THE
EXERCISE OF PERSONAL JURISDICTION OVER QSF ............................. 14

        A.    Investments in Sentry Should Not Establish Personal Jurisdiction ........ 14

        B.    The Incidental Use of Correspondent Bank Accounts for Foreign
Transfers Among Foreign Parties Is Not Enough to Establish
Jurisdiction ............................................................................................. 16

        C.    The Other Contacts the Trustee Alleges Between QSF and New
York Do Not Establish Personal Jurisdiction Over QSF ........................ 18

        D.    The Trustee Does Not Attempt to Establish Jurisdiction for All
Alleged Transfers .................................................................................... 19

        E.    An Exercise of Personal Jurisdiction Over QSF Is Not Reasonable ....... 20

CONCLUSION .................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page**

CASES

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC),*
     599 B.R. 730 (Bankr. S.D.N.Y. 2019) ........................................................................9

*Ashcroft v. Iqbal,*
     556 U.S. 662 (2009) ...................................................................................................12

*Baines v. City of New York,*
     2015 WL 3555758 (S.D.N.Y. June 8, 2015) ...........................................................11

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
     171 F.3d 779 (2d Cir. 1999)......................................................................................19

*Bell Atl. Corp. v. Twombly,*
     550 U.S. 544 (2007)...................................................................................................12

*Berdeaux v. OneCoin Ltd.,*
     2021 WL 4267693 (S.D.N.Y. Sept. 20, 2021).........................................................18

*Fairfield Sentry Ltd. v. Theodor GGC Amsterdam,*
     2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ...............................................18

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.,*
     141 S. Ct. 1017 (2021)..............................................................................................15

*Francis v. Accubanc Mortg. Corp.,*
     2020 WL 2086038 (S.D.N.Y. Apr. 30, 2020)..........................................................14

*Glob. Network Commc'ns, Inc. v. City of N.Y.,*
     458 F.3d 150 (2d Cir. 2006).......................................................................................13

*Hau Yin To v. HSBC Holdings, PLC,*
     2017 WL 816136 (S.D.N.Y. Mar. 1, 2017),
     *aff'd,* 700 F. App'x 66 (2d Cir. 2017)......................................................................17

*Helms v. Metro. Life Ins. Co. (In re O'Malley),*
     601 B.R. 629 (Bankr. N.D. Ill. 2019) .......................................................................11

*Hill v. HSBC Bank*,
  207 F. Supp. 3d 333 (S.D.N.Y. 2016) ...................................................................................17

*In re Geiger*,
  446 B.R. 670 (Bankr. E.D. Pa. 2010) ....................................................................................13

*In re Morrison*,
  375 B.R. 179 (Bankr. W.D. Pa. 2007) ...................................................................................13

*McKee Elec. Co. v. Rauland-Borg Corp.*,
  20 N.Y.2d 377 (1967) .............................................................................................................19

*Picard v. ABN AMRO Bank (Ireland) Ltd.*,
  505 B.R. 135 (S.D.N.Y. 2013) .................................................................................................6

*Picard v. BNP Paribas S.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  594 B.R. 167 (Bankr. S.D.N.Y. 2018) ...............................................................................6, 19

*Picard v. Bureau of Labor Insurance (In re Bernard L. Madoff Inv. Sec. LLC)*,
  480 B.R. 501 (Bankr. S.D.N.Y. 2012) ...................................................................................15

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  454 B.R. 317 (Bankr. S.D.N.Y. 2011) ....................................................................... 3, 7, 9, 12

*Picard v. Fairfield Inv. Fund Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ................................................................5

*Picard v. Mayer (In re Bernard L. Madoff Inv. Sec. LLC)*,
  2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021) ...............................................................9

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
  515 B.R. 117 (Bankr. S.D.N.Y. 2014) .................................................................... 6, 9, 10, 12

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*,
  542 B.R. 100 (Bankr. S.D.N.Y. 2015) .................................................................... 8, 10, 12

*Salahuddin v. Cuomo*,
  861 F.2d 40 (2d Cir. 1988) .....................................................................................................13

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ......................................................................3, 7

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
  501 B.R. 26 (S.D.N.Y. 2013) .................................................................................................14

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs. Inc.)*,
   379 B.R. 5 (Bankr. E.D.N.Y. 2007) ............................................................................9

*SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*,
   620 B.R. 505 (Bankr. S.D.N.Y. 2020). ......................................................................6

*Walden v. Fiore*,
   571 U.S. 277 (2014) ............................................................................................15, 16

*Waldman v. Palestine Liberation Org.*,
   835 F.3d 317 (2d Cir. 2016) ...............................................................................16, 20

*Wilson v. JPMorgan Chase Bank, N.A.*,
   2021 WL 5179914 (S.D.N.Y. Nov. 8, 2021) .............................................................11

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) ..................................................................................................16

## STATUTES

11 U.S.C.
   § 546(e) ............................................................................................................ passim
   § 548 .........................................................................................................................11
   § 550(a)(2) ...............................................................................................................11
   § 550(d) ....................................................................................................................11

CPLR § 302(a)(1) ...........................................................................................................19

## RULES AND OTHER AUTHORITIES

Federal Rule of Civil Procedure 8 .........................................................................2, 13, 14

Federal Rule of Civil Procedure 10 ...............................................................................13

Wright & Miller, 5 Federal Practice and Procedure § 1282 (4th ed. 2021) ...................13

Defendant QS Finance Ltd. ("QSF")[1] (formerly known as Quilvest Finance Ltd.) presents this reply memorandum (the "Reply") in further support of its motion to dismiss [ECF 106] the Trustee's Complaint and in response to the Trustee's Memorandum of Law in Opposition to Defendant Quilvest Finance Ltd.'s Motion to Dismiss [ECF 113] (the "Opposition" or "Opp.").

