JENNER & BLOCK LLP
Richard Levin
Carl Wedoff
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600

Vincent E. Lazar
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350

*Counsel for Defendant Trincastar Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>*Plaintiff-Applicant,*<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br>*Defendant.* | Adv. Proc. No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re<br><br>BERNARD L. MADOFF,<br><br>*Debtor.* | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>TRINCASTAR CORPORATION,<br><br>*Defendant.* | Adv. Proc. No. 11-2731 (CGM)<br><br>**TRINCASTAR CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT** |

# Table of Contents

Table of Contents.................................................................................................. i

Table of Authorities............................................................................................. ii

Standard on Motion to Dismiss............................................................................ 1

Facts.................................................................................................................... 2

   I.    The Complaint's Allegations Relating to Personal Jurisdiction................... 2

   II.   The Complaint's Allegations Relating to Recovery of Subsequent Transfers............. 3

Argument............................................................................................................. 5

   I.    The Complaint Does Not Adequately Allege Facts Showing That Trincastar Is Subject To Personal Jurisdiction................................................................ 5

   II.   The Fairfield Amended Complaint's Allegations Establish that Section 546(e) Bars the Avoidance of the Fairfield Initial Transfers.................................10

      A.    The Relevant Fairfield Initial Transfers Made More than Two Years Before the Filing Date May Not Be Avoided Under Section 548(a)(1)(A)...............11

      B.    The Fairfield Initial Transfers Were Settlement Payments and Made in Connection with a Securities Contract...........................................................12

      C.    The Fairfield Initial Transfers Were Made By or To a Covered Entity. .................14

         1.    The Fairfield Initial Transfers Were Made By a Stockbroker. .........................14

         2.    The Fairfield Initial Transfers Were Made To A "Financial Institution."........15

      D.    Section 546(e) Does Not Contain a "Knowledge" Exception. ...................16

Conclusion .........................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Asahi Metal Indus. Co., Ltd. v. Superior Court,*
    480 U.S. 102 (1987) ....................................................................................7

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ....................................................................................1

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ....................................................................................1

*In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Revocable
    Trust),*
    773 F.3d 411 (2d Cir. 2014) ................................................................. *passim*

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985) ....................................................................................6

*Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.,*
    651 F.3d 329 (2d Cir. 2011) .......................................................................13

*Daimler AG v. Bauman,*
    517 U.S. 117 (2014) ....................................................................................6

*Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.),*
    323 B.R. 857 (Bankr. S.D.N.Y. 2005) ........................................................15

*In re Fairfield Sentry Ltd. (Fairfield Sentry Ltd. v. Theodoor GGC
    Amsterdam),*
    2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ............................ 15, 16

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry
    Ltd.),*
    2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) .........................................9

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.,*
    141 S. Ct. 1017 (2021) .................................................................................6

*Goodyear Dunlop Tires Ops., S.A. v. Brown,*
    564 U.S. 915 (2011) .....................................................................................9

*Hanson v. Denckla,*
    357 U.S. 235 (1958) .....................................................................................6

*Kimco Exch. Place Corp. v. Thomas Benz, Inc.,*
    34 A.D.3d 433 (2d Dep't 2006) ...................................................................10

*Law v. Siegel,*
571 U.S. 415 (2014) ........................................................................................18

*In re Lehman Bros. Holdings Inc.,*
535 B.R. 608 (Bankr. S.D.N.Y. 2015) ...........................................................2

*Merit Mgmt. Grp., LP v. FTI Consulting Inc.,*
138 S. Ct. 883 (2018) .....................................................................................18

*In re Motors Liquidation Co.,*
596 B.R. 774 (Bankr. S.D.N.Y. 2019) ..........................................................18

*New Hampshire v. Maine,*
532 U.S. 742 (2001) .......................................................................................16

*Palnik v. Westlake Entm't, Inc.,*
344 Fed. App'x 249 (6th Cir. 2009) ................................................................6

*Papasan v. Allain,*
478 U.S. 265 (1986) .........................................................................................2

*Picard v. BNP Paribas S.A.,*
594 B.R. 167 (Bankr. S.D.N.Y. 2018) ............................................................9

*Picard v. Chais (In re Bernard L. Madoff Inv. Sec. LLC),*
440 B.R. 274 (Bankr. S.D.N.Y. 2010) ............................................................5

*Picard v. Fairfield Sentry Ltd.,*
Adv. Proc. No. 09-1239 (Bankr. S.D.N.Y. June 7, 2011), ECF 92 ....................4

*In re Roco Corp.,*
701 F.2d 978 (1st Cir. 1983) .........................................................................17

*Shaffer v. Heitner,*
433 U.S. 186 (1977) .........................................................................................5

*Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.),*
337 B.R. 791 (Bankr. S.D.N.Y. 2005) ..........................................................17

*SIPC v. Bernard L. Madoff Inv. Sec. LLC,*
2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ...............................13, 14, 17, 18

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (Picard v. Fairfield Inv. Fund Ltd.),*
2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ......................10, 11, 16, 17

*SPV Osus Ltd. V. UBS AG,*
882 F.3d 333 (2d Cir. 2018) .......................................................................5, 8

*Storm v. Storm,*
328 F.3d 941 (7th Cir. 2003) .........................................................................18

