**KATTEN MUCHIN ROSENMAN LLP**
50 Rockefeller Plaza
New York, New York 10020
(212) 940-8800

**Hearing Date:** September 14, 2022
at 10:00 a.m. (ET)

*Attorneys for Defendants*
*Access International Advisors LLC,*
*Access International Advisors Ltd.,*
*Access Management Luxembourg SA,*
*Access Partners SA, Patrick Littaye,*
*Claudine Magon de la Villehuchet, and*
*Groupement Financier Ltd.*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br>Plaintiff-Applicant,<br>v.<br>BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,<br>Defendant. | **Adv. Pro. No. 08-1789 (CGM)**<br><br>**SIPA Liquidation**<br>**(Substantively Consolidated)** |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>UBS AG, UBS EUROPE SE (f/k/a UBS (LUXEMBOURG) SA), UBS FUND SERVICES (LUXEMBOURG) SA, UBS THIRD PARTY MANAGEMENT COMPANY SA, ACCESS INTERNATIONAL ADVISORS LLC, ACCESS INTERNATIONAL ADVISORS LTD., ACCESS MANAGEMENT LUXEMBOURG SA (f/k/a ACCESS INTERNATIONAL ADVISORS | **Adv. Pro. No. 10-04285 (CGM)** |

| | |
|---|---|
| (LUXEMBOURG) SA) as represented by | ) |
| its Liquidator MAÎTRE FERNAND | ) |
| ENTRINGER, ACCESS PARTNERS SA | ) |
| as represented by its Liquidator MAÎTRE | ) |
| FERNAND ENTRINGER, PATRICK | ) |
| LITTAYE, CLAUDINE MAGON DE LA | ) |
| VILLEHUCHET (a/k/a CLAUDINE DE | ) |
| LA VILLEHUCHET) in her capacity as | ) |
| Executrix under the Will of THIERRY | ) |
| MAGON DE LA VILLEHUCHET (a/k/a | ) |
| RENE THIERRY DE LA | ) |
| VILLEHUCHET), CLAUDINE MAGON | ) |
| DE LA VILLEHUCHET (a/k/a | ) |
| CLAUDINE DE LA VILLEHUCHET) | ) |
| individually as the sole beneficiary under | ) |
| the Will of THIERRY MAGON DE LA | ) |
| VILLEHUCHET (a/k/a RENE THIERRY | ) |
| DE LA VILLEHUCHET), PIERRE | ) |
| DELANDMETER, THEODORE | ) |
| DUMBAULD, LUXALPHA SICAV as | ) |
| represented by its Liquidators MAÎTRE | ) |
| ALAIN RUKAVINA and PAUL | ) |
| LAPLUME, MAÎTRE ALAIN | ) |
| RUKAVINA AND PAUL LAPLUME, in | ) |
| their capacities as liquidators and | ) |
| representatives of LUXALPHA, | ) |
| GROUPEMENT FINANCIER LTD., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THE ACCESS DEFENDANTS' AND GROUPEMENT'S
<u>MOTION TO DISMISS THE TRUSTEE'S SECOND AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS.................................................................................................I

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ............................................................................................................. 1

POINT I - THERE IS NO PERSONAL JURISDICTION OVER THE JMDS ............................ 1

    A.    The Trustee Improperly Group Pleads the Jurisdictional Allegations.................... 1

    B.    The Trustee Otherwise Fails to Establish Specific Jurisdiction over the JMDs ................................................................................................................. 3

        1.    The Alleged Contacts Between Each of the JMDs and the United States Are Insufficient to Establish Jurisdiction ......................................... 3

        2.    The JMDs' Receipt of Fees Does Not Establish Jurisdiction .................... 6

        3.    The Trustee's Claims against the JMDs Do Not "Arise Out Of" Their Alleged Contacts with the Forum...................................................... 7

    C.    The JMDs Are Not Mere Departments or Agents of Access LLC or AIA Inc. ................................................................................................................. 8

        1.    The JMDs Were Not Mere Departments of Access LLC or AIA Inc. ................................................................................................................. 8

        2.    Access LLC or AIA Inc. Did Not Act as the JMDs' Agent ..................... 12

    D.    The JMDs Have Not Waived Their Defenses of Lack of Personal Jurisdiction ................................................................................................... 13

    E.    The Trustee Is Not Entitled to Jurisdictional Discovery....................................... 15

POINT II - IT IS NOT REASONABLE TO SUBJECT THE JMDS TO JURISDICTION IN THE UNITED STATES ................................................................................. 16

POINT III - THE TRUSTEE DOES NOT PLAUSIBLY ALLEGE THAT ACCESS DEFENDANTS RECEIVED BLMIS CUSTOMER PROPERTY ............................................. 16

POINT IV - THE SECTION 546(E) SAFE HARBOR SHIELDS ALL OF THE ALLEGED INITIAL TRANSFERS MADE MORE THAN TWO YEARS BEFORE THE FILING DATE................................................................................................... 18

    A.    The Trustee Concedes That Section 546(e) Applies in the First Instance............ 18

B.      Any Section 546(e) "Knowledge" Exception Does Not Apply to the Access
        Defendants. ......................................................................................................... 19

C.      The SAC Fails to Allege That Any Defendant Had Actual Knowledge .............. 20

POINT V - THE SECTION 546(E) SAFE HARBOR SHIELDS ALL OF THE
REMAINING ALLEGED INITIAL TRANSFERS .................................................................... 20

CONCLUSION ............................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
    599 B.R. 730 (Bankr. S.D.N.Y. 2019) ....................................................................17

*A.W.L.I. Grp., Inc., v. Amber Freight Shipping Lines*
    No. 10–CV–5464 (ADS)(ARL), 2011 WL 6130149, at *16 (E.D.N.Y. Dec. 9,
    2011) ......................................................................................................................16

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
    529 F. Supp. 3d 111 (S.D.N.Y. 2021) .....................................................................2

*Aerotel, Ltd. v. Sprint Corp.*,
    100 F. Supp. 2d 189 (S.D.N.Y. 2000) ...................................................................12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................17

*Bellomo v. Penn Life Co.*,
    488 F. Supp. 744 (S.D.N.Y. 1980).........................................................................11

*In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Recoverable
    Trust)*,
    773 F.3d 411 (2d Cir. 2014)............................................................................19, 20

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007)...................................................................................15

*Chew v. Dietrich*,
    143 F.3d 24 (2d Cir. 1998)......................................................................................8

*Commodity Futures Trading Comm'n v. TFS-ICAP, LLC*,
    415 F. Supp. 3d 371 (S.D.N.Y. 2019).....................................................................6

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014).................................................................................................3

*Edmondson v. RCI Hospitality Holdings, Inc.*,
    No. 16-CV-2242 (VEC), 2020 WL 1503452 (S.D.N.Y. Mar. 30, 2020) ...............18

*ESI, Inc. v. Coastal Corp.*,
    61 F. Supp. 2d 35 (S.D.N.Y. 1999)........................................................................10

*Fagan v. Republic of Austria,*
  2011 WL 1197677 (S.D.N.Y. Mar. 25, 2011) .......................................................................9

