**Hearing Date: September 14, 2022 at 10:00 a.m. (ET)**

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>       Plaintiff,<br><br> v.<br><br><br>BERNARD L. MADOFF INVESTMENT SECURITIES, LLC,<br><br>       Defendant. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>       Plaintiff,<br><br> v.<br><br>UBS AG, et al.,<br><br>       Defendants. | Adv. Pro. No. 10-04285 (CMG) |

**<u>DEFENDANT THEODORE DUMBAULD'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

                                                                       **Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 2

I.     The § 546(e) Safe Harbor Bars All Claims Based On Initial Transfers Prior to

       December 11, 2006 ................................................................................................... 2

II.    The SAC Fails to Plead a Subsequent Transfer Claim Against Dumbauld ........................ 4

       A.     The Trustee Fails to Identify the "Vital Statistics" of the Subsequent

              Transfers ..................................................................................................... 5

       B.     The SAC Fails to Allege Facts Tracing Any Portion of Dumbauld's

              Compensation to BLMIS ........................................................................... 7

CONCLUSION ..................................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................................. 10

*In re 45 John Lofts, LLC*,
  599 B.R. 730 (Bankr. S.D.N.Y. 2019) ........................................................................................ 8

*In re Allou Distributors, Inc.*,
  379 B.R. 5 (Bankr. E.D.N.Y. 2007) .................................................................................... 6, 7, 8

*In re Bernard L. Madoff Inv. Sec. LLC*,
  515 B.R. 117 (Bankr. S.D.N.Y. 2014) .................................................................................. 2, 6, 8

*In re Bernard L. Madoff Inv. Sec. LLC*,
  548 B.R. 13 (Bankr. S.D.N.Y. 2016) ........................................................................................ 3

*In re Bernard L. Madoff Inv. Sec. LLC*,
  557 B.R. 89 (Bankr. S.D.N.Y. 2016) ........................................................................................ 3

*In re Madoff*,
  542 B.R. 100 (Bankr. S.D.N.Y. 2015) ................................................................................... 4, 5

*Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  No. 08-01789 (CGM), 2022 WL 2137073 (Bankr. S.D.N.Y. June 13, 2022) ........................... 7

*Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  No. 08-01789 (CGM), 2022 WL 2799924 (Bankr. S.D.N.Y. July 15, 2022) ........................... 7

*Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  No. 08-01789 (CGM), 2022 WL 2761044 (Bankr. S.D.N.Y. July 14, 2022) ........................... 7

*Lerner v. Fleet Bank, N.A.*,
  459 F.3d 273 (2d Cir. 2006) ..................................................................................................... 3

*Mazzaro de Abreu v. Bank of America Corp.*,
  525 F.Supp.2d 381 (S.D.N.Y. 2007) ........................................................................................ 2

*Renner v. Chase Manhattan Bank*,
  No. 98 CIV. 926 (CSH), 2000 WL 781081 (S.D.N.Y. June 16, 2000) .................................... 4

*Ryan v. Hunton & Williams*,
  No. 99-CV-5938 (JG), 2000 WL 1375265 (E.D.N.Y. Sept. 20, 2000) .................................... 4

## **PRELIMINARY STATEMENT**

More than twelve years after completing extensive pre-complaint discovery pursuant to Rule 2004 document and testimony subpoenas, Plaintiff-Trustee ("Trustee") argues, *inter alia*, a claim against an alleged subsequent transferee, such as defendant Ted Dumbauld ("Dumbauld"), can rest solely on allegations that: (a) initial fraudulent transfers occurred; and (b) Dumbauld must have received some of those monies from some entity at some point during a four-year time period, 2004-2007, because he received $1.25 million in "compensation . . . in connection with his role as Access partner and Chief Investment Officer" during the same four-year time period. Second Amended Complaint ("SAC"), Dkt. No. 274, ¶ 337. According to the Trustee, the identification of an actual alleged subsequent transfer of customer funds to some entity that then transferred those funds to Dumbauld may wait for "discovery" and potential adjudication on summary judgment. Trustee's Memorandum of Law In Opposition to Defendants' Motion to Dismiss The Second Amended Complaint ("Opp. Br."), Dkt. No. 307.

