## Exhibit B

*Memorandum Decision Denying Defendant's Motion to Dismiss* [Adv. Dkt. 167]

<u>NOT FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>    Plaintiff,<br><br>v.<br><br>Banque SYZ & Co., SA,<br><br>    Defendant. | Adv. Pro. No. 11-02149 (CGM) |

**MEMORANDUM DECISION DENYING DEFENDANT'S MOTION TO DISMISS**

<u>**A P P E A R A N C E S**</u> :

Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of*
*Bernard L. Madoff*
By: Nicholas J. Cremona (via Zoom)

Jenner & Block LLP
1155 Avenue of the Americas

New York, NY 10036
*Counsel for Defendant Banque Syz & Co., SA*
By: Richard Levin (via Zoom)

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Defendant's, Banque SYZ & Co., SA's ("Banque Syz"),

motion to dismiss the complaint of Irving Picard, the trustee ("Trustee") for the liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to recover subsequent

transfers allegedly consisting of BLMIS customer property. Banque Syz seeks dismissal for lack

of personal jurisdiction, for failure to plead a cause of action due to improper adoption by

reference; for failure to state a claim due to the safe harbor provision of the Bankruptcy Code,

and for failure to allege that it received BLMIS customer property. Defendant also asks the

Court to find its affirmative defenses of being a "good faith" transferee and having taken "for

value" and "without knowledge" to be met on the face of the complaint. The Defendant also

argues that its customer claim should be allowed. For the reasons set forth herein, the motion to

dismiss is denied in its entirety.

## **Jurisdiction**

This is an adversary proceeding commenced in this Court, in which the main underlying

SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending. The

SIPA Proceeding was originally brought in the United States District Court for the Southern

District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L.*

*Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court.

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1),

and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O). This Court has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and the Amended Standing Order of Reference, dated January 31, 2012. In addition, the District Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08–01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this Court has jurisdiction under the latter provision. Personal jurisdiction has been contested by this Defendant and will be discussed *infra*.

### Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its SIPA proceeding.

This adversary proceeding was filed on May 20, 2011. (Compl., ECF[1] No. 1). Via the complaint ("Complaint"), the Trustee seeks to recover subsequent transfers[2] made to Banque Syz, an asset management specialist based in Switzerland. (*Id.* ¶ 3). The subsequent transfers were derived from investments with BLMIS made by other funds, including: Fairfield Sentry Limited ("Fairfield Sentry") and Fairfield Sigma Limited ("Fairfield Sigma")(collectively the "Fairfield Funds") and Rye Select Broad Mkt Fund, LP, ("Tremont"). (*Id.* ¶ 6). These funds are referred to as "feeder funds" because the intention of the fund was to invest in BLMIS. (*Id.* ¶ 2).

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield Sentry and related defendants to avoid and recover fraudulent transfers of customer property in the amount of approximately $3 billion. (*Id.* ¶ 63). In 2011, the Trustee settled with Fairfield

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 11-02149-cgm.

[2] By a so-ordered stipulation entered December 7, 2021, the trustee amended the Complaint by dismissing any claims related to the Kingate funds but without actually filing an amended complaint. Stip & Order, ECF No. 147.

Sentry. (*Id.* ¶ 115). As part of the settlement, Fairfield Sentry consented to a judgment in the amount of $3.054 billion (Consent J., 09-01239-cgm, ECF No. 109) but repaid only $70 million to the BLMIS customer property estate. The Trustee then commenced a number of adversary proceedings against subsequent transferees like Defendant to recover the approximately $3 billion in missing customer property.

In its motion to dismiss, Banque Syz argues that the safe harbor bars the Trustee's recovery of this transfer, the Trustee has failed to allege that it holds BLMIS customer property, that this Court lacks personal jurisdiction over it, that the Trustee has improperly used adoption by reference, that it holds affirmative defenses to the cause of action, and that its customer claim should be allowed. The Trustee opposes the motion to dismiss.

## Discussion

### Personal Jurisdiction

Defendant objects to the Trustee's assertion of personal jurisdiction over it. In the Complaint, the Trustee argues that Defendant purposefully availed itself of the laws of the United States and New York. Compl. ¶¶ 87–113.

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that jurisdiction exists." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)). A trial court has considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2). *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). "'It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Dorchester Fin.*

*Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Marine Midland Bank,*

*N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Picard v. BNP Paribas S.A.* (*In re*

*BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (same).  At this preliminary stage, "the

plaintiff's *prima facie* showing may be established solely by allegations." *Dorchester Fin.*, 722

F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.

1990)); *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 565

(Bankr. S.D.N.Y. 2021) (same).

