JENNER & BLOCK LLP
Richard Levin
Carl Wedoff
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600

Vincent E. Lazar
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350

*Counsel for Defendant Banque Syz SA*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br>                            *Plaintiff-Applicant,* <br><br>      v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br>                        *Defendant.* | Adv. Proc. No. 08-01789 (CGM) <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |
| In re <br> BERNARD L. MADOFF, <br>                        *Debtor.* | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br>                        *Plaintiff,* <br><br>      v. <br><br> BANQUE SYZ & CO., SA, <br>                        *Defendant.* | Adv. Proc. No. 11-02149 (CGM) <br><br> **DEFENDANT BANQUE SYZ SA'S MOTION FOR LEAVE TO APPEAL UNDER 28 U.S.C. § 158(a)(3)** |

# CORPORATE DISCLOSURE STATEMENT

In accordance with Fed. R. Bankr. P. 8012, the undersigned counsel of record for Banque Syz SA, formerly known as Banque Syz & Co. SA, a non-governmental corporate party, discloses that Financière SYZ SA owns more than 10% of the equity interests of Banque Syz SA. No other corporation owns 10% or more of the equity interests of Banque Syz SA. No corporation owns 10% or more of the equity interests of Financière SYZ SA.

Dated: August 1, 2022

/s/ Richard Levin
Richard Levin

## TABLE OF CONTENTS

*Page*

CORPORATE DISCLOSURE STATEMENT.................................................................i

TABLE OF CONTENTS ...............................................................................................ii

TABLE OF AUTHORITIES ........................................................................................ iv

INTRODUCTION......................................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 3

QUESTION PRESENTED .......................................................................................... 7

RELIEF SOUGHT ....................................................................................................... 7

ARGUMENT ................................................................................................................. 8

I.     THE BANKRUPTCY'S COURT'S LEGAL ERROR PRESENTS
EXCEPTIONAL CIRCUMSTANCES WARRANTING
INTERLOCUTORY REVIEW............................................................................ 8

     A.     The Order Involves a Controlling Question of Law. ................................. 9

     B.     Substantial Ground for Difference of Opinion Exists Because
the Bankruptcy Court Misread This Court's *Cohmad* Decision. .............. 10

     C.     An Immediate Appeal Will Advance the Ultimate Termination of
This Litigation. ........................................................................................ 16

     D.     Exceptional Circumstances Also Exist Because Correction of the
Bankruptcy Court's Error Would Result in the Termination or
Narrowing of 58 Subsequent Transferee Proceedings. ........................... 16

CONCLUSION ........................................................................................................... 19

CERTIFICATE OF COMPLIANCE ........................................................................ 20

Exhibit A:    The Bankruptcy Court's June 27, 2022 Order Denying Banque Syz
              Fund Limited's Motion to Dismiss the Complaint Under Bankruptcy
              Rule 7012(b) and Federal Rule of Civil Procedure 12(b)(2) and
              12(b)(6)

Exhibit B:    The Bankruptcy Court's June 14, 2022 Memorandum Decision
              Denying Defendant's Motion to Dismiss

Exhibit C:    Adversary Proceedings Subject to Section 546(e) Defense

<u>**TABLE OF AUTHORITIES**</u>

*Page(s)*

**Cases**

*In re Ditech Holding Corp.*,
 2021 WL 4267691 (S.D.N.Y. Sept. 20, 2021) (Rakoff, J.) ........................................... 8

*Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.)*,
 2006 WL 2548592 (S.D.N.Y. Sept. 5, 2006)....................................................8, 9, 10, 16

*McMillan v. City of New York*,
 2011 WL 5237285 (S.D.N.Y. Aug. 23, 2011) (Rakoff, J.), *vacated on
 other grounds*, 711 F.3d 120 (2d Cir. 2013) ..................................................... 10

*MF Global Holdings Ltd. v. Allied World Assurance Co. (In re MF Global
 Holdings Ltd.)*,
 296 F. Supp. 3d 662 (S.D.N.Y. 2017) (Rakoff, J.) ...................................................... 16

*Picard v. Banque Cantonale Vaudoise (In re Madoff)*,
 2022 WL 2761044 (Bankr. S.D.N.Y. July 14, 2022).................................................... 7

*Picard v. Banque Lombard Odier & Cie SA (In re Madoff)*,
 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022)..................................................... 6

*Picard v. Banque Syz & Co., SA (In re Madoff)*,
 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022)............................................. 6, 13

