**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (CGM) <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |
| In re <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, <br><br> Plaintiff, <br><br> v. <br><br> FRANK J. AVELLINO, *et al.*, <br><br> Defendants. | Adv. Pro. No. 10-05421 (CGM) |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO AMEND THIS COURT'S MEMORANDUM DECISION AND**
**OBJECTION TO THE PROPOSED ORDER**

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ....................................................................................1

II. RELEVANT BACKGROUND ......................................................................................2

III. DEFENDANTS CANNOT MEET THE STANDARD FOR
RECONSIDERATION BECAUSE THE COURT DID NOT ERR IN ITS
DECISION .......................................................................................................................3

    A.    The Reconsideration Standard Governing Defendants' Motion is Strict...................3

    B.    It Is Undisputed That This Court Has Equitable Jurisdiction Over the
Entity Defendants and Dianne Bienes Because They Filed Customer
Claims .........................................................................................................................4

    C.    This Court Did Not Err in Its Decision Because It Has the Authority to
Issue Final Orders Against the General Partner Defendants ..................................5

        1.    Under Black-Letter Law, the General Partner Defendants Are
Deemed To Have Filed the Entity Defendants' Customer Claims ..............5

        2.    The General Partner Defendants Invoked This Court's Equitable
Jurisdiction By Signing and Submitting the Entity Defendants' and
Others' Customer Claims...............................................................................7

        3.    The General Partner Defendants Have Consented To This Court's
Equitable Jurisdiction By Actively Litigating Before This Court
For A Decade .................................................................................................9

IV. CONCLUSION................................................................................................................12

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re BLMIS*,
  654 F.3d 229 (2d. Cir. 2011)..................................................................................... 11-12

*In re Care Enterprises, Inc.*,
  114 B.R. 234 (Bankr. C.D. Cal. 1990).............................................................................6

*In re CBI Holding Co. Inc.*,
  529 F.3d 432 (2d Cir. 2008)..........................................................................................5, 8

*Cieszkowska v. Grayline N.Y.*,
  No. 01 Civ. 0128 (LAP), 2001 WL 1512620 (S.D.N.Y. Nov. 28, 2001).................................4

*Granfinanciera S.A. v. Nordberg*,
  492 U.S. 33 (1989).............................................................................................................5

*Kelly v. State, Dept. of Ins.*,
  597 So.2d 900 (Fla. Dist. Ct. App. 1992) .........................................................................5

*In re Kirwan Offices S.A.R.L.*,
  792 F. App'x 99 (2d Cir. 2019) .........................................................................................9

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*,
  729 F.3d 99 (2d Cir. 2013).................................................................................................4

*Langenkamp v. Culp*,
  498 U.S. 42 (1990).............................................................................................................5

*MCI WorldCom Commc'ns., Inc. v. Commc'ns. Network Int'l, Ltd. (In re
  WorldCom, Inc.)*, 378 B.R. 745 (Bankr. S.D.N.Y. 2007)........................................... 4-5

*Mikulec v. Town of Cheektowaga*,
  302 F.R.D. 25 (W.D.N.Y. 2014)........................................................................................4

*Picard v. BAM L.P.*,
  608 B.R. 165 (Bankr. S.D.N.Y. 2019)...............................................................................4

*Picard v. BAM, L.P. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  612 B.R. 257 (S.D.N.Y. 2020).................................................................................5, 9, 12

*Picard v. Cohen (In re BLMIS)*,
  Adv. Pro. Nos. 08-01789 (SMB), 10-04311 (SMB), 2016 WL 1695296
  (Bankr. S.D.N.Y. Apr. 25, 2016) (R.& R.), *adopted by* No. 16 Civ. 5513
  (LTS), slip op. (S.D.N.Y. Feb. 24, 2016) ..........................................................................4

*Picard v. Estate of Madoff*,
    464 B.R. 578 (Bankr. S.D.N.Y. 2011)...................................................................................5

*Picard v. Greiff*,
    617 B.R. 198 (S.D.N.Y. 2020)...............................................................................5, 8, 9, 12

*Rafter v. Liddle*,
    288 F. App'x 768 (2d Cir. 2008) .............................................................................................4

