QUINN EMANUEL URQUHART & SULLIVAN, LLP
Marc L. Greenwald
Eric M. Kay
Daniel M. Kelly
51 Madison Avenue, 22nd Floor,
New York, New York 10010-1601
Tel: (212) 849-7000
Fax: (212) 849-7100

*Attorneys for Defendant Abu Dhabi Investment Authority*

Hearing Date: September 14, 2022
Opposition Date: July 11, 2022
Reply Date: August 10, 2022

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | **ORAL ARGUMENT REQUESTED** |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff,<br><br>Plaintiff,<br><br>v.<br><br>ABU DHABI INVESTMENT AUTHORITY,<br><br>Defendant. | Adv. Pro. No. 11-02493 (CGM)<br><br>**ABU DHABI INVESTMENT AUTHORITY'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT** |

**TABLE OF CONTENTS**

**Page**

ARGUMENT ........................................................................................................................ 1

I. THE THIRD CLAUSE OF THE COMMERCIAL ACTIVITY EXCEPTION
DOES NOT APPLY .................................................................................................. 3

    A. *BLI* Was Wrongly Decided and Cannot Be Reconciled with *OBB Personenverkehr* ........................................................................................... 3

        1. *BLI* Focused on the Wrong Conduct ........................................................ 4

        2. The Trustee's Contrary Arguments Are Unpersuasive ............................ 5

    B. The Complaint Is Not "Based Upon" ADIA's Commercial Activity and
Any Such Activity Did Not Have a "Direct Effect" in the United States .............. 7

II. THE FIRST AND SECOND CLAUSES OF THE COMMERCIAL ACTIVITY
EXCEPTION DO NOT APPLY ............................................................................... 10

CONCLUSION ................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Anglo-Iberia Underwriting Mgmt. v. P.T. Jamsostek*,
  600 F.3d 171 (2d Cir. 2010) ................................................................................... 1, 7

*Aramony v. United Way*,
  254 F.3d 403 (2d Cir. 2001) ........................................................................................ 3

*Barnet v. Ministry of Culture and Sports of The Hellenic Republic*,
  961 F.3d 193 (2d Cir. 2020) ..................................................................................... 4, 6

*Chettri v. Nepal Rastra Bank*,
  834 F.3d 50 (2d Cir. 2016) ........................................................................................... 8

*City of Pontiac Gen. Employees' Ret. Sys. v. MBIA*,
  637 F.3d 169 (2d Cir. 2011) ......................................................................................... 3

*Consulting Concepts Int'l, Inc. v. Kingdom of Saudi Arabia*,
  2022 WL 2236946 (2d Cir. June 22, 2022) ............................................................. 5, 10

*Daou v. BLC Bank, S.A.L.*,
  __ F.4th __, 2022 WL 2976322 (2d Cir. 2022) ................................................... *passim*

*Daou v. BLC Bank, S.A.L.*,
  2021 WL 1338772 (S.D.N.Y. Apr. 9, 2021) ................................................................. 4

*Global Marine Exploration, Inc. v. Republic of France*,
  33 F.4th 1312 (11th Cir. 2022) ..................................................................................... 6

*Guirlando v. T.C. Ziraat Bankasi A.S.*,
  602 F.3d 69 (2d Cir. 2010) ........................................................................................ 2, 9

*MMA Consultants 1, Inc. v. Republic of Peru*,
  719 F. App'x 47 (2d Cir. 2017) ................................................................................. 4, 6

*OBB Personenverkehr AG v. Sachs*,
  577 U.S. 27 (2015) .............................................................................................. *passim*

*Pescatore v. Pan Am. World Airways*,
  97 F.3d 1 (2d Cir. 1996) ............................................................................................ 2, 3

*Picard v. Banque Syz & Co., SA*,
  2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ................................................... 1

*Picard v. Bureau of Labor Ins.*,
  480 B.R. 501 (Bankr. S.D.N.Y. 2012) ................................................................ *passim*

*Picard v. Multi-Strategy Fund Ltd.*,
  __ B.R. __, 2022 WL 2137073 (Bankr. S.D.N.Y. 2022) ...................................................... 1

*In re Picard*,
  917 F.3d 85 (2d Cir. 2019) ............................................................................................... 11

*Rodriguez v. Pan Am. Health Org.*,
  29 F.4th 706 (D.C. Cir. 2022) ......................................................................................... 6, 7

*Saudi Arabia v. Nelson*,
  507 U.S. 349 (1993) ........................................................................................................ 6, 7

*Virtual Countries, Inc. v. Republic of S. Africa*,
  300 F.3d 230 (2d Cir. 2002) ............................................................................................ 7, 9

### Statutory Authorities

28 U.S.C. § 1603(e) .............................................................................................................. 10

28 U.S.C. § 1605(a)(2) .................................................................................................. *passim*

### Rules and Regulations

Supreme Court Rule 10 ......................................................................................................... 7

Defendant Abu Dhabi Investment Authority ("ADIA"),[1] respectfully submits this reply memorandum of law in further support of its motion to dismiss the Complaint.

