<u>NOT FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 12-01211 (CGM) |
| v. | |
| Union Securities Investment Trust Co., Ltd., et al., | |
| Defendants. | |

**MEMORANDUM DECISION DENYING DEFENDANTS' MOTION TO DISMISS**

<u>A P P E A R A N C E S</u>:

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
By:    Nicholas Cremona (on the papers)

*Counsels for Defendants Union Arbitrage Strategy Fund, Union Securities Investment Trust Co., Ltd., Union USD Global Arbitrage A Fund, Union USD Global Arbitrage Fund*

Sheppard Mullin Richter & Hampton, LLP
30 Rockefeller Plaza
New York, NY 10012
By:    Michael T. Driscoll (on the papers)

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Defendants Union USD Global Arbitrage Fund, Union USD

Global Arbitrage A Fund, Union Arbitrage Strategy Fund (collectively, the "Funds"), and Union

Securities Investment Trust Co., Ltd. ("USITC," and together with the Funds, the "Union

Securities Defendants"), motion to dismiss the complaint of Irving Picard, the trustee ("Trustee")

for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to

recover subsequent transfers allegedly consisting of BLMIS customer property.  Union Securities

Defendants seek dismissal for lack of personal jurisdiction, for failure to plead a cause of action

due to improper adoption by reference; for failure to state a claim due to the safe harbor

provision of the Bankruptcy Code; and for failure to allege that it received BLMIS customer

property.  For the reasons set forth herein, the motion to dismiss is denied in its entirety.

## Jurisdiction

This is an adversary proceeding commenced in this Court, in which the main underlying

SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending.  The

SIPA Proceeding was originally brought in the United States District Court for the Southern

District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L.*

*Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court.

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1),

and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O). This Court has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and the Amended Standing Order of Reference, dated January 31, 2012. In addition, the District Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this Court has jurisdiction under the latter provision. Personal jurisdiction has been contested by these Defendants and will be discussed *infra*.

### Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its SIPA proceeding. *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on March 23, 2012. (Compl., ECF[1] No. 1). Via the complaint ("Complaint"), the Trustee seeks to recover subsequent transfers made to Defendants. USITC, is a Taiwanese limited company that maintains a place of business in Taipei, Taiwan. (*Id.* ¶¶ 3, 22). USITC manages the Funds, which are all Taiwanese corporate entities with registered addresses in Taiwan. (*Id.* ¶ 22–25). The subsequent transfers were derived from Defendants' investments with BLMIS made by Fairfield Sentry Limited ("Fairfield Sentry"). (*Id.* ¶ 2). Fairfield Sentry is considered a "feeder fund" of BLMIS because the intention of the fund was to invest in BLMIS. (*Id.* ¶¶ 2, 6).

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield Sentry and related defendants to avoid and recover fraudulent transfers of customer property in

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 12-01211-cgm.

the amount of approximately $3 billion.  (*Id.* ¶ 34).  In 2011, the Trustee settled with Fairfield

Sentry.  (*Id.* ¶ 43).  As part of the settlement, Fairfield Sentry consented to a judgment in the

amount of $3.054 billion (Consent J., 09-01239-cgm, ECF No. 109) but repaid only $70 million

to the BLMIS customer property estate.  The Trustee then commenced a number of adversary

proceedings against subsequent transferees like Defendants to recover the approximately $3

billion in missing customer property.

In its motion to dismiss, Union Securities Defendants argue that the safe harbor bars the

Trustee's recovery of this transfer, the Trustee has failed to allege that it holds BLMIS customer

property, that this Court lacks personal jurisdiction, and that the Trustee has failed to plead a

cause of action due to improper adoption by reference.  The Trustee opposes the motion to

dismiss.

## Discussion

### Personal Jurisdiction

Defendants object to the Trustee's assertion of personal jurisdiction.  In the Complaint,

the Trustee argues that Defendants purposefully availed themselves of the laws of the United

States and New York.  (Compl. ¶¶ 6–8).

