KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, New York 10020
(212) 940-8800
*Attorneys for Defendant*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, Plaintiff-Applicant, | ) ) ) | **Adv. Pro. No. 08-1789 (CGM)** |
| v. | ) | **SIPA Liquidation** |
| BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, Defendant. | ) ) ) ) | **(Substantively Consolidated)** |
| In re: | ) ) | |
| BERNARD L. MADOFF, | ) ) | |
| Debtor. | ) ) ) | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | ) ) ) | |
| Plaintiff, | ) ) | **Adv. Pro. No. 12-01669 (CGM)** |
| v. | ) ) | |
| Barfield Nominees Ltd., | ) ) | |
| Defendant. | ) ) ) | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS THE TRUSTEE'S COMPLAINT**

## TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS..................................................................................................i

PRELIMINARY STATEMENT .....................................................................................1

ARGUMENT ..................................................................................................................2

I.    THE TRUSTEE IMPROPERLY ATTACHES EXHIBITS TO ITS OPPOSITION..........2

II.   THE TRUSTEE'S IMPERMISSIBLE ATTEMPT AT GROUP PLEADING IS
      INSUFFICIENT TO ESTABLISH JURISDICTION OVER BARFIELD.......................3

III.  THE COMPLAINT FAILS TO ALLEGE SUFFICIENT FACTS TO SUPPORT
      PERSONAL JURISDICTION OVER BARFIELD.........................................................4

      A.    The Trustee Fails to Establish that Barfield Purposefully Availed Itself of the
            Laws of New York................................................................................. 4

      B.    Barfield's Purported Use of a U.S. Correspondent Bank Account Does Not
            Establish Personal Jurisdiction............................................................. 7

      C.    Barfield's Investment in Kingate Global Fund Ltd. Is Irrelevant to This
            Proceeding......................................................................................11

      D.    Barfield's Subscription Agreements and Investments in BLMIS Do Not
            Sufficiently Relate to This Proceeding to Establish Specific Jurisdiction............12

      E.    Personal Jurisdiction over Barfield Would Not Comply with Constitutional
            Due Process....................................................................................12

      F.    The Trustee Is Not Entitled to Jurisdictional Discovery .....................................13

IV.   THE 546(E) SAFE HARBOR PROVISION PROHIBITS THE TRUSTEE'S
      CLAWBACK ...........................................................................................14

V.    THE TRUSTEE'S COMPLAINT DOES NOT COMPLY WITH RULES 8(a) AND
      10(c)..................................................................................................16

VI.   THE SUBSEQUENT TRANSFERS DO NOT PLAUSIBLY CONSIST OF BLMIS
      CUSTOMER PROPERTY ...........................................................................17

CONCLUSION..............................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................18

*Berdeaux v. OneCoin Ltd.*,
    561 F. Supp. 3d 379 (S.D.N.Y. 2021) ...................................................................9

*Brecht v. Abrahamson*,
    507 U.S. 619 (1993)..................................................................................................5

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)..............................................................................................6, 12

*Chase Manhattan Bank v. Banque Generale du Commerce*,
    1997 WL 266968 (S.D.N.Y. May 20, 1997).........................................................12

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
    822 F.2d 1242 (2d Cir. 1987) .................................................................................4

*Edmondson v. RCI Hospitality Holdings, Inc.*,
    No. 16-CV-2242 (VEC), 2020 WL 1503452 (S.D.N.Y. Mar. 30, 2020) .............19

*Esso Exploration & Production Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
    397 F. Supp. 3d 323 (S.D.N.Y. 2019) (Opp. ) .......................................................9

*Ford Motor Co. v. Montana Eighth Judicial Dist. Court*,
    141 S. Ct. 1017 (2021) ..........................................................................................5, 6

*Grow Grp., Inc. v. Jandernoa*,
    No. 94-CV-5679 (RPP), 1996 WL 31848 (S.D.N.Y. Jan. 26, 1996) .....................4

*Hau Yin To v. HSBC Holdings, PLC*,
    No. 15-CV-3590 (LTS), 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700
    F. App'x 66 (2d Cir. 2017) .................................................................................8, 9

*Hill v. HSBC Bank PLC*,
    207 F. Supp. 3d 333 (S.D.N.Y. 2016) ..................................................................10

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
    529 F. Supp. 3d 111 (S.D.N.Y. 2021) .............................................................3kio

*In re Mexican Gov't Bonds Antitrust Litig.*,
    No. 18-CV-2830 (JPO), 2020 WL 7046837 (S.D.N.Y. Nov. 30, 2020) .................7

*In re UBS AG Sec. Litig.*,
No. 07-CV-11335, 2012 WL 4471265 (S.D.N.Y. 2012), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. V. UBS AG,* 752 F.3d 173 (2d Cir. 2014)......................................................................................................15

*J. McIntyre Mach., Ltd v. Nicastro,*
564 U.S. 873 (2011) (plurality opinion) ............................................................7

*Jazini v. Nissan Motor Co.,*
148 F.3d 181 (2d Cir. 1998) ...........................................................................14

*Jesner v. Arab Bank, PLC,*
138 S. Ct. 1386 (2018) ...................................................................................10

*Kiobel v. Royal Dutch Petroleum Co.,*
No. 02-CV-7618 (KMW)(HBP), 2009 WL 3817590 (S.D.N.Y. Nov. 16, 2009)..............................................................................................................14

*Laborers Local 17 Health and Ben. Fund v. Philip Morris, Inc.,*
26 F. Supp. 2d 593 (S.D.N.Y. 1998) ................................................................2

*Letom Mgmt. Inc. v. Centaur Gaming, LLC,*
No. 17-CV-3793 (PAE), 2017 WL 4877426 (S.D.N.Y. Oct. 27, 2017) ..............11

*Licci v. Lebanese Can. Bank, SAL,*
20 N.Y.3d 327 (N.Y. 2012) ...........................................................................8, 9

*Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.,*
12 N.E.3d 456 (N.Y. 2014) ...........................................................................10

*Neewra, Inc. v. Manakh Al Khaleej Gen. Trading and Contracting Co.,*
No. 03-CV-2936 (MBM), 2004 WL 1620874 (S.D.N.Y. July 20, 2004)............12

