**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br>Plaintiff-Applicant,<br>v.<br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br>Defendant. | Adv. Pro. No. 08-01789 (BRL)<br>SIPA Liquidation<br>(Substantively Consolidated) |
| In re:<br>BERNARD L. MADOFF,<br>Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff,<br>Plaintiff,<br>v.<br>MISTRAL (SPC),<br>Defendant. | Adv. Pro. No. 12-01273 (CGM) |

**MEMORANDUM OF LAW IN SUPPORT OF
MISTRAL (SPC)'S MOTION TO DISMISS**

William J. Sushon
Daniel S. Shamah
Kayla N. Haran
O'Melveny & Myers LLP
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000

*Attorneys for Mistral (SPC)*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1

BACKGROUND .......... 2

A. Mistral .......... 3

B. The Funds .......... 3

C. The Trustee's Actions Against Rye .......... 3

D. The AC and Related Proceedings .......... 4

LEGAL STANDARD .......... 5

ARGUMENT .......... 6

I. THE AC DOES NOT PLAUSIBLY ALLEGE THAT THE MISTRAL REDEMPTIONS WERE BLMIS PROPERTY .......... 6

II. THE TRUSTEE'S OWN PLEADINGS ESTABLISH MISTRAL'S GOOD-FAITH DEFENSE. .......... 7

A. Mistral Received the Redemptions for Value. .......... 8

B. Mistral Acted in Good Faith and Could Not Have Discovered Madoff's Fraud Where So Many Others Failed. .......... 8

CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*BLD Prods., LLC v. Viacom, Inc.*,
2011 WL 1327340 (S.D.N.Y. Mar. 31, 2011), *aff'd in relevant part, vacated in part, remanded sub nom. BLD Prods., LLC v. Remote Prods., Inc.*, 509 F. App'x 81 (2d Cir. 2013)....................10

*CLC Creditors' Grantor Tr. v. Howard Sav. Bank (In re Commercial Loan Corp.)*,
2010 WL 1730860 (Bankr. N.D. Ill. Apr. 29, 2010) ....................8

*Dozier v. Deutsche Bank Tr. Co. Americas*,
2011 WL 4058100 (S.D.N.Y. Sept. 1, 2011)....................3

*Gilmore v. Rivera*,
2014 WL 1998227 (S.D.N.Y. May 14, 2014) ....................10

*In re Enron Corp.*,
333 B.R. 205 (Bankr. S.D.N.Y. 2005)....................8

*Jones v. Bock*,
549 U.S. 199 (2007)....................10

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013)....................7

*Picard v. ABN Amro Bank N.A.*,
2020 WL 1584491 (Bankr. S.D.N.Y. Mar. 31, 2020) ....................1, 8

*Picard v. Banque SYZ & Co. SA*,
2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022)....................1

*Picard v. Citibank, N.A.*,
12 F.4th 171 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209 (2022)....................6, 9

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
515 B.R. 117 (Bankr. S.D.N.Y. 2014)....................3

*Picard v. Multi-Strategy Fund Ltd.*,
2022 WL 2137073 (Bankr. S.D.N.Y. June 13, 2022)....................1

*Picard v. Shapiro*,
542 B.R. 100 (Bankr. S.D.N.Y. 2015)....................6, 7

*Russello v. United States*,
464 U.S. 16 (1982)....................8

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Sapia v. Home Box Off., Inc.*,
2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018) .................... 7

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
594 B.R. 167 (Bankr. S.D.N.Y. 2018) .................... 3

*Ziparo v. CSX Transp.*,
15 F.4th 153 (2d Cir. 2021) .................... 8

**STATUTES**

11 U.S.C. § 550 .................... 6

11 U.S.C. § 550(a) .................... 6

11 U.S.C. § 550(b) .................... 2, 7, 8

SIPA § 78fff .................... 6

SIPA § 78fff-2(c)(3) .................... 6

**OTHER AUTHORITIES**

5 *Collier on Bankruptcy* (Richard Levin & Henry J. Sommer eds., 16th ed. 2019) .................... 8

**RULES**

Fed. R. Civ. P. 12(b)(6) .................... 5

## PRELIMINARY STATEMENT

The most basic pleading requirement under the Federal Rules is that a complaint set forth a "short and plain" statement of a plausible claim for relief. The Trustee's AC[1] fails this basic test because it does not plausibly plead his claims. On its face, it includes only conclusory allegations that the Redemption Payments made to Mistral contained BLMIS customer property.[2] The AC should therefore be dismissed.

