**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------- x
:
SECURITIES INVESTOR PROTECTION :
CORPORATION, :
:
Plaintiff-Applicant, : SIPA Liquidation
:
v. : No. 08-01789 (CGM)
:
BERNARD L. MADOFF INVESTMENT :
SECURITIES LLC, : (Substantively Consolidated)
:
Defendant. :
:
---------------------------------- X
In re :
:
BERNARD L. MADOFF, :
:
Debtor. :
:
---------------------------------- x
IRVING H. PICARD, Trustee for the Liquidation :
of Bernard L. Madoff Investment Securities LLC, :
:
Plaintiff, : Adv. Pro. No. 10-05345 (CGM)
:
v. : **ORAL ARGUMENT**
: **REQUESTED**
:
CITIBANK, N.A., CITICORP NORTH :
AMERICA, INC., AND CITIGROUP GLOBAL :
MARKETS LIMITED, :
:
Defendants. :
---------------------------------- x

**THE CITI DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO DISMISS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.    The Trustee Fails to Plead Facts Sufficient to Establish That BLMIS's Initial Transfers to Prime Fund and Fairfield Are Avoidable Under 11 U.S.C. § 548(a)(1)(A). ................................................................................................................ 2

        *A. The Amended Complaint fails to plead that the relevant initial transfers were made with actual fraudulent intent through badges of fraud.* ............................................. 2

        *B. The Ponzi scheme presumption cannot supplant pleading actual intent to defraud with respect to each initial transfer.* ........................................................................ 4

    II.   The Trustee's Principal Claim Against Citibank For Recovery of a $301 Million Loan Repayment Did Not Deplete the Estate. ............................................................... 9

    III.  The Trustee Fails to Plead Facts Sufficient to Support an Inference That $60 Million Of The Trustee's Claim Against CGML and Approximately $43 Million of the Trustee's Claim Against Citibank Are Traceable to BLMIS. ...................................... 12

CONCLUSION ............................................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009).................................................................................................... 13

*Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortg. Inv. Corp.)*,
256 B.R. 664 (Bankr. S.D.N.Y. 2000), *aff'd* 264 B.R. 303 (S.D.N.Y. 2001) ................... 7

*Daly v. Deptula (In re Carrozzella & Richardson)*,
286 B.R. 480 (D. Conn. 2002) ......................................................................................... 6

*In re Old CarCo LLC*,
435 B.R. 169 (Bankr. S.D.N.Y. 2010) ............................................................................. 9

*In re Purdue Pharma, L.P.*,
635 B.R. 6 (S.D.N.Y. 2021) ............................................................................................. 4

*Johnson v. Holder*,
564 F.3d 95 (2d Cir. 2009) ............................................................................................... 5

*Lustig v. Weisz & Assocs., Inc. (In re Unified Commercial Capital, Inc.)*,
260 B.R. 343 (Bankr. W.D.N.Y. 2001) ........................................................................... 4

*Orr v. Kinderhill Corp.*,
991 F.2d 31 (2d Cir. 1993) . Application of the ............................................................. 9

*Pereira v. WWRD US, LTD (In re Waterford Wedgewood USA, Inc.)*,
500 B.R. 371 (Bankr. S.D.N.Y. 2013) ............................................................................. 9

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Investment Securities LLC)*,
12 F.4th 171 (2d Cir. 2021) .......................................................................................... 4, 5

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
454 B.R. 317 (Bankr. S.D.N.Y. 2011) ........................................................................... 12

*Picard v. Gettinger (In re Bernard L. Madoff Investment Securities LLC)*,
976 F.3d 184 (2d Cir. 2020) ......................................................................................... 7, 8

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
515 BR 117 (Bankr. S.D.N.Y. 2014) ........................................................................ 12, 13

*Sharp Int'l Corp. v. State Street Bank and Trust Co. (In re Sharp Int'l. Co.)*,
403 F.3d 43 (2d Cir. 2005)............................................................................................ passim

*Sunbeam Corp. v. Morgan Stanley & Co., Inc. (In re Sunbeam Corp.)*,
284 B.R. 355 (Bankr. S.D.N.Y. 2002) ............................................................................ 9

*Tese-Milner v. Bon Seung Kim (In re Level 8 Apparel, LLC)*,
No. 19-1335 (JLG), 2021 WL 279620 (Bankr. S.D.N.Y Jan. 26, 2021) ........................... 3, 5

