**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1000
Fax: (212) 262-1215

*Special Counsel for Irving H. Picard, Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and the Chapter 7 Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　　Plaintiff-Applicant,<br><br>　v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　　Defendant. | Adv. Pro. No. 08-01789 (CGM)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>　　　　　　Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>CREDIT SUISSE AG; CREDIT SUISSE AG, NASSAU BRANCH; CREDIT SUISSE (LUXEMBOURG) SA; CREDIT SUISSE INTERNATIONAL; CREDIT SUISSE NOMINEES (GUERNSEY) LIMITED; CREDIT SUISSE LONDON NOMINEES LIMITED; and CREDIT SUISSE (UK) LIMITED;<br><br>　　　　　　Defendants. | Adv. Pro. No. 11-02925 (CGM) |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO**
**<u>DEFENDANTS' MOTIONS TO DISMISS</u>**

## TABLE OF CONTENTS

**Page**

### Contents

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS ....................................................................................4

    I.    THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS...............................4

    II.    DEFENDANTS AND THEIR INVESTMENTS IN THE FAIRFIELD FUNDS ................................................................................4

ARGUMENT ..............................................................................................6

    I.    THE TRUSTEE'S COMPLAINT SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE FAIRFIELD FUND INITIAL TRANSFERS ............6

    II.    THE TRUSTEE'S COMPLAINT PLAUSIBLY PLEADS THAT DEFENDANTS RECEIVED BLMIS CUSTOMER PROPERTY UNDER SECTION 550(A) ........................................................................9

        A.    Defendants Misstate the Trustee's Pleading Burden ................................11

        B.    Defendants' Remaining Arguments Regarding Implausibility Fail on a Motion to Dismiss ....................................................................12

    III.    THE SECTION 550(B) GOOD FAITH AFFIRMATIVE DEFENSE CANNOT BE RESOLVED AT THE MOTION TO DISMISS STAGE...............15

    IV.    SECTION 546(E) DOES NOT BAR RECOVERY FROM DEFENDANTS.......18

        A.    The Fairfield Funds Had Actual Knowledge of Madoff's Fraud ..............19

        B.    Section 546(e) Does Not Apply Independently to Recovery Actions .......20

CONCLUSION ............................................................................................25

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
    599 B.R. 730 (Bankr. S.D.N.Y. 2019) .......................................................................... 10-11

*Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670 (Bankr. E.D. Pa. 2010) .......................... 6

*CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*,
    393 B.R. 306 (Bankr. W.D.N.Y. 2008) ................................................................................ 13

*Constellation Energy Commodities Grp. Inc. v. Transfield ER Cape Ltd.*,
    801 F. Supp. 2d 211 (S.D.N.Y. 2011) ................................................................................... 8

*Davis v. Bifani*, No. 07-cv-00122-MEH-BNB,
    2007 WL 1216518 (D. Colo. Apr. 24, 2007) ........................................................................ 8

*DeMasi v. Benefico*, 567 F. Supp. 2d 449 (S.D.N.Y. 2008) ......................................................... 9

*Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34 (E.D.N.Y. 2011) ................................................. 9

*Gowan v. Amaranth Advisors, LLC (In re Dreier LLP)*,
    Adv. Pro. No. 10-03493 (SMB), 2014 WL 47774 (Bankr. S.D.N.Y. Jan. 3, 2014) .............. 14

*In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386 (S.D.N.Y. 2010) ............................................ 17

*In re Dreier LLP*, 452 B.R. 391 (Bankr. S.D.N.Y. 2011) ............................................................. 16

*In re Old Carco LLC*, 454 B.R. 38 (Bankr. S.D.N.Y. 2011) ....................................................... 12

*In re Picard, Tr. for the Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
    917 F.3d 85 (2d Cir. 2019) ................................................................................................... 21

*In re SunEdison, Inc.*, 620 B.R. 505 (Bankr. S.D.N.Y. 2020) ..................................................... 22

*In re Terrestar Corp.*, 16 Civ. 1421 (ER), 2017 WL 1040448 (S.D.N.Y. Mar. 16, 2017) ............. 6

*Kelley v. Safe Harbor Managed Acct. 101, Ltd.*, 31 F.4th 1058, (8th Cir. 2022) .................. 20, 24

*Kelley v. Westford Special Situations Master Fund, L.P.*,
    No. 19-cv-1073 (ECT/KMM), 2020 WL 3077151 (D. Minn. June 10, 2020) ................. 13-15

*Kelly–Brown v. Winfrey*, 717 F.3d 295 (2d Cir. 2013) ............................................................... 16

*Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC*,
   843 F. Supp. 2d 191 (D. Mass. 2012) ....................................................................... 7

*Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*,
   No. 13 Civ. 6705 (DLC), 2014 WL 1673351 (S.D.N.Y. Apr. 28, 2014) ................................ 8

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
   No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010).................... 8

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013).................................................................................. 14

*Picard v. Avellino (In re Bernard L. Madoff Inv. Sec. LLC)*,
   557 B.R. 89 (Bankr. S.D.N.Y. 2016) ..................................................................... 17

*Picard v. Banca Carige S.P.A.*, Adv. Pro. No. 11-02570 (CGM),
   2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022).................................. 2, 7, 11

*Picard v. Banque Cantonale Vaudoise*, Adv. Pro. No. 12-01694 (CGM),
   2022 WL 2761044 (Bankr. S.D.N.Y. July 14, 2022) ................................... passim

*Picard v. Banque Lombard Odier & Cie SA*, Adv. Pro. No. 12-01693 (CGM),
   2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022)................................... passim

*Picard v. Banque SYZ & Co., SA*, Adv. Pro. No. 11-02149 (CGM),
   2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022)................................... passim

*Picard v. Barclays Bank (Suisse) S.A., et al.*, Adv. Pro. No. 11-02569 (CGM),
   2022 WL 2799924 (Bankr. S.D.N.Y. July 15, 2022) .................................. passim

*Picard v. BNP Paribas S.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   594 B.R. 167 (Bankr. S.D.N.Y. 2018) ................................................. 10, 20, 22-24

*Picard v. Bordier & Cie*, Adv. Pro. No. 12-01695 (CGM),
   2022 WL 2390556 (Bankr. S.D.N.Y. June 30, 2022).................................. passim

*Picard v. Charles Ellerin Rev. Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   Adv. Pro. Nos. 10-04398 (BRL), 2012 WL 892514
   (Bankr. S.D.N.Y. Mar. 14, 2012)............................................................. 10, 13-14

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   12 F.4th 171 (2d Cir. 2021) ......................................................................... 4, 8

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   454 B.R. 317 (Bankr. S.D.N.Y. 2011)....................................................... 14

*Picard v. Delta Nat'l Bank and Trust Co.*, Adv. Pro. No. 11-02551 (CGM),
   ECF No. 105 (Main Case ECF No. 22106)
   (Bankr. S.D.N.Y. Aug. 12, 2022) ................................................................. passim

*Picard v. Est. of Seymour Epstein (In re Bernard L. Madoff Inv. Sec. LLC)*,
   No. 2l-cv-02334 (CM), 2022 WL 493734 (S.D.N.Y. Feb. 17, 2022) ................................... 22

*Picard v. Fairfield Inv. Fund Ltd. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479
   (Bankr. S.D.N.Y. Aug. 6, 2021) .................................................................... passim

*Picard v. First Gulf Bank*, Adv. Pro. No. 11-02541 (CGM),
   ECF No. 100 (Main Case ECF No. 21972) (Bankr. S.D.N.Y. July 18, 2022) ............... passim

*Picard v. Lloyds TSB Bank PLC*, Adv. Pro. No. 12-01207 (CGM),
   2022 WL 2390551 (Bankr. S.D.N.Y. June 30, 2022)..................................................... passim

*Picard v. Lowrey (In re Bernard L. Madoff Inv. Sec. LLC)*,
   596 B.R. 451 (S.D.N.Y. 2019)................................................................................... 7

*Picard v. Mayer (In re Bernard L. Madoff Inv. Sec. LLC)*,
   Adv. Pro. No. 20-01316 (CGM), 2021 WL 4994435
   (Bankr. S.D.N.Y. Oct. 27, 2021) ............................................................................ 11

