UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>　　　　　　Plaintiff-Applicant,<br><br>　　v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>　　　　　　Defendant. | No. 08-01789 (CGM)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br>BERNARD L. MADOFF,<br><br>　　　　　　Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>KOREA EXCHANGE BANK, et al.,<br><br>　　　　　　Defendant | Adv. Pro. No. 11-02572 (CGM) |

**KOREA EXCHANGE BANK'S REPLY MEMORANDUM
OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

CIRILLO LAW OFFICE
Richard A. Cirillo
246 East 33rd Street – 1 FR
New York, NY 10016-4802
T:  917-541-6778
E:  rcirillo@cirillo-law.com

*Attorney for Defendant
Korea Exchange Bank*

## TABLE OF CONTENTS

Page

TABLE OF CASES AND RULES CITED ……………………………………………....ii

I. THE COMPLAINT DOES NOT ALLEGE FACTS SHOWING A PRIMA FACIE
CASE OF PERSONAL JURISDICTION OVER KEB …….……………………….....1

    A. The Trustee Tries to Abrogate the Supreme Court's Pleading Standard Because He
Has Not Met It ……………………………………………………………………..1

    B. The Trustee's Allegations of Personal Jurisdiction Over KEB are Not Adequate……6

        1) Failure to Distinguish Between What the FAC Alleges against KEB and What It
Alleges against Dismissed Co-Defendant Korea Investment Trust Management
Company ……………………………………….…………………….…..................6

        2) Allegations that Are Non-Factual Conclusions, Conjecture and Legal Opinion
Are Disregarded under Twombly/Iqbal FRCP 8(a)(2) Analysis ..……………….8

        3) The Three Remaining Allegations are Factual But Legally Insufficient as a
Basis for Personal Jurisdiction over KEB…………………………………….......9

    C. The Fairfield Private Placement Memorandum Does Not Support Jurisdiction because
KEB Could Not Have Obtained Knowledge that BLMIS Managed Fairfield's Assets
or that Redemptions were Paid from BLMIS' rather than Fairfield's Assets ………13

II. INCORPORATION OF THE FAIRFIELD COMPLAINT VIOLATES FRCP
8(A)(2) AND (D)(1)…….…...……………………………………………………….15

III. THE TRUSTEE'S CUSTOMER PROPERTY ALLEGATIONS CANNOT STAND
BECAUSE THEY ARE IMPOSSIBLE, NOT ONLY IMPLAUSIBLE…...………..…17

CONCLUSION…………………………………………………………………………19

i

# TABLE OF CASES, STATUTES, RULES AND AUTHORITIES

**Cases**

Page(s)

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..............................................................................2-6, 8, 9, 19

*Bellefonte re Ins. Co. v. Argonaut Ins. Co.,*
757 F.2d 523 (2d Cir. 1985) ..............................................................18 n.9

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)............................................................................2-4, 6, 19

*Glenn v. Hayman,*
2007 WL 894213 (D.N.J. Mar.21, 2007) ..........................................16-17

*Guadagno v. Wallack Ader Levithan Associates,*
950 F. Supp. 1258 (S.D.N.Y. 1997) ...................................................17-18

*Hanson v. Denckla,*
357 U.S. 235 (1958).............................................................................8, 9

*In re Geiger (American Casein Co. v. Geiger)*
446 B.R. 670 (E.D. Pa. 2010) .............................................................15-16

*In re Interest Rate Swaps Antitrust Litig.,*
16-MD-2704 (PAE) (S.D.N.Y. May 23, 2018).....................................7 n.1

*In re Treasury Sec. Auction Antitrust Litig.,*
15 MD 2673 (PGG) (S.D.N.Y. Mar. 31, 2022) ..................................7 n.1

*Jesner v. Arab Bank, PLC,*
138 S. Ct. 1386 (2018)........................................................................11-12 n. 6

*Kirschner, v. JPMorgan Chase Bank,*
17 Civ. 6334 (PGG) (S.D.N.Y. Sep. 30, 2021) ..................................6-7

*Pramer S.C.A. v. Abaplus,*
76 A.D.3d 89 (N.Y. App. Div. 2010) ..................................................11 n.5

*SIPC v. Bernard L. Madoff Inv. Sec. LLC,*
480 B.R. 501 (Bankr. S.D.N.Y. 2012) ("*BLI*") ...................................14-15

*SIPC v. Bernard L. Madoff Inv. Sec. LLC,*
08-01789 (CGM) (Bankr. S.D.N.Y. June 30, 2022) ..............................15, 17, 18 n.11, 19

*SIPC v. Bernard L. Madoff Inv. Sec. LLC,*
8-01789 (CGM) (Bankr. S.D.N.Y. Oct. 27, 2021) ("Mayer") ……………………………..7 n.2

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff),*
08-01789 (CGM) (Bankr. S.D.N.Y. Aug. 12, 2022) ("*Delta*")……………………………18 n.10

*Taylor v. Vt. Dep't of Educ.,*
313 F.3d 768 (2d Cir. 2002) …………………………………………………………………18 n.11

*Theeheck.Com, LLC v. NEMC Fin. Servs. Grp. Inc.,*
16-cv-8722 (PKC) (S.D.N.Y. June 16, 2017) …………………………………………..7 n.1

*Williams v. Time Warner Inc.,*
440 Fed.Appx. 7 (2d Cir. 2011) ………………………………………..………18 n.11

## Rules

Fed. R. Bankr. P. 7004…………………………………………………………………………3 n.3

Fed. R. Civ. P. 8(a)(2)………………………………………………………1, 2, 4, 9, 15, 16, 20

Fed. R. Civ. P. 8(d)(1) …………………………………………………………..6, 15, 16, 20

Fed. R. Civ. P.10(c) ……………………………………………………………………………16

Fed. R. Civ. P. 11…………………………………………………………………………………6, 7

Fed. R. Civ. P. 12(b)(2) …………………………………………………………………1, 3, 6

Fed. R. Civ. P. 12(b)(6)……………………………………………………………………1, 3, 6

Fed. R. Civ. P. 12(f) ……………………………………………………………………………17

Fed. R. Civ. P. 15 …………………………………………………………………………………7

Defendant Korea Exchange Bank ("KEB") respectfully submits this reply memorandum in response to the plaintiff Trustee's July 15, 2022 Memorandum in Opposition to KEB's Motion to Dismiss "(Opp. Mem.").

