John F. Zulack (jzulack@abv.com)
Lauren J. Pincus (lpincus@abv.com)
David A. Shaiman (dshaiman@abv.com)
ALLEGAERT BERGER & VOGEL LLP
111 Broadway, 20th Floor
New York, NY 10006
Telephone: (212) 571-0550
Facsimile: (212) 571-0555

*Attorneys for Defendant Bordier & Cie SCmA*
*(sued as Bordier & Cie)*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>        Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        Defendant. | Adv. Pro. No. 08-01789 (CGM) (Bankr. S.D.N.Y.)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>        Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>        Plaintiff,<br><br>v.<br><br>BORDIER & CIE,<br><br>        Defendant. | Adv. Pro. No. 12-01695 (CGM) (Bankr. S.D.N.Y.) |

## DEFENDANT BORDIER & CIE SCmA's
## MOTION FOR LEAVE TO APPEAL PURSUANT TO 28 U.S.C. § 158(a)(3)

# <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. Bankr. P. 8012, the undersigned counsel of record for Bordier & Cie SCmA (sued as Bordier & Cie), a non-governmental corporate party, states that it has no parent corporation and no publicly held corporation directly or indirectly owns 10% or more of its equity interests.

Dated:  August 16, 2022

s/ John F. Zulack
John F. Zulack

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ...........................................................i

TABLE OF AUTHORITIES ...............................................................................iv

PRELIMINARY STATEMENT ...........................................................................1

STATEMENT OF FACTS ...................................................................................5

QUESTIONS PRESENTED...................................................................................9

RELIEF SOUGHT ...............................................................................................10

ARGUMENT .......................................................................................................10

I.   THE BANKRUPTCY'S COURT'S LEGAL ERRORS PRESENT
EXCEPTIONAL CIRCUMSTANCES WARRANTING
INTERLOCUTORY REVIEW ...................................................................10

   A.   THE ORDER INVOLVES A CONTROLLING
QUESTION OF LAW.........................................................................11

   B.   SUBSTANTIAL GROUND FOR DIFFERENCE OF
OPINION EXISTS BECAUSE THE BANKRUPTCY
COURT MISREAD THIS COURT'S *COHMAD*
DECISION ..........................................................................................13

   C.   AN IMMEDIATE APPEAL WILL ADVANCE THE
ULTIMATE TERMINATION OF THIS LITIGATION....................19

   D.   EXCEPTIONAL CIRCUMSTANCES ALSO EXIST
BECAUSE CORRECTION OF THE
BANKRUPTCY COURT'S ERROR WOULD RESULT
IN THE TERMINATION OR NARROWING OF 58
SUBSEQUENT TRANSFEREE PROCEEDINGS AND
DISMISSAL OF MORE THAN $1.8 BILLION OF
SAFE-HARBORED CLAIMS.............................................................20

CONCLUSION....................................................................................................23

CERTIFICATE OF COMPLIANCE....................................................................24

EXHIBIT A:    The Bankruptcy Court's July 12, 2022 Order Denying Bordier & Cie SCmA's Motion to Dismiss the Complaint Under Bankruptcy Rule 7012(b) and Federal Rule of Civil Procedure 12(b)(6) [ECF105]

EXHIBIT B:    The Bankruptcy Court's June 30, 2022 Memorandum Decision Denying Defendant's Motion to Dismiss [ECF 105]

EXHIBIT C:    Adversary Proceedings Subject to Section 546(e) Defense

# TABLE OF AUTHORITIES

Page(s)

Cases

*Capitol Records, LLC v. Vimeo, LLC*,
972 F. Supp. 2d 537 (S.D.N.Y. 2013) ...................................................................12

*In re Ditech Holding Corp.*,
2021 WL 4267691 (S.D.N.Y. Sept. 20, 2021)...........................................................10

*Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.)*,
2006 WL 2548592 (S.D.N.Y. Sept. 5, 2006).....................................................*passim*

*Flor v. BOT Fin. Corp. (In re Flor)*,
79 F.3d 281 (2d Cir. 1996)...................................................................................13

*McMillan v. City of N.Y.*,
2011 WL 5237285 (S.D.N.Y. Aug. 23, 2011)........................................................12

*MF Global Holdings Ltd. v. Allied World Assurance Co. (In re MF
Global Holdings Ltd.)*,
296 F. Supp. 3d 662 (S.D.N.Y. 2017) ...................................................................20

*Picard v. Banque Cantonale Vaudoise (In re Madoff)*,
2022 WL 2761044 (Bankr. S.D.N.Y. July 14, 2022) ...............................................9

*Picard v. Banque Lombard Odier & Cie SA (In re Madoff)*,
2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ..............................................8

*Picard v. Banque Syz & Co., SA (In re Madoff)*,
2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022) ..............................................8

*Picard v. Barclays Bank (Suisse) S.A. (In re Madoff)*,
2022 WL 2799924 (Bankr. S.D.N.Y. July 15, 2022) ...............................................9

*Picard v. Bordier & Cie (In re Madoff)*,
2022 WL 2390556 (Bankr. S.D.N.Y. June 30, 2022) ...........................8, 14, 16, 17

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
12 F.4th 171 (2d Cir. 2021) .................................................................................5

iv

*Picard v. Fairfield Investment Fund (In re Madoff)*,
2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ................................................16

*Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv.
Sec. LLC)*,
773 F.3d 411 (2d Cir. 2014) ...................................................14, 15, 18, 21

*Picard v. Katz*,
462 B.R. 447 (S.D.N.Y. 2011) ................................................................20

*Picard v. Lloyds TSB Bank PLC (In re Madoff)*,
2022 WL 2390551 (Bankr. S.D.N.Y. June 30, 2022) .............................................9

*Picard v. Multi-Strategy Fund Ltd. (In re Madoff)*,
2022 WL 2137073 (Bankr. S.D.N.Y. June 13, 2022) .............................................8

*In re Picard*,
917 F.3d 85 (2d Cir. 2019) .....................................................................5

*Shinn v. Ramirez*,
142 S. Ct. 1718 (2022) .........................................................................12

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*,
2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ..................................................*passim*

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
476 B.R. 717 (S.D.N.Y. 2012) ............................................................20, 21

*In re Tribune Co. Fraudulent Conveyance Litig.*,
946 F.3d 66 (2d Cir. 2019) .....................................................................14

Statutes

11 U.S.C. § 544(b) ............................................................................2

11 U.S.C. § 546(e) ......................................................................*passim*

11 U.S.C. § 548(a) ......................................................................*passim*

11 U.S.C. § 550 ......................................................................2, 5, 17

28 U.S.C. § 158(a)(3) .......................................................................1, 10

28 U.S.C. § 1292(b) ....................................................................*passim*

Rules

Fed. R. Bankr. P. 8002(d) ............................................................................................1

Fed. R. Bankr. P. 8004.................................................................................................1

Pursuant to 28 U.S.C. § 158(a)(3) and Fed. R. Bankr. P. 8004,

defendant Bordier & Cie SCmA (sued as Bordier & Cie) ("Bordier") hereby moves

for leave to appeal from an order (the "Order"; Ex. A hereto) of the United States

Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court")

denying Bordier's motion to dismiss the Complaint of plaintiff Irving H. Picard

(the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities

LLC ("BLMIS") and the substantively consolidated estate of Bernard L. Madoff

("Madoff").[1]

## PRELIMINARY STATEMENT

The Trustee's Complaint alleges that Bordier, a Swiss private bank,

received subsequent transfers of BLMIS customer property from a BLMIS feeder

fund to whom BMLIS had made fraudulent transfers in furtherance of a Ponzi

scheme.  The Trustee alleges that BLMIS never actually traded securities on behalf

of its customers and that BLMIS's customers/initial transferees (the feeder funds)

knew of the fraud.  The Trustee does not allege Bordier was anything but an

innocent transferee.

---

[1] By Stipulation and Order entered July 14, 2022 [ECF 108], pursuant to Fed. R. Bankr. P. 8002(d) the Bankruptcy Court extended Bordier's time to appeal the Order through August 16, 2022, thus making this appeal and motion timely under Fed. R. Bankr. P. 8004(a).  Except where otherwise indicated, all references herein to "ECF ___" are to the docket of the Bankruptcy Court in Adversary Proceeding No. 12-01695.

Bankruptcy Code Sections 544(b), 548(a) and 550(a) allow a

bankruptcy trustee to avoid a debtor's fraudulent transfer of property and to

recover the avoided transfer from the initial transferee and in some cases from a

subsequent transferee.  However, Bankruptcy Code Section 546(e) expressly

restricts the avoidability of a settlement payment or a transfer made in connection

with a securities contract by or to a financial institution to transfers avoidable

under section 548(a)(1)(A), which in turn authorizes only the avoidance of

transfers made with actual fraudulent intent within two years of bankruptcy.

