KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, New York 10020
(212) 940-8800

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | ) Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff, | ) |
| | ) **SIPA Liquidation** |
| v. | ) **(Substantively Consolidated)** |
| BERNARD L. MADOFF INVESTMENT SECURITIES, LLC, | ) |
| Defendant. | ) |
| In re: | ) |
| BERNARD L. MADOFF, | ) |
| Debtor. | ) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | ) Adv. Pro. No. 12-01207 (CGM) |
| Plaintiff, | ) |
| v. | ) |
| LLOYDS TSB BANK PLC, | ) |
| Defendant. | ) |

**DEFENDANT LLOYDS BANK PLC'S**
**MOTION FOR LEAVE TO APPEAL PURSUANT TO 28 U.S.C. § 158(a)(3)**

## <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ............................................................... 1

THE QUESTIONS PRESENTED ON THIS APPEAL ............................................. 5

RELEVANT BACKGROUND ................................................................ 6

    A.    The Transfers and Claim at Issue ..................................... 6

    B.    *Cohmad* ........................................................... 6

            1.    Under *Cohmad,* Transferee Defendants with Actual Knowledge of the BLMIS Fraud Are Not Entitled to the Protections of Section 546(e) ........................................................... 6

            2.    *Cohmad*'s Separate Pathway to Section 546(e) Protection ...................... 9

    C.    The *Cohmad* Issues on Lloyds' Motion to Dismiss ............................. 10

    D.    The Bankruptcy Court's Decision and Order Against Lloyds ............................. 12

    E.    Other Defendants' Motions for Leave to Appeal ................................. 13

ARGUMENT .......................................................................... 13

I.    LEAVE TO APPEAL SHOULD BE GRANTED SO THIS COURT MAY CORRECT THE BANKRUPTCY COURT'S MISINTERPRETATION OF THE *COHMAD* DECISION ......................................... 13

    A.    The Applicable Standards ................................................. 13

    B.    The Questions Presented Are Pure, Controlling Question of Laws ..................... 14

    C.    There is a Substantial Ground for Difference of Opinion Because the Bankruptcy Court's Decision Is Inconsistent with *Cohmad* and Its Rationale and Undermines Congress' Intent in Enacting Section 546(e) ........................... 16

    D.    An Immediate Appeal May Materially Advance the Ultimate Termination of the Action ......................................................... 21

    E.    Exceptional Circumstances Warrant Permitting an Immediate Appeal .............. 23

CONCLUSION ........................................................................ 24

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Capitol Records, LLC v. Vimeo, LLC,*
  972 F. Supp. 2d 537 (S.D.N.Y. 2013) ...............................................................15, 16, 22, 23

*Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.),*
  2006 WL 2548592 (S.D.N.Y. Sept. 5, 2006) ................................................................*passim*

*Federal Housing Fin. Agency v. UBS Americas, Inc.,*
  858 F. Supp. 2d 306 (S.D.N.Y. 2012) .....................................................................15, 22, 23

*Flor v. BOT Fin. Corp. (In re Flor),*
  79 F.3d 281 (2d Cir. 1996) ..........................................................................................16

*In re Bernard L. Madoff Inv. Secs. LLC (Picard v. Ida Fishman Recoverable
  Trust),*
  773 F.3d 411 (2d Cir. 2014) ...................................................................................*passim*

*In re Ditech Holding Corp.,*
  2021 WL 4267691 (S.D.N.Y. Sept. 20, 2021) ......................................................................13

*In re The Duplan Corp.,*
  591 F.2d 139 (2d Cir. 1978) ..........................................................................................14

*In re GM LLC Ignition Switch Litig.,*
  427 F. Supp. 3d 374 (S.D.N.Y. 2019) .......................................................................*passim*

*In re Picard,*
  917 F.3d 85 (2d Cir. 2019) ...........................................................................................10

*In re Tribune Co. Fraudulent Conveyance Litig.,*
  946 F.3d 66 (2d Cir. 2019) ...........................................................................................17

*Klinghoffer v. S.N.C. Achille Lauro,*
  921 F.2d 21 (2d Cir. 1990) ...................................................................................14, 16, 23

*McMillan v. City of New York,*
  2011 WL 5237285 (S.D.N.Y. Aug. 23, 2011) (Rakoff, J.), *vacated on other
  grounds*, 711 F.3d 120 (2d Cir. 2013) .............................................................................15

*MF Global Holdings, Ltd. v. Allied World Assurance Co. (In re MF Global
  Holdings Ltd.),*
  296 F. Supp. 3d 662 (S.D.N.Y. 2017) ....................................................................14, 15, 23

*New York Racing Ass'n v. Perlmutter Publ'g, Inc.*,
   959 F. Supp. 578 (N.D.N.Y. 1997) ................................................................14

*Picard v. Bureau of Labor Ins. (In re Madoff)*,
   Adv. No. 11-2732 (CGM) (Bankr. S.D.N.Y. June 14, 2022) ................................................24

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Investment Securities LLC)*,
   12 F. 4th 171 (2d Cir. 2021) ................................................................10

*Picard v. Greiff*,
   476 B.R. 715 (S.D.N.Y. 2012), *aff'd sub nom. Fishman* ................................................7, 23

*Picard v. Katz*,
   462 B.R. 447 (S.D.N.Y. 2011) ................................................................7, 23

*Picard v. Lloyds TSB Bank PLC (In re Madoff)*,
   Adv. Pro. No. 12-01207 ECF 105, 2022 WL 2390551 (Bankr. S.D.N.Y. June
   30, 2022) ................................................................3, 12

*Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ................................................*passim*

*Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L.
   Madoff)*,
   2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ................................................11, 19, 20

*Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   No. 12-MC-0115 (JSR), ECF No. 119 (S.D.N.Y. May 16, 2012) ................................................1

*Sterk v. Redbox Automated Retail, LLC*,
   672 F.3d 535 (7th Cir. 2012) ................................................................22

*Tantaros v. Fox News Network, LLC*,
   465 F. Supp. 3d 385 (S.D.N.Y. 2020) ................................................................16

*United States ex rel. Quartararo v. Catholic Health System of Long Island Inc.*,
   521 F. Supp. 3d 265 (E.D.N.Y. 2021) ................................................................22

**Statutes**

11 U.S.C. § 544(b) ................................................................3

11 U.S.C. § 546(e) ................................................................*passim*

11 U.S.C. § 548(a) ................................................................3

11 U.S.C. § 548(a)(1)(A) ................................................................*passim*

11 U.S.C. § 550(a) ................................................................*passim*

11 U.S.C. § 741(7)(A) ................................................................................................11

28 U.S.C. § 158(a)(3) ............................................................................................ 1, 13

28 U.S.C. § 1292(b)................................................................................................*passim*

