<u>**NOT FOR PUBLICATION**</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 12-01002 (CGM) |
| v. | |
| The Public Institution for Social Security, | |
| Defendant. | |

**MEMORANDUM DECISION DENYING DEFENDANT'S MOTION TO
DISMISS AND MOTION TO STRIKE**

<u>**A P P E A R A N C E S**</u> **:**

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of
Bernard L. Madoff*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
By:     Brian Song (via Zoom)

*Counsels for Defendant, The Public Institution for Social Security*
Leo Muchnik
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, New York 10017
By:     Joseph P. Davis (via Zoom)
        Alison T. Holdway (via Zoom)

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

       Pending before the Court is the motion by the Defendant, the Public Institution for Social

Security ("PIFSS"), to dismiss the complaint of Irving Picard, the trustee ("Trustee") for the

liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to recover

subsequent transfers allegedly consisting of BLMIS customer property.  PIFSS seeks dismissal

for lack of subject matter jurisdiction, for lack of personal jurisdiction, for failure to plead a

cause of action due to improper adoption by reference; for failure to state a claim due to the safe

harbor provision of the Bankruptcy Code, and for failure to plead that the transfers from BLMIS

were customer property.  The Defendants further moves to strike the declaration of Brian W.

Song (the "Song Declaration") and all attached exhibits, numbered 1 through 13.  For the reasons

set forth herein, the motion to dismiss and motion to strike are denied in their entirety.

<u>**Jurisdiction**</u>

       This is an adversary proceeding commenced in this Court, in which the main underlying

SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending.  The

SIPA Proceeding was originally brought in the United States District Court for the Southern

District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L.*

*Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court.

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1),

and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O).  Submit

matter jurisdiction and personal jurisdiction have been contested by the Defendant and will be

discussed *infra*.

## Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its

SIPA proceeding.  *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir.

2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on January 5, 2012.  Compl., ECF[1] No. 1.  The

Defendant was a government agency of the State of Kuwait responsible for investing the assets

of and administering the Kuwaiti social security system.  *Id.* ¶ 3.  Via the complaint

("Complaint"), the Trustee seeks to recover subsequent transfers made to the Defendant.  *Id.* ¶ 2.

The subsequent transfers were derived from investments with BLMIS made by other funds,

including Fairfield Sentry Limited ("Fairfield Sentry").  *Id*.  These funds are referred to as

"feeder funds" because the intention of the fund was to invest in BLMIS.  *Id.* ¶ 7.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield

Sentry and related defendants to avoid and recover fraudulent transfers of customer property in

the amount of approximately $3 billion.  *Id.* ¶¶ 35, 36.  In 2011, the Trustee settled with Fairfield

Sentry.  *Id.* ¶ 40.  As part of the settlement, Fairfield Sentry consented to a judgment in the

amount of $3.054 billion (Consent J., 09-01239-cgm, ECF No. 109) but repaid only $70 million

to the BLMIS customer property estate.  The Trustee then commenced a number of adversary

proceedings against subsequent transferees like Defendant to recover the approximately $3

billion in missing customer property.  The Trustee alleges that the Defendant received

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary
proceeding 12-01002-cgm.

approximately $20,000,000 of funds initially transferred from BLMIS to Fairfield Sentry and subsequently from Fairfield Sentry to the Defendant.  Compl. ¶ 41, ECF No. 1; Stip., ECF 111 (amending Count One of the Complaint to recovery of one transfer in the amount of $20,000,000).

## Discussion

**Subject Matter Jurisdiction**

This Court has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and the Amended Standing Order of Reference, dated January 31, 2012.  In addition, the District Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008), at ¶ IX (ECF No. 1)), and this Court has jurisdiction under the latter provision. Personal jurisdiction has been contested by this Defendant and will be discussed *infra*.

The Defendant objects to the Court's subject matter jurisdiction, arguing that it is immune from liability under the Foreign Sovereign Immunities Act (the "FSIA").  Mot. to Dismiss, ECF No. 118.  The FSIA, 28 U.S.C. §§ 1602–1611, determines whether a federal court may exercise jurisdiction over a foreign state.  *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443, 109 S.Ct. 683, 693, 102 L. Ed. 2d 818 (1989) ("[T]he FSIA provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country.").  A foreign state is "presumptively immune from the jurisdiction of United States courts; unless a specified exception applies."  *Saudi Arabia v. Nelson*, 507 U.S. 349, 355, 113 S. Ct. 1471, 1476, 123 L. Ed. 2d 47 (1993).  Where no exception applies, "federal courts lack subject-matter jurisdiction over claims against foreign states."  *Picard v. Bureau of Labor Ins.* (*In re Bernard L.*

*Madoff*), 480 B.R. 501, 510 (Bankr. S.D.N.Y. 2012) ("*BLI*"). After the Defendant has made a prima facie case that it is a foreign state, the "burden shifts to the plaintiff, who must then produce evidence to demonstrate that immunity should not be granted under exceptions to the FSIA." *Id.* (citing *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir.1993)).

