John F. Zulack (jzulack@abv.com)
Lauren J. Pincus (lpincus@abv.com)
David A. Shaiman (dshaiman@abv.com)
ALLEGAERT BERGER & VOGEL LLP
111 Broadway, 20th Floor
New York, New York 10006
Telephone: (212) 571-0550
Facsimile: (212) 571-0550

*Attorneys for Defendant Banque Cantonale Vaudoise*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>          Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>          Defendant. | Adv. Pro. No. 08-01789 (CGM)<br>(Bankr. S.D.N.Y.)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>          Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>          Plaintiff,<br><br>v.<br><br>BANQUE CANTONALE VAUDOISE,<br><br>          Defendant. | Adv. Pro. No. 12-01694 (CGM)<br>(Bankr. S.D.N.Y.) |

**DEFENDANT BANQUE CANTONALE VAUDOISE'S
MOTION FOR LEAVE TO APPEAL PURSUANT TO 28 U.S.C. § 158(a)(3)**

## CORPORATE DISCLOSURE STATEMENT

In accordance with Fed. R. Bankr. P. 8012, the undersigned counsel of record for Banque Cantonale Vaudoise, a non-governmental corporate party, certifies that Canton de Vaud directly or indirectly owns 10% or more of its equity interests.

Dated: August 17, 2022

/s/ John F. Zulack

John F. Zulack

# TABLE OF CONTENTS

*Page*

CORPORATE DISCLOSURE STATEMENT ............................................................. i

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................... 1

STATEMENT OF FACTS ..................................................................................... 4

QUESTION PRESENTED ..................................................................................... 8

RELIEF SOUGHT ............................................................................................... 8

ARGUMENT ..................................................................................................... 9

I.  THE BANKRUPTCY COURT'S LEGAL ERROR PRESENTS
    EXCEPTIONAL CIRCUMSTANCES WARRANTING INTERLOCUTORY
    REVIEW ..................................................................................................... 9

    A.  The Order Involves a Controlling Question of Law. .......................................... 10

    B.  Substantial Ground for Difference of Opinion Exists Because
        the Bankruptcy Court Misread This Court's *Cohmad* Decision. ........................ 11

    C.  An Immediate Appeal Will Advance the Ultimate Termination of This
        Litigation. ............................................................................................... 18

    D.  Exceptional Circumstances Also Exist Because Correction of the
        Bankruptcy Court's Error Would Result in the Termination or Narrowing
        of 58 Subsequent Transferee Proceedings. ..................................................... 18

CONCLUSION .................................................................................................... 21

CERTIFICATE OF COMPLIANCE ........................................................................... 22

Exhibit A:    The Bankruptcy Court's July 21, 2022 Order Denying Banque
              Cantonale Vaudoise's Motion to Dismiss the Complaint Under
              Bankruptcy Rule 7012(b) and Federal Rule of Civil Procedure
              12(b)(6)

Exhibit B:    The Bankruptcy Court's July 14, 2022 Memorandum Decision
              Denying Defendant's Motion to Dismiss

Exhibit C:    Adversary Proceedings Subject To Section 546(e) Defense

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*In re Ditech Holding Corp.*,
2021 WL 4267691 (S.D.N.Y. Sept. 20, 2021)..............................................................................9

*Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.)*,
2006 WL 2548592 (S.D.N.Y. Sept. 5, 2006)..................................................................... *passim*

*McMillan v. City of New York*,
2011 WL 5237285 (S.D.N.Y. Aug. 23, 2011)............................................................................11

*MF Global Holdings Ltd. v. Allied World Assurance Co. (In re MF Global
Holdings Ltd.)*,
296 F. Supp. 3d 662 (S.D.N.Y. 2017)........................................................................................18

*Picard v. Banque Cantonale Vaudoise (In re Madoff)*,
2022 WL 2761044 (Bankr. S.D.N.Y. July 14, 2022) .........................................................6, 7, 15

*Picard v. Banque Lombard Odier & Cie SA (In re Madoff)*,
2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022).................................................................7

*Picard v. Banque Syz & Co., SA (In re Madoff)*,
2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022).................................................................7

*Picard v. Barclays Bank (Suisse) S.A. (In re Madoff)*,
2022 WL 2799924 (Bankr. S.D.N.Y. July 15, 2022) ..............................................................7, 8

*Picard v. Bordier & Cie (In re Madoff)*,
2022 WL 2390556 (Bankr. S.D.N.Y. June 30, 2022).................................................................7

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
12 F.4th 171 (2d Cir. 2021) ........................................................................................................4

*Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*,
773 F.3d 411 (2d Cir. 2014)................................................................................................16, 19

*Picard v. Katz*,
462 B.R. 447 (S.D.N.Y. 2011)...................................................................................................19

*Picard v. Lloyds TSB Bank PLC (In re Madoff)*,
2022 WL 2390551 (Bankr. S.D.N.Y. June 30, 2022).................................................................7

*In re Picard*,
917 F.3d 85 (2d Cir. 2019)........................................................................................4

*Shinn v. Ramirez*,
142 S. Ct. 1718 (2022)...........................................................................................11

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*,
476 B.R. 715 (S.D.N.Y. 2012) ..............................................................................19

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*,
2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013)..................................................... *passim*

**Statutes**

11 U.S.C. § 544(b) ...................................................................................................2

11 U.S.C. § 546(e) ............................................................................................. *passim*

11 U.S.C. § 548(a) ..........................................................................................2, 5, 19

11 U.S.C. § 550 ..............................................................................................2, 4, 15

28 U.S.C. § 158(a)(3).........................................................................................1, 9

28 U.S.C. § 1292(b) ......................................................................................9, 11, 18

**Rules**

Fed. R. Bankr. P. 8002(d) .......................................................................................1

Fed. R. Bankr. P. 8004 ............................................................................................1

Defendant Banque Cantonale Vaudoise ("BCV") hereby moves under

28 U.S.C. § 158(a)(3) and Fed. R. Bankr. P. 8004 for leave to appeal from an

order, ECF 108 (the "Order"; Ex. A hereto) of the United States Bankruptcy Court

for the Southern District of New York (the "Bankruptcy Court"), entered on July

21, 2022, denying BCV's motion to dismiss the Complaint of plaintiff Irving H.

Picard, Trustee (the "Trustee") for the Liquidation of Bernard L. Madoff

Investment Securities LLC ("BLMIS") and the substantively consolidated estate of

Bernard L. Madoff ("Madoff").[1]

## **INTRODUCTION**

This appeal presents a straightforward controlling question of law,

common to over 50 adversary proceedings now pending in the Bankruptcy Court,

and whose resolution in BCV's favor would result in the termination of this

adversary proceeding:  Did the Bankruptcy Court incorrectly interpret and apply

this Court's prior decision in this SIPA proceeding, *SIPC v. Bernard L. Madoff Inv.*

*Sec. LLC*, 2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*")?

---

[1] By Stipulation and Order entered July 22, 2022 [ECF 110] under Fed. R. Bankr.
P. 8002(d), the Bankruptcy Court extended BCV's time to appeal the Order
through August 25, 2022, thus making this appeal and motion timely under
Bankruptcy Rule 8004(a).  Except where otherwise indicated, all references herein
to "ECF ___" are to the docket of the Bankruptcy Court in Adversary Proceeding
No. 12-01694.

The Trustee's Complaint alleges that BCV received subsequent transfers of BLMIS customer property from BLMIS feeder funds to whom BMLIS had made fraudulent transfers in furtherance of a Ponzi scheme. The Trustee alleges that BLMIS never actually traded securities on behalf of its customers and that BLMIS's customers/initial transferees (the feeder funds) knew of the fraud. The Trustee does not allege BCV was anything but an innocent subsequent transferee.

Bankruptcy Code Sections 544(b), 548(a) and 550(a) allow a bankruptcy trustee to avoid a debtor's fraudulent transfer of property and to recover the avoided transfer from the initial transferee and in some cases from a subsequent transferee. However, Bankruptcy Code Section 546(e) expressly restricts the avoidability of a settlement payment or a transfer made in connection with a securities contract by or to a financial institution to transfers avoidable under Section 548(a)(1)(A), which in turn authorizes only the avoidance of transfers made with actual fraudulent intent within two years of bankruptcy.