## PRELIMINARY STATEMENT

This case is one of scores the Trustee is pursuing against foreign defendants who allegedly received funds initially transferred from BLMIS to Sentry and subsequently transferred from Sentry to defendants between 2003 and 2008.  QSF has reviewed the Court's recent decisions on motions brought by other subsequent transferee defendants[2] and respectfully submits that the Trustee's allegations and controlling precedent require dismissal of the case against QSF for the reasons set forth in QSF's opening memorandum of law.

The Trustee accuses QSF of receiving subsequent transfers of BLMIS customer property from Sentry, a foreign feeder fund, without knowledge of Madoff's fraud.  Based on the facts alleged, the Trustee's claims should be barred in their entirety by Bankruptcy Code Section 546(e) because the only possible initial transfers from BLMIS to Sentry supporting the Trustee's claims against QSF predated the petition date by more than two years.  The Trustee's Complaint should also be dismissed for its failure to plausibly allege that subsequent transfers from Sentry to QSF consisted of BLMIS customer property with links identifying connections between alleged initial transfers from BLMIS to Sentry and alleged subsequent

---

[1]  Capitalized terms not defined separately have the meanings identified in QSF's Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Complaint [ECF 107] ("Mem").

[2]  *See, e.g.*, *Picard v. Banque Syz & Co. SA*, 11-ap-02149 (CGM) [ECF 167]; *Picard v. First Gulf Bank*, 11-ap-2541 (CGM) [ECF 100]; *Picard v. Banca Carige S.P.A.*, 11-ap-02570 (CGM) [ECF 123]; *Picard v. Multi-Strategy Fund Limited*, 12-ap-01205 (CGM) [Dk. 122]; *Picard v Lloyds TSB Bank PLC*, 12-ap-01207 (CGM) [ECF 105]; *Picard v. Banque Lombard Odier & Cie SA*, 12-ap-1693 (CGM) [ECF 115]; *Picard v Bordier & Cie*, 12-ap-01695 (CGM) [ECF 105].

transfers from Sentry by QSF.  The Trustee's own pleadings foreclose the possibility of

assuming those connections because the Trustee alleges that Sentry subsequently transferred

funds that far exceed allegedly avoidable transfers from BLMIS to Sentry.  The Trustee's

Complaint should also be dismissed for its wholesale incorporation of a since superseded

pleading in *Fairfield Sentry Ltd.* in violation of Rule 8(a).  Finally, the Complaint should be

dismissed for the Trustee's failure to adequately allege a basis upon which to subject QSF to the

personal jurisdiction of this Court.

**ARGUMENT**

**I.       SECTION 546(e) BARS AVOIDANCE OF THE ALLEGED INITIAL
         TRANSFERS, AND SENTRY'S ALLEGED KNOWLEDGE OF FRAUD DOES
         NOT BAR QSF FROM RAISING THE SAFE HARBOR DEFENSE**

QSF set forth in its opening memorandum how each of the elements necessary to invoke

the Section 546(e) safe harbor are satisfied in this case because the only possible alleged initial

transfers from BLMIS to Sentry that could be the basis for the Trustee's claims against QSF:

(a) were transfers and settlement payments made "in connection with a securities contract"

(in fact, in connection with two separate securities contracts—BLMIS's customer agreements

with Sentry and the Articles of Association governing redemptions from Sentry) and (b) were

made by, to, and/or for the benefit of covered entities.  (Mem., at 4-15.)  Avoidance powers do

not apply to such transfers made more than two years before the petition date.

In the Opposition, the Trustee does not dispute QSF's identification of the facts

supporting the statutory elements of the Section 546(e) defense and thus concedes that the

alleged initial transfers satisfy the requirements of the safe harbor.  (Opp., at 20-27.)  Instead, the

Trustee argues that "none of this matters" because he alleges that Sentry had actual knowledge of

BLMIS's fraud.  (*Id.* at 21-22.)

The Trustee interpretation of the Section 546(e) safe harbor relies primarily upon *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"). According to the Trustee, Section 546(e) does not apply to the claims against QSF because "an initial transferee's actual knowledge of Madoff's fraud preclude[s] application of the Section 546(e) safe harbor. . . ." (Opp., at 21.) Essentially, the Trustee argues that QSF's and other innocent subsequent transferees' knowledge is irrelevant because even innocent subsequent transferees are prohibited from invoking the Section 546(e) safe harbor where the Trustee alleges the initial transferee had actual knowledge of the underlying fraud. (*Id*. at 20-27.)

The Trustee's argument misconstrues Judge Rakoff's decision, which preludes only transferee defendants alleged to have actual knowledge of Madoff's fraud from relying on Section 546(e). In *Cohmad*, Judge Rakoff addressed two situations: (1) where an initial transferee seeks to invoke the safe harbor provision but has actual knowledge of BLMIS's fraud; and (2) where a subsequent transferee seeks invoke the safe harbor provision but has actual knowledge of BLMIS's fraud. In those situations, Judge Rakoff held:

> (1) Where the Trustee has sought to avoid transfers to an initial transferee, the avoidance of which would otherwise be barred by Section 546(e) under the Court's rulings in *Katz* and *Greiff*, the initial transferee will not be able to prevail on a motion to dismiss some or all of the Trustee's avoidance claims simply on the basis of the Section 546(e) "safe harbor" *if* the Trustee has alleged that the initial transferee had actual knowledge of Madoff Securities' fraud; and

> (2) Where the Trustee has sought to recover transfers made to a subsequent transferee, the avoidance of which would otherwise be barred by Section 546(e) as to the initial transferee, the subsequent transferee will not be able to prevail on a motion to dismiss some or all of the Trustee's avoidance claims simply on the basis of the Section 546(e) "safe harbor" *if* the Trustee has alleged that the subsequent transferee had actual knowledge of Madoff Securities' fraud.