*Taylor v. Sturgell,*
    553 U.S. 880 (2008) ...................................................................................... 16

*In re Tribune Co. Fraudulent Conveyance Litig.,*
    946 F.3d 66 (2d Cir. 2019) ............................................................. 13, 15, 18

*Walden v. Fiore,*
    571 U.S. 277 (2014) ..................................................................................... 5, 7

*Waldman v. Palestine Liberation Org.,*
    835 F.3d 317 (2d Cir. 2016) ........................................................................ 6, 7

*Welinsky v. Resort of the World D.N.V.,*
    839 F.2d 928 (2d Cir. 1988) ........................................................................... 8

**Statutes**

11 U.S.C. § 101(22)(A) ......................................................................................... 15

11 U.S.C. § 741(7)(A)(i) ....................................................................................... 13

11 U.S.C. § 741(8) ................................................................................................ 17

11 U.S.C. § 546(e) .......................................................................................... *passim*

11 U.S.C. § 547 ....................................................................................................... 3

11 U.S.C. § 548(a) .................................................................................................. 3

**Other Authorities**

Fed. R. Bankr. P. 7004 ............................................................................................ 3

Fed. R. Bankr. P. 7004(f) ........................................................................................ 5

Fed. R. Bankr. P. 7012 ........................................................................................ 1, 2

Fed. R. Civ. P. 8(a)(1) ............................................................................................ 6

Fed. R. Civ. P. 12(b)(2) .......................................................................................... 2

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 1

Defendant Trincastar Corporation ("**Trincastar**") submits this memorandum of law in support of its motion to dismiss the Complaint, Adv. No. 11-3731, ECF 1 (the "**Complaint**"), filed by plaintiff Irving H. Picard, Trustee (the "**trustee**") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("**BLMIS**") and the Estate of Bernard L. Madoff.

The Complaint seeks recovery of avoidable transfers of BLMIS customer property that Trincastar allegedly subsequently received from Fairfield Sentry Ltd. ("**Sentry**"). This Court should dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) in whole or in part because Trincastar is not subject to personal jurisdiction in this Court and because the Complaint shows that section 546(e) of the Bankruptcy Code bars avoidance of most of the relevant initial transfers.[1]

### Standard on Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6) and Bankruptcy Rule 7012, the Court must dismiss a claim for failure to state a claim on which relief may be granted "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Moreover, a claimant's allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A plausible claim pleads facts "that allow … the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

---

[1] In this Memorandum, Trincastar raises certain arguments similar to those the Court has addressed in other BLMIS litigation. To the extent the Court has ruled on such arguments, Trincastar respectfully raises them to preserve its appellate rights.

While the Court must accept well-pleaded factual allegations as true, it need not accept assertions that are unsupported by factual allegations, *id.* at 678–79, nor "legal conclusion couched as a factual allegation[,]" *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) and Bankruptcy Rule 7012 for lack of personal jurisdiction, "the plaintiff bears the burden to make a prima facie showing that jurisdiction exists." *In re Lehman Bros. Holdings Inc.*, 535 B.R. 608, 618 (Bankr. S.D.N.Y. 2015).

## Facts

### I.    The Complaint's Allegations Relating to Personal Jurisdiction.

The Complaint contains only two non-conclusory fact allegations regarding this Court's personal jurisdiction over Trincastar:

- Defendant Trincaster [sic, *passim*] … knowingly direct[ed] funds to be invested with New York-based BLMIS through Fairfield Sentry[;]

- Defendant Trincaster entered into a subscription agreement with Fairfield Sentry under which Trincaster submitted to New York jurisdiction, sent a copy of the subscription agreement to FGG's New York City office, and wired funds to Fairfield Sentry through a bank in New York.

(Compl. ¶ 5.[2])

---

[2] The Complaint's full allegations regarding personal jurisdiction, including its conclusory fact allegations, are as follows:

> 5. Defendant Trincaster is subject to personal jurisdiction in this judicial district because it purposely availed itself of the laws and protections of the United States and the state of New York by, among other things, knowingly directing funds to be invested with New York-based BLMIS through Fairfield Sentry. Defendant Trincaster knowingly received transfers of Customer Property from BLMIS. The Trustee's investigation to date reveals that Defendant Trincaster obtained this Customer Property by withdrawing money from Fairfield Sentry, a Fairfield Greenwich Group ("FGG") managed Madoff feeder fund. By directing its investment through FGG, Defendant Trincaster knowingly accepted the rights, benefits, and privileges of conducting business and/or transactions in the United States and New York. Upon information and belief, Defendant Trincaster entered into a subscription agreement with Fairfield Sentry under which Trincaster submitted to New York jurisdiction, sent a copy of the subscription agreement to FGG's New York City office, and wired funds to Fairfield Sentry through a bank in New York. Defendant

2

## II.    The Complaint's Allegations Relating to Recovery of Subsequent Transfers.

In broad outline, the trustee's Complaint alleges BLMIS transferred cash to Sentry, a British Virgin Islands feeder fund (Compl. ¶¶ 34-36 & Ex. B); the cash was customer property as defined in SIPA (*id.*); and Sentry thereafter directly or indirectly transferred the customer property to the defendant Trincastar (*id.* ¶ 39 & Ex. C), a corporation with its principal point of contact in Switzerland. (*Id.* ¶ 6.)