*Frontera Res. Azer. Corp. v. State Oil Co. of Azer. Republic,*
  582 F.3d 393 (2d Cir. 2009)..............................................................................................15

*FrontPoint Asian Event Driven Fund L.P. v. Citibank, N.A.,*
  No. 16-CV-5263 (AKH), 2017 WL 3600425 (S.D.N.Y. Aug. 18, 2017) ...........................2, 3

*Frummer v. Hilton Hotels Int'l, Inc.,*
  19 N.Y.2d 533 (1967) .......................................................................................................12

*Gelfand v. Tanner Motor Tours, Ltd.,*
  385 F.2d 116 (2d Cir. 1967)..............................................................................................12

*Indemnity Ins. of N. Am. v. K-Line Am., Inc.,*
  No. 06-CV-0615 (BSJ), 2007 WL 1732435 (S.D.N.Y. June 15, 2007) ..............................12

*J. McIntyre Mach., Ltd v. Nicastro,*
  564 U.S. 873 (2011)............................................................................................................4

*J.L.B. Equities v. Ocwen Fin. Corp.,*
  131 F. Supp. 2d 544 (S.D.N.Y. 2001)...........................................................................11, 12

*Jacobs v. Felix Bloch Erben Verlag Fur Buhne Film Und Funk KG,*
  160 F. Supp. 2d 722 (S.D.N.Y. 2001)...........................................................................10, 12

*Kalin v. Xanboo Inc.,*
  No. 04-CV-5931 (RJS), 2009 WL 928279 (S.D.N.Y. Mar. 30, 2009)..................................11

*Langenberg v. Sofair,*
  No. 03-CV-8339 (KMK), 2006 WL 2628348 (S.D.N.Y. Sept. 11, 2006)............................15

*In re Levant Line, S.A.,*
  166 B.R. 221 (Bankr. S.D.N.Y. 1994)............................................................................9, 10

*Louis Marx & Co. v. Fuji Seiko Co., Ltd.,*
  453 F. Supp. 385 (S.D.N.Y. 1978).....................................................................................13

*Marsh v. Kitchen,*
  480 F.2d 1270 (2d Cir. 1973).............................................................................................12

*Mattel, Inc. v. Barbie-Club.com,*
  310 F.3d 293 (2d Cir. 2002)...............................................................................................14

*In re Mexican Gov't Bonds Antitrust Litig.,*
  No. 18-CV-2830 (JPO), 2020 WL 7046837 (S.D.N.Y. Nov. 30, 2020) .............................4, 7

*NewMarkets Partners LLC v. Oppenheimer*,
    638 F. Supp. 2d 394 (S.D.N.Y. 2009)......................................................................13

*Picard v. Banque SYZ & Co. (In re: Bernard L. Madoff)*,
    Adv. Pro. No. 11-02149 (Bankr. S.D.N.Y. June 14, 2022) ................................4, 18

*Picard v. BNP Paribas S.A. (In re Madoff)*,
    594 B.R. 167 (Bankr. S.D.N.Y. 2018) ...............................................................7, 21

*Picard v. Mayer*,
    No. 20-01316 (CGM), 2021 WL 4994435 (Bankr. S.D.N.Y. Oct. 27, 2021) .........................2

*Picard v. Merkin (in re BLMIS)*,
    515 B.R. 117 (Bankr. S.D.N.Y. 2014)...............................................................17, 20

*Picard v. Multi-Strategy Fund Ltd. (In re: Bernard L Madoff)*,
    Adv. Pro. No. 12-01205 (Bankr. S.D.N.Y. June 13, 2022) ................................4, 18

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*,
    542 B.R. 100 (Bankr. S.D.N.Y. 2015) ...................................................................17

*Picard v. UBS AG et al.*,
    11-CV-4212, ECF No. 20 .........................................................................................14

*Picard v. UBS AG et al.*,
    11-CV-4212, ECF No. 7 (CM) ..........................................................................1, 14

*Picard v. UBS AG et al.*,
    11-CV-5051, ECF. No. 100 .....................................................................................14

*Reers v. Deutsche Bahn AG*,
    320 F. Supp. 2d 140 (S.D.N.Y. 2004).....................................................................11

*Self Int'l Ltd. v. La Salle Nat'l Bank*,
    No. 01-CV-4291 (RCC), 2002 WL 500372 (S.D.N.Y. Mar. 29, 2002) ...............11

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Securities)*,
    No. 12-MC-115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013).............14, 20

*Sedig v. Okemo Mountain*,
    204 A.D.2d 709 (2d Dep't 1994) ............................................................................13

*Self Int'l Ltd. v. La Salle Nat'l Bank*,
    No. 01-CV-4291 (RCC), 2002 WL 500372 (S.D.N.Y. Mar. 29, 2002) ...............11

*SPV Osus v. AIA LLC*,
    No. 15-CV-619 (JSR), 2016 WL 3039192 (S.D.N.Y. May 24, 2016) ......................6

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
    162 F.3d 724 (2d Cir. 1998)....................................................................................15

*U.S. Bank. Nat'l Ass'n v. Bank of Am. N.A.*,
  916 F.3d 143 (2d Cir. 2019)..................................................................................8

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*,
  751 F.2d 117 (2d Cir. 1984)...............................................................................9, 10

*Walden v. Fiore*,
  571 U.S. 277 (2014)..............................................................................................3

*Waldman v. Palestine Liberation Org.*,
  835 F.3d 317 (2d Cir. 2016)................................................................................16

*Wiwa v. Royal Dutch Petroleum Co.*,
  226 F.3d 88 (2d Cir. 2000)..................................................................................12

**Statutes**

11 U.S.C. § 546(e) ........................................................................................1, 19, 20

**Rules**

Fed. R. Bank. P. 2004 ..........................................................................................15

Fed. R. Bank. P. 7004 ............................................................................................3

Fed. R. Civ. P. 9(b) ............................................................................................1, 2

Fed. R. Civ. P. 12(b) ..........................................................................................1, 15

Fed. R. Civ. P. 12(b)(2)..........................................................................................1

Fed. R. Civ. P. 12(b)(6)..........................................................................................1

NY CPLR § 301 .....................................................................................................3

The Access Defendants[1] and Groupement respectfully submit this reply memorandum of law in further support of their motion pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(6), and 9(b) to dismiss the claims asserted against them in the SAC.

## PRELIMINARY STATEMENT

In their moving papers, the JMDs demonstrated that this court has no personal jurisdiction over them because they are all foreign companies or persons who rendered services entirely offshore, to offshore entities and were paid in funds located offshore. The Trustee ignores the JMDs' arguments and supporting evidence and instead advances two fundamentally flawed counterarguments based upon: (i) conclusory and unsupported allegations of purported contacts with the United States, and (ii) improper attempts to aggregate the activities of the separately organized and legally distinct Access entities. Because these positons are unsupported in law and fact, the Trustee has failed to demonstrate jurisdiction over the JMDs. Separately, the Trustee's opposition does not show or plausibly allege that the Access Defendants are subsequent transferees of customer property, and fails to justify why the subsequent transfers received by the moving defendants do not fall within the safe harbor of Section 546(e), despite these transfers falling squarely within the scope of the statute's intended protections.