Colloquially, the Trustee seeks Court permission to "shoot first and ask questions later," at least with respect to Dumbauld. The SAC identifies Dumbauld as an officer of Access International Advisors LLC, describes limited work that he did concerning relevant Madoff trading activities, and alleges that he received employment-related compensation from one or more Access entities during a four-year time period (2004-2007), during which alleged voidable transfers were made to the Fund Defendants and then subsequent transfers were made to Access Defendants. However, there is no allegation in the SAC that Dumbauld was responsible for the Access relationship with Madoff or exercised any decision-making authority at any Access entity concerning the relationship between any Access entity and Madoff.

1

As described in Dumbauld's initial motion papers and below, the SAC's allegations are simply not sufficient to plead a claim against Dumbauld to recover an allegedly fraudulent subsequent transfer. Therefore, the SAC should be dismissed as to Dumbauld.

## ARGUMENT

### I.  The § 546(e) Safe Harbor Bars All Claims Based On Initial Transfers Prior to December 11, 2006

The Trustee concedes that under the 11 U.S.C. § 546(e), if the SAC fails to adequately allege that the Feeder Funds had "actual knowledge" Madoff was operating a Ponzi scheme, the avoidance claims for the Six-Year Transfers must be dismissed.  Opp. Br. at 49-50.  The Trustee argues instead that the safe harbor does not apply because the SAC adequately alleges "that Luxalpha and Groupement knew that Madoff was not trading securities." *Id.* at 53-56.

To plead "actual knowledge," the Trustee must advance specific allegations showing that the Feeder Funds had "direct and clear knowledge" of Madoff's Ponzi scheme.  *In re Bernard L. Madoff Inv. Sec. LLC*, 515 B.R. 117, 139 (Bankr. S.D.N.Y. 2014) ("*Merkin I*").  The facts alleged must "impl[y] a high level of certainty and absence of any substantial doubt" that BLMIS was not trading securities.  *Id.*

Throughout his response, the Trustee attempts to change the legal standard for pleading "actual knowledge."  First, the Trustee suggests that he can plead "actual knowledge" by alleging that Defendants had "inquiry notice of Madoff's fraud."  Opp. Br. at 2, 54.  However, courts have repeatedly explained that allegations of "constructive knowledge of a fraudulent scheme" are "insufficient to support an allegation that [the defendant] had actual knowledge of an underlying fraud." *Mazzaro de Abreu v. Bank of America Corp.*, 525 F.Supp.2d 381, 390 (S.D.N.Y. 2007); *Merkin I*, 515 B.R. at 139 (explaining that "'[a]ctual knowledge' is 'direct and clear knowledge, as distinguished from constructive knowledge.'").

2

Next, the Trustee claims that he can plead "actual knowledge" by alleging that Defendants were aware of "red flags" or "indicia of fraud." Opp. Br. at 56. This argument has also been broadly rejected. *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006) (explaining that while "red flags" may have "put the banks on notice that some impropriety may have been taking place, those alleged facts do not create a strong inference of actual knowledge of Schick's outright theft of client funds."); *In re Bernard L. Madoff Inv. Sec. LLC*, 557 B.R. 89, 115 (Bankr. S.D.N.Y. 2016) ("The Amended Complaint identifies several red flags including, impossibly consistent annual returns, trading impossibilities, impossible options trading volumes, transactions outside the daily price range, back-dated trades, and the use of an incapable, strip mall auditor. . . . the red flags identified by the Trustee do not support a plausible inference that Avellino or Bienes had actual knowledge that Madoff was not trading securities."). Courts have explained that "red flags" allegations are insufficient because they amount to "pleading that the defendant . . . knew *or should have known* that BLMIS was not engaged in the actual trading of securities." *In re Bernard L. Madoff Inv. Sec. LLC*, 548 B.R. 13, 22 (Bankr. S.D.N.Y. 2016), *vacated and remanded on other grounds*, 12 F.4th 171 (2d Cir. 2021).

3

Moreover, the Trustee suggests that he can plead "actual knowledge" with allegations demonstrating Defendants' suspicions of fraud. Opp. Br. at 54 ("Throughout their relationship, the Defendants recognized Madoff as a fraud risk.").[1] However, allegations of mere suspicion also fall short of implying that Defendants "actually knew that the fraud was, in fact, occurring." *Renner v. Chase Manhattan Bank*, No. 98 CIV. 926 (CSH), 2000 WL 781081, at *12 (S.D.N.Y. June 16, 2000); *Ryan v. Hunton & Williams*, No. 99-CV-5938 (JG), 2000 WL 1375265, at *9 (E.D.N.Y. Sept. 20, 2000) ("Allegations that Chemical suspected fraudulent activity, however, do not raise an inference of actual knowledge of Wolas's fraud.").