In order to be subjected to personal jurisdiction in the United States, due process requires

that a defendant have sufficient minimum contacts with the forum in which defendant is sued

"'such that the maintenance of the suit does not offend traditional notions of fair play and

substantial justice.'" *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501 (Bankr.

S.D.N.Y. 2012), 480 B.R. 501, 516 (Bankr. S.D.N.Y. 2012) (quoting *Int'l Shoe Co. v.*

*Washington*, 326 U.S. 310, 316 (1945)).  The pleadings and affidavits are to be construed "'in

the light most favorable to the plaintiffs, resolving all doubts in their favor.'" *Chloé v. Queen*

*Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward*

*Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594

B.R. 167, 187 (Bankr. S.D.N.Y. 2018).

> The Supreme Court has set out three conditions for the exercise of specific
> jurisdiction over a nonresident defendant.  First, the defendant must have
> purposefully availed itself of the privilege of conducting activities within the
> forum State or have purposefully directed its conduct into the forum State.
> Second, the plaintiff's claim must arise out of or relate to the defendant's forum
> conduct.  Finally, the exercise of jurisdiction must be reasonable under the
> circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

**Purposeful Availment**

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the

privilege of doing business in the forum and could foresee being haled into court there." *Charles

Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018). "Although a defendant's

contacts with the forum state may be intertwined with its transactions or interactions with the

plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an

insufficient basis for jurisdiction." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150

(2d Cir. 2019) (cleaned up). "It is insufficient to rely on a defendant's random, fortuitous, or

attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific

jurisdiction." *Id.*

A party "purposefully avail[s] itself of the benefits and protections of New York laws by

knowing, intending and contemplating that the substantial majority of funds invested in Fairfield

Sentry would be transferred to BLMIS in New York to be invested in the New York securities

market." *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 517 (Bankr. S.D.N.Y.

2012).

Banque Syz "knowingly directed funds to be invested with New York-based BLMIS

through Madoff Feeder Funds." (Compl. ¶ 6); (09-1239 Compl. ¶ 228 ("Under Fairfield Sentry's

offering memorandum, the fund's investment manager was required to invest no less than 95%

of the fund's assets through BLMIS."); *see also* Cremona Decl., ECF No. 154, Exs. 1–3 (The

subscription agreements incorporated the Fairfield Funds' Private Placement Memorandum,

which, in turn, disclose that "[t]he Fund will seek to achieve capital appreciation of its assets

principally by allocating its assets to an account at Bernard L. Madoff Investment Securities,

Inc."[3]). The Trustee also alleges that Banque Syz "solicited its own clients to invest in Madoff

---

[3] The "Investment Policies" section of the Fairfield Funds' Private Placement Memorandum goes on to state that
"The Manager has established a discretionary account for the Fund at Bernard L. Madoff Investment Securities, Inc.

Feeder Funds" and enticed those customers to increase their investments by offering them loans to fund the investments. (Compl. ¶ 39, 40).

Additionally, Banque Syz maintained its own account with BLMIS in New York and used New York bank to transfer funds into and receive funds from BLMIS, and filed a customer claim in this SIPA proceeding seeking to recover its own alleged losses on account of its investment with BLMIS. (Compl. ¶¶ 7, 8).

"[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). "[Defendant] intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom." *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 506 (Bankr. S.D.N.Y. 2012). Defendant's alleged contacts with New York are not random, isolated, or fortuitous.

**Arise out of or relate to the defendant's forum conduct**

As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017, 1026, 209 L. Ed. 2d 225 (2021) (emphasis in original). "[P]roof that a plaintiff's claim came about because of the defendant's in-state conduct" is not required. *Id.* at 1027. Instead, the court

---

(sometimes referred to as "BLM"), a registered broker-dealer in New York, who utilizes a strategy described as "split strike conversion", to which it allocates the predominant portion of the Fund's assets. . . . All investment decisions in the account at BLM are effected by persons associated with BLM. The firm, which employs approximately 300 people, acts primarily as a market-maker in stocks and convertible securities. Most of the stocks for which it acts as a market maker are also listed on the New York Stock Exchange. . . . BLM acts as a principal in connection with its sale of equity securities to the Fund and the purchase of equity securities from the Fund. BLM acts as a market-maker in the stocks purchased and sold by the Fund. These market making activities enable BLM to trade with the Fund as principal. . . . The Manager, in its sole and exclusive discretion, may allocate a portion of the Fund's assets (never to exceed, in the aggregate, 5% of the Fund's Net Asset Value at the time of investment) to alternative investment opportunities other than the account at BLM ("the "Non-BLM Investments"). It is anticipated that the Non-BLM Investments will be allocated among several managers, with no single allocation exceeding $50 million at the time it is made." Cremona Decl., ECF No. 154, Ex. 3 at 6–7.

need only find "an affiliation between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial, however, it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts within the state are not the proximate cause of the plaintiff's injury.") (internal quotations omitted).