*Picard v. Barclays Bank (Suisse) S.A. (In re Madoff)*,
 2022 WL 2799924 (Bankr. S.D.N.Y. July 15, 2022) ................................................... 7

*Picard v. Bordier & Cie (In re Madoff)*,
 2022 WL 2390556 (Bankr. S.D.N.Y. June 30, 2022)................................................... 7

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
 12 F.4th 171 (2d Cir. 2021)................................................................................... 4

*Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*,
 773 F.3d 411 (2d Cir. 2014) .................................................................................. 14

*Picard v. Katz*,
 462 B.R. 447 (S.D.N.Y. 2011) (Rakoff, J.)................................................................. 17

*Picard v. Lloyds TSB Bank PLC (In re Madoff),*
  2022 WL 2390551 (Bankr. S.D.N.Y. June 30, 2022) ...................................................... 6

*In re Picard,*
  917 F.3d 85 (2d Cir. 2019) ........................................................................................... 4

*Shinn v. Ramirez,*
  142 S. Ct. 1718 (2022) ................................................................................................. 10

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),*
  476 B.R. 717 (S.D.N.Y. 2012) ..................................................................................... 17

*SIPC v. Bernard L. Madoff Inv. Secs. LLC,*
  2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ...................................................... *passim*

**Statutes**

11 U.S.C. § 544(b) ............................................................................................................. 2

11 U.S.C. § 546(e) .................................................................................................... *passim*

11 U.S.C. § 548(a)(1)(A) ........................................................................................ 2, 5, 17

11 U.S.C. § 550(a)(2) ............................................................................................... 2, 4, 14

11 U.S.C. § 550(b) ............................................................................................................. 4

28 U.S.C. § 158(a)(3) ..................................................................................................... 1, 8

28 U.S.C. § 1292(b) ............................................................................................... 8, 10, 16

**Other Authorities**

Fed. R. Bankr. P. 8002(d) .................................................................................................. 1

Fed. R. Bankr. P. 8004 ....................................................................................................... 1

Defendant Banque Syz & Co., SA ("**Banque Syz**") hereby moves under 28 U.S.C. § 158(a)(3) and Fed. R. Bankr. P. 8004 for leave to appeal from an order, ECF 168 (the "**Order**"; Ex. A hereto) of the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), entered on June 27, 2022, denying Banque Syz's motion to dismiss the Complaint of plaintiff Irving H. Picard, Trustee (the "**Trustee**") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("**BLMIS**") and the Chapter 7 Estate of Bernard L. Madoff ("**Madoff**").[1]

## **INTRODUCTION**

This appeal presents a straightforward controlling question of law, common to over 50 adversary proceedings now pending in the Bankruptcy Court: Did the Bankruptcy Court incorrectly interpret and apply this Court's prior decision in this SIPA proceeding, *SIPC v. Bernard L. Madoff Inv. Secs. LLC*, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*")?

The Trustee's Complaint alleges that Banque Syz received subsequent transfers of BLMIS customer property from BLMIS feeder funds to whom BMLIS had made fraudulent transfers in furtherance of a Ponzi scheme. The Trustee alleges that BLMIS

---

[1] By Stipulation and Order entered July 8, 2022 [ECF 172] under Fed. R. Bankr. P. 8002(d), the Bankruptcy Court extended Banque Syz's time to appeal the Order through August 1, 2022, thus making this appeal and motion timely under Bankruptcy Rule 8004(a). Except where otherwise indicated, all references herein to "ECF ___" are to the docket of the Bankruptcy Court in Adversary Proceeding No. 11-02149.

never actually traded securities on behalf of its customers and that BLMIS's customers/initial transferees (the feeder funds) knew of the fraud.

Bankruptcy Code sections 544(b), 548(a) and 550(a) allow a bankruptcy trustee to avoid a debtor's fraudulent transfer of property and to recover the avoided transfer from the initial transferee and in some cases from a subsequent transferee. However, Bankruptcy Code section 546(e) expressly restricts the avoidability of a settlement payment or a transfer made in connection with a securities contract by or to a financial institution to transfers avoidable under section 548(a)(1)(A), which in turn authorizes only the avoidance of transfers made with actual fraudulent intent within two years of bankruptcy.

In *Cohmad*, this Court precluded a defendant transferee from invoking section 546(e)'s protections if it actually knew that BLMIS was not trading securities. The Court did so because the purpose of the section 546(e) safe harbor—promoting the finality of legitimate securities market transactions—would not be served where the defendant transferee knew that no securities were being traded.