*RGI Brands LLC v. Cognac Brisset-Aurige, S.A.R.L*,
    No. 12 Civ. 01369 (LGS), 2013 WL 5299131 (S.D.N.Y. Sept. 20, 2013)............................ 3-4

*Roell v. Withrow*,
    538 U.S. 580 (2003)................................................................................................................9

*Saenz v. Gomez*,
    899 F.3d 384 (5th Cir. 2018) ................................................................................................12

*Scott v. United States*,
    354 F.2d 292 (Ct. Cl. 1965) ....................................................................................................6

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    499 B.R. 416 (S.D.N.Y. 2013)................................................................................................4

*Wellness Int'l Network, Ltd., v. Sharif*,
    575 U.S. 665 (2015)................................................................................................................9

**Statutes**

28 U.S.C. § 157(c)(2)......................................................................................................................9

Fla. Stat. § 620.8301(1)...................................................................................................................5

**Rules**

Fed. R. Civ. P. 52(b) ................................................................................................................... 3-4

Fed. R. Civ. P. 59(e) ................................................................................................................... 3-4

Local Rule 6.3 ............................................................................................................................. 3-4

iii

Irving H. Picard, as trustee ("Trustee") for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff, respectfully submits this memorandum of law in opposition to Defendants' motion to amend (ECF No. 271) the Court's Memorandum Decision Granting Summary Judgment in Favor of the Trustee (ECF No. 268) (the "Decision") and Defendants' objection to the proposed order (the "Proposed Order") filed by the Trustee (ECF No. 269) (the "Defendants' Motion").[1]

## I. PRELIMINARY STATEMENT

Defendants seek to have this Court amend its finding in the Decision that it had authority to enter a final order against defendants Aster Associates ("Aster"), Grosvenor Partners ("Grosvenor"), Mayfair Ventures ("Mayfair"), and St. James Associates ("St. James," and, collectively, the "Entity Defendants") and certain of their general partners (the "General Partner Defendants" and, together with the Entity Defendants, "Defendants").[2] Defs.' Mot. at 1. Defendants, however, cannot meet the strict standard to amend—the same high bar as a motion for reconsideration—because this Court did not err in the Decision when it concluded Defendants, including the General Partner Defendants, "filed customer claims in this case" and "impliedly consented to a final adjudication." Decision at 3.

While Defendants concede that this Court has jurisdiction over the Entity Defendants because they filed customer claims, Defendants contend the General Partner Defendants never consented to this Court's jurisdiction. Defs.' Mot. at 3. This argument fails for multiple reasons.

---

[1] Unless otherwise specified, all ECF references refer to this adversary proceeding.

[2] The General Partner Defendants include Frank Avellino, Nancy Carroll Avellino, the Estate of Michael Bienes, Dianne Bienes, individually and as the Personal Representative of the Estate of Michael Bienes, Rachel Rosenthal, the Rachel Anne Rosenthal Trust U/A dated June 29, 1990, and the Rachel Anne Rosenthal Trust No. 3.

First, under black-letter partnership law, the General Partner Defendants are bound by the acts of the Entity Defendants and their co-partners. Thus, the General Partner Defendants are deemed to have submitted the Entity Defendants' customer claims—the very act Defendants *admit* in their Motion invokes the equitable jurisdiction of this Court. Defs.' Mot. at 3 ("Defendants agree that those defendants that filed customer claims subjected themselves to the Court's jurisdiction.").

Second, each of the General Partner Defendants further invoked the equitable jurisdiction of this Court by signing and submitting at least one customer claim on behalf of the Entity Defendants or related to partnership interests in Entity Defendant Aster. Through these actions, the General Partner Defendants have made their partnership interests in the Entity Defendants (and the resulting benefits and liabilities that flow therefrom) part of the claims resolution process, thereby invoking the equitable jurisdiction of this Court.

Third, the General Partner Defendants have impliedly consented to this Court's equitable jurisdiction by actively litigating this case before this Court for the last decade.

Accordingly, there is no basis to amend the Decision, and Defendants' Motion should be denied.