## ARGUMENT[2]

As the Trustee concedes in his opposition, ADIA is a foreign state under the FSIA and is therefore presumptively immune from suit. *See* Opp. (Dkt. 114) at 7 ("[T]he Trustee does not dispute that [ADIA] is a "foreign state" under the FSIA."). Accordingly, it is the Trustee's burden "to show that a FSIA-enumerated exception to sovereign immunity applies." *Anglo-Iberia Underwriting Mgmt. v. P.T. Jamsostek*, 600 F.3d 171, 175 (2d Cir. 2010). The Trustee has failed to do so.

The Trustee's argument in support of the third clause of the commercial activity exception[3] relies almost entirely on Judge Lifland's decision in *Picard v. Bureau of Labor Ins.*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012) ("*BLI*"). But *BLI* cannot be reconciled with the Supreme Court's later decision in *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27 (2015) nor with the Second Circuit's recent decision in *Daou v. BLC Bank, S.A.L.*, __ F.4th __, 2022 WL 2976322 (2d Cir. 2022), which expressly relied upon the Supreme Court's analysis of the third prong of

---

[1] Capitalized terms and abbreviations used herein have the meanings assigned to them in ADIA's Memorandum of Law in Support of its Motion to Dismiss the Complaint (Dkt. 112).

[2] While ADIA maintains that the Trustee's complaint must be dismissed for each of the reasons set forth in its opening brief, it recognizes that the Court has rejected materially identical arguments advanced by other subsequent transferee defendants in related adversary proceedings. *See, e.g., Picard v. Multi-Strategy Fund Ltd.*, __ B.R. __, 2022 WL 2137073 (Bankr. S.D.N.Y. 2022); *Picard v. Banque Syz & Co., SA*, 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022). Accordingly, in an effort to conserve the resources of the Court and the parties, ADIA addresses only its immunity from suit under the FSIA in this reply, as it is ADIA's immunity from suit that distinguishes its case from those cases where the Court has already denied motions to dismiss. In so doing, however, ADIA has not abandoned the arguments advanced in its opening brief, which it expressly preserves for appeal. Further, ADIA's decision not to further address this Court's lack of personal jurisdiction over it in this reply brief is not intended as a waiver of its challenge to this Court's jurisdiction nor should it be construed as implied consent to that jurisdiction.

[3] That provision abrogates the sovereign immunity of a foreign state in actions "[based] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2).

the commercial activity exception in *OBB Personenverkehr*. The Trustee's attempts to argue otherwise rest on a mischaracterization of both *BLI* and *OBB Personenverkehr*. Accordingly, *BLI* does not govern this case, and this Court should decline to follow it. *See, e.g., Pescatore v. Pan Am. World Airways*, 97 F.3d 1, 5 (2d Cir. 1996) (law of the case doctrine inapplicable based on intervening Supreme Court decision that called prior holding into question).

Under the Supreme Court's rule of *OBB Personenverkehr*, the Complaint fails because the Trustee's subsequent transfer claim is "based upon" ADIA's passive receipt of the Redemption Payments—which is not activity *at all*, commercial or otherwise. Moreover, the Trustee's own evidence establishes that the 2005 Redemption Payment was made pursuant to a written request from ADIA to a *Dutch* entity (Citco) that served as the administrator of a *BVI* entity (Sentry).[4] *See* Murphy Decl. (Dkt. 115) Ex. 33. ADIA had no control over how Sentry funded that Redemption Payment. Accordingly, to the extent that Sentry funded that Redemption Payment with BLMIS customer property (which ADIA disputes), that did not "follow[] as an immediate consequence of [ADIA's] activity," as is necessary to sustain jurisdiction under the FSIA. *Guirlando v. T.C. Ziraat Bankasi A.S.*, 602 F.3d 69, 74 (2d Cir. 2010) (citation and internal quotation marks omitted). Here, as in *Daou*, as the Second Circuit recently explained, "the immediacy of the putative commercial activity's effect in the United States is fatally undermined by dependence on the conduct of intervening actors." *Daou*, 2022 WL 2976322, at *11.