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2)

of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that

jurisdiction exists."  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)).  A trial court has

considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2).

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013).  "'It may

determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the

motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (same).

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin.*, 722 F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)); *Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 565 (Bankr. S.D.N.Y. 2021) (same).   In this case, the Trustee has alleged legally sufficient allegations of jurisdiction simply by stating that Union Securities Defendants "knowingly directing funds to be invested with New York-based BLMIS."  (Compl. ¶ 6).  At the pre-discovery stage, the allegations need not be factually supported.  *See Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir. 2013) (an averment of facts is necessary only after discovery).  This allegation alone is sufficient to establish a prima facie showing of jurisdiction over Defendants in the pre-discovery stage of litigation—but this is not the only allegation made by the Trustee.

In order to be subjected to personal jurisdiction in the United States, due process requires that a defendant have sufficient minimum contacts with the forum in which defendant is sued "'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012), 480 B.R. 501, 516 (Bankr. S.D.N.Y. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The pleadings and affidavits are to be construed "'in the light most favorable to the plaintiffs, resolving all doubts in their favor.'" *Chloé v. Queen*

*Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018).

> The Supreme Court has set out three conditions for the exercise of specific jurisdiction over a nonresident defendant. First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State. Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct. Finally, the exercise of jurisdiction must be reasonable under the circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

**Purposeful Availment**

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018). "Although a defendant's contacts with the forum state may be intertwined with its transactions or interactions with the plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up). "It is insufficient to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific jurisdiction." *Id.*

A party "purposefully avail[s] itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012).

Union Securities Defendants argue that the Trustee has not alleged that it has sufficient contacts with New York. The Complaint suggests otherwise. In the Complaint, the Trustee alleges that Union Securities Defendants "knowingly directed funds to be invested with New York-based BLMIS through Fairfield Sentry." (Compl. ¶ 6). The Trustee has also alleged that Fairfield Sentry invested almost all of its assets in BLMIS. *See* 09-1239 Compl. ¶ 228 ("Under Fairfield Sentry's offering memorandum, the fund's investment manager was required to invest no less than 95% of the fund's assets through BLMIS.") (adopted by reference, at paragraph 35, of this Complaint). Additionally, the Trustee has alleged that the "Union Securities Defendants knowingly received subsequent transfers from BLMIS by withdrawing money from Fairfield Sentry, a Fairfield Greenwich Group ("FGG") managed Madoff feeder fund." (Compl. ¶ 6). And "entered into subscription agreements with Fairfield Sentry under which they submitted to New York jurisdiction, sent copies of the agreements to FGG's New York City office, and had funds wired to Fairfield Sentry through a bank in New York." (*Id.* ¶ 7); *see, e.g., Eldesouky v. Aziz*, No. 11–CV–6986 (JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York long-arm statute based solely on defendant's use of New York account to receive payment at issue: "receiving Plaintiffs' money at a New York bank account suffices to establish personal jurisdiction over [Defendant]."); *HSH Nordbank AG N.Y. Branch v. Street*, No. 11 CIV. 9405 DLC, 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012)("District courts in this Circuit have upheld personal jurisdiction based upon a defendant's use of a correspondent bank account in New York where the use of that account was held to lay at the very root of the plaintiff's action.")(quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 66 (2d Cir. 2012).); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp.2d 374, 382–83 (S.D.N.Y. 2013) (same).

The Trustee has submitted additional evidence in response to the motion to dismiss, including evidence that shows Union Securities Defendants traveled to New York City to meet with Fairfield Sentry insiders about the investments that ultimately led to the subsequent transfers in question here. *See, e.g.*, Fish Decl., ex. J, ECF No. 123 (agenda for a Cathay Life Visit on Tuesday, September 18, 2007 with FGG at its New York City office).