*Official Comm. of Unsecured Creditors of Arcapita Bank B.S.C. v. Bahrain Islamic Bank,*
549 B.R. 56 (S.D.N.Y. 2016) ............................................................................8

*Picard v. Banque Lombard Odier & Cie SA (In re Madoff),*
No. 08-01789 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) .......13

*Picard v. Banque Syz & Co., SA (In re Madoff),*
No. 08-01789 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ............. 6, 13, 14

*Picard v. BNP Paribas S.A. (In re Madoff),*
594 B.R. 167 (Bankr. S.D.N.Y. 2018)..............................................................16

*Picard v. Bureau of Labor Insurance (In re BLMIS),*
480 B.R. 501 (Bankr. S.D.N.Y. 2012)................................................................5

*Picard v. Charles Ellerin Rev. Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*,
No. 08–01789, 2012 WL 892514 ......................................................................... 18

*Picard v. Fairfield Inv. Fund Ltd*,
No. 09-012239 (Bankr. S.D.N.Y. Aug. 6, 2021) ................................................. 14

*Picard v. Fairfield Sentry Ltd.*, Adv. Proc. No. 09-1239  (Bankr. S.D.N.Y. May 9,
2011), ECF 69-2 ............................................................................................. 14

*See Picard v. Federico Ceretti, et al.*, Adv. Pro. No. 09-1161  (SMB) (Bankr.
S.D.N.Y. July 17, 2019) ECF 413 ..................................................................... 11

*Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*,
773 F.3d 411 (2d Cir. 2014) ............................................................................... 16

*Picard v. Merkin (In re BLMIS)*,
581 B.R. 370 (Bankr. S.D.N.Y. 2017) ................................................................ 19

*Picard v. Multi-Strategy Fund Ltd. (In re Madoff)*,
No. 08-01789 (CGM), 2022 WL 2137073 (Bankr. S.D.N.Y., June 13, 2022) ............ 6, 13,  14

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*,
542 B.R. 100 (Bankr. S.D.N.Y. 2015) ........................................................... 18, 19

*Rosenblatt v. Coutts & Co. AG*,
17-CV-3528 (AKH), 2017 WL 3493245 (S.D.N.Y. Aug. 14, 2017) .................... 10

*Rush v. Savchuk*,
444 U.S. 320, 322 (1980) .................................................................................... 4

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
12-mc-115, 2013 WL 1609154 (S.D.N.Y. Apr. 16, 2013) ............................. 14, 15

*SPV OSUS Ltd. v. UBS AG*,
114 F. Supp. 3d 161 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018) .............. 5, 11

*SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*,
620 B.R. 505 (Bankr. S.D.N.Y. 2020) ................................................................ 16

*Tamam v. Fransabank Sal*,
677 F. Supp. 2d 720 (S.D.N.Y. 2010) ................................................................ 10

*U.S. Bank. Nat'l Ass'n v. Bank of Am. N.A.*,
916 F.3d 143 (2d Cir. 2019) .............................................................................. 11

*United States v. Int'l Longshoremen's Ass'n*,
518 F. Supp. 2d 422 (E.D.N.Y. 2007) ................................................................ 17

*Universal Trading & Inv. Co. v. Tymoshenko*,
    No. 11-CV-7877 (PAC), 2012 WL 6186471 (S.D.N.Y. Dec. 12, 2012)............................ 9, 10

*Vasquez v. H.K. & Shanghai Banking Corp.*,
    477 F. Supp. 3d 241 (S.D.N.Y. 2020) ....................................................................................8

*Walden v. Fiore*,
    571 U.S. 277 (2014)................................................................................................... 5, 6, 12

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)...................................................................................................... 6, 13

**Statutes**

§ 546(e)......................................................................................................2, 14, 15, 16

**Rules**

Fed. R. Bankr. P. 2004.......................................................................................................14

Fed. R. Civ. P. 8(a)................................................................................................... 2, 16, 17

Fed. R. Civ. P. 10(c) ................................................................................................. 2, 16, 17

Defendant Barfield Nominees Ltd. ("Barfield" or "Defendant"),[1] by its undersigned counsel, respectfully submits this reply memorandum of law (the "Reply") to the *Trustee's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint* (ECF No. 93) (the "Opposition" or "Opp.") in further support of its motion to dismiss the Complaint (ECF No. 90) (the "Opening Brief" or "Op. Br.").[2]

## **PRELIMINARY STATEMENT**

As shown in Barfield's opening papers, the Trustee has failed to make a *prima facie* showing that this Court has personal jurisdiction over Barfield, a Guernsey corporation with no relevant contacts with the United States. The Trustee presents unalleged and untested facts for the first time in his Opposition in an apparent attempt to establish jurisdiction over foreign defendant Barfield where the Complaint's allegations fall flat. However, it is the Trustee's burden to affirmatively plead a *prima facie* case of personal jurisdiction in its Complaint, not Barfield's burden to refute allegations or theories absent from that pleading. The Trustee's new evidentiary submission should be taken for what it is: a concession that the Complaint does not adequately allege personal jurisdiction, as the allegations in the Complaint all center around *Sentry's* contacts in the United States, not Barfield's.

Even if this Court considered the Trustee's improper evidentiary submission, there would still be no basis to impose personal jurisdiction over Barfield. For example, the Trustee's documents reflect Barfield's use of a U.S. correspondent bank account, which was necessary, but incidental, to the indisputably foreign transfers at issue in this case. Similarly, the Trustee puts

---

[1] This motion was brought by Barfield and its co-defendant Northern Trust Corporation. However, Northern Trust has been voluntarily dismissed from this case since the filing of the motion. Adv. Pro. No. 12-01669 (CGM) ECF No. 96.

[2] Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in Barfield's Opening Brief. Unless otherwise noted, all ECF citations refer to Adv. Proc. No. 12-01669 (CGM).

forward evidence relating to transfers made from BLMIS to *Kingate*, when this case only concerns transfers made from BLMIS to *Sentry*. Other evidence submitted by the Trustee simply duplicates the allegations in the Complaint, which do not speak to Barfield's contacts relating to the redemptions at issue in this proceeding, or even to Barfield's purposeful contacts with the United States.