The AC stems from the Madoff Ponzi scheme and seeks to recover as voidable subsequent transfers of $3,200,000 from Mistral under section 550. But the AC contains only the most threadbare allegations, specifying the aggregate dollar amounts the Trustee alleges were transferred to Mistral from Rye, and then simply assuming that each of those transfers

[1] This Memorandum uses the following definitions: (i) "AC" means the Amended Complaint filed by the Trustee in this action, ECF No. 113, *Picard v. Mistral (SPC)*, Adv. Pro. No. 12-01273 (Bankr. S.D.N.Y. June 9, 2022); (ii) "Mistral" means Defendant Mistral (SPC); (iii) "Trustee" means Plaintiff Irving H. Picard; (iv) "BLMIS" means Bernard L. Madoff Investment Securities LLC; (v) "Rye Select Funds" means collectively Rye Select Broad Market Fund LP (f/k/a American Masters Broad Market Fund, L.P.), Rye Select Broad Market Prime Fund LP (f/k/a American Masters Broad Market Prime Fund, L.P.), and Rye Portfolio Limited; (vi) "Rye" means Rye Portfolio Limited, which is the only fund that the Trustee alleges Mistral received subsequent transfers from; (vii) "Tremont" means Tremont Group Holdings, Inc. (f/k/a Tremont Capital Management, Inc. f/k/a Tremont Advisers, Inc. and together with its affiliates, including Tremont Partners, Inc. "Tremont Partners"; (viii) "Tremont Complaint" means ECF No. 1 in *Picard v. Tremont Group Holdings, Inc., et al.*, Adv. Pro. No. 10-05310 (cited herein as "Tremont Compl. ¶ __"); (ix) "Tremont Settlement" means, collectively, (i) the settlement agreement at ECF No. 17-1 and (ii) the order at ECF No. 38-1, each as filed on the docket in *Picard v. Tremont Group Holdings, Inc., et al.*, Adv. Pro. No. 10-05310 (Bankr. S.D.N.Y.); (x) the "Fairfield Amended Complaint" means ECF No. 23 in *Picard v. Fairfield Sentry Limited*, No. 08-01789 (BRL), Adv. Pro. No. 09-01239 (cited herein as "Fairfield Am. Compl. ¶ __"); (xi) "Fairfield Second Amended Complaint" means ECF No. 286 in *Picard v. Fairfield Sentry Ltd.*, Adv. Pro. No. 09-1239 (Bankr. S.D.N.Y. Aug. 28, 2020); and (xii) "Redemption Payments" means payments Mistral allegedly received in exchange for redeeming shares in Rye in the relevant time period, as identified in Ex. C of the AC (the "Redemption Payments"). Unless otherwise specified, all emphasis is added, and all citations and quotations are omitted.

[2] Mistral acknowledges that this Court recently denied motions to dismiss that included customer property and good-faith arguments in *Multi-Strategy* and *Banque SYZ* and several other subsequent transferee cases. *See, e.g.*, *Picard v. Multi-Strategy Fund Ltd.*, 2022 WL 2137073, at *11 (Bankr. S.D.N.Y. June 13, 2022) ("*Multi-Strategy*"); *Picard v. Banque SYZ & Co. SA*, 2022 WL 2135019, at *12 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque SYZ*"). Nevertheless, each of the arguments Mistral sets forth in this motion independently serves as a basis for dismissal for the reasons described in the motion. Unlike in *Banque SYZ*, Mistral's good faith is apparent on the face of the AC and independently mandates dismissal. And in *Banque SYZ*, this Court did not address the ruling in *Picard v. ABN Amro Bank N.A.*, 2020 WL 1584491, at *8 (Bankr. S.D.N.Y. Mar. 31, 2020) ("*ABN Amro N.A.*"), which held that surrendering shares in feeder funds for cash constitutes "value" for purposes of section 550(b).

constituted BLMIS customer property that was the subject of a prior voidable transfer from BLMIS to Rye.

The Court should independently dismiss the AC because Mistral's good-faith defense under Bankruptcy Code section 550(b) is evident from the face of the AC and the Tremont Complaint the AC incorporates. Establishing this defense requires Mistral to show only that it (i) provided value to the initial transferee (here, Rye) and (ii) took each transfer without knowledge that BLMIS was a fraudulent enterprise. Both elements are satisfied based solely on the AC's allegations. Decisions in BLMIS cases have long established that share redemptions in BLMIS feeder funds, like Rye, constitute value as a matter of law. And the incorporated Tremont Complaint as well as the Trustee's Amended Fairfield Complaint establish that Mistral could not plausibly have been expected to uncover Madoff's fraud. Those complaints plead that the feeder funds' management did such an effective job covering up their fraud that even the SEC, with all its investigative powers and the full potency of the federal government, was unable to expose Madoff's scheme. Surely, Mistral, a foreign bank, could not plausibly be expected to succeed where the U.S. government failed.