*University Medical Center v. Sullivan (In re Univ. Med. Ctr.)*,
937 F.2d 1065 (3d Cir. 1991) ........................................................................................ 10, 11

*Verestar, Inc. v. Am. Towers Corp. (In re Verestar, Inc.)*,
343 B.R. 444 (Bankr. S.D.N.Y. 2006) ............................................................................ 3

*Welt v. Publix Super Markets, Inc. (In re Phoenix Diversified Inv. Corp.)*,
No. 10-03005-EPK, 2011 WL 2182881 (Bankr. S.D. Fla. June 2, 2011) ........................ 8

*Westinghouse Credit Corp. v. D'Urso*,
728 F.3d 138 (2d Cir. 1998) ........................................................................................... 10, 11

## **Other Authorities**

11 U.S.C. 548(a)(1)(B) .................................................................................................. 7

11 U.S.C. § 548(a)(1)(A) ............................................................................................... passim

The Citi Defendants[1] submit this reply memorandum of law (the "Reply") in further support of their Motion to Dismiss the Trustee's Amended Complaint.

**PRELIMINARY STATEMENT**

The Citi Defendants' Motion demonstrated the Trustee's failure to adequately plead his entitlement to approximately $343 million that Citibank received from Prime Fund as repayment on a loan and $100 million in payments that CGML received from Fairfield Sentry in connection with its redemption of Fairfield Sentry shares held as a hedge on a swap that CGML entered with a counterparty seeking synthetic exposure to Fairfield Sentry. The Trustee's Opposition fails to justify or cure these deficiencies.

*First,* the Trustee fails to substantiate that his allegations about BLMIS's business enterprise as a whole are sufficient to plead that the initial transfers at issue here were made with actual fraudulent intent, as required by Section 548(a)(1)(A) of the Bankruptcy Code. The Trustee ignores entirely the plain language of Section 548(a)(1)(A) and Federal Rule of Civil Procedure 9(b), and asks the Court to assume facts about the initial transfers that have not been alleged. Accordingly, the claims against the Citi Defendants must be dismissed.

*Second*, the Trustee's argument that the $301 million loan repayment from Prime Fund to Citibank depleted the estate because it cannot be viewed as part of a round-trip transaction is unavailing. The Trustee's own allegations in other actions in these SIPA proceedings show that Tremont made the Prime Fund-to-Citibank subsequent transfer as part of an integrated series of transactions that ultimately did not result in depletion of estate funds. Because the Prime Fund-

---

[1] Unless otherwise indicated, capitalized terms have the definitions given them in the Memorandum of Law in Support of the Citi Defendants Motion to Dismiss the Amended Complaint (D.I. 224, the "Motion" or "Motion to Dismiss"). The Trustee's memorandum of law in opposition to the Motion (D.I. 231) is defined here as the "Opposition."

1

to-Citibank payment did not result in depletion of the estate, the claim for $301 million as to Citibank should be dismissed.

*Third*, the Trustee's Opposition continues to rely upon conclusory allegations to establish that the subsequent transfers received by the Citi Defendants are traceable to avoidable initial transfers. But generalized allegations about the nature of BLMIS's enterprise, especially in a case where the Trustee has had significant access to discovery from the initial transferees for over a decade, are insufficient to satisfy the Trustee's pleading burden. At bottom, the Amended Complaint does not raise a plausible inference that $60 million of the claims against CGML and $43 million of the claims against Citibank are linked to voidable initial transfers.

## ARGUMENT

**I.  The Trustee Fails to Plead Facts Sufficient to Establish That BLMIS's Initial Transfers to Prime Fund and Fairfield Are Avoidable Under 11 U.S.C. § 548(a)(1)(A).**

### *A. The Amended Complaint fails to plead that the relevant initial transfers were made with actual fraudulent intent through badges of fraud.*

As the Citi Defendants demonstrated in their Motion, the plain language of Section 548(a)(1)(A) and Rule 9(b) require that the Trustee plead fraudulent intent *as to the particular transfers* that he seeks to avoid. *See* Motion at 9-10 (citing cases). The Trustee, as the party seeking to avoid the transfers, bears the burden of pleading actual intent as to each transfer he seeks to avoid. *See Sharp Int'l Corp. v. State Street Bank and Trust Co. (In re Sharp Int'l. Co.)*, 403 F.3d 43, 56 (2d Cir. 2005).