*Picard v. Meritz Fire & Marine Ins. Co. Ltd.*, Adv. Pro. No. 11-02539 (CGM),
   2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10, 2022) .................................................... passim

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
   440 B.R. 243 (Bankr. S.D.N.Y. 2010)................................................................ 16, 18

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
   515 B.R. 117 (Bankr. S.D.N.Y. 2014).......................................................... 9-11, 14

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
   581 B.R. 370 (Bankr. S.D.N.Y. 2017).................................................................. 15

*Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78 (Bankr. S.D.N.Y. 2022) ........................... passim

*Picard v. Parson Finance Panama S.A.*, Adv. Pro. No. 11-02542 (CGM),
   2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022)...................................................... passim

*Picard v. Shapiro (In re Bernard L. Madoff Inv. Sec. LLC)*,
   542 B.R. 100 (Bankr. S.D.N.Y. 2015)................................................................... 12

*Picard v. Union Sec. Inv. Trust Co., Ltd., et al.*, Adv. Pro. No. 12-01211 (CGM),
   2022 WL 3273041 (Bankr. S.D.N.Y. Aug. 10, 2022)..................................................... passim

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000)...................................................................... 9

*Sapia v. Home Box Off., Inc.*, No. 20-cv-02586 (CM),
    2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018) ...................................................... 14

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
    No. 20-CV-02586 (CM), 2022 WL 1304589 (S.D.N.Y. May 2, 2022) ...........................15-18

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    501 B.R. 26, (S.D.N.Y. Oct. 28, 2013)................................................................6-7, 9, 21, 24

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    531 B.R. 439 (Bankr. S.D.N.Y. 2015)...................................................................... 19

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    No. 12-MC-115 (JSR), 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)...........................18-24

*Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320 (S.D.N.Y. 2007) .............................. 7

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
    379 B.R. 5 (Bankr. E.D.N.Y. 2007)...................................................................... 12

*United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422 (E.D.N.Y. 2007)................... 8

*United Teamster Fund v. MagnaCare Admin. Servs., LLC*,
    39 F. Supp. 3d 461 (S.D.N.Y. 2014)...................................................................... 16

## Statutes

11 U.S.C. § 544...................................................................................................... 20

11 U.S.C. § 545...................................................................................................... 20

11 U.S.C. § 546(e) ...........................................................................................2-3, 18-24

11 U.S.C. § 547...................................................................................................... 20

11 U.S.C. § 548(a) .................................................................................................. 8

11 U.S.C. § 548(a)(1)(A) ...................................................................................... 18, 20

11 U.S.C. § 548(a)(1)(B) .......................................................................................... 20

11 U.S.C. § 548(b) .................................................................................................. 20

11 U.S.C. § 550 ............................................................................................................ 9, 20-21, 23

11 U.S.C. § 550(a) ................................................................................................................. passim

11 U.S.C. § 550(a)(2) ................................................................................................................... 12

11 U.S.C. § 550(b) ................................................................................................................. 2-3, 15

11 U.S.C. § 550(d) ........................................................................................................................ 12

15 U.S.C. §§ 78aaa–*lll* ................................................................................................................... 1

**Rules**

Fed. R. Civ. P.  8 ...................................................................................................................... 1-2, 9

Fed. R. Civ. P.  8(a)(2) ................................................................................................................... 6

Fed. R. Civ. P. 10 ............................................................................................................................ 1

Fed. R. Civ. P. 10(c) ................................................................................................................... 2, 6-7

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 1

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa–*lll* ("SIPA"), and the chapter 7 estate of Bernard L. Madoff ("Madoff"), respectfully submits this memorandum of law in opposition to the motion to dismiss the Trustee's Complaint (ECF No. 1, the "Complaint")[1] pursuant to Federal Rules of Civil Procedure (the "Rules") 12(b)(6) of defendants (i) Credit Suisse AG; (ii) Credit Suisse AG, Nassau Branch; (iii) Credit Suisse (Luxembourg) SA; (iv) Credit Suisse International; (v) Credit Suisse Nominees (Guernsey) Limited; (vi) Credit Suisse London Nominees; and (vii) Credit Suisse (UK) Limited (collectively, "Defendants").

## PRELIMINARY STATEMENT

As part of the Trustee's continuing efforts in this SIPA liquidation proceeding to recover BLMIS customer property that was stolen as part of Madoff's Ponzi scheme, this action seeks to recover approximately $333 million in subsequent transfers that Defendants received from Fairfield Sentry Limited ("Sentry"), Fairfield Sigma Limited ("Sigma") and Fairfield Lambda Limited ("Lambda," and collectively, the "Fairfield Funds").[2]  For years, Defendants invested in BLMIS through the Fairfield Funds and other BLMIS feeder funds—investment funds created for the express purpose of feeding their investors' money to BLMIS in New York.  Defendants now move to dismiss the Trustee's Complaint, arguing that (i) the Trustee violates Rules 8 and 10 by

---

[1] Unless otherwise indicated, all ECF references herein refer to the case captioned *Picard v. Credit Suisse AG, et al.*, Adv. Pro. No. 11-02925 (CGM) (Bankr. S.D.N.Y.).

[2] In light of the Trustee's settlement with the Kingate funds (as defined in the Complaint) and their related entities, the Trustee dismissed all claims seeking recovery of Kingate-related subsequent transfers, pursuant to a Stipulation and Order entered on March 29, 2022 (ECF No. 101, the "Stipulation"), and accordingly, the total transfers at issue are now $42 million less than the $375 million sought in the Complaint.  The Stipulation also changed the names of, and consolidated or dismissed, certain defendants named in the original complaint, the effect of which (i) dismissed one defendant that only received a Kingate-related transfer, and (ii) changed certain parties from whom the Fairfield Fund transfers are being sought.

incorporating by reference the Trustee's initial transfer complaint against the Fairfield Funds[3] to plead avoidability of the initial transfers in the Complaint; (ii) the Trustee insufficiently alleges that Defendants received transfers of customer property; (iii) the Complaint establishes Defendants' good faith defense under Section 550(b); and (iv) the safe harbor under Section 546(e) bars recovery.

As acknowledged by Defendants in their moving papers, these arguments have been rejected by this Court in numerous other subsequent transfer cases.[4]  For the reasons set forth below, Defendants' arguments fail.[5]

First, consistent with Rule 8, the Trustee's Complaint provides a "short and plain statement" showing that the Trustee is entitled to relief, and its incorporation by reference of the Fairfield Amended Complaint is appropriate under Rules 8 and 10(c).[6]  In any event, this Court may take judicial notice of the operative Second Amended Complaint and its opinion in *Picard v.*

---

[3] *Picard v. Fairfield Sentry Limited, et al.*, No. 08-01789 (CGM), Adv. Pro. No. 09-01239, ECF No. 23 (the "Fairfield Amended Complaint" or "Fairfield Am. Compl.").