This reply addresses KEB's arguments to dismiss based on lack of sufficient allegations of personal jurisdiction, receipt of customer property, and the practical impact of incorporating the Fairfield Complaint by reference. It will not address KEB's § 546(e) Safe Harbor argument, for which KEB rests on its opening brief.

Although the text of the allegations in the First Amended Complaint ("FAC") are fixed and clear, the Trustee claims to find things in them that are not in fact there and attempts to add allegations via his Opp. Mem. and attorney's declaration. But it is universally accepted that the FAC will be read by its plain meaning and not amended by attorneys' arguments or exhibits. This reply tries to return the focus to the FAC and why it fails under FRCP 8(a)(2), 12(b)(2), and 12(b)(6).

## I.    THE COMPLAINT DOES NOT ALLEGE FACTS SHOWING A PRIMA FACIE CASE OF PERSONAL JURISDICTION OVER KEB

### A.  The Trustee Tries to Abrogate the Supreme Court's Pleading Standard Because He Has Not Met It

Attempting to change the Supreme Court's explanations of the minimum requirement of adequate fact allegations, the Trustee asserts that factual allegations are not even needed, misinterpreting this court's prior decisions in which the court said, "At the pre-discovery stage, the allegations need not be factually supported." Opp. Mem. at 12. Nothing could be farther from the truth. Twice in two years, the Supreme Court focused on exactly that point and reached the opposite conclusion. It held that a complaint cannot show entitlement to relief under FRCP 8(a)(2) without facts, which are missing here.

A shorthand phrase often used in cases about pleadings is about "nudging" allegations "across the line from conceivable possible to plausible." It is from *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007), and is repeated in *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). However, it is only a shorthand and does not reflect the substantive issues the court decided about adequate pleadings. It does not capture the Court's specific holding about what is needed to comply with FRCP 8(a)(2), which, the Court emphasized in both decisions, requires factual allegations. Here, the FAC contains no facts on key points to allege a cause of action, as was true in *Twombly* and *Iqbal*. An exposition of the cases may be tedious, but it is critical to understanding why the dismissals in those cases and require the same result here.

The *Twombly* complaint was specific in some respects but still fell short on key points. *Twombly* at 550-51. The Court quoted FRCP 8(a)(2)'s "short plain statement" language and explained that the Rule's goal is "to give the defendant fair notice of what the ... claim is <u>and the grounds upon which it rests</u>." *Twombly* at 555 (emphasis added) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The Court said that

> a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp 235-236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact)...."

*Twombly* at 555 (footnote omitted). The issue is not insufficient inferences but of a lack of facts from which a reasonable inference can be drawn.

*Twombly* and *Iqbal* apply to all categories of cases and thus encompass Bankruptcy Court

adversary proceedings. *Iqbal* at 684. The *Twombly* claim was under Sherman Act § 1 and *Iqbal*

was a claim for a constitutional tort, which are complicated claims like the SIPA and the

Bankruptcy Code claims in the FAC. The Court set out the character of allegations necessary:

> In applying these general standards to a § 1 claim, we hold that stating such a
> claim requires a complaint with enough factual matter (taken as true) to suggest
> that an agreement was made. Asking for plausible grounds to infer an agreement
> does not impose a probability requirement at the pleading stage; it simply calls for
> enough fact to raise a reasonable expectation that discovery will reveal evidence
> of illegal agreement.

*Twombly* at 556 (footnote omitted). Non-factual speculation, conclusions, opinions, and legal

statements are excluded from FRCP 12(b)(2) and (6) analysis because they do not provide the

factual material needed to set out the claim to entitlement to relief. They are just filler.

> A statement of parallel conduct, even conduct consciously undertaken, needs
> some setting suggesting the agreement necessary to make out a § 1 claim; without
> that further circumstance pointing toward a meeting of the minds, an account of a
> defendant's commercial efforts stays in neutral territory. An allegation of parallel
> conduct is thus much like a naked assertion of conspiracy in a § 1 complaint: it
> gets the complaint close to stating a claim, but without some further factual
> enhancement it stops short of the line between possibility and plausibility of
> "entitle[ment] to relief." Cf. DM Research, Inc. v. College of Am. Pathologists,
> 170 F.3d 53, 56 (CA1 1999) ("[T]erms like 'conspiracy,' or even 'agreement,' are
> border-line: they might well be sufficient in conjunction with a more specific
> allegation--for example, identifying a written agreement or even a basis for
> inferring a tacit agreement, ... but a court is not required to accept such terms as a
> sufficient basis for a complaint").

*Twombly* at 557 (footnote omitted). This is the case with the FAC in its personal jurisdiction and

customer property allegations. A reason the Court demanded fact allegations is to prevent

inadequate complaints from being used as levers to extract unwarranted settlements:

> We alluded to the practical significance of the Rule 8 entitlement requirement in
> Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 125 S. Ct. 1627, when we explained
> that something beyond the mere possibility of loss causation must be alleged, lest
> a plaintiff with "'a largely groundless claim'" be allowed to "'take up the time of a
> number of other people, with the right to do so representing an in terrorem

3

increment of the settlement value.'" Id., at 347, 125 S. Ct. 1627, (quoting Blue
Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 741, 95 S. Ct. 1917).

*Id.* at 557-58. The Court developed its point further:

> So, when the allegations in a complaint, however true, could not raise a claim of
> entitlement to relief, "'this basic deficiency should...be exposed at the point of
> minimum expenditure of time and money by the parties and the court.'" 5 Wright
> & Miller § 1216, at 233-234 (quoting Daves v. Hawaiian Dredging Co., 114 F.
> Supp. 643, 645 (Haw. 1953)); see also Dura, supra, at 346, 125 S. Ct. 1627; Asahi
> Glass Co. v. Pentech Pharmaceuticals, Inc., 289 F. Supp. 2d 986, 995 (ND Ill.
> 2003) (Posner, J., sitting by designation) ("[S]ome threshold of plausibility must
> be crossed at the outset before a patent antitrust case should be permitted to go
> into its inevitably costly and protracted discovery phase").