In *Cohmad*, this Court withdrew the reference from the Bankruptcy

Court in this and over 100 other adversary proceedings to address issues relating to

the Trustee's ability to pursue recovery claims notwithstanding the securities safe

harbor created by Section 546(e).[2]  The result was an Opinion and Order, *SIPC v.
Bernard L. Madoff Inv. Sec. LLC*, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)

(Rakoff, J.) ("*Cohmad*"), which provided the Bankruptcy Court and parties to the

BLMIS liquidation proceedings answers to fundamental questions concerning the

interpretation and application of Section 546(e).  First, this Court expressly

precluded a defendant transferee from invoking section 546(e)'s protections if it

actually knew that BLMIS was not trading securities.  Second, this Court

---

[2] *SIPC v. Bernard L. Madoff Inv. Secs. LLC*, No. 12 MC 0115 (JSR), ECF No. 119
(S.D.N.Y. May 16, 2012).

2

confirmed that Section 546(e) applies, independently of the securities contracts

between BLMIS and the initial transferees, to withdrawals a BLMIS customer

(*e.g.*, a feeder fund) made to fulfill its payment obligations to redeeming financial

institution defendants under separate securities contracts between the feeder fund

and the defendants.  This Court instructed the Bankruptcy Court to implement

these holdings on remand.

      Here, however, the Bankruptcy Court simply ignored *Cohmad's*

second holding, and misconstrued its first.  With regard to the first holding, as this

Court explained in *Cohmad*, the *defendant's* actual knowledge determines whether

it should be precluded from invoking Section 546(e), because Congress' purpose

behind the securities safe harbor – promoting investors' reasonable expectations as

to the finality of their legitimate securities market transactions – is not served in

the discrete class of cases where the defendants knew of the underlying fraud and

understood that no securities were being traded.  The Bankruptcy Court's holding

barring innocent subsequent transferee defendants from invoking Section 546(e),

based on the knowledge of initial transferees, is a drastic and unwarranted

extension of the limited *Cohmad* rule.

      The second *Cohmad* holding provides an alternative way in which

Section 546(e) shields the initial transfers at issue here from avoidance,

independent of any BLMIS-Fairfield Sentry account agreements.  The facts alleged

here by the Trustee precisely match the scenario outlined by this Court in *Cohmad*:

the initial transferee, a feeder fund, withdrew money from BLMIS to fulfill its

payment obligations to Bordier, a defendant financial institution, under securities

contracts between Sentry and Bordier, to which BLMIS was not a party.  While

this issue was fully briefed in the Bankruptcy Court, that court ignored this

additional way in which Section 546(e) applies in the Action

      Those fundamental errors prompt this appeal, which presents two pure

and controlling questions of law, common to dozens of  adversary proceedings

pending in the Bankruptcy Court: (1) Whether the Bankruptcy Court erred by

interpreting *Cohmad* to preclude *innocent subsequent transferee defendants – i.e.*,

those not alleged to have had actual knowledge of BLMIS's fraud – from asserting

their Section 546(e) defenses, simply because the *initial* transferee allegedly had

such knowledge; and (2) Whether *Cohmad* alternatively requires dismissal under

Section 546(e) because the initial transferee's withdrawals of funds from BLMIS

were caused by their payment obligations to subsequent transferee financial

institution defendants, under those defendants' securities contracts with the initial

transferee?

      This Court should grant leave for an interlocutory appeal of the

Bankruptcy Court's Order not only because it is wrong, but also because reversal

would substantially streamline the course of this and at least 40 other similar

adversary proceedings and would terminate at least 17 others now pending in the

Bankruptcy Court. The appeal raises pure controlling issues of law—the

interpretation of this Court's holdings in the *Cohmad* decision—that does not

require study of the factual record and about which there is a substantial ground for

difference of opinion, thereby meeting the requirements for an interlocutory

appeal.

## STATEMENT OF FACTS

The Trustee has brought approximately 80 proceedings to recover

transfers made to foreign defendants by Fairfield Sentry Ltd. ("Sentry") and other

offshore BLMIS feeder funds. The Trustee alleges that the transfers constituted

subsequent transfers of customer property initially transferred to the feeder funds

by BLMIS. These proceedings were filed a decade or more ago but had been

dormant pending the Trustee's appeals regarding the extraterritorial reach of 11

U.S.C. § 550(a)(2) and the pleading standards for the good faith for value defense

under 11 U.S.C. § 550(b).

Following the Second Circuit's decisions on those issues in *In re

Picard*, 917 F.3d 85 (2d Cir. 2019) (extraterritoriality), and *Picard v. Citibank,

N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171 (2d Cir. 2021) (good

faith), and reassignment of all BLMIS proceedings in the Bankruptcy Court to the

Honorable Cecelia G. Morris, Judge Morris directed separate briefing schedules in

each proceeding, even though many of the grounds and arguments—particularly in regard to the Section 546(e) safe harbor—are common to most of the proceedings. As a result, more than 40 separate motions making substantially identical legal arguments on those common legal issues have already been filed in the various proceedings, with briefing scheduled into 2023; numerous additional motions remain to be filed and briefed.

Bordier's motion to dismiss was among the first in the series to be argued and decided, and its case presents the Section 546(e) safe harbor issue clearly. Bordier is a private bank located in Switzerland. The Trustee seeks to recover $7,928,454 in share redemption payments made to Bordier by Sentry, the vast majority of which were paid between 2003 and early 2007. The Trustee alleges that nearly all[3] the funds Bordier received were customer property that BLMIS had initially transferred to Sentry more than two years before BLMIS's December 12, 2008 petition date and thus outside the lookback period for claims under 11 U.S.C. § 548(a)(1)(A), the only claims exempt from the section 546(e) safe harbor.

---

[3] The Trustee alleges that Bordier received $197,172 in redemption payments from Sentry – less than 2.5% of the total amount claimed – from initial transfers that BLMIS made within two years of the SIPA proceeding.

In the proceedings below, the Trustee did not dispute that any such initial transfer was made by a stockbroker (BLMIS) to a financial institution (Sentry, by virtue of its status as a customer of a bank that acted as its agent in connection with the transfers) in connection with a securities contract (the account agreement between BLMIS and Sentry) and also in connection with a separate securities contract (Sentry's Articles of Association, which govern share redemptions). The Trustee also did not dispute that the initial transfers were made for the benefit of a financial institution—Bordier.[4] Thus, by its terms Section 546(e) applies to any initial transfer the Trustee could seek to recover from Bordier as a subsequent transferee, and the Bankruptcy Court did not find otherwise. Moreover, the Complaint does not allege that Bordier had actual knowledge of Madoff's fraud; the Trustee did not argue otherwise on the motion; and the Bankruptcy Court did not find otherwise in its decision.

Instead, the Trustee argued, and the Bankruptcy Court agreed, that solely because the Trustee adequately alleged that the initial transferee, Sentry, had actual knowledge of Madoff's fraud, Bordier was not permitted to raise the safe harbor defense to the avoidability of the initial transfer on its own behalf as a

---

[4] Bordier argued below, and the Trustee did not dispute, that "[t]he Trustee's theory of recovery against Bordier as a subsequent transferee amounts to an allegation that the initial transfers from BLMIS to Sentry were made "for the benefit of" Bordier." Opening Brief (at 20, ECF 87).

subsequent transferee. *See* Op. at 12-14, *Picard v. Bordier & Cie (In re Madoff)*,
No. 12-01695, 2022 WL 2390556, at *5-6 (Bankr. S.D.N.Y. June 30, 2022) (Ex. B
hereto). In denying Bordier's motion, the Bankruptcy Court concluded that it was
required to apply this Court's mandate in *Cohmad* (despite the factual
differences),[5] that it was "powerless to reconsider this issue, [and] agrees with the
district court's reasoning." Op. at 12, 2022 WL 2390556, at *5. But its opinion
nowhere explains why *Cohmad*—which addressed the situation in which a
subsequent transferee *did* have actual knowledge of Madoff's fraud—requires that
a subsequent transferee that *did not* have such knowledge be denied the ability to
invoke a section 546(e) safe harbor defense to the avoidability of the underlying
initial transfer.

    Both before and since the Bankruptcy Court issued its opinion
denying Bordier's motion to dismiss, it has issued a series of opinions denying
motions to dismiss by other subsequent transferee defendants, many in nearly
verbatim language.[6] The Bankruptcy Court will presumably continue issuing

---

[5] *Bordier* is one of the proceedings to which *Cohmad*'s ruling expressly applies.
*See* Amended Notice of Motion to Dismiss, *Cohmad*, No. 12-MC-115, ECF 289
(S.D.N.Y. Aug. 10, 2012) (listing proceedings involved in *Cohmad*).