**Rules**

Fed. R. Bankr. P. 8004....................................................................................................1

Fed. R. Bankr. P. 8004(a)...............................................................................................1

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 11, 12

Defendant Lloyds TSB Bank PLC (now known as Lloyds Bank plc) ("Lloyds") respectfully submits this memorandum of law in support of its motion, pursuant to 28 U.S.C. § 158(a)(3) and Fed. R. Bankr. P. 8004, for leave to appeal from an order (the "Order")[1] of the United States Bankruptcy Court of the Southern District of New York (the "Bankruptcy Court") (Hon. Cecelia G. Morris, Bankruptcy Judge), denying its motion to dismiss the Complaint (the "Complaint") of plaintiff Irving H. Picard, Trustee (the "Trustee") for the Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS").[2]

## PRELIMINARY STATEMENT

Ten years ago, this Court (Rakoff, J.) withdrew the reference from the Bankruptcy Court in this and over 100 other adversary proceedings to address issues how the securities safe harbor created by Section 546(e) of the Bankruptcy Code affects the Trustee's ability to pursue recovery claims.[3] The result was an Opinion and Order, *Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec.. LLC*, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) (Rakoff, J.) ("*Cohmad*"), which provided the Bankruptcy Court and the parties to the sprawling BLMIS liquidation proceedings answers to fundamental questions concerning the interpretation and application of Section 546(e). In *Cohmad*, this Court held that: (i) a limited class of transferee defendants with actual knowledge of BLMIS's fraud are barred from claiming Section 546(e)'s protections; and (ii) Section 546(e) applies, independently of the securities contracts between BLMIS and the initial transferees, to

---

[1] The Order (ECF No. 106) was entered on July 12, 2022; a copy is attached as Exhibit A to the Declaration of Anthony L. Paccione, dated August 16, 2022 ("Paccione Decl."). Except as indicated otherwise, "ECF ___" refers to filings on the Bankruptcy Court docket in Adv. Pro. No. 12-01207.

[2] By Stipulation and Order entered July 22, 2022 (ECF No. 108), the Bankruptcy Court extended Lloyds' time to appeal the Order through August 16, 2022, rendering this appeal and motion timely under Fed. R. Bankr. P. 8004(a).

[3] *Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-MC-0115 (JSR), ECF No. 119 (S.D.N.Y. May 16, 2012) (the "Section 546(e) Withdrawal Order").

withdrawals a BLMIS customer (*e.g.*, a feeder fund) made to fulfill its payment obligations to redeeming financial institution defendants, under separate securities contracts between the feeder fund and the defendants. Accordingly, this Court instructed the Bankruptcy Court to implement these holdings on remand.

The Bankruptcy Court, however, misapplied the first *Cohmad* holding and ignored the second. Those fundamental errors prompt this appeal, which presents two pure and controlling questions of law, common to dozens of adversary proceedings pending in the Bankruptcy Court: (1) whether the Bankruptcy Court erred by interpreting *Cohmad* to preclude *innocent subsequent transferee defendants – i.e.*, those not alleged to have had actual knowledge of BLMIS's fraud – from asserting their Section 546(e) defenses, simply because the *initial* transferee allegedly had such knowledge; and (2) whether *Cohmad* alternatively requires dismissal under Section 546(e) because the initial transferee's withdrawals of funds from BLMIS were caused by their payment obligations to subsequent transferee financial institution defendants, under those defendants' securities contracts with the initial transferee?

In this adversary proceeding (the "Action"), Lloyds is being sued as a subsequent transferee of redemptions it made from a so-called BLMIS feeder fund, Fairfield Sentry Limited ("Fairfield Sentry") and a sister fund. The Trustee alleges that BLMIS never traded securities on behalf of its customers and that Fairfield Sentry knew of BLMIS's fraud. The Trustee further alleges that BLMIS made initial transfers to Fairfield Sentry, at its request, for the purpose of funding redemption payments requested by Lloyds, and that by redeeming their shares in Fairfield Sentry and a sister feeder fund, Lloyds received subsequent transfers of BLMIS customer property. The Trustee, however, does not allege that Lloyds had actual knowledge of the BLMIS fraud and yet

argued in the Bankruptcy Court that the Section 546(e) safe harbor did not apply to Lloyds' subsequent transfers to BLMIS.

Sections 544(b), 548(a) and 550(a) of the Bankruptcy Code do authorize a trustee to avoid a debtor's fraudulent transfer of property and to recover, or claw back, the avoided transfer from the initial transferee and, in certain instances, from a subsequent transferee. But "Section 546(e) of the Bankruptcy Code, in turn, establishes an important exception to a trustee's clawback powers," "provid[ing] generally that certain securities-related payments, such as transfers made by a stockbroker 'in connection with a securities contract,' or 'settlement payment[s],' cannot be avoided in bankruptcy." *In re Bernard L. Madoff Inv. Secs. LLC (Picard v. Ida Fishman Recoverable Trust)*, 773 F.3d 411, 414 (2d Cir. 2014) ("*Fishman*") (quoting 11 U.S.C. § 546(e)) (alterations in original). Section 546(e) contains just one exception: for initial transfers avoidable under Section 548(a)(1)(A), which authorizes only the avoidance of transfers made with actual fraudulent intent within two years of bankruptcy.

In the Trustee's opposition to Lloyds' motion to dismiss, the Trustee conceded that the initial transfers relevant to the Action, other than the minority of transfers alleged to be within the Section 548(a)(1)(A) exception, satisfied Section 546(e)'s requirements. He also conceded that Lloyds lacked actual knowledge of the BLMIS fraud. The Bankruptcy Court nevertheless held, as a matter of law, that *Cohmad* deprived Lloyds of its ability to invoke that defense – and even rendered the Bankruptcy Court "powerless" to rule otherwise. *Picard v. Lloyds TSB Bank PLC (In re Madoff)*, Adv. Pro. No. 12-01207 ECF 105, 2022 WL 2390551 (Bankr. S.D.N.Y. June 30, 2022) (copy attached as Exhibit B to the Paccione Decl.) (referred to herein as the "Decision").

The Bankruptcy Court misconstrued *Cohmad*'s first holding – that subsequent transferee defendants with actual knowledge of BLMIS's fraud may not claim Section 546(e)'s protections.

As this Court explained in *Cohmad*, the *defendant's* actual knowledge determines whether it should be precluded from invoking Section 546(e). As this Court reasoned, Congress' purpose in creating the securities safe harbor is to promote investors' reasonable expectations as to the finality of their legitimate securities market transactions, and this is not served in the discrete class of cases where the defendants knew of the underlying fraud and understood that no securities were being traded. The Bankruptcy Court's holding that innocent subsequent transferee defendants are barred from invoking Section 546(e), based on the knowledge of initial transferees, is a drastic and unwarranted extension of the limited *Cohmad* rule. The Bankruptcy Court's decision also undermines the rationale in *Cohmad* (and, indeed, the very purpose of Section 546(e), as explained by this Court and the Second Circuit), because it sabotages – rather than promotes – investors' reasonable expectations as to the finality of their legitimate securities transactions.