## The Defendant is a Foreign State Under the FSIA

The FSIA defines "foreign state" to include "a political subdivision of a foreign state or an "agency or instrumentality of a foreign state as defined in subsection (b)." 28 U.S.C. § 1603(a). The Trustee has conceded that the Defendant is a foreign state under the FSIA. Compl. ¶ 22; Reply 7, ECF No. 122. The Defendant is presumptively immune from the jurisdiction of this Court. The Trustee argues that the Defendant is nevertheless exempt from immunity under the FSIA's commercial activity exception.

## The Commercial Activities Exception to the FSIA Applies

Under 28 U.S.C.A. § 1605, a foreign state is not immune from jurisdiction of the federal courts in cases

> in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2). The Defendant argues that only the third and final clause of the exception could apply as it is "undisputed that PIFSS is a foreign governmental agency and that its conduct occurred outside the United States". Mot. to Dismiss, ECF No. 118. The final clause of the commercial activities exception,

> consists of three elements: (1) the operative act (i.e., the gravamen of the complaint) must have occurred outside the United States, (2) the act must have occurred in connection with a commercial activity of the foreign state elsewhere, and (3) the act [must have] cause[d] a direct effect in the United States.

*MMA Consultants 1, Inc. v. Republic of Peru*, 719 F. App'x 47, 54 (2d Cir. 2017) (cleaned up).

The gravamen of the complaint is the basis or foundation of a claim, that is, those elements that, if proven, would entitle a plaintiff to relief. *Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 107 (2d Cir. 2016). The Defendant and the Trustee agree that the gravamen of the Complaint is PIFSS's receipt of funds due to its subscription into Fairfield Sentry. Mot. at 10, ECF No. 118; Opp'n at 8, ECF No. 122. This conduct occurred outside of the territory of the United States. *Id.* The Trustee has met the first prong of the final clause of the commercial activities exception.

The Act must have occurred in connection with a commercial activity. The FSIA defines "commercial activity" as "a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). The activity of a foreign state is "commercial" within the meaning of the FSIA "if the sovereign undertakes the act 'not as regulator of a market, but in the manner of a private player within it.'" *MMA Consultants 1, Inc.*, 719 F. App'x at 52 (quoting *Republic of Argentina v. Weltover, Inc.* 504 U.S. 607, 614, 112 S. Ct. 2160, 2166, 119 L. Ed. 2d 394 (1992)). Judge Lifland found a foreign state agency's investment in Fairfield Sentry to be a commercial activity as it "did not involve the use of powers peculiar to sovereigns." *BLI*, 480 B.R. at 512.

The Complaint has alleged that PIFSS entered into subscription agreements with Fairfield Sentry and received subsequent transfers of BLMIS funds through Fairfield Sentry totaling approximately $30,000,000. Compl. ¶¶ 6, 7, 34–42, ECF No. 1. PIFSS was acting as a private player within a market through these actions, not as a regulator of a market. PIFSS does not dispute that the actions are commercial activity as it is used in the FSIA. Rather, PIFSS assumes this second prong arguendo and argues that the complaint should be dismissed for failure to

plead any direct effect in the United States.  The issue then is whether the Trustee has satisfied

the third prong; that is, whether the Defendant's actions had a direct effect in the United States.

Under the third clause of the commercial activities exception, "an effect is direct if it

follows as an immediate consequence of the defendant's ... activity." *Republic of Argentina,* 504

U.S. at 618 (internal quotation marks omitted); *see also MMA Consultants 1, Inc.*, 719 F. App'x

at 54.  In construing whether the effect constitutes a "direct effect in the United States," the

Court will be mindful of "providing access to the courts to those aggrieved by the commercial

acts of a foreign sovereign." *Texas Trading & Mill. Corp. v. Fed. Republic of Nigeria*, 647 F.2d

300, 312 (2d Cir. 1981) (internal quotation marks omitted) *overruled on other grounds by*

*Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393 (2d Cir.

2009); *see also BLI*, 480 B.R. at 513 (finding that courts in the Second Circuit must liberally

construe what constitutes a "direct effect in the United States").  The effect must be more than

merely "fortuitous or incidental, playing only a tangential role in the lawsuit." *BLI*, 480 B.R. at

513 (citing *Antares Aircraft, L.P. v. Federal Republic of Nigeria*, 999 F.2d 33, 36 (2d Cir. 1993)

In *BLI*, Judge Lifland denied a similar motion to dismissed based on a FSIA claim of

immunity.  Judge Lifland found that the *BLI* defendant's actions caused a direct effect in the

United States by "causing a two-way flow of funds" in the "form of subscription and redemption

payments" into BLMIS to invest in the United States and from BLMIS in "the form of profits

from those investments." *BLI*, 480 B.R. at 513.