In *Cohmad*, this Court precluded a defendant transferee from invoking Section 546(e)'s protections if it actually knew that BLMIS was not trading securities. The Court did so because the purpose of the Section 546(e) safe harbor—promoting the finality of legitimate securities market transactions—would

2

not be served where the defendant transferee knew that no securities were being
traded.

But should *Cohmad*'s holding be expanded to ensnare innocent
subsequent transferees who had no knowledge that BLMIS was not trading
securities, just because the initial transferee had knowledge?  The *Cohmad* opinion
strongly implies not—it permitted the trustee to pursue claims otherwise
unquestionably covered by the safe harbor only with respect to a defendant who
allegedly had actual knowledge of the fraud (a subsequent transferee with alleged
very close ties to Madoff).  Yet here the Bankruptcy Court interpreted and applied
*Cohmad* to allow the trustee to pursue otherwise statutorily safe harbored claims
against an innocent subsequent transferee with no knowledge of BLMIS's fraud,
effectively holding that an initial transferee's alleged knowledge infects all
subsequent transferees and voids the protection Congress gave to innocent
securities market participants.  As explained below, the Bankruptcy Court's
decision is inconsistent with the Bankruptcy Code, this Court's ruling in *Cohmad*,
and Second Circuit authority on the interpretation and application of Section
546(e).

This Court should grant leave for an interlocutory appeal of the
Bankruptcy Court's order not only because it is wrong, but also because reversal
would terminate this and at least 16 other adversary proceedings now pending in

3

the Bankruptcy Court and would substantially streamline the course of at least 40

other similar adversary proceedings also pending in the Bankruptcy Court, thereby

greatly promoting judicial economy.  The appeal raises a pure controlling issue of

law—the interpretation of this Court's *Cohmad* decision—that does not require

study of the factual record and about which there is a substantial ground for

difference of opinion and therefore meets the requirements for an interlocutory

appeal.

## **STATEMENT OF FACTS**

The Trustee has brought approximately 80 proceedings to recover

transfers made to foreign defendants by Fairfield Sentry Ltd. ("Sentry") and other

offshore BLMIS feeder funds.  The Trustee alleges that the transfers constituted

subsequent transfers of customer property initially transferred to the feeder funds

by BLMIS.  These proceedings were filed a decade or more ago but had been

dormant pending the Trustee's appeals regarding the extraterritorial reach of 11

U.S.C. § 550(a)(2) and the pleading standards for the good faith for value defense

under 11 U.S.C. § 550(b).

Following the Second Circuit's decisions on those issues in *In re

Picard*, 917 F.3d 85 (2d Cir. 2019) (extraterritoriality), and *Picard v. Citibank,

N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171 (2d Cir. 2021) *cert.

denied,* 142 S. Ct. 1209 (2022) *(*good faith), and reassignment of all BLMIS

4

proceedings in the Bankruptcy Court to the Honorable Cecelia G. Morris, Judge

Morris directed separate briefing schedules in each proceeding, even though many

of the grounds and arguments—particularly in regard to the Section 546(e) safe

harbor—are common to most of the proceedings.  As a result, more than 40

separate motions making substantially identical legal arguments on those common

legal issues have already been filed in the various proceedings, with briefing

scheduled into 2023; numerous additional motions remain to be filed and briefed.

      BCV's case presents the Section 546(e) financial contracts safe harbor

issue clearly.  BCV is a Swiss corporation "organized under public law" located in

Switzerland.  The Trustee seeks to recover a single transfer of $9,769,927 made by

Sentry to BCV in redemption of its shares on May 16, 2007.  The Trustee alleges

that the funds BCV received were customer property that BLMIS had initially

transferred to Sentry more than two years before BLMIS's December 12, 2008

petition date and thus outside the lookback period for claims under 11 U.S.C. §

548(a)(1)(A), the only claims exempt from the Section 546(e) safe harbor.[2]

---

[2] According to the Trustee's allegations in Exhibit B to the Complaint, the first
transfer from BLMIS to Sentry during the two-year lookback period (*i.e.*,
December 12, 2006 to December 12, 2008) occurred on September 6, 2007 – *after*
BCV's alleged May 16, 2007 redemption.  Therefore, any customer property
included in BCV's alleged redemption necessarily originated from initial transfers
from BLMIS outside of the two-year lookback period.

In the proceedings below, the Trustee did not specifically address BCV's argument that all the initial transfers to Sentry were made by a stockbroker (BLMIS) to a financial institution (Sentry, by virtue of a bank acting as its agent or custodian) in connection with a securities contract (the account agreement between BLMIS and Sentry).[3]  The Trustee also did not dispute that the initial transfers also were made in connection with a separate securities contract (Sentry's Articles of Association, which govern requests by its shareholders for redemption of their shares).  Thus, by its terms, Section 546(e) applies to the initial transfers that allegedly gave rise to the redemption the Trustee seeks to recover from BCV as a subsequent transferee, and the Bankruptcy Court did not find otherwise.

The Complaint does not allege that BCV had actual knowledge of BLMIS's fraud; the Trustee did not argue otherwise on the motion; and the Bankruptcy Court did not find otherwise in its decision.  Instead, the Trustee argued, and the Bankruptcy Court agreed, that solely because the Trustee adequately alleged that the initial transferee (Sentry) had actual knowledge of BLMIS's fraud, BCV should be barred from raising the safe harbor defense to the avoidability of the initial transfer on its own behalf.  *See Picard v. Banque*

---

[3] The Trustee merely states that he "does not concede that any agreements or transfers between Sentry and BCV activate the safe harbor under Section 546(e)." *See* Pl.'s Br. Opp. Mot. Dismiss at 13, n.5 [ECF 97].

*Cantonale Vaudoise (In re Madoff)*, 2022 WL 2761044, at \*4-6 (Bankr. S.D.N.Y.

July 14, 2022) (Ex. B hereto); Ex. B. at 9-14.

        In denying BCV's motion, the Bankruptcy Court concluded that it

was required to apply this Court's mandate in *Cohmad* (despite the factual

differences), that it was "powerless to reconsider this issue, [and] agrees with the

district court's reasoning." Ex. B at 12, 2022 WL 2761044, at \*5. But the

Bankruptcy Court's opinion nowhere explains why it concluded that *Cohmad*—

which addressed the situation in which a subsequent transferee *did* have actual

knowledge of BLMIS's fraud—would require that a subsequent transferee that *did*

*not* have such knowledge be denied the ability to invoke a Section 546(e) safe

harbor defense to the avoidability of the underlying initial transfer.

        Both before and since the Bankruptcy Court issued its opinion

denying BCV's motion to dismiss, it has issued a series of opinions denying

motions to dismiss by other subsequent transferee defendants, many in nearly

verbatim language.[4] The Bankruptcy Court will presumably continue issuing

---

[4] *See Picard v. Banque Syz & Co., SA (In re Madoff)*, 2022 WL 2135019, at \*8-10
(Bankr. S.D.N.Y. June 14, 2022); *Picard v. Banque Lombard Odier & Cie SA (In
re Madoff)*, 2022 WL 2387523, at \*8-10 (Bankr. S.D.N.Y. June 30, 2022); *Picard
v. Lloyds TSB Bank PLC (In re Madoff)*, 2022 WL 2390551, at \*4-6 (Bankr.
S.D.N.Y. June 30, 2022); *Picard v. Bordier & Cie (In re Madoff)*, 2022 WL
2390556, at \*4-6 (Bankr. S.D.N.Y. June 30, 2022); *Picard v. Banque Cantonale
Vaudoise (In re Madoff)*, 2022 WL 2761044, at \*4-6 (Bankr. S.D.N.Y. July 14,
2022); *Picard v. Barclays Bank (Suisse) S.A. (In re Madoff)*, 2022 WL 2799924, at

opinions denying other defendants' motions on the same grounds as they are submitted through January 2023 and beyond. As a result, as further detailed below, the issue raised in this motion for leave to appeal broadly impacts scores of defendants targeted in the Trustee's litigation against foreign investors in BLMIS foreign feeder funds.

## QUESTION PRESENTED

Did the Bankruptcy Court err in interpreting this Court's opinion in *Cohmad* to bar a subsequent transferee from asserting a Section 546(e) defense if the initial transferee is alleged to have had actual knowledge of BLMIS's fraud, even though the subsequent transferee is *not* alleged to have had such knowledge?