*Cohmad*, at *1 (emphasis in original).

Under *Cohmad*, the limitation on a subsequent transferee's ability to raise the safe harbor

defense is if the subsequent transferee is alleged to have had "actual knowledge of Madoff

Securities' fraud." *Id*. at *7.  This is because "[a] defendant cannot be permitted to in effect

launder what he or she knows to be fraudulently transferred funds through a nominal third party

and still obtain the protections of Section 546(e)." *Id*. (citation omitted).  Thus, Judge Rakoff

concluded that "if the Trustee sufficiently alleges that the transferee from whom he seeks to

recover a fraudulent transfer knew of Madoff Securities' fraud, that transferee cannot claim the

protections of Section 546(e)'s safe harbor." *Id*.[3]

Nothing in Judge Rakoff's *Cohmad* decision stands for the proposition that the Trustee

proposes—that an initial transferee's alleged actual knowledge of BLMIS's fraud bars innocent

subsequent transferees from raising the safe harbor defense.  To the contrary, Judge Rakoff's

*Cohmad* decision applied to the particular transferees with alleged knowledge of the BLMIS

fraud to prevent persons who know of the fraud from "profit[ing]" from the safe harbor.

Judge Rakoff did not state in *Cohmad* that the initial transfer is not protected by Section 546(e).

He stated that a "transferee" with knowledge of BLMIS's fraud "stands in a different posture

from an innocent transferee [ ] as concerns the application of Section 546(e)." *Id*. at *4.

Judge Rakoff recognized in *Cohmad* that the "purpose" of Section 546(e) is to minimize

"the displacement caused in the commodities and securities markets in the event of a major

bankruptcy affecting those industries"—a "goal [that] is best achieved by protecting the

reasonable expectations of investors who believed they were signing a securities contract." *Id.*

(citations omitted).  An innocent investor—*i.e.*, one without actual knowledge of the fraud—has

---

[3]  The "transferee" in this quote from *Cohmad* is the subsequent transferee from which the
fraudulent transfer is being recovered and not the initial transferee from which the fraudulent
transfer is being avoided.  *See Cohmad* at *7

-4-

such "reasonable expectations" and is entitled to Section 546(e)'s protections.  *Id.*  By contrast, "a transferee who had actual knowledge of the Madoff 'Ponzi' scheme did not have such expectations, but was simply obtaining moneys while he could."  *Id.*  Accordingly, the *Cohmad* decision drew a clear, bright line as to the availability of Section 546(e) on motions to dismiss, based solely on whether the "defendant"—*i.e.*, the transferee being sued—allegedly had actual knowledge of the underlying fraud.  *Id.*

The distinction Judge Rakoff drew between transferees alleged to have knowledge of fraud and those against whom no such allegations are made applies to alleged subsequent transferee defendants.  Judge Rakoff held that "even if the initial (or mediate) transferee fails to raise a Section 546(e) defense" for any reason (including, as here, the Trustee's settlement of claims against the initial transferee), "the subsequent transferee is nonetheless entitled to raise a Section 546(e) defense against recovery of those funds."  *Id.* at *7.[4]  Judge Rakoff applied to alleged subsequent transferees the same bright line test applicable to initial transferee defendants: "if the Trustee sufficiently alleges that the transferee against whom he seeks to recover a fraudulent transfer knew of Madoff Securities' fraud, that transferee cannot claim the protection of Section 546(e)'s safe harbor."  *Id.*  In other words, *Cohmad* prohibits "actual knowledge" subsequent transferees from raising the safe harbor, but it does not limit subsequent transferee defendants not alleged to have had such knowledge.[5]

---

[4]  *See also Picard v. Fairfield Inv. Fund Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*, 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021) ("Where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here where the transferee settled with the Trustee, the subsequent transferee is nonetheless entitled to a § 546(e) defense against recovery of those funds." (citations omitted).)

[5]  Defendants in *Cohmad* included subsequent transferees of the same feeder funds whose alleged knowledge of the BLMIS fraud the Trustee now argues defeats application of the safe harbor.

Neither the language in *Cohmad* nor the logic of the decision support a conclusion that a subsequent transferee without knowledge is also precluded from raising the Section 546(e) safe harbor defense. In fact, neither *Cohmad* nor any of the later decisions applying the safe harbor to subsequent transfer claims suggest that an innocent subsequent transferee is deprived of the safe harbor defense because the initial transferee allegedly knew of BLMIS' fraud.[6] *See generally Cohmad*; *see also Picard v. ABN AMRO Bank (Ireland) Ltd*., 505 B.R. 135, 142 (S.D.N.Y. 2013) ("[T]he Court has found that, in the majority of cases, section 546(e) requires the dismissal of the Trustee's avoidance claims, except those brought under section 548(a)(1)(A) and related recovery claims under section 550(a)"); *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117, 141 (Bankr. S.D.N.Y. 2014) ("*Merkin*") (holding that Section 546(e) applied because the Trustee's complaint "fail[ed] to plausibly allege" that a subsequent transferee defendant "had actual knowledge of Madoff's Ponzi scheme" and dismissing avoidance and recovery claims except under Section 548(a)(1)(A)).