The Complaint alleges that all transfers from BLMIS to Sentry made within six years before the "Filing Date,"[3] referred to collectively as the "Fairfield Initial Transfers," "are avoidable, should be avoided, and are recoverable under sections 544, 550, and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly SIPA § 78fff-2(c)(3), and sections 273–279 of New York and Debtor and Creditor Law," as to the "Fairfield Sentry Six Year Initial Transfers" (Compl. ¶ 34), under section 548(a) of the Bankruptcy Code as to the "Fairfield Sentry Two Year Initial Transfers" (*id.* ¶ 35), under section 547 of the Bankruptcy Code as to the "Fairfield Sentry Preference Period Initial Transfers" (*id.* ¶ 36), and that under section 550, the transferred property is recoverable from Trincastar as an immediate or mediate (subsequent) transferee. (*Id.* ¶¶ 39, 42–45.)

---

Trincaster thus derived significant revenue from New York and maintained minimum contacts and/or general business contacts with the United States and New York in connection with the claims alleged herein.

6. Defendant Trincaster should reasonably expect to be subject to New York jurisdiction and is subject to personal jurisdiction pursuant to New York Civil Practice Law & Rules § 301 (McKinney 2001) and Bankruptcy Rule 7004.

Compl. ¶¶ 5-6.

[3] Capitalized terms in this Memorandum that are defined in the Complaint are used with the same meaning as in the Complaint.

The Fairfield Amended Complaint[4] alleges that Sentry "is organized as an international business company under the laws of the British Virgin Islands[,]" (*id.* ¶ 32), and that Sentry was one of BLMIS's largest feeder funds. (*Id.* ¶¶ 2, 20, 33–34.) It sought to avoid approximately $3.0 billion in Fairfield Initial Transfers from BLMIS to Sentry. (Fairfield Am. Compl. ¶ 536.) The trustee settled his action against Sentry and some of the other Fairfield funds over 10 years ago. *Settlement Agreement*, *Picard v. Fairfield Sentry Ltd.*, Adv. Proc. No. 09-1239 (Bankr. S.D.N.Y. May 9, 2011), ECF 69-2 (the "**Fairfield Settlement Agreement**") (copy attached to Req. for Jud. Not. as Exhibit B).[5]

Exhibit B to the Complaint is a spreadsheet in which the trustee lists all activity in the accounts Sentry maintained with BLMIS, including the "Fairfield Initial Transfers." (Compl. ¶ 37.) Exhibit B but does not specify which transactions constituted the Fairfield Initial Transfers. Exhibit C to the Complaint lists six payments from Sentry to Trincastar. Giving the exhibits the reading most favorable to the trustee, it would appear the Fairfield Initial Transfers[6] were those labeled on Exhibit B as "CHECK WIRE" (that is, not inter-account transfers, transfers to the IRS, or transfers to a money market fund). If so, (i) the Fairfield Initial Transfers and (ii) the alleged subsequent transfers of customer property that the trustee alleges are recoverable from Trincastar listed on Exhibit B are summarized in the following table:

| Date | # of Transfers | BLMIS to Sentry (USD) | Sentry to Trincastar (USD) |
|---|---|---|---|
| 5/2003–7/2003 | 3 | 120,000,000 | |

[4] A copy of the Fairfield Amended Complaint, without exhibits, is attached as Exhibit A to the Request for Judicial Notice ("**Req. for Jud. Not.**") filed contemporaneously herewith.

[5] The Fairfield Settlement Agreement was subsequently approved by this Court. *Picard v. Fairfield Sentry Ltd.*, Adv. Proc. No. 09-1239 (Bankr. S.D.N.Y. June 7, 2011), ECF 92.

[6] Although the spreadsheets include all transactions since the opening of the accounts, the Fairfield Initial Transfers include only those made within six years before the December 11, 2008 Filing Date.

| Date | # of Transfers | BLMIS to Sentry (USD) | Sentry to Trincastar (USD) |
|---|---|---|---|
| 1/21/2004 | | | (2,000,000) |
| 2/16/2005 | | | (2,000,000) |
| 4/2005–11/2006 | 7 | 725,000,000 | |
| 11/17/2005 | | | (311,800) |
| 12/2005–4/2006 | 7 | 465,000,000 | |
| 6/16/2006 | | | (2,000,000) |
| 7/19/2007 | | | (4,000,000) |
| 9/2007–10/2007 | 2 | 160,000,000 | |
| 12/19/2007 | | | (3,000,000) |
| 1/2008–11/2008 | 8 | 1,470,000,000 | |
| **TOTALS** | | **2,895,000,000** | **(13,311,800)** |

(Compl., Exs. B, C.)

## Argument

### I.    The Complaint Does Not Adequately Allege Facts Showing That Trincastar Is Subject To Personal Jurisdiction.

The Complaint should be dismissed for failure to adequately allege facts establishing personal jurisdiction over Trincastar. A bankruptcy court may exercise personal jurisdiction over a defendant in a proceeding arising in or related to a case under the Bankruptcy Code if the exercise is consistent with the U.S. Constitution. Fed. R. Bankr. P. 7004(f); *Picard v. Chais (In re Bernard L. Madoff Inv. Sec. LLC),* 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010). Due process requires allegations "(1) that a defendant has certain minimum contacts with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *SPV Osus Ltd. V. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (citation omitted). The minimum contacts sufficient to support specific jurisdiction focus on "the relationship Among the defendant, the forum, and the litigation," *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977), a relationship that "must arise out of contacts that the defendant himself creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quotation marks omitted).