## ARGUMENT

### POINT I - THERE IS NO PERSONAL JURISDICTION OVER THE JMDS

**A.    The Trustee Improperly Group Pleads the Jurisdictional Allegations**

It is black letter law that jurisdictional group pleading is improper; instead a "plaintiff is required to establish personal jurisdiction separately over each defendant." *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021); Mov. Br., at 6.

---

[1] Unless otherwise noted, capitalized terms used herein have the same meaning as in the Access Defendants' and Groupement's moving brief (Adv. Pro. No. 10-04285 Dkt. No. 292) ("Mov. Br.").

The Trustee attempts to downplay his group pleading, alleging that "each collective term was defined in the SAC and carefully used thereafter." Opp'n, at 76. Such assertion is demonstrably false. In the SAC, the Trustee directs his jurisdictional allegations to the "Defendants" and "Access Defendants" without any clarity as to which, if any, of the JMDs such allegations pertain (*see, e.g.,* SAC ¶ 22), and makes numerous allegations against a hodge-podge of varying and undefined "group entities" including: "Defendants" (*see, e.g.*, SAC ¶¶ 13–15, 22), "Access Defendants" (*see, e.g.*, SAC ¶¶ 15, 82, 209, 228, 315–6, 318, 320), "Access entities" (*see, e.g.*, ¶¶ 77, 134), and "Access" (*see, e.g.*, ¶¶ 80–2, 97, 105, 109–12, 130, 135, 174–9, 199, 209, 233, 246–8). These collective terms are neither defined nor "carefully used" and are insufficient to establish jurisdiction over the JMDs.

The Trustee's argument that individualized jurisdictional pleading is not required is equally unavailing. <u>First</u>, the Trustee argues that jurisdictional "group pleading is permissible where…the Complaint 'informs each defendant of the nature of his or her alleged participation in the fraud.'" Opp'n, at 75 (citing *Picard v. Mayer*, No. 20-01316 (CGM), 2021 WL 4994435, at *10 (Bankr. S.D.N.Y. Oct. 27, 2021) (emphasis added)). However, *Mayer* is inapposite, as it addresses an exception to the Fed. R. Civ. P. 9(b)'s specificity pleading standard, and in no way addresses the individualized ***jurisdictional*** pleading requirements. The nature of the conduct of the purported fraud does not equate to the basis for subjecting foreign defendants to US jurisdiction. <u>Second</u>, the Trustee alleges that group pleading is "permissible when the conduct of one entity is attributable to another." Opp'n, at 75 (citing *FrontPoint Asian Event Driven Fund L.P. v. Citibank, N.A.*, No. 16-CV-5263 (AKH), 2017 WL 3600425, at *6 (S.D.N.Y. Aug. 18, 2017)). But *FrontPoint* found that no jurisdiction existed over the foreign defendants and makes clear that "[f]or purposes of alleging that there is personal jurisdiction over each [of the foreign defendants], plaintiffs may not

refer to affiliated defendants by a conclusory collective name unless plaintiffs adequately allege that the conduct of one affiliate is attributable to another." *Id*. Here, the Trustee has failed entirely to demonstrate that any of the JMDs are alter egos of Access LLC or AIA Inc., let alone that their jurisdictional conduct is attributable to them. *See infra* Point I.C.1.

## B.     The Trustee Otherwise Fails to Establish Specific Jurisdiction over the JMDs[2]

The Trustee also erroneously relies on excerpts of various documents and testimony to support his jurisdictional argument that the JMDs "made it possible for Luxalpha and Groupement to invest in BLMIS in New York." Opp'n, at 17. Putting aside the fact that "making [something] possible" is not a test for "minimum contacts," the Trustee only points to contacts among foreign entities and actions taken or performed outside of the United States. These allegations may establish a relationship between Luxalpha and Groupement and the JMDs, but fail to establish that the JMDs had minimum contacts with the United States. *See Walden v. Fiore*, 571 U.S. 277, 284–85 (2014) ("We have consistently rejected attempts to satisfy the defendant focused 'minimum contacts' inquiry by demonstrating contacts between . . . third parties and the forum.").

### 1.     The Alleged Contacts Between Each of the JMDs and the United States Are Insufficient to Establish Jurisdiction[3]

**First**, as to Access Ltd., the Trustee alleges that it "held itself out" as Groupement's investment manager and that its responsibilities in that role were to "keep the net assets of the Fund under surveillance and constant review [and] carry out reviews and controls of the portfolios."

---

[2] The Trustee concedes that his general jurisdiction allegations are not based on the JMDs' actual contact with the US, but instead entirely based on his flawed theory that the JMDs are "mere departments" of Access LLC and AIA Inc. Opp'n, at 17. The Trustee's mere department and agency theories are addressed *infra* Point I.C.

[3] Although the Court has imposed its jurisdiction over subsequent transferee defendants in the recent *Multi-Strategy* and *Banque Syz* cases, the threadbare jurisdictional allegations in the Complaint are far less robust in this case. *Picard v. Banque SYZ & Co. (In re: Bernard L. Madoff)*, Adv. Pro. No. 11-02149 (Bankr. S.D.N.Y. June 14, 2022); *Picard v. Multi-Strategy Fund Ltd. (In re: Bernard L Madoff)*, Adv. Pro. No. 12-01205 (Bankr. S.D.N.Y. June 13, 2022). The Trustee's allegations all relate to activities conducted entirely outside of the United States with foreign feeder funds and foreign investors and cites no precedent for conflating the JMDs' services rendered to foreign entities by the JMDs abroad with a non-existent direct investment in BLMIS.

Opp'n, at 22 (citing SAC ¶¶ 89). The Trustee further alleges that Access Ltd. served as Luxalpha's "consultant and exclusive introducing agent." *Id.* In neither instance does the Trustee explain how Access Ltd.'s performance of services in the Bahamas for a Luxembourg corporation show that Access Ltd. directed its actions at New York or purposefully availed itself of the benefits and protections of New York laws. Indeed, the Trustee alleges that, at most, Access Ltd. "***knew*** that any funds being invested into Luxalpha were being directed to New York" (Opp'n, at 22 (emphasis added)), not that it took any actions itself to direct money into New York. Knowledge of what others may be directing to the forum is insufficient as a matter of law. *See, e.g.*, *J. McIntyre Mach., Ltd v. Nicastro*, 564 U.S. 873, 882, 886 (2011) (plurality opinion) ("[I]t is not enough that [a] defendant might have predicted that its goods will reach the forum," but rather the defendant must "engage[] in conduct purposefully directed at [the forum]."); *In re Mexican Gov't Bonds Antitrust Litig.*, No. 18-CV-2830 (JPO), 2020 WL 7046837, at *3–4 (S.D.N.Y. Nov. 30, 2020) (holding neither attempt to profit from conduct underlying the claim nor foreseeability of a harm in forum were sufficient to establish jurisdiction in absence of a defendant's contact with forum).