Accordingly, because the Trustee relies on allegations of inquiry notice, "red flags," or mere suspicions of fraud, all avoidance claims based upon Initial Transfers prior to December 11, 2006 are barred by the 11 U.S.C. § 546(e) safe harbor.

## II. The SAC Fails to Plead a Subsequent Transfer Claim Against Dumbauld

To maintain a subsequent transfer claim against Dumbauld, the Trustee "must allege the necessary vital statistics—the who, when, and how much—of the purported transfers to establish an entity as a subsequent transferee of the funds." *In re Madoff*, 542 B.R. 100, 119 (Bankr.

---

[1] The Trustee's Opposition Brief repeatedly includes supposed factual statements that go beyond or mischaracterize the allegations of the Second Amended Complaint. For example, the Opposition Brief contends that Dumbauld "determined" that Madoff was reporting "impossible securities transactions." Opp. Br. at 4, 55. The SAC, however, only alleges that Dumbauld had compared the volume of options trading reported by Madoff and the volume of options trading reported by the Options Clearing Corporation and determined that 100% of Madoff's options trading could not have been executed on OCC-reporting exchanges. SAC ¶¶ 221-23. Similarly, the Opposition Brief states that Dumbauld "disregarded" a similar analysis prepared by outside consultant Christopher Cutler, Opp. Br. at 4, when no such allegation appears in the SAC. The Opposition Brief also states that Dumbauld was a "principal [who] received payments for facilitating the BLMIS relationship" when no such allegation appears in the SAC. Opp. Br. at 62.

4

S.D.N.Y. 2015) ("*Shapiro*"). Moreover, "the Trustee must allege facts that support the inference that the funds at issue originated with the BLMIS." *Id.*

In the SAC, the Trustee alleged only a single paragraph regarding the subsequent transfers Dumbauld allegedly received:

> Based on the Trustee's investigation to date, a portion of the Subsequent Transfers received by received by AIA Ltd., AIA LLC, AP (Lux), and AML (f/k/a AIA (Lux)) were subsequently transferred to Dumbauld, in an amount to be proven at trial. At minimum, Dumbauld received $1.25 million in compensation paid from bank accounts controlled by Access's New York office from 2004 through 2007. Dumbauld received these transfers as distributions, payments, or other transfers of value in connection with his role as Access partner and Chief Investment Officer.

SAC ¶ 337.

The Trustee does not dispute that the first sentence is conclusory and should be disregarded by the Court. Instead, he argues that the remaining sentences sufficiently plead a subsequent transfer claim against Dumbauld. First, he contends that the second sentence alleges the "vital statistics" of the subsequent transfers. Opp. Br. at 62. Second, he argues that the Trustee is not required to plead at least some minimal facts tracing Dumbauld's compensation to BLMIS. *Id.* at 61. Both arguments lack merit.

### A. The Trustee Fails to Identify the "Vital Statistics" of the Subsequent Transfers

The Trustee claims that the SAC pleads the "vital statistics" for the transfers he seeks to recover from Dumbauld because it alleges that "Dumbauld received $1.25 million in compensation paid from bank accounts controlled by Access's New York office from 2004 through 2007." Opp. Br. at 62. However, this allegation is insufficient because it fails to provide the "vital statistics" of specific transactions. Instead, the allegation lumps all of the alleged transfers Dumbauld received in a four-year period together, without providing the details

5

of any particular transfer, including: *who* (i.e., which Access entity) made the transfers, *when* they were made, or *how much* was transferred. The Trustee also fails to identify how many transfers Dumbauld allegedly received during this period. Most significantly, the Trustee fails to allege (because he cannot) that the *only* funds received by the Access entities that paid employment-related compensation to Dumbauld can be traced to voidable Initial Transfers. Indeed, in a prior version of the complaint, the Trustee alleged that in 2005, only "61% of Access's total net revenue" were from its services for BLMIS. Dkt. 251-4 at ¶ 88.