Here, the Trustee is asserting subsequent transfer claims against Defendant for monies it received from the Fairfield Funds. (Compl. ¶¶ 63–74). These allegations are directly related to its investment activities with Fairfield and BLMIS. *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) (finding that the redemption and other payments the defendants received as direct investors in a BLMIS feeder fund arose from the New York contacts such as sending subscription agreements to New York, wiring funds in U.S. dollars to New York, sending redemption requests to New York, and receiving redemption payments from a Bank of New York account in New York, and were the proximate cause of the injuries that the Trustee sought to redress).

The suit is affiliated with the alleged in-state conduct. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

**Reasonableness**

Having found sufficient minimum contacts, the Court must determine if exercising personal jurisdiction over the Defendant is reasonable and "comport[s] with fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (internal quotations omitted). Factors the Court may consider include the burden on the defendant, the

forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient

and effective relief, the interstate judicial system's interest in obtaining the most efficient

resolution of controversies, and the shared interest of the several States in furthering fundamental

substantive social policies.

The exercise of jurisdiction is reasonable.  Defendant is not burdened by this litigation.

Defendant has actively participated in this Court's litigation for over ten years.  It is represented

by highly competent U.S. counsel, filed a claim in this SIPA litigation, and "irrevocably"

submitted to the jurisdiction of New York courts' when it signed its subscription agreements

with the Fairfield Funds.[4]  The forum and the Trustee both have a strong interest in litigating

BLMIS adversary proceedings in this Court.  *Picard v. Maxam Absolute Return Fund, L.P. (In re*

*BLMIS)*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012); *Picard*

*v. Chais (In re BLMIS)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010); *Picard v. Cohmad Sec.*

*Corp. (In re BLMIS)*, 418 B.R. 75, 82 (Bankr. S.D.N.Y. 2009); *Picard v. Fairfield Greenwich*

*Grp., (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 568 (Bankr. S.D.N.Y. 2021); *see also In re*

*Picard*, 917 F.3d 85, 103 (2d Cir. 2019) ("The United States has a compelling interest in

allowing domestic estates to recover fraudulently transferred property.").

The Trustee has made a prima facie showing of personal jurisdiction with respect to the

Fairfield Funds subsequent transfers at issue in this Complaint.

**The Court will not address informal arguments**

---

[4] Even though this Court held that the Defendant's consent to jurisdiction in New York courts contained in the subscription agreements it signed prior to investing with Fairfield Sentry could not be used as the sole basis for this Court's exercise of personal jurisdiction over an action by foreign liquidators to recover redemption payments under British Virgin Island law, the fact that Defendant agreed to submit to the jurisdiction of this Court is certainly a relevant factor in determining whether the exercise of jurisdiction over Defendant is reasonable.  *In Fairfield Sentry v. Theodoor GGC Amsterdam* (*In re Fairfield Sentry Ltd.*), Case No. 10-13164 (SMB), Adv. No. 10-03496 (SMB), 2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("Defendants' consent to the Subscription Agreement does not constitute consent to personal jurisdiction in the U.S. Redeemer Actions.").

As an initial matter, Banque Syz includes, in a footnote, in its memorandum of law that "[t]his Memorandum addresses in detail the claims relating to the transfers to Banque Syz from Sentry, which account for over 97% of the total recovery the trustee seeks. The same analysis applies to claims to recover transfers to Banque Syz from Sigma ($404,558) and from Rye Select ($60,471), and those claims should also be dismissed for the same reasons." *See* Memo. L., ECF No. 150 at 2-3, n.5.

This is inadequate. "A request for an order, except when an application is authorized by these rules, shall be by written motion, unless made during a hearing. The motion shall state with particularity the grounds therefor, and shall set forth the relief or order sought." Fed. R. Bankr. P. 9013.[5] "Each motion shall specify the rules and statutory provisions upon which it is predicated and the legal authorities that support the requested relief, either in the motion or in a separate memorandum of law. If such specification has not been made, the Court may strike the motion from the calendar." Bankr. S.D.N.Y. R. 9013-1(a). As Banque Syz has failed to state with particularity why the Court should dismiss the Trustee's Complaint as to Sigma and Rye Select, this Court denies this portion of the motion to dismiss without prejudice.