But the *Cohmad*'s holding be expanded to ensnare innocent subsequent transferees who had no knowledge that BLMIS was not trading securities, just because the initial transferee had knowledge? The *Cohmad* opinion strongly implies not—it permitted the trustee to pursue claims otherwise unquestionably covered by the safe harbor only with respect to a defendant who allegedly had actual knowledge of the fraud (a subsequent transferee with alleged very close ties to Madoff). Yet here the

2

Bankruptcy Court interpreted and applied *Cohmad* to allow the trustee to pursue otherwise statutorily safe harbored claims against an innocent subsequent transferee with no knowledge of BLMIS's fraud, effectively holding that an initial transferee's alleged knowledge infects all subsequent transferees and voids the protection Congress gave to innocent securities market participants. As explained below, the Bankruptcy Court's decision is inconsistent with the Bankruptcy Code, this Court's ruling in *Cohmad*, and Second Circuit authority on the interpretation and application of section 546(e).

This Court should grant leave for an interlocutory appeal of the Bankruptcy Court's order not only because it is wrong, but also because reversal would substantially streamline the course of this and at least 40 other similar adversary proceedings and would terminate at least 17 other adversary proceedings now pending in the Bankruptcy Court, thereby greatly promoting judicial economy. The appeal raises a pure controlling issue of law—the interpretation of this Court's *Cohmad* decision—that does not require study of the factual record and on which there is a substantial ground for difference of opinion and therefore meets the requirements for an interlocutory appeal.

## STATEMENT OF FACTS

The Trustee has brought approximately 80 proceedings to recover transfers made to foreign defendants by Fairfield Sentry Ltd. ("**Sentry**") and other offshore BLMIS feeder funds. The Trustee alleges that the transfers constituted subsequent transfers of customer property initially transferred to the feeder funds by BLMIS. These

3

proceedings were filed a decade or more ago but had been dormant pending the Trustee's appeals regarding the extraterritorial reach of 11 U.S.C. § 550(a)(2) and the pleading standards for the good faith for value defense under 11 U.S.C. § 550(b).

Following the Second Circuit's decisions on those issues in *In re Picard*, 917 F.3d 85 (2d Cir. 2019) (extraterritoriality), and *Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171 (2d Cir. 2021) (good faith), and reassignment of all BLMIS proceedings in the Bankruptcy Court to the Honorable Cecelia G. Morris, Judge Morris directed separate briefing schedules in each proceeding, even though many of the grounds and arguments—particularly in regard to the section 546(e) safe harbor—are common to most of the proceedings. As a result, more than 40 separate motions making substantially identical legal arguments on those common legal issues have already been filed in the various proceedings, with briefing scheduled into 2023; numerous additional motions remain to be filed and briefed.

Banque Syz's motion to dismiss was in the first set to be argued and decided, and its case presents the section 546(e) financial contracts safe harbor issue clearly. Banque Syz is a private bank located in Switzerland. The Trustee seeks to recover $15,449,241 in share redemption payments made to Banque Syz in 2006 and early 2007 by Sentry (a BMLIS feeder fund), $404,558 in share redemption payments made to it in 2007 and 2008 by Fairfield Sigma, Ltd. ("**Sigma**") (a feeder fund to Sentry), and $60,471 in share redemption payments made before 2006 by Rye Broad Market Fund, Ltd. (another

4

BLMIS feeder fund). The Trustee alleges that nearly all[2] the funds Banque Syz received were customer property that BLMIS had initially transferred to Sentry or Rye more than two years before BLMIS's December 12, 2008 petition date and thus outside the lookback period for claims under 11 U.S.C. § 548(a)(1)(A), the only claims exempt from the section 546(e) safe harbor.

In the proceedings below, the Trustee did not dispute that all the initial transfers to Sentry were made by a stockbroker (BLMIS) to a financial institution (Sentry, by virtue of a bank acting as its agent or custodian) in connection with a securities contract (the account agreement between BLMIS and Sentry). The Trustee also did not dispute that the initial transfers also were made in connection with a separate securities contract (Sentry's Articles of Association, which govern requests by its shareholders for redemption of their shares).[3] Thus, by its terms, section 546(e) applies to the initial transfers that gave rise to nearly all the redemption the Trustee seeks to recover from Banque Syz as a subsequent transferee, and the Bankruptcy Court did not find otherwise.