## II.    RELEVANT BACKGROUND

On February 3, 2022, the Trustee sought partial summary judgment under counts one and thirteen of his complaint (the "Trustee's SJ Motion") to avoid and recover $17.2 million in fictitious profits transferred to the Entity Defendants between December 11, 2006 and December 11, 2008 (the "Two Year Transfers"), plus prejudgment interest, and to hold the General Partner Defendants liable for the debts of the Entity Defendants. ECF No. 237 at 38. After the Trustee's SJ Motion was fully briefed, this Court heard oral argument on June 15, 2022. ECF No. 263.

2

On July 15, 2022, this Court issued its Decision granting the Trustee's SJ Motion, finding, *inter alia*, that the Two Year Transfers "were, in fact, transfers of BLMIS' customer property," and that the Entity Defendants and General Partner Defendants "are liable for those monies," plus prejudgment interest.  Decision at 2, 15.

This Court also found that it has "authority to enter a final order because the Defendants filed customer claims in this case" and "impliedly consented to a final adjudication." *Id.* at 3.  This Court further explained that to the extent it does not have such authority, it "asks the District Court to construe this decision as proposed findings of fact and conclusions of law, pursuant to the Amended Standing Order of Reference dated January 31, 2012." *Id.*

As part of its Decision, this Court directed the Trustee to submit a proposed order.  *Id.* at 17.  On July 26, 2022, the Trustee submitted the Proposed Order, the contents of which were consistent with this Court's Decision. ECF No. 269.  One day later, Defendants filed their Motion asking this Court to amend its Decision and objecting to the Trustee's Proposed Order on the single basis that this Court erred in finding it had jurisdiction to enter a final order as to the General Partner Defendants.  Defs.' Mot. at 3.

This Court noticed a hearing for August 10, 2022, to consider Defendants' Motion.  ECF No. 272.

### III. DEFENDANTS CANNOT MEET THE STANDARD FOR RECONSIDERATION BECAUSE THE COURT DID NOT ERR IN ITS DECISION

#### A. The Reconsideration Standard Governing Defendants' Motion is Strict

Defendants' Motion to amend the Decision under Rule 52(b) of the Federal Rules of Civil Procedure ("Rule 52(b)") is governed by the same standard as motions for reconsideration under Local Rule 6.3. *RGI Brands LLC v. Cognac Brisset-Aurige, S.A.R.L*, No. 12 Civ. 01369 (LGS), 2013 WL 5299131, at *1 (S.D.N.Y. Sept. 20, 2013) (finding standards governing motions under

3

Rule 52(b), Fed. R. Civ. P. 59(e) and Local Rule 6.3 are all the same). The standard for granting reconsideration is strict, and reconsideration will generally be denied unless a defendant identifies "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks omitted).[3] Defendants' Motion fails to meet this strict standard.

### B.  It Is Undisputed That This Court Has Equitable Jurisdiction Over the Entity Defendants and Dianne Bienes Because They Filed Customer Claims

Defendants do not dispute that the Entity Defendants (and General Partner Defendant Dianne Bienes) "subjected themselves to the [Bankruptcy] Court's jurisdiction" because they filed customer claims. Defs.' Mot. at 3. As this Court has found, the "calculation of net equity for purposes of determining entitlement to a net equity claim against the BLMIS customer property estate and the calculation of a [defendant's] fraudulent transfer exposure are identical." *Picard v. BAM L.P.*, 608 B.R. 165, 179 (Bankr. S.D.N.Y. 2019) (citing *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 499 B.R. 416, 430 (S.D.N.Y. 2013)); *see also Picard v. Cohen (In re BLMIS)*, Adv. Pro. Nos. 08-01789 (SMB), 10-04311 (SMB), 2016 WL 1695296, at *14 (Bankr. S.D.N.Y. Apr. 25, 2016) (R.& R.), *adopted by* No. 16 Civ. 5513 (LTS), slip op. (S.D.N.Y. Feb. 24, 2016)). The Trustee's claims for avoidance and recovery of fraudulent transfers are "inextricably intertwined with a statutory public right [that is] the bankruptcy regulatory scheme

---

[3] "These criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court," *Mikulec v. Town of Cheektowaga*, 302 F.R.D. 25, 28 (W.D.N.Y. 2014) (internal quotation marks omitted), because a motion for reconsideration is not a vehicle for "taking a second bite at the apple." *Rafter v. Liddle*, 288 F. App'x 768, 769 (2d Cir. 2008) (internal quotation marks and citation omitted). A motion for reconsideration "should not relitigate issues already resolved by the court and should not be used to put forward additional arguments which the movant could have made but neglected to make before judgment." *Cieszkowska v. Grayline N.Y.*, No. 01 Civ. 0128 (LAP), 2001 WL 1512620, at *1 (S.D.N.Y. Nov. 28, 2001) (internal quotation marks and citations omitted).