---

[4] The Trustee has introduced no evidence concerning the circumstances surrounding ADIA's receipt of the 2006 Redemption Payment and has therefore failed to discharge his burden to show that any exception to the FSIA applies to that payment. As set forth in the Declaration of Mohamed Mubarak Rasheed Saeed Al-Hajeri submitted in support of ADIA's motion to dismiss, the 2006 Redemption Payment was also fulfilled pursuant to a request to Citco. *See* Al-Hajeri Decl. (Dkt. 111) ¶ 7.

2

The Trustee's throwaway arguments in support of the first and second clauses[5] of the commercial activity exception, occupying approximately one page of his 40-page brief, fare no better. Both of those arguments rest upon the *BLI*'s flawed analysis concerning the "based upon" requirement by targeting conduct that does not form the core of the Trustee's claims. Indeed, these arguments are not premised on any acts of ADIA *at all* and therefore should be rejected.

Accordingly, no clause of the commercial activity exception permits this Court to exercise jurisdiction over ADIA. Because this Court lacks subject-matter jurisdiction, it must dismiss this case.

I. **THE THIRD CLAUSE OF THE COMMERCIAL ACTIVITY EXCEPTION DOES NOT APPLY**

   A. ***BLI* Was Wrongly Decided and Cannot Be Reconciled with *OBB Personenverkehr***

The core of the Trustee's argument that the third clause of the commercial activity exception applies is that this Court's prior decision in *BLI* is controlling. *See, e.g.*, Opp. at 7-12. However, the law of the case doctrine, upon which the Trustee's argument implicitly relies, is "discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment." *Aramony v. United Way*, 254 F.3d 403, 410 (2d Cir. 2001) (citation and internal quotation marks omitted). And it is well established that "the law of the case does not withstand an intervening change of controlling law." *City of Pontiac Gen. Employees' Ret. Sys. v. MBIA*, 637 F.3d 169, 173 (2d Cir. 2011) (citation and internal quotation marks omitted); *see also Pescatore*, 97 F.3d at 5. *OBB Personenverkehr*, decided three years after *BLI*, constitutes such a change because it directly undermines *BLI*'s analysis.

---

[5] Those clauses provide, respectively, that a United States court may exercise jurisdiction over a foreign state in actions "based upon a commercial activity carried on in the United States by the foreign state" or "[based] upon an act performed in the United States in connection with the commercial activity of the foreign state elsewhere." 28 U.S.C. § 1605(a)(2).

3

1. *BLI* Focused on the Wrong Conduct

The third clause of the commercial activity exception abrogates sovereign immunity in actions "[based] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). In *OBB Personenverkehr*, the Supreme Court explained that, in determining whether an action is "based upon" such conduct, a court must "look[] to the basis or foundation" of the claim by identifying the "particular conduct that constitutes the gravamen of the suit," *i.e.*, "those elements that, if proven, would entitle a plaintiff to relief." 577 U.S. at 33-35 (citation and internal quotation marks omitted). As the Second Circuit explained, the court must "look at the 'core' of Plaintiffs' suit: *the particular acts for which relief is sought*." *Barnet v. Ministry of Culture and Sports of The Hellenic Republic*, 961 F.3d 193, 199 (2d Cir. 2020) (citing *OBB Personenverkehr*) (emphasis added); *see also, e.g.*, *MMA Consultants 1, Inc. v. Republic of Peru*, 719 F. App'x 47, 52 (2d Cir. 2017) (Under *OBB Personenverkehr*, analysis of commercial activity exception requires courts to "zero in on the core of the suit and determine a lawsuit's *foundation*.") (internal quotation marks omitted) (emphasis in original). Further, there must be a "significant nexus between . . . the alleged commercial activity and the core of the plaintiff's complaint that is *considerably greater* than common law causation requirements." *Daou v. BLC Bank, S.A.L.*, 2021 WL 1338772, at *6 (S.D.N.Y. Apr. 9, 2021) (citation omitted) (emphasis added), *aff'd*, 2022 WL 2976322 (2d Cir. July 28, 2022).