The Trustee has also provided evidence indicating that Union Securities Defendants knew that their investments in Fairfield Sentry were being managed by BLMIS. Fish Decl., ex.4, ECF No. 123 (email from an FGG employee, dated June 6, 2006, to one of the Defendants' employees stating: "The Fairfield Sentry Fund strategy is executed by Bernard L. Madoff Securities, pursuant to a series of guidelines agreed to between BLM Securities and FGBL. The guidelines require that Bernard Madoff, (the individual) approve of all trades effected by the firm. Mr. Madoff has been functioning in this position for nearly 20 years."). Additionally, the Trustee has provided an email that indicates that the Defendants knew the redemptions at issue in this case were being processed in the United States. *See id.* ex. 5 (email chain discussing Defendants' first redemption and stating that redemptions were done by the New York office and in accordance with U.S. holiday schedules: "13th February is the deadline the NY office gave us, 15th calendar day is today 14th February, however, Monday 19th is a holiday in USA so this is also factored in as well, making the deadline 13th Feb.").

These allegations are legally sufficient to constitute a prima facie showing of jurisdiction. *Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir. 2013). "[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State— either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). "[Defendants]

intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money

orchard in the United States and reap the benefits therefrom." *Picard v. Bureau of Labor Ins.* (*In*

*re BLMIS*), 480 B.R. 501, 506 (Bankr. S.D.N.Y. 2012).  Defendants' alleged contacts with New

York are not random, isolated, or fortuitous.

**Arise out of or relate to the defendants' forum conduct**

As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts

with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017,

1026, 209 L. Ed. 2d 225 (2021) (emphasis in original).  "[P]roof that a plaintiff's claim came

about because of the defendant's in-state conduct" is not required.  *Id.* at 1027.  Instead, the court

need only find "an affiliation between the forum and the underlying controversy." *Goodyear*

*Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A.*

(*In re BLMIS*), 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with

the jurisdiction that relate to the cause of action are more substantial, however, it is not

unreasonable to say that the defendant is subject to personal jurisdiction even though the acts

within the state are not the proximate cause of the plaintiff's injury.") (internal quotations

omitted).

Here, the Trustee is asserting subsequent transfer claims against Defendants for monies it

received from the Fairfield Sentry.  (Compl. ¶¶ 51–55).  These allegations are directly related to

its investment activities with Fairfield Sentry and BLMIS.  *Picard v. BNP Paribas S.A.* (*In re*

*BLMIS*), 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) (finding that the redemption and other

payments the defendants received as direct investors in a BLMIS feeder fund arose from the

New York contacts such as sending subscription agreements to New York, wiring funds in U.S.

dollars to New York, sending redemption requests to New York, and receiving redemption

payments from a Bank of New York account in New York, and were the proximate cause of the
injuries that the Trustee sought to redress).

The suit is affiliated with the alleged in-state conduct. *Goodyear Dunlop Tires
Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

**Reasonableness**

Having found sufficient minimum contacts, the Court must determine if exercising
personal jurisdiction over the Defendants is reasonable and "comport[s] with fair play and
substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (internal
quotations omitted). Factors the Court may consider include the burden on the defendant, the
forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient
and effective relief, the interstate judicial system's interest in obtaining the most efficient
resolution of controversies, and the shared interest of the several States in furthering fundamental
substantive social policies.

The exercise of jurisdiction is reasonable. Defendants are not burdened by this litigation.
Defendants actively participated in this Court's litigation for over ten years. It is represented by
U.S. counsel, and "irrevocably" submitted to the jurisdiction of New York courts' when it signed
its subscription agreements with the Fairfield Funds.[2] The forum and the Trustee both have a
strong interest in litigating BLMIS adversary proceedings in this Court. *Picard v. Maxam
Absolute Return Fund, L.P. (In re BLMIS)*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474
B.R. 76 (S.D.N.Y. 2012); *Picard v. Chais (In re BLMIS)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y.