The Trustee has also failed to successfully refute the other bases for dismissal. As discussed in more detail below: (i) many of the transfers at issue may not be recovered because recovery is barred under the Section 546(e) safe harbor, and (ii) the Complaint violates Federal Rules of Civil Procedure 8(a) and 10(c) because it incorporates the Fairfield Amended Complaint, and (iii) the Complaint fails to allege that the transfers at issue are BLMIS customer property. As a result, the Trustee has not met his pleading burden and the Complaint must be dismissed.

## **ARGUMENT**

### I.   **THE TRUSTEE IMPROPERLY ATTACHES EXHIBITS TO ITS OPPOSITION**

When deciding a motion to dismiss for lack of personal jurisdiction, "a court may consider extrinsic evidence submitted by the parties." *Laborers Local 17 Health and Ben. Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593, 604 (S.D.N.Y. 1998). Yet, the consideration of extrinsic evidence is limited—"The purpose of the court's examination of these extrinsic materials is to determine whether there is any factual support for the plaintiff's prima facie case of jurisdiction. Extrinsic materials, however, cannot be used to amend pleadings that are themselves insufficient." *Id.*

Here, the Trustee attempts to supplement his original Complaint by submitting new evidence with his Opposition, attaching nearly two dozen exhibits to a Declaration. Some of those exhibits are mere "factual support" for the Trustee's *prima facie* case of jurisdiction. Those exhibits reflect that: (i) Sentry's offering materials and contractual documents show that Sentry invested in New York-based BLMIS, which was acting as investment manager, broker and

custodian for the Sentry funds transferred to it (Lunn Decl. Exs. 1, 6); and (ii) Sentry's subscription agreements named a New York bank account to receive subscription funds from Barfield, and provided for New York choice of law. Lunn Decl. Exs. 2, 3, 4, 5, 7, 10, 11, 15, 16, 17. However, many exhibits go beyond the Trustee's *prima facie* case of jurisdiction, adding new facts that appear nowhere in the Complaint. Those exhibits purport to show that: (i) redemption payments from Sentry to Barfield were directed to U.S. bank accounts (Lunn Decl. Exs. 8, 9, 12, 13, 14, 19, 20, 21, 22); and (ii) Barfield's investment in the not-at-issue Kingate Global Fund and that investment's purported contacts with the United States. Lunn Decl. Ex. 18. None of these exhibits add enough to the Trustee's threadbare Complaint to establish jurisdiction over Barfield, *see infra* Point III. Those exhibits relating to the bank accounts in which Barfield received redemptions and Kingate Global Fund, in particular, should not be considered, as they add new facts, rather than factual support, for the Trustee's preexisting *prima facie* case.

## II.    THE TRUSTEE'S IMPERMISSIBLE ATTEMPT AT GROUP PLEADING IS INSUFFICIENT TO ESTABLISH JURISDICTION OVER BARFIELD

The Opposition assumes that Barfield is the subject of all jurisdictional allegations, but that is not what the Complaint alleges. There are no jurisdictional allegations in the Complaint about Barfield, only the "Barfield Defendants." *See* Compl. ¶¶ 6-9. Indeed, throughout the Complaint, the Trustee makes general and vague allegations as to the "Barfield Defendants" (*see, e.g.*, Compl. ¶¶ 6–9, 44-45, 51-52) without any delineation or separateness.

The Trustee argues that group pleading should be permitted here because there is only "one defendant's contacts to analyze—Barfield." Opp. at 16. The Trustee misses the point: Barfield cannot defend itself from these allegations because it does not know which allegations pertain to it, and which pertain to the now-dismissed Northern Trust. Such group pleading is insufficient as a matter of law. *See In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d

111, 135 (S.D.N.Y. 2021) (group pleading is impermissible as "plaintiff is required to establish personal jurisdiction separately over each defendant"); *Grow Grp., Inc. v. Jandernoa*, No. 94-CV-5679 (RPP), 1996 WL 31848, at *5 (S.D.N.Y. Jan. 26, 1996) (citing *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)) (It is "plainly unconstitutional" to consider the defending parties by group and aggregate their forum contacts to determine jurisdiction).

*DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247-48 (2d Cir. 1987), cited by the Trustee, does not prove otherwise. There, the court explained that where "much of the factual information needed to fill out plaintiff's complaint lies peculiarly within the opposing parties' knowledge, the general rule disfavoring allegations founded upon belief ought not to be rigidly enforced." *Id*. at 1248. But the Trustee clearly has access to Citco and Sentry books and records, and has submitted 22 different exhibits in his Opposition alone, presumably from his collections from those entities. Lunn Decl. Exs. 1-22. Accordingly, the exception to the prohibition of group pleading does not apply here—the knowledge of the underlying transactions does *not* lie peculiarly with the Defendant. Thus, the Trustee's group pleading is impermissible making it even clearer that its jurisdictional allegations fail.

## III.   THE COMPLAINT FAILS TO ALLEGE SUFFICIENT FACTS TO SUPPORT PERSONAL JURISDICTION OVER BARFIELD

### A.   The Trustee Fails to Establish that Barfield Purposefully Availed Itself of the Laws of New York

The Complaint's personal jurisdiction allegations against Barfield are insufficient boilerplate. The Trustee does not allege that Barfield had direct contact with BLMIS, or any facts specific to Barfield or its investments in Sentry, instead relying only on generic allegations that Barfield: (i) "knowingly direct[ed] funds to be invested with" BLMIS; (ii) "entered a subscription agreement" with Sentry, with a New York choice of law provision and sent funds to Sentry "through a bank in New York"; and (iii) filed customer claims with the Trustee. Compl. ¶¶ 6-8.

4

These allegations do not satisfy the Trustee's pleading burden to establish personal jurisdiction in the United States over Barfield—a Guernsey bank—based on transactions with Sentry, a BVI investment fund. Compl. ¶ 23.

As an initial matter, the allegations are false. Barfield was investing at the instruction of its clients. Declaration of Daniel Usher ("Usher Decl.") ¶ 6. Accordingly, Barfield did not purposefully avail itself of New York jurisdiction by investing in Sentry.