This case has been pending for well over a decade and the Trustee has had ample time to remedy the pleading deficiencies in the AC. For all of the foregoing reasons, the Court should dismiss the AC with prejudice.

## BACKGROUND

For the purpose of this Motion to Dismiss, the facts set forth below are drawn from allegations contained in the AC, which the Defendant neither admits nor concedes. As explained below, however, many of the Trustee's allegations are contradicted by documents the Trustee

expressly relies on and has himself filed in this action. This Court is not bound by the Trustee's false version of events, and should consider the inconsistencies and contradictions.[3]

**A. Mistral**

Mistral is a "corporate entity organized under the laws of the Cayman Islands." AC ¶ 50. It was "formed by Credit Suisse in September 2004 as a proprietary investment vehicle." *Id.* ¶ 51. At all relevant times, Mistral was "100% directly owned by Credit Suisse International and indirectly owned 100% by CS Group." *Id.* Mistral's purpose was "to provide investors with a vehicle to invest in hedge funds tracked by the CS/Tremont Index." *Id.* ¶ 54.

**B. The Funds**

Rye Portfolio Limited ("Rye") is a BLMIS feeder fund that "invested all or substantially all of [its] assets with BLMIS's investment advisory business." AC ¶ 2. Tremont "created, owned, managed and operated the Rye Select family of BLMIS feeder funds," including Rye. *Id.* ¶ 66.

**C. The Trustee's Actions Against Rye**

In 2011, the Trustee filed a complaint against, and subsequently settled with, the Liquidators of the Tremont Feeder Funds. *See generally* Tremont Compl.; Tremont Settlement. On September 22, 2011, the court approved a settlement between the Trustee and more than a dozen of the Tremont Feeder Funds, including Rye, that obligated the Tremont Settling Defendants collectively pay the Trustee $1.025 billion. Tremont Settlement at 6.

[3] *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018) (Bernstein, J.) ("*BNP Paribas*") ("court may consider prior iterations of pleadings containing statements inconsistent with the latest version"); *Dozier v. Deutsche Bank Tr. Co. Americas*, 2011 WL 4058100, at *2 (S.D.N.Y. Sept. 1, 2011) (courts "need not accept as true allegations that conflict with a plaintiff's prior allegations"); *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)* ("*Merkin*"), 515 B.R. 117, 137 (Bankr. S.D.N.Y. 2014) ("Where the complaint cites or quotes from excerpts of a document, the court may consider other parts of the same document submitted by the parties on a motion to dismiss.").

### D. The AC and Related Proceedings

The Trustee filed his original Complaint against Mistral on April 5, 2012. Then, more than a decade later, the Trustee filed this AC to recover from Mistral subsequent transfers of "Customer Property" from BLMIS feeder funds of $3,200,000. AC ¶ 2. The AC devotes most of its allegations to Madoff's Ponzi scheme and transfers from BLMIS to Rye. *See id*. ¶¶ 18-77. Rather than pleading facts plausibly to show that the Redemption Payments to Mistral included BLMIS customer property, the Trustee instead alleges in conclusory fashion that Rye "subsequently transferred a portion of the Initial Transfers to [Mistral]." *Id.* ¶ 156.

The Trustee does not identify which portions of these initial transfers from BLMIS to Rye were allegedly later transferred to Mistral as Redemption Payments. *See id.* Rather, the Trustee vaguely alleges that from "the inception of Rye Portfolio Limited's account with BLMIS to the Filing Date, BLMIS made transfers to Rye … of approximately $620,000,000 (the 'Initial Transfers')." *Id.* ¶ 152. And of the Initial Transfers, "$609,000,000 was transferred to Rye" during the six years preceding the Filing date (the 'Six Year Transfers')." *Id.* And of the Six-Year Transfers, "$350,000,000 was transferred to Rye" during the "two years preceding the Filing Date (the 'Two Year Transfers')." *Id.* ¶ 153. While the AC specifies the amounts,[4] it does not explain how those amounts were determined or how to trace those amounts from BLMIS to Mistral.