Here, the Amended Complaint and the Opposition are silent as to "badges of fraud" concerning the initial transfers that the Trustee claims the Citi Defendants received as secondary transferees. *See* Motion at 11; Amended Complaint ¶ 168. The Trustee's Opposition misses the point when it invokes allegations that "BLMIS was an operation built on the concealment of

2

facts and false pretenses," "BLMIS commingled customer funds" and used them to make payments to other customers rather than to purchase securities, and "Madoff admitted that the IA business operated a Ponzi scheme." See Trustee Opp. at 17. None of these asserted "badges of fraud" applicable to BLMIS generally speaks to the particular initial transfers at issue in this action, let alone raises a plausible claim that these specific transfers were made "with actual intent to hinder, delay, or defraud" creditors. 11 U.S.C. § 548(a)(1)(A). In other words, the Trustee's allegations relate to the nature of the enterprise as a whole, not to the specific initial transfers. Contrary to the Trustee's assertions, in the absence of the Ponzi scheme presumption—which as discussed *infra* in Section B should not be applied here—such general assertions about the Debtors' enterprise are insufficient to establish actual fraudulent intent. *See Verestar, Inc. v. Am. Towers Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 468 (Bankr. S.D.N.Y. 2006) (concluding that allegations that transfers were made for less than reasonably equivalent value "combined with . . . an alleged overall 'pattern of inappropriate transfers' and 'general chronology of events'" were insufficient to support a claim of actual fraudulent transfer); *Tese-Milner v. Bon Seung Kim (In re Level 8 Apparel, LLC)*, No. 19-1335 (JLG), 2021 WL 279620, at *12 (Bankr. S.D.N.Y Jan. 26, 2021) ("The Trustee's reference to the intentional fraudulent transfer of 'all assets' of the Debtors does not comport with Rule 9(b)'s mandate that allegations of fraud be pled with particularity").

Nor can the Trustee satisfy his burden by arguing that BLMIS was insolvent "at all relevant times." Trustee Opp. at 17. As discussed in the Motion, insolvency does not denote actual intent to defraud with respect to a particular transfer. *See* Motion at 12-13 (citing cases). Accordingly, an allegation of insolvency alone, without additional badges of fraud that together "give rise to an inference of intent," *Sharp*, 403 F.3d at 56, is insufficient to establish a claim for

3

actual fraudulent conveyance. In the absence of allegations establishing that the relevant initial transfers had any of the badges of fraud—essentially proxies for actual fraudulent intent—the Trustee has merely established that one transferee was paid in advance of another; the Trustee has not established that such transfers are properly classified as fraudulent conveyances rather than preferences. *See* Motion at 14 (citing cases).

### B. The Ponzi scheme presumption cannot supplant pleading actual intent to defraud with respect to each initial transfer.

The Trustee advances several arguments to establish that the Ponzi scheme presumption is neither overbroad nor inconsistent with the plain language of Section 548(a)(1)(A). *See* Trustee Opp. at 8-10. As an initial matter, though, none of his arguments relies on any of the actual statutory language in Section 548(a)(1)(A), nor could they. *See Picard v. Citibank, N.A. (In re Bernard L. Madoff Investment Securities LLC)*, 12 F.4th 171, 202 (2d Cir. 2021) (Menashi, J., concurring) (noting that the Ponzi scheme presumption is inappropriate because it "obscures the essential distinction between fraudulent transfers and preferences" and that its "use of the fraudulent transfer statute is questionable."); *Lustig v. Weisz & Assocs., Inc. (In re Unified Commercial Capital, Inc.)*, 260 B.R. 343, 350 (Bankr. W.D.N.Y. 2001) ("By forcing the square peg facts of a 'Ponzi' scheme into the round holes of the fraudulent conveyance statutes . . . many courts have done a substantial injustice to those statutes"). The presumption is not in the Bankruptcy Code. *See In re Purdue Pharma, L.P.*, 635 B.R. 6, 110 (S.D.N.Y. 2021) ("[T]he Bankruptcy Code 'provides a *comprehensive* federal system . . . .' Reading elements that do not appear in the text of the Code into the Code is the antithesis of comprehensiveness." (emphasis in original)). The Trustee also does not solve the conflict between the statutory text and the presumption by arguing that the presumption is limited only "to transfers related to or in furtherance of the Ponzi scheme." Trustee Opp. at 9. That is, the Trustee cannot justify applying

4

a presumption with no basis in the Bankruptcy Code based on the "assurance" that it will be applied only in "limited" circumstances. *See Purdue*, 635 B.R. at 109 (refusing to "insert a right that does not appear in the Bankruptcy Code in order to achieve a bankruptcy objective" where "there is nothing in the Bankruptcy Code that specifically authorizes" the requested relief). Any application of the presumption—even if limited to particular circumstances—allows the Trustee to circumvent the pleading burden established by the plain text of the Bankruptcy Code and Rule 9(b).