[4] *See Picard v. Multi-Strategy Fund Ltd.*, 641 B.R. 78 (Bankr. S.D.N.Y. 2022) ("*Multi-Strategy*"); *Picard v. Banque SYZ & Co., SA*, Adv. Pro. No. 11-02149 (CGM), 2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ("*Banque Syz*"); *Picard v. Banca Carige S.P.A.*, Adv. Pro. No. 11-02570 (CGM), 2022 WL 2387522 (Bankr. S.D.N.Y. June 30, 2022) ("*Carige*"); *Picard v. Banque Lombard Odier & Cie SA*, Adv. Pro. No. 12-01693 (CGM), 2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ("*Lombard Odier*"); *Picard v. Lloyds TSB Bank PLC*, Adv. Pro. No. 12-01207 (CGM), 2022 WL 2390551 (Bankr. S.D.N.Y. June 30, 2022) ("*Lloyds*"); *Picard v. Bordier & Cie*, Adv. Pro. No. 12-01695 (CGM), 2022 WL 2390556 (Bankr. S.D.N.Y. June 30, 2022) ("*Bordier*"); *Picard v. Banque Cantonale Vaudoise*, Adv. Pro. No. 12-01694 (CGM), 2022 WL 2761044 (Bankr. S.D.N.Y. July 14, 2022) ("*Cantonale*"); *Picard v. Barclays Bank (Suisse) S.A., et al.*, Adv. Pro. No. 11-02569 (CGM), 2022 WL 2799924 (Bankr. S.D.N.Y. July 15, 2022) ("*Barclays*"); *Picard v. First Gulf Bank*, Adv. Pro. No. 11-02541 (CGM), ECF No. 100 (Main Case ECF No. 21972) (Bankr. S.D.N.Y. July 18, 2022) ("*First Gulf*"); *Picard v. Parson Finance Panama S.A.*, Adv. Pro. No. 11-02542 (CGM), 2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022) ("*Parson*"); *Picard v. Meritz Fire & Marine Ins. Co. Ltd.*, Adv. Pro. No. 11-02539 (CGM), 2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10, 2022) ("*Meritz*"); *Picard v. Union Sec. Inv. Trust Co., Ltd., et al.*, Adv. Pro. No. 12-01211 (CGM), 2022 WL 3273041 (Bankr. S.D.N.Y. Aug. 10, 2022) ("*Union Sec.*"); *Picard v. Delta Nat'l Bank and Trust Co.*, Adv. Pro. No. 11-02551 (CGM), ECF No. 105 (Main Case ECF No. 22106) (Bankr. S.D.N.Y. Aug. 12, 2022) ("*Delta*").

[5] Defendants' Memorandum of Law in Support of their Motion to Dismiss is referred to herein as the "Motion."

[6] After the Trustee filed his Complaint against Defendants, the Trustee filed a Second Amended Complaint ("Second Amended Complaint") against the Fairfield Greenwich Group defendants (collectively, "Fairfield").  *See* Second Amended Complaint, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y. Aug. 28, 2020), ECF No. 286.

*Fairfield Inv. Fund Ltd. (In re BLMIS)*, Adv. Pro. No. 09-01239 (CGM), 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021), holding that the Trustee had plausibly alleged the avoidability of the initial transfers from BLMIS.

Second, the Trustee has plausibly alleged that Defendants received customer property under Section 550(a) by outlining the relevant pathways through which customer property was transferred from BLMIS to the Fairfield Funds and subsequently to Defendants.[7]  The Trustee has also alleged the necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer received by Defendants.  Nothing more is required at this stage of the litigation.

Third, the Section 550(b) "good faith" defense available to subsequent transferees is a fact-intensive affirmative defense that is premature and plainly inappropriate on a motion to dismiss. As this Court found in *Banque Syz*, it is Defendants' burden to plead this affirmative defense in an answer and prove it with evidence; it cannot be established from the face of a complaint.  2022 WL 2135019, at *10.

Finally, the Trustee has plausibly alleged the Fairfield Funds' actual knowledge of fraud, and therefore under controlling law, the safe harbor for settlement payments pursuant to securities contracts under Section 546(e) is inapplicable and does not bar recovery from Defendants. Defendants' argument – that the Trustee must plead Defendants' actual knowledge as opposed to that of Sentry – misinterprets and directly conflicts with precedent in this case.

For these reasons, the Trustee respectfully requests that the Court deny Defendants' motion.

---

[7] As set forth in the Complaint and in the Stipulation, certain Defendants have been sued as successors to entities that received certain subsequent transfers at issue.  Allegations made herein and throughout as to the activities of Defendants, collectively or individually, are meant to include those of predecessors.

3

## STATEMENT OF FACTS

### I. THE BLMIS PONZI SCHEME AND ITS FEEDER FUNDS

Madoff founded and operated BLMIS from New York until its collapse in 2008. Compl. ¶¶ 42, 51. BLMIS had three principal business units: (i) a proprietary trading business; (ii) a market-making business; and (iii) an investment advisory business (the "IA Business"). *Id.* ¶ 42. For its IA Business customers, BLMIS purportedly executed a split-strike conversion strategy (the "SSC Strategy"), which involved (a) investing in a basket of common stocks from the Standard & Poor's 100 Index, (b) buying put options and selling call options to hedge against price changes in the underlying basket of stocks, and (c) purchasing U.S. treasury bills when the money was out of the market. *Id.* ¶¶ 43-45. In reality, BLMIS operated a Ponzi scheme through its IA Business. *Id.* ¶¶ 46-48. On December 11, 2008, Madoff's fraud was publicly revealed, and he was arrested for criminal violations of federal securities laws, including securities fraud, investment adviser fraud, and mail and wire fraud. *Id.* ¶ 30.

The extent of damage Madoff caused was made possible by BLMIS "feeder funds"—large investment funds created to funnel investors' monies into BLMIS. *See Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 179 (2d Cir. 2021). Each of the Defendants invested in one or more of the Fairfield Funds, which they knew were BLMIS feeder funds. Compl. ¶¶ 8-17, 23-24. Certain Defendants knowingly invested in BLMIS through other feeder funds as well, including the Kingate funds. Compl. ¶¶ 8-9, 15-17, 25.

### II. DEFENDANTS AND THEIR INVESTMENTS IN THE FAIRFIELD FUNDS

The Fairfield Funds were managed and controlled by Fairfield Greenwich Group ("FGG"), a *de facto* partnership with its principal place of business in New York. Compl. ¶¶ 3-4; *Fairfield Inv. Fund*, 2021 WL 3477479, at *9. Sentry was a U.S. dollar-denominated fund that invested all or substantially all of its assets with BLMIS. Compl. ¶ 3; Fairfield Am. Compl. ¶¶ 52, 318. Sigma

and Lambda acted as foreign currency feeder funds, respectively facilitating Euro and Swiss Franc investments with BLMIS and investing all or substantially all their assets with Sentry. Compl. ¶ 4; Fairfield Am. Compl. ¶¶ 52, 57.

Each of the Defendants was, during the relevant period, a member of the Credit Suisse group of companies, a financial organization with thousands of employees globally. Compl. ¶ 26. Defendants invested in and received redemptions from the Fairfield Funds over the course of many years. *Id*. ¶¶ 61-63. As was required for investors in the Fairfield Funds, Defendants entered into one or more subscription agreements with each of the Fairfield Funds in which they respectively invested. *Id*. ¶¶ 8-17, 23. In these agreements, Defendants acknowledged their sophistication as a "professional investor." *Id*. ¶¶ 23-24.

Following BLMIS's collapse, the Trustee filed an adversary proceeding in this SIPA liquidation proceeding against the Fairfield Funds and related defendants to avoid and recover fraudulent transfers of stolen customer property. *Id*. ¶ 55. In 2011, the Trustee settled with the Fairfield Funds. *Id*. ¶ 56, Ex. B. As part of the settlement, Sentry consented to a judgment in the amount of $3.054 billion, but repaid only $70 million to the BLMIS estate. *Id.* Sigma and Lambda separately consented to judgments in the amounts of $752.3 million and $52.9 million, respectively. *Id*. As feeder funds that invested in BLMIS indirectly through Sentry, these amounts represent a portion of Sentry's $3.054 billion in withdrawals from BLMIS. *See Picard v. Fairfield Sentry Ltd. (In Liquidation)*, Adv. No. 09-01239 (CGM) (Bankr. S.D.N.Y. May 18, 2009), ECF Nos. 108 (Lambda Consent Judgment) and 110 (Sigma Consent Judgment). The Trustee then commenced a number of adversary proceedings to recover the approximately $3 billion in missing customer property, including the above-captioned matter.

## ARGUMENT

## I.    THE TRUSTEE'S COMPLAINT SUFFICIENTLY PLEADS THE AVOIDABILITY OF THE FAIRFIELD FUND INITIAL TRANSFERS

Defendants argue that the Trustee's incorporation of the then-operative complaint against the Fairfield Funds violates Rule 8(a)(2)'s requirement to include a "short and plain statement" showing the Trustee is entitled to relief.  Motion at 8-10.  However, there is no doubt that the Trustee may incorporate the Fairfield Amended Complaint under Rule 10(c) to demonstrate the avoidability of the initial transfers from BLMIS.  As this Court recently held in *Multi-Strategy*, among others, "pleadings filed in the 'same action' may be properly adopted by reference in other pleadings in that action" and "[t]he Fairfield Complaint was filed in the 'same action' as this adversary proceeding for purposes of Rule 10(c)."  *Multi-Strategy*, 641 B.R. at 91 (citing *Am. Casein Co. v. Geiger (In re Geiger)*, 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010) (allowing incorporation by reference under Rule 10(c) of pleadings in different adversary proceeding within the same liquidation because the pleadings "directly relate[d] to, materially affect[ed], and [were] filed in a single bankruptcy case.")); *see also In re Terrestar Corp.*, 16 Civ. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases.").