> Thus, it is one thing to be cautious before dismissing an antitrust complaint in
> advance of discovery, cf. Poller v. Columbia Broadcasting System, Inc., 368 U.S.
> 464, 473, 82 S. Ct. 486, but quite another to forget that proceeding to antitrust
> discovery can be expensive. As we indicated over 20 years ago in Associated
> Gen. Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519, 528, n. 17, 103 S. Ct.
> 897, "a district court must retain the power to insist upon some specificity in
> pleading before allowing a potentially massive factual controversy to proceed."

*Twombly*, at 557-59.

Two years later, the Court used *Iqbal* to underscore the importance of what *Twombly* had

to say. The case was a constitutional discrimination claim. As in *Twombly*, the *Iqbal* complaint

included some specific facts but ultimately it rested on conclusions, speculations, and legal

assertions. *Id.* at 668-69, 680-83. The Court explained its *Twombly* holding and continued:

> In keeping with these principles a court considering a motion to dismiss can
> choose to begin by identifying pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth. While legal conclusions
> can provide the framework of a complaint, they must be supported by factual
> allegations. <u>When there are well-pleaded factual allegations, a court should
> assume their veracity and then determine whether they plausibly give rise to an
> entitlement to relief</u>.

*Id.* at 679 (emphasis added). The underscored sentence says that the sufficiency of the complaint

depends only on the "factual allegations," which are missing from the FAC. Applying *Twombly*,

the court identified the nub of the FRCP 8(a)(2) issue:

4

But even if the complaint's well-pleaded facts give rise to a plausible inference that respondent's arrest was the result of unconstitutional discrimination, that inference alone would not entitle respondent to relief.... To prevail on that theory, the complaint must contain facts plausibly showing that petitioners purposefully adopted a policy of classifying post–September–11 detainees as "of high interest" because of their race, religion, or national origin.

This the complaint fails to do. Though respondent alleges that various other defendants, who are not before us, may have labeled him a person of "of high interest" for impermissible reasons, his only factual allegation against petitioners accuses them of adopting a policy approving "restrictive conditions of confinement" for post–September–11 detainees until they were "'cleared' by the FBI." Ibid. Accepting the truth of that allegation, the complaint does not show, or even intimate, that petitioners purposefully housed detainees in the [Administrative Maximum Special Housing Unit] due to their race, religion, or national origin. All it plausibly suggests is that the Nation's top law enforcement officers, in the aftermath of a devastating terrorist attack, sought to keep suspected terrorists in the most secure conditions available until the suspects could be cleared of terrorist activity. Respondent does not argue, nor can he, that such a motive would violate petitioners' constitutional obligations. He would need to allege more by way of factual content to "nudg[e]" his claim of purposeful discrimination "across the line from conceivable to plausible." Twombly, 550 U.S., at 570, 127 S.Ct. 1955.

*Iqbal* at 682-83. Furthermore, it is critical to analyzing the FAC that the *Iqbal* Court applied the obligation to plead facts to matters of "[m]alice, intent, knowledge, or other conditions of a person's mind," which FRCP 9(b) allows to be pled "generally." The Court said that

"generally" is a relative term. In the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake. Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative— strictures of Rule 8. See 5A C. Wright & A. Miller, Federal Practice and Procedure § 1301, p. 291 (3d ed. 2004) ("[A] rigid rule requiring the detailed pleading of a condition of mind would be undesirable because, absent overriding considerations pressing for a specificity requirement, as in the case of averments of fraud or mistake, the general 'short and plain statement of the claim' mandate in Rule 8(a)...should control the second sentence of Rule 9(b)"). And Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label "general allegation," and expect his complaint to survive a motion to dismiss.

*Id.* at 686-87. This is particularly key to the Trustee's failure to allege <u>any</u> factual basis for the

FAC's conclusory assertion that KEB "knew" and "intended" its purchase of shares actually to

be an investment in BLMIS and that it "knew" its receipt of redemption payments came from

BLMIS. On those critical issues, the FAC simply pronounces the conclusion without a basis for

an inference. As we shall see, the Trustee has tried to get away without alleging factual matter to

support assertions and inferences he wants this court to credit, precisely what *Twombly* and *Iqbal*

rejected.

B.  The Trustee's Allegations of Personal
    <u>Jurisdiction over KEB Are Not Adequate</u>

In this section, we examine each allegation in the FAC pertaining to personal jurisdiction,

all of which are ¶¶ 5, 6 & 7, and explain why it is factually or legally insufficient to show, or

allow an inference, individually or in "totality," of personal jurisdiction over KEB.

1)  Failure to Distinguish Between What the FAC Alleges against KEB and What It Alleges
    <u>against Dismissed Co-Defendant Korea Investment Trust Management Company</u>

The FAC alleges claims against both KEB and Korea Investment Trust Management

Company (KIM), making most allegations against them as a contrived group called

"Defendants." Yet, the FAC alleges they were different entities and were engaged in different

businesses. FAC ¶ 21 says KB is a "foreign exchange bank" and ¶ 22 says KIM is "an

investment and asset management company." The FAC does not allege the entities were

affiliated or performed the same role, or had the same knowledge about purchases and sales of

Fairfield shares, and Trustee's description makes it plain they did not. The Trustee knows this

from his pre-FAC FRCP 11 diligence, and documents he identifies in the FAC and attaches to

his lawyer's declaration (the "Fish Decl."), make clear KEB and KIM had different roles.