[6] *See Picard v. Multi-Strategy Fund Ltd. (In re Madoff)*, 2022 WL 2137073, at *8-
10 (Bankr. S.D.N.Y. June 13, 2022); *Picard v. Banque Syz & Co., SA (In re
Madoff)*, 2022 WL 2135019, at *8-10 (Bankr. S.D.N.Y. June 14, 2022); *Picard v.
Banque Lombard Odier & Cie SA (In re Madoff)*, 2022 WL 2387523, at *8-10

opinions denying other defendants' motions on the same grounds as they are

submitted through January 2023 and beyond.  As a result, the issue raised in this

motion for leave to appeal broadly impacts scores of defendants targeted in the

Trustee's litigation against foreign investors in BLMIS foreign feeder funds.

## QUESTIONS PRESENTED

1.      Did the Bankruptcy Court err in interpreting this Court's

opinion in *Cohmad* to bar a subsequent transferee from asserting a section 546(e)

defense if the initial transferee is alleged to have had actual knowledge of

BLMIS's fraud, even though the subsequent transferee is *not* alleged to have had

such knowledge?

2.      Did the Bankruptcy Court err by failing to apply *Cohmad's*

additional holding that Section 546(e) separately applies by virtue of securities

---

(Bankr. S.D.N.Y. June 30, 2022); *Picard v. Lloyds TSB Bank PLC (In re Madoff)*,
2022 WL 2390551, at *4-6 (Bankr. S.D.N.Y. June 30, 2022); *Picard v. Banque
Cantonale Vaudoise (In re Madoff)*, 2022 WL 2761044, at *4-6 (Bankr. S.D.N.Y.
July 14, 2022); *Picard v. Barclays Bank (Suisse) S.A. (In re Madoff)*, 2022 WL
2799924, at *7 (Bankr. S.D.N.Y. July 15, 2022); *Picard v. First Gulf Bank (In re
Madoff)*, No. 11-2541 (CGM), ECF 100, at 16-21 (Bankr. S.D.N.Y. July 18, 2022);
*Picard v. Parsons Finance Panama S.A.*, No. 11-02542 (CGM), ECF 109, at 17-21
(Bankr. S.D.N.Y. Aug, 3, 2022); *Picard v. Meritz Fire & Marine Insurance Co.
LTD.*, No. 11-02539 (CGM), ECF 135, at 16-21 (Bankr. S.D.N.Y. Aug, 10, 2022);
*Picard v. Union Securities Investment Trust Co., Ltd.,* No. 12-01211 (CGM), ECF
112, at 16-21 (Bankr. S.D.N.Y. Aug, 10, 2022); *Picard v. Delta National Bank and
Trust Co.,* No. 11-02551 (CGM), ECF 105, at 10-12 (Bankr. S.D.N.Y. Aug, 12,
2022).

contracts between an initial transferee investment fund and defendants,

independent of the initial transferee's securities contracts with BLMIS, where the

Trustee alleged that the initial transferee withdrew money from BLMIS to fulfill its

payment obligations to Bordier, which was redeeming shares in the investment

fund?

### RELIEF SOUGHT

Bordier requests that this Court grant leave to appeal to permit

Bordier to seek reversal of the Bankruptcy Court's Order and dismissal of the

Trustee's claims in this proceeding.

### ARGUMENT

## I.    THE BANKRUPTCY'S COURT'S LEGAL ERRORS PRESENT EXCEPTIONAL CIRCUMSTANCES WARRANTING INTERLOCUTORY REVIEW

Appeals from non-final bankruptcy court orders may be taken with

leave by the district court under 28 U.S.C. § 158(a)(3).  In deciding whether to

grant leave to appeal, reviewing courts apply the standards of 28 U.S.C.

§ 1292(b), which governs the appealability of interlocutory district court orders.

*See In re Ditech Holding Corp.*, 2021 WL 4267691, at *1 (S.D.N.Y. Sept. 20,

2021) (Rakoff, J.); *Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.)*,

2006 WL 2548592, at *3 (S.D.N.Y. Sept. 5, 2006).  For an interlocutory appeal to

lie pursuant to Section 1292(b), the order being appealed must "(1) involve a

controlling question of law (2) over which there is substantial ground for

10

difference of opinion," and the movant must show that "(3) an immediate appeal would materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see Enron*, 2006 WL 2548592, at *3. Leave to appeal is warranted when the movant demonstrates the existence of "exceptional circumstances" to overcome the "general aversion to piecemeal litigation" and to "justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Id.*

As shown below, the three requirements are met here. And because the impact of the Bankruptcy Court's Section 546(e) holding extends to numerous similar proceedings that would otherwise be dismissed or streamlined, this case presents compelling circumstances for this Court to exercise its discretion to grant interlocutory review of the Order.

## A.    THE ORDER INVOLVES A CONTROLLING QUESTION OF LAW

"In regard to the first prong, the 'question of law' must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Enron*, 2006 WL 2548592, at *4. The question must also be "controlling" in the sense that reversal of the order would terminate the proceeding, or at a minimum that determination of the issue on appeal would materially affect the litigation's outcome. *Id.*

11

The pure questions of law presented here are controlling in this adversary proceeding because it addresses 97.5% of the Trustee's claims, leaving only a *de minimis* claim that could be resolved quickly and easily. The two questions at issue here are, moreover, pure issues of law, which both turn entirely on the interpretation of this Court's decision in *Cohmad*. *See, e.g.*, *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 552 (S.D.N.Y. 2013) (Abrams, J.) (finding the first Section 1292(b) factor satisfied because "the issue turns almost exclusively on a question of statutory interpretation"). There is no need for the Court to "study the record," *Enron*, 2006 WL 2548592, at *4, or engage in fact-finding. The dispositive fact is undisputed: the Trustee's Complaint does not allege that Bordier had actual knowledge of Madoff's fraud, nor did the Trustee do so in his opposition brief, conceding the issue.[7] Instead, the Trustee based his opposition solely on his argument that, under *Cohmad*, the initial transferee's alleged actual knowledge of Madoff's fraud is dispositive of a subsequent transferee's Section 546(e) defense, regardless of whether the subsequent transferee had such knowledge.[8] Thus, reversal of the Bankruptcy Court on

---

[7] *See Shinn v. Ramirez*, 142 S. Ct. 1718, 1730 (2022); *McMillan v. City of N.Y.*, 2011 WL 5237285, at *9 (S.D.N.Y. Aug. 23, 2011) (Rakoff, J.) ("By failing to submit any argument on this point, plaintiff has conceded the issue."), *vacated on other grounds*, 711 F.3d 120 (2d Cir. 2013).

[8] *See* Pl.'s Br. Opp. Mot. Dismiss at 2, 13-15 [ECF 96].

12

*Cohmad*'s application to an innocent subsequent transferee would entitle Bordier

to the protection of the Section 546(e) safe harbor and require dismissal of virtually

all the claims in the Complaint.

### B.   SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION EXISTS BECAUSE THE BANKRUPTCY COURT MISREAD THIS COURT'S *COHMAD* DECISION

Under the second prong of the Section 1292(b) test, "the 'substantial

ground for a difference of opinion' must arise out of a genuine doubt as to whether

the Bankruptcy Court applied the correct legal standard." *Enron*, 2006 WL

2548592, at *4. This requirement may be satisfied when "(1) there is conflicting

authority on the issue, or (2) the issue is particularly difficult and of first

impression for the Second Circuit." *Id*. "[I]t is the duty of the district judge . . . to

analyze the strength of the arguments in opposition to the challenged ruling when

deciding whether the issue for appeal is truly one on which there is a *substantial*

ground for dispute." *Flor v. BOT Fin. Corp. (In re Flor)*, 79 F.3d 281, 284 (2d Cir.

1996) (emphasis and ellipsis in original; internal quotation and citation omitted).

The issues presented by this appeal have not been decided by the

Second Circuit, and the arguments in opposition to the Bankruptcy Court's

decision are strong because the decision directly and repeatedly clashes with

*Cohmad*. In *Cohmad*, this Court held that a transferee defendant *with actual*

*knowledge* of BLMIS's fraud cannot invoke the protections of Section 546(e). It

13

did not, however, state (or even imply) that a transferee defendant *lacking* such

actual knowledge was also precluded from relying on Section 546(e). Rather, the

Court drew a sharp distinction between defendants having "actual knowledge" of

the BLMIS fraud and those who were innocent of such knowledge. *See Cohmad*,

2013 WL 1609154, at *4 (if the Complaint "adequately alleges that a defendant

had actual knowledge of Madoff's scheme, such a transferee stands in a different

posture from an innocent transferee, even as concerns the application of Section

546(e)").