The second *Cohmad* holding (i.e., Section 546(e) applies, independently to withdrawals a BLMIS customer (*e.g.*, a feeder fund) made to fulfill its payment obligations to redeeming financial institution defendants, under separate securities contracts between the feeder fund and the defendants) provides an alternative way in which Section 546(e) shields the initial transfers at issue here from avoidance. The facts alleged here by the Trustee precisely match the scenario outlined by this Court in *Cohmad*: the initial transferee, a feeder fund, withdrew money from BLMIS to fulfill its payment obligations to a defendant financial institution under securities contracts between the feeder fund and the defendant, to which BLMIS was not a party. Focusing on *that* securities contract, there can be no doubt that the recipient of funds pursuant to that agreement—in this case, Lloyds—had no actual knowledge of BLMIS's fraud. This issue was fully briefed and argued in the Bankruptcy Court, but that court ignored this additional way Section 546(e) applies in the Action.

4

This Court rendered its *Cohmad* decision a decade ago to ensure that the Bankruptcy Court would correctly and faithfully apply its holdings across the dozens of actions in the BLMIS liquidation that raised the Section 546(e) defense. That court, however, is now serially misapplying (or omitting to apply) the guidance provided in *Cohmad*. The Bankruptcy Court's errors have serious practical consequences that should be redressed by an immediate appeal. By exercising its discretion to grant interlocutory review of the Order, and nearly identical orders entered by the Bankruptcy Court in other cases, this Court would promote judicial economy: reversals would substantially streamline this and 40 other, similar pending actions – and terminate entirely 17 others. The proposed appeal raises only pure controlling issues of law, involving the interpretation of this Court's own *Cohmad* decision, as to which there is a substantial ground for difference of opinion. The prerequisites for an interlocutory appeal are thus amply satisfied, and this Court should grant Lloyds leave to pursue it.

### THE QUESTIONS PRESENTED ON THIS APPEAL

1.      Did the Bankruptcy Court err in interpreting this Court's opinion in *Cohmad* to bar a subsequent transferee defendant from asserting a Section 546(e) defense merely because the initial transferee allegedly had actual knowledge of BLMIS's fraud, even though the subsequent transferee defendant was not alleged to have had such knowledge?

2.      Did the Bankruptcy Court err by failing to apply *Cohmad*'s additional holding that Section 546(e) separately applies by virtue of securities contracts between an initial transferee investment fund and defendants, independent of the initial transferee's securities contracts with BLMIS, where the Trustee alleged that the initial transferee withdrew money from BLMIS to fulfill its payment obligations to the defendants, which were redeeming shares in the investment fund?

5

## RELEVANT BACKGROUND

### A.    The Transfers and Claim at Issue

In this Action, the Trustee asserted a single claim for recovery under Section 550(a) of the Bankruptcy Code, alleging that Lloyds was a subsequent transferee of purported BLMIS customer property. The Trustee's claims in this and approximately 80 other adversary proceedings seeking recovery of approximately $3 billion (together, the "Fairfield Subsequent Transfer Actions") are predicated on allegedly voidable initial transfers from BLMIS to Fairfield Sentry. In this Action, of the $11,183,410 amount sought by the Trustee, $8,719,997 million are not subject to avoidance under Section 548(a)(1)(A) because these transfers fall outside the two-year period. *See* Complaint, Exs. C, E.

### B.    *Cohmad*

The *Cohmad* decision followed this Court's withdrawal of the reference in over 100 adversary proceedings, specifically including this Action, to address the application of Section 546(e) to those actions. *See* Ex. A to Section 546(e) Withdrawal Order, Adv. Pro. No. 12-MC-115 ECF 107 (Bankr. S.D.N.Y. May 16, 2012). The proposed appeal relates to two separate holdings in *Cohmad*: one establishing that actual knowledge of the underlying BLMIS fraud by a transferee defendant bars that defendant from invoking the statutory safe harbor, and the other identifying an alternative path to Section 546(e) protection for financial institutions redeeming securities pursuant to securities contracts with feeder funds that withdrew money from BLMIS to fund those redemption payments.

### 1.    Under *Cohmad*, Transferee Defendants with Actual Knowledge of the BLMIS Fraud Are Not Entitled to the Protections of Section 546(e)

The Court in *Cohmad* first recapitulated and reaffirmed its previous holdings – later confirmed by the Second Circuit, *see Fishman*, 773 F.3d at 411-23 – that "Section 546(e) required

the dismissal of the Trustee's avoidance claims except those brought under Section 548(a)(1)(A) and related recovery claims under Section 550(a)." *Cohmad,* 2013 WL 1609154, at *3 (citing *Picard v. Katz*, 462 B.R. 447 (S.D.N.Y. 2011) ("*Katz*") and *Picard v. Greiff*, 476 B.R. 715 (S.D.N.Y. 2012) ("*Greiff*"), *aff'd sub nom. Fishman, supra*). This conclusion was based on this Court's rulings that: (i) the transfers at issue were "made by or to (or for the benefit of) a . . . stockbroker in connection with a securities contract," as BLMIS qualified as a "stockbroker" and its account agreements with its customers qualified as "securities contracts"; and (ii) alternatively, BLMIS customers' withdrawals from their accounts constituted "settlement payments" from a "stockbroker," and fell within the safe harbor for that independent reason. *Cohmad*, 2013 WL 1609154, at *2-3 (quoting Section 546(e)).

Addressing the situation of transferee defendants with "actual knowledge" of BLMIS's fraudulent scheme, *id*. at *3-4, this Court drew a clear, bright line: If the Trustee "allege[s] that a defendant had actual knowledge of Madoff's scheme, such a transferee stands in a different posture from an innocent transferee, even as concerns the application of Section 546(e)." *Id*. at *4. The Court reiterated that, as it had noted previously in *Katz*, 462 B.R. at 452, Section 546(e)'s "purpose" was "minimiz[ing] the displacement caused in the commodities and securities markets in the event of a major bankruptcy affecting those industries," and then explained that:

> [I]n the context of [BLMIS's] fraud, that goal is best achieved by protecting the reasonable expectations of investors who believed they were signing a securities contract; but a transferee who had actual knowledge of the Madoff "Ponzi" scheme did not have any such expectations, but was simply obtaining moneys while he could. Neither law nor equity permits such a person to profit from a safe harbor intended to promote the legitimate workings of the securities markets and the reasonable expectations of legitimate investors.