The Defendant argues that BLI was overruled by the Supreme Court in *OBB*

*Personenverkehr AG v. Sachs*, 577 U.S. 27, 136 S.Ct. 390, 193 L. Ed. 2d 269 (2015).  This

argument is unavailing.  The Supreme Court, in *OBB Personenverkehr*, examined the first clause

of the commercial activities exception. *Id.* at 31 n.1 ("As Sachs relies only on the first clause to

establish jurisdiction over her suit, we limit our inquiry to that clause."). The Court determined that the conduct constituting the gravamen of the personal injury suit against the Austrian state-owned railway carrier occurred abroad, where the plaintiff fell onto railroad tracks while attempting to board a train. *Id.* at 35. The Court found that the suit was not based upon the sale of a Eurail ticket in the United States. *Id.* at 38. The Court did not address or overrule Judge Lifland's holding in *BLI*.

Here, the Trustee's Complaint alleges the Defendant's subscription into and redemption out of Fairfield Sentry. These actions created a two-way flow of funds that had a direct effect in the United States. As immunity under the FSIA does not apply due to the third clause of the commercial activities exception, the Court need not consider whether the Defendant's conduct satisfied the first or second clauses. PIFSS is not entitled to immunity under the FSIA.

**Personal Jurisdiction**

PIFSS objects to the Trustee's assertion of personal jurisdiction. The Trustee argues in the Complaint that the Defendant purposefully availed itself of the laws of the United States and New York by directing funds to be invested with New York-based BLMIS through Fairfield Sentry, investing in a structured product based on Fairfield Sentry's investment returns through the Bank of New York, and maintaining regular contact with Fairfield Greenwich Group account representatives located in New York. Compl. ¶¶ 6–8, ECF No. 1.

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that jurisdiction exists." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)). A trial court has considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2).

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). "'It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Id.* (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (same).

    "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin.*, 722 F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)); *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 565 (Bankr. S.D.N.Y. 2021) (same). In this case, the Trustee has alleged legally sufficient allegations of jurisdiction simply by stating that PIFSS "knowingly directing funds to be invested with New York-based BLMIS." This allegation alone is sufficient to establish a prima facie showing of jurisdiction over the Defendant at the pre-discovery stage of litigation. This was not the only allegation made by the Trustee.

    At the pre-discovery stage, the allegations need not be factually supported. *See Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir. 2013) (an averment of facts is necessary only after discovery). In order to be subjected to personal jurisdiction in the United States, due process requires that a defendant have sufficient minimum contacts with the forum in which defendant is sued "'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *BLI*, 480 B.R. at 516 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The pleadings and affidavits are to be construed "'in the light most favorable to the plaintiffs, resolving all doubts in their favor.'" *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward*

*Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)); *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594

B.R. 167, 187 (Bankr. S.D.N.Y. 2018).

> The Supreme Court has set out three conditions for the exercise of specific jurisdiction over a nonresident defendant. First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State. Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct. Finally, the exercise of jurisdiction must be reasonable under the circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

<u>Purposeful Availment</u>

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the

privilege of doing business in the forum and could foresee being haled into court there." *Charles

Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018). "Although a defendant's

contacts with the forum state may be intertwined with its transactions or interactions with the

plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an

insufficient basis for jurisdiction." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150

(2d Cir. 2019) (cleaned up). "It is insufficient to rely on a defendant's random, fortuitous, or

attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific

jurisdiction." *Id.*

A party "purposefully avail[s] itself of the benefits and protections of New York laws by

knowing, intending and contemplating that the substantial majority of funds invested in Fairfield

Sentry would be transferred to BLMIS in New York to be invested in the New York securities

market." *BLI*, 480 B.R. at 517.

PIFSS argues that the Trustee has failed to allege sufficient minimum contacts with the

United States. The Complaint suggests otherwise. In the Complaint, the Trustee alleges that

PIFSS "knowingly directed funds to be invested with New York-based BLMIS through Fairfield

Sentry" and "knowingly received subsequent transfers from BLMIS by withdrawing money from Fairfield Sentry."  Compl. ¶ 6, ECF No. 1.  The Trustee has also alleged that Fairfield Sentry invested almost all of its assets in BLMIS.  *See* Fairfield Compl. ¶ 89, *Picard v. Fairfield Inv Fund Ltd.*, Adv. Pro. No. 09-1239, ECF No. 286 (the "Fairfield Amended Complaint") ("Under Fairfield Sentry's offering memorandum, the fund's investment manager was required to invest no less than 95% of the fund's assets through BLMIS.") (adopted by reference, at paragraph 35, of this Complaint); *see, e.g.* Song Decl., Fairfield Sentry Information Memo., ECF No. 123, Ex. 1 ("The Company will seek to achieve capital appreciation of its assets by allocating its assets to an account at Bernard L. Madoff Investment Securities ('BLM'), a registered broker-dealer in New York, New York, which employs an options trading strategy described as 'split strike conversion.'").

The Trustee has submitted additional evidence in response to the motion to dismiss. Attached as exhibits to the Song Declaration, the Trustee has provided evidence that PIFSS bank accounts in New York to send subscription payments to Fairfield Sentry totaling $5,000,000. Song Decl., Ex. 3.  PIFSS used correspondent accounts in New York to send subscription payments totaling $15,000,000 and receive subsequent transfers totaling $20,000,000.  Song Decl., Ex. 2.  PIFSS's offshore subsidiary, Wafra, met with representatives of the Fairfield Greenwich Group at Fairfield's offices in New York to discuss investment with Fairfield Sentry. Song Decl., Ex. 10.  These allegations are sufficient to constitute a prima facie showing of jurisdiction.  *Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir. 2013).