## RELIEF SOUGHT

BCV requests that this Court grant leave to appeal to permit BCV to seek reversal of the Bankruptcy Court's Order and dismissal of this proceeding.

---

*7 (Bankr. S.D.N.Y. July 15, 2022); *Picard v. First Gulf Bank (In re Madoff)*, Adv. No. 11-2541 (Bankr. S.D.N.Y. July 18, 2022), ECF 100 at 16-21; *Picard v. Parsons Finance Panama S.A.*, No. 11-02542 (CGM), ECF 109, at 17-21 (Bankr. S.D.N.Y. Aug, 3, 2022); *Picard v. Meritz Fire & Marine Insurance Co. LTD.*, No. 11-02539 (CGM), ECF 135, at 16-21 (Bankr. S.D.N.Y. Aug, 10, 2022); *Picard v. Union Securities Investment Trust Co., Ltd.,* No. 12-01211 (CGM), ECF 112, at 16-21 (Bankr. S.D.N.Y. Aug, 10, 2022); *Picard v. Delta National Bank and Trust Co.,* No. 11-02551 (CGM), ECF 105, at 10-12 (Bankr. S.D.N.Y. Aug, 12, 2022).

**ARGUMENT**

I. **THE BANKRUPTCY COURT'S LEGAL ERROR PRESENTS EXCEPTIONAL CIRCUMSTANCES WARRANTING INTERLOCUTORY REVIEW.**

Appeals from non-final bankruptcy court orders may be taken with leave by the district court under 28 U.S.C. § 158(a)(3).  In deciding whether to grant leave to appeal, reviewing courts apply the standards of 28 U.S.C. § 1292(b), which governs the appealability of interlocutory district court orders.  *See In re Ditech Holding Corp.*, 2021 WL 4267691, at *1 (S.D.N.Y. Sept. 20, 2021) (Rakoff, J.); *Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.)*, 2006 WL 2548592, at *3 (S.D.N.Y. Sept. 5, 2006).  For a court to grant leave to pursue an interlocutory appeal under Section 1292(b), the order being appealed must "(1) involve a controlling question of law (2) over which there is substantial ground for difference of opinion," and the movant must show that "(3) an immediate appeal would materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b); *see Enron*, 2006 WL 2548592, at *3.  Leave to appeal is warranted when the movant demonstrates the existence of "exceptional circumstances" to overcome the "general aversion to piecemeal litigation" and to "justify a departure from the

basic policy of postponing appellate review until after the entry of a final judgment." *Enron*, 2006 WL 2548592, at *3.

As shown below, each of the three requirements is met here. And because the impact of the Bankruptcy Court's Section 546(e) holding extends to numerous similar proceedings that would otherwise be dismissed or streamlined, this case presents compelling circumstances for this Court to exercise its discretion to grant interlocutory review of the Bankruptcy Court's Order.

## A.  The Order Involves a Controlling Question of Law.

"In regard to the first prong, the 'question of law' must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Enron*, 2006 WL 2548592, at *4. The question must also be "controlling" in the sense that reversal of the bankruptcy court's order would terminate the proceeding, or at a minimum that determination of the issue on appeal would materially affect the litigation's outcome. *Id*.

The question presented here—about the proper application of *Cohmad* in the scenario where the defendant subsequent transferee did not have actual knowledge of BLMIS's fraud, but the initial transferee did—is a pure question of law, because it turns solely on the interpretation of this Court's prior opinion in *Cohmad* and on Section 546(e). The appeal does not require the Court to study the

10

record or facts of this (or any other) case, but rather only to apply, and perhaps

clarify, the guiding legal principles stated in its *Cohmad* opinion.

The pure question of law presented here is controlling in this

adversary proceeding because reversal would terminate this proceeding.  The

Trustee's Complaint does not allege that BCV had actual knowledge of BLMIS's

fraud, nor did the Trustee do so in his opposition brief, thus conceding the issue.[5]

Instead, the Trustee based his opposition to dismissal under Section 546(e) solely

on his argument that, under *Cohmad*, the initial transferee's alleged actual

knowledge of BLMIS's fraud is dispositive of a subsequent transferee's Section

546(e) defense, regardless of whether the subsequent transferee had such

knowledge.[6]  Thus, reversal of the Bankruptcy Court on *Cohmad*'s application to

an innocent subsequent transferee would, without more, entitle BCV to the

protection of the Section 546(e) safe harbor and require dismissal of the

Complaint.

### B.  Substantial Ground for Difference of Opinion Exists Because the Bankruptcy Court Misread This Court's *Cohmad* Decision.

Under the second prong of the Section 1292(b) standard, "the

---

[5] *See Shinn v. Ramirez*, 142 S. Ct. 1718, 1730 (2022); *McMillan v. City of New York*, 2011 WL 5237285, at \*9 (S.D.N.Y. Aug. 23, 2011) (Rakoff, J.) ("By failing to submit any argument on this point, plaintiff has conceded the issue."), *vacated on other grounds*, 711 F.3d 120 (2d Cir. 2013).

[6] *See* Pl.'s Br. Opp. Mot. Dismiss at 1-2, 13-20 [ECF 97].

'substantial ground for a difference of opinion' must arise out of a genuine doubt

as to whether the Bankruptcy Court applied the correct legal standard." *Enron*,

2006 WL 2548592, at *4.  The requirement that such a substantial ground exists

may be met when "(1) there is conflicting authority on the issue, or (2) the issue is

particularly difficult and of first impression for the Second Circuit." *Id*.  The

district court must "analyze the strength of the arguments in opposition to the

challenged ruling when deciding whether the issue for appeal is truly one on which

there is *substantial* ground for dispute." *Id*.

        Here, there are strong arguments in opposition to the Bankruptcy

Court's ruling that raise a genuine doubt whether it correctly applied the *Cohmad*

exception.  This Court in *Cohmad* did *not* hold that an innocent subsequent

transferee is deprived of the protection of the Section 546(e) safe harbor defense to

avoidance of the initial transfer if the initial transferee had actual knowledge of

BLMIS's fraud; nothing in this Court's stated rationale in *Cohmad* even implies

that result; and in fact, several statements in the *Cohmad* opinion contradict the

Bankruptcy Court's conclusion that a transferee can be deprived of the protection

of the statutory safe harbor without the Trustee proving or even alleging that it had

actual knowledge of BLMIS's fraud.  Far from supporting the Bankruptcy Court's

conclusion that the actual knowledge of the initial transferee strips the safe

harbor's protection from a subsequent transferee who does not have actual

12

knowledge, *Cohmad* stands for the proposition that a transferee's ability to invoke the safe harbor depends on whether *that transferee*—the defendant from which the Trustee seeks to recover—had actual knowledge of BLMIS's fraud.

In *Cohmad*, this Court set forth only two scenarios in which the Section 546(e) defense could not be asserted by a transferee defendant—whether initial or subsequent:

(1) When raised by an initial transferee who had actual knowledge that BLMIS was not trading securities; and

(2) When raised by a subsequent transferee who had actual knowledge that BLMIS was not trading securities, even though the safe harbor protected the initial transfer because the initial transferee had no such knowledge.

*Cohmad*, 2013 WL 1609154, at *1.

*Cohmad* does not state (as the Bankruptcy Court apparently believed) that no innocent subsequent transferee may invoke the Section 546(e) safe harbor as a defense to the avoidability of the initial transfer if the initial transferee is barred from doing so. Nor does anything in *Cohmad* suggest that this Court intended to bar innocent subsequent transferees from the protection of the safe harbor.

Because this Court's ruling in *Cohmad* was intended to apply to numerous consolidated proceedings then before it, if this Court had intended that an initial transferee's actual knowledge would bar all subsequent transferees

13

without regard to their knowledge, it presumably would have said so. It did not. Instead, this Court held only that "transferees with knowledge of the fraud" would be barred from invoking the Section 546(e) defense. *Id*.