In the Opposition, the Trustee avoids the fact that, even to the extent he argues that Sentry's alleged knowledge should negate satisfaction of the "securities contract" element of Section 546(e) for the agreement between BLMIS and Sentry, the alleged initial transfers are still not avoidable under Section 546(e)—and the Trustee cannot recover from QSF—because the

---

[6] The Trustee argues that his position is supported by *Picard v. BNP Paribas S.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 594 B.R. 167 (Bankr. S.D.N.Y. 2018) and *SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*, 620 B.R. 505 (Bankr. S.D.N.Y. 2020). (Opp., at 26.) Those cases, however, were based on different facts. In *BNP Paribas*, for example, the subsequent transferees argued that Section 546(e) applied to independently protect the subsequent transfers. *BNP Paribas*, 594 B.R. at 196. QSF has not argued that the Section 546(e) analysis applies to the alleged subsequent transfers from Sentry to QSF. It argues that Section 546(e) prohibits the avoidance of the initial transfers according to its terms, and, given that QSF is not alleged to have knowledge of BLMIS's fraud, it is permitted to invoke that defense even if Sentry could not.

alleged initial transfers from BLMIS to Sentry were also made in connection with the securities

contracts between Sentry and its investors, including QSF. As both the Second Circuit and

Judge Rakoff have recognized, an initial transfer can be made "in connection with" a securities

contract between the initial transferee and a subsequent transferee.[7] (Mem. at 10-15.) The

Trustee specifically alleges in the Complaint that QSF "received transfers of Customer Property

from BLMIS . . . by withdrawing money from Fairfield Sentry." (Compl. ¶ 6); *see also* Compl.

¶ 41 ("a portion of the Fairfield Sentry Initial Transfers was subsequently transferred either

directly or indirectly to, or for the benefit of, Defendant [QSF] . . . .").) Not only is it implicit in

the Trustee's allegations that Sentry withdrew funds from BLMIS in order to pay redemptions to

subsequent transferees, no other conclusions are possible given the Trustee's global assertion

that every redemption out of Sentry was funded by BLMIS property.[8] Thus, where Sentry

accepted transfers from its BLMIS account to pay obligations to its investors whom the Trustee

now sues as alleged subsequent transferees, the initial transfers qualify under Section 546(e) "as

'related to' that later transaction under the securities contract." *Cohmad* at *9. As alleged

transfers from BLMIS to Sentry were made in order to fund redemptions to QSF and other

subsequent transferees and those redemptions were made pursuant to undisputed securities

contracts,[9] Section 546(e) applies to protect the initial transfers from avoidance for this separate

---

[7] *See, e.g.*, *Cohmad* 2013, 2013 WL 1609154, at *9 (if the "Trustee alleges that a withdrawal of funds by an investment fund from its Madoff Securities customer account occurred because an investor in that fund sought redemption of its investment under the terms of its investment contract . . . that situation appears to fit within the plain terms of Section 546(e)").

[8] *See also* Fairfield Amended Complaint, ¶¶ 53, 58, 63, 67, 76, 85, 100, 114 (alleging that Sentry withdrew funds from BLMIS accounts "in order to pay" redemptions).

[9] As Judge Rakoff noted in *Cohmad*, even if the initial transferee knew BLMIS was a fraud and was not trading securities, if the initial transferee withdrew funds from BLMIS to make a payment under a securities contract between the initial transferee and the subsequent transferee, then the withdrawal from BLMIS would be a transfer made in connection with the securities contract between the initial transferee, Sentry, and the subsequent transferee, QSF. *Cohmad*,

and independent reason. QSF is entitled to the protections of the Section 546(e) safe harbor, and the Complaint against it should be dismissed.

## II.    THE TRUSTEE HAS FAILED TO PLAUSIBLY PLEAD THAT ALLEGED SUBSEQUENT TRANSFERS FROM SENTRY TO QSF WERE BLMIS CUSTOMER PROPERTY

As QSF set forth in its opening memorandum, the Complaint should also be dismissed because it fails to plausibly allege that transfers to QSF were BLMIS customer property. (Mem., at 16-24.)  Rather than plead facts connecting alleged initial transfers between BLMIS and Sentry to the alleged subsequent transfers between Sentry and QSF that are required to state claims, *see Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) ("*Shapiro*"), the Trustee broadly alleges that, during the six years preceding the petition date, BLMIS transferred approximately $3 billion to Sentry while Sentry made outgoing transfers that exceeded $5 billion. (*See* Compl. ¶ 35, Ex. B and C.)  In its response, the Trustee does not dispute QSF's point that the Trustee has alleged billions of dollars more in subsequent transfers of supposed BLMIS customer property out of Sentry than initial transfers into Sentry.  (Opp., at 28-34.)  Based upon the Trustee's own pleaded facts, the claims against QSF are implausible and should be dismissed.

Rather than attempting to demonstrate how the Complaint might tie alleged initial transfers from BLMIS to Sentry to alleged subsequent transfers from Sentry to QSF, the Trustee argues that he need only plead facts supporting an "inference 'that the funds at issue originated with the debtor'" to satisfy his pleading obligation and that "[n]othing more is required."

---

at *7. This separate basis for asserting the protections of the safe harbor provisions does not implicate any securities contract between Sentry and BLMIS, and thus Sentry's alleged knowledge of BLMIS's fraud (and that its customer agreements with BLMIS were not real securities contracts) would not preclude an innocent subsequent transferee from relying on the safe harbor protections for its separate securities contract.