5

A court may exercise specific personal jurisdiction only if it finds sufficient contacts directly related to the action.[7] *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) ("The plaintiff's claims … must arise out of or relate to the defendant's contacts with the forum."); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76 (1985). A person should not be required to defend against claims in a foreign court if he could not reasonably have anticipated being haled into that court or if he did not purposefully avail himself of the benefits and protections of the forum's laws. *Ford Motor Co.*, 141 S. Ct. at 1027; *Hanson v. Denckla*, 357 U.S. 235, 251–52 (1958).

The trustee bears the burden of establishing that this Court has personal jurisdiction over Trincastar and must plead sufficient facts that, if proven, would support personal jurisdiction. *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 334 (2d Cir. 2016). The "short and plain statement of the grounds for the court's jurisdiction" required under Rule 8(a)(1) must state facts that support personal jurisdiction with reasonable specificity. *Palnik v. Westlake Entm't, Inc.,* 344 Fed. App'x 249, 251–52 (6th Cir. 2009) (citing *Twombly,* 550 U.S. 567). Each of the Complaint's jurisdictional allegations is unavailing.

*First*, the Complaint alleges that Trincastar is subject to specific jurisdiction because it "knowingly directing funds to be invested with New York-based BLMIS through Fairfield

---

[7] The Complaint does not allege facts showing, and the trustee does not appear to assert, that Trincastar is subject to general personal jurisdiction, which exists only when the defendant is "at home" in the forum, either by being incorporated under the laws of the forum or having its principal place of business there. *Daimler AG v. Bauman*, 517 U.S. 117, 136-37 (2014). The complaint includes a single conclusory allusion to general personal jurisdiction, stating that Trincastar "maintained … general business contacts with the United States and New York in connection with the claims alleged herein." (Compl. ¶ 6.) If the trustee contends Trincastar is subject to this Court's general personal jurisdiction, the Complaint lacks the requisite supporting factual allegations. The trustee does not allege that Trincastar conducts business operations in the United States or has an office, postal address, telephone listing, agent, employee, property, marketing, sales, or other physical presence in the United States. Trincastar is not "at home" in the United States and is not subject to the general personal jurisdiction of this Court.

Sentry." (Compl. ¶ 5.) Personal jurisdiction is not measured by third-party contacts, but on contacts "the Defendant himself creates." *Waldman*, 835 F.3d at 335. *Sentry's* contacts with BLMIS cannot establish that *Trincastar* "accepted the rights, benefits, and privileges of conducting business and/or transactions in the United States and the State of New York" (Compl. ¶ 5), and settled Supreme Court precedent has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between … third parties and the forum State." *Walden*, 571 U.S. at 284.

Mere knowledge that Sentry would invest in New York is insufficient to support jurisdiction. *Walden* is dispositive on this point. In *Walden*, a Nevada-based plaintiff sued a Georgia police officer in Nevada court for an unlawful seizure of money in a Georgia airport. The police officer knew that the plaintiff had connections to Nevada and that the seizure would delay return of plaintiff's property to Nevada, but the Supreme Court held it unconstitutional to exercise personal jurisdiction over the police officer in Nevada. The foreseeability of plaintiff's connection to the forum is irrelevant to whether there is jurisdiction over defendant because it "allows a plaintiff 's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* at 289. The Court has "consistently rejected attempts to satisfy this defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third-parties) and the forum State." *Id.* at 284; *see also Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 112 (1987) ("The 'substantial connection' … [for] minimum contacts must come about by an action of the defendant purposefully directed toward the forum State.").

Moreover, such a holding would mean that an investor without any U.S. contacts who invests in a foreign investment fund that in turn invests the fund's assets in U.S. securities is subject to personal jurisdiction in the United States for claims arising from the bankruptcy of the broker-dealer, with whom the investor had no contact, that the foreign investment fund

7

used to trade securities. Such a holding goes well beyond any existing legal basis for personal jurisdiction in the United States.

Similarly, the trustee cannot establish specific contacts through redemption of Sentry shares. The trustee does not allege that Trincastar sent funds to or received funds from BLMIS in New York for the purchase of securities in the United States. As a mere investor in Sentry, Trincastar would not have had authority or reason to send funds to or from BLMIS. Only the underlying feeder funds would have reason to do so, and their contacts are not attributable to Trincastar. Nor can Sentry's withdrawal of funds from BLMIS be imputed to Trincastar. While a court might hold a principal liable for the jurisdictional contacts of its agent, *see Welinsky v. Resort of the World D.N.V.*, 839 F.2d 928, 930 (2d Cir. 1988), there is no allegation that Sentry acted in this capacity, and the allegation that Trincastar generally received redemptions well after the last prior BLMIS-Sentry Transfer strongly contradicts an agency relationship.