**Second**, as to AML/AIA (Lux), the Trustee alleges that it acted as: (i) Luxalpha's portfolio advisor, pursuant to which it advised UBS SA, monitored the "investment restrictions" applicable to Luxalpha, and performed "surveillance and constant review" of Luxalpha's assets; (ii) Luxalpha's portfolio manager with responsibilities to "'distribute, market and promote the Fund,' to 'solicit and transmit subscription orders,' to 'receive and transmit redemption and conversion orders,' to 'receive from investors payment…for their subscription,' and…'where applicable allocate to Investors…the Shares to be issued to them;'" and (iii) Groupement's investment advisor "tasked with advising Groupement on matters relating to its portfolio, its investment objectives, and to liaise with Groupement's principal banker and administration

4

agent."[4] Opp'n, at 23 (citing Beckerlegge Decl. Ex. 21 at 2-3). Once again, the Trustee's

allegations all point to responsibilities and efforts conducted entirely outside of the United States,

with and for a foreign feeder fund and foreign investors. And again, the Trustee can only reference

AML's purported "knowledge" that its actions would *facilitate* investment in BLMIS by other

entities, not that it AML itself directed any action into the United States. *See* Opp'n, at 23. Even if

true, AML aiding a third party, who subsequently directs *its* acts into the United States, is a far cry

from AML *itself* transacting business within the United States.

**Third**, as to AP (Lux), the Trustee claims that it was: (i) Luxalpha's investment advisor,

whose responsibilities included "advising" Luxalpha's portfolio managers UBS Third Party

Management Company S.A. and AML (both Luxembourg entities) with regard to "investment

recommendations;" and (ii) "nominal adviser" to Groupement. Opp'n, at 24. Once again, these are

unquestionably relationships between foreign entities, and purported actions taken wholly outside

of the United States. The Trustee does not, because he cannot, allege that AP (Lux) conducted any

activity, investment or otherwise, that was directed into the United States.

**Fourth**, as to Patrick Littaye, the Trustee's reliance on his infrequent visits to the United

States to attend general Access strategy meetings, and one-off meetings with Madoff, is

insufficient to support a finding that this Court has jurisdiction over Littaye. Littaye is a French

citizen and worked nearly exclusively in Europe, visiting the United States three or four times

annually to attend meetings of some of the Access entities, which neither focused on BLMIS- nor

Madoff-related funds. *See* SAC ¶ 101; Littaye Decl. ¶¶ 4, 8.[5] The Trustee fails to plead a

---

[4] AML was manager in name only, as its tenure as manager lasted for less than a month before Madoff's fraud was revealed, and never performed any of these responsibilities for Luxalpha. *See* Littaye Decl. ¶ 32.

[5] The Trustee faults the JMDs for providing evidence related to these meetings, yet, "[w]hen evaluating a motion to dismiss for lack of personal jurisdiction, courts 'may consider materials outside the pleadings, including affidavits and other written materials.'" *Commodity Futures Trading Comm'n v. TFS-ICAP, LLC*, 415 F. Supp. 3d 371, 380 (S.D.N.Y. 2019) (internal citations omitted). Further, courts are not required to accept conclusory allegations. *Id.*

connection between the meetings and the Trustee's claims against Littaye for recovery of unspecified secondary transfers made abroad, and instead claims in conclusory fashion in his Opposition that "Access's business was so dependent upon Madoff that its strategic meetings necessarily dealt with Madoff." Opp'n, at 20. Similarly, as laid out in the JMDs' moving papers, infrequent visits Littaye had with Madoff, which often centered on general conversations about the US economy or financial markets, did not relate to redemptions generally and never addressed the alleged subsequent transfers made by the Foreign Access Defendants to Littaye that the Trustee seeks to recover through this action. Littaye Decl. ¶ 9.[6]

### 2.     The JMDs' Receipt of Fees Does Not Establish Jurisdiction

The Trustee makes numerous allegations related to the JMDs' receipt of fees, but does not –because he cannot–demonstrate how the mere receipt of fees is a basis for specific jurisdiction. First, and primarily, there are no plausible allegations that the alleged subsequent transfers to the JMDs, all foreign entities or persons, occurred in the United States, or came from entities located there. They did not. All transfers were extraterritorial. Second, any fees received by service providers were not plausibly alleged to be part of BLMIS redemptions. Holdback reserves for running costs and administrative fees were set aside at the time investors invested in the Funds, prior to any investment into, or redemption from, BLMIS. See Mov. Br., at 15–16; Littaye Decl. ¶¶ 56–7; Littaye Decl. Exs. 44–5. Third, The Trustee must establish jurisdiction "with respect to

---

Moreover, the Trustee has the documents on which the JMDs rely for roughly a decade, as they were included within the millions of documents Access LLC and AIA Inc. produced. See Mov. Br., at 1.

[6] The Trustee relies heavily on *SPV Osus v. AIA LLC*, No. 15-CV-619 (JSR), 2016 WL 3039192, at *5 (S.D.N.Y. May 24, 2016). *See e.g.*, Opp'n, at 10. Importantly, the district court in *SPV Osus* did not need to reach the question of whether the plaintiff would be able to establish jurisdiction over JMDs as it dismissed all claims on other grounds. *SPV Osus*, 2016 WL 3039192, at *5 (acknowledging the factual averments disputing plaintiff's jurisdictional allegations and noting that "[i]f plaintiff's Complaint were not fatally deficient on an independent ground, jurisdictional discovery and an evidentiary hearing would be warranted in order to determine whether SPV could establish jurisdiction—as opposed to simply make a prima facie showing thereof—when defendants' evidence was weighed against plaintiff's and when the Court was not required to credit plaintiff's non-conclusory allegations and to construe plaintiff's supporting materials in the light most favorable to it").

each…of the [] subsequent transfers at issue," each of which must be treated "as separate and distinct" claim. *Picard v. BNP Paribas S.A. (In re Madoff)*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) (citation omitted). Failing to plead jurisdiction as to each of the alleged subsequent transfers, the Trustee instead lumps together its allegations related to subsequent transfers without distinguishing between the "Access Defendants" or the individual transfers allegedly made to them. *See, e.g.*, SAC ¶ 332. Thus, allegations of subsequent transfers are insufficient to find jurisdiction over the JMDs.