The Trustee cites to *In re Allou Distributors, Inc.*, 379 B.R. 5 (Bankr. E.D.N.Y. 2007) ("*Allou*") and *Merkin I* to support his argument that the "vital statistics" of the subsequent transfers are sufficiently pled. Opp. Br. at 62. However, both cases undercut his position. In *Allou*, the court dismissed the subsequent transfer claims against certain defendants because the complaint merely identified the aggregate total of the subsequent transfers they received, but failed to allege the details of any specific transactions. While the complaint alleged that these defendants received "in excess of $1,000,000" in subsequent transfers, it failed to "identif[y] *any specific transfer* from the Debtor or [an initial transferee] to either of the Individual Defendants" or provide "the source, dates, or amounts of the transfers." 379 B.R. at 31 (emphasis added). The court explained that the pleadings failed to set "forth the necessary vital statistics—the who, when, and how much—of the transfers 'in excess of $1,000,000' to be recovered." *Id.*

In contrast, in *Merkin I*, the court held that the subsequent transfer claims were sufficiently pled because, *inter alia*, the Trustee attached an exhibit to the complaint identifying the "amount, month, day and year of *each* [subsequent] *transfer*." 515 B.R. at 127 (emphasis added). Similarly, in several recent decisions, this Court held that the pleadings provided the "vital statistics" because the Trustee attached exhibits setting forth the "'who, when, and how

much' of *each transfer*." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (CGM), 2022 WL 2137073, at *10 (Bankr. S.D.N.Y. June 13, 2022) (emphasis added); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (CGM), 2022 WL 2799924, at *4 (Bankr. S.D.N.Y. July 15, 2022) ("Exhibits attached to the Complaint demonstrate each subsequent transfer."); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (CGM), 2022 WL 2761044, at *6 (Bankr. S.D.N.Y. July 14, 2022) ("The exhibits attached to the Complaint provide Cantonale with the 'who, when, and how much' of each transfer.").

The cases above confirm that to allege the "vital statistics," the Trustee must provide the details of specific transactions and cannot merely provide the aggregate of an unspecified number of transfers. To be sure, the Trustee is not required to provide a "'dollar-for-dollar accounting of the exact funds at issue.'" *Shapiro*, 542 B.R. at 119. However, given that the Trustee has failed to allege the "vital statistics" for even a *single* subsequent transfer, he cannot maintain a subsequent transfer claim against Dumbauld. *See Allou*, 379 B.R. at 31. Accordingly, the subsequent transfer claim against Dumbauld should be dismissed.

B. <u>The SAC Fails to Allege Facts Tracing Any Portion of Dumbauld's Compensation to BLMIS</u>

The Trustee does not dispute that the SAC does not include well-pled facts to support an inference that <u>any</u> portion of the $1.25 million Dumbauld allegedly received "from bank accounts controlled by Access's New York office" can be traced to BLMIS. SAC at ¶ 337. According to the Trustee, "[n]o tracing analysis is necessary." Opp. Br. at 61.

In *Merkin I*, the court held that the subsequent transfers were sufficiently pled because an evidentiary linkage between the initial and subsequent transfers could be implied based on the timing of the transactions and the amounts transferred. In that case, the Trustee attached an

7

exhibit to the complaint that identified initial transfers from BLMIS (Exhibit B) and subsequent transfers among the defendants (Exhibit C). When the court compared these exhibits, it was able to trace the subsequent transfers to the initial transfers because "several subsequent transfers took place contemporaneously or shortly after an initial transfer identified in Exhibit B, implying linkage." *Merkin I*, 515 B.R. at 150. Likewise, from Exhibit C, the court was able to infer connections between the first subsequent transfer and the second subsequent transfer. The court explained that "[g]iven the short amount of time between the first and second transfers, it is reasonable to infer in considering a motion to dismiss that some portion of the first transfer formed part of the second transfer." *Id.*[2]

Here, even though the Trustee conducted an extensive Rule 2004 investigation, the Trustee attached to the SAC the equivalent of the *Merkin I* Exhibit B (exhibits detailing initial transfers) but <u>not</u> the *Merkin I* Exhibit C (an exhibit detailing subsequent transfers among the defendants). In contrast, the chart included in Paragraph 340 of the SAC identifies Dumbauld as an "Access Principal" but contains no allegation that he received funds from an Access entity that, in turn, had received transfers from the Fund Defendants, either directly or indirectly. In the