**12(b)(6) standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The claim is facially plausible when a plaintiff pleads facts that allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for

---

[5] The Federal Rules of Bankruptcy Procedure govern procedure in cases under Title 11 of the United States Code. Fed. R. Bankr. P. 1001. A SIPA "liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under chapters 1, 3, and 5 and subchapters I and II of chapter 7 of Title 11" to the extent that its is consistent with SIPA. 15 U.S.C. § 78fff.

more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."). In deciding a motion to dismiss, the Court should assume the factual allegations are true and determine whether, when read together, they plausibly give rise to an entitlement of relief. *Iqbal*, 556 U.S. at 679. "And, of course, a well-pl[ed] complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A complaint is "deemed to include any written instrument attached to it as an exhibit[,] . . . documents incorporated in it by reference[,]" and other documents "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted). A document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous information and relied on it in framing the complaint. *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

There are only two counts in this Complaint. In count one, the Trustee is seeking to recover subsequent transfers made to Banque Syz by Fairfield Sentry[6] ("Count One"). (Compl.

---

[6] In this Count, the Trustee also seeks recover of subsequent transfers from Fairfield Sigma and Tremont, which for reasons stated in this memorandum decision will not be addressed here.

¶¶ 85–91)  In Count Two, the Trustee is seeking to disallow Banque Syz's customer claim

("Count Two").  (Compl. ¶¶ 92–94).

**Count One: Recovery of Subsequent Transfers**

Section 550(a) of the Bankruptcy Code states:

Except as otherwise provided in this section, to the extent that a transfer is
avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the
trustee may recover, for the benefit of the estate, the property transferred, or, if the
court so orders, the value of such property, from--
(1) the initial transferee of such transfer or the entity for whose benefit such
transfer was made; or
(2) any immediate or mediate transferee of such initial transferee.

"To plead a subsequent transfer claim, the Trustee must plead that the initial transfer is

avoidable, and the defendant is a subsequent transferee of that initial transferee, that is, that the

funds at issue originated with the debtor."  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R.

167, 195 (Bankr. S.D.N.Y. 2018); *see also SIPC v. BLMIS* (*In re Consolidated Proceedings on*

*11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013)

(consolidated proceedings on 11 U.S.C. § 546(e)).  "Federal Civil Rule 9(b) governs the portion

of a claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a

claim to recover the subsequent transfer.  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R.

167, 195 (Bankr. S.D.N.Y. 2018) (citing *Sharp Int'l Corp. v. State St. Bank & Trust Co.*, (*In re*

*Sharp Int'l Corp.*), 403 F.3d 43, 56 (2d Cir. 2005) and *Picard v. Legacy Capital Ltd. (In re*

*BLMIS)*, 548 B.R. 13, 36 (Bankr. S.D.N.Y. 2016), *rev'd on other grounds*, *Picard v. Citibank,*

*N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021)).

To properly plead a subsequent transfer claim, the Trustee need only provide "a short and

plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

8(a)(2).  "The plaintiff must allege the necessary vital statistics—the who, when, and how much–

of the purported transfers to establish an entity as a subsequent transferee of the funds. However,

the plaintiff's burden at the pleading stage does not require dollar-for-dollar accounting of the

exact funds at issue." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr.

S.D.N.Y. 2018). While the Trustee must allege that the initial transfer from BLMIS to Fairfield

Sentry is avoidable, he is not required to avoid the transfer received by the initial transferee

before asserting an action against subsequent transferees. The Trustee is free to pursue any of

the immediate or mediate transferees, and nothing in the statute requires a different result. *IBT

Int'l, Inc. v. Northern* (*In re Int'l Admin. Servs., Inc.*), 408 F.3d 689, 706-07 (11th Cir. 2005).

The Trustee pleaded the avoidability of the initial transfer (from BLMIS to Fairfield

Sentry) by adopting by reference the entirety of the complaint filed against Fairfield Sentry in

adversary proceeding 09-1239 ("Fairfield Complaint"). (Compl. ¶ 63). Whether the Fairfield

Complaint properly pleads the avoidability of the initial transfer, is governed by Rule 9(b). Rule

9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances

constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind

may be alleged generally." Fed. R. Civ. P. 9(b). "Where the actual fraudulent transfer claim is

asserted by a bankruptcy trustee, applicable Second Circuit precedent instructs courts to adopt a more

liberal view since a trustee is an outsider to the transaction who must plead fraud from second-hand

knowledge. Moreover, in a case such as this one, where the Trustee's lack of personal knowledge is

compounded with complicated issues and transactions that extend over lengthy periods of time, the

trustee's handicap increases, and even greater latitude should be afforded." *Picard v. Cohmad Secs.

Corp.,* (*In re BLMIS*), 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up).

**Adoption by Reference**

Adoption by reference is government by Rule 10 of the Federal Rules of Civil Procedure.

Fed. R. Civ. P. 10(c). Rule 10(c) states: "A statement in a pleading may be adopted by reference

elsewhere in the same pleading or in any other pleading or motion." The district court has already found that adoption by reference of the entire Fairfield Complaint is proper. *See SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013) ("The Trustee's complaint against Standard Chartered Financial Services incorporates by reference the complaints against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).") (cleaned up).