The Complaint does not allege that Banque Syz had actual knowledge of BLMIS's fraud; the Trustee did not argue otherwise on the motion; and the Bankruptcy

---

[2] The Trustee alleges that Banque Syz received $331,669 in redemption payments from Sigma from initial transfers that BLMIS made within two years of the SIPA proceeding.

[3] Because of the *de minimis* amount of the Rye Broad Market Fund transfers ($60,471), neither Banque Syz nor the Trustee specifically addressed these transfers, but the same analysis—BLMIS as a stockbroker, Rye as a financial institution, and the redemption of shares—applies.

Court did not find otherwise in its decision. Instead, the Trustee argued, and the Bankruptcy Court agreed, that solely because the Trustee adequately alleged that the initial transferee (Sentry) had actual knowledge of BLMIS's fraud, Banque Syz should be barred from raising the safe harbor defense to the avoidability of the initial transfer on its own behalf. *See* Ex. B. at 16-20, 2022 WL 2135019, at *8-9.

In denying Banque Syz's motion, the Bankruptcy Court concluded that it was required to apply this Court's mandate in *Cohmad*[4] (despite the factual differences), that it was "powerless to reconsider this issue, [and] agrees with the district court's reasoning." Ex. B at 19, 2022 WL 2135019, at *9. But the Bankruptcy Court's opinion nowhere explains why it concluded that *Cohmad*—which addressed the situation in which a subsequent transferee *did* have actual knowledge of BLMIS's fraud—would require that a subsequent transferee that *did not* have such knowledge be denied the ability to invoke a section 546(e) safe harbor defense to the avoidability of the underlying initial transfer.

Since the Bankruptcy Court issued its opinion denying Banque Syz's motion to dismiss, it has issued a series of opinions denying, in nearly verbatim language, motions to dismiss by other subsequent transferee defendants.[5] The Bankruptcy Court will

---

[4] *Banque Syz* was one of the proceedings to which *Cohmad*'s ruling expressly applied. *See* Order, Ex. A, *Cohmad*, No. 12-MC-115, ECF 4 (S.D.N.Y. Apr. 13, 2012) (listing proceedings involved in *Cohmad*).

[5] *See Picard v. Banque Syz & Co., SA (In re Madoff)*, 2022 WL 2135019, at *8-10 (Bankr. S.D.N.Y. June 14, 2022); *Picard v. Banque Lombard Odier & Cie SA (In re Madoff)*, 2022 WL 2387523, at *8-10 (Bankr. S.D.N.Y. June 30, 2022); *Picard v. Lloyds TSB Bank PLC (In re Madoff)*, 2022 WL 2390551, at *4-6

presumably continue issuing all-but-identical opinions denying other defendants'

motions on the same grounds as they are submitted through January 2023 and beyond.

As a result, as further detailed below, the issue raised in this motion for leave to appeal

broadly impacts scores of defendants targeted in the Trustee's litigation against foreign

investors in BLMIS foreign feeder funds.

## QUESTION PRESENTED

Did the Bankruptcy Court err in interpreting this Court's opinion in *Cohmad* to

bar a subsequent transferee from asserting a section 546(e) defense if the initial

transferee is alleged to have had actual knowledge of BLMIS's fraud, even though the

subsequent transferee is *not* alleged to have had such knowledge?[6]

## RELIEF SOUGHT

Banque Syz requests that this Court grant leave to appeal to permit Banque Syz

to seek reversal of the Bankruptcy Court's Order and dismissal of this proceeding.

---

(Bankr. S.D.N.Y. June 30, 2022); *Picard v. Bordier & Cie (In re Madoff)*, 2022 WL 2390556, at *4-6 (Bankr. S.D.N.Y. June 30, 2022); *Picard v. Banque Cantonale Vaudoise (In re Madoff)*, 2022 WL 2761044, at *4-6 (Bankr. S.D.N.Y. July 14, 2022); *Picard v. Barclays Bank (Suisse) S.A. (In re Madoff)*, 2022 WL 2799924, at *7 (Bankr. S.D.N.Y. July 15, 2022); *Picard v. First Gulf Bank (In re Madoff)*, Adv. No. 11-2541 (Bankr. S.D.N.Y. July 18, 2022), ECF 100 at 16-21.