4

of allowing or reordering claims." *MCI WorldCom Commc'ns., Inc. v. Commc'ns. Network Int'l, Ltd. (In re WorldCom, Inc.)*, 378 B.R. 745, 752 (Bankr. S.D.N.Y. 2007).

By filing customer claims, the Entity Defendants "trigger[ed] the process of 'allowance and disallowance of claims thereby subjecting [themselves] to the bankruptcy court's equitable power.'" *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) (citing *Granfinanciera S.A. v. Nordberg*, 492 U.S. 33, 58–59 n.14 (1989))); *see also BAM, L.P.*, 612 B.R. at 260; *Picard v. Greiff*, 617 B.R. 198, 204 (S.D.N.Y. 2020) (citing *In re CBI Holding Co. Inc.*, 529 F.3d 432, 466 (2d Cir. 2008)).

Because the Entity Defendants "invoked the aid of the bankruptcy court by offering a proof of claim and demanding its allowance[, they] must abide by the consequences of that procedure," and there is "no basis for [them] to insist that the issue be resolved in an Article III Court." *Picard v. Estate of Madoff*, 464 B.R. 578, 586 (Bankr. S.D.N.Y. 2011).

### C. This Court Did Not Err in Its Decision Because It Has the Authority to Issue Final Orders Against the General Partner Defendants

#### 1. Under Black-Letter Law, the General Partner Defendants Are Deemed To Have Filed the Entity Defendants' Customer Claims

The General Partner Defendants, as general partners of the Entity Defendants, are deemed to have filed the Entity Defendants' customer claims. Under black letter Florida partnership law, the General Partner Defendants are bound by the acts of their Entity Defendant partnerships and co-partners. Fl. St. §620.8301(1) ("Each partner is an agent of the partnership for the purpose of its business. An act of a partner, including the execution of an instrument in the partnership name, for apparently carrying on in the ordinary course of partnership business. . . binds the partnership. . . ."). [4]

---

[4] "It is well-established that partners, acting within their authority and in pursuit of partnership business, bind all other partners and act as their agents." *Kelly v. State, Dept. of Ins.*, 597 So.2d 900, 902 (Fla. Dist. Ct. App. 1992) (finding Florida court had personal jurisdiction over non-resident partners because they were deemed to have been conducting

5

Moreover, "[u]nlike corporations, partnerships are not consistently treated as units, but just as often (or more so) as an aggregation or combination of individuals." *Scott v. United States*, 354 F.2d 292, 299 (U.S. Ct. Cl. 1965). The choice of how to deal with partnerships in various contexts is based on substance, with the ultimate aim of fairness and convenience. *Id*. For example, in *In re Care Enterprises, Inc.*, 114 B.R. 234 (Bankr. C.D. Cal. 1990), general partners of certain partnerships that filed claims against the debtor's estate moved to withdraw the reference on the basis that they did not file claims, but the court found that a partnership is an aggregate of its partners, and thus, the claims filed by the partnerships were deemed to have been filed by their general partners as well. The court considered this an equitable result because—like here—the general partners would personally benefit from the claims filed by their partnerships, the general partners bore personal liability for the partnerships' obligations, and the purpose in naming these general partners was to establish such personal liability and facilitate the collection of any judgment secured against the partnership. *Id.* at 238-39.

Accordingly, the General Partner Defendants are deemed to have filed the Entity Defendants' customer claims, thereby subjecting them to this Court's equitable jurisdiction. As the court found in *In re Care*, "fairness dictates that if the general partners are in a position to acquire substantial benefits from the asserted partnership claims, they should be prepared to accept the burdens of being general partners, including becoming parties to proceedings wherein the partnerships' claims and the claims against these partnerships will be determined in one lawsuit." *Id.* at 239.