That analysis, which the Second Circuit has described as the "threshold step for determining whether [the commercial activity exception] applies," *MMA Consultants*, 719 F. App'x at 52, is entirely absent from *BLI*. There, as here, the Trustee sued an instrumentality of a foreign state to recover alleged subsequent transfers of BLMIS customer property from Sentry. However, *BLI* does not even attempt to discern the gravamen of the Trustee's complaint (or, for

4

that matter, use the words "gravamen," "foundation," or "core"); the decision contains no discussion of the circumstances surrounding the BLI's actual receipt of the subsequent transfers at issue. Instead, the Court held that the third clause applied because the Trustee's suit was "based upon BLI's investment of tens of million dollars in Fairfield Sentry with the specific goal of having funds invested in BLMIS in New York, with the intent to profit therefrom." 480 B.R. at 506; *see also id*. at 515 ("At bottom . . . BLI intended to profit from BLMIS in New York through investments in Fairfield Sentry.").

That analysis is wrong under *OBB Personenverkehr*. The "gravamen" of the Trustee's complaint in *BLI* (and in this proceeding) was not the BLI's investment in BLMIS by way of Sentry nor its intent to profit from those investments; proof of those facts would be neither sufficient nor necessary to "entitle [the Trustee] to relief." 577 U.S. at 33. Instead, the gravamen of the Trustee's suit—the acts upon which it is based—was the BLI's receipt of those transfers as a subsequent transferee. *Consulting Concepts Int'l, Inc. v. Kingdom of Saudi Arabia*, 2022 WL 2236946, at *2 (2d Cir. June 22, 2022) (fact that Saudi Arabian agency entered into contract with New York company, which performed services pursuant to contract in New York, was not relevant to analysis of whether second clause of commercial activity exception applied because "the relevant act here is the contract's breach, not its formation") (citing *OBB Personenverkehr*, 577 U.S. at 35). The same is true of the Trustee's Complaint against ADIA. For purposes of the analysis of the third clause of the commercial activity exception, the relevant act here is ADIA's receipt of funds from Sentry, not its investment in Sentry.

2. The Trustee's Contrary Arguments Are Unpersuasive

The irreconcilability between the holdings of *BLI* and *OBB Personenverkehr* undermines the entirety of Trustee's argument concerning the third clause of the commercial activity exception. Because he cannot argue that jurisdiction exists under *OBB Personenverkehr*, the

5

Trustee instead rehashes *BLI*'s flawed reasoning, insisting that this Court has jurisdiction over this action because ADIA's investments in Sentry constitute "commercial activity." *See, e.g.*, Opp. at 8-9. But the original offshore investments are not material to the analysis; even assuming that those acts are commercial activity, they are irrelevant because, as already discussed, the Trustee's complaint is not "based upon" those investments. *See Global Marine Exploration, Inc. v. Republic of France*, 33 F.4th 1312, 1324 (11th Cir. 2022) ("Although we conclude that France's activities are commercial under the FSIA our inquiry . . . does not end there. Under § 1605(a)(2), we must also determine whether GME's action is "based upon" France's commercial activities.").

The Trustee endeavors to rescue his argument by asserting that *OBB Personenverkehr* "did not implicate or disturb Judge Lifland's *BLI* holding." Opp. at 12. That is nonsensical. The Trustee contends that "*OBB Personenverkehr* did not change or newly interpret the 'based upon' analysis." *Id.* at 13. But that is *precisely* what the Supreme Court did, as cases decided in the wake of *OBB Personenverkehr* make clear. *See, e.g.*, *Barnet*, 961 F.3d at 199 (noting that *OBB Personenverkehr* instructs courts to look "the particular acts for which relief is sought"); *MMA Consultants*, 719 F. App'x at 52; *Rodriguez v. Pan Am. Health Org.*, 29 F.4th 706, 713-15 (D.C. Cir. 2022).

Nor does it matter that *BLI* and *OBB Personenverkehr* both cite *Saudi Arabia v. Nelson*, 507 U.S. 349 (1993). Opp. at 13. Judge Lifland did not cite *Nelson* for the proposition that a court analyzing the commercial activity exception must focus on the gravamen of the plaintiff's complaint.[6] That is not especially surprising; the words "foundation" and "gravamen" each

---

[6] *BLI* cites *Nelson* twice, both for established propositions of law. *See* 480 B.R. at 510 ("Under the FSIA, foreign states are 'presumptively immune from the jurisdiction of United States courts; unless a specified exception applies.'") (quoting *Nelson*, 507 U.S. at 355); *id.* at 512 ("Therefore, 'a state engages in commercial activity . . .