---

[2] Even though this Court held that the Defendants' consent to jurisdiction in New York courts contained in the
subscription agreements it signed prior to investing with Fairfield Sentry could not be used as the sole basis for this
Court's exercise of personal jurisdiction over an action by foreign liquidators to recover redemption payments under
British Virgin Island law, the fact that Defendants agreed to submit to the jurisdiction of this Court is certainly a
relevant factor in determining whether the exercise of jurisdiction over Defendants is reasonable. *In Fairfield Sentry
v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Case No. 10-13164 (SMB), Adv. No. 10-03496 (SMB),
2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("Defendants' consent to the Subscription Agreement
does not constitute consent to personal jurisdiction in the U.S. Redeemer Actions.").

2010); *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 418 B.R. 75, 82 (Bankr. S.D.N.Y. 2009);

*Picard v. Fairfield Greenwich Grp.,* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 568 (Bankr.

S.D.N.Y. 2021); *see also In re Picard*, 917 F.3d 85, 103 (2d Cir. 2019) ("The United States has a

compelling interest in allowing domestic estates to recover fraudulently transferred property.").

By alleging that Defendants intentionally invested in BLMIS, the Trustee has met his

burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS.  The

Trustee has made a prima facie showing of personal jurisdiction with respect to all of the

Fairfield Funds subsequent transfers at issue in this Complaint.

**12(b)(6) standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (cleaned up).  The claim is facially plausible when a plaintiff pleads facts that

allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct

alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does

not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise

a reasonable expectation that discovery will reveal evidence of illegal agreement.").  In deciding

a motion to dismiss, the Court should assume the factual allegations are true and determine

whether, when read together, they plausibly give rise to an entitlement of relief.  *Iqbal*, 556 U.S.

at 679.  "And, of course, a well-pl[ed] complaint may proceed even if it strikes a savvy judge

that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."

*Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as

other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in

particular, documents incorporated into the complaint by reference, and matters of which a court

may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322

(2007). A complaint is "deemed to include any written instrument attached to it as an exhibit[,] .

. . documents incorporated in it by reference[,]" and other documents "integral" to the complaint.

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted). A

document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous

information and relied on it in framing the complaint. *DeLuca v. AccessIT Grp., Inc.*, 695 F.

Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

The Trustee has asserted a single count against the Union Securities Defendants, seeking

to recover, pursuant to section 550 of title 11 of the United States Code and section 278 of the

New York Debtor & Creditor Law, transfers of alleged customer property made by BLMIS to

Fairfield Sentry that the Union Securities Defendants allegedly subsequently received from

Fairfield Sentry. "To plead a subsequent transfer claim, the Trustee must plead that the initial

transfer is avoidable, and the defendant is a subsequent transferee of that initial transferee, that is,

that the funds at issue originated with the debtor." *Picard v. BNP Paribas S.A.* (*In re BLMIS*),

594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); *see also SIPC v. BLMIS* (*In re Consolidated

Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *7 (S.D.N.Y.

Apr. 15, 2013) (consolidated proceedings on 11 U.S.C. § 546(e)). "Federal Civil Rule 9(b)

governs the portion of a claim to avoid an initial intentional fraudulent transfer and Rule 8(a)

governs the portion of a claim to recover the subsequent transfer. *Picard v. BNP Paribas S.A.*

(*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018) (citing *Sharp Int'l Corp. v. State St.*

*Bank & Trust Co.,* (*In re Sharp Int'l Corp.*), 403 F.3d 43, 56 (2d Cir. 2005) and *Picard v. Legacy*

*Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 36 (Bankr. S.D.N.Y. 2016), *rev'd on other grounds*,

*Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021)).

      To properly plead a subsequent transfer claim, the Trustee need only provide "a short and

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

8(a)(2). "The plaintiff must allege the necessary vital statistics—the who, when, and how much–

of the purported transfers to establish an entity as a subsequent transferee of the funds. However,

the plaintiff's burden at the pleading stage does not require dollar-for-dollar accounting of the

exact funds at issue." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr.