Even if the Trustee's allegations were true, however, Barfield's knowledge of *Sentry's* contacts with New York does not show that Barfield purposely availed *itself* of the privilege of conducting activities in the forum state. *Walden v. Fiore*, 571 U.S. 277, 284-85 (2014). The Complaint contains no allegation of Barfield's "physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means."[3] *Id.*, at 285. Consequently, the Trustee cannot establish jurisdiction on the basis of these facts. To hold otherwise would amount to exerting personal jurisdiction over Barfield on the basis of wherever the effects of that conduct could conceivably be felt, rather than where the defendant's primary conduct takes place. *Id.*, at 284 (rejecting "attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.").[4]

---

[3] *See SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 170 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018), which held various jurisdictional contacts connected to different contracts with the defendant could not generate *in personam* jurisdiction because the plaintiff's action did not arise from or relate to those specific contacts. The same is true here and necessitates dismissal. Contrary to the Trustee's undeveloped argument (Opp. at 15, and n.6), *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1026–30 (2021) does not cast doubt on *SPV OSUS Ltd.* Although *Ford* held that the jurisdictional analysis did not "always" require causation, 141 S. Ct. at 1026, Barfield has none of the "systematic" and longstanding contacts with New York that *Ford* had with Montana and Minnesota, and which justified a finding there of jurisdiction without direct causation. *Id.* at 1028.

[4] The Trustee relies on *Picard v. Bureau of Labor Insurance (In re BLMIS)*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012) ("*BLI*") to support his argument that Barfield's investment into Sentry, with knowledge that the investment would end up with BLMIS, is sufficient to establish jurisdiction. *BLI* is no help to the Trustee. First, the Trustee's assertion that *BLI* is controlling law is incorrect. These jurisdictional issues were not decided in *BLI*. *See Brecht v. Abrahamson*, 507 U.S. 619, 630-31 (1993) (decision not precedent for issues not "squarely addressed"). Second, *BLI* predates and

Indeed, this case is readily distinguishable from the Court's recent opinions in the Trustee's cases against Banque SYZ and Multi-Strategy Fund. Unlike in those cases and their progeny, the Trustee does not allege that Barfield held in-person meetings with FGG, solicited its own clients to invest in Madoff feeder funds, or was a "Madoff addict." *See Picard v. Banque Syz & Co., SA (In re Madoff)*, No. 08-01789 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022); *See also Picard v. Multi-Strategy Fund Ltd.* (*In re Madoff*), No. 08-01789 (CGM), 2022 WL 2137073 (Bankr. S.D.N.Y., June 13, 2022). Instead, the Trustee relies solely on Barfield's alleged knowledge that its investment in Sentry would in turn be invested in BLMIS in New York. (Opp. at 4-5, 8-11.) But the Trustee cites no precedent to conflate Barfield's investment in Sentry with a non-existent direct investment in BLMIS.

Moreover, the Supreme Court has held even when a foreign defendant contracts directly with a forum resident, that alone does not suffice to show purposeful availment. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). Here, the Trustee does not allege that Barfield contracted with a New York-based entity, but that it contracted with a BVI-based entity (Sentry), supposedly knowing the BVI entity would go on to contract with a New York entity. (Compl. ¶¶ 2, 7.) This is not, however, enough to establish purposeful availment.

---

is inconsistent with *Walden*, which was decided after *BLI*. *Walden* makes clear that knowing of or intending a consequence in the forum state cannot give rise to personal jurisdiction. Op. Br. at 11-12, 14. Adopting the Trustee's theory would undermine a defendant's ability to "'structure [its] primary conduct' to lessen or avoid exposure to a given State's courts." *Ford Motor Co.*, 141 S. Ct. at 1025 (2021) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Indeed, such a test would deprive Barfield of any meaningful way to structure its conduct to avoid being hauled into court anywhere in the United States. If the Trustee's theory were upheld, any investment that foreseeably found its way into a U.S. asset would confer personal jurisdiction.

Similarly, the Trustee's allegations in the Complaint (¶¶ 6-7), and his (inappropriately expanded) allegations in his Opposition that Barfield supposedly knew its money would find its way from Sentry to BLMIS (Opp. at 9) is nothing more than a variation on the "stream of commerce" theory of personal jurisdiction that has been consistently rejected by the courts. *See J. McIntyre Mach., Ltd v. Nicastro*, 564 U.S. 873, 882, 886 (2011) (plurality opinion) ("[I]t is not enough that [a] defendant might have predicted that its goods will reach the forum," but rather the defendant must "engage[] in conduct purposefully directed at [the forum]."); *In re Mexican Gov't Bonds Antitrust Litig.*, No. 18-CV-2830 (JPO), 2020 WL 7046837, at *3-4 (S.D.N.Y. Nov. 30, 2020) (holding neither an attempt to profit from conduct underlying the claim nor foreseeability of a harm in forum were sufficient to establish jurisdiction in absence of a defendant's contact with forum). It cannot form the basis of personal jurisdiction over Barfield here.

Finally, the Trustee concedes in the Opposition that the customer claims filed by Barfield have nothing to do with the Sentry transfers at issue in this case. *See* Opp. at 11. As explained more fully in the Opening Brief, the filing of customer claims unrelated to the transfers at issue in this proceeding does not bear on the jurisdictional analysis. Op. Br. at 16.

### B.    Barfield's Purported Use of a U.S. Correspondent Bank Account Does Not Establish Personal Jurisdiction

The Complaint contains no allegation that Barfield had a U.S. correspondent bank account, or that the wiring instructions in each of Barfield's Sentry subscription agreements designated such an account to receive redemption payments; the Trustee nevertheless argues that this account establishes personal jurisdiction. *See* Opp. at 9; Lunn Decl. Exs. 2, 4, 7, 10, 15, and 17.[5]

---

[5] The Trustee also points to Barfield's consent to send and receive payment from Sentry's New York correspondent bank account. Opp. at 9-10. However, the Trustee concedes that it was Sentry's action, not Barfield's to "identif[y] its HSBC USA bank account to receive subscriptions." Opp. at 10. As stated above, Sentry's conduct cannot form the basis to impose jurisdiction over Barfield under *Walden. See supra* p.5.