Despite having more than a decade to investigate and amend his complaint, the Trustee does not trace any specific Mistral redemption to BLMIS in the AC. Rather, the Trustee attaches nearly 15 pages of exhibits listing thousands of transactions among BLMIS and Rye. *See* AC,

[4] AC ¶ 156 ("Prior to the Filing Date, Rye … subsequently transferred … $3,200,000" to Mistral); *see also* AC, Ex. C.

Ex. B. The exhibit shows that payments came from BLMIS accounts designated for the benefit of Rye, referred to as "BLMIS Account No. 1FR080 - Rye Select Broad Market Portfolio Limited." *Id*. And while the AC includes schedules of alleged transfers from Rye to Mistral (*see* AC, Ex. C), the AC offers no details regarding the source of the funds that comprised these alleged transfers.

The Trustee also attempts to "incorporate by reference" the Tremont Complaint's allegations without specifying what portions of that complaint he seeks to incorporate. AC ¶ 78. The Tremont Complaint broadly alleges that BLMIS's operations were characterized by secrecy and a lack of transparency, and that Tremont was "provided only vague and inconsistent descriptions by Madoff of the split-strike conversion strategy," and Madoff "refused to explain why and when he would enter and exit the market." Tremont Compl. ¶ 89. Tremont also had a policy "prohibiting investors from meeting Madoff," and on occasions where Madoff did take meetings, he was "known to throw customers and potential customers out of his office if the questions became too controversial." *Id.* ¶ 90. The Trustee further alleged that Madoff repeatedly claimed that "everything being done was pursuant to a proprietary, confidential 'black box' strategy" and Madoff went to "extraordinary lengths to remain cloaked in secrecy." *Id.* ¶¶ 92, 199. These statements from the Tremont Complaint stand in opposition to the Trustee's assertion in the AC that Mistral had "actual knowledge" of Madoff's fraud. AC ¶ 155. Since the Trustee alleges only that Tremont *should have known* of Madoff's fraud, it is not plausible that Mistral, a subsequent transferee, could have had actual knowledge. *See* Tremont Compl. ¶¶ 89-199.

**LEGAL STANDARD**

A complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." A

claimant's allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" While the Court must accept well-pleaded factual allegations as true, it should not accept "legal conclusion[s] couched as factual allegations."

## ARGUMENT

Bankruptcy Code section 550 authorizes a trustee to recover the property *transferred by the debtor* to any transferee (initial or subsequent) "to the extent that a transfer is avoided under section … 548 … of this title." 11 U.S.C. § 550(a).[5] This requires the Trustee to plead that the funds he is attempting to recover from Mistral are property of the BLMIS estate. He does not do so, and therefore fails to state a claim under section 550(a) or section 78fff.

### I. THE AC DOES NOT PLAUSIBLY ALLEGE THAT THE MISTRAL REDEMPTIONS WERE BLMIS PROPERTY.

The AC must be dismissed because it does not plausibly plead that Mistral received BLMIS customer property—an indispensable element of the Trustee's claim.[6]

To state a claim under either section 550(a) or section 78fff, the Trustee must plausibly plead facts showing that the challenged subsequent transfer was estate property. *See* 11 U.S.C. § 550(a) (permitting recovery of estate property from subsequent transferee); SIPA § 78fff-2(c)(3) ("trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property"). In *Shapiro*, this Court described what the Trustee must plead to assert a subsequent transferee claim:

> The Trustee must allege facts that support the inference that the funds at issue originated with ... BLMIS, and contain the "necessary vital statistics"—the "who, when, and how much" of the transfers to establish that an entity was a subsequent

[5] *See also Picard v. Citibank, N.A.*, 12 F.4th 171, 181 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209 (2022).

[6] *Picard v. Shapiro*, 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (to state a claim under 11 U.S.C. § 550, the Trustee "must allege facts that support the inference that the funds at issue originated with the BLMIS, and contain the 'necessary vital statistics'—the 'who, when, and how much' of the transfers to establish that an entity was a subsequent transferee of the funds").