Next, the Trustee says that the Ponzi scheme presumption does not run afoul of Section 548(a)(1)(A) because it is a rebuttable presumption that can be overcome by evidence to the contrary. *See* Trustee Opp. at 10. As the party seeking to avoid a transfer, however, the Trustee bears the burden of establishing the requisite level of fraudulent intent, which also means he has the burden of pleading that actual intent. *See Sharp*, 403 F.3d at 56; *Level 8 Apparel*, 2021 WL 279620 at *12 ("The Trustee has failed to meet her burden of pleading facts supporting her contention that [defendant] acted with actual intent to defraud"); *cf. Citibank, N.A*, 12 F.4th at 196 (holding that because Sections 548(c) and 550(b)(1) of the Bankruptcy Code set forth the affirmative offense of good faith, the Trustee does not have burden to plead a transferee's lack of good faith). The Trustee is not entitled to an extra-statutory waiver of his burden of pleading the requisite level of intent as to the transfers he seeks to avoid.

Even if some courts in this circuit have applied the Ponzi scheme presumption to initial transfers from fraudulent enterprises, *see* Trustee Opp. at 7-8, this Court should not do so in the context of the instant case. *See Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (noting that courts may depart from decisions made during earlier stages of a case when "cogent and compelling reasons militate otherwise"). As a practical matter, there is little justification for

5

relieving the Trustee of his pleading burden at this stage in the litigation given that he has had access to substantial discovery from the relevant initial transferees for more than ten years. *See* Motion at 23-24. Further, even if the presumption were provided for by the Bankruptcy Code, the Trustee's pleading deficiencies as to actual fraudulent intent are interrelated with and compounded by his failure to link a significant amount of the subsequent transfers that he seeks to recover to any particular initial transfer. *See infra*, Part III. Applying the presumption where the Citi Defendants cannot even be sure *which* initial transfers are at issue inequitably deprives them of any meaningful opportunity to rebut the presumption.

The Citi Defendants identified several cases in the Motion in which courts have cast doubts on the legitimacy of the Ponzi scheme presumption, *see* Motion at 15, but the Trustee argues that these cases are inapplicable because they "focus on whether the presumption conclusively establishes a lack of reasonably equivalent value as an element of *constructive* fraudulent conveyance, or purely as a question of state law, or both." Trustee Opp. at 10 (emphasis in original). But this argument fails. First, to the extent that the cases cited by the Citi Defendants address the Ponzi scheme presumption in the context of state law fraudulent conveyance claims, courts have acknowledged that Section 548(a)(1) and state fraudulent conveyance law are governed by the same legal principles. *See, e.g., Daly v. Deptula (In re Carrozzella & Richardson)*, 286 B.R. 480, 483 n. 3 (D. Conn. 2002) ("With few exceptions, the basic principles governing fraudulent transfer actions are the same, regardless of the statutory basis used.").

Further, the Trustee mischaracterizes these cases. In *Finn v. Alliance Bank*, for example, the court reviewed the Ponzi scheme presumption's applicability to both actual and constructive fraudulent transfer claims. *See* 860 N.W.2d 638, 645 (Minn. 2015). The court in *Finn* rejected

6

the Ponzi scheme presumption because the relevant fraudulent conveyance statute "does not contain a provision allowing a court to presume fraudulent intent" and "there is no statutory justification for relieving the Receiver of its burden of proving . . . fraudulent intent." *Id.* at 647. In general, however, even cases addressing constructive fraudulent conveyance claims are probative here because the elements of a constructive fraudulent conveyance claim overlap with the badges of fraud a trustee may rely upon to establish fraudulent intent. *Compare* 11 U.S.C. 548(a)(1)(B) (requiring a trustee alleging constructive fraudulent conveyance to establish that the transfer was not for reasonably equivalent value and that either (1) the debtor was insolvent, (2) the transaction would have rendered the debtor insolvent, (3) that the debtor "intended to incur . . . debts that would be beyond the debtor's ability to pay," or (4) that the transfer was made to an insider), *with, e.g., Sharp*, 403 F.3d at 56 (identifying lack of adequate consideration and an insider relationship as examples of badges of fraud that may give rise to an inference of actual fraudulent intent). The analysis in constructive fraud cases is accordingly still instructive, applicable, and relevant in the context of actual fraudulent conveyances. *See, e.g., Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortg. Inv. Corp.)*, 256 B.R. 664, 681 (Bankr. S.D.N.Y. 2000), *aff'd* 264 B.R. 303, 308 (S.D.N.Y. 2001) (instructing that "[t]he fact that the debtor's enterprise as a totality is operated at a loss, or in a manner that is fraudulent, does not render *actually or constructively* fraudulent a particular transaction which in and of itself is not fraudulent in any respect.") (emphasis added).