Defendants' argument conflicts with the prior opinion in *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 501 B.R. 26, (S.D.N.Y. Oct. 28, 2013) ("*In re Madoff Sec.*"), in which the District Court has already found sufficient the Trustee's incorporation by reference of the then-operative Fairfield complaint:

> [T]he Trustee's complaint against Standard Chartered Financial
> Services incorporates by reference the complaints against Kingate
> and Fairfield, including the allegations concerning the avoidability
> of the initial transfers, and further alleges the avoidability of these
> transfers outright. *See* Standard Chartered Compl. ¶¶43–46, 50–53.
> Thus, the avoidability of the transfers from Madoff Securities to
> Kingate and Fairfield is sufficiently pleaded for purposes of section
> 550(a).

*Id.* at 36.[8] Defendants were participants in the omnibus withdrawal of the reference related to this

decision.   *See* Mot. to Withdraw the Reference, ECF No. 10.   This decision—allowing for

incorporation by reference—is therefore law of the case.   *See Picard v. Lowrey (In re BLMIS)*, 596

B.R. 451, 464 (S.D.N.Y. 2019).

Moreover, even if the Court were to find that the adversary proceedings are separate actions

for purposes of Rule 10(c)*,* this Court still can permit incorporation by reference of the other

complaint, as the Southern District of New York and other federal courts have done in appropriate

circumstances.   *See Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 323 n.5 (S.D.N.Y.

2007) (citation omitted) (interpreting Rule 10(c)'s reference to "another pleading" as not being

confined to another pleading in the same action, and permitting incorporation of entire pleadings

in separate cases); *Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC*, 843 F. Supp. 2d 191,

214 n.15 (D. Mass. 2012) (holding incorporation by reference appropriate where "the court [was]

familiar with the filings in the other [] case[], which [were] substantially similar to [that] case, and

the usual concerns about inferring arguments from other submissions have less force.").

Cases cited by Defendants are inapposite because, unlike in the instant matter, plaintiffs

there were incorporating pleadings by reference in an attempt to add new claims against their

---

[8] *See also Multi-Strategy*, 641 B.R. at 91; *Banque Syz*, 2022 WL 2135019, at *7; *Carige*, 2022 WL 2387522, at *6; *Lombard Odier*, 2022 WL 2387523, at *7; *Lloyds*, 2022 WL 2390551, at *3; *Bordier*, 2022 WL 2390556, at *3; *Cantonale*, 2022 WL 2761044, at *3; *Barclays*, 2022 WL 2799924, at *5; *First Gulf* at 14; *Parson*, 2022 WL 3094092, at *7; *Meritz*, 2022 WL 3273044, at *7; *Union Sec.*, 2022 WL 3273041, at *7; *Delta* at 7 (all following "the district court's instruction").

defendants.[9]  In those cases, the court held that incorporation would have led to confusion and a lack of notice as to the additional claims asserted.  *Id.*  By contrast, the Trustee here is not seeking to add new claims, and Defendants would be hard-pressed to argue they lacked notice that the Trustee was seeking to avoid the initial transfers to Sentry.  Other cases cited by Defendants are also distinguishable as plaintiffs there sought to adopt pleadings from separate actions rather than, as here, different adversary proceedings within the same main case.[10]

Defendants argue that the Trustee's incorporation of the Fairfield Amended Complaint is "unwieldy," and that they would have to "guess" as to how to respond.  Defendants, however, ignore the purpose of the incorporation in the Complaint: to make a *prima facie* showing that the initial transfers are avoidable under Section 548(a) so that the Trustee can recover from Defendants under Section 550(a).  *See Citibank,* 12 F.4th at 196-97 (holding that "if a trustee establishes a *prima facie* case under the fraudulent transfer provisions, then he or she is entitled to recovery unless the transferee can establish an *affirmative defense*") (citation removed) (emphasis in original).  The Complaint only incorporates the Fairfield Amended Complaint—as part of one paragraph—in pleading the avoidability of the initial transfers.  Compl. ¶ 55.  Defendants can admit the allegations of the avoidability of the initial transfers, deny them, or respond that they do not have sufficient information to admit or deny.  This places no undue burden on Defendants in

---

[9] *See United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 460–66 (E.D.N.Y. 2007) (finding improper incorporation by reference of pleadings from prior actions to plead entirely new claims not otherwise alleged in complaint, which did not expressly incorporate the pleadings); *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023 (CBA) (RLM), 2010 WL 1257803, at *3-4 (E.D.N.Y. Mar. 26, 2010) (rejecting plaintiff's attempt to state new claim by incorporating by reference a reply brief he filed in the case which included "no specific factual allegations" supporting the claim); *Davis v. Bifani*, No. 07-cv-00122-MEH-BNB, 2007 WL 1216518, at *1 (D. Colo. Apr. 24, 2007) (holding that plaintiff could not incorporate by reference additional claims in parallel state-court action that were not alleged in the federal court complaint).

[10] *See Constellation Energy Commodities Grp. Inc. v. Transfield ER Cape Ltd.*, 801 F. Supp. 2d 211, 223 (S.D.N.Y. 2011) (denying incorporation where proceedings were "totally separate, unrelated action[s]"); *see also Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*, No. 13 Civ. 6705 (DLC), 2014 WL 1673351, at *2, *9 (S.D.N.Y. Apr. 28, 2014) (denying attempt to incorporate any current or future defenses asserted by defendants in other cases brought by plaintiff in the Southern District of New York).

responding to the Trustee's claims against them. Doing as Defendants appear to suggest—repleading all initial transfer allegations—does nothing to provide a "short and plain statement" and would unnecessarily add countless pages to the Complaint. Such duplication is unnecessary in pleading recovery under Section 550 and inconsistent with the purpose of Rule 8. *See In re Madoff Sec.*, 501 B.R. at 36.

In any case, regardless of incorporation, this Court may take judicial notice of the operative Second Amended Complaint against Fairfield and its prior decision holding that the complaint sufficiently alleges the avoidability of the initial transfers from BLMIS. *See Fairfield Inv. Fund*, 2021 WL 3477479. On a motion to dismiss, "a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*." *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011). "Included among such matters are decisions in prior lawsuits." *DeMasi v. Benefico*, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008). That the noticed complaint was filed after this Complaint is of no consequence. *See Rothman v. Gregor*, 220 F.3d 81, 91-92 (2d Cir. 2000) (noticing later filed complaint in related proceeding). Should the Court accept Defendants' arguments, and not take judicial notice of the avoidability of the initial transfers, the Trustee respectfully requests the opportunity to replead.

## II.   THE TRUSTEE'S COMPLAINT PLAUSIBLY PLEADS THAT DEFENDANTS RECEIVED BLMIS CUSTOMER PROPERTY UNDER SECTION 550(A)

The Trustee's Complaint plausibly alleges that Defendants received subsequent transfers of BLMIS customer property. To plead a subsequent transfer claim, the Trustee must allege facts that support an inference "that the funds at issue originated with the debtor." *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 149–150 (Bankr. S.D.N.Y. 2014) ("*Merkin II*"). As this Court recently held, the Trustee is not required to perform a tracing analysis, or to present a

9

"dollar-for-dollar accounting of the exact funds at issue." *Multi-Strategy*, 641 B.R. at 90

(quoting *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018)

("*BNP*")); *Banque Syz*, 2022 WL 2135019, at *7 (same); *see also Merkin II*, 515 B.R. at 149-

150 (quoting *Picard v. Charles Ellerin Rev. Tr. (In re BLMIS)*, Adv. Pro. Nos. 10-04398 (BRL),

2012 WL 892514, at *3 (Bankr. S.D.N.Y. Mar. 14, 2012)). Rather, "the Trustee need only allege

sufficient facts to show the relevant pathways through which the funds were transferred from

BLMIS to [the subsequent transferee]." *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3; *see

also 45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730,

747 (Bankr. S.D.N.Y. 2019). In addition, the Trustee must allege "'the necessary vital

statistics—the who, when, and how much' of the purported transfers to establish an entity as a

subsequent transferee of the funds." *Multi-Strategy*, 641 B.R. at 90 (quoting *BNP*, 594 B.R. at

195).