Group pleadings are precluded when they do not inform <u>each</u> defendant what <u>it</u> is

accused of having done leading to <u>its</u> alleged liability. *E.g., Kirschner, v. JPMorgan Chase*

6

*Bank*, 17 Civ. 6334 (PGG) at 40-41 & n.10 (S.D.N.Y. Sep. 30, 2021) (rejecting amendment of

complaint as futile: "Plaintiff engaged in improper group pleading…. The fact that the [proposed

amended complaint], in certain paragraphs, distinguishes between the Citi entities …. does not

excuse Plaintiff's failure to distinguish between the Citi entities in other paragraphs.")[1]

The Trustee suggests that KEB should simply read the FAC as though every reference to

"Defendants" means "KEB" since he dismissed KIM from the action. Opp. Mem. at 5. That is

not an answer. Having already asserted that the "Defendants," separate and independent

companies with different roles in the Fairfield purchases and redemptions, both committed

certain liability-causing actions, he cannot not in good conscience or under FRCP 11 or 15 say

he actually meant only one of them.[2] Therefore, the complaint is defective and should be

dismissed.

---

[1] *Accord, e.g., In re Treasury Sec. Auction Antitrust Litig.*, 15 MD 2673 (PGG), at *24 & n.16 (S.D.N.Y. Mar. 31, 2022) ("[I]n presenting the UBS Executive's allegations, Plaintiffs continue their practice of impermissible group pleading. Rather than identify the employers of traders allegedly engaged in improper communications, the Amended Complaint - like the Complaint - merely refers to 'traders' 'at the primary dealers.' … Although the UBS Executive lists nine of the Auction Defendants by name - in asserting that traders from these banks 'chat[ted] about Treasuries yields and spreads to When Issued yields and bid quantities ahead of the actual auctions'- … Plaintiffs' allegations do not link any specific Defendant to any specific conversation. Instead, the generic terms 'dealers' or 'traders' are uniformly utilized."); *In re Interest Rate Swaps Antitrust Litig.*, 16-MD-2704 (PAE), at *30 (S.D.N.Y. May 23, 2018) ("the PTAC's persistent claims as to the motivations or actions of 'the Dealer Defendants' as a general collective bloc, or generalized claims of parallel conduct, must also be set aside, like the similar claims in the SAC, as impermissible group pleading. *See In re IRS*, 261 F. Supp. 3d at 478; *see also* discussion *infra*, at 32-33 (listing examples)."); *Theeheck.Com, LLC v. NEMC Fin. Servs. Grp. Inc.*, 16-cv-8722 (PKC), at *4-5 (S.D.N.Y. June 16, 2017) ("[T]he Complaint engages in impermissible group pleading. "Although Fed. R. Civ. P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.' A complaint fails to give fair notice when it "lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct . . . .'").

[2] The cases cited above show that this court's decision in the Mayer brothers' case, *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 08-01789 (CGM), at *1 (Bankr. S.D.N.Y. Oct. 27, 2021) ("Mayer"), is not to the contrary and turns on the unique facts of the Mayer brothers. In that case, David and Raphael Mayer controlled a network of companies, two of which owed the BLMIS Trustee a nearly $50 million judgment. The Trustee alleged that the brothers altered the judgment debtors' corporate structure to avoid liability and that they should be personally liable by piercing the corporate veil. David (but not Rafael or the corporation, Khronos), argued the complaint was an impermissible group pleading because it did not differentiate his from the others' roles.
The court rejected the argument saying, "While this is generally true [that group pleading is not permissible], group pleading is permissible where, like here, the Complaint 'informs each defendant of the nature of his or her alleged participation in the fraud.' Id. (cleaned up)." In the present case, the complaint does <u>not</u> inform KEB which acts the Trustee ascribes to it and what acts to KIM, a separate, independent entity with a different role in the Fairfield events. A rule that a Trustee could just say the "defendants should figure it out because they know what they did"

2)  Allegations that Are Non-Factual Conclusions, Conjecture, and Legal
    Opinion Disregarded under *Twombly/Iqbal* FRCP 8(a)(2) Analysis

All the personal jurisdiction allegations are in two paragraphs of the FAC -- ¶¶ 5 & 6. All

but three, which are discussed below, are non-factual and constitute only conclusions, conjecture,

and legal opinion, and must be excluded in judging the sufficiency of the FAC to show

entitlement to relief. It is important to review the actual working of those allegations, all set out

verbatim below.

| FAC ¶ | Allegation | Why It Is Insufficient to Allege Jurisdiction |
|---|---|---|
| 5 | "Defendants…purposefully availed themselves of the laws and protections of the United States and the state of New York"[3] | This is a non-factual legal conclusion. (It also misstates and dilutes the Supreme Court's jurisdictional standard, which is: "purposefully availed *itself of the privilege of conducting activities within* the forum State, *thus* invoking the benefits and protections of its laws" *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (emphasis added).) |
| 5 | "Defendants…knowingly direct[ed] funds to be invested with New York-based BLMIS through Fairfield" | This is a non-factual, conclusory, and speculative statement. As explained above and in part III below, under *Iqbal* even knowledge and intention statements must be supported by factual allegations sufficient under FRCP 8(a)(2). *Iqbal* at 662, 686-87. |
| 5 | "Defendants…knowingly received transfers of Customer Property from BLMIS" | This is a non-factual, conclusory, and speculative statement. As explained above and in Part III below, under Iqbal even knowledge and intention statements must be supported by factual allegations sufficient under FRCP 8(a)(2). *Iqbal* at 662, 686-87. |
| 5 | "The trustee's investigation to date reveals that Defendants obtained this [BLMIS] Customer Property by withdrawing money from Fairfield …." | This is conclusory and nothing in the FAC alleges fact to show KEB (or KIM) received any payment from BLMIS or any Customer Property or knew redemptions of Fairfield shares originated from BLMIS. *Iqbal* and *Twombly* require factual statements. |

---

would repeal the principle that a plaintiff has the burden of pleading its "entitlement to relief" from each defendant.
In the Mayer case, this court referred to the "factual information needed to fill out plaintiff's complaint" quoting
*DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d. Cir. 1987). The "factual information"
needed here is not the work of two brothers and is not in KEB's exclusive knowledge or control. KEB may not be
required to "prove the negative" of what it knew or guess at what assertions it is being required to defend.