The Bankruptcy Court, however, ignored that clear line. It not only

ruled that Bordier – a concededly innocent transferee – was precluded from relying

on Section 546(e), but incorrectly insisted that *Cohmad compelled* that result. *See*

Op. at 12, 2022 WL 2390556, at *5 ("The Court is powerless to reconsider this

issue . . . .").

By disentitling the class of "actual knowledge" defendants – and only

that class – from relying on Section 546(e), *Cohmad* expressly aimed to promote

what this Court (and later the Second Circuit)[9] identified as Congress' purpose in

---

[9] *See Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411, 420 (2d Cir. 2014) ("*Fishman*") ("Permitting the clawback of millions, if not billions, of dollars from BLMIS clients . . . would likely cause the very 'displacement' that Congress hoped to minimize in enacting § 546(e)"); *see also In re Tribune Co. Fraudulent Conveyance Litig*., 946 F.3d 66, 94 (2d Cir.

enacting Section 546(e): minimizing the displacement that a major bankruptcy can cause in the securities markets. *Cohmad*, 2013 WL 1609154, at *4. *Cohmad* sought to accomplish Congress' goal by "protecting the reasonable expectations of investors who believed they were signing a securities contract" while withholding "safe harbor" protection from defendants who, because they knew that BLMIS was a Ponzi scheme and not trading securities, lacked any such reasonable expectations. *Id*. The Bankruptcy Court's decision, however, frustrates – rather than protects – innocent subsequent transferees' reasonable expectations, based on their legitimate securities contracts and transactions. Nor can the Bankruptcy Court's holding be reconciled with *Fishman*, where the Second Circuit affirmed the dismissal of the Trustee's actions against innocent *direct* BLMIS investors under Section 546(e). 773 F.3d at 423 ("[B]y enacting § 546(e), Congress provided that, for a very broad range of securities-related transfers, the interest in finality is sufficiently important that they cannot be avoided by a bankruptcy trustee at all, except as actual fraudulent transfers under § 548(a)(1)(A)."). It would be anomalous to deny innocent *subsequent* transferee defendants – one step

2019) ("Section 546(e) is in full conflict with the goal of maximizing the assets available to creditors. Its purpose is to protect a national, heavily regulated [securities] market by limiting creditors' rights").

15

further removed from (and equally ignorant of) BLMIS's fraud – the same

statutory protection.

Moreover, the Bankruptcy Court's holding that an innocent

subsequent transferee defendant is stripped of its right to claim Section 546(e)

protection merely because a third-party – an unaffiliated initial transferee – is

alleged to have "actual knowledge" is contrary to this Court's repeated emphasis in

*Cohmad* on the actual knowledge of the particular *defendant being sued*. *See, e.g.*,

*Cohmad*, 2013 WL 1609154, at \*7 ("[I]f the Trustee sufficiently alleges that *the*

*transferee from whom he seeks to recover* a fraudulent transfer knew of [BLMIS's]

fraud, *that transferee* cannot claim the protections of Section 546(e)'s safe

harbor") (emphasis added);[10] *see also id*. at \*10 ("while Section 546(e) applies

generally to the adversary proceedings brought by the Trustee, *those defendants*

who claim the protections of Section 546(e) through a [BLMIS] account agreement

but who actually knew that [BLMIS] was a Ponzi scheme are not entitled to the

protections of the Section 546(e) safe harbor, and *their motions* to dismiss the

Trustee's claims on this ground must be denied") (emphasis added).  Nothing in

---

[10] In its decision, the Bankruptcy Court quoted its previous quotation (in *Picard v. Fairfield Investment Fund (In re Madoff)*, No. 08-01789 (CGM), 2021 WL 3477479, at \*4 (Bankr. S.D.N.Y. Aug. 6, 2021)) of this statement from *Cohmad*, but altered its meaning by inserting "[initial]" immediately before "transferee." *See* Op. at 10, 2022 WL 2390556, at \*4.

*Cohmad* warrants imputing initial transferees' knowledge to innocent subsequent

transferees that dealt with them at arm's length, much less compels the Bankruptcy

Court to deny such transferees' motions to dismiss.

Simply stated, innocent subsequent transferees such as Bordier are

covered by the general rule stated by this Court in *Cohmad*: where the Section

546(e) requirements are satisfied, as is concededly the case here, the Trustee may

not pursue a Section 550(a) recovery action against a transferee lacking actual

knowledge, except as to those subsequent transfers as to which the initial transfers

were avoidable under Section 548(a)(1)(A). *Cohmad*, 2013 WL 1609154, at *7.[11]

Although the Bankruptcy Court ignored it, the Trustee's concession

(*see supra* at Section I(A)) that the Section 546(e) "safe harbor" applied to the

---

[11] Bordier did not, as the Bankruptcy Court incorrectly suggested, argue that the
safe harbor directly applies to subsequent transfers. *See* Op. at 13, 2022 WL
2390556, at *5. Rather, Bordier asserted that the safe harbor applied by its terms
to the alleged *initial* transfers from BLMIS to Sentry (which entered into a
settlement agreement with the Trustee in 2011 and did not litigate the Section
546(e) issue) and that as a subsequent transferee defendant sued under Section
550(a), it was entitled to move to dismiss on Section 546(e) grounds. *Cohmad*
itself made clear that a subsequent transferee defendant may do just that. 2013 WL
1609154, at *7 ("[E]ven if the initial . . . transferee fails to raise a Section 546(e)
defense against the Trustee's avoidance of certain transfers . . . because the
transferee settled with the Trustee . . . the subsequent transferee is nonetheless
entitled to raise a Section 546(e) defense against recovery of those funds."); *see
also id*. at *3 (explaining that the Court had twice previously held that Section
546(e) "required the dismissal" of both the Trustee's avoidance claims and of
"related recovery claims under Section 550(a)").

initial transfers at issue meant that the Trustee was barred from pursuing claims

based on the avoidability of those transfers (just as in *Fishman*), except to the

extent that *Cohmad* precluded a particular defendant from asserting the Section

546(e) defense by reason of *that defendant's* "actual knowledge" of the fraud.

*Cohmad* did not diminish the scope of the safe harbor, but instead merely

established a limitation that disentitles defendants with "actual knowledge" of the

underlying fraud from benefiting from Section 546(e). Under *Cohmad*, a particular

defendant's disentitlement must depend solely upon whether it had the requisite

"actual knowledge" of the BLMIS fraud.  The Bankruptcy Court instead treated the

*Cohmad* bar applicable to initial transferee Sentry (based on its finding in *Fairfield*

*Investment Fund* that the Trustee adequately pleaded that Sentry had such "actual

knowledge") as fatal to the ability of Bordier of *its* right to rely on Section 546(e).

The Bankruptcy Court thus erroneously disregarded the undisputed fact that the

actual defendant – Bordier – was an innocent subsequent transferee, whose right to

claim Section 546(e)'s protections is not affected by *Cohmad*.

      In addition to misconstruing *Cohmad's* first holding, the Bankruptcy

Court entirely overlooked its additional holding – *i.e.*, that the safe harbor may be

invoked by financial institutions, such as Bordier, that received from a feeder fund

settlement payments for the redemption of their shares in the fund, where the fund

caused the initial transfer to be made in order to honor its obligations under a

securities contract between the fund and the defendant. This Court explained that such initial transfers are subject to Section 546(e), without regard to the initial transferees' BLMIS account agreements, because they "relate to" defendants' separate securities contracts with the feeder funds. *See Cohmad*, 2013 WL 1609154, at *9. Bordier showed, on its motion to dismiss, that the facts alleged by the Trustee precisely matched the "situation" which this Court held "appears to fit within the plain terms of Section 546(e)."[12] *Id.* The Bankruptcy Court, however, simply ignored this issue.

In sum, as to both issues presented for appeal, there is abundant "substantial ground for a difference of opinion."

## C.   AN IMMEDIATE APPEAL WILL ADVANCE THE ULTIMATE TERMINATION OF THIS LITIGATION

Under the third prong of the Section 1292(b) standard, "[a]n immediate appeal is considered to advance the ultimate termination of the litigation if that appeal promises to advance the time for trial or shorten the time required for trial." *Enron*, 2006 WL 2548592, at *4. Courts place particular emphasis on this last factor. *Id.* Here, if this Court permits an immediate appeal and the Bankruptcy Court's Order is reversed, the Trustee's Complaint against Bordier would resolve all but a *de minimis* surviving claim against Bordier, thereby

---

[12] *See* ECF No. 87 (initial memorandum) at 19-20.

reducing significantly (and most likely eliminating) the need for discovery and trial.