*Cohmad*, 2013 WL 1609154, at *4. The Court emphasized that to disentitle a transferee defendant from asserting a Section 546(e) defense, "the Trustee must show, at a minimum, that the transferee

had actual knowledge that there were no actual securities transactions being conducted" by BLMIS. *Id*.

Applying this principle to subsequent transferee defendants, this Court in *Cohmad* held that even if an initial (or mediate) transferee "fail[ed] to raise a Section 546(e) defense against the Trustee's avoidance of certain transfers," including "because the transferee settled with the Trustee, . . . the subsequent transferee is nevertheless entitled to raise a Section 546(e) defense against recovery of those funds." *Id*. The *Cohmad* Court reiterated the fundamental rule that "where Section 546(e) applies to the Trustee's claims, the Trustee may only proceed against a subsequent transferee under Section 550(a) as to which he could have avoided the initial transfer under Section 548(a)(1)(A)." *Id*.

This Court added, however, that "[t]here is one caveat to this rule," namely "to [the] extent an innocent customer transferred funds to a subsequent transferee who had actual knowledge of [BLMIS's] fraud, that subsequent transferee cannot prevail on a motion to dismiss on the basis of Section 546(e)'s safe harbor." *Id*. at *7. The Court concluded its discussion of subsequent transferees as follows: "In sum, if the Trustee sufficiently alleges that *the transferee from whom he seeks to recover a fraudulent transfer knew of [BLMIS's] fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor*." *Id*. (emphasis added).

Nowhere in *Cohmad* did this Court state that an *innocent* transferee, lacking "actual knowledge" of the BLMIS fraud, was also barred from claiming Section 546(e)'s protection. On the contrary, the Court stated that where Section 546(e) applied by virtue of BLMIS's account agreements with initial transferees (as the requisite "securities contracts" related to the transfers), only those transferee defendants – whether initial or subsequent transferees – that actually knew of BLMIS's fraud were precluded from relying on the statutory safe harbor:

8

> In summary, the Court concludes that while Section 546(e) generally applies to the
> adversary proceedings brought by the Trustee, those defendants who claim the
> protections of Section 546(e) through a [BLMIS] account agreement but who
> actually knew that [BLMIS] was a Ponzi scheme are not entitled to the protections
> of the Section 546(e) safe harbor, and their motions to dismiss the Trustee's claims
> on this ground are denied. Furthermore, both initial transferees and subsequent
> transferees are entitled to raise a defense based on the application of Section 546(e)
> to the initial transfer from [BLMIS].

*Id*. at *10.

### 2.    *Cohmad*'s Separate Pathway to Section 546(e) Protection

In *Cohmad*, this Court identified an alternative way in which Section 546(e) affords a

defense to certain subsequent transferee defendants. This Court did not depend on BLMIS account

agreements as the "securities contracts." Rather, "subscription agreements and redemption

requests" entered into by "financial institutions" or "financial participants" are themselves

"securities contracts" under the statute. 2013 WL 1609154 at *8-9. The Court reasoned that

although Section 546(e) requires that a transfer, to be covered, must be made "in connection with

a securities contract," the statute's scope is not limited to "securities contracts" to which the debtor

is a party, so long as the initial transfer from BLMIS "is related to that security agreement." *Id*. at

*9.[4] Thus, "a withdrawal by a [BLMIS] customer caused by that party's payment obligations to a

subsequent transferee under a securities contract could qualify as 'related to' that later transaction."

*Id*. In actions to recover subsequent transfers, the Trustee's allegations that an initial transferee

investment fund withdrew funds from its BLMIS account "because an investor in that fund sought

redemption of its investment under terms of an investment contract . . . appear[] to fit within the

---

[4]As the Second Circuit later explained, "a transfer can be connected to, and can be made in relation to, multiple documents or purposes simultaneously." *Fishman*, 773 F.3d at 422 (rejecting the Trustee's argument that payments made as part of a Ponzi scheme cannot have been "in connection with" a "securities contract" within the meaning of Section 546(e)).

plain terms of Section 546(e)," so long as "either the investment fund or the investor qualifies as a financial institution or financial participant." *Id.* (footnote omitted).

*Cohmad* did not address whether the allegations in any particular actions would be subject to dismissal under this paradigm, *see id.* at *9 n.6, but ruled that "to the extent a defendant claims protection under Section 546(e) under a separate securities contract as a financial participant or financial institution, the Bankruptcy Court must adjudicate those claims in the first instance consistent with this Opinion," *id.* at *10. This Court thus returned the actions listed in the Section 546(e) Withdrawal Order "to the Bankruptcy Court for further proceedings consistent with this Opinion and Order." *Id.*

### C.    The *Cohmad* Issues on Lloyds' Motion to Dismiss

Until recently, the Bankruptcy Court had no occasion to consider the issues addressed in *Cohmad* in any of the Fairfield Subsequent Transfer Actions because they were (i) dismissed based on decisions of this Court and the Bankruptcy Court on extraterritoriality and international comity grounds, (ii) reinstated after those decisions were reversed in *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019), and then (iii) stayed pending the Second Circuit's "good faith" decision in *Picard v. Citibank, N.A. (In re Bernard L. Madoff Investment Securities LLC)*, 12 F. 4th 171 (2d Cir. 2021). Last year, the Bankruptcy Court re-assigned this Action to Judge Morris (ECF No. 80), who lifted the stay.

At a September 15, 2021 omnibus status conference concerning the Trustee's actions against subsequent transferees, various defendants' counsel requested, in anticipation of motions to dismiss, that the Bankruptcy Court consolidate the briefing of issues common to a large number of proceedings. Judge Morris rejected that request and instead directed that common issues be briefed individually. *See* ECF No. 84, at 97-99. As a result, specific common issues (including those relating to Section 546(e) and *Cohmad*) have already been briefed, argued, and decided (in

similarly worded decisions) over the past several months – a process that is now destined to be repeated dozens of times, well into 2023.

Lloyds moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6). Its second argument was that Section 546(e) barred the Trustee's claims. *See* ECF No. 88 at 10-20. In his opposition memorandum (ECF No. 92), the Trustee did not dispute that all the alleged "six year" transfers at issue satisfied Section 546(e)'s requirements, because, among other things, the alleged initial transfers were made "in connection" with account agreements between BLMIS and Fairfield Sentry, which (as the Second Circuit previously held) "satisfy the broad definition of 'securities contracts' in 11 U.S.C. § 741(7)(A)." *Fishman*, 773 F.3d at 418. Nor did the Trustee contest Lloyds' lack of knowledge of BLMIS's fraud. Rather, the principal issue on the motion to dismiss was whether, under *Cohmad*, Fairfield Sentry's alleged "actual knowledge" of the BLMIS fraud, which Judge Morris held (in another action)[5] had been adequately pleaded by the Trustee, precluded Lloyds, as an innocent subsequent transferee, from invoking Section 546(e). The parties also disputed the significance of this Court's additional *Cohmad* holding recognizing that Section 546(e) was available to subsequent transferee financial institutions that received redemption payments from initial transferee investment funds under "securities contracts" to which BLMIS was not a party.