The Defendant has moved to strike the Song Declaration and all attached exhibits. As will be discussed below, the Court will deny the Defendant's motion to strike.  Nevertheless,

even without the Song Declaration and attached exhibits, the Trustee has sufficiently plead allegations supporting jurisdiction over the Defendant.

<u>Arise Out of or Relate to the Defendant's Forum Conduct</u>

As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017, 1026, 209 L. Ed. 2d 225 (2021) (emphasis in original). "[P]roof that a plaintiff's claim came about because of the defendant's in-state conduct" is not required. *Id.* at 1027. Instead, the court need only find "an affiliation between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial, however, it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts within the state are not the proximate cause of the plaintiff's injury.") (internal quotations omitted).

The Trustee is asserting subsequent transfer claims against Defendant for monies it received from the Fairfield Sentry. Compl. ¶¶ 44–47, ECF No. 1. These allegations are directly related to its investment activities with Fairfield and BLMIS. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) (finding that the redemption and other payments the defendants received as direct investors in a BLMIS feeder fund arose from the New York contacts such as sending subscription agreements to New York, wiring funds in U.S. dollars to New York, sending redemption requests to New York, and receiving redemption payments from a Bank of New York account in New York, and were the proximate cause of the

injuries that the Trustee sought to redress). The suit is affiliated with the alleged in-state

conduct. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

<u>Reasonableness</u>

Having found sufficient minimum contacts, the Court must determine if exercising

personal jurisdiction over the Defendant is reasonable and "comport[s] with fair play and

substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (internal

quotations omitted). Factors the Court may consider include the burden on the defendant, the

forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient

and effective relief, the interstate judicial system's interest in obtaining the most efficient

resolution of controversies, and the shared interest of the several States in furthering fundamental

substantive social policies.

The exercise of jurisdiction is reasonable. The Defendant is not burdened by this

litigation. Defendant has actively participated in this Court's litigation for over ten years. It is

represented by highly competent U.S. counsel, filed a claim in this SIPA litigation, and

submitted to the jurisdiction of New York courts' when it signed its subscription agreements

with Fairfield Sentry. The forum and the Trustee both have a strong interest in litigating BLMIS

adversary proceedings in this Court. *Picard v. Maxam Absolute Return Fund, L.P. (In re

BLMIS)*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012); *Picard

v. Chais (In re BLMIS)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010); *Picard v. Cohmad Sec.

Corp. (In re BLMIS)*, 418 B.R. 75, 82 (Bankr. S.D.N.Y. 2009); *Picard v. Fairfield Greenwich

Grp., (In re Fairfield Sentry Ltd.*), 627 B.R. 546, 568 (Bankr. S.D.N.Y. 2021); *see also In re

Picard*, 917 F.3d 85, 103 (2d Cir. 2019) ("The United States has a compelling interest in

allowing domestic estates to recover fraudulently transferred property.").

By alleging that Defendant intentionally invested in BLMIS, the Trustee has met his

burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS.  The

Trustee has made a prima facie showing of personal jurisdiction with respect to the subsequent

transfer at issue in this Case.

**12(b)(6) Standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (cleaned up).  The claim is facially plausible when a plaintiff pleads facts that

allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct

alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does

not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise

a reasonable expectation that discovery will reveal evidence of illegal agreement.").  In deciding

a motion to dismiss, the Court should assume the factual allegations are true and determine

whether, when read together, they plausibly give rise to an entitlement of relief.  *Iqbal*, 556 U.S.

at 679.  "And, of course, a well-pl[ed] complaint may proceed even if it strikes a savvy judge

that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."

*Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as

other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in

particular, documents incorporated into the complaint by reference, and matters of which a court

may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322

(2007). A complaint is "deemed to include any written instrument attached to it as an exhibit[,] . . . documents incorporated in it by reference[,]" and other documents "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted). A document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous information and relied on it in framing the complaint. *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

The Trustee is seeking to recover the subsequent transfer of approximately $20 million made in 2004 to PIFSS by Fairfield Sentry ("Count One").

<u>Count One: Recovery of Subsequent Transfers</u>

Section 550(a) of the Bankruptcy Code states:

Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--
(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
(2) any immediate or mediate transferee of such initial transferee.

"To plead a subsequent transfer claim, the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent transferee of that initial transferee, that is, that the funds at issue originated with the debtor." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); *see also SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013) (consolidated proceedings on 11 U.S.C. § 546(e)). "Federal Civil Rule 9(b) governs the portion of a claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a claim to recover the subsequent transfer. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018) (citing *Sharp Int'l Corp. v. State St. Bank & Trust Co., (In re*

*Sharp Int'l Corp.*), 403 F.3d 43, 56 (2d Cir. 2005) and *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 36 (Bankr. S.D.N.Y. 2016), *rev'd on other grounds*, *Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021)).