Moreover, nothing in this Court's reasoning in *Cohmad* supports the conclusion that all subsequent transferees should be deprived of the safe harbor defense to the avoidability of the initial transfer, regardless of their actual knowledge of BLMIS's fraud or lack thereof, if the initial transferee had such knowledge. In stating the rationale for its holdings, this Court reasoned that Section 546(e)'s safe harbor was intended to protect the reasonable expectation in the finality of securities transactions on the part of legitimate investors who believed securities were being traded on their behalf but should not protect defendants who actually knew that BLMIS was conducting a Ponzi scheme and was not trading securities. *Id*. at \*3-4. Throughout the *Cohmad* opinion, this Court repeatedly emphasized that whether a particular defendant would be disqualified from prevailing on Section 546(e) was to be determined by that defendant's knowledge, whether the defendant was an initial transferee or a subsequent transferee. *See id*. at \*3, 4, 7, 10. This Court summarized that repeated directive as follows: "In sum, if the Trustee sufficiently alleges that *the transferee from whom he seeks to recover a fraudulent transfer* knew of Madoff Securities' fraud, *that transferee* cannot claim the protections of Section 546(e)'s safe harbor."

14

*Id.* at *7 (emphasis added).[7]  Here, the Trustee does not allege that BCV actually

knew of BLMIS's fraud.  Thus, contrary to the Bankruptcy Court's ruling, BCV

should be able to invoke the protection of safe harbor even if Sentry cannot.

This is not, as the Bankruptcy Court incorrectly stated, an argument

that the safe harbor applies to subsequent transfers.  *See* Ex. B at 13, 2022 WL

2761044, at *5.  Rather, BCV has asserted that the safe harbor applies by its terms

to the alleged *initial* transfer from BLMIS to Sentry.  And it is entitled to do so

even if Sentry (the initial transferee) could not, as it is undisputed that "even if the

initial … transferee fails to raise a Section 546(e) defense against the Trustee's

avoidance of certain transfers … because [as here] the transferee settled with the

Trustee … the subsequent transferee is nonetheless entitled to raise a Section

546(e) defense against recovery of those funds."  *Cohmad*, 2013 WL 1609154, at

*7 (emphasis added).  In this case, since the safe harbor (when asserted by a non-

tainted defendant) renders the initial transfer not avoidable, there can be no

recovery of any subsequent transfer under 11 U.S.C. § 550(a)(2), and there is no

reason under *Cohmad* to prohibit BCV from invoking the safe harbor where BCV

is not alleged to have had actual knowledge that BLMIS was not trading securities.

---

[7] In its opinion denying BCV's motion to dismiss, the Bankruptcy Court altered the
above-quoted language from *Cohmad* by inserting the word "[initial]" before
"transferee" at the start of the sentence—thus changing this Court's meaning.  Ex.
B at 10; 2022 WL 2761044, at *4.

15

In fact, *Cohmad* contradicts the Bankruptcy Court's view that an innocent subsequent transferee should be barred from the protections of Section 546(e) if the initial transferee had actual knowledge of BLMIS's fraud. *First*, this Court stated that "[i]n the context of Madoff Securities' fraud, th[e] goal [of Section 546(e)] is best achieved by protecting the reasonable expectations of investors who believed they were signing a securities contract." *Id.* at *4. By contrast, the Bankruptcy Court's ruling does not protect the reasonable expectations of a subset of innocent investors—subsequent transferees who entered into a securities contracts with feeder funds that (unbeknownst to them) allegedly knew that BLMIS was not trading securities—even though innocent investors that directly entered into securities contracts with BLMIS would receive safe harbor protection under *Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411, 417-23 (2d Cir. 2014). The *Cohmad* decision provides no support for treating innocent investors further removed from BLMIS worse than direct innocent investors.

*Second*, this Court held that "the Trustee must show, at a minimum, that the transferee had actual knowledge that there were no actual securities transactions being conducted," making no distinction between initial transferees and subsequent transferees. *Cohmad*, 2013 WL 1609154, at *4. "[I]f the [Trustee's] allegations adequately allege that *a defendant had actual knowledge* of

16

Madoff's scheme, *such a transferee* stands in a different posture from an innocent

transferee, even as concerns the application of Section 546(e)." *Id.* (emphasis

added). But the Bankruptcy Court's ruling dispenses with that requirement in the

case of subsequent transferees, holding that they can be stripped of Section

546(e)'s protections simply by showing that a *different* transferee knew no

securities were being traded.

In sum, *Cohmad* neither holds, states, nor implies that subsequent

transferees should be barred from invoking the protection of Section 546(e) based

on the actual knowledge of the initial transferee, rather than their own actual

knowledge. Indeed, *Cohmad* expressly says the opposite: that the actual

knowledge of the particular transferee—initial or subsequent—controls. For these

and other reasons BCV would detail in its merits brief if leave to appeal is granted,

the Bankruptcy Court erred in its interpretation of *Cohmad*.

The issue presented here—whether the actual knowledge of an initial

transferee disqualifies an innocent subsequent transferee from protection under

Section 546(e)—is one of first impression, both in the Second Circuit and Southern

District of New York. No circuit panel or district court judge has expressly

addressed or ruled on this issue. And indeed, before the Bankruptcy Court's

opinion on which the Order is based, neither had any bankruptcy judge.

**C. An Immediate Appeal Will Advance the Ultimate Termination of This Litigation.**

Under the third prong of the Section 1292(b) standard, "[a]n immediate appeal is considered to advance the ultimate termination of the litigation if that appeal promises to advance the time for trial or shorten the time required for trial." *Enron*, 2006 WL 2548592, at *4. Courts place particular emphasis on this last factor. *Id*. Here, if this Court permits an immediate appeal and the Bankruptcy Court's Order is reversed, the Trustee's Complaint against BCV would have to be dismissed, thus terminating the proceeding without the need for discovery and trial.

**D. Exceptional Circumstances Also Exist Because Correction of the Bankruptcy Court's Error Would Result in the Termination or Narrowing of 58 Subsequent Transferee Proceedings.**

In deciding motions for leave to appeal, courts in this District have also considered whether an appeal of the legal question presented "would provide important guidance for similarly situated parties." *MF Global Holdings Ltd. v. Allied World Assurance Co. (In re MF Global Holdings Ltd.)*, 296 F. Supp. 3d 662, 665 (S.D.N.Y. 2017) (Rakoff, J.). That factor points to additional exceptional circumstances that further warrant immediate appeal here.

As shown in Exhibit C hereto, there are currently pending 17 subsequent transferee proceedings (including this one) by the Trustee against Sentry investors in which all the alleged initial transfers from BLMIS to Sentry

preceding those subsequent transfers were made more than two years before the

BLMIS petition date and thus are outside the scope of Section 546(e)'s express

exception for claims under Section 548(a)(1)(A).  All the initial transfers from

BLMIS allegedly relevant to those 17 proceedings are covered by Section 546(e)

under this Court's rulings in *Picard v. Katz*, 462 B.R. 447, 451-53 (S.D.N.Y. 2011)

(Rakoff, J.), and *SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 476

B.R. 715, 718-19, 722 (S.D.N.Y. 2012) (Rakoff, J.) ("*Grieff*"), *aff'd sub nom.*

*Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*,

773 F.3d 411 (2d Cir. 2014).  The Trustee does not allege in any of these adversary

proceedings that the subsequent transferees had actual knowledge that BLMIS was

conducting a Ponzi scheme and was not trading securities.  Thus, but for the

Bankruptcy Court's misinterpretation of *Cohmad* as barring an innocent

subsequent transferee from enjoying the protection of the safe harbor if the initial

transferee had actual knowledge of BLMIS's fraud, all of these proceedings would

be dismissed in their entirety.

In addition, another 41 subsequent transferee proceedings are pending

against innocent Sentry investors, where many of the alleged initial transfers—

totaling more than $1.1 billion—occurred outside the two-year look-back period

for Section 548(a)(1)(A) claims.  Those claims would also be dismissed under the

Section 546(e) safe harbor but for the Bankruptcy Court's misinterpretation of

*Cohmad.  See* Ex. C.[8]  Thus, many Sentry-based subsequent transferee claims

would be immediately dismissed, without further discovery or trial, if the

Bankruptcy Court's purely legal error is corrected on this interlocutory appeal.