(Opp., at 28.)  Even in the cases upon which the Trustee relies, however, the Trustee's

allegations linked initial and subsequent transfers in ways that the Trustee avoids here.  *See, e.g.*,

*Merkin*, 515 B.R. at 149-150 ("[S]everal subsequent transfers took place contemporaneously or

shortly after an initial transfer . . . implying linkage.").[10]

The Trustee's Complaint against QSF only lists the dates and amounts of alleged

subsequent transfers, and, in a 75-page exhibit, every transaction recorded in BLMIS's Sentry

accounts.  The absence of any "linkage" coupled with the Trustee's own allegations against other

parties with totals of alleged subsequent transfers from Sentry to investors greatly exceeding

alleged initial transfers from BLMIS to Sentry render implausible the Trustee's conclusions that

transfers to QSF were BLMIS customer property because there was not enough BLMIS money

at Sentry to fund all the subsequent transfers the Trustee claims a right to recover.  (Mem.,

at 21-24.)  In other words, the Complaint lacks factual allegations to support conclusions that the

alleged subsequent transfers to QSF were comprised of BLMIS customer property.  The Trustee

---

[10]  *See also Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317,
341 (Bankr. S.D.N.Y. 2011) ("*Cohmad I*") (upholding the complaint because "the Trustee
alleges that the amounts of Commissions specified by BLMIS on the Payment Schedules
correspond to the amounts paid by BLMIS to Cohmad and, subsequently, to the Cohmad
Representatives"); *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs. Inc.)*, 379 B.R. 5, 30
(Bankr. E.D.N.Y. 2007) (finding the complaint pleaded linkage between the initial and
subsequent transfers since "[t]he funds . . . were preceded by fraudulent transfers of funds . . . in
amounts sufficient to cover the [subsequent] transfers"); *45 John Lofts, LLC v. Meridian Cap.
Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 736-37, 747 (Bankr. S.D.N.Y. 2019) (the
complaint alleged that two payments totaling $29.4 million were deposited into an account and
$29.4 million was transferred out within a day); *Picard v. Mayer (In re Bernard L. Madoff Inv.
Sec. LLC)*, 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021) (refuting argument that the
subsequent transfer complaint lacked plausibility, in part, based on ledger entries connecting
alleged initial and subsequent transfers).

merely assumes that the thirty-one alleged transfers from Sentry to QSF that he seeks to recover were BLMIS customer property without details to satisfy his pleading burden.[11]

The Trustee assumes that all alleged subsequent transfers made to QSF were BLMIS "Customer Property" because "Sentry invested substantially all of its funds with BLMIS." (Opp., at 28.) Even if that were true, that fact would not mean that Sentry only used BLMIS customer property to make redemption payments to its investors. Sentry received funds from other investors, which funds could just as easily have been used to make redemption payments without those funds ever being transferred to BLMIS. As a matter of simple arithmetic the Trustee's own pleadings allege that more was paid out by Sentry in redemption payments than was paid into Sentry by BLMIS. (Mem., at 21-24.) The Trustee should not be permitted to rely on vague and conclusory allegations that do not "tie any initial transfer to any subsequent transfer or Subsequent Transferee." *Shapiro*, 542 B.R. at 119. Based on the allegations in the Complaint, it is equally plausible that the subsequent transfers to QSF did not come from the $3 billion that the Trustee claims BLMIS transferred to Sentry.[12]

---

[11] The parties do not disagree as to the Trustee's pleading standard, but differ on whether the Trustee has satisfied that burden. The Trustee states that he "need only allege sufficient facts to show the relevant pathways through which the funds were transferred from BLMIS to [the subsequent transferee]." (Opp., at 28 (citing *Charles Ellerin Revocable Trust*, No. 08-01789, 2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012)).) However, the Trustee does not allege pathways through which funds were transferred from BLMIS to QSF because the transfers from BLMIS to Sentry do not match up with the transfers from Sentry to QSF. Similarly, the Trustee states that he must allege only "'the necessary vital statistics—the who, when, and how much' of the purported transfers to establish an entity as a subsequent transferee of the funds," (Opp., at 28 (citing *Merkin*, 515 B.R. at 150)), but he declines to allege how much of the transfers from BLMIS to Sentry were transmitted to QSF as an alleged subsequent transferee.

[12] The Complaint itself admits as much by alleging vaguely that, during the six years preceding the petition date, BLMIS transferred approximately $3 billion to Sentry, and that "[a] portion of [those transfers] was subsequently transferred either directly or indirectly to, or for the benefit of," QSF. (Compl. at ¶¶ 38, 40-41.)

The Trustee mischaracterizes QSF's arguments as demanding a "tracing" analysis, (Opp., at 28, 30-32), while avoiding QSF's comparison of the Trustee's allegations against QSF with its allegations in other adversary proceedings.[13]  The Trustee also argues that the mathematical discrepancies among its separate pleadings and potential inconsistency with section 550(d) of the Bankruptcy Code are irrelevant since the Trustee "'can recover from any combination of [transferees]' up to the amount avoided."  (Opp., at 33 (alteration in original) (quoting *Helms v. Metro. Life Ins. Co. (In re O'Malley)*, 601 B.R. 629, 656 (Bankr. N.D. Ill. 2019).)  But that concept provides only that, where a debtor transfers property to one party, who then transfers it to another, who then transfers it to another, the Trustee can assert claims against each of the parties who received the same property in the series of transfers under 11 U.S.C. § 550(a)(2), as long as he does not recover more than the property initially transferred.  Here, the Trustee is attempting to do something different.  BLMIS transferred money to Sentry, which may have transferred funds to some but not all of its investors.  The Trustee is now pursuing claims against Sentry investors without identifying connections between the alleged initial and subsequent transfers, and he cites no authority for the proposition that he can file mutually contradictory lawsuits against multiple Sentry investors alleging they all received the same BLMIS property.  QSF is not demanding a "'dollar-for-dollar accounting' of 'the exact funds' at issue," (Opp., at 28), but it is seeking to require the Trustee to satisfy his minimum

---

[13]  The Trustee does not challenge the Court's ability to consider the Trustee's filings in other adversary proceedings within the same SIPA recovery case.  Indeed, any such argument would contradict the Trustee's assertions relating to the incorporation of the Fairfield Amended Complaint.  (Opp., at 34-36.)  The Court should, as permitted where an amended complaint presents conflicting statements with the original, "allow the factfinder to consider the earlier pleadings as admissions in due course."  *Wilson v. JPMorgan Chase Bank, N.A.*, 2021 WL 5179914, at *1 (S.D.N.Y. Nov. 8, 2021) (quoting *Baines v. City of New York*, 2015 WL 3555758, at *1 (S.D.N.Y. June 8, 2015)).

pleading obligations by plausibly alleging that the redemption payments received by QSF from

Sentry came from initial, avoidable transfers from BLMIS to Sentry.  This is where the

Complaint fails.