*Second*, the Complaint alleges that Trincastar wired funds to Sentry "through a bank in New York." (Compl. ¶ 5.) The allegation is conclusory and provides no detail—not even the name of the bank. But even if the conclusory allegation were credited, Trincastar's use of a New York bank was incidental to a foreign investment contract that was negotiated and performed entirely abroad and does not create the minimum contacts necessary to exercise specific jurisdiction. *See SPV OSUS*, 882 F.3d at 345 ("communications with and payments to New York merely to ensure compliance with contract terms negotiated and executed outside of New York do not 'project' a defendant into the state sufficiently to confer specific jurisdiction over foreign defendants" (quoting *Hau Yin To v. HSBC Holdings PLC*, 2017 WL 816136, at *6–7 (S.D.N.Y. Mar. 1, 2017)); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339–40 (S.D.N.Y. 2016) (same). Trincastar's fortuitous use of a New York bank is not a basis for the Court to exercise specific jurisdiction over Trincastar. And because personal jurisdiction

8

must be evaluated on a transaction-by-transaction basis, *see Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A.*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018), the Complaint's allegations about the deposit of funds with Sentry does not establish personal jurisdiction over claims relating to the redemption or withdrawal of funds from Sentry.

*Third,* the Complaint alleges that Trincastar "submitted to New York jurisdiction" under its subscription agreement with Sentry. Trincastar is unaware of any provision under which it submitted to New York jurisdiction in a subscription agreement, and the trustee does not identify any such provision. This bare allegation is insufficient to establish jurisdiction. Even if the trustee identified such a provision, his argument is misplaced. In *Fairfield Sentry Ltd. v. Migani*, the UK Privy Council held that a subscription agreement does not govern redemptions from Sentry nor does it make New York law applicable to redemptions; instead, the redemptions are governed by Sentry's Articles of Association and BVI law. [2014] UKPC 9, ¶¶ 10, 17, 20.[8] Following *Migani*, this Court held that a suit by the Liquidators of Sentry, a party to the Subscription Agreement, to recover a redemption payment is not a suit "with respect to [the Subscription] Agreement" and therefore not within the scope of its forum selection clause. *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 2018 WL 3756343, at *11-12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*"). Accordingly, the subscription agreements do not provide a consent to suit for claims over redemptions by the trustee, who is not even a party to or a third-party beneficiary of the agreements. Sentry—not Trincastar—set the terms of the transactions. This allegation does not show "purposeful" contacts with New York and is insufficient to serve as a basis for specific personal jurisdiction. *See Spetner*, 495 F. Supp. at 113-14, 116, 117.

---

[8] A copy of *Migani* is attached to the Request for Judicial Notice as Exhibit D.

*Fourth*, the trustee alleges, "upon information and belief," that Trincastar sent a copy of a subscription agreement to FGG's New York City office (Compl. ¶ 5.) Trincastar is unaware that any subscription agreements were sent to New York, and the trustee does not identify any. Even if Trincastar *had* sent a subscription agreement to FGG's New York City office, this allegation implicitly acknowledges that the subscription agreement was executed by Trincastar outside of the United States, and the trustee does not allege the contract between Sentry and Trincastar—two foreign entities—was formed inside the United States. *See Kimco Exch. Place Corp. v. Thomas Benz, Inc.,* 34 A.D.3d 433, 434 (2d Dep't 2006) ("The defendants' acts of faxing the executed contracts to New York … do not qualify as purposeful acts constituting the transacting of business."). Moreover, the trustee's claim does not "arise out of or relate to" Trincastar's sending a copy of a subscription agreement to New York (if that ever happened).

## II. The Fairfield Amended Complaint's Allegations Establish that Section 546(e) Bars the Avoidance of the Fairfield Initial Transfers.

The Complaint should also be dismissed under section 546(e) of the Bankruptcy Code.[9] A motion to dismiss may rely on an affirmative defense if the facts necessary for the defense appear on the face of the complaint. *SIPC v. Bernard L. Madoff Inv. Sec. LLC* (*Picard v. Fairfield Inv. Fund Ltd.*), 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021). The

---

[9] "Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not avoid a transfer that is a margin payment, as defined in section 101, 741, or 761 of this title, or settlement payment, as defined in section 101 or 741 of this title, made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, or that is a transfer made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, in connection with a securities contract, as defined in section 741(7), commodity contract, as defined in section 761(4), or forward contract, that is made before the commencement of the case, except under section 548(a)(1)(A) of this title." 11 U.S.C. § 546(e).

trustee's allegations show that section 546(e) prohibits the recovery of the Fairfield Initial

Transfers and establish Trincastar's defenses to recovery under section 550(b).[10]

In an action to recover a subsequent transfer, the subsequent transferee may assert

any defenses to avoidability of the initial transfer the initial transferee could have asserted,

including section 546(e). *See id.* at *3 ("Where the initial transferee fails to raise a § 546(e)

defense against the Trustee's avoidance of certain transfers, as is the case here … the

subsequent transferee is nonetheless entitled to raise a § 546(e) defense against recovery of

those funds.").

Section 546(e) bars the trustee from avoiding (other than under section 548(a)(1)(A)

with a limited reach-back period of two years) a transfer, *inter alia*, (1) that was either a

settlement payment or a transfer in connection with a securities contract; and (2) made by or

to (or for the benefit of) a covered entity such as a stockbroker, financial institution, or

financial participant. Because BLMIS's initial transfers to Sentry relevant to this adversary

proceeding are protected from avoidance by section 546(e), they therefore cannot be recovered

from a subsequent transferee, and the Complaint must be dismissed.