### 3. The Trustee's Claims against the JMDs Do Not "Arise Out Of" Their Alleged Contacts with the Forum

The Access Defendants and Groupement adopt and incorporate by reference herein Point I.A. of the UBS Defendants' Reply Memorandum of Law in Support of their Motion to Dismiss (the "UBS Reply MOL"). In addition to showing that the JMDs purposefully directed their actions at, and availed themselves of the benefits and protections of, the United States, the Trustee must show that, *inter alia*, the underlying causes of action "arise out of or relate to" the defendant's contact with the United States. *U.S. Bank. Nat'l Ass'n v. Bank of Am. N.A.,* 916 F.3d 143, 150 (2d Cir. 2019). Despite the Trustee's arguments to the contrary, the Second Circuit has made clear that where, as here, "the defendant has had only limited contacts with the state it may be appropriate to say that he will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts." *Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998) (internal citations omitted).[7]

Here, the Trustee's allegations that the JMD entities "facilitated" Luxalpha's and

---

[7] The Trustee's attempts to rely on *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021) (Opp'n, at 39) to avoid New York's "causal" requirement has already been rejected by the Southern District. *See In re Mexican Gov't Bonds Antitrust Litig.,* 2022 WL 950955, at *3 (S.D.N.Y. Mar. 30, 2022) (denying reconsideration of dismissal for lack of personal jurisdiction based on *Ford*, holding that "[a]t most, *Ford* undermines the rationale" leading to New York's casual requirement, and instructing "[f]or a district court to ignore binding Second Circuit precedent, it is not enough for a Supreme Court decision to be in "tension" with that precedent."

Groupement's investment into BLMIS, or that they received extraterritorial transfers from foreign parties, come nowhere close to tying the JMDs' contacts (where they exist at all) to the alleged subsequent transfers the Trustee attempts to recover in this action. Similarly, Littaye's limited engagement in nonsuit-related activity in the United States is unrelated to the recovery the Trustee seeks from him. The Trustee's claims do not "arise out of," and were certainly not proximately caused by, the JMDs' limited (if any) contacts with the forum. Indeed, as shown in their moving papers, the JMDs' fees were paid by investors in Europe as the investments were made, not by subsequent transfers as the investments were redeemed. *See* Mov. Br., at 29; Littaye Decl. ¶¶ 55-57.

## C.    The JMDs Are Not Mere Departments or Agents of Access LLC or AIA Inc.

In apparent recognition of the insufficiency of his direct jurisdictional allegations against the JMDs, the Trustee argues that AIA Inc. and Access LLC's contacts should be imputed to the JMD entities because the JMD entities were purportedly "mere departments or agents of Access's 'New York office.'" Opp'n, at 10. In doing so, the Trustee fails entirely to address the JMDs' evidence that the JMD entities were separate, independent entities, with different and distinct ownership structures, boards of directors, and management in place, and that each had their own offices, bank accounts, income and were not reliant on any other entity. *See* Mov. Br., at 18–24. Moreover, the Trustee ignores proof that US-based Access entities were almost exclusively involved in servicing 10–15 non-Madoff-related funds, whereas the JMD entities were involved in servicing Luxalpha and Groupement. Littaye Decl. ¶¶ 6–7.

### 1.    The JMDs Were Not Mere Departments of Access LLC or AIA Inc.

In order to warrant disregarding corporate forms and find jurisdiction based on an alter-ego or mere department theory, a plaintiff must allege facts demonstrating: (1) common ownership and the presence of an interlocking directorate and executive staff; (2) the subsidiary's financial

dependency on the parent; (3) the parent's interference in the selection and assignment of the subsidiary's executive personnel and a failure to observe corporate formalities; and (4) the parent's control of the subsidiary's marketing and operational policies. *See Fagan v. Republic of Austria*, 2011 WL 1197677, at *17 (S.D.N.Y. Mar. 25, 2011) (declining to find personal jurisdiction). The Trustee has failed to establish any of these elements, and has thus failed to establish personal jurisdiction over the JMDs on these grounds.

**First**, while the Trustee concedes, "common ownership 'is essential to the assertion of jurisdiction' on a mere-department theory" (Opp'n p. 11 (quoting *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984))), he does not, and cannot, establish the "nearly identical ownership interest [that] must be found before one corporation can be considered a mere department of another." *In re Levant Line, S.A.*, 166 B.R. 221, 232 (Bankr. S.D.N.Y. 1994) (citing *Beech*, 751 F.2d at 120).

The Trustee's allegation that common ownership is established because the JMD entities were purportedly "commonly owned by Access New York's owners, Littaye and Villehuchet" (Opp'n, at 13) is factually wrong and legally insufficient. The Trustee does not provide any details or support for this alleged common ownership. In reality, the ownership of Access LLC and AIA Inc. on the one hand, and the ownership of each of the JMD entities on the other, are neither "nearly identical" nor have the degree of commonality needed to satisfy a mere department showing. *See* Mov. Br., at 18–20; Littaye Decl. Exs. 4, 8, 19–23, 40–1. Moreover, the Trustee's focus on purported ultimate ownership by each Littaye and Villehuchet (Opp'n, at 13) is improper. Looking directly to Littaye and Villehuchet as "ultimate" owners or beneficiaries improperly disregards the corporate forms of the actual entities that own the interests in these defendants. And in all events, ultimate ownership through intervening corporations is too remote to establish common

ownership. *See, e.g.*, *Jacobs v. Felix Bloch Erben Verlag Fur Buhne Film Und Funk KG*, 160 F. Supp. 2d 722, 735 n.11 (S.D.N.Y. 2001).[8]

**Second**, the Trustee fails entirely to address the element of financial dependence. This is not surprising since the JMDs were demonstrably financially independent, having earned their own fees and revenue. *See, e.g.*, Littaye Decl. at ¶¶ 27, 43, 54; *see, e.g.*, Littaye Decl. Exs. 5–7, 18, 34–5, 43. Indeed, Bank accounts, financial books and records, leases, and contracts with service providers were each in the name of the respective JMD. *See id.*, at ¶¶ 20, 24, 35, 40, 47, 50.

**Third**, while the Trustee's Opposition includes a section titled "Access Disregarded Corporate Formalities," it is a mish mash of conclusory allegations and irrelevant accusations. In examining whether there has been interference with the assignment of key personnel or failure to observe corporate formalities, courts look to, *inter alia*, overlap in officers, source of executives' salaries, and structure of board meetings. *See, e.g., ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 51 (S.D.N.Y. 1999) (citing *Beech*, 751 F.2d at 121–2) (parent appointed, controlled, and paid subsidiary's officers, and the subsidiary held no independent board meetings). In both the SAC and his opposition, the Trustee ignores these well-established factors. None support a mere department finding.

Each JMD entity had independent directors that did not overlap with either AIA Inc. or Access LLC. *See* Mov. Br., at 23; Littaye Decl. ¶¶ 22, 37, 39, 49; Littaye Decl. Exs. 4, 8–10, 24–29, 31–33, 40, 42. The minimal executive overlap that did exist is far below the "mirror image symmetry" required to support mere department status. *See Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140, 157 (S.D.N.Y. 2004) (citing *Self Int'l Ltd. v. La Salle Nat'l Bank*, No. 01-CV-4291

---

[8] Because the Trustee has failed to show the required degree of common ownership between Access LLC or AIA Inc., and any of the JMD entities, the Trustee has failed to prove "mere department" status and the inquiry ends. *See Levant Line, S.A. v. Marine Enterprises Corp.*, 166 B.R. 221, 231 (Bankr. S.D.N.Y. 1994) ("If common ownership is not established, the inquiry ends.").

(RCC), 2002 WL 500372, at *3 (S.D.N.Y. Mar. 29, 2002) (collecting cases)). Next, neither Access

LLC nor AIA Inc. ever paid the executives' salaries of any of the JMD entities. *See* Littaye Decl.