---

[2]     Moreover, the pleadings in the other cases cited by the Trustee in opposition to Dumbauld's motion to dismiss also traced the subsequent transactions to the debtor. In *Allou*, the trustee alleged that days after the debtor transferred funds to the initial transferees, similar amounts were transferred to a trust account for the defendants' benefit. 379 B.R. at 13 ("The Trustee also alleges that on December 29, 1998, the day after these transfers by the Debtor were completed, some $7.5 million—$4,999,965, from Eurofactors; $1.5 million from Arrow and $1 million from Impax—was transferred to an attorney's trust account."). In *In re 45 John Lofts, LLC*, 599 B.R. 730 (Bankr. S.D.N.Y. 2019), the complaint pled facts demonstrating that after $29.4 million was deposited into an account, these funds were transferred to various entities, before they were disbursed to the defendants. 599 B.R. at 737-38, 747. Accordingly, these authorities fail to support the Trustee's argument that he is not required to plead at least some minimal facts that would support an inference that Dumbauld received funds that can be traced to the initial transfers.

8

absence of any allegation that some type of linkage existed between the subsequent transfers received by the Access entities and the employment-related compensation paid by an Access entity to Dumbauld, the SAC does not include sufficient factual allegations to plead a Subsequent Transfer claim against Dumbauld.[3]

Indeed, it is especially important for the Trustee to plead facts tracing the alleged subsequent transfers to the debtor for a defendant, like Dumbauld, who allegedly received voidable funds as employment-related compensation. Without a tracing requirement at the pleading stage, the Trustee can maintain a subsequent transfer claim against an ordinary employee without investigating, or advancing well-pled facts regarding, whether the employee received voidable funds. This scenario would be highly unjust for the employee, who will be forced to endure expensive litigation costs while the Trustee examines the viability of his claim for the first time during discovery.

Here, the Trustee has made no well-pled factual allegation tracing any portion of Dumbauld's compensation to BLMIS. The SAC alleges that Dumbauld received compensation "from bank accounts controlled by Access's New York office from 2004 through 2007." SAC ¶ 337. However, the SAC contains no allegations regarding the source of the funds in the bank

---

[3] In his Opposition Brief, the Trustee argues that the SAC contains allegations that Dumbauld did not receive his employment-related compensation in good faith or for fair value. Opp. Br. at 69-70. But <u>none</u> of the allegations in the SAC cited in support of this argument (SAC ¶¶ 170, 190, 219, 221-23, 266 and 273) allege, directly or impliedly, that Dumbauld did not act in good faith or receive his employment-related compensation for fair value. Instead, the SAC alleges that Dumbauld performed an analysis of Madoff trading activities, reported his accurate findings to the controlling principals at Access, retained an outside consultant to prepare a more detailed analysis, and arranged for that analysis to be reported to the controlling principals at Access. Thus, contrary to the Opposition Brief, there is no allegation in the SAC that raises any question concerning Dumbauld's good faith or whether he received employment-related compensation for fair value.

9

accounts. While the SAC identifies transfers received by the Access Defendants that are traceable to BLMIS, SAC ¶¶ 334(a)-(d), it contains no facts connecting the bank accounts to these transfers. Because the SAC only allows for the inference that Dumbauld *may* have received customer funds, the SAC fails to plead a subsequent transfer claim against Dumbauld. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'").[4]

---

[4] The Trustee's argument that he only needs to "allege sufficient facts to show the relevant pathways through which the funds were transferred from BLMIS to [the subsequent transferee]," Opp. Br. at 61, ignores the *Iqbal* requirement that the allegations must support an inference "more than the mere possibility of misconduct." 556 U.S. at 679. The alleged existence of a pathway, by itself, does not also support an inference that any funds traveled down that pathway to Dumbauld specifically, as opposed to one or more other defendants.

10

## **CONCLUSION**

For the foregoing reasons, Dumbauld respectfully requests that the Court dismiss the Second Amended Complaint against him with prejudice.

Dated: July 29, 2022
      New York, New York

                                  SHER TREMONTE LLP

                                  By: /s/ Robert Knuts
                                  Robert Knuts
                                  Cathy Liu
                                  90 Broad Street, 23rd Floor
                                  New York, New York 10004
                                  Tel: 212.202.2638
                                  Email: rknuts@shertremonte.com

                                  *Attorneys for Defendant Theodore Dumbauld*