The Court will follow the district court's instruction. As was explained in *In re Geiger*, pleadings filed in the "same action" may be properly adopted by reference in other pleadings in that action. 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010). The Fairfield Complaint was filed in the "same action" as this adversary proceeding for purposes of Rule 10(c). *Id.* Cases within this SIPA proceeding are filed in the same "proceeding"—the SIPA proceeding. *In re Terrestar Corp.*, No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."); *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 610 B.R. 197, 237 (Bankr. S.D.N.Y. 2019) ("The prior decisions within this SIPA proceeding constitute law of the case . . . . "); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 603 B.R. 682, 700 (Bankr. S.D.N.Y. 2019), (citing *In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018) (law of the case doctrine applies across adversary proceedings within the same main case), *aff'd*, 943 F.3d 125 (2d Cir. 2019)); *Perez v. Terrastar Corp. (In re Terrestar Corp.)*, No. 16 Civ. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."), *appeal dismissed*, No. 17-1117 (2d Cir. June 29, 2017);

*Bourdeau Bros., Inc. v. Montagne (In re Montagne)*, No. 08-1024 (CAB), 2010 WL 271347, at

*6 (Bankr. D. Vt. Jan. 22, 2010) ("[D]ifferent adversary proceedings in the same main case do

not constitute different 'cases.'").

 Some courts have worried that wholesale incorporation of a pleading can lead to

"confusing and inconvenient" results. *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47

(E.D. Va. 2009) (footnote omitted), *aff'd*, 382 F. App'x 256 (4th Cir. 2010) (quoted and cited in

Defendant's memo of law). That is not a concern in these proceedings. Banque Syz, like many

subsequent transfer defendants in this SIPA proceeding, is uniquely aware of what has been filed

in the other adversary proceeding in this SIPA liquidation. It routinely follows what is

happening on a case-wide basis. Banque Syz has participated[7] in consolidated briefing and

arguments with hundreds of defendants from other proceedings in these cases, including the

consolidated motion to dismiss on § 346(e). *See* Order, 12-MC-115, ECF No. 119, Ex. A at 24

(indicating the Defendant agreed to consolidate its case with 104 other proceedings); Order, 12-

Misc.-115, ECF No. 314, Ex. A. at 10 (indicating this proceeding was consolidated with 41 other

proceedings).

 Allowing the Trustee to incorporate the Fairfield Complaint by reference, does not

prejudice Banque Syz. If the Court were to dismiss this Complaint and permit the Trustee to

amend his Complaint to include all of the allegations that are already contained in the Fairfield

Complaint, all parties would be prejudiced by delay in these already, overly-prolonged

proceedings. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No.

09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("Rule 15 places no

---

[7] Defendant is an active participant in the Fairfield liquidation currently pending in this Court where "The Fairfield Liquidators commenced a separate action in this Court to recover from Banque Syz the same transfers that are at issue in this adversary proceeding." Memo Law, ECF No. 150 at 9.

time bar on making motions to amend pleadings and permits the amending of pleadings "when justice so requires.").

Through the adoption of the Fairfield Complaint, the Trustee has adequately pleaded, with particularity, the avoidability of the initial transfer due to Fairfield Sentry's knowledge of BLMIS' fraud. (Fairfield Compl. ¶¶ 314–318, 09-01239, ECF No. 286); *see also SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013) ("[T]he Court directs that the following adversary proceedings be returned to the Bankruptcy Court for further proceedings consistent with this Opinion and Order . . . .") (applying order to Banque Syz).

**The Safe Harbor does not bar the avoidance of the Fairfield Initial Transfers**

Defendant has raised the "safe harbor" defense, found in § 546(e), to the Trustee's allegations. Section 546(e) is referred to as the safe harbor because it protects a transfer that is a "settlement payment ... made by or to (or for the benefit of) a ... financial institution [or] financial participant," or that is "made by or to (or for the benefit of) a ... financial institution [or] financial participant ... in connection with a securities contract." 11 U.S.C. § 546(e). "By its terms, the safe harbor is a defense to the avoidance of the **initial** transfer. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis added). However, where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here, the subsequent transferee is entitled to raise a § 546(e) defense against recovery of those funds. *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021).

In light of the safe harbor granted under 11 U.S.C. § 546(e), the Trustee may only avoid

and recover intentional fraudulent transfers under § 548(a)(1)(A) made within two years of the

filing date, unless the transferee had actual knowledge of BLMIS's Ponzi scheme, or more

generally, "actual knowledge that there were no actual securities transactions being conducted."

*SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR),

2013 WL 1609154, at \*4 (S.D.N.Y. Apr. 15, 2013). "The safe harbor was intended, among other

things, to promote the reasonable expectations of legitimate investors. If an investor knew that

BLMIS was not actually trading securities, he had no reasonable expectation that he was signing

a contract with BLMIS for the purpose of trading securities for his account. In that event, the

Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the

full extent permitted under state and federal law." *Picard v. Legacy Capital Ltd. (In re BLMIS)*,

548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on*

*other grounds, Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171 (2d Cir. 2021)). "In sum, if

the Trustee sufficiently alleges that the [initial] transferee from whom he seeks to recover a

fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim the protections of

Section 546(e)'s safe harbor." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-

01789 (CGM), 2021 WL 3477479, at \*4 (Bankr. S.D.N.Y. Aug. 6, 2021).

This Court has already determined that the Fairfield Complaint[8] contains sufficient

allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule

12(b)(6) motion. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv.

No. 09-01239 (CGM), 2021 WL 3477479, at \*4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he Trustee

has alleged that the agents and principals of the Fairfield Funds had actual knowledge of

Madoff's fraud"). In that adversary proceeding, the Court held that "[t]he Trustee has pled

---

[8] The Fairfield Complaint can be found on the docket of adversary number 09-01239-cgm, ECF No. 286.

[actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the Fairfield Funds through 'FGG,' an alleged 'de facto' partnership." *Id.* at *4; *see also* Fairfield Compl. ¶ 320 ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 321 ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 322 ("FIFL had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 323 ("Stable Fund had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 324 ("FG Limited had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 325 ("FG Bermuda had actual knowledge of the fraud at BLMIS"); ¶ 326 ("FG Advisors had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 327 ("Fairfield International Managers had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 328 ("FG Capital had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 329 ("Share Management had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 9 ("It is inescapable that FGG partners knew BLMIS was not trading securities. They knew BLMIS's returns could not be the result of the split strike conversion strategy (the "SSC Strategy"). They knew BLMIS's equities and options trading volumes were impossible. They knew that BLMIS reported impossible, out-of-range trades, which almost always were in Madoff's favor. They knew Madoff's auditor was not certified and lacked the ability to audit BLMIS. They knew BLMIS did not use an independent broker or custodian. They knew Madoff refused to identify any of BLMIS's options counterparties. They knew their clients and potential clients raised numerous due diligence questions they would not and could not satisfactorily answer. They knew Madoff would refuse to provide them with honest answers to due diligence questions because it would confirm the details of his fraud.  They knew Madoff lied about whether he traded options over the counter or

through the exchange. They knew they lied to clients about BLMIS's practices in order to keep the money flowing and their fees growing. And they knowingly misled the SEC at Madoff's direction.").

This Court determined that the Fairfield Complaint is replete with allegations demonstrating that Fairfield Sentry had actual knowledge that BLMIS was not trading securities. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021). The district court determined that "those defendants who claim the protections of Section 546(e) through a Madoff Securities account agreement but who actually knew that Madoff Securities was a Ponzi scheme are not entitled to the protections of the Section 546(e) safe harbor, and their motions to dismiss the Trustee's claims on this ground must be denied. *SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013). And "to the extent that a defendant claims protection under Section 546(e) under a separate securities contract" this Court was directed to "adjudicate those claims in the first instance consistent with [the district court's] opinion." *See* Order, 12-MC-115, ECF No. 119, Ex. A at 24.

This Court is powerless to reconsider this issue, agrees with the district court's reasoning, and finds its holding consistent with *dicta* set forth by the Court of Appeals for the Second Circuit. *See Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*), 773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded to the clients of stockbrokers, including the

protection offered by § 546(e).").  The Trustee's allegations in the Fairfield Complaint are
sufficient to survive a Rule 12(b)(6) motion on this issue.

**The Safe Harbor cannot be used to defeat a subsequent transfer**

Defendant argues that the safe harbor prevents the Trustee from avoiding the subsequent
transfer between Fairfield Sentry and Banque Syz on account of the securities contract between
Fairfield and Banque Syz.  Memo L. at 23, ECF No. 150.

The safe harbor is not applicable to subsequent transfers.  "By its terms, the safe harbor is
a defense to the avoidance of the *initial* transfer."  *Picard v. BNP Paribas S.A. (In re BLMIS)*,
594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e)
(failing to include § 550 in its protections).  Since there must be an initial transfer in order for the
Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe
harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned.  The
safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not
"avoiding" a subsequent transfer, "he recovers the value of the avoided initial transfer from the
subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the
recovery claims under section 550."  *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167,
197 (Bankr. S.D.N.Y. 2018).