[6] Another alleged foreign subsequent transferee defendant, Banque Lombard Odier & Cie SA ("**Lombard Odier**"), is simultaneously moving for leave to appeal the denial of its motion to dismiss on the ground that the Bankruptcy Court erred in holding that personal jurisdiction over foreign shareholders in foreign feeder funds can be based solely on the shareholders' knowledge and intent that the feeder funds would invest in U.S. securities using a New York broker-dealer. Banque Syz joins in Lombard Odier's argument that this ruling presents an additional and independent basis for leave to appeal.

7

## **ARGUMENT**

## I. THE BANKRUPTCY'S COURT'S LEGAL ERROR PRESENTS EXCEPTIONAL CIRCUMSTANCES WARRANTING INTERLOCUTORY REVIEW.

Appeals from non-final bankruptcy court orders may be taken with leave by the district court under 28 U.S.C. § 158(a)(3). In deciding whether to grant leave to appeal, reviewing courts apply the standards of 28 U.S.C. § 1292(b), which governs the appealability of interlocutory district court orders. *See In re Ditech Holding Corp.*, 2021 WL 4267691, at *1 (S.D.N.Y. Sept. 20, 2021) (Rakoff, J.); *Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.)*, 2006 WL 2548592, at *3 (S.D.N.Y. Sept. 5, 2006). For a court to grant leave to pursue an interlocutory appeal under Section 1292(b), the order being appealed must "(1) involve a controlling question of law (2) over which there is substantial ground for difference of opinion," and the movant must show that "(3) an immediate appeal would materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see Enron*, 2006 WL 2548592, at *3. Leave to appeal is warranted when the movant demonstrates the existence of "exceptional circumstances" to overcome the "general aversion to piecemeal litigation" and to "justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Enron*, 2006 WL 2548592, at *3.

As shown below, each of the three requirements is met here. And because the impact of the Bankruptcy Court's Section 546(e) holding extends to numerous similar proceedings that would otherwise be dismissed or streamlined, this case presents

8

compelling circumstances for this Court to exercise its discretion to grant interlocutory

review of the Bankruptcy Court's Order.

### A.  The Order Involves a Controlling Question of Law.

"In regard to the first prong, the 'question of law' must refer to a 'pure' question

of law that the reviewing court could decide quickly and cleanly without having to study

the record." *Enron*, 2006 WL 2548592, at *4. The question must also be "controlling"

in the sense that reversal of the bankruptcy court's order would terminate the

proceeding, or at a minimum that determination of the issue on appeal would materially

affect the litigation's outcome. *Id.*

The question presented here—about the proper application of *Cohmad* in the

scenario where the defendant subsequent transferee did not have actual knowledge of

BLMIS's fraud, but the initial transferee did—is a pure question of law, because it turns

solely on the interpretation of this Court's prior opinion in *Cohmad* and on section

546(e). The appeal does not require the Court to study the record or facts of this (or

any other) case, but rather only to apply, and perhaps clarify, the guiding legal principles

stated in its *Cohmad* opinion.

The pure question of law presented here is controlling in this adversary

proceeding because it addresses 98% of the Trustee's claims, leaving only a *de minimis*

claim that could be resolved quickly and easily. The Trustee's Complaint does not allege

that Banque Syz had actual knowledge of BLMIS's fraud, nor did the Trustee do so in

his opposition brief or at oral argument, thus conceding the issue.[7] Instead, the Trustee based his opposition to dismissal under section 546(e) solely on his argument that, under *Cohmad*, the initial transferee's alleged actual knowledge of BLMIS's fraud is dispositive of a subsequent transferee's section 546(e) defense, regardless of whether the subsequent transferee had such knowledge. Thus, reversal of the Bankruptcy Court on *Cohmad*'s application to an innocent subsequent transferee would, without more, entitle Banque Syz to the protection of the section 546(e) safe harbor and require dismissal of virtually all the claims in the Complaint.

### B. Substantial Ground for Difference of Opinion Exists Because the Bankruptcy Court Misread This Court's *Cohmad* Decision.

Under the second prong of the Section 1292(b) standard, "the 'substantial ground for a difference of opinion' must arise out of a genuine doubt as to whether the Bankruptcy Court applied the correct legal standard." *Enron*, 2006 WL 2548592, at *4. The requirement that such a substantial ground exists may be met when "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *Id.* The district court must "analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is *substantial* ground for dispute." *Id.*

---

[7] *See Shinn v. Ramirez*, 142 S. Ct. 1718, 1730 (2022); *McMillan v. City of New York*, 2011 WL 5237285, at *9 (S.D.N.Y. Aug. 23, 2011) (Rakoff, J.) ("By failing to submit any argument on this point, plaintiff has conceded the issue."), *vacated on other grounds*, 711 F.3d 120 (2d Cir. 2013).