---

business in Florida through their resident co-partners, and were personally liable for any resulting partnership obligations).

6

### 2. The General Partner Defendants Invoked This Court's Equitable Jurisdiction By Signing and Submitting the Entity Defendants' and Others' Customer Claims

Each General Partner Defendant also subjected themself to this Court's equitable jurisdiction by signing and submitting at least one customer claim on behalf of the Entity Defendants or related to partnership interests in Entity Defendant Aster.[5]

Specifically, General Partner Defendant Frank Avellino submitted customer claims Nos. 12830 and 12841 for Entity Defendants Aster and Mayfair, respectively, seeking the balance listed on the last statement of their BLMIS accounts and signing them: "Frank Avellino, Gen Ptr." Zunno Decl. Ex. 1, 12; Ex. B, Claims Chart. Avellino also submitted customer claim No. 12842 for Entity Defendant Grosvenor, seeking the balance listed on the last statement of its BLMIS account and signing it: "Frank Avellino." Zunno Decl. Ex. 11; Ex. B, Claims Chart.[6]

General Partner Defendants Michael and Dianne Bienes submitted customer claim No. 3865 for Entity Defendant St. James seeking the balance listed on the last statement of St. James' BLMIS account and signed it: "Michael Bienes" and "Dianne Bienes." Zunno Decl. Ex. 13, Ex. B, Claims Chart.[7]

General Partner Defendant Rachel Rosenthal signed and submitted a customer claim in connection with Entity Defendant Aster that demanded a specific dollar amount correlated to her purported partnership interest in Aster. Zunno Decl. Ex. 7; Ex. B, Claims Chart. Specifically, Rachel Rosenthal stated on her claim: "Customer of [BLMIS] via Aster Associates" and

---

[5] Defendants' actual customer claims are attached to Exhibit A, the Declaration of Kathryn Zunno, dated August 3, 2022 (the "Zunno Decl."), as Exhibits 1-17, and a chart summarizing the same is attached as Exhibit B (the "Claims Chart").

[6] Avellino also filed claims for certain partners of Aster (not at issue in the Motion) in connection with Aster's BLMIS account, seeking the amount of those partners' purported partnership interests in Aster and signing "Frank J. Avelino, TRUSTEE." Zunno Decl. Exs. 3, 8; see also Ex. B, Claims Chart.

[7] As Defendants admit, General Partner Defendant Dianne Bienes also signed and submitted a customer claim for her personal BLMIS account in the name of Dianne K. Bienes. Defs.' Mot. at 3; see also Zunno Decl. Ex. 17.

7

"Partnership security position in Aster Associates valued at $317,874." Zunno Decl. Ex. 7; *see also* Ex. B, Claims Chart.

General Partner Defendant Nancy Avellino submitted five customer claims for certain partners of Entity Defendant Aster (including General Partner Defendants the Rachel Anne Rosenthal Trust U/A dated June 29, 1990 and the Rachel Rosenthal Trust No. 3) demanding specific dollar amounts correlated to those partners' purported partnership interests in Aster, and signing those claims: "Nancy Carroll Avellino TRUSTEE." Zunno Decl. Exs. 2, 4-6, 10; *see also* Ex. B, Claims Chart. The customer claims Nancy Avellino submitted for General Partner Defendants Rachel Anne Rosenthal Trust U/A dated June 29, 1990 and Rachel Rosenthal Trust No. 3 in connection with Entity Defendant Aster stated "Customer of [BLMIS] via Aster Associates" and sought the amount of their purported "Partnership security position in Aster Associates" that was "valued at" "$700,376" and "$1,973,655," respectively. Zunno Decl. Exs. 5, 6; *see also* Ex. B, Claims Chart.

Without question, the General Partner Defendants inserted themselves into the claims determination process by signing and submitting customer claims, giving the Bankruptcy Court final adjudicative authority over the General Partner Defendants. "[B]y filing [these] Customer Claim[s] against the BLMIS estate . . . Defendant[s] triggered the claims allowance process and subjected [themselves] to the bankruptcy court's equitable power." *Picard v. Greiff*, 617 B.R. 198, 204 (S.D.N.Y. 2020) (citing *In re CBI Holding Co. Inc.*, 529 F.3d 432, 466 (2d Cir. 2008)).