6

appear only once in *Nelson*, in a string cite in dictum. *See* 507 U.S. at 357. Nor did *OBB Personenverkehr* "apply" the rule of *Nelson* to its own facts, as the Trustee claims, Opp. at 13; rather, the Supreme Court "*interpreted* its earlier FSIA holding in *Nelson*" and announced the proper framework for analyzing the applicability of the FSIA's exceptions to a given case. *Rodriguez*, 29 F.4th at 713 (emphasis added); *cf. also* Supreme Court Rule 10 ("A petition for a writ of certiorari is rarely granted when the asserted error consists of . . . the misapplication of a properly stated rule of law."). *BLI* does not even attempt to apply the test that Supreme Court announced in *OBB Personenverkehr*, and this Court should therefore decline to follow *BLI*.

### B. The Complaint Is Not "Based Upon" ADIA's Commercial Activity and Any Such Activity Did Not Have a "Direct Effect" in the United States

The Trustee's failure to advance a plausible rationale for the applicability of the third clause of the commercial activity exception dooms his claims. *See Anglo-Iberia Underwriting Mgmt.*, 600 F.3d at 175 (the plaintiff bears the burden of "show[ing] that a FSIA-enumerated exception to sovereign immunity applies"). This Court's inquiry need go no further.

In any case, the Complaint fails to establish that the third clause of the commercial activity exception, properly analyzed under controlling Supreme Court precedent, applies to abrogate ADIA's immunity from suit. The gravamen of the Complaint, *i.e.* the "legally significant act," *Virtual Countries, Inc. v. Republic of S. Africa*, 300 F.3d 230, 241 (2d Cir. 2002) on which the Complaint is "based," is ADIA's purported receipt of BLMIS customer property by way of the Redemption Payments from Sentry; that is what the Trustee must prove to be entitled to the relief he seeks under Section 550 of the Bankruptcy Code. As discussed in ADIA's

---

where it exercises only those powers that can also be exercised by private citizens as distinct from those powers peculiar to sovereigns.'") (quoting *Nelson*, 507 U.S. at 360).

7

opening brief, however, mere receipt of payment is not activity *at all*, let alone "commercial activity" within the meaning of the FSIA. Nor does the Complaint allege any other legally significant acts by ADIA. Indeed, the only relevant acts alleged in the Complaint are those of Sentry. *See, e.g.*, Compl. ¶ 41 ("[A]pproximately $300,000,000 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant ADIA.").

Moreover, while ADIA acknowledges that the Redemption Payments were made pursuant to its redemption requests, that is not enough to save the Complaint. Assuming that ADIA's transmission of the redemption requests is "commercial activity" sufficiently connected to the gravamen of the Trustee's complaint to bring it within the scope of the Court's analysis (and it is not), the Trustee's claim is not "based upon" that act because the "core" of his claim hinges upon the intervening acts of Sentry, which (according to the Trustee) chose to use BLMIS customer property to fund the Redemption Payments. As the Second Circuit has explained, "[i]n order for a cause of action to be based upon a commercial activity . . . there must exist a degree of closeness between the commercial activity and the gravamen of the plaintiff's complaint. This degree of closeness must be *considerably greater* than common law causation requirements." *Chettri v. Nepal Rastra Bank*, 834 F.3d 50, 56 (2d Cir. 2016) (emphasis added) (internal citations and quotation marks omitted). That degree of closeness is absent here; while ADIA's redemption requests may be a but-for cause of the initial transfers (if any such transfers even happened), those transfers were not a foreseeable consequence of the requests sufficient to satisfy even common law causation requirements.

8

For the same reason, ADIA's "act" in sending the redemption requests did not cause a direct effect in the United States within the meaning of the commercial activity exception.[7] "[A]n effect is direct if it follows as an *immediate* consequence of the *defendant's* activity" with "no intervening element." *Guirlando*, 602 F.3d at 74 (internal quotation marks omitted). Here, however, the Trustee's own evidence establishes that ADIA (an Abu Dhabi entity) sent the 2005 redemption request to Citco (a Dutch entity) to redeem ADIA's shares in Sentry (a BVI entity). *See* Song Decl. Ex. 33. Sentry's purported use of BLMIS customer property to fulfill that request (which ADIA disputes) was not a consequence of the request itself, as ADIA was wholly indifferent to the source of funds. "The [redemption request]'s effect thus depended crucially on variables independent of [ADIA]." *Virtual Countries*, 300 F.3d at 238. To the extent that ADIA's redemption request had any effect in the U.S. at all, that effect was not an "immediate consequence" of actions undertaken by ADIA but rather resulted from the intervening conduct of Sentry. Thus, although BLMIS's investors may have been impacted by the purported transfer of customer property to Sentry, "that is not enough on its own to trigger the commercial activity exception," because that analysis focuses on "the putatively unlawful conduct on [ADIA's] part, as alleged in the complaint." *Daou*, 2022 WL 2976322, at *9. Here, "the immediacy of the putative commercial activity's effect in the United States is fatally undermined by dependence on the conduct of intervening actors," Sentry and BLMIS. *Id.* at *11.