S.D.N.Y. 2018). While the Trustee must allege that the initial transfer from BLMIS to Fairfield

Sentry is avoidable, he is not required to avoid the transfer received by the initial transferee

before asserting an action against subsequent transferees. The Trustee is free to pursue any of

the immediate or mediate transferees, and nothing in the statute requires a different result. *IBT*

*Int'l, Inc. v. Northern* (*In re Int'l Admin. Servs., Inc.*), 408 F.3d 689, 706-07 (11th Cir. 2005).

      The Trustee pleaded the avoidability of the initial transfer (from BLMIS to Fairfield

Sentry) by adopting by reference the entirety of the complaint filed against Fairfield Sentry in

adversary proceeding 09-1239 ("Fairfield Complaint"). (Compl. ¶ 35). Whether the Fairfield

Complaint properly pleads the avoidability of the initial transfer, is governed by Rule 9(b). Rule

9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances

constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind

may be alleged generally." Fed. R. Civ. P. 9(b). "Where the actual fraudulent transfer claim is

asserted by a bankruptcy trustee, applicable Second Circuit precedent instructs courts to adopt a more

liberal view since a trustee is an outsider to the transaction who must plead fraud from second-hand

knowledge. Moreover, in a case such as this one, where the Trustee's lack of personal knowledge is

compounded with complicated issues and transactions that extend over lengthy periods of time, the trustee's handicap increases, and even greater latitude should be afforded." *Picard v. Cohmad Secs. Corp., (In re BLMIS)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up).

**Adoption by Reference**

Adoption by reference is government by Rule 10 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 10(c). Rule 10(c) states: "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." The district court has already found that adoption by reference of the entire Fairfield Complaint is proper. *See SIPC v. BLMIS (In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013) ("The Trustee's complaint against Standard Chartered Financial Services incorporates by reference the complaints against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).") (cleaned up).

The Court will follow the district court's instruction. As was explained in *In re Geiger*, pleadings filed in the "same action" may be properly adopted by reference in other pleadings in that action. 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010). The Fairfield Complaint was filed in the "same action" as this adversary proceeding for purposes of Rule 10(c). *Id.* Cases within this SIPA proceeding are filed in the same "proceeding"—the SIPA proceeding. *In re Terrestar Corp.*, No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."); *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 610 B.R. 197, 237 (Bankr. S.D.N.Y. 2019) ("The prior decisions within this SIPA proceeding constitute law of the case . . . . "); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 603 B.R. 682, 700 (Bankr. S.D.N.Y. 2019),

(citing *In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018) (law of the case doctrine applies across adversary proceedings within the same main case), *aff'd*, 943 F.3d 125 (2d Cir. 2019)); *Perez v. Terrastar Corp. (In re Terrestar Corp.)*, No. 16 Civ. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."), *appeal dismissed*, No. 17-1117 (2d Cir. June 29, 2017); *Bourdeau Bros., Inc. v. Montagne (In re Montagne)*, No. 08-1024 (CAB), 2010 WL 271347, at *6 (Bankr. D. Vt. Jan. 22, 2010) ("[D]ifferent adversary proceedings in the same main case do not constitute different 'cases.'").

Some courts have worried that wholesale incorporation of a pleading can lead to "confusing and inconvenient" results. *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47 (E.D. Va. 2009) (footnote omitted), *aff'd*, 382 F. App'x 256 (4th Cir. 2010). That is not a concern in these proceedings. Defendants, like many subsequent transfer defendants in this SIPA proceeding, is aware of what has been filed in the other adversary proceeding in this SIPA liquidation. It routinely follows what is happening on a proceeding-wide basis. *See* Stip., ECF No. 83 (dismissing adversary proceeding based on consolidated extraterritoriality ruling).

Allowing the Trustee to incorporate the Fairfield Complaint by reference, does not prejudice Defendants. If the Court were to dismiss this Complaint and permit the Trustee to amend his Complaint to include all of the allegations that are already contained in the Fairfield Complaint, all parties would be prejudiced by delay in these already, overly-prolonged proceedings. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("Rule 15 places no time bar on making motions to amend pleadings and permits the amending of pleadings "when justice so requires.").