In cases where a correspondent account "does not appear to have been necessary to the Ponzi scheme's success," courts have not found use of the account to be purposeful. *Vasquez v. H.K. & Shanghai Banking Corp.*, 477 F. Supp. 3d 241, 262 (S.D.N.Y. 2020); *see, e.g.*, *Hau Yin To v. HSBC Holdings, PLC*, No. 15-CV-3590 (LTS), 2017 WL 816136, at *7 n.6 (S.D.N.Y. Mar. 1, 2017) ("The wiring of funds through New York . . . was passive, rather than 'integral' to the alleged Ponzi scheme."), *aff'd*, 700 F. App'x 66, 67-68 (2d Cir. 2017).  Here, as in *Vasquez* and *Hau Yin To*, there is no allegation in the Complaint that a correspondent bank account was even used, much less that it was necessary for the success of Madoff's Ponzi scheme.

The Trustee's argument relies on inapposite case law.  Unlike in the cases cited by the Trustee, Barfield's use of a correspondent bank account was incidental to foreign investment contracts that were negotiated and performed entirely abroad.  Usher Decl. ¶ 9.  Opp. at 10; *Cf. Licci v. Lebanese Can. Bank, SAL*, 20 N.Y.3d 327, 338-39 (N.Y. 2012) (finding defendant's repeated use of New York correspondent bank account was purposeful, not incidental); *Official Comm. of Unsecured Creditors of Arcapita Bank B.S.C. v. Bahrain Islamic Bank*, 549 B.R. 56, 67-71 (S.D.N.Y. 2016) (jurisdiction existed over Bahrain bank because the bank was not "complicit, or even mere participants, in the selection of the New York correspondent bank" rather the bank "actively directed the funds at issue into th[e] New York accounts").  *Arcapita* is distinguishable for another reason.  The *Arcapita* court ruled that the foreign bank defendant "designated correspondent bank accounts in New York to receive the funds, even though they presumably could have performed the [] transactions without ever directing the funds through New York or anywhere else in the United States." *Arcapita*, 549 B.R. at 70.  Here, however, Barfield was *required* to designate a U.S. correspondent bank account because the Sentry transfers were denominated in U.S. dollars and, accordingly, Barfield's redemption of a client's investment

8

necessitated clearance and conversion of currency in the United States. *Cf. Arcapita*, 549 B.R. at 70, n. 15; Usher Decl. ¶ 7.

The decision in *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379 (S.D.N.Y. 2021) is instructive. In *Berdeaux*, Judge Caproni held that the fact that a transfer at issue passed through a New York correspondent account did not show a non-bank defendant's "purposeful" use of the account within the meaning of *Licci*, "even if [he] not only knew that a New York correspondent account was being used but actually coordinated [its] use," where he did not maintain the account and the money only passed through it en route to a foreign bank account. *Berdeaux*, 561 F. Supp. 3d at 403 (citations and footnote omitted); *see also Universal Trading & Inv. Co. v. Tymoshenko*, No. 11-CV-7877 (PAC), 2012 WL 6186471, at *3 (S.D.N.Y. Dec. 12, 2012) (finding no personal jurisdiction where "a foreign individual holding foreign accounts . . . moved money through New York via a correspondent account.").[6]

Indeed, the incidental use of a correspondent bank account in the United States to facilitate U.S. dollar-denominated payments to settle a foreign securities transaction—here, the investment in and the redemption of shares in a British Virgin Islands company by a Guernsey entity—does not give rise to personal jurisdiction. *See Hau Yin To*, 2017 WL 816136, at *6. (rejecting personal jurisdiction over foreign defendants because their alleged connection to the forum was the transmission of information and funds "to and from BLMIS . . . [as an] incidental consequence[] of fulfilling a foreign contract"); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339-40 (S.D.N.Y. 2016) (finding that transmission of information and funds to and from BLMIS to be "incidental consequences of fulfilling a foreign contract . . . insufficient to 'project' the Foreign Defendants

---

[6] The Trustee's reliance on *Esso Exploration & Production Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 397 F. Supp. 3d 323 (S.D.N.Y. 2019) (Opp. at 10-11) is misplaced. There, the defendant maintained three relevant U.S. bank accounts and deliberately directed transfers to and from those accounts. *Id.* at 338-39, 345.

into New York" and not amounting "to 'purposeful availment' of the laws of [the forum]"); *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 727 (S.D.N.Y. 2010) ("[C]ourts in this district have routinely held that merely maintaining a New York correspondent bank account is insufficient to subject a foreign bank to personal jurisdiction.") (collecting cases); *Rosenblatt v. Coutts & Co. AG*, 17-CV-3528 (AKH), 2017 WL 3493245, at *4 (S.D.N.Y. Aug. 14, 2017) (foreign defendant's act of sending payment to plaintiff's New York bank account pursuant to an agreement negotiated and executed outside the United States was not purposeful availment).

The transfers at issue in this case are between two foreign entities. Because the transfers were denominated in U.S. dollars, any redemption of an investment in U.S. dollars was required to be cleared in the currency's "home" jurisdiction. Usher Decl. ¶ 7. The correspondent bank account served the necessary purpose to convert the transfer to the appropriate currency and passed the funds straight to Guernsey.[7] Usher Decl. ¶ 8. The Fairfield Liquidators themselves confirmed that the same transfers the Trustee seeks to recover here occurred entirely outside of the United States. *See* Op. Br. at 10-11. Accordingly, Barfield's incidental use of a correspondent account is not appropriate to subject Barfield to the jurisdiction of this Court.[8]

---

[7] Hundreds of thousands of foreign dollar transactions valued at over $1.5 trillion are cleared in New York each day. *See generally Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1395 (2018) ("In New York each day, on average, about 440,000 of these transfers [Clearing House Interbank Payments System . . . the system used for most large banking transactions], occur, in dollar amounts totaling about $1.5 trillion."). Were the incidental use of U.S.-based accounts sufficient to confer personal jurisdiction over foreign entities, New York would become a forum for any foreign commercial dispute, contrary to federal and state policy, merely because global transactions are frequently cleared in U.S. dollars in New York. *See Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*, 12 N.E.3d 456, 459-60 (N.Y. 2014) ("Our state's interest in the integrity of its banks . . . is not significantly threatened every time one foreign national, effecting what is alleged to be a fraudulent transaction, moves dollars through a bank in New York."); *see also Tymoshenko*, No. 11-CV-7877 (PAC), 2012 WL 6186471, at *3 (S.D.N.Y. 2012) ("[C]ourts have long recognized that there are significant policy reasons which caution against the exercise of personal jurisdiction based only on . . . a correspondent bank account.") (internal quotation marks omitted).