> transferee of the funds. At the pleading stage, the Trustee is not required to provide a "dollar-for-dollar accounting" of the exact funds at issue. However, barebones allegations that the funds at issue were transferred to the Subsequent Transferees, without more detail, are insufficient.[7]

The AC fails to include these details. Instead, the Trustee simply asserts that Rye "subsequently transferred a portion of the Initial Transfers to Defendants." AC ¶ 156. Exhibit B does not substantiate these allegations: it instead lists transfers from BLMIS to Rye without tying those transfers to the payment of any redemption request from Mistral. The "barebones" allegation that the transfers identified on Exhibit C (which specify the subsequent transfers at issue) originated with BLMIS is insufficient and mandates dismissal.[8]

In sum, the Trustee's failure to allege precisely which transfers to Mistral include customer property, and from which initial transfer each subsequent transfer originates, mandates dismissal.[9]

## II. THE TRUSTEE'S OWN PLEADINGS ESTABLISH MISTRAL'S GOOD-FAITH DEFENSE.

The AC's claims also fail in their entirety for the independent reason that Mistral's "good faith" defense under section 550(b), i.e., that Mistral took for value, in good faith, and without knowledge of the voidability of the transfer, is evident from the face of the AC itself. *See* 11 U.S.C. § 550(b).

---

[7] *Id.*

[8] *See id*. ("The SAC does not tie any initial transfer to any subsequent transfer or Subsequent Transferee. Moreover, it does not plausibly imply that the initial transferees even made subsequent transfers to the Subsequent Transferees as opposed to third parties, or that they made the subsequent transfers rather than simply keep the initial transfers for themselves.").

[9] *See Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc*., 712 F.3d 705, 709, 723 (2d Cir. 2013) (affirming dismissal and finding that "such imprecise pleading is particularly inappropriate here, where the plaintiffs necessarily have access, without discovery, to plan documents and reports that provide specific information from which to fashion a suitable complaint"); *Sapia v. Home Box Off., Inc*., 2018 WL 6985223, at *8 (S.D.N.Y. Dec. 17, 2018) (dismissing a claim where plaintiffs failed precisely to plead necessary facts that were "uniquely in [p]laintiffs' possession").

**A. Mistral Received the Redemptions for Value.**

The "value" that a subsequent transferee must give to assert the good-faith defense need not be reasonably equivalent.[10] "Had Congress intended to include a [reasonably equivalent value] requirement in [section 550(b)], it knew how to do so."[11] Congress did not. Thus, "value" under section 550(b) is "merely consideration sufficient to support a simple contract, analogous to the 'value' required under state law to achieve the status of a bona fide purchaser for value"—nothing more than a peppercorn.[12]

Here, it is evident from the AC's face that Mistral gave value to Rye. The AC alleges that the transfers at issue were from "subscription agreements," i.e., that Mistral surrendered interests in Rye in exchange for redemption payments. AC ¶ 72. Other BLMIS cases have confirmed that surrendering shares in feeder funds for cash constitutes "value" for purposes of section 550(b).[13] Thus, section 550(b)'s "value" element is satisfied as a matter of law.

**B. Mistral Acted in Good Faith and Could Not Have Discovered Madoff's Fraud Where So Many Others Failed.**

The Second Circuit recently held that, in evaluating a claim of good faith, courts must examine three factors:

1. "[W]hat facts the defendant actually knew; this is a subjective inquiry, not 'a theory of constructive notice.'"

---

[10] *See, e.g.*, *In re Enron Corp.*, 333 B.R. 205, 236 (Bankr. S.D.N.Y. 2005) ("There is no requirement that the value given by the transferee be a reasonable or fair equivalent.") (quoting 5 *Collier on Bankruptcy* ¶ 550.02 (Richard Levin & Henry J. Sommer eds., 16th ed. 2019)); *CLC Creditors' Grantor Tr. v. Howard Sav. Bank (In re Commercial Loan Corp.)*, 2010 WL 1730860, at *7 n.14 (Bankr. N.D. Ill. Apr. 29, 2010) ("Section 550(b)(1) requires 'value,' not 'reasonably equivalent value' or 'fair market value.'").

[11] *Ziparo v. CSX Transp.*, 15 F.4th 153, 161 (2d Cir. 2021); *see also Russello v. United States*, 464 U.S. 16, 23 (1982) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally.").

[12] *ABN Amro N.A.*, 2020 WL 1584491, at *8 (citing 5 *Collier on Bankruptcy* ¶ 550.03[1], at 550-25).

[13] *See id.* at *9 ("Surrendering equity interests constitutes value for purposes of section 550(b) because it is consideration sufficient to support a simple contract.").

2. "[W]hether these facts put the transferee on inquiry notice of the fraudulent purpose behind a transaction—that is, whether the facts the transferee knew would have led a reasonable person in the transferee's position to conduct further inquiry into a debtor-transferor's possible fraud."