      The Trustee's arguments that *Sharp International Corp. v. State Street Bank and Trust Co. (In re Sharp International Corp)* is inapplicable also fail. Invoking *Picard v. Gettinger (In re Bernard L. Madoff Investment Securities LLC)*, 976 F.3d 184, 200 (2d Cir. 2020), the Trustee claims that "*Sharp*'s reasoning is specifically inapplicable in this SIPA liquidation proceeding."

7

*See* Trustee Opp. at 12.  The *Gettinger* court's focus, however, was on the boundaries of the "for value" defense under Section 548(c) of the Bankruptcy Code in a SIPA liquidation, and the court addressed *Sharp* in that context.  *See Gettinger*, 976 F.3d at 200.  The *Gettinger* court did not address the relevance of *Sharp* generally in the context of avoidance actions under Section 548(a)(1) or foreclose application of *Sharp*'s general guidance as to pleading standards and badges of fraud in the fraudulent conveyance context.  *See id.*  And while *Sharp* focused primarily on constructive fraudulent conveyance claims, the court also addressed an actual fraudulent conveyance claim (where the badges of fraud analysis overlapped with the constructive fraudulent analysis).  *See Sharp*, 403 F.3d at 53-55, 56.

      Finally, the Trustee contends that the Ponzi scheme presumption should apply in this action in part because he has sufficiently alleged that the initial transfers were made in furtherance of the Ponzi scheme.  Trustee Opp. at 15.  But the Amended Complaint furnishes no facts regarding these initial transfers.  As the Citi Defendants explained, "a debtor's simple return of an investor's money does not attract new investors, nor further the Ponzi scheme."  Motion at 16.  Return of an investor's principal is not in furtherance of the Ponzi scheme, but rather a payment of antecedent debt.  *Id.*  By relying entirely on general allegations about BLMIS the Trustee fails to establish that the initial transfers at issue were made in furtherance of the Ponzi scheme as would be necessary to warrant application of the presumption.  *Welt v. Publix Super Markets, Inc. (In re Phoenix Diversified Inv. Corp.)*, No. 10-03005-EPK, 2011 WL 2182881, at *3 (Bankr. S.D. Fla. June 2, 2011) ("[T]he existence of a Ponzi scheme coupled with transfers by the debtor, without evidence tying the transfers to perpetuation of the scheme, will not implicate the Ponzi scheme presumption.").

II.   **The Trustee's Principal Claim Against Citibank For Recovery of a $301 Million Loan Repayment Did Not Deplete the Estate.**

In their Motion, the Citi Defendants demonstrated that the $301 million Prime Fund-to-Citibank loan repayment that the Trustee seeks to recover did not deplete the estate because Citibank's loan was immediately replaced by funding from another lender. *See* Motion at 17-18. The Trustee argues that "[t]he facts do not support Defendants' assertion that a series of separate transactions formed an integrated 'round-trip' transaction" because "[t]he $301 million Prime Fund subsequently transferred to Citibank and Citicorp never returned to BLMIS." Trustee Opp. at 19-20. The relevant question, however, is not whether the Citi Defendants returned the $301 million to BLMIS, but rather whether the $301 million transfer to Citibank, as part of an integrated series of transactions, actually resulted in a depletion of the estate's assets. *See Pereira v. WWRD US, LTD (In re Waterford Wedgewood USA, Inc.)*, 500 B.R. 371, 379 (Bankr. S.D.N.Y. 2013) ("The real test of a fraudulent conveyance is the unjust diminution of the debtor's estate.") (internal quotations omitted). There cannot be a successful fraudulent conveyance claim without depletion of the estate. *See* Motion at 17 (citing cases).