The Trustee's Complaint meets these requirements. The Complaint alleges that certain

Defendants received transfers, identified by date and amount in accompanying exhibits, from

Sentry, and that Sentry invested all or substantially all of its funds with BLMIS. Compl. ¶¶ 3, 55,

57-61, Exs. C–E. The Complaint likewise alleges that certain Defendants received transfers,

identified by date and amount in accompanying exhibits, from Sigma and/or Lambda, and that

Sigma and Lambda invested all of their funds with Sentry. *Id.* ¶¶ 4, 55, 62-63, Exs. F–I. Thus,

the Complaint plausibly alleges that Defendants received subsequent transfers of customer

property by (a) outlining the relevant pathway through which customer property was transferred

from BLMIS to the Fairfield Funds and subsequently to Defendants and (b) providing the

necessary vital statistics (*i.e.*, the "who, when, and how much") for each subsequent transfer.

Nothing more is required. *See, e.g.*, *Picard v. Mayer (In re BLMIS)*, Adv. Pro. No. 20-01316

10

(CGM), 2021 WL 4994435, at *5 (Bankr. S.D.N.Y. Oct. 27, 2021) (rejecting argument that subsequent transfer claim was not pled "with enough specificity as to how and what [defendant] received" and holding complaint "contains sufficient information regarding which transfers the Trustee is seeking to recover").  As this Court recently held in a number of decisions, these "exhibit[s] provide[] [Defendants] with the 'who, when, and how much' of each transfer." *See e.g. Multi-Strategy*, 641 B.R. at 95; *Banque Syz,* 2022 WL 2135019, at *12.[11]

### A.    Defendants Misstate the Trustee's Pleading Burden

Unable to argue that the Trustee fails to meet the relevant pleading burden, Defendants argue for a new one, asserting that the Trustee must tie each subsequent transfer received by each Defendant to a specific initial transfer from BLMIS.  Motion at 2, 11-12.  However, the Court already rejected this argument in *Merkin II*, where the Court refused to dismiss subsequent transfer claims even though the complaint did "not connect each of the subsequent transfers with an initial, voidable transfer emanating from BLMIS."  515 B.R. at 150; *see also In re 45 John Lofts, LLC*, 599 B.R. at 747 (finding no "requirement to trace individual dollar amounts from the transferor to the transferees to survive a motion to dismiss").  Likewise, the Court already rejected the argument that the Trustee must detail which and what portion of each subsequent transfer comprises customer property.  *Merkin II*, 515 B.R. at 152–53 (refusing to dismiss complaint where "at least some of the subsequent transfers . . . may be recoverable"); *see also Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007) (finding "if dollar-for-

---

[11] *See also Carige*, 2022 WL 2387522, at *7; *Lombard Odier*, 2022 WL 2387523, at *10; *Lloyds*, 2022 WL 2390551, at *6; *Bordier*, 2022 WL 2390556, at *6; *Cantonale*, 2022 WL 2761044, at *6; *Barclays*, 2022 WL 2799924, at *4; *First Gulf* at 25; *Parson*, 2022 WL 3094092, at *10; *Meritz*, 2022 WL 3273044, at *10; *Union Sec.*, 2022 WL 3273041, at *10; *Delta* at 9 (all confirming that the exhibits to the Trustee's complaints provide sufficient notice as to the elements of each transfer).

11

dollar accounting is not required at the proof stage, then surely it is not required at the pleading stage either").

Defendants' reliance on *Picard v. Shapiro* is misplaced because *Shapiro* did not change the pleading burden for recovery under Section 550(a).  In *Shapiro*, the Trustee alleged that certain trusts and members of the Shapiro family received approximately $54 million in fraudulent transfers from BLMIS, and that "upon information and belief" these defendants subsequently transferred this same amount to other defendants.  *Picard v. Shapiro (In re BLMIS)*, 542 B.R. 100, 104, 109, 119 (Bankr. S.D.N.Y. 2015).  However, that complaint *did not detail any* of the necessary vital statistics of the subsequent transfers.  *Id*. at 119.  There were no allegations regarding the subsequent transferors, the subsequent transferees, or the dates or amounts of the subsequent transfers, and consequently this Court granted defendants' motion to dismiss the subsequent transfer claim.  *Id*.  Here, where the Trustee has alleged the vital statistics of each transfer Defendants received and set out the investment relationship between Defendants and the Fairfield Funds, *Shapiro* supports denying the motion to dismiss.

### B.    Defendants' Remaining Arguments Regarding Implausibility Fail on a Motion to Dismiss

Defendants argue that the Trustee's claims are a "mathematical impossibility" because the Trustee is seeking more money from all of Sentry's subsequent transferees than the fund withdrew from BLMIS.  Motion at 12-13 (citing *In re Old Carco LLC*, 454 B.R. 38 (Bankr. S.D.N.Y. 2011)).  Defendants' argument misses the point.  As this Court has stated, "[t]here is no dispute that the Trustee is limited to 'a single satisfaction' under § 550(a)."  *Multi-Strategy*, 641 B.R. at 95 (citing § 550(d)).  "He may nevertheless pursue any and all subsequent transferees in order to achieve that satisfaction."  *Id*. at 95-96 (citing § 550(a)(2)).  And, under § 550(a), "a trustee may recover [an avoided] transfer from a subsequent transferee of those

funds, without the necessity for allocation among all [the] subsequent transferees." *CNB Int'l Inc. v. Kelleher (In re CNB Int'l, Inc.)*, 393 B.R. 306, 333 (Bankr. W.D.N.Y. 2008). Thus, until the Trustee recovers the full amount of the $3 billion in fraudulent transfers received by Sentry, the Trustee may simultaneously seek recovery from Defendants in this action and from defendants in other actions in this SIPA liquidation proceeding, even in an aggregate amount that exceeds initial transfers. *See Fairfield Inv. Fund*, 2021 WL 3477479, at *12. "Calculation of whether the Trustee is fully satisfied is a factual finding to be made by this Court at a later stage of litigation." *Multi-Strategy*, 641 B.R. at 96.

Defendants' other customer property arguments are fact-based arguments inappropriate on a motion to dismiss. Defendants claim that, because the Fairfield liquidators have stated that Sentry, from time to time, paid redemptions with other subscription monies, "[t]he only reasonable inference to draw" is that the transfers they received from the Fairfield Funds were comprised of subscription payments from other investors and "*not* funds that originated with BLMIS." Motion at 13 (emphasis in original). This argument is meritless and contradicts the Trustee's allegations that BLMIS transferred over $3 billion to Sentry, which Defendants themselves acknowledge. *Id.* at 12.

Moreover, even if Sentry commingled customer property with other funds, this commingling does not defeat the Trustee's ability to trace the transfer of customer property from BLMIS. "The law does not place such a difficult burden on trustees. The commingling of legitimate funds with funds transferred from the debtor does not defeat tracing." *Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-cv-1073 (ECT/KMM), 2020 WL 3077151, at *4 (D. Minn. June 10, 2020) (citing *Charles Ellerin Rev. Tr.*, 2012 WL 892514, at *3) (citation omitted). The Trustee is also not required to plead, much less establish, that an alleged subsequent transfer

13

is comprised solely of customer property.  *See Kelley*, 2020 WL 3077151, at *4 (where debtors'

funds are commingled with "cash from new subscribing investors," a trustee is not required to

establish transfers "originated solely" with the debtor or even to account for "the exact funds at

issue" on summary judgment).  To the contrary, courts in this District and in this SIPA liquidation

proceeding have denied summary judgment where only an undetermined or small portion of the

subsequent transfer was conceivably traceable to the estate.  *See Charles Ellerin Rev. Tr.*, 2012

WL 892514, at *3 (holding that even at summary judgment, "it is not necessary for the Trustee to

specify what portion of the Subsequent Transfers to [the subsequent transferee] was derived from

BLMIS"); *see also Gowan v. Amaranth Advisors, LLC (In re Dreier LLP)*, Adv. Pro. No. 10-03493

(SMB), 2014 WL 47774, at *14-16 (Bankr. S.D.N.Y. Jan. 3, 2014) (allowing the trustee to proceed

to trial where at most 3.5% of the transfers at issue could be traced to the debtor's Ponzi scheme).