[3] FAC ¶ 7 repeats the same legal conclusion with citations to CPLR 302 and Bankruptcy Rule 7004.

| 5 | "By directing its investment through FGG, Defendants …." | This non-factual implied assertion is contradicted by the Trustee's identification of specific subscription agreements (Opp. Mem. at 6) that plainly show that Fairfield payments were "directed" to and received from Fairfield "through" its Ireland Citco bank agent, and that NY-based FGG entities had no role. |
|---|---|---|
| 5 | "Defendants knowingly accepted the rights, benefits, and privileges of conducting business and or transactions in the''' US and NY. | This is a non-factual legal opinion. *Iqbal* requires even knowledge and intention statements to be supported by factual allegations sufficient under FRCP 8(a)(2). *Iqbal* at 686-87.<br><br>(It also misstates and dilutes the Supreme Court's jurisdictional standard, which is: "purposefully availed <u>itself</u> of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (emphasis added).) |
| 5 | "Defendants thus derived significant revenue from New York" | This is a conclusory, non-factual statement. The FAC does not allege <u>any</u> revenue KEB or KIM "derived" or received "from New York." |
| 5 | "Defendants thus…maintained minimum contacts and/or general business contacts with the United States and New York …." | This is a non-factual conclusory statement and a legal opinion. |
| 7 | "Defendants should reasonably expect to be [and are] subject to New York jurisdiction …." | This is a non-factual conclusory statement and legal opinion. |

3) **The Three Remaining Allegations are Factual But Legally Insufficient as a Basis for Personal Jurisdiction over KEB**

Only the three following allegations state facts potentially relevant to the Trustee's jurisdictional argument. However, none of them supports jurisdiction and, therefore, cannot create a "totality of the circumstances" for personal jurisdiction. The sum of the parts remains zero.

   a) FAC ¶ 5. "Defendant KEB, on behalf of Defendants, entered into a subscription agreement that subjected it to New York jurisdiction …."

The Trustee does not respond directly to KEB's showing that the choice of forum provision in the subscription agreement is too speculative and tenuous to be considered a "minimum contact" with New York. Compare Opp. Mem. at 14-16 with KEB Mem. at 7-8. In

9

the forum provision, KEB did <u>not</u> submit to NY jurisdiction for disputes over redemptions. Even for disputes over Fairfield share purchases, the NY forum is expressly non-exclusive. The standard of "purposeful availment" requires the defendant to have done some act within the state that uses or takes advantage of the state's facilities or resources such that the conclusion can be made that the *quid pro quo* was accepting a privilege from the state in exchange for submitting to its jurisdiction. That did not happen here. The forum provision only says that (1) <u>if</u> a future dispute were to arise over purchases and (2) <u>if</u> the parties were to elect in the future to have that dispute heard in NY, <u>then</u> KEB would be availing itself of the privilege of litigating in NY. As that did not happen no "availment" took place and never took place.

As a consequence, KEB did not exercise the privilege of availing itself of a right conferred by NY state. At most it potentially and conditionally might have used NY courts, just as it potentially might availed itself of Korean, BVI, or other jurisdictions' courts in a dispute over Fairfield shares. Even then, the "availing" itself of NY courts could not arise from this adversary proceeding, which is about redemptions held to be excluded from the forum clause. Therefore, the choice-of-forum provision is too tenuous and remote in time to be considered on a qualitative basis a taking of a privilege from NY in exchange for an undertaking to subject itself to jurisdiction here.[4]

    b) <u>FAC ¶ 5 "Defendant KEB, on behalf of Defendants,…wired funds to Fairfield through a bank in New York, and received funds through its own bank account in NY."</u>

---

[4] The same is true as to the provision on governing NY law, which is not mentioned in the FAC.

FAC ¶ 5 also says, "KEB, on behalf of Defendants,…sent a copy of the subscription agreement to FGG's New York City office." Even if this were true, it is not a "purposeful availment" "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." It is a vague allegation and is taken to refer to a mailing from Korea to NY at an unstated time for an unstated reason to an unspecified person or entity not relating to the claim in this suit. Myriad cases hold that a non-US entity's mailing of correspondence to NY has no jurisdictional significance.

This allegation is insufficient for three reasons. First, KEB did nothing on behalf of "Defendants" but on behalf of investment trusts expressly identified in each subscription agreement and the money transfer documents the Trustee has introduces as Fish Decl. Exs 2 & 3. Second, the documents including the subscription agreements are clear that transfers of money were between KEB's Seoul, South Korea, account and Fairfield's Dublin, Ireland, with Citco.

Third, the New York State Court of Appeals and Appellate Division decisions cited in KEB Mem. at 10-13, which prescribe the meaning of governing NY law, show that more is the use of a correspondent account can be a jurisdictional nexus only if the money transfers are designed by the defendant to further be an integral part of an illegal scheme in which the defendant actively participates. KEB Mem. at 10-13.[5] The Trustee does not really try to address the NY law. See Opp. Mem at 20. The most the Trustee says is that, if that is what the NY Court of Appeals requires, it is satisfied because Madoff was running an illegal scheme and the Defendants received stolen customer property. *Id.* But that is legally wrong and there is no allegation that KEB (or KIM) was involved in Madoff's illegal scheme and no factual allegation that KEB (or KIM) knew that any redemption was paid from money coming from BLMIS rather than Fairfield. See Part III below. Therefore, ignoring the actual holdings and reasoning of the NY cases law does not turn an instantaneous, innocent transfer of money for a commercial transaction through NY correspondent accounts into a basis for jurisdiction.[6] It is not a qualitative contact.

---

[5] *Accord, e.g., Pramer S.C.A. v. Abaplus*, 76 A.D.3d 89, 96 (N.Y. App. Div. 2010) ("The principal flaw in this reasoning is that the mere payment into a New York account does not alone provide a basis for New York jurisdiction (*Baptichon v Nevada State Bank*, 304 F Supp 2d 451 [ED NY 2004], affd 125 Fed Appx 374 [2d Cir 2005]; *Daewoo Intl. [Am.] Corp. v Orion Eng'g Serv., Inc.*, 2003 WL22400198, 2003 US Dist LEXIS 18696 [SD NY 2003]), especially when all aspects of the transaction occur out of state (*Continental Field Serv. Corp. v ITEC Intl., Inc.*, 894 F Supp 151 [SD NY 1995]), absent more extensive New York banking relating to the transaction in issue (*see Indosuez Intl. Fin. v National Reserve Bank*, 98 NY2d 238).")