**D.    EXCEPTIONAL CIRCUMSTANCES ALSO EXIST BECAUSE CORRECTION OF THE BANKRUPTCY COURT'S ERROR WOULD RESULT IN THE TERMINATION OR NARROWING OF 58 SUBSEQUENT TRANSFEREE PROCEEDINGS AND DISMISSAL OF MORE THAN $1.8 BILLION OF SAFE-HARBORED CLAIMS**

In deciding motions for leave to appeal, courts in this District have also considered whether an appeal of the legal question presented "would provide important guidance for similarly situated parties." *MF Global Holdings Ltd. v. Allied World Assurance Co. (In re MF Global Holdings Ltd.)*, 296 F. Supp. 3d 662, 665 (S.D.N.Y. 2017) (Rakoff, J.). That factor points to additional exceptional circumstances that further warrant immediate appeal here.

As shown in Exhibit C hereto, there are currently pending 17 subsequent transferee proceedings by the Trustee against Sentry investors in which all the alleged initial transfers from BLMIS to Sentry preceding those subsequent transfers were made more than two years before the BLMIS petition date and thus are outside the scope of Section 546(e)'s express exception for claims under Section 548(a)(1)(A). All the initial transfers from BLMIS allegedly relevant to those 17 proceedings are covered by Section 546(e) under this Court's rulings in *Picard v. Katz*, 462 B.R. 447, 451-53 (S.D.N.Y. 2011) (Rakoff, J.), and *SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 476 B.R. 717, 718-19, 722

(S.D.N.Y. 2012) (Rakoff, J.), *aff'd sub nom. Picard v. Ida Fishman Revocable
Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411 (2d Cir. 2014).  The
Trustee does not allege in any of these proceedings that the subsequent transferees
had actual knowledge that Madoff was conducting a Ponzi scheme and was not
trading securities.  Thus, but for the Bankruptcy Court's misinterpretation of
*Cohmad* as barring an innocent subsequent transferee from enjoying the protection
of the safe harbor if the initial transferee had actual knowledge of Madoff's fraud,
all of these proceedings would be entirely dismissed.

In addition, another 41 subsequent transferee proceedings are pending
against innocent Sentry investors where many of the alleged initial transfers—
totaling more than $1.1 billion—occurred outside the two-year lookback period for
Section 548(a)(1)(A) claims.  Claims based on those transfers would also be
dismissed under the Section 546(e) safe harbor but for the Bankruptcy Court's
misinterpretation of *Cohmad*.  *See* Ex. C.[13]  Thus, many Sentry-based subsequent
transferee claims would be immediately dismissed, without discovery or trial, if the
Bankruptcy Court's purely legal error is corrected on this interlocutory appeal.

---

[13] Several defendants in those other proceedings are moving for leave to appeal the
denial of their respective motions to dismiss on similar grounds to those stated
here. *See, e.g. Picard v. Banque Syz & Co., SA*, No. 22-cv-06512-JSR (S.D.N.Y.).

If, however, an interlocutory appeal is not granted, those proceedings and claims will generate years of further litigation before final judgment. In pending Sentry subsequent transferee proceedings that are past the motion to dismiss stage, the Trustee is currently obtaining scheduling orders that provide for *three years* of discovery proceedings, through April *2025*. *E.g*., Case Mgmt. Plan ¶¶ 2(b), 3(a), *Picard v. Bureau of Labor Ins. (In re Madoff)*, No. 11-2732 (CGM) (Bankr. S.D.N.Y. June 14, 2022) [ECF 134]. The extraordinary expense and wasted time of such further protracted proceedings—on top of the decade or more of litigation expense defendants have already suffered—should not be imposed on innocent subsequent transferees. Innocent investors, who had reasonable expectations in the finality of securities transactions under the safe harbor enacted by Congress, should not have to wait years more for appellate review of the Bankruptcy Court's misinterpretation of this Court's *Cohmad* decision.

By reversing the Bankruptcy Court's pure legal errors on the requested interlocutory appeal, this Court can thus prevent wasted time and money for both the Trustee and the defendants in scores of cases. For this reason, as well as this appeal's satisfaction of the three requirements discussed above, exceptional circumstances exist here that warrant granting an immediate appeal of the Bankruptcy Court's erroneous Order.

## **CONCLUSION**

For the foregoing reasons, Bordier should be granted leave to appeal

the Bankruptcy Court's Order denying its motion to dismiss the Complaint and,

upon such appeal, the Order should be reversed and the Complaint dismissed.

Dated:  New York, New York
August 16, 2022

Respectfully submitted,

s/ John F. Zulack
John F. Zulack (jzulack@abv.com)
Lauren J. Pincus (lpincus@abv.com)
David A. Shaiman (dshaiman@abv.com)
ALLEGAERT BERGER & VOGEL LLP
111 Broadway, 20th Floor
New York, New York 10006
Telephone: (212) 571-0550
Facsimile: (212) 571-0555

*Attorneys for Defendant*
*Bordier & Cie SCmA (sued as Bordier & Cie)*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This document complies with the word limit of Fed. R. Bankr. P.

8013(f)(3)(A) because, excluding the parts of the document exempted by Fed. R.

Bankr. P. 8015(g), this document contains 5,198 words, according to the word-

count function of the word-processing system used to prepare the document.

2.      This document complies with the typeface requirements of Fed. R.

Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P.

8015(a)(6) because this document has been prepared in a proportionally spaced

typeface using Microsoft Word Version 2022 in 14-point Times New Roman font.

Dated:  August 16, 2022

s/ John F. Zulack
John F. Zulack

# EXHIBIT A

The Bankruptcy Court's July 12, 2022 Order Denying Bordier & Cie SCmA's
Motion to Dismiss the Complaint Under Bankruptcy Rule 7012(b) and Federal
Rule of Civil Procedure 12(b)(6) [ECF 105]

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
|         Plaintiff-Applicant, | |
| v. | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
|         Defendant. | |

In re

BERNARD L. MADOFF,

        Debtor.

| | |
|---|---|
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 12-01695 (CGM) |
|         Plaintiff, | |
| v. | |
| BORDIER & CIE, | |
|         Defendant. | |

## ORDER DENYING BORDIER & CIE'S
## MOTION TO DISMISS THE COMPLAINT

Defendant Bordier & Cie's motion to dismiss the Complaint under Bankruptcy Rule

7012(b) and Federal Rule of Civil Procedure 12(b)(6) (the "**Motion**") came on for hearing before

the Court on June 15, 2022 (the "**Hearing**"). The Court has considered the Motion, the papers

filed in support of and in opposition to the Motion, the Complaint, and the statements of counsel

at the Hearing, and the Court has issued a memorandum decision, dated June 30, 2022, regarding the Motion (the "**Decision**"). Based on the record in this adversary proceeding, including the Decision, **IT IS ORDERED**:

1. The Motion to dismiss the Complaint is denied.

2. The deadline for Bordier & Cie to file an answer to the Complaint is September 12, 2022.

3. The Court shall retain jurisdiction to implement or enforce this Order.



Dated: July 12, 2022
Poughkeepsie, New York

/s/ Cecelia G. Morris

_____

Hon. Cecelia G. Morris
U.S. Bankruptcy Judge

2

# EXHIBIT B

The Bankruptcy Court's June 30, 2022 Memorandum Decision Denying
Defendant's Motion to Dismiss [ECF 105]

<u>NOT FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>        Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        Defendant. | No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>        Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>        Plaintiff,<br><br>v.<br><br>Bordier & Cie,<br><br>        Defendant. | Adv. Pro. No. 12-01695 (CGM) |

**MEMORANDUM DECISION DENYING DEFENDANT'S MOTION TO DISMISS**

**A P P E A R A N C E S :**

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
By:    Torello Calvani (via Zoom)

*Counsel for Defendant Bordier & Cie*
Allegaert Berger & Vogel LLP

111 Broadway, 20th Flr.
New York, NY 10006
By:    Jack Zulack (via Zoom)

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

   Pending before the Court is Defendant's, Bordier & Cie's, motion to dismiss the

complaint of Irving Picard, the trustee ("Trustee") for the liquidation of Bernard L. Madoff

Investment Securities LLC ("BLMIS") seeking to recover subsequent transfers allegedly

consisting of BLMIS customer property.  Bordier & Cie seeks dismissal for failure to plead a

cause of action due to improper adoption by reference; for failure to state a claim due to the safe

harbor provision of the Bankruptcy Code, and for failure to allege that it received BLMIS

customer property.  For the reasons set forth herein, the motion to dismiss is denied in its

entirety.

**<u>Jurisdiction</u>**

   This is an adversary proceeding commenced in this Court, in which the main underlying

SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending.  The

SIPA Proceeding was originally brought in the United States District Court for the Southern

District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L.*

*Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court.

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1),

and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

   This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O).  This Court

has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§

1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and

the Amended Standing Order of Reference, dated January 31, 2012.  In addition, the District

Page **2** of **16**

Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order,

Civ. 08–01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this

Court has jurisdiction under the latter provision.  Personal jurisdiction has not been disputed.

### Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its

SIPA proceeding.

This adversary proceeding was filed on June 6, 2012.  (Compl., ECF[1] No. 1).  Via the

complaint ("Complaint"), the Trustee seeks to recover subsequent transfers made to Bordier &

Cie, a Swiss private bank specializing in asset managing and securities trading.  (*Id.* ¶¶ 2, 3).

The subsequent transfers were derived from investments with BLMIS made by other funds,

including: Fairfield Sentry Limited ("Fairfield Sentry").  (*Id.* ¶ 2).   These funds are referred to as

"feeder funds" because the intention of the fund was to invest in BLMIS.  (*Id.* ¶ 2).

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield

Sentry and related defendants to avoid and recover fraudulent transfers of customer property in

the amount of approximately $3 billion.  (*Id.* ¶ 35).  In 2011, the Trustee settled with Fairfield

Sentry.  (*Id.* ¶ 40).  As part of the settlement, Fairfield Sentry consented to a judgment in the

amount of $3.054 billion (Consent J., 09-01239-cgm, ECF No. 109) but repaid only $70 million

to the BLMIS customer property estate.  The Trustee then commenced a number of adversary

proceedings against subsequent transferees like Defendant to recover the approximately $3

billion in missing customer property.

In its motion to dismiss, Bordier & Cie argues that the safe harbor bars the Trustee's

recovery of this transfer, the Trustee has failed to allege that it holds BLMIS customer property,

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary
proceeding 12-01695-cgm.

and that the Trustee has improperly used adoption by reference. The Trustee opposes the motion to dismiss.

### Discussion

**12(b)(6) standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The claim is facially plausible when a plaintiff pleads facts that allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."). In deciding a motion to dismiss, the Court should assume the factual allegations are true and determine whether, when read together, they plausibly give rise to an entitlement of relief. *Iqbal*, 556 U.S. at 679. "And, of course, a well-pl[ed] complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A complaint is "deemed to include any written instrument attached to it as an exhibit[,] .

. . documents incorporated in it by reference[,]" and other documents "integral" to the complaint.

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted). A

document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous

information and relied on it in framing the complaint. *DeLuca v. AccessIT Grp., Inc.*, 695 F.

Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

The Trustee is seeking to recover subsequent transfers made to Bordier & Cie by

Fairfield Sentry ("Count One").

**Count One: Recovery of Subsequent Transfers**

Section 550(a) of the Bankruptcy Code states:

> Except as otherwise provided in this section, to the extent that a transfer is
> avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the
> trustee may recover, for the benefit of the estate, the property transferred, or, if the
> court so orders, the value of such property, from--
> (1) the initial transferee of such transfer or the entity for whose benefit such
> transfer was made; or
> (2) any immediate or mediate transferee of such initial transferee.

"To plead a subsequent transfer claim, the Trustee must plead that the initial transfer is

avoidable, and the defendant is a subsequent transferee of that initial transferee, that is, that the

funds at issue originated with the debtor." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R.

167, 195 (Bankr. S.D.N.Y. 2018); *see also SIPC v. BLMIS* (*In re Consolidated Proceedings on

11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013)

(consolidated proceedings on 11 U.S.C. § 546(e)). "Federal Civil Rule 9(b) governs the portion

of a claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a

claim to recover the subsequent transfer. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R.

167, 195 (Bankr. S.D.N.Y. 2018) (citing *Sharp Int'l Corp. v. State St. Bank & Trust Co.*, (*In re

Sharp Int'l Corp.*), 403 F.3d 43, 56 (2d Cir. 2005) and *Picard v. Legacy Capital Ltd. (In re

*BLMIS*), 548 B.R. 13, 36 (Bankr. S.D.N.Y. 2016), *rev'd on other grounds*, *Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021)).

To properly plead a subsequent transfer claim, the Trustee need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The plaintiff must allege the necessary vital statistics—the who, when, and how much—of the purported transfers to establish an entity as a subsequent transferee of the funds. However, the plaintiff's burden at the pleading stage does not require dollar-for-dollar accounting of the exact funds at issue." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018). While the Trustee must allege that the initial transfer from BLMIS to Fairfield Sentry is avoidable, he is not required to avoid the transfer received by the initial transferee before asserting an action against subsequent transferees. The Trustee is free to pursue any of the immediate or mediate transferees, and nothing in the statute requires a different result. *IBT Int'l, Inc. v. Northern* (*In re Int'l Admin. Servs., Inc.*), 408 F.3d 689, 706-07 (11th Cir. 2005).

The Trustee pleaded the avoidability of the initial transfer (from BLMIS to Fairfield Sentry) by adopting by reference the entirety of the complaint filed against Fairfield Sentry in adversary proceeding 09-1239 ("Fairfield Complaint"). (Compl. ¶ 35). Whether the Fairfield Complaint properly pleads the avoidability of the initial transfer, is governed by Rule 9(b). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Where the actual fraudulent transfer claim is asserted by a bankruptcy trustee, applicable Second Circuit precedent instructs courts to adopt a more liberal view since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge. Moreover, in a case such as this one, where the Trustee's lack of personal knowledge is compounded with complicated issues and transactions that extend over lengthy periods of time, the

trustee's handicap increases, and even greater latitude should be afforded." *Picard v. Cohmad Secs. Corp., (In re BLMIS)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up).

**Adoption by Reference**

Adoption by reference is government by Rule 10 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 10(c). Rule 10(c) states: "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." The district court has already found that adoption by reference of the entire Fairfield Complaint is proper. *See SIPC v. BLMIS (In re Consolidated Proceedings on 11 U.S.C. § 550(a))*, 501 B.R. 26, 36 (S.D.N.Y. 2013) ("The Trustee's complaint against Standard Chartered Financial Services incorporates by reference the complaints against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).") (cleaned up).

The Court will follow the district court's instruction. As was explained in *In re Geiger,* pleadings filed in the "same action" may be properly adopted by reference in other pleadings in that action. 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010). The Fairfield Complaint was filed in the "same action" as this adversary proceeding for purposes of Rule 10(c). *Id.* Cases within this SIPA proceeding are filed in the same "proceeding"—the SIPA proceeding. *In re Terrestar Corp.*, No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."); *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 610 B.R. 197, 237 (Bankr. S.D.N.Y. 2019) ("The prior decisions within this SIPA proceeding constitute law of the case . . . . "); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 603 B.R. 682, 700 (Bankr. S.D.N.Y. 2019), (citing *In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018) (law of the case doctrine

applies across adversary proceedings within the same main case), *aff'd*, 943 F.3d 125 (2d Cir. 2019)); *Perez v. Terrastar Corp. (In re Terrastar Corp.)*, No. 16 Civ. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."), *appeal dismissed*, No. 17-1117 (2d Cir. June 29, 2017); *Bourdeau Bros., Inc. v. Montagne (In re Montagne)*, No. 08-1024 (CAB), 2010 WL 271347, at *6 (Bankr. D. Vt. Jan. 22, 2010) ("[D]ifferent adversary proceedings in the same main case do not constitute different 'cases.'").

 Some courts have worried that wholesale incorporation of a pleading can lead to "confusing and inconvenient" results. *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47 (E.D. Va. 2009) (footnote omitted), *aff'd*, 382 F. App'x 256 (4th Cir. 2010). That is not a concern in these proceedings. Bordier & Cie, like many subsequent transfer defendants in this SIPA proceeding, is uniquely aware of what has been filed in the other adversary proceeding in this SIPA liquidation. It routinely follows what is happening on a proceeding-wide basis. *See* Stip., ECF No. 68 (dismissing adversary proceeding based on consolidated extraterritoriality ruling).

Allowing the Trustee to incorporate the Fairfield Complaint by reference, does not prejudice Bordier & Cie. If the Court were to dismiss this Complaint and permit the Trustee to amend his Complaint to include all of the allegations that are already contained in the Fairfield Complaint, all parties would be prejudiced by delay in these already, overly-prolonged proceedings. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("Rule 15 places no time bar on making motions to amend pleadings and permits the amending of pleadings "when justice so requires.").

Through the adoption of the Fairfield Complaint, the Trustee has adequately pleaded, with particularity, the avoidability of the initial transfer due to Fairfield Sentry's knowledge of BLMIS' fraud. (Fairfield Compl. ¶¶ 314–318, 09-01239, ECF No. 286); *see also SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013) ("[T]he Court directs that the following adversary proceedings be returned to the Bankruptcy Court for further proceedings consistent with this Opinion and Order . . . .").