Lloyds' motion to dismiss was among the second group of such motions in Fairfield Subsequent Transfer Actions argued before the Bankruptcy Court on June 15, 2022. The arguments focused on Section 546(e) issues, particularly the two *Cohmad* holdings summarized above. *See* Tr. June 15, 2022, Hr'g *Picard v. Lloyds TSB Bank PLC*, Adv. Pro. No. 12-01207

---

[5] *Secs. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re Bernard L. Madoff)*, 2021 WL 3477479 (Bankr. S.D.N.Y. Aug. 6, 2021) ("*Fairfield Investment Fund*").

(Bankr. S.D.N.Y.), Dkt. No. 104, at 53-75 ("Hr'g Tr."). Two weeks later, the Bankruptcy Court

issued its Decision (ECF No. 105) denying Lloyds' motion to dismiss in its entirety. Paccione

Decl. Ex. B, 2022 WL 2390551 (Bankr. S.D.N.Y. June 30, 2022).

### D.    The Bankruptcy Court's Decision and Order against Lloyds

In the Decision, Judge Morris discussed Fairfield Sentry's alleged knowledge of the

BLMIS fraud, and quoted *Cohmad* for the proposition that "those defendants who claim the

protections of Section 546(e) through a [BLMIS] account but who actually knew that [BLMIS]

was a Ponzi scheme are not entitled to the protection of the Section 546(e) safe harbor, and their

motions to dismiss on this ground must be denied." Paccione Decl. Ex. B at 12, 2022 WL 2390551,

at *5. Although Lloyds was *not* alleged to have such actual knowledge, the Bankruptcy Court

stated that this Action was one of the consolidated cases on which the district court had already

ruled in *Cohmad*, so the court was "powerless to reconsider this issue." *Id*. Thus, despite the

absence of allegations that *Lloyds* had knowledge of the BLMIS fraud, the Bankruptcy Court

deemed the Trustee's allegations as to *Fairfield Sentry's* knowledge were "sufficient to survive a

Rule 12(b)(6) motion on this issue." *Id*.

After noting that "the safe harbor is not applicable to subsequent transfers" (rejecting an

argument Lloyds did not make), the Bankruptcy Court stated that Lloyds' "reliance" on *Cohmad*

was "misplaced." *Id*. at 13, 2022 WL 2390551 at *5-6. In Judge Morris' view, this Court's

reference in *Cohmad* to "one caveat," 2013 WL 1609154, at *7 (*see supra* at 8) – involving

innocent initial transferees and subsequent transfers with actual knowledge of the underlying fraud

– was dispositive. Paccione Decl. Ex. B at 14, 2022 WL 2799924, at *6. The Bankruptcy Court

did not address Lloyds' argument that Section 546(e) additionally applied by virtue of its "securities contracts" with Fairfield Sentry.[6]

On July 12, 2022, the Bankruptcy Court entered the Order (ECF No. 106).

### E.    Other Defendants' Motions for Leave to Appeal

Defendants in two other Fairfield Subsequent Transfer Actions whose motions to dismiss were denied on Section 546(e) grounds have already filed motions for leave to appeal.[7]

## ARGUMENT

## I.    LEAVE TO APPEAL SHOULD BE GRANTED SO THIS COURT MAY CORRECT THE BANKRUPTCY COURT'S MISINTERPRETATION OF THE *COHMAD* DECISION

### A.    The Applicable Standards

Appeals from non-final bankruptcy court orders may be taken if the district court grants leave under 28 U.S.C. § 158(a)(3), applying the standards of 28 U.S.C. § 1292(b), governing the appealability of interlocutory district court orders. *See In re Ditech Holding Corp.*, 2021 WL 4267691, at *1 (S.D.N.Y. Sept. 20, 2021) (Rakoff, J.); *Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.)*, 2006 WL 2548592, at *3 (S.D.N.Y. Sept. 5, 2006) ("*Enron*"). The order being appealed must "(1) involve a controlling question of law (2) over which there is substantial ground for difference of opinion," and the movant must show that "(3) an immediate appeal would materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see Enron*, 2006 WL 2548592, at *3. Leave to appeal is warranted when the movant demonstrates the existence of "exceptional circumstances" that overcome the "general aversion to piecemeal

---

[6] In the Decision, the Bankruptcy Court also either rejected or failed to address the arguments for dismissal made in Lloyds' motion based on grounds unrelated to Section 546(e). Lloyds does not seek leave to appeal on any of those grounds.

[7] These defendants are Multi-Strategy Fund Limited (No. 22-CV-06502-JSR) and Banque Syz & Co., S.A. (No. 22-CV-06512-JSR).

litigation," and "justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Id*. at *3.

Although "failure to establish one factor is not fatal to certification, particularly when other factors strongly counsel in favor of [an interlocutory] appeal," *In re GM LLC Ignition Switch Litig.*, 427 F. Supp. 3d 374, 391 (S.D.N.Y. 2019) ("*GM Ignition*") (internal quotation marks and citation omitted), the following sections of this brief demonstrate that all three are satisfied here. And because the impact of the Bankruptcy Court's Section 546(e) holding extends to dozens of similar adversary proceedings that would, in the event of a reversal, be dismissed in their entirety or at a minimum be substantially streamlined, this Action (and the other actions in which motions for leave to appeal have been or will be filed) presents compelling circumstances for the Court to exercise its discretion to grant interlocutory review of the Order.

## B.    The Questions Presented Are Pure, Controlling Question of Laws

"In regard to the first prong, the 'question of law' must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Enron*, 2006 WL 2548592, at *4. "[T]he resolution of an issue need not necessarily terminate an action in order to be 'controlling.'" *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) (citation omitted). "It is enough that the Court's determination 'could significantly affect the conduct of the action.'" *GM Ignition*, 427 F. Supp. 3d at 392 (citation omitted); *see also In re The Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d Cir. 1978) (Friendly, J.) ("[T]he phrase 'a controlling question of law' in § 1292(b) [may] include a procedural determination that may importantly affect the conduct of an action."); *New York Racing Ass'n v. Perlmutter Publ'g, Inc.*, 959 F. Supp. 578, 582 (N.D.N.Y. 1997) ("It only has to be an issue that could materially affect the outcome of the case."). As this Court explained in *MF Global Holdings, Ltd. v. Allied World Assurance Co. (In re MF Global Holdings Ltd.)*, 296 F. Supp. 3d 662 (S.D.N.Y. 2017) (Rakoff,

14

J.) ("*MF Global*"), where an appeal "presents a pure question of law that could be quickly resolved and would provide important guidance for similarly situated parties" – as is the case here (*see infra* at 22) – it "presents a controlling question of law." *Id*. at 665.