To properly plead a subsequent transfer claim, the Trustee need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The plaintiff must allege the necessary vital statistics—the who, when, and how much–of the purported transfers to establish an entity as a subsequent transferee of the funds. However, the plaintiff's burden at the pleading stage does not require dollar-for-dollar accounting of the exact funds at issue." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018). While the Trustee must allege that the initial transfer from BLMIS to Fairfield Sentry is avoidable, he is not required to avoid the transfer received by the initial transferee before asserting an action against subsequent transferees. The Trustee is free to pursue any of the immediate or mediate transferees, and nothing in the statute requires a different result. *IBT Int'l, Inc. v. Northern* (*In re Int'l Admin. Servs., Inc.*), 408 F.3d 689, 706-07 (11th Cir. 2005).

The Trustee pleaded the avoidability of the initial transfer (from BLMIS to Fairfield Sentry) by adopting by reference the entirety of the Fairfield Amended Complaint filed against Fairfield Sentry in adversary proceeding 09-1239. Compl. ¶ 35, ECF No. 1 ("The Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein."). Whether the Fairfield Amended Complaint properly pleads the avoidability of the initial transfer, is governed by Rule 9(b). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Where the actual fraudulent transfer claim is asserted by a bankruptcy

trustee, applicable Second Circuit precedent instructs courts to adopt a more liberal view since a

trustee is an outsider to the transaction who must plead fraud from second-hand knowledge.

Moreover, in a case such as this one, where the Trustee's lack of personal knowledge is

compounded with complicated issues and transactions that extend over lengthy periods of time,

the trustee's handicap increases, and even greater latitude should be afforded." *Picard v. Cohmad

Secs. Corp., (In re BLMIS*), 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up).

<u>Adoption by Reference of the Fairfield Amended Complaint</u>

Adoption by reference is governed by Rule 10 of the Federal Rules of Civil Procedure.

Fed. R. Civ. P. 10(c).  Rule 10(c) states: "A statement in a pleading may be adopted by reference

elsewhere in the same pleading or in any other pleading or motion."  The district court has

already found that adoption by reference of the entire Fairfield Amended Complaint is proper.

*See SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36

(S.D.N.Y. 2013) ("The Trustee's complaint against Standard Chartered Financial Services

incorporates by reference the complaints against Kingate and Fairfield, including the allegations

concerning the avoidability of the initial transfers, and further alleges the avoidability of these

transfers outright. Thus, the avoidability of the transfers from Madoff Securities to Kingate and

Fairfield is sufficiently pleaded for purposes of section 550(a).") (cleaned up).

The Court will follow the district court's instruction.  As was explained in *In re Geiger,*

pleadings filed in the "same action" may be properly adopted by reference in other pleadings in

that action.  446 B.R. 670, 679 (Bankr. E.D. Pa. 2010).  The Fairfield Amended Complaint was

filed in the "same action" as this adversary proceeding for purposes of Rule 10(c).  *Id.*  Cases

within this SIPA proceeding are filed in the same "proceeding"—the SIPA proceeding.  *In re

Terrestar Corp.*, No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017)

("Adversary proceedings filed in the same bankruptcy case do not constitute different cases.");

*see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 610 B.R. 197, 237 (Bankr.

S.D.N.Y. 2019) ("The prior decisions within this SIPA proceeding constitute law of the case . . .

. "); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 603 B.R. 682, 700 (Bankr.

S.D.N.Y. 2019), (citing *In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018) (law of

the case doctrine applies across adversary proceedings within the same main case), *aff'd*, 943

F.3d 125 (2d Cir. 2019)); *Perez v. Terrastar Corp.* (*In re Terrestar Corp.*), No. 16 Civ. 1421

(ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the

same bankruptcy case do not constitute different cases."), *appeal dismissed*, No. 17-1117 (2d

Cir. June 29, 2017); *Bourdeau Bros., Inc. v. Montagne* (*In re Montagne*), No. 08-1024 (CAB),

2010 WL 271347, at *6 (Bankr. D. Vt. Jan. 22, 2010) ("[D]ifferent adversary proceedings in the

same main case do not constitute different 'cases.'").

 Some courts have worried that wholesale incorporation of a pleading can lead to

"confusing and inconvenient" results. *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47

(E.D. Va. 2009) (footnote omitted), *aff'd*, 382 F. App'x 256 (4th Cir. 2010). That is not a

concern in these proceedings. PIFSS, like many subsequent transfer defendants in this SIPA

proceeding, is uniquely aware of what has been filed in the other adversary proceeding in this

SIPA liquidation. It routinely follows what is happening on a proceeding-wide basis. *See* Stip.,

ECF No. 97 (dismissing adversary proceeding based on consolidated extraterritoriality ruling).

 Allowing the Trustee to incorporate the Fairfield Amended Complaint by reference, does

not prejudice the Defendant. On the other hand, dismissing this Complaint and permitting the

Trustee to amend his Complaint to include all of the allegations that are already contained in the

Fairfield Amended Complaint, would prejudice all parties by delaying the already overly

prolonged proceedings.  *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM),

Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("Rule 15

places no time bar on making motions to amend pleadings and permits the amending of

pleadings "when justice so requires.").