If, however, an interlocutory appeal is not granted, those proceedings

and claims will generate years of further litigation in the Bankruptcy Court before

final judgment.  In pending Sentry subsequent transferee proceedings that are past

the motion to dismiss stage, the Trustee is currently obtaining scheduling orders

that provide for *three years* of discovery proceedings, through April *2025*.  *E.g.*,

Case Mgmt. Plan ¶¶ 2(b), 3(a), *Picard v. Bureau of Labor Ins. (In re Madoff)*, Adv.

No. 11-2732-CGM (Bankr. S.D.N.Y. June 14, 2022) [ECF 122].  The

extraordinary expense and wasted time of those further protracted proceedings—on

top of the decade or more of litigation expense defendants have already suffered—

should not be imposed on innocent subsequent transferees of initial transfers who

should be protected by the terms of Section 546(e).  Innocent investors, who had

reasonable expectations in the finality of securities transactions under the safe

harbor enacted by Congress, should not have to wait years more for appellate

---

[8] Several defendants in those other proceedings are moving for leave to appeal the
denial of their respective motions to dismiss on similar grounds to those stated
here. *See, e.g. Picard v. Banque Syz & Co., SA*, No. 22-cv-06512-JSR (S.D.N.Y.).

review of the Bankruptcy Court's misinterpretation of this Court's decision in

*Cohmad*.

By reversing the Bankruptcy Court's pure legal errors on the

requested interlocutory appeal, this Court can thus prevent an extraordinary waste

of time and money for both the Trustee and the defendants in scores of cases.  For

this reason, as well as this appeal's satisfaction of the three requirements discussed

above, exceptional circumstances exist here and warrant granting an immediate

appeal of the Bankruptcy Court's erroneous Order.

## CONCLUSION

For the foregoing reasons, BCV should be granted leave to appeal the

Bankruptcy Court's Oder denying its motion to dismiss the Complaint and, upon

such appeal, the Order should be reversed and the Complaint dismissed.

Dated: New York, New York
  August 17, 2022

      /s/ John F. Zulack    
      ALLEGAERT BERGER & VOGEL LLP
      John F. Zulack
      Lauren J. Pincus
      David A. Shaiman
      111 Broadway, 20th Floor
      New York, New York 10006
      212-571-0550
      jzulack@abv.com
      lpincus@abv.com
      dshaiman@abv.com

      *Counsel for Defendant Banque Cantonale*
      *Vaudoise*

21

# <u>CERTIFICATE OF COMPLIANCE</u>

1.      This document complies with the word limit of Fed. R. Bankr.

P. 8013(f)(3)(A) because, excluding the parts of the document exempted by Fed.

R. Bankr. P. 8015(g), this document contains 4,751 words, according to the word-

count function of the word-processing system used to prepare the document.

2.      This document complies with the typeface requirements of Fed.

R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P.

8015(a)(6) because this document has been prepared in a proportionally spaced

typeface using Microsoft Office Word 2022 in 14-point Times New Roman font.

Dated: August 17, 2022

/s/ John F. Zulack
John F. Zulack

22

Exhibit A

The Bankruptcy Court's July 21, 2022 Order Denying Banque Cantonale
Vaudoise's Motion to Dismiss the Complaint Under Bankruptcy Rule 7012(b) and
Federal Rule of Civil Procedure 12(b)(6) [ECF 108]

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | Adv. Pro. No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 12-01694 (CGM) |
| Plaintiff, | |
| v. | |
| BANQUE CANTONALE VAUDOISE, | |
| Defendant. | |

**ORDER DENYING BANQUE CANTONALE**
**VAUDOISE'S MOTION TO DISMISS THE COMPLAINT**

Defendant Banque Cantonale Vaudoise's motion to dismiss the Complaint under

Bankruptcy Rule 7012(b) and Federal Rule of Civil Procedure 12(b)(6) (the "**Motion**") was

scheduled for a hearing before the Court on July 13, 2022. The parties, however, stipulated to rest

on their papers and waive oral argument on the Motion. The Court has considered the Motion, the

papers filed in support of and in opposition to the Motion, and the Complaint, and the Court has issued a memorandum decision, dated July 14, 2022, regarding the Motion (the "**Decision**"). Based on the record in this adversary proceeding, including the Decision, **IT IS ORDERED**:

1. The Motion to dismiss the Complaint is denied.

2. The deadline for Banque Cantonale Vaudoise to file an answer to the Complaint is September 30, 2022.

3. The Court shall retain jurisdiction to implement or enforce this Order.

/s/ Cecelia G. Morris

**Dated: July 21, 2022**
**Poughkeepsie, New York**



_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**

2

Exhibit B

The Bankruptcy Court's July 14, 2022 Memorandum Decision Denying
Defendant's Motion to Dismiss [ECF 107]

<u>NOT FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 12-01694 (CGM) |
| v. | |
| Banque Cantonale Vaudoise, | |
| Defendant. | |

## MEMORANDUM DECISION DENYING DEFENDANT'S MOTION TO DISMISS

<u>A P P E A R A N C E S</u> :

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
By:     Torello H. Calvani (on the papers)

*Counsel for Defendant Banque Cantonale Vaudoise*
Allegaert Berger & Vogel LLP

111 Broadway, 20th Flr.
New York, NY 10006
By:     Jack Zulack (on the papers)

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Defendant's, Banque Cantonale Vaudoise's ("Cantonale"),

motion to dismiss the complaint of Irving Picard, the trustee ("Trustee") for the liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to recover subsequent

transfers allegedly consisting of BLMIS customer property. Cantonale seeks dismissal for

failure to plead a cause of action due to improper adoption by reference; for failure to state a

claim due to the safe harbor provision of the Bankruptcy Code, and for failure to allege that it

received BLMIS customer property. For the reasons set forth herein, the motion to dismiss is

denied in its entirety.

<u>**Jurisdiction**</u>

This is an adversary proceeding commenced in this Court, in which the main underlying

SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending. The

SIPA Proceeding was originally brought in the United States District Court for the Southern

District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L.*

*Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court.

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1),

and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O). This Court

has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§

1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and

the Amended Standing Order of Reference, dated January 31, 2012. In addition, the District

Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08–01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this Court has jurisdiction under the latter provision.  Personal jurisdiction has not been disputed.

### Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its SIPA proceeding.  *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on June 6, 2012.  (Compl., ECF[1] No. 1).  Via the complaint ("Complaint"), the Trustee seeks to recover subsequent transfers made to Cantonale, "a *société anonyme de droit public* (i.e., a corporation organized under public law) that maintains a place of business at Place St-François 14, 1003 Lausanne, Switzerland."  (*Id.* ¶ 22).  The subsequent transfers were derived from investments with BLMIS made by Fairfield Sentry Limited ("Fairfield Sentry").  (*Id.* ¶ 2).  Fairfield Sentry is referred to as a "feeder fund" because the intention of the fund was to invest in BLMIS.  (*Id.* ¶ 2).

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield Sentry and related defendants to avoid and recover fraudulent transfers of customer property in the amount of approximately $3 billion.  (*Id.* ¶ 35).  In 2011, the Trustee settled with Fairfield Sentry.  (*Id.* ¶ 40).  As part of the settlement, Fairfield Sentry consented to a judgment in the amount of $3.054 billion (Consent J., 09-01239-cgm, ECF No. 109) but repaid only $70 million to the BLMIS customer property estate.  The Trustee then commenced a number of adversary proceedings against subsequent transferees like Defendant to recover the approximately $3 billion in missing customer property.

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 12-01694-cgm.

In its motion to dismiss, Cantonale argues that the safe harbor bars the Trustee's recovery of this transfer, the Trustee has failed to allege that it holds BLMIS customer property, and that the Trustee has improperly used adoption by reference. The Trustee opposes the motion to dismiss. The parties stipulated to have this motion determined on the papers. Stip., ECF No. 102.

## Discussion

### 12(b)(6) standard

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The claim is facially plausible when a plaintiff pleads facts that allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."). In deciding a motion to dismiss, the Court should assume the factual allegations are true and determine whether, when read together, they plausibly give rise to an entitlement of relief. *Iqbal*, 556 U.S. at 679. "And, of course, a well-pl[ed] complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in

particular, documents incorporated into the complaint by reference, and matters of which a court

may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322

(2007). A complaint is "deemed to include any written instrument attached to it as an exhibit[,] .