In another effort to excuse the pleading deficiencies, the Trustee argues that QSF's

arguments are "premature" and that he "is a stranger to the transactions between Sentry and QSF

and is entitled to discovery on this issue."  (Opp., at 32.)  The Trustee also insists that he "does

not have all of Sentry's books and records" without identifying information he is missing or

denying that the Fairfield Settlement Agreement provided him access to Sentry's records more

than ten years ago.  (*Id.*, at 33.)  The cases cited by the Trustee for pleading latitude, (*id.*, at 32),

are inapposite insofar as they concerned subsequent transfers that had to be proven with

defendants' records.  *See Merkin*, 515 B.R. at 151; *Cohmad I*, 454 B.R. at 329.

The Supreme Court has made it clear that a mere possibility of a claim is insufficient to

satisfy a plaintiff's plausibility obligation.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007) (a complaint must be dismissed if a plaintiff "ha[s] not nudged the[]claims across the line

from conceivable to plausible . . . ."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The

plausibility standard . . . asks for more than a sheer possibility that a defendant has acted

unlawfully. . . .  Where a complaint pleads facts that are "merely consistent with" a defendant's

liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'")

(quoting *Twombly*, 550 U.S. at 557 (brackets omitted)); *accord Shapiro*, 542 B.R. at 119.  Here,

the Complaint fails to allege more than a possibility that transfers of funds from Sentry to QSF

were subsequent transfers of funds originally transferred from BLMIS to Sentry.  Accordingly,

the Trustee has failed to set forth factual allegations to support claims that alleged subsequent

transfers to QSF contained BLMIS customer property.  Those claims should be dismissed.

-12-

### III.    THE COMPLAINT DOES NOT COMPLY WITH RULE 8(a)

The Court should not allow the Trustee to excuse its failure to plead "a short and plain

statement of the claim showing that the pleader is entitled to relief," which Federal Rule of Civil

Procedure 8(a)(2) requires, simply by pointing to Rule 10(c)'s provision that "[a] statement in a

pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or

motion."  The Trustee does not seek to incorporate "[a] statement," but rather 798 paragraphs

from a document filed in a separate action that is no longer an operative pleading.  Compounding

the flaw, the Trustee fails to specify which among those hundreds of paragraphs are allegedly

relevant for the claims against QSF.

While incorporation by reference is permissible, it is "always accompanied by the

requirement that it be done with a degree of specificity and clarity which would enable a

responding party to easily determine the nature and extent of the incorporation." *In re Morrison*,

375 B.R. 179, 193 (Bankr. W.D. Pa. 2007).  Rule 8 is intended to avoid "plac[ing] an unjustified

burden on the [Court] and the party who must respond to it because they are forced to ferret out

the relevant material from a mass of verbiage."  Wright & Miller, 5 Federal Practice and

Procedure § 1282, at 422 (4th ed. 2021). When a complaint fails to comply with the "short and

plain" requirement, the court has the authority to "strike any portions that are redundant or

immaterial or to dismiss the complaint." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

Where a complaint recklessly incorporates pleadings by reference, the court has the authority to

dismiss the Complaint for violating Rule 8.  *See In re Geiger*, 446 B.R. 670, 679–80 (Bankr.

E.D. Pa. 2010).

Judicial notice, likewise, should not save the Trustee's Complaint.  A court may only take

judicial notice of a separate complaint to recognize that those allegations were made, not that

they are true.  *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006)

("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted . . . , but rather to establish the fact of such litigation and related filings") (internal citation and quotation marks omitted)); *Francis v. Accubanc Mortg. Corp.*, 2020 WL 2086038, at *1 (S.D.N.Y. Apr. 30, 2020) (same, on motion to dismiss).[14]

Without incorporation of the Fairfield Amended Complaint, the Trustee's Complaint lacks essential elements of its claims against QSF—the avoidability of the alleged initial transfers. The Trustee's attempt to incorporate a voluminous, superseded pleading fails to comply with Rule 8(a) and should be dismissed for that reason.

## IV. THE TRUSTEE'S ALLEGATIONS DO NOT SUPPORT THE EXERCISE OF PERSONAL JURISDICTION OVER QSF

The Trustee contends that the Court should exercise personal jurisdiction over QSF because it "(1) deliberately targeted the New York securities market by investing in Sentry, whose assets were managed and custodied by BLMIS in New York; (2) used New York banks to transact business with Sentry; and (3) purposefully availed itself of New York through its other investment-related activity and that of its affiliates." (Opp., at 8.) An exercise of jurisdiction based on those arguments would be both inconsistent with controlling cases and unreasonable.

### A. Investments in Sentry Should Not Establish Personal Jurisdiction

The Trustee's primary argument as to why this Court has jurisdiction over QSF is that it "purposeful[ly] target[ed] [] New York and its laws by intentionally investing with BLMIS through Sentry . . . ." (Opp., at 11; *see also id.* at 8-11.) And while QSF acknowledges

---

[14] The Trustee's reliance on *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 501 B.R. 26 (S.D.N.Y. 2013) does not address QSF's argument. That case addressed a different question (*i.e.*, whether the Trustee may avoid a subsequent transfer without first obtaining a judgment against the initial transferee), and defendants did not challenge the propriety or scope of the incorporation. *See id.*

the Court's recent decisions holding that the Trustee can base a *prima facie* case of personal

jurisdiction on allegations that a subsequent transferee defendant knowingly directed funds to

be invested in BLMIS through Sentry, *see, e.g.*, *Picard v. Banca Carige S.P.A.*, 11-ap-02570

(CGM) [ECF 123], QSF respectfully submits that such allegations cannot support jurisdiction

over a foreign defendant in the circumstances presented by this case under controlling law.