### A. The Relevant Fairfield Initial Transfers Made More than Two Years Before the Filing Date May Not Be Avoided Under Section 548(a)(1)(A).

Under section 548(a)(1)(A), a trustee may avoid only transfers made within two years

before the Filing Date. Any transfer before that date is protected by section 546(e) and may

not be avoided.

Exhibit B to the Complaint lists 19 transfers from BLMIS to Sentry that predated the

final Sentry transfer to Trincastar on December 19, 2007. The Complaint does not specify

---

[10] The Court may also take judicial notice of the allegations in the Fairfield Amended Complaint, which are incorporated by reference into the Complaint. *See generally* Req. for Jud. Not.

which of these 19 transfers included customer property that was allegedly subsequently transferred to Trincastar. (Any transfers from BLMIS to Sentry that occurred *after* the final transfer to Trincastar obviously are irrelevant.) Of those 19 BLMIS-to-Sentry transfers, all but two were more than two years before the Filing Date. Only these two transfers—dated September 6, 2007 and October 3, 2007—are subject to avoidance under section 548(a)(1)(A), and only one Sentry-to-Trincastar transfer—$3,000,000 on December 19, 2007—postdates these two BLMIS-to-Sentry transfers. Because section 546(e) protects transfers made more than two years before the Filing Date from avoidance, none of the $10,311,800 in earlier transfers from Sentry to Trincastar could have constituted a subsequent transfer of BLMIS customer property whose initial transfer to Sentry is avoidable.

### B. The Fairfield Initial Transfers Were Settlement Payments and Made in Connection with a Securities Contract.

Section 546(e) applies to transfers from BLMIS to its account holders and shields them from avoidance, both because the documents governing BLMIS customers' accounts constituted securities contracts and because the payments BLMIS made to those customers were made "in connection with" those contracts and also constituted "settlement payments." *In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Revocable Trust)*, 773 F.3d 411, 417, 418–23 (2d Cir. 2014) ("*Fishman*"). Either of those reasons would suffice to invoke the safe harbor. The Court of Appeals rejected the trustee's argument that the safe harbor did not apply because Madoff did not actually carry out the promised securities transactions with BLMIS's customers. *Id.* at 419–20. Therefore, the Fairfield Initial Transfers were settlement payments made in connection with a securities contract that come within the protection of section 546(e).

There's another reason section 546(e) applies to the Fairfield Initial Transfers. Section 546(e) applies to a transfer "in connection with *a* securities contract," not just to a transfer in

connection with *the* securities contract between the initial transferor and transferee. If the initial transferee withdrew funds from BLMIS to make a payment under a securities contract between the initial transferee and the subsequent transferee, then the withdrawal from BLMIS also would be a transfer made in connection with the contract between the initial transferee and the subsequent transferee and would not be avoidable. As Judge Rakoff stated:

> Take, for example, a hypothetical situation in which the Trustee alleges that a withdrawal of funds by an investment fund from its Madoff Securities customer account occurred because an investor in that fund sought redemption of its investment under the terms of its investment contract. Assuming that either the investment fund or the investor qualifies as a financial institution or financial participant, and barring other circumstances that may appear on the facts of a given case, that situation appears to fit within the plain terms of Section 546(e): an initial transfer that was "made by or to (or for the benefit of) a … financial institution [or] financial participant … in connection with a securities contract."

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 2013 WL 1609154, at *9 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*") (footnote omitted)[11]; *see Fishman*, 773 F.3d at 422 ("Section 546(e) sets a low bar for the required relationship between the securities contract and the transfer sought to be avoided.").

The definition of "securities contract" includes "a contract for the purchase, sale, or loan of a security." 11 U.S.C. § 741(7)(A)(i). "The term 'redemption,' in the securities context, means 'repurchase.'" *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 80 (2d Cir. 2019) ("*Tribune I*"). Accordingly, "the definition of securities contract … includes …

---

[11] Judge Rakoff also observed that "[t]o the extent that, for example, an initial transfer from Madoff [S]ecurities to an investment fund customer and the subsequent transfer from the investment fund to its redeeming investors may together comprise a 'settlement payment' under *Enron* [*Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 339 (2d Cir. 2011)], that transfer may fall within the purview of Section 546(e), assuming it meets the statute's other requirements." *Cohmad*, 2013 WL 1609154 *9 n.5.

redemption requests." *Cohmad*, 2013 WL 1609154, at *8. All transfers from Sentry to Trincastar were payments for the redemption of Sentry shares.[12] Therefore, a redemption request that Sentry honored under its Articles of Association is itself a securities contract, the payment of the redemption amount is a settlement payment, and Sentry's withdrawals of funds from BLMIS to make the redemption payment were therefore transfers in connection with a securities contract and unavoidable on that basis.

### C. The Fairfield Initial Transfers Were Made By or To a Covered Entity.

The alleged Fairfield Initial Transfers were made by or to an entity covered by section 546(e) both because the alleged initial transfers were made by a stockbroker and because they were made to a financial institution, though either of those facts alone would suffice.