¶¶ 27, 43, 54. Finally, the JMDs observed corporate formalities. The SAC acknowledges that the

Access entities were "formally distinct and separately organized in their various jurisdiction." SAC

¶ 77. Indeed, each JMD entity's board acted independently of the boards of the other JMD entities,

Access LLC, and AIA Inc., and did not hold combined meetings with the boards of any other

entity. Littaye Decl. ¶¶ 22, 37, 49.[9]

**Fourth**, neither Access LLC nor AIA Inc. controlled the JMD entities' Marketing or

Operational Policies. The Trustee's references to "coordinated activity" (Opp'n, at 13), and

marketing material that brands the various Access entities as a company "[b]ased in New York

City with additional European offices in Paris, London and Luxembourg" (*id.*) are insufficient as

a matter of law. Courts have consistently held that a marketing strategy in which a corporation

decides not to present to its consumers the existence of a parent-subsidiary relationship is not the

equivalent to a showing that the parent corporation exercises any control over its subsidiaries'

operational or marketing activities. *See, e.g.*, *Reers*, 320 F. Supp. 2d at 157–8 (quoting *J.L.B.

Equities v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544, 550 (S.D.N.Y. 2001)); *Bellomo v. Penn Life

Co.*, 488 F. Supp. 744, 745 (S.D.N.Y. 1980).[10] Finally, The Trustee's observation that "operational

---

[9] Allegations that Access New York employees at times performed work for other Access entities or that Access employees had multiple Access email address are insufficient to disregard the corporate form. *See, e.g., Kalin v. Xanboo Inc.*, No. 04-CV-5931, 2009 WL 928279, at *11 (S.D.N.Y. Mar. 30, 2009) (improper to disregard the corporate form where corporations shared an address and claimed ownership of the same factory, that an employee from one entity was directed to perform work for another, and that companies had common ownership and directors and noting that "allegations of commingled e-mails simply are not the sort of 'disregard for corporate formalities' that support a finding of alter ego liability").

[10] The examples of a coordinated "Access website," and references to the JMD entities, Access LLC, and AIA Inc. by a single name have both been held insufficient to satisfy this prong. *See J.L.B.*, 131 F. Supp. 2d at 550 (failure to distinguish a subsidiary on its webpage insufficient to show control); *Indemnity Ins. of N. Am. v. K-Line Am., Inc.*, No. 06-CV-0615 (BSJ), 2007 WL 1732435, at *10 (S.D.N.Y. June 15, 2007) (identification of companies as a "group" does not establish common ownership or show disregard of corporate formalities; *Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 193 (S.D.N.Y. 2000) (references to collective entity is insufficient to create a single entity structure).

policies" were discussed at "Quarterly Strategic Meetings" (Opp'n, at 14) does not demonstrate that the JMD entities' operational policies were controlled by Access LLC or AIA Inc.

## 2. Access LLC or AIA Inc. Did Not Act as the JMDs' Agent

Jurisdiction based on an agency theory requires that the ***domestic agent*** "do[] all the business which [the foreign corporation] could do were it here by its own officials." *Jacobs v. Felix Bloch Erben Verlag Fur Buhne Film Und Funk KG*, 160 F. Supp. 2d 722, 737 (S.D.N.Y. 2001) (citing *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533, 537 (1967)). The Second Circuit has expanded on this requirement, holding that the New York representative entity must provide "services on behalf of the foreign corporation that go beyond mere solicitation and are sufficiently important to the foreign entity that the corporation itself would perform equivalent services if no agent were available." *Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88, 95 (2d Cir. 2000); *see also Gelfand v. Tanner Motor Tours, Ltd.*, 385 F.2d 116, 121 (2d Cir. 1967). In interpreting these standards, courts have developed several showings necessary to establish an agency relationship and impute the local entity's contacts to its foreign counterpart.

**First**, in order to find that a domestic corporation is the agent of a foreign entity, there must be a showing that the foreign "principal" exercises some element of control over the alleged in-state agent. *See Marsh v. Kitchen*, 480 F.2d 1270, 1273 (2d Cir. 1973) (finding no agency relationship where, among other things, the alleged agent was not under purported principal's control); *Louis Marx & Co. v. Fuji Seiko Co., Ltd.*, 453 F. Supp. 385, 390 (S.D.N.Y. 1978) (requiring that non-resident exercise some control over agent). The Trustee, however, has never made any allegation or provided any document suggesting that the JMD entities had any control over Access LLC or AIA Inc. Instead, he has done quite the opposite by vociferously and continually claiming that each of the JMD entities is instead controlled by Access LLC or AIA Inc. *See, e.g.*, Opp'n, at 9–14, 17.

12

**Second**, in order to find an agency relationship exists, the US "agent" corporation must have the authority to contractually bind the foreign "principal." *See Sedig v. Okemo Mountain*, 204 A.D.2d 709, 710 (2d Dep't 1994) (finding no agency relationship where plaintiff provided no evidence that the shops have authority to contractually bind the defendant). Despite submitting more 52 exhibits, and having access to millions of pages more, the Trustee has failed to point to any evidence whereby any of the JMD entities granted Access LLC or AIA Inc. such authority, or any evidence that Access LLC or AIA Inc. exercised such a right.

**Third**, a purported agent must be "primarily employed by the [foreign] defendant and not engaged in similar services for other clients." *NewMarkets Partners LLC v. Oppenheimer*, 638 F. Supp. 2d 394, 401 (S.D.N.Y. 2009) (citation omitted). Here, however, the Trustee concedes that Access LLC and AIA Inc. were not "primarily employed" by the JMD entities, but had significant, non-JMD entities and non-Madoff-related business. Access LLC and AIA Inc. were created, and conducted business, well in advance of the creation of any of the JMD entities, Luxalpha, or Groupement, and had significant business administering and marketing ten to fifteen non-BLMIS related funds. *See* Littaye Decl. ¶ 7. Indeed, the Trustee has previously acknowledged that at least 48–50% of Access's investments were in non-Madoff funds. Tr. Opp'n, ECF No. 127, at 58 (citing Amended Complaint, ECF No. 275 at ¶ 58). Moreover, the Trustee's allegations that Access LLC and AIA Inc. acted on behalf of ***all*** of the JMD entities cuts against the requisite showing that they were primarily employed by any ***one*** of them. Opp'n, at 13, 15–16.