Defendant argues that this Court applied the safe harbor to redemption payments made by
Fairfield Sentry in *In re Fairfield Sentry Ltd.*, 2020 WL 7345988, at *5 (Dec. 14, 2020)
("*Fairfield III*").  Reliance on this case is misplaced.  While many facts overlap between this
SIPA liquidation of BLMIS and the foreign liquidation of BLMIS's largest feeder fund, Fairfield
Sentry, the legal holdings in these liquidations are not interchangeable.  In this case, the Court is

analyzing subsequent transfers; in *Fairfield III* the Court was analyzing initial transfers. The safe harbor is not available to be raised as defense to subsequent transfer claims.

In *Fairfield III*, this Court analyzed whether the safe harbor applied to avoidance claims under BVI law[9] to recover "unfair preferences" and "undervalue transactions" and constructive trust claims against a defendant who allegedly "knew or willfully blinded itself to the fact that the [Fairfield Sentry's] BLMIS investments were worthless or virtually worthless." *In re Fairfield Sentry Ltd.*, No. 10-13164 (SMB), 2020 WL 7345988, at *1 (Bankr. S.D.N.Y. Dec. 14, 2020), *reconsideration denied*, No. 10-13164 (SMB), 2021 WL 771677 (Bankr. S.D.N.Y. Feb. 23, 2021). The Court was not considering the safe harbor's effect on subsequent transfer claims brought under § 550 of the Bankruptcy Code. In the Fairfield Sentry liquidation, Defendant would be an initial transferee as redemption payments paid by Fairfield Sentry were paid directly to Multi-Strategy. *Fairfield III* is not applicable here.

Defendant also argues that this Court permitted a subsequent transferee to raise the safe harbor as a defense in *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021). The Court never considered whether the safe harbor could be raised by a subsequent transferee in that case. In *Picard v. Fairfield*, the subsequent transferees were also the principals and insiders of Fairfield Sentry, the initial transferee. The Court considered the insider's actual knowledge of BLMIS's fraud only as it related to whether Fairfield Sentry had actual knowledge of the fraud. The Court never considered whether the subsequent transferees could raise the safe harbor defense on their own behalf nor could it have, as § 546 is inapplicable to subsequent transferees.

---

[9] Fairfield Sentry liquidated under the laws of the British Virgin Islands ("BVI") and this Court's chapter 15 case is ancillary to the primary proceeding brought in the BVI.

Defendant is not permitted to raise the safe harbor defense on its own behalf as a subsequent transferee.

## Section 550(b)'s Defenses

Under section 550(b), a trustee may not recover from a subsequent transferee who took for value, in good faith, and without knowledge of the voidability of the transfer. All three elements (value, good faith, and lack of knowledge) must be proved by a defendant in order for it to take advantage of this affirmative defense. Banque Syz argues that the Complaint establishes that it took the transfers for value, in good faith, and without knowledge of the voidability of the transfer. This affirmative defense is Banque Syz' burden to plead in an answer and prove with evidence; it cannot be established in a complaint.

## Value

The "value" that a subsequent transferee must provide is "merely consideration sufficient to support a simple contract, analogous to the 'value' required under state law to achieve the status of a bona fide purchaser for value." *Picard v. Legacy Capital Ltd.* (*In re BLMIS*), 548 B.R. 13, 37 (Bankr. S.D.N.Y. 2016) (citation omitted); *accord Enron Corp. v. Ave. Special Situations Fund II, L.P.* (*In re Enron Corp.*), 333 B.R. 205, 236 (Bankr. S.D.N.Y. 2005). In addition, the "value" element under § 550(b)(1) looks to what the transferee gave up rather than what the transferor received. The Complaint contains no mention of Banque Syz' exchanging shares for consideration. (Compl. ¶¶ 67–74). Therefore, the "value" defense is not asserted on the face of the Complaint.

Defendant argues that the payments they received from Fairfield Sentry were cash payments given in exchange for the redemption of shares in the Sentry Fund. And directs the Court to the decision of the Court of Appeal of the British Virgin Islands, *Fairfield Sentry Ltd. v.*

*Migani*, [2014] UKPC 9[10] ("*Migani*"), as proof that it "gave value" by exchanging shares in Fairfield Sentry for the subsequent transfer funds it received. Reliance on *Migani* creates a circular argument that brings us back to whether Banque Syz "knew at the time of the redemptions . . . that the redemption prices were based on fictitious assets." *Fairfield III*, at *6 n.7. If Banque Syz knew at the time it redeemed its shares that the shares were worthless, then it did not receive the subsequent transfer funds "for value" as is required under § 550.

"Value" is Defendant's burden to plead and prove. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 198 (Bankr. S.D.N.Y. 2018). Whether the Defendant gave value is a question of fact to be resolved either at the summary judgment stage or at trial. *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021).