Here, there are strong arguments in opposition to the Bankruptcy Court's ruling that raise a genuine doubt whether it correctly applied the *Cohmad* exception. This Court in *Cohmad* did *not* hold that an innocent subsequent transferee is deprived of the protection of the section 546(e) safe harbor defense to avoidance of the initial transfer if the initial transferee had actual knowledge of BLMIS's fraud; nothing in this Court's stated rationale in *Cohmad* even implies that result; and in fact, several statements in the *Cohmad* opinion contradict the Bankruptcy Court's conclusion that a transferee can be deprived of the protection of the statutory safe harbor without the Trustee proving or even alleging that it had actual knowledge of BLMIS's fraud. Far from supporting the Bankruptcy Court's conclusion that the actual knowledge of the initial transferee strips the safe harbor's protection from a subsequent transferee who does not have actual knowledge, *Cohmad* stands for the proposition that a transferee's ability to invoke the safe harbor depends on whether *that transferee*—the defendant from which the Trustee seeks to recover—had actual knowledge of BLMIS's fraud.

In *Cohmad*, this Court set forth only two scenarios in which the section 546(e) defense could not be asserted by a transferee defendant—whether initial or subsequent:

(1)  When raised by an initial transferee who had actual knowledge that BLMIS was not trading securities; and

(2)  When raised by a subsequent transferee who had actual knowledge that BLMIS was not trading securities, even though the safe harbor protected the initial transfer because the initial transferee had no such knowledge.

*Cohmad*, 2013 WL 1609154, at *1.

11

*Cohmad* does not state (as the Bankruptcy Court apparently believed) that no innocent subsequent transferee may invoke the section 546(e) safe harbor as a defense to the avoidability of the initial transfer if the initial transferee is barred from doing so. Nor does anything in *Cohmad* suggest that this Court intended to bar innocent subsequent transferees from the protection of the safe harbor.

Because this Court's ruling in *Cohmad* was intended to apply to numerous consolidated proceedings then before it, if this Court had intended that an initial transferee's actual knowledge would bar all subsequent transferees without regard to their knowledge, it presumably would have said so. It did not. Instead, this Court held only that "transferees with knowledge of the fraud" would be barred from invoking the section 546(e) defense. *Id.*

Moreover, nothing in this Court's reasoning in *Cohmad* supports the conclusion that all subsequent transferees should be deprived of the safe harbor defense to the avoidability of the initial transfer, regardless of their actual knowledge of BLMIS's fraud or lack thereof, if the initial transferee had such knowledge. In stating the rationale for its holdings, this Court reasoned that section 546(e)'s safe harbor was intended to protect the reasonable expectation in the finality of securities transactions on the part of legitimate investors who believed securities were being traded on their behalf but should not protect defendants who actually knew that BLMIS was conducting a Ponzi scheme and was not trading securities. *Id.* at *3-4. Throughout the *Cohmad* opinion, this Court repeatedly emphasized that whether a particular defendant would be disqualified

12

from prevailing on section 546(e) was to be determined by that defendant's knowledge, whether the defendant was an initial transferee or a subsequent transferee. *See id.* at *3, 4, 7, 10. This Court summarized that repeated directive as follows: "In sum, if the Trustee sufficiently alleges that *the transferee from whom he seeks to recover a fraudulent transfer* knew of Madoff Securities' fraud, *that transferee* cannot claim the protections of Section 546(e)'s safe harbor." *Id.* at *7 (emphasis added).[8] Here, the Trustee does not allege that Banque Syz actually knew of BLMIS's fraud. Thus, contrary to the Bankruptcy Court's ruling, Banque Syz should be able to invoke the protection of safe harbor even if Sentry cannot.