That the General Partner Defendants signed and submitted customer claims in their capacities as general partners of the Entity Defendants (or as a trustee of an Entity Defendant's partner) further supports that their actions have made their partnership interests, their status as general partners, and to whom the estate owes money if and when such customer claims are

8

allowed, part of the claims determination process. Thus, this Court has jurisdiction to issue a final order as to the Trustee's claim seeking to hold the General Partner Defendants liable for debts of the Entity Defendants (Count XIII).

### 3. The General Partner Defendants Have Consented To This Court's Equitable Jurisdiction By Actively Litigating Before This Court For A Decade

The General Partner Defendants have also impliedly consented to the Bankruptcy Court's final adjudicative authority by actively litigating this case in this Court for the last decade.

In *Wellness*, the Supreme Court held that bankruptcy courts may finally adjudicate claims as a statutory matter when the parties knowingly and voluntarily consent to adjudication by a bankruptcy judge. *Wellness Int'l Network, Ltd. v. Sharif,* 575 U.S. 665, 679 (2015) ("*Wellness*") (allowing bankruptcy courts to decide *Stern* claims by consent "does not usurp the constitutional prerogatives of Article III courts"); *see also Greiff*, 617 B.R. at 203; *BAM, L.P.*, 612 B.R. 257, 266 n.10 (S.D.N.Y. 2020). Consent need not be express, and implied consent by "actions rather than words," is sufficient under the Constitution and 28 U.S.C. § 157(c)(2), provided that it is knowing and voluntary. *Wellness*, 575 U.S. at 685 (citing *Roell v. Withrow*, 538 U.S. 580, 589 (2003)); *see also In re Kirwan Offices S.A.R.L.*, 792 F. App'x 99, 103 (2d Cir. 2019); *Greiff*, 617 B.R. at 203. As the Supreme Court made clear, in the bankruptcy context, this standard of implied consent possesses "pragmatic virtues," such as "increasing judicial efficiency" and "checking gamesmanship." *Wellness*, 575 U.S. at 684-85; *see also Greiff*, 617 B.R. at 203; *BAM, L.P.*, 612 B.R. at 266 n.10. The holding of *Wellness* has since been applied by the District Court in rulings within the BLMIS liquidation proceeding. *See, e.g.*, *BAM, L.P.*, 612 B.R. at 266 n.10; *Greiff*, 617 B.R. at 203.

Contrary to Defendants' argument that the General Partner Defendants did not consent to this Court's equitable jurisdiction, they have not only consented through the customer claims

9

process (as set forth above), but also by knowingly availing themselves of this Court's adjudicative authority for over a decade.

Specifically, in response to the Trustee's complaint against the General Partner Defendants, the Entity Defendants, and others (collectively, the "A&B Defendants"), dated December 10, 2010, (ECF Nos. 1-2), the A&B Defendants filed a motion to dismiss on June 6, 2011. *See* ECF Nos. 23-26; 33-34. Thereafter, the A&B Defendants moved to withdraw the reference to the District Court, and in March 2012, the District Court withdrew the reference in this case and hundreds of others with respect to a number of legal issues. ECF Nos. 28-30, 33-34, 54. After the District Court issued several decisions with respect to certain legal issues, it entered an Order on August 1, 2014, returning this action to this Court. Order, *In re Madoff Securities*, No. 1:11-cv-03882-JSR, (S.D.N.Y. 2014), ECF No. 26.

Shortly thereafter, on September 24, 2014, the A&B Defendants filed a Supplemental Memorandum of Law in further support of their original motion to dismiss. ECF. Nos. 82-85. After the Trustee filed an amended complaint on November 24, 2014 (ECF No. 86) (the "Amended Complaint"), the A&B Defendants filed a motion to dismiss the Amended Complaint on January 28, 2015 (ECF Nos. 88-90). On July 21, 2016, this Court granted, in part, the affirmative relief sought by the A&B Defendants in their motion to dismiss, holding that the Trustee did not have standing to recover fraudulent transfers made by BLMIS to any A&B Defendant prior to January 2001. ECF Nos. 116-17.