Accordingly, the third clause of the commercial activity exception to the FSIA does not apply. This Court therefore lacks subject-matter jurisdiction over this proceeding and must dismiss the Complaint.

---

[7] Because the relevant act for the "direct effect" analysis is the one on which the action is "based," *BLI*'s resolution of this issue is likewise incorrect under *OBB Personenverkehr*. *See* 28 USC § 1605(a)(2) ("[Based] upon *an act* outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and *that act* causes a direct effect in the United States.") (emphasis added).

9

## II. THE FIRST AND SECOND CLAUSES OF THE COMMERCIAL ACTIVITY EXCEPTION DO NOT APPLY

The Trustee's halfhearted effort to invoke the first and second clauses of the commercial activity exception is easily disposed of. As a threshold matter, his arguments as to the applicability of both provisions rest on the false premise that the Trustee's suit is "based upon" conduct other than ADIA's receipt of the Redemption Payments. For the reasons discussed in the preceding section, that alone is fatal to the Trustee's position.

Both arguments also fail on their own terms. The first prong permits subject-matter jurisdiction over actions "based upon a commercial activity carried on in the United States by the foreign state," which the FSIA defines as "commercial activity carried on by such state and having substantial contact with the United States." 28 U.S.C. § 1603(e). That "substantial contact," in turn, "requires a tighter nexus than the 'minimum contacts' standard for due process." *Consulting Concepts*, 2022 WL 2236946, at *2 (citation omitted). For the reasons described in ADIA's opening brief, the Trustee has failed to establish even minimum contacts sufficient to permit the exercise of personal jurisdiction over ADIA. Even assuming that the sporadic contacts between ADIA and New York-based employees of Sentry that the Trustee has identified do satisfy the minimum contact standard, those brief exchanges fall far short of the "substantial contact" required under the FSIA. Unable to rely on his own evidence to support his argument, the Trustee contends that ADIA's investment in Sentry which, in turn, invested in BLMIS, itself constitutes commercial activity by *ADIA* in the United States. Tellingly, the Trustee cites no authority for the sweeping proposition that Sentry and BLMIS's actions can be imputed to ADIA under the FSIA. The reason for that is simple: no such authority exists.

As for the second clause, which permits jurisdiction over actions "[based] upon an act performed in the United States in connection with the commercial activity of the foreign state

10

elsewhere," the Trustee, relying on the Second Circuit's decision in *In re Picard*, 917 F.3d 85 (2d Cir. 2019), claims that "the relevant transfers were 'acts' that occurred in the U.S." in connection with ADIA's commercial activity outside the United States. Opp. at 15. Setting aside the fact that the Trustee's position conflates the Second Circuit's analysis of extraterritoriality in *Picard* with the entirely distinct analysis required under the FSIA, and the fact that the Trustee has failed to identify the "relevant transfers" at issue, the Trustee's complaint is "based upon" ADIA's receipt of the subsequent transfers, and not the unspecified initial transfers from BLMIS to Sentry. Moreover, as discussed above, those transfers, to the extent that they occurred, lack the substantial nexus to ADIA's redemption requests, as they resulted entirely from Sentry's own interactions with BLMIS.

## CONCLUSION

For the foregoing reasons, as well as the reasons set forth in its opening brief, ADIA respectfully requests that the Court dismiss the Complaint with prejudice.

DATED: New York, New York
August 9, 2022

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Marc L. Greenwald*
Marc L. Greenwald
Eric M. Kay
Daniel M. Kelly
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
Telephone: (212) 849-7000
Fax: (212) 849-7100
marcgreenwald@quinnemanuel.com
erickay@quinnemanuel.com
danielkelly@quinnemanuel.com

*Attorneys for Defendant Abu Dhabi Investment Authority*

11