Through the adoption of the Fairfield Complaint, the Trustee has adequately pleaded, with particularity, the avoidability of the initial transfer due to Fairfield Sentry's knowledge of BLMIS' fraud. (Fairfield Compl. ¶¶ 314–318, 09-01239, ECF No. 286); *see also SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013) ("[T]he Court directs that the following adversary proceedings be returned to the Bankruptcy Court for further proceedings consistent with this Opinion and Order . . . .").

**The Safe Harbor does not bar the avoidance of the Fairfield Initial Transfers**

Defendants have raised the "safe harbor" defense, found in § 546(e), to the Trustee's allegations. Section 546(e) is referred to as the safe harbor because it protects a transfer that is a "settlement payment ... made by or to (or for the benefit of) a ... financial institution [or] financial participant," or that is "made by or to (or for the benefit of) a ... financial institution [or] financial participant ... in connection with a securities contract." 11 U.S.C. § 546(e). "By its terms, the safe harbor is a defense to the avoidance of the **initial** transfer. *Picard v. BNP Paribas S.A. (In re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis added). However, where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here, the subsequent transferee is entitled to raise a § 546(e) defense against recovery of those funds. *Picard v. Fairfield Inv. Fund (In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021).

In light of the safe harbor granted under 11 U.S.C. § 546(e), the Trustee may only avoid and recover intentional fraudulent transfers under § 548(a)(1)(A) made within two years of the filing date, unless the transferee had actual knowledge of BLMIS's Ponzi scheme, or more generally, "actual knowledge that there were no actual securities transactions being conducted."

*SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR),

2013 WL 1609154, at *4 (S.D.N.Y. Apr. 15, 2013).  "The safe harbor was intended, among other

things, to promote the reasonable expectations of legitimate investors.  If an investor knew that

BLMIS was not actually trading securities, he had no reasonable expectation that he was signing

a contract with BLMIS for the purpose of trading securities for his account.  In that event, the

Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the

full extent permitted under state and federal law."  *Picard v. Legacy Capital Ltd. (In re BLMIS)*,

548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on

other grounds, Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021)).  "In sum, if

the Trustee sufficiently alleges that the [initial] transferee from whom he seeks to recover a

fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim the protections of

Section 546(e)'s safe harbor."  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-

01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021).

    This Court has already determined that the Fairfield Complaint[3] contains sufficient

allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule

12(b)(6) motion.  *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv.

No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he Trustee

has alleged that the agents and principals of the Fairfield Funds had actual knowledge of

Madoff's fraud").  In that adversary proceeding, the Court held that "[t]he Trustee has pled

[actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's

fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the

Fairfield Funds through 'FGG,' an alleged 'de facto' partnership."  *Id.* at *4; *see also* Fairfield

Compl. ¶ 320 ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); Fairfield Compl.

---

[3] The Fairfield Complaint can be found on the docket of adversary number 09-01239-cgm, ECF No. 286.

¶ 321 ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the fraud at

BLMIS"); Fairfield Compl. ¶ 322 ("FIFL had actual knowledge of the fraud at BLMIS");

Fairfield Compl. ¶ 323 ("Stable Fund had actual knowledge of the fraud at BLMIS"); Fairfield

Compl. ¶ 324 ("FG Limited had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶

325 ("FG Bermuda had actual knowledge of the fraud at BLMIS"); ¶ 326 ("FG Advisors had

actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 327 ("Fairfield International

Managers had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 328 ("FG Capital

had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 329 ("Share Management had

actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 9 ("It is inescapable that FGG

partners knew BLMIS was not trading securities. They knew BLMIS's returns could not be the

result of the split strike conversion strategy (the "SSC Strategy"). They knew BLMIS's equities

and options trading volumes were impossible. They knew that BLMIS reported impossible, out-

of-range trades, which almost always were in Madoff's favor. They knew Madoff's auditor was

not certified and lacked the ability to audit BLMIS. They knew BLMIS did not use an

independent broker or custodian. They knew Madoff refused to identify any of BLMIS's options

counterparties. They knew their clients and potential clients raised numerous due diligence

questions they would not and could not satisfactorily answer. They knew Madoff would refuse to

provide them with honest answers to due diligence questions because it would confirm the

details of his fraud.  They knew Madoff lied about whether he traded options over the counter or

through the exchange. They knew they lied to clients about BLMIS's practices in order to keep

the money flowing and their fees growing. And they knowingly misled the SEC at Madoff's

direction.").