[8] For example, in affirming dismissal on personal jurisdiction grounds in *Hau Yin To v. HSBC Holdings, PLC*, the Second Circuit explained that "[t]he communication and transmission of information to and from [BLMIS] in connection with fund administration and custodial duties do not give rise to personal jurisdiction … Nor does the mere maintenance of correspondent bank accounts at an affiliate bank in New York." 700 F. App'x at 67 (internal citations omitted). Notably, that case involved bank defendants that corresponded and sent money directly to BLMIS and, thus, had a closer relationship to BLMIS than Barfield. At most, Barfield sent money to Fairfield Sentry that merely and

The Trustee's Opposition contends that "[i]n practice, when Barfield wished to invest, it wired funds from its Chicago-based bank accounts to Sentry's HSBC bank account in New York." *See* Opp. at 9. Not only does that allegation appear nowhere in the Complaint, it is also insufficient as a matter of well settled law which holds that sending "payments to New York merely to ensure compliance with contract terms negotiated and executed outside of New York do not 'project' a defendant into the state sufficiently to confer personal jurisdiction." *Letom Mgmt. Inc. v. Centaur Gaming, LLC*, No. 17-CV-3793 (PAE), 2017 WL 4877426, at *7 (S.D.N.Y. Oct. 27, 2017) (fact that contract required payments to New York bank account did not establish specific jurisdiction).

### C.    Barfield's Investment in Kingate Global Fund Ltd. Is Irrelevant to This Proceeding

The Trustee argues that Barfield's investment in Kingate adds to Barfield's "New York contacts." Opp. at 11. This case, however, is about Barfield's redemptions from its investments in *Sentry*.[9] Barfield's Kingate investments have no relevance at all to this case and the Trustee's claims do not "arise out of or relate to" those investments. *U.S. Bank. Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019). *See SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 170 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018) (no personal jurisdiction where contacts related to a contract not at issue in the claim); *see also Neewra, Inc. v. Manakh Al Khaleej Gen. Trading and Contracting Co.*, No. 03-CV-2936 (MBM), 2004 WL 1620874, at *3-5 (S.D.N.Y. July 20, 2004) (no personal jurisdiction where the purported contacts did not relate to the specific payments at issue in the transaction at issue).

---

allegedly passed through a U.S. bank before being deposited in the Fairfield Sentry's bank account in BVI. *See* Compl. at ¶ 7. Such incidental use of a U.S. bank account is insufficient to establish personal jurisdiction for the reasons discussed herein.

[9] The Trustee has also agreed to dismiss all claims arising from the Kingate transactions, based on the Trustee's full recovery of all initial transfers to Kingate. *See Picard v. Federico Ceretti, et al.*, Adv. Pro. No. 09-1161 (SMB) (Bankr. S.D.N.Y. July 17, 2019) ECF 413.

Even if the Court were to consider these investments in its analysis of Barfield's New York contacts, as is the case with the Sentry investment, the Trustee can only point to Kingate's contacts, not to Barfield's.  Opp. at 11-12.  *Walden* dictates that these contacts cannot establish personal jurisdiction over a defendant. *See* 571 U.S. at 291.

### D.    Barfield's Subscription Agreements and Investments in BLMIS Do Not Sufficiently Relate to This Proceeding to Establish Specific Jurisdiction

Much of the Trustee's argument relies on Barfield's activities at the time of subscribing, and investing in, Sentry.  This emphasis ignores Judge Bernstein's dispositive rulings in *Fairfield Sentry Ltd. v. Amsterdam (In re Fairfield Sentry Ltd.)* that the Fairfield Sentry subscription agreements are "irrelevant" to claims to recover redemption payments.  *See* 2018 WL 3756343, at *11-12 (Bankr. S.D.N.Y., Aug. 6, 2018) ("*Fairfield I*"); *see also* Op. Br. at 11.  Indeed, the Privy Council and Judge Bernstein held that redemptions are governed by BVI law and Fairfield Sentry's Articles of Association.  *Fairfield I*, at *3, 4, 11.  The Trustee cannot escape the precedent established by this Court in *Fairfield I*.[10]

The Trustee has essentially made *no* jurisdictional allegations that relate to the *redemptions* at issue in this proceeding.  Accordingly, the Trustee cannot establish specific jurisdiction on the basis of contacts that sufficiently relate to the case.

### E.    Personal Jurisdiction over Barfield Would Not Comply with Constitutional Due Process

The Trustee has failed to make the threshold showing of minimum contacts. The Trustee has not alleged that Barfield had sufficient contacts with New York or the United States related to

---

[10] The cases cited by the Trustee to support his position are inapposite. *See* Opp. at 13. The Court in *Burger King Corp.,* found personal jurisdiction because, unlike here, the defendant entered into an agreement that envisioned "continuing and wide-reaching contacts" with the forum. 471 U.S. at 479-80.  And, in *Chase Manhattan Bank v. Banque Generale du Commerce*, 1997 WL 266968 (S.D.N.Y. May 20, 1997), the contractual choice-of-law clause broadly governed "the parties' relationship." *Id*. at *2; Opp. at 13. Subscription agreements and offering materials did not do so in this case.

the Trustee's claims to recover the alleged subsequent transfers. In fact, Barfield's conduct in New York is virtually non-existent. Barfield is not alleged to have communicated with any Fairfield Sentry or BLMIS employees in New York. Barfield did not meet with anyone from BLMIS and Barfield never solicited additional investors or seek out additional investment in BLMIS. Barfield did not maintain its own bank accounts with BLMIS. *Cf. Multi-Strategy,* 2022 WL 2137073 at 6-8; *Banque Syz,* 2022 WL 2135019 at 6-7; *Picard v. Banque Lombard Odier & Cie SA (In re Madoff)*, No. 08-01789 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022). The exercise of personal jurisdiction over Barfield would be unreasonable and not comport with due process. *See World-Wide Volkswagen Corp.*, 444 U.S. 286, 297 (1980) ("The Due Process Clause . . . gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurances as to where that conduct will and will not render them liable to suit.") (citation omitted); *see also Walden*, 571 U.S. at 286.