3. "[W]hether 'diligent inquiry [by the transferee] would have discovered the fraudulent purpose' of the transfer."[14]

Thus, even if a transferee knows actual facts that put it on inquiry notice of a transfer's underlying fraudulent purpose, the transferee still takes the transfer in good faith unless a diligent inquiry would have uncovered that fraudulent purpose. Here, the AC, together with its incorporation by reference of the Tremont Complaint, alleges facts demonstrating that a diligent inquiry would not have revealed Madoff's fraud, establishing Mistral's good faith.

In the AC, the Trustee alleges various "red flags" that he suggests should have alerted investors to the fraudulent purposes of BLMIS's transfers to Tremont. AC ¶¶ 78-149. These include anecdotes of some investors and market analysts opining, at various times, that BLMIS *may* have been involved in improper activities. *Id*. But in its next breath, the Tremont Complaint, another case concerning all of the same facts that the Trustee attempts to incorporate by reference here, alleges that BLMIS's operations were characterized by secrecy and a lack of transparency, and that Tremont was "provided only vague and inconsistent descriptions by Madoff of the split-strike conversion strategy," and Madoff "refused to explain why and when he would enter and exit the market." Tremont Compl. ¶ 89. Tremont also had a policy "prohibiting investors from meeting Madoff," and on occasions where Madoff did take meetings, he was "known to throw customers and potential customers out of his office if the questions became too controversial." *Id.* ¶ 90. The Trustee further alleged that Madoff repeatedly claimed that "everything being done was pursuant to a proprietary, confidential 'black box' strategy" and

[14] *Citibank*, 12 F.4th at 191-92.

Madoff went to "extraordinary lengths to remain cloaked in secrecy." *Id.* ¶¶ 92, 199. These statements from the Tremont Complaint stand in opposition to the Trustee's assertion in the AC that Mistral had "actual knowledge" of Madoff's fraud. AC ¶ 154.

Moreover, in a nearly identical suit filed by this Trustee, he alleged that these furtive tactics worked. The Fairfield Amended Complaint acknowledges that in 2006, the SEC launched an investigation to determine whether BLMIS was a Ponzi scheme or engaged in other illegal activity, yet even the SEC—with its powerful investigative tools, expansive subpoena powers, and broad resources—was stymied by BLMIS and Sentry insiders seeking to hinder the government investigation. Fairfield Am. Compl. ¶¶ 351, 360–361. Accepting all the facts in that complaint as true, the only plausible inference to draw from the Trustee's pleading is that Mistral, which lacked the resources and power of one of the federal government's most potent regulatory agencies, could not reasonably have been expected to succeed where all others had failed.[15]

The Fairfield Amended Complaint and the Tremont Complaint thus affirmatively plead facts showing that a diligent inquiry would not have uncovered the transfers' fraudulent purpose, mandating dismissal as a matter of law.[16]

## CONCLUSION

The AC falls short of the most basic pleading requirements. The Trustee fails to allege that the funds transferred to Mistral were BLMIS property. The AC should also be dismissed for

---

[15] *BLD Prods., LLC v. Viacom, Inc.*, 2011 WL 1327340, at *10 (S.D.N.Y. Mar. 31, 2011), *aff'd in relevant part, vacated in part, remanded sub nom. BLD Prods., LLC v. Remote Prods., Inc.*, 509 F. App'x 81 (2d Cir. 2013) ("[This] Court need not accept factual allegations that are conclusory, implausible, or contradicted by exhibits to a complaint.").

[16] *Jones v. Bock*, 549 U.S. 199, 215 (2007) ("Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground."); *Gilmore v. Rivera*, 2014 WL 1998227, at *2 (S.D.N.Y. May 14, 2014) ("Dismissal under Fed. R. Civ. P. (12)(b)(6) is also proper if an affirmative defense, or other bar to relief, is apparent from the face of the complaint.").

the independent reason that it establishes on its face Mistral's good-faith defense. The Trustee's allegations show that Mistral received the redemptions for value, acted in good faith, and could not have discovered Madoff's fraud.

This lawsuit should be dismissed with prejudice.

Dated: August 15, 2022
New York, New York

Respectfully Submitted,

**O'MELVENY & MYERS LLP**

By: */s/ William J. Sushon*

William J. Sushon
Daniel S. Shamah
Kayla N. Haran
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
wsushon@omm.com
dshamah@omm.com
kharan@omm.com

*Attorneys for Defendant Mistral*