In the fraudulent conveyance context, the integrated transaction doctrine directs that "interrelated yet formally distinct steps in an integrated transaction may not be considered independently of the overall transaction." *Waterford*, 500 B.R. at 379 (internal quotations omitted); *see also Orr v. Kinderhill Corp.*, 991 F.2d 31, 35-36 (2d Cir. 1993) (applying the integrated transaction doctrine in the fraudulent conveyance context). Application of the integrated transaction doctrine is not limited to situations where the two transfers at issue were between the same parties; "[c]ourts have 'collapsed' a series of transactions into one transaction when it appears that despite the formal structure erected and the labels attached, the segments, in reality, comprise a single integrated scheme when evaluated focusing on the knowledge and

9

intent of the parties involved in the transaction." *Sunbeam Corp. v. Morgan Stanley & Co., Inc. (In re Sunbeam Corp.)*, 284 B.R. 355, 370 (Bankr. S.D.N.Y. 2002); *see also In re Old CarCo LLC*, 435 B.R. 169, 183-184 (Bankr. S.D.N.Y. 2010) (treating transactions under several different agreements and involving several parties as an integrated transaction where they were all contemplated as part of a larger restructuring plan). Accordingly, where formally separate transactions were entered into and conceived of by the parties as part of one, integrated transaction, treating them as such is appropriate. The Trustee's attempt to divorce the Prime Fund-to-Citibank transfer from the interrelated series of transactions in connection with which it was made is overly formalistic in a context in which the law requires analysis of substance over form. *See Orr*, 991 F.2d at 36 ("Thus, an allegedly fraudulent conveyance must be evaluated in context; [w]here a transfer is only a step in a general plan, the plan must be viewed as a whole with all its composite implications.") (internal quotations omitted).

The facts alleged as to these transactions evince Tremont's intent for the $475 million withdrawal and subsequent reinvestment to function as part of an integrated series of transactions. Tremont made its request to BLMIS for the initial $475 million Prime Fund withdrawal to pay back Citibank's loan on March 12, 2008, specifying that the funds should be transferred on March 25, 2008. *See* Original Compl. at ¶ 84; *see also* Motion at 18. In conjunction, Tremont arranged to obtain replacement funding from another bank and immediately reinvested the funds. *See* Tremont Complaint at ¶ 198, *Tremont Action*, No. 10-5310, D.I. 1 (noting that "Tremont sought out another bank that would continue providing leverage" in replacement of Citibank). The straightforward loan repayment to Citibank thus did not deplete the estate as the money was immediately replaced by funding from another lender. The Trustee cannot have it both ways—i.e. argue in the context of defending his pleading

10

deficiencies as to actual fraudulent intent and tracing that he need not plead facts as to the particular transactions at issue, while here arguing that he need focus only on the transfer from Prime Fund to Citibank while ignoring the other interrelated transactions that brought money into the estate.

To support his argument that the outgoing BLMIS-to-Prime Fund transfer—from which Citibank allegedly received the $301 million loan repayment—and the incoming Broad Market-to-BLMIS transfer made shortly thereafter should not be viewed as a "round-trip" transaction, the Trustee relies on *Westinghouse Credit Corp. v. D'Urso*, 728 F.3d 138 (2d Cir. 1998), and *University Medical Center v. Sullivan (In re Univ. Med. Ctr.)*, 937 F.2d 1065, 1079 (3d Cir. 1991). Both cases, however, are distinguishable because neither involves application of the integrated transaction doctrine to an avoidance action under Section 548(a)(1)(A). The issue in *Westinghouse* was the availability of recoupment or setoff between an arbitration award and a separate judgment; the Citi Defendants are not arguing for recoupment here. *See Westinghouse*, 728 F.3d. at 144, 146. Likewise, the question before the court in *University Medical Center v. Sullivan* was the ability to set off payments incurred pre-petition and post-petition. *See Sullivan*, 973 F.2d at 1079 (addressing whether a creditor could "recover pre-petition overpayments [from the debtor] by withholding . . . post-petition reimbursement" that it owed to the debtor without violating the automatic stay).