Furthermore, without discovery, Defendants' arguments are premature.  "[I]n a case

such as this one, where 'the Trustee's lack of personal knowledge is compounded with

complicated issues and transactions [that] extend over lengthy periods of time, the trustee's

handicap increases,' and 'even greater latitude' should be afforded."  *Picard v. Cohmad Sec.

Corp. (In re BLMIS)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011).[12]  This is one reason why this

Court in *Merkin II* denied defendants' motion to dismiss, finding "[t]he subsequent transfer

claim must ultimately be proved through the books and records of the defendants."  515 B.R.

at 151.  And even after fact discovery, expert opinion is necessary to determine what portion

---

[12] Defendants assert that the Trustee has had access to the Fairfield books and records "for more than a decade."
Motion at 5-6.  This is untrue.  The Trustee does not have all of Sentry's books and records, and discovery in the
Trustee's actions against the Fairfield management defendants is ongoing. *See, e.g.*, Stipulated Case Am. Mgmt.
Order, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-01239 (CGM) (Bankr. S.D.N.Y. May 17, 2022), ECF No.
355 (setting November 22, 2023 deadline for fact discovery and August 23, 2024 deadline for expert discovery).  For
this reason, *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705 (2d Cir. 2013) and *Sapia
v. Home Box Off., Inc.*, No. 20-cv-02586 (CM), 2018 WL 6985223 (S.D.N.Y. Dec. 17, 2018) do not support
Defendants' position.

of the subsequent transfer stemmed from the initial transfer where the subsequent transfers

originated from commingled accounts. *Picard v. Merkin (In re BLMIS)*, 581 B.R. 370, 386

(Bankr. S.D.N.Y. 2017); *see also Kelley*, 2020 WL 3077151, at \*5 (denying summary judgment

because trustee introduced expert report and associated documents from which a jury could

infer that defendants received subsequent transfers of customer property).

## III.    THE SECTION 550(B) GOOD FAITH AFFIRMATIVE DEFENSE CANNOT BE RESOLVED AT THE MOTION TO DISMISS STAGE

Defendants argue that the Court should dismiss the Complaint as a matter of law because

their purported good faith is clear on the face of the Complaint as well as the Fairfield Amended

Complaint. Motion at 13-17. This Court has already rejected the "good faith" affirmative defense

as inappropriate and untimely on a motion to dismiss, and should similarly reject Defendants'

efforts here to recycle the same arguments. *Banque Syz*, 2022 WL 2135019, at \*10-11 (holding

that it is a defendant's burden to plead value, good faith, and lack of knowledge "in an answer, and

prove it with evidence; it cannot be established in a complaint."); *First Gulf* at 22 (same); *see also*

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, No. 20-CV-02586

(CM), 2022 WL 1304589, at \*1 (S.D.N.Y. May 2, 2022) ("*ABN Ireland*"); *Delta* at 12. Like

Defendants here, the defendants in *Banque Syz*, *First Gulf*, *Delta*, and *ABN Ireland* argued that

their good faith defense was established on the face of the complaint. *Banque Syz*, 2022 WL

2135019, at \*10; *First Gulf* at 22; *Delta* at 12; *ABN Ireland*, 2022 WL 1304589, at \*3. The Court

in those cases concluded that the affirmative defense could not be resolved at the pleading stage

(*id.*), and the same result is warranted here.

Affirmative defenses are fact-driven, and they require factual analyses and a presentation

of evidence. *ABN Ireland*, 2022 WL 1304589, at \*3 ("The Trustee rightfully points out that such

a fact-based determination can only be made based on the entirety of the factual record after

15

discovery (which has not occurred here), not from isolated documents cherry-picked by Appellees and factual inferences Appellees improperly seek to have drawn in their favor."); *see also United Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461, 475 (S.D.N.Y. 2014) ("Affirmative defenses 'often require[ ] consideration of facts outside of the complaint and thus [are] inappropriate to resolve on a motion to dismiss.'") (quoting *Kelly–Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013)). That sort of factual analysis is not appropriate at this stage, particularly with respect to a good faith defense. *See, e.g., Picard v. Merkin (In re BLMIS)*, 440 B.R. 243, 257 (Bankr. S.D.N.Y. 2010) ("*Merkin I*") ("[W]hether the Moving Defendants acted in good faith . . . is a disputed issue that this Court can properly determine only upon consideration of all of the relevant evidence obtained through the discovery process."); *In re Dreier LLP*, 452 B.R. 391, 426 (Bankr. S.D.N.Y. 2011) ("Determining the Defendants' good faith is an indisputably factual inquiry to be undertaken by the Court after the close of discovery and need not be resolved at the motion to dismiss stage.").

To get around the fact that the good faith pleading burden is no longer on the Trustee, Defendants make an unsupportable argument that their good faith has been established as a matter of law on the face of the Complaint. Motion at 15-17. But, as recognized in *Merkin I*, such an argument applies only as a "limited exception to the general rule" that good faith cannot be established on a motion to dismiss. 440 B.R. at 256. To prevail under this limited exception, Defendants must show there is an "insuperable bar to securing relief" set forth on the face of the Complaint. *Dreier*, 452 B.R. at 426. Defendants' argument that a diligent inquiry into BLMIS would have been futile is pure conjecture that is easily disputed and fails this standard.

Defendants cannot rely on an assortment of cherry-picked allegations as to BLMIS's and FGG's secrecy, and factual inferences they wish this Court to draw from same in their favor. *ABN*

16

*Ireland*, 2022 WL 1304589, at *3. Even were it appropriate to consider such arguments at this stage, the SEC's failure to detect Madoff's fraud is not dispositive as to a defendant's good faith. *See Picard v. Avellino (In re BLMIS)*, 557 B.R. 89, 120 (Bankr. S.D.N.Y. 2016) (finding no inconsistency between the Trustee's allegations regarding defendants' knowledge of Madoff's fraud and failure by others—including the SEC—to detect the Ponzi scheme).[13] Defendants' suggestion that they lacked sufficient resources to detect Madoff's fraud—despite being a part of the Credit Suisse global enterprise with thousands of employees, and hundreds of millions of dollars invested with the Fairfield Funds—is dubious on its face. Defendants are sophisticated parties capable of performing their own investigations and diligence on their BLMIS investments—facts which can only be developed in discovery.

Defendants make similar arguments with regard to value and knowledge of voidability. Motion at 13-15. However, these are also fact-driven affirmative defenses to be addressed later in the litigation. *See, e.g., Fairfield Inv. Fund*, 2021 WL 3477479, at *9 (stating that "[w]hether the Defendants gave value is a question of fact to be resolved either at the summary judgment stage or at trial"). As was true in *Banque Syz* and *First Gulf*, the Complaint does not mention Defendants exchanging shares for consideration, and the value defense is therefore not pleaded on the face of the Complaint. *Banque Syz*, 2022 WL 2135019, at *10; *First Gulf* at 22-23. Moreover, to the extent Defendants argue value exists because the payments they received were given in exchange for their redemption of shares from the Fairfield Funds, this too cannot be decided on a motion to dismiss. *Banque Syz*, 2022 WL 2135019, at *11; *First Gulf* at 23; *see also Fairfield Inv. Fund*, 2021 WL 3477479, at *9 (a determination as to whether subsequent transfer defendants "'gave

---

[13] *See also In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 403 (S.D.N.Y. 2010) (observing that the SEC, in the context of investigating its own failure to detect Madoff's fraud, found "numerous private entities conducted basic due diligence of Madoff's operations and, without regulatory authority to compel information, came to the conclusion that an investment with Madoff was unwise").