[6] The Trustee points out that the Supreme Court's decision in *Jesner v. Arab Bank*, 138 S. Ct. 1386, 1394-95 (2018), cited and quoted in KEB Mem. at 9, is not substantively on point. Opp. Mem. at 19. But, as the KEB Mem. says, the purpose of referring to Justice Kennedy' opinion in *Jesner* was his detailed explanation of wire transfers through US

11

Accordingly, money transfers between Seoul, Korea, and Dublin, Ireland, "through" correspondent accounts in NY does not subject KEB to NY jurisdiction alone or in combination with any other alleged factors, all insufficiently alleged.

c) FAC ¶ 6. "Defendants are also subject to the jurisdiction of this Court because Defendant KEB, on behalf of Defendants, filed three customer claims with the trustee…thereby subjecting Defendants to New York jurisdiction."

It is true that filing a claim in a bankruptcy proceeding can, in some but not all circumstances, subject the filer to the bankruptcy court's jurisdiction in an adversary proceeding. But that is true only if the filed claim will be adjudicated in the same proceedings as the adversary proceeding. Here, the claims KEB filed were on behalf of specific named trusts, not the "Defendants." Here, the claims were rejected before the Trustee filed this proceeding and therefore they could never be adjudicated in the same proceeding as this action, Neither would, can, or will affect the other at all. The court's jurisdiction over KEB as a filer ended when the claims were rejected and was not revived by the Trustee's later decision to start an adversary proceeding against KEB. Accordingly, KEB's filing falls into the category of a former bankruptcy claim filing that does not create jurisdiction.

KEB cites cases dealing with the right of a party to a jury trial in a bankruptcy dispute, KEB Mem. at 14-16, which the Trustee argues are inapposite. Opp. Mem. at 20-21. A claim filer's right to a jury trial is certainly a different context for the issue. But those cases remain directly on point because they flow from the same legal principles and foundational law, and their holdings and rationale are directly controlling here. KEB Mem. at 16. The Trustee does not

---

correspondent banks, showing they are instantaneous, automatic, and without conscious thought in international commercial transactions, and are required to pass through US correspondent banks. That is important because they do not have the character of purposeful actions, unlike when a wrongdoer deliberately elects to make US wire transfers an integral element of its illegal scheme. See KEB Mem. at 11-13. The FAC makes no such allegations against KEB.

cite any cases showing why that would not be so. KEB's filing of claims in the BLMIS

bankruptcy does not confer jurisdiction over this court in this adversary proceeding.

C.  The Fairfield Private Placement Memorandum Does Not Support Jurisdiction because KEB
Could Not Have Obtained Knowledge from It that BLMIS was Managing Fairfield's Assets
or that Redemptions were Paid from BLMIS' rather than Fairfield's Assets

One section of the Trustee's Opp. Mem. is titled, "The PPM Makes Sentry's Connection

with New York Obvious." Opp. Mem. at 12.  It says the Trustee means the Fairfield PPM dated

October 1, 2004, *id.*, which the Trustee introduces as Fish Decl. Ex. 1. The Trustee asserts,

incorrectly, that information is contained in the PPM that in fact is not contained in it. See Opp.

Mem. at 14; Fish Decl. Ex. 1.[7]

The FAC does not mention the PPM or incorporate it by reference, and it should not be

considered on this motion. But, even if it is considered, it does not advance the Trustee's

argument about what KEB purportedly learned from it. The PPM does not disclose that Madoff

had any role with Fairfield, that BLMIS managed Fairfield's assets or Fairfield's split strike

conversion ("SSC") strategy, or that redemptions of Fairfield shares would be paid by BLMIS

not Fairfield. In fact, it says seventeen times that a Bermudan entity with offices in Hamilton,

Bermuda, was Fairfield's Investment Manager. All it says about BLMIS is that it then served as

a sub-custodian to a Citco custodial entity as to 95% of Fairfield's assets. But the PPM did not

say or intimate that Fairfield had to invest 95% of its assets in BLMIS or to allow BLMIS to

manage them.  It did say Fairfield had to invest 95% of its assets in the SSC strategy but also

said the Bermuda Investment Manager was superintending the investment strategy. The October

1, 2004, PPM gave a reader no indication that BLMIS had any role in Fairfield except as a sub-

custodian.  Custodians are just that, not asset managers, financial advisors, or securities brokers.

---

[7]  The Trustee may be confusing things disclosed in later Fairfield PPMs that were not contained in the earlier
October 1, 2004, version. In any case, the 2004 PPM is Fish Decl. Ex. 1 and the court can verify what it does and
does not contain.

This is important in assessing the "knowledge" KEB had. As shown above, there is no sufficient allegation that KEB knew the Fairfield shares were an investment in or would be managed by BLMIS, or that redemption proceeds would be coming from anyone other than Fairfield. But having that knowledge is central to the "tossed seed metaphor" and holding of Judge Lifland's *BLI* decision, *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012) ("*BLI*"), where he said:

> BLI's argument is disingenuous because BLI's investments in Fairfield Sentry did not merely "end up" in an account at BLMIS as a result of happenstance or coincidence. Rather, BLI purposefully availed itself of the benefits and protections of New York laws by <u>knowing, intending and contemplating</u> that the substantial majority of funds invested in Fairfield Sentry <u>would be transferred to BLMIS in New York</u> to be invested in the New York securities market. BLI not only was a self-proclaimed "Professional Investor," but also hired Union Securities to conduct diligence on Fairfield Sentry and its investment strategies. *See* Long Decl., Exs. 1, 2. As part of this diligence, BLI was furnished with a private placement memorandum and other information about Fairfield Sentry, including specifics about the Fund's investment strategy and past results and trades in the S & P 100. *See* Long Decl., Ex. 1, pp. 1–6, 10. <u>On BLI's behalf, Union Securities learned that the Fund's "strategy is executed by [BLMIS]," *id.* at 2, and the PPM highlighted BLMIS's central role in Fairfield Sentry's investment strategy, *see id.* at Ex. 4, p. 15. It explicitly stated that (i) Fairfield Sentry was required to invest at least 95% of its assets in the SSC utilized and controlled by BLMIS in New York; (ii) BLMIS was to act as custodian of these assets, holding them in segregated accounts in New York; and (iii) BLMIS was to</u> invest these assets in U.S. Securities and Treasuries. *Id.*; 2006 PPM, p. 21; *see* Compl., ¶ 3; Subscription Agreement, p. 1, ¶ 3, Ex. 6. Armed with the fruits of this diligence, BLI signed the Subscription Agreement, which incorporated the PPMs.