**The Safe Harbor does not bar the avoidance of the Fairfield Initial Transfers**

Defendant has raised the "safe harbor" defense, found in § 546(e), to the Trustee's allegations. Section 546(e) is referred to as the safe harbor because it protects a transfer that is a "settlement payment ... made by or to (or for the benefit of) a ... financial institution [or] financial participant," or that is "made by or to (or for the benefit of) a ... financial institution [or] financial participant ... in connection with a securities contract." 11 U.S.C. § 546(e). "By its terms, the safe harbor is a defense to the avoidance of the **initial** transfer. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis added). However, where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here, the subsequent transferee is entitled to raise a § 546(e) defense against recovery of those funds. *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021).

In light of the safe harbor granted under 11 U.S.C. § 546(e), the Trustee may only avoid and recover intentional fraudulent transfers under § 548(a)(1)(A) made within two years of the filing date, unless the transferee had actual knowledge of BLMIS's Ponzi scheme, or more generally, "actual knowledge that there were no actual securities transactions being conducted."

*SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR),

2013 WL 1609154, at *4 (S.D.N.Y. Apr. 15, 2013). "The safe harbor was intended, among other

things, to promote the reasonable expectations of legitimate investors. If an investor knew that

BLMIS was not actually trading securities, he had no reasonable expectation that he was signing

a contract with BLMIS for the purpose of trading securities for his account. In that event, the

Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the

full extent permitted under state and federal law." *Picard v. Legacy Capital Ltd. (In re BLMIS)*,

548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on

other grounds, Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021)). "In sum, if

the Trustee sufficiently alleges that the [initial] transferee from whom he seeks to recover a

fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim the protections of

Section 546(e)'s safe harbor." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-

01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021).

This Court has already determined that the Fairfield Complaint[2] contains sufficient

allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule

12(b)(6) motion. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv.

No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he Trustee

has alleged that the agents and principals of the Fairfield Funds had actual knowledge of

Madoff's fraud"). In that adversary proceeding, the Court held that "[t]he Trustee has pled

[actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's

fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the

Fairfield Funds through 'FGG,' an alleged 'de facto' partnership." *Id.* at *4; *see also* Fairfield

Compl. ¶ 320 ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); Fairfield Compl.

---

[2] The Fairfield Complaint can be found on the docket of adversary number 09-01239-cgm, ECF No. 286.

¶ 321 ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 322 ("FIFL had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 323 ("Stable Fund had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 324 ("FG Limited had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 325 ("FG Bermuda had actual knowledge of the fraud at BLMIS"); ¶ 326 ("FG Advisors had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 327 ("Fairfield International Managers had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 328 ("FG Capital had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 329 ("Share Management had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 9 ("It is inescapable that FGG partners knew BLMIS was not trading securities. They knew BLMIS's returns could not be the result of the split strike conversion strategy (the "SSC Strategy"). They knew BLMIS's equities and options trading volumes were impossible. They knew that BLMIS reported impossible, out-of-range trades, which almost always were in Madoff's favor. They knew Madoff's auditor was not certified and lacked the ability to audit BLMIS. They knew BLMIS did not use an independent broker or custodian. They knew Madoff refused to identify any of BLMIS's options counterparties. They knew their clients and potential clients raised numerous due diligence questions they would not and could not satisfactorily answer. They knew Madoff would refuse to provide them with honest answers to due diligence questions because it would confirm the details of his fraud.  They knew Madoff lied about whether he traded options over the counter or through the exchange. They knew they lied to clients about BLMIS's practices in order to keep the money flowing and their fees growing. And they knowingly misled the SEC at Madoff's direction.").

This Court determined that the Fairfield Complaint is replete with allegations
demonstrating that Fairfield Sentry had actual knowledge that BLMIS was not trading securities.
*See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv. No. 09-01239
(CGM), 2021 WL 3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021).   The district court
determined that "those defendants who claim the protections of Section 546(e) through a Madoff
Securities account agreement but who actually knew that Madoff Securities was a Ponzi scheme
are not entitled to the protections of the Section 546(e) safe harbor, and their motions to dismiss
the Trustee's claims on this ground must be denied."  *SIPC v. BLMIS* (*In re Consolidated
Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y.
Apr. 15, 2013).   And "to the extent that a defendant claims protection under Section 546(e) under
a separate securities contract" this Court was directed to "adjudicate those claims in the first
instance consistent with [the district court's] opinion."  *See* Order, 12-MC-115, ECF No. 119,
Ex. A at 24.

This Court is powerless to reconsider this issue, agrees with the district court's reasoning,
and finds its holding consistent with *dicta* set forth by the Court of Appeals for the Second
Circuit.  *See Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*),
773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that
BLMIS was actually engaged in the business of effecting securities transactions, have every right
to avail themselves of all the protections afforded to the clients of stockbrokers, including the
protection offered by § 546(e).").  The Trustee's allegations in the Fairfield Complaint are
sufficient to survive a Rule 12(b)(6) motion on this issue.

**The Safe Harbor cannot be used to defeat a subsequent transfer**

Defendant argues that the safe harbor prevents the Trustee from avoiding the subsequent transfer between Fairfield Sentry and Bordier & Cie on account of the securities contract between Fairfield and Bordier & Cie.

The safe harbor is not applicable to subsequent transfers. "By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e) (failing to include § 550 in its protections). Since there must be an initial transfer in order for the Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned. The safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not "avoiding" a subsequent transfer, "he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018).

Defendant argues that this Court applied the safe harbor to redemption payments made by Fairfield Sentry in *In re Fairfield Sentry Ltd.*, 2020 WL 7345988, at *5 (Dec. 14, 2020) ("*Fairfield III*"). Reliance on this case is misplaced. While many facts overlap between this SIPA liquidation of BLMIS and the foreign liquidation of BLMIS's largest feeder fund, Fairfield Sentry, the legal holdings in these liquidations are not interchangeable. In this case, the Court is analyzing subsequent transfers; in *Fairfield III* the Court was analyzing initial transfers. The safe harbor is not available to be raised as defense to subsequent transfer claims.

In *Fairfield III*, this Court analyzed whether the safe harbor applied to avoidance claims under BVI law[3] to recover "unfair preferences" and "undervalue transactions" and constructive trust claims against a defendant who allegedly "knew or willfully blinded itself to the fact that the [Fairfield Sentry's] BLMIS investments were worthless or virtually worthless." *In re Fairfield Sentry Ltd.*, No. 10-13164 (SMB), 2020 WL 7345988, at *1 (Bankr. S.D.N.Y. Dec. 14, 2020), *reconsideration denied*, No. 10-13164 (SMB), 2021 WL 771677 (Bankr. S.D.N.Y. Feb. 23, 2021).  The Court was not considering the safe harbor's effect on subsequent transfer claims brought under § 550 of the Bankruptcy Code.  In the Fairfield Sentry liquidation, Defendant would be an initial transferee as redemption payments paid by Fairfield Sentry were paid directly to Multi-Strategy.  *Fairfield III* is not applicable here.

Defendant also argues that this Court permitted a subsequent transferee to raise the safe harbor as a defense in *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021).  The Court never considered whether the safe harbor could be raised by a subsequent transferee in that case. In *Picard v. Fairfield*, the subsequent transferees were also the principals and insiders of Fairfield Sentry, the initial transferee.  The Court considered the insider's actual knowledge of BLMIS's fraud only as it related to whether Fairfield Sentry had actual knowledge of the fraud. The Court never considered whether the subsequent transferees could raise the safe harbor defense on their own behalf nor could it have, as § 546 is inapplicable to subsequent transferees.

Defendant is not permitted to raise the safe harbor defense on its own behalf as a subsequent transferee.

**BLMIS Customer Property**

---

[3] Fairfield Sentry liquidated under the laws of the British Virgin Islands ("BVI") and this Court's chapter 15 case is ancillary to the primary proceeding brought in the BVI.

The Trustee has pleaded that "[b]ased on the Trustee's investigation to date,
approximately $7,928,454 of the money transferred from BLMIS to Fairfield Sentry was
subsequently transferred by Fairfield Sentry to Defendant Bordier [& Cie]."  (Compl. ¶ 41).

The exhibits attached to the Complaint provide Bordier & Cie with the "who, when, and
how much" of each transfer.  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195
(Bankr. S.D.N.Y. 2018).

The Fairfield Complaint, which is incorporated by reference into this, alleges that the
Fairfield Fund was required to invest 95% of its assets in BLMIS.  (Fairfield Compl. ¶ 89); *see
also* (Fairfield Compl. ¶ 91) ("From the beginning, to comport with Madoff's requirement for
BLMIS feeder funds, Fairfield Sentry ceded control of not only its investment decisions, but also
the custody of its assets, to BLMIS.").