The two questions at issue here are pure issues of law, both of which turn entirely on interpreting this Court's decision in *Cohmad*. *See, e.g.*, *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 552 (S.D.N.Y. 2013) (Abrams, J.) ("*Capitol Records*") (holding that the first factor under Section 1292(b) was satisfied because "the issue turns almost exclusively on a question of statutory interpretation"). Moreover, these threshold issues "go directly to the plaintiff's ability to maintain some or all of its claims." *Federal Housing Fin. Agency v. UBS Americas, Inc.*, 858 F. Supp. 2d 306, 337 (S.D.N.Y. 2012) ("*UBS*") (holding that threshold questions "are precisely the type of legal issue that Congress intended to be addressed through the Section 1292(b) procedure"). There is no need for the Court to "study the record," *Enron*, 2006 WL 2548592, at *4, or engage in fact-finding. The dispositive fact is undisputed: the Trustee has not alleged that Lloyds had actual knowledge of the BLMIS fraud.[8] And the Trustee's opposition to the motion to dismiss was based squarely on his argument that *Cohmad* renders irrelevant the knowledge of subsequent transferees so long as the initial transferee is alleged to have had actual knowledge of the underlying fraud.[9]

---

[8] *See* Complaint (ECF No. 1) (not alleging such knowledge); *Lloyds' Memorandum of Law in Support of Their Motion to Dismiss the Complaint* (ECF 88) at 17-19. Because the Trustee neither pleaded that Lloyds had such knowledge nor contested the issue in his opposition brief or at oral argument in the Bankruptcy Court, he has conceded the point. *See, e.g., McMillan v. City of New York*, 2011 WL 5237285, at *9 (S.D.N.Y. Aug. 23, 2011) (Rakoff, J.) ("By failing to submit any argument on this point, plaintiff has conceded the issue."), *vacated on other grounds*, 711 F.3d 120 (2d Cir. 2013).

[9] *See Trustee's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint* (ECF 92) at 12-18; Hr'g Tr., at 67 (Trustee's counsel argued that under *Cohmad*, "where the initial transferee does not have actual knowledge . . . is the only time that a subsequent transferee's actual knowledge is relevant").

The pure questions of law at issue here are "controlling" because a decision reversing the Bankruptcy Court would result in the dismissal of the bulk of the Trustee's claim against Lloyds. Removing from the Action 27 of 41 alleged subsequent transfers, involving more than $8.7 million of the approximately $11.1 million now at issue, "could significantly affect the conduct of the action," and therefore qualifies as "controlling." *See GM Ignition*, 427 F. Supp. 3d at 392 (this standard was met where affirmance of an order would substantially reduce the damages plaintiffs could pursue, so that "the value of Plaintiffs' claims may be substantially compromised").

In determining whether an issue is "controlling" under the Section 1292(b) test, "[c]ourts also consider whether the certified issue has precedential value for a large number of cases." *Tantaros v. Fox News Network, LLC*, 465 F. Supp. 3d 385, 390 (S.D.N.Y. 2020); *see also Capitol Records*, 972 F. Supp. 2d at 553 (that "resolution" of the "arguments will have far-reaching implications in this case and others" supported interlocutory review) (citing *Klinghoffer*, 821 F.2d at 24). A decision on the issues presented here will have precedential value, at a minimum, for dozens of Fairfield Subsequent Transfer Actions involving precisely the same questions.

### C.    There Is a Substantial Ground for Difference of Opinion Because the Bankruptcy Court's Decision Is Inconsistent with *Cohmad* and Its Rationale and Undermines Congress' Intent in Enacting Section 546(e)

Under the second prong of the Section 1292(b) test, "the 'substantial ground for a difference of opinion' must arise out of a genuine doubt as to whether the Bankruptcy Court applied the correct legal standard." *Enron*, 2006 WL 2548592, at *4. This requirement may be satisfied when "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *Id*. "[I]t is the duty of the district judge . . . to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a *substantial* ground for dispute." *Flor v. BOT*

*Fin. Corp. (In re Flor)*, 79 F.3d 281, 284 (2d Cir. 1996) (emphasis and ellipsis in original; internal quotation and citation omitted).

The Second Circuit has not decided on the issues presented by this appeal, and the arguments in opposition to the Bankruptcy Court's Decision are vital because the Decision directly and repeatedly clashes with *Cohmad*. In *Cohmad*, this Court held that a transferee defendant *with actual knowledge* of BLMIS's fraud could not invoke the protections of Section 546(e) based on "securities contracts" between the initial transferee and BLMIS. This Court did not, however, state (or even imply) that a transferee defendant *lacking* such actual knowledge was precluded from relying on Section 546(e). Rather, the Court drew a sharp distinction between defendants having "actual knowledge" of the BLMIS fraud and those who were innocent of such knowledge. *See Cohmad*, 2013 WL 1609154, at *4 (if the Complaint "adequately alleges that a defendant had actual knowledge of Madoff's scheme, such a transferee stands in a different posture from an innocent transferee, even as concerns the application of Section 546(e)").

The Bankruptcy Court, however, disregarded that clear line. Instead, it not only ruled that Lloyds – concededly an innocent transferee – was precluded from relying on Section 546(e), but incorrectly insisted that *Cohmad compelled* that result. *See* ECF No. 105, Paccione Decl. Ex. B at 12, 2022 WL 2799924, at *5 ("The Court is powerless to reconsider this issue . . . .").

By disentitling the class of "actual knowledge" defendants – and only that class – from relying on Section 546(e), *Cohmad* expressly aimed to promote what this Court (and later the Second Circuit)[10] identified as Congress' purpose in enacting Section 546(e), *i.e.*, minimizing the

---

[10] *See Fishman*, 773 F.3d at 420 ("Permitting the clawback of millions, if not billions, of dollars from BLMIS clients . . . would likely cause the very 'displacement' that Congress hoped to minimize in enacting § 546(e)"); *see also In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 94 (2d Cir. 2019) ("Section 546(e) is in full conflict with the goal of maximizing the assets available to creditors. Its purpose is to protect a national, heavily regulated [securities] market by limiting creditors' rights").

displacement that a major bankruptcy can cause in the securities markets. *Cohmad*, 2013 WL 1609154, at \*4. The Court in *Cohmad* sought to accomplish this legislative goal by "protecting the reasonable expectations of investors who believed they were signing a securities contract" while withholding "safe harbor" protection from defendants who, because they knew that BLMIS was a Ponzi scheme and not trading securities, lacked any such reasonable expectations. *Id*. The Bankruptcy Court's Decision, however, frustrates – rather than protects – innocent subsequent transferees' reasonable expectations based on their legitimate securities contracts and transactions. Nor can the Bankruptcy Court's holding be reconciled with *Fishman*, where the Second Circuit affirmed the dismissal of the Trustee's actions against innocent *direct* BLMIS investors under Section 546(e). 773 F.3d at 423 ("[B]y enacting § 546(e), Congress provided that, for a very broad range of securities-related transfers, the interest in finality is sufficiently important that they cannot be avoided by a bankruptcy trustee at all, except as actual fraudulent transfers under § 548(a)(1)(A)."). It would be anomalous to deny innocent *subsequent* transferee defendants – one step further removed from (and equally ignorant of) BLMIS's fraud – the same statutory protection.