Through the adoption of the Fairfield Amended Complaint, the Trustee has adequately

pleaded, with particularity, the avoidability of the initial transfer due to Fairfield Sentry's

knowledge of BLMIS' fraud. (Fairfield Compl. ¶¶ 314–18, 09-01239, ECF No. 286); *see also*

*SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36

(S.D.N.Y. 2013) ("[T]he Court directs that the following adversary proceedings be returned to

the Bankruptcy Court for further proceedings consistent with this Opinion and Order . . . .").

BLMIS Customer Property

The Trustee has pleaded that "[b]ased on the Trustee's investigation to date,

approximately $30,00,000 of the money transferred from BLMIS to Fairfield Sentry was

subsequently transferred by Fairfield Sentry to Defendant PIFSS."  Compl. ¶ 41, ECF No. 1.

The parties later stipulated to dismissing recovery of one transfer in the amount of $10,000,000.

Stip., ECF 111.

The exhibits attached to the Complaint provide PIFSS with the "who, when, and how

much" of each transfer.  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr.

S.D.N.Y. 2018); Compl., ECF No. 1, Ex. C (indicating the transfer in question occurred on

January 21, 2004); *cf. Picard v. Shapiro* (*In re BLMIS*), 542 B.R. 100, 119 (Bankr. S.D.N.Y.

2015) (dismissing for failure to plausibly imply that the initial transferee made any subsequent

transfers.).  The Fairfield Amended Complaint, which is incorporated by reference into this,

alleges that the Fairfield Fund was required to invest 95% of its assets in BLMIS.  Fairfield

Compl. ¶ 89; *see also* Fairfield Compl. ¶ 91 ("From the beginning, to comport with Madoff's

requirement for BLMIS feeder funds, Fairfield Sentry ceded control of not only its investment

decisions, but also the custody of its assets, to BLMIS.").  The Trustee need not prove the path

that each transfer took from BLMIS to Fairfield Sentry and subsequently to each redeeming

shareholder.  The Complaint plausibly alleges that Fairfield Sentry did not have any assets that

were not customer property.

Taking all allegations as true and reading them in a light most favorable to the Trustee,

the Complaint plausibly pleads that PIFSS received customer property because Fairfield Sentry

did not have other property to give.  The calculation of Fairfield Sentry's customer property and

what funds it used to make redemption payments are issues of fact better resolved at a later stage

of litigation.

**Section 546(e)**

The Defendant has raised the "safe harbor" defense, found in 11 USC § 546(e), to the

Trustee's allegations.  Section 546(e) is referred to as the safe harbor because it protects a

transfer that is a "settlement payment ... made by or to (or for the benefit of) a ... financial

institution [or] financial participant," or that is "made by or to (or for the benefit of) a ... financial

institution [or] financial participant ... in connection with a securities contract."  11 U.S.C. §

546(e).  "By its terms, the safe harbor is a defense to the avoidance of the **initial** transfer.  *Picard

v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis

added).  However, where the initial transferee fails to raise a § 546(e) defense against the

Trustee's avoidance of certain transfers, as is the case here, the subsequent transferee is entitled

to raise a § 546(e) defense against recovery of those funds.  *Picard v. Fairfield Inv. Fund* (*In re*

*BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr.

S.D.N.Y. Aug. 6, 2021).

In light of the safe harbor granted under 11 U.S.C. § 546(e), the Trustee may only avoid

and recover intentional fraudulent transfers under § 548(a)(1)(A) made within two years of the

filing date, unless the transferee had actual knowledge of BLMIS's Ponzi scheme, or more

generally, "actual knowledge that there were no actual securities transactions being conducted."

*SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR),

2013 WL 1609154, at *4 (S.D.N.Y. Apr. 15, 2013). "The safe harbor was intended, among other

things, to promote the reasonable expectations of legitimate investors. If an investor knew that

BLMIS was not actually trading securities, he had no reasonable expectation that he was signing

a contract with BLMIS for the purpose of trading securities for his account. In that event, the

Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the

full extent permitted under state and federal law." *Picard v. Legacy Capital Ltd. (In re BLMIS)*,

548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on*

*other grounds, Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021)). "In sum, if

the Trustee sufficiently alleges that the [initial] transferee from whom he seeks to recover a

fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim the protections of

Section 546(e)'s safe harbor." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-

01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021).

This Court has already determined that the Fairfield Amended Complaint contains

sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on

a Rule 12(b)(6) motion. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM),

Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he

Trustee has alleged that the agents and principals of the Fairfield Funds had actual knowledge of

Madoff's fraud"). In that adversary proceeding, the Court held that "[t]he Trustee has pled

[actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's

fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the

Fairfield Funds through 'FGG,' an alleged 'de facto' partnership." *Id.* at *4; *see also* Fairfield

Compl. ¶ 320 ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); Fairfield Compl.