. . documents incorporated in it by reference[,]" and other documents "integral" to the complaint.

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted). A

document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous

information and relied on it in framing the complaint. *DeLuca v. AccessIT Grp., Inc.*, 695 F.

Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

The Trustee is seeking to recover subsequent transfers made to Cantonale by Fairfield

Sentry ("Count One").

## Count One: Recovery of Subsequent Transfers

Section 550(a) of the Bankruptcy Code states:

> Except as otherwise provided in this section, to the extent that a transfer is
> avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the
> trustee may recover, for the benefit of the estate, the property transferred, or, if the
> court so orders, the value of such property, from--
> (1) the initial transferee of such transfer or the entity for whose benefit such
> transfer was made; or
> (2) any immediate or mediate transferee of such initial transferee.

"To plead a subsequent transfer claim, the Trustee must plead that the initial transfer is

avoidable, and the defendant is a subsequent transferee of that initial transferee, that is, that the

funds at issue originated with the debtor." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R.

167, 195 (Bankr. S.D.N.Y. 2018); *see also SIPC v. BLMIS* (*In re Consolidated Proceedings on

11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013)

(consolidated proceedings on 11 U.S.C. § 546(e)). "Federal Civil Rule 9(b) governs the portion

of a claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a

claim to recover the subsequent transfer. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R.

167, 195 (Bankr. S.D.N.Y. 2018) (citing *Sharp Int'l Corp. v. State St. Bank & Trust Co.,* (*In re

Sharp Int'l Corp.*), 403 F.3d 43, 56 (2d Cir. 2005) and *Picard v. Legacy Capital Ltd. (In re

BLMIS)*, 548 B.R. 13, 36 (Bankr. S.D.N.Y. 2016), *rev'd on other grounds*, *Picard v. Citibank,

N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021)).

 To properly plead a subsequent transfer claim, the Trustee need only provide "a short and

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

8(a)(2). "The plaintiff must allege the necessary vital statistics—the who, when, and how much–

of the purported transfers to establish an entity as a subsequent transferee of the funds. However,

the plaintiff's burden at the pleading stage does not require dollar-for-dollar accounting of the

exact funds at issue." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr.

S.D.N.Y. 2018). While the Trustee must allege that the initial transfer from BLMIS to Fairfield

Sentry is avoidable, he is not required to avoid the transfer received by the initial transferee

before asserting an action against subsequent transferees. The Trustee is free to pursue any of

the immediate or mediate transferees, and nothing in the statute requires a different result. *IBT

Int'l, Inc. v. Northern* (*In re Int'l Admin. Servs., Inc.*), 408 F.3d 689, 706-07 (11th Cir. 2005).

 The Trustee pleaded the avoidability of the initial transfer (from BLMIS to Fairfield

Sentry) by adopting by reference the entirety of the complaint filed against Fairfield Sentry in

adversary proceeding 09-1239 ("Fairfield Complaint"). (Compl. ¶ 35). Whether the Fairfield

Complaint properly pleads the avoidability of the initial transfer, is governed by Rule 9(b). Rule

9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances

constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind

may be alleged generally." Fed. R. Civ. P. 9(b). "Where the actual fraudulent transfer claim is

asserted by a bankruptcy trustee, applicable Second Circuit precedent instructs courts to adopt a more

liberal view since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge. Moreover, in a case such as this one, where the Trustee's lack of personal knowledge is compounded with complicated issues and transactions that extend over lengthy periods of time, the trustee's handicap increases, and even greater latitude should be afforded." *Picard v. Cohmad Secs. Corp., (In re BLMIS)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up).

**Adoption by Reference**

Adoption by reference is government by Rule 10 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 10(c). Rule 10(c) states: "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." The district court has already found that adoption by reference of the entire Fairfield Complaint is proper. *See SIPC v. BLMIS (In re Consolidated Proceedings on 11 U.S.C. § 550(a))*, 501 B.R. 26, 36 (S.D.N.Y. 2013) ("The Trustee's complaint against Standard Chartered Financial Services incorporates by reference the complaints against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).") (cleaned up).

The Court will follow the district court's instruction. As was explained in *In re Geiger*, pleadings filed in the "same action" may be properly adopted by reference in other pleadings in that action. 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010). The Fairfield Complaint was filed in the "same action" as this adversary proceeding for purposes of Rule 10(c). *Id.* Cases within this SIPA proceeding are filed in the same "proceeding"—the SIPA proceeding. *In re Terrestar Corp.*, No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."); *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 610 B.R. 197, 237 (Bankr. S.D.N.Y. 2019)

("The prior decisions within this SIPA proceeding constitute law of the case . . . . "); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 603 B.R. 682, 700 (Bankr. S.D.N.Y. 2019), (citing *In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018) (law of the case doctrine applies across adversary proceedings within the same main case), *aff'd*, 943 F.3d 125 (2d Cir. 2019)); *Perez v. Terrastar Corp. (In re Terrastar Corp.)*, No. 16 Civ. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."), *appeal dismissed*, No. 17-1117 (2d Cir. June 29, 2017); *Bourdeau Bros., Inc. v. Montagne (In re Montagne)*, No. 08-1024 (CAB), 2010 WL 271347, at *6 (Bankr. D. Vt. Jan. 22, 2010) ("[D]ifferent adversary proceedings in the same main case do not constitute different 'cases.'").

Some courts have worried that wholesale incorporation of a pleading can lead to "confusing and inconvenient" results. *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47 (E.D. Va. 2009) (footnote omitted), *aff'd*, 382 F. App'x 256 (4th Cir. 2010). That is not a concern in these proceedings. Cantonale, like many subsequent transfer defendants in this SIPA proceeding, is uniquely aware of what has been filed in the other adversary proceeding in this SIPA liquidation. It routinely follows what is happening on a proceeding-wide basis. *See* Stip., ECF No. 68 (dismissing adversary proceeding based on consolidated extraterritoriality ruling).

Allowing the Trustee to incorporate the Fairfield Complaint by reference, does not prejudice Cantonale. If the Court were to dismiss this Complaint and permit the Trustee to amend his Complaint to include all of the allegations that are already contained in the Fairfield Complaint, all parties would be prejudiced by delay in these already, overly-prolonged proceedings. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("Rule 15 places no

time bar on making motions to amend pleadings and permits the amending of pleadings "when justice so requires.").

Through the adoption of the Fairfield Complaint, the Trustee has adequately pleaded, with particularity, the avoidability of the initial transfer due to Fairfield Sentry's knowledge of BLMIS' fraud. (Fairfield Compl. ¶¶ 314–318, 09-01239, ECF No. 286); *see also SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013) ("[T]he Court directs that the following adversary proceedings be returned to the Bankruptcy Court for further proceedings consistent with this Opinion and Order . . . .").

**The Safe Harbor does not bar the avoidance of the Fairfield Initial Transfers**

Defendant has raised the "safe harbor" defense, found in § 546(e), to the Trustee's allegations. Section 546(e) is referred to as the safe harbor because it protects a transfer that is a "settlement payment ... made by or to (or for the benefit of) a ... financial institution [or] financial participant," or that is "made by or to (or for the benefit of) a ... financial institution [or] financial participant ... in connection with a securities contract." 11 U.S.C. § 546(e). "By its terms, the safe harbor is a defense to the avoidance of the **initial** transfer. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis added). However, where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here, the subsequent transferee is entitled to raise a § 546(e) defense against recovery of those funds. *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021).

In light of the safe harbor granted under 11 U.S.C. § 546(e), the Trustee may only avoid and recover intentional fraudulent transfers under § 548(a)(1)(A) made within two years of the

filing date, unless the transferee had actual knowledge of BLMIS's Ponzi scheme, or more

generally, "actual knowledge that there were no actual securities transactions being conducted."

*SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR),

2013 WL 1609154, at *4 (S.D.N.Y. Apr. 15, 2013). "The safe harbor was intended, among other

things, to promote the reasonable expectations of legitimate investors. If an investor knew that

BLMIS was not actually trading securities, he had no reasonable expectation that he was signing

a contract with BLMIS for the purpose of trading securities for his account. In that event, the

Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the

full extent permitted under state and federal law." *Picard v. Legacy Capital Ltd. (In re BLMIS)*,

548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on

other grounds, Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171 (2d Cir. 2021)). "In sum, if

the Trustee sufficiently alleges that the [initial] transferee from whom he seeks to recover a

fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim the protections of

Section 546(e)'s safe harbor." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-

01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021).