(Mem. at 26-33 (citing *Walden v. Fiore*, 571 U.S. 277, 284 (2014) and other cases).)

QSF is a foreign entity that invested in a foreign feeder fund.  To support its position,

the Trustee relies heavily on *Picard v. Bureau of Labor Insurance (In re Bernard L. Madoff Inv.

Sec. LLC)*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012) ("*BLI*") and allegations that QSF knew that

Sentry invested its funds with BLMIS and that BLMIS would perform investment management

duties for these assets.  (Opp., at 9-11.)  The Trustee's arguments, however, are inconsistent with

the Supreme Court's decision in *Walden* issued after *BLI*, as *Walden* makes clear that knowing of

or intending a consequence in a forum state does not give rise to personal jurisdiction.  The

Trustee tries to minimize *Walden*, but the Supreme Court there rejected a theory of personal

jurisdiction closely analogous to the one the Trustee promotes here.  *Walden*, 571 U.S. at 289.

Exercising personal jurisdiction over QSF based on where Sentry funds were invested

would incorrectly shift the personal jurisdiction focus from the place of QSF's "primary

conduct" to wherever the effects of that conduct could conceivably be felt.  *See id.* at 284

(rejecting "attempts to satisfy the defendant-focused 'minimum contacts' inquiry by

demonstrating contacts between the plaintiff (or third parties) and the forum State.").  Such an

analysis would undermine a defendant's ability to "'structure [its] primary conduct' to lessen or

avoid exposure to a given State's courts." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S.

Ct. 1017, 1025 (2021) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297

-15-

(1980)).  Indeed, such a test would deprive foreign parties of any meaningful way to structure

their activities to avoid being hauled into U.S. courts for investments that foreseeably find their

way into U.S. assets.

The Trustee's theory that indirect investment in the U.S. qualifies as purposeful

availment finds no support in the controlling case law.  (Mem. at 28-29.)  "For a State to exercise

jurisdiction consistent with due process . . . [t]he relationship between the defendant and the

forum 'must arise out of contacts that the "defendant *himself*" creates with the forum.'"

*Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 335 (2d Cir. 2016) (citing *Walden*, 571

U.S. at 284 (emphasis in original)).  QSF's alleged investments were in Sentry, not BLMIS.

The extent to which Sentry invested in BLMIS should be irrelevant to the jurisdictional analysis,

consistent with the Supreme Court's instruction that "it is the defendant's conduct that must form

the necessary connection with the forum State that is the basis for its jurisdiction over him."

*Walden*, 571 U.S. at 285 (internal citation omitted).

> **B.    The Incidental Use of Correspondent Bank Accounts for Foreign Transfers
> Among Foreign Parties Is Not Enough to Establish Jurisdiction**

The Trustee also argues that the Court should exercise jurisdiction because QSF allegedly

transmitted subscription funds and received redemption payments through banks that used

U.S. correspondent accounts to process payments.  (Opp., at 11-15.)  Despite its emphasis on

bank accounts, the Trustee's allegations are still that funds for the QSF account were wired to

Sentry outside of the United States and that Sentry sent redemption payments to QSF outside of

the United States.  Those U.S. currency denominated transfers allegedly passed through U.S.

banks, and the Trustee does not claim that QSF maintained an account in New York or wired

money to and or from New York accounts.

Incidental uses of bank accounts to facilitate U.S. dollar-denominated payments for foreign securities transactions of the kind to which the Trustee points do not rise to the level of purposeful availment necessary to support personal jurisdiction. *See Hau Yin To v. HSBC Holdings, PLC*, 2017 WL 816136, at *6 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017) (rejecting personal jurisdiction over foreign defendants because their alleged connection to the forum was the transmission of information and funds "to and from BLMIS . . . [as an] incidental consequence[] of fulfilling a foreign contract . . . .");[15] *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339-40 (S.D.N.Y. 2016) (finding transmission of information and funds to and from BLMIS to be "incidental consequences of fulfilling a foreign contract . . . insufficient to 'project' the Foreign Defendants into New York" and not amounting "to 'purposeful availment' of the laws of [the forum]").[16]

Judge Caproni recently reviewed and summarized the current state of the law in this District regarding the jurisdictional significance (or lack thereof) of correspondent accounts:

> The vast majority of cases in which the issue is whether the use of a correspondent bank account constitutes the transaction of business under Section 302(a)(1) involve a non-domiciliary bank defendant's use of a correspondent account, not an individual's wiring of funds that incidentally pass through a New York-based correspondent account. . . . Plaintiffs have identified

---

[15] In affirming dismissal on personal jurisdiction grounds in *Hau Yin To*, the Second Circuit explained that "[t]he communication and transmission of information to and from [BLMIS] in connection with fund administration and custodial duties do not give rise to personal jurisdiction . . . Nor does the mere maintenance of correspondent bank accounts at an affiliate bank in New York." 700 F. App'x at 67 (internal citations omitted). Notably, that case involved bank defendants that corresponded and sent money directly to BLMIS and a closer relationship to BLMIS than QSF.

[16] The Trustee in the Opposition points to cases standing for the general proposition that the use of New York bank accounts to effectuate transfers of funds may support personal jurisdiction, (Opp., at 12-13), but none of those cases concerned correspondent accounts of the kind at issue in this action. The Trustee cites other cases to claim that purposeful use of correspondent bank accounts can support assertions of specific jurisdiction, (*id.*), but in those cases the defendant banks made use of their own correspondent bank accounts in connection with allegedly illegal activity connected to the United States. None of those facts are present here.