### 1. The Fairfield Initial Transfers Were Made By a Stockbroker.

In a prior adversary proceeding in this SIPA case, the District Court concluded:

> Overall, Madoff Securities, which was registered as a stockbroker with the SEC, clearly engaged in securities transactions. … [E]ven assuming the truth of the allegation that Madoff Securities' investment advisory division never traded securities on behalf of clients, Madoff Securities nonetheless qualifies as a stockbroker by virtue of the trading conducted by its market making and proprietary trading divisions.

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 476 B.R. 715, 719 (S.D.N.Y. 2012) (footnote and citation omitted), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 773 F.3d 411 (2d Cir. 2014). As the Second Circuit noted on appeal, "[i]t is not disputed [by the Trustee] that BLMIS was a 'stockbroker' for the purposes of § 546(e)." *Fishman*, 773 F.3d at 417; *see* Br.

---

[12] Sentry's Articles of Association (copy attached to the Req. for Jud. Not. as Exhibit C) governed Sentry's payments to Trincastar, which were for the redemption of Trincastar's shares in Sentry. *See Migani* (Req. for Jud. Not., Ex. D) ¶ 10 ("the terms of the subscriber's membership of the Fund, which govern the redemption of its shares … are to be found in the Articles of Association of the Fund").

for Pl.-Appellant Irving H. Picard at i-ii, 5, *In re Bernard L. Madoff Inv. Sec. LLC*, No. 12-2557 (2d Cir. May 15, 2013), ECF 145 (not challenging stockbroker finding on appeal). That fact is no longer subject to dispute.

### 2.  The Fairfield Initial Transfers Were Made To A "Financial Institution."

Section 101(22) defines "financial institution" to include not only "an entity that is a commercial or savings bank," but also the customer of such a bank "when [it] is acting as agent or custodian for a customer … in connection with a securities contract." 11 U.S.C. § 101(22)(A). In *In re Fairfield Sentry Ltd. (Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam)*, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*"), this Court held that the Fairfield funds (Sentry, Sigma, and Lambda) were "financial institutions" because they were customers of Citco Bank Nederland N.V. Dublin Branch ("**Citco Bank**"), a bank regulated by the Central Bank of the Netherlands and registered with the Central Bank of Ireland. *Fairfield III*, 2020 WL 7345988, at *6 & n.11,[13] which acted as the Fairfield Funds' agent in connection with the securities contracts under which the BLMIS transfers to Sentry were made. *Id.* at *7. As this Court found in *Fairfield III*:

> [T]he [Fairfield] Liquidators' admission that redemptions were paid by Citco Bank establishes the necessary agency. It is implausible to infer that Citco Bank made the redemption payments to specific redeemers in specific amounts absent the [Fairfield] Funds' directions to do so. Moreover, Citco Bank accepted those directions by executing the

---

[13]  *See* De Nederlandsche Bank, *Information Detail: Citco Bank Nederland N.V.*, https://www.dnb.nl/en/public-register/information-detail/?registerCode=WFTDG&relation Number=B0275 (last visited July 28, 2022) (identifying Citco Bank Nederland N.V. as "[c]arrying on the business of a bank," including "[a]cceptance of deposits and other repayable funds"); Central Bank of Ireland, *Financial Service Provider Profile: Citco Bank Nederland NV Dublin Branch*, http://registers.centralbank.ie/FirmDataPage.aspx?firmReference Number=C27278 (last visited July 28, 2022) (classifying Citco Bank as a "credit institution … whose business is to receive deposits or other repayable funds from the public and to grant credits for its own account"). This Court can take judicial notice of information from such public registries. *See Tribune I*, 946 F.3d at 78; *Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*, 323 B.R. 857, 869 (Bankr. S.D.N.Y. 2005).

15

> redemption payments. Based on the foregoing, the Funds were customers of Citco Bank who acted as their agents in connection with the securities contracts pursuant to which the redemption payments were made, and the Funds were, therefore "financial institutions" within the meaning of 11 U.S.C. § 546(e).

2020 WL 7345988, at *7 (footnote omitted). This Court's holding in *Fairfield III* binds the trustee because he was in privity with the Fairfield Liquidators.[14] Even if not, there is no reason for this Court to deviate from Judge Bernstein's well-reasoned *Fairfield III* decision.

## D. Section 546(e) Does Not Contain a "Knowledge" Exception.

The trustee will likely respond that the safe harbor does not apply here because the initial transferee, Sentry, allegedly knew of Madoff's fraud and thus knew that there was no actual "settlement payment" or "securities contract." In *Fairfield Investment Fund*, which involved a later version of the *Fairfield* complaint than the one that was incorporated by reference here, this Court accepted that the trustee adequately pled Sentry's actual knowledge. *See Fairfield Inv. Fund*, 2021 WL 3477479, at *4–5 (citing Fairfield Second Amended Complaint). It then denied a motion to dismiss based on section 546(e), relying on Judge Rakoff's statement that "'if the Trustee sufficiently alleges that the transferee from whom he seeks to recover a fraudulent transfer knew of Madoff Securities' fraud, that