**D.     The JMDs Have Not Waived Their Defenses of Lack of Personal Jurisdiction**

Both the facts and the law refute the Trustee's claim that Defendants waived their jurisdictional defenses by "participating in this proceeding and related proceedings." Opp'n, at 40. The record is clear that the JMDs reserved their jurisdictional defenses at every turn. Indeed, the

Trustee stipulated to that fact, as so ordered by this Court. *See* ECF Docket Entry No. 66.[11] The

JMDs likewise reserved their jurisdictional defenses in their joinder to the UBS Moving

Defendants' motion to withdraw the reference. *See Picard v. UBS AG et al.*, 11-CV-4212, ECF

No. 7, at 4 (CM). Upon granting that motion, District Judge McMahon unambiguously limited the

scope of Defendants' motion to dismiss: "I am only interested in dealing with the threshold issues

now – SLUSA preemption and standing. I don't want to deal with other issues." Endorsed Letter,

*Picard v. UBS AG et al.*, 11-CV-4212, ECF No. 10.[12]

Well-settled Second Circuit law confirms that the JMDs did more than enough to preserve

their defenses. "[T]o preserve the defense of lack of personal jurisdiction, a defendant need only

state the defense in its first responsive filing and need not articulate the defense with any rigorous

degree of specificity." *Mattel, Inc. v. Barbie-Club.com*, 310 F.3d 293, 307 (2d Cir. 2002); *accord,

e.g.*, *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 730 (2d Cir. 1998) (defense

preserved by footnote reference in motion to dismiss). There was no waiver here.

The Trustee also makes a passing argument that Littaye waived his personal jurisdiction

defense by not participating in the 2012 Motion to Dismiss. Opp'n, at 43. Yet, the Trustee fails to

support this argument with any authority. Littaye was not required to participate in the 2012

Motion to Dismiss to preserve the defense of personal jurisdiction; Fed. R. Civ. P. Rule 12(b)

simply requires a party to assert the enumerated defenses, including lack of personal jurisdiction

(12(b)(2)), by motion "before pleading if a responsive pleading is allowed." Here, where Littaye

has not filed an answer or other motion to dismiss, this motion is unquestionably asserted before

---

[11] Thus, this case is unlike the *Cohmad* matter, in which the defendants sought "two extensions of time," 418 B.R. at 81, *without* expressly reserving any of their jurisdictional defenses. *See, e.g.*, *Picard v. Cohmad Sec. Corp.*, Adv. Proc. No. 09-1305, ECF No. 15 (Bankr. S.D.N.Y. July 7, 2009).

[12] The JMDs again reserved their defenses when they moved to dismiss the Trustee's common-law claims (*see Picard v. UBS AG et al.*, 11-CV-4212, ECF No. 20), and yet again in their brief to the Court of Appeals. *See Picard v. UBS AG et al.*, 11-CV-5051, ECF. No. 100, at 1.

Littaye's "responsive pleading." Moreover, in reality, the 2012 Motion to Dismiss is essentially a nullity, as it was briefed but never decided.

### E.    The Trustee Is Not Entitled to Jurisdictional Discovery

As the Trustee has not put forth a *prima facie* case of personal jurisdiction over the JMDs, he is not entitled to jurisdictional discovery. *See Langenberg v. Sofair*, No. 03-CV-8339 (KMK), 2006 WL 2628348, at *6 (S.D.N.Y. Sept. 11, 2006); *see also Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007).

The Trustee concedes that he already has the documents produced by Access LLC/AIA Inc. in response to a Rule 2004 subpoena, which consisted of over *4.5 million documents*. Opp'n, at 47; Littaye Decl. ¶ 62. To the extent the Trustee argues that the massive production made by these US-based entities is not enough to establish jurisdiction, and that the relevant documents are instead within the exclusive control of the JMDs, that only goes to prove the JMDs' arguments that: (i) the various Access entities were not a "single business enterprise," dominated by the US-based Access LLC and AIA Inc.; and (ii) that the JMD entities had separate recordkeeping procedures in place, and that those foreign records did not make their way into the US. The Trustee also previously acknowledged that he has access to BLMIS records that constitute "over 11,700 boxes of paper documents and 19,000 media sources containing electronically stored information." Tr. Opp'n, ECF No. 127, at 103 n.51. The Trustee submitted numerous of these documents as exhibits to his Opposition and offers no explanation as to what additional documents he could possibly need.

Finally, given the affidavits and documents submitted by the JMDs here, the Access Defendants have provided all the necessary facts and answered all questions regarding jurisdiction, and thus no other discovery is warranted. *See A.W.L.I. Grp., Inc.*, v. *Amber Freight Shipping Lines* No. 10–CV–5464 (ADS)(ARL), 2011 WL 6130149, at *16 (E.D.N.Y. Dec. 9, 2011) (finding that

defendant provided all necessary information by denying operative facts).

## POINT II - IT IS NOT REASONABLE TO SUBJECT THE JMDS TO JURISDICTION IN THE UNITED STATES

Ultimately, as the Trustee himself concedes, "[t]he reasonableness inquiry requires the court to determine whether the assertion of personal jurisdiction … comports with 'traditional notions of fair play and substantial justice' under the circumstances of the particular case." Opp'n, at 44 (citing *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016)). The exercise of personal jurisdiction over the JMDs fails to meet this basic test and would be unreasonable in this case. Indeed, it would be unjust and burdensome to force the JMDs, who had limited to no contacts with, or otherwise availed themselves of the benefits of, the United States, to address claims regarding their purportedly wrongful conduct (or alleged inactions) that took place entirely outside of the United States.

## POINT III - THE TRUSTEE DOES NOT PLAUSIBLY ALLEGE THAT ACCESS DEFENDANTS RECEIVED BLMIS CUSTOMER PROPERTY

The SAC should also be dismissed because it fails to plausibly allege that the Access Defendants are subsequent transferees of customer property—*i.e.*, it pleads no facts that plausibly "tie any initial transfer to any subsequent transfer or Subsequent Transferee." *Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015). While the Trustee misconstrues the Access Defendants' argument as seeking a "dollar-for-dollar accounting" (Opp'n, at 61), their moving papers actually demonstrate that the Trustee's barebones subsequent transfer allegations have not "nudged the [] claims across the line from conceivable to plausible" as is necessary to sustain his claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Shapiro*, 542 B.R. at 119.

The Trustee does not deny that he has failed to tie any of the thousands of alleged initial transfers from BLMIS to the Fund Defendants, to *any* of the alleged subsequent transfers to the

Access Defendants. Instead, he argues he need not do so. Opp'n, at 65. However, even the Trustee's own authorities enforce this pleading requirement and involve a close correspondence or temporal linkage between the initial and subsequent transfers. *See Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 150 (Bankr. S.D.N.Y. 2014) ("*Merkin I*") ("[S]everal subsequent transfers took place ***contemporaneously or shortly after an initial transfer*** . . . implying linkage.") (emphasis added); *45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 736-37, 747 (Bankr. S.D.N.Y. 2019) (noting a link between payments totaling $29.4 million deposited into an account and $29.4 million withdrawn by the next business day).

Here, the Trustee simply sets out a list of initial transfers, and a separate summary of purported subsequent transfers (SAC ¶¶ 14, 327–9, 334–5), but fails to provide the requisite linkage. As such, the complaint does not meet the standards of *Shapiro*, nor the standards in recent decisions like *Multi-Strategy Fund* or *Banque Syz*, because the Trustee does not attempt to show the relevant pathways in his Second Amended Complaint nor in its exhibits. *See Banque Syz,* Adv. Pro. No. 11-02149, *Multi-Strategy Fund,* Adv. Pro. No. 12-01205. In *Multi-Strategy Fund* and *Banque Syz,* the Trustee attached exhibits detailing the money in and out of Fairfield Sentry to BLMIS, and charts displaying the precise dates and amounts of redemption payments made by defendants. *See Banque Syz* Adv. Pro. No. 11-02149, ECF 1-10; *Multi-Strategy Fund,* Adv. Pro. No. 12-01205, ECF 97-2. Here, the only allegations about the subsequent transfers to the Access Defendants are bullet points in the SAC, in which there are not only no specific dates, but no precise amounts. *See* SAC ¶¶ 334–5.