**Good Faith**

The District Court recently explained that good faith is a fact-intensive inquiry that almost always requires a trial: "The Second Circuit made clear in its decision in [*Picard v.* *Citibank*[*, N.A. (In re BLMIS)*, 12 F.4th 171 (2d Cir. 2021), *cert. denied* No. 21-1059 (Feb. 28, 2022)] that the inquiry notice standard requires a 'fact-intensive inquiry to be determined on a case-by-case basis, which naturally takes into account the disparate circumstances of differently-situated transferees.'" *In re BLMIS, LLC*, Dec. & Order, 20-cv-02586(CM) (May 2, 2022). And that "such a fact-based determination can only be made based on the entirety of the factual record after discovery . . . ." *Id.* (internal quotation omitted).

Rather than demonstrate Banque Syz's good faith on its face, the Complaint suggests that Banque Syz had access to information about BLMIS's fraud and failed to concern itself with such things. (Compl. ¶ 42) ("Banque Syz' expertise in private banking and institutional asset

---

[10] *available at* https://www.jcpc.uk/cases/docs/jcpc-2012-0061-judgment.pdf.

management, as well as its substantial investments in the Madoff Feeder Funds, provided it access to information about the operations of BLMIS, and therefore Banque Syz knew or should have known of numerous irregularities concerning investing through BLMIS.").

The burden of proving good faith falls squarely on Banque Syz and this Court cannot make a determination on Banque Syz' affirmative defense until after a fact-intensive inquiry. Discovery is required on this issue.

### Knowledge of the Voidability

Defendants argues that if the Court finds "good faith" is established than this element is also established. Having determined that "good faith" cannot be found on the face of a complaint, the Court must deny the Defendant's motion on this element. Additionally, § 550(b)(1) provides a defense to recovery making lack of knowledge Defendant's burden to plead and prove. *Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209 (2022) ("§ 550(b)(1) provides a complete defense to recovery . . . .").

### BLMIS Customer Property

The Trustee has pleaded that "[b]ased on the Trustee's investigation to date, approximately $15,449,241 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Banque Syz." (Compl. ¶ 67). Approximately $404,558 was transferred from BLMIS (through Fairfield Sentry and Fairfield Sigma) to Banque Syz. (Compl. ¶ 71).

Exhibit K to the Complaint shows four subsequent transfers from Fairfield to Banque Syz: $332,185 on 5/15/2006; $13,635,353 on 1/16/2007; $193,278 on 3/16/2007; and $1,288,425 on 3/16/2007. Exhibit M to the Complaint shows five subsequent transfers from Fairfield Sigma

to Banque Syz: $29,443 on 6/19/2007; $43,446 on 8/17/2007; $41,162 on 10/19/2007; $23,789

on 1/22/2008; $266,718 on 8/15/2008. These exhibits provide Banque Syz with the "who,

when, and how much" of each transfer. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R.

167, 195 (Bankr. S.D.N.Y. 2018).

The Fairfield Complaint, which is incorporated by reference into this, alleges that the

Fairfield Fund was required to invest 95% of its assets in BLMIS. (09-1239 Compl. ¶ 89); *see*

*also* (09-1239 Compl. ¶ 91) ("From the beginning, to comport with Madoff's requirement for

BLMIS feeder funds, Fairfield Sentry ceded control of not only its investment decisions, but also

the custody of its assets, to BLMIS.").

The Complaint plausibly alleges that Fairfield Sentry did not have any assets that were

not customer property. Defendants attempt to make a very intricate factual argument about how

billions of dollars might have come from non-BLMIS property. Memo. Law at 33, ECF No. 150

("Yet the trustee admits that only $2.895 billion in alleged avoidable initial transfers of customer

property were made by BLMIS to Sentry during this period, meaning that at least $4.189 billion

of the transfers Sentry made during this period—well more than half of Sentry's transfers during

the period—could not have been subsequent transfers of avoidable initial customer property

transfers. Nevertheless, the trustee has challenged all the transfers from Sentry (other than

transfers to BLMIS), despite the mathematical impossibility of his position."). Defendant also

argues that the dates of the initial transfers do not align with the dates of the subsequent transfers.

Taking all allegations as true and reading them in a light most favorable to the Trustee,

the Complaint plausibly pleads that Banque Syz received customer property because Fairfield

Sentry did not have other property to give. The calculation of Fairfield Sentry's customer

property and what funds it used to make redemption payments are issues of fact better resolved

at a later stage of litigation.

### **Conclusion**

For the foregoing reasons, Banque Syz' motion to dismiss is denied.  The Trustee  shall

submit a proposed order within fourteen days of the issuance of this decision, directly to

chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local

Bankruptcy Rule 9074-1(a).



**/s/ Cecelia G. Morris**

_____

**Dated: June 14, 2022**
**Poughkeepsie, New York**

**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**