This is not, as the Bankruptcy Court incorrectly stated, an argument that the safe harbor applies to subsequent transfers. *See* Ex. B at 29, 2022 WL 2135019, at *9. Rather, Banque Syz has asserted that the safe harbor applies by its terms to the alleged *initial* transfer from BLMIS to Sentry. And it is entitled to do so even if Sentry (the initial transferee) could not, as it is undisputed that "even if the initial … transferee fails to raise a Section 546(e) defense against the Trustee's avoidance of certain transfers … because [as here] the transferee settled with the Trustee … the subsequent transferee is nonetheless entitled to raise a Section 546(e) defense against recovery of those funds." *Cohmad*, 2013 WL 1609154, at *7 (emphasis added). In this case, since the safe harbor

---

[8] In its opinion denying Banque Syz's motion to dismiss, the Bankruptcy Court altered the above-quoted language from *Cohmad* by inserting the word "[initial]" before "transferee" at the start of the sentence—thus changing this Court's meaning. Ex. B at 17; 2022 WL 2135019 , at *8.

(when asserted by a non-tainted defendant) renders the initial transfer not avoidable, there can be no recovery of any subsequent transfer under 11 U.S.C. § 550(a)(2), and there is no reason under *Cohmad* to prohibit Banque Syz from invoking the safe harbor where Banque Syz is not alleged to have had actual knowledge that BLMIS was not trading securities.

In fact, *Cohmad* contradicts the Bankruptcy Court's view that an innocent subsequent transferee should be barred from the protections of section 546(e) if the initial transferee had actual knowledge of BLMIS's fraud. *First*, this Court stated that "[i]n the context of Madoff Securities' fraud, th[e] goal [of section 546(e)] is best achieved by protecting the reasonable expectations of investors who believed they were signing a securities contract." *Id.* at *4. By contrast, the Bankruptcy Court's ruling does not protect the reasonable expectations of a subset of innocent investors—subsequent transferees who entered into a securities contracts with feeder funds that (unbeknownst to them) knew that BLMIS was not trading securities—even though innocent investors that directly entered into securities contracts with BLMIS would receive safe harbor protection under *Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411, 417-23 (2d Cir. 2014). The *Cohmad* decision provides no support for treating innocent investors further removed from BLMIS worse than direct innocent investors.

*Second*, this Court held that "the Trustee must show, at a minimum, that the transferee had actual knowledge that there were no actual securities transactions being

14

conducted," making no distinction between initial transferees and subsequent transferees. *Cohmad*, 2013 WL 1609154, at *4. "[I]f the [Trustee's] allegations adequately allege that *a defendant had actual knowledge* of BLMIS's scheme, *such a transferee* stands in a different posture from an innocent transferee, even as concerns the application of Section 546(e)." *Id.* But the Bankruptcy Court's ruling dispenses with that requirement in the case of subsequent transferees, holding that they can be stripped of section 546(e)'s protections simply by showing that a *different* transferee knew no securities were being traded.

In sum, *Cohmad* neither holds, states, nor implies that subsequent transferees should be barred from invoking the protection of section 546(e) based on the actual knowledge of the initial transferee, rather than their own actual knowledge. Indeed, *Cohmad* expressly says the opposite: that the actual knowledge of the particular transferee—initial or subsequent—controls. For these and other reasons Banque Syz would detail in its merits brief if leave to appeal is granted, the Bankruptcy Court erred in its interpretation of *Cohmad*.

The issue presented here—whether the actual knowledge of an initial transferee disqualifies an innocent subsequent transferee from protection under section 546(e)—is one of first impression, both in the Second Circuit and Southern District of New York. No circuit panel or district court judge has expressly addressed or ruled on this issue. And indeed, before the Bankruptcy Court's opinion on which the Order is based, neither had any bankruptcy judge.

15

### C. An Immediate Appeal Will Advance the Ultimate Termination of This Litigation.

Under the third prong of the Section 1292(b) standard, "[a]n immediate appeal is considered to advance the ultimate termination of the litigation if that appeal promises to advance the time for trial or shorten the time required for trial." *Enron*, 2006 WL 2548592, at *4. Courts place particular emphasis on this last factor. *Id.* Here, if this Court permits an immediate appeal and the Bankruptcy Court's Order is reversed, the Trustee's Complaint against Banque Syz would resolve all but a *de minimis* surviving claim against Banque Syz, thereby reducing significantly (and most likely eliminating) the need for discovery and trial.

### D. Exceptional Circumstances Also Exist Because Correction of the Bankruptcy Court's Error Would Result in the Termination or Narrowing of 58 Subsequent Transferee Proceedings.

In deciding motions for leave to appeal, courts in this District have also considered whether an appeal of the legal question presented "would provide important guidance for similarly situated parties." *MF Global Holdings Ltd. v. Allied World Assurance Co. (In re MF Global Holdings Ltd.)*, 296 F. Supp. 3d 662, 665 (S.D.N.Y. 2017) (Rakoff, J.). That factor points to additional exceptional circumstances that further warrant immediate appeal here.