The A&B Defendants continued to litigate in this Court by filing answers to the Amended Complaint on November 2, 2016. *See* ECF Nos. 137-144. Significantly, the Entity Defendants' answers included counterclaims against the Trustee which alleged, among other things, that the Trustee violated SIPA by failing to credit the claims they filed against the estate with the value of

10

the securities that appeared on the last statements of their BLMIS accounts, and sought the net equity and cash reflected on those last statements.[8]

The parties thereafter engaged in extensive fact and expert discovery. Once again, the A&B Defendants (including the General Partner Defendants) sought affirmative relief from this Court to take the deposition of Bernard L. Madoff – relief they asked for twice – to elicit testimony concerning the A&B Defendants. *See* ECF No. 191; *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (CGM), ECF No. 13814. On September 5, 2019, this Court entered an Order authorizing the A&B Defendants to take Madoff's deposition with respect to "all facts raised by the Amended Complaint and/or related pleadings," and the A&B Defendants took Madoff's deposition on November 13, 2019. ECF No. 192.

Finally, in opposition to the Trustee's SJ Motion, Defendants—including the General Partner Defendants—actively litigated the argument intertwined with both the Entity Defendants' customer claims and counterclaims that the Trustee improperly failed to credit the Entity Defendants with the value of the securities on their last customer statements. ECF No. 247 at 28. But this Court in the Decision rejected this argument. Instead, this Court found that: (i) Defendants were customers of BLMIS's Investment Advisory business; (ii) the Trustee's proffered expert, Bruce Dubinsky, examined BLMIS's books and records and determined that Defendants trades were fake like all other customers; (iii) Defendants' proffered expert's assertion that all securities transactions on their customer statements were real was "not credible;" and (iv) his "conclusion that BLMIS trade confirmations evince [sic] 'real' securities transactions undermines the Second Circuit's determination of net equity," which held that customers' "net equity should be based on the net investment method" that "credits 'the amount of cash deposited by the customer into his or

---

[8] ECF No. 140, Counterclaims at ¶¶ 8, 12-18; ECF No. 143 Counterclaims at ¶¶ 8, 12-18.

11

her BLMIS account, less any amounts withdrawn from it.'" Decision at 13-14 (quoting *In re BLMIS*, 654 F.3d 229, 233 (2d. Cir. 2011) ("*Net Equity Decision*")). The Decision, therefore, specifically dealt with issues related not only to the Entity Defendants' customer claims, but also their counterclaims—a direct result of Defendants' active participation in the summary judgment process before this Court.

Through these actions over the last decade, the General Partner Defendants impliedly consented to the Bankruptcy Court's final adjudicative authority. *See, e.g.*, *Greiff*, 617 B.R. at 207; *BAM, L.P.*, 612 B.R. at 266 n.10 ("That Defendants pursued their claims in Bankruptcy Court for nearly a decade further evidences their consent to the Bankruptcy Court's authority."); *Saenz v. Gomez*, 899 F.3d 384, 390–91 (5th Cir. 2018) (finding no clear error in the conclusion that all parties gave implied consent to the bankruptcy court's jurisdiction to issue a final judgment, including where appellants voluntarily participated in court proceedings, including seeking affirmative relief by filing motions to dismiss).

Accordingly, this Court should not amend the Decision because it correctly concluded that the Defendants, including the General Partner Defendants, "filed customer clams in this case" and "have impliedly consented to a final adjudication." Decision at 3. And an amendment is further unnecessary because this Court specifically stated in its Decision that to the extent it does not have the authority to enter a final order, it "asks the District Court to construe this decision as proposed findings of fact and conclusions of law." *Id.*

## IV.     CONCLUSION

For the foregoing reasons, Defendants, including the General Partner Defendants, have consented to this Court's jurisdiction to enter a final order, and the Trustee respectfully requests that this Court deny Defendants' Motion (ECF No. 271) and enter the Proposed Order (ECF No. 269).

Dated: August 3, 2022
     New York, New York

By: */s/ David J. Sheehan*
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Kathryn Zunno-Freaney
Email: kzunno@bakerlaw.com
Esterina Giuliani
Email: egiuliani@bakerlaw.com
Regina Griffin
Email: rgriffin@bakerlaw.com
Stacey A. Bell
Email: sbell@bakerlaw.com
Melissa L. Kosack
Email: mkosack@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*