This Court determined that the Fairfield Complaint is replete with allegations demonstrating that Fairfield Sentry had actual knowledge that BLMIS was not trading securities. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021).  The district court determined that "those defendants who claim the protections of Section 546(e) through a Madoff Securities account agreement but who actually knew that Madoff Securities was a Ponzi scheme are not entitled to the protections of the Section 546(e) safe harbor, and their motions to dismiss the Trustee's claims on this ground must be denied."  *SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013).  And "to the extent that a defendant claims protection under Section 546(e) under a separate securities contract" this Court was directed to "adjudicate those claims in the first instance consistent with [the district court's] opinion."  *See* Order, 12-MC-115, ECF No. 119, Ex. A at 24.

This Court is powerless to reconsider this issue, agrees with the district court's reasoning, and finds its holding consistent with *dicta* set forth by the Court of Appeals for the Second Circuit.  *See Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*), 773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded to the clients of stockbrokers, including the protection offered by § 546(e).").  The Trustee's allegations in the Fairfield Complaint are sufficient to survive a Rule 12(b)(6) motion on this issue.

**The Safe Harbor cannot be used to defeat a subsequent transfer**

Defendants argue that the safe harbor prevents the Trustee from avoiding the subsequent

transfer between Fairfield Sentry and Union Securities Defendants on account of the securities

contract between Fairfield and Defendants.

The safe harbor is not applicable to subsequent transfers. "By its terms, the safe harbor is

a defense to the avoidance of the *initial* transfer." *Picard v. BNP Paribas S.A. (In re BLMIS)*,

594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e)

(failing to include § 550 in its protections). Since there must be an initial transfer in order for the

Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe

harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned. The

safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not

"avoiding" a subsequent transfer, "he recovers the value of the avoided initial transfer from the

subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the

recovery claims under section 550." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167,

197 (Bankr. S.D.N.Y. 2018).

Defendants argue that this Court applied the safe harbor to redemption payments made by

Fairfield Sentry in *In re Fairfield Sentry Ltd.*, 2020 WL 7345988, at *5 (Dec. 14, 2020)

("*Fairfield III*"). Reliance on this case is misplaced. While many facts overlap between this

SIPA liquidation of BLMIS and the foreign liquidation of BLMIS's largest feeder fund, Fairfield

Sentry, the legal holdings in these liquidations are not interchangeable. In this case, the Court is

analyzing subsequent transfers; in *Fairfield III* the Court was analyzing initial transfers. The

safe harbor is not available to be raised as defense to subsequent transfer claims.

In *Fairfield III*, this Court analyzed whether the safe harbor applied to avoidance claims under BVI law[4] to recover "unfair preferences" and "undervalue transactions" and constructive trust claims against a defendant who allegedly "knew or willfully blinded itself to the fact that the [Fairfield Sentry's] BLMIS investments were worthless or virtually worthless." *In re Fairfield Sentry Ltd*., No. 10-13164 (SMB), 2020 WL 7345988, at *1 (Bankr. S.D.N.Y. Dec. 14, 2020), *reconsideration denied*, No. 10-13164 (SMB), 2021 WL 771677 (Bankr. S.D.N.Y. Feb. 23, 2021).  The Court was not considering the safe harbor's effect on subsequent transfer claims brought under § 550 of the Bankruptcy Code.  In the Fairfield Sentry liquidation, Defendants would be an initial transferee as redemption payments paid by Fairfield Sentry were paid directly to Multi-Strategy.  *Fairfield III* is not applicable here.