F.    **The Trustee Is Not Entitled to Jurisdictional Discovery**

The Trustee contends that if this Court finds that he has not yet made a *prima facie* showing of jurisdiction as to Barfield, he should be granted jurisdictional discovery. Opp. at 18-19. Barfield objects to this request because (1) it has based its dismissal motion solely on the Trustee's allegations in the Complaint; (2) the Trustee has failed to make "a threshold showing" that there is a basis for jurisdictional discovery; and (3) the Trustee has failed to identify how any proposed discovery would uncover facts sufficient to sustain jurisdiction. *See, e.g., Kiobel v. Royal Dutch Petroleum Co.*, No. 02-CV-7618 (KMW)(HBP), 2009 WL 3817590, at *4 (S.D.N.Y. Nov. 16, 2009) ("A court [] is not required to subject a foreign corporation to discovery where the allegations fail to state a basis for the exercise of jurisdiction, or where a plaintiff's proposed discovery, even if permitted, would not uncover facts sufficient to sustain jurisdiction."); *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 186 (2d Cir. 1998) ("The rules governing establishment of

jurisdiction over such a foreign corporation are clear and settled, and it would be inappropriate for us to deviate from them or to create an exception to them because of the problems plaintiffs may have in meeting their somewhat strict standards."). Indeed, the Trustee had Rule 2004 subpoena power, had access to Fairfield's documents, and clearly had documents relating to Barfield's investments, as he had submitted a multitude of documents with his Opposition. *See Picard v. Fairfield Sentry Ltd.*, Adv. Proc. No. 09-1239 (Bankr. S.D.N.Y. May 9, 2011), ECF 69-2 ("Fairfield Settlement Agreement"). Yet, the Trustee elected to stand on the basis of his Complaint rather than amend his Complaint. He should not be given another bite at the apple.

## IV.    THE 546(E) SAFE HARBOR PROVISION PROHIBITS THE TRUSTEE'S CLAWBACK[11]

Barfield's Opening Brief establishes the requisite statutory criteria for entitlement to the § 546(e) safe harbor protection for all of the subsequent transfers the Trustee seeks to recover from it. Trustee's opposition does not actually contest the statutory criteria (and those facts are established)[12], rather it instead relies on a misread of the District Court's controlling decision in *Cohmad*. That decision rejects the Trustee's position and compels dismissal of the claims.

---

[11] This court held in *Multi-Strategy* and *Banque Syz* that § 546(e) does not apply to subsequent transfers and transferees; and that it did not reach a different result in *Picard v. Fairfield Inv. Fund Ltd*, No. 09-012239, (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Inv. Fund*"). *Multi-Strategy*, 2022 WL 2137073 at 19-21; *Banque Syz*, 2022 WL 2135019 at 20-22. Respectfully, Defendant submits that the *Multi-Strategy* and *Banque Syz* decisions are at odds with the District Court's controlling precedent in *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 12-mc-115, 2013 WL 1609154 (S.D.N.Y. Apr. 16, 2013) ("*Cohmad*") and that the properly applied controlling precedent in its *Fairfield Inv. Fund* decision, which follows *Cohmad's* reasoning and quotes a key *Cohmad* holding, stating "if the Trustee sufficiently alleges that the transferee from who he seeks to recover a fraudulent transfer knew of Madoff Securities' fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor." *Fairfield Inv. Fund*, No. 09-012239 at *4 (emphasis added) (quoting *Cohmad*). The court examined whether the plaintiff sufficiently alleged facts establishing actual knowledge as to each defendant. *Id.*, at *5-7, and concluded that the plaintiff had done so for all except the one defendant who was only a subsequent transferee, *Id.*, at *4-6, *15. As to the one defendant, the court found the plaintiff had "failed to plead individualized factual allegations demonstrating that [she] had independent actual knowledge of the BLMIS fraud" and dismissed all claims against her. *Id.*, at *6. Barfield respectfully requests the court to consider the argument and dismiss the claims against it under the safe harbor.

[12] *In re UBS AG Sec. Litig.*, No. 07-CV-11335, 2012 WL 4471265 (S.D.N.Y. 2012), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. V. UBS AG*, 752 F.3d 173 (2d Cir. 2014).

The Trustee contends that § 546(e) does not protect a subsequent transferee if the plaintiff alleged actual knowledge of fraud by both the initial transferor and the initial transferee, even if he does not or cannot allege the actual knowledge of the subsequent transferee. Opp. at 28. However, *Cohmad* holds that the "actual knowledge" of the subsequent transferee defeats the application of § 546(e) safe harbor when the Trustee seeks to recover from the subsequent transferee:

> (2) Where the Trustee has sought to recover transfers made to a <u>subsequent transferee</u>, the avoidance of which would otherwise be barred by Section 546(e) as to the initial transferee, the <u>subsequent transferee</u> will not be able to prevail on a motion to dismiss some or all of the Trustee's avoidance claims simply on the basis of the Section 546(e) "safe harbor" if the Trustee has alleged that the <u>subsequent transferee</u> had actual knowledge of Madoff Securities' fraud.

*Cohmad*, 2013 WL 1609154, at *1. Implied in *Cohmad* is the inverse—that the Trustee cannot recover from a subsequent transferee *without actual knowledge.*

The Second Circuit clearly intended for innocent transferees—both initial and subsequent—to be protected from liability from the Trustee in order to achieve the greater purpose of Section 546(e), i.e., to create stability in the securities markets. Indeed, the Second Circuit wrote, "[p]ermitting the clawback of millions, if not billions, of dollars from BLMIS clients— many of whom are institutional investors and feeder funds—would likely cause the very 'displacement' that Congress hoped to minimize in enacting § 546(e)." *Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411, 420 (2d Cir. 2014) (citation omitted). By creating a massive exemption from the safe harbor due to Sentry's alleged actual knowledge, the Trustee is asking this Court to permit exactly what the Second Circuit sought to curtail. Indeed, Barfield is precisely the investor the *Fishman* Court wanted to protect—those investors who had "every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, [and thus,] have every right to avail themselves of all the

protections afforded to the clients of stockbrokers, including the protection offered by § 546(e)."
*Id.* at 420.