Finally, The Trustee urges this Court that application of the integrated transaction doctrine would "be inequitable to all BLMIS customers" because it would disrupt the net equity calculation that formed the basis of a settlement the Trustee entered into with certain entities not party to this action. Trustee Opp. at 21. The Citi Defendants were not a party to the settlement agreement that the Trustee references nor to the action from which that settlement agreement

11

arose, and their arguments are not precluded merely because the Trustee believes they do not comport with the premises underlying a settlement agreement that he entered into with a different party in a different action. The Citi Defendants argue that the $301 million loan repayment to Citibank is not avoidable because it was part of an integrated series of transactions that ultimately did not deplete the BLMIS estate; whether or how this was accounted for in the Trustee's settlement agreement with Tremont is irrelevant to the merits of the Citi Defendants' argument.

**III.    The Trustee Fails to Plead Facts Sufficient to Support an Inference That $60 Million Of The Trustee's Claim Against CGML and Approximately $43 Million of the Trustee's Claim Against Citibank Are Traceable to BLMIS.**

As demonstrated in the Motion, *see* Motion at 19-23, the Trustee has failed to "allege sufficient facts to support the inference that the funds at issue originated with the debtor" and to "establish an entity as a subsequent transferee of the [avoidable] funds." *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 BR 117, 149-150 (Bankr. S.D.N.Y. 2014) (internal quotation omitted). Trying to rescue his deficient pleading, the Trustee argues that the Citi Defendants misstate the pleading burden and insist on something like a "dollar-for-dollar accounting." Trustee Opp. at 26-28. That is a strawman. The Trustee's claims as to $60 million in transfers allegedly received by CGML and approximately $43 million received by Citibank fail under the standard reflected in the very cases cited by the Trustee, and urged by the Citi Defendants in the Motion. *See* Motion at 19-20; Trustee Op. at 26-27.

In those cases, courts consider factors—including the close temporal proximity between the alleged initial and subsequent transfers, whether corresponding amounts of money were transferred and whether general details surrounding the transfers imply linkage—all plainly absent here. *See, e.g., Merkin*, 515 B.R. at 150 (concluding that linkage was sufficiently implied where "several subsequent transfers took place contemporaneously or shortly after an initial

12

transfer," including, for example, within 22 days, 15 days, 18 days, and 3 days of the initial transfers);[2] *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317, 341 (Bankr. S.D.N.Y. 2011) (finding the allegations sufficient to support linkage where the trustee "allege[d] that the amounts of Commissions specified by BLMIS on the Payment Schedules correspond[ed] to the amounts paid by BLMIS to [initial transferees] and, subsequently, to [subsequent transferees]").

Here of course, there are no such factual linkages pleaded. As to the $60 million alleged transfer from Fairfield Sentry to CGML made on April 14, 2008, the Trustee simply asserts that it was comprised of BLMIS customer funds and derived from an avoidable initial transfer from BLMIS to Fairfield Sentry. *See* Am. Compl. ¶ 169. That is plainly insufficient. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"). The Trustee's failure on this score is all the more telling given the lapse in time between the $60 million subsequent transfer to CGML and the closest preceding initial transfer to Fairfield Sentry. *See* Motion at 20.

In the Motion, the Citi Defendants established that the facts alleged in the Amended Complaint not only fail to support an inference of linkage between the relevant initial and subsequent transfers, but actually render such linkage implausible because of the significant time elapsed between transfers. *See* Motion at 20-22. The closest preceding initial transfer took place over three months prior to the CGML subsequent transfer, in the amount of $70 million. *See* Motion at 20; *see also* Am. Compl., Ex. B. That the relevant initial and subsequent transfers are separated by over three months alone renders linkage between them implausible, as it exceeds

---

[2] Although the *Merkin* court seems to suggest that a larger time gap between initial and subsequent transfers may still suggest linkage, *see Merkin*, 515 B.R. at 151, *Merkin* did not involve allegations of intervening subsequent transfers to other entities exceeding the amount of the initial transfer during that gap, as are present in this case.

13

the timeframe from which courts have generally inferred linkage. *See, e.g., Merkin*, 515 B.R. at 150-51. The implausibility of the link between the initial and subsequent transfers is only compounded by the Trustee's apparent assertion that during the three month period between the $70 million initial transfer to Fairfield Sentry and the $60 million subsequent transfer to CGML, Fairfield Sentry transferred an aggregate amount of $141 million to other subsequent transferees not party to this action, more than twice the amount it received from BLMIS during that timeframe. *See* Motion at 21; Boccuzzi Decl. ¶¶ 7-9 (D.I. 223).[3]