17

value' in the form of surrendering shares in the Fairfield Funds . . . cannot be made as a matter of law or fact at this stage.")

Even if this Court were to consider Defendants' fact-intensive affirmative defense, the Trustee must be given the opportunity to pursue discovery of those facts. *ABN Ireland*, 2022 WL 1304589, at *3 (finding that such a fact-based defense must be based on the entirety of the factual record after discovery); *Merkin I*, 440 B.R. at 257 ("[W]hether the Moving Defendants acted in good faith when they allegedly accepted hundreds of millions of dollars in transfers of BLMIS funds is a disputed issue that this Court can properly determine only upon consideration of all of the relevant evidence obtained through the discovery process."). *See also Banque Syz*, 2022 WL 2135019, at *11; *First Gulf* at 24.

## IV.    SECTION 546(E) DOES NOT BAR RECOVERY FROM DEFENDANTS

In *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-MC-115 (JSR), 2013 WL 1609154, at *1 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"), the District Court held that an initial transferee's actual knowledge of Madoff's fraud precluded application of the Section 546(e) safe harbor, thereby allowing the Trustee to avoid transfers made by BLMIS prior to the two-year period referenced in Section 548(a)(1)(A). Defendants argue that Section 546(e) bars all of the Trustee's claims to avoid or recover transfers made by BLMIS prior to the two-year period, even though the Trustee has pled the Fairfield Funds' actual knowledge. Motion at 17-18. As discussed below, Defendants' argument is based on a misreading of Section 546(e) and *Cohmad*, and this Court has now rejected this argument in twelve other adversary proceedings commenced by the Trustee.[14]

---

[14] *Multi-Strategy*, 641 B.R. at 92-95; *Banque Syz*, 2022 WL 2135019, at *8-10; *Lombard Odier*, 2022 WL 2387523, at *8-10; *Lloyds*, 2022 WL 2390551, at *4-6; *Bordier*, 2022 WL 2390556, at *4-6; *Cantonale*, 2022 WL 2761044, at *4-6; *Barclays*, 2022 WL 2799924, at *6-7; *First Gulf* at 16-21; *Parson*, 2022 WL 3094092, at *8-10; *Meritz*, 2022 WL 3273044, at *8-10; *Union Sec.*, 2022 WL 3273041, at *8-10; *Delta* at 10-12.

## A.      The Fairfield Funds Had Actual Knowledge of Madoff's Fraud

Defendants set forth at length the requirements of Section 546(e) and how they are presumably met in this case with respect to the initial transfers from BLMIS to Sentry. None of this matters.[15] This Court previously held that the Trustee sufficiently pled that Sentry had actual knowledge of Madoff's fraud and that such initial transfers are avoidable. *Multi-Strategy*, 641 B.R. at 92-93 (citing *Fairfield Inv. Fund*, 2021 WL 3477479, at *4). As such, Section 546(e) does not bar the avoidance of initial transfers made to Sentry, and those transfers may be recovered from Defendants regardless of whether the Fairfield Funds or any Defendants qualify as financial institutions, their agreements qualify as securities contracts, or their transfers qualify as settlement payments.

The actual knowledge exception established in *Cohmad* was issued in connection with consolidated proceedings before the District Court as to the application of Section 546(e), and as Defendants concede, that decision held that a party with actual knowledge of Madoff's fraud cannot claim the protections of Section 546(e). Motion at 22 (citing *Cohmad*). Defendants participated in the District Court proceedings and the District Court's review of this issue.[16] As such, Defendants are bound by *Cohmad* and that decision is law of the case.[17]

---

[15] The Trustee does not concede that any agreements or transfers between the Fairfield Funds and Defendants activate the safe harbor under Section 546(e) or that any transferor or transferee is a financial institution or participant. Such information is simply not relevant, because whether the initial transfers from BLMIS to Sentry are avoidable turns on Sentry's actual knowledge of fraud at BLMIS. Among other things, the Trustee does not concede—by alleging that the subsequent transfers were customer property—that the initial transfers were "in connection with" the subscription agreements with Defendants. The Trustee also does not concede that the initial transfers were made "for the benefit of" Defendants. The Trustee plainly alleges in the Complaint that Defendants are subsequent transferees, and it is settled law that a defendant cannot be both a subsequent transferee and a party for whose benefit an initial transfer is made. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 474 (Bankr. S.D.N.Y. 2015) ("*Omnibus Good Faith Decision*") (citing cases).

[16] *See* Motion to Withdraw the Reference, ECF Nos. 9-11 (Bankr. S.D.N.Y. filed March 30, 2012) (raising Section 546(e) as a grounds for withdrawal).

[17] *See Omnibus Good Faith Decision*, 531 B.R. at 466 ("Those moving defendants that participated in the withdrawal of the reference of the antecedent debt/value issue have had their day in court and Judge Rakoff's decisions are law of the case.").

19

**B.      Section 546(e) Does Not Apply Independently to Recovery Actions**

Defendants are also wrong that the Trustee must allege that a subsequent transferee itself had actual knowledge in order to invoke the actual knowledge exception to Section 546(e). Defendants argue that under *Cohmad*, their agreements with Sentry are the relevant "securities contract" for purposes of Section 546(e) (in lieu of BLMIS's account agreement), and as such, in a Section 550 recovery action against them, the court must look solely to Defendants' (i.e. the subsequent transferees') actual knowledge to determine whether the initial transfer is avoidable. Motion at 19-22.    But *Cohmad* does not stand for this proposition, and Defendants' argument merely repackages the already rejected arguments that the Section 546(e) safe harbor should independently apply to recovery actions under Section 550, coupled with generalized criticism of this Court's recent decisions.    As this Court recently held, based on the same arguments as Defendants make here, defendants "[are] not permitted to raise the safe harbor defense on [their] own behalf as [] subsequent transferee[s]" and the 546(e) "safe harbor is not applicable to subsequent transfers." *Multi-Strategy,* 641 B.R. at 94-95.[18]

Under its plain language, Section 546(e) applies to the avoidance of initial transfers, not the recovery of subsequent transfers under Section 550.  *See* 11 U.S.C. § 546(e) ("Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not *avoid a transfer* . . . except under section 548(a)(1)(A) of this title.") (emphasis added).[19]

The limitation of the safe harbor to avoidance is consistent with the well-established principle that "the concepts of avoidance and recovery are separate and distinct."  *In re Madoff*

---

[18] *See also Banque Syz*, 2022 WL 2135019, at *9-10; *Lombard Odier*, 2022 WL 2387523, at *9-10; *Lloyds*, 2022 WL 2390551, at *5-6; *Bordier*, 2022 WL 2390556, at *5-6; *Cantonale*, 2022 WL 2761044, at *5-6; *Barclays*, 2022 WL 2799924, at *7; *First Gulf* at 20-21; *Parson*, 2022 WL 3094092, at *9-10; *Meritz*, 2022 WL 3273044, at *9-10; *Union Sec.*, 2022 WL 3273041, at *9-10.

[19] *See also Multi-Strategy,* 641 B.R. at 94 (citing *BNP*, 594 B.R. at 197); *Kelley v. Safe Harbor Managed Acct. 101, Ltd.*, 31 F.4th 1058, 1064 n.5 (8th Cir. 2022) ("*SHMA*") (citing same).

*Sec.*, 501 B.R. at 30.  It is also consistent with the understanding that the Code's avoidance provisions protect against depletion of a debtor's estate, while Section 550 is merely a "utility provision," intended to help execute on that purpose by "tracing the fraudulent transfer to its ultimate resting place."  *See In re Picard, Tr. for the Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 98 (2d Cir. 2019).