(Emphasis added.) As already shown, the FAC does not adequately allege any factual basis to assert that KEB had any such knowledge. See pages 8-9 above.

Judge Lifland specifically says these disclosures came from the "2006 PPM," not the "2004 PPM." None of the underscored items was contained in the 2004 PPM and no other factual allegation shows that KEB had such knowledge, intent, or contemplation. Those are the decisive points in Judge Lifland's *BLI* decision and, being absent here, *BLI* does not apply to KEB.

14

The Trustee argues, Opp. Mem. at 13-14, that it is enough that a reader of the 2004 PPM would have known that the SSC strategy called for buying and selling US securities in the US markets. That knowledge by itself does not confer jurisdiction. If that were true, did, every foreign individual and corporate purchaser of shares of every non-US mutual fund that has invested in US securities would be subject to US jurisdiction. That is not the law and would be a shock to all investors outside the US.

*BLI* rests on facts showing a knowledge and an intent that are not alleged in the FAC. Accordingly, *BLI* is not on point.

## II.  INCORPORATION OF THE FAIRFIELD
## COMPLAINT VIOLATES FRCP 8(A)(2) AND (D)(1)

KEB's does not dispute that the Fairfield Complaint[8] has been held to allege avoidability of initial transactions between BLMIS and Fairfield. KEB also accepts that incorporation of complaints can be permissible under FRCP 10(c). This court cited *In re Geiger*, 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010), for that same point. E.g., *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 08-01789 CGM, at *12 (Bankr. S.D.N.Y. June 30, 2022). However, immediately upon allowing incorporation under FRCP 10(c), Judge FitzSimon dismissed the *Geiger* complaint because the incorporation caused it to violate the "short plain statement" requirement of FRCP 8(a)(2) for exactly the same reasons KEB has urged in asking for the same relief. KEB Mem. at 27-29.  As in *Geiger*, that rule requires the Trustee to specify those (probably few) parts that frame the case against KEB. It does not call for KEB to pick from 800 paragraphs and 111 exhibits the parts KEB must defend and determine the scope of discovery and further proceedings. It is the Trustee's job to excise the parts (probably the bulk) with no bearing on his case against KEB.

---

[8] Trustee's Amended Complaint in *Picard v. Fairfield Inv. Fund Ltd*, Adv. Proc. No. 09-01239 (CGM), filed July 20, 2010, ECF No. 23 ("Fairfield Complaint").

KEB is certainly not asking the Trustee to add the entirety of the prolix Fairfield

Complaint into the KEB complaint by amendment.  That would be pointless, as would be the

Trustee's suggestion that the court could take juridical notice that the Fairfield Complaint exists.

The Trustee can provide a simple list of paragraphs or, if he prefers, add only those paragraphs to

the KEB complaint. That would not be a big task for the Trustee, who presumably knows what

applies to KEB and what does not.

In dismissing the *Geiger* complaint under FRCP 8(a)(2) & (d)(1), Judge FitzSimon said:

> That said [i.e., allowing the incorporation], upon careful consideration of the
> Complaint in the Non-dischargeability Adversary, the Court finds that the
> pleading does not meet Rule 8's requirements that a pleading contain a "short and
> plain statement of the claim showing that the pleader is entitled to relief" and that
> "[e]ach allegation must be simple, concise, and direct." Fed.R.Civ.P. 8(a)(2),
> (d)(1).
>
> The purpose of Rule 8 is "to prevent complaints that are ambiguous or vague
> enough to impede the defendant's ability to form a responsive pleading." Young
> v. Centerville Clinic, Inc., 2009 WL 2448003, at *1 (W.D.Pa.Aug.10, 2009)
> (citing Schaedler v. Reading Eagle Publication, Inc., 370 F.2d 795, 798 (3d
> Cir.1967)). Young, which held that a "haphazard" and disorganized amended
> complaint should be dismissed, noted that the complaint "does not clarify which
> facts actually apply to which claims. The Amended Complaint ... creates an undue
> burden for the Court and the Defendant to sift through...." Id. at *2. See also
> Glenn v. Hayman, 2007 WL 894213, at *2 (D.N.J. Mar.21, 2007) ("length and
> complexity may doom a complaint by obfuscating the claim's essence ... judges
> and adverse parties need not try to fish a gold coin from a bucket of mud") (citing
> In re Westinghouse Sec. Litig., 90 F.3d 696, 703 (3d Cir.1996)) (additional
> citations omitted).

Id. at  679.  That is exactly the problem KEB faces because the Fairfield Complaint alleges 31

different legal claims against 45 defendants, whereas the KEB complaint alleges only a single

claim against KEB alone.

KEB is prejudiced. It is at risk by not knowing if the claim against it includes or excludes

FAC paragraphs that the Trustee thinks are relevant but KEB does not. In the quote above, Judge

FitzSimon adopts the apt metaphor in *Glenn v. Hayman* that "length and complexity may doom a

complaint by obfuscating the claim's essence...judges and adverse parties need not try to fish a gold coin from a bucket of mud"). It is not relevant that KEB has been part of the Madoff litigation for ten years because its participation has not given, and cannot give, any insight into which paragraphs of the Fairfield Complaint the Trustee considers relevant to the claim against KEB in this proceeding. The FRCP requires the Trustee to state his claim clearly. It does not require KEB to guess what it charged with or move under FRCP 12(f) to compel the elimination of "redundant [and] immaterial...matter" to make the claim clear. The Trustee should be required to undertake the minimally burdensome process of identifying what in the Fairfield Complaint he considers relevant and leave out the rest.