The Complaint plausibly alleges that Fairfield Sentry did not have any assets that were
not customer property.  Defendants ask this Court to consider allegations made in 90 other
complaints filed by the Trustee in this SIPA proceeding.  Pincus Decl. ¶¶ 9–11, ECF No. 86.
These complaints have not been adopted by reference by the Trustee in this adversary proceeding
and, as such, are not within the Court's power to consider on a Rule 12(b)(6) motion.  *Williams
v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) ("A district court, in deciding whether to
dismiss a complaint under Rule 12(b)(6), is generally limited to the facts as presented within the
four corners of the complaint, to documents attached to the complaint, or to documents
incorporated within the complaint by reference.") (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d
768, 776 (2d Cir. 2002)).

Taking all allegations as true and reading them in a light most favorable to the Trustee,
the Complaint plausibly pleads that Bordier & Cie received customer property because Fairfield

Sentry did not have other property to give.  The calculation of Fairfield Sentry's customer property and what funds it used to make redemption payments are issues of fact better resolved at a later stage of litigation.

### <u>Conclusion</u>

For the foregoing reasons, Bordier & Cie's motion to dismiss is denied.  The Trustee shall submit a proposed order within fourteen days of the issuance of this decision, directly to chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



/s/ Cecelia G. Morris
_____
**Dated: June 30, 2022**
**Poughkeepsie, New York**

**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**

Page **16** of **16**

# EXHIBIT C

Adversary Proceedings Subject to Section 546(e) Defense

# ADVERSARY PROCEEDINGS SUBJECT TO SECTION 546(e) DEFENSE[*]

## Adversary Proceedings Subject to Complete Dismissal Based on Section 546(e) Defense

| Adv. Proc. No. | Defendant(s) | Transfer Amount |
|---|---|---|
| 11-02493 | Abu Dhabi Investment Authority | ($300,000,000) |
| 11-02538 | Quilvest Finance Ltd. | (34,198,293) |
| 11-02540 | Lion Global Investors Limited | (50,583,442) |
| 11-02542 | Parson Finance Panama S.A. | (11,089,081) |
| 11-02730 | ASB Bank Corp. | (119,655,424) |
| 11-02733 | Naidot & Co. | (12,654,907) |
| 12-01002 | The Public Institution for Social Security | (20,000,000) |
| 12-01004 | Fullerton Capital PTE Ltd. | (10,290,445) |
| 12-01021 | Grosvenor Balanced Growth Fund Limited, Grosvenor Private Reserve Fund Limited, *et al.* | (24,815,102) |
| 12-01023 | Arden Asset Management Inc., Arden Asset Management LLC, *et al.* | (12,586,659) |
| 12-01047 | Koch Industries, Inc. | (21,533,871) |
| 12-01194 | Kookmin Bank | (42,010,302) |
| 12-01205 | Multi Strategy Fund Limited | (25,763,374) |
| 12-01512 | ZCM Asset Holding Co. (Bermuda) LLC | (21,247,755) |
| 12-01566 | UKFP (Asia) Nominees Limited | (5,182,320) |
| 12-01680 | Eurizon Low Volatility, Eurizon Medium Volatility, *et al.* | (11,653,515) |

---

[*] Initial BLMIS-Sentry transfers from May 9, 2003 to April 13, 2006, which are outside the two-year lookback period for Section 548(a)(1)(A), are alleged by the Trustee to be the source of Sentry transfers to these defendants during the period May 14, 2003 to August 17, 2007.  This exhibit includes transfers from Sentry only.  It is based on the allegations in the Trustee's current complaints in the listed adversary proceedings and does not represent a concession by any defendant that the transfer dates or amounts alleged by the Trustee are accurate.

| *Adv. Proc. No.* | *Defendant(s)* | *Transfer Amount* |
|---|---|---|
| 12-01694 | Banque Cantonale Vaudoise | (9,769,927) |
| **Total** | | **($733,034,417)** |

### Other Adversary Proceedings with Initial Transfers
### Outside Two-Year Period

| *Adv. Proc. No.* | *Defendant(s) Affected* | *Transfer Amount* |
|---|---|---|
| 10-05346 | Merrill Lynch International | ($1,200,000) |
| 11-02149 | Banque Syz & Co., SA | (15,449,241) |
| 11-02539 | Meritz Fire & Insurance Co. Ltd. | (10,911,002) |
| 11-02551 | Delta National Bank and Trust Company | (9,045,332) |
| 11-02553 | Unifortune Asset Management SGR SpA, Unifortune Conservative Fund | (16,352,159) |
| 11-02554 | National Bank of Kuwait S.A.K. | (51,577) |
| 11-02568 | Cathay Life Insurance Co. Ltd., Cathay United Bank Ltd. | (7,953,546) |
| 11-02569 | Barclays Bank (Suisse) S.A., Caixabank S.A., as successor by merger to Barclays Bank S.A. | (23,834,072) |
| 11-02572 | Korea Exchange Bank | (29,583,842) |
| 11-02731 | Trincastar Corporation | (10,311,800) |
| 11-02763 | Inteligo Bank Ltd. | (6,886,095) |
| 11-02784 | Somers Dublin Limited, Somers Nominees (Far East) Limited | (6,439,891) |
| 11-02910 | Merrill Lynch Bank (Suisse) SA | (40,762,484) |
| 11-02922 | Bank Julius Baer & Co. Ltd. | (36,850,589) |
| 11-02923 | Falcon Private Bank Ltd. | (38,675,129) |

| Adv. Proc. No. | Defendant(s) Affected | Transfer Amount |
|---|---|---|
| 11-02925 | Credit Suisse (Luxembourg) SA; Credit Suisse AG; Credit Suisse AG, Nassau Branch; Credit Suisse London Nominees Limited; Credit Suisse Nominees (Guernsey) Limited; Credit Suisse Wealth Management Limited, Credit Suisse, Nassau Branch LATAM Investment Banking | (140,646,281) |
| 11-02929 | LGT Bank in Liechtenstein Ltd. | (4,466,942) |
| 12-01005 | SICO Limited | (12,721,492) |
| 12-01019 | Banco Itau Europa Luxembourg S.A. | (14,920,537) |
| 12-01022 | Crédit Agricole (Suisse) S.A. | (11,519,915) |
| 12-01046 | SNS Bank N.V., SNS Global Custody B.V. | (18,513,002) |
| 12-01048 | Banco General Valores | (5,392,148) |
| 12-01202 | Bank Vontobel, Vontobel Fund, Bank Vontobel Asset Management Inc. | (25,066,635) |
| 12-01207 | Lloyds TSB Bank PLC | (9,171,918) |
| 12-01209 | Banca Del Gottardo, BSI AG | (27,867,965) |
| 12-01210 | Schroder & Co. Bank AG | (19,985,147) |
| 12-01211 | Union Global A Fund, Union Global Fund, Union Strategy Fund | (5,728,088) |
| 12-01216 | Bank Hapoalim (Switzerland) Ltd. | (466,867) |
| 12-01565 | Standard Chartered Financial Services (Luxembourg) S.A. | (41,519,310) |
| 12-01576 | BNP Paribas S.A. | (1,695,513) |
| 12-01577 | LGT Bank (Switzerland) Ltd., UBS Europe SE | (8,043,666) |
| 12-01669 | Barfield Nominees Limited, Northern Trust Corporation | (7,684,464) |
| 12-01670 | Crédit Agricole Corporate and Investment Bank | (5,401,035) |

| Adv. Proc. No. | Defendant(s) Affected | Transfer Amount |
|---|---|---|
| 12-01676 | Credit Suisse AG, as successor-in-interest to Bank Leu AG; Credit Suisse AG, as successor-in-interest to Clariden Leu AG | (22,604,441) |
| 12-01677 | Lyxor Premium, SG Audace, SG Equilibrium, SG Lugano, SG Premium, SG Suisse, SG UK, SGBT, SGBT Lux/OFI, SGBT Lux/Palmares, SGBT Lux/UMR | (118,584,627) |
| 12-01690 | EFG Bank S.A., EFG Bank (Monaco) S.A.M., EFG Bank & Trust (Bahamas) Ltd. | (221,093,938) |
| 12-01693 | Banque Lombard Odier & Cie SA | (86,362,680) |
| 12-01695 | Bordier & Cie SCmA (sued as Bordier & Cie) | (7,731,281) |
| 12-01697 | ABN AMRO Fund Services (Isle of Man) Nominees Limited, Platinum All Weather Fund Limited, Odyssey | (17,396,883) |
| 12-01698 | Banco Inversis, S.A., Banque Internationale à Luxembourg (Suisse) S.A., Banque Internationale à Luxembourg S.A., RBC Investor Services Bank S.A. | (56,807,645) |
| 12-01699 | Guernroy Limited; Royal Bank of Canada; Royal Bank of Canada (Asia) Limited; RBC Dominion Securities Inc.; RBC Trust Company (Jersey) Limited; Banque Syz S.A., as successor in interest to Royal Bank of Canada (Suisse) S.A. | (20,743,042) |
| **Total** | | **($1,166,442,221)** |