Moreover, the Bankruptcy Court's holding that an innocent subsequent transferee defendant is stripped of its right to claim Section 546(e) protection merely because a third party – an unaffiliated initial transferee – happened to have "actual knowledge" is contrary to this Court's emphasis in *Cohmad* on the actual knowledge of the particular *defendant being sued*. *See, e.g.*, *Cohmad*, 2013 WL 1609154, at \*7 ("[I]f the Trustee sufficiently alleges that *the transferee from whom he seeks to recover* a fraudulent transfer knew of [BLMIS's] fraud, *that transferee* cannot

claim the protections of Section 546(e)'s safe harbor") (emphasis added);[11] *see also id.* at \*10
("while Section 546(e) applies generally to the adversary proceedings brought by the Trustee,
*those defendants* who claim the protections of Section 546(e) through a [BLMIS] account
agreement but who actually knew that [BLMIS] was a Ponzi scheme are not entitled to the
protections of the Section 546(e) safe harbor, and *their motions* to dismiss the Trustee's claims on
this ground must be denied") (emphasis added). Nothing in *Cohmad* warrants imputing initial
transferees' knowledge to innocent subsequent transferees who dealt with initial transferees at
arm's length. Certainly, much less compels the Bankruptcy Court to deny such subsequent
transferees' motions to dismiss.

The Bankruptcy Court's reliance on the reference to "one caveat" in *Cohmad* illustrates its
interpretation errors. In *Cohmad*, this Court reiterated the general rule that "where Section 546(e)
applies to the Trustee's claims" – which the Trustee did not dispute is the case here – "the Trustee
may only proceed against a subsequent transferee insofar as he seeks to recover those subsequent
transfers under Section 550(a) as to which he could have avoided the initial transfer under Section
548(a)(1)(A)," and then stated that "[t]here is one caveat to this rule," precluding a subsequent
transferee "who had actual knowledge of [BLMIS's] fraud" from invoking Section 546(e), even
though the initial transferee was innocent. *Id.* at \*7. Thus, innocent subsequent transferees such
as Lloyds are covered by the *general rule* in *Cohmad*: where the Section 546(e) requirements are
satisfied, as is the case here, the Trustee may not pursue a Section 550(a) recovery action against

---

[11] In its Decision, the Bankruptcy Court quoted its previous quotation (in *Fairfield Investment Fund*, 2021 WL
3477479, at \*4) of this statement from *Cohmad*, but altered its meaning by inserting "[initial]" immediately before
"transferee." *See* ECF No. 105, Paccione Decl. Ex. B, at 10, 2022 WL 2799924, at \*4.

a transferee lacking actual knowledge, except as to those subsequent transfers as to which the initial transfers were avoidable under Section 548(a)(1)(A). *Cohmad*, 2013 WL 1609154, at *7. [12]

Although the Bankruptcy Court ignored it, the Trustee's concession (*see supra* at 3) that the Section 546(e) "safe harbor" applied to the initial transfers at issue meant that the Trustee was barred from pursuing claims based on the avoidability of those transfers (just as in *Fishman*). Except to the extent that *Cohmad* precluded a particular defendant from asserting the Section 546(e) defense because of *that defendant's* "actual knowledge" of the BLMIS fraud. *Cohmad* did not diminish the scope of the safe harbor, but merely established a rule of limited application that precludes defendants with "actual knowledge" of the underlying fraud from benefitting from Section 546(e). Under *Cohmad*, a defendant's disentitlement to safe harbor must depend solely upon whether it had the requisite "actual knowledge" of the BLMIS fraud. The Bankruptcy Court instead treated the *Cohmad* bar applicable to initial transferee Fairfield Sentry (based on its finding in *Fairfield Investment Fund* that the Trustee adequately pleaded that Fairfield Sentry had such "actual knowledge") as fatal to *Lloyds'* ability to rely on Section 546(e), despite that Lloyds is an entirely separate and unrelated entity from Fairfield Sentry. The Bankruptcy Court thus erroneously disregarded the undisputed fact that Lloyds was an innocent subsequent transferee defendant. Lloyds' right to claim Section 546(e)'s protections is not affected by *Cohmad*.

---

[12] Lloyds did not, as the Bankruptcy Court incorrectly suggested, argue that the safe harbor directly applies to subsequent transfers. *See* Paccione Decl. Ex. B, at 13, 2022 WL 2799924, at *5. Rather, Lloyds asserted that the safe harbor applied by its terms to the alleged *initial* transfers from BLMIS to Fairfield Sentry (which entered into a settlement agreement with the Trustee in 2011 and did not litigate the Section 546(e) issue) and that as subsequent transferee defendants sued under Section 550(a), they were entitled to move to dismiss on Section 546(e) grounds. *Cohmad* itself made clear that a subsequent transferee defendant may do just that. 2013 WL 1609154, at *7 ("[E]ven if the initial . . . transferee fails to raise a Section 546(e) defense against the Trustee's avoidance of certain transfers . . . because the transferee settled with the Trustee . . . the subsequent transferee is nonetheless entitled to raise a Section 546(e) defense against recovery of those funds."); *see also id.* at *3 (explaining that the Court had twice previously held that Section 546(e) "required the dismissal" of both the Trustee's avoidance claims and of "related recovery claims under Section 550(a)").

In addition to misconstruing *Cohmad*'s first holding, the Bankruptcy Court entirely overlooked *Cohmad's* additional holding – *i.e.*, that the safe harbor may be invoked by financial institutions, such as Lloyds, that received from a feeder fund settlement payments for the redemption of their shares in the fund, where the fund caused the initial transfer to be made to honor its obligations under a securities contract between the fund and the defendant. This Court explained that such transfers are subject to Section 546(e), without regard to the initial transferees' BLMIS account agreements, because they "relate to" defendants' separate securities contracts with the feeder funds. *See Cohmad*, 2013 WL 1609154, at *9. Lloyds showed, on their motion to dismiss, that the facts alleged by the Trustee precisely matched the "situation" which this Court held "appears to fit within the plain terms of Section 546(e)." [13] *Cohmad*, 2013 WL 1609154, at *9. The Bankruptcy Court, however, did not address this entire issue. Indeed, there can be no doubt that Lloyds, as the recipient of funds pursuant to the feeder fund settlement payments, had no actual knowledge of the BLMIS fraud, and thus, there be no limitation on the scope of the Section 546(e) safe harbor in this case.