¶ 321 ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the fraud at

BLMIS"); Fairfield Compl. ¶ 322 ("FIFL had actual knowledge of the fraud at BLMIS");

Fairfield Compl. ¶ 323 ("Stable Fund had actual knowledge of the fraud at BLMIS"); Fairfield

Compl. ¶ 324 ("FG Limited had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶

325 ("FG Bermuda had actual knowledge of the fraud at BLMIS"); ¶ 326 ("FG Advisors had

actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 327 ("Fairfield International

Managers had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 328 ("FG Capital

had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 329 ("Share Management had

actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 9 ("It is inescapable that FGG

partners knew BLMIS was not trading securities. They knew BLMIS's returns could not be the

result of the split strike conversion strategy (the "SSC Strategy"). They knew BLMIS's equities

and options trading volumes were impossible. They knew that BLMIS reported impossible, out-

of-range trades, which almost always were in Madoff's favor. They knew Madoff's auditor was

not certified and lacked the ability to audit BLMIS. They knew BLMIS did not use an

independent broker or custodian. They knew Madoff refused to identify any of BLMIS's options

counterparties. They knew their clients and potential clients raised numerous due diligence

questions they would not and could not satisfactorily answer. They knew Madoff would refuse to

provide them with honest answers to due diligence questions because it would confirm the

details of his fraud.  They knew Madoff lied about whether he traded options over the counter or

through the exchange. They knew they lied to clients about BLMIS's practices in order to keep

the money flowing and their fees growing. And they knowingly misled the SEC at Madoff's

direction.").

This Court determined that the Fairfield Amended Complaint is replete with allegations

demonstrating that Fairfield Sentry had actual knowledge that BLMIS was not trading securities.

*See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv. No. 09-01239

(CGM), 2021 WL 3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021).  The district court

determined that "those defendants who claim the protections of Section 546(e) through a Madoff

Securities account agreement but who actually knew that Madoff Securities was a Ponzi scheme

are not entitled to the protections of the Section 546(e) safe harbor, and their motions to dismiss

the Trustee's claims on this ground must be denied.  *SIPC v. BLMIS* (*In re Consolidated

Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y.

Apr. 15, 2013).  And "to the extent that a defendant claims protection under Section 546(e) under

a separate securities contract" this Court was directed to "adjudicate those claims in the first

instance consistent with [the district court's] opinion."  *See* Order, 12-MC-115, ECF No. 119,

Ex. A at 24.

This Court is powerless to reconsider this issue, agrees with the district court's reasoning,

and finds its holding consistent with *dicta* set forth by the Court of Appeals for the Second

Circuit.  *See Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*),

773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that

BLMIS was actually engaged in the business of effecting securities transactions, have every right

to avail themselves of all the protections afforded to the clients of stockbrokers, including the protection offered by § 546(e).").  The Trustee's allegations in the Fairfield Amended Complaint are sufficient to survive a Rule 12(b)(6) motion on this issue.

<u>The Safe Harbor Cannot be Used to Defeat a Subsequent Transfer</u>

The Defendant argues that the safe harbor prevents the Trustee from avoiding the subsequent transfer between Fairfield Sentry and PIFSS on account of the securities contract between Fairfield and the Defendant.

The safe harbor is not applicable to subsequent transfers.  "By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer."  *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e) (failing to include § 550 in its protections).  Since there must be an initial transfer in order for the Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned.  The safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not "avoiding" a subsequent transfer, "he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550."  *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018).

The Defendant's reliance on *SIPC v. BLMIS (In re Consolidated Proceedings on 11 U.S.C. § 546(e))*, No. 12 MC 115(JSR), 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*") is unavailing.  In *Cohmad*, Judge Rakoff clearly laid out the "one caveat" to the general rule that the Trustee must show "the initial transfer of . . . by the debtor is subject to avoidance under one of the Bankruptcy Code's avoidance provisions." *Id.*  That is, a subsequent

transferee with actual knowledge of the fraud "cannot prevail on a motion to dismiss on the basis of Section 546(e)'s safe harbor." *Id.* This caveat only pertains to a subsequent transferee with actual knowledge. It is the "one caveat." *Id. Cohmad* did not "leave open" any additional caveats to subsequent transferees who lack actual knowledge.

The Defendant argues that this Court applied the safe harbor to redemption payments made by Fairfield Sentry in *In re Fairfield Sentry Ltd.*, 2020 WL 7345988, at *5 (Dec. 14, 2020) ("*Fairfield III*"). Reliance on this case is misplaced. While many facts overlap between this SIPA liquidation of BLMIS and the foreign liquidation of BLMIS's largest feeder fund, Fairfield Sentry, the legal holdings in these liquidations are not interchangeable. In this case, the Court is analyzing subsequent transfers; in *Fairfield III* the Court was analyzing initial transfers. The safe harbor is not available to be raised as defense to subsequent transfer claims.