This Court has already determined that the Fairfield Complaint[2] contains sufficient

allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule

12(b)(6) motion. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv.

No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he Trustee

has alleged that the agents and principals of the Fairfield Funds had actual knowledge of

Madoff's fraud"). In that adversary proceeding, the Court held that "[t]he Trustee has pled

[actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's

fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the

---

[2] The Fairfield Complaint can be found on the docket of adversary number 09-01239-cgm, ECF No. 286.

Fairfield Funds through 'FGG,' an alleged 'de facto' partnership." *Id.* at *4; *see also* Fairfield

Compl. ¶ 320 ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); Fairfield Compl.

¶ 321 ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the fraud at

BLMIS"); Fairfield Compl. ¶ 322 ("FIFL had actual knowledge of the fraud at BLMIS");

Fairfield Compl. ¶ 323 ("Stable Fund had actual knowledge of the fraud at BLMIS"); Fairfield

Compl. ¶ 324 ("FG Limited had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶

325 ("FG Bermuda had actual knowledge of the fraud at BLMIS"); ¶ 326 ("FG Advisors had

actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 327 ("Fairfield International

Managers had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 328 ("FG Capital

had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 329 ("Share Management had

actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 9 ("It is inescapable that FGG

partners knew BLMIS was not trading securities. They knew BLMIS's returns could not be the

result of the split strike conversion strategy (the "SSC Strategy"). They knew BLMIS's equities

and options trading volumes were impossible. They knew that BLMIS reported impossible, out-

of-range trades, which almost always were in Madoff's favor. They knew Madoff's auditor was

not certified and lacked the ability to audit BLMIS. They knew BLMIS did not use an

independent broker or custodian. They knew Madoff refused to identify any of BLMIS's options

counterparties. They knew their clients and potential clients raised numerous due diligence

questions they would not and could not satisfactorily answer. They knew Madoff would refuse to

provide them with honest answers to due diligence questions because it would confirm the

details of his fraud. They knew Madoff lied about whether he traded options over the counter or

through the exchange. They knew they lied to clients about BLMIS's practices in order to keep

the money flowing and their fees growing. And they knowingly misled the SEC at Madoff's

direction.").

This Court determined that the Fairfield Complaint is replete with allegations

demonstrating that Fairfield Sentry had actual knowledge that BLMIS was not trading securities.

*See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv. No. 09-01239

(CGM), 2021 WL 3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021).  The district court

determined that "those defendants who claim the protections of Section 546(e) through a Madoff

Securities account agreement but who actually knew that Madoff Securities was a Ponzi scheme

are not entitled to the protections of the Section 546(e) safe harbor, and their motions to dismiss

the Trustee's claims on this ground must be denied."  *SIPC v. BLMIS* (*In re Consolidated*

*Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y.

Apr. 15, 2013).  And "to the extent that a defendant claims protection under Section 546(e) under

a separate securities contract" this Court was directed to "adjudicate those claims in the first

instance consistent with [the district court's] opinion."  *See* Order, 12-MC-115, ECF No. 119,

Ex. A at 24.

This Court is powerless to reconsider this issue, agrees with the district court's reasoning,

and finds its holding consistent with *dicta* set forth by the Court of Appeals for the Second

Circuit.  *See Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*),

773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that

BLMIS was actually engaged in the business of effecting securities transactions, have every right

to avail themselves of all the protections afforded to the clients of stockbrokers, including the

protection offered by § 546(e).").  The Trustee's allegations in the Fairfield Complaint are

sufficient to survive a Rule 12(b)(6) motion on this issue.

**The Safe Harbor cannot be used to defeat a subsequent transfer**

Defendant argues that the safe harbor prevents the Trustee from avoiding the subsequent transfer between Fairfield Sentry and Cantonale on account of the securities contract between Fairfield and Cantonale.

The safe harbor is not applicable to subsequent transfers.  "By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer."  *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e) (failing to include § 550 in its protections).  Since there must be an initial transfer in order for the Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned.  The safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not "avoiding" a subsequent transfer, "he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550."  *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018).

Defendant implies that this Court applied the safe harbor to redemption payments made by Fairfield Sentry in *In re Fairfield Sentry Ltd.*, 2020 WL 7345988, at *5 (Dec. 14, 2020) ("*Fairfield III*").  Reliance on this case is misplaced.  While many facts overlap between this SIPA liquidation of BLMIS and the foreign liquidation of BLMIS's largest feeder fund, Fairfield Sentry, the legal holdings in these liquidations are not interchangeable.  In this case, the Court is analyzing subsequent transfers; in *Fairfield III* the Court was analyzing initial transfers.  The safe harbor is not available to be raised as defense to subsequent transfer claims.

In *Fairfield III*, this Court analyzed whether the safe harbor applied to avoidance claims under BVI law[3] to recover "unfair preferences" and "undervalue transactions" and constructive trust claims against a defendant who allegedly "knew or willfully blinded itself to the fact that the [Fairfield Sentry's] BLMIS investments were worthless or virtually worthless." *In re Fairfield Sentry Ltd.*, No. 10-13164 (SMB), 2020 WL 7345988, at *1 (Bankr. S.D.N.Y. Dec. 14, 2020), *reconsideration denied*, No. 10-13164 (SMB), 2021 WL 771677 (Bankr. S.D.N.Y. Feb. 23, 2021).  The Court was not considering the safe harbor's effect on subsequent transfer claims brought under § 550 of the Bankruptcy Code.  In the Fairfield Sentry liquidation, Defendant would be an initial transferee as redemption payments paid by Fairfield Sentry were paid directly to Multi-Strategy.  *Fairfield III* is not applicable here.

Defendant also argues that this Court permitted a subsequent transferee to raise the safe harbor as a defense in *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021).  The Court never considered whether the safe harbor could be raised by a subsequent transferee in that case. In *Picard v. Fairfield*, the subsequent transferees were also the principals and insiders of Fairfield Sentry, the initial transferee.  The Court considered the insider's actual knowledge of BLMIS's fraud only as it related to whether Fairfield Sentry had actual knowledge of the fraud. The Court never considered whether the subsequent transferees could raise the safe harbor defense on their own behalf nor could it have, as § 546 is inapplicable to subsequent transferees.

Defendant is not permitted to raise the safe harbor defense on its own behalf as a subsequent transferee.

**BLMIS Customer Property**

---

[3] Fairfield Sentry liquidated under the laws of the British Virgin Islands ("BVI") and this Court's chapter 15 case is ancillary to the primary proceeding brought in the BVI.

The Trustee has pleaded that "[b]ased on the Trustee's investigation to date, approximately $9,769,927 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant." (Compl. ¶ 41).

The exhibits attached to the Complaint provide Cantonale with the "who, when, and how much" of each transfer. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018).

The Fairfield Complaint, which is incorporated by reference into this, alleges that the Fairfield Fund was required to invest 95% of its assets in BLMIS. (Fairfield Compl. ¶ 89); *see also* (Fairfield Compl. ¶ 91) ("From the beginning, to comport with Madoff's requirement for BLMIS feeder funds, Fairfield Sentry ceded control of not only its investment decisions, but also the custody of its assets, to BLMIS.").

The Complaint plausibly alleges that Fairfield Sentry did not have any assets that were not customer property. Defendants ask this Court to consider allegations made in 90+ other complaints filed by the Trustee in this SIPA proceeding. Shaiman Decl. at 2–85, ECF No. 93 (attempting to incorporate allegations from dozens of other complaints). These complaints have not been adopted by reference by the Trustee in this adversary proceeding and, as such, are not within the Court's power to consider on a Rule 12(b)(6) motion. *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) ("A district court, in deciding whether to dismiss a complaint under Rule 12(b)(6), is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference.") (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)).

Taking all allegations as true and reading them in a light most favorable to the Trustee, the Complaint plausibly pleads that Cantonale received customer property because Fairfield

Sentry did not have other property to give.  The calculation of Fairfield Sentry's customer

property and what funds it used to make redemption payments are issues of fact better resolved

at a later stage of litigation.