> no authority, nor is the Court aware of any, standing for the principle that a non-
> domiciliary individual defendant may be subject to specific jurisdiction in
> New York under Section 302(a)(1) because the non-domiciliary moved money
> between foreign bank accounts, with the transfer passing through New York
> via a correspondent account.

*Berdeaux v. OneCoin Ltd.*, 2021 WL 4267693, at *12 (S.D.N.Y. Sept. 20, 2021) (citations and

footnote omitted).  The Trustee's allegations regarding the incidental passage of funds through

U.S. banks before being deposited in accounts abroad are insufficient to establish personal

jurisdiction.[17]

### C.    The Other Contacts the Trustee Alleges Between QSF and New York Do Not Establish Personal Jurisdiction Over QSF

The Trustee's remaining contentions about alleged contacts with FGG or activity related

to an account at Sentry do not support a jurisdictional finding against QSF.  (Opp., at 15-18.)

For example, the Trustee claims that New York choice of law and choice of forum

provisions included in Sentry subscription agreements he assumes QSF executed evidence a

"strong nexus with New York" that support the exercise of jurisdiction.  (Opp., at 16-17.)

Even if the Trustee's factual assumptions were true, the Trustee does not allege that any such

agreements were negotiated or executed with Sentry in the United States.  (*See* Compl. ¶ 6.)

In any event, Judge Bernstein ruled with respect to claims brought by the Fairfield Liquidators

against its investors that the Sentry subscription agreements are "irrelevant" to claims to recover

redemption payments because "consent to the Subscription Agreement does not constitute

consent to personal jurisdiction in U.S. Redeemer Actions."  *See Fairfield Sentry Ltd. v. Theodor

GGC Amsterdam*, 2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018).  It follows that

---

[17]  Documents the Trustee submits in support of its Opposition do not suggest that
QSF maintained an account with a New York bank.  (*See, e.g.,* R. Beckerlegge Decl. Exs. 3
and 4 [ECF 114-3 and 114-4] (identifying correspondent account at JP Morgan in the name of
"Société International de Finance, Zurich").)

any such clauses in subscription agreements to which the Trustee was not a party do not relate to the redemptions at issue and provide no basis for personal jurisdiction.

Similarly, the Trustee proffers three documents that he claims evidence communications between a QSF affiliate and FGG and one 2004 meeting in New York attended by representatives of that separate entity. Even if the Court were to assume that the contacts of an affiliate could be imputed to QSF, such *de minimus* contacts are not the type that can reasonably justify an exercise of personal jurisdiction over QSF in this case. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 787 (2d Cir. 1999) (when assessing jurisdiction "courts must look at the totality of the circumstances concerning the party's interactions with, and activities within, the state"). Nothing about those proffered contacts could support exercises of jurisdiction for each of the alleged investments in and redemptions from Sentry.

**D.    The Trustee Does Not Attempt to Establish Jurisdiction for All Alleged Transfers**

In *Picard v. BNP Paribas S.A. (In re Madoff)*, 594 B.R. 167 (Bankr. S.D.N.Y 2018), Judge Bernstein recognized that the Trustee must establish jurisdiction for each separate redemption that is the subject of an attempted clawback. *Id.* at 190 (stating the trustee "must establish the court's jurisdiction with respect to each claim asserted"). The Trustee makes no attempt to do so here. Even if the Court were to consider the contacts the Trustee has proferred as relevant to any specific redemption, such contacts cannot support jurisdiction over claims to recover thirty-one redemptions made over a multi-year period. (*See, e.g.*, *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 380, 382 (1967) (fact that Illinois corporation's representatives traveled to New York and spent one day there conferring with plaintiff over contract dispute did not rise to purposeful availment under CPLR § 302(a)(1)).

### E.     An Exercise of Personal Jurisdiction Over QSF Is Not Reasonable

If the Court were to conclude that the Trustee has alleged a basis to assert personal

jurisdiction over QSF with respect to any one of the Trustee's claims, an exercise of jurisdiction

would still be unreasonable.  As the Trustee concedes, a "reasonableness inquiry requires the

court to determine whether the assertion of personal jurisdiction over the defendant comports

with 'traditional notions of fair play and substantial justice' under the circumstances of the

particular case."  (Opp., at 19 (citing *Waldman*, 835 F. 3d at 331).)  An exercise of jurisdiction

over QSF in this case would fail to meet that basic test.  The Trustee contends that foreign QSF

purposefully availed itself of the privileges and benefits of doing business in New York

by investing in a foreign feeder fund because that feeder fund invested with BLMIS.  At the

same time, the Trustee has taken the position that subsequent transferee defendants like QSF

were not BLMIS customers, cannot assert customer claims, and do not have the rights of direct

customers because their legal and commercial relationship was with Sentry—not BLMIS.  The

Trustee should not be permitted to have it both ways—to claim that the Court has jurisdiction

over QSF for purposes of clawback claims based on allegedly indirect investments in BLMIS

through Sentry while maintaining that the same defendants have lesser legal protections because

of the indirect foreign investment structure.  This is fundamentally unfair and highlights how

QSF could not have purposefully availed itself of the privileges and benefits of doing business in

New York.

### CONCLUSION

For all of the foregoing reasons, and for those stated in QSF's opening memorandum of

law, the Trustee's Complaint against QSF should be dismissed in its entirety.

Dated:    July 28, 2022
          New York, New York

By:    /s/ Thomas E. Lynch
       Thomas E. Lynch
       JONES DAY
       250 Vesey Street
       New York, New York 10281
       Telephone: (212) 326-3939
       Facsimile: (212) 755-7306
       Email: telynch@jonesday.com

       *Attorneys for QS Finance Ltd.*
       *(formerly known as Quilvest Finance Ltd.)*