---

[14] As described above, the Fairfield Settlement Agreement provides for the sharing of recoveries on the parties' claims for recovery of property that Sentry transferred, cooperation and consultation on bringing those claims, and a joint interest agreement. The trustee's and the Liquidators' agreed joint interest in any such recovered BLMIS customer property constitutes a "preexisting 'substantive legal relationship,'" focused on a successive or concurrent interest in property, of the kind recognized by the Supreme Court to give rise to non-party issue preclusion. *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008). Because the trustee is in privity with the Liquidators in actions to recover alleged BLMIS customer property, such as the actions at issue in *Fairfield III*, and because the issue of Sentry's "financial institution" status was "actually litigated" and "essential" to the final judgments dismissing numerous such actions on the ground of the section 546(e) safe harbor, this Court's finding in *Fairfield III* that Sentry was a "financial institution" in connection with redemption payments from Sentry to its subscribers is binding on the trustee. *See New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001) (stating requirements for issue preclusion).

transferee cannot claim the protections of Section 546(e)'s safe harbor.'" *Id.* at *4 (quoting *Cohmad*, 2013 WL 1609154, at *7).

That argument does not defeat the application of section 546(e) in this case. *First*, as noted above, even if there was no actual securities contract between BLMIS and Sentry, there still was a securities contract between Sentry and Trincastar, and there is no allegation that the securities contracts between Sentry and its investors were not real. As Judge Rakoff ruled in *Cohmad*, even if the initial transferee knew BLMIS was a fraud and was not trading securities, if the initial transferee withdrew funds from BLMIS to make a payment under a securities contract between the initial transferee and the subsequent transferee, then the withdrawal from BLMIS would be a transfer made in connection with the securities contract between the initial transferee, Sentry, and the subsequent transferee, Trincastar, and would not be avoidable. 2013 WL 1609154, at *7.

*Second*, nothing in section 546(e) turns on the knowledge of the transferee.[15] The *only* exception to section 546(e) is a claim under section 548(a)(1)(A), which involves actual fraudulent intent by the *transferor. See Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005) (under § 548(a)(1)(A) "it is the intent of the transferor and not the transferee that is relevant") (citations omitted). Nor does knowledge play any role in the definitions of "settlement payment," 11 U.S.C. § 741(8), or "securities contract," *id.* § 741(7). Where the Code creates an exemption or safe harbor and

---

[15] Although the Second Circuit in *Fishman* noted that the defendants there had "every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions," 773 F.3d at 420, it did not state that the result would have differed had that not been the case. The only circumstances in which the knowledge of the transferee would be relevant would be if it could be imputed to the transferor, such as where the transferee, "as the [transferor]'s president, director, and sole shareholder … was in a position to control the disposition of [the transferor's] property." *See In re Roco Corp.*, 701 F.2d 978, 984 (1st Cir. 1983) (citation omitted).

specifies exceptions, a court is not free to create additional exceptions, even when doing so is motivated by a party's alleged wrongdoing. *See Law v. Siegel*, 571 U.S. 415, 424–25 (2014). The courts must adhere to "the plain meaning of the language" of the statute. *See Merit Mgmt. Grp., LP v. FTI Consulting Inc.*, 138 S. Ct. 883, 897 (2018). A holding that transferee knowledge defeats the safe harbor would be inconsistent with section 546(e)'s language.

And when a court does create an exception to an express Congressional command, as Judge Rakoff did in imposing the "actual knowledge" exception to section 546(e), the exception should be construed narrowly and not expanded. *See, e.g., Storm v. Storm*, 328 F.3d 941, 944 (7th Cir. 2003) ("judicially created exception to the statutory grant of diversity jurisdiction should be construed narrowly"); *In re Motors Liquidation Co.*, 596 B.R. 774, 788 (Bankr. S.D.N.Y. 2019) (narrowly construing judicially created "earmarking doctrine" in section 549 avoidance action). Judge Rakoff's *Cohmad* opinion is clear that the exception should apply only to a defendant, whether initial or subsequent, who had actual knowledge the debtor was not trading securities, not to any recipient in the chain of transfers: "In sum, if the Trustee sufficiently alleges that *the transferee from whom he seeks to recover a fraudulent transfer* knew of Madoff Securities' fraud, *that transferee* cannot claim the protections of Section 546(e)'s safe harbor." 2013 WL 1609154, at *7 (emphasis added). The exception to section 546(e) should not be expanded to taint an initial transfer so as to ensnare a subsequent transferee who had no knowledge that the debtor was not trading securities.

Section 546(e) reflects a balancing of interests by Congress, one of which is the protection of market stability. "Unwinding settled securities transactions … would seriously undermine … markets in which certainty, speed, finality, and stability are necessary to attract capital." *Tribune I*, 946 F.3d at 90. "Permitting the clawback of millions, if not billions, of dollars from BLMIS clients—many of whom are institutional investors and feeder funds—

would likely cause the very 'displacement' that Congress hoped to minimize in enacting

§ 546(e)." *Fishman*, 773 F.3d at 420 (citation omitted).

### Conclusion

For the foregoing reasons, the Court should dismiss the Complaint.

Dated:   New York, New York
         July 29, 2022

By: /s/ *Richard Levin*

JENNER & BLOCK LLP
Richard Levin
Carl Wedoff
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600
rlevin@jenner.com
cwedoff@jenner.com

Vincent E. Lazar
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350
vlazar@jenner.com

*Counsel for Defendant Trincastar
Corporation*