In addition to the Trustee's pleading deficiencies, the Access Defendants' moving papers demonstrated the implausibility of the Trustee's argument. As detailed, there were only eight withdrawals by Luxalpha and ten withdrawals by Groupement from BLMIS in the relevant period

of almost five years, which were not nearly frequent enough to plausibly support the Access

Defendants' administrative fees. *See* SAC Ex. C; Mov. Br., at 29. Furthermore, the fees and

payments made from the Feeder Fund defendants to the Access Defendants were holdback reserves

funded from investor contributions *before* investments were even made in the Feeder Funds. Mov.

Br., at 29. Contrary to the Trustee's assertion, there is no undisclosed expert methodology here—

only arithmetic. All the Access Defendants do is describe the administrative holdback fees and

implausible timing—hardly the province of experts. *See* Mov. Br., at 29. *See also Edmondson v.*

*RCI Hospitality Holdings, Inc*., No. 16-CV-2242 (VEC), 2020 WL 1503452, at *6 (S.D.N.Y.

Mar. 30, 2020).

The Trustee has failed to justify the deficiencies of his Complaint despite his access to all

the records he would need, and thus it should be dismissed with prejudice.

**POINT IV - THE SECTION 546(E) SAFE HARBOR SHIELDS ALL OF THE ALLEGED INITIAL TRANSFERS MADE MORE THAN TWO YEARS BEFORE THE FILING DATE.**

**A.      The Trustee Concedes That Section 546(e) Applies in the First Instance.**

The Access Defendants and Groupement adopt and incorporate by reference herein Point

II of the UBS Reply MOL. The statutory safe harbor of section 546(e) shields all of the alleged

initial Six-Year Transfers made more than two years before the filing date (*i.e.*, from December

11, 2002 to December 11, 2006). *See* Mov. Br. 30–7. The Trustee concedes that section 546(e)

applies in the first instance. *See* Opp'n, at 50 ("[T]he Second Circuit settled the issue of whether

section 546(e) applies to limit the avoidance of transfers between BLMIS and its customers long

ago.") (citing *In re Bernard L. Madoff Inv. Sec. LLC (Picard v. Ida Fishman Recoverable Trust)*,

773 F.3d 411, 417 (2d Cir. 2014) ("*Fishman*")). The Access Defendants have established that the

alleged initial transfers from BLMIS to the Fund Defendants qualify for the section 546(e) safe

harbor because: (a) they are transfers and settlement payments made "in connection with a

securities contract," and (b) they were made by, to, and/or for the benefit of covered entities, including a stockbroker and multiple financial institutions. *See* Mov. Br. 30–2.

In an effort to muddy the waters, the Trustee deflects by arguing: (1) that the Access Defendants cannot utilize section 546(e) based on the so-called "knowledge" exception announced in *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Securities)*, No. 12-MC-115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"); and (2) that he has adequately pled that the Fund Defendants had actual knowledge that Madoff was not trading securities. Neither argument is supported by case law or the SAC.

**B.    Any Section 546(e) "Knowledge" Exception Does Not Apply to the Access Defendants.**

The *only* exception to section 546(e) is for transfers made by a debtor with *actual* intent to hinder, delay, or defraud creditors under section 548(a)(1)(A). *See* Mov. Br., at 35–6. Notwithstanding this clear statutory framework, the Trustee has regularly sought to narrow the scope of the safe harbor well beyond Congressional intent. *See Fishman*, 773 F.3d at 417. In *Cohmad*, however, the District Court did ultimately create a limited, non-statutory, narrowing to the protections of section 546(e) based on a transferee's level of knowledge about the underlying transactions from which their transfer originated. 2013 WL 1609154, at *4 (emphasis added); *accord* Opp'n., at 52 (*Cohmad* "held that a party with actual knowledge of Madoff's fraud cannot claim section 546(e)'s protections"). Following from his prior attempts to avoid the application of section 546(e), the Trustee has now advanced a tortured reading of *Cohmad* that would prohibit an ***innocent subsequent transferee*** from invoking section 546(e) merely because the Trustee alleges that the ***initial*** transferee had actual knowledge of the underlying fraud. Opp'n., at 50–2. Regardless, the SAC fails to allege that ***any*** of the Access Defendants or Groupement had actual knowledge of the Madoff Ponzi scheme.

C.      **The SAC Fails to Allege That Any Defendant Had Actual Knowledge.**

The allegations of the SAC merely describe "red flags" in connection with Madoff's scheme and not the moving defendants' *actual knowledge* of the scheme. As Judge Bernstein has held, "actual knowledge" requires nonconclusory allegations that the Fund Defendants had "a high level of certainty and absence of any substantial doubt" that BLMIS was not trading securities. *Merkin*, 515 B.R. at 139. Here, the Trustee relies on allegations that certain Defendants "had special Access to Madoff as a result of Littaye's close relationship with him," that the BLMIS fund structure violated Luxembourg law, and that Access "deliberately acted to assist Madoff in evading regulatory scrutiny." Opp'n, at 54. This Court has previously found such allegations insufficient, holding that "[a]lthough these allegations . . . imply that [defendants] were willing to overlook legal and regulatory violations to make more money, they do not support the inference that those Defendants believed there was a high probability that BLMIS was not actually trading securities." *BNP Paribas S.A. (In re Madoff)*, 594 B.R. at 199.

### POINT V - THE SECTION 546(E) SAFE HARBOR SHIELDS ALL OF THE REMAINING ALLEGED INITIAL TRANSFERS

Groupement and the Access Defendants incorporate and adopt the legal authorities and arguments set forth in the UBS Reply MOL at Point IV thereof in support hereof.

### <u>CONCLUSION</u>

For the reasons stated herein, the Access Defendants and Groupement respectfully request that the Court dismiss the Trustee's SAC in its entirety with prejudice and for such other relief as may be deemed just and proper.

Dated: July 29, 2022
        New York, New York

/s/ Anthony Paccione
**KATTEN MUCHIN ROSENMAN LLP**
50 Rockefeller Plaza
New York, NY 10020
Telephone: (212) 940-8800
Facsimile: (212) 940-8776
Anthony L. Paccione
Email: anthony.paccione@katten.com
Brian L. Muldrew
Email: brian.muldrew@katten.com

*Access International Advisors LLC,*
*Access International Advisors Ltd.,*
*Access Management Luxembourg SA,*
*Access Partners SA, Patrick Littaye,*
*Claudine Magon de la Villehuchet (in her*
*capacities set forth in the caption above), and*
*Groupement Financier Ltd.*