As shown in Exhibit C hereto, there are currently pending 17 subsequent transferee proceedings by the Trustee against Sentry investors in which all the alleged initial transfers were made more than two years before the BLMIS petition date and

thus outside the scope of section 546(e)'s express exception for claims under section

548(a)(1)(A). All the initial transfers from BLMIS in these proceedings are covered by

section 546(e) under this Court's rulings in *Picard v. Katz*, 462 B.R. 447, 451-53 (S.D.N.Y.

2011) (Rakoff, J.), and *SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 476 B.R.

717, 718-19, 722 (S.D.N.Y. 2012) (Rakoff, J.) ("*Grieff*"), *aff'd sub nom. Picard v. Ida Fishman

Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411 (2d Cir. 2014). The

Trustee does not allege in any of these adversary proceedings that the subsequent

transferees had actual knowledge that BLMIS was conducting a Ponzi scheme and was

not trading securities. Thus, but for the Bankruptcy Court's misinterpretation of *Cohmad*

as barring an innocent subsequent transferee from enjoying the protection of the safe

harbor if the initial transferee had actual knowledge of BLMIS's fraud, all these

proceedings would be dismissed in their entirety.

In addition, another 41 subsequent transferee proceedings are pending against

innocent Sentry investors, where many of the alleged initial transfers—totaling more

than $1.1 billion—occurred outside the two-year look-back period for

section 548(a)(1)(A) claims. Those claims would also be dismissed under the section

546(e) safe harbor but for the Bankruptcy Court's misinterpretation of *Cohmad*. *See*

Ex. C.[9] Thus, many Sentry-based subsequent transferee claims would be immediately

---

[9] Multi-Strategy Fund Ltd., the defendant in one of those proceedings (Adv. Proc. No. 12-01205), is simultaneously moving for leave to appeal the denial of its motion to dismiss on similar grounds to those stated here.

dismissed, without further discovery or trial, if the Bankruptcy Court's purely legal error is corrected on this interlocutory appeal.

If, however, an interlocutory appeal is not granted, those proceedings and claims will generate years of further litigation in the Bankruptcy Court before final judgment. In pending Sentry subsequent transferee proceedings that are past the motion to dismiss stage, the Trustee is currently obtaining scheduling orders that provide for *three years* of discovery proceedings, through April *2025*. *E.g.*, Case Mgmt. Plan ¶¶ 2(b), 3(a), *Picard v. Bureau of Labor Ins. (In re Madoff)*, Adv. No. 11-2732-CGM (Bankr. S.D.N.Y. June 14, 2022) [ECF 122]. The extraordinary expense and wasted time of those further protracted proceedings—on top of the decade or more of litigation expense defendants have already suffered—should not be imposed on innocent subsequent transferees of initial transfers who should be protected by the terms of section 546(e). Innocent investors, who had reasonable expectations in the finality of securities transactions under the safe harbor enacted by Congress, should not have to wait years more for appellate review of the Bankruptcy Court's misinterpretation of this Court's decision in *Cohmad*.

By reversing the Bankruptcy Court's pure legal error on the requested interlocutory appeal, this Court can thus prevent an extraordinary waste of time and money for both the Trustee and the defendants in scores of cases. For this reason, as well as this appeal's satisfaction of the three requirements discussed above, exceptional

18

circumstances exist here and warrant granting an immediate appeal of the Bankruptcy Court's erroneous Order.

## **CONCLUSION**

For the foregoing reasons, Banque Syz should be granted to leave to appeal the Bankruptcy Court's order denying its motion to dismiss the Complaint and, upon such appeal, the order should be reversed and the Complaint dismissed.

Dated: New York, New York
      August 1, 2022

/s/ Richard Levin
JENNER & BLOCK LLP
Richard Levin
Carl Wedoff
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600
rlevin@jenner.com
cwedoff@jenner.com

Vincent E. Lazar
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350
vlazar@jenner.com

*Counsel for Defendant Banque Syz SA*

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the word limit of Fed. R. Bankr. P. 8013(f)(3)(A) because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains 4,786 words, according to the word-count function of the word-processing system used to prepare the document.

2.      This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in 14-point Garamond font.

Dated: August 1, 2022

                                        /s/ Richard Levin
                                        Richard Levin