Defendants also argue that this Court permitted a subsequent transferee to raise the safe harbor as a defense in *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021).  The Court never considered whether the safe harbor could be raised by a subsequent transferee in that case. In *Picard v. Fairfield*, the subsequent transferees were also the principals and insiders of Fairfield Sentry, the initial transferee.  The Court considered the insider's actual knowledge of BLMIS's fraud only as it related to whether Fairfield Sentry had actual knowledge of the fraud. The Court never considered whether the subsequent transferees could raise the safe harbor defense on their own behalf nor could it have, as § 546 is inapplicable to subsequent transferees.

Defendants are not permitted to raise the safe harbor defense on its own behalf as a subsequent transferee.

**BLMIS Customer Property**

---

[4] Fairfield Sentry liquidated under the laws of the British Virgin Islands ("BVI") and this Court's separate chapter 15 case is ancillary to the primary proceeding brought in the BVI.

The Trustee has pleaded that "[b]ased on the Trustee's investigation to date, approximately $9,283,664 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant Union Global Fund and/or Defendant USITC through an account at Cathay United Bank Ltd." (Compl. ¶ 44). The exhibits attached to the Complaint provide the Union Securities Defendants with the "who, when, and how much" of each transfer. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018).

The Fairfield Complaint, which is incorporated by reference into this, alleges that the Fairfield Fund was required to invest 95% of its assets in BLMIS. (Fairfield Compl. ¶ 89); *see also* (Fairfield Compl. ¶ 91) ("From the beginning, to comport with Madoff's requirement for BLMIS feeder funds, Fairfield Sentry ceded control of not only its investment decisions, but also the custody of its assets, to BLMIS."). The Complaint plausibly alleges that Fairfield Sentry did not have any assets that were not customer property.

Defendants take issue with the basic math of the transfers on both the macro and the micro level. The Defendants find it implausible that the $3 billion of funds transferred from BLMIS could have resulted in the approximately $5 billion that the Trustee seeks to recover from all the subsequent transferees in this SIPA case. These arguments assume that all subsequent transfers preceding the ones at issue here were paid solely from customer property and that Fairfield Sentry had other property to give. These assumptions are unsupported. To consider allegations made in 70+ other complaints filed by the Trustee in this SIPA proceeding is impractical and not required at this stage of the litigation. The other complaints have not been adopted by reference by the Trustee in this adversary proceeding and, as such, are not within the Court's power to consider on a Rule 12(b)(6) motion. *Williams v. Time Warner Inc.*, 440 F.

App'x 7, 9 (2d Cir. 2011) ("A district court, in deciding whether to dismiss a complaint under

Rule 12(b)(6), is generally limited to the facts as presented within the four corners of the

complaint, to documents attached to the complaint, or to documents incorporated within the

complaint by reference.") (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)).

In order to determine how Fairfield Sentry spent the billions of dollars it received from

BLMIS, this Court would need review financial documents in order to trace the monies to all of

Fairfield Sentry's principals, insiders, creditors, and customers.  Undoubtedly, the Court will

trace and calculate how Fairfield Sentry spent its BLMIS funds at a later stage of litigation.  At

this stage, the Trustee need only assert allegations that make it seem plausible that Defendants

received BLMIS monies.

Taking all allegations as true and reading them in a light most favorable to the Trustee,

the Complaint plausibly pleads that Union Securities Defendants received customer property

because Fairfield Sentry did not have other property to give.  The calculation of Fairfield

Sentry's customer property and what funds it used to make redemption payments are issues of

fact better resolved at a later stage of litigation.

### Conclusion

For the foregoing reasons, Defendants' motion to dismiss is denied.  The Trustee shall

submit a proposed order within fourteen days of the issuance of this decision, directly to

chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local

Bankruptcy Rule 9074-1(a).



**Dated: August 10, 2022**
**Poughkeepsie, New York**

**/s/ Cecelia G. Morris**
_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**