Case law cited by the Trustee is not to the contrary. *Picard v. BNP Paribas S.A. (In re Madoff)*, 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) and *SunEdison Litig. Tr. v. Seller Note, LLC (In re SunEdison, Inc.)*, 620 B.R. 505 (Bankr. S.D.N.Y. 2020) do not support the Trustee; the issue of whether subsequent transferees are barred from asserting the safe harbor where the initial transferee had actual knowledge of the fraud is not even addressed in those opinions, nor is *Cohmad* cited. *BNP*, 594 B.R. at 197; *SunEdison*, 620 B.R. at 512-517 (where Judge Bernstein granted defendants' motion to dismiss constructive fraudulent transfer claims based on § 546(e) without discussing any alleged transferee's knowledge.).

## V.    THE TRUSTEE'S COMPLAINT DOES NOT COMPLY WITH RULES 8(a) AND 10(c)

Barfield showed in its Opening Brief that the Complaint's incorporation of the 217-page Fairfield Amended Complaint did not comply with Rule 8(a)'s "short and plain statement" requirement or Rule 10(c)'s limitations on incorporation by reference. The Trustee seems to have missed the fact that incorporation of an entire pleading that fails to specify the relevant allegations violates the limitations on incorporation by reference imposed by case law. *See United States v. Int'l Longshoremen's Ass'n,* 518 F. Supp. 2d 422, 461 (E.D.N.Y. 2007) (citation omitted) ("references to prior allegations must be direct and explicit, in order to enable the responding party to ascertain the nature and extent of the incorporation."). Accordingly, the Trustee's incorporation of the Fairfield Complaint violates Rule 10(c).

By incorporating the entire Fairfield Amended Complaint, the Trustee puts at issue all claims he asserted against Sentry and the other Fairfield defendants, including a plethora of irrelevant allegations and exhibits that have nothing to do with avoidability. Barfield should not

be required to respond to the entire Fairfield complaint against the Fairfield defendants to be able to defend the Trustee's claim against Barfield. It is no answer to say that Barfield may respond only to those allegations in the Fairfield Amended Complaint that address avoidability. A defendant should not be required to guess which of the plaintiff's allegations apply and which do not: the plaintiff is required to state a claim in a short and plain statement of facts entitling the plaintiff to relief, to which the defendant can then respond. *See* Fed. R. Civ. P. 8(a); Op. Br. at 20-23, 35.

The Trustee contends the Court may take judicial notice of the Fairfield Second Amended Complaint ("SAC") in *Fairfield Investment Fund* and its decision in that case. *See* Opp. at 2, n. 3. However, the Trustee has not purported to incorporate the SAC in this Complaint, and this Court's decision in *Fairfield Investment Fund* did not address whether the Trustee's wholesale incorporation of an earlier, superseded pleading comports with Rule 8(a) or 10(c). Moreover, judicial notice does not relieve the Trustee of his burden to meet the pleading requirements of the Federal Rules of Civil Procedure and applicable case law concerning incorporation by reference. Because he has not fulfilled this requirement, the Court should dismiss the Complaint.

## VI.    THE SUBSEQUENT TRANSFERS DO NOT PLAUSIBLY CONSIST OF BLMIS CUSTOMER PROPERTY

The Opposition never addresses that the Trustee has alleged billions of dollars more in subsequent transfers of BLMIS customer property from Sentry than he alleges was ever transferred to Sentry. This is not a matter of requiring "dollar-for-dollar accounting" (Opp. at 29) or expert opinion, but a *legal* question to be resolved on a motion to dismiss, before the parties and Court incur the burden of litigating time-consuming, baseless claims not plausibly related to the recovery of customer property. The "possibility" that the Trustee may have a claim against Barfield is not enough. The U.S. Supreme Court has said a complaint "must be dismissed" if the plaintiff "ha[s]

not nudged the [] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015). Here the Complaint only alleges a sheer possibility that Barfield received customer property and, since that is equal to the possibility that it did not, the complaint must be dismissed. *See* Op. Br. at 36-40.

The Trustee does not deny that he has failed to tie any of the thousands of alleged initial transfers from BLMIS to Sentry to any of the alleged subsequent transfers to Barfield. Instead, he argues he need not do so (Opp. at 29-30, ECF 93). That is not so. None of the alleged initial transfers are the same amount as the alleged subsequent transfers to Barfield, and the temporal connection is tenuous, at best, with many of the alleged subsequent transfers occurring months after the immediately prior alleged initial transfer.

Thus, the cases that say that a trustee "need only allege sufficient facts to show the relevant pathways through which the funds were transferred," *e.g.*, *Picard v. Charles Ellerin Rev. Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 08–01789, 2012 WL 892514, at *3, do not (indeed, cannot) relieve the Trustee of his obligation to plead a plausible linkage between the initial and subsequent transfers. Opp. at 29. None of those cases upholds a pleading where, based on the Trustee's own allegations, the purported pathway is a dead-end, as is the case here, because the Trustee has alleged that earlier Sentry distributions had exhausted all the BLMIS money at Sentry prior to the at-issue redemptions.[13]  *See Shapiro*, 542 B.R. at 119.

---

[13] Contrary to the Trustee's assertion, there is no undisclosed expert methodology here—only arithmetic. *See* Op. Br., Point II. C, at 20-21; *see also Edmondson v. RCI Hospitality Holdings, Inc.*, No. 16-CV-2242 (VEC), 2020 WL 1503452, at *6 (S.D.N.Y. Mar. 30, 2020) ("Simple arithmetic, such as ordinary multiplication, is a paradigmatic example of the type of everyday activity that goes on in the normal course of human existence.") (citations and quotation marks omitted).

Tracing is only an issue where funds are commingled.  *See Picard v. Merkin (In re BLMIS*), 581 B.R. 370, 384-85 (Bankr. S.D.N.Y. 2017) (tracing necessary where subsequent transfers originated from commingled accounts). The Trustee cannot plausibly allege that BLMIS money was commingled at Sentry when his own allegations demonstrate there was no BLMIS money left at Sentry.

## CONCLUSION

For the reasons set forth above, Barfield respectfully requests that the Court dismiss the Complaint in its entirety with prejudice.

New York, NY
Dated: August 10, 2022

**KATTEN MUCHIN ROSENMAN LLP**

/s/ Anthony L. Paccione
Anthony L. Paccione
Mark T. Ciani
50 Rockefeller Plaza
New York, New York 10020
Telephone: (212) 940-8800
anthony.paccione@katten.com
mark.ciani@katten.com

*Attorneys for Defendant*