So too with approximately $43 million of the alleged subsequent transfers from Prime Fund to Citibank and the avoidable initial transfers from BLMIS to Prime Fund. *See* Motion at 22-23. Again, the Trustee simply asserts that these subsequent transfers contained "a portion" of the initial BLMIS-to-Prime Fund transfers. *See* Am. Compl. at ¶ 178. And again, the factors and circumstances that generally support an inference of linkage between initial and subsequent transfers—such as temporal proximity and corresponding amounts of money—are clearly missing here. For example, one of the subsequent transfers to Citibank that the Trustee seeks to recover took place on March 4, 2008, 433 days after the closest preceding initial transfer on December 27, 2006. *Compare* Am. Compl., Ex. E, *with* Am. Compl., Ex. F. In fact, at least 18 of the subsequent transfers to Citibank that the Trustee seeks to recover were separated from the closest preceding initial transfer by more than 120 days. *Id.*; *see also* Motion at 22-23 (providing additional examples).

The Trustee also asserts that the Citi Defendants' arguments must fail at the pleading stage because "fact-based tracing arguments are inappropriate at the motion to dismiss stage"

---

[3] The Trustee's claims that the Boccuzzi Declaration borders on improper expert testimony is absurd. *See* Trustee Opp. at 29, n. 17. The Citi Defendants have not applied an undefined, complicated tracing methodology. The Citi Defendants merely compared the Trustee's own allegations in recovery actions against other subsequent transferees within these SIPA proceedings. *See* Motion at 21.

14

and the Citi Defendants "do not disclose the tracing methodology . . . they relied upon." Trustee Opp. at 29. To the extent that the Citi Defendants' tracing arguments are fact-based, they rely only on facts *as alleged by the Trustee*. The Citi Defendants have not introduced information from outside the bounds of the Trustee's own pleadings; the Trustee's own allegations, taken as true, demonstrate the insufficiency of the Trustee's pleading here.

Finally, the Trustee argues that "[t]his is not a case where the Court should prematurely cut off the Trustee's ability to trace the subsequent transfers at the pleading stage." Trustee Opp. at 33. Although some courts have expressed a willingness to grant a trustee "greater latitude" at the pleading stage, *see* Motion at 23, the justifications for doing so are inapplicable in the instant case, where the Trustee has had access to significant amounts of discovery from Prime Fund and Fairfield Sentry for more than ten years pursuant to settlement agreements with those entities. *See* Motion at 23-24; Fairfield Settlement Agreement, *Picard v. Fairfield Inv. Fund Ltd. (In re Bernard L. Madoff Investment Securities LLC)*, Adv. Proc. No. 09-1239 (Bankr. S.D.N.Y. May 9, 2011) (D.I. 69-2); Tremont Settlement Agreement, *Irving H. Picard v. Tremont Group Holdings, Inc. (In re Bernard L. Madoff Investment Securities LLC)*, Adv. Pro. No. 10-5310 (Bankr. S.D.N.Y. July 28, 2011) (D.I. 17). As discussed in the Motion, the Trustee's access to myriad records should make him "well-positioned to map out the flow of funds from BLMIS to all subsequent transferees." Motion at 24. The fact that he cannot do so is just one more confirmation that his complaint is without merit. Further, it is unclear, and the Trustee does not identify, what additional factual information the Trustee is likely to uncover from materials in the custody of the Citi Defendants that would remedy the pleading deficiencies identified in the Motion concerning alleged initial transfers as between either BLMIS and Fairfield Sentry or BLMIS and Prime Fund.

## CONCLUSION

For the foregoing reasons, in conjunction with those included in the Motion, the Citi Defendants respectfully reiterate their request that the Court: (1) dismiss CGML from this action, or, in the alternative, dismiss the claim against CGML as it pertains to the $60 million alleged subsequent transfer; and (2) dismiss the action against Citibank, or, in the alternative, dismiss the claim against Citibank as it pertains to the aggregate $42,061,207 in alleged subsequent transfers.

Dated: August 15, 2022
      New York, New York

                          CLEARY GOTTLIEB STEEN & HAMILTON LLP

                          By: */s/ Carmine D. Boccuzzi, Jr.*
                              Carmine D. Boccuzzi, Jr.
                              (cboccuzzi@cgsh.com)
                              One Liberty Plaza
                              New York, New York 10006
                              T: 212-225-2000
                              F: 212-225-3999

                              *Attorneys for Citibank, N.A., Citicorp North America, Inc., and Citigroup Global Markets Limited*