*Cohmad* confirmed that Section 546(e) does not provide an independent safe harbor for Section 550 recovery actions against subsequent transferees.  The District Court withdrew the reference on whether Section 546(e) barred recovery of a subsequent transfer pursuant to Section 550.[20]  However, in its decision, the court specifically limited the safe harbor to avoidance claims based on the plain language of Section 546(e).  *See Cohmad*, 2013 WL 1609154, at *4, *9 (applying the "plain terms" of Section 546(e)); *id.* at *7 (recognizing that subsequent transferees can raise initial transferees' defenses to *avoidance*); *id.* at *10 ("[B]oth initial transferees and subsequent transferees are entitled to raise a defense based on the application of Section 546(e) to the *initial* transfer from Madoff Securities.") (emphasis added).   And though the court hypothesized, in *dicta*, that a subsequent transferee's subscription agreements with the initial transferee feeder fund, and related agreements and transactions, might under certain circumstances constitute relevant "securities contracts," and that certain subsequent transferee defendants might qualify as "financial institutions" or "financial participants," the decision is clear that the focus of

---

[20] *See* Section 546(e) Briefing Order, *In re Madoff Sec.*, No. 12-MC-115 (S.D.N.Y. filed May 16, 2012), ECF No. 119 (withdrawing the reference on issue of "whether application of Section 546(e) to an initial or mediate Transfer bars recovery by the Trustee of any subsequent Transfer pursuant to Section 550").

the safe harbor is still on the *initial* transfers. *See id.* at *9. [21] Contrary to Defendants' argument,

the District Court did not, in its hypothetical, discuss actual knowledge or indicate that in such

circumstances, the initial transferee's actual knowledge should be disregarded.

Based on *Cohmad*, this Court held that Section 546(e) is applicable only to avoidance, not

recovery, and most notably that a subsequent transferee cannot assert the protections of Section

546(e) where the Trustee has adequately pled the initial transferee's actual knowledge. *See BNP*,

594 B.R. at 197; *see also In re SunEdison, Inc.*, 620 B.R. 505, 514 (Bankr. S.D.N.Y. 2020) ("the

safe harbor defense only applies by its terms to the initial transfer"). In *BNP*, this Court explicitly

rejected the argument being made here that the "*only* way the Trustee can escape the application

of Section 546(e) here is by pleading with particularity and plausibility that the [subsequent

transferee defendants] actually knew of the Madoff Ponzi scheme." *BNP*, 594 B.R. 196-97

(emphasis in original). Rather, as explained in *BNP*, a subsequent transferee gets only "indirect"

protection from Section 546(e) to the same extent it protects the initial transferee. *Id*. at 197. Like

*Cohmad*, *BNP* is law of the case on this issue, and Defendants are bound by both decisions. *See

Picard v. Est. of Seymour Epstein (In re BLMIS)*, No. 2l-cv-02334 (CM), 2022 WL 493734, at *12

(S.D.N.Y. Feb. 17, 2022) (finding "in a SIPA liquidation like this one" where different adversary

proceedings arise within the same liquidation, that law of the case applies when "prior decisions

in an ongoing case either expressly resolve[] an issue or necessarily resolve[] it by implication").

Defendants nevertheless continue to argue that to the extent a party relies on the feeder

fund agreements as the relevant "securities agreements" in accordance with *Cohmad*, the Court

---

[21] The original point of the *Cohmad* hypothetical was to address the subsequent transferee defendants' argument that if necessary, in lieu of the BLMIS customer agreements, their subscription agreements could act as the relevant securities agreements under Section 546(e). *Cohmad*, 2013 WL 1609154, at *8. That argument became moot as both the Second Circuit and the District Court determined that each BLMIS customer agreement was a "securities agreement" and the initial transfers from BLMIS were "settlement payments" notwithstanding that no securities were traded and therefore the Trustee's avoidance claims were subject to Section 546(e).

must look only to the actual knowledge of the subsequent transferee. Motion at 20-22. But as stated above, the District Court did not conclude this, and *BNP* confirmed this was not the case. This Court itself rejected the same arguments in several other proceedings, holding in each that, "the safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not 'avoiding' a subsequent transfer, 'he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550.'"[22]

Defendants' misinterpretation of *Cohmad* would effectively eliminate the point of the actual knowledge exception—which is to restrict all bad actors from hiding behind the safe harbor. *See Cohmad*, 2013 WL 1609154, at *3 (explaining that defendants who knew BLMIS was a Ponzi scheme "must have known that the transfers they received directly or indirectly from Madoff Securities were not 'settlement payments.'"). Adopting Defendants' position means the safe harbor would apply even where the initial transferee feeder fund knew there were no securities transactions in need of protection. It would also result in a situation whereby a determination as to the avoidability of an initial transfer would depend upon and vary based on whether there were subsequent transfers, and who received them.

Defendants' interpretation of *Cohmad* would provide a subsequent transferee with more rights than an initial transferee, which is inconsistent with congressional intent on 546(e). *See In re Madoff Sec*., 501 B.R. at 29 ("Section 550(a) requires that the Trustee show that the transfer he seeks to recover is avoidable in each recovery action, and the subsequent transferee in possession

---

[22] *See, e.g., Multi-Strategy*, 641 B.R. at 94 (quoting *BNP* at 197); *Banque Syz*, 2022 WL 2135019, at *9 (same); *Lombard Odier*, 2022 WL 2387523, at *9 (same); *Lloyds*, 2022 WL 2390551, at *5 (same); *Bordier*, 2022 WL 2390556, at *5 (same); *Cantonale*, 2022 WL 2761044, at *5 (same); *Barclays*, 2022 WL 2799924, at *7 (same); *First Gulf* at 20 (same); *Parson*, 2022 WL 3094092, at *9 (same); *Meritz*, 2022 WL 3273044, at *9 (same); *Union Sec.*, 2022 WL 3273041, at *9 (same).

of that transfer may raise any defenses to avoidance available to the initial transferee, as well as any defenses to recovery it may have.").  As the Eighth Circuit pointed out in *SHMA* while citing *BNP*, under Section 546(e), "a subsequent transferee is protected *indirectly* to the extent that the initial transfer is not avoidable because of the safe harbor."  31 F.4th at 1064 n.5 (cleaned up; emphasis added).

Defendants also misconstrue *Cohmad*'s holding—which was not a part of the Court's "securities contract" hypothetical—that subsequent transferees with actual knowledge are also prohibited from benefitting from the safe harbor.  Motion at 20-21.  That holding does not require the Trustee to plead a subsequent transferee's actual knowledge in order to recover a subsequent transfer.  On the contrary, it merely ensures that any defendant that *does* have actual knowledge, including a subsequent transferee, cannot benefit from the safe harbor (even if the initial transferee is innocent), such that the purpose of the actual knowledge exception is achieved consistently.  *See Cohmad*, 2013 WL 1609154, at *1, *7 ("A defendant cannot be permitted to in effect launder what he or she knows to be fraudulently transferred funds through a nominal third party and still obtain the protections of Section 546(e).").

Finally, this Court's decision in *Fairfield Inv. Fund* does not demand a different result.  Motion at 22.  Rather, in that case, as this Court has held, the Court "considered [a subsequent transferee's] actual knowledge of BLMIS's fraud only as it related to whether Fairfield Sentry had actual knowledge of the fraud.  The Court never considered whether the subsequent transferees could raise the safe harbor defense on their own behalf, nor could it have, as § 546 is inapplicable to subsequent transferees."  *Multi-Strategy,* 641 B.R. at 94-95.[23]

---

[23] *See also Banque Syz,* 2022 WL 2135019, at *10; *Lombard Odier,* 2022 WL 2387523, at *10; *Lloyds,* 2022 WL 2390551, at *6; *Bordier,* 2022 WL 2390556, at *6; *Cantonale,* 2022 WL 2761044, at *6; *First Gulf* at 21; *Parson,* 2022 WL 3094092, at *10; *Meritz,* 2022 WL 3273044, at *10; *Union Sec.*, 2022 WL 3273041, at *10.

## CONCLUSION

The Trustee respectfully requests that the Court deny Defendants' motion.

Dated: August 15, 2022
New York, New York

/s/  Howard L.Simon
**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1000
Fax: (212) 262-1215
Howard L. Simon
Email: hsimon@windelsmarx.com
Robert J. Luddy
Email: rluddy@windelsmarx.com
Kim M. Longo
Email: klongo@windelsmarx.com
Alex Jonatowski
Email: ajonatowski@windelsmarx.com

*Special Counsel for Irving H. Picard, Trustee
for the Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities LLC and
the Chapter 7 Estate of Bernard L. Madoff*