### III.  THE TRUSTEE'S CUSTOMER PROPERTY ALLEGATIONS CANNOT STAND BECAUSE THEY ARE IMPOSSIBLE, NOT ONLY IMPLAUSIBLE

The court correctly cited *Geiger* in holding that all the subsequent transfer complaints against all the subsequent transferees are part of the "same action" and allowing the Fairfield Complaint to be incorporated into the other complaints. *E.g., Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 08-01789 CGM, at *12 (Bankr. S.D.N.Y. June 30, 2022) (citing *Geiger* at 679). The Trustee agrees. Opp. Mem. at 33. Therefore, all the subsequent transfer cases are part of the "same case," including the exhibits attached to and incorporated into them.

Importantly, the Trustee's allegations and exhibits in all the subsequent transfer cases are also judicial admissions for purposes of the KEB case, which is part of "same case" as the others. A judicial admission is defined this way:

> Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal. Indeed, they are "not evidence at all but rather have the effect of withdrawing a fact from contention." [citations omitted]. A judicial admission is conclusive, unless a court allows it to be withdrawn; ordinary evidentiary admissions, in contrast, may be controverted or explained by the party.

*Guadagno v. Wallack Ader Levithan Associates*, 950 F. Supp. 1258, 1261 (S.D.N.Y. 1997)

(Rakoff, J.) (quoting *Keller v. United States*, 58 F.3d 1194, 1199 n. 8 (7th Cir. 1995)).[9]

 The judicial admissions in Exhibits A, B, and C to the Trustee's subsequent transfer

complaints include two critical facts. One is that BLMIS paid Fairfield $3 billion; the other is

that Fairfield made $5 billion redemption and other payments. The KEB complaint does not say

anywhere that Fairfield had no source of funds except from BLMIS, and the Trustee's judicial

admissions show that Fairfield had, and paid out, $2 billion more than it received from BLMIS.[10]

They only inferences that can be drawn are that either some defendants received 100% customer

property and others received zero customer property or (2) every defendant received some

customer property. Which is it? If a defendant received no customer property, the Trustee has

pled no claim against it. If it received some customer property there may be a claim. However,

not a word of the KEB complaint factually alleges that KEB received a penny of BLMIS

customer property and the exhibits show it may, or may not, have received any. Therefore, the

KEB complaint must be dismissed.[11]

---

[9] *Accord Bellefonte re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528-29 (2d Cir. 1985) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding. White v. Arco/Polymers, Inc., 720 F.2d 1391, 1396 (5th Cir. 1983); see Mull v. Ford Motor Co., 368 F.2d 713, 715 (2d Cir. 1966). Accordingly, the district court properly disregarded Universal's affidavits seeking to controvert its own pleading.").

[10] This court has said in another subsequent transfer case that "The complaint plausibly alleges…that Fairfield Sentry did not have any other property to give" other than what it received from BLMIS. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*, 08-01789 CGM, at *8 (Bankr. S.D.N.Y. Aug. 12, 2022) ("*Delta*"). That is not alleged in the KEB complaint. Even if it were alleged, this court, in *Delta*, excluded the exhibits to the Trustee's non-*Delta* subsequent transfer complaints as not part of the complaint before the court. But the court was not asked to rule on the fact that they still constitute judicial admissions under the "same case umbrella." Therefore, *Delta* does not apply here.

[11] This court quoted the Second Circuit's unexceptionable statement that "[a] district court, in deciding whether to dismiss a complaint under FRCP 12(b)(6), is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference." E.g., *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 08-01789 (CGM), at *14 (Bankr. S.D.N.Y. June 30, 2022) (quoting *Williams v. Time Warner Inc.*, 440 Fed.Appx. 7, 9 (2d Cir. 2011), citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)). But the point here, not raised in *Williams* or *Taylor*, is that the exhibits to the other complaints under the umbrella of this same case are "judicial admissions."

This court has said that "[t]he exhibits attached to the Complaint provide [that defendant] with the "who, when, and how much" of each transfer" and that is sufficient. *E.g., SIPC v. Bernard L. Madoff Inv. Sec. LLC,* 08-01789 (CGM), at *14 (Bankr. S.D.N.Y. June 30, 2022) (citing *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018).) But, respectfully, the KEB complaint gives no such information and, in fact, the complaint and judicial admissions make it as possible that KEB received no customer property as that it received some. That does not nudge the Trustees allegations over the line from conceivable to plausible. Receipt of customer property is an indispensable element of the Trustee's cause of action but, his admission that Fairfield received $5 billion only $3 billion of which came from BLMIS, the Trustee has alleged only that KEB <u>may or may not</u> have received a penny of customer property. That is insufficient. Even if the complaint specifies the who, what, and when of what redemption payments Fairfield made to KEB, it does not adequately allege that <u>any</u> of that money was BLMIS customer property.

This pleading failure violates the fundamental requirement in *Twombly* and *Iqbal* that a claim must be based on factual allegations that make it not just possible or conceivable but plausible. It is not possible or plausible that $3 billion covered $5 billion of payments. As the FAC does contains no factual allegation that KEB received any money that originated from BLMIS or that Fairfield possessed only money BLMIS supplied to it, the FAC must be dismissed because it fails to show by factual allegations that "the pleader is entitled to relief" from KEB.

## CONCLUSION

For the foregoing reasons, KEB respectfully requests dismissal of the complaint.[12]

---

[12] KEB does not consent to the Bankruptcy Court's entry of a final order or final judgment.

Dated: New York, NY
          August 15, 2022

                                        **Respectfully submitted,**

                                        /s/  Richard A. Cirillo
                                        _____

                                        Richard A. Cirillo
                                        CIRILLO LAW OFFICE
                                        246 East 33rd Street – 1 FR
                                        New York, NY 10016-4802
                                        T:  917-541-6778
                                        E:  rcirillo@cirillo-law.com
                                        *Attorney for Defendant*
                                        *Korea Exchange Bank*