In sum, as to both issues presented for appeal, there is abundant "substantial ground for a difference of opinion."

### D.   An Immediate Appeal May Materially Advance the Ultimate Termination of the Action

"Although technically the question whether there is a controlling issue of law is distinct from the question of whether certification would materially advance the ultimate termination of the litigation, in practice the two questions are closely connected." *GM Ignition*, 427 F. Supp. 3d at 393 (internal quotation marks and citation omitted). An "immediate appeal is considered to

---

[13] *See* ECF No. 88 (initial memorandum) at 10-20, ECR No. 97 (reply memorandum) at 5-13; Hr'g Tr. at 62-64.

advance the ultimate termination of the litigation if that appeal promises to advance the time for trial or shorten the time required for trial." *Enron*, 2006 WL 2548592, at *4 (internal quotation marks and footnote omitted). Because the reversal of the Order would eliminate nearly $9 million of the subsequent transfers at issue (*see supra* at 16), it would substantially reduce the scope of fact and expert discovery and the time required for trial. *See Capitol Records*, 972 F. Supp. 2d at 552 (where nearly three quarters of the instances of copyright infringement at issue might be dismissed under a statutory "safe harbor," the third Section 1292(b) factor was satisfied, and the question was certified for interlocutory appeal); *see also United States ex rel. Quartararo v. Catholic Health System of Long Island Inc.*, 521 F. Supp. 3d 265, 279 (E.D.N.Y. 2021) (an appellate ruling resulting in dismissal of an action "at least in substantial part" would "advance the trial schedule and expedite the litigation," satisfying the third factor) (collecting cases).

As with the first factor (controlling issue of law), "[t]he fact that the Court's ruling likely impacts a large number of claims further counsels in favor of appeal." *GM Ignition*, 427 F. Supp. 2d at 393. So, too, does the size and complexity of the litigation. *Id*. Moreover, by significantly reducing the value of the Trustee's claims, an appellate ruling might promote settlement, which would otherwise be difficult to achieve due to legal uncertainty about the viability of the bulk of the Trustee's claim. *See Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) (Posner, J.) (accepting a certified appeal under Section 1292(b) where the absence of interlocutory review would leave uncertainty about a major claim and "delay settlement" of a class action; "[t]hat is enough to satisfy the 'materially advance' clause of Section 1292(b)"); *GM Ignition*, 427 F. Supp. 3d at 394 (certifying interlocutory appeal in a multi-district litigation where "a broad swath of Plaintiffs' claims are likely to be resolved by settlement, and the value of that settlement will be heavily influenced by the Court's Opinion and Order"); *UBS*, 858 F. Supp. 2d at 338 (an

22

interlocutory appellate ruling on an issue would "remove a cloud of legal uncertainty that hangs over the other 17 actions in this suite of cases"; such a ruling "is likely to significantly affect the parties' bargaining positions and may hasten the termination of this litigation through settlement").

### E.    Exceptional Circumstances Warrant Permitting an Immediate Appeal

This motion presents exceptional circumstances in that appellate resolution of the issues presented will not only have "far-reaching implications in this case," but also in many "others." *Capitol Records*, 972 F. Supp. 2d at 553. The appeal sought in this Action and in others raising the same issues (*see supra* at 13 n.7) "would provide important guidance for similarly situated parties," *MF Global*, 296 F. Supp. 3d at 665, and "[t]he fact that the court's ruling likely impacts a large number of claims further counsels in favor of appeal." *GM Ignition*, 247 F. Supp. 3d at 393 (granting Section 1292(b) certification in the context of a multi-district litigation); *see also UBS*, 858 F. Supp. 2d at 338-39; *cf. Klinghoffer*, 921 F.3d at 24 ("[T]he impact that an appeal will have on other cases is a factor that we may take into account in deciding whether to accept an appeal that has been properly certified by the District Court").

There is no shortage of such other cases. There are 17 pending Fairfield Subsequent Transfer Actions where all the relevant alleged initial transfers were made more than two years before the BLMIS petition date, and therefore are unaffected by Section 546(e)'s express exception for claims under Section 548(a)(1)(A). *See* Paccione Decl. Ex. C. All the alleged initial transfers in those actions are subject to Section 546(e) under this Court's rulings in *Katz* and *Greiff* and the Second Circuit's decision in *Fishman*, and the Trustee has not alleged actual knowledge on the part of any of the defendants. Correcting the Bankruptcy Court's misinterpretation of *Cohmad* would result in the complete dismissal of these proceedings involving over $700 million in claims.

In addition, in 41 other pending Fairfield Subsequent Transfer Actions, including this one, many (but not all) of the alleged initial transfers – totaling over $1.1 billion (based on transfers to

defendants directly from Fairfield Sentry without even considering transfers from its sister funds) – occurred outside of the two-year lookback period for Section 548(a)(1)(A) claims. *See* Paccione Decl. Ex. C. Correcting on appeal the Bankruptcy Court's misinterpretation of *Cohmad* would substantially reduce the scope of all those actions, streamlining discovery and trials. Such discovery is sure to be extremely expensive and time-consuming. In the pending Fairfield Subsequent Transferee Actions that have survived the motion to dismiss stage, the Bankruptcy Court has entered a scheduling order for three years of discovery proceedings, through April 2025. *E.g.,* Case Mgmt. Plan ¶¶ 2(b), 3(a) (ECF 134), *Picard v. Bureau of Labor Ins. (In re Madoff)*, Adv. No. 11-2732 (CGM) (Bankr. S.D.N.Y. June 14, 2022). The efficient administration of this complex litigation that has exposed innocent subsequent transferee defendants to a decade or more of litigation expense militates permitting immediate appellate review of the Bankruptcy Court's erroneous interpretation of this Court's decision in *Cohmad*.

## CONCLUSION

For the foregoing reasons, Lloyds should be granted leave to appeal the Bankruptcy Court's Order.

Dated: New York, New York
August 16, 2022

Respectfully submitted,

*s/ Anthony L. Paccione*
Anthony L. Paccione
Mark T. Ciani
Katten Muchin Rosenman LLP
50 Rockefeller Plaza
New York, New York 10020
Telephone: (212) 940-8800
anthony.paccione@katten.com
mark.ciani@katten.com

*Attorneys for Defendant*