In *Fairfield III*, this Court analyzed whether the safe harbor applied to avoidance claims under BVI law[2] to recover "unfair preferences" and "undervalue transactions" and constructive trust claims against a defendant who allegedly "knew or willfully blinded itself to the fact that the [Fairfield Sentry's] BLMIS investments were worthless or virtually worthless." *In re Fairfield Sentry Ltd.*, No. 10-13164 (SMB), 2020 WL 7345988, at *1 (Bankr. S.D.N.Y. Dec. 14, 2020), *reconsideration denied*, No. 10-13164 (SMB), 2021 WL 771677 (Bankr. S.D.N.Y. Feb. 23, 2021). The Court was not considering the safe harbor's effect on subsequent transfer claims brought under § 550 of the Bankruptcy Code. In the Fairfield Sentry liquidation, Defendant would be an initial transferee as redemption payments paid by Fairfield Sentry were paid directly to the Defendant. *Fairfield III* is not applicable here.

---

[2] Fairfield Sentry liquidated under the laws of the British Virgin Islands ("BVI") and this Court's chapter 15 case is ancillary to the primary proceeding brought in the BVI.

Defendant is not permitted to raise the safe harbor defense on its own behalf as a subsequent transferee.

**The Motion to Strike**

The Defendant seeks to strike the declaration by Brian Song and the attached exhibits for lacking a basis in personal knowledge, lacking foundation, hearsay, failure to authenticate, and lack of relevance.  The Court of Appeals for the Second Circuit has "long made clear" that a court has "considerable procedural leeway" in deciding a pretrial motion to dismiss for lack of personal jurisdiction.  *Dorchester Fin. Sec, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013).  The Court "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion."  *Id.* (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)).  "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith."  *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990).

It is only after discovery that the prima facie showings should be factually supported with admissible evidence.  *Id.*; *Astor Chocolate Corp. v. Elite Gold Ltd.*, 510 F. Supp. 3d 108, 121 (S.D.N.Y. 2020) "[A] court, in resolving a Rule 12(b)(2) motion ***made after jurisdictional discovery***, may consider only admissible evidence.") (emphasis added).  Even at that later stage, the Court may consider evidence that is not presented in admissible form.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (rejecting the argument that "the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment").

The Defendant has not shown that the exhibits are ultimately inadmissible. Arguments as to the lack of foundation and hearsay nature of the exhibits are premature.

At this stage of the proceedings, counsel may submit a sworn statement including facts and exhibits. *Knowyourmeme.com Network v. Nizri*, No. 20-CV-9869 (GBD) (JLC), 2021 WL 3855490, at *9 (S.D.N.Y. Aug. 30, 2021); *see also Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009) ([W]hen an attorney makes statements under penalty of perjury in an affidavit or an affirmation, the statements do constitute part of the evidentiary record and must be considered."). "While bone fide evidentiary objections can and should be considered at the summary judgment stage . . . the fact that documents were attached to an attorney declaration without a supplemental affidavit by a document custodian or another with knowledge does not make them inadmissible for that reason." *Ball v. Soundview Composite Ltd.* (*In re Soundview Elite Ltd.*), 543 B.R. 78, 100 (Bankr. S.D.N.Y. 2016).

The Defendant has not challenged the ultimate credibility of the Song Declaration and attached exhibits. The Court will not strike any part of the Song Declaration or attached exhibits for lack of authentication.

While personal jurisdiction can be established from the Complaint alone, the Song Declaration and attached exhibits are relevant to the Trustee's claims. Evidence is relevant where "it has any tendency to make a fact more or less probable than it would be without the evidence" and where "the fact is of consequence in determining the action." Fed. R. Evid. 401. "When sought to expunge irrelevant factual matters, a strike motion will not be granted unless those matters have no clear bearing on the issues in dispute." *Yankees Entm't & Sports Network, LLC v. Cablevision Sys. Corp.*, 224 F. Supp. 2d 657, 676 (S.D.N.Y. 2002) (citing *Reiter's Beer Distributors, Inc. v. Schmidt Brewing Co.*, 657 F. Supp. 136, 143 (E.D.N.Y. 1987) ("Motions to

strike are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the issue in dispute.")))

The exhibits attached to the Song Declaration may bear on the issues in dispute. The exhibits contain information that investors in Fairfield Sentry were given (Song Decl., Ex. 1); records of PIFSS's subscriptions and redemptions with Fairfield Sentry (Ex. 2–6); and emails showing meetings between the Fairfield Greenwich Group and PIFSS or its subsidiary, Wafra. (Ex. 7–13). These matters are closely related to establishing personal jurisdiction over the Defendant.

The Trustee has made sufficient allegations concerning personal jurisdiction in the Complaint. Compl., ECF No. 1. While these allegations are sufficient by themselves to establish jurisdiction, the Trustee has provided further allegations in the opposition to the motion to dismiss with the Song Declaration and attached exhibits. Opp'n, ECF No. 122; Song Decl., ECF No. 123. The Court will not strike the Song Declaration or attached exhibits.

## Conclusion

For the foregoing reasons, PIFSS's motion to dismiss and motion to strike are denied. The Trustee shall submit a proposed order within fourteen days of the issuance of this decision, directly to chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



**Dated: August 17, 2022**
**Poughkeepsie, New York**

/s/ Cecelia G. Morris
_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**