### Conclusion

For the foregoing reasons, Cantonale's motion to dismiss is denied.  The Trustee shall

submit a proposed order within fourteen days of the issuance of this decision, directly to

chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local

Bankruptcy Rule 9074-1(a).



**/s/ Cecelia G. Morris**

_____

**Dated: July 14, 2022**　　　　　　　　　　　**Hon. Cecelia G. Morris**
**Poughkeepsie, New York**　　　　　　　　**U.S. Bankruptcy Judge**

Exhibit C

Adversary Proceedings Subject to Section 546(e) Defense

# ADVERSARY PROCEEDINGS SUBJECT TO SECTION 546(e) DEFENSE[*]

## Adversary Proceedings Subject to Complete Dismissal Based on Section 546(e) Defense

| Adv. Proc. No. | Defendant(s) | Transfer Amount |
|---|---|---|
| 11-02493 | Abu Dhabi Investment Authority | ($300,000,000) |
| 11-02538 | Quilvest Finance Ltd. | (34,198,293) |
| 11-02540 | Lion Global Investors Limited | (50,583,442) |
| 11-02542 | Parson Finance Panama S.A. | (11,089,081) |
| 11-02730 | ASB Bank Corp. | (119,655,424) |
| 11-02733 | Naidot & Co. | (12,654,907) |
| 12-01002 | The Public Institution for Social Security | (20,000,000) |
| 12-01004 | Fullerton Capital PTE Ltd. | (10,290,445) |
| 12-01021 | Grosvenor Balanced Growth Fund Limited, Grosvenor Private Reserve Fund Limited, et al. | (24,815,102) |
| 12-01023 | Arden Asset Management Inc., Arden Asset Management LLC, et al. | (12,586,659) |
| 12-01047 | Koch Industries, Inc. | (21,533,871) |
| 12-01194 | Kookmin Bank | (42,010,302) |
| 12-01205 | Multi Strategy Fund Limited | (25,763,374) |
| 12-01512 | ZCM Asset Holding Co. (Bermuda) LLC | (21,247,755) |
| 12-01566 | UKFP (Asia) Nominees Limited | (5,182,320) |

---

[*]Initial BLMIS-Sentry transfers from May 9, 2003 to April 13, 2006, which are outside the two-year lookback period for Section 548(a)(1)(A), are alleged by the Trustee to be the source of Sentry transfers to these defendants during the period May 14, 2003 to August 17, 2007.  This exhibit includes transfers from Sentry only. It is based on the allegations in the Trustee's current complaints in the listed adversary proceedings and does not represent a concession by any defendant that the transfer dates or amounts alleged by the Trustee are accurate.

2

| Adv. Proc. No. | Defendant(s) | Transfer Amount |
|---|---|---|
| 12-01680 | Eurizon Low Volatility, Eurizon Medium Volatility, *et al.* | (11,653,515) |
| 12-01694 | Banque Cantonale Vaudoise | (9,769,927) |
| **Total** | | **(733,034,417)** |

### Other Adversary Proceedings with Initial Transfers Outside Two-Year Period

| Adv. Proc. No. | Defendant(s) Affected | Transfer Amount |
|---|---|---|
| 10-05346 | Merrill Lynch International | ($1,200,000) |
| 11-02149 | Banque Syz & Co., SA | (15,449,241) |
| 11-02539 | Meritz Fire & Insurance Co. Ltd. | (10,911,002) |
| 11-02551 | Delta National Bank and Trust Company | (9,045,332) |
| 11-02553 | Unifortune Asset Management SGR SpA, Unifortune Conservative Fund | (16,352,159) |
| 11-02554 | National Bank of Kuwait S.A.K. | (51,577) |
| 11-02568 | Cathay Life Insurance Co. Ltd., Cathay United Bank Ltd. | (7,953,546) |
| 11-02569 | Barclays Bank (Suisse) S.A., Caixabank S.A., as successor by merger to Barclays Bank S.A. | (23,834,072) |
| 11-02572 | Korea Exchange Bank | (29,583,842) |
| 11-02731 | Trincastar Corporation | (10,311,800) |
| 11-02763 | Inteligo Bank Ltd. | (6,886,095) |
| 11-02784 | Somers Dublin Limited, Somers Nominees (Far East) Limited | (6,439,891) |
| 11-02910 | Merrill Lynch Bank (Suisse) SA | (40,762,484) |
| 11-02922 | Bank Julius Baer & Co. Ltd. | (36,850,589) |
| 11-02923 | Falcon Private Bank Ltd. | (38,675,129) |
| 11-02925 | Credit Suisse (Luxembourg) SA; Credit Suisse AG; Credit Suisse AG, Nassau Branch; | (140,646,281) |

| Adv. Proc. No. | Defendant(s) Affected | Transfer Amount |
| --- | --- | --- |
| | Credit Suisse London Nominees Limited; Credit Suisse Nominees (Guernsey) Limited; Credit Suisse Wealth Management Limited, Credit Suisse, Nassau Branch LATAM Investment Banking | |
| 11-02929 | LGT Bank in Liechtenstein Ltd. | (4,466,942) |
| 12-01005 | SICO Limited | (12,721,492) |
| 12-01019 | Banco Itau Europa Luxembourg S.A. | (14,920,537) |
| 12-01022 | Crédit Agricole (Suisse) S.A. | (11,519,915) |
| 12-01046 | SNS Bank N.V., SNS Global Custody B.V. | (18,513,002) |
| 12-01048 | Banco General Valores | (5,392,148) |
| 12-01202 | Bank Vontobel, Vontobel Fund, Bank Vontobel Asset Management Inc. | (25,066,635) |
| 12-01207 | Lloyds TSB Bank PLC | (9,171,918) |
| 12-01209 | Banca Del Gottardo, BSI AG | (27,867,965) |
| 12-01210 | Schroder & Co. Bank AG | (19,985,147) |
| 12-01211 | Union Global A Fund, Union Global Fund, Union Strategy Fund | (5,728,088) |
| 12-01216 | Bank Hapoalim (Switzerland) Ltd. | (466,867) |
| 12-01565 | Standard Chartered Financial Services (Luxembourg) S.A. | (41,519,310) |
| 12-01576 | BNP Paribas S.A. | (1,695,513) |
| 12-01577 | LGT Bank (Switzerland) Ltd., UBS Europe SE | (8,043,666) |
| 12-01669 | Barfield Nominees Limited, Northern Trust Corporation | (7,684,464) |
| 12-01670 | Crédit Agricole Corporate and Investment Bank | (5,401,035) |
| 12-01676 | Credit Suisse AG, as successor-in-interest to Bank Leu AG; Credit Suisse | (22,604,441) |

| Adv. Proc. No. | Defendant(s) Affected | Transfer Amount |
|---|---|---|
| | AG, as successor-in-interest to Clariden Leu AG | |
| 12-01677 | Lyxor Premium, SG Audace, SG Equilibrium, SG Lugano, SG Premium, SG Suisse, SG UK, SGBT, SGBT Lux/OFI, SGBT Lux/Palmares, SGBT Lux/UMR | (118,584,627) |
| 12-01690 | EFG Bank S.A., EFG Bank (Monaco) S.A.M., EFG Bank & Trust (Bahamas) Ltd. | (221,093,938) |
| 12-01693 | Banque Lombard Odier & Cie SA | (86,362,680) |
| 12-01695 | Bordier & Cie SCmA (sued as Bordier & Cie) | (7,731,281) |
| 12-01697 | ABN AMRO Fund Services (Isle of Man) Nominees Limited, Platinum All Weather Fund Limited, Odyssey | (17,396,883) |
| 12-01698 | Banco Inversis, S.A., Banque Internationale à Luxembourg (Suisse) S.A., Banque Internationale à Luxembourg S.A., RBC Investor Services Bank S.A. | (56,807,645) |
| 12-01699 | Guernroy Limited; Royal Bank of Canada; Royal Bank of Canada (Asia) Limited; RBC Dominion Securities Inc.; RBC Trust Company (Jersey) Limited; Banque Syz S.A., as successor in interest to Royal Bank of Canada (Suisse) S.A. | (20,743,042) |
| **